

DONALD E. GODWIN, SHAREHOLDER
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:     214.939.4412
DIRECT FAX:      214.939.4803
DGodwin@GodwinRonquillo.com

**DALLAS**  HOUSTON
*Attorneys and Counselors*
Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
214.939.4400
800.662.8393
214.760.7332  Fax
GodwinRonquillo.com

December 12, 2011

**BY EMAIL**

The Honorable Carl J. Barbier
United States District Judge
500 Poydras Street, Room C-268
New Orleans, Louisiana 70130

      Re:    Response to BP's Motion *in Limine* to Preclude the Introduction
              of Evidence Related to Settlements Among the Parties

Dear Judge Barbier:

      In accordance with the Court's November 14, 2011 Order setting a briefing schedule concerning motions *in limine* [Rec. doc. 4572, ¶ 10], HESI responds to BP's Motion *in Limine* to Preclude the Introduction of Evidence Related to Settlements Among the Parties [Rec. doc. 4813] ("motion"), and respectfully shows the Court as follows:

Introduction

      On May 20, 2011, MOEX USA Corporation and MOEX Offshore 2007 LLC (together, "MOEX") entered into a confidential settlement and indemnity agreement with BP, agreeing to pay BP the sum of one billion, sixty-five million dollars, and transferring its 10% leasehold interest in MC 252 to BP.  *See* Ex. "A," attached hereto.

      On June 20, 2011, Weatherford U.S., L.P. ("Weatherford") entered into a confidential settlement and indemnity agreement with BP, agreeing to pay BP the sum of seventy-five million dollars.  *See* Ex. "B," attached hereto.

      On October 16, 2011, Anadarko Petroleum Corporation ("Anadarko") entered into a confidential settlement and indemnity agreement with BP, agreeing to pay BP the sum of four billion dollars and transferring its 25% leasehold interest MC 252 to BP.  *See* Ex. "C," attached hereto.

The Honorable Carl J. Barbier
December 12, 2011
Page 2

Pursuant to section 5 of the respective settlement agreements, BP agreed to indemnify, but not defend, MOEX, Weatherford, and Anadarko for any and all claims resulting from the *Deepwater Horizon* incident.  MOEX, Weatherford, and Anadarko were not dismissed from this litigation, but remain as party defendants, cross-claimants, and cross-defendants that enjoy the benefits and protections of their respective settlement agreements.

Relying primarily on this Court's Preliminary Trial Order No. 38 [Rec. doc. 3201] and Fed. R. Evid. 408, BP moves to exclude these settlement agreements from evidence, including the fact of settlement or the terms of any settlement, for purposes of the Phase 1 trial.  However, Rule 408 only excludes evidence of settlement agreements to prove liability, and the rule expressly provides that:

> This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a).  Examples of permissible purposes include proving a witness's bias or prejudice. . . .

Fed. R. Evid. 408(b).  HESI does not seek admission of this evidence to prove liability, but rather seeks admission to show the true alignment of the parties and the potential bias and prejudice on the part of witnesses for the settling parties.  *See* Fed. R. Evid. 408(b).  Accordingly, Rule 408 is inapplicable, BP's motion should be denied, and PTO No. 38 should be modified, as necessary, to permit use of this evidence for the limited purposes stated.

<u>The Settlement Agreements</u>

The settlement agreements at issue are directly relevant to show the true alignment of the parties and the potential bias of witnesses for the settling parties.  MOEX released all claims against Anadarko arising from the *Deepwater Horizon* incident.  *See* Ex. A [¶ 4.6].  By settling with BP and obtaining an indemnity, the settling parties have less motive and incentive to vigorously assert claims against BP or defend claims asserted against the settling parties.  *See* Ex. A [¶¶ 5.1-5.9]; Ex. B [¶¶ 5.1-5.9]; Ex. C [¶¶ 5.1-5.10].  MOEX, Weatherford, and Anadarko have assigned to BP their rights to any claims asserted, or which could be asserted, against other parties (such as HESI) relating to the *Deepwater Horizon* incident.  *See* Ex. A [¶ 4.6]; Ex. B [¶ 4.4]; Ex. C [¶4.5].

All three settlement agreements contain cooperation clauses which obligate MOEX, Weatherford, and Anadarko to cooperate with BP in its defense of any claims related to the *Deepwater Horizon* incident.  *See* Ex. A [¶ 7.1]; Ex. B [¶ 6.1]; Ex. C [¶ 6.1].  MOEX, Weatherford, and Anadarko agreed to provide BP with "reasonable and direct access" to the "respective personnel, employees, documents and business records and all other evidence in their possession, custody and control, including physical

The Honorable Carl J. Barbier
December 12, 2011
Page 3

samples, additives, and other materials." *See* Ex. A [¶ 7.1(b)]; Ex. B [¶ 6.1(b)]; Ex. C [¶ 6.1(c)]. As a consequence of the settlement agreements, BP, MOEX, Weatherford, and Anadarko are aligned in interest and actively cooperating with each other. This is a circumstance that the fact-finder is entitled to consider and that HESI is entitled to use, as necessary, in its defense.

