# EXHIBIT 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL BY THE OIL RIG
"DEEPWATER HORIZON" IN THE
GULF OF MEXICO, ON APRIL 20,2010

This document relates to:  11-275
(consolidated with 11-274)

MDL NO. 2179

SECTION "J" (1)

JUDGE BARBIER

MAGISTRATE JUDGE SHUSHAN

<u>MOTION FOR SUMMARY JUDGMENT</u>

According to Federal Rule of Civil Procedure 56, Certain Underwriters at Lloyd's, London and Various Insurance Companies ("Underwriters") respectfully move this Honorable Court to enter a summary judgment in their favor and against BP Exploration & Production, Inc. and its related entities (collectively, "BP") with respect to Underwriters' Complaint for Declaratory Judgment against BP, BP's Counterclaim(s), and Anadarko E&P Company LP, Anadarko Petroleum Corporation's, MOEX Offshore 2007 LLC's and Transocean Holdings, LLC  Complaints in Intervention (Rec. Docs. 1550, 1557, and 1755), all for the reasons set forth in the Court's Order and Reasons entered on November 15, 2011 (Rec. Doc. 4588).

Accordingly, for the reasons more fully detailed in the accompanying Statement of Uncontested Material Fact and Memorandum of Law, Underwriters urge the Court to grant them the relief sought.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:

Richard N. Dicharry (Bar #4929)
George M. Gilly (Bar #6234)
Evans Martin McLeod (Bar #24846)
Kyle S. Moran (Bar #33611
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Telecopier: 504-568-9130
Email: Richard.Dicharry@phelps.com
      George.Gilly@phelps.com
      Marty.McLeod@phelps.co
      Kyle.Moran@phelps.com

COUNSEL FOR CERTAIN UNDERWRITERS
AT LLOYD'S, LONDON AND VARIOUS
INSURANCE COMPANIES

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12 on this 14th day of December, 2011.

PD.5804957.1

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL BY THE OIL RIG
"DEEPWATER HORIZON" IN THE
GULF OF MEXICO, ON APRIL 20,2010

**This document relates to:  11-275
(consolidated with 11-274)**

MDL NO. 2179

SECTION "J" (1)

JUDGE BARBIER

MAGISTRATE JUDGE SHUSHAN


## STATEMENT OF UNCONTESTED MATERIAL FACTS

In support of their Motion for Summary Judgment, Certain Underwriters at Lloyd's, London and Various Insurance Companies ("Underwriters") provide the following statement of uncontested material facts for which there is no genuine issue to be tried:[1]

1.      This matter arises out of the April 20, 2010, blowout of the Macondo Well and the subsequent explosion and fire aboard the *Deepwater Horizon*, which was owned and operated by Transocean, Ltd. and its related entities (collectively, "Transocean").

2.      This casualty resulted in a massive release of oil below the surface of the Gulf of Mexico.

3.      At the time, the *Deepwater Horizon* was conducting drilling activities in Mississippi Canyon Block 252 pursuant to a drilling contract between Transocean

---

[1] As allowed by Federal Rule of Civil Procedure 10(c), Underwriters adopt by reference all exhibits attached by the parties in connection with the following motions/pleadings:   BP Exploration & Production, Inc. and its related entities' (collectively, "BP") Motion for Judgment on the Pleadings (Rec Doc. 3211); the Opposition filed by Underwriters (Rec. Doc. 3705); the Opposition filed by Transocean (Rec. Doc. 3849); Underwriters' Sur-Reply (Rec. Doc. 4351); and Transocean's Sur-Reply (Rec. Doc. 4353).

PD.5805139.2

and BP America Production Company (the "Drilling Contract").[2]  Transocean is "the world's largest offshore drilling contractor".[3]  BP is "one of the world's leading international oil and gas companies".[4]

4.      Anadarko E&P Company LP, Anadarko Petroleum Corporation (collectively "Anadarko"), and MOEX Offshore 2007 LLC ("MOEX") are joint venturers with BP in the Macondo well.

