# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

December 15, 2011

**By Electronic Mail**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court
Room B345
500 Poydras Street
New Orleans, LA  70130

> Re:   *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico,*
> *on April 20, 2010*, MDL No. 2179

Dear Judge Shushan:

This letter requests that the Court compel the United States to produce responsive documents uniquely within its possession that are located only on a specific archive server created for the specific purpose of retrieving email for, among other things, litigation discovery.

The Parties have met and conferred extensively on this issue, but have been unable to resolve it.  For reasons stated below, BP respectfully requests this Court compel the United States to produce responsive, non-privileged documents located on its Zantaz server that pre-date the United States' legal hold for 61 individual BOEMRE custodians.

## INTRODUCTION

The documents at issue are documents from the Department of Interior Zantaz server that pre-date the United States' legal hold for 61 individual BOEMRE employees.  The United States was originally producing from the Zantaz server, but has since sought to stop doing so even though it has admitted that its current production of BOEMRE documents only from its "live" sites — such as the custodians' hard drives and local servers (the "Live Repository") — would not include numerous search-term responsive documents available solely from the Zantaz server.

By accessing the Zantaz archive, emails dated before the United States' legal hold can be retrieved, and responsive, non-privileged documents relevant to Phase 1 and Phase 2 issues can be produced.  For instance, by querying the Zantaz server the parties can obtain the emails responsive to BP's multiple requests for production of documents concerning well design, well

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
December 15, 2011
Page 2


operations, well control, and spill preparedness, among other important topics.  (*See* Attachment 1.)  The Court should compel the United States to continue with its original practice of producing documents from the Zantaz server for the following reasons.

*First*, these unique, responsive, non-privileged documents reside on a "reasonably accessible" electronic archive.  The Department of Interior, in fact, created this archive during another litigation precisely so it could search for and retrieve email.  In light of this case's significance and the stakes involved, the parties should not go to trial without first obtaining these known, responsive, highly significant documents.

*Second*, the costs and other burdens of searching the Zantaz server are predictable and modest when viewed in the perspective of the very substantial quantity and likely significance of documents residing there.  At its own cost, BP performed a rigorous analysis, described below, that establishes quantitatively that thousands of responsive non-privileged emails are available *only* from the Zantaz server.  The benefits of accessing these documents justify the costs associated with obtaining them.

## BACKGROUND

The United States Department of Interior maintains an archive server that captures all email sent to or from BOEMRE employees and employees in certain other sub agencies.  This server, operated by a third-party vendor named Autonomy, is called the BOEMRE Zantaz server.

The United States originally produced from the Zantaz archive for four deponents.  But, on August 3, 2011, the United States wrote BP to say it would not collect and produce documents from the Zantaz server for the remaining approximately 130 BOEMRE custodians. (Attachment 2, S. Himmelhoch Ltr. to R. Gasaway (Aug. 3, 2011).)  The United States said that doing so would impose an "unreasonable burden."  *Id.*  Instead, the United States stated it would only collect documents from the "active and in house archives at the Department" — for example, the custodians' hard drives and local servers.  *Id.*

The United States asserted that any emails in the Zantaz archive would likely duplicate those in the Live Repository.  Nonetheless, the United States "acknowledge[d], however that for pre-spill emails the collection in-house is likely to be less complete than the Autonomy archive." *Id.* at 2.  A collection from the Zantaz archive, were the United States to undertake one, would encompass emails that are responsive to search criteria already negotiated and agreed upon between BP and the United States.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
December 15, 2011
Page 3


To its credit, the United States offered that, in the event BP wanted to test the United States' assertions regarding the level of duplication between the Zantaz server and the Live Repository, BP could do so as long as the analysis was performed at BP's expense. BP agreed to shoulder this burden. (Attachment 3, M. Nomellini email to S. Himmelhoch (Aug. 30, 2011).)

