**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179<br><br>SECTION J |
| This document relates to: | * * | Judge Barbier |
| *All Cases* | * * | Magistrate Judge Shushan |


**BP'S REPLY MEMORANDUM TO TRANSOCEAN'S OPPOSITION TO BP'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

Joel M. Gross
Arnold & Porter, LLP
555 12th Street N.W.
Washington, DC  20002
Telephone: (202) 942-5705
Facsimile: (202) 942-5999

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
R. Chris Heck
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Patrick F. Philbin
Kirkland & Ellis LLP
655 Fifteenth Street N.W.
Washington, DC  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Attorneys for BP p.l.c., BP Exploration & Production Inc.,
and BP America Production Company*

Despite taking the opportunity to file two separate briefs,[1] Transocean fails to come to grips with the settled principles that both BP and the United States have explained showing that federal public policy precludes contractual indemnification for liabilities imposed as punishment — such as statutory fines and penalties and punitive damages.  Transocean cannot cite a single case upholding an *ex ante* contractual indemnity provision shifting responsibility for a statutory fine designed to punish a particular violator of statutory standards.  Nor, contrary to Transocean's claims, does any provision of the Oil Pollution Act ("OPA") authorize indemnification for penalties imposed under the Clean Water Act ("CWA").  Similarly, Transocean provides no response whatsoever to decisions of this Court squarely holding that, under maritime law, public policy precludes enforcing a contractual indemnification for punitive damages.  As a result, BP's cross-motion should be granted.

I. **FEDERAL POLICY PROHIBITS CONTRACTUAL INDEMNIFICATION FOR FINES AND PENALTIES UNDER THE CLEAN WATER ACT.**

Transocean's twin memoranda fail to respond to the fundamental point pressed by both the United States and BP — that where a statutory penalty is designed to punish and deter a specific actor, an *ex ante* contractual indemnification purporting to shift financial responsibility for the penalty frustrates the policy embodied in the statute.  As a result, such an indemnification cannot be enforced.  Instead, Transocean's responses boil down to a series of diversions.

---

[1]  Transocean has filed two Replies: "Transocean's Reply to BP's Response to Transocean's Motion for Partial Summary Judgment and Transocean's Opposition to BP's Cross-Motion for Partial Summary Judgment," Dkt. 4867, Nov. 12, 2011 (the "First Reply"),  and "Transocean's Reply Memorandum to United States Memorandum Opposing Transocean's Motion for Partial Summary Judgment for Indemnity From BP," Dkt. 4862, Nov. 12, 2011 (the "Second Reply").  Because most of Transocean's arguments in favor of enforcing contractual indemnification provisions for damages designed to punish are in the Second Reply, this brief focuses on the Second Reply.

*First*, Transocean complains that the United States has not cited any case in which contractual indemnities for CWA penalties were disallowed.  Second Reply at 9.  It is true that no court has addressed this issue specifically under the CWA.  But the United States and BP cited a number of cases refusing to enforce contractual indemnities for fines and penalties under other, similar statutes.  *See, e.g.*, *Chung v. Overseas Navigation Co.*, 774 F.2d 1043, 1052-1053 (11th Cir. 1985); *Beerman Realty Co. v. Alloyd Asbestos Abatement Co.*, 653 N.E.2d 1218, 1221-1223 (Ohio Ct. App. 1995).  Such decisions establish the general principle that fines and penalties cannot be contractually indemnified because private agreements to shift responsibility for the penalties would undermine the punitive and deterrent effect the penalties are intended to have.  As a result, an *ex ante* indemnification would impermissibly frustrate the policy objectives embodied in the statute.  The same principle applies equally to fines and penalties under the CWA.

Transocean does not seriously dispute that penalties under the CWA are intended to have a punitive and deterrent effect.  To the contrary, Transocean has abandoned its initial bold assertion that "civil penalties under the CWA are primarily 'remedial' in nature and are 'analogous to traditional civil damages.'"  TO Mem. at 36.  Instead, Transocean now concedes, as it must, that CWA penalties are actually intended, at least in part, to deter and punish violations of the Act.  *See* Second Reply at 8 (noting that the cases cited by the United States "make clear that CWA penalties have *multiple* goals, including punishment, deterrence, compensation, and restoring the status quo.") (emphasis in original).  In fact, as already explained in detail by BP and the United States, the overarching purpose of CWA penalties is to punish violators and deter future violations of the Act.  *See* BP Mem. at 18-20; U.S. Opp. at 5-6.  As the brief for the United States, filed on behalf of the agencies that enforce the CWA, has

2

explained, important public policy goals of punishment and deterrence would be undermined if CWA violators were permitted to shift liability for their CWA penalties.

