**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG § | | MDL-2179 |
| "DEEPWATER HORIZON" § | | |
| in the GULF OF MEXICO, on § | | |
| APRIL 20, 2010 § | | SECTION "J" |
| § | | |
| THIS DOCUMENT RELATES TO: § | | JUDGE BARBIER |
| § | | MAG. JUDGE SHUSHAN |
| *10-cv-3059 and 11-cv-0516* § | | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**STATE OF LOUISIANA'S MOTION TO STRIKE AND/OR IN OPPOSITION TO THE PSC'S RESPONSE AND THIRD PROPOSED ORDER IN CONNECTION WITH THE PSC'S MOTION TO ESTABLISH ACCOUNT AND RESERVE FOR COMMON BENEFIT LITIGATION EXPENSES**</u>

**NOW INTO COURT**, through undersigned counsel, comes the Plaintiff, the State of Louisiana through James D. "Buddy" Caldwell, Louisiana Attorney General ("Louisiana" or "State"), who files this Motion to Strike the PSC's Response to Motion for Leave Filed by Outside Counsel for the Louisiana Attorney General ("PSC Response") and the third version of a proposed order in connection with the PSC's request that this Court establish a reserve account out of State recoveries ("Third Proposed Order"). [Rec. Doc. 4906]. In the alternative, the State requests that this filing be treated as an opposition to the PSC Response and associated Third Proposed Order.

While the State of Louisiana is pleased to see that the PSC has acknowledged (and attempted to, albeit inadequately, address) at least some of the concerns raised by Louisiana, the Third Proposed Order does not begin to resolve the problems associated with both the manner and substance of the PSC's request to reduce the State of Louisiana's recoveries and hold them

1

indefinitely in order to ultimately litigate about whether it has to pay contingency fees to private attorneys not hired by the State of Louisiana.  The PSC's unwarranted request that this Court hold what will be substantial amounts of State money based on vague guidelines that invite recurring battles should be rejected.  The State again requests that the PSC be required to properly file a new or amended motion with an order setting forth the specifics of the relief sought thereby, and its basis for asking for any fee against the State.

The PSC's apparent unwillingness to undertake the effort to both fully describe and support its request for such unprecedented relief in this matter is astounding.  The recoveries owed to the State of Louisiana in connection with the *Deepwater Horizon* incident have been and will continue to be substantial given the amount of damage occasioned to the State's environment and economy.  The relief afforded the State can and will take many forms and implicate a number of different legal and factual concerns, some of which the State has described in its previous filings to the Court.  The Attorney General's request that the PSC clearly detail both the substance and mechanics of that which it seeks is more than reasonable, and the PSC has made no effort to explain its refusal to do so.

Louisiana's requests to address the issue of common benefit fees upfront in this case are not new.  *See, e.g.,* State of Louisiana's Motion for Leave to Request Creation of Separate Government Case Track and to Appoint Liaison Counsel (9/16/10) [Rec. Doc. 248];  State of Louisiana's Motion for Hearing on Motion for Creation of Separate Government Track and For Appointment of Liaison Counsel (10/8/10) [Rec. Doc. 505]; State of Louisiana's Renewed Ex Parte Motion for Hearing on Motion to Create Government Track (1/13/11) [Rec. Doc. 987].  Louisiana's efforts to address this issue early in the litigation were rebuffed by the PSC.  For example, one of the PSC Liaison Counsel commented to the media regarding the issue of fees as

raised by Louisiana that: "It seems to me it's pretty premature.  We don't have settlement.  We don't have judgment."[1]  If entitlement to fees is premature, it follows that entitlement to a holdback –a taking of state monies to pay fees and holding it in escrow without consent by the State for an indefinite period contrary to the plain language of the Eleventh Amendment– is also premature.  The State is willing to address the underlying issue of PSC entitlement now under a full and fair evidentiary hearing, but on the record before the Court at this time, the PSC has not made a sufficient showing warranting such broad relief.  Instead, the PSC took extensive steps in an apparent effort to avoid resolution of the significant concerns implicated by its proposal.

