UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| FRANK BIGUNAC, <br> ANTHONY BIGUNAC, <br> MIHO DABO, PAVO RILOVICH <br> DONNIE L. CAMPO, RONNIE CAMPO, <br> TYLER CAMPO, <br> JAMMIE A. DENLEY, <br> WAYNE GRAY, SR. AND <br> GREG PEREZ, JR. <br> <br> VERSUS <br> <br> UNITED STATES MARITIME <br> SERVICES, INC. <br> <br> This Document Relates to: <br> Frank Bigunac, et al <br> v. United States Maritime Services, Inc. <br> 2:11-cv-02909 | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | CIVIL ACTION: MDL 2179 <br> <br> <br> <br> <br> <br> <br> <br> JUDGE: BARBIER <br> <br> <br> <br> <br> <br> <br> <br> <br> MAGISTRATE: SHUSHAN |

\*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM IN SUPPORT OF MOTION TO REMAND**

Plaintiffs, Frank Bigunac, Anthony Bigunac, Miho Dabo, Pavo Rilovich, Donnie L. Campo, Jammie A. Denley, Wayne Gray, Sr., and Greg Perez, Jr., respectfully submit this Memorandum in Support of Motion to Remand the instant action to the Civil District Court, Parish of Orleans, State of Louisiana, pursuant to 28 U.S.C. §1447 (c) for lack of diversity and lack of subject matter jurisdiction.

**I.    BACKGROUND**

1. On October 21, 2011, Plaintiffs, Frank Bigunac, Anthony Bigunac, Miho Dabo, Pavo

Rilovich, Donnie L. Campo, Jammie A. Denley, Wayne Gray, Sr., and Greg Perez, Jr., filed a lawsuit against Defendant, United States Maritime Services, Inc., in the Civil District Court, Parish of Orleans, State of Louisiana. Specifically, Plaintiffs allege that they were the owners of various small vessels, and that they contracted with Defendant to provide their vessels for the Vessels of Opportunity ("VoO") program to assist in the British Petroleum ("BP") oil spill cleanup.[1] Plaintiffs further allege that Defendant breached its contracts with them by failing to pay for the entire duration of the charters and that Plaintiffs' vessels were damaged, and Defendant breached its contracts by failing to repair them.[2]

2. Plaintiffs' vessels were only used to clean up oil from waters within the State of Louisiana, i.e. only three geographical miles from the coastline.[3]

3. Plaintiffs are all residents of the State of Louisiana.

4. Defendant, United States Maritime Services, Inc., is a Louisiana corporation doing business within the State of Louisiana.[4]

5. Defendant filed its Notice of Removal on November 21, 2011, alleging that federal subject matter jurisdiction exists under the Outer Continental Shelf Land Act[5] ("OCSLA") and/or

---

[1] *See* Petition for Damages, ¶¶ 3-14, attached to Defendant's Notice of Removal as Exhibit A.

[2] *See* Petition for Damages, ¶¶ 13-15.

[3] *See* Exhibit 1, Plaintiffs' Affidavits.

[4] *See* Exhibit 2, Secretary of State Detail Record for United States Maritimes Services, Inc.

[5] *See* Notice of Removal ¶¶ 5-19.

the Oil Pollution Act[6] ("OPA"). Defendant did not allege that diversity jurisdiction exists, apparently since it is a Louisiana corporation.[7]

## II. LEGAL STANDARD FOR REMOVAL AND REMAND

As this Honorable Court is well aware, in order to successfully remove a case, the party seeking removal has the burden of establishing federal court jurisdiction.[8] Any ambiguities or doubts in federal jurisdiction are construed against removal, as the removal statute should be strictly construed in favor of remand.[9]

## III. LAW AND ARGUMENT

### A. OSCLA IS INAPPLICABLE TO PLAINTIFFS' LAWSUIT

#### i. The Contracts at Issue in This Lawsuit Are Not Within the Waters and Lands Contemplated By OCSLA

OSCLA, and any subject matter jurisdiction stemming therefrom, is inapplicable to the contracts at issue because the contracts operated outside of the waters/lands contemplated by OCSLA. Per 43 United States Code section 1331(a), "The term 'outer Continental Shelf' means all submerged lands lying seaward and *outside the area of lands* beneath navigable waters as defined in section 1301 of this title, and of which the subsoil and seabed appertain to the United States and

---

[6] *See* Notice of Removal ¶ 20.

[7] *See generally* Notice of Removal.

