**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179<br><br>SECTION J |
| This document relates to: | * * | Judge Barbier |
| *All Cases* | * * | Magistrate Judge Shushan |

**BP'S MEMORANDUM IN OPPOSITION**
**TO HALLIBURTON ENERGY SERVICES, INC.'S MOTION**
**FOR SUMMARY JUDGMENT AND IN SUPPORT OF BP'S CROSS-MOTION**
**FOR PARTIAL SUMMARY JUDGMENT REGARDING INDEMNITY ISSUES**

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
R. Chris Heck
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

Patrick F. Philbin
Kirkland & Ellis LLP
655 Fifteenth Street N.W.
Washington, DC  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Attorneys for BP p.l.c., BP Exploration & Production Inc.,*
*and BP America Production Company*

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ...............................................................1

ARGUMENT ....................................................................................................................................3

I.     THE WELL SERVICES CONTRACT DOES NOT PROVIDE INDEMNITY
FOR FRAUD, NOR WOULD MARITIME LAW ALLOW AN INDEMNITY
FOR FRAUD TO BE ENFORCED....................................................................................3

      A.     The Plain Language of the Well Services Contract Does Not Provide
Indemnity for Fraud. .............................................................................................3

      B.     Maritime Law Prohibits Indemnification for Fraud.................................................7

II.     MARITIME LAW PROHIBITS INDEMNIFICATION FOR GROSS
NEGLIGENCE. ...............................................................................................................9

III.     CONTRACT LAW HOLDS THAT HESI'S CONDUCT CAN DISCHARGE
BPXP FROM ANY INDEMNIFICATION OBLIGATION.............................................14

      A.     Any Indemnity Obligation Was Discharged Because HESI's Actions
Materially Increased the Risks to BPXP................................................................14

      B.     Material Breaches of the Well Services Contract By HESI Release BPXP
from Any Duty To Indemnify. ..............................................................................16

IV.     THE WELL SERVICES CONTRACT AND PUBLIC POLICY PROHIBIT
INDEMNIFICATION FOR PUNITIVE DAMAGES, FINES, AND
PENALTIES. ...................................................................................................................18

      A.     The Well Services Contract Does Not Provide For, And Public Policy
Does Not Allow, Indemnity for Punitive Damages. ..............................................18

      B.     The Well Services Contract Does Not Provide For, And Public Policy
Does Not Allow, Indemnity for Fines or Penalties................................................19

V.     BPXP HAS NO CURRENT DUTY TO PAY DEFENSE COSTS...................................21

CONCLUSION................................................................................................................................23

i

# TABLE OF AUTHORITIES

**Cases**

*A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co.*,
  256 F.2d 227 (2d Cir. 1958) ................................................................................ 12

*Ala. Great S. Ry. Co. v. Louisville & Nashville R.R.. Co.*,
  224 F.2d 1 (5th Cir. 1955) ................................................................................... 11

*Albert Trostel & Sons Co. v. Canadian Imperial Bank of Commerce*,
  1984 WL 868 (N.D. Ill. Aug. 21, 1984) ............................................................. 11

*Amoco Production Co. v. Forest Oil Corp.*,
  844 F.2d 251 (5th Cir. 1988) ................................................................................ 8

*Atel Mar. Investors, LP v. Sea Mar Mgmt., L.L.C.*,
  2010 WL 1978261 (E.D. La. May 14, 2010) ........................................................ 4

*Babcock v. Cont'l Oil Co.*,
  792 F.2d 1346 (5th Cir. 1986) .............................................................................. 4

*Barton-Malow Co. v. Grunau Co.*,
  835 So. 2d 1164 (Fla. Dist. Ct. App. 2003) ........................................................ 21

*Batson-Cook Co. v. Indus. Steel Erectors*,
  257 F.2d 410 (5th Cir. 1958) ................................................................. 5, 6, 7, 18

*Becker v. Tidewater, Inc.*,
  586 F.3d 358 (5th Cir. 2009) ....................................................................... passim

*Biondi v. Beekman Hill House Apartment Corp.*,
  731 N.E.2d 577 (N.Y. 2000) .............................................................................. 19

*Britt v. May Dep't Stores Co.*,
  1994 WL 585930 (E.D. Pa. Oct. 14, 1994) ......................................................... 11

*Broadley v. Mashpee Neck Marina, Inc.*,
  471 F.3d 272 (1st Cir. 2006) .............................................................................. 10

*Caldwell v. Enyeart*,
  1995 WL 807110 (6th Cir. Dec. 8, 1995) ......................................................... 8, 11

*Castleberry v. Goldom Credit Corp.*
  418 F.3d 1267 (11th Cir. 2005) .................................................................. 12, 13, 22

*Chembulk Trading LLC v. Chemex Ltd.*,
  393 F.3d 550 (5th Cir. 2004) ........................................................................... 7

*City of Montgomery v. JYD Int'l, Inc.*,
  534 So.2d 592 (Ala. 1988) ............................................................................... 8

*Clement v. Marathon Oil Co.*,
  724 F. Supp. 431 (E.D. La. 1989) ................................................................. 23

*Corbitt v. Diamond M. Drilling Co.*,
  654 F.2d 329 (5th Cir. 1981) ................................................................ 4, 5, 16

*CSX Transp., Inc. v. Mass. Bay Transp. Auth.*,
  697 F. Supp. 2d 213 (D. Mass. 2010) .......................................................... 11

*Dana Corp. v. Fireman's Fund Ins. Co.*,
  169 F. Supp. 2d 732 (N.D. Ohio 1999) ........................................................ 14

*Daughdrill v. Ocean Drilling & Exploration Co. (ODECO)*,
  665 F. Supp. 477 (E.D. La. 1987) ........................................................... 19, 22

*Diamond Crystal Salt Co. v. Thielman*,
  395 F.2d 62 (5th Cir. 1968) ............................................................................. 8

*Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*,
  774 N.E.2d 775 (Ohio Ct. App. 2002) ............................................................ 8

*Energy XXI, GoM, LLC v. New Tech Eng'g, L.P.*,
  787 F. Supp. 2d 590 (S.D. Tex. 2011) ..................................................... 10, 13

*English v. BGP Int'l, Inc.*,
  174 S.W.3d 366 (Tex. App. 2005) ................................................................. 22

*Equitex, Inc. v. Ungar*,
  60 P.3d 746 (Colo. Ct. App. 2002) .................................................................. 8

*Estate of King v. Wagoner Cnty. Bd. of Cnty. Comm'rs*,
  146 P.3d 833 (Okla. Civ. App. 2006) ............................................................ 21

*Fina, Inc. v. ARCO*,
  200 F.3d 266 (5th Cir. 2000) ........................................................................... 5

*Gaspard v. Offshore Crane & Equip., Inc.*,
  106 F.3d 1232 (5th Cir. 1997) ......................................................................... 7

*Gen. Ins. Co. of Am. v. Fleeger*,
  389 F.2d 159 (5th Cir. 1968) ......................................................................... 14

iii

*Grand Trunk W. R.R. v. Auto Warehousing Co.*,
   686 N.W.2d 756 (Mich. Ct. App. 2004) ............................................................. 21

*Harley-Davidson, Inc. v. Minstar, Inc.*,
   41 F.3d 341 (7th Cir. 1994) ............................................................................... 15

*Harris v. Howard Univ., Inc.*,
   28 F. Supp. 2d 1 (D.D.C. 1998) ...................................................................... 8, 11

*Hiern v. St. Paul-Mercury Indem. Co.*,
   262 F.2d 526 (5th Cir. 1959) .......................................................................... 14, 15

*Houston Exploration Co. v. Halliburton Energy Servs., Inc.*,
   2000 WL 423909 (E.D. La. Apr. 18, 2000) .................................................... 10, 14

*Houston Exploration Co. v. Halliburton Energy Servs., Inc.*,
   269 F.3d 528 (5th Cir. 2001) ............................................................................. 10

*Hudson v. Forest Oil Corp.*,
   2003 WL 21276385 (E.D. La. June 2, 2003) .................................................... 14

*In re Firstline Corp.*,
   2007 WL 269086 (Bankr. M.D. Ga. Jan. 25, 2007) .......................................... 11

*In re Fitzgerald Marine & Repair, Inc.*,
   619 F.3d 851 (8th Cir. 2010) .............................................................................. 7

*In re Horizon Vessels, Inc.*,
   2005 U.S. Dist. LEXIS 42110 (S.D. Tex. Nov. 18, 2005) ............................... 13, 23

*In re Torch, Inc.*,
   1996 WL 185765 (E.D. La. April 16, 1996) ..................................................... 16

