1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3
     ******************************************************************
4
     IN RE:  OIL SPILL BY THE
5    OIL RIG *DEEPWATER HORIZON*
     IN THE GULF OF MEXICO ON
6    APRIL 20, 2010

7                              CIVIL ACTION NO. 10-MD-2179 "J"
                               NEW ORLEANS, LOUISIANA
8                              FRIDAY, DECEMBER 16, 2011, 9:30 A.M.

9
     THIS DOCUMENT RELATES TO
10   ALL CASES

11   ******************************************************************

12
                     TRANSCRIPT OF MOTIONS PROCEEDINGS
13            HEARD BEFORE THE HONORABLE CARL J. BARBIER
                     UNITED STATES DISTRICT JUDGE
14

15
     APPEARANCES:
16

17
     FOR THE PLAINTIFFS'
18   LIAISON COUNSEL:          DOMENGEAUX WRIGHT ROY & EDWARDS
                               BY:  JAMES P. ROY, ESQUIRE
19                             P. O. BOX 3668
                               556 JEFFERSON STREET
20                             LAFAYETTE, LA   70502

21
                               HERMAN HERMAN KATZ & COTLAR
22                             BY:  STEPHEN J. HERMAN, ESQUIRE
                               820 O'KEEFE AVENUE
23                             NEW ORLEANS, LA   70113

24

25

```
 1  APPEARANCES CONTINUED:

 2

 3  FOR THE PLAINTIFFS:        BREIT DRESCHER IMPREVENTO & WALKER
                               BY:  JEFFREY A. BREIT, ESQUIRE
 4                             1000 DOMINION TOWER
                               999 WATERSIDE DRIVE
 5                             NORFOLK, VA  23510

 6

 7                             IRPINO LAW FIRM
                               BY:  ANTHONY IRPINO, ESQUIRE
 8                             ONE CANAL PLACE
                               365 CANAL STREET, SUITE 2990
 9                             NEW ORLEANS, LA  70130

10

11                             CUNNINGHAM BOUNDS
                               BY:  ROBERT T. CUNNINGHAM, ESQUIRE
12                             1601 DAUPHIN STREET
                               MOBILE, AL  36604
13

14
                               LEWIS, KULLMAN, STERBCOW & ABRAMSON
15                             BY:  PAUL M. STERBCOW, ESQUIRE
                               PAN AMERICAN LIFE BUILDING
16                             601 POYDRAS STREET, SUITE 2615
                               NEW ORLEANS, LA  70130
17

18
                               LIEFF CABRASER HEIMANN & BERNSTEIN
19                             BY:  ELIZABETH J. CABRASER, ESQUIRE
                               275 BATTERY STREET, 29TH FLOOR
20                             SAN FRANCISCO, CA  94111

21

22                             WILLIAMSON & RUSNAK
                               BY:  JIMMY WILLIAMSON, ESQUIRE
23                             4310 YOAKUM BOULEVARD
                               HOUSTON, TX  77006
24

25
```

1  APPEARANCES CONTINUED:

2

3

4                          WATTS GUERRA CRAFT
                           BY:  TONY PLETCHER, ESQUIRE
5                          4 DOMINION DRIVE
                           BUILDING 3, SUITE 100
6                          SAN ANTONIO, TX  78257

7

8                          WEITZ & LUXENBERG
                           BY:  ROBIN L. GREENWALD, ESQUIRE
9                          700 BROADWAY
                           NEW YORK CITY, NY  10003
10

11
                           MORGAN & MORGAN
12                         BY:  ALPHONSO M. ESPY, ESQUIRE
                           188 EAST CAPITOL STREET, SUITE 777
13                         JACKSON, MS  39201

14

15                         MARTÍNEZ, GONZALES, KALBAC & KANE
                           BY:  ERVIN A. GONZALEZ, ESQUIRE
16                         255 ALHAMBRA CIRCLE, PENTHOUSE
                           CORAL GABLES, FL  33134
17

18
                           COSSICH SUMICH PARSIOLA & TAYLOR
19                         BY:  PHILIP F. COSSICH, JR., ESQUIRE
                           8397 HIGHWAY 23, SUITE 100
20                         BELLE CHASSE, LA  70037

21

22                         DEGRAVELLES PALMINTIER HOLTHAUS & FRUGE
                           BY:  MICHAEL C. PALMINTIER, ESQUIRE
23                         618 MAIN STREET
                           BATON ROUGE, LA  70801
24

25

1  APPEARANCES CONTINUED:

2

3                            BEASLEY ALLEN CROW METHVIN
                             PORTIS & MILES
4                            BY:  RHON E. JONES, ESQUIRE
                             POST OFFICE BOX 4160
5                            MONTGOMERY, AL   36013

6

7                            BARRIOS KINGSDORF & CASTEIX
                             BY:  DAWN M. BARRIOS, ESQUIRE
8                            701 POYDRAS STREET, SUITE 3650
                             NEW ORLEANS LA 70139
9

10

11                           FAYARD & HONEYCUTT
                             BY:  CALVIN C. FAYARD, JR., ESQUIRE
11                           519 FLORIDA AVENUE SW
12                           DENHAM SPRINGS, LA 70726

13

14                           LUNDY, LUNDY, SOILEAU & SOUTH
                             BY:  MATTHEW E. LUNDY, ESQUIRE
15                           501 BROAD STREET
                             LAKE CHARLES, LA   70601
16

17

18                           WILLIAMS LAW GROUP
                             BY:  CONRAD S. P. WILLIAMS, ESQUIRE
19                           435 CORPORATE DRIVE, SUITE 101
                             HOUMA, LA   70360

20

21                           BARON & BUDD
                             BY:  SCOTT SUMMY, ESQUIRE
22                           3102 OAK LAWN AVENUE, SUITE 1100
                             DALLAS, TX  75219
23

24

25

```
 1  APPEARANCES CONTINUED:

 2

 3                              MORRIS BART
                               BY:  MEKEL S. ALVAREZ, ESQUIRE
 4                              909 POYDRAS STREET, SUITE 2000
                               NEW ORLEANS, LA  70112
 5

 6

 7  FOR STATE INTERESTS:    ALABAMA ATTORNEY GENERAL'S OFFICE
                               BY:  LUTHER STRANGE, ESQUIRE
 8                                   COREY L. MAZE, ESQUIRE
                                     WINFIELD J. SINCLAIR, ESQUIRE
 9                              500 DEXTER AVENUE
                               MONTGOMERY, AL  36130
10

11
    FOR THE STATE OF
12  LOUISIANA:              KANNER & WHITELEY
                               BY:  ALLAN KANNER, ESQUIRE
13                                   ALLISON SHIPP, ESQUIRE
                               701 CAMP STREET
14                              NEW ORLEANS, LA  70130

15

16                              GOVERNOR BOBBY JINDAL
                               BY:  ELIZABETH BAKER MURRILL, ESQUIRE
17                              600 NORTH THIRD STREET
                               BATON ROUGE, LA  70802
18

19
    FOR THE FEDERAL
20  GOVERNMENT INTERESTS:   U.S. DEPARTMENT OF JUSTICE
                               TORTS BRANCH, CIVIL DIVISION
21                              BY:  R. MICHAEL UNDERHILL, ESQUIRE
                                     A. NATHANIEL CHAKERES, ESQUIRE
22                              450 GOLDEN GATE AVENUE
                               7TH FLOOR, ROOM 5395
23                              SAN FRANCISCO, CA  94102

24

25
```

```
 1  APPEARANCES CONTINUED:

 2

 3  FOR THE UNITED STATES
    OF AMERICA:              ENVIRONMENTAL ENFORCEMENT SECTION
 4                          U.S. DEPARTMENT OF JUSTICE
                           BY:  STEVEN O'ROURKE, ESQUIRE
 5                          P.O. BOX 7611
                           WASHINGTON, DC  20044
 6

 7

 8  FOR TRANSOCEAN HOLDINGS
    LLC, TRANSOCEAN
    OFFSHORE DEEPWATER
 9  DRILLING INC., AND
    TRANSOCEAN DEEPWATER
10  INC.:                   FRILOT
                           BY:  KERRY J. MILLER, ESQUIRE
11                          ENERGY CENTRE, 36TH FLOOR
                           1100 POYDRAS STREET
12                          NEW ORLEANS, LA  70163

13

14                          SUTHERLAND ASBILL & BRENNAN
                           BY:  STEVEN L. ROBERTS, ESQUIRE
15                               RACHEL G. CLINGMAN, ESQUIRE
                           1001 FANNIN STREET, SUITE 3700
16                          HOUSTON, TX  77002

17

18                          GOFORTH LEWIS
                           BY:  DANIEL O. GOFORTH, ESQUIRE
19                          4900 WOODWAY, SUITE 750
                           HOUSTON, TX 77056
20

21

22                          ROYSTON RAYZOR VICKERY & WILLIAMS
                           BY:  JOHN M. ELSLEY, ESQUIRE
                           PENNZOIL PLACE
23                          711 LOUISIANA STREET, SUITE 500
                           HOUSTON, TX  77002
24

25
```

```
 1  APPEARANCES CONTINUED:

 2

 3                              MUNGER TOLLES & OLSON
                                BY:  BRAD D. BRIAN, ESQUIRE
 4                              355 SOUTH GRAND AVENUE, 35TH FLOOR
                                LOS ANGELES, CA  90071
 5

 6
     FOR BP AMERICA INC.,
 7   BP AMERICA PRODUCTION
     COMPANY, BP COMPANY
 8   NORTH AMERICA INC.,
     BP CORPORATION NORTH
 9   AMERICA INC.,
     BP EXPLORATION &
10   PRODUCTION INC.,
     BP HOLDINGS NORTH
11   AMERICA LIMITED,
     BP PRODUCTS NORTH
12   AMERICA INC.:            LISKOW & LEWIS
                              BY:  DON K. HAYCRAFT, ESQUIRE
13                            ONE SHELL SQUARE
                              701 POYDRAS STREET
14                            SUITE 5000
                              NEW ORLEANS, LA  70139
15

16
                              KIRKLAND & ELLIS
17                            BY:  J. ANDREW LANGAN, ESQUIRE
                                   RYAN S. BABIUCH, ESQUIRE
18                            300 N. LASALLE
                              CHICAGO, IL  60654
19

20
                              KIRKLAND & ELLIS
21                            BY:  ROBERT R. GASAWAY, ESQUIRE
                              655 FIFTEENTH STREET, N.W.
22                            WASHINGTON, DC  20005

23
                              BECK REDDEN & SECREST
24                            BY:  DAVID J. BECK, ESQUIRE
                              ONE HOUSTON CENTER
25                            1221 MCKINNEY STREET, SUITE 4500
                              HOUSTON, TX  77010
```

```
 1   APPEARANCES CONTINUED:

 2

 3
                            COVINGTON & BURLING
 4                          BY:  ROBERT C. "MIKE" BROCK, ESQUIRE
                            1201 PENNSYLVANIA AVENUE, NW
 5                          WASHINGTON, DC  200

 6

 7   FOR CAMERON INTERNATIONAL
     CORPORATION:              STONE PIGMAN WALTHER WITTMANN
 8                          BY:  PHILLIP A. WITTMANN, ESQUIRE
                                 CARMELITE M. BERTAUT, ESQUIRE
 9                          546 CARONDELET STREET
                            NEW ORLEANS, LA 70130
10

11
     FOR HALLIBURTON
12   ENERGY SERVICES, INC.:  GODWIN RONQUILLO
                            BY:  DONALD E. GODWIN, ESQUIRE
13                               JENNY L. MARTINEZ, ESQUIRE
                                 STEFANIE K. MAJOR, ESQUIRE
14                          1201 ELM STREET, SUITE 1700
                            DALLAS, TX  75270
15

16
                            GODWIN RONQUILLO
17                          BY:  R. ALAN YORK, ESQUIRE
                            1331 LAMAR, SUITE 1665
18                          HOUSTON, TX  77010

19

20   FOR ANADARKO
     PETROLEUM CORPORATION,
21   ANADARKO E&P COMPANY
     LP:                       KUCHLER POLK SCHELL
22                          WEINER & RICHESON
                            BY:  DEBORAH D. KUCHLER, ESQUIRE
23                          1615 POYDRAS STREET, SUITE 1300
                            NEW ORLEANS, LA  70112
24

25
```

```
 1  APPEARANCES CONTINUED:

 2

 3                              BINGHAM MCCUTCHEN
                               BY:  KY E. KIRBY, ESQUIRE
 4                                  WARREN A. FITCH, ESQUIRE
                               2020 K STREET, NW
 5                             WASHINGTON, DC  20006

 6

 7  FOR MOEX OFFSHORE
    2007 LLC:                  CARVER DARDEN KORETZKY TESSIER
 8                             FINN BLOSSMAN & AREAUX
                               BY:  PHILLIP D. NIZIALEK, ESQUIRE
 9                             1100 POYDRAS STREET, SUITE 3100
                               NEW ORLEANS, LA  70163
10

11
    FOR M-I L.L.C.:            MORGAN, LEWIS & BOCKIUS
12                             BY:  HUGH E. TANNER, ESQUIRE
                                    STEVEN LUXTON, ESQUIRE
13                             1000 LOUISIANA STREET, SUITE 4000
                               HOUSTON, TX  77002
14

15
    FOR TRANSOCEAN
16  EXCESS UNDERWRITERS:       PHELPS DUNBAR
                               BY:  GEORGE M. GILLY, ESQUIRE
17                                  EVANS M. MCLEOD, ESQUIRE
                               CANAL PLACE
18                             365 CANAL STREET, SUITE 2000
                               NEW ORLEANS, LA  70130
19

20
    FOR WEATHERFORD U.S.,
21  L.P.:                      JONES WALKER
                               BY:  WILLIAM C. BALDWIN, ESQUIRE
22                                  LANCE N. SANNINO, ESQUIRE
                               600 JEFFERSON STREET, SUITE 1600
23                             LAFAYETTE, LA 70501

24

25
```

09:53AM

```
 1   APPEARANCES CONTINUED:

 2

 3   FOR O'BRIEN'S RESPONSE
     MANAGEMENT, INC.,
 4   SEACOR HOLDINGS, INC.,
     SEACOR OFFSHORE LLC,
 5   SEACOR MARINE, LLC,
     SEACOR WORLDWIDE, INC.,
 6   SEACOR MARINE, INC.,
     SEACOR MARINE
 7   INTERNATIONAL, INC.,
     AND SIEMENS FINANCIAL,
 8   INC.:                    WEIL GOTSHAL & MANGES
                              BY:  JEREMY T. GRABILL, ESQUIRE
 9                                 THEODORE E. TSEKERIDES, ESQUIRE
                              767 FIFTH AVENUE
10                            NEW YORK, NY  10153

11

12   FOR DRIL-QUIP,
     INC.:                    WARE, JACKSON, LEE & CHAMBERS
13                            BY:  C. DENNIS BARROW, JR., ESQUIRE
                              2929 ALLEN PARKWAY, 42ND FLOOR
14                            HOUSTON, TEXAS 77019

15

16   FOR MARINE SPILL
     RESPONSE CORPORATION:     BLANK ROME
17                            BY:  ALAN M. WEIGEL, ESQUIRE
                              THE CHRYSLER BUILDING
18                            405 LEXINGTON AVENUE
                              NEW YORK, NY  10174
19

20
     FOR MDL 2185:             MITHOFF LAW FIRM
21                            BY:  WILLIAM STRADLEY, ESQUIRE
                              3450 ONE ALLEN CENTER
22                            500 DALLAS STREET
                              HOUSTON, TX  77002
23

24

25
```

1    APPEARANCES CONTINUED:

2

3    SPECIAL MASTER:              PROFESSOR FRANCIS E. MCGOVERN
                                 DUKE UNIVERSITY SCHOOL OF LAW
4                                CORNER OF SCIENCE & DRIVES
                                 BOX 90362
5                                DURHAM, NC 27708

6

7    ALSO PRESENT:               [PLEASE SEE SIGN-IN SHEETS FILED IN THE
                                 RECORD]
8

9

10   OFFICIAL COURT REPORTER:    CATHY PEPPER, CRR, RMR, CCR
                                 CERTIFIED REALTIME REPORTER
11                               500 POYDRAS STREET, ROOM HB406
                                 NEW ORLEANS, LA   70130
12                               (504) 589-7779
                                 Cathy_Pepper@laed.uscourts.gov
13

14   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
     PRODUCED BY COMPUTER.
15

16

17

18

19

20

21

22

23

24

25

1                          **I N D E X**

2

3   AGENDA ITEMS                                    PAGE

4

5   TRANSOCEAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT        13

6   AGAINST BP TO ENFORCE BP'S CONTRACTUAL OBLIGATIONS,

7   WHICH IS RECORD DOCUMENT 4457.........................

8   BP'S CROSS-MOTION FOR SUMMARY JUDGMENT, WHICH IS        13

9   RECORD DOCUMENT 4827..................................

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1             **P-R-O-C-E-E-D-I-N-G-S**

2           FRIDAY, DECEMBER 16, 2011

3         M O R N I N G   S E S S I O N

4           (COURT CALLED TO ORDER)

5

6

7           THE DEPUTY CLERK:  All rise.

8           THE COURT:  Please be seated, everyone.

9           All right.  We'll now take up Transocean's motion

10  for partial summary judgment against BP to enforce BP's

11  contractual obligations, which is Record Document 4457, and,

12  simultaneously, BP's cross-motion for summary judgment, which is

13  Record Document 4827.

14      MR. ELSLEY:  Good morning, again, Your Honor.  My name

15  is John Elsley.

16           I understand I have 20 minutes, and I will stick to

17  that.  With the Court's permission, may I reserve a couple of

18  minutes for rebuttal?

19           THE COURT:  Sure.

20           MR. ELSLEY:  May I proceed?

21           THE COURT:  Yes.

22           MR. ELSLEY:  Your Honor, as you know from reading the

23  briefs that the parties have filed, Transocean seeks to hold BP

24  to its promise.  BP does not want that to happen.  BP wants you

25  to disregard BP's promise to Transocean, and to declare certain

10:19AM 1   of the reciprocal indemnity obligations made by the parties in

10:19AM 2   the drilling contract to be against public policy.

10:19AM 3           What Transocean requests by its motion is that BP

10:19AM 4   be held to its word when it promised in the drilling contract

10:19AM 5   that it would assume full responsibility for underwater pollution

10:20AM 6   and would indemnify Transocean for all damages, without limit and

10:20AM 7   without regard to the cause, including strict liability or the

10:20AM 8   negligence of any person, whether active, passive or gross --

10:20AM 9           THE COURT:  Counsel, let me just stop you for one second

10:20AM 10  for two reasons.

10:20AM 11          First of all, Tom, can you hear sufficiently in the

10:20AM 12  back?

10:20AM 13          Okay.  We had a complaint from someone when I

10:20AM 14  recessed that they were having trouble hearing way in the back,

10:20AM 15  but, apparently -- we've checked, all of the sound system is

10:20AM 16  apparently working, so I just wanted to make sure the sound is

10:20AM 17  okay in the back.

10:20AM 18          You're right up at the podium.  Those who are

10:20AM 19  speaking, of course, need to make sure you're at the podium and

10:20AM 20  speaking up.

10:20AM 21          Thank you, Tom.

10:20AM 22          Let me just ask you this, Mr. Elsley.

10:20AM 23      MR. ELSLEY:  Yes, Your Honor.

10:20AM 24      THE COURT:  I want to make sure what's not at issue

10:20AM 25  here.  Transocean is not claiming or asking for indemnity from BP

10:20AM 1   for any conduct that might be found to be willful or intentional

10:21AM 2   or anything in that category, correct?

10:21AM 3          MR. ELSLEY:  That is correct, Your Honor.  Our motion

10:21AM 4   relates only to gross negligence and, of course, negligence.

10:21AM 5          THE COURT:  All right.  Go ahead.

10:21AM 6          MR. ELSLEY:  What Transocean says, Your Honor, is that

10:21AM 7   public policy is not offended by indemnity provisions that

10:21AM 8   allocate risks and do not exonerate anyone.

10:21AM 9          This is not a case about a one-sided bargain in

10:21AM 10  which a party shifted all the risks and thereby eliminated its

10:21AM 11  incentives to avoid grossly negligent conduct.  Transocean does

10:21AM 12  not seek contractual exoneration.

10:21AM 13         Transocean has retained many risks.  It lost many

10:21AM 14  good men, many more were injured.  It lost a rig.  Indemnity as

10:21AM 15  applied here will not be exoneration; it will be a fair and

10:21AM 16  realistic apportionment of the risks as agreed to by the

10:21AM 17  parties -- as agreed to by two sophisticated bargaining parties.

10:22AM 18         I think it's important to start off by observing

10:22AM 19  that the Fifth Circuit has never decided that a reciprocal

10:22AM 20  contractual indemnity for gross negligence is unenforceable as a

10:22AM 21  matter of public policy.  We wouldn't be having this hearing if

10:22AM 22  it had.

10:22AM 23         So, keeping that in mind, before the Court is,

10:22AM 24  first, the textual question of what the drilling contract

10:22AM 25  actually says, and, second, a larger question of whether the

10:22AM  1    public policy should invalidate that.

10:22AM  2              On that larger question, the public policy

10:22AM  3    question, it is Transocean's position that Your Honor is free to

10:22AM  4    decide the public policy issue as you deem appropriate because

10:22AM  5    you are not bound by any controlling Fifth Circuit precedent.

10:22AM  6         THE COURT:  There is Fifth Circuit law and other law.

