# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * * * * | MDL NO. 2179 SECTION: J JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |
| THIS DOCUMENT RELATES TO ALL ACTIONS | * * * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### BP'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL HALLIBURTON ENERGY SERVICES, INC. TO PRODUCE DOCUMENTS WRONGFULLY WITHHELD

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312- 862-2000 (Tel)
312- 862-2200 (Fax)

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
504 -581-7979 (Tel.)
504 -556-4108 (Fax)

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202- 662-5985 (Tel.)

*Attorneys for BP Exploration & Production Company and BP America Production Company*

## INTRODUCTION

Halliburton's Opposition rests on a fundamental assumption that has marked Halliburton's approach to this dispute from the outset — that documents must be presumed to be privileged, if Halliburton counsel proclaims them to be privileged.

This fundamental assumption is contrary to settled law, which holds that parties making privilege claims bear the burden of establishing a privilege with "specific and precise" facts supported by competent evidence. Here, the limited quantity of true "evidence" Halliburton cites falls well short of successfully carrying such a burden.

Moreover, it is particularly important here that Halliburton satisfy its burden and that the Court's September 27, 2011 Order be enforced. As described in BP's opening submission, Halliburton previously stated to this Court that post-incident activities relating to an analysis of Sperry data and hydrocarbon zones conducted by Halliburton's Roland Chemali fell "squarely within work-product protection as [such activities were] performed at the direction of counsel in preparation of litigation." *See* Ex. A (9/8/2011 Halliburton Resp. to BP's Mot. to Compel Investigative Materials at 4). In fact, those statements turned out not to be accurate, and we now know that none of Mr. Chemali's post-incident activities were conducted at the direction of counsel. *See* Ex. B (10/4/2011 e-mail from J. Martinez to Judge Shushan *et al.*). Had the Court not required Halliburton to produce evidence substantiating its assertions about Mr. Chemali's post-incident activities, it is unlikely that the facts about the unprivileged nature of this work would have emerged.

Under such circumstances, it is critical that Halliburton be held to its burden of proof and be required to provide proper substantiation for withholding documents on work-product grounds. (To be clear, BP does *not* seek to compel the production of documents withheld based on the attorney-client privilege.) The balance of this reply thus consists of three parts. Part I demonstrates that, notwithstanding Halliburton's contrary assertions, there is no genuine dispute that the Ferguson Affidavit lacks the specificity required for this Court to fairly assess

Halliburton's blanket work product assertions.  Part II shows the insufficiency of Halliburton's excuses for failing to provide adequate, competent evidence for its assertions.  Part III rebuts Halliburton's specific contentions with respect to documents reflecting post-incident activities undertaken by Ronald Sweatman, Thomas Roth, and Anthony Badalamenti.

For all the reasons below, Halliburton should not be allowed to evade its discovery obligations.  Fundamental fairness demands that that, when properly called to do so, parties invoking the work product doctrine must come forward with ***competent evidence*** that ***corroborates*** the proper application of the doctrine.

## ARGUMENT

### I.      There Is No Genuine Dispute that the Ferguson Affidavit Lacks the Requisite Specificity.

There is nothing "detailed" about the contents of the Ferguson affidavit.  *Compare, e.g.*, Halliburton's Opp'n to BP's Mot. to Compel Halliburton to Produce Documents Wrongfully Withheld (hereinafter "Opp'n") at 5 (Dkt. 4935) (asserting the Affidavit provides "detailed examples" of materials claimed to be subject to work product immunity). ███████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██

There can be no genuine dispute that Mr. Ferguson's Affidavit fails to contain basic information concerning activities Halliburton contends are subject to the work product

protection. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

## II.     Neither of Halliburton's Two Excuses Justify Its Failure to Provide the Required Specificity.

Halliburton would justify the lack of substantive information in the Ferguson Affidavit on two grounds:  (1) the Court's September 27, 2011 Order supposedly did not require Halliburton to demonstrate that the disputed activities were conducted in "anticipation of litigation;" and (2) requiring Halliburton to provide further specificity beyond the scant information in the Ferguson Affidavit would supposedly place Halliburton in jeopardy of revealing privileged attorney-client communications and/or work product information.  Halliburton is wrong on both points.

Halliburton first attempts to justify its failure to provide a detailed affidavit on grounds that this Court's September 27, 2011 Order required only that Halliburton provide a demonstration that its post-incident activities were undertaken at the "direction of counsel" — but not also a demonstration that such activities were conducted in "anticipation of litigation." *See* Opp'n at 5-6 (arguing that the cases cited by BP do not apply because they purportedly address only the requirement to prove "anticipation of litigation").

