# Exhibit E

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C.  20005

Barbara M. Harding
To Call Writer Directly:                                    (202) 879-5000                                    Facsimile:
(202) 879-5081                                                                                                (202) 879-5200
barbara.harding@kirkland.com                          www.kirkland.com

September 16, 2011

**Via E-Mail (Sally_Shushan@laed.uscourts.gov)**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the Eastern
District of Louisiana
500 Poydras Street, Room B-345
New Orleans, LA 70130

> Re:    In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico,
>        on April 20, 2010, MDL No. 2179

Dear Judge Shushan:

BP respectfully submits this reply to Halliburton's September 8, 2011 letter opposing BP's Motion to Compel documents and witnesses relating to post-incident investigations conducted by Halliburton employees concerning the *Deepwater Horizon* incident.

As explained in greater detail below, Halliburton has failed to meet its burden to establish that the post-incident investigative activities of Halliburton engineers and technical personnel are entitled to work product immunity.  In its August 29, 2011 letter, BP raised serious questions concerning Halliburton's assertion of work product immunity over hundreds of documents created by Halliburton engineers and technical personnel related to their post-incident work.  In response, Halliburton has offered **no evidence** to warrant shielding any post-incident investigative materials from discovery.  Nor has Halliburton even attempted to clearly define just what post-incident activities it contends were conducted in anticipation of litigation.  Instead, Halliburton has tried to divert the Court's attention and to obfuscate the issues by proclaiming that it has already produced documents reflecting its employees' non-privileged, post-incident investigative activities and by continuing to deny that there ever was an official Halliburton "investigation" into the cause of the Macondo incident.

None of Halliburton's arguments entitle it to withhold documents for which there is no evidence of any privilege or to insulate from deposition fact witnesses who clearly possess relevant knowledge.  Furthermore, because Halliburton has not formally revised its privilege logs to withdraw any of its unfounded claims of privilege (and has, in fact, continued to assert work

Chicago       Hong Kong       London       Los Angeles       Munich       New York       Palo Alto       San Francisco       Shanghai

Honorable Sally Shushan
September 16, 2011
Page 2

product where it does not apply), it is incorrect that "[t]he majority of BP's August 29, 2011 letter . . . concerns issues that have already been resolved or are not in dispute."  *See* 9/8/2011 Halliburton letter at 1.  For all of these reasons (discussed further below), BP is entitled to the order it seeks (1) finding that Halliburton has failed to establish work product immunity over documents reflecting the post-incident investigative activities of its engineers and technical personnel, and (2) compelling Halliburton to produce Marc Edwards, Ronald Sweatman, Roland Chemali, and Anthony Badalamenti for deposition concerning their participation in such activities.

**I.      Halliburton Has Failed to Carry Its Burden to Establish Work Product Immunity Over the Post-Incident Investigative Activities of Certain Engineers and Technical Personnel.**

As stated in BP's August 29, 2011 letter, Halliburton bears the burden to prove that the work product doctrine applies to any post-incident activities conducted by its engineers and technical personnel, regardless of whether or not Halliburton characterizes those activities as an "investigation."  *See Carroll v. Praxair, Inc.*, No. 2:05-cv-307, 2006 WL 1793656, at *1 (W.D. La. June 28, 2006) ("The party who [seeks] the protection of the work-product doctrine has the burden of proving that the documents were prepared in anticipation of litigation."); *see also Nutmeg Ins. Co. v. Atwell, Vogel & Sterling*, 120 F.R.D. 504, 510 (W.D. La. 1988) ("In considering whether a proponent of the [work product] privilege is entitled to protection, the courts must place the burden of proof squarely upon the party asserting privilege.").  For the reasons discussed next, Halliburton has failed to carry that burden with respect to the disputed post-incident investigative activities of Halliburton engineers and technical personnel.

