# EXHIBIT GG

**In Support of**

**Defendant Dril-Quip's Memorandum of Law in Support of Dril-Quip's Motion for Summary Judgment Against All Claims**

```
 1              UNITED STATES DISTRICT COURT

 2             EASTERN DISTRICT OF LOUISIANA

 3

 4
     IN RE:  OIL SPILL          MDL NO. 2179
 5   BY THE OIL RIG
     "DEEPWATER HORIZON"        SECTION:  J
 6   IN THE GULF OF
     MEXICO, ON                 JUDGE BARBIER
 7   APRIL 20, 2010             MAG. JUDGE SHUSHAN

 8

 9
```

**VOLUME 1**

Deposition of **MARK ROBERT BLY**, 501 Westlake Park Boulevard, Houston, Texas 77210, taken in the Pan American Life Center, Louisiana 70130, reported on Thursday, February 17th, 2011.

```
 1   engineering evaluation, we didn't do a legal
 2   evaluation, but the team may have looked at
 3   some regulatory things, but it wasn't central
 4   to our --
 5        Q.    But as you sit here today, you
 6   can't make any comments on CFRs or from any
 7   potential federal law regulation as to
 8   whether BP, Halliburton or some other entity
 9   would ultimately be held legally responsible
10   for downhole conditions and problems in the
11   Macondo well?
12        MR. GODWIN:
13             Objection.  Form.
14        THE WITNESS:
15             No, sir.  I can't make any
16   comments.
17   EXAMINATION BY MR. STERBCOW:
18        Q.    Let me -- I want to briefly go
19   over No. 2 as well, the shoe track barriers
20   did not isolate the hydrocarbons.  Does that
21   conclusion necessarily mean that the cement
22   that was placed in the hole failed to do its
23   job?  Can we conclude that?  Have you
24   concluded that?
25        MR. GODFREY:
```

```
 1                  Objection as to form.
 2         THE WITNESS:
 3                  Yeah.  What these two points
 4   describe, a significant part of our
 5   investigation was trying to understand how
 6   hydrocarbons had gotten from the reservoir
 7   into the wellbore and ultimately escaped to
 8   cause the fire and explosion.  So in an
 9   engineering sense, there was, you know, when
10   we started, there were a number of
11   possibilities.
12                  And as we gathered the evidence,
13   put the facts together, it became clear to
14   us, and I think this has been further
15   confirmed even since this report came out on
16   the 8th of September, that the path it came
17   through was, you know, through the cement,
18   through the shoe track and up the casing.
19   EXAMINATION BY MR. STERBCOW:
20         Q.    All right.  At the time the
21   report was written -- well, let me back up.
22   Having said that then, does it appear that
23   the hydrocarbons had to have gone through the
24   foam cement, synthetic oil-based mud in the
25   rathole and the tail cement, did it travel
```

```
 1   through all of those media; do you know?
 2        A.    I don't know.  I mean, what we
 3   know is, we've described our conclusions
 4   carefully here to say since it got in, we
 5   know the cement didn't stop it from getting
 6   in.  That's about as well as you can do it.
 7        Q.    I think there was a conclusion
 8   drawn from the data analysis that the
 9   hydrocarbon flow did not occur outside of the
10   casing through the annulus.
11        A.    Yes.
12        Q.    That was the conclusion that
13   y'all were able to make?
14        A.    Yeah, that's right.
15        Q.    Did the report conclude that the
16   float collars were intended either by design
17   or manufacture to act as a barrier to
18   hydrocarbon flow?
19        A.    No.  I don't think it did.  The
20   report concluded that in order to come
21   through the flow path that it did, through
22   the shoe track, it had to -- it meant that
23   the cement in the shoe track must have not
24   prevented the influx and the float collar
25   itself must have, it must have allowed the
```

1      **REPORTER'S CERTIFICATE**

2

3           I, **DIANE T. CLARK, RPR, RMR, CRR**,

4  Certified Court Reporter, State of

5  Louisiana, do hereby certify that

6  above-named witness, after having been duly

7  sworn by me to testify to the truth, did

8  testify as hereinabove set forth;

9           That this testimony was reported

10 by me in the stenotype reporting method and

11 transcribed thereafter by me on computer,

12 and that same is a true and correct

13 transcript to the best of my ability and

14 understanding;

15          That I am not of counsel, nor

16 related to counsel or the parties hereto,

17 and in no way interested in the outcome of

18 this matter.

19

20

21

22          _____

23          **DIANE T. CLARK, RPR, RMR, CRR**

24               Certified Court Reporter

25