# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

December 23, 2011

**By Electronic Mail**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court
Room B345
500 Poydras Street
New Orleans, LA 70130

Re:   *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179

Dear Judge Shushan:

This letter replies to the United States' December 21, 2011, letter opposing BP's December 15, 2011, motion to compel the production of unique, responsive documents found only on the United States' Zantaz searchable archive email server.

As further explained below, BP's motion should be granted for the following six reasons.

- *First*, although the United States now suggests some documents at issue may be less relevant than others, all these documents are responsive to search terms to which the United States agreed after careful negotiations. During the search-term negotiations, the United States objected, and insisted on narrower criteria, whenever it believed that BP or others were asking for overbroad dates, imprecise terms, or irrelevant custodians. At issue here are only those documents that are responsive to search criteria to which the United States agreed and did not object to being memorialized in submissions to the Court.

- *Second*, the United States originally suggested (incorrectly as it now turns out) that there would be no harm in it unilaterally ceasing Zantaz productions because many, if not all, Zantaz documents would be produced through other channels. The United States further suggested that if BP wanted to test whether there were in fact unique documents on the Zantaz server, BP could confirm the hypothesis that Zantaz documents were all duplicative by performing (at its own expense) a resource-intensive analysis of United States' data. Once BP accepted the United States' challenge, however, BP found that over 70 percent of

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
December 23, 2011
Page 2

- the responsive, non-privileged documents in the Zantaz archive (tens of thousands of documents in all) are uniquely found only in Zantaz.

- *Third*, only after BP conducted this resource-intensive analysis did the United States switch positions and argue that, while BP may be correct that thousands of Zantaz *documents* are both search-term-responsive and unique, BP has not proved the *information* contained in those thousands of documents is similarly unique. *See* Opp. at 2-3 ("This information already provided by the United States gives BP ample information . . ."). But of course it has never been the legal standard — in MDL 2179 or elsewhere — that parties responding to electronic discovery requests need not produce unique, search-term-responsive documents unless the party propounding the request can show the impossible-to-prove fact that the *information* in documents yet to be produced and reviewed will differ from *information* appearing in other, already produced documents. (Note that if BP has misunderstood the applicable standards here, BP would respectfully request that the Court again clarify that BP can benefit from this standard under the principle that "[a]s has often been said in this case, '[t]he door swings both ways.'" (*See* Order dated Nov. 28, 2011, at 2 (Doc. 4736).))

- *Fourth*, the United States' recent predictions that the Zantaz documents do not contain new, highly relevant information, respectfully, is nothing but speculation. The United States has not reviewed the documents, and it once similarly speculated (inaccurately as it now turns out) that Zantaz documents would largely duplicate documents drawn from other sources.

- *Fifth*, the United States concedes, in its footnote 2, that "the United States is *not* arguing the Zantaz archive is, in all instances, 'not reasonably accessible.'" (Opp. at 4 n.2) (emphasis added). In particular and most importantly, the United States does not argue in *this* instance that the Zantaz archive is "not reasonably accessible." Under applicable law and as further explained below, these concessions are fully enough to decide the motion in BP's favor.

- *Finally*, because of the compromises that BP has offered and is now prepared to further offer, the United States' assertion that it will cost $850,000 to produce the Zantaz documents is both inflated and beside the point. This estimate is inflated for reasons explained in the attached declaration from Mr. John Jessen, our Nation's leading expert on electronic discovery. Moreover, this estimate is beside the point because the large monetary claims filed by the United States and others against BP have required BP to spend many multiples of $850,000 on electronic discovery and because, as further described below, BP is fully committed to playing a positive role in assisting the United States in managing its Zantaz discovery costs.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
December 23, 2011
Page 3

I. **THE REQUESTED DOCUMENTS ARE REASONABLY ACCESSIBLE AND WITHIN THE SCOPE OF AGREED-UPON SEARCHES.**

On October 19, 2011, this Court entered an order comprehensively defining the scope of written discovery from the United States. (Doc. 4364) ("Order").

The October 19 Order requires the United States to produce documents responsive to agreed-upon search terms, for agreed-upon custodians, by certain dates. Specifically, the Order obligates the United States to search, among other things, electronically stored information (ESI) for responsive documents found in the files of the pre-specified custodians that satisfy pre-specified search terms. *See* Order at ¶ 1 and n.1 (referencing agreed-upon search terms and custodians).

