# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL No. 2179 |
| | | SECTION: J |
| | | JUDGE BARBIER |
| This Document Applies to: *All Cases (including 10-2771)* | * * * | MAG. JUDGE SHUSHAN |

## ORDER AND REASONS

### [As to the Motion to Establish Account and Reserve for Litigation Expenses (Rec. Doc. 4507)]

The Plaintiffs' Steering Committee ("PSC") has filed a Motion to Establish Account and Reserve for Litigation Expenses, seeking the creation of a common benefit "hold-back" fund. Rec. Doc. 4507. As requested by the PSC, the Defendants who are parties to this Multidistrict Litigation ("MDL") would be required upon settlement of any claimants' case, to hold-back and pay into a special common benefit account within the registry of the Court, a sum equivalent to 6% of the gross settlement amount in the case of private claimants. In the case of state or local governmental claimants, the hold-back would be 4% of the gross settlement. As explained by the PSC in its motion, such an order by the Court would not set the amounts of or award any common benefit fees or expenses, but rather simply establish a fund from which common benefit fees, if any, might later be disbursed. Such common benefit funds are often used by Courts in the MDL context where the Court appoints a Plaintiffs Steering Committee and other lead or liaison plaintiff counsel to

1

organize and spearhead the litigation on behalf of thousands of claimants and hundreds of attorneys. *See In re Air Crash Disaster at Florida Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1017-18 (5th Cir. 1977); *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128-30 (2d Cir. 2010) (Kaplan, J., concurring); *In re Genetically Modified Rice Litig.*, No. 4:06-md-1811, 2010 WL 716190 at *4 & n.2 (E.D. Mo. Feb. 24, 2010); Fed. Judicial Ctr., *Manual for Complex Litigation, Fourth* §§ 14.215, 20.312 (2004).

The Louisiana Attorney General has objected to the creation of a hold-back account insofar as it applies to the State of Louisiana. Louisiana is one of only two Gulf Coast states that have filed claims in this MDL, the other being Alabama. Notably, the Attorney General for the State of Alabama long ago reached agreement with the PSC to work cooperatively to further their joint or aligned interests. Largely for this reason, the Court appointed Alabama Attorney General Luther Strange as Coordinating Counsel for the Gulf Coast States. The Court has on multiple occasions encouraged the State of Louisiana to cooperate with the PSC and the State of Alabama insofar as their interests are aligned versus the Defendants in this complex MDL. Rather than cooperate or attempt to work collaboratively, the State of Louisiana, through its retained private counsel, has instead often obstructed and frustrated the progress of the litigation.

Recently, after it became clear that the State of Louisiana was unable to comply with several orders of this Court, the PSC reached out and offered its technical assistance to assist the State with its ESI production obligations. Notably, it apparently required the intervention of the Governor of Louisiana for this to occur. In fact, the Governor's office and the PSC have reached an agreement to work collaboratively to pursue their common interests. *See* State of La., Off. of the Governor, Mot. to File Mem. in Supp., Rec. Doc.

4916.

The PSC's motion sets forth in great detail the tremendous amount of work, and the large investment of money that the PSC has advanced since the creation of this MDL in August 2010.[1] There can be no question that the PSC has taken seriously its fiduciary obligations in the best interests of all claimants, both private and governmental.

The Court does not at this time decide whether to award common benefit fees or expenses to the PSC. Those matters are reserved for another day. But, it is necessary to establish a mechanism to create a fund that could potentially be available to pay such fees and expenses if and when deemed appropriate. Before any such awards are made, there will be adequate due process given, with notice and opportunity to be heard on issues relating to any request for disbursements from the common benefit fund. As the PSC's motion points out, there are several possible outcomes in this case under which the hold-back fund will either be reduced, or possibly totally refunded to those who are required to contribute.

