# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | § § § § § | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER |
| Applies to: | § § | MAG. JUDGE SHUSHAN |
| *All cases* and No. 10-2771, No. 10-4536, No. 11-1054, and No. 11-1986 | § § | |

**HALLIBURTON ENERGY SERVICES, INC.'S REPLY TO BP'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND HALLIBURTON ENERGY SERVICES, INC.'S RESPONSE TO BP'S CROSS-MOTION FOR PARTIAL <u>SUMMARY JUDGMENT REGARDING INDEMNITY ISSUES</u>**

**Table of Contents**

Index of Authorities ................................................................................................................... ii

I. BP Mischaracterizes the Breadth of Its Indemnity Obligations to HESI..............................1

II. Maritime Law Does Not Preclude Indemnification For Gross Negligence.........................3

III. Increased Risk Does Not Vitiate BP's Indemnity Obligations. ...........................................6

IV. BP's Breach of Contract Allegations Are Irrelevant to Its Indemnity Obligations..............7

V. BP's Fraud Allegations Do Not Vitiate Its Indemnity Obligations.....................................8

VI. BP Is Obligated to Pay HESI's Defense Costs.....................................................................9

VII. Conclusion and Prayer .......................................................................................................10

## Index of Authorities

**Page(s)**

**CASES**

*Amoco Prod. Co. v. Forest Oil Corp.*,
    844 F.2d 251 (5th Cir. 1988) ..................................................................................................9

*Banner Sign & Barricade, Inc. v. Berry GP, Inc.*,
    No. 13-07-00596-cv, 2008 Tex. App. LEXIS 7120
    (Tex. App.--Corpus Christi 2008, pet. denied) .......................................................................7

*Becker v. Tidewater,*
    586 F.3d 358 (5th Cir. 2009) ..................................................................................................8

*Caldwell v. Enyeart*,
    No. 94-1406, 1995 U.S. App. LEXIS 37003
    (6th Cir. 1995) ........................................................................................................................9

*City of Montgomery v. JYD Int'l, Inc.*,
    534 So.2d 592 (Ala. 1988) ......................................................................................................9

*Clement v. Marathon Oil Co.*,
    724 F. Supp. 431 (E.D. La. 1989) .........................................................................................10

*Corbitt v. Diamond M. Drilling Co.*,
    654 F.2d 329 (5th Cir. 1981) ..................................................................................................1

*Dana Corp. v. Fireman's Fund Ins. Co.*,
    169 F. Supp. 2d 732 (N.D. Ohio 1999) ..................................................................................6

*Davaco, Inc. v. Dunkin' Brands, Inc.*,
    No. 3:08-cv-0581-M, 2008 U.S. Dist. LEXIS 95356
    (N.D. Tex. 2008) .....................................................................................................................8

*Diamond Crystal Salt Co. v. Thielman*,
    395 F.2d 62 (5th Cir. 1968) ....................................................................................................9

*Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*,
    774 N.E.2d 775 (Ohio Ct. App. 2002) ....................................................................................9

*Energy XXI, GoM, LLC v. New Tech Eng'g, L.P.*,
    787 F. Supp. 2d 590 (S.D. Tex. 2011) ....................................................................................3

*English v. BGP Int'l, Inc.*,
    174 S.W.3d 366 (Tex App.—Houston [14th Dist.] 2005, no pet.) ........................................10

*Equitex, Inc. v. Ungar*,
　60 P.3d 746 (Colo. Ct. App. 2002) ...................................................................................9

*F.W.F., Inc. v. Detroit Diesel Corp.*,
　494 F. Supp. 2d 1342 (S.D. Fla. 2007) ............................................................................7

*Gen. Ins. Co. of Am. v. Fleeger*,
　389 F.2d 159 (5th Cir. 1968) ...........................................................................................6

*Griffin v. Tenneco Oil Co.*,
　625 So.2d 1090 (La. App. 4th Cir. 1993) ........................................................................5

*Harley-Davidson, Inc. v. Minstar, Inc.*,
　41 F.3d 341 (7th Cir. 1994) .............................................................................................6

*Harris v. Howard Univ., Inc.*,
　28 F.Supp. 2d 1 (D.D.C. 1998) .......................................................................................9

