5/3/2011 Case 2:10-md-02179-CJB-DPC Document 5026-2 Filed 12/29/11 Page 1 of 14
Case 2:14-cv-02766 Document 1-2 Filed 1/06/14 Page 1 of 14
additional sign up forms with BP

**From:** Khanh Le <Khanh.Le@danos.com>
**To:** jbeamcl1@aol.com <jbeamcl1@aol.com>
**Cc:** Gary Hutchinson (BP) <gary.hutchinson@bp.com>
**Subject:** additional sign up forms with BP
**Date:** Tue, May 3, 2011 7:22 am
**Attachments:** Transitional_MVCA.pdf (443K), Notice_of_Termination_letter.pdf (28K), ACH.pdf (69K), W-9_FORM.pdf (443K)

Hi Herbert,

It was nice speaking to you. Thank you for your interest in working with BP in their efforts to clean up the oil spill. I am attaching the following documents for you to complete:

1. Transitional MVCA - Complete a contract for your vessel, AND **INITIAL THE BOTTOM OF EACH PAGE**.
2. Notice of Termination letter - If your boat has worked under BP's Vessels of Opportunity before this new program, we need to terminate your vessels under that old contract.
3. ACH, and
4. W-9 form — Name and Address on these two forms must match the name on the first page of the contract & the address on Exhibit A of the contract.

And last but not least, please attach a copy of your vessel's registration, a captain's license issued by the US Coast Guard, and business/commercial fishing license. **All documents must be MAILED to my attention at:**

Danos & Curole
P.O. Box 1460
13083 Hwy 308
Larose, La 70373

If you have any questions, please feel free to contact me.

Best regards,
Khanh Le
985.693.3313

Confidentiality Statement:
This e-mail may contain confidential information.It is for the sole use of
the intended recipient.  If you have received this transmission in error,
please delete this e-mail from your computer and do not forward or otherwise
retransmit the e-mail or the information contained in the e-mail. Your
cooperation is appreciated.

EXHIBIT B

## Notice of Termination of Master Vessel Charter
## Commencement of Transitional MC252 Master Vessel Charter

|  | **Charterer:**<br>BP Exploration & Production Inc.<br>501 WestLake Park Boulevard<br>Houston, Texas 77079 | Project: Mississippi Canyon (MC-252) |
|---|---|---|

To:                                                                                       Date:

Master Vessel Charter Agreement No.:

Vessel Name:

Dear Vessel Owner:

As the Mississippi Canyon spill response transitions from an emergency response into a more normal and routine operating condition, it is appropriate that the contracts and the way we work also transition into a more normal way of working. To this end, please be advised that pursuant to the terms of the current and effective Master Vessel Charter Agreement ("MVCA"), BP is providing this "Off Hire Dispatch Notification" which terminates the current MVCA immediately as of the date noted below.

However, as BP continues to have a need for the services of your vessel, we would request that you consider continuing your support of the response by working under the terms and conditions of the attached MC 252 Transitional Master Vessel Charter Agreement. We feel that the terms and conditions of the MC 252 Transitional Master Vessel Charter Agreement are more aligned with our ongoing operational needs and commercial situation.

BP very much appreciates and thanks you for your willingness to assist in the oil spill response to date. We hope that you will continue your support of response operations by signing the new MC 252 Transitional Master Vessel Charter Agreement. If you choose not to continue BP will arrange for an off hire inspection and decontamination of your vessel as soon as possible.

Thank you for your cooperation.

Sincerely,
BP Exploration & Production, Inc. (Charterer):

*[signature]*

William D. Wallace

Termination Date of MCVA: November 26, 2010

## MC252
## TRANSITIONAL MASTER VESSEL CHARTER AGREEMENT

This Master Vessel Charter Agreement (hereinafter referred to as the CHARTER) is by and between BP Exploration & Production Inc. (hereinafter referred to as CHARTERER), and _____ hereafter referred to as VESSEL OWNER), and applies to each VESSEL described in Exhibit "A" (Vessel Information) that has been signed by VESSEL OWNER, and signed and numbered (with a unique contract number) by CHARTERER.

