UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * | MDL NO. 2179 |
| | * | SECTION J |
| Relates to:  *All Cases* | * | |
| | * | JUDGE BARBIER |
| (Including No. 10-2771) | * | |
| | * | MAG. JUDGE SHUSHAN |
| ************************************* | * | |

SUR-REPLY BRIEF
IN FURTHER SUPPORT OF THE PSC's MOTION TO
ESTABLISH ACCOUNT AND RESERVE FOR LITIGATION EXPENSES

The Plaintiffs' Steering Committee, by and through Plaintiffs' Liaison Counsel, and on behalf of all Common Benefit Attorneys, respectfully submits the following Sur-Reply Brief in further support of the PSC's Motion to Establish Account and Reserve for Litigation Expenses, in order to: **(i)** Further address the Court's authority to compel BP to reserve funds with respect to settlements or other payments made by and through the Gulf Coast Claims Facility ("GCCF"); **(ii)** Further address the Court's authority to compel Defendants to reserve funds with respect to judgments, settlements or other payments to plaintiffs who have only filed State Court cases, which have been removed and transferred to the MDL, but which may be subject to remand; **(iii)** Further address the Court's authority to compel Defendants to reserve funds with respect to judgments, settlements or other payments to claimants who have never asserted claims in (and/or that were removed to and/or transferred to) the Transocean Limitation and/or the MDL; and **(iv)** Submit a revised Proposed Order, which seeks to expressly clarify the points made in the PSC's Reply Brief.

MAY IT PLEASE THE COURT:

As the Plaintiffs have maintained since the inception of this litigation, the Court has

jurisdiction over the Gulf Coast Claims Facility ("GCCF"), as the agent of BP in reviewing,

processing, and attempting to resolve both OPA claims and other claims against BP and other

Defendants arising out of the Macondo / *Deepwater Horizon* explosion, fire, blowout and

resulting spill, on at least one or more of the following bases:

- Federal District Courts "shall have original exclusive jurisdiction over all controversies arising under" the Oil Pollution Act of 1990 ("OPA"). 33 U.S.C. §2717(b).[1]

- The Court has *in rem* jurisdiction over the salvage of the *Deepwater Horizon* and all claims asserted in connection with the Limitation proceeding brought by Transcocen and Triton Asset Leasing GmbH.[2]

- The Court has jurisdiction over the claims of injured seamen or their survivors for damages under the Jones Act and/or General Maritime Law.

- The Court has jurisdiction over the claims of shrimpers, oyster lessees, commercial fishermen and others under the General Maritime Law against Transocean, Halliburton, Cameron and/or other parties.[3]

- BP has expressly consented to the jurisdiction of the Court over any claims arising out of or otherwise relating to the Vessel of Opportunity ("VoO") charter agreements

---

[1] The presentment requirement under 33 U.S.C. §2713(a) only applies to substantive claims "for removal costs or damages" and does not affect the jurisdiction of the court to address other "controversies" arising under the Act.

[2] *See* ORDER, *In re the Complaint and Petition of Triton Asset leasing GmbH,* No.10-1721 (S.D.Tex. May 13, 2010).

[3] *See generally,* ORDER AND REASONS (Aug. 26, 2011) [Doc 3830], pp.18-26.  *See also, e.g.,* Coto v. J. Ray McDermott, S.A., 1999-1866 (La. App. 4th Cir. 10/25/2000), 772 So.2d 828, 830, *citing,* Harden v. Gordon, 11 Fed. Cases 485 (1st Cir. 1823), regarding the Court's special duty and jurisdiction to protect seamen.

between BP and claimants who may be asserting loss of profits, personal injury, and/or other claims against BP and/or the other defendants.[4]

- The Court has inherent jurisdiction to regulate the practice of law in matters before the Court.[5]

- The Court has jurisdiction to ensure fair, clear and appropriate communications to putative classmembers.[6]

**The Court's Order of February 2, 2011 Makes it Clear that the Court Has the Authority to Compel BP to Reserve Funds with Respect to Settlements or Other Payments Made on BP's Behalf by and through the Gulf Coast Claims Facility**

With respect to the GCCF in particular, this Court has already determined, in its ORDER AND REASONS [Doc 1098] dated February 2, 2011, that:

- "The Court has the responsibility to ensure that the mandates of OPA are implemented" – Page 7.

