UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LESTER ANSARDI, | * | CIVIL ACTION NO: 11-2908 |
| INDIVIDUALLY, AND ON BEHALF | * | |
| OF OTHERS SIMILARLY SITUATED | * | |
| | * | |
| VERSUS | * | SECTION: "J" (1) |
| | * | |
| UNITED STATES MARITIME | * | |
| SERVICE, INC | * | |
| UNITED STATES MARITIME | * | |
| SERVICE, LLC, AND | * | |
| UNITED STATES ENVIRONMENTAL | * | |
| SERVICES, LLC | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND THIS
ACTION PURSUANT TO 28 U.S.C. § 1447**

Plaintiff Lester Ansardi, on behalf of himself and a class of persons similarly situated, pursuant to 28 U.S.C. § 1447, moves to remand the above-captioned case to the Civil District Court for the Parish of Orleans. In support of his Motion, Plaintiff states as follows:

**I.     BACKGROUND**

Plaintiff, on behalf of himself and a class of persons similarly situated, filed this Class Action Petition ("Petition") in the Civil District Court for the Parish of Orleans on October 27, 2011.

The Petition alleges that Defendants United States Maritime Services, Inc. ("USMS") and United States Environmental Services, LLC ("USES") (collectively, "Defendants") contracted with boat owners such as Plaintiff for the purpose of providing

1

use of Plaintiff's and the Class members' vessels during the aftermath of the BP oil spill. Petition, ¶ 9.  Pursuant to the terms and conditions of the contract, Defendants were required to pay Plaintiff for each day the boat was under contract, commencing on the date of departure of the Plaintiff's vessel and terminating at the time the vessel was secure in its moorings at the original point of delivery.  Petition, ¶¶ 12-13.  The terms of the contract also required Plaintiff to make his vessel available twenty-four hours a day until the contract terminated, prohibiting him for using his boat for any purpose during the duration of the contract.  Petition, ¶¶ 14-15.  Defendants, however, only paid Plaintiff for the use of his boat for the days during the contract period when the boat was actually used.  Petition, ¶ 22.  As a result of Defendants' actions, Plaintiff and members of the Class received less amounts than they were entitled to receive, and Defendants experienced higher profits at the expense of the Plaintiff and the members of the Class. Petition, ¶ 23.  In his Petition, Plaintiff alleges two causes of action: (1) breach of contract; and (2) declaratory and injunctive relief.

Defendants filed their Notice of Removal with this Court on November 22, 2011, asserting that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441, 1453 and 1446, 22 U.S.C. § 2713, *et seq*., and 43 U.S.C. § 1331, *et seq*.  For the reasons discussed herein, Defendants have failed to establish that this Court has subject matter jurisdiction over this cause of action.  Defendant's improper removal attempts to rob Plaintiff of his choice of forum.  Consequently, Plaintiff's motion to remand should be granted.

## II.  LEGAL STANDARD

Removal is governed by 28 U.S.C.A. § 1441, and is limited to actions that originally could have been filed in federal court.  The removal statute provides that "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending . . ." 28 U.S.C. § 1441(a).  The removing defendant bears the burden of establishing the existence of federal jurisdiction over the cause of action.  *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998); *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).

"[R]emoval statutes are to be construed strictly against removal and for remand." *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996); *Jefferson Parish Hosp. Dist. No. 2. v. Harvey*, 788 F.Supp. 282, 283-84 (E.D. La. 1992) (internal citation omitted) ("This removal statute is to be construed narrowly, with doubts resolved in favor of remand to the state court.").  "[B]ecause the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns . . . which mandate strict construction of the removal statute." *Carpenter v. Wichita Falls Indep. School Dist.*, 44 F.3d 362, 365-66 (5th Cir. 1995) (internal citation omitted).

## III.  ARGUMENT

None of Defendants' arguments support subject matter jurisdiction. The Outer Continental Shelf Lands Act ("OCSLA") does not provide a basis for removal because Defendants' failure to comply with the contractual agreements they entered into with Plaintiff and members of the Class cannot possibly be classified as an "operation

3

conducted on the outer Continental Shelf." The Oil Pollution Act ("OPA") does not provide a basis for removal because Plaintiff's claims do not meet OPA's strict proximate cause requirement nor have Plaintiff or any of the putative Class members satisfied the mandatory presentment requirement. Finally, the Class Action Fairness Act ("CAFA") does not apply because all Class members as defined in the class and all Defendants are citizens of Louisiana.

