UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | § § § § § § § § | MDL No. 2179 SECTION: J JUDGE BARBIER MAG. JUDGE SHUSHAN |
| Applies to:   All Cases | | |

# HESI'S REQUEST FOR CLARIFICATION
# OF ORDER DISQUALIFYING VIATOR, SABINS, AND CSI

Defendant Halliburton Energy Services, Inc. ("HESI") respectfully requests clarification of the Court's Order, Rec. Doc. 4838, to make clear that the Order mandates the disqualification of all counsel involved with Michael Viator, Fred Sabins, or CSI Technologies, Inc. ("CSI"), from any participation with BP's substitute cement expert and/or any aspect of cement issues in this litigation.

## I.
## PROCEDURAL BACKGROUND

On December 8, 2011, this Court granted HESI's motion to disqualify Michael Viator, Fred Sabins, and CSI as BP's experts. Rec. Doc. 4838. BP responded by filing a motion to designate a substitute expert, Rec. Doc. 4868, which was granted with certain qualifications. Rec. Doc. 5014. The Court permitted BP to (1) designate its substitute expert by January 3, 2012; (2) serve the substitute report by January 9, 2012; and (3) produce the expert for deposition by January 16, 2012. The Court also directed BP to demonstrate affirmatively by January 9, 2012 that *the substitute expert did not have any contact with Viator's work as a HESI internal investigator or expert work performed by CSI or Sabins in this litigation*. Rec. Doc. 5014 at 2. HESI presumes that BP's attorneys have already taken the appropriate screening steps to prevent all counsel who previously worked with Sabins and CSI from working with BP's substitute expert. Out of an abundance of caution, however, HESI requests confirmation of the same and clarification from the Court that such screening is necessary.

It would be futile to permit BP to designate a substitute expert if that expert is or will be tainted in the same manner that required the disqualification of Sabins and CSI. Viator, Sabins, and CSI are not the only potential sources of taint — the substitute expert will also be tainted by exposure to any counsel who worked directly with Sabins and CSI. After all, Sabins did not develop his expert opinions, tainted as they were by his contact with HESI engineer Michael

Viator, in a vacuum. BP's counsel necessarily discussed and analyzed Sabins' opinions with him in detail as he developed his two expert reports, which were served after he employed Viator. Consequently, any counsel having direct contact with Sabins and CSI are equally tainted, and therefore constitute a potential source of contamination of the substitute expert. The Court observed in its order disqualifying Sabins that he had failed to construct and follow an adequate screen against Viator. Rec. Doc. 4838 at 10-11. The Court subsequently ordered BP to demonstrate that its substitute expert was and is adequately screened from Sabins' work. Rec. Doc. 5014 at 2. Because HESI's confidences cannot be safeguarded without also screening the new expert from any attorneys who worked with Sabins or CSI, HESI requests clarification that all such attorneys are disqualified from working with the new expert and/or working on cement issues in this litigation.

## II.
## ARGUMENTS AND AUTHORITIES

**A.     Those BP Attorneys Who Worked Directly with Sabins and CSI Will Inevitably Taint the Substitute Expert.**

In finding that HESI had satisfied the second prong of the *Koch* test, the Court held that Viator was in possession of HESI's confidential and privileged information, and not merely "pure technical information." Rec. Doc. 4838 at 6-7. HESI's original Motion to Disqualify was drafted with the expectation that BP would not be able to designate a substitute cementing expert at this late hour in the trial schedule, and thus there was no need to address the issue of BP's counsel tainting a substitute expert with the improperly obtained confidential and privileged information of HESI. *See* Rec. Doc. 4930, HESI's Opposition to BP's Motion to Designate a Substitute Expert at 1. In order to prevent a similar tainting of the new expert, that expert cannot be exposed to the same counsel that worked with Sabins and CSI.

Because the Court disqualified Sabins and CSI based on the tainting influence resulting from CSI's retention of Viator, the Court presumably intended to also disqualify all counsel for BP who actively and directly worked with Sabins and CSI, because such counsel are presumed to have obtained the same confidential and privileged information that Sabins and CSI is presumed to have obtained from Viator, and the integrity of the judicial process requires that BP not obtain an unfair benefit from such information or the insights derived from that information. HESI requests that the Court issue a clarification that this was the intended effect of its prior Order.

