UNITES STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: OIL SPILL BY THE OIL RIG
DEEPWATER HORIZON IN THE GULF OF
MEXICO, ON APRIL 20, 2010                                                               MDL No. 2179

Transferred Case:    Coastal Services Group LLC v. BP Company North America, Inc. et al
                     Cause No. 1:11-cv-00425-HSO-RHW
                     United States District Court, Southern District of Mississippi

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SEVER AND REMAND

Plaintiff, Coastal Services Group LLC (hereinafter "Plaintiff"), by and through undersigned counsel, hereby submits its Memorandum in Support of its Motion to Sever and Remand, and states as follows:

BACKGROUND FACTS

1.      In August 2010, Plaintiff and Defendant BP[1] entered into a six-month contract for oil clean up and decontamination services as a result of the 2010 BP oil spill in the Gulf of Mexico.  Plaintiff provided Defendant BP with discounted prices for its services, which were based on obtaining work from Defendant BP for at least six months.  Both parties knew and understood that Plaintiff's discounted prices were based on the condition that Defendant BP provide Plaintiff work for at least this period of time.

2.      As a proximate result of, and in reliance on, the six-month contract, Plaintiff borrowed money and secured equipment and other resources at great expense to enable him/it to

---

[1] Named Defendants BP America, Inc., BP Corporation North America, Inc., BP Company North America, Inc., BP Products North America, Inc., BP Exploration and Production, Inc. and BP, P.L.C. are collectively referred to throughout this Memorandum as "Defendant BP".

perform his/its obligations under the contract.

3. Plaintiff began performing and performed services for Defendant BP under the contract, but after only two months, Defendant BP informed Plaintiff that it was no longer in need of his/its services and unilaterally terminated the contract.

4. On December 15, 2010, Michael Sullivan of Defendant Patriot Environmental Services, Inc. (hereinafter "Defendant Patriot"), a "vendor" of Defendant BP and its agent, acting in the scope of such agency and on behalf of Defendant BP, sent Plaintiff a release form demanding Plaintiff's signature on the release before making payment of $27,250.00 due Plaintiff for services already performed under the contract.

5. On December 17, 2010, Plaintiff provided Defendant Patriot with a copy of Plaintiff's contract with Defendant BP, demanded payment for the work already performed, and informed Defendant Patriot that Plaintiff stood ready and willing to tender performance to Defendant BP under the contract.

6. On the same day, Defendant Patriot advised Plaintiff that there was no contract between Plaintiff and Defendant Patriot, and that Defendant Patriot utilized Plaintiff's services "at BP's request as a vendor on the gulf coast project," and advised Plaintiff to take up the matter with Defendant BP.  (Defendant Patriot was invoicing Defendant BP and getting paid by Defendant BP for services Plaintiff performed under his/its agreement with Defendant BP.)

7. On January 5, 2011, Plaintiff informed Defendant Patriot that Plaintiff had no knowledge of the arrangements between Defendant BP and Defendant Patriot, and was reluctant to sign a release which may prejudice Plaintiff's rights under his/its six-month contract with Defendant BP.  Plaintiff again demanded payment for services already performed and tendered

performance under the contract.

8. On the same day, Defendant Patriot informed Plaintiff that it had no contract with Plaintiff and that if Plaintiff wanted payment for services already performed, he/it must sign the release. Defendant Patriot then held hostage monies due Plaintiff for an unreasonable amount of time, but has since dropped its insistence on the release and made payment to Plaintiff for services rendered without Plaintiff signing the release.

9. On or about September 29, 2011, Plaintiff filed his/its Complaint against BP Company North America, Inc. et al in the United States District Court for the Southern District of Mississippi, stating causes of action for: (1) breach of contract, (2) tortious breach of contract, (3) breach of the duty of good faith and fair dealing, (4) equitable estoppel, (5) unjust enrichment, and (6) specific performance.

10. On November 7, 2011, Plaintiff's action was consolidated with the captioned cause (hereinafter "the Oil Spill Litigation"), which collectively encompasses hundreds of cases with claims for damages resulting from the explosion of the Deepwater Horizon offshore drilling rig on April 20, 2010. Plaintiff's Motion to Sever and Remand follows.

