UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:   Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf Of Mexico, on April 20, 2010<br><br>This document applies to:<br>*All Cases* | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

**TRANSOCEAN'S MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE TO PRECLUDE ANY ADVERSE INFERENCE AGAINST TRANSOCEAN**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Transocean Offshore Deepwater Drilling, Inc.; Transocean Holdings LLC; Transocean Deepwater, Inc.; and Triton Asset Leasing GmbH (collectively, "Transocean") and files this Memorandum in Support of its Motion in Limine to exclude from the February 27, 2012 trial of liability, limitation, exoneration and fault allocation any adverse inference against Transocean based on any witness's invocation of the Fifth Amendment privilege against self-incrimination.

    **A. No Adverse Inference May Be Drawn Against Transocean Based on a Witness's Invocation of the Fifth Amendment.**

The witnesses who have invoked the Fifth Amendment in these proceedings are not parties to this action, and none was designated by Transocean to testify on Transocean's behalf. There can be no adverse inference against Transocean based on a non-party's refusal to testify unless there is a sufficient alignment of interest between Transocean and the witness such that an inference against *Transocean* based on the *witness's* refusal to testify would be trustworthy under the circumstances and would advance the search for truth. *LiButti v. United States*, 107 F.3d 110, 124 (2d Cir. 1997). That determination must be made on a case-by-case basis, and

there is no presumption that such an inference be allowed. *See, e.g.*, *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 983 F.2d 800, 802 (7th Cir. 1993) ("the inference . . . that may be drawn from the invocation of the Fifth Amendment is permissive"). Rather, the decision whether an inference is appropriate under particular circumstances in a civil case is committed to the sound discretion of the district court. *FDIC v. Fid. & Deposit Co.*, 45 F.3d 969, 977, 978 (5th Cir. 1995); *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000); *LiButti*, 107 F.3d at 124.

The Second Circuit has distilled the considerations guiding that discretion to four non-exclusive factors: (a) the nature of the relevant relationships; (b) the degree of control of the party over the non-party; (c) the compatibility of the interests of the party and the non-party in the outcome of the litigation; and (d) the role of the non-party witness in the litigation. *LiButti*, 107 F.3d at 123-24. The "overarching concern," in any case, "is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *Id.* at 124.

Of the factors outlined in *LiButti*, the "nature of the relationship" between the witness and the party has been called the most significant. *Id.* at 123; *In re Worldcom, Inc.*, 377 B.R. 77, 109 (Bankr. S.D.N.Y. 2007) (citing *In re Handy & Harman Refining Group*, 266 B.R. 32, 35 (Bankr. D. Conn. 2001)). The Fifth Circuit has also identified as critical the relationship between a non-party witness and the party against whom an adverse inference is sought: "The concern is that a non-party who stands in no special relationship to the party at the time of trial may purposefully invoke the privilege solely to discredit the party. The classic example would be a disgruntled former employee who invokes the privilege to hurt his former employer." *FDIC*, 45 F.3d at 978 (footnote omitted). The focus is on the non-party's likely loyalty to the party: "[t]he closer the

2

bond, whether by reason of blood, friendship or business, the less likely the non-party witness would be to render testimony in order to damage the relationship." *LiButti*, 107 F.3d at 123.

Here, most of the current or former Transocean employees who have invoked the Fifth Amendment were in separate litigation directly adverse to Transocean, concerning the same incident at issue in this case, at the time of their depositions. Their relationship to Transocean is expressly adversarial, and their refusals to testify will not support an adverse inference against Transocean. *See, e.g.*, *United States v. Philip Morris USA Inc.*, 2004 WL 5916865, at *1 (D.D.C. July 23, 2004) ("The relationship between Osdene and Defendant Philip Morris USA is hostile and adverse and therefore would not support the inference that the non-party's invocation of his Fifth Amendment rights promotes the interests of the Defendant."). As for the other *LiButti* factors, these witnesses plainly are not "controlled" by Transocean – as demonstrated by their instituting litigation against Transocean – and their interests in the outcome of these proceedings may well be different from Transocean's. Other witnesses face potential personal liability in other civil or criminal proceedings, under various theories and various standards of liability different from (and potentially in conflict with) those relevant here. All of these witnesses' substantial personal interests in the outcome of these and other legal proceedings concerning the incident at issue – some expressly adverse to Transocean, others more subtly different than Transocean's interests here – preclude any inference against Transocean based on the witnesses' refusals to testify.

**B. Even if A Non-Party Witness Could Testify on Transocean's Behalf, the Propriety of an Adverse Inference Would Have to Be Decided on a Question-by-Question Basis.**

The lack of a sufficient alignment of interest between Transocean and the witnesses who have invoked the Fifth Amendment is only the first of several problems with allowing any adverse inference against Transocean in this case. The same "overarching concern" that

3

animates the *LiButti* factors – the need for trustworthiness and advancement of the search for truth – forbids the admission of an adverse inference absent corroborating evidence and dictates that an adverse inference may be drawn only when a witness has refused to answer a proper question. As with the appropriateness of imputing a non-party's silence to Transocean, any requested inference would have to be evaluated on an individualized, question-by-question basis; "[t]he tension between one party's Fifth Amendment rights and the other party's right to a fair proceeding is resolved by analyzing each instance where the adverse inference was drawn, or not drawn, on a case-by-case basis under the microscope of the circumstances of that particular civil litigation." *Glanzer*, 232 F.3d at 1265.

