UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER MAGISTRATE JUDGE |
| ……………………………………………... | : | SHUSHAN |

**BP'S MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE
TO PRECLUDE THE USE OF DEPOSITION TESTIMONY ARISING
FROM IMPROPER AND OBJECTIONABLE QUESTIONING**

During the course of discovery, and subsequently through the deposition designation process, many of the parties have sought to elicit and propose to introduce at trial, testimony given in response to a variety of improper questions. These included questions posed in bad faith or aimed at unreasonably annoying, embarrassing, or oppressing the deponent and queries seeking opinions and conclusions about BP's legal responsibilities.[1] Nowhere was this practice on display more than during the deposition of Dr. Tony Hayward, and for purposes of this motion, BP has limited its examples to Dr. Hayward's testimony – though the issues presented arise with regard to other designated testimony as well.[2]

The Federal Rules of Evidence clearly prohibit these sorts of questions, which – more often than not – amount to rhetorical argument by counsel as to their view of the facts. The

---

[1] The BP Parties objected to these questions at deposition and filed objections to the designations as they submitted to the Court. The BP Parties did not instruct their witnesses not to answer these questions, nor did they halt the depositions pursuant to Federal Rule of Civil Procedure 30(d)(3). The BP witnesses cooperated with the deposition and answered the questions. Trial testimony, however, is a different matter, and the BP Parties now seek to preclude the introduction of this testimony via deposition designations.

[2] Should the Court grant the relief requested herein, BP asks that it be given the opportunity to discuss with opposing counsel limiting other designated testimony in accordance with the Court's ruling, and if agreement cannot be reached, that it submit to the Court any other examples it believes fall into the same category as the testimony discussed below.

Court should not reward counsel for abusing the deposition process in this matter, and the fruits of these efforts should not be allowed as evidence at trial.

## ARGUMENT

**I.   The Court Should Exclude Designations Arising from Bad Faith and Harassing Questions.**

It is beyond dispute that the court should exclude any deposition designations arising from or including questions of bad faith or questions aimed at unreasonably annoying, embarrassing, or oppressing the deponent.  The policies underlying the Federal Rules of Civil Procedure clearly weigh against allowing an examiner to benefit from such conduct at depositions.  Prior to a deposition, Federal Rule 26(c)(1) allows "[a] party or any person from whom discovery is sought [to] move for a protective order" and empowers the court to, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"  Similarly, "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3).  These rules share a common thread: specifically, that counsel must defend his witness against an examiner's abuses and ensure that the examiner is not rewarded for such conduct.[3]

Throughout Dr. Hayward's deposition, the PSC and other parties posed a number of bad faith questions, ranging from self-serving speeches to sarcastic responses to personal attacks, which they now seek to designate as questions and answers for trial:

> And then you proceeded to testify falsely under oath on multiple material issues, didn't you, Dr. Hayward? (24:24-25:1)

---

[3] To their credit, the BP Parties did not halt depositions or instruct witnesses not to answer questions, trusting that the Court would sustain its objections to the questions if and when they might be proffered as trial testimony.

> And if your testimony had been in response to the question what are you not investigating, well, we're not investigating Management causes, we're not investigating ourselves, that would have been a public relations disaster for BP, wouldn't it? (36:14-18)
>
> And do we need to guess what BP said in the wake of this event, or will you just go ahead and agree that they said the same thing they have been saying in every other disaster and every other criminal plea—that it would never happen again, would you agree? (77:21-24)
>
> When you took the oath before Congress on June the 17th of 2010, the last thing you wanted to admit was that since 2007, when you became CEO, and despite what had happened at Grangemouth, Texas City, and Prudhoe Bay, you had done exactly the same thing as Lord Browne, you had aggressively cut cost, didn't you? (100:9-15)

These are but a few of the instances where the PSC and others went beyond their right of inquiry into a zone of improper questioning and badgering the witness. BP has identified the specific portions of Dr. Hayward's designated testimony that fall into this category in Exhibit A, attached hereto.

The Federal Rules clearly mandate a policy against this behavior, and this Court should not allow any testimony arising from these questions, which were clearly aimed at annoying, embarrassing, and oppressing Dr. Hayward.

## II.  The Court Should Exclude Designations Arising from Questions Seeking Testimony as to BP's Legal Responsibilities.

