**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG | § | MDL No. 2179 |
| "DEEPWATER HORIZON" in the | § | |
| GULF OF MEXICO on | § | SECTION: J |
| APRIL 20, 2010 | § | |
| | § | |
| | § | |
| This document relates to: | § | Judge Carl J. Barbier |
| | § | Magistrate Judge Sally Shushan |
| *All Cases* | § | |
| | § | |
| | § | |

**MEMORANDUM IN SUPPORT OF M-I L.L.C.'S MOTION *IN LIMINE***
**TO EXCLUDE ADVERSE INFERENCES AGAINST M-I BASED ON**
**FIFTH AMENDMENT INVOCATIONS BY NON-M-I WITNESSES**

**OF COUNSEL:**
MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon
dleon@morganlewis.com
Texas Bar No. 24002463
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:      (305) 415-3000
Facsimile:      (305) 415-3001

Denise Scofield
dscofield@morganlewis.com
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:      (713) 890-5000
Facsimile:      (713) 890-5001

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**

January 9, 2012

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Hugh E. Tanner*
          Hugh E. Tanner
          htanner@morganlewis.com
          Texas Bar No. 19637400
          1000 Louisiana, Suite 4000
          Houston, Texas  77002
          Telephone:      (713) 890-5000
          Facsimile:      (713) 890-5001

**ATTORNEY FOR DEFENDANT**
**M-I L.L.C.**

## I.      INTRODUCTION

No employee of Defendant M-I L.L.C. ("M-I") invoked the Fifth Amendment privilege against self-incrimination in this case.  Nineteen witnesses who are potentially adverse to M-I, however, invoked the Fifth Amendment and refused to answer deposition questions.  These witnesses include current and former employees of BP, Transocean, Halliburton, Sperry Sun, and Offshore Cleaning Systems ("OCS").[1]  It is anticipated that one or more parties may attempt to impute adverse inferences from the Fifth Amendment witnesses to M-I.  Any such attempt should be excluded by this Court.

M-I therefore moves for an order *in limine* to prohibit any party from imputing an adverse inference to M-I based on Fifth Amendment invocations by non-M-I witnesses.  For several independent reasons, imputing such an adverse inference to M-I would be contrary to law.  *First*, there is simply no foundation for imputing a Fifth Amendment adverse inference to M-I.  The parties had a full and fair opportunity to depose M-I witnesses in this case, including M-I's corporate representative, M-I's Project Engineer, two M-I Drilling Fluids Specialists, and M-I's Compliance Specialist.  Not one of M-I's witnesses refused to answer questions.  Therefore, there is no need to impute an adverse inference against M-I.

*Second*, there is no relationship between any of the Fifth Amendment witnesses and M-I, rendering any claims of privilege in response to questions about M-I wholly irrelevant and completely untrustworthy.  The Fifth Amendment witnesses were not and are not under M-I's control and their testimony cannot be viewed as M-I's vicarious admissions.  In fact, the witnesses are, or were, employed by parties that are adverse to M-I in this action.  *Third*, there is absolutely no independent, corroborating evidence to support any Fifth Amendment adverse

---

[1] A complete list of deponents who invoked the Fifth Amendment privilege against self-incrimination ("the Fifth Amendment witnesses") is attached as Exhibit A.

inference against M-I, a requirement for making such an inference. *Finally*, imputing an adverse inference from an unaffiliated, third-party witness to M-I would be significantly more prejudicial than probative under Federal Rule of Evidence 403.

For these reasons, and the reasons set forth below, this Court should exclude any adverse inference against M-I based on Fifth Amendment invocations by non-M-I witnesses.

## II.   ARGUMENT

### A.   There Is No Basis To Permit An Adverse Inference Against M-I Based On Fifth Amendment Invocations By Non-M-I Witnesses

The Fifth Circuit has made clear that "the decision as to whether to admit a person's invocation of the Fifth Amendment into evidence is committed to the discretion of the district court." *FDIC v. Fid. & Deposit Co. of Md.*, 45 F.3d 969, 977-78 (5th Cir. 1995). Therefore, a trial court has to evaluate whether to impute an adverse inference from a non-party to a party "on a case-by-case basis." *Id.* at 978.

