# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater | * | |
| Horizon" in the Gulf of Mexico, | * | **MDL No. 2179** |
| on April 20, 2010, | * | |
| | * | **Section: J** |
| **This Pleading Applies to:** | * | |
| | * | **Judge Barbier** |
| | * | |
| *All Cases (including Case No. 2:10-cv-04536* | * | **Magistrate Shushan** |
| *(United States v. BP Exploration &* | * | |
| *Production Inc., et al.))* | * | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## BP EXPLORATION & PRODUCTION INC.'S OPPOSITION TO THE UNITED STATES' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE LIABILITY OF BP EXPLORATION & PRODUCTION INC., THE TRANSOCEAN DEFENDANTS, AND THE ANADARKO DEFENDANTS

Robert R. Gasaway
Jeffrey Bossert Clark
Aditya Bamzai
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  202-879-5000
Facsimile:  202-879-5200

Joel M. Gross
Brian Israel
Allison Rumsey
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC  20004-1206
E-Mail:  Joel.Gross@aporter.com
Telephone:  202-942-5000
Facsimile:  202-942-5999

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone:  504-581-7979
Facsimile:  504-556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  312-862-2000
Facsimile:  312-862-2200

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone:  202-662-5985
Facsimile:  202-662-6291

*Attorneys for BP Exploration & Production Inc.*

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ....................................................................................................................1

LEGAL STANDARD...............................................................................................................3

ARGUMENT ............................................................................................................................3

I.  THE MOTION'S REQUESTS FOR A PREMATURE DECLARATORY
    JUDGMENT AND A PREMATURE RESOLUTION OF JOINT AND
    SEVERAL LIABILITY ISSUES SHOULD BE DENIED. ...................................3

    A.  The United States Is Not Entitled to a Declaratory Judgment That
        Will Reserve Claims or Remedies for Future Actions...............................4

    B.  The United States Has Not Made a Sufficient Showing to Justify
        Imposition of Joint and Several Liability..................................................9

II. THE COURT SHOULD DECLINE THE MOTION'S INVITATION TO
    ISSUE PREMATURE AND INCORRECT RULINGS FINDING
    REGULATORY VIOLATIONS. ....................................................................11

    A.  The Purported Regulatory Violations the United States Identifies
        Could Not Have Proximately Caused a Discharge of Oil.....................11

    B.  Even If Section 250.300(a), When Violated, Were Capable of
        Lifting OPA's Liability Caps, Material Issues of Fact Preclude
        Summary Judgment. ...............................................................................14

III. THE UNITED STATES HAS NOT MET ITS SUMMARY JUDGMENT
     BURDEN WITH RESPECT TO ITS CLEAN WATER ACT
     ARGUMENTS AGAINST BP. ......................................................................15

    A.  The Motion Fails to Establish That Oil Was Discharged "From"
        Anything Other Than the *Deepwater Horizon* Vessel..........................15

    B.  The United States' "Operator as a Matter of Law" Theory, If
        Reached, Must Be Rejected. ...................................................................17

CONCLUSION.........................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Adams Fruit Co. v. Barrett*,
   494 U.S. 638 (1990) .................................................................................................... 21

*Am. Forest & Paper Ass'n v. EPA*,
   137 F.3d 291 (5th Cir. 1998)....................................................................................... 21

*Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*,
   51 F.3d 235 (11th Cir. 1995)....................................................................................... 10

*Bowsher v. Merck & Co.*,
   460 U.S. 824 (1983) .................................................................................................... 13

*Burlington Northern & Santa Fe Railway Co. v. United States*,
   129 S. Ct. 1870 (2009) ..................................................................................... 9, 10, 19

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...................................................................................................... 3

*City of Waco v. Schouten*,
   385 F. Supp. 2d 595 (W.D. Tex. 2005),
   *clarified on denial of reconsid.*,
   2005 WL 2757262 (W.D. Tex. Oct. 24, 2005) ....................................................... 18

*Curtis v. Citibank, N.A.*,
   226 F.3d 133 (2d Cir. 2000)......................................................................................... 6

*Fleming v. Travenol Labs., Inc.*,
   707 F.2d 829 (5th Cir. 1983)........................................................................................ 6

*Geraghty & Miller, Inc. v. Conoco Inc.*,
   234 F.3d 917 (5th Cir. 2000)...................................................................................... 19

*Griffin v. UPS, Inc.*,
   661 F.3d 216 (5th Cir. 2011)........................................................................................ 3

*Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9*,
   10 F.3d 700 (10th Cir. 1993)...................................................................................... 17

*Hogue v. Royse City, Tex.*,
   939 F.2d 1249 (5th Cir. 1991)...................................................................................... 5

*In re Bell Petroleum Servs.*,
   3 F.3d 889 (5th Cir. 1993).......................................................................................... 10

*Iteld, Bernstein & Assocs., LLC v. Hanover Ins. Grp.*,
   No. 06-3418, 2009 WL 2496552 (E.D. La. Aug. 12, 2009) ...................................... 8

*Jones v. Cain*,
   600 F.3d 527 (5th Cir. 2010) ................................................................................. 8

*Kasper Wire Works, Inc. v. Leco Eng'g & Mach.*,
   575 F.2d 530 (5th Cir. 1978) ................................................................................. 5

*Kiln Underwriting Ltd. v. Jesuit High Sch. of New Orleans*,
   Nos. 06-04350, 06-05060, 06-05057,
   2008 WL 3365520 (E.D. La. Aug. 8, 2008) .......................................................... 17

*Langston v. Ins. Co. of N. Am.*,
   827 F.2d 1044 (5th Cir. 1987) ............................................................................... 5

*Lone v. Peterson*,
   899 P.2d 737 (8th Cir. 1990) ................................................................................. 7

*MacDonald v. General Motors Corp.*,
   110 F.3d 337 (6th Cir. 1997) ............................................................................... 17

*Metro. Stevedore Co. v. Rambo*,
   521 U.S. 121 (1997) ............................................................................................ 21

*Owens v. Samkle Auto., Inc.*,
   425 F.3d 1318 (11th Cir. 2005) ........................................................................... 12

*Pitcairn v. American Refrigerator Transit Co.*,
   101 F.2d 929 (8th Cir. 1939) ............................................................................... 17

