**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In re: Oil Spill by the Oil Rig          MDL NO. 2179
     "Deepwater Horizon" in the Gulf
     of Mexico, on April 20, 2010          SECTION J

Applies to: *All Cases*          JUDGE BARBIER
                                MAGISTRATE JUDGE SHUSHAN

<u>ORDER</u>

**[Working Group[1] Conference on Friday, January 6, 2012]**

**NOTES TO CELL PHONE PARTICIPANTS:**  Please do not put your phone on hold during the conference as it causes an annoying beeping sound for everyone else.  If you cannot participate for part of the conference, put your phone on mute.  Likewise for those who type during the conference.

1.  <u>**BOP and Capping Stack.**</u>

      The U.S. arranged with Captain Englebert to take trial exhibit photos of the drill pipe segments at Michoud on **January 19.**  Any other parties want to take photos or attend must contact Captain Englebert.

      Captain Englebert reports that the U.S., Halliburton, PSC and Cameron have not paid her October bill, and no party has paid its allocation of the November bill which was dated December 12, 2011.  **Please remit payment as promptly as possible**.

      BP reported on the allocation of the Captain Engelbert's January 3, 2012 invoice.

2.  <u>**Discovery from the U.S.**</u>

      The U.S. reported that it has completed the production of Lt. Cmdr. Houck's email.  There was a technical issue with the USCG's documents which will delay production until the week of

---

[1]  The discovery "Working Group" shall be comprised of: one or two representatives of the PSC; one representative from each of the defendants; and coordinating counsel for the United States and coordinating counsel for the States.  (Rec. Doc. 1099).

January 9. After these documents are produced, the U.S. will identify its designee, presumably Lt. Cmdr. Houck, and schedule his deposition for before the February 27 trial.

BP and the U.S. reviewed the status of: (1) the extension to January 20, 2012 of the deadline for motions to compel regarding U.S. privilege logs one through six; (2) the Santaz server order; (3) the scope of the Phase Two Rule 30(b)(6) depositions of the U.S.; and (4) the completion of the production of non-privileged documents. It was agreed that the deadline for the U.S. to respond to the Phase Two interrogatories and RFA's is extended until after the work on the Phase Two stipulations is completed.

3.      **Phase Two Stipulations**.

The parties were reminded of the **January 9** deadline for comments to the Phase Two stipulations proposed by the U.S. and BP. The PSC reported that they cannot agree with between 10 and 20 proposed stipulations. In some cases the stipulations lack context. The PSC does not want to be prevented from conducting discovery on the context of these statements. There are some stipulations with which there is disagreement. The PSC will present its position on the stipulations by **January 9**.

4.      **Louisiana Document Production**.

Louisiana and BP continue to work on Phase One and Two document production issues, including privilege issues. A further conference with counsel for Louisiana and BP is set for **January 23, 2012**.

5.      **Phase One Deposition Designations and Summaries**.

At BP's request, Richard Coronado is added to the designation list in Group Fourteen.

At the request of Anadarko, the Court will discuss with inData whether the deposition

testimony was changed or modified to account for *errata* submissions.  Anadarko had concerns about its Rule 30(b)(6) representative, Quitcau.

Halliburton will speak to parties that persist in the inclusion of objections and counsel colloquy in their designations.

In its letter of January 4, 2012, BP raised the inclusion of spill response preparedness and other Phase Two issues in the deposition summaries.  It is the Court's opinion that the inclusion of Phase Two information in the summaries will be an irritation to Judge Barbier who will have to cover the same information when he considers evidence in Phase Two.

BP raised the issue of whether spill preparedness is a Phase Two issue.  The PSC responded that: (1) there is no bright line delineating the Phase One evidence from the Phase Two evidence; (2) there are measures which BP did not take before April 20 that are related to source control, but which are relevant to the Phase One fault allocation and issues such reckless indifference and state of mind; and (3) the failure to prepare for a blowout is illustrative of this type of evidence.  The U.S. contends that: (1) gross negligence and similar issues are present in Phase One; (2) the level of risk associated with the drilling of the well is relevant to these issues; (3) some evidence regarding the quantity of the oil spilled is relevant to the risk undertaken in drilling the well; and (4) Judge Barbier will have to resolve these issues on a case-by-case basis as they arise during the trial.  Anadarko urged that the U.S. approach will greatly broaden the scope of the trial for Anadarko.  It contends that the evidence should be limited in accord with the trial plan, particularly when there has been no discovery on Phase Two.

