# IN RE: DEEPWATER HORIZON LITIGATION
## MDL NO. 2179

| | |
|---|---|
| **JAMES PARKERSON ROY** | **STEPHEN J. HERMAN** |
| Domengeaux Wright Roy & Edwards LLC | Herman, Herman Katz & Cotlar, LLP |
| 556 Jefferson St. Suite 500 | 820 O'Keefe Ave. |
| Lafayette, LA 70501 | New Orleans, LA 70113 |
| E-Mail: jimr@wrightroy.com | E-Mail: sherman@HHKC.com |
| Telephone: (337) 233-3033 | Telephone: (504) 581-4892 |
| Direct: (337) 593-4190 | Direct: (504) 680-0554 |
| Fax: (337) 233-2796 | Fax: (504) 561-6024 |

January 5, 2012

*VIA* E-MAIL

Honorable Sally Shushan
United States Magistrate Judge
500 Poydras St., Room B-345
New Orleans, LA 70130
E-Mail: Sally_Shushan@laed.uscourts.gov

      Re:  Ellis Armstrong

Dear Judge Shushan,

      Per the Discovery Conference ORDER of December 20, 2011 [Doc 4966], the PSC respectfully submits that Ellis Armstrong is subject to *subpoena* for the February 27, 2012 Trial as **(i)** the Chief Financial Officer of BP Exploration & Production; **(ii)** as a "managing agent" of one or more BP entities; and/or **(iii)** as a corporate representative of BP.

      On July 13, 2011, Ellis Armstrong was deposed as a 30(b)(6) Representative of BP, and testified as follows:

> Q. Okay. And what position did you take in 2007?
>
> A. My current position.
>
> Q. Which is?
>
> A. **Chief financial <u>officer</u>** for exploration and production.
>
> Q. All right. Now, you mentioned that in the fall of 2010, Bob Dudley led a reorganization, and I'm somewhat familiar with that.  Did that affect your practical day-to-day title or job function?

> A. No, my role -- it gained me a new boss, but the same job....
>
> \* \* \*
>
> Q. Sir, you've served, I believe you testified, for a period of about four years as a **chief financial <u>officer</u>** for the BP exploration and production activities, which would include the Gulf of Mexico?
>
> A. That is correct.

A<small>RMSTRONG</small> D<small>EPO</small>, pp.31, 414 (emphasis supplied).  Mr. Armstrong further testified that:

- He is responsible for ensuring that BP E&P is "in compliance with accounting policy." A<small>RMSTRONG</small> D<small>EPO</small>, p.391.

- Part of his job is to inspect "the financial forecasts of the firm" and, after a financial review by Mike Daly, who was formerly the Head of Exploration & Assets, to create supplemental finance memoranda to complete the well if it was running over budget.  <u>Id.</u> at 378.

- One of his assigned duties was to pull together "the high-quality financial information" for use in the Orange Book as well as safety information measuring process safety and adopting a consistent approach for tracking progress.  <u>Id.</u> at 86.

- At the time of the incident, Mr. Armstrong reported to Andy Inglis, the CEO of BP E&P and who served on the Board of Director of BP p.l.c.  <u>Id.</u> at 271, 354-355.

- Mr. Armstrong now reports to Andy Hopwood and other "Heads" who appear to have split the duties and responsibilities of the CEO of BP E&P.  <u>Id.</u> at 362-363.

- Having worked for BP since 1983, Mr. Armstrong has worked in many supervisory positions at BP, including his previous positions as the Group Vice President of Latin America and the Caribbean, the Commercial Director for Exploration & Production, and the Group Vice President for Technology and Other Functions.  <u>Id.</u> at 17-31.

- Mr. Armstrong attended a Group Leader Meeting in Orlando on March 10, 2010, which included Tony Hayward.  <u>Id.</u> at 280.

**I. As a Corporate Representative of the Company, Mr. Armstrong is Subject to *Subpoena* under Rule 45.**

Under Rule 30(b)(1), a plaintiff may issue a notice that identifies a specific officer, director, or managing agent to testify on behalf of a corporate defendant. *See, e.g.,* <u>Founding Church of Scientology of Washington, D.C. v. Webster</u>, 802 F.2d 1448, 1451 (D.C. Cir. 1986); <u>United States v. Afram Lines (USA), Ltd.</u>, 159 F.R.D. 408, 413 (S.D.N.Y. 1994).

BP designated Mr. Armstrong as the Rule 30(b)(6) corporate representative for two areas of inquiry, (*see* BP's FOURTH AMENDED RESPONSES TO AGREED 30(B)(6) NOTICE, Nos. 9, 11), including comprehensive safety audits, (*see* ARMSTRONG DEPO, p.169), BP plc's involvement with various aspects of the Macondo well, (*id.* at 422-423), and implementation of various safety recommendations resulting from the Grangemouth, Scotland, Texas City, and Prudhoe Bay, Alaska incidents, (*id.* at 32).

From the start if his deposition, Mr. Armstrong understood the principle of testifying on behalf of BP as its designated representative:

> Q. Now, when the videographer announced this deposition, he said this is the 30(b)(6) deposition, and I want to talk to you about that. I don't want to talk about what your lawyers have told you, but has - have you become aware that in the United States, we have a legal procedure in federal court where a party, in this case the plaintiffs, can send a defendant, in this case BP, a corporate deposition, and because a corporation can't talk, except through its people, the corporation can designate an individual to speak on its behalf on given subjects? Is that your understanding?
>
> A. That is my understanding.
>
> Q. And as I understand it, you have been designated to speak on BP's behalf on a couple of subjects, and I want to talk about the second one first. Topic number 11 is implementation in the Gulf of Mexico of the safety management recommendations for the UK HSE report of the Grangemouth, Scotland incidents in 2000, the Baker Commission report of the Texas City explosion and fire in 2005, and the Booz/Allen/Hamilton report on the BP Alaska pipeline link in 2006. Are you the individual that the BP parties have designated to speak on their behalf with respect to this topic?
>
> A. I am.

