

May 11 2011
6:04PM

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |
| …………………………………………….... | : | |

### THE BP PARTIES' FOURTH AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFFS' AGREED 30(b)(6) DEPOSITION NOTICE WITH 30(b)(5) DOCUMENT REQUESTS

BP Exploration & Production Inc. ("BPXP"), BP p.l.c., BP America Production Company ("BPAP"), and BP Products North America Products Inc. ("BPPNA") (collectively, the "BP Parties") by their undersigned Counsel, and, pursuant to Rules 26, 30 and 34 of the Federal Rules of Civil Procedure, hereby submit the following amended responses and objections to Plaintiffs' Rule 30(b)(5)-(6) requests contained in their Agreed 30(b)(6) Deposition Notice of BP Defendants (With 30(b)(5) Document Requests).

### SPECIFIC RESPONSES AND OBJECTIONS

The BP Parties respond as follows to Plaintiffs' Requests, subject to and without waiving their general objections, each and every one of which are specifically incorporated into each individual response below.[1]

### Areas of Inquiry

1. All Cost Benefit and/or Risk Assessments regarding the drilling, exploration, completion and/or production of the Macondo Prospect (including any Risk Assessments related to deepwater drilling in the Gulf of Mexico applicable to, even if not specific to, the Macondo Prospect). The term "Risk Assessment" shall be deemed to include any Quantified Risk Assessments ("QRA"), Major Accident Risk ("MAR") analyses, Safety or Risk analysis, Job Safety Analysis (JSA), HAZOP, HAZID, Failure Mode & Effect Analysis (FMEA), Cost Benefit Analysis, or similar report or analysis, that address the

---

[1] The BP Parties' general objections are set forth at pages 12 - 17.

potential risks or costs of injury or damage to human life, the environment, or property associated with such drilling operations.

**RESPONSE:**

The BP Parties designate Kal Jassal to testify on this topic. Mr. Jassal is not a fact witness for the Event phase.

2.   Potential income, revenue and/or profit anticipated or expected to be realized from the Macondo Prospect (Mississippi Canyon Block 252).

**RESPONSE:**

The BP Parties designate Xuemei Liu to testify on this topic. Ms. Liu is not a fact witness for the Event phase.

3.   Data, whether real time or otherwise, accumulated or collected by BP relating to the Deepwater Horizon and/or its appurtenances during its time at the Macondo Well.

**RESPONSE:**

The BP Parties designate John Sprague to testify on this topic.

4.   Potential costs, risks, benefits and other analyses or evaluations of potential methods to cap, control, contain, shut-in and/or kill the Macondo Well after April 20, 2010.

**RESPONSE:**

The BP Parties designate the following individuals to testify on the indicated aspects of this topic.

- Richard Lynch – near-term containment (*e.g.*, cofferdam, top hats, etc.) and the capping stack.
- Paul Tooms – well-integrity analysis.

- Kevin Kennelly – the containment and disposal project (*e.g.*, the free-standing riser systems). Mr. Kennelly is not a fact witness for the Event phase.

- Mark Mazzella – kill operations (*e.g.*, top kill and static kill) and relief wells. Mr. Mazzella is not a fact witness for the Event phase.

- Henry Thierens – BOP intervention.

5. Evaluation, study and/or analysis of any potential method or technique to cap, control, contain, shut-in, temporarily abandon, and/or kill the Macondo Well after April 20, 2010, including the possible risks, benefits or other consequences thereof.

**RESPONSE:**

The BP Parties designate the following individuals to testify on the indicated aspects of this topic.

- Richard Lynch – near-term containment (*e.g.*, cofferdam, top hats, etc.) and the capping stack.

- Paul Tooms – well-integrity analysis.

- Kevin Kennelly – the containment and disposal project (*e.g.*, the free-standing riser systems). Mr. Kennelly is not a fact witness for the Event phase.

- Mark Mazzella – kill operations (*e.g.*, top kill and static kill) and relief wells. Mr. Mazzella is not a fact witness for the Event phase.

- Henry Thierens – BOP intervention.

