

**DALLAS** HOUSTON

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041

214.939.4400
800.662.8393
214.760.7332 Fax

GodwinRonquillo.com

DONALD E. GODWIN, SHAREHOLDER
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:     214.939.4412
DIRECT FAX:     214.939.4803
DGodwin@GodwinRonquillo.com

January 9, 2012

**BY EMAIL**

The Honorable Carl J. Barbier
United States District Judge
500 Poydras Street, Room C-268
New Orleans, Louisiana  70130

    Re:    Motion to Exclude Evidence Relating to Testing of Cement Blends Using Non-Rig Samples.

Dear Judge Barbier:

    In accordance with the Court's November 14, 2011 Order setting a briefing schedule concerning motions *in limine* [Rec. Doc. 4572, ¶ 13], HESI moves to exclude all documents or other evidence relating to cement testing using non-rig samples.  More specifically, HESI moves to exclude Appendix K to the Bly Report (August 11, 2010 CSI Technologies Laboratory Analysis of Cementing Operations); Ex. 4572 (October 26, 2010 Chevron testing performed for the National Commission); Exs. 5937, 5939 (Oilfield Testing & Consulting tests for Joint Investigation Team [except for the MAC4 slurry]); and any other documents, testimony, or other evidence relating to testing of cement samples that did not come from the blend maintained on the *Deepwater Horizon* and actually used in the Macondo well.

    Evidence related to tests using materials that were not obtained from the *Deepwater Horizon* and used in the Macondo well are irrelevant to the issues presented for trial.  To the extent such evidence has any probative value, it is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, or needless presentation of cumulative evidence.  Accordingly, the Court should exclude this evidence pursuant to Rules 402 and 403 of the Federal Rules of Evidence.  Courts routinely exclude evidence *in limine* where it is found to be irrelevant to the issues in suit, or unduly prejudicial, confusing, or likely to cause delay.  *See, e.g., Steffy v. The Home Depot,* No. 1:06-CV-02227, 2009 U.S. Dist. LEXIS 52019, at *31-33 (M.D. Pa. June 15, 2009) (finding tests "not relevant" and granting motion in limine to exclude testing of plywood for formaldehyde where tests were conducted on plywood different from what was used in building at issue, and where there was "uncertain correlation between utilized testing procedures"); *see generally Knox v. City of Monroe*, No. 07-606, 2009 U.S. Dist. LEXIS 29454, at *29-30 (W.D. La. April 6, 2009); *Araujo*

The Honorable Carl J. Barbier
January 9, 2012
Page 2

*v. Treasure Chest Casino, LLC*, No. 97-3043, 1999 U.S. Dist. LEXIS, at *8-11 (E.D. La. April 12, 1999).

It is a well-accepted principle in the oil & gas industry that cement blends are unique and that, once blended and/or transported to a rig, they begin to develop their own unique chemical properties. Each cement blend is chemically different, even blends derived from the same bulk plant, and blends can change over time based on the environmental and storage conditions to which they are subjected. The changing nature of cement raises concerns over the representativeness of cement samples used for testing. Accordingly, the industry invests significant time and expense to ensure that cement blends tested on shore are representative of cement blends located on rigs. Specifically, the industry routinely samples cement from particular rigs and incurs time and expense to transport, via helicopter or boat, those samples to shore for testing shortly before the cement blends' anticipated use in a well. *See* Ex. A, Garrison Dep. at 178:13-179:12.

Significant variability of results is expected between tests conducted on laboratory stock (non-rig cement) and tests conducted on actual rig cement. This practice is mandated in the contract between HESI and BP, wherein BP requires HESI to perform tests exclusively on rig samples (not laboratory stock or simulation slurries) in order to ensure a representative test result. *See* Ex. B, Contract, Section 3, Appendix 6, ¶ 2.1 (All testing is required on rig samples . . . "). Craig Gardner of Chevron conceded this point under oath, when questioned about the Chevron testing of non-rig samples for the National Commission:

> Q: More specifically, do you believe that your testing is a reliable indication of what would have happened if you tested the rig blend?
>
> A: I would have to test the rig blend to answer that.

Ex. C, Gardner Dep., at 225:8-14. Similarly, Daryl Kellingray, a cement specialist who works as a cement consultant for BP, testified there would be "a level of uncertainty" if rig samples were not used in testing. Ex. D, Kellingray Dep., at 556:17-24. When asked whether there would be different results from using rig samples as opposed to substitute samples, Kellingray responded, "There was . . . it's quite common that we would see differences." *Id*. at 560:8-14.

Perhaps the most graphic example of the irrelevance and prejudicial effect of tests using non-rig cement blends arises from the testing performed by Oilfield Testing & Consulting ("OTC") for the Joint Investigation Team. With the exception of one slurry, all of the tests performed by OTC were conducted on simulation slurries that did *not* come from the actual rig blend used in the Macondo well. *See* Ex. A, Garrison Dep., at 176:7-23. The one exception was the MAC4 slurry, which utilized a rig sample that had been sequestered by HESI and turned over to the U.S. Government pursuant to this Court's Order dated October 15, 2011, and in turn provided to OTC for testing. *See id.* At his deposition, Mr. Garrison—the head of the OTC

The Honorable Carl J. Barbier
January 9, 2012
Page 3

cement lab—testified that all the testing done on non-rig samples showed indications of instability, *see id.* at 191:5-12, but conceded that the unset foam stability test conducted on the MAC4 slurry, which utilized the rig sample, indicated that the slurry is stable. *Id.* at 207:9-13.

All evidence related to testing conducted on non-rig samples is irrelevant and misleading and should be excluded. *See Steffy*, 2009 U.S. Dist. LEXIS 52019, at \*\*31-34. Because the only relevant tests are those performed on representative rig samples, HESI respectfully requests that the Court exclude all evidence relating to testing, including but not limited to any post-incident testing conducted individually and/or informally by HESI employees, of non-representative cement samples that did not come from the cement blend maintained on the *Deepwater Horizon* and actually used in the Macondo well.

Respectfully submitted,

Donald E. Godwin

DEG:PWS