

DONALD E. GODWIN, SHAREHOLDER
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:     214.939.4412
DIRECT FAX:      214.939.4803
DGodwin@GodwinRonquillo.com

DALLAS  HOUSTON

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041

214.939.4400
800.662.8393
214.760.7332 Fax

GodwinRonquillo.com

January 9, 2012

**BY EMAIL**

The Honorable Carl J. Barbier
United States District Judge
500 Poydras Street, Room C-268
New Orleans, Louisiana  70130

  Re: Motion to Exclude Evidence Relating to Credit on the Kodiak No. 2 Well for Non-Productive Time Related to Downhole Tool Issues.

Dear Judge Barbier:

  In accordance with the Court's November 14, 2011 Order setting a briefing schedule concerning motions *in limine* [Rec. Doc. 4572, ¶¶ 11, 13], HESI moves to exclude all documents, deposition designations, testimony, and other evidence relating to a credit that HESI issued or agreed to issue to BP in connection with non-productive time ("NPT") arising as a result of certain downhole tool issues associated with directional drilling and well logging activities, including "logging while drilling" ("LWD") and "measuring while drilling" ("MWD") that occurred during and/or prior to the Kodiak No. II well, including but not limited to Exhibits 2002, 2003, 2004, 2005, 5179 and 5180, which are attached hereto as Exhibits A–F, respectively.

  Exhibit 2002, a February 19, 2010 credit memo issued by Sperry Drilling Services, the HESI product service line offering directional drilling, MWD/LWD, and mudlogging services, shows on its face that it applies to LWD and MWD services performed on the Kodiak No. II well.  *See* Ex. A.  Exhibit 2003 is a January 19, 2010 e-mail string that also shows on its face that it relates to issuance of a credit for drilling services Sperry performed on the Kodiak No. II well. *See* Ex. B.  Exhibits 2004 and 2005 discuss this credit more generally, and Exhibit 5179 is an unsigned *draft* of an agreement that was never sent and is not operative.  *See* Exs. C, D, and E. Not only did the agreement at issue relate exclusively to non-mudlogging services, but because the issues arose prior to the Kodiak No. II well, the agreement was limited to that well.  *Id*. at 292:15-19 ("It was limited to the *Deepwater Horizon*, specifically for the Kodiak II well").  The credit agreement did not relate to the Macondo well.

  Skip Clark is the Senior Account Representative for the Sperry drilling product service line, servicing one customer: BP.  At his deposition, Clark testified that Exhibit 2002 related to

The Honorable Carl J. Barbier
January 9, 2012
Page 2

an agreement to provide a credit to BP for non-productive time arising from "downhole tool failures, both with directional drilling equipment, rotary steerables, as well as LWD." *See* Ex. G, Clark Dep. at 108:10-109:21. When asked whether the credit agreement related to mudlogging services, Clark testified "I know for a fact that the problems that this performance guarantee arose from were not mudlogging related issues." *Id*. at 109:6-16. Clark was asked a second time whether the guarantee applied to mudlogging, and Clark unequivocally testified, "[n]o, this guarantee did not apply to mudlogging related issues." *Id*. at 109:17-20. When asked a third time whether any of these issues related to mudlogging, Clark again testified, "No." *Id*. at 292:5-8. In fact, the guarantee applied only to directional drilling and LWD services. *Id*. at 109:21-23; *see also* 291:8-292:3. In addition, Clark specifically had a conversation with John Guide, a BP wells team leader, in which he told Clark that it was not necessary for Sperry to provide the performance guarantee on the Macondo well. *Id*. at 292:20-293:12. In other words, BP agreed that the Kodiak No. II NPT agreement did *not* apply to any HESI services provided on the Macondo well.

Similarly, James Bement, a Vice-President of Sperry who was personally involved with the decision to give BP a credit for non-productive time, testified that the problems encountered that led to the NPT credit offer were associated with tool failures, specifically flooding of 30,000 psi rated tools in the 8" tool string. *See* Ex. H, Bement Dep. at 51:18-53:19. Consistent with Clark, Bement also testified that the NPT credit agreement applied only to the Kodiak No. II well, not the Macondo well. *Id*. at 49:3-6; 60:16-61:1. Exhibit 5179 is a **draft** of an agreement that would have extended the credit agreement to the Macondo well. *See* Ex. E. However, Bement testified that he never signed or sent this draft, and thus there was no credit agreement for non-productive time for the Macondo well. Ex. H at 46:3-49:25; 60:9-15.

Thomas Roth also testified in his deposition that this credit "was associated with the Sperry MWD/LWD services that had taken place on the Kodiak well . . ." *See* Ex. I, Roth Dep. at 178:4-7. The credit was not associated with HESI's cementing product/service line or with any failure of HESI/Sperry employees to detect kicks and lost circulation events at the Kodiak II well, much less at the subsequent Macondo well. *Id*. at 20:25-21:11; 185:13-186:5 (Q: "And that included, did it not, failure to detect kicks and lost circulation events?" A: "It included nonproductive time associated with the Sperry MWD/LWD services. The guarantee, as I recall, was triggered from, you know, rotary-to-rotary tripping of tools in and out of the well, which would not be associated with any of the MWD—or excuse me—the surface data logging aspects provided by Sperry.").

This lawsuit involves acts and omissions on the Macondo well, not the Kodiak No. II or prior wells. Furthermore, the claims against HESI involve its cementing and mudlogging services, neither of which were at issue in the NPT credit agreement. No claims have been made relating to failures of Sperry tools downhole or with Sperry's MWD or LWD services on the Macondo well. Therefore, the referenced documents and associated evidence are irrelevant to the issues presented for trial. To the extent such evidence has any probative value, it is

The Honorable Carl J. Barbier
January 9, 2012
Page 3

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Accordingly, the Court should exclude this evidence pursuant to Rules 402 and 403 of the Federal Rules of Evidence. Courts routinely exclude evidence *in limine* where it is found to be irrelevant to the issues in suit, or unduly prejudicial, confusing, or likely to cause delay. *See, e.g., Knox v. City of Monroe*, No. 07-606, 2009, U.S. Dist. LEXIS 29454, at *29-30 (W.D. La. April 6, 2009); *Araujo v. Treasure Chest Casino, LLC*, No. 97-3043, 1999 U.S. Dist. LEXIS, at *8-11 (E.D. La. April 12, 1999).

HESI respectfully requests that the Court exclude from evidence all documents, deposition designations, testimony, or other evidence relating to any agreement to issue a credit to BP for non-productive time arising from certain downhole tool issues associated with directional drilling and well logging activities, or LWD or MWD services.

Respectfully submitted,

Donald E. Godwin

DEG:PWS