# EXHIBIT A

# HALLIBURTON

*Halliburton Energy Services, Inc.*

### Sperry Drilling Services

| Comp. Reg. No. : NIF 73-0271280 | | |
|---|---|---|
| VAT / GST No. : | | |

## CREDIT MEMO    No. 96734819 - 02/19/2010
### ( For Processing Only - DO NOT PAY )

**Direct Correspondence To:**
PO BOX 3647
LAFAYETTE
70502-3647 LAFAYETTE LA
USA
Telephone: 800-444-7830
Fax: 337-572-4725

**Ship to Address:**
BP G24102 2,MC727
G24102_2
MC727
BP
MISSISSIPPI CANYON 727
GOLDEN MEADOW LA  70357
USA

| Customer Number | | ZSPO Reference Number | |
|---|---|---|---|
| 358465 | | 9607463 | |
| Job Location | | Manual Ticket No. | Date |
| | | INV 96613577 | 04/07/2009 |
| Shipping Point | | Purchase Order No. | Date |
| 4607 Highway 90 - Broussard | | 4300000680 | |
| Customer Contact | | Sales Order No. | Date |
| DIEGO NASCIMENTO | | 61055614 | 02/19/2010 |
| Customer Contact Phone No | | Quote No. | Date |
| | | | |
| Rig Name | | Contract No. : | |
| DEEPWATER HORIZON | | From : | |
| Shipping Partial/Complete | | To : | |
| Partial | | Accumulated Value : | |
| Ultimate Destination Country | | Payment Terms | |
| USA | | | |

**Credit To:**
BP AMERICA PROD CO-SORAC/GOM EBIZ
ATTN:  SCANNING DEPT. S646
PO BOX 22024 - DO NOT MAIL
TULSA OK  74121-2024
USA

| Mat. No. | Description | QTY | U/M | Min Charge | Unit Price | Amount |
|---|---|---|---|---|---|---|
| 315215 | LLWD/MWD SERVICES | 1.00 | JOB | | | |
| | *JOB ADJUSTMENT ISSUED AGAINST INVOICE 96613577* | | | | | |
| | *DATED 12/16/09 DUE TO 111 HOURS OF NPT AS PER* | | | | | |
| | *PERFORMANCE GUARANTEE DATED AUGUST 5,2009.* | | | | | |
| | *CALULATED USING A WEIGHTED HOURLY RIG COST* | | | | | |
| | *PULLED FROM CUSTOMER'S DIMS REPORTS.* | | | | | |
| | *X9000JP-D-INTI. AGENT: M.R. SEPULVADO.* | | | | | |
| | *HAL. REP. BERT STREETMAN-1-800-444-7830.* | | | | | |
| 307700 | **JOB ADJUSTMENT L_MWD** | 1.00 | EA | | 1,811,797.50 | 1,811,797.50 |
| | **CREDIT MEMO SUBTOTAL** | | | | | 1,811,797.50 |
| | **CREDIT MEMO AMOUNT** | | | | | 1,811,797.50 |
| | **CREDIT MEMO   WE CREDIT THIS AMOUNT** | US Dollars | | | | (1,811,797.50) |

PAGE 1 OF  2

Business Confidential

EXHIBIT NO. 2.002

HAL_0047951

CREDIT MEMO

# HALLIBURTON
Halliburton Energy Services, Inc.

| Continuation | |
|---|---|
| Reference Doc. No. | Date |
| 96724819 | 02/19/2010 |

## Sperry Drilling Services

| Mat. No. | Description | QTY | U/M | Min_Charge | Unit_Price | Amount |
|---|---|---|---|---|---|---|
| | | | | | | |

Payment terms:

If Customer does not have an approved open account with Halliburton, all sums are payable in cash at the time of performance of services or delivery of equipment, products, or materials. If Customer has an approved open account, invoices are payable based upon the payment terms stated on this invoice or as otherwise stated in the applicable Halliburton contract governing performance or delivery. Customer agrees to pay interest on any unpaid balance from the date payable until paid at the highest lawful contract rate applicable. In the event Halliburton employs an attorney for collection of any amount, Customer agrees to pay all reasonable and necessary attorney fees to recover the unpaid amount, plus all collection and court costs.

Customer Financial Services Contact:
Patricia Bartkowiak    Phone: 281-575-4370
       E-mail: Patricia.Bartkowiak@Halliburton.com

PAGE 2 OF 2

Business Confidential

HAL_0047952

# HALLIBURTON

3000 N. Sam Houston Parkway East • Houston, TX 77032
Direct: 281.871.7579 • Fax: 281.871.4269

**James Bement**
Vice President
Sperry Drilling Services

August 5, 2009

Mr. David Simms
BP America Inc.
200 Westlake Park Blvd
Houston, Texas 77079

Dear Mr. Simms:

First let me express our appreciation for the association we have enjoyed with yourself and BP in our working relationship on the DW Horizon. Our companies have benefited from this alliance for the past four years, and we believe we have developed a strong team in order to accomplish the goals set by yourself and BP.

We are also keenly aware of the recent service levels we have provided and agree that this manner of service is not what Halliburton Sperry Drilling has built a track record of furnishing, or what BP expects and deserves.

In recent meetings Halliburton Sperry Drilling has endeavored to be up front as to the causes, and has put forth solutions to eliminate occurrences of this nature in the future. Halliburton Sperry Drilling is so confident of these measures will be effective, we are willing to put forth the following guarantee for your Kodiak #2 well:

- *Guarantee of a 98% Operating Efficiency for the well.*

- *Operating Efficiency is defined as (Below Rotary Hours – NPT) / Below Rotary Hours. This guarantee is limited to trips for failure and does not include down time associated with the rig and/or hole conditions.*

- *In the event our operating efficiency falls below this threshold, Halliburton Sperry Drilling will compensate BP for rig time up to the amount of the cost of all of our services in the well.*

- *If, during the course of drilling operations on Kodiak 2, our operating efficiency becomes intolerable it will be BP's right to change service provider.*

- *Any credits due BP as a result of operating efficiency will be settled at end of well, or in the event of replacement, end of service.*

We wanted to make this guarantee as simple and straight forward as possible. Halliburton Sperry Drilling has made many promises in the past, and has always come through. This offer is not made lightly. We feel so strongly in our capabilities that the performance on the upcoming well will reestablish your trust and confidence, and supply yourself and BP the level of service you deserve and expect.

Sincerely,

James Bement
Vice President

HAL_0047953

## HALLIBURTON ENERGY SERVICES
### TICKET CORRECTION REQUEST

REQUEST DATE:      2/2/2010                    REQUESTED BY:      Skip Clark

**Reason for Correction:**

- [ ] Address Corrections
- [ ] Pricing
- [ ] Customer Change (Must have proper CFS approval)
- [ ] Customer Requirements (afe or special codes)

- [ ] Discounts
- [ ] Returned Stock
- [ ] Other
- [ ] $0 dollar value amount, internal only

- [x] JOB ADJUSTMENT - (Cost of Poor Quality) Price Ref. 12391
- [ ] Logging/OH Job Adj. Price Ref. 340771
- [ ] Logging/OH Job Adj. Price Ref. 340772          307700

- [ ] DEBIT   [x] CREDIT

| | ENGINEER NAME | _____ | % BONUS | _____ |
| WILL BONUS BE AFFECTED [ ] YES [x] NO | EMPLOYEE # | _____ | | |
| | ENGINEER NAME | _____ | % BONUS | _____ |
| | EMPLOYEE # | _____ | | |

**Please attach a copy of the sales order.**                    ZSPO 6607463

Sales Order Number:     7068584          Job Date:     1/26/2010

ACCT ASSIGN: 1016710157
RIG ZR 2166179
PLANT 011P

Invoice Number:     96613577

Customer's Name as originally billed:          BP America Production Company

Detailed Reason For Corrections:          Credit for 111 hours of NPT as per Performance Guarantee (attached)

dated August 5,2009. Credit was calculated using a weighted hourly rig cost, as pulled form customer's DIMS reports.

Credit/Debit Amount to be issued to Customer: $      1,811,797.50
Restocking Charge (Amount if Applicable): $

Special Mailing Requirements (If original credit/debit memo to be mail to someone other than
customer please specify):

Internal Only [ ] YES [x] NO      Tony Angelle (E-Mail) 2-17-10      Jan Erik Klungtveil (2-15-10)
                                  Jeff Miller (E-Mail) 2-17-10
PROPER PSL APPROVAL      James Brown (E-Mail) 2-18-10      Date:
F & A APPROVAL      Michael H   838326      Date: 2-22-10
ENTRY CLERK      Cynthia LaPorte      Date: 2-19-10
RE RETURNED #      INVOICE # _____

CM REQUEST#      610556614      INVOICE #  96734819
DM REQUEST #      INVOICE # _____

Region PSL Mgr: $25,000   Region Ops Mgr: $25,001 - $250,000   Regional VP:$250,001- $1,000,000   WH Pres: $1,000,001 +

*Current list of managers on the approval list:*

Region PSL Mgrs – Richard Vargo, Charles Kendrick, Jan Erik Klungtveil, Brad Taff, Randal Menard, Pete Duhon, Josh Malbrough

*** (Managers delegated to approve: Greg Salassi, Charlie Thompson, John Touchet, Glen McMahon, Tim Thompson)
Region Ops Mgr – Tony Angelle
Sr. VP – GOM Region – Jeff Miller
Western Hemisphere Pres – Jim Brown          Last Update: 2/3/2010

Business Confidential

**Kimberly Saucier**

| | |
|---|---|
| **From:** | Sandra Curvey |
| **Sent:** | Thursday, February 18, 2010 3:31 PM |
| **To:** | Kimberly Saucier |
| **Subject:** | FW: BP Kodiak 2 credit memos/Second Request |
| **Attachments:** | KODIAK_MWD CREDIT.xls; KODIAK_DD CREDIT.xls; Sperry Offer Letter.PDF |

*Kim,*

*All required approvals attached.*

*Regards,*

*Sandra Curvey*
*Halliburton/Sperry Drilling*
*3950 Interwood South Pkwy*
*Houston, Tx. 77032*

*O-281.871.7767*
*M-281.570.8321*
*sandra.curvey@halliburton.com*

**From:** Jim Brown
**Sent:** Thursday, February 18, 2010 3:24 PM
**To:** Sandra Curvey
**Subject:** FW: BP Kodiak 2 credit memos/Second Request

Approved.

Thanks,

Jim

James S. Brown
President, Western Hemisphere
Halliburton
1125 - 17th Street, Suite 1900
Denver, CO 80202
303-308-4220  Office
720-308-3619  Cell
303-308-4214  Assistant

**From:** Sandra Curvey
**Sent:** Wednesday, February 17, 2010 8:00 AM
**To:** Jim Brown
**Subject:** FW: BP Kodiak 2 credit memos/Second Request

1

Business Confidential

HAL_0047955

Jim,

Please approve the (2) credit memo request and forward back to me. (please hit forward)

Regards,

**Sandra Curvey**
**Halliburton/Sperry Drilling**
**3950 Interwood South Pkwy**
**Houston, Tx. 77032**

**O-281.871.7767**
**M-281.570.8321**
**sandra.curvey@halliburton.com**

**From:** Jeff Miller - Sr. Vice President, Gulf of Mexico
**Sent:** Wednesday, February 17, 2010 8:55 AM
**To:** Sandra Curvey
**Cc:** Tony Angelle
**Subject:** FW: BP Kodiak 2 credit memos/Second Request

I see below.  Approved, Jeff

**From:** Sandra Curvey
**Sent:** Wednesday, February 17, 2010 8:03 AM
**To:** Jeff Miller - Sr. Vice President, Gulf of Mexico
**Subject:** FW: BP Kodiak 2 credit memos/Second Request

Jeff,

Please approve the (2) attached credit memo request and forward back to me. ( please hit forward)

Regards,

**Sandra Curvey**
**Halliburton/Sperry Drilling**
**3950 Interwood South Pkwy**
**Houston, Tx. 77032**

**O-281.871.7767**
**M-281.570.8321**
**sandra.curvey@halliburton.com**

2

Business Confidential

HAL_0047956

**From:** Tony Angelle
**Sent:** Wednesday, February 17, 2010 7:58 AM
**To:** Sandra Curvey
**Subject:** FW: BP Kodiak 2 credit memos/Second Request

Approved.

