UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179 SECTION: J(1) |
| This Document Applies to: All Cases | * * * * * | JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**ORDER AND REASONS**
**[Motion *in Limine* Set 1: Email Strings]**

Before the Court are letter briefs from the PSC (Rec. Doc. 4340-1, October 17, 2011; Rec. Doc. 4631, November 16, 2011; Second ltr. dated November 16, 2011; and Ltr. dated November 28, 2011); Transocean (Rec. Doc. 4560, November 10, 2011); Halliburton (Rec. Doc. 4567, November 11, 2011); Cameron (Rec. Doc. 4563, November 11, 2011); and BP (Rec. Doc. 4569, November 14, 2011; Ltr. dated November 23, 2011; and Rec. Doc. 4964, December 2, 2011). The briefs pertain to the first motion set, regarding the issue of admissibility of emails.

**BACKGROUND AND PROCEDURAL HISTORY**

In order to facilitate a timely resolution of evidentiary issues prior to the upcoming trial in February 2012, Magistrate Judge Shushan ordered the PSC to submit a list of 300 exhibits that would constitute a sample of documents that would present the full range of evidentiary issues to be encountered at trial. The PSC complied, presenting its "List of 300." Accordingly, the Magistrate Judge also issued an order with a schedule for BP's motions *in limine* and responses to

PSC issues (Rec. Doc. 4572). The order provides a briefing schedule for 13 categories of evidentiary issues. The first category is described as "BP and others to respond to PSC Letter Regarding 'E-Mail Strings Produced by Defendants.'" Rec. Doc. 4572, at 1. The issues pertain to the admissibility *vel non* of email strings proffered by the PSC.

## THE PARTIES' ARGUMENTS

The PSC argues that all of the email communications produced by the defendants are excepted from the hearsay ban by Federal Rule of Evidence 803(6), the "business records" exception. It argues that company email correspondence is created regularly by company employees as part of their business activity. It asserts that courts are increasingly taking a liberal view of emails as business records because email is the modern equivalent of the interoffice memorandum. The PSC cites examples of "mixed recipient" email correspondence (which includes employees of a producing defendant[1] as well as an outside party). It suggests that mixed recipient emails are admissible if they are created regularly, concern a business activity, and an employee of the producing defendant sent or received and maintained the correspondence with an outside employee. The PSC also argues that email correspondence is admissible under other theories: as adoptive admissions, where employees add text to received emails that they then forward to non-employees; as admissions by parties opponent, for all correspondence written by employees of a producing defendant or co-defendant; and as non-hearsay evidence of notice, knowledge, or state of mind of email recipients.

---

[1] The parties in their letter briefs apparently use the term "producing defendant" to refer to emails that are sent by employees or agents of a party who is a defendant in MDL 2179.

Transocean and Halliburton both responded to the PSC's initial letter brief. They object to the PSC's proposed blanket rule and seek a case-by-case consideration of emails. Transocean argues that the Court must examine whether it was an employee's business duty to make and maintain a particular email as part of his job duties and whether the employee routinely sent or received and maintained such an email. It argues that email from an outsider to a defendant presents multiple levels of hearsay; that merely forwarding an email does not constitute an employee's adoptive admission; and that for the party-admission exception to apply, there must be proof that a given statement falls within the scope of the employee's employment. Halliburton argues that emails should be treated like any other documents in determining their admissibility. It argues that the mere creation and maintenance of emails is not the regularly conducted business activity that triggers the business records exception; but, rather, the email must contain information that is kept in the course of a regularly conducted business activity. Cameron also submitted a letter brief in which it only argues regarding one particular email exchange.

