UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179 |
| | CIVIL ACTION NO. 2:10-MD-02179 |
| | SECTION:  J |
| THIS DOCUMENT RELATES TO: | JUDGE BARBIER |
| | MAG. JUDGE SHUSHAN |

| | |
|---|---|
| BILL'S OYSTER HOUSE, ET AL | 10-1308 |
| RODRIGUE, ET AL | 10-1325 |
| GAUTREAUX, ET AL | 10-1539 |
| HARRIS,  ET AL | 10-2078 |
| MEYER,  ET AL | 10-2650 |
| LOUP | 10-2764 |
| BURAS | 10-2994 |
| CRENSHAW | 10-3255 |
| THIGPEN | 10-3273 |
| WALTON | 10-4204 |
| ARMAND'S BISTRO | 10-4489 |
| COCO | 11-946 |
| DAVID BROWN, ET AL | 11-1114 |
| ANSARDI, ET AL | 11-1129 |
| MANIERI, ET AL | 11-1137 |
| AVERETTE, ET AL | 11-1138 |
| BLANCHARD, ET AL | 11-1139 |
| BENTLEY, ET AL | 11-1140 |
| BLOUIN, ET AL | 11-1219 |
| MINOR, ET AL | 11-1220 |
| BOATENG, ET AL | 11-1383 |
| **(including 10-2771)** | |

**MEMORANDUM IN SUPPORT OF EXPEDITATED MOTION FOR RECONSIDERATION OF THE COURT'S DECEMBER 28, 2011 ORDER AND REASONS AS TO THE PSC'S MOTION TO ESTABLISH ACCOUNT AND RESERVE FOR LITIGATION EXPENSES**

1

Plaintiffs, respectfully request that this Court reconsider its December 28, 2011 Order and Reasons as to the PSC's Motion to Establish Account and Reserve for Litigation Expenses. (Doc. 5022).

## I.  PSC DID NOT MEET ITS BURDEN

Plaintiffs submit that the Order granting the set-aside in this matter, did not comply with standards as set forth by our Courts in previous cases. Judge Duval, in In *Re Katrina Canal Breaches Consolidated Litigation*, 2010 WL 2998848 (E.D. La.), states that Judge Fallon explained in succinct detail in *Turner v. Murphy Oil USA, Inc.,* 422 F.Supp.2d 676 (E.D.La.2006) the basis for and requirements surrounding the establishment of a common benefit fund. He stated:

> Under what is generally termed the "American rule," every litigant is responsible for the payment of his or her own attorney's fees. If there is no attorney-client relationship, no attorney's fees are generally owed. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 245, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). However, in certain settings, the American rule creates the problem of free riding, that is, when individuals who benefit from the litigation avoid sharing the full burden and expense of litigation by relying on the work of others. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) (citing *Trustees v. Greenough,* 105 U.S. 527, 26 L.Ed. 1157 (1881) and *Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885)).
>
> Thus, to avoid the problem of free-riding, the U.S. Supreme Court over 125 years ago approved the common benefit doctrine, which provides that when the efforts of a litigant or attorney create, preserve, protect, increase, or discover a common fund, all who benefit from that fund must contribute proportionately to the costs of the litigation. *Boeing,* 444 U.S. at 479, 100 S.Ct. 745, 62 L.Ed.2d 676; *Pettus,* 113 U.S. at 123, 5 S.Ct. 387, 28 L.Ed. 915; *Greenough,* 105 U.S. at 532-33, 26 L.Ed. 1157, 105 U.S. 527. "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing,* 444 U.S. at 478, 100 S.Ct. 745, 62 L.Ed.2d 676. *See also* Manual for Complex Litigation (Fourth) § 14.121 (2004) (discussing the American Rule and the common-benefit exception in complex cases).
>
> The Louisiana Supreme Court has recognized the common benefit doctrine and has developed the following test to determine whether attorneys are owed funds under the doctrine. *Kirkpatrick v. Young,* 456 So.2d 622, 625 (La.1984). First, the attorney must demonstrate that he acted 1) on his own and 2) at his own expense. *Id.* Second, the attorney must show that he maintained a successful suit for the preservation, protection, or increase of

a common fund. *Id.*

The PSC has not produced any evidence meets the requirements as set forth by our Supreme Court. The PSC has done nothing to maintain a successful suit for the preservation, protection or increase in a common fund because the common fund was established prior to the formation of the PSC.

Second, This Court never held a hearing before issuing its Order, although oral arguments were requested by undersigned counsel, contrary to the requirements of Rule 65 of the Federal Rules of Civil Procedure ("Injunctions and Restraining Orders"), which states in relevant part:

> (a) Preliminary Injunction.
>
> (1) *Notice.* The court may issue a preliminary injunction only on notice to the adverse party.
>
> (2) *Consolidating the Hearing with the Trial on the Merits.* Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.

