**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | § | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE | § | |
| GULF OF MEXICO, on APRIL 20, 2010 | § | |
| | § | |
| THIS DOCUMENT RELATES TO: | § | JUDGE BARBIER |
| | § | |
| ALL CASES | § | MAG. JUDGE SHUSHAN |

## Non-Party LXR and Limitation Claimant Gabriel Sanchez' Amended Memorandum Addressing the Court's Order Establishing an Account and Reserve for Litigation Expenses

In response to BP's Expedited Motion for Clarification and Reconsideration of the Court's December 28, 2011 Order and Reasons as to the PSC's Motion to Establish Account and Reserve for Litigation Expenses, this Court allowed additional briefing regarding the propriety and appropriateness of setting aside, in advance of any global resolution, 6% of any settlements reached arising from the BP Oil Spill. This Amended Memorandum is filed by one entity and one individual who respectively stand in the shoes of two groups of entities[1] and individuals affected by the Court's Order. The groups are: 1) Those who have never joined this litigation, and, indeed, <u>could not</u> join this litigation due to the requirement of presentment under the Oil Pollution Act of 1990 ("OPA"); the individuals and entities of this group are pursuing only OPA claims without any ability to pursue recovery under *Robins Dry Dock*; and 2) those who have

---

[1] LXR - Luxury Resorts and Hotels ("LXR") is a branded group of hotels in Florida and elsewhere. LXR reached settlements for some of its hotels in excess of $12 million directly with the GCCF through the use of its own selected counsel, although no determination letter has yet been issued by the GCCF. This Court's Order directly impacts these settlements, even though LXR is not before this Court, hired its own experts and expended much money and effort negotiating with the GCCF; and, even though LXR has not yet completed the presentment process required by the Oil Pollution Act, is not subject to this Court's jurisdiction, and has no intention to be before this Court. There are thousands of others similarly situated represented by Counsel for the Movants.

joined this litigation,[2] but only in a limited sense because of the necessity to preserve any claim they may have against Transocean—the Limitation Complainant—making no claims against any other parties in this litigation, and not participating in any way in the liability aspects of this case. This Court's Order should be vacated, for at least the following reasons:[3]

a. The Court's Order is in direct contravention to the stated purpose of the OPA which is the cost effective and expeditious resolution of damages;

b. No notice or opportunity to be heard was given to those impacted who are not parties in the litigation. The Court lacks jurisdiction over these nonparties;

c. The Court violated its own Pre-Trial Order No. 15 because it did not give notice of a hearing, or otherwise give parties an opportunity to respond;

d. PSC did not articulate and demonstrate that work performed by the PSC *benefitted* those represented by counsel. Further, PSC has not made any work available to the thousands of entities it seeks to take a fee from which are not before this Court or parties involved in a working group.

e. The PSC has performed no work on causation, and causation is highly individualized such that it could not do such work on an individualized basis;

f. The PSC had **no involvement** in the lengthy and costly process of settlement with the GCCF; its efforts that it so proudly lists as helping claimants before the GCCF

---

[2] Gabriel Sanchez is a commercial fishermen and boat captain who fishes in Louisiana and Texas. He filed a claim in this MDL, but specifically only brought a claim against Transocean. Mr. Sanchez, through his own counsel, has expended thousands of dollars in attempting to obtain resolution before the GCCF. An offer of $66,000 is pending but a settlement has not been reached. There are thousands of others similarly situated.

[3] In further response, this memorandum is filed in support of Opposition to PSC's "Motion to Establish Account and Reserve for Litigation Expenses" filed on November 21, 2010 [Doc 4682] and incorporates the arguments into this response in full.

have hindered and delayed efforts to obtain a reasonable settlement by the Movants; and

g.   This Court's Order is contrary to the clear holding of the Fifth Circuit case, *Vizena v. Union Pacific Railroad,* attached as Exhibit A. That case held that a district court had no authority to impose expenses on non-parties.

