UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179<br><br>CIVIL ACTION NO. 2:10-MD-02179<br><br>SECTION: J |
| THIS DOCUMENT RELATES TO:<br>ALL CASES | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

**PLAINTIFFS' AND CLAIMANTS' RESPONSE MEMORANDUM TO BP's MOTION FOR CLARIFICATION AND RECONISDERATION OF THE COURT'S DECEMBER 28, 2011 'ORDER AND REASONS'**

**I. INTRODUCTION:**

While Plaintiffs and Claimants have each filed their own Motion and Memorandum for Reconsideration, Plaintiffs and Claimants are filing this joint Response as requested by the Court. Plaintiffs and Claimants[1] are filing this Response Memorandum in accordance with this Court's January 5, 2012 Order (Doc #5083), in which it stated that "any memorandum in response to BP's Motion for Clarification and Reconsideration (December 30, 2012; Doc #5044) shall be filed no later than Thursday, January 12, 2012 and shall not exceed 10 pages".

These Plaintiffs and Claimants respectfully request that, for the reasons stated in BP's Motion as well as those stated below, this Court reconsider and withdraw its Order and Reasons (December 28, 2011; Doc #5022) as to the PSC's Motion to Establish Account and Reserve for Litigation Expenses. (November 7, 2011; Doc. #4507).

**II. THE COURT'S OPINION IS LEGALLY INCORRECT:**

**A. The Order Does Not Follow The Standards Set Forth By Our Courts In Previous Cases:**

---

[1] GCCF Claimants Joe Winkeler and February Corporation, who have filed claims with the GCCF but <u>have not filed a Complaint in either state or federal court and have not filed in the limitation proceeding</u> that is currently pending before this Court, are herein and hereby appearing in front of this Court for the sole purpose of responding to BP's Motion.

1

These Plaintiffs and Claimants submit that the Order granting the set-aside in this matter did not comply with standards as set forth by our Courts in previous cases. Judge Duval, in In *Re Katrina Canal Breaches Consolidated Litigation*, 2010 WL 2998848 (E.D. La.), cited approvingly and in detail Judge Fallon's opinion in *Turner v. Murphy Oil USA, Inc.,* 422 F.Supp.2d 676 (E.D.La.2006), in which Judge Fallon explained the basis for and requirements surrounding the establishment of a common benefit fund:

> Under what is generally termed the "American rule," every litigant is responsible for the payment of his or her own attorney's fees. If there is no attorney-client relationship, no attorney's fees are generally owed. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 245, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). However, in certain settings, the American rule creates the problem of free riding, that is, when individuals who benefit from the litigation avoid sharing the full burden and expense of litigation by relying on the work of others. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) (citing *Trustees v. Greenough,* 105 U.S. 527, 26 L.Ed. 1157 (1881) and *Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885)…
>
> The Louisiana Supreme Court has recognized the common benefit doctrine and has developed the following test to determine whether attorneys are owed funds under the doctrine. *Kirkpatrick v. Young,* 456 So.2d 622, 625 (La.1984). First, the attorney must demonstrate that he acted 1) on his own and 2) at his own expense. *Id.* Second, the attorney must show that he maintained a successful suit for the preservation, protection, or increase of a common fund. *Id.*
> *Turner v. Murphy Oil USA, Inc.,* at 680.

The PSC did not submit any evidence that meets these requirements, and it has done nothing to maintain "a successful suit for the preservation, protection or increase in a common fund" - because the common fund was established prior to the formation of the PSC.

**B. The Court's Order Is An Injunction, but the Court Did Not Follow the Prerequisites for Issuing An Injunction:**

The Court's Order is unquestionably an injunction; it ordered that the "Defendants, or any agent acting on Defendant's behalf, shall with withhold and deposit [portions of GCCF

2

settlements and] "tender such deposits to the Clerk of Court… for deposit into the MDL. No. 2179 Account and Reserve for Common Benefit Litigation Expenses". (Order, pgs. 10-11).

### (1) The Court Did Not Hold the Hearing Required Before Issuing The Injunction.

This Court never held a hearing before issuing its Order, contrary to the requirements of Rule 65 of the Federal Rules of Civil Procedure ("Injunctions and Restraining Orders"), which states in relevant part:

> Rule 65. Injunctions and Restraining Orders
> (a) Preliminary Injunction.
>
> (1) *Notice.* The court may issue a preliminary injunction only on notice to the adverse party.
>
> (2) *Consolidating the Hearing with the Trial on the Merits.* Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.

