UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|                                           |   |                      |
|-------------------------------------------|---|----------------------|
|                                           | : | MDL NO. 1657         |
| IN RE: VIOXX                              | : |                      |
|     PRODUCTS LIABILITY LITIGATION | : | SECTION: L           |
|                                           | : |                      |
|                                           | : | JUDGE FALLON         |
|                                           | : | MAG. JUDGE KNOWLES   |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

THIS DOCUMENT RELATES TO ALL GOVERNMENTAL ACTIONS

## ORDER & REASONS

The Court has pending before it the Plaintiff's Steering Committee's Emergency Motion

for Order Establishing Escrow Fund for Common Benefit Fees (Rec. Doc. 63560). The Court

has reviewed the motion, as well as the oppositions and motions to strike filed in response, and

now issues this Order and Reasons.

I.    Background

To put this matter in perspective, a brief review of this litigation is appropriate. This

multidistrict products liability litigation involves the prescription drug Vioxx, known generically

as Rofecoxib. Merck, a New Jersey corporation, researched, designed, manufactured, marketed

and distributed Vioxx to relieve pain and inflammation resulting from osteoarthritis, rheumatoid

arthritis, menstrual pain, and migraine headaches. On May 20, 1999, the Food and Drug

Administration approved Vioxx for sale in the United States. Vioxx remained publicly available

until September 20, 2004, when Merck withdrew it from the market after data from a clinical



trial known as APPROVe indicated that the use of Vioxx increased the risk of cardiovascular thrombotic events such as myocardial infarction (heart attack) and ischemic stroke. Thereafter, thousands of individual suits and numerous class actions were filed against Merck in state and federal courts throughout the country alleging various products liability, tort, fraud, and warranty claims. It is estimated that 105 million prescriptions for Vioxx were written in the United States between May 20, 1999 and September 30, 2004. Based on this estimate, it is thought that approximately 20 million patients have taken Vioxx in the United States.[1]

California was the first state to institute a consolidated state court proceeding on October 30, 2002. New Jersey and Texas soon followed suit, on May 20, 2003 and September 6, 2005, respectively. On February 16, 2005, the Judicial Panel on Multidistrict Litigation conferred MDL status on Vioxx lawsuits filed in various federal courts throughout the country and transferred all such cases to this Court to coordinate discovery and to consolidate pretrial matters pursuant to 28 U.S.C. § 1407. *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005). Additionally, a number of state and local governments filed suits against Merck seeking to recover amounts paid for Vioxx prescriptions on behalf of their citizens or civil penalties pursuant to state consumer protection statutes. Those suits were transferred to this Court by the JPML. Substantial pretrial discovery has been accomplished, as well as one bellwether trial.

Concurrently and independently, the Department of Justice through the United States Attorney's Office for the District of Massachusetts conducted its own investigation of Merck's

---

[1]For a more detailed factual background describing the events that took place before the inception of this multidistrict litigation, see *In re Vioxx Prods. Liab. Litig.*, 401 F. Supp. 2d 565 (E.D. La. 2005) (resolving *Daubert* challenges to a number of expert witnesses).

conduct with respect to Vioxx.  The record reflects that subpoenas were served on Merck before

Vioxx was withdrawn from the market and before this MDL was created.  The independent DOJ

investigation recently culminated in Merck pleading guilty to a criminal charge and agreeing to

pay a substantial civil penalty.  In connection with that process, representatives of the National

Association of Medicaid Fraud Units (NAMFCU) and Merck negotiated a pattern settlement

agreement which the fifty states may enter to receive a portion of that civil penalty as

reimbursement for amounts expended on Vioxx through the Medicaid program.

The states fall into three categories relative to the MDL and the NAMFCU settlement.

First, there are numerous states that do not have cases in the MDL and never pursued litigation

against Merck.  Those states are not subject to proceedings in the MDL or the PSC's present

motion.  Second, there are states who have suits against Merck pending in the MDL.  These

litigating states are (or were) equally entitled to participate in the NAMFCU-negotiated

settlements with Merck.  The litigating states fall into two subsets: litigating states who have

declined to enter into the NAMFCU settlements, and litigating states who have accepted the

NAMFCU offer.  It is this latter group, including New York, Florida, and South Carolina, which

are the subject of the present motion.[2]

The PSC previously filed a broader Motion for an Order Imposing Common Benefit

Obligation Upon the Recovery of Governmental Action Participants seeking a portion of any

recovery in the Governmental Actions pending in this Court to be set aside to compensate

---

[2]With respect to litigating states not participating in the NAMFCU settlements, the PSC
reports that it has reached voluntary common benefit contribution agreements with the majority
of those states.  This is understandable and justifiable because these litigating states apparently
plan to pursue their claims in litigation and will rely on the work product of the PSC.

attorneys who did work for the common benefit. (Rec. Doc. 62699). The Court ordered that that motion be held in abeyance with a briefing schedule to be set at a later time. (Rec. Doc. 62788). Now, in light of the impending settlement of the Medicaid claims of litigating states through the NAMFCU settlement, including New York, Florida, and South Carolina, the PSC moves for a more specific Order directing 6.5% of those funds into an escrow account for potential payment as common benefit attorneys' fees.

