UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * | MDL NO. 2179 |
| | * | CIVIL ACTION NO. MD-02179 |
| | * | SECTION: J |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | * | JUDGE BARBIER MAG. JUDGE SHUSHAN |

*******************************************

### NON-PARTY KRUPNICK/SMITH CLAIMANTS' MEMORANDUM IN SUPPORT OF BP's MOTION FOR RECONSIDERATION AND CLARIFICATION

The Undersigned represents a large group of claimants ("Krupnick/Smith Claimants") who did NOT file a claim in the Transocean Limitation Action and who have not filed litigation in the present MDL; many of these claimants either have claims pending before the GCCF with at least one payment determination letter issued or have submitted documented claims prior to December 30, 2011, and are awaiting a payment determination.[1]  The Undersigned hereby respectfully requests the Court re-consider and clarify the Orders of December 28, 2011, and January 4, 2012, based upon unique issues presented by such claimants, to include them in the category of victims for whom a "hold-back" is not required.

---

[1] The Undersigned's clients subject to this Memorandum are not before the Court as parties.  Instead, they are claimants who did NOT join the Limitation Action and have claims pending in the GCCF.  If the Court requires a limited intervention for the purposes of argument related solely to the applicability of a hold-back from victims who did not file a claim in the Limitation Action and who are not before the Court, the Undersigned is prepared to file such at a later date.

1

**SUMMARY OF ARGUMENT AND RELIEF REQUESTED**

At the time of the initial hold-back Order, the Court was apparently unaware of unique circumstances and legal arguments which would properly exempt certain groups of claimants.[2] Claimants represented by the Undersigned are uniquely positioned because they intentionally chose not to file a claim in the Limitation Action, effectively opting out of the MDL litigation at this point. Many of the Undersigned's clients have received settlement offers or Payment Determination Letters prior to December 30, 2011, but pending submissions for costs or other efforts by the Undersigned may result in later dated determination letters for those claimants.[3] Moreover, other claimants represented by the Undersigned have submitted documented claims to the GCCF and are awaiting settlement offers or payment determination letters.

In the January 4, 2012, clarifying Order, the Court correctly recognized claimants who have received a settlement offer or payment determination letter prior to December 30, 2011, should not be covered by the "hold-back" Order. For the very reasons which underlie the Court's justification for that amendment, the December 30, 2011, Order should be further clarified to exempt those claimants who have not opted into the "Limitation Action" and who have either (1) received a determination letter through the GCCF prior to December 30, 2011, irrespective of when the claim is ultimately paid by the GCCF or if the claim results in multiple additional determination letters after the December 30, 2011, date; or (2) who have submitted

---

[2] To conserve space, the Undersigned will focus on arguments in addition to those already raised in briefing before the Court. However, the Undersigned incorporates and adopts as if fully restated herein the arguments which support the Undersigned's application and jurisdictional arguments offered by other claimants' counsel, Defendant BP, and/or others. *See*, *e.g.*, Rec. Doc. 4682, 4682, 5044, 4722, 4679, 4678, and 5146.

[3] The Undersigned currently has approximately 160 clients who, prior to December 30, 2011, received payment determination letters that they are willing to accept, subject to the resolution of issues regarding reimbursement of costs. *See* Exhibit A, Affidavit of Robert J. McKee. Despite the fact that these claims, on their face, are not subject to a hold-back pursuant to the Court's Order, the Undersigned has not been able to obtain confirmation from the GCCF that these claims will be paid without a hold-back.

claims and supporting documentation to the GCCF and are simply awaiting settlement offers or payment determination letters.

## FACTUAL BACKGROUND

The Fund which supports the GCCF was announced by the White House on June 16, 2010.  The GCCF was established August 6, 2010.  *See* Exhibit B.  The GCCF began accepting claims on August 23, 2010.  Acceptance and evaluation of claims by the GCCF began prior to even the appointment of the PSC on October 8, 2010 and certainly well before any substantial work by the PSC.  *See* Rec. Doc. 506.

