## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO ON APRIL 20, 2010 | MDL NO. 2179 |
| | CIVIL ACTION NO. 2:10-MD-02179 |
| | SECTION J |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | JUDGE BARBIER MAG. JUDGE SHUSHAN |

**************************************************************************

### PLAINTIFFS' MEMORANDUM IN SUPPORT
### OF MOTION TO RECONSIDER[1]

MAY IT PLEASE THE COURT:

In addition to the reasons articulated in Rec. Doc. 4682, this Court should reconsider its December 28, 2011 holdback order and deny the PSC's request for three reasons:

1.  The PSC has  failed to meet its burden, akin to the burden for the granting of a preliminary injunction, in showing that it created the Gulf Coast Claims Facility ("GCCF") or benefitted specific claimants in the GCCF, thereby entitling the PSC to a holdback of funds awarded by the GCCF.

2.  Many claimants pursuing claims through the GCCF do not have standing to pursue claims under general maritime law.  Rec. Doc. 3830; *Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 48 S.CT. 134, 72 L.Ed 290 (1927).  Since the PSC's work has focused exclusively on issues leading up to the February 27, 2012 trial which will be conducted under maritime law, that work is neither beneficial nor useful to the

---

[1] Submitted pursuant to instructions detailed in Rec. Doc. 5083.

claimants who lack general maritime law standing and can only pursue claims pursuant to the Oil Pollution Act, and through the GCCF claims process.

3. In their cautionary filings in the Limitation Proceedings, many claimants specifically renounced the use of and reliance upon the PSC's work product and specifically indicated their clear intent to use their own work product to settle claims under the rubric of the GCCF. The PSC has not done anything to show that those claimants did not do exactly what they said they were going to do —resolve claims in the GCCF under OPA with no use of the PSC work product.

## 1.   The PSC Did Not Meet Its Burden Under a Preliminary Injunction Standard.

Any "holding" of money—until the PSC gets around to proving entitlement to such funds— is inappropriate, particularly where no factual basis has been provided by the PSC and when no opportunity was given through a hearing for claimants to controvert the PSC's claims.

Judge Fallon issued a ruling on another Plaintiff's Steering Committee's request for a holdback just days after this Court's December 28, 2011 Order.[2]  In that situation, the PSC sought a "holdback" of money from certain settlements, and argued, as the PSC does here, that proof of entitlement to the monies held back would come later.  In denying that PSC's holdback request, Judge Fallon stated, "Generally, the Court has the authority to set aside a portion of a common fund as attorneys' fees to compensate work that contributed to creation of that fund."

Judge Fallon then articulated the standard that the PSC must meet to hold back any amount of money under the Common Fund Doctrine:

> The relief sought by the PSC necessitates an analysis comparable to that
> required for a preliminary injunction. Injunctive relief "should only be
> granted when the movant has clearly carried the burden of persuasion" and
> shown:  (1) a substantial likelihood that plaintiff will prevail on the merits,
> (2) a substantial threat that plaintiff will suffer irreparable injury if the

---

[2] *See* <u>In Re: Vioxx: Products Liability Litigation</u>, 2005 MDL 1657, Doc. 63612, "Order and Reasons" (1/3/12).

injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest. Anderson v. Jackson, 556 F.3d 351, 360 (5th Cir. 2009) (quotation omitted).

Judge Fallon further stated, "That showing has not been made." Judge Fallon recognized that the holdback request raised issues of jurisdiction and state sovereign immunity. He ruled, however, that he need not address those thornier issues. Judge Fallon stated that "An escrow of funds for a common benefit assessment is appropriate only where the common benefit labor created the settlement fund. The PSC has not sufficiently shown that connection with regard to New York, Florida, and South Carolina, and thus fails on the element of a substantial likelihood of entitlement to a portion of the NAMFCU settlement funds." *Id.* (Emphasis added.)

