UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | : | MDL-2179 |
| | : | |
| | : | SECTION J |
| | : | |
| THIS DOCUMENT RELATES TO: | : | JUDGE BARBIER |
| | | MAG. JUDGE SHUSHAN |
| ALL ACTIONS | : | |

...................................................................................................................

**STATEMENT OF INTEREST BY THE STATE OF FLORIDA
RELATED TO THE DECEMBER 28, 2011 ORDER**

**COMES NOW** Pamela Jo Bondi, the Attorney General for the State of Florida ("Florida"), and responds to the Court's invitation (Doc. 5083) for additional briefing on the applicability of the December 28, 2011 Order (Doc. 5022) to individuals and businesses that presented their claims to the Gulf Coast Claims Facility ("GCCF") but have chosen not to join this litigation. Although Florida has many concerns with the December 28th Order, as later amended (Doc. 5064), this statement focuses on the limited issue currently before the Court; the ability of the Plaintiffs' Steering Committee ("PSC") to take hundreds of millions of dollars out of the pockets of the individual and business claimants who have decided to pursue non-litigation recoveries through the claims process required by the Oil Pollution Act of 1990 ("OPA"). Florida respectfully submits that the PSC has no rightful claim on these GCCF payments.[1]

**I.     Introduction**

---

[1] By the filing of this document, Florida does not acknowledge or waive its right to object to federal jurisdiction over any potential action that may be filed as a result of the Deepwater Horizon oil spill. Nor does Florida acknowledge its support for or waive its right to object to the transfer and consolidation of actions brought by any governmental entities into a single action with all litigants having filed claims in connection with this matter.

The Attorneys General of the Gulf Coast states are entrusted with protecting the collective legal rights of their citizens and advocating for their state's interests and public policy concerns as a sovereign. *See*, *e.g.*, *State ex rel. Att'y Gen. v. Gleason,* 12 Fla. 90, 112 (Fla. 1869). As Florida's chief legal officer, the undersigned has numerous responsibilities related to the Deepwater Horizon oil spill and its impact on Florida's sovereign interests and the interests of its people, environment, and economy, including monitoring and seeking to improve the GCCF claims process, for the benefit of all affected Florida citizens and businesses. Attorney General Bondi has met with Mr. Feinberg on several occasions and offered detailed suggestions for improvements to the GCCF process (as have the other Gulf Coast State Attorneys General).

It has been the Gulf Coast State Attorneys General, along with the United States Department of Justice, who are responsible for any meaningful improvements to the GCCF claims process. The only change to the claims process that the PSC might claim some credit for involves language describing the GCCF's relationship with BP, a nonmonetary issue. Moreover, General Bondi repeatedly requested that the GCCF undergo an independent audit, an agreement ultimately obtained by the Department of Justice.[2] Once the independent audit was announced, it was the Gulf Coast State Attorneys General (and not the PSC) who worked with the Department of Justice to help define the scope and nature of the independent audit. In contrast to these prolonged, significant, and continuing efforts to improve the GCCF claims process, the PSC has directed its energies towards diverting claimants from the GCCF and into this litigation.

## II.     Overview

The GCCF operates the claims process required by OPA on behalf of BP, a responsible party for the *Deepwater Horizon* blowout. As General Bondi and the other Gulf Coast State

---

[2] The December 28th Order incorrectly states that the PSC, together with DOJ, "persuaded Mr. Feinberg to agree to such an audit." (Doc. 5022 at 5.)  There does not appear to be any record support for this statement; in fact, the PSC has never made this argument in its filings.

2

Attorneys General have often said, a fair and efficient claims process is necessary to fulfill the Congressional intent and allow the prompt and full recovery of the Gulf Coast from this economic and environmental disaster. As Rep. Hammerschmidt explained in urging passage of OPA, it was "intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation." 135 Cong. Rec. H7965 (daily ed. Nov. 2, 1989).

With OPA, Congress created a non-judicial claims process that allows parties damaged by an oil spill the opportunity to be made whole. The OPA process is intended to be straightforward, providing prompt compensation to claimants without the requirement of retaining a private attorney. The claims process contemplated by OPA is thus designed to maximize claimant recoveries, while avoiding the delay and expense of litigation. Of course, if claimants are unsatisfied with the amounts offered through the claims process, they can then pursue claims with the Oil Spill Liability Trust Fund or file litigation.[3] Under OPA, a strict liability statute, the liability for damages has already been established and the claims process allows the involved parties to determine the amount required to make the claimants whole.[4]

The common benefit fund proposed by the PSC would be funded by, *inter alia*, six percent (6%) of any settlements or payments by the GCCF to individuals or business claimants on or after December 31, 2011. (Doc. 5064.) The PSC has argued that the fund would provide a source of compensation for the "common benefit" work if it was unable to obtain compensation directly from the Defendants. (Doc. 4739 at 7.) While the PSC has claimed that the seized "holdback" funds might later be returned to claimants, in whole or in part (Doc. 5153 at 2), it has

---

[3] The PSC missed the point when it argues that "OPA creates a Federal cause of action which includes the claims process." (Doc. 5153 at 1.) The purpose of the OPA claims process is to allow claimants the opportunity to obtain full compensation without the need for litigation.

