## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * MDL NO. 2179 <br> * <br> * SECTION: J <br> * JUDGE BARBIER <br> * MAGISTRATE JUDGE SHUSHAN |
| THIS DOCUMENT RELATES TO ALL ACTIONS | * <br> * <br> * <br> * |

**************************************************************************

### BP'S OPPOSITION TO HALLIBURTON'S REQUEST FOR CLARIFICATION OF
### ORDER DISQUALIFYING VIATOR, SABINS, AND CSI

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone:  504-581-7979
Facsimile:  504-556-4108


Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone:  202-662-5985
Facsimile:  202-662-6291

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  312-862-2000
Facsimile:  312-862-2200


Patrick F. Philbin
Aditya Bamzai
Kirkland & Ellis LLP
655 Fifteenth Street, NW
Washington, DC 20005
Telephone:  202-879-5000
Facsimile:  202-879-5200


*Attorneys for BP Exploration & Production Inc.*


January 13, 2012

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION AND SUMMARY ...........................................................................................1

ARGUMENT ...........................................................................................................................2

**I.     HALLIBURTON'S PURPORTED REQUEST FOR "CLARIFICATION" IS AN IMPROPER AND BELATED REQUEST FOR ENTIRELY NEW RELIEF.**..............................................................................................................2

**II.    HALLIBURTON'S THEORY OF "DOUBLE IMPUTATION" IS BARRED BY BINDING FIFTH CIRCUIT PRECEDENT.** ..........................................5

      **A.**    Binding Fifth Circuit Precedent Squarely Rejects the Theory of Double Imputation Underpinning Halliburton's Request for Disqualification. ...................6

      **B.**    Halliburton Ignores the Balance of Interests, which Weighs Overwhelmingly Against Disqualifying BP's Counsel on the Eve of Trial..........13

CONCLUSION......................................................................................................................14

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*American Can Co. v. Citrus Feed Co.*,
  436 F.2d 1125 (5th Cir. 1971) ................................................................................ passim

*American Mortg. Funding Corp. v. First La. Savings*,
  1988 WL 92026 (E.D. La. Aug. 28, 1988) .............................................................. 5

*Brennan's, Inc. v. Brennan's Restaurants, Inc.*,
  590 F.2d 168 (5th Cir. 1979) .................................................................................. 7, 9

*Central Milk Producers Co-op v. Sentry Food Stores, Inc.*,
  573 F.2d 988 (8th Cir. 1978) .................................................................................. 2

*Dodson v. Floyd*,
  529 F. Supp. 1056 (N.D. Ga. 1981) ........................................................................ 7

*English Feedlot, Inc. v. Norden Labs., Inc.*,
  833 F. Supp. 1498 (D. Colo. 1993) ......................................................................... 12

*Enstar Petroleum Co. v. Mancias*,
  773 S.W.2d 662 (Tex. App. - San Antonio 1989) ................................................. 8

*Ex parte Terminix Int'l Co., L.P.*,
  736 So.2d 1092 (Ala. 1999) .................................................................................... 7

*FDIC v. U.S. Fire Ins. Co.*,
  50 F.3d 1304 (5th Cir. 1995) .................................................................................. 5, 13, 14

*Great Lakes Dredge & Dock Co. v. Harnischfeger Corp.*,
  734 F. Supp. 334 (N.D. Ill. 1990) .......................................................................... 12

*In re Farmers' Co-Op of Ark. & Okla., Inc.*,
  53 B.R. 600 (W.D. Ark. 1985) ................................................................................ 7

*In re Guaranty Ins. Servs., Inc.*,
  343 S.W.3d 130 (Tex. 2011) ................................................................................... 11

*In re Katrina Canal Breaches Consol. Litig.*,
  2008 WL 3845228 (E.D. La. 2008) ........................................................................ 5

*McGinn v. DeSoto, Inc.*,
  No. 90-C-4481, 1990 WL 251753 (N.D. Ill. Dec. 21, 1990) ................................. 8

*Nat'l Assn'n of Gov't Empoyees v. City Pub. Serv. Bd.*,
   40 F.3d 698 (5th Cir. 1994)..............................................................................................4

