EXHIBIT 1

In Support of

United States' Reply to Defendants' Oppositions to
United States' Second Motion for Partial Summary Judgment and
United States' Response to Cross-Motions for Summary Judgment

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| 1 | BP acquired Lease OCS-G 32306 for Block 252, Mississippi Canyon, OCS Official Protraction Diagram, NH 16-10 ("Lease"), effective June 1, 2008. | **Uncontested for purposes of this Motion.** | **Undisputed.** [evidentiary objections omitted from chart as this fact is undisputed] | **Anadarko does not dispute that BP Exploration & Production, Inc. ("BP") acquired Lease OCS-G 32306 for Block 252, Mississippi Canyon, effective June 1, 2008 ("Macondo Lease").** |
| 2 | An exploratory well was constructed on Block 252, Mississippi Canyon, the "Macondo Well." | **Uncontested for purposes of this Motion.** | **Undisputed.** [evidentiary objections omitted from chart as this fact is undisputed] | **Anadarko does not dispute that the Macondo Well, an exploratory well, was being constructed on Block 252, Mississippi Canyon.** |
| 3 | The Macondo Well is located on the Outer Continental Shelf approximately 50 miles from the Mississippi River delta. | **Uncontested for purposes of this Motion.** | **Undisputed.** [evidentiary objections omitted from chart as this fact is undisputed] | **Anadarko does not dispute that the Macondo Well is located on the Outer Continental Shelf, approximately 50 miles from the Mississippi River delta.** |
| 4 | From at least October 1, 2009, the MODU *Transocean Marianas* was owned and/or operated by the Transocean Defendants. On or about October 2009, the *Transocean Marianas* began to be used for drilling of the Macondo Well. | **Uncontested for purposes of this Motion.** | Disputed that the *Transocean Marianas* was owned or operated by any of the Transocean Defendants other than Transocean Holdings LLC. The Transocean Defendants' Answer to the United States Complaint cited supports only that "**one or more** of the Transocean Defendants were the managing owners, owners pro hac vice, and/or operators of the MODU Transocean Marianas" (emphasis added.) | **Anadarko does not dispute that from at least October 1, 2009, the *Transocean Marianas*, a mobile offshore drilling unit ("MODU"), was owned and/or operated by the Transocean Defendants, and that in October 2009, the *Transocean Marianas* was used for drilling the Macondo Well.** |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | | **Undisputed that (1) Triton Asset Leasing GmbH was the legal owner of the *Transocean Marianas* and bareboat chartered the vessel to Transocean Holdings LLC; (2) Transocean Holdings LLC bareboat chartered the Transocean Marianas from Triton Asset Leasing GmbH and had a drilling contract for the vessel with BP pursuant to which beginning in or about October 2009 the vessel was used in drilling operations at the Macondo Well; and (3) by virtue of the bareboat charter, Transocean Holdings LLC was both the owner *pro hac vice* and the operator of the *Transocean Marianas*.**<br><br>[evidentiary objections omitted] | |
| 5 | Beginning on or about February 2010, the MODU *Deepwater Horizon* replaced the *Transocean Marinas* for the purpose of continuing the drilling of the Macondo Well. Drilling of the Macondo Well using the *Deepwater Horizon* continued in February 2010 | **Uncontested for purposes of this Motion, provided that the government intended to refer to the *Transocean Marianas*.** | **Undisputed.**<br><br>[evidentiary objections omitted] | **Anadarko does not dispute that the MODU *Deepwater Horizon* replaced the *Transocean Marianas* for the purpose of continuing drilling of the Macondo Well, and that drilling of the Macondo Well by the *Deepwater Horizon* continued in February 2010 and through March and a portion of April 2010.** |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | and through March and a portion of April 2010. | | | |
| 6 | The *Deepwater Horizon* is a vessel. | **Uncontested for purposes of this Motion.** | Undisputed. [evidentiary objections omitted] | Anadarko objects to U.S. Statement 6 because whether the *Deepwater Horizon* was a "vessel" for purposes of applicable law is a question of law, not a question of fact. **Nevertheless, Anadarko does not dispute that, as a matter of law, the *Deepwater Horizon*, including its appurtenances, the blowout preventer and riser, was a vessel.** *See* B1 Order, at 4-7. |
| 7 | The *Deepwater Horizon* is a mobile offshore drilling unit. | **Uncontested for purposes of this Motion.** | Undisputed. [evidentiary objections omitted] | **Anadarko does not dispute that the *Deepwater Horizon* was a mobile offshore drilling unit.** |
| 8 | Casings, tubulars, the well head and/or other components of the Macondo Well were installed in the wellbore prior to April 20, 2010. | **It is uncontested for purposes of this Motion that**, as the authority cited by the government indicates, **"As of April 20, 2010, various sub-sea equipment and components of the Macondo Well had been installed on or** | Undisputed. [evidentiary objections omitted] | Anadarko objects to U.S. Statement 8 because the reference to "and/or other components" is vague and ambiguous. **Nevertheless, Anadarko does not dispute that certain casings, tubulars, and the wellhead were components of the Macondo Well, and were installed in the Macondo wellbore prior to April 20, 2010.** |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | **below the seafloor of the Outer Continental Shelf, including, but not limited to, the well casing and the well head."** *See* BP Answer ¶ 45. | | |
| 9 | The Macondo Well is an "offshore facility" for purposes of the Clean Water Act, 33 U.S.C. § 1321(b), and the Oil Pollution Act, 33 U.S.C. § 2701 et al. | **Uncontested for purposes of this Motion.** | **Undisputed.** [evidentiary objections omitted] | Anadarko objects to U.S. Statement 9 because whether the Macondo Well is an "offshore facility" for purposes of the Clean Water Act, 33 U.S.C. § 1321(b), and the Oil Pollution Act, 33 U.S.C. § 2701 *et seq.*, is a question of law, not a question of fact. **Nevertheless, Anadarko does not dispute that, as a matter of law, the Macondo Well, excluding the attached appurtenances of the *Deepwater Horizon*, constitutes an "offshore facility" within the meaning of the Clean Water Act, 33 U.S.C. § 1321(a)(11) and (b), and the Oil Pollution Act, 33 U.S.C. § 2701 *et seq.*** |
| 10 | The Macondo Well cement job was critical for maintaining well control. | **Uncontested for purposes of this Motion.** | **Undisputed.** | Anadarko objects to U.S. Statement 10 to the extent that the phrase "Macondo Well cement job" is vague and ambiguous. Anadarko further objects to the extent that the term "critical" is vague, ambiguous, and a statement of opinion, not a statement of fact. **Nevertheless, Anadarko does not dispute that the Macondo Well's** |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | | | **production casing cement job was a means of maintaining well control.** |
| 11 | The Macondo Well's cement job failed to prevent hydrocarbons from migrating into the wellbore. | **It is uncontested for purposes of this Motion that the cement job failed to prevent *all* hydrocarbons from migrating into the well bore.** It is contested whether the cement job reduced the amount of hydrocarbons entering the wellbore. Additionally, issues related to flow rate are scheduled to be adjudicated in Phase 2. | Undisputed. [evidentiary objections omitted] | Anadarko objects to the extent that the phrase "the Macondo Well's cement job" is vague and ambiguous. **Nevertheless, Anadarko does not dispute that the Macondo Well's production casing cement job failed to prevent hydrocarbons in the formation from migrating into the wellbore.** |
