**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010** | § | **MDL No. 2179** |
| | § | **SECTION: J** |
| | § | **JUDGE BARBIER** |
| **Applies to: All Cases 2:10-cv-02771** | § | **MAG. JUDGE SHUSHAN** |

## HESI'S REPLY IN SUPPORT OF ITS REQUEST FOR CLARIFICATION

Halliburton Energy Services, Inc. ("HESI") respectfully submits this Reply in Support of Its Request for Clarification of Order Disqualifying Viator, Sabins, and CSI (Rec. Doc. 5047).

### I.
### SUMMARY OF THE REPLY

The question left unanswered in the Court's Order granting BP a substitute expert is how to protect HESI from the prejudice resulting from allowing the same attorneys who worked closely with Sabins to work closely with BP's new expert, Ronald Crook. Just as Crook should not have any contact with Sabins' tainted work product, he should not have contact with the attorneys who helped develop that work product. The Fifth Circuit's opinion in *American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125 (5th Cir. 1971) does not apply to the facts of this case because Viator, who had *direct* knowledge of HESI's confidential information about this litigation, worked *directly* with Sabins in this litigation, and Sabins in turn worked *directly* with BP's counsel in this litigation. The attorneys who worked with Sabins should not be allowed to serve as a loophole to undermine the Court's careful protection of the integrity of the judicial process. For these reasons, the Court should grant HESI's Request for Clarification.

## II.
## ARGUMENT

### A. HESI'S Request for Clarification is Timely

HESI's Request for Clarification was prompted by the issues raised in the Court's Order allowing BP to designate a substitute expert. *See* Rec. Docs. 4868, 5014. Sabins was disqualified in order to preserve the integrity of the judicial process, and to further this goal the Court required BP to affirmatively demonstrate that the ***substitute expert*** did not have any contact with the expert work performed by Sabins. (Rec. Doc. 5014). The Court did not, however, require BP to demonstrate anything with respect to the attorneys who had direct contact with Sabins' expert work. In order to avoid further prejudice, HESI timely sought clarification from the Court regarding these attorneys.

Once a court has ordered disqualification, the errant party can and should be blocked from any access to tainted work product. *See In re George*, 28 S.W.3d 511, 514-515 (Tex. 2000). Once BP received notice of the conflict resulting from Sabins employment of Viator, it could have erected a wall between the attorneys who worked directly with Sabins and those who would work with the substitute expert. BP's Response to the Request for Clarification makes it clear that no such wall was erected and that the same attorneys who worked with Sabins are currently working with Crook. Allowing these attorneys to work as closely with Crook as they did with Sabins frustrates the integrity of the judicial process.

Even assuming *arguendo* that Crook had no contact with Sabins, HESI is faced with the very real threat that Sabins' tainted work product will be (or has been) passed to Crook from BP's counsel. Testifying experts work closely with counsel, who provide the framework from which experts derive their opinions. This framework includes descriptions of the factual controversies, identifying key exhibits, discovery, document production, the parties' known strategy, and,

importantly, previously created work product. It follows that Sabins' tainted work product, as known by certain counsel, is likely to be disseminated to Crook, either intentionally or unintentionally, absent an order preventing such dissemination.

**B. *American Can* Does Not Apply To Present Case**

In *American Can Co. v. Citrus Feed Co.*, Miller was plaintiff's lead trial counsel in a collections suit. 436 F.2d at 1126. Allison was hired as plaintiff's local counsel. After Allison was hired, the parties learned that Allison's partner, Erickson, had previously represented the defendant in an unrelated IRS audit. *Id*. at 1127. The defendant moved to disqualify both law firms and all attorneys employed at those firms. *Id*. While there was no evidence that Allison worked on the IRS audit or had any knowledge of defendant's confidential information, the Fifth Circuit affirmed the trial court's imputation of Erickson's conflict to his partner, Allison. *Id*. The Fifth Circuit reversed the trial court's conflict imputation to Miller, however, noting that there was no evidence of a substantial relationship between the tax files and the collections suit. *Id*. The court also noted that: (1) the trial court found no lack good faith on the part of Erickson, Allison, or Miller; (2) each had made every effort to comply with the Canons of Ethics; and (3) Erickson, Allison, and their firm withdrew from their representation of the plaintiff. *Id*.

