

DALLAS  HOUSTON

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041

214.939.4400
800.662.8393
214.760.7332 Fax

GodwinRonquillo.com

DONALD E. GODWIN, SHAREHOLDER
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:     214.939.4412
DIRECT FAX:      214.939.4803
DGodwin@GodwinRonquillo.com

January 17, 2012

**BY EMAIL**

The Honorable Carl J. Barbier
United States District Judge
500 Poydras Street, Room C-268
New Orleans, Louisiana  70130

    Re:    Response in Opposition to Portions of BP and TO's Motion to Limit Scope of Adverse Inferences Drawn From Invocation of Fifth Amendment Privilege Against Self-Incrimination.

Dear Judge Barbier:

On January 9, 2012, BP and TO filed motions *in limine* to preclude adverse inferences arising from the decision of a witness to invoke the Fifth Amendment.  *See* Rec. Doc. 5112, 5111.  Also on January 9, 2012, HESI filed a letter brief joining these motions, **in part**, but reserving its right to respond to other portions.  In accordance with its reservation of rights, HESI files this response to certain portions of BP and TO's limine motions concerning Fifth Amendment issues.[1]

**I.     Adverse Inferences Can Arise from Non-Corporate Representative's Invocation of the Fifth Amendment**

BP cites *Curtis v. M&S Petroleum, Inc*., 174 F.3d 661, 674 (5th Cir. 1999), to support its argument that there should be no adverse inference against BP because none of the BP witnesses who invoked the Fifth Amendment were designated as a BP corporate representative.  *See* BP Motion at 6-7.  On the other hand, BP acknowledges that privilege invocations of non-corporate representatives should be assessed in the context of the litigation as a whole before drawing adverse inferences against BP.  *See id.* at 7.  Putting this apparent contradiction aside, *Curtis* merely stands for the proposition that an adverse inference is permissible against a corporation if

---

[1] As BP notes, it is difficult to argue with any specificity regarding the propriety of an adverse inference in the absence of any specific request by a party to apply such an inference to specific testimony.  Therefore, HESI reserves its right to make additional arguments in response to any request by any party for the application of an adverse inference against HESI.  Further, HESI reserves its right to argue that an adverse inference is proper against another party based upon a witness' invocation of Fifth Amendment protections.

The Honorable Carl J. Barbier
January 17, 2012
Page 2

its corporate representative invokes the Fifth Amendment in his individual capacity. *Id*. at 673-74. *Curtis* does not, as BP suggests, stand for the proposition that an adverse inference is impermissible against a corporation unless the witness invoking the Fifth Amendment is a corporate representative. *See Id*. There is no such requirement in the Fifth Circuit. Therefore, whether or not a witness is a corporate representative is not dispositive in the context of adverse inferences.

### II. Current Litigation By An Employee Does Not Necessarily Preclude Adverse Inferences Against the Employer

TO argues that because "most" of the current or former TO employees invoking the Fifth Amendment are in litigation against TO, there can be no inference against TO based on the witnesses' refusal to testify. *See* TO Motion at 3. However, there is no bright-line rule that an employee-plaintiff's Fifth Amendment invocation cannot give rise to an adverse inference against his employer. *See* Robert Heidt, *The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases*, 91 YALE L.J. 1062, 1119-20 n.214 (1982) (noting that an existing employment relationship reduces the chance that the employee would invoke the Fifth Amendment solely to bring discredit to the employer). Rather than apply TO's suggested bright line rule, the Court should engage in a fact specific, witness-by-witness analysis to determine whether the invocation of the privilege by a current or former employee of TO properly gives rise to an adverse inference.

### III. The Court Should Not Defer Ruling Until After All Phases of Trial Are Over

On pages nine and ten of its motion, BP suggests that the Court defer ruling on the application of adverse inferences until all phases of the trial are complete. *See* BP Motion at 9-10. This approach is illogical and inefficient. This Court has made clear its intent to try all fault allocation issues in Phase I of the trial, and the parties and the Court have undergone enormous efforts to prepare for the February 27th trial. The existence, nature, and extent of any adverse inference relating to liability is highly relevant to the Phase I allocation issues. The Court's Phase I adverse inference rulings will provide much insight into the Court's allocation analysis and will assist the parties in developing trial plans and strategies. Such rulings will also allow the parties to carefully analyze the risks going forward. Accordingly, this Court should not defer ruling on these issues until after all phases of the trial are over.

Respectfully submitted,

*Donald E. Godwin*

Donald E. Godwin