UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | : : : | MDL NO. 2179 |
| | : | SECTION J |
| THIS DOCUMENT RELATES TO: | : : | JUDGE BARBIER |
| 2:10-CV-02771 | : : | MAGISTRATE JUDGE SHUSHAN |

**UNITED STATES' RESPONSE TO
BP'S MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE TO
EXCLUDE PHASE II EVIDENCE FROM PHASE I OF TRIAL [DOC. # 5109]**

INTRODUCTION

BP has filed a motion to exclude from the Phase I trial "evidence related to a party's preparations for and ability to respond to a spill." [Doc. 5109 at 5]. BP's motion should be denied because it is overbroad and seeks exclusion of evidence that is relevant to the Phase I trial issues.

As explained below, BP boldly asserts that the Court has established a "bright line" rule based on subject matter [Doc. 5109 at 2], essentially arguing that if an issue has relevance to, or is primarily the subject of, Phase II, then it is *ipso facto* excluded from Phase I. BP nevertheless wholly ignores the Court's ruling and clarification, wherein the Court *expressly* acknowledged the possibility that evidence may be relevant to more than one phase of trial. Quoting the Court, "there may be circumstances in which it is appropriate to present evidence in one phase that is

relevant to another phase – such as, but not limited to, where the evidence is relevant to more than one phase or where efficiency is best served by permitting evidence to be admitted in more than one phase." [Doc. 4083 at 4]. As we explain below, there will be instances, particularly in relation to live witnesses and experts, where such overlap exists. BP's motion is a blanket attempt to *a fortiori* preclude testimony before it is even heard – evidence which will be demonstrated at trial to be fundamental to Phase I issues and liability and, not least, gross negligence and willful misconduct stemming from actions intrinsically within both the temporal and subject matter scope of Phase I.

## DISCUSSION

On September 21, 2011, this court ruled that Phase I of the trial will address "issues arising out of the conduct of various parties, third parties, and non-parties allegedly relevant to the loss of well control at the Macondo Well, the ensuing fire and explosion on the MODU DEEPWATER HORIZON on April 20, 2010, and the sinking of the MODU DEEPWATER HORIZON on April 22, 2010, and the initiation of the release of oil from the Macondo Well or DEEPWATER HORIZON during those time periods (collectively, the "Incident") [Doc. 4083 at 2]. Phase I includes issues asserted in or relevant to counterclaims, cross-claims, third-party claims, and/or comparative fault defenses as appropriate. *Id.* Phase II of the trial picks up where Phase I left off, addressing source control and quantification of discharge issues. *Id.* As defined by the Court, "Source control" issues pertain to the conduct of various parties, third parties, and non-parties regarding stopping the release of hydrocarbons stemming from the Incident from April 22, 2010 through approximately September 19, 2010, and "quantification of discharge" issues pertain to the amount of oil actually released into the Gulf of Mexico as a result of the

Incident from the time when these releases began until the Macondo Well was capped on approximately July 15, 2010 and then permanently cemented shut on approximately September 19, 2010.  *Id.*

On January 9, BP filed a motion in limine seeking the exclusion of Phase II evidence from Phase I of the trial [Doc. 5109-1].  While the caption of the motion indicates that BP is seeking a very broad exclusion of evidence, BP's arguments relate only to oil spill preparedness.  In particular, BP seeks exclusion of evidence related to preparations for and ability to respond to a spill during Phase I of the trial, arguing that presentation of such evidence will be inconsistent with the Court's "bright line" rule based on subject matter [Doc. 5109 at 2].

BP, however, is wrong about the existence of a subject matter "bright line" and ignores a subsequent clarification by the Court.  The Court acknowledged the possibility that evidence may be relevant to more than one phase of trial: "there may be circumstances in which it is appropriate to present evidence in one phase that is relevant to another phase – such as, but not limited to, where the evidence is relevant to more than one phase or where efficiency is best served by permitting evidence to be admitted in more than one phase."  [Doc. 4083 at 4].  Evidence regarding oil spill preparedness is precisely this type of evidence – it is relevant to both the parties' source control efforts *and* the plaintiffs' allegations of gross negligence and willful misconduct.

Specifically, BP's use of the phrase "oil spill preparedness" is ambiguous and overly broad - the term could include issues which are clearly encompassed within Phase I of the trial, including - but not limited to - the selection, maintenance and condition of the Blowout Preventer ("BOP") aboard the DEEPWATER HORIZON.  Even BP cannot argue that the failure

of the BOP, which was clearly fundamental to oil spill preparedness, is outside the scope of Phase I.  Because of the overbreadth and ambiguity of oil spill preparedness, a blanket ruling prohibiting the introduction of such evidence would not be in the interest of justice or judicial efficiency.  Furthermore, BP's arguments of prejudice can only be addressed in the context of specific evidentiary proffers, rather than in the broad context of BP's motion in limine.  Accordingly, the United States respectfully suggests that rulings on the admissibility of oil spill preparedness evidence during Phase I of the trial should be made based on the evidence proffered and the arguments of the parties regarding the relevance of that evidence.

