UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL No. 2179 |
| "DEEPWATER HORIZON" IN THE GULF | : | |
| OF MEXICO, ON APRIL 20, 2010 | : | SECTION J |
| | : | |
| THIS DOCUMENT RELATES TO: | : | JUDGE BARBIER |
| | : | |
| 2:10-CV-02771 | : | MAGISTRATE JUDGE SHUSHAN |
| | : | |

...................................................................................................................................................

**UNITED STATES' RESPONSE TO BP'S MOTION IN LIMINE TO
EXCLUDE PRIVILEGED COMMUNICATIONS RELATING TO
THE SCOPE OF BP'S INTERNAL INVESTIGATION [DOC. # 5117]**

# Exhibit A

```
Redacted Version
 of Exhibit A, Doc. 5240
```

**1**

UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL       )    MDL NO. 2179
BY THE OIL RIG           )
"DEEPWATER HORIZON" IN  )    SECTION "J"
THE GULF OF MEXICO, ON  )
APRIL 20, 2010          )    JUDGE BARBIER
                        )    MAG. JUDGE SHUSHAN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

VOLUME 1
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Deposition of Sir William Castell, taken at
Kirkland & Ellis International, 30 St. Mary Axe,
22nd Floor, London EC3A 8AF, England, United Kingdom,
on the 22nd of June, 2011.

**3**

```
 1   Mr. James J. Neath
     Associate General Counsel
 2   BP Legal
     BP AMERICA INC.
 3   501 Westlake Park Boulevard
     Houston, Texas  77079
 4
     Mr. John Gilbert
 5   BP PLC
     20 Canada Square
 6   London E14 5NJ
     United Kingdom
 7
 8   APPEARING FOR SIR WILLIAM CASTELL:
     Mr. Walter Stuart
 9   Mr. Geoff Nicholas
     FRESHFIELDS BRUCKHAUS DERINGER
10   65 Fleet Street
     London EC4Y 1HS
11   Great Britain
     United Kingdom
12
     Mr. Robert J. McCallum
13   FRESHFIELDS BRUCKHAUS DERINGER
     520 Madison Avenue, Level 34
14   New York, New York  10022
15
     APPEARING FOR TRANSOCEAN:
16   Mr. Michael A. Carvin
     JONES DAY
17   51 Louisiana Avenue, N.W.
     Washington, D.C.  20001-2133
18
     Mr. Sean O'Brien
19   SUTHERLAND ASBILL & BRENNAN
     1275 Pennsylvania Avenue, N.W.
20   Washington, D.C.  20004
21
     APPEARING FOR ANADARKO PETROLEUM COMPANY:
22   Ms. Deborah D. Kuchler
     Mr. Robert E. Guidry
23   KUCHLER POLK SCHELL WEINER & RICHESON
     1615 Poydras Street, Suite 1300
24   New Orleans, Louisiana 70112
25
```

**2**

```
 1   A P P E A R A N C E S
 2
 3
 4   APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
     Mr. Robert T. Cunningham
 5   CUNNINGHAM BOUNDS, LLC
     1601 Dauphin Street
 6   Mobile, Alabama  36604
 7
     APPEARING FOR THE DERIVATIVE PLAINTIFFS, MDL 2185
 8   SECURITIES PLAINTIFFS SUBCLASS:
     Mr. Bryan M. Payne
 9   COTCHETT, PITRE & MCCARTHY
     San Francisco Airport Office Center
10   840 Malcolm Road, Suite 200
     Burlingame, California  94010
11
12   APPEARING FOR MDL PLAINTIFFS:
     Mr. J. Christopher Zainey, Jr.
13   WILLIAMS LAW GROUP, LLC
     909 Poydras Street, Suite 1650
14   New Orleans, Louisiana 70112
     Maison Grand Caillou
15   435 Corporate Drive, Suite 101
     Houma, Louisiana 70360
16
17   APPEARING FOR BP, INC.:
     Mr. Michael Brock
18   Ms. Kimberly Branscome
     COVINGTON & BURLING
19   1201 Pennsylvania Avenue, Northwest
     Washington, D.C.  20004-2401
20
     Mr. Daryl A. Libow
21   SULLIVAN & CROMWELL
     1701 Pennsylvania Avenue, N.W.
22   Washington, D.C.  20006-5805
23
24
25
```

