UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf Of Mexico, on April 20, 2010<br><br>This document applies to:<br>*All cases*. | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

TRANSOCEAN'S RESPONSE IN OPPOSITION
TO BP'S "MOTION *IN LIMINE* TO EXCLUDE
NON-FACTUAL WITNESS TESTIMONY"

TO THE HONORABLE JUDGE CARL J. BARBIER:

COME NOW Transocean Offshore Deepwater Drilling, Inc., Transocean Holdings LLC, Transocean Deepwater, Inc. and Triton Asset Leasing GmbH (collectively "Transocean") and file this, their Response in Opposition to BP's "Motion *in Limine* to Exclude Non-Factual Witness Testimony," **Rec. Doc. 5110**. For the reasons below, BP's motion must be denied.

BACKGROUND

BP moves under Rule 701 (and 702) to exclude certain statements made by certain witnesses in their depositions—usually in response to being questioned about BP emails—as impermissible expert opinion testimony by a fact witness. Rule 701 serves to prohibit the introduction of backdoor expert opinion testimony through a layman; Rule 702, referenced in 701, is the codification of the *Daubert*/*Kumho Tire* standards for evaluating the helpfulness and reliability of expert opinion testimony.

The entirety of BP's argument, however, suffers from the fallacy of begging the question: has BP properly characterized the testimony at issue as fact witness expert opinion testimony?,


i.e., does Rule 701 actually apply? Upon closer examination of BP's cited authorities and the evidence at issue in this case, it becomes clear that BP incorrectly *assumes* those initial points (it never attempts to demonstrate them in its motion). As shown below, the witnesses BP objects to in its motion are not offering "opinion" testimony at all, much less expert opinion testimony. Regardless, to the extent their testimony can be considered opinion testimony, it falls safely within what is permitted under Rule 701.

## ARGUMENT

### I. THERE IS NO DANGER OF JURY CONFUSION HERE.

Initially, it must be pointed out that the upcoming trial is to be before the Court, not before a jury. As the courts have long observed:

> The prejudicial impact of erroneously admitted evidence in a bench trial is presumed to be substantially less than it might have been in a jury trial. Moreover, a judge, sitting as a trier of fact, is presumed to have rested his verdict only on the admissible evidence before him and to have disregarded that which is inadmissible.

*United States v. Cardenas*, 9 F.3d 1139, 1156 (5th Cir. 1993) (citations and quotations omitted); *see also, e.g.*, *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 2003 A.M.C. 324, 320 F.3d 1213 (11th Cir. 2003) ("[M]indful of the level of deference with which we evaluate a district court's evidentiary rulings made during a bench trial, we find no basis for determining that the district judge abused his discretion [under Rule 701].").

Except for one, all of the Rule 701 court cases cited by BP are made in the context of a *jury* trial, not an admiralty bench trial. (And the one exception is a bankruptcy decision that only dropped back into the Rule 701 inquiry to determine if the opinion of an expert just disqualified

2

under Rule 702 could still be admitted.)  Unlike BP's cases, however, the danger of a *juror* failing to distinguish between lay witnesses and expert witnesses is simply not at issue.[1]

## II. THE FACT WITNESS TESTIMONY BP OBJECTS TO IS NOT "OPINION TESTIMONY."

The centerpiece of BP's motion is a quote running to several pages from the deposition transcript of Transocean's senior toolpusher, Randy Ezell (though BP lists a few other witnesses in bullet points later).  BP summarizes his testimony in one sentence: Randy Ezell "was led by the nose through internal BP email exchanges he had never seen before and then asked to opine on various aspects of BP's conduct.  The transcript speaks for itself".  **Rec. Doc. 5110-1, at 4.** BP's memo calls this the "favorite technique" for violating Rule 701 "in this case." *Id.* **at 3.**

But, upon review, Ezell's (and the others'—see the footnote on the next page) testimony is not what BP insinuates.  For example, the overwhelming majority of Ezell's responses as quoted in BP's motion are yes and no responses to "Did you know?"-type questions.  Nowhere does Ezell expatiate at length upon what caused the blowout, who was at fault, what he thinks of BP, what he thought of BP personnel, or anything of that nature.  This is another area in which the authorities cited by BP actually serve to highlight that what BP is moving to exclude as impermissible lay opinion testimony is not really opinion testimony at all.  Just quoting BP's parenthetical summaries of what is impermissible, we find witnesses testifying about "general banking industry practices," "toxic chemicals and other substances" outside the witness's

