UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |
| …………………………………………………... | : | |

**BP'S OPPOSITION TO HALLIBURTON'S MOTION TO EXCLUDE TESTIMONY, DOCUMENTS, AND OTHER EVIDENCE REFLECTING ANY EXPERT OPINION(S) OF FRED SABINS OR CSI TECHNOLOGIES, INC. REGARDING THE MACONDO WELL**

Halliburton's motion seeks to expand the scope of the Court's December 8, 2011 Order disqualifying Michal Viator, Fred Sabins, and CSI Technologies, Inc. from serving as ***an expert witness*** on behalf of BP, Rec. Doc. 4838, to also preclude Sabins (and anyone else at CSI) from testifying as ***a fact witness*** regarding events that occurred and documents that were generated prior to CSI's hiring of Viator on April 14, 2011 that led to the Disqualification Order.  Not content with this over-reach, Halliburton also seeks to exclude from evidence any document that contains any work performed by Sabins or CSI prior to the same date, including work used by the BP Incident Investigation Team ("IIT") and included in the IIT Report issued in September 2010.  Just as with its recently denied "request for clarification" that sought to preclude BP counsel from working with BP's new expert Ronald Crook, Halliburton reads too much into the Court's Disqualification Order.  None of Sabins's work (nor documents that reflect that work) prior to his retention as a litigation consultant can possibly be tainted by the hiring of Viator on April 14, 2011.  The Court should deny Halliburton's blatant attempt to exploit the Court's prior Order disqualifying Sabins as an expert witness because of work done after CSI hired Viator.

**I.      The Court's Disqualification Order Should Not Be Expanded to Preclude Pre-Viator Fact Testimony by Sabins.**

Neither the text of the Court's Disqualification Order nor the concerns for protecting Halliburton's confidential information that motivated it provide any justification for precluding any testimony that Sabins may be able to offer as a fact witness regarding events that took place and documents that were generated prior to his retention as a litigation consultant and prior to the hiring of Viator. The Order is clear: "[T]he *sole cause* of this motion to disqualify is Sabins' decision to hire Viator. *Once he was hired*, Sabins did not erect a sufficient screen to prevent Viator from having any contact whatsoever concerning CSI's work for BP." Rec. Doc. 4838, at 11 (emphasis added). Halliburton did not argue, nor did the Court rule, that the disqualification was based on anything that occurred or was generated *prior to* April 14, 2011, and Halliburton's current motion to expand the scope of the Disqualification Order gives no cogent explanation as to why the disqualification should have any *retroactive* effect. So long as Sabins's testimony is limited to his non-expert work that occurred prior to April 14, 2011, there is simply no issue. There is no evidence that Viator or anyone else traveled backwards in time to taint Sabin's or CSI's prior work for BP, including work done for the September 2010 IIT Report.

Courts routinely allow experts whose opinion testimony has been excluded for one reason or another to testify as fact witnesses where they have relevant knowledge other than that generated in their capacity as expert witnesses. *See, e.g.*, *Francois v. Colonial Freight Sys., Inc.*, 2007 WL 4564866, at *9 (S.D. Miss. Dec. 21, 2007) (holding that witness could testify as to factual issues even if excluded from offering expert opinion); *Mitchell v. City of Gulfport*, 2005 WL 3116071, at *1 (S.D. Miss. Nov. 18, 2005) (same); *Faia v. Sonny Scaffolds, Inc.*, 2002 WL 34443539, at *1 (E.D. La. Dec. 30, 2002) (same); *see also Eagle Helicopter, AG v. McTurbine, Inc.*, 2011 WL 121703, *1 (S.D. Tex. Jan. 12, 2011) (witnesses allowed to testify as to facts even

2

where restricted based on objections to potential expert testimony).  Particularly here, where the *sole* basis for the exclusion of Sabin's expert opinion was the hiring of Viator — as opposed to some substantive infirmity in Sabins's expert work — this established practice makes perfect sense.  Any other result would unfairly preclude relevant fact testimony from being offered as evidence for no other apparent reason than to punish BP and Sabins for the issues with his expert work.

