UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>This Document Relates to: *All Cases*<br><br>(Including No. 10-2771) | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

OPPOSITION TO BP's MOTION TO EXCLUDE EVIDENCE
OF BP EMPLOYEE COMPENSATION

[Redacted Version]

Plaintiffs respectfully respond to BP's MOTION *IN LIMINE* TO PRECLUDE EVIDENCE REGARDING BP COMPENSATION INFORMATION [Doc 5115] as follows:

MAY IT PLEASE THE COURT:

As the Fifth Circuit Court of Appeals has explained,

> When evidence is challenged solely on the ground that it is irrelevant, it is inadmissible only if it fails to meet the definition of Rule 401 - it must be without probative value as to *any* fact of consequence to the determination of the action. If it is relevant as to any issue, it is relevant to the action and is not inadmissible under Rule 402.

*Lubbock Feed Lots, Inc. v. Iowa Beef Processors*, 630 F.2d 250, 267 (5th Cir. 1980) (emphasis in original). The burden on the movant to show that the evidence in question "is *not* relevant to *any* issue in the case." *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 599 (E.D. La. 1993) (emphasis in original). Also, as this Court has recognized, pretrial motions to exclude evidence of the basis of relevance are disfavored.

1

*See Auenson v. Lewis*, 1996 WL 457258, at *1 (E.D. La. Aug. 12, 1996) (explaining that because motions *in limine* are "disfavored," such "evidentiary rulings should be reserved until trial so that questions of foundation, competency, relevancy, and potential prejudice may be resolved in the proper context"). Where relevance is the sole ground for preclusion, a party should be permitted to place the evidence in its proper context during trial. *See Roberts v. Charter Nat'l Life Ins. Co.*, 105 F.R.D. 492, 493 (S.D. Fla. 1985); *United States v. Posner*, 594 F. Supp. 923, 927-28 (S.D. Fla. 1984).

**The Compensation Scheme Under Which BP Employees Were Incentivized to Value Profits Over Safety is Directly Relevant to the Issues of Fault, Gross Fault and Willful Misconduct**

Information concerning BP's compensation scheme goes to the issue of whether BP sought to motivate its employees to produce more and cut costs at the expense of safety; it is therefore relevant to BP's liability for both compensatory and punitive damages.

In *Authement v. Schooner Petroleum Servs.*, 2007 U.S. Dist. LEXIS 66569 (E.D. La. Sept. 7, 2007), a case arising out of a fire on a fixed platform in the Gulf of Mexico, this Court denied a motion *in limine* to exclude evidence that the defendant's employee's decision to restart the well before the fire was motivated by the employee's motivation to earn a bonus and the employer's profit motive. The Court deemed this evidence relevant to the issue of punitive damages. In *Beck v. Koppers, Inc.*, 2006 U.S. Dist. LEXIS 17866 (N.D. Miss. Apr. 3, 2006), the defendant moved *in limine* to exclude all evidence of employee salaries and bonuses as irrelevant and prejudicial; the court denied the motion, accepting plaintiff's argument that evidence that defendants' employees' compensation was based upon environmental savings and reduced environmental expenditures was

2

relevant to whether or not defendants' employees used reasonable care with respect to environmental practices and policies. *Id.* at *8. Likewise, here, evidence relating to the manner in which BP compensated its employees is relevant to the issue of whether BP's employees acted with reasonable care during the time leading up to the Macondo disaster.

One of the key issues in this case is BP's lack of emphasis on process safety. BP's method of compensating its employees goes directly to that issue. Several witnesses have testified that cost cutting or "cost efficiency" is an element of their bonus evaluations. (Rainey Deposition, pp. 26-28; Suttles Deposition, pp. 72-75, 499 (Exhibit A).) David Rainey testified that before the *Deepwater Horizon* disaster, incentive bonuses were based in part on the implementation of cost saving measures, with less of an emphasis on safety than now exists. (Rainey Deposition, pp. 28-29.) Likewise, Doug Suttles testified that one of the factors needed to achieve exceptional performance for the award of a bonus was cutting costs. (Suttles Deposition, pp. 74-75.)

As the PSC's Process Safety experts, Drs. Robert G. Bea and William E. Gale, Jr., point out in their Rule 26 Report (Exhibit B), BP made cost-cutting an incentive through its Variable Pay Program (VPP), a program in which bonuses are tied to performance contracts. Although safety is a component of an employee's performance contract, it counts as only a small factor, and is tied mostly to personal – as opposed to process – safety. (Exhibit B, p. 61.) The safety component of the performance contracts for members of the Macondo drilling team counted for only 25 percent of an employee's total evaluation, and this 25 percent dealt mostly with personal safety, not process safety. (Exhibit B, p. 62 (citing BP-HZN-2179MDL01844732).) Bea and Gale opine that this arrangement acts as a "disincentive for employees to report incidents involving minor

3

injuries and near misses - key Process Safety indicators – in order to enhance bonus payouts." (Exhibit B, p. 62.)  The incentive to drill "cheap and fast" yielded great rewards for BP employees in the Gulf of Mexico; Jonathan Sprague, BP's drilling engineer, for instance, was paid a bonus of nearly fifty percent of his base salary in 2009 and 2010.  (Sprague Deposition, pp. 32, 40, 439-440 (Exhibit C).)

