UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>This Document Relates to: *All Cases*<br><br>(Including No. 10-2771) | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

## OPPOSITION TO BP'S MOTION TO EXCLUDE PHASE TWO EVIDENCE

Plaintiffs respectfully submit the following memorandum in opposition to BP's Motion *in Limine* to Exclude Phase Two Evidence from the Phase One Trial [Doc 5109]:

**MAY IT PLEASE THE COURT:**

BP's Motion to Exclude Phase Two Evidence from the Phase One Trial ignores the following:

- The phasing of the trial was largely a way to effectively manage and complete *discovery*;

- It was never intended that there be a "bright line" with respect to the Trial Phases in terms of the evidence presented;

- Fault for the initial event and fault for the subsequent spill are not mutually exclusive;

- Evidence relating to Phase One determinations and evidence relating to Phase Two determinations are not mutually exclusive;

1

- It is BP who has consistently taken the (incorrect) position that there should be only a *single* fault allocation, incorporating *both* the Phase One and the Phase Two evidence and considerations;

- BP also consistently took the position that their witnesses would only be produced *once,* for questioning on all phases;

- Particularly regarding *state of mind* issues, such as gross negligence, recklessness, wanton or willful conduct, greed, and conscious disregard for public safety, the evidence of *pre-event* statements, representations, acts and omissions by BP is relevant to *both* Phase One *and* Phase Two fault, and other determinations;

- Two-page summaries and other *argument* of counsel is not evidence;

- The PSC's two-page summaries of Campbell and Dupree, which BP points to as illustrative of "Phase Two" issues, were actually praised by Anadarko as sticking to issues relevant to Phase One;  and,

- BP itself has re-listed the deposition designations of fact witnesses for Phase One submission that the PSC had pulled off the list as relating primarily to Phase Two.

For these reasons, and for the reasons further outlined below, BP's Motion should be denied.

**The Trial Phases Relate to Liability Determinations**

While many of the parties generically refer to Phase One or Phase Two "evidence", the PSC has always found it more helpful and appropriate to view the phases in terms of their respective *determinations*. Indeed, the Court's Trial Plan places the three phases within the context of liability:

> The Trial will address all allocation of *fault* issues that may properly be tried to the Bench without a jury, including the *negligence, gross negligence,* or other bases of *liability* of, and the proportion of liability allocable to, the various defendants, third parties, and nonparties with respect to the issues, including *limitation of liability.*[1]

Phase One, accordingly, when stripped down to its essence, can be thought of as the determination of liability for the wrongful death and personal injury ("Bundle A") claims;  Phase

---

[1] PRE-TRIAL ORDER NO. 41, Section I, p.1 (emphasis supplied).

2

Two as the (further) determination of liability for the economic loss ("Bundle B1" and, to some extent, "Bundle C") claims;  and Phase Three as the determination of liability for post-spill exposure and injury (Bundle "B3") claims.

Of necessity, the fault determinations made in Phase One will be relevant to – and, indeed, subsumed within – the fault determinations made in Phase Two.  And, similarly, the evidence submitted in Phase One will also be relevant to Phase Two.

Indeed, there will be large amounts of testimony, exhibits and other evidence that is relevant to *both* Phase One and Phase Two.  And while some of the post-event Phase Two evidence can be segregated, *BP's failure to plan and prepare for a Macondo-type blowout prior to April 20, 2010* cuts across its negligence, gross negligence, reckless, willful and wanton conduct in both causing the initial blowout and prolonging the spill.

