UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

*****************************************************************

IN RE: OIL SPILL BY THE OIL RIG *DEEPWATER HORIZON* IN THE GULF OF MEXICO ON APRIL 20, 2010

CIVIL ACTION NO. 10-MD-2179 "J"
NEW ORLEANS, LOUISIANA
FRIDAY, NOVEMBER 18, 2011, 11:45 A.M.

THIS DOCUMENT RELATES TO ALL CASES

*****************************************************************

TRANSCRIPT OF DISCOVERY STATUS CONFERENCE PROCEEDINGS
HEARD BEFORE THE HONORABLE SALLY SHUSHAN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFFS' LIAISON COUNSEL:

DOMENGEAUX WRIGHT ROY & EDWARDS
BY: JAMES P. ROY, ESQUIRE
P. O. BOX 3668
556 JEFFERSON STREET
LAFAYETTE, LA 70502

HERMAN HERMAN KATZ & COTLAR
BY: STEPHEN J. HERMAN, ESQUIRE
SOREN GISLESON, ESQUIRE
820 O'KEEFE AVENUE
NEW ORLEANS, LA 70113

MR. YORK: Your Honor, Alan York for Halliburton.

We also, in compliance with the Court's deadline, did file an authenticity objection document on the 14th. The vast majority of documents there were the same kind of things with handwriting, highlighting. We'll continue to work those out.

I think there were only ten that we included, and most of those went -- I believe, if I remember correctly, eight of the ten went to the Craig Gardner deposition exhibits that were, again, basically handwriting issues.

So we'll continue to work with the parties to try to work those things out.

THE COURT: Let's agree to this. If there are serious issues with any document, why don't you bring it to our attention. Something besides handwriting or notations or whatever, but, I mean, serious authenticity issues, bring it to my attention, and we'll try to tee it up so that we can get it taken care of.

All right. Interpleader agreement, thank you all for working that out. I figure I'll spend the rest of my years looking at the reasonableness of the settlements, so that's something for me to look forward to.

Anthony, thank you for the confidentiality order. All good.

Next up is the discussion that we wanted to have

relative to deposition designations and whether or not we want to prohibit the PSC from designating Phase Two when they designate their Phase One designations now.

I have said that I didn't want to do that, that I don't want them to have to look at it twice, but here is the question: Can you go ahead and make those designations and set them aside?

MS. KUCHLER: That's what we were going to propose. That would be the efficient way to do it. Just don't give them to the Judge until we get to Phase Two.

MR. HERMAN: I really don't understand the purpose of it. It's extremely inefficient.

The real problem that we have is -- and I think -- I don't think I sent our Group Four summaries to Your Honor. I think I just sent cc's to the parties. But, based on your answer to my question, you know, we have been trying from the beginning to make it clear that it wasn't supposed to be purely a chronological point in time.

THE COURT: Well, and Dennis asked a question that makes that very clear. I mean, Dennis asked the question, that I think was very helpful, about, well, you know, we did our forensic look-see post event, is that Phase Two? Well, no, that's not. That's Phase One.

MR. HERMAN: Right. Well, I mean, that's a good example; but, there are other examples where -- just using BP as

an example, but you have, you know, depositions taken. Let's say 80 percent of it or 75 percent of it relates to why things went wrong on April 20th. Okay. Mixed in with all of that are a bunch of failures to prepare.

Now, the reality is, if you were -- if you wanted to parse through it, and you were being very scientific about it, somebody might say, well, you know, a lot of these failures to prepare, they may not have really manifested themselves on April 20th, but they became much more significant when they were trying to cap the well two weeks later.

But, to try to parse all of that out and try to say, well, this is Phase One versus Phase Two, I mean, a lot of it is ambiguous, it overlaps; and, we're also attempting to give the Court kind of a fair picture of what happens and what the deposition testimony is.

I understand, if you're talking about top kill or top hat and all those things, and capping stack, except for the fact that they didn't have one before April 20th, you know, that stuff is fairly easy to say, okay, well, that's really Phase Two, we'll take it out and deal with it later.

But when you have the two issues mixed together, and particularly when the chronology is prior to April 20th, A, it doesn't seem efficient; and, B, I don't see how it's efficient for the Court, and we would rather give the Court an appropriate picture.

I frankly don't understand what Anadarko's issue is because -- well, there is a lot of things I don't understand about it -- I don't understand why Anadarko cares whether Phase Two stuff comes in as opposed to Phase One stuff. What do they care?

THE COURT: If they get their jury trial, then none of this will impact the jury.

