```
                        UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF LOUISIANA


****************************************************************

IN RE:  OIL SPILL BY THE
OIL RIG DEEPWATER HORIZON
IN THE GULF OF MEXICO ON
APRIL 20, 2010
                                    CIVIL ACTION NO. 10-MD-2179 "J"
                                    NEW ORLEANS, LOUISIANA
                                    FRIDAY, JANUARY 6, 2012, 9:30 A.M.

THIS DOCUMENT RELATES TO
ALL ACTIONS

****************************************************************


          TRANSCRIPT OF DISCOVERY STATUS CONFERENCE PROCEEDINGS
                HEARD BEFORE THE HONORABLE SALLY SHUSHAN
                      UNITED STATES MAGISTRATE JUDGE



APPEARANCES:


FOR THE PLAINTIFFS'
LIAISON COUNSEL:         DOMENGEAUX WRIGHT ROY & EDWARDS
                         BY:  JAMES P. ROY, ESQUIRE
                         P. O. BOX 3668
                         556 JEFFERSON STREET
                         LAFAYETTE, LA  70502


                         HERMAN HERMAN KATZ & COTLAR
                         BY:  STEPHEN J. HERMAN, ESQUIRE
                         820 O'KEEFE AVENUE
                         NEW ORLEANS, LA  70113


FOR THE PLAINTIFFS:      IRPINO LAW FIRM
                         BY:  ANTHONY IRPINO, ESQUIRE
                         2216 MAGAZINE STREET
                         NEW ORLEANS, LA  70130
```

09:23AM

```
09:58AM   1   the question on the errata sheets?
09:58AM   2              Okay, two-page summaries.
09:58AM   3              I looked at the two-page summary for Mr. Richard
09:59AM   4   Lynch.  It seems clear to me that Mr. Lynch, who the PSC
09:59AM   5   describes as leader of BP's source control efforts, is a
09:59AM   6   Phase Two witness.
09:59AM   7              Now, if you all want to submit two-page summaries
09:59AM   8   for a Phase Two witness during Phase One, I think you're going to
09:59AM   9   aggravate Judge Barbier.  That's my personal opinion, and I know
09:59AM  10   Judge Barbier pretty well.
09:59AM  11              So, you know, if you want to do it, I'm not going
09:59AM  12   to tell you not to, it's your two pages to use; but, he's not
09:59AM  13   going to like it, because he's going to have to read the same
09:59AM  14   two-page summary again come Phase Two, and he's going to be what
09:59AM  15   I call aggravated, okay?
10:00AM  16              So, buyer beware.  I'm not going to tell them,
10:00AM  17   Andy, what to do with their two pages, but it seems like a waste
10:00AM  18   of time to me.  If they want to aggravate Judge Barbier, they do
10:00AM  19   so at their own risk.
10:00AM  20              MR. LANGAN:  Fair enough.
10:00AM  21              THE COURT:  Is that fair enough?
10:00AM  22              MR. LANGAN:  Well, we'd prefer them to be instructed,
10:00AM  23   but we understand, Your Honor.
10:00AM  24              MR. YORK:  Judge --
10:00AM  25              THE COURT:  Alan.
```

```
10:07AM   1                    I'll resend the letter.
10:07AM   2              THE COURT:  That's good.  Okay.
10:07AM   3              MR. NOMELLINI:  Your Honor, it's Mark Nomellini.
10:07AM   4              I think that the last round of objections, per the
10:07AM   5   Court's order, based on the last round of exhibits will be due on
10:07AM   6   January 20th.
10:07AM   7              THE COURT:  When, Mark, do you want to get your letter
10:08AM   8   in with regard to the seven attorney-created exhibits?
10:08AM   9              MR. NOMELLINI:  I think we could do that by next
10:08AM  10   Wednesday, Your Honor.
10:08AM  11              THE COURT:  Then, when do you want to, Jeff, come back
10:08AM  12   with yours?
10:08AM  13              MR. BREIT:  If they're going to do it next Wednesday, we
10:08AM  14   will do it on the following Monday, if that's okay with the
10:08AM  15   Court?
