UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>This Document Relates to: *All Cases*<br><br>(Including No. 10-2771) | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

OPPOSITION TO BP'S MOTION
TO EXCLUDE HAYWARD TESTIMONY

Plaintiffs respectfully submit the following memorandum in opposition to BP's MOTION IN LIMINE TO PRECLUDE THE USE OF DEPOSITION TESTIMONY ARISING FROM IMPROPER AND OBJECTIONABLE QUESTIONING [Doc 5118]:

MAY IT PLEASE THE COURT:

The Court should deny BP's motion to preclude the use of relevant deposition testimony that BP now claims was the result of "improper" or "objectionable" questioning. First and foremost, BP confuses what might have been appropriate objections to the scope of discovery with evidentiary standards of *admissibility*. Moreover, there was nothing "improper" or "objectionable" about the questioning of Mr. Hayward. Indeed, Magistrate Judge Shushan was present for the entire deposition, and was never called upon to terminate the deposition or otherwise intervene. Finally, the determination of legal duties and responsibilities frequently involves mixed questions of fact and law. That a lay witness testifies, based on his own personal knowledge and experience, with respect to a "responsibility" or a "standard of care" that has been established within a company or industry, does not render the testimony inadmissible as a

1

"legal conclusion". Rather, it assists the Court, from a factual standpoint, in making the ultimate determination.

By definition, improper questioning is improper. But such evidentiary exclusion is not the appropriate subject of a motion *in limine*. Particularly in a bench trial, the Court is able to review the testimony submitted by the parties, and determine the weight, if any, to which such evidence should be accorded.

For these reasons, and for the reasons further outlined below, BP's motion should be denied.

**The Questioning of Tony Hayward Was Fully Supported by the Record**

Nearly 300 depositions have been taken in this case. The parties have been to London and back (twice), regularly taking multiple depositions in both London and the United States on the same day. Only rarely have the parties contacted the Court during a deposition. And even when the Court has been contacted, no one has suggested that a deposition was being conducted in bad faith.

Now, less than two months before trial, BP surprisingly claims that "bad faith" was a common part of the depositions. As Exhibit A to its motion, BP offers excerpts from the deposition of Tony Hayward.[1]

Significantly, BP was represented by three attorneys at the deposition, including one of BP's lead attorneys in this case and the Associate General Counsel for BP America. (Hayward Dep. at 3.) Additionally, Hayward was represented by two personal attorneys. (*Id*.) In total, BP

---

[1] Although BP claims that there was "bad faith" conduct during multiple depositions in this case, the only deposition BP cites in support of its argument is Hayward's. Therefore, this opposition only addresses his deposition.

2

and Hayward had nearly 150 years of legal experience representing them at the deposition. Notably, Magistrate Judge Shushan was also present the entire two days. (*Id.* at 2.)

Even disregarding the fact that BP's attorneys never asked Judge Shushan to terminate the deposition or otherwise intervene,[2] the questions to which BP now objects were fully supported by the record.

For example, BP argues that it was "improper" to question Hayward on his veracity during his congressional testimony:

> And then you proceeded to testify falsely under oath on multiple material issues, didn't you, Dr. Hayward.
>
> When you took the oath before Congress on June 17th of 2010, the last thing you wanted to admit was that since 2007, when you became CEO, and despite what had happened at Grangemouth, Texas City, and Prudhoe Bay, you had done exactly the same thing as Lord Browne, you had aggressively cut cost, didn't you?

(Doc. 5118-1 at 2.) However, Hayward's congressional testimony, when compared to the record in this case, shows that Hayward, at best, has a unique view of the truth, and therefore, it was proper to question his veracity.

