UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>This Document Relates to: *All Cases*<br><br>(Including No. 10-2771) | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

## OPPOSITION TO MOTIONS *IN LIMINE* TO PRECLUDE ADVERSE INFERENCES BASED ON THE FIFTH AMENDMENT

In accordance with this Court's November 14, 2011 Order setting the briefing schedule for motions *in limine,* Plaintiffs respectfully respond to (i) BP's Motion *in Limine* To Limit The Drawing Of Adverse Inferences From Testimony In Which A Witness Has Invoked The Fifth Amendment [Doc 5112]; (ii) Transocean's Motion *in Limine* to Preclude Any Adverse Inference Against Transocean [Doc 5111]; (iii) M-I's Motion *In Limine* to Exclude Adverse inferences Against M-I Based On Fifth Amendment Invocations By Non-M-I Witnesses [Doc 5120]; and (iv) Halliburton's Letter Brief regarding the Scope of Adverse Inferences Drawn From Invocation of Fifth Amendment Privilege Against Self-Incrimination. For the reasons stated herein, Defendants' motions should be denied.

### Background

To date, nineteen witnesses have invoked the Fifth Amendment. Three of these deponents were employed by BP, eleven by Transocean, three by Halliburton, and two by OCS. Notably, the BP witnesses (Kaluza, Hafle, Morel and Vidrine – who has not invoked the Fifth Amendment only because he was too ill to be deposed) are the two company men on the rig and

1

the two lead engineers responsible for the design of the well and the temporary abandonment plan - *i.e.,* the four people who are in the best position to explain from personal knowledge what went on. Each of these deponents invoked the Fifth Amendment in response to every substantive question posed to them.[1]

In their motions *in limine*, Defendants BP, Transocean, Halliburton and M-I seek to preclude or limit adverse inferences against them arising from the invocations of the Fifth Amendment by these deponents. BP argues that this Court cannot draw inferences against it from the invocation of the Fifth Amendment by Non-BP employees, but acknowledges that there are situations in which negative inferences may be drawn against it where its employees have taken the Fifth. Transocean claims that the Court cannot draw adverse inferences against it as a result of its employees' taking the Fifth because those employees have an "adverse" relationship with Transocean. Halliburton claims that the Court cannot draw adverse inferences against it for invocations by Non-Halliburton employees. M-I similarly takes the position that it cannot be subjected to adverse inferences because none of the invoking witnesses were M-I employees.

In their memoranda, Defendants argue in favor of a bright-line rule that the invocation of the privilege by non-employees – or employees with interests adverse to their employers – cannot give rise to an adverse inference against them. Such a bright-line conclusion is not sound.

First, there is no question that, in this civil case, the Court is permitted to draw adverse inferences against parties from a non-party witness's refusal to testify on self-incrimination grounds. Second, whether a particular invoking witness is or was an employee of the party against which the inference is to be drawn is not decisive. The Court may draw an inference against a party even in the absence of an employment relationship between the party and the

---

[1] Some of these witnesses did testify before the Joint Investigation Team ("JIT") and, as Plaintiffs have argued in response to previous motions *in limine* pending before the Court, that testimony should be admissible at trial.

invoking witness. Further, and contrary to Transocean's argument, the invocation by witnesses employed by Transocean at the time of the explosion may be used against Transocean, despite the existence of a strained or terminated relationship between it and those employees thereafter.

Under the circumstances of this case, the Court may draw adverse inferences from the invocations against these Defendants, provided that the questioning is relevant and otherwise meets the requirements of the Federal Rules of Evidence.

