UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG, "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010<br><br>RELATES TO:  *All Cases*<br>       (Including No. 10-2771) | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | MDL NO. 2179<br><br>SECTION: J<br><br><br>JUDGE BARBIER<br><br>MAG. JUDGE SHUSHAN |

### OPPOSITION TO DEFENDANTS' MOTIONS TO EXCLUDE "WITHDRAWN" EXPERT OPINIONS

MI-LLC moves to exclude the report, work, findings, testimony, and opinions of former HESI expert witness Donald Weintritt, and any references to the same [Doc. 5121]. Cameron joins MI-LLC's motion, and further seeks to preclude other parties from using or relying upon "withdrawn" *opinions* within the reports of experts it still intends to use [Doc. 5151].[1]

### Background

Without objection from any party, Halliburton withdrew its designation of drilling expert Donald Weintritt's to testify at the Phase One Trial. The PSC did not object, and for that matter still does not object to the withdrawal of Mr. Weintritt. However, during the Discovery Conference held on January 6, 2012, Halliburton's counsel represented to the Court that the withdrawal of this expert is unique in that Halliburton is the only party that pursued M-I LLC on

---

[1] In a letter brief, BP joins Cameron's argument and mirrors it in large part. *See* BP Letter Brief (January 11, 2012). The PSC's brief is intended to be responsive to all three defendants, even if the preface of each argument may name only an individual defendant.

1

these claims.  *See* Transcript of Status Conference, p.68:17-21 (emphasis added).  In its motion, M-I LLC states that "[b]ecause Weintritt is no longer offered as an expert witness in this litigation, this Court should exclude any reference to Mr. Weintritt and/or his work, findings, testimony, and opinions."  It is this request that Cameron and BP in large measure adopt and expound upon.   The PSC disagrees with the broad implications of this request.

Granting this broad request to exclude any mention whatsoever of an expert witness who has issued a report and already been deposed will have implications upon other defendants and their withdrawal of experts, in whole or in part, as the trial progresses.

To the extent that an expert's opinions remain relevant to a part of the claims still before the Court, it is the PSC's emphatic position that the use of his or her report, findings, conclusions, etc. is permitted for at least cross-examination and for a party's case-in-chief.

## Argument

A.     **The Court Has Absolute Discretion to Permit Parties To Use Opinions or Testimony of Expert Witnesses That Have Been Withdrawn.**

The PSC agrees with Cameron that a decision on this issue is committed to the sound discretion of this Court.  *See* Cameron's Brief at 3 (January 11, 2012); *see also Peterson v. Willie,* 81 F.3d 1033, 1038 n.4 (11th Cir. 1996) (holding that the district court's decision to allow a party to call as a witness the other side's expert is "committed to the sound discretion of the district court").  Furthermore, the movants have the burden to show they are entitled to have the testimony excluded.  *See Johnson v. Hosp. Corp. of Am.*, 2011 U.S. Dist. LEXIS 41563, 15-16 (W.D. La. Apr. 15, 2011) (denying motion in limine for failure to carry burden entitling the movant to relief); *see also United States v. Alexander,* 2009 U.S. Dist. LEXIS 87591 (W.D. La.

Sept. 22, 2009) (same); *Ingraham v. Planet Beach Franchising Corp.,* 2009 U.S. Dist. LEXIS 38139, 3-4 (E.D. La. Apr. 17, 2009) (same).

B.   **Under The Rule 403 Standard That Cameron Argues Should Be Applied To This Issue, Cameron Fails to Demonstrate Prejudice Or That The Testimony Is Cumulative.**

Cameron cites two district court opinions – one from Minnesota and one from Iowa – that have addressed this issue and urges this Court to adopt those courts' holdings whereby "the proper standard [of whether to allow a party to use another party's expert's testimony] [] is a discretionary standard, where the trial court's discretion is guided by a balancing of probative value against prejudice under Fed.R.Evid. 403." Cameron Brief at 3 (citing *Ferguson v. Michael Foods, Inc.*, 189 F.R.D. 408, 409 (D.Minn. 1999) (quoting *House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236, 246 (N.D. Iowa 1996))).

In analyzing these cases, it is clear that the actual outcome dictated by these cases' analysis favors the PSC's position. Although BP cites *Ferguson*, 189 F.R.D. at 409-10, for the holding that a party cannot rely on an adverse party's expert at trial after the adverse party withdraws the witness as a testifying expert, it is clear that the holding was dictated by facts in that case which are quite inapposite. Indeed, *Ferguson*'s actual analysis wholly supports the PSC's position.

