UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, | * * * * | MDL No. 2179 |
| | * | Section: J |
| This Pleading applies to: | * | |
| | * | Judge Barbier |
| | * | |
| *All Cases* (*including Case No. 2:10-cv-04536* (*United States v. BP Exploration & Production Inc., et al.*)) | * * * | Magistrate Judge Shushan |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**BP EXPLORATION & PRODUCTION INC.'S RESPONSES TO ANADARKO'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AS TO ANADARKO'S NONLIABILITY UNDER THE CWA**

**AND**

**BP EXPLORATION & PRODUCTION INC.'S ADDITIONAL RESPONSES TO ANADARKO'S RESPONSES TO THE UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFF UNITED STATES' <u>SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

**BP EXPLORATION & PRODUCTION INC.'S RESPONSES TO ANADARKO'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AS TO ANADARKO'S NONLIABILITY UNDER THE CWA**

**Undisputed Material Facts with Respect to the MC Block 252 ("Macondo") Lease and Operating Agreement between Anadarko, BP, and MOEX Offshore 2007 LLC**

1. On December 17, 2009, APC, AE&P, and BP executed the Lease Exchange Agreement, Dep. Ex. 2824, BP-HZN-2179MDL02319086 (Ex. 4 hereto), governing the parties' interests in the Macondo Lease. That same day, BP and APC executed the Well Participation Agreement,[1] Dep. Ex. 2825, BP-HZN-2179MDL02319125 (Ex. 7 hereto), governing the parties' interests in the Macondo Well equipment. Also on December 17, 2009, BP, APC, AE&P, and MOEX executed a Ratification and Joinder of the Operating Agreement, Dep. Ex. 1243, APCHEC1-000001601 (Ex. 6 hereto), governing operations on the Macondo leasehold. All three of these documents were effective October 1, 2009. *See* Anadarko Response to U.S. Statements 23-33, *supra*.

   **RESPONSE:** It is uncontested for purposes of Anadarko's Cross-Motion (the "Motion") that the parties indicated above executed the Lease Exchange Agreement, the Well Participation Agreement, and the Ratification and Joinder of the Operating Agreement. The agreements speak for themselves and their interpretation is a matter of law.

   **A. The Macondo Prospect Offshore Deepwater Operating Agreement**

2. BP, APC, and AE&P ratified and joined the Operating Agreement on December 17, 2009, and the Operating Agreement formally designated BP as the "Operator" of the Macondo Lease. *See* Anadarko Response to U.S. Statement 33, *supra*; *see also* United States of America's Revised Responses to the Applicable Requests Contained within the Various Defendants' Second Joint Discovery Requests to Plaintiffs, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, No. 2:10-md-02179-CJB-SS (E.D. La. Sept. 19, 2011) (Ex. 33 hereto) ("U.S. Revised Responses") at No. 64 (Anadarko "designated BP as the 'operator' for the Macondo Well . . . .").

---

[1] It is undisputed that AE&P was not a party to the Well Participation Agreement. *See* Anadarko Response to U.S. Statement 31, *supra*.

**RESPONSE:** The Well Participation Agreement speaks for itself. Its interpretation is a matter of law.

>    **RESPONSE:** It is uncontested for purposes of this Motion that BP, APC, and AE&P ratified and joined the Operating Agreement. The agreement speaks for itself, and its interpretation is a matter of law. BP further states that, for the reasons explained in it its opposition to the United States' Motion, whether it was or was not an "operator" under the agreement or under MMS regulations does not determine whether it was an operator for purposes of the Clean Water Act. *See* Doc. # 5124 at 17-21. For the same reason, BP disputes whether the Operating Agreement, written in light of the MMS regulatory regime, can be used to determine whether BP was an operator for purposes of the Clean Water Act or that it can be ignored that BP delegated operational responsibilities to Transocean.

