**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater | * | |
| Horizon" in the Gulf of Mexico, | * | MDL No. 2179 |
| on April 20, 2010, | * | |
| | * | Section: J |
| This Pleading applies to: | * | |
| | * | Judge Barbier |
| | * | |
| *All Cases (including Case No. 2:10-cv-04536* | * | Magistrate Judge Shushan |
| *(United States v. BP Exploration &* | * | |
| *Production Inc., et al.))* | * | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**BP EXPLORATION & PRODUCTION INC.'S RESPONSES TO THE
TRANSOCEAN DEFENDANTS' ASSERTIONS OF FACT, FILED IN RESPONSE TO
THE UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO
THE LIABILITY OF BP EXPLORATION & PRODUCTION INC.,
THE TRANSOCEAN DEFENDANTS, AND THE ANADARKO DEFENDANTS**

BP respectfully submits the following response to the Transocean Defendants' assertions of fact. The focus of BP's responses below is on paragraphs in which the Transocean Defendants make affirmative statements of fact that the Transocean Defendants might contend support their cross-motion for summary judgment. Accordingly, where the Transocean Defendants have not made affirmative statements of facts that can be read to support their cross-motion, BP has simply responded that "The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary."

1. BP acquired Lease OCS-G 32306 for Block 252, Mississippi Canyon, OCS Official Protraction Diagram, NH 16-10 ("Lease"), effective June 1, 2008.

   **TRANSOCEAN RESPONSE:** Undisputed

   **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

2. An exploratory well was constructed on Block 252, Mississippi Canyon, the "Macondo Well."

   **TRANSOCEAN RESPONSE:** Undisputed

   **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

3. The Macondo Well is located on the Outer Continental Shelf approximately 50 miles from the Mississippi River delta.

   **TRANSOCEAN RESPONSE:** Undisputed

   **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

4. From at least October 1, 2009, the MODU *Transocean Marianas* was owned and/or operated by the Transocean Defendants. On or about October 2009, the *Transocean Marianas* began to be used for drilling of the Macondo Well.

   **TRANSOCEAN RESPONSE:** Disputed that *Transocean Marianas* was owned or operated by any of the Transocean Defendants other than Transocean Holdings, LLC. Undisputed that 1) Triton Asset Leasing GmbH was the legal owner of the *Transocean Marianas*; 2) Transocean Holdings LLC bareboat chartered the *Transocean Marianas* from Triton Asset Leasing GmbH and had a drilling contract for the vessel; and 3) Transocean Holdings LLC was both the owner *pro hac vice* and the operator of the *Transocean Marianas*.

   **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** Uncontested for purposes of the Transocean Defendants' Cross-Motion.

5. Beginning on or about February 2010, the MODU *Deepwater Horizon* replaced the *Transocean Marinas* for the purpose of continuing the drilling of the Macondo Well. Drilling of the Macondo Well using the *Deepwater Horizon* continued in February 2010 and through March and a portion of April 2010.

   **TRANSOCEAN RESPONSE:** Undisputed

   **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

6. The *Deepwater Horizon* is a vessel.

   **TRANSOCEAN RESPONSE:** Undisputed

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

7. The *Deepwater Horizon* is a mobile offshore drilling unit.

   **TRANSOCEAN RESPONSE:** Undisputed

   **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

8. Casings, tubulars, the well head and/or other components of the Macondo Well were installed in the wellbore prior to April 20, 2010.

   **TRANSOCEAN RESPONSE:** Undisputed

   **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

9. The Macondo Well is an "offshore facility" for purposes of the Clean Water Act, 33 U.S.C. § 1321(b), and the Oil Pollution Act, 33 U.S.C. § 2701 et al.

   **TRANSOCEAN RESPONSE:** Undisputed

   **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

### Undisputed Material Facts Related to the April 20, 2010 Incident and Subsequent Discharge of Oil

10. The Macondo Well cement job was critical for maintaining well control.

    **TRANSOCEAN RESPONSE:** Undisputed

    **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

11. The Macondo Well's cement job failed to prevent hydrocarbons from migrating into the wellbore.

    **TRANSOCEAN RESPONSE:** Undisputed

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

12. On April 20, 2011, there was a blowout of the Macondo Well, and fires and explosions on the drilling rig Deepwater Horizon.

**TRANSOCEAN RESPONSE:** Undisputed

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

13. Eleven men died as a result of the blowout.

**TRANSOCEAN RESPONSE:** Undisputed

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

14. Following the blowout on April 20, 2010, there was a discharge of oil into the Gulf of Mexico.

**TRANSOCEAN RESPONSE:** Undisputed that there was a discharge of oil below the water; disputed that there was a discharge of oil on or above the surface of the water.

