UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE GULF | : | |
| OF MEXICO, ON APRIL 20, 2010 | : | SECTION J |
| | : | |
| THIS DOCUMENT RELATES TO: | : | JUDGE BARBIER |
| | : | |
| 2:10-CV-02771 | : | MAGISTRATE JUDGE SHUSHAN |
| | : | |

**UNITED STATES' RESPONSE TO BP'S MOTION IN LIMINE TO EXCLUDE PRIVILEGED COMMUNICATIONS RELATING TO THE SCOPE OF BP'S INTERNAL INVESTIGATION [DOC. # 5117]**

# Exhibit A

```
Redacted Version
of Exhibit A, Doc. 5240
```

Page 1

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL        )   MDL NO. 2179
BY THE OIL RIG          )
"DEEPWATER HORIZON" IN  )   SECTION "J"
THE GULF OF MEXICO, ON  )
APRIL 20, 2010          )   JUDGE BARBIER
                        )   MAG. JUDGE SHUSHAN


               *****************
                    VOLUME 1
               *****************


     Deposition of Sir William Castell, taken at
Kirkland & Ellis International, 30 St. Mary Axe,
22nd Floor, London EC3A 8AF, England, United Kingdom,
on the 22nd of June, 2011.
```

Page 2

```
 1              A P P E A R A N C E S
 2
 3
 4   APPEARING FOR THE PLAINTIFFS' STEERING COMMITTEE:
         Mr. Robert T. Cunningham
 5       CUNNINGHAM BOUNDS, LLC
         1601 Dauphin Street
 6       Mobile, Alabama  36604
 7
     APPEARING FOR THE DERIVATIVE PLAINTIFFS, MDL 2185
 8   SECURITIES PLAINTIFFS SUBCLASS:
         Mr. Bryan M. Payne
 9       COTCHETT, PITRE & MCCARTHY
         San Francisco Airport Office Center
10       840 Malcolm Road, Suite 200
         Burlingame, California  94010
11
12   APPEARING FOR MDL PLAINTIFFS:
         Mr. J. Christopher Zainey, Jr.
13       WILLIAMS LAW GROUP, LLC
         909 Poydras Street, Suite 1650
14       New Orleans, Louisiana 70112
         Maison Grand Caillou
15       435 Corporate Drive, Suite 101
         Houma, Louisiana 70360
16
17   APPEARING FOR BP, INC.:
         Mr. Michael Brock
18       Ms. Kimberly Branscome
         COVINGTON & BURLING
19       1201 Pennsylvania Avenue, Northwest
         Washington, D.C.  20004-2401
20
         Mr. Daryl A. Libow
21       SULLIVAN & CROMWELL
         1701 Pennsylvania Avenue, N.W.
22       Washington, D.C.  20006-5805
23
24
25
```

Page 3

```
 1       Mr. James J. Neath
         Associate General Counsel
 2       BP Legal
         BP AMERICA INC.
 3       501 Westlake Park Boulevard
         Houston, Texas  77079
 4
         Mr. John Gilbert
 5       BP PLC
         20 Canada Square
 6       London E14 5NJ
         United Kingdom
 7
 8   APPEARING FOR SIR WILLIAM CASTELL:
         Mr. Walter Stuart
 9       Mr. Geoff Nicholas
         FRESHFIELDS BRUCKHAUS DERINGER
10       65 Fleet Street
         London EC4Y 1HS
11       Great Britain
         United Kingdom
12
         Mr. Robert J. McCallum
13       FRESHFIELDS BRUCKHAUS DERINGER
         520 Madison Avenue, Level 34
14       New York, New York  10022
15
     APPEARING FOR TRANSOCEAN:
16       Mr. Michael A. Carvin
         JONES DAY
17       51 Louisiana Avenue, N.W.
         Washington, D.C.  20001-2133
18
         Mr. Sean O'Brien
19       SUTHERLAND ASBILL & BRENNAN
         1275 Pennsylvania Avenue, N.W.
20       Washington, D.C.  20004
21
     APPEARING FOR ANADARKO PETROLEUM COMPANY:
22       Ms. Deborah D. Kuchler
         Mr. Robert E. Guidry
23       KUCHLER POLK SCHELL WEINER & RICHESON
         1615 Poydras Street, Suite 1300
24       New Orleans, Louisiana 70112
25
```

Page 4

