# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois 60654

Andrew Langan, P.C.
To Call Writer Directly:
(312) 862-2064
andrew.langan@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

January 12, 2012

**VIA EMAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court
500 Poydras Street, Room B-345
New Orleans, LA 70130

> Re:   In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, MDL No. 2179

Dear Judge Shushan:

While the parties have worked diligently to narrow the issues arising from the proposed Phase II 30(b)(6) topics, BP and the PSC have reached an impasse that requires the Court's attention. Specifically, the PSC's newly proposed Topic 1 to BP substantively overlaps with two Source Control topics propounded to BP during Phase I discovery. In response to those prior topics, BP produced documents and five corporate witnesses to testify as to all of the different Source Control methods attempted during the Source Control effort. BP should not be required to testify twice on the identical topics.

On March 23, 2011, after significant negotiation, the PSC served its initial 30(b)(6) notice on BP, which included the following topics:

**Topic 4:** Potential costs, risks, benefits and other analyses or evaluations of potential methods to cap, control, contain, shut-in and/or kill the Macondo Well after April 20, 2010.

**Topic 5:** Evaluation, study and/or analysis of any potential method or technique to cap, control, contain, shut-in, temporarily abandon, and/or kill the Macondo Well after April 20, 2010, including the possible risks, benefits or other consequences thereof.[1]

---

[1] See May 11, 2011 The BP Parties' Fourth Amended Responses and Objections to Plaintiffs' Agreed 30(b)(6) Deposition Notice With 30(b)(5) Document Requests (Exhibit A). Several other parties were served with similar topics, but did not provide extensive testimony. See, e.g., June 29-30, 2011 Dep. of L. McMahan at

Hong Kong   London   Los Angeles   Munich   New York   Palo Alto   San Francisco   Shanghai   Washington, D.C.

K&E 20880008.3

KIRKLAND & ELLIS LLP

January 12, 2012
Page 2

In response, BP designated five senior employees as the corporate witnesses for both topics. These witnesses were deposed over eight days in May and June 2010, and their testimony, including these two topics, covered 2,744 pages of transcript. Four of the five witnesses were the BP vice presidents who led the project teams for source control methods on which they were designated. The remaining witness, Mr. Mazzella, was the Technical Authority for Well Control across all of BP who led the offshore "kill" teams for the methods on which he was designated. In addition to their significant personal knowledge, these corporate witnesses were prepared to cover all aspect of Topics 4 & 5, and no party complained that these witnesses were unprepared.

Despite BP's extensive testimony on the various source control methods, the PSC included the following topic in its new set of proposed 30(b)(6) topics to BP:

1. For any and all attempts after April 20, 2010, to cap, control, contain, shut in, limit flow from, temporarily abandon and/or kill the Macondo Well by each of the following methods and any other method(s) used but not listed here: Actuation of the Deepwater Horizon BOP, Riser Insertion Tube Tool ("RITT"), Top Hat, Top Kill, Junk Shot, Cofferdam, Capping Stack, BOP on BOP strategies, Macondo Relief Well No. 1 and Macondo Relief Well No. 2 (hereinafter, collectively referred to as "Methods"):

    a. The total cost that BP incurred on each attempt and/or Method, including, but not limited to, labor, payments made to contractors and/or other entities working on BP's behalf, materials, overhead and the cost of removal of any replaced components, parts, equipment, material, and/or supplies;

    b. The level of approval necessary to fund and implement each attempt and/or Method, including the identity of each person who gave final approval;

    c. A description of the manner and methodology, including computer models, used to assess each attempt and/or Method;

    d. A description of the explanations and/or justifications for each attempt and/or Method made or prepared for approval within BP;

---

40:18-23, 66:17-20, 182:2-6, 183:23-184:3, 336:20-337:2, 400:11-401:14; March 30-31, 2011 Dep. of R. Vargo Dep. at 27:15-24, 338:7-16.

K&E 20880008.3

KIRKLAND & ELLIS LLP

January 12, 2012
Page 3

  e. Dates when planning began for each attempt and/or Method, including the length of time used to plan and budget;

  f. An explanation of and timeline for the steps involved in planning and/or implementing each attempt and/or Method;

  g. The identity of BP employees and contractors who planned, managed, and/or supervised the implementation of each attempt and/or Method;

  h. A description of each office, department, or other organization at BP that participated in the planning, budgeting, engineering, approval, supervision, coordination, or implementation of each attempt and/or Method; and

  i. For each Method actually attempted or performed by BP, BP's contractors and/or any other entity working on BP's behalf, an explanation of and timeline for the steps involved in performing the Method, the identity of BP employees and contractors who performed each Method, and the identity of documents (with custodians) recording the performance of each Method.

Oct, 20, 2011 Proposed 30(b)(6) Notice to BP, Topic 1 (Exhibit B).

  Although the PCS's proposed Topic 1 is broken into many subparts, the issues it seeks to cover for each source control method – cost, manner and methodology, timing and steps, and who was involved – are all encompassed by the broad topics of the March 23rd notice and the testimony provided. For example, the DOJ walked Richard Lynch, who was designated on all the containment methods and capping stack, through a timeline of what was done for each method, the risks and people involved, and why/how methods worked or didn't work. *See* May 18-19, 2011 Dep. of R. Lynch at p. 308-373.

  Further, as shown below, this new topic overlaps completely with the source control methods on which BP previously designated witnesses.[2]

---

[2] The only "Method" from this Topic not covered expressly by witnesses designated for Topics 4 & 5 in the March 23rd Notice is "BOP on BOP strategies." As this was not a source control method actual attempted, BP has offered to include "BOP on BOP strategies" in the PSC's proposed Topic 2, which is the same as Topic 1, but deals with methods considered but not attempted.

KIRKLAND & ELLIS LLP

January 12, 2012
Page 4

| "Methods" Identified in PSC's Proposed Topic 1 | BP Designation for Mar. 23, 2011 Topics 4 & 5 |
|---|---|
| "Actuation of the Deepwater Horizon BOP" | "Henry Theirens - BOP Intervention" |
| Riser Insertion Tube Tool ("RITT"), Top Hat, Cofferdam, Capping Stack | "Richard Lynch - near-term containment (e.g., cofferdam, top hats, etc.) and the capping stack" |
| Top Kill, Junk Shot, Macondo Relief Well No. 1 and Macondo Relief Well No. 2 | "Mark Mazzella - kill operations (e.g., top kill and static kill) and relief wells" |
| "any other method(s) used but not listed" | Kevin Kennelley - "the containment and disposal project (e.g., the freestanding riser systems)" |

As early as PTO 17, the Court instructed the parties that "no witness should be deposed more than once in this proceeding." Nov. 16, 2010 Pretrial Order No. 17 (Dkt. No. 740). There is no good cause for the PSC to get a second bite at the apple where, as here, BP has already produced documents and multiple corporate witnesses on the various source control methods used during the response. The PSC's proposed Topic 1 in its October 20, 2011 draft 30(b)(6) Notice to BP should be eliminated.

Sincerely,

*Andrew Langan, P.C. /mw*

Andrew Langan, P.C.

AL /cs

cc: MDL Liaison and Coordinating Counsel

K&E 20880008.3