UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179<br><br>SECTION "J" |
| **THIS PLEADING APPLIES TO:** | * * | JUDGE:  BARBIER |
| In Re The Complaint and Petition of Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc., as Owner, Managing Owners, Owners *Pro-Hac Vice*, and/or Operators of the MODU Deepwater Horizon, in a Cause for Exoneration from or Limitation of Liability<br><br>Civil Action Nos.: 2:10-md-2179 and 10-cv-4536 | * * * * * * * * * * * * * | MAGISTRATE:  SHUSHAN |

<u>**WEATHERFORD U.S., L.P. AND WEATHERFORD INTERNATIONAL, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(c) OF THE FEDERAL RULES OF CIVIL PROCEDURE**</u>

**MAY IT PLEASE THE COURT:**

      Cross-Defendants and Third-Party Defendants, Weatherford U.S., L.P. and Weatherford International, Inc. (collectively, "Weatherford"), respectfully submit this Memorandum in

{N2410961.1}

1

Support of their Motion for Judgment on the Pleadings Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## I.  INTRODUCTION

The United States brought claims against Transocean, among others, for civil penalties under the Clean Water Act (CWA), as well as for a determination that Transocean is liable under the Oil Pollution Act (OPA). In turn, Transocean asserted third-party claims against co-defendants, including Weatherford, for indemnity and contribution, which presumably include indemnity or contribution from Weatherford for any CWA civil penalties that Transocean is required to pay. (R. Doc. 2574). Transocean's claims against Weatherford are contrary to the CWA and well-established legal principles. Indeed, on January 19, 2012, at oral argument on another motion before this Court, the Department of Justice stated that Transocean cannot shift civil penalties assessed against it under the CWA to any other party. As explained below, the Department of Justice is clearly correct, and Transocean's claims against Weatherford should be dismissed.

## II.  LAW AND ARGUMENT

**A.**     **Legal Standard**

A court reviews a motion for judgment on the pleadings under Rule 12(c) using the same standard as is used for a motion to dismiss under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(c), 12(b)(6); *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citations omitted). "[T]he central issue is whether in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (internal quotations omitted). A court should dismiss a complaint if the alleged facts, even if true, will not entitle the claimant to relief on the theories asserted. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Moreover, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

**B.     Transocean Cannot Shift Liability to Weatherford Because Weatherford Is Not Liable for CWA Civil Penalties.**

Transocean is alleged to have violated the civil penalty provision contained in Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A).[1]  By its terms, that provision applies to only certain specified persons, namely, "the owner, operator, or person in charge of any vessel, onshore facility, or offshore facility from which oil or a hazardous substance is discharged in violation" of the CWA.  The United States alleges that Transocean was such an "owner, operator or person in charge" by virtue of its ownership and operation of the *Deepwater Horizon*.

By contrast, there is no allegation that Weatherford was an owner, operator or person in charge under the CWA.  Indeed, the United States has filed no claim against Weatherford whatsoever, and no party has alleged that Weatherford was an owner, operator, or person in charge.  Furthermore, the undisputed evidence in the record shows that Weatherford was not an owner, operator, or person in charge.  Rather, Weatherford was merely a manufacturer of certain equipment selected by BP for use in running casing and cement placement in the Macondo Well,

---

[1] Section 311(b)(7)(A) provides:

> Any person who is the owner, operator, or person in charge of any vessel, onshore facility, or offshore facility from which oil or a hazardous substance is discharged in violation of [§ 311(b)(3)], shall be subject to a civil penalty in an amount up to $25,000 per day of violation or an amount equal to $1,000 per barrel of oil or unit of reportable quantity of hazardous substance discharged.

33 U.S.C § 1321(b)(7)(A).  Section 311(b)(3) prohibits the

> discharge of oil or hazardous substances (i) into or upon the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone, or (ii) in connection with activities under the Outer Continental Shelf Lands Act . . . in such quantities as may be harmful. . . .

