UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater | : | MDL No. 2179 |
| Horizon" in the Gulf of Mexico, on | : | |
| April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates To: All Actions | : | JUDGE BARBIER |
| | : | MAGISTRATE JUDGE |
| …………………………………………………... | : | SHUSHAN |

**BP'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE
TO PRECLUDE ADVERSE INFERENCES DRAWN FROM INVOCATIONS OF NON-
PARTIES' INVOCATIONS OF THE FIFTH AMENDMENT DURING DEPOSITIONS**

BP, Transocean, M-I, and Halliburton moved to exclude or limit potential adverse inferences drawn from invocations of the Fifth Amendment at trial. Each party made two basic arguments: first, that the court should not admit any such inferences given the circumstances of this case; and second, in the alternative, that if the court does allow inferences, it should do so according to appropriate guidelines – none of which have yet been followed by the PSC or the United States to the extent they seek such inferences.

BP's first argument was that it would be inappropriate in any circumstances to allow adverse inferences to be drawn against BP from the invocation of the Fifth Amendment by a non-BP employee. Such inferences would be improper because these persons owed no loyalty to BP, were not controlled by BP, and did not share the same interests as BP. In short, they could not possibly satisfy any of the criteria set out by the Fifth Circuit to establish a basis for an inference against BP. BP Memo at 4-6. BP's second argument was that there was also no basis on which to draw any adverse inferences against BP from the invocation of the Fifth Amendment by BP employees. BP Memo at 6-7. Such inferences would be improper because these employees invoked the Fifth Amendment of their own volition and not at BP's urging, and

because that, considered in the context of the whole case, the testimony of these employees plays a marginal role given the extensive cooperation and full and complete testimony of BP's other employees, including its twenty-two corporate representatives. *Id.* BP also argued, in the alternative, that the Court could defer ruling on the admissibility of any adverse inference until all phases of the trial are complete and all evidence is in. BP Memo at 9-10. At the very least, the Court should "set strict guidelines to ensure that opposing counsel cannot use just any invocation to draw an inference against BP." *Id.* at 10.

In response, the PSC and the United States both argued that the Fifth Circuit does not require the existence of an employment relationship to draw adverse inferences, and that the court should therefore not bar adverse inferences against BP based on invocations of the Fifth Amendment by Transocean and Halliburton employees (or vice versa). PSC Response at 4-9; U.S. Response at 3. The PSC also objected to BP's alternative argument to defer any consideration of inferences "due to its potential to draw this issue out indefinitely. PSC Response at 9 n. 7. Halliburton argued that the deferral alternative was "illogical and inefficient" though it provided no explanation for this view. HESI Response at 2. All parties agreed that each inference should be decided on a case-by-case basis and with some, but not necessarily all, of the guidelines suggested by BP and Transocean. PSC Response at 10-12; U.S. Response at 5-6.

## ARGUMENT

I.    **No Party Has Established Any Appropriate Adverse Inferences in This Case.**

The PSC and the United States spent a considerable part of their responses arguing that, in the Fifth Circuit, Courts may draw inferences against parties from a non-employee witness. This argument misses the forest for the trees. But BP never argued that an employment relationship was required before any inference could be drawn. Indeed, the whole point of BP's

2

motion was that adverse inferences must be evaluated on a case by case basis. BP Memo at 4 (citing *State Farm Mut. Auto. Ins. Co. v. Abrams*, 96 C 6365, 2000 WL 574466 at *6 (N.D. Ill. May 11, 2000); *FDIC v. Fid. & Deposit Co. of Maryland*, 45 F.3d 969, 978 (5th Cir. 1995) (requiring evaluation on a case-by-case basis)). BP's point was simply that *in the circumstances of this case* it would be improper for the court to admit adverse inferences against BP based on invocations of the Fifth Amendment by non-BP employees, and by BP employees as well absent some circumstance that met the applicable criteria.

      **A.**    **The circumstances of this case prohibit the drawing of adverse inferences against BP from invocations by Transocean and Halliburton employees.**

While it is true that the lack of an employment relationship is not an automatic bar to an inference, there is no basis for any such non-employee inferences here. These non-employees owe no loyalty to BP, are not controlled by BP in the sense that BP did not vest in them "key facts" regarding this litigation, and do not share compatible interests with BP. BP Memo at 4-6.

