UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER<br>MAGISTRATE JUDGE |
| …………………………………………………... | : | SHUSHAN |

**BP'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION IN LIMINE TO PRECLUDE EVIDENCE REGARDING
BP EMPLOYEE COMPENSATION INFORMATION**

Misapprehending the sweep of the case law, mistaking the scope of BP's original motion, and misrepresenting the relevance of the information they seek to preserve, neither the PSC nor the United States comes to terms with BP's motion. Nor, despite much quibbling over the details of individual cases, has either party squarely faced the fact that there is an ample and uncontested body of precedent which reveals courts' consistent reticence to permit trials to become the judicial equivalents of financial tell-it-alls, complete with the inevitable distraction from the actual issues that would attend such a transformation.

To begin, both responding parties trot out the old chestnut that, with this as with many of the other motions *in limine*, it is better to delay than to decide. They claim it would be in everyone's best interests to treat this matter on an *ad hoc*, "witness-by-witness" basis to be resolved each and every time as part of the ongoing trial proceedings. U.S. Response at 1, 4; PSC Response at 2. To this, the PSC adds the singularly unhelpful observation (supported by a case that cites no Fifth Circuit precedent and which no Fifth Circuit case has cited since) that "pretrial motions to exclude evidence of [sic] the basis of relevance are disfavored," as if that resolved the issue. PSC Response at 1.

1

As courts have emphasized time and again, whatever their general preferences regarding pre-trial evidentiary determinations, in complex litigations like the one, pre-trial motions *in limine* are not merely permitted, but favored and recommended as a means of ensuring an efficient proceeding focused on the issues to be resolved. *See, e.g.*, *Palmerin v. City of Riverside*, 794 F.2d 1409, 1413 (9th Cir. 1986) (quoting 2 Manual for Complex Litigation § 32.33 at 271-72 (1985))); *International Graphics*, *Division of Moore Business Forms, Inc. v. United States*, 5 Cl. Ct. 100, 104 (1984); *cf. e.g.*, *In re Paoli Railroad Yard PCB Litigation*, 916 F.2d 829, 859 (3d Cir. 1990).

As for the notion that motions *in limine* based on (ir)relevance are disfavored, the case law in the Fifth Circuit belies the PSC's assertion. *See, e.g.*, *United States v. Tran*, 433 Fed. App'x 227, 234 (5th Cir. 2011) (unpublished) (affirming lower court's grant of motion *in limine* excluding evidence on grounds of lack of relevance or, in the alternative, prejudice); *Kiger v. Plaisance Dragline and Dredging Co.*, Civil Action No. 04-3513, 2006 WL 3844995, at *2 (E.D. La. Dec. 29, 2006) (granting motion *in limine* to exclude evidence on relevance grounds); *Esparza v. Cloonan*, Civil Action Nos. P 0 CA 27, P 00 CA 28, 2002 WL 34364149, at *1 (Barbier, J.) (W.D. Tex. Mar. 8, 2002) (granting motion *in limine* to exclude evidence on relevance grounds). None of these cases even suggest such a policy. In fact, as demonstrated above, courts tend to favor the use of motions *in limine* to hone parties' focus on the actual issues and manage the efficient progress of complex litigation.

The responding parties fare no better when it comes to their substantive arguments. Neither party comes close to refuting the basic position that, as a general rule, courts in this circuit disfavor the introduction of personal, private compensation information and will routinely exclude it from evidence. Instead, they trot out examples of cases where courts have allowed

such evidence, but they fail to appreciate how BP's motion – and their efforts to inject compensation information into this case – do not fit the mold of these examples.

BP is not seeking a ruling from the Court that its witnesses cannot be questioned as to any financial incentives that may or may not have played a role in the performance of their jobs. What BP seeks is an order preventing the disclosure of specific compensation arrangements, salary amounts, bonus figures, etc. in the course of such questioning. Provided an appropriate foundation is laid to show relevance (more on that below), the attorneys working on this case are certainly capable of making their points on this issue without divulging for the world (and competitors, co-workers, and subordinates) the details of any employee's compensation. The topic of incentives and compensation structures is not inappropriate *per se*; the disclosure of personal and confidential details is.

The arguments put forward by United States or the PSC as to why, for example, this Court needs to allow in evidence that Erick Cunningham, a BP cementing engineer, received (or did not receive) stock options or that David Sims, a BP operations manager, was (or was not) given a raise, are paper-thin (not to mention frequently distorting of the actual positions BP has staked in its motion). The PSC suggests that "BP's method of compensating its employees goes directly to [the] issue[]" of "BP's . . . process safety[.]" PSC Response at 3. This may be true. But the PSC's own argument belies its position that individual employees' compensation information is relevant. The Company's "method" of compensation can be established without resort to individual employees' compensation details. Indeed, the PSC's own examples in that section of its response – referencing information about programmatic compensation schemes and expert analyses of companywide hiring structures – reveal that individual compensation data is wholly unrelated to the supposed process-safety theory espoused by the PSC.

That is not to say, however, that BP agrees that the PSC and the United States can establish the relevance of any such line of inquiry. The mere fact that people were compensated for performing their work within certain parameters is simply not firm enough ground from which to launch an attack that every decision made therefore reflects a disregard for operational and human safety. That is an issue that can and should be taken up in connection with testimony, whether via the designation-objection process or live at trial. There is no need, however – and it would be highly inappropriate to boot – to allow testimony as to the actual amounts promised or paid to individual BP employees.

Finally, both the PSC and the United States suggest that individual employees' compensation information may be relevant to issues of their bias or credibility as trial witnesses. *E.g.*, PSC Response at 5; U.S. Response at 1. Of course, neither party cites *any* precedent for this point – likely because no court has ever gone on the record as supporting the audacious idea implied by the parties' position (*i.e.*, that the private compensation information of individual employees of a party corporation, because they are employees of that party corporation, somehow becomes admissible for the sake of establishing that those employees are biased or not credible).

The fallacy – and danger – of the position of the United States and the PSC is plainly evidenced by their attempt to drag through the mud a former BP employee who, following a departure from the Company, was retained by an in-house BP attorney to serve as a consultant. In a blatant attempt to embarrass this witness by implying BP has sought to "buy" testimony, the United States and the PSC suggest that, because this individual received a severance package and later entered into consulting arrangement with BP, her compensation information is therefore relevant to issues of bias or credibility. Whatever "bias" this may indicate in the mind of the

conspiracy theorist, any tangential implications for credibility can be drawn from simply establishing the fact that witness works for BP as an employee or a consultant. There is nothing wrong with that question, which is asked every day in courtrooms across the country. What is wrong, and what BP's motion seeks to prevent, is questioning that reveals the details of how employees or consultants are compensated.

We need not speculate what will occur at trial if this motion is denied. As detailed in BP's January 19, 2012 Letter to Magistrate Judge Shushan re Disclosure of Highly Confidential Information (filed under seal), we have already seen how damaging the potent mixture of advocacy and carelessness can be.

Finally, BP asks that if there truly is some legitimate basis that specific compensation information needs to come into the record, the parties should, at a minimum, be required to make a proffer *in camera* to establish the need to introduce the evidence and to ensure that the privacy and reputations of witnesses are not damaged.

## CONCLUSION

For these reasons, BP respectfully requests that the Court enter an Order precluding the introduction of evidence or testimony that discloses BP employee compensation information.

Dated:  January 23, 2012                                 Respectfully submitted,


/s / Don K. Haycraft

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration & Production Inc. & BP America Production Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 23rd day of January, 2012.

/s/  Don K. Haycraft__