# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| JASON PEPPERS | * | CIVIL ACTION NO. 04-2356 |
| VERSUS | * | JUDGE JAMES |
| ARIES MARINE CORP., ET AL | * | MAGISTRATE JUDGE HAYES |

## RULING ON MOTIONS IN LIMINE[1]

Before the undersigned Magistrate Judge, on reference from the District Court, is

Defendants', Hydril Company and Hydril Company LP (collectively "Hydril"), Motion in Limine

(Doc. #48).  For the reasons stated below, Hydril's Motion is **GRANTED in Part and DENIED

in Part.**[2]

## BACKGROUND

Plaintiff, Jason Peppers, ("Peppers") filed an admiralty claim for personal injuries he

sustained on June 26, 2004.  On the date of his injury, Peppers was employed by Nabors Drilling

("Nabors") as a roustabout.  Peppers was assigned to an offshore fixed platform owned by

Devon, which was located in the Gulf of Mexico.  On the day of the accident, equipment was

---

[1] As this is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive
of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil
Procedure, this ruling is issued under the authority thereof, and in accordance with the standing
order of this court.  Any appeal must be made to the district judge in accordance with Rule 72(a)
and L.R. 74.1(W).

[2] The undersigned previously recommended that Hydril's Motion for Summary Judgment
be granted, dismissing Hydril from this action (Doc. #55).  However, the undersigned is ruling on
this motion in the event the District Judge does not adopt the Report & Recommendation.  The
Motion in Limine, opposition thereto, and this ruling have not altered the undersigned's previous
recommendation on the Motion for Summary Judgment.

1

being removed from the Devon platform and loaded onto a supply vessel, the Calvin Bayne, which was owned and operated by Defendant Aries Marine Corp. ("Aries").  Peppers was injured when an annular blowout preventer ("BOP"), manufactured by Defendant Hydril turned over, pinning Pepper's leg between the BOP and other equipment on the deck of the Calvin Bayne. Peppers suffered a lower leg fracture and tissue and nerve damage to his left leg.  After several surgeries, Pepper's leg was amputated.  Peppers has filed suit against Aries for negligence and against Hydril for products liability.

Hydril has filed the current Motion in Limine seeking to exclude the following documents and testimony:

(1)      API recommended practice 16-A and testimony regarding same;

(2)      Opinions and graphics of Plaintiff's liability expert, Gregg S. Perkin, as stated in his reports and deposition testimony; and

(3)      Letter to Mr. Hemphill from Mr. Taylor ("Taylor Letter") and Hydril's Operator's Manual for the GX 13 5/8 /10000 PSI, manufactured by Hydril for Cooper Cameron Company and testimony regarding them.

## LAW AND ANALYSIS

### API Recommended Practice 16A

API Specification 16A is entitled "Specification for Drill-through Equipment."  The section at issue is "10.2 Shipping" and states, "All equipment shall be shipped in accordance with the manufacturer's written procedures."  Hydril argues that this standard and testimony regarding it should be excluded on the grounds that it is not relevant under Federal Rules of Evidence 402. Hydril reasons that API Specification 16A is not relevant because it was not in existence at the

2

time the BOP involved in this case was manufactured and sold by Hydril and because the

specification expressly states that the standard "does not apply to field use or field testing" and

this incident was in the field.  Plaintiff disagrees and believes the standard and testimony is

relevant.  Plaintiff states that the BOP was being handled and shipped as the standard outlines

and that this situation was not one in which the BOP was being put to field use or field testing.

