

DONALD E. GODWIN, SHAREHOLDER
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:     214.939.4412
DIRECT FAX:      214.939.4803
DGodwin@GodwinRonquillo.com

DALLAS   HOUSTON

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041

214.939.4400
800.662.8393
214.760.7332 Fax

GodwinRonquillo.com

January 23, 2012

**BY EMAIL**

The Honorable Carl J. Barbier
United States District Judge
500 Poydras Street, Room C-268
New Orleans, Louisiana  70130

    Re:   Motion to Exclude Evidence Relating to Credit on the Kodiak No. 2 Well for Non-Productive Time Related to Downhole Tool Issues

Dear Judge Barbier:

    In further support of its Motion to Exclude Evidence Relating to Credit on the Kodiak No. 2 Well for Non-Productive Time Related to Downhole Tool Issues [Rec. Doc. 5139] ("HESI's Motion"), Halliburton Energy Services, Inc. ("HESI") submits this Reply to Plaintiffs' January 17, 2012 letter brief in opposition ("Opposition"), and respectfully shows the Court as follows.

    The PSC apparently concedes that the credit at issue related to downhole tool issues on the Kodiak No. 2 well and **not** to any mudlogging services performed by Sperry on the Macondo well.  Although the PSC briefly, and unconvincingly, alleges confusion with respect to the credit's extension to the Macondo, the PSC mainly argues that the Performance Agreement for Kodiak Well ("Agreement") somehow pressured HESI employees into acting recklessly on the Macondo well.  The PSC's unsubstantiated conjecture is not supported by any evidence.  None of the witnesses in this case even suggest that the Agreement had any influence on the Sperry employees' performance of mudlogging services on the Macondo well.  In fact, multiple HESI employees who were directly involved with the Agreement testified that it applied only to the Kodiak well and had nothing to do with the Macondo well.  Furthermore, the language of the Agreement supports this conclusion.  This Court should exclude the Agreement, and related documents and testimony, because such evidence has no probative value in this litigation and, to

The Honorable Carl J. Barbier
January 23, 2012
Page 2

the extent it has any probative value, such value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay or needless presentation of cumulative evidence. FED. R. EVID. 402, 403.

Contrary to the PSC's assertion, there is no "confusion" as to whether the Agreement applied to the Macondo well. The Agreement clearly states that it applies solely to the Kodiak well:

- " . . . we are willing to put forth the following guarantee for your Kodiak #2 well" and

- "If, during the course of drilling operations on Kodiak 2, our operating efficiency becomes intolerable . . . ."

See Ex. A Ex. 2002 [HAL_0047953].

Furthermore, the testimony of James Bement (Sperry's Vice-President) and Skip Clark (Senior Account Representative for HESI and Sperry's 30(b)(6) representative) is unequivocal – the Agreement was never extended to the Macondo well:

- "There was no Performance Agreement for Macondo . . . the Performance Agreement was for the Kodiak." *See* Ex. B [Bement Dep. 49:3-12 *see also* 60:16-22].

- Q: "Was that offer limited to a certain rig, a certain well, certain operations?" A: "It was limited to the Deepwater Horizon, specifically for the Kodiak II well." *See* Ex. C [Clark Dep., 292:10-19].

Bement explained that HESI originally considered extending the Agreement to the Kaskida well, the well that the *Deepwater Horizon* was originally planning to drill after finishing the Kodiak well. *See* Ex. B [Bement Dep. 62:16-63:22]. The Kaskida well was very similar in depth to the Kodiak well and would, therefore, require the use of the same Sperry downhole tools that encountered problems at the extreme depths of the Kodiak well. *See id.* However, during a subsequent meeting with John Guide, Clark and Bement discovered that the *Deepwater Horizon* was rescheduled to go to the Macondo well. *See id.* At that meeting, Guide agreed that HESI did not need to extend the Agreement to the Macondo well, since it was much shallower than Kaskida and was not likely to experience problems with the directional drilling equipment. *See id;* 60:16-61:1; 110:15-24; 329:8-332:7; *see also* Ex. D [Cocales Dep., 71:3-11] (Kaskida was much deeper than Macondo). Clark testified that Guide specifically told him *not* to extend the Agreement to the Macondo well:

- "Okay. Now, I think I heard you, at a couple points this morning, mention that it did not apply to the Macondo well; is that right?"

The Honorable Carl J. Barbier
January 23, 2012
Page 3

- "That is correct."

