UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE GULF | : | |
| OF MEXICO, ON APRIL 20, 2010 | : | SECTION J |
| | : | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : | JUDGE BARBIER |
| | : | |
| 2:10-CV-02771 | : | MAGISTRATE JUDGE SHUSHAN |

# UNITED STATES' MOTION TO
# EXCLUDE ERIC GREGORY CHILDS AS AN EXPERT

## INTRODUCTION

The United States respectfully requests that this Court exclude Transocean Offshore Deepwater Drilling, Inc.'s ("TO") expert Eric Gregory Childs, and that his reports be stricken.

## DISCUSSION

Rule 26(a) of the Federal Rules of Civil Procedure requires that expert reports contain, among other things, "(i) a complete statement of all the opinions the witness will express and the *basis and reasons for them;* [and] (ii) the *facts or data considered by the witness in forming them*[.]" Fed. R. Civ. P. 26(a)(2)(B) (emphasis added).  Rule 37(c)(1) gives teeth to Rule 26(a)'s disclosure requirements by forbidding the use at trial of any required information that is not properly disclosed and only admitting a non-complying party's experts' testimony in cases where the nondisclosure is substantially justified or harmless.  *Yeti by Molly v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

1

TO has violated Rule 26(a)(2)(B) through its unjustifiable and prejudicial refusal to disclose the facts and data supporting Mr. Childs' opinions, including test data, reports, and the opinions and work product of undisclosed experts on which Mr. Childs relied.  Moreover, it is questionable whether Mr. Childs is even qualified to offer his opinions as an expert under Federal Rule of Evidence 702, as he admits that he has limited knowledge in the areas of batteries and solenoids, and that he relied on other undisclosed experts' knowledge in order to formulate his opinions.  Att. 1, Deposition of Eric Gregory Childs at 54:10–25.  Therefore, the US respectfully requests that this Court exclude Mr. Childs as an expert.

**I.     Much of the information, data, reports, and other documentation used to form the opinions expressed in Mr. Childs' reports has not been produced.**

On October 13, 2011, the US contacted TO's counsel to notify them that supporting facts and data for Mr. Childs' Initial Expert Report ("Report") had not been identified or produced.  Att. 2, Oct. 13, 2011 Email from US to TO.  In the weeks before Mr. Childs' deposition, counsel for TO represented that—with the exception of notes taken by a West Engineering employee, Christopher Tolleson—all facts and data considered by Mr. Childs in forming his expert opinions were identified on the list of materials relied upon or considered.  *See*, Att. 3, Oct. 21, 2011 Email from US to TO (Exh. 7707) (summarizing substance of telephone call).  Counsel for TO also indicated that notes from Mr. Tolleson's testing were being compiled into a report that counsel hoped to provide to the parties by October 27, 2011.  *Id*.

It became clear during Mr. Childs' deposition on December 1 and 2 that there was a significant amount of information that had not been disclosed.  For example, Mr. Childs testified

2

that facts or data he learned from others in conversations were not identified in his report because they "became what I understood" or "what I knew." Att. 4 at 382:6–383:7. In addition to relying on facts, data, and opinions provided by others, Mr. Childs could not explain the basis for these facts and opinions. *See e.g.,* Att. 1 at 143:14–144:21, 153:10–154:9, 155:11–14, 163:20–164:23 172:3–15, 212:6–213:14,; Att. 4 at 387:2-25, 433:17–434:12, 453:15–24, 455:13–458:11, 464:22–465:13. As a result of the failure to produce information that is clearly required by Rule 26(a)(2), Mr. Childs should be stricken as an expert witness.

> a. *TO has not produced the facts and data required to support Mr. Childs' opinion about the Blue Control Pod's batteries* .

Contrary to other experts' opinions, Mr. Childs opines that the 27 volt battery in the Blue Pod was charged sufficiently to perform the AMF sequence at the time the BOP was deployed. Att. 1 at 135:20–25. Mr. Childs hypothesizes that a low charge on one of the Blue Pod's 9 volt batteries caused the AMF system to continually attempt to reboot itself during the weeks after the Blind Shear Ram was activated. *Id*. at 136:1–7. Mr. Childs concludes that the 27 volt battery's lack of charge when it was tested was a result of this continual rebooting. *Id*. at 134:23–136:7. Mr. Childs testified that his battery hypothesis is based on "numerous conversations" with other experts, *id*. at 139:2–10, testing led and conducted by others, *id*. at 53:5–53:24, test results, *id*. at 141:2–142:8, and verbal reports of that testing, *id*. at 53:5–53:24. This documentation has not been produced in its entirety.

