

42111397

Jan 24 2012
8:10PM

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | **MDL No. 2179** |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | **SECTION "J"** |
| | * | **JUDGE BARBIER** |
| **This Document Relates to:** | * | |
| **ALL CASES** | * | **MAGISTRATE NO. 1** |
| | * | **MAGISTRATE SHUSHAN** |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF ANADARKO PETROLEUM CORPORATION'S AND ANADARKO E&P COMPANY LP'S MOTION TO EXCLUDE THE EXPERT TESTIMONY AND REPORT OF JAMES P. LANG**

Anadarko Petroleum Corporation and Anadarko E&P Company LP (together "Anadarko") respectfully submit this memorandum in support of their Motion to Exclude the expert testimony and report of the United States' Government's rebuttal expert James P. Lang.

**I.     BACKGROUND**

On November 7, 2011, the U.S. served the expert report of Mr. Lang, purportedly to rebut the opinions proffered by Anadarko's and MOEX's experts, Roger Vernon and Gordon Cain, respectively. *See* Exhibit 1, Rebuttal Expert Report of James P. Lang, (hereafter "Lang Report") at p. 3. Mr. Lang was deposed on January 11, 2012. Anadarko has filed a motion *in Limine* to strike portions of Mr. Lang's report and to preclude his associated opinions on the grounds that they are not rebuttal opinions.[1] This motion seeks to have Mr. Lang's report and opinions excluded in their entirety for the separate and independent bases that (i) Mr. Lang is not qualified to render opinions on the subject matters contained in his report because he does not have the specialized knowledge necessary to assist the Court in understanding the evidence or

---

[1]     *See* Anadarko's Motion *in Limine* to Strike and Preclude From Trial Certain Sections of the Rebuttal Expert Report of James P. Lang and Certain Opinions of James P. Lang, [Rec. Doc. 5245] filed January 17, 2012.

determining a fact in issue; (ii) his opinions are not relevant; and (iii) his opinions are not reliable. Anadarko submits that admission of Mr. Lang's report and testimony would be inappropriate under the Federal Rules of Evidence and the substantial body of case law governing the admissibility of expert opinions.

## II.     LEGAL STANDARD

Fed. R. Evid. 702 requires exclusion of expert testimony unless:

(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and method reliably to the facts of the case.

The Court must determine whether the U.S. satisfies the requirements for admissibility of Mr. Lang's testimony or opinions. Fed. R. Evid. 104(a) ("Preliminary questions concerning the qualifications of a person to be a witness . . . shall be determined by the court. . ."); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n. 10 (1993) (same). Specifically, the Court must evaluate a proffered expert's testimony for both "relevance and reliability." *Id.* at 594-95. Further, the proponent of the expert testimony must demonstrate admissibility by a preponderance of the evidence. *Id.* at 592 n. 10; *see also Bourjaily v. United States*, 483 U.S. 171, 176 (1987) (holding the offering party must prove admissibility by a preponderance of the evidence).

## III.    ARGUMENT

Anadarko and MOEX were designated as Non-Operating Parties ("NOPs") under the Operating Agreement ("OA") with BP. The October 17, 2011 Vernon and Cain Reports opine that Anadarko's and MOEX's roles with respect to the Macondo well were consistent with the customary role of NOPs. Specifically, Vernon and Cain opine that, as this Court previously ruled, BP was the Operator of the Macondo well and was not subject to the control or direction of the NOPs in its design, drilling and abandonment operations on the Macondo Well.

*See* Exhibit 2, Excerpt of Amended Expert Report of Roger Vernon at pp. 2-4; Exhibit 3, Excerpt of Expert Report of Gordon R. Cain at pp. 1-2.  Mr. Lang's report was proffered purportedly to rebut those opinions.  His report, which goes far afield of rebuttal, introduces opinions on:

- Anadarko's and MOEX's ownership rights and obligations as NOPs under their OA with BP; Ex. 1 at pp. 11-12.

- How, as a NOP, Anadarko allegedly attempted to control, could have controlled and did control BP's conduct with respect to the Macondo well; *id.* at pp. 12-14, 17-19.

