# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE:  OIL SPILL by the OIL RIG** | § | **MDL No. 2179** |
| **"DEEPWATER HORIZON" in the** | § | |
| **GULF OF MEXICO on** | § | **SECTION: J** |
| **APRIL 20, 2010** | § | |
| | § | |
| | § | |
| This document relates to: | § | **Judge Carl J. Barbier** |
| | § | **Magistrate Judge Sally Shushan** |
| ***All Cases and*** | § | |
| ***No. 2-10-cv-02771*** | § | |

## MEMORANDUM IN SUPPORT OF M-I L.L.C.'S MOTION TO EXCLUDE L. WILLIAM ABEL'S OPINIONS REGARDING THE SPACER

**OF COUNSEL:**
MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon
dleon@morganlewis.com
Texas Bar No. 24002463
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:      (305) 415-3000
Facsimile:      (305) 415-3001

Denise Scofield
dscofield@morganlewis.com
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:      (713) 890-5000
Facsimile:      (713) 890-5001

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**

January 24, 2012

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Hugh E. Tanner*
      Hugh E. Tanner
      htanner@morganlewis.com
      Texas Bar No. 19637400
      1000 Louisiana, Suite 4000
      Houston, Texas  77002
      Telephone:      (713) 890-5000
      Facsimile:      (713) 890-5001

**ATTORNEY FOR DEFENDANT**
**M-I L.L.C.**

## I.     INTRODUCTION

Cameron designated L. William Abel on the topic of possible causes of the blowout. Without any analysis, requisite experience, or testing of any nature, Abel concluded that the lost circulation materials used in the spacer were "unsuited" for such use and interfered with the negative pressure test.  Abel is not a drilling fluids expert.  He has no useful experience with the lost circulation materials at issue.   Abel has not analyzed or tested the spacer or the lost circulation materials at issue.  Moreover, Abel's opinions are vague and indefinite.  Under the familiar applicable standards,[1] Abel's opinions regarding the spacer are wholly unreliable and should therefore be excluded.

## II.    BACKGROUND

Before temporarily abandoning a deepwater well, the operator generally displaces the drilling fluid in the riser with seawater to facilitate disconnecting the riser from the blowout preventer.  In typical deepwater applications, a water-based fluid called a "spacer" is pumped downhole before the seawater to separate the drilling fluid and seawater.  The water-based spacer used during the riser displacement on the *Deepwater Horizon* included water-based lost circulation materials (LCMs) that had been prepared, but not used during drilling operations.

On behalf of Cameron, L. William Abel opines that the LCMs were "unsuited" for use as a spacer and "likely" caused a zero pressure reading on the kill line during the negative pressure test conducted during displacement.  Abel Rep. 12-13.[2]  Abel has no specialized knowledge relating to LCMs, and he conducted no testing to support his opinions.  Abel Dep. 253:20-25,

---

[1]  *See* FED. R. EVID. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[2]  Oct. 17, 2011 Expert Report of L. William Abel.  This Report has already been submitted to the Court by the parties.

564:25–565:10.[3]   Moreover, his opinions regarding the spacer are vague and indefinite, rendering them unreliable and thus unhelpful to the Court.

## III.   ANALYSIS

Abel's opinions regarding the spacer are unreliable for three independent reasons.

First, Abel's opinions are not based on specialized knowledge or experience regarding the drilling fluids, lost circulation materials, and spacers.  Abel is not a drilling fluids expert.  Abel Dep. 564:25–565:2.  Abel did not attempt to gain information about the spacer by examining it, conducting any tests on it, or studying anyone else's tests.  Abel Dep. 253:20-25, 258:7-11, 261:21–262:11, 265:13-17, 565:3-10, 583:23–584:2.  He does not even know how much of the two LCMs were used or what else, if anything, was added to that mixture.  Abel Dep. 259:3-13.[4]

Rule 702 requires that the expert have "specialized knowledge" to aid the trier of fact.  To opine on a specific issue, the proposed expert must have "sufficient specialized knowledge to assist the [trier of fact] in deciding *the particular issues in the case*."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (citation and internal quotation marks omitted, emphasis added).  An expert's opinions beyond the scope of his expertise are "unsupport[able] and unreliable."  *Richmond Med. Ctr. for Women v. Herring*, 527 F.3d 128, 134 n.1 (4th Cir. 2008); *see also First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996) (noting that expert testimony was properly rejected by the court because the "opinion of

---

[3]  Dec. 12-13, 2011 Deposition of L. William Abel, attached as Ex. A.

