UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010 | § § § § § § | MDL No. 2179<br><br>SECTION: J |
| This document relates to:<br><br>*All Cases and*<br>*No. 2-10-cv-02771* | § § § § | Judge Carl J. Barbier<br>Magistrate Judge Sally Shushan |

**MEMORANDUM IN SUPPORT OF M-I L.L.C.'S MOTION TO
EXCLUDE CALVIN BARNHILL'S OPINIONS REGARDING
THE RELATIONSHIP BETWEEN THE SPACER AND
THE NEGATIVE PRESSURE TEST**

**OF COUNSEL:**
MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon
dleon@morganlewis.com
Texas Bar No. 24002463
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone:   (305) 415-3000
Facsimile:   (305) 415-3001

Denise Scofield
dscofield@morganlewis.com
Texas Bar No. 00784934
1000 Louisiana, Suite 4000
Houston, Texas 77002
Telephone:   (713) 890-5000
Facsimile:   (713) 890-5001

**ATTORNEYS FOR DEFENDANT
M-I L.L.C.**

January 24, 2012

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Hugh E. Tanner*
       Hugh E. Tanner
       htanner@morganlewis.com
       Texas Bar No. 19637400
       1000 Louisiana, Suite 4000
       Houston, Texas 77002
       Telephone:   (713) 890-5000
       Facsimile:   (713) 890-5001

**ATTORNEY FOR DEFENDANT
M-I L.L.C.**

**I.     INTRODUCTION**

Transocean designated Calvin Barnhill as a drilling expert in this litigation. Without any analysis, experience, or testing, Barnhill states that "due primarily to the effects created by the unorthodox spacer," the *Deepwater Horizon* rig crew misinterpreted the negative pressure test. Barnhill is not an expert on the chemical properties of spacers or lost circulation materials. Barnhill has no experience with the lost circulation materials at issue. Barnhill has not analyzed or tested the spacer or the lost circulation materials at issue. Moreover, Barnhill's opinions are vague and conclusory. Therefore, his opinions are unreliable and unhelpful. Under the familiar applicable standards,[1] Barnhill's opinions regarding the spacer should be excluded.

**II.    BACKGROUND**

Before temporarily abandoning a deepwater well, the operator must displace the drilling fluid in the riser with seawater to facilitate disconnecting the riser from the blowout preventer. In typical deepwater applications, a water-based fluid, called a "spacer," is pumped downhole before the seawater to separate the drilling fluid and seawater. The water-based spacer used during the riser displacement on the *Deepwater Horizon* included water-based lost circulation materials (LCMs) that had been prepared but not used during drilling operations.

Transocean's proposed expert witness, Calvin Barnhill, opines that "due primarily to the effects created by the unorthodox spacer," the *Deepwater Horizon* crew misinterpreted the negative pressure test. Barnhill Rep., Executive Summary 2.[2] As explained below, this opinion does not meet the requirements for admissible expert testimony.

---

[1]  *See* FED. R. EVID. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[2]  Sept. 23, 2011 Expert Report of Calvin Barnhill. This Report has already been submitted to the Court by the parties.

**III.    ANALYSIS**

   **A.   Barnhill Has No Relevant Specialized Knowledge Or Experience, Did Not Test His Theory, And His Opinion Regarding The Spacer Is Vague And Conclusory; Thus, This Unreliable Opinion Should Be Excluded**

Barnhill's opinion—that the spacer may have confounded the negative pressure test—suffers from three fundamental flaws: (1) Barnhill has no specific experience or knowledge upon which to draw, (2) he did not conduct a single test in forming his conclusions, and (3) his opinion is vague and conclusory. Each of these flaws independently renders his opinion unreliable, and therefore inadmissible.

First, Barnhill conceded that he has no experience with the specific LCMs at issue, Form-A-Set AK (FAS-AK) and Form-A-Squeeze (FASq). Barnhill Dep. 569:2-18.[3] In fact, Barnhill admitted that he is not an expert on the chemical properties of LCMs or spacer fluids generally and has conducted no analysis of the chemical composition of spacers or LCMs, including the ones at issue. Barnhill Dep. 566:14–570:21. Barnhill also admitted that he did not look at other readily available sources of information about the spacer, including the LCM product bulletins, the depositions of M-I employees, and the expert report of Martin Chenevert, who tested the very subject about which Barnhill speculates—barite settlement from the LCM spacer. Barnhill Dep. 569:15-18, 572:7-12, 573:13–574:16, 583:8-11; Nov. 7, 2011 Expert Report of Martin Chenevert.[4]

Rule 702 requires that the expert have "specialized knowledge" to aid the trier of fact. Accordingly, the proposed expert must have "sufficient specialized knowledge to assist the [trier of fact] in deciding the *particular issues* in the case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (emphasis added, internal quotation marks omitted). An expert's opinions

---

[3]  Nov. 29-30, 2011 Deposition of Calvin Barnhill, excerpts of which are attached as Ex. A.

[4]  This Report has already been submitted to the Court by the parties.

