UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico on April 20, 2010 | * | SECTION: J |
| | * | |
| This Document Relates to: | * | |
| All Cases | * | JUDGE BARBIER |
| | * | |
| | * | MAGISTRATE SHUSHAN |
| | * | |
| *  *  *  *  *  *  *  *  *  *  *  * | | |


MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MOEX OFFSHORE
2007 LLC AND MOEX USA CORPORATION'S MOTION TO EXCLUDE THE
EXPERT REPORT AND TESTIMONY OF JAMES P. LANG


John F. Pritchard
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Tel. (212) 858-1000
Fax (212) 858-1500

Christopher McNevin
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033

ATTORNEYS FOR MOEX OFFSHORE 2007 LLC

Jack McKay
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037-1122
Telephone (202) 663-8439
Facsimile (202) 663-8007

COUNSEL FOR MOEX USA CORPORATION

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................... 1

II. LEGAL STANDARD ............................................................................................................. 2

III. ARGUMENT ......................................................................................................................... 3

    A.  Lang Is Not Competent to Provide Expert Testimony on the Role of Non-
        Operators in Offshore Deepwater Drilling ....................................................................... 3

    B.  Lang's Opinions Regarding MOEX Offshore's Alleged Activities Are Unsuitable
        for Expert Testimony ......................................................................................................... 5

    C.  Lang's Characterization of MOEX Offshore as an "Owner" Is an Impermissible
        Legal Conclusion .............................................................................................................. 6

    D.  Lang's Opinion on the Impact of Liability Is Speculative and Should Be Excluded ......... 8

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

## CASES

*Askanase v. Fatjo*,
130 F.3d 657 (5th Cir.1997) ..........................................................................................7

*Baker v. Urban Outfitters, Inc.*,
254 F. Supp. 2d 346 (S.D.N.Y. 2003)..............................................................................9

*Black v. Food Lion, Inc.*,
171 F.3d 308 (5th Cir. 1999) .........................................................................................2

*C.P. Interests, Inc. v. California Pools, Inc.*,
238 F.3d 690 (5th Cir. 2001) .........................................................................................7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)................................................................................................2, 4, 5

*Gautreaux  v. Tetra Applied Technologies, LLC*,
Civil Action No. 08-4645, 2010 WL. 3952260 (E.D. La. Oct. 6, 2010) .................2, 4, 5, 6

*Goodman v. Harris Cnty.*,
571 F.3d 388 (5th Cir. 2009) .........................................................................................7

*Hammond v. Coleman Co.*,
209  F.3d 718 (5th Cir. 2000) .........................................................................................8

*Hathaway v. Bazany*,
507 F.3d 312 (5th Cir. 2007) .........................................................................................8

*Hebbler v. Turner*,
Civil Action No. 03-388, 2004 WL. 414821 (E.D. La. Mar. 3, 2004) ................................3

*Johnson v. Samsung Electronics America, Inc.*,
Civil Action Nos. 10-1146, 10-1549, 2011 WL. 4727824 (E.D. La. Oct. 6,
2011) .........................................................................................................................3, 4

*Jorden v. Dolphin Towing, L.L.C.*,
No. Civ.A. 03-222, 2004 WL. 602777 (E.D. La. Mar. 23, 2004).......................................7

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999).....................................................................................................2, 3

*Linko, Inc. v. Fujitsu Ltd.*,
No. 00 Civ. 7242, 2002 WL. 1585551 (S.D.N.Y. July 16, 2002) ......................................6

*Marks v. Pan America World Airways, Inc.*,
    785 F.2d 539 (5th Cir.1986) ..................................................................................................9

*In re Midland Enterprises, Inc.*,
    2002 WL. 31780156 (E.D. La. Dec. 11, 2002)......................................................................6

*Moore v. Ashland Chemical, Inc.*,
    151 F.3d 269 (5th Cir. 1998) ...............................................................................................3

*Owen v. Kerr-McGee Corp*,
    698 F.2d 236 (5th Cir. 1983) ................................................................................................7

*Peters v. Five Star Marine*,
    898 F.2d 448 (5th Cir. 1990) ................................................................................................6

