UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG     "DEEPWATER HORIZON" in     the GULF OF MEXICO, on     APRIL 20, 2010 | :<br>:<br>:<br>:<br>:<br>:<br>: | MDL NO. 2179<br><br>SECTION:  J<br>JUDGE BARBIER<br>MAG. JUDGE SHUSHAN<br><br>JURY TRIAL DEMANDED |

. .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .

### MEMORANDUM IN SUPPORT OF CAMERON'S MOTION TO EXCLUDE ALL BOP DESIGN OPINIONS OFFERED BY PSC'S EXPERT, GREGG S. PERKIN

The PSC's proposed blowout preventer ("BOP") expert, Gregg S. Perkin, submitted an Expert Report (Ex. 1) stating that the Deepwater Horizon BOP and control system (collectively, "Horizon BOP") was defectively designed.  Mr. Perkin's opinions regarding the purported defects of the Horizon BOP do not meet the standards for admissibility of expert testimony.  The Court should follow three federal courts in Louisiana that have recently disqualified Mr. Perkin and exclude all of his BOP design opinions.

Before admitting Mr. Perkin's design defect opinions, the Court should first determine whether Mr. Perkin is qualified in the field of BOP design and then assess whether his opinions are supported by sound principles and a reliable methodology.  Fed. R. Evid. 702 ("Rule 702"); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  With no experience designing, operating, or testing BOPs, Mr. Perkin cannot qualify as an expert in the design of this highly sophisticated equipment.  Even if he could, the opinions he seeks to offer are based on no methodology or scientific principles whatsoever.  At best, they can be described as his observations and instinctive reactions to selective materials reviewed in this litigation; at worst, they are self-serving conclusions without basis in fact that, far from being rooted in scientific

principles, simply parrot the elements of the PSC's products liability claims against Cameron. Here are but a few examples:

- Mr. Perkin inexplicably points to a purported "reasonable alternative" shear ram design *that has the very same design feature that he claims renders the Horizon rams defective*. Mr. Perkin's report states that a "reasonable alternative" shear ram design is a ram with "cutting blades which extended across the 18 ¾″ opening," but provides no further details. When asked to elaborate at his deposition, he testified that the alternative design he proposes is the Cameron "DVS" shear rams, which (unbeknownst to him) does *not* extend across the 18 ¾″ opening. (*See* Report at 18; Perkin Depo. (Ex. 2) at 549–50.)

- Mr. Perkin has done nothing to support his "reasonable alternative" shear ram design opinion: he has no drawings, no models, and no engineering analysis to establish that such a design is feasible. He cannot even say whether the alternative shear ram design that he proposes would have effectively sheared the drill pipe and sealed the well in this incident. He was also unable to say whether his proposed alternative design would have other safety-critical drawbacks, which prevents his hypothetical design from being a legally cognizable alternative. (*See* Perkin Depo. at 556; *id*. at 223–24; *id*. at 209.)

- Mr. Perkin offers an opinion that the BOP control system on Horizon was defective because it did not adequately convey certain information, including pressure and temperature data, to the rig floor. Yet, Mr. Perkin apparently did not review the schematics of the control system in reaching that conclusion. Had he done so, Mr. Perkin would have realized that his opinion rests on yet another false assumption—the Horizon BOP control system *did* in fact convey pressure and temperature information to the rig. (*See* Report at 18; Perkin Depo. at 528–33.)

- Mr. Perkin claims that the cables that connect the BOP control system to the BOP stack (the "MUX cables") were defective because they were designed without "exterior protection" from heat or explosion; but he conceded that he has never reviewed the design of the Horizon MUX cables, nor has he reviewed the design of any MUX cables offered by any manufacturer. (*See* Report at 19; Perkin Depo. at 583.)

- Mr. Perkin opines that routing the MUX cables through a hazardous area on the Horizon rig was unreasonably dangerous, yet he does not specify a safer alternative routing for the cables and is unable to point to a single drilling rig operating anywhere in the world that routes their MUX cables in a manner different than the Horizon. (*See* Report at 19; Perkin Depo. at 576–80.)

The purpose of Rule 702 and the *Daubert* standards for the admissibility of expert testimony is to prevent a "hired gun" from offering an opinion in the courtroom that could not "withstand the same scrutiny that it would among his professional peers." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997). The examples cited above, to name just a few,

demonstrate that Mr. Perkin seeks to offer the very sort of speculative, unsubstantiated, outcome-driven opinions that *Daubert* aims to eliminate from our judicial system.

