UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL NO. 2179 |
|     "DEEPWATER HORIZON" in | : | |
|     the GULF OF MEXICO, on | : | SECTION:  J |
|     APRIL 20, 2010 | : | JUDGE BARBIER |
| | : | MAG. JUDGE SHUSHAN |
| | : | |
| | : | JURY TRIAL DEMANDED |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## MEMORANDUM IN SUPPORT OF CAMERON'S MOTION TO EXCLUDE WITHDRAWN BOP SHEAR RAM DESIGN OPINIONS PREVIOUSLY OFFERED BY BP'S EXPERT, FORREST EARL SHANKS

BP retained Forrest Earl Shanks to offer certain opinions concerning the design of the Deepwater Horizon blowout preventer ("BOP").  In his Expert Report (Ex. 1) and Rebuttal Expert Report (Ex. 2) submitted to the Court on January 17, 2012,[1] Mr. Shanks does not opine that the design of the Cameron "SBR" model blind shear rams used in the Deepwater Horizon BOP was defective, nor does he offer any opinions regarding alternative blind shear ram designs. However, some parties may attempt to introduce opinions from prior versions of Mr. Shanks' reports – or deposition testimony concerning those prior versions – to suggest that the Cameron SBR rams were defectively designed.  Consistent with the Supreme Court's opinion in *Daubert* and its progeny, defective ram design and alternative ram design opinions from Mr. Shanks' prior reports should be excluded for two, independent reasons.  <u>First</u>, Mr. Shanks is not qualified to offer expert opinions on BOP ram designs.  <u>Second</u>, Mr. Shanks did not employ a reliable methodology in forming the ram design opinions in his prior reports.  Those withdrawn opinions are, therefore, unreliable and should not be considered by this Court.

---

[1] All citations to the Expert Report or the Rebuttal Expert Report refer to Mr. Shanks' reports submitted to the Court on January 17, 2012.

**I.     Applicable Law**

The admission of expert testimony is governed by Federal Rule of Evidence 702 ("Rule 702") and the principles outlined in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147–49 (1999) (extending application of *Daubert* factors to engineers and other non-scientific experts).  In admitting expert testimony, Rule 702 requires a trial court to make two preliminary determinations.  First, the proffered expert witness must be qualified as an expert by knowledge, skill, experience, training or education.  *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998).  Second, the proffered expert's opinion, inference or other testimony must be based on scientific, technical, or other specialized knowledge that will assist the trier of fact in understanding evidence or determining a fact in issue.  *Id*.  In *Daubert,* the Supreme Court explained that Rule 702 establishes two fundamental criteria: reliability and relevance.

Thus, a party seeking to admit expert testimony has the burden of demonstrating that the expert's findings and conclusions are based on sound principles and "intellectual rigor," so that a court may take comfort in relying on them.  *Moore,* 151 F.3d at 276.  "This requires some objective, independent validation of the expert's methodology."  *Id*.  Thus, "where [the expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'"  *Kumho Tire*, 526 U.S. at 149.

A party offering expert testimony must also establish that the proffered testimony is relevant.  To establish that an opinion is relevant, its proponent must not only show that it is "based on scientifically valid principles," but must also establish an adequate "fit" between the opinions offered and the facts of the case.  *Moore,* 151 F.3d at 276 (citing *Joiner v. General Elec. Co.*, 522 U.S. 136 (1997)).  In this regard, proffered testimony may so clearly fail to show

what it purports to show that it becomes irrelevant. *Pestel v. Vermeet Mfg. Co.*, 64 F.3d 382, 384 (8th Cir. 1995) (excluding as irrelevant opinion that attempted but wholly failed to establish existence of feasible alternative design).

