UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" in | : | |
| the GULF OF MEXICO, on | : | SECTION:  J |
| APRIL 20, 2010 | : | JUDGE BARBIER |
| | : | MAG. JUDGE SHUSHAN |
| | : | |
| | : | JURY TRIAL DEMANDED |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### MEMORANDUM IN SUPPORT OF CAMERON'S MOTION TO EXCLUDE WITHDRAWN BOP SHEAR RAM DESIGN OPINIONS PREVIOUSLY OFFERED BY HALLIBURTON'S EXPERT, GLEN STEVICK

Halliburton retained Dr. Glen Stevick to offer certain opinions concerning the Deepwater Horizon blowout preventer ("BOP").  In his Expert Report (Ex. 1) and Rebuttal Expert Report (Ex. 2) submitted to the Court on January 17, 2012,[1] Dr. Stevick does not opine that the design of the Cameron "SBR" model blind shear rams used in the Deepwater Horizon BOP was defective. However, some parties may attempt to introduce opinions from prior versions of Dr. Stevick's reports to suggest that the Cameron SBR rams were defectively designed.  Consistent with the Supreme Court's opinion in *Daubert* and its progeny, defective design opinions expressed in Dr. Stevick's prior reports should be excluded.

**I.      Dr. Stevick's Opinion Has Always Been About the Configuration of the BOP Stack**

The core of Dr. Stevick's BOP opinion has always been that the Deepwater Horizon BOP should have been *configured* in a manner that was suitable for the Macondo well, and operated so as to maximize the BOP's potential to perform in a well control situation.  Configuring a blowout preventer stack is a complex endeavor that includes specifying the specific number of individual BOPs (both ram and annular preventers), the type of BOPs (variable bore rams and/or

---

[1] Unless otherwise noted, all citations to the Expert Report or the Rebuttal Expert Report refer to Dr. Stevick's reports submitted to the Court on January 17, 2012.

shear rams and/or annular preventers), the precise model of the rams chosen, and the various emergency activation systems that will be incorporated into the blowout preventer stack. As Dr. Stevick testified during his deposition, the operator and the drilling contractor are responsible for the specific configuration of the BOP, not the equipment manufacturer (*i.e.*, Cameron). (*See, e.g.*, Stevick Depo. (Ex. 3) at 332-33.) This is because the configuration must be selected on a "well-by-well, rig-by-rig" basis, depending on the expected conditions and drilling program for a particular well. (*Id.*) And the operators and drilling contractors are "better suited" to make these decisions because they "have more information about the conditions under which the BOP stack will be used." (*Id.*)

Dr. Stevick's opinions concerning the configuration of the Deepwater Horizon BOP are discussed in his Expert Report and Rebuttal Expert Report. However, prior versions of his reports and accompanying appendices contain various statements (scattered throughout the 100 plus pages) that, in isolation, may be construed as criticizing the design of the Cameron SBR blind shear rams. Nevertheless, during his deposition, Dr. Stevick clarified that he is not of the opinion – or at least that he has not conducted the requisite analysis to support a proper opinion – that Cameron SBR rams were defectively designed. Accordingly, Dr. Stevick issued his Expert Report and Rebuttal Expert Report which are consistent with his deposition testimony and the opinions that he is prepared to support and defend at trial.

## II.   Dr. Stevick's Ram Design Opinions Are Unsupported

Any statements contained in Dr. Stevick's prior reports that might be construed as criticizing the design of Cameron SBR rams should be excluded because they are based on no methodology, let alone a reliable one. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (noting that *Daubert* requires "some objective, independent validation of the expert's methodology"). First, although Cameron SBR rams have been in the market for decades, Dr.

2

Stevick acknowledged during his deposition that he has never conducted a failure-rate analysis for that design. (Stevick Depo. at 141.) *See Krummel v. Bombardier Corp.*, 206 F.3d 548, 552 (5th Cir. 2000) (rejecting design defect claims where the expert failed to point to any "evidence regarding the frequency of the accidents" other than those at issue in the litigation). Moreover, although portions of Dr. Stevick's prior reports may suggest that SBR rams should have been designed with wider blades, he acknowledged during his deposition that he did not perform any analysis or modeling to determine whether a better a seal would have been achieved by using a shear ram with wider blades.[2] (*Id.* at 169-70.)

When offering an alternative design opinion, the expert must have some evidentiary basis for concluding that an alternative design actually exists and would work in the application. *Milanowicz v. The Raymond Corp.*, 148 F.Supp.2d 525, 535 (D.N.J. 2001) (citing *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 992 (5th Cir. 1997)). It is not sufficient for an expert merely to describe some alternative. A reasonable alternative design "necessarily requires a showing that the alternative design would in fact reduce the risks of the product." *LaBelle ex rel. LaBelle v. Philip Morris, Inc.*, 243 F. Supp. 2d 508, 518 (D.S.C. 2001); *see also Van Buskirk v. West Bend Co.*, 100 F. Supp. 2d 281, 287 (E.D. Pa. 1999) ("[I]f the risk of injury is not eliminated by the

