UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER MAGISTRATE JUDGE |
| ……………………………………………….. | : | SHUSHAN |

**BP'S MEMORANDUM IN SUPPORT OF ITS MOTION
TO LIMIT THE TESTIMONY OF GLEN BENGE**

**INTRODUCTION**

This motion seeks to exclude unreliable "expert" testimony proffered by Glen Benge, the United States cement expert, concerning the purported cementing competence of the BP Macondo well team. Specifically, Benge opined that the BP Macondo well team was "well versed" in all aspects of foam cementing, including foam cement slurry design, foam cement slurry testing, foam cement job design, and foam cement job execution. However, Benge admitted that he based this opinion almost entirely upon his own subjective review of isolated e-mail communications rather than upon any "sort of scientific methodology."

> Q. And you would agree with me that [the analysis you conducted is] not the type of analysis that could be peer reviewed?
>
> A. No, I would – I would agree with you; that it is not.
>
> Q. *And that's because it doesn't adopt some sort of scientific methodology to reach its conclusion.*
>
> A. *That's correct*. That's – this is my opinion.

Benge Dep. at 258-60 (emphasis added). Because Benge's opinion concerning the purported cementing competence of the BP Macondo well team lacks any basis in sound scientific principles or analyses, such opinion amounts to no more than unsupported speculation and

subjective belief. Accordingly, Benge's testimony concerning the purported cementing knowledge of the BP Macondo wells team should be excluded under *Daubert*.

## BACKGROUND

### I. Benge's Opinions Concerning The Purported Cementing Competence Of The BP Macondo Well Team.

In his Expert Report, Benge opines that "[t]he BP wells team was well versed in cementing." Expert Report at 1-2. According to Benge, "[t]hese BP personnel were the final decision makers and were empowered to accept or reject the advice of both the BP internal cementing expert and Halliburton." *Id*. Benge goes on to conclude that the individuals comprising the BP Macondo well team[1] "chose to accept risks when designing the cement job based on their awareness that remedial cementing work could be done at a later date," including "using a leftover cement blend that was not appropriate for foamed cementing." *Id*. at 2. Benge formed these opinions based merely on his review of four e-mail strings reflecting communications by members of the BP Macondo well team, deposition testimony that BP's "internal cementing expert" Erick Cunningham had confidence in the BP Macondo well team,[2] and a solitary sign-in sheet indicating that members of the BP Macondo well team once attended a cementing seminar given by Dr. Robert Beirute. *See* Benge Dep. at 242-250.

### II. Benge's Experience Assessing Cementing Competence.

More than twenty years ago, while employed by Dowell Schlumberger, Benge had responsibility for reviewing aspects of the cementing competence of laboratory personnel working under his supervision. *See* Benge Dep. at 52-53. Specifically, Benge reviewed the

---

[1] In deposition, Benge testified that the individuals he refers to as the "BP Macondo Well team" include BP's Brian Morel, Mark Hafle, Brett Cocales, and John Guide. Benge Dep. at 235.

[2] However, this testimony must be discounted because Benge understood the team to encompass Jesse Gagliano, whom Cunningham described as an experienced and competent Halliburton engineer, as part of the Macondo well team. Benge Dep. at 249-250.

competence of laboratory personnel working under his supervision in regards to cement slurry design – meaning the selection of additives and additive concentrations for a particular slurry – and cement testing. *Id.* Benge did not, however, review personnel for competence in cement job design – meaning the engineering of the cementing program – or cement job execution, two areas in which Benge purports to assess the competence of the BP Macondo well team. *Id.* at 53 (stating that personnel reporting to Benge were not responsible for designing or executing cement jobs in the field).

In order to assess an individual's competence in cement slurry design, Benge would consider various criteria. Specifically, Benge would examine actual cement slurries designed by the individuals in question to assess "how they put the different portfolio of additives together to meet the requirements presented them." *Id.* at 53-54. Benge would also consider any training courses they had taken in cement slurry design, and, to a lesser extent, any membership or participation they might have in industry groups. *Id.* at 55-56.

In order to assess an individual's competence in cement slurry testing, Benge would conduct an even more "comprehensive" evaluation of the employee's skill set. *Id.* at 56. This would include evaluating:

- the ability of the individuals in question to "run the various pieces of lab equipment correctly," meaning "as per API requirements at the time," *id*. at 56;

- their ability to maintain the equipment and its surroundings properly, *id*. at 56;

- their familiarity with API specifications and recommended practices, *id*. at 56-57;

- their knowledge of the appropriate tests to be performed on a particular slurry, *id*. at 57; and

- their ability to interpret the results of tests, *id*. at 57.

