**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER<br>MAGISTRATE JUDGE |
| …………………………………………….... | : | SHUSHAN |

**BP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE THE
OPINIONS AND TESTIMONY OF DR. PATRICK HUDSON**

Dr. Hudson's opinions should be precluded for the following reasons:  ***First***, Dr. Hudson's reports fail to employ any methodology, are based on selective facts and unreliable (if any) sources, and are based on speculation, inferences, and assumptions. ***Second***, Dr. Hudson's opinion that BP's management failures caused the Macondo blowout is unreliable because he fails to consider any other potential causes or the blowout itself. ***Third***, Dr. Hudson's interpretation of the BP/Halliburton contract is irrelevant because he lacks the qualifications to render it and he fails to consider the entire contract.

## <u>BACKGROUND</u>

Dr. Hudson's reports focus on BP's corporate culture, risk-management practices, decisions made during drilling of the well, and the causes of what he refers to as "the Macondo blowout." Dr. Hudson concludes that BP's safety culture is flawed, BP's management practices caused the blowout by creating conditions which allowed it to occur, and that BP had the ultimate decision-making authority and responsibility for drilling the Macondo well. Dr. Hudson opines about BP's culture over a span of twenty years and makes wide-ranging assertions on a breadth of topics, including BP leadership, training programs, safety-management systems, previous incidents, root cause analysis, and drilling operations.

## ARGUMENT

**I.     Dr. Hudson's Opinions Are Unreliable and Should Be Excluded.**

Under *Daubert*, expert testimony must be reliable.  *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010).  Dr. Hudson's opinions are unreliable for four primary reasons:  (1) he employs no reliable methodology, (2) he bases his opinions on a highly selective consideration of facts, (3) he bases his opinions on unverified newspaper articles and books, and (4) he fails to provide any record support for critical assertions.

**A.     Dr. Hudson Fails to Employ a Reliable Methodology.**

To be admissible, an expert must employ a reliable methodology in rendering opinions. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592-93 (1993).  The methodology must also be reliably applied to the facts at issue.  *Id.*; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 354-55 (5th Cir. 2007).  In other words, the expert's analysis must be supported by "good grounds." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994).

In his report, Dr. Hudson opines that "BP's Corporate Culture and Management Practices Induced Reckless Decision-Making" and that "BP Management Failures Created the Holes That Caused the Failures That Resulted in the Blowout."  Report at 17, 37.  Dr. Hudson makes these and other assertions without a methodology.  Instead, Dr. Hudson adopts the opinions of journalists and uses them to draw broad, unsupported conclusions.  Such "cut and pasted" opinions do not meet the requirements under *Daubert*.

In his rebuttal report, Dr. Hudson introduces, for the first time, the Oil and Gas Producers (OGP) framework.  Rebuttal Report at 5-6.  Despite his claim that the OGP framework is the preferred method for assessing safety culture, Dr. Hudson did not even mention it in his initial report because "[his] report was much more general.  It wasn't in particular a – a – and solely restricted to being a cultural analysis of any of the companies involved in the DEEPWATER

HORIZON blowout."  Hudson Dep. at 69.  Despite this "general" approach, Dr. Hudson spends over 100 pages in his reports criticizing BP's safety culture.  Dr. Hudson's conclusions are broad assertions without methodology – the very opposite of support with "good grounds."  *See Paoli R.R.*, 35 F.3d at 745.

Additionally, Dr. Hudson's opinions are unreliable because he does not use the intellectual rigor characteristic of an expert in his field.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  For example, Dr. Hudson usually employs questionnaires and surveys to assess a company's safety culture.  Hudson Dep. at 75, 276.  He did not do so here, despite the fact that questionnaires and surveys were readily available in the record.  *Id.* at 280. When asked why he did not review materials in the record, Dr. Hudson explained, "I've done an analysis with respect to the framework that I presented and with respect to what I could see in the time I had available for studying what – what BP had been doing."  *Id.* at 73.  Dr. Hudson thinks this analysis was "probably good enough" and that it gave him a "general picture," but concedes that this picture may need "fine-tuning."  *Id.* at 74.  An opinion that admittedly needs fine-tuning should not be offered in a court of law.

### B.    Dr. Hudson Selectively Considers the Facts in Rendering His Opinions.

An expert's failure to consider all of the facts, or selective consideration of the facts, renders the expert's testimony unreliable.  *Bell v. City of El Paso*, No. EP-08-CA-331-FM, 2009 WL 6371618, at *4 (W.D. Tex. Dec. 18, 2009); *Lee Green v. La. Dep't. of Pub. Safety & Corr.*, No. 2:06 CV 1018, 2010 WL 1628769, at *5-6 (W.D. La. Apr. 20, 2010); *U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, No. EP-07-CV-247-PRM, 2010 WL 1645970,  at *4-5 (W.D. Tex. Mar. 24, 2010).  Here, the process Dr. Hudson used to compile his "sources" demonstrates a biased and selective consideration of the facts.

