UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER MAGISTRATE JUDGE |
| ………………………………………….. | : | SHUSHAN |

### BP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE THE REPORTS AND TESTIMONY OF DR. ALAN R. HUFFMAN

### INTRODUCTION

Dr. Alan R. Huffman, the United States's expert on pore pressure issues, should not be permitted to testify as an expert in this case for two separate reasons. *First*, Dr. Huffman impermissibly reached conclusions of law and opined that BP violated numerous MMS regulations. *Second*, Dr. Huffman attempted to provide an opinion about what BP's scientists and engineers "believed" regarding the validity of pressure integrity tests based on his review of e-mail correspondence. His opinion about BP's employees' "beliefs" lacks evidentiary support and is unreliable. Additionally, for the first time in his rebuttal report, Dr. Huffman impermissibly proffered an opinion regarding the M57B zone. Dr. Huffman's opinions should be excluded and not allowed into evidence at trial.

### BACKGROUND

Dr. Huffman opined that BP violated various regulations related to the "safe drilling margin" while it drilled the MC252#1 Well. Dr. Huffman stated that those regulatory violations included BP falsely reporting pressure integrity tests ("PITs")/fracture gradient data to the MMS and failing to disclose sufficient information to the MMS during drilling operations. Opening Report at 5. Significantly, Dr. Huffman did not opine that the alleged margin violations were

causally linked to the blowout, explosion, or loss of control of the Macondo well. *See id.* at 40-42. However, in his rebuttal report, Dr. Huffman continued to assert that BP violated the MMS regulations related to four different intervals in the well. *See*, *e.g.*, Rebuttal Report at 7, 9, 14. Dr. Huffman further stated that his opinion was based on his belief that BP did not have confidence in the validity of the PITs for the 13 5/8" and 9 7/8" casing shoes. Opening Report at 32-34; Rebuttal Report at 14. Dr. Huffman's opinion that BP's engineers and scientists did not have "confidence" was based on a review of e-mail correspondence discussing those casing shoe tests. Opening Report at 32-33.

Finally, Dr. Huffman also asserted at his deposition that the M57B interval may be a hydrocarbon-bearing zone. This assertion – first made long after the filing of Dr. Huffman's opening report – is not a proper rebuttal opinion and is untimely. Further, Dr. Huffman's assertion regarding the M57B is not disclosed in his opening report and there is no analysis or methodologies disclosed or discussed in his rebuttal report.

## ARGUMENT

Dr. Huffman improperly opined that BP violated the law when it drilled the MC252#1 Well and that BP employees' did not have "confidence" in various test results. Neither opinion is permissible under the applicable standards, and Dr. Huffman should therefore not be allowed to testify at trial. Further, Dr. Huffman should not be allowed to testify about unsubstantiated opinions disclosed long after his opening report relating to the M57B interval.

**I.   Dr. Huffman's Reports And Testimony Should Be Excluded Because The Majority Of His Opinions Constitute Conclusions of Law.**

The Fifth Circuit has clearly held that "an expert may never render conclusions of law." *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009). It has also concluded that an interpretation of a regulation or statute is a pure issue of law. *See Coca-Cola Co. v. Atchison,*

*Topeka & Santa Fe Ry. Co.*, 608 F.2d 213, 222 (5th Cir. 1979).  Further, numerous district courts in the Fifth Circuit have held that "experts cannot opine as to what law governs an issue or what the applicable law means because such opinions impermissibly intrude upon the role of the court."  *BNY Mellon, N.A. v. Affordable Holdings, Inc.*, No. 1:09CV226–SA–JAD, 2011 WL 2746301, at * 1 (N.D. Miss. July 12, 2011) (collecting cases from other circuits); *see also Mola Dev. Corp. v. United States*, 516 F.3d 1370, 1379 n.6 (Fed. Cir. 2008) ("Because the proper interpretation of . . . regulations is an issue of law, expert testimony relating to this question, such as the affidavit of a former government official, 'should not be received, much less considered.'") (citation omitted).

A number of courts in the Fifth Circuit have excluded expert reports and testimony where the expert opined that a party had violated certain regulations.  For example, *in In re Midland Enterprises, Inc.*, No. Civ.A. 00-3750, 2002 WL 31780156 (E.D. La. Dec. 11, 2002), this Court held that a marine safety expert's testimony that the defendants "violated OSHA regulations and that such violations constitute unseaworthiness and negligence are impermissible legal conclusions. It is well-established in the Fifth Circuit that Federal Rule of Evidence 704 does not permit an expert to render conclusions of law.  Expert testimony that offers a legal opinion is inadmissible." *Id.* at *3 (citations omitted).

