UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179  SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER MAGISTRATE JUDGE |
| …………………………………………………... | : | SHUSHAN |

**BP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO
LIMIT THE TESTIMONY OF DR. SAMUEL LEWIS.**

## INTRODUCTION

BP moves to preclude Dr. Samuel Lewis from offering (1) opinions that the BP Macondo well team was sophisticated in cementing because this opinion is based only on a review of correspondence, and (2) "opinions" that are actually recitations of fact or the opinions of other experts on topics where Dr. Lewis has no expertise.

## BACKGROUND

**I.  Dr. Lewis Is Not Qualified To Opine That The BP Macondo Well Team Was Sophisticated In Cementing Based On A Review Of Correspondence.**

Dr. Lewis opined that "BP was a sophisticated operator with respect to cement, and knowingly directed Halliburton with respect to the design of the Macondo cement formulation." Rebuttal Report at 58.  He opined that the BP Macondo well team was "well-versed in foamed cementing issues" – specifically, foam cement slurry testing, foam cement job design, foam cement job execution, and evaluation of a foam cement job execution.  Rebuttal Report at 60; Lewis Dep. at 70-71.

### A. Dr. Lewis Did Not Follow His Usual Process For Evaluating Cement Competency In Reaching His Opinion.

Dr. Lewis opined that the BP Macondo Well team was "well-versed" in four categories: foam slurry testing, foam cement job design, foam cement job execution, and foam cement job evaluation. Lewis Dep. at 70-71. But Dr. Lewis admitted at his deposition that he has no experience in evaluating competence in the latter three categories:

> Q. Okay. But you agree with me that you've never evaluated someone on their ability to design a foam cement job?
>
> A. That's correct.
>
> Q. And you agree with me that you've never evaluated someone on their competence in executing a foam cement job?
>
> A. That's correct.
>
> Q. Or evaluating the results of a foam cement job?
>
> A. That's correct.

Lewis Dep. at 71. In fact, Dr. Lewis himself has no experience with foam cement job design, execution, or evaluation. *Id.* at 353, 362. Nothing in Dr. Lewis's background or experience qualifies him to opine on the competency of the BP Macondo well team with respect to foam cement job design, execution, or evaluation.

Dr. Lewis has previously evaluated Halliburton employees for their competency in foam cement testing and limited aspects of foam slurry design. *Id.* at 64-64. In conducting an assessment, Dr. Lewis would review the tests developed by the employee and determine whether the employee understood test results. *Id.* at 68. Dr. Lewis would also evaluate participation in training courses, and ability to relate lab testing to field issues. *Id.* at 69-70. Contrary to his usual review process, Dr. Lewis did not evaluate the BP Macondo well team on their ability to

2

select the correct foam slurry tests, perform the tests, interpret the tests, training, or communication with field personnel. *Id.* at 71-73.

### B. Dr. Lewis Is Not Qualified To Evaluate the Foam Cement Competency Based Solely On A Review Of Correspondence.

Dr. Lewis's opinion that the BP Macondo well team was "well-versed" in foam cementing is instead based on e-mail correspondence. Lewis Dep. at 62 ("Q. [W]hat else are you relying on for your conclusion that these four folks are well-versed in foam cementing issues? A. It's primarily the E-mail correspondence. Yeah, it's primarily the E-mail correspondence."). Dr. Lewis's report cited to four e-mails to support his conclusion that all of the BP Macondo well team members were "well versed" in foam slurry design, foam cement job design, foam cement job execution, and foam cement job evaluation. *See* Rebuttal Report at 59-61.

Dr. Lewis admitted that he has no experience in evaluating cementing competence from a review of correspondence. Lewis Dep. at 73. In his work at Halliburton, he has ***never*** evaluated an employee's foam cementing based on a review of correspondence alone. In fact, Dr. Lewis admitted that he is not an expert in conducting such an assessment. *Id.* at 73-74.

### II. Dr. Lewis's "Opinions" As To Cement Operations Contain No Actual Opinions – They Are Either Recitation Of Facts Or The Opinions Of Other Experts.

