UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER |
| …………………………………………………... | : : | MAGISTRATE JUDGE SHUSHAN |

**BP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE
CERTAIN OPINIONS AND TESTIMONY OF GREGG PERKIN**

This Court should exclude many of the opinions of Gregg Perkin, the PSC's BOP expert, because they are unreliable and irrelevant, and fail to meet the threshold requirements of admissibility set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). In particular, Perkin should not be permitted to testify regarding the following opinions in his report because they lack any reliable basis, and in some cases, constitute impermissible legal conclusions:

- Perkin's opinion that the *Deepwater Horizon* BOP did not comport with federal regulations requiring use of the "best available and safest technology" ("BAST") should be excluded because it is an improper legal opinion and lacks any reliable basis, *see* Perkin Report at 7, 15-17; Appx. G. at 59-66; Appx. K at 98-101;

- Perkin's opinion that the *Deepwater Horizon* BOP should have been equipped with alternative technologies should be excluded because it lacks any reliable basis, *see* Perkin Report at 8, 17, 19; Appx. G. at 59-66, Appx. K. at 98-101;

- Perkin's opinion that the MUX cables on the *Deepwater Horizon* BOP should have been routed differently or armored should likewise be excluded as unreliable, *see* Perkin Report at 7-8, 12, 18-19, Appx. G. at 38-39, 43-44; Appx. K at 101;

- Perkin's opinion that BP did not properly calculate maximum anticipated surface pressure (MASP) for evaluating the BOP should be excluded as unreliable and irrelevant, *see* Perkin Report at 6, 12, 15, 20; Appx. H at 69, 71-81; Appx. K at 99; and

- Perkin's opinion that BP failed to adequately maintain the BOP should similarly be excluded as unreliable and irrelevant, *see* Perkin Report at 6-7, 15, 21-22, 27-31; Appx. G. at 48-59; Appx. K at 100-102.

Because these opinions lack the requisite reliability and relevance, BP requests that the Court preclude Perkin from offering them at trial.

## BACKGROUND

Perkin has minimal BOP experience and performed no testing of the *Deepwater Horizon* BOP in this case.  Although Perkin considers himself to be an expert in BOP technology, he admits that he has never designed a BOP, maintained a BOP, or been involved with modifying a BOP for offshore operations.[1]  Dep. at 76:7-21; 83:12-17; 82:15-18; 82:22-25.  He further admits that neither he nor anyone at his direction performed any type of testing on the *Deepwater Horizon* BOP: "The only testing I did relative to this case was not testing so much as observation."  *Id*. at 43:1-20; 79:20-22.  Perkin's "observation," however, has admittedly involved little or no analysis.  For example, despite opining that the *Deepwater Horizon* BOP was inadequate, Perkin neither compared the design configuration of any other BOP to the *Deepwater Horizon* BOP, *id*. at 91:19-92:15, nor conducted any research to evaluate what features are recommended for a BOP.  *Id.* at 102:23-103:1.

## ARGUMENT

Federal Rule of Evidence 702, as interpreted by the Supreme Court in *Daubert*, 509 U.S. 579, requires that expert testimony "be both reliable and relevant."  *Wells v. SmithKline Beecham*

---

[1] Perkin described having some involvement in "laying out" an annular BOP in 1968 while working in his first job after high school.  Dep. at 76:25-77:12.  Perkin could identify no other experience involving designing a BOP.

2

*Corp*, 601 F.3d 375, 378 (5th Cir. 2010). "Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 592-93).

Not only must expert testimony "rest[] on a reliable foundation," it must also be "relevant to the task at hand." *Daubert*, 509 U.S. at 597. To be relevant, the expert testimony must "assist the trier of fact to understand or determine a fact in issue." *See id.*, 509 U.S. at 592. Because it will not assist the trier of fact, "an expert may never render conclusions of law." *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009); *Askanase v. Fatjo*, 130 F.3d 657, 672-73 (5th Cir. 1997) (barring expert testimony regarding fiduciary duty as "legal opinion and inadmissible"). Perkin proffers numerous opinions that fall short of meeting *Daubert*.

