UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |
| …………………………………………….. | : | |

**BP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE
THE REPORT AND TESTIMONY OF DAVID PRITCHARD**

**INTRODUCTION**

David Pritchard, the PSC's drilling expert, should not be permitted to provide expert testimony at trial. Pritchard admitted plainly at his deposition that his analysis rested on the premise that *because* there was a blowout, there *must have been* reckless conduct: "Q. It's your opinion, Mr. Pritchard, that the fact that there was a blowout means there must have been reckless conduct? A. Yes, sir." Pritchard Dep. at 601-02. With this as his starting proposition, Pritchard spent 400 pages seeking to collect evidence to support that conclusion. And because – as Pritchard conceded at the outset of his report – he failed to consider the conduct of any other party involved in the drilling and operations at the Macondo well, Pritchard not surprisingly found that the reckless conduct that he assumed existed rested entirely with BP. Pritchard should not be permitted to provide expert testimony at trial because he: (1) failed to consider alternative possible causes for the Macondo well blowout; (2) lacks expertise and employs unreliable methodology; (3) made impermissible credibility determinations; (4) impermissibly offered legal conclusions; and (5) improperly relied on Dr. Andrew Hurst's report – specifically Dr. Hurst's "Golden Zone" theory.

## BACKGROUND

Pritchard started his 407-page report with the explicit premise that "BP, as the operator, is ultimately responsible in every sense." Expert Report at 27. He conceded that "other than cursory discussions related to testimonies reviewed, *this Report d[id] not address issues or possible deficiencies relating to third-party contractors*." *Id.* (emphasis added). Thus, Pritchard's report had the sole focus of concluding that BP erred in every step of the design and execution of the Macondo well: *"The Macondo catastrophe was not strictly a Drilling and Completions functional failure – it was a multidisciplinary and management organizational systemic failure."* *Id.* (emphasis in original). Pritchard explained at his deposition that his analysis actually assumed that because the blowout occurred, that there must have been reckless conduct. Pritchard Dep. at 601-02. With these as his explicit premises, there is little wonder that Pritchard opined that BP personnel acted recklessly in various aspects of the planning and execution of the Macondo well.

Pritchard's overriding theme was that BP's "fast drilling" led to various undesirable consequences, including masking risks along the way, the need to make up lost or wasted time by cutting cost/safety corners, which collectively ultimately caused the blowout. Pritchard also devoted a significant portion of his report to cataloging the various filings with the MMS and pointing out what he claimed were inaccuracies and misrepresentations. Pritchard's stated overall conclusion was:

> In sum, no minimally competent drilling and completions engineer or manager would have signed off on the decisions made by BP on the Macondo well. BP['s] . . . reckless actions which caused this explosion, uncontrolled blowout and consequent oil spill lasting 87 days . . . . BP's actions cannot be explained by mere incompetence; instead, BP's inexcusable and grossly reckless choices appear to have been part of its misguided decision to save money on a well already far above its budget, and to save time on a well already far past its expected completion date. Once BP made a decision to try to save time and

money, each action taken thereafter sacrificed safety, and led to the Macondo catastrophe.

Expert Report at 23.

## ARGUMENT

### I. Pritchard's Opinions Should Be Excluded Because He Failed to Consider Alternative Possible Causes for the Macondo Well Blowout.

Pritchard's sole focus in his report and testimony was BP's actions, and he failed to evaluate the actions of other parties in this case with respect to the cause of the Macondo well blowout. This made it impossible for him to assess – let alone rule out – the role other parties' actions played in the Macondo well incident and precluded him from formulating a reliable causation opinion.

The Fifth Circuit has found experts' causation opinions to be unreliable when they fail to eliminate other potential causes. *See Michaels v. Avitech, Inc.*, 202 F.3d 746, 753-54 (5th Cir. 2000) (finding an expert's opinion unreliable where he failed to rule out other potential causes of a plane crash).  In *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239 (5th Cir. 2002), for example, the Fifth Circuit excluded the testimony of a doctor who testified that "it was as likely as not that the Synvisc syringe that he administered to [the plaintiff] contained the salmonella bacteria that infected [the plaintiff's] knee," because the doctor acknowledged that he had no "scientific evidence" to support this conclusion and deferred to another doctor for any other explanation as to how the plaintiff's knee became infected. *Id*. at 245.  Conversely, the Fifth Circuit has found an expert's opinion to be reliable where he meticulously ruled out other potential causes.  *See id.* at 248; *see also Johnson v. Samsung Elecs. Am., Inc*., No. 10-1146, 2011 WL 4344588, at *4 (E.D. La. Sept. 14, 2011).

