UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER<br>MAGISTRATE JUDGE |
| …………………………………………….. | : | SHUSHAN |

## BP'S MEMORANDUM IN SUPPORT OF ITS MOTION TO LIMIT THE TESTIMONY OF DR. RICHARD STRICKLAND

### INTRODUCTION

Dr. Richard Strickland, a reservoir engineer providing Halliburton's expert opinion on petrophysics, should not be permitted to testify regarding his definition of a hydrocarbon-bearing zone or whether the M57B interval is a "hydrocarbon-bearing zone." Dr. Strickland's report is based on a definition of a hydrocarbon-bearing zone created for this litigation and not based on any industry standard, practice, or procedure. Further, Dr. Strickland's opinion that the M57B is a hydrocarbon-bearing zone is not relevant and should be excluded because he failed to apply his own definition to the M57B interval. Accordingly, Dr. Strickland should be precluded from testifying at trial regarding both his definition of a "hydrocarbon-bearing zone" and his opinion that M57B is a hydrocarbon-bearing zone under his definition.

### BACKGROUND

Dr. Strickland created a definition of a hydrocarbon-bearing zone that lacked any basis in industry, standard, or procedure. Dr. Strickland opined that a hydrocarbon-bearing zone is "a defined interval that contains oil and/or gas at a sufficient level that oil and/or gas will flow out of the zone and into the wellbore when the pressure in the well bore is reduced below the pressure in the zone." Opening Report at 8 ¶ 21. Dr. Strickland also added that "[f]or a

formation to be hydrocarbon bearing it must have sufficient porosity and oil or gas saturation such that it will flow in the presence of a pressure differential" and that there must be "some level of oil and/or gas saturation."  *Id*. at ¶¶ 22-23.  Dr. Strickland did not provide any quantitative value or range of values for any specific parameter of a hydrocarbon-bearing zone, such as porosity, permeability, or water saturation.  Nevertheless, Dr. Strickland concluded that the M57B is "certainly" a hydrocarbon-bearing zone.  *Id.* at 19 ¶ 56; 21, ¶ 64; 29 ¶ 79.

At his deposition, Dr. Strickland added criteria to his definition – that a hydrocarbon-bearing zone must be able to have "significant flow that might affect operations." Strickland Dep. at 154.  However, Dr. Strickland did not determine that the M57B zone flowed or interfered with operations at any time.

## ARGUMENT

### I. Dr. Strickland's Definition Of A Hydrocarbon-Bearing Zone Is Unreliable Because It Is Not Based On Any Industry Standard, Policy, Or Procedure.

Dr. Strickland's definition of hydrocarbon-bearing zone is unreliable and irrelevant because it has no basis in industry practice, procedure, or standards and was created for use in this litigation.[1]  His opinion that the M57B is a hydrocarbon-bearing zone should be excluded.

Pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), in accordance with Federal Rule of Evidence 702 "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." In determining whether an expert's testimony is reliable, district courts must consider a five-factor, non-exclusive test. *See id*. at 593-95.  "These factors include:  (1) whether the expert's theory can be

---

[1] In response to Dr. Strickland's opinion regarding what constitutes a "hydrocarbon-bearing zone," BP submitted an expert report from Dr. Richard Lee and Mr. J. Leif Colson of the RJ Lee Group and testimony from its in-house expert, Pinky Vinson.  Dr. Lee and Mr. Colson generated an opinion for purposes of this litigation as to what constitutes a hydrocarbon-bearing zone, and Pinky Vinson testified about the definition of a hydrocarbon-bearing zone he employed in determining top hydrocarbon-bearing zones for cementing purposes for more than twenty years as a petrophysicist.  The fact that Dr. Lee or Mr. Colson offered a definition to rebut Dr. Strickland does not make Dr. Strickland's opinion admissible in the first instance.

or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community." *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). "[T]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable. This requires some objective, independent validation of the expert's methodology." *Id.* at 276. To establish whether evidence or testimony is relevant under Rule 702, district courts must evaluate whether it "assist[s] the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591.

