# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois  60654

J. Andrew Langan, P.C.
To Call Writer Directly:
312-862-2064
andrew.langan@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

January 25, 2012

**VIA E-MAIL**

Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana 70130

Re: In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, MDL No. 2179

Dear Judge Shushan:

BP objects to the taking, or use, of the testimony of Jesse Gagliano for purposes of the Phase I trial.  Mr. Gagliano's decision to set aside his prior invocations of the Fifth Amendment only twenty days before trial is clearly being made to gain a strategic advantage and would substantially prejudice BP and other parties.  As the Fifth Circuit ruled just two weeks ago in *Davis-Lynch v. Moreno*, 2012 WL 45415 (5th Cir. Jan. 10, 2012), a witness is not allowed to withdraw his invocation of the privilege against self-incrimination in these circumstances.

## BACKGROUND

As the Court is well aware, the parties have devoted thousands of hours preparing this case to go to trial on the fundamental premise that certain witnesses were unavailable to testify either because they were deceased or because they had invoked their Fifth Amendment right not to testify.  This reality existed through fact discovery, expert discovery and the ensuing intensive preparation for trial.  Now, after discovery has essentially closed, Halliburton and Jesse Gagliano have come forward to say that Mr. Gagliano suddenly wants to testify.

The basic facts of Mr. Gagliano are known.  He was Halliburton's account representative for the BP account.  He recommended that BP use a foam cement slurry for the production interval on the Macondo well.  Testing that Halliburton did and was aware of before the blowout, and testing by independent labs after the blowout, indicate that the cement slurry that he designed was unstable.

## KIRKLAND & ELLIS LLP

January 25, 2012
Page 2

Throughout this case, largely through its questioning of witnesses or its own employees that it has designated as "experts," Halliburton has raised a number of theories why it is blameless and why BP should be held to blame for the failure of its foam cement job. But what has been missing for Halliburton is anyone from Halliburton who was actually there on the scene designing and involved with decisions regarding the cement slurry, *i.e.*, Mr. Gagliano. Therein lies the potential for mischief – that at the eleventh hour, Mr. Gagliano whether consciously or subconsciously, will attempt to fill his employer's evidentiary void in a way that is favorable to his employer.

### Mr. Gagliano's Prior Testimony to the MBI and Congress

Mr. Gagliano gave a transcribed interview under oath to a Congressional Committee on Energy and Commerce (CEC) on June 11, 2010. That transcript is listed as a trial exhibit in this case. Mr. Gagliano further testified on August 24, 2010 before the Joint Investigation Team. That testimony is inadmissible in this proceeding and was, in any event, of limited scope.

### Mr. Gagliano's Invocation of the Fifth Amendment at his MDL 2179 Deposition

Mr. Gagliano's deposition was originally scheduled for April 4-5, 2011. On March 25, 2011, Halliburton requested that the deposition be delayed at Mr. Gagliano's request. On May 11, 2011, Mr. Gagliano sat for his deposition in MDL 2179. After reading a prepared statement, Mr. Gagliano invoked the Fifth Amendment in response to all substantive questioning on his training, job responsibilities, cementing and the work at the Macondo well. Counsel for the PSC, Anadarko, Transocean and BP prepared for and examined Mr. Gagliano at his deposition.

### BP and Other Parties Prepare Their Cases without Testimony from Mr. Gagliano

Since Mr. Gagliano's invocation of the Fifth Amendment in May 2011, the parties have continued to prepare for the February Phase 1 trial in the absence of testimony from Mr. Gagliano. Specifically, the parties have taken another 182 fact depositions and 63 expert depositions since May 11, 2011 without the benefit of any testimony from Mr. Gagliano. Fact discovery has now closed. The time for expert reports and disclosures has likewise passed (except for the possibility of a few more rebuttal reports). And expert depositions (again aside from something arising from a rebuttal report) are finished.

### ARGUMENT

A witness has the right to invoke the protections of the Fifth Amendment to the U.S. Constitution to prevent being forced to testify against himself. He does not, however, have a

## KIRKLAND & ELLIS LLP

January 25, 2012
Page 3

unilateral right to withdraw his assertion of that privilege, particularly where he does so for strategic reasons or where his withdraw would unduly prejudice the rights of other parties. Both those circumstances exist here. Allowing Mr. Gagliano to testify at this late date would force BP and others to tear down and reconstruct their fact and expert cases with regard to the cementing of the Macondo well. This is simply not possible absent a continuance of the trial – which the Court has made clear is not an option, and which BP does not advocate. The only fair outcome is to not allow Mr. Gagliano testimony (either live or via deposition) at trial. And, as there is no legitimate place for Mr. Gagliano's testimony at the upcoming trial, there is no need for him to be deposed on February 7th and 8th in the midst of full-tilt trial preparations.

