# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois 60654

Andrew Langan, P.C.
To Call Writer Directly:
(312) 862-2064
andrew.langan@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

January 26, 2012

**VIA EMAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court
500 Poydras Street, Room B-345
New Orleans, LA 70130

Re:   In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, MDL No. 2179

Dear Judge Shushan:

BP submits this reply to correct some of the misstatements in Mr. Williamson's January 24, 2012 email on the duplication of 30(b)(6) source control topics to BP. As fully explained in BP's January 12, 2012 letter to the Court, the PSC has already conducted multiple 30(b)(6) depositions of BP witnesses regarding the source control methods used to respond to the Macondo incident and should not be permitted to conduct duplicative discovery.

*1. The PSC's own filings confirm that the initial source control topics covered Phase II discovery*

While Mr. Williamson seeks to differentiate the source control discovery already taken in his recent email by suggesting these topics were only intended for Phase I, this position is opposite to the position the PSC took regarding the same 30(b)(6) topics in their April 13, 2011 Motion to Adopt a Trial Plan ("Mot. for Trial Plan" (Doc. No. 1951)).

In that filing, the PSC (and others) unsuccessfully argued that the initial 2012 trial should include the source control efforts and that a "trial of Source Control issues ha[s] been contemplated for many months." (Mot. for Trial Plan, p. 7). In support of this assertion, the PSC emphasized to the Court that discovery about the post-spill efforts of the parties was already underway, citing specific discovery requests and informing the Court that:

> On February 17, 2011, in a response to the request by Magistrate Judge Shushan that all parties exchange 30(b)(6) Topics related to the February 2012 Trial

Hong Kong    London    Los Angeles    Munich    New York    Palo Alto    San Francisco    Shanghai    Washington, D.C.

K&E 21267317.2

KIRKLAND & ELLIS LLP

January 26, 2012
Page 2

> Plaintiffs circulated proposed topics to BP (and the other major defendants) which specifically included:
>
>> The existence, nature and contents of any discussions with MOEX, Anadarko, Transocean, Cameron and/or Halliburton regarding the potential costs, risks, benefits and other analyses or evaluations of potential **methods to cap, control, contain, shut-in and/or kill the Macondo Well after April 20, 2010.**
>>
>> The existence, nature, scope, contents and results of any and all geological, technical, engineering, professional, management, economic and/or other testing, evaluation, study and/or analysis of any potential **method or technique to cap, control, contain, shut-in and/or kill the Macondo Well after April 20, 2010**, including the possible risks, benefits or other consequences thereof.

Mot. for Trial at p. 11 (emphasis in original).

It is clear that the PSC intended these initial 30(b)(6) topics to cover BP's post-incident source control efforts, and not, as Mr. Williamson now suggests, BP's pre-spill preparedness. Correspondingly, as explained in BP's initial Jan. 12, 2012 letter, BP identified and produced senior BP employees who ran the project teams for each of the source control methods utilized during the response effort for depositions.

   *2. The cherry-picked quotations of BP corporate witnesses are inaccurate or incomplete.*

Mr. Williamson's email further seeks to establish that BP did not intend, nor prepare, its witnesses to testify on the source control methods utilized during the response. The quotations the PSC provides, however, fail to include relevant testimony and do not establish the points the PSC is trying to make.

For example, the PSC suggests that Mr. Thierens was not the proper witness to discuss BOP intervention, yet fails to include that Mr. Thierens expressly testified that he was the person most knowledgeable at BP on the post-spill BOP intervention issues:

> Q. (By Ms. Kuchler) So my question to you, Mr. Thierens, is: Do you consider yourself to be the person most knowledgeable on BOP intervention issues in order to speak as BP's corporate representative on those topics?

K&E 21267317.2

## KIRKLAND & ELLIS LLP

January 26, 2012
Page 3

> A. In -- in the context of what I did and what I saw, probably, yes.
>
> Q. (By Ms. Kuchler) Can you think of anyone else who would be more knowledgeable on that than you would be?
>
> A. At this time, no.

