UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
|    "Deepwater Horizon" in the Gulf | * | |
|    of Mexico, on April 20, 2010 | * | SECTION J |
| | * | |
| Applies to: | * | JUDGE BARBIER |
| 10-2771, 10-4536, 11-1054, 11-1986, and | * | |
| All Cases | * | MAGISTRATE SHUSHAN |

## ORDER AND REASONS

### [As to Halliburton's and BP's Cross-Motions for Partial Summary Judgment Regarding Indemnity]

Halliburton Energy Services, Inc. ("Halliburton") and the BP entities ("BP") have cross-moved for partial summary judgment on the issue of whether Halliburton is owed contractual indemnity from BP for certain claims. (Rec. Docs. 4767, 4976).[1] Halliburton asserts that the contract[2] between it and BP ("Contract") required BP to defend and indemnify Halliburton against any and all claims related to a blowout or uncontrolled well condition and relating to pollution and/or contamination from the reservoir. Thus, Halliburton seeks a ruling that it is entitled to indemnity, including payment of defense costs, from BP for third-party claims related to the DEEPWATER HORIZON incident. BP's Cross-Motion seeks a ruling that, as a matter of law, it is not required to indemnify Halliburton for punitive damages, fines, or penalties. Additionally, BP opposes Halliburton's Motion on the grounds that Halliburton committed fraud, breached the contract, and/or materially increased risks to BP as indemnitor, and such acts discharge BP's

---

[1] Other briefs related to these motions appear at Record Documents 4977, 5050, and 5052.

[2] On or around April 15, 2009, BP Production and Exploration Inc. entered into a contract with Halliburton wherein Halliburton agreed to perform cementing operations and related support services in the Gulf of Mexico.

indemnity obligations.

The Contract's indemnity clauses are contained in Section 2, Clause 19, which provides in pertinent part (bold type omitted):

> 19.4 Pollution
> (a) . . . COMPANY [BP] shall save, indemnify, release, defend and hold harmless CONTRACTOR [Halliburton] GROUP from and against any claim of whatsoever nature arising from pollution and/or contamination including without limitation such pollution or contamination from the reservoir or from the property or equipment of COMPANY GROUP arising from or related to the performance of the CONTRACT.
>
> (b) . . . CONTRACTOR shall save, indemnify, release, defend and hold harmless COMPANY GROUP and SERVICE COMPANY GROUP from and against any claim of whatsoever nature arising from pollution occurring on the premises of CONTRACTOR GROUP or originating from the property or equipment of CONTRACTOR GROUP located above the surface of the land or water arising from or relating to the performance of the CONTRACT.
>
> . . .
>
> 19.6 Other COMPANY Responsibilities
> Subject to Clauses 19.1 and 19.4(b), but notwithstanding anything contained elsewhere in the CONTRACT to the contrary, COMPANY shall save, indemnify, release, defend and hold harmless CONTRACTOR GROUP against all claims, losses, damages, costs (including legal costs) expenses and liabilities resulting from:
>  (a) loss or damage to any well or hole (including the cost to re-drill);
>  (b) blowout, fire, explosion, cratering, or any uncontrolled well condition (including
>  the costs to control a wild well and the removal of debris);
>  (c) damage to any reservoir, aquifer, geological formation or underground strata or
>  the loss of oil or gas therefrom;
> . . .
>
> 19.7 Indemnities in their Entirety
> All exclusions, releases of liabilities and indemnities given under this Clause (save for those under Clauses 19.3(a) and 19.3(b)) and Clause 21 shall apply irrespective of cause and notwithstanding the negligence or breach of duty (whether statutory or otherwise) of the indemnified PARTY or any other entity or party and shall apply whether or not the claim, liability, damage, or expense in question is:

(a) predicated on sole, joint or concurrent fault, negligence (whether active, passive or gross), strict liability, statutory duty, contractual indemnity or otherwise at law, or
(b) sought directly or indirectly by way of recovery, indemnification, or contribution by any person or entity against COMPANY GROUP, SERVICE COMPANY GROUP, or CONTRACTOR GROUP as the case may be.

This Court recently issued an Order and Reasons pertaining to similar contractual indemnity issues between Transocean and BP. (Rec. Doc. 5446, hereinafter "Transocean Indemnity Order"). The holdings in that Order resolve many of the issues presented here.[3] Accordingly, for reasons stated in the Transocean Indemnity Order, the Court finds as follows:

1. Subject to the statements below, BP is required to indemnify[4] Halliburton for third-party compensatory claims that arise from pollution or contamination that did *not* originate from the property or equipment of Halliburton located above the surface of the land or water, even if Halliburton's gross negligence caused the pollution. (*See* Transocean Indemnity Order, Rec. Doc. 5446 at 10-18).[5] The Court does not express an opinion as to whether Halliburton's conduct amounted to gross negligence or otherwise.

2. BP does not owe Halliburton indemnity to the extent Halliburton is held liable for punitive

---

[3] One notable difference between the instant Motions and the issues addressed in the Transocean Indemnity Order is that here BP does not dispute that the language of the indemnity clause includes Halliburton's gross negligence. (*Cf.* Transocean Indemnity Order, Rec. Doc. 5446 at 5-10). Instead, BP's arguments largely focus on whether public policy permits such indemnification.

[4] As was done in the Transocean Indemnity Order, here the Court uses the term "indemnity" to refer to a contract whereby the parties agree ahead of time that one party will bear the risk of certain damage occurring to a third party, and will indemnify the other party to the contract against such claims or damage. This is distinguished from what may be called a "release" or "exculpatory clause," wherein one party to a contract agrees to release the other from liability for damage occurring to the former party. (*See* Transocean Indemnity Order, Rec. Doc. 5446 at 11). Gross negligence will invalidate a release or exculpatory clause.

