

DONALD E. GODWIN, SHAREHOLDER
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:     214.939.4412
DIRECT FAX:      214.939.4803
DGodwin@GodwinRonquillo.com

DALLAS  HOUSTON

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041

214.939.4400
800.662.8393
214.760.7332 Fax

GodwinRonquillo.com

January 30, 2012

**BY EMAIL**

The Honorable Sally Shushan
United States District Court
500 Poydras Street, Room B-345
New Orleans, Louisiana  70130

      Re:    Response in Opposition to BP's Letter Brief Opposing the Taking or Use of Testimony by Jesse Gagliano.

Dear Judge Shushan:

      Halliburton Energy Services, Inc. ("HESI") responds in opposition to BP's January 25, 2012, motion to bar the taking of Jesse Gagliano's deposition and to exclude use of Mr. Gagliano's testimony at trial, and respectfully shows the Court as follows.

## SUMMARY OF THE ARGUMENT

      The Court must allow Gagliano to testify unless (1) there is clear evidence that his decision to waive the privilege is motivated by abusive, strategic gamesmanship and (2) BP will suffer undue prejudice.[1]  Because BP cannot demonstrate either abusive gamesmanship or undue prejudice, the Court should deny its unfounded motion.

## THE ACCURATE FACTUAL BACKGROUND

      In support of its objection to Gagliano's testimony, BP mischaracterizes the facts in order to paint a portrait of prejudice and abuse.

A.    The Disclosure Was Timely

      BP claims that Gagliano decided "to set aside his prior invocations of the Fifth Amendment only twenty days before trial . . ." BP's Brief at 1.  This claim is false.  On January 13, 2012, HESI's counsel announced in open court that Gagliano had decided the previous day to waive his previously-asserted Fifth Amendment privilege and subject himself to

---

[1] BP is the only party that objects to Gagliano's waiver of his Fifth Amendment privilege.

The Honorable Sally Shushan
January 30, 2012
Page 2

a deposition and trial testimony. *See* Ex. A [Working Group Conference Tr. at 49-51.]; *see also* Jan. 18, 2012 Order, ¶ 10 [Rec. Doc. 5272]. Trial is set for February 27, 2012. Gagliano's decision was made 45 days before trial, not 20 days, and HESI promptly advised all counsel of that decision.

At the January 13, 2012 Working Group Conference, HESI also announced its understanding that Gagliano was willing to be deposed at the earliest practicable time. *Id.* To that end, HESI proposed February 3-4, 2012, but those dates did not initially work for the PSC. His deposition is currently scheduled for February 7-8, 2012. In the context of this rapidly paced litigation, Gagliano's decision to waive his Fifth Amendment privilege is hardly an "11th hour" change of position. BP and others will depose Gagliano 20 days before trial starts and he will likely not be called to testify live at trial for several weeks (or more).

It is strikingly inconsistent for BP to oppose Gagliano's testimony when it sought leave to designate a substitute cement *expert* after the Court disqualified Fred Sabins and CSI. Just a few weeks ago, BP argued that the designation of a new expert in January 2012 would not create undue prejudice for other parties, notwithstanding the fact that BP would obtain a "second bite at the apple" with its knowledge of HESI's response to Sabins. The substitute expert report was submitted on January 9, 2012, *only three days* before Gagliano decided to waive his Fifth Amendment privilege. It is absurd for BP to argue on one hand that it will be prejudiced by Gagliano's testimony, and on the other hand that requiring HESI to analyze a new expert report, depose a new expert, designate a rebuttal expert, and defend its rebuttal expert's deposition would not prejudice HESI.

B.  Gagliano Is Not a "Surprise Witness"

BP attempts to create the impression that Gagliano's testimony will prejudice it by injecting unknown or unanticipated facts into this litigation. Although BP acknowledges that "[t]he basic facts of Mr. Gagliano are known," it claims it will be forced to "tear down and reconstruct [its] fact and expert cases with regard to the cementing of the Macondo well." BP Brief at 1, 3. BP's prior access to Gagliano and other evidence belies any such claim.

