# Exhibit K

```
1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA
2
3  IN RE:  OIL SPILL      )  MDL NO. 2179
   BY THE OIL RIG         )
4  "DEEPWATER HORIZON" IN )  SECTION "J"
   THE GULF OF MEXICO, ON )
5  APRIL 20, 2010         )  JUDGE BARBIER
                          )  MAG. JUDGE SHUSHAN
6
7
8
9
10
11
12
13
14
15
16
17          * * * * * * * * * * * * * * * * *
                      VOLUME 2
18          * * * * * * * * * * * * * * * * *
19
20
           Deposition of Richard Lynn Morrison,
21  taken at the Pan-American Building, 601 Poydr as
   Street, 11th Floor, New Orleans, Louisiana,
22  70130, on the 19th day of October, 2011.
23
24
25
```

**PURSUANT TO CONFIDENTIALITY ORDER**

460

1   would be sitting here and Doug would be sitti ng

2   there, and they -- they ran the Unified Area

3   Command as a collective.

4         We tried to collaborate clearly and - -

5   and -- and make joint decisions based on good

6   data.  But if -- if there was ever a conflict  or

7   if there was ever a disagreement on to go A - -

8   Option A or Option B, the Federal On-Scene

9   Commander had the final word.

10       Q.  So would you agree, then, that the

11  Federal On-Scene Commander would have exercis ed

12  ultimate authority over the response activiti es?

13       A.  Yes.

14       Q.  Okay.  Now, is it your recollection t hat

15  this spill was also designated a "Spill of

16  National Significance"?

17       A.  Correct.

18       Q.  Do you know what that means?

19       A.  I didn't -- I didn't before, and I do n't

20  know what exactly the criteria is for that, o ther

21  than it was going to require them mustering

22  more -- more resources as a Federal Governmen t.

23       Q.  And do you recall Admiral Allen being

24  appointed a National Incident Commander for t he

25  spill?

**PURSUANT TO CONFIDENTIALITY ORDER**

1    Plans, and particularly this one for Period 2 ,

2    would have been issued before the events

3    described therein were to take place?

4        A.   Yes.  So it -- so in this Incident Ac tion

5    Plan, it's going from 4/22 to 4/23, and it's

6    signed in 4/22.  So it's right in the middle  of a

7    period.

8        Q.   Okay.  If you'll turn over to kind of  the

9    middle of -- of the document, the Bates numbe r

10   down at the bottom right corner ends in -- in

11   0020, and this page at the top is identified  "ICS

12   204 - Assignment List."

13           Do you see that?

14       A.   Yes, I do.

15       Q.   And do you know what a -- an ICS 204  form

16   is?

17       A.   No.  I know there's a number of stand ard

18   forms in ICS, and each -- each section in --

19   inside of ar -- inside of the Incident Comman d

20   has a -- has a role in completing these as pa rt

21   of the -- the Incident Action Plan.  So I

22   wouldn't have been able to tell you 204 or 21 4

23   or -- but I -- I -- I recognize this.

24       Q.   But you understand that the Incident

25   Action Plans contain assignment lists such as

**PURSUANT TO CONFIDENTIALITY ORDER**

468

1    this, that would go out to the field, sort of

2    directing them what to do, correct?

3        A.   I'm -- I'm not real certain how the - -

4    how the form was -- was used to direct work.

5    I -- I -- my -- my recollection was it was

6    capturing a little bit of work that was done,  and

7    then requisition for resources and those kind  of

8    things, yeah.

9        Q.   Okay.  On this page that ends in the

10   Bates No. 20, if you look at the bottom, ther e's

11   a section called "Assignments"?

12       A.   M-h'm.

13       Q.   And there's a line there that reads:

14   "Conduct on-water booming and skimming operat ions

15   as needed in vicinity of rig consistent with

16   environmental planning."

17            Do you see that?

18       A.   Yes, I do.

19       Q.   Okay.

20       A.   M-h'm.

21       Q.   So is it -- is it your understanding  that

22   the -- the Incident Action Plan here for Peri od 2

23   contains the instruction for responders to

24   "conduct...booming and skimming operations as

25   needed..."?

**PURSUANT TO CONFIDENTIALITY ORDER**

1       A.   So let me just look in here.   (Review ing

2    document.)   Yeah.   So, the -- yes, this looks

3    like a -- this is the Mechanical Regov --

4    Recovery Group working inside of the Operatio ns

5    section, lead by James Black.   And -- and thi s

6    may have been his way of directing that work.

7    I'm just not sure.

8       Q.   Okay.

9       A.   I know you can't ask him.   He passed

10   away.   He's dead.

11      Q.   Sorry about that.

12           If you would turn to the next page, e nds

13   with the Bates No. 021.

14      A.   M-h'm.

15      Q.   It's another -- another ICS 204 form  for

16   a different branch, actually for a different

17   Division/Group within the Offshore Pollution

18   Operations Branch.

19           Do you see that?

20      A.   Yes.

21      Q.   It's for the Dispersant Group?

22      A.   Yes.

23      Q.   And, again, in the Assignment section , it

24   reads:   "Conduct dispersant operations as

25   required/approved."

