**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re:   Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179 |
| | SECTION: J |
| This Document Relates to:  *All Cases* | JUDGE BARBIER |
| (Including No. 10-2771) | MAGISTRATE SHUSHAN |

**THE PSC AND UNITED STATES' JOINT MEMORANDUM IN SUPPORT OF
MOTION *IN LIMINE* TO ADMIT INTO EVIDENCE REPRESENTATIVE E-MAIL
<u>COMMUNICATION EXHIBITS</u>**

**TABLE OF CONTENTS**

I.      FACTUAL AND PROCEDURAL BACKGROUND…………………………………...1

II.     ANALYSIS……………………………………………………………………………3

    A.  Defendants Have Waived A Hearsay Objection Where None Was Proffered By

        The Court-ordered Deadline of September 28, 2011……………………………...3

    B.  The Email Communication Exhibits Are Admissible Under the Federal Rules of

        Evidence………………………………………………………………………...4

           i.  TREX-00151…………………………………………………………4

          ii.  TREX-01057……………………………………………………………5

         iii.  TREX-01917…………………………………………………………12

         iv.  TREX-02731………………………………………………………...16

          v.  TREX-02964………………………………………………………...18

         vi.  TREX-03112………………………………………………………...19

        vii.  TREX-06228………………………………………………………...22

III.    CONCLUSION………………………………………………………………………23

## TABLE OF AUTHORIES

### CASES

*Alexander v. Conveyors & Dumpers, Inc.*, 731 F.2d 1221 (5th Cir. 1984)……………….…..12

*Blanchard v. Peoples Bank*, 844 F.2d 264 (5th Cir. 1988)……………………………….…..9

*Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC*,
    2008 WL 1999234 (S.D. Tex. May 8, 2008………………………………………………8

*Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200 (4th Cir. 2000)……....…6, 9

*DirecTV, Inc. v. Murray*, 307 F. Supp. 2d 764 (D.S.C. 2004)………………………………..8, 14

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966 (C.D. Cal. 2006)…16

*United States v. Cantu*, 876 F.2d 1134 (5th Cir. 1989)……………………………………..…11

*United States v. Colomb*, 419 F.3d 292 (5th Cir. 2005)………………………………………..…4

*United States v. Parry*, 649 F.2d 292 (5th Cir. 1981)…………………………………..…11, 19

*United States v. Sanders*, 749 F.2d 195 (5th Cir. 1984)…………………………………….6, 13

*United States v. Stein*, 2007 WL 3009650 (S.D.N.Y. Oct. 15, 2007)……………………….…8

*United States v. Thomas*, 571 F.2d 285 (5th Cir. 1978)……………………………...…20, 21

*United States v. Triplett*, 922 F.2d 1174 (5th Cir. 1991)……………………………...…21

*United States v. Wells*, 262 F.3d 455 (5th Cir. 2001)……………………………………….9

# RULES

Fed. R. Evid. 801(c)……………………………………………………………...…11

Fed. R. Evid. 801(d)(2)(D)………………………………………………………….*passim*

Fed. R. Evid. 803(6)……………………………………………………………………*passim*

Fed. R. Evid. 804(a)…………………………………………………………...…20

Fed. R. Evid. 804(b)……………………………………………………………19, 20

MAY IT PLEASE THE COURT:

The Plaintiffs' Steering Committee ("PSC") and the United States jointly move this Court for an order admitting into evidence seven e-mail communication exhibits that are representative of a larger universe of similar exhibits. Each exhibit is admissible under the standards set forth in the Federal Rules of Evidence concerning hearsay.[1] Accordingly, for the reasons that follow, the PSC and the United States request that the objections of the Defendants—filed concurrently herewith—be overruled, and that the email communication exhibits identified below be admitted into the Phase I trial record.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On September 14, 2011, the PSC filed what has become known as the "Sample 300" list. This list was, as its title suggests, a sampling of relevant trial exhibits produced by Defendants. Furthermore, pursuant to the Court's instruction, the Sample 300 list "identif[ied] documents [that would] raise a broad range of substantive objections." (REC. DOC. 3916 at 4.) Although the September 2 submission deadline was over five months prior to the pretrial conference date, the early exhibit proffer was intended to engender discussion among the parties and to resolve objections to a set of key trial documents. This, in turn would free the Court and parties to shift attention to the ever-growing list of trial exhibits as the February 27, 2012 trial date approached. Defendants were ordered to file all objections to the exhibits on the Sample 300 list by September 28, 2011. (*Id.* at 6.) The parties thereafter met and conferred and, where no agreement was possible, briefed a variety of *in globo* issues for judicial resolution.

---

[1] Pursuant to the Order of Court dated January 11, 2012 (REC. DOC. 5143), this briefing is limited to Defendants' hearsay-based objections to the admission of email communication exhibits listed on the "Sample 300" list.

1

On January 11, 2012, the Court filed an Order concerning one of the *in globo* issues briefed by the parties: the admissibility of email communications produced by Defendants during discovery.  (*See* REC. DOC. 5143.)  The Court rejected the notion that an email communication would be generally admissible as a business record under Federal Rule of Evidence 803(6) merely because that email communication was produced by a Defendant.  (*Id.* at 6.)  Instead, the Court ruled, each email communication must be examined individually in order to ascertain whether it meets the requirements of a hearsay exception.  (*Id.* at 12.)  The parties were ordered to meet and confer in good faith and, where disagreement over individual exhibits persisted, to submit briefing for the Court's review.  (*Id.*)  Discussions at the meet and confer sessions were to be limited to email communication exhibits contained on the Sample 300 list.

