

DALLAS  HOUSTON

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041

214.939.4400
800.662.8393
214.760.7332  Fax

**GodwinRonquillo.com**

DONALD E. GODWIN, SHAREHOLDER
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:     214.939.4412
DIRECT FAX:     214.939.4803
DGodwin@GodwinRonquillo.com

February 1, 2012

**BY EMAIL**

The Honorable Carl J. Barbier          The Honorable Sally Shushan
United States District Judge            United States Magistrate Judge
500 Poydras Street, Room C-268          500 Poydras Street, Room B345
New Orleans, Louisiana  70130           New Orleans, LA 70130

Re:   Letter Brief Re Hearsay Objections to Trial Exhibits 151, 2731, 2964, and
      1057: Email strings contained in the PSC 300

Dear Judge Barbier and Magistrate Judge Shushan:

In accordance with the Court's order dated January 11, 2012 (Rec. Doc. 5143) (the "Order") and as requested in the January 27th Working Group Conference, this letter brief identifies the four exhibits from the PSC's list of 300 that the PSC and HESI agreed to brief regarding the business records exception to the hearsay rule and party admissions.[1]  The PSC and HESI could not come to a resolution regarding Exhibits 151, 2731, 2964, and 1057 and this brief is limited to these exhibits.   HESI objects to and moves to strike Exhibits 151, 2731, 2964, and 1057 as inadmissible hearsay.[2]

I.      **Business Records**

Pursuant to the Order, the offering party must prove the following five elements for an email chain to qualify as a business record:

---

[1] With respect to Exhibit 1966, the PSC agreed to remove pages BP-HZN-MBI00021242 to BP-HZN-MBI00021282, and in turn, HESI agreed to waive its objection to the exhibit as amended.

[2] HESI reserves all other non-hearsay objections to these exhibits, including but not limited to those submitted in Rec. Docs 4525 and 4137.  Additionally, HESI reserves the right to object to any emails which were not originally designated on the "PSC 300" list.

1. The email was sent or received at or near the time of the event(s) recorded in the email.  Order at 6.

2. The email was sent by someone with knowledge of the event(s) documented in the email.  *Id*.

3. The email was sent or received in the course of regular business activity which requires a case-by-case analysis of whether the producing defendant had a policy or imposed a business duty on its employee to report or record the information within the email.  *Id*. at 6-7.

4. It is the defendant's "regular practice to send or receive emails that record the type of event(s) documented in the email."  This requires proof of a policy of the producing defendant to use email to make certain reports.  *Id*. at 7.

5. "A custodian or qualified witness must attest that these conditions have been fulfilled."  *Id*.

## II. Party Admissions

Pursuant to the Order, "a forwarded email is only an adoptive admission if it is clear that the forwarder adopted the content or believed in the truth of the content." *Id.* at 10.  Additionally, a statement by an employee only qualifies as a party admission if the party authorized the employee to make such statement or it concerned a matter which was within the scope of employment of the employee.  *See* Fed. R. Evid. 801(d)(2)(C) and (D).  "The mere fact that a producing defendant's employee sent an email while at work from a work computer to a co-employee does not mean that the email was composed or received concerning a matter within the scope of an employee's employment."  Order at 10.

## III. Inadmissible Hearsay

The following exhibits are inadmissible under Rule 802 of the Federal Rules of Evidence because they contain out of court statements offered for the truth of the matters asserted, and they do not fall within any exception to that rule.

A. Exhibit 151:  This exhibit is an email from BP's in-house counsel, James Lucari, to his paralegal with a copy to numerous individuals involved in BP's Bly investigation.  Lucari's email forwards notes from the Bly team's post-incident interviews of David Sims, BP's GOM Wells Operations Manager, and John Guide, a BP Wells Team Leader.[3]  HESI sought the exclusion of this email, its attachment, and other similar documents in it's Motion to Exclude Non-Governmental Reports and Response to PSC's October 17, 2011 Letter Regarding Alleged *Daubert*/702 Issues.  *See* Rec. Doc. 4894.  HESI incorporates by reference the arguments and authorities cited therein.

---

[3] The exhibit includes the Sims interview notes but not the Guide interview notes.

Exhibit 151 is not a business record because neither the email nor attachment were created in the regular course of business, but rather for purposes of litigation.[4] Exhibit 151 also includes double hearsay because the attached notes (one layer of hearsay) purport to depict the interviewers' and Sims' oral statements (the second layer of hearsay). Clearly, Lucari, his paralegal, and the others on the Bly team have no personal knowledge of the information purportedly obtained from Sims.

Additionally, Exhibit 151 is not a business record because the communications were not at or near the time of the events described therein. The incident occurred on April 20, 2010, the interview purportedly occurred on June 24, 2010, and the email was sent on July 10, 2010. Because the double hearsay contained in the attachment was obtained 68 days after the incident, the communication was not at or near the time of the events described in the notes. Similarly, because 16 additional days passed before the notes were made "final" and transmitted, the email and attachment were not created at or near the time of the events described therein.

Furthermore, HESI is not aware of any BP policy requiring communications of this nature to be recorded in this manner. The PSC cannot show that it is BP's regular practice to send or receive emails that record the events purportedly documented in this email and attachment. The email and attachment constitute hearsay without an exception, and while they may be used as admissions by and against BP, they cannot be used against HESI.

B.   <u>Exhibits 2731 and 2964</u>[5]:   These post-incident emails are between and among members of the Bly team and BP's recently disqualified cement experts, Fred Sabins, Larry Watters, David Brown, and other CSI Technologies, Inc. employees. HESI previously sought the exclusion of these emails and other CSI documents in it's Motion to Exclude testimony, documents, and other evidence reflecting the expert opinion(s) of Fred Sabins or CSI regarding the Macondo well. *See* Rec. Doc. 5142. HESI incorporates by reference the arguments and authorities cited therein.

The emails contain information related to CSI's modeling, investigation, and report. These emails are not business records because they were not prepared in BP's regular course of business, but rather in anticipation of litigation. *See* Rec. Doc. 4894

---

[4] *See* Rec. Doc. 4894. The Bly Report and related documents are classic examples of **accident reports** that are *not* prepared as part of the systematic conduct of "the business as a business." Instead, these documents were created with an eye towards litigation, not in the conduct of the business. Accordingly, they are not entitled to exemption from the prohibition against hearsay. *See Palmer v. Hoffman*, 318 U.S. 109, 114 (1943)(excluding railroad engineer's accident report because its primary utility was for litigation, not for the business of railroading); *see also Thakore v. Universal Machine Co. of Pottstown*, 670 F. Supp. 2d 705, 720-24 (N.D. Ill. 2009)(rejecting "business record" exception to accident report that employed a "TapRoot Root Cause Tree" analysis).

[5] These exhibits also express expert opinions which are not based upon sufficient facts and are not the product of reliable principles or methods pursuant to FRE 702.

and *supra* fn 4.  It is not BP's regular business activity to communicate with outside consultants about post-accident cement modeling or post-accident cement investigation reports.  Additionally, because David Brown and Warren Winters are not BP employees, they had no business duty to BP to report or record the information within the emails.[6]

The PSC cannot establish that these emails are CSI business records either.  David Brown and the other CSI employees have been disqualified in this matter and thus they cannot establish that these emails constitute CSI's regular business activities or that any of the CSI representatives had a business duty to record and maintain such information in this form.  Further, HESI is not aware of any BP or CSI policy that the information contained in the emails should be regularly recorded in an email.

C.   Exhibit 1057[7]:  This email contains a tactless joke from Robert Bodek, a BP Operations Geologist, to Brian Morel, a BP Drilling Engineer.  The exhibit was thoroughly discussed in Bodek's deposition and explained in its entirety on pages 158 line 16 through 159 line 13 (emphasis added):

\*   \*   \*

A.   I did.  I wasn't -- this – I meant this as *just kidding*.  Brian is a -- Brian is a friend of mine.  Just disappointed that we did get a poor leak-off test.  *I wasn't sure that it was a cement job*.  Like I said, you can get a poor leak-off test -- there could be several ways you can get a poor leak-off test.  A poor cement job is one of the ways.  And *I used this expletive in this kidding statement when talking with a friend at an expense of another co-worker*.

Q.   Yeah.  And basically you got a poor leak-off test result, and you thought it was a result of a poor cement job.  That's what you said, right?

A.   *I was kidding.  I did not know*.

Q.   Okay.

A.   Like I said, there's several ways you can get an undesirable low leak-off test.  *I didn't know it was cement job*.  I was making -- *I was kidding*.

\*   \*   \*

The email was sent casually, and Bodek admitted that he had no personal knowledge of the cement job.  *See id*.  Bodek admitted that he had no knowledge as to whether or not the referenced leak-off test had any relation to the cement job whatsoever.

---

[6] *See* Rec. Doc. 5367.

[7] HESI also objects to the extent that this exhibit is incomplete (FRE 106); that the author lacks personal knowledge (FRE 602); and that it renders an expert opinion not qualifying under FRE 702.

*See id*.  This email was an isolated event, sent for personal amusement, and was not created in the course of a regularly conducted business activity.  The PSC cannot show that this email was sent in the regular course of business, that it was BP's regular practice to send and receive such emails, or that Bodek had a business duty to send it.  There is no BP business policy or duty obligating employees to send such emails.  Therefore, it does not fall within the business records exception.

The email is not a party admission because BP did not authorize Bodek to make such a statement.  As an Operations Geologist, the statement was not a matter which was within the scope of Bodek's employment.  Bodek's deposition testimony makes clear that he did not adopt the content or believe in the truth of the content.

For the foregoing reasons, HESI respectfully requests that the Court sustain its hearsay objections to Exhibits 151, 2731, 2964, and 1057.

Respectfully submitted,

Donald E. Godwin

DEG:JLM