

FRILOT | LLC

ATTORNEYS AT LAW

Frilot L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Phone: 504.599.8000
Facsimile: 504.599.8100
www.frilot.com

**Kerry J. Miller**
**Telephone: (504)599-8194**
**Facsimile: (504)599-8145**
**E-mail: kmiller@frilot.com**

January 30, 2012

BY EMAIL
Magistrate Judge Sally Shushan
United States District Court
500 Poydras Street
New Orleans, LA 70130

      Re:     In Re: Deepwater Horizon
                 Civil Action No. 10-md-02179

Dear Judge Shushan,

     This letter will serve as Transocean's letter brief in response to BP's letter brief on the issue of whether Jesse Gagliano should be deposed and the issue of admissibility of his testimony in the Phase I Trial.

**Introduction and Summary:**

     BP has submitted a letter brief (Document No. 5441) arguing that Jesse Gagliano, a Halliburton employee, should not be deposed and that his testimony should be inadmissible in the Phase I trial. To succeed, BP would have to show at a minimum that it would be prejudiced by Mr. Gagliano's testimony. BP recognizes that burden and attempts to satisfy it by stating that it had to prepare its defense "without the benefit of any testimony from Mr. Gagliano." That statement is belied by the fact that Mr. Gagliano has testified on two prior occasions, as BP acknowledges (p. 2, Ltr.). On June 11, 2010 Mr. Gagliano testified in an interview with a congressional committee, which testimony is an exhibit in this case. Mr. Gagliano testified again under oath on August 24, 2010 before the Joint Investigation Committee.[1] At the JIT hearing, BP conducted a vigorous cross-examination of Mr. Gagliano. The fact that the congressional testimony and the JIT is inadmissible does not mean that BP is unaware of the content of Mr. Gagliano's testimony. In addition to Mr. Gagliano's own sworn testimony, BP is aware of Mr. Gagliano's account of the events through documentary evidence in this case that includes emails between Mr. Gagliano and BP's own engineers and well leaders concerning the critical facts of the cementing procedure. In short, BP cannot show prejudice because BP has known of the content of Mr. Gagliano's testimony for well over a year and has had ample time to prepare.

---

[1]  The JIT testimony is available at http://www.uscg.mil/hq/cg5/cg545/dw/exhib/.

Honorable Sally Shushan
United States Magistrate Judge
Page 2 of 4
January 30, 2012

Further, BP has offered no evidence that Mr. Gagliano has "gamed the system" by claiming the Fifth Amendment privilege and then withdrawing it. BP has made that bare assertion based purely on timing. But when the decisions on which BP relies are examined, it is clear that withdrawing the privilege when there is still time for fair discovery is not gaming the system. Many of the decisions on which BP relies involved attempts by a litigant, who previously invoked the Fifth Amendment privilege to later file an affidavit in response to a summary judgment motion, while still refusing to sit for a deposition. The opposite is true here. Mr. Gagliano is offering to testify under oath in a deposition. He is a fact witness, not a party.

A search for the truth is the ultimate objective of every trial. Accordingly, a witness with relevant knowledge should not be prevented from testifying except under exceptional circumstances. There are no such exceptional circumstances to preclude Mr. Gagliano from testifying. Preventing Mr. Gagliano from testifying could mean that other witnesses who have invoked the Fifth Amendment, including several BP employees, would also be barred if they withdraw their privilege. Indeed, the Court must ask itself whether BP's concern is Mr. Gagliano, or if its concern relates to the real possibility that its own witnesses, Morel, Vidrine, Kaluza, and Hafle might similarly decide to remove the Fifth Amendment burden placed upon them. Is BP trying to establish a ruling in this case that will prevent these men from testifying? Will BP seriously contend that these men could not be called to testify because it could prejudice BP? One thing is certain and that is, Mr. Gagliano should be permitted to testify.

**Argument and Authorities:**

In the very recent decision in *Davis-Lynch, Inc. v. Moreno*, _____ F.3d _____, No. 10-20859, 2012 WL 45415 (5th Cir. Jan. 11, 2012), the Fifth Circuit for the first time addressed the question of "whether and under what circumstances a party may withdraw its invocation of the Fifth Amendment privilege against self-incrimination in a civil case." *Id.* at *3. The court began by noting that such a decision is reviewed under an abuse of discretion standard, and the decision "is dependent on the particular facts and circumstances of each case." *Id.* at 3-4 (footnote omitted).

In that case, one defendant, Moreno, had attempted to withdraw a claim of Fifth Amendment privilege only one month prior the expiration of the discovery deadline. The district court denied that attempt. The Fifth Circuit ruled the denial was error and reversed. The Fifth Circuit explained that a party may not be allowed to withdraw the privilege when "a litigant who provides *previously withheld information* at summary judgment places the opposing party at a significant disadvantage in responding to such information." *Id.* at 4 (emphasis added). The court then stated:

> On the other hand, a party may withdraw its assertion of the Fifth Amendment privilege, even at a late stage in the litigation, if circumstances indicate that (1) the litigant was not using the privilege in a tactical, abusive manner, and (2) the opposing party would not experience undue prejudice as a result. [Citing *SEC v. Graystone Nash, Inc.*, 25 F.3d 187 (3d Cir. 1994)].

Honorable Sally Shushan
United States Magistrate Judge
Page 3 of 4
January 30, 2012

*Accord, Evans v. City of Chicago*, 513 F.3d 735, 742 (7th Cir. 2008)(witness was allowed to withdraw assertion of Fifth Amendment privilege five weeks prior to trial, provided the witness agreed to be deposed).

Because the Fifth Circuit had not previously addressed the issue, the court sought guidance from other circuit decisions, including *Graystone Nash, supra.* In that case, the Third Circuit ruled the district court had acted properly in allowing a defendant who had invoked the Fifth Amendment to present evidence in opposition to a motion for summary judgment. The court noted that it could be prejudicial to allow the withdrawal where "the adverse party – having conducted discovery and prepared the case ***without the benefit of knowing the content of the privileged matter*** – would be at a disadvantage." *Id.* at 191 (emphasis added). However, the court found that the SEC had already conducted numerous depositions on the same subject matter and "possessed substantial evidence in addition to the material" sought to be disallowed from evidence. *Id.* at 193. "The preclusion sanction did not 'level the playing field,' but strongly tilted it in favor of the SEC." *Id.* Relying on that reasoning, the Fifth Circuit in *Davis-Lynch* explained that in *Graystone Nash* there was no prejudice because "the SEC had collected a great deal of evidence during discovery, including 30,000 documents that one defendant had provided." 2012 WL 45415 at * 4.

The same is true here. Mr. Gagliano has testified extensively under oath before the JIT and Congress. BP cannot contend that it is disadvantaged because it does not have "the benefit of knowing the content of the privileged matter," *Graystone Nash, supra*, at 191. BP is fully aware of the contents of Mr. Gagliano's testimony and, in addition, is aware of the circumstances surrounding the cementing operations from emails between Mr. Gagliano and BP engineers and well leaders. *See Fed. Trade Comm'n v. Kitco of Nevada, Inc.*, 612 F.Supp. 1282, 1291 (D. Minn. 1985)(defendant, Farkas, was allowed to withdraw Fifth Amendment privilege and testify because the plaintiff "did receive pretrial information from Farkas" and "seemed able to anticipate through other witnesses what Farkas' testimony might be," thus, plaintiff "was not solely dependent upon what the testimony of Farkas for pertinent information."); *Fed. Trade Comm'n v. Sharp*, 782 F.Supp. 1445, 1453 (D. Nev. 1991)(defendant Edwards was allowed to testify because "Edwards is not the only, or even the primary source of pertinent information.").

The decisions on which BP relies are inapposite. BP cites two decisions, *Magsil Corp. v. Seagate Tech.*, Civ. A. No. 08-940, 2010 WL 2710472 (D.Del. July 7, 2010); and *Fed. Deposit Ins. Corp. v. First Heights Bank, FSB*, No. 95-CV-72722, 1998 WL 34367203 (E.D.Mich. Mar. 4, 1998), for the proposition that in complex litigation, the court should adhere to deadlines. Neither of those decisions concerned the propriety of the withdrawal of a Fifth Amendment privilege. Those decisions dealt instead with whether a party should be allowed to amend pleadings on the eve of trial to raise new issues. Three decisions relied on by BP did involve the withdrawal, but they also are not in point. In *Edmond v. Consumer Protection Div.*, 934 F.2d 1304 (4th Cir. 1991); *United States v. Parcels of Land*, 903 F.2d 36 (1st Cir. 1990); and *SEC v. Softpoint, Inc.*, 958 F.Supp. 846 (S.D.N.Y. 1997), parties who had invoked the Fifth Amendment and refused to be deposed attempted to submit their own affidavits when faced with motions for summary judgment. The courts, very understandably, did not allow the parties to refuse deposition discovery on the one hand and to submit their affidavits on the other hand. In *Parcels of Land, supra*, the witness first submitted an affidavit and then refused to be deposed, prompting

Honorable Sally Shushan
United States Magistrate Judge
Page 4 of 4
January 30, 2012

the court to rule:  "We hold that the district court had ample authority to strike Laliberte's affidavit after he invoked the fifth amendment and refused to answer the government's deposition questions."  903 F.2d at 43.  In *Softpoint*, *supra*, 958 F.Supp. at 858, the court refused to accept the witness' affidavit because he "provided no firm commitment that he actually will submit to deposition should the Court accept his affidavits opposing summary judgment."

In *Niebur v. Town of Cicero*, 212 F.Supp.2d 790 (N.D. Ill. 2002), on which BP relies, the court postponed trial for two weeks to allow the witness to testify at a deposition, but, "[f]ollowing the continuance, his attorney informed counsel that he would still claim his Fifth Amendment privilege."  *Id.* at 805.  Then, ***at trial***, the witness proposed to testify, after thwarting discovery.

The principle underlying the decisions on which BP relies is that a party or a witness should not be allowed to defeat discovery by claiming the Fifth Amendment privilege and then testify when the opposing party has been deprived of discovery.  By contrast, the issue here is whether Mr. Gagliano should be allowed to withdraw his Fifth Amendment privilege and testify at a deposition, not whether the Court should accept his affidavit while he is refusing to testify.

Mr. Gagliano has already testified twice.  BP has known for over a year what his testimony will be and surely has prepared its case in anticipation.  Additionally, all parties have been on notice that witnesses that invoked their Fifth Amendment rights could change their position and testify, depending on the status of the ongoing criminal investigation and advice from their individual counsel.  That is why the Fifth Amendment depositions were placed at the end of the fact deposition schedule and why the deposition designations of the Fifth Amendment witnesses are the last designations to be submitted to Judge Barbier.  In fact, adverse inference Fifth Amendment deposition designations have not yet been submitted to Judge Barbier.  BP has not been prejudiced, and there is no evidence that Mr. Gagliano or Halliburton has been engaged in tactical maneuvering.  If BP thinks otherwise, BP is free at the deposition to question Mr. Gagliano about the reason for his invocation of the privilege and why he has withdrawn it.

Respectfully submitted,


Kerry J. Miller


KJM/sw

cc:    Counsel Distribution via email