# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois  60654

J. Andrew Langan, P.C.
To Call Writer Directly:
312-862-2064
andrew.langan@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

February 2, 2012

**VIA E-MAIL**

Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana 70130

Re:   In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, MDL No. 2179

Dear Judge Shushan:

The silence is deafening.  Neither Halliburton nor Transocean – the only parties to oppose BP's objection – has provided any explanation whatsoever for Mr. Gagliano's 11th-hour decision to testify.  Neither identifies any change in circumstances that could explain Mr. Gagliano's decision.  In such circumstances, where the only apparent motivation is an attempt to game the system for strategic advantage, the Fifth Circuit's recent decision in *Davis-Lynch v. Moreno*, No. 10-20859, 2012 WL 45415 (5th Cir. Jan. 10, 2012), mandates that Mr. Gagliano not be allowed to testify.

Halliburton and Transocean do speak to BP's argument that it will suffer undue prejudice if Mr. Gagliano is allowed to testify.  But these responses both mischaracterize the facts and misapprehend the prejudice BP will suffer if Mr. Gagliano is allowed to testify.  Indeed, the responses underscore both Mr. Gagliano's critical role in the events at issue and the degree to which his testimony has the potential to impact the record with regard to documents, fact-witness testimony, and expert-witness opinions and testimony.

The Court may permit Mr. Gagliano to testify only "if circumstances indicate that (1) [Mr. Gagliano] was not using the privilege in a tactical, abusive manner, ***and*** (2) [BP] would not experience undue prejudice as a result."  *Davis-Lynch*, 2012 WL 45415 at *4 (emphasis added). As the Fifth Circuit's decision indicates, this is an objective test based on circumstances – not the self-serving representations of counsel, or the witness for that matter.  Moreover, the burden is on the party seeking permission for the testimony.  Finally, both criteria must be satisfied. Neither has been satisfied here.

Hong Kong     London     Los Angeles     Munich     New York     Palo Alto     San Francisco     Shanghai     Washington, D.C.

## KIRKLAND & ELLIS LLP

February 2, 2012
Page 2


I.   **The Circumstances of Mr. Gagliano's Invocation and Withdrawal of His Fifth Amendment Privilege Reflect Litigation Strategy, Not a Legitimate Desire to Protect Against Self-Incrimination.**

There is no dispute on the facts. Despite the threat of potential criminal liability that arose in the immediate aftermath of the sinking of the *Deepwater Horizon*, over the course of the next four months Mr. Gagliano consented to be interviewed by the BP IIT Team and the Congressional Committee on Energy and Commerce, and testified at the Marine Board of Investigation hearing. (HESI Response at 2; TO Response at 1.) Yet one year later, when it came time for Mr. Gagliano to testify in this litigation, he invoked the Fifth Amendment and refused to give any substantive testimony. BP does not dispute that Mr. Gagliano is entitled to enjoy the protection against self-incrimination afforded by the Fifth Amendment to the U.S. Constitution. Of course (contrary to the ersatz outrage expressed in Halliburton's response), Mr. Gagliano's *invocation* of the right is not the issue – it is his decision to *withdraw* that invocation that demands scrutiny. Although, it is certainly relevant that Mr. Gagliano's decision to not testify cannot be explained solely by the threat of criminal prosecution, which existed at the time of his earlier interviews and testimony, and which by all indications still exists today. The only objective circumstance to coincide with his refusal to testify has been the discovery period in this litigation.

Now that trial is just around the corner, Mr. Gagliano has changed his mind again. There is no objective evidence to indicate that Mr. Gagliano's recent decision was motivated by any change in the potential for criminal prosecution. BP is not aware of, and neither Halliburton nor Transocean have indicated any change in, circumstances that would explain Mr. Gagliano's decision to withdraw his prior invocation of the Fifth Amendment. The only thing that is different is that the trial is about to start, and he has, apparently, decided he wants his testimony to be heard.

What to do with a key witness who, having spoken openly about the matters at issue in several fora, unilaterally exempts himself from the fact discovery process and then, after discovery is closed, the factual record set, expert reports written, and expert depositions taken, unilaterally decides he wants to participate? The Fifth Circuit's decision in *Davis-Lynch* provides a clear answer: ***Absent circumstances indicating that the witness is not trying to "abuse, manipulate or gain an unfair strategic advantage over opposing parties," he should not be allowed to testify.*** *Davis-Lynch*, 2012 WL 45415 at *4. The only relevant circumstances identified here by any party (or Mr. Gagliano himself for that matter) are that Mr. Gagliano can now testify after hearing what everyone else had to say first, after seeing the expert opinions, and without fear of being contradicted by other fact or expert witnesses to follow.

**KIRKLAND & ELLIS LLP**

February 2, 2012
Page 3

BP's position is ***not*** that a witness, once having invoked the Fifth Amendment, cannot withdraw that invocation and testify.  Indeed, as Halliburton notes, BP has suggested there may come a point in time where any or all of the witnesses who have invoked the Fifth Amendment may decide to testify – presumably when criminal investigations or prosecutions have run their course as to them.  In order to protect the integrity of the discovery and trial processes, however, there must be some explanation as to why, having refused to testify, the Court should allow the witness to give evidence.  Absent any such showing, and particularly here where the invocation conveniently "bookended" the discovery period in this litigation, withdrawal should not be permitted.  *See Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 ("The rights of the other litigant must be taken into consideration 'when one party invokes the Fifth Amendment during discovery, but on the eve of trial changes his mind and decides to waive the privilege.  At that stage, the adverse party-having conducted discovery and prepared the case without the benefit of knowing the content of the privileged matter-would be placed at a disadvantage.") (quoting *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994).  Any other result would reward and encourage gamesmanship – in this and future cases.

## II.     BP Will Suffer Undue Prejudice if Mr. Gagliano is Allowed to Testify.

Both Halliburton and Transocean focus their responses on BP's argument that allowing Mr. Gagliano to testify will result in undue prejudice to BP.  In doing so, both responses misrepresent the facts and misapprehend the prejudice to BP.

Both responses attempt to portray Mr. Gagliano's anticipated testimony as old news.  They claim that all the documents, the testimony of others, and Mr. Gagliano's prior statements will serve to render his trial testimony a boring rehash of facts well-known to all concerned.  As an initial matter, this is pure speculation – no one knows, nor has anyone offered to represent in any binding way – what Mr. Gagliano will say once he takes the oath in this litigation.  More fundamentally, if this testimony is so obvious, why bother?  Neither Halliburton nor Transocean take issue with BP's characterization of Mr. Gagliano as the only Halliburton employee "who was actually there on the scene designing and involved with decisions regarding the cement slurry."  (BP Objection at 2.)  And Halliburton in particular goes to great lengths to emphasize the large number of documents relevant to Mr. Gagliano's conduct, his central role in the testimony of at least nine other fact witnesses, and the unique position he is in with regard to the expert opinions regarding the cementing of the Macondo Well.

These circumstances make it ***more*** important, not ***less***, that Mr. Gagliano's testimony comes into evidence as part of a controlled discovery process, and is not sprung on the parties at the last minute.  The reason is simple:  As these arguments demonstrate, Mr. Gagliano's testimony will not exist in a vacuum; it will be intricately intertwined with an extensive fact and

**KIRKLAND & ELLIS LLP**

February 2, 2012
Page 4

expert record that was developed without his input or participation.  Indeed, Transocean's claim that "BP has known for over a year what his testimony will be and surely has prepared its case in anticipation" (TO Response at 4) is precisely backwards.  BP – and the other parties – have prepared their cases *without* his testimony and in reliance on his self-imposed unavailability.

The attempts by Halliburton and Transocean to distinguish the case law are of little merit.  As the *Davis-Lynch* court made clear, these cases all turn on their particular facts, and it is easy to paint one circumstances as more egregious than another and claim a "distinction" where none exists.  Suffice it to say, however, that none of the cases cited by Halliburton and Transocean involved a critical witness in a massive multi-party case like this – circumstances that exacerbate the risk that strategic invocations and withdrawals of privileges will work harm in many different ways.

The particular case-specific arguments made by Halliburton and Transocean do not help their position.  The notion that Mr. Gagliano's attempt to withdraw the invocation is "timely" does not even pass the red-face test.  True, he did not wait until the trial actually started, but that is just about all that can said in support of this argument.  The point is not that there is insufficient time to take his deposition.  The point is that it is impossible to reconstruct the discovery – and in particular the expert work and expert discovery, that would have occurred *after* Mr. Gagliano went on record with his trial testimony – that will be impacted by his testimony.  *See SEC v. Merrill Scott & Associates, Ltd.*, 505 F. Supp. 2d 1193, 1210 n.13 (finding party's offer to submit to a deposition in support of his sudden waiver of previously invoked Fifth Amendment privilege "not sufficient" in light of timing of waiver and recognizing opposing party's argument that waiver would require "'completely reopen[ing]'" discovery and witness depositions) (citing *Parcels of Land*, 903 F.2d 36, 45 (1st Cir. 1990).  Likewise off-base is the argument that BP is injecting new evidence into the expert record.  Mr. Gagliano's decision to testify was announced after BP's expert disclosures were complete; Halliburton filed a new cement expert report two days ago, obviously knowing Gagliano was seeking to testify and presumably with knowledge of what that testimony is likely to be on key issues.

Transocean's suggestion that BP is objecting to Mr. Gagliano's testimony to preclude its own employees from withdrawing their Fifth Amendment invocations and testifying at trial is absurd.  There is no reason to suspect that any BP employees who have invoked the Fifth Amendment will come forward to testify unless there is some change in their circumstances with regard to potential criminal matters.  The more realistic worry is that Transocean – which frankly protests too much to BP's objection to Mr. Gagliano – is intending to have its employees make selective, strategic withdraws of the privilege prior to or during trial.

# KIRKLAND & ELLIS LLP

February 2, 2012
Page 5

   Finally, Transocean expressly and Halliburton implicitly paint BP as acting to frustrate the "search for truth." BP has no general aversion or objection to witnesses who, having invoked the Fifth Amendment, decide to testify – provided the change is motivated by a change in circumstance and the testimony is introduced into the record in a way that does not work undue prejudice. Mr. Gagliano's decision to testify fails both tests.

## CONCLUSION

   BP respectfully requests that Mr. Gagliano not be allowed to withdraw his invocation of the Fifth Amendment for purposes of the Phase I trial.

              Very truly yours,

              /s/ J. Andrew Langan, P.C.

cc:  Richard C. Godfrey, P.C.
    Robert C. "Mike" Brock
    Don K. Haycraft
    Steve Herman
    James Roy
    Mike Underhill
    Luther Strange
    Corey Maze
    James Trey Phillips
    Megan Terrell
    MDL 2179 Defense Liaison Counsel