The Anadarko settlement agreement goes even further in two respects. First, with respect to claims that may fall outside of the indemnity agreement (*e.g.* claims for punitive, exemplary, or treble damages), Anadarko agreed not to "make any assertion, claim, or defense in any form or manner which alleges, or characterizes facts as demonstrating, gross negligence, recklessness, or wilful [*sic*] misconduct" related to BP. *See* Ex. C [¶ 6.1(b)]. Absent the settlement agreement, Anadarko would have an incentive to demonstrate gross negligence, recklessness, or willful misconduct on the part of BP, since establishing such facts would tend to lessen Anadarko's liability. Second, BP and Anadarko agreed that to the extent BP receives anything of value from third parties in the *Deepwater Horizon* litigation (*e.g.* HESI) in excess of one-and-a-half billion dollars, BP will make cash payments to Anadarko, on a current and continuing basis, of 12.5% of the aggregate of such value received by BP, up to a limit of one billion dollars. *See* Ex. C [¶ 4.6]. In other words, BP and Anadarko have created a situation in which it is possible for Anadarko to recover back from BP up to one quarter of the cash amount that Anadarko paid to BP in settlement.

The MOEX settlement agreement likewise provides that to the extent BP receives anything of value from third parties in the *Deepwater Horizon* litigation (*e.g.* HESI) in excess of twenty-five billion dollars, it will make cash payments to MOEX on a current and continuing basis, of 5% of the aggregate of such value received by BP, up to a limit of five hundred million dollars. *See* Ex. A [¶ 4.7].

## Rule 408 Is Inapplicable

HESI seeks to use the existence and details of the settlement agreements to show that BP, MOEX, Weatherford, and Anadarko are now aligned in a manner that the fact-finder would not expect absent the settlement agreements. HESI also intends to show that witnesses for the settling parties potentially have a bias or prejudice arising from the fact of settlement. Rule 408(b) permits the use of evidence of settlement agreements for these purposes. In *Brocklesby v. United States and Jeppesen and Company*, the Ninth Circuit affirmed the district court's decision to permit the plaintiff to introduce evidence of an indemnity agreement between the United States and another defendant, Jeppesen. 767 F.2d 1288, 1292-93 (9th Cir. 1985). The indemnity agreement was not introduced to show liability, but instead to show the relationship between these parties (*i.e.* that Jeppesen and the United States were not adverse) and to attack the credibility of the witnesses for Jeppesen and the government. *See id*. The court noted that "[i]f the existence of the indemnity agreement made the defendants' witnesses less credible, it was

The Honorable Carl J. Barbier
December 12, 2011
Page 4

admissible." *Id*. at 1293; *see also Glaze v. G&B Marine, Inc.,* 1997 U.S. Dist. LEXIS 812, at *5, 1997 AMC 1266 (E.D. La. Jan. 24, 1997) (denying motion to exclude evidence of settlement agreement that would reimburse defendant a certain amount depending on plaintiff's recovery, because this economic interest in plaintiff's case was admissible for purpose of showing bias or prejudice of a witness).

In *Croskey v. BMW of North America*, the Sixth Circuit affirmed the district court's decision to admit evidence of settlement agreements between BMW and third parties who had suffered similar failures of the radiator necks of their automobiles. 532 F.3d 511, 519 (6th Cir. 2008). Rule 408 did not preclude admission of this evidence because it was relevant to show the bias or prejudice of the settling witnesses who had an "ax to grind" against BMW because they received settlement amounts less than what was requested. *See id*.

In *Cook v. CTC Communications Corp.*, the court denied a motion *in limine* that sought exclusion of evidence of a settlement agreement between defendant CTC and another witness. No. 06-cv-58-JD, 2007 U.S. Dist. LEXIS 85559, at *15-16 (N. H. 2007 Oct. 31, 2007). The court held that a settlement between the witness and defendant CTC would be admissible under Rule 408 to the extent it was offered to show the witnesses' potential bias or prejudice as to CTC. *See id*. at *15. The court acknowledged plaintiff's contention that the negotiation documents associated with the settlement agreement demonstrated that obtaining the cooperation of the witness "was a key concern for CTC; thus the documents are relevant to bias and motive for testimony." *Id*. Similarly, all three of the settlement agreements at issue in this case contain cooperation clauses.

*In re CFS-Related Securities Fraud Litigation* is also instructive in this regard. No. 99-CV-825, 2003 U.S. Dist. LEXIS 15230, at *9-13 (N.D. OK July 31, 2003). The court denied a motion for protective order relating to a settlement agreement because the agreement was relevant to the credibility and possible bias of the witnesses. *See id*. at *12-13. The court also noted that the settlement agreement contained covenants which ensured the plaintiff's cooperation with the settling entity in order to minimize the settling parties' liability for contribution claims, which defendant's counsel was entitled to evaluate for purposes of assessing its potential impact on witness bias or prejudice. *Id*.; *see also Goodyear Tire and Rubber Co. v. Dow Deutschland GmbH & Co.*, No. 5:08 CV 1118, 2009 U.S. Dist. LEXIS 100435, at *5-9 (N.D. Ohio October 28, 2009) (granting motion to compel discovery of settlement agreement containing a cooperation provision because permitted under Rule 408 and relevant to prove bias or prejudice).

### The Evidence is Not Barred by Rules 402 and 403

Recognizing the weakness of its argument for exclusion under Rule 408, BP makes a half-hearted attempt to argue that Rules 402 and 403 provide an independent basis for excluding the evidence relating to settlement agreements. On page 3 of its

The Honorable Carl J. Barbier
December 12, 2011
Page 5

motion, BP contends that "[t]he fact that two parties have settled is, *for purposes of establishing liability* for the loss of control of the Macondo Well, irrelevant under Rule 402. (emphasis added). This is a non-sequitur. As noted above, HESI does not seek to use this evidence to prove liability (which would be directly barred by Rule 408 without any need to invoke Rule 402). HESI seeks to introduce the evidence to show the true alignment of the settling parties and to demonstrate potential bias and prejudice of witnesses. The facts are that MOEX, Weatherford and Anadarko have settled with BP; MOEX has released any claims it had against Anadarko; these parties have entered into indemnity agreements; these parties have entered into cooperation agreements; Anadarko has agreed not to make assertions or claims of gross negligence, recklessness, or willful misconduct against BP for certain claims; and MOEX and Anadarko stand to recover significant sums from BP for any value received by BP from other parties (MOEX up to five hundred million; Anadarko up to one-and-a-half billion dollars). These facts are highly relevant for the purpose of showing the true alignment of the parties and potential bias and prejudice of witnesses. Rule 402 is easily satisfied for this purpose.

Furthermore, Rule 403 is not implicated in the context of a bench trial because this Court will not confuse the settlement evidence as evidence that the settling parties are liable for the claims at issue in this case. *See Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981).

<u>Rule 408 Permits Assessment of Damages and Contribution Claims</u>

Evidence of settlement agreements and the terms of such agreements are also relevant and admissible for purposes of assessing the damages recoverable by the defendants and assessment of the contribution and indemnity cross claims asserted in this matter. HESI has asserted cross claims for indemnity against BP, Anadarko, MOEX, and Weatherford. *See* Rec. doc. 445. Likewise, BP, Anadarko, and Weatherford have all asserted cross claims for contribution and indemnity against HESI. *See* Rec. doc. 2082 [BP's cross claim for contribution, Count IV; BP's cross claim for subrogation, Count V]; Rec. doc. 338 [Anadarko's cross claim for indemnity, Counts XXVII and XXXII; cross claim for contribution, Counts XXIX and XXXIII]; Rec. doc. 2502 [Weatherford's cross claim for indemnification, ¶ 9, and cross claim for contribution, ¶ 10]. Evidence relating to settlements is admissible under Rule 408 for purposes of assessing a claim for contribution. *See, e.g., Silent Hoist & Crane Co., Inc. v. Industrial Material Handling Systems, Inc.*, No. 95-642, 1995 U.S. Dist. LEXIS 3346, at *2-3 (E.D. Penn. March 14, 1995) ("Evidence of the allegations [in the complaint] would be admissible under Rule 408 to prove reasonableness of the settlement entered into between Silent Hoist and the Abels, an element of Silent Hoist's contribution claim."); *see also Ford Motor Credit Co. v. Meehan*, No. 05-4807, 2008 U.S. Dist. LEXIS 53192, at *15 (E.D. N.Y. July 11, 2008) (noting that "Rule 408 is not absolute," and denying motion to quash subpoena seeking settlement related documents because documents were relevant to assess reasonableness of settlement).

The Honorable Carl J. Barbier
December 12, 2011
Page 6

      For the foregoing reasons, HESI requests that BP's motion *in limine* be denied, and that PTO No. 38 be modified as necessary to permit admission of evidence of settlements for the limited purposes stated herein.

                                        Respectfully submitted,

                                        Donald E. Godwin