5.      At the time of this casualty, Transocean maintained several excess policies to which Underwriters subscribed (the "Excess Policies").[5]  The Excess Policies were placed by Transocean's broker, Aon.  Aon is a "leading global provider of risk management services, insurance and reinsurance brokerage".[6]

6.      The Excess Policies have similar terms, conditions and exclusions as a policy provided by Ranger Insurance Limited.[7]

7.      The Drilling Contract was the result of negotiations between BP and Transocean to which neither Underwriters nor Ranger were a party.

---

[2] A true and complete copy of The Drilling Contract is attached to BP's Motion for Judgment on the Pleadings as "Decl. of C. Wenk, Ex. C". (Rec. Doc. 3211) The Drilling Contract was executed by predecessors of Transocean (R&B Falcon Drilling) and BP (Vastar Resources).

[3] Excerpts from Transocean's website, www.deepwater.com, are attached to Underwriters' Memorandum Opposing BP's Motion for Judgment on the Pleadings. (Rec. Doc. 3705-3)

[4] Excerpts from BP's website, www.bp.com, are attached to Underwriters' Memorandum Opposing BP's Motion for Judgment on the Pleadings. (Rec. Doc. 3705-5)

[5] Excerpts of the Excess Policies are attached to BP's Motion for Judgment on the Pleadings as "Decl. of C. Wenk, Ex. E through Ex. L". (Rec. Doc. 3211).

[6] Excerpts from Aon's website, www.aon.com, are attached to Underwriters' Memorandum Opposing BP's Motion for Judgment on the Pleadings. (Rec. Doc. 3705-4)

[7] A copy of the Ranger Insurance Limited Policy is attached to BP's Motion for Judgment on the Pleadings as "Decl. of C. Wenk, Ex. D". (Rec. Doc. 3211).

PD.5805139.2

8.  The Excess Policies were the result of negotiations between Transocean, AON and Underwriters to which BP, Anadarko and MOEX were not parties.

PD.5805139.2

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: _____
Richard N. Dicharry (Bar #4929)
George M. Gilly (Bar #6234)
Evans Martin McLeod (Bar #24846)
Kyle S. Moran (Bar #33611
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Telecopier: 504-568-9130
Email: Richard.Dicharry@phelps.com
George.Gilly@phelps.com
Marty.McLeod@phelps.co
Kyle.Moran@phelps.com

COUNSEL FOR CERTAIN UNDERWRITERS
AT LLOYD'S, LONDON AND VARIOUS
INSURANCE COMPANIES

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12 on this 14th day of December, 2011.

_____

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL BY THE OIL RIG
"DEEPWATER HORIZON" IN THE
GULF OF MEXICO, ON APRIL 20,2010

This document relates to:  11-275
(consolidated with 11-274)

MDL NO. 2179

SECTION "J" (1)

JUDGE BARBIER

MAGISTRATE JUDGE SHUSHAN

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

**PHELPS DUNBAR LLP**

Richard N. Dicharry (Bar # 4929)
George M. Gilly (Bar #6234)
Evans Martin McLeod (Bar #24846)
Kyle S. Moran (Bar #33611)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Telecopier: 504-568-9130
Email: Richard.Dicharry@phelps.com
       George.Gilly@phelps.com
       Marty.McLeod@phelps.com
       Kyle.Moran@phelps.com

**ATTORNEYS FOR CERTAIN
UNDERWRITERS AT LLOYD'S,
LONDON AND VARIOUS INSURANCE
COMPANIES**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND ....................................................................................................3

      A.  THE DRILLING CONTRACT  ....................................................................3
      B.  THE EXCESS POLICIES ............................................................................5

III.  LAW AND ARGUMENT .......................................................................................7

      A.   SUMMARY JUDGMENT STANDARD ....................................................7
      B.  ANALYSIS...................................................................................................8

IV.   CONCLUSION.......................................................................................................9

PD.5805010.1

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Anderson v. Liberty Lobby,*
    477 U.S. 242, 106 S.Ct. 2505 (1986)................................................................. 8

*Capitol Indem. Corp. v. U.S.,*
    452 F.3d 428 (5th Cir. 2006) ...................................................................... 7

*Celotex Corp. v. Catrett,*
    477 U.S. 317, S.Ct. 2548 (1986)............................................................... 7,8

*National Ass'n of Gov't Employees v. City Pub. Serv. Bd.,*
    40 F.3d 698 (5th Cir. 1994) ...................................................................... 8

*U.S. v. ex rel. Patton v. Shaw Servs., L.L.C.,*
    418 F.App'x 366 (5th Cir. 2011) ............................................................... 8

### <u>OTHER AUTHORITIES</u>

Federal Rule of Civil Procedure 10(c) ................................................................. 3

Federal Rule of Civil Procedure 56(a)................................................................. 7

Federal Civil Judicial Procedure and Rules, 2010 Amendments Advisory
    Committee Notes (West 2001 rev. ed .pamph.)........................................... 7, 8

PD.5805010.1

## I.      INTRODUCTION

On November 15, 2011, this Court issued its Orders and Reasons in the Insurance Actions.[1]  Consistent with that Order and Reasons, Certain Underwriters at Lloyd's, London and Various Insurance Companies ("Underwriters") have moved for summary judgment according to Federal Rule of Civil Procedure 56.

Underwriters issued multiple excess liability policies to Transocean, Ltd. and its related entities (collectively, "Transocean") totaling $700 million in coverage for the period May 1, 2009 through May 1, 2010 ("the Excess Policies").  Shortly after the Macondo incident, BP Exploration & Production, Inc. and its related entities (collectively, "BP")  made a demand to Underwriters for unlimited in scope additional insured coverage under the Excess Policies. Underwriters subsequently filed this action seeking a judgment declaring that BP was not an additional insured under the Excess Policies "in connection with BP's pollution-related liabilities for the oil emanating from BP's well as a result of the fire, explosion, and sinking of Transocean's Deepwater Horizon on April 20, 2010."  BP responded with a counterclaim, and Anadarko E&P Company LP, Anadarko Petroleum Corporation (collectively, "Anadarko"), and MOEX Offshore 2007 LLC ("MOEX") filed complaints in intervention, all seeking expansive coverage rights under the Excess Policies.[2]  Specifically, BP, Anadarko and MOEX sought declarations that their status as additional insureds was not limited to the risks within the scope of Transocean's contractual indemnity obligations to BP in the underlying drilling contract between Transocean and BP (the "Drilling Contract").  BP also alleged counterclaims against Underwriters for breach of contract, subrogation, indemnity and contribution.  In addition,

---

[1] Rec. Doc. 4588.

[2] Rec. Docs. 1550 and 1557.

Transocean Holdings, LLC and its related entities (collectively, "Transocean") subsequently filed their complaint in intervention in which they sought relief consistent with Underwriters.

On July 8, 2011, BP filed its motion for judgment on the pleadings seeking "a final judgment in its favor in respect to all claims presented" in these Insurance Actions.[3] Anadarko and MOEX joined in BP's motion.[4]  On September 16, 2011, the Court heard oral arguments.

On November 15, 2011, this Court entered its Order and Reasons denying the motion.[5]

The Court held:

> The Court finds that BP, under the Drilling Contract, assumed responsibility for Macondo well oil release pollution liabilities. BP's assumption of pollution responsibility is found in Article 24.2, in which BP assumes pollution liabilities not assumed by Transocean in Article 24.1.  Article 24.1 allocates to Transocean liabilities for pollution originating on or above the surface of the water.  The Deepwater Horizon Incident entailed a subsurface release; thus, Transocean did not assume pollution liabilities arising from the Incident.  Further, because Transocean did not assume these liabilities under Article 24.1 of the Drilling Contract, BP assumed them under Article 24.2's catch-all provision: responsibility for pollution arising out of or connected with operations under the contract and not assumed by Transocean in Article 24.1.  Because Transocean did not assume these liabilities, there is no additional insurance obligation in favor of BP for these liabilities.[6]

Consistent with their request for leave at the status conference on November 18, 2011, Underwriters now move for summary judgment granting their request for declaratory judgment, dismissing with prejudice BP's counterclaim and Anadarko and MOEX's complaints in

---

[3] Rec. Doc. 3211; Rec. Doc. 4588 at page 1.

[4] Rec. Docs. 3411 and 3974.

[5] Rec. Doc. 4588 at page 1.

[6] Rec. Doc. 4588 at pages 40-41.

intervention, and granting Transocean's complaint in intervention for the same reasons explained by the Court in its Order and Reasons concerning the Insurance Actions.[7]

## II.   BACKGROUND

This matter arises out of the blowout of the Macondo Well and the subsequent explosion and fire aboard Transocean's *Deepwater Horizon*.  The casualty resulted in a massive release of oil into the Gulf of Mexico.

The *Deepwater Horizon* conducted drilling activities in Mississippi Canyon Block 252 pursuant to the Drilling Contract that defined the obligations of Transocean and BP and specifically identified and distinguished the liabilities that Transocean and BP separately assumed.  The Drilling Contract also required Transocean to name BP as an additional insured in its insurance policies for the certain, defined liabilities assumed by Transocean.  At the time of this casualty, Transocean maintained the Excess Policies.[8]

### A.   The Drilling Contract

The Drilling Contract is the source of BP's limited additional insured status.[9]  Articles 20 through 25 of the Drilling Contract identify and distinguish the liabilities that Transocean and BP respectively assumed.  Generally, Transocean assumed the liabilities of BP in connection with injuries to Transocean employees (Article 21.1), pollution originating on the surface of the water

---

[7] As allowed by Federal Rule of Civil Procedure 10(c), Underwriters adopt by reference all exhibits attached by the parties in connection with the following motions/pleadings:  BP's Motion for Judgment on the Pleadings (Rec Doc. 3211); the Opposition filed by Underwriters (Rec. Doc. 3705); the Opposition filed by Transocean (Rec. Doc. 3849); Underwriters' Sur-Reply (Rec. Doc. 4351); and Transocean's Sur-Reply (Rec. Doc. 4353).  Underwriters also specifically adopt by reference the briefs and papers filed by Underwriters and Transocean in response to BP's Motion for Judgment on the Pleadings, which include the Opposition filed by Underwriters (Rec. Doc. 3705); the Opposition filed by Transocean (Rec. Doc. 3849); Underwriters' Sur-Reply (Rec. Doc. 4351); and Transocean's Sur-Reply (Rec. Doc. 4353).  Additionally, to the extent applicable, Underwriters adopt and incorporate their arguments presented at the September 16, 2011, hearing on BP's Motion for Judgment on the Pleadings.

[8] Citations to the Excess Policies are to the excerpts attached to BP's Motion as Decl. of C. Wenk, Ex. E through Ex. L (Rec. Doc. 3211).

[9] This is so because BP is not mentioned in the Ranger Policy or the Excess Policies.

(Article 24.1), and other certain types of injuries and property damage set forth in the Drilling

Contract.[10]  Specifically, Article 24.1 of the Drilling Contract defines Transocean's obligations

with respect to pollution liabilities as follows:

> [Transocean] shall assume full responsibility for and shall protect,
> release, defend, Indemnify and hold [BP] and its joint owners
> harmless from and against any loss, damage, expense, claim, fine,
> penalty, demand, or liability for pollution or contamination,
> including control and removal thereof, **originating on or above
> the surface of the land or water, from spills, leaks, or
> discharges of fuels, lubricants, motor oils, pipe dope, paints,
> solvents, ballast, air emissions, bilge sludge, garbage or any
> other liquid or solid whatsoever in possession and control of
> contractor...** [11]

Article 24.2 defines BP's pollution liability obligations:

> [BP] shall assume full responsibility for and shall protect, release,
> defend, indemnify, and hold [Transocean] harmless from and
> against any loss, damage, expense, claim, fine, penalty, demand, or
> liability for pollution or contamination, including control and
> removal thereof, **arising out of or connected with operations
> under this Contract hereunder and not assumed by
> [Transocean] in Article 24.1 above** . . . .[12]

Article 20.1 of the Drilling Contract requires Transocean and its insurer(s) to provide

"insurance covering the operations to be performed under [the Drilling Contract] as set forth in

Exhibit C."[13]  Exhibit C to the Drilling Contract provides in relevant part:

> 1.   The insurance required to be carried by [Transocean] under
>      this Contract is as follows:
>
>      ****
>
>      c. Comprehensive General Liability Insurance, including
>         contractual liability insuring the indemnity agreement as
>         set forth in the Contract and products-completed

---

[10] Rec. Doc. 3211-2, Decl. of C. Wenk, Ex. C (TRN-MDL-0027313)(the Drilling Contract).

[11] *Id.*, Ex. C at 25 of 36 (TRN-MDL-0027340)(full capitalization removed, emphasis added).

[12] *Id.* (full capitalization removed, emphasis added).

[13] *Id.* at 22 of 36 (TRN-MDL-0027337).

operations coverage with a combined single limit of not less than $10,000,000 covering bodily injury, sickness, death and property damage. . .

****

3.      [BP], its subsidiaries and affiliated companies, co-owners, and joint venturers, if any, and their employees, officers, and agents shall be named as **additional insureds** in each of [Transocean's] policies, except Workers' Compensation **for liabilities assumed by [Transocean] under the terms of this Contract.**[14]

Accordingly, under the plain terms of the Drilling Contract, the insurance requirement is strictly limited to the liabilities Transocean assumed **"under the terms of this [Drilling] Contract."**

**B.      The Excess Policies**

The Excess Policies severally provide limits of $700 million excess of a $50 million policy issued by Ranger Insurance Limited ("the Ranger Policy"). The Excess Policies are similar to the terms, conditions and exclusions as the Ranger Policy.[15] The Excess Policies contain both general and specific conditions defining and limiting the scope of coverage for additional insureds for which Transocean may owe contractual indemnity. General Condition 4 of Endorsement 1 provides:

**ADDITIONAL INSURED/WAIVER OF SUBROGATION**

Underwriters agree **where required by written contract**, bid or work order, additional insureds are automatically included hereunder, and/or waiver(s) of subrogation are provided as may be required by contract.[16]

---

[14] *Id.* at 1-2 of 3 (TRN-MDL-0027434 – TRN-MDL-0027435)(emphasis added).

[15] Neither, BP, Anadarko or MOEX is identified in the Excess Policies (or the underlying Ranger Policy), and therefore reference to the Drilling Contract is necessary for BP, Anadarko or MOEX to have any additional insured entitlement and to assess the scope of that entitlement.

[16] Rec. Doc. 3211-2, Decl. of C. Wenk, Ex. E at 74 of 99 (TRN-MDL-00235754)(emphasis added)(First Excess Layer policy).

5

The Conditions of Section I – Protection and Indemnity – limit the scope of coverage to additional insureds:

III.

    D)    Subject to the terms, clauses and exclusions of this insurance, this insurance includes full blanket coverage for liabilities assumed by the Insured under contract or agreement, connected with and/or incidental to the Insured's activities as a drilling contractor, including turnkey drilling and from their offshore Exploration and Production, for all tort liabilities to own and/or third party personnel and/or third party property damage including the provisions more fully set out below.

****

    1.  The insured has a privilege to name others as an additional Insured for their respective rights and interests and/or waive any rights of recovery, **but only to the extent** as may be required under **contract or agreement.**[17]

Similarly, Section IIA – London Umbrella Policy, Endorsement No. 4, defines the applicable coverage to Transocean and additional insureds:

I.    Insuring Agreements

    1.    Coverage

    . . . Underwriters agree, subject to the Insuring Agreements, Conditions, Exclusions, Definitions and Declarations contained in this Policy, to pay on behalf of the "Insured" in respect of their operations anywhere in the World, for "Ultimate Net Loss" by reason of liability:

****

---

[17] *Id.* at 13 (TRN-MDL-00235693), ¶ III(D)(1) (emphasis added).

(b)     **assumed by the "Insured" under an
        "Insured Contract".**[18]

**** 

Consistent with the terms of the Drilling Contract and the Excess Policies, Underwriters respectfully request this Court to grant summary judgment by issuing the declarations they seek, dismissing BP's counterclaim and Anadarko and MOEX's complaints in intervention with prejudice, and granting Transocean's complaint in intervention because there are no genuine issues of material fact in dispute.  Such a judgment would be consistent with the Court's prior Order and Reasons.[19]

## III.    LAW AND ARGUMENT

### A. Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).[20]

The moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case. *Capitol Indem. Corp. v. United States*, 452 F.3d 428, 430 (5th Cir.2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91

---

[18] *Id*. at 89 of 99 (TRN-MDL-00235769)(emphasis added).

[19] Rec. Doc. 4588.

[20] Rule 56 was revised to "take effect on December 1, 2010, and shall govern in all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending." Order of the Supreme Court of the United States (Apr. 28, 2010), www.supremecourt.gov/orders/courtorders/frcv10.pdf. "[T]he standard for granting summary judgment remains unchanged" by the revision.  Federal Civil Judicial Procedure and Rules, 2010 Amendments Advisory Committee Notes, at 260 (West 2011 rev. ed. pamph.) (the "Advisory Committee Notes").

L.Ed.2d 265 (1986)). "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact." Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir.1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim. *Id.* (citing *Celotex*, 477 U.S. at 321–23); *accord U.S. ex rel. Patton v. Shaw Servs., L.L.C.*, 418 F. App'x 366, 371 (5th Cir .2011). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323; *accord U.S. ex rel. Patton*, 418 F. App'x at 371.

## B.  Analysis

Applying these summary judgment standards, the Court should grant Underwriters' motion for summary judgment for all the same reasons the Court declared in its Order and Reasons concerning the Insurance Actions.[21]  As BP readily admitted in its motion for judgment on the pleadings, the issues decided by the Court in its Order and Reasons "present[ed] strictly legal questions."[22]  So, there is no genuine issue of any material fact that would preclude this Court from entering a judgment in Underwriters' favor as a matter of law.  Specifically, the Court should summarily issue the following declarations in favor of Underwriters:

---

[21] Rec. Doc. 4588.

[22] Rec. Doc. 3211-1, BP's Memorandum in Support of Motion for Judgment on the Pleadings, at p. 12.

8

i.      BP assumed full responsibility in the Drilling Contract for any and all liabilities arising out of or in any way to the subsurface release of oil from BP's well.

ii.     The additional insured status in the Drilling Contract does not extend to the pollution liabilities BP (or Anadarko or MOEX) has incurred and will incur with respect to oil emanating from BP's well.

iii.    Underwriters have no additional insured obligation to BP (or Anadarko or MOEX) under of the Excess Policies for the pollution liabilities BP (Anadarko or MOEX) has incurred and will incur with respect to the oil emanating from BP's well.

iv.     BP, Anadarko or MOEX is not entitled to coverage under the Excess Policies for the pollution liabilities BP, Anadarko or MOEX has incurred and will incur with respect to the oil emanating from BP's well.[23]

Additionally, the Court should dismiss with prejudice BP's counterclaim and Anadarko and MOEX's complaints in intervention.

## IV.   CONCLUSION

Because there is no genuine issue of any material fact and Underwriters are entitled to judgment as a matter of law, the Court should enter summary judgment in Underwriters' favor on all pending claims for all the same reasons that the Court has explained its November 15, 2011, Order and Reasons concerning the Insurance Actions.

---

[23] Transocean's Complaint in Intervention, Rec. Doc. 1755, seeks the same declarations. This motion would also be dispositive of Transocean's claims.

9

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: _____

Richard N. Dicharry (Bar #4929)
George M. Gilly (Bar #6234)
Evans Martin McLeod (Bar #24846)
Kyle S. Moran (Bar #33611
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Telecopier: 504-568-9130
Email: Richard.Dicharry@phelps.com
George.Gilly@phelps.com
Marty.McLeod@phelps.co
Kyle.Moran@phelps.com

COUNSEL FOR CERTAIN UNDERWRITERS
AT LLOYD'S, LONDON AND VARIOUS
INSURANCE COMPANIES

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by

electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order

No. 12 on this 14th day of December, 2011.

_____

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20,2010 | MDL NO. 2179 |
| | SECTION "J" (1) |
| This document relates to:  11-275 (consolidated with 11-274) | JUDGE BARBIER |
| | MAGISTRATE JUDGE SHUSHAN |

## ORDER

Considering the foregoing motion,

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed on behalf of Certain Underwriters at Lloyd's, London and Various Insurance Companies is hereby GRANTED.

New Orleans, Louisiana, this _____ day of _____, 2012.


_____
Carl J. Barbier
United States District Court Judge