After weeks of back-and-forth discussion, BP and the United States executed a confidentiality agreement, signed by BP's contractors, on October 7, 2011. The United States then sent relevant data on October 20, 2011, to BP's contractors so the documents appearing in a four-custodian sample of the Zantaz archive could be compared with the equivalent collection in the Live Repository. The goal was to identify documents found *only* in the Zantaz archive — not in the Live Repository — that contain an agreed-upon search term but do *not* contain one of the United States' privilege search terms. In other words, this analysis was specifically targeted to identify responsive, non-privileged emails uniquely resident on the Zantaz server.

BP then presented the initial results of this comparison to the United States on November 11, 2011. After the United States made certain inquiries, BP's contractors ran a second comparison, taking account of the United States' input. BP, its contractors, and the United States participated in two meet-and-confer conferences in an effort to insure that BP was mirroring, as closely as possible, the United States' production process.

The results of this second comparison analysis are unambiguous. They establish conclusively that thousands of unique non-privileged emails responsive to the parties' agreed-upon search terms are located solely on the Zantaz server *for just the four custodians* analyzed. (BP understands that these may be the only four custodians for whom the United States had Zantaz server data readily available for testing purposes.) By inference, it is likely that tens if not hundreds of thousands of unique responsive non-privileged documents are located in the Zantaz archive just for the BOEMRE custodians BP has identified.

Nonetheless, the United States has declined to revisit its decision not to produce Zantaz documents. In an effort to compromise, BP offered to more than halve the number of custodians whose email would be subject to search — to 61 from over the 130 custodians already agreed-upon. BP also agreed also to only request documents dated before the United States' litigation hold, based on the United States' representation that documents dated after the litigation hold would have been preserved in the Live Repository. (Attachment 4, A. Pixton email to S. Himmelhoch email to A. Pixton (Dec. 13, 2011).) Still, the United States declined to revisit its decision not to produce Zantaz documents.

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
December 15, 2011
Page 4

**ANALYSIS**

I.    THE UNITED STATES BEARS THE BURDEN OF PROVING EMAILS ARCHIVED FOR
      THE PURPOSE OF FUTURE RETRIEVAL ARE NOT REASONABLY ACCESSIBLE.

      The United States bears the burden of demonstrating that the responsive, non-privileged emails located only on the Zantaz server are so costly and burdensome to provide that they are "not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B).

      As a general matter, archives like Zantaz are considered reasonably accessible — as opposed to back-up tapes, which are commonly used for disaster recovery. *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318-20 (S.D.N.Y. 2003). An archive differs markedly from tape back-up systems, which are used only for disaster recovery and are not intended to maintain information in a reasonably accessible format. Indeed, one of the selling points of the Zantaz system is that it was designed to ease the burden of complying with electronic discovery requests. Autonomy touts Zantaz on its website as "end-to-end eDiscovery for the largest and most complex legal and regulatory matters." *See* http://www.autonomy.com/content/News/Releases/2008/0722.en.html. Autonomy also boasts that Zantaz "enables eDiscovery across the organization …." *Id.*

      Accordingly, the United States should not now be allowed to maintain that archived emails are not readily accessible, when these documents are located on a server created precisely so that there is a system in place that reliably and comprehensively stores email and allows for efficient, low-cost retrieval when needed for purposes such as electronic discovery. (*See* Attachment 5, Int. Defs.' Mot. in *Cobell v. Norton*, No. 96-cv-01285 (D.D.C. Aug. 14, 2002).)

      Courts routinely take into account a producing party's own decisions to archive documents in an allegedly "inaccessible" format when considering whether producing that data creates an undue burden or expense. *See, e.g.*, *Starbucks Corp. v. ADT Sec. Services, Inc.*, No. 08-900, 2009 WL 4730798, at *6 (W.D. Wash. Apr. 30, 2009). In *Starbucks*, the court ordered production from an email archive system, reasoning, in part, that "[i]t is difficult to conclude that the ESI sought in this case is 'not reasonably accessible' in light of the fact that the [archive] [s]ystem continues to be used by ADT personnel." *Id.*

      The United States nonetheless appeals to the time and expense associated with retrieving the emails resident on its Zantaz server. However, using the quotation the United States provided to BP for 130 custodians, and adjusting for the smaller list of 61 custodians, BP estimates that the costs of performing the relevant queries should be approximately $140,000, based on information provided by BP's contractors. (*See* Attachment 6.)

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
December 15, 2011
Page 5


But even if the United States' estimates were accurate, the cost of this project still would be reasonable, given the importance of this case. The amounts that many parties have spent responding to discovery requests, including the United States' discovery requests, doubtlessly dwarfs the estimated cost to the United States of querying this one server. BP appreciates that the United States' current budget is restrictive in the short term. But any short-term budget constraints simply do not absolve the United States, or any party, from the Federal Rules of Civil Procedure. *See Bradley v. United States*, 866 F.2d 120, 126 (5th Cir. 1989). As the Fifth Circuit has emphasized, "All parties are expected to conform their conduct to these rules …; this is even more true for the federal government, a party that regularly appears before the federal courts, knows the rules by which they operate, and is even at times a special beneficiary of those rules." *Id*.

## II. THE RELEVANCE OF THE ZANTAZ DOCUMENTS OUTWEIGHS ANY BURDEN OF COLLECTING AND PRODUCING THEM.

The Court should compel the United States to produce the unique, responsive documents located on the Zantaz server because those documents are *only* available from this server and their importance outweighs the burden of providing them.

Under Rule 26(b)(2)(B) and (C), even if the United States shows unreasonable accessibility (which it cannot), "the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)." Fed. R. Civ. P. 26(b)(2)(B). That rule, in turn, permits a court to limit discovery when the discovery sought (1) "is unreasonably cumulative or duplicative," (2) "can be obtained from some other other source that is more convenient, less burdensome, or less expensive," or (3) involves "burden or expense" that "outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues," Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). None of these conditions exist here.

### A. BP Has Proved, At Its Own Expense, That Tens Of Thousands Of Relevant Documents Are Available Only From The Zantaz Archive.

Far from this discovery being "cumulative," "duplicative," or available "from some other source," the Zantaz archive is the the only source for thousands, if not tens of thousands, of responsive, non-privileged documents that would not be produced if the United States were allowed to collect only from the sources it wishes to search.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
December 15, 2011
Page 6


As discussed above, the United States asked that, if BP wished to determine whether there were unique documents resident in Zantaz archive, BP do so at its own expense using its own contractor.  (*See* Attachment 3.)  BP agreed to do so.  The analysis subsequently conducted by BP's contractors attempted to replicate the processes the United States uses to locate responsive, non-privileged documents as applied to documents dated before May 1, 2010 — the approximate date of the United States' "early May 2010" litigation hold.  (*See* Attachment 2, at 2.)

Briefly, the United States provided BP's contractors with a sample of four custodians' emails drawn from both the current, Live Repository collection sites and from the Zantaz archive.  These four custodians were the ones for whom the US actually produced Zantaz documents.  The two data sets — Live Repository and Zantaz — were then "de-duplicated" and organized into three clusters:  (1) Zantaz-only email; (2) Live Repository only email; and (3) email that appears in both the Live Repository and the Zantaz archive.  Next, the Parties' agreed-upon responsive search terms were applied to each document set, and after that, pursuant to a confidentiality agreement with the United States, BP's contractors applied the United States' confidential privilege terms, removing those documents that were "hits."  In this fashion, BP's contractors attempted to replicate the process the United States uses to locate responsive, non-privileged documents.  The results of this analysis are summarized below:

| CUSTODIAN | Zantaz Only | Live Only | Live and Zantaz | TOTAL |
|---|---|---|---|---|
| Neal, Eric | 1,428 | - | 13 | 1,441 |
| Neal, Robert | 1,337 | - | 23 | 1,360 |
| Patton, Frank | 5,324 | 11 | 2,043 | 7,378 |
| Saucier, Mike | 10,031 | 20 | 4,095 | 14,146 |
|  | 18,120 | 31 | 6,174 | 24,325 |

| SOURCE | TOTALS | % |
|---|---|---|
| Zantaz Only | 18,120 | 74.5% |
| Live Only | 31 | 0.1% |
| Live and Zantaz | 6,174 | 25.4% |
| Total | 24,325 | 100.0% |

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
December 15, 2011
Page 7

The above tables show that *a full 74.5%* of the total number of responsive, non-privileged documents dated before May 1, 2010, are found *only* in the Zantaz archive. This figure demonstrates that the Zantaz archive contains a large quantity of non-privileged documents that are responsive to the agreed-upon search terms—indeed a greater quantity than the Live Repository. (Because Zantaz is intended to function as a reliable and comprehensive archive, there of course *should be* zero documents that appear only in the Live Repository. But some email will fall into this category, such as email drafts that are never sent.)

Indeed, Zantaz is the sole source of certain Phase 1 trial exhibits on the United States' own exhibit list — exhibits that would not have seen the light of day if not for four custodial productions that included Zantaz materials before the United States announced that it would no longer produce documents from the Zantaz server. (*See, e.g.*, Pls. Combined Phase One Ex. List (Doc. 4715), Ex. Nos. 4016, 4017, 4035.)

And it is almost certainly true that Zantaz uniquely contains additional documents highly relevant to both Phase 1 and Phase 2 of the litigation. For example, emails and other documents from BOEMRE custodians analyzing and discussing these important issues do not exist in the locations, such as the eWell databases, to which the United States seeks to limit discovery. (*See* Attachment 4, S. Himmelhoch email to A. Pixton (Dec. 13, 2011).) Only by querying the Zantaz server can the parties obtain the full compliment of emails and attachments responsive to the multiple written discovery requests for documents concerning critical topics regulated by BOEMRE, such as well design, well operations, well control, and spill preparedness, among many others. (*See* Attachment 1.). As the Court well knows, these hotly contested Phase 1 and Phase 2 issues, among others, form the basis for the various parties' allegations of gross negligence on the part of BP.

### B.      Good Cause Exists To Compel The Production Of These Documents.

Under such circumstances, the proportionality analysis for weighing the benefits and importance of production against the attendant burdens and costs clearly establishes that the United States should be directed to retrieve Zantaz documents from the 61 previously-agreed-upon custodians from whom BP continues to seek Zantaz discovery. As emphasized above, Zantaz is the sole source for thousands of responsive, non-privileged documents. Nor can there be any doubt about the importance to this litigation of the issues likely addressed by these documents.

Accordingly, BP respectfully requests that the Court direct the United States to begin immediately collecting from the Zantaz archive and to produce by January 15, 2012, all responsive, non-privileged documents retrieved in the process.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
December 15, 2011
Page 8

\*     \*     \*

        Were the roles in this motion reversed, there is little doubt that most if not all of the most vocal parties in this MDL would push for BP to make the extra effort required to produce all responsive, pre-litigation-hold emails maintained in a litigation-ready archive and retrieval system.  Nonetheless, BP has offered two compromises here:  (1) BP asks only for documents on the Zantaz server dated before the United States instituted its legal hold; and (2) BP asks only for data from 61 custodians, out of a much larger number that had originally been agreed to between the parties.  These requests are eminently reasonable.

        Accordingly and for the foregoing reasons, BP respectfully requests that the Court grant this motion.

                                        Respectfully submitted,

                                        Robert R. Gasaway

Enclosures

cc (via electronic mail):

R. Michael Underhill
Steven O'Rourke
Sarah Himmelhoch
J. Andrew Langan, P.C.
Joseph A. Eisert
Mark J. Nomellini
Barry E. Fields, P.C.
Stuart A.C. Drake
Joel M. Gross
Don K. Haycraft
Defense Liason Counsel
Plaintiffs' Liason Counsel
Hon. Luther Strange
Corey L. Maze