In addition, far more significant than the absence of a specific case under the CWA prohibiting indemnification is the fact that Transocean cannot cite a single case *allowing* contractual indemnities for civil penalties under *any* environmental law or, for that matter, under any federal or state law.  Thus, Transocean is asking this Court to do something no other court has done — to enforce a party's effort to prospectively contract away its civil penalty liability arising from its own violation of the law.  By contrast, the United States and BP ask only that the Court apply an established principle of law to an analogous circumstance.

*Second*, Transocean claims that the CWA does not indicate an intention that penalties should be borne by a specific person.  According to Transocean, because "CWA penalties are assessed based on strict liability and are *mandated* whenever there is a violation, regardless of blame," CWA penalties cannot be perfectly tailored to a violator's culpability, and thus there should be no problem with shifting responsibility for penalties by contract.  Second Reply at 7. That argument ignores the significance of the provisions in the CWA specifying that penalties should be assessed based on enumerated factors, most of which are tied directly to the conduct of the particular party responsible for the oil spill: "the economic benefit *to the violator,* if any, resulting from the violation" and "the degree of culpability involved," as well as "any history of prior violations"; "the nature, extent, and degree of success of any efforts *of the violator* to minimize or mitigate the effects of the discharge"; and " the economic impact of the penalty *on the violator*." 33 U.S.C. § 1321(b)(8) (emphases added).  These provisions presuppose that it is the "violator" that will pay the penalty, not a third party.  And while liability for a penalty under the CWA is determined without consideration of fault, a violator's relative culpability is

3

explicitly considered in determining the *amount* of the penalty. In other words, the penalty is, in fact, specifically tailored to the individual violator, and a violator that is not at fault will be assessed a lower penalty as a result. Transocean's reasoning provides no basis for allowing a violator to contract away liability for a penalty specifically tailored to that violator.

In addition, Transocean's argument overlooks the inconvenient fact that an *ex ante* contractual indemnification has nothing to do with reassigning penalties based on a more nuanced assessment of fault. Instead, it provides a wholesale shifting of responsibility for the fines, in advance, before relative levels of culpability for any particular spill could possibly be known.

*Third*, Transocean seeks to confuse the issue before the Court on this cross-motion with the issue of Transocean's ultimate liability for CWA penalties, an issue raised by the United States in its recent motion for partial summary judgment. Second Reply at 1-3. The two issues are distinct. BP's cross-motion seeks a ruling that there is no indemnification obligation with respect to Transocean's civil penalties, whatever those civil penalties may turn out to be.

*Fourth*, Transocean claims that, in its view, OPA provisions essentially divide responsibility between drilling contractors and well owners along an above-surface/subsurface line and that, as a result, there cannot be any public policy problem with a contract that (in Transocean's view) shifts responsibility for *CWA* penalties along the same purported dividing line. Transocean asserts that "[i]t makes no sense that, having specifically provided in Title I of OPA that a MODU owner/operator should not be held strictly liable for underwater discharges from an offshore facility, Congress intended that the same MODU owner/operator must incur strict liability for underwater discharges under the per barrel penalty provisions which Title IV of **the same Act** added to the CWA." Second Reply at 5 (emphasis in original).

Congress, however, established a very different construct for liability in CWA Section 311 than it did in OPA. Both OPA and CWA Section 311 impose liability on the owners and operators of vessels and facilities, but the two statutes define those subject to liability differently. OPA imposes liability on specifically defined "Responsible Parties," 33 U.S.C. §§ 2701(32), 2704(b) (including "the lessee or permittee of the area in which the facility is located or the holder of a right of use and easement granted under applicable State law or the Outer Continental Shelf Lands Act [OCSLA]," but not including the "person[s] in charge" liable under the CWA), whereas CWA Section 311 imposes liability on any "owner, operator, or person in charge of any vessel, onshore facility, or offshore facility." 33 U.S.C. § 1321(b)(7)(A) (not including the OCSLA leaseholders liable under OPA). Where the plain terms of the two statutes impose liability for different categories of parties based on different criteria, it flies in the face of the choices made by Congress for Transocean to claim that there can be no problem with attempts by private contract to effectively rewrite the CWA to have it operate more like the construct Transocean sees in OPA. This Court will decide in the future either: (a) that Transocean is liable for civil penalties under CWA Section 311 for releases of oil below the water; or (b) that Transocean is not liable for such civil penalties. If the Court adopts the second position, then Transocean will have no need for any indemnity; if the Court adopts the first position, then it will have rejected Transocean's argument.

*Fifth*, Transocean's claim that OPA Section 1010(a), 33 U.S.C. § 2710, authorizes indemnification of CWA penalties continues to be misguided. To start with, as the United States has explained, *see* U.S. Opp. at 14-15, the legislative history of OPA makes clear that OPA Section 1010(a) was not intended to apply to civil penalties under the CWA, but rather was intended to apply only to the provisions in OPA itself that impose *liability* for cleanup and

5

compensatory damages. *See* OPA Section 1002(a), (d), 33 U.S.C. § 2702(a), (d). Although Congress amended the civil penalty provisions of the CWA at the same time it enacted OPA, CWA penalties are authorized by the CWA, not by OPA, and Congress maintained the separate codification of the two statutes in 1990. Furthermore, in contrast to the specific liabilities set forth in OPA Section 1002, civil penalties under the CWA are not referred to in the statute as "liabilities." The absence of any reference to "liability" in CWA Section 311 further supports the conclusion that Congress did not intend to include CWA penalties within the indemnification provisions of OPA Section 1010(a), which exclusively applies to any "liability" under the OPA.

In addition, even if OPA Section 1010(a) were intended to cover CWA penalties, Transocean vastly overstates the implications of that provision. And in doing so, Transocean misrepresents the United States' characterization of the statute. Transocean claims that "[t]he United States recognizes that OPA section 1010, 33 U.S.C. § 2710, authorizes indemnity." Second Reply at 5. To the contrary, the United States has correctly explained that nothing in OPA Section 1010(a) *authorizes* indemnification. Rather, that provision stands only for the proposition that nothing in OPA itself *prohibits* indemnification.[2] OPA Section 1010(a) thus cannot be read to supersede important public policy concerns dictating that contractual indemnities for civil penalties under the CWA are unenforceable.

---

[2] Moreover, OPA Section 1010(a) must be read in connection with Section 1010(b). Section 1010(a) was necessary to clarify that OPA itself did not prohibit indemnification agreements because Section 1010(b) *did prohibit* actual transfers of liability. *See, e.g.*, S. Rep. No. 101-94, at 14, reprinted in 1990 U.S.C.C.A.N. 722, 736 ("Liability may not be transferred, but nothing in section 102(f) bars any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section."); H.R. Rep. No. 101-242, pt. 2, at 63 ("This subsection also makes it clear that the prohibition against transferring liability by agreement does not preclude agreements in which another person may agree to pay for all or part of the liability to which a responsible party may be subject.").

6

*Sixth*, Transocean claims that the United States' rationale for distinguishing equitable indemnification is "illogical." Second Reply at 7. But to make that claim, Transocean simply distorts the United States' position. Neither the United States nor BP claimed that "civil penalties assessed under the CWA" are "perfectly tailored to match each violator's culpability." *Id.* Nor does the critical distinction between *post hoc* equitable indemnification and an *ex ante* contractual indemnification rest on such claim.

As BP has explained, *see* BP Mem. at 20-21, equitable indemnification after an accident merely apportions penalties between joint tortfeasors based on their relative culpability, thus incentivizing each to act prudently. Permitting contractual indemnification against the full amount of civil penalties prior to a violation, on the other hand, shifts responsibility for the penalties without regard to culpability and undermines the indemnitee's incentive to comply with the CWA. The public policy concerns implicated when a culpable party is able to prospectively contract away its penalty liability are thus entirely absent in the case of equitable indemnification. Transocean provides no response at all to that straightforward point.

## II. THE DRILLING CONTRACT DOES NOT PROVIDE FOR, AND PUBLIC POLICY DOES NOT PERMIT, INDEMNIFICATION FOR PUNITIVE DAMAGES.

As for punitive damages, Transocean's response to BP's contractual arguments is meritless. And Transocean provides no response at all on BP's public policy points.

Transocean admits that the specific indemnity provisions of the Drilling Contract do not, by their plain terms, include indemnification for punitive damages. First Reply at 6. Instead, Transocean relies on the supposed breadth of Paragraph 25.1 to reach punitive damages. To begin with, for the reasons explained in BP's opening memorandum, Paragraph 25.1 does not apply to Paragraph 24.2, which provides indemnity for pollution and contamination costs. Even if 25.1 were considered, it simply does not include punitive damages. While Transocean

7

rhetorically claims that "[m]ore all-encompassing language cannot be imagined" than what is in Paragraph 25.1, First Reply at 5, no intellectual gymnastics are required to imagine an indemnity that — unlike Paragraph 25.1 — expressly includes the words "punitive damages." Because the parties chose not to include punitive damages in the indemnity, BPAP has no obligation to indemnify Transocean for punitive damages.

Next, Transocean claims that because Paragraph 25.1 includes gross negligence, it should also be read to cover punitive damages. But the term "gross negligence" is not remotely a synonym for punitive damages. Compensatory damages are recoverable for gross negligence, and thus the term "gross negligence" cannot automatically be assumed to include punitive damages. Transocean's fast and loose approach to the contractual language ignores the settled maritime law rule that "[i]ndemnity agreements are to be strictly construed." *Smith v. Tenneco Oil Co.*, 803 F.2d 1386, 1388 (5th Cir. 1986). As explained in BP's opening memorandum, moreover, maritime law also requires that indemnity for extraordinary obligations, such as punitive damages, must be clearly expressed in unequivocal terms. *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332-33 (5th Cir. 1981). Applying that principle, this Court has expressly held that, where "the indemnity provision does not specify that it encompasses punitive damages, the Court will not enforce the indemnity obligation with respect to any such damages found to be owed." *Ruehs v. Alliance Offshore, L.L.C.*, No. 05-6360, 2007 WL 275915, at *1 (E.D. La. Jan. 26, 2007). Nothing in *Ruehs* suggests that the result might have been different if the contractual indemnity had covered "gross negligence." A reference to "gross negligence" does not, by any stretch, provide a clear and unequivocal agreement to indemnify another for punitive damages. Not surprisingly, Transocean cannot cite a single case supporting that

8

proposition. Instead, Transocean is forced to rely on an irrelevant Minnesota district court case interpreting a Minnesota statute.[3]

Finally, Transocean simply fails to offer any relevant argument or case law in response to maritime decisions holding that indemnification of punitive damages is against public policy. *E.g.*, *Daughdrill v. Ocean Drilling & Exploration Co. (ODECO)*, 665 F. Supp. 477, 481-82 (E.D. La. 1987). Nor does Transocean cite a single case holding that a party's use of particular language in multiple contracts, or adoption of reciprocal indemnities, has any relevance to public policy limits on contracts. Indeed, Transocean's claims concerning the importance of freedom of contract and reciprocal indemnities ring hollow in light of its own attempt to invalidate the knock-for-knock personal injury indemnities in its own contracts. *Transocean Enter., Inc. v. Ingalls Shipbuilding, Inc.*, 33 So. 3d 459 (Miss. 2010). In short, Transocean cannot provide any basis for ignoring established precedent prohibiting indemnification of punitive damages.

## CONCLUSION

For the reasons set forth above, in our prior memorandum, and in the Opposition of the United States, BP's cross-motion should be granted.

---

[3] Transocean also misstates the import of Paragraph 34.1, which states in part that "Neither Party shall be liable to the other for incidental special, indirect, statutory, exemplary, punitive, or consequential damages suffered by such party resulting from or arising out of this CONTRACT." There is no basis for Transocean's claim that the parties needed to exclude punitive damages. Instead, had the parties sought to include them in the indemnity, Paragraph 34.1 shows they knew how to do so. Maritime rules of construction for indemnity contracts require such a specific inclusion.

9

Date:  December 14, 2011	Respectfully submitted,


/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
R. Chris Heck
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Patrick F. Philbin
Kirkland & Ellis LLP
655 Fifteenth Street N.W.
Washington, DC  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

Joel M. Gross
Arnold & Porter, LLP
555 12th Street N.W.
Washington, DC  20002
Telephone: (202) 942-5705
Facsimile: (202) 942-5999

*Attorneys for BP Exploration & Production Inc. and BP America Production Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice 14th day of December, 2011.

/s/ Don K. Haycraft
Don K. Haycraft