Upon receipt of the State's filing opposing the PSC's request for leave to file its Reply in which the PSC espoused an interpretation of its initial proposed order that was not consistent with the Order filed in connection with PSC's initial motion, the PSC wrote to the Court's Law Clerk that:

> The State of Louisiana's Motion for Leave to submit additional briefing (attached) is largely unnecessary, as the PSC is already in the process of preparing and submitting a revised Proposed Order to make it clear that (a) the Proposed Order, if granted, would not require fee-shifting, and (b) the Proposed Order, if granted, would not apply to settlements between and among Defendants' consistent with the PSCs recently filed Reply Brief.
>
> With respect to judgments, settlements or other payments to the State of Louisiana, we would be happy to address the other issues raised by the State, (*see, e.g.,* Page 6 of the AG's proposed Brief), but would respectfully suggest that such issues are in the nature of "Plaintiff only" issues, and might be more appropriately addressed in chambers, or otherwise *in camera.*
>
> As always, we appreciate the Court's time and consideration in this matter.

---

[1] Rebecca Mowbray, *State Fights Proposal to Lump Its BP Oil Spill Litigation Together With Other Suits*, TIMES PICAYUNE, Oct. 6, 2010.

E-mail from Steve Herman, Plaintiffs' Liaison Counsel, to Ben Allums, Law Clerk to the Hon. Carl J. Barbier (Nov. 23, 2011) (attached as Exhibit A). The Attorney General, through Special Counsel, responded to this email by stating that it was:

> [P]leased to learn from Mr. Herman's email of November 23rd that the PSC is preparing and will file a proposed revised order clarifying their position on the creation of a holdback fund. The State looks forward to the opportunity to respond to that document when it is filed.
>
> However, the State disagrees with the suggestion contained in paragraph 2 of Mr. Herman's email that issues regarding deductions from State recoveries for a holdback fund should be handled in chambers or in camera. State recoveries are intended, among other things, to restore damaged ecosystems and our impacted economy, in short: to make the citizens of Louisiana whole for injuries associated with this disaster. The State believes that any discussions regarding attempts by the PSC to deduct any portion of State recoveries for a holdback fund should be discussed and handled in open court on the record. Such matters should be open to the public. Your consideration is appreciated.

E-mail from Allan Kanner, Special Counsel for the State of Louisiana, to Ben Allums, Law Clerk to the Hon. Carl J. Barbier (Nov. 28, 2011) (attached as Exhibit B). Notably, the PSC in its new filing has chosen not to "address the other issues raised by the State, (*see, e.g.,* Page 6 of the AG's proposed Brief)." The Attorney General believes that the issues raised by the PSC's filings should be developed on the record in a public contradictory proceeding as contemplated by the Federal and Local Rules. On the current record, the PSC has not demonstrated the need or basis for such sweeping relief and has not addressed the many concerns identified by the State of Louisiana.

The title of the PSC's most recent filing is both curious and misleading. The Motion for Leave to which it refers, although electronically filed by Special Counsel for the Louisiana Attorney General, was filed on behalf of, at the direction of, and with the full authority of

Louisiana's Attorney General James D "Buddy" Caldwell (who is specifically referenced in the text of and is included in the signature block on the Motion).  Although all filings in this Court have been made by Special Counsel, each has been with the approval of the Attorney General, who has maintained intimate involvement with the case and has made every effort to protect Louisiana and its citizens' rights in the aftermath of the *Deepwater Horizon* disaster.  This includes attempts to manage the State's legal claims and to obtain and preserve the best potential recovery for the citizens of this State.  The Louisiana Attorney General, who is the chief legal officer of the State,[2] did not and does not consent to the Third Proposed Order.[3]  It appears that, given the PSC Response and Third Proposed Order, Governor Jindal may wish to concede the establishment of a reserve of State monies in order to pay private counsel contingency fees; however, Executive Counsel for the Governor does not have the constitutional or statutory authority to bind the State to the withholding of hundreds of millions or even billions of dollars, and the Louisiana Attorney General opposes any effort to do so.  In a separate and equally unorthodox filing, the Executive Counsel for Governor Jindal has submitted a Motion for Leave to File a Memorandum in Support of the PSC's Revised Proposed Order Establishing Court-Supervised Account and Reserve for Common Benefit Litigation Expenses ("Louisiana Governor Memo") [Rec. Doc. 4916]. Certain mischaracterizations and fundamental misunderstandings are also reflected in that document.

---

[2] Under the Louisiana Constitution article VI, section 8, the Attorney General is the "chief legal officer of the state," and he "may institute and prosecute any and all suits he may deem necessary for the protection of the interests and rights of the state" pursuant to LA. REV. STAT. §13:5036 (2011).  *See also* LA. REV. STAT. §49:257("Notwithstanding any other law to the contrary and in addition to any other powers, duties, or authority granted to the attorney general and the Department of Justice by the constitution and laws of the state, the attorney general shall represent the state and all departments and agencies of state government in all litigation arising out of or involving tort or contract.")

[3] Nor was the Attorney General provided with a proposed form of order in advance of the PSC's filing of the Response or any of its prior filings in connection with the Motion to Establish Account and Reserve.

Aside from the fact that the Governor has no legal authority to attempt to interfere with the Attorney General's handling of this case, one would have thought that the Governor's Office would have had the good judgment to stay out of this issue. Record evidence establishes the fact that the Governor is represented by the Dallas based law firm of Baron & Budd, P.C. *See* Notice of Appearance and Motion to Enroll [Rec. Doc. 2252] (attached as Exhibit C). It is also a matter of record that a senior member of that firm, Scott Summy, applied to and was appointed to the PSC approximately one year ago and currently serves on the Executive Committee of the PSC. The Governor's chosen Special Counsel stands to receive a potentially large fee in connection with payment of common benefit fees out of a Hold Back Fund. The current motion for a Hold Back Fund filed by the PSC is an attempt to facilitate the payment of fees to them by reserving funds out of Louisiana's recoveries and setting them aside until application is made by the PSC for payment of fees and costs out this Fund. It seems highly inappropriate under the circumstances for the Governor's Office to lend support to this process.

Contrary to the Governor's Executive Counsel's representation that a Hold Back Fund motion is not detrimental to the State's interests, such a Fund diverts what may be hundreds of millions of dollars desperately needed *now* to repair economic and ecological damages caused to our State to a Hold Back Fund out of the reach or control of the State for an indefinite period of time. Furthermore, as will be discussed below, any action by the Governor to acquiesce to such a diversion of State funds from the State Treasury is a violation of State law.

The proposed Hold Back Fund would direct 4% of the State's recoveries to be held in an account for an unspecified period of time pending application by the PSC and approval of the Court of fees to be paid from that fund to the PSC. While the Governor's Executive Counsel refers to such fund as "only 4%," *see* Louisiana Governor Memo, at 4, the reality is that such

percentages in other recent cases in the Eastern District involving less potential recoveries have amounted to hundreds of millions of dollars. These are substantial sums of money being directed indefinitely away from immediate use by Louisiana for application to economic and environmental recovery projects. For the Governor's Office to state that it "does not oppose [the Hold Back Fund] and does not believe it prejudices the State" is incredible. Louisiana Governor Memo, at 4. Collaboration of the Governor's Office in such a process is regrettable at best, especially given the current financial circumstances of our State, which the Governor is addressing with broad budget cuts affecting all citizens of Louisiana.

Equally important is the fact that, except for the Legislature, action by any State officials, including the Governor, that directs recoveries by the State in a lawsuit anywhere other than the State Treasury is a violation of our Constitution and laws:

> "It is elementary that the 'fiscal affairs of the state, the possession, control, administration, and disposition of the property, funds, and revenues of the state, are matters appertaining exclusively to the legislative department.'" *State v. Duhe*, 201 La. 192, 9 So.2d 517, 521 (1942) (citing *Carter v. State*, 42 La.Ann. 927, 933, 8So. 836, 837 (1890)). This long-standing principle also applies under the 1974 Constitution, as we have more recently held that "[t]he legislature has control over the finances of the state, except as limited by constitutional provision." *Louisiana Ass'n of Educators v. Edwards*, 521 So.2d 390, 394 (La. 1988). There, we further elaborated on the separation of powers doctrine, holding that "[e]xcept as *expressly* provided by the constitution, no other branch of government, nor any person holding office in one of them, may exercise the legislative function." *Id.* (Emphasis added).

*Meredith v. Ieyoub*, 700 So.2d 478, 481 (La. 1997).

Of further significance is the attached Hold Back Agreement ("HBA") signed by the Governor and delivered to the Attorney General for his signature (attached as Exhibit D). The Attorney General refused to sign this Agreement, but it is believed that the PSC signed it. The

Attorney General repeatedly advised the Governor not to sign the HBA.  The HBA sets forth an agreement by the Governor for a Hold Back Fund of 4% to be taken out of State recoveries.  This action by the Governor is a direct violation of the ruling of the Louisiana Supreme Court in *Meredith*.  Furthermore, in paragraph 4, the Governor agrees to relinquish the State's all-important right to appeal any award of attorneys' fees and costs from the Hold Back Fund to the PSC that may be ordered by the District Court:

> The decision(s) of the MDL 2179 Transferee United District Court shall be binding on the Parties hereto and shall not be appealed by either the State or the PSC as to any assessment award and/or allocation out of the Hold Back Reserve Fund, as may be applicable to any State of Louisiana Recoveries.

Hold Back Agreement, at ¶4.  The Governor has gone well beyond agreeing to what his Executive Counsel termed a "narrowly drawn" order.  Louisiana Governor, at 1-2.  The Governor has purported to relinquish substantial rights of the State in an attempt to "collaboratively work[]" with the PSC.  *Id.* at 3.

It is interesting to note that the HBA signed by the Governor refers to an exemption of "non-monetary" recoveries from assessment for the Hold Back Fund.  *Id.* at 1-2, §3.  This is the very language that his Executive Counsel now complains of as being vague.  The Governor's Executive Counsel now suggests "one" addition to the Third Proposed Order: to "explicitly state" exemptions on certain state recoveries. One is left to guess how this request will be squared with the commitment already made by the Governor to the PSC in the HBA.  *See* Louisiana Governor, at 2-3.[4]

---

[4] Indeed, since the filing of the Louisiana Governor Memo, the PSC has submitted, but not filed, yet another form of order ("Fourth Proposed Order"), again without any request for leave or any opportunity or provision for the State to respond.  E-mail from Steve Herman, Plaintiffs' Liaison Counsel, to Ben Allums, Law Clerk to the Hon. Carl J. Barbier (Dec. 16, 2011) (attached as Exhibit E)(stating that the attached order "includes the additional language

The PSC Response (for which it did not seek leave of Court to file) continues to suffer from the same procedural defect as the PSC's Sur Reply in that it contains a proposed form of order that was not associated with (or consistent with) the original Motion and order. The State has requested, and reaffirms its request herein, that the PSC be required to file a motion and associated order that contains the specific relief sought by the PSC in this instance. Additionally, although not provided with adequate information to fully address what it appears the PSC is seeking to obtain, the State has provided the PSC with a number of legal and factual concerns that should be considered and resolved were the PSC to affirmatively seek and/or receive the broad type of relief suggested by the Second and Third Proposed forms of Order as submitted. The only issue purportedly addressed by the Third Proposed Order is that of "non-monetary" recoveries to which the State may be entitled. Specifically, the PSC's Third Proposed Order differs from the second proposed form of Order only by the addition of the language underlined below in the section specifically addressing Alabama and Louisiana recoveries:

> **IT IS ORDERED** that Defendants shall deposit an amount equivalent to four percent (4%) of the gross monetary settlements, monetary judgments or other <u>monetary</u> payments made on or after November 7, 2011, by or on behalf of one or more Defendants to the State of Alabama or the State of Louisiana, arising out of the Macondo / *Deepwater Horizon* disaster, [FN1]
>
> FN 1: . . . In the event, however, that the defendant(s) in question is (are) not willing to voluntarily fund the reserve over and above the settlement amount, the reserve (absent a final judgment or other order requiring Defendants to pay some or all attorneys' fees) would <u>be reserved or</u> "held back" out of the <u>monetary</u> judgment, <u>monetary</u> settlement or other <u>monetary</u> payment to the plaintiff,

---

suggested by the Governor's Office relating to the reimbursement of ongoing out-of-pocket response and/or NRD assessment costs.") Although no longer surprising, the Fourth Proposed Order suffers from the same deficiencies as the Orders that preceded it and does not even comport with the Louisiana Governor's suggested language. Under the Oil Pollution Act, the State may recover natural resource damages ("NRD") as well as the costs of assessing that damage. The PSC appears to only be exempting NRD assessment costs, as opposed to NRD recoveries. Louisiana will file its complete objection to this new submittal separately.

> pending future action by the Court. <u>(No amount will be "reserved" from State of Alabama or State of Louisiana recoveries that are non-monetary in nature.)</u> While Plaintiffs may reserve the right to seek common benefit and/or other attorneys' fees under some potentially applicable fee-shifting provision, nothing in *this* Order, would *require* a defendant to pay the plaintiff's common benefit and/or other attorneys' fees.

Third Proposed Order, at 1 n.1.

These additions, however, do not resolve the concerns raised by the State. For example, the term "non-monetary" in the context of State recoveries is simply too ambiguous given the types of relief Louisiana may receive. Additionally, "non-monetary" (even if read to mean "non-cash") does not address the use restrictions placed upon certain environmental recoveries. As described in the State's previous filings, in a NRD context, restoration projects are developed by the natural resource trustees. Defendants frequently pay the trustees the funds required to implement the project, including the costs to oversee and maintain it. As such, while the relief received by the State is ultimately in project form, the actual implementation of that project is funded by cash. For example, the PSC's proposed Orders would appear to allow a claim in the very near future to over $1,000,000 in funds dedicated to State NRD restoration in connection with two early restoration projects developed by the Louisiana Trustees in connection with the *Deepwater Horizon* incident. These two projects were recently published for notice and comment under the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill, executed April 20, 2011 ("Framework Agreement").

One of these restoration projects involves marsh creation at Lake Hermitage. The project contemplates the creation of 104 acres of brackish marsh which is designed to facilitate the establishment of extremely productive emergent marsh. The 104-acre fill area would be planted with native marsh vegetation to accelerate benefits to be realized from this project. *See*

Fact Sheet Early Restoration Project – Lake Hermitage Marsh Creation. (attached as Exhibit F). The implementation cost for the Lake Hermitage Marsh Creation project is estimated to be approximately $13,200,000. According to the Framework Agreement, BP is required to make a payment for the costs of project implementation upon completion of the public notice and comment as well as the filing of a project stipulation in this Court. Framework Agreement, ¶5. The Third (and even the Fourth) Proposed Orders submitted by the PSC, the PSC could claim entitlement to approximately $528,000 of the funds that are needed to actually implement the project. Such would violate the use restrictions placed upon NRD recoveries, avoid the public notice requisites, and would reduce the funds needed to implement an important project. A similar "Oyster Cultch Project" has also been developed by the State and is currently in the public notice and comment period. That project is estimated to cost approximately $14,874,300. Four percent of this cost is $594,972.

The PSC Response and Third (and now Fourth) Proposed Orders also do not demonstrate any factual or legal basis for this Court to freeze, indefinitely, funds that are needed immediately to restore the State's injured economy and ecosystems. Further, the PSC's filings have yet to address the State's concerns regarding the applicability or non-applicability of the proposed Order to future payments made to the State on settlements confected prior to November 7, 2011, and the prospect of a possible transfer out of State Treasury Fund accounts.

The State maintains that the PSC should file a renewed motion fully addressing issues regarding deductions from State recoveries, as is contemplated by the Federal and Local Rules, and that the State be provided an opportunity to adequately respond. As with the PSC's prior filings, the Third Proposed Order should be rejected for a number of reasons, including but not limited to: (1) the PSC Response and Third Proposed Order fail to follow the Local and Federal

Rules of Civil Procedure and continue to deprive affected parties of the opportunity to fully respond to the breadth of the PSC's request;[5] (2) the PSC Response and Third Proposed Order do not resolve or consider the majority of the factual and legal complexities associated with the State's claims and possible recoveries as raised by the State in its prior filings; and (3) the PSC Response and Third Proposed Order continue to seek the establishment of an unprecedented, indefinite diversion of State funds that are necessary to adequately counter the damage occasioned by the *Deepwater Horizon* incident.

The State of Louisiana has articulated substantial concerns and objections in connection with the recent filings by the PSC seeking to establish a far-reaching reserve from State recoveries to ultimately pay the PSC a contingency fee.  Louisiana is entitled to have the opportunity to respond to the claims the PSC is making to State recoveries.  Accordingly, for the reasons set forth herewith as well as in prior filings by the State of Louisiana in connection with this matter, the State respectfully requests that this Court strike the PSC Response and Third Proposed Order submitted in conjunction with the PSC's continued efforts to establish an escrow and account associated with State recoveries.  In the alternative, the State requests that this filing be treated as an opposition to the PSC's requests and requests the opportunity to fully brief these issues and to be heard regarding the same.  The State reserves the right to respond to any other hold back orders that the PSC submits, including but not limited to the Fourth Proposed Order.

Dated this 19th day of December, 2011.

Respectfully submitted,

---

[5] In fact, the PSC Response and Third Proposed Order appear to be intentionally designed to deprive the Louisiana Attorney General of the opportunity to raise and seek relief regarding his concerns with the PSC's request.

JAMES D. "BUDDY" CALDWELL
LOUISIANA ATTORNEY GENERAL

James Trey Phillips
First Assistant Attorney General
Megan K. Terrell
Assistant Attorney General
Section Chief –Environmental
State of Louisiana
P.O. Box 94005
Baton Rouge, LA 70804-9005
Telephone: (225) 326-6708

HENRY DART,
ATTORNEYS AT LAW P.C.

/s/ Henry T. Dart
Henry T. Dart
Grady J. Flattmann
510 N. Jefferson St.
Covington, LA 70433
Telephone: (985) 809-8093
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**

SHOWS, CALI, BERTHELOT & WALSH, LLP

/s/ E. Wade Shows
E. Wade Shows
628 St. Louis Street
Baton Rouge, LA 70802
Telephone: (225) 346-1461
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**

KANNER & WHITELEY, LLC

/s/ Allan Kanner
Allan Kanner
Elizabeth B. Petersen
Douglas R. Kraus
701 Camp Street
New Orleans, LA 70130
Telephone: (504) 524-5777
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**

USRY, WEEKS, &
MATTHEWS, APLC

/s/ T. Allen Usry
T. Allen Usry
1615 Poydras St.
Suite 12
New Orleans, LA 70112
Telephone: (504) 592-4641
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**

MARTEN LAW, PLLC

/s/ Bradley M. Marten
Bradley M. Marten
Linda R. Larson
1191 Second Avenue
Suite 2200
Seattle, WA 98101
(206) 292-2600
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing State Of Louisiana's Motion To Strike And/Or Opposition To The PSC's Response And Third Proposed Order In Connection With The PSC's Motion To Establish Account And Reserve For Common Benefit Litigation Expenses has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 19th day of December, 2011.

                                                Kanner & Whiteley, L.L.C.

                                                _/s/ Allan Kanner_____
                                                Allan Kanner
                                                a.kanner@kanner-law.com