[8] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)

[9] *In re Oil Spill by Oil Rig Deepwater Horizon*, 747 F.Supp. 2d 704, 707 (E.D. La. 2010); *Acuna v. Brown & Root, Inc.,* 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988)); *York v. Horizon Fed. Sav. & Loan Ass'n*, 712 F.Supp. 85, 87 (E.D.La. 1989) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941)).

are subject to its jurisdiction and control". (Emphasis added). 43 U.S.C. section 1301(a) defines the waters and land included in the Submerged Lands Act, which are "lands beneath navigable waters." Section 1301(a) includes:

> (1) all lands within the boundaries of each of the respective States which are covered by nontidal waters that were navigable under the laws of the United States at the time such State became a member of the Union, or acquired sovereignty over such lands and waters thereafter, up to the ordinary high water mark as heretofore or hereafter modified by accretion, erosion, and reliction;
> (2) all lands permanently or periodically covered by tidal waters up to but not above the line of mean high tide and seaward to a line three geographical miles distant from the coast line of each such State and to the boundary line of each such State where in any case such boundary as it existed at the time such State became a member of the Union, or as heretofore approved by Congress, extends seaward (or into the Gulf of Mexico) beyond three geographical miles, and
> (3) all filled in, made, or reclaimed lands which formerly were lands beneath navigable waters, as hereinabove defined;

Plaintiffs operated their vessels pursuant to their contracts with United States Maritime Services, Inc., within the waters of the State of Louisiana.[10] As such, the contracts at issue have little to do with federal waters/land or waters/land contemplated by OCSLA, and therefore should not be subject to jurisdiction therefrom.

### ii.     The Activities in Plaintiffs' Contracts Do Not Fall Under OCSLA

Jurisdiction under OCSLA is also inappropriate because Plaintiffs' contracts, what is at issue in their lawsuit, did not arise out of, nor were they in connection with oil exploration. 43 U.S.C. section 1349(b)(1) states that the district courts of the United States "shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the

---

[10]     *See* Exhibit 1, Plaintiffs' Affidavits.

subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals ..."

However, Plaintiffs' contracts do not involve any of these activities.

Section 1331(k) through (m) define what each of these terms mean. Specifically:

> (k) "exploration means the process of searching for minerals, including (1) geophysical surveys where magnetic, gravity, seismic, or other systems are used to detect or imply the presence of such minerals, and (2) any drilling, whether on or off known geological structures, including the drilling of a well in which a discovery of oil or natural gas in paying quantities is made and the drilling of any additional delineation well after such discovery which is needed to delineate any reservoir and to enable the lessee to determine whether to proceed with development and production;
> (l) The term "development" means those activities which take place following discovery of minerals in paying quantities, including geophysical activity, drilling, platform construction, and operation of all onshore support facilities, and which are for the purpose of ultimately producing the minerals discovered;
> (m) The term "production" means those activities which take place after the successful completion of any means for the removal of minerals, including such removal, field operations, transfer of minerals to shore, operation monitoring, maintenance, and work-over drilling;

The Fifth Circuit has further clarified that "[t]hese terms denote respectively the processes involved in search for minerals on the OCS; preparing to extract them by, *inter alia*, drilling wells and constructing platforms; and removing the minerals and transferring them to shore."[11]

Plaintiffs' lawsuit does not involve the "exploration", "development", or "production" of oil. Rather, this lawsuit is a simple breach of contract claim – Plaintiffs are merely attempting to enforce Defendant's contract with them for chartering their vessels. They are not claiming any damages caused by the oil spill itself, just damages caused by Defendant's breach of the contract. Defendant's

---

[11] *In re Oil Spill*, 747 F.Supp.2d at 708 (citing *Tenn. Gas Pipeline*, 87 F.3d 150, 154 (5th Cir. 1996)

own contract even states, "In the event, but only in the event, the maritime laws of the United States do not apply, the laws of the State of Louisiana shall govern" the vessel contracts.[12]

However, even the activities that Plaintiffs performed did not involve "exploration", "development", or "production" of oil. Plaintiffs were assisting the cleanup of an oil spill in the wake of the explosion on the Deepwater Horizon. They did so only in the waters of the State of Louisiana. They did not conduct any surveys, nor were they in anyway involved in drilling or surveying, as contemplated by 48 U.S.C. section 1331(k). Plaintiffs were not involved in any development - they were not constructing platforms, they were not operating any facilities "for the purpose of ultimately producing the minerals discovered." As such, 48 U.S.C. section 1331(l) does not apply. Lastly, "production" cannot apply in this instance; subsection (m) states that for activities to constitute "production," those activities must be "after the *successful completion* of any means for the removal of minerals." The Deepwater Horizon explosion could hardly be classified as "successful" removal of minerals.

Defendant alleges that jurisdiction exists under OCSLA because, "Had BP not been performing exploratory and drilling operations on the Outer Continental Shelf, Plaintiffs would have had no occasion to file the Petition at stake in this case."[13] As such, Plaintiffs' claims are apparently "inextricably connected to the Outer Continental Shelf operations."[14] However, the connection between Plaintiffs' contract claims and BP's actions is far to attenuated. Plaintiffs themselves were not involved in any activities that involved or assisted in exploration, development, or production

---

[12] Master Vessel Charter Agreement, Article 19.

[13] Notice of Removal ¶ 16.

[14] Notice of Removal ¶ 15.

6

of oil; they merely were assisting in clean up when BP failed in its attempts to explore, develop, and/or produce oil. Instead, the proximate cause of Plaintiffs' damages appear to be their participation in the VoO program, and not the oil spill itself.

### iii. Any Indemnity BP Owes Defendant Is Irrelevant to Jurisdiction

Defendant also erroneously alleges that federal subject matter jurisdiction under OCSLA should apply since "BP is ultimately contractually liable to Defendant for any amounts Defendant may owe the Plaintiffs under the Charter Agreement."[15] This contractual liability, if any, between BP and Defendant, however, is wholly irrelevant. Plaintiffs had no contract (or privity) with BP. Rather Plaintiffs had contracts with Defendant, United States Maritime Services, Inc; Defendant's possible rights as regards to third parties is irrelevant to Plaintiffs. Further, Defendant has failed to attach the Master Service Agreement to evidence same. Regardless, any Third Party Demand alleging any right to indemnification from BP is insufficient to confer federal subject matter jurisdiction on the principal demand.[16] Because significant doubts exist as to whether Plaintiffs' claims arise out of, or are in any way involved with exploration, development, or production of oil in the outer Continental Shelf, Plaintiffs' claims should be remanded back to the Civil District Court, Parish of Orleans.

### B. PLAINTIFFS' CLAIMS DO NOT FALL UNDER OPA

Plaintiffs are not making claims that fall under the purview of the Oil Pollution Act; rather,

---

[15] Notice of Removal ¶ 14.

[16] *See, e.g.*, *Olivier Plantation, LLC v. St. Bernard Parish*, 744 F.Supp.2d 575 (E.D. La. 2010) (holding that third party demand adding the United States Army Corps of Engineers as a defendant did not confer federal subject matter jurisdiction under the Federal Tort Claims Act, especially since the agreement requiring the Army Corps to indemnify was contract-based, rather than tort-based).

7

Plaintiffs are making simple breach of contract claims against their charterer. The fact that the contracts involve clean up to an oil spill are wholly irrelevant to their disposition, as the damages are not caused by the oil itself, but rather Defendant's breach of its contracts. Defendants in this Multi-District Litigation have themselves argued that "OPA does not apply to claims alleged by VoO Plaintiffs because their injuries occurred as a result of their participation in the VoO program, not as a result of the spill."[17] Plaintiffs are not seeking damages for removal of oil from their property, as contemplated by OPA, but rather are just seeking damages because Defendant failed to pay amounts due under its contracts.

Further, Plaintiffs are not making any claims against the OPA "responsible party." Under OPA, the discharger is the party who caused the oil spill at issue, whether it be a vessel, charterer, onshore or offshore facility, etc.[18] United States Maritime Services, Inc. is not the "responsible party" under OPA, since it did not discharger of the oil involved in the oil spill.

## IV. CONCLUSION

In light of the foregoing argument, Plaintiffs, Frank Bigunac, Anthony Bigunac, Miho Dabo, Pavo Rilovich, Donnie L. Campo, Jammie A. Denley, Wayne Gray, Sr., and Greg Perez, Jr., respectfully request that this action be remanded to the Civil District Court, Parish of Orleans.

---

[17] *In re Oil Spill*, — F. Supp.2d —, 2011 WL 3805746, *17 (E.D. La. Aug. 26, 2011).

[18] *See* 33 U.S.C. §2701(32); *see also* 33 U.S.C. § 2702(a) ("Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil ....").

Respectfully Submitted:
**KLOTZ & EARLY**

*s/ W. PATRICK KLOTZ*
W. PATRICK KLOTZ #17877
One Canal Place
365 Canal Street, Suite 1700
New Orleans, LA 70130
Telephone: (504) 821-9900
Facsimile:   (504) 821-8080

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon counsel of record for Defendant, United States Maritime Service, Inc., by ECF, electronic transmission, facsimile, and/or by U.S. Mail, properly addressed and postage prepaid, on the 21st day of December, 2011.

*s/ W. PATRICK KLOTZ*
W. PATRICK KLOTZ