*Inner City Redev. Corp. v. Thyssenkrupp Elevator Corp.*,
   913 N.Y.S.2d 29, 30 (N.Y. App. Div. 2010) ................................................... 21, 22

*Italia Societa per Azioni di Navigazione v. Or. Stevedoring Co.*,
   376 U.S. at 315 (1964) ...................................................................................... 15

*Jackson v. Lloyd Brasileirs Patrimonio Nacional*,
   324 F. Supp. 556 (S.D. Tex. 1970) ................................................................... 17

*Joslyn Mfg. Co. v. Koppers Co., Inc.*,
   40 F.3d 750 (5th Cir. 1994) ............................................................................... 9

*La Esperanza de P.R., Inc., v. Perez y Cia. de P.R., Inc.*,
   124 F.3d 10 (1st Cir. 1997) ............................................................................... 10

*Luckenbach S.S. Co. v. United States*,
  42 F.2d 156 (2d Cir. 1930) ................................................................ 6

*Marquette Transp. Co. v. La. Mach. Co.*,
  367 F.3d 398 (5th Cir. 2004) .............................................................. 17

*Marquette Transp. Co. v. La. Mach. Co.*,
  2002 WL 1809092 (E.D. La. Aug. 7, 2002) ......................................... 10

*Meloy v. Conoco, Inc.*,
  504 So. 2d 833 (La. 1987) .................................................................. 21

*Mid-Continent Cas. Co. v. Swift Energy Co.*,
  206 F.3d 487 (5th Cir. 2000) .............................................................. 12

*Mobil Chem. Co. v. Blount Bros. Corp.*,
  809 F.2d 1175 (5th Cir. 1987) ....................................................... 16, 17

*Modular Devices, Inc. v. Alcatel Alenia Space Espana*,
  2010 WL 3236779 (E.D.N.Y. Aug. 12, 2010) ....................................... 8

*Morris v. Homco Int'l, Inc.*,
  853 F.2d 337 (5th Cir. 1988) .............................................................. 16

*Nagim v. N.J. Transit*,
  848 A.2d 61 (N.J. Super. Law Div. 2003) ........................................... 21

*New Eng. Tel. & Tel. Co. v. Cent. Vt. Pub. Serv. Corp.*,
  391 F. Supp. 420 (D. Vt. 1975) .......................................................... 16

*Nexen Petroleum U.S.A., Inc. v. Sea Mar Div. of Pool Well Servs. Co.*,
  497 F. Supp. 2d 787 (E.D. La. 2007) ....................................... 10, 11, 12

*Persson v. Scotia Prince Cruises, Ltd.*,
  330 F.3d 28 (1st Cir. 2003) ................................................................ 18

*Pettus v. Grace Line, Inc.*,
  305 F.2d 151 (2d Cir. 1962) ............................................................... 17

*Planters Gin Co. v. Fed. Compress & Warehouse Co.*,
  78 S.W.3d 885 (Tenn. 2002) .............................................................. 11

*Pollgreen v. Morris*,
  911 F.2d 527 (11th Cir. 1990) ............................................................. 6

*Rochelle Bail Agency, Inc. v. Md. Nat'l Ins. Co.*,
  484 F.2d 877 (7th Cir. 1973) .............................................................. 14

*Rollins v. Peterson Builders, Inc.*,
    761 F. Supp. 918 (D.R.I. 1990) .............................................. 19

*Rosenbloom v. Flygare*,
    501 N.W.2d 597 (Minn. 1993) .............................................. 19

*Royal Ins. Co. of Am. v. Sw. Marine*,
    194 F.3d 1009 (9th Cir. 1999) .............................................. 10

*Ruehs v. Alliance Offshore, L.L.C.*,
    2007 WL 275915 (E.D. La. Jan. 26, 2007) .............................. 19

*S. Ry. v. Foote Mineral Co.*,
    384 F.2d 224 (6th Cir. 1967) ................................................ 11

*Sam Kohli Enters., Inc. v. BOC Group, Inc.*,
    2011 WL 3298902 (S.D. Cal. Aug. 1, 2011) ............................ 8

*Sander v. Alexander Richardson Invs.*,
    334 F.3d 712 (8th Cir. 2003) ................................................ 10

*Sargent v. Johnson*,
    601 F.2d 964 (8th Cir. 1979) ................................................ 21

*Schmahl v. Macy's Dep't Stores, Inc.*,
    2010 WL 3061526 (E.D. Wash. July 30, 2010) ....................... 16

*Smith v. Chevron Oil Co.*,
    517 F.2d 1154 (5th Cir. 1975) ........................................ 22, 23

*Smith v. Tenneco Oil Co.*,
    803 F.2d 1386 (5th Cir. 1986) .............................................. 4

*St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*,
    409 F.3d 73 (2d Cir. 2005) .................................................. 9

*Suire v. Lafayette City-Parish Consol. Gov't*,
    907 So. 2d 37 (La. 2005) ................................................ 21, 22

*Taylor v. Lloyd's Underwriters of London*,
    972 F.2d 666 (5th Cir. 1992) .............................................. 12

*Theriot v. Bay Drilling Corp.*,
    783 F.2d 527 (5th Cir. 1986) .............................................. 12

*Todd Shipyards Corp. v. Turbine Serv., Inc.*,
    674 F.2d 401 (5th Cir. 1982) .............................................. 10

*Tulane Hotel Investors Corp. v. First Fin. Bank, F.S.B.*,
  1987 WL 19041 (E.D. La. Oct. 26, 1987) .................................................................. 5

*U.S. Fid. & Guar. Co. v. Putfark*,
  158 So. 9 (La. 1934) ................................................................................................... 14

*United Consulting Eng'rs v. Bd. of Comm'rs of Hancock Cnty.*,
  810 N.E.2d 351 (Ind. App. 2004) ............................................................................... 21

*United States for use of Wallace v. Flintco, Inc.*,
  143 F.3d 955 (5th Cir. 1998) ...................................................................................... 16

*Valley Health Sys., LLC v. Nurses 'R' Special, Inc.*,
  2011 U.S. Dist. LEXIS 40216 (D. Nev. Apr. 12, 2011) ............................................. 22

*W & T Offshore, Inc.*,
  IBLA 98-179, 1999 WL 485016 (I.B.L.A. May, 11, 1999) ......................................... 20

*Wijsmuller BV v. Tug Benasque*,
  528 F. Supp. 1081 (D. Del. 1981) ................................................................................ 5

*Wilburn Boat Co. v. Fireman's Fund Ins. Co.*,
  348 U.S. 310 (1955) .................................................................................................... 12

**Statutes**

33 U.S.C. § 1251 *et seq.* .................................................................................................... 19

33 U.S.C. § 2710 ................................................................................................................... 9

43 U.S.C. § 1331 *et seq.* .................................................................................................... 20

**Other Authorities**

14 Lee R. Russ, COUCH ON INSURANCE § 200:3 (3d ed. 2011) ...................................... 21

42 C.J.S. *Indemnity* § 61 (2011) ................................................................................... 14, 16

H.R. Rep. No. 101-242, pt. 2 ................................................................................................ 9

Restatement (Second) of Contracts § 195 ............................................................................ 13

Restatement (Second) of Contracts § 237 ............................................................................ 16

S. Rep. No. 101-94, *reprinted in* 1990 U.S.C.C.A.N. 722 .................................................. 9

**Regulations**

30 C.F.R. § 250.1470 .......................................................................................................... 20

Oil and Gas and Sulphur Operations in the Outer Continental Shelf—Civil Penalties, 76 Fed
Reg. 38294-01 (June 30, 2011) ................................................................................................ 20

## INTRODUCTION AND SUMMARY OF ARGUMENT

Halliburton Energy Services, Inc's ("HESI") motion for summary judgment on its claims for indemnification is fatally premature and founders on many of the same errors that doom Transocean's similar motion.  Disputed issues of fact concerning HESI's conduct remain to be resolved at trial — including whether HESI was grossly negligent or committed fraud by making false statements and concealing test results before it used a defective cement slurry on the Macondo Well.  Such conduct, if proved, would discharge any indemnity obligation BP Exploration & Production Inc. ("BPXP") might otherwise have.[1]  As in the case with Transocean, however, the cross motion of BP p.l.c., BP America Production Company ("BPAP"), and BPXP (collectively, "BP") seeks judgment on a pure issue of law on which summary judgment should be granted in BP's favor.  The Court can and should determine now, as a matter of law, that HESI cannot be indemnified for (i) punitive damages, or (ii) any fines or penalties.

*First*, HESI is plainly wrong in claiming that it can be indemnified even if it engaged in outright fraud.  Contrary to HESI's claims, the terms of the indemnity provisions in the Well Services Contract between BPXP and HESI do not cover intentional torts or willful misconduct such as fraudulent concealment.  HESI's theory that broad, general language providing an indemnity despite a "breach of duty (whether statutory or otherwise)" is sufficient to cover fraud by the indemnifying party flies in the face of settled maritime law demanding specific and unequivocal language for an indemnity provision to reach any extraordinary obligation.  Indemnifying another party for losses caused by *deliberate lies* certainly qualifies as an

---

[1]  To spare the Court unnecessary repetition, this opposition will cross reference legal arguments concerning the interpretation and enforcement of indemnity contracts under maritime law already set out fully in BP's memoranda responding to the summary judgment motion filed by Transocean.  *See* Dkt. 4826, BP's Mem. In Opp. To Transocean's Mot. For Partial Summ. J. ("BP's Memorandum Regarding Transocean" or "BP Mem. re TO"); Dkt. 4902-2, BP's Reply Mem. To Transocean's Opp. To BP's Cross-Mot. For Partial Summ. J. ("BP's Reply Regarding Transocean" or "BP Reply re TO").

"extraordinary obligation" that would demand exceedingly clear language.  No such language appears in the Well Services Contract.  In any event, under maritime law an indemnity for another party's willful misconduct would be void as contrary to public policy.

*Second*, as a matter of public policy, maritime law as established by decisions from the Fifth Circuit and this Court prohibits indemnification for gross negligence.  As BP has already explained in response to Transocean, maritime law does not make any distinction between "exculpatory" and "indemnity" clauses purporting to relieve a party of the consequences of its own gross negligence.  Moreover, HESI's reliance on an *insurance* case to claim that the law on indemnification for gross negligence is unsettled is wholly misplaced.  Distinct principles apply to indemnity provisions ancillary to commercial contracts and under maritime law a contractual indemnity purporting to indemnify for gross negligence is void.  Parties including the PSC have alleged that HESI's conduct was grossly negligent.  If those charges are proven, HESI cannot obtain indemnity.

*Third*, under established principles of contract law, BPXP is discharged from any duty to indemnify if HESI's conduct materially increased risks to BPXP as indemnitor or breached the terms of the Well Services Contract.  HESI cites no relevant authority to avoid these settled rules.  Nor, contrary to HESI's claims, is BPXP required to bring a claim for breach of contract against HESI simply to establish that BPXP has been discharged from its indemnity obligations by HESI's breach.  HESI must prove that it has performed under the contract to assert any right to indemnification and BPXP can argue that HESI's breach prevents enforcement of the indemnities without making any affirmative claim.

*Fourth*, the Well Services Contract does not provide for indemnification of punitive damages, fines, or penalties. Moreover, federal law prohibits indemnification for punitive damages, fines, or penalties, which are intended to punish the conduct of a specific defendant.

*Fifth*, under the contractual language and dominant rules applying to contracts containing indemnities, any duty to defend is simply the duty to pay litigation costs to the extent there is a duty to indemnify.

## ARGUMENT

## I. THE WELL SERVICES CONTRACT DOES NOT PROVIDE INDEMNITY FOR FRAUD, NOR WOULD MARITIME LAW ALLOW AN INDEMNITY FOR FRAUD TO BE ENFORCED.

BPXP and BPAP have alleged that HESI made fraudulent statements and fraudulently concealed material information concerning the cement tests it conducted and other matters. *E.g.*, Dkt. 2082, BP's Cross-Compl. and Third Party Compl. against HESI ¶¶ 118-24; 126-31. Relying on these fraudulent statements, BPXP then allowed HESI to pour the unstable cement slurry that led to the uncontrollable well and blowout. *Id.*

HESI cannot obtain indemnity for losses resulting from its fraudulent conduct for two reasons. First, contrary to HESI's claims, under the plain terms of the Well Services Contract, BPXP did not promise to indemnify HESI even if HESI deliberately deceived BPXP in a manner that resulted in a pollution or contamination loss. Second, even if the contract could somehow be stretched to create such an extraordinary obligation, under maritime law such an indemnity would be void.

### A. The Plain Language of the Well Services Contract Does Not Provide Indemnity for Fraud.

Nothing in the terms of the Well Services Contract remotely establishes a promise by BPXP to indemnify HESI even if HESI practiced a fraud on BPXP. Neither the contract sections

HESI cites (Ex. 1, Well Services Contract §§ 19.4, 19.6, and 19.7) nor any other sections in the contract purport to hold HESI harmless for such extraordinary misconduct.  The terms of the contract must be understood in light of settled rules of construction under maritime law, which begin with the principle that "[i]ndemnity agreements are to be strictly construed."  *Smith v. Tenneco Oil Co.*, 803 F.2d 1386, 1388 (5th Cir. 1986).  Thus, where the parties have specified particular causes of loss that are covered by an indemnity, the indemnity cannot be expanded to cover *other* causes not within the natural meaning of the terms the parties have chosen.  *See, e.g.*, *Babcock v. Cont'l Oil Co.*, 792 F.2d 1346, 1350-51 (5th Cir. 1986); *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332-33 (5th Cir. 1981); BP Mem. re TO at 2-4.

Here, Section 19.7 of the Well Services Contract states that indemnities "shall apply irrespective of cause and notwithstanding the *negligence or breach of duty* (whether statutory or otherwise) of the indemnified Party . . . and shall apply whether or not the claim, liability, damage, or expense in question is: (a) predicated on sole, joint or concurrent *fault, negligence* (whether active, passive or gross)*, strict liability, statutory duty, contractual indemnity or otherwise at law*."  Ex. 1 § 19.7 (emphasis added).  None of the causes of loss listed in that provision mentions fraud.  Indeed, none of the covered causes of loss even extends to any form of deliberate misconduct.  As HESI itself recognizes, however, establishing fraud would require proof of knowing wrongdoing by HESI.  HESI Mem. at 16; *see also Atel Mar. Investors, LP v. Sea Mar Mgmt., L.L.C.*, 2010 WL 1978261, at *3 (E.D. La. May 14, 2010).  Nothing in the terms chosen in Section 19.7 suggests an intention to reach knowing misconduct.

This reading of Section 19.7 is strongly buttressed by the rule that extraordinary obligations in an indemnity contract must be expressed in clear and unequivocal terms.  *See, e.g.*, *Corbitt*, 654 F.2d at 333; *cf. Tulane Hotel Investors Corp. v. First Fin. Bank, F.S.B.*, 1987 WL

19041, at *1 (E.D. La. Oct. 26, 1987) (indemnity cannot cover indemnitee's "acts and/or omissions constituting negligence, fraud, conversion or misrepresentation" without "express provision") (La. law).  As BP has explained in response to Transocean's motion, it is settled law that indemnifying another party for its contractual obligations to third parties, for its own simple negligence, or for losses arising under strict liability is an extraordinary obligation.  *See*, *e.g.*, *Corbitt*, 654 F.2d at 333 (contractual liability to indemnify third party); *Batson-Cook Co. v. Indus. Steel Erectors,* 257 F.2d 410, 412-13 (5th Cir. 1958) (simple negligence); *Fina, Inc. v. ARCO*, 200 F.3d 266, 271 (5th Cir. 2000) (strict liability); BP Mem. re TO at 4-5.  It follows *a fortiori* that an agreement to indemnify another for deliberate wrongdoing in the form of fraud is an extraordinary obligation demanding exceedingly specific and clear language.  None of the language in the Well Services Contract meets that standard.

HESI points to language saying that the indemnity applies "irrespective of cause," covers "breach of duty (whether statutory *or otherwise*)," and applies if the loss arises from specified causes "or otherwise at law."  *See* HESI Mem. at 17-19 (emphasis in original).  According to HESI, any fraud would involve breach of duties "statutory or otherwise," and thus it must be covered.  *Id.* at 18.  But that overly simplified approach to the contract cannot be accepted.  To begin with, the expansive language referring to losses arising "otherwise" must be interpreted under the *ejusdem generis* canon of construction under which an expansive term at the end of a list is understood as referring to something of like kind to earlier items in the list.  *See Wijsmuller BV v. Tug Benasque*, 528 F. Supp. 1081, 1083 (D. Del. 1981) (holding that in interpreting language concerning party's rights "by reason of any statutes in effect, rights to limit liability or otherwise" that "the words '*or otherwise*' should not be construed to embrace defendant's claim that the seizure was wrongful because of the forum selection clause.  The application of the

principle of construction ejusdem generis forecloses this interpretation.") (emphasis added); *see also Luckenbach S.S. Co. v. United States*, 42 F.2d 156, 157 (2d Cir. 1930) (rejecting argument that owner's cost of defending against an unfounded salvage suit is an expense "incident to the use and operation of the vessel" as used in clause requiring indemnitor to "pay all port charges, pilotages and all other costs and expenses incident to the use and operation of the vessel"; "[u]nder the familiar rule of noscitur a sociis, the immediately succeeding phrase, 'and all other costs and expenses incident to the use and operation of the vessel,' would naturally be construed to embrace items similar in character" to port charges and pilotages); *Pollgreen v. Morris*, 911 F.2d 527, 532-33 (11th Cir. 1990) (rejecting "plaintiffs' expansive reading of the term 'otherwise' [in phrase "represented by counsel or otherwise"] to include the immigration officer conducting the interview or hearing"; "'*otherwise*' is more appropriately read in the context of the entire clause to refer to an individual who represents the position of the United States *in a manner similar to that of counsel*") (internal footnote omitted) (emphasis added).

Here, as explained above, none of the specifically enumerated causes of loss in Section 19.7 includes deliberate misconduct. By simply referring to losses arising "otherwise at law" at the end of a list of specified causes of loss, the parties did not radically expand their contract to provide HESI an extraordinary indemnity for intentional misconduct. In addition, the Fifth Circuit has made clear that broad general language (such as the phrases "irrespective of cause" and "or otherwise") is not specific enough to satisfy the demand for clear and unequivocal terms to create an extraordinary indemnity obligation. Thus, in holding that a contract that indemnified for "any and all . . . losses, expenses, damages and claims" did not cover the indemnitee's own simple negligence, the Fifth Circuit explained that "all-inclusiveness of language" was "insufficient" to cover an extraordinary obligation. *Batson-Cook*, 257 F.2d at 412-13, n.4.

Instead, such an obligation "must be spelled out in unmistakable terms." *Id.* at 413.  As the court put it, this is an area of the law where, contrary to HESI's assumption, "to cover all does not include one of the parts."  *Id.* at 414; *see also Gaspard v. Offshore Crane & Equip., Inc.*, 106 F.3d 1232, 1236 (5th Cir. 1997) (holding that in approaching an indemnity, courts should "refus[e] to adopt the fullest meaning which lexicography would permit") (internal quotation marks omitted).  Thus, under settled law, the broad general terms in Section 19.7 cannot be read to provide an indemnity for HESI's fraudulent conduct.

Finally, HESI's theory that it has a blanket indemnity covering even willful violations of *any* statutory duty would produce absurd results.  *See Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 n.6 (5th Cir. 2004) (maritime law) (holding that contract "is not ambiguous because its language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation"); *In re Fitzgerald Marine & Repair, Inc.*, 619 F.3d 851, 860 n.12 (8th Cir. 2010) (citing *Chembulk* for the proposition that for "federal maritime contracts, [] an indemnity provision … [should] not be interpreted in a manner that leads to absurd results").  Under HESI's implausible reading, even if HESI had deliberately destroyed the vessel, in breach of multiple duties "statutory or otherwise," it would still be entitled to indemnification within the term of the contract.  Even a cursory consideration of the results that would be countenanced under HESI's reading shows that HESI's gloss cannot be accepted.

### B.    Maritime Law Prohibits Indemnification for Fraud.

Even if the indemnity provisions could be construed to reach fraud, any such purported indemnity would be unenforceable under maritime law.  As BP has explained in response to Transocean's motion, *see* BP Mem. re TO at 6-12, and explains in Part II below, maritime law refuses to enforce as contrary to public policy contracts purporting to indemnify a party for its

own gross negligence.   Given that willful misconduct — such as fraud — involves *greater* culpability than gross negligence and is conduct that society has an even stronger interest in deterring, it necessarily follows that attempts to indemnify for fraud and other forms of intentional wrongdoing are also unenforceable.

Although BP has not found a maritime case expressly addressing an attempt to indemnify for fraud, courts that have addressed the question under various federal and state laws have consistently rejected as contrary to public policy indemnities for fraud or other intentional torts. *See, e.g., Amoco Production Co. v. Forest Oil Corp.*, 844 F.2d 251, 254 (5th Cir. 1988) ("In Louisiana, however, it has long been held that a party may not shift liability for its future intentional acts."); *Diamond Crystal Salt Co. v. Thielman*, 395 F.2d 62, 65 (5th Cir. 1968)  ("It is clear that Louisiana public policy disfavors similar agreements involving indemnity to the extent of requiring that they be strictly construed, and an agreement purporting to prospectively relieve another of liability for an intentional tort is void even though it may not involve corporal injury."); *Harris v. Howard Univ., Inc.*, 28 F. Supp. 2d 1, 13-14 (D.D.C. 1998)  (holding that it would violate public policy to permit indemnification for "grossly negligent, reckless, willful, or wanton behavior").[2]   Not surprisingly, HESI has not cited a single case from any jurisdiction permitting indemnification for fraud.

---

[2]   *See also Caldwell v. Enyeart,* 1995 WL 807110, at *4 (6th Cir. Dec. 8, 1995) (unpub.) (noting that under Michigan law an indemnity contract for willful and wanton wrongdoing is unenforceable); *City of Montgomery v. JYD Int'l, Inc.*, 534 So.2d 592, 594 (Ala. 1988) ("Agreements that purport to indemnify another for the other's intentional conduct are void as a matter of public policy."); *Sam Kohli Enters., Inc. v. BOC Group, Inc.*, 2011 WL 3298902, at *2 (S.D. Cal. Aug. 1, 2011) (under California public policy, indemnity could not protect defendants from liability for claims of fraud or other conduct beyond mere negligence); *Modular Devices, Inc. v. Alcatel Alenia Space Espana*, 2010 WL 3236779, at *4 (E.D.N.Y. Aug. 12, 2010) (N.Y. law) ("[I]ndemnification agreements are unenforceable as violative of public policy to the extent that they purport to indemnify a party for damages flowing from the intentional causation of injury."); *Equitex, Inc. v. Ungar*, 60 P.3d 746, 750 (Colo. Ct. App. 2002) ("Public policy prohibits indemnifying a party for damages resulting from intentional or willful wrongful acts.") (internal quotation marks omitted); *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 774 N.E.2d 775, 781 (Ohio Ct. App. 2002) ("Ohio law, on public policy grounds, generally prohibits indemnification for damages caused by intentional torts.").

Nor can HESI salvage its claim for indemnification by pointing to Section 2710 of the Oil Pollution Act ("OPA").  *See* HESI Mem. at 10-11 (citing 33 U.S.C. § 2710(a) ("Nothing in this Act prohibits any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this Act.")).  OPA expressly leaves untouched any prohibitions placed on indemnification by other law (including maritime law) as it specifies solely that "[n]othing in *this Act*" prohibits indemnification.  33 U.S.C. § 2710(a) (emphasis added).  By its plain language, this simply means that Congress made clear that *OPA itself* does not prohibit indemnities.[3]  That provision says nothing about whether other law such as maritime law or other federal statutes can prohibit or limit indemnities.  Furthermore, HESI's cite to *Joslyn Mfg. Co. v. Koppers Co., Inc.*, 40 F.3d 750, 754-55 (5th Cir. 1994) is inapposite because that decision did not involve arguments about whether the indemnity was limited by public policy.  *See also* BP Mem. re TO at 12-13 & n.13.

## II.   MARITIME LAW PROHIBITS INDEMNIFICATION FOR GROSS NEGLIGENCE.

Even if HESI has not committed fraud, gross negligence by HESI will also suffice to eliminate any indemnity obligation.  Under maritime law, a contract that purports to indemnify a party for its own gross negligence is void as contrary to public policy.  In *Becker v. Tidewater,*

---

Indeed, even the handful of non-maritime cases that might permit indemnification for gross negligence often state that indemnity for intentional misconduct is against public policy.  *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 86 (2d Cir. 2005) ("It is important, however, to 'distinguish between [such] exculpatory clauses' and 'indemnity contracts that simply shift the source of compensation without restricting the injured party's ability to recover.'  The latter agreements are not contrary to public policy *unless they purport to indemnify a party for damages flowing from an injury that was intentional.*") (emphasis added and citation omitted).

[3]  Notably, OPA Section 2710(b) provides that no agreement "shall be effective to transfer liability imposed under this Act."  33 U.S.C. § 2710(b).  Standing alone, this subsection could be interpreted as prohibiting indemnities for OPA costs and damages.  The legislative history indicates that Section 2710(a) was enacted to clarify that, despite this prohibition on the transfer of liability, indemnity agreements are not prohibited.  *See, e.g.*, S. Rep. No. 101-94, at 14, *reprinted in* 1990 U.S.C.C.A.N. 722, 736 ("Liability may not be transferred, but nothing in section 102(f) bars any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section."); H.R. Rep. No. 101-242, pt. 2, at 63 ("This subsection also makes it clear that the prohibition against transferring liability by agreement does not preclude agreements in which another person may agree to pay for all or part of the liability to which a responsible party may be subject.").

*Inc.*, 586 F.3d 358 (5th Cir. 2009), the Fifth Circuit explained, based on the principle that "a waiver of liability for gross negligence is void," that an indemnitor "escapes indemnity" if an indemnitee's actions "were grossly negligent."  *Id.* at 367; *accord Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401, 411 (5th Cir. 1982) (explaining that "[g]ross negligence [] will invalidate an exemption from liability").  This Court has also held that a party cannot be indemnified for gross negligence.  *Houston Exploration Co. v. Halliburton Energy Servs., Inc.*, 2000 WL 423909, at *7 & n.11 (E.D. La. Apr. 18, 2000) (Barbier, J.), *vacated, rem. on other grounds*, 269 F.3d 528, 531-33 (5th Cir. 2001) (after finding that the contractor's gross negligence caused the blowout, holding that under both maritime and Louisiana law, "the release and indemnity clause involved in this case is utterly invalid and of no effect whatsoever"); *see also Nexen Petroleum U.S.A., Inc. v. Sea Mar Div. of Pool Well Servs. Co.*, 497 F. Supp. 2d 787 (E.D. La. 2007); *Marquette Transp. Co. v. La. Mach. Co.*, 2002 WL 1809092, at *18 (E.D. La. Aug. 7, 2002), *aff'd in part, rev'd in part, rem. on other grounds*, 367 F.3d 398 (5th Cir. 2004); *Energy XXI, GoM, LLC v. New Tech Eng'g, L.P.*, 787 F. Supp. 2d 590, 609-11 (S.D. Tex. 2011).[4]

Contrary to HESI's claims, the public policy bar on indemnification for gross negligence is not an "open question" in this circuit.  HESI Mem. at 12 n.10.  The Fifth Circuit has squarely stated that an indemnity for gross negligence is void, citing a case involving HESI itself:

> Baker and Seth also contend that the indemnity provision is invalid because they allege that Tidewater committed gross negligence. It is undisputed that Baker escapes indemnity if Tidewater's actions leading to Seth's injuries were grossly negligent. *See Houston Exploration Co. v. Halliburton Energy Servs., Inc.*, 269 F.3d 528, 531 (5th Cir. 2001) (noting that a waiver of liability for gross negligence is void).

---

[4]  Maritime law in other circuits is in accord.  *See, e.g.*, *Broadley v. Mashpee Neck Marina, Inc.*, 471 F.3d 272, 274-75 (1st Cir. 2006); *Sander v. Alexander Richardson Invs.*, 334 F.3d 712, 717 n.3 (8th Cir. 2003); *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1016 (9th Cir. 1999); *La Esperanza de P.R., Inc., v. Perez y Cia. de P.R., Inc.*, 124 F.3d 10, 19 (1st Cir. 1997).

*Becker*, 586 F.3d at 367.  Applying this settled legal principle, the Fifth Circuit ultimately found that Tidewater's conduct was not grossly negligent and so enforced the indemnity provision. Thus, far from being half-considered dicta, this passage is central to the decision in *Becker* and explains why the court needed to and did decide whether Tidewater's conduct was grossly negligent.

As BP has already explained in response to Transocean, *see* BP Mem. re TO at 8-9, HESI is also wrong in attempting to draw a distinction between so-called "exculpation" clauses and indemnity clauses, and claiming that indemnities are not contrary to public policy when they cover gross negligence.  *See* HESI Mem. at 13-14.  For example, both *Becker* and *Sea Mar* involved indemnities for third-party costs, not "exculpation" clauses that merely released the contractual counterparty from liability.  Specifically, *Becker* addressed which of two companies to an indemnity contract, Baker or Tidewater, would bear the costs for Tidewater's fault in causing injuries to a third party, Seth Becker.  586 F.3d at 367.  Similarly, *Sea Mar* concerned whether Nexen Petroleum would have to indemnify Sea Mar for losses incurred by two third parties, Global and Nexen Offshore, after Sea Mar's vessel allided with Global's drilling rig. 497 F. Supp. 2d at 799 & n.33.  Thus, both the Fifth Circuit and this Court have issued decisions directly on point stating that indemnities for third party costs are void if the indemnitee was grossly negligent.  Cases from other jurisdictions likewise hold that indemnification for gross negligence is against public policy.[5]

---

[5]  *See, e.g.*, *Caldwell*, 1995 WL 807110, at *4 (Mich. law); *S. Ry. v. Foote Mineral Co.*, 384 F.2d 224, 226 (6th Cir. 1967) (Tenn. law); *Ala. Great S. Ry. Co. v. Louisville & Nashville R.R.. Co.*, 224 F.2d 1, 4 (5th Cir. 1955); *CSX Transp., Inc. v. Mass. Bay Transp. Auth.*, 697 F. Supp. 2d 213, 226-27 (D. Mass. 2010) (Mass. law); *Harris*, 28 F. Supp. 2d at 13-14; *In re Firstline Corp.*, 2007 WL 269086, at *2-3 (Bankr. M.D. Ga. Jan. 25, 2007); *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 893 (Tenn. 2002); *Britt v. May Dep't Stores Co.*, 1994 WL 585930, at *3 (E.D. Pa. Oct. 14, 1994); *Albert Trostel & Sons Co. v. Canadian Imperial Bank of Commerce*, 1984 WL 868, at *2 (N.D. Ill. Aug. 21, 1984) (Wisc. law).

HESI's reliance on *Taylor v. Lloyd's Underwriters of London*, 972 F.2d 666 (5th Cir. 1992), is misplaced.  *See* HESI Mem. at 12 n.10.  That case addressed whether federal public policy prohibited *insurance* contracts (not indemnity provisions in commercial contracts) from covering *punitive damages* (not gross negligence).  *See Taylor*, 972 F.2d at 669 ("We find that these cases have not established a specific and controlling federal rule disallowing the recovery of punitive damages *from an insurance company*.") (emphasis added).  Importantly, the Supreme Court has held that marine insurance policies generally are governed by the laws of the 50 states. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 321 (1955); *Taylor*, 972 F.2d at 668 ("Since 1955, this court, in addressing maritime cases, has interpreted *Wilburn Boat* to require the application of state insurance law principles if there is no specific and controlling federal rule.").  Given that marine insurance policies are governed by *state law*, there should be no surprise that *maritime law* has not developed a specific rule regarding whether such policies can provide insurance coverage against punitive damages.  But indemnities in maritime contracts are governed by maritime law.  *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538 (5th Cir. 1986); *see generally A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co.*, 256 F.2d 227, 229-231 (2d Cir. 1958) (explaining how Supreme Court precedent requires application of state law to marine insurance policies and maritime law to indemnities in maritime contracts).  In contrast to the jurisprudence on marine insurance policies, *Becker*, *Sea Mar*, and other cases establish that maritime law prohibits indemnification for gross negligence.

Moreover, insurance contracts and indemnity contracts are fundamentally different.  *See, e.g.*, *Castleberry v. Goldom Credit Corp.* 418 F.3d 1267, 1271-73 (11th Cir. 2005); *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 492-93 (5th Cir. 2000).  Unlike an ancillary indemnity in a commercial contract, the entire point of an insurance contract is to

provide protection for losses.  An insurer is a professional enterprise engaged in the broad pooling of risks whose very business is to provide that risk-transfer protection.  Based on these (and other) differences, courts generally approach insurance policies and indemnification agreements with diametrically opposing interpretive rules: insurance contracts are interpreted in favor of coverage while indemnities are construed narrowly.  *See, e.g.*, *Castleberry*, 418 F.3d at 1271-72.  Given that different legal regimes apply to insurance and indemnity contracts in myriad situations, there is no tension between a rule that gross negligence might be covered by insurance and the maritime law rule forbidding an indemnity for gross negligence.  The Well Services Contract obviously is not an insurance policy, but instead is a contract for the provision of maritime services that contains ancillary indemnities.  Maritime law governs that contract and prohibits indemnification for gross negligence. [6]

HESI cites *In re Horizon Vessels, Inc.*, 2005 U.S. Dist. LEXIS 42110, at *34 (S.D. Tex. Nov. 18, 2005), as its sole example of a "recognized legal authorit[y]" that purportedly stands for the proposition that indemnification for gross negligence does not violate public policy under maritime law.  HESI Mem. at 14.  But *Horizon Vessels* provides no reliable authority on that point.  As another judge on the same court has pointed out, "there is no indication" that the court in *Horizon Vessels* "was presented with the argument . . . that the [indemnity] clause was unenforceable."  *Energy XXI*, 787 F. Supp. 2d at 609-11.  As a result, even in the Southern District of Texas, *Horizon Vessels* has been treated as "not persuasive" with regard to the claim that an indemnity for gross negligence "is enforceable."  *Id.*

---

[6]  The Restatement (Second) of Contracts likewise does not support HESI.  HESI Mem. at 13-14.  After stating the general rule that contracts to exempt a party from liability for "harm caused intentionally or recklessly" are void, a comment explains that this rule "does not apply to an agreement by a third person to indemnify a party against liability in tort."  Restatement (Second) of Contracts § 195, comment b.  Contrary to HESI's strained interpretation, the "third person" referred to does not and cannot logically refer to BPXP, who is a party to the Well Services Contract.  Instead, a "third person" means a stranger to the dispute and alleged tort, such as an insurer.  As noted, the distinction between insurance contracts and indemnity contracts like the one at issue here is well-recognized.

HESI fares no better with its appeal to the sophistication of the parties involved here as a defense for a contract term indemnifying gross negligence. Many of the maritime cases invalidating indemnities for gross negligence involved sophisticated parties and reciprocal terms. For example *Becker* and *Houston Exploration* involved Baker Hughes, Inc., Tidewater Inc., The Houston Exploration Company, and HESI itself. *See Becker*, 586 F.3d at 363; *Houston Exploration*, 2000 WL 423909, at *1. Likewise the *Becker* court held that gross negligence invalidates indemnification for gross negligence even though there were reciprocal indemnities in that case. 586 F.3d at 365.

## III. CONTRACT LAW HOLDS THAT HESI'S CONDUCT CAN DISCHARGE BPXP FROM ANY INDEMNIFICATION OBLIGATION.

### A. Any Indemnity Obligation Was Discharged Because HESI's Actions Materially Increased the Risks to BPXP.

HESI's motion for summary judgment also fails under a settled rule of contract law. As the Fifth Circuit has explained, it is a "general rule of law that any act on the part of an indemnitee which materially increases the risk, or prejudices the rights, of the indemnitor, will discharge the indemnitor under the contract of indemnity." *Hiern v. St. Paul-Mercury Indem. Co.*, 262 F.2d 526, 529 (5th Cir. 1959) (La. law; citing *U.S. Fid. & Guar. Co. v. Putfark*, 158 So. 9, 10 (La. 1934)); *see also Gen. Ins. Co. of Am. v. Fleeger*, 389 F.2d 159, 161 n.3 (5th Cir. 1968) (Tex. law); *Hudson v. Forest Oil Corp.*, 2003 WL 21276385, at *4 (E.D. La. June 2, 2003) (Barbier, J.) (maritime law). For example, where an indemnitee bail bondsman failed to supervise a bailee to ensure his appearance, the Seventh Circuit held that the bondsman had "increased . . . risk under [an] indemnity agreement" with the underwriter of the bond and thereby "extinguished" its obligation. *Rochelle Bail Agency, Inc. v. Md. Nat'l Ins. Co.*, 484 F.2d 877, 879 (7th Cir. 1973); *see also, e.g.*, *Dana Corp. v. Fireman's Fund Ins. Co.,* 169 F. Supp. 2d 732, 742-43 (N.D. Ohio 1999); *cf.* 42 C.J.S. *Indemnity* § 61 (2011).

The rule is grounded in policy considerations related to the moral hazard that would be created if indemnities were applied without regard to the way an indemnitee increased risks of loss.  If an indemnitee were assured that it would still receive its indemnity without regard to any conduct that increased the indemnitor's risks, indemnitees would be freed of a crucial incentive for avoiding risky behavior — including conduct that might injure numerous innocent third parties.  *See generally Harley-Davidson, Inc. v. Minstar, Inc.*, 41 F.3d 341, 343 (7th Cir. 1994).  Concern for such moral hazard is particularly acute here given that maritime law seeks to deter conduct that may result in injuries to seamen.  *See, e.g.*, *Italia Societa per Azioni di Navigazione v. Or. Stevedoring Co.*, 376 U.S. at 315, 324 (1964).

Here, the PSC and BPXP have alleged (and the evidence developed to date shows) that HESI greatly increased the risk of a blowout by using an unstable cement slurry.  Because the facts relating to HESI's conduct must be determined at trial, and will likely discharge BPXP from any indemnity, summary judgment is inappropriate.  *See also* BP Mem. re TO at 13-14.

HESI musters only a single footnote in response to the settled Fifth Circuit precedent outlined above.  HESI Mem. at 14 n.12.  Without citing any case law, HESI asserts without explanation that the breadth of BPXP's indemnity negates any argument under cases such as *Hiern* that HESI's actions materially increasing risks might discharge the indemnity.  But that rationale provides no basis for ignoring *Hiern* and its progeny.  HESI cannot cite any case holding that the rationale in *Hiern* should be jettisoned whenever there is a broad indemnity provision.  To the contrary, *Hiern* states a general rule, applicable to *all* indemnity provisions, providing that conduct that materially increases risks can discharge an indemnity.  Whether that rule applies in this case can properly be determined only after a trial establishing exactly how egregious HESI's conduct really was.

15

**B.      Material Breaches of the Well Services Contract By HESI Release BPXP from Any Duty To Indemnify.**

HESI is also wrong in claiming that its breaches of the Well Services Contract provide no basis for relieving BPXP of its indemnity obligations.  It is a bedrock principle of contract law that, as a general matter, "if one party to a contract breaches, there is no obligation for the non-breaching party to continue performance."  *United States for use of Wallace v. Flintco, Inc.*, 143 F.3d 955, 968 (5th Cir. 1998); *Morris v. Homco Int'l, Inc.*, 853 F.2d 337, 345 (5th Cir. 1988) (same); *see also* Restatement (Second) of Contracts § 237.

Contracts for indemnity are interpreted using the same principles of law that apply to all contracts.  *See, e.g.*, *Corbitt*, 654 F.2d at 332-33.  Accordingly, where an indemnitee breaches a term that is material to an indemnity (and thereby prejudices the indemnitor's rights), the breach discharges the indemnity.  *See, e.g.*, *Mobil Chem. Co. v. Blount Bros. Corp.*, 809 F.2d 1175, 1181-82 (5th Cir. 1987) (explaining that "[i]t is inconceivable that Blount would have agreed to indemnify Mobil for damages resulting from its [Mobil's] own breaches of contract") (internal quotation marks omitted); *New Eng. Tel. & Tel. Co. v. Cent. Vt. Pub. Serv. Corp.*, 391 F. Supp. 420, 429-30 (D. Vt. 1975); *Schmahl v. Macy's Dep't Stores, Inc.*, 2010 WL 3061526, at *5 (E.D. Wash. July 30, 2010); 42 C.J.S. *Indemnity* § 61 ("Any act or omission on the part of the indemnitee in breach of his or her duty under the contract of indemnity that increases the indemnitor's risk or liability, or otherwise injures his or her rights and remedies, ordinarily discharges the indemnitor from liability under the indemnity contract."); *cf. In re Torch, Inc.*, 1996 WL 185765, at *10 (E.D. La. April 16, 1996) (whether party had breached contract and whether that breach should discharge an indemnity raised factual questions precluding summary judgment).  Indeed, as the Fifth Circuit has explained, an agreement to indemnify a counterparty for any breaches of the contract would produce an absurd result, making the contract "void for

lack of mutuality." *Mobil Chem.*, 809 F.2d at 1182.  The indemnitee "would have no obligations under the contract; it could breach the contract in any way and to any extent and [the indemnitor] would be liable to itself!  This interpretation is ridiculous."  *Id.*

The Southern District of Texas has applied the standard principle that breach by one party discharges a contractual counterparty's duty to perform and held, in a maritime case, that a breach of a material provision will release a party from its duty to indemnify.  *See Jackson v. Lloyd Brasileirs Patrimonio Nacional*, 324 F. Supp. 556, 562 n.9 (S.D. Tex. 1970); *see also Pettus v. Grace Line, Inc.*, 305 F.2d 151, 153-54 (2d Cir. 1962); *see generally* BP Mem. re TO at 14-17.

HESI's theories for avoiding this straightforward result are meritless.  First, HESI's reliance on *Becker* and its brief description of *Marquette Transportation Co. v. Louisiana Machinery Co.*, 367 F.3d 398 (5th Cir. 2004), are misplaced.  *See* HESI Mem. at 15.  In *Marquette*, the Fifth Circuit squarely indicated that breach of contract can discharge an indemnity.  367 F.3d at 408.  In *Becker,* the court subsequently observed in passing that "*Marquette* does not hold that breach of a contract *necessitates* invalidation of an indemnity agreement included therein."  *Becker*, 586 F.3d at 370 (emphasis added).  But nothing in that single comment undermines the rule applied in other Fifth Circuit cases like *Mobil Chemical* and noted in *Marquette* that, in an appropriate case (that is, where the breach is material to the indemnity), breach of contract will discharge the duty to indemnify.[7]

Second, it is irrelevant that BPXP has not brought a claim for breach of contract against HESI.  *Cf.* HESI Mem. at 15 & n.14.  Contrary to HESI's assertions, BPXP does not have to bring an affirmative breach of contract claim to assert breach against HESI's claim for

---

[7]  HESI itself has recognized and purported to act in accordance with this basic principle of contract law.  *See* HESI Mem. at 7 n.8 ("HESI has declined to [indemnify BP] at this point based upon BP's prior breach of its indemnity obligations.").

indemnification.   Instead, as part of its claim for indemnity, HESI must prove that it has performed the contract.  *See Persson v. Scotia Prince Cruises, Ltd.*, 330 F.3d 28, 32-33 (1st Cir. 2003).  BPXP can assert breach to prevent HESI from showing that it satisfied the required element of performance, and if the breach is shown, HESI cannot enforce the indemnification provisions.

## IV.   THE WELL SERVICES CONTRACT AND PUBLIC POLICY PROHIBIT INDEMNIFICATION FOR PUNITIVE DAMAGES, FINES, AND PENALTIES.

BP's cross motion for summary judgment against HESI on the claims for indemnification of punitive damages, fines, and penalties should be granted.  If such liabilities are imposed on HESI, the Well Services Contract does not provide for indemnification.  Such an indemnity would be an extraordinary obligation demanding express and unequivocal terms that are wholly lacking from the contract.   In addition, public policy prohibits indemnification for punitive damages, fines, and penalties, which are assessed against wrongdoers for their own individual malfeasance and are designed to deter and punish such misconduct.

### A.   The Well Services Contract Does Not Provide For, And Public Policy Does Not Allow, Indemnity for Punitive Damages.

HESI cannot obtain indemnity for punitive damages under the Well Services Contract. The Contract's indemnities do not mention punitive damages, and so the plain language of the Contract does not extend to such damages that are intended to punish rather than compensate. (Ex. 1)  Moreover, indemnity for punitive damages is an extraordinary obligation that requires a clear and unequivocal agreement to be covered, which is wholly absent from the Well Services Contract.  *See supra* Part I.A; *see also Batson-Cook*, 257 F.2d at 413-14 (explaining that, this "is an area in which to cover all does not include one of the parts" and that the "law regards as essential" "positive directness" about the particular extraordinary obligation supposedly included in an indemnity).   Thus, this Court has held under maritime law that where an "indemnity

provision does not specify that it encompasses punitive damages, the Court will not enforce the indemnity obligation with respect to any such damages."  *Ruehs v. Alliance Offshore, L.L.C.*, 2007 WL 275915, at *1 (E.D. La. Jan. 26, 2007).[8]

Moreover, any such indemnity would be unenforceable as contrary to public policy under maritime law.  Permitting a contractual indemnity to shift punitive damages would frustrate the very purpose behind the damages:  "No clearer example of a situation which would subvert the purposes of awarding punitive damages can be imagined than to permit such indemnification." *Daughdrill v. Ocean Drilling & Exploration Co. (ODECO)*, 665 F. Supp. 477, 481-82 (E.D. La. 1987); *see also Rollins v. Peterson Builders, Inc.*, 761 F. Supp. 918, 929 (D.R.I. 1990);[9] BP Mem. re TO at 23-24; BP Reply re TO at 7-9.

**B.    The Well Services Contract Does Not Provide For, And Public Policy Does Not Allow, Indemnity for Fines or Penalties.**

HESI does not directly argue that it is entitled to indemnity for fines and penalties, although it suggests in a footnote (HESI Mem. at 3 n.5) that the indemnity should cover fines and penalties.  Although the United States has not sought civil penalties from HESI under the Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("CWA") and all state law claims for penalties have been dismissed, HESI may still be liable for civil penalties.   The Bureau of Safety and Environmental Enforcement ("BSEE"), a successor to the Marine Minerals Service charged with

---

[8]  Furthermore, the Well Services Contract's language shows both that the parties knew how to include punitive damages in the contract, and that they expressly excluded punitive damages from the indemnity for third party claims.  In Section 21, the parties purport to release and indemnify each other from each party's own "Consequential Loss."  Ex. 1 § 21.  "Consequential Loss" for the purposes of the paragraph is defined to include each party's own "indirect, special, incidental, *punitive*, or consequential losses or damages … ."  *Id.* (emphasis added).  The definition of "Consequential Loss," and thus each party's release, has an exception for consequential losses that are part of third party claims for which a party is seeking contribution or indemnification.  This exception applies to "consequential, indirect, and/or special damages, loss of profits, loss of production, or loss of use … ."  Ex. 1 § 21.  Punitive damages are notably absent from this list of exceptions.  Thus, the parties included punitive damages in the losses they purported to release against each other, and omitted punitive damages from the exception to that release for third party damages sought through indemnification.

[9]  Non-maritime cases also prohibit indemnities for punitive damages.  *E.g.*, *Biondi v. Beekman Hill House Apartment Corp.*, 731 N.E.2d 577, 579 (N.Y. 2000); *Rosenbloom v. Flygare*, 501 N.W.2d 597, 602 (Minn. 1993).

enforcing the Outer Continental Shelf Lands Act ("OCSLA"), has initiated enforcement actions against HESI.   BSEE's enforcement action can lead to the assessment of penalties against HESI.

Any penalties assessed against HESI from the BSEE's enforcement action should not be subject to indemnity from BPXP for two reasons.  First, the Well Services Contract's indemnities do not cover fines and penalties.   HESI's claim that the indemnities in the Well Services Contract are "all inclusive, and certainly broad enough to include both civil claims and civil fines and penalties" ignores the imperative for clear and unequivocal language.  HESI Mem. at 3 n.5; *see also id.* at 4 n.6.  The general language HESI identifies is not remotely specific enough to impose an extraordinary obligation to indemnify for fines and penalties.

Second, even if the contract did cover fines and penalties, the indemnity would be unenforceable as contrary to public policy, for the same reasons articulated by BP and the United States in opposition to Transocean's pending motion.  BP Mem. re TO at 18-22; BP Reply re TO at 1-7; Dkt. 4902-2.  OCSLA penalties, like those under the CWA, are primarily designed to punish and deter.  The goal of the Outer Continental Shelf Civil Penalty Program is "to encourage compliance with statutes and regulations that apply to activities on the OCS by facilitating the assessment and collection of civil penalties."   Oil and Gas and Sulphur Operations in the Outer Continental Shelf—Civil Penalties, 76 Fed Reg. 38294-01 (June 30, 2011).  Penalties under OCSLA, like penalties under the Clean Water Act, are tailored to the specific circumstances of the violator to ensure that they have the intended punitive and deterrent effect.  *See, e.g.*, 30 C.F.R. § 250.1470 ("We determine the amount of the penalty by considering the severity of the violations, your history of compliance, and if you are a small business."); *W & T Offshore, Inc.*, IBLA 98-179, 1999 WL 485016, at *37-41 (I.B.L.A. May, 11, 1999).  A contractual indemnity would undermine the penalties' purpose.

## V.    BPXP HAS NO CURRENT DUTY TO PAY DEFENSE COSTS.

Even if BPXP might ultimately be found liable to indemnify HESI for some losses, BPXP has no obligation *now* to undertake the costs of HESI's defense.  The duty to defend requires an indemnitor simply to pay attorneys' fees and the costs of defense if, at the conclusion of trial, the indemnitee is found entitled to indemnification.   The general rule is that "an indemnity agreement does not render the indemnitor liable until the indemnitee actually makes payment or sustains loss," and as a result, a "cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid."  *Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 (La. 1987); *see also Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 51 (La. 2005) ("As this lawsuit is still pending, and no determination of liability has been made, the court of appeal erred in finding that [indemnitor] owed a duty to defend, or pay for defense costs . . . .").[10]

This rule is grounded in settled differences between insurance and indemnity contracts. *See supra* Part II.   An insurer's duty to defend is distinct from its duty to indemnify and generally is triggered if the allegations in a complaint indicate the potential for liability under an insurance policy.  *E.g.*, 14 Lee R. Russ, COUCH ON INSURANCE § 200:3 (3d ed. 2011).   A contractual indemnitor's duty to defend, in contrast, generally is co-extensive with its duty to indemnify and is triggered only if an indemnified loss is established at the end of a case.  *E.g.*, *Grand Trunk W. R.R. v. Auto Warehousing Co.*, 686 N.W.2d 756, 762-63 (Mich. Ct. App. 2004); *Inner City Redev. Corp. v. Thyssenkrupp Elevator Corp.*, 913 N.Y.S.2d 29, 30 (N.Y. App. Div.

---

[10]   *See also*, *e.g.*, *Barton-Malow Co. v. Grunau Co.*, 835 So. 2d 1164, 1167 (Fla. Dist. Ct. App. 2003); *United Consulting Eng'rs v. Bd. of Comm'rs of Hancock Cnty.*, 810 N.E.2d 351, 354 (Ind. App. 2004); *Grand Trunk W. R.R. v. Auto Warehousing Co.*, 686 N.W.2d 756 (Mich. Ct. App. 2004); *Sargent v. Johnson*, 601 F.2d 964, 967 (8th Cir. 1979) (Minn. law); *Nagim v. N.J. Transit*, 848 A.2d 61, 70 (N.J. Super. Law Div. 2003); *Inner City Redevelopment Corp. v. Thyssenkrupp Elevator Corp.*, 913 N.Y.S.2d 29, 30 (N.Y. App. Div. 2010); *Estate of King v. Wagoner Cnty. Bd. of Cnty. Comm'rs*, 146 P.3d 833, 845-46 (Okla. Civ. App. 2006).

2010).  For example, if an indemnity does not cover losses arising from negligence, a finding that the indemnitee was negligent will mean that the indemnitor has no duty to indemnify *and* no duty to pay for defense costs.  *Suire*, 907 So. 2d at 51; *Inner City*, 913 N.Y.S.2d at 30.  The more limited duty imposed on contractual indemnitors makes sense given that the entire purpose of insurance policies is to protect insureds from harm, provide for a defense, and spread risk, while contractual indemnities are merely incidental to other businesses of the parties (such as operating oil wells).  *E.g.*, *Castleberry*, 418 F.3d at 1272-73; *Daughdrill*, 665 F. Supp. 481-82.[11]

In addition, the plain terms of the Well Services Contract confirm that BPXP's duties to indemnify and defend are co-extensive.  The indemnity clauses state that the indemnitor "shall save, indemnify, release, defend and hold harmless" indemnitee.  *E.g.*, Ex. 1 § 19.6.  That language treats the duties to defend and indemnify identically, without giving either one a broader scope than the other.  If BPXP and HESI had intended a broader duty to defend, they could have used different language.  Instead, the Well Services Contract makes the duties to defend and to indemnify parallel.  The Fifth Circuit has rejected the claim that the duty to defend is broader than the duty to indemnify when the language of the indemnity contract makes the duties parallel.  In *Smith v. Chevron Oil Co.,* 517 F.2d 1154 (5th Cir. 1975), after determining that the contract in question did not provide Chevron an indemnity for its own negligent acts, the court rejected the argument that the duty to defend Chevron could still apply:

> Such a construction of the agreement in this case does not accord with the plain, ordinary and popular sense of the language of the contract.  Under the contractual

---

[11] In light of settled precedent distinguishing between insurance and indemnity contracts, HESI is mistaken in relying on two cases that, in applying Texas law, relied on insurance precedents.  *See* HESI Mem. at 11 n.9.  An intermediate Texas appellate court "f[ou]nd little reason why the principles regarding an insurer's duty to defend should not apply with equal force to an indemnitor's contractual promise to defend its indemnitee." *English v. BGP Int'l, Inc.*, 174 S.W.3d 366, 372 n.6 (Tex. App. 2005).  The *English* court, however, failed to consider any of well-established principles explaining why insurance contracts and contractual indemnification agreements are routinely treated differently.  Likewise, a federal district court in Nevada simply relied on *English* without considering any other cases that explain the distinctions between insurance policies and indemnification contracts.  *See Valley Health Sys., LLC v. Nurses 'R' Special, Inc.*, 2011 U.S. Dist. LEXIS 40216 (D. Nev. Apr. 12, 2011).

provision, Ocean Sciences agreed to defend and to indemnify Chevron against claims of Ocean Sciences' employees for injuries which were connected with Ocean Sciences' services to Chevron. *There is no separate paragraph controlling the legal defense of claims. All is contained in one paragraph and would seem to be subject to the same rule.* Without the requisite clear language for Ocean Sciences to *indemnify* Chevron for the injury damages, in view of Chevron's negligence, there is no contract language to indicate an intent for Ocean Sciences to *provide a legal defense* for Chevron against its negligent acts.

*Id.* at 1156-58 (citations omitted) (interpreting contractual indemnification clause providing that Ocean Sciences "agrees to defend and hold Company (Chevron) indemnified and harmless from and against any loss, expense, claim or demand").[12]

## CONCLUSION

HESI's motion should be denied. The Court should grant BP's cross-motion and hold that BPXP has no duty to indemnify HESI for punitive damages, fines, or penalties.

---

[12]   Contrary to HESI's claims, the cases it cites do not establish that the duty to defend is independent and can be currently enforced when the duty to indemnify remains in doubt. Instead, those cases simply show that, in the unusual situation where the ultimate duty to indemnify can be determined prior to the end of the case (for example, because the indemnitee has been dismissed from the case, or because the duty to indemnify can be determined as a matter of law), the duty to defend may likewise be determined prior to the end of the case. Thus, in *Clement v. Marathon Oil Co.*, 724 F. Supp. 431 (E.D. La. 1989), the court's finding that indemnitor "*should have assumed* [indemnitee's] defense," *id.* at 433 (emphasis added), was made only *after* indemnitee had already been dismissed from the underlying case. Indemnity was therefore no longer an issue, and the court was only faced with the question of whether the indemnitor had a duty to defend. Given this procedural posture, the finding that indemnitor "*should have assumed*" indemnitee's defense provides little support for any finding that BP currently has any duty to defend HESI in this ongoing case, where the ultimate duty to indemnify is contested and will remain so until the conclusion of the case. *Horizon Vessels*, 2005 U.S. Dist. LEXIS 42110, likewise does not assist HESI. In *Horizon Vessels*, the court found that the provision at issue required indemnification for all conduct possibly at issue in the underlying case. Thus, in contrast to the situation in this case, there was no need to await the outcome of the lawsuit. Having found that, no matter what happened at trial, full indemnification for any loss would be required, the court also found that attorneys' fees should be awarded. Here, where HESI's ultimate right to indemnity cannot yet be determined, there can be no determination of HESI's ultimate right to defense costs.

Date:  December 21, 2011                     Respectfully submitted,


                                            /s/ Don K. Haycraft
                                            Don K. Haycraft (Bar #14361)
                                            R. Keith Jarrett (Bar #16984)
                                            Liskow & Lewis
                                            701 Poydras Street, Suite 5000
                                            New Orleans, Louisiana 70139-5099
                                            Telephone: (504) 581-7979
                                            Facsimile: (504) 556-4108

                                            and

                                            Richard C. Godfrey, P.C.
                                            J. Andrew Langan, P.C.
                                            R. Chris Heck
                                            Kirkland & Ellis LLP
                                            300 North LaSalle Street
                                            Chicago, IL 60654
                                            Telephone: (312) 862-2000
                                            Facsimile: (312) 862-2200

                                            Patrick F. Philbin
                                            Kirkland & Ellis LLP
                                            655 Fifteenth Street N.W.
                                            Washington, DC  20005
                                            Telephone: (202) 879-5000
                                            Facsimile: (202) 879-5200


                                            Robert C. "Mike" Brock
                                            Covington & Burling LLP
                                            1201 Pennsylvania Avenue, NW
                                            Washington, DC 20004-2401
                                            Telephone: (202) 662-5985

                                            *Attorneys for BP p.l.c., BP Exploration &
                                            Production Inc. and BP America Production
                                            Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 21st day of December, 2011.

/s/ Don K. Haycraft
Don K. Haycraft