10:22AM  7    It's also happens to be the law, statutory law in Louisiana, not

10:22AM  8    that we're applying.  But I think there is no issue here that

10:22AM  9    maritime law governs this contract, correct?

10:23AM 10         MR. ELSLEY:  That is correct, Your Honor.

10:23AM 11         THE COURT:  But there is law that there is a public

10:23AM 12    policy against allowing a party to be indemnified for grossly

10:23AM 13    negligent conduct vis-à-vis the other party to the contract.  Am

10:23AM 14    I right about that?

10:23AM 15         MR. ELSLEY:  In a very specific limited sense, you're

10:23AM 16    right.  The *Todd Shipyards* case, of course, Your Honor, is a

10:23AM 17    shipyard contract case, ship repair case --

10:23AM 18         THE COURT:  Well, there is a *Todd Shipyards* case.  The

10:23AM 19    *Houston Exploration v. Halliburton* case, which came out of my

10:23AM 20    court, so I'm very familiar with that case.

10:23AM 21         MR. ELSLEY:  I know you are, Your Honor.

10:23AM 22         THE COURT:  But those were all party A versus party B to

10:23AM 23    the contract, right?

10:23AM 24         MR. ELSLEY:  Those were all party A to party B to the

10:23AM 25    contract.

10:23AM 1     THE COURT:  In other words, in the case that I had, it
10:24AM 2 was Houston Exploration had contracted with Halliburton,
10:24AM 3 obviously, to do some downhole work on their well.  The
10:24AM 4 allegation was that Halliburton was grossly negligent.
10:24AM 5     The issue was -- I think this Court and I think the
10:24AM 6 Fifth Circuit recognized that if Halliburton was grossly
10:24AM 7 negligent, that would void the indemnity agreement between those
10:24AM 8 two parties.  Ultimately, the Fifth Circuit decided that
10:24AM 9 Halliburton's conduct did not amount to gross negligence, and
10:24AM 10 that was the final holding of the case.
10:24AM 11     MR. ELSLEY:  Absolutely, correct, Your Honor.
10:24AM 12     Of course, the *Houston Exploration* case did deal
10:24AM 13 with Louisiana statute, and it was governed by state law.
10:24AM 14     THE COURT:  No doubt, because it was a platform.  It was
10:24AM 15 a platform on the OCS.
10:24AM 16     MR. ELSLEY:  We don't have a similar statute under
10:24AM 17 maritime law.
10:24AM 18     THE COURT:  Right.
10:24AM 19     MR. ELSLEY:  If you take a look at BP's reply to our
10:24AM 20 motion, they take one sentence from the *Becker* case, which you're
10:25AM 21 familiar with, which begins, "It is undisputed."  And they take
10:25AM 22 one sentence from the *Houston Exploration* case which begins,
10:25AM 23 "Neither party disputes."
10:25AM 24     In both of those cases, there was no arguing with
10:25AM 25 the civil code -- at least, in the *Houston Exploration* case.  In

10:25AM 1    *Becker*, the public policy issue was never before the Court at any

10:25AM 2    time because the charter didn't expressly cover gross negligence,

10:25AM 3    and there was no finding of gross negligence.

10:25AM 4            THE COURT:  Now, *Becker* was a true --

10:25AM 5            MR. ELSLEY:  A third-party case.

10:25AM 6            THE COURT:  You called it *a true third-party indemnity*

10:25AM 7    *case*.

10:25AM 8            MR. ELSLEY:  It certainly was.

10:25AM 9            THE COURT:  Because it was Tidewater, the vessel owner,

10:25AM 10   was seeking indemnity from Baker for injuries to Mr. Becker.

10:25AM 11           MR. ELSLEY:  Very serious injuries, that is correct.

10:25AM 12               Of course, in *Becker*, the charter didn't cover

10:25AM 13   gross negligence.  Of course, in the Fifth Circuit, there was no

10:25AM 14   finding of gross negligence.

10:25AM 15               So what BP has argued is they've taken two

10:26AM 16   statements where it was basically undisputed in the two cases,

10:26AM 17   and they've elevated that into a rule where it's indisputable

10:26AM 18   that there is this rule against indemnity provisions for gross

10:26AM 19   negligence.  What we say is, Your Honor is free to decide this

10:26AM 20   issue as a matter of public policy.

10:26AM 21               As I mentioned earlier, there is a textual

10:26AM 22   question, what does the drilling contract say.  If you look at

10:26AM 23   Section -- or Article 25.1, it defines the scope of the covered

10:26AM 24   causes and remedies by defining the phrase, "protect, release,

10:26AM 25   defend, indemnify and hold harmless."

10:26AM 1          I'm not going to reread that here, but it expressly

10:26AM 2    covers negligence, gross negligence, breach of contract,

10:26AM 3    unseaworthiness and strict liability causes, among others, and

10:26AM 4    covers all variety of damages that result from those causes,

10:26AM 5    including fines and penalties.

10:27AM 6          THE COURT:  You're reading now from 25.1.

10:27AM 7          MR. ELSLEY:  Yes, sir.

10:27AM 8          THE COURT:  Yes.  Okay.

10:27AM 9          MR. ELSLEY:  Then, if we turn to Article 24.2, 24.1 and

10:27AM 10   24.2 are the pollution provisions of the drilling contract, which

10:27AM 11   Your Honor has already ruled upon in connection with the

10:27AM 12   insurance issues.

10:27AM 13         Article 24.2, when it deals with BP's

10:27AM 14   responsibility for pollution, it uses the phrase -- and this is

10:27AM 15   underwater pollution -- it uses the phrase, "shall assume full

10:27AM 16   responsibility," when it refers to BP's indemnity obligation for

10:27AM 17   subsurface pollution.

10:27AM 18         Going back to 25.1, it covers gross negligence,

10:27AM 19   breach of contract, unseaworthiness, and strict liability; and,

10:27AM 20   25.1 is fully incorporated into 24.2, when it uses the "protect,

10:27AM 21   release and defend" language.

10:27AM 22         So unless that obligation as defined in 25.1 is

10:28AM 23   specifically limited in 24.2, it is unlimited.

10:28AM 24         THE COURT:  That's basically the whole argument here.

10:28AM 25   Putting aside the public policy issues, but the contractual

10:28AM 1    issue, seems to me, either succeeds or fails on the issue of

10:28AM 2    whether 25.1 applies to the indemnity that BP assumes under 24.2.

10:28AM 3            MR. ELSLEY:  As to gross negligence --

10:28AM 4            THE COURT:  Right.

10:28AM 5            MR. ELSLEY:  -- that would be correct.  Yes, Your Honor.

10:28AM 6            THE COURT:  BP's argument, as I understand it, is that

10:28AM 7    if you read 25.1, where it has the more specific and expansive

10:28AM 8    indemnity obligation for unseaworthiness, strict liability,

10:29AM 9    breach of contract, negligence, including sole, joint and

10:29AM 10   concurrent, active, passive or gross negligence, that provision,

10:29AM 11   25.1, starts off with an exception by saying, "except to the

10:29AM 12   extent any such obligation is specifically limited to certain

10:29AM 13   causes elsewhere in this contract."

10:29AM 14           So their argument, as I appreciate it, is then you

10:29AM 15   look at 24.2, which they say does limit this indemnity, that is,

10:29AM 16   for subsurface pollution, it's only without regard for

10:29AM 17   negligence; it doesn't use the broader indemnity language.

10:29AM 18           So tell me again what your response, specific

10:29AM 19   response to their argument is?

10:29AM 20           MR. ELSLEY:  My response is, the parties to this

10:29AM 21   contract were capable of specifically limiting indemnities, and

10:30AM 22   did so in the contract; but, where they did that was not 24.2,

10:30AM 23   where they did that are in two sections, 22.3 and 23.1.

10:30AM 24           If you turn to 22.3, Your Honor, you'll see that BP

10:30AM 25   indemnifies Transocean for loss or damage to certain equipment

10:30AM 1    for the full range --

10:30AM 2            THE COURT:  This is the downhole equipment part, right?

10:30AM 3            MR. ELSLEY:  Yes, Your Honor.  That is correct,

10:30AM 4    Your Honor.

10:30AM 5            This is the -- yes, the second paragraph,

10:30AM 6    "indemnifies Transocean for loss or damage to certain equipment

10:30AM 7    for the full range of causes and liability in 25.1."

10:30AM 8            Then it has a phrase in the middle of it where it

10:30AM 9    starts, "unless Transocean's negligence or gross negligence

10:30AM 10   caused that loss or damage."  That is a specific limitation as

10:30AM 11   required by 25.1.  There is no language, there is no "unless"

10:30AM 12   clause in Section 24.2.

10:30AM 13           If you turn to 23.1, we have another example.  This

10:31AM 14   is loss or damage to the hole.  In 23.1, BP indemnifies

10:31AM 15   Transocean for loss or damage to the hole for the full range of

10:31AM 16   causes and liability in 25.1; but, then says, "notwithstanding

10:31AM 17   the previous sentence, if Transocean's negligence or gross

10:31AM 18   negligence is the cause, there is no indemnity."  So that is

10:31AM 19   another example of a specific limitation as required by 25.1.

10:31AM 20           So what we say in reply to BP is that when the

10:31AM 21   parties wanted to except an indemnity from 25.1, they first used

10:31AM 22   a word of exception, like "unless" or "notwithstanding," and

10:31AM 23   then, second, they specifically stated what's excluded.  In 24.2,

10:31AM 24   the parties didn't do either of those things.

10:31AM 25           Now, moving from the textual question, Your Honor,

10:32AM 1    moving on to public policy.  I took a look at the briefs and

10:32AM 2    studied them in preparation for the argument.  I wanted to

10:32AM 3    raise --

10:32AM 4            THE COURT:  Excuse me, go back one second to 25.1.

10:32AM 5            MR. ELSLEY:  Yes, Your Honor.

10:32AM 6            THE COURT:  I don't believe -- it's pretty broad

10:32AM 7    language, indemnity language, but one thing it doesn't use is the

10:32AM 8    word "punitive damages," right?

10:32AM 9            MR. ELSLEY:  It does not use the word "punitive damage."

10:32AM 10           THE COURT:  So you think that would be covered?

10:32AM 11           MR. ELSLEY:  It would be covered.

10:32AM 12                  Your Honor, 25.1 uses the phrase, quote, any and

10:32AM 13   all damages without limit, unquote, arising from, quote, gross

10:32AM 14   negligence, unquote.  And punitive damages plainly result from

10:33AM 15   gross negligence, so it is our position that 25.1 plainly covers

10:33AM 16   punitive damages, as well.

10:33AM 17           THE COURT:  Is the phrase "punitive damages" found

10:33AM 18   elsewhere in the contract?

10:33AM 19           MR. ELSLEY:  There is the phrase "punitive damages" in

10:33AM 20   the consequential damages section of the contract, which is

10:33AM 21   Article 34.1; but, there the parties excluded punitive damages.

10:33AM 22                  So, again, any and all damages without limit

10:33AM 23   arising from gross negligence includes punitive damages.

10:33AM 24                  Your Honor has held -- and that is a case before

10:33AM 25   Your Honor, in -- I don't know if I can pronounce this exactly

10:33AM 1  right, but *Denesse v. Island Operating Company*, this Court held,

10:33AM 2  "The Court should construe indemnity clauses to cover all losses

10:33AM 3  as reasonably appear to have been within the parties'

10:33AM 4  contemplation.  Using that language, or that reasoning, can

10:34AM 5  punitive damages be reasonably inferred from the language of the

10:34AM 6  agreement?"

10:34AM 7          That's the language of Your Honor, and we say it

10:34AM 8  can because gross negligence -- punitive damages flow from gross

10:34AM 9  negligence.

10:34AM 10         Your Honor, moving on to the public policy issue.

10:34AM 11 In going over the briefs in preparing for oral argument, I took a

10:34AM 12 look at BP's briefs, our briefs, the United States' briefs, and

10:34AM 13 there are a few points I would like to raise about public policy,

10:34AM 14 since, once we move beyond the textual issue, that's really the

10:34AM 15 issue before the Court.

10:34AM 16         THE COURT:  Right.  Exactly.

10:34AM 17         MR. ELSLEY:  First of all, in this case, it's

10:34AM 18 indisputable, not just undisputed, that the reciprocal

10:34AM 19 indemnities in the BP/Transocean contract were freely negotiated

10:34AM 20 between the parties.

10:34AM 21         These were parties of equal bargaining power.

10:34AM 22 There was no take it or leave it, no adhesion contract situation.

10:34AM 23 This was an arm's length transaction.

10:35AM 24         Second, the exact type of reciprocal indemnity

10:35AM 25 agreement that we see here is really the results of decades of

10:35AM 1   contracts between oil companies and drilling contractors.  These

10:35AM 2   contracts allocate liability based on a careful balance of each

10:35AM 3   party's investment and contribution, relative ability to control

10:35AM 4   a category of risk, and ability to control a category of loss.

10:35AM 5           The party in the best position to do these things

10:35AM 6   is allocated the liability.  No party's off the hook -- no

10:35AM 7   party's off the hook completely.  All parties bear significant

10:35AM 8   potential liabilities.

10:35AM 9           For example, if oil comes out of the ground, as

10:35AM 10  anticipated, and sold, BP reaps the financial rewards.  It only

10:35AM 11  makes sense if uncontrolled oil escapes and causes pollution, BP

10:35AM 12  faces the financial consequences.

10:35AM 13          Third, drilling contractors are incentivized to

10:36AM 14  operate satisfactorily, whether an oil company's pollution

10:36AM 15  indemnity covers the contractor's gross negligence or not.

10:36AM 16          Drilling contractors, and particularly Transocean

10:36AM 17  in this case, retained responsibility totalling hundreds of

10:36AM 18  millions of dollars in the form of their crew's lives and health,

10:36AM 19  their drilling rig and pollution from the rig.

10:36AM 20          The Macondo blowout itself, which resulted in

10:36AM 21  death, injury, pollution, loss of the vessel, shows the

10:36AM 22  interrelationships of the risks in drilling a well.  There is too

10:36AM 23  much at stake for each party to suggest that any party on a rig

10:36AM 24  only cares about preventing one category of risk.

10:36AM 25          THE COURT:  Let me ask you this --

10:36AM 1          MR. ELSLEY:  Yes, Your Honor.

10:36AM 2          THE COURT:  -- because the United States Government has

10:36AM 3   weighed in, of course, against your motion, also.

10:36AM 4          MR. ELSLEY:  On fines and penalties, yes, sir.

10:36AM 5          THE COURT:  A more limited, I guess, opposition, or more

10:36AM 6   narrow opposition than BP's opposition.

10:37AM 7          MR. ELSLEY:  Yes, Your Honor.

10:37AM 8          THE COURT:  But, as I appreciate it, the United States'

10:37AM 9   argument is basically that it would be against public policy to

10:37AM 10  allow Transocean, or any party, for that matter, to be

10:37AM 11  indemnified for its conduct that leads to Clean Water Act

10:37AM 12  penalties, civil fines and penalties, because those types of

10:37AM 13  penalties or fines are intended for retribution, to punish and to

10:37AM 14  deter future conduct or misconduct.

10:37AM 15          Also, they make the argument, as I appreciate it,

10:37AM 16  that these penalties are driven by the particular or peculiar

10:37AM 17  conduct of that party.  In other words, it looks at the degree of

10:38AM 18  culpability or conduct of the party, whether it's willful or not;

10:38AM 19  it looks at past misconduct, perhaps past history of a defendant;

10:38AM 20  it looks at financial consequences to a defendant in terms of

10:38AM 21  setting those penalties.

10:38AM 22          So their argument, again, as I appreciate it, is

10:38AM 23  that it just wouldn't make sense, and it would be against public

10:38AM 24  policy, to impose that kind of penalty and then let someone just

10:38AM 25  contract out of it, so to speak.

10:38AM 1        MR. ELSLEY:  Well, a couple of points about that,

10:38AM 2   Your Honor.  The penalty indemnity and the pollution --

10:38AM 3        THE COURT:  My question is whether the Court should

10:38AM 4   differentiate, perhaps; even if I agree with Transocean's basic

10:38AM 5   premise that the contract calls for indemnity, and even if I

10:39AM 6   would agree that there is no public policy preventing Transocean

10:39AM 7   from recovering from BP, even in the event of gross negligence,

10:39AM 8   would that apply to all categories of damages and claims, or just

10:39AM 9   compensatory damages?  Should we differentiate based on the type

10:39AM 10  of claim that Transocean would be making against BP, compensatory

10:39AM 11  versus punitive damages versus civil fines and penalties?

10:39AM 12       MR. ELSLEY:  Well, Your Honor, certainly our position is

10:39AM 13  that fines and penalties are specifically covered under

10:39AM 14  Article 22.4 and 25.1, by name.

10:39AM 15       THE COURT:  Well, but I'm getting, really, to the public

10:39AM 16  policy issue.

10:39AM 17       MR. ELSLEY:  You're getting to the public policy issue.

10:40AM 18       My response to that is, Your Honor, that OPA

10:40AM 19  actually -- the distinction is drawn in OPA between holding the

10:40AM 20  drilling contractor liable for spills above the waterline and

10:40AM 21  holding the lessee liable for spills below the waterline.

10:40AM 22       That is something -- that is a distinction that

10:40AM 23  Your Honor has recognized in the insurance -- in your ruling on

10:40AM 24  the insurance cases.  Your Honor ruled, "Article 24.1 allocates

10:40AM 25  the Transocean liabilities for pollution originating on or above

10:40AM 1  the surface of the water."  You went on to say, "The *Deepwater*

10:40AM 2  *Horizon* incident entailed a subsurface release.  Transocean did

10:40AM 3  not assume those liabilities under Article 21.4 of the drilling

10:40AM 4  contract.  BP assumed them."

10:40AM 5          Now, OPA itself provides that a MODU's liability

10:40AM 6  should be limited to discharges on or above the surface of the

10:41AM 7  water.  As this is the case, it cannot be against public policy,

10:41AM 8  we say, for Transocean to use contractual indemnity to shift

10:41AM 9  liability for an underwater discharge to BP based upon the same

10:41AM 10 distinction recognized in OPA.

10:41AM 11         So we say no, it is not against public policy.  In

10:41AM 12 fact, OPA and the Clean Water Act reflect that public policy by

10:41AM 13 making this distinction between spills above the waterline and

10:41AM 14 spills -- and underwater spills.

10:41AM 15         Now, going back to the public policy issues,

10:41AM 16 Your Honor --

10:41AM 17         THE COURT:  Your time is about up, but I'll give you a

10:41AM 18 couple more minutes to try to wrap up.

10:41AM 19         MR. ELSLEY:  I want to make a couple of more points

10:41AM 20 about public policy, Your Honor.

10:41AM 21         Because of the insurance litigation, as you will

10:41AM 22 recall, there is apparently no public policy problem when BP uses

10:42AM 23 Transocean's insurance to fulfill Transocean's contractual

10:42AM 24 indemnities, even where BP is allegedly grossly negligent, such

10:42AM 25 as with -- the situation with the death and injury claims of

10:42AM 1    Transocean's crew.

10:42AM 2            But when Transocean asked BP to fulfill the same

10:42AM 3    contractual indemnities BP owes to Transocean, all of a sudden BP

10:42AM 4    raises a public policy issue.  In other words, BP wants the Court

10:42AM 5    not to enforce BP's expressed contractual promise, even though it

10:42AM 6    was entirely up to BP whether to purchase insurance or not.

10:42AM 7            The point I'm making here is, simply because we

10:42AM 8    bought insurance to cover our indemnities for gross negligence

10:42AM 9    for injury and death claims, BP's covered because it's not

10:42AM 10   against public policy for -- to insure against punitive damages

10:42AM 11   or gross negligence.

10:42AM 12           But simply because BP decides to self-insure, we're

10:42AM 13   are not covered if BP has its way and invalidates this contract

10:43AM 14   it agreed to sign.  That is just simply not fair, Your Honor.

10:43AM 15           Your Honor, I think, just in concluding, again,

10:43AM 16   this is not a case about a one-sided bargain in which a party

10:43AM 17   shifted all the risk and thereby eliminated incentives for a

10:43AM 18   party to avoid grossly negligent conduct.

10:43AM 19           Transocean has suffered immensely in this case.

10:43AM 20   There were lives lost of its crew.  There were injuries.  It's

10:43AM 21   lost its rig.  In this situation, all of the parties accepted

10:43AM 22   risks knowingly.  They are -- these obligations are entirely

10:43AM 23   reciprocal, and we respectfully ask that you, Your Honor, hold BP

10:43AM 24   to its promise.

10:43AM 25           THE COURT:  Thank you.  I have one more question for

10:43AM  1    you.

10:43AM  2            MR. ELSLEY:  Yes, Your Honor.

10:43AM  3            THE COURT:  I don't know that I need to decide this

10:43AM  4    necessarily in the context of this motion, but how does

10:44AM  5    Transocean define what is gross negligence?

10:44AM  6            MR. ELSLEY:  Well, there is actually a definition of

10:44AM  7    gross negligence in some of the caselaw; but, obviously, it's a

10:44AM  8    lack of due care over and above a mere mistake.

10:44AM  9            THE COURT:  We know it's more than simple negligence --

10:44AM 10            MR. ELSLEY:  That's right.

10:44AM 11            THE COURT:  -- and it's something less than intentional

10:44AM 12    conduct.

10:44AM 13            MR. ELSLEY:  Less than intentional conduct.

10:44AM 14            THE COURT:  So it falls somewhere in between.

10:44AM 15            MR. ELSLEY:  Yes, Your Honor.

10:44AM 16            THE COURT:  I'm kind of interested in that because, if

10:44AM 17    you look at the *Todd Shipyards* case, for example, the

10:44AM 18    Fifth Circuit stated, quote, gross negligence which will

10:44AM 19    invalidate an exemption from liability has been defined as,

10:44AM 20    quote, harm willfully inflicted or caused by gross or wanton

10:44AM 21    negligence.

10:44AM 22            So they seem to conflate.  Willful, to me, sounds

10:45AM 23    more like intentional, but I'm not sure it is.  I'm trying to

10:45AM 24    distinguish between willful and wanton and gross negligence

10:45AM 25    versus intentional conduct.

10:45AM 1          MR. ELSLEY:  Your Honor, I saw the same thing when I was

10:45AM 2   preparing for the oral argument, that there is some language in

10:45AM 3   the *Becker* case where gross negligence is, as you say, it's

10:45AM 4   actually defined to include some sort of willful misconduct, both

10:45AM 5   under Louisiana law and under Fifth Circuit law.

10:45AM 6          But I do want to make it clear that whatever the

10:45AM 7   appropriate definition that Your Honor comes to for those terms,

10:45AM 8   our motion deals with gross negligence.

10:45AM 9          THE COURT:  All right.  Thank you very much.

10:45AM 10          MR. ELSLEY:  Thank you.

10:45AM 11          THE COURT:  Mr. Langan, how do you define gross

10:45AM 12   negligence?  How does BP define it?

10:45AM 13          MR. LANGAN:  Your Honor, we've given this some thought,

10:45AM 14   as well.  You'll find different words in different cases.  The

10:46AM 15   standards are different.

10:46AM 16          There is no single definition that we found in the

10:46AM 17   cases.  We agree that willful misconduct involves an element of

10:46AM 18   intent, or scienter, intentional conduct.

10:46AM 19          It may be important at the trial of this case to

10:46AM 20   sort this all out with some more precision.  We think the

10:46AM 21   important point for today is that both of them involve a higher

10:46AM 22   burden than simple negligence.  In both cases, public policy

10:46AM 23   dictates you can't indemnify for that conduct, whether it's

10:46AM 24   willful misconduct or gross negligence.

10:46AM 25          Like counsel said, depending on the case, you'll

10:46AM 1   find various definitions, like utter lack of any care, that sort

10:46AM 2   of thing, for gross negligence.  I mean, we can brief the issue,

10:46AM 3   and I think we probably will need to brief the issue in

10:46AM 4   connection with the trial.

10:46AM 5          But, Your Honor, for today's argument, I am going

10:47AM 6   to take about 12, 13 minutes, and then the Department is going to

10:47AM 7   take the remaining time.

10:47AM 8          THE COURT:  Fine.

10:47AM 9          MR. LANGAN:  As Your Honor told us a few weeks ago,

10:47AM 10  we're going to limit ourselves on the motion to the central legal

10:47AM 11  issues presented.  The evidence about TO's conduct, seaworthiness

10:47AM 12  or lack thereof of the *Deepwater Horizon*, and the lack of well

10:47AM 13  control, those kinds of issues will be taken up at trial, but

10:47AM 14  they are really not for today.

10:47AM 15         For today, it's enough to confirm, we think, that

10:47AM 16  various parties to the case, to the trial, have put squarely in

10:47AM 17  issue whether or not TO's conduct, or Transocean's conduct, was

10:47AM 18  grossly negligent or possibly constituted willful misconduct, as

10:47AM 19  the United States explained in its December 8th brief.

10:47AM 20         So, with that in mind, from our point of view, the

10:47AM 21  only issues that Your Honor can revolve as a matter of law now

10:47AM 22  are these:  The Court should rule as a matter of law that

10:47AM 23  Transocean cannot be indemnified if its conduct was grossly

10:48AM 24  negligent; it cannot be indemnified if its conduct was a result

10:48AM 25  of willful misconduct, but I think I heard Transocean just

10:48AM  1    concede the latter point.

10:48AM  2            The other thing, as we requested in our

10:48AM  3    cross-motion, the Court can rule as a matter of law that

10:48AM  4    Transocean can't be indemnified for fines and penalties such as

10:48AM  5    those under the Clean Water Act or for punitive damages;

10:48AM  6    otherwise, the motion is bound to be denied, we believe.

10:48AM  7            We agree with Transocean's counsel that it makes

10:48AM  8    sense to start with the contract itself.  Your Honor stated our

10:48AM  9    position accurately.  We believe the relevant provision of the

10:48AM 10    drilling contract is 24.2.  Unlike other provisions of the

10:48AM 11    contract, 24.2 does not extend by its literal terms to gross

10:48AM 12    negligence by Transocean or conduct for which it is strictly

10:48AM 13    liable, such as lack of seaworthiness.

10:49AM 14        THE COURT:  But the question is does it specifically

10:49AM 15    limit the indemnity to certain causes?

10:49AM 16        MR. LANGAN:  We believe that it does.  We believe

10:49AM 17    24.2 stands on its own, and that's the only way to make sense,

10:49AM 18    for instance, of the words "negligence or fault" in the last part

10:49AM 19    of 24.2.  Transocean's argument treats that as mere surplusage,

10:49AM 20    and we don't think that would follow normal contract provisions

10:49AM 21    or canons of contractual interpretation.

10:49AM 22            So just to put a fine point on it, we don't believe

10:49AM 23    25.1 applies to 24.2 at all -- and that 25.1 is, in fact, a

10:49AM 24    fallback that applies, quote, except to the extent any obligation

10:49AM 25    is specifically limited to certain causes.  We think 24.2 does

10:49AM 1    limit itself to certain causes, that is, negligence, simple

10:49AM 2    negligence and strict liability.  So, I mean, that's basically

10:50AM 3    how we read the contract.

10:50AM 4            Now, of course, you don't have to rule for us on

10:50AM 5    our contractual interpretation to grant our cross-motion because

10:50AM 6    we think that maritime law prohibits indemnification for gross

10:50AM 7    negligence regardless.  We believe the Fifth Circuit has been

10:50AM 8    very clear in this regard, and Your Honor is very clear in the

10:50AM 9    *Houston Exploration* case that Your Honor talked about.

10:50AM 10           *Becker v. Tidewater*, we think is clear that a

10:50AM 11   waiver -- and quoting now, "a waiver of liability for gross

10:50AM 12   negligence is void."

10:50AM 13           I think the Fifth Circuit said the same thing in

10:50AM 14   the *Todd Shipyards* case in 1982, as well as *Becker* in 2009; and,

10:50AM 15   Your Honor reached the same conclusion in 2000, in the *Houston*

10:50AM 16   *Exploration* matter.

10:50AM 17           Now, we all know that the Fifth Circuit found as a

10:50AM 18   matter of fact there wasn't gross negligence in that case; but,

10:50AM 19   Your Honor held that gross negligence of a contractor in causing

10:51AM 20   a blowout meant that, quote, the release and indemnity clause is

10:51AM 21   unfortunately invalid and of no effect whatsoever under both

10:51AM 22   maritime law and Louisiana law.  That was Your Honor's holding.

10:51AM 23           So the point is, is that whatever private parties

10:51AM 24   may contract for in the past or in the future, under maritime law

10:51AM 25   in this circuit those indemnity obligations do not extend to a

10:51AM 1  party's gross negligence or they're barred.

10:51AM 2        THE COURT:  Apparently, the parties haven't discovered,

10:51AM 3  and I don't think we've discovered, a single case exactly like

10:51AM 4  this one in the sense of a so-called *true indemnity agreement*,

10:51AM 5  where it's not the parties to the contract seeking indemnity for

10:51AM 6  their own damages, it's party A contracts with party B, and then

10:52AM 7  party -- they are seeking indemnity for injuries to a third

10:52AM 8  party.

10:52AM 9        MR. LANGAN:  That was *Becker*.

10:52AM 10        THE COURT:  That was the *Becker* case.

10:52AM 11        MR. LANGAN:  Right.

10:52AM 12        THE COURT:  But in the *Becker* case, which was not out of

10:52AM 13  this court but I'm familiar with it, I'm pretty sure that the

10:52AM 14  Fifth Circuit, again -- I don't remember what the district court

10:52AM 15  said, but I think the ultimate ruling was that, again, there was

10:52AM 16  no gross negligence, right?

10:52AM 17        MR. LANGAN:  That is correct.  That's right.  The

10:52AM 18  Fifth Circuit eventually concluded, after us -- first, there was

10:52AM 19  a jury trial, and then a bench trial.  The Fifth Circuit

10:52AM 20  eventually concluded that -- I believe it was the captain of the

10:52AM 21  vessel had not acted with gross negligence in moving the vessel

10:52AM 22  that ended up causing Mr. *Becker*'s injuries.

10:52AM 23        THE COURT:  Right.

10:52AM 24        MR. LANGAN:  Right.  So I agree with Your Honor.

10:52AM 25        THE COURT:  So there is no case -- I'm not suggesting

10:52AM 1   that your argument is or is not valid, but I just want to

10:52AM 2   establish, I think everybody agrees, there is no case on all

10:53AM 3   fours like this case under a maritime indemnity contract which

10:53AM 4   definitely holds that this --

10:53AM 5             MR. LANGAN:  I might have a cite for you.

10:53AM 6             THE COURT:  Go ahead.  Somebody found a case?

10:53AM 7             MR. LANGAN:  *Nexen Petroleum*.

10:53AM 8                  Your Honor, we think the closest case is from the

10:53AM 9   Eastern District here, *Nexen Petroleum USA*, 497 F.Supp.2d 787.

10:53AM 10            THE COURT:  It sounds familiar, but I haven't read it

10:53AM 11  recently.  Was that a case seeking indemnity for damages to a

10:53AM 12  third party?

10:53AM 13            MR. LANGAN:  I know it involved a drilling company in an

10:53AM 14  action against a merchant supply vessel, so it looks like

10:54AM 15  corporation versus corporation.

10:54AM 16            THE COURT:  I think there were two parties to a

10:54AM 17  contract, similar to the *Houston Exploration* case.

10:54AM 18            MR. LANGAN:  It's about indemnity to a third party,

10:54AM 19  right?  But the Court endorsed the -- we discussed this in our

10:54AM 20  brief at page 21 -- the Court endorsed the rule that gross

10:54AM 21  negligence is a defense to the enforcement of exculpatory

10:54AM 22  indemnification clauses.

10:54AM 23            THE COURT:  Again, it's sort of circular.  It gets us

10:54AM 24  back to the same point where we started, I think, that the

10:54AM 25  question is whether that applies in the context of this case

10:54AM 1   where indemnity is sought for damages or injuries to third

10:54AM 2   parties.

10:54AM 3                     Anyway, go ahead.

10:54AM 4            MR. LANGAN:  So, Your Honor, the only other point I

10:54AM 5   wanted to make is that, in their briefs and today, Transocean has

10:54AM 6   made sort of a policy argument or a righteous indignation or

10:55AM 7   getting after us about why is it that BP is seeking to excuse

10:55AM 8   itself and all that sort of thing.

10:55AM 9                     Well, Transocean itself has taken contrary

10:55AM 10  positions in other cases.  Just last year in a case in

10:55AM 11  Mississippi, in an indemnity dispute with a shipyard -- or a

10:55AM 12  shipbuilder, Transocean itself tried to invalidate an indemnity

10:55AM 13  based upon the counterparty's gross negligence in the *Transocean*

10:55AM 14  *v. Ingalls Shipbuilding* case in Mississippi Supreme Court just

10:55AM 15  last year.

10:55AM 16                    So I have no doubt if the shoe is on the other

10:55AM 17  foot, Transocean and its counsel, given what's at stake here,

10:55AM 18  would not hesitate to seek to protect their rights and say, if

10:55AM 19  their counterparty had been grossly negligent, they don't have to

10:55AM 20  indemnify.  I mean, that's what they did in that case.

10:55AM 21           THE COURT:  Do lawyers take contradictory positions in

10:55AM 22  cases?  It's shocking.

10:55AM 23           MR. LANGAN:  It's been known to happen.

10:55AM 24           THE COURT:  I actually had a case once where a party

10:55AM 25  claimed they weren't present at the time of the accident, but

10:56AM  1    they said, if I was present, I didn't do anything wrong.

10:56AM  2         MR. LANGAN:  So, Your Honor, I think if you look at the

10:56AM  3    *Becker* case, *Todd Shipyards*, *Nexen,* your opinion in

10:56AM  4    *Houston Exploration*, the *Daughdrill* case, the *Jackson* case, all

10:56AM  5    the parties knew that -- or should have known that there was a

10:56AM  6    possibility if there was grossly negligent conduct, gross

10:56AM  7    negligence, punitives and etcetera, there would not be

10:56AM  8    indemnities.

10:56AM  9         So, in our response and our cross-motion, all we're

10:56AM 10    asking to do is for Your Honor to enforce the law of the

10:56AM 11    Fifth Circuit that there is no indemnity for gross negligence or

10:56AM 12    for fines and penalties.

10:56AM 13         THE COURT:  Do you see that there is a different or

10:56AM 14    perhaps -- I don't know if the right word is stronger argument --

10:56AM 15    different argument when you're talking about different categories

10:56AM 16    of damages; compensatory, civil fines, penalties, punitives and

10:56AM 17    so forth?

10:56AM 18         MR. LANGAN:  Well, Your Honor, I think the answer is

10:56AM 19    yes.  Clearly, we're here talking about damages flowing from

10:57AM 20    grossly negligent conduct.  We're not here talking about simple

10:57AM 21    negligence, to take an example.

10:57AM 22         I take Your Honor's point that --

10:57AM 23         THE COURT:  But, I mean, gross --

10:57AM 24         MR. LANGAN:  -- civil fines and penalties may be

10:57AM 25    different, as well.

10:57AM 1          THE COURT:  -- gross negligence can produce compensatory

10:57AM 2   damages, punitive damages and civil fines and penalties?

10:57AM 3          MR. LANGAN:  Correct.  I understand --

10:57AM 4          THE COURT:  I guess my question is, would your public

10:57AM 5   policy argument be that none of those would be recoverable in an

10:57AM 6   indemnity situation if there is gross negligence?

10:57AM 7          MR. LANGAN:  If consequential damages, compensatory

10:57AM 8   damages or punitives or fines and penalties flow from grossly

10:57AM 9   negligent conduct, none of that should be indemnifiable.

10:57AM 10          Having said that, I will acknowledge that the

10:57AM 11   public policy arguments for not allowing the transfer of things

10:57AM 12   like punitive damages and fines and penalties are even stronger,

10:57AM 13   if that answers your question of law.

10:57AM 14          THE COURT:  Yes, it does.  Thank you.

10:58AM 15          MR. LANGAN:  Your Honor, I know Mr. O'Rourke is going to

10:58AM 16   cover this, but I need to cover it, too.  Indemnification for

10:58AM 17   fines and penalty is contrary to federal law.  The United States

10:58AM 18   has made that very clear.

10:58AM 19          Our position is, is that Transocean can't shift by

10:58AM 20   contract civil penalties it may owe under the Clean Water Act.

10:58AM 21   This is a matter of sound public policy.  If Clean Water Act

10:58AM 22   penalties are going to serve their purpose, which are punishment

10:58AM 23   and deterrence, they must be borne by the party who is

10:58AM 24   responsible for the violation of the Act.

10:58AM 25          Now, I know that Transocean emphasizes the above

10:58AM 1   the water and below the water distinction; but, there, it's

10:58AM 2   important to keep in mind that we're talking about the

10:58AM 3   Clean Water Act, and not OPA.

10:58AM 4          OPA imposes liability on responsible parties, a

10:58AM 5   defined term; but, the Clean Water Act, Section 311, imposes

10:58AM 6   liability on any owner, operator or person in charge of any

10:58AM 7   vessel, offshore or onshore facility.

10:58AM 8          So the plain terms of the statute between OPA and

10:59AM 9   Clean Water Act impose liability based on different criteria.  So

10:59AM 10  it flies in the face of the choices that Congress has made for

10:59AM 11  Transocean to claim there could be no problem with attempts by

10:59AM 12  private contractors to rewrite the Clean Water Act so it can

10:59AM 13  operate more like Transocean sees in the Oil Pollution Act.

10:59AM 14         This Court is going to decide in the future that

10:59AM 15  Transocean is possibly liable for civil penalties under the

10:59AM 16  Clean Water Act for releases of oil below the water; or, if they

10:59AM 17  are not liable for such penalties, then the indemnity issue kind

10:59AM 18  of goes away with respect to fines and penalties.

10:59AM 19         Your Honor, the last point --

10:59AM 20         THE COURT:  That raises a question of whether I should

10:59AM 21  be deciding this right now at all.

10:59AM 22         MR. LANGAN:  On the fines and penalties aspect, I mean,

10:59AM 23  you certainly --

10:59AM 24         THE COURT:  Yes, on fines and penalties.

10:59AM 25         MR. LANGAN:  Yes.  We believe as a matter of law, and

10:59AM  1  we've asked for in our cross-motion, you should rule now they are

10:59AM  2  not entitled to that; but, they are going to hotly contest

11:00AM  3  whether they're liable for any of it, obviously.  It is what it

11:00AM  4  is.

11:00AM  5          Your Honor, the last point, and then I'll yield the

11:00AM  6  podium to Mr. O'Rourke.  The drilling contract does not and

11:00AM  7  cannot provide under law for indemnification for punitive

11:00AM  8  damages.  We don't think the drilling contract on its face does,

11:00AM  9  as I think Your Honor pointed out to counsel.  24.1 and 25.3 are

11:00AM 10  solid on that.  Beyond the language of the contract, any attempt

11:00AM 11  to seek indemnity for punitives would be contrary to public

11:00AM 12  policy.

11:00AM 13          We cite in our brief numerous maritime decisions

11:00AM 14  holding that indemnification for punitives is against public

11:00AM 15  policy.  The leading case is the *Daughdrill v. Ocean Drilling*

11:00AM 16  case, 665 F.Supp. 477.

11:00AM 17          THE COURT:  Thank you very much.

11:00AM 18          MR. LANGAN:  Thank you, Your Honor.

11:00AM 19          THE COURT:  United States.

11:00AM 20          MR. O'ROURKE:  Good morning, Judge.  Steve O'Rourke for

11:01AM 21  the United States.

11:01AM 22          THE COURT:  I have a preliminary question.  Why is it

11:01AM 23  that the United States is opposing Transocean's motion?  One

11:01AM 24  might argue that the United States should be, perhaps, in favor

11:01AM 25  of an indemnity clause in this situation, since even if

11:01AM 1   Transocean is entitled to indemnity from BP, it doesn't exculpate

11:01AM 2   them from being liable to the United States if they're otherwise

11:01AM 3   liable for the fines and penalties, right?

11:01AM 4          MR. O'ROURKE:  That's true.

11:01AM 5          THE COURT:  So you have an additional party to collect

11:01AM 6   from, potentially.

11:01AM 7          MR. O'ROURKE:  We don't see that it way, Judge, because

11:01AM 8   we've sued both parties to this contract.  Party A --

11:01AM 9          THE COURT:  I understand; but, whether Transocean gets

11:01AM 10  indemnity from BP doesn't eliminate their direct liability to the

11:01AM 11  United States for fines and penalties.

11:01AM 12         MR. O'ROURKE:  It goes back to what you were saying

11:01AM 13  about the difference between compensatory damages versus fines

11:02AM 14  and penalties.  A plaintiff who is seeking to be made whole for

11:02AM 15  costs or damages doesn't care who pays, be it party A or party B

11:02AM 16  to the contract; but, when the plaintiff is the United States

11:02AM 17  Government seeking to penalize for violations of federal law, it

11:02AM 18  does matter who pays.  The party to be punished needs to be the

11:02AM 19  party who is punished and shouldn't be able to pawn that off

11:02AM 20  through contractual indemnity to another party.

11:02AM 21              The way you phrased it earlier was exactly the way

11:02AM 22  we see this, the difference between costs and damages versus

11:02AM 23  civil penalties.

11:02AM 24         THE COURT:  So the United States is only directing its

11:02AM 25  opposition to Transocean's attempt to be indemnified for

11:02AM 1   Clean Water Act fines or penalties based on being found grossly

11:02AM 2   negligent?

11:02AM 3        MR. O'ROURKE:  That's correct, sir.  We oppose the

11:02AM 4   motion, but only in part.  So, as for the contractual

11:03AM 5   interpretation that BP was arguing, that's not really our

11:03AM 6   business; and, if BP is right and there is no indemnity for civil

11:03AM 7   penalties under the contractual terms, then you don't need to

11:03AM 8   listen to our oral argument, you don't get there.

11:03AM 9        We're also not arguing what BP was arguing, that no

11:03AM 10  remedies could be granted based on gross negligence.  That's a

11:03AM 11  different policy.  That's not the one we're -- for.  We are only

11:03AM 12  saying that fines and penalties should not be indemnifiable as a

11:03AM 13  matter of public policy.

11:03AM 14       We would also say, Judge, we also agree with where

11:03AM 15  you were going at the end of BP's argument, that this motion may

11:03AM 16  be premature because Transocean is saying they are not liable for

11:03AM 17  penalties at all based on their interpretation of the

11:03AM 18  Oil Pollution Act as applied to the Water Act.  We don't agree

11:03AM 19  with that, but, if you do agree with that, then they are not

11:03AM 20  liable.  This is all -- would be an advisory opinion.

11:03AM 21       Similarly, we're going to go to trial on whether

11:03AM 22  they engaged in conduct beyond gross negligence, willful

11:03AM 23  misconduct.  If you ruled that they had engaged in willful

11:04AM 24  misconduct, the contract by its terms would not apply, and,

11:04AM 25  therefore, again, this would be advisory or moot.

11:04AM 1      THE COURT:  What kind of conduct is necessary to impose

11:04AM 2  the types of fines and penalties that you're talking about?

11:04AM 3  Willful, gross negligence, intentional; what's required?  I know

11:04AM 4  there are some penalties that apply without negligence, correct?

11:04AM 5      MR. O'ROURKE:  Yes, sir, there is strict liability --

11:04AM 6      THE COURT:  A lesser level of penalties.

11:04AM 7      MR. O'ROURKE:  There is strict liability for civil

11:04AM 8  penalties in an amount not to exceed $1,100 per barrel of oil

11:04AM 9  discharged.  That per-barrel dollar escalates if the plaintiff

11:04AM 10 proves by a preponderance either gross negligence or willful

11:04AM 11 misconduct.

11:04AM 12     THE COURT:  Either one.

11:04AM 13     MR. O'ROURKE:  Either one, it us jumps to $4,300.

11:04AM 14     We agree that you should probably take some

11:04AM 15 briefing on what's the meaning of gross negligence, what's the

11:04AM 16 meaning of willful misconduct, because we agree with what you

11:05AM 17 said earlier, that gross negligence requires no mental state, no

11:05AM 18 scienter; but, there are cases out there in Water Quality

11:05AM 19 Insurance Syndicate that also indicate that willful misconduct

11:05AM 20 does not require a state of mind, or scienter.

11:05AM 21     THE COURT:  Well, it seems like, to just read some of

11:05AM 22 the cases, that those words or phrases are conflated often, so.

11:05AM 23     MR. O'ROURKE:  We agree with that.  We would be happy to

11:05AM 24 file a brief explaining the difference between the two, which, in

11:05AM 25 the Clean Water Act case, may be somewhat academic because the

11:05AM 1    penalty escalates to $4,300 per barrel on either gross negligence

11:05AM 2    or willful misconduct.

11:05AM 3              We have evidence to try to prove both.  We're happy

11:05AM 4    to submit a brief on that.  That's not really the topic of today.

11:05AM 5              THE COURT:  Right.

11:05AM 6              MR. O'ROURKE:  So, Judge, I think you've clearly

11:05AM 7    understood our statement of the policy at issue here.  But,

11:05AM 8    again, other reasons why you probably want to wait on ruling on

11:05AM 9    this is when a court's balancing the public policy of freedom of

11:06AM 10   contract, predictability of contract versus a public policy like

11:06AM 11   the violator needs to be punished, the violator can't pawn that

11:06AM 12   punishment off onto another party, when balancing that, the

11:06AM 13   courts look to the conduct of the parties.

11:06AM 14             The Restatement of Contracts says that a court

11:06AM 15   should look to the seriousness of the conduct to the contracted

11:06AM 16   parties as one of the factors in that balance.  If you look at

11:06AM 17   the cases that were cited by the parties, a lot of them also

11:06AM 18   looked at the conduct of the parties.

11:06AM 19             By the way, Judge, there is only one case -- of all

11:06AM 20   the cases cited by all three of the parties here, there is only

11:06AM 21   one case that granted an indemnity for civil penalties.  That's

11:06AM 22   the *Montauk* case.  It was based on Clean Water Act prior to the

11:06AM 23   1990 amendment, so the reasoning doesn't exist anymore.  It also,

11:06AM 24   however, looked at the conduct of the parties --

11:06AM 25             THE COURT:  What was the difference in the -- remind me

11:06AM  1    what happened in the 1990 amendment.

11:06AM  2         MR. O'ROURKE:  Sure.  Prior to 1990, there was a part of

11:06AM  3    the Clean Water Act, Section 311(h), that talked about

11:07AM  4    indemnities.  The *Montauk* case -- on that provision.

11:07AM  5         After the 1990 amendments, that provision does not

11:07AM  6    apply to any case that has Oil Pollution Act liability.  So

11:07AM  7    that --

11:07AM  8         THE COURT:  That was the amendments that were part of

11:07AM  9    OPA, amendments to the Clean Water Act that were part of OPA.

11:07AM  10        MR. O'ROURKE:  Right.  They were both passed in 1990.

11:07AM  11   OPA was created, and the Water Act was amended.

11:07AM  12        So that *Montauk* case, however, did look at the

11:07AM  13   conduct of the parties.  All the other cases, none of them

11:07AM  14   award -- none of them awarded indemnity.  They either expressly

11:07AM  15   ruled against indemnity for penalties, like the *Tug Ocean Prince*,

11:07AM  16   or they didn't really address it on merits, like the cases that

11:07AM  17   are just about jurisdiction.

11:07AM  18        The cases that acknowledged that maybe there could

11:07AM  19   be indemnity for penalties, those were all summary judgment

11:07AM  20   cases, and the judge said there were still genuine issues or

11:07AM  21   material facts to be adduced before he, he the Court, could

11:07AM  22   balance the policies there.

11:08AM  23        That's what we're recommending you do, Judge, is

11:08AM  24   wait until -- you've instructed us to brief the legal issue in

11:08AM  25   the abstract without going into the facts.  We recommend and

11:08AM 1   request that you wait to hear the facts, weigh the culpability of

11:08AM 2   the parties, weigh the public policies, but you should do it

11:08AM 3   after you hear the evidence on the actions.

11:08AM 4           So, to summarize it, Judge, there is at least four

11:08AM 5   reasons to wait because either they are not liable, like they

11:08AM 6   say, so the opinion would be moot or advisory; or, we could prove

11:08AM 7   willful misconduct on this Water Quality Insurance Syndicate

11:08AM 8   standard, in which case the contract wouldn't apply; or, the

11:08AM 9   Restatement of Contracts requires you to look at the conduct of

11:08AM 10  the parties, and so there are material facts not in the record,

11:08AM 11  so under Rule 56 you should wait for that; or, if you're going to

11:08AM 12  look to the cases like *Montauk*, they did look at the conduct of

11:08AM 13  the parties, and, therefore, we recommend you do the same.

11:08AM 14          That's all I'm going to say.

11:08AM 15       THE COURT:  All right.  Thank you, Mr. O'Rourke.

11:08AM 16          Do you want a couple of minutes?  You have about

11:09AM 17  two minutes, okay?

11:09AM 18       MR. ELSLEY:  Your Honor, I'll be very brief.

11:09AM 19          Counsel referred to the *Montauk* case.  It is true

11:09AM 20  that that dealt with 1321(h) of the Clean Water Act, which

11:09AM 21  doesn't apply; but, the reasoning of that case still applies

11:09AM 22  here, which is one of equitable indemnity.

11:09AM 23       THE COURT:  Well, what you're seeking is not equitable

11:09AM 24  indemnity.

11:09AM 25       MR. ELSLEY:  No, it's not equitable indemnity per se.

11:09AM 1    THE COURT:  I think the other side argues that equitable

11:09AM 2    indemnity, it's a different policy consideration because there

11:09AM 3    you're basing the indemnity on the conduct of the other party,

11:09AM 4    right?

11:09AM 5    MR. ELSLEY:  In some cases, yes.

11:09AM 6    THE COURT:  As opposed to contractual indemnity, which

11:09AM 7    is -- well, it's just different.

11:09AM 8    MR. ELSLEY:  There are some differences, Your Honor.

11:09AM 9    There is no doubt about it.

11:09AM 10    One thing that I didn't mention earlier in my

11:10AM 11    argument is -- which is mentioned significantly in the briefs,

11:10AM 12    is, of course, Article 2710A.  This deals with an issue that was

11:10AM 13    raised with BP, as well as the government.

11:10AM 14    Again, that provision says, "Nothing in this

11:10AM 15    chapter prohibits any agreement to ensure or hold harmless or

11:10AM 16    indemnify a party to such agreement for any liability under this

11:10AM 17    chapter."  Subpart B says, "The liability is not transferred."

11:10AM 18    So it goes back to the point that Your Honor made,

11:10AM 19    that Transocean remains liable in the first instance for civil

11:10AM 20    penalties.  It's just that what this is making clear is the

11:10AM 21    public policy of OPA, that Congress said is that it's not against

11:10AM 22    public policy for parties to transfer -- not transfer their

11:10AM 23    original liability; they remain liable to the government, but to

11:10AM 24    allocate that responsibility according to their contractual

11:10AM 25    undertakings.

11:11AM 1      Your Honor, BP's position, trying to avoid its

11:11AM 2  clear contractual obligations in this case, has not just hurt

11:11AM 3  Transocean.  It has hurt every single contractor and every single

11:11AM 4  sub in this case because it all stops with BP.

11:11AM 5      Once BP says, we're not going to fulfill our

11:11AM 6  contractual obligation, the entire indemnities that this entire

11:11AM 7  drilling contract and all the subs were based on falls apart.

11:11AM 8  When this happens, when you don't enforce these types of

11:11AM 9  agreements, what you have is you have someone saying there is

11:11AM 10 gross negligence, and then the entire allocation of liabilities

11:11AM 11 that was done precontract, that's been followed in the oil patch

11:11AM 12 for years, that this Court is familiar with, all of that goes out

11:11AM 13 the window, and we have to have trials.  That, I don't believe is

11:11AM 14 what the parties intended.

11:11AM 15     What they wanted to do was set forth a situation,

11:12AM 16 including gross negligence, where one can look at the contract,

11:12AM 17 look at the type of loss, and determine who is liable for what.

11:12AM 18 Unless this contract is enforced as a matter of public policy, in

11:12AM 19 the future every time somebody alleges gross negligence, all of

11:12AM 20 those contractual indemnities that this entire industry has been

11:12AM 21 following for years will just simply fall apart.

11:12AM 22      Again, this is not necessarily a one size fits all.

11:12AM 23 If you look at this contract, Your Honor, this is a very specific

11:12AM 24 allocation of risks and responsibilities.  BP takes the well

11:12AM 25 risks.  They own the well.  They are in the best position for

11:12AM 1    those well risks.

11:12AM 2              As far as pollution is concerned, Transocean takes

11:12AM 3    the surface risk.  That is public policy itself as reflected in

11:12AM 4    OPA by its waterline distinction, which this Court has already

11:12AM 5    recognized.

11:12AM 6              So we respectfully ask that the Court enforce the

11:13AM 7    contract as it was written between BP and Transocean.

11:13AM 8              THE COURT:  All right.  Thank you very much, Mr. Elsley.

11:13AM 9              All right.  I'm going to take these two motions

11:13AM 10   under advisement and rule in due course.

11:13AM 11             I want to thank everyone again for your continued

11:13AM 12   efforts and cooperation in moving this case forward.  I guess

11:13AM 13   we'll see everybody after the holidays and after the

11:13AM 14   BCS Championship game.  We'll see who's wearing purple and gold

11:13AM 15   or red and white.

11:13AM 16             Mr. Cunningham, red and white is Alabama, right?

11:13AM 17             MR. CUNNINGHAM:  Yes, sir.  That's what we'll be

11:13AM 18   wearing.

11:13AM 19             THE COURT:  I have one question, and Mr. Strange left,

11:13AM 20   but you can answer.

11:13AM 21             MR. STRANGE:  I'm here, Your Honor.

11:13AM 22             THE COURT:  Oh, there you are.  I'm sorry.

11:13AM 23             Why does the Crimson Tide have an elephant as a

11:14AM 24   mascot?  What's the relationship between the elephant and the

11:14AM 25   Tide?  I never have understood that.  Is there some explanation?

11:14AM 1          MR. STRANGE:  Bobo, what did you say about that?

11:14AM 2          THE COURT:  Of course, you have the Green Wave and the

11:14AM 3     Crimson Tide.

11:14AM 4          MR. STRANGE:  Exactly.

11:14AM 5          THE COURT:  All right.  Everyone have a good day and a

11:14AM 6     good holiday.

7               (WHEREUPON, at 11:14 a.m., the proceedings were

8          concluded.)

9                              *    *    *

10

11

12                          REPORTER'S CERTIFICATE

13     I, Cathy Pepper, Certified Realtime Reporter, Registered
       Merit Reporter, Registered Professional Reporter, Certified Court
14     Reporter, Official Court Reporter for the United States District
       Court, Eastern District of Louisiana, do hereby certify that the
15     foregoing is a true and correct transcript, to the best of my
       ability and understanding, from the record of the proceedings in
16     the above-entitled and numbered matter.

17

                          Cathy Pepper, CCR, RMR, CRR
22                        Official Court Reporter
                          United States District Court
23                        Cathy_Pepper@laed.uscourts.gov

24

25

## $

**$1,100** [1] - 43:8
**$4,300** [2] - 43:13, 44:1

## 1

**10-MD-2179** [1] - 1:7
**100** [2] - 3:7, 3:21
**1000** [2] - 2:4, 9:13
**10003** [1] - 3:11
**1001** [1] - 6:15
**101** [1] - 4:18
**10153** [1] - 10:10
**10174** [1] - 10:18
**1100** [3] - 4:22, 6:11, 9:9
**11:14** [1] - 50:7
**12** [1] - 31:6
**1201** [2] - 8:4, 8:14
**1221** [1] - 7:25
**13** [3] - 12:5, 12:8, 31:6
**1300** [1] - 8:23
**1321(h** [1] - 46:20
**1331** [1] - 8:17
**16** [2] - 1:8, 13:2
**1600** [1] - 9:22
**1601** [1] - 2:15
**1615** [1] - 8:23
**1665** [1] - 8:17
**1700** [1] - 8:14
**188** [1] - 3:14
**1982** [1] - 33:14
**1990** [5] - 44:23, 45:1, 45:2, 45:5, 45:10

## 2

**20** [2] - 1:6, 13:16
**200** [1] - 8:5
**2000** [3] - 5:4, 9:18, 33:15
**20005** [1] - 7:22
**20006** [1] - 9:5
**20044** [1] - 6:5
**2007** [1] - 9:7
**2009** [1] - 33:14
**2010** [1] - 1:6
**2011** [2] - 1:8, 13:2
**2020** [1] - 9:4
**21** [1] - 35:20
**21.4** [1] - 27:3
**2185** [1] - 10:20
**22.3** [2] - 20:23, 20:24
**22.4** [1] - 26:14

**23** [1] - 3:21
**23.1** [3] - 20:23, 21:13, 21:14
**23510** [1] - 2:5
**24.1** [3] - 19:9, 26:24, 40:9
**24.2** [16] - 19:9, 19:10, 19:13, 19:20, 19:23, 20:2, 20:15, 20:22, 21:12, 21:23, 32:10, 32:11, 32:17, 32:19, 32:23, 32:25
**25.1** [19] - 18:23, 19:6, 19:18, 19:20, 19:22, 20:2, 20:7, 20:11, 21:7, 21:11, 21:16, 21:19, 21:21, 22:4, 22:12, 22:15, 26:14, 32:23
**25.3** [1] - 40:9
**255** [1] - 3:18
**2615** [1] - 2:19
**2710A** [1] - 47:12
**275** [1] - 2:23
**27708** [1] - 11:5
**2929** [1] - 10:13
**2990** [1] - 2:8
**29TH** [1] - 2:23

## 3

**3** [1] - 3:7
**300** [1] - 7:18
**3100** [1] - 9:9
**3102** [1] - 4:22
**311** [1] - 39:5
**311(h** [1] - 45:3
**316** [1] - 2:12
**32502** [1] - 2:12
**33134** [1] - 3:18
**34.1** [1] - 22:21
**3450** [1] - 10:21
**355** [1] - 7:4
**35TH** [1] - 7:4
**36013** [1] - 4:5
**36130** [1] - 5:9
**365** [2] - 2:8, 9:18
**3650** [1] - 4:8
**36604** [1] - 2:16
**3668** [1] - 1:19
**36TH** [1] - 6:11
**3700** [1] - 6:15
**39201** [1] - 3:15

## 4

**4** [1] - 3:7
**4000** [1] - 9:13

**405** [1] - 10:18
**4160** [1] - 4:4
**42ND** [1] - 10:13
**4310** [1] - 3:21
**435** [1] - 4:18
**4457** [1] - 13:11
**4457** ..........................
[1] - 12:7
**450** [1] - 5:22
**4500** [1] - 7:25
**477** [1] - 40:16
**4827** [1] - 13:13
**4827** ..........................
....... [1] - 12:9
**4900** [1] - 6:19
**497** [1] - 35:9

## 5

**500** [4] - 5:9, 6:23, 10:22, 11:11
**5000** [1] - 7:14
**501** [1] - 4:15
**504** [1] - 11:12
**519** [1] - 4:11
**5395** [1] - 5:22
**546** [1] - 8:9
**556** [1] - 1:19
**56** [1] - 46:11
**589-7779** [1] - 11:12

## 6

**600** [3] - 2:12, 5:17, 9:22
**601** [1] - 2:19
**60654** [1] - 7:18
**618** [1] - 3:23
**655** [1] - 7:21
**665** [1] - 40:16

## 7

**700** [1] - 3:11
**70037** [1] - 3:22
**701** [3] - 4:8, 5:13, 7:13
**70112** [2] - 5:4, 8:23
**70113** [1] - 1:23
**70130** [6] - 2:8, 2:20, 5:14, 8:9, 9:18, 11:11
**70139** [2] - 4:8, 7:14
**70163** [2] - 6:12, 9:9
**70360** [1] - 4:19
**70501** [1] - 9:23
**70502** [1] - 1:20

**70601** [1] - 4:15
**70726** [1] - 4:12
**70801** [1] - 3:25
**70802** [1] - 5:17
**711** [1] - 6:23
**750** [1] - 6:19
**75219** [1] - 4:22
**75270** [1] - 8:14
**7611** [1] - 6:5
**767** [1] - 10:9
**77002** [4] - 6:16, 6:23, 9:13, 10:22
**77006** [1] - 3:4
**77010** [2] - 7:25, 8:18
**77019** [1] - 10:14
**77056** [1] - 6:19
**777** [1] - 3:14
**78257** [1] - 3:8
**787** [1] - 35:9
**7TH** [1] - 5:22

## 8

**820** [1] - 1:22
**8397** [1] - 3:21
**8th** [1] - 31:19

## 9

**90071** [1] - 7:4
**90362** [1] - 11:4
**909** [1] - 5:4
**94102** [1] - 5:23
**94111** [1] - 2:24
**999** [1] - 2:4
**9:30** [1] - 1:8

## A

**a.m** [1] - 50:7
**A.M** [1] - 1:8
**ability** [3] - 24:3, 24:4, 50:15
**able** [1] - 41:19
**above-entitled** [1] - 50:16
**ABRAMSON** [1] - 2:18
**absolutely** [1] - 17:11
**abstract** [1] - 45:25
**academic** [1] - 43:25
**accepted** [1] - 28:21
**accident** [1] - 36:25
**according** [1] - 47:24
**accurately** [1] - 32:9
**acknowledge** [1] - 38:10
**acknowledged** [1] -

45:18
**Act** [22] - 25:11, 27:12, 32:5, 38:20, 38:21, 38:24, 39:3, 39:5, 39:9, 39:12, 39:13, 39:16, 42:1, 42:18, 43:25, 44:22, 45:3, 45:6, 45:9, 45:11, 46:20
**acted** [1] - 34:21
**ACTION** [1] - 1:7
**action** [1] - 35:14
**actions** [1] - 46:3
**active** [2] - 14:8, 20:10
**additional** [1] - 41:5
**address** [1] - 45:16
**adduced** [1] - 45:21
**adhesion** [1] - 23:22
**advisement** [1] - 49:10
**advisory** [3] - 42:20, 42:25, 46:6
**AGAINST** [1] - 12:6
**AGENDA** [1] - 12:3
**ago** [1] - 31:9
**agree** [11] - 26:4, 26:6, 30:17, 32:7, 34:24, 42:14, 42:18, 42:19, 43:14, 43:16, 43:23
**agreed** [3] - 15:16, 15:17, 28:14
**agreement** [6] - 17:7, 23:6, 23:25, 34:4, 47:15, 47:16
**agreements** [1] - 48:9
**agrees** [1] - 35:2
**ahead** [3] - 15:5, 35:6, 36:3
**AL** [3] - 2:16, 4:5, 5:9
**Alabama** [1] - 49:16
**ALABAMA** [1] - 5:7
**ALAN** [2] - 8:17, 10:17
**ALHAMBRA** [1] - 3:18
**ALL** [1] - 1:10
**ALLAN** [1] - 5:12
**allegation** [1] - 17:4
**allegedly** [1] - 27:24
**alleges** [1] - 48:19
**ALLEN** [3] - 4:3, 10:13, 10:21
**ALLISON** [1] - 5:12
**allocate** [3] - 15:8, 24:2, 47:24
**allocated** [1] - 24:6
**allocates** [1] - 26:24
**allocation** [2] - 48:10, 48:24
**allow** [1] - 25:10
**allowing** [2] - 16:12, 38:11

**ALPHONSO** [1] - 3:14
**ALSO** [1] - 11:7
**ALVAREZ** [1] - 5:3
**amended** [1] - 45:11
**amendment** [2] - 44:23, 45:1
**amendments** [3] - 45:5, 45:8, 45:9
**AMERICA** [7] - 6:3, 7:6, 7:7, 7:8, 7:9, 7:11, 7:12
**AMERICAN** [1] - 2:19
**amount** [2] - 17:9, 43:8
**ANADARKO** [2] - 8:20, 8:21
**AND** [2] - 6:9, 10:7
**ANDREW** [1] - 7:17
**ANGELES** [1] - 7:4
**answer** [2] - 37:18, 49:20
**answers** [1] - 38:13
**ANTHONY** [1] - 2:7
**anticipated** [1] - 24:10
**ANTONIO** [1] - 3:8
**anyway** [1] - 36:3
**apart** [2] - 48:7, 48:21
**appear** [1] - 23:3
**APPEARANCES** [11] - 1:15, 2:1, 3:1, 4:1, 5:1, 6:1, 7:1, 8:1, 9:1, 10:1, 11:1
**applied** [2] - 15:15, 42:18
**applies** [5] - 20:2, 32:23, 32:24, 35:25, 46:21
**apply** [6] - 26:8, 42:24, 43:4, 45:6, 46:8, 46:21
**applying** [1] - 16:8
**apportionment** [1] - 15:16
**appreciate** [4] - 20:14, 25:8, 25:15, 25:22
**appropriate** [2] - 16:4, 30:7
**APRIL** [1] - 1:6
**AREAUX** [1] - 9:8
**argue** [1] - 40:24
**argued** [1] - 18:15
**argues** [1] - 47:1
**arguing** [4] - 17:24, 42:5, 42:9
**argument** [20] - 19:24, 20:6, 20:14, 20:19, 22:2, 23:11, 25:9, 25:15, 25:22, 30:2, 31:5, 32:19, 35:1, 36:6, 37:14, 37:15,

38:5, 42:8, 42:15, 47:11
**arguments** [1] - 38:11
**arising** [2] - 22:13, 22:23
**arm's** [1] - 23:23
**Article** [7] - 18:23, 19:9, 22:21, 26:14, 26:24, 27:3, 47:12
**article** [1] - 19:13
**ASBILL** [1] - 6:14
**aside** [1] - 19:25
**aspect** [1] - 39:22
**assume** [3] - 14:5, 19:15, 27:3
**assumed** [1] - 27:4
**assumes** [1] - 20:2
**attempt** [2] - 40:10, 41:25
**attempts** [1] - 39:11
**ATTORNEY** [1] - 5:7
**AVENUE** [9] - 1:22, 4:11, 4:22, 5:9, 5:22, 7:4, 8:4, 10:9, 10:18
**avoid** [3] - 15:11, 28:18, 48:1
**award** [1] - 45:14
**awarded** [1] - 45:14

# B

**BABIUCH** [1] - 7:17
**Baker** [1] - 18:10
**BAKER** [1] - 5:16
**balance** [3] - 24:2, 44:16, 45:22
**balancing** [2] - 44:9, 44:12
**BALDWIN** [1] - 9:21
**BARBIER** [1] - 1:13
**bargain** [2] - 15:9, 23:21
**bargaining** [2] - 15:17, 23:21
**BARON** [1] - 4:21
**BARR** [1] - 2:11
**barred** [1] - 34:1
**barrel** [3] - 43:8, 43:9, 44:1
**BARRIOS** [2] - 4:7, 4:7
**BARROW** [1] - 10:13
**BART** [1] - 5:3
**based** [10] - 24:2, 26:9, 27:9, 36:13, 39:9, 42:1, 42:10, 42:17, 44:22, 48:7
**basic** [1] - 26:4
**basing** [1] - 47:3

**BATON** [2] - 3:25, 5:17
**BATTERY** [1] - 2:23
**BAYLEN** [1] - 2:12
**BCS** [1] - 49:14
**bear** [1] - 24:7
**BEASLEY** [1] - 4:3
**BECK** [2] - 7:23, 7:24
**Becker** [2] - 17:20, 18:1, 18:4, 18:10, 18:12, 30:3, 33:10, 33:14, 34:9, 34:10, 34:12, 37:3
**Becker's** [1] - 34:22
**BEFORE** [1] - 1:13
**begins** [2] - 17:21, 17:22
**BELLE** [1] - 3:22
**below** [3] - 26:21, 39:1, 39:16
**bench** [1] - 34:19
**BERNSTEIN** [1] - 2:22
**BERTAUT** [1] - 8:8
**best** [3] - 24:5, 48:25, 50:15
**between** [13] - 17:7, 23:20, 24:1, 26:19, 27:13, 29:14, 29:24, 39:8, 41:13, 41:22, 43:24, 49:7, 49:24
**beyond** [3] - 23:14, 40:10, 42:22
**BINGHAM** [1] - 9:3
**BLANK** [1] - 10:16
**BLOSSMAN** [1] - 9:8
**blowout** [2] - 24:20, 33:20
**BOBBY** [1] - 5:16
**Bobo** [1] - 50:1
**BOCKIUS** [1] - 9:11
**borne** [1] - 38:23
**bought** [1] - 28:8
**BOULEVARD** [1] - 3:3
**bound** [2] - 16:5, 32:6
**BOUNDS** [1] - 2:14
**BOX** [4] - 1:19, 4:4, 6:5, 11:4
**BP** [47] - 7:6, 7:7, 7:7, 7:8, 7:9, 7:10, 7:11, 12:6, 13:10, 13:23, 13:24, 14:3, 14:25, 18:15, 20:2, 20:24, 21:14, 21:20, 24:10, 24:11, 26:7, 26:10, 27:4, 27:9, 27:22, 27:24, 28:2, 28:3, 28:4, 28:6, 28:12, 28:13, 28:23, 30:12, 36:7, 41:1, 41:10, 42:5, 42:6, 42:9,

47:13, 48:4, 48:5, 48:24, 49:7
**BP'S** [2] - 12:6, 12:8
**BP's** [13] - 13:10, 13:12, 13:25, 17:19, 19:13, 19:16, 20:6, 23:12, 25:6, 28:5, 28:9, 42:15, 48:1
**BP/Transocean** [1] - 23:19
**BRAD** [1] - 7:3
**BRANCH** [1] - 5:20
**breach** [3] - 19:2, 19:19, 20:9
**BREIT** [2] - 2:3, 2:3
**BRENNAN** [1] - 6:14
**BRIAN** [2] - 2:11, 7:3
**brief** [9] - 31:2, 31:3, 31:19, 35:20, 40:13, 43:24, 44:4, 45:24, 46:18
**briefing** [1] - 43:15
**briefs** [8] - 13:23, 22:1, 23:11, 23:12, 36:5, 47:11
**broad** [1] - 22:6
**BROAD** [1] - 4:15
**broader** [1] - 20:17
**BROADWAY** [1] - 3:11
**BROCK** [1] - 8:4
**BUDD** [1] - 4:21
**BUILDING** [2] - 2:19, 3:7, 10:17
**burden** [1] - 30:22
**BURLING** [1] - 8:3
**business** [1] - 42:6
**BY** [53] - 1:4, 1:18, 1:22, 2:3, 2:7, 2:11, 2:15, 2:18, 2:23, 3:3, 3:6, 3:10, 3:14, 3:17, 3:21, 3:24, 4:4, 4:7, 4:11, 4:14, 4:18, 4:21, 5:3, 5:7, 5:12, 5:16, 5:21, 6:4, 6:10, 6:14, 6:18, 6:22, 7:3, 7:12, 7:17, 7:21, 7:24, 8:4, 8:8, 8:12, 8:17, 8:22, 9:3, 9:8, 9:12, 9:16, 9:21, 10:8, 10:13, 10:17, 10:21, 11:14, 11:14

# C

**CA** [3] - 2:24, 5:23, 7:4
**CABRASER** [2] - 2:22, 2:23
**CALLED** [1] - 13:4
**CALVIN** [1] - 4:11

**CAMERON** [1] - 8:7
**CAMP** [1] - 5:13
**CANAL** [4] - 2:7, 2:8, 9:17, 9:18
**cannot** [4] - 27:7, 31:23, 31:24, 40:7
**canons** [1] - 32:21
**capable** [1] - 20:21
**CAPITOL** [1] - 3:14
**captain** [1] - 34:20
**care** [2] - 29:8, 31:1, 41:15
**careful** [1] - 24:2
**cares** [1] - 24:24
**CARL** [1] - 1:13
**CARMELITE** [1] - 8:8
**CARONDELET** [1] - 8:9
**CARVER** [1] - 9:7
**case** [62] - 15:9, 16:16, 16:17, 16:18, 16:19, 16:20, 17:1, 17:10, 17:12, 17:20, 17:22, 17:25, 18:5, 18:7, 22:24, 23:17, 24:17, 27:7, 28:16, 28:19, 29:17, 30:3, 30:19, 30:25, 31:16, 33:9, 33:14, 33:18, 34:3, 34:10, 34:12, 34:25, 35:2, 35:3, 35:6, 35:8, 35:11, 35:17, 35:25, 36:10, 36:14, 36:20, 36:24, 37:3, 37:4, 40:15, 40:16, 43:25, 44:19, 44:21, 44:22, 45:4, 45:6, 45:12, 46:8, 46:19, 46:21, 48:2, 48:4, 49:12
**caselaw** [1] - 29:7
**cases** [18] - 17:24, 18:16, 26:24, 30:14, 30:17, 30:22, 36:10, 36:22, 43:18, 43:22, 44:17, 44:20, 45:13, 45:16, 45:18, 45:20, 46:12, 47:5
**CASES** [1] - 1:10
**CASTEIX** [1] - 4:7
**categories** [2] - 26:8, 37:15
**category** [4] - 15:2, 24:4, 24:24
**CATHY** [1] - 11:10
**Cathy** [2] - 50:13, 50:21
**Cathy_Pepper@laed .uscourts.gov** [1] - 50:23

cathy_Pepper@laed.uscourts.gov [1] - 11:12
caused [2] - 21:10, 29:20
causes [10] - 18:24, 19:3, 19:4, 20:13, 21:7, 21:16, 24:11, 32:15, 32:25, 33:1
causing [2] - 33:19, 34:22
CCR [2] - 11:10, 50:21
CENTER [2] - 7:24, 10:21
central [1] - 31:10
CENTRE [1] - 6:11
certain [7] - 13:25, 20:12, 20:25, 21:6, 32:15, 32:25, 33:1
certainly [3] - 18:8, 26:12, 39:23
CERTIFICATE [1] - 50:11
CERTIFIED [1] - 11:10
Certified [2] - 50:13, 50:13
certify [1] - 50:14
CHAKERES [1] - 5:21
CHAMBERS [1] - 10:12
Championship [1] - 49:14
chapter [2] - 47:15, 47:17
charge [1] - 39:6
CHARLES [1] - 4:15
charter [2] - 18:2, 18:12
CHASSE [1] - 3:22
checked [1] - 14:15
CHICAGO [1] - 7:18
choices [1] - 39:10
CHRYSLER [1] - 10:17
CIRCLE [1] - 3:18
Circuit [15] - 15:19, 16:5, 16:6, 17:6, 17:8, 18:13, 29:18, 30:5, 33:7, 33:13, 33:17, 34:14, 34:18, 34:19, 37:11
circuit [1] - 33:25
circular [1] - 35:23
cite [2] - 35:5, 40:13
cited [2] - 44:17, 44:20
CITY [1] - 3:11
CIVIL [2] - 1:7, 5:20
civil [13] - 17:25, 25:12, 26:11, 37:16, 37:24, 38:2, 38:20,

39:15, 41:23, 42:6, 43:7, 44:21, 47:19
claim [2] - 26:10, 39:11
claimed [1] - 36:25
claiming [1] - 14:25
claims [3] - 26:8, 27:25, 28:9
clause [3] - 21:12, 33:20, 40:25
clauses [2] - 23:2, 35:22
Clean [16] - 25:11, 27:12, 32:5, 38:20, 38:21, 39:3, 39:5, 39:9, 39:12, 39:16, 42:1, 43:25, 44:22, 45:3, 45:9, 46:20
clear [7] - 30:6, 33:8, 33:10, 38:18, 47:20, 48:2
clearly [2] - 37:19, 48:4
CLERK [1] - 13:7
CLINGMAN [1] - 6:15
closest [1] - 35:8
code [1] - 17:25
collect [1] - 41:5
companies [1] - 24:1
COMPANY [3] - 7:7, 8:21
Company [1] - 23:1
company [1] - 35:13
company's [1] - 24:14
compensatory [6] - 26:9, 26:10, 37:16, 38:1, 38:7, 41:13
complaint [1] - 14:13
completely [1] - 24:7
COMPUTER [1] - 11:14
concede [1] - 32:1
concerned [1] - 49:2
concluded [2] - 34:18, 34:20, 50:8
concluding [1] - 28:15
conclusion [1] - 33:15
concurrent [1] - 20:10
conduct [33] - 15:1, 15:11, 16:13, 17:9, 25:11, 25:14, 25:17, 25:18, 28:18, 29:12, 29:13, 29:25, 30:18, 30:23, 31:11, 31:17, 31:23, 31:24, 32:12, 37:6, 37:20, 38:9, 42:22, 43:1, 44:13, 44:15, 44:18, 44:24, 45:13, 46:9, 46:12, 47:3

CONFERENCE [1] - 1:12
confirm [1] - 31:15
conflate [1] - 29:22
conflated [1] - 43:22
Congress [2] - 39:10, 47:21
connection [2] - 19:11, 31:4
CONRAD [1] - 4:18
consequences [2] - 24:12, 25:20
consequential [2] - 22:20, 38:7
consideration [1] - 47:2
constituted [1] - 31:18
construe [1] - 23:2
contemplation [1] - 23:4
contest [1] - 40:2
context [2] - 29:4, 35:25
CONTINUED [10] - 2:1, 3:1, 4:1, 5:1, 6:1, 7:1, 8:1, 9:1, 10:1, 11:1
continued [1] - 49:11
contract [48] - 14:2, 14:4, 15:24, 16:9, 16:13, 16:17, 16:23, 16:25, 18:22, 19:2, 19:10, 19:19, 20:9, 20:13, 20:21, 20:22, 22:18, 22:20, 23:19, 23:22, 25:25, 26:5, 27:4, 28:13, 32:8, 32:10, 32:11, 32:20, 33:3, 33:24, 34:5, 35:3, 35:17, 38:20, 40:6, 40:8, 40:10, 41:8, 41:16, 42:24, 44:10, 46:8, 48:7, 48:16, 48:18, 48:23, 49:7
contracted [2] - 17:2, 44:15
contractor [3] - 26:20, 33:19, 48:3
contractor's [1] - 24:15
contractors [4] - 24:1, 24:13, 24:16, 39:12
Contracts [2] - 44:14, 46:9
contracts [3] - 24:1, 24:2, 34:6
CONTRACTUAL [1] - 12:6
contractual [18] -

13:11, 15:12, 15:20, 19:25, 27:8, 27:23, 28:3, 28:5, 32:21, 33:5, 41:20, 42:4, 42:7, 47:6, 47:24, 48:2, 48:6, 48:20
contradictory [1] - 36:21
contrary [3] - 36:9, 38:17, 40:11
contribution [1] - 24:3
control [3] - 24:3, 24:4, 31:13
controlling [1] - 16:5
cooperation [1] - 49:12
CORAL [1] - 3:18
COREY [1] - 5:8
CORNER [1] - 11:4
CORPORATE [1] - 4:18
CORPORATION [4] - 7:8, 8:7, 8:20, 10:16
corporation [2] - 35:15
correct [13] - 15:2, 15:3, 16:9, 16:10, 17:11, 18:11, 20:5, 21:3, 34:17, 38:3, 42:3, 43:4, 50:15
COSSICH [2] - 3:20, 3:21
costs [2] - 41:15, 41:22
COTLAR [1] - 1:21
counsel [2] - 30:25, 32:7, 36:17, 40:9, 46:19
COUNSEL [1] - 1:18
Counsel [1] - 14:9
counterparty [1] - 36:19
counterparty's [1] - 36:13
couple [5] - 13:17, 26:1, 27:18, 27:19, 46:16
course [1] - 14:19, 15:4, 16:16, 17:12, 18:12, 18:13, 25:3, 33:4, 47:12, 49:10, 50:2
COURT [87] - 1:1, 11:10, 13:4, 13:8, 13:19, 13:21, 14:9, 14:24, 15:5, 16:6, 16:11, 16:18, 16:22, 17:1, 17:14, 17:18, 18:4, 18:6, 18:9, 19:6, 19:8, 19:24,

20:4, 20:6, 21:2, 22:4, 22:6, 22:10, 22:17, 23:16, 24:25, 25:2, 25:5, 25:8, 26:3, 26:15, 27:17, 28:25, 29:3, 29:9, 29:11, 29:14, 29:16, 30:9, 30:11, 31:8, 32:14, 34:2, 34:10, 34:12, 34:23, 34:25, 35:6, 35:10, 35:16, 35:23, 36:21, 36:24, 37:13, 37:23, 38:1, 38:4, 38:14, 39:20, 39:24, 40:17, 40:19, 40:22, 41:5, 41:9, 41:24, 43:1, 43:6, 43:12, 43:21, 44:5, 44:25, 45:8, 46:15, 46:23, 47:1, 47:6, 49:8, 49:19, 49:22, 50:2, 50:5
Court [23] - 15:23, 17:5, 18:1, 23:1, 23:2, 23:15, 26:3, 28:4, 31:22, 32:3, 35:19, 35:20, 36:14, 39:14, 45:21, 48:12, 49:4, 49:6, 50:13, 50:14, 50:14, 50:22, 50:22
court [4] - 16:20, 34:13, 34:14, 44:14
court's [1] - 44:9
Court's [1] - 13:17
courts [1] - 44:13
cover [6] - 18:2, 18:12, 23:2, 28:8, 38:16
covered [6] - 18:23, 22:10, 22:11, 26:13, 28:9, 28:13
covers [5] - 19:2, 19:4, 19:18, 22:15, 24:15
COVINGTON [1] - 8:3
CRAFT [1] - 3:6
created [1] - 45:11
crew [2] - 28:1, 28:20
crew's [1] - 24:18
Crimson [2] - 49:23, 50:3
criteria [1] - 39:9
CROSS [1] - 12:8
cross [5] - 13:12, 32:3, 33:5, 37:9, 40:1
CROSS-MOTION [1] - 12:8
cross-motion [5] - 13:12, 32:3, 33:5, 37:9, 40:1

**CROW** [1] - 4:3
**CRR** [2] - 11:10, 50:21
**culpability** [2] - 25:18, 46:1
**CUNNINGHAM** [3] - 2:14, 2:15, 49:17
**Cunningham** [1] - 49:16

# D

**DALLAS** [3] - 4:22, 8:14, 10:22
**damage** [6] - 20:25, 21:6, 21:10, 21:14, 21:15, 22:9
**damages** [33] - 14:6, 19:4, 22:8, 22:13, 22:14, 22:16, 22:17, 22:19, 22:20, 22:21, 22:22, 22:23, 23:5, 23:8, 26:8, 26:9, 26:11, 28:10, 32:5, 34:6, 35:11, 36:1, 37:16, 37:19, 38:2, 38:7, 38:8, 38:12, 40:8, 41:13, 41:15, 41:22
**DANIEL** [1] - 6:18
**DARDEN** [1] - 9:7
**Daughdrill** [2] - 37:4, 40:15
**DAUPHIN** [1] - 2:15
**DAVID** [1] - 7:24
**DAWN** [1] - 4:7
**DC** [4] - 6:5, 7:22, 8:5, 9:5
**deal** [1] - 17:12
**deals** [3] - 19:13, 30:8, 47:12
**dealt** [1] - 46:20
**death** [3] - 24:21, 27:25, 28:9
**DEBORAH** [1] - 8:22
**decades** [1] - 23:25
**December** [1] - 31:19
**DECEMBER** [2] - 1:8, 13:2
**decide** [4] - 16:4, 18:19, 29:3, 39:14
**decided** [2] - 15:19, 17:8
**decides** [1] - 28:12
**deciding** [1] - 39:21
**decisions** [1] - 40:13
**declare** [1] - 13:25
**deem** [1] - 16:4
**Deepwater** [2] - 27:1, 31:12

**DEEPWATER** [3] - 1:5, 6:8, 6:9
**defend** [2] - 18:25, 19:21
**defendant** [2] - 25:19, 25:20
**defense** [1] - 35:21
**define** [3] - 29:5, 30:11, 30:12
**defined** [4] - 19:22, 29:19, 30:4, 39:5
**defines** [1] - 18:23
**defining** [1] - 18:24
**definitely** [1] - 35:4
**definition** [3] - 29:6, 30:7, 30:16
**definitions** [1] - 31:1
**DEGRAVELLES** [1] - 3:24
**degree** [1] - 25:17
**Denesse** [1] - 23:1
**DENHAM** [1] - 4:12
**denied** [1] - 32:6
**DENNIS** [1] - 10:13
**Department** [1] - 31:6
**DEPARTMENT** [2] - 5:20, 6:4
**DEPUTY** [1] - 13:7
**deter** [1] - 25:14
**determine** [1] - 48:17
**deterrence** [1] - 38:23
**DEXTER** [1] - 5:9
**dictates** [1] - 30:23
**difference** [4] - 41:13, 41:22, 43:24, 44:25
**differences** [1] - 47:8
**different** [11] - 30:14, 30:15, 37:13, 37:15, 37:25, 39:9, 42:11, 47:2, 47:7
**differentiate** [2] - 26:4, 26:9
**direct** [1] - 41:10
**directing** [1] - 41:24
**discharge** [1] - 27:9
**discharged** [1] - 43:9
**discharges** [1] - 27:6
**discovered** [2] - 34:2, 34:3
**discussed** [1] - 35:19
**dispute** [1] - 36:11
**disputes** [1] - 17:23
**disregard** [1] - 13:25
**distinction** [6] - 26:19, 26:22, 27:10, 27:13, 39:1, 49:4
**distinguish** [1] - 29:24
**district** [1] - 34:14
**DISTRICT** [3] - 1:1,

1:2, 1:13
**District** [4] - 35:9, 50:14, 50:14, 50:22
**DIVISION** [1] - 5:20
**DOCUMENT** [3] - 1:9, 12:7, 12:9
**Document** [2] - 13:11, 13:13
**dollar** [1] - 43:9
**dollars** [1] - 24:18
**DOMENGEAUX** [1] - 1:18
**DOMINION** [2] - 2:4, 3:7
**DON** [1] - 7:12
**DONALD** [1] - 8:12
**done** [1] - 48:11
**doubt** [3] - 17:14, 36:16, 47:9
**downhole** [2] - 17:3, 21:2
**drawn** [1] - 26:19
**DRESCHER** [1] - 2:3
**DRIL** [1] - 10:12
**DRIL-QUIP** [1] - 10:12
**Drilling** [1] - 40:15
**DRILLING** [1] - 6:9
**drilling** [17] - 14:2, 14:4, 15:24, 18:22, 19:10, 24:1, 24:13, 24:16, 24:19, 24:22, 26:20, 27:3, 32:10, 35:13, 40:6, 40:8, 48:7
**DRIVE** [3] - 2:4, 3:7, 4:18
**driven** [1] - 25:16
**DRIVES** [1] - 11:4
**due** [2] - 29:8, 49:10
**DUKE** [1] - 11:3
**DUNBAR** [1] - 9:16
**DURHAM** [1] - 11:5

# E

**E&P** [1] - 8:21
**EAST** [1] - 3:14
**EASTERN** [1] - 1:2
**Eastern** [2] - 35:9, 50:14
**EDWARDS** [1] - 1:18
**effect** [1] - 33:21
**efforts** [1] - 49:12
**either** [8] - 20:1, 21:24, 43:10, 43:12, 43:13, 44:1, 45:14, 46:5
**element** [1] - 30:17
**elephant** [2] - 49:23,

49:24
**elevated** [1] - 18:17
**eliminate** [1] - 41:10
**eliminated** [2] - 15:10, 28:17
**ELIZABETH** [2] - 2:23, 5:16
**ELLIS** [2] - 7:16, 7:20
**ELM** [1] - 8:14
**elsewhere** [2] - 20:13, 22:18
**Elsley** [3] - 13:15, 14:22, 49:8
**ELSLEY** [46] - 6:22, 13:14, 13:20, 13:22, 14:23, 15:3, 15:6, 16:10, 16:15, 16:21, 16:24, 17:11, 17:16, 17:19, 18:5, 18:8, 18:11, 19:7, 19:9, 20:3, 20:5, 20:20, 21:3, 22:5, 22:9, 22:11, 22:19, 23:17, 25:1, 25:4, 25:7, 26:1, 26:12, 26:17, 27:19, 29:2, 29:6, 29:10, 29:13, 29:15, 30:1, 30:10, 46:18, 46:25, 47:5, 47:8
**emphasizes** [1] - 38:25
**end** [1] - 42:15
**ended** [1] - 34:22
**endorsed** [2] - 35:19, 35:20
**ENERGY** [2] - 6:11, 8:12
**ENFORCE** [1] - 12:6
**enforce** [5] - 13:10, 28:5, 37:10, 48:8, 49:6
**enforced** [1] - 48:18
**enforcement** [1] - 35:21
**ENFORCEMENT** [1] - 6:3
**engaged** [2] - 42:22, 42:23
**ensure** [1] - 47:15
**entailed** [1] - 27:2
**entire** [4] - 48:6, 48:10, 48:20
**entirely** [2] - 28:6, 28:22
**entitled** [3] - 40:2, 41:1, 50:16
**ENVIRONMENTAL** [1] - 6:3
**equal** [1] - 23:21
**equipment** [3] - 20:25,

21:2, 21:6
**equitable** [4] - 46:22, 46:23, 46:25, 47:1
**ERVIN** [1] - 3:17
**escalates** [2] - 43:9, 44:1
**escapes** [1] - 24:11
**ESPY** [1] - 3:14
**ESQUIRE** [64] - 1:18, 1:22, 2:3, 2:7, 2:11, 2:15, 2:18, 2:23, 3:3, 3:6, 3:10, 3:14, 3:17, 3:21, 3:24, 4:4, 4:7, 4:11, 4:14, 4:18, 4:21, 5:3, 5:7, 5:8, 5:8, 5:12, 5:13, 5:16, 5:21, 5:21, 6:4, 6:10, 6:14, 6:15, 6:18, 6:22, 7:3, 7:12, 7:17, 7:17, 7:21, 7:24, 8:4, 8:8, 8:8, 8:12, 8:13, 8:13, 8:17, 8:22, 9:3, 9:4, 9:8, 9:12, 9:12, 9:16, 9:17, 9:21, 9:22, 10:8, 10:9, 10:13, 10:17, 10:21
**establish** [1] - 35:2
**etcetera** [1] - 37:7
**EVANS** [1] - 9:17
**event** [1] - 26:7
**eventually** [2] - 34:18, 34:20
**evidence** [3] - 31:11, 44:3, 46:3
**exact** [1] - 23:24
**exactly** [5] - 22:25, 23:16, 34:3, 41:21, 50:4
**example** [5] - 21:13, 21:19, 24:9, 29:17, 37:21
**exceed** [1] - 43:8
**except** [3] - 20:11, 21:21, 32:24
**exception** [2] - 20:11, 21:22
**EXCESS** [1] - 9:16
**excluded** [2] - 21:23, 22:21
**exculpate** [1] - 41:1
**exculpatory** [1] - 35:21
**excuse** [2] - 22:4, 36:7
**exemption** [1] - 29:19
**exist** [1] - 44:23
**exonerate** [1] - 15:8
**exoneration** [2] - 15:12, 15:15
**expansive** [1] - 20:7
**explained** [1] - 31:19

explaining [1] - 43:24
explanation [1] -
49:25
EXPLORATION [1] -
7:9
Exploration [9] -
16:19, 17:2, 17:12,
17:22, 17:25, 33:9,
33:16, 35:17, 37:4
expressed [1] - 28:5
expressly [3] - 18:2,
19:1, 45:14
extend [2] - 32:11,
33:25
extent [2] - 20:12,
32:24

**F**

F.Supp [1] - 40:16
F.Supp.2d [1] - 35:9
face [2] - 39:10, 40:8
faces [1] - 24:12
facility [1] - 39:7
fact [3] - 27:12, 32:23,
33:18
factors [1] - 44:16
facts [4] - 45:21,
45:25, 46:1, 46:10
fails [1] - 20:1
fair [2] - 15:15, 28:14
fall [1] - 48:21
fallback [1] - 32:24
falls [2] - 29:14, 48:7
familiar [5] - 16:20,
17:21, 34:13, 35:10,
48:12
FANNIN [1] - 6:15
far [2] - 49:2
fault [1] - 32:18
favor [1] - 40:24
FAYARD [2] - 4:10,
4:11
federal [2] - 38:17,
41:17
FEDERAL [1] - 5:19
few [2] - 23:13, 31:9
FIFTEENTH [1] - 7:21
Fifth [15] - 15:19, 16:5,
16:6, 17:6, 17:8,
18:13, 29:18, 30:5,
33:7, 33:13, 33:17,
34:14, 34:18, 34:19,
37:11
FIFTH [1] - 10:9
file [1] - 43:24
FILED [1] - 11:7
filed [1] - 13:23
final [1] - 17:10

financial [3] - 24:10,
24:12, 25:20
FINANCIAL [1] - 10:7
fine [2] - 31:8, 32:22
fines [23] - 19:5, 25:4,
25:12, 25:13, 26:11,
26:13, 32:4, 37:12,
37:16, 37:24, 38:2,
38:8, 38:12, 38:17,
39:18, 39:22, 39:24,
41:3, 41:11, 41:13,
42:1, 42:12, 43:2
FINN [1] - 9:8
FIRM [2] - 2:6, 10:20
first [6] - 14:11, 15:24,
21:21, 23:17, 34:18,
47:19
FITCH [1] - 9:4
fits [1] - 48:22
FL [2] - 2:12, 3:18
flies [1] - 39:10
FLOOR [5] - 2:23,
5:22, 6:11, 7:4,
10:13
FLORIDA [1] - 4:11
flow [2] - 23:8, 38:8
flowing [1] - 37:19
follow [1] - 33:20
followed [1] - 48:11
following [1] - 48:21
foot [1] - 36:17
FOR [21] - 1:17, 2:3,
5:7, 5:11, 5:19, 6:3,
6:7, 7:6, 8:7, 8:11,
8:20, 9:7, 9:11, 9:15,
9:20, 10:3, 10:12,
10:16, 10:20, 12:5,
12:8
foregoing [1] - 50:15
form [1] - 24:18
forth [2] - 37:17, 48:15
forward [1] - 49:12
four [1] - 46:4
fours [1] - 35:3
FRANCIS [1] - 11:3
FRANCISCO [2] -
2:24, 5:23
free [2] - 16:3, 18:19
freedom [1] - 44:9
freely [1] - 23:19
FRIDAY [2] - 1:8, 13:2
FRILOT [1] - 6:10
FRUGE [1] - 3:17
fulfill [3] - 27:23, 28:2,
48:5
full [1] - 14:5, 19:15,
21:1, 21:7, 21:15
fully [1] - 19:20
future [4] - 25:14,
33:24, 39:14, 48:19

**G**

GABLES [1] - 3:18
game [1] - 49:14
GASAWAY [1] - 7:21
GATE [1] - 5:22
GENERAL'S [1] - 5:7
genuine [1] - 45:20
GEORGE [1] - 9:16
GILLY [1] - 9:16
given [2] - 30:13,
36:17
GODWIN [3] - 8:12,
8:12, 8:16
GOFORTH [2] - 6:18,
6:18
gold [1] - 49:14
GOLDEN [1] - 5:22
GONZALES [1] - 3:17
GONZALEZ [1] - 3:17
GOTSHAL [1] - 10:8
governed [1] - 17:13
government [2] -
47:13, 47:23
Government [2] -
25:2, 41:17
GOVERNMENT [1] -
5:20
GOVERNOR [1] - 5:16
governs [1] - 16:9
GRABILL [1] - 10:8
GRAND [1] - 7:4
grant [1] - 33:5
granted [2] - 42:10,
44:21
Green [1] - 50:2
GREENWALD [1] -
3:10
gross [59] - 14:8, 15:4,
15:20, 17:9, 18:2,
18:3, 18:13, 18:14,
18:18, 19:2, 19:18,
20:3, 20:10, 21:9,
21:17, 22:13, 22:15,
22:23, 23:8, 24:15,
26:7, 28:8, 28:11,
29:5, 29:7, 29:18,
29:20, 29:24, 30:3,
30:8, 30:11, 30:24,
31:2, 32:11, 33:6,
33:11, 33:18, 33:19,
34:1, 34:16, 34:21,
35:20, 36:13, 37:6,
37:11, 37:23, 38:1,
38:6, 42:10, 42:22,
43:3, 43:10, 43:15,
43:17, 44:1, 48:10,
48:16, 48:19
grossly [13] - 15:11,

16:12, 17:4, 17:6,
27:24, 28:18, 31:18,
31:23, 36:19, 37:6,
37:20, 38:8, 42:1
ground [1] - 24:9
GROUP [1] - 4:17
GUERRA [1] - 3:6
guess [3] - 25:5, 38:4,
49:12
GULF [1] - 1:5

**H**

Halliburton [4] -
16:19, 17:2, 17:4,
17:6
HALLIBURTON [1] -
8:11
Halliburton's [1] -
17:9
happy [2] - 43:23, 44:3
harm [1] - 29:20
harmless [2] - 18:25,
47:15
HAYCRAFT [1] - 7:12
HB406 [1] - 11:11
health [2] - 24:18
hear [3] - 14:11, 46:1,
46:3
HEARD [1] - 1:13
heard [1] - 31:25
hearing [2] - 14:14,
15:21
HEIMANN [1] - 2:22
held [4] - 14:4, 22:24,
23:1, 33:19
hereby [1] - 50:17
HERMAN [3] - 1:21,
1:22
hesitate [1] - 36:18
higher [1] - 30:21
HIGHWAY [1] - 3:21
history [1] - 25:19
hold [4] - 13:23,
18:25, 28:23, 47:15
holding [5] - 17:10,
26:19, 26:21, 33:22,
40:14
HOLDINGS [3] - 6:7,
7:10, 10:4
holds [1] - 35:4
hole [2] - 21:14, 21:15
holiday [1] - 50:6
holidays [1] - 49:13
HOLTHAUS [1] - 3:24
HONEYCUTT [1] -
4:10
Honor [65] - 13:14,
13:22, 14:23, 15:3,

15:6, 16:3, 16:10,
16:16, 16:21, 17:11,
18:19, 19:11, 20:5,
20:24, 21:3, 21:4,
21:25, 22:5, 22:12,
22:24, 22:25, 23:7,
23:10, 25:1, 25:7,
26:2, 26:12, 26:18,
26:23, 26:24, 27:16,
27:20, 28:14, 28:15,
28:23, 29:2, 29:15,
30:1, 30:7, 30:13,
31:5, 31:9, 31:21,
32:8, 33:8, 33:9,
33:15, 33:19, 34:24,
35:8, 36:4, 37:2,
37:10, 37:18, 38:15,
39:19, 40:5, 40:9,
40:18, 46:18, 47:8,
47:18, 48:1, 48:23,
49:21
Honor's [2] - 33:22,
37:22
HONORABLE [1] -
1:13
hook [2] - 24:6, 24:7
Horizon [2] - 27:2,
31:12
HORIZON [1] - 1:5
hotly [1] - 40:2
HOUMA [1] - 4:19
Houston [9] - 16:19,
17:2, 17:12, 17:22,
17:25, 33:9, 33:15,
35:17, 37:4
HOUSTON [10] - 3:4,
6:16, 6:19, 6:23,
7:24, 7:25, 8:18,
9:13, 10:14, 10:22
HUGH [1] - 9:12
hundreds [1] - 24:17
hurt [2] - 48:2, 48:3

**I**

IL [1] - 7:18
immensely [1] - 28:19
important [4] - 15:18,
30:19, 30:21, 39:2
impose [3] - 25:24,
39:9, 43:1
imposes [1] - 39:4,
39:5
IMPREVENTO [1] -
2:3
IN [4] - 1:4, 1:5, 11:7
INC [15] - 6:9, 6:10,
7:6, 7:8, 7:9, 7:10,
7:12, 8:12, 10:3,

10:4, 10:5, 10:6, 10:7, 10:8, 10:12
**incentives** [2] - 15:11, 28:17
**incentivized** [1] - 24:13
**incident** [1] - 27:2
**include** [1] - 30:4
**includes** [1] - 22:23
**including** [4] - 14:7, 19:5, 20:9, 48:16
**incorporated** [1] - 19:20
**indemnifiable** [2] - 38:9, 42:12
**indemnification** [5] - 33:6, 35:22, 38:16, 40:7, 40:14
**indemnified** [6] - 16:12, 25:11, 31:23, 31:24, 32:4, 41:25
**indemnifies** [3] - 20:25, 21:6, 21:14
**indemnify** [5] - 14:6, 18:25, 30:23, 36:20, 47:16
**indemnities** [9] - 20:21, 23:19, 27:24, 28:3, 28:8, 37:8, 45:4, 48:6, 48:20
**indemnity** [54] - 14:1, 14:25, 15:7, 15:14, 15:20, 17:7, 18:6, 18:10, 18:18, 19:16, 20:2, 20:8, 20:15, 20:17, 21:18, 21:21, 22:7, 23:2, 23:24, 24:15, 26:2, 26:5, 27:8, 32:15, 33:20, 33:25, 34:4, 34:5, 34:7, 35:3, 35:11, 35:18, 36:1, 36:11, 36:12, 37:11, 38:6, 39:17, 40:11, 40:25, 41:1, 41:10, 41:20, 42:6, 44:21, 45:14, 45:15, 45:19, 46:22, 46:24, 46:25, 47:2, 47:3, 47:6
**indicate** [1] - 43:19
**indignation** [1] - 36:6
**indisputable** [2] - 18:17, 23:18
**industry** [1] - 48:20
**inferred** [1] - 23:5
**inflicted** [1] - 29:20
**Ingalls** [1] - 36:14
**injured** [1] - 15:14
**injuries** [6] - 18:10, 18:11, 28:20, 34:7,

34:22, 36:1
**injury** [3] - 24:21, 27:25, 28:9
**instance** [1] - 32:18, 47:19
**instructed** [1] - 45:24
**insurance** [7] - 19:12, 26:23, 26:24, 27:21, 27:23, 28:6, 28:8
**Insurance** [2] - 43:19, 46:7
**insure** [2] - 28:10, 28:12
**intended** [2] - 25:13, 48:14
**intent** [1] - 30:18
**intentional** [7] - 15:1, 29:11, 29:13, 29:23, 29:25, 30:18, 43:3
**interested** [1] - 29:16
**INTERESTS** [2] - 5:7, 5:20
**INTERNATIONAL** [2] - 8:7, 10:7
**interpretation** [4] - 32:21, 33:5, 42:5, 42:17
**interrelationships** [1] - 24:22
**invalid** [1] - 33:21
**invalidate** [3] - 16:1, 29:19, 36:12
**invalidates** [1] - 28:13
**investment** [1] - 24:3
**involve** [1] - 30:21
**involved** [1] - 35:13
**involves** [1] - 30:17
**IRPINO** [2] - 2:6, 2:7
**IS** [2] - 12:7, 12:8
**Island** [1] - 23:1
**issue** [21] - 14:24, 16:4, 16:8, 17:5, 18:1, 18:20, 20:1, 23:10, 23:14, 23:15, 26:16, 26:17, 28:4, 31:2, 31:3, 31:17, 39:17, 44:7, 45:24, 47:12
**issues** [7] - 19:12, 19:25, 27:15, 31:11, 31:13, 31:21, 45:20
**ITEMS** [1] - 12:3
**itself** [8] - 24:20, 27:5, 32:8, 33:1, 36:8, 36:9, 36:12, 49:3

**J**

**JACKSON** [2] - 3:15,

10:12
**Jackson** [1] - 37:4
**JAMES** [1] - 1:18
**JEFFERSON** [2] - 1:19, 9:22
**JEFFREY** [1] - 2:3
**JENNY** [1] - 8:13
**JEREMY** [1] - 10:8
**JIMMY** [1] - 3:3
**JINDAL** [1] - 5:16
**John** [1] - 13:15
**JOHN** [1] - 6:22
**joint** [1] - 20:9
**JONES** [2] - 4:4, 9:21
**JR** [3] - 3:21, 4:11, 10:13
**judge** [1] - 45:20
**Judge** [7] - 40:20, 41:7, 42:14, 44:6, 44:19, 45:23, 46:4
**JUDGE** [1] - 1:13
**JUDGMENT** [2] - 12:5, 12:8
**judgment** [3] - 13:10, 13:12, 45:19
**jumps** [1] - 43:13
**jurisdiction** [1] - 45:17
**jury** [1] - 34:19
**JUSTICE** [2] - 5:20, 6:4

**K**

**KALBAC** [1] - 3:17
**KANE** [1] - 3:17
**KANNER** [2] - 5:12, 5:12
**KATZ** [1] - 1:21
**keep** [1] - 39:2
**keeping** [1] - 15:23
**KERRY** [1] - 6:10
**kind** [4] - 25:24, 29:16, 39:17, 43:1
**kinds** [1] - 31:13
**KINGSDORF** [1] - 4:7
**KIRBY** [1] - 9:3
**KIRKLAND** [2] - 7:16, 7:20
**knowingly** [1] - 28:22
**known** [2] - 36:23, 37:5
**KORETZKY** [1] - 9:7
**KUCHLER** [2] - 8:21, 8:22
**KULLMAN** [1] - 2:18
**KY** [1] - 9:3

**L**

**L.L.C** [1] - 9:11
**L.P** [1] - 9:21
**LA** [21] - 1:20, 1:23, 2:8, 2:20, 3:22, 3:25, 4:8, 4:12, 4:15, 4:19, 5:4, 5:14, 5:17, 6:12, 7:14, 8:9, 8:23, 9:9, 9:18, 9:23, 11:11
**lack** [5] - 29:8, 31:1, 31:12, 32:13
**LAFAYETTE** [2] - 1:20, 9:23
**LAKE** [1] - 4:15
**LAMAR** [1] - 8:17
**LANCE** [1] - 9:22
**LANGAN** [23] - 7:17, 30:13, 31:9, 32:16, 34:9, 34:11, 34:17, 34:24, 35:5, 35:7, 35:13, 35:18, 36:4, 36:23, 37:2, 37:18, 37:24, 38:3, 38:7, 38:15, 39:22, 39:25, 40:18
**Langan** [1] - 30:11
**language** [10] - 19:21, 20:17, 21:11, 22:7, 23:4, 23:5, 23:7, 30:2, 40:10
**larger** [2] - 15:25, 16:2
**LASALLE** [1] - 7:18
**last** [5] - 32:18, 36:10, 36:15, 39:19, 40:5
**latter** [1] - 32:1
**LAW** [4] - 2:6, 4:17, 10:20, 11:3
**law** [23] - 16:6, 16:7, 16:9, 16:11, 17:13, 17:17, 30:5, 31:21, 31:22, 32:3, 33:6, 33:22, 33:24, 37:10, 38:13, 38:17, 39:25, 40:7, 41:17
**LAWN** [1] - 4:22
**lawyers** [1] - 36:21
**leading** [1] - 40:15
**leads** [1] - 25:11
**least** [2] - 17:25, 46:4
**leave** [1] - 23:22
**LEE** [1] - 10:12
**left** [1] - 49:19
**legal** [2] - 31:10, 45:24
**length** [1] - 23:23
**less** [2] - 29:11, 29:13
**lessee** [1] - 26:21
**lesser** [1] - 43:6
**level** [1] - 43:6

**LEVIN** [1] - 2:10
**LEWIS** [4] - 2:18, 6:18, 7:12, 9:11
**LEXINGTON** [1] - 10:18
**liabilities** [4] - 24:8, 26:25, 27:3, 48:10
**liability** [23] - 14:7, 19:3, 19:19, 20:8, 21:7, 21:16, 24:2, 24:6, 27:5, 27:9, 29:19, 33:2, 33:11, 39:4, 39:6, 39:9, 41:10, 43:5, 43:7, 45:6, 47:16, 47:17, 47:23
**liable** [14] - 26:20, 26:21, 32:13, 39:15, 39:17, 40:3, 41:2, 41:3, 42:16, 42:20, 46:5, 47:19, 47:23, 48:17
**LIAISON** [1] - 1:18
**LIEFF** [1] - 2:22
**LIFE** [1] - 2:19
**limit** [7] - 14:6, 20:15, 22:13, 22:22, 31:10, 32:15, 33:1
**limitation** [2] - 21:10, 21:19
**limited** [6] - 16:15, 19:23, 20:12, 25:5, 27:6, 32:25
**LIMITED** [1] - 7:11
**limiting** [1] - 20:21
**LISKOW** [1] - 7:12
**listen** [1] - 42:8
**literal** [1] - 32:11
**litigation** [1] - 27:21
**lives** [2] - 24:18, 28:20
**LLC** [4] - 6:8, 9:7, 10:4, 10:5
**look** [17] - 17:19, 18:22, 20:15, 22:1, 23:12, 29:17, 37:2, 44:13, 44:15, 44:16, 45:12, 46:9, 46:12, 48:16, 48:17, 48:23
**looked** [2] - 44:18, 44:24
**looks** [4] - 25:17, 25:19, 25:20, 35:14
**LOS** [1] - 7:4
**loss** [8] - 20:25, 21:6, 21:10, 21:14, 21:15, 24:4, 24:21, 48:17
**losses** [1] - 23:2
**lost** [4] - 15:13, 15:14, 28:20, 28:21
**LOUISIANA** [5] - 1:2,

1:7, 5:12, 6:23, 9:13
**Louisiana** [5] - 16:7, 17:13, 30:5, 33:22, 50:14
**LP** [1] - 8:21
**LUNDY** [3] - 4:14, 4:14
**LUTHER** [1] - 5:7
**LUXENBERG** [1] - 3:10
**LUXTON** [1] - 9:12

**M**

**Macondo** [1] - 24:20
**MAIN** [1] - 3:25
**MAJOR** [1] - 8:13
**MANAGEMENT** [1] - 10:3
**MANGES** [1] - 10:8
**MARINE** [4] - 10:5, 10:6, 10:6, 10:16
maritime [7] - 16:9, 17:17, 33:6, 33:22, 33:24, 35:3, 40:13
**MARTINEZ** [1] - 8:13
**MARTÍNEZ** [1] - 3:17
mascot [1] - 49:24
**MASTER** [1] - 11:3
material [2] - 45:21, 46:10
matter [14] - 15:21, 18:20, 25:10, 31:21, 31:22, 32:3, 33:16, 33:18, 38:21, 39:25, 41:18, 42:13, 48:18, 50:16
**MATTHEW** [1] - 4:14
**MAZE** [1] - 5:8
**MCCUTCHEN** [1] - 9:3
**MCGOVERN** [1] - 11:3
**MCKINNEY** [1] - 7:25
**MCLEOD** [1] - 9:17
**MDL** [1] - 10:20
mean [5] - 31:2, 33:2, 36:20, 37:23, 39:22
meaning [2] - 43:15, 43:16
meant [1] - 33:20
**MECHANICAL** [1] - 11:14
**MEKEL** [1] - 5:3
men [1] - 15:14
mental [1] - 43:17
mention [1] - 47:10
mentioned [2] - 18:21, 47:11
merchant [1] - 35:14
mere [2] - 29:8, 32:19
**Merit** [1] - 50:13

merits [1] - 45:16
**METHVIN** [1] - 4:3
**MEXICO** [1] - 1:5
**MI** [1] - 9:11
**MICHAEL** [2] - 3:24, 5:21
middle [1] - 21:8
might [3] - 15:1, 35:5, 40:24
**MILES** [1] - 4:3
**MILLER** [1] - 6:10
millions [1] - 24:18
mind [4] - 15:23, 31:20, 39:2, 43:20
minutes [6] - 13:16, 13:18, 27:18, 31:6, 46:16, 46:17
misconduct [14] - 25:14, 25:19, 30:4, 30:17, 30:24, 31:18, 31:25, 42:23, 42:24, 43:11, 43:16, 43:19, 44:2, 46:7
**Mississippi** [2] - 36:11, 36:14
mistake [1] - 29:8
**MITCHELL** [1] - 2:10
**MITHOFF** [1] - 10:20
**MOBILE** [1] - 2:16
**MODU's** [1] - 27:5
**MOEX** [1] - 9:7
**Montauk** [5] - 44:22, 45:4, 45:12, 46:12, 46:19
**MONTGOMERY** [2] - 4:5, 5:9
**MONTHLY** [1] - 1:12
moot [2] - 42:25, 46:6
**MORGAN** [3] - 3:13, 9:11
morning [2] - 13:14, 40:20
**MORRIS** [1] - 5:3
**MOTION** [2] - 12:5, 12:8
motion [17] - 13:9, 13:12, 14:3, 15:3, 17:20, 25:3, 29:4, 30:8, 31:10, 32:3, 32:6, 33:5, 37:9, 40:1, 40:23, 42:4, 42:15
motions [1] - 49:9
move [1] - 23:14
moving [5] - 21:25, 22:1, 23:10, 34:21, 49:12
**MR** [83] - 13:14, 13:20, 13:22, 14:23, 15:3, 15:6, 16:10, 16:15,

16:21, 16:24, 17:11, 17:16, 17:19, 18:5, 18:8, 18:11, 19:7, 19:9, 20:3, 20:5, 20:20, 21:3, 22:5, 22:9, 22:11, 22:19, 23:17, 25:1, 25:4, 25:7, 26:1, 26:12, 26:17, 27:19, 29:2, 29:6, 29:10, 29:13, 29:15, 30:1, 30:10, 30:13, 31:9, 32:16, 34:9, 34:11, 34:17, 34:24, 35:5, 35:7, 35:13, 35:18, 36:4, 36:23, 37:2, 37:18, 37:24, 38:3, 38:7, 38:15, 39:22, 39:25, 40:18, 40:20, 41:4, 41:7, 41:12, 42:3, 43:5, 43:7, 43:13, 43:23, 44:6, 45:2, 45:10, 46:18, 46:25, 47:5, 47:8, 49:17, 49:21, 50:1, 50:4
**MS** [1] - 3:15
**MUNGER** [1] - 7:3
**MURRILL** [1] - 5:16
must [1] - 38:23

**N**

**N.W** [1] - 7:21
name [2] - 13:14, 26:14
narrow [2] - 41:18, 44:11
**NATHANIEL** [1] - 5:21
**NC** [1] - 11:5
necessarily [2] - 29:4, 48:22
necessary [1] - 43:1
need [5] - 14:19, 29:3, 31:3, 38:16, 42:7
needs [2] - 41:18, 44:11
negligence [71] - 14:8, 15:4, 15:20, 17:9, 18:2, 18:3, 18:13, 18:14, 18:19, 19:2, 19:18, 20:3, 20:9, 20:10, 20:17, 21:9, 21:17, 21:18, 22:14, 22:15, 22:23, 23:8, 23:9, 24:15, 26:7, 28:8, 28:11, 29:5, 29:7, 29:9, 29:18, 29:21, 29:24, 30:3, 30:8, 30:12, 30:22, 30:24, 31:2, 32:12, 32:18, 33:1, 33:2,

33:7, 33:12, 33:18, 33:19, 34:1, 34:16, 34:21, 35:21, 36:13, 37:7, 37:11, 37:21, 38:1, 38:6, 42:10, 42:22, 43:3, 43:4, 43:10, 43:15, 43:17, 44:1, 48:10, 48:16, 48:19
negligent [13] - 15:11, 16:13, 17:4, 17:7, 27:24, 28:18, 31:18, 31:24, 36:19, 37:6, 37:20, 38:9, 42:2
negotiated [1] - 23:19
never [3] - 15:19, 18:1, 49:25
**NEW** [17] - 1:7, 1:23, 2:8, 2:20, 3:11, 4:8, 5:4, 5:14, 6:12, 7:14, 8:9, 8:23, 9:9, 9:18, 10:10, 10:18, 11:11
**Nexen** [3] - 35:7, 35:9, 37:3
**NIZIALEK** [1] - 9:8
**NO** [1] - 1:7
none [4] - 38:5, 38:9, 45:13, 45:14
**NORFOLK** [1] - 2:5
normal [1] - 32:20
**NORTH** [5] - 5:17, 7:8, 7:8, 7:10, 7:11
**Nothing** [1] - 47:14
notwithstanding [2] - 21:16, 21:22
numbered [1] - 50:16
numerous [1] - 40:13
**NW** [2] - 8:4, 9:4
**NY** [3] - 3:11, 10:10, 10:18

**O**

**O'BRIEN'S** [1] - 10:3
**O'KEEFE** [1] - 1:22
**O'Rourke** [4] - 38:15, 40:6, 40:20, 46:15
**O'ROURKE** [13] - 6:4, 40:20, 41:4, 41:7, 41:12, 42:3, 43:5, 43:7, 43:13, 43:23, 44:6, 45:2, 45:10
**OAK** [1] - 4:22
obligation [6] - 19:16, 19:22, 20:8, 20:12, 32:24, 48:6
**OBLIGATIONS** [1] - 12:6
obligations [5] -

13:11, 14:1, 28:22, 33:25, 48:2
observing [1] - 15:18
obviously [3] - 17:3, 29:7, 40:3
**Ocean** [2] - 40:15, 45:15
**OCS** [1] - 17:15
**OF** [9] - 1:2, 1:5, 1:12, 5:11, 5:20, 6:3, 6:4, 11:3, 11:4
offended [1] - 15:7
**OFFICE** [2] - 4:4, 5:7
**OFFICIAL** [1] - 11:10
Official [2] - 50:14, 50:22
offshore [1] - 39:7
**OFFSHORE** [3] - 6:8, 9:7, 10:4
often [1] - 43:22
**Oil** [3] - 39:13, 42:18, 45:6
**OIL** [2] - 1:4, 1:5
oil [7] - 24:1, 24:9, 24:11, 24:14, 39:16, 43:8, 48:11
**OLSON** [1] - 7:3
**ON** [1] - 1:5
once [2] - 23:14, 36:24, 48:5
one [22] - 14:9, 15:9, 17:20, 17:22, 22:4, 22:7, 24:24, 28:16, 28:25, 34:4, 40:23, 42:11, 43:12, 43:13, 44:16, 44:19, 44:21, 46:22, 47:10, 48:16, 48:22, 49:19
**ONE** [4] - 2:7, 7:13, 7:24, 10:21
one-sided [2] - 15:9, 28:16
onshore [1] - 39:7
**OPA** [13] - 26:18, 26:19, 27:5, 27:10, 27:12, 39:3, 39:4, 39:8, 45:9, 45:11, 47:21, 49:4
operate [2] - 24:14, 39:13
**Operating** [1] - 23:1
operator [1] - 39:6
opinion [3] - 37:3, 42:20, 46:6
oppose [1] - 42:3
opposed [1] - 47:6
opposing [1] - 40:23
opposition [4] - 25:5, 25:6, 41:25
oral [3] - 23:11, 30:2,

42:8
**ORDER** [1] - 13:4
**original** [1] - 47:23
**originating** [1] - 26:25
**ORLEANS** [14] - 1:7, 1:23, 2:8, 2:20, 4:8, 5:4, 5:14, 6:12, 7:14, 8:9, 8:23, 9:9, 9:18, 11:11
**otherwise** [2] - 32:6, 41:2
**ourselves** [1] - 31:10
**owe** [1] - 38:20
**owes** [1] - 28:3
**own** [3] - 32:17, 34:6, 48:25
**owner** [2] - 18:9, 39:6

## P

**P.O** [1] - 6:5
**page** [1] - 35:20
**PAGE** [1] - 12:3
**PALMINTIER** [2] - 3:24, 3:24
**PAN** [1] - 2:19
**PAPANTONIO** [1] - 2:10
**paragraph** [1] - 21:5
**PARKWAY** [1] - 10:13
**PARSIOLA** [1] - 3:20
**part** [6] - 21:2, 32:18, 42:4, 45:2, 45:8, 45:9
**PARTIAL** [1] - 12:5
**partial** [1] - 13:10
**particular** [1] - 25:16
**particularly** [1] - 24:16
**parties** [34] - 13:23, 14:1, 15:17, 17:8, 20:20, 21:21, 21:24, 22:21, 23:20, 23:21, 24:7, 28:21, 31:16, 33:23, 34:2, 34:5, 35:16, 36:2, 37:5, 39:4, 41:8, 44:13, 44:16, 44:17, 44:18, 44:20, 44:24, 45:13, 46:2, 46:10, 46:13, 47:22, 48:14
**parties'** [1] - 23:3
**party** [36] - 15:10, 16:12, 16:13, 16:22, 16:24, 17:23, 18:5, 18:6, 24:5, 24:23, 25:10, 25:17, 25:18, 28:16, 28:18, 34:6, 34:7, 34:8, 35:12, 35:18, 36:24, 38:23,

41:5, 41:8, 41:15, 41:18, 41:19, 41:20, 44:12, 47:3, 47:16
**party's** [4] - 24:3, 24:6, 24:7, 34:1
**passed** [1] - 45:10
**passive** [2] - 14:8, 20:10
**past** [2] - 25:19, 33:24
**patch** [1] - 48:11
**PAUL** [1] - 2:18
**pawn** [2] - 41:19, 44:11
**pays** [2] - 41:15, 41:18
**peculiar** [1] - 25:16
**penalize** [1] - 41:17
**penalties** [39] - 19:5, 25:4, 25:12, 25:13, 25:16, 25:21, 26:11, 26:13, 32:4, 37:12, 37:16, 37:24, 38:2, 38:8, 38:12, 38:20, 38:22, 39:15, 39:17, 39:18, 39:22, 39:24, 41:3, 41:11, 41:14, 41:23, 42:1, 42:7, 42:12, 42:17, 43:2, 43:4, 43:6, 43:8, 44:21, 45:15, 45:19, 47:20
**penalty** [4] - 25:24, 26:2, 38:17, 44:1
**PENNSYLVANIA** [1] - 8:4
**PENNZOIL** [1] - 6:22
**PENSACOLA** [1] - 2:12
**PENTHOUSE** [1] - 3:18
**PEPPER** [1] - 11:10
**Pepper** [2] - 50:13, 50:21
**per** [4] - 43:8, 43:9, 44:1, 46:25
**per-barrel** [1] - 43:9
**perhaps** [4] - 25:19, 26:4, 37:14, 40:24
**permission** [1] - 13:17
**person** [2] - 14:8, 39:6
**PETROLEUM** [1] - 8:20
**Petroleum** [2] - 35:7, 35:9
**PHELPS** [1] - 9:16
**PHILIP** [1] - 3:21
**PHILLIP** [2] - 8:8, 9:8
**phrase** [7] - 18:24, 19:14, 19:15, 21:8, 22:12, 22:17, 22:19
**phrased** [1] - 41:21

**phrases** [1] - 43:22
**PIGMAN** [1] - 8:7
**PLACE** [3] - 2:7, 6:22, 9:17
**plain** [1] - 39:8
**plainly** [2] - 22:14, 22:15
**plaintiff** [3] - 41:14, 41:16, 43:9
**PLAINTIFFS** [1] - 2:3
**PLAINTIFFS'** [1] - 1:17
**platform** [2] - 17:14, 17:15
**PLEASE** [1] - 11:7
**PLETCHER** [1] - 3:6
**podium** [3] - 14:18, 14:19, 40:6
**point** [12] - 28:7, 30:21, 31:20, 32:1, 32:22, 33:23, 35:24, 36:4, 37:22, 39:19, 40:5, 47:18
**pointed** [1] - 40:9
**points** [3] - 23:13, 26:1, 27:19
**policies** [2] - 45:22, 46:2
**policy** [43] - 14:2, 15:7, 15:21, 16:1, 16:2, 16:4, 16:12, 18:1, 18:20, 19:25, 22:1, 23:10, 23:13, 25:9, 25:24, 26:6, 26:16, 26:17, 27:7, 27:11, 27:12, 27:15, 27:20, 27:22, 28:4, 28:10, 30:22, 36:6, 38:5, 38:11, 38:21, 40:12, 40:15, 42:11, 42:13, 44:7, 44:9, 44:10, 47:2, 47:21, 48:18, 49:3
**POLK** [1] - 8:21
**Pollution** [3] - 39:13, 42:18, 45:6
**pollution** [13] - 14:5, 19:10, 19:14, 19:15, 19:17, 20:16, 24:11, 24:14, 24:19, 24:21, 26:2, 26:25, 49:2
**PORTIS** [1] - 4:3
**position** [8] - 16:3, 22:15, 24:5, 26:12, 32:9, 38:19, 48:1, 48:25
**positions** [2] - 36:10, 36:21
**possibility** [1] - 37:6
**possibly** [2] - 31:18,

39:15
**POST** [1] - 4:4
**potential** [1] - 24:8
**potentially** [1] - 41:6
**power** [1] - 23:21
**POYDRAS** [8] - 2:19, 4:8, 5:4, 6:11, 7:13, 8:23, 9:9, 11:11
**precedent** [1] - 16:5
**precision** [1] - 30:20
**precontract** [1] - 48:11
**predictability** [1] - 44:10
**preliminary** [1] - 40:22
**premature** [1] - 42:16
**premise** [1] - 26:5
**preparation** [1] - 22:2
**preparing** [2] - 23:11, 30:2
**preponderance** [1] - 43:10
**PRESENT** [1] - 11:7
**present** [2] - 36:25, 37:1
**presented** [1] - 31:11
**pretty** [2] - 22:6, 34:13
**preventing** [2] - 24:24, 26:6
**previous** [1] - 21:17
**Prince** [1] - 45:15
**private** [2] - 33:23, 39:12
**problem** [2] - 27:22, 39:11
**proceed** [1] - 13:20
**PROCEEDINGS** [3] - 1:12, 11:14, 13:1
**proceedings** [2] - 50:7, 50:15
**PROCTOR** [1] - 2:11
**produce** [1] - 38:1
**PRODUCED** [1] - 11:14
**PRODUCTION** [2] - 7:7, 7:10
**PRODUCTS** [1] - 7:11
**Professional** [1] - 50:13
**PROFESSOR** [1] - 11:3
**prohibits** [2] - 33:6, 47:15
**promise** [4] - 13:24, 13:25, 28:5, 28:24
**promised** [1] - 14:4
**pronounce** [1] - 22:25
**protect** [3] - 18:24, 19:20, 36:18
**prove** [2] - 44:3, 46:6

**proves** [1] - 43:10
**provide** [1] - 40:7
**provides** [1] - 27:5
**provision** [5] - 20:10, 32:9, 45:4, 45:5, 47:14
**provisions** [5] - 15:7, 18:18, 19:10, 32:10, 32:20
**public** [40] - 14:2, 15:7, 15:21, 16:1, 16:2, 16:4, 16:11, 18:1, 18:20, 19:25, 22:1, 23:10, 23:13, 25:9, 25:23, 26:6, 26:15, 26:17, 27:7, 27:11, 27:12, 27:15, 27:20, 27:22, 28:4, 28:10, 30:22, 38:4, 38:11, 38:21, 40:11, 40:14, 42:13, 44:9, 44:10, 46:2, 47:21, 47:22, 48:18, 49:3
**punish** [1] - 25:13
**punished** [3] - 41:18, 41:19, 44:11
**punishment** [2] - 38:22, 44:12
**punitive** [16] - 22:8, 22:9, 22:14, 22:16, 22:17, 22:19, 22:21, 22:23, 23:5, 23:8, 26:11, 28:10, 32:5, 38:2, 38:12, 40:7
**punitives** [5] - 37:7, 37:16, 38:8, 40:11, 40:14
**purchase** [1] - 28:6
**purple** [1] - 49:14
**purpose** [1] - 38:22
**put** [2] - 31:16, 32:22
**putting** [1] - 19:25

## Q

**Quality** [2] - 43:18, 46:7
**QUIP** [1] - 10:12
**quote** [6] - 22:12, 22:13, 29:18, 29:20, 32:24, 33:20
**quoting** [1] - 33:11

## R

**RACHEL** [1] - 6:15
**RAFFERTY** [1] - 2:11
**raise** [2] - 22:3, 23:13
**raised** [1] - 47:13

**raises** [2] - 28:4, 39:20
**range** [3] - 21:1, 21:7, 21:15
**RAYZOR** [1] - 6:21
**RE** [1] - 1:4
**reached** [1] - 33:15
**read** [4] - 20:7, 33:3, 35:10, 43:21
**reading** [2] - 13:22, 19:6
**realistic** [1] - 15:16
**really** [7] - 23:14, 23:25, 26:15, 31:14, 42:5, 44:4, 45:16
**REALTIME** [1] - 11:10
**Realtime** [1] - 50:13
**reaps** [1] - 24:10
**reasonably** [2] - 23:3, 23:5
**reasoning** [3] - 23:4, 44:23, 46:21
**reasons** [3] - 14:10, 44:8, 46:5
**rebuttal** [1] - 13:18
**recently** [1] - 35:11
**recessed** [1] - 14:14
**reciprocal** [5] - 14:1, 15:19, 23:18, 23:24, 28:23
**recognized** [4] - 17:6, 26:23, 27:10, 49:5
**recommend** [2] - 45:25, 46:13
**recommending** [1] - 45:23
**RECORD** [3] - 11:7, 12:7, 12:9
**Record** [2] - 13:11, 13:13
**record** [2] - 46:10, 50:15
**RECORDED** [1] - 11:14
**recoverable** [1] - 38:5
**recovering** [1] - 26:7
**red** [2] - 49:15, 49:16
**REDDEN** [1] - 7:23
**referred** [1] - 46:19
**refers** [1] - 19:16
**reflect** [1] - 27:12
**reflected** [1] - 49:3
**regard** [3] - 14:7, 20:16, 33:8
**regardless** [1] - 33:7
**Registered** [2] - 50:13, 50:13
**relates** [1] - 15:4
**RELATES** [1] - 1:9
**relationship** [1] - 49:24

**relative** [1] - 24:3
**release** [4] - 18:24, 19:21, 27:2, 33:20
**releases** [1] - 39:16
**relevant** [1] - 32:9
**remain** [1] - 47:23
**remaining** [1] - 31:7
**remains** [1] - 47:19
**remedies** [2] - 18:24, 42:10
**remember** [1] - 34:14
**remind** [1] - 44:25
**repair** [1] - 16:17
**reply** [2] - 17:19, 21:20
**REPORTER** [2] - 11:10, 11:10
**Reporter** [6] - 50:13, 50:13, 50:14, 50:22
**REPORTER'S** [1] - 50:11
**request** [1] - 46:1
**requested** [1] - 32:2
**requests** [1] - 14:3
**require** [1] - 43:20
**required** [3] - 21:11, 21:19, 43:3
**requires** [2] - 43:17, 46:9
**reread** [1] - 19:1
**reserve** [1] - 13:17
**respect** [1] - 39:18
**respectfully** [2] - 28:23, 49:6
**response** [5] - 20:18, 20:19, 20:20, 26:18, 37:9
**RESPONSE** [2] - 10:3, 10:16
**responsibilities** [1] - 48:24
**responsibility** [5] - 14:5, 19:14, 19:16, 24:17, 47:24
**responsible** [2] - 38:24, 39:4
**Restatement** [2] - 44:14, 46:9
**result** [3] - 19:4, 22:14, 31:24
**resulted** [1] - 24:20
**results** [1] - 23:25
**retained** [2] - 15:13, 24:17
**retribution** [1] - 25:13
**revolve** [1] - 31:21
**rewards** [1] - 24:10
**rewrite** [1] - 39:12
**RHON** [1] - 4:4
**RICHESON** [1] - 8:22

**RIG** [1] - 1:5
**rig** [5] - 15:14, 24:19, 24:23, 28:21
**righteous** [1] - 36:6
**rights** [1] - 36:18
**rise** [1] - 13:7
**risk** [4] - 24:4, 24:24, 28:17, 49:3
**risks** [9] - 15:8, 15:10, 15:13, 15:16, 24:22, 28:22, 48:24, 48:25, 49:1
**RMR** [2] - 11:10, 50:21
**ROBERT** [3] - 2:15, 7:21, 8:4
**ROBERTS** [1] - 6:14
**ROBIN** [1] - 3:10
**ROME** [1] - 10:16
**RONQUILLO** [2] - 8:12, 8:16
**ROOM** [2] - 5:22, 11:11
**ROUGE** [2] - 3:25, 5:17
**ROY** [2] - 1:18, 1:18
**ROYSTON** [1] - 6:21
**rule** [8] - 18:17, 18:18, 31:22, 32:3, 33:4, 35:20, 40:1, 49:10
**Rule** [2] - 46:11
**ruled** [4] - 19:11, 26:24, 42:23, 45:15
**ruling** [3] - 26:23, 34:15, 44:8
**RUSNAK** [1] - 3:2
**RYAN** [1] - 7:17

## S

**SAN** [3] - 2:24, 3:8, 5:23
**SANNINO** [1] - 9:22
**satisfactorily** [1] - 24:14
**saw** [1] - 30:1
**SCHELL** [1] - 8:21
**SCHOOL** [1] - 11:3
**SCIENCE** [1] - 11:4
**scienter** [3] - 30:18, 43:18, 43:20
**scope** [1] - 18:23
**SCOTT** [1] - 4:21
**se** [1] - 46:25
**SEACOR** [6] - 10:4, 10:4, 10:5, 10:5, 10:6, 10:6
**seated** [1] - 13:8
**seaworthiness** [2] - 31:11, 32:13

**second** [6] - 14:9, 15:25, 21:5, 21:23, 22:4, 23:24
**SECREST** [1] - 7:23
**Section** [4] - 18:23, 21:12, 39:5, 45:3
**section** [1] - 22:20
**SECTION** [1] - 6:3
**sections** [1] - 20:23
**SEE** [1] - 11:7
**see** [7] - 20:24, 23:25, 37:13, 41:7, 41:22, 49:13, 49:14
**seek** [3] - 15:12, 36:18, 40:11
**seeking** [8] - 18:10, 34:5, 34:7, 35:11, 36:7, 41:14, 41:17, 46:23
**seeks** [1] - 13:23
**seem** [1] - 29:22
**sees** [1] - 39:13
**self** [1] - 28:12
**self-insure** [1] - 28:12
**sense** [6] - 16:15, 24:11, 25:23, 32:8, 32:17, 34:4
**sentence** [3] - 17:20, 17:22, 21:17
**serious** [1] - 18:11
**seriousness** [1] - 44:15
**serve** [1] - 38:22
**SERVICES** [1] - 8:12
**set** [1] - 48:15
**setting** [1] - 25:21
**shall** [1] - 19:15
**SHEETS** [1] - 11:7
**SHELL** [1] - 7:13
**shift** [2] - 27:8, 38:19
**shifted** [2] - 15:10, 28:17
**ship** [1] - 16:17
**shipbuilder** [1] - 36:12
**Shipbuilding** [1] - 36:14
**shipyard** [2] - 16:17, 36:11
**Shipyards** [5] - 16:16, 16:18, 29:17, 33:14, 37:3
**shocking** [1] - 36:22
**shoe** [1] - 36:16
**shows** [1] - 24:21
**side** [1] - 47:1
**sided** [2] - 15:9, 28:16
**SIEMENS** [1] - 10:7
**SIGN** [1] - 11:7
**sign** [1] - 28:14

**SIGN-IN** [1] - 11:7
**significant** [1] - 24:7
**significantly** [1] - 47:11
**similar** [2] - 17:16, 35:17
**similarly** [1] - 42:21
**simple** [4] - 29:9, 30:22, 33:1, 37:20
**simply** [4] - 28:7, 28:12, 28:14, 48:21
**simultaneously** [1] - 13:12
**SINCLAIR** [1] - 5:8
**single** [4] - 30:16, 34:3, 48:3
**situation** [2] - 23:22, 27:25, 28:21, 38:6, 40:25, 48:15
**size** [1] - 48:22
**so-called** [1] - 34:4
**SOILEAU** [1] - 4:14
**sold** [1] - 24:10
**sole** [1] - 20:9
**solid** [1] - 40:10
**someone** [3] - 14:13, 25:24, 48:9
**somewhat** [1] - 43:25
**somewhere** [1] - 29:14
**sophisticated** [1] - 15:17
**sorry** [1] - 49:22
**sort** [6] - 30:4, 30:20, 31:1, 35:23, 36:6, 36:8
**sought** [1] - 36:1
**sound** [3] - 14:15, 14:16, 38:21
**sounds** [2] - 29:22, 35:10
**SOUTH** [3] - 2:12, 4:14, 7:4
**speaking** [2] - 14:19, 14:20
**SPECIAL** [1] - 11:3
**specific** [6] - 16:15, 20:7, 20:18, 21:10, 21:19, 48:23
**specifically** [7] - 19:23, 20:12, 20:21, 21:23, 26:13, 32:14, 32:25
**SPILL** [2] - 1:4, 10:16
**spills** [5] - 26:20, 26:21, 27:13, 27:14
**SPRINGS** [1] - 4:12
**SQUARE** [1] - 7:13
**squarely** [1] - 31:16
**stake** [2] - 24:23,

36:17
**standard** [1] - 46:8
**standards** [1] - 30:15
**stands** [1] - 32:17
**start** [2] - 15:18, 32:8
**started** [1] - 35:24
**starts** [2] - 20:11, 21:9
**state** [3] - 17:13, 43:17, 43:20
**STATE** [2] - 5:7, 5:11
**statement** [1] - 44:7
**statements** [1] - 18:16
**States** [13] - 25:2, 31:19, 38:17, 40:19, 40:21, 40:23, 40:24, 41:2, 41:11, 41:16, 41:24, 50:14, 50:22
**STATES** [3] - 1:1, 1:13, 6:3
**States'** [2] - 23:12, 25:8
**STATUS** [1] - 1:12
**statute** [3] - 17:13, 17:16, 39:8
**statutory** [1] - 16:7
**STEFANIE** [1] - 8:13
**STENOGRAPHY** [1] - 11:14
**STEPHEN** [1] - 1:22
**STERBCOW** [2] - 2:18, 2:18
**Steve** [1] - 40:20
**STEVEN** [2] - 6:4, 6:14, 9:12
**stick** [1] - 13:16
**still** [2] - 45:20, 46:21
**STONE** [1] - 8:7
**stop** [1] - 14:9
**stops** [1] - 48:4
**STRADLEY** [1] - 10:21
**STRANGE** [4] - 5:7, 49:21, 50:1, 50:4
**Strange** [1] - 49:19
**STREET** [29] - 1:19, 2:8, 2:12, 2:15, 2:19, 2:23, 3:14, 3:25, 4:8, 4:15, 5:4, 5:13, 5:17, 6:11, 6:15, 6:23, 7:13, 7:21, 7:25, 8:9, 8:14, 8:23, 9:4, 9:9, 9:13, 9:18, 9:22, 10:22, 11:11
**strict** [7] - 14:7, 19:3, 19:19, 20:8, 33:2, 43:5, 43:7
**strictly** [1] - 32:12
**stronger** [2] - 37:14, 38:12
**studied** [1] - 22:2
**sub** [1] - 48:4

**submit** [1] - 44:4
**subpart** [1] - 47:17
**subs** [1] - 48:7
**subsurface** [3] - 19:17, 20:16, 27:2
**succeeds** [1] - 20:1
**sudden** [1] - 28:3
**sued** [1] - 41:8
**suffered** [1] - 28:19
**sufficiently** [1] - 14:11
**suggest** [1] - 24:23
**suggesting** [1] - 34:25
**SUITE** [22] - 2:8, 2:12, 2:19, 3:7, 3:14, 3:21, 4:8, 4:18, 4:22, 5:4, 6:15, 6:19, 6:23, 7:14, 7:25, 8:14, 8:17, 8:23, 9:9, 9:13, 9:18, 9:22
**SUMICH** [1] - 3:20
**summarize** [1] - 46:4
**SUMMARY** [2] - 12:5, 12:8
**summary** [3] - 13:10, 13:12, 45:19
**SUMMY** [1] - 4:21
**supply** [1] - 35:14
**Supreme** [1] - 36:14
**surface** [3] - 27:1, 27:6, 49:3
**surplusage** [1] - 32:19
**SUTHERLAND** [1] - 6:14
**SW** [1] - 4:11
**Syndicate** [2] - 43:19, 46:7
**system** [1] - 14:15

**T**

**TANNER** [1] - 9:12
**TAYLOR** [1] - 3:20
**term** [1] - 39:5
**terms** [6] - 25:20, 30:7, 32:11, 39:8, 42:7, 42:24
**TESSIER** [1] - 9:7
**TEXAS** [1] - 10:14
**textual** [4] - 15:24, 18:21, 21:25, 23:14
**THE** [95] - 1:4, 1:5, 1:13, 1:17, 2:3, 5:11, 5:19, 6:3, 10:17, 11:7, 13:7, 13:8, 13:19, 13:21, 14:9, 14:24, 15:5, 16:6, 16:11, 16:18, 16:22, 17:1, 17:14, 17:18, 18:4, 18:6, 18:9,

19:6, 19:8, 19:24, 20:4, 20:6, 21:2, 22:4, 22:6, 22:10, 22:17, 23:16, 24:25, 25:2, 25:5, 25:8, 26:3, 26:15, 27:17, 28:25, 29:3, 29:9, 29:11, 29:14, 29:16, 30:9, 30:11, 31:8, 32:14, 34:2, 34:10, 34:12, 34:23, 34:25, 35:6, 35:10, 35:16, 35:23, 36:21, 36:24, 37:13, 37:23, 38:1, 38:4, 38:14, 39:20, 39:24, 40:17, 40:19, 40:22, 41:5, 41:9, 41:24, 43:1, 43:6, 43:12, 43:21, 44:5, 44:25, 45:8, 46:15, 46:23, 47:1, 47:6, 49:8, 49:19, 49:22, 50:2, 50:5
**THEODORE** [1] - 10:9
**thereby** [2] - 15:10, 28:17
**therefore** [2] - 42:25, 46:13
**thereof** [1] - 31:12
**they've** [2] - 18:15, 18:17
**THIRD** [1] - 5:17
**third** [7] - 18:5, 18:6, 24:13, 34:7, 35:12, 35:18, 36:1
**third-party** [2] - 18:5, 18:6
**THIS** [1] - 1:9
**THOMAS** [1] - 2:10
**three** [1] - 44:20
**Tide** [3] - 49:23, 49:25, 50:3
**Tidewater** [2] - 18:9, 33:10
**TO** [3] - 1:9, 12:6, 13:4
**TO's** [2] - 31:11, 31:17
**today** [5] - 30:21, 31:14, 31:15, 36:5, 44:4
**today's** [1] - 31:5
**Todd** [5] - 16:16, 16:18, 29:17, 33:14, 37:3
**TOLLES** [1] - 7:3
**Tom** [2] - 14:11, 14:21
**TONY** [1] - 3:6
**took** [2] - 22:1, 23:11
**topic** [1] - 44:4
**TORTS** [1] - 5:20
**totalling** [1] - 24:17

**TOWER** [1] - 2:4
**transaction** [1] - 23:23
**TRANSCRIPT** [2] - 1:12, 11:14
**transcript** [1] - 50:15
**transfer** [2] - 38:11, 47:22
**transferred** [1] - 47:17
**TRANSOCEAN** [4] - 6:7, 6:8, 6:9, 9:15
**Transocean** [43] - 13:23, 13:25, 14:3, 14:6, 14:25, 15:6, 15:11, 15:13, 20:25, 21:6, 21:15, 24:16, 25:10, 26:6, 26:10, 26:25, 27:2, 27:8, 28:2, 28:3, 28:19, 29:5, 31:23, 31:25, 32:4, 32:12, 36:5, 36:9, 36:12, 36:13, 36:17, 38:19, 38:25, 39:11, 39:13, 39:15, 41:1, 41:9, 42:16, 47:19, 48:3, 49:2, 49:7
**TRANSOCEAN'S** [1] - 12:5
**Transocean's** [13] - 13:9, 16:3, 21:9, 21:17, 26:4, 27:23, 28:1, 31:17, 32:7, 32:19, 40:23, 41:25
**treats** [1] - 32:19
**trial** [7] - 30:19, 31:4, 31:13, 31:16, 34:19, 42:21
**trials** [1] - 48:13
**tried** [1] - 36:12
**trouble** [1] - 14:14
**true** [6] - 18:4, 18:6, 34:4, 41:4, 46:19, 50:15
**try** [2] - 27:18, 44:3
**trying** [2] - 29:23, 48:1
**TSEKERIDES** [1] - 10:9
**Tug** [1] - 45:15
**turn** [3] - 19:9, 20:24, 21:13
**two** [10] - 14:10, 15:17, 17:8, 18:15, 18:16, 20:23, 35:16, 43:24, 46:17, 49:9
**TX** [11] - 3:4, 3:8, 4:22, 6:16, 6:19, 6:23, 7:25, 8:14, 8:18, 9:13, 10:22
**type** [3] - 23:24, 26:9, 48:17

**types** [3] - 25:12, 43:2, 48:8

**U**

**U.S** [3] - 5:20, 6:4, 9:20
**ultimate** [1] - 34:15
**ultimately** [1] - 17:8
**uncontrolled** [1] - 24:11
**under** [17] - 17:16, 20:2, 26:13, 27:3, 30:5, 32:5, 33:21, 33:24, 35:3, 38:20, 39:15, 40:7, 42:7, 46:11, 47:16, 49:10
**UNDERHILL** [1] - 5:21
**understood** [2] - 44:7, 49:25
**undertakings** [1] - 47:25
**underwater** [4] - 14:5, 19:15, 27:9, 27:14
**UNDERWRITERS** [1] - 9:16
**undisputed** [3] - 17:21, 18:16, 23:18
**unenforceable** [1] - 15:20
**unfortunately** [1] - 33:21
**UNITED** [3] - 1:1, 1:13, 6:3
**United** [15] - 23:12, 25:2, 25:8, 31:19, 38:17, 40:19, 40:21, 40:23, 40:24, 41:2, 41:11, 41:16, 41:24, 50:14, 50:22
**UNIVERSITY** [1] - 11:3
**unless** [5] - 19:22, 21:9, 21:11, 21:22, 48:18
**unlike** [1] - 32:10
**unlimited** [1] - 19:23
**unquote** [2] - 22:13, 22:14
**unseaworthiness** [3] - 19:3, 19:19, 20:8
**up** [8] - 13:9, 14:18, 14:20, 27:17, 27:18, 28:6, 31:13, 34:22
**USA** [1] - 35:9
**uses** [5] - 19:14, 19:15, 19:20, 22:12, 27:22
**utter** [1] - 31:1

**V**

**VA** [1] - 2:5
**valid** [1] - 35:1
**variety** [1] - 19:4
**various** [2] - 31:1, 31:16
**versus** [8] - 16:22, 26:11, 29:25, 35:15, 41:13, 41:22, 44:10
**vessel** [6] - 18:9, 24:21, 34:21, 35:14, 39:7
**VICKERY** [1] - 6:21
**view** [1] - 31:20
**violation** [1] - 38:24
**violations** [1] - 41:17
**violator** [2] - 44:11
**vis-à-vis** [1] - 16:13
**void** [2] - 17:7, 33:12

**W**

**wait** [5] - 44:8, 45:24, 46:1, 46:5, 46:11
**waiver** [2] - 33:11
**WALKER** [2] - 2:3, 9:21
**WALTHER** [1] - 8:7
**wanton** [2] - 29:20, 29:24
**wants** [2] - 13:24, 28:4
**WARE** [1] - 10:12
**WARREN** [1] - 9:4
**WASHINGTON** [4] - 6:5, 7:22, 8:5, 9:5
**Water** [20] - 25:11, 27:12, 32:5, 38:20, 38:21, 39:3, 39:5, 39:9, 39:12, 39:16, 42:1, 42:18, 43:18, 43:25, 44:22, 45:3, 45:9, 45:11, 46:7, 46:20
**water** [5] - 27:1, 27:7, 39:1, 39:16
**waterline** [4] - 26:20, 26:21, 27:13, 49:4
**WATERSIDE** [1] - 2:4
**WATTS** [1] - 3:6
**Wave** [1] - 50:2
**wearing** [2] - 49:14, 49:18
**WEATHERFORD** [1] - 9:20
**weeks** [1] - 31:9
**WEIGEL** [1] - 10:17
**weigh** [2] - 46:1, 46:2

**weighed** [1] - 25:3
**WEIL** [1] - 10:8
**WEINER** [1] - 8:22
**WEITZ** [1] - 3:10
**whatsoever** [1] - 33:21
**WHEREUPON** [1] - 50:7
**WHICH** [2] - 12:7, 12:8
**white** [2] - 49:15, 49:16
**WHITELEY** [1] - 5:12
**whole** [2] - 19:24, 41:14
**willful** [17] - 15:1, 25:18, 29:22, 29:24, 30:4, 30:17, 30:24, 31:18, 31:25, 42:22, 42:23, 43:3, 43:10, 43:16, 43:19, 44:2, 46:7
**willfully** [1] - 29:20
**WILLIAM** [2] - 9:21, 10:21
**WILLIAMS** [3] - 4:17, 4:18, 6:21
**WILLIAMSON** [2] - 3:2, 3:3
**window** [1] - 48:13
**WINFIELD** [1] - 5:8
**WITTMANN** [2] - 8:7, 8:8
**WOODWAY** [1] - 6:19
**word** [5] - 14:4, 21:22, 22:8, 22:9, 37:14
**words** [6] - 17:1, 25:17, 28:4, 30:14, 32:18, 43:22
**WORLDWIDE** [1] - 10:5
**wrap** [1] - 27:18
**WRIGHT** [1] - 1:18
**written** [1] - 49:7

**Y**

**year** [2] - 36:10, 36:15
**years** [2] - 48:12, 48:21
**yield** [1] - 40:5
**YOAKUM** [1] - 3:3
**YORK** [4] - 3:11, 8:17, 10:10, 10:18

**"**

**"MIKE"** [1] - 8:4