But, by Halliburton's own admission, settled law requires that parties asserting work product immunity establish that the documents they have withheld were created in anticipation of litigation.  *See id*. at 4 ("[A] party asserting work-product protection ***must*** establish . . . [that

3

the] primary motivating purpose behind creating the document [was] anticipation of litigation.") (emphasis added). Moreover, Halliburton further admits that this requires evidence that preparation for litigation was "the primary motivating purpose" behind the creation of the documents, as opposed to some other non-litigation or business-related purpose. *See id.* at 6.

In other words, the law requires (1) that any withheld documents have been created at the direction of counsel; (2) that any such documents have been created in anticipation of litigation; and (3) that this "in anticipation of litigation" element be established via proof that the primary motivating purpose behind the individual document's creation was to aid in litigation. *See Elec. Data Sys. Corp. v. Steingraber*, No. 4:02 CV 225, 2003 WL 21653414, at *5 (E.D. Tex. July 9, 2003); *see also Carroll v. Praxair, Inc.*, No. 2:05-cv-307, 2006 WL 1793656, at*1 (W.D. La. June 28, 2006) ("The party seeking protection from work-product doctrine has burden of proving documents were prepared in anticipation of litigation."); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 649 (D. Kan. 2004) (party asserting work product immunity "must provide sufficient information to enable the court to determine whether ***each element*** of the asserted [] immunity is satisfied") (emphasis added).

Against this legal backdrop, this Court plainly predicated its September 27, 2011 Order on Halliburton's obligations to satisfy ***both*** elements of the work product doctrine. Indeed, last summer, in seeking to compel Halliburton to produce its post-incident investigative materials, BP specifically argued that it was Halliburton's burden to establish that the relevant documents were created in anticipation of litigation. *See* Ex. D (BP's Aug. 29, 2011 Letter Br. to Judge Shushan at 9; *see also* Ex. E (BP's Sept. 16, 2011 Reply Br. to Judge Shushan in Supp. of an Order Compelling Halliburton to Provide Documents and Witnesses Relating to Post-Incident Investigations Not Performed at the Direction of Counsel) at 5. Notably, the Court expressly

referenced cases cited in BP's briefing in issuing in its September 27, 2011 Order requiring Halliburton to provide affidavits specifically demonstrating the applicability of the work product doctrine.  *See* Ex. F (Sept. 27, 2011 Order Regarding BP's Motion to Compel Halliburton Investigation Materials) (hereinafter, the "September 27 Order"), at 4 (*citing Evans v. United Fire & Casualty Ins. Co.*, 2007 WL 23223363, at *3 (E.D. La. Aug. 9, 2007); *Hodges, Grant & Kaufman v. United States*, 768 F.2d 719 (5th Cir. 1985); *Pacamor Bearings, Inc. v. Minebea Co.*, 918 F. Supp. 491, 513 (D.N.H. 1996)).  Accordingly, there is no basis for suggesting that the Court's September 27, 2011 Order somehow relieves Halliburton from establishing "anticipation of litigation."

Despite having failed to provide basic information concerning its purportedly privileged activities, Halliburton next argues that "any further probe into such work would reveal HESI's privileged attorney-client communications and the very work product that is protected."  *See* Opp'n at 6.  But BP does not (and never has) argued that Halliburton must reveal the substantive inner details of its purportedly privileged activities.  Rather, the basic information BP contends is required (but which Halliburton has declined to provide) consists of the following:  (1) which Halliburton employees purportedly conducted post-incident activities at the direction of counsel; (2) when those activities were purportedly conducted; and (3) the specific purpose for which they were undertaken.  *See* BP's Mem. in Supp. of Mot. to Compel Halliburton Energy Services, Inc. to Produce Documents Wrongfully Withheld at 5; *see also* Ex. G (12/6/2011 BP letter to Halliburton).

Obviously, requiring Halliburton to provide affidavits stating the dates that purportedly privileged work was conducted and identifying the names of Halliburton employees who performed purportedly privileged work would not reveal protected attorney-client

communications or any work product itself.  Halliburton's protestations to the contrary are unpersuasive, given that Halliburton's claims to have already disclosed this very information in privilege logs (*see* Opp'n at 7)— even though the logs themselves do not constitute "evidence." *See Evans v. United Fire & Cas. Ins. Co.*, Civil Action No. 06-6783, 2007 WL 2323363, at *4 (E.D. La. Aug. 9, 2007) ("The mere assertion of a lawyer in [an] opposition memorandum or in [a] privilege log that materials were prepared in anticipation of litigation is not evidence sufficient to bear the burden.").

Indeed, under Halliburton's approach, Halliburton could well withhold almost *any* material created by *any* Halliburton employee or consultant at *any* time since April 20, 2010 for *any* purpose regarding *any* subject matter, based solely on broad identifications of "examples" of purportedly protected work product, such as those found in the Ferguson Affidavit.  *See* Ex. C (Ferguson Aff. ¶ 6(D)).  Clearly, the law does not permit such a result.  *See Nutmeg Ins. Co. v. Atwell, Vogel & Sterling*, 120 F.R.D. 504, 510 (W.D. La. 1988) (holding general allegations of work product insufficient); *Caruso v. Coleman Co.*, Civ. A. No. 93-CV-6733, 1995 WL 384602, at *1 (E.D. Pa. June 22, 1995) (party asserting work product must provide "detailed affidavits" or similar evidence); *Pippenger v. Gruppe*, 883 F. Supp. 1201, 1212 (S.D. Ind. 1994) (same); *Evans*, 2007 WL 2323363, at *3 ("The party resisting discovery cannot rely merely on a blanket assertion of privilege."); *Guardsmark, Inc. v. Blue Cross & Blue Shield*, 206 F.R.D. 202, 210 (W.D. Tenn. 2002) (rejecting work product claim based solely on conclusory assertions).

III.  **None of the Other Evidence Halliburton Cites Justifies Its Continued Withholding of Documents Reflecting the Post-Incident Activities of Ronald Sweatman, Thomas Roth, or Anthony Badalamenti.**

Contrary to Halliburton's claim, BP does not assert that "HESI employees could not perform post-incident activities at the direction of counsel and post-incident activities not at the direction of counsel."  *See* Opp'n'n at 8.  BP readily acknowledges that various Halliburton

employees may have conducted work in the ordinary course of business as well as work at the direction of counsel in anticipation of litigation. But what BP does insist is that it is Halliburton's burden to prove (and not just assert) that the documents it contends are covered by the work product doctrine merit such protection. Halliburton has failed to carry this burden for documents reflecting post-incident activities undertaken by Ronald Sweatman, Thomas Roth, and Anthony Badalamenti.

### A. Halliburton Has Failed to Substantiate A Work Product Immunity For Documents Reflecting Ronald Sweatman's Post-Incident Activities.

Halliburton has failed to identify any evidence that substantiates its assertion that after the April 20, 2010 incident Mr. Sweatman purportedly "did some work at the direction of counsel." *See* Opp'n at 9. Instead, Halliburton relies solely on assertions found in Halliburton's privilege logs. *See id*.

But Halliburton's privilege-log assertions do not constitute competent evidence, much less evidence demonstrating that the work product doctrine is a proper basis to withhold documents reflecting Mr. Sweatman's activities. *See Evans*, 2007 WL 2323363, at *4 ("The mere assertion of a lawyer in [an] opposition memorandum or in a privilege log that materials were prepared in anticipation of litigation is not evidence sufficient to bear the burden."). And significantly, Halliburton offers nothing further — no deposition testimony, no affidavit testimony, and no contemporaneous documentary evidence — to establish that any of Mr. Sweatman's post-incident activities were undertaken at the direction of counsel or to establish that the primary motivation behind Mr. Sweatman's post-incident activities was to aid the defense of litigation. Accordingly, Halliburton should be required to produce all documents reflecting Mr. Sweatman's post-incident activities withheld solely on work product grounds.

**B.** **Halliburton Has Failed to Substantiate A Work Product Immunity For Documents Reflecting Thomas Roth's Post-Incident Activities.**

To justify withholding documents reflecting Thomas Roth's post-incident activities under the work product doctrine, Halliburton cites three pieces of evidence:  (1) testimony by Tim Probert that Mr. Roth assisted Mr. Probert in preparing to testify before Congress on May 11, 2010; (2) testimony by Mr. Roth that he made various presentations to congressional and industry groups in the period from July to September 2010; and (3) testimony by Mr. Roth that in early October 2010, his job responsibilities shifted from collecting information to report to the public to working "as a technical consultant with the [Halliburton] legal department."  *See* Opp'n at 9-10.  Although these bases for withholding documents could suffice, if properly supported, the evidence Halliburton cites fails adequately to establish the factual underpinnings required for work product protection.

### 1. Mr. Roth's Activities Conducted Before October 2010

None of the deposition testimony Halliburton cites demonstrates that anything Mr. Roth did before October 2010 was done at the direction of counsel, much less in anticipation of litigation.  For example, none of the deposition testimony shows that the primary motivating purpose behind Mr. Roth's activities in this time period was to aid in the defense of litigation rather than to serve non-litigation objectives.  *See* Ex. H (Probert Dep. Tr. at 289:3-16); Ex. I (Roth Dep. Tr. at 30:13-33:14).  Similarly, neither Mr. Probert's generic testimony that Mr. Roth was involved in helping him prepare to testify before Congress, nor Mr. Roth's testimony that he met with congressional and industry leaders in the summer of 2010, constitute an assertion of the essential element that Mr. Roth engaged in those activities at the direction of counsel.  *See* Ex. H (Probert Dep. Tr. at 289:3-16) (making no mention of any directives by counsel); Ex. I (Roth Dep. Tr. at 30:13-33:14) (making no mention of any directives by counsel).  If anything, Mr.

Roth's testimony that in early October 2010, his role shifted from collecting facts to provide to the public to working with Halliburton's legal department indicates that, before October 2010, Mr. Roth's activities were not performed for the primary purpose of preparing for litigation.

To be clear, BP readily acknowledges that a work product privilege may properly apply to the activities of employees undertaken at the direction of counsel that involve preparing witnesses and draft presentation materials in the context of a governmental or Congressional investigation conducted in the course of anticipated or ongoing litigation. But the crucial point here is that the factual underpinnings of such work product protection cannot be assumed, but must be provided. Here, as the party asserting the privilege, Halliburton was required — but failed — to establish those requisite underpinnings with competent evidence.

## 2.     Mr. Roth's Activities Commencing in October 2010

Even with respect to Mr. Roth's activities beginning in October 2010, the conclusory testimony cited by Halliburton does not itself establish that work product immunity applies to any of Mr. Roth's activities in that period. The work product doctrine "is not an umbrella that shades all materials prepared by a lawyer, or agent of the client." *See Steingraber*, No. 4:02 CV 225, 2003 WL 21653414, at *4. Here, neither the cited testimony nor the Ferguson Affidavit contain facts sufficient to enable the Court to conclude that the primary motivating purpose for any of Mr. Roth's activities was to prepare for litigation. Accordingly, while some of Mr. Roth's activities commencing in October 2010 could well be subject to work product immunity, Halliburton has failed to present evidence sufficient to enable the Court or BP adequately to assess the extent to which work product immunity may or may not apply to the post-October 2010 documents Halliburton is withholding.

**C.      Halliburton Has Failed to Substantiate A Work Product Immunity For Documents Reflecting Anthony Badalamenti's Post-Incident Activities.**

To substantiate its assertion of work product immunity over documents reflecting Mr. Badalamenti's post-incident activities, Halliburton cites privilege-log entries and deposition testimony that Mr. Badalamenti assisted Tim Probert to prepare for Congressional testimony. *See* Opp'n at 10.  But, as stated earlier, Halliburton's privilege logs are not evidence capable of substantiating any privilege or immunity.  *See Evans*, 2007 WL 2323363, at *4.  Moreover, there is no evidence in the cited deposition testimony (or in the Ferguson Affidavit) that substantiates Halliburton's claim that Mr. Badalamenti conducted post-incident activities involving preparation of testimony at the direction of counsel and with the primary motivation of assisting in the defense of litigation (as opposed to a non-litigation or business-related objective).

In short, although Mr. Badalamenti's post-incident activities might well merit work product protection if it were substantiated that the activities were undertaken at the direction of counsel and in aid of litigation, here this essential substantiation is lacking.  Accordingly, Halliburton should be required to produce documents reflecting Mr. Badalamenti's post-incident activities withheld solely on work product grounds.

## CONCLUSION

For all of the foregoing reasons, BP respectfully requests an order requiring Halliburton to produce all post-incident investigative materials it continues to withhold improperly based solely on unsubstantiated work product assertions.


Dated: December 23, 2011                              Respectfully submitted,

                                                      /s/ Don K. Haycraft
                                                      Don K. Haycraft (Bar #14361)
                                                      R. Keith Jarrett (Bar #16984)
                                                      Liskow & Lewis
                                                      701 Poydras Street, Suite 5000
                                                      New Orleans, Louisiana 70139-5099
                                                      504 -581-7979 (Tel.)
                                                      504 -556-4108 (Fax)

                                                      and

                                                      Richard C. Godfrey, P.C.
                                                      J. Andrew Langan, P.C.
                                                      Kirkland & Ellis LLP
                                                      300 North LaSalle Street
                                                      Chicago, IL 60654
                                                      312- 862-2000 (Tel)
                                                      312- 862-2200 (Fax)


                                                      Robert C. "Mike" Brock
                                                      Covington & Burling LLP
                                                      1201 Pennsylvania Avenue, NW
                                                      Washington, DC 20004-2401
                                                      202- 662-5985 (Tel.)

                                                      ***Attorneys for BP Exploration &***
                                                      ***Production Company and BP America***
                                                      ***Production Company***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 23rd day of December, 2011.

/s/ Don K. Haycraft

Don K. Haycraft