**A.      The Post-Incident Investigative Activities of Halliburton Engineers and Technical Personnel Referenced in Ronald Sweatman's May 22, 2010 E-Mail Were Not Conducted in Anticipation of Litigation.**

Halliburton admits that the post-incident investigative activities referenced in Ronald Sweatman's May 22, 2010 e-mail were not conducted at the direction of counsel and are therefore not entitled to work product protection.  *See* 9/8/2011 Halliburton letter at 2 (admitting that a team consisting of Ronald Sweatman, Tommy Roth, Anthony Badalamenti, Simon Turton, and other technical personnel was organized "to investigate certain issues related to the Macondo incident" and that "this effort was initiated by a few individuals within HESI and not [done] at the request of the company").  Accordingly, no work product protection extends to the post-incident investigative activities of the technical team referenced in Mr. Sweatman's May 22, 2010 e-mail, which includes the following activities by investigation team members:

- fact-gathering or investigation concerning any matter referenced in Mr. Sweatman's May 22, 2010 e-mail (*see* BP Ex. 1);[1]

- review or collection of WellCat input data and results (*see id.*);

---

[1] Any reference to BP Exs. 1-22 are to the exhibits attached to BP's August 29, 2011 letter.

Honorable Sally Shushan
September 16, 2011
Page 3

- analyses concerning any matter referenced in Mr. Sweatman's May 22, 2010 e-mail, including analyses regarding how the kick occurred (*see id.*); and

- modeling of gas flow conditions for purposes of "simulate[ing] the gas kick to help [] better understand the situation" (*see id*).

Even though Halliburton admits these activities were not conducted in anticipation of litigation, it argues that no order compelling it to produce documents is necessary because it has already produced *some* documents related to what it calls "Non-Privileged Post-Incident Activities" and has agreed to search for and produce any additional "inadvertently withheld" documents related to such "Non-Privileged Post-Incident Activities." *See* 9/8/2011 Halliburton letter at 5-6. However, Halliburton's privilege logs remain replete with entries representing documents created by Ronald Sweatman, Tommy Roth, Anthony Badalamenti, Simon Turton, and other technical personnel identified in Mr. Sweatman's May 22, 2010 e-mail who admittedly conducted post-incident investigative activities **not at the direction of counsel**. *See*, *e.g.*, BP Ex. 15(f) (Halliburton Privilege Log Entry Nos. 396, 426, 441, 442, 449, 506, 507, 552, 553, 559,560, 563, 573, 574, 685, 686, 696, 697, 699, 751, 752, 794, 891, 1057, 1074, 1109, 1110, 1143, 1144, 1145, 1146, 1147, 1148, 1149, 1150, 1151, 1152, 1153, 1154, 1155, 1156, 1157, 1158, 1159, 1160, 1161, 1162, 1163, 1164, 1165, 1166, 1167, 1168, 1169, 1170, 1171, 1172, 1173, 1174, 1175, 1176, 1288, 1289, 1290, 1291).

Furthermore, while Halliburton has made certain recent productions (including a production made on September 9, 2011 consisting of approximately 78,000 pages of post-incident investigative materials, which encompassed nearly 2,600 documents previously-withheld from the files of Ronald Sweatman),[2] it continues to withhold other post-incident investigation materials without clear explanation (*see infra*) and to assert work product immunity to shield documents not entitled to protection. For instance, as recently as September 3, 2011, Halliburton attempted to "clawback" documents consisting of communications between Dr. Kris Ravi and Halliburton employees related to disputed post-incident investigative activities on grounds of purported work product. *See* Ex. 24 (9/3/2011 Halliburton "clawback" letter); Ex. 25 (8/26/2011 Halliburton "clawback" letter). However, the documents Halliburton sought to "clawback" included no attorney as a sender or recipient of the subject communications; contained no indication that any attorney directed or controlled the subject communications or analyses; and contained no other marking or indication of attorney work product or attorney-client privilege. *See*, *e.g.*, Ex. 26 (HAL_0579568). Accordingly, during the parties' subsequent "meet and confer" concerning these documents, BP explained that, at a very minimum, Halliburton needed to confirm in writing that the disputed documents were, in fact, created at the direction of counsel in anticipation of litigation. Ultimately, Halliburton could not do that for several of the disputed documents and therefore had no choice but to withdraw its purported work product claim as to these post-incident investigative materials. *See* Ex. 27 (9/13/2011 Halliburton letter).

---

[2] *See* Ex. 23 (9/14/2011 e-mail from C. Raines to P. Chen).

Honorable Sally Shushan
September 16, 2011
Page 4

Thus, regardless of what documents Halliburton claims to have recently produced in its September 8, 2011 letter opposing BP's Motion to Compel, it is now unavoidably apparent that Halliburton withheld from BP **_thousands_** of documents reflecting its employees' post-incident investigative activities based on unfounded claims of work product **_for the entire period of Phase One fact discovery_** and continues to attempt to shield documents without adequate justification. Needless to say, Halliburton's failure to fairly apply the work product doctrine has deprived BP of timely access to vast amounts of highly-relevant information and data, which would have informed and guided BP's efforts to discover and obtain further potentially exculpatory evidence in this matter.

Indeed, it bears noting that Halliburton did not undertake to produce documents improperly withheld based on unfounded claims of work product until BP threatened to move to compel. Moreover, even now that Halliburton acknowledges having improperly withheld documents based on unfounded claims of work product, BP still does not know (1) just which documents Halliburton contends fall within the category of "Non-Privileged Post-Incident Activities" and which documents Halliburton contends do not, (2) how many additional "inadvertently withheld" documents Halliburton intends to produce, or (3) by when Halliburton intends to complete its production of improperly-withheld documents reflecting the post-incident investigative activities of its employees. Given the paucity of substantive information provided by Halliburton concerning the scope of its work product privilege assertions and the extent of highly-relevant, non-privileged information Halliburton has improperly shielded from BP to date, BP should not now be denied relief merely because Halliburton has promised belatedly to comply with discovery obligations it should have honored long ago.

On the contrary, BP is entitled to the benefit and protection of an order compelling Halliburton to produce by a date certain **_all_** improperly withheld documents reflecting the post-incident investigative activities of its engineers and technical personnel. As discussed next, this includes documents reflecting the post-incident investigative activities that Halliburton contends —but has failed to support— were conducted in anticipation of litigation.

**B.      There Is No Evidence That Any Post-Incident Investigative Activities By Halliburton Technical Personnel Were Conducted at the Direction of Counsel.**

With respect to any post-incident investigative activities that Halliburton claims to have been undertaken at the direction of counsel, there is no adequate showing on this record that such activities are entitled to work product protection. As mentioned above, the burden of establishing the privilege belongs to Halliburton. Ordinarily, satisfying that burden requires that a party establish the factual underpinnings for the privilege claim through competent evidence:

> "[T]he proponent must substantiate all [f]actual assertions about the [work product] claim. This is usually done through supporting affidavits from individuals with personal knowledge of the relevant facts, exhibits attached to the motion and briefs, discovery responses, pleadings and other undisputed facts. . . .

Honorable Sally Shushan
September 16, 2011
Page 5

> To the extent that evidentiary support for the factual basis of the privilege is not
> forthcoming, the claim is little more than a bald, conclusory [] assertion.  The
> court will deny such an assertion because it forecloses meaningful independent
> inquiry by the finder of facts (the judge) into the validity of the claim. . . .
> Although an attorney's word may be 'taken on its face,' a privilege claim is not
> self-executing.  It requires more proof than a conclusion by the party asserting the
> claim (or his attorney) that it is justified."

*Evans v. United Fire & Casualty Ins. Co*., No. 06-6783, 2007 WL 2323363, at *3 (E.D. La. Aug.
9, 2007) (emphasis added); *see also Nutmeg Ins.*, 120 F.R.D. at 510 ("[T]he proponent must
provide the court with enough information to enable the court to determine privilege, and the
proponent must show by affidavit that precise facts exist to support the claim of privilege.").
Accordingly, conclusory statements that the materials in question were prepared in anticipation
of litigation are not sufficient to bear the burden.  *See Evans*, 2007 WL 2323363, at *3 (party
"cannot rely merely on blanket assertion of privilege"); *Nutmeg Ins.*, 120 F.R.D. at 510 ("A
general allegation is insufficient").

Here, Halliburton has provided the Court almost no substantive information concerning
what Halliburton contends *is* subject to the work product doctrine.  Indeed, Halliburton
proclaims that "[d]ocuments relating to activities HESI undertook post-incident at the direction
of counsel are privileged" (*see* 9/8/2011 letter at 2) and that "[a]ny privileged post-incident
activity conducted by HESI . . . was done at the direction of counsel."  *See id*. at 3.  But
Halliburton never even attempts to describe or specify just what these purportedly privileged
activities consist of, except to refer in passing to certain analysis of Sperry data and hydrocarbon
zones by Roland Chemali that Halliburton contends was performed "at the direction of counsel
in preparation for litigation."  *See id*. at 3-4.  And, because Halliburton provides virtually no
information concerning the activities it contends are privileged, neither BP nor the Court can
effectively differentiate between any such purportedly privileged activities and the activities that
Halliburton admits were not conducted in anticipation of litigation.  Halliburton has thus failed to
provide "sufficient information to enable the court to determine whether each element of the
asserted privilege or immunity is satisfied."  *See Sonnino v. University of Kansas Hosp*., 220
F.R.D. 633, 649 (D. Kan. 2004) ("A 'blanket claim' as to the applicability of the privilege or
work product protection does not satisfy the burden of proof.").

Furthermore, and even more importantly, Halliburton has offered **no evidence** that any
post-incident investigative activity conducted by Halliburton engineers or technical personnel
was done at the direction of counsel and primarily to prepare for litigation (as opposed to serve
any other non-litigation or business purpose).  *See* 9/8/2011 Halliburton letter and attachments.
Indeed, even with respect to Mr. Chemali's analysis of Sperry data and hydrocarbon zones,
Halliburton's only support for asserting work product is its counsel's statement that Mr.
Chemali's analysis "was performed at the direction of counsel in preparation for litigation."  *See
id*. at 4.  "The mere assertion of a lawyer in [a party's] opposition memorandum or in a privilege
log that materials were prepared in anticipation of litigation *is not evidence* sufficient to bear the
burden."  *See Evans v. United Fire & Casualty Ins. Co.*, No. 06-6783, 2007 WL 2323363, at *4

Honorable Sally Shushan
September 16, 2011
Page 6

(E.D. La. Aug. 9, 2007) (emphasis in original). And, there is nothing else —no affidavit or declaration from Mr. Chemali (or from anyone else), no deposition testimony, and no documentary evidence— to substantiate Halliburton's work product claim.

In short, Halliburton has failed to provide the Court with evidentiary proof of objective facts, via affidavits or other competent evidence, that any of the post-incident investigative materials it has withheld to date were prepared in anticipation of litigation.[3] The bare assertion of Halliburton's counsel that "any privileged post-incident activity conducted by HESI . . . was done at the direction of counsel" is simply not enough to satisfy Halliburton's burden here. *See Nutmeg*, 120 F.R.D. at 509 ("A party may not simply claim that materials have been prepared in anticipation of litigation."); *Diamond State Ins. Co. v. Rebel Oil Co. Inc., et al.*, 157 F.R.D. 691, 699 (D. Nev. 1994) (self-serving conclusory statements not sufficient to satisfy party's burden to establish applicability of work product immunity); *Totaltape*, 135 F.R.D. at 201 (holding that party failed to meet burden that documents were work product because party resisting discovery failed to present affidavits or other evidentiary support for its contention that documents were prepared in anticipation of litigation).

Accordingly, for all of the foregoing reasons, BP is entitled to an order compelling Halliburton to produce all post-incident investigative materials for which Halliburton has failed to present evidence to substantiate its assertion of work product.

## II. BP Is Entitled to Depose Ronald Sweatman, Roland Chemali, Marc Edwards, and Anthony Badalamenti.

In light of the expedited schedule and volume of documents and issues involved in this litigation, BP fully recognizes that there will be some documents that are relevant that will be produced after the conclusion of the depositions of witnesses who might have knowledge relating to the documents. Indeed, due to the nature of the schedule and document production protocols in place in the litigation, BP and other parties have and likely will continue to produce some relevant documents located after depositions of witnesses with knowledge about the documents. But the problem BP complains of herein is different. It relates to Halliburton's wholesale withholding of its entire post-incident investigative files until essentially all other discovery is closed.

As described above, BP has been substantially prejudiced by Halliburton's failure to timely produce ***thousands*** of documents created by its engineers and technical personnel that Halliburton withheld during Phase One fact discovery on invalid work product grounds. *See supra* at 3. Although Halliburton has begun to produce some of these documents now, it is too late for BP to go back to ask witnesses it has already deposed about the contents of these documents or the circumstances surrounding them. Likewise, it is too late for BP to propound written discovery to Halliburton in light of these belatedly produced materials. Under these

---

[3] Halliburton's privilege logs provide only vague descriptions of the documents withheld, often failing to disclose the dates associated with them and describing them in ways that simply parrot the legal standard for work product immunity." *See* 8/29/2011 BP letter at 5; *see also* BP Ex. 15 to 8/29/2011 BP letter (Halliburton Privilege Logs).

Honorable Sally Shushan
September 16, 2011
Page 7

circumstances, fairness dictates that BP should be allowed the depositions it seeks to ameliorate at least some of the prejudice resulting from Halliburton's misapplication of the work product doctrine. Moreover, as discussed below, none of the arguments Halliburton makes to oppose the requested depositions supports any different conclusion.

**Ronald Sweatman**. Halliburton endeavors to downplay Mr. Sweatman's role in its post-incident investigative activities by claiming that BP seeks his deposition merely because "he was listed as a recipient on certain e-mail communications and discussions with Tommy Roth regarding certain calculations and potential modeling." *See* 9/8/2011 Halliburton letter at 4. However, far from being a mere recipient of certain e-mail communications and discussions with Tommy Roth, Mr. Sweatman appears (based on the documents) to have been a key member and leader of the team that Halliburton admits was "formed to investigate certain issues related to the Macondo incident" ***not at the direction of counsel***. *See* 9/8/2011 Halliburton letter at 2; *see also* BP Exs. 1, 6, and 9 to 8/29/2011 BP letter.

Furthermore, there is no merit to Halliburton's contention that Mr. Sweatman's deposition "would be duplicative of prior testimony, and unnecessary." *See* 9/8/2011 Halliburton letter at 4. According to Halliburton, this is because "[Tommy] Roth has already testified about his discussions with Mr. Sweatman regarding [Mr. Sweatman's post-incident calculations], and "Mr. Roth has further testified that any work Mr. Sweatman may have done on modeling was not part of any 'team.'" *See* 9/8/2011 Halliburton letter at 4. First, Halliburton has already admitted that the post-incident modeling with which Mr. Sweatman was involved was not conducted "at the request of the company" and is therefore not privileged. Accordingly, it is immaterial whether or not Mr. Sweatman conducted post-incident modeling as part of any "team." Second, contrary to Halliburton's contentions, Mr. Roth's deposition testimony underscores, not undermines, BP's reasons for seeking Mr. Sweatman's deposition. In particular, Mr. Roth testified that:

- He discussed Mr. Sweatman's post-incident calculations only "very briefly" with Mr. Sweatman (*see* Ex. 28 (7/25/2011 Roth Dep. at 125:4-7));

- He never saw Mr. Sweatman's calculations directly and does not know where they are currently located (*see id*. at 125:18-126:4); and

- He never saw any of the support for Mr. Sweatman's calculations or any of the data that Mr. Sweatman "used to reach those calculations" (*see id*. at 126:9-22).

As the foregoing makes clear, Mr. Roth did not (and could not) answer questions at his deposition about Mr. Sweatman's post-incident investigative activities, including about his post-incident calculations — the subject about which Halliburton claims Mr. Roth has already testified.

Finally, Mr. Roth's deposition occurred before BP had the benefit of obtaining and reviewing approximately 2,600 documents produced from the files of Mr. Sweatman by

Honorable Sally Shushan
September 16, 2011
Page 8

Halliburton only just last week. *See supra* at 3. Because none of these materials were made available to BP during the period of Phase One fact discovery, BP never had an opportunity to ask Mr. Roth (or other Phase One fact deponents) questions about these documents or the circumstances surrounding them. Likewise, BP never had the opportunity to propound written discovery upon Halliburton concerning these materials. This is prejudicial enough. In all fairness, BP should be permitted to depose Mr. Sweatman concerning any issue or matter addressed in the documents that Halliburton improperly withheld from BP until just last week.

**Roland Chemali**. Halliburton contends that BP is not entitled to depose Mr. Chemali "because any of his involvement relating to the *Deepwater Horizon* incident, and specifically relating to analysis of Sperry data and hydrocarbon zones, falls squarely within work product protection as it was performed at the direction of counsel in preparation for litigation." *See* 9/8/2011 Halliburton letter at 4. As stated earlier, Halliburton has failed to present *any* evidence that *any* post-incident activities conducted by Mr. Chemali were "performed at the direction of counsel in preparation for litigation." *See generally id.* And, Halliburton counsel's mere assertion that any of Mr. Chemali's post-incident activities were done at the direction of counsel "*is not evidence* sufficient to bear the burden." *See Evans*, 2007 WL 2323363, at *4. Indeed, many recently produced documents bearing Mr. Chemali's name reveal no such attorney involvement or any indication of confidentiality on the face of the documents. *See, e.g.*, Ex. 29 (HAL_1226360); Ex. 30 (HAL_1226375); Ex. 31 (HAL_1226401); Ex. 32 (HAL_1228020); Ex. 33 (HAL_1228022); Ex. 34 (HAL_1228025); Ex. 35 (HAL_1228029); Ex. 36 (HAL_1228032).

Furthermore, even if Halliburton could establish that Mr. Chemali conducted certain post-incident activities at the direction of counsel, such showing still would not warrant denying BP the requested deposition. As the Fifth Circuit noted in *In re International Systems and Controls Corp., Securities Litigation*, 693 F.2d 1235 (5th Cir.1982), "work-product immunity protects only the documents themselves and not the underlying facts." *Id.* at 1240. Indeed, "courts have consistently held that the work-product concept furnishes no shield against discovery, by interrogatories or by deposition, *of the facts* that the adverse party's lawyer has learned, or the persons from whom he has learned such facts, or the existence or non-existence of documents, even though the documents themselves may not be subject to discovery." *See Nutmeg*, 120 F.R.D. 504 at 509 (*citing* 8 Wright & Miller, *Federal Practice & Procedure* § 2023, at 194) (emphasis in original). Accordingly, Halliburton may not insulate Mr. Chemali from deposition concerning "facts" relevant to the subject matter of this litigation, even if (as Halliburton contends) "any of [Mr. Chemali's] involvement relating to the *Deepwater Horizon* incident . . . was [] at the direction of counsel in preparation for litigation."

**Marc Edwards**. Halliburton argues against Mr. Edwards' deposition on the ground that he is a senior executive with no personal knowledge of events relating to the *Deepwater Horizon* incident and "did not participate in any way in any alleged internal HESI investigation." *See* 9/8/2011 Halliburton letter at 4. But the documentary evidence directly refutes these assertions for which Halliburton has provided no evidentiary support. Indeed, on April 23, 2010, Mr. Edwards wrote an e-mail expressly noting his participation in a "thorough internal investigation" on the "cementing issue" conducted by Halliburton in the days immediately following the

Honorable Sally Shushan
September 16, 2011
Page 9

blowout.  *See* Ex. 37 (HAL_0753413) ("On the cementing issue, we did a thorough internal
investigation which has taken much of the last few days.").  In fairness, BP should be permitted
to take Mr. Edwards' deposition concerning the "thorough internal investigation" referenced in
his e-mail that Halliburton has denied ever even occurred.

Furthermore, additional justification for Mr. Edwards' deposition comes from documents
and testimony showing that:

- He participated in post-incident discussions regarding causes for the incident and
  potential flow paths (*see* Ex. 38 (HAL_1072346); Ex. 39 (HAL_1056808); Ex. 40
  (HAL_1056712));

- reviewed and edited cementing recommendations drafted by Tommy Roth in October
  2010 that were created based on Halliburton's post-incident investigation (*see* Ex. 41
  (7/26/2011 Roth Dep. Tr. at 783:12-788:7));

- worked post-incident on developing a stop work process for elevating concerns to an
  operator for issues like centralization and GFP (*see* Ex. 42 (HAL_0579779)); and

- instructed Halliburton on the position it should take in the litigation regarding indemnity
  (*see* Ex. 43 (HAL_1056695) (9/8/2010 e-mail from Mr. Edwards stating:  "I know this
  was our position initially as we needed to emphasize our indemnity position from a
  contractual perspective but I don't think it is required now.")).

Considered together, the facts and evidence cited above provide more than adequate
justification for Mr. Edwards' requested deposition.

**Anthony Badalamenti**.  Likewise, there is more than sufficient good cause for BP to
obtain Mr.  Badalamenti's deposition.  Mr. Badalamenti is specifically identified as a "key
member" of the team that Halliburton admits was "formed to investigate certain issues related to
the Macondo incident ***not at the direction of counsel*** and is included on numerous documents
that have been withheld on invalid work product grounds.  *See* 9/8/2011 Halliburton letter at 2;
*see also* BP Ex. 1 (May 22, 2010 Sweatman e-mail); BP Ex. 15(f) (Halliburton privilege log
withholding scores of Badalamenti documents).  As a "key" member of the non-privileged
investigation team referenced in Mr. Sweatman's May 22, 2010 e-mail, Mr. Badalamenti
participated in numerous highly-relevant post-incident investigative activities, including, but not
limited to:  efforts to model the gas kick (*see* BP Ex. 1); efforts to determine MC 252 cement
volume and height calculations (*see* Ex. 26 (HAL_0579568)); and analyses concerning the cause
of the *Deepwater Horizon* incident (*see* Ex. 44 (HAL_0579763)).  In addition, Dr. Kris Ravi
(another Halliburton employee involved in post-incident investigative activities) recently
testified that Mr. Badalamenti participated in meetings with Jesse Gagliano held in September
2010 to discuss BP's findings and conclusions in the Bly Report and to develop Halliburton's
response thereto.  *See* Ex. 45 (Ravi Dep. Tr. at 109:19-111:17; 129:6-24).  BP is entitled to
depose Mr. Badalamenti concerning any statements made by Mr. Gagliano to Mr. Badalamenti

Case 2:10-md-02179-CJB-SS   Document 4085-5   Filed 09/16/11   Page 11 of 11

Honorable Sally Shushan
September 16, 2011
Page 10

outside the presence of counsel and about any relevant facts Mr. Badalamenti may have learned from Mr. Gagliano during these meetings.  Moreover, the fact that Mr. Gagliano has asserted his Fifth Amendment Privilege and is thus unavailable to BP for deposition only further underscores BP's need for Mr. Badalamenti's deposition.

**III.      Conclusion**

For all of the foregoing reasons, as well as those in BP's August 29, 2011 letter, BP's Motion to Compel should be granted and an order issued (1) finding that Halliburton's post-incident investigative activities are not protected by the work product doctrine and (2) compelling Halliburton to produce Marc Edwards, Ronald Sweatman, Roland Chemali, and Anthony Badalamenti for deposition concerning their participation in such post-incident investigative activities.  BP has produced over a dozen witnesses who had no involvement in the planning or operation of the Macondo well and worked only on the investigation into the cause of the accident.  Fairness dictates that at least some of the employees from Halliburton who investigated the incident provide deposition testimony concerning the information they discovered during that investigation.

Sincerely,

/s/ Barbara M. Harding

Barbara M. Harding

BMH/djs