To be sure, the United States Discovery Order is necessarily and expressly subject to further revision. But, although the United States has requested extensions of various deadlines and other modifications to the Order, the United States has not requested any Zantaz-based restrictions on the scope of the custodians to be searched or the search terms to be used in written discovery of the United States. Specifically, the United States made no request that the Court modify or restrict its Order in such fashion before the December 15 deadline for the filing of this motion to compel (which BP but not the United States was willing to extend). Because the United States did not timely seek a revision of its custodial and search-term obligations, the Court should assume for present purposes the reasonableness of the searches defined by the Order.

The questions that remain open for present purposes are therefore (i) whether the Zantaz server contains responsive documents from certain custodians' files (as defined by the search terms and custodians reflected in the Order); and (ii) whether, if it does, those responsive documents are "reasonably accessible" and hence subject to discovery. Those questions are the sum and substance of what the Court needs to resolve. Fortunately, resolving them is made easy by the United States' Opposition. As noted above, the United States concedes, *first*, that the Zantaz documents are indeed "reasonably accessible," *see* Opp. at 4 n.2, and, *second* that "there are unique emails in Zantaz," Opp at 5.

Those concessions — together with the October 19 Order — effectively decide this motion. By conceding "reasonable accessibility," the United States refrains from contesting, in a legally significant way, BP's request to apply the previously agreed-upon searches to custodial documents found on the Zantaz server. Having declined to contest "reasonable accessibility," nothing more need be considered to rule in BP's favor.

**KIRKLAND & ELLIS LLP**

The Honorable Sally Shushan
December 23, 2011
Page 4

Nonetheless, the United States quotes at length from *United States ex rel. McBride v. Halliburton*, 272 F.R.D. 235 (D.D.C. 2011). *See* Opp. at 3-4. But the quotations from *McBride* are drawn from a discussion of a different question — whether discovery should be pursued from additional custodians. Here, BP does not seek discovery from additional custodians, and BP accepts the common-sense principle, embraced by the United States, that discovery from a large entity necessarily must proceed largely on a designated-custodian basis. Here, though, any questions about which custodians should be searched are issues the United States might have raised with the Court (but chose not to) by requesting modifications to the October 19 Order. And here, instead of seeking to expand the custodian pool, BP has voluntarily agreed to restrict the number of custodians to be searched to only 61 of the 130 custodians from whom it is entitled to discovery. *McBride* does not apply.

To be clear, BP readily concedes that the United States' discovery obligations extend only to searching certain custodians' files found in reasonably accessible locations of electronically stored information. Neither the United States nor any other party should be obliged to search ESI locations that are not reasonably accessible. Nothing in the United States Discovery Order should be construed to require the United States to search an inordinate number of custodians or inaccessible locations. In this regard, BP acknowledges that the United States has stated previously that it does not regard text messages as reasonably accessible. (*See* S. Himmelhoch letter to R. Gasaway dated Sept. 6, 2011 at 6.) And although BP (unlike other parties) has produced some text messages in this litigation, BP is not challenging the United States as to the reasonable accessibility of ESI contained in text messages. It cannot be said too emphatically that neither BP nor the United States should be required to "search for and produce every document or piece of information that may exist" within their possession custody or control. *See* Opp. at 6 (quoting BP discovery responses).

But BP does not now seek, and never has sought, discovery from ESI that is not reasonably accessible. As to this motion, there is no dispute about accessibility. The motion is strictly limited to documents created before a litigation hold was instituted and drawn from a specific, "reasonably accessible," electronic archive created for the express purpose of storing and retrieving documents for, among other things, litigation discovery. (Jessen Decl. ¶¶17-19) (Attachment A hereto). On this solid and undisputed basis, BP's motion should be granted.

## II.   THE COURT SHOULD NOT HESITATE TO DIRECT THE PRODUCTION OF THE REQUESTED DOCUMENTS.

Instead of focusing on reasonable accessibility, the United States raises burdensomeness objections. Although as explained above, the United States should not now be heard to contest these issues, they nonetheless should not change the outcome of this Motion.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
December 23, 2011
Page 5

BP remains mindful, of course, of the interests of the United States as a fellow litigant and of BP's obligations to the Court as a party to this complex litigation. BP has heard the Court's admonitions to conduct discovery in collegial fashion. Accordingly, BP is unilaterally declining to insist on Zantaz discovery from over half of the custodians from whom BP is entitled to such discovery. And, as stated below, BP is willing to take an active part in the Zantaz discovery process (somewhat similar to the assisting role BP played in facilitating Phase 2 of the BOP testing) to help ensure Zantaz discovery proceeds smoothly and swiftly and is completed at a cost to the United States that approximates BP's estimates, not the higher projections the United States now puts forward. BP hopes to achieve a satisfactory resolution for all concerned.

### A. The United States Does Not Dispute That Thousands Of Unique, Responsive, And Potentially Important Documents Are Located On The Zantaz Server.

In resisting a further Zantaz production, the United States downplays the fact that the United States at first agreed to produce Zantaz materials, before reversing course and trying to discontinue the productions. As explained below, there should be little argument that Zantaz productions should now resume.

#### *1. The Zantaz server undisputedly is the sole source for thousands of responsive, non-duplicative, non-privileged documents.*

BP's motion describes a rigorous analytical process that has established quantitatively that tens of thousands of unique, responsive, non-privileged, documents reside only on the Zantaz server for just four individual custodians. Extrapolating these results over the 61 additional custodians whose documents are the subject of this motion — those 61 being less than half of the original number from whom BP is entitled to discovery — it is clear that the number of unique, responsive, non-privileged, Zantaz documents to be gained by resuming Zantaz discovery is large.

In response to this rigorous showing, the United States quibbles with technical aspects of the analysis performed by BP's contractors, as they have diligently and repeatedly tried to satisfy the United States through three separate rounds of efforts. (Irish Decl. ¶28). But while the technical details of BP's comparisons are somewhat complicated, the attached declaration of Brandon Leatha, who performed the analysis reflected in BP's December 15 submission, establishes that this process has produced meaningful results, however much the United States hesitates to acknowledge them. In particular, although precise numbers may be subject to debate,

**KIRKLAND & ELLIS LLP**

The Honorable Sally Shushan
December 23, 2011
Page 6

every analysis performed to date has shown that the Zantaz server unquestionably contains tens if not hundreds of thousands of unique, responsive, non-privileged documents that cannot be obtained from other sources. (Leatha Decl. ¶¶4-19) (Attachment B hereto).

The United States does not seriously dispute that BP's showing goes far beyond what courts are accustomed to seeing in similar motions practice, nor does it contend that the United States performed an equivalent analysis that reached a substantively different conclusion. Although the United States hesitates to say it, BP has substantiated that at least tens of thousands of unique documents reside only on the Zantaz server.

### 2. *The Parties are entitled to obtain Zantaz documents and judge for themselves their importance.*

The United States nonetheless asks that BP do even more and indeed make an impossible showing that the Zantaz archive contains relevant information that is not cumulative or duplicative, before even reviewing a Zantaz production. This impossible-to-satisfy standard is not the proper discovery standard applied by federal district courts.

BP has instead followed what courts have determined to be best practices when addressing the benefits and burdens of productions of ESI. *See, e.g.*, *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 323-324 (S.D.N.Y. 2003) (requiring the responding party to restore and produce responsive documents from a small sample of backup tapes to determine the benefits of production); *McPeek v. Ashcroft*, 202 F.R.D. 31, 35 (D.D.C. 2001) (ordering the DOJ to undertake a "test run" by restoring a sample of back-up emails to determine the relevance and burdens of production from the targeted source).

Here, the United States does not dispute the essential validity of BP's analysis, which has identified nearly 25,000 unique, responsive, non-privileged documents, including several trial exhibits, housed solely in the Zantaz archive for a limited set of four custodians. (Leatha Decl. ¶¶ 4-19). As the court in *Zubulake* stated, when discussing Fed. R. Civ. P. 26 standards:

> The suggestion that a plaintiff must not only demonstrate that probative evidence exists, but also prove that electronic discovery will yield a "gold mine," is contrary to the plain language of Rule 26(b)(1), which permits discovery of "any matter" that is "relevant to [a] claim or defense. (217 F.R.D. at 323).

It is, rather, the United States' burden to make its own case and prove that production from Zantaz is not justified because, as it alleges only in conclusory fashion, these documents

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
December 23, 2011
Page 7

reiterate information found elsewhere in documents already produced. The United States has not come close to satisfying that burden, which clearly is its burden to bear.

The United States focuses on two conclusory affidavits. ***First***, through Mr. Prendergast's affidavit, the United States states (for the first time after five months of meeting-and-conferring on the issue) that "any email communications of any significance ... are scanned as attachments to the [e-well and/or TIMS] databases. (Opp., Exhibit 1, ¶3).

But even if this were true with respect to the "*approval* of well designs, well operations, well control, and spill preparedness plans," the United States does not provide any evidence that all responsive, non-privileged emails referring to, relating to, analyzing, and/or discussing well design, well operations, well control, and spill preparedness plans have been or will be gathered into and produced from these other sources. These emails, which cover critical topics from both Phase 1 and Phase 2 of this litigation, are responsive to more than 80 requests for production propounded to the United States.

***Second***, through Mr. Irish's declaration, the United States seeks to question BP's quantitative analysis by postulating speculative hypotheticals and challenging the relevance of a mere 2.1% of the 24,294 unique emails found to be responsive to the agreed-upon search terms. (Opp., Exhibit 4, ¶¶29-33). These challenges are plainly insufficient and unpersuasive.

BP provided the United States not only the results of its contractor's analysis but also the complete methodology its contractors employed. (*See* Aug. 30, 2011 email correspondence between S. Himmelhoch and M. Nomellini (found at Attachment 3 to BP Ltr. Br., Dec. 15, 2011); Dec. 13, 2011 A. Pixton email to S. Himmelhoch (found at Attachment 4 to BP Ltr. Br., Dec. 15, 2011).) BP's contractors directly participated in two meet-and-confers with the United States in an effort to mirror as closely as possible the United States' production process and insure the accuracy of their results. (*See* Dec. 13, 2011 A. Pixton email to S. Himmelhoch (found at Attachment 4 to BP Ltr. Br., Dec. 15, 2011); Nov. 14 email correspondence between S. Himmelhoch and A. Pixton.) BP instructed its contractors, twice and at its own cost, to alter their analysis at the behest of the United States. (*Id.*)

Set in this context, Mr. Irish's undisclosed methodology for analyzing trial exhibits and quibbles over a mere two percent of the documents BP has identified do nothing significant to blunt the thrust of BP's analysis. The court accordingly should disregard Mr. Irish's email analysis, as well as his tiny "sampling" of 11 trial exhibits, where Mr. Irish neither describes how his sample set was identified nor how his ensuing analysis was conducted. (Opp., Exhibit 4, ¶34.)

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
December 23, 2011
Page 8

In sum, the affidavits provided by the United States are most significant for what they lack; namely, any quantifiable or qualitative analysis of the utility of producing from the Zantaz archive. *See Auto Club Family Ins. Co. v. Ahner*, 2007 WL 2480322 (E.D. La. Aug. 29, 2007) ("In fact, whether production of documents is unduly burdensome or expensive turns primarily on whether it is kept in an *accessible* or *inaccessible* format. . . . But in the world of electronic data, thanks to search engines, any data that is retained in a machine readable format is typically accessible.") (emphasis in original; quoting *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003)). Here, BP has shown that Zantaz constitutes a readily accessible, target-rich, environment of unique, responsive, non-privileged documents.

**B.     The Cost of Producing These Unique Documents Is Reasonable Under the Circumstances.**

In response to the implicit challenge thrown down by the United States' reference to "BP's unsworn" cost estimates, *see* Opp. at 4, BP has obtained a declaration from Mr. John Jessen, our Nation's leading expert in the field of electronic discovery. Applying industry cost standards to a system like Zantaz, Mr. Jessen concludes that the required searches are capable of being executed at a comparatively "modest" cost of approximately $103,000-$140,000 and in a comparatively rapid time frame of approximately two weeks. (Jessen Decl. ¶¶23-25) These estimates differ markedly from the United States' estimates of a cost between $850,000 and $1.5 million, and time requirement of 6 to 12 months. (Irish Decl. ¶¶15, 25.) For several reasons, Mr. Jessen's cost and time estimates are the more credible ones.

*First*, the United States' estimates are based on the quotes of its lone vendor and do not reflect a competitive bidding process or the offerings in the current marketplace for electronic discovery. (*See* Irish Decl. ¶¶5-18.) It is not surprising, then, that these inflated costs and time estimates are a multiple of BP's estimates. *See Escamilla v. SMS Holdings Corp.*, No. 09-cv-2120, 2011 WL 5025254, at *9 (D. Minn. Oct. 21, 2011) (disregarding cost and time estimate of party from whom discovery of back-up tapes was sought when it was based on only one vendor's review and was disputed as overstated).

To the extent that producing from Zantaz does indeed cost more than industry standards, these inflated costs could well be due to the United States' failure properly to maintain its Zantaz system. (Jessen Decl. ¶¶19-20.) Of course, the United States should not now be rewarded for its own ESI failings by being allowed to use them as an escape hatch from otherwise well-established discovery obligations. *See Escamilla*, 2011 WL 5025254, at *5 ("In assessing whether a particular discovery request or requirement is unduly burdensome or expensive, a court should consider the extent to which the claimed burden expense grow[s] out of the

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
December 23, 2011
Page 9

responding party's action or inaction.") (quoting The Sedona Conference Commentary on Proportionality in Electronic Discovery, 11 Sedona Conf. J. 289, 298 (2010)).)

***Second***, the United States factors into its estimates large sums representing time to be spent by attorneys doing privilege review. In fact, more than half of the United States' low end estimate of $850,000 is $450,000 for such attorney time. (Irish Decl. ¶¶ 24-25.) Obviously, the costs of attorney review should not be factored into an analysis aimed at determining whether an archive is "reasonably accessible."

(Notably, the United States did not include attorney privilege review in estimates provided during the meet-and-confer process. Hence, the United States now asserts it will cost at least $850,000 to search 61 Zantaz custodians, when earlier it had estimated a similar cost for searching all 130 custodians. (*Compare* Irish Decl. ¶25 *with* Aug. 3, 2011 S. Himmelhoch Ltr. to R. Gasaway (found at Ex. 2 to Dec. 15, 2011 BP Ltr. Brief).))

***Third***, the United States has not disputed that the very purpose of Zantaz is to serve as a reasonably accessible archive for electronic discovery, and courts in general deem such archives as reasonably accessible under Rule 26(b)(2)(B).

When all is said and weighed, the United States' cost and time estimates appear inflated and unpersuasive. This is especially true here, where the United States and other plaintiffs are seeking large recoveries based, in part, on BP's alleged gross negligence with respect to violating MMS regulations. (*See* B1 Master Complaint ¶¶194, 290; DOJ Civil complaint, ¶¶ 49-55, 69 (alleging negligence and/or gross negligence and/or willful misconduct and citing alleged violations of nearly a dozen MMS regulations, dealing with issues as diverse as BOP maintenance, well monitoring and control, and the use of best available and safest technology).) With so much at stake, and compliance with MMS regulations representing such a hotly contested set of issues, BP should be entitled to discovery from the 61 MMS and other custodians whose documents reside in the Zantaz archive.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
December 23, 2011
Page 10

\*   \*   \*

      Notwithstanding all the above, BP remains committed to playing a positive role in this MDL and doing its part to help ensure that Zantaz discovery is completed in timely fashion and at a cost to the United States that approximates BP's cost estimates. Perhaps it could be helpful here for BP to play a role somewhat similar to the one played by BP in helping this Court to facilitate a Phase 2 BOP testing process. As in the BOP process, BP would be pleased to participate in a Zantaz discovery process in which the parties' technical representatives could collaborate, share expertise, and develop mutually agreeable solutions to technical problems.

      For all of the foregoing reasons, BP requests the Court grant BP's motion and direct the production of Zantaz documents.

Respectfully submitted,

Robert R. Gasaway

Enclosures

cc (via electronic mail):

R. Michael Underhill
Steven O'Rourke
Sarah Himmelhoch
J. Andrew Langan, P.C.
Joseph A. Eisert
Mark J. Nomellini
Barry E. Fields, P.C.
Stuart A.C. Drake
Joel M. Gross
Don K. Haycraft
Defense Liason Counsel
Plaintiffs' Liason Counsel
Hon. Luther Strange
Corey L. Maze