The Governor of Louisiana has filed a response to the PSC motion, stating that he has no objection to the requested 4% hold-back, as long as certain categories of recovery by the State are exempted therefrom. The PSC has advised the Court that it agrees with the Governor's position, and has submitted a revised proposed Order. The Alabama Attorney General has also advised that he has no objection to the proposed hold-back. For

---

[1] On November 7, 2011, the PSC reported: "In all, 340 lawyers from ninety different law firms have invested over 230,000 hours and contributed over $11.54 million in out-of-pocket held and shared expenses for the common benefit of claimants and litigants . . . In addition, the PSC members and other Common Benefit Work Group Members and Coordinators have incurred approximately $1.5 million in unpaid expenses, which are still being processed. At the same time, PSC members and other Common Benefit Attorneys have contributed and additional $1.8 million to a joint account for payment of further shared expenses, as incurred." PSC's Memo. in Supp. p. 9 & n.10, Rec. Doc. 4507-1 at 12 & n.10.

these reasons, the Court will issue an Order requiring a 4% hold-back contribution by the States of Louisiana and Alabama, with the exceptions as noted and requested by the Governor of Louisiana.[2]

Turning to other issues, some parties argue that claims which are settled through the Gulf Coast Claims Facility ("GCCF") should not be subject to the hold-back. *See, e.g.*, Rec. Doc. 4682. They note that the Oil Pollution Act of 1990 ("OPA") required BP to establish a procedure for receiving and settling claims, 33 U.S.C. § 2714, and further required claimants to present their claims to BP before proceeding in court, 33 U.S.C. § 2713. Thus, it is argued that settlements produced via the GCCF are not the result of any common benefit work.

The PSC has strongly advocated on behalf of persons submitting claims to the GCCF, continuing to apply public and private pressure to improve the GCCF claims handling operations. For example, the PSC has actively lobbied and argued for increased supervision and monitoring of the GCCF and Kenneth Feinberg/Feinberg Rozen, LLP. These efforts have met with at least partial success.

For instance, on February 2, 2011 the Court granted the PSC's motion (in part) and ordered the GCCF and BP to:

---

[2] The Louisiana Attorney General objects to what he characterizes as a 4% "contingent" fee, which he argues violates Louisiana's state sovereignty. This argument is without merit. The Court by its Order is not assessing any fees, much less a contingent fee. To repeat, the 4% is only an interim hold-back contribution to a fund, from which fees might potentially be disbursed. To accept the Attorney General's argument would mean that the State of Louisiana would be entitled to essentially a free ride despite any efforts of the PSC which serve to advance the State's claims. The Court further notes that the Attorney General has apparently no qualms about paying substantial legal fees to multiple lawyers from five different outside law firms who are representing him in this MDL. In contrast, the Alabama Attorney General is representing his State's interests solely with in-house attorneys in collaboration with the PSC.

> (1) Refrain from contacting directly any claimant that they know or reasonably should know is represented by counsel, whether or not said claimant has filed a lawsuit or formal claim;
>
> (2) Refrain from referring to the GCCF, Ken Feinberg, or Feinberg Rozen, LLP (or their representatives), as "neutral" or completely "independent" from BP. It should be clearly disclosed in all communications, whether written or oral, that said parties are acting for and on behalf of BP in fulfilling its statutory obligations as the "responsible party" under the Oil Pollution Act of 1990.
>
> (3) Begin any communication with a putative class member with the statement that the individual has a right to consult with an attorney of his/her own choosing prior to accepting any settlement or signing a release of legal rights.
>
> (4) Refrain from giving or purporting to give legal advice to unrepresented claimants, including advising that claimants should not hire a lawyer.
>
> (5) Fully disclose to claimants their options under OPA if they do not accept a final
> payment, including filing a claim in the pending MDL 2179 litigation.
>
> (6) Advise claimants that the "pro bono" attorneys and "community representatives"
> retained to assist GCCF claimants are being compensated directly or indirectly by BP.

Rec. Doc. 1098 at 14.

Early on, the PSC successfully advocated on behalf of Vietnamese and other non-English speaking claimants, and convinced the GCCF to employ translated forms, instructions, etc. The PSC also arranged to make translators available to claimants. The PSC has advocated for a full and transparent audit of the GCCF and its claims handling practices, and together with the U.S. Department of Justice, has persuaded Mr. Feinberg to agree to such an audit which is now in progress. The PSC has advocated, again with some success, for the GCCF to employ a more liberal causation standard in evaluating claims and has advanced similar causation arguments in this MDL proceeding. *See* Order

of Aug. 26, 2011, Rec. Doc. 3830 at 32-33.  The PSC has successfully argued for the application of general maritime law and the possibility of punitive damages.  *Id.* at 18-27. Although the GCCF does not pay punitive damages, the PSC may be able to show that this finding enhances the settlement value of compensatory claims.

Considering the unique circumstances of this case, it would be unfair to allow parties to benefit from these activities of the PSC, but avoid contributing to the common benefit fund simply because they are able to settle directly with the GCCF and avoid filing a claim in the MDL.  Other parties have filed lawsuits or claims in this MDL, but then withdraw their claims once they have settled with the GCCF.  Again, such parties have likely benefited from all of the common benefit work performed by the PSC.

A related argument concerns whether this Court has subject matter jurisdiction to order the hold-back in (1) cases that were filed in state court, removed to this Court (or removed to another federal court, then transferred to this Court), and have pending motions to remand, and (2) cases filed in state courts that were not removed.  *See, e.g.,* Rec. Doc. 4657.

As to the first category of cases, the Court agrees with the concurring opinion in *In re Zyprexa Products Liability Litigation*, 594 F.3d 113 (2d Cir. 2010).  In that case, the district court imposed attorney compensation protocols, including the creation of a common benefit fund, on a law firm that had sixty-one pending motions to remand.  The law firm petitioned for a writ of mandamus to set aside the district court's decision.  While the court of appeals simply denied the writ of mandamus,[3] the concurring opinion—with which the

---

[3] "[The law firm] has given us no basis in fact or in law on which we might conclude that the district court usurped its power or clearly abused its discretion." *Id.* at 118-19.

6

majority was "in sympathy," *id.* at 119—expressly approved of the district court's decision. The concurring judge explained:

> While [a district court] must [determine whether it has subject matter jurisdiction] before it reaches the merits of the case before it, it is empowered to issue non-dispositive orders between the filing of the action and its ultimate determination on the merits.
>
> . . .
>
> Thus, a district court's order that is "collateral to the merits" may be upheld despite a later conclusion that the court lacked subject matter jurisdiction over the litigation.
>
> In this case, the set aside order simply imposed an assessment in order to create a fund that could be used to compensate attorneys who demonstrate that their efforts conferred a benefit on *Zyprexa* plaintiffs generally. It is even less related to the ultimate merits than orders awarding attorney's fees, which are collateral matters over which a court retains jurisdiction even if it ultimately is determined to lack subject matter jurisdiction. It does not preclude the [petitioner] from challenging any proposed distribution of funds on the ground that they did not benefit from the efforts of counsel to whom a distribution might be made. At least in these circumstances, the set aside order was collateral to the merits and well within the district court's power.
>
> The district court's determination to defer consideration of the jurisdictional challenges also was comfortably within the bounds of its discretion. While it usually is advisable for district courts to rule on any challenge to subject matter jurisdiction early in a lawsuit, district courts have broad scope to manage their own dockets in light of considerations of "economy of time and effort for itself, for counsel, and for litigants." The impact of such considerations in this case, and in some other MDL and mass tort cases, often may suggest a different course.
>
> Alleged mass torts, as the term implies, spawn masses of litigation. Plaintiffs understandably sue in *fora* that they regard as convenient or likely to be favorable including, in many instances, state courts. Indeed, some frame their complaints in ways that raise issues concerning removability. Defendants, moved by similar considerations, frequently remove many of these cases to federal courts. These tactical steps in turn often provoke large numbers of remand motions, as occurred in this MDL. Indeed, [the petitioner] alone has filed motions to remand in over 50 of its *Zyprexa* cases.

> . . .
>
> A district judge managing such a complex situation reasonably may conclude that the court's time, especially early in the litigation, is better spent on activities other than deciding scores or hundreds of individual remand motions. . . . Deciding each motion prior to addressing other issues common to all or most cases therefore could require a significant expenditure of judicial time and resources, derailing the progress of the litigation as a whole. Delays of this nature could well frustrate the purpose of MDLs, which is "to promote just and efficient conduct" of actions involving common questions of fact.
>
> While every case turns on its own facts, I cannot say that the district court's decision to give priority to moving thousands of *Zyprexa* cases towards settlement or other disposition over focusing promptly on the hundreds of pending remand motions was an improvident exercise of the broad discretion that inheres in its docket management function.

*Id.* at 126-28 (Kaplan, J., concurring) (footnotes and citations omitted). The Court agrees with Judge Kaplan's analysis. Accordingly, the hold-back will apply to those cases with pending motions to remand.

As to the second category of cases, those before state courts, the district court in *In re Genetically Modified Rice Litigation* noted that requiring all lawyers—including those with cases in state courts—who benefit from the work of appointed counsel to contribute to a common benefit fund avoids unjust enrichment and therefore is in the interest of justice, but ultimately declined to do so with respect to state cases because it found it lacked subject matter jurisdiction. No. 4:06-md-1811, 2010 WL 716190 at *4-5 (E.D. Mo. Feb. 24, 2010) (citing *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-I*, 953 F.2d 162 (4th Cir. 1992); *Hartland v. Alaska Airlines*, 544 F.2d 992 (9th Cir. 1976)). However, in *In re Latex Gloves Products Liability Litigation*, the district court required an attorney who had cases before both in the federal MDL court and state courts to contribute to a reserve account a portion of settlement proceeds in order to gain access to discovery materials

8

held in a depository.  No. 1148, 2003 U.S. Dist. LEXIS 18118 (E.D. Pa. Sept. 5, 2003).  The court explained,

> [The Case Management Order] is restricted to plaintiffs who have access to the discovery materials in the depository.  Like movant, most plaintiff's counsel represent state court as well as federal court plaintiffs.  Permitting [counsel] to use discovery information in their state cases without charge would produce an anomalous and undesirable predicament. As the Special Master noted, the [Case Management Order] attempts to avoid "imposing upon any counsel, including Mr. Benjamin, who has cases pending in both state and federal court, the dubious burden of utilizing PSC's work product exclusively in federal court cases and not in the state court litigation."

*Id.* at *5; *see also* Case Mgmt. Order No. 17 ¶ 3(f)(3), *In re Fosamax Prods. Liab. Lit.*, No. 1:06-md-1786 (S.D.N.Y. Apr. 28, 2011), ECF No. 1012 ("any plaintiff's counsel with cases not in the MDL who utilizes any aspect of the MDL common benefit work product, or who participates in a PSC-coordinated resolution, and who has not signed an Assessment Option agreement, shall be subject to [a 9% hold-back assessment.]").  On this issue, the Federal Judicial Center has written,

> Courts may direct contributions to be made by defendants, or by plaintiffs' counsel out of individual settlement payments received. Fees may not be imposed by a transferee judge on attorneys **with no cases in the MDL <u>and</u> who do not use federal discovery material.**

Fed. Judicial Ctr., *Managing Multidistrict Litigation in Products Liability Cases, A Pocket Guide for Transferee Judges* 14-15 (2011) (emphasis added).

Accordingly, the hold-back requirement will not apply to state-court cases wherein plaintiff's counsel has or had no other cases in this MDL and who have not participated in or had access to the discovery conducted in this MDL.

In accordance with the above,

9

**IT IS ORDERED** that Defendants shall withhold and deposit an amount equivalent to four percent (4%) of the gross monetary settlements, monetary judgments or other monetary payments made on or after November 7, 2011, by or on behalf of one or more Defendants to the State of Alabama or the State of Louisiana, or to any of their local governmental entities, arising out of the Macondo / *Deepwater Horizon* disaster,[4] into a court-supervised escrow account, in order to establish a fund from which common benefit litigation fees and expenses may be paid, if and as awarded by the Court, at an appropriate time, pursuant to procedures to be determined by future order of the Court. No amount will be held back or "reserved" from State of Alabama or State of Louisiana recoveries that are non-monetary in nature. Nor will any amount be held back or reserved from payments to a State directly from a Responsible Party to reimburse the State for ongoing response costs, increased agency costs related to response, or costs incurred through participation in the NRDA process.

**IT IS FURTHER ORDERED** that Defendants, or any agent or representative acting on a Defendant's behalf, shall withhold and deposit an amount equivalent to six percent (6%) of the gross monetary settlements, judgments or other payments made on or after November 7, 2011, by or on behalf of one or more Defendants to any other plaintiff,

---

[4] The requirement to deposit "an amount equivalent to" the designated percentage is intended to afford the parties flexibility in settlement negotiation. Presumably the plaintiffs will attempt to negotiate settlement with one or more Defendants whereby the defendant(s) might agree to pay common benefit fees (and/or other attorneys' fees) *over and above* the settlement corpus, as part of the terms of the negotiated settlement. In the event, however, that the defendant(s) in question is (are) not willing to voluntarily fund the reserve over and above the settlement amount, the reserve (absent a final judgment or other order requiring Defendants to pay some or all attorneys' fees) would be reserved or "held back" out of the monetary judgment, monetary settlement or other monetary payment to the plaintiff, pending future action by the Court. While Plaintiffs may reserve the right to seek common benefit and/or other attorneys' fees under some potentially applicable fee-shifting provision, nothing in *this* Order would *require* a defendant to pay the plaintiff's common benefit and/or other attorneys' fees.

putative class member or other claimant, arising out of the Macondo / *Deepwater Horizon* disaster, (with the exception of settlements, judgments or other payments to the United States), into a court-supervised escrow account, in order to establish a fund from which common benefit litigation fees and expenses may be paid, if and as awarded by the Court, at an appropriate time, pursuant to procedures to be determined by future order of the Court.[5]  Specifically, this hold back requirement applies to all actions filed in or removed to federal court that have been or become a part of the MDL, whether or not a motion to remand has been filed, claimants who settle directly with the Gulf Coast Claims Facility, or state court plaintiffs represented by counsel who have participated in or had access to the discovery conducted in this MDL.  Exempt from this hold back requirement are state court counsel who have or had no cases in this MDL and who have never had access to any of the discovery undertaken in the MDL.  Nothing in this Order is intended to apply to judgments, settlements or other payments between or among BP, Transocean, Cameron, Halliburton, Weatherford, M-I, Anadarko, MOEX, and/or other Defendants, or any of their insurers.

Defendants shall tender such deposits to the Clerk of Court, 500 Poydras Street, Room C-151, New Orleans, Louisiana 70130, for deposit into the MDL No. 2179 Account and Reserve for Common Benefit Litigation Expenses ("MDL No. 2179 Reserve Account").

All deposits to the MDL No. 2179 Reserve Account shall be accompanied by information identifying the party and attorney making the deposit; the Defendant on whose

---

[5]  In the event a Defendant does not agree to pay an amount equivalent to the hold-back percentage over and above the settlement corpus, *see supra* note 4, the Court intends that, as to any claimant represented by counsel, the hold-back shall be deducted from the attorney's contingent fee, rather than the client's portion of the recovery.

behalf the payment is being made; the gross amount of the settlement, judgment or other payment; and the plaintiff, claimant or putative class member to whom the settlement, judgment or other payment was made.

Such information shall be kept confidential, and access to such information shall be limited in accordance with the procedures set forth under Pre-Trial Order No. 9; accordingly, Phil Garrett CPA shall track such information and prepare periodic reports to Court and Plaintiff Co-Liaison. Any further disclosure of such information shall require an order from this Court.

No party or attorney shall have any individual right to any of the deposits made into or funds maintained in this Court-supervised account; nor will such funds constitute the separate property of any party or attorney or be subject to garnishment or attachment for the debts of any party or attorney; nor shall such funds be allocated, disbursed or distributed except as provided by further order of this Court.

Any questions regarding the filing procedures with the Clerk of Court should be direct to Kim Lange, Financial, Clerk of Court, 504-589-7786, kim_lange@laed.uscourts.gov. Questions regarding the substance of any such deposits shall be directed to Philip Garrett, CPA, Garrett and Company CPA's, 117 Fairgrounds Boulevard, Bush, Louisiana 70431, 985-635-1500, pgarrett@garrettco.com.

**SIGNED** at New Orleans, Louisiana, this 28th day of December, 2011.

_____
United States District Judge