*Hiern v. St. Paul-Mercury Indemnity Co.*,
　262 F.2d 526 (5th Cir. 1959) ...........................................................................................6

*Hudson v. Forest Oil Corp.*,
　No. 02-2225, 2003 WL 21276385 (E.D. La. June 2, 2003) ............................................6

*In re Horizon Vessels, Inc.*,
　2005 U.S. Dist. LEXIS 42110 (S.D. Tex. Nov. 18, 2005) .........................................3, 10

*In re Torch, Inc.*,
　Nos. 94-2300, 95-1982, 1996 U.S. Dist. LEXIS 5053
　(E.D. La. Apr. 16, 1996) ..................................................................................................5

*Inner City Redev. Corp. v. Thyssenkrupp Elevator, Corp.*,
　913 N.Y.S.2d 29 (N.Y. App. Div. 2010) .......................................................................10

*Italia Societa per Azioni di Navigazione v. Or. Stevedoring Co.*,
　376 U.S. 315 (1964) .........................................................................................................6

*Kevin M. Ehringer Enters., v. McData Servs. Corp.*,
　646 F.3d 321 (5th Cir. 2011) ...........................................................................................8

*Lytle Enters., Inc. v. Newfield Expl. Co.*,
　No. 06-0033, 2007 U.S. Dist. LEXIS 31270
　(E.D. La. Apr. 27, 2007) ..................................................................................................7

*Meloy v. Conoco, Inc.*,
　504 So.2d 833 (La. 1987) ..............................................................................................10

*Mobil Chem. Co. v. Blount Bros. Corp.*,
    809 F.2d 1175 (5th Cir. 1987) ..............................................................................................7

*Modular Devices, Inc. v. Alcatel Alenia Space Espana*,
    No. 08-CV-1441, 2011 U.S. Dist. LEXIS 82773
    (E.D.N.Y. Aug. 12, 2010) ....................................................................................................9

*Nexen Petroleum U.S.A., Inc. v. Sea Mar Div. of Pool Well Servs. Co.*,
    497 F. Supp. 2d 787 (E.D. La. 2007) ...................................................................................3

*One Beacon Ins. Co. v. Crowley Marine Servs.*,
    648 F.3d 258 (5th Cir. 2011) ................................................................................................5

*Rochelle Bail Agency, Inc. v. Md. Nat'l Ins. Co.*,
    484 F.2d 877 (7th Cir. 1973) ................................................................................................6

*Ruehs v. Alliance Offshore, L.L.C.*,
    No. 05-6360, 2007 U.S. Dist. LEXIS 5828
    (E.D. La. Jan. 26, 2007) ...................................................................................................4, 5

*Sam Kohli Enters., Inc. v. The BOC Group, Inc.*,
    No. 11CV299 DMS, 2011 U.S. Dist. LEXIS 83972
    (S.D. Cal. Aug. 1, 2011) ......................................................................................................9

*Sarrio v. McDowell*,
    No. 85-1692, 1987 U.S. Dist. LEXIS 12370
    (E.D. La. Dec. 23, 1987) ......................................................................................................5

*Suire v. Lafayette City-Parish Consol. Gov't*,
    907 So.2d 37 (La. 2005) ....................................................................................................10

*Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*,
    106 S.W.3d 118 (Tex. App.--Houston [1st Dist.] 2002, pet. denied) ..................................7

*U.S. Fid. & Guar. Co. v. Putfark*,
    158 So. 9 (La. 1934) ............................................................................................................6

*Valley Health Sys., LLC v. Nurses 'R' Special, Inc.*,
    No. 2:09-cv-1361, 2011 U.S. Dist. LEXIS 40216
    (D. Nev. 2011) ...................................................................................................................10

Halliburton Energy Services, Inc. ("HESI") files this Reply to BP's Memorandum in Opposition to HESI's Motion for Summary Judgment and HESI's Response to BP's Cross-Motion for Partial Summary Judgment Regarding Indemnity Issues, and would show:

## I.  BP Mischaracterizes the Breadth of Its Indemnity Obligations to HESI.

The terms of BP's indemnity obligations are clear. Yet in its Memorandum in Opposition to HESI's Motion for Summary Judgment and in Support of BP's Cross-Motion for Partial Summary Judgment Regarding Indemnity Issues ("BP Response") (Dkt. Nos. 4976-1 and 4977), BP fails to address the Contract's clear indemnity language or the allocation of risk based on BP's and HESI's relative roles and responsibilities. Instead, BP asks this Court to decide the indemnity issues in the abstract, without reference to the parties' chosen language or the business and economic realities of the Contract. Such an isolated review of the indemnity provisions is not supported by the law, by public policy, by logic, or by the language of the Contract.

First, Fifth Circuit precedent requires that indemnity provisions be read to include coverage for liabilities the parties reasonably contemplated as expressed by the contract language:

> A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage.

*Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981). Thus, while the language of an unambiguous indemnity provision is important, the parties' intent as expressed through that language is vital to proper construction. As noted in *Corbitt*, the Fifth Circuit does not follow a rote analysis of "if it is not specifically mentioned it is not covered." Instead, courts look to whether the parties contemplated the liabilities for which indemnity is sought and whether the language indicates the parties intended to include such liabilities. *Id*.

Second, as a matter of public policy, this Court should consider the bargained-for risk allocation between BP and HESI. HESI does not seek to escape all liability under the indemnity provisions. Instead, this case involves reciprocal indemnity obligations under which HESI assumed certain liabilities (for its employees, its equipment, and for pollution emanating from its equipment above the surface), and BP assumed liability for claims arising from a blowout, an uncontrolled well, and for sub-surface pollution. Even with allegations of gross negligence against BP, HESI was willing to live up to its contractual indemnity obligations. *See* Dkt. Nos. 4767, 4767-1 ("HESI's Motion"), Exs. C, F, G. Holding BP to its reciprocal contractual obligations promotes, rather than offends, public policy.

Finally, the indemnity provisions must be analyzed in the context of the business and economic realities of the Contract. BP, as owner/operator, had ultimate control of the well and stood to realize enormous returns from Macondo, not available to HESI as a contractor. BP and HESI allocated risks accordingly, yet BP now seeks to impose upon HESI risks far out of proportion to those negotiated and reflected by the parties' relative roles and potential returns from the well. If, in fact, HESI exposes itself to a potential multi-billion dollar risk every time it performs a $100,000 cement job, one of two things will result. Either HESI (and similarly situated contractors) will be unable to perform their services or the cost of those services will become exorbitant. Any determination that HESI exposes itself to such a high risk level every time it performs a cement job is illogical. More importantly, it is a result against which the parties specifically contracted by allocating risk commensurate with the potential income associated with the parties' respective roles. This reciprocal indemnity method is common in the industry and is a practice still followed by BP, its claims in its Response notwithstanding.

The Contract is unambiguous. HESI accepted certain limited indemnity obligations consistent with its role as a contractor at the Macondo Well whereas BP agreed to indemnity

obligations befitting its role as owner/operator - to indemnify HESI for all claims resulting from a blowout or sub-surface pollution. While BP's and HESI's indemnity obligations differ in scope, they are reciprocal and represent the parties' agreed risk allocation. In this summary judgment proceeding, HESI seeks only to enforce the parties' contractual allocation of risks.

## II. Maritime Law Does Not Preclude Indemnification For Gross Negligence.

As argued in HESI's Motion, and as this Court recognized during argument on Transocean's summary judgment motion, Fifth Circuit precedent has not addressed the effect of gross negligence on indemnity obligations when an indemnitee (HESI) seeks contractual indemnity from an indemnitor (BP) for third party claims, as is presented here. *See* HESI Motion, pp. 11-15; Transcript of Transocean Summary Judgment Hearing ("Transcript"), pp. 34-36.[1] Therefore, this Court, as a matter of first impression, should consider the parties' agreed contractual language, as well as public policy issues, in determining BP's obligation to indemnify HESI for claims and damages in light of gross negligence allegations.[2]

The Contract is clear, positive, and direct: BP indemnifies HESI even if the claims arise from HESI's alleged gross negligence.[3] Section 19.7 requires BP to indemnify HESI for pollution and blowout claims regardless of whether the "claim, liability, damage, or expense in question is: (a) predicated on sole, joint or concurrent fault, negligence (whether active, passive or gross), strict liability, statutory duty, contractual indemnity or otherwise at law..." Contract,

---

[1] At argument, BP cited to *Nexen Petroleum U.S.A., Inc. v. Sea Mar Div. of Pool Well Servs. Co.*, 497 F. Supp. 2d 787 (E.D. La. 2007) as having facts similar to this case. Transcript, p. 35. However, unlike the indemnity provisions between BP and HESI, the exculpatory provisions in *Nexen* did not address gross negligence. *Id.* at 799.

[2] BP cites to *Energy XXI, GoM, LLC v. New Tech Eng'g, L.P.*, 787 F. Supp. 2d 590 (S.D. Tex. 2011) to call into question HESI's citation to *In re Horizon Vessels, Inc.*, No. H-03-3280, 2005 U.S. Dist. LEXIS 42110, *34 (S.D. Tex. Nov. 18, 2005) as authority that indemnification for gross negligence does not violate public policy. BP Response, p. 13. However, BP ignores that the indemnity provision in *Energy XXI* did not address gross negligence. *See,* 787 F. Supp. 2d at 609. Moreover, *Energy XXI* supports a broad reading of the BP/HESI indemnity language "irrespective of cause." *Id. citing East v. Premier, Inc.*, 98 F. Appx. 317, 321 (5th Cir. 2004) (unpublished) (language "without regard to cause" was sufficiently clear and unequivocal to include negligence within the scope of the indemnity).

[3] BP does not even attempt to advance an argument based upon the language of the Contract. In contrast, see BP's arguments against coverage for gross negligence under the Transocean Contract. *See* Dkt. 4827-1, pp. 2-6.

pp. 22-23. Even BP does not dispute that the Contract's plain terms require it to indemnify HESI for claims and damages arising from gross negligence.

Moreover, public policy does not negate BP's contractual indemnity obligations. HESI does not seek to leave claimants without recourse. Instead, this case involves risk allocation between two sophisticated contracting parties, in which both HESI and BP assumed certain risks commensurate with their respective roles. Unlike concerns regarding exoneration from liability, the risk assessment and allocation presented here provides a mechanism by which business can be done, and through which each contracting party can assess its risk exposure and take necessary protective steps. To the extent it is implicated, public policy should hold BP to its contractual obligations rather than allowing it to, *ex post facto*, avoid the obligations it assumed in negotiating and executing the Contract.

BP's Response makes no specific argument that gross negligence allegations nullify BP's indemnity obligations to HESI for actual damages. And BP has conceded to this Court that public policy concerns are more likely implicated by indemnification for punitive damages, fines and penalties than for actual damages arising out of gross negligence.[4] *See* Transcript, p. 38.

Having noted that distinction, BP argues it owes no punitive damage indemnity because the Contract's indemnity does not specifically say "punitive damages." BP's argument ignores indemnity language stating that BP shall indemnify HESI for claims "predicated on . . . negligence (whether active, passive or gross) . . . ."[5] Contract, § 19.7. In support of its argument, BP cites *Ruehs v. Alliance Offshore, L.L.C.*, No. 05-6360, 2007 U.S. Dist. LEXIS

---

[4] BP's Cross-Motion also seeks judgment that it is not required to indemnify HESI for fines and penalties. As BP concedes, HESI has not yet sought indemnity for fines and penalties, and there are no currently pending fines and penalties against HESI. *See* BP Response, p. 19. While HESI believes that BP's indemnity obligation is broad enough to cover fines and penalties, it is premature for the Court to make such a determination. *See e.g.*, Transcript, pp. 39-40, 42. Because the issue is premature, the Court should deny BP's Cross-Motion as to fines and penalties.

[5] BP also minimizes the fact that where it intended to specifically exclude punitive damages from coverage, it expressly did so. *See* Contract at ¶21 (specifically excluding punitive damages from the definition of consequential damages recoverable in claims between BP and HESI).

**HESI'S SUMMARY JUDGMENT REPLY/RESPONSE**        **PAGE** 4

5828 (E.D. La. Jan. 26, 2007). BP Response, p. 19. The *Ruehs* indemnity clause is not set forth in the opinion, but the *Ruehs* court cites *In re Torch, Inc.*, Nos. 94-2300, 95-1982, 1996 U.S. Dist. LEXIS 5053, *28-29 (E.D. La. Apr. 16, 1996). In *Torch*, the indemnity clause, silent as to gross negligence or wanton and reckless behavior, was construed to not cover punitive damages. *Id*. at *27-28. In so holding, the court distinguished *Griffin v. Tenneco Oil Co.*, 625 So.2d 1090 (La. App. 4th Cir. 1993).

In *Griffin*, an indemnitor argued, as BP does here, that because an indemnity provision did not expressly mention exemplary damages, the parties could not have intended to include such damages. 625 So.2d at 1097. However, the *Griffin* indemnity specifically included injuries caused by gross negligence, and excluded injuries "intentionally caused by the willful misconduct" of employees. *Id*. at 1096-97. The court held that this inclusive language reflected the parties' intent to include every type of claim except a claim resulting from an employee's intentional act, and accordingly, the indemnity covered exemplary damages. *Id*; *see also Sarrio v. McDowell*, No. 85-1692, 1987 U.S. Dist. LEXIS 12370, *3 (E.D. La. Dec. 23, 1987) (Where insurance policy covered conduct that "necessarily impl[ied] deliberateness and malice," it was "obvious that the policy was intended to cover liability for actions for which punitive damages may be assessed, and because the policy does not specifically exclude coverage for punitive damages," the court found that punitive damages were covered.).[6]

While *Griffin* applied Louisiana law, it is nonetheless a case recognized and distinguished by the case BP cites as authority. And *Griffin*'s holding is clear. If parties agree to an indemnity

---

[6] While applying Louisiana law, the *Sarrio* court also noted the inequity of allowing a party to argue for the invalidation of its contractual obligations based upon public policy concerns after it has already accepted the benefits of its contractual bargain. *Sarrio*, 1987 U.S. Dist. LEXIS at *9 ("The injustice of permitting an insurer, under the guise of concern for the public interest, to deny coverage for liability for which it has accepted premiums, is obvious."). Further, while BP tries to distinguish cases involving interpretation of insurance contracts from those involving indemnity contracts, such a distinction ignores the Fifth Circuit's acknowledgement that "[i]nsurance policies are contracts, and thus 'are controlled by rules of interpretation and construction which are applicable to contracts generally.'" *One Beacon Ins. Co. v. Crowley Marine Servs.*, 648 F.3d 258, 271 (5th Cir. 2011), *citing Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

**HESI'S SUMMARY JUDGMENT REPLY/RESPONSE**                                                            **PAGE** 5

for claims arising from conduct supporting punitive damages, such damages are properly included within the scope of the indemnity. That is exactly the situation here. BP did not seek to exclude punitive damages from its undertaking, but instead accepted its indemnity obligations for all claims predicated on gross negligence, which legally and logically includes punitive damages. This Court should hold BP to its contractual obligation.

### III.     Increased Risk Does Not Vitiate BP's Indemnity Obligations.

BP argues that its indemnity obligations are nullified because HESI increased BP's risk. *See* BP Response, pp. 14-15. BP is incorrect and none of BP's cited cases involves an indemnitor indemnifying an indemnitee for the indemnitee's own negligence (of whatever degree) or indemnifying the indemnitee for a certain type of claim (*i.e.*, blowout or pollution claims) irrespective of cause.[7] Instead, each of the cases cited by BP addresses a simple indemnity agreement whereby one party agrees to indemnify another against costs and expenses.

Application of these cases to the present dispute wholly ignores the context and language of the Contract and the parties' respective roles in the drilling operation. In short, BP urges the Court to disregard BP's bargained for risk allocation. BP *agreed* to indemnify HESI for all claims arising from a blowout or uncontrolled well and from all sub-surface pollution claims, irrespective of cause and without regard to the level of negligence or other basis for the claims. HESI's actions cannot increase a risk that BP has already fully assumed for these types of claims. BP's argument, at its base, is that, despite the indemnity language, an indemnitee found to be even 1% negligent has, by definition, increased the indemnitor's risk, thus allowing the indemnitor to avoid its obligations. That is not the law. Even BP concedes that a party may be

---

[7] *See Hiern v. St. Paul-Mercury Indem. Co.*, 262 F.2d 526, 528 (5th Cir. 1959); *U.S. Fid. & Guar. Co. v. Putfark*, 158 So. 9, 10 (La. 1934); *Gen. Ins. Co. of Am. v. Fleeger*, 389 F.2d 159, 161 n.3 (5th Cir. 1968); *Hudson v. Forest Oil Corp.*, No. 02-2225, 2003 WL 21276385 at *4 (E.D. La. June 2, 2003); *Rochelle Bail Agency, Inc. v. Md. Nat'l Ins. Co.*, 484 F.2d 877, 879 (7th Cir. 1973); *Dana Corp. v. Fireman's Fund Ins. Co.*, 169 F. Supp. 2d 732, 742-43 (N.D. Ohio 1999); *Harley-Davidson, Inc. v. Minstar, Inc.*, 41 F.3d 341, 343 (7th Cir. 1994); *Italia Societa per Azioni di Navigazione v. Or. Stevedoring Co.*, 376 U.S. 315, 324 (1964).

indemnified for its own negligence. *See* BP Response, pp. 4-5. Likewise here, based on the broad scope of the indemnity provisions, BP assumed the full risk of blowout and pollution claims, even if HESI did something to increase BP's risk incrementally. BP's "increased risk" argument is at odds with both the clear language of the Contract and the law.

## IV.     BP's Breach of Contract Allegations Are Irrelevant to Its Indemnity Obligations.

BP breached its contractual indemnity obligation to HESI. The elements of HESI's breach of contract claim against BP are: 1) a valid contract; 2) a material breach of that contract; and 3) damages. *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1360 (S.D. Fla. 2007) (applying maritime law). Although this Court has held that "prior material breach is a defense to a suit for breach of contract," *Lytle Enters., Inc. v. Newfield Expl. Co.*, No. 06-0033, 2007 U.S. Dist. LEXIS 31270, *21-22 (E.D. La. Apr. 27, 2007), nowhere in its pleadings does BP allege that HESI breached the Contract or that any such breach constituted a prior material breach. BP asks this Court to base its determination of these motions on an issue it has never raised.

Moreover, had BP alleged HESI breached the Contract, such a breach would not invalidate BP's independent indemnity obligation. First, the cases upon which BP relies largely deal with increased risk to the indemnitor resulting from breach of the contract.[8] *See* BP Response, pp. 16-17. Increased risk analysis is inapplicable to this case. *See supra* at § III.

Second, as discussed in HESI's Motion, indemnity obligations are independent and generally unaffected by allegations that the indemnitee breached the contract. *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 127 (Tex. App.--Houston [1st Dist.] 2002, pet. denied) (applying Texas law); *see also Banner Sign & Barricade, Inc. v. Berry GP, Inc.*, No. 13-07-00596-cv, 2008 Tex. App. LEXIS 7120 (Tex. App.--Corpus Christi 2008, pet denied) (applying Texas law) ("Because the Indemnification Clause is an independent covenant, Banner

---

[8] Likewise, BP's reliance on *Mobil Chem. Co. v. Blount Bros. Corp.*, 809 F.2d 1175, 1178 (5th Cir. 1987) is misplaced as that case applied New York law to the relevant contract.

is not excused from its obligations under the contract based on allegations that Berry breached the contract."). The Fifth Circuit endorsed this independent obligation analysis in *Becker v. Tidewater*, where the Court, in considering language used in a prior case, stated:

> However, the court in *Marquette*, after finding that the indemnity agreement at issue was enforceable, states only that if the party "had been found to be in breach of those warranties, perhaps our application of the indemnity clause would be different." 367 F.3d at 408. *Marquette* does not hold that breach of a contract necessitates invalidation of an indemnity agreement included therein. Even if the indemnity agreement could be invalidated by Tidewater's breach of the time-charter contract, the district court did not err in holding that Tidewater did not breach the contract.

*Becker*, 586 F.3d 358, 368 (5th Cir. 2009).

Where, as here, there is not even an allegation that HESI breached the Contract, there is no basis for concluding that BP can escape its contractual indemnity obligations. This Court should grant HESI's Motion and deny BP's cross-motion.

## V.    BP's Fraud Allegations Do Not Vitiate Its Indemnity Obligations.

BP concedes that no case applying maritime law holds that a party may not be indemnified for allegedly fraudulent conduct. BP Response, p. 8. Instead, BP argues that if a party cannot be indemnified for gross negligence, it cannot be indemnified for fraud allegations.[9] BP's argument is based on an erroneous premise. Under maritime law, and given the facts of this case and the indemnity language, BP is required to indemnify HESI against all claims predicated on gross negligence. Thus, the line that BP attempts to draw to avoid its contractual indemnity obligations is not properly drawn at gross negligence. Moreover, given the parties' intentions as expressed in the Contract language, that line is also not properly drawn at allegations of fraud.

BP is not seeking independent damages from HESI in this case based upon allegedly fraudulent conduct. BP's fraud allegation is simply an artifice to pass through damages sought

---

[9] HESI did not act fraudulently, and as noted in its Motion, HESI denies that the claims asserted by BP are proper fraud and/or fraudulent concealment claims rather than breach of contract claims improperly cloaked as fraud. *See e.g., Kevin M. Ehringer Enters., v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011) (applying Texas law); *Davaco, Inc. v. Dunkin' Brands, Inc.*, No. 3:08-cv-0581-M, 2008 U.S. Dist. LEXIS 95356 *8 (N.D. Tex. 2008).

by third-parties for alleged losses suffered as a result of the oil spill. When viewed through this appropriate prism, the intent of the parties as expressed in the language of the indemnity provisions again becomes paramount. BP and HESI negotiated an allocation of risk and liability based upon their respective roles. That allocation requires BP to indemnify HESI for all claims resulting from a blowout or uncontrolled well condition and from all sub-surface pollution claims. BP should not be allowed to escape its contractual duty by a creative pleading pretense.

Further, the majority of cases cited by BP do not stand for the proposition that a party may not be indemnified for allegedly intentional conduct.[10] As BP concedes, those cases that do address intentional conduct either do not apply maritime law or do not include the specific risk allocation provisions involved in the Contract.[11] BP cites no governing authority precluding HESI from indemnity under the Contract even in the face of BP's baseless fraud allegations. Given BP and HESI's allocation of their respective liabilities, as expressed in the Contract's indemnity provisions, this Court should hold BP to its contractual obligations, grant HESI's summary judgment motion, and deny BP's cross-motion.

## VI.     BP Is Obligated to Pay HESI's Defense Costs.

BP's duty to defend is separate and distinct from its duty to indemnify and is triggered by the allegations against HESI. *See* HESI Motion, p. 11 n.9. Contrary to BP's contention that its

---

[10] *See Amoco Prod. Co. v. Forest Oil Corp.*, 844 F.2d 251, 253-54 (5th Cir. 1988) (simple negligence of indemnitee for crane toppling from oil and gas platform); *Diamond Crystal Salt Co. v. Thielman*, 395 F.2d 62, 63 (5th Cir. 1968) (negligence of a landowner for personal injuries to visitor caused by a non-obvious defect in the roof of a salt mine.); *Harris v. Howard Univ., Inc.*, 28 F.Supp. 2d 1, 13-14 (D.D.C. 1998) (gross negligence of a bank director); *Caldwell v. Enyeart*, No. 94-1406, 1995 U.S. App. LEXIS 37003 at **4-5, 15 (6th Cir. Dec. 8, 1995) (gross negligence of employee of medical services provider who failed to hospitalize county jail inmate suffering from asthma); *City of Montgomery v. JYD Int'l, Inc.*, 534 So.2d 592, 593-94 (Ala. 1988) (negligence for slip and fall incident occurring in portion of leased facility not under control of indemnitee).

[11] *See Sam Kohli Enters., Inc. v. The BOC Group, Inc.*, No. 11CV299 DMS, 2011 U.S. Dist. LEXIS 83972 at **6-7 (S.D. Cal. Aug. 1, 2011) (holding based on California Civil Code § 1668); *Modular Devices, Inc. v. Alcatel Alenia Space Espana*, No. 08-CV-1441, 2011 U.S. Dist. LEXIS 82773 at **12-14 (E.D.N.Y. Aug. 12, 2010) (rejecting indemnity under New York law for claims of tortious interference with contractual relationships); *Equitex, Inc. v. Ungar*, 60 P.3d. 746, 751 (Colo. Ct. App. 2002) (Colorado law precluded indemnity where jury found party engaged in intentional theft of stock certificates); *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 774 N.E.2d 775, 780-81 (Ohio Ct. App. 2002) (intentional interference with business relationships not subject to indemnification under Ohio law).

duty to defend cannot be determined pre-trial, §§ 19.4 and 19.6 of the Contract require BP to defend HESI against all claims resulting from a blowout or uncontrolled well and all claims for sub-surface pollution. Even BP does not dispute that the claims against HESI relate to a blowout or uncontrolled well or to sub-surface pollution. Thus, a final judicial determination is unnecessary because the condition precedent to BP's duty to defend has occurred.[12]

Moreover, BP ignores the fact that the Contract is to be construed under maritime law or, in the alternative, Texas law. Contract § 27.5. BP's attempt to distinguish maritime law fails, *see* note 11 *supra*, and Texas law supports BP's current duty to defend.[13] Rather than address this reality, BP cites to a list of inapplicable, non-maritime, non-Texas authorities.[14] Here, unlike the cases cited by BP, there are no statutory or contractual thresholds which HESI must satisfy that require trial on the merits. Rather, BP has a current duty to defend regardless of the nature of the claims pending against HESI.

## VII.  Conclusion and Prayer

HESI requests that this Court grant its summary judgment motion to enforce BP's Contractual indemnity obligations, and deny BP's cross-motion for summary judgment.

---

[12] BP's attempt to distinguish HESI's maritime law authorities fails. BP claims that *Clement v. Marathon Oil Co.*, 724 F. Supp. 431, 433 (E.D. La. 1989) is inapplicable because the court found that the indemnitor should have provided a defense only after the indemnitee was dismissed, but the timing of the ruling is irrelevant. The district court held that defense was owed based on the pleading allegations. Similarly, *In re Horizon Vessels* held that a final judicial determination was unnecessary because the indemnity provided coverage even if the indemnitee engaged in "reckless conduct." 2005 U.S. Dist. LEXIS 42110 at *34-35. BP's obligations are equally broad and do not rely upon a final judicial determination. BP has a current obligation to pay HESI's defense costs because its duty to defend is triggered by the allegations.

[13] *See Valley Health Sys., LLC v. Nurses 'R' Special, Inc.*, No. 2:09-cv-1361, 2011 U.S. Dist. Lexis 40216 *9-10 (D. Nev. 2011) (applying Texas law) ("competing theories of liability do not relieve the indemnitor's duty to defend"); *English v. BGP Int'l, Inc.*, 174 S.W.3d 366, 373 (Tex App.—Houston [14th Dist.] 2005, no pet.) ("When some theories of liability fail to give rise to the duty to defend but other theories do, the party should be required to provide a defense.").

[14] For example, in *Meloy v. Conoco, Inc.*, 504 So.2d 833, 838 (La. 1987) the Court concluded that the Louisiana Oilfield Indemnity Act of 1981 "nullified completely any provision of any agreement that requires defense and/or indemnity where there is any negligence or fault on the part of the indemnitee." Accordingly, there was no current defense obligation because the indemnitee's fault could nullify the indemnity. *Id.* at 839; *see also Suire v. Lafayette City-Parish Consol. Gov't*, 907 So.2d 37, 51 (La. 2005) (relying on *Meloy* rationale); *Inner City Redev. Corp. v. Thyssenkrupp Elevator, Corp.*, 913 N.Y.S.2d 29, 30 (N.Y. App. Div. 2010) (indemnity limited to losses caused by indemnitor's negligence).

Dated: December 28, 2011

Respectfully Submitted,

**GODWIN RONQUILLO PC**

**By:** /s/ *Donald E. Godwin*
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
DGodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
BBowman@GodwinRonquillo.com
Jenny L. Martinez
State Bar No. 24013109
JMartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
FHartley@GodwinRonquillo.com
Gavin E. Hill
State Bar No. 00796756
GHill@GodwinRonquillo.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

and

R. Alan York
State Bar No. 22167500
AYork@GodwinRonquillo.com
Jerry C. von Sternberg
State Bar No. 20618150
JVonSternberg@GodwinRonquillo.com
Misty Hataway-Coné
State Bar No. 24032277
MCone@GodwinRonquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Reply to BP's Memorandum in Opposition to HESI's Motion for Summary Judgment and HESI's Response to BP's Cross-Motion for Partial Summary Judgment Regarding Indemnity Issues has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this 28th day of December, 2011.

                                            /s/ Donald E. Godwin
                                            Donald E. Godwin