**PLEASE BE ADVISED THAT THE TERMS OF THIS CHARTER SUPERSEDE ALL OTHER MASTER VESSEL CHARTER AGREEMENTS ENTERED INTO BETWEEN VESSEL OWNER AND CHARTERER. THE TERMS OF THIS CHARTER DIFFER FROM ANY PREVIOUS MASTER VESSEL CHARTER AGREEMENT AND THEREFORE THE VESSEL OWNER SHOULD READ THE TERMS CAREFULLY. THE TERMS OF THIS CHARTER ARE DESIGNED TO COMPLY FULLY WITH ANY AND ALL CONSENT JUDGMENTS ENTERED PREVIOUSLY WITH RESPECT TO THE ORIGINAL MASTER VESSEL CHARTER AGREEMENT.**

### ARTICLE 1.  TERM OF CHARTER

A. Subject to the availability (as mutually agreed upon between CHARTERER and VESSEL OWNER) of the vessel described in Exhibit "A" (hereinafter referred to as VESSEL), VESSEL OWNER agrees to let and CHARTERER agrees to hire the VESSEL from DAY to DAY as may be requested by CHARTERER. VESSEL OWNER shall deliver or otherwise make available the VESSEL to CHARTERER and place the VESSEL at CHARTERER's disposal at a mutually agreed location. The term of the CHARTER shall commence on the date of the departure of the VESSEL from the mutually agreed location of delivery into the service of Charterer, and shall be referred to as the "CHARTER TERM." CHARTERER may terminate the CHARTER at any time and the CHARTER TERM will terminate as set out in Paragraph B of this Article 1.

B. The VESSEL shall be delivered at the commencement of the CHARTER TERM, fully tanked with fuel, hydraulic fluid, lubricated, manned, provisioned and ready in all respects to perform SERVICES as required by this CHARTER. The VESSEL shall be redelivered to VESSEL OWNER at the close of each DAY to the original point of delivery by CHARTERER, unless VESSEL OWNER elects not to return directly to the point of dispatch, in which case, the CHARTER TERM shall cease immediately upon such election.

### ARTICLE 2.  EMPLOYMENT AND SERVICES OF VESSEL

A. During each CHARTER TERM, the VESSEL shall be utilized exclusively in the carriage of CHARTERER's employees, contractors, business invitees, equipment and provisions and in the performance of various tasks associated with oil spill response and containment efforts as directed by CHARTERER (hereinafter referred to as SERVICES). Such SERVICES shall include, but not be limited to, tending or deploying boom and skimming equipment, skimming operations, recovering oiled debris, collecting garbage, assistance with wildlife operations and towing equipment. BP, in cooperation with OSHA and the U.S. Coast Guard, has developed a training and safety program ("HORIZON Response Program" or "HRP") for VESSELS and VESSEL crews engaged in oil spill response activities under this CHARTER. The HRP was approved by OSHA on May 7, 2010 and received approval from the U.S. Coast Guard on May 8, 2010. Per OSHA and U.S. Coast Guard directives, the HRP is subject to continuous improvement processes. As of May 10, 2010, BP will ensure that all VESSEL crews engaged in oil spill response activities (1) receive all necessary training for such activities as per the HRP, (2) receive all necessary credentials for such activities as per the HRP, and (3) receive all necessary protective equipment for such activities as per the HRP. The VESSEL shall be available and at CHARTERER's disposal for operation twenty-four (24) hours per day on the days that the CHARTERER has instructed the VESSEL OWNER that the VESSEL is hired for that twenty-four (24) hour period.

B. The VESSEL shall not be used for any purpose other than performance of SERVICES while operating and being paid under this CHARTER.

**ARTICLE 3.** **PERFORMANCE OF VOYAGES**

During the CHARTER TERM, the VESSEL OWNER or its designated master shall perform all voyages without delay. VESSEL OWNER or its designated master shall load, stow, and trim the VESSEL. The decision to proceed on a trip in the face of adverse or changing weather or sea conditions shall be the sole decision of the VESSEL OWNER or the designated master.

**ARTICLE 4.** **OPERATION IN COMPLIANCE WITH LAW**

A. VESSEL OWNER warrants (i) that it has the right to charter the VESSEL to CHARTERER, (ii) that the VESSEL is entitled to perform the SERVICES under all applicable law (including having all endorsements on its documentation that may be required to perform the SERVICES in accordance with applicable law) and (iii) that the same is free of all encumbrances which might disturb CHARTERER's full right to SERVICES described in this CHARTER. The VESSEL OWNER shall exercise due diligence to deliver and maintain the VESSEL in a seaworthy condition. The VESSEL must display a current United States Coast Guard Safety Examination decal, unless otherwise approved by the CHARTERER. The VESSEL shall be operated, manned and maintained by VESSEL OWNER at all times during the term of this CHARTER in accordance with all applicable state and federal laws, rules and regulations, including (but not limited to) life saving requirements and operating area limitations. The VESSEL OWNER warrants to exercise good faith in the performance of each and every obligation under this CHARTER.

B. VESSEL OWNER shall be responsible for paying any civil, criminal, or administrative fines, citations, or penalties that VESSEL OWNER may incur as a result of VESSEL OWNER's violation of any laws, rules, or regulations during the term of this CHARTER.

C. VESSEL OWNER shall indemnify and hold CHARTERER harmless from any liability for personal injury, death, or property damage attributable to VESSEL OWNER's intentional misconduct constituting a violation of state or federal criminal law.

**ARTICLE 5.** **DESCRIPTION OF VESSEL**

The VESSEL and its capabilities and capacities are described in Exhibit "A". VESSEL OWNER warrants, in good faith, the accuracy of all information set forth in Exhibit "A" and that the VESSEL has the capabilities and capacities as set forth in Exhibit "A" and that it shall be seaworthy (Fit for Purpose) at the time of delivery to CHARTERER. Length of the VESSEL will be determined by the VESSEL's state or federal registration documents as of March 30, 2010.

**ARTICLE 6.** **MANNING REQUIREMENTS**

A. VESSEL OWNER shall at all times man the VESSEL with a sufficient number of competent, physically fit for duty and properly licensed crew and/or deckhands trained and experienced in the operation of the VESSEL in the waters in which the VESSEL is to operate under this CHARTER. The specific number of crew shall be two (2) crew members (captain and one crew) for vessels under 41 feet in length, and three (3) crew members (captain and 2 crew) for vessels 41 feet or greater in length, unless otherwise approved by CHARTERER in writing. VESSEL OWNER shall cause the crew of the VESSEL to carry out their duties with due care and workmanship and the utmost dispatch and diligence. VESSEL OWNER shall be responsible for properly receiving and stowing all cargo, including maintenance of the proper trim and draft of the VESSEL. Cargo loading and unloading operations shall be under the supervision and control of VESSEL OWNER. VESSEL OWNER and crew shall operate the VESSEL in such a way as to not cause unreasonable risk or avoidable damage to any personnel or cargo. Through notification to, and upon advance written approval by, CHARTERER, VESSEL OWNER may provide additional crew members.

B. VESSEL OWNER warrants that the crew to be provided by VESSEL OWNER shall meet legal manning requirements in accordance with all applicable law for uses and purposes of the VESSEL required hereunder and as more particularly stated in ARTICLE 2 - EMPLOYMENT AND SERVICES OF VESSEL. The VESSEL's crew shall be VESSEL OWNER's employees at all times. VESSEL OWNER shall pay all wages, fringe benefits, applicable taxes, expenses, applicable fees/taxes, and transportation costs required for the

VESSEL's crew. VESSEL OWNER shall provide a list, including names and addresses, of all crew members employed by the VESSEL OWNER on the VESSEL while the VESSEL is performing SERVICES under this CHARTER.

**ARTICLE 7.    RADIO COMMUNICATIONS**

VESSEL OWNER shall have, as a minimum, the following radio equipment in a functional and working condition at all times on VESSEL: one (1) VHF marine radio. Except when outside of communication range, VESSEL OWNER may be required to maintain constant communications on an hourly basis with the assigned Task Force Leader (TFL) and/or CHARTERER designated dispatcher by monitoring the VHF marine radio and providing VESSEL's position as directed by TFL and/or dispatcher. If VESSEL OWNER fails to comply with the provisions of this Article, CHARTERER may terminate this CHARTER upon twenty-four (24) hours notice, to be confirmed in writing.

**ARTICLE 8.    VESSEL PROVISIONS**

VESSEL OWNER shall provide and pay for all supplies necessary for the VESSEL's mechanical functioning including, but not limited to, fuel. VESSEL OWNER shall provide and pay for all expenses necessary for the maintenance of the crew including, but not limited to, provisions, commissary, water, laundry and any necessary lodging.

**ARTICLE 9.    MAINTENANCE OF VESSEL**

VESSEL OWNER shall maintain the VESSEL's hull and machinery in a seaworthy condition (Surveyor designation of "Fit for Purpose"). VESSEL OWNER will be solely responsible for any normal wear and tear to the VESSEL for the SERVICES the VESSEL is performing under the CHARTER. CHARTERER shall provide or otherwise reimburse VESSEL OWNER's actual cost of hull and gear cleaning and decontamination if VESSEL requires such cleaning as a direct result exposure to oil or oil waste coming from the MC252 while performing SERVICES under this CHARTER.

**ARTICLE 10.    HIRE**

A.    CHARTERER will pay VESSEL OWNER for each CHARTER TERM or SERVICES satisfactorily performed and accepted by the CHARTERER in accordance with Exhibit "B". Any amendment or modification of this CHARTER must be in writing and duly executed by both parties in order to be binding. Provided, however, that CHARTERER shall be entitled at any time during the term of this CHARTER to revise Exhibit "B", by submitting or making available for viewing to VESSEL OWNER, a new Exhibit "B".

B.    CHARTERER shall pay Hire for the VESSEL and the SERVICES to be provided by the VESSEL OWNER, for each CHARTER TERM in accordance with the following provisions. For the purposes of ARTICLE 10 - HIRE, a day shall be deemed to be any portion of a twenty-four (24) hour period beginning at 12:00 midnight and ending at 11:59 pm. The length of vessels will be determined by the length noted on the VESSEL's state or federal registration documentation which was in effect on March 30, 2010. CHARTERER will not pay for stand by days, weather delays or down time due to any VESSEL repairs. CHARTERER will only pay for actual days on which the VESSEL and its crew are performing SERVICES on the water under this CHARTER.

C.    The termination of the CHARTER TERM (termination of dispatch) shall be determined by the date noted as the "termination date" stated on the written notice of termination provided by CHARTERER to VESSEL OWNER. If termination is by VESSEL OWNER, termination of dispatch shall be on the last day the VESSEL actually performed SERVICES as directed by CHARTERER during the CHARTER TERM.

D.    VESSEL OWNER shall be compensated after receipt and approval of invoices submitted by VESSEL OWNER to CHARTERER. The VESSEL OWNER shall provide all necessary information with an invoice to CHARTERER. Payment of all sums due shall be made within fifteen (15) days of receipt of an invoice and supporting documentation by CHARTERER.

### ARTICLE 11. PORT FEES, MOORAGE, TAXES

A. VESSEL OWNER shall pay all taxes incidental to use of the VESSEL.

B. The VESSEL shall be loaded and unloaded at any dock, berth, or place that CHARTERER may direct, as approved by VESSEL OWNER, which approval shall not be unreasonably withheld. VESSEL OWNER shall assist CHARTERER in locating and selecting the docks and landings suitable to accomplish the safe loading and unloading of passengers and cargo.

### ARTICLE 12. OFF HIRE

A. In the event of any loss of time, not due to fault of CHARTERER, on account of: dry-docking or other necessary measures to maintain the efficiency of the VESSEL; deficiency of crewing or stores; breakdown of machinery, gear or equipment, damage to hull; collision; breach of orders; neglect of duty of master, officer or crew; strike or other labor stoppages of master, officers or crew; refusal to sail; stranding; fire; difficulties to the VESSEL's flag, ownership or previous ports of call; requisition of title or use of the VESSEL; failure to comply with rules, regulations or laws of ports of call; interference by authorities; detention of VESSEL or master or officers; or any other similar accident or event whatsoever either hindering or preventing the full working of the VESSEL, then no HIRE is to be paid for any time loss until the VESSEL is again in sufficient state to fully resume SERVICES.

B. In the case of the VESSEL taken off-HIRE while on a voyage by any reason or as a result of an accident or occurrence described in 12A above, the hire shall be suspended from the time of the accident or occurrence until the VESSEL is again in the same position as before the accident or occurrence and the VESSEL returns to an equivalent position or a substitute voyage directed by CHARTERER.

C. During any period of off-HIRE all reimbursable items that would otherwise be for CHARTERER's account, if any, under this CHARTER shall be for the VESSEL OWNER's account.

D. It is understood that the VESSEL shall use due diligence to comply with all applicable federal, state and local environmental protection and safety laws, regulations, and stipulations when performing SERVICES in effect at all ports within the trading limits. If the VESSEL is found not to comply with any such rule, regulation or law, VESSEL OWNER shall take immediate measures to comply, and all expenses incurred as a result of such failure to comply shall be for VESSEL OWNER's account under the off-HIRE provisions of ARTICLE 12.

E. If the VESSEL is lost or becomes a constructive total loss, HIRE shall cease at 11:59 PM of the day of VESSEL loss or constructive total loss. If the VESSEL is missing, HIRE shall be suspended as of 11:59 PM on the day when the VESSEL was last heard from and until the VESSEL's safety has been established, unless loss of contact is deemed to have occurred through no fault of VESSEL OWNER or breakdown of the VESSEL's equipment.

F. Any HIRE paid for in advance is to be adjusted by refund or deduction from future payments for any off-HIRE or suspension during the period for which payment was made.

G. If the VESSEL is off-HIRE for a period of time exceeding twenty-four (24) hours for any of the events referred to in ARTICLE 12, CHARTERER may terminate this CHARTER at its sole option if VESSEL OWNER is not making best efforts to return to a safe harbor.

### ARTICLE 13. INSURANCE

A. VESSEL OWNER confirms that it will maintain in place any insurance policies it is carrying as of the date immediately prior to entering into this CHARTER or that it routinely carries for its usual operations

B. The insurance coverage referred to in Paragraph A above shall remain in effect during the CHARTER TERM, when the VESSEL is on HIRE for training as directed by CHARTERER, or the VESSEL is on HIRE for oil spill response. The time of coverage shall be from dispatch until termination of dispatch by either the VESSEL OWNER or CHARTERER.

C. In the event of any happening that may result in a claim against the coverage afforded in Paragraph A, prompt notice thereof shall be given to the party first aware of such claim in order to afford both parties an immediate opportunity to investigate the facts and circumstances giving rise to the potential claim.

D. The parties understand and agree that the insurance coverage summarized in Paragraph A is more particularly described in the insurance policies, the terms, conditions and exclusions of which shall control.

Note: Copies of the insurance policies summarized in Paragraph A shall be provided upon request.

E. VESSEL OWNER warrants that during the term of this CHARTER that as to the insurance described in Paragraph A of this Clause 13, it shall:

1. Pay all premiums to keep such insurance policies in full force and effect on the terms and conditions more particularly described in such policies.

2. Will not modify, amend or otherwise agree to any reduction in coverage afforded under the policies.

F. If VESSEL OWNER has a claim against CHARTERER or has Notice of any claim(s) for which CHARTERER is or could be accountable:

1. VESSEL OWNER will exercise good faith and prudent management of all claims, including third party claims, and will not defend or settle third-party claims without CHARTERER's knowledge and prior written consent.

G. In the event VESSEL OWNER's cost for insurance as provided for hereunder is, by virtue of the SERVICES being provided hereunder, in excess of that normally paid by VESSEL OWNER for its standard coverage, then CHARTERER agrees to pay the cost over and above that normally incurred by VESSEL OWNER for its standard coverage. VESSEL OWNER shall advise CHARTERER of such excess cost before incurring same and shall document the amount of such cost it is claiming for. Nothing herein shall prevent CHARTERER from taking out insurance for any risks it may deem appropriate but nothing herein shall require CHARTERER to do so.

**ARTICLE 14. SALVAGE**

All derelicts and salvage shall be for VESSEL OWNER's and CHARTERER's equal benefit, after deducting VESSEL OWNER's and CHARTERER's expenses and crew portion.

**ARTICLE 15. CHARTER NOT A DEMISE**

Nothing stated in this CHARTER is to be construed as demise of the VESSEL to CHARTERER. VESSEL OWNER shall at all times remain responsible for the navigation of the VESSEL, acts of pilots, tug vessels, crew, selection of safe ports/berths, and all other similar matters as if trading for its own account.

**ARTICLE 16. CHARTERER'S USE OF VESSEL**

During the CHARTER TERM the VESSEL OWNER shall not make any other use of the VESSEL without CHARTERER's prior written authorization. In addition, the VESSEL OWNER shall not allow on board the VESSEL any non-crew member who would interfere with the VESSEL OWNER's performance of SERVICES under this CHARTER. If the VESSEL OWNER allows on board the VESSEL any persons who are not crew members, or CHARTERER employees, or business invitees, the VESSEL OWNER shall be solely responsible for any liability for any injury to or death to any such person attributable to that person's presence on board the VESSEL. In no event shall CHARTERER be liable for any expenses resulting from the injury to or death of any such person allowed on board without CHARTERER's prior written authorization.

**ARTICLE 17. VESSEL OWNER IS INDEPENDENT**

A. VESSEL OWNER and its employees and any approved Subcontractors and their employees are

independent contractors and are not employees, partners, or joint ventures with CHARTERER. VESSEL OWNER and Subcontractors and their respective employees will not represent CHARTERER in performance of SERVICES under this CHARTER, or engage in any conduct that would imply that VESSEL OWNER and Subcontractors and their respective employees are other than independent contractors.

B. VESSEL OWNER is responsible for the manner, means and methods of performing SERVICES under this CHARTER.

C. VESSEL OWNER shall pay all federal and state taxes, contributions and/or assessments associated with the performance of SERVICES, including, but not limited to, income taxes and self-employment taxes, and shall be responsible for providing its own employee benefit plans.

D. VESSEL OWNER acknowledges and understands that as an independent contractor, VESSEL OWNER and its employees and Subcontractors and their employees are not eligible for any employee benefits under any plans maintained by CHARTERER, including, but not limited to, the CHARTERER Savings and Investment Plan, Pension Plan, Sick Pay Plan, Long Term Disability Insurance Plan, Voluntary Personal Accident Insurance Plan, Severance Plan, Group Life Insurance Plan, Dental Plan, Occupational Death Plan, Business Travel Plan and Medical Plan.

E. VESSEL OWNER will indemnify, defend and hold CHARTERER and its respective employees and agents harmless from and against any and all claims, demands, actions, losses, expenses and/or liabilities resulting from or related to:

1. Any claim, demand, and/or determination that VESSEL OWNER, its employees and/or Subcontractors and their employees are not independent contractors in connection with the performance of SERVICES under this CHARTER, including, but not limited to, any claims or liabilities for regular or overtime wages, salaries, taxes, contributions, and/or assessments; and/or

2. Any claim, demand, and/or determination that VESSEL OWNER, its employees and/or Subcontractors and their employees are entitled to benefits in connection with the performances of SERVICES under this CHARTER under any employee benefit plans maintained by CHARTERER; and/or

3. Any claim, demand, and/or determination that VESSEL OWNER's employees or Subcontractors' employees are entitled to additional compensation or benefits as a result of VESSEL OWNER's employment policies and practices; and/or

4. Any claim, demand, and/or determination that VESSEL OWNER's employees or Subcontractors' employees are entitled to additional compensation or benefits, of whatever kind or character, or damages, of whatever kind or character, based on whole or in part upon theories that they are direct, dual, loaned, borrowed, and/or co- employees of CHARTERER, in addition to being employees of VESSEL OWNER or Subcontractor.

5. Should VESSEL OWNER or Subcontractor assume the defense of CHARTERER pursuant to Paragraph E, CHARTERER shall also be entitled to separate defense and representation of its interests through counsel acceptable to CHARTERER.

**ARTICLE 18. NOTICES**

All notices and communications from VESSEL OWNER to CHARTERER and from CHARTERER to VESSEL OWNER shall be addressed as follows:

MVCA-0703

Page 6

CHARTERER:

BP Exploration & Production Inc.
Attn: VoO Logistics

_____
_____
_____
_____
_____

(to be completed by VoO Logistics)


VESSEL OWNER: (See Appendix A)

### ARTICLE 19. CHOICE OF LAW AND FORUM

The rights and obligations of the Parties to this CHARTER including all matters of construction, validity and performance, shall in all respects be governed and enforced in accordance with the general maritime laws of the United States. In the event, but only in the event, the maritime laws of the United States do not apply, the laws of the State of Louisiana shall govern. Any litigation arising out of or relating to the CHARTER may be brought in a court of competent jurisdiction in New Orleans, Louisiana or Houston, Texas.

### ARTICLE 20. AUDIT AND TERMINATION

At any time during the term of this CHARTER, CHARTERER shall have the right to audit logs, books, payrolls, and records relating to any of the services performed hereunder. In addition to any other right of termination herein, VESSEL OWNER may terminate this CHARTER or any company listed in Exhibit "A" at any time for any reason whatsoever by giving the said party twenty-four (24) hours advance written notice of such termination, and any company listed in Exhibit "A" may terminate its obligations upon (24) hours advance written notice to CHARTERER.

### ARTICLE 21. ASSIGNMENT/SUBCONTRACTING

A. VESSEL OWNER will not assign any of its rights or delegate any of its obligations under this CHARTER without prior written approval from CHARTERER. CHARTERER's approval of any assignment, subcontract or delegation will not relieve VESSEL OWNER of any responsibility under this CHARTER.

B. VESSEL OWNER shall not assign any rights or delegate any obligations hereunder without CHARTERER's prior written approval, which shall not be unreasonably withheld. Any such unauthorized assignment shall be void. CHARTERER may assign this CHARTER to third parties specifically including any of its respective affiliates or a response action contractor.

C. Always subject to CHARTERER'S prior written approval, should VESSEL OWNER assign/subcontract its obligations hereunder, the hire rate shall remain the same as for the Original VESSEL OWNER.

D. VESSEL OWNER agrees to abide by the BP Conflict of Interest policy which is incorporated herein as if fully set forth herein. VESSEL OWNER acknowledges that he and his crew have read the Conflict of Interest policy and will be guided accordingly.

### ARTICLE 22. WAIVER

If CHARTERER fails to enforce any right or remedy available under this CHARTER, that failure will not be construed as a waiver of any right or remedy. A waiver of any claim, demand, right or remedy based on

the breach of any provision of this CHARTER will not be construed as a waiver of any other claim, demand, right or remedy based on a subsequent breach of the same or any other provision.

### ARTICLE 23. SEVERABILITY

If any part, term or provision of this CHARTER is determined by a court of competent jurisdiction to be unlawful or unenforceable, the validity and enforceability of the remaining parts, terms and provisions will not be affected.

### ARTICLE 24. ENTIRE AGREEMENT; SUCCESSORS

A. This CHARTER includes Exhibits A and B attached hereto and constitutes the entire agreement between the Parties with respect to this CHARTER. This CHARTER cancels and supersedes all prior negotiations, representations or agreements, both written and oral, including any proposals submitted by VESSEL OWNER. The Parties have not been induced by any representation, statements or agreements other than those expressed in this CHARTER. No changes, alterations, or modifications to this CHARTER will be effective unless made in writing and signed by both Parties.

B. This CHARTER will benefit and bind the successors, representatives and assignees of both Parties.

### ARTICLE 25. PRIORITY OF TERMS

In the event of any conflict or inconsistency between the various parts of this CHARTER, the Articles will take precedence over all other parts of this CHARTER, including any Exhibits, Attachments and Addenda, unless specifically stated otherwise.

THE PARTIES HAVE EXECUTED THIS CHARTER, by their respective authorized representatives, on the dates indicated below. This CHARTER will be ineffective until signed by both parties. Its terms and conditions will apply to the VESSEL described in an Exhibit "A" (Vessel Description). There may be multiple Exhibits "A". However each will cover a single VESSEL, and each must have unique contract number assigned by CHARTERER. Small boats, skiffs, etc. carried on, or towed by, the VESSEL shall not constitute an additional VESSEL eligible for compensation.

VESSEL OWNER: _____

CHARTERER :
BP Exploration & Production Inc.

By:_____ _____   By:_____ _____
(Signature)                    (Date)        (Signature)                   (Date)


_____                  _____
(Print or Type Name)                          (Print or Type Name)


_____                  _____
(Print or Type Title)                         (Print or Type Title)

## EXHIBIT A

## VESSEL INFORMATION

*Only one vessel may be listed. A unique contract number, assigned by CHARTERER, is required for each vessel. Each Exhibit A must be signed by VESSEL OWNER, and signed and numbered by CHARTERER, to be effective.*

**Contract Number: _____ # ___ ___ ___ ___ ___**

A. **General Information**

   VESSEL Name: _____

   Type/Use of VESSEL (e.g., shrimp, crab, oyster, fishing, etc.): _____

   Call Sign: _____

   Location and home port (include county/parish): _____

   USCG Safety Decal No. and Expiration Date: _____

   Federal or State Registration No. and Expiration Date: _____
      (You must provide copy of the VESSEL registration)

   VESSEL Type (circle the one that applies): <u>Commercial Vessel</u>   or   <u>Recreational Boat</u>

   Commercial License # and date of issue (if applicable): _____ / _____
      (You must provide a copy of a commercial fishing permit or business license, or other evidence of commercial activity, such as, catch weigh bills.)

   VESSEL Construction (steel, wood*, etc): _____
      (* Wood vessels, being difficult to decontaminate if oiled, are generally not suitable for the VoO Program.)

   VESSEL Length ( You must provide a copy of the state or federal vessel documentation as of March 30, 2010) : _____

   Bunk (sleeping) Capacity: _____

   Crew Number Requirement: _____

B. **VESSEL OWNER & Contact Info**

   Company/Individual Name: _____

   Contact Name: _____

   Email Address: _____

   Mailing Address: _____

   Physical Address: _____

Home Phone: _____

Cell Phone: _____

Facsimile Phone: _____

C. **VESSEL Survey/Insurance Information**

　　Date/Place of Survey: _____

　　Insured? (Yes/No) If yes, insurance company name: _____.

D. **VESSEL Engine Information**

　　Make: _____

　　Model: _____

　　Total HP: _____

　　Number of Engines: _____

　　Drive Type (Inboard, Outboard, Inboard/Outboard): _____

　　Fuel Storage Amount (Gallons): _____

　　Burn Rate (GPH): _____

　　Fuel Type: _____

　　Aux. Engine? (Yes/No, used for what?) _____

　　Aux. HP: _____

　　Aux. Fuel Type: _____

　　Number of Engine Hours to date: _____

E. (This item no longer used.)

F. **Comments:** (Additional information that could be useful in vetting the VESSEL, e.g., additional communication equipment other than VHF radio, GPS, special capabilities, etc.)

_____
_____
_____
_____
_____
_____

_____

_____

This Exhibit is subject to, and fully incorporates, the terms and conditions of the MASTER VESSEL CHARTER AGREEMENT between the VESSEL OWNER and CHARTERER.

VESSEL OWNER hereby certifies the accuracy of the information above and the documentation submitted with this Exhibit.

VESSEL OWNER: _____

CHARTERER:
BP Exploration & Production Inc.

By:_____ _____
(Signature)         (Date)

By:_____ _____
(Signature)         (Date)

_____
(Print or Type Name)

_____
(Print or Type Name)

_____
(Print or Type Title)

_____
(Print or Type Title)

## EXHIBIT B

## COMPENSATION PROVISIONS/PUBLISHED RATE SCHEDULE

1. **COMPENSATION**

   A.   No compensation will be paid for days the VESSEL does not work due to the election of the OWNER or operators of the VESSEL, or due to the suspension of operations for any reason whatsoever, including weather. No compensation will be paid for stand by days. Compensation will only be paid for actual days worked on the water. Otherwise, as full and complete compensation to VESSEL OWNER for SERVICES satisfactorily performed and for assuming obligations hereunder, CHARTERER, for and on behalf of OWNERS, will pay VESSEL OWNER on the basis of the fixed rates (Fixed Rates), set forth below in Paragraph 2 - FIXED RATES. CHARTERER shall be entitled at any time during the term of this CHARTER to revise this Exhibit "B", by submitting or making available for viewing to VESSEL OWNER, a new EXHIBIT "B".

   B.   There may be multiple Exhibits "A" to the CHARTER. However each will cover a single VESSEL, and each must have unique contract number assigned by CHARTERER. Small boats, skiffs, etc. carried on, or towed by, the VESSEL shall not constitute an additional VESSEL eligible for compensation.

2. **FIXED RATES**

   VESSEL OWNER's FIXED RATES (hereinafter FIXED RATES) are agreed to be VESSEL OWNER's sole, complete, and exclusive compensation for performing and completing SERVICES under CHARTER, FIXED RATES are not subject to renegotiation or retroactive adjustments based on actual experience and are not subject to escalation.

   A. Rates:

   | Length of Vessel | Day Rate |
   |---|---|
   | Less than 24' | $600.00 |
   | 24' to 40' | $1200.00 |
   | 41' and greater | $1500.00 |

   Plus:
   Specialized equipment required by BP reimbursable at cost +10%
   PPEs will be provided by CHARTERER

   Note:   VESSEL OWNER is to provide meals for crewmembers at no additional cost to CHARTERER.