- "Full disclosure concerning the relationship between the responsible party and the third party acting in accordance with OPA is consistent with the policy underlying

---

[4] *See* CHARTER AGREEMENT, Article 19 ("Any litigation arising out of or relating to the CHARTER may be brought in a court of competent jurisdiction in New Orleans, Louisiana"); CONSENT JUDGMENT, *Barisich v. BP plc, et al,* No.2:10-cv-01316 [Doc 6] (May 4, 2010), ¶7 ("The Court retains jurisdiction of this matter in the event that further proceedings hereunder become necessary"); JOINT STIPULATION, *Barisich v. BP plc, et al,* No.2:10-cv-01316 [Doc 17] (May 12, 2010), p.2 ("it is STIPULATED AND AGREED by BP that this Court retains jurisdiction over further matters arising in this proceeding").

[5] *See, e.g.,* State Unauthorized Practice of Law Committee v. Paul Mason & Associates, Inc., 46 F.3d 469, 471 (5th Cir. 1995); In re Gopman, 531 F.2d 262, 266 (5th Cir. 1976); In re Vioxx Products Liability Litigation, 650 F.Supp.2d 549, 559-561 (E.D.La. 2009).

[6] FEDERAL RULE OF CIVIL PROCEDURE 23(d) "authorizes the court to regulate communications with potential classmembers, even before certification." MANUAL FOR COMPLEX LITIGATION, FOURTH (Fed. Judicial Center 1995) §21.12; Gulf Oil v. Bernard, 452 U.S. 89, 100, 101 S.Ct. 219, 2200, 68 L.Ed.2d 693 (1981) ("a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties"); COMPLEX MANUAL, §21.22 ("Direct communications with class members, whether by plaintiffs or defendants, can lead to abuse.  For example, defendants might attempt to obtain releases from class members without informing them that a proposed class action complaint has been filed..... If class members have received inaccurate precertification communications, the judge can take action to cure the miscommunication and to prevent similar problems in the future"); *see also, e.g.,* In re School Asbestos Litigation, 842 F.2d 671, 680 (3rd Cir. 1988); Turner v. Murphy Oil, No. 05-4206 (E.D. La. Nov. 14, 2005).

other court-overseen claims resolution facilities – such as class actions or other settlement funds and bankruptcy trusts…" – Page 7.

- "Mr. Feinberg, Feinberg Rozen, LLP and GCCF Are Not Fully 'Independent' of BP" – Pages 8-11.

- "The fact that BP in this instance has chosen to delegate this responsibility cannot relieve BP of its statutory obligations" – Page 8.

- "Mr. Feinberg was appointed by BP, without input from opposing claimants or the Plaintiffs' Steering Committee ('PSC'), and without an order from the Court. Mr. Feinberg is not a true third-party neutral such as a mediator, arbitrator, or Court appointed special master" – Page 9.

- "The GCCF is settling claims against BP under OPA, but also attempting to settle claims that fall outside of OPA, such as personal injury and death claims" – Page 10.

- "BP does retain some degree of control of payments from the GCCF fund, as evidenced by recent media reports that the GCCF was ordered by BP to pay a $10 million business claim which had never been reviewed by the GCCF for merit" – Page 11 fn.3.

- "In their releases of BP, the GCCF requires claimants to release and assign all rights or claims not only against BP, but against any other potentially liable party. Whether or not seeking such broad releases is appropriate, the GCCF is clearly acting to benefit BP in doing so" – Pages 10-11.

- "BP is not only the designated OPA 'responsible party,' but also a primary Defendant in this MDL and the consolidated putative class actions" – Page 11.

- "Defendant BP, through its agents Ken Feinberg, Feinberg Rozen LLP, and the Gulf Coast Claims Facility, and any of their representatives, in any of their oral or written communications[4] with claimants, shall: …. (2) Refrain from referring to the GCCF, Ken Feinberg, or Feinberg Rozen, LLP (or their representatives), as "neutral" or completely "independent" from BP. It should be clearly disclosed in all communications, whether written or oral, that said parties are acting for and on behalf of BP in fulfilling its statutory obligations as the 'responsible party' under the Oil Pollution Act of 1990." – Pages 13-14 (emphasis supplied).

There is no dispute that the Court has jurisdiction over BP in these proceedings. And it is clear, from the Court's conclusions that the GCCF is an "agent" of and "acting for and on behalf of" BP, that an order compelling BP to reserve funds can and should be applicable to settlements or other payments made by and through BP's agent, the GCCF, for and on behalf of BP.

The PSC and other Common Benefit Attorneys have almost certainly generated a benefit to persons or businesses who may now or hereafter settle claims in the GCCF. *See generally,* REPLY BRIEF [Doc 4717], pp.3-5.[7]

Particularly with respect to plaintiffs who have had actions or claims pending in the MDL, it would be unfair to allow such plaintiffs (and/or their attorneys), who have been relying on the PSC and other Common Benefit Attorneys to develop the case and prepare it for trial, to avoid any common benefit responsibility, (if any), by settling with BP through the GCCF on the eve of trial.

**Whether an Action May Be Subject to Remand (if Relevant) is Premature**

First, the notion that a case ultimately tried in State Court will not benefit from the efforts of the PSC and other Common Benefit Attorneys in the MDL seems a little far-fetched.  Even assuming that a State Court would allow duplicative discovery efforts, a plaintiff lawyer's decision to completely ignore the deposition testimony, expert testimony, briefing and other work product would seem somewhat irresponsible, and not in the best interests of his or her client.[8]

Secondly, a case tried or settled within the MDL / Limitation proceeding prior to remand is just like any other case being tried or settled within the MDL / Limitation proceeding, in terms of the common benefit achieved or obtained.

---

[7] *See also,* PSC STATUS REPORT AND MEMO IN SUPPORT [Doc 4507-1], pp.12-13 and 16-17.

[8] It should be noted that these counsel are objecting, not to a potential reduction in their client's recoveries, but to a potential reduction to their own contingency fees.  While some of these attorneys claim they have retained liability experts and/or attended the MBI hearings or reviewed the transcripts (which Defendants maintain are inadmissible in any subsequent civil proceeding), it is the PSC and other Common Benefit Attorneys – and not these objecting plaintiff's counsel – who have actually taken all of the depositions, developed admissible expert testimony, and performed all of the other work and services necessary to establish liability at the February 2012 or any subsequent trial.

Moreover, as a "jurisdictional" matter, this Court presently has exclusive authority over claims asserted against Transocean or other 14(c) Defendants, pending a determination on Limitation.

And finally, the PSC respectfully submits that this Court has jurisdiction and authority with respect to the Defendants (and their agents) who are entering into settlements, irrespective of whether the claimant or other plaintiff has voluntarily submitted to the jurisdiction of the Court.

Nevertheless, and in any event, the Court need not make a final determination at this time.  Rather, the Court will be in a better position to determine what is factually, jurisdictionally and/or equitably appropriate, either: **(a)** at the time of remand (if granted); **(b)** at the time of the judgment, settlement or other payment; or **(c)** at the time that a common benefit fee is sought.

In *Zyprexa,* for example, the U.S. Second Circuit Court of Appeals, upon request for interlocutory appeal and petition for mandamus, was faced with the question of whether the District Court had the authority to require cases with pending remand motions in the MDL court to be subject to a set-aside to compensate the PSC.  While the majority declined to answer the ultimate question, Judge Kaplan, concurring, observed that the "fundamental question here is whether a district court has subject matter jurisdiction – power – to order that settlement funds be set aside to fund possible fee awards to counsel in MDL cases that have been removed to federal court and in which motions to remand remain undecided in the district court." In re Zyprexa Prods. Liab. Litig., 594 F.3d 113, 125 (2d Cir. 2010) (Kaplan, J., concurring).  In Judge Kaplan's opinion, the district court had such power. Zyprexa, 594 F.3d at 130.   The court's order "simply imposed an assessment in order to create a fund that could be used to compensate attorneys who demonstrate their efforts conferred a benefit on Zyprexa plaintiffs generally. … It does not

preclude [Opposing Counsel] from challenging any proposed distribution of funds on the grounds that they did not benefit from the efforts of counsel to whom a distribution might be made.  At least in these circumstances, the set aside order was collateral to the merits and well within the district court's power." Zyprexa, 594 F.3d at 127.[9]

**The Court Has Authority to Compel Defendants to Reserve Funds with Respect to Judgments, Settlements or Other Payments to Claimants who have Never Asserted Claims In (and/or that were removed to and/or transferred to) the Transocean Limitation and/or the MDL.**

The PSC, at the present time, is not requesting, nor is it being awarded, an attorneys' fee. This point was made clear in the PSC's original motion when we stated that the Common Benefit Attorneys do "*not,* at this point, seek an actual common benefit fee or cost reimbursement award – only a reserve." *See* MOTION, ¶III.  The funds will be held in trust, subject to the direction of the Court, including the potential refund of such funds to plaintiffs and/or claimants, and no party or attorney will have any individual right to any of the funds except to the extent funds are directed to be disbursed by the Court.  Thus, the question before the Court is not whether it has the authority to assess claimants.   The question, rather, is whether the Court has the equitable authority to order Defendants to either pay or withhold an amount from settlements or other payments.

The common benefit or common fund doctrine has existed in American jurisprudence since the Nineteenth Century.  The purpose of this doctrine is quite simple: It permits "the creation of a common fund in order to pay reasonable attorneys' fees for legal services beneficial to persons other than a particular client, thus spreading the costs of the litigation to *all*

---

[9] While the *Zyprexa* majority expressed that it was "in sympathy with the carefully reasoned concurring views of Judge Kaplan" on the merits of the common benefit issue, it simply did not believe the challenge to the common benefit order warranted either interlocutory or mandamus review. Zyprexa, supra, 594 F.3d at 119.

beneficiaries." In re Vioxx Products Liab. Lit., 760 F.Supp.2d. 640, 647 (E.D. La. 2010) (emphasis supplied); *citing,* In re Zyprexa Prods. Liab. Litig., 594 F.3d 113, 128 (2d Cir. 2010) (Kaplan, J., concurring).

In *Sprague,* the U.S. Supreme Court suggested that the authority to apportion among all beneficiaries the costs and attorneys fees incurred by a plaintiff whose case has established or protected a common right or benefit extends beyond that plaintiff's suit to non-parties, including those not before the court in any case, as a matter of "judicial administration and federal equity jurisdiction." Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 162 (1939).   When Ms. Sprague, through dint of prosecution of her individual case, succeeded in obtaining a ruling that enabled her to recover money from the failed Ticonic Bank, she claimed that the legal principle she established in her case benefitted fourteen other depositors who did not sue with her. She asked for a ratable assessment, from their recoveries, of her legal fees and costs. The Supreme Court agreed, establishing that the common benefit principle is not limited to specific situations or pre-existing suits, but, arising from "the original authority of the chancellor to do equity in a particular situation," extends as far as necessary to succeed in fairly "distributing the costs of the burden of the litigation," including among "beneficiaries similarly situated but not actually before the court." Sprague, supra, 307 U.S. at 166-167.

While the PSC acknowledges that several courts have been reluctant to exercise jurisdiction with respect to the settlement of claims that have never been formally asserted before the Court,[10] we would respectfully suggest that such concern has been misplaced, as the Court would clearly seem to have jurisdiction over the Defendants, to whom the (proposed) Order is directed.

---

[10] *See, e.g.,* In re Showa Denko K.K. L-Tryptophan Products Liability Litigation-II, 953 F.2d 162 (4th Cir. 1992); In re Genetically Modified Rice Litig., No.06-MD-1811, 2010 WL 716190 (E.D. Mo. Feb. 24, 2010); In re Baycol Prods., MDL No.1431, 2004 WL 1058105 (D. Minn. May 3, 2004).

It would be unfair, it is respectfully submitted, for the plaintiffs who acted responsibly to preserve their rights before the Monition Date to bear the entire common benefit fee burden, (if any), while those who did not file in the MDL, but receive the same benefits, shoulder none of the responsibility.

## Revised Proposed Order

Submitted herewith is a revised Proposed Order, which, (consistent with the REPLY BRIEF [Doc 4717]), makes it clear that: (i) the Order, if granted, would not result in mandatory fee-shifting to the defendant, and (ii) the Order, if granted, would not apply to settlements between and among the defendants.

## Conclusion

For these reasons, for the reasons set forth in the original PSC STATUS REPORT AND MEMORANDUM IN SUPPORT OF MOTION TO ESTABLISH ACCOUNT AND RESERVE FOR LITIGATION EXPENSES, and for the reason set forth in the REPLY BRIEF, the Motion should be granted.

This <u>28th</u> day of <u>November</u>, <u>2011</u>.


Respectfully submitted,


| | |
|---|---|
| /s/ Stephen J. Herman | /s/ James Parkerson Roy |
| **Stephen J. Herman**, La. Bar No. 23129 | **James Parkerson Roy**, La. Bar No. 11511 |
| **HERMAN HERMAN KATZ & COTLAR LLP** | **DOMENGEAUX WRIGHT ROY & EDWARDS** |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhkc.com | E-Mail: jimr@wrightroy.com |
| *Plaintiffs' Liaison Counsel* | *Plaintiffs' Liaison Counsel* |

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that the above and foregoing Sur-Reply Brief will be filed into the record *via* the Court's ECF electronic filing system and will be served on all counsel *via* Lexis-Nexis File & Serve, pursuant to PRE-TRIAL ORDER NO. 12, this 28th day of November, 2011.

/s/ Stephen J. Herman and James Parkerson Roy