### A. The Outer Continental Shelf Lands Act ("OCSLA") Does Not Provide a Basis for Removal Because it Does Not Apply to Plaintiff's Action.

Defendants have removed this matter based upon the alleged application of OCSLA, 43 U.S.C. § 1331, *et. seq.* It is their position that Plaintiff's action "arises out of, and has a connection with, an operation that was conducted on the Outer Continental Shelf" involving the "exploration, development, or the production of minerals, of the subsoil and seabed of the Outer Continental Shelf," and therefore falls under the jurisdictional provision of OCSLA. Notice of Removal, ¶ 9. In Defendants' view, this case (and presumably any other case to which it could ever be a party) necessarily implicates OCSLA because it would not exist but for the Deepwater Horizon's explosion.

Section 1349(b)(1) of OCSLA provides that, "the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals. . . ." 43 U.S.C. § 1349(b)(1). While it is true that courts have given OCSLA's jurisdictional provision broad interpretation,[1] Defendants have extended its scope beyond the plausible.

---

[1] *See In re: Oil Spill by the Oil Rig " Deepwater Horizon" In the Gulf of Mexico, on April*

4

"In deciding whether § 1349(b)(1) grants a court jurisdiction, courts routinely perform a two part analysis." *In re: Oil Spill by the Oil Rig "Deepwater Horizon" In the Gulf of Mexico, on April 20, 2010*, 747 F.Supp.2d 704, 708 (E.D. La. 2010). "First, courts determine whether the activities that caused the injury can be classified as an 'operation conducted on the outer Continental Shelf' and whether that 'operation' involved the exploration or production of minerals." *Id.* (quoting 43 U.S.C. § 1349(b)(1)).

Here, the "injury" is that Plaintiff and members of the Class have received less than the amounts they were entitled to pursuant to their contracts, and the "activities" causing that "injury" are the failure and refusal of the Defendants to comply with the contractual agreements they entered into with Plaintiff and members of the Class. It is beyond any stretch of the imagination how those activities could possibly be classified as an "operation conducted on the outer Continental Shelf." Whether BP was engaged in such an operation resulting in the Deepwater Horizon oil spill is irrelevant. It is the conduct of the Defendants as it relates to these contracts that is at issue in this proceeding, not BP's operations.

"Second, courts focus on whether the case and controversy 'arises out of, or [is] in connection with the operation.'" *In re: Oil Spill*, 747 F. Supp. 2d at 708 (quoting 43 U.S.C. § 1349(b)(1)). Courts have applied a "but for" test to determine this second part of the analysis – "but for the operation, would the case or controversy have arisen." *Id.* It is the Defendants' position that "but for" BP's activities on the Outer Continental Shelf, Plaintiff "would have had no occasion to file the Petition at stake in this case,

---

*20, 2010*, 747 F.Supp.2d 704, 708 (E.D. La. 2010) (citing *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996)).

because the Vessels of Opportunity program itself would never have been established by the Unified Command and carried out pursuant to contracts with Vessels of Opportunity owners." Notice of Removal, ¶ 16. Although the OCSLA "but for" analysis is very broad, in this context the link between any conduct on the Outer Continental Shelf and the current proceeding is extremely remote. Indeed, taking the Defendants' position further, if Plaintiff was involved in an automobile accident while traveling to one of the Defendants' offices, or if Plaintiff or a Class member slipped and fell on the premises of Defendants' offices, any resulting personal injury action would be subject to the jurisdictional provision of OCSLA.

Such a far-fetched result was surely not intended by Congress when it enacted OCSLA. In addressing the wide scope of OCSLA's jurisdiction, the Fifth Circuit Court of Appeals has noted legislative history indicating that "in enacting the OCSLA, Congress was most concerned with establishing federal control over resources on the Outer Continental Shelf." *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1227 (5th Cir. 1985). "Similarly, the 1978 amendments to the OCSLA were adopted principally to achieve regulatory ends." *Id*. "Congress amended the OCSLA to update government control of resource development on the Outer Continental Shelf and to ensure the promotion of the dual policies of resource production and environmental protection." *Id.*

For OCSLA to apply, the actual controversy at issue must directly pertain to exploration, development, or production on the Outer Continental Shelf.[2] Although the

---

[2] 43 U.S.C. § 1349(b)(1). *See, e.g.*, *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 475-76 (1981) (OCSLA applied to crewman injured during storm while on board a drilling platform); *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 491-92 (5th Cir. 2002) (OCSLA case regarding injuries suffered by plaintiff while unloading groceries on board an oil and gas platform); *Laredo*

6

*Laredo* Court concluded that OCSLA was "intended to govern the full range of potential legal problems that might arise in connection with operations on the Outer Continental Shelf," *id.* at 1228, there are limits to that range, in particular where the controversy's contact with the seabed is too attenuated. *See ANR Pipeline Co. v. Conoco, Inc.*, 646 F.Supp. 439, 445 (W.D. Mich. 1986). The court in *ANR Pipeline* held that a suit for breach of private contract for the sale of natural gas produced both on the Outer Continental Shelf and offshore fell outside the ambit of OCSLA. *Id.* The court rejected the idea that Congress intended "every offshore contract for the sale and/or resale of natural gas be looked at as a contract which involves the exploration, development or production of minerals of the subsoil and seabed of the OCS." *Id.* at 444. "Under that interpretation, federal court jurisdiction would extend to any contract that even remotely relates to the selling or reselling of natural gas that comes from offshore wells." *Id. See also Brooklyn Union Exploration Co., Inc. v. Tejas Power Corp.*, 930 F.Supp. 289, 291 (S.D. Tex. 1996) (OCSLA inapplicable where "dispute strictly concerns contractual provisions governing the price of gas, not provisions governing its production or development"); *Harris Trust & Sav. Bank v. Energy Assets Int'l Corp.*, 124 F.R.D. 115, 119-20 (E.D. La. 1989) (holding OCSLA did not apply to dispute concerning priority between the holders of the mortgage covering the leases and the assignees of the subject leases, of which one assignment involved an Outer Continental Shelf oil and gas lease).

---

*Offshore Constr., Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1226-29 (5th Cir. 1985) (OCSLA controlled dispute regarding contract for construction of a stationary drilling platform on the outer Continental Shelf); *Simms v. Roclan Energy Servs., Inc.*, 137 F. Supp. 2d 731, 733 (W.D. La. 2001) (OCSLA governed personal injury claim of plaintiff injured in basket being lowered from helicopter onto a drilling platform).

Like *ANR Pipeline*, the private contracts involved in this case are too remote to be considered to involve the exploration, development or production of minerals.

In the recent Order of Remand issued by Judge Reeves in *State of Mississippi, ex rel. Jim Hood, Attorney General v. Gulf Coast Claims Facility and Kenneth Feinberg, as Administrator of the Gulf Coast Claims Facility*, No. 3:11-cv-00509-CWR-LRA (S.D.Miss. Sept. 12, 2011), the Court held that administering the BP claims process is *not* an operation conducted on the Outer Continental Shelf:

> Neither OCSLA's plain language nor the Fifth Circuit's decisions interpreting it contain any indication that matters so far removed as these – occurring not on the outer Continental Shelf but doing business in Dublin, Ohio and aimed not at the "exploration, development, or product of…minerals" but rather at "developing and publishing standards for recoverable claims" related to the Deepwater Horizon spill – fall within the purview of Section 1349(b)(1), which addresses "any operation conducted *on* the outer Continental Shelf…." Plainly, although GCCF's activities amount to an operation, that operation is not conducted "on the outer Continental Shelf."

*Id.* at 10 (emphasis in original).

Like the claims in *Hood*, the controversy at issue is not directly related to any operation on the Outer Continental Shelf. It is simply a breach of contract action predicated upon the failure of Defendants to adequately pay Plaintiff and the Class members pursuant to agreements entered into during the aftermath of the BP oil spill. To view OCSLA's scope so far-reaching as Defendants do would render every related action a federal case. As a result, Plaintiff respectfully submits that this Court does not have subject matter jurisdiction over this matter based upon OCSLA.[3]

---

[3] In arguing that this matter implicates OCSLA, Defendants reference this Court's October 6, 2010 Order in *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*. Notice of Removal, ¶ 12. In *In re: Oil Spill*, however, this Court noted that "Plaintiff's theory of liability is based on Defendants' alleged negligent actions during the drilling and exploration operation." Order, p. 8. Here, Plaintiff's theory of liability is based on Defendants' failure to pay Plaintiff and the Class members the

8

### B. 28 U.S.C. § 1331 Does Not Provide an Independent, Alternative Basis for Removal Because Plaintiff's Claims Do Not Arise Under OCSLA.

Defendants also argue that this court has subject matter jurisdiction under 28 U.S.C. § 1331 in that the "claims asserted arise under a federal statute, namely, the OCSLA." Notice of Removal, ¶ 18. As discussed above, Plaintiff's claims do *not* fall within the jurisdictional scope of the OCSLA. Therefore, Plaintiff respectfully submits that this Court does not have jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### C. The Oil Pollution Act ("OPA") Does Not Apply to Plaintiff's Action and Therefore Does Not Provide a Basis for Removal.

Defendants have also noticed removal of this matter based upon the alleged application of the Oil Pollution Act ("OPA"), 33 U.S.C. §§ 2701–2761. It is their position that Plaintiff's action "arises out of an oil spill on federal property in international waters" and therefore falls under the jurisdictional provision of OPA. Notice of Removal, ¶ 20.

The OPA governs, *inter alia,* private claims for property damage and economic loss resulting from a discharge of oil in navigable waters. *See* 33 U.S.C. § 2702(a), (b)(2)(B), (b)(2)(C), (b)(2)(E). Under the OPA, a responsible party for an onshore facility from which oil is discharged, or which poses a substantial threat of a discharge of oil, into or upon navigable waters, is liable for removal costs and other damages resulting from such incident. 33 U.S.C. § 2702(a).

The OPA does not support a finding of subject matter jurisdiction here because Plaintiff's damages do not "result from" the oil spill, nor are they "due to the injury,

---

money they were owed for the use of their boats, in violation of their contracts, not as a result of the BP oil spill.

destruction, or loss of real property, personal property, or natural resources." 33 U.S.C. § 2702(a); 33 U.S.C. § 2702(b)(2). OPA also does not apply because neither Plaintiff nor any of the putative Class members have satisfied the mandatory presentment requirement.

### 1. Plaintiff's Claims Do Not Fall Under OPA Because They Do Not Meet OPA's Strict Proximate Cause Requirement.

Plaintiff's claims do not fall under the jurisdictional scope of the OPA because the claims do not meet OPA's proximate cause requirement. OPA imposes two causal limitations on recovery of economic losses and government revenues. First, claimants must show that their damages *"result from"* the discharge of oil. 33 U.S.C. § 2702(a) (emphasis added). Second, in order to recover lost governmental revenue or lost profits, claimants must show not only that their damages "result from" an oil spill but, in addition, must show that such losses are *"due to the injury, destruction, or loss of real property, personal property, or natural resources." Id.;* 33 U.S.C. § 2702(b)(2)(D) & (E) (emphasis added). The "due to" language in § 2702(b)(2) of the OPA directly links economic losses to physical damage to property or natural resources, and is a further limitation on damages beyond the § 2702(a) requirement that the damages "result from" the spill. These causal requirements, both individually and in tandem, establish a proximate cause requirement that bars recovery for remote economic damages claims.[4]

---

[4] Case law confirms this construction of the OPA. For example, the Ninth Circuit has held that virtually identical "results from" language in the Trans-Alaska Pipeline Authorization Act of 1973 established a proximate cause requirement. According to the Ninth Circuit, a provision imposing liability upon a vessel owner for damages "sustained ... as the result of discharges of oil from such vessel" included proximate cause as an element of the claim. *See Benefiel v. Exxon Corp.,* 959 F.2d 805, 807 (9th Cir. 1992) (dismissing, for lack of proximate causation, claims of geographically remote claimants alleging high gas prices); *see also Ballard Shipping Co. v. Beach Shellfish,* 32 F.3d 623, 630 (1st Cir. 1994) (concluding that the Rhode Island Environmental Injury and Compensation Act's extension of liability to "loss of income or diminution of profit ... as a result of damage to the natural resources of the state of Rhode Island caused by the violation of [pilot and pollution laws]" incorporated "familiar tort limitations of foreseeability and proximate cause") (internal citations omitted). Similarly, courts construe the term "due to" to impose a proximate cause requirement. *See, e.g., M. Conley Co. v. Anderson,* 842 N.E.2d 1037, 1039 (Ohio 2006) (noting that "the words 'due to' mean 'caused by' and do not mean merely 'occurring during the course

10

The damages alleged by Plaintiff and the Class members do not satisfy the proximate cause requirement under OPA. They do not allege, for example, any damages that "result from" the oil spill or that are "due to the injury, destruction, or loss of real property, personal property, or natural resources." [5] Plaintiff is not seeking damages caused to his vessel or to the environment from the Deepwater Horizon explosion. Plaintiff is simply seeking damages for the money that he is owed for services under the contract, but that Defendants have failed to pay him. Under these circumstances, any loss of revenue cannot be said to be "due to" or "result[ing] from" the oil spill.

Plaintiff and the Class members' injuries are a result of Defendants' failure to pay them the money they were owed for the use of their boats, in violation of their contracts, not as a result of the BP oil spill. In arguing that Plaintiff's contractual claims fall under OPA, Defendants have far exceeded the jurisdictional scope of OPA.

### 2. This Court Lacks Jurisdiction to Decide the Claims of Any Plaintiff That Has Not Satisfied OPA's Presentment Provisions.

Even if the Court finds that there is a sufficient nexus between Plaintiff's claims and the BP oil spill, this Court cannot exercise jurisdiction over Plaintiff's claims until and unless Plaintiff and each Class member satisfies OPA's presentment requirement.

Through the OPA, Congress created a mandatory condition precedent that all claims for oil spill-related damages must be presented to the Responsible Party before filing suit. 33 U.S.C. § 2713. A suit may be initiated only after a claim is "presented" in

---

of'"); *Holscher v. Valley Queen Cheese Factory,* 713 N.W.2d 555, 567 (S.D. 2006) (proximate cause required under a workers' compensation statute, citing case law "equating 'due to' with 'proximate cause under negligence law'").

[5] *See, e.g., In re Settoon Towing LLC,* 2009 WL 4730969 (E.D.La. Dec. 4, 2009) (explaining that it was potentially possible for an injured party to recover for damages incurred as the result of a shutdown of the Gulf Intracoastal Waterway in the wake of a spill); *In re Cleveland Tankers, Inc.,* 791 F. Supp. 669, 678-79 (E.D. Mich. 1992) (holding that OPA bars recovery unless a plaintiff establishes damage to his own property or damages for loss of subsistence use of natural resources).

accordance with §2713(a), and the responsible party denies all liability for the claim or the claim is not settled by payment within 90 days.  33 U.S.C. §2713(c).

A district court may not entertain OPA damages claims "unless and until a claimant has presented her claims in compliance with §2713(a)."  *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.,* 51 F.3d 235, 240 (11th Cir. 1995); *see also Gabarick v. Laurin Maritime (America) Inc*, 623 F. Supp. 2d 741, 750-51 (E.D. La. 2009) (dismissing for lack of subject matter jurisdiction all non-OPA claims seeking damages of the type covered by OPA for failure to present such claims to the designated responsible party); *Marathon Pipe Line Co. v. La Roche Indus. Inc.,* 944 F. Supp. 476, 477 (E.D. La. 1996) ("The Court agrees that § 2713's presentation requirement is jurisdictional and mandates dismissal when that provision is applicable and not complied with by the claimant."); *Turner v. Murphy Oil USA, Inc.,* No. 05-4206, 2007 WL 4208986, at *2 (E.D. La. Nov. 21, 2007) (presentment provision is a "'mandatory condition precedent'" to bringing a suit under OPA) (internal citation omitted).  Simply put, the clear text of § 2713 creates a mandatory condition precedent barring all OPA claims unless and until a claimant has presented their claims.

Here, neither Plaintiff nor any of the putative Class members have even attempted to satisfy the mandatory presentment requirement.  Therefore, the OPA is inapplicable to the instant action, and it is not a basis for federal jurisdiction.

### D.  This Proceeding is Not a Class Action Removable under CAFA.

Defendants also assert the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), as a basis for removal to this Court.  Section 1332(d) expands federal jurisdiction to allow removal of any civil action where the aggregation of claims reaches

12

the jurisdictional amount of $5 million and it is a class action in which any member of the plaintiff class is a citizen of a state different from any defendant.

Defendants argue that CAFA applies because "some of the proposed class members who contracted with the Defendants are citizens of states other than Louisiana including, but not limited to, Mississippi and Alabama, thereby establishing that 'any member of [the] class of plaintiffs is a citizen of a State different from any defendant.'" Notice of Removal, ¶ 23 (quoting 28 U.S.C. § 1332(2)(A)). It is unclear how Defendants make such a factual assertion given that the class is specifically defined as including only citizens of Louisiana:

> All individuals and entities <u>in Louisiana</u> who contracted with United States Maritime Services, Inc., United States Maritime Services, LLC, or United States Environmental Services, LLC on or after April 2010 through a Master Vessel Charter Agreement allowing United States Maritime Services, Inc., United States Maritime Services, LLC, or United States Environmental Services, LLC to hire their vessel for employment during an oil spill response.

Petition, ¶ 27 (emphasis added). Thus, by definition, all class members are citizens of Louisiana. Because all Defendants are also citizens of Louisiana, as admitted by Defendants,[6] there is no basis for CAFA jurisdiction.[7]

### E.  The Court Should Assess Attorney Fees and Costs Against Defendants.

Defendants' removal was patently insufficient and "not reasonably justified."[8] As a result, the Court should award Plaintiff the fees and costs incurred in preparing the

---

[6] "Defendants are citizens of Louisiana." Notice of Removal, ¶ 23.

[7] Even if CAFA was to apply to this action, the Court should nonetheless decline to exercise jurisdiction under 28 U.S.C. § 1332(d)(4)(B). A federal district court must decline to exercise jurisdiction over a class action in which more than two-thirds of the members of the Class and the primary defendants are citizens of the state in which the action is filed. 28 U.S.C. § 1332(d)(4)(B). Because the proposed Class is comprised solely of Louisiana residents, the primary Defendants are Louisiana residents and the case was filed in state court in Louisiana, this is an action over which this Court must decline to exercise jurisdiction.

13

remand papers, pursuant to 28 U.S.C. §1447(c).[9] Requiring Defendants to pay the costs and fees incurred as a result of improvident removal is provided for under 28 U.S.C. §1447(c), which states in relevant part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. §1447(c). Such an award is in the Court's discretion. *See Diaz v. Cameron County Texas,* 300 Fed.Appx. 280, 281 (5th Cir. 2008).

## IV.     CONCLUSION

The undisputed facts in this case demonstrate that the OCSLA and the OPA are clearly inapplicable to the conduct which forms the basis of this lawsuit. Therefore, the inapplicability of these Acts, as well as the blatant inapplicability of CAFA, does not provide the Court with original federal court jurisdiction. For the reasons set forth above, Plaintiff respectfully requests that the Court grant his Motion to Remand and assess attorney fees and costs against Defendants.

---

[8] In *Campos v. Housland, Inc.,* 824 F.Supp. 100 (S. D. Tex. 1993), the court awarded fees and costs under Section 1447 (c) where the "removal was not reasonably justified" under the law existing at the time of removal.

[9] The proper application of Section 1447(c) is illustrated by several decisions from district courts within the Fifth Circuit. In *Park Nat. Bank of Houston v. Kaminetzky,* 976 F. Supp. 571 (S.D. Tex. 1996) (Atlas, J.), the court - noting that "no finding of bad faith or frivolity is required" and that the purpose of the sanction is "remedial" - found that the party who removed the action without a proper legal basis was jointly and severally liable with its attorney for the expenses and fees. *Id.* at 584-85. In *Service Asset Mgmt. Co. v. Hibernia Corp.,* 80 F.Supp. 2d 626, 630 (E.D. Tex. 2000) (Schell, J.), the court found it appropriate to award fees and costs where, among other factors, a review of the law would have revealed that removal was not proper.

Date: December 29, 2011					Respectfully submitted,

**PENDLEY, BAUDIN & COFFIN, L.L.P.**


 /s/ Christopher L. Coffin
Christopher L. Coffin, La. Bar Roll 27902
Patrick W. Pendley, La. Bar Roll 10421
Stan P. Baudin, La. Bar Roll 22937
Nicholas R. Rockforte, La. Bar Roll 31305
Elena P. Branzaru, La. Bar Roll 31061
24110 Eden Street
Post Office Drawer 71
Plaquemine, Louisiana  70765
Telephone:  (225) 687-6396
Facsimile:  (225) 687-6398
Email: ccoffin@pbclawfirm.com

Gary E. Mason
Donna F. Solen
Mason LLP
1625 Massachusetts Ave., NW, Ste 605
Washington, D.C. 20036
Telephone: (202) 429-2290
Email: gmason@masonlawdc.com
Email: dsolen@masonlawdc.com

Kevin I. Goldberg
Goldberg, Finnegan & Mester, LLC
1010 Wayne Ave. Suite 950
Silver Spring, MD 20910
Telephone: (301) 589-2999 x102
Facsimile: 301-589-2644
Email: kgoldberg@gfmlawllc.com

Dan A. Robin, Jr., La. Bar No. 24628
2203 Pakenham Drive
Chalmette, La 70043
Telephone: 504-279-5177
Facsimile: 504-279-5375
Email: dan@frjustice.com

*Attorneys for Plaintiff and the Putative Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of December, 2011, the foregoing Motion to Remand was served upon attorneys who have completed ECF registration as required by the Court.

By:  /s/ Christopher L. Coffin