The attorneys who worked with Sabins and CSI will inevitably taint the substitute expert, and absent their disqualification, HESI will again be subjected to the same prejudice that necessitated the disqualification of Viator, Sabins, and CSI. Key unexplained facts remain which otherwise transfer the taint from Viator, Sabins, and CSI's relationship to BP's substitute expert. Foremost among these unexplained facts is *how* Viator was assigned to access HESI's modeling software via the OptiCem escrow agreement or *why* his name was on the list. BP simply claimed — ultimately without evidentiary support — that Viator's name was "inadvertently placed" on the escrow list. Rec. Doc. 4723 at 6; *see also* Tr. 10/14/11 hearing, at 56-58 (his name "was put on the list" "ended up on the list" "got put on that list"). Sabins did not submit an affidavit explaining his actions or the scope of his contact with Viator, and thus the use of HESI's confidential information. *See* Rec. Doc. 4838 at 8 n.9. In addition, BP and/or CSI never produced a complete set of Viator's time sheets indicating the scope and frequency of Viator's contact with BP's counsel while working for CSI; or with Sabins in his capacity as BP's cementing expert in this litigation. Sabins himself never disclosed whether Viator was privy to attorney meetings at CSI. Moreover, Viator was present at CSI, a small consulting firm working directly on this litigation, for more than six months.

Without further inquiry into the matter, it is impossible to ascertain the full gravity and extent of BP counsel's knowledge of Sabins and CSI's relationship with Viator. Although HESI presumes that BP has appropriate screening mechanisms for its attorneys in place, without clarification from the Court, HESI cannot verify that such screening has occurred. Any counsel's previous work with Sabins on the two reports he issued while Viator was under CSI's employ undoubtedly taints them as potential contacts with Sabins' substitute. HESI seeks clarification that the Court's Order also intended to properly quarantine particular BP attorneys from having contact with BP's substitute expert, which would prevent the inevitable tainting of the substitute expert.[1]

## B.    BP's Counsel Have An Obligation to Ensure That Anyone Working For BP On This Litigation Comports With The Ethical Rules.

In the Fifth Circuit, district courts do not take a "hands off" approach to the ethical rules, but are instead "obliged to take measures against unethical conduct occurring in connection with any proceeding before it." *In re American Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992) (quoting *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976). A motion to disqualify counsel is the "proper method for a party litigant to bring issues of conflict of interest or breach of ethical duties to the attention of the court." *In re American Airlines*, 972 F.2d at 611. The applicable ethical rules include the local rules adopted by the district court, but also include the ABA Model Code and federal common law. *Id*. at 610, 617.

Sabins created the dilemma that led to his and CSI's disqualification. *See* Rec. Doc. 4838 at 10. Sabins acted to his, CSI's and ultimately BP's detriment. *Id*. at 11. All attorneys have an

---

[1] At a minimum, the Court should disqualify attorneys Phillip Chen, Errling Tao, and Barbara Harding from Kirkland & Ellis, LLP as they represented Sabins in his depositions of May 24-25, 2011 and June 13, 2011. These attorneys also worked directly with Sabins on cementing issues during and after the time Viator worked with Sabins and CSI, and would inevitably taint Sabins' substitute with Sabins' tainted knowledge. HESI does not know which other BP attorneys fall within this category.

obligation to ensure that any associates, assistants, or independent contractors such as experts comply with applicable ethics rules, including avoiding conflicts and safeguarding confidential information.  *See* LA. R. PROF'L CONDUCT 5.3(b) (eff. Sept. 30, 2011); MODEL RULE OF PROF'L CONDUCT 5.3(b)[2]; *see also* ABA MODEL CODE OF PROFESSIONAL CONDUCT, Canon 9 ("A Lawyer Should Avoid Even the Appearance of Professional Impropriety").  Furthermore, all attorneys have an obligation to refrain from engaging in conduct that is prejudicial to the administration of justice.  *See* LA. R. PROF'L CONDUCT 8.4(d).  BP's attorneys are tainted by Sabins' misconduct in hiring Viator (despite knowing that he worked at HESI on this litigation), his failure to screen Viator, and his decision to assign Viator to work for BP on this litigation, all of which are prejudicial to the administration of justice and the integrity of the judicial process, and which necessitated the disqualification of Viator, Sabins, and CSI.  Furthermore, once HESI made BP's counsel aware of the conflict on October 5th, BP's counsel had an obligation to mitigate any harm.  If a lawyer who has supervisory authority over the non-lawyer knows of the non-lawyer's conduct in violation of the ethics rules at a time when the consequences can be avoided or mitigated, and fails to take reasonable remedial action, then the lawyer shall be responsible for the improper conduct.  LA. R. PROF'L CONDUCT 5.3(c)(2); MODEL RULE OF PROF'L CONDUCT 5.3(c)(2).

In *Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 811 F.Supp. 651 (M.D. Fla. 1992), a law firm representing the defendant had retained a prior employee of the plaintiff, and employed this person as a "trial consultant."  The ex-employee was privy to confidential and proprietary information of the plaintiff, including knowledge of plaintiff's "strategies, theories, and mental impressions in this and/or substantially related litigation."  *Id.* at 653.  The court

---

[2] *Available at* http://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/model_rules_of_professional_conduct_table_of_contents.html.

noted that if there are doubts about whether attorneys should be disqualified, those doubts should be resolved in favor of disqualification. *Id*. The court construed the attorneys as having improperly induced the ex-employee to disclose confidential and proprietary information, and disqualified the attorneys from further representation of the defendant, in part because the attorneys' conduct created at least the appearance of professional misconduct. *Id*. The decision to disqualify was also based on the court's conclusion that the attorneys had breached the relevant ethical rules which require attorneys to maintain confidentiality, to refrain from inducing others to disclose confidential information, to abstain from communicating with adverse parties (including former employees of corporate parties represented by counsel), and from engaging in conduct that is prejudicial to the administration of justice. *Id*.

Here, BP's attorneys did not directly retain Viator, but they knowingly permitted Sabins and CSI, their retained expert, to employ Viator, and failed to take effective steps to mitigate the situation when HESI objected. This Court has already correctly ruled that Sabins and CSI are presumed to be tainted by Viator and his knowledge of HESI's confidential and privileged information, and that the integrity of the judicial process required disqualification so that BP could not benefit from such improperly obtained information and insights. It logically follows that the attorneys who worked with Sabins and CSI should likewise be presumed to have improperly obtained the benefits of Viator's knowledge. The Court should clarify that its previous Order was intended to effect a limited disqualification of those attorneys who worked directly with Sabins and CSI.

Another persuasive case is the Texas Supreme Court's ruling in *In re Guaranty Insur. Services, Inc.* that an attorney should be disqualified in the hiring of a non-attorney working on confidential matters in the same litigation for failure to (1) instruct the non-attorney not to work

on any matter they worked upon during the prior employment and (2) to take other reasonable steps to ensure that the non-attorney does not work in connection with matters on which the non-attorney worked during the prior employment, absent client consent. *In re Guaranty Insur. Services, Inc.*, 343 S.W.3d 130, 134 (Tex. 2011) (quotations omitted). Here, Sabins and CSI's conduct has already been held by this Court to warrant disqualification and the Court should clarify that its previous Order has the effect of creating a quarantine of those attorneys who exposed themselves to Sabins and CSI, and that such attorneys are barred from having any involvement with the substitute expert or cement issues.

C.  **Clarification Will Prevent Further Delay.**

The Court may avoid any delay of trial scheduling by granting this clarification. By granting this clarification, the Court can be promptly and efficiently reduce any issues of taint associated with Sabins and CSI. If BP promptly provides the Court with complete and full information as to which of its attorneys had contact with Sabins and CSI, the Court can craft a specifically worded clarification to create an effective screen to prevent contact between those attorneys and the substitute expert to preclude the inevitable taint. Such a clarification would preserve the integrity of the judicial process without causing undue delay.

### III.
### CONCLUSION AND PRAYER

HESI seeks relief limited to protecting its confidences. HESI does not seek full scale disqualification of all of BP's counsel or the respective law firms, but rather a limited disqualification of those particular attorneys who worked with Fred Sabins and CSI and thereby exposed themselves to the illicitly obtained information. HESI also prays for all other relief, legal and equitable, to which it is justly entitled.

Dated: January 3, 2012.

Respectfully Submitted,

**GODWIN RONQUILLO PC**

**By:** /s/ *Donald E. Godwin*
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
dgodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
bbowman@GodwinRonquillo.com
Jenny L. Martinez
State Bar No. 24013109
jmartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
fhartley@GodwinRonquillo.com
Gavin E. Hill
State Bar No.  00796756
ghill@GodwinRonquillo.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

and

R. Alan York
AYork@GodwinRonquillo.com
Jerry C. von Sternberg
JVonSternberg@GodwinRonquillo.com
Misty Hataway-Coné
MCone@GodwinRonquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone:  713.595.8300
Facsimile:  713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *HESI's Request for Clarification of Order Disqualifying Viator, Sabins, and CSI* was filed electronically with the Clerk of the Court using the CM/ECF system and that notice of this filing will be sent to all counsel through the CM/ECF system on this 3rd day of January 2012.

/s/ Donald E. Godwin
Donald E. Godwin