LEGAL ARGUMENT

11. Pursuant to 28 U.S.C. § 1407, the judicial panel on multidistrict litigation may transfer "civil actions [which] involv[e] **one or more common questions of fact**" to any district for consolidated proceedings. (Emphasis added). Such transfers shall only be upon a determination that the transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." Id. See also 28 U.S.C. § 1404(a)

(transfers shall serve "the convenience of the parties and the witnesses" and be "in the interests of justice). In other words, consolidation is only appropriate for cases sharing a "common core", where much of the evidence and the issues are overlapping. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998).

12. The objective of consolidating actions with "common questions of fact" is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation and cost, and save time and effort of the parties, the attorneys, the witnesses and the courts. See generally *In Re Multidistrict Private Civ. Treble Damage Litig.*, 298 F.Supp. 484 (J.P.M.L. 1968) (cited by § 20.131, Multidistrict Litigation Manual). Consolidation should "streamline the efforts of the parties and witnesses, their counsel and the judiciary in order to effectuate an overall savings of cost and a minimum of inconvenience to all concerned." *In re Bristol Bay, Salmon Fishery Antitrust Litigation*, 424 F.Supp. 504, 507 (J.P.M.L. 1976) (citing *In re Nissan Motor Corp. Antitrust Litigation*, 385 F.Supp. 1253, 1255 (J.P.M.L. 1974)).

13. Plaintiff's lawsuit is wholly distinct from the Oil Spill Litigation, and does not involve "common questions of fact" therewith. The issues are not the same, the witnesses are not the same and the discovery will not be the same. In fact, contrary to the clear objectives of consolidation, consolidating Plaintiff's lawsuit with the Oil Spill Litigation will likely result in an increased cost to parties, and a delay in what could be an expeditious resolution.

14. The consolidated cases of the Oil Spill Litigation primarily include claims for personal injury, wrongful death, property damage and other economic losses caused by the explosion. *Transfer Order*, MDL No. 2179, dated Aug. 10, 2010, pg. 3-4. The common issues include the cause of the explosion and the damages that have arisen therefrom. *Id.* On the other

hand, Plaintiff's claims for breach of contract, et. al are merely incidental to the future clean-up of the explosion. Plaintiff was not damaged by the explosion, and is not concerned with the cause thereof. Thus, Plaintiff's claims are separate and distinct from the consolidated claims of the Oil Spill Litigation.

15. It is well-accepted that a plaintiff's choice of forum is entitled to substantial deference, especially when it is in the district where the plaintiff resides. See § 20.12 MDL Manual, citing *Gulf Oil Co v. Gilbert*, 330 U.S. 501, 508 (1947). See also *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). Plaintiff is a Mississippi corporation, and has chosen the United States District Court for the Southern District of Mississippi as its forum. Because transfer and consolidation of Plaintiff's lawsuit will not facilitate a global settlement of the Oil Spill Litigation, and will not positively impact it in any way, Plaintiff's original choice of forum was proper. Plaintiff's lawsuit should be severed and remanded to the United States District Court for the Southern District of Mississippi.

This the 5th day of January, 2012.

                                                Respectfully submitted,

                                                 /s/ *Lee E. Young*
                                                LEE E. YOUNG
                                                Attorney for Plaintiff
                                                MS Bar No. 9061

Young Law Firm, P.C.
Post Office Drawer 700
1407 Jackson Avenue, Suite One (39567)
Pascagoula, MS 39568-0700
Phone (228) 769-8840 / Fax (228) 769-8868

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document was served by Notice of Electronic Filing to counsel of record for Defendants:

Patrick T. Bergin, Esq.
Butler Snow
P.O. Drawer 4248
Gulfport, MS 39502
patrick.bergin@butlersnow.com

Jason Watkins, Esq.
Forman, Perry, Watkins, Krutz & Tardy, LLP
200 South Lamar Street
Suite 100
Jackson, MS 39201-4099
watkinsjd@fpwk.com

This the 5th day of January, 2012.

                                                                  */s/ Lee E. Young*
                                                                  LEE E. YOUNG

Young Law Firm, P.C.
P.O. Drawer 700
Pascagoula, MS 39568-0700
(228) 769-8840
(228) 769-8868 (Facsimile)