          1.   <u>No Adverse Inference May be Drawn Absent Corroborating Evidence.</u>

There may be no adverse inference on any point for which independent corroborating evidence does not exist. The Constitution does not altogether forbid drawing adverse inferences in civil proceedings when parties "refuse to testify in response to probative evidence offered against them," but independent probative evidence is a prerequisite. *Baxter v. Palmigiano*, 425 U.S. 308, 318-19 (1976). It follows that an adverse inference standing alone cannot support an adverse determination. *Id.* at 317 ("It is thus undisputed that an inmate's silence in and of itself is insufficient to support an adverse decision by the Disciplinary Board."); *United States v. White*, 589 F.2d 1283, 1286-87 (5th Cir. 1979) (quoting *Baxter*); *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 (7th Cir. 1995) ("although inferences based on the assertion of the privilege are permissible, the entry of judgment based only on the invocation of the privilege and 'without regard to the other evidence' exceeds constitutional bounds") (quoting *Baxter*); *Glanzer*, 232 F.3d at 1264 ("the key to the *Baxter* holding is that such adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer")

(citations omitted).  Accordingly, no adverse inference may be drawn against Transocean unless there is other probative, admissible, corroborating evidence to support the point at issue.

> 2. No Adverse Inference May be Drawn from a Refusal to Answer Self-Serving Leading Questions.

For many of the same reasons, a witness's invocation of the Fifth Amendment may not be used as a platform for the questioning lawyer to "testify" by asking leading and self-serving questions and then seeking an adverse inference that the witness would have agreed with the lawyer's "testimony" if the witness had answered the question:

> We recognize, of course, the need to guard against "sharp practices" which some might twist our holding to invite.  The trial judge maintains discretion under Fed. R. Evid. 403 to control the way in which non-party claims of privilege reach the jury.  Judge Winter's dissent in *Brink's Inc.* [*v. City of New York*, 717 F.2d 700 (2nd Cir. 1983)] rightly decries "the systematic interrogation of witnesses on direct examination by counsel who knows they will assert the privilege against self-incrimination," and properly disapproves of fact-specific questions by which the examining attorney effectively testifies for the invoking witness.

*RAD Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 277-78 (3d Cir. 1986) (quoting *Brink's Inc.*, 717 F.2d at 715-16 (Winter, J., dissenting)).  The deposition designations proposed to date are replete with such questions.  Allen Seraile, for example, was asked, "Isn't it true that the failure of Transocean's rig crew, including the OIM, the senior toolpusher and the driller who were on tour on April 19 and 20th, 2010, to comply with Transocean's safety management system in the operation of the DEEPWATER HORIZON on the Macondo well caused the disastrous blowout of the Macondo well on the night of April 20, 2010"?  And William Johnson was invited by counsel for Cameron to agree with counsel's view that Johnson's allegations in his personal injury action are "baseless."  To infer a positive response to these or similar questions would not advance the search for truth but would have the opposite effect, by allowing one party to assign its own view of the case to its opponent.

5

### 3. No Adverse Inference May Be Drawn from a Refusal to Answer a Question Outside the Witness's Personal Knowledge.

No adverse inference can be drawn from a witness's refusal to answer a question that calls for speculation or otherwise seeks information outside the witness's personal knowledge. "Because a witness may only testify as to matters for which they possess 'personal knowledge,' any adverse inference drawn from [a witness's] testimonial silence requires finding that [the witness] had personal knowledge of the subject about which he refuses to testify." *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 415 F. Supp. 2d 628, 634 (E.D. Va. 2006) (citing Fed. R. Evid. 602). The designations so far proposed include countless examples of questions for which no proper foundation exists. Curtis Kuchta, as noted, was asked to speculate about crew members' deaths. And Andrea Fleytas was asked to agree with the statement that Transocean "chose" to put alarms in manual mode. Putting aside that the question is contrary to clear evidence of a Coast Guard directive that human interaction be required for activation of the general alarm, there is no foundation to suppose that Ms. Fleytas knew whether the manual mode was required or whether Transocean had any choice in the matter. No adverse inference may be drawn against Transocean based on a witness's refusal to answer a question which lacked foundation. Any other rule would adopt a lower standard for admissibility of inferences than for substantive evidence.

### 4. No Adverse Inference May Be Drawn from a Refusal to Answer An Ambiguous or "Broad Form" Question.

Nor may an adverse inference be drawn from a witness's refusal to answer an ambiguous or "broad form" question. In *Chishty v. Texas Department of Aging & Disability Services*, 562 F. Supp. 2d 790, 796-97 (E.D. Tex. 2006), for example, the court refused to draw an adverse inference based on a witness's refusal to answer broad questions including:

> At any time prior to when you were working in the office, Shane, at Denton State School and you were working in 528, and I'm not asking about you specifically, did you ever observe or know of any employees, be it a supervisor like Mr. Brookins or other direct care aids, who used illicit drugs on campus?

*Id.* at 796. The deposition designations so far proposed in this case include similar "broad form" questions. Ms. Fleytas was asked "[D]o you have any knowledge as to whether or not anyone on the bridge that served with you on the evening of April 20, 2010, had taken the K-Chief basic course"? And Micah Sandell was asked, "Do you have an understanding -- any understanding of how Halliburton performed for whatever services it provided on the DEEPWATER HORIZON"? These questions (and others like them) provide no basis for an adverse inference – indeed, it is not clear what inference could even be sought from the refusal to answer the questions – and to assign any evidentiary value to them would be to violate Fed. R. Evid. 602.

### 5. No Adverse Inference May Be Drawn if Inadmissible Under Fed. R. Evid. 402, 403, 701, 802, or any other Rule of Evidence.

Fed. R. Evid. 402 requires that evidence be relevant, and Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one of more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. These rules, like Rule 602, apply with equal force when the evidence sought to be admitted is an adverse inference. *Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 210 (5th Cir. 1983). Accordingly, no adverse inference may be admitted without first weighing, as to each proposed inference, probative value, undue prejudice, and the potential for needless cumulative evidence. For the same reasons, an adverse inference cannot be allowed to introduce into the record hearsay inadmissible under Fed. R. Evid. 802, opinion testimony inadmissible under Fed. R. Evid. 701, or evidence inadmissible under any other statute or rule.

7

      6.   <u>No Adverse Inference May Be Drawn in Violation of 46 U.S.C. 6308.</u>

As another example, 46 U.S.C. § 6308 precludes any adverse inference that would import into the record information that is inadmissible under § 6308. Several of the witnesses invoked the Fifth Amendment in response to questions about prior testimony before the Joint Investigation Team ("JIT"), including whether such testimony was true and accurate. No adverse inference can be based on these exchanges, because the admissibility of testimony before the JIT is controlled by § 6308 "[n]otwithstanding any other provision of law." 46 U.S.C. § 6308. As Transocean has argued separately [Dkt. Nos. 4519, 4748], that testimony is inadmissible and parties cannot bring it in through the back door as an "adverse inference."

## **CONCLUSION**

Whether an adverse inference may be permitted based on a witness's invocation of the Fifth Amendment depends on a question-by-question analysis including the relationship between the witness and the party against whom the inference is sought and the propriety of the question as a matter of fairness, admissibility, and the advancement of the search for truth. Transocean respectfully submits that the lack of an alignment of interest between Transocean and the witnesses at issue precludes any adverse inference against Transocean based on any witness's refusal to testify. In the alternative, and to the extent the Court finds that the silence of any of the witnesses at issue may potentially be imputed to Transocean, Transocean respectfully submits that a question-by-question analysis of the evidentiary barriers discussed above would be required before any adverse inference could be admitted.

Respectfully submitted,

By: /s/ Steven L. Roberts  
Steven L. Roberts (Texas, No. 17019300)  
Rachel Giesber Clingman (Texas, No. 00784125)  
Kent C. Sullivan (Texas, No. 19487300)  
Sutherland Asbill & Brennan LLP  
1001 Fannin Street, Suite 3700  
Houston, Texas 77002  
Telephone:  (713) 470-6100  
Facsimile:  (713) 654-1301  
Email:  steven.roberts@sutherland.com  
rachel.clingman@sutherland.com  
kent.sullivan@sutherland.com  

By: /s/ Kerry J. Miller  
Kerry J. Miller (Louisiana, No. 24562)  
Frilot, L.L.C.  
1100 Poydras Street, Suite 3700  
New Orleans, Louisiana 70163  
Telephone: (504) 599-8169  
Facsimile: (504) 599-8154  
Email: kmiller@frilot.com  

-and-

By: /s/ Edwin G. Preis, Jr.  
Edwin G. Preis, Jr. (Louisiana, No. 10703)  
Richard J. Hymel (Louisiana, No. 20230)  
Preis & Roy PLC  
102 Versailles Boulevard, Suite 400  
Lafayette, Louisiana 70501  
Telephone: (337) 237-6062  
Facsimile: (337) 237-9129  

-and-

601 Poydras Street, Suite 1700  
New Orleans, Louisiana 70130  
Telephone: (504) 581-6062  
Facsimile: (504) 522-9129  
Email: egp@preisroy.com, rjh@preisroy.com  

-and-

By: /s/ Brad D. Brian  
Brad D. Brian (California, No. 79001)  
Allen M. Katz (California, No. 54933)  
Munger Tolles & Olson LLP  
355 South Grand Avenue, 35th Floor  
Los Angeles, California 90071  
Telephone: (213) 683-9100  
Facsimile: (213) 683-5180, (213) 683-4018  
Email: brad.brian@mto.com, allen.katz@mto.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

*Counsel for Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2012, I electronically filed the foregoing with the Court's CM/ECF system and service on all counsel by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

/s/  Kerry J. Miller