The court should also exclude deposition designations arising from or including questions about opinions as to legal responsibility for the *Deepwater Horizon* incident. As an initial matter, particularly when posed to fact witnesses, these questions almost always lack any foundation. Even if the witness did have a basis to provide an answer, however, the question would still be improper. While "[t]he Federal Rules of Evidence abandoned the ancient rule against testimony regarding ultimate facts, ***so long as such testimony is helpful to the jury***." *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992) (emphasis added); *see also Lubbock Feed*

*Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 263 (5th Cir. 1980), Federal Rule of Evidence 704 "does not open the door to all opinions.  The Advisory Committee notes make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted.  Nor is the rule intended to allow a witness to give *legal* conclusions."  *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *see also Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) *cert. denied,* 130 S. Ct. 1143, 175 L. Ed. 2d 973 (U.S. 2010) and *cert. denied,* 130 S. Ct. 1146, 175 L. Ed. 2d 973 (U.S. 2010) (holding a witness "may never render conclusions of law" or "go beyond the scope of his expertise in giving his opinion").

This prohibition applies with even more force to fact witnesses who have little, if any basis to opine on matter of law, as the reasoning from cases involving experts indicates.  "It is well-established in the Fifth Circuit that Federal Rule of Evidence 704 does not permit an expert to render conclusions of law."  *In re Midland Enterprises, Inc.*, CIV.A. 00-3750, 2002 WL 31780156 (E.D. La. Dec. 11, 2002).  "In sum, 'an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied.'  *Metrejean v. REC Marine Logistics, L.L.C.*, CIV.A. 08-5049, 2009 WL 3062622 (E.D. La. Sept. 21, 2009) (citing *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997)).  For example, this court has denied admission of an expert's legal conclusions about whether a defendant's employees acted negligently and the seaworthiness of a vessel.  *See, e.g.*, *Delta Towing, L.L.C. v. Justrabo*, CIV. A. 08-3651, 2009 WL 3763868 (E.D. La. Nov. 9, 2009).  And the Fifth Circuit is even stricter when it comes to excluding opinions about contract interpretation.  *See, e.g.*, *Fid. Nat. Title Ins. Co. v. Doubletree Partners, L.P.*, 4:08-CV-00243, 2011 WL 4715174 (E.D. Tex. Oct. 5, 2011); *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 435 (5th Cir. 2006) ("[I]ssues

of contract interpretation are for the court only. Where a designated corporate representative is asked to restate or read parts of a contract as a background or foundation for the question whether the corporation performed under the contract, such testimony is permissible… provided he does not phrase his opinion in inadequately explored legal terms.").

In this case, the PSC and other parties posed a number of questions to BP Parties seeking legal conclusions as to the BP Parties' legal responsibilities. Again, the designations submitted from Dr. Hayward's deposition offer a number of pertinent examples:

> And in your position as Chairman of the GORC and CEO of BP, PLC, you monitored and supervised the very system that was responsible for these gross failures in safety management, didn't you? (199:24-200:2)
>
> All right. Do you—given that, do you think that BP bore any responsibility, operation or otherwise, for the performance of this blowout preventer? (249:3-6)
>
> And do you think BP had any responsibility, given its position that the BOP was the last line of defense, to follow up to ensure that any maintenance and repair that needed to be done, got done? (293:11-15)
>
> Do you believe that the Well Site Leader had any responsibility in properly interpreting a negative test and taking the appropriate responsive action? (334:13-16)
>
> And if the driller and toolpusher weren't properly trained and competent to interpret of a negative—interpret a negative test in this situation, would you agree with me that BP bears some responsibility for that under—this regulation? (335:5-11)
>
> Is this the standard of care that, when you were the Chief Executive Officer of BP, is this kind of language, these kind of references, the standard of care that you would expect for the people that are responsible for a rig, for the people aboard the rig, for the property itself, for the environment? (421:14-19)

A full list of the Dr. Hayward's designated testimony relevant to this category appears in Exhibit B, attached hereto.

Here the PSC – already far afield from the witness's first-hand knowledge – went beyond issues of fact altogether and into the realm of legal opinions. While the Fifth Circuit will allow

5

the former if helpful to the trier of fact and not wasteful under Federal Rule of Evidence 403, it never allows opinions on the latter. Issues of law are matters for the court and the court alone; the Federal Rules prohibit the examiner from soliciting legal opinions from anyone else. Therefore, the court should exclude deposition designations arising from or including questions about the BP Parties' legal responsibilities.

## CONCLUSION

BP respectfully requests that the Court enter an order barring from evidence any designation of trial deposition arising from questions made in bad faith or aimed at unreasonably annoying, embarrassing, or oppressing the deponent or seeking legal opinions and conclusions about BP's responsibilities and contractual liabilities.

Dated: January 9, 2012                                      Respectfully submitted,

/s / Don K. Haycraft

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration & Production Inc. & BP America Production Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 9th day of January, 2012.

/s/ Don K. Haycraft