Significantly, no court in the Fifth Circuit has imputed an adverse inference from a non-party to a party without a demonstration that the two had at least some relationship. *See*, *e.g.*, *id.* at 977 ("There were several [non-party] witnesses who purportedly *had had relationships* with [the defendant] and who invoked the Fifth Amendment at trial . . . . In this case, a jury could determine that a witness who colluded with [the defendant] took the Fifth Amendment to avoid disclosing that collusion.") (emphasis added).[2] Here, however, no relationship exists between any of the Fifth Amendment witnesses and M-I. None of the Fifth Amendment witnesses is a

---

[2] Most courts that have imputed an adverse Fifth Amendment inference from a non-party to a party "have done so where there is a close family or business relationship between the person who exercised the Fifth Amendment right and the individual against whom an adverse inference is drawn." *State Farm Mut. Auto. Ins. Co. v. Abrams*, No. 96 C 6365, 2000 WL 574466, at *6 (N.D. Ill. May 11, 2000) (noting *LiButti v. United States*, 107 F.3d 110, 124 (2d Cir. 1997) (father/daughter); *Brink's Inc. v. City of New York*, 717 F.2d 700, 710 (2d Cir. 1983) (employer/employee); *RAD Servs., Inc. v. Aetna Cas & Sur. Co.*, 808 F.2d 271, 278 (3d Cir. 1986) (employer/employee); *Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1481-82 (8th Cir. 1987) (charitable organization/former director of organization)). That is not the case here.

current or former M-I employee.  Further, there is absolutely no allegation that the Fifth Amendment witnesses colluded with M-I in any way.

In addition, the Fifth Circuit has mandated that courts may only allow a negative inference to be drawn from a civil litigant's invocation of the Fifth Amendment when and if independent, corroborative evidence makes it reasonable to draw a conclusion from a witness's silence.  *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 119 n.3 (5th Cir. 1990) (holding proposed inference from assertion of Fifth Amendment privilege was insufficient to create an issue of material fact precluding summary judgment where proposed inference was unsupported by independent evidence); *FDIC,* 45 F.3d at 978-9 n.5 (noting that fact finder could not find adverse inference based on Fifth Amendment invocation absent corroborating evidence); *accord Kontos v. Kontos*, 968 F. Supp. 400, 408 (S.D. Ind. 1997) ("Before an adverse inference may be drawn from a party's refusal to testify in a civil case, there must be independent corroborative evidence to support the negative inference beyond invocation of the privilege.").  Here, no party can proffer any independent evidence to corroborate an adverse inference against M-I.

Therefore, as a matter of black-letter law, no party can establish the requisite foundation for imputing an adverse inference against M-I based on the Fifth Amendment invocations by non-M-I witnesses.

> **1.    There Is No Need To Impute An Adverse Inference Against M-I Because M-I Witnesses Were Made Available For Deposition Questioning**

The Fifth Circuit has held that when parties have had ample opportunities to establish facts by other means, an adverse inference need not be found*.   See*, *e.g.*, *Farace v. Indep. Fire Ins. Co*., 699 F.2d 204 (5th Cir. 1983) (affirming district court's refusal to admit invocation of Fifth Amendment, in part, because "defendant had ample opportunity" to establish facts "by other means").  Here, the parties had a full and fair opportunity to depose multiple M-I witnesses

DB1/ 68784606.2

during discovery.  None of M-I's witnesses refused to answer questions by invoking the Fifth

Amendment.  Therefore, none of the parties had significant obstacles in developing facts related

to M-I.  Accordingly, there is no need to impute untrustworthy and irrelevant adverse inferences

from the Fifth Amendment witnesses to M-I.

> **2.     There Is No Relationship Between Any Of The Fifth Amendment Witnesses And M-I And Thus Any Claims Of Privilege Related To Questions About M-I Are Untrustworthy And Irrelevant**

While the Fifth Circuit has made clear that "district courts will have to evaluate these

situations on a case-by-case basis"—refusing to adopt a categorical bar to imputing non-party

Fifth Amendment adverse inferences—the Fifth Circuit has provided little guidance to the

district courts faced with this issue.  *See FDIC*, 45 F.3d at 978.  Authority from the Second

Circuit, however, provides an instructive framework for making such a determination.

*In LiButti,* the Second Circuit established a useful set of non-exclusive factors for a trial

court to consider in determining whether a Fifth Amendment adverse inference may be imputed

from a non-party to a party.  107 F.3d at 123.  These factors include (1) "the nature of the

relevant relationships" between the non-party witness and party; (2) "the degree of control of the

party over the non-party witness;" (3) "the compatibility of the interests of the party and non-

party witness in the outcome of the litigation;" and (4) "the role of the non-party witness in the

litigation." *Id*.  The *LiButti* factors have been applied by a number of circuit and district courts

nationwide.  *See supra* at 5-6.  Here, each of these factors weighs heavily against allowing a

party to impute a Fifth Amendment adverse inference to M-I.

*First*, the nature of the relationship is the most important factor for determining whether

to impute an adverse inference from the Fifth Amendment witnesses to M-I.  *Id.* at 123 ("While

no particular relationship governs, the nature of the relationship will invariably be the most

significant circumstance.").   The nature of the relationship must be examined "from the perspective of a non-party witness' loyalty to [M-I]." *Id*.

Here, there is no relationship between any of the Fifth Amendment witnesses and M-I. None of the Fifth Amendment witnesses is a current or former employee of M-I.  Accordingly, "the reasons that courts have articulated for allowing an adverse inference to be imputed against a witness's employer simply have no place in our analysis."  *Kontos*, 968 F. Supp. at 407 (refusing to draw an adverse inference against defendant as result of sister's assertion of privilege against self-incrimination); s*ee In re Handy & Harman Refining Group*, 266 B.R. 32, 35 (Bankr. D. Conn. 2001) (denying request to impute Fifth Amendment adverse inferences from non-party to party; holding that there was "no basis for a finding that there is presently any relationship between the witness [who invoked the Fifth Amendment] and the debtor; nor that there is, or ever was, any relationship between the witness and the committee (factor 1); nor is there any [control]—financial, emotional, or otherwise—over the witness (factor 2)") (international citations and footnote omitted).

*Second*, M-I does not have, and has never had, control over any of the Fifth Amendment witnesses.  Therefore, the Fifth Amendment witnesses' testimony cannot be viewed as vicarious admissions by M-I.  "The degree of control which the party has vested in the non-party witness in regard to the key facts and general subject matter of the litigation will likely inform the trial court whether the assertion of the privilege should be viewed as akin to testimony approaching admissibility under [Federal Rule of Evidence] 801(d)(2), and may accordingly be viewed . . . as a vicarious admission." *LiButti*, 107 F.3d at 123; *see also Kontos*, 968 F. Supp. at 407 ("Unlike a claim of privilege by a current or former employee, [the non-party witness's] invocation of her right to remain silent cannot be considered a vicarious statement of [defendant]."); *Banks v.*

*Yokemick*, 144 F. Supp. 2d 272, 290 (S.D.N.Y. 2001) (refusing to impute Fifth Amendment adverse inference from non-parties to party; "these ties do not strike the Court as sufficient to establish that [defendant] could exercise any form of control over [the non-party witnesses] to guide their testimony or to support a necessary inference that at this time their interests coincide").

*Third*, the interests of the Fifth Amendment witnesses are not allied with M-I's interests. To the contrary, many of the Fifth Amendment witnesses are current or former employers of opposing parties in this MDL that are potentially adverse to M-I. *See Fujisawa Pharm. Co. v. Kapoor*, No. 92 C 5508, 1999 WL 543166, at *9 (N.D. Ill. July 21, 1999) (finding inference untrustworthy where non-parties who invoked Fifth Amendment did not have an identity of interest with the party, their former employer); *see also United States v. Zerjav*, No. 4:08CV00207 ERW, 2009 WL 912821, at *33 (E.D. Mo. Mar. 31, 2009) (refusing to draw an adverse inference against defendants based on former employee's assertion of Fifth Amendment; "[b]ecause [the witness] is no longer an employee of Defendants, the Court cannot draw any conclusions regarding [the witness's] interests in the litigation or the level of control, if any, that Defendants have over [the witness]"); *Emerson v. Wembley USA Inc.*, 433 F. Supp. 2d 1200, 1213-14 (D. Colo. 2006) (rejecting request to impute adverse inference from non-party witness to employer; although witness formerly had a business relationship with employer, he had no interest in the outcome of the litigation and was not "the only source of the answer to several of Plaintiff's questions" and "[s]imply granting an inference would not be trustworthy considering that the circumstances would seem to allow for Plaintiff to find her answers elsewhere").[3]

---

[3] Finally, regarding the fourth *LiButti* factor, M-I is not aware of any role that the Fifth Amendment witnesses will have at trial related to M-I.

Therefore, because M-I does not have and has never had (1) a relationship of loyalty with any of the Fifth Amendment witnesses, (2) control over the Fifth Amendment witnesses, and/or (3) allied interests with the Fifth Amendment witnesses, the *LiButti* factors weigh strongly against imputing any adverse inference against M-I based on the Fifth Amendment invocations of non-M-I witnesses.

**3.      There Is No Independent, Corroborating Evidence To Support A Fifth Amendment Adverse Inference Against M-I**

The Fifth Amendment only allows adverse inferences against parties to a civil action "when they refuse to testify *in response to probative evidence* offered against them." *Hinojosa v. Butler*, 547 F.3d 285, 291 (5th Cir. 2008) (quoting *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976)) (internal quotation marks omitted, emphasis added).  Therefore, an "adverse inference can only be drawn when *independent evidence exists* of the fact to which the party refuses to answer." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) (prohibiting imputation of adverse inference where plaintiff failed to offer proof to corroborate requested adverse inference) (emphasis added); *see also FDIC,* 445 F.3d at 978 (same).

"[W]hen there is no corroborating evidence to support the fact under inquiry, the proponent of the fact *must come forward* with evidence to support the allegation, *otherwise no negative inference will be permitted.*"  *Glanzer*, 232 F.3d at 1264 (citations omitted) (emphasis added) ("[L]ower courts interpreting *Baxter* have been uniform in suggesting that the key to the *Baxter* holding is that such adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer.").  Therefore, one prerequisite for drawing an adverse inference against M-I is that the Fifth Amendment witness' "silence [must be] countered by independent evidence of the fact being questioned." *Id.* (emphasis omitted).

Here, there is no independent evidence to support any adverse inference against M-I. *See Gutterman*, 896 F.2d at 119 n.3; *FDIC,* 45 F.3d at 979 n.5; *Sebastian v. City of Chicago*, No. 05 C 2077, 2008 WL 2875255, at \*34 (N.D. Ill. July 24, 2008) (refusing to impute an adverse Fifth Amendment inference from a non-party to a party where no independent, corroborative evidence supported the negative inference); *see also Cavalier Clothes, Inc. v. Major Coat Co*., Civ. A. 89-3325, 1995 WL 314511, at 6 (E.D. Pa.  May 18, 1995) (refusing to draw adverse inference from assertion of Fifth Amendment privilege where proposed inference was unsupported by independent evidence).

Therefore, because there is no corroborating evidence to support any adverse inference against M-I, this Court should not permit any adverse inferences to be imputed to M-I based on Fifth Amendment invocations by the non-party witnesses unaffiliated with M-I.

### B.     This Court Should Preclude Imputing Fifth Amendment Adverse Inferences To M-I Under Federal Rule Of Evidence 403

The Fifth Circuit has "recognized that a witness's [Fifth Amendment] invocation may be so prejudicial in certain circumstances as to warrant its exclusion under Rule 403." *Hinojosa*, 547 F.3d at 294.  Accordingly, a trial court has wide discretion under Rule 403 to exclude a Fifth Amendment adverse inference if its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues. *See* FED. R. EVID. 403; *see generally Harrell v. DCS Equip. Leasing Corp*., 951 F.2d 1453, 1465 (5th Cir. 1992) (affirming district court's holding that probative value of initial invocation was outweighed by danger of unfair prejudice under Rule 403).  Here, any potential probative value in imputing Fifth Amendment adverse inferences to M-I would be greatly outweighed by the dangers of unfair prejudice and confusion of liability issues.

*First*, the rationale underlying the adverse inference rule is completely absent in this case with respect to M-I.  That is, "[o]ne argument for admitting the assertion of the [F]ifth [A]mendment is that it is an assertion by the party that *he may have something to hide.*"  *Farace*, 699 F.2d at 210 (emphasis added).  Here, no party can be heard to claim that any of the Fifth Amendment witnesses remained silent in order to protect M-I, a company with which they had no relationship.

*Second*, the assertion of the Fifth Amendment privilege itself "is an ambiguous response."  *Id.* 210-11 ("[T]he inference flowing from . . . assertion of . . . [F]ifth [A]mendment privilege may not be as one-sided as it first appears, and herein lies the danger of unfair prejudice."); *see also Harrell,* 951 F.2d at 1465 ("This Court has previously noted that the invocation of the privilege, particularly on the advice of counsel, is an ambiguous response.") (citing *Farace*, 699 F.2d at 210-11) (internal quotation marks and alteration omitted); *Gutterman*, 896 F.2d at 119 n.3 (same).  Imputing such an ambiguous response to *another* party is especially dangerous where, as here, (1) the witness invoking the privilege has absolutely no relationship of loyalty whatsoever to the party that is the subject of the unanswered question, *see supra* A.II.2, and (2) there is no corroborating evidence to support the requested inference, *see supra* A.II.3.

*Third*, even when applicable, the probative value of any adverse inference is extremely low.  In fact, the Fifth Circuit has "limited the value of the negative inference by recognizing that a party seeking summary judgment cannot rely solely on the other party's exercise of his [F]ifth [A]mendment rights."  *Gutterman*, 896 F.2d at 119 n.3 (affirming summary judgment despite party's refusal to testify, noting that an adverse inference based on the assertion of the Fifth Amendment privilege does not raise issues of fact) (citation omitted); *see also Tweeddale v.*

*Comm'r*, 841 F.2d 643, 645 (5th Cir. 1988) ("An individual's assertion of the Fifth Amendment privilege is not a substitute for relevant evidence meeting the . . . burden of proof.").

Accordingly, because of the ambiguous nature of the Fifth Amendment witnesses' silence in response to questions related to M-I's defenses, the lack of independent, corroborating evidence, and the *de minimis* value of adverse inferences generally, this Court should refuse to impute any adverse inferences against M-I as substantially more prejudicial than probative under Rule 403. *Farace,* 699 F.2d at 210 (citing FED. R. EVID. 403) (affirming district court's refusal to admit adverse inference under Rule 403 because invocation was of little probative value).

## III.    CONCLUSION

For the foregoing reasons, this Court should exclude any adverse inference against M-I based on Fifth Amendment invocations by non-M-I witnesses.

                                                    Respectfully submitted,

**OF COUNSEL:**                              MORGAN, LEWIS & BOCKIUS LLP
MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon                                By: /s/ *Hugh E. Tanner*
dleon@morganlewis.com                            Hugh E. Tanner
Texas Bar No. 24002463                           htanner@morganlewis.com
5300 Wachovia Financial Center                   Texas Bar No. 19637400
200 South Biscayne Boulevard                     1000 Louisiana, Suite 4000
Miami, Florida  33131                            Houston, Texas  77002
Telephone:    (305) 415-3000                     Telephone:    (713) 890-5000
Facsimile:    (305) 415-3001                     Facsimile:    (713) 890-5001

Denise Scofield
dscofield@morganlewis.com            **ATTORNEY FOR DEFENDANT**
Texas Bar No. 00784934               **M-I L.L.C.**
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:    (713) 890-5000
Facsimile:    (713) 890-5001

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**

DB1/ 68784606.2

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Memorandum in Support of M-I L.L.C.'s Motion in Limine to Exclude Any Adverse Inference Against M-I based on Fifth Amendment Invocations by Non-M-I witnesses has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 9th day of January, 2012.

_/s/ Hugh E. Tanner_
Hugh E. Tanner