*Puerto Rico Ports Auth. v. PCI Int'l, Inc.*,
   200 F. Supp. 2d 61(D.P.R. 2002) ........................................................................ 19

*Randolph v. Laeisz*,
   896 F.2d 964 (5th Cir. 1990) ............................................................................... 14

*Shell Offshore Inc. v. Babbitt*,
   238 F.3d 622 (5th Cir. 2001) ............................................................................... 21

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders*
   *In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*,
   407 F.3d 34 (2d Cir. 2005) .................................................................................. 17

*Supporters to Oppose Pollution, Inc. v. Heritage Group*,
   973 F.2d 1320 (7th Cir. 1992) ............................................................................... 8

*Tramel v. Schrader*,
   505 F.2d 1310 (5th Cir. 1975) ............................................................................. 12

iii

*United States v. Avatar Holdings Inc.*,
No. 93–281–CIV–FTM–21, 1995 WL 871260 (M.D. Fla. Nov. 22, 1995)................................ 8

*United States v. Bestfoods*,
524 U.S. 51 (1998) ................................................................................................ 18, 19

*United States v. Citgo Petroleum Corp*,
Civil Action No. 2:08-cv-893 (W.D. La.) .............................................................. 7

*United States v. Gurley Ref. Co.*,
43 F.3d 1188 (8th Cir. 1994)............................................................................... 7, 8

*United States v. T'ship of Brighton*,
153 F.3d 307 (6th Cir. 1998)................................................................................ 19

*United States v. Viking Res., Inc.*,
607 F. Supp. 2d 808 (S.D. Tex. 2009) .................................................................. 18

*United States v. Wright*,
639 F.3d 679 (5th Cir. 2011)................................................................................ 10

*Washington Market Co. v. Hoffman*,
101 U.S. (11 Otto) 112 (1879) ............................................................................. 12

**Statutes, Regulations, and Rules**

30 C.F.R. § 250.143(b),
*recently recodified to* 30 C.F.R. § 550.143(b) ......................................................... 19

30 C.F.R. § 250.300(a)............................................................................................. 13, 14

30 C.F.R. § 250.420(a)(2)......................................................................................... 12, 13

33 U.S.C. § 1017(f)....................................................................................................... 8

33 U.S.C. § 1321(a)(6)............................................................................................. 17, 18

33 U.S.C. § 1321(b)(7) ......................................................................................... 15, 17, 19

33 U.S.C. § 2701 ................................................................................................... 3, 18, 19

33 U.S.C. § 2702 ......................................................................................................... 10

33 U.S.C. § 2704(c) .................................................................................................. 11, 12

33 U.S.C. § 2717(f) ....................................................................................................... 8

42 U.S.C. § 9601(20) .................................................................................................... 18

42 U.S.C. § 9607(a) ...................................................................................................... 10

43 U.S.C. § 1348(b) .................................................................................................. 19, 20

43 U.S.C. § 1350................................................................................................................... 20

Fed. R. Civ. P. 56(a) ............................................................................................................. 3

**Other Authorities**

RESTATEMENT (SECOND) OF TORTS § 282 ................................................................................. 13

## INTRODUCTION

BP Exploration & Production Inc. (hereinafter "BP") has consistently said it will pay all legitimate Oil Pollution Act ("OPA") claims and that it does not contest OPA liability to that extent.  [Doc. # 559 (10/18/10)].  And BP has never denied that, for purposes of Clean Water Act Section 311, it is an "owner" of an offshore facility known as the Macondo well.  In short, where appropriate, BP has not hesitated to acknowledge the legitimacy of certain elements of claims or even the entirety of certain claims.  Through the GCCF and otherwise, BP has already paid billions of dollars to satisfy OPA and other claims arising from the *Deepwater Horizon* incident.

The United States' pending summary judgment motion ("Motion"), however, goes too far, too fast in seeking various legal rulings against BP and other defendants.  This responsive filing seeks to assist the Court by addressing issues presented in the Motion by pointing out instances where a particular issue need not be resolved at this juncture or where a resolution in the manner the United States suggests would produce legal error prejudicial to BP's interests.

As an initial matter, the Motion seeks, prematurely, to obtain a declaratory judgment that resolves questions of liability under the Oil Pollution Act ("OPA").  As explained below, this aspect of the Motion, while not directly targeting BP, threatens to adversely impact two different affirmative defenses appearing in BP's answer to the United States' Complaint, [Doc. # 1858 (4/4/11)], and so should be reserved for resolution at a later time.  ***First***, the United States seeks, improperly, not just a traditional award of summary judgment as to OPA liability, but a "declaratory judgment" that would be "final" and "enforceable" in other proceedings.  This unusual request to enter a final judgment would contravene claims-splitting principles and should be denied.  (*See* Section I.A, *infra*.)  ***Second***, the United States seeks a premature adjudication that OPA liability is joint and several, despite the fact that the current factual record does not

satisfy the applicable legal standard established by the Supreme Court to govern statutes like OPA. (*See* Section I.B, *infra*.)

The Motion further seeks to establish, prematurely, the violation of two Interior Department regulations. The Motion asserts these purported regulatory violations are ripe and relevant because they proximately caused the *Deepwater Horizon* incident and may thus be invoked and relied on by the United States to subject Anadarko to uncapped OPA liability. But as explained below, the particular regulatory violations that the Motion alleges (even if they occurred) turn on events that happened *in the wake of the incident*, not on conduct proximately causing the incident — as OPA requires. (*See* Section II.A, *infra*.) Violations of these particular regulations, whatever other consequences they may entail, cannot furnish grounds for piercing OPA's liability caps. *Id*. Moreover, even if such violations could provide grounds for piercing OPA caps, a ruling on such violations necessarily turns on facts yet to be adduced at trial, precluding summary judgment. (*See* Section II.B, *infra*.)

Finally, the Motion also seeks, prematurely, summary judgment against BP under the Clean Water Act. To establish penalty liability for BP under the Act's Section 311(b), the United States must carry a burden of establishing that BP was (i) an owner, operator, or person in charge of an offshore facility (ii) from which oil was discharged into the Gulf of Mexico. 33 U.S.C. § 1321(B)(7)(a). As noted below, however, facts that are presently undisputed establish only that oil flowed into the Gulf from the *Deepwater Horizon*'s BOP and riser, two appurtenances of Transocean's *Deepwater Horizon* vessel. Accordingly, whatever the proper result might be as to the Motion's bid for summary judgment vis-à-vis Transocean, the Motion fails to carry its burden vis-à-vis BP. (*See* Section III.A, *infra*.) Relatedly, given the lack of any

disagreement over BP's well ownership, there is no need for the United States to establish, in addition, that BP was also an "operator as a matter of law." (*See* Section III.B, *infra*.)

Accordingly, and for reasons explained below, the United States Second Partial Summary Judgment Motion should be denied as to BP.

## LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Griffin v. UPS, Inc.*, 661 F.3d 216, 221 (5th Cir. 2011).

## ARGUMENT

I. **THE MOTION'S REQUESTS FOR A PREMATURE DECLARATORY JUDGMENT AND A PREMATURE RESOLUTION OF JOINT AND SEVERAL LIABILITY ISSUES SHOULD BE DENIED.**

BP previously acknowledged that it is a responsible party under OPA for the *Deepwater Horizon* spill and has stated that it will not invoke the liability cap established by OPA Section 2704(a)(3). *See* Statement of BP Exploration & Production Inc. [Doc. # 559 (10/18/10)]. Perhaps as a result, the United States has not moved for summary judgment against BP on the issue of liability under OPA, 33 U.S.C. § 2701 *et seq.* Nonetheless, the United States' Motion does raise two OPA-related issues that go beyond BP's acknowledgment that it will pay (and has been paying, through the GCCF and otherwise) legitimate claims for oil spill damage and potentially compromise affirmative defenses appearing in BP's Answer.

*First*, the Motion does not merely seek a summary judgment liability ruling against the

3

Anadarko Defendants under OPA.  Rather, the Motion seeks a "final judgment," even though the United States has not yet alleged or proven the specific items of costs or damages to which it claims an entitlement to a recovery.  This request should be denied as an effective sidestepping of the phased trial process established by Amended PTO #41  [Doc. # 4083(9/21/11)] and an instance of improper claim splitting.  **Second**, the Motion asserts that the Defendants' OPA liability (including BP's) is joint and several, such that each Defendant can be held liable for all OPA costs and damages.  But applicable case law, including from the United States Supreme Court, establishes that whether liability is joint and several can be determined only by probing into and resolving issues of fact — factual issues at the heart of the upcoming Phase 1 trial.

### A.   The United States Is Not Entitled to a Declaratory Judgment That Will Reserve Claims or Remedies for Future Actions.

The Motion requests (under 33 U.S.C. § 2716(f) and 28 U.S.C. § 2201) that the Court enter declaratory judgment relief as to the Anadarko Defendants' liability.  *See* U.S. Mem. at 32. The Motion requests that the Court rule that this judgment be "enforceable in this or any subsequent administrative or judicial proceeding to recover any specific amounts of removal costs and damages."  [Doc. # 4820-3 (12/6/11)].

Although the United States has not moved for summary judgment against BP with respect to OPA liability or damages, the United States did request in its Complaint a declaratory judgment against BP that would be enforceable in a subsequent proceeding to recover removal costs and damages.  *See* U.S. Compl. at 26.  In response, BP asserted the affirmative defense of claim splitting, stating that "Plaintiff's request for a declaratory judgment regarding alleged damages under OPA constitutes improper claim splitting and is barred by *res judicata* . . . ."  BP Answer to U.S. Compl. at 31-32 (First Affirmative Defense) [Doc. # 1858 (4/4/11)].

But although the instant declaratory judgment is being sought only against the Anadarko

Defendants, not BP, the Motion cites no authority in support of its declaratory judgment request, nor does it cite authority for the proposition that such a judgment could be enforced in a subsequent proceeding to recover removal costs or damages.  Having failed to provide the Court with the basis for the relief it seeks, the Court should summarily deny that relief.

More fundamentally, the Motion's request for permission to pursue OPA removal costs and damages in some yet-to-be-defined later action constitutes improper claim splitting and risks violating the policies informing *res judicata* doctrine.  Regardless of whose liability is in issue — whether that of the Anadarko Defendants, BP, or any other OPA responsible party — the United States should bring its claims for OPA-related costs and damages before this Court, not reserve than for some later action.

Claim splitting is a doctrine closely related to *res judicata*, which comes into force when a judgment is entered, creating the effect of a "merger and bar."  *Kasper Wire Works, Inc. v. Leco Eng'g & Mach.*, 575 F.2d 530, 535 (5th Cir. 1978).  *Res judicata* will bar claims split off into another action that remains to be adjudicated.  But claims-splitting doctrine also embodies a principle disfavoring the filing of split claims even before a judgment is rendered.  *See Hogue v. Royse City, Tex.*, 939 F.2d 1249, 1255 (5th Cir. 1991) ("well settled that a litigant may not ordinarily split his claim and have two trials on the same alleged breach of duty").  *See also Langston v. Ins. Co. of N. Am.*, 827 F.2d 1044, 1048 (5th Cir. 1987) (per curiam) ("[A]t the time that Fleming filed her EEOC charge and received her right-to-sue letter, she could simply have amended her pending discrimination complaint and argued the Title VII allegations in that suit. She chose not to do so, but rather filed a second complaint while her original case was still pending.  [For] when one has a choice of more than one remedy for a given wrong … he or she may not assert them serially, in successive actions, but must advance all at once on pain of

bar."), *citing Fleming v. Travenol Labs., Inc.,* 707 F.2d 829, 834 (5th Cir. 1983); *see generally Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("The rule against duplicative litigation is distinct from but related to the doctrine of claim preclusion or *res judicata*.").

This is a tremendously important issue. In this expansive litigation, the Court has established, with the aid of extensive input from the United States, a detailed, multi-year schedule to resolve the many thousands of claims arising out of the *Deepwater Horizon* incident. The ultimate objective of the monumental litigation effort this schedule contemplates is that parties get resolution of the claims brought by them or against them, once and for all. Not so, however, if one or the other party can selectively litigate only certain of its claims while reserving others — perhaps even for some later action to be brought in some different court.

Significantly, the United States' claims for civil penalties under Section 311 of the CWA, which it has asserted in this action, and its claims for damages and removal costs under the OPA, which it seeks to preserve for a later action, are both parts of the same interrelated set of causes of action for purposes of claim-splitting analysis. The United States' CWA and OPA claims substantially and materially overlap and arise from the same transaction and are clearly based on the "same nucleus of operative facts." In particular, not only do both claims directly relate to the *Deepwater Horizon* oil spill that occurred between April 2010 and July of 2010, but the proofs the United States is expected to adduce for the two claims significantly overlap.

For instance, one area of damages that the United States seeks to reserve to a future action is its claim under OPA for damages to natural resources. *See* U.S. Compl. ¶¶ 65-67. But issues relating to the extent of harm to natural resources also, almost surely, will be raised by the United States in the context of any claim for Section 311 penalties against BP or others. For example, in recent litigation arising from the Citgo-Lake Charles spill, the government sought

penalties under CWA Section 311 and argued that an imposition of penalty liability was particularly appropriate because, *inter alia*, the Lake Charles spill had caused actual environmental harm:

> Actual harm can also be seen in oiled and killed aquatic life and terrestrial wildlife, in miles of oiled shoreline and habitat, in the presence of toxins remaining in the estuary, or in the human health and other socio-economic impacts of a spill …..  Any of these impacts would further support a finding of actual harm and a substantial penalty.

United States' Citations on the Interpretation and Application of the Penalty Provisions in Section 311(B) of the Clean Water Act, *United States v. Citgo Petroleum Corp*, Civil Action No. 2:08-cv-893 (W.D. La.), at 8-9 [Doc. # 182-1 (2/8/2011)].  In assessing penalties in *Citgo*, the District Court accepted the United States' invitation to consider environmental harms and observed (as part of assessing a penalty far below what the United States had sought) that "the testimony showed that the environmental impact was almost fully rectified by 2009, and the wildlife seems to be showing no adverse impacts from the spill."  Judgment, *United States v. Citgo Petroleum Corp*., Civil Action No. 2:08-cv-893 (W.D. La.), at 4 [Doc. # 234 (9/29/2011)].

Nor does the fact that the full extent of removal costs and damages may not yet be known excuse claim splitting.  For example, in *United States v. Gurley Ref. Co.*, 43 F.3d 1188 (8th Cir. 1994), the Eighth Circuit barred the United States' CERCLA cost recovery claims brought in the wake of a prior judgment entered in a previous proceeding on the government's CWA cost-recovery claims for the same property.  The Court determined that the two cost recovery actions concerned the same transaction — the same disposal of hazardous wastes on the property — and thus were "closely 'related in time, space, [and] origin'" and formed a single "convenient trial unit," *id.* at 1196 (quoting *Lone v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990)), even though the court acknowledged that the full scope of the CERCLA remediation was unknown at the time of

the original judgment.  *Id.* at 1196-97; *see also United States v. Avatar Holdings Inc.*, No. 93–281–CIV–FTM–21, 1995 WL 871260, at *6 (M.D. Fla. Nov. 22, 1995) (barring a subsequent claim for CWA penalties and noting that even though "the size of the release is better known now than then … new evidence of injury differs from a new wrong") (citing *Supporters to Oppose Pollution, Inc. v. Heritage Group*, 973 F.2d 1320, 1326 (7th Cir. 1992)).

Tellingly, the United States does not base its argument for claim splitting on Section 1017(f)(2) of OPA, 33 U.S.C. § 2717(f)(2) — a provision with no applicability here.  Section 1017(f)(2) provides that "[i]n any such action described in this subsection, the court shall enter a declaratory judgment on liability for removal costs or damages that will be binding on any subsequent action or actions to recover further removal costs or damages."  Here, this provision is inapposite for two reasons.  ***First***, nowhere does Section 1017(f)(2) provide that OPA actions may be brought solely to obtain a declaratory judgment as to liability without specifying the removal costs and damages incurred as of the date when an action is brought.  ***Second***, nothing in Section 1017(f)(2) overrides principles of *res judicata* or claim splitting or allows the United States to bring certain claims in one action and other claims arising from the same operative facts in another one.  In any event, the United States did not raise Section 1017(f)(2) in its Motion, and any attempt to do so in the reply brief would be waived.  *See, e.g.*, *Iteld, Bernstein & Assocs., LLC v. Hanover Ins. Grp.*, No. 06-3418, 2009 WL 2496552, *4 (E.D. La. Aug. 12, 2009) ("[A]rguments raised for the first time in a Reply brief are waived."); *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) (same).

In sum, if the United States is concerned about unresolved questions of fact, these concerns may properly be addressed through discovery and case management.  Such concerns may not, however, be invoked to disadvantage Anadarko or BP or other defendants by splitting

claims.  Having now filed its Complaint, the United States cannot "reserve" selected parts of its OPA claims or "reserve" a broad, undefined right to initiate new litigation into perpetuity — including cases, potentially, founded on entirely new legal theories but the same core of operative fact now at issue in this MDL.[1]

### B.   The United States Has Not Made a Sufficient Showing to Justify Imposition of Joint and Several Liability.

The Motion argues that all OPA "responsible parties" are jointly and severally liable for removal costs and damages.  *See* U.S. Mem. at 4.  BP's Answer, however, has asserted the doctrine of divisibility as an affirmative defense to joint and several liability.  *See* BP Answer to U.S. Compl. at 32 (Fourth Affirmative Defense) [Doc. # 1858 (12/15/10)]; *see also* Monthly Status Conference at 57:3-5 [Doc. # 4786 (11/18/11)]; BP Parties Mem. In Opp. to PSC's Mot. In Limine to Exclude Evidence [Doc. # 4392 (10/24/11)] (raising related issues).  At this early stage, the factual record remains insufficient to support the United States' claim that responsible parties are jointly and severally liable, or for that matter to rule in BP's favor as to divisibility.  Hence, issues of divisibility and joint liability should be reserved for trial.

In *Burlington Northern & Santa Fe Railway Co. v. United States*, 129 S. Ct. 1870 (2009), the Supreme Court applied the so-called divisibility doctrine to CERCLA — the statute upon which OPA was modeled in several respects.  *See, e.g.*, *Boca Ciega Hotel, Inc. v. Bouchard*

---

[1] The present Motion raises one aspect of the United States' attempt to avoid litigating all related claims in this action.  Paragraph 92 of its Complaint purports to reserve a far wider ability to claim split.  It attempts to preserve theories under "the CWA, OPA, the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1301 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, the Endangered Species Act of 1973, 16 U.S.C. §§ 1531 *et seq.*, the Marine Mammal Protection Act, 16 U.S.C. §§ 1361 *et seq.*, the National Marine Sanctuaries Act, 16 U.S.C. §§ 1431 *et seq.*, and the Park System Resource Protection Act, 16 U.S.C. §§ 19jj *et seq.* against the present Defendants and/or against any additional parties.  The United States further expressly reserves the right to conduct administrative proceedings as warranted against the present Defendants and/or additional parties under federal statutes, including but not limited to the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1301 *et seq.*, and the Federal Oil and Gas Royalty Management Act, 30 U.S.C. §§ 1701 *et seq.*"  BP does not necessarily object to the United States' amending its Complaint in this action to assert additional claims, providing that is done in a timely manner.  But BP does and will object to any effort to "file additional complaints."  U.S. Compl. at ¶ 92.

9

*Transp. Co.*, 51 F.3d 235, 239-40 & n.10 (11th Cir. 1995) (reasoning that OPA's and CERCLA's similarities and differences reflect deliberate choices by Congress because "Congress was aware of, and occasionally borrowed from, CERCLA when enacting OPA").   Notwithstanding CERCLA's imposition of strict liability, the Supreme Court held in *Burlington Northern* that where liability remains divisible, then the automatic imposition of joint and several liability (as at common law) is not appropriate.  *See id.* at 129 S. Ct. at 1883-84; *accord United States v. Wright*, 639 F.3d 679, 691 n.8 (5th Cir. 2011) (Davis, J., specially concurring) (per curiam) ("[T]he Court has held that CERCLA joint and several liability is limited by . . . general causation principles.") (citing *Burlington Northern*, 129 S. Ct. at 1880-81); *In re Bell Petroleum Servs.*, 3 F.3d 889, 895 (5th Cir. 1993) ("[J]oint and several liability … is not mandatory in all such cases.").   Instead, "when two or more persons acting independently cause a distinct or single harm for which there is a reasonable basis for division according to the contribution of each, each is subject to liability only for the portion of the total harm that he has himself caused." *Burlington Northern*, 129 S. Ct. at 1881 (alterations and internal quotation marks omitted).

Like OPA, CERCLA imposes strict liability upon responsible parties.  *Compare* 42 U.S.C. § 9607(a) (strict liability under CERCLA) *with* 33 U.S.C. § 2702 (strict liability under OPA).   And there is no difference between the two statutes that would justify a different divisibility doctrine under one as compared with the other.   Hence, if defendants here can show at trial "that a reasonable basis for apportionment exists," joint and several OPA liability is not appropriate.   For these reasons, the United States' request for a final determination of joint and several OPA liability, in all circumstances and regardless of divisibility, should be denied.

II.    **THE COURT SHOULD DECLINE THE MOTION'S INVITATION TO ISSUE PREMATURE AND INCORRECT RULINGS FINDING REGULATORY VIOLATIONS.**

The Motion contends that the Anadarko Defendants are liable without limitation under OPA because they or a contractually related party (perhaps BP) committed regulatory violations that proximately caused the discharge from the Macondo Well.  *See* U.S. Mem. at 15-16. Although the Motion does not directly assert that BP violated applicable regulations, and indeed, BP has already stated voluntarily it will not invoke the liability cap under OPA, the United States has alleged various regulatory violations by BP (and others) in its Complaint.  Against this backdrop, to ensure that BP is not unfairly tainted with regulatory violations before the Phase 1 trial even begins, BP will comment below on the Motion's request for premature rulings on questions of regulatory violations by Anadarko (but, oddly, not by Transocean).

A.    **The Purported Regulatory Violations the United States Identifies Could Not Have Proximately Caused a Discharge of Oil.**

As the Motion recognizes, OPA Section 2704(c)(1)(B) provides that the OPA caps do not apply if:

> the incident was *proximately caused by* …

> (B) the violation of an applicable Federal safety, construction, or operating regulation by, the responsible party, an agent or employee of the responsible party, or a person acting pursuant to contractual relationship with the responsible party.

> 33 U.S.C. § 2704(c)(1)(B).

U.S. Mem. at 13-14 (emphasis added).  The Motion then proceeds to discount entirely this proximate cause requirement and to read Section 2704(c)(1)(B) as if it said that the OPA caps cease to apply if a discharge incident "*results in* … the violation of an applicable Federal safety, construction, or operating regulation …."  But that is not what the statute says.

11

To have a legal effect of lifting OPA's liability caps, an alleged regulatory violation must *precede* and then proximately cause the discharge of oil. It is impermissible to "read[] words into the statute that do not exist," *Owens v. Samkle Auto., Inc.*, 425 F.3d 1318, 1321 (11th Cir. 2005) (per curiam), just as it is impermissible to read words out of a statute. Most importantly here, the United States' interpretation of Section 2704(c)(1)(B) renders superfluous the proximate cause requirement that Congress so explicitly enacted into law. *See Tramel v. Schrader*, 505 F.2d 1310, 1314 (5th Cir. 1975) ("No rule of statutory construction has been more definitely stated or more often repeated than the cardinal rule that 'significance and effect shall, if possible, be accorded to every word."), *quoting Washington Market Co. v. Hoffman*, 101 U.S. (11 Otto) 112, 115 (1879).

Consider, for example, the alleged violation of the regulation found at 30 C.F.R. § 250.420(a)(2). This regulation provides that lessees must "[p]revent the direct or indirect release of fluids from any stratum through the wellbore into offshore waters." *Id.* This is not a safety regulation that, if violated, can proximately lead to an oil spill incident; it is instead a regulation establishing the *selfsame legal result* of outlawing oil spills. It is clear that a violation of such a regulation, even if proven, is not the type of regulatory violation that could ever satisfy the proximate cause requirement that forms an essential prerequisite for lifting the liability caps under the plain terms of OPA Section 2704(c)(1)(B).

Perhaps anticipating arguments such as these, the Motion contends that Section 250.420(a)(2) imposes *ex ante* requirements on cement jobs. *See* U.S. Mem. at 15-16 (citing U.S. Statement of Undisputed Material Facts at ¶ 11). But Section 250.420(a)(2) is not a regulation of that form — instead its plain terms would be violated whenever and wherever a discharge of oil into waters occurs regardless of the precautions taken in connection with

cementing.  Hypothetically, if a regulation imposed certain safety requirements on cement jobs (for example, by requiring the use of a particular cement); and if those requirements were not observed; and, if, but only if, a particular instance of noncompliance proximately caused an oil spill, then this violation would indeed be capable of lifting an OPA liability cap under Section 2704(c)(1)(B).  But the hypothetical regulation posited above is not at all of the same nature as the actual regulation codified at Section 250.420(a)(2).   Section 250.420(a)(2) is instead coextensive with a regulatory prohibition on occurrences of oil spills.  Such regulations, by definition, cannot satisfy the proximate cause test because they do not proscribe antecedent causes; they merely define regulatory violations in terms of the *post hoc* consequences.

The second regulation the Motion points to, 30 C.F.R. § 250.300(a), is not materially different for these purposes.  Section 250.300(a) provides that lessees "shall not create conditions that will pose an unreasonable risk to public health, life, property, aquatic life, wildlife, recreation, navigation, commercial fishing, or other uses of the ocean."  *Id.*  But the blowout and spill constitute the entirety of the conduct that the United States asserts violates this regulation.  *See* U.S. Mem. at 16 ("Identifying what caused the blowout is *not necessary* to find violations of this regulation; its occurrence is sufficient to prove that the actions taken by the co-lessees and their contractors posed unreasonable risk to human life.") (emphasis added).  In the context of construing OPA Section 2704(c)(1)(B), this creates an obvious and untenable tautology — a regulation that is violated whenever a spill occurs is *ipso facto* an improper bootstrap for lifting the applicable OPA liability caps.  If invoking such regulations were permissible, then no OPA responsible party could ever take advantage of OPA's Section 2704 liability caps, and those caps, established by Congress, would impermissibly go for naught.  *See, e.g., Bowsher v. Merck & Co.*, 460 U.S. 824, 836 (1983) ("We cannot accept [a government] interpretation of the statute

13

[that] completely eviscerates the congressional goal ….").

> **B.      Even If Section 250.300(a), When Violated, Were Capable of Lifting OPA's Liability Caps, Material Issues of Fact Preclude Summary Judgment.**

As noted above, the United States contends that BP and its co-lessees violated 30 C.F.R. § 250.300(a), which states that lessees "shall not create conditions that will pose unreasonable risk to public health, life, property, aquatic life, wildlife, recreation, navigation, commercial fishing, or other uses of the ocean."  U.S. Mem. at 16.  The United States further contends that Section 250.300(a) is a strict liability regulation that was violated by the very fact that a blowout occurred resulting in the deaths of *Deepwater Horizon* crew and other persons.  *Id.* ("This is also a strict liability regulation ….").

But in fact Section 250.300(a) is *not* a strict liability regulation.  In particular, Section 250.300(a) requires the United States to prove that BP and its co-lessees acted in such manner as to create an "unreasonable" risk of harm.  Whether a risk is unreasonable obviously is an issue of fact requiring application of an appropriately framed negligence standard.  *See, e.g.*, RESTATEMENT (SECOND) OF TORTS § 282 (defining negligence as "conduct which falls below the standard established by law for the protection of others against *unreasonable risk* of harm") (emphasis added); *Randolph v. Laeisz*, 896 F.2d 964, 971 (5th Cir. 1990) ("Disputed questions of fact exist regarding whether in fact the slightly damaged gangway created an unreasonable risk of harm and if the stevedore's decision to continue to use the gangway was so 'obviously improvident' as to trigger the vessel's duty to intervene.").

Because Section 250.300(a) is not a strict liability regulation, the Motion's contention that "[i]dentifying what caused the blowout is not necessary to find violations of this regulation," U.S. Mem. at 16, is simply not correct.  Indeed, identifying what caused the blowout via an adversary process — the subject of the imminent Phase 1 trial — is *precisely* what is required to

14

determine whether any particular "conditions" on the rig were unreasonable or not.  Accordingly, whether or not this regulation was violated turns on a number of keenly disputed factual issues that can be resolved only on the basis of a full trial record.

### III. THE UNITED STATES HAS NOT MET ITS SUMMARY JUDGMENT BURDEN WITH RESPECT TO ITS CLEAN WATER ACT ARGUMENTS AGAINST BP.

The United States' Motion makes clear that it has reserved several theories of Clean Water Act liability for adjudication at a later time.  *See* U.S. Mem. at 2 n.5.  If and when the United States brings a summary judgment motion raising those theories, BP will respond to them.  Respectfully, on the present record, the United States has not met its summary judgment burden, and its current legal theory for Clean Water Act liability as to BP is unprecedented and incorrect in the significant respects discussed below.

#### A. The Motion Fails to Establish That Oil Was Discharged "From" Anything Other Than the *Deepwater Horizon* Vessel.

The Motion blurs the Clean Water Act's distinction between oil released from a "vessel" and oil released from an "offshore facility."  In the process, the Motion stretches the Act's plain language beyond its fair meaning.  As noted above, to establish BP's liability under Section 311(b) of the Act, the Motion must carry a burden of establishing that BP was (i) an owner, operator, or person in charge of an offshore facility (ii) from which oil was discharged into the Gulf of Mexico.  33 U.S.C. § 1321(b)(7)(A).  The facts presently not in dispute, however, establish only that oil flowed into the Gulf from the *Deepwater Horizon*'s BOP and riser, two appurtenances of the *Deepwater Horizon* vessel.  Accordingly, whatever the proper result might be as to the Motion's bid for summary judgment against Transocean, as owner and operator of the *Deepwater Horizon*, the Motion fails to carry its burden against BP.  BP respectfully submits that the Motion fails to satisfy the United States' burden of showing oil was discharged "from"

the Macondo facility, rather than the *Deepwater Horizon*.

**First**, BP adopts, and incorporates by reference, the Anadarko Defendants' argument that an owner of an offshore facility (here, the Macondo well) is not automatically liable, within the meaning of Section 311, for a discharge from a vessel (here, the *Deepwater Horizon*) that happens to be servicing the well.   In this regards, BP agrees with and adopts Anadarko's arguments contending that the Clean Water Act must be read as importantly distinguishing between vessels and offshore facilities for purposes of establishing penalty liability. Specifically, BP incorporates by reference Anadarko's arguments as set forth in the margin.[2]  BP relies on this cross-reference in interests of judicial economy and to eliminate duplicative briefing in areas where the parties make similar legal arguments.

The Motion's reliance on a single sentence in BP's Answer in which BP stated that "oil flowed from the Macondo well ... through the BOP stack, the marine riser, and/or other equipment" (BP Answer ¶ 61 [Doc. # 1858 (4/4/11)]) to establish BP's liability under section 311 does not materially change BP's legal posture.  BP's Answer clearly was not intended to address how the word "from" is used as a legal term in the Clean Water Act, and therefore does not suffice to meet the government's burden under Rule 56(c).  *Id.*  Saying that oil flowed out of the well and into the vessel's appurtenances (which of course it did) is entirely different than saying that oil was discharged from the well itself — the critical element under Section 311 that

---

[2] BP does not adopt Anadarko's Responses to the United States' Statement of Undisputed Material Fact [Doc. # 5113-3].  Nor does BP necessarily agree to the relevance of any of the specific Exhibits appended to Anadarko's Combined Memorandum of Law [Doc. #5113-2, listed at vi-ix].  BP's incorporation by reference is exclusively limited to Anadarko's Combined Memorandum of Law [Doc. # 5113-2] as follows: (1) Argument Section II.A.1 & II.A.2.; and (2) Argument Sections II through II.B.3, with the following exceptions:  (1) BP does not agree that the B1 Order's adoption of maritime tort law can control how to construe Clean Water Act Section 311(b), *see id.* at 8; and (2) BP takes no position on footnote 7 on the bottom of page 10, *see id.* at 10 n.7.

the United States has failed to establish.[3]

**B.   The United States' "Operator as a Matter of Law" Theory, If Reached, Must Be Rejected.**

Assuming that the United States could show that the oil discharges that occurred, not only from the *Deepwater Horizon*'s appurtenances, but also from the Macondo well (a showing not made on this record), it would then be required to show, as another essential element of Section 311(b) liability, that BP or other defendants are an "owner," "operator," or "person in charge" of the Macondo well.  33 U.S.C. § 1321(b)(7)(A).  The Motion's approach to this issue can only be described as puzzling.

BP, as noted above, does not dispute that it is a Macondo well "owner" for Clean Water Act purposes.  Nonetheless, the Motion declines to assert "owner" liability against BP.  The Motion contends, instead, that all lessees holding Shelf oil and gas leaseholds are "operators as a matter of law" automatically subject to Clean Water Act penalties.  U.S. Mem. at 23.  But if the United States can establish that the discharge of oil came from the well within the meaning of CWA Section 311(b)(7) (which, as explained above, BP disputes) then the United States does not need to show that BP was *both* an owner *and* an operator.  Showing either one or the other would suffice.

---

[3] It is well-established that judicial admissions do not apply to legal conclusions, but are limited to matters of fact. *See Kiln Underwriting Ltd. v. Jesuit High Sch. of New Orleans*, Nos. 06-04350, 06-05060, 06-05057, 2008 WL 3365520, at *5 n.2 (E.D. La. Aug. 8, 2008) (stating that judicial admissions generally are "restricted to matters of fact which otherwise would require evidentiary proof, and therefore, do not include legal theories or conclusions"). Indeed, the authority on this point is both clear and extensive.  *See, e.g., Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9*, 10 F.3d 700, 716 (10th Cir. 1993) ("Because the matter Mr. Guidry claims was admitted is a proposition of law, the doctrine of judicial admission is not applicable."); *Pitcairn v. Am. Refrigerator Transit Co.*, 101 F.2d 929, 935 (8th Cir. 1939) ("It was not the admission of a fact by pleading or stipulation, but rather a legal conclusion based on the record made, and the admission of a legal conclusion is not binding on either the trial or appellate court, nor on the party by whom made."). In light of this authority, courts have refused to find judicial admissions not only with respect to pure legal questions, but also with respect to questions that require the application of law to fact.  *See, e.g., Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005); *MacDonald v. General Motors Corp.*, 110 F.3d 337, 341 (6th Cir. 1997).

In light of BP's admission that it is an owner of the Macondo well, there is no reason for the Court to reach out and decide the Motion's alternative theory — that BP is an "operator as a matter of law" of the Macondo facility.   The Court should thus decline to address the Government's "operator as a matter of law" theory.

Should the Court reach the theory, it should reject it.   The term "operator" in CWA Section 311(b) is defined as "any person … operating such … offshore facility."   33 U.S.C. § 1321(a)(6).   There is an extensive body of case law informing the ordinary meaning of the term "operator" in statutes like the CWA.

Significantly, the Supreme Court has already construed the identical term "operator" in the CERCLA statute that is a cousin to both OPA and Clean Water Act Section 311(b), both of which Congress amended as part of its 1990 oil spill legislation.   *See United States v. Bestfoods*, 524 U.S. 51, 66 (1998); *see also United States v. Viking Res.*, *Inc.*, 607 F. Supp. 2d 808, 821 n.7 (S.D. Tex. 2009) (equating meaning of "operator" in OPA to the meaning of the same term in CERCLA).   *See also* CWA, 33 U.S.C. § 1321(a)(6) (defining "operator"); OPA, 33 U.S.C. § 2701(26) (same); CERCLA, 42 U.S.C. § 9601(20)(A) (same).

Applying ordinary construction principles, *Bestfoods* adopted a standard for operator liability that requires paying careful attention to facts on the ground:  "To sharpen the definition for purposes of CERCLA's concern with environmental contamination, *an operator must manage, direct, or conduct operations specifically related to pollution*, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations."   524 U.S. at 66-67 (emphasis added).   *See also City of Waco v. Schouten*, 385 F. Supp. 2d 595, 600 (W.D. Tex. 2005) (citations omitted), *clarified on denial of reconsid.*, 2005 WL 2757262 (W.D. Tex. Oct. 24, 2005) (following *Bestfoods*), (quoting

*Geraghty & Miller, Inc. v. Conoco Inc.*, 234 F.3d 917, 928 (5th Cir. 2000)), *abrogated on other grounds by Burlington N. Santa Fe Ry. Co. v. United States*, 129 S. Ct. 1870 (2009); *Puerto Rico Ports Auth. v. PCI Int'l, Inc.*, 200 F. Supp. 2d 61, 66 (D.P.R. 2002) ("affirmative acts" required for CERCLA liability), *quoting United States v. T'ship of Brighton*, 153 F.3d 307, 314 (6th Cir. 1998).  Indeed, the United States itself has conceded that the *Bestfoods* standard is "fact-bound," [Doc. # 2587-2, at 26], and thus the standard is notably not susceptible to resolution on summary judgment.

Despite *Bestfoods*, the United States asserts that BP and Anadarko are operators as a matter of law of the Macondo well according to the terms of an entirely distinct statute — the Outer Continental Shelf Lands Act ("OCSLA").  But BP is not aware of any previous occasion on which the United States had advanced such a theory, or on which a court has ever adopted it.  Certainly, the United States cites no cases to support the new theory.  Moreover, even aside from its sheer novelty (and aside from *Bestfoods*), this "operator as a matter of law" theory fails for several related reasons.

*First*, the provision in OCSLA that the government principally relies upon does not purport to define the term "operator."  Instead, 43 U.S.C. § 1348(b) merely imposes duties on the "holders of lease[s] or permit[s]."  The fact that lessees have legal obligations to ensure safe operations does not automatically transform them into "operators," as a general matter or under the Clean Water Act specifically.

*Second*, Congress clearly knows how to confer liability status on lessees as a matter of law when it chooses to do so.  The OPA statute conspicuously defines "the lessee or permittee of the area in which the [offshore] facility is located" as a "responsible party" for OPA liability purposes.  33 U.S.C. § 2701(32)(C).  By contrast, Clean Water Act Section 311(b) imposes

liability only on an "owner, operator, or person in charge of any vessel, onshore facility, or offshore facility." 33 U.S.C. § 1321(b)(7). The government's "operator as a matter of law" argument thus reflects an impermissible, backdoor route for introducing OPA's "lessee" liability category into a Clean Water Act regime from which Congress deliberately excluded this category of liability.

*Third*, OCSLA regulations permit operators to be designated or chosen by lessees. *See* 30 C.F.R. § 250.143(b), *recently recodified to* 30 C.F.R. § 550.143(b). If lessees were already "operators as a matter of law" by virtue of OCSLA Section 1348(b), this regulation would be rendered superfluous.

*Fourth*, OCSLA and CWA Section 311(b) are entirely separate statutes with separate remedial and enforcement regimes. If a lessee's duties under OCSLA Section 1348(b) are violated, the United States can pursue the appropriate remedies directly under OCSLA. *See*, *e.g*. 43 U.S.C. § 1350. OCSLA comes fully equipped with its own enforcement regime, and nothing indicates Congress intended for OCSLA violations to trigger automatically Section 311(b)'s potentially far more serious levels of monetary penalties.

*Fifth*, while the government contends its argument is supported by the purportedly clear statutory text of *OCSLA Section 1348(b),* it makes no argument based on the equally clear text of the Clean Water Act, which is the statutory regime actually at issue.

*Finally*, the government's argument ignores the fact that enforcement responsibilities under the CWA and OCSLA are committed to different sets of agencies. Specifically, CWA Section 311(b) is enforced by EPA and the Coast Guard, whereas OCSLA is enforced by the Interior Department. These differing enforcement responsibilities foreclose the "operation as a matter of law" proposition, for it is axiomatic that OCSLA's delegation of interpretive

responsibility to the Interior Department does not grant that Department authority to issue regulations that control the interpretation and application of the Clean Water Act.  *See, e.g., Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997) (refusing to defer to an interpretation of the Administrative Procedure Act ["APA"] by the Director of the Office of Workers' Compensation Programs because "[t]he APA is not a statute that the Director is charged with administering"); *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649 (1990) ("[W]e need not defer to the Secretary of Labor's view ... because Congress has expressly established the Judiciary and not the Department of Labor as the adjudicator of private rights of action arising under the statute.  A precondition to deference ... is a congressional delegation of administrative authority."); *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 627 (5th Cir. 2001) ("Interior is not charged with administering the APA; its conclusions of law regarding whether its policy change is a 'rule' for APA purposes are not given deference and are also reviewed de novo."); *Am. Forest & Paper Ass'n v. EPA*, 137 F.3d 291, 297 (5th Cir. 1998) ("We do not, however, accord … deference to EPA's interpretation of the [Endangered Species Act], because the ESA is not a statute that EPA is charged with administering.").

## CONCLUSION

For the reasons stated herein, the United States' Second Motion for Partial Summary Judgment should be denied as to BP.  Additionally, the Court should avoid making further rulings that fall into the legal pitfalls described above.

Dated:      January 9, 2012                              Respectfully submitted,

                                                          /s/ Don K. Haycraft
Robert R. Gasaway                                         Don K. Haycraft (Bar #14361)
Jeffrey Bossert Clark                                     R. Keith Jarrett (Bar #16984)
Aditya Bamzai                                             Liskow & Lewis
Kirkland & Ellis LLP                                      701 Poydras Street, Suite 5000
655 Fifteenth Street, N.W.                                New Orleans, Louisiana 70139-5099
Washington, D.C. 20005                                    Telephone:  504 -581-7979
Telephone:  202- 879-5000                                 Facsimile:  504 -556-4108
Facsimile:  202- 879-5200

                                                          Richard C. Godfrey, P.C.
Joel M. Gross                                             J. Andrew Langan, P.C.
Brian Israel                                              Kirkland & Ellis LLP
Allison Rumsey                                            300 North LaSalle Street
Arnold & Porter LLP                                       Chicago, IL 60654
555 Twelfth Street, NW                                    Telephone:  312- 862-2000
Washington, DC  20004-1206                                Facsimile:  312- 862-2200
E-Mail:  Joel.Gross@aporter.com
Telephone:  202- 942-5000                                 Robert C. "Mike" Brock
Facsimile:  202- 942-5999                                 Covington & Burling LLP
                                                          1201 Pennsylvania Avenue, NW
                                                          Washington, DC 20004-2401
                                                          Telephone:  202-662-5985
                                                          Facsimile:  202-662-6291

*Attorneys for BP Exploration & Production Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 9th day of January, 2012.

<u>/s/ Don K. Haycraft</u>
Don K. Haycraft