By the motion *in limine* deadline (**January 23, 2012**), BP shall submit the five two-page summaries that it contends present examples of improper inclusion of Phase Two argument with a

3

short letter brief.  The PSC and the U.S. shall respond in accord with the briefing schedule for the final motions *in limine*.

6.  **Phase One Exhibits**.

BP reported progress on the use of books and other publicly available information.  The relevant contents of the books will have to be presented to the trial techs who will put them on the screen and BP will confer with the PSC, Halliburton and others in devising a procedure.

The authenticity issues between the PSC and BP have been reduced to 7 counsel-created exhibits.  By **Wednesday, January 11,** BP shall submit a letter brief on the issue, and the PSC shall respond by **Monday, January 16.**

In order to facilitate the ready recognition of additions and deletions to the good faith exhibit lists filed on November 14, 2011, the parties shall proceed as follows in the preparation of the final exhibit lists which are due on January 13, 2012 and objections due on January 20, 2012.

a.   The parties shall identify on the final exhibit lists all exhibits which have been removed from and added to the earlier good faith exhibit lists.

b.   If a party deletes an exhibit from the good faith exhibit list, the corresponding TREX number shall remain unassigned.  There shall be no reassignment of numbers.  If No. 10011 was used on the good faith exhibit lists for a particular exhibit, it may not be used for a different exhibit.

c.   The parties shall continue to circulate their revised/final exhibit lists in Excel format, (as well as the formally filed pdf).

d.   If a party objects to one version of an exhibit under one number, the objection applies to all versions of the exhibit on the lists.  The parties are encouraged to

4

identify duplicate listings of the exhibits when they make their objections.[2]

**7.**     **Motions _in Limine_**.

As of January 6, 2012, all but three categories of the motions in the amended schedule (Rec. doc. 4572) were briefed and submitted to Judge Barbier, who is working on them.

One of the remaining categories relates to clawback issues.  If a party does not have a real clawback dispute, it is not necessary for the party to file a motion _in limine_ to preserve the right to object to such evidence in the future.

**8.**     **Phase One Experts**.

Anadarko raised the issue of the timing for a motion challenging BP's use of a rebuttal report that raises new issues.  Such a motion shall be filed by January 17, 2012, the deadline for <u>Daubert</u> motions.

Cameron withdrew Richard Sears.  His deposition is canceled.

Ronald Crook is BP's substitute cement expert.  His report will be submitted on **January 9**.  BP confirmed that the deposition will be on **January 17 and 18** in New Orleans.  **January 24** shall be the deadline for a <u>Daubert</u> challenge for Crook.  By **January 30** Halliburton and the U.S. shall file rebuttal reports if they want to do so.

After the depositions of Lee and Colson are completed on January 11-13, the U.S. or any other party shall report whether they want to take the Larry Lockard's deposition.  If the parties are unable to agree on the issues, the Court will resolve it at that time.

Halliburton requested that it be permitted to withdraw its fluids expert, Don Weintritt.

---

[2] This is another area where there may be technical glitches.  Even though there are 17,000 exhibits, the duplicates need to deleted or identified.  It will be confusing if an exhibit is used and a ruling made on the objection but later in the trial a party uses the same exhibit with a different number and a discussion ensues over whether an objection was made and if so, the ruling on the objection.

Cameron asked that it have until the end of the day to confirm that it had no objection.  No other party had any objection.

Transocean raised the issue of the extent to which an expert's deposition testimony could be used at trial if the party offering the expert settles.  Cameron wants to file an amended expert report to remove certain opinions which it will not pursue at trial as a result of its settlement with BP.  The PSC responded that it intends to cross-examine Cameron's experts on the opinions they originally espoused.  There was agreement that a party can withdraw their sponsorship of an expert.  There was agreement that if a party withdraws their sponsorship of an expert, the party is not required to produce the expert at the trial.  The issue is whether another party can pick up that expert and use his report and portions of his deposition testimony in their case-in-chief.  By **Wednesday, January 11**, Cameron shall submit a letter brief on its position.  Any responses shall be submitted by **Monday, January 16.**

**9.**     **Phase One Deposition Submission Schedule**

The parties were reminded that inData will hold the Fifth Amendment witnesses to the end of the submission schedule.  If there are other witnesses who should be held to the end, the parties shall notify the Court and inData as promptly as possible.

**10.**     **Phase One Witnesses Who Will Testify Live at Trial**

The parties raised the issue of may call and will call fact witnesses.  There was agreement that if a witness is listed as a will call witness, the parties may require production of such a witness at the trial.  Transocean described circumstances where it should be permitted to list about five persons as may call witnesses.  There would not be anyone on this list who has not been deposed. The Court will consider the issue and report at the next conference.

The PSC submitted its letter on Ellis Armstrong.  BP shall reply by **Monday, January 9**.

11.    **Phase One Stipulations**.

"It's a slow and painful process."  BP prepared proposed Phase One stipulations.  There is agreement that the defendants must agree on the stipulations before the plaintiffs (PSC, U.S. and States) respond.  **Tuesday, January 10**, is the deadline for the defendants to respond to BP's proposed stipulations.  There are three responses: (1) agree; (2) disagree; and (3) no objection.  "No Objection" refers to those stipulations which are immaterial to party's case.  For example, a highly technical stipulation concerning the BOP may be pertinent to some parties, but not material to other parties.  In such circumstances, if no other party disagrees with the stipulation, then it is a stipulation at trial for all purposes.

After the receipt of the information on January 10, BP shall assemble the comments from the defendants into a spreadsheet and submit the package to the plaintiffs.  The plaintiffs shall respond as promptly as possible.  At this point the Court expects that there will be agreement on some stipulations by all parties.  The defendants shall continue to work among themselves to resolve their differences on the proposed stipulations.  If they reach agreement on a further group of stipulations, they will be forwarded to the plaintiffs for considerations.  The plaintiffs and the defendants shall also work together to resolve their disagreements.

The Court is available to assist in those areas where the parties believe its participation will be useful.

12.    **B3 Stipulations and Discovery Issues**.

The responders are satisfied with the dates in the revised schedule.  See Rec. doc. 5000.

The responders anticipate renewing their preemption immunity motions to dismiss.  The

issue was raised about discovery responses by non-PSC attorneys for plaintiffs.  The responders contend that if such attorneys have information, it needs to be included in the discovery responses.  The responders should not be in a position where the information does not appear until the non-PSC attorneys for plaintiffs file oppositions to the renewed motions.  The responders and the PSC shall attempt to work through this issue.  It will be kept on the agenda.

**13.**     **BP-Halliburton Motions.**

By COB on **Monday, January 9**, BP shall submit the final memorandum on its motion for spoliation sanctions (Rec. doc. 4799).

By **Friday, January 13, 2012**, BP shall submit its opposition to Halliburton's request for clarification of the order disqualifying Viator, Sabins and CSI.  Rec. doc. 5047.  This motion shall be resolved before the deposition of Crook set for January 17 and 18.

**14.**     **Rule 30(b)(6) re "look back."**

The PSC and BP report they will work on this issue.  At a prior conference there was discussion concerning the PSC's request in Phase Two discovery for a topic regarding prior attempts to "cap, control, contain, shut in, limit flow from, and/or kill an uncontrolled flowing subsea Gulf of Mexico well. . . ."  The PSC reported that it may be willing to modify the request to exclude Halliburton and MOEX.  It will also attempt to modify the language to satisfy BP's concerns.  BP wants to limit it to post-1/1/08.

**15.**     **Trial Planning.**

Information on office space was distributed.  The contact with GSA is Ken Livingston - kenneth.livingston@gsa.gov; (504) 589-6094, x-109.  The parties do not need to take the space, but

8

it is available.[3]  It will be leased month to month.  It will be unfurnished so the parties will have to furnish it.  It may not be used before 7:00 a.m. or after 6:00 p.m.  Courtroom Connect and the Court's IT personnel will work on IT for the space.

The parties shall provide the Court with a list of attorneys and witnesses to share with the Marshal as it may be possible to expedite security.

16.  **Conference Schedule**.

| | |
|---|---|
| Friday, January 13, 2012 at 9:30 a.m. | WGC meeting |
| **Thursday, January 19, 2012** | After  Judge Barbier's status conference - WGC meeting |
| Friday, January 27, 2012 at 9:30 a.m. | WGC meeting |
| Friday, February 3, 2012 at 9:30 a.m. | Pretrial Conference with Judge Barbier in Courtroom |

At the next January 13 conference, the parties shall report on whether they want to continue to have conferences after February 3, whether these can be phone and whether they will address Phase One, Phase Two, or both.

New Orleans, Louisiana, this 10th day of January, 2012.

> **SALLY SHUSHAN**
> **United States Magistrate Judge**

---

[3]  If a party does not want the space allotted, please advise the undersigned.