ARMSTRONG DEPO, pp.31-32; *see also id.* at 169, 422-423.

With BP's designation of Mr. Armstrong as its representative for these areas of inquiry, Mr. Armstrong became the "voice" of the company, thereby fitting him squarely inside Rule 45's provisions allowing service of a trial *subpoena* on a corporate defendant through counsel.

**II.  Mr. Armstrong is an "Officer" and/or "Managing Agent" of BP.**

Mr. Armstrong also qualifies as an "officer" and/or "managing agent" under Rule 45 in his own right.

3

Even assuming *arguendo* that Mr. Armstrong's status as Chief Financial Officer of BP Exploration & Production were insufficient, (which is denied), many employees who are not formal "officers" or "directors" nonetheless qualify as "managing agents" and, thus, may be compelled to appear. *See, e.g.* Smith v. Shoe Show of Rocky Mount, Inc., 2001 WL 1757184 at *2 (D. Mass. April 26, 2001) (although not an officer or director, district manager whose conduct was at center of dispute was managing agent); Torres v. U.S. Lines Co., 31 F.R.D. 209, 210 (S.D.N.Y. 1961) (chief engineer who supervised plaintiff and was responsible for engine room where plaintiff was injured was managing agent); Klop v. United Fruit Co., 18 F.R.D. 310, 313 (S.D.N.Y. 1955) (second mate who was in charge of vessel and had supervisory authority over it was a managing agent); Krauss v. Erie R.R. Co., 16 F.R.D. 126, 128 (S.D.N.Y. 1954) (chief surgeon and claims department manager involved in decisions related to medical treatment of plaintiff were managing agents for purposes of Rule 30 deposition).

Courts have refused to define the term "managing agent" too literally. Kolb v. A.H. Bull S.S. Co., 31 F.R.D. 252, 254 (E.D.N.Y. 1962). Instead, courts have emphasized that the term must be defined pragmatically and on an *ad hoc* basis. United States v. The DOROTHY MCALLISTER, 24 F.R.D. 316, 318 (S.D.N.Y. 1959). Courts typically consider the following non-exclusive factors in analyzing whether a witness is a managing agent: (1) whether the witness is invested with general powers allowing him or her to exercise judgment and discretion in corporate matters; (2) whether the witness can be relied upon to give testimony at his or her employer's request; (3) whether any person or persons are employed by the corporate employer in positions of higher authority than the witness regarding which information is sought by the examination; (4) the general responsibilities of the witness respecting the matters involved in the litigation; and (5) whether the witness can be expected to identify with the interests of the corporation as opposed to the opposing party. *See, e.g.,* Sugarhill, 105 F.R.D. at 170.

Of these factors, the identity of the witness' interest with his or her employer as opposed to the opposing party is paramount. E.I. DuPont Nemours & Co. v. Kolon Indus., Inc., 268 F.R.D. 45, 49 (E.D. Va. 2010), Honda, 168 F.R.D. at 541; Boston Diagnostic Dev. Corp., Inc. v. Kollsman Mfg. Co., 123 F.R.D. 415 (D. Mass. 1988); *see also* Tomingas v. Douglas Aircraft Co., 45 F.R.D. 94, 96-97 (S.D.N.Y. 1968) (although not "managing agents" in the course of their everyday duties for defendant aircraft manufacturer, engineers who assisted in investigation of crash possessed an identity of interest with their principal that constituted them "managing agents" for purpose of giving testimony regarding accident investigation). Further, when the witness' interests are aligned with those of the corporate defendant and the corporate defendant can control when and where the witness appears for deposition, the factors are weighed heavily in favor of finding that the witness is a managing agent. In re Meta Systems, 1997 WL 173206 (Fed. Cir. Mar. 20, 1997) (finding that employees were managing agents of corporate defendant based almost entirely on fact that employees' interest were aligned with corporate defendant and corporate defendant could control employees' attendance at depositions).

Like Mark Bly, the Executive Vice President of Safety and Operation Risk, whom BP has agreed is an officer pursuant to Rule 45 and subject to *subpoena,* Mr. Armstrong maintains a similar level of supervisory authority over BP's activities and employees. As the CFO, Mr. Armstrong oversees the financial components of BP E&P. He makes high-level, supervisory decisions about funding critical assets like the Macondo drilling operations, and he reports to the CEO of BP E&P, who also served on the Board of Directors for BP plc.

4

Finally, neither Mr. Armstrong nor BP will suffer undue burden by being required to appear at trial.  *See* Scottsdale Ins. Co. v. Educ. Mgmt., 2007 WL 2127798, at *3 (E.D. La. 7/25/07) (addressing undue burden and expense as component of whether to enforce *subpoena* of party witness).  The PSC agrees to cover reasonable expenses of Mr. Armstrong' travel to and lodgings in New Orleans.  Moreover, because this is a bench trial, sufficient leeway can be afforded Mr. Armstrong in scheduling his trial testimony. BP has also elected to file claims into the Limitation trial, thereby availing itself of the authority of this Court as a claimant-in-limitation.

As always, Plaintiffs appreciate the Court's time and consideration in this matter.

Respectfully submitted,

James Parkerson Roy
Stephen J. Herman
*Plaintiffs' Liaison Counsel*

cc: J. Andrew Langan, Esq.
    DEFENSE LIAISON COUNSEL
    Mike Underhill, Esq.
    Honorable Luther Strange