6. With respect to the Macondo Well, communications, evaluations, testing, training, policies and/or analyses, within BP and/or with any other party, relating to foam stability, cement testing, float collar conversion, use or non-use of centralizers, the decision not to displace seawater and set the cement plug at approximately 3,300' below the mud line,

3

and or the decision not to conduct or prepare cement bond logs, and or not to do negative pressure tests, on or before April 20, 2010.

**RESPONSE:**

The BP Parties designate Jim Cowie to testify on this topic.

7. The background, basis (or bases), intent, preparation, drafting, submission and approval of BP's Application for Permit to Modify the temporary abandonment procedure on or around April 16, 2010, including the deviations, if any, between that procedure and the procedure(s) described in (a) the April 12, 2010 Drilling Plan, (b) the April 14, 2010 Morel "Forward Ops" E-Mail, or (c) the April 20, 2010 "Ops Note".

**RESPONSE:**

The BP Parties designate Dennis Sustala to testify on this topic. Mr. Sustala is not a fact witness for the Event phase.

8. The estimated, budgeted, expected and/or actual time and/or cost savings realized by:
    1. Number and Nature of Centralizers Utilized
    2. Foregoing Substantiated Foam Stability Test Results
    3. Not Running Cement Bond or Other Evaluation Log
    4. Using Spacer Made from Combined Lost Circulation Materials to Avoid Disposal Issues
    5. Displacing Mud from Riser Before Setting Surface Cement Plug
    6. Setting Surface Cement Plug 3,000 Feet Below Mud Line in Seawater
    7. Not Installing Additional Barriers During Temporary Abandonment Procedure
    8. Not Performing Further Well Integrity Diagnostics in Light of Troubling and Unexpected Negative Pressure Test Results
    9. Bypassing Pits and Conducting Other Simultaneous Operations During Displacement

**RESPONSE:**

The BP Parties designate Jim Cowie to testify on this topic.

9. The presence, participation, supervision or other involvement of officers, directors or other employees of BP plc: in any aspect of the planning, funding, drilling, completion, temporary abandonment, capping and/or control of the Macondo Well.,

**RESPONSE:**

The BP Parties designate Ellis Armstrong to testify on this topic. Mr. Armstrong is not a fact witness for the Event phase.

10. N/A

11. Implementation in the Gulf of Mexico of the safety management recommendations of the UK HSE report of the Grangemouth Scotland incidents in 2000, the Baker Commission Report of the Texas City explosion and fire in 2005, and the Booz Allen Hamilton Report on the BP Alaska pipeline leak in 2006.

**RESPONSE:**

The BP Parties designate Ellis Armstrong to testify on this topic. Mr. Armstrong is not a fact witness for the Event phase.

12. Your policies, practices, requirements, standards, training, maintenance, testing and/or procedure of personnel regarding well control training and training for potential catastrophic events.

**RESPONSE:**

The BP Parties designate Mark Mazzella to testify on this topic. Mr. Mazzella is not a fact witness for the Event phase.

13. BP's efforts to ensure the suitability and proper design, manufacture, testing, maintenance, operation and utilization of the BOP utilized in the drilling operations at the Macondo well.

**RESPONSE:**

The BP Parties designate Mike Byrd to testify on this topic. Mr. Byrd is not a fact witness for the Event phase.

14. BP's evaluations of, and/or reservoir assessment, drill plan, operations plan, and or well or reservoir engineering and/or temporary abandonment plan (and all changes or

amendments thereto) for the Macondo Well in response to, well control events (including but not limited to the March 8 "kick") between February 1, 2010 and April 20, 2010;

**RESPONSE:**

The BP Parties designate Jim Cowie to testify on this topic.

15. Communications between BP employees on the rig and any BP personnel on the mainland (or United Kingdom) on April 20 and 21;

**RESPONSE:**

The BP Parties designate Jim Cowie to testify on this topic.

16. BP plans for using the Deepwater Horizon at, and timing of transit to, the Nile and/or Kaskida sites after April 19, 2010;

**RESPONSE:**

The BP Parties designate Jim Cowie to testify on this topic.

17. The determination of the well design for the Macondo Well;

**RESPONSE:**

The BP Parties designate the following individuals to testify on the indicated aspects of this topic:

- John Sprague – Casing Design.
- Ian Little – Centralizers, Cement Design and Evaluation, Temporary Abandonment Procedure, and Float Collar.

18. Analysis or evaluation of risks associated with design and operational decisions made by BP personnel concerning operations and activities performed at the Macondo well during the period from February 1 through April 20, 2010, including but not limited to the creation, entry of data into and completion of a "risk register" or risk assessment tool ("RAT").

**RESPONSE:**

The BP Parties designate Jim Cowie to testify on this topic.

19. Any financial incentives for BP personnel working on the Deepwater Horizon &/or the Macondo Well.

**RESPONSE:**

The BP Parties designate Ian Little for this topic.

20. BP's adherence to or departure from Investigation Group defined Practice 4.4 regarding the incident.

**RESPONSE:**

The BP Parties designate John Baxter to testify on this topic.

21. Any estimates, predictions, and/or analyses of anticipated pressures – both static pressure and/or dynamic pressure – within the formations of the Macondo Prospect and/or the Macondo Well, including, but not limited to, the information provided to Transocean and the manner in which such information was utilized in selection of or approval of the BOP assembly used by the Deepwater Horizon for the Macondo Well.

**RESPONSE:**

The BP Parties designate Graham Vinson to testify on this topic.

22. Nature, type, model, adequacy and/or configuration of the BOP assembly to be utilized for the drilling of the Macondo Well by the Deepwater Horizon.

**RESPONSE:**

The BP Parties designate Mike Byrd to testify on this topic. Mr. Byrd is not a fact witness for the Event phase.

23. Considerations going into any decision to utilize (or allow the utilization of) the particular BOP stack design/configuration and equipment utilized during the drilling and/or temporary abandonment of the Macondo Well.

**RESPONSE:**

The BP Parties designate Mike Byrd to testify on this topic. Mr. Byrd is not a fact witness for the Event phase.

24. Any knowledge of the Pressure Rating for each component of the Macondo BOP assembly, as manufactured, and/or as such existed on April 20, 2010.

**RESPONSE:**

The BP Parties designate Mike Byrd to testify on this topic. Mr. Byrd is not a fact witness for the Event phase.

25. Any knowledge of any testing or other analysis or evaluation that went into determination as to the pressure rating or capacity rating for each BOP component on the Macondo well, and what each such pressure rating meant.

**RESPONSE:**

The BP Parties designate Mike Byrd to testify on this topic. Mr. Byrd is not a fact witness for the Event phase.

26. BP's knowledge, prior to April 20, 2010, of the potential for difficulties with the BOP or its key components performing as designed with dynamic flow pressures less than, equal to, or higher than, the rated pressure of the BOP or its key components and any knowledge of any other device, equipment, or design that may have avoided any of said potential difficulties.

**RESPONSE:**

The BP Parties designate Mike Byrd to testify on this topic. Mr. Byrd is not a fact witness for the Event phase.

27. N/A

28. The funding and staffing of Emergency Response Division from 2000 to the present.

**RESPONSE:**

The BP Parties designate Dennis Johnson to testify on this topic. Mr. Johnson is not a fact witness for the Event phase.

29. N/A

30. All discussions during Macondo leasehold negotiations between BP and Anadarko or MOEX concerning the nature and scope of information to be made available by or to be provided by BP to Anadarko or MOEX regarding the design of and operations at the Macondo Well, and BP's understanding of its obligations and Anadarko's and MOEX's rights under the Operating Agreements with regard to the parties' ability to receive and respond to information received about planning with respect to and operations at the Macondo Well.

**RESPONSE:**

The BP Parties designate Kirk Wardlaw to testify on this topic. Mr. Wardlaw is not a fact witness for the Event phase.

31. The chain of command in connection with the Macondo Well, including decision making systems and authority, as well as the reorganization of BP personnel at the Macondo Well in early April 2010.

**RESPONSE:**

The BP Parties designate Dave Rich to testify on this topic.

32. BP risk management, risk mitigation, safety, and catastrophe response and well control rules, regulations, plans, policies, requirements, standards and training applicable directly or indirectly to the Macondo Well.

**RESPONSE:**

The BP Parties designate Mark Mazzella to testify on this topic. Mr. Mazzella is not a fact witness for the Event phase.

33. The 2009 DWH rig audit/inspection by BP, including the contents of the written reports and any follow-up efforts relating to the audits/inspections.

**RESPONSE:**

The BP Parties designate Norman Wong to testify on this topic.

34. The existence, nature, scope and contents of any BP guidelines or policies relating to mudlogging activities.

**RESPONSE:**

The BP Parties designate Jonathan Bellow to testify on this topic.

35. The existence, nature, scope and contents of any BP guidelines, policies or practices relating to locating and determining pay zones or potential pay zones in a well.

**RESPONSE:**

The BP Parties designate Graham Vinson to testify on this topic.

## RESPONSES TO DOCUMENT REQUESTS

The BP Defendants are further requested, in accordance with Rule 30(b)(5) of the Federal Rules of Civil Procedure, as well as Rule 26, Rule 34, and PRE-TRIAL ORDERS NOS. 16, 17 and 27, to produce, or identify by specific Bates Number(s) (if already produced), the following documents, at least ten (10) days prior to the time of the relevant designee's deposition:

**FIRST SET OF REQUESTS:**

For each Area of Inquiry identified above, please produce all documents provided to, reviewed with, utilized by, and/or relied upon by the deponent to prepare for his or her deposition testimony.

**RESPONSE TO FIRST SET OF REQUESTS:**

Subject to their general and specific objections, the BP Parties will make a good faith effort to produce any documents identified as relevant to the topic at issue and reviewed by the designees in advance of their testimony that have not previously been produced in this litigation.

The BP Parties object to this request as unreasonable, duplicative, cumulative, unduly burdensome and outside the contemplated scope of the 30(b)(6) deposition process. The BP Parties further state that: Each of the topics identified above is the subject of prior discovery requests, and, by its very nature, the 30(b)(6) process often requires that designees review documents relating to the topics at issue that would not be shown to the designee if he or she

were testifying in his or her capacity as an individual. Production of these materials is particularly unreasonable insofar as documents have been requested 10 days prior to the depositions. The protocol for production of documents in advance of individual depositions does not apply to corporate designees. Identification and production of these documents also improperly seeks the disclosure of attorney work product in that it would reveal the preparing attorneys' assessment of potentially relevant documents regardless of whether such documents are relevant or otherwise appropriate for production.

**SECOND SET OF REQUESTS:**

For each Area of Inquiry identified above, please produce all documents which relate, pertain, evidence and/or reflect the issues, topics and/or events described therein or associated therewith.

**RESPONSE TO SECOND SET OF REQUESTS:**

In addition to their general objections, the BP Parties object to this request on the grounds stated above in response to plaintiffs' First Set of Requests.

**THIRD SET OF REQUESTS:**

For each corporate designee, a copy of his or her current resume or CV, as well as a copy of any and all prior testimony, whether provided in an individual or representative capacity, including any and all deposition testimony, trial testimony, sworn statements, affidavits, declarations, expert reports, and/or testimony before a legislative, regulatory or investigative body or agency.

**RESPONSE TO THIRD SET OF REQUESTS:**

In addition to their general objections, the BP Parties object to this request on the grounds stated above in response to plaintiffs' First Set of Requests. The BP Parties further state that this request is unreasonable and inappropriate on the grounds that the designees are not testifying in their capacity as individuals, and thus their prior testimony and related materials are not necessarily relevant to their testimony, particularly given that all prior testimony related to this case has been made available to plaintiffs.

## GENERAL OBJECTIONS

The BP Parties assert the following objections to each and every one of plaintiffs' requests, including any definitions or instructions associated therewith (collectively, "Plaintiffs' Discovery Requests"). These general objections are incorporated by reference into each specific response set forth by the BP Parties and are neither waived nor limited by any specific responses.

1.      The BP Parties expressly reserve the right to substitute or supplement the designations set forth above for any reason, including, but not limited to, disputes as to the scope of the topics, unanticipated questions of the designees, or a designees potential inability to provide accurate information as to any aspect the relevant corporate entity's knowledge of the topic. The BP Parties will work with plaintiffs to address any practical concerns that may arise from any such changes, and they fully anticipate that plaintiffs will do so as well given the breadth and complexity of the issues on which the BP Parties have been asked to designate corporate representative witnesses.

2.      BP p.l.c. and BPPNA object to all of Plaintiff's Discovery Requests. These entities have relatively little knowledge with regard to the topics set forth above that is not derivative of the knowledge of BPXP and BPAP; therefore, except as expressly provided in the context of corporate representative testimony on any such areas, the designations and testimony of the foregoing individuals is on behalf of BP p.l.c. and BPPNA only to the extent these corporate entities may be deemed to have knowledge of facts known to BPXP and BPPNA. As the BP parties have repeatedly stated, BP p.l.c. is a corporation organized under the laws of England and Wales, which is publicly traded with its headquarters in London, England. BP p.l.c. did not own the MC 252 leasehold, had no employees on the *Deepwater Horizon*, and was not a party to the drilling rig contract with Transocean. BP p.l.c. does not directly conduct exploration and production activities and was not directly involved in the events involving the Macondo

12

Well or the incident. BPPNA is an entity primarily involved in downstream operations such as crude oil refineries, and transportation and marketing of refined products such as gasoline, and had no employees on the *Deepwater Horizon,* was not a party to the drilling rig contract with Transocean, and had nothing to do with exploration activity involving the Macondo Well or the April 20, 2010 incident or resulting oil spill. Accordingly, to the best of their knowledge, with regard to almost all of Plaintiff's Discovery Requests, BP p.l.c. and BPPNA do not have any meaningful set of information or documents responsive to Plaintiff's requests not derivative and duplicative of that of BPAP and/or BPXP, therefore BP p.l.c. and BPPNA direct Plaintiffs to the responses provided by those defendants except as expressly stated otherwise in the course of the testimony of the corporate representatives designated above.

3. The BP Parties object to Plaintiffs' Discovery Requests to the extent they seek documents or information not related to the issues to be tried in the proceeding set to commence in February 2012 prior to the substantial completion of BP's efforts to identify and produce documents in response to other requests of Plaintiffs and other parties to the litigation.

4. The BP Parties object to Plaintiffs' Discovery Requests to the extent they call for information, seek discovery, or attempt to impose any obligations beyond that permitted or authorized by the Federal Rules of Civil Procedure or the Rules and Orders of this Court.

5. The BP Parties object to Plaintiffs' Discovery Requests to the extent they call for the production of electronically stored information in any manner other than required under Federal Rule of Civil Procedure 34, the Rules and Orders of the Court, and ongoing negotiations and discussions among counsel.

6. The BP Parties object to Plaintiffs' Discovery Requests to the extent they seek information or documents protected by the attorney-client privilege, the work-product doctrine,

the joint defense or common interest privilege, or any other applicable privilege, exemption, or immunity. The BP Parties will identify specific documents withheld on these grounds in accordance with the schedule set forth in, and provide the information required by, the Court's Pretrial Order #14, and such further Orders of the Court and ongoing negotiations and discussions among counsel. The BP Parties incorporate their forthcoming privilege logs and all related information into this general objection to the extent necessary to preserve against any waiver of any applicable privilege or immunity from discovery.

7. The BP Parties object to Plaintiffs' Discovery Requests to the extent they seek information or documents relating to the settlement or potential settlement of disputes on the grounds that such information is not relevant to any party's claim or defense, is not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence, is protected from disclosure and dissemination under Federal Rule of Evidence 408, and that discovery of such information would be prejudicial to the efforts of the BP Parties and any opposing parties to resolve their disputes in a fair and efficient manner.

8. The BP Parties object to Plaintiffs' Discovery Requests to the extent they call for information or documents not within the BP Parties' possession, custody, or control. All responses are made on behalf of the BP Parties only, are limited to information and documents within the BP Parties' possession, custody, or control.

9. The BP Parties object to Plaintiffs' Discovery Requests to the extent they are unduly burdensome, duplicative, premature, oppressive, and/or overbroad, including, without limitation, as to subject matter and/or time period, and where compliance with specific requests would be unreasonably difficult as well as prohibitively expensive or time-consuming.

10. The BP Parties object to Plaintiffs' Discovery Requests to the extent they are not limited to information or documents relevant to any party's claim or defense, or to the extent they seek discovery of information or documents not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence, including, but not limited to, requests seeking information or documents concerning other incidents, accidents, or other events at BP facilities or locations other than the Macondo Well or that are otherwise unrelated to the *Deepwater Horizon.*

11. The BP Parties object to Plaintiffs' Discovery Requests to the extent that they seek information regarding expert(s) retained by the BP Parties in connection with pending litigation. The BP Parties will disclose its experts in accordance with the schedule established by the court and in the manner proscribed by the Federal Rules of Civil Procedure.

12. The BP Parties object to Plaintiffs' Discovery Requests to the extent they seek the disclosure of information or documents that contain or constitute trade secrets, proprietary information, or other confidential business information without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

13. The BP Parties object to Plaintiffs' Discovery Requests to the extent they seek the disclosure of information or documents that would violate the rights of privacy of third parties, or any similar judicially recognized protection or privilege, including, but not limited to, restrictions imposed in connection with proceedings before the MBI, and the protections of the Health Insurance Portability and Accountability Act ("HIPAA"), or that would result in disclosure of any confidential information or conduct without appropriate restrictions on disclosure and dissemination that are embodied in a protective order entered by the Court.

14.     The BP Parties object to the requests to the extent they seek documents already in the possession of plaintiffs or equally available to plaintiffs from sources other than the BP Parties, including publicly available sources.

15.     These responses are made without waiving, in any manner, the BP Parties' right to object to the use of any information or documents provided in response to these requests at any trial or evidentiary hearing on grounds of privilege, relevance, materiality, authenticity, hearsay, or any other ground permitted by any applicable law or rule.

16.     To the extent the BP Parties state they will produce documents in response to the requests, the BP Parties will produce such documents on a rolling basis with such reasonable speed as the BP Parties can locate and process them, without sacrificing a meaningful review for responsiveness, privilege, and confidentiality, as this is the only feasible and physically possible method given the scope and breadth of the requests.

17.     To the extent that the BP Parties respond that they will search for and produce responsive documents, the BP Parties are only undertaking to make a good faith effort to conduct a reasonable search of non-privileged documents of the files and records of those individuals likely to have meaningful information responsive to a requests as maintained in the ordinary course of business, and/or to apply a reasonable set of search terms to similar available collections of electronically stored information as maintained in the ordinary course of business reasonably likely to yield a meaningful amount of information responsive to a request. The BP Parties are not offering or promising to search for and produce every document or piece of information that may exist in the possession, custody, or control of any of BP's tens of thousands of employees and agents where any such items are not included within the results of a reasonable search as described above.

18. The BP Parties' decision, now or in the future, to provide information or documents should not be construed as: (a) a stipulation that the material is relevant or admissible, (b) a waiver of the BP Parties' general objections or the objections asserted in response to specific requests, or (c) an agreement that requests for similar information will be treated in a similar manner.

19. The BP Parties reserve the right to modify, amend, or supplement its responses, which are made based on the current status of its knowledge, understanding, belief, and searches for documents. The investigation of facts and information relating to these requests is continuing, and, therefore, these responses are not intended as an admission or a representation that additional information or documents do not exist.

Dated: May 11, 2011

Respectfully submitted,

By: /s/ J. Andrew Langan, P.C.

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Timothy A. Duffy, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Parties*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing response has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on this 11th day of May, 2011.

/s/   J. Andrew Langan, P.C.