Tony Angelle
Region Operations Manager
Gulf of Mexico
Halliburton
Office(337)266-8074
Cell(337)298-1705

**From:** Sandra Curvey
**Sent:** Monday, February 15, 2010 3:50 PM
**To:** Tony Angelle
**Subject:** FW: BP Kodiak 2 credit memos/Second Request

*Tony,*

*Please approve the attached credit memo request and forward back to me. (please hit forward)*

*Regards,*


*Sandra Curvey*
*Halliburton/Sperry Drilling*
*3950 Interwood South Pkwy*
*Houston, Tx. 77032*

*O-281.871.7767*
*M-281.570.8321*
*sandra.curvey@halliburton.com*

**From:** Jan Erik Klungtveit
**Sent:** Monday, February 15, 2010 11:41 AM
**To:** Sandra Curvey
**Subject:** FW: BP Kodiak 2 credit memos/Second Request

Approved
jek

**From:** Sandra Curvey
**Sent:** 8. februar 2010 08:18
**To:** Jan Erik Klungtveit
**Subject:** FW: BP Kodiak 2 credit memos/Second Request

3

Business Confidential                                                                HAL_0047957

*Jan Erik,*

*Please approve the attached credit memo request and forward back to me. (please hit forward)*

*Regards,*

**Sandra Curvey**
**Halliburton/Sperry Drilling**
**3950 Interwood South Pkwy**
**Houston, Tx. 77032**

**O-281.871.7767**
**M-281.570.8321**
**sandra.curvey@halliburton.com**

**From:** David Braquet
**Sent:** Friday, February 05, 2010 6:52 PM
**To:** Sandra Curvey
**Subject:** RE: BP Kodiak 2 credit memos/Second Request

Approved.

**David Braquet**
LWD/MWD Field Service Coordinator

**Halliburton Energy Services**
3950 Interwood South Parkway
Houston, Texas 77032
*Cell:*   713-876-5012
*Halliburton Office:* 281-871-5647
*APC Office:* 832-636-1635
*Home:* 281-651-5455
*Email:* david.braquet@halliburton.com

**From:** Sandra Curvey
**Sent:** Friday, February 05, 2010 3:48 PM
**To:** David Braquet
**Subject:** FW: BP Kodiak 2 credit memos/Second Request

*David,*

*Please see below...*

**Sandra Curvey**
**Halliburton/Sperry Drilling**
**3950 Interwood South Pkwy**

4

Business Confidential                                            HAL_0047958

Houston, Tx. 77032

O-281.871.7767
M-281.570.8321
sandra.curvey@halliburton.com

**From:** Sandra Curvey
**Sent:** Thursday, February 04, 2010 7:45 AM
**To:** David Braquet
**Subject:** FW: BP Kodiak 2 credit memos

David,

Please approve the attached credit request that is relevant to your PSL and forward back to me. (please hit forward)

Regards,

**Sandra Curvey**
**Halliburton/Sperry Drilling**
**3950 Interwood South Pkwy**
**Houston, Tx. 77032**

O-281.871.7767
M-281.570.8321
sandra.curvey@halliburton.com

**From:** Jeff Chappell
**Sent:** Wednesday, February 03, 2010 5:13 PM
**To:** Sandra Curvey
**Subject:** FW: BP Kodiak 2 credit memos

Approved.

Regards,

Jeff Chappell
Halliburton - Sperry Drilling Services
PSL District Manager
337-837-7508 ofc
337-501-7638 cell

**From:** Sandra Curvey
**Sent:** Wednesday, February 03, 2010 3:30 PM
**To:** Jeff Chappell
**Subject:** FW: BP Kodiak 2 credit memos

Jeff,

5

Business Confidential

HAL_0047959

*Please approve the attached credit request that is relevant to your PSL and forward back to me. ( please hit forward)*

*Regards,*

**Sandra Curvey**
**Halliburton/Sperry Drilling**
**3950 Interwood South Pkwy**
**Houston, Tx. 77032**

**O-281.871.7767**
**M-281.570.8321**
**sandra.curvey@halliburton.com**

**From:** Skip Clark
**Sent:** Wednesday, February 03, 2010 3:04 PM
**To:** Sandra Curvey
**Subject:** RE: BP Kodiak 2 credit memos

Corrected.

Skip Clark
Senior Account Representative
Halliburton / Sperry Drilling Services

3000 North Sam Houston Pwky. E.
Q1L26
Houston, TX 77032

Office: 281-871-6240
Cell: 713-501-8913
Fax: 281-871-6874
skip.clark@halliburton.com

**From:** Sandra Curvey
**Sent:** Wednesday, February 03, 2010 2:56 PM
**To:** Skip Clark
**Subject:** FW: BP Kodiak 2 credit memos

*Skip,*

*I hate to be a pain, but you should have received the attached correction form that is attached that we are using going forward to process credits. Could you please create the credits on this form and forward back to me.*

*Regards,*

6

Business Confidential

HAL_0047960

*Sandra Curvey*
*Halliburton/Sperry Drilling*
*3950 Interwood South Pkwy*
*Houston, Tx. 77032*

*O-281.871.7767*
*M-281.570.8321*
*sandra.curvey@halliburton.com*

**From:** Skip Clark
**Sent:** Wednesday, February 03, 2010 2:46 PM
**To:** Tara Arnaud
**Cc:** Sandra Curvey; Jan Erik Klungtveit
**Subject:** RE: BP Kodiak 2 credit memos

Geo-Pilot will share credit. I have put this on remarks.
Thanks

Skip Clark
Senior Account Representative
Halliburton / Sperry Drilling Services

3000 North Sam Houston Pwky. E.
Q1L26
Houston, TX 77002

Office: 281-871-6240
Cell: 713-501-8913
Fax: 281-871-6874
skip.clark@halliburton.com

**From:** Tara Arnaud
**Sent:** Wednesday, February 03, 2010 1:37 PM
**To:** Skip Clark
**Cc:** Sandra Curvey; Jan Erik Klungtveit
**Subject:** FW: BP Kodiak 2 credit memos

Skip I would attach the letter and submit with the credit request.  Also please verify if it is Geo Pilot or DD that will split with MWD.  Once confirmed Sandra will begin the Approval process.

Tara Arnaud
**Office Administrator**
**Halliburton - Sperry Drilling**
**Office Number:** 337-837-0212
**Mobile Number:** 337-277-0432
**Fax Number:** 337-837-0231

**From:** Skip Clark
**Sent:** Wednesday, February 03, 2010 11:36 AM
**To:** Tara Arnaud
**Cc:** Jan Erik Klungtveit
**Subject:** BP Kodiak 2 credit memos

I split the credit, with LWD and DD taking 50% each. I do not have the last invoice number, so this item was left blank. Please let me know if remark section needs more detail, or if we can attach offer letter to better explain credit.

7

Business Confidential

Regards,

Skip Clark
Senior Account Representative
Halliburton / Sperry Drilling Services

3000 North Sam Houston Pwky. E.
Q1L26
Houston, TX 77032

Office: 281-871-6240
Cell: 713-501-8913
Fax: 281-871-6874
skip.clark@halliburton.com

8

Business Confidential

HAL_0047962

# HALLIBURTON

Halliburton Energy Services, Inc.

## Sperry Drilling Services

| Remit to: | Wire transfer to be made: | |
|---|---|---|
| Remit To:  P.O. Box 203143 | IDES Holding AG, Postfach 16 | Account No. |
| Houston  TX  77216-3143 | OS 29;  D-60070-Frankfurt/M | |
| | | ABA-Routing No. |

| Comp. Reg. No. | : | NIF 73-0271280 | | **INVOICE** | | **No. 96613577 - 12/16/2009** |
|---|---|---|---|---|---|---|
| VAT / GST No. | : | | | | | |

| Direct Correspondence To: | Ship to Address: | |
|---|---|---|
| PO BOX 3647 | BP C24102 2,MC727 | |
| LAFAYETTE | C24102 2 | |
| 70503-3647 LAFAYETTE LA | MC727 | |
| USA | BP | |
| Telephone: 800-444-7830 | MISSISSIPPI CANYON 727 | |
| Fax: 337-572-4725 | GOLDEN MEADOW LA  70357 | |
| | USA | |

| | | | |
|---|---|---|---|
| Customer Number | 339485 | ZSPO Reference Number | 6607463 |
| Job Location | | Manual Ticket No. | Date |
| Federal - Deepwater | | 6607463-MWD-010 | 04/07/2009 |
| Shipping Point | | Purchase Order No. | Date |
| 4607 Highway 90 - Broussard | | 4300000580 | |
| Customer Contact | | Sales Order No. | Date |
| Greg Navarette | | 7068584 | 12/15/2009 |
| Customer Contact Phone No | | Quote No. | Date |
| Rig Name | | Contract No. | |
| DEEPWATER HORIZON | | From | |
| Shipping Partial/Complete | | To | |
| Partial | | Accumulated Value : | |
| Ultimate Destination Country | | Payment Terms | |
| USA | | Net 30 days from invoice date | |

**Bill To:**
BP AMERICA PROD CO-SORAC/GOM EBIZ
ATTN:  SCANNING DEPT. S646
PO BOX 22024 - DO NOT MAIL
TULSA OK  74121-2024
USA

| Mat. No. | Description | QTY | U/M | Min Charge | Unit Price | Amount |
|---|---|---|---|---|---|---|
| | X9000JP-D-INT1:   AGENT:  M.R. SEPULVADO; | | | | | |
| | HAL. REP. BERT STREETMAN 1-800-444-7830; | | | | | |
| | REMOTE TICKET NO. 6607463-MWD/LWD-010 | | | | | |
| | 12/01/09-12/15/09 | | | | | |
| | 4300000580 | | | | | |
| | 760060 | | | | | |
| | MWD/LWD SERVICES | | | | | |
| | MC 727 #2 KODIAK | | | | | |
| 315215 | LLWD/MWD SERVICES | 1.00 | JOB | | | |
| 311335 | BAT  COMPRESS & SHEAR  8"  DAY | 1.90 | PDY | | 6,251.00 | 11,876.90 |
| | 12/01/2009 - 12/02/2009 | | | | | |
| | (1.90 Days)R1100 | | | | | |
| 307746 | MWD  NEGATIVE PULSE  8"  RENTAL | 1.90 | PDY | | 1,186.80 | 2,254.92 |
| | 12/01/2009 - 12/02/2009 | | | | | |
| | (1.90 Days)R1100 | | | | | |
| 580573 | PWD - ANNULAR - PUMPS ON/OFF - LOT DAY | 1.90 | PDY | | 133.95 | 254.51 |
| | 12/01/2009 - 12/02/2009 | | | | | |
| | (1.90 Days)R1100 | | | | | |
| 580579 | PWD -  ANNULAR - RT & MEMORY  DAY | 1.90 | PDY | | 667.07 | 1,267.43 |
| | 12/01/2009 - 12/02/2009 | | | | | |
| | (1.90 Days)R1100 | | | | | |
| 580537 | DRILLSTRING DYNAMICS DDS REAL-TIME  DAY | 1.90 | PDY | | 175.92 | 334.25 |
| | 12/01/2009 - 12/02/2009 | | | | | |
| | (1.90 Days)R1100 | | | | | |

PAGE 1 OF  9

HAL_0047963

# INVOICE

# HALLIBURTON
Halliburton Energy Services, Inc.

| Continuation | |
|---|---|
| Reference Doc. No. | Date |
| 96613577 | 12/16/2009 |

## Sperry Drilling Services

| Mat. No. | Description | QTY | U/M | Min Charge | Unit Price | Amount |
|---|---|---|---|---|---|---|
| 580533 | DRILLSTRING DYNAMICS DDS MEMORY  DAY | 1.90 | PDY | | 175.92 | 334.25 |
| | 12/01/2009 - 12/02/2009 | | | | | |
| | (1.90 Days)R1100 | | | | | |
| 580547 | STICK SLIP REAL-TIME  DAY | 1.90 | PDY | | 44.65 | 84.83 |
| | 12/01/2009 - 12/02/2009 | | | | | |
| | (1.90 Days)R1100 | | | | | |
| 580543 | STICK SLIP MEMORY  DAY | 1.90 | PDY | | 44.65 | 84.83 |
| | 12/01/2009 - 12/02/2009 | | | | | |
| | (1.90 Days)R1100 | | | | | |
| 580541 | HIGH SPEED  1000Hz DRILLING DYNAMICS DAY | 1.90 | PDY | | 89.30 | 169.67 |
| | 12/01/2009 - 12/02/2009 | | | | | |
| | (1.90 Days)R1100 | | | | | |
| 424482 | AGR-AZIMUTHAL GAMMA RAY 8 DAY | 1.90 | PDY | | 633.14 | 1,202.97 |
| | 12/01/2009 - 12/02/2009 | | | | | |
| | (1.90 Days)R1100 | | | | | |
| 580307 | AZIMUTHAL GAMMA RAY 4 SECTOR DAY | 1.90 | PDY | | 633.14 | 1,202.97 |
| | 12/01/2009 - 12/02/2009 | | | | | |
| | (1.90 Days)R1100 | | | | | |
| 580458 | 8 EWR-M5 ADVANCED RESISTIVITY  DAY | 1.90 | PDY | | 1,562.75 | 2,969.22 |
| | 12/01/2009 - 12/02/2009 | | | | | |
| | (1.90 Days)R1100 | | | | | |
| 580464 | EWR-M5 TRANSMISSION SYSTEM  DAY | 1.90 | PDY | | 1,562.75 | 2,969.22 |
| | 12/01/2009 - 12/02/2009 | | | | | |
| | (1.90 Days)R1100 | | | | | |
| 580292 | HIGH DATA DENSITY PULSING I  DAY | 1.90 | PDY | | 320.59 | 609.12 |
| | 12/01/2009 - 12/02/2009 | | | | | |
| | (1.90 Days)R1100 | | | | | |
| 539421 | GEOTAP® 8   FORMATION TESTER DAY | 1.90 | PDY | | 6,697.50 | 12,725.25 |
| | 12/01/2009 - 12/02/2009 | | | | | |
| | (1.90 Days)R1100 | | | | | |
| 580492 | GeoTAP® Plus  - MULTIPLE DRAWDOWNS  DAY | 1.90 | PDY | | 1,179.65 | 2,241.34 |
| | 12/01/2009 - 12/02/2009 | | | | | |
| | (1.90 Days)R1100 | | | | | |
| 311351 | BAT  COMPRESS & SHEAR  8"  S | 0.08 | PDY | | 5,000.75 | 400.06 |
| | 12/03/2009 - 12/03/2009 | | | | | |
| | (.08 Days) /STANDBY | | | | | |

PAGE 2 OF  9

Business Confidential

HAL_0047964

# INVOICE

# HALLIBURTON
Halliburton Energy Services, Inc.

| Continuation | |
|---|---|
| Reference Doc. No. | Date |
| 96613577 | 12/16/2009 |

### Sperry Drilling Services

| Mat. No. | Description | QTY | U/M | Min Charge | Unit Price | Amount |
|---|---|---|---|---|---|---|
| 307748 | MWD  NEGATIVE PULSE  8" S | 0.08 | PDY | | 950.12 | 76.01 |
| | 12/03/2009 - 12/03/2009 | | | | | |
| | (.08 Days)/STANDBY | | | | | |
| 580572 | PWD - ANNULAR - PUMPS ON/OFF - LOT  S | 0.08 | PDY | | 107.13 | 8.57 |
| | 12/03/2009 - 12/03/2009 | | | | | |
| 580578 | PWD -  ANNULAR - RT & MEMORY  S | 0.08 | PDY | | 533.13 | 42.65 |
| | 12/03/2009 - 12/03/2009 | | | | | |
| 580536 | DRILLSTRING DYNAMICS DDS REAL-TIME  S | 0.08 | PDY | | 140.25 | 11.22 |
| | 12/03/2009 - 12/03/2009 | | | | | |
| | (.08 Days)/STANDBY | | | | | |
| 580532 | DRILLSTRING DYNAMICS DDS MEMORY  S | 0.08 | PDY | | 140.25 | 11.22 |
| | 12/03/2009 - 12/03/2009 | | | | | |
| | (.08 Days)/STANDBY | | | | | |
| 580546 | STICK SLIP REAL-TIME  S | 0.08 | PDY | | 35.75 | 2.86 |
| | 12/03/2009 - 12/03/2009 | | | | | |
| | (.08 Days)/STANDBY | | | | | |
| 580542 | STICK SLIP MEMORY  S | 0.08 | PDY | | 35.75 | 2.86 |
| | 12/03/2009 - 12/03/2009 | | | | | |
| | (.08 Days)/STANDBY | | | | | |
| 580540 | HIGH SPEED 1000Hz DRILLING DYNAMICS S | 0.08 | PDY | | 71.50 | 5.72 |
| | 12/03/2009 - 12/03/2009 | | | | | |
| | (.08 Days)/STANDBY | | | | | |
| 466315 | AGR-AZIMUTHAL GAMMA RAY 8 S | 0.08 | PDY | | 506.38 | 40.51 |
| | 12/03/2009 - 12/03/2009 | | | | | |
| | (.08 Days)/STANDBY | | | | | |
| 580306 | AZIMUTHAL GAMMA RAY 4 SECTOR S | 0.08 | PDY | | 506.38 | 40.51 |
| | 12/03/2009 - 12/03/2009 | | | | | |
| | (.08 Days)/STANDBY | | | | | |
| 580457 | 8 EWR-M5 ADVANCED RESISTIVITY  S | 0.08 | PDY | | 1,250.25 | 100.02 |
| | 12/03/2009 - 12/03/2009 | | | | | |
| | (.08 Days)/STANDBY | | | | | |
| 580463 | EWR-M5 TRANSMISSION SYSTEM  S | 0.08 | PDY | | 1,250.25 | 100.02 |
| | 12/03/2009 - 12/03/2009 | | | | | |

PAGE 3 OF  9

HAL_0047965

# INVOICE

# HALLIBURTON
Halliburton Energy Services, Inc.

| Continuation | | |
|---|---|---|
| Reference Doc. No. | | Date |
| 96613577 | | 12/16/2009 |

## Sperry Drilling Services

| Mat. No. | Description | QTY | U/M | Min Charge | Unit Price | Amount |
|---|---|---|---|---|---|---|
| | (.08 Days)/STANDBY | | | | | |
| 580291 | HIGH DATA DENSITY PULSING 1  S | 0.08 | PDY | | 256.25 | 20.50 |
| | 12/03/2009 - 12/03/2009 | | | | | |
| | (.08 Days)/STANDBY | | | | | |
| 539424 | GEOTAP® 8   FORMATION TESTER# S | 0.08 | PDY | | 5,358.00 | 428.64 |
| | 12/03/2009 - 12/03/2009 | | | | | |
| | (.08 Days)/STANDBY | | | | | |
| 580491 | GeoTAP® Plus  - MULTIPLE DRAWDOWNS  S | 0.08 | PDY | | 943.00 | 75.44 |
| | 12/03/2009 - 12/03/2009 | | | | | |
| | (.08 Days)/STANDBY | | | | | |
| 311335 | BAT  COMPRESS & SHEAR  8"  DAY | 5.21 | PDY | | 6,251.00 | 32,567.71 |
| | 12/03/2009 - 12/08/2009 | | | | | |
| | (5.21 Days)/R1200 | | | | | |
| 307746 | MWD  NEGATIVE PULSE  8"  RENTAL | 5.21 | PDY | | 1,186.80 | 6,183.23 |
| | 12/03/2009 - 12/08/2009 | | | | | |
| | (5.21 Days)/R1200 | | | | | |
| 580573 | PWD - ANNULAR - PUMPS ON/OFF - LOT  DAY | 5.21 | PDY | | 133.95 | 697.88 |
| | 12/03/2009 - 12/08/2009 | | | | | |
| | (5.21 Days)/R1200 | | | | | |
| 580579 | PWD - ANNULAR - RT & MEMORY  DAY | 5.21 | PDY | | 667.07 | 3,475.43 |
| | 12/03/2009 - 12/08/2009 | | | | | |
| | (5.21 Days)/R1200 | | | | | |
| 580537 | DRILLSTRING DYNAMICS DDS REAL-TIME  DAY | 5.21 | PDY | | 175.92 | 916.54 |
| | 12/03/2009 - 12/08/2009 | | | | | |
| | (5.21 Days)/R1200 | | | | | |
| 580533 | DRILLSTRING DYNAMICS DDS MEMORY  DAY | 5.21 | PDY | | 175.92 | 916.54 |
| | 12/03/2009 - 12/08/2009 | | | | | |
| | (5.21 Days)/R1200 | | | | | |
| 580547 | STICK SLIP REAL-TIME  DAY | 5.21 | PDY | | 44.65 | 232.63 |
| | 12/03/2009 - 12/08/2009 | | | | | |
| | (5.21 Days)/R1200 | | | | | |
| 580543 | STICK SLIP MEMORY  DAY | 5.21 | PDY | | 44.65 | 232.63 |
| | 12/03/2009 - 12/08/2009 | | | | | |
| | (5.21 Days)/R1200 | | | | | |
| 580541 | HIGH SPEED  1000Hz  DRILLING DYNAMICS DAY | 5.21 | PDY | | 89.30 | 465.25 |

PAGE 4 OF  9

HAL_0047966

INVOICE

# HALLIBURTON
Halliburton Energy Services, Inc.

| Confirmation | |
|---|---|
| Reference Doc. No. | Date |
| 96613577 | 12/16/2009 |

## Sperry Drilling Services

| Matl. No. | Description | QTY | U/M | Min Charge | Unit Price | Amount |
|---|---|---|---|---|---|---|
| | 12/03/2009 - 12/08/2009 | | | | | |
| | (5.21 Days)R1200 | | | | | |
| 424482 | AGR-AZIMUTHAL GAMMA RAY 8 DAY | 5.21 | PDY | | 633.14 | 3,298.66 |
| | 12/03/2009 - 12/08/2009 | | | | | |
| | (5.21 Days)R1200 | | | | | |
| 580307 | AZIMUTHAL GAMMA RAY 4 SECTOR DAY | 5.21 | PDY | | 633.14 | 3,298.66 |
| | 12/03/2009 - 12/08/2009 | | | | | |
| | (5.21 Days)R1200 | | | | | |
| 580458 | 8 EWR-M5 ADVANCED RESISTIVITY  DAY | 5.21 | PDY | | 1,562.75 | 8,141.93 |
| | 12/03/2009 - 12/08/2009 | | | | | |
| | (5.21 Days)R1200 | | | | | |
| 580464 | EWR-M5 TRANSMISSION SYSTEM  DAY | 5.21 | PDY | | 1,562.75 | 8,141.93 |
| | 12/03/2009 - 12/08/2009 | | | | | |
| | (5.21 Days)R1200 | | | | | |
| 580292 | HIGH DATA DENSITY PULSING I   DAY | 5.21 | PDY | | 320.59 | 1,670.27 |
| | 12/03/2009 - 12/08/2009 | | | | | |
| | (5.21 Days)R1200 | | | | | |
| 539421 | GEOTAP® 8   FORMATION TESTER DAY | 5.21 | PDY | | 6,697.50 | 34,893.97 |
| | 12/03/2009 - 12/08/2009 | | | | | |
| | (5.21 Days)R1200 | | | | | |
| 580492 | GeoTAP® Plus  - MULTIPLE DRAWDOWNS  DAY | 5.21 | PDY | | 1,179.65 | 6,145.98 |
| | 12/03/2009 - 12/08/2009 | | | | | |
| | (5.21 Days)R1200 | | | | | |
| 311351 | BAT  COMPRESS & SHEAR  8"  S | 3.81 | PDY | | 5,000.80 | 19,053.05 |
| | 12/08/2009 - 12/11/2009 | | | | | |
| | (3.81 Days)/STANDBY | | | | | |
| 307748 | MWD  NEGATIVE PULSE  8"  S | 8.00 | PDY | | 950.15 | 7,601.20 |
| | 12/08/2009 - 12/15/2009 | | | | | |
| | (7.81 Days) /STANDBY | | | | | |
| 580572 | PWD - ANNULAR - PUMPS ON/OFF - LOT S | 8.00 | PDY | | 107.16 | 857.28 |
| | 12/08/2009 - 12/15/2009 | | | | | |
| | (7.81 Days)/STANDBY | | | | | |
| 580578 | PWD - ANNULAR - RT & MEMORY  S | 7.81 | PDY | | 533.12 | 4,163.67 |
| | 12/08/2009 - 12/15/2009 | | | | | |
| | (7.81 Days)/STANDBY | | | | | |

PAGE 5 OF  9

Business Confidential

HAL_0047967

INVOICE

# HALLIBURTON
Halliburton Energy Services, Inc.

| Continuation | |
|---|---|
| Reference Doc. No. | Date |
| 96613577 | 12/16/2009 |

## Sperry Drilling Services

| Mat. No. | Description | QTY | U/M | Min Charge | Unit Price | Amount |
|---|---|---|---|---|---|---|
| 580536 | DRILLSTRING DYNAMICS DDS REAL-TIME   S <br> 12/08/2009 - 12/15/2009 <br> (7.81 Days)/STANDBY | 7.81 | PDY | | 140.20 | 1,094.96 |
| 580536 | DRILLSTRING DYNAMICS DDS REAL-TIME   S <br> 12/08/2009 - 12/15/2009 <br> (7.81 Days)/STANDBY | 7.81 | PDY | | 140.20 | 1,094.96 |
| 580532 | DRILLSTRING DYNAMICS DDS MEMORY   S <br> 12/08/2009 - 12/15/2009 <br> (7.81 Days)/STANDBY | 7.81 | PDY | | 140.20 | 1,094.96 |
| 580546 | STICK SLIP REAL-TIME   S <br> 12/08/2009 - 12/15/2009 <br> (7.81 Days)/STANDBY | 7.81 | PDY | | 35.72 | 278.97 |
| 580542 | STICK SLIP MEMORY   S <br> 12/08/2009 - 12/15/2009 <br> (7.81 Days)/STANDBY | 7.81 | PDY | | 35.72 | 278.97 |
| 580540 | HIGH SPEED 1000Hz DRILLING DYNAMICS S <br> 12/08/2009 - 12/15/2009 <br> (7.81 Days)/STANDBY | 7.81 | PDY | | 71.44 | 557.95 |
| 466315 | AGR-AZIMUTHAL GAMMA RAY 8 S <br> 12/08/2009 - 12/15/2009 <br> (7.81 Days)/STANDBY | 7.81 | PDY | | 506.33 | 3,954.44 |
| 580306 | AZIMUTHAL GAMMA RAY 4 SECTOR S <br> 12/08/2009 - 12/15/2009 <br> (7.81 Days)/STANDBY | 7.81 | PDY | | 506.33 | 3,954.44 |
| 580457 | 8 EWR-M5 ADVANCED RESISTIVITY   S <br> 12/08/2009 - 12/15/2009 <br> (7.81 Days)/STANDBY | 7.81 | PDY | | 1,250.20 | 9,764.07 |
| 580463 | EWR-M5 TRANSMISSION SYSTEM   S <br> 12/08/2009 - 12/15/2009 <br> (7.81 Days)/STANDBY | 7.81 | PDY | | 1,250.20 | 9,764.06 |
| 580291 | HIGH DATA DENSITY PULSING 1   S <br> 12/08/2009 - 12/15/2009 <br> (7.81 Days)/STANDBY | 7.81 | PDY | | 256.29 | 2,001.62 |
| 539424 | GEOTAP® 8   FORMATION TESTER  S <br> 12/08/2009 - 12/11/2009 <br> (3.81 Days)/STANDBY | 3.81 | PDY | | 5,358.00 | 20,413.98 |

PAGE 6 OF 9

Business Confidential

HAL_0047968

INVOICE

# HALLIBURTON

Halliburton Energy Services, Inc.

| Continuation | |
|---|---|
| Reference Doc. No. | Date |
| 96613577 | 12/16/2009 |

## Sperry Drilling Services

| Mat. No. | Description | QTY | U/M | Min Charge | Unit Price | Amount |
|---|---|---|---|---|---|---|
| 580491 | GeoTAP® Plus - MULTIPLE DRAWDOWNS  S | 3.81 | PDY | | 943.01 | 3,592.87 |
| | 12/08/2009 - 12/11/2009 | | | | | |
| | (3.81 Days)/STANDBY | | | | | |
| 315215 | LLWD/MWD SERVICES | 1.00 | JOB | | | |
| 310941 | MWD  SURFACE UNIT HOLDING CHARGE DAY | 15.00 | PDY | | 2,679.00 | 40,185.00 |
| | 12/01/2009 - 12/15/2009 | | | | | |
| 321824 | DOWNHOLE SCREEN  9-1/2"  DAY | 15.00 | PDY | | 223.25 | 3,348.75 |
| | 12/01/2009 - 12/15/2009 | | | | | |
| | R1100 | | | | | |
| 321824 | DOWNHOLE SCREEN  9-1/2"  DAY | 15.00 | PDY | | 223.25 | 3,348.75 |
| | 12/01/2009 - 12/15/2009 | | | | | |
| | R1000. 1200 | | | | | |
| 580524 | IN-LINE MANDREL STABILIZER 8  S | 2.08 | PDY | | 50.01 | 104.02 |
| | 12/02/2009 - 12/04/2009 | | | | | |
| | (2.08 Days) Shipped | | | | | |
| 580527 | IN-LINE MANDREL STABILIZER 9-1/2  DAY | 1.90 | PDY | | 66.08 | 125.55 |
| | 12/01/2009 - 12/02/2009 | | | | | |
| | (1.90 Days)R1100 Ship | | | | | |
| 580527 | IN-LINE MANDREL STABILIZER 9-1/2  DAY | 1.90 | PDY | | 66.08 | 125.55 |
| | 12/01/2009 - 12/02/2009 | | | | | |
| | (1.90 Days) R1100 Ship | | | | | |
| 580524 | IN-LINE MANDREL STABILIZER 8  S | 2.08 | PDY | | 50.01 | 104.02 |
| | 12/02/2009 - 12/04/2009 | | | | | |
| | (2.08 Days) Shipped/STANDBY | | | | | |
| 580524 | IN-LINE MANDREL STABILIZER 8  S | 1.98 | PDY | | 50.01 | 99.02 |
| | 12/01/2009 - 12/03/2009 | | | | | |
| | (1.98 Days)/STANDBY | | | | | |
| 580524 | IN-LINE MANDREL STABILIZER 8  S | 1.98 | PDY | | 50.01 | 99.02 |
| | 12/01/2009 - 12/03/2009 | | | | | |
| | (1.98 Days) Shipped/STANDBY | | | | | |
| 580527 | IN-LINE MANDREL STABILIZER 9-1/2  DAY | 5.21 | PDY | | 66.08 | 344.28 |
| | 12/03/2009 - 12/08/2009 | | | | | |
| | (5.21 Days)R1200 Ship | | | | | |
| 580527 | IN-LINE MANDREL STABILIZER 9-1/2  DAY | 5.21 | PDY | | 66.08 | 344.28 |

PAGE 7 OF 9

Business Confidential

HAL_0047969

# INVOICE

# HALLIBURTON

Halliburton Energy Services, Inc.

| | Continuation | |
|---|---|---|
| Reference Doc. No. | Date |
| 96613577 | 12/16/2009 |

## Sperry Drilling Services

| Mat. No. | Description | QTY | U/M | Min Charge | Unit Price | Amount |
|---|---|---|---|---|---|---|
| | 12/03/2009 - 12/08/2009 | | | | | |
| | (5.21 Days) RJ200 | | | | | |
| 580524 | IN-LINE MANDREL STABILIZER 8  S | 3.79 | PDY | | 50.01 | 189.54 |
| | 12/08/2009 - 12/11/2009 | | | | | |
| | (3.79 Days) Shipped/STANDBY | | | | | |
| 580524 | IN-LINE MANDREL STABILIZER 8  S | 7.79 | PDY | | 50.01 | 389.58 |
| | 12/08/2009 - 12/15/2009 | | | | | |
| | (7.79 Days)/STANDBY | | | | | |
| 580524 | IN-LINE MANDREL STABILIZER 8  S | 10.00 | PDY | | 50.01 | 500.10 |
| | 12/02/2009 - 12/11/2009 | | | | | |
| | (10.0 Days) Shipped/STANDBY | | | | | |
| 580524 | IN-LINE MANDREL STABILIZER 8  S | 14.00 | PDY | | 50.01 | 700.14 |
| | 12/02/2009 - 12/15/2009 | | | | | |
| | (14.0 Days)/STANDBY | | | | | |
| 315211 | PERSONNEL CHARGES | 1.00 | JOB | | | |
| 308238 | SENIOR MWD ENGINEER DAY | 15.00 | PDY | | 1,071.54 | 16,073.10 |
| | 12/01/2009 - 12/15/2009 | | | | | |
| 308082 | PERSONNEL ADDITIONAL LWD ENGINEER DAY | 15.00 | PDY | | 714.40 | 10,716.00 |
| | 12/01/2009 - 12/15/2009 | | | | | |
| 302386 | GEO-PILOT®  ENGINEER DAY | 11.00 | PDY | | 1,786.00 | 19,646.00 |
| | 12/01/2009 - 12/11/2009 | | | | | |
| 307642 | ROUNDING ISSUE | 1.00 | PDY | | -0.02 | -0.02 |
| | INVOICE SUBTOTAL | | | | | 339,191.86 |
| | INVOICE AMOUNT | | | | | 339,191.86 |
| | INVOICE TOTAL | | US Dollars | | | 339,191.86 |

PAGE 8 OF  9

Business Confidential

HAL_0047970

INVOICE

# HALLIBURTON
*Halliburton Energy Services, Inc.*

| Continuation | | |
|---|---|---|
| Reference Doc. No. | | Date |
| 96613577 | | 12/16/2009 |

## Sperry Drilling Services

| Mat. No. | Description | QTY | U/M | Min Charge | Unit Price | Amount |
|---|---|---|---|---|---|---|
| | | | | | | |

*Payment terms:*

*If Customer does not have an approved open account with Halliburton, all sums are payable in cash at the time of performance of services or delivery of equipment, products, or materials. If Customer has an approved open account, invoices are payable based upon the payment terms stated on this invoice or as otherwise stated in the applicable Halliburton contract governing performance or delivery. Customer agrees to pay interest on any unpaid balance from the date payable until paid at the highest lawful contract rate applicable. In the event Halliburton employs an attorney for collection of any amount, Customer agrees to pay all reasonable and necessary attorney fees to recover the unpaid amount, plus all collection and court costs.*

*Customer Financial Services Contact:*
*Patricia Bartkowiak   Phone: 281-575-4370*
*        E-mail: Patricia.Bartkowiak@Halliburton.com*

PAGE 9 OF 9

Business Confidential

HAL_0047971

# EXHIBIT B

From: Mark Traylor
Sent: Tuesday, January 19, 2010 4:37 PM
To: Tim Probert - President, Global Business Lines & Corp. Development; James Bement - VP
 Sperry PSL; Jonathan Lewis - Senior VP D&E
Subject: RE: BP Performance Guarantee

Investigation and understanding of facts remain underway.

Summary:
- A guarantee was provided to BP on the DW Horizon rig regarding Sperry's drilling of the Kodiak #2 well, such that Sperry would guarantee a 98% operational efficiency for the well and if such OE was not achieved Sperry would compensate BP for rig time up to the amount of the cost of all of Sperry services in well.
- Through December year end, Sperry has invoiced and/or accrued revenue of $5.5 million. This week Sperry has determined the OE commitment will not be maintained and estimate the credit due BP to be approximately $3.1 million.

Policy Issue:
- The primary concern is the guarantee represents a contract change to MSA greater than $5 million and should have gone through the contract approval system (CAS). Viewed as a side agreement / change in current T&C's which did not follow Company Policy(s), etc.

Commercial Issue:
- We were getting run off the rig, therefore PSL took a calculated risk, which is fine. Yet, should have followed policy!!!
- We have $5.5 million revenue thus far. Assuming $6 million total revenue to complete and 22% FBOI margin in GOM, profit would have been $1.32 million, less $3.1 million penalty, estimated net cost to HAL $1.78 million.
- Sperry does not provide such guarantees historically. Yet, understand this guarantee will remain in play on the next BP well drilled on the DH Horizon, should Sperry retain the opportunity.

Revenue recognition Issue:
- When a company provides a guarantee, a potential unknown liability is assumed for the future satisfaction of warranty / guarantee and a reserve should be accrued based on known trends / historical experiences (ie 3-5% of sales). When a company has no reliable trend / historical experience, then all revenue is deferred until warranty period / guarantee is expired / known. Therefore, the potential for deferring total revenue is in question.
- Current thinking, Sperry is gathering data by tool type / dept / pressure / etc. to determine experience of how often NPT is greater than 2% vs total OT, by job and/or tool, in order to determine if a meaningful experience rate can be determined and then applied to this job and any other job which has a guarantee of this nature in order to set up an estimated reserve accrual in 4Q, thereby mitigating the need to defer all revenue until job is complete.
- Sperry, GOM, Stephanie and accounting research are currently working the issue.

Regards,
Mark

---

From: Tim Probert - President, Global Business Lines & Corp. Development
Sent: Monday, January 18, 2010 6:18 PM
To: James Bement - VP Sperry PSL; Jonathan Lewis - Senior VP D&E
Cc: Mark Traylor
Subject: BP Performance Guarantee

I understand that we cannot record revenue for BP horizon in Q4 or any subsequent work contracted in a similar manner. So, the impact will be equivalent to the revenue.  Mark, can you provide us with a synopsis please.

Tim

Business Confidential


EXHIBIT NO: 2003

HAL_0048470

Tim Probert
President
Global Business Lines and Corporate Development
Halliburton
3600 North Sam Houston Parkway
Houston, TX 77032
281 418 2843

Business Confidential

HAL_0048471

EXHIBIT C

| | |
|---|---|
| 'rom: | Jim Grier |
| Sent: | Tuesday, January 19, 2010 5:25 PM |
| To: | Dave Abernathy; Joe Foster; Richard Vaclavik; Jan Erik Klungtveit; George Sutherland; James Bement - VP Sperry PSL |
| Subject: | RE: Contractual Side Agreements |
| Attachments: | BP #2 Horizon.docx; BP Horizon Bement.pdf |

Dave,

    As I was a large participant in this, the original letter was signed by me.  I will take ownership of the idea as well.  This was done with the expressed consent and knowledge of Jan Erik, James Bement, Tony Angelle, and I believe Richard Vaclavik.  The group agreed to the letter, and I was the one charged with drafting and sending.  Subsequent to sending the original, BP asked for an officer of the company to sign the letter and agreement.  This was done, and is attached.  Kelly's email infers this was done by BD without agreement within the PSL and Region.  This is not the case.

    I do admit to not creating another CAS for this.  However, another CAS was never discussed by any of the members involved in the decision.  As you can imagine, we were more focused on any method that would retain the work, and a CAS is a detail that has to remain in our attention.  This is the only agreement I am aware of we have made. I also understand the implications this has on reporting revenue, and in reality, I did not think of it.  Please rest assured if we do contemplate agreements of this manner and magnitude, it will not be made without agreement with upper management.

    If you have any questions, please let me know.

Thanks,

Jim Grier
Halliburton
Sperry Drilling Services
US Sales Manager
 81-871-4663 (O)
713-503-9185 (C)

**From:** Dave Abernathy
**Sent:** Monday, January 18, 2010 10:04 PM
**To:** Eric Williams - CRLT; Joe Foster; Richard Vaclavik; Chris Gatjanis
**Cc:** Jim Grier
**Subject:** Contractual Side Agreements
**Importance:** High

FYI, Just a heads up and question on whether or not you are aware of any agreements with a customer where we provide a 'guarantee' on our work, in other words we would give credit back based on some defined threshold; in the example below credit back for Non Productive Time that can be traced to our services.

The issue below I think is GOM/Sperry for BP. The issue would be how and when to recognize the revenue.

Let me know ASAP if you are aware of anything. I should have more details tomorrow.

Thanks.
**Dave Abernathy**
**F&A Mgr-Southern Region, Houston, Tx.**
**Office 281-575-4190**
**Cell 281-433-0115**

**From:** Kelly Youngblood
**Sent:** Monday, January 18, 2010 8:49 PM
**To:** Randy Smith; Dave Abernathy; Jay Bradford; Ricardo Monnerat; Kyle Pounds

Business Confidential



EXHIBIT NO. 2004

HAL_0048472

**Subject:** Contractual Side Agreements
**Importance:** High

`uys,

An issue has popped up in the Western Hemisphere where BD for one of the PSL's signed a letter with a customer agreeing to a 100% rebate on services performed up to the amount of rig NPT if defined operational efficiencies were not achieved.  Essentially this is an addendum to the original contract T&C's and should have went through the CAS system for approval.  A warranty/guarantee of this type has revenue recognition issues and in this particular case the revenue should have been deferred until our obligation to the customer was completed.

I believe Millicent intends to discuss this issue during tomorrow's staff conference call.  You can expect her to ask everyone to discuss this issue with your respective VP's, PSL mgrs and BD to make sure this is an isolated incident.  We are going to need a pretty quick turn-around on this so that any adjustments can be recorded before we release earnings next Monday.  I don't expect for there to be many, if any more of these types of transactions out there but the question needs to be asked.  **You may want to particularly look in more detail at PSL's that have maybe had recent service quality issues and are trying to maintain relationships with our customers.**

Give me a call if we need to discuss any concerns or questions.

Thanks,

**Kelly Youngblood**
HALLIBURTON
Western Hemisphere - Director of Finance
10200 Bellaire Blvd. | Houston, TX 77072
Office: 281.575.3693 | Cell: 281.546.2309 | e-fax: 281.575.5589
kelly.youngblood@halliburton.com

# EXHIBIT D

# HALLIBURTON

*Halliburton Energy Services, Inc.*

## Sperry Drilling Services

| Comp. Reg. No. | : | NIF 73-0271280 |
|---|---|---|
| VAT / GST No. | : | |

## CREDIT MEMO
### ( For Processing Only - DO NOT PAY )

No. 96734819 - 02/19/2010

**Direct Correspondence To:**
PO BOX 3647
LAFAYETTE
70502-3647-LAFAYETTE-LA
USA
Telephone: 800-444-7830
Fax: 337-572-4725

**Ship to Address:**
BP G24102 2,MC727
G24102 2
MC727
BP
MISSISSIPPI CANYON 727
GOLDEN MEADOW LA 70357
USA

| Customer Number | ZSPO Reference Number |
|---|---|
| 358465 | 6607463 |

| Job Location | Manual Ticket No. | Date |
|---|---|---|
| | INV-96613577 | 04/07/2009 |

| Shipping Point | Purchase Order No. | Date |
|---|---|---|
| 4607 Highway 90 - Broussard | 4300000580 | |

| Customer Contact | Sales Order No. | Date |
|---|---|---|
| DIEGO NASCIMENTO | 6105614 | 02/19/2010 |

| Customer Contact Phone No. | Quote No. | Date |
|---|---|---|

**Credit To:**
BP AMERICA PROD CO-SORAC/GOM EBIZ
ATTN:  SCANNING DEPT. S646
PO BOX 22024 - DO NOT MAIL
TULSA OK 74121-2024
USA

| Rig Name | Contract No. | : |
|---|---|---|
| DEEPWATER HORIZON | From | : |
| Shipping Partial/Complete | To | : |
| Partial | Accumulated Value : | |
| Ultimate Destination Country | Payment Terms | |
| USA | | |

| Mat. No. | Description | QTY | U/M | Min Charge | Unit Price | Amount |
|---|---|---|---|---|---|---|
| 315215 | LLWD/MWD SERVICES | 1.00 | JOB | | | |
| | *JOB ADJUSTMENT ISSUED AGAINST INVOICE 96613577* | | | | | |
| | *DATED 12/16/09  DUE TO 111 HOURS OF NPT AS PER* | | | | | |
| | *PERFORMANCE GUARANTEE DATED AUGUST 5,2009.* | | | | | |
| | *CALULATED USING A WEIGHTED HOURLY RIG COST* | | | | | |
| | *PULLED FROM CUSTOMER'S DIMS REPORTS.* | | | | | |
| | *X9000JP-D:INTI:  AGENT: M.R. SEPULVADO;* | | | | | |
| | *HAL. REP. BERT STREETMAN 1-800-444-7830;* | | | | | |
| 307700 | JOB ADJUSTMENT L_MWD | 1.00 | EA | | 1,811,797.50 | 1,811,797.50 |
| | CREDIT MEMO SUBTOTAL | | | | | 1,811,797.50 |
| | CREDIT MEMO AMOUNT | | | | | 1,811,797.50 |
| | CREDIT MEMO   WE CREDIT THIS AMOUNT | US Dollars | | | | (1,811,797.50) |

PAGE 1 OF 2

EXHIBIT NO. 2005

HAL_0047951

CREDIT MEMO

# HALLIBURTON
Halliburton Energy Services, Inc.

| Continuation | |
|---|---|
| Reference Doc. No. | Date |
| 96704819 | 02/19/2010 |

## Sperry Drilling Services

| Mat. No. | Description | QTY | U/M | Min Charge | Unit Price | Amount |
|---|---|---|---|---|---|---|
| | | | | | | |

*Payment Terms:*

*If Customer does not have an approved open account with Halliburton, all sums are payable in cash at the time of performance of services or delivery of equipment, products, or materials. If Customer has an approved open account, invoices are payable based upon the payment terms stated on this invoice or as otherwise stated in the applicable Halliburton contract governing performance or delivery. Customer agrees to pay interest on any unpaid balance from the date payable until paid at the highest lawful contract rate applicable. In the event Halliburton employs an attorney for collection of any amount, Customer agrees to pay all reasonable and necessary attorney fees to recover the unpaid amount, plus all collection and court costs.*

*Customer Financial Services Contact:*
*Patricia Bartkowiak    Phone: 281-575-4370*
*        E-mail: Patricia.Bartkowiak@Halliburton.com*

PAGE 2 OF 2

Business Confidential

HAL_0047952

# EXHIBIT E

# HALLIBURTON

10200 BELLAIRE BOULEVARD • HOUSTON, TX 77072 -5299

PHONE 281.988.2500 • TOLL FREE 877.717.7780

January 19, 2010

Mr. David Simms
BP America Inc.
200 Westlake Park Blvd
Houston, Texas  77079

RE:  Halliburton Sperry Drilling Guarantee

Dear Mr. Simms,

First let me express our appreciation for the opportunity on the recent Kodiak #2 well.  Although we were not able to perform to the level we expected, we were able to identify causes and solutions.  In an effort to demonstrate our confidence, we would like to extend the current offer made on the Kodiak #2 well to the Marcondo well. Again our companies have benefited from this alliance for the past four years, and we believe we have developed a strong team in order to accomplish the goals set forth by yourself and BP.

We are also keenly aware of the recent service levels we have provided and agree that this manner of service is not what Halliburton Sperry Drilling has built a track record of furnishing or what BP expects and deserves.

In recent meetings Halliburton Sperry Drilling has endeavored to be up front as to the causes, and has put forth solutions to eliminate occurrences of this nature in the future.  Halliburton Sperry Drilling is again confident these measures will be effective, and we are willing to put forth the following guarantee for your Marcondo well:

- Guarantee of 98% Operating Efficiency for the well
- Operating Efficiency is defined as (Below Rotary Hours – NPT)/Below Rotary Hours.  This agreement is limited to trips for failure and does not include downtime for rig and/or hole conditions.
- In the event our falls below this threshold, Halliburton Sperry Drilling will compensate BP for rig time up to the cost of all of our services in the well.
- If in the operations of drilling the Marcondo our operating efficiency becomes intolerable it will be BP's right to change service providers.
- Any credits due to BP as a result of operating efficiency will be settled at the end of the well, or in the event of replacement, at the end of service.

Our endeavor is to make this as simple and straight forward as possible.  Halliburton Sperry Drilling has made many promises in the past, and has always come through.  This offer is not made lightly.  We feel so strongly in our capabilities that the performance on the upcoming well will reestablish your trust and confidence, and supply yourself and Bp the level of service you deserve and expect.

Sincerely,


James Bement
Sperry Drilling
Halliburton Energy Services
Vice President

5179

**Exhibit No.**
**Worldwide Court**
**Reporters, Inc.**

Business Confidential

EXHIBIT F

From: Merv Swan
Sent: Thu Jan 28 18:09:35 2010
To: Gary Godwin; Jonathan Lewis - Senior VP D&E
Cc: Mark Richard
Subject: Re: Sperry Horizon again at risk
Importance: Normal
Attachments: image001.jpg

Great email draft Gary. While Barbara could easily reply with some very direct and even harsh direction knowing her nature and pressure to deliver, do not let us be discouraged.

Sperry and in particular James Bement have done everything they could in the past 10 months to keep this business. And we still have the business as a result!

While we still need to improve our performance and tool reliability, this Horizon challenge has given us essential experience which we are applying and BP GOM knows that.

There are huge pressures here within BP's matrix organization and externally from our competition. It is hard to predict the outcome but I am convinced we are doing all we can.

_____

**From:** Gary Godwin
**To:** Jonathan Lewis - Senior VP D&E; Merv Swan
**Cc:** Mark Richard
**Sent:** Thu Jan 28 17:26:55 2010
**Subject:** RE: Sperry Horizon again at risk

Jonathan – as requested.  Please feel free to amend or restate.  We all have different styles so let me know if you want to change the message and I will be happy to re-draft.  The important points for me are:

1)      Acknowledge BP's critical wells, that we understand their importance, and that Horizon is one of those.

2)      Our performance guarantee is extended in good faith to demonstrate alignment to the goals.

3)      We want to be distinctive to earn more of their business, and that we know that the Horizon is a key step along that path.

4)      We have put our best foot forward to ensure success.

5)      That this is important enough for us at the executive level to monitor and ask questions, and an invitation to call if she feels concerns have not been heard or acknowledged.

Merv – feel free to add or delete if you feel I missed the obvious.

5180

Exhibit No. _____
Worldwide Court
Reporters, Inc.

CONFIDENTIAL                                                                    HAL_1078684

*Dear Barbara,*

*Thank you for the opportunity to meet last week and to discuss BP's priorities for 2010. I understand the priority and importance of your critical wells and that the success of the Horizon is one, very important, element of that critical activity set. The performance guarantee provided for the Horizon is, in part, a reflection of our alignment though I appreciate the difference in the risk that we share.*

*Our goal is to be distinctive for BP. Of course that must begin with our performance on the next Horizon well. We are confident that we have the right capability, the right people, and that we have made the right adjustments to accomplish that first goal. I believe the actions we have taken begin to satisfy your GOM team; though we need to demonstrate through results.*

*I will actively monitor our progress, and only request that you call me if you have a concern.*

*Sincerely, ...*

Gary W. Godwin
Halliburton
Office: 281-575-5935
Cell   : 281-687-0201

_____

**From:** Jonathan Lewis - Senior VP D&E
**Sent:** Thursday, January 28, 2010 9:42 AM
**To:** Gary Godwin; Merv Swan; Mark Richard
**Subject:** RE: Sperry Horizon again at risk

Gary

Thx.  I am in back to back mtgs the next 48 hrs.  Pen me a brief note that would come from me to Barbara and I will review and send.

Regards, Jon

CONFIDENTIAL

HAL_1078685

**From:** Gary Godwin
**Sent:** Wednesday, January 27, 2010 11:42 AM
**To:** Jonathan Lewis - Senior VP D&E; Merv Swan; Mark Richard
**Subject:** RE: Sperry Horizon again at risk

Jonathan – just below this note is an email I sent to James, Jeff, et all last night. I fully concur with you that we are at a point where delivering on the next well(s) will have far more impact than anything we might communicate. That said, we always benefit from ensuring the right people in BP hear that their business has our attention. A brief note, or brief call, to Barbara would not hurt if there is any doubt.

Last week I introduced Jeff Miller to Pat O'Bryan. This meeting had been set for some time before the experience on this last well, but provided a good opportunity to speak with Pat briefly on the topic. Pat is VP GOM D&C. Additionally I met with John Sprague and David Simms last week. John is the Drilling Mgr for all of GOM and David is the DE Leader for Horizon. Mark Swift and Jim Dudley joined me for that meeting. They were encouraged that the 4 events all stem from the same root cause, that we have a handle on it, and know how to fix it. They also acknowledged our skin in the game so to speak and they know how important that is to both of us. As such, the most important communication with BP is keeping John and David informed of our progress on the solution (which we are doing), followed by delivering on this next well.

That below, provides a little more background on the pressure from Schlum and context for where we are today. I believe Barbara is rattling the saber (for reasons we all understand). We do not need to schedule a formal executive meeting, but a note to her reinforces awareness of involvement and attention this is getting within HAL if she has any doubt …

**From:** Gary Godwin
**Sent:** Tuesday, January 26, 2010 8:51 PM
**To:** Durel Bernard; James Bement - VP Sperry PSL; Jeff Miller - Sr. Vice President, Gulf of Mexico; Wayne Stein; Tony Angelle
**Cc:** Merv Swan
**Subject:** Sperry Horizon

Gentlemen,

CONFIDENTIAL

HAL_1078686

Please note that below via Durel in reference to a comment the Horizon Drilling Engineer's made to Skip. The reference to Barbara refers to Barbara Yilmaz, Group Vice President D&C. I am routing to you simply to keep everyone informed. We do not believe that there is anything new in this signal, including no change in the intent for Halliburton to drill the next well. A few points for context or historical reference:

- Schlumberger has been all over BP ever since we began to take significant volumes of work from them. In other words, there are elements of this pressure that are a dated by a year. That doesn't mean that we take it for granted or ignore it. They have been all over BP NAG as well; so again, this is a byproduct of Halliburton's success with BP (market share).

- The decision for who is performing BP's drilling work will reside with the asset, the BP GOM team. That said, BP global will more strongly influence the assets once their experience demonstrates a clear performance leader. There are enough data points that no one company really stands out in drilling performance (world wide) for BP. Therein is the opportunity for Halliburton; the flip side of that same coin is the risk.

- Regardless of who is providing drilling services, there comes a point where BP will be forced to change, even if the price is zero, if their ability to complete critical wells on time and budget is compromised. We have tested that decision point; however BP acknowledges and values our skin in the game.

We will close the loop with BP on that below, but through the asset and not through Barbara. I do not believe that there is a conversation that could be had with BP at this point that will dramatically influence their confidence. Our performance on this next well will have far more influence than anything that anyone could say. Jim D and his team are very confident that we understand the cause on this last well and how to fix it. BP also acknowledges that the problems were identical is a good thing, and that we are not trying to solve 3 different issues. I also believe that we have put our best foot forward, and that everything that can be done to improve has been done. The deck is stacked in our favor: dedicated tools, the best R&M leader, the replacement parts scrutiny, the test vessel, and clear line of sight on how to solve this last incident.

Again, the intent is to keep everyone informed given the sensitivity of this project. Glad to discuss if you feel that there is a different conversation or level of follow up needed with BP.

CONFIDENTIAL

HAL_1078687

Regards,

Gary W. Godwin
Halliburton
Office: 281-575-5935
Cell  : 281-687-0201

_____

**From:** Jonathan Lewis - Senior VP D&E
**Sent:** Wednesday, January 27, 2010 11:10 AM
**To:** Merv Swan; Mark Richard; Gary Godwin
**Subject:** RE: Sperry Horizon again at risk

I will happily do this.  But before I do so, Gary, any comments?

**From:** Merv Swan
**Sent:** Wednesday, January 27, 2010 11:10 AM
**To:** Jonathan Lewis - Senior VP D&E; Mark Richard; Gary Godwin
**Subject:** RE: Sperry Horizon again at risk
**Importance:** High

Gary should coach us here.  My thoughts are that a note from Jonathan to Barbara
acknowledging that we are aware of the issues and this always had our highest priority
would not hurt.   But we should not escalate any request to influence GOM, they make
their own decisions.

Be Safe and Regards,

Merv Swan

Vice President - BP Global Account Management

CONFIDENTIAL

HAL_1078688

281-935-9238 cell

281-575-3020 office

10200 Bellaire Blvd

Houston TX 77072

---

**From:** Jonathan Lewis - Senior VP D&E
**Sent:** Wednesday, January 27, 2010 11:04 AM
**To:** Mark Richard; Merv Swan
**Subject:** RE: Sperry Horizon again at risk

Mark, Merv

My feeling here is that it is not a case of Tim, Dave or myself talking to Barbara, but one of Sperry delivering the SQ they expect.  Thoughts?

Regards, Jon

---

**From:** Mark Richard
**Sent:** Tuesday, January 26, 2010 4:12 PM
**To:** Jonathan Lewis - Senior VP D&E
**Subject:** Fw: Sperry Horizon again at risk

I know James and his team have been all over this but do we need more visibility from you and/or Tim and/or DL to salvage?
Sent from Blackberry

CONFIDENTIAL                                            HAL_1078689

**From: Merv Swan**
**To:** Mark Richard
**Cc:** Gary Godwin
**Sent:** Tue Jan 26 15:14:18 2010
**Subject:** Sperry Horizon again at risk

Mark FYI. This is not the first time the competition has pushed BP executive.
At the end of the day, it is up to BP GOM and James Bement and Sperry have done all they can
to keep the business which as you know includes NPT credits.

Will keep you posted.

**From:** Durel Bernard
**To:** Gary Godwin; Merv Swan
**Sent:** Tue Jan 26 13:49:27 2010
**Subject:** Barbara Y

Gents,

As you know every time we have a run of failures on the Horizon with Sperry, the team (John
Guide & David Sims) lets us know they are getting heat from up above. John told Skip that heat
is being applied by Barbara. Evidently Schlumberger execs are working her as they get reports
from their in-house folks about the problems we are having, trying to get her to force a change
out. I told Skip I would alert you.

Du

CONFIDENTIAL                                                    HAL_1078690

# EXHIBIT G

1

1              UNITED STATES DISTRICT COURT

              EASTERN DISTRICT OF LOUISIANA

2

3  IN RE:  OIL SPILL      )   MDL NO. 2179

    by the OIL RIG,      )

4  DEEPWATER HORIZON in   )   SECTION "J"

    the GULF OF MEXICO,    )

5  April 20, 2010       )   JUDGE BARBIER

                       )

6                   )   MAG.  JUDGE

                   )   SHUSHAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22            Videotaped deposition of SKIP

    CLARK, taken at Hilton Hotel, 333 St. Charles

23  Avenue, 5th Floor, New Orleans, Louisiana,

    70130, on the 29th of July, 2011.

24

25

**PURSUANT TO CONFIDENTIALITY ORDER**

1          A.      Correct.

2          Q.      Now, may I stop there a minute

3   and ask you, if you at Halliburton/Sperry had

4   not provided the guarantee, were you being

5   told by BP they didn't want you anymore to

6   service them?

7          MS. SPIEGELMAN:  Object to form.

8          A.      No.  We -- we had no -- BP had

9   never stated that to us.

10          Q.      What were they telling you that

11   made you feel like you had to provide this

12   guarantee?

13          MS. SPIEGELMAN:  Object to form.

14          A.      We knew historically over

15   several different projects that the HORIZON

16   was involved in, that there were some, you

17   know, some operational issues, downhole tool

18   failures, both with directional drilling

19   equipment, rotary steerables, as well as LWD

20   equipment.  Mudlogging was not a part of any

21   of those failures.

22                At the time I knew, and I was

23   informed, that they were bringing our

24   competitors in to give presentations on

25   capability, and I knew that our status on the

**PURSUANT TO CONFIDENTIALITY ORDER**

1    rig was in jeopardy, even though I was never

2    directly -- it was never directly told to me

3    that we were being replaced, but we felt that

4    something had to be -- happen to protect

5    our -- our position on the DEEPWATER HORIZON.

6         Q.    You mentioned to us, I believe I

7    understood you correctly, you tell me if I'm

8    wrong, that you didn't think that the

9    problems Sperry had encountered related to

10   mudlogging, they were instead downhole LWD

11   services.

12        A.    I know for a fact --

13        Q.    Right.

14        A.    -- that the problems that this

15   performance guarantee arose from were not

16   mudlogging related issues.

17        Q.    But then this guarantee applies

18   to mudlogging, does it not?

19        A.    No, this guarantee did not apply

20   to mudlogging.

21        Q.    It only applied to LWD services?

22        A.    It only applied to directional

23   drilling and LWD services, downhole tools.

24        Q.    Okay.  In the next bullet it

25   says, if during the course of drilling

**PURSUANT TO CONFIDENTIALITY ORDER**

1      A.      One, I believe that they had --

2   BP did not want to incur the additional

3   charges that they felt that the mudlogging

4   services that were being provided at the time

5   were adequate.

6      MS. SPIEGELMAN:  Object to the form of

7   the answer.

8      Q.      There was some testimony and

9   questions this morning about the non -- or

10   the NPT guarantee with respect to the Kodiak

11   well; is that right?

12      A.      Correct, Kodiak II.

13      Q.      Kodiak number 2.

14              And can you explain to me, in

15   brief, how that guarantee came about?

16      A.      That guarantee came about

17   through a series of -- of projects that we

18   were on the HORIZON, having some downhole

19   tool issues, some failures, and some high NPT

20   on wells prior to Kodiak II.

21              We understood that BP was

22   looking at potentially replacing our

23   services, our directional drilling and LWD

24   services, and that they had sought our

25   competitors to come in and -- and give, you

**PURSUANT TO CONFIDENTIALITY ORDER**

1    know, competency or capability presentations.

2              We felt that this -- that this

3    proposal was necessary to retain our services

4    on the DEEPWATER HORIZON.

5         Q.    Were any of those issues with

6    respect to mudlogging services provided by

7    Sperry?

8         A.    No.

9         Q.    What was the specific proposal

10   offered to BP to address those concerns you

11   mentioned?

12        A.    A 98 percent operating

13   efficiency, and any NPT beyond that

14   98 percent, that we would refund.

15        Q.    Was that offer limited to a

16   certain rig, a certain well, certain

17   operations?

18        A.    It was limited to the DEEPWATER

19   HORIZON, specifically for the Kodiak II well.

20        Q.    Okay.  Now, I think I heard you,

21   at a couple points this morning, mention that

22   it did not apply to the Macondo well; is that

23   right?

24        A.    That is correct.

25        Q.    What -- why do you have that

**PURSUANT TO CONFIDENTIALITY ORDER**

1    understanding?

2         A.      That understanding came through

3    a conversation that I had with Mr. John Guide

4    prior to the mobilization of the DEEPWATER

5    HORIZON to Mississippi Canyon 252, where I

6    asked him if we needed to continue the

7    service guarantee that we had provided on the

8    Kodiak II.

9              And his answer to me at that

10   time -- well, his answer to me was, no, he

11   did not see it necessary that we continue the

12   performance guarantee on to the Macondo well.

13        Q.      In response to some of

14   Ms. Spiegelman's questions, she was asking

15   you about the staffing levels and the number

16   of mudloggers on site and whether there's

17   more -- or what their general

18   responsibilities are.

19              Do you generally recall that

20   conversation?

21        A.      Yes.

22        Q.      Who decides how many mudloggers

23   are staffed on a rig, as you understand it?

24        A.      Contractually now, that is --

25   that is to our discretion, the Sperry's

**PURSUANT TO CONFIDENTIALITY ORDER**

EXHIBIT H

01-38050
EAF/dlr

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL by the OIL RIG            )        MDL NO. 2179
"DEEPWATER HORIZON" in the                 )
GULF OF MEXICO, on                         )        SECTION: J
APRIL 20, 2010                             )
                                           )        JUDGE BARBIER
                                           )
                                           )        MAG. JUDGE SHUSHAN

## *CONFIDENTIAL*

### *WorldwideVIEW*™
**Interactive Deposition Digital Display**

ORAL AND VIDEOTAPED DEPOSITION OF:



# James Russell Bement
### VOLUME 1

SEPTEMBER 20, 2011

## *COPY*



*Systems Technology for the Litigation World*

Litigation Group★Court Reporting★Video Production★Videoconferencing
**For U.S. & International Services**
**800 - 745 - 1101**

1          Again, you have to tie that to the

2  technology that we were developing specifically

3  for deepwater environments and specifically with

4  BP.  So the performance was really related to

5  that -- that new cutting-edge technology.

6      Q.  (By Mr. Palmintier) Well, there were a

7  number of -- in Kodiak there were a number of

8  problems that arose as a result of that

9  technology that cost BP time as far as BP was

10 concerned, correct?

11     A.  There were some trips for failure, yes,

12 sir, nonproductive time.

13     Q.  And then the nonproductive time was a

14 subject of discussion among the BP hierarchy that

15 actually arranged its contract with your company,

16 wasn't it?

17     A.  Yes, sir.  The -- again, the industry was

18 moving into an environment that was much deeper,

19 much higher pressure.  We had recently developed

20 a new technology.  We had investment, I would

21 estimate, around $30 million to develop tools

22 that would survive at 30,000 psi.

23          These were -- these were new wells.  In

24 fact, on the Tiber Well prior to the Kodiak, I

25 believe BP and Sperry -- I believe it's still a

**PURSUANT TO CONFIDENTIALITY ORDER**

1   record -- we had reached a total depth somewhere

2   around 35,000 feet and in excess of 30,000 psi.

3   So the technology had worked very well in a

4   certain hole size, six and three-quarter.  The

5   issues that we had both on Tiber and on Kodiak

6   were driven around the 8-inch tools technology

7   that was related to pressure or leaks related to

8   O-rings.

9         So it was cutting-edge technology, and

10  that -- that was really the -- the challenge.

11  These are very deep wells, very expensive

12  environments.

13     Q.  Yes.

14     A.  So the need for non -- the reduction or

15  to minimize nonproductive time was a huge

16  challenge for -- for both BP and -- and for the

17  industry at those depths.

18     Q.  Yes.

19     A.  So the performance contract, if that's

20  what you're alluding to, is really tied to

21  reduction of nonproductive time relative to those

22  technologies.

23     Q.  Okay.  Well, I do have some questions

24  about that, but I --

25     A.  Yeah.

**PURSUANT TO CONFIDENTIALITY ORDER**

1    Q.   You have a book in front you that we've

2  provided.   Would you turn to Tab 5.

3              MR. PALMINTIER:   I'm not aware of

4  whether or not this has been made an exhibit, and

5  so I'll just give it the next exhibit number and

6  apologize for duplicating it.   And that would be

7  5179.

8              (Exhibit No. 5179 marked.)

9    Q.   (By Mr. Palmintier) A January 19th

10  letter, do you see that?

11    A.   Yes, sir.

12    Q.   And it's under your signature,

13  "Sincerely, James Bement," correct?

14    A.   Yes, sir.

15    Q.   All right.   This is -- is this the first

16  embodiment of what we'll call the "guarantee of

17  98 percent operating efficiency" that you know

18  of?   And by "embodiment" of it, I mean, it's in

19  writing, and it was sent under the Halliburton

20  letterhead and your signature to David "Simms,"

21  in January of 2010.

22    A.   (Reviewing Exhibit 5179.) Whether there's

23  been some minor changes to this document, this is

24  not the one that has my signature on it.   So I

25  couldn't say this is the final document that was

**PURSUANT TO CONFIDENTIALITY ORDER**

1    sent.  The -- the final would have my signature

2    on it.

3        Q.  Okay.

4        A.  It would --

5        Q.  This was provided by your employer as a

6    document, and you've looked at this document

7    before, correct?

8        A.  Yes, sir.  But I do know there is a -- a

9    copy of the actual document that -- that has my

10   signature on it.  So whether there's typos or

11   corrections or wordsmithing that occurred, but

12   this -- this document reflects the general

13   content of, I believe, the one I did sign.

14       Q.  Okay.

15       A.  But I do know that the one I signed,

16   obviously, would be the letter of record, I would

17   assume.

18       Q.  You've had a chance to review it here as

19   we sit here today, and you -- and you are now

20   testifying that that is substantially the same as

21   the one you signed?

22       A.  I believe -- yes, I believe it

23   reflects --

24       Q.  Have you actually seen the one with your

25   signature on it, Mr. Bement?

**PURSUANT TO CONFIDENTIALITY ORDER**

1     A.   Yes, sir.

2     Q.   When?

3     A.   I reviewed it with lawyers yesterday.

4     Q.   Okay.  So they had it physically in their

5  possession?

6     A.   Yes, sir.

7     Q.   The one that was signed?

8     A.   Yes, sir.

9     Q.   All right.  The -- would you read for me

10 into the record the introductory paragraph to the

11 bullet points where it begins "In recent

12 meetings"?

13    A.   I'm sorry, the -- oh, the third

14 paragraph?

15    Q.   Yes.

16    A.   "In recent meetings

17 Halliburton...Drilling has endeavored to be up

18 front as to the causes, and has put forth

19 solutions to eliminate occurrences of this nature

20 in the future.  Halliburton Sperry Drilling is

21 again confident these measures will be effective,

22 and we are willing to put forth the following

23 guarantee for your" Macondo "well."

24    Q.   All right.  Would you read the bullet

25 points, please?

**PURSUANT TO CONFIDENTIALITY ORDER**

1    A.   Can I -- I'm sorry, can I make a comment?

2    Q.   Sure.

3    A.   This is -- now I see the Macondo.  There

4  was no Performance Agreement for Macondo, so this

5  was never agreed to by the parties.  So the

6  Performance Agreement was for the Kodiak.

7    Q.   Okay.  So this document was never sent;

8  is that your testimony?

9    A.   I don't believe this one was sent.  I

10  honestly don't recall.  It doesn't have my

11  signature, but we did not have a Performance

12  Agreement with Macondo.

13    Q.   Well, so --

14    A.   The Performance Agreement --

15    Q.   -- any testimony to the contrary would be

16  incorrect that other witnesses have given, or

17  could you be mistaken about that?

18    A.   We did not have a Performance Agreement

19  with the Macondo per conversations.  I'd ask Skip

20  Clark to speak specifically with Mr. Guide.

21    Q.   Yes.

22    A.   I think Mr. Guide confirmed there would

23  be no Performance Agreement on the Macondo Well.

24  So this document specific to Macondo is really

25  not in place and doesn't reflect my signature.

**PURSUANT TO CONFIDENTIALITY ORDER**

1   compensate BP for rig time up to the cost of all

2   of our services in the well."

3        "If in the operation of drilling the

4   Macondo our operating efficiency becomes

5   intolerable it will be BP's right to change

6   service providers."

7        "Any credits due to BP as a result of

8   operating efficiency will be settled at the end

9   of the well, or in the event of replacement, at

10  the end of" the "service."

11     Q.  Okay.  Your testimony is that this

12  Agreement that never got sent was in place on the

13  Kodiak, correct?

14     A.  Yes, sir.  Very similar to the bullet

15  points, to the parameters, yes, they would be

16  very similar.  That was the performance guarantee

17  for the Kodiak, that is correct.

18     Q.  Okay.  And tell me about the Kodiak

19  Project, if you recall.  Would you describe that

20  well?  It's another deepwater well?

21     A.  Yes, sir.  You have to look at the

22  sequence of events.

23     Q.  Yes.

24     A.  The Tiber Well was actually, as I recall,

25  the first well we had run the 30,000 psi-rated

**PURSUANT TO CONFIDENTIALITY ORDER**

1    tools.   The Tiber Well, during this hole -- you

2    drill multiple hole sections so you use multiple

3    tool sizes.

4         Q.   Okay.

5         A.   The failures that had occurred on the

6    Tiber were in the 8-inch tool string.   The --

7    the 8-inch is typically the more robust because

8    of diameter, et cetera, and also would not

9    encounter the higher pressures that you would see

10   in the bottomhole section, which would be deeper.

11   The 6 and three-quarter tools had actually

12   performed very well, and it was --

13        Q.   On the Tiber?

14        A.   On the Tiber, and it was in that hole

15   section that -- where, as I mentioned earlier,

16   and I believe we set the record.   So it was our

17   belief that our technology was actually very

18   robust in that there was only a minor failure as

19   it related to flooding of tools in the 8-inch --

20   8-inch tools that we could resolve, thus, gave us

21   the confidence of going into an Operating

22   Efficiency Agreement that we could take the

23   testing and results from our six and

24   three-quarter tools at higher pressure, and we

25   could resolve the issues in the 8-inch.

**PURSUANT TO CONFIDENTIALITY ORDER**

1    It was also discussed there were some --

2  also some drilling-related nonproductive time

3  during Tiber.

4    During the discussion with Mr. Guide and

5  Mr. Sims, we talked about those would be more

6  related to, you know, the fundamental challenges

7  of drilling at this depth.

8    Mr. Guide pointed out that the Kodiak

9  Well would be -- would -- would probably have

10  more transitional-type rock environments, power

11  vibrations, et cetera, encountered to drilling.

12  And if you understand, vibrations can be -- can

13  be detrimental to the rest of the BHA as it

14  relates to electronics, et cetera.

15    We asked him at that time, then, would it

16  be possible for us to get the realtime drilling

17  parameters during the Kodiak so we could help

18  monitor and mitigate any vibrations to -- to make

19  that job more successful.

20    Q.  Yes.

21    A.  BP is -- is quite confidential in their

22  data, and so we didn't ask for any of the

23  formation evaluation data.  We just wanted access

24  to the drilling parameters.

25    Q.  Yes, sir.

**PURSUANT TO CONFIDENTIALITY ORDER**

1  asked you to look at Exhibit 2002, which is under

2  our Tab 3 in this convenience booklet.  And I

3  want you to turn to the third page to a letter

4  that has your signature on it, and I want you to

5  tell me whether that's the letter that you have

6  been referring to that you signed and you've been

7  referring to it in your previous testimony?

8      A.  Yes, sir.

9      Q.  All right.  And it is still your

10  testimony that the second letter, that the --

11  the -- the one that I introduced as Exhibit 5179,

12  was not ever sent and not ever entered into?

13      A.  I don't remember ever signing it,

14  because -- the answer would be yes, it was never

15  sent.

16      Q.  Okay.  But it was not -- isn't it true,

17  sir, that it was -- whether it was sent or not,

18  that the agreement that is embodied in Page 3 of

19  Exhibit 3 [sic], and in that letter that you

20  never sent, was in effect and was -- was

21  applicable to the Macondo Project?

22      A.  No, that's not correct.

23      Q.  Okay.

24      A.  We had -- we agreed, Mr. Guide and

25  Mr. Sims, that it would not be applicable to --

**PURSUANT TO CONFIDENTIALITY ORDER**

1   to Macondo.

2       Q.   Okay.  Now, you've had a chance to review

3   the document which is Exhibit 3 and --

4             THE COURT REPORTER:  "Tab."

5       A.   Tab 3.

6       Q.   (By Mr. Palmintier) Tab 3, Exhibit 2002,

7   and is it a fair summarization of the document

8   that it is the same as Exhibit 5179, except that

9   there's instead of "Macondo," the words "Kodiak

10  No. 2" in it?

11      A.   Document 5179?

12      Q.   (Tendering.)

13      A.   Oh, I'm sorry.

14      Q.   That's the exhibit number.

15      A.   Restate your question.  Are you asking if

16  this letter is the same as this?  Is that your

17  question?

18      Q.   Yes.  And you're referring to

19  Exhibit 3 -- I mean Exhibit 2002, Page 3, and

20  Exhibit 5179.

21            MR. BOWMAN:  Yeah.  Objection, form.

22      A.   (Reviewing documents.) It appears to be

23  the same letter with the exception of "Kodiak"

24  and "Macondo."

25      Q.   (By Mr. Palmintier) So that the

**PURSUANT TO CONFIDENTIALITY ORDER**

# EXHIBIT I

01-37561
TC

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | ) | MDL NO.  2179 |
| "DEEPWATER HORIZON" in the | ) | |
| GULF OF MEXICO,  on | ) | SECTION: J |
| APRIL 20, 2010 | ) | |
| | ) | JUDGE BARBIER |
| | ) | |
| | ) | MAG. JUDGE SHUSHAN |

## *CONFIDENTIAL*

## *WorldwideVIEW* ™
### Interactive Deposition Digital Display

ORAL AND VIDEOTAPED DEPOSITION OF:



# Thomas Roth

**VOLUME 1**

JULY 25, 2011

## *COPY*



*Systems Technology for the Litigation World*

Litigation Group♦Court Reporting♦Video Production♦Videoconferencing
**For U.S. & International Services**
**800 - 745 - 1101**

1    Q.  When you say "nothing," does that

2  mean that your position did not require

3  you to know anything but dollars and cents

4  on the sales?

5    A.  Once a month I had a performance

6  review with Richard Vargo in the Gulf of

7  Mexico.  I'm going to estimate Richard was

8  supervising probably 100 wells at one

9  time.  I would spend about 1 1/2 hours

10  with Richard in a monthly conference call

11  to where we would review all aspects of

12  our Gulf of Mexico performance, from head

13  count through financial analysis, through

14  any problem jobs, through any resource

15  requests that Richard may have to better

16  serve his customers.  That was a standing

17  conference call that was used as just part

18  of our performance management program.

19    Q.  During that time, did Richard tell

20  you about the problems that Halliburton

21  was having with the BP contract on the

22  Kodiak and then the Macondo?

23    A.  I was not aware of any problems on

24  the Kodiak contract.

25    Q.  Did he tell you about the problems

**PURSUANT TO CONFIDENTIALITY ORDER**

1   with the personnel and the equipment and

2   having to issue a nonproductive time

3   guarantee?

4        A.   No, sir.  But it's my

5   understanding later that that wasn't part

6   of the cementing product/service line.  My

7   understanding, that was part of the Sperry

8   business line.  That came out much later,

9   in a presentation that we provided to the

10  Energy and Commerce Commission in response

11  to questions by that group.

12       Q.   So you're saying the information

13  about having to guarantee the

14  nonproductive time --

15       A.   Is part of a second service line

16  that I'm not responsible for.

17       Q.   Okay.  And so the person who would

18  be responsible for the Sperry line is

19  whom?

20       A.   My peer over that line would be

21  James Bement.

22       Q.   B-E-M-E-N-T?

23       A.   Yes, sir.

24       Q.   And did you coordinate with him

25  the two -- two lines in some meeting --

**PURSUANT TO CONFIDENTIALITY ORDER**

1  raised -- it may have even been a document

2  that was forwarded to us with that

3  question, and then from that document it

4  was apparent that the credit was

5  associated with the Sperry MWD/LWD

6  services that had taken place on the

7  Kodiak well, and I think it was on one of

8  the earlier Kodiak wells, and based upon

9  that, I contacted my counterpart with

10  Sperry, James Bement, and asked for his

11  help to be able to identify the source of

12  the guarantee and the source of the

13  problems that had existed on that early

14  Kodiak well.

15      Q.  So as part of the investigation of

16  the issue of Halliburton having given a

17  guarantee of not more than 2 percent

18  nonproductive time, I guess you saw that

19  there had been 111 hours of nonproductive

20  time caused by Halliburton-Sperry

21  employees on the Kodiak number 2?

22          MR. HILL:  Object to form.

23      A.  On the MWD/LWD performance that

24  was provided on the Kodiak number 2, as I

25  recall, I think it was a 98 percent

**PURSUANT TO CONFIDENTIALITY ORDER**

1    credit was given of approximately $3.6

2    million because Halliburton had failed to

3    perform its services competently?

4              MR. MADIGAN:  Objection as to

5    form.

6              MR. HILL:  Object to form.

7         A.  We concluded from the

8    investigation that Halliburton did not

9    satisfy the 98 percent -- the less than

10   2 percent nonproductive time requirement

11   that Mr. Bement had stated as a

12   performance mark.

13        Q.  (BY MR. THORNHILL)  And that

14   included, did it not, failure of

15   Halliburton employees to detect kicks and

16   lost circulation events?

17             MR. HILL:  Object to form.

18             MR. MADIGAN:  Objection as to

19   form.

20        A.  It included nonproductive time

21   associated with the Sperry MWD/LWD

22   services.  The guarantee, as I recall, was

23   triggered from, you know, rotary-to-rotary

24   tripping of tools in and out of the well,

25   which would not be associated with any of

**PURSUANT TO CONFIDENTIALITY ORDER**

186

1    the MWD -- or excuse me, the surface data

2    logging aspects provided by Sperry.

3              I'm concluding today that that

4    guarantee was -- was focused on the

5    MWD/LWD portion of our work.  I'd have to

6    go back and read it specifically to give

7    you any more insight than that.

8         Q.  (BY MR. THORNHILL)  Okay.  So

9    other than reading information that

10    someone else gave you, you really don't

11    know what the guarantee was for, right?

12         A.  Repeat the question, please.

13         Q.  Other than reading information

14    that others gave to you and listening to

15    what others told you about the guarantee,

16    you really don't know anything about it,

17    right?

18         A.  That's correct.

19         Q.  And it's fair for me to say you

20    don't recall today exactly the scope of

21    the guarantee, correct?

22         A.  Not exactly, no.

23         Q.  And you don't know what events led

24    to the 111 hours of credit that was

25    considered downtime and the $3.6 million

**PURSUANT TO CONFIDENTIALITY ORDER**