BP, in reply to the PSC's initial letter brief, argues that although some email strings are admissible, others are not. BP argues that the business records exception does not apply to emails prepared primarily in anticipation of litigation and does not apply unless the employer imposed a business duty to make and maintain emails; that the witness required to establish the foundation for the business records exception must be familiar with the records-keeping system of the declarant;[2] and that emails that are excepted from the hearsay prohibition as party admissions are only admissible against the declarant. BP cites several examples of email exhibits that it claims fail to meet the business records exception. For example, an email from a non-party employee to a

---

[2] A declarant is a person who makes a statement. FED. R. EVID. 801(b).

3

Halliburton employee concerning what others said is double hearsay. BP argues that even though part of an email may be a business record, this does not make the entire email admissible. It also argues that email statements by party employees are not admissible as admissions of that party if not made concerning a matter within the scope of the employee's employment. It argues that, contrary to the PSC's assertion, there is no increasingly liberal standard with regard to the admissibility of emails as business records.

In rebuttal correspondence, the PSC clarifies that it does not intend to engage in a line-by-line analysis of every email, unless requested to do so by the Court; and that argument concerning a particular exhibit does not indicate a concession as to other exhibits. It argues that the imposition of a business duty is not the test under the Fifth Circuit's formulation of the business records exception, but rather whether a document was "retained" and "kept" in the regular course of business. It states that the fact that a document is produced in response to a subpoena does not prevent it from falling under the business records exception.

## DISCUSSION

### A. The Issues

The instant motion set presents the defendants' hearsay objections to email strings that the PSC seeks to introduce. Hearsay is any statement made out of court and offered in evidence to prove the truth of the matter asserted. FED. R. EVID. 801(c). Hearsay is not admissible except as provided otherwise by federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. FED. R. EVID. 802. The PSC essentially argues that the identified email strings are admissible in their entirety under one or more hearsay exceptions within the federal rules. The

4

defendants advocate a case-by-case inquiry and raise objections as to individual emails and email strings.

**B. Each Email Merits Individual Consideration**

The Court rejects the PSC's suggestion that all email strings listed in its "List of 300" are categorically admissible, for the following reasons.

    **1. Problems Under the Business Records Exception**

The so-called "business records" exception to the hearsay rule is Federal Rule 803(6).[3] Whether a particular record qualifies for the exception hinges upon the content and preparation of

---

[3] The 2011 amendment to Rule 803 is only stylistic in nature. The amended formulation of the business records exception clarifies that there are five elements required to trigger the exception:

> **(6) Records of a Regularly Conducted Activity**. A record of an act, event, condition, opinion, or diagnosis if:
> **(A)** the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> **(C)** making the record was a regular practice of that activity;
> **(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> **(E)** neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

FED. R. EVID. 803(6) (Westlaw 2011). The Fifth Circuit in Wilander v. McDermott Int'l, Inc., 887 F.2d 88 (5th Cir. 1989), aff'd, 498 U.S. 337 (1991), described the business records exception as containing five elements, but these elements do not directly correspond with the now re-numbered federal rule. The Wilander test is:

> (a) That the document [was] made "at or near" the time of the matters recorded therein; (b) that the document [was] prepared by, or from information transmitted by a person "with knowledge of the matters recorded"; (c) that the person or persons who prepared the document [were] engaged in preparing it, in some undertaking, enterprise or business which can fairly be termed a "regularly conducted business activity"; (d) that it [was] the "regular practice" of that business activity to make documents of that nature; and (e) that the documents [were] retained and kept in the course of that or some other regularly conducted business activity.

Id. at 91 (quotation omitted). Because re-numbered Rule 803(6) contains a more exhaustive list of prerequisites to the exception's application, its structure is used for purposes of the instant motion. Namely, Rule 803(6)'s (A)-(E) list subsumes the (a)-(e) itemization of the Wilander test: Rule 803(6)(A) contains Wilander parts (a) and (b); Rule 803(6)(B) contains Wilander parts (c) and (e); Rule 803(6)(C) contains Wilander part (d); and Rule 803(6)(D) and (E) contain no counterparts in the Fifth Circuit's Wilander test. Thus, the Court uses the rule's textual framework and merely draws from the Wilander elements where necessary to elaborate on the meaning of those rule-enumerated elements.

the record. Anthony J. Dreyer, When the Postman Beeps Twice: The Admissibility of Electronic Mail Under the Business Records Exception of the Federal Rules of Evidence, 64 FORDHAM L. REV. 2285, 2326 (1996). The rationale for the exception is that business records are reliable due to the qualities of regularity of record-keeping, the fact that they are relied upon in business, and the fact that employees have a duty and incentive to produce reliable records. Advisory Committee's Note, 56 F.R.D. 183, 308 (1973) ("The element of unusual reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation.").

The individual elements required to trigger the exception's applicability show that there is no categorical rule that emails originating from or received by employees of a producing defendant are admissible under the business records exception. First of all, the email must have been sent or received at or near the time of the event(s) recorded in the email.[4] Thus, one must look at each email's content to determine whether the email was created contemporaneously with the sender's acquisition of the information within the email. Second, the email must have been sent by someone with knowledge of the event(s) documented in the email.[5] This requires a particularized inquiry as to whether the declarant—the composer of the email—possessed personal knowledge of the information in the email. Third, the email must have been sent or received in the course of a regular

---

[4] The record must have been "made at or near the time" of the act, event, condition, opinion, or diagnosis within the record. FED. R. EVID. 803(6)(A).

[5] See FED. R. EVID. 803(6)(A).

business activity,[6] which requires a case-by-case analysis of whether the producing defendant had a policy or imposed a business duty on its employee to report or record the information within the email. Fourth, it must be the producing defendant's regular practice to send or receive emails that record the type of event(s) documented in the email.[7] This would require proof of a policy of the producing defendant to use email to make certain types of reports or to send certain sorts of communications; it is not enough to say that as a general business matter, most companies receive and send emails as part of their business model. Fifth, a custodian or qualified witness must attest that these conditions have been fulfilled—which certainly requires an email-by-email inquiry.[8] Lastly, the objecting defendant is permitted under the rule to argue that the particular email should be excluded due to concerns of lack of trustworthiness, based on the information source underlying the email content or the circumstances under which the email was sent and received.[9] Clearly, there is no across-the-board rule that all emails are admissible as business records.

As to the argument that the defendants regularly receive electronic mail as part of daily business activities and that their regular practice is to receive and retain such emails, if this was sufficient to invoke the business records exception, then all *physical* mail received by a defendant likewise would be a "business record." This cannot be the right result. Many mail items received

---

[6] The record must have been kept in the course of a regularly conducted activity of a business. FED. R. EVID. 803(6)(B).

[7] Making the record must have been a regular practice of the business activity at issue. FED. R. EVID. 803(6)(C). See also Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC, 2008 WL 1999234, at *12 (S.D. Tex. May 8, 2008) (for the business records exception to apply to an email, "the employer [must have] imposed a business duty to make and maintain *such* a record.") (emphasis added); Wilander, 887 F.2d at 91 (requiring proof that the person who prepared the document prepared it as part of a regularly conducted business activity).

[8] See FED. R. EVID. 803(6)(D).

[9] See FED. R. EVID. 803(6)(E).

by a company do not document activities that are routine or otherwise regularly conducted. An analogy to the "interoffice memorandum" may be appropriate, as well.[10] Although interoffice memoranda are indeed regularly sent and received in business practice, the *activity recorded* in such memoranda must regularly occur, for the business records exception to apply. See 30B M. GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 7047 (Interim Edition) (stating that the activity recorded must be the "type which regularly occurs in the course of the business's day-to-day activity"). Thus, courts have excluded memoranda that do not record regularly occurring activities. See, e.g., Langon v. Dept. of Health and Human Servs., 959 F.2d 1053, 1060 (D.C. Cir. 1992) (declining to admit memorandum written to employee by her employer); U.S. v. Strother, 49 F.3d 869, 875 (2d Cir. 1995), cert. denied, 522 U.S. 1118 (1998) (declining to adopt a rule that would permit the introduction of a memorandum drafted in response to unusual or isolated events); Standard Oil Co. of Cal. v. Moore, 251 F.2d 188, 215 (9th Cir. 1958), cert. denied, 356 U.S. 975 (1958) (not admitting memoranda and letters where company procedure appeared "nonexisten[t]," many of them were "casual and informal in nature," and many were "written as a result of the exercise of individual judgment and discretion"). Finally, many emails (including many of the informal conversations carried on in the email strings at issue) are essentially substitutes for telephone calls.[11] Telephone calls are routinely made but are not admissible as "business records" because—among other reasons—their individual content does not demonstrate the requisite regularity. In summary, the business records exception does not supply a rule that would render

---

[10] The PSC asserts that "email correspondence is simply the modern equivalent of the interoffice memorandum." Rec. Doc. 4340-1, at 3.

[11] See Robert L. Paddock, Utilizing E-Mail as Business Records Under the Texas Rules of Evidence, 19 REV. LITIG. 61, 64 (2000) ("Most of these e-mails are likely to be short messages that replace what would otherwise have been conveyed in a telephone call.").

admissible all emails found on a defendant's computer server.

## 2. Double Hearsay

Many of the emails the PSC seeks to admit present "double hearsay" or "hearsay within hearsay."[12] Namely, not only is the email itself offered for the truth of its contents, and thus hearsay, but also many of the statements within a given email are hearsay. For example, where a producing defendant's employee forwards to a co-worker an email that originated from outside the producing defendant, the forwarding employee (who created the email at issue) has made an out-of-court assertion of what someone outside the ranks of the producing defendant said. This is a situation where "the record is prepared by an employee with information supplied by another person." U.S. v. Blechman, 657 F.3d 1052, 1065 (10th Cir. 2011). Although the "outer hearsay" of the email at issue may be admissible under the business records exception, the "inner hearsay" of information provided by an outsider to the business preparing the record must likewise fall under a hearsay exception—the business records exception or some other exception—to be admissible.

## 3. Direct and Adoptive Admissions

A statement is not hearsay if it was made by a party and is offered against that party. FED. R. EVID. 801(d)(2). A party can make a statement in one of several ways: for example, through its employee, directly, or by adoption of another person's statement. The PSC argues that many of the emails that were forwarded by employees of the parties are adoptive admissions. This is a plausible argument under Rule 801(d)(2)(B), which makes admissible statements of which a party manifested its adoption or belief. However, the fact that a party's employee forwarded an email originating from outside his employer does not necessarily constitute an adoption of the contents of the

---

[12] See FED. R. EVID. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule.").

9

forwarded email. See U.S. v. Safavian, 435 F. Supp. 2d 36, 43-44 (D.D.C. May 23, 2006) (admitting certain emails where their context and content clearly indicated that the forwarding individual manifested an adoption of or belief in the truth of the statements of other people, but declining to admit other emails that did not clearly demonstrate the forwarder's adoption of the email content). Therefore, a forwarded email is only an adoptive admission if it is clear that the forwarder adopted the content or believed in the truth of the content.

Likewise, although the PSC argues that emails composed by employees of producing defendants are admissions under Rule 801(d)(2)(D), this hearsay exception also requires a case-by-case analysis of such emails. The rule treats as non-hearsay a statement offered against a party and that was made by the party's employee on a "on a matter within the scope of that [employment] relationship and while it existed." FED. R. EVID. 801(d)(2)(D). The mere fact that a producing defendant's employee sent an email while at work from a work computer to a co-employee does not mean that the email was composed or received concerning a matter within the scope of an employee's employment. This "course and scope" inquiry requires a case-by-case analysis to determine whether a particular party employee's statement can be properly admitted as non-hearsay against the party. Therefore, there is no broad rule that all the emails at issue are admissible as party admissions.

## C. "Regularly Conducted Activity" Requirements

Concerning the business records exception, the bulk of the parties' arguments concerns the requirements (1) that the emails have been kept in the course of a regularly conducted business activity and (2) that the business's regular practice have been to make the email record. See FED. R. EVID. 803(6)(B)-(C). To assist the parties in resolving hearsay issues regarding emails, the Court

notes the following.

First, it must have been the business's regular practice to make the record at issue—the email that the declarant/defendant's employee sends or receives. FED. R. EVID. 803(6)(B). Therefore, the sending or receiving employee must have been under an obligation imposed by his employer to send or receive the email at issue. The Fifth Circuit in U.S. v. Robinson, 700 F.2d 205, 209-10 (5th Cir. 1983), cert. denied, 465 U.S. 1008 (1984) held that an employee's handwritten notes that he regularly took during board meetings for his own use in his role as a purchasing clerk were not admissible under the business records exception because there was no showing that the employee regularly compiled notes as part of his official duties. More specifically, applying the Robinson rationale to emails, the Southern District of Texas cited to other federal district court decisions in stating that for the business records exception to apply, there must be a showing that the employer imposed a business duty upon the employee to make and maintain the record. Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC, 2008 WL 1999234, at *12 (S.D. Tex. May 8, 2008). Essentially, there must be a showing that the email at issue was not sent or received casually, nor was its creation a mere isolated incident. See Imperial Trading Co., Inc. v. Travelers Prop. Cas. Co. of Amer., 2009 WL 2382787, at *3 (E.D. La. July 31, 2009).

Second, the email itself must have been created as part of the regularly conducted activity of a business. This does not necessarily require the activity to pertain to the business of a producing defendant. For example, Sending Company's employee emails Receiving Company's employee. If Receiving Company is the company whose practice it is to regularly receive and retain emails containing information of this sort, even if the email does not pertain to Sending Company's regular business—but rather, Receiving Company's—the "regularly conducted activity" requirements are

fulfilled as to Receiving Company.[13] The key, though, is that the email, as a "record" within the meaning of Rule 803(6), must pertain to a "regularly conducted" business activity. Thus, if the information within an email pertains to a transaction or report of an isolated, sporadic nature that is not within the scope of what the email sender or recipient regularly does to engage in business, the exception does not apply.

The Court does not intend to analyze the multitude of emails for the parties. The permutations of potential admissibility are numerous in the email realm, especially in light of the potential application of the business records exception. In summary, the business records exception does not excuse hearsay unless *the declarant's statement* qualifies as a business record. See U.S. v. Ismoila, 100 F.3d 380, 392 (5th Cir. 1996) ("[T]he business records exception 'applies only if the person who makes the statement "is himself acting in the regular course of business."'"). Every participant in the chain producing a record must be acting in the regular course of business for the business records exception to admit all levels of hearsay within an email or email string. See id. It is the parties' responsibility to confer regarding email hearsay issues in light of the above and foregoing. Accordingly,

**IT IS ORDERED** that the parties confer in a good faith effort to stipulate regarding the admissibility of emails and email strings; and that thereafter if the parties cannot agree as to individual emails, by January 30, 2012 they shall submit briefs to Magistrate Judge Shushan, who will make recommendations to the Court regarding admissibility.

**IT IS FURTHER ORDERED** that it is the *parties' responsibility* to confer to work out stipulations as to email admissibility and to then point out any remaining specific issues to the Court;

---

[13] FED. R. EVID. 803(6)(B)-(C) (requiring the record to be "kept in the course of *a* regularly conducted activity of *a* business," and that "making the record was a regular practice of *that* activity") (emphasis added).

12

and that neither Judge Barbier nor Magistrate Judge Shushan will do this work for the parties.

New Orleans, Louisiana, this  11th  day of January, 2012.

                                        UNITED STATES DISTRICT JUDGE