For this reason alone the Court's Order should be withdrawn and the PSC's Motion should be noticed for a hearing. Even further though, the PSC never even attempted to make the showing required before this Court may issue <u>any</u> injunction. Recently Judge Fallon, of this court, had this issue arise in the *In Re: Vioxx Products Liability Litigation*, MDL 1657. Judge Fallon held that "the relief sought by the PSC (that of an Emergency Motion for Order Establishing Escrow Fund for Common Benefit Fees, Rec. Doc. 63612, attached as Exhibit B) necessitates an analysis comparable to that required for a preliminary injunction." Judge Fallon, citing *Anderson v. Jackson* 556 F.3d 351, 360 (5th Cir. 2009) stated: "Injunctive relief 'should only be granted when the movant has clearly carried the burden of persuasion and shown:

3

    (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs any harm that will result to the nonmovant if the court grants the injunction; and (4) that the injunction will not disserve the public interest. "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements."

The *Vioxx Court* held, "An escrow of funds for a common benefit assessment is appropriate only where the common benefit labor created the settlement fund." Judge Fallon ultimately found that the PSC did not sufficiently show a connection to New York, Florida and South Carolina and thus the motion failed on the element of substantial likelihood of entitlement to a portion of the *NAMFCU settlement funds*.

    The PSC in this matter has likewise failed to show a link between the work conducted by them and the creation of the settlement fund being distributed by the GCCF and thus the PSC is not entitlement to a withholding of any settlements paid from this fund.

## II.  CLAIMANTS HAVE RENOUNCED AND/OR DID RELY ON PSC WORK PRODUCT

    Finally, the PSC has not shared any work product with the Becnel Law Firm that would help the Firm in its negotiations with the GCCF or in any other aspect of this case; the Becnel Law Firm has not received any updates from the PSC in any manner; the Becnel Law Firm did receive one letter from liaison, Steve Herman, informing the firm that our assistance was unwanted and that our Firm would receive no common benefit work from the PSC. Mr. Herman went as far to send this email to others, specifically the Court appointed accountant, Phil Garrett,. Please see exhibit A. The PSC has not taken any action that led to the formation of a common fund or the GCCF, increased the previously established settlement fund or protected this fund.

    Despite the fact that Mr. Herman was of the belief that our office did not do any common benefit work, it should be noted, as per Mr. Becnel's application to the Court for appointment to the PSC, that I was asked by the Herman firm, along with Camilo Salis and Richard Arsenault to

4

draft the initial lawsuit.  In addition, our office hired numerous experts and either Daniel E. Becnel, Jr. or Will Percy attended each and every Coast Guard Hearing and provided detailed notes to everyone who was interested in the BP case by email shortly after that day's hearing concluded.  In addition the Congress in preparation of the Congressional Hearings, requested experts that were hired by the Becnel Law Firm to assist them in their investigation.  Our office organized, on behalf of the Louisiana State Bar, many seminars dealing with the Deepwater Horizon disaster which were chaired by Richard Arsenault.  Our office also organized a session which was attended by Mike Rozen of Feinberg Rozen at Loyola University attended by over 300 people to discuss the claims process through the GCCF.  When a decision was made by Mr. Herman that we could not participate or work, nor receive any information concerning depositions, experts or any other work product as a result of MDL 21790, our firm was forced act alone with our negotiations with through the GCCF and our firm filed certain pleadings to protect our clients rights since we had no instruction or assistance from the PSC.

     In essence the PSC is attempting to have all claimants pay for things that benefitted no one in this manner.  The PSC has not issued any reports or given anyone a voice to object to their intentions and plans; has not created or at minimum distributed a trial package; has not held meetings to instruct non-PSC members of strategy or distributed information that could assist with the GCCF.  It is inconceivable that in a case where a party has been deemed to be at fault, same party establishes a 20 billion dollar fund to compensate people that a PSC could and would incur cost of over eleven (11) million dollars to prosecute the case.

     Most of the discovery in this case was being conducted by the Coast Guard, United States Government and other state agencies.  The Becnel Law Firm had at least one representative at each Coast Guard hearing to learn what was transpiring.  The PSC rarely if ever attended these meeting.  This is just one example of how the PSC failed to act fiscally responsible for the class.

Being named a PSC does not give a person or firm carte blanche to spend money and incur unneeded costs. The PSC has a fiduciary duty to the rest of the litigants to incur only necessary cost. At no time, has the PSC "opened the books" to allow anyone to see how the 11 million dollars was spent in a little over a year.

### III.    THE LACK OF *ROBINS DRY DOC* STANDING

Any fair rating of maritime law leads to the conclusion that many, if not most, of the claimants resolving claims in the GCCF lack standing under the similar case of *Robins Dry Doc and Repair v. Flint*, 275 U.S. 303(1927). Likewise, a fair reading of the pleadings in this case, in particular, the PSC's holdback motion, leads inextricably to the conclusion that the vast majority of work performed by the PSC is intended to allocate fault under general maritime law. While that work may benefit some who actually have claims in standing under general maritime law, it does not benefit most who lack standing under *Robins Dry Doc.* This is why most claimants, instead of suing BP, Halliburton, Cameron, or others whom the PSC has pursued and spent millions of dollars chasing, are seeking resolution of their claims under the OPA in the GCCF. *Robins Dry Doc* stands for the general proposition that a party cannot recover economic damage unless the parties' property was physically damaged.

### IV.    CLAIMANTS HAVE SPECIFICALLY RENOUNCED USE OF OR RELIANCE OF OR RELIANCE UPON PSC WORK PRODUCT.

Even those who did file a protective claim in the limitation proceeding did so by very clearly stating that it was their intent to pursue OPA claims through the GCCF and would do so using their own work product and would not rely upon the PSC's work product. For example, Docs. 290, 371 & 385 states clearly that: Claimants object to this process and specifically state that this limited appearance by them does not evidence an intent or agreement on their part that the Limitation Proceeding instituted by the Petitioners is appropriate or legally cognizable, either

generally or specifically as to the injuries and damages suffered by Claimants, or that this response by Claimants otherwise serves as acquiescence to the jurisdiction of this court to litigate their claims. Claimants specifically reserve any and all rights, whether legal or equitable, that Claimants may have under any and all applicable state and federal laws against Petitioners and all other potentially responsible parties. Further, Claimants specifically object to the jurisdiction of this court, and any other court, to adjudicate Claimants' causes of action and rights of recovery, against all parties responsible for Claimants' damages and injuries, until Claimants file a lawsuit in the venue of Claimants' choosing. Claimants specifically reserve the right to proceed in state court or any other court against all parties responsible for Claimants' damages and injuries. Claimant also specifically reserves the right to pursue resolution of all claims it may have under all appropriate channels, including, but not limited to, the Gulf Coast Claims Facility. Claimant further asserts that the Oil Pollution Act supersedes the general Limitation of Liability Act, 46 U.S.C. § 30501 et seq. The Limitation of Liability Act, on which Petitioners specifically rely to invoke this proceeding, does not apply to vessels that discharge oil, like the Petitioners' MODU DEEPWATER HORIZON. Not only does the substance of the general Limitation of Liability Act not apply, neither does its procedural provisions nor Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions apply to either the facts of this case or the Claimants' claims. Thus, for parties like Petitioners, the inapplicability of those provisions means the concursus procedure of the general Limitation of Liability Act and its implementation in Rule F may not be invoked by them to enjoin multiple proceedings to force all claims into a single proceeding under the Oil Pollution Act. Claimants similarly provide notice that Claimants have engaged the undersigned attorneys to prosecute Claimants' claims, and Claimant's undersigned attorneys have been and shall continue to prosecute Claimant's claim(s) with their own independent judgment and work product. Claimant hereby does not adopt the

Amended Master Complaint pending against all Defendants, and objects to any party other than the Undersigned Attorneys prosecuting Claimants' claims without Claimants' written authorization and consent.

The PSC has not, and cannot, controvert this intent or the fact that the claimants relied on none of the PSC's work product to resolve claims in the GCCF.  Such statements like the one in Docs. 290, 371 and 385 are directly contrary to that in the *Latex Gloves*[1] case.  As pointed out by BP in footnote 2 of its Memorandum Seeking Reconsideration[2], the *Latex Glove* Court extended its jurisdiction over state court plaintiffs but only those who were represented by plaintiff attorneys who had purposely availed themselves of work product produced in the MDL.  In this situation, just the opposite occurred where attorneys have specifically disavowed work product produced in the MDL to resolve their claims.

**CONCLUSION**

For the foregoing reasons, Claimants respectfully requests that the Court clarify and reconsider its December 28, 2011 Order and deny the PSC's Motion.

Date:   January 11, 2011                              Respectfully submitted,

                                                      s//Daniel E. Becnel, Jr.
                                                      Daniel E. Becnel, Jr. (2926)
                                                      Salvadore Christina, Jr. (27198)
                                                      William Percy (01532 )
                                                      BECNEL LAW FIRM, LLC
                                                      106 W. SEVENTH STREET
                                                      P.O. DRAWER H
                                                      RESERVE, LA 70084
                                                      (985) 536-1186

---

[1] *In re Latex Gloves Products Liability Litigation*, 2003 U.S. Dist. LEXIS 18118 (E.D. Pa. Sept. 5, 2003).

[2] Memorandum In Support Of Expedited Motion For Clarification and Reconsideration Of The Court's December 28, 2011 Order And Reasons As To The PSC's Motion To Establish Account And Reserve For Litigation Expenses, (Doc 5044-1)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of January, 2012, the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Don K. Haycraft, James P. Roy and Stephen J. Herman by operation of the Court's electronic filing system and to all counsel of record through the Lexis Nexis File & Serve.

s//Daniel E. Becnel, Jr.
Daniel E. Becnel, Jr.