## **DISCUSSION**

First, the Court's Order is contrary to the purpose of the OPA. The specific purpose of the Act is to "promote expeditious and cost-effective restoration of natural resources and services injured as a result of an incident."  15 C.F.R. § 990.10 (1995).  The OPA was put into place to discourage litigation, and to allow those aggrieved by an oil spill to make claims, either with or without counsel, against a Responsible Party without the necessity of litigation.  As an example, here, Movant LXR is paying a below-market, reduced attorney's fee with its privately contracted attorney because it chose to avoid litigation, specifically involvement in this MDL. This Court's Order, in the case of LXR, and indeed in the case of most of those corporate entities similarly situated, increases the attorney's fee to be paid by more than fifty percent.[4]

Second, BP correctly points out in its Expedited Motion that the Court **lacks jurisdiction** to enter an order affecting the rights of claimants who have filed (or intend to file) a claim with the Gulf Coast Claims Facility and have purposefully chosen to stay out of the Multi-District

---

[4] In its Motion, the PSC expressed its "preference" that the requested "holdback" reduce the fee arrangement that private attorneys have with their clients, rather than increase the amount of attorneys' fees paid by those injured by the spill. In the case of LXR, the PSC's preference would mean that its attorney, who it contracted with, would have his attorney fee reduced by more than one half, in favor of attorneys who have done nothing to advance LXR's case before the GCCF. The other alternative is that LXR pay fees more than 50% than it contracted for when it chose to avoid litigation.

Litigation.  The OPA specifically forbids any claimant from joining the lawsuit until the claim is presented to the responsible party. Section 2713 (b) (2) of the OPA provides as follows:

> (2) Limitation on presenting claim
>
> No claim of a person against the Fund may be approved or certified during the pendency of an action by the person in court to recover costs which are the subject of the claim.

See 33 U.S.C. § 2713 (b) (2) (2004).  The Court exceeds its authority by holding back monies belonging to parties that are not subject to the Court's jurisdiction.  The parties have not filed an action in these proceedings, did not seek protection from the Court or the PSC, were not made privy to any information collected by the PSC,[5] and entered into settlements with the GCCF, as agent for BP.  As the Court is aware, presentment is a mandatory condition precedent to filing suit.   See *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co., Inc.,* 51 F.3d 235 (11th Cir. 1995); *Gabarick v. Laurin Maritime (America), Inc.*, 2009 WL 102549 (E.D. La. 2009) (noting that the purpose of the claim presentation procedure is to promote settlement and avoid litigation).

That this Court lacks jurisdiction over non-parties like LXR is evident in the case *Vizena v. Union Pacific Railroad.* In that case, in a per curiam opinion, the Fifth Circuit made clear that a district court "has no authority to create a common fund with money of persons who are not parties before the court." Exhibit A.

Third, the Court failed to give proper notice to both parties and non-parties. Proper notice was not given for those individuals and entities with only OPA claims that have never joined this litigation, the PSC provided no notice of its Motion, and the Court provided no notice

---

[5] One argument made by the PSC in favor of the holdback is that it has interviewed experts and collected articles. Any attorney with clients in this litigation has done the same. The PSC also argues that GCCF claimants not before this Court have been benefited because the PSC is preparing to begin work on assessing the environmental impact of the spill, and intends in the coming months to designate experts, but will not do so now, and will not disclose its experts now. It is hard to fathom how such "secret" experts have led to better settlements with the GCCF, when neither the Claimants nor the GCCF is privy to these secret experts and their secret opinions.

of its Order. Thus, thousands of entities like Movant LXR, who are impacted by the Court's Order, were never given an opportunity to object, or be heard on this matter. Further, for those individuals and entities before this Court, like Gabriel Sanchez, who have standing under the *Robins Dry Dock* exception to bring an admiralty claim but who have not brought claims against any entity other than the Limitation Complainant, this Court violated its own PTO 15.  In PTO 15, this Court stated that it would not rule on a motion, unless it was first set for hearing with responses due two weeks prior to the hearing. The PSC's Motion was never set, and Liaison Counsel indicated that there would be no ruling until it was set.[6] Yet, the Court ruled upon it.

According to Pre-Trial Order No. 15, **all pending and future motions,** "are continued without date unless a motion is specifically excepted from the continuance by the Court.  The Court will then organize and prioritize the continued motions and in due course, set the motions for hearing.  No responses to the motions are due **until two weeks** before the hearing date set by the Court." See Pre-Trial Order 15 [Doc 676] (emphasis added).  Here, the PSC's motion was never set for hearing.  Counsel did not receive notice of a hearing or a response deadline specifically set by the Court. Indeed, Counsel's office specifically contacted the Court in December and requested information on the date of the hearing and was informed by the Court that a hearing had not been set.  The Court then issued an order on the PSC's Motion on December 28, 2011.

Fourth, shortly after the spill, BP set aside $20 Billion to pay claims through the Gulf Coast Claims Facility ("GCCF"). This decision was reportedly made after consultation with the Obama Administration. The PSC had nothing to do with the monies being set aside. They should not be able to take a fee on these monies. It is not enough to demonstrate that work was

---

[6] Upon inquiry, Movant's counsel was forwarded PTO 15 by a member of the PSC, and was instructed that this Court would not rule without the opportunity to, at the least, file briefing on the issues raised in the PSC's Motion. Email back up of such correspondence can be provided as necessary.

performed by the PSC; the PSC must also articulate and demonstrate that such work benefited those upon whom the PSC seeks to tax. Even assuming that this Court could ever tax settlements from the GCCF of claimants not before this Court, to be paid, the PSC must demonstrate that, due to their work, the GCCF has paid, or will pay more money on claims that it would have absent the PSC's work. They have not done so, and cannot do so at this point. The reason they cannot do so, and will never be able to do so, is simple.

The only issue before the GCCF is the quantum of damages suffered by the individual Claimant.  The PSC has done no work in that regard. Instead, the Movants before this Court, and thousands of others just like them, hired their own experts and made their own arguments, with counsel, before the GCCF.  The PSC was not involved. The PSC's effort to require Ken Feinberg to state to claimants that he was not independent did not assist the Movants herein—they were already represented by their own counsel and knew that long before the PSC ever filed its Motion. Indeed, the notice sent out by the PSC, in some cases, interfered with private attorney's relationships with their clients. Further, the PSC's efforts to force Ken Feinberg to translate documents did not assist the Movants—they had their own attorneys, and in those cases when needed, paid for their own translations. The PSC's other efforts that they list,[7] including the PSC's efforts in joining the government's push to force Ken Feinberg to submit to an audit, did not assist the Movants and the thousands of others like them. Instead, such efforts hampered, hindered, and delayed the many efforts of Movants' counsel to convince Mr. Feinberg, and his partner Micheal Rozen, to focus on paying claims rather than fighting with the PSC. Simply put,

---

[7]The PSC argues that it applied public and private pressure to improve GCCF claims handling procedures. Such is simply unsupported and untrue. Success for the GCCF was defined early on as resolving claims short of litigation. Ken Feinberg articulated as much frequently. If the GCCF was determined to be failing in its mission, such would have forced those attorneys with large books of business before the GCCF to pursue claims in court, publicly declaring the GCCF a failure. Such was the leverage that was used against Ken Feinberg by Movant's counsel, and many others outside of this litigation. The PSC had no such leverage, as it made clear early on that it preferred claimants to file claims with the Court, and made every effort to encourage both represented and non-represented claimants to file into the MDL.

maybe an argument could be made that the PSC's efforts contributed to the GCCF acting more fairly to unrepresented claimants before the GCCF. Such has <u>not</u> been demonstrated at this point, and certainly none of the efforts articulated by the PSC assisted in anyway those Claimants who had their own counsel.

The Movants herein have spent thousands of dollars retaining experts to assess their individual damages. Such experts include business interruption specialists, site specific experts, adjustors, and other professionals trained in assessing damages due to external events. Counsel for the Movants herein has met multiple times with Ken Feinberg, Administrator of the GCCF. Counsel for Movants has, on multiple occasions, taken clients to either Washington, D.C. or New York City to meet with Feinberg, Rozen, and their accountants, in an effort expeditiously resolve claims. The PSC had no involvement in this lengthy, and costly, process.[8] They should not be paid for the fruits of these efforts.[9]

The PSC sets forth that it has taken more than 240 depositions and has reviewed hundreds of thousands of documents in this matter. The PSC says it has expended more than $11 million. Yet, from its own filings, it is clear that the PSC has spent the overwhelming majority of its time focusing on apportionment of fault for the multiple potentially liable parties in the

---

[8] Indeed, counsel for the Movants herein worked for several months closely with the GCCF to establish the protocol for handling personal injury claims for those injured (non-death) on the rig. Once the protocol was established, the first personal injury claims were settled with the GCCF. Such work required dozens of meeting and conferences with Mr. Feinberg's office, and hundreds of hours of time, and thousands of dollars in expense. Such protocol, developed with no input from the PSC, is now used by the GCCF to evaluate personal injury claims. This was in fact a benefit conferred on other personal injury claimants who choose to resolve their claims with the GCCF; the PSC had nothing to do with it. Yet, the PSC has left open the possibility in its Motion to seek payment for cases settled with the GCCF in the past.

[9] The PSC filed a Reply Brief pointing out that, because private attorneys with large numbers of cases are still processing claims through the GCCF, this fact is somehow justification for holding back monies for the PSC. Such an argument is spurious. Movant's counsel has literally thousands of cases, many more than the great majority of those on the PSC. Many of these claims are large dollar claims, with sophisticated issues involved. These are not "cookie cutter" claims. They require analysis from multiple experts, and face to face meetings with Mr. Rozen, many times with the general counsel or client representative present. The PSC's efforts have hampered this work, due to Motions like the one extant before the Court. Although Movant's counsel has already collected more than $100 million from the GCCF, thousands of claims not before this Court remain to be processed with the GCCF.

Limitation proceeding. The PSC admits that it has done no work on causation. The Movants and those like them are not bringing claims against those entities. And, for those individuals and entities who have only OPA claims, who cannot bring a claim against any other entity in this litigation due to very restrictive case law, any work done by the PSC regarding liability apportionment to date has been of NO benefit. Candidly, for those not before this Court, it does not matter whether BP is 1% responsible or 100% responsible for the spill.  BP is the Responsible Party who must pay under the OPA. The only issue for these claimants is the quantum of their damages caused by the spill. This is an individualized inquiry. The PSC has not been, and will not be, a part of it. They should not be paid for it.

This is not a situation where the PSC has done all the work, while attorneys and entities outside this litigation have reaped the benefit. This is not a situation where others, who have expended no time or effort, ride the coattails of a PSC that has expended much time, expense, and effort. Instead, this is a situation where the PSC's work, to date, has not focused on the types of individuals and entities represented by the Movants herein. The PSC simply has not helped those who have expended hundreds of thousands of dollars and thousands of hours in an effort to resolve claims through the GCCF. Indeed, the PSC has, at times, intentionally or not, worked against the interests of many claimants and their counsel outside this litigation.

**CONCLUSION**

There is no case law that exists that allows the PSC to tax claimants not before this Court, and not subject to this Court's jurisdiction, who chose to pay a reduced attorney fee, avoid litigation and pursue an OPA claim with the GCCF. The closest analogous cases are those cited by the Court in its Order, upon which the Court relied to NOT tax state court cases for attorneys who were not given discovery information by the PSC (*In re Genetically Modified Rice*

*Litigation* and others cited).[10] And, there is a Fifth Circuit case, on all fours, that makes clear that a district court cannot create a common fund with the monies of those who are non-parties. No one is saying that the PSC's work is worthless, or that they should not be compensated for their work. But, it should not be on the backs of those who have not benefitted from that work. The Movants before this Court, and thousands of others like them, have not used any work created by the PSC. Many of these entities and individuals, Like Movant LXR, are not subject to this Court's jurisdiction. Others, like Gabriel Sanchez, have no claims against any entity in this litigation other than the Limitation Complainant, and made it clear when filing their claim that they were not pursuing any other entity in this litigation. It is entirely unfair for this PSC to be compensated for work that was not beneficial to those from which the PSC wants to take its fees. To be properly compensated, this PSC must confer a benefit. It has not. This Court's Order, at least with regard to those similarly situated to the Movants, should be vacated.

Respectfully submitted,

**The BUZBEE Law Firm**

*/S/ Anthony G. Buzbee*
Anthony G. Buzbee
State Bar No. 24001820
S.D. Tex. I.D. No. 22679
J.P. Morgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909
www.txattorneys.com

**ATTORNEY FOR MOVANTS**

---

[10] Movants' Counsel has not been made privy to any discovery collected by the PSC, and is not privy to any email chains.  Movants' Counsel has never attended any "informational" meetings referred to in the PSC's Motion.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Non-Party LXR and Limitation Claimant Gabriel Sanchez' Amended Memorandum Addressing the Court's Order Establishing an Account and Reserve for Litigation Expenses has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send notice of electronic filing in accordance with the procedures established in MDL 2179, on this 12 day of January, 2011.

*/S/ Anthony G. Buzbee*
Anthony G. Buzbee