For this reason alone the Court's Order should be withdrawn and the PSC's Motion should be noticed for a hearing.

### (2) The Court Did Not Require The PSC To Make the Four-Part Showing Required Before Issuing an Injunction:

Even further, the PSC never even attempted to make the showing required before this Court issued its injunction. Just last week Judge Fallon of this court addressed this issue in *In Re: Vioxx Products Liability Litigation*, MDL 05-1657.  (See his "Order and Reasons"; January 3, 2012; Doc #63560.) Judge Fallon held that "the relief sought by the PSC (that of an Emergency Motion for Order Establishing Escrow Fund for Common Benefit Fees, Rec. Doc. 63612) necessitated an analysis comparable to that required for a preliminary injunction."  ("Order and Reasons", p. 5)  Citing *Anderson v. Jackson* 556 F.3d 351, 360 (5th Cir. 2009), Judge Fallon

3

stated that "injunctive relief should only be granted when the movant has clearly carried the burden of persuasion and shown"

> "(1) a substantial likelihood of prevailing on the merits;   (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs any harm that will result to the nonmovant if the court grants the injunction; and   (4) that the injunction will not disserve the public interest. "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements."  ("Order and Reasons", p. 5)

That court finally held that "an escrow of funds for a common benefit assessment is appropriate only where the common benefit labor created the settlement fund."  ("Order and Reasons", p. 5). The Court ultimately found that the PSC did not sufficiently show a connection to New York, Florida and South Carolina, and thus the motion failed on the element of substantial likelihood of entitlement to a portion of the National Association of Medicaid Fraud Units' settlement funds.  (*In Re: Vioxx Products Liability Litigation*, MDL 05-1657; Order and Reasons; Doc. #63612; January 3, 2012) (Attached hereto as "Exhibit A").

The PSC in this matter has likewise failed to show a link between the work conducted by it and the creation of the settlement fund being distributed by the GCCF and, thus, the PSC is not entitled to a withholding of any settlements paid from this fund.

## C. The Court's Order Exceeds Its Jurisdiction:

Reconsideration of the Order is also sought because the Court limited its application to state court plaintiffs but did not apply the same limiting principles to the GCCF claimants. Following *In re Latex Gloves Products Liability Litigation*, 2003 U.S. Dist. LEXIS 18118 (E.D. Pa. Sept. 5, 2003), which takes a relatively expansive view of the court's jurisdiction[2] the Court

---

[2] The *Latex Gloves* court nonetheless only extended its jurisdiction over state-court plaintiffs in those cases where the plaintiffs" attorneys had purposefully availed themselves of work product produced in the MDL. Indeed, the Case Management Order at issue required that these plaintiffs" attorneys submit themselves to the jurisdiction of the federal court in order to access that work product. *See Latex Gloves*, 2003 U.S. Dist. LEXIS 18118, at *2 n.2 (CMO "applies to actions filed in federal court that have been a part of the MDL, *actions in which plaintiff's counsel has*

4

ordered that its hold-back order "will not apply to state-court cases wherein plaintiffs' counsel has or had no other cases in this MDL and who have not participated in or had access to the discovery conducted in this MDL." (Order at 9.)

This Court, however, did not consider or discuss the same limiting jurisdictional principles in connection with the GCCF claimants, many of whom are not represented by counsel at all. (*Cf.* BP's Objections (Doc. 4696) at 3-5 (discussing why the Court does not have jurisdiction over many GCCF claimants). There is no reason why these limiting principles should not apply with equal force to the GCCF claimants who are not before this Court. Therefore, the Court's order should only apply to those GCCF claimants who either (1) have filed short form joinders or other federal cases that are now pending before the Court;  or (2) have participated in or had access to the discovery conducted in the MDL. There is no reason why the Court should treat GCCF claimants and state court plaintiffs differently in this regard.

Moreover, the court's findings related to the alleged benefits provided by the PSC to GCCF claimants do not alter this result.  The issue is not only whether the PSC's actions have benefited GCCF claimants but whether the Court has *jurisdiction* over those claimants. Even

---

signed the Confidentiality and Work Product Agreement of the Plaintiffs' Document Depository or accessed materials in the depository and agreed to be subject to CMO 48*, actions filed in state or federal court in which plaintiff's counsel has agreed, on the record, to be bound by the order, and, actions in which plaintiff's counsel has a fee-sharing arrangement with an attorney subject to the terms of the order") (emphasis added). Here, attorneys representing plaintiffs in other actions must similarly sign a certification submitting to the Court's jurisdiction in order to access confidential information in this case. (PTO 13 (Doc. 641).) BP does not concede that the *Latex Gloves* holding represents a warranted extension of a federal district court's jurisdiction, but notes that even under that case, there is no justification for extending the Court's jurisdiction to most GCCF claimants.

The *Latex Gloves* court distinguished *In re Showa Denko K.K. L-Tryptophan Products Liability Litigation-II*, 953 F.2d 162 (4th Cir. 1992), noting that "the *Showa Denko* transferee court's order was much more sweeping than" the order it issued. 2003 U.S. Dist. LEXIS 18118, at *5. Like the *Showa Denko* order that the Fourth Circuit held exceeded the district court's jurisdiction, the Court's order is similarly sweeping in its application to GCCF claimants without any limitation, such as a requirement that the claimants had filed an SFJ or are represented by an attorney who had accessed discovery conducted in the MDL.

under the expansive view of the court's jurisdiction in *Latex Gloves*, the court does not have such jurisdiction over the majority of GCCF claimants.

The United States Fifth Circuit Court of Appeal ruled on the issue of claimants that are non-parties to the litigation (i.e. GCCF only claimants) being subject to expenses of litigation and common benefit fees. In *Eric Vizena, Individually and on behalf of Erica Vizena, et al v. Union Pacific Railroad Co.,* (No. 01-30121, 5th Cir. 2001) ( A copy of the vacated order and decision is hereto as "Exhibit B)", the Fifth Circuit held:

> Union Pacific cannot be prevented from settling claims with persons not parties to any case pending before the court. Nor may the court subject non-parties to expenses of litigation, even though those expenditures may possible be used to accrue to their benefit. The court has no authority to create a common fund with money of persons who are not parties before the court. And even though these victims of the train derailment may become members of a class, their right to opt-out of the class may not be denied or interfered with.

### III. THE ORDER IS FACTUALLY UNSUBSTANTIATED AND INCORRECT.

Another reason the Order should be reconsidered is both because (1) the PSC did not submit any evidence whatsoever to support its Motion and not a single evidentiary hearing was even held and (2) there are material factual inaccuracies in the Order. For instance, the Order states:

> "Early on, the PSC successfully advocated on behalf of Vietnamese and other non-English speaking claimants, and convinced the GCCF to employ translated forms, instructions, etc. The PSC also arranged to make translators available to claimants" (Order, p. 5)

This is incorrect. BP had been providing both translators and translated forms long before the PSC had even been created and these policies continued under Mr. Feinberg and the GCCF.[3]

---

[3] As stated in BP's June 10, 2010 "Frequently Asked Questions About the Claims Process": "Some of the claims offices are staffed with translators including the following: For Vietnamese… For Spanish… For Khmer….BP community offices also have translators. Additional translators will be provided as needed at claims centers….Forms are available in Spanish….Forms are available in Vietnamese."
This was four months before the PSC was created (by Pre-Trial Order #8; October 8, 2010; Doc. #506).

## IV. THESE PLAINTIFFS AND CLAIMANTS HAVE NOT BENEFITTED FROM ANY WORK BY THE PSC.

The PSC has not shared any work product with the Becnel Law Firm (the counsel for these Plaintiffs and Claimants) that could help it in its negotiations with the GCCF or in any other aspect of this case; it has not received any updates from the PSC in any manner. It <u>did</u> receive one letter from liaison counsel, Stephen Herman, informing the firm that its assistance was unwanted and that it would receive no common benefit work from the PSC.  Mr. Herman went so far as even to send this email to others, specifically the accountant, Mr. Philip Garrett. (Please see Exhibit C, a copy of the email to Mr. Garrett.)  The PSC has not taken any action that led to the formation of a common fund or the GCCF, increased the previously established settlement fund, or protected this fund.

In essence, the PSC is attempting to have all claimants pay for things that benefitted no one in this matter.  The PSC has issued no reports or given anyone a voice to object to its intentions and plans.  It is inconceivable that in a case where a party has already been deemed to be at fault and established a $20 billion compensation fund, that a PSC could have already spent (as over two months ago) almost $12 million in <u>still uncompleted</u> trial preparation alone.

The Becnel Law Firm always had at least one representative attend each Coast Guard hearing to record and analyze the testimony and evidence.  The PSC rarely, if ever, attended any of these hearings.  This is just one example of how the PSC has failed to act fiscally responsible for the class.  Being named a PSC member does not give a person or firm carte blanche to spend money and incur unneeded costs.  The PSC has a fiduciary duty to the rest of the litigants to incur only necessary costs.  Most of the discovery in this case had already done by the United

---

(BP's FAQ's is available at:
http://www.bp.com/liveassets/bp_internet/globalbp/globalbp_uk_english/incident_response/STAGING/local_assets/downloads_pdfs/FAQs_about_the_BP_Claims_Process.pdf )

States Coast Guard; the Presidential Commission; Department of the Interior; Mineral Management Service; Bureau of Ocean Energy, Management, Regulation and Enforcement; numerous congressional committees and other federal and state agencies; as well as numerous private scientific foundations.

## V.     Lack of *Robins Dry Dock* Standing For Most GCCF Claimants Defeats The Rationale of the PSC's Holdback Request.

As recognized by this Court's August 26, 2011 ruling[4], most businesses and people economically impacted by the oil spill lack standing under general maritime law under the seminal case of *Robins Dry Dock & Repair v. Flint*, 275 U.S. 303(1927). Any fair reading of the pleadings in this case, in particular the PSC's holdback motion, leads inextricably to the conclusion that the vast majority of work performed by the PSC has been focused on the February 27, 2012 three-part trial, which is based on maritime law and intends to allocate fault among the parties responsible for (1) events leading up to and including the explosion on April 20, 2010; (2) source control and oil discharge quantification; and (3) remaining **liability issues**, including dispersants and cleanup.

While the work preparing for that trial may benefit some who actually have standing under general maritime law (as articulated by *Robins Dry Dock* and this Court's August 26, 2011 ruling), that work does not, and cannot, benefit most. Those businesses and people economically impacted by the oil spill, but who lack physical impact to their property or who are not commercial fishermen, only have OPA claims against the Responsible Party, BP.[5] And those claimants are simply following the requirements of OPA, and the directives of this Court, to

---

[4] Doc. 3830.
[5] See Doc. 3830, page 25-26.

present" their claims to the Responsible Party through the GCCF.[6]  Until that presentment is done, those claimants cannot legally file suit against BP.[7]

Even then, it is questionable whether any of the evidence developed by the PSC against BP will be relevant to those OPA claims since OPA is essentially a strict liability statute.  As this Court has recognized, "OPA allows recovery for economic losses 'resulting from' or 'due to' the oil spill, regardless of whether the claimant sustained physical damage to a proprietary interest" and OPA allows recovery for "[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, or natural resources, which shall be recoverable by *any claimant*.' 33 U.S.C. § 2702(b)(2)(E) (emphasis added)."[8]

The advantages of OPA, and lack of *Robins Dry Dock* standing, are why most claimants economically impacted by the oil spill are seeking resolution of their claims under the OPA in the GCCF.  -- instead of suing BP, Halliburton, Cameron, or others whom the PSC has spent millions of dollars and countless hours pursuing.  As stated by this Court, "one major remedial purpose of OPA was to allow a broader class of claimants to recover for economic losses than allowed under general maritime law."[9] Further this Court recognized that "The intent [of OPA] is to encourage settlement and reduce the need for litigation."[10]  It would be ironic, as well as grossly unfair and contrary to prior pronouncements of this Court, for claimants whose only possible recovery for their economic damages is through OPA and the GCCF to have those recoveries reduced for work that even this Court has ruled cannot benefit them.  The PSC's holdback motion should be denied for this additional reason.

---

[6] Id, at page 26: "[C]laimants' maritime causes of action against a Responsible Party are displaced by OPA, such that all claims against a Responsible Party for damages covered by OPA must comply with OPA's presentment procedure."
[7] See Doc. 4682, pages 3 – 5.
[8] Doc. 3830, page 21.
[9] Id.
[10] Id.

## IV. CONCLUSION:

For the forgoing reasons, Plaintiffs and Claimants respectfully request that this Court reconsider and withdraw its December 28, 2011 Order and Reasons (Doc #5022) as to the PSC's Motion to Establish Account and Reserve for Litigation Expenses. (Doc. #4507).

Date: January 12, 2012                               Respectfully submitted,


/s/ Daniel E. Becnel, Jr.
Daniel E. Becnel, Jr. (2926)
Salvadore Christina, Jr. (27198)
Will Percy (01532)
BECNEL LAW FIRM, LLC
106 W. SEVENTH STREET
P.O. DRAWER H
RESERVE, LA 70084
(985) 536-1186


## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of January, 2012, the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Don K. Haycraft, James P. Roy and Stephen J. Herman by operation of the Court's electronic filing system and to all counsel of record through the Lexis Nexis File & Serve.

/s/ Daniel E. Becnel, Jr.
Daniel E. Becnel, Jr.