The Court has received oppositions from Merck and from the States of New York, Florida, and South Carolina, as well as correspondence from representatives of NAMFCU. The opponents dispute the Court's jurisdiction to order such an escrow, the PSC's right to common benefit compensation under these circumstances, and the sufficiency of the PSC's showing for an escrow order.

## II.    Law and Analysis

The PSC relies on the well-established common benefit fund doctrine, which the Court has previously addressed at length. *See generally In Re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640 (E.D. La. 2010). Generally, the Court has the authority to set aside a portion of a common fund as attorneys' fees to compensate work that contributed to creation of that fund. The PSC argues that its efforts in the MDL have benefitted litigating states such as New York, Florida, and South Carolina, and therefore a portion of the funds due to be paid to those states by Merck through the NAMFCU settlement process should be held in escrow for an eventual award of common benefit fees.

Merck and the interested states raise a number of arguments in opposition. New York, Florida, and South Carolina argue that the Court lacks jurisdiction over their cases for the

reasons set forth in previously-briefed motions to remand, and that ordering the escrow would violate their sovereign immunity. Both Merck and the states argue that the PSC has failed to make a sufficient showing for an escrow order, which is essentially a form of preliminary injunction.

The relief sought by the PSC necessitates an analysis comparable to that required for a preliminary injunction. Injunctive relief "should only be granted when the movant has clearly carried the burden of persuasion" and shown:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (quotation omitted).

That showing has not been made. At the outset, the Court acknowledges the questions of jurisdiction and state sovereign immunity. However, the Court need not confront those issues because the motion can be decided on another ground. An escrow of funds for a common benefit assessment is appropriate only where the common benefit labor created the settlement fund. The PSC has not sufficiently shown that connection with regard to New York, Florida, and South Carolina, and thus fails on the element of a substantial likelihood of entitlement to a portion *of the NAMFCU settlement funds*.

There is an apparently insurmountable disconnect between the PSC's work in the MDL and the DOJ/NAMFCU settlement fund. Certainly, the PSC and others performed substantial work in the MDL. That common benefit work produced a $4.85 billion master settlement agreement, and those attorneys were accordingly compensated with a portion of the fund created

by their efforts. Now the PSC seeks additional compensation for work in connection with the

pending governmental actions, but the fund that the PSC requests be tapped and escrowed is not

obviously a result of its efforts. The record reflects that the DOJ/NAMFCU settlement fund was

created through a criminal investigation that began before this MDL was created, and through

the independent efforts of the United States Attorney's Office for the District of Massachusetts,

the Department of Justice, and the NAMFCU negotiating team. Perhaps the PSC's concurrent

efforts in civil litigation against Merck brought some facts to light or otherwise facilitated the

DOJ/NAMFCU settlement; but it may be impossible to articulate or quantify that causal

relationship, and the PSC has not sufficiently shown that the DOJ/NAMFCU settlement is a

common fund produced by its efforts.

It may well be, as the PSC argues, that "Government Action Participants who have

litigated their claims in the MDL, like Florida, New York, and South Carolina, have benefitted

from the work product of the ... PSC, and other common benefit lawyers." (Rec. Doc. 63586 at

2). But the issue here is not one of benefit, but one of nexus. The DOJ/NAMFCU settlement

fund does not appear to be a product of any benefit conveyed on the settling states by the PSC's

efforts. All fifty states have the option to accept the NAMFCU-negotiated agreement and settle

Medicaid-based claims with Merck, regardless of litigating or non-litigating status. If New

York, Florida, and South Carolina had never filed suit against Merck and never had an action

pending before this Court, they would be in no different position with respect to the NAMFCU

settlement. The Court does not find it appropriate to stretch the common benefit doctrine on

these facts to order an escrow of funds available to litigating and non-litigating states alike

independent of the PSC's efforts. *Cf. United States ex rel. Bogart v. King Pharms.*, 493 F.3d

323, (3rd Cir. 2007) (denying *qui tam* relator's claim for attorneys' fees from recoveries of non-litigating states that settled with defendant independently through NAMFCU-negotiated process)

In short, even assuming jurisdiction and authority to divert a portion of settlement funds directed towards state Medicaid programs under these circumstances, there has not been a sufficient showing that the PSC is entitled to common benefit compensation out of those funds. Likewise, the Court is doubtful of the risk of irreparable injury to the PSC or that the public interest would be served by diverting those funds into escrow

The PSC also requests that the Court "extend the escrow order to all government actions pending in the MDL in which there is a settlement with Merck and the governmental entity has not reached an agreement with the PSC for the payment of common benefit fees," which would address non-NAMFCU settlements between Merck and litigating states or entities. (Rec. Doc. 63586 at 4). The parties have not informed the Court of any non-NAMFCU settlements between Merck and a litigating state, and accordingly that request is premature. At an appropriate time, the Court will set a briefing schedule on that request and the pending fee-related motion.

Accordingly, the PSC's emergency motion (Rec. Doc. 63560) is DENIED.

New Orleans, Louisiana, this 3rd day of January, 2012.

UNITED STATES DISTRICT JUDGE

-7-