As perhaps was not clear earlier, the GCCF claim analysis is based solely on specific causation and the specific damage model submitted by the claimants.   There is no issue of liability in the GCCF.  The PSC arguments and evidence related to liability in the MDL have no place whatsoever, by design, in the GCCF analysis.   Said another way, irrespective of the PSC efforts, the GCCF can and would resolve claims.

The undersigned represents a large number of claimants who have participated and are participating in the GCCF process.   Because the GCCF process focuses only on the submission of claims and analyses of specific links between admitted liability and the specific damage evidence unique to those claimants, and in reliance upon the understanding of what the GCCF process would involve, the Undersigned agreed to a greatly reduced attorneys' fee – a direct benefit to the claimants.  The Undersigned has undertaken to formulate specific causation and damage claim submissions, expending costs on work unique to each claimant.  Importantly, the GCCF recognizes the obligation to reimburse those cost expenditures as part of the claims process, further justifying the greatly reduced attorneys' fee.  *See* Exhibit A, Affidavit of Robert J. McKee.

Long after the determination to pursue GCCF claims, potential claimants were provided the opportunity to opt-in to the Transocean Limitation action.  Unlike a class action where there is an obligation to affirmatively opt-out of litigation, a prospective plaintiff in the Transocean Limitation Action had to affirmatively opt-in by filing a short form titled "IN RE: OIL SPILL by 'Deepwater Horizon' Direct Filing Short Form."  The effect of filing said short form is best stated by paraphrasing the short form: "to assert a claim against Transocean is to adopt and incorporate the Master Answer to the Transocean complaint and petition, and/or intervene into, join and otherwise adopt the Master Complaint filed in the present MDL." *See* Exhibit C, *IN RE OIL SPILL by 'Deepwater Horizon' Direct Filing Short Form*.

In summary, the Undersigned represents a group of claimants who have not opted into the Limitation Action and who have not filed litigation in the present MDL, all of whom either have had issued a payment determination letter but have not exhausted the efforts to resolve those GCCF claims, or submitted claims and were awaiting GCCF settlement offers, prior to December 30, 2011.  Those claimants, as a matter of law and fact, must be excluded from the hold-back Order of January 4, 2012.

**I.      THOSE CLAIMANTS WHO HAVE INTENTIONALLY CHOSEN TO OPT-OUT OF THE LIMITATIONS ACTION SHOULD BE EXEMPT FROM THE PSC HOLD-BACK**

Central to any hold-back order by an MDL Court are the principles of jurisdiction and some purposeful availment by the plaintiff of the benefits of the PSC's work.  Those who have opted out of the Limitation Action **and** who have not filed litigation in the present MDL **and** who are resolving claims through the GCCF neither fall within the jurisdiction of the Court nor have those claimants purposefully availed themselves of common benefit work.

The provisions of the Oil Pollution Act of 1990 ("OPA"), in concert with BP's creation of the GCCF, make this matter unique.

In the December 28, 2011, Order, this Court notes that the PSC has successfully argued for the application of general maritime law and the possibility of punitive damages in this litigation. *See* Rec. Doc. 5022, p. 6.  This distinction, however, is immaterial for the large number of claimants who sustained pure economic damages -- their claims are NOT subject to general maritime law. To the extent that a claimant may have suffered damages due to actual pollution, the threat of punitive damages may prove useful in the future if unresolved. Nonetheless, contrary to the Court's suggestion, that threat has not had any practical impact on the GCCF claims process and most certainly has not led to a more liberal causation standard supported by any record evidence.[4]

For instance, the GCCF protocol for Emergency Advance Payments released on August 23, 2010 states in Section II.G that:

> The GCCF will only pay for harm or damage that is proximately caused by the Spill. The GCCF's causation determinations of OPA claims will be guided by OPA and federal law interpreting OPA. Determinations of physical injury and death claims will be guided by applicable law.

The most current version, dated February 8, 2011, contains identical language.

There is nothing to suggest that the PSC's efforts had any impact on the claims evaluation formula.[5]  Even if such an argument could be made, notions of fundamental fairness would require this Court to revise its Order to apply only to those specific types of claims where

---

[4] Even if there was some proof of a more liberal claims process, it is doubtful that the Court would be empowered to impose any hold-back on an unrepresented pre-suit claimant with whom a defendant decides to resolve a potential case.  The Court recognizes that the impact of the common benefit doctrine is upon the attorneys and clients who specifically avail themselves of the benefit of common benefit work – not on the psyche of a defendant.  In this case, GCCF is supposed to be segregated from the defendant BP's motivations through the establishment of the fund, even one step further removed from the typical presentation.

[5] GCCF settlements are based on a formula which addresses facts such as earnings and business growth.  It is in no way based upon the odds of success at a trial or the threat of punitive damages.

5

the benefit occurred, and then only if the plaintiffs purposefully avail themselves of this Court's jurisdiction. Inevitably, a number of claims may ultimately require suit and, at that time, the clients will affirmatively subject themselves to the jurisdiction of this Court and any hold-backs.

### II. ANY CLAIMANT WHO RECEIVED A SETTLEMENT OFFER OR PAYMENT DETERMINATION LETTER PRIOR TO DECEMBER 30, 2011, MUST BE EXEMPT FROM THE HOLD-BACK ORDER SO LONG AS THEY RESOLVE THEIR CLAIM THROUGH GCCF.

The Undersigned represents a large number of claimants who received Payment Determination Letters prior to December 30, 2011. However, those claims are not resolved yet, in large part as the GCCF further considers the cost application attendant to each claim. Moreover, as has been true throughout this process, many claimants receive an initial determination letter and with additional information submitted to the GCCF, there may be a subsequent Payment Determination Letter.

It is important to understand the GCCF often requests updated economic information. When such is provided to the GCCF by the claimant, a new Payment Determination Letter may be issued. Also, offers are often made simultaneously for both a partial and total settlement. The partial settlement is often automatically forwarded while the claimant can then accept or reject the total settlement amount. The total settlement amount may be amended after submission by the claimant of additional claimant-based information. A subsequent Payment Determination Letter may be issued. *See* Exhibit A, Affidavit of Robert J. McKee.

While the Court amended the Order on January 4, 2012, to specifically exclude settlement payments made on or before December 30, 2011, and to exclude settlement offers contained within payment determination letters from the GCCF issued on or before December 30, 2011, that portion of the Order should be clarified to ensure those who have received a determination letter prior to December 30, 2011, and who resolve their claim through the GCCF

6

at a later date, are exempt from the 6% hold-back.  This is true irrespective of whether the claim is resolved at that time or a later time.  It would be patently unfair to impose a full 6% hold-back when the claim later resolves because of a supplemented or clarified submission, or the resolution of the cost reimbursement issues.

      Moreover, the Court has already recognized it would be legally and factually inappropriate to impose a 6% hold-back on those claims who receive a settlement offer or payment determination letter prior to December 30, 2001, even if they have not yet received the payment.   It would be patently unfair to then impose a 6% hold-back on the full amount if the GCCF agrees with an additional submission and provides an incremental increase on the payment determination or issues a new payment determination letter.   Such a windfall to the PSC and harm to the claimants could not have been intended by the Court.

      Specifically, undersigned counsel suggests that the current order is problematic with regard to a multitude of situations: (1) where the GCCF has issued a determination letter prior to December 30, 2011, but the client is unsure whether to accept, then subsequently decides to accept and a new determination letter is issued—which date applies; (2) where the GCCF issues a determination letter before December 30, 2011, but fails to include a category of damages or otherwise improperly calculates the award and, when the error or oversight is corrected, a new determination letter is issued, which date applies; (3) where the GCCF has issued a determination letter before December 30, 2011, but has not included costs, is the entire award subject to a hold-back if the determination letter is re-issued?; (4) the GCCF has issued an award for interim payments, by definition recognizing the need for and acceptance of future payments.

      All that being said, the solution is easy by granting the relief requested herein.

### III. THE HOLD-BACK IMPOSES HARDSHIP UPON CERTAIN CLAIMANTS BASED UPON THE SIZE OF THE CLAIM AND IS PATENTLY UNFAIR WHERE THERE IS A REDUCED FEE CONTRACT.

The Undersigned agreed, in reliance on the stated GCCF claims process, to a greatly reduced attorneys' fee contract for any claims which are resolved through the GCCF. *See* Exhibit A, Affidavit of Robert J. McKee.

While "hold-backs" are common in MDL resolutions, the Court must give consideration to the proportional impact on clients and attorneys. That is, where a 6% percent hold-back for common benefit fees may be acceptable in cases involving 40% or 33% attorneys' fee contracts, imposing a 6% hold-back in a 10% fee contract is disproportionate and unprecedented.[6] Moreover, given the cost and efforts by the Undersigned to navigate the GCCF process, it would be patently unfair for the PSC to extract 60% or even 10% of the fee.[7] In short:

- The Undersigned entered into greatly reduced attorneys' fee contracts and agreed to do the work necessary to submit and resolve claims in the GCCF based upon the reliance on the then-existing GCCF process and without any indication of a hold-back potential;

- Because the GCCF does not concern itself with liability, the Undersigned has had to focus on specific causation unique to the particular claimant and specific economic damages particular to the claimant.

- All of this claim work and the funds expended to submit a valid claim have been incurred by the Undersigned, by definition and in fact, without regard to any PSC efforts;

- There are a large number of claimants with claims below $25,000, and some are as little as $5,000. Imposition of a 6% hold-back, particularly where unrepresented, generates a hardship on those claimants where the PSC can not show an identifiable benefit to that claimant and such imposition would undoubtedly motivate greater filings in the MDL.

---

[6] The Undersigned is unable to find any example to justify a 60% recovery of attorneys' fees for common benefit work from each and every plaintiff, claimant, and/or potential claimant.

[7] The GCCF process has proved to be extremely labor-intensive for claimants' attorneys. The GCCF usually requires not only the submission of extensive documentation, but also regularly requests updated documentation and supplemental submissions to address specific questions unique to each claim.

8

- In those claims, the imposition of the hold-back actually frustrates the goals of the GCCF without any identifiable benefit offered by the PSC.

Awaiting later resolution and holding the monies in a fund or trust does not rehabilitate the harm. Instead, for claimants such as those represented by the Undersigned who did not file a claim in the Limitation Action or who have a payment determination letter dated prior to December 30, 2011, the uncertainty of what will be the ultimate factual record and legal basis for the hold-back at some later hearing date denies an opportunity to resolve claims early.[8]

## CONCLUSION

Given the entirety of the foregoing, in addition to the arguments asserted by BP, there exists good cause for this Court to reconsider and clarify and/or modify the December 28, 2011, and January 4, 2012, orders to exempt:

(1) claimants who have not opted-in to the Limitation Action and who have not filed litigation in the present MDL, and

(2) who have either had a settlement offer or a Payment Determination Letter issued on or before December 30, 2011, (and the claim is ultimately resolved through the GCCF) or have submitted a claim and supporting documentation to the GCCF prior to December 30, 2011, and are awaiting a settlement offer or Payment Determination Letter (and the claim is ultimately resolved through the GCCF).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing Memorandum will be filed into the record via the Court's ECF electronic filing system and will be served on all counsel via Lexis-Nexis File & Serve, pursuant to PRE-TRIAL ORDER NO. 12 this 12th day of February 2012.

---

[8] To be sure, if the GCCF rejects the claim or the offer is not sufficient, the primary option for a claimant is to file in the MDL. At that point, once the GCCF process has been exhausted, the Court will impose the 6% hold-back.

9

Respectfully submitted.

          KRUPNICK, CAMPBELL, MALONE,
          BUSER, SLAMA, HANCOCK,
          LIBERMAN & McKEE, P.A.

By: /s/  Robert J. McKee

Robert J. McKee, Esquire
Florida Bar Number: 972614
rmckee@krupnicklaw.com
12 Southeast Seventh Street, Suite 801
Fort Lauderdale, Florida  33301-3426
954-763-8181 telephone
954-763-8292 facsimile