Here the preliminary injunction standard articulated by Judge Fallon was neither imposed nor met. For this reason alone, the PSC's holdback motion should be denied. In the least, a hearing should be set so that the PSC can offer evidence of its entitlement to a holdback, and an opportunity be given to controvert such a request through testimony and other evidence.

## 2.  Lack of *Robins Dry Dock* Standing For Most GCCF Claimants Defeats The Rationale of the PSC's Holdback Request.

As recognized by this Court's August 26, 2011 ruling[3], most businesses and people economically impacted by the oil spill lack standing under general maritime law under the seminal case of *Robins Dry Dock & Repair v. Flint*, 275 U.S. 303(1927). Any fair reading of the pleadings in this case, in particular the PSC's holdback motion, leads inextricably to the conclusion that the vast majority of work performed by the PSC has been focused on the February 27, 2012 three-part trial, which is based on maritime law and intends to allocate fault among the parties responsible for (1) events leading up to and including the explosion on April

---

[3] Rec. Doc. 3830.

20, 2010; (2) source control and oil discharge quantification; and (3) remaining liability issues, including dispersants and cleanup.

While the work preparing for that trial may benefit some who actually have standing under general maritime law (as articulated by *Robins Dry Dock* and this Court's August 26, 2011 ruling) that work does not, and cannot, benefit most. Those businesses and people economically impacted by the oil spill, but who lack physical impact to their property or who are not commercial fishermen, only have OPA claims against the Responsible Party, BP.[4] And those claimants are simply following the requirements of OPA, and the directives of this Court, to "present" their claims to the Responsible Party through the GCCF.[5]  Until that presentment is complete, those claimants cannot legally file suit against BP.[6]

Even then, it is questionable whether any of the evidence developed by the PSC against BP will be relevant to those OPA claims since OPA is essentially a strict liability statute.  As this Court has recognized, "OPA allows recovery for economic losses 'resulting from' or 'due to' the oil spill, regardless of whether the claimant sustained physical damage to a proprietary interest" and OPA allows recovery for "[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, or natural resources, which shall be recoverable by *any claimant*.' 33 U.S.C. § 2702(b)(2)(E) (emphasis added)."[7]

The advantages of OPA, and lack of *Robins Dry Dock* standing, are why most claimants economically impacted by the oil spill are seeking resolution of their claims under the OPA in the GCCF -- instead of suing BP, Halliburton, Cameron, or others whom the PSC has spent millions of dollars and countless hours pursuing.  As articulated by this Court, "one major

---

[4] *See* generally Rec. Doc. 3830, page 25-26.
[5] Id, at 26: "[C]laimants' maritime causes of action against a Responsible Party are displaced by OPA, such that all claims against a Responsible Party for damages covered by OPA must comply with OPA's presentment procedure."
[6] See Rec. Doc. 4682, pages 3– 5.
[7] See Rec. Doc. 3830, page 21.

4

remedial purpose of OPA was to allow a broader class of claimants to recover for economic losses than allowed under general maritime law."[8] Further this Court recognized that "The intent [of OPA] is to encourage settlement and reduce the need for litigation."[9]  It would be ironic, as well as grossly unfair and contrary to prior pronouncements of this Court, for claimants whose only possible recovery for their economic damages is through OPA and the GCCF to have those recoveries reduced for work that even this Court has ruled cannot benefit them.  The PSC's holdback motion should be denied for this additional reason.

### 3.   Claimants Have Specifically Renounced Use of or Reliance Upon PSC Work Product So The *Latex Gloves* case is nonanalogous.

Even those claimants who did file a protective claim in the Limitation Proceeding did so by very clearly stating  that it was their intent to pursue OPA claims through the GCCF and would do so using their own work product and would not rely upon the PSC's work product.  For example, Doc. 28610 states clearly that the claimants "object to this [Limitation] process" and "specifically state that this limited appearance by them" did not evidence an agreement that the Limitation Proceeding was "appropriate or legally cognizable" or that their response "served as acquiescence to the jurisdiction of this court to litigate their claims." Those claimants specifically reserved any and all rights they had against all parties.  Further, they specifically objected to the jurisdiction of this court to adjudicate their claims until they "filed a lawsuit in the venue of Claimants' choosing."

Of critical important for  purposes of the PSC's holdback request, those claimants "specifically reserve[d] the right to pursue resolution of all claims it may have under all

---

[8] *Id.*
[9] *Id.*
[10] *See* Rec. Doc. *286,* "Objection To Jurisdiction, Objection To Process, Other  Objections, Reservation Of Rights, Notice Of Claims, And Original Answer Of Claimants " in *In Re: The Complaint and Petition of Triton Asset Leasing GmbH, et al.*, Civil Action No. 10-2771.

appropriate channels, including, but not limited to, the Gulf Coast Claims Facility."  Anticipating

such a holdback request, these claimants "similarly provide[d] notice that Claimants have

engaged the undersigned attorneys to prosecute Claimants' claims, and Claimant's undersigned

attorneys have been and shall continue to prosecute Claimant's claim(s) with their own

independent judgment and work product. Claimant hereby does not adopt the Amended Master

Complaint pending against all Defendants, and objects to any party other than the Undersigned

Attorneys prosecuting Claimants' claims without Claimants' written authorization and consent."

      The PSC has not, and cannot, controvert this intent or the fact that the claimants have

relied on no work product produced by the PSC to resolve claims in the GCCF.  Further, at a

minimum, the PSC cannot even show that any of its work product was even offered to others to

help them resolve their claims.  Such statements like the one in Doc. 286 are directly contrary to

those in *In re Latex Gloves Products Liability Litigation*.[11]  As pointed out by BP in footnote 2 of

its memorandum,[12] the Court in *Latex Gloves* extended its jurisdiction over state court plaintiffs

but only those who were represented by plaintiff attorneys who had purposely availed

themselves of work product produced in the MDL.  In this situation, just the opposite occurred

where attorneys have specifically disavowed work product produced in the MDL to resolve their

claims.

      For the foregoing reasons, this Court should reconsider its decision of December 28,

2011 and deny the PSC's holdback request.

---

[11] 2003 U.S. Dist. LEXIS 18118 (E.D. Pa. Sept. 5, 2003).
[12] Rec. Doc. 5044-1, "Memorandum In Support Of Expedited Motion For Clarification and Reconsideration Of The Court's December 28, 2011 Order And Reasons As To The PSC's Motion To Establish Account And Reserve For Litigation Expenses"

Respectfully submitted,

BY: /s/J.R. Whaley
Richard J. Arsenault
J.R. Whaley
NEBLETT, BEARD & ARSENAULT
P.O. BOX 1190
ALEXANDRIA, LA  71309
(318) 487-9874

Edwin Armistead Easterby
WILLIAM, KHERKER, HART & BOUNDAS, LLP
8441 GULF FREEWAY, SUITE 600
HOUSTON, TX 77017
(713) 230-2200

Jerrold S. Parker
PARKER WAICHMAN ALONSO LLP
3301 BONITA BEACH ROAD
BONITA SPRINGS, FL 34134
(239) 390-1000

Tim Howard
HOWARD & ASSOCIATES, P.A.
8511 BULL HEADLEY ROAD, SUITE 405
TALLAHASSEE, FL 32312
(850) 298-4455

Samuel T. Adams
460 GRACE AVENUE
PO BOX 191
PANAMA CITY, FL 32402-0191
(850) 785-3469

Douglas S. Lyons
LYONS & FARRAR, P.A.
325 N. CALHOUN STREET
TALLAHASSEE, FL 32301
(850) 222-8811

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of January, 2012, the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Don K. Haycraft, James P. Roy and Stephen J. Herman by operation of the Court's electronic filing system and to all counsel of record through the Lexis Nexis File & Serve.

/s/J.R. Whaley

8