[4] On May 10, 2010, BP wrote a letter to the Gulf Coast State Attorneys General, confirming its intention to waive any liability cap under OPA; likewise, BP established a $20 billion fund to compensate claimants on June 16, 2010. These actions made the claimant recoveries far more certain; likewise, both actions predated the August 10, 2010 Transfer Order creating this MDL.

not acknowledged the uncertainty over when the case may be resolved, especially since the *Exxon Valdez* litigation continued for almost twenty (20) years before the litigants were paid.

**III.    Argument**

**The PSC has failed to meet its burden of establishing entitlement to a preliminary injunction under Fed. R. Civ. P. 65**

An order requiring payment of money into an escrow account must satisfy Fed. R. Civ. P. 65.  Courts consistently apply Rule 65 in assessing motions to place funds into escrow accounts or to otherwise freeze assets. *See*, *e.g.*, *Janvey v. Alguire*, 647 F.3d 585, 600 n.9 (5th Cir. 2011) (motion to freeze assets must satisfy "the usual elements necessary to obtain a preliminary injunction"); *In re Vioxx Prods. Liab. Litig.*, 2012 WL 10548, *3 (E.D. La. Jan. 3, 2012). Likewise, where there is a factual dispute over the benefit allegedly conferred on claimants by the PSC, as there clearly is here, no preliminary injunction may issue without an evidentiary hearing. *See PCI Transp. Inc. v. Fort Worth & W.R.R. Co.*, 418 F.3d 535, 546 (5th Cir. 2005).

The PSC has the burden of establishing its right to injunctive relief.  "Injunctive relief is 'an extraordinary and drastic remedy,' and should only be granted when the movant has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009); *In re Vioxx Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 60269, *70 (E.D. La. Aug. 7, 2008).  Injunctive relief should only be granted when there is:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Anderson*, 556 F.3d at 360 (quotation omitted).  Importantly, these requirements are conjunctive; injunctive relief "should not be granted unless the party seeking it has **clearly carried** the burden

of persuasion on **all** four requirements." *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5h Cir. 2003) (citation and internal quotation marks omitted, emphases added).

      **1.**      **The PSC has failed to demonstrate a substantial likelihood that it would prevail on the merits of its request for "common benefit" fees.**

The PSC did not even attempt to establish the first of the Rule 65 requirements – a substantial likelihood that it will prevail on the merits of its underlying request to require the GCCF claimants to pay over a portion of their non-litigation recoveries. There is a substantial barrier to any such result, yet the PSC has not addressed it. The PSC has no likelihood of success for at least the following reasons:

      **a.**      **The Court lacks the authority to award a "common benefit" fee from future GCCF payments.**

The PSC has failed to show that the future GCCF payments to individual and business claimants constitute a "common fund" under the control of this Court and within its jurisdiction. To put it simply: the Court lacks jurisdiction over GCCF claimants who have not filed in the MDL. While the Court has expressed concern over parties who "filed lawsuits or claims in the MDL, but then withdraw their claims once they have settled with the GCCF … [noting] such parties have likely benefitted from all of the common benefit work performed by the PSC" (Doc. 5022 at 6), such parties would represent only a small portion of the GCCF claimants that would suffer harm from the PSC's requested relief. Without commenting on the merits of applying the holdback order to the few GCCF claimants who appeared in but then withdrawn from the MDL, there is certainly no legal justification for subjecting all GCCF claimants to such a penalty.

In an MDL proceeding, when the transferee court has jurisdiction over the defendants or plaintiffs, its jurisdiction only applies to cases that have been transferred. *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162 (4th Cir. 1992) ("*Showa Denko*") ("The

5

authority for consolidating cases on the order of the judicial panel on multi-district litigation, however, is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred."). In *Showa Denko*, the district court ordered contributions to a common fund to reimburse attorneys for discovery costs; contributions were set as a percentage of all settlements and judgments paid by the defendants from "actions venued in state courts, untransferred federal cases, and **unfiled claims in which any MDL defendant is a party or payor**." *Id.*, at 164 (emphasis added). The Fourth Circuit held that the portion of the order that "compels contributions from … claimants who have **chosen not to litigate but to compromise their claims outside of the court** . . . [is an] impermissible reach." *Id.*, at 166 (emphasis added). Furthermore, the Fourth Circuit struck a section of the order that directed the defendant to withhold and transfer the assessment for claimants due to the same "overreaching defect." *Id.*

The PSC attempted to bypass the clear jurisdictional barrier by proposing an order directed at the Defendants instead of the nonparties. However, in *United States ex rel. Bogart v. King Pharmaceuticals*, 493 F.3d 323, 329 (3d Cir. 2007), the Third Circuit rejected the claim that the district court's jurisdiction over the defendant gave it the power to create a common fund from the defendant's settlement with nonparties where the court lacked jurisdiction over the nonparties. Without jurisdiction over these GCCF claimants, the Court should deny the PSC's unprecedented request to seize funds from the future GCCF payments.

        **b.**     **The PSC failed to show that its work created a common benefit for GCCF claimants.**

The common, or substantial, benefit doctrine is founded upon the idea that the courts can prevent unjust enrichment. *See Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). It allows plaintiffs who secure a common benefit for a group to spread the costs of litigation among the group; thus, the plaintiff who secured the benefit is not worse off than the

parties who obtained the benefit from the work. *See id.* It "reflects the traditional practice in courts of equity . . . [and] rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Moreover, the "common fund" doctrine only applies when the litigation produces an actual monetary fund under the Court's jurisdiction.

To recover fees under this doctrine, the PSC must show that its efforts were a success and conferred a common benefit. In the words of the Fifth Circuit, an "[a]ttorney's fee may . . . be awarded to a successful litigant whose success confers 'a substantial benefit' on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Rogers v. Air Line Pilots Ass'n, Int'l*, 988 F.2d 607, 616 (5th Cir. 1993) (quoting *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 393-94 (1970)).

In this MDL proceeding, the PSC has yet to demonstrate that its work has conferred, or will confer, a benefit onto GCCF claimants. The Order credits the PSC with results that were brought about independently of any PSC involvement and, often, would have had no effect on the monetary recoveries of GCCF claimants in any event. *See*, *e.g.*, *In re Vioxx Prods. Liab. Litig.*, 2012 WL 10548, *4 (E.D. La. Jan. 3, 2012) (denying holdback request due to the lack of a connection between work done by the PSC and the plaintiffs' recoveries).

The PSC posits that it is entitled to a common benefit assessment on GCCF recoveries, arguing that it is "reasonable to conclude, at this point, that the values of GCCF settlements are at least partially a function of the significant litigation risk that BP faces." (Doc. 5153 at 1-2.) However, BP's litigation risk does not affect GCCF payment sizes because, by structure and design, BP has no influence over the methods by which the GCCF calculates its settlements; moreover, as the Court has acknowledged, punitive damages are unavailable under OPA and

thus any "litigation risk" for BP or other defendants on non-OPA claims could not influence the GCCF's payouts under an OPA claims process. A preliminary injunction requires that the PSC provide concrete evidence of a tangible benefit to GCCF claimants, not wishful supposition.

The PSC Motion is replete with examples of claimed "common benefit" work that have not and will not confer any benefit on GCCF claimants. Two particular examples are illustrative. The PSC claims that it has spent considerable time and money on causation issues, like the Limitation Trial. However, GCCF claimants are filing under an OPA claims process which is strict liability in nature; claimants have no need to demonstrate the liability of BP and certainly do not care about the liability of other Defendants. It is particularly troubling that GCCF claimants who chose to stay out of court would have their payments withheld due to the claimed expense of a lengthy trial that will not even remotely benefit them.

The PSC likewise boasts of its 15,500 square feet warehouse with 70 computers and fulltime staffing. The only claimed benefit is that it allows the PSC to "be more effective and more efficient; facilitate interaction; promote the exchange of ideas among the group; yield better insight and strategies; and enable document review to maintain the pace required by the Court's schedule." (Doc. 4507-1 at 9.) While a document depository might confer a benefit on the litigants, it does not help GCCF claimants. The PSC claims that "[t]he experience of centralizing common benefit work at the Depository has created an *esprit d'corp* and positive morale that has made the relocation sacrifice more than worthwhile." *Id.* GCCF claimants should not be forced to contribute hundreds of millions of dollars to boost the PSC's morale.[5]

---

[5] The December 28th Order also penalizes the numerous GCCF claimants who obtain resolutions from the GCCF claims process without retaining counsel; in other words, claimants who are trying to maximize their recoveries by not paying a contingency fee to counsel of their choice would still see their recovery reduced to provide a source of funds for the PSC.

8

> 2. **The PSC has failed to demonstrate that there was a substantial threat it would suffer an irreparable injury without the holdback.**

The PSC has made no attempt to establish that there was a substantial threat it would suffer an irreparable injury if the injunction had not been granted. For purposes of a preliminary injunction, an "injury is irreparable only if it cannot be undone through monetary remedies." *Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008) (citation omitted). Here, the PSC did not even attempt to meet its burden of showing that it lacked monetary remedies. *See Vioxx*, 2008 U.S. Dist. LEXIS 60269, *59 ("Plaintiffs' potential rights to reimbursement will not be impacted when interim payments are made to claimants and their attorneys."). Rather, it sought only a monetary remedy where injunctive relief is unavailable.

> 3. **The PSC has failed to demonstrate that any threatened injury to its interests outweighed the definite harm to GCCF claimants from the injunction.**

The PSC's Motion made no effort to establish that its threatened injury outweighed the definite harm to GCCF claimants. The GCCF process is part of an OPA-mandated claims process that allows claimants the opportunity to be made whole. Redirection of any portion of a GCCF payment makes claimants less than whole.

The PSC, in contrast, did not even claim that denial of their requested injunctive relief would injure its members. One of the criteria for the selection of PSC members was the financial wherewithal to fund and prosecute this litigation. The injunctive relief should not have been granted because the PSC failed to demonstrate that the threatened injury to its interests (if any) outweighed the definite harm to GCCF claimants.

The only claims made by the PSC for financial hardship are underwhelming at best, especially since the substantial financial contributions required for such litigation were known from the start of the case. In particular, the PSC has argued that "340 lawyers from ninety

9

different firms . . . contributed over $11.54 million in out-of-pocket held and shared expenses for the common benefit." (Doc. 4507-1 at 9.)  However, the PSC never indicated how many of the hours or how much of the costs related to GCCF issues.  To illustrate the incredibly aggressive nature of the hold back, the Court should consider the amount that would be placed into escrow from only the GCCF payments.  Between October 3, 2011 and January 3, 2012, the GCCF paid individuals and businesses approximately $521.0 million or $173.9 million a month.  If the GCCF continues to pay claims at that rate, the escrow account would receive around $10.4 million dollars a month from GCCF payments.  In little more than a month, the $11.6 million in claimed out-of-pocket expenses would be entirely covered by the GCCF payments alone.   If the PSC prevails in this litigation, a holdback based on the recoveries of actual litigants will provide more than adequate compensation without the need to reduce the recoveries of GCCF claimants.

    **4.**  **The injunction disserves the public interest.**

Finally, the PSC has failed to discuss, much less establish, that granting the preliminary injunction would not disserve the public interest.  The Order, by taking money away from claimants, deprives the Gulf Coast economy of the urgently needed $10 million in payments a month.  If aspects of this litigation continue for a prolonged time, as in the *Exxon Valdez* litigation, hundreds of millions of dollars will be removed from the Gulf Coast's economy.

**IV.**  **Conclusion**

   The State of Florida's interest is to see that its citizens are protected, with the recovery from this environmental disaster taking place as soon as possible.  Allowing the PSC to take tens of millions of dollars from the individual and business claimants that have decided to pursue a non-litigation claims process frustrates that interest and is contrary to both law and public policy.

        **Respectfully submitted**,

        **PAMELA JO BONDI**
        ATTORNEY GENERAL
        STATE OF FLORIDA

        BY: /s/ Russell S. Kent

        PATRICIA A. CONNERS
        Associate Deputy Attorney General
        Florida Bar No. 361275
        E-mail:  trish.conners@myfloridalegal.com
        RUSSELL S. KENT
        Special Counsel for Litigation
        Florida Bar No. 20257
        E-mail:  russell.kent@myfloridalegal.com

        Office of the Attorney General
        The Capitol, PL-01
        Tallahassee, FL 32399-1050
        Telephone:  850-414-3300

**CERTIFICATE OF SERVICE**

  I hereby certify that the above and foregoing Statement of Interest will be filed into the record using the Court's ECF system and will be served on all counsel through Lexis-Nexis File & Serve in accordance with Pretrial Order No. 12 on this 12th day of January 2012.

        /s/ Russell S. Kent
        Russell S. Kent