*Remtech, Inc. v. Fireman's Fund Ins. Co.*,
   2006 WL 5157646 (E.D. Wash. 2006)........................................................................10, 12

*Rentclub, Inc. v. Transamerica Rental Fin. Corp.*,
   811 F. Supp. 651 (M.D. Fla. 1992) ............................................................................10, 11

*Scarborough v. State*,
   54 S.W.3d 419 (Tex. App. - Waco 2001) .........................................................................7

*Thomas C. v. State Farm Fire & Cas. Co.*,
   2007 WL 2702700 (S.D. Miss. Sept. 12, 2007) ...........................................................3, 4

*Woods v. Covington County Bank*,
   537 F.2d 804 (5th Cir. 1976)....................................................................................13, 14

**Other Authorities**

ABA Model Code of Prof. Conduct, Canon 9 ...............................................................12

ABA Model Rule of Prof. Conduct 1.10 .........................................................................8

ABA Model Rule of Prof. Conduct 1.10 cmts 2, 3..........................................................9

ABA Model Rule of Prof. Conduct 5.3 ..........................................................................12

ABA Model Rule of Prof. Conduct 5.3 cmt[1]...............................................................12

Ronald Rotunda & John Dzienkowski,
   *Legal Ethics - The Lawyer's Deskbook on Professional Responsibility*
   § 1.10-7(a) (2011-12 ed.) ...............................................................................................8

## INTRODUCTION AND SUMMARY

Halliburton's purported request for "clarification" is nothing but a transparent attempt to belatedly seek wholly new relief — disqualifying BP's counsel — that Halliburton never before requested from this Court.  Halliburton brought a motion limited to seeking disqualification of BP's expert and, in multiple rounds of briefing related to that motion, never once mentioned the drastic step of disqualifying counsel.  It is improper for Halliburton to seek that new relief in a request masquerading as a mere "clarification," and particularly improper to do so at this late stage after BP's counsel has already begun working with a substitute expert.  If Halliburton had genuinely believed that BP's counsel should be disqualified from working on all "cement issues" based on contact with Sabins (HESI Mot. 2), that claim should have been raised two months ago when Halliburton first sought to disqualify Sabins on November 15 — and certainly no later than the briefing on permitting a substitute expert.  Halliburton's delay has all the hallmarks of an attempt to use disqualification of counsel for tactical purposes, and the request should be rejected for that reason alone.

Even if Halliburton's new request for relief was not strategically delayed, it is meritless.  Halliburton does not even purport to identify misconduct by any BP attorney that violates ethical standards so as to warrant disqualification.  Instead, Halliburton's request is premised entirely on the theory that BP's lawyers "who [have] actively and directly worked with Sabins and CSI . . . are *presumed* to have obtained the same confidential and privileged information that Sabins and CSI is *presumed* to have obtained from Viator."  (HESI Mot. 3) (emphases added).  That theory of "double imputation" is foreclosed by binding Fifth Circuit precedent, which Halliburton fails even to acknowledge.  In the context of law firms working as co-counsel on a case, the Fifth Circuit has squarely held that, where knowledge has been imputed to a lawyer at one firm (thus raising a conflict for that lawyer), the same knowledge cannot be re-imputed to another lawyer at

a co-counsel firm.  *American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1129 (5th Cir. 1971).

It follows *a fortiori* that where the chain of imputation starts from an expert witness like Sabins

(who is not actually subject to the ethical rules binding lawyers in the first place), such double

imputation cannot be used to disqualify counsel, and other courts have so held.  Halliburton's

request should be denied, and the Court should reaffirm that the disqualification order extends —

as it says it does — only to Viator, Sabins, and CSI.

## ARGUMENT

### I.   HALLIBURTON'S PURPORTED REQUEST FOR "CLARIFICATION" IS AN IMPROPER AND BELATED REQUEST FOR ENTIRELY NEW RELIEF.

Halliburton's filing does not seek merely a "clarification."  Instead, it is an untimely

request for entirely new relief that Halliburton never before sought from this Court despite

having ample opportunities to do so.  As the Court is well aware, Halliburton has already filed

five briefs related to disqualification of BP's expert, including two briefs on Halliburton's

original Motion to Disqualify, and one brief each on BP's motion to strike Halliburton's

affidavit, BP's motion to substitute an expert, and BP's appeal to Judge Barbier.  *See, e.g.*, Rec.

Docs. 4595, 4779, 4814.   Not once in this extensive briefing did Halliburton request

disqualification of any attorneys who worked with Sabins or CSI.   The request for attorney

disqualification at this late stage is an impermissible attempt to expand the Court's order, not to

clarify it.

Halliburton's dilatoriness is all the more problematic given that Halliburton is seeking the

drastic remedy of disqualifying counsel barely a month before trial.  It is well established that

"[a] motion to disqualify should be made with reasonable promptness after a party discovers the

facts which lead to the motion."  *Central Milk Producers Co-op v. Sentry Food Stores, Inc.*, 573

F.2d 988, 992 (8th Cir. 1978).   A court therefore "will not allow a litigant to delay filing a

motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of a case has been completed."  *Id.*; *see also Thomas C. v. State Farm Fire & Cas. Co.*, 2007 WL 2702700, at *2 (S.D. Miss. Sept. 12, 2007) ("A motion to disqualify should be filed at the earliest practical opportunity.  It is not permissible to hold this right to relief in reserve in order to assert the right at a tactically advantageous time and thereby put an opponent at an unfair disadvantage.").   In the compressed schedule of this litigation, Halliburton's decision to hold back its attempt to disqualify counsel from November 15, 2011 (when it filed its motion to disqualify experts) until now cannot be excused.

Halliburton's only explanation for its delay is that its "original Motion to Disqualify was drafted with the expectation that BP would not be able to designate a substitute cementing expert" and "thus there was no need to address the issue of BP's counsel tainting a substitute expert."  (HESI Mot. 2.)  But that supposed explanation makes no sense given the scope of relief Halliburton is seeking.   Halliburton seeks disqualification of attorneys not only "from any participation with BP's substitute cement expert," but also from "*any aspect of cement issues* in this litigation."  (HESI Mot. 1.) (emphasis added).  That broad relief has no logical connection whatsoever to whether or not BP would be permitted a substitute expert.  Instead, if Halliburton had genuinely thought it was entitled to relief barring counsel who had worked with Sabins from working on "any aspect of cement issues," it logically should have made that request at the same time it originally sought to disqualify Sabins back in November.  Since there is no connection between the relief Halliburton actually seeks and the decision permitting a substitute expert, Halliburton's delay is more suggestive of gamesmanship than any genuine surprise at the prospect of a substitute expert.

Moreover, even if Halliburton had limited its request to disqualifying BP's counsel from

3

working with the substitute expert, that request also should have been raised long before now.  If, as Halliburton now claims, it would be "futile to permit BP to designate a substitute expert" if that expert were to work with the same counsel who worked with Sabins, (HESI Mot. 1), that claim should have been raised when the Court was considering the arguments for and against permitting a substitute expert.  It certainly would have been relevant for the Court and BP to know Halliburton's position that permitting a substitute would be "futile" unless counsel were disqualified.

Halliburton's delay, moreover, has unquestionably prejudiced BP.  *Cf. Nat'l Assn'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 710 (5th Cir. 1994) (equitable doctrine of laches applies where party's delay in asserting a claim has prejudiced opponent).  It was obvious given the timeframe involved in trial preparation that BP would need to start working with a substitute expert before this Court ruled on whether the substitute expert would be permitted.  Indeed, in its motion to permit the substitute expert filed on December 12, 2011, BP indicated that it would be prepared to submit a new expert report by January 9, 2012.  BP Mem. in Supp. of Mot. To Designate Substitute Expert at 2.  BP could not have proposed such a timetable unless it was beginning work with the substitute expert while briefing on the motion to allow the expert was still ongoing.  By holding its theory of attorney disqualification in reserve for a "tactically advantageous time," *State Farm Fire & Cas. Co.*, 2007 WL 2702700, at *2, *after* BP's lawyers had already begun working with their substitute expert, Halliburton positioned itself to turn its new request for disqualification into a twofer.  If the Court were to disqualify BP's counsel, Halliburton would immediately claim that the substitute expert had also been "tainted" by the lawyers just as the lawyers were "tainted" by Sabins.  That effort to game the timing of this request for maximum effect in hamstringing BP's trial preparation should not be

4

rewarded.  Halliburton's untimely request should be rejected.

## II.   HALLIBURTON'S THEORY OF "DOUBLE IMPUTATION" IS BARRED BY BINDING FIFTH CIRCUIT PRECEDENT.

Even if Halliburton's new request for relief were not procedurally flawed by Halliburton's transparent tactical delay, it should be denied because it is meritless.  It is well settled in this Circuit that "[m]otions to disqualify attorneys are generally disfavored," *American Mortg. Funding Corp. v. First La. Savs.*, 1988 WL 92026, at *2 (E.D. La. Aug. 26, 1988), and accordingly "a high standard of proof is placed upon one who seeks to disqualify counsel."  *In re Katrina Canal Breaches Consol. Litig.*, 2008 WL 3845228, at *3 (E.D. La. Aug. 13, 2008); *accord FDIC. v. United States Fire Ins. Co.*, 50 F.3d 1304, 1310 (5th Cir.1995).  Halliburton cannot meet its burden here.

Halliburton has not provided any *evidence* that BP's counsel has actually received any Halliburton confidential information from Sabins.  Instead, Halliburton's sole theory is that BP's counsel who worked with Sabins must be disqualified because "such counsel are *presumed* to have obtained the same confidential and privileged information that Sabins and CSI is *presumed* to have obtained from Viator."  (HESI Mot. 3.) (emphases added).

That theory fails because the rationale of double imputation on which it is based is flatly foreclosed by binding Fifth Circuit precedent — precedent that Halliburton fails even to acknowledge.  In *American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125 (5th Cir. 1971), the Fifth Circuit rejected the theory that a conflict of interest imputed to one lawyer from partners at his firm could be "re-imputed" to co-counsel at another law firm and held that a motion to disqualify based on such a theory "must fail."  *Id.* at 1129.  *American Can* puts an end to Halliburton's simplistic double imputation argument.  The cases Halliburton cites are irrelevant.  Neither even

addresses the double imputation rationale on which Halliburton relies, and thus neither provides any response to *American Can*.

In addition, even if the Court believed that allowing BP's counsel to continue working on cement issues in this case could create some appearance of impropriety — a conclusion foreclosed by *American Can* — the balancing of interests the Court must apply weighs overwhelmingly against Halliburton's bid to deprive BP of the counsel of its choice barely a month before trial.

### A. Binding Fifth Circuit Precedent Squarely Rejects the Theory of Double Imputation Underpinning Halliburton's Request for Disqualification.

Halliburton candidly admits that its request to disqualify BP's counsel rests on the theory that "such counsel are *presumed* to have obtained the same confidential and privileged information that Sabins and CSI is *presumed* to have obtained from Viator." (HESI Mot. 3.) (emphases added). The problem with that approach is that the Fifth Circuit has squarely rejected such a double-imputation theory. In *American Can*, the court faced an attempt to impute a conflict from one attorney to co-counsel at another law firm. The Court explained that the first attorney did not have *actual* knowledge of any confidential information of the moving party; instead, he had only *imputed* knowledge based upon a prior representation of that party by other lawyers at his firm. 436 F.2d at 1127. In such a case, the court held that "knowledge admittedly imputed to" the first lawyer "should not then be re-imputed" to co-counsel. *Id.* at 1129. "Resort to so drastic a measure," the court explained, would be "unwise" and would "set disturbing precedent," because if the rationale behind successive imputation "were accepted, imputation and consequent disqualification could continue *ad infinitum*." *Id.* "Carriage of this imputation-on-an-imputation to its logical terminus could lead to extreme results in no way required to maintain public confidence in the bar." *Id.* Accordingly, the court held that a motion to

disqualify resting on such a theory "must fail."  *Id.*  Instead, where two law firms work on a matter and an attorney at one firm is disqualified solely by a conflict imputed to him, the moving party must prove that *actual* confidential knowledge has been shared to obtain disqualification. *See id.*; *Scarborough v. State*, 54 S.W.3d 419, 425 (Tex. App. - Waco 2001) ("Because [attorney A's] disqualification is based on imputed knowledge rather than actual knowledge, [attorney B] cannot be disqualified solely on the basis of knowledge imputed to [attorney A].").

Applying *American Can*, the Fifth Circuit has reaffirmed that "a presumption of disclosure of confidences [between co-counsel] is inappropriate" and that instead a party must show an actual exchange of information to establish that a conflict for an attorney at Firm A warrants disqualifying co-counsel at Firm B.  *Brennan's, Inc. v. Brennan's Rests., Inc.*, 590 F.2d 168, 174 (5th Cir. 1979).  Thus, the settled rule is that, where one lawyer has solely an imputed conflict, his co-counsel "should not be disqualified unless the movant has proved that [the co-counsel] learned . . . [confidential] information" and that the court "may not presume disclosures of confidences to co-counsel."  *Dodson v. Floyd*, 529 F. Supp. 1056, 1066 (N.D. Ga. 1981)*; see also In re Farmers' Co-Op of Ark. & Okla., Inc.*, 53 B.R. 600, 604 (W.D. Ark. 1985) (citing *American Can* for the proposition that "knowledge imputed to an attorney from his partner would not be reimputed from the attorney to his co-counsel," and explaining that "double imputation [is] improper"); *Ex parte Terminix Int'l Co.*, 736 So.2d 1092, 1095 (Ala. 1999) ("If a showing of actual disclosure was not required, then disqualification could arguably be based on a 'double imputation' theory (imputing information from a firm to a member of that firm and then to a member of another firm acting as cocounsel), a theory that has been heavily criticized by other courts.").

*American Can* similarly emphasized the critical distinction between *actual* knowledge of confidential information and merely *imputed* knowledge in the context of imputing conflicts where an attorney moves from one firm to another.  If an attorney's knowledge of a particular party's confidential information is solely imputed, when that attorney moves to a new firm, the courts will not stack one imputation upon another to disqualify other attorneys at the new firm. As the court explained in *American Can*, "new partners of a vicariously disqualified partner, to whom knowledge has been imputed in a former partnership, are not necessarily disqualified: they need show only that the vicariously disqualified partner's knowledge was imputed, not actual." *American Can*, 436 F.2d at 1129; *accord McGinn v. DeSoto, Inc.*, 1990 WL 251753, at *4 n. 5 (N.D. Ill. Dec. 21, 1990); *Enstar Petroleum Co. v. Mancias*, 773 S.W.2d 662, 664 (Tex. App. - San Antonio 1989).  Thus, once it is established that the first attorney has solely imputed knowledge of any confidential information, the inquiry is at an end unless the moving party can show an actual transfer of confidential information to attorneys at the new firm.  As one treatise has summarized the general rule, "[a] basic principle of the Model Rules is that: *Imputed knowledge is not thereafter imputed to another lawyer.*"  Ronald Rotunda & John Dzienkowski, *Legal Ethics - The Lawyer's Deskbook on Professional Responsibility* § 1.10-7(a) (2011-12 ed.) (emphasis in original) (discussing ABA Model Rule of Prof. Conduct 1.10).

Given that *American Can* prohibits double imputation even in the context of imputing conflicts between lawyers, it follows *a fortiori* that double imputation cannot apply where the imputation chain starts with an expert witness.  It bears emphasis at the outset that, *even if Sabins were treated exactly as a lawyer*, knowledge imputed to him from Viator could not be re-imputed from him to BP's counsel.  If anything, however, imputation should apply more narrowly in this context.  The ethical rules that give rise to imputation of a conflict apply to

lawyers, not expert witnesses.  Imputation of knowledge from one attorney to another within a law firm is a prophylactic measure designed to safeguard attorneys' obligations to maintain client confidences and to abide by the duty of undivided loyalty to a client.  *See, e.g.*, ABA Model Rule of Prof. Conduct 1.10 cmts 2, 3.  The presumption that attorneys within a firm share all clients' confidential information, moreover, is based on particular assumptions about the practice of law and the sharing of information within the confines of privilege.  Expert witnesses play a very different role from attorneys, and the same assumptions simply do not apply to them.  As a result, if double imputation is foreclosed in situations where the ethical rules actually do apply (for lawyers), there can be no basis for applying imputation *more broadly* in a context where, at best, principles of the ethical rules can be invoked only by analogy (expert witnesses).  Indeed, it would be particularly illogical to permit double imputation where the chain starts with an expert witness given that the law rejects that approach as between co-counsel.  *See*, *e.g.*, *American Can*, 436 F.2d at 1129; *Brennan's Restaurants*, 590 F.2d at 174.  Communications with testifying experts, after all, may be subject to discovery and thus, if anything, are more constrained than communications with co-counsel.

Applying double imputation in the context of experts would also raise precisely the same problem *American Can* identified of spawning a potentially infinite chain of imputation.  Here, for example, it is obvious that, if Halliburton succeeds in disqualifying BP's counsel, its next step will be to seek disqualification of BP's substitute expert on the theory that the "taint" imputed to BP's lawyers should be re-imputed yet a third time to BP's substitute expert.

Not surprisingly, the double imputation approach has also been rejected expressly in the context of imputing a conflict from an expert witness to the attorneys who worked with him.  As one district court has explained, a party seeking disqualification must present proof of actual

sharing of confidences between the expert and the attorney: "[T]he record must establish that counsel received facts from the expert that were privileged before counsel is disqualified.  No presumption of shared confidential information exists."  *Remtech, Inc. v. Fireman's Fund Ins. Co.*, 2006 WL 5157646, at *1 (E.D. Wash. 2006) (internal citation omitted) (denying motion to disqualify counsel based on expert conflict).

Under the settled law outlined above, Halliburton's request for disqualification must be rejected.  This Court has already held as a factual matter that Sabins has solely *imputed* knowledge of any confidential information known by Viator, not *actual* knowledge.  The Court expressly found that "Halliburton has not presented *any evidence* that contradicts Viator's testimony that he did not explicitly share Halliburton's confidential information with Sabins and CSI."  (Rec. Doc. 4838.) (emphasis added).  As a result, in disqualifying Sabins, the Court made clear that the question before it was "whether *imputed* disqualification should be imposed on Sabins and CSI."  (*Id.*) (emphasis added).[1]  Thus, the only way that Halliburton could obtain disqualification is by re-imputing to BP's attorneys a conflict that was originally imputed to Sabins — indeed, as noted above, Halliburton candidly bases its request on exactly that theory. *American Can* and the other cases cited above prohibit precisely that chain of logic.

The two cases Halliburton cites are inapposite.  *Rentclub, Inc. v. Transamerica Rental Fin. Corp.*, 811 F. Supp. 651 (M.D. Fla. 1992), does not involve imputed disqualification, or even disqualification of an expert witness, but instead addresses disqualification of attorneys

---

[1]    The record also clearly establishes there has been no direct transfer of information from Viator to BP's attorneys.  Viator had no contact with any of BP's attorneys until his deposition.  *See* Ex. A (Viator Dep.) at 107:11-13 ("Q. And have you, to your knowledge, spoken to anyone, any attorneys representing BP before? A. Not to my knowledge."); *id.* at 107:8-10 ("Q. And have you spoken to anyone at my -- my firm, Kirkland & Ellis, before?  A. No, sir.").  Halliburton's suggestion that somehow "unexplained facts remain" because CSI "never produced a complete set of Viator's time sheets indicating the scope and frequency of Viator's contact with BP's counsel," and that "Sabins himself never disclosed whether Viator was privy to attorney meetings at CSI," (HESI Mot. 3) is thus a red herring.  Viator himself testified that he had no contact with BP attorneys before his deposition, and Halliburton has presented no evidence to contradict that testimony.

who personally engaged in unethical conduct with a fact witness who possessed actual, not imputed, confidential knowledge.  *See id.* at 655.  Plaintiffs' counsel retained the former chief financial officer of the defendant corporation as a "trial consultant" and secured an affidavit from him attacking his former employer's business practices.  *Id.* at 654.  The court determined that this conduct likely violated the prohibition against paying for factual testimony, *id.* at 655, and that retaining a senior officer of defendant (who could have bound the former employer with his admissions in his former position) violated the prohibition against ex parte contact with represented parties, *id.* at 658.  It was critical to the court's analysis that the former chief financial officer had actual knowledge of confidential information related to the matter and that the attorneys paid him to disclose this information.  *See id.* at 655, 657-58.  Nothing remotely similar to those facts is presented here.  Halliburton does not even suggest that BP's attorneys played any role in hiring Viator (Halliburton's former employee).  Instead, Halliburton wants to re-impute knowledge that has been imputed to Sabins to BP's attorneys.  (HESI Mot. 6.) *Rentclub* says nothing about that theory; instead, *American Can* provides the governing law.

In re Guaranty Ins. Servs., Inc.*, 343 S.W.3d 130 (Tex. 2011), is also irrelevant.  (HESI Mot. 6-7.)  There, the Texas Supreme Court concluded that, where a law firm hired a paralegal who had actually been exposed to confidential information of a party while employed at a different firm, a rebuttable presumption arose that the paralegal had shared that confidential information with lawyers at the new firm.  *See id.* at 135.  The case is doubly inapposite.  It concerns only imputation of conflicts *within* a law firm, not imputation of a conflict from an outside expert witness to lawyers at a firm.  And it involves an imputation from someone deemed to have *actual knowledge*, not re-imputation from someone who started with only imputed knowledge.

11

The duty to supervise non-lawyer assistants under Model Rule 5.3 also provides Halliburton no response to *American Can*. *See* ABA Model Rule of Prof. Conduct 5.3. Even if the rule were applicable, it does not provide an end run around the Fifth Circuit's unequivocal rejection of the logic underpinning double imputation. The Fifth Circuit has explained that the chain of inferences involved in stacking an "imputation-on-an-imputation" is "unsound logically and indefensible practically" and that following such an approach would be "unwise." *American Can*, 436 F.2d at 1129. That reasoning governs the analysis without regard to whether the chain of imputation starts with a lawyer at another law firm or with an expert witness at his own consulting firm. Thus, the court in *Remtech* made clear that the relevant issue in analyzing a case such as this is whether "vicarious disqualification" can extend from an expert witness to lawyers who work with him — and it cannot. *Remtech*, 2006 WL 5157646, at *1.[2]

Finally, lacking any supportable claim that an ethical rule has been violated here, Halliburton obliquely suggests that disqualification is warranted to avoid the appearance of impropriety. *Cf.* ABA Model Code of Prof. Conduct, Canon 9; HESI Mot. at 5. But Halliburton does not cite a single case finding that an appearance of impropriety mandated disqualifying an

---

[2]    There is also an additional, independent basis for rejecting Halliburton's argument. It is doubtful that Rule 5.3 can properly apply in all respects to expert witnesses. The rule applies to non-lawyers employed or retained by a lawyer and who "act for the lawyer in rendition of the lawyer's professional services." ABA Model Rule of Prof. Conduct 5.3 cmt[1]. Unlike a paralegal or investigator or other similar assistant, expert witnesses do not fit that description. They do not act for a lawyer. Instead, their role is "to help the trier of fact understand the relevant evidence." *Great Lakes Dredge & Dock Co. v. Harnischfeger Corp.*, 734 F. Supp. 334, 338 (N.D. Ill. 1990). Numerous distinctions between testifying experts and non-lawyer assistants reflect that difference. Because they are not assisting a lawyer in the rendition of his professional services, expert witnesses do not share in the lawyer's duty of loyalty to a client and are instead "beholden to the truth first, and the party second, if at all." *Stencil v. Fairchild, Corp.*, 174 F. Supp. 2d 1080, 1086 (C.D. Cal. 2001); *see also English Feedlot, Inc. v. Norden Labs., Inc.*, 833 F. Supp. 1498, 1501 (D. Colo. 1993) ("[E]xperts are not advocates in the litigation but sources of information and opinions . . . ."). Similarly, while attorney-client privilege is maintained despite disclosure to non-attorney assistants, *see United States v. White*, 617 F.2d 1131, 1135 (5th Cir. 1980), matters disclosed to a testifying expert witness are subject to discovery. In addition, as the court in *Remtech* pointed out in refusing to apply Rule 5.3 to an expert, Rule 5.3 "requires control and supervision." *Remtech*, 2006 WL 5157646, at *1. "[The attorney] does not supervise [the expert] nor is he a member of his firm." *Id.* Halliburton does not cite a single case applying Rule 5.3 to a testifying expert witness. Thus, both for the reasons in text and the reasons outlined here, Halliburton's glib citation to Rule 5.3 provides no basis for escaping the rationale of *American Can*.

attorney based upon a double imputation.  Indeed, *American Can* once again forecloses such a rationale.  *American Can* expressly considered the injunction under the ABA Canons of Ethics that lawyers must "abstain from all appearances of evil," 436 F.2d at 1128 (citations omitted), and determined that applying a rationale of double imputation was not required to "maintain public confidence in the bar," *id.* at 1129.  The court explained that such an approach would not even "foster the appearance" of preserving the sanctity of confidential information.  *Id.* at 1130. Halliburton's approach to stacking an "imputation-on-an-imputation," *id.* at 1129, thus cannot be justified by the need to prevent the appearance of impropriety.

> **B.**     **Halliburton Ignores the Balance of Interests, which Weighs Overwhelmingly Against Disqualifying BP's Counsel on the Eve of Trial.**

Even if Halliburton could show some appearance of impropriety here  — a result foreclosed by *American Can* — Halliburton ignores the second step in the analysis the Court must apply before disqualifying counsel on that basis.  The Court must "find that the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case."  *Woods v. Covington Cnty. Bank*, 537 F.2d 804, 813 n.12 (5th Cir. 1976); *accord FDIC*, 50 F.3d at 1316.  Halliburton does not even attempt to balance the competing interests here.  Examining those interests shows that they weigh overwhelmingly against disqualification.  At this point, it is barely more than a month before trial.  If the attorneys who worked with Sabins are prohibited at this point from working at all on "cement issues" — or even from working with BP's substitute expert — BP's ability to present a core part of its case against Halliburton will be severely compromised.

On the other side of the balance is the speculative theory that the public will perceive a taint on the judicial process and the conduct of the bar unless the Court applies an "imputation-on-an-imputation" and assumes that Sabins has passed along confidential information, even

where there is no evidence he actually received such information in the first place.  Hamstringing BP's ability to present its case simply is not warranted to address that flimsy theory.  To the contrary, if anything, disqualifying counsel based on the tenuous chain of inferences Halliburton constructs would tend to diminish public esteem for the bar.  As the Fifth Circuit has warned, "the more frequently a litigant is delayed or otherwise disadvantaged by the unnecessary disqualification of his lawyer under the appearance of impropriety doctrine, the greater the likelihood of public suspicion of both the bar and the judiciary." *Woods*, 537 F.2d at 813; *see also FDIC*, 50 F.3d at 1316 ("When, for purely strategic purposes, opposing counsel raises the question of disqualification, and subsequently prevails, public confidence in the integrity of the legal system is proportionately diminished.").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Halliburton's request for disqualification of BP's attorneys.

Dated: January 13, 2012                    Respectfully submitted,

                                           /s/ Don K. Haycraft
Robert C. "Mike" Brock                     Don K. Haycraft (Bar #14361)
Covington & Burling LLP                    R. Keith Jarrett (Bar #16984)
1201 Pennsylvania Avenue, NW               Liskow & Lewis
Washington, DC 20004-2401                  701 Poydras Street, Suite 5000
Telephone:  202-662-5985                   New Orleans, Louisiana 70139-5099
Facsimile:  202-662-6291                   Telephone:  504-581-7979
                                           Facsimile:  504-556-4108


Patrick F. Philbin                         Richard C. Godfrey, P.C.
Aditya Bamzai                              J. Andrew Langan, P.C.
Kirkland & Ellis LLP                       Kirkland & Ellis LLP
655 Fifteenth Street, NW                   300 North LaSalle Street
Washington, DC 20005                       Chicago, IL 60654
Telephone:  202-879-5000                   Telephone:  312-862-2000
Facsimile:  202-879-5200                   Facsimile:  312-862-2200

**Attorneys for BP Exploration & Production Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 13th day of January, 2012.

/s/ Don K. Haycraft
Don K. Haycraft