| 12 | On April 20, 2011, there was a blowout of the Macondo Well, and fires and explosions on the drilling rig Deepwater Horizon. | **Uncontested for purposes of this Motion.** | Undisputed. [evidentiary objections omitted] | **Anadarko does not dispute that on April 20, 2010, there was a blowout of the Macondo Well, and fires and explosions on the drilling rig *Deepwater Horizon*.** |
| 13 | Eleven men died as a result of the blowout. | **Uncontested for purposes of this Motion.** | Undisputed. [evidentiary objections omitted] | Anadarko objects because U.S. Statement 13 is not a statement of fact that is material to any of the issues raised in the United States' Motion for Partial Summary Judgment. |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | | | Anadarko further objects to the extent that the phrase "as a result of the blowout" is vague and ambiguous. **Anadarko does not dispute that eleven men lost their lives as a result of the blowout, explosions, and fires on the *Deepwater Horizon*.** |
| 14 | Following the blowout on April 20, 2010, there was a discharge of oil into the Gulf of Mexico. | **Uncontested for purposes of this Motion.** | **Undisputed that following the blowout on April 20, 2010, there was a discharge of oil below the surface of the water from the Macondo Well into the Gulf of Mexico.**<br><br>Disputed that there was a discharge of oil into the Gulf of Mexico on or above the surface of the water. The United States has not submitted evidence (let alone admissible evidence) to show that there was a discharge of oil on or above the surface of the water. Even if there were any evidence of oil from the Macondo Well that reached the *Deepwater Horizon*, it would have combusted before it reached the surface of the water. *See* United States Complaint (Doc. #1 in Case No. 10-cv-4536) ¶57 ("As a result of the April 20,2010 uncontrolled well event and uncontrolled blowout, multiple explosions and fires occurred aboard the *Deepwater Horizon*."); Winslow Deposition, April 20, 2011, at 10:25- | Anadarko does not dispute that following the blowout on April 20, 2010, there was a discharge of oil into the Gulf of Mexico. |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

|  | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
|  |  |  | 11:21, 146:22-147:9, 167:20-168:6, 172:18-173:3, 173:8-20, 176:1-12, 183:11-25, 203:23-204:11, 205:10-18, 207:9-14, 221:2-12, 241:16-18, 259:13-22, 260:1-22 (Exhibit 1 attached) (explosions and huge fire on *Deepwater Horizon* continuing until the vessel sank; water was not on fire until after the rig sank; no evidence of discharge on or above surface of the water).

BP's Answer to the United States Complaint and Anadarko's responses to the United States Requests for Admission are hearsay and not admissible evidence as to the Transocean Defendants.

The Presidential Commission Report is inadmissible hearsay. |  |
| 15 | Oil from the MC 252 reservoir flowed through the Macondo Well and was discharged to the Gulf of Mexico from the Deepwater Horizon and then from the broken riser pipe and/or BOP after the *Deepwater Horizon*'s sinking. | **It is uncontested that oil that once existed deep inside the Outer Continental Shelf travelled during the spill out of the Macondo reservoir, through the well, and then through** | Disputed. No admissible evidence is submitted as to the Transocean Defendants to support this statement.

BP's Answer and Anadarko's responses to the United States Requests for Admission are hearsay and not admissible as to the Transocean Defendants. | **Anadarko does not dispute that oil from the MC 252 reservoir flowed through the Macondo Well and was discharged to the Gulf of Mexico from the *Deepwater Horizon* and then from the broken riser pipe and/or BOP after the main body of the *Deepwater Horizon's* sinking.** |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | **Transocean-owned vessel appurtenances including the BOP and riser, before discharging into Gulf of Mexico waters or being captured by various containment methods.**<br><br>BP contests the government's legal conclusions premised on this paragraph for the reasons stated in the accompanying memorandum of law filed by BP. | Disputed that oil was discharged from the *Deepwater Horizon* into the Gulf of Mexico. The United States has not submitted any evidence (let alone admissible evidence as to the Transocean Defendants) to support that oil was discharged into the Gulf of Mexico from the *Deepwater Horizon*. Even if there were any evidence of oil from the Macondo Well that reached the *Deepwater Horizon*, it would have combusted before it reached the surface of the water. [See Transocean Response to No. 14 for citations.]<br><br>In particular, disputed that oil was discharged into the Gulf of Mexico from the BOP or riser or from the vessel within the meaning of the civil penalty provisions of the Clean Water Act ("CWA"), 33 U.S.C. §1321(b)(7)(A).<br><br>Even if BP's Answer were admissible against the Transocean Defendants, the language cited by the United States does not support that oil was discharged into the Gulf of Mexico "from" the riser or BOP. *See* BP Answer ¶61 ("oil flowed, *inter alia*, **through** the BOP stack, the marine riser, and/or other equipment." | |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | | (emphasis added)). | |
| 16 | The discharge also emanated from the *Deepwater Horizon* vessel, including from its appurtenances, the BOP and riser, into the Gulf of Mexico. | **BP does not contest that the discharge emanated from the *Deepwater Horizon* vessel, including its appurtenances, the BOP and riser, into the Gulf of Mexico.**<br><br>BP does contest the United States' use in this paragraph of the word "also," which implies that oil was also discharged from structures other than the *Deepwater Horizon* and its appurtenances. [See BP response to paragraph 15 above] | **Undisputed that oil was discharged from the Macondo Well through the BOP and riser into the Gulf of Mexico below the surface of the water.**<br><br>Disputed that oil was discharged from the *Deepwater Horizon* into the Gulf of Mexico. The United States has not submitted any evidence (let alone admissible evidence as to the Transocean Defendants) to support that oil was discharged from the *Deepwater Horizon*.<br><br>Even if there were any evidence of oil from the Macondo Well that reached the *Deepwater Horizon*, it would have combusted before it reached the surface of the water. [See citations in support of Transocean's response to Paragraph No. 14]<br><br>Disputed that oil was discharged into the Gulf of Mexico from the BOP or riser or from the vessel within the meaning of the civil penalty provisions of the CWA, 33 U.S.C. §1321(b)(7)(A). The Transocean Investigation Report (Ex. 25) and the Transocean BOP Video at most show only that oil | Anadarko objects to the United States' mischaracterization of the discharge as "also" emanating from the *Deepwater Horizon*. **Anadarko does not dispute that the discharge emanated from the *Deepwater Horizon* vessel, that the BOP and riser were appurtenances of the *Deepwater Horizon*, and that oil discharged from the BOP and riser into the Gulf of Mexico.** |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | | flowed from the Macondo Well through the BOP and riser into the Gulf of Mexico below the surface of the water.<br><br>Even if BP's Answer were admissible against the Transocean Defendants, the language cited by the United States does not support that oil was discharged into the Gulf of Mexico "from" the riser or BOP. *See* BP Answer ¶61 ("oil flowed, *inter alia*, **through** the BOP stack, the marine riser, and/or other equipment." (emphasis added)). | |
| 17 | The oil caused a film or sheen or discoloration on the surface of the water. | **Uncontested for purposes of this Motion.** | **Undisputed that oil released from the Macondo Well below the surface of the water caused a film, sheen or discoloration on the surface of the water.**<br><br>[evidentiary objections omitted]<br><br>Disputed that a "film", "sheen" or "discoloration" on the surface of the water was caused by oil discharged from the *Deepwater Horizon*. The United States has not submitted any evidence to support that oil was discharged from the *Deepwater Horizon*. Even if there were any | **Anadarko does not dispute that the oil caused a film, sheen, or discoloration on the surface of the water of the Gulf of Mexico.** |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | | evidence of oil from the Macondo Well that reached the *Deepwater Horizon*, it would have combusted before it reached the surface of the water. [See TO Response to Paragraph 14, above, for citations]<br><br>Disputed that a "film", "sheen" or "discoloration" on the surface of the water was caused by oil discharged from the BOP or riser or from the vessel within the meaning of the civil penalty provisions of the CWA, 33 U.S.C. §1321(b)(7)(A). The United State's citation to paragraph 14 of its Statement of Undisputed Material Facts in support of its first Motion for Partial Summary Judgment supports only that there was a film, sheen or discoloration on the surface of the water. It does not identify or address the source of the oil causing the film, sheen or discoloration. | |
| 18 | The discharge of oil was in such quantities as may be harmful. | **Uncontested for purposes of this Motion exclusively as it relates to the phrase "in such quantities as may be harmful as determined by the** | **Undisputed that the discharge of oil from the Macondo Well was in such quantities as may be harmful.**<br><br>[evidentiary objections omitted]<br><br>Disputed that there was any discharge of oil from the *Deepwater Horizon* in a | Anadarko objects to the extent that whether oil is discharged "in such quantities as may be harmful" is a question of law, not a question of fact. Anadarko further states that, for purposes of Section 311(b)(4) of the Clean Water Act, 42 U.S.C. § 1321(b)(4), the Environmental Protection Agency ("EPA") has determined that discharges of oil that |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | **President under paragraph (4) of this subsection" appearing in Clean Water Act Section 311(b)(3), 33 U.S.C. § 1321(b)(3).**<br><br>However, BP reserves all of its legal defenses in (a) its Answer concerning the extent of any harm alleged to have occurred to person, property, or the environment, as well as in (b) its Answer to the B1 and B3 Master Complaints. | quantity as may be harmful or in any quantity. The United States has not submitted any evidence (let alone admissible evidence as to the Transocean Defendants) to support that oil was discharged from the *Deepwater Horizon*.<br><br>Even if there were any evidence of oil from the Macondo Well that reached the *Deepwater Horizon*, it would have combusted before it reached the surface of the water. [See TO Response to Paragraph 14, above, for citations]<br><br>Disputed that there was any discharge of oil from the BOP or riser or from the vessel within the meaning of the civil penalty provisions of the CWA, 33 U.S.C. §1321(b)(7)(A), in a quantity as may be harmful or in any quantity. | "[c]ause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines" are "harmful to the public health or welfare or the environment of the United States." 40 C.F.R. § 110.3. **Anadarko does not dispute that, under the applicable regulations, the discharge of oil from the *Deepwater Horizon* was in such quantities as may be harmful to the public health or welfare or the environment of the United States.** |
| 19 | Some of the oil spread to within 200 nautical miles of the United States' coastline. | **Uncontested for purposes of this Motion.** | **Undisputed that oil from the Macondo Well spread to within 200 nautical miles of the United States coastline.**<br><br>[evidentiary objections omitted]<br><br>Disputed that there was any oil discharged from the *Deepwater* | **Anadarko does not dispute that some of the oil discharged from the *Deepwater Horizon* spread to within 200 nautical miles of the United States' coastline.** |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | | *Horizon,* let alone oil that spread to within 200 nautical miles of the United States coastline. The United States' citation to paragraph 15 of its Statement of Undisputed Material Facts in support of its first Motion for Partial Summary Judgment provides no evidence to show that any oil discharged from the *Deepwater Horizon* spread to within 200 miles of the United States' coastline. The United States has not submitted any evidence (let alone admissible evidence as to the Transocean Defendants) to support that oil was discharged from the *Deepwater Horizon*. Even if there were any evidence of oil from the Macondo Well that reached the *Deepwater Horizon*, it would have combusted before it reached the surface of the water. [See TO Response to Paragraph 14, above, for citations]<br><br>Disputed that there was any discharge of oil from the BOP or riser or from the vessel within the meaning of the civil penalty provisions of the CWA, 33 U.S.C. §1321(b)(7)(A). Even if the language from BP's Answer cited by the United States were admissible as | |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | | to the Transocean Defendants, as quoted by the United States it would support only that "some of the oil [**from the Macondo Well**] reached the shoreline of the United States." (emphasis added.) | |
| 20 | Some of the oil spread to within 3 miles of the coastline of the United States and onto adjoining shorelines. | **Uncontested for purposes of this Motion.** | **Undisputed that oil from the Macondo Well spread to within 3 miles of the United States coastline and onto adjoining shorelines.** <br><br> [evidentiary objections omitted] <br><br> Disputed that there was any oil discharged from the *Deepwater Horizon,* let alone oil that spread to within 3 miles of the coastline of the United States and onto adjoining shorelines. The United State's citation to paragraph 15 of its Statement of Undisputed Material Facts in support of its first Motion for Partial Summary Judgment provides no evidence to show that any oil discharged from the *Deepwater Horizon* spread to within 3 miles of the United States' coastline and/or onto adjoining shorelines. The United States has not submitted any evidence (let alone admissible evidence as to the Transocean Defendants) to | **Anadarko does not dispute that some of the oil discharged from the *Deepwater Horizon* spread to within three miles of some of the coastline of the United States and onto some adjoining shorelines.** |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | | support that oil was discharged from the *Deepwater Horizon*.<br><br>Even if there were any evidence of oil from the Macondo Well that reached the *Deepwater Horizon*, it would have combusted before it reached the surface of the water. [See TO Response to Paragraph 14, above, for citations]<br><br>Disputed that there was any discharge of oil from the BOP or riser or from the vessel within the meaning of the civil penalty provisions of the CWA, 33 U.S.C. §1321(b)(7)(A). Even if the language from BP's Answer cited by the United States were admissible as to the Transocean Defendants, it would support only that "some of the oil **from the Macondo Well** reached the shoreline of the United States". (emphasis added.) | |
| 21 | The uncontrolled flow of oil continued for several months thereafter. | **It is uncontested for purposes of this Motion that, as indicated in the authority relied upon by the government, oil flowed into the Gulf** | **Undisputed that oil from the Macondo Well continued to flow for several months after April 20, 2010.**<br><br>[evidentiary objections omitted]<br><br>Disputed that there was any oil discharged from the *Deepwater* | Anadarko objects to the extent that the phrase "several months thereafter" is vague and ambiguous. **Anadarko does not dispute that oil discharged from the *Deepwater Horizon's* broken riser until July 15, 2010.** The amount of oil flowing from the *Deepwater Horizon* and efforts to control such discharge are to be addressed in Phase |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | **of Mexico for a period of approximately 85-87 days.** *See* BP Answer ¶ 1. BP disputes, and the authority cited by the government does not establish, that the flow was "uncontrolled" during the entirety of that period. *See id.* | *Horizon,* let alone oil that continued to flow for several months. The United States' citation to paragraph 15 of its Statement of Undisputed Material Facts in support of its first Motion for Partial Summary Judgment provides no evidence to show that any oil discharged from the *Deepwater Horizon* as opposed to a discharge from the Macondo Well continued to flow for several months after April 20, 2010. Even Transocean's statement in a brief directed to Trial Plan Issues were admissible evidence against the Transocean Defendants in support of this Motion for Partial Summary Judgment, the cited statement from the brief does not support that any oil discharged from the *Deepwater Horizon* as opposed to a discharge from the Macondo Well continued to flow for several months after April 20, 2010.<br><br>Disputed that there was any discharge of oil from the BOP or riser or from the vessel within the meaning of the civil penalty provisions of the CWA, 33 U.S.C. §1321(b)(7)(A). | Two Discovery, which is ongoing. |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | | Even if the language from BP's Answer cited by the United States were admissible as to the Transocean Defendants, it would support only that "oil flowed into the Gulf of Mexico **from the Macondo well** for 87 days")." (emphasis added.) Similarly, even if Anadarko's response to the United States Request for Admission cited by the United States were admissible against the Transocean Defendants, it would support only that "oil flowed **from the Macondo Well** and was discharged into the Gulf of Mexico." (emphasis added.) | |
| 22 | The Macondo Well was capped on July 15, 2010. | **Uncontested for purposes of this Motion.** | **Undisputed.**<br><br>[evidentiary objections omitted] | Anadarko objects to the extent that the phrase "the Macondo Well was capped" is vague and ambiguous. **Anadarko does not dispute that the discharge of oil from the** *Deepwater Horizon's* **appurtenances ceased on July 15, 2010.** |
| 23 | On or about November 18, 2009, BP and MOEX executed a Lease Exchange Agreement, whereby BP assigned to MOEX a 10% interest in the Lease. (Ex. 1 hereto). | **It is uncontested for purposes of this Motion that BP and MOEX executed such an Agreement.** The Lease Exchange Agreement speaks for itself. Its interpretation is a | The Transocean Defendants object that this statement is irrelevant as to the Transocean Defendants.<br><br>[evidentiary objections omitted] | **Anadarko does not dispute that on November 18, 2009, BP and MOEX Offshore 2007 ("MOEX") executed a Lease Exchange Agreement. Anadarko further states that under the Lease Exchange Agreement, BP agreed to assign to MOEX a 10% Record Title Interest in the Macondo Lease.** Such assignment was to be in the form of that found in Exhibit B to the Lease Exchange |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | question of law. | | Agreement executed by the parties. *Lease Exchange Agreement between BP and MOEX*, Dep. Ex. 1244, DWHMX00000247 at §§ 1.3, 2(a) (10/1/2009; executed 11/18/2009) (Ex. 5 hereto); *see also Exhibit B to Lease Exchange Agreement between BP and MOEX*, BPHZN-2179MDL00339265 (Ex. 5A hereto). |
| 24 | After MOEX and BP executed the assignment, it was submitted to MMS, which approved the assignment on February 23, 2010. | **It is uncontested for purposes of this Motion that BP and MOEX executed such an assignment.** The assignment speaks for itself. Its interpretation is a question of law. | The Transocean Defendants object that this statement is irrelevant as to the Transocean Defendants. [evidentiary objections omitted] | **Anadarko does not dispute that after MOEX and BP executed the assignment pursuant to the Lease Exchange Agreement between the two entities, it was submitted to the Minerals Management Service ("MMS"), which approved the assignment to MOEX on February 23, 2010. Anadarko further states that such assignment was effective October 1, 2009, as approved by MMS.** *MMS Online Agency Records Serial Register Page*, IMS059-014814 at 4814 (Ex. 13 hereto) ("Agency Records"). |
| 25 | BP assigned a 22.5% Record Title Interest in the Lease to A E&P Company LP ("A E&P"), effective October 1, 2009. BP executed the assignment on or about December 17, 2009, A E&P submitted the assignment to MMS on February 11, 2010, and MMS approved the | **It is uncontested for purposes of this Motion that BP executed such an assignment.** The assignment speaks for itself. Its interpretation is a question of law. | The Transocean Defendants object that this statement is irrelevant as to the Transocean Defendants. [evidentiary objections omitted] | **Anadarko does not dispute that, on December 17, 2009, BP executed an assignment of a 22.5% Record Title Interest in the Macondo Lease to AE&P. Anadarko does not dispute that AE&P submitted the assignment to the MMS on February 11, 2010, and that the MMS approved the assignment on February 23, 2010. Anadarko further states that it is undisputed that the Lease Exchange Agreement between BP, APC, and AE&P** |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|
| assignment on February 23, 2010. | | | contemplated a like-kind exchange of interests in various leases. *Lease Exchange Agreement*, Dep. Ex. 2824, BP-HZN-2179MDL02319086 at §§ 1-2, 4 and Exhibit A-2 (10/1/2009; executed 12/17/2009) (Ex. 4 hereto) ("Lease Exchange Agreement"). **Anadarko also submits that the Lease Exchange Agreement provided that AE&P would not retain any interest in the Macondo Lease, and would not participate in the exploration of the Macondo Prospect. The Agreement provided that AE&P would assign its 22.5% interest in the Macondo Lease to APC upon the transfer from BP, such that APC would hold a 25% interest in the Macondo Lease.** *Id.* **at § 2.2 and Exhibit A-2. It is undisputed that BP and APC contemplated that APC would ultimately hold the full 25% Macondo Lease interest transferred from BP.** Deposition of Michael Beirne, BP Offshore Land Negotiator (Ex. 35 hereto) ("Beirne Dep."), at 242:16-19; 242:21-243:5. **After BP assigned its interest to AE&P, as contemplated by the Lease Exchange Agreement, AE&P then executed an assignment of its interest to APC on April 15, 2010, with an effective date of April 1, 2010.** *Assignment of Record Title Interest in Federal OCS Oil and Gas Lease*, Dep. Ex. 2317, ANA-MDL-000023861 at 3862-63 |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | | | (executed 4/15/2010) (Ex. 2 hereto) ("Assignment"). |
| 26 | BP assigned a 2.5% Record Title Interest in the Lease to APC. BP executed the assignment on or about December 17, 2009, APC submitted the assignment to MMS on or about February 12, 2010, and MMS approved the assignment on February 23, 2010. | **It is uncontested for purposes of this Motion that BP executed such an assignment.** The assignment speaks for itself. Its interpretation is a question of law. | The Transocean Defendants object that statement is irrelevant as to the Transocean Defendants.<br><br>[evidentiary objections omitted] | **Anadarko does not dispute that BP assigned a 2.5% Record Title Interest in the Macondo Lease to APC, and that BP executed the assignment on December 17, 2009. Anadarko also does not dispute that APC submitted the assignment to the MMS on or about February 12, 2010, and that the MMS approved the assignment on February 23, 2010. This assignment was also effective October 1, 2009.** Agency Records at 4814 (Ex. 13 hereto). |
| 27 | On or about December 17, 2009, APC, A E&P and BP executed a Lease Exchange Agreement, whereby BP assigned to APC and A E&P collectively a 25% interest in the Lease. (Ex. 2 hereto). | **It is uncontested for purposes of this Motion that BP, A E&P and APC executed such an Agreement.** The Lease Exchange Agreement speaks for itself. Its | The Transocean Defendants object that this statement is irrelevant as to the Transocean Defendants.<br><br>[evidentiary objections omitted] | **Anadarko does not dispute that on December 17, 2009, APC, AE&P, and BP executed a Lease Exchange Agreement, whereby BP agreed to assign to APC and AE&P collectively a 25% interest in the Macondo Lease.** See Anadarko Response to U.S. Statements 25-26, supra. |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | interpretation is a question of law. | | |
| 28 | A E&P assigned its 22.5% Record Title Interest in the Lease to APC. A E&P submitted the assignment to MMS on or about April 20, 2010, and MMS approved the assignment on April 28, 2010. APC and A E&P had agreed to an effective date of April 1, 2010. | **It is uncontested for purposes of this Motion that A E&P executed such an assignment.** The assignment speaks for itself. Its interpretation is a question of law. | The Transocean Defendants object that this statement is irrelevant as to the Transocean Defendants. [evidentiary objections omitted] | **Anadarko does not dispute that AE&P assigned its 22.5% Record Title Interest in the Macondo Lease to APC, that AE&P submitted the assignment to the MMS on April 20, 2010, and that the MMS approved the assignment on April 28, 2010. Anadarko also does not dispute that APC and AE&P had agreed to an effective date of April 1, 2010. Anadarko submits that it is also undisputed that on April 15, 2010, APC and AE&P executed the Assignment of Record Title Interest by which AE&P assigned its 22.5% interest in the Macondo lease to APC.** Assignment at 3862-63 (Ex. 2 hereto). **It is undisputed that the Assignment provided that it was "effective . . . as of April 1, 2010," and that MMS approved such effective date.** *Id.* at 3862-63. **It is also undisputed that MMS records state, on April 28, 2010, that APC held a 25% record title interest in the Macondo lease, and AE&P held no interest therein, "effective 04/01/2010[.]"** *See* Agency Records at 4815 (Ex. 13 hereto). |
| 29 | As of April 20, 2010, MMS had not approved the A E&P reassignment of its interest in the Lease, and A E&P held | **The assignment speaks for itself.** Its interpretation is a question of law. | The Transocean Defendants object that this statement is irrelevant as to the Transocean Defendants. [evidentiary objections omitted] | Anadarko objects to U.S. Statement 29 because whether AE&P held an interest in the Macondo Lease as of April 20, 2010 for purposes of applicable law is a question of law, not a question of fact. Anadarko |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | 22.5% of the Lease. | | | disputes the United States' legal conclusion that AE&P held a 22.5% interest in the Macondo Lease as of April 20, 2010. **Anadarko does not dispute that as of April 20, 2010, the MMS had not yet approved AE&P's assignment of its interest in the Macondo Lease to APC.** |
| 30 | After its assignments to MOEX, APC and A E&P, BP retained a 65% interest in the Lease. | **The agreements speak for themselves. Their** interpretation is a question of law. | The Transocean Defendants objects that this statement is irrelevant as to the Transocean Defendants. [evidentiary objections omitted] | **Anadarko does not dispute that BP retained a 65% interest in the Macondo Lease after its assignments to MOEX and Anadarko.** |
| 31 | On or about December 17, 2009, BP, APC and an APC subsidiary, Kerr-McGee Oil and Gas Corporation, also entered into a Well Participation Agreement for the Macondo Prospect, whereby APC would own a 25% interest in the Macondo Well. (Ex. 3 hereto). | **It is uncontested for purposes of this Motion that BP, APC, and an APC subsidiary, Kerr-McGee Oil and Gas Corporation, entered into such an Agreement.** The Well Participation Agreement speaks for itself. Its interpretation is a question of law. | The Transocean Defendants object that this statement is irrelevant as to the Transocean Defendants. [evidentiary objections omitted] | **Anadarko does not dispute that on December 17, 2009, BP, APC, and Kerr-McGee Oil and Gas Corporation entered into a Well Participation Agreement for the Macondo Prospect, whereby APC would own a 25% interest in the Macondo Well. Anadarko further states that it is undisputed that the Well Participation Agreement provides that "APC owns an undivided twenty five (25%) working interest in the Macondo Prospect Area following execution of the Lease Exchange Agreement . . . and a subsequent assignment from its Affiliate Anadarko E&P Company, LP ('AEP') of AEP's Record Title Interest in the Macondo Prospect Area."** *Macondo Prospect Well Participation Agreement*, Dep. Ex. 2825, BP-HZN-2179MDL02319125 (10/1/2009; executed |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | | | 12/17/2009) (Ex. 7 hereto) ("Well Participation Agreement") at 9125; *see also* Anadarko's Response to U.S. Statement 28, *supra*. |
| 32 | As consideration for its 25% proportionate share of the Macondo Well, BP and APC agreed that APC would pay "1/3 for 1/4," or 33.33% of up to 110% of the estimated costs of the Macondo Well as set forth in the Initial Authorization for Expenditure. | **The Well Participation Agreement speaks for itself.** Its interpretation is a question of law. | The Transocean Defendants object that this statement is irrelevant as to the Transocean Defendants. [evidentiary objections omitted] | **Anadarko does not dispute that in exchange for a 25% share in the Initial Exploratory Well ("IEW") being drilled on the Macondo leasehold, BP and APC agreed that APC would pay 33.33% of up to 110% of the estimated costs of the IEW, as set forth in the Initial Authorization for Expenditure.** |
| 33 | On or about November 18, 2009, BP and MOEX executed a Joint Operating Agreement that set forth their agreement among themselves as to their rights and responsibilities, operational duties, accounting mechanism, and many other terms as to the Macondo Prospect. The Anadarko Defendants executed a Ratification and Joinder of the Joint Operating Agreement on or about December 17, 2009. | **It is uncontested for purposes of this Motion that BP and other parties entered into such an agreement.** The Joint Operating Agreement and Ratification and Joinder speak for themselves. Their interpretation is a question of law. | The Transocean Defendants objects that this statement is irrelevant as to the Transocean Defendants. [evidentiary objections omitted] | **Anadarko does not dispute that on November 18, 2009, BP and MOEX executed the Macondo Prospect Offshore Deepwater Operating Agreement ("Operating Agreement") that set forth their rights and responsibilities, operational duties, accounting mechanism, and many other terms as to the Macondo Prospect. Anadarko also does not dispute that BP, APC, and AE&P executed a Ratification and Joinder of that Operating Agreement on December 17, 2009, and that all signatories agreed that the Operating Agreement would be effective as of October 1, 2009.** Anadarko further submits that it is undisputed that the Operating Agreement |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | All signatories agreed that the Joint Operating Agreement would be retroactively effective as of October 1, 2009. | | | designated BP as the "Operator" of the Macondo Lease, making BP solely responsible for conducting or causing to be conducted all operations on the Macondo leasehold, including, but not limited to, drilling and exploration operations. Operating Agreement, Dep. Ex. 1243, APC-HEC1-000001601, at Art. 2.49, 4.1 (ratified by APC and AE&P on 12/17/2009) (Ex. 6 hereto); *see also* 30(b)(6) Deposition of Patrick O'Bryan, BP's Vice President of Drilling & Completions and Interventions for Gulf of Mexico Deepwater (Ex. 45 hereto) ("O'Bryan 30(b)(6) Dep."), at 768:2-5; 768:17-20; 768:22; Deposition of David Rainey, BP Vice President of Exploration for the Gulf of Mexico (Ex. 48 hereto) ("Rainey Dep."), at 394:20-23. It is further undisputed that MMS records reflect this formal designation pursuant to MMS regulatory requirements. Agency Records at 4814 (Ex. 13 hereto); *see also MMS Designation of Operator Form*, BP-HZN-2179MDL02319165 at 9165-66 (12/17/2009) (Ex. 29 hereto). |
| 34 | BP is liable as an "operator" of the Macondo Well under the CWA, 33 U.S.C. § 1321(b)(7). | **This statement is a legal conclusion rather than a statement of fact and is contested for the reasons stated in BP's** | Undisputed. | **Anadarko objects to U.S. Statement 34 because whether BP is liable as an "operator" of the Macondo Well under the CWA, 33 U.S.C. § 1321(b)(7), is a question of law, not a question of fact.** Anadarko disputes the United States' erroneous legal conclusion that BP is liable as an "operator" |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | **accompanying memorandum of law.** Moreover, given that BP admits that it is a partial owner of the Macondo well, this issue is unnecessary to resolve as to BP in the context of the present Motion. | | of the Macondo Well under the CWA, 33 U.S.C. § 1321(b)(7), because no oil discharged from the Macondo Well into the Gulf of Mexico. |
| 35 | Pursuant to BP's obligations under its Agreements with MOEX and Anadarko, BP prepared an Authorization for Expenditure for the drilling of the initial exploratory well, Macondo Well. The AFE was executed by BP, MOEX, and Anadarko (Exs. 6, 7 hereto). | **It is uncontested for purposes of this Motion that BP prepared such an Authorization that was executed by BP, MOEX and Anadarko.** That Authorization and the Agreements speak for themselves. Their interpretation is a question of law. | **Undisputed.** [evidentiary objections omitted] | Anadarko objects to the extent that U.S. Statement 35 is not a statement of fact material to any issue raised in the United States' Motion. **Anadarko does not dispute that pursuant to BP's obligations under its Agreements with MOEX and Anadarko, BP prepared an Authorization for Expenditure ("AFE") for the drilling of the initial exploratory well, the Macondo Well. Anadarko also does not dispute that the AFE was executed by BP, MOEX, and Anadarko, and further submits that APC and AE&P executed the AFE on December 17, 2009.** *See Authorization for Expenditure*, Dep. Ex. 1919, APC-SHS2A-000001082 at 1082 (12/17/2009) (Ex. 20 hereto). It is also undisputed that BP and Anadarko did not |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | | | consider an AFE under the Operating Agreement to be a request for input from Anadarko with regard to well design or drilling operations. Beirne Dep. at 392:4-17 (Ex. 35 hereto). |
| 36 | Two supplemental AFEs were prepared to cover additional costs related to the drilling of the Macondo Well. These AFEs were executed by BP, MOEX, and Anadarko. (Exs. 6, 8, 9 hereto). | **It is uncontested for purposes of this Motion that BP prepared such Supplemental Authorizations that were executed by BP, MOEX, and Anadarko.** The supplemental AFEs speak for themselves. Their interpretation is a question of law. | **Undisputed.** [evidentiary objections omitted] | Anadarko objects to the extent that U.S. Statement 36 is not a statement of fact material to any issue raised in the United States' Motion. **Anadarko does not dispute that two supplemental AFEs were prepared to cover additional costs related to the drilling of the Macondo Well, and these AFEs were executed by BP, MOEX, and Anadarko. Anadarko further submits that APC and AE&P executed these AFEs on February 18, 2010, and March 30, 2010.** *See Authorization for Expenditure*, Dep. Ex. 1920, ANA-MDL-000030713 at 0714 (2/18/2010) (Ex. 21 hereto); *Second Supplemental Authorization for Expenditure*, Dep. Ex. 1921, ANAMDL- 000030687 at 0690 (3/30/2010) (Ex. 22 hereto). |
| 37 | A fourth AFE was prepared to authorize funding for the production casing for the Macondo Well. This AFE was executed on or around April 15, 2010, by BP, MOEX and Anadarko. (Exs. 6, 10 hereto). | **It is uncontested for purposes of this Motion that BP prepared such a Fourth Authorization that was executed by BP, MOEX and Anadarko.** The | **Undisputed.** [evidentiary objections omitted] | Anadarko objects to the extent that U.S. Statement 37 is not a statement of fact material to any issue raised in the United States' Motion. **Anadarko does not dispute that a fourth AFE was prepared to authorize funding for the production casing for the Macondo Well, and that this AFE was executed on April 15, 2010, by BP, MOEX, APC, and AE&P.** *See, e.g., Authorization* |

Case 2:10-md-02179-CJB-DPC   Document 5214-1   Filed 01/16/12   Page 28 of 37

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | fourth AFE speaks for itself. Its interpretation is a question of law. | | *for Expenditure*, Dep. Ex. 1922, ANA-MDL 000030726 at 0727-28 (4/15/2010) (Ex. 23 hereto). |
| 38 | From January through May, 2010, BP sent "Joint Interest Billings" (JIBs) or invoices to co-owners MOEX and APC, which requested reimbursement to BP for the MOEX and APC's proportionate share of costs of casing and other physical components of the Macondo Well. | **It is uncontested for purposes of this Motion that BP sent Joint Interest Billings ("JIBs") or invoices to MOEX and APC.** The JIBs speak for themselves. Their interpretation is a question of law. | Undisputed. [evidentiary objections omitted] | Anadarko objects to the extent that U.S. Statement 38 is not a statement of fact material to any issue raised in the United States' Motion. **Anadarko does not dispute that from January through May, 2010, BP sent invoices to MOEX and APC, which requested reimbursement to BP for MOEX's and APC's proportionate share of costs of casing and other physical components of the Macondo Well. Anadarko further submits that it is undisputed that BP did not send such invoices to AE&P.** *See, e.g.*, Dep. Ex. 4204, 4206, 4208, 4210, and 4212 (Exs. 24, 25, 26, 27, and 28 hereto) (January-May 2010 invoices from BP to APC, which do not list AE&P as a recipient); *see also* 30(b)(6) Deposition of Jerry Byrd, Anadarko Manager of Joint Interest Accounts and former Manager of Accounts Payable in the AFE Group (Ex. 39 hereto) ("Byrd 30(b)(6) Dep."), at 87:18-22; 87:24-88:11; 88:13-16; 93:1-5 (in reference to Dep. Ex. 4208 (Ex. 26 hereto), Byrd testified, "Anadarko Petroleum Corporation . . . [is] the only party that's being billed on this invoice for 33 percent." He further stated, "I have only seen invoices addressed to Anadarko Petroleum |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | | | Corporation"). |
| 39 | The JIBs itemized tangible equipment – physical assets, such as the well head and casing – which was included as part of the proportionate costs to be reimbursed by APC and MOEX. | **The JIBs speak for themselves.** Their interpretation is a question of law. | **Undisputed.** | Anadarko objects to the extent that U.S. Statement 39 is not a statement of fact material to any issue raised in the United States' Motion. **Anadarko does not dispute that the invoices itemized tangible equipment—physical assets, such as the wellhead and casing—which was included as part of the proportionate costs to be reimbursed by APC and MOEX.** |
| 40 | The JIBs for Macondo well costs did not include BP's proportionate share of the Macondo Well. BP retained a 65% ownership interest in the Macondo Well. | **The JIBs speak for themselves.** Their interpretation is a question of law. | **Undisputed.** | Anadarko objects to the extent that U.S. Statement 40 is not a statement of fact material to any issue raised in the United States' Motion. **Nevertheless, Anadarko does not dispute that the invoices for Macondo Well costs did not include BP's proportionate share of the Macondo Well and that BP retained a 65% interest in the Macondo Well.** |
| 41 | BP is a Delaware corporation. | **BP Exploration & Production Inc. is a Delaware corporation.** | **Undisputed.** [evidentiary objections omitted] | **Anadarko does not dispute that BP Exploration & Production, Inc. is a Delaware corporation.** |
| 42 | The Transocean Defendants admits that one or more of the Transocean Defendants were the owners, owners *pro hoc vice*, and/or operators of the MODU | **Uncontested for purposes of this Motion, provided that the government intended to describe the** | Undisputed that "**one or more** of the Transocean Defendants were the owners, owners *pro hac vice*, and/or operators of the MODU *Deepwater Horizon*." (emphasis added.) | **Anadarko does not dispute that the Transocean Defendants admit that one or more of the Transocean Defendants were the owners, owners *pro hac vice*, and/or operators of the MODU *Deepwater Horizon*.** |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

|  | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
|  | *Deepwater Horizon*. | **Transocean Defendants as owners *pro hac vice*.** |  |  |
| 43 | The Transocean Defendants have admitted their ownership of the *Deepwater Horizon* in pleadings, discovery, and public reports. | **Uncontested for purposes of this Motion.** | **Undisputed that Defendant Triton Asset Leasing GmbH was the owner of the *Deepwater Horizon*.**<br><br>Disputed that any other Transocean Defendant owned the *Deepwater Horizon*. The Complaint and Petition for Exoneration from or Limitations of Liability (Ex. 38) cited by the United States does not show that any particular Transocean entity was an owner of the *Deepwater Horizon.* Instead, it is alleged in paragraph 6 of that pleading only that "Petitioners were at all times material hereto the Owner, Managing Owners, Owners *Pro Hac Vice,* and/or Operators, of the MODU *Deepwater Horizon,* etc., **and/or are considered 'owners' of the vessel under the Limitation of Liability Act**, 46 U.S.C. 30501 *et seq.,* as a party or parties sought to be held liable 'as owner' of the MODU *Deepwater Horizon . . . .*" (emphasis added.) The general reference to "Transocean" in the response to BP's Interrogatory No. 34 | **Anadarko does not dispute that the Transocean Defendants have admitted their ownership of the *Deepwater Horizon* in pleadings, discovery, and public reports.** |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | | cited (Ex. 37) and in the Internal Investigation Report cited (Ex. 25) are generic references and do not support that any particular Transocean entity owned the *Deepwater Horizon*, particularly given Defendants' specific response cited by the United States from BP's RFA Nos. 5, 6 (Ex. 36) that "'Triton Asset Leasing GmbH was the owner of the Deepwater Horizon' . . . 'and no other entity'". | |
| 44 | The Transocean Defendants have admitted their operation of the MODU *Deepwater Horizon* in pleadings and discovery. | **Uncontested for purposes of this Motion.** | **Undisputed that Defendant Transocean Deepwater Inc. operated the *Deepwater Horizon*.**<br><br>Disputed that any other Transocean entity operated the *Deepwater Horizon*. The Complaint and Petition for Exoneration from or Limitations of Liability (Ex. 38) cited by the United States does not show that any particular Transocean entity operated the *Deepwater Horizon.* Instead, it is alleged in paragraph 6 of that pleading only that "Petitioners were at all times material hereto the Owner, Managing Owners, Owners *Pro Hac Vice,* **and/or** Operators, of the MODU *Deepwater Horizon,* etc., **and/or are considered 'owners' of the vessel under the** | **Anadarko does not dispute that the Transocean Defendants have admitted their operation of the MODU *Deepwater Horizon* in pleadings and discovery.** |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | | **Limitation of Liability Act**, 46 U.S.C. 30501 *et seq.,* as a party or parties sought to be held liable 'as owner' of the MODU *Deepwater Horizon . . . .*" (emphasis added.) The general reference to "Transocean" in the response to responses to the United States Requests for Admission are generic references only and do not support that any particular Transocean entity operated the *Deepwater Horizon*, particularly given Defendants' specific response cited by the United States to BP's Request for Admission No. 12 (Ex. 36) that the OIM aboard the *Deepwater Horizon* was employed by Defendant Transocean Deepwater Inc. | |
| 45 | The Transocean Defendants are corporations. | **Uncontested for purposes of this Motion.** | **Undisputed.** | **Anadarko does not dispute that Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH are corporations.** |
| 46 | Beginning in January, 2010, and continuing through May, 2010, APC received requests for payment from BP for costs associated with the construction of the | Disputed in part. **It is undisputed for purposes of this Motion that APC timely paid the JIBs for January 2010 through March** | The Transocean Defendants object that this statement is directed to the liability of the Anadarko Defendants and is irrelevant as to the Transocean Defendants. | Anadarko objects to the extent that U.S. Statement 46 is not a statement of fact material to any issue in the United States' Motion. **Anadarko does not dispute that from January through May, 2010, APC received requests for payment from BP for costs associated with the construction of** |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | Macondo Well in the form of invoices and cash call advances, which it paid timely. APC paid invoices from BP for its proportionate share of the costs of the components that were installed in the Macondo Well. | **2010 operations at the Macondo Well.** The agreements speak for themselves, and their interpretation is a matter of law. The remaining assertions in this paragraph are unsupported by and/or contradicted by the evidence. *See* Ex. 1 (J. Byrd Dep.) at 91:24–93:11. | | **the Macondo Well in the form of invoices and cash call advances, which it paid timely. APC does not dispute that it paid invoices from BP for its proportionate share of the costs of the components that were installed in the Macondo Well. Anadarko further submits that it is undisputed that AE&P received no requests for payment from BP between January and May, 2010.** *See* Anadarko Response to U.S. Statement 38, *supra*. |
| 47 | In the invoices, which also include costs associated with other Wells, the costs for the Macondo Well are identified and tracked by the reference number to the Authorization for Expenditure executed by APC for the Macondo Well. | **The JIBs speak for themselves.** Their interpretations represent a question of law. | The Transocean Defendants object that this statement is directed to the liability of the Anadarko Defendants and is irrelevant as to the Transocean Defendants. | Anadarko objects to the extent that U.S. Statement 47 is not a statement of fact material to any issue in the United States' Motion. **Anadarko does not dispute that in the invoices, which also include costs associated with other wells, the costs for the Macondo Well are identified and tracked by the reference number to the Authorization for Expenditure executed by APC for the Macondo Well.** |
| 48 | The invoices were itemized to include strings of casing, cement, production casing, casing hanger, casing accessories, and the well | **The JIBs speak for themselves.** Their interpretations represent a question of law. | The Transocean Defendants object that this statement is directed to the liability of the Anadarko Defendants and is irrelevant as to the Transocean Defendants. | Anadarko objects to the extent that U.S. Statement 48 is not a statement of fact material to any issue in the United States' Motion. **Anadarko does not dispute that the invoices were itemized to include strings of** |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

|  | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
|  | head. |  |  | **casing, cement, production casing, casing hanger, casing accessories, and the wellhead.** |
| 49 | APC paid its 33.33% (or, 25% after 110% of the well costs of the initial AFE was exceeded) proportionate share of costs associated with the Macondo Well, including the costs of the tangible personal property, from October 1, through April 20, 2010. It did not pay any of the costs of the incident or response to the explosion and spill. The final costs were paid through draw-down of a cash advance or cash call. | Disputed in part. **It is undisputed for purposes of this Motion that APC timely paid the JIBs for January 2010 through March 2010 operations at the Macondo Well.** The agreements speak for themselves, and their interpretation is a matter of law. The remaining assertions in this paragraph are unsupported by and/or contradicted by the evidence. *See* Ex. 1 (J. Byrd Dep.) at 91:24–93:11. | The Transocean Defendants object that this statement is directed to the liability of the Anadarko Defendants and is irrelevant as to the Transocean Defendants. | Anadarko objects to the extent that U.S. Statement 49 is not a statement of fact material to any issue in the United States' Motion. **Anadarko does not dispute that APC paid 33.33% (or 25%, after 110% of the estimated well costs in the initial AFE were exceeded) of costs associated with construction of the Macondo Well, including the costs of the tangible personal property, incurred between October 1, 2009 and April 20, 2010. Anadarko further submits that it is undisputed that prior to its settlement with BP on October 16, 2011, APC did not reimburse BP for any of the costs of the incident or response to the explosion and spill.** Anadarko further states that it is undisputed that, like many other oil and gas exploration companies, Anadarko voluntarily contributed certain personnel and equipment to assist in the oil spill response effort led by the United States Coast Guard. **Anadarko further states that it is undisputed that BP invoiced APC for costs associated with drilling the Macondo Well through May 2010, and that APC paid the portion of the May 2010 invoice addressing pre-incident costs through advance payments.** See May 2010 Invoice from BP to |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | | | APC, Dep. Ex. 4212, ANA-MDL-000073379 (Ex. 28 hereto); Byrd 30(b)(6) Dep. at 94:13-21; 94:23-95:2; 96:7-9; 96:11-19; 97:9-16 (Ex. 39 hereto). **It is further undisputed that APC believed that it had paid BP for its entire share of the cost related to drilling the Macondo Well pursuant to the AFE. Byrd 30(b)(6) Dep. at 92:11-13; 96:21-97:8 (Ex. 39 hereto). Anadarko further submits that it is undisputed that AE&P did not receive any invoices from BP for any costs incurred in association with the construction of the Macondo Well between October 1, 2009 and April 20, 2010, and it is further undisputed that AE&P did not reimburse BP for any such costs.** *See* Anadarko Response to U.S. Statement 38, *supra*. |
| 50 | APC paid the proportionate share of costs sent to it on its own behalf. | Disputed in part. **It is undisputed for purposes of this Motion that APC timely paid the JIBs for January 2010 through March 2010 operations at the Macondo Well.** The agreements speak for themselves, and their interpretation | The Transocean Defendants object that this statement is directed to the liability of the Anadarko Defendants and is irrelevant as to the Transocean Defendants. | Anadarko objects to U.S. Statement 50 because the phrase "proportionate share of costs sent to it on its own behalf" is unintelligible. |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | is a matter of law. Any remaining assertions in this paragraph are unsupported by and/or contradicted by the evidence. *See* Ex. 1(J. Byrd Dep.) at 91:24–93:11. | | |
| 51 | APC was a partial owner of the components that were installed in the Macondo Well, including the strings of casing, cement, production casing, casing hanger, and the well head. | **This statement represents a legal conclusion rather than a statement of fact.** | The Transocean Defendants object that this statement is directed to the liability of the Anadarko Defendants and is irrelevant as to the Transocean Defendants. | **Anadarko does not dispute that APC was a partial owner of the components comprising the Macondo Well that were installed in the wellbore, including the strings of casing, cement, production casing, casing hanger, and the wellhead.** |
| 52 | APC was a partial owner of tangible personal property comprising the Macondo Well. | **This statement represents a legal conclusion rather than a statement of fact.** | The Transocean Defendants object that this statement is directed to the liability of the Anadarko Defendants and is irrelevant as to the Transocean Defendants. | **Anadarko does not dispute that APC was a partial owner of tangible personal property comprising the Macondo Well.** |
| 53 | APC was an owner of the Macondo Well. | **This statement represents a legal conclusion rather than a statement of fact.** | The Transocean Defendants object that this statement is directed to the liability of the Anadarko Defendants and is irrelevant as to the Transocean Defendants. | Anadarko objects to U.S. Statement 53 to the extent that the statement that APC is an "owner" of the Macondo Well for purposes of the Clean Water Act, 33 U.S.C. § 1321, or other applicable law, is a statement of law, not a statement of fact. **Nevertheless, Anadarko does not dispute that, as a** |

CHART OF UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AND DEFENDANTS BP, TRANSOCEAN AND ANADARKO'S RESPONSES

| | U.S. Statement of Facts [Rec. Doc. 4836-2] | BP Response [Rec. Doc. 5124-1] | Transocean Response [Rec. Doc. 5103-1] | Anadarko Response [Rec. Doc. 5113-3] |
|---|---|---|---|---|
| | | | | matter of law, APC was a partial owner of the Macondo Well. |
| 54 | Anadarko E&P is a limited liability company incorporated in the State of Delaware. | **BP lacks knowledge or information sufficient to form a belief about the truth of this paragraph to the extent it is not directed at the conduct or liability of BP.** The authority cited by the government establishes only that A E&P was incorporated in Delaware. *See* Answer of Anadarko Petroleum Corporation ¶ 16. | The Transocean Defendants object that this statement is directed to the liability of the Anadarko Defendants and is irrelevant as to the Transocean Defendants. | **Anadarko does not dispute that AE&P is a limited liability company incorporated in the State of Delaware.** |
| 55 | Anadarko Petroleum Corporation is a corporation incorporated in the State of Delaware. | **Uncontested for purposes of this Motion.** | The Transocean Defendants object that this statement is directed to the liability of the Anadarko Defendants and is irrelevant as to the Transocean Defendants. | **Anadarko does not dispute that APC is a corporation incorporated in the State of Delaware.** |