The "double imputation" analysis of *American Can* has no application to the present case because there is a substantial relationship between Viator's knowledge of HESI's confidential information and his work for Sabins and BP in this litigation. Viator, who had *direct* knowledge of HESI's confidential information about this litigation worked *directly* with Sabins, who worked *directly* with BP's counsel in this litigation. Additionally, unlike the attorneys in *American Can*, Sabins intentionally assigned Viator to work on this case against HESI. Sabins made no effort to act in an ethical manner, and when BP learned of Sabins' conduct, it made no effort to distance

him from the case or withdraw his opinions. Instead, BP fought tooth and nail to utilize Sabins' tainted opinions until this Court disqualified him. The same can be said for the attorneys who worked with Viator and Sabins. After receiving clear and unequivocal evidence that Viator worked with HESI's defense counsel in this litigation, these attorneys failed to erect any kind of wall between themselves and BP's substitute expert. This is hardly an effort to comply with the rules of ethics.

After multiple rounds of briefing on this subject, BP still offers no explanation about how and why Viator's name was added to the list of "Authorized Personnel" on the Software Escrow Agreement. *See* Ex. A (filed with HESI's Motion for Disqualification, Rec. Doc. 4595-7). Unlike *Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080 (C.D. Cal. 2001), this is not a situation where the individuals in question "had no interactions with each other with respect to this matter." *Id.* at 1087 (cited in Order, Rec. Doc. 4838). Here, certain BP attorneys worked directly with Sabins, preparing him for and defending him in multiple depositions, preparing his expert reports, and assigning him to conduct computer modeling for BP using HESI's computer and proprietary software. Presuming that such counsel was involved in formulating Sabins' opinions is very different than the imputation that was rejected in *American Can.*

**C. BP's Refuses To Acknowledge Counsels' Duty To Ensure Compliance With Ethical Rules**

BP's argument that counsel has no obligation to ensure that experts comply with applicable ethics rules should be rejected. Rec. Doc. 5205 at 12 & 12 n.2. Although the court in *Remtech, Inc. v. Fireman's Fund Ins. Co*. did not disqualify counsel vicariously based on the expert's contacts, unlike Viator, that expert had no confidential information. No. CV-05-0087-LRS, 2006 WL 5157646 at *1 (E.D. Wash. 2006). Further, the court *did* disqualify the expert because he was a former employee of the movant — just as Crook is a former employee of

HESI. Although HESI does not presently seek Crook's disqualification, it does seek adequate protection of its confidential information and an end to BP's use of Sabins' tainted work product. Because attorneys should not function as a conduit for an end-run around the Court's orders, Crook should not be allowed to work with the same lawyers who helped Sabins develop his reports.

## III.
## CONCLUSION

HESI does not seek to disqualify BP's counsel. Rather, HESI asks this Court to clarify its prior order to ensure that BP does not benefit from Sabins' misdeeds. Allowing the same lawyers who worked with Sabins on his tainted expert reports to work with Crook serves as an end-run around the Court's orders. This Court should grant HESI's request and clarify its prior order to make clear that the attorneys who worked with Sabins cannot work with Crook or on any cement related matters in this litigation.

Respectfully Submitted,

**GODWIN RONQUILLO PC**

**By:** /s/ *Donald E. Godwin*
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
dgodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
bbowman@GodwinRonquillo.com
Jenny L. Martinez
State Bar No. 24013109
jmartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
fhartley@GodwinRonquillo.com
Gavin E. Hill
State Bar No. 00796756
ghill@GodwinRonquillo.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

and

R. Alan York
AYork@GodwinRonquillo.com
Jerry C. von Sternberg
JVonSternberg@GodwinRonquillo.com
Misty Hataway-Coné
MCone@GodwinRonquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

**ATTORNEYS FOR DEFENDANT HALLIBURTON ENERGY SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Halliburton Energy Services, Inc.'s Reply in Support of its Request for Clarification was filed electronically with the Clerk of the Court using the CM/ECF system and that notice of this filing will be sent to all counsel through the CM/ECF system on this 16th day of January 2012.

/s/ Donald E. Godwin
Donald E. Godwin