BP also argues that the PSC and the United States have failed to link the inclusion of oil spill preparedness evidence to Phase I trial issues, other than generally expressing the view that such evidence is relevant to gross negligence or willful misconduct [Doc. 5109 at 4].  While this opposition is not the forum for a comprehensive listing of oil spill preparedness evidence that may be relevant to more than one phase of trial, the United States believes an example of such evidence may be helpful.

As the Court is aware, the United States has sued BP pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.*, and the Oil Pollution Act ("OPA"), 33 U.S.C. § 2701, *et seq.*  BP faces strict liability under OPA and the CWA.  33 U.S.C. § 2702(a) (responsible party strictly liable for removal costs and damages); 33 U.S.C. § 1321(b)(3) (prohibiting the discharge of harmful quantities of oil or hazardous substances into or upon the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone, or in connection with activities under Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331 *et seq*. or the Deepwater

Port Act of 1974, 33 U.S.C. § 1501 *et seq.*, or which may affect natural resources belonging to, appertaining to, or under the exclusive management authority of the United States); *United States v. Coastal States Crude Gathering Co.*, 643 F.2d 1125, 1127 (5th Cir. 1981) ("Section 1321(b)(6) provides no defense to the assessment of the civil penalty; indeed it establishes an absolute liability standard which obviates the need for a finding of fault"); *Klatt v. United States*, 965 F.2d 743, 744 (9th Cir. 1992) ("[33 U.S.C.] Section 1321 [Section 311] prohibits discharge of oil into navigable waters, and subjects the person in charge of any vessel from which oil is discharged to civil penalties on the basis of strict liability."); *Stoddard v. Western Carolina Regional Sewer Authority*, 784 F.2d 1200, 1208 (4th Cir. 1986) ("Liability under the Clean Water Act is a form of strict liability."); *United States v. Earth Sciences, Inc.*, 599 F.2d 368, 374 (10th Cir. 1979) ("The regulatory provisions of the [Clean Water Act] were written without regard to intentionality, however, making the person responsible for the discharge of any pollutant strictly liable."). While the United States does not have to prove BP's negligence in order to recover under OPA and the CWA, questions regarding BP's gross negligence and willful misconduct will have a significant impact on the penalties available under the CWA.[1] *See* 33 U.S.C. § 1321(b)(7) (imposing a penalty of up to $4,300 per barrel discharged based on the gross negligence or willful misconduct of the defendant).[2]

    As danger associated with an endeavor increases, an actor is required to exercise caution commensurate with the increased danger. Keaton, *Prosser and Keaton on the Law of Torts*, §

---

[1] Such evidence is also relevant to the issue of punitive damages, which are available under general maritime law, *In re Oil spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, 2011 WL 3805746 *14 (E.D. La. Aug. 26, 2011), and are sought by the PSC.

[2] Adjusted for inflation in accordance with 31 U.S.C. § 3701 and 40 C.F.R. 19.4 (Table 1).

34, at 208-09 (5th ed. 1984).  *See also In re Complaint of Signal International, LLC*, 579 F.3d 478, 491 (5th Cir. 2009) ("duty is measured by the scope of the risk that the negligent conduct foreseeably entails").  One court has noted the heightened duty of care that arises in circumstances of increased risk, and has described what constitutes gross negligence in that context:

> Negligence is a failure to exercise the degree of care which a person of ordinary caution and prudence would exercise under the circumstances.  *A greater degree of care is required when the circumstances present a greater apparent risk.*  Negligence is 'gross' when there is an extreme departure from the care required under the circumstances or a failure to exercise even slight care.

*Water Quality Insurance Syndicate v. United States ("WQIS 2009")*, 632 F. Supp. 2d 108, 112 (D. Mass. 2009) (emphasis added), *citing Kuroshima Shipping S.A. Act of God Defense and Limit of Liab. Analysis*, 2003 AMC 1681, 1693 (2003).  Above and beyond gross negligence, willful misconduct may be established by showing a combination of factors that, taken together, indicate a reckless disregard for the consequences.  *Water Quality Ins. Syndicate v. United States ("WQIS 2007")*, 522 F. Supp. 2d 220, 228-29 (D. D.C. 2007), *citing Tug Ocean Prince v. United States*, 584 F.2d 1151, 1164 (2d Cir. 1978).  As the Court noted in *WQIS 2007*, a determination of willful misconduct can be based on an "accumulation of acts," or a "chain of circumstances which were a contributing cause even though not the immediate or proximate cause of the casualty."  *WQIS 2007*, 522 F. Supp. 2d at 230.

In this case, evidence of BP's gross negligence and willful misconduct can be found in corporate communications pre-dating the Macondo blowout by almost ten years.  One e-mail establishes that, as of November 2001, BP knew that ROVs would not be capable of closing BOP shear rams if a well was flowing at a rate of 100,000 to 300,000 barrels a day.  This is

documented in a manner that could not be more clear:

> Question:
> Can we close the shear rams with ROV over-ride without further damage to the BOP at 100, 200, & 300 BPD flow rate
>
> Answer:
> No. Closing the shear rams at any of the above flow rates will probably cause them to wash out.

[Ex. 4423, attached.]

BP could argue that this document relates solely to oil spill preparedness and is therefore irrelevant to Phase I. While it is true that the evidence relates to oil spill preparedness, it also relates to BP's gross negligence and willful misconduct. In particular, it shows that BP knew that ROV intervention would not be effective in closing the shear rams at flow rates exceeding 100,000 barrels a day. This means that BP knew that it would have to rely on other means of closing the shear rams (such as EDS, AMF, autoshear) in the event a well was flowing at high rates and had to be shut in. Given the criticality of the BOP as a well control device and given the consequences of a loss of well control (as horrendously demonstrated in this case), BP had a heightened duty to ensure that the BOP deployed on the Macondo Well was <u>fully functional</u>. BP utterly failed to do so, apparently relying on Transocean to perform this task. This evidence can properly considered as part of the chain of circumstances that were a contributing cause of the Macondo blowout, indicating a reckless disregard for the catastrophic consequences of a loss of well control. *WQIS 2007*, 522 F. Supp. 2d at 230. As this example shows, evidence that is relevant to oil spill preparedness can clearly also be relevant to the gross negligence and willful misconduct issues that will be tried in Phase I.

CONCLUSION

For the foregoing reasons, the United States respectfully request that the Court deny BP's motion in limine to exclude evidence of oil spill preparedness in Phase I of the trial.

Dated: January 17, 2012.

                                                              Respectfully submitted,

| | |
|---|---|
| IGNACIA S. MORENO | TONY WEST |
| Assistant Attorney General | Assistant Attorney General |
| Environment & Natural Resources Division | Civil Division |
| | |
| JAMES NICOLL | PETER F. FROST |
| Senior Counsel | Director, Torts Branch, Civil Division |
| NANCY FLICKINGER | Aviation & Admiralty Litigation |
| Senior Attorney | STEPHEN G. FLYNN |
| SARAH HIMMELHOCH | Assistant Director |
| Senior Attorney | MICHELLE T. DELEMARRE |
| DEANNA CHANG | SHARON K. SHUTLER |
| SCOTT CERNICH | JILL DAHLMANN ROSA |
| A. NATHANIEL CHAKERES | JESSICA SULLIVAN |
| JUDY HARVEY | JESSICA L. McCLELLAN |
| MATT LEOPOLD | MALINDA LAWRENCE |
| JEFFREY PRIETO | DAVID J. PFEFFER |
| GORDON YOUNG | ROBIN HANGER |
| ABIGAIL ANDRE | LAURA MAYBERRY |
| Trial Attorneys | BRIENA STRIPPOLI |
| | Trial Attorneys |
| /s/ Steven O'Rourke | U.S. Department of Justice |
| STEVEN O'ROURKE | Torts Branch, Civil Division |
| Senior Attorney | PO Box 14271 |
| U.S. Department of Justice | Washington, DC 20044 |
| Environmental Enforcement Section | (202) 616-4100 |
| PO Box 7611 | (202) 616-4002 fax |
| Washington, DC 20044 | |
| (202) 514-2779 | /s/ R. Michael Underhill |
| steve.o'rourke@usdoj.gov | R. MICHAEL UNDERHILL, T.A. |
| | Attorney in Charge, West Coast Office |
| | Torts Branch, Civil Division |
| | 7-5395 Federal Bldg., Box 36028 |
| | 450 Golden Gate Ave. |

San Francisco, CA 94102-3463<br>
(415) 436-6648<br>
(415) 436-6632 fax<br>
mike.underhill@usdoj.gov

JAMES LETTEN
United States Attorney

SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
Hale Boggs Federal Building
500 Poydras St., Suite B-210
New Orleans, LA 70130

Attorneys for the UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of January, 2012.

/s/ Jill Dahlmann Rosa
U.S. Department of Justice