**4**

```
 1   APPEARING FOR CAMERON INTERNATIONAL CORPORATION:
     Mr. Thomas Ganucheau
 2   BECK, REDDEN & SECREST
     One Houston Center
 3   1221 McKinney Street, Suite 4500
     Houston, Texas  77010-2010
 4
 5   APPEARING FOR MOEX:
     Ms. Gindi Eckel Vincent
 6   PILLSBURY WINTHROP SHAW PITTMAN
     2 Houston Center
 7   909 Fannin, Suite 2000
     Houston, Texas  77010-1018
 8
 9   APPEARING FOR DRIL-QUIP, INC.:
     Mr. C. Dennis Barrow, Jr.
10   WARE, JACKSON, LEE & CHAMBERS
     America Tower, 42nd Floor
11   2929 Allen Parkway
     Houston, Texas  77019-7101
12
13   APPEARING FOR M-I SWACO:
     Mr. Steven A. Luxton
14   MORGAN, LEWIS & BOCKIUS, LLP
     1111 Pennsylvania Avenue, NW
15   Washington, D.C.  20004
16
17   APPEARING FOR HALLIBURTON:
     Mr. Donald E. Godwin
     Ms. Jenny L. Martinez
18   Mr. R. Alan York
     GODWIN RONQUILLO
19   1201 Elm Street, Suite 1700
     Dallas, Texas 75270-2041
20
21   APPEARING FOR THE UNITED STATES:
     Mr. R. Michael Underhill
22   Attorney in Charge
     West Coast Office
23   U.S. DEPARTMENT OF JUSTICE
     TORT BRANCH, CIVIL DIVISION
24   450 Golden Gate Avenue
     7th Floor, Room 5395
25   San Francisco, California  94102-3463
```

1 (Pages 1 to 4)

**PURSUANT TO CONFIDENTIALITY ORDER**



**233**

**235**

13   Q.  Thank you very much for the clarification.
14      Who's Tony Burgmans?
15   A.  Tony Burgmans is an Independent Director of
16  BP.
17   Q.  Based in the U.K. or the States?
18   A.  He's Dutch.  He was based in Holland.
19

**234**

**236**

9   Q.  And I take it from your prior testimony that
10  as we sit here today, a year and two days after you
11  drafted this Memo to file, that there is still no
12  investigation of BP's internal safety culture as it
13  relates to the DEEPWATER HORIZON?
14      MR. BROCK: Object to form.
15   A.  I believe I stated, sir, I can't affirm either
16  way what the position is.  I am not aware of whether
17  the company is continuing with a systemic culture
18  review or that the company is not continuing with a
19  systemic culture review.  I don't know the answer to
20  that question.
21   Q.  (By Mr. Underhill) Well, you continue to
22  word -- use the word "continuing."  Can you tell me
23  when it began a cultural internal review of its safety
24  culture as it relates to the DEEPWATER HORIZON.  You
25  use the word "continuing," not me.  So I'd like you to

**PURSUANT TO CONFIDENTIALITY ORDER**



501

1      **Q.  (By Mr. Godwin) Did -- let me read it again.**
2    (Discussion off the record.)
3      **Q.  (By Mr. Godwin) Let's just read it again.**
4        MR. BROCK: Just read along.
5        MR. GODWIN: Just stop the response,
6  Walter.
7    (Discussion off the record.)
8        MR. GODWIN: Ask him to just stop --
9        MR. STUART: He's only -- he's only
10  reading from here.
11      **Q.  (By Mr. Godwin) Let me read it again --**
12    A.  Okay, thank you.
13      **Q.  -- so you're with me.**
14    A.  Yeah.
15

502

1
23      **Q.  Okay.  Well, did you ask him why he was not**
24  **going to -- as the Chair of SEEAC, did you ask him,**
25  **"Why, Mr. Bly, if you're independent, why are you not**

503

1  going to investigate the systemic root causes?"
2      **Did you make such inquiry?**
3        MR. BROCK: Object to form.
4    A.  I had debates at a later date within the
5  company, and I recall that the identification of the
6  critical factors at the earliest possible time was
7  where the company was trying to drive, and that's why
8  this was carried out in this way.
9      **Q.  (By Mr. Godwin) Well, you say the company was**
10  **trying to drive it.  You said the Bly Report was**
11  **independent of the company.  Now you're saying now that**
12  **the company was driving the investigation by what was**
13  **going to be investigated?  Is that what you're telling**
14  **us?**
15        MR. STUART: Objection, form.
16        MR. BROCK: Object to form.
17    A.  I believe that the Bly Report was agreed, the
18  conditions of the Bly Report were either agreed with
19  Tony Hayward or another Senior Executive or Senior
20  Director.  And I believe that those -- and from -- it
21  was to be an independent Report in accordance with
22  cert -- certain details.
23    I did inquire as to why this exclusion, and I
24  was advised that to get a -- immediacy of the Report,
25  this was the scope that they felt was appropriate, and

504

1  so that was my advice, sir.
2      **Q.  (By Mr. Godwin) And -- and they --**
3    A.  Not -- not that there was any issue of
4  independence, but the scope had been determined by the
5  company.
6      **Q.  The scope of the Report of the investigation**
7  **was determined by BP, correct?**
8    A.  Correct.
9        MR. BROCK: Object to form.
10      **Q.  (By Mr. Godwin) And Mr. Bly then carried out**
11  **the scope of the company in performing the**
12  **investigation and issuing the Report, correct?**
13    A.  The scope of the report had been agreed by an
14  Executive at the company, either Hayward or another
15  Executive or Director.
16      **Q.  And Mr. Bly simply carried out that scope in**
17  **doing his investigation, correct?**
18        MR. BROCK: Object to form.
19    A.  And he was required to commit to that scope in
20  an independent fashion.
21      **Q.  (By Mr. Godwin) Okay, sir.  So the scope of**
22  **the work was determined by either Mr. Hayward and/or**
23  **another Senior Executive, it was told to Mr. Bly,**
24  **Mr. Bly had to commit that he was going to follow that**
25  **scope, and then he performed his investigation; isn't**

**PURSUANT TO CONFIDENTIALITY ORDER**



505

1  that what you just said?
2  　　　MR. BROCK: Object to form.
3  　A.  That is what I believe I said, sir.
4  　Q.  (By Mr. Godwin) Thank you, sir.
5  　　And aft --
6  　　　MR. UNDERHILL: Could we just -- could we
7  have this portion marked, Mr. Reporter?
8  　　　MR. GODWIN: Yeah, you can mark it
9  yourself, Mike.  There's -- on your deal.  Let me go
10  ahead.
11  　　(Laughter.)
12  　Q.  (By Mr. Godwin) And then after you -- after
13  you -- after you -- after Mr. Bly finished carrying out
14  the scope that had been told to him by either
15  Mr. Hayward or another Senior Executive, in performing
16  the investigation, Mr. Bly thereafter prepared the
17  Report, did he not, sir, or had it prepared by others
18  on his Team?
19  　　　MR. BROCK: Object to form.
20  　A.  I -- I need to correct one factor.  I don't
21  know whether Mr. Bly was instructed as to the scope of
22  the Report, or whether he recommended.  I am certainly
23  aware that there was -- the Minutes record him agreeing
24  the scope of the Report with one of the Senior
25  Executive Directors.

506

1  　Q.  (By Mr. Godwin) Okay, sir.
2  　A.  I don't know whether the scope was specified
3  to him or whether he recommended it.  I have become
4  subsequently aware of the ETP that covers this type of
5  activity.
6  　Q.  Okay.
7  　A.  I was impressed at the time that it was put in
8  hand so quickly.  I later discovered that it was one of
9  the standard principles of the company.  So it became
10  clear to me that I should be -- you know, expect it as
11  against be impressed.
12  　Q.  Right.  What I hear you saying is, and -- and
13  the record will stand for what you've said, but you do
14  believe that Mr. Bly discussed with one or more Senior
15  Executives of BP the scope of the work, and that he and
16  one or more Executives with BP, agreed upon what the
17  scope of the investigation was going to be; is that
18  correct?
19  　　　MR. BROCK: Objection, form.
20  　A.  In accordance, I believe, with the ETP on
21  these types of activities.
22  　Q.  (By Mr. Godwin) He agreed with the BP
23  Executive, Mr. Tony Hayward or another gentleman, what
24  the scope would be, and then he thereafter performed
25  that scope, per the agreement with the BP Executive,

507

1  correct?
2  　　　MR. BROCK: Objection, form.
3  　A.  I believe that to be the case.
4

508

1

36  (Pages 505 to 508)

**PURSUANT TO CONFIDENTIALITY ORDER**