---

[1] The Court will hear from a great number of experts at the upcoming trial, many of whom may opine as to the emails BP complains of in its motion.  Even assuming—contrary to the legal argument below—that the instant motion is deemed valid, the Court should still deny the motion so as to avoid the tediousness of fighting over each and every statement BP lists (there are hundreds) as being violative of Rule 701.  Because this is a bench trial, the Court could simply admit the evidence BP moves to exclude.  This is possible because the Court's judgment is presumed to rest on the *experts'* opinions and impression of those emails, and not what BP alleges the Court will do in its motion.  *Cf. In re Omni Energy Servs.*, No. 01-3246, 2002 WL 34381143, at *1 (E.D. La. Sept. 5, 2002) (Barbier, J.) (denying a motion *in limine*, observing "that this matter is to be tried to the bench and the Court will not allow [the expert witness] to testify on matters beyond his area of expertise and what is helpful to the fact-finder, and will disregard any legal conclusions to which he testifies").

specialized training and experience, "purporting to explain procurement records," opinions "regarding the cause of the accident in this case," or the above-mentioned disqualified expert opining on patent valuation in the bankruptcy context. *See* **Rec. Doc. 5110-1, at 2–3.**

That is not what is going on here. No one is attempting to circumvent Rule 702 by a few lay witness statements when this trial will feature *dozens* of Rule 702 experts. BP's own motion, quoting the Rule 701 Advisory Committee notes, says that "the Rule's drafters were specifically attuned to quashing 'the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.'" *Id.* **at 2.** All the parties have been able to admit the testimony of plenty of Rule 702 experts the normal way; using the fact witnesses to get in opinion testimony is not necessary.

Because he is the example given by BP of the "favorite technique" for admitting expert opinions through a lay witness, Randy Ezell's testimony can demonstrate further that he is not giving opinion testimony at all (much less 702 opinion testimony). Ezell was on the rig as senior toolpusher on April 20, 2010, and in that position was generally responsible for drilling. The men responsible for drilling operated on certain assumptions, performing their roles in a certain way, on the assumption that BP was performing certain roles in a certain way. He testified at length as to his role in operations on the date of the blowout. When, in his deposition, Ezell is shown emails that undermine or contradict the assumptions he and others worked under, his Yes-or-No-type responses, or other brief responses, are not *opinions*; they answer the question of what Randy Ezell knew and understood; they clarify and reinforce his other testimony.[2]

---

[2] BP points out very few instances on page 9 of its memo. There is a reason none of these is quoted at length like the Randy Ezell testimony was. Daun Winslow and Jonathan Keeton of Transocean gave similar testimony to Randy Ezell, very briefly answering questions about the emails, but without offering anything more than their immediate impressions or Yes-or-No responses to the PSC attorney's questioning; BP objects as to a few statements by Keeton not related to the emails, but none of these comes anywhere near the ambit of Rule 701 as an opinion. If BP means to propose that Keeton's statements imply a legal conclusion, then that is BP's interpretation; it is clear

4

Regardless, it will be seen that—if Ezell's and the others' testimony can be called opinion testimony at all—this testimony fits perfectly under what is acceptable under Rule 701.

### III. EVEN IF THE FACT WITNESS TESTIMONY BP OBJECTS TO CAN BE CONSIDERED "OPINION TESTIMONY," IT FALLS SAFELY WITHIN WHAT RULE 701 ALLOWS AS LAY OPINION TESTIMONY.

The testimony BP refers to is not opinion testimony at all. But, assuming it *is*, the overall "helpfulness" standard of Rule 701 is plainly met here. This is, generally speaking, the Rule that permits a lay witness to say, "Well, he looked like he was really mad," and not first have to say "Well, his face was red, his fists were balled up, he was cursing and he was stomping all over the house." Rule 701 provides in full:

> **Rule 701. Opinion Testimony by Lay Witnesses**
>
> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a)    rationally based on the witness's perception;
> (b)    helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c)    not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.[3]

The first element, (a), is plainly met here. Courts—even in criminal prosecutions—routinely permit lay opinion testimony when the witness's opinion is based on a combination of his personal observations and background observations and knowledge. *See, e.g.*, *United States v. Lizardo*, 445 F.3d 73, 83–84 (1st Cir. 2006) (permitting a co-conspirator to testify as to his interpretation of transcripts of coded and ambiguous conversations he was not privy to). Safe

---

that Keeton is using generic terms that have a lay connotation. This is not a jury trial, and the Court is capable of viewing the evidence properly. Additionally, BP objects to three MMS employees' brief answers that, BP alleges, "render[] legal opinions." **Rec. Doc. 5110-1, at 9.** David Troquet briefly answered Yes-or-No in response to questioning regarding a BP email; Frank Patton answered similarly about another BP email chain; and Michael Saucier testified that another email discussion would have been of interest to him. None of these statements can possibly be deemed an opinion, much less an impermissible one; and if there is any hint of a "legal opinion" in these witnesses' statements, as BP suggests, the Court is better than a juror at evaluating the weight to be given to it.

[3] Amended in 2000, Rule 701 used to apply more broadly to lay "testimony in the form of opinions *or inferences*," and not just "opinion" testimony like the current rule.

5

within the extreme boundary of what is permissible, in the case of the BP emails, any layperson could plainly see that the emails reflect BP officials disagreeing over operations and disagreeing as to what is a safe course of action. No expertise is required.

    The second element, (b), is also satisfied. For example, as to Randy Ezell, his other testimony concerning the rig and his drilling operations will be better understood in light of his testimony discussing the BP emails. What Ezell and others knew and understood, and when, are crucial issues in this case.

    The third element, (c)—added in 2000—is also satisfied. BP does not directly attack this point, but it is clear that, for example, Randy Ezell does not venture beyond what any layman reading those emails could see. The mere fact that technical issues may be discussed by a Rule 701 witness is not a bright-line requirement that Rule 702 applies. Rather, courts routinely admit lay opinion testimony that is rationally based on that witness's knowledge and experience within a field. *See, e.g.*, *Soden v. Freightliner Corp.*, 714 F.2d 498, 510–512 (5th Cir. 1983) (a lay witness could opine as to the fact that step brackets on fuel tanks has caused post-accident fires and were obviously dangerous, when he had supervised Freightliner repairs for 18 years, observed that the shape of step brackets could cause punctures in fuel tanks on those trucks, and had restyled brackets to avoid the problem). This remains the case even after the 2000 amendment to Rule 701. The Advisory Committee's notes to that amendment provide that lay testimony must "result[] from a process of reasoning familiar in everyday life," as opposed to a process "which can be mastered only by specialists in the field." *See also, e.g.*, *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3rd Cir. 2009) ("This does not mean that an expert is always necessary whenever the testimony is of a specialized or technical nature. When a lay witness has particularized knowledge by virtue of her experience, she may testify—even if the

6

subject matter is specialized or technical—because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702."); *United States v. LeCroy*, 441 F.3d 914, 927 (11th Cir. 2006) ("Just because Agent Branyon's position and experience [as an evidence-gathering crime-scene specialist] *could* have qualified him for expert witness status does not mean that any testimony he gives at trial is considered 'expert testimony.'"). Thus, to take BP's prime example, Randy Ezell's brief responses to questions about the BP emails—which touched upon the job Randy Ezell was doing on the rig—do not fall under Rule 702, and are thus permissible under Rule 701. As noted above, any layperson could plainly see that the emails reflect BP officials disagreeing over operations and disagreeing as to what is a safe course of action. Though Randy Ezell *has* specialized expertise, no expertise is required to answer questions about those emails. The same applies to the other witnesses not actually quoted by BP.

In sum—even though Rule 701 does not apply because the testimony BP moves to exclude is not opinion testimony—the testimony is admissible under Rule 701 because it is based on the witnesses' rational perception, it helps in understanding their other testimony and it does not fall under Rule 702.

## CONCLUSION

For all the reasons above, BP's motion should be denied.

Respectfully submitted, this 17th day of January, 2012,

By: /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100

By: /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com
-and-

Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,

By:     /s/ Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Richard J. Hymel (Louisiana, No. 20230)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, rjh@preisroy.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

...

*Counsel for Triton Asset Leasing GmbH., Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2012, I electronically filed the foregoing with the Court's CM/ECF system and service on all counsel by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

/s/  Kerry J. Miller