**II.     The Court's Disqualification Order Should Not Be Expanded to Preclude the Introduction of Documents Reflecting Pre-Viator Work by Sabins.**

There is similarly no basis to adopt Halliburton's suggestion that any documents generated prior to April 14, 2011 that reflect any work by Sabins or CSI be precluded from evidence.  Just as with Sabins's testimony, nothing in the Court's Disqualification Order precluding Sabins and CSI from acting as *experts* on behalf of BP should affect the admissibility of documents, such as the material used by the IIT and included in the IIT Report, that were created many months before, and that are unrelated to, Sabins's retention as a litigation consultant or any of the issues that gave rise to Sabin's disqualification. Nothing in the Disqualification Order foreclosing Sabins from acting as an *expert* prohibits Sabins from testifying, for example, as a *fact witness* with regard to laying the foundation for the creation of Appendix K to the IIT Report in September 2010 or other related materials.  These documents were created before Sabins was even retained to serve as an expert in this litigation, and many months before CSI ever hired Viator.

Tellingly, Halliburton *does not* argue that these documents should be excluded from evidence because there is some link between them and Sabins's expert work that has been excluded. (This confirms, by the way, that there is no connection between Sabins's earlier and later work in terms of the basis for the disqualification.)   Instead, Halliburton argues that

3

Appendix K to the IIT Report is, in effect, an expert report by Sabins and since Sabins cannot testify and be cross-examined on it, it should not come into evidence. This argument is flawed in several respects.

First, the September 2010 IIT Report is not an expert report. It was not submitted as such, and no expert is sponsoring it. Indeed, BP has never suggested that the IIT Report is an expert report, or even that Appendix K reflects Sabins's expert opinion. To the contrary, BP has maintained that "[t]he fact that the [IIT Report] was prepared by experienced, capable personnel, often in reliance on the work and analysis of field specialists, does not render it an expert report subject to the application of Rule 702." Rec. Doc. 4869 at 7. And it has consistently taken the position that the IIT Report "is admissible because it is a business record of BP, its reliability can be shown through extensive information, produced to all parties, establishing its pedigree, and it is independently relevant and probative of how BP responded to the Deepwater Horizon incident." *Id.* at 1.

Second, even if Sabins were not able to testify as to matter of fact with regard to pre-April 14, 2011 documents, that would not mean that documents cannot be introduced as evidence. It only means that someone other than Sabins would need to provide the requisite foundation. As explained in BP's other filings, courts in this Circuit have routinely held that companies' post-incident investigation reports — such as the IIT Report — are admissible as business records under Federal Rule of Evidence 803(6). *See* Rec. Doc. 4869 at 2 (collecting cases). Moreover, even if the IIT Report (including Appendix K) were not admissible for the truth of the matter asserted, it would still be admissible as a business record "for such other purposes as providing information about the conduct of the investigation, detailing the personnel involved in the investigation, establishing general BP policies and procedures, describing other

parties' cooperation (or lack thereof) in determining issues of root cause following the incident, and connecting BP's post-incident efforts to the broader safety culture at the Company." *Id.* at 6.

The foundation for the admission into evidence of a document as a business record can be laid by any witness who can authenticate the document's status. "A party who played a role in the creation or compilation of the records is a competent witness" to the lay the foundation for admissibility of a business record. *United States v. Summit Equip. & Supplies, Inc.*, 805 F. Supp. 1422, 1429 (N.D. Ohio 1992) (citations omitted). Indeed, "[a]ny person in a position to attest to the authenticity of certain records is competent to lay the foundation for the admissibility of the records; he need not have been the preparer of the record, nor must he personally attest to the accuracy of the information contained in the records." *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980) (allowing company comptroller to lay foundation for company business records without personal knowledge); *accord New Orleans Cold Storage & Warehouse Co. v. NLRB*, 201 F.3d 592, 601 n.9 (5th Cir. 2000). "Rule 803(6) does not require that the records be prepared by the business which has custody of them." *Int'l Marine LLC v. Delta Towing LLC*, 2011 WL 890680, at *4 (E.D. La. Mar. 11, 2011). "The party seeking to introduce them does not have to present the testimony of the party who kept the record or supervised its preparation. Testimony of the custodian of the record or other qualified witness that the record is authentic and was made and kept in the ordinary course of business will suffice under Rule 803(6)." *Id.* Sabins is not the only person who can provide this information with respect to Appendix K of the IIT Report or other documents.

Third, regardless of whether an appropriate foundation for the admission into evidence of documents that reflect the input of Sabins, including Appendix K of the IIT Report, can be laid by Sabins or anyone else, these documents can be relied upon by other experts. Rule 703 makes

5

it clear that an expert may base his opinion on any evidence "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject," and makes clear that "the facts or data need not be admissible in evidence." Fed. R. Evid. 703. As a leading treatise has explained, "This means that the expert is permitted to learn the facts prior to trial by a variety of means such as personal examination, firsthand investigation, files, ***reports of other specialists***, or ***the reports or comments of professional observers***." Graham C. Lilly, *An Introduction to the Law of Evidence* 561 (West 1996) (emphasis added). The Fifth Circuit has long made clear that the expert need not have personal knowledge of the facts, but can reasonably rely on examinations conducted by other specialists. *See Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1432 (5th Cir. 1989) (expert permitted to testify about basis for opinion in examination reports by other doctors on patients not personally examined by expert witness). That rule applies here to BP's replacement cement expert Mr. Ronald Crook as well as other expert witnesses.

Even if the Court were to consider these documents as "expert" reports by Sabin, they still should not be excluded from consideration. An expert may rely on the report of another expert in forming his own opinion and testify as to that reliance, so long as the expert supplies reason to believe that the basis for his opinion is reliable. *See Legiere & Matherne Apac v. Great Plains Software, Inc.*, 2004 WL 1488597, at *3 (E.D. La. June 30, 2004); *see also Mason v. Safeco Ins. Co.*, 2010 WL 3341582, at *8 (E.D. Mo. Aug. 23, 2010) ("expert may rely on the reliable opinions of another expert in forming his own opinions."); Fed.R.Evid. 702 Advisory Committee Notes to 2000 Amendments ("The term 'data' is intended to encompass the reliable opinions of other experts."). To be sure, one expert cannot, as a wholesale matter and without independent investigation of the matters considered, adopt as his own the opinion of another

expert who does not testify. *See Legiere*, 2004 WL 1488597 at *3. But there is no allegation that any of BP's experts intends to do that here. If Halliburton wishes to challenge the independence or scientific reliability of any given expert's testimony, it will have ample opportunity to do so under Rule 702. There is no basis in law, however, for a categorical exclusion of pre-April 14, 2011 reports produced (even in part) by CSI or Sabins from ordinary consideration by experts under rule 703.

This final point underscores the unwarranted tactical advantage Halliburton seeks by categorically embargoing any discussion of these materials — including the cement testing analysis contained in Exhibit K to the IIT Report — which have already been considered by several experts in this case. Given the Fifth Circuit's admonition that "determination of whether an expert meets the requirement of Fed. R. Evid. 703 must be made on a case-by-case basis," *Peteet*, 868 F.2d at 1432, this blanket exclusion is inappropriate.

The cases Halliburton cites are not to the contrary. *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 409 (6th Cir. 2007), held only that an expert could not testify to the similarity between his conclusion and that of a non-testifying expert in an effort to bolster his credibility. That, however, is a specific objection to a particular use of expert testimony far removed from Halliburton's blunderbuss approach in this case. As for *Bryan v. John Bean Div. of FMC Corp.*, 566 F.2d 541, 547 (5th Cir. 1978), that case held that counsel could not impeach his own witness with the reports of non-testifying experts where these experts were available to testify and their reports in other respects bore no indicia of reliability. The court was careful to limits its holding to the facts before it. *See id*. ("We hold only that, under the circumstances of this case, the conclusions of nontestifying experts were inadmissible …."). *Bryan* thus provides

7

no support for the sweeping order Halliburton seeks in contravention of the general Rule 703 standard allowing experts to rely on, and testify as to their reliance on, hearsay.

*O'Malley v. United States Fidelity and Guaranty Co.*, 776 F.2d 494 (5th Cir. 1985), and *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986 (9th Cir. 2007), are even further removed from the subject of Halliburton's motion. *O'Malley* held only that an expert could not testify regarding another expert's report where he "***did not mention using the report as a basis for formulating his expert opinion.***" 776 F.2d at 500 (emphasis added). *O'Malley* simply enforced the rules for disclosing expert testimony. It did not hold that experts cannot rely on hearsay from other experts. In a similar vein, *Hanford* held that an expert could not be impeached with the reports of other non-testifying experts when the expert had testified that he had not relied on those reports in forming his opinion. *See* 534 F.3d at 1012. *Hanford* did not address whether the reports, or any other hearsay for that matter, would have been appropriate materials for the expert to rely on had he chosen to do so.

## CONCLUSION

For all these reasons, Halliburton's motion should be denied, and neither Sabins nor any CSI witness should be precluded from testifying as to facts, or presenting evidence, related to their work prior to their retention as litigation experts and prior to the hiring of Viator on April 14, 2011.

Dated: January 17, 2012                    Respectfully submitted,

/s / Don K. Haycraft

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration & Production Inc. and BP America Production Company.*

**CERTIFICATE OF SERVICE**

  I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of January, 2012.

                       /s/ Don K. Haycraft__