In support of its argument, BP points to the testimony of BP employees Robert Bodek, an operations geologist; Erick Cunningham, a cementing engineer; and David Sims, an operations manager, and asserts that the compensation paid to these individuals bears no relation to the facts at issue in determining the liability of the parties.  BP misses the point.  Each of these witnesses testified concerning the link between their compensation and their performance contracts, of which safety counts as only a small factor.  Bodek testified that he receives an annual bonus that is based on his personal performance and the performance of the Gulf of Mexico business unit. (Bodek Deposition, p.409.)  Cunningham testified that he receives bonuses and commissions under the VPP. (Cunningham Deposition, pp. 112-113.)  Sims also testified that he received a bonus based on a combination of personal performance and company performance. (Sims Deposition, p.18.)  As Bea and Gale point out, this structure, with its emphasis on personal as opposed to process safety, acts as a disincentive for employees to report incidents and goes to the issue of whether BP ignored process safety in favor of production and cutting costs.

The cases BP cites are inapposite.  For instance, in *Tratree v. BP N. Am. Pipelines, Inc.,* 390 Fed. Appx. 386 (5th Cir. Tex. 2010), an employment discrimination case, the plaintiff sought to introduce evidence of bonuses paid to his supervisor after the

4

plaintiff's position was eliminated in an effort to rebut the Defendant's claim that it eliminated the position because of a downturn in business. The Fifth Circuit affirmed the trial court's exclusion of that evidence, not because of privacy concerns, but because it was minimally relevant and cumulative. *Id.* at 391. In *Jackson v. Bayou Indus.*, No. 94-946, 1995 U.S. Dist. LEXIS 4065 (E.D. La. Mar. 27, 1995), another employment discrimination case, this Court did not exclude the evidence of plaintiff's compensation at other jobs as BP represents; instead, the Court deferred ruling on its admissibility until trial. In any event, unlike here, the evidence was likely irrelevant since the plaintiffs held the jobs in question subsequent to their employment with the defendant, and plaintiffs were not claiming lost earnings. *Id.* at *3. Of course, none of the cases BP cites involve the question of whether an employer's compensation scheme serves to motivate its employees to sacrifice safety in favor of increased production and profits. Certainly, employment compensation information is not probative in every case and may be overly prejudicial in some. In this case, however, BP's manner of compensation is relevant to the issue of whether BP sacrificed safety in favor of production and cost savings. Because BP cannot demonstrate that evidence relating to this scheme is not probative of that issue, its motion should be denied.

**Compensation May Also be Relevant to Issues of Bias and Credibility**

Barbara Yilmaz was the Technology Vice-President of BP Drilling and Completions from 2005 until the fall of 2010 (Yilmaz Deposition, pp.25, 391 (Exhibit D)). The technology function she managed was responsible for setting standards and practices for BP's global drilling and completions operations (Yilmaz Depo, pp.25, 44-45, 73-75). She was the boss of Kevin Lacy, who was a proponent of improved process

5

safety methods in the Gulf, and was fired (by Yilmaz) in November 2009 within days of making a safety presentation.

Several months after the blowout, BP's new CEO called Yilmaz and told her that she would be leaving the company (Yilmaz Depo, pp.750, 753-754). When she ultimately left in March 2011, she was paid $ *[redacted]* as a "severance" package (Yilmaz Depo, pp.463-464), and was thereafter immediately hired as a "BP consultant" (Yilmaz Depo, pp.395-396), for which she is paid over $ *[redacted]* monthly (Yilmaz Depo, pp.467). Since being hired as a "consultant," she has

*[ ... redacted ...]*

The possibility that BP has been paying one of its most controversial process safety employees in the United States what might appear to be "hush money" goes to both BP's and the witness' (as well as Kevin Lacy's) credibility.

### Conclusion

For the above and foregoing reasons, BP's motion should be denied.

This 17th day of January, 2012.


Respectfully submitted,


| | |
|---|---|
|    /s/ Stephen J. Herman    |    /s/ James Parkerson Roy |
| **Stephen J. Herman**, La. Bar No. 23129 | **James Parkerson Roy**, La. Bar No.11511 |
| **HERMAN HERMAN KATZ & COTLAR LLP** | **DOMENGEAUX WRIGHT ROY & EDWARDS LLC** |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhkc.com | E-Mail: jimr@wrightroy.com |
| *Plaintiffs Liaison Counsel* | *Plaintiffs Liaison Counsel* |

## PLAINTIFFS' STEERING COMMITTEE

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office:  (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office:  (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY  10003
Office:  (212) 558-5802
Telefax: (212) 344-5461
E-Mail:  rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office:  (334) 269-2343
Telefax: (334) 954-7555
E-Mail:  rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500

E-Mail:  rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail:  ervin@colson.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Mikal C. Watts
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail:  mcwatts@wgclawfirm.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that the above and foregoing (redacted) Memorandum has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of January, 2012. An un-redacted version of the Memorandum and all Exhibits thereto will be served on all Liaison Counsel and submitted to the Court Under Seal.

s/ James Parkerson Roy and Stephen J. Herman