**Defendants' Own Positions Demonstrate the Lack of Any "Bright Line" between the Phases**

While Plaintiffs are in the process of reviewing the four two-page summaries submitted by BP in light of the Court's comments during the Discovery Conference held on January 6, 2012,[2] the contradictory characterizations of the Campbell and Dupree two-page summaries by defense counsel illustrates that there is no "bright line" distinction between Phase One and Phase Two testimony, particularly when it comes to *pre-event* acts or omissions.  When this issue was raised by counsel for Anadarko during the November 28th Discovery Conference, the following colloquy occurred:

> THE COURT: Next up is the discussion that we wanted to have relative to deposition designations and whether or not we want to prohibit the PSC from designating Phase Two when they designate their Phase One designations now.  I have said that I

---

[2] TRANSCRIPT (1/6/2012), p.30; *see also,* TRANSCRIPT (1/6/2012), pp.36-50, (attached hereto as Exhibit B).

3

didn't want to do that, that I don't want them to have to look at it twice, but here is the question: Can you go ahead and make those designations and set them aside?

MS. KUCHLER: That's what we were going to propose. That would be the efficient way to do it. Just don't give them to the Judge until we get to Phase Two.

MR. HERMAN: I really don't understand the purpose of it. It's extremely inefficient. The real problem that we have is - and I think - I don't think I sent our Group Four summaries [including Campbell and Dupree] to Your Honor. I think I just sent cc's to the parties. But … we have been trying from the beginning to make it clear that it wasn't supposed to be purely a chronological point in time.

THE COURT: Well, and Dennis asked a question that makes that very clear. I mean, Dennis asked the question, that I think was very helpful, about, well, you know, we did our forensic look-see post event, is that Phase Two? Well, no, that's not. That's Phase One.

MR. HERMAN: Right…. but you have, you know, depositions taken. Let's say 80 percent of it or 75 percent of it relates to why things went wrong on April 20th. Okay. Mixed in with all of that are a bunch of failures to prepare. Now, the reality is, if you were - if you wanted to parse through it, and you were being very scientific about it, somebody might say, well, you know, a lot of these failures to prepare, they may not have really manifested themselves on April 20th, but they became much more significant when they were trying to cap the well two weeks later. But, to try to parse all of that out and try to say, well, this is Phase One versus Phase Two, I mean, a lot of it is ambiguous, it overlaps; and, we're also attempting to give the Court kind of a fair picture of what happens and what the deposition testimony is.

I understand, if you're talking about top kill or top hat and all those things, and capping stack, except for the fact that they didn't have one before April 20th, you know, that stuff is fairly easy to say, okay, well, that's really Phase Two, we'll take it out and deal with it later. But when you have the two issues mixed together, and particularly when the chronology is prior to April 20th, A, it doesn't seem efficient; and, B, I don't see how it's efficient for the Court, and we would rather give the Court an appropriate picture….

\* \* \*

MR. FITCH: As Judge Barbier pointed out, the way to avoid repetition is just not to let it come in in Phase One. There's your efficiency.

\* \* \*

THE COURT: My e-mail this week gave you the Phase One language….
I mean, it's crystal clear. The only issue is whether we can draw a fine line or not. Steve says we can't, and Tony says we can. So, Tony, send me your illustrative information, and we'll go ahead and take it from there.

MR. FITCH: Yes, I will. Of course, Judge…..

4

> Finally, **if you review, for example, the Group Four two-page summaries [including Campbell and Dupree] that the PSC submitted, I think, last night, when you read those summaries, they are precise. <u>They don't bring in Phase Two evidence</u> or CWA evidence. It can be done. It's a perfectly good, thorough document.**
>
> THE COURT: They appreciate the compliment.
>
> MR. HERMAN: We do. I think they actually do involve some arguable Phase Two stuff, but that was my point….
> …First of all, I think everybody on this side of the room heard Judge Barbier's comments almost exactly the opposite. The efficiency that he was talking about is we're not going to call people back during Phase Two if we can deal with them in Phase One.
> Secondly, a lot of this situation was created by the insistence from the very beginning that deposition witnesses only be called one time for all purposes, which is an accommodation that everybody has made.
> Finally, as Jim just pointed out, we have in good faith taken a whole series of witnesses and said, yes, we agree, these are primarily Phase Two, we're going to save them for later. We're doing that in good faith, and, to go back and recut a whole bunch of things that are admittedly primarily Phase One, and a lot of - had a lot of Phase One and Phase Two crossover, with maybe just little slices of Phase Two, we believe is a waste of our time and a waste of the Court's time, and I think is exactly what Judge Barbier said he didn't want to do with live witnesses in court today.[3]

Hence, Anadarko, who was complaining about the potential introduction of Phase Two designations during the Phase One Trial, believed that the Campbell and Dupree references to BP's pre-April 20 failure to prepare for a spill were appropriately admitted in the Phase One Trial.

Along similar lines, two fact witnesses, Dawn Peyton and Robert Turlak, were on Plaintiffs' original fact deposition designation list. The PSC removed these two witnesses from the Phase One list, as relating primarily to Phase Two. Defendants, however, placed these two

---

[3] TRANSCRIPT (11/28/2011), pp.81-90 (emphasis supplied); *see also,* pp.90-95, (attached hereto as Exhibit A); *see also,* TRANSCRIPT (1/6/2012), at pp.36-50 (Exhibit B).

5

witnesses back on the Phase One list [4] – further indicating that bright lines between the phases are not easily drawn.

### The Phasing of the Trial Was Largely a Way to Effectively Manage and Complete Discovery.

It is Plaintiffs' recollection and understanding that the phasing of the trial was primarily an attempt to efficiently and effectively manage the massive amounts of discovery in a way that would not interfere with the commencement of the trial.  The strict segregation of evidence into different phases is not necessary from a legal, substantive or "Due Process" standpoint.[5]  Indeed, it is BP who has consistently taken the (incorrect) position that there should be only a single fault allocation, incorporating both the Phase One and the Phase Two evidence and considerations.[6]

### Evidence Relating to State-of-Mind, in Particular, is Relevant to Both Phase One and Phase Two Determinations

The central fallacy in BP's position is that Phase One and Phase Two are mutually exclusive.  While it is true that some evidence relates almost entirely to source control issues, virtually all of the evidence relation to Phase One is also relevant to Phase Two.  There is particular overlap with issues such as **(a)** BOP failure or **(b)** casing design, which have been universally treated as "Phase One" issues, even though their direct causal effects may be more relevant to Phase Two.  This overlap and ambiguity arises especially with respect to events (or omissions) occurring *prior* to the blowout – and may be directly or circumstantially relevant either to the fire and explosion on April 20, or to inability to cap the well after April 20, or both.  Nowhere is this overlap more prevalent than on the question of scienter.

---

[4] *See* E-Mail from BP Counsel, Brian Kavanaugh, to Judge Shushan, Dec. 15, 2011, (attached hereto as Exhibit C).

[5] Nor is there a question regarding the evidence's *admissibility*.

[6] BP has also consistently taken the position that their witnesses would only be produced *once,* for questioning on all phases.

As the Court is well aware, one of the most significant issues to be tried is the issue of BP's gross negligence and/or willful misconduct. Evidence that BP was wanton, reckless, or consciously indifferent with respect to its utter failure to prepare for an oil spill is also, at the very least circumstantially, if not directly, relevant to BP's gross negligence, recklessness, wanton and/or willful misconduct in allowing the blowout to occur in the first place.

Take, for example, the issue of narrow drilling margin: BP's cavalier attitude with respect to its Oil Spill Response Plan is the same cavalier attitude it took with respect to the high-temperature high-pressure risks of deepwater drilling. The idea that BP might be facing a "worst-case discharge scenario" of 300,000 barrels a day makes all the more wanton and reckless its decision to use the long-string casing; or manipulate the MASP calculations so that they did not reflect what was truly the worst-case scenario; or hide information from the MMS; etc. Only by considering the full extent of BP's reckless and intentional conduct prior to the event can the Court fairly and appropriately allocate fault between and among the Phase One Defendants.

While, as a causal matter, *some* of the evidence relating to the pre-incident failure to prepare for the spill may be more directly related to BP's inability to cap the well for almost three months after the blowout, the evidence is also *relevant* to Phase One, particularly with respect to the gross negligence and willful misconduct determinations.[7]

**An Order Excluding Phase Two Evidence is Unworkable and Unnecessary**

As noted, there are some cases in which Phase One evidence overlaps with Phase Two issues, and an attempt to parse out the "Phase One" evidence from the "Phase Two" evidence is going to be both inefficient and inherently subjective.

---

[7] *See generally,* TRANSCRIPT (1/6/2012), at pp.36-50.

There are, as noted, some circumstances in which a clear line can be drawn between Phase One and Phase Two issues. But, with respect to those circumstances, the parties are keenly aware of the Court's desire that exclusively Phase Two evidence not be presented during the Phase One Trial. Therefore, any party who attempts to admit such evidence does so at its own peril.[8]

In addition, BP has, other than a handful of two-page summaries (which are <u>not</u> *evidence*), failed to identify the specific exhibits or testimony which it claims should be excluded. And the Court will, in any event, be in a better position to determine where to cut off the parties and the witnesses over the course of the trial.

Hence, even if warranted, (which is denied), a pre-trial order to the effect that "Phase Two evidence" should not be admitted during Phase One would provide little actual guidance to the parties, and is, in any event, largely unnecessary, given the practical realities under which the parties are likely to present evidence and argument at trial.

## Conclusion

For the above and foregoing reasons, Plaintiffs respectfully request that BP's Motion *in Limine* to exclude Phase Two evidence be denied.

This <u>17</u>th day of <u>January</u>, <u>2012</u>.


Respectfully submitted,

|  |  |
|---|---|
| /s/   Stephen J. Herman | /s/ James Parkerson Roy |
| **Stephen J. Herman**, La. Bar No. 23129 | **James Parkerson Roy**, La. Bar No.11511 |
| HERMAN HERMAN KATZ & COTLAR LLP | DOMENGEAUX WRIGHT ROY & EDWARDS  LLC |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |

---

[8] See generally, TRANSCRIPT (11/28/2011), pp.81-95; *and,* TRANSCRIPT (1/6/2012), pp.30, 36-50.

| | |
|---|---|
| New Orleans, Louisiana 70113<br>Telephone: (504) 581-4892<br>Fax No. (504) 569-6024<br>E-Mail: sherman@hhkc.com<br>*Plaintiffs Liaison Counsel* | Lafayette, Louisiana 70501<br>Telephone: (337) 233-3033<br>Fax No. (337) 233-2796<br>E-Mail: jimr@wrightroy.com<br>*Plaintiffs Liaison Counsel* |

## PLAINTIFFS' STEERING COMMITTEE

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office: (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office: (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Office: (415) 956-1000
Telefax: (415) 956-1008
E-Mail: ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Office: (504) 394-9000
Telefax: (504) 394-9110
E-Mail: pcossich@cossichlaw.com

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY 10003
Office: (212) 558-5802
Telefax: (212) 344-5461
E-Mail: rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office: (334) 269-2343
Telefax: (334) 954-7555
E-Mail: rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA 70601
Office: (337) 439-0707
Telefax: (337) 439-1029
E-Mail: mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA 70801-1910
Office: (225) 344-3735
Telefax: (225) 344-0522
E-Mail: mpalmintier@dphf-law.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL 36660
Office: (251) 471-6191
Telefax: (251) 479-1031
E-Mail: rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail: mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA 70726
Office: (225) 664-4193
Telefax: (225) 664-6925
E-Mail: calvinfayard@fayardlaw.

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail: ervin@colson.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW & ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Office: (504) 588-1500
Telefax: (504) 588-1514
E-Mail: sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Office: (214) 521-3605
Telefax: (214) 599-1172
E-Mail: ssummy@baronbudd.com

Mikal C. Watts
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail: mcwatts@wgclawfirm.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Memorandum has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of January, 2012.

s/ James Parkerson Roy and Stephen J. Herman