MS. KUCHLER: Right.

MR. FITCH: Judge, this is Tony Fitch.

The reason we care is exactly that, because it's not just Phase Two or even Phase Three evidence, it's also CW -- Clean Water Act evidence, especially coming in through the United States.

Having that come in in Phase One deprives us of the right to a jury trial, which, not an hour and a half ago, the United States conceded that we do, in fact, have that CWA liability issue.

THE COURT: Let's see if Deb --

MR. FITCH: As Judge Barbier pointed out, the way to avoid repetition is just not to let it come in in Phase One. There's your efficiency.

MS. KUCHLER: Right.

This is Deb Kuchler for Anadarko.

Judge Barbier said very plainly this morning that he really wants to try to live by that trial plan where Phase One

01:30PM is done in Phase One, with the exception of very brief testimony
01:30PM that might be appropriate to take because somebody is on the
01:30PM stand. He's going to be inundated with thousands of pages of
01:31PM deposition designations.

01:31PM Frankly, we'll let BP argue about capping stack
01:31PM issues; but, from Anadarko's perspective, the fact that the
01:31PM United States is trying to get into Phase One all the
01:31PM Clean Water Act issues not only overwhelms the Judge with issues
01:31PM he doesn't want to hear in Phase One, but it does have
01:31PM implications to us on the jury trial issue.

01:31PM THE COURT: Deb, give me an example of a Clean Water
01:31PM issue designation that you think has been made that should come
01:31PM out? Give me an example.

01:31PM MS. KUCHLER: Almost all of the U. S.'s designations as
01:31PM to Anadarko and MOEX, as to what we knew, what our status was,
01:31PM all of that goes to the U. S. trying to prove Clean Water Act
01:31PM liability for the purposes of fines and penalties.

01:31PM MR. UNDERHILL: No. No.

01:31PM MR. FITCH: Judge, we have done a list internally on
01:31PM that, and I'm happy to share that with you Sunday afternoon,
01:31PM after the e-mail rest period.

01:32PM THE COURT: Good, Tony. I'll look forward to that.

01:32PM MR. FITCH: Or Monday morning, if you prefer Monday
01:32PM morning instead of Sunday afternoon.

01:32PM THE COURT: I would like that, Tony. I would like to

01:32PM sink my teeth into concrete examples, because, otherwise, again, I'm operating in a vacuum.

01:32PM MR. FITCH: Judge, that is obviously a fair point. Several parties heard that from Judge Barbier this morning, and we understand it.

01:32PM MR. UNDERHILL: Your Honor, this is a red herring issue. Not the Communist variety, not even the Norwegian variety.

01:32PM THE COURT: That was my Bar exam name.

01:32PM MR. UNDERHILL: Red Herring?

01:32PM THE COURT: Red Herring.

01:32PM MR. UNDERHILL: Gefilte Fish is mine.

01:32PM But, two points. These are not difficult concepts for my Anadarko friends to grasp. As to Tony's or Deb's, whomever made it, they are flat wrong that these issues are solely relevant to the Clean Water Act.

01:33PM The allegations in the OPA side of the case, the OPA side of the case, is whether they have responsibility as owner/operator. These are relevant issues. They say that we're a passive investor, and maybe they are, but those are all going to come in.

01:33PM The gross negligence issues, frankly, candidly, I don't think Anadarko is going to lose a lot of sleep over gross negligence because, as Judge Barbier pointed out, he's already dismissed even the negligence case against them. So these are going to come in on the OPA side and various other sides.

As to the jury trial issue, the cart is before the horse. This is going to be a bench trial. If, at the end of the bench trial, there is a body of evidence, let's assume some includes purely Phase Two issues, let's assume that's the case, and if Anadarko establishes the right to a jury trial for various issues, then they are going to be able to do a do-over with those very same issues.

Now, if the jury was tried first, and they were deprived of evidence, I got the prejudice; but, there is no prejudice. If their jury trial exists, they are going to have it, if they're still around, if we haven't dismissed, settled or whatever we do. So this is a total red herring.

MR. FITCH: Well, Judge, it's not a red herring when Judge Barbier is concerned about the efficiency of the trial.

The OPA point that Mike makes, I respectfully suggest, was basically taken out of the case this morning, given Judge Barbier's ruling and reasoning therefor on the motions to dismiss the counterclaims. The same rational has to apply to the government's argument about what's relevant to OPA liability.

We walked out of Judge Barbier's courtroom -- a courtroom in which the right to jury trial was conceded and acknowledged, and therefore it does not have to be established, as Mike just said -- we walked out of that courtroom also, respectfully, with a zero OPA allocation.

THE COURT: Okay.

MS. BERTAUT: Judge, Carmelite Bertaut for Cameron.

I don't really want to discuss Clean Water Act and those issues, but I think there is a larger issue with the doubling up or the Phase Two creeping into Phase One, which is a fundamental due process concern that I think parties have in trying to figure out what it is we are actually trying on Phase One.

I don't have any specifics, Judge, but I do think we need to continually remember that we're -- we need to be on notice of what it is that's coming up; although, deposition designations is a little bit looser, but this does impact other issues. And so that's a broader issue, to me, than just Clean Water Act and Anadarko.

THE COURT: My e-mail this week gave you the Phase One language.

MS. BERTAUT: Exactly.

THE COURT: I mean, it's crystal clear. The only issue is whether we can draw a fine line or not.

Steve says we can't, and Tony says we can. So, Tony, send me your illustrative information, and we'll go ahead and take it from there.

MR. FITCH: Yes, I will. Of course, Judge.

The final point to keep in mind is this remains a pretty important issue because there are an awful lot of designations still -- still to come.

THE COURT: Right.

MR. FITCH: We do think that your preclusion ruling, to the extent that it is in force, needs to apply to designations, obviously, as well as the two-page summaries.

Finally, if you review, for example, the Group Four two-page summaries that the PSC submitted, I think, last night, when you read those summaries, they are precise. They don't bring in Phase Two evidence or CWA evidence. It can be done. It's a perfectly good, thorough document.

THE COURT: They appreciate the compliment.

MR. HERMAN: We do.

I think they actually do involve some arguable Phase Two stuff, but that was my point.

Very quickly -- or as quickly as I can be. First of all, I think everybody on this side of the room heard Judge Barbier's comments almost exactly the opposite. The efficiency that he was talking about is we're not going to call people back during Phase Two if we can deal with them in Phase One.

Secondly, a lot of this situation was created by the insistence from the very beginning that deposition witnesses only be called one time for all purposes, which is an accomodation that everybody has made.

Finally, as Jim just pointed out, we have in good faith taken a whole series of witnesses and said, yes, we agree,

these are primarily Phase Two, we're going to save them for later.

We're doing that in good faith, and, to go back and recut a whole bunch of things that are admittedly primarily Phase One, and a lot of -- had a lot of Phase One and Phase Two crossover, with maybe just little slices of Phase Two, we believe is a waste of our time and a waste of the Court's time, and I think is exactly what Judge Barbier said he didn't want to do with live witnesses in court today.

THE COURT: I am not going backwards. The issue is going forward what we're going to do.

MR. ROY: Judge, Jim Roy, if I could just comment on that one part.

The point is exactly as Steve has indicated. We think we have demonstrated by cutting dozens of depositions out of the list of cuts, putting them in the back of the line, calling them Phase Two. All right.

But, going forward, as we go through depositions that we consider to be primarily Phase One, you know, we may consider it to be primarily Phase One, Carmelite may think it's primarily Phase Two or even Phase Three. We've got a problem here.

We're using our best judgment as to what we think it is. We should be able to cut that deposition. It, with all due respect, creates tremendous management problems, when we're

dealing with this volume, to start trying to manage, you can't put these ten lines of cuts in, but you can put the other 900 lines of cuts in.

It's a subjective thing. We're trying to manage it as best we can. I believe we have demonstrated that we have not abused it. To the contrary, we have bent over backwards to pull depositions out that are predominantly Phase Two and not Phase One. We would like to have that ability to continue.

If, in fact, there is a little Phase Two in a particular deposition when we cut it, and in the overall context, in our subjective opinion, it ought to be there, we think we have got the right to put it there.

To the extent, in the Phase One two-page cuts, two-page summaries, I would certainly agree that the emphasis in those two pages ought to be Phase One issues; and, that when we get to Phase Two, maybe the two-page cuts need to be supplemented or redone to show what the emphasis is for Phase Two.

But we just, for the life of us, do not see, as much as the defense would like to impose a bright line litmus test rule to exclude, that's a big powerful word to plaintiffs who carry the burden of proof. We don't get to go in twice. We get to go in once for each phase.

We think that this is a subjective thing. If we get out of line, if we start slamming the Court with a lot of stuff that's irrelevant, I strongly suspect the Court is going to

express itself to us.

THE COURT: Yes. I mean, that's the big fear that I have, is that we don't want to make the burden harder than it already is.

But let me take a look at the examples Tony is going to send us, and I'll get something out early next week on what we do going forward. We're definitely not going backwards.

MR. FITCH: Judge, I understand that; but, in each instance of the trial, each phase of the trial, BP, in fact, gets two swipes because it does have the right to put on its rebuttal case.

I'm going to put the whip away now and leave this horse alone.

THE COURT: Okay. Thank you.

MS. BERTAUT: Judge, the only thing I was going to add, and, actually, Jim has just confirmed it, which is the Court, I think, had earlier indicated that the plaintiffs were saying it was easy to demark it. I think that there are going to be occasions when it's not.

The different phases are meaningful, not just for judicial economy purposes, but also for due process. So I just want to make certain that we're sensitive to the idea that the details can swamp you. That's all I'm saying.

THE COURT: Thanks, Carmelite.

MS. KIRBY: Judge, it's Ky Kirby. Can I just make one

01:41PM brief statement?

01:41PM THE COURT: Hello, Ky.

01:41PM MS. KIRBY: Mr. Roy actually just made what I think is a point that I disagree with pretty strongly, and that is that we all agree that if there was someone called by deposition, and that person had Phase Two testimony in his deposition, then his testimony should be designated at the same time in Phase One.

01:42PM What Judge Barbier said this morning and what I recall, having been the primary author of the trial structure order that the judge ultimately modified and used, was if the witness is actually there, present in the courtroom, then, sure, we'll let him or her provide his or her Phase Two testimony then, in lieu of making them come back at some point in the future.

01:42PM That kind of efficiency issue does not exist with respect to depositions. We are highly technological now. When somebody is reviewing a deposition, they have very easy capability of identifying something as Phase One and Phase Two at the same time they are reading it. They don't have to read it twice. They don't have to read it one time per phase. They can do it right then and there and just keep track of it.

01:43PM But what we have been hearing in the past from folks is, oh, well, we agreed that we should designate Phase Two if we're putting on a witness who also has Phase Two testimony. That kind of rational goes way beyond what I heard Mr. Herman say and what I just heard Mr. Roy argue a bit, and that is that it

01:43PM allegedly is relevant to Phase One, as well.

01:43PM I grant you, and I think we all would agree, there are going to be times when something is relevant to Phase One; but, using the mere presence of a deposition as the basis for designating Phase Two or designating CWA-type testimony is where we have really run afoul of the trial structure order, and we have some serious due process issues.

01:43PM THE COURT: Okay. Thank you, Ky.

01:43PM MR. ROY: Judge, may I make one other comment?

01:43PM THE COURT: Sure.

01:43PM MR. ROY: Thank you. Jim Roy.

01:43PM Look, this started out in this courtroom with advice from Your Honor. We followed that. Anybody in this courtroom think we haven't followed it? Of course, we followed it.

01:44PM We've already cut virtually all the depositions now. We've done our work. We have been saying for months that we tried to stay ahead of the curve, and we tried to do it.

01:44PM So, to the extent the work has been done, and Ky or anybody else wants us to go back and redo it, we think is something that we should not have to do, other than to the extent we've already tried to do, which is to totally pull depositions and slide them to Phase Two.

01:44PM We all want to get to the trial as quick as we can and in the best way possible, and the last thing we want to do is

01:44PM slam the judge unnecessarily.

01:44PM But, to the extent we have the burden of proof, we have certain obligations and certain rights in what we put forward, Your Honor.

01:45PM Thank you.

01:45PM THE COURT: Thanks, Jim.

01:45PM All right. Guys, moving on to any other things we need to discuss today?

01:45PM MR. LANGAN: Your Honor, housekeeping. Easy one.

01:45PM Judge Barbier ruled last Monday or Tuesday on the State of Louisiana, State of Alabama complaints, issued a ruling. That triggers an answer obligation by BP and some other clients.

01:45PM The State of Alabama, as coordinating counsel and on its own behalf, has agreed, along with Louisiana, that the defendants can have until December 14th to answer. That's an extension, which we appreciate.

01:45PM I have a proposed order I can e-mail to you.

01:45PM THE COURT: Lovely.

01:45PM MR. LANGAN: So I will do that, if not today, then Sunday or Monday. Not Saturday, though.

01:45PM THE COURT: And not Thursday.

01:45PM MR. LANGAN: So, anyway, but I wanted to put that on the record. Thank you to Corey and the states.

01:45PM THE COURT: Anthony, what have you got?

01:46PM MR. IRPINO: Anthony Irpino for the PSC.