10:08AM  16              THE COURT:  Fine.  Fine, fine, fine.
10:08AM  17              MR. LANGAN:  Your Honor, I'm sorry to belabor a point
10:08AM  18   that you've already covered, but I, on the Richard Lynch two-page
10:08AM  19   summary thing, understood what Your Honor said about the PSC
10:08AM  20   proceeding at its own risk about the two-page summaries; but,
10:08AM  21   there might be a more fundamental issue, which is the need for
10:08AM  22   clarity on whether preparedness, spill preparedness, is a
10:08AM  23   Phase Two issue.  We clearly think it is.
10:08AM  24              THE COURT:  I clearly think it is, too.  Let's talk
10:09AM  25   about --
```

```
10:09AM   1            MR. LANGAN:  So that made clear would be good.  That
10:09AM   2   certainly has nothing to do with a blowout or a fire explosion.
10:09AM   3            THE COURT:  Let's explore that.  Phase One is what
10:09AM   4   caused the uncontrolled flow.  Phase Two is -- or at least part,
10:09AM   5   as I understand it, of the PSC's claim is why it took so long to
10:09AM   6   cap the well.
10:09AM   7            It seems to me that the claim of unpreparedness to
10:09AM   8   cap the well goes to your Phase Two claim, which is why weren't
10:09AM   9   you ready to cap it when you have an uncontrolled flow.  You
10:09AM  10   know, it took 90 days to drill the relief well; you should have
10:09AM  11   been prepared to do this in a matter of days, if not weeks.
10:09AM  12            MR. HERMAN:  Well, I think we've always taken the
10:09AM  13   position that there isn't a strict chronological April 22nd line
10:10AM  14   drawing, that there shouldn't be, and that there are going to be
10:10AM  15   things that happened before April 20th, 22nd, that are more
10:10AM  16   related to Phase Two than Phase One.
10:10AM  17            We'll do whatever is appropriate.  I guess my -- I
10:10AM  18   don't know if it rises to the level of frustration, but it's kind
10:10AM  19   of a moving target because the last time, I'm almost positive,
10:10AM  20   when we talked about this, I think the day that Mr. Lynch's
10:10AM  21   two-page summary was submitted, there was a lot more Phase Two
10:10AM  22   stuff, and we deleted all of it or were saving it for Phase Two.
10:10AM  23            The only part that we saved, which I thought was
10:10AM  24   consistent with what we discussed in court, and even I thought we
10:10AM  25   got some approval from -- actually, it was Anadarko that was
```

10:10AM 1   raising this issue, not BP at the time -- their lawyer was
10:10AM 2   praising us for sticking to what he considered to be Phase One
10:10AM 3   stuff.
10:10AM 4            Where I thought we drew the line was, even though
10:11AM 5   there is information that is more directly or more causally
10:11AM 6   related to the source control issue, if it happened before
10:11AM 7   April 20th, our position is that these things are not mutually
10:11AM 8   exclusive.  The fact that there might have been many things that
10:11AM 9   BP didn't do prior to April 20th, from a causal standpoint, might
10:11AM 10  be more directly related to source control; but, they still go to
10:11AM 11  the degree and, if you're going to have a fault allocation
10:11AM 12  between and among the defendants, their gross fault, their wanton
10:11AM 13  reckless indifference, etcetera.
10:11AM 14           The oil spill response plan that they submitted,
10:11AM 15  you know, may be more directly related to Phase Two; but, we also
10:11AM 16  think it goes to their state of mind, gross negligence, wanton,
10:11AM 17  willful misconduct, etcetera, related to the Phase One issues.
10:11AM 18           If the Court is trying to get a sense of, okay, who
10:11AM 19  was more at fault in why this rig blew up and caught on fire on
10:12AM 20  April 20th, we think, even if it's indirect or circumstantial
10:12AM 21  evidence, it's highly relevant, the fact that they completely
10:12AM 22  didn't prepare for a blowout prior to April 20th; we think it's
10:12AM 23  relevant to the allocation of fault and the level of fault for
10:12AM 24  the fire and explosion, even though, if, when you analyze it and
10:12AM 25  try to tease it out a little bit more, ultimately X failure might

10:12AM 1 be more directly related to source control.
10:12AM 2           But, I mean, there are certain issues that
10:12AM 3 involve -- you know, a lot of the things that involve the blowout
10:12AM 4 preventer, although we have been treating them as Phase One
10:12AM 5 issues, at the end of the day they may be a lot more relevant to
10:12AM 6 source control issues and why the rig blew up.
10:12AM 7           Some things are easy to tease out, and, to the
10:12AM 8 extent we can, you know, we've done our best to delete those
10:12AM 9 items and hold them in abeyance for Phase Two.  I think there
10:12AM 10 were entire witnesses that we pulled.
10:13AM 11           But my recollection is that Mr. Lynch's two-page
10:13AM 12 summary, at least a page or a page and a quarter is on Phase One
10:13AM 13 stuff.  The only thing that relates to both Phase One and
10:13AM 14 Phase Two is, I think -- I mean, I'm kind of talking off the top
10:13AM 15 of my head, but I think at the very end we have one heading for
10:13AM 16 their failure to prepare for the blowout prior to April 20th.
10:13AM 17           There is a whole -- I mean, this summary started
10:13AM 18 out four pages, and I cut out the two pages that were purely
10:13AM 19 Phase Two.
10:13AM 20           We can go back and look at them.  We understand the
10:13AM 21 Court's admonition.  Maybe we'll cut out a little bit more and
10:13AM 22 save a little bit more for Phase Two.  But I think -- I guess,
10:13AM 23 where my big point is -- because this is going to come up at
10:13AM 24 trial -- we don't want to be standing up at trial arguing and
10:13AM 25 whining and complaining about what is or isn't Phase Two.

10:13AM  1                There may be some things that are purely Phase Two,
10:13AM  2   but I guess what we reject is the notion that these are mutually
10:13AM  3   exclusive.  There can be events, there can be evidence, there can
10:13AM  4   be omissions, whenever they occurred -- I guess they'd almost
10:14AM  5   have to have occurred prior to April 20th -- that relate to both
10:14AM  6   Phase One and Phase Two.  They may be more directly relevant to
10:14AM  7   Phase Two, but they still relate to Phase One.
10:14AM  8            THE COURT:  Unfortunately, Mr. Roy is standing behind
10:14AM  9   you.
10:14AM 10            Come on up, Mr. Roy.
10:14AM 11            MR. ROY:  Well, Steve actually covered at the tail end,
10:14AM 12   I think, effectively what I was going to say.
10:14AM 13                I think Your Honor's solution is a fair solution.
10:14AM 14   We don't want to aggravate the judge any more than any other
10:14AM 15   competent lawyer wants to aggravate the judge.  But, by the same
10:14AM 16   token, what Andy is asking for is a black line litmus yes/no, and
10:14AM 17   we believe that's just inappropriate, especially since this case
10:14AM 18   does involve gross negligence, willful misconduct allegations,
10:14AM 19   and potentially punitive damages.
10:14AM 20                There are context issues that need to be raised
10:14AM 21   that will overlap between the two.  We're not going to abuse it.
10:15AM 22   You have our word.  But, by the same token, to the extent we
10:15AM 23   feel, as competent lawyers, we need to frame an issue with a
10:15AM 24   reference to the second part, we believe that if we believe
10:15AM 25   that's something we need to do, that we should be allowed to do

10:15AM 1    it.
10:15AM 2              THE COURT:  All right.
10:15AM 3              MR. UNDERHILL:  Can I try your patience very shortly?
10:15AM 4              THE COURT:  Come on up.  How are you doing, Mike?
10:15AM 5              MR. UNDERHILL:  Fine, Your Honor.
10:15AM 6                   Just to follow up on Jim, I would just like to give
10:15AM 7    this some context because I don't think the argument is over two
10:15AM 8    pages.  We got your message.  We probably are guessing it came
10:15AM 9    from the Judge, too, so we really get it.
10:15AM 10             THE COURT:  No.  No.
10:15AM 11             MR. UNDERHILL:  Well, anyway, we still get it.
10:15AM 12                  But this is really about what Jim and Steve were
10:15AM 13   arguing about.  We're really arguing evidence at trial.  That's
10:15AM 14   what Andy is trying to do, I think.
10:15AM 15             THE COURT:  I understand.
10:15AM 16             MR. UNDERHILL:  Here is the context.  Jim mentioned
10:15AM 17   gross negligence and willful misconduct.  My focus would probably
10:15AM 18   be more on the quantification than the source control issue, and
10:15AM 19   here is an example:  One way to establish gross negligence and/or
10:16AM 20   willful misconduct is to show the risk that a certain activity
10:16AM 21   involves if you get it wrong.
10:16AM 22                  It's one thing if you do something and you risk
10:16AM 23   spilling a tank full of gasoline on a highway.  It's another
10:16AM 24   thing if you risk a well that can spew 50,000 barrels a day or
10:16AM 25   100,000 barrels a day or 5,000 barrels a day.

10:16AM  1            We will not in Phase One -- certainly, the
10:16AM  2  government will not be arguing to try to say it was this number
10:16AM  3  of barrels per day.  Clearly, a Phase Two issue.  But we
10:16AM  4  strongly, strongly believe that it's fair to point out in the
10:16AM  5  record that this was a spill that lasted 87 days.  That's a fact
10:16AM  6  in the record everybody knows.
10:16AM  7            We're entitled to show that that's a risk that BP
10:16AM  8  should have considered on April 19th, and before that.  That BP
10:16AM  9  should have considered that this is a risk that could entail
10:16AM 10  80,000 barrels a day or 50 a day or 25 or a hundred a day.
10:16AM 11            So, in that context, we would prove up, in part,
10:17AM 12  our gross negligence and willful misconduct case.  To have it
10:17AM 13  cabined off now in an oral motion in limine without having a
10:17AM 14  chance to brief it, I don't think does justice to the parties, to
10:17AM 15  their claims and to the Phase One trial.
10:17AM 16            THE COURT:  This also relates to our earlier discussions
10:17AM 17  about whether there is going to be more than one allocation of
10:17AM 18  fault, whether there is going to be a Phase One allocation
10:17AM 19  followed by a Phase Two allocation.
10:17AM 20            So, Andy, I'm reluctant to give you a definitive
10:17AM 21  ruling on that.  It seems to me that that is something that
10:17AM 22  Judge Barbier is going to have to struggle with when you all
10:17AM 23  present the evidence at trial.
10:17AM 24            But we probably need to give it some further
10:17AM 25  thought, so that every time a witness takes the stand he doesn't

Case 2:10-md-02179-CJB-DPC   Document 5257-2   Filed 01/17/12   Page 10 of 17
43

```
10:17AM   1   have the same argument over Phase One as Phase Two.
10:18AM   2                 Do you all want me to raise this issue with him?
10:18AM   3             MR. LANGAN:  It might be worth briefing.
10:18AM   4             THE COURT:  It might be worth briefing.
10:18AM   5             MR. LANGAN:  It might.  You know our view.  I think, in
10:18AM   6   general, spill preparedness is a Phase Two issue.
10:18AM   7             THE COURT:  I don't disagree.  I think I've said that
10:18AM   8   today.
10:18AM   9             MR. LANGAN:  Right.  That's good.
10:18AM  10             THE COURT:  That's good.
10:18AM  11             MR. LANGAN:  What I'm hearing from my esteemed
10:18AM  12   colleagues is they have evidence they like that they want to put
10:18AM  13   in, in every phase.
10:18AM  14             THE COURT:  Yes.  Well --
10:18AM  15             MR. LANGAN:  Hey, they are good lawyers, but that's
10:18AM  16   what's going on here; and, we're saying no.
10:18AM  17                 For better or for worse, after a lot of discussion,
10:18AM  18   the judge has a three-phase trial, and he ought to hear the
10:18AM  19   evidence once.  Apparently, he may keep the record open for just
10:18AM  20   that reason.
10:18AM  21             THE COURT:  Well, why don't we think about how we could
10:18AM  22   bring this up in a very discrete manner for consideration.  Let's
10:19AM  23   not do anything today, but let's think about how we could bring
10:19AM  24   it up.
10:19AM  25             MR. LANGAN:  Send it back to the drawing board on the
```

```
10:19AM  1    two-page summaries.  That would be good.
10:19AM  2              THE COURT:  I love that.  Thank you, Andy.
10:19AM  3              MR. LANGAN:  Thank you, Your Honor.
10:19AM  4              MS. KUCHLER:  Good morning, Deb Kuchler for Anadarko.
10:19AM  5              THE COURT:  Good morning, Deb.
10:19AM  6              MS. KUCHLER:  I just want to point out on behalf of
10:19AM  7    Anadarko, as a nonoperating party, that the plan proposed by
10:19AM  8    Mr. Underhill would greatly broaden the scope of the Phase One
10:19AM  9    trial as to us.
10:19AM 10              Our role in Phase One will be very, very limited
10:19AM 11    the way it now stands; but, if the U. S. wants to put in evidence
10:19AM 12    of quantification, we haven't even done the discovery on that
10:19AM 13    yet.
10:19AM 14              THE COURT:  No, I think Mike was clear that he doesn't
10:19AM 15    intend to put in evidence of quantification.
10:19AM 16              MS. KUCHLER:  But he was talking in terms of how big the
10:19AM 17    spill was, and that should have been foreseen in advance.
10:19AM 18              THE COURT:  He was using as an example an uncontrolled
10:19AM 19    spill that could have varied from five thousand to a hundred
10:20AM 20    thousand gallons per day; but, that was just by way of example.
10:20AM 21    He's not going to talk about volume of spill in Phase One.
10:20AM 22              MR. UNDERHILL:  I'll stand up and stipulate and say that
10:20AM 23    at trial we're not going to establish -- try to establish it was
10:20AM 24    this number or that number or that number or that one.  We are
10:20AM 25    not going to do that.
```

```
10:20AM  1         MS. KUCHLER:  Great.  Our concern is to keep Phase One
10:20AM  2   surgically confined to the trial plan because that's what we're
10:20AM  3   preparing for on Anadarko's issues.  So we just want to make sure
10:20AM  4   we don't stray into Phase Two when we haven't even done discovery
10:20AM  5   there.
10:20AM  6         THE COURT:  No, I think Mike is clear that he's not
10:20AM  7   going to get into quantification issues in Phase One.
10:20AM  8         MR. FITCH:  But, Judge --
10:20AM  9             Tony Fitch, Anadarko.
10:20AM 10             -- but even on preparedness issues, everything that
10:20AM 11   Mike said, he'll have a chance to make those points and adduce
10:20AM 12   that evidence in Phase Two.
10:20AM 13             Judge Barbier may or may not make some allocation
10:21AM 14   indications after the first trial; but, I think, respectfully,
10:21AM 15   that he is not going to, and I think he cannot make final
10:21AM 16   judgments on allocation until he hears all three phases of the
10:21AM 17   trial.  I don't think anybody wants final judgments running
10:21AM 18   around that can be appealed before these three phases take place.
10:21AM 19         THE COURT:  I agree with that, and it probably won't be;
10:21AM 20   but, we don't know whether he's going to make three
10:21AM 21   allocations --
10:21AM 22         MR. FITCH:  That's right.
10:21AM 23         THE COURT:  -- or whether he's going to make one
10:21AM 24   allocation is my point.
10:21AM 25         MR. FITCH:  I think it doesn't make any difference when
```

|  |  |
|---|---|
| 10:21AM 1 | the government's evidence comes in with respect to that; but, it |
| 10:21AM 2 | certainly makes a difference with respect to the scope of this |
| 10:21AM 3 | first trial, a trial that he thinks is going to be shorter than |
| 10:21AM 4 | we all think, and which also, parenthetically, gives me pause |
| 10:21AM 5 | about getting Phase Two discovery started as soon as possible. |
| 10:21AM 6 | With respect to your suggestion that we figure out |
| 10:21AM 7 | a way to address and resolve this issue, I would like to request |
| 10:22AM 8 | that we figure out that way right now, develop a schedule so that |
| 10:22AM 9 | we can go ahead and ask the judge to prepare it. |
| 10:22AM 10 | Because, for Anadarko, whether we have to |
| 10:22AM 11 | prepare -- no pun intended -- all of these other issues makes a |
| 10:22AM 12 | real financial difference to us today, tomorrow, next week, the |
| 10:22AM 13 | last week of January, the first week of February, and so on. |
| 10:22AM 14 | THE COURT: Well, the way it was raised with me, I think |
| 10:22AM 15 | there were five two-page summaries, Andy, that you sent to us. |
| 10:22AM 16 | MR. LANGAN: Yes, those were the major examples. There |
| 10:22AM 17 | may be other ones, but those were substantial examples. |
| 10:22AM 18 | THE COURT: Why don't you do this, why don't you take |
| 10:22AM 19 | those same five two-page summaries and do a short letter brief |
| 10:22AM 20 | about your issue that these are clearly Phase Two, and you |
| 10:22AM 21 | believe should be presented during Phase Two and not Phase One, |
| 10:23AM 22 | and then the PSC can reply with their argument -- |
| 10:23AM 23 | MR. LANGAN: And maybe the U. S., I guess. |
| 10:23AM 24 | THE COURT: Oh, whoever has got a dog in the hunt. I'm |
| 10:23AM 25 | just talking the two main parties at this point. |

```
10:23AM  1                 -- and discuss your concept of state of mind and
10:23AM  2   the standard of care that you think is applicable to Phase One
10:23AM  3   and to Phase Two.
10:23AM  4                 Is that basically your argument, Mike?
10:23AM  5             MR. UNDERHILL:  Yes.  It's not raised in these
10:23AM  6   particular ones.  I mean, these are almost pure source info.
10:23AM  7                 My solution on the Lynch one, and BP cited us in
10:23AM  8   the footnote -- mine is simple, we'll just take out whatever they
10:23AM  9   object.
10:23AM 10                 I don't give a damn, frankly, on the two-pagers.  I
10:23AM 11   really don't.  If you want to say that's Phase Two, fine.
10:24AM 12             THE COURT:  I was just trying to think of an easy way to
10:24AM 13   frame the issue that we've got before us.  It's not the
10:24AM 14   two-pagers as much as we want to frame the issue so that you all
10:24AM 15   don't have a continuing dispute during Phase One.
10:24AM 16             MR. UNDERHILL:  Here is my problem with that,
10:24AM 17   Your Honor, is I think that -- we're all adults.  Yeah, we're all
10:24AM 18   adults.
10:24AM 19             THE COURT:  Most of us.
10:24AM 20             MR. UNDERHILL:  Most of us are adults.  It doesn't count
10:24AM 21   this weekend, probably, after a few days and the parties.
10:24AM 22                 We're also acutely aware that it's not in our
10:24AM 23   interest, our selfish interest, to upset Judge Barbier by doing
10:24AM 24   something that he doesn't want.  We got that.  That's in our
10:24AM 25   self-interest not to do that.
```

```
10:24AM  1              On the other hand, I really don't think we can make
10:24AM  2   a blanket ruling.  I just don't think it works.
10:24AM  3              So we can brief this until kingdom come, but I
10:24AM  4   think it's going to have to be on a case-by-case basis, which I
10:24AM  5   suspect is going to be very few times.
10:24AM  6              I've told you, basically, part of what my argument
10:25AM  7   is.  It's probably going to be in the form of one or two
10:25AM  8   documents or whatever.  Just say, look, the range could have been
10:25AM  9   from here to here.  That's all I need.  From 30,000 to a hundred
10:25AM 10   gallons, that's all I need.
10:25AM 11              I've shown that they've got a massive risk they
10:25AM 12   should have considered on April 19.  There may be other ways it
10:25AM 13   comes up.
10:25AM 14              So, while I respect the effort to try to find a way
10:25AM 15   to get it to a head, I really think this is going to have to be
10:25AM 16   something Judge Barbier is going to rule on at trial.  If it's
10:25AM 17   some point where he thinks that somebody -- my client, me, PSC,
10:25AM 18   anybody else -- is overstepping the bounds, he's probably going
10:25AM 19   to say, you've stepped in that puddle one too many times, please
10:25AM 20   don't do it again, and we're not.
10:25AM 21            THE COURT:  Well, I guess we'll leave it here.  Andy, if
10:25AM 22   you would like to letter brief it, why don't you do that, and if
10:25AM 23   anybody wants to reply to it; but, at least we'll put it on
10:25AM 24   Judge Barbier's radar prior to trial, so that he can either rule,
10:26AM 25   which I suspect he won't, or he can have it on his radar so that
```

|         |    |                                                                      |
|---------|----|----------------------------------------------------------------------|
| 10:26AM | 1  | he knows that it's going to be an issue that comes up during         |
| 10:26AM | 2  | Phase One, during the presentation of the plaintiffs' case.          |
| 10:26AM | 3  | MR. LANGAN:  Could we do that by the motion in limine                |
| 10:26AM | 4  | deadline?  Within a week or something like that, or no later than    |
| 10:26AM | 5  | the motion in limine deadline?                                       |
| 10:26AM | 6  | THE COURT:  Yes, motion in limine deadline.                          |
| 10:26AM | 7  | MR. LANGAN:  Thank you.                                              |
| 10:26AM | 8  | MR. ROY:  Just as one last comment from me, what Andy is             |
| 10:26AM | 9  | really asking is to have a gag order on an argument that counsel     |
| 10:26AM | 10 | has been asked to make by the Court.  Yes, Your Honor, that's        |
| 10:26AM | 11 | exactly what it is.                                                  |
| 10:26AM | 12 | When the Court requested that counsel for all                        |
| 10:26AM | 13 | parties give their argument in one or two pages of an advocacy       |
| 10:26AM | 14 | piece, call it a two-page summary or whatever, he was asking, how    |
| 10:26AM | 15 | do you interpret and what do you interpret as significant that I     |
| 10:27AM | 16 | ought to know?                                                       |
| 10:27AM | 17 | Now, I'm not aware of any case law that in advance                   |
| 10:27AM | 18 | of a trial would enable a party to get a litmus test to say what     |
| 10:27AM | 19 | I can or cannot argue in a bench trial to a court when the Court     |
| 10:27AM | 20 | has invited that.                                                    |
| 10:27AM | 21 | So I would part by saying, I think where you                         |
| 10:27AM | 22 | started, which is you're not going to try to draw a bright line      |
| 10:27AM | 23 | litmus test, but caution, be careful of what you do, you don't       |
| 10:27AM | 24 | want to aggravate the judge, that's good sense, and it's             |
| 10:27AM | 25 | certainly what we would intend.                                      |

```
10:27AM  1            THE COURT:  I always believe that's good advice.
10:27AM  2            MR. ROY:  Yes, ma'am.  We do, too.
10:27AM  3            THE COURT:  All right.  Okay, so this short agenda has
10:27AM  4  blossomed.
10:27AM  5            Next up, we're going to compliment Kerry, who has
10:27AM  6  been very quiet this morning.  Please note his purple shirt.
10:28AM  7            MR. MILLER:  It goes with Mr. Roy's purple jacket.
10:28AM  8            THE COURT:  Exactly.  You should have lent him your
10:28AM  9  shirt.  That would have been really resplendent.
10:28AM 10            Here is the deal.  In order to facilitate the ready
10:28AM 11  recognition of additions and deletions from the final exhibit
10:28AM 12  list, this is what Kerry has proposed, and I think it's a fine
10:28AM 13  proposal.
10:28AM 14            The parties shall identify on the final exhibit
10:28AM 15  list the exhibits which have been removed from and added to the
10:28AM 16  good faith exhibit list.  If a party deletes an exhibit from the
10:28AM 17  good faith exhibit list, the corresponding TREX number shall
10:28AM 18  remain unassigned.  The parties shall continue to circulate their
10:28AM 19  revised final exhibit list in Excel format, as well as the
10:29AM 20  formally filed PDF.
10:29AM 21            We'll go ahead and get an order out covering this;
10:29AM 22  but, Kerry, thank you for coming up with this, and I think it's a
10:29AM 23  good proposal.
10:29AM 24            MR. MILLER:  Thanks, Your Honor.
10:29AM 25            Just 10 seconds of background.  The reason why is
```