Specifically, Hayward testified to Congress that BP was conducting a "full and comprehensive investigation" of the Macondo blowout and that "it would cover everything." (Hayward Dep. 26-27; TREX-06000 at 67, 90.) In contrast, the record in this case conclusively shows that BP did not conduct a "full and comprehensive investigation" of the Macondo blowout that "covered everything." Instead, contrary to BP's own policies and procedures, BP knowingly excluded systemic and management causes of the blowout from its investigation. (Hayward Dep. at 41-46; Doc. 5117-1 at 2.) Hayward knew that BP had excluded systemic and

---

[2] BP did ask Judge Shushan to limit Hayward's deposition on other grounds. Namely, that due to the settlement between BP and MOEX, Anadarko could not use MOEX's time allocation during its examination of Hayward.

management causes from its investigation when he testified to Congress because he was familiar with the terms of reference for BP's investigation. (Hayward Dep. at 31.) In fact, during his deposition, he ultimately conceded that BP's investigation was not "full and comprehensive" and did not "cover everything:"

> Q. . . . Is it your testimony here today under oath that you did conduct a full and complete investigation that covered systemic causes?
>
> * * * * * * * * * *
>
> A.   We – we conducted a full investigation into the cause of the accident, and as you identified, ***it did not look at the overarching Management process at that time.***

(*Id.* at 38:17-38:25)(emphasis added.)

Hayward was similarly untruthful when Congress questioned him on BP's spending on safety. In this regard, Hayward told Congress that "we've invested billions of dollars" and "we've recruited thousands of people." (Hayward Dep. at 103; TREX-06000 at 37.) Congress was rightfully concerned about BP's spending on safety. Investigations into BP's Grangemouth, Texas City, and Prudhoe Bay incidents all concluded that BP had cut safety spending leading up to the incidents. (Hayward Dep. at 90-92; TREX-05946 at 60, TREX-06011 at 10, TREX-06012 at 25, 137.) Moreover, there was good reason to question Hayward during his deposition on whether he had been truthful to Congress on this issue. Just five days before the Macondo blowout, Hayward bragged to shareholders that he had cut BP's costs by more than $4 billion during 2009 and had reduced "headcount" by 7,500. (Hayward Dep. at 118-19, TREX-06017 at 3.)

Hayward's untruthfulness was exposed throughout his deposition, even on seemingly inconsequential issues. For instance, Hayward initially denied having a private, personal email account while he was at BP:

4

> Q. Did you have a – one or more E-mail accounts when you were at the BP?
>
> A. No.
>
> \* \* \* \* \* \* \* \* \* \*
>
> Q. Did you also have a private E-mail account?
>
> A. No.

(Hayward Dep. at 528.)

Later during his deposition, Hayward was confronted with a private, personal email account he maintained while working at BP. Caught in the act, Hayward admitted that he had lied about having the account:

> Q. Well, then, whose E-mail address is . . . "H-a-y-w-a-r-a-b-1@yahoo.com?
>
> A. It was a – it was an account I never used . . .
>
> \* \* \* \* \* \* \* \* \* \*
>
> Q. Why did you testify under oath twice [that you did not have a private email account]?
>
> A. I'm sorry but I never used it, so it – as far as I was concerned, ***it was not relevant because it was never used.***

(Hayward Dep. at 892-93)(emphasis added.)

Under these circumstances, given the contradictions between Hayward's congressional testimony and the record in this case and the fact that Hayward actually lied during his deposition, questioning Hayward on his veracity was not improper.

The other lines of questioning BP claims were in bad faith were similarly proper. For instance, BP complains that Hayward was asked:

> . . . do we need to guess what BP said in the wake of this event [the Prudhoe Bay pipeline spill], or will you go ahead and agree that they said the same thing they had been saying in every other disaster and every other criminal plea - - that it would never happen again, would you agree?

5

(Doc. 5118-1 at 3.) However, BP fails to mention that following the Prudhoe Bay oil spill, the President of BP Alaska publicly stated that BP needed to "put in place systems . . . to make sure an incident like this does not happen again." (Hayward Dep. at 78-79; TREX-06009 at 4.) BP officials made similar statements following a criminal conviction in Alaska resulting from illegal dumping of toxic waste, the Grangemouth incidents, the Texas City explosion, and the Macondo blowout. (Hayward Dep. at 61-63, 72-73; TREX-06005 at 1; TREX-06007 at 1). Thus, questioning Hayward regarding these prior statements by BP was appropriate.

**Lay Testimony is Appropriate to Establish a Company's Responsibilities to its Customers, the Public, the Environment, and Third Parties**

Lay witnesses can frequently testify to standards and responsibilities from their own personal knowledge and experience. To the extent that they are offering "opinions" on such matters, they are admissible when grounded upon their own factual experiences, as opposed to scientific or technical opinions that might be applied forensically by an expert to the underlying facts of a case. Indeed, under Rule 701 of the Federal Rules of Evidence, the "basic approach to opinions . . . is to admit them when helpful to the trier of fact." FED. R. EVID. 701 (Advisory Committee Notes). This liberal approach to the admissibility of opinions reflects the "practical impossibility" of distinguishing between "facts" and "opinions" under many circumstances. (*Id.*) Consequently, Rule 701 embraces the idea that courts ordinarily should admit relevant opinions and leave it to the adversarial process and cross-examination to ferret out weaknesses in the opinions.[3] (*Id.*)

---

[3] Rule 704 of the Federal Rules of Evidence further evidences the liberal approach to the admission of opinions by making it clear that "[a]n opinion is not objectionable just because it embraces an ultimate issue." FED. R. EVID. 704 (2010).

In this case, many witnesses were able to provide helpful and relevant facts and/or opinions regarding BP's responsibilities for the Macondo well. Take Tony Hayward for example.[4] Hayward was the Chief Executive of BP, a member of the Board of Directors, leader of BP's Group Operations and Risk Committee, and was the "ultimate in the safety chain of command" at BP. (Hayward Dep. at 17, 29, 39, 108.) Moreover, he worked as a geologist for BP for nearly 10 years. (*Id.* at 802.) Consequently, he was in a unique position to provide relevant facts and opinions regarding BP's responsibilities.

BP argues that questions posed to Hayward regarding BP's responsibilities for the Macondo well called for "legal conclusions" and, as a result, the testimony provided in response should be excluded. BP's argument is misplaced, and reflects a misguided understanding of the evidentiary laws related to legal conclusions.

With legal conclusions, the concern is for questions and testimony that are phrased in terms of "inadequately explored legal terms." *Brazos River Auth. v. G.E. Ionics, Inc.*, 469 F.3d 416, 435 (5th Cir. 2006); FED. R. EVID. 704 (Advisory Committee Notes). Stated differently, the inquiry on admissibility "should focus on whether the opinion is phrased in . . . legal [terms] that the . . . [fact-finder] does not understand based upon its own experiences . . ." *Richman v. Sheahan*, 415 F.Supp. 2d 929, 945 (N.D.Ill. 2006). In this case, by contrast, the questions that were posed to Hayward regarding BP's responsibility for the Macondo well were not based on "inadequately explored legal terms."

For starters, *responsibility* is not a legal term. It does not have a separate, distinct, and specialized meaning in the law that is different from how it is used in everyday life. It is a word that everybody understands. Therefore, questions related to BP's responsibility for the Macondo

---

[4] Here again, the arguments in BP's motion were limited to examples from Hayward's deposition. Therefore, this opposition responds in kind.

well are permissible and do not require a legal conclusion. *See Fiataruolo v. United States*, 8 F.3d 930, 942 (2nd Cir. 1993) (witness could offer opinion on defendant's responsibilities with respect to collection of income tax from contractor).

Even if "responsibility" were a specialized legal term, the questions that were posed to Hayward were appropriate. A question is not improper simply because it includes a legal term. Rather, in determining admissibility, the focus is on context and whether the question is tied to an "*inadequately explored* legal term." *Brazos*, 469 F.3d at 435 (emphasis added). So long as "[t]he legal terms used are not so complex or shaded with subtle meaning as to go beyond the understanding of the average person," a question incorporating a legal term is permissible.

Similar to the permissible "mental capacity" question outlined in the Advisory Committee Notes to Rule 704,[5] the questions Hayward was asked (and to which BP objects) regarding BP's responsibilities for the Macondo well were all tied to specific facts and circumstances, such as:

- Whether Hayward monitored and supervised the system that was responsible for the safety management failures at Macondo;

- Whether BP was responsible for the performance of the Deepwater Horizon's blowout preventer;

---

[5] *See* ADVISORY COMMITTEE NOTES, Fed. Rule Evid. 704 (2010); *see also, Karns v. Emerson Elec. Co.,* 817 F.2d 1452, 1459 (10th Cir. 1987); *United States v. Izydore,* 167 F.3d 213, 218 (5th Cir. 1999) (allowing witness to give opinion that money was not "legally taken"); *United States v. Estrada-Fernandez,* 1999 WL 33945742, *2 (5th Cir. Dec. 14, 1999) (it was not plain error to allow witness to testify on whether mop or broom handle was a "dangerous weapon"); *United States v. Beaumont,* 972 F.2d 553, 565 (5th Cir. 1992) (witness could give opinion on whether defendant's were involved in "conspiracy"); *Mobil Exploration & Producing v. A-Z Grant Int'l Co.,* 1996 WL 194931, *3 (E.D.La. Apr. 22, 1996) (witness could testify on Coast Guard regulations and whether defendant's conduct was consistent with regulations); *Samples v. City of Atlanta*, 916 F.2d 1548 (11th Cir. 1990) (permitting questions on whether a police officer acted "reasonably"); *United States v. Logan*, 641 F.2d 860, 863 (10th Cir. 1981) (allowing questions related to whether defendant "improperly" transferred funds); *Helflin v. Stewart County*, 958 F.2d 709, 715 (6th Cir. 1992) (permitting opinion on whether defendants acted with "deliberate indifference").

- Whether BP was responsible for making sure the Deepwater Horizon's blowout preventer was maintained and repaired;

- Whether BP's well site leaders were responsible for interpreting the negative pressure test; and

- Whether BP was responsible for making sure Transocean's drillers and toolpushers could interpret a negative pressure test.

(Doc. 5118-1 at 5.) Thus, even if "responsibility" were a legal term (which it is not), the questions Hayward was asked provided specific context and, thus, were not based on an "inadequately defined legal term."

Nonetheless, BP's argument fails for a more pragmatic reason. As BP notes in its motion, the major concern with legal conclusions is that they may usurp the province of the jury. (Doc. 5118-1 at 3-4.) The worry is that legal conclusions embracing inadequately explored legal terms will confuse the jury or simply tell the jury what result to reach. *See, e.g., Karns*, 817 F.2d at 1459. In this case, however, there is no jury. This is bench trial. As such, there is no need for the Court to make in limine determinations regarding what testimony constitutes inadmissible legal conclusions.[6] Instead, the more orderly approach would be for the Court to make those determinations at the conclusion of the trial. Otherwise, the Court unnecessarily will be burdened with making pre-trial evidentiary decisions on testimony that ultimately may play no role in its judgment.

**BP's Objections Have Been Waived**

First, it should be noted that BP's motion relies almost exclusively on the *discovery* provisions of the Rules of Civil Procedure, as opposed to the Rules of Evidence regarding

---

[6] *See, e.g. United States v. Lee,* 541 F.2d 1145, 1146 (5th Cir. 1976) ("exclusionary law of evidence . . . need not be applied in limine where hearing is before a judge, not a jury"); *Cramer v. Sabine Trans. Co.,* 141 F.Supp. 2d 727, 733 (S.D.Tex. 2001) (in a bench trial, motions in limine are "asinine").

*admissibility*. Nevertheless, even assuming that "improper" questioning provides a basis for the exclusion of otherwise admissible testimony, Plaintiffs would respectfully submit that such evidentiary objections have been waived. Rule 30 very clearly provides:

> (3) Motion to Terminate or Limit
>
> (A) Grounds. At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.

FED. R. CIV. P. 30 (2007.)

Likewise, both BP and Hayward's attorneys undoubtedly knew that Rule 32 requires that objections to bad faith conduct are waived if not made during the deposition:

> (d) Waiver of Objections.
>
> \* \* \* \* \* \* \* \* \*
>
> (3) To the Taking of the Deposition.
>
> \* \* \* \* \* \* \* \* \*
>
> (B) Objection to an Error or Irregularity. An objection to an error or irregularity at an oral examination is waived if:
>
> (i) it relates to the *manner of taking the deposition . . . a party's conduct*, or other matters that might have been corrected at that time; and
>
> (ii) it is not timely made *during the deposition*.

FED. R. CIV. P. 32 (emphasis added).

Despite the clear provisions of Rules 30 and 32, neither BP nor Hayward ever objected to how Hayward's deposition was conducted. Nor did they request Judge Shushan to terminate or limit the deposition based on how the deposition was being conducted. Accordingly, BP waived its objection that Mr. Hayward was unfairly "harassed" or "oppressed".

10

**Conclusion**

In sum, BP's request for the pre-trial exclusion of deposition testimony related to BP's responsibilities for the Macondo well is misplaced and poorly timed. The exclusion of such testimony is not supported by the Federal Rules of Evidence or applicable case law. Moreover, BP's request for a pre-trial determination on the admissibility of this testimony ignores the practical realities of the trial (*i.e.,* no jury) and would unnecessarily burden the Court. For these reasons, BP's request for the pre-trial exclusion of evidence related to BP's responsibilities for the Macondo well should be denied.

This 17th day of January, 2012.


Respectfully submitted,

| | |
|---|---|
| /s/   Stephen J. Herman | /s/ James Parkerson Roy |
| **Stephen J. Herman**, La. Bar No. 23129 | **James Parkerson Roy**, La. Bar No.11511 |
| HERMAN HERMAN KATZ & COTLAR LLP | DOMENGEAUX WRIGHT ROY & EDWARDS  LLC |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhkc.com | E-Mail: jimr@wrightroy.com |
| *Plaintiffs Liaison Counsel* | *Plaintiffs Liaison Counsel* |


**PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Brian H. Barr | Robin L. Greenwald |
| LEVIN, PAPANTONIO, THOMAS, | WEITZ & LUXENBERG, PC |
| MITCHELL, ECHSNER & PROCTOR, PA | 700 Broadway |
| 316 South Baylen St., Suite 600 | New York, NY  10003 |
| Pensacola, FL 32502-5996 | Office:  (212) 558-5802 |
| Office:  (850) 435-7045 | Telefax: (212) 344-5461 |
| Telefax: (850) 436-6187 | E-Mail:  rgreenwald@weitzlux.com |
| E-Mail: bbarr@levinlaw.com | |
| | Rhon E. Jones |
| Jeffrey A. Breit | BEASLEY, ALLEN, CROW, METHVIN, |
| BREIT DRESCHER & IMPREVENTO | PORTIS & MILES, P. C. |
| Towne Pavilion Center II | 218 Commerce St., P.O. Box 4160 |

600 22nd Street, Suite 402  
Virginia Beach, Virginia 23451  
Office:  (757) 670-3888  
Telefax: (757) 670-3895  
E-Mail: jbreit@bdbmail.com  

Elizabeth J. Cabraser  
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP  
275 Battery Street, 29th Floor  
San Francisco, CA  94111-3339  
Office:  (415) 956-1000  
Telefax: (415) 956-1008  
E-Mail:  ecabraser@lchb.com  

Philip F. Cossich, Jr.  
COSSICH, SUMICH, PARSIOLA & TAYLOR  
8397 Highway 23, Suite 100  
Belle Chasse, LA  70037  
Office:  (504) 394-9000  
Telefax: (504) 394-9110  
E-Mail:  pcossich@cossichlaw.com  

Robert T. Cunningham  
CUNNINGHAM BOUNDS, LLC  
1601 Dauphin Street, P. O. Box 66705  
Mobile, AL  36660  
Office:  (251) 471-6191  
Telefax: (251) 479-1031  
E-Mail:  rtc@cunninghambounds.com  

Alphonso Michael "Mike" Espy  
MORGAN & MORGAN, P.A.  
188 East Capitol Street, Suite 777  
Jackson, MS 39201  
Office: (601) 949-3388  
Telefax: (601) 949-3399  
E-Mail:  mike@mikespy.com  

Calvin C. Fayard, Jr.  
FAYARD & HONEYCUTT  
519 Florida Avenue, SW  
Denham Springs, LA  70726  
Office:  (225) 664-4193  

Montgomery, AL 36104  
Office:  (334) 269-2343  
Telefax: (334) 954-7555  
E-Mail:  rhon.jones@beasleyallen.com  

Matthew E. Lundy  
LUNDY, LUNDY, SOILEAU & SOUTH, LLP  
501 Broad Street  
Lake Charles, LA  70601  
Office:  (337) 439-0707  
Telefax: (337) 439-1029  
E-Mail:  mlundy@lundylawllp.com  

Michael C. Palmintier  
deGRAVELLES, PALMINTIER, HOLTHAUS & FRUGE'  
618 Main Street  
Baton Rouge, LA  70801-1910  
Office:  (225) 344-3735  
Telefax: (225) 344-0522  
E-Mail:  mpalmintier@dphf-law.com  

Paul M. Sterbcow  
LEWIS, KULLMAN, STERBCOW & ABRAMSON  
601 Poydras Street, Suite 2615  
New Orleans, LA  70130  
Office:  (504) 588-1500  
Telefax:  (504) 588-1514  
E-Mail:  sterbcow@lksalaw.com  

Scott Summy  
BARON & BUDD, P.C.  
3102 Oak Lawn Avenue, Suite 1100  
Dallas, TX  75219  
Office:  (214) 521-3605  
Telefax: (214) 599-1172  
E-Mail:  ssummy@baronbudd.com  

Mikal C. Watts  
WATTS GUERRA CRAFT, LLP  
Four Dominion Drive, Building 3, Suite 100  
San Antonio, TX 78257

| | |
|---|---|
| Telefax: (225) 664-6925<br>E-Mail: calvinfayard@fayardlaw. | Office: (210) 447-0500<br>Telefax: (210) 447-0501<br>E-Mail: mcwatts@wgclawfirm.com |
| Ervin A. Gonzalez<br>COLSON HICKS EIDSON<br>255 Alhambra Circle, Penthouse<br>Coral Gables, FL 33134<br>Office: (305) 476-7400<br>Telefax: (305) 476-7444<br>E-Mail: ervin@colson.com | Conrad S.P. "Duke" Williams<br>WILLIAMS LAW GROUP<br>435 Corporate Drive, Suite 101<br>Maison Grand Caillou<br>Houma, Louisiana 70360<br>Office: (985) 876-7595<br>Fax No. (985) 876-7594<br>E-Mail: duke@williamslawgroup.org |
| Joseph F. Rice<br>MOTLEY RICE LLC<br>28 Bridgeside Blvd.<br>Mount Pleasant, SC 29464<br>Office: (843) 216-9159<br>Fax No. (843) 216-9290<br>E-Mail: jrice@motleyrice.com | |

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Memorandum has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of January, 2012.

s/ James Parkerson Roy and Stephen J. Herman