**The Court May Draw Adverse Inferences from the Invocation by Non-Parties.**

As BP acknowledges, the Fifth Amendment "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976). Further, evidence that a non-party invoked the Fifth Amendment is not barred by the Constitution. *FDIC v. Fidelity & Deposit Co. of Maryland,* 45 F.3d 969, 977 (5th Cir. 1995). "Such evidence is admissible if it is relevant and not otherwise prohibited by the rules of evidence. " *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.,* 2006 U.S. Dist. LEXIS 8723 (E.D. La. Mar. 6, 2006) (citing *FDIC, supra*). It follows that the Court may draw adverse inferences against parties based on the invocation of the privilege by non-parties. *FDIC,* 45 F.3d at 977 (civil jury can draw a negative inference against party from non-party's invocation of Fifth Amendment); *RAD Services, Inc. v. Aetna Casualty & Surety Co.,* 808 F.2d 271, 275 (3d Cir. 1986) ("policies underlying the privilege . . . allow evidence of a non-party's refusal to testify"); *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 521 (8th Cir. 1984) ("The policies supporting the Fifth Amendment apply with even less force when a non-party witness testifies in a civil proceeding and thus, the Amendment should not work to preclude an adverse inference in this situation."); *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 415 F. Supp. 2d 628, 633

(E.D. Va. 2006) ("court may constitutionally permit a jury to draw an adverse inference from the refusal to testify on Fifth Amendment grounds by either a witness or party in a civil suit").  "A non-party's silence in a civil proceeding implicates Fifth Amendment concerns to an even lesser degree." *RAD Services, Inc.*, 808 F.2d at 275 (citing *Rosebud Sioux Tribe*, 733 F.2d at 521).[2]  "In general, the decision as to whether to admit a person's invocation of the Fifth Amendment into evidence is committed to the discretion of the district court." *Hinojosa v. Butler,* 547 F.3d 285, 291-292 (5th Cir. 2008) (quoting *FDIC,* 45 F.3d at 977); *Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 210 (5th Cir.1983)).

BP suggests that even the invocations of its employees may not be used against it if their invocations are not significant in the context of the litigation as a whole, although it admits that its invoking employees were involved in key events occurring at the Macondo well (BP Memorandum, p. 6).  BP identifies no specific witness or testimony in making this argument and, as such, Plaintiffs respond simply that employee invocations of the Fifth Amendment are generally deemed admissible against their employers. *See FDIC,* 45 F.3d at 978, n. 4; *RAD Services,* 808 F.2d at 275.

**The Fifth Circuit Does Not Require The Existence Of An Employment Relationship.**

Defendants argue generally that invocations by witnesses not employed by them cannot be used against them.  Defendants ignore the plain tenets of the Fifth Circuit's opinion in *FDIC, supra,* which is decisive here.  In *FDIC*, the Court affirmed a judgment in favor of the FDIC

---

[2] In *RAD Services*, a company sued its insurer to recover costs incurred in disposing of hazardous waste materials. The insurer disavowed coverage, asserting that the company violated the law by intentionally dumping the hazardous materials. *Id.* at 272.  At trial, the insurer read to the jury deposition transcripts of a company official and a managing employee, in which the deponents invoked their Fifth Amendment rights; it was not clear, however, whether the invoking witnesses were still employed by the company.  *Id.* at 273-274.  The court instructed the jury that it could infer that the witnesses would have answered the insurer's questions adversely to the company.  The Eighth Circuit affirmed, noting that even if the witnesses were no longer employed by the company, the court could draw negative inferences from their invocations.  *Id.* at 276-277.

against a surety for a defunct bank.  The bank went bankrupt as a result of the fraudulent acts of its chief lending officer.   The bank filed a claim with its surety, which the surety denied.  The bank filed suit against the insurer.  The bank failed, after which the FDIC took receivership of the bank and stepped into the bank's shoes. *Id.* at 973.  To recover under the bond, the FDIC had to show fraudulent acts on the part of the lending officer and causation between those acts and the bank's losses.  There were several witnesses who purportedly had relationships with the lending officer, and these witnesses invoked the Fifth Amendment at trial.   The Court held that these invocations could be the basis of a negative inference against the insurer. *Id.* at 976-977.

In *FDIC*, the Court rejected the insurer's argument that inferences from the invocation of the Fifth Amendment are not allowed when a non-party asserts the privilege.  Instead, the Court held that there was no constitutional bar to the admission of the evidence and it was therefore admissible "if relevant and not otherwise prohibited by the rules." *Id.* at 977.   The insurer argued that the non-party witnesses' invocation could not be used against it because they were not its agents or employees.   The insurer's "concern" was that "a non-party who stands in no special relationship to the party at the time of trial may purposefully invoke the privilege solely to discredit the party. The classic example would be a disgruntled former employee who invokes the privilege to hurt his former employer." *Id.*[3] The Court rejected this argument, citing decisions allowing the admission of invocations by former employees and noting that the "absence of an opportunity to cross-examine the invoker and the lack of proof regarding his continued loyalty to the employer … cannot per se exclude from the jury the witness's refusal to testify." *Id* (quoting *RAD Services*, 808 F.2d at 276) (citing *Cerro Gordo Charity v. Fireman's Fund Am. Life Ins.*

---

[3] In its Memorandum, Transocean takes this language out of context, citing it to state that the Court in *FDIC* "identified as critical the relationship between a non-party witness and the party against whom an adverse inference is sought." (TO Memorandum, p. 2).  As the opinion makes clear, this language is the Court's description of the insurer's argument, which the Court ultimately rejected.

*Co.*, 819 F.2d 1471, 1481 (8th Cir.1987); *Brink's Inc. v. City of New York,* 717 F.2d 700, 707-10 (2d Cir.1983)).[4]  Hence, the Court refused to "adopt a rule that would categorically bar a party from calling, as a witness, a non-party who had no special relationship to the party, for the purpose of having that witness exercise his Fifth Amendment right." *Id.*  Quoting the Third Circuit's decision in *RAD,* the Court reasoned as follows:

> First, a witness truly bent on incriminating [a party] would likely offer damaging testimony directly, instead of hoping for an adverse inference from a Fifth Amendment invocation. Second, the trial judge could test the propriety of an invocation to ensure against irrelevant claims of privilege. Third, counsel may argue to the jury concerning the weight which it should afford the invocation and any inferences therefrom.

*Id.* at 979 (quoting *RAD Services,* 808 F.2d at 276).[5]  Thus, the Court held, district courts will have to evaluate these situations on a case-by-case basis. *Id.*  *See* Oort, *Invocations as Evidence: Admitting Nonparty Witness Invocations of the Privilege Against Self-Incrimination*, 65 U. Chi. L. Rev. 1435, 1436 (Fall 1998) (noting that the Fifth Circuit, in *FDIC*, eliminated any requirement of a relationship between a party and the invoking witness).[6]

The invoking witnesses in *FDIC* had no employment relationship with any party, and the Court did not examine the nature of the relationships or engage in an analysis of the level of

---

[4] Quoting Heidt, *The Conjurer's Circle--The Fifth Amendment Privilege in Civil Cases*, 91 YALE L.J. 1062, 1119-20 n. 214 (1982), the Court noted as follows:

> The fact of present employment serves primarily to reduce the chance that the employee will falsely claim to have engaged in criminal conduct for which the defendant employer is liable. Any factors suggesting that a former employee retains some loyalty to his former employer--such as the fact that the employer is paying for his attorney--would serve the same purpose.

*FDIC*, 45 F.3d at 978.

[5] The *RAD Services* Court noted a fourth reason why the invocation of a former employee should be admissible: "Fourth, a rule precluding evidence of a former employee's invocation would allow a corporate party like RAD to stymie the discovery process with expedience by discharging those potentially responsible for the alleged wrongdoing. Nothing, in short, favors keeping a former agent's claim of privilege from the jury." *Id.* at 276.

control or compatibility of interests of the party and non-party witnesses.  Applying *FDIC* here, this Court may draw adverse inferences against these Defendants from the invocations of non-employees, without requiring the demonstration of any relationship between the invoking witnesses and the Defendants.  As the Fifth Circuit has instructed, "because there is no constitutional bar to the admission of this evidence, it is admissible if it is relevant and not otherwise prohibited by the rules.  *FDIC,* 45 F.3d at 977.  This is to be determined on a case-by-case basis.  The blanket bar against admission that Defendants seek is exactly what the Fifth Circuit counseled against.

Largely ignoring the *FDIC* decision, these Defendants rely heavily on *LiButti v. United States*, 107 F.3d 110 (2d Cir. 1997), in which the Second Circuit Court of Appeals suggested a non-exclusive list of factors that may be considered when determining whether a non-party's invocation can be used to draw an adverse inference against a party.  In *LiButti*, the Court held that a non-party taxpayer's refusal to answer questions from the government as to whether he or his daughter was the owner of a horse was admissible in the daughter's wrongful levy action against the government in which she was seeking return of the horse.  *Id.* at 123.  The daughter and the father/taxpayer had the same interest against the drawing of adverse inferences from the taxpayer's invocation of privilege against self-incrimination — to insulate race horse and stable's assets from government's levy. *Id.*   In reaching its decision, the *LiButti* Court suggested several non-exclusive factors to be considered: (1) the nature of the relevant relationships; (2) the degree of control of the party over the non-party witness; (3) the compatibility of the interests of the party and non-party witness in the outcome of the limitation; and (4) the role of the non-party witness in the litigation. *Id*.  Whatever controlling consideration the trial court ultimately adopts, the Second Circuit cautioned that "the overarching concern is fundamentally whether the adverse

inference is trustworthy under all of the circumstances and will advance the search for the truth." *Id*. at 124. The *Libutti* Court declined to enunciate a blanket rule governing the drawing of adverse inferences from a non-party witness' invocation of the privilege against self-incrimination, preferring instead a case-by-case approach. *See e.g., LiButti*, 107 F.3d at 122.

The *Libutti* factors have never been adopted in the Fifth Circuit. Although the Second Circuit in *Libutti* ultimately determined that the application of the suggested factors supported the inference, *Libutti* is inapplicable here because it is at odds with the Fifth Circuit's decision in *FDIC,* which remains the law of this Circuit. The invocations in *FDIC* – by witnesses who were not employed by, related to, or under the control of the party in question - would not qualify for an inference under the *Libutti* suggestions, yet the Fifth Circuit held in *FDIC* that adverse inferences arising out of those invocations were proper. Even if the *Libutti* factors were applicable here, they are, as the Second Circuit made clear, merely suggestions. Defendants BP, Transocean, and M-I list the *Libutti* factors as if they were mandatory requirements for the imposition of negative inferences, which, of course, they are not. Further, these Defendants overstate the "control" element of the *Libutti* suggestions. As the Court noted in *New Hampshire Ins. Co. v. Blue Water Off Shore LLC,* 2009 WL 792530 (S.D. Ala. 2009), the "control" element deals not with the party's ability to control the witness's testimony, but the degree of control over the witness "in regard to key facts and general subject matter of the litigation." *Id.*

M-I, citing the *FDIC* Court's mention that there were several nonparty witnesses "who purportedly had had relationships" with the bank's loan officer (*Id.* at 977), contends that "no court in the Fifth Circuit has imputed an adverse inference from a non-party to a party without a demonstration that the two had at least some relationship." (M-I Memorandum, p. 2.) M-I fails to acknowledge that the Fifth Circuit specifically eschewed the imposition of a categorical bar in

8

the absence of a special relationship, and refused to define or engage in an analysis of the nature or extent of the relationship between the invoking witness and the party against whom the invocation was being offered. Moreover, even if the *FDIC* case did require a "relationship," any affiliation required by that case can only be described as loose, and the connections between the invoking witnesses and the defendants in the instant case certainly qualify.

Here, all of the invoking witnesses and all of the defendants were engaged in the process of temporary abandonment on the Deepwater Horizon in multiple operations during the spring of 2010, and the questions posed to them during their depositions relate to those operations. Certainly, BP, as the general contractor on the project, and Transocean, as the owner of the rig, had "relationships" with the employees of every other contractor on the project. Hence, the invocations by these witnesses may result in adverse inferences against each of these defendants, to the extent that they are relevant and otherwise conform to the rules of evidence.[7]

**Negative Inferences Against Transocean by Transocean Employees**

The Court's decision in *FDIC* also undermines Transocean's argument that its own employees' invocation of the Fifth Amendment cannot be used against it. Transocean argues that most of the current or former Transocean employees who have invoked the Fifth Amendment were in separate litigation directly adverse to Transocean at the time of their depositions, and these witnesses do not have a sufficient "alignment of interest" with Transocean to warrant the drawing of an adverse inference against it. As noted above, the fact that a witness is former employee does not bar the assertion of the privilege in front of the factfinder. A lack of proof of continued loyalty cannot, alone, exclude the invocation. As the *RAD Services* Court

---

[7] BP suggests, in the alternative, that this Court may defer ruling on this issue until after all phases of the trial are complete, based on the possibility that the issues that forced the witnesses to invoke the Fifth Amendment will be resolved. Plaintiffs reject BP's suggestion, due to its potential to draw this issue out indefinitely.

held, and the Fifth Circuit in *FDIC* confirmed, if a witness is truly bent on incriminating a party, he or she is more likely to offer testimony directly to damage the party than to do so via a Fifth Amendment invocation. *RAD Services,* 808 F.2d at 276.  Further, a contrary rule would permit employers to avoid negative inferences by simply discharging their employees.  Nothing favors keeping a former agent's claim of privilege from the factfinder. *Id*.

Transocean has not demonstrated that any of its current or former employees are "bent" on incriminating it.  Indeed, it does not even name the witnesses whose invocations it claims cannot be used against it.  Given the possibility of criminal prosecution, it is in the interest of the Transocean invoking witnesses that Transocean *not* be incriminated for anything resulting from their actions.  In addition, Transocean has paid for at least some of the Transocean witnesses' attorneys. As the *FDIC* Court noted, this fact is demonstrative of a witness's loyalty to his former employer. *FDIC*, 45 F.3d at 978 (quoting Heidt, *The Conjurer's Circle--The Fifth Amendment Privilege in Civil Cases*, 91 YALE L.J. 1062, 1119-20 n. 214 (1982)).  Accordingly, Transocean's assertion that it cannot be subjected to adverse inferences resulting from the invocations of its employees, former or current, should be rejected.[8]

**The Inferences Are To Be Considered With All Other Evidence at Trial, and They Must Be Relevant And Conform With The Federal Rules Of Evidence;** *However,* **The Examples Cited By Transocean Do Not Support Its Arguments.**

Defendants argue that there may be no adverse inference on any point for which corroborating evidence does not exist.  On this point, Defendants greatly embellish the law.  Plaintiffs agree that an adverse *judgment* cannot be based solely on an uncorroborated adverse inference. *Curtis v. M&S Petroleum, Inc.,* 174 F.3d 661, 675 (5th Cir. 1999); *FDIC,* 45 F.3d at

---

[8] Transocean's reliance on *United States v. Philip Morris USA Inc.,* 2004 WL 5916856 (D.D.C. July 23, 2004) is misplaced, as the Court there relied on the *Libutti* factors, and provided no facts concerning the relationship between the witness and the party.

978. The adverse inferences are to be considered together with all other evidence, and evaluated on a case-by-case basis, in accordance with *FDIC*.

Transocean also offers the truism that questions must not be too broad or fall outside the witness's personal knowledge. Each of these issues may be addressed on a question-by-question basis in accordance with *FDIC*. The trial judge maintains discretion under Rule 403 to control the admission non-party claims of privilege. *RAD Services,* 808 F.2d at 277.

Of these Defendants, only Transocean identifies specific invocations as "examples" that it claims should not give rise to negative inferences against it. First it argues that an adverse inference cannot arise from questioning that is "self-serving" and "leading." It is true that the *RAD Services* Court recognized that its holding might invite "sharp practices" such as the "systematic interrogation of witnesses" wherein the examining attorney effectively testifies for the invoking witness. *RAD Services,* 808 F.2d 277. The question posed to Allen Seraile that it cites, however, does not amount to such an interrogation. The State of Louisiana questioned Seraile as to whether the failure of the rig crew, including the OIM, senior toolpusher and the driller to comply with Transocean's safety management system caused the blowout. (Seraile Deposition, p. 51.) This question is directed to Seraile's specific knowledge given his position as an assistant driller and experience on the *Deepwater Horizon,* and is not so far afield that it amounts to counsel testifying for the invoking witness.

The deposition questions that Transocean cites as examples of questions beyond the personal knowledge of the witness are (1) the question by counsel for BP to Transocean's Master Chris Kuchta as to whether the failure of the sound alarms may have increased the death toll on the Deepwater Horizon (Kuchta Deposition, p. 77) and (2) the question by counsel for the PSC to Andrea Fleytas, Transocean's Dynamic Positioning Operator, as to whether Transocean chose to

11

set the alarms in an inhibited position. (Fleytas Deposition, p. 34.)  Both of those questions fall within the unique knowledge of the witnesses, are admissible under Federal Rule of Evidence 602, and an adverse inference can be drawn against Transocean from the failure to answer them.

Finally, Transocean asserts that no adverse inference may be drawn in violation of 46 U.S.C. § 6308 from invocations in response to questions concerning prior testimony before the Joint Investigation Team (JIT).[9]  As Plaintiffs have argued separately, the JIT testimony is admissible; hence, adverse inferences arising from any such questions would be permitted.

### Conclusion

For the foregoing reasons, the motions *in limine* to preclude or limit the drawing of adverse inferences based on Fifth Amendment invocations should be denied.

This 17th day of January, 2012.


Respectfully submitted,


| /s/ Stephen J. Herman | /s/ James Parkerson Roy |
|---|---|
| **Stephen J. Herman**, La. Bar No. 23129 | **James Parkerson Roy**, La. Bar No.11511 |
| HERMAN HERMAN KATZ & COTLAR LLP | DOMENGEAUX WRIGHT ROY & EDWARDS LLC |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhkc.com | E-Mail: jimr@wrightroy.com |
| *Plaintiffs Liaison Counsel* | *Plaintiffs Liaison Counsel* |

### PLAINTIFFS' STEERING COMMITTEE

| | |
|---|---|
| Brian H. Barr | Robin L. Greenwald |
| LEVIN, PAPANTONIO, THOMAS, | WEITZ & LUXENBERG, PC |
| MITCHELL, ECHSNER & PROCTOR, PA | 700 Broadway |
| 316 South Baylen St., Suite 600 | New York, NY  10003 |

---

[9] Transocean provides no specific examples of such questioning.

Pensacola, FL 32502-5996
Office:  (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office:  (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com


Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail: ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail: pcossich@cossichlaw.com


Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail: rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201

Office:  (212) 558-5802
Telefax: (212) 344-5461
E-Mail: rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office:  (334) 269-2343
Telefax: (334) 954-7555
E-Mail: rhon.jones@beasleyallen.com


Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail: mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER, HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail: mpalmintier@dphf-law.com


Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW & ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail: sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100

| | |
|---|---|
| Office: (601) 949-3388<br>Telefax: (601) 949-3399<br>E-Mail: mike@mikespy.com | Dallas, TX 75219<br>Office: (214) 521-3605<br>Telefax: (214) 599-1172<br>E-Mail: ssummy@baronbudd.com |
| Calvin C. Fayard, Jr.<br>FAYARD & HONEYCUTT<br>519 Florida Avenue, SW<br>Denham Springs, LA 70726<br>Office: (225) 664-4193<br>Telefax: (225) 664-6925<br>E-Mail: calvinfayard@fayardlaw. | Mikal C. Watts<br>WATTS GUERRA CRAFT, LLP<br>Four Dominion Drive, Building 3, Suite 100<br>San Antonio, TX 78257<br>Office: (210) 447-0500<br>Telefax: (210) 447-0501<br>E-Mail: mcwatts@wgclawfirm.com |
| Ervin A. Gonzalez<br>COLSON HICKS EIDSON<br>255 Alhambra Circle, Penthouse<br>Coral Gables, FL 33134<br>Office: (305) 476-7400<br>Telefax: (305) 476-7444<br>E-Mail: ervin@colson.com | Conrad S.P. "Duke" Williams<br>WILLIAMS LAW GROUP<br>435 Corporate Drive, Suite 101<br>Maison Grand Caillou<br>Houma, Louisiana 70360<br>Office: (985) 876-7595<br>Fax No. (985) 876-7594<br>E-Mail: duke@williamslawgroup.org |
| Joseph F. Rice<br>MOTLEY RICE LLC<br>28 Bridgeside Blvd.<br>Mount Pleasant, SC 29464<br>Office: (843) 216-9159<br>Fax No. (843) 216-9290<br>E-Mail: jrice@motleyrice.com | |

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Memorandum has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of January, 2012.

s/ James Parkerson Roy and Stephen J. Herman

14