In *Ferguson*, the plaintiff sought to call defendants' medical expert as an adverse witness during her case in chief. *Id.* at 409. In deciding the issue, the court first cited Fed.R.Civ.Pro. 26(b)(4)(A) stating "A party may depose any person who has been identified as an expert whose opinions may be presented at trial." *Id.* The court then noted that under Rule 26(b)(4)(B), "[a] party may . . . discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who

3

is not expected to be called as a witness at trial, only as provided in Rule 35(b) [that is,] [] upon a showing of exceptional circumstances . . ." *Id.* The court then noted that the rule was silent as to how the court should treat a request by a party to use an adverse party's designated expert at trial after the adverse party withdraws that expert's designation. *Id.* This is the exact issue now before this Court. The court in *Ferguson* relied on and agreed with the analysis of *House v. Combined Ins. Co. of Am.,* 168 F.R.D. 236 (N.D. Iowa 1996), which held that the mere designation of the expert by itself takes the opposing party's demand to depose and use the expert at trial out of the 'exceptional circumstances' category of Rule 26(b)(4)(B). That is, an opposing party can depose and use that expert at trial once that expert has been designated a trial witness, so long as the use of the testimony passes Rule 403. *Id.* at 409. "[T]he proper standard in these circumstances is a 'discretionary' standard, where the trial court's discretion is guided by a balancing of probative value against prejudice under Fed.R.Evid. 403." *Id.*

Under this standard, the court in *Ferguson* found that the plaintiff should not be allowed to use the defendant's withdrawn expert because the plaintiff never timely designated any expert prior to the expiration of the discovery deadline, and only a week before the trial date notified the defendants that she was planning to call the defendant's withdrawn expert. *Id.* The court held that allowing someone to make a designation under these circumstances would be unfairly prejudicial. *Id.* Thus, although BP correctly cited the holding – a party was not allowed to use the expert of an opposing party that had been withdrawn – applying the case to the facts before this Court results in an entirely different outcome.

First, the PSC has timely designated its trial witnesses. The unfairness both *Ferguson* and *House* were concerned with in allowing a party to use an adverse party's expert on the eve of trial while not designated its own is simply not present here. Second, as the experts in this case

4

have been designated, issued reports, and even been deposed, there can be absolutely no unfairness or prejudice shown in using their reports and depositions at trial, and the PSC need not make any showing of exceptional circumstances to use their reports and testimony. *See House,* 168 F.R.D. at 236 (holding that the mere designation of the expert by itself takes the opposing party's demand to depose and use the expert at trial out of the 'exceptional circumstances' category of Rule 26(b)(4)(B)). Thus, BP and Cameron's motions should be denied under the very cases upon which these defendants rely.

Two other cases that BP and Cameron cite are also misleading to the issue before this Court. *See Rubel v. Eli Lilly and Co.*, 160 F.R.D. 458 (S.D.N.Y. Mar. 20, 1995); *see also In re: Shell Oil Refinery,* 132 F.R.D. 437 (E.D. La. Sept. 26, 1990). BP cites these cases for the proposition that a party cannot admit testimony of a withdrawn adverse expert in its affirmative case under FRE 403 because the prejudicial impact and cumulative nature outweighs any legitimate need. BP Letter Brief at 3 (January 11, 2012). However, the underpinning of both decisions came down to the fact that the experts in question were non-designated trial experts – *i.e.*, consulting experts. The courts made note of the distinction throughout the opinions. *See e.g., Rubel*, at 460 (holding "there are concerns peculiar to the issue of compelled testimony from non-testifying experts. Some have suggested that allowing the use of compulsion might diminish the willingness of experts to serve as consultants and, in any case, that it is unfair to the experts") (emphasis added). Of course, as these cases only involved consulting experts, and not trial-designated experts, the adverse party was not allowed to call these witnesses. If anything, this Court should infer that these courts would have come out differently had the experts been formally designated for trial.

**C.     The Use of Testimony And / Or Reports of Experts That Have Been Withdrawn By Another Party Should Be Admissible for Impeachment Purposes And In The Parties' Cases-in-Chief.**

First, and most importantly, an opinion withdrawn by an expert is absolutely admissible for any party to use on cross-examination.  That is, if an expert formulates an opinion, and then later "withdraws" that opinion (at the request of counsel, or otherwise), a party should be allowed to question the expert on the opinion, and the reasons he or she changed or withdrew it. *See* FED. RULE EVID. 607 ("The credibility of a witness <u>may</u> <u>be</u> <u>attacked</u> <u>by</u> <u>any</u> <u>party</u>, including the party calling the witness") (emphasis added); *see also* FED. RULE EVID. 613(a) (permitting examination of a witness regarding prior statements).  The parties should, at the very least, be able to cross-examine the expert to show bias, truthfulness, or any other ground that calls into question the witness' credibility.

Moreover, due to the unique and efficient management of this MDL, a party should be able to use an expert's report in its case-in-chief.  As argued *supra*, the cases cited by Cameron and BP actually favor allowing the use of an adverse party's expert at trial.  Here, parties have deposed, issued reports, and made designations for hundreds of witnesses that will hopefully save the Court and all parties significant time at trial.  To allow a party to use deposition testimony or a report already given by an expert is entirely consistent with the other case management tools this Court has utilized to make an efficient trial and does not prejudice any party in any way – as the report, opinions, and testimony already exist.

Second, the public policy arguments advanced by Cameron and BP are not persuasive.  For example, in one breath, Cameron argues that a party is non-diligent if it wishes to get a "free ride" by using the expert of another defendant, but in the next breath argues that each party is represented by experienced and competent lawyers who want to "pile on" by using another

party's expert. *See e.g.,* Cameron Memo at *6 (arguing that "'[t]here is a strong policy against permitting <u>a non-diligent party</u> from free-riding off the opponent's industry and diligence'") (emphasis added); *but cf.,* Cameron Memo at *8 (noting "[h]ere, all litigants are represented by experienced and competent lawyers who understand the need for experts in a case of this magnitude, and they in fact retained numerous experts to testify against BP, . . . allowing them to pile on with Cameron's experts serves no legitimate purpose). Cameron should not be allowed to have it both ways.

Indeed, Cameron should not have it in either respect.

The PSC respectfully submits that it has been extremely diligent in litigating this case, and the use of another party's expert's testimony – either to make a specific point in the PSC's case-in-chief or in cross-examining an expert on some point – is a strategic decision to which Cameron has no information in that regard and, therefore, their suggestion that it can only be that the PSC is "piling on" is simply incorrect and misinformed.

Curiously, both Cameron and BP strenuously argue that Cameron's withdrawn experts would only be cumulative and a waste of the Court's time because the other parties have experts that cover every subject matter. Of course, had Cameron not settled, there is a high probability that Cameron would have opposed any notion that their witnesses' testimony was cumulative in any way.

Finally, Cameron argues that public policy requires exclusion of a withdrawn expert's report, findings, etc. by another party because it promotes settlement. Cameron, with all due respect, overstates the holding of a district court in California which concluded that settlement would be frustrated if another party could use the settling party's expert. *See FMC Corp.,* 196

F.Supp.2d 1023, 1047 (E.D. Ca. April 17, 2002).  A closer examination of *FMC* reveals significant problems with Cameron and BP's arguments.  First, its holding is not that a party can *never* use the testimony of an expert of a settling party, as Cameron suggests. The court simply said the party attempting to use the adverse party's expert needed to show the "exceptional circumstances" that justified using the adverse party's expert.

Secondly, and tellingly, the very standard suggested in *FMC* is the exact standard rejected by the cases Cameron and BP earlier rely upon.  *See – House,* 168 F.R.D. 236 (holding the mere designation of the expert by itself takes the opposing party's demand to depose and use the expert at trial out of the 'exceptional circumstances' category of Rule 26(b)(4)(B)). Furthermore, even if applying the exceptional circumstances test under *FMC* were required, *FMC* still allows a party to make such a showing that they are entitled to call an opposing party's witness even if that party has settled. *See id.* (noting the possibility that exceptional circumstances may "exist where the settling party's expert has unique expertise which may not be readily available to other non-settling parties, or where the settling party's expert participated in tests which cannot be replicated by new experts") (internal citations and quotation marks omitted).  Cameron also cites a Utah district court case to support the proposition that allowing a party to call these withdrawn experts may frustrate settlement and, therefore, be against public policy.  *See Wolt v. Sherwood,* 828 F.Supp. 1562 (D.Utah 1993).  However, at least one state Supreme Court has reached the opposite result – namely, that suppressing evidence or buying the silence of a co-defendant's expert testimony through settlement would be a violation of public policy.  *See Williamson v. Superior Court of Los Angeles County*, 21 Cal. 3d 829, 831-832 (Cal. 1978).

In *Williamson,* one defendant's designated expert opined in a written report that the injury upon which the suit was based was due to the negligent design of the second defendant's product. *Id.* at 832. The two defendants reached an agreement whereby the first defendant would withdraw the expert and not make his report available to plaintiff on the condition that the second defendant would indemnify the first against any liability it might incur arising from plaintiff's injuries. *Id.* Finding that the two defendants' interests were adverse to one another, the court concluded that the agreement was one to suppress evidence and, consequently, void as against public policy. *Id.* at 838. Thus, to the extent this Court even reaches public policy arguments, allowing the use of withdrawn expert opinion should be allowed. Indeed, the Court need not look any further than the Rules of Evidence. *See* FED. RULE EVID. 102. (stating "[t]hese rules should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, <u>to the end of ascertaining the truth</u> and securing a just determination) (emphasis added). If anything, allowing a party to buy the silence of an expert hinders this Court's ability to develop the case to ascertain the truth. Respectfully, the PSC suggests that this principle is the only public policy in which this Court should be concerned.

## Conclusion

For the above and foregoing reasons, the PSC respectfully suggests that any party may cross-examine or use the testimony or report of any witness that has been designated as a testifying trial expert and later withdrawn, in whole or part.

This 17th day of <u>January</u>, <u>2012</u>.

Respectfully submitted,

| | |
|---|---|
| __/s/   Stephen J. Herman__   <br>**Stephen J. Herman**, La. Bar No. 23129<br>**HERMAN HERMAN KATZ & COTLAR LLP**<br>820 O'Keefe Avenue<br>New Orleans, Louisiana 70113<br>Telephone: (504) 581-4892<br>Fax No. (504) 569-6024<br>E-Mail: sherman@hhkc.com<br>*Plaintiffs Liaison Counsel* | __/s/ James Parkerson Roy__<br>**James Parkerson Roy**, La. Bar No.11511<br>**DOMENGEAUX WRIGHT ROY & EDWARDS LLC**<br>556 Jefferson Street, Suite 500<br>Lafayette, Louisiana 70501<br>Telephone: (337) 233-3033<br>Fax No. (337) 233-2796<br>E-Mail: jimr@wrightroy.com<br>*Plaintiffs Liaison Counsel* |

### PLAINTIFFS' STEERING COMMITTEE

| | |
|---|---|
| Brian H. Barr<br>LEVIN, PAPANTONIO, THOMAS, MITCHELL, ECHSNER & PROCTOR, PA<br>316 South Baylen St., Suite 600<br>Pensacola, FL 32502-5996<br>Office:  (850) 435-7045<br>Telefax: (850) 436-6187<br>E-Mail: bbarr@levinlaw.com<br><br>Jeffrey A. Breit<br>BREIT DRESCHER & IMPREVENTO<br>Towne Pavilion Center II<br>600 22nd Street, Suite 402<br>Virginia Beach, Virginia 23451<br>Office:  (757) 670-3888 | Robin L. Greenwald<br>WEITZ & LUXENBERG, PC<br>700 Broadway<br>New York, NY  10003<br>Office:  (212) 558-5802<br>Telefax: (212) 344-5461<br>E-Mail:  rgreenwald@weitzlux.com<br><br>Rhon E. Jones<br>BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P. C.<br>218 Commerce St., P.O. Box 4160<br>Montgomery, AL 36104<br>Office:  (334) 269-2343<br>Telefax: (334) 954-7555 |

Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134

E-Mail: rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Mikal C. Watts
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail:  mcwatts@wgclawfirm.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101

Office: (305) 476-7400  
Telefax: (305) 476-7444  
E-Mail: ervin@colson.com

Joseph F. Rice  
MOTLEY RICE LLC  
28 Bridgeside Blvd.  
Mount Pleasant, SC 29464  
Office: (843) 216-9159  
Fax No. (843) 216-9290  
E-Mail: jrice@motleyrice.com

Maison Grand Caillou  
Houma, Louisiana 70360  
Office: (985) 876-7595  
Fax No. (985) 876-7594  
E-Mail: duke@williamslawgroup.org

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Memorandum has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of January, 2012.

s/ James Parkerson Roy and Stephen J. Herman