3. The terms of the Operating Agreement grant BP, as Operator, "the exclusive right and duty to conduct (or cause to be conducted) all activities or operations under this Agreement" and provide that "[t]he obligations, duties, and liabilities of the Parties under this Agreement are several and not joint or collective, and . . . nothing in this Agreement shall be construed to create a partnership, joint venture, association, or other form of business entity recognizable in law for any purpose." Operating Agreement at Art. 5.1, 22.1 (Ex. 6 hereto); *see also* 30(b)(6) Deposition of Kirk Wardlaw, BP Senior Negotiator for the Western Hemisphere (Ex. 56 hereto) ("Wardlaw 30(b)(6) Dep."), at 247:23-248:5; 250:16-19; 251:1-5; 252:7-18; 252:22-23; 253:8-12. It is undisputed that the Operating Agreement provides that as Operator, BP was "not subject to the control or direction of [Anadarko or MOEX]" and functioned as an independent contractor. Operating Agreement at Art. 5.1 (Ex. 6 hereto). Article 5.1 of the Operating Agreement grants BP the sole right to select employees, contractors, and consultants; to set their hours and compensation; and to employ drilling rigs and accompanying machinery and personnel at the Macondo Prospect. *Id.*

    **RESPONSE:** The agreement speaks for itself. Its interpretation is a matter of law. BP's response to paragraph 2 above is incorporated by reference herein. Finally, the Operating Agreement by its own terms recognizes that operational duties could be delegated by BP to a third party by specifically stating: "or cause to be conducted all activities or operations."

4. Under the Operating Agreement, Anadarko was a Non-Operating Party ("NOP"). Operating Agreement at Art. 2.43 (Ex. 6 hereto) (a "Non-Operating Party" is "A Party other than the Operator").

    **RESPONSE:** The agreement speaks for itself. Its interpretation is a matter of law. BP's response to paragraph 2 above is incorporated by reference herein.

3

**Undisputed Material Facts with Respect to Planning, Design, and Drilling Operations on the Macondo Leasehold**

**A. Drilling Operations on the MC Block 252 Leasehold.**

5. BP completed and approved the pre-drilling planning and design phase for the well to be drilled on the Macondo leasehold, and drilling operations on the Macondo leasehold commenced before Anadarko entered into the Operating Agreement with BP on December 17, 2009. Deposition of Ian Little, Former BP Wells Manager, Exploration & Appraisal, for the Gulf of Mexico (Ex. 43 hereto) ("Little Dep."), at 454:17-456:4; Deposition of Robert Bodek, BP Operations Geologist, Gulf of Mexico Exploration (Ex. 38 hereto) ("Bodek Dep.") at 653:13-17; 653:23; *see also* Anadarko Response to U.S. Statements 4, 33, *supra*.

    **RESPONSE:** Uncontested for purposes of this Motion.

6. The *Deepwater Horizon* was performing temporary abandonment operations on the Macondo Well at the time of the April 20, 2010 blowout and, therefore, the Macondo Well was not completed at the time of any discharge of oil because it had not been plugged and abandoned. 30(b)(6) Deposition of Paul Tooms, BP Vice President of Engineering (Ex. 54 hereto) ("Tooms 30(b)(6) Dep."), at 162:4-6. It is undisputed that at the time of any discharge, the Macondo Well was "not a general production well" and "was still effectively under construction and had not got completion tubing in it." *Id.*

    **RESPONSE:** Uncontested for purposes of this Motion.

**B. Responsibility for Well Design and Drilling Operations.**

7. It is undisputed that Anadarko performed no work or otherwise assisted BP in connection with BP's designing of the Macondo Well, or in any of the subsequent changes to that well design once drilling began. Anadarko did not make any operational or other decisions with respect to the design of the Macondo Well before or after drilling operations on the Macondo leasehold began.[2] Bly Dep. at 738:3-739:2 (Ex. 37 hereto);

---

[2] "Well design" encompasses the well's casing, wellhead, mud, and coring programs. "Information pertaining to well design" includes hole size, mud weight, fracture gradient, liner top depth, casing size, grade, and weight, well depth, pore pressure, and cement formulas and volumes. Deposition of Jonathan Sprague, BP Drilling Engineering Manager for Exploration Appraisal, Development and Production for the Gulf of Mexico (Ex. 52 hereto) ("Sprague Dep."), at 555:1-22; MC 252 #1 Macondo Prospect Drilling Program January 2010 Final, Dep. Ex. 291, TRN-HCJ-00093526 at §§ 1.1-1.3.7 (1/27/2010) (Ex. 16 hereto); Application for Permit to Drill a New Well for MC 252 [Macondo APD], Dep. Ex. 4021, BP-HZN-SNR00000122 at 0127-29 (5/26/2009) (Ex. 14 hereto).

**RESPONSE:** Uncontested for purposes of this Motion, except that BP reserves all of its rights to try facts related to cement formulas and volume.

Bodek Dep. at 673:2-9 (Ex. 38 hereto); Little Dep. at 529:14-21, 529:23-24 (Ex. 43 hereto); *see also* The BP Parties' Supplemental Responses and Objections to Defendant Anadarko Petroleum Corporation's First Requests for Admissions, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, No. 2:10-md-02179-CJB-SS (E.D. La. Sept. 23, 2011) (Ex. 32 hereto) ("BP Supplemental Responses") at No. 28.

**RESPONSE:** BP disputes that making well design decisions makes it an operator within the meaning of the Clean Water Act.

8. It is undisputed that "BP was solely responsible for the drilling operations [on the Macondo leasehold]" and that, as a matter of law, Anadarko owed no duty to third parties in connection with BP's operations on the leasehold, and owed no duty to intervene in BP's or its contractors' operations. B1 Order at 28 (Ex. 30 hereto); *see also* E-mail from Mike Daly (BP) to David Rainey and Jasper Peijs re: Macondo deals, Dep. Ex. 3239, BP-HZN2179MDL01833704 (10/22/2009) (Ex. 17 hereto) ("Need to be sure to retain clear control in Macondo").

    **RESPONSE:** This statement represents a legal conclusion, not a statement of fact. BP's response to paragraph 2 above is incorporated by reference herein. BP further states that the quoted language from the B1 Order describes responsibilities under the Operating Agreement, a document to which only BP, Anadarko, and MOEX were parties, and which did not purport to address the responsibilities of other parties, including Transocean. Moreover, retention of control via a contract is not equivalent to having operator status within the meaning of the Clean Water Act.

9. Anadarko made no operational decisions regarding the drilling operations on the Macondo leasehold. Bly Dep. at 738:3-739:2 (Ex. 37 hereto); Bodek Dep. at 673:2-9 (Ex. 38 hereto); Deposition of John Guide, BP Wells Team Leader for the Macondo Well (Ex. 41 hereto) ("Guide Dep."), at 774:14-17; 30(b)(6) Deposition of Darrell Hollek, Anadarko Vice President of Operations and Development in the Gulf of Mexico (Ex. 42 hereto) ("Hollek 30(b)(6) Dep."), at 142:2-4; 30(b)(6) Deposition of Robert Quitzau, Anadarko Drilling Engineering Consultant (Ex. 47 hereto) ("Quitzau 30(b)(6) Dep."), at 42:9-11; 42:15; 622:16-623:4; 670:11-13; 670:17- 21; 670:25; 30(b)(6) Deposition of David Rich, BP Wells Manager for the Gulf of Mexico, Drilling & Completions (Ex. 49 hereto) ("Rich 30(b)(6) Dep."), at 55:1-58:10; Deposition of Gregory Walz, BP Drilling Engineering Team Leader on the Macondo Well (Ex. 55 hereto) ("Walz Dep."), at 706:18-707:3; *see also* BP Supplemental Responses at No. 28 (Ex. 32 hereto).

    **RESPONSE:** Uncontested for purposes of this Motion.

10. No Anadarko personnel worked on the design of the cement used for the Macondo Well's production casing. U.S. Revised Responses at No. 63(b-c) (Ex. 33 hereto); The BP Parties' Responses and Objections to Defendant Anadarko E&P Company LP's First Requests for Admissions, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, No. 2:10-md-02179-CJB-SS (E.D. La. May 27, 2011) (Ex.

5

31 hereto) ("BP First Responses"), at No. 2; Deposition of Vincent Tabler, Halliburton Cement Service Supervisor (Ex. 53 hereto) ("Tabler Dep."), at 562:22-563:2; 563:11-16.

**RESPONSE:** Uncontested for purposes of this Motion.

11. Anadarko had no communications with the MMS with respect to the design of the Macondo Well or drilling operations carried out by the *Deepwater Horizon* on the Macondo leasehold. Deposition of Frank Patton, Drilling Engineer for the New Orleans District of the Bureau of Ocean Energy Management, Regulation and Enforcement ("BOEMRE," formerly the MMS) (Ex. 46 hereto) ("Patton Dep."), at 455:21-456:1; 456:5-22; 30(b)(6) Deposition of Michael Saucier, BOEMRE Regional Supervisor, Field Operations (Ex. 51 hereto) ("Saucier 30(b)(6) Dep."), at 362:13-363:7.

    **RESPONSE:** Uncontested for purposes of this Motion. BP notes here that this paragraph supports the fact that well design and the performance of "drilling operations" are different matters.

12. MMS personnel do not regard non-operating investors like Anadarko as having the same obligations to comply with drilling regulations as designated operators. Saucier 30(b)(6) Dep. at 363:8-25 (Ex. 51 hereto) (testifying that MMS regulations do not require Non-Operating Parties to submit documents related to changes in well design or drilling progress, such as Applications for Permits to Drill ("APDs"), Applications for Permits to Modify ("APMs"), or Weekly Activity Reports, because the MMS does not view those activities as the responsibility of Non-Operating Parties).

    **RESPONSE:** This statement represents a legal conclusion, not a statement of fact.

**Undisputed Material Facts with Respect to the Ownership and Operation of the Mobile Offshore Drilling Unit *Deepwater Horizon***

13. In 1998, BP's predecessor (Vastar) contracted with Transocean's predecessor (R&B Falcon) to construct the *Deepwater Horizon* and then to operate it for BP. *See* Drilling Contract: RBS-8D Semisubmersible Drilling Unit [the *Deepwater Horizon*], Vastar Resources, Inc. and R&B Falcon Drilling Co., Contract No. 980249 ("Drilling Contract"), Dep. Ex. 4271, BP-HZN-MBI00021460 at 1461 (12/9/1998) (Ex. 3 hereto). It is undisputed that the *Deepwater Horizon* was leased to BP for most of its operating life. Macondo Well Incident: Transocean Investigation Report, Vol. 1, Dep. Ex. 4248 (6/2011) ("Transocean Report") at 17, 19 (Ex. 12 hereto); Geoff Webster, *Deepwater Horizon* Explosion on April 20, 2010. FRCP Rule 26 Report of Geoff Webster [PSC Expert Report] (Ex. 10 hereto) ("Webster Report") at 2. The Drilling Contract was later amended and remained in effect at the time of the blowout on April 20, 2010. *See* Amendment No. 38 to Drilling Contract No. 980249, Dep. Ex. 1488, BP-HZN-CEC041475 at 1476 (9/28/2009) (Ex. 1 hereto) (renewing the Drilling Contract).

    **RESPONSE:** It is uncontested that the Transocean *Deepwater Horizon* was leased to BP for most of its operating life. The Drilling Contract speaks for itself. Its interpretation is a matter of law.

14. The Drilling Contract required Transocean to furnish the *Deepwater Horizon*'s blowout preventer ("BOP") and riser. Drilling Contract at 1473, 1572 (Ex. 3 hereto). Article 7.1.1 provides that "[Transocean] shall furnish and maintain at its sole expense all items designated in Exhibit B under the heading FURNISHED BY CONTRACTOR." "Blowout preventers . . . Wellhead connector and . . . [a]ll other well control equipment components and replacement parts, including . . . riser" are included in the "FURNISHED BY CONTRACTOR" category. Id. at Exhibit B-3, §§ 1.20-1.22.

    **RESPONSE:** The contract speaks for itself. Its interpretation is a matter of law.

15. It is undisputed that Anadarko had no ownership, lease, or charter interest in the *Deepwater Horizon*, that Anadarko had no contractual relationship or communications with Transocean with respect to operations on the Macondo leasehold, and that Anadarko personnel never visited the *Deepwater Horizon*. U.S. Revised Responses at No. 68 (Ex. 33 hereto); BP First Responses at No. 1 (Ex. 31 hereto); Deposition of Jim McWhorter, Transocean Senior Subsea Supervisor (Ex. 44 hereto) ("McWhorter Dep."), at 387:18-388:7.

    **RESPONSE:** The authority cited by Anadarko establishes only (1) that no Anadarko personnel were aboard the *Deepwater Horizon* during the drilling of the Macondo well, and (2) that Jim McWhorter was unaware of any communication with Anadarko about the drilling of the Macondo well. The additional statements represent legal conclusions rather than statements of fact.

16. Anadarko had no operational control over operations aboard the *Deepwater Horizon*, and no control over the *Deepwater Horizon*'s drilling schedule. B1 Order at 28 (Ex. 30 hereto); O'Bryan 30(b)(6) Dep. at 749:6-10 (Ex. 45 hereto).

    **RESPONSE:** Uncontested for purposes of this Motion.

### Undisputed Material Facts with Respect to the Discharge of Hydrocarbons from the *Deepwater Horizon* and its Appurtenances

17. On April 20, 2010, the *Deepwater Horizon* lost control of the Macondo Well during preparation for temporary abandonment operations, resulting in a blowout, and a discharge of hydrocarbons from the *Deepwater Horizon*. The hydrocarbons discharging from the *Deepwater Horizon* ignited, causing explosions and fire. The fire onboard the *Deepwater Horizon* continued for 36 hours until the hull became structurally unsound, and the hull, operating deck, and derrick sank. *See Deepwater Horizon* Accident Investigation Report ("Bly Report"), Dep. Ex. 1, at 9 (9/8/2010) (Ex. 11 hereto); Smit Salvage Daily Progress Report, Dep. Ex. 5309, SMIT_00501 at 0501-02 (4/22/2010) (Ex. 19 hereto); *see also* Deposition of Mark Bly, BP Executive Vice President of Safety and Organizational Risk (Ex. 37 hereto) ("Bly Dep."), at 384:18-21.

    **RESPONSE:** Multiple causes led to the sinking of the hull, operating deck, and derrick of the *Deepwater Horizon* vessel.

### A. The Loss of Well Control, Flow Path, and Discharge from the *Deepwater Horizon*

18. No oil discharged directly from the Macondo Well into the Gulf of Mexico. The flow of hydrocarbons from the formation flowed through the incomplete well into the *Deepwater Horizon*'s BOP and riser, proceeded up the *Deepwater Horizon*'s riser, and was discharged from the riser onto, and out of, the operating deck and derrick of the *Deepwater Horizon*. Response on Behalf of Triton Asset Leasing GMBH, Transocean Holdings LLC, Transocean Deepwater Inc., and Transocean Offshore Deepwater Drilling Inc. to BP Parties' First Set of Requests for Admission, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, No. 2:10-md-02179-CJB-SS (E.D. La. July 15, 2011) (Ex. 34 hereto) ("Transocean First Responses") at Nos. 191-92; E-mail from Paul Tooms to various BP and U.S. Government personnel re: Drawings as requested on the call today (with attachments), Dep. Ex. 6215, BPHZN-2179MDL01616040 (5/16/2010) (Ex. 18 hereto); Bly Dep. at 59:12-18; 814:6-815:21; 817:12-818:4 (Ex. 37 hereto); 30(b)(6) Deposition of James Cowie, Member, BP Macondo Investigation Team and Former BP North Sea Platforms Manager (Ex. 40 hereto) ("Cowie 30(b)(6) Dep."), at 332:14-22; 448:24-449:25; Deposition of Steve Robinson, Member, BP Macondo Investigation Team and BP Vice President of Wells in Alaska (Ex. 50 hereto) ("Robinson Dep."), at 193:7-9; *see also* Halliburton *Deepwater Horizon* Investigation presentation ("Halliburton Investigation"), Dep. Ex. 5270, HAL_1150082 at 0091-92 (9/20/2010) (Ex. 15 hereto); Bly Report at 10, 54 (Ex. 11 hereto). The United States' Expert agrees: "The flow path of the hydrocarbons was down the outside of the casing (through the cement sheath), up the inside of the shoe track, and up through the float shoe . . . The formation fluid then flowed up the inside of the casing, through the BOP and up the drilling riser . . . At some time subsequent to the first explosion on the rig, the flow also began to flow up the drillpipe." Richard Heenan, BP Macondo - *Deepwater Horizon*: Report for the United States of America [U.S. Expert Report], Dep. Ex. 7528 (Ex. 9 hereto) ("Heenan Report") at 7.

    **RESPONSE:** It is uncontested for purposes of this motion that the only discharge of oil was from the Transocean-owned BOP and riser.  BP reserves all of its rights regarding the admissibility of testimony and expert reports.

19. As hydrocarbons shot up through the derrick toward the crown block of the *Deepwater Horizon*, the vessel's crew responded by routing the hydrocarbons through the *Deepwater Horizon*'s mud-gas separator. Transocean First Responses at No. 193 (Ex. 34 hereto); Bly Report at 28, 103-04, 118 (Ex. 11 hereto); Heenan Report at 25-26 (Ex. 9 hereto); Halliburton Investigation at 0106 (Ex. 15 hereto). The flow of hydrocarbons overwhelmed the *Deepwater Horizon*'s mud-gas separator, at which point hydrocarbons were observed discharging from multiple vents onto and out of the operating deck of the *Deepwater Horizon* and into the Gulf of Mexico. Transocean First Responses at No. 193, 199-200 (Ex. 34 hereto); Heenan Report at 25-26 (Ex. 9 hereto); *see also* Halliburton Investigation at 0101, 0107-08, 0120 (Ex. 15 hereto).

    **RESPONSE:** Uncontested for purposes of this Motion.

20. The *Deepwater Horizon*'s crew attempted to activate the *Deepwater Horizon*'s BOP to seal off the riser. The BOP failed to seal off the riser, allowing hydrocarbons to continue to discharge from the *Deepwater Horizon* into the Gulf of Mexico. Transocean First Responses at Nos. 194-95 (Ex. 34 hereto); Halliburton Investigation at 0104 (Ex. 15 hereto); Bly Report at 28, 103 (Ex. 11 hereto).

    **RESPONSE:** Uncontested for purposes of this Motion.

21. The hydrocarbons discharging from the vessel ignited, causing explosions and fire. Transocean First Responses at Nos. 233, 322-23 (Ex. 34 hereto); Robert D. Grace, Expert Report on Behalf of BP [BP Expert Report] ("Grace Report") (Ex. 8 hereto), at 22-23; *see also* Halliburton Investigation at 0109, 0111 (Ex. 15 hereto); Bly Report at 29 (Ex. 11 hereto). The *Deepwater Horizon*'s crew attempted to activate the *Deepwater Horizon*'s emergency disconnect system, which failed to cut the *Deepwater Horizon*'s drilling riser and disconnect the *Deepwater Horizon* from its BOP. Transocean First Responses at Nos. 197, 322-23 (Ex. 34 hereto); Halliburton Investigation at 0116 (Ex. 15 hereto); Bly Report at 29 (Ex. 11 hereto).

    **RESPONSE:** Uncontested for purposes of this Motion.

### B. The Sinking of the main body of the *Deepwater Horizon* and Initiation of Discharge from *Deepwater Horizon*'s BOP and Riser

22. As a result of the fire, the damaged hull, operating deck, and derrick of the *Deepwater Horizon* sank, causing the attached riser pipe to bend, buckle, and then break. Bly Report at 163-65 (Ex. 11 hereto) (illustrating the riser kink and the pre- and post-blowout positions of the riser); Deposition of Gordon Birrell, BP Vice President of Operations (Ex. 36 hereto) ("Birrell Dep."), at 463:1-6. The flow of hydrocarbons into the marine environment continued from the broken riser and BOP. Birrell Dep. at 21:24-22:8; 465:17-466:2 (Ex. 36 hereto); Bly Report at 165 and Fig. 5D.15 (Ex. 11 hereto).

    **RESPONSE:** Uncontested for purposes of this Motion.

**BP EXPLORATION & PRODUCTION INC.'S ADDITIONAL RESPONSES TO ANADARKO'S RESPONSES TO THE UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFF UNITED STATES' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**

Insofar as the Local Civil Rules of the United States District Court for the Eastern District of Louisiana do not clearly require BP to respond to Anadarko's responses to the United States' statement of undisputed facts, BP will refrain from responding to each and every such statement. Below, BP contests only those statements that are particularly relevant to the Court's consideration of the United States' motion with respect to BP. BP reserves its rights to contest any other statement, for any other purpose, at an appropriate point in the future.

**U.S. STATEMENT 33:**

33. On or about November 18, 2009, BP and MOEX executed a Joint Operating Agreement that set forth their agreement among themselves as to their rights and responsibilities, operational duties, accounting mechanism, and many other terms as to the Macondo Prospect. The Anadarko Defendants executed a Ratification and Joinder of the Joint Operating Agreement on or about December 17, 2009. All signatories agreed that the Joint Operating Agreement would be retroactively effective as of October 1, 2009.

    **ANADARKO'S RESPONSE:** Anadarko does not dispute that on November 18, 2009, BP and MOEX executed the Macondo Prospect Offshore Deepwater Operating Agreement ("Operating Agreement") that set forth their rights and responsibilities, operational duties, accounting mechanism, and many other terms as to the Macondo Prospect. Anadarko also does not dispute that BP, APC, and AE&P executed a Ratification and Joinder of that Operating Agreement on December 17, 2009, and that all signatories agreed that the Operating Agreement would be effective as of October 1, 2009. Anadarko further submits that it is undisputed that the Operating Agreement designated BP as the "Operator" of the Macondo Lease, making BP solely responsible for conducting or causing to be conducted all operations on the Macondo leasehold, including, but not limited to, drilling and exploration operations. Operating Agreement, Dep. Ex. 1243, APC-HEC1-000001601, at Art. 2.49, 4.1 (ratified by APC and AE&P on 12/17/2009) (Ex. 6 hereto); *see also* 30(b)(6) Deposition of Patrick O'Bryan, BP's Vice President of Drilling & Completions and Interventions for Gulf of Mexico Deepwater (Ex. 45 hereto) ("O'Bryan 30(b)(6) Dep."), at 768:2-5; 768:17-20; 768:22; Deposition of David Rainey, BP Vice President of Exploration for the Gulf of Mexico (Ex. 48 hereto) ("Rainey Dep."), at 394:20-23. It is further undisputed that MMS records reflect this formal designation pursuant to MMS regulatory requirements. Agency Records at 4814 (Ex. 13 hereto); *see also* MMS Designation of Operator Form, BP-HZN-2179MDL02319165 at 9165-66 (12/17/2009) (Ex. 29 hereto).

    **BP'S ADDITIONAL RESPONSE TO ANADARKO RESPONSE:** It is uncontested for purposes of this Motion that BP, APC, and AE&P ratified and joined the Operating Agreement. The Agreement speaks for itself, and its interpretation is a matter of law.

10

BP's response to paragraph 2 above is incorporated by reference herein.  BP further states that, for the reasons explained it its opposition to the United States' motion, whether it was or was not an operator under the Agreement or under MMS regulations does not determine whether it was an operator for purposes of the Clean Water Act.  *See* Doc. # 5124 at 17-21.  For the same reason, BP contests that the Operating Agreement, written in light of the MMS regulatory regime, can be used to determine whether BP was an operator for purposes of the Clean Water Act and ignore that BP delegated operational responsibilities to Transocean.


Dated:     January 17, 2012                           Respectfully submitted,

                                                     /s/ Don K. Haycraft
Robert R. Gasaway                                    Don K. Haycraft (Bar #14361)
Jeffrey Bossert Clark                                R. Keith Jarrett (Bar #16984)
Aditya Bamzai                                        Liskow & Lewis
Kirkland & Ellis LLP                                 701 Poydras Street, Suite 5000
655 Fifteenth Street, N.W.                           New Orleans, Louisiana 70139-5099
Washington, D.C. 20005                               Telephone:  504 -581-7979
202- 879-5000 (Tel)                                  Facsimile:  504 -556-4108
202- 879-5200 (Fax)


                                                     Richard C. Godfrey, P.C.
Joel M. Gross                                        J. Andrew Langan, P.C.
Brian Israel                                         Kirkland & Ellis LLP
Allison Rumsey                                       300 North LaSalle Street
Arnold & Porter LLP                                  Chicago, IL 60654
555 Twelfth Street, NW                               312- 862-2000 (Tel)
Washington, DC  20004-1206                           312- 862-2200 (Fax)
E-Mail:  Joel.Gross@aporter.com
Telephone:  202- 942-5000                            Robert C. "Mike" Brock
Facsimile:  202- 942-5999                            Covington & Burling LLP
                                                     1201 Pennsylvania Avenue, NW
                                                     Washington, DC 20004-2401
                                                     202- 662-5985

                                                     ***Attorneys for BP Exploration & Production Inc.***

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of January, 2012.

                                              /s/ Don K. Haycraft  
                                              Don K. Haycraft