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** BP contests the Transocean Defendants' assertion that no oil was discharged at or above the surface of the water.  In fact, multiple witnesses report that hazardous substances, including a petroleum-based mud mixture as well as gas and oil, were discharged at or above the surface of the water.



Before the first explosion, several people on the Deepwater Horizon saw a mud-based fluid mixture coming out of the well bore, "blowing to the crown [block]" of the drilling rig mechanism and "raining down" to cover the rig deck█████████████████████. Ex. 7 (Deposition of Miles Ezell, at p. 230); Ex. 8 (Deposition of David Young, at pp. 151-52, 222-23)████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████ Indeed, the mixture of
mud, gas, and hydrocarbons emitting from the riser started the various explosions and
fires that hit the *Deepwater Horizon*.

15. Oil from the MC 252 reservoir flowed through the Macondo Well and was discharged to
the Gulf of Mexico from the Deepwater Horizon and then from the broken riser pipe
and/or BOP after the *Deepwater Horizon*'s sinking.

**TRANSOCEAN RESPONSE:** Disputed in its entirety (no admissible evidence to
support the statement)

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** BP reaffirms its January 9,
2012 Response, confirming that oil that once existed deep inside the Outer Continental
Shelf travelled during the spill out of the Macondo reservoir, through the well, and then
through Transocean-owned vessel appurtenances including the BOP and riser, before
discharging into Gulf of Mexico waters or being captured by various containment
methods.  BP contests the Transocean Defendants' assertion that there is no evidence
demonstrating any release of oil from the *Deepwater Horizon* vessel.  In fact, multiple
witnesses have testified, and investigative reports have concluded, that large volumes of
hydrocarbons came up through the drill pipe and were discharged through the *Deepwater
Horizon*'s mud-gas separator and through vents onto the rig deck and into the Gulf of
Mexico, causing multiple explosions and fires throughout the evening.  *See supra* ¶ 14.
Additionally, the Transocean Defendants' concession in the next paragraph (16) that "oil
was discharged from the Macondo Well through the BOP and riser into the Gulf of
Mexico" bars it from disputing the United States' assertions in this paragraph (15)
because the BOP and riser are appurtenances, *i.e.*, parts of the *Deepwater Horizon*.
Hence, the Transocean Defendants have already conceded the allegations of the United
States in this paragraph.  *See infra* ¶ 16.

16. The discharge also emanated from the *Deepwater Horizon* vessel, including from its
appurtenances, the BOP and riser, into the Gulf of Mexico.

**TRANSOCEAN RESPONSE:** Undisputed that oil was discharged from the Macondo
Well through the BOP and riser into the Gulf of Mexico.  Disputed that oil was
discharged from the *Deepwater Horizon* into the Gulf of Mexico.

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants
concede in their memorandum supporting their cross-motion for summary judgment that
the BOP and riser were appurtenances of the *Deepwater Horizon* vessel — *i.e.*, parts of
that vessel.  *See* Rec. Doc. #5103 ("It is also undisputed that the oil discharged
underwater originated from the Macondo well, and then flowed through the BOP and/or
the riser, *which are appurtenances of the vessel*.") (emphasis added).  Together with the

statement by the Transocean Defendants in this paragraph (16) that it is "[u]ndisputed that oil was discharged from the Macondo Well through the BOP and riser into the Gulf of Mexico," this amounts to a concession that oil was discharged into the Gulf of Mexico from the *Deepwater Horizon* vessel, since it was discharged from the *Deepwater Horizon*'s conceded appurtenances into the Gulf of Mexico. Thus, the Transocean Defendants' statement in this paragraph that "oil was discharged from the *Deepwater Horizon* into the Gulf of Mexico" is incorrect.

17. The oil caused a film or sheen or discoloration on the surface of the water.

**TRANSOCEAN RESPONSE:** Undisputed that oil released caused a film, sheen or discoloration on the surface of the water. Disputed that such effect was caused by oil discharged from the *Deepwater Horizon*.

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** BP contests the Transocean Defendants' assertion that there is no evidence demonstrating any release of oil from the *Deepwater Horizon* vessel. In fact, multiple witnesses have testified and investigative reports have concluded that large volumes of hydrocarbons came up through the drill pipe and were discharged through the *Deepwater Horizon's* mud-gas separator and through vents onto the rig deck and into the Gulf of Mexico, causing multiple explosions and fires throughout the evening. *See supra* ¶ 14. BP also contests the Transocean Defendants' legal conclusion that a discharge occurred "from" the Macondo well, for the reasons stated in the accompanying memorandum of law filed by BP against the United States and in BP's Responses to the United States' Statement of Undisputed Facts. The sheen was caused by oil discharges from appurtenances of the *Deepwater Horizon*. *See supra* ¶ 16.

18. The discharge of oil was in such quantities as may be harmful.

**TRANSOCEAN RESPONSE:** Undisputed that the discharge of oil from the Macondo Well was in such quantities as may be harmful. Disputed that such effect was caused by oil discharged from the *Deepwater Horizon*.

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** BP contests the Transocean Defendants' assertion that there is no evidence demonstrating any release of oil from the *Deepwater Horizon* vessel. In fact, multiple witnesses have testified and investigative reports have concluded that large volumes of hydrocarbons came up through the drill pipe and were discharged through the *Deepwater Horizon's* mud-gas separator and through vents onto the rig deck and into the Gulf of Mexico, causing multiple explosions and fires throughout the evening. *See supra* ¶ 14. BP also contests the Transocean Defendants' legal conclusion that a discharge occurred "from" the Macondo well, for the reasons stated in the accompanying memorandum of law filed by BP against the United States and in BP's Responses to the United States' Statement of Undisputed Facts. The sheen was caused by oil discharges from appurtenances of the *Deepwater Horizon*. *See supra* ¶ 16.

19. Some of the oil spread to within 200 nautical miles of the United States' coastline.

**TRANSOCEAN RESPONSE:** Undisputed that oil from the Macondo Well spread to within 200 nautical miles of the United States coastline.  Disputed that such effect was caused by oil discharged from the *Deepwater Horizon*.

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** BP contests the Transocean Defendants' assertion that there is no evidence demonstrating any release of oil from the *Deepwater Horizon* vessel.  In fact, multiple witnesses have testified and investigative reports have concluded that large volumes of hydrocarbons came up through the drill pipe and were discharged through the *Deepwater Horizon's* mud-gas separator and through vents onto the rig deck and into the Gulf of Mexico, causing multiple explosions and fires throughout the evening.  *See supra* ¶ 14.  BP also contests the Transocean Defendants' legal conclusion that a discharge occurred "from" the Macondo well, for the reasons stated in the accompanying memorandum of law filed by BP against the United States and in BP's Responses to the United States' Statement of Undisputed Facts.  The sheen was caused by oil discharges from appurtenances of the *Deepwater Horizon*.  *See supra* ¶ 16.

20. Some of the oil spread to within 3 miles of the coastline of the United States and onto adjoining shorelines.

**TRANSOCEAN RESPONSE:** Undisputed that oil from the Macondo Well spread to within 3 miles of the United States coastline and onto adjoining shorelines.  Disputed that such effect was caused by oil discharged from the *Deepwater Horizon*.

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** BP contests the Transocean Defendants' assertion that there is no evidence demonstrating any release of oil from the *Deepwater Horizon* vessel.  In fact, multiple witnesses have testified and investigative reports have concluded that large volumes of hydrocarbons came up through the drill pipe and were discharged through the *Deepwater Horizon's* mud-gas separator and through vents onto the rig deck and into the Gulf of Mexico, causing multiple explosions and fires throughout the evening.  *See supra* ¶ 14.  BP also contests the Transocean Defendants' legal conclusion that a discharge occurred "from" the Macondo well, for the reasons stated in the accompanying memorandum of law filed by BP against the United States and in BP's Responses to the United States' Statement of Undisputed Facts.  The sheen was caused by oil discharges from appurtenances of the *Deepwater Horizon*.  *See supra* ¶ 16.

21. The uncontrolled flow of oil continued for several months thereafter.

**TRANSOCEAN RESPONSE:** Undisputed that oil from the Macondo Well continued to flow for several months after April 20, 2010.  Disputed that such effect was caused by oil discharged from the *Deepwater Horizon*.

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** BP contests the Transocean Defendants' assertion that there is no evidence demonstrating any release of oil from the

*Deepwater Horizon* vessel.  In fact, multiple witnesses have testified and investigative reports have concluded that large volumes of hydrocarbons came up through the drill pipe and were discharged through the *Deepwater Horizon's* mud-gas separator and through vents onto the rig deck and into the Gulf of Mexico, causing multiple explosions and fires throughout the evening.  *See supra* ¶ 14.  BP also contests the Transocean Defendants' legal conclusion that a discharge occurred "from" the Macondo well, for the reasons stated in the accompanying memorandum of law filed by BP against the United States and in BP's Responses to the United States' Statement of Undisputed Facts.  The sheen was caused by oil discharges from appurtenances of the *Deepwater Horizon*.  *See supra* ¶ 16.

22. The Macondo Well was capped on July 15, 2010.

    **TRANSOCEAN RESPONSE:** Undisputed

    **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

### The Contractual Arrangements Among the Lessees

23. On or about November 18, 2009, BP and MOEX executed a Lease Exchange Agreement, whereby BP assigned to MOEX a 10% interest in the Lease. (Ex. 1 hereto).

    **TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

    **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

24. After MOEX and BP executed the assignment, it was submitted to MMS, which approved the assignment on February 23, 2010.

    **TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

    **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

25. BP assigned a 22.5% Record Title Interest in the Lease to A E&P Company LP ("A E&P"), effective October 1, 2009.  BP executed the assignment on or about December 17, 2009, A E&P submitted the assignment to MMS on February 11, 2010, and MMS approved the assignment on February 23, 2010.

**TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

26. BP assigned a 2.5% Record Title Interest in the Lease to APC. BP executed the assignment on or about December 17, 2009, APC submitted the assignment to MMS on or about February 12, 2010, and MMS approved the assignment on February 23, 2010.

**TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

27. On or about December 17, 2009, APC, A E&P and BP executed a Lease Exchange Agreement, whereby BP assigned to APC and A E&P collectively a 25% interest in the Lease. (Ex. 2 hereto).

**TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

28. A E&P assigned its 22.5% Record Title Interest in the Lease to APC. A E&P submitted the assignment to MMS on or about April 20, 2010, and MMS approved the assignment on April 28, 2010. APC and A E&P had agreed to an effective date of April 1, 2010.

**TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

29. As of April 20, 2010, MMS had not approved the A E&P reassignment of its interest in the Lease, and A E&P held 22.5% of the Lease.

**TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

30. After its assignments to MOEX, APC and A E&P, BP retained a 65% interest in the Lease.

   **TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

   **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

31. On or about December 17, 2009, BP, APC and an APC subsidiary, Kerr-McGee Oil and Gas Corporation, also entered into a Well Participation Agreement for the Macondo Prospect, whereby APC would own a 25% interest in the Macondo Well. (Ex. 3 hereto).

   **TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

   **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

32. As consideration for its 25% proportionate share of the Macondo Well, BP and APC agreed that APC would pay "1/3 for 1/4," or 33.33% of up to 110% of the estimated costs of the Macondo Well as set forth in the Initial Authorization for Expenditure.

   **TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

   **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

33. On or about November 18, 2009, BP and MOEX executed a Joint Operating Agreement that set forth their agreement among themselves as to their rights and responsibilities, operational duties, accounting mechanism, and many other terms as to the Macondo Prospect. The Anadarko Defendants executed a Ratification and Joinder of the Joint Operating Agreement on or about December 17, 2009. All signatories agreed that the Joint Operating Agreement would be retroactively effective as of October 1, 2009.

   **TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

### Additional Undisputed Facts Relevant to BP's Liability:

34. BP is liable as an "operator" of the Macondo Well under the CWA, 33 U.S.C. § 1321(b)(7).

    **TRANSOCEAN RESPONSE:** Undisputed

    **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

35. Pursuant to BP's obligations under its Agreements with MOEX and Anadarko, BP prepared an Authorization for Expenditure for the drilling of the initial exploratory well, Macondo Well. The AFE was executed by BP, MOEX, and Anadarko (Exs. 6, 7 hereto).

    **TRANSOCEAN RESPONSE:** Undisputed

    **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

36. Two supplemental AFEs were prepared to cover additional costs related to the drilling of the Macondo Well. These AFEs were executed by BP, MOEX, and Anadarko. (Exs. 6, 8, 9 hereto).

    **TRANSOCEAN RESPONSE:** Undisputed

    **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

37. A fourth AFE was prepared to authorize funding for the production casing for the Macondo Well. This AFE was executed on or around April 15, 2010, by BP, MOEX and Anadarko. (Exs. 6, 10 hereto).

    **TRANSOCEAN RESPONSE:** Undisputed

    **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

38. From January through May, 2010, BP sent "Joint Interest Billings" (JIBs) or invoices to co-owners MOEX and APC, which requested reimbursement to BP for the MOEX and

APC's proportionate share of costs of casing and other physical components of the Macondo Well.

**TRANSOCEAN RESPONSE:** Undisputed

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

39. The JIBs itemized tangible equipment – physical assets, such as the well head and casing – which was included as part of the proportionate costs to be reimbursed by APC and MOEX.

**TRANSOCEAN RESPONSE:** Undisputed

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

40. The JIBs for Macondo well costs did not include BP's proportionate share of the Macondo Well. BP retained a 65% ownership interest in the Macondo Well.

**TRANSOCEAN RESPONSE:** Undisputed

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

41. BP is a Delaware corporation.

**TRANSOCEAN RESPONSE:** Undisputed

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

**<u>Additional Undisputed Facts Relevant to<br>Transocean Defendants' Liability:</u>**

42. The Transocean Defendants admits that one or more of the Transocean Defendants were the owners, owners *pro hoc vice*, and/or operators of the MODU *Deepwater Horizon*.

**TRANSOCEAN RESPONSE:** Undisputed

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

43. The Transocean Defendants have admitted their ownership of the *Deepwater Horizon* in pleadings, discovery, and public reports.

   **TRANSOCEAN RESPONSE:** Undisputed that Defendant Triton Asset Leasing GmbH was the owner of the *Deepwater Horizon*.  Disputed that any other Transocean Defendant owned the *Deepwater Horizon*.

   **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** Uncontested for purposes of the Transocean Defendants' Cross-Motion.

44. The Transocean Defendants have admitted their operation of the MODU *Deepwater Horizon* in pleadings and discovery.

   **TRANSOCEAN RESPONSE:** Undisputed that Defendant Transocean Deepwater Inc. operated the *Deepwater Horizon*.  Disputed that any other Transocean Defendant operated the *Deepwater Horizon*.

   **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** Uncontested for purposes of Transocean's Cross-Motion.

45. The Transocean Defendants are corporations.

   **TRANSOCEAN RESPONSE:** Undisputed

   **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

**<u>Additional Undisputed Facts Relevant to<br>Anadarko Defendants' Liability:</u>**

46. Beginning in January, 2010, and continuing through May, 2010, APC received requests for payment from BP for costs associated with the construction of the Macondo Well in the form of invoices and cash call advances, which it paid timely. APC paid invoices from BP for its proportionate share of the costs of the components that were installed in the Macondo Well.

   **TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

   **BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

47. In the invoices, which also include costs associated with other Wells, the costs for the Macondo Well are identified and tracked by the reference number to the Authorization for Expenditure executed by APC for the Macondo Well.

13

**TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

48. The invoices were itemized to include strings of casing, cement, production casing, casing hanger, casing accessories, and the well head.

**TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

49. APC paid its 33.33% (or, 25% after 110% of the well costs of the initial AFE was exceeded) proportionate share of costs associated with the Macondo Well, including the costs of the tangible personal property, from October 1, through April 20, 2010.  It did not pay any of the costs of the incident or response to the explosion and spill. The final costs were paid through draw-down of a cash advance or cash call.

**TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

50. APC paid the proportionate share of costs sent to it on its own behalf.

**TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

51. APC was a partial owner of the components that were installed in the Macondo Well, including the strings of casing, cement, production casing, casing hanger, and the well head.

**TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

52. APC was a partial owner of tangible personal property comprising the Macondo Well.

**TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

53. APC was an owner of the Macondo Well.

**TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

54. Anadarko E&P is a limited liability company incorporated in the State of Delaware.

**TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

55. Anadarko Petroleum Corporation is a corporation incorporated in the State of Delaware.

**TRANSOCEAN RESPONSE:** Object to this statement as irrelevant to Transocean Defendants

**BP'S RESPONSE TO TRANSOCEAN'S RESPONSE:** The Transocean Defendants did not make an affirmative assertion that could support their cross-motion, so no response is necessary.

The Transocean Defendants did not dispute any additional or general facts, so no further contestations are necessary for the purpose of this filing.

Dated:      January 17, 2012

Respectfully submitted,


Robert R. Gasaway
Jeffrey Bossert Clark
Aditya Bamzai
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
202- 879-5000 (Tel)
202- 879-5200 (Fax)


Joel M. Gross
Brian Israel
Allison Rumsey
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC  20004-1206
E-Mail:  Joel.Gross@aporter.com
Telephone:  202- 942-5000
Facsimile:  202- 942-5999

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone:  504 -581-7979
Facsimile:  504 -556-4108


Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
312- 862-2000 (Tel)
312- 862-2200 (Fax)


Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202- 662-5985

*Attorneys for BP Exploration & Production Inc.*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of January, 2012.

                        /s/ Don K. Haycraft
                        Don K. Haycraft