```
 1   APPEARING FOR CAMERON INTERNATIONAL CORPORATION:
         Mr. Thomas Ganucheau
 2       BECK, REDDEN & SECREST
         One Houston Center
 3       1221 McKinney Street, Suite 4500
         Houston, Texas  77010-2010
 4
 5   APPEARING FOR MOEX:
         Ms. Gindi Eckel Vincent
 6       PILLSBURY WINTHROP SHAW PITTMAN
         2 Houston Center
 7       909 Fannin, Suite 2000
         Houston, Texas  77010-1018
 8
 9   APPEARING FOR DRIL-QUIP, INC.:
         Mr. C. Dennis Barrow, Jr.
10       WARE, JACKSON, LEE & CHAMBERS
         America Tower, 42nd Floor
11       2929 Allen Parkway
         Houston, Texas  77019-7101
12
13   APPEARING FOR M-I SWACO:
         Mr. Steven A. Luxton
14       MORGAN, LEWIS & BOCKIUS, LLP
         1111 Pennsylvania Avenue, NW
15       Washington, D.C.  20004
16
     APPEARING FOR HALLIBURTON:
17       Mr. Donald E. Godwin
         Ms. Jenny L. Martinez
18       Mr. R. Alan York
         GODWIN RONQUILLO
19       1201 Elm Street, Suite 1700
         Dallas, Texas 75270-2041
20
21   APPEARING FOR THE UNITED STATES:
         Mr. R. Michael Underhill
22       Attorney in Charge
         West Coast Office
23       U.S. DEPARTMENT OF JUSTICE
         TORT BRANCH, CIVIL DIVISION
24       450 Golden Gate Avenue
         7th Floor, Room 5395
25       San Francisco, California  94102-3463
```

**PURSUANT TO CONFIDENTIALITY ORDER**

233

234

235

13   Q.  Thank you very much for the clarification.
14   Who's Tony Burgmans?
15   A.  Tony Burgmans is an Independent Director of
16 BP.
17   Q.  Based in the U.K. or the States?
18   A.  He's Dutch. He was based in Holland.

236

9    Q.  And I take it from your prior testimony that
10 as we sit here today, a year and two days after you
11 drafted this Memo to file, that there is still no
12 investigation of BP's internal safety culture as it
13 relates to the DEEPWATER HORIZON?
14      MR. BROCK: Object to form.
15   A.  I believe I stated, sir, I can't affirm either
16 way what the position is. I am not aware of whether
17 the company is continuing with a systemic culture
18 review or that the company is not continuing with a
19 systemic culture review. I don't know the answer to
20 that question.
21   Q.  (By Mr. Underhill) Well, you continue to
22 word -- use the word "continuing." Can you tell me
23 when it began a cultural internal review of its safety
24 culture as it relates to the DEEPWATER HORIZON. You
25 use the word "continuing," not me. So I'd like you to

59 (Pages 233 to 236)

**PURSUANT TO CONFIDENTIALITY ORDER**

501

1  Q. (By Mr. Godwin) Did -- let me read it again.
2      (Discussion off the record.)
3  Q. (By Mr. Godwin) Let's just read it again.
4      MR. BROCK: Just read along.
5      MR. GODWIN: Just stop the response,
6  Walter.
7      (Discussion off the record.)
8      MR. GODWIN: Ask him to just stop --
9      MR. STUART: He's only -- he's only
10 reading from here.
11 Q. (By Mr. Godwin) Let me read it again --
12 A. Okay, thank you.
13 Q. -- so you're with me.
14 A. Yeah.

502

23 Q. Okay. Well, did you ask him why he was not
24 going to -- as the Chair of SEEAC, did you ask him,
25 "Why, Mr. Bly, if you're independent, why are you not

503

1  going to investigate the systemic root causes?"
2      Did you make such inquiry?
3      MR. BROCK: Object to form.
4  A. I had debates at a later date within the
5  company, and I recall that the identification of the
6  critical factors at the earliest possible time was
7  where the company was trying to drive, and that's why
8  this was carried out in this way.
9  Q. (By Mr. Godwin) Well, you say the company was
10 trying to drive it. You said the Bly Report was
11 independent of the company. Now you're saying now that
12 the company was driving the investigation by what was
13 going to be investigated? Is that what you're telling
14 us?
15     MR. STUART: Objection, form.
16     MR. BROCK: Object to form.
17 A. I believe that the Bly Report was agreed, the
18 conditions of the Bly Report were either agreed with
19 Tony Hayward or another Senior Executive or Senior
20 Director. And I believe that those -- and from -- it
21 was to be an independent Report in accordance with
22 cert -- certain details.
23     I did inquire as to why this exclusion, and I
24 was advised that to get a -- immediacy of the Report,
25 this was the scope that they felt was appropriate, and

504

1  so that was my advice, sir.
2  Q. (By Mr. Godwin) And -- and they --
3  A. Not -- not that there was any issue of
4  independence, but the scope had been determined by the
5  company.
6  Q. The scope of the Report of the investigation
7  was determined by BP, correct?
8  A. Correct.
9      MR. BROCK: Object to form.
10 Q. (By Mr. Godwin) And Mr. Bly then carried out
11 the scope of the company in performing the
12 investigation and issuing the Report, correct?
13 A. The scope of the report had been agreed by an
14 Executive at the company, either Hayward or another
15 Executive or Director.
16 Q. And Mr. Bly simply carried out that scope in
17 doing his investigation, correct?
18     MR. BROCK: Object to form.
19 A. And he was required to commit to that scope in
20 an independent fashion.
21 Q. (By Mr. Godwin) Okay, sir. So the scope of
22 the work was determined by either Mr. Hayward and/or
23 another Senior Executive, it was told to Mr. Bly,
24 Mr. Bly had to commit that he was going to follow that
25 scope, and then he performed his investigation; isn't



**PURSUANT TO CONFIDENTIALITY ORDER**

**505**

1  that what you just said?
2      MR. BROCK: Object to form.
3   A. That is what I believe I said, sir.
4   Q. (By Mr. Godwin) Thank you, sir.
5      And aft --
6      MR. UNDERHILL: Could we just -- could we
7  have this portion marked, Mr. Reporter?
8      MR. GODWIN: Yeah, you can mark it
9  yourself, Mike. There's -- on your deal. Let me go
10 ahead.
11     (Laughter.)
12  Q. (By Mr. Godwin) And then after you -- after
13 you -- after you -- after Mr. Bly finished carrying out
14 the scope that had been told to him by either
15 Mr. Hayward or another Senior Executive, in performing
16 the investigation, Mr. Bly thereafter prepared the
17 Report, did he not, sir, or had it prepared by others
18 on his Team?
19     MR. BROCK: Object to form.
20  A. I -- I need to correct one factor. I don't
21 know whether Mr. Bly was instructed as to the scope of
22 the Report, or whether he recommended. I am certainly
23 aware that there was -- the Minutes record him agreeing
24 the scope of the Report with one of the Senior
25 Executive Directors.

**506**

1   Q. (By Mr. Godwin) Okay, sir.
2   A. I don't know whether the scope was specified
3  to him or whether he recommended it. I have become
4  subsequently aware of the ETP that covers this type of
5  activity.
6   Q. Okay.
7   A. I was impressed at the time that it was put in
8  hand so quickly. I later discovered that it was one of
9  the standard principles of the company. So it became
10 clear to me that I should be -- you know, expect it as
11 against be impressed.
12  Q. Right. What I hear you saying is, and -- and
13 the record will stand for what you've said, but you do
14 believe that Mr. Bly discussed with one or more Senior
15 Executives of BP the scope of the work, and that he and
16 one or more Executives with BP, agreed upon what the
17 scope of the investigation was going to be; is that
18 correct?
19     MR. BROCK: Objection, form.
20  A. In accordance, I believe, with the ETP on
21 these types of activities.
22  Q. (By Mr. Godwin) He agreed with the BP
23 Executive, Mr. Tony Hayward or another gentleman, what
24 the scope would be, and then he thereafter performed
25 that scope, per the agreement with the BP Executive,

**507**

1  correct?
2      MR. BROCK: Objection, form.
3   A. I believe that to be the case.
4



**508**

1

**PURSUANT TO CONFIDENTIALITY ORDER**