33 U.S.C. § 1321(b)(3).

including the float collar, float shoe, and centralizers. Because Weatherford was not an owner, operator or person in charge under the CWA, it is not subject to civil penalties under Section 1321(b)(7)(A).

Transocean's attempt to assert indemnity and contribution claims against Weatherford for civil penalties controverts the express limitations on the type of parties that may be found liable under the CWA. For that reason, Transocean's claims against Weatherford are impermissible. They violate the principle that a defendant held liable under a federal statute can have a right to contribution or indemnification only "from another who has also violated the statute." *Mortgages, Inc. v. U. S. Dist. Court*, 934 F.2d 209, 212 (9th Cir. 1991); *U. S. v. Dynamics Research Corp.*, 441 F.Supp.2d 259, 263-64 (D. Mass. 2006); *Envtl. Conservation Org. v. Bagwell*, Civil Action No. 4:03-CV-807-Y, 2005 WL 2465003, at *3 (N.D. Tex. Sept. 30, 2005) (citing *Mortgages, Inc. v. U. S. Dist. Court*, 934 F.2d at 212) (quotation omitted).

As the Supreme Court has explained, the premise for a contribution or indemnity claim against a third party arising out of a statutory violation is that the third-party defendant is liable under the statutory provision at issue, and the plaintiff could recover from either the defendant or third-party defendant under the statute. *Nw. Airlines, Inc. v. Transp. Workers Union*, 451 U.S. 77, 87-89 & n.20 (1981) (Equal Pay Act and Title VII violations); *see also In the Matter of Reading Co.*, 115 F.3d 1111, 1124 (3rd Cir. 1997) ("[W]hen there is no question that joint liability is lacking, a necessary element to establish contribution cannot be proven."); *Colorado v. ASARCO, Inc.*, 608 F.Supp. 1484, 1492 (D. Colo. 1985) (observing that contribution was not available where third party did not violate statute at issue: "It is settled law that contribution is only available where joint liability can be imposed."). Notably, Weatherford has found absolutely <u>no</u> case law upholding a contribution or indemnity claim for civil penalties from a

party that is not liable under the CWA.[2] Because Weatherford does not fall within the definition of persons who may be liable under the CWA civil penalty provisions, Transocean's claims against it for contribution and indemnity under those provisions must be dismissed.

C. **Transocean Cannot Shift Liability to Weatherford Because There Is No Right to Indemnity or Contribution under the CWA Penalty Provisions.**

In *Tug Ocean Princess, Inc. v. United States*, 436 F. Supp. 907 (S.D.N.Y. 1977), *rev'd in part, aff'd in part*, 584 F.2d 1151 (2d Cir. 1978), *cert. denied*, 440 U.S. 959 (1979), the court held that there is no right to indemnity under the CWA civil penalty provisions.[3] *Accord United States v. Tex-Tow, Inc.*, 589 F.2d 1310, 1316 (7th Cir. 1978) (holding the owner or operator of a discharging facility liable for CWA civil penalties "even where it exercised all due care and a third party's act or omission was the immediate cause of the spill"); *cf. United States v. Savoy Senior Housing Corp.*, Civil Action No. 6:06cv031, 2008 WL 631161, at *4-8 (W.D. Va. Mar. 6, 2008) (finding no right to contribution or indemnity for civil penalties under section 309(d) of the CWA); *Envtl. Conservation Org. v. Bagwell*, 2005 WL 2465003, at *2 (finding no right to contribution under the CWA citizens suit provision). A careful review of the applicable CWA provisions leaves no doubt that this conclusion is correct.[4]

---

[2] *Montauk Oil Transportation Corp. v. Tug "El Zorro Grande,"* 54 F.3d 111 (2d Cir. 1995), although Weatherford believes wrongly decided, is not to the contrary. In that case, the New York Department of Environmental Conservation sued a barge owner for, among other things, CWA civil penalties arising from a spill. The court allowed an indemnification claim by the barge owner against the tug boat operator who had admitted to being the sole cause of the spill. *Id.* at 112, 115. As an "operator" under the CWA, the tug boat operator was also liable for civil penalties under the CWA. *See* 33 U.S.C.§ 1321(a)(6).

[3] *Tug Ocean Princess* involved administrative penalties under § 311(b)(6) of the CWA, 33 U.S.C. 1321(b)(6), while this case involves judicial penalties under § 311(b)(7), 33 U.S.C. 1321(b)(7). For purposes of this Court's analysis, there is no substantive difference between those two civil penalty provisions.

[4] Contractual indemnity is not at issue between Transocean and Weatherford, and Weatherford takes no position as to contract-based indemnity.

The test for determining whether there is any right to contribution or indemnification under a federal statute is well established. As stated in *Mortgages, Inc. v. United States District Court*,

> A defendant held liable under a federal statute has a right to contribution or indemnification from another who has also violated the statute only if such right arises (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) via the power of the courts to formulate federal common law.

934 F.2d at 212 (citations omitted); *see also Envtl. Conservation Org. v. Bagwell*, 2005 WL 2465003, at *3 (quotation and citation omitted); *The Heart Doctors, P.S.C. v. Layne*, Civil Action No. 6:05-636, 2006 WL 2692694, at *2 (E.D. Ky. Sep. 13, 2006); *Don King Productions/Kingvision v. Ferreira*, 950 F. Supp. 286, 289 (E.D. Cal. 1996).

Applying this test to the CWA civil penalty provisions, it is clear there is no right to contribution or indemnity. No express right to indemnification and contribution exists under those provisions. *See* 33 U.S.C. § 1321(b)(7); *United States v. Savoy Senior Housing Corp.*, 2008 WL 631161, at *5 ("The CWA contains no express provision allowing for contribution"). Nor did Congress create such a right implicitly. To the contrary, in *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 18 (1981), the Supreme Court concluded that implied rights of action do not exist under the CWA, cautioning: "Where, as here, Congress has made clear that implied private actions are not contemplated, the courts are not authorized to ignore this legislative judgment." *See also Fiscella & Fiscella v. United States*, 717 F.Supp. 1143, 1146 (E.D. Va. 1989).

Several factors strongly support the conclusion that there is no implied right of action for contribution or indemnity. First, is that "Congress' intent in enacting the [CWA] was clearly to establish an all-encompassing program of water pollution regulation," *Milwaukee v. Illinois*, 451

U.S. 304, 318 (1981), with "unusually elaborate enforcement provisions," *Middlesex*, 453 U.S. at 13.  As the Fifth Circuit has observed, "The legislative history of section 1321 clearly shows that Congress desired a comprehensive solution to the nation's oil spill problem."  *United States v. W. of England Ship Owner's Mut. Prot. & Indem. Ass'n*, 872 F.2d 1192, 1200 (5th Cir. 1989) (citing S. Rep. No. 351, 91st Cong., 1st Sess. at 4, 7 (1969), *reprinted in* III EPA Compilation of Legal Authority, Legislative History of the Federal Water Pollution Control Act of 1984, at 4, 7 (1973)).  Because Congress "has occupied the field through the establishment of a comprehensive regulatory program supervised by an expert administrative agency," *Milwaukee v. Illinois*, 451 U.S. at 317, the courts have repeatedly rejected any attempts by private parties that would expand the scope of liability defined by the Act, *see, e.g.*, *id.*; *Middlesex*, 453 U.S. at 18 ("Congress intended that private remedies in addition to those expressly provided should not be implied"); *Fiscella & Fiscella v. United* States, 717 F. Supp. at 1146 (same).  As the *Middlesex* Court stated, "we are compelled to conclude that Congress provided precisely the remedies it considered appropriate."  453 U.S. at 15.

In addition, the structure and language of the statute further refutes any implied right to contribution or indemnification for civil penalties.  The civil penalty provisions in Section 311(b) impose strict liability on owners and operators based on their status without regard to fault or causation.  *United States v. Coastal States Crude Gathering Co.*, 643 F.2d 1125, 1127 (5th Cir. 1981); *Tex-Tow, Inc.*, 589 F.2d at 1314, 1316; *United States v. Marathon Pipe Line Co.*, 589 F.2d 1305, 1307 (7th Cir. 1978).  Transocean's third-party claim is based on its allegation that the Macondo spill was "caused in whole or in part by the . . . Third-Party Defendants." (R. Doc. 2574 at ¶ 42).  However, as explained in *Tex-Tow*, causation by third parties is irrelevant under the civil penalty strict liability regime, and therefore contribution has no place:

> [Defendant owner-operator] was engaged in the type of enterprise which will inevitably cause pollution and on which Congress has determined to shift the cost of pollution when the additional element of an actual discharge is present. . . . An [owner-operator] can foresee that spills will result despite all precautions and that some of these will result from the acts or omissions of third parties. . . . . Congress had the power to make certain oil-related activities or enterprises the "cause" of the spill rather than the conduct of a third party. With respect to the civil penalty Congress has exercised this power.

*Unites States v. Tex-Tow, Inc.*, 589 F.2d at 1314. Thus, Transocean's allegation that the spill was "caused in whole or in part" by Third Parties such as Weatherford simply has no bearing on Transocean's strict liability for civil penalties under Section 311(b) and provides no basis for shifting those penalties to Weatherford. *See id.* at 1316.

By contrast – and as further evidence of Congress's intent – where Congress wanted to permit a defendant to assert a causation defense against a third party, it did so expressly. In addition to civil penalties under Section 311(b), Congress also imposed liability for the actual costs of removal and cleanup under Section 311(f). 33 U.S.C. § 1321(f).[5] Unlike with civil penalties, causation is integral to liability for removal and cleanup costs under Section 311(f), *see In the Matter of Aldi, Inc.*, EPA Docket No. CWA-7-2000-0015, 2001 WL 586824 (Feb. 7, 2001), and the statute provides a causation defense to such costs where a discharge was caused solely by a third party, *see* 33 U.S.C. § 1321(g).[6]

---

[5] 33 U.S.C. § 1321(f)(1) provides in part:

> Except where an owner or operator can prove that a discharge was caused solely by (A) an act of God, (B) an act of war, (C) negligence on the part of the United States Government, or (D) an act or omission of a third party . . . , or any combination of the foregoing clauses, such owner or operator of any vessel from which oil or a hazardous substance is discharged in violation of [§ 311(b)(3)] shall, notwithstanding any other provision of law, be liable to the United States Government for the actual costs incurred . . . for the removal of such oil or substance by the United States Government . . . .

[6] 33 U.S.C. 1321(g) provides in part:

{N2410961.1}

8

Furthermore, Congress's decision to impose civil penalties without indemnity and contribution serves "economic or risk-shifting" purposes, "as the party engaged in the potentially polluting enterprise is in the best position to estimate the risk of accidental pollution and plan accordingly, as by raising its prices or purchasing insurance.  Economically, it makes sense to place the cost of pollution on the enterprise . . . which statistically will cause pollution and in fact does cause pollution."  *Tex-Tow, Inc.*, 589 F.2d at 1314-15.

Moreover, a theoretical implied right to indemnification or contribution for civil penalties is further undermined by Section 311(b)(8), which governs the determination of the amount of civil penalties.  This provision requires the government to consider such factors, among others, as "the seriousness of the violation or violations, the economic benefit to the violator, if any, resulting from the violation, the degree of culpability involved, . . .the economic impact of the penalty on the violator, and any other matters as justice may require."  33 U.S.C. 1321(b)(8).  The government is required to apply these factors to match the amount of civil penalties to the culpability and other relevant circumstances of the owner or operator.  Section 311(b)(8) thereby eliminates the need for indemnity or contribution to mitigate the harshness of the civil penalties.  *See United States v. Tex-Tow,* 589 F.2d at 1313 ("absolute liability in the case of the civil penalty is not unduly harsh or unreasonable").  Indeed, in a worse case, Section 311(b)(8) combined with indemnity or contribution could provide the owner or operator with an unwarranted double benefit, as the owner or operator could potentially reduce a penalty that "the Court determines [it] should justly bear."  *United States v. J & D Enters.*, 955 F.Supp. 1153, 1161 (D. Minn. 1997)

---

Where the owner or operator of a vessel . . . carrying oil or hazardous substances as cargo . . . from which oil or a hazardous substance is discharged in violation of [§ 311(b)], alleges that such discharge was caused solely by an act or omission of a third party, such owner or operator shall pay to the United States Government the actual costs incurred under [§ 311(c)] for removal of such oil or substance and shall be

(discussing similar civil penalty provisions under the Clean Air Act).  In sum, "The absence of a third party defense in this penalty provision, the language of the statutes, and the purposes of the various remedies supplied to the Government, lead to the conclusion that no indemnity [or contribution] right was contemplated for the penalty imposed by [33 U.S.C. 1321(b)]." *Tug Ocean Princess, v. United States*, 436 F. Supp. at 926.

In addition, there is also no right to contribution or indemnity under the CWA penalty provisions under federal common law.  As stated in *Milwaukee v. Illinois*, "The establishment of such a self-consciously comprehensive program by Congress [in the CWA] . . . strongly suggests that there is no room for courts to attempt to improve on that program with federal common law." 451 U.S. at 319 (citation omitted).  *Accord, Mortgages v. U. S. Dist. Ct.*, 934 F.2d at 213 (where "Congress has enacted a comprehensive legislative scheme, including integrated procedures for enforcement, there is a strong presumption that Congress did not intend the courts to supplement the remedies enacted"); *Envtl. Conservation Org. v. Bagwell*, 2005 WL 2465003, at *2 ("Defendants have failed to demonstrate that a right of contribution exists regarding claims asserted under the CWA.").

Finally, no right to contribution or indemnity for civil penalties is created by Section 311(h), which provides, in relevant part,

> The liabilities established by this section shall in no way affect any rights which (1) the owner or operator of a vessel or an onshore facility or an offshore facility may have against any third party whose acts may in any way have caused or contributed to such discharge. . . .

33 U.S.C. § 1321(h).  The Macondo spill is covered by OPA, and Transocean has acknowledged that "Congress has made subsection [311](h) inapplicable to OPA-covered incidents."

---

entitled by subrogation to all rights of the United States Government to recover such costs from such third party under this subsection.

(Memorandum in Support of Transocean's Motion for Partial Summary Judgment Against BP, R. Doc. 4477 at p. 37.)[7]  However, even without Transocean's acknowledgement, Section 311(h) would not create a right to contribution or indemnity for civil penalties.

First, Section 311(h) only preserves existing rights, it does not create any new rights. *See, e.g.*, *Colorado v. ASARCO,* 608 F. Supp. at 1491 n.4 (noting that Section 311(h) is "not the source" of a right to contribution).  Second, Section 311(h) by its terms preserves third party claims based on causation ("any third party whose acts may have caused or contributed to such discharge"), but whether a third party caused or contributed to a discharge has no bearing on the imposition of civil penalties, which are imposed on owners and operators without regard to fault or causation.  *See, e.g.*, *United States v. Tex-Tow*, 589 F.2d at 1316 (an owner or operator's civil penalty is unaffected "even where . . . a third party's act or omission was the immediate cause of the spill").  Third, contribution may apply where there is joint and several liability (as with liability for costs of removal and cleanup), but responsibility for civil penalties is strict and not joint.  Fourth, Section 311 applies to "liabilities"; the term "liability" is used in Section 311 in connection with the costs of cleanup and removal but never in connection with civil penalties. *Compare* 33 U.S.C. § 1321(b)(7) *with* 33 U.S.C. § 1321(f).

D. **Transocean Cannot Shift Liability to Weatherford Because It Is Against Public Policy.**

As discussed above, Congress provided for the imposition of civil penalties upon particular classes of parties based on deterrence and economic risk-shifting principles.  *See United States v. Tex-Tow*, 589 F.2d at 1314 (owners and operators are "in the best position to

---

[7] OPA provides that a person may bring an action for contribution against "any other person who is liable or potentially liable under [OPA] or another law,"  33 U.S.C. § 2709, but the statute limits recoverable damages to an enumerated list which does not include civil penalties under another statute, such as the CWA.  *Id.* § 2702;

estimate the risk of accidental pollution and plan accordingly"). To allow enterprises such as Transocean to shift that economic risk through a contribution or indemnity claim against Weatherford, which is neither an owner or operator under the CWA, would allow Transocean to make an end run around Congress's intent. This end run is not permitted by the CWA and violates the public policy that underlies the civil penalty provisions. Transocean should not be able to "relieve itself from the consequences of having, purportedly, violated a statutory duty . . . imposed for the protection of others." *United States v. J & D Enters.*, 955 F.Supp. at 1159 (finding that an indemnification claim for civil penalties under the Clean Air Act violated public policy). Furthermore, as the United States points out in its memorandum in opposition to Transocean's motion for summary judgment against BP (R. Doc. 4840 at pp. 5-6), the goals of the CWA civil penalty provisions are punishment and deterrence. *See, e.g., Tull v. United States*, 481 U.S. 412, 422 (1987) (civil penalties under CWA § 1319(d)). Because punishment and deterrence are its goals, the statute provides for enhanced civil penalties for the most egregious conduct. *See* 33 U.S.C. § 1321(b)(7)(D) (providing enhanced civil penalties for gross negligence or willful misconduct). The goals of punishment and deterrence would be frustrated if violators were able to shift their responsibility to others who are not even subject to the penalty provisions.

### III. CONCLUSION

For all the above reasons, Transocean's claims for contribution and indemnity against Weatherford for CWA civil penalties should be dismissed.

---

*Gabarick v. Laurin Maritime (America) Inc.*, 623 F.Supp.2d 741, 746 (E.D. La. 2009) ("[T]he plain language of the statute indicates its mandatory and exclusive nature with respect to its covered damages.").

{N2410961.1}

Respectfully submitted:

*/s/ Glenn G. Goodier*
GLENN G. GOODIER (#06130)
RICHARD D. BERTRAM (#17881)
LANCE M. SANNINO (#29409)
Jones, Walker, Waechter, Poitevent,
 Carrère & Denègre, L.L.P.
201 St. Charles Avenue. 48th Floor
New Orleans, Louisiana  70170-5100
Telephone: (504) 582-8174
Facsimile: (504) 589-8174
E-mail: ggoodier@joneswalker.com;
rbertram@joneswalker.com;
lsannino@joneswalker.com

MICHAEL G. LEMOINE, T.A. (#8308)
GARY J. RUSSO (#10828)
DOUGLAS C. LONGMAN, JR. (#8719)
Jones, Walker, Waechter, Poitevent,
 Carrère & Denègre, L.L.P.
600 Jefferson Street, Suite 1600
Lafayette, , Louisiana  70501-5100
Telephone: (337) 262-9024
E-mail: mlemoine@joneswalker.com;
grusso@joneswalker.com;
dlongman@joneswalker.com
*Counsel for Weatherford U.S., L.P. and Weatherford International, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2012, the above and foregoing has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Court's Pretrial Order No. 12, on November 1, 2010.

*/s/ Glenn G. Goodier*