The PSC and the United States argue non-employee inferences are permissible. PSC Response at 4-9; U.S. Response at 3. *Maybe so, but that does not mean the absence of an employment relationship has no bearing on whether to admit an inference.* The existence or absence of an employment relationship is clearly an important circumstance courts consider when determining whether to admit adverse inferences. Indeed, the leading case on this issue, *LiButti v. United States*, lists the nature of the relationship between the party against which the inference is sought and the witness as first among the factors courts to be considered. 107 F.3d 110, 123-124 (2d Cir. 1997). About this factor, *Libutti* and countless other cases have stated "the closer the bond, whether by reason of blood, friendship or business, the less likely the non-party witness would be to render testimony in order to damage the relationship." *Id.* at 123.

3

The PSC appears to believe the absence of an employment relationship should have no bearing on a court's decision because of the Fifth Circuit's holding in *FDIC*. *See* PSC Response at 4-6. But *FDIC* does not stand for the notion that the absence of an employment relationship is irrelevant to whether a court should admit an adverse inference by a non-party witness. In *FDIC*, the non-party (non-employee) witnesses whose invocations led to adverse inferences against one of the parties had no actual stake in the case and did not directly benefit from an imputation of their silence against the party. Here, however, the fourteen Transocean and HESI employees who invoked the Fifth Amendment will benefit from any adverse inference imputed to BP from their silence because such inferences lay fault with BP, not *their* employer (and not *them*). As explained throughout BP's brief, not only do Transocean and HESI employees have no incentive to testify in favor of BP, *they have an incentive to remain silent* beyond the mere privilege against self-incrimination. This was not true of the witnesses in *FDIC*, who were not employed by *any* of the parties, and whose silence could only be explained as protection against self-incrimination. All of this is to repeat, as *Libutti* stated clearly, that "the overarching concern is whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." 107 F.3d at 124. In *FDIC*, the adverse inferences were trustworthy because of the facts in that case. Here, the adverse inferences are not because of adversarial nature of the relationship between these individuals and the interests of BP.

**B.    The circumstances of this case prohibit the drawing of adverse inferences against BP from invocations of the three BP employees.**

Other circumstances dictate that the court should not admit any adverse inferences against BP from BP employees' invocations of the Fifth Amendment. Here the PSC has argued for a categorical rule based on the employment relationship: "[E]mployee invocations of the Fifth Amendment are generally deemed admissible against their employers." PSC Response at

4

4. But its authorities do not support such a broad rule. *FDIC* did not even involve an employee-employer relationship. *Id.* at 4-6. And while the court in *Rad Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271 (3d Cir. 1986), noted that "nothing forbids imputing to a corporation the silence of its personnel," it never stated that a court *must* impute such silence to the employer; it merely stated that if a court did, it "is not *per se* reversible error." *Rad Servs.*, 808 F.2d at 275, 277. Both of these cases in fact suggest that each inference must stand on its own facts and circumstances, and that in some cases, a court may impute an employee's silence to his employer and in others not. As explained in BP's opening memorandum, here it should not.

Moreover, all of these case demonstrate by their continued emphasis on the unique circumstances of every case and the degree to which specific facts obviously play a role in these determinations underscore the impermissibility of the PSC's approach to this issue to date: to take the invocation of the Fifth Amendment by a witness as the occasion for unfettered questioning solely in order to lay the foundation for free-form inferences that meet none of the criteria supported by every party to have briefed this issue except the PSC. No matter what general rules can and cannot be drawn, there is universal agreement that no party, including the PSC, has yet to establish the required foundation for any particular inference – indeed, they have not even identified the specific inferences they seek.

## II.   Deferring This Issue Would Be Neither Unfair Nor Inappropriate.

In the alternative, the Court could defer ruling on the admissibility of any adverse inference. *See, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, 02 CIV 3288 DLC, 2005 WL 375315 at *5 (S.D.N.Y. Feb. 17, 2005) (deferring a ruling on adverse inferences until it was possible to judge on a complete record the evidence available to all parties). This would not, as the PSC argues, draw out the issue "indefinitely." Nor would it be "illogical" or "inefficient", HESI Response at 2, because there is a non-trivial chance that the issues that forced these individuals to invoke the Fifth

5

Amendment will be resolved and that these deponents might be able to testify in full at a later date. It is the drawing of inferences now that would be illogical, inefficient, and unfair.

Dated: January 23, 2012                                  Respectfully submitted,


/s / Don K. Haycraft

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration & Production Inc. & BP America Production Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 23rd day of January, 2012.

                                                               /s/ Don K. Haycraft__