> As defined by the Federal Rules of Evidence, relevant evidence is that
> evidence which has "any tendency to make the existence of any fact that is of
> consequence to the determination of the action more probable or less probable
> than it would be without the evidence." Fed.R.Evid. 401.  Evidence which meets
> this broad standard is known as "logically relevant" evidence.  The Federal Rules
> of Evidence further provide that "[a]ll relevant evidence is admissible," and that
> "[e]vidence which is not relevant is not admissible." Fed.R.Evid. 402.
> In determining whether evidence should be admitted or excluded on the
> basis of relevancy, however, the trial court's decision does not always turn upon a
> simple determination that the standard enunciated in Rule 401 is satisfied.
> Instead, the focus may turn to a determination of whether the proferred [*sic*]
> evidence is "legally relevant." Fed.R.Evid. 403 provides that "[relevant] evidence
> may be excluded if its probative value is substantially outweighed by the danger
> of unfair prejudice, confusion of the issues, or misleading the jury, or by
> considerations of undue delay, waste of time, or needless presentation of
> cumulative evidence."  Thus, while the trial court's discretion in admitting
> evidence under Rule 401 is necessarily quite broad, Rule 403 requires a balancing
> of interests to determine whether logically relevant evidence is also legally
> relevant evidence.

*U.S. v. Hays*, 872 F.2d 582, 586-87 (5th Cir.1989).

The relevance determination of API Specification 16A should be made at trial.  Since this

is a non-jury trial there is no danger of prejudice or misleading a jury.  Therefore, the Motion in

Limine to Exclude API Recommended Practice 16A is **DENIED WITHOUT PREJUDICE**

**and may be reurged at trial.**

**Liability Expert Gregg S. Perkin**

Hydril is seeking to exclude the opinions of Plaintiff's Liability Expert, Gregg S. Perkin

("Perkin").  Perkin has opined that the BOP was top heavy, that the BOP was defective and

3

unreasonably dangerous, that Hydril should have provided a handling tool for the BOP, and that Hydril had duties to warn and failed to satisfy those duties.  Perkin is a mechanical engineer who is CEO and Principal Engineer for Engineering Partners International, Inc., in Kingwood, Texas.

Under Federal Rule of Evidence 702, a district court has considerable discretion in deciding whether to admit or exclude expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[W]e conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-9 (1997) (reviewing district court's determination under abuse of discretion standard).  Reliability and relevance, under Rule 702, are the hallmarks of admissible testimony from an expert witness "qualified . . . by knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993).  Relevance includes not only the general requirement contained in Rule 401 that the testimony tend to make the existence of any fact more probable or less probable, but also the prerequisite that the expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (quoting 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702[02], p. 702-18 (1988)).  Reliability, according to Rule 702, requires that (1) the testimony be based upon sufficient facts or data, (2) the testimony be the product of reliable principles and methods, and (3) the witness apply the principles and methods reliably to the facts of the case.  Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals*, the Supreme Court's landmark case on the admissibility of expert testimony, the Court identified several factors relevant to assessing

whether an expert's methodology is scientifically valid and reliable.  509 U.S. at 592-595.  While

non-exhaustive, these factors include:

> (1) whether the expert's theory can be or has been tested; (2) whether the theory
> has been subject to peer review and publication; (3) the known or potential rate of
> error of a technique or theory when applied; (4) the existence and maintenance of
> standards and controls; and (5) the degree to which the technique or theory has
> been generally accepted in the scientific community.

*Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 275 (5th Cir. 1998).  The Court also cautioned

that, rather than focusing on an expert's particular conclusions, Rule 702 and the factors included

under the umbrella of reliability should instead be limited to analyzing the scientific principles

and methodologies used in arriving at those conclusions.  509 U.S. at 595.  As with other

preliminary evidentiary questions, a party seeking to admit expert testimony must establish

relevance and reliability "by a preponderance of proof."  *Id*. at 593 n.10.

Perkin opines that the BOP was top heavy, defective, and unreasonably dangerous.

Hydril argues that this testimony should be excluded because Perkin's opinion is not based upon

any application of scientific principles or methodology.  Perkin does not use any treatise or

scientific definition of "top heavy," but states that the BOP is top heavy because the base of the

BOP is smaller in diameter than the body of the BOP. (Perkin Dep. 129).  Perkin has done no

calculations to determine the BOP's center of gravity. (Perkin Dep. pg. 122).  Perkin does not

know of any other incident when a BOP was knocked over or fell over. (Perkin Dep. pg. 32).

Plaintiff argues that Perkin's testimony is reliable because Perkin "had an opportunity to review

the depositions of everyone deposed in this case as well as review the discovery of documents

obtained from Hydril as well as review the numerous publications regarding machine design and

accident prevention, product safety and signs and labels." Plaintiff also states that Perkin

5

personally physically examined the BOP involved in this incident, took measurements of the

BOP, and "comes into this litigation with a mountain of background knowledge as concerns the

subject matter and data to support his conclusions."

Plaintiff has not shown by a preponderance of proof that Perkin's opinion that the BOP

was top heavy, defective and unreasonably dangerous is reliable.  Perkin's opinions are made in a

conclusory manner and not based upon scientific evidence or methodology.  Perkin admits that

he did not calculate the BOP's center of gravity.  Furthermore, Perkin admits that he knows of no

other time when a BOP has fallen over.  Perkin may be qualified to testify as an expert, but that

alone does not make his opinions reliable.  Since Plaintiff has not shown that Perkin's opinion is

based upon scientific evidence or methodolgies, his opinion that the BOP was top heavy,

defective and unreasonably dangerous is not sufficiently reliable to be admissible.

Perkin opines that a handling tool would make the BOP safer, but again he has performed

no risk/benefit analysis to support his opinion.  Perkin states that the handling tool would cost a

small amount of the total cost of the BOP, but he has provided no information about the actual

cost.  More importantly, Perkin admitted that he had not been asked and did not have enough

information to perform an analysis assessing the risk/utility of creating this handling tool.

(Perkin Dep. pg. 143).  Furthermore, Perkin has not considered whether a handling tool would

create other safety hazards and has provided no analysis of the acceptability of such tools in the

marketplace.  Again this opinion is not based on scientific evidence or methodology sufficient to

make it reliable or admissible.

Perkin proposed warnings and instructions, and opined that Hydril should have given

these warnings and instructions.  F.R.E. 702 states, "If scientific, technical, or other specialized

knowledge *will assist the trier of fact* to understand the evidence or to determine a *fact in issue,* a

6

witness qualified as an expert ... may testify ... " (emphasis added).  As stated in the Report and

Recommendation on Hydril's Motion for Summary Judgment, the adequacy of a warning is

evaluated in light of the knowledge and expertise of the user of the product.  *See Todd Shipyards*

*Corp. v. Hercules, Inc.*, 859 F.2d 1224, 1225 (5th Cir.1988) (A manufacturer's duty to warn is

limited where the purchaser or the user has certain knowledge or sophistication, professionally or

otherwise, in regard to the product.) (quoting *American Mut. Liab. Ins. Co. v. Firestone &*

*Rubber Co.*, 799 F.2d 993, 994 (5th Cir.1986)); *Koonce v. Quaker Safety Prods. & Mft. Co.*, 798

F.2d 700, 716 (5th Cir.1986) ("The adequacy of the warning must be evaluated in connection

with the knowledge and expertise of the user of the product.")  "A manufacturer is not required

to provide an adequate warning about his product when ... the user or handler of the product

already knows or reasonably should be expected to know of the characteristic of the product that

may cause damage and the danger of such characteristic." La. Rev. Stat. § 9:2800.57.

Peppers handled the BOP frequently, was aware of the dangers of moving a BOP and

other heavy equipment in a maritime setting, and was a sophisticated user for purposes of the

actions involved in this case.  In addition, the dangers of moving heavy equipment at sea were

open and obvious.  Since Peppers was a sophisticated user of BOP equipment and the dangers of

moving a BOP are obvious, Hydril was not required to provide warnings.  Therefore, any

testimony from Perkin regarding warnings is irrelevant.  Perkin is not able to provide the Court

with any scientific, technical, or other specialized knowledge that assists in determining a fact in

issue as required under F.R.E. 702.

Accordingly, Hydril's Motion in Limine to exclude Perkin's opinions that the BOP was

top heavy, that the BOP was defective and unreasonably dangerous, that Hydril should have

provided a handling tool, and that Hydril had duties to warn is **GRANTED**.

7

**Taylor Letter & Operator's Manual**

Fred Taylor, a technical writer at Hydril, wrote an operator's manual for the GX 13 5/8 / 10000 PSI annular BOP ("Manual"). The Manual includes a warning that states, "Secure BOP to deck, wellhead, or test stump to prevent BOP from tipping over and causing injury during disassembly and assembly operation." Taylor also wrote a memo ("Taylor Letter"), dated July 5, 2005, stating that the warning was added to this manual because the BOP has a hub bottom rather than a flanged bottom, which makes it "easily tipped over when it is set on its hub unsupported" and because this BOP has a surge accumulator which compounds the problem.

Hydril argues that the Taylor Letter and the Manual and testimony regarding them should be excluded because 1) they are irrelevant under Federal Rules of Evidence 402 because the Taylor Letter regards a GX annular blowout preventer, which weighed in excess of 24,000 pounds and had a hub bottom and an attached accumulator, as compared to the BOP that injured Peppers, which weighed 8,200 pounds, had a flange bottom and no accumulator; 2) the GX annular BOP is not substantially similar; 3) the evidence regarding the GX annular BOP would be misleading under Federal Rules of Evidence 403; and/or 4) even if relevant, any probative value is outweighed by the risk of confusion.

Plaintiff has not shown that the Taylor Letter or Manual concern a product sufficiently similar to the BOP at issue to be relevant or admissible. Therefore, Hydril's Motion in Limine to Exclude the Taylor Letter and Hydril's Operator Manual for the GX 13 5/8 / 10000 PSI is **GRANTED**.

## CONCLUSION

**IT IS ORDERED** that Hydril's Motion in Limine (Doc. #48) is **DENIED WITHOUT**

**PREJUDICE** as to the API recommended practice 16-A, **GRANTED** as to the opinions of

liability expert, Gregg S. Perkin, and **GRANTED** as to the letter to Mr. Hemphill from Mr.

Taylor, and Hydril's Operator's Manual for the GX 13 5/8 /10000 PSI..

THUS DONE AND SIGNED at Monroe, Louisiana this 30th day of January, 2006.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE





RECEIVED
IN MONROE, LA

APR 03 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| JASON PEPPERS | CIVIL ACTION NO. 04-2356 |
| VERSUS | JUDGE ROBERT G. JAMES |
| ARIES MARINE CORP., ET AL. | MAG. JUDGE KAREN L. HAYES |

### RULING

Pending before the Court are a Motion for Summary Judgment [Doc. No. 28] filed by Defendant Hydril Company L.P. ("Hydril"), and Plaintiff Jason Peppers' ("Peppers") appeal [Doc. No. 73] from the ruling of the Magistrate Judge on Hydril's Motion in Limine [Doc. No. 48]. For the following reasons, Hydril's Motion for Summary Judgment is GRANTED, and Peppers' appeal is DENIED.

### I.    Procedural History

On January 4, 2006, Magistrate Judge Hayes issued a Report and Recommendation [Doc. No. 55] recommending that Hydril's Motion for Summary Judgment be granted.

On January 12, 2006, Peppers filed an "Objection to Magistrate's Report and Recommendation" ("Objection") [Doc. No. 61]. On January 18 and 26, 2006, Hydril filed responses to Peppers' Objection [Doc. No. 75].

On January 30, 2006, Magistrate Judge Hayes also issued a ruling [Doc. No. 71] granting in part a Motion in Limine filed by Hydril.

On February 13, 2006, Peppers filed his appeal from the ruling on the Motion in Limine.

Because these two motions are interrelated, the Court will address them simultaneously.

## II.     Standards of Review

The Court will apply two different standards of review to Judge Hayes' conclusions. With regard to the Motion for Summary Judgment, because this is a case dispositive matter, the Court reviews the magistrate judge's findings, conclusions, and recommendations*de novo*. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b);*Parks v. Collins*, 761 F.2d 1101, 1104 (5th Cir. 1985).

However, with regard to the Motion in Limine, a non-case dispositive matter, the Court reviews Magistrate Judge Hayes' findings and conclusions under the clearly erroneous or contrary to law standard. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

## III.    Analysis

Having undertaken a *de novo* review of the entire record, including Peppers' Objection, the Court ADOPTS the Report and Recommendation of the Magistrate Judge and GRANTS Hydril's Motion for Summary Judgment.

The Court issues this Ruling only to address certain evidence not presented to Magistrate Judge Hayes. In support of his Objection, Peppers submitted two reports prepared by his expert, Gregg Perkin ("Perkin"), as well as Perkin's deposition. While the Court may consider such evidence, the Fifth Circuit has suggested factors to review in making this determination:

(1)     the moving party's reason for not originally submitting the evidence;

(2)     the importance of the omitted evidence to the moving party's case;

(3)     whether the evidence was previously available to the non-moving party
        when it responded to the summary judgment motion; and

(4)     likelihood of unfair prejudice to the non-moving party if the evidence is
        accepted.

2

*Performance Autoplex II Ltd. v. Mid-Continent Casualty Co.*, 322 F.3d 847, 862 (5th Cir. 2003).

Peppers has provided no explanation for his failure to provide this evidence prior to Magistrate

Judge Hayes' Report and Recommendation. At least the September 22, 2005 report was available

to Peppers prior to his response to Hydril's Motion for Summary Judgment. The second report,

dated December 2, 2005, was prepared after Peppers' response was filed on

November 8, 2005, but Peppers could have moved to supplement his opposition at any time prior to

the issuance of the January 4, 2006 Report and Recommendation. Peppers offers this evidence to

support his claim that the BOP was unreasonably dangerous and that Hydril could and should have

provided warnings and instructions with the BOP. This evidence is clearly important to his case.

Hydril deposed Perkin on December 15, 2005, so there is little danger of prejudice to it. Under

these circumstances, the Court will consider this evidence.

However, Hydril filed a Motion in Limine seeking an order to prevent Perkin from testifying

at trial and to exclude from evidence his deposition, graphics, and reports.[1] The Court has reviewed

the Motion in Limine submitted by Hydril and ruled upon by Magistrate Judge Hayes. The Court

agrees with Magistrate Judge Hayes' analysis and finds that Perkin's testimony, graphics, and expert

reports are not admissible under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).[2]

---

[1]Hydril also moved to exclude (1) API recommended practice 16-A and testimony regarding this practice and (2) a letter to Mr. Hemphill from Mr. Taylor and Hydril's Operator's Manual for the GX 13 5/8 /10000 PSI, manufactured by Hydril for Cooper Cameron Company and testimony regarding these items. Given the Court's ruling on the Motion for Summary Judgment, it need not address these items. The Court notes, however, that Magistrate Judge Hayes' ruling as to these items is neither contrary to law nor clearly erroneous.

[2]In reaching this determination, the Court does not imply that Perkin is unqualified as an expert in his field, but concludes, like Magistrate Judge Hayes, that his opinion in this case is

3

After Magistrate Judge Hayes' ruling on the Motion in Limine, Perkin withdrew his opinion that the BOP was top heavy and, thus, unreasonably dangerous and defective because that opinion was based on inaccurate information. Originally, Perkin understood that the BOP was loaded right side up, so that it was placed on the smallest flange. However, he later learned that the BOP was loaded upside down, so it was placed on a larger flange. Based upon this information, Perkin no longer opines that the BOP was top heavy. Peppers has not provided any supplemental report from Perkin. Thus, even if Perkin's testimony and reports were otherwise admissible, Peppers has no expert evidence that the BOP was defective or unreasonably dangerous.

Accordingly, for the reasons stated by Magistrate Judge Hayes and the additional reasons set forth in this Ruling, the Court finds that Magistrate Judge Hayes' ruling on the Motion in Limine was neither clearly erroneous nor contrary to law, and her recommendation on the Motion for Summary Judgment is correct under the applicable law.

## IV.    Conclusion

Hydril's Motion for Summary Judgment [Doc. No. 28] is GRANTED, Peppers' Appeal [Doc. No. 73] is DENIED, and the Magistrate Judge's Ruling [Doc. No. 71] on Hydril's Motion in Limine [Doc. No. 48] is AFFIRMED.

MONROE, LOUISIANA, this _____3_____ day of _____April_____, 2006.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

inadmissible under *Daubert*.