- "What -- why do you have that understanding?"

- "That understanding came through a conversation that I had with Mr. John Guide prior to the mobilization of the Deepwater Horizon to Mississippi Canyon 252, where I asked him if we needed to continue the service guarantee that we had provided on the Kodiak II.  And his answer to me at that time -- well, his answer to me was, no, he  did not see it necessary that we continue the performance guarantee on to the Macondo well."

Ex. C [Clark Dep., 292:20-293:12].

The PSC attempts to muddy the waters by referencing an email from a HESI employee, Mark Traylor, who stated that the Agreement applied to "the next BP well."  Opposition at 3.  Although not mentioned in Traylor's email, the PSC speculates, incorrectly, that Traylor's email refers to the Macondo well.  *See* Ex. E [Ex. 2003].  However, Traylor could not have been referencing the Macondo well because, as explained above and supported by the testimony of every HESI employee, at the time of the email, the *Deepwater Horizon* was scheduled to go to the Kaskida well.  *See* Ex. B [Bement Dep., 110:6-24]; Ex. C [Clark Dep., 331:7-333:14].  Also, the PSC's reference to selective Tim Probert testimony fails to support otherwise.  Opposition at 3.  Probert had not seen the Agreement prior to his deposition, and he made it clear that he did not know whether it applied to the Macondo well.  *See* Ex. F [Probert Dep., 94:4-7; 119:2-20] ("I just don't have knowledge – I just don't have knowledge of whether it did or not.").  Probert's testimony clearly does nothing to undermine the testimony of Bement, who negotiated the Agreement, and Clark, who testified as HESI's 30(b)(6) representative on the issue of the Sperry contract.  *See* Ex. C [Clark Dep., 9:1-19].

The PSC's speculation that the Agreement caused Sperry employees to act recklessly on the Macondo rig is unfounded.  Again, the Agreement relates to problems with well logging tools that were experiencing technical problems at the extreme depths of the Kodiak No. 2 well.  Contrary to the PSC's argument, technical problems with well logging tools at extreme depths does not "make it more probable that HESI  . . . performed aboard the *Deepwater Horizon* in a negligent—or even grossly negligent—manner," especially since the relevant services performed on the Macondo well were mudlogging services that had nothing to do with well logging tools.[1]  Opposition at 3.  In any event, the PSC's unsupported speculation about Sperry's mudlogging services are directly contrary to the testimony of employees on the rig:

- Q: "Sperry-Sun people that you worked with were serious about safety?" A: "Yes, sir."  Ex. G [Gray Dep., 527:17-19].

---

[1] The PSC is careful to avoid mentioning that the "services" performed by Sperry on the Macondo well were mudlogging services, not well logging services.  Opposition at 3.

The Honorable Carl J. Barbier
January 23, 2012
Page 4

- Q. "Okay. Did anybody say to you, at any time, by -- from -- by anybody with either BP and/or Transocean, did anybody say to you that they had -- he or they had any concerns about any of the mud logging services that were being performed by Joe Keith and others for Sperry Halliburton there on the Macondo Well?" A. "No." Q. "Nobody ever complained or said anything in your presence –" A. "No." Ex. H [Keplinger Dep., 214:2-14].

- Q: "Has anybody, at any time prior to the incident on April 20, ever voiced to you any concern about anything regarding the quality of the work and/or the experience or capabilities of Mr. Joe Keith and/or Mr. Kelly Gray?" A: "I don't recall any conversations." Ex. I [Bellow Dep., 464:18-25].

- Q: "You said that you knew Joe Keith or met Joe Keith?" A: "Yes, sir, I knew." Q: "And he had been a mudlogger on the HORIZON for a long time, hadn't he?" A: "He had." Q: "And he seemed to do a good job for you?" A: "I thought he was a good man." Ex. J [Ezell Dep., 579:5-14].

For the reasons stated herein, and pursuant to Rules 401, 402 and 403 of the Federal Rules of Evidence, HESI respectfully requests that the Court exclude from evidence all documents, deposition designations, testimony, or other evidence relating to the agreement to issue a credit to BP for non-productive time arising from certain downhole tool issues associated with directional drilling and well logging activities, or LWD or MWM services, on the Kodiak No. 2 well.

Respectfully submitted,

*Donald E. Godwin*

Donald E. Godwin

DEG:PWS

1837124 v3-24010/0002 PLEADINGS