The "extensive testing" referred to by Mr. Childs in support of his battery hypothesis, Att. 5, Expert Report of Gregory Childs at 34-35, was neither provided with Mr. Childs' Initial

3

Report nor included in the list of materials relied upon or considered. Instead, on November 11, 2011—well after the date for production of relied upon materials and after the deadline for submission of *rebuttal* reports—TO produced a "Summary of SEM Testing Results" ("SEM Summary") prepared by Mr Tolleson.[1] *See* Att. 6, Exh. 7692. According to Mr. Childs, "[t]he recycling theory . . . comes from this testing." Att. 1 at 138:2–5. However, the SEM Summary does not include all testing results. Weekly activity reports prepared by West reveal that tests were performed on October 18, October 19, October 23, and November 23, 2010. Att. 7, Exh. 7708. No test results for those dates appear in Mr. Tolleson's SEM Summary, nor was Mr. Childs able to provide any information regarding those missing tests. *See*, Att. 4 at 490-99.

Not only was Mr. Tolleson's SEM Summary incomplete, but Mr. Childs did not understand what had been tested and the methods Mr. Tolleson used. For example, Mr. Childs was unable to provide any information regarding how it was determined that the test batteries had been in service for over one year, how many activations the test batteries had performed in that year, what the voltage of the test batteries was prior to testing, whether the testing was done under load, or even what was done to ensure that the power supply (when used) would simulate the conditions of a battery. Att. 1 at 154:4–156:16, 164:17–165:2; Att. 4 at 501:5–502:24. This information is clearly required to be produced under the Federal Rules and is essential to understand the nature of the tests, the conditions under which they were performed, and the

---

[1] The tests described in the SEM Summary were conducted between October and December 2010, an entire year before Childs' reports were submitted. According to Childs, the SEM Summary was prepared at the same time as his rebuttal report, and in response to complaints regarding "unsubstantiated" statements. Att. 4 at 486:22–487:20.

4

reliability of the results.  Mr. Childs' opinions regarding the condition of the Blue Pod batteries should be excluded for failure to disclose all facts and data considered by Mr. Childs in formulating those opinions.

> b. *TO has not produced the facts and data required to support Mr. Childs' opinion that the Yellow Pod's miswired solenoid would function.*

Mr. Childs based his opinion that the Yellow Pod's improperly wired solenoid functioned correctly on discussions with Mr. Tolleson and tests for which no documentation has been provided.  As was the case with the battery testing, Mr. Childs does not know basic information regarding the tests conducted on the solenoids, such as whether hydraulic pressure was applied to the miswired solenoid valve, or what steps Mr. Tolleson took to determine the two SEMs were "functionally identical" as represented in his Initial Report.  Att. 1 at 213:1–14, 212:6–12.  Reliance on data obtained during testing that can neither be verified nor evaluated and is clearly required to be produced under Rule 26(a) is improper, and warrants striking of those opinions.

> c. *TO has not produced the facts and data required to support Mr. Childs' opinions about buckling of the drill pipe and maintenance of the BOP*

The only evidence that Mr. Childs has to support his helical buckling theory is from analysis conducted by a non-testifying consultant group, Stress Engineering ("Stress"), and a TO employee involved in the internal investigation of the Macondo Well incident.  *Id*. at 106:13–107:11, 235:25-236:9.  Mr. Childs claims that he did not base his opinions solely on information provided by Stress and Mr. Boughton, but later testimony shows this is not the case.  When asked whether he had seen discussions of helical buckling of the drill pipe during loss of well control, Mr. Childs responded, "I don't think I've read it in literature.  Mostly I got it from

5

discussions with Stress Engineering, Mr. Dave Garrett." *Id*. at 316:8–10.  Mr. Childs did not perform any calculations or modeling to independently verify the accuracy of Stress' calculations, nor was he able to describe, even in general terms, how Stress arrived at its numbers.  *See, e.g.*, Att. 4 at 422:19–24, 428:1–5, 432:14–20, 433:23–434:12.

Similarly, Mr. Childs' conclusions that BOP maintenance was consistent with industry practices and did not have any bearing on the incident are unsubstantiated.  Att. 5, Report at 38.  Mr. Childs did not study BOP maintenance in arriving at his opinion; he merely reviewed a report prepared by TO employees Robert Tiano and Rodney Manning.  Att. 1 at 36:22-38:10; Att. 4 at 398:5-399:8.  This report has not been produced, and Messrs. Tiano and Manning were not identified as sources of information in Childs' reports.

## II. TO's failure to produce the facts and data that support Mr. Childs' Report is not substantially justified and has prejudiced the US.

Sanctions are available against parties for violations of Rule 26(a) unless such violations are substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1).  The Fifth Circuit considers four factors to determine the appropriateness of such sanctions: "(1) the explanation for the party's failure to comply with the discovery order; (2) the importance of the evidence; (3) the prejudice to the opposing party of allowing the introduction of such evidence; and (4) the possibility of a continuance to cure any prejudice to the other party."  *Boudreaux v. State Farm Fire & Cas. Co.*, 2009 WL 5217646 *2 (E.D. La. 2009) (citing, among others, *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 572 (5th Cir. 1996)).  TO's omission of critical information supporting their expert's novel theories cannot be considered inadvertent, substantially justified, or harmless.

*a. TO's failure to disclose was not substantially justified.*

There simply is no justification—much less a substantial justification—for TO's failure to produce the bases of Mr. Childs' opinions. This Court's September 2, 2011 Order specifically required parties to include "the facts or data considered by the witness" in forming the witness's opinion, and to "specifically identify all Consideration Materials…." Att. 8, Dkt. 3916. TO was made aware of the lack of support for Mr. Childs' opinions on October 13, 2011, shortly after receipt of Mr. Childs' Report, and before the deadline to produce previously unproduced documents relied on by experts. *See* Att. 2, Oct. 13, 2011 Email from US to TO. Instead of producing the required information in accordance with this Court's Order, TO did not produce the SEM Summary – incomplete as it is – until November 11, after the deadline established by this Court for submission of unproduced documents relied upon by experts, and after all rebuttal reports were due. TO has provided no reason for its failure to disclose the data and information underlying the Childs Report.

*b. The evidence omitted from Mr. Childs' Reports is central to the US' case against TO.*

Mr. Childs opines on critical issues—namely whether the maintenance of the BOP caused or contributed to the failure of the BOP to secure the well—without providing evidentiary support. As discussed above, Mr. Childs' theories are at odds with the opinions of other experts in these areas. Without access to the information that has been withheld, there simply is no way for the US to evaluate or even fully understand what testing was performed or the accuracy of such tests' results. For example, Mr. Childs testified that he was relying solely on the tests conducted by West and TO for his opinions regarding the Blue Pod batteries, and that he did not

7

understand the methods used to perform them. Att. 1 at 138:2–10, 154:4–156:16, 164:17–165:2; Att. 4 at 501:5–502:24. Although a summary of some tests was provided, a complete set of results has not been provided.

    *c. The US has been harmed by TO's failure to disclose.*

The US has been prejudiced by this failure in at least three ways that courts have previously held justify exclusion of expert testimony under Rule 37. First, as a result of TO's incomplete production, the US was unable to properly prepare for Mr. Childs' deposition or present a complete expert rebuttal report. *See*, *Yeti*, 259 F.3d at 1105-6 (expert testimony excluded where, in part, late disclosure of report impacted opposing counsel's ability to depose witness). Second, after Mr. Childs' deposition, it was clear that his Report was largely based on the opinions and work product of experts neither identified nor produced. *See*, *Smith v. Jacobs Engineering Group, Inc*., 2008 WL 4264718, *4-7 (expert testimony stricken for failure to disclose reliance on other experts). Third, as a result of missing data and unanswered questions regarding the genesis of Mr. Childs' opinions, the US is unable to discern what support, if any, Childs has for the conclusions in his report. *See, Fresquez v. Baldwin*, 2010 WL 5934891 at *13-17(D. Colo. 2010) (internal citations omitted) (sanctions appropriate where expert witness failed to produce, among other things, a list of documents to support his opinions).

    *d. Sanctions short of exclusion will not remedy the prejudice suffered by the US.*

Sanctions short of Mr. Childs' exclusion are inappropriate because of the prejudice the US would suffer as a result. *See Yeti*, 259 F.3d at 1106. Allowing Mr. Childs to testify regarding his unsubstantiated opinions would require reopening discovery as to the individuals

Childs cites, production of missing documents in Childs' and other experts' possession, and allowing all parties the opportunity to depose them before trial. This is simply not feasible given the trial schedule, nor is it warranted since TO is, and has been, fully aware of the risks it was taking in its refusal to provide all the required facts and data relied upon by Mr. Childs.[2]

### III.     Childs should be excluded as an expert because his report lacks reliability.

Federal Rule of Evidence 702 provides for expert testimony by "a witness qualified as an expert by knowledge, skill, experience, training, or education" if "the testimony is based on upon sufficient facts or data." While an expert may rely on the expert opinions of others in reaching his conclusions, such outside opinions *must be reliable*. *See, Johnson v. Samsung Elec. Am., Inc.*, --- F.R.D.---, 2011 WL 4344588 at *3 (E.D. La. Sept. 14, 2011). TO's failure to disclose the facts, data, and outside opinions underlying Childs' expert reports makes it impossible for the Court to determine whether the reports are reliable. *See, Watts v. Hill*, 2008 WL 697356 at *3-5 (N. D. Ill. Mar. 12, 2008) (excluding expert who failed to identify data on which his opinions were based). As a result, Mr. Childs' reports should be excluded under Rule 702 for improper foundation.

Additionally, Mr. Childs testified that he does not qualify as an expert on the topics for which TO offers him. For example, TO offered Mr. Childs as an expert on "BOP Control Systems and BOPs," Att. 1 at 14:21–24, but Mr. Childs is not an electrical engineer or a software

---

[2] If Mr. Childs' opinions are not stricken, the United States respectfully requests that TO be ordered to produce all unproduced data and information referred to by Mr. Childs and make available for deposition all those persons upon whom Mr. Childs relied for deposition. The United States also requests an opportunity to supplement the report of its expert, Dr. Rory Davis, to address the new information.

engineer, nor does he have any formal training in these areas. *See, id*. at 51:4–16. As a result, Mr. Childs deferred to a slew of individuals to form his opinions, acknowledging that he did not have the requisite experience. *See, id*. at 14:13–14:17,16:5–13, 51:17–51:25, 54:10–25. For example, Mr. Childs only discussed the set up of tests performed by Mr. Tolleson in "general terms," since "if [Mr. Tolleson] got any deeper, he'd be over my head." *Id*. at 54:6–9. Because the methodologies that ostensibly endorse the report were employed by others, who supplied no analysis and cannot be cross examined, Mr. Childs' reports should be excluded under Rule 702.

## CONCLUSION

Despite numerous opportunities to produce the information required by Rule 26(a)(2), and this Court, TO has repeatedly failed, without substantial justification, to provide factual information and data supporting and relating to Mr. Childs' "expert" opinions, resulting in harm to the US. Not only is the exclusion of Mr. Childs and his opinions appropriate based on TO's violation of Rule 26(a)(2) and this Court's Orders, it is also warranted under Rule 702. The US respectfully requests this Court exclude Mr. Childs as an expert. If granted the US will remove its rebuttal expert Dr. Doughty from its witness list.

Dated: January 24, 2012.

                                                                       Respectfully submitted,

| | |
|---|---|
| IGNACIA S. MORENO | NANCY FLICKINGER |
| Assistant Attorney General | Senior Attorney |
| Environment & Natural Resources Division | SARAH HIMMELHOCH |
| | Senior Attorney |
| JAMES NICOLL | DEANNA CHANG |
| Senior Counsel | SCOTT CERNICH |

A. NATHANIEL CHAKERES
RACHEL HANKEY
ABIGAIL ANDRE
JUDY HARVEY
MATT LEOPOLD
JEFFREY PRIETO
GORDON YOUNG
Trial Attorneys

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
U.S. Department of Justice
Environmental Enforcement Section
PO Box 7611
Washington, DC 20044
(202) 514-2779
steve.o'rourke@usdoj.gov

TONY WEST
Assistant Attorney General
Civil Division

PETER F. FROST
Director, Torts Branch, Civil Division
Aviation & Admiralty Litigation
STEPHEN G. FLYNN
Assistant Director
MICHELLE T. DELEMARRE
SHARON K. SHUTLER
JILL DAHLMANN ROSA
JESSICA SULLIVAN
JESSICA L. McCLELLAN
MALINDA LAWRENCE
DAVID J. PFEFFER
ROBIN HANGER
LAURA MAYBERRY
BRIENA STRIPPOLI
Trial Attorneys
U.S. Department of Justice
Torts Branch, Civil Division
PO Box 14271
Washington, DC 20044
(202) 616-4100
(202) 616-4002 fax

/s/ R. Michael Underhill
R. MICHAEL UNDERHILL, T.A.
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
7-5395 Federal Bldg., Box 36028
450 Golden Gate Ave.
San Francisco, CA 94102-3463
(415) 436-6648
(415) 436-6632 fax
mike.underhill@usdoj.gov

JAMES LETTEN
United States Attorney

SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
Hale Boggs Federal Building
500 Poydras St., Suite B-210
New Orleans, LA 70130

Attorneys for the UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of January, 2012.

/s/  Deanna J. Chang

U.S. Department of Justice