- How, as a NOP, Anadarko allegedly was obligated to monitor all of the data to which it had access regarding the well; *id.* at pp. 15-19.

- How imposition of Clean Water Act penalties on NOPs allegedly will not chill future investment in exploratory wells, but will serve to stimulate innovation in safety practices.  *Id.* at pp. 19-22.

Mr. Lang lacks the requisite expertise to provide opinions in any of these areas.[2]

### A.    Mr. Lang Lacks the Requisite Expertise to Opine on Anadarko's Role, Rights, Actions and Responsibilities in BP's Drilling and Abandonment Operations on the  Macondo Well.

Mr. Lang holds a Bachelor's Degree in electrical and computer engineering from the University of New Hampshire and a Masters in Business Administration ("MBA") from

---

[2]    Lang also offers opinions on interpretation of the OA and opines that Anadarko had fiduciary duties arising out of its relationship with its stockholders and arising out of the OA with BP.  Contract interpretation is a matter for the Court, not an expert.  *See Cunningham v. Bienfang*, No. Civ.A. 3:00-CV-0448, 2002 WL 31553976 at *2 (N.D. Tex. Nov. 15, 2001) (citing *Amica Mutual Ins. Comp. v. Moak*, 55 F.3d 1093, 1096 n. 5 (5th Cir. 1995).  Nor is Mr. Lang qualified to provide legal opinions on alleged "duties" because, as he admits, he is not a "legal expert" or a lawyer.  Ex. 4 at 30:8-9, 41:14-21, 62:16-23, 70:22, 77:21-22, 119:15-16, 136:1, 140:16-17, 156:14-20, 165:7-8, 174:7-8, 192:16-23, 201:19-21, 202:14-24, 203:20-24, 230:9-11.  Moreover, this Court already has ruled on Anadarko's absence of duties to third parties under the OA, a ruling of which Mr. Lang was unaware when he wrote his November 7, 2011 report, and when he was deposed on January 11, 2012.  Aug. 26, 2011 Order at 29, [Doc. Rec. 3830].  Mr. Lang's opinions should be excluded on all of these bases as well as the other grounds set forth herein.

Dartmouth.  Ex. 1 at p. 3.  He describes his relevant experience as twenty years of serving as a consultant in the energy industry, helping to value assets, and develop strategies to pursue, buy and sell assets.  *Id.* at p. 2-3; Exhibit 4, Excerpts from Deposition Transcript of James P. Lang, January 11, 2012 (hereafter, "Lang Depo.") at 17:24-18:2.  Mr. Lang's work in the energy industry focuses on "decision-making around assets" and "working with executives," on advising and participating in large client sales pursuits.  Ex. 1 at p. 23; Ex. 4 at 18:17-19:6.  His experience derives from discussions with executives and the decisions they make, and his current role with the Lang Group is one where he "invest[s] in early stage energy-related, business service related and some other kinds of ventures. . . ."  Ex. 4 at 49:16-25, 24:12-16.

Mr. Lang is not a drilling engineer or a petroleum engineer.  *Id.* at 17:21-24.  He does not belong to any oil and gas industry groups.  *Id.* at 40:17-19.  He has no experience in analyzing drilling practices, procedures or reports.  *Id.* at 90:20-91:17, 136:18-137:11, 162:23-163:21, 173:22-174:1.  He has never drafted or negotiated, or had any training on drafting or negotiating, petroleum leases or operating agreements.  *Id.* at 16:9-20, 18:13-15, 17:21-18:2, 19:16-22, 149:1-3.  He is not an expert on regulatory requirements with respect to deepwater drilling.  *Id.* at 140:8-141:6.  In keeping with his asset valuation focus, he has advised NOPs only in the context of whether to initially invest in a well, but not in the context of whether to agree to, or refuse, additional investment after drilling has started.  *Id.* at 33:2-34:4.  He has never advised a NOP of what obligations it purportedly has to monitor any information to which it may have access during the drilling of a well.  *Id.* at 130:4-15.  He has never served as an expert witness on any subject related to drilling operations, let alone on the specific roles, responsibilities or incentives of a NOP.  *Id.* at 11:11-17.  Indeed, Mr. Lang has served as an expert witness only once,

appearing in a mediation several years ago where the subject was company valuation and shareholder rights.  Ex. 4 at 26:11-27:5.

Notwithstanding his lack of technical and practical expertise, Mr. Lang first opines that Anadarko and MOEX actively participated in and had control over the "Macondo venture" because, after drilling began, they could have refused any of BP's Requests for approval of Authorizations for Expenditure ("AFEs"), but chose to approve them instead.  Ex. 1 at pp. 12-14 (entitled "Anadarko's and MOEX's Approval of AFEs Demonstrates Their Active Participation and Control Over the Macondo Venture").  Mr. Lang does not explain how a NOP's alleged right to reject an AFE during drilling constitutes "control" over the drilling of a well, nor can he.  Mr. Lang testified at his deposition that he could not recall any instance in which he was involved in the decision-making process of a NOP as to whether to consent or refuse to consent to an AFE during drilling on a deepwater drilling operation.  He also could not remember any drilling operation having ceased due to nonconsent to an AFE by a NOP.  Ex. 4 at 33:2-34:4, 120:10-20. Because he lacks experience in how NOPs make their AFE decisions during the course of drilling, and what happens when AFEs are rejected, he does not and cannot opine, for instance, that rejection of an AFE causes drilling to be abandoned or leads to changes in well designs or drilling plans.  Accordingly, Mr. Lang is not qualified to opine that Anadarko had "active participation in and control over the Macondo Venture" because he is not qualified to opine on what would have happened had Anadarko "nonconsented."  Accordingly, his opinion should be excluded.

A similar fate should befall Mr. Lang's opinion that Anadarko and MOEX had an obligation to monitor all of the data to which they may have had access regarding the Macondo well.  While this opinion was not articulated in Mr. Lang's report, it surfaced, with no small

amount of ambiguity and confusion, during Mr. Lang's deposition when he was asked why section IX of his report seemed to be provided for the purpose of supporting an opinion, but no opinion was set forth.  It was then that Mr. Lang revealed his opinion that as "fiduciary agents of their companies," the NOPs had a responsibility to monitor all of the information to which they had access so that they could be "active owners."  Ex. 4 at 117:4-119:7.  Yet, even as he shared this opinion, Mr. Lang denied that he was expressing a legal opinion and admitted that the operating agreement did not obligate the NOPs to conduct such monitoring.  *Id*. at 119:8-120:9.  He also admitted that he, personally, had never advised a NOP that it was its obligation to monitor data from a drilling rig on a full-time basis and stated:  "That would not be an area where I would not advise one way or the other."  *Id*. at 130:4-15.[3]  Similarly, he admitted he was not aware of any industry practice by which NOPs were advised that they were obligated to monitor rig data on a real time basis.  In Mr. Lang's words, "It's their opportunity to do so, but nowhere is it written that it is their obligation to do so."  *Id*. at 130:16-22.

The circular nature of Mr. Lang's "obligation to monitor" opinion (they are obligated, but they aren't) is probably the best evidence that Mr. Lang is not qualified to render an opinion on whether a NOP has any obligation to monitor well drilling information.  Here, where Lang admitted during deposition that he cannot provide *any* examples where he was involved in providing advice or services to non-operating parties with respect to their role or responsibilities <u>during</u> the drilling of an exploratory well, Ex. 4 at 36:1-38:6, this opinion lacks any basis and should be excluded.

---

[3]    Mr. Lang admitted during his deposition that he did not have any opinion regarding the sufficiency or importance of the information to which the NOPs allegedly were given access and that such an opinion was "outside the scope of [his] report."  Ex. 4 at 89:16-91:17.

In sum, the U.S. cannot satisfy Rule 702 for the foregoing opinions.  Rule 702 requires that an expert witness's knowledge must be based on an accepted body of learning in the expert's field.  Fed. R. Evid. 702 advisory committee's note (2000 amendments); s*ee also, e.g., United States v. Chang*, 207 F.3d 1169, 1172-73 (9th Cir. 2000) (expert that was "extremely qualified" in one topic was excluded from testifying on topic where he didn't have expertise).  The fact that an individual may have expertise in one area (here, valuing assets), does not render him qualified to testify on a topic that is outside his area of expertise.  *See, e.g., Wilson v. Woods*, 163 F.3d 935, 938 (5th Cir. 1999) (excluding expert testimony from witness who was an expert in the cause and origin of fires, but not accident reconstruction);  *Seatrax, Inc. v. Sonbeck Inter.*, 200 F.3d 358, 372 (5th Cir. 2000) (finding expert with fifteen years in the marine crane industry not qualified to opine on lost profits of a marine crane company because he lacked "formal or professional training in accounting"); *Moreno v. W.R. Davis Produce, Inc.*, A-06-CA-012, 2007 U.S. Dist. LEXIS 43079, at *7 (W.D. Tex. June 14, 2007) (holding that credentials that qualified an expert to *investigate* an accident did not qualify him to *reconstruct* an accident). Anadarko respectfully submits that Mr. Lang's opinions should be excluded because he lacks the expertise to reliably support those opinions.

**B.    Mr. Lang's Opinions Should Be Excluded Because They Are Not Relevant.**

Mr. Lang's report and opinions also must be excluded because they are not relevant and therefore not helpful to the Court in this case.  Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible."); *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, nonhelpful."); *see also, e.g., Pipitone v. Biomatrix, Inc.*, 288 F. 3d 239, 244 (5th Cir. 2002) (concluding that expert testimony was properly excluded because it failed "the relevancy prong of *Daubert*").  To be relevant,

Mr. Lang's opinions must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* at 245.  Mr. Lang's opinions do neither.

Mr. Lang devotes a large section of his report to opining on Anadarko's business strategies and motivation for entering into agreements with BP regarding investment in the Macondo Well.  Ex. 1 at pp. 3-4, 6-10; Ex. 4 at 184:20-186:24.  He includes two "decision trees" by which he purports to describe options and risks companies face when making the decision to enter into an investment agreement.  Ex. 1 at pp. 20-21; Ex. 4 at 198:9-12.  But Anadarko's motivation for investing in the Macondo Well is irrelevant to any issue in Phase I.  And it is inappropriate for an expert to speculate on a company's state of mind or motivation in any event. *See, e.g., DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) (holding that expert could not "speculate" on company's motive); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 545, 547 (S.D.N.Y. 2004) (precluding an expert from testifying that a company's conduct was motivated by its desire to increase profits).  The rationale for precluding expert testimony in this area is that determining intent does not require "scientific, technical, or other specialized knowledge."  *See In re Rezulin*, 309 F. Supp. 2d at 541.

Section XI of Mr. Lang's report also provides an irrelevant, and thus unhelpful, list of things Anadarko allegedly "could . . . have done" according to Mr. Lang's interpretation of the parties' OA, again with no analysis of how these things relate to an issue in this case, or how they might help the trier of fact determine an issue in the case.  Ex. 1 at p. 19.  Accordingly, this aspect of Mr. Lang's report and opinions also should be excluded as irrelevant.

## C.     Mr. Lang's Opinions are Not Reliable.

To be admissible, an expert's opinion must also be reliable.  Fed. R. Evid. 702; *Daubert*, 509 U.S. at 594-95.  The U.S. cannot satisfy this requirement because Mr. Lang repeatedly asserts unsupported and unsupportable inferences.

For example, Mr. Lang opines that Anadarko had an obligation to monitor information and data on WellSpace and INSITE Anywhere. Ex. 1 at p. 19. Yet when asked at deposition for the basis of that opinion, he could only say it was his "belief that that would be an effective industry practice," and admitted that while NOPs have an opportunity to monitor, "nowhere is it written that it is their obligation to do so." Ex. 4 at 130:16-22.

Further, Mr. Lang presents a list of things Anadarko "could have done." *See* Ex. 1 at p. 19. The list not only is irrelevant, but unreliable. For example, Mr. Lang opines that Anadarko could have visited the *Deepwater Horizon* during drilling, yet does not explain why this is allegedly meaningful, and, during his deposition, he could not point to a single instance when a NOP visited a rig during the drilling of an offshore deepwater exploratory well. Ex. 4 at 116:21-117:3. Lang likewise asserts that NOPs can "nonconsent" to AFEs, but during his deposition could not recall a single instance where a NOP nonconsented and where that nonconsent caused drilling operations to cease. *Id.* at 120:10-20. When questioned about his assertion that NOPs "had the right and ability to raise 'higher priority proposals' for the next stage of activity," Mr. Lang offered no support other than "you know, an informal proposal can be raised at any time. And my experience is such that the industry will be responsive to its parties." *Id.* at 121:5-122:3.

Opinions not recognized as acceptable to others in the same field are unreliable. *See Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999) (contending that reliability can be evaluated by asking whether methodology or preparation is "is of a kind that others in the field would recognize as acceptable"). When asked whether others in the field would agree with his opinions related to the impact of liability (costs, damages and penalties) on deepwater drilling investment, Mr. Lang testified that he was unaware of any specific or general opinions held by others one way or the other. Ex. 4 at 127:7-17.

The most glaring example of Mr. Lang's unreliability is evidenced in his conclusion that the NOPs had "the right to control BP's operations pursuant to the terms of the operating agreement." Ex. 4 at 75:12-18.  Amazingly, Mr. Lang was unaware of, and never has read, this Court's opinion to the contrary.  *Id.* at 77:2-11.

Mr. Lang's opinions clearly lack reliability and it is that unreliability that demands exclusion of his opinion.  *See Moore v. Ashland Chem. Inc*., 151 F.3d 269, 276 (5th Cir. 1998) ("The proponent need not prove to the judge that the experts' testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable.").

## IV.    CONCLUSION

For all of the reasons set forth above, the United States Government cannot meet its burden of proving by a preponderance of evidence that Mr. Lang's opinions and testimony meet the admissibility requirements of the Federal Rules.   Therefore, the Court should grant Anadarko's motion to exclude the expert report and testimony of James P. Lang.

DATED:  January 24, 2012                    BINGHAM McCUTCHEN LLP

                                            /s/ *Ky E. Kirby*
                                            Ky E. Kirby
                                            ky.kirby@bingham.com
                                            David B. Salmons
                                            david.salmons@bingham.com
                                            Michael B. Wigmore
                                            michael.wigmore@bingham.com
                                            Warren Anthony Fitch
                                            tony.fitch@bingham.com
                                            Randall M. Levine
                                            randall.levine@bingham.com
                                            2020 K Street, NW
                                            Washington, DC 20006-1806
                                            Telephone (202) 373-6000
                                            Facsimile (202) 373-6001

                                            James J. Dragna
                                            jim.dragna@bingham.com
                                            Bingham McCutchen LLP
                                            355 South Grand Avenue
                                            Suite 4400
                                            Los Angeles, California 90071-3106
                                            Telephone (213) 680-6436
                                            Facsimile (213) 680-8636

                                            KUCHLER POLK SCHELL
                                            WEINER & RICHESON, LLC

                                            Deborah D. Kuchler, T.A. (La. Bar No. 17013)
                                            dkuchler@kuchlerpolk.com
                                            Janika Polk (La. Bar No. 27608)
                                            jpolk@kuchlerpolk.com
                                            Robert Guidry (La. Bar No. 28064)
                                            rguidry@kuchlerpolk.com
                                            1615 Poydras Street, Suite 1300
                                            New Orleans, LA  70112
                                            Tel:  (504) 592-0691
                                            Fax:  (504) 592-0696

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on October 17, 2011.

DATED:  January 24, 2012

_____
       /s/ *Ky E. Kirby*
       Ky E. Kirby