[4]  At one point in his deposition, Abel claimed that he had some knowledge about the specific LCMs used at the Macondo well from interviews that he had conducted of M-I employees on a rig off the coast of Greenland—after his retention in this matter and without disclosure to the M-I employees of such retention.  Abel Dep. 565:11–566:15.  After M-I's counsel asked Abel about how these interviews occurred after he was retained as an expert by Cameron and how he did not disclose this to the M-I employees, Abel quickly retreated and noted that he did not rely upon any information gleaned from these interviews in forming his opinions about the spacer.  Abel Dep. 568:2–569:8.

dishonesty goes beyond the scope of expertise."). Because of his self-admitted lack of knowledge and experience in the relevant area, Abel's opinions regarding the spacer should be excluded. *See Shelter Ins. Cos. v. Ford Motor Co.*, No. 06-60295, 2006 WL 3780474, at *3 (5th Cir. Dec. 18, 2006) ("When an expert witness honestly and forthrightly testifies that he is not qualified in a particular area, it is not an abuse of discretion for the court to find that the witness is unqualified, under *Daubert*, to provide an expert opinion in that area and to exclude such testimony.").

Second, Abel did not test any of his theories. Abel conducted no tests whatsoever on the spacer; nor was he asked to do so. Abel Dep. 253:20-25, 258:7-11, 261:21–262:11, 565:3-10. Showing that the theory underpinning the proposed opinion is testable and has been tested is critical to establishing that the opinion rested on sound scientific methodology and is thus admissible. *Daubert*, 509 U.S. at 593. When faced with a similar circumstance, the Seventh Circuit held that it was not error to exclude an expert's opinions as speculative when he gave opinions about the impact of combining two chemicals because, despite impressive credentials, he did no testing on the products, individually or together. *See Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998).[5]

Third, Abel's opinions are vague and indefinite. Abel opines that the LCMs were "unsuited as a spacer and complicated the interpretation" of the negative pressure test. Abel Rep. 12. This opinion is based on "likely," "possible," and "plausible" assumptions (according

---

[5] Many other courts, including the Fifth Circuit, have excluded expert opinions when no testing was conducted. *See, e.g., Guy v. Crown Equip. Corp.*, 394 F.3d 320, 326 (5th Cir. 2004) (no tests to show proposed alternative design safer); *Fuesting v. Zimmer, Inc.*, 421 F.3d 528, 536 (7th Cir. 2005) (lack of scientific tests or experiments by himself or others to support expert's conclusions undermines reliability); *Truck Ins. Exchange v. MagneTek, Inc.*, 360 F.3d 1206, 1212-13 (10th Cir. 2004) (expert had no testing showing his theory about how wood ignited was plausible); *Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir. 1999) ("A liability expert is only helpful to the fact finder if he is able to establish such an element of the claim through visual inspection, independent research, testing, and knowledge."); *Dora Homes, Inc. v. Epperson*, 344 F. Supp. 2d 875, 888 (E.D.N.Y. 2004) (finding that opinions on source of leaks based on photos rather than independent inspection and testing, which could have been done, were speculative and unreliable).

to Abel) that are not supported by any empirical data.  For example, Abel surmises that the LCM spacer "*likely*" migrated to the kill line and caused the zero pressure reading during the NPT (Abel Rep. 12 (emphasis added); Abel Dep. 305:5-8) and discusses two "*plausible*" ways this could have happened:  the spacer "*may* have leaked" through the upper annular preventer or "it is *possible*" that the spacer was not above the BOP at the start of the negative pressure test (Abel Rep. 12-13 (emphases added)).  Not only did Abel hedge his opinions because he is "not a Fluids Specialist" (Abel Dep. 571:6), he also contradicted himself, during his deposition, on whether his "main concern" was the spacer's weight or its volume.  *Compare* Abel Dep. 569:14-24 ("I object to the size of the spacer . . . . The weight of it is my main concern."), *with* Abel Dep. 571:3-14 ("I'm not terribly concerned that the spacer is weighted . . . . I'm more concerned of the volume of the spacer and what effect is has on the negative test.").[6]

Such equivocation amounts to speculation and results in unreliable and irrelevant opinions.  The Fifth Circuit upheld the exclusion of a doctor proffered as an expert witness who opined about a "likely" cause of infection, but could not say that cause was more likely than not *the* cause.  *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002).  "A perfectly equivocal opinion does not make any fact more or less probable and is irrelevant under the Federal Rules of Evidence."  *Id.* at 245 & n.21 (citing FED. R. EVID. 401).[7]

Moreover, Abel acknowledges that a closed valve could also have caused the zero pressure reading on the kill line, but he does not account for this possibility at all.  Abel Dep.

---

[6]  This discussion reflects the uncertainty of Abel's opinions.  Moreover, Abel never mentioned any concerns about the volume of the spacer in his report.  Abel Dep. 571:20–572:17.

[7]  *See also Kumho*, 526 U.S. at 155 (explaining that excluded expert could not give a key opinion "with any certainty," probably because of his subjective method of analysis and failure to inspect the product); *Yates-Williams v. El Nihum*, Civil Action No. H-09-2554, 2011 WL 1157378, at *14 (S.D. Tex. Mar. 24, 2011) (excluding expert doctor in part because he could not say that any cause more likely than not caused the infection); *Dora Homes*, 344 F. Supp. 2d at 887 (excluding expert in part because his opinions were qualified throughout rather than being supported by scientific principles).

560:16–561:5, 585:16-21.   An expert theory that does not show one cause is more or less probable than another is irrelevant and inadmissible.   *See Burleson v. Tex. Dep't of Crim. Justice*, 393 F.3d 577, 587 (5th Cir. 2004); *Yates-Williams*, 2011 WL 1157378, at *14, 18; *see also Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 587 (5th Cir. 2002) (noting that expert did not address possibility of contamination from other sources).   *Daubert* seeks to ensure the "the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 278 (5th Cir. 1998) (*en banc*) (citation and internal quotation marks omitted)).

## IV.     CONCLUSION

L. William Abel does not have the requisite experience and did not perform any analysis or testing to support his opinions on the use of the spacer on the Macondo well.   M-I, therefore respectfully requests that this Court grant M-I's motion and exclude Abel's opinions regarding the spacer.[8]

---

[8]   Abel expresses many other opinions in his report.   This motion covers only these specific issues regarding the spacer, and M-I takes no position as to the remainder of Abel's opinions.

Respectfully submitted,

**OF COUNSEL:**                                              MORGAN, LEWIS & BOCKIUS LLP
MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon                                               By: /s/ *Hugh E. Tanner*
dleon@morganlewis.com                                           Hugh E. Tanner
Texas Bar No. 24002463                                          htanner@morganlewis.com
5300 Wachovia Financial Center                                  Texas Bar No. 19637400
200 South Biscayne Boulevard                                    1000 Louisiana, Suite 4000
Miami, Florida  33131                                           Houston, Texas  77002
Telephone:     (305) 415-3000                                   Telephone:     (713) 890-5000
Facsimile:      (305) 415-3001                                  Facsimile:      (713) 890-5001

Denise Scofield
dscofield@morganlewis.com                                   **ATTORNEY FOR DEFENDANT**
Texas Bar No. 00784934                                      **M-I L.L.C.**
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:     (713) 890-5000
Facsimile:      (713) 890-5001

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Memorandum in Support of M-I L.L.C.'s Motion to Exclude L. William Abel's Opinions Regarding the Spacer has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of January, 2012.

 /s/ *Hugh E. Tanner*
Hugh E. Tanner