2

beyond the scope of his expertise are "unsupport[able] and unreliable." *Richmond Med. Ctr. for Women v. Herring*, 527 F.3d 128, 134 n.1 (4th Cir. 2008); *see First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996) (noting that expert testimony was properly rejected by the court because the "opinion of dishonesty goes beyond the scope of expertise."). Because of his self-admitted lack of knowledge and useful experience in the relevant area, Barnhill's opinions regarding the spacer should be excluded. *See Shelter Ins. Cos. v. Ford Motor Co.*, No. 06-60295, 2006 WL 3780474, at *3 (5th Cir. Dec. 18, 2006) ("When an expert witness honestly and forthrightly testifies that he is not qualified in a particular area, it is not an abuse of discretion for the court to find that the witness is unqualified, under *Daubert*, to provide an expert opinion in that area and to exclude such testimony.").

Second, Barnhill did not test the spacer or its constituents. Barnhill Dep. 570:13-21. Although Barnhill opines that the weight of the spacer might have impacted displacement pump efficiency, he did not test this theory. Barnhill Rep. 24-25; Barnhill Dep. 174:19–175:7, 570:13-21. Similarly, even though Barnhill speculated that barite might have settled out of the spacer during the negative pressure test, he did no testing to confirm whether that could have happened under the circumstances existing at that time. Barnhill Rep. 24-25; Barnhill Dep. 174:19–175:7, 570:13-21, 581:19-24, 582:17–583:7, 587:17-21.[5]

Showing that the theory underpinning the proposed opinion is testable and has been tested is critical to establishing that the opinion rested on sound scientific methodology. *See Daubert*, 509 U.S. at 593. When faced with a similar situation, the Seventh Circuit upheld an order excluding an expert's opinions about the impact of combining two chemicals. *See Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998). The court explained that, despite

---

[5] These theories are clearly testable. In fact, Chenevert tested for barite settlement from the LCM spacer and found none. Chenevert Rep. 8-10.

3

impressive credentials, the expert did not test the products, individually or together; therefore, his opinions were speculative. *See id.*[6]

Third, Barnhill's opinion is too vague and conclusory to be reliable. His report and deposition testimony are littered with statements about events that he thinks are a "possibility" or "may" have happened. Barnhill Rep. 24-25, 28-29; Barnhill Dep. 148:16-22, 174:19–176:7, 434:21–435:5, 436:9-17, 449:4-9. Barnhill states none of his critical opinions with any degree of certainty. For example, he testified that "it's *possible*" that the weight of the spacer "*may* have affected" pump efficiency. Barnhill Dep. 449:4-9 (emphases added); *see also* Barnhill Rep. 28. Barnhill opined that the spacer's likely location during the negative pressure test created the "possibilit[y]" either that barite settlement or a hydrostatic pressure issue could have led to the zero pressure reading on the kill line. Barnhill Dep. 174:19–175:7; *see also* Barnhill Rep. 28. Such equivocal opinions amount to speculation and are unreliable. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002). ("A perfectly equivocal opinion does not make any fact more or less probable and is irrelevant under the Federal Rules of Evidence.")[7]

Barnhill's deposition testimony reveals the uncertainty of his opinion, as he conceded that there are as many as four possible explanations for the zero reading on the kill line: (1) the

---

[6] Many other courts, including the Fifth Circuit, have excluded expert opinions when no testing was conducted. *See*, *e.g.*, *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 326 (5th Cir. 2004) (no tests to show proposed alternative design safer); *Fuesting v. Zimmer, Inc.*, 421 F.3d 528, 536 (7th Cir. 2005) (lack of scientific tests or experiments by himself or others to support expert's conclusions undermines reliability); *Truck Ins. Exchange v. MagneTek, Inc.*, 360 F.3d 1206, 1212-13 (10th Cir. 2004) (expert had no testing showing his theory about how wood ignited was plausible); *Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir. 1999) ("A liability expert is only helpful to the fact finder if he is able to establish such an element of the claim through visual inspection, independent research, testing, and knowledge."); *Dora Homes, Inc. v. Epperson*, 344 F. Supp. 2d 875, 888 (E.D.N.Y. 2004) (concluding that opinions on source of leaks based on photos rather than independent inspection and testing, which could have been done, were speculative and unreliable).

[7] *See also Kumho*, 526 U.S. at 155 (excluded expert could not give a key opinion "with any certainty," probably because of his subjective method of analysis and failure to inspect the product); *Yates-Williams v. El Nihum*, Civil Action No. H-09-2554, 2011 WL 1157378, at *14 (S.D. Tex. Mar. 24, 2011) (excluding expert doctor in part because he could not say that any cause more likely than not caused the infection); *Dora Homes*, 344 F. Supp. 2d at 887 (excluding expert because, *inter alia*, his opinions were qualified throughout rather than being supported by scientific principles).

line was plugged with barite, (2) a hydrostatic pressure effect of the spacer below the BOP, (3) a closed valve prevented communication with the wellbore, or (4) that the formation was not communicating.  Barnhill Dep. 174:19–176:7.  Barnhill offers *no* basis for concluding that the first of those four *potential* hypotheses is the *actual* cause of the zero pressure reading.  Thus, his "opinion" is inadmissible, because an expert theory that does not show that one cause is more or less probable than another is unreliable.  *See Burleson v. Tex. Dep't of Crim. Justice*, 393 F.3d 577, 587 (5th Cir. 2004); *Yates*, 2011 WL 1157378, at *14, 18; *see also Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 587 (5th Cir. 2002).

The reason that Barnhill does not attempt to determine the most likely cause is simple:  it does not affect his conclusion that the negative test was misinterpreted.  Though Barnhill does state that the negative test was misinterpreted due "primarily" to the effects of the spacer, other portions of his report and deposition testimony contradict that opinion by demonstrating that the negative test should not have been passed based upon the information available.  For example, Barnhill blames a "lack of understanding of the results being viewed" as a reason that the test was erroneously passed.  Barnhill Rep., intro 2.  Barnhill states further that "this information"— the information available despite the reason for the zero pressure reading—"should have resulted in the recognition that zonal isolation was not confirmed."  *Id.*  These are but a few of the examples of Barnhill's contradictory statements in his report and deposition.[8]  Accordingly,

---

[8] Other statements in Barnhill's report and deposition confirm that the negative test should not have been considered a success regardless of the cause of the zero pressure reading:  "The negative test, which at best was confusing and inconclusive, **certainly** did not confirm the adequacy of the primary flow barriers," Barnhill Rep., intro 4 (emphasis added); "The negative test actually confirmed the lack of well integrity and a lack of adequate primary flow barriers in the Macondo Well," *id.* at 5; "The negative testing revealed that the Macondo Well lacked integrity and was not secure," Barnhill Rep. 32; and "[w]ell, to me, the fact that you had the 1400 on the drill pipe created an anomaly.  I would not have passed the test."  Barnhill Dep. 177:14-21; see also *id*. at 432:7 - 434:17.

Additionally, Barnhill stated that several issues noted by the drill crew indicated a problem with the negative pressure test:  1) attempts to bleed the drill pipe to 0 psi were not successful; 2) the volume of fluid bled off appeared excessive; 3) the drill pipe would build pressure when shut in; 4) the choke/kill line pressures and drill pipe pressures were inconsistent; and 5) kill/choke line pressure dropping suggesting heavier fluid was entering the

Barnhill's opinion regarding the spacer is unreliable and should be excluded. *See Rivera-Cruz v. Latimer, Biaggi, Rachid & Godreau, LLP,* 2008 WL 2446331, at *6 (D.P.R. June 16, 2008) (When an expert's inconsistent statements demonstrate flaws in his application of the methodology, a court may properly consider such testimony to find the expert's opinions unreliable under Rule 702 of the Federal Rules of Evidence.)

Barnhill's lack of experience with the materials, through testing or other analysis, renders his opinions speculative and unreliable. Additionally, his indefinite opinion regarding the spacer is contradicted in his report and deposition testimony. Barnhill's opinions regarding the spacer should therefore be excluded.

## IV.   CONCLUSION

Barnhill has no expertise with the chemical properties of LCMs. He has no experience with these LCMS. He did not conduct any analysis or testing. For these reasons, this Court should grant M-I's motion and exclude Barnhill's opinions on the spacer.[9]

---

choke/kill line. Barnhill Rep. 30. Notably, all of these issues were observable at the surface, regardless of the reason for the zero pressure reading on the kill line.

[9] Barnhill expresses many other opinions in his report. This motion covers only these specific issues regarding the spacer, and M-I takes no position as to the remainder of Barnhill's opinions.

Respectfully submitted,

| | |
|---|---|
| **OF COUNSEL:**<br>MORGAN, LEWIS & BOCKIUS LLP | MORGAN, LEWIS & BOCKIUS LLP |
| Derek E. Leon<br>dleon@morganlewis.com<br>Texas Bar No. 24002463<br>5300 Wachovia Financial Center<br>200 South Biscayne Boulevard<br>Miami, Florida  33131<br>Telephone:     (305) 415-3000<br>Facsimile:       (305) 415-3001 | By: /s/ *Hugh E. Tanner*<br>         Hugh E. Tanner<br>         htanner@morganlewis.com<br>         Texas Bar No. 19637400<br>         1000 Louisiana, Suite 4000<br>         Houston, Texas  77002<br>         Telephone:     (713) 890-5000<br>         Facsimile:       (713) 890-5001 |
| Denise Scofield<br>dscofield@morganlewis.com<br>Texas Bar No. 00784934<br>1000 Louisiana, Suite 4000<br>Houston, Texas  77002<br>Telephone:     (713) 890-5000<br>Facsimile:       (713) 890-5001 | **ATTORNEY FOR DEFENDANT<br>M-I L.L.C.** |
| **ATTORNEYS FOR DEFENDANT<br>M-I L.L.C.** | |

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Memorandum in Support of M-I L.L.C.'s Motion to Exclude Calvin Barnhill's Opinions Regarding the Relationship Between the Spacer and the Negative Pressure Test has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of January, 2012.

                                                  /s/ *Hugh E. Tanner*
                                                  Hugh E. Tanner