*Skidmore v. Precision Printing and Pkg., Inc.*,
    188 F.3d 606 (5th Cir. 1999) ................................................................................................2

*Snap-Drape, Inc. v. Commissioner of Internal Rev.*,
    98 F.3d 194 (5th Cir. 1996) ..................................................................................................7

*Estate of Willie Mae Sowell v. United States*,
    198 F.3d 169 (5th Cir. 1999) ................................................................................................7

## STATUTES

Fed. R. Evid. 702 ....................................................................................................................2

MOEX Offshore 2007 LLC ("MOEX Offshore") and MOEX USA Corporation ("MOEX USA") (collectively "Movants") respectfully submit this memorandum in support of their motion to exclude the expert report and any testimony of the United States' proposed expert, James P. Lang ("Lang"), pursuant to Federal Rule of Evidence 702.

**I.**
**INTRODUCTION**

*First*, Lang lacks the requisite experience and expertise to opine on the role of MOEX Offshore with respect to the Macondo project.  Lang's background as a strategy consultant focused on "decision making," valuation, and acquisition of assets in the oil and gas industry does not qualify him to testify regarding the role of non-operators in offshore oil drilling operations or the corresponding industry practice and standards.  His report and testimony, therefore, should be excluded in their entirety.  *See* § III.A, *infra*.

*Second*, Lang's report does no more than counsel for the United States will do in argument, which is to propound a particular interpretation of Movants' roles and conduct based on documents and fact witness testimony  that will be available to the fact-finder.  As such, his testimony (which is not even supported by the evidence he cites) will not assist the trier of fact to understand or determine a fact in issue, and should be excluded under the *Daubert* standard.  *See* § III.B, *infra*.

*Third*, through Lang, the United States also seeks to offer the expert opinion that MOEX Offshore was an "owner" of the Macondo Well, a legal conclusion that is not properly the basis for expert testimony and, in any event, not supported by the evidence upon which Lang relies.  *See* § III.C, *infra*.

*Finally*, Lang's opinions regarding possible future impacts of the Court's decision in this matter on investors and the industry are speculative and are clearly outside of the boundaries of permissible expert testimony.  Such opinions are also not responsive to any opinions offered by the MOEX or Anadarko expert witnesses, and thus should be excluded as improper rebuttal testimony  *See* § III.D, *infra*.

## II.
## LEGAL STANDARD

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702. Under the *Daubert* standard established by the Supreme Court, the district court acts as a gate-keeper to ensure the reliability and relevancy of expert testimony.  *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993).  For this purpose, reliability depends on the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony.  *Skidmore v. Precision Printing and Pkg*., Inc., 188 F.3d 606, 618 (5th Cir. 1999) (*citing Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)). This inquiry is fact-specific.  *Black v. Food Lion, Inc.*, 171 F.3d 308, 311 (5th Cir. 1999). With respect to relevancy, *Daubert* described the examination as a question of whether expert testimony proffered "will assist the trier of fact to understand or determine a fact in issue."  *Daubert*, 590 U.S. at 591-92; *see also Kumho Tire*, 526 U.S. at 144; *Gautreaux*

*v. Tetra Applied Technologies, LLC*, Civil Action No. 08-4645, 2010 WL 3952260, at *2

(E.D. La. Oct. 6, 2010).

The *Daubert* analysis applies to all expert testimony, whether based on scientific

knowledge or on experience, training or other specialized knowledge. *Kumho Tire*, 526

U.S. at 147; *Hebbler v. Turner*, Civil Action No. 03-388, 2004 WL 414821, at *4 (E.D.

La. Mar. 3, 2004). When expert testimony is challenged under *Daubert*, the burden of

proof rests with the party seeking to present the testimony. *See Moore v. Ashland*

*Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998); *Johnson v. Samsung Electronics America,*

*Inc.*, Civil Action Nos. 10-1146, 10-1549, 2011 WL 4727824, at *3 (E.D. La. Oct. 6,

2011). To meet this burden, independent validation of the expert's opinion is required.

*Id.*

**III.**
**ARGUMENT**

**A.     Lang Is Not Competent to Provide Expert Testimony on the Role of**
       **Non-Operators in Offshore Deepwater Drilling**

Lang's description of his background and qualifications fails to reveal the source

of his purported expertise on the subject of the role of non-operating parties in offshore

deepwater drilling operations. While Lang has experience in the oil and gas industry, it

appears that nearly all of his knowledge is in the field of decision making as a "strategy

consultant." Exhibit A (Rebuttal Expert Report Of James P. Lang, dated November 7,

2011) at 2. In such positions, he has focused on asset valuation, strategies to buy and sell

assets, and advising companies "through the decision making process" of pursuing assets

and developing corporate strategy. *Id.* But merely working with companies in the

industry does not qualify Lang as an authority on industry practices in interpreting and

applying operating agreements for offshore drilling operations, the subject on which the United States has put him forth as an expert witness.

To the contrary, Lang has never advised even a single non-operator on "decision making" with respect to deepwater drilling operations after the initial investment was made, much less negotiated, drafted, administered, or implemented a deepwater operating agreement. *See* Exhibit B (Excerpts of transcript of the January 11, 2012 Deposition of James P. Lang) at 30:2-38:6; 44:2-6.[1] Nor is he a member of any oil and gas industry groups. *Id.* at 40:17-19. Thus, Lang has no basis to opine on the industry standard for such agreements, nor the role of non-operating parties under such agreements. In fact, the Lang Report does not even mention the AAPL Model Form Deepwater Operating Agreement, and he admitted at his deposition that he has never looked at a model Operating Agreement, that his only understanding that the Macondo Operating Agreement is based on the AAPL Model Form is based on Gordon Cain's testimony, and that he knows nothing about the development of that model form. *Id.* at 44:7-46:9, 46:18-48:12.

Thus, there is no evidence from Lang's report or his deposition testimony that he has any experience working for or with respect to non-operators in offshore deepwater drilling operations that would provide a foundation for his purported expertise in the practical roles and responsibilities of such parties. As such, Lang and the United States have failed to establish the basis of Lang's expertise to testify on the subject industry practices regarding the role of non-operating parties in offshore deepwater drilling operations, which makes his report and proposed expert testimony inadmissible under the *Daubert* standard. *See Daubert*, 509 U.S. at 592; *Gautreaux*, 2010 WL 3952260, at *3.

---

[1] Lang also testified that he has no experience resolving disputes under oil and gas operating agreements or advising parties to such disputes. *Id.* at 46:5-9.

4

**B.      Lang's Opinions Regarding MOEX Offshore's Alleged Activities Are Unsuitable for Expert Testimony**

Much of Lang's expert report and proposed testimony consists of his evaluation of documents and testimony to draw conclusions regarding the role and activities of MOEX Offshore with regard to the Macondo Well.  *See* Ex. A at 6-19.  For example, Lang opines that MOEX Offshore had the ability to control (or at least influence) BP's drilling operations based on his interpretation of out-of-context excerpts from correspondence between the parties.  *Id.*  While the Lang report is replete with MBA jargon and management buzzwords, it does not "assist the trier of fact to understand or determine a fact in issue" as required under the *Daubert* standard.  *See Daubert*, 590 U.S. at 591-92.  In fact, the synthesis of the evidence performed by Lang does not require expert testimony, and Lang's apparent purpose is to be a mouthpiece through which the United States can present its factual and legal theories (with the veneer and perceived credibility of an independent expert).[2]  As such, the opinions offered by Lang are unsuitable for expert testimony and should be excluded by the Court.[3]

It is within the discretion of the trial judge to decide "that the [fact-finder] could adeptly assess the situation using only [it's] common experience and knowledge," and

---

[2]  Lang's opinion regarding Movants' alleged exercise of operational control is also contrary to the Court's ruling that, under the Operating Agreement, "BP was solely responsible for the drilling operations" and that "[a]ny access to information that … [MOEX Offshore] may have had did not give rise to a duty to intercede in an independent contractor's operations."  Order and Reasons As to Motions to Dismiss the B1 Master Complaint (Dkt. # 3830) at 28.  Lang testified that, while he had not read the Court's opinion, he disagreed with the Court's ruling that MOEX Offshore did not have the ability to control BP.  Ex. B at 75:12-79:12.

[3]  In any event, the documents cited by Lang do not support his conclusions.  For example, Lang asserted that Movants made technical comments to draft Authorization For Expenditures ("AFEs") which evidenced their exercise of control over BP's operations.  Ex. A at 14.  In particular, he asserted that an April 14, 2010 email, which questioned the size of the production casing listed on the draft AFE, was evidence of such control.  *Id.,* Deposition Ex. 2850.  He admitted, however, that if such email was simply correcting an error in the wording of the AFE (which is clear from the text of such email), this would not be evidence of MOEX Offshore asserting control over BP's operations.  Ex. B at 79:14-87:25; 103:16-104:17.

thus exclude expert testimony on that basis.  *Peters v. Five Star Marine*, 898 F.2d 448, 450 (5th Cir. 1990).  "If the expert's testimony brings no more to the finder of fact than the lawyers can offer in argument, the expert's opinions should be excluded." *Gautreaux*, 2010 WL 3952260, at *2-3 (ruling that the expert's report consisted of facts mirrored from other sources and conclusions drawn from those facts, which the factfinder could do on its own through common experience and knowledge); *In re Midland Enterprises, Inc.*, 2002 WL 31780156, at *3 (E.D.La. Dec. 11, 2002) (excluding expert whose testimony would "not bring to the jury anything more than the lawyers can offer in argument"); *see also Linko, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242, 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002) (granting motion to exclude expert where report contained "arguments and conclusory statements about questions of fact masquerading behind a veneer of technical language").  Accordingly, Lang's expert report should be stricken and his testimony excluded at trial.

> **C.**    **Lang's Characterization of MOEX Offshore as an "Owner" Is an <u>Impermissible Legal Conclusion</u>**

Lang offers the opinion that "BP, Anadarko and MOEX were owners of the Mississippi Canyon 252 lease, Macondo well, and associated facilities and hence jointly exposed to all consequences (good or bad) from the well drilling and planned development activity."  Ex. A at 3.  He continues to refer to MOEX Offshore as an "owner" throughout the report.  *See id.* at 4, 10-17, 19, 22.  Lang's opinions regarding whether MOEX Offshore was an "owner" of the Macondo Well and/or "jointly exposed to all consequences" address key legal issues and are therefore improper under the Federal Rules of Evidence.

"Neither [Federal Rule of Evidence 702 or 704] permits an expert witness to offer conclusions of law." *C.P. Interests, Inc. v. California Pools*, Inc., 238 F.3d 690, 697 (5th Cir. 2001); *see also Owen v. Kerr-McGee Corp*, 698 F.2d 236, 240 (5th Cir. 1983) (noting that the Federal Rules are not "intended to allow a witness to give legal conclusions.")  In fact, "an expert may never render conclusions of law" and expert testimony about what the law is or that presents legal conclusions is inadmissible. *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009); *see also Estate of Willie Mae Sowell v. United States*, 198 F.3d 169, 171 (5th Cir. 1999); *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir.1997).

Courts will exclude expert reports and/or testimony when they attempt to proffer a legal conclusion under the guise of expert opinion.  *See Snap–Drape, Inc. v. Comm'r of Internal Rev.*, 98 F.3d 194, 198 (5th Cir. 1996) (holding that expert opinions of "legal conclusions" were properly excluded); *Jorden v. Dolphin Towing, L.L.C.*, No. Civ.A. 03–222, 2004 WL 602777, *1 (E.D. La. Mar. 23, 2004) (excluding testimony from maritime experts that offered legal conclusions).  The Court should do the same here.[4]

Moreover, Lang acknowledged several facts in the course of his deposition testimony that undermine his conclusions with regard to the ownership issue, including:

- Pursuant to the terms of the applicable Lease Exchange Agreement, MOEX Offshore did not obtain an ownership interest in the equipment that had already been installed at the Macondo Well;

- Unlike Anadarko, which entered into a Well Participation Agreement with BP that explicitly gave Anadarko an ownership interest in the equipment at the Macondo Well, MOEX Offshore did not enter into such a Well Participation Agreement; and

---

[4]  The fact that Lang conceded that he is not a lawyer, and asserted that he is offering a business interpretation rather than a legal opinion, does not change the fact that he is offering an opinion on an issue of law, *i.e.,* whether MOEX Offshore had an ownership interest in the equipment in the Macondo Well.

- Lang could not point to any provision of the Operating Agreement conveying an ownership interest in the equipment at the Macondo Well to MOEX Offshore.

*See* Ex. B at 64:3-71:1.  Thus, Lang's opinion on this matter is belied by the evidence upon which he relied and his own testimony, and should be excluded accordingly.

**D.      Lang's Opinion on the Impact of Liability Is Speculative and Should Be Excluded**

Finally, Lang's opinions that any liabilities assigned to MOEX Offshore will have limited impact on deepwater investment activity, but will stimulate innovation (Ex. A at 19-22), should be excluded because they are wholly speculative, and thus fail to meet the requisite standard for reliability.  While Lang sets forth hypothetical statistical calculations regarding risk and reward, he and his decision trees cannot reliably predict the future behavior of prospective deepwater development investors to any degree of scientific accuracy.  His conclusion that application of liability to non-operators "will enhance safety processes because energy companies will seek to avoid liability by lowering the chance of these … events" (*id.* at 21) is similarly grounded entirely in conjecture.  His opinions regarding the potential consequences of not extending liability to non-operators (*id.* at 22) venture even further into the realm of imprecision, acknowledging that his opinion merely states what is "possible"  based on a scenario that he "can foresee."  Such unsubstantiated theories are hardly the stuff of which legitimate expert testimony is made.

Courts refuse to permit expert testimony that is based on such speculation and conjecture.  *See Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (affirming district court's exclusion of expert testimony in part because it was based on "unsupported conjectures" and "speculative premises"); *Hammond v. Coleman Co.*, 209

8

F.3d 718, 718 (5th Cir. 2000) (affirming district court's exclusion of expert testimony as "too speculative to be admissible under Rule 702"); *Marks v. Pan Am. World Airways, Inc.*, 785 F.2d 539, 542 (5th Cir.1986) (affirming district court's grant of judgment notwithstanding the verdict when testimony from expert economist was "merely speculative"); *see also Baker v. Urban Outfitters, Inc.*, 254 F.Supp.2d 346, 353 (S.D.N.Y. 2003) (holding that expert testimony should be excluded altogether if it is speculative or conjectural).  This Court should do the same with respect to Lang's proffered prophesies regarding the impact of the Court's decision on future investment and innovation in the deepwater drilling industry.

Moreover, Lang's opinions regarding the impact on deepwater investment activity of imposing liability on non-operating parties is not proper rebuttal testimony because *it does not rebut* any testimony offered by the expert witnesses for Movants or Anadarko. As Lang himself has acknowledged, neither Gordon Cain nor Roger Vernon has offered opinions on this subject.  *See* Ex. B at 12:1-14:4, 15:10-25.  This portion of Lang's report and testimony, therefore, should be excluded on the basis that it is not a proper subject for rebuttal expert testimony.

**CONCLUSION**

For the foregoing reasons, MOEX Offshore and MOEX USA respectfully request

that the Court grant their motion to exclude the expert report and any testimony of the

James P. Lang.


Dated:  January 24, 2012

Respectfully submitted,

s/  John F. Pritchard_____

John F. Pritchard
Edward Flanders
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
Tel. (212) 858-1000
Fax (212) 858-1500
john.pritchard@pillsburylaw.com
edward.flanders@pillsburylaw.com

Christopher McNevin
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone (213) 488-7507
Fax (213) 629-1033
chrismcnevin@pillsburylaw.com

**ATTORNEYS FOR MOEX OFFSHORE 2007 LLC**


s/___*Jack McKay*_____
Jack McKay
jack.mckay@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037-1122
Telephone (202) 663-8439
Facsimile (202) 663-8007

**COUNSEL FOR MOEX USA CORPORATION**