Three Louisiana federal judges have recently precluded Mr. Perkin from offering these types of unreliable opinions in their courtrooms. In *Peppers v. Aries Marine Corp.*, No. 3:04-cv-02356-RGJ-KLH (W.D. La. 2006) (James, J.), the Western District of Louisiana rejected Mr. Perkin's attempt to offer untested observations that were notably similar to the opinions he seeks to offer here. There, Mr. Perkin opined that a BOP was top heavy, defective, and unreasonably dangerous. The Court excluded his testimony, noting that Mr. Perkin had conducted no empirical analysis to support his opinions, and had offered no evidence of similar failures of the product at issue. The Court concluded that "Perkin's opinions are made in a conclusory manner and [are] not based upon scientific evidence or methodology." (*See* Ex. 3 at 5-6 of Ruling.)

In *Smith v. Ideal Indus.*, No. 2:08-cv-05169-KDE-KWR (E.D. La. 2009) (Engelhardt, J.), this Court rejected Mr. Perkin's opinion that the product at issue was defective, after the defendants argued that Mr. Perkin's report was "based on inaccurate facts," that Mr. Perkin had "failed to conduct a single test in connection with rendering his opinions," and that he had "failed to describe any methodology utilized in rendering his report." (*See* Ex. 4 at 2 of Memorandum and Minute Entry.) Similarly, in *Lindsay v. Diamond Offshore Mgmt. Co.*, No. 2:09-cv-06437-ILRL0KWR (E.D. La. 2010), Judge Lemelle excluded Mr. Perkin after finding that his so-called "opinions" amounted to nothing more than "common sense evaluation or, worse, legal theory and conclusions." (*See* Ex. 5 at 1 of Order.)

Mr. Perkin remains undeterred by the growing number of decisions repudiating his unreliable approach as an expert witness. As noted above and discussed further below, the BOP design opinions Mr. Perkin seeks to offer in this case are as speculative and conclusory as the

opinions that were previously rejected in the matters referenced above. This Court should likewise refuse to countenance Mr. Perkin's attempt to assign baseless liability by advancing unsupported allegations under the guise of expert opinion testimony.

### I.     Mr. Perkin Is Not Qualified To Testify About BOP Design

Whatever Mr. Perkin's expertise may be, he certainly is not an expert in BOP design. Although the PSC will point Mr. Perkin's (limited) familiarity with BOPs in general, it is beyond dispute that Mr. Perkin has never designed a BOP or any component thereof. (Perkin Depo. at 73–76.) Mr. Perkin's only experience working for a BOP designer or manufacturer was over forty years ago, when he spent one year after high school (prior to attending college) working for a BOP manufacturer. (*Id*. at 75.) While Mr. Perkin testified that he was "exposed" to BOP systems during that year, he did not design—nor was he responsible for evaluating the design of—any BOPs. (*Id*. at 74–75.) At no time since in his forty-plus year career has Mr. Perkin designed a BOP. Mr. Perkin has never conducted a single test with a blind shear ram of any type, much less the model on the Horizon BOP that he claims is defective. (*Id*. at 79–80.) Based on these undisputed facts, Mr. Perkin lacks the requisite "knowledge, skill, experience, training or education" required by Rule 702 to offer opinion testimony on BOP design.[1]

### II.    Mr. Perkin's BOP Design Opinions Should Be Excluded

Mr. Perkin's 262 page report includes only a few perfunctory sentences on BOP design that are clearly meant to track the PSC's product's liability claims against Cameron: 1) the BOP rams were defective; 2) the BOP control system was defective; and 3) the interface between the BOP and its control system (i.e., the MUX cables) was defective. But the report is devoid of any

---

[1] *See, e.g.*, *Sittig v. Louisville Ladder Grp. LLC*, 136 F. Supp. 2d 610, 616 (W.D. La. 2001) (refusing to qualify expert because he had no experience designing the product at issue); *see also Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (same).

4

meaningful analysis to support these so-called opinions, and, as discussed below, his deposition testimony clearly demonstrates that each of these opinions is based on nothing more than his own unsubstantiated say-so.

### A. Mr. Perkin's BOP Ram Design Opinions Are Inadmissible

Mr. Perkin's report provides no explanation as to how he arrived at his conclusion that "the failure of the BSR to have cutting blades that do not fully extend across the wellbore was a design flaw rendering the BOP not reasonably safe." (Report at 18.) His report references no tests, calculations, industry literature, or empirical data to support this opinion. The shear rams at issue have been on the market for decades—and are used on rigs around the world today—yet Mr. Perkin could not point to a single incident where the particular design feature that he criticizes led to a failure of the product.[2] (Perkin Depo. at 546–47.) Like his speculative and conclusory opinions previously rejected by Louisiana federal courts, Mr. Perkin's opinion that the Horizon shear ram was defective should be excluded.[3]

Mr. Perkin similarly used a speculative, outcome-driven, unscientific methodology in opining on a "reasonable alternative" design for the Cameron "SBR" model blind shear rams used by the Deepwater Horizon. Before an expert can label a product defective for not using an alternative design, the expert must have some evidentiary basis for concluding that an alternative design both is technologically feasible and "would in fact reduce the risks of the product."[4] Mr.

---

[2] *Krummel v. Bombardier Corp.*, 206 F.3d 548, 552 (5th Cir. 2000) (rejecting design defect claims where the expert failed to point to any "evidence regarding the frequency of the accidents" other than those at issue in the litigation).

[3] *See, e.g.*, Ex. 3 (*Peppers*) at 6 (rejecting Perkin's opinion that a BOP was unreasonably dangerous in part because "Perkin admits that he knows of no other time" the allegedly defective characteristic caused injury).

[4] *LaBelle ex rel. LaBelle v. Philip Morris, Inc.*, 243 F. Supp. 2d 508, 518 (D.S.C. 2001); *see also Milanowicz v. Raymond Corp.*, 148 F. Supp. 2d 525, 535 (D.N.J. 2001) (citing *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 992 (5th Cir. 1997)).

5

Perkin can point to no such evidence (because none exists) with respect to the alternative shear ram design that he proposes. He conducted no tests, performed no engineering analysis, and took no other actions to support his conclusion that his hypothetical "design" (one that has never been drawn or modeled, much less manufactured) would have reduced the risk he identified in this case.[5] (Perkin Depo. at 552.) In fact, Mr. Perkin declined to even *speculate* that his alternative design would have made a difference under the conditions he believes existed in this incident. (*Id.* at 556 ("I would refer to Cameron for that.").) The Fifth Circuit has long held that the "proper methodology for proposing alternative designs includes more than just conceptualizing possibilities." *Watkins*, 121 F.3d at 992. Having offered nothing more, Mr. Perkin's opinions fail to meet the *Daubert* standard and should be excluded.

In addition to employing an unsound methodology (where he employed one at all), Mr. Perkin's alternative design opinions are based on an insufficient review of the available data and erroneous factual assumptions. At his deposition, in an effort to defend the inadequate and unelaborated description of the "reasonable alternative" shear ram design provided in his report, Mr. Perkin testified that the reasonable alternative design was actually the Cameron "DVS" model shear rams. Mr. Perkin's belated attempt to rescue his unsupported opinion was doomed from the start, as he did not understand the design specifications of Cameron's DVS rams. He believed that the DVS blades extended across the entire wellbore. (Perkin Depo. at 549–50.)

---

[5] *Watkins*, 121 F.3d at 992 ("[The expert] did not even make any drawings or perform any calculations that would allow a trier of fact to infer that his theory that the [] design was defective and that alternative designs would have prevented the accident without sacrificing utility were supported by valid engineering principles."); *id.* at 991 ("Alternative designs by definition include elements of science, technology and methodology."); *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 326 (5th Cir. 2004) (rejecting reasonable alternative design where expert merely provided a "sketch" rather than a "precise design or prototype); *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1084-85 (8th Cir. 1999) ("[expert] has not attempted to construct or even draw the suggested device, much less test its utility ....").

But the undisputed evidence in the record demonstrates that Mr. Perkin was mistaken: DVS rams do not cover the entire wellbore.[6] In other words, the "reasonable alternative design" that Mr. Perkin points to has the very same characteristic that, in his opinion, renders the Horizon SBR model shear rams unreasonably dangerous.[7]

At the end of his deposition, after all parties adverse to the PSC had completed their examinations, Mr. Perkin tried yet again to rehabilitate his "reasonable alternative design" opinion by pointing to the Cameron "cDVS" ram model as a reasonable alternative. (Perkin Depo. at 764.)[8] Mr. Perkin had previously admitted, however, that he had never reviewed the design of the cDVS rams.[9] And he conceded that he performed no testing, engineering analysis, or calculations to determine whether cDVS rams would have been able to shear the pipe during the Macondo incident. (*Id*. at 226-27.) When asked whether he had "formed [his] own opinion as to whether, in fact, [cDVS rams] would be a better design," Mr. Perkin admitted that he had "not done an engineering analysis to determine if it was a better design." (*Id*. at 222.)[10] These frank concessions establish that Mr. Perkin's testimony that the cDVS rams are a reasonable alternative design was merely a last-ditch effort to salvage his otherwise discredited opinion.

---

[6] D. McWhorter Depo. (Cameron's 30(b)(6) Corporate Representative) (Ex. 6) at 144–45.

[7] This is not the first time that Mr. Perkin has offered opinions based on faulty assumptions about critical facts. (*See* Perkin Depo. at 405 (discussing flawed opinion in *Ideal Industries*).)

[8] Cameron developed the cDVS rams in recent years (after the Horizon BOP was built and sold to Transocean).

[9] Perkin Depo. at 211 ("I have not seen the design of the CDVS . . . ."); *id*. at 212 (same).

[10] *See, e.g.*, *Guy*, 394 F.3d at 327 (rejecting an attempt by an expert to rescue his failure to "definitively offer a specific feasible design alternative" in his original expert report by later pointing to a specific model on the market because it was clear that the expert "had not closely studied this design").

This uninformed, post-hoc conjecture is neither relevant nor reliable and must be excluded under Rule 702.[11]

In short, Mr. Perkin's opinions relating to ram design—like all of his BOP design opinions—are unsupported and unsupportable. Allowing these opinions to be offered at trial would violate the bedrock principle of reliability required under *Daubert*. Accordingly, the Court must exclude Mr. Perkin's opinions on ram design.[12]

   B.   Mr. Perkin's BOP Control System Design Opinions are Inadmissible

In his report, Mr. Perkin offers the opinion that the Horizon BOP control system was defective because it did not adequately convey certain information, including pressure and temperature data, to the rig floor. (Report at 18.) In rendering this opinion, Mr. Perkin evidently

---

[11] To establish that a product is defective due to the existence of an alternative design, "[t]he proposed alternative design must be 'safer overall'" than the product at issue. Mr. Perkin conceded at his deposition that he did not know whether the design of the DVS rams or cDVS rams meet this requirement because he had not inquired whether the designs resulted in reduced sealing capabilities, lower fatigue life, or a lower working pressure rating as compared to the Horizon blind shear rams. (Perkin Depo. at 209 (DVS); *id.* at 223–24 (cDVS).) Without considering these safety-critical design criteria, Mr. Perkin cannot claim that the DVS or cDVS design is a legally cognizable alternative.

[12] In an apparent recognition of the fact that he could not support his design opinions from an engineering standpoint, Mr. Perkin offered an opinion in his deposition—mentioned nowhere in his report—that Cameron failed to meet a duty to warn its customers of the limitations of the shear rams. (Perkin Depo. 169.) For the reasons set forth in Cameron's Motion in Limine to Exclude Warnings Opinions by Gregg Perkin, those opinions should be excluded. Mr. Perkin's warning opinions are inadmissible for the independent reason that they fail to meet the requirements set forth in *Daubert* and Rule 702. The plaintiffs cannot meet their burden of demonstrating that Mr. Perkin is qualified to render a "warning" opinion. (*See, e.g.*, Report at 3 (not retained as warning expert); Report at 5 (no warning qualifications disclosed); Report at Appendix L (no reference to warning qualifications in his resume).) Moreover, Mr. Perkin's opinions are not based on any methodology, let alone a reliable one. For example, Mr. Perkin did not even consider Cameron's Engineering Bulletin 538D, a Cameron communication to its customers concerning the capabilities and operation of the shearing blind ram. (*See generally, id* at. Appx. M (no reference to EB538D).) Finally, Mr. Perkin has not bothered to formulate specific warning language or disclosures about the BOP that should have been conveyed, so it remains impossible for the Court to assess the reliability of the "method" underlying Mr. Perkin's opinion that Cameron should have provided additional warnings.

failed to take the time to review the relevant schematics of the BOP control system. (Perkin Depo. at 528–33.) When confronted with them at his deposition, Mr. Perkin had to concede that the Horizon BOP control system *did* convey pressure and temperature information to the rig. (*Id.* at 533.) An opinion rooted in faulty data is utterly unreliable and should be excluded.

Despite this critical mistake, Mr. Perkin tried to stand by his design defect opinions regarding the BOP control system by pointing to the fact that the control system did not convey "flow" data and other information to the rig. (Perkin Depo. at 654–65.) But nowhere in Mr. Perkin's report does he explain how a BOP control system could be designed to convey "flow" information to the rig. At his deposition, Mr. Perkin acknowledged that he is not aware of *any* subsea BOP control system that incorporates this technology. (*Id.* at 567.) While he maintained that incorporating such technology into a BOP control system is "feasible," he conceded that he has not conducted any engineering or "risk/utility" analysis to assess this possibility. (*Id.* at 568.) Speculative opinions regarding feasible designs, which cannot be tested or subjected to "risk-utility balancing," are insufficient to make out a claim for design defect.[13] Accordingly, Mr. Perkins opinions regarding the design of Horizon's BOP control system should be excluded.

    C.    <u>Mr. Perkin's MUX Cable Opinions are Inadmissible</u>

Despite never having designed a drilling rig, Mr. Perkin offers an opinion that the design of the Deepwater Horizon was unreasonably dangerous because the MUX cables did not have "exterior protection" and were routed through a hazardous area (*i.e.*, the "moon pool."). In formulating this opinion, Mr. Perkin did not even take the elementary step of examining the design of the MUX cables in question. (Perkin Depo. at 583.) Worse yet, he could not identify a

---

[13] *See, e.g.*, Ex. 3 (*Peppers*) at 6 (excluding Mr. Perkin's reasonable alternative design because Mr. Perkin "performed no risk/benefit analysis to support his opinion); *Krummel v. Bombardier Corp.*, 206 F.3d 548, 552 (5th Cir. 2000) (holding that "risk utility balancing" is required in design defect cases).

single rig operating anywhere in the world that routed MUX cables in a manner different than the Horizon. (*Id*. at 580.) Nor could he specify a safer, alternative, routing for MUX cables. (*Id*. at 576-77.) He testified that such a determination could only be made as part of a "feasibility study," yet he conceded that he had not performed such an analysis. (*Id*. at 579.) Speculating about untried concepts is no substitute for sound methodology. *Watkins,* 121 F.3d at 992. As with every BOP design opinion he seeks to offer, Mr. Perkin's MUX cable opinions should be excluded for failing to meet the *Daubert* requirements of relevance and reliability.

**III.     Conclusion**

Cameron respectfully requests that the Court enter an Order excluding all of Mr. Perkin's BOP design opinions.[14]

---

[14] To conform to the Court's instructions on page limitations, this Memorandum attempts to group Mr. Perkin's design opinions into the three broad categories discussed above. To be clear, Cameron seeks to exclude *all* of Mr. Perkin's BOP design opinions, regardless of whether they might fall outside of these categories. Every other extraneous design opinion contained in his report would also fail to meet the reliability requirements of *Daubert*, as they are rooted in the same sort of speculative methodology discussed in this motion. (*See, e.g.*, Perkin Depo. at 597–600 (conceding that he has not conducted a "competent design analysis" or "formal risk assessment" to assess an alternative AMF sequence he proposes).)

Respectfully submitted,

*/s/ David J. Beck*

| | |
|---|---|
| David J. Beck, T.A. | Phillip A. Wittmann, 13625 |
|   dbeck@brsfirm.com |   pwittmann@stonepigman.com |
| Joe W. Redden, Jr. | Carmelite S. Bertaut, 3054 |
|   jredden@brsfirm.com |   cbertaut@stonepigman.com |
| David W. Jones | Keith B. Hall, 24444 |
|   djones@brsfirm.com |   khall@stonepigman.com |
| Geoffrey Gannaway | Jared Davidson, 32419 |
|   ggannaway@brsfirm.com |   jdavidson@stonepigman.com |
| BECK, REDDEN & SECREST, L.L.P. | STONE PIGMAN WALTHER |
| One Houston Center | WITTMANN L.L.C. |
| 1221 McKinney St., Suite 4500 | 456 Carondelet Street |
| Houston, TX 77010 | New Orleans, Louisiana  70130 |
| Phone: (713) 951-3700 | Phone: (504) 581-3200 |
| Fax: (713) 951-3720 | Fax: (504) 581-3361 |

*Attorneys for Cameron International Corporation*

## **CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of January, 2012.

                                          */s/ David J. Beck*
                                          David J. Beck