## II.     Mr. Shanks Is Not Qualified to Testify about BOP Ram Design.

A trial court should not qualify a witness to give expert testimony regarding the design of a device if the witness has no "knowledge, skill, experience, training or education" regarding that device. Fed. R. Evid. 702; *see also Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998). Indeed, even if the purported expert has broad scientific or technical expertise, he "cannot testify as an expert in regard to a mechanism if he has not had ample opportunity to practically apply his field of expertise to the mechanism at issue." *Poland v. Beaird-Poulan*, 483 F. Supp. 1256, 1259 (W.D. La. 1980). Here, Mr. Shanks is not qualified to offer an expert opinion on BOP ram design.[2]

Although Mr. Shanks has experience with BOPs, he has virtually no experience with BOP ram design. From 1998 to 2003, he was employed by Transocean as its director of technology development. (*See* Expert Report, Appx. B, at 3.) During that time, his involvement with BOPs was admittedly, "probably very little." (Shanks Depo. (Vol. 1) (Ex. 3) at 43-44.) Thereafter, from 2004 to 2011, he worked as a consultant for BP through another company. (*Id*. at 45-47.) During that time, Mr. Shanks' résumé reflects work with BOPs. (*See generally* Expert Report, Appx. B at 3.) However, there is no indication of any experience or expertise in BOP ram design. Indeed, Mr. Shanks has never done a detail design of a BOP ram (Shanks

---

[2] Mr. Shanks is undoubtedly qualified to offer opinions in certain areas. However, he has never applied his field of expertise to BOP ram design. *Poland*, 483 F. Supp. at 1259.

Depo. (Vol. 1) at 230-31.), and he has never served as an expert in any other matter involving BOP ram design. (*Id*. at 20-21.)[3]

Based on these facts, Mr. Shanks lacks the requisite "knowledge, skill, experience, training or education" required by Rule 702 to offer opinion testimony on BOP ram design. Thus, any ram design or alternative ram design opinions from his prior reports should be excluded from consideration by this Court. *See, e.g.*, *Sittig v. Louisville Ladder Grp. LLC*, 136 F. Supp. 2d 610 (W.D. La. 2001) (refusing to qualify expert because he had no experience designing the product at issue); *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (same).

## III. Mr. Shanks Did Not Employ a Reliable Methodology in Forming His Alternative Design Opinions

Even if the Court were to consider Mr. Shanks as an expert in BOP ram design, the opinions on alternative BOP ram designs contained in his prior reports are inadmissible because they are based on an unreliable methodology. When offering an alternative design opinion, the expert must have some evidentiary basis for concluding that an alternative design actually exists and would work in the application. *Milanowicz v. The Raymond Corp*., 148 F.Supp.2d 525, 535 (D.N.J. 2001) (citing *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 992 (5th Cir. 1997)). It is not sufficient for an expert merely to describe some alternative. A reasonable alternative design "necessarily requires a showing that the alternative design would in fact reduce the risks of the product." *LaBelle ex rel. LaBelle v. Philip Morris, Inc.*, 243 F. Supp. 2d 508, 518 (D.S.C. 2001). Mr. Shanks pointed to no such evidence here.

---

[3] Mr. Shanks' prior work as an expert has been in the area of risers, not BOP ram design. (Shanks Depo. (Vol. 1) at 20-21.)

4

Mr. Shanks has opined that the Deepwater Horizon BOP "failed to seal the well because the pipe was off-center and not fully within the shearing zone of Cameron's blind shear ram configuration."[4]  (Rebuttal Expert Report at 3.)  Previously, Mr. Shanks also claimed that "[a]t the time that the DWH was built, there were feasible alternative designs for the blind shear rams that would have avoided the design defect of being unable to shear the pipe and seal the well when the drill pipe is located off-center."  (Shanks Depo. (Vol. 1) at 224-25.)  According to Mr. Shanks, such designs should have had wider shearing surfaces that extend the width of the wellbore.

These opinions were based on no methodology or scientific principles.  The only alternative ram designs Mr. Shanks identified were the Cameron "DVS" rams and the Cameron "DS" rams.  DVS rams, however, do *not* extend across the 18 ¾" wellbore, and DS rams have never been available for use in a large bore 18 ¾" BOP like that used on the Macondo well.  (*Id*. at 210, 229.)  Moreover, when asked to identify *any* blind shear ram design that was available in 2001 or in 2010 that would have made a difference in the Macondo incident, Mr. Shanks was unable to do so, and he conceded that he had "not formed an opinion on that."  (*Id*. at 222-24.)

After making that concession, Mr. Shanks suggested that, although his prior opinion was specifically limited to "feasible alternative designs *for the blind shear rams*," he believed that an alternative *BOP body* could have been designed which would have permitted blind shear rams with wider shearing blades.  However, when pressed, Mr. Shanks acknowledged that he had no

---

[4] Mr. Shanks also opined that "[m]odeling performed by DNV … indicates that the geometries of [the SBR] cutting surfaces will result in an inability to shear drill pipe and seal the wellbore at the pressures stated by Cameron." (Expert Report at 30.)  As set forth in Cameron's Memorandum in Support of its Response to Other Parties' Motions Related to MBI/JIT Proceedings (Docket #4643), any opinions or conclusions drawn by DNV in connection with its examination of the BOP are inadmissible under 46 U.S.C. § 6308.  Parties should not be able to circumvent that statute through the use of experts.

drawings for any alternative body design[5], and he did no physical or computer modeling. (Shanks Depo. (Vol. 2) (Ex. 4) at 148.) When asked what the width, height, or curvature of the cavity would be in this hypothetical BOP body, Mr. Shanks could not provide any dimensions. (*Id*. at 148-53.) He testified that he had not designed the cavity for this hypothetical BOP body, and he had not analyzed the engineering issues that would go into the design. (*Id.*)

The Fifth Circuit has long held that the "proper methodology for proposing alternative designs includes more than just conceptualizing possibilities." *Watkins,* 121 F.3d at 992. Having offered nothing more than that, Mr. Shanks' prior opinions concerning any alleged design defect or alternative designs fail to meet the *Daubert* standard and should be excluded.

## IV. Conclusion

Mr. Shanks properly withdrew his design opinions. Mr. Shanks is not qualified to offer an expert opinion on BOP ram designs. Further, the opinions stated in his prior report concerning purported design defects or possible alternative designs are unreliable. For the reasons set forth above, the Court should exclude such opinions in advance of trial.

---

[5] Mr. Shanks testified that he "did some sketches but just for [his] amusement," but he "didn't use them." (Shanks Depo. (Vol. 2) at 148.)

6

Respectfully submitted,

| | |
|---|---|
| */s/ David J. Beck* _____ | |
| David J. Beck, T.A. | Phillip A. Wittmann, 13625 |
|  *dbeck@brsfirm.com* | *pwittmann@stonepigman.com* |
| Joe W. Redden, Jr. | Carmelite S. Bertaut, 3054 |
|  *jredden@brsfirm.com* |  *cbertaut@stonepigman.com* |
| David W. Jones | Keith B. Hall, 24444 |
|  *djones@brsfirm.com* |  *khall@stonepigman.com* |
| Geoffrey Gannaway | Jared Davidson, 32419 |
|  *ggannaway@brsfirm.com* |  *jdavidson@stonepigman.com* |
| BECK, REDDEN & SECREST, L.L.P. | STONE PIGMAN WALTHER |
| One Houston Center | WITTMANN L.L.C. |
| 1221 McKinney St., Suite 4500 | 456 Carondelet Street |
| Houston, TX 77010 | New Orleans, Louisiana  70130 |
| Phone: (713) 951-3700 | Phone: (504) 581-3200 |
| Fax: (713) 951-3720 | Fax: (504) 581-3361 |

*Attorneys for Cameron International Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of January, 2012.

>  */s/ David J. Beck* _____
>  David J. Beck