---

[2] *See, e.g.*, *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1084-85 (8th Cir. 1999) (finding expert's failure to test utility of proposed alternative design was permissible reason for district court to exclude testimony); *Milanowicz v. Raymond Corp.,* 148 F. Supp. 2d 525, 535 (D. N.J. 2001) ("absence of testing is a consistent factor in court decisions excluding expert testimony"); *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 449 (8th Cir. 2008) (noting that plaintiffs suing because a machine tipped over "must prove that the [alternative design] would not have tipped over under conditions similar to those present at the tip-over site"); *Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 359 (2d Cir. 2004) ("[T]o provide relevant testimony, [the expert] must ... establish that his hypothetical design would have resulted in greater safety in the . . . accident at issue."); *LaBelle ex rel. LaBelle v. Philip Morris, Inc.*, 243 F. Supp. 2d 508, 518 (D. S.C. 2001) ("[P]roving that a safer alternative design existed necessarily requires a showing that the alternative design would in fact reduce the risks of the product. In other words, Plaintiff must be able to show that the alternative design would have prevented or significantly reduced the risk of the injury allegedly caused by the product.").

proposed safety device, then the proposed alternative design is not, in fact, a safer substitute product."). Here, there is no evidence of such an alternative BOP ram design.

During his deposition, Dr. Stevick was asked about Cameron's "cDVS" model blind shear rams as a possible alternative, but he acknowledged that those particular rams had "fatigue life" issues, had a lower working pressure rating, and were under a "safety alert" as of April 20, 2010. (Stevick Depo. at 364-68.) Dr. Stevick went so far as to admit that Cameron SBR rams might be *superior* to the cDVS rams, so long as the BOP was properly configured and operated. (*Id*. at 368-69.)[3] When confronted with the fact that a number of other experts do not believe that a feasible alternative design exists that would be able to shear buckled drill pipe, Dr. Stevick responded that "in my opinion, you should have a redundant system anyway." (*Id*. at 361.) Finally, and most importantly, Dr. Stevick could not say with any degree of certainty that any reasonable alternative shear ram design would have sheared the drill pipe and sealed the well in the Macondo incident. (*Id*. at 359.) This is because "you still have the problem of potentially damaging packers anytime you shear high-pressure pipe." (*Id*.) As Dr. Stevick explained, "it's very possible that on April 20th or April 22nd, when the blind shear rams closed, that they were washed out due to severe erosion from high flow rates." (*Id*. at 399.)[4]

---

[3] *See also* Stevick Depo. at 368 (stating that "you don't necessarily need a ram that has to go full width"). Again, Dr. Stevick focused on the overall BOP stack configuration, not the individual ram design. (Stevick Depo. at 357.) He testified that "the issue is not just whether the blades go all the way across, it's the configuration and how you operate it," and that it is "part of proper operation of the BOP to take measures to ensure proper alignment of the drill pipe." (*Id*. at 358.)

[4] *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 992 (5th Cir. 1997) ("[The expert] did not even make any drawings or perform any calculations that would allow a trier of fact to infer that his theory that the [] design was defective and that alternative designs would have prevented the accident without sacrificing utility were supported by valid engineering principles."); *LaBelle*, 243 F. Supp. 2d at 518 (offering an opinion that a reasonable alternative design existed "necessarily requires a showing that the alternative design would in fact reduce the risks of the product").

4

The Fifth Circuit has long held that the "proper methodology for proposing alternative designs includes more than just conceptualizing possibilities." *Watkins,* 121 F.3d at 992. Having failed to identify any reasonable alternative shear ram design would have sheared the drill pipe and sealed the well, Dr. Stevick's prior opinions concerning any alleged design defect or alternative designs fail to meet the *Daubert* standard and should be excluded.

**III.     Conclusion**

Dr. Stevick properly withdrew his design opinions. Statements in his prior reports concerning purported design defects or possible alternative designs are unreliable. For the reasons set forth above, the Court should exclude such opinions in advance of trial.


Respectfully submitted,


*/s/ David J. Beck*
| | |
|---|---|
| David J. Beck, T.A. | Phillip A. Wittmann, 13625 |
|   *dbeck@brsfirm.com* | *pwittmann@stonepigman.com* |
| Joe W. Redden, Jr. | Carmelite S. Bertaut, 3054 |
|   *jredden@brsfirm.com* |   *cbertaut@stonepigman.com* |
| David W. Jones | Keith B. Hall, 24444 |
|   *djones@brsfirm.com* |   *khall@stonepigman.com* |
| Geoffrey Gannaway | Jared Davidson, 32419 |
|   *ggannaway@brsfirm.com* |   *jdavidson@stonepigman.com* |
| BECK, REDDEN & SECREST, L.L.P. | STONE PIGMAN WALTHER |
| One Houston Center | WITTMANN L.L.C. |
| 1221 McKinney St., Suite 4500 | 456 Carondelet Street |
| Houston, TX 77010 | New Orleans, Louisiana  70130 |
| Phone: (713) 951-3700 | Phone: (504) 581-3200 |
| Fax: (713) 951-3720 | Fax: (504) 581-3361 |

*Attorneys for Cameron International Corporation*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of January, 2012.

                                                 */s/ David J. Beck*  
                                                 David J. Beck