Furthermore, in order to assess all of the foregoing, Benge would personally observe the individuals in question in the course of their actual work activities:

> Q. Mr. Benge, so to summarize some of the things, not all of them, that you would evaluate your employees on to test their cement slurry testing competence would be to actually see them run – run lab tests, correct?
>
> A. That's correct.
>
> Q. To watch them interpret the tests?
>
> A. Yes, that's correct.
>
> Q. All right. To determine what tests should be run?
>
> A. Yes.
>
> Q. And maintain the equipment?
>
> A. Yes, sir.
>
> Q. And also to the extent applicable, their actual demonstration skills of a lab – of a lab test?
>
> A. Correct.

*Id.* at 57.

Notably, Benge has never worked with Brian Morel, Mark Hafle, Brett Cocales, John Guide, or anyone else at BP. *Id.* at 250. Benge has never administered any cement competency tests to any of these individuals. *Id.* at 250-51. Benge has never evaluated any cement slurries designed by these individuals. *Id.* at 251:6-8. Benge did not consider what training courses, if any, these individuals might have taken in cement slurry design aside from the one in-house seminar given by Dr. Beirute. *Id.* at 251. Finally, Benge never evaluated the ability of any of these individuals to run cement testing equipment correctly, to maintain cement testing equipment properly, to determine which cement slurry tests should be performed on particular slurries, or to properly interpret the results of foam stability tests. *Id.* at 251-55.

Instead, Benge assessed the cementing competence of the BP Macondo well team

4

members primarily by reviewing a handful of e-mail communications. During his career, Benge had never previously evaluated someone's cementing competency based on a review of their correspondence. *Id.* at 257-58 (testifying that this litigation is the "sole" occasion in which Benge has formed an opinion about an individual's cementing competency "based only on an e-mail trail"). Accordingly, Benge admits that he is ***not an expert*** in evaluating an individual's cementing competence based on correspondence:

> Q. Let me ask my question again. Would you agree with me that you're not an expert in reviewing correspondence to determine a person's competency in cementing?
>
> A. I would agree with that, yes, sir.
>
> Q. Okay.

*Id.* at 260.

## ARGUMENT

**I. The United States Bears The Burden To Establish The Admissibility Of Benge's Proffered Testimony.**

Under *Daubert*, district courts act as a "gatekeepers" to prevent unreliable or irrelevant expert testimony from being presented to the jury. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). In the Fifth Circuit, expert testimony may only be admitted into evidence if it survives a trilogy of restrictions. *United States v. Cooks*, 589 F.3d 173, 1790 (5th Cir. 2009). First, the expert must be qualified to testify regarding the matters he or she intends to address. A qualified expert possesses "specialized knowledge," the basis of which can be "skill, experience, training, or education" or "practical experience." *Cooks*, 589 F.3d at 180. Second, the expert's testimony must be reliable; it "must be 'ground[ed] in the methods and procedures of science' and 'more than subjective belief or unsupported speculation.'" *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009). Finally, the expert's testimony must "fit" the

5

case at hand by providing relevant information that will assist the court in making its decision. *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352-355 (5th Cir. 2007). As the proponent of the expert testimony at issue, the United States bears the burden to establish the admissibility of Benge's proffered testimony regarding the supposed cementing expertise of the BP Macondo well Team. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (holding that the proponent of the expert testimony must establish the admissibility of the expert's opinion by a preponderance of the evidence).

## II. Benge's Proffered Testimony Concerning the Cementing Knowledge of the BP Macondo Well Team Should Be Excluded.

Benge's proffered testimony concerning the cementing knowledge of the BP Macondo well team should be excluded for at least two reasons: (1) Benge is unqualified to offer such testimony; and (2) the testimony is, in any event, the product of an unreliable methodology and speculative.

*First*, Benge lacks expertise to assess the competency of the Macondo well team. He admits that assessing two of the four competencies, relating to cement job design and execution, is outside his scope of experience. *See* Benge Dep. at 53, 60.

As to the other two competencies, cement slurry design and testing, Benge did not apply the type of detailed evaluation methodology that he had used in prior work at ExxonMobil and elsewhere. Specifically, Benge never worked with anyone from the BP Macondo well team; never administered any cement competency tests; never evaluated their cement slurry design work product; never considered what training courses they took (other than one in-house course); never evaluated the ability of any of these individuals to run cement testing equipment correctly; and never evaluated their competence in the laboratory, including whether they knew what tests should be performed on the cement slurries or how to interpret test results. *Id.* at 250-55.

Benge's evaluation in this case was not based on an application of any defensible methodology. Instead, Benge only reviewed correspondence to conclude that the Macondo well team was "well versed" in four areas of cementing (only two of which Benge has experience evaluating). Benge admitted that he has no expertise in evaluating individuals based upon the type of correspondence review that conducted here:

> Q.  Would you agree with me that you're not an expert in reviewing correspondence to determine a person's competency in cementing?
>
> A.  I would agree with that, yes, sir.

Benge Dep. at 259-260.  Although Benge has previously reviewed employees for their competence in cement slurry design and cement testing, Benge ***did not follow his typical review practices*** in evaluating the BP Macondo well team for his expert report.

*Second*, evaluating the cementing competency of a well team is not typically – let alone reliably – done based on a review of isolated e-mail exchanges. For example, in *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1354 (Fed. Cir. 2007), the Federal Circuit affirmed the district court's exclusion of plaintiff's doctor-expert who opined that defendants had infringed on plaintiff's patents based on a review of defendants' promotional info and other materials in which defendants described their business operations. The doctor-expert had interpreted these materials and statements about processes for preserving umbilical cord blood samples to mean that defendants must have tested the samples and cryopreserved them for storage (i.e., infringed plaintiff's patents). *Id.* at 1354.  The Federal Circuit affirmed the district court's decision to strike the "expert" testimony, agreeing that it consisted "almost entirely of her quoting from the promotional information and other materials in which the defendants described their business operations, and drawing inferences from those materials." *Id*; *see also Tassin v. Sears, Roebuck & Co.*, 946 F. Supp. 1241, 1252-53 (M.D. La. 1996) (excluding mechanical-

7

engineering expert testimony that, based on a review of 5,000 pages of minutes, correspondence, and memos of the Power Tool Institute, power tool manufacturers refused to incorporate safety devices on certain tools out of fear that doing so would open manufacturers to lawsuits).

Reaching conclusions about an engineer's cementing competency based on a review of isolated e-mail communications is not an accepted scientific approach for assessing an engineer's cementing competence. Benge concedes as much:

> Q. And at any time in your professional work, have you ever evaluated the cementing competency of anyone based solely on a review of correspondence?
>
> A. On the cementing competency of anyone based solely on correspondence?
>
> Q. Correct.
>
> A. In my career, no, I have not.
>
> \*\*\*
>
> Q. Have you ever submitted a peer review paper, or any paper, on how to evaluate someone's cementing competency based on a review of their correspondence?
>
> A. No, I have not.
>
> Q. Have you ever seen a peer-reviewed paper or any paper that teaches you how to do this?
>
> A. No, I have not.
>
> \*\*\*
>
> Q. And you would agree with me that that's not the type of analysis that could be peer reviewed?
>
> A. No, I would – I would agree with you; that is not.
>
> Q. And that's because it doesn't adopt some sort of scientific methodology to reach its conclusion?
>
> A. That's correct. That's – this is my opinion."

Benge Dep. at 258-260 (emphasis added).

In short, "reviewing correspondence . . . to reach conclusions" is not an accepted or reliable scientific method for opining about the cementing competence of the BP Macondo well team. *Tassin*, 946 F. Supp. at 1252. And, the interpretation of their correspondence is not a technical issue requiring expert testimony. *Id.* Rather, Benge's opinions – which are based primarily on reviewing a few isolated e-mail strings – amount to no more than subjective speculation and an attempt to substitute his judgment for that of the fact-finder. Accordingly, Benge's opinions concerning the cementing competency of the BP Macondo well team are unreliable and should be excluded under *Daubert*.

## CONCLUSION

BP respectfully requests that the Court enter an order striking the portions of Glen Benge's expert report expressing his opinion that the BP Macondo well team was "well versed" in cementing. Moreover, BP respectfully requests that the Court preclude Benge from testifying at trial concerning the purported cementing competence of the BP Macondo well team.

Dated: January 24, 2012                              Respectfully submitted,

/s / Don K. Haycraft

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.

(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration & Production Inc. & BP America Production Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of January, 2012.

                                        /s/ Don K. Haycraft