### 1.    Dr. Hudson Only Did a Perfunctory Review of the Record.

Despite the size and breadth of the evidentiary record in this case, Dr. Hudson cites only a fraction of the 30,000 documents from his "consideration materials" to support his opinions. Hudson Dep. at 20-21, 24-30.  Dr. Hudson admits that he did not review or read all 30,000 documents.  *Id.* at 21.  Ultimately, he cites only twenty-three bates-numbered documents in his report, twenty-two of which were produced by BP, and one by Halliburton.  Dr. Hudson does not cite a ***single*** document produced by any other party.  *Id.* at 24-30.  Dr. Hudson's rebuttal report tells a similar story:  He cites only fifteen additional documents produced by BP, and none produced by other parties.  *Id.* at 29, 31-32.  In total, for both of his reports, Dr. Hudson cites to only thirty-seven different BP produced documents, only one document produced by Halliburton, and "maybe" to one Transocean document.  *Id.* at 26-34.  Similarly, of the forty-eight depositions Dr. Hudson cites, forty-four were of BP witnesses.  *Id.* at 34-35; Report; Rebuttal Report.

### 2.    Dr. Hudson Relies on Non-Peer Reviewed Popular Press Materials.

Rather than base his opinions on the record evidence, Dr. Hudson chooses to rely upon popular-press newspaper articles and books.  Hudson Dep. at 175.  In his report, he cites thirty-nine different times to various books about BP, while citing only thirty-one times to actual BP documents.  *Id.* at 181.  He also cites frequently to newspaper articles.  *Id.* at 181-85.

Putting aside the sheer number of his citations to popular press, Dr. Hudson did nothing to ensure that these books and articles were reliable.  *Id.* at 181-86.  While Dr. Hudson admits that checking the reliability of sources is important, he did "nothing in particular" to check the accuracy of many of his sources.  *Id.* at 23-24, 174-75, 186.  Dr. Hudson did not look into the authors' backgrounds and did not determine whether they had the expertise to generate reliable materials.  *Id.* at 178-180, 184-86.  One example is Tom Bergin, who is Dr. Hudson's sole source

for many assertions.  *See* Report at n.6, n.7, n.9, n.10, n.12, nn. 14-20, n.22, n.26, nn.33-36, n.39, n.41, n.49, n.53, n.64, nn.101-02; Rebuttal Report at n.14, n.16, n.34.   Bergin is a former oil trader turned financial journalist who has no background in organizational behavior.   Hudson Dep. at 176-78.

Dr. Hudson's failure to confirm his sources' expertise and accuracy is only made worse in light of the significance of their assertions and how Dr. Hudson's conclusions, in  particular those about BP's culture and management practices, are built off of them.   Report at 17-29. Given Dr. Hudson's failure to evaluate these sources, as he admits should be done, he is merely repeating others' unverified statements hoping to disguise them as expert opinion.  *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) (rejecting expert opinion which was "fundamentally unsupported" where "the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.").

### C.      Dr. Hudson's Opinions Suffer From Other Indicia of Unreliability.

 An expert's use of only sparse evidence to support his or her opinions is insufficient to produce reliable testimony.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Wells*, 601 F.3d at 379-80; *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996).   Opinions based on inference amount to nothing more than an expert's *ipse dixit* and are inadmissible.  *Gen. Elec. Co.*, 522 U.S. at 146.

Many of Dr. Hudson's claims about BP's culture are entirely unsupported.   In other instances, as became clear at his deposition, Dr. Hudson's conclusions are based on nothing more than an assumption or inference.   Hudson Dep. at 234 ("Q: Is that an inference you're making? A: That is an inference I'm making."); *see also id.* at 147-50, 153, 154-56, 196-97, 209, 211, 234-45, 286-89, 306-07, 323-24.   In other instances, Dr. Hudson admitted that an assertion in his report was inaccurate.  *Id* at 295-96.   These opinions are not reliable expert testimony.

*Burleson v. Tex. Dep't. of Criminal Justice*, 393 F.3d 577, 587 (5th Cir. 2004) (upholding exclusion of testimony where expert's opinion was based on speculation, guesswork, and conjecture).

At a minimum, Dr. Hudson should be barred at trial from making the following unsupported and inaccurate statements:

| Assertion in Reports | Admission at Deposition |
|---|---|
| ". . . Kevin Lacy, was apparently fired for providing inconvenient truths." Rebuttal Report at 16; no citation. Hudson Dep. at 286-89. | This is "one of [his] inferences" not based on first-hand personal knowledge, work on this case, or any documents. Hudson Dep. at 286-90. |
| "The incentives for BP's Well Site Leaders are determined primarily by the reduction of NPT," citing to documents that do not mention non-productive time. Rebuttal Report at 21. | "Q. And where in particular with respect to every dollar and ops performance does it refer to non-productive time? A. I made that as an inference from general reading of the factors and the importance of non-productive time…. Q. So this is another inference that you've made in your report, correct? A. That's an inference." Hudson Dep. at 209. |
| "Safety performance accounted for no more than 25% of the Well Site Leaders' evaluations and that in turn was based solely on personal safety metrics." Rebuttal Report at 21 (emphasis omitted). | "Q. You don't cite the daily operations reports to support this statement in the report, do you? A. But that's how I drew the inference." Hudson Dep. at 211. |
| "On the Macondo Well, BP personnel used risk assessment spreadsheets instead of the required (and superior) BPRAT during the limited number of times that they actually conducted risk assessments. . . . BPRAT is a more comprehensive, structured and in-depth risk assessment tool that ensures that risks are properly documented and considered." Rebuttal Report at 41. | "A. I expected the BP RAT tool to be more up-to-date and contain more information. Q. Is that an inference you're making? A. That is an inference I'm making." Hudson Dep. at 234. |
| "In general, BP's personal injury record is similar to that of the other oil majors. BP's problem comes with process safety accidents…." Rebuttal Report at 13. | Dr. Hudson has not analyzed the number of fires, or the number or volume of oil leaks (more than seeing "some data"). Hudson Dep. at 147-48. |

| | |
|---|---|
| "BP set up a number of courses that were, unfortunately, restricted to executives, senior management, and the 'brightest and the best.' This resulted in a lack of understanding and ability among those personnel actually implementing the policies and procedures, such as the Well Site Leaders."   Rebuttal Report at 18. | "Q. So you were assuming because there was a bad outcome that [BP's well site leaders] had poor training? A. Yes." Hudson Dep. at 196. |
| BP did not have programs for its "bright-eyed young" employees. Rebuttal Report at n.14. | "Q. All right.  This appears to be, Dr. Hudson, wouldn't you agree, a training program that BP had for its bright young engineering and science graduates? A. Probably." Hudson Dep. at 201. |

Dr. Hudson's conclusions are devoid of any scientific or methodological analysis, and are incorrect or based purely on his assumptions, inferences or speculation, and should be excluded.

## II.     Dr. Hudson's Causation Opinions Are Unreliable Because He Fails to Consider All Potential Causes of the Blowout.

When an expert renders a causation opinion, failure to eliminate other potential causes renders the expert's opinion unreliable.  *Thurman v. Mo. Gas Energy*, 107 F. Supp. 2d 1046, 1050 (W.D. Mo. 2000).  "A necessary ingredient of such theorizing [rendering opinions about causation] . . . is the exclusion of alternative causes."  *Michaels v. Avitech, Inc.*, 202 F.3d 746, 753 (5th Cir. 2000); *see also Lee Green*, 2010 WL 1628769, at *5 ("the exclusion of alternative causes is necessary for a reliable causation opinion").   An expert must "take serious account of other potential causes" before he or she is allowed to render a causation opinion.  *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999); *see also Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 248 (5th Cir. 2002); *Johnson v. Samsung Elecs. Am., Inc.*, Nos. 10-1146, 10-1549, 2011 WL 4344588, at *4 (E.D. La. Sept. 14, 2011).

Despite numerous reports about the incident concluding that multiple factors and parties contributed to the blowout, Dr. Hudson chose to investigate only BP.  Thus, for example, Dr. Hudson does not analyze the roles of the Transocean drill crew, Sperry Sun, or Halliburton.

Hudson Dep. at 101, 347-49.  Dr. Hudson does not even evaluate the **cultural** aspects of any company other than BP, despite his purported expertise in this area and his emphasis on safety culture.  *Id.* at 65-66.  Thus, Dr. Hudson cannot say, for example, whether cultural issues within Transocean contributed to the Macondo blowout.  *Id.* at 383.

In addition, Dr. Hudson stops short of looking at all of the events leading up to the blowout even though he purports to opine on "the root cause of the Macondo blowout."  Instead, he stops his analysis "[o]nce the kick had started moving up the – up the well."  *Id.* at 333.  By not looking at the critical period between the kick and the blowout, Dr. Hudson disregards all of the mitigation efforts which could have prevented the explosion.  *Id.* at 335. Additionally, Dr. Hudson does not consider the following:

- The decision to divert to the mud-gas separator rather than overboard because it was "outside the scope of [the] report."  *Id.* at 344.

- Whether "the rig crew had recognized the kick earlier, they could have shut in the well before gas entered the riser," because Dr. Hudson believed that "[a]s a specific decision, that's probably outside of my area of competence."  *Id.* at 346.

- Whether "there was a Halliburton/Sperry-Sun mudlogger on duty who also had responsibility for monitoring the well for kick detection purposes on the night of the 20th" because Dr. Hudson claimed it was "not part of my--the scope of my report" to consider.  *Id.*

By arbitrarily ending his analysis at the time of the kick and stopping before the blowout, Dr. Hudson ignores several key causes and contributing factors of the blowout.  Dr. Hudson's failure to exclude alternate causes fails to meet the standard set in *Michaels*, and renders his causation opinion too unreliable to be admitted into evidence.

### III.  Dr. Hudson's Opinion on the BP-Halliburton Contract Is Beyond His Expertise and Unreliable.

Under *Daubert*, expert testimony must not only be reliable, it must also be relevant.  *Wells*, 601 F.3d at 378.  For an opinion to be relevant, the expert submitting the opinion must be

qualified to render it. *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004). "District courts must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (citation omitted).

Citing to just one provision of the BP-Halliburton contract, Dr. Hudson opines that "BP's contract with Halliburton clearly establishes BP's authority to make the final decisions" at the Macondo well. Report at 29-37. Dr. Hudson is unqualified to offer this opinion, as he freely admitted when he acknowledged at his deposition that he is "not an expert in contract law," "not a lawyer," and "not an expert in contracts." Hudson Dep. at 460-65, 494. Dr. Hudson further conceded that he does not know who had full and final responsibility under the contract, stating "[a]s far as the contract law interpretation is concerned, yes, I don't know. I'm not an expert in contract law." *Id.* at 465.

In addition to being outside the scope of his expertise, Dr. Hudson's opinion regarding the BP-Halliburton contract is unreliable because he admitted he did not consider the entire contract. *Id.* at 466, 470. This led Dr. Hudson to miss key provisions on the issue of control between BP and Halliburton including Section 4.3, which states, "CONTRACTOR . . . shall take full responsibility for the adequacies, stability, health, safety, and environmental protection of all of its operations and methods necessary for the performance of the work and shall keep strictly to the provisions of Section 7, Health, Safety, Security and the Environment." *Id.* at 464-65. Such selective consideration of facts makes his opinion unreliable. *Bell*, 2009 WL 6371618, at *4.

## CONCLUSION

Dr. Hudson fails to employ any methodology (let alone a reliable one) in reaching his conclusions. Dr. Hudson refuses to analyze all of the potential contributing causes of the blowout, his blinders keeping him from seeing anything but BP. In doing so, he relied on

unverified sources or provided no support at all.  He opines on the meaning of a contract even though he is not qualified to do so.  Put simply, Dr. Hudson's reports fall well short of the requirements for expert testimony.  BP respectfully requests that the Court exclude Dr. Hudson's opinions and testimony.

Dated: January 24, 2012                    Respectfully submitted,

                                           /s / Don K. Haycraft

                                           Don K. Haycraft (Bar #14361)
                                           R. Keith Jarrett (Bar #16984)
                                           LISKOW & LEWIS
                                           One Shell Square
                                           701 Poydras Street, Suite 5000
                                           New Orleans, Louisiana 70139-5099
                                           Telephone: (504) 581-7979
                                           Facsimile: (504) 556-4108

                                           and

                                           Richard C. Godfrey, P.C.
                                           (richard.godfrey@kirkland.com)
                                           J. Andrew Langan, P.C.
                                           (andrew.langan@kirkland.com)
                                           Timothy A. Duffy, P.C.
                                           (tim.duffy@kirkland.com)
                                           Kirkland & Ellis LLP
                                           300 North LaSalle Street
                                           Chicago, IL 60654
                                           Telephone: (312) 862-2000
                                           Facsimile: (312) 862-2200

                                           and

                                           Robert C. "Mike" Brock
                                           (mbrock@cov.com)
                                           Covington & Burling LLP
                                           1201 Pennsylvania Avenue, NW
                                           Washington, DC 20004-2401
                                           Telephone: (202) 662-5985

*Attorneys for the BP Exploration & Production Inc. & BP America Production Company*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of January, 2012.

/s/  Don K. Haycraft