Similarly, in *Flynn v. Tex-Air Helicopters, Inc.*, No. 03-177, 2006 WL 5153149 (E.D. La. Feb. 22, 2006), the Court excluded the testimony of experts who purported to interpret the regulations of the Federal Aviation Administration.  *Id.* at *1.  The Court stated as follows: "The opinions of Douglas Marwill and James Bradley involve their conflicting interpretations of FAA regulations/notices. As such, the opinions appear to offer legal conclusions about express

governmental requirements. While appreciating the offer, this trier of fact discerns no need for assistance in such matters." *Id*.

Dr. Huffman's reports and testimony are replete with conclusions of law, and, as a result, he should not be permitted to provide expert testimony in this case. At each step in this process, Dr. Huffman opined that BP violated the law. As set forth in his opening report, Dr. Huffman's primary opinion is that BP violated various MMS regulations and failed to maintain a safe drilling margin. In his opening report, Dr. Huffman interpreted the meaning of 30 C.F.R. §§ 250.401, 409, 413, 427 and 428. Opening Report at 4, 6-7, 9, 13, 41-42. He specifically concluded that BP violated all of these regulations. *See id.* at 41-42.

In his rebuttal report, Dr. Huffman again provided an interpretation of several regulations including 30 C.F.R. §§ 250.427 and 428. *See* Rebuttal Report at 1-6. He then opined throughout his rebuttal report that BP violated these regulations. For example, he stated that "BP repeatedly violated drilling-margin laws in connection with ['the Macondo well's open hole interval from the 22" shoe to the 18" shoe'] interval." *Id*. at 7. Further, Dr. Huffman opined that BP's actions were contrary to the letter and spirit of those same regulations. *Id.* at 15-16.

During his deposition, Dr. Huffman specifically testified that it was his opinion that "BP violated the law." Huffman Dep. at 22. Dr. Huffman acknowledged that his conclusions were that BP "failed to maintain a safe drilling margin while drilling the Macondo well and that BP violated 250 – several of the CFRs" and that "BP falsely reported and therefore violated several [of] the CFRs." Huffman Dep. at 21-22. He admitted that these conclusions were based on his "understanding and interpretation" of the MMS regulations. *Id.* at 22.

It is bell clear that the primary thrust of Dr. Huffman's reports and testimony is that BP violated various MMS regulations through its actions with respect to the drilling of the Macondo

4

well and certain MMS filings.  Given that courts in the Fifth Circuit have uniformly excluded expert reports and testimony purporting to reach conclusions of law, Dr. Huffman's reports should be stricken and he should not be permitted to provide expert testimony in this case.

## II.     Dr. Huffman's Opinions About BP's "Beliefs" Regarding The PIT Tests Is Not Reliable.

"[T]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable.  This requires some objective, independent validation of the expert's methodology." *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).  For example, in *Guillory v. Domtar Industries, Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996), the Fifth Circuit excluded the testimony of an expert as unreliable because it was "not based upon the facts in the record but on altered facts and speculation designed to bolster [the] position [of one of the defendants]."  Similarly, in *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007), the Fifth Circuit excluded an expert's affidavit, holding that his opinions depended "on the furtive inclusion of a number of supposed facts not in the record . . . . [and his] testimony therefore has neither the sufficient facts nor the reliable methodology that would warrant its inclusion as evidence."  *See also Manton v. Strain*, No. 09-0339, 2010 WL 4364480, at *2 (E.D. La. Oct. 21, 2010) (excluding the testimony of an expert because his report contained "several supposed facts not supported by evidence in the record" and he had speculated with respect to some of his opinions); *Certain Underwriters at Lloyd's v. McDermott Int'l, Inc.*, No. 01-912-C/W, 01-1187, 2002 WL 14379, at *7 (E.D. La. Jan. 4, 2002).

Further, in *Tassin v. Sears, Roebuck & Co.*, 946 F. Supp. 1241, 1252-53 (M.D. La. 1996), the United States District Court for the Middle District of Louisiana excluded the testimony of Stephen Killingsworth, a professional mechanical engineer, regarding an alleged conspiracy in

5

the power tool industry, determining that opinions made on the basis of a review of correspondence were not reliable.  "The defendants challenge[d] the admission of Mr. Killingsworth's 'conspiracy' opinion on the basis of Rules 702, 703, and 403 of the Federal Rules of Evidence." *Id.* at 1252.  The court held that

> [R]eviewing correspondence and minutes from meetings to reach conclusions is not a mechanical engineering issue. Documents of this type are not technical and do not require expert engineering testimony to make them comprehensible to a jury.  For this reason, Mr. Killingsworth's testimony about these documents is not necessary to assist the trier of fact to understand a fact in issue.  Nor was it ever demonstrated that summaries of meetings and correspondence were the types of documents typically relied on by an engineer to determine the adequacy of a particular design of a particular product.  For these reasons, Mr. Killingsworth may not testify about the conclusions he reached based on his review of these documents.

*Id.* at 1252-53.

Dr. Huffman's opinion that BP lacked confidence in certain tests does not meet the admissibility standard.  It is unreliable because it is based primarily on a review of e-mail correspondence and lacks evidentiary support.  In his opening report, Dr. Huffman cited to two e-mails in concluding that BP lacked confidence in the validity of the 13 5/8" casing shoe test. Opening Report at 32.  Dr. Huffman cited to internal BP emails related to the 9 7/8" casing shoe test and reached the same conclusion regarding BP's belief about the validity of that test.  *Id.* at 36.  In his rebuttal report, Dr. Huffman also cited to the same internal emails.  Rebuttal Report at 10, 13, 14.  When questioned at his deposition about the basis for his opinion that BP "lacked confidence" in the validity of these tests, Dr. Huffman referred to the same internal e-mails.  *See* Huffman Dep. at 115, 453, 500-04.

Dr. Huffman's conclusion that BP did not have confidence in the two PIT tests not only rests primarily on a review of e-mail communications, but also it lacks evidentiary support.  In fact, the e-mails considered by Dr. Huffman include no explicit statements that BP, or any of its

employees, lacked confidence in the PIT tests. *Id.* at 444-46. Indeed, Martin Albertin, a BP geophysicist, specifically testified that he believed that the PIT tests in question *were* valid. *Id.* at 489. When confronted with Albertin's contradictory testimony regarding the validity of the tests, Dr. Huffman brushed it aside in favor of his own preconceived view: "I have duly noted Mr. Albertin's recent statements indicating that he grew to believe that these PITs were valid (Bourgoyne Report at 47), but I have seen no contemporaneous accounts that would confirm that self-serving testimony, let alone establish the tests' reliability." Rebuttal Report at 14. Likewise, Pinky Vinson (another BP pore pressure specialist) testified that after various discussions, BP employees believed the tests were valid. Huffman Dep. at 502-03. Dr. Huffman disregarded that evidence while relying on his interpretation of a handful of BP emails. *Id.* at 502. Additionally, Dr. Huffman did not address the physical evidence showing that the tests did measure the strength of ten feet of new formation and were valid; rather, he based the opinion that BP lacked confidence on e-mail communications. *Id.* at 398-402, 406-07.

As demonstrated in *Tassin*, "reviewing correspondence . . . to reach conclusions is not a [drilling or geophysical] issue." 946 F. Supp. at 1252. E-mails "are not technical and do not require expert engineering testimony to make them comprehensible to a jury." *Id.* At his deposition, Dr. Huffman conceded that it would be "speculation on [his] part to say what Marty Albertin believed or didn't believe about these tests" and that the same would be "true for all of the BP individuals." *Id.* at 454. Therefore, Dr. Huffman should not be allowed to testify regarding whether BP "lacked confidence" in the various tests.

### III. Dr. Huffman's Assertion Regarding The M57B Should Be Excluded From Evidence.

Dr. Huffman asserted for the first time at his deposition that the M57B could be a hydrocarbon bearing zone. Huffman Dep. at 593. This assertion should be excluded from

7

evidence for several reasons. First, this assertion was not made to rebut any opinion offered by another expert and is inappropriate. As with Halliburton's efforts to introduce Roland Chemali as a rebuttal witness on this issue, Dr. Huffman's opinion should be excluded as untimely and inappropriate. *See* Docket Nos. 4629, 4738. Second, as evidenced by statements from the DOJ attorney at Dr. Huffman's deposition, whether the M57B is a hydrocarbon bearing zone falls outside the scope of Dr. Huffman's expert opinions in this case. Huffman Dep. at 607-08. Finally, Dr. Huffman did not provide any citation to industry practice, standard, or policy supporting his assertion that the M57B zone is a hydrocarbon-bearing zone. In his report, there is no (1) analysis of any of the technical data, such as porosity, permeability, or saturation levels; (2) discussion of any definition of a hydrocarbon-bearing zone; or (3) disclosure of any engineering model or procedure that Dr. Huffman employed in concluding that the M57B is potentially a hydrocarbon-bearing zone. Thus, Dr. Huffman should not be permitted to provide any opinion related to the M57B zone.

## CONCLUSION

BP respectfully requests that the Court enter an order prohibiting Dr. Alan R. Huffman from testifying in this case.

Dated: January 24, 2012                                            Respectfully submitted,

/s / Don K. Haycraft

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

8

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration & Production Inc. & BP America Production Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of January, 2012.

/s/ Don K. Haycraft