Aside from cement laboratory opinions, Dr. Lewis's reports also contained opinions relating to cement operations. But Dr. Lewis admitted that he does not have any experience in cementing operations or cement job design, which includes "the engineering of the cement job, through the execution of the cement job and completion of the cement job." Lewis Dep. at 250, 353. While at Halliburton, Dr. Lewis was not responsible for any personnel in cementing operations. *Id.* at 64, 71. In fact, Dr. Lewis expressly disavowed rendering any opinions in his report with respect to the design of the cement job. *Id.* at 241. Instead, Dr. Lewis claimed that

3

the discussions of cementing operations in his report were not opinions, but rather "facts" provided to him by others (including counsel) which he was merely relaying. *Id.* at 241-44.

For example, Dr. Lewis opined that "[t]he operator is ultimately in control of, and responsible for, everything that goes into the well." Opening Report at 7. He later added, "It is ultimately the operator's decision whether to use a pre-existing base cement blend, or to start from scratch with a new base blend, and economics plays into the operator's decision." *Id.* at 19. But Dr. Lewis has never communicated directly with the operator on a cement job for a specific well. Lewis Dep. at 127-28. Instead, these "opinions" are based only on second-hand information from other Halliburton employees:

> Q. So the Desk Engineers have told you, "The customer is responsible for everything in the well'?
>
> A. In essence. . . .
>
> Q. So is it fair to say that you're in – what – what you're repeating is your indirect knowledge, not your own direct knowledge?
>
> A. Yes.

Lewis Dep. at 176-77. Thus, Dr. Lewis's statements are not expert opinions based on sound methodology, but rather unsubstantiated "facts" learned around the water cooler. Other "facts" listed in Dr. Lewis's opening report include: "BP specified that base oil would be pumped ahead of the spacer," and "BP repeatedly reduced the pumping rates for all fluids." Opening Report at 15-16; Lewis Dep. at 241-42 ("Q. So to the extent you have paragraphs in here talking about how Halliburton transmitted information back and forth between BP to determine whether base oil would be used, the volume of mud, the volume of spacer, are you just repeating facts, or are you rendering opinions? A. I was attempting just to relay the information.").

Similarly, Dr. Lewis admitted he has "[n]o operational experience" in determining sufficient pump time for a job, but his report contained what he called a "lay opinion" that BP

4

chose to unnecessarily increase pump times.  Lewis Dep. at 250; Opening Report at 16. Likewise, Dr. Lewis opined that the cement was set at the time of the negative test, but his report contained a narration of aspects of the cement operation that could have delayed the cement set time.  Opening Report at 46-51.  Dr. Lewis even opined that "[a]s the Macondo cement job was pumped into place, contamination was inevitable," and that "[a]s a rule of thumb, operators wait 24-48 hours to ensure the cement is set before resuming operations that might disrupt the setting cement."  *Id.* at 47, 50.  Dr. Lewis expressly denied that he was offering an opinion on whether any of the listed factors actually affected the cement set time at the Macondo well.  Lewis Dep. at 269-70.  Indeed, Dr. Lewis is not qualified to render such opinions, as none of them relates to his experience, which is limited to the laboratory.  Lewis Dep. at 259, 353.

## ARGUMENT

### I.     Dr. Lewis's Opinions Related To The Cementing Competence Of BP's Wells Team Should Be Excluded.

Dr. Lewis's opinions concerning the cementing competence of BP's wells team should be stricken as unreliable because they are not the product of reliable principles and methods and invade the province of the fact-finder.  Dr. Lewis has a methodology for evaluating the competence of laboratory employees in his regular work.  He strayed far from that methodology in reaching a litigation-driven opinion based solely on a review of correspondence.  As such, Dr. Lewis should not be allowed to present an opinion based on an inaccurate methodology that he admittedly has never used in his line of work.

It is axiomatic that under Rule 702, the expert's proffered testimony must be based on proper methodology.  Fed. R. Evid. 702 ("the testimony is the product of reliable principles and methods").  "[T]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and,

5

therefore, are reliable. This requires some objective, independent validation of the expert's methodology." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). In *Guillory v. Domtar Industries, Inc.*, 95 F.3d 1320, 1330-31 (5th Cir. 1996), the Fifth Circuit excluded the testimony of an accident-reconstruction expert, deeming the testimony unreliable because it was "not based upon the facts in the record but on altered facts and speculation designed to bolster [the] position [of one of the defendants]."

In particular, courts have precluded experts from opining on inferences from a review of materials outside of their normal practice. *See Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1354 (Fed. Cir. 2007) (affirming decision to strike expert's testimony consisting "almost entirely of her quoting from the promotional information and other materials in which the defendants described their business operations . . . and drawing inferences from those materials"); *Tassin v. Sears, Roebuck & Co.*, 946 F. Supp. 1241, 1252-53 (M.D. La. 1996) (excluding mechanical-engineering expert testimony that, based on a review of 5,000 pages of minutes, correspondence, and memos of the Power Tool Institute, power tool manufacturers refused to incorporate safety devices on certain tools out of fear that doing so would open manufacturers to lawsuits).

Dr. Lewis opined that "BP was a sophisticated operator" that "possessed substantial expertise regarding foamed cement" and "understood how Halliburton's laboratory tests were conducted." *See id*. at 58-62. This opinion, however, was based on four isolated communications between BP and Halliburton – the same sort of "methodology" held insufficient in *Pharmastem* and *Tassin*. Dr. Lewis did not apply the same review methodology to the BP Macondo well team as he has applied in his regular work. Lewis Dep. at 71-73. Instead, he evaluated the BP Macondo well team solely on a review of correspondence – something that he

6

has never done before. *Id.* at 73.

Because it stems from an unreliable methodology, Dr. Lewis's opinion concerning the cementing competence of the BP well team is speculative. As the *Tassin* court held, "reviewing correspondence . . . to reach conclusions is not a [technical] issue." 946 F. Supp. at 1252. Communications "are not technical and do not require expert engineering testimony to make them comprehensible to a jury." *Id.* Dr. Lewis has never reviewed correspondence to evaluate someone's cementing competency, and is not an expert is doing so. Lewis Dep. at 73-74. Thus, Dr. Lewis's opinion concerning the cementing competence of BP's wells team should be stricken both because it is not the product of reliable methodology and it invades the province of the fact finder to determine what the correspondence represents.

## II. Dr. Lewis's Opinions Outside Of Cement Lab Testing And Slurry Design Chemistry Should Be Excluded.

Dr. Lewis's "opinions" as to cement operations should be stricken because (1) he does not have the expertise to offer these opinions; and (2) he is merely reciting facts or repeating opinions of other experts.

### A. Dr. Lewis Is Not Qualified To Offer "Opinions" On Cement Operations.

District courts are charged as gatekeepers to permit only reliable and relevant expert testimony. *See Daubert*, 509 U.S. at 590-93. "District courts must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (citing Fed. R. Evid. 702). Thus, "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Id.*

Dr. Lewis admitted that his expertise and opinions are "limited to what happened in the laboratory," meaning "lab testing and slurry design chemistry." Lewis Dep. at 259, 353-54. As

described above, he is not an expert in "the engineering of the cement job, through the execution of the cement job and completion of the cement job." *Id.* at 353. And he has never been involved with or supervised employees involved in cement operations. *Id.* at 71. By his own admission, Dr. Lewis is not qualified to testify regarding cementing topics outside of lab testing and slurry design. Therefore, he lacks the expertise to opine on cement operations and the Court must strike his opinions pertaining to these other cementing subjects.

**B.  Dr. Lewis's "Opinions" On Cement Operations Merely Recite Facts And Repeat Opinions Of Other Experts.**

A number of courts hold that expert testimony concerning facts, as opposed to opinions, is irrelevant because it does not assist the trier of fact. In *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1373-74 (5th Cir. 1981), the Fifth Circuit held that expert witnesses "usually do not testify regarding the facts of the case but only express their opinion based on those facts." Similarly, in *Ross v. Noble Drilling Corp.*, No. Civ.A. 03-0115, 2004 WL 1078906, at *2 (E.D. La. May 11, 2004), the Court held that "expert testimony offering nothing but the expert's appreciation of the facts is . . . inadmissible because 'the jury could adeptly assess [the] situation using only their common experience and knowledge.'" (citing *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990)); *see also Doss v. NPC Int'l, Inc.*, Civil Action No. 4:09CV38-MPM-DAS, 2010 WL 2900422, at *2 (N.D. Miss. July 20, 2010) ("Expert testimony is specifically allowed and treated differently precisely because experts offer opinions rather than simply providing facts."); *Kallassy v. Cirrus Design Corp.*, No. Civ.A. 3:04-CV-0727N, 2006 WL 1489248, at *7 (N.D. Tex. May 30, 2006) ("Aside from his conclusion, Dr. Johnston recites only facts and makes no reference to 'scientific, technical, or other specialized knowledge.' Accordingly, . . . Dr. Johnston's letter is not competent expert testimony under Rule 702." (citing Fed. R. Evid. 702)).

Dr. Lewis's opening report is replete with factual discussions concerning cement operations and other topics outside of lab testing and slurry design – his area of expertise. His report provided a recitation of facts in the section entitled "How Halliburton Typically Designs a Cement Formulation." Opening Report at 7. A factual recitation comprised the sections on "the working relationship among the operator and cement contractor," "downhole conditions that affect cement design," and "designing, testing, and refining a cement formulation is an iterative process." *Id.* at 7-12. Dr. Lewis also generally summarized the facts in "The creation of the Macondo Cement Formulation." *Id.* at 12. This discussion included the "creation of the parameters of the Macondo cement," "BP's decision to use a foamed cement system," "the starting point: the *Kodiak* base blend," "additives Halliburton added to the base blend," "using ZoneSealant 2000 to counteract the D-Air 3000," and "BP's request to extend cement placement time required further modification of the formulation." *Id.* at 12-16. Dr. Lewis also surveyed BP's communications with Halliburton on the cement job design. *See id.* at 15-16.

In his deposition, Dr. Lewis admitted that he did not provide opinions regarding subjects other than lab testing and slurry design chemistry:

> Q.  Now, Dr. Lewis, are you rendering any opinions as to the design of the cement job?
>
> A.  I don't believe so.
>
> Q.  So to the extent you have paragraphs in here talking about how Halliburton transmitted information back and forth between BP to determine whether base oil would be used, the volume of mud, the volume of spacer, are you just repeating facts, or are you rendering opinions?
>
> A.  I was attempting just to relay the information.
>
>     * * *
>
> Q.  Sure. I was trying to figure out how you came up with these – you – you called them facts, just laying out the facts, right?

9

> A. Yes.
>
> Q. You're not rendering any opinions as to decisions and communications between BP and Halliburton about the cement job?
>
> A. Correct.

Lewis Dep. at 241-42, 243-44. Additionally, Dr. Lewis acknowledged that certain opinions were not based on analysis and were merely a recitation of opinions of other experts: "Q. It's fair to say that here you're not basing this on your analysis or your own knowledge, but you're just repeating what others have said? A. That would be fair." *Id.* at 179. And other opinions even recited information from counsel: "Q. Have you reviewed the Expert Reports of Mr. Bolado and Mr. Beck? A. I have not. Q. Then how do you know [topics of other experts]? A. Just discussions. Q. [D]iscussions with whom? A. Primarily, Counsel." *Id.* at 380.[1]

Dr. Lewis only has the expertise to opine on lab testing and slurry design and admitted that portions of his report merely contained facts and opinions of other experts (that he could not verify). As such, his opinions outside of lab testing and slurry design should be stricken.

## CONCLUSION

Based on the foregoing, BP respectfully requests that the Court exclude the opinions of Dr. Samuel Lewis on the cementing competence of the BP Macondo well team and any "opinions" that are merely recitations of facts or opinions of other experts.

---

[1] Several courts have held that such blind reliance on other experts' opinions is not permitted. *See, e.g., In re TMI Litig.*, 193 F.3d 613, 715-16 (3d. Cir. 1999), *amended on other grounds*, 199 F.3d 158 (2000) (holding that an expert's "failure to assess the validity of the opinions of the experts he relied upon together with his unblinking reliance on those experts' opinions, demonstrates that the methodology he used to formulate his opinion was flawed under *Daubert* as it was not calculated to produce reliable results"); *Am. Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985) ("Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not."); *6816.5 Acres of Land v. U.S.*, 411 F.2d 834, 840 (10th Cir. 1969) ("[T]he trial court must take steps to exclude any expert opinion that is predicated upon another opinion.").

Dated: January 24, 2012

Respectfully submitted,

/s / Don K. Haycraft

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & DR. LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration & Production Inc. & BP America Production Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of January, 2012.

                                                               /s/ Don K. Haycraft