**I.     Perkin's Opinion That the *Deepwater Horizon* BOP Did Not Comply with Federal BAST Regulations Should Be Excluded As Both Irrelevant and Unreliable.**

Perkin opined that the *Deepwater Horizon* BOP did not constitute the "best available and safety technology" ("BAST") that is to be used "whenever practical on all exploration, development, and production operations" under 30 C.F.R. § 250.107(c). Perkin Report at 7, 15-17, Appx. G. at 59. In particular, Perkin concluded that the *Deepwater Horizon* BOP was not BAST because it had not been equipped with certain alternative technologies – *e.g.*, alternative shear rams, tandem boosters and an acoustic control system. Perkin Report at Appx. G, 59-66. Perkin's BAST opinions should be excluded because they constitute impermissible legal conclusions.

"Best available and safest technology" is not a term of art in the oil and gas industry – Perkin conceded that he had never seen the term "BAST" other than in connection with the federal regulations, and admitted that his use is under those regulations. Dep. at 174:22-176:11 (Q. But sitting here, you're not aware of BAST being used in any other context except for MMS

3

regulations, correct?  A.  In terms of my efforts on this – this report, that's what I used it for.  I actually cite the CFR that talks about BAST."). By his own admission, Perkin's BAST opinions rely on his regulatory interpretation, and thus are inadmissible legal conclusions.  *See Mola Dev. Corp. v. United States*, 516 F.3d 1370, 1379 n. 6 (Fed. Cir. 2008) ("afford[ing] no weight" to expert testimony regarding federal regulation interpretation); *Flynn v. Tex-Air Helicopters, Inc.*, Civil Action No. 03-177, 2006 WL 5153149, at *1 (E.D. La. Feb. 22, 2006) (holding expert opinions interpreting FAA regulations inadmissible).

Not only does Perkin invade the Court's domain by interpreting federal regulations, he interprets the BAST regulations erroneously.  The federal regulations explicitly define BAST as "the best available and safest technologies that the [MMS] Director determines to be economically feasible wherever failure of equipment would have a significant effect on safety, health, or the environment."  *See* 30 C.F.R. § 250.105.  Perkin admitted he had no knowledge whether the MMS director had ever identified any of the technologies listed in his report as BAST.  Dep. at 180:11-19.  Rather than evaluate what the MMS Director has determined constitutes BAST, Perkin testified that he "disagrees" with the regulation, and opined that it is the operator, not the MMS director, who determines BAST:  "I disagree with the fact that . . . an operator like BP can go to the director and rely upon his decision for BAST.  BAST is a decision of the operator."  *Id*. at 742:6-17; *see also id.* at 176:24-177:7.  Further, when confronted with the federal regulation that provides that compliance, in general, with the MMS regulations constitutes BAST, 30 C.F.R. § 250.107 (c), Perkin testified that he "somewhat disagree[d]" with the regulation.  Dep. at 183:20-184:7.

Perkin also did not provide any clear, consistent, or accepted definition of BAST.  Although opining that BAST is "a decision of the operator," *id.* at 742:17, he conceded that he

had chosen to apply an "acceptable product" definition for purposes of his Report: "I am using the definition that I believe I have propounded in my report . . . . It's an acceptable product. It is a proven product. It works, and it will improve safety." *Id.* at 722:23-723:7. Perkin, however, conducted no research as to what others in the industry considered to be an "acceptable" BOP. *Id.* at 102:23-103:1 (admitting he had not contacted BOP manufacturers to ask what features are recommended). In sum, Perkin's BAST opinions are irrelevant as impermissible legal opinions and unreliable as erroneous and inconsistent. *See Estate of Sowell v. United States*, 198 F.3d 169, 171-72 (5th Cir. 1999) ("[T]he district court did not abuse its discretion in excluding [expert's] testimony as an inadmissible legal opinion.").

## II. Perkin's BAST Opinions Regarding Alternative Technologies for the *Deepwater Horizon* BOP Should Be Excluded as Unreliable.

Using his erroneous BAST definition, Perkin identifies several technologies that he purports constitute BAST and/or should have been added to the BOP as "upgrades," including alternative shear ram designs (CDVS or DVS shear rams), tandem boosters, and an acoustic control system. Perkin Report, Appx. G at 59-66. For each of these alternative technologies, however, Perkin engaged in no analysis to assess their feasibility or purported advantages. Perkin's opinions therefore should be excluded because they lack any reliable basis.

### A. Perkin's Opinions Regarding Alternative Shear Rams Are Unreliable

Perkin's opinion that there were alternative blind shear rams – specifically, the CDVS and DVS rams – that should have been implemented on the *Deepwater Horizon* BOP, Perkin Report at 17, should be excluded because Perkin failed to use *any* reliable methodologies for his opinion.

With regard to DVS rams, Perkin opines that double 'V' shear rams shear drill pipe with greater efficiency and cover the entire wellbore. Perkin Report at 17. During his deposition,

however, Perkin admitted that he could be wrong as to whether DVS rams actually covered the entire wellbore, as he had not reviewed the DVS ram design drawings "until just before [his] deposition." Dep. at 549:14-552:6. Perkin further admitted that he had not done any engineering analysis of the potential hazards associated with retrofitting the *Deepwater Horizon* BOP with DVS rams. *Id.* at 209:11-19.

Perkin's analysis with respect to the CDVS ram design was similarly deficient. Again, Perkin admitted he had not reviewed the CDVS drawings prior to submitting his expert report, *id.* at 211:20-212:18, and had "not done an engineering analysis to determine in his mind if [a set of CDVS rams] was a better design." *Id. at* 222:4-6. In fact, his conclusion was not formed based on an independent analysis, but solely on a review of unspecified literature:

> Q.  . . . Is it your opinion that a CDVS design would have been a better and safer technology for the *Deepwater Horizon* BOP?
>
> A.  I'm informed that it would be. I haven't had a chance to study it.
>
> Q.  You've been informed by whom?
>
> A.  I've read that in the literature. . . . .
>
> Q.  You've read it in the literature, but you haven't performed your own engineering analysis, correct?
>
> A.  I have had not – I have not had an opportunity to do that yet, no.

*Id.* at 221:16-222:13. Perkin conducted no analyses to evaluate whether the CDVS rams could have worked during the Macondo incident, *id.* at 226:20-227:9, and performed no evaluation of the practical impact of using them on the *Deepwater Horizon* BOP. *Id.* at 223:16-224:10. Perkin's failure to conduct any meaningful analysis of the DVS or CDVS designs renders his testimony unreliable because expert testimony "based upon no research at all [is] pure speculation." *Guillory v. Domtar Indus.*, 95 F.3d 1320, 1331 (5th Cir. 1996); *see also Brown v. Parker-Hannifin Corp.*, 919 F.2d 308, 311-12 (5th Cir. 1990) (excluding testimony where expert

6

"had never seen the coupling in question" and "did not examine the . . . manufacturing process"); *Nugent v. Hercules Offshore Corp.*, No. Civ.A. 98-3060, 2000 WL 381925, at *6 (E.D. La. Apr. 14, 2000) (excluding opinion that did not "identify the methodology … used").

### B. Perkin's Opinions Regarding Use of Two Blind Shear Rams, Tandem Boosters, and Acoustic Systems Should Also Be Excluded as Unreliable.

Perkin opined that the *Deepwater Horizon* BOP should have been "upgraded" to "[a]dd another BSR, a preferable configuration," Perkin Report at 17, but admitted that he did not conduct any tests or analyses to evaluate whether two blind shear rams would have made any difference during the incident. Dep. at 219:9-220:2. Similarly, Perkin opined that BP could have implemented "[a]n Acoustic Control System ('ACS') which could have automatically actuated the LMRP disconnect sequence from the HORIZON," Perkin Report at 17, and that tandem boosters could have been used on the *Deepwater Horizon* BOP, claiming that they "would increase the shearing capability of the BSR and allow for higher forces to shear [drill pipe]." *Id.* But Perkin could not name a single rig that uses an acoustic backup system or had been retrofitted with tandem boosters. *Id.* at 239:23-240:5; 236:8-14. He admitted he did not attempt to study the reliability of acoustic systems, *id.* at 248:17-249:4, and claimed he could not recall any of the disadvantages and risks of acoustic systems. *Id.* at 240:6-241:1.

Nor did Perkin consider the West Engineering Analysis which identified seven "potential shortcomings" of acoustic systems, but admitted these were "valid points." *Id*. at 242:17-244:2. Perkin admitted he did not know what modifications that would be required to add tandem boosters, *id.* at 228:15-22, or whether tandem boosters could even have fit through the *Deepwater Horizon*'s moon pool. *Id.* at 229:23-230:4. Perkin further conceded that "an engineering analysis would be prudent to determine whether or not the use of tandem boosters would be a safer alternative," but admitted he performed no such analysis. *Id.* at 234:1-235:25.

7

Without any engineering analysis or consideration of potential advantages or disadvantages, Perkin's opinions on the feasibility and superiority of double blind shear rams, acoustic systems, or tandem boosters are not reliable and therefore inadmissible.  *Winters v. Fru-Con Inc.*, 498 F.3d 734, 743 (7th Cir. 2007) (holding that "providing only an ultimate conclusion with no analysis is meaningless"); *Lee Green v. La. Dep't of Pub. Safety & Corr.*, No. 2:06 CV 1018, 2010 WL 1628769, at *5-6 (W.D. La. Apr. 20, 2010).

### III.     Perkin's Opinions Regarding the MUX Cables Should Be Excluded as Unreliable

Perkin opines that BP, Transocean, and Cameron "fail[ed] to properly segregate and/or otherwise protect the MUX cables which provide power to BOP controls so as to preserve the integrity and redundancy of the BOP controls in case of an explosion," contending that the MUX cables should have been routed through a non-hazardous area and should have had additional protection to prevent loss of control of the BOP.  Perkin Report at 18-19; *see also id. at* 7-8.

Perkin admitted that his report does not provide any discussion of how the MUX cables could have been routed through a non-hazardous area.  Dep. at 576:10-19.  He further admitted that he had not compared the *Deepwater Horizon*'s MUX cable routing with any other rigs, *id.* at 98:23-99:13, and could not identify any rigs that routed MUX cables differently from the *Deepwater Horizon*.  *Id.* at 579:18-580:5.  Perkin also admitted that a "feasibility study" would be necessary to determine whether alternative MUX cable routing could have been implemented, but that he had not attempted to conduct one.  *Id.* at 579:11-580:1.  Instead, he claimed that he "conceptualized" alternatives – none of which he described in his Report.  *Id.* at 727:18-728:2.  Undercutting his opinion that the MUX cables should have had additional armor, Perkin admitted that he had not reviewed the specifications for the *Deepwater Horizon* MUX cables, nor any other MUX cables.  *Id.* at 582:22-583:17.

8

**IV.    Perkin's Opinions Regarding Maximum Anticipated Surface Pressure (MASP) Should Be Excluded As Unreliable and Irrelevant.**

Perkin opined that BP "failed to competently calculate and provide the MMS with Macondo's MASP at the mud line as required by the MMS for permission to drill the Macondo well," Perkin Report at 15, and that BP "misrepresented Macondo's MASP to the MMS." *Id.*; *see also* Perkin Report, Appx. H at 71-78.  In particular, Perkin opined that "BP's calculation using a 50% gas and 50% mud column significantly lowered the results of [the MASP calculation] making it appear that BP had a greater safety margin in Macondo's BOP than actually existed."  Perkin Report, Appx. H at 76.  In sum, Perkin's MASP opinion relied upon his belief that MASP should be calculated using a 100% gas column rather than a 50% gas column.

*First*, Perkin lacks experience calculating MASP.  Dep. at 259:16-260:7 ("In some of the classes that I've taught I've mentioned MASP.  I haven't gone through the calculation necessarily.").  *Second*, Perkin conducted no research to evaluate how the industry calculates MASP, failing to review publicly-available information for other operators.  *Id.* at 104:7-111:7.  Nor could he identify any regulations or industry standard that recommends use of a 100% gas column in calculating MASP.  *Id.* at 267:1-269:3; 274:10-276:3 (Q. Is there a standard petroleum industry procedure for determining gas versus mud ration when calculating MASP for 15,000 plus feet?  A. Well, if you're asking me if – if 20 percent is acceptable, 30 percent is acceptable, I don't have an answer for that.  It's up to the operator.").  Without any support to substantiate his opinions regarding MASP, those opinions should be excluded.

**V.    Perkin's Opinions Regarding BOP Maintenance, Operation, and Testing Practices Should Be Excluded Because They Are Unreliable and Irrelevant.**

Perkin opined that BP and Transocean implemented inadequate training and supervision of their personnel with respect to the BOP and "failed to adequately inspect, test, maintain and repair" the *Deepwater Horizon* BOP.  Perkin Report at 21-22, Appx. G at 57-59.  Perkin,

9

however, lacked experience with BOP operations and maintenance, and admittedly performed no research to support his conclusions. Perkin admitted that he has limited offshore BOP experience – he has never been responsible for maintaining BOPs on an offshore rig. *Id.* at 82:15-18. Perkin also did not conduct any analysis of industry practices to assist in reaching his BOP maintenance opinions, failed to evaluate other operators' maintenance practices, or to contact any other drilling contractors or other operators to discuss their BOP maintenance practices. *Id.* at 101:5-102:22. Likewise, Perkin did not attempt to compare Transocean's maintenance of the *Deepwater Horizon* BOP with its maintenance on non-BP leased rigs. *Id.* at 151:21-152:1.

Without considering the maintenance practices of other drilling operators or contractors, Perkin cannot be said to have used a scientifically valid methodology or to have "substantiat[ed] his opinion." *Winters*, 498 F.3d at 743. Without any experience maintaining BOPs, Perkin is not in a position to offer a relevant opinion regarding maintenance practices that "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am.*, 654 F. Supp. 2d 518, 520 (E.D. La. 2009). In *Peppers v. Aries Marine Corp.*, 3:04-cv-02356-RGJ-KLH (W.D. La. Jan. 30, 2006), the Court excluded Perkin's opinion that a BOP was "defective and unreasonably dangerous" on similar grounds, finding his opinion was made in a "conclusory manner and not based upon scientific evidence or methodology" and was "not sufficiently reliable to be admissible."[2] TREX 47827 at 6 (Ex. A) This Court should likewise exclude Perkin's unsubstantiated opinions.

---

[2] In *Cooley v. Denbury Onshore, LLC*, 2009 WL 4034885 at *2 (S.D. Miss. Nov. 20, 2009), the Court similarly excluded Perkin's expert testimony regarding workplace practices, recognizing that "Perkin's alleged expertise as an engineer is unnecessary to assist the jury in understanding and determining whether the actions of any Denbury employee constitutes 'control' of the workplace."

Dated: January 24, 2012                              Respectfully submitted,

/s / Don K. Haycraft

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration & Production Inc. & BP America Production Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of January, 2012.

/s/  Don K. Haycraft