At the very beginning of his report, Pritchard concluded that BP was "ultimately responsible" for the Macondo well blowout while acknowledging that he had not evaluated, and

3

did not address, the actions of third party contractors. Expert Report at 27. The entirety of Pritchard's opinions were based solely on a review and critique of BP's actions. Pritchard confirmed at his deposition that "[his] opinions focused on BP." Pritchard Dep. at 414. Pritchard further admitted that he did not assess the competency of any other parties involved in the Macondo well, and again only focused his analysis on BP. *Id*. at 588-89. It is therefore clear that Pritchard did not consider, much less eliminate, any other potential causes of the Macondo well blowout aside from BP's actions. Moreover, Pritchard admitted at his deposition that he assumed in his analysis that there must have been reckless conduct because there was a blowout. *Id.* at 601-02. Pritchard therefore failed to even consider the possibility that BP may not have been reckless in its planning and execution of drilling of the Macondo well. Indeed, Pritchard assumed the very conclusion his opinions purported to address. This fatal flaw renders his opinions unreliable and not fit for introduction into evidence at trial.

## II. Pritchard's Opinions Should Be Excluded Because He Lacks the Expertise to Offer Them.

Pritchard's opinions should also be excluded as unreliable because he opined about the competence of employees working in particular positions when he has never worked in these positions or has had extremely limited experience with respect to these positions. Specifically, Pritchard opined that "all of the [e]ngineers from BP who were involved in any way" in planning the Macondo well "lacked minimal competence," Pritchard Dep. at 586, but Pritchard admitted that he had never actually planned a well. Nor has he, like other experts in this matter, taught well planning in an academic setting.

In *Daubert*, the Supreme Court instructed district courts to function as gatekeepers and permit only reliable and relevant expert testimony to be presented to the jury. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-93 (1993). "District courts must be assured that

4

the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (citing Fed. R. Evid. 702).  Thus, "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Id.*

Pritchard opined on the competency of various BP personnel at different points in his report.  Expert Report at 320-21.  He claimed that BP rig personnel did not understand "[t]he full meaning of Section data," "[t]he interpretations of the negative test," "[t]he folly of displacing the well confused by SIMOPS in a reckless manner," and "[t]he meaning of the fluctuating hookload prior to the blowout as a clear indicator of a flowing condition." *Id.* at 320.  Pritchard also argued that BP engineers and geoscientists failed to respond to kicks, and had insufficient training, as they failed "to recognize and address the danger of the highest permeable zone at 17,467 ft with 14.1 PPG vs. the lower pressure reservoir at 12.6 PPG." *Id.* at 321.  He posited that "no minimally competent drilling and completions engineer or manager would have signed off on the decisions made by BP on the Macondo well." *Id.* at 23.

At his deposition, Pritchard testified that BP engineers failed to "interpret the data" with respect to the kick in the Macondo well.  Pritchard Dep. at 86.  He also stated that he believed that "the fact that a kick occurred [was] an indication that there was a lack of minimum [e]ngineering competence on that well." *Id.* at 91.  He concluded that "all of the [e]ngineers from BP who were involved in any way with the Macondo well" "lacked minimal competence." *Id.* at 586.

But Pritchard could not identify any other wells that he had "personally studied and concluded that a kick that occurred on that well [was] a . . . sign that there was a lack of minimal [e]ngineering competence." *Id*. at 92.  He also was unable to explain what qualifications he had

5

to question the competency of BP personnel, aside from offering the fact that he believed there were cases on the Macondo well where certain instructions were not clearly identified. *Id.* at 126. Pritchard admitted that he was not a well control specialist, *id.* at 37, had never worked for a drilling contractor, *id.* at 60, and had never worked as a mud engineer, geologist, petrophysicist, OIM, toolpusher, or driller, *id.* at 62. The best he could say was that he may have acted as an assistant driller while in school, *id.* at 63, that he served as a well site leader from 1972 until 1974, and that he worked as a company man for several smaller, independent companies, *id.* at 65.

Pritchard was, not surprisingly, unable to explain during his deposition what qualifications he had that would allow him to opine about a person's competency, aside from his general experience in the industry. Pritchard does not have the "knowledge, skill, experience, training, or education" necessary to opine regarding the competence of BP engineers or rig personnel, and his opinions and testimony regarding this topic should be excluded.

**III.    Pritchard's Opinions Should Be Excluded Because He Employed an Unreliable Methodology in Formulating Them.**

"[T]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable. This requires some objective, independent validation of the expert's methodology." *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). Courts exclude as unreliable the opinions and testimony of experts who "use[ ] circular reasoning to work backwards from" a result by reaching a conclusion and working backwards to find support for that conclusion. *See Young v. Burton*, 567 F. Supp. 2d 121, 137 (D.D.C. 2008); *Topliff v. Wal-Mart Stores E. LP*, No. 6:04–CV–0297 (GHL), 2007 WL 911891, at *19 (N.D.N.Y. Mar. 22, 2007); *Knous v. ConAgra Foods, Inc.*, No. 5:04cv-102-R, 2006 WL 3087137, at *3 (W.D. Ky. Oct. 27, 2006).

Pritchard's method was, at its core, to look at the result and reach the conclusion that BP must have done something wrong, then work backwards to find errors supporting that conclusion. At his deposition, Pritchard repeatedly testified that an examination of results led him to reach a certain conclusion. As noted above, Pritchard admitted at his deposition that he assumed that because there was a blowout that BP therefore acted recklessly. Pritchard Dep. at 601-02. He similarly stated that he believed that BP acted in a grossly reckless manner because the Macondo well blowout continued for eighty-seven days, essentially reasoning backwards from the length of the blowout to conclude that BP's actions had been wrongful. *Id.* at 133-34. Pritchard also testified that "[t]he results indicate that the night of April 20, 2010, the BP Team was not closely monitoring the well." *Id.* at 416. Again, Pritchard relied solely on a negative result to support his conclusion that BP acted improperly. He did not conduct any independent evaluation of the events leading to the result to determine causation. This does not meet the standard for admissibility.

## IV. Pritchard's Impermissible Credibility Determinations Should Be Excluded.

Expert "evaluations of the credibility of . . . [certain witness] testimony . . . [are] impermissible expert testimony" because such testimony "would not be helpful to a trier of fact." *Fisher v. Halliburton*, Nos. H-05-1731, 06-1971, 06-1168, 2009 WL 5216949, at *3 (S.D. Tex. Dec. 21, 2009). Pritchard offered several opinions that rested upon his determination as to the credibility of witness testimony and the appropriate weight to be given to witness testimony. Because such opinions would not assist the trier of fact, they should be excluded.

In his report, Pritchard stated that "[t]he first gas show top was 17,467 feet. Testimony of BP petrophysicist Galina Skripnikova indicates that this zone was gas and this was recognized *before* the incident." Expert Report at 216 (emphasis added). He then quoted from portions of

7

Skripnikova's deposition.  *Id*. at 216-17.  Pritchard stated at his deposition that he did not make credibility judgments when reviewing deposition transcripts for his report.  Pritchard Dep. at 117-18.  Nevertheless, when he was pressed to admit that Skripnikova testified later in her deposition that, with respect to her analysis of the 17,467 foot sand, she was referring to her knowledge *after* the incident, *id.* at 242-44, Pritchard stated that he would give weight only to the portions of Skripnikova's testimony that he cited in his report, *id.* at 245.  He also suggested that he believed that Skripnikova analyzed the sand the day of the Macondo well incident.  *Id.* at 247.  Pritchard clearly made a credibility determination as to Skripnikova's testimony, and his opinions that rest on this determination should not be admitted into evidence.

**V.     Pritchard's Impermissible Legal Opinions Should Be Excluded.**

The Fifth Circuit has clearly held that "an expert may never render conclusions of law." *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009).  It has also concluded that an interpretation of a regulation or statute is a pure issue of law.  *See Coca-Cola Co. v. Atchison, Topeka & Santa Fe Ry. Co.*, 608 F.2d 213, 222 (5th Cir. 1979).  Further, numerous district courts in the Fifth Circuit have held that "experts cannot opine as to what law governs an issue or what the applicable law means because such opinions impermissibly intrude upon the role of the court."  *BNY Mellon, N.A. v. Affordable Holdings, Inc.*, No. 1:09CV226–SA–JAD, 2011 WL 2746301, at * 1 (N.D. Miss. July 12, 2011) (collecting cases from other circuits); *see also Mola Dev. Corp. v. United States*, 516 F.3d 1370, 1379 n.6 (Fed. Cir. 2008) ("Because the proper interpretation of . . . regulations is an issue of law, expert testimony relating to this question . . . 'should not be received, much less considered.'") (citation omitted).  Pritchard repeatedly offered legal opinions in his report and during his deposition.  Thus, Pritchard should not be permitted to testify regarding conclusions of law at trial.

A number of courts in the Fifth Circuit have excluded expert reports and testimony where the expert opined that a party had violated certain regulations. For example, in *In re Midland Enterprises, Inc.*, No. 00-3750, 2002 WL 31780156 (E.D. La. Dec. 11, 2002), this Court held that a marine safety expert's opinions that the defendants "violated OSHA regulations and that such violations constitute unseaworthiness and negligence" constituted "impermissible legal conclusions." *Id.* at *3. The Court held that "[i]t is well-established in the Fifth Circuit that Federal Rule of Evidence 704 does not permit an expert to render conclusions of law. Expert testimony that offers a legal opinion is inadmissible." *Id.* (citations omitted). Similarly, in *Flynn v. Tex-Air Helicopters, Inc.*, No. 03-177, 2006 WL 5153149 (E.D. La. Feb. 22, 2006), this Court excluded the testimony of experts who purported to interpret the regulations of the Federal Aviation Administration, stating: "The opinions of Douglas Marwill and James Bradley involve their conflicting interpretations of FAA regulations/notices. As such, the opinions appear to offer legal conclusions about express governmental requirements. While appreciating the offer, this trier of fact discerns no need for assistance in such matters." *Id.* at *1.

Here, two of Pritchard's primary findings are that: (1) BP violated the MMS regulations, Expert Report at 17, and (2) BP violated the MMS regulations concerning top of cement "placement," *id.* at 20. Pritchard's report is replete with references to BP's violation of the MMS regulations. *See id.* at 86, 288, 303 (referring to BP's violation of 30 C.F.R. § 250.404(e)), 318, 349. Moreover, during his deposition, Pritchard stated that he intended to provide testimony to the Court regarding BP's violation of certain MMS regulations. Pritchard Dep. at 69. He also repeatedly testified that BP had violated the MMS regulations. For example, Pritchard stated that BP "drilled through . . . zones, knowing that they had already exceeded and violated MMS [r]egulations," *id.* at 183, and that BP "violated MMS [r]egulations on top of cement," *id.* at 443.

9

Given that courts in the Fifth Circuit have uniformly excluded expert reports and testimony purporting to reach conclusions of law, those opinions expressed by Pritchard in which he claims that BP violated the MMS regulations should not be permitted at trial.

## VI. Pritchard's Opinions that Rely on Dr. Hurst's "Golden Zone" Theory Should Be Excluded Because Dr. Hurst's Opinions Are Unreliable and Irrelevant.

Pritchard devoted an entire section of his report to the "known hazards of drilling into the Golden Zone," Expert Report at 4, and cited the report of Dr. Andrew Hurst, who is the expert on the "Golden Zone" theory, in support of his opinions regarding effective ECD management, *id.* at 34-35, 40, and establishing effective leakoffs early, *id.* at 36. Pritchard also relied on Dr. Hurst's opinions during his deposition. *See* Pritchard Dep. at 177, 604**.**

This Court has held that "[a]n expert may rely on the reliable opinion of another expert in forming his own opinion," and that "testimony relying on any stricken opinions will be excluded." *Johnson*, 2011 WL 4344588, at *3, *5 n.1. Further, this Court has held that an expert may not adopt the opinions of another expert "without attempting to assess the validity of the opinions relied on." *Lightfoot v. Hartford Fire Ins. Co.*, No. 07-4833, 2011 WL 39010, at *4 (E.D. La. Jan. 4, 2011).

As BP argues in its Memorandum in Support of its Motion to Exclude the Report and Testimony of Dr. Andrew Hurst, which is fully incorporated by reference herein, the "Golden Zone" theory is unreliable and Dr. Hurst's opinions are not relevant to any issue in the case. As a result, Pritchard cannot rely on Dr. Hurst's report in forming his opinions and his opinions that rest on Dr. Hurst's report should not be admitted into evidence.

## CONCLUSION

BP respectfully requests that the Court enter an order precluding David Pritchard from providing expert testimony in this case.

Dated: January 24, 2012                                    Respectfully submitted,


/s / Don K. Haycraft

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration & Production Inc. & BP America Production Company*

11

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of January, 2012.

/s/  Don K. Haycraft