Courts in the Fifth Circuit have excluded the testimony of experts who have attempted to reach conclusions based on their opinion regarding the applicable industry standard when the industry had not, in fact, adopted any such standard. For example, in *Jenkins v. Slidella L.L.C.*, Civil Action No. 05-370, 2008 WL 2649510, at *5 (E.D. La. June 27, 2008), this Court excluded the testimony of Dr. Johnny Belenchia regarding that plaintiffs were exposed to mold because there are no generally "accepted standards for measuring indoor airborne mold." *See also Ross v. Willard*, Civil Action No. 06-200-A, 2007 WL 4374027, at *2 (M.D. La. Dec. 13, 2007). Similarly, in *Grdinich v. Bradlees*, 187 F.R.D. 77, 79 (S.D.N.Y. 1999), the defendant moved to exclude the testimony of William Torphy, a liability expert who was retained to opine that the defendant "either ignored or failed to follow 'industry guidelines applicable to merchandise displays for self-service department stores.'" In reaching his conclusion, Torphy relied "on 'industry standards' and guidelines that are part of training and safety manuals that apply generally to retail stores." *Id.* at 81. The United States District Court for the Southern District of

New York noted, however, "that there really are no so-called 'industry standards.'" *Id*. Therefore, the *Grdinich* court concluded that "none of the *Daubert* factors, including that of 'general acceptance' in the relevant expert community, indicate that Torphy's testimony would be reliable." *Id.* It held as follows:

> Torphy was not aware of any industry trade group that provides guidelines on displaying or stacking merchandise or any written industry standards on how to display ironing boards. In fact, nothing in Torphy's deposition or expert report indicates that industry standards for the display of merchandise actually exist, other than general common-sense guidelines, such as stacking heavy items on lower shelves. Without 'industry standards' to rely upon, Torphy seems to base his conclusions on his own authority. Because 'knowledge connotes more than subjective belief or unsupported speculation,' there is no reliable foundation for Torphy's expert opinion. Therefore, . . . Torphy does not have sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case.

*Id.* at 81-82 (citing *Daubert*, 509 U.S. at 590). Further, the *Grdinich* court determined that Torphy's testimony was irrelevant because he "base[d] his opinion on non-existent industry standards and has limited professional experience in the field of merchandise display safety." *Id.* at 82.

Dr. Strickland admitted that he "c[a]me up" with his definition of hydrocarbon-bearing zone when he was retained as an expert in this case. Strickland Dep. at 171. In fact, prior to this litigation he admitted that he had ***"never"*** used the term "hydrocarbon-bearing zone" and had only known and utilized the definition of "hydrocarbon zone" in the substantially different reservoir engineering context. *Id.* (emphasis added). Further, before being retained as an expert in this case, Dr. Strickland's experience with hydrocarbon-bearing zones was "largely related to economic viability" and was ***"not related to hydrocarbon-bearing zones for the purposes of defining top of cement under MMS regulations."*** *Id.* at 172 (emphasis added). Dr. Strickland agreed that under an economic viability or reservoir engineering analysis, the M57B interval would not be a produceable hydrocarbon-bearing zone. *Id.* at 180.

Dr. Strickland admitted that there was no industry or regulatory definition of a hydrocarbon-bearing zone and that even after searching industry policies, peer-reviewed publications, and regulatory provisions, he did not find any literature or other sources that defined "hydrocarbon-bearing zone." *Id.* He admitted that the term is not defined by the MMS regulations or by industry organizations such as SPE, SWPLA, or API. *Id.* at 179-82. Likewise, he was not aware of any definition of hydrocarbon-bearing zone utilized by Shell, Chevron, or other oil companies. *Id.* at 182-83. He acknowledged that "there's no industry-defined definition of hydrocarbon-bearing zone that BP should have used when it was analyzing the potential hydrocarbon-bearing zones in the MC252 No. 1 well." *Id.* at 183-84. Dr. Strickland created his definition for this litigation. It is not based on any industry standard, and Dr. Strickland does not have experience in identifying hydrocarbon-bearing zones for top of cement purposes.

Like the experts in *Jenkins* and *Grdinich*, Dr. Strickland has put forth a purportedly applicable standard and provided opinions based on this standard, despite the fact that ***the industry has not adopted any such standard.*** Like the experts in *Jenkins* and *Grdinich*, Dr. Strickland admitted that he has had no experience with hydrocarbon-bearing zones outside the reservoir engineering context, and his experience evaluating these zones was largely limited to economic viability. Dr. Strickland's definition of hydrocarbon-bearing zone was created for this case, has no industry precedent or support, and is admittedly the product of Dr. Strickland's "limited professional experience" with respect to hydrocarbon-bearing zones in the top of cement context. Like the experts in *Jenkins* and *Grdinich*, Dr. Strickland's opinions should not be admitted into evidence at trial.

Additionally, Dr. Strickland's opinion that BP's analysis of the highest hydrocarbon zone was "superficial" and "incomplete" is unreliable as well.  Opening Report at 3 ¶ 2; 5 ¶ 7.  Dr. Strickland did not identify any industry standard, policy, or procedure applicable to a petrophysicists' task of identifying a hydrocarbon-bearing zone, and his opinion that BP's petrophysicist did not apply a reasonable procedure is without support and is unreliable.

## II.  Dr. Strickland's Opinion Is Not Relevant Because He Did Not Apply It To The Facts Of This Case.

According to *Daubert*, Rule 702 "requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'  This condition goes primarily to relevance. 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'"  *Daubert*, 509 U.S. at 591 (citations omitted).  In other words, "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."  *Id.* at 591-92.  Dr. Strickland did not evaluate whether there was flow from the M57B or whether the M57B interfered with operations at any time, and did not apply his own definition of "hydrocarbon-bearing zone" to the M57B.  His opinions are irrelevant and should be excluded.

Courts in the Fifth Circuit have held that "[r]elevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'"  *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (citation omitted); *see also Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).  For example, in *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002), the Fifth Circuit excluded the testimony of Dr. Chad Millet, an orthopedic surgeon, holding that "Dr. Millet's testimony on causation is not helpful to the fact-finder because of his inability to conclude that it was more likely than not that the Synvisc caused the infection in Pipitone's knee.  A perfectly equivocal opinion does not

6

make any fact more or less probable and is irrelevant under the Federal Rules of Evidence." Similarly, in *In re Vioxx Products Liability Litigation*, MDL No. 1657, 2006 WL 6624015, at * 4 (E.D. La. Feb. 3, 2006), this Court held that scientific testimony is relevant only when "there is an appropriate fit between the scientific testimony and the specific facts of the case. Scientific evidence is irrelevant, however, when there is too great an analytical gap between the data and the opinion proffered."

Although Dr Strickland stated in his report that the M57B is "certainly" a hydrocarbon-bearing zone, at his deposition Dr. Strickland testified that he did not form any opinions about whether the M57B interfered with operations or actually flowed. Because Dr. Strickland defined a hydrocarbon-bearing zone as one that "interferes with operations," the fact that he did not determine that the M57B did interfere with operations makes his opinion unreliable and irrelevant. Specifically, Dr. Strickland does not have any opinion about whether the M57B zone: (1) flowed during cement operations, Strickland Dep. at 316; (2) interfered with the negative pressure test, *id*. at 404; or (3) interfered with "any well operations" at all, *id.* at 403. Dr. Strickland testified that he had no opinion about whether the M57B was a causal factor:

> Q.  Do you have an opinion about whether the M57B was a causal factor in any way related to the – to the blowout on April 20th?
>
> A.  Only to the extent that it certainly could be, given the right circumstances.
>
> Q.  It could be a causal factor?
>
> A.  Yes.
>
> Q.  But you don't have an opinion that it was a causal factor?
>
> A.  That's correct.

*Id.* at 187-88. Dr. Strickland's conclusion that the M57B is a hydrocarbon-bearing zone is inconsistent with his own definition of that term and irrelevant to the issues in this case because his conclusion does not satisfy his own purported standard.

## **CONCLUSION**

BP respectfully requests that the Court enter an order precluding Dr. Richard Strickland from testifying at trial regarding both his definition of a "hydrocarbon-bearing zone" and his opinion that the M57B is hydrocarbon-bearing zone under his definition.

Dated: January 24, 2012

Respectfully submitted,

/s / Don K. Haycraft

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration & Production Inc. & BP America Production Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of January, 2012.

/s/  Don K. Haycraft