The Fifth Circuit recently set out *two* clear guideposts to aid courts in determining when to allow a witness to withdraw a prior assertion of the constitutional privilege against self-incrimination. *First*, withdrawal of a previously asserted Fifth Amendment privilege should be denied "if the [party] is trying to 'abuse, manipulate or gain an unfair strategic advantage over opposing parties.'" *Davis-Lynch*, 2012 WL 45415, at *4. *Second*, withdrawal should also be denied if it cannot be shown that "the opposing party would not experience undue prejudice as a result." *Id.* Mr. Gagliano's proposed testimony flunks both of these tests.

Evaluating whether or not to allow an individual waiver of the Fifth Amendment privilege against self-incrimination following a prior assertion – or multiple, ongoing assertions – of that same privilege is an inherently fact-specific inquiry, the results of which will sensibly vary under different circumstances. *See Davis-Lynch, Inc. v. Moreno*, No. 10-20859, 2012 WL 45415, at *4, 10 n.4 (5th Cir. Jan. 10, 2012) (recognizing, based on prior case law, that inquiry "is dependent on the particular facts and circumstances of each case" and citing cases). But what unites the otherwise diverse case law in this area is the courts' principled wariness over the danger posed by parties' efforts to use *constitutional protections for strategic purposes*. *See, e.g.*, *United States v. Certain Real Property and Premises*, 55 F.3d 78, 84 (2d Cir. 1995) ("[W]ithdrawal of the claim of privilege should [not] be permitted carelessly[;] . . . trial courts must be especially alert to the danger that the litigant might have invoked the privilege primarily to abuse, manipulate or gain an unfair strategic advantage over opposing parties.").

I.  **The Only Plausible Motivation for Mr. Gagliano's 11th-Hour Decision to Testify Is to Gain a Strategic Advantage for Himself or Halliburton.**

In considering whether "the [party] is trying to 'abuse, manipulate or gain an unfair strategic advantage over opposing parties[,]'" courts must evaluate both "the timing and circumstances" of the request for waiver. *Davis-Lynch*, 2012 WL 45415, at *4 (quoting *Certain Real Property*, 55 F.3d at 84). Across jurisdictions, the case law makes clear that, more than

## KIRKLAND & ELLIS LLP

January 25, 2012
Page 4


anything else, considerations of *timing* dominate this inquiry. Or, more specifically, a consideration of the *lateness* of the individual's waiver request.

Late-in-the-process and/or near-to-trial changes in position factor strongly against a finding that the individual may waive the constitutional privilege. *See, e.g.*, *Davis-Lynch*, 2012 WL 45415, at *4; *Certain Real Property*, 55 F.3d at 86-87 (affirming district court's rejection of party's attempt to withdraw prior assertion of Fifth Amendment self-incrimination privilege on "'eve of trial'"); *Interim Investors Committee Holding Claims Against Financial & Business Services, Inc. v. Pavlico*, No. 88-2910, 1990 WL 136663, at *2 (4th Cir. 1990) (affirming bankruptcy court's exclusion of affidavits filed "at the eleventh hour" by parties who had previously asserted Fifth Amendment self-incrimination privilege but then claimed to have waived privilege "on the eve of possible final adjudication"); *Niebur v. Town of Cicero*, 212 F. Supp. 2d 790, 805-06 (N.D. Ill. 2002) (rejecting party's arguments that exclusion of "last-minute testimony" by party who had previously asserted Fifth Amendment self-incrimination privilege but then claimed to have waived privilege "'just prior to trial'" was in error (quoting *Harris v. City of Chicago*, 266 F.3d 750, 754 (7th Cir. 2001)). The reasoning underlying this rough presumption is straightforward. As described by the court in *Davis-Lynch*, such conduct "[g]enerally . . . places the opposing party at a significant disadvantage" and thus courts are on heightened guard against it. *Davis-Lynch*, 2012 WL 45415, at *4.

It is hard to imagine a starker example of a witness timing his decision to testify to maximize a perceived advantage than that of Mr. Gagliano. He decision to testify comes *after* all the other fact witnesses have been deposed, *after* the parties' experts' initial and rebuttal reports have been submitted, *after* exhibits have been identified and deposition designated, *after* motions in limine have been filed – in sum *after* the record is essentially complete. He and his counsel, as well his employer Halliburton and its counsel, had the luxury of surveying the record and then deciding whether or not he should testify, and the further luxury of knowing what all the other parties and experts have said before wading into the breach.

The courts also look to "circumstances" in order to assess whether the privilege against self-incrimination is permissibly waived following its earlier assertion. *Id.* For example, courts have emphasized the significance of whether or not an individual is represented *pro se*. *See, e.g.*, *id.* at *4, 10 nn.21-23 (citing *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 191, 193-94); *Certain Real Property*, 55 F.3d at 84-85; *SEC v. Merrill Scott & Associates, Ltd.*, 505 F. Supp. 2d 1193, 1209-1210 (D. Utah 2007). Sensibly, where there is a *pro se* representation, courts perceive the threat of the individual using the constitutional privilege in a strategic manner as diminished and thus are more willing to permit the privilege's waiver. *Id.* Where, by contrast, there is evidence that the individual requesting waiver is guided by the advice and planning of sophisticated counsel, courts take the opposite tack, disfavoring later waiver requests out of a concern that

## KIRKLAND & ELLIS LLP

January 25, 2012
Page 5

such requests are guided by strategic considerations. *Compare Graystone Nash*, 25 F.3d at 192-94 *with SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 856 (S.D.N.Y. 1997). The prospect of corporate parties, such as Mr. Gagliano's employer, Halliburton, and counsel playing a role in this decision underscores the risk that Mr. Gagliano's decision was made at the encouragement of a sophisticated party with much to gain or lose based on Mr. Gagliano's willingness to suddenly testify to certain facts.

Perhaps the most telling circumstance in this case is that ***there has been no explanation from Mr. Gagliano, Halliburton, or anyone else as to why Mr. Gagliano has decided to testify or why he waited so long to make or reveal this decision.*** There has been no apparent change in the circumstances that apparently caused Mr. Gagliano to decide to invoke the Fifth Amendment (after testifying to the MBI and Congress) that would explain his latest about-face. Without any such explanation, there can be no assurance that the decision was not driven by strategic concerns. It is beyond peradventure to assume that Mr. Gagliano, presumably having invoked the Fifth Amendment to protect his perceived self-interest (or perhaps with an eye toward this very day), has acted out of altruism in deciding that he now wishes to speak.

### II. Allowing Mr. Gagliano to Testify Would Unduly Prejudice BP and Other Parties.

Separate and apart from the concern that the witness is gaming the system, courts have also consistently rejected requests for waivers of a previously invoked Fifth Amendment privilege if the result is undue prejudice to an opposing party. *E.g.*, *Davis-Lynch*, 2010 WL 45415, at *4; *Certain Real Property*, 55 F.3d at 84. Particularly in complex litigation, courts have been sensitive to the threat posed by these reversals of course to the intricate web of interlocking testimony, expert work, and other evidence that each party must build to present or defend against various claims. *See, e.g.*, *Magsil Corp. v. Seagate Technology*, Civil Action No. 08-940, 2010 WL 2710472, at *2 (D. Del. Jul. 7, 2010) (recognizing "undue prejudice" which would arise from "eleventh-hour" alteration of charges and required defenses in light of "complex litigation"); *FDIC v. First Heights Bank, FSB*, No. 95-CV-72722, 1998 WL 34367203, at *12 (E.D. Mich. Mar. 4, 1998) (recognizing undue prejudice which would arise in complex litigation, especially in form of threat to ability to maintain trial deadlines, in event of alteration to parties' complaint).

Here the prejudice is extreme. BP and others may have a few hours to cross-examine Mr. Gagliano prior to trial, but they will have no ability to ask any other fact witness any questions based on what Mr. Gagliano says. Especially in this case, where much of the testimony of record will be introduced via deposition designations, they will have no ability to test or check his assertions with any other witnesses. Likewise there is no mechanism in place – nor would it be feasible to put a sufficient mechanism in place – to supplement, rebut, and take discovery

## KIRKLAND & ELLIS LLP

January 25, 2012
Page 6

concerning any of the several expert opinions that are likely to be impacted by Mr. Gagliano's testimony given his central role in one of the most technical aspects of this case. By rights, Mr. Gagliano's testimony would necessitate re-opening the record as to fact witnesses and another complete round of expert discovery for all those opining on issues related to the use of cement at the Macondo well.

But the prejudice is more than just more work on the eve of trial. Mr. Gagliano has placed himself in the unique position of being able to formulate and give testimony that, in the current posture of the case, cannot be tested, contradicted, or impeached. There is a reason witnesses are not given such opportunities as a matter of course. Without the checks and balances provided by the discovery process, even the most honest witness may be sorely tempted to embellish his account to his advantage.

Mr. Gagliano's critical role in the cementing of the Macondo well makes his reinsertion into the trial lineup particularly troubling. His testimony has the potential to drastically impact much of the work the parties have done over the past several months. There is a reason for all the rules and process governing discovery so as not to give any party an unfair advantage. The Fifth Amendment protects against self-incrimination. It does not grant an affirmative right to skip the discovery process and spring testimony on other parties on the eve of trial.

## CONCLUSION

Mr. Gagliano chose to assert his right *not to testify*. He has no parallel right *to testify*, particularly where, as here, his decision to weigh in with testimony is likely motivated by strategic concerns and would result in substantial undue prejudice to BP.

Very truly yours,

/s/ J. Andrew Langan, P.C.

cc:   Richard C. Godfrey, P.C.
      Robert C. "Mike" Brock
      Don K. Haycraft
      Steve Herman
      James Roy

## KIRKLAND & ELLIS LLP

January 25, 2012
Page 7

      Mike Underhill
      Luther Strange
      Corey Maze
      Taylor Caldwell
      Trey Phillips
      MDL 2179 Defense Liaison Counsel