June 10, 2011 H. Thierens Dep. at 651 (objection omitted). The PSC also tries to demonstrate that Mr. Thierens was not knowledgeable about BOPs prior to the incident, but such testimony has no bearing on Mr. Thieren's suitability as the BP corporate witness for BOP intervention during the response.

The other testimony cited by the PSC also fails to support their arguments. For instance, the fact that Kevin Kennelley was not prepared to talk about the Capping Stack is only logical. He was the BP vice president who led the Containment & Disposal Project that used free standing risers to collect hydrocarbons and was not designated to speak on the Capping Stack. Instead, BP designated Richard Lynch, who led the Capping Stack team for a portion of the response, to speak for the company on that method. Mr. Lynch clearly testified that he was the corporate witness on several source control methods, including the Capping Stack:

> Q. It's my understanding that you're here today as a 30(b)(6) designee of BP on the near-term containment efforts which involve the cofferdam, top hats, and the capping stack. Is that your recollection of that?
>
> A. That is correct.

May 19, 2010 R. Lynch Dep. at 308.

Similarly, Mr. Lynch was unable to speak to the effect of burst discs on well integrity, but the PSC failed to include the full testimony where Mr. Lynch then identified Paul Tooms as the most knowledgeable person on issues related to the burst discs and well integrity during the response. *See* May 19, 2011 R. Lynch Dep. at 329 ("Q. I understand that you might not be the best person than to answer that question. Would who be? A. I would say Paul Tooms. Q. Mr. Tooms was studying the integrity of the well? A. Yeah, he was -- he was leading the engineering teams that were working that, yes."). Not surprisingly, BP had designated Mr. Tooms to testify on "well integrity issues," such as the burst discs, occurring as part of the response.

In turn, the testimony cited by the PSC allegedly shows Mr. Tooms's lack of pre-spill knowledge of burst discs and well integrity, but does not involve the response-related well integrity issues for which he was actually designated. *See* June 17, 2011 P. Tooms Dep. at 483

KIRKLAND & ELLIS LLP

January 26, 2012
Page 4

("I was designated as the expert for the assessment of Well Integrity on the Macondo Well post the incident.").

*3. The other points raised by the PSC do not warrant duplicative discovery*

The PSC also argues that its new source control topics are more detailed, but the same information was sought and provided by BP corporate witnesses during the prior depositions. For example, Mr. Lynch testified regarding the timeline for constructing Top Hats and which contractors were involved in the construction of the devices. *See, e.g.*, May 19, 2010 R. Lynch Dep. at 331, 333 (testifying that construction began in early May 2010 and that all Top Hats were fabricated by Wild Well Control personnel). Mr. Kennelley also provided key information regarding the Containment & Disposal Project, testifying extensively about how the system was constructed, the key dates, and the reasons for any delays. June 29, 2011 K. Kennelley Dep. at 46-47, 60-70, 114-116.

Finally, the PSC argues that it should be entitled to duplicative depositions because BP has allegedly made additional productions related to source control since the original 30(b)(6) depositions. Setting aside the fact that BP complied with the Court's requirement that all documents relied upon by a 30(b)(6) witness be produced prior to their depositions, the problem of which the PSC complains is one of its own making. The PSC sought to proceed with Phase II source control topics during the Phase I 30(b)(6) process while it knew that documents related to source control were still being produced. The PSC was free to withdraw the Phase II source control topics once the trial plan clearly established the distinct phases, but chose to proceed. BP should not be punished for that choice.

BP has met its obligation to produce corporate witnesses on the specific source control methods utilized during the response. There is no good cause for the PSC to get a second round of 30(b)(6) depositions where, as here, BP has already produced documents and multiple corporate witnesses on the identical subject matter. The PSC's proposed Topic 1 in its October 20, 2011 draft 30(b)(6) Notice to BP should be eliminated.

Sincerely,

Andrew Langan, P.C.

Andrew Langan, P.C.

## KIRKLAND & ELLIS LLP

January 26, 2012
Page 5


AL /cs

cc:     MDL Liaison and Coordinating Counsel

K&E 21267317.2