[5] Clause 19.7(a) expressly stated that Halliburton would be indemnified for its gross negligence. It is also noted that, like the drilling contract between Transocean and BP, the Contract between Halliburton and BP included reciprocal indemnities wherein Halliburton assumed certain liabilities; e.g., its employees, equipment, and pollution emanating from its equipment above the surface.

damages. (*See* Transocean Indemnity Order, Rec. Doc. 5446 at 18-19). The Court does not express an opinion as to whether Halliburton will be held liable for punitive damages.

3. BP does not owe Halliburton indemnity to the extent Halliburton is held liable for civil penalties under Section 311(b)(7) of the Clean Water Act ("CWA"), 33 U.S.C. § 1321(b)(7). (*See* Transocean Indemnity Order, Rec. Doc. 5446 at 19-23).[6] The Court does not express an opinion as to whether Halliburton will be held liable for CWA civil penalties.

4. The Court defers ruling on whether any penalties or fines under the Outer Continental Shelf Lands Act ("OCSLA") are subject to contractual indemnity.[7]

5. Whether Halliburton breached the contract, and whether that breach was of a type that would invalidate the indemnity clause, cannot be determined on summary judgment. Similarly, the Court cannot determine here whether an act was committed that materially increased the risk, or prejudiced the rights of BP as indemnitor, so as to invalidate the indemnity. The Court defers ruling on these issues. (*See* Transocean Indemnity Order, Rec. Doc. 5446 at 23-25).

---

[6] The federal government has not asserted civil penalties directly against Halliburton under Section 311(b)(7) of the CWA. Indeed, Halliburton has not yet sought indemnity for fines and penalties. (Halliburton Reply p.4 n.4, Rec. Doc. 5050 at 9 n.4). However, at the moment it is an open question whether a third-party defendant (such as Halliburton) could be held liable to a defendant (such as BP) for CWA civil penalties via equitable contribution or indemnity. (*See* Transocean Indemnity Order, Rec. Doc. 5446 at 22 & n.18). Assuming *arguendo* that CWA civil penalties may be indirectly asserted against Halliburton via equitable contribution or indemnity, **contractual** indemnity would be ineffective to shift these penalties for public policy reasons. (*See id.* at 19-23). The Court expresses no opinion at this time as to whether Halliburton may be held liable under any theory for civil penalties under the CWA.

[7] BP asserts in its Opposition Brief that the Bureau of Safety and Environmental Enforcement ("BSEE") has initiated an enforcement action against Halliburton under OCSLA that may lead to a penalty assessment. (BP Memo. in Opp'n p.19-20, Rec. Doc. 4976-1 at 28-29). BP contends that fines and/or penalties under OCSLA, like CWA civil penalties and punitive damages, are primarily designed to punish and deter, and therefore may not be shifted by contractual indemnity. This contention appears correct; however, it is not entirely clear which fine or penalty BSEE threatens to impose upon Halliburton. BP has not cited to the specific statute or regulation under which BSEE is proceeding or presented documents that evince BSEE's enforcement action. Consequently, while BP's argument certainly appears meritorious, the Court defers ruling on this issue.

6. BP does not owe Halliburton the expenses of establishing its right to indemnity. (*See* Transocean Indemnity Order, Rec. Doc. 5446 at 25-27).

7. BP is not obligated to fund Halliburton's defense at this time. (*See* Transocean Indemnity Order, Rec. Doc. 5446 at 27-28).

A remaining issue that was not addressed in the Transocean Indemnity Order concerns fraud. BP alleges in its Cross Complaint and Third Party Complaint that Halliburton made fraudulent statements and fraudulently concealed material information concerning the cement tests it conducted and other matters, and that BP, relying on these statements, allowed Halliburton to pour the unstable cement slurry that led to the uncontrollable well and blowout. BP asserts that the language of the indemnity does not extend to fraud, nor would public policy permit such indemnification, given that fraud involves willful misconduct exceeding gross negligence. Halliburton denies that it committed fraud, but also argues that BP's allegations are merely breach of contract claims cloaked as fraud. Halliburton also argues that, in any respect, Clause 19.7 is broad enough to include fraud.

The Court agrees that fraud could void an indemnity clause on public policy grounds, given that it necessarily includes intentional wrongdoing. *See Atel Maritime Investors*, No. 08-1700, 2010 U.S. Dist. LEXIS 47834 at *9 (E.D. La. May 13, 2010) ("To prevail on a fraud claim, a party must prove that . . . (4) the deceiving party intended the deceived party to rely on the misrepresentation or nondisclosure . . . ."); *see also Restatement (Second) of Contracts* § 162, Cmt. (a) ("In order that a misrepresentation be fraudulent within the meaning of this Section, it must not only be consciously false but must also be intended to mislead another."). The Court is also mindful that "mere failure to perform contractual obligations as promised does not constitute fraud but is instead breach of contract." *Kevin M. Ehringer Enter. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011)

5

(applying Texas law). Consequently, and similar to holding number (5) above, there are material issues of fact that preclude summary judgment on this issue. The Court defers ruling on this issue.

Accordingly,

**IT IS ORDERED THAT** Halliburton's (Rec. Doc.4767) and BP's (Rec. Doc. , 4976) Cross-Motions for Partial Summary Judgment are **GRANTED IN PART** and **DENIED IN PART**, as set forth above.

New Orleans, Louisiana, this 31st day of January, 2012.

_____
United States District Judge