On May 14, 2010, members of BP's Bly team interviewed Gagliano. *See* Ex. B [Ex. 307, handwritten notes of Brian Martin's interview of Gagliano]. On June 11, 2010, Gagliano was interviewed by the Congressional Committee on Energy and Commerce, and the ninety-six page written transcript of that testimony has been available to BP. *See* Ex. C. During the August 24, 2010 USCG/BOEM Marine Board of Investigation hearing, BP's lead trial counsel cross-examined Gagliano at length. *See* Ex. D at 240-407 [Transcript of Gagliano's testimony at Aug. 24, 2010 MBI hearing, TREX 60366].

In addition to its prior cross-examinations of Gagliano, BP deposed numerous witnesses who interacted with Gagliano, had knowledge of Gagliano's activities, or testified about topics similar or identical to the likely scope of Gagliano's testimony. These individuals include

The Honorable Sally Shushan
January 30, 2012
Page 3

Gagliano's supervisor, the cement lab technicians and cement lab managers, and the cement operators on the *Deepwater Horizon* who executed the primary cement job on the production casing.[2]

BP has long had access to the documents associated with Gagliano's work and his emails. Prior to the Incident, Gagliano physically officed in BP's building and interacted on a face-to-face basis with BP's employees. A large number of Gagliano's e-mails were sent via BP's own e-mail server and HESI has produced more than 9,500 documents from Gagliano's custodial file. In addition, notwithstanding Gagliano's assertion of the Fifth Amendment privilege at his deposition on May 11, 2011, counsel for BP and the other parties were prepared with and posed detailed questions to him that touched virtually every aspect of his activity on the Macondo well. Accordingly, Gagliano's future testimony will not introduce novel, unforeseeable, or unanticipated facts into the litigation sufficient to cause undue prejudice to BP.

C.   Gagliano Justifiably Invoked and Waived his Fifth Amendment Privilege

The Fifth Amendment privilege against self-incrimination "protects a person . . . against being incriminated by his own compelled testimony or communications." *Fisher v. United States*, 425 U.S. 391, 409 (1976). The privilege "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." *Kastigar v. United States*, 406 U.S. 441, 445 (1972).

BP implies that Gagliano's invocation was somehow unwarranted, or motivated only by an attempt to abuse the civil litigation process via strategic gamesmanship. But BP wholly ignores the fact that there is an ongoing federal criminal investigation of the Macondo blowout. On or about June 1, 2010, the Attorney General of the United States announced the criminal investigation, and a federal grand jury has been convened to investigate the matter. Prior to invoking his Fifth Amendment privilege at his deposition, Gagliano testified that he understood that he was a subject of the ongoing criminal investigation involving the *Deepwater Horizon* incident. *See* Ex. E [Gagliano Dep. at 15:11-17:12]. And a recent article in the Wall Street Journal reported that the Department of Justice is expected to announce early this year the

---

[2]   More specifically, BP deposed: (1) Ronnie Faul, the technology manager for the Gulf of Mexico and Gagliano's supervisor at the time of the blowout, who met with Gagliano after the blowout to review lab reports and OptiCem models; (2) Richard Dubois, the cement lab manager for HESI's Gulf of Mexico fluids lab in Broussard, Louisiana who spoke directly with Gagliano regarding cement test results; (3) Tim Quirk, the area lab manager for the Gulf of Mexico who testified about lab testing procedures; (4) Phyllis Stelly, the principal lab technician at the Broussard lab who spoke directly with Gagliano regarding cement test results; (5) Quang Nguyen, a field engineer who worked with Gagliano, ran OptiCem reports for Gagliano, and discussed the Macondo centralizer issue with Gagliano; (6) Ben Richard, a lab technician at the Broussard lab who testified about lab testing procedures for the Macondo cement; (7) Sarah Sanders, an Application Support Group employee at HESI who testified about the Viking system used by Gagliano to report cement lab results; (8) Nathaniel Chaisson, a HESI Technical Professional who oversaw the pumping of the Macondo cement job on April 19, 2010, and (9) Vince Tabler, a HESI cement unit operator on the *Deepwater Horizon* at the time of the blowout.

The Honorable Sally Shushan
January 30, 2012
Page 4

criminal charges it will bring against companies and individuals arising from this investigation. *See* Ex. F ["Criminal Charges are Prepared in BP Spill," THE WALL STREET JOURNAL, Dec. 29, 2011]. Gagliano's invocation of his constitutional privilege at the time was entirely legitimate, and there is no evidence to suggest otherwise.

BP suggests that the only possible motive for Gagliano's decision to testify is to benefit himself or HESI. This suggestion is misleading for at least four reasons. First, with one isolated exception,[3] Gagliano is not named as a party in the myriad underlying MDL cases, and thus he does not stand to benefit personally by "strategic gamesmanship" in the way an individual who is an actual plaintiff or defendant in interest might benefit. Second, HESI does not direct or control Gagliano — he has independent, experienced criminal counsel who presumably counseled him with regard to assertion of his Fifth Amendment privilege when he became the subject of a criminal investigation and who, presumably, counseled him with respect to waiver. Third, because the criminal investigation is ongoing, Gagliano may receive no "benefit" at all by waiving his Fifth Amendment privilege.[4] Fourth, in light of the parallel criminal investigation, BP cannot credibly claim that Gagliano's assertion of the privilege was unwarranted, especially since three of its own employees have invoked their Fifth Amendment privilege (Brian Morel, Robert Kaluza, and Mark Hafle). Unfounded speculation about Gagliano's motives is no reason to preclude his testimony.

## ARGUMENT & AUTHORITIES

A.  BP Argues Inconsistent Positions Regarding Waiver

In its Brief, BP objects to the taking or use of Gagliano's testimony prior to the commencement of trial. BP takes the *exact opposite* position in its in limine briefing concerning whether or when the Court should draw adverse inferences from the decision of a witness to invoke his Fifth Amendment privilege. In its briefing, BP suggests that the Court defer any decision regarding adverse inferences "until *all phases* of trial are complete," on the ground that there is a "non-trivial chance that the circumstances that gave rise to the decision to invoke the Fifth Amendment will have changed, at which point BP expects that these individuals will be in a position to testify in full." *See* Ex. G at 2, 9 [Rec. Doc. 5112-1]; Ex. H at 2, 5-6 [Rec. Doc.

---

[3] Gagliano is a named defendant in only one case before this court, *Plaquemines Parish School Board v. BP p.l.c. et al.*, Cause No. 2:11-cv-00348-CJB-SS, which was removed from the Twenty-Fifth Judicial District Court for the Parish of Plaquemines, State of Louisiana on February 11, 2011 (Original Cause No. 58-415, Division B). *See also* Ex. E at 13:13-20 [Gagliano depo].

[4] BP feigns concern about a "potential for mischief" in this case because Gagliano might, consciously or unconsciously, attempt to benefit his employer by filling in evidentiary voids to HESI's benefit. *See* BP's Brief at 2. But this is true in *every* case where an employee gives testimony favorable to his employer. If anything, there is less risk of potential bias in favor of HESI in this case, because Gagliano must balance any conscious or unconscious desire to benefit his employer against the potential that his waiver of his Fifth Amendment privilege may increase his personal exposure to criminal liability.

The Honorable Sally Shushan
January 30, 2012
Page 5

5355]. This "non-trivial" chance has occurred well before trial and BP's inconsistency could not be more blatant or self-serving. Although BP's previous inconsistent position "does not necessarily operate as a formal estoppel," its "reversal on this point seriously undermines its present argument." *See In re Broussard Bros., Inc.*, No. 03-1428, 2004 U.S. Dist. LEXIS 20691, at *3 (E.D. La. October 13, 2004) (Barbier, J.). HESI, after all, would welcome the opportunity to examine BP witnesses at trial who have heretofore asserted their Fifth Amendment privileges (*i.e.,* Mark Hafle, Bob Kaluza, Brian Morel), so long as it can depose them before trial.

B.  *Moreno* Supports Allowing Gagliano's Testimony.

BP relies heavily on *Davis-Lynch, Inc. v. Moreno*, No. 10-20859, 2012 U.S. App. LEXIS 549 (5th Cir. Jan. 10, 2012) to support its claim that Gagliano is not allowed to withdraw his invocation of the privilege against self-incrimination. But *Moreno* supports *permitting* Gagliano's testimony. *Moreno* involved two defendants who initially invoked their Fifth Amendment privilege and then later attempted to waive it. *Id*. at *1-2. One defendant, Pucek, waited until after plaintiff filed a summary judgment motion and then attempted to waive his Fifth Amendment privilege within the time allowed to respond to the motion. The Fifth Circuit affirmed the district court's decision denying this withdrawal, because it was invoked for the first time in the face of what would otherwise have been a case-dispositive summary judgment motion personally detrimental to Pucek. *Id*. at *18-19. There was ample reason to suspect Pucek's gamesmanship: (1) he was a named defendant in the case; (2) he was accused of embezzling over $15 million dollars; and (3) a no-evidence summary judgment against him would have subjected him to personal liability for RICO violations, Texas statutory theft, fraud, and other claims. *Id*. at *1-7.

BP's Brief omits any mention of the other defendant, Moreno, who waived his Fifth Amendment privilege at a contempt hearing and subjected himself to cross-examination. *Id*. at *4. Moreno's waiver occurred a month *before* the summary judgment motion was filed, and provided the plaintiff with at least several weeks in which to take his deposition.[5] *Id*. at *17-18. Finding an abuse of discretion, the Fifth Circuit *reversed* the district court's order denying Moreno's withdrawal of his Fifth Amendment privilege. *Id*. at *18, 34. The court noted that the Supreme Court has cautioned against making invocation of Fifth Amendment privileges unnecessarily burdensome in the civil context, and that it is important to "allow as much testimony as possible to be presented in the instant litigation." *Id*. at *18.

---

[5] Moreno's waiver also occurred a month before the close of discovery in that case. *Id*. at *18. The court's holding does not rest on the timing of the waiver in relation to the close of discovery, but rather on the fact that Moreno waived his rights a full month prior to being subjected to a summary judgment motion, was then cross-examined at the contempt hearing, and afterwards made himself available for a deposition. The fact that discovery has closed has reduced significance in this multi-phased proceeding, as fact and expert witnesses have been designated, disclosed, and deposed after the applicable deadline for discovery.

The Honorable Sally Shushan
January 30, 2012
Page 6

BP's selective reliance upon *Moreno* should be rejected. BP has always known of the possibility that those witnesses who have asserted the Fifth Amendment privilege might seek to waive it upon further evaluation. BP has known of Gagliano's decision to waive his privilege since January 13, 2012 — more than 45 days before trial. Gagliano's deposition is currently scheduled to commence on February 7, 2012. Gagliano's decision is obviously not motivated by fear of an adverse, case-dispositive summary judgment ruling against him, since there is no such motion pending. *Moreno* suggests that it would be reversible error for the Court to deny Gagliano's waiver because: (1) that waiver was announced 45 days before the first phase of this trial; (2) BP may cross-examine Gagliano (for the third time) at his deposition in advance of trial; and (3) he is not motivated by a personal desire to evade a case-dispositive summary judgment motion. There is absolutely no evidence to suggest Gagliano's waiver is abusive or manipulative.

C.     Courts Liberally Permit Withdrawal Of The Fifth Amendment Privilege

A district court should be "*especially inclined to permit withdrawal* if there are no grounds for believing that opposing parties suffered undue prejudice . . ." *Moreno*, 2012 U.S. App. LEXIS 549, at *13 (emphasis added) (quoting *United States v. Certain Real Prop. And Premises*, 55 F.3d 78, 84 (2nd Cir. 1995). The Fifth Circuit adopted the Second Circuit's position that district courts "*should take a liberal view towards such applications*, for withdrawal of the privilege allows adjudication based on consideration of all material facts to occur." *Certain Real Prop. And Premises*, 55 F.3d at 84 (emphasis added). Despite BP's heavy reliance on *Moreno*, the main thrust of that case is its emphasis on the need for courts to *permit* withdrawals of privilege—even at a late stage in the litigation—so as not to make the invocation of a constitutional right unduly "costly." The court's reasoning is simple: permitting testimony advances the ability of the court to assess all relevant evidence. Indeed, *Moreno* cites with approval cases from the Third and Seventh Circuits *permitting* withdrawal of the waiver. *Moreno*, 2012 U.S. App. LEXIS 549, at *16-18.[6]

---

[6] In *SEC v. Graystone Nash, Inc.*, the Third Circuit reversed a district court's order for summary judgment where the district court improperly precluded defendants from withdrawing their Fifth Amendment privilege. 25 F.3d 187, 193 (3d Cir. 1994). Similarly, in *Evans v. City of Chicago*, the Seventh Circuit affirmed the district court's decision to allow a defendant to withdraw his previous assertion of privilege. 513 F.3d 735, 746 (7th Cir. 2008). *See also Martinez v. City of Fresno*, No. 1:06-CV-00233, 2010 U.S. Dist. LEXIS 19207, at *14-15 (E.D. Cal. Mar. 2, 2010) (permitting withdrawal of privilege claim because pre-trial deposition would cure any prejudice and other parties could not claim surprise due to the existence of prior testimony and statements by witness prior to his invocation of privilege); *FTC v. Sharp*, 782 F. Supp. 1445, 1452-53 (D. Nev. 1991) (permitting witness to withdraw assertion of privilege where privilege was initially invoked in good faith based on fear of criminal indictment; invoking witness was not the only source of pertinent information; and opposing party had ability to "thoroughly prepare" its motion); *FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1290-91 (D. Minn. 1985) (permitting defendant to withdraw privilege asserted during deposition and testify at trial where plaintiff had "thoroughly prepared its case and seemed able to anticipate through other witnesses what [defendant's] testimony might be.").

As discussed above, Gagliano is hardly a "surprise witness." BP has access to nearly 10,000 pages of documents from Gagliano's custodial files, and access to Gagliano's emails sent and received on BP's own email server. BP has access to Gagliano's previous statements to Congress and the Coast Guard, as well as its own investigation interview notes from Gagliano. BP has deposed multiple witnesses whose scope of testimony overlaps with that of Gagliano. BP has thoroughly prepared its case and deposed hundreds of other witnesses. Gagliano does not stand to gain any benefit, other than the indirect benefit any employee obtains if his testimony proves favorable to his current employer. In light of the parallel criminal investigation, BP cannot credibly claim that Gagliano's assertion of the privilege was unwarranted, especially since three of its own employees have invoked their Fifth Amendment privilege. Accordingly, the Court should be "especially inclined" to permit Gagliano's waiver, given the circumstances in this case. *Moreno*, 2012 U.S. App. LEXIS 549, at \*13.

D.   BP's Cases Support HESI's Position or Are Inapposite

The other cases cited by BP either support HESI's position, or are inapposite because they involve limited exceptions to the general rule permitting withdrawal of the privilege, supported by clear evidence showing litigation gamesmanship and undue prejudice to other parties. Neither factor is present here.

In *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 191 (3d Cir. 1994), the Third Circuit reversed the district court's refusal to permit the testimony of two witnesses who had previously invoked their Fifth Amendment privilege. The district court erred by failing to consider the following facts: the witnesses invoking their Fifth Amendment privilege were part of a larger group of seven defendants; other defendants had agreed to testify; multiple depositions had been taken; the SEC had already amassed substantial evidence; the SEC was not surprised by suddenly being confronted with new and unexpected evidence; and there was no evidence to suggest that the SEC could not have presented a strong case if the two witnesses were permitted to testify. *Id*. at 193-94. In this case, hundreds of other witnesses have testified, including witnesses whose testimony will overlap with Gagliano's; Gagliano will be deposed before trial; Gagliano's testimony will not surprise BP with new or unexpected evidence; and there is no reason to suppose that BP cannot present a strong case if Gagliano testifies. *Graystone Nash* thus supports HESI's position, not BP's.

*SEC v. Softpoint Inc*., 958 F. Supp. 846 (S.D.N.Y. 1997) (Sotomayor, D.J.) is similarly unavailing because it involved egregious, blatant litigation abuse. The defendant in *Softpoint* sought to withdraw his previous invocation of the Fifth Amendment privilege three months *after* the SEC moved for summary judgment against him. *Id.* at 856. Judge Sotomayor found that the defendant's original assertion of the privilege was "without legal justification" because he "did not invoke the Fifth Amendment to shield himself from compulsion to provide incriminating testimony," but rather to escape the expense of having to fly his attorney from New York to Reno, Nevada to attend the deposition. *Id*. at 855. She noted that the defendant's "dilatory" and "manipulating" tactics and "his overall behavior toward the Court" weighed heavily against

The Honorable Sally Shushan
January 30, 2012
Page 8

allowing him to withdraw his claim of privilege.  *Id.* at 856.  BP gains no mileage from *Softpoint* because no such mistreatment or exploitation of the litigation process is present in this situation.

The court in *Certain Real Prop. And Premises* disallowed the withdrawal of privilege because the party witness had refused to answer interrogatories for a year, "stonewalled" the government's case for more than a year, refused to comply with a discovery order, and then sought to waive his Fifth Amendment privilege in the face of a summary judgment motion.  55 F.3d at 86.  The court noted the defendant's "pattern of abusing the discovery process" and concluded that this "history of obstruction" suggested that defendant was "simply using all available techniques—including the Fifth Amendment—to hinder and delay the Government's action."  *Id*.  *Interim Investors Committee Holding Claims Against Financial & Business Services, Inc. v. Pavlico*, No. 88-2910, 1990 U.S. App. LEXIS 16874, at *4-5 (4th Cir. Sept. 24, 1990) is equally inapposite, since it involved a party witness who engaged in "an abuse of the discovery process" and attempted to withdraw the privilege assertion on "the eve of the summary judgment hearing."  *Id*.  Here, there is no pending summary judgment motion, and neither HESI nor Gagliano have engaged in a pattern of abusing the discovery process.

*Niebur v. Town of Cicero*, 212 F. Supp. 2d 790 (N.D. Ill. 2002) likewise involved clear gamesmanship.  The witness' refusal to testify prompted the trial court to order a two week continuance of the trial to permit a deposition.  *Id*.  Afterward, the witness refused to retract his privilege claim and but then sought to testify at trial, while simultaneously claiming there could be no adverse inference drawn from his previous refusal to testify.

Finally, *Harris v. City of Chicago*, 266 F.3d 750 (7th Cir. 2001) did not involve a court permitting or disallowing a withdrawal of a previously asserted Fifth Amendment privilege, but rather the sanction of permitting an adverse inference to be made based upon the refusal of the witness to testify.  *Id*. at 753-54.  The other two cases cited by BP have nothing to do with attempts to withdraw a previous assertion of a Fifth Amendment privilege.  *MagSil v. Seagate Technology*, No. 08-940, 2010 U.S. Dist. LEXIS 67547, at *5-6 (D. Del. July 7, 2010) involved defendant's attempt to obtain leave to amend a pleading to include an affirmative defense and a counterclaim just prior to close of discovery.  *FDIC v. First Heights Bank, FSB*, No. 95-CV-72722, 1998 U.S. Dist. LEXIS 21507, at *6-7 (E.D. Mich. March 4, 1998) involved granting the FDIC's motion for summary judgment on the issue of sharing of tax benefits derived from "covered asset loss claims").

The Honorable Sally Shushan
January 30, 2012
Page 9

## **CONCLUSION**

      Gagliano should be allowed to testify because there is no evidence that his decision to waive the privilege is motivated by abusive, strategic gamesmanship, and BP will suffer no undue prejudice.  Accordingly, this Court should deny BP's baseless opposition to the taking and use of Gagliano's testimony.

                              Respectfully submitted,

                              Donald E. Godwin

DEG:PWS