**PURSUANT TO CONFIDENTIALITY ORDER**

1     A.   Yes.

2     Q.   Do you see that?

3     A.   M-h'm.

4     Q.   So, again, would you agree that as of

5 Period 2, the -- the Federal On-Scene Coordin ator

6 is directing the responders to "conduct

7 dispersant operations as required/approved"?

8     A.   Yes, I do.

9     Q.   I wanted to ask you about another --

10 another page in here.  It's a few more pages

11 over, ends in the Bates No. 025.  It's an

12 "ICS 207 - Organization Chart"?

13     A.   (Reviewing document.)  20 -- yes.

14     Q.   You see your name is on the chart ove r on

15 the left under "BST."

16          Do you see that?

17     A.   I do, yes.

18     Q.   And you may have said this earlier, b ut

19 what does "BST" stand for?

20     A.   Business Support Team.

21     Q.   And what is that?

22     A.   These are the folks that are there to

23 assist the Incident Command Team with whateve r

24 issues or problems that are arising that's no t

25 really part of responding directly to the spi ll.

**PURSUANT TO CONFIDENTIALITY ORDER**

475

1    an example of that.

2        Q.   (Nodding.)

3        A.   So as the -- as the spill started to move

4    and the -- and the oil started to move and st art

5    to threaten Alabama, we would talk to the

6    Incident Command Post, best utilization of

7    vessels, where do we want to send the fleet.   So

8    we went from a, you know, a single state resp onse

9    to one that cut across state lines.

10            And the Area Command, Admiral Landry,  and

11   Doug would -- would engage with those Inciden t

12   Commanders, and see the -- see the surveillan ce

13   of what we had, where the risks were and wher e

14   the oil was moving, and they would, if we nee ded

15   to, redirect resources to help mitigate the r isk.

16   And we would do that in skimming, we would do

17   that in aerial dispersants, and what have you .

18   So that was the kind of things they were

19   directing, as well.

20            And -- and -- and, of course, the

21   execution of that, those big goals and strate gies

22   was done at those Incident Command Posts.

23       Q.   All right.  So did -- did BP ever per form

24   any response operations, such as applying

25   dispersants, conducting in situ burns, or

**PURSUANT TO CONFIDENTIALITY ORDER**

```
 1                 UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA
 2

 3    IN RE:  OIL SPILL      )   MDL NO. 2179
      BY THE OIL RIG         )
 4    "DEEPWATER HORIZON" IN  )   SECTION "J"
      THE GULF OF MEXICO, ON  )
 5    APRIL 20, 2010          )   JUDGE BARBIER
                              )   MAG. JUDGE SHUSHAN
 6

 7

 8                  REPORTER'S CERTIFICATION
           TO THE ORAL AND VIDEOTAPED DEPOSITION OF
 9                   RICHARD LYNN MORRISON
                      OCTOBER 19, 2011
10                        VOLUME 2

11
           I, Emanuel A. Fontana, Jr., Certified
12    Shorthand Reporter in and for the State of Texas,
      hereby certify to the following:
13
           That the witness, RICHARD LYNN MORRISON, was
14    duly sworn by the officer and that the transcript
      of the oral deposition is a true record of the
15    testimony given by the witness;

16         That the deposition transcript was submitted
      on  November 16  , 2011, to the witness or to
17    Attorney  J. Robert Warren    for the witness to
      examine, sign, and return to Worldwide Court
18    Reporters, Inc., by  December 31    , 2011.

19         That the amount of time used by each party
      at the deposition is as follows:
20
           Mr. Fleming - 10 Minutes
21         Mr. Godwin - 50 Minutes
           Ms. Bertaut - 27 Minutes
22         Mr. Brody - 4 Minutes
           Mr. Grabill - 23 Minutes
23         Mr. Weigel - 29 Minutes
           Ms. Karis - 3 Minutes
24         Ms. Greenwald - 51 Minutes

25
```

PURSUANT TO CONFIDENTIALITY ORDER

1      I further certify that I am neither counsel
for, related to, nor employed by any of the
2  parties in the action in which this proceeding
was taken, and further that I am not financially
3  or otherwise interested in the outcome of the
action.

4
       SUBSCRIBED AND SWORN to by me on this 19th
5  day of October, 2011.

6

7

8      Emanuel A. Fontana, Jr., RPR
9      Texas CSR No. 1232
       Expiration Date: 12/31/12
10     Worldwide Court Reporters
       Firm Registration No. 223
11     3000 Weslayan, Suite 235
       Houston, Texas   77027
12     (713) 572-2000

13

14

15

16

17

18

19

20

21

22

23

24

25

**PURSUANT TO CONFIDENTIALITY ORDER**

549

```
1
2        I, RICHARD LYNN MORRISON, have read t he
3   foregoing deposition and hereby affix my
4   signature that same is true and correct, exce pt
5   as noted on the attached Amendment Sheet.
6
7
```



RICHARD LYNN MORRISON

**PURSUANT TO CONFIDENTIALITY ORDER**