The PSC and United States met and conferred with each Defendant that objected to admission of email communication exhibits on the basis of hearsay—*i.e.*, BP, Cameron, Halliburton, and Transocean.  The PSC and United States resolved all evidentiary issues with Cameron,[2] and agreed to withdraw one exhibit to which BP and Halliburton lodged objections (TREX-03092), as well as a portion of another exhibit about which BP and Halliburton complained (TREX-01966.b).  TREX-00216, another exhibit whose admissibility was disputed by Halliburton, was also voluntarily withdrawn.  The remaining exhibits are discussed below. BP objects to three exhibits: TREX-01917, TREX-03112, and TREX-06228.[3]   Halliburton objects to four exhibits:   TREX-00151, TREX-01057, TREX-2731, and TREX-02964. Transocean also objects to: TREX-00151 and TREX-03112.  The PSC and USA first address the

---

[2] Cameron objected to TREX-03419 on hearsay grounds.  Subsequent to the parties' meet and confer, Cameron agreed to withdraw its objection.
[3] BP submitted these exhibits for the Court's review on January 27, 2012.  The PSC/USA submits the remaining exhibits along with the instant motion.

timeliness of several of Defendants' objections before turning to the admissibility of each exhibit

on an individual basis.

## II.   ANALYSIS

### A. Defendants Have Waived A Hearsay Objection Where None Was Proffered By the Court-ordered Deadline of September 28, 2011

The Court issued a clear and direct order on September 2, 2011: it set September 28,

2011 as the "[d]eadline for defendants to file all objections **other than authenticity** to the PSC's

list of 300 documents."  (REC. DOC. 3916 at 6 (emphasis in original).)  Defendants proffered a

number of objections to the "Sample 300" list and these objections, in turn, prompted the parties

to submit briefing on numerous motions in limine.  When the parties exchanged a list of exhibits

to be discussed at last week's meet and confer sessions, however, BP, Halliburton, and

Transocean raised hearsay objections to documents that were listed on the Sample 300 list, but

that were theretofore not the subject of dispute.  In other words, these Defendants raised hearsay

objections to Sample 300 exhibits for the first time, and in direct contravention of the Court's

September 2, 2011 Order.  Because such objections are untimely, the Court should hold that all

such objections are waived.[4]

The Court should not countenance Defendants' disregard for the clear Order entered in

September of 2011.  The entire purpose of the Sample 300 list was to tee up and resolve large

evidentiary disputes well before the calendar reached February 2012.  Defendants now seek to

---

[4] BP's Objections to Trial Exhibit Lists, filed January 20, 2012, raise forty-one new hearsay objections to email communication exhibits that were listed on the Sample 300.  (*Compare* REC. DOC. 5316, *with* REC. DOC. 4138.) Halliburton did not include its hearsay objections to email strings in its January 20, 2012 trial exhibit objections, but each of the exhibits its contests below were listed on the Sample 300; Halliburton did not raise hearsay objections to any of these exhibits on or before September 28, 2011, (*see* REC. DOC.  4137 at Ex. A.)  Finally, both of the exhibits Transocean contests below appeared on the Sample 300; Transocean did not object to either on or before September 28, 2011.  (*See* REC. DOC. 4136-1.)

3

raise issues that could have been raised—and possibly briefed and resolved—months ago. Although parties typically may proffer objections until an exhibit is admitted at trial, this Court should preclude Defendants from raising new hearsay objections to any document on the Sample 300 list.  Parties must respect the schedule set forth by the Court; Defendants' failure to do so should not be tolerated.  *See United States v. Colomb*, 419 F.3d 292, 298 (5th Cir. 2005) ("A district court has inherent power 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936))).

### B.  The Email Communication Exhibits Are Admissible Under The Federal Rules of Evidence

Defendants BP, Halliburton, and Transocean have elected to brief a total of seven email communication exhibits on hearsay grounds, to wit: TREX-00151, TREX-00206, TREX-01057, TREX-01917, TREX-02731, TREX-02964, TREX-03112, and TREX-06228.  BP objects to three exhibits, Halliburton objects to four exhibits, and Transocean also objects to two exhibits. Each exhibit is addressed individually below.

### 1.  TREX-00151

Halliburton and Transocean object to the admission of TREX-00151, a July 10, 2010 email authored by BP counsel James Lucari and transmitted to several BP employees.  The email itself contains no relevant statements; it simply serves as a cover sheet attaching several pages of interview notes compiled during the BP Internal Investigation Team's post-incident inquiry (*i.e.*, the Bly Investigation).  The PSC/USA does not seek to admit the cover email for the truth of the matter asserted.  Rather, the email provides chronological context for the attached interview notes.

The notes, however, are admissible as a business record pursuant to Rule 803(6) or, at the very least, as an admission under 801(d)(2)(D).  Indeed, this issue has been thoroughly briefed and awaits disposition from the Court.[5]  The PSC/USA incorporates the arguments set forth in its earlier briefing and reasserts those arguments herein.

### 2.  TREX-01057

Halliburton objects to the admission of TREX-01057, a February 2010 email exchange between Robert Bodek, a BP operations geologist working on the Macondo well, and Brian Morel, a BP drilling engineer.  Morel's email, dated February 13, 2010, notes that "current operations" consist of "[p]ulling out to squeeze the shoe."  Bodek later explained that a "squeeze job," referred to in Morel's message, is a remedial procedure that is necessary to repair an unsatisfactory cement project.  (Depo. Tr. of R. Bodek at 155-56.[6])  Bodek further explained that the squeeze job slows progress of the well and that, when he was informed that such a procedure was necessary in and around February 13, 2010, he was "disappointed" because it meant additional down time.  (*Id.* at 157-58.)  According to Bodek, "I'd been waiting three and a half months to get back to activity and we were going to be late—delayed another couple of days." (*Id.* at 157.)  Bodek responded to Morel's email regarding the squeeze job accordingly: "Thanks for the shitty cement job, Trent."  The PSC/USA submits that Bodek's email should be admitted into evidence.

***Admissible as a Business Record.***  This Court set forth the standard for admission of a business record under Rule 803(6) in its January 11, 2012 Order: to be admissible, the email

---

[5] The PSC filed a letter brief on October 17, 2011, arguing that the interview notes were admissible under Rule 803(6) and Rule 801(d)(2)(D).  BP opposed this letter brief on November 4, 2011.  (*See* BP Ltr. of Nov. 4, 2011.)  In its reply to BP's opposition, the PSC argued that certain sections of the notes also constituted a statement of then-existing state of mind, admissible pursuant to Rule 803(3).  The USA filed a letter in support of the PSC's position.
[6] The relevant portions of Bodek's deposition transcript are attached hereto as Exhibit A.

must (1) "have been sent or received at or near the time of the event(s) recorded in the email"; (2) "have been sent by someone with knowledge of the event(s) documented in the email"; (3) "have been sent or received in the course of a regular business activity"; and (4) "be the producing defendant's regular practice to send or receive emails that record the type of event(s) documented in the email."  (REC. DOC. 5143 at 6-7.)  In addition, "a custodian or qualified witness must attest that these conditions have been fulfilled."  (*Id.* at 7.)

When considering the admissibility of a business record, this Court has "broad" discretion to determine whether email communication exhibits are admissible under Rule 803(6), *United States v. Sanders*, 749 F.2d 195, 197 (5th Cir. 1984).  In its exercise of its discretion, the Court should foremost attempt to discern whether the email correspondence exhibits indicia of trustworthiness; the Court should, in other words, discern whether the author of a particular email had "a strong motive to be accurate and none to be deceitful."  *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 205 (4th Cir. 2000) (explaining that business records exhibit indicia of trustworthiness that renders them admissible).  TREX-01057, and other email communications like it, meet each of the requirements for admissibility of a business record.  The Court should admit this exhibit into the record for its truth.

First, the record was made at or near the time of the events recorded in the email.  Fed. R. Evid. 803(6)(A).  Bodek testified that he was made aware that a squeeze job was necessary on February 12, 2010.  (Depo. Tr. of R. Bodek at 154-55.)  The following day, he wrote his message to Morel.  This time lapse satisfies the Rule's first precondition, which requires creation "at or near" the relevant time—but does not mandate *instantaneous* creation.  *See Sanders*, 749 F.2d at 196-98 (ruling that records were created contemporaneously where they were input

electronically days after their initial submission).  The Rule's second condition is also satisfied; Bodek testified to his knowledge of the events surrounding the squeeze job.  (*See* Depo. Tr. of R. Bodek at 154-59.)

The Rule's third requirement states that the record must be "kept in the course of a regularly conducted activity of a business."  Fed. R. Evid. 803(6)(B).  The Court explained that this "requires a case-by-case analysis of whether the producing defendant had a policy or imposed a business duty on its employee to report or record the information within the email." (REC. DOC. 5143 at 7.)  In other words, "the sending or receiving employee must have been under an obligation imposed his employer to send or receive the emails at issue."  (*Id.* at 11.) Bodek was certainly under such an obligation.  As an operations geologist on the *Deepwater Horizon*, Bodek testified that one of his primary responsibilities was to "engage the team in communication, facilitate communication between the prospect team who defines the prospect, the new well delivery team, which I work on that helps plan the well . . . and the drilling team." (Depo. Tr. of R. Bodek at 40.)  Bodek regularly transmitted crucial data and information to the drilling team to apprise them of developments as they occurred.  (*See id.* at 41.)  It is clear that Bodek accomplished such communication via email.  Indeed, the record as a whole is rife with Bodek's email correspondence with engineers on the rig concerning drilling operations. Seventy-five email communication exhibits were used during Bodek's deposition testimony alone, almost all of which constitute his communications with various employees staffed to drill Macondo.  (*See id.* at 6-13.)  TREX-01057—one of several email communication exhibits concerning the squeeze job and related issues surrounding the poor leak-off test—is but one

example of Bodek's regular e-correspondence practice.[7]  Furthermore, aside from this specific

showing, additional testimony at trial will show that BP imposed a general business duty upon its

deepwater drilling employees to make and maintain work-related email correspondence.[8]  *See*

*Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC*, 2008 WL 1999234, at *12 (S.D.

Tex. May 8, 2008) (stating that the proponent of evidence must "show that the employer

imposed a business duty to make and maintain such a record").

The fourth requirement under Rule 803(6) is that the email correspondence must "pertain

to a 'regularly conducted' business activity."  (REC. DOC. 5143 at 12.)  Here, Bodek testified that

he was part of a "multidisciplinary team that deliver[ed] the well" and, as such, his role was to

"engage the team in communication, facilitate communication."  (Depo. Tr. of R. Bodek at 40.)

The overall team's business, of course, was to "deliver"—or drill—the well.  Bodek's

communication squarely concerns that business, even if he took the opportunity to editorialize

about the quality of the cement job.  *See United States v. Stein*, 2007 WL 3009650, at *1

(S.D.N.Y. Oct. 15, 2007) (explaining that emails are admissible if created regularly and concern

an aspect of the business activity).  The simple fact remains: Bodek's communication is one

pertaining to a regularly conducted business activity.

Finally, Bodek is a "qualified witness" to prove up each of the requirements set forth

above.  He recognized TREX-01057, independently recalled the events underlying the email, and

the subject matter was one with which he was familiar.  Rule 803(6)(D) requires nothing more.

---

[7] Although Defendants opted to brief only this particular Bodek email, similar logic pertains to other Bodek email communications contained in the record.

[8] The PSC has noticed the testimony of a BP records custodian for trial, and several live witnesses will also testify who have knowledge of BP's internal communication practices.  Thus, should the Court find the PSC/USA's foundation lacking, it should defer ruling on this issue until it receives this trial testimony.  *DirecTV, Inc. v. Murray*, 307 F. Supp. 2d 764, 772 (D.S.C. 2004) (ruling that email correspondence was admissible where the proponent submitted, *inter alia*, a declaration of the company's records custodian).

Indeed, this record bears each of the indicia of trustworthiness that are a hallmark of a "business record." *United States v. Wells*, 262 F.3d 455, 459-60 (5th Cir. 2001) ("Whether evidence is admissible under Rule 803(6) is 'chiefly a matter of trustworthiness.'" (quoting *Miss. River Grain Elevator, Inc. v. Bartlett & Co.*, 659 F.2d 1314, 1319 (5t1h Cir. 1981))).   Because the document was generated routinely, there is every reason to believe that Bodek had a "strong motive to be accurate and none to be deceitful" when he typed out his statement. *Certain Underwriters at Lloyd's, London*, 232 F.3d at 205.  The Court should exercise its discretion and admit TREX-01057 for the truth of the matter.

   ***Admission by a Party Opponent.***   At the very least, this exchange of emails by BP employees is an admission by a party opponent under Federal Rule 801(d)(2)(D).  As this Court has recognized, "[t]he rule treats as non-hearsay a statement offered against a party and that was made by the party's employee on a 'matter within the scope of that [employment] relationship and while it existed.'"  (REC. DOC. 5143 at 10 (quoting Fed. R. Evid. 801(d)(2)(D)); *see also Blanchard v. Peoples Bank*, 844 F.2d 264, 267 n.7 (5th Cir. 1988) (explaining that Rule 801(d)(2)(D) permits admission of statements by a party's employee or agent so long as the statement was made within the employment or agency relationship).  Thus, the Court explained, statements are admissible as admissions where they were made (1) during the course of the agency relationship, and (2) concern a matter within the scope of that relationship.  (REC. DOC. 5143 at 10 (describing a "course and scope" inquiry).)  TREX-01057 satisfies both conditions.

   There is no question the statements in TREX-01057 were made within the course of both Bodek and Morel's employment relationship.  The scope requirement is also squarely met. Bodek was a BP operations geologist.  He testified that he "was involved in well planning and

well delivery," and stated that as a member of the well delivery team, he assisted in "plan[ning] the well" along with the drilling team. (Depo. Tr. of R. Bodek at 21, 40.) In addition, Bodek was a member of BP's Tiger Team, which was responsible for producing projections of likely pressures and transmitting the data to the drilling team. (*Id.* at 41.) Morel was a BP drilling engineer. (*Id.* at 199.) Both individuals were stationed on the *Deepwater Horizon* in order to complete drilling on the Macondo well. What is more, Bodek offered extensive testimony on numerous aspects of deepwater drilling and exploration, (*see, e.g.*, *id.* at 46-58), and he explained why and when a squeeze job may be required and the manners in which such a procedure might affect the overall drilling project. (*See id.* at 154-58.) The email correspondence between Morel and Bodek—reflecting the need for a squeeze procedure and what such a need suggests about the cement job's quality—squarely falls within the scope of the employment relationship.

During the parties' meet and confer, Halliburton argued that Bodek was merely joking when he sent his email and, therefore, the statement was inadmissible. Indeed, Bodek backed away from his statements during his deposition, claiming that he was "just kidding" and that he "wasn't sure that it was a cement job" that necessitated the squeeze job procedure. (*Id.* at 158-59.) Halliburton apparently claims that Bodek's lack of certainty means that his statement fell outside the scope of his employment. Such a claim is without merit. If anything, Halliburton raises a reasonable cross examination point, but not one that precludes the statement's admissibility. Bodek clearly knew that a poor cement job was one of several possible explanations for a poor leak-off test and he explained the various procedures by which the team might address the unsatisfactory test. (*See id.* at 156-58.) Bodek's responsibility was, in short, to participate along with the drilling team in the planning and exploration of the well. His

10

deposition testimony illustrates that he understood the purposes and reasons a squeeze job may be required.  His comment, even if in jest, nonetheless falls within the scope of his employment.[9]

*Not for the Truth of the Matter Asserted.*  Even if the Court does not admit TREX-01057 as a business record or a party admission, the exhibit should be admitted as contemporaneous evidence of Bodek's opinion of the cement job's quality.  In this manner, the statement would not be offered for the truth of the matter asserted and, thus, would not constitute hearsay.

"Rule 801(c) of the Federal Rules of Evidence defines hearsay as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'"  *United States v. Parry*, 649 F.2d 292, 295 (5th Cir. 1981). "Implicit in both the definition and justification for the rule, however, is the recognition that whenever an out-of-court statement is offered for some purpose other than to prove the truth of the matter asserted, the value of the statement does not rest upon the declarant's credibility and, therefore, is not subject to attack as hearsay."  *Id.*  "If the significance of a statement 'lies solely in the fact that it was made,' rather than in the veracity of the out-of-court declarant's assertion, the statement is not hearsay because it is not offered to prove the truth of the matter asserted." *United States v. Cantu*, 876 F.2d 1134, 1137 (5th Cir. 1989) (citations omitted).  Even "the danger that the jury could improperly use the out-of-court statement as an assertion to be believed does not render the statement inadmissible."  *Parry*, 649 F.2d at 295.  "Where evidence

---

[9] Morel's email, to the extent it is also the subject of objection, also falls within the scope of Morel's employment as a member of the drilling team.  Even if it does not, however, it need not be offered for the truth of the matter, but simply to explain Bodek's comments.

is admissible for one purpose but not for another, the accepted practice is to admit the evidence with instructions that the jury consider the evidence only for the permissible purpose." *Id.*

A classic example of statements not offered for the truth of the matter asserted are those offered to show *knowledge* of a fact, as distinguished from proof of the fact itself. "Using an out-of-court utterance as circumstantial evidence of the declarant's knowledge of the existence of some fact, rather than as testimonial evidence of the truth of the matter asserted, does not offend the hearsay rule." *Id.* (citing McCormick on Evidence, § 249 (2nd ed. 1972); 5 Wigmore on Evidence, § 1790 (1974)). *See also Alexander v. Conveyors & Dumpers, Inc.*, 731 F.2d 1221, 1230 (5th Cir. 1984) (Witness' testimony was not offered to prove that the equipment at issue in the case "would indeed drop if the cables or drive chain broke, however. Rather, his testimony was offered as evidence of Alexander's *knowledge* of that supposed fact.) (emphasis in original).

The PSC should be permitted to offer Bodek's statement in TREX-01057 as evidence of what Bodek—who was stationed on the *Deepwater Horizon*—felt about the cement job: to be blunt, that the job was "shitty." This fact may certainly shed light on subsequent actions taken by BP employees as they dealt with the unfolding situation on the deepwater rig. Moreover, Bodek's post-hoc deposition explanation may also be admitted and it is then for the trier of fact to weigh the evidence and determine Bodek's credibility.

### 3. TREX-01917

BP objects to the admission of TREX-01917, a string of November 2009 emails between Anadarko employee Todd Durkee, Anadarko's vice president of operation and development in the Gulf of Mexico, Darrell Hollek, and Anadarko's asset manager for the Gulf of Mexico, Alan O'Donnell. In this exchange, the Anadarko employees react to the realization that the *Marianas*

rig was damaged during Hurricane Ida, a fact that BP failed to disclose to Anadarko.   The Durkee emails are not offered for the truth of the matter asserted; they simply catalogue the damage incurred by the *Marianas* drilling rig as a result of Hurricane Ida.   The PSC/USA proffers the Hollek email for its truth and submits that the O'Donnell email should come in to illuminate what O'Donnell knew.

***Admissible as an Anadarko Business Record.***   The conditions for admission of a business record under Rule 803(6) are set forth above.   The Court should exercise its broad discretion, *see Sanders*, 749 F.2d at 197, and admit the email interchange between Hollek and O'Donnell for its truth.   The first two requirements of 803(6) are easily met: Hollek explained that Durkee forwarded him information "from some type of industry rag," (Depo. Tr. of D. Hollek at 110[10]); judging from the timestamp affixed to the email string, Hollek responded on November 20 almost immediately.   *See* Fed. R. Evid. 803(6)(A).   O'Donnell also responded shortly after receiving Hollek's message.   Moreover, the exhibit satisfies the knowledge condition because both Hollek and O'Donnell testified to their independent recollection of the events underlying the email.[11]   (*See* Depo. Tr. of D. Hollek at 109-12; Depo Tr. of A. O'Donnell at 120-21[12]).

The email communication also meets the third business record requirement—that the sending or receiving employee was under an obligation imposed by his or her employer to send or receive the communication.   (REC. DOC. 5143 at 11.)   Hollek testified that he was vice president of operations and development in the Gulf of Mexico, an officer-level position.   (Depo.

---

[10] The relevant portions of Darrell Hollek's deposition are attached hereto as Exhibit B.

[11] Hollek was not shown TREX-01917, but he was shown a different email string (TREX-02691) that contained the same November 20, 2009 reflected in TREX-01917.   Therefore, his testimony is on point and relevant to the discussion of TREX-01917's admissibility.

[12] The relevant portions of Alan O'Donnell's deposition are attached hereto as Exhibit C.

13

Tr. of D. Hollek at 23.)  He explained that his responsibility included the appraisal and development of new sites, their economic evaluation, and oversight of drilling operations.  (*Id.* at 24-26.)  Moreover, Hollek routinely discussed "day-to-day activities, sometimes on a project level," with his coworkers.  (*Id.* at 31.)  On a more specific level, Hollek routinely met with and engaged in discussions with his asset managers to appraise projects.  (*Id.* at 39-40.)  The record as a whole—and in particular the email communication exhibits produced by Anadarko and marked during Hollek and O'Donnell's depositions—demonstrate that Anadarko expected its employees to communicate on business concerns (such as project appraisals) via email. Moreover, additional trial testimony will show that Anadarko imposed a general business duty upon its employees to make and maintain work-related email correspondence.[13]

When Hollek sent the email reflected in TREX-01917, his team was attempting to evaluate and approve a BP-Anadarko partnership to drill the Macondo tract.  (*See id.* at 110-11.) This is squarely within the employment duties Hollek described in his deposition.  When he was shown his November 20 email during his deposition, Hollek elaborated on its context: "You got to recall we're at that point where we're trying to do the evaluation and approval process [of the Macondo lease]. . . . As far as the issue around 2009 and 2010, again, we're—we're always held to our budgets.  And so we're already—we're trying to figure out how to make this work within the—not only the Gulf of Mexico but the corporation in 2009."  (*See id.* at 110-11.)  Hollek's email concerns questions of cost and approval vis-à-vis a potential, new project; one would be hard-pressed to argue that this does not "pertain to a 'regularly conducted' business activity." (REC. DOC. 5143 at 12.)

---

[13] The PSC, for example, has subpoenaed an Anadarko records custodian to testify at trial.  *See DirecTV, Inc.*, 307 F. Supp. 2d at 772 (ruling that email correspondence was admissible where the proponent submitted, *inter alia*, a declaration of the company's records custodian).

Finally, Hollek is a "qualified witness" to prove up each of the initial requirements for purposes of Rule 803(D).  He recognized the email contained in TREX-01917, independently recalled the events underlying the email, and the subject matter was one with which he was familiar.  This is all that Rule 803(6) requires of a custodian/declarant.  Moreover, Hollek's email bears all of the indicia of reliability one would require for a business record; he is writing as a vice president of operations and development, attempting to appraise a new project with an eye toward budgets.  In short, he had every reason to be truthful and none to deceive.  The Court should exercise its discretion and admit the Hollek email.

Provided that the Hollek email is admitted as a business record, the subsequent O'Donnell email need not be offered for its truth, but only to show O'Donnell's knowledge.  It is of no moment to the PSC or the United States whether O'Donnell was, in fact, "amazed" that BP failed to disclose information regarding the *Marianas*.  Nor is the statement, "Bummer," offered for its truth.  Rather, O'Donnell's email is relevant only to Anadarko's future conduct—the manner in which the company reacted to BP's lack of communication to its prospective partner and the potential for increased costs.

***Admissions By a Party Opponent.***    At the very least, this exchange of emails by Anadarko employees is an admission by a party opponent under Federal Rule 801(d)(2)(D).  Under the standard set forth above, as well as in this Court's January 11, 2012 Order, Rule 801(d)(2)(D) permits admission of statements by a party's employee or agent so long as the statement was made within the course and scope of the employment or agency relationship.  TREX-01917 satisfies both conditions.

There is no question the statements in the email string were made within the course of Hollek and O'Donnell's employment.  The statements in Hollek's November 20, 2009 email also meet the scope requirement.   As explained above, Hollek held an officer-level position at Anadarko.  Some courts have held that the statements of a corporate officer are, by definition, admissions of the party.  *See, e.g.*, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 973 (C.D. Cal. 2006).  But the Court need not rest its decision on this fact alone; Hollek was vice president of operations and development in the Gulf of Mexico.  He testified that his responsibilities included the evaluation and appraisal of new endeavors.  Moreover, Hollek was interested in the damage of the *Marianas* because he was evaluating a BP-Anadarko partnership on the Macondo tract.  His email correspondence, which concerns this potential partnership, is well within the scope of his employment.  The email is therefore not hearsay and should be admitted.

### 4.  TREX-02731

Halliburton objects to admission of TREX-02731 on hearsay grounds.  The exhibit is a single email authored by Kent Corser, a drilling engineering manager for BP, on May 7, 2010. Corser transmits the message to a number of recipients, including Larry Watters and Fred Sabins, both of CSI Technology.  The Court has disqualified Sabins and any employee of CSI from proffering expert testimony on BP's behalf during trial.  The disqualification order is irrelevant, however, to this particular trial exhibit; TREX-02731 is an email authored by a BP employee regarding cement testing performed as part of the Bly Investigation.  It is admissible as both a business record of BP and as a BP admission.

16

***Admissible as a Business Record.***   Corser was a member of the BP Internal Investigation Team ("IIT") that authored the Bly Report.  (*See* Depo. Tr. of K. Corser at 60.[14])  As the PSC has detailed in multiple pending motions in limine, the creation of the IIT, and the subsequent production of the Bly Report, was a matter dictated by BP's Group Defined Practices ("GDP").  The GDP defined the protocol by which IIT was required to investigate and the recordkeeping it was responsible to maintain.[15]  Furthermore, the GDP required the IIT to produce a Report that, *inter alia*, identified possible causes and made recommendations for the prevention of future incidents.

To further this end, Corser contracted with Fred Sabins of CSI to provide cement modeling work and to test the cement recipe recommended to BP by Halliburton.  (*Id.* at 251.)  CSI performed over 500 tests on representative cement samples and, once this data was transmitted to IIT, the investigation team conducted a peer review of the results.  (Depo. Tr. of K. Corser, Day II at 239-40.)  The record contains numerous email communications between Corser and employees of CSI; TREX-02731 is, in fact, representative, for it illustrates an exchange of laboratory data that was commonplace during production of the Bly Report.  (*See, e.g.*, *id.* at 233-40 (detailing repeated interaction with Sabins and CSI).)  In short—and for the reasons expanded upon in two Bly-Report-related motions in limine—members of the IIT (like Corser) were under a duty to create the records that underlie the Bly Report.  A review of the record demonstrates that lab tests were routinely exchanged with CSI via email.  What is more, trial testimony will further demonstrate the regularity and necessity with which BP engineers

---

[14] The relevant portions of Kent Corser's deposition transcript are attached hereto as Exhibit D.

[15] BP's Group Defined Practices for internal incident investigation are detailed more fully in the PSC's motion in limine to admit the Bly interview notes, *see supra* note 5, and the PSC's opposition to Halliburton's motion to exclude Appendix K of the Bly Report, (*see* PSC Ltr. Br. of Jan. 17, 2012).

17

communicated via email.[16]   The Court should admit Corser's May 2010 email because it was created as part of IIT's routine business practice and exhibits the indicia of trustworthiness one would expect in a business record.

*Admissions By a Party Opponent.*   At the very least, the Corser email is an admission against BP.   It should be clear from the discussion above that Corser was a member of the IIT performing an incident investigation pursuant to company protocol.   Accordingly, he hired CSI to conduct cement testing.   The May 2010 email, which focuses upon the results of that testing, is clearly within the scope of Corser's employment responsibilities.   It is an admission and, thus, not hearsay.[17]

### 5.   TREX-02964

*Not for the Truth of the Matter Asserted.*   TREX-02964 is not inadmissible hearsay because it is not offered for the proof the matter asserted.   TREX-02964 is but one of a series of email communications between BP Bly investigative team members, other BP employees, and employees of CSI, a company retained by BP to perform certain cement testing in conjunction with BP's internal investigation that culminated in the "Bly Report."   Together, the series of emails reveal the nature and extent of communication between BP and CSI on the cement testing, specifically the manner in which BP guided and manipulated the testing performed and thus influenced the results.   In TREX-02964, BP employee Warren Winters requests a draft of a CSI report, provides instructions for its transmittal to BP, and proposes an "in person" meeting later in the week. CSI employee David Brown then responds to Winters that the report is

---

[16] *See supra* note 8.
[17] This exhibit is also admissible to show the manner in which BP guided and manipulated the testing performed by CSI.   Accordingly, TREX-02731 may be used in a fashion similar to TREX-02964.

exceeding his mailbox size limit, and other statements that evidence his transmittal of CSI's draft report to BP in May 2010.  Brown then further elaborates regarding the progress and current status of CSI modeling and analysis, and seeks guidance from BP regarding how CSI should proceed.

As set forth in Section II(b)(2) above, Federal Rule of Evidence 801 does not operate to exclude out-of-court statements "offered for some purpose other than to prove the truth of the matter asserted."  *Parry*, 649 F.2d at 295.  Exhibit TREX-02964 is not offered to prove any of the assertions contained within it.  For example, it is not offered to prove that the size of Winter's mailbox indeed was exceeded by the size of the report, that he was available to meet in person later that week, or any of Brown's characterizations of the status of CSI's work or information contained in the draft report that he conveys in the email.  Rather TREX-02964, as well as the related email communications that precede and follow it documenting BP and CSI communications on their testing and reports, are offered to illustrate the nature and extent of BP's role in, and influence over, CSI's testing and reporting process.  Consequently, they are not hearsay and Rule 801 does not preclude their admission as evidence.

### 6.  *TREX-03112*

Trial Exhibit TREX-03112 is objected-to by Transocean and BP on hearsay grounds. The PSC and USA assert that the exhibit is admissible as a statement against interest by Halliburton employee Christopher Haire pursuant to Federal Rule of Evidence 804(b)(3).

**Statement Against Interest.**  An out-of-court utterance that otherwise would be hearsay is admissible if it is a "statement against interest" by an unavailable declarant under Federal Rule of Evidence 804(b)(3).  A declarant who "is exempted by ruling of the court on the ground of

privilege from testifying concerning the subject matter of the declarant's statements," or who "persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so" is unavailable for the purposes of Rule 804.   Fed. R. Evid. 804(a)(1) & (2).   A classic example of unavailability of this nature is a witness, like Christopher Haire in this case, who refuses to testify and invokes his privilege against self-incrimination under the Fifth Amendment to the United States Constitution.   *United States v. Thomas*, 571 F.2d 285, 289 (5th Cir. 1978) (witness' "testimony was clearly unavailable under Rule 804(a)(1), which defines unavailability to include declarants not testifying because of privilege.   [Witness] did not take the stand, obviously relying on the privilege against self-incrimination.   His unavailability based on the Fifth Amendment privilege satisfies 804(a)(1)").   At his deposition in this matter, Christopher Haire declined to answer all questions related to his work for Halliburton on the *Deepwater Horizon*, including the subject matter of his statement in Exhibit TREX-03112 by asserting his Fifth Amendment privilege.

Rule 804(b)(3), goes on to define, in relevant part, a statement against interest as one that:

> a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency . . . to expose the declarant to civil or criminal liability.

Fed. R. Evid. 804(b)(3).   Haire's statement in Exhibit TREX-03112 is precisely the sort of statement that is against his pecuniary interest and that could subject him to civil, possibly even criminal liability.   In Exhibit TREX-03112, an email from Haire to his Halliburton colleague and fellow survivor of the *Deepwater Horizon* explosion Vince Tabler, Haire observes that despite

20

recent reports that the negative pressure tests conducted on the rig were "considered successful,"[18] Haire himself had "found them to be unsuccessful" and asks Tabler if he knew why Transocean and BP were describing the tests otherwise.   As such, Haire confides in his colleague that Haire regarded the negative pressure tests as unsuccessful.   Other evidence in the case has established that all employees, regardless of employer, who worked on the *Deepwater Horizon* had so-called "stop work" authority on the rig, i.e. the ability to shut down any operation if they perceived a safety hazard, however no employee did so during the entirety of the temporary abandonment process before or after the negative pressure tests.   In Exhibit TREX-03112, Haire effectively admits to his colleague that he had found the negative pressure tests to be unsuccessful.   Yet, Haire did nothing to stop the operation or otherwise raise an alarm, instead allowing the temporary abandonment of the well to continue, ultimately concluding in the well blowout and explosion on the *Deepwater Horizon*.   This is the sort of admission that could subject Haire to liability (as is evidenced by the fact of his assertion of his Fifth Amendment privilege) and is properly regarded as a statement against interest, admissible pursuant to Rule 804(b)(3).   *See Thomas*, 571 F.2d at 288-289 (co-defendant/declarant's comment that defendant ought to be let go because he had nothing to do with the crime revealed the declarant's own knowledge of the crime and therefore was a statement against the declarant's interest).   *See also*, *United States v. Triplett*, 922 F.2d 1174, 1182 (5th Cir. 1991) (declarant's statements placed him at the scene of a fatal arson fire and therefore were statements against interest).

---

[18] This portion of Haire's statement is not offered for the truth of the matter asserted—*viz.*, to show that the negative pressure tests were indeed successful—but rather to place the remainder of Haire's statement in context.   In other words, it explains that which prompted Haire's statement to Tabler.

### 7. *TREX-06228*

BP objects to TREX-06228, but only appears to take issue with two statements contained in the lengthy document, namely the following comments made by BP employees Daryl Kellingray and Bryan Chambers:

> Chambers: can see that [the MBI attorneys] are working [BP employee David Sims] on the ve test and he is thinking ok on his feet . . .
>
> Kellingray:  Never worked with Guide so be interesting to see what he says if he does not plead the 5th

(BP Ltr. of Jan. 31, 2012 at 6.)  BP contends that these statements are not party admissions because they fall outside the scope requirement of Rule 801(d)(2)(D).  BP is incorrect.  All four individuals—both Kellingray and Chambers, as well as Sims and Guide—are BP employees who had been assigned responsibilities for operations on the Macondo well.  The impressions that Chambers and Kellingray formed about their colleagues' testimony, and their comments about the same, is itself subject matter that concerns the Macondo well operations.  Their commentary therefore concerns job responsibilities that all four individuals shared.  This commentary falls squarely within Rule 801(d)(2)(D), which requires only that the statement concern a matter within the scope of the agency or employment.[19]

---

[19] Even if the Court disagrees, these comments may come in as non-truth statements.

## III.  CONCLUSION

For the foregoing reasons, the PSC and the United States respectfully request that the Court admit into evidence the above-described email communications exhibits, and deem any untimely hearsay objections waived for failure to adhere to the Court's September 2, 2011 scheduling order.

This 1st day of February, 2012.


Respectfully submitted,


/s/   Stephen J. Herman_____.          /s/   James Parkerson Roy_____
**Stephen J. Herman**                       **James Parkerson Roy**
La. Bar No. 23129                           La. Bar No. 11511
**HERMAN HERMAN KATZ & COTLAR LLP**         **DOMENGEAUX WRIGHT ROY & EDWARDS LLC**
820 O'Keefe Avenue                          556 Jefferson Street, Suite 500
New Orleans, LA 70113                        LAFAYETTE, LA 70501
Telephone: (504) 581-4892                   Telephone: (337) 233-3033
Fax No. (504) 569-6024                      Fax No. (337) 233-2796
E-Mail: sherman@hhkc.com                    E-Mail: JIMR@WRIGHTROY.COM
*Plaintiffs' Liaison Counsel*               *Plaintiffs' Liaison Counsel*


**IGNACIA S. MORENO**                        **TONY WEST**
Assistant Attorney General                   Assistant Attorney General
Environmental   &   Natural   Resources     Civil Division
Division

JAMES NICOLL                                 PETER F. FROST
Senior Counsel                               Director, Torts Branch, Civil Division
NANCY FLICKINGER                             Aviation & Admiralty Litigation
Senior Attorney                              STEPHEN G. FLYNN
SARAH HIMMELHOCH                             Assistant Director
Senior Attorney                              MICHELLE T. DELEMARRE
DEANNA CHANG                                 SHARON K. SHUTLER
SCOTT CERNICH                                JILL DAHLMANN ROSA
A.  NATHANIEL CHAKERES                       JESSICA SULLIVAN
JUDY HARVEY                                  JESSICA L. MCCLELLAN

23

MATT LEOPOLD
GORDON YOUNG
JEFFREY PRIETO
ABIGAIL ANDRE
Trial Attorneys

/s/ Steven O'Rourke
**STEVEN O'ROURKE**
Senior Attorney
U.S. Department of Justice
Environmental Enforcement Section
PO Box 7611
Washington, DC 2044
(202) 514-2779
steve.o'rourke@usdoj.gov

JAMES LETTEN
United States Attorney

SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
Hale Boggs Federal Building
500 Poydras St., Suite B-120
New Orleans, LA 70130

Attorneys for the UNITED STATES OF
AMERICA

MALINDA LAWRENCE
DAVID J. PFEFFER
ROBIN HANGER
LAURA MAYBERRY
BRIENA STRIPPOLI
Trial Attorneys
U.S. Department of Justice
Torts Branch, Civil Division
PO Box 14271
Washington, DC 20044
(202) 616-4100
(202) 616-4002 fax

/s/ R. Michael Underhill
**R. MICHAEL UNDERHILL, T.A.**
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
7-5395 Federal Bldg., Box 36028
450 Golden Gate Ave.
San Francisco, CA 94102-3463
(415) 436-6648
(415) 436-6632 fax
mike.underhill@usdoj.gov

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Memorandum will be served on all

counsel pursuant to Pre-Trial Order No. 12 *via* Lexis-Nexis File & Serve, and that the

Memorandum will also be filed *via* the Clerk of Court's ECF system thereby effecting notice

pursuant to the procedures adopted in MDL No. 2179, this 1st day of February, 2012.

    /s/ Stephen J. Herman and James Parkerson Roy