Case No. 12- _____ _____

# UNITED STATES COURT OF APPEALS FOR

## THE FIFTH CIRCUIT

## IN RE GABRIEL SANCHEZ

**From the United States District Court
for the Eastern District of Louisiana, Division "J"**

**MDL No. 2179**

**IN RE: OIL SPILL
by the OIL RIG "DEEPWATER HORIZON"
in the GULF OF MEXICO, on APRIL 20, 2010**

**WRIT OF MANDAMUS**

**<u>PETITIONER'S WRIT OF MANDAMUS</u>**

Date: February 6, 2012

Respectfully submitted,

**The BUZBEE Law Firm**

Anthony G. Buzbee
State Bar No. 24001820
S.D. Tex. I.D. No. 22679
J.P. Morgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909
<u>www.txattorneys.com</u>

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

## CAUSE NO. 12-_____

|  |  |
|---|---|
| **IN RE GABRIEL SANCHEZ** | § |
| | § |
| **PETITIONER** | § |
| | § |
| | § |
| | § |
| | § |
| | § |

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Petitioner Gabriel Sanchez.

2. Counsel for Petitioner, Anthony G. Buzbee on behalf of The Buzbee Law Firm and Bret Griffin, Bret Griffin, PC.

3. Claimants and Counsel of Record in *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* MDL No. 2179. Thousands of claimants have filed claims in the litigation, represented and unrepresented.  Some of which are identified in Appendix A.

4. Limitation Complainant, and Defendants in *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* MDL No. 2179, including but not limited to BP, PLLC and its related entities, Transocean, Ltd., and its related entities, Halliburton Energy Services, Inc. and its related entities, Cameron Corporation and its related entities. See full list attached as Appendix B.

5. Counsel for Defendants, see Appendix A for a complete list.

6. Members of the Plaintiffs Steering Committee:

    a.  Jim Roy, Co-Liaison Counsel

    b.  Stephen Herman, Co-Liaison Counsel

    c.  Brian H. Barr

    d.  Jeffrey Breit

    e.  Elizabeth Cabraser

    f.  Philip F. Cossich, Jr.

    g.  Robert T. Cunningham

    h.  Alphonso Michael Epsy

    i.  Calvin C. Fayard, Jr.

    j.  Robin L. Greenwald

    k.  Ervin A. Gonzalez

    l.  Rhon E. Jones

    m. Matthew E. Lundy

    n.  Michael C. Palmintier

    o.  Paul M. Sterbcow

    p.  Scott Summy

    q.  Mikal C. Watts

r.  Joseph Rice

7. United States District Court Judge, the Honorable Carl Barbier.

8. United States Magistrate Judge, the Honorable Sally Shushan.

**THE BUZBEE LAW FIRM**

/s/Anthony G. Buzbee
Anthony G. Buzbee
State Bar No. 24001820
S.D. Tex. I.D. No. 22679
J.P. Morgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

**ATTORNEY FOR PETITIONER**

## Request for Oral Argument

Petitioner, Gabriel Sanchez respectfully requests oral argument. This writ of mandamus requests the Court to vacate the Order entered in the instant case on January 18, 2012, Amending and Superceding the Court's Previous Orders of December 28, 2011 (Rec.Doc.5022) and January 4, 2012 (Rec.Doc.5064), establishing an account and reserve. Oral discussion of the facts and applicable precedent would benefit the Court.

Respectfully submitted,

THE BUZBEE LAW FIRM

Anthony G. Buzbee
State Bar No. 24001820
S.D. Tex. I.D. No. 22679
J.P. Morgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909
www.txattorneys.com

**ATTORNEY FOR PETITIONER**

# TABLE OF CONTENTS

I.     STATEMENT OF THE CASE ...................................................................................2

II.    ISSUES PRESENTED .............................................................................................4

III.   ARGUMENT ...........................................................................................................6

   A.   Issuance of a Writ of Mandamus Is Appropriate because the  Order Violates the Stated
        Purpose of the Oil Pollution Act of 1990 .........................................................7

   B.   A Clear and Undisputable Right to the Writ Exists.........................................10

      1.   PSC Cannot Prove it Conferred a Benefit to Settling Claimants..........................11

      2.   The Only Inquiry by the GCCF is Inquiry of Individualized Loss .....................14

      3.   PSC's Efforts Hindered Oil Pollution Act and GCCF Settlements ....................19

   C.   There Exists No Other Adequate Means to Obtain Relief .......................................21

IV.    RELIEF SOUGHT .................................................................................................24

# TABLE OF AUTHORITIES

## Cases

422 F.Supp.2d 676, 680 (E.D. La., 2006) ................................................................. 11

*Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 383 (1953)....................... 6

*Bloomer v. Liberty Mutual Ins. Co.,* 445 U.S. 74, 77 (1980)................................... 12

*Blue Cross Blue Shield of Illinois v. Cruz*, 495 F.3d 510, 511 (7th Cir. 2007)........ 13

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)............................................ 12

*Canal Auth. v. Callawa*y, 489 F.2d 567, 572 (5th Cir.1974) .................................. 23

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp* ...................... 22

*Cheney v. U.S. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004).................. 7

*Commerce Park v. Mardian Constr. Co.*, 729 F.2d 334, 342 (5th Cir.1984) ......... 22

*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir.1996) ............................ 22

*Kerr v. United States Dist. Court,* 426 U.S. 394, 403 (1976) .................................. 7

*McDonald's Corp. v. Robertson,*147 F.3d 1301, 1312-13 (11th Cir.1998) ............ 22

*Schlagenhauf v. Holder,* 379 U.S. 104, 112, n. 8 (1964))....................................... 7

*Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967).......... 6

## Statutes

15 C.F.R. § 990.10 (1995)........................................................................................ 8

33 U.S.C. § 1001 (1990) et seq ................................................................................ 3

33 U.S.C. § 2713 (a), (b) and (c) (1990). ............................................................... 10

33 U.S.C. § 2713 (c), (d) (1990) .............................................................................. 8

46 U.S.C. § 183 (1851)............................................................................................ 19

# APPENDIX

List of Interested Parties……………………………………………...………A

List of Defendants…………………………………………………………....B

Order Amending and Superceding the Court's Previous Orders of December 28, 2011 (Rec.Doc.5022) and January 4, 2012 (Rec.Doc.5064), establishing an account and reserve………… …………………………………………………...C

Answer to Complaint and Petition of Triton Asset Leasing GMBH, Et al………..D

Order and Reasons as to the Motion to Establish Account and Reserve…………E

Order Amending the Court's Previous Order of December 28, 2011……………..F

Order on Motion for Court Approval of Proposed Notice and Reply……………..G

Direct Filing Short Form……………………………………………………..H

PreTrial Order # 8…………………………………………………………….I

Statement of United States: Holdbacks………………………………………..J

Statement of Interest by the State of Florida……………………………………K

Amended Pretrial Order No. 41………………………………………………..L

PSC Motion, Memorandum and Reply to Establish Reserve Account…………..M

## PETITION FOR WRIT OF MANDAMUS

Pursuant to Federal Rules of Appellate Procedure 21, Petitioner, Gabriel Sanchez, seeks a Writ of Mandamus directing the Honorable Carl Barbier, District Judge for the United States District Court Eastern District of Louisiana, to vacate the Order entered in the instant case on January 18, 2012, Amending and Superceding the Court's Previous Orders of December 28, 2011 (Rec.Doc.5022) and January 4, 2012 (Rec.Doc.5064), establishing an account and reserve.  See Appendix C (Rec.Doc.5274). The Order pertains to the litigation styled *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, MDL No. 2179*, pending in District Court in New Orleans, Louisiana.

The Order at issue requires the underlying defendants, BP Exploration & Production Inc., BP America Production Company, BP P.L.C., Transocean Ltd., et al, or their agents and representatives, including but not limited to the Gulf Coast Claims Facility ("GCCF") administered by Kenneth Feinberg, to withhold up to 6% of all private monetary settlements, judgments, or other payments and deposit such monies into a reserve account or a common fund.[1]  For governmental entities, 4% was ordered to be held back.[2] Petitioner respectfully suggests that this "Hold Back Order" is over reaching, is unsupported by the law and facts, and is a clear abuse of the District Court's authority. The Order should be immediately vacated.

[1] See Appendix C, p.3 (Rec.Doc.5274).
[2] See Appendix C, p.2 (Rec.Doc.5274).

## STATEMENT OF THE CASE

Petitioner, and thousands like him, became a party to the underlying litigation in a limited sense by filing a timely claim within the court-ordered monitions period against the Limitation Complainant, Transocean, as owner of the *Deepwater Horizon*. Indeed, Petitioner, like thousands of others like him, <u>did not</u> bring claims against <u>any</u> of the other parties in the litigation, and specifically, did not sue any of the BP entities.[3]  See Appendix D (Rec.Doc.319).  In fact, the only reason Petitioner filed a claim in the Limitation Proceeding was to meet the deadline for such claims set by the Court. Rather than pursuing litigation, Petitioner spent much time, effort, and monies pursuing his OPA claim administratively before the GCCF—as agent for BP.  Petitioner has received an offer of settlement from the GCCF on his claim but continues to negotiate. When a settlement is ultimately reached, however, according to the District Court's Order, the GCCF will be required to hold back 6% of any monies paid to Petitioner, for the benefit of the Plaintiffs' Steering Committee ("PSC").[4]  Yet, even though the

---

[3] Gabriel Sanchez is a commercial fishermen and boat captain who fishes in Louisiana and Texas. He filed a claim in the MDL at issue, but specifically **only** brought a claim against Transocean as Limitation Complainant. Mr. Sanchez, through his own counsel, has expended thousands of dollars in attempting to obtain resolution before the GCCF.  An offer of $66,000 is pending but a settlement has not been reached. There are thousands of others similarly situated.

[4]  The District Court entered its first order dated December 28, 2011. See Appendix E. The first order retroactively required the GCCF to hold back 6 % of the gross settlement amount in the case of private claimants.  In the case of state or local governmental claimants, the hold-back would be 4 % of the gross settlement.  The hold back date was retroactive to all claims settled as

PSC stands to take a portion of Petitioner's ultimate payment from the GCCF, the PSC has not demonstrated, and cannot demonstrate, that it has conferred a benefit upon Petitioner or the many others like him.

Numerous parties are at fault for the explosion and oil spill that gives rise to the underlying litigation. The PSC has undoubtedly expended much time and money in an effort to ascertain the comparative liability of all the many parties involved. But, those efforts have not benefitted the Petitioner, or the thousands like him. Shortly after the oil spill, and before the PSC expended any effort or monies in the underlying litigation, BP admitted that it was a responsible party under the Oil Pollution Act of 1990,[5] and set aside $20 billion to pay OPA claims. Regardless of whether BP is found to be 1% liable or 100% liable for the explosion and resulting spill, BP is still the Responsible Party under the OPA. As the Responsible Party, BP must establish and maintain an administrative procedure for the payment of OPA claims. It is through this administrative process that Petitioner, and those like him, should be allowed to settle claims without court-- and PSC--interference. This is not a situation where a plaintiffs' steering committee's work has been responsible for establishing a settlement corpus, and

---

of November 7, 2011. The administrative nightmare of holding back 6% of payments already made is obvious. Then, on January 4, 2012, the District Court amended its order by clarifying that the hold back would only apply to claims that had not received a GCCF Determination Letter by December 30, 2011. See Appendix F.

[5] 33 U.S.C. § 1001 (1990) et seq.

3

certain claimants are attempting to avoid compensating the committee for its efforts. Instead, this is a situation where a court has ordered the GCCF—without a hearing—to hold back monies that ultimately could exceed $700 million ($13 billion multiplied by .06) of a fund already set aside to pay claims, without the PSC ever establishing—or even attempting to establish--that the PSC has benefitted any of the claimants.

## ISSUES PRESENTED

The District Court's Order should be vacated because the court clearly abused its discretion in entering the Hold Back Order.  Petitioner has a (1) clear and indisputable right to file this writ; (2) has no other adequate means to obtain relief; and (3) the only appropriate relief is for the order to be vacated. To wit:

1. The District Court's Hold Back Order is in direct contravention to the stated purpose of the Oil Pollution Act of 1990 ("OPA"), such purpose being the cost effective and expeditious resolution of damages claims resulting from an oil spill;

2. Counsel for Petitioner objected to the PSC's multiple efforts to convince non-represented claimants to join the master lawsuit in the District Court. Counsel for Petitioner filed an objection to the PSC's published notice that encouraged those damaged by the spill to join the Deepwater Horizon Oil Spill MDL Lawsuit because such notice was contrary to the

law, confusing, and potentially misleading.   Appendix G (Rec. Doc. 1304). Such notice was authorized by the District Court, over objection. Effectively, the PSC used the short one-year "monitions period" or statute of limitations under the Limitation of Liability Act to convince thousands of OPA claimants, even those who had no admiralty claim against vessel owner Transocean, into filing a short-form joinder and thus pursuing claims against all parties in the litigation. For those affected by the spill with only OPA claims, joining the litigation and bringing claims against all parties was wholly unnecessary and, if the Hold Back Order is not vacated, will now result in those claimants paying a fee to the PSC, even though they may choose to resolve their OPA claims before the GCCF.  The bottom line is that a pure OPA claimant **did not** have to file a claim into the Limitation Proceeding, has no claim against Transocean, and indeed, without actually first presenting the claim to the GCCF, cannot even bring a claim against BP in the litigation;

3. The District Court required no proof of, and the PSC did not articulate and demonstrate that, work performed by the PSC conferred any benefit to the Petitioner or others similarly situated.  Further, PSC has not made any work available to the thousands of entities it seeks to take a fee from who are not involved in a PSC working group;

4. The PSC did not provide any benefit to Petitioner or similar parties because it has performed no work on either general or specific causation. If the PSC did in fact perform work on general causation, it did not publish such work, and could not have benefitted Petitioner and those like him because neither Petitioner nor the GCCF would have been aware of such work. Further, individual causation is highly specific such that PSC could **not** do such work on an individualized basis;

5. The PSC had no involvement in the lengthy and costly process of Petitioner's attempts at settlement with the GCCF; its efforts that it claimed before the District Court as helping claimants before the GCCF have instead hindered and delayed efforts to obtain a reasonable settlement by the Petitioner; and

6. The District Court issued an injunction, without a hearing, although controverted factual issues existed.

## **ARGUMENT**

Mandamus relief is warranted when judicial usurpation or a clear abuse of discretion has occurred by the underlying court. *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 383, 74 S.Ct. 145, 98 L.Ed. 106 (1953). Here, the District Court acted hastily and without regard to the rights of Petitioner ostensibly in order

to "protect" and bolster the PSC's potential for future attorney's fees – fees that, if ultimately awarded, will undoubtedly account for one of the largest, if not the largest, attorney's fee awards in the country. No hearing was held prior to the issuance of the Hold Back Order. The Hold Back Order was subsequently amended twice, again with no input from Petitioner, and with no hearing. No amendment, however, could correct the direct contravention to the stated purpose of the Oil Pollution Act of 1990 and the order should be vacated for these reasons.

In order to obtain mandamus relief, three conditions must be satisfied. First, the party seeking mandamus must have no other adequate means to attain the relief desired. *Cheney v. U.S. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004). This requirement operates so as not to vitiate the regular appeals process. Second, the petitioner must show a "clear and indisputable" right to the writ. *Id.* at 381; *Kerr v. United States Dist. Court for Northern Dist. of Cal.,* 426 U.S. 394, 403 (1976), (quoting *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 384 (1953)). Third, the writ must be appropriate under the circumstances. *Kerr*, at 403 (citing *Schlagenhauf v. Holder,* 379 U.S. 104, 112, (1964)). All requirements are satisfied here.

### A.   Issuance of a Writ of Mandamus Is Appropriate because the Order Violates the Stated Purpose of the Oil Pollution Act of 1990

Despite numerous attempts to persuade the District Court to reconsider the Hold Back Order and its overreaching effects, and despite its many amendments,

the District Court ordered the attachment of settlement proceeds obtained through the GCCF fund. The Oil Pollution Act of 1990 was designed and intended to reduce the amount of time and expense in litigation. Indeed, the stated purpose of the OPA is to "promote expeditious and cost-effective restoration of natural resources and services injured as a result of an incident." 15 C.F.R. § 990.10 (1995). The OPA was enacted to allow claimants the ability to avoid litigation, and to allow those aggrieved by an oil spill to make claims, either with or without counsel, against a Responsible Party without the necessity of litigation. As an example, many of the claimants similarly situated to the Petitioner are paying a below-market, reduced attorney's fee with a privately contracted attorney. These claimants chose to avoid litigation and specifically chose to avoid involvement in the multi-district litigation. In many cases, if the Hold Back Order is not vacated, the attorney's fee to be paid by Petitioner and those like him will increase by more than fifty percent.

The OPA was enacted in the wake of the damage and loss caused by the *Exxon Valdez* oil spill; it was enacted as an effort to avoid litigation. In fact, under the OPA, if negotiations during the 90-day presentment period with the Responsible Party are unsuccessful, the claimant may present his claim in court, but also may present his claim to the National Pollution Funds Center ("NPFC") for payment from the Oil Spill Liability Trust Fund. 33 U.S.C. § 2713 (c), (d). The

NPFC adds a second administrative level for claimants, again specifically designed to allow claimants avoid the cost and expense of litigation, including attorney's fees. If the claimant fails to obtain a satisfactory settlement from both the Responsible Party and the NPFC, the claimant can then decide whether to pursue the claim in district court. The process described further demonstrates that, with an OPA claim, litigation was to be the last resort. Such process is consistent with the OPA's stated purpose of expeditious and cost effective resolution of claims.

Attorney's fees and the costs of litigation incurred by claimants affected by an oil spill are concerns that the OPA was enacted to address. But, the Hold Back Order is directly contradictory to the stated purpose of the OPA because it seeks to tax the costs of litigation on those claimants who are able, or may be able, to resolve their claims through the administrative process. Worse, the Hold Back Order reduces the recovery of those who purposefully chose only to file an admiralty claim in the Limitation proceeding against Transocean. Yet, the recovery being "taxed" by the PSC through the Hold Back Order is <u>not</u> being paid to Petitioner by Transocean, but is instead being paid to Petitioner by BP as Responsible Party through the administrative process. In other words, the recovery is being paid by an entity outside the litigation that Petitioner never joined, and

until there is presentment, could never sue.[6] The PSC has no right to take a fee on these funds, and will never have a right to take a fee on such funds.[7]

## B. A Clear and Undisputable Right to the Writ Exists

Shortly after the spill, BP, as the Responsible Party, set aside $20 Billion to pay claims through the GCCF. This decision was made after consultation with the Obama Administration, and months before the PSC was put into place.[8] The GCCF was established on June 16, 2010.[9] The PSC was not appointed by the Court until October 8, 2010.[10] The timeline makes clear that the PSC had nothing to do with the establishment of the $20 Billion Fund and should not now receive a credit through a "hold back" for doing so.

---

[6] To sue on an OPA claim, a claimant must first "present" the claim to the Responsible Party. The claimant simply cannot sue in District Court without first presenting his claim, and if the claimant does so, the claim is subject to dismissal. 33 U.S.C. § 2713 (a), (b) and (c) (1990).

[7] It should be noted that, before it was amended, the Hold Back Order also applied to payments by the GCCF to those claimants who did not even file a claim in the Limitation Proceeding and were not before the District Court in any capacity. Although the Court gave no reason, it is understood that this group of claimants was relieved of the burden of the Hold Back Order because the Court lacked jurisdiction over them. Petitioner respectfully suggests that, because the Hold Back Order is essentially ordering the GCCF to hold back monies, it is difficult to determine how the Petitioner's situation differs from that group of claimants relieved of the burden of the order. Further, it remains to be seen how the GCCF intends to determine which claimants before it have joined the litigation, and in what capacity, when it decides to hold back 6%, or not.

[8] Press briefing on the BP Oil Spill on the Gulf Coast, The White House, Office of the Press Secretary, April 29, 2010, http://www.whitehouse.gov/the-press-office/press-briefing-bp-oil-spill-gulf-coast.

[9] Fact Sheet: Claims and Escrow, The White House, Office of the Press Secretary, June 16, 2010. http://www.whitehouse.gov/the-press-office/fact-sheet-claims-and-escrow.

[10] See Appendix I, Pre Trial Order #8.

### 1. PSC Cannot Prove it Conferred a Benefit to Settling Claimants

In order for the PSC to establish a right to a fee, it is not enough to demonstrate that work was performed by the PSC; the PSC must also articulate and demonstrate that such work actually benefited those upon whom the PSC seeks to tax. *Turner v. Murphy Oil USA, Inc*. is the controlling law in determining whether a common benefit fund should be established.  422 F.Supp.2d 676, 680 (E.D. La., 2006).

According to *Turner,* in order to justify a fee on a common fund, an attorney must establish that he acted on his own, and at his own expense.  Further, and more importantly, the attorney must also establish that he maintained a successful suit for the preservation, protection, or increase of a common fund. *Id.* In accordance with *Turner,* the District Court should have required the PSC in the underlying litigation to demonstrate that, due to their work, the common fund was established. In light of the circumstances surrounding the creation of the $20 Billion fund, such was not demonstrated, and cannot ever be demonstrated.  In response to objections to the Hold Back Order, the PSC argued before the District Court that the PSC's efforts have been responsible for larger payments to individual claimants before the GCCF. Appendix  M.   Although the PSC made this argument, it did not, and likely could not, identify <u>one</u> claimant who has received a larger payment from the GCCF due to the efforts of the PSC. In light of the fact that the GCCF is not a

party to the litigation, and that the GCCF is paying claims pursuant to a published, formulaic protocol,[11] it is highly doubtful that the PSC could ever make such a showing.  Regardless, what is clear is that the PSC did not do so, and did not even try.[12]

Under the common fund doctrine, a lawyer who recovers a common fund for the **benefit of persons** other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (emphasis added).  This doctrine is an exception to the American rule that each litigant must bear his own attorney's fees, and rests on the principle that nonparties who reap substantial benefits from litigation without contributing to its cost should not be unjustly enriched.  *Id.* Of course, a key component of this theory is that a benefit must be conferred on the taxed party.  The common fund doctrine allows a person who incurs attorney's fees in obtaining a judgment or settlement that confers a benefit on another to deduct a portion as a fee.  *E.g., Bloomer v. Liberty Mutual Ins. Co.,* 445 U.S. 74, 77 (1980).  "The theory is that a beneficiary of another's legal efforts should contribute to the cost of those efforts; otherwise they might not be undertaken. In economic terms, the successful plaintiff in such a case confers (if he is not compensated) "external" (to his pocketbook) benefits,

---

[11] See Final Payment Methodology:  http://gulfcoastclaimsfacility.com/methodologylanding.php.

[12] Petitioner has only made a claim in the litigation against Transocean. If the PSC were to establish a fund being paid by Transocean, then at that point its claim to be paid some percentage for such work would become colorable.

which he has no incentive to do unless he is compensated and they therefore are internalized to him." *Blue Cross Blue Shield of Illinois v. Cruz*, 495 F.3d 510, 511 (7th Cir. 2007).

The $20 Billion Fund and GCCF claims process was in place before the PSC ever took one deposition, or spent one reimbursable penny. The fund has not been increased, and the monies are only that of the Responsible Party--BP. The PSC has not obtained any monies beyond the $20 Billion Fund from any other party sued in the litigation. The PSC has not changed, or even influenced, the claims process. The PSC has done nothing to create a larger, or separate fund. Even so, the PSC wants a portion of the $20 Billion Fund, and wants that portion from the following claimants: 1). those without any claims before the district court who are only pursuing OPA claims before the GCCF; 2). those like Petitioner who, with counsel, in an extremely limited sense, joined the litigation to preserve their admiralty claim against vessel owner Transocean, but who made no claims against any other party, and instead chose to pursue outside of litigation their OPA claims with the GCCF; 3). those, likely without counsel, who were convinced by the PSC to file a short form joinder, but who did so erroneously because--due to *Robins Dry Dock*[13]--they only have OPA claims and cannot even bring such claims in the litigation without first presenting the claim to the Responsible Party; and 4). those who have both

---

[13] *Robins Dry Dock v. Flint* generally stands for the proposition that pure economic loss damages are not recoverable under a negligence theory. 275 U.S. 303 (1927).

OPA and admiralty claims who purposely filed in the litigation after proper OPA claim presentment, or thinking they can avoid the presentment requirement of an OPA claim. After multiple objections, the Court reversed itself and has amended the Hold Back Order such that it no longer applies to the first category of claimants. This Court should now vacate the Hold Back Order for the remaining category of claimants because, even if the GCCF could determine which claimants fell into the above categories, the PSC has not and cannot show that it conferred a benefit on any of them.

### 2.  <u>The Only Inquiry by the GCCF is Inquiry of Individualized Loss</u>

Well before the PSC was formed, BP as Responsible Party—with no contribution from any other entity—set aside $20 Billion for the payment of claims. As Responsible Party, BP could have argued that its exposure was capped at $75 million, absent a showing of gross negligence. 33 U.S.C. § 2704.  BP did not make such an argument. Thus, because of BP's early actions, the GCCF claims process is highly streamlined. There is no issue with regard to liability. The only issue before the GCCF is the quantum of damages suffered by the individual claimant. To prepare and present a claim before the GCCF, a claimant must follow an established protocol. Routinely damage experts are needed to analyze, calculate, and help package the claim.   The damages sought by a claimant require an individualized causation inquiry. Although the Court entered the Hold Back Order,

the PSC in the underlying litigation did nothing to assist Petitioner, or those like him, in this endeavor. Instead, the Petitioner before this Court, and thousands of others just like him, hired their own experts and made their own arguments, with counsel, before the GCCF.

The arguments proffered by the PSC before the district court to justify the Hold Back Order were incredibly weak. As an example, the PSC argued that, through its efforts, the court entered an order requiring GCCF Administrator Feinberg to inform claimants that he was not "independent" of BP. Appendix M (Rec. Doc.4507, p.16). To the extent such an order would benefit anyone, such order provided absolutely no benefit to the Petitioner and the thousands like him, who are ably represented by their own counsel and who already are aware of Feinberg's relationship with BP. Even to those not represented by counsel, it is difficult to fathom how such an order provides any benefit to an unrepresented claimant, much less a benefit worth potentially $700 million.

Another example, the PSC argued to the court that, through its efforts, the GCCF was forced to translate certain claims related documents. Appendix M (Rec.Doc.4714, p.4). Even if such were true—which it is not—the PSC did not actually establish that the GCCF was not providing translation services for those who needed that service, and indeed, did not even try to do so. But, again, even if such effort resulted in the GCCF doing something that it was not already doing,

such effort certainly did not benefit Petitioner, and the thousands like him, who had their own counsel. The PSC's scant other efforts that conferred benefit, as argued to the district court, included their joining and supporting the efforts of various governmental entities to force the GCCF to submit to an outside audit. In briefing before the district court, both the Federal Government and the State of Florida[14] disputed that the PSC had any role whatever in convincing the GCCF to submit to an audit. More importantly, beyond rhetoric the PSC offered no actual proof that it had any role in such effort. Regardless, assuming for the sake of argument that the PSC had some role in the "audit effort"—Petitioner would respectfully submit that such efforts hampered, hindered, and delayed the many efforts of Petitioner's counsel to convince Administrator Feinberg, and his law partner Michael Rozen, to focus on paying claims rather than dealing with a multitude of other issues, unrelated to claims payment.

The Petitioner and those similarly situated have spent thousands of dollars retaining experts to assess their individual damages. Such experts include business interruption specialists, site specific experts, adjustors, and other professionals trained in assessing damages due to external events. Counsel for the Petitioner herein has met multiple times with Administrator Feinberg. The PSC has had no involvement in this lengthy and costly process. The Hold Back Order requires the

---

[14] See Appendix J (Rec. Doc. 5163) and K (Rec.Doc. 5910).

GCCF to hold back a percentage of the monies that have now resulted from the fruits of this process, without requiring a showing that such percentage was even earned. That it may hypothetically someday be earned is simply not enough.

To justify the hold back, the PSC argued before the district court that it had taken more than 240 depositions and had reviewed hundreds of thousands of documents in the litigation. As further justification, the PSC argued that it had set up a massive office, and had expended more than $11 million. From its own filings, it is clear that the PSC has spent the overwhelming majority of its time before the district court focusing on apportionment of fault for the multiple potentially liable parties in the litigation. Indeed, according to the district court's scheduling order, the upcoming trial will focus on liability only; the district court will not award damages.[15] Thus, even though the PSC has spent an inordinate amount of money and time on liability issues, BP, as Responsible Party, has already admitted liability in the claims process because OPA claims are strict liability. The time and money spent by the PSC simply did not confer any benefit on Petitioner's claim outside the litigation against BP.

As stated, in an OPA claim, the Responsible Party must pay those affected by the oil spill. There is no liability inquiry. The only issue in Petitioner's settlement negotiations with the GCCF is the quantum of their damages caused by

---

[15] See Appendix L (Rec. Doc. 4083).

the spill. The PSC has done no work on causation, or certainly has demonstrated no such work. Causation in an OPA claim is an individualized inquiry. The PSC has not been, and will not be, a part of such inquiry. Of course, it would be one thing if the PSC had tried several cases similar to that of Petitioner and had established a value for such cases higher than that being routinely paid by the GCCF. If such were to occur, the PSC could then at least have a colorable argument that it had brought additional value to the claims process, and could attempt to argue that it was entitled to some small portion of that *increase in value*. The PSC has not tried one individual OPA damages case, and has no plans to do so. The PSC has conferred no benefit to Petitioner, and has not even attempted to do so. The Hold Back Order should be vacated.

Before entering the Hold Back Order, the district court was not faced with a situation where the PSC had done all the work, while other attorneys and entities had reaped the benefit. The district court did not confront a situation where others, who have expended no time or effort, were riding the coattails of a PSC that had expended much time, expense, and effort. Instead, what the district court had before it prior to entry of the Hold Back Order was a PSC whose work to date had failed to focused on the types of individuals and entities like the Petitioner herein. Petitioner is availing himself of the OPA. What he is doing has nothing to do with the litigation, and is not being helped in any way by the PSC. The PSC has

certainly not even attempted to establish otherwise. The PSC simply has not helped those who have expended hundreds of thousands of dollars and thousands of hours in an effort to resolve claims through the GCCF. Indeed, the PSC has, at times, intentionally or not, worked against the interests of many claimants and their counsel outside this litigation.

### 3. **PSC's Efforts Hindered Oil Pollution Act and GCCF Settlements**

The PSC has argued that it applied public and private pressure to improve GCCF claims handling procedures. Appendix M (Rec.Doc.4717). Such is simply unsupported and untrue. Success for the GCCF was defined early on as resolving claims short of litigation. Administrator Feinberg articulated as much frequently. If the GCCF was found to be failing in its mission of paying claims fairly and quickly, such would have forced those attorneys with large books of business before the GCCF to pursue claims in court—after presentment--publicly declaring the GCCF a failure. Such was the leverage that was used against Administrator Feinberg by Petitioner's counsel, and many others outside of the underling litigation. The PSC had no such leverage, and worked hard to encourage both represented and non-represented claimants to file into the MDL.

An example: As vessel owner, Transocean has very specific liability under the Limitation of Liability Act. 46 U.S.C. § 183. Its liability as owner is for certain claims under admiralty law and is limited to the "value of the interest of such

owner in such vessel," unless privity and knowledge of shore side management is established. *Id.* The limitation of liability procedure is controlled by Rule F of the Admiralty Rules.  Fed.R.Civ.P.Supp. Rule F.  After a complaint is filed and the owner meets the conditions set forth in the rules, the court shall issue an injunction to stay all proceedings and establish a "monition" period during which all claimants must file their respective claims in the limitation action. Fed.R.Civ.P.Supp. Rule F(3).  Notice must then be given to all potential claimants. Fed.R.Civ.P.Supp. Rule F(4).  This notice is very specific and <u>only</u> applies to the limitation action.   The PSC, however, used this notice requirement to entice potential plaintiffs to file a suit by gaining approval of, and issuing a very broad and confusing notice. See Appendix G, District Court Order dated February 23, 2011 (Rec. Doc. 1352) and related filings (Rec. Doc.1131, 1280, 1291,1304,1281, 1313, 1274, and 1279).  Efforts to point out the unfairness of the notice were overruled, even though such notice led to claimants joining the lawsuit against BP in the guise of the limitation action—in violation of the Oil Pollution Act's 90-day presentment requirement.  Specifically, the "notice" published by the PSC stated: "The Court has simplified the process to file your claim against Transocean. The Court has approved a Direct Filing Short Form."  See Appendix G, p.3.  Then, in the Short Form proffered by the PSC was the following statement: "Filing this Short Form **may** also join you in the master lawsuit that has been filed against BP

and the other defendants." *Id.* (emphasis added).   Of course, there was no "may" about it.  The Short Form automatically joined the claimant into both the master litigation and the limitation action.  The short form, and the notice that accompanied it, implied that a claimant who only had a claim under the OPA needed to file a claim in the Limitation.[16]  Such was not true. That the PSC has benefitted any claimant, or this Petitioner and others like him, at this point is equally false.  The Hold Back Order should be vacated.

### C. **There Exists No Other Adequate Means to Obtain Relief**

The District Court's Hold Back Order is an injunction issued against the GCCF, who was not before the court, requiring the GCCF to affirmatively hold back monies that rightfully are owed to claimants.  (In issuing the Order, the Court did not establish a procedure as to how the GCCF was to know which claimants were, or were not, before the court.) The Hold Back Order was hotly contested, yet was entered without a hearing, and without requiring the PSC to prove the established elements of an injunction.

Federal Rule of Civil Procedure 65(a)(1) requires that (1) notice be given prior to the issuance of an injunction; and (2) a hearing where in the trial on the merits is consolidated with the hearing.   Rule 65(a)(1) specifies that "[n]o

---

[16] Petitioner is represented by counsel, and thus did not file the Short Form. Instead, Petitioner filed a claim in the Limitation against only Transocean as vessel owner. Appendix D (Rec. Doc. 319).

preliminary injunction shall be issued without notice to the adverse party."
Fed.R.Civ.P. 65 (a)(1).   Rule 65 has been interpreted to mean that "where factual
disputes are presented, the parties must be given a fair opportunity **and a**
**meaningful hearing** to present their differing versions of those facts before a
preliminary injunction may be granted." *Kaepa, Inc. v. Achilles Corp*., 76 F.3d
624, 628 (5th  Cir.1996) (quoting *Commerce Park at DFW Freeport v. Mardian*
*Constr. Co.*, 729 F.2d 334, 342 (5th Cir.1984) (emphasis added).   Courts have
further confirmed that when there are factual disputes, a district court should hold a
hearing.   In *McDonald's Corp. v. Robertson*, the court succinctly stated the
following rule:

> [W]here facts are bitterly contested and credibility determinations must be
> made to decide whether injunctive relief should issue, an evidentiary hearing
> must be held. [However,] where material facts are not in dispute, or where
> facts in dispute are not material to the preliminary  injunction sought, district
> courts generally need not hold an evidentiary hearing.

*McDonald's Corp. v. Robertson,*147 F.3d 1301, 1312-13 (11th Cir.1998); See also
*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*., 511 F.3d
535,552 (6th Cir.2007).  As shown by the vast amount of responses to the PSC's
motion to set up the hold-back account,[17] there existed a number of bitterly

---

[17] See (Rec. Doc. 4657),( Rec. Doc. 4658), (Rec. Doc. 4660), (Rec. Doc. 4663), (Rec. Doc.
4675), (Rec. Doc. 4677), (Rec. Doc. 4678), (Rec. Doc. 4679), (Rec. Doc. 4680), (Rec. Doc.
4682), (Rec. Doc. 4683), (Rec. Doc. 4684), (Rec. Doc. 4685), (Rec. Doc. 4686), (Rec. Doc.
4687), (Rec. Doc. 4696), (Rec. Doc. 4702), (Rec. Doc. 4704), (Rec. Doc. 4705), (Rec. Doc.
4706), (Rec. Doc. 4707), (Rec. Doc. 4708), (Rec. Doc. 4709), (Rec. Doc. 4710), (Rec. Doc.

contested factual determinations to be made.  Here, the PSC failed to make any showing of its common benefit efforts, and failed to articulate and demonstrate how its efforts assisted the Petitioner to obtain a settlement offer, or further advance settlement negotiations.   The PSC has not attended any settlement negotiations to discuss the specific and individualized losses of the Petitioner. Rather, all calculations, case evaluation and preparation of the losses and claim, and discussions regarding the settlement of the cases – were all made independently of the PSC.  The PSC in no way aided the progress that has been made with the GCCF, and is not entitled to any monies made through the administrative settlement of the Petitioner – or others in the same position. Had the Court held a hearing, such would have been demonstrated.

Further, injunctive relief can only be accomplished by proving the elements discussed below.  Neither the PSC offered, and the District Court did not require, that the necessary proof be made. And it was not.   The PSC failed to put forth proof of the following:

1)    a substantial likelihood that plaintiff will prevail on the merits;

---

47110), (Rec. Doc. 4712), (Rec. Doc. 4713), (Rec. Doc. 4714), (Rec. Doc. 4717), (Rec. Doc. 4719), (Rec. Doc. 4720), (Rec. Doc. 4721), (Rec. Doc. 5031), (Rec. Doc. 5032), (Rec. Doc. 5033), (Rec. Doc. 5034), (Rec. Doc. 5035), (Rec. Doc. 5044-1), (Rec. Doc. 5146), (Rec. Doc. 5147), (Rec. Doc. 5149), (Rec. Doc. 5153), (Rec. Doc. 5156), (Rec. Doc. 5159), (Rec. Doc. 5160), (Rec. Doc. 5161), (Rec. Doc. 5162), (Rec. Doc. 5163), (Rec. Doc. 5165), (Rec. Doc. 5167), (Rec. Doc. 5188), (Rec. Doc. 5189), (Rec. Doc. 5190), (Rec. Doc. 5191), (Rec. Doc. 5198), (Rec. Doc. 5230).  Due to the volume of documents, counsel will supplement upon request.

2)   a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted;

3)   that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant; and

4)   that granting the preliminary injunction will not disserve the public interest.

*Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974). It is highly unlikely that the PSC could have established any of the above four elements, much less all four of them. Without such showing, the District Court clearly abused its discretion in entering the ordering to attach 6% of all monies paid by the GCCF to claimants in the MDL or the Limitation Action.

## **RELIEF SOUGHT**

The purpose of a writ of mandamus is to correct an abuse of power of the type that occurred in the underlying litgiation. Petitioner does not argue that the PSC should never be compensated for their work, time, and efforts.   What Petitioner is arguing, however, is that the cart is being put before the horse; that is, the PSC is looking to be paid before it has conferred a benefit, and wants to be paid from the wrong source. The Hold Back Order is premature because the PSC has not established any benefit to date; it has not caused the creation of a settlement corpus; it has not established that it benefitted any of the claimants before the GCCF. Importantly, it must be understood that the Hold Back Order will

ultimately reduce the amount of monies that claimants will receive. To be properly compensated, the PSC must confer a benefit.  It has not. The Hold Back Order should be vacated, in whole.  All claims resolved administratively should be free from the additional taxation of the PSC's fees and costs – as the Oil Pollution Act of 1990 intended.

<div style="margin-left:40%">

Respectfully submitted,

**THE BUZBEE LAW FIRM**

Anthony G. Buzbee
State Bar No. 24001820
S.D. Tex. I.D. No. 22679
J.P. Morgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909
www.txattorneys.com

</div>

**ATTORNEY FOR PETITIONER**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 7th day of February, 2012.

Anthony G. Buzbee
State Bar No. 24001820
S.D. Tex. I.D. No. 22679

**ATTORNEY FOR PETITIONER**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,411 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Anthony G. Buzbee
Attorney for Petitioner
February 6, 2012

A

| ▲Party | Party Type | Party Status | Attorney | Firm |
|--------|-----------|--------------|----------|------|
| Amicus | Interested Party | Active | Sevin, Kelley | Duncan & Sevin LLC |
| Amicus | Interested Party | Active | Morse, Harry E | Duncan & Sevin LLC |
| Amicus | Interested Party | Active | Duncan, Elton F | Duncan & Sevin LLC |
| Claimant | Interested Party | Active | Bickford, Scott R | Martzell & Bickford |
| Claimant | Interested Party | Active | Stevenson, John W | Stevenson & Murray |
| Claimant | Interested Party | Active | Bilek, Thomas E | Bilek Law Firm LLP |
| Claimant | Interested Party | Active | Tully, Kevin R | Christovich & Kearney LLC |
| Claimant | Interested Party | Active | Itkin, Jason A | Arnold & Itkin LLP |
| Claimant | Interested Party | Active | Herd, Charles F | Lanier Law Firm-Houston |
| Claimant | Interested Party | Active | Arnold, Kurt B | Arnold & Itkin LLP |
| Claimant | Interested Party | Active | Schwambach, John | Stevenson & Murray |
| Claimant | Interested Party | Active | deGravelles, John W | deGravelles Palmintier Holthaus & Fruge LLP |
| Claimant | Interested Party | Active | Pfleeger, Bryan | Hingle, Michael & Associates LLC |
| Claimant | Interested Party | Active | Hingle, Michael | Hingle, Michael & Associates LLC |
| Claimant | Interested Party | Active | Favre, Ronald | Hingle, Michael & Associates LLC |
| Claimant | Interested Party | Active | Johnson, Jonathan W | Johnson, Jonathan W LLC |
| Claimant | Interested Party | Active | Leger Jr, Walter J | Leger & Shaw |
| Claimant | Interested Party | Active | Shaw, Franklin G | Leger & Shaw |
| Claimant | Interested Party | Active | Coon, Brent | Coon, Brent & Associates-Beaumont |
| Claimant | Interested Party | Active | Ladner, April | Hortman Harlow Bassi Robinson & Mcdaniel PLLC |
| Claimant | Interested Party | Active | Shaffer, Matthew D | Schechter McElwee Shaffer & Harris LLP |
| Claimant | Interested Party | Active | Itkin, Cory D | Arnold & Itkin LLP |
| Claimant | Interested Party | Active | Sterbcow, Paul M | Lewis Kullman Sterbcow & Abramson |
| Claimant | Interested Party | Active | Nazareth, Neil | Martzell & Bickford |
| Claimant | Interested Party | Active | Doody, Spencer | Martzell & Bickford |
| Claimant | Interested Party | Active | Centola, Lawrence J | Martzell & Bickford |
| Claimant | Interested Party | Active | Nicholas, Steven L | Cunningham Bounds LLC |
| Claimant | Interested Party | Active | Wynne, Robert | Arnold & Itkin LLP |
| Claimant | Interested Party | Active | Skrabanek, Matthew Paul | Arnold & Itkin LLP |
| Claimant | Interested Party | Active | Arceneaux, Robert E | Arceneaux, Robert E LLC |
| Claimant | Interested Party | Active | Olen, Steve | Cunningham Bounds LLC |
| Claimant | Interested Party | Active | Finkbohner, George W | Cunningham Bounds LLC |
| Claimant | Interested Party | Active | Cunningham, Robert T | Cunningham Bounds LLC |
| Claimant | Interested Party | Active | Zatzkis, Lanny R | Zatzkis McCarthy & Associates LLC |
| Claimant | Interested Party | Active | McCarthy, Karen D | Zatzkis McCarthy & Associates LLC |
| Claimant | Interested Party | Active | Daunoy, Yvette A | Zatzkis McCarthy & Associates LLC |
| Claimant | Interested Party | Active | Reck, Gothard Joseph | Reck, Gothard J APLC |
| Claimant | Interested Party | Active | Jacobs, Darleen M | Jacobs Sarrat & Lovelace |
| Claimant | Interested Party | Active | Lambremont, John B | Lambremont, John B Sr |
| Claimant | Interested Party | Active | Bagwell, David Ashley | Bagwell, David A |
| Claimant | Interested Party | Active | Whaley, John Randall | Neblett Beard & Arsenault |
| Claimant | Interested Party | Active | Frischhertz, Lloyd N | Frishhertz & Associates LLC |
| Claimant | Interested Party | Active | Bonner, William | Cunningham Bounds LLC |
| Claimant | Interested Party | Active | Kennedy, Richard R | Kennedy, Richard R APLC |
| Claimant | Interested Party | Active | Hayes, Edward Thomas | Leake & Andersson |
| Claimant | Interested Party | Active | Guidry, Randy M | Durio McGoffin Stagg & Ackermann |

| | | | | |
|---|---|---|---|---|
| Claimant | Interested Party | Active | Franco, David B | Dugan Law Firm APLC |
| Claimant | Interested Party | Active | Dugan, James R | Dugan Law Firm APLC |
| Claimant | Interested Party | Active | Didriksen, Caleb | Didriksen Law Firm |
| Claimant | Interested Party | Active | Moroux, Jerome H | Broussard & David |
| Claimant | Interested Party | Active | Atchison, Derek | Atchison Firm PC |
| Claimant | Interested Party | Active | Beebe, Donald G | Atchison Firm PC |
| Claimant | Interested Party | Active | Atchison, James E | Atchison Firm PC |
| Claimant | Interested Party | Active | Salas, John P | Mase Lara Eversole PA |
| Claimant | Interested Party | Active | Colvin, David L | Colvin Law Firm |
| Claimant | Interested Party | Active | Robert, Al | Robert, Al J Jr LLC |
| Claimant | Interested Party | Active | Roach, Barry A | Roach, Larry A Inc |
| Claimant | Interested Party | Active | Hammond, Peirce A | Hammond LLC |
| Claimant | Interested Party | Active | McDill, Jessica M | Chason & Chason PC |
| Claimant | Interested Party | Active | Tein, Michael Ross | Lewis Tein PL |
| Defendant | Interested Party | Active | Redden, Joe W | Beck Redden & Secrest LLP |
| Defendant | Interested Party | Active | McAloon, Leo R | Gieger Laborde & Laperouse LLC |
| Defendant | Interested Party | Active | Beck, David J | Beck Redden & Secrest LLP |
| Defendant | Interested Party | Active | Taylor, Thomas W | Andrews Kurth LLP-Houston |
| Defendant | Interested Party | Active | Godwin, Donald E | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Bracken, Geoffrey | Gardere Wynne Sewell LLP-Dallas |
| Defendant | Interested Party | Active | Goforth, Daniel O | Goforth Geren Easterling LLP |
| Defendant | Interested Party | Active | Clingman, Rachel | Sutherland Asbill & Brennan LLP-Houston |
| Defendant | Interested Party | Active | Brooks, William H | Lightfoot Franklin & White |
| Defendant | Interested Party | Active | Tully, Kevin R | Christovich & Kearney LLC |
| Defendant | Interested Party | Active | Tardy, Thomas W | Forman Perry Watkins Krutz & Tardy LLP-Jackson |
| Defendant | Interested Party | Active | Jones, David | Beck Redden & Secrest LLP |
| Defendant | Interested Party | Active | Crow, George E | Crow, George E |
| Defendant | Interested Party | Active | Murphy, Edward J | Beirne Maynard & Parsons LLP-Houston |
| Defendant | Interested Party | Active | Leon, Derek E | Morgan Lewis & Bockius LLP-Miami |
| Defendant | Interested Party | Active | Davis, Jeffrey S | Gardere Wynne Sewell LLP-Dallas |
| Defendant | Interested Party | Active | York, R Alan | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Pinckney, Joanne Pileggi | Pinckney Harris & Weidinger LLC |
| Defendant | Interested Party | Active | Lyle, Michael J | Weil Gotshal & Manges LLP-DC |
| Defendant | Interested Party | Active | Garner, James Michael | Sher Garner Cahill Richter Klein McAlister & Hilbert LLC |
| Defendant | Interested Party | Active | Kuchler, Deborah D | Kuchler Polk Schell Weiner & Richeson LLC |
| Defendant | Interested Party | Active | Moran, Kyle | Phelps Dunbar-New Orleans |
| Defendant | Interested Party | Active | Salloum, Richard | Franke & Salloum |
| Defendant | Interested Party | Active | Drinkwater, W Wayne | Bradley Arant Boult Cummings LLP-Jackson |
| Defendant | Interested Party | Active | Scofield, Denise | Morgan Lewis & Bockius-Houston |
| Defendant | Interested Party | Active | Theriot, Melissa L | Laborde & Neuner |
| Defendant | Interested Party | Active | Galloway, John E | Galloway Johnson Tompkins Burr & Smith PLC-New Orleans |
| Defendant | Interested Party | Active | Godfrey, Richard C | Kirkland & Ellis LLP-Chicago |
| Defendant | Interested Party | Active | Picou, Dan | Larzelere Picou Wells Simpson Lonero LLC |
| Defendant | Interested Party | Active | Heartney, Matthew | Arnold & Porter LLP-Los Angeles |
| Defendant | Interested Party | Active | Breit, Jeffrey A | Breit Drescher Imprevento & Walker PC |
| Defendant | Interested Party | Active | Dragna, James | Bingham McCutchen LLP-Los Angeles |
| Defendant | Interested Party | Active | Collings, Christopher J M | Morgan Lewis & Bockius LLP-Miami |

| | | | | |
|---|---|---|---|---|
| Defendant | Interested Party | Active | Warburton, Tom | Bradley Arant Boult Cummings LLP-Birmingham |
| Defendant | Interested Party | Active | Bloom, Wendy L | Kirkland & Ellis LLP-Chicago |
| Defendant | Interested Party | Active | Langan, J Andrew | Kirkland & Ellis LLP-Chicago |
| Defendant | Interested Party | Active | Adcock, Christina M | Alford Clausen & McDonald LLC |
| Defendant | Interested Party | Active | Dossett, Kevin T | Preis & Roy-Lafayette |
| Defendant | Interested Party | Active | Gankendorff, Edgar Dean | Provosty & Gankendorff LLC |
| Defendant | Interested Party | Active | Moreland, Matthew B | Becnel Law Firm LLC-Reserve |
| Defendant | Interested Party | Active | Christina, Salvadore | Becnel Law Firm LLC-Reserve |
| Defendant | Interested Party | Active | Doran, James M | Waller Lansden Dortch & Davis |
| Defendant | Interested Party | Active | Esbrook, Christopher J | Kirkland & Ellis LLP-Chicago |
| Defendant | Interested Party | Active | Bertaut, Carmelite | Stone Pigman Walther Wittmann LLC |
| Defendant | Interested Party | Active | Wittmann, Phillip | Stone Pigman Walther Wittmann LLC |
| Defendant | Interested Party | Active | Bezou, Jacques Francois | Bezou Law Firm |
| Defendant | Interested Party | Active | Buck, Thomas G | Blue Williams LLP |
| Defendant | Interested Party | Active | Goodwin, David | Covington & Burling LLP-San Francisco |
| Defendant | Interested Party | Active | Karis, Hariklia | Kirkland & Ellis LLP-Chicago |
| Defendant | Interested Party | Active | Babington, Joseph PH | Helmsing Leach Herlong Newman & Rouse |
| Defendant | Interested Party | Active | Sledge, Edward S | McDowell Knight Roedder & Sledge LLC |
| Defendant | Interested Party | Active | Toscano, David B (17542) | Davis Polk & Wardwell LLP |
| Defendant | Interested Party | Active | Tang, Angel | Arnold & Porter LLP-Los Angeles |
| Defendant | Interested Party | Active | Bowman, Bruce | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Boles, Martin | Kirkland & Ellis LLP-Chicago |
| Defendant | Interested Party | Active | Piccolo, Frank A | Preis & Roy-Lafayette |
| Defendant | Interested Party | Active | Jackson, Don | Ware Jackson Lee & Chambers LLP |
| Defendant | Interested Party | Active | Gregg, Ellen | Womble Carlyle Sandridge & Rice PLLC-Winston-Salem |
| Defendant | Interested Party | Active | Alexander, Mary Rose | Latham & Watkins Chicago |
| Defendant | Interested Party | Active | Hale, Bryan | Starnes Davis Florie LLP |
| Defendant | Interested Party | Active | Szapary, Christophe B | Provosty & Gankendorff LLC |
| Defendant | Interested Party | Active | Ritter, Kristopher | Kirkland & Ellis LLP-Chicago |
| Defendant | Interested Party | Active | Roberts, Steven L | Sutherland Asbill & Brennan LLP-Houston |
| Defendant | Interested Party | Active | Thibodeaux, Paul | Frilot LLC |
| Defendant | Interested Party | Active | Miller, Kerry J | Frilot LLC |
| Defendant | Interested Party | Active | Laizer, Edwin C | Adams & Reese LLP-New Orleans |
| Defendant | Interested Party | Active | Barrasso, J | Barrasso Usdin Kupperman Freeman & Sarver LLC |
| Defendant | Interested Party | Active | Funderburk, John | Morgan Lewis & Bockius-Houston |
| Defendant | Interested Party | Active | Wilson, Jack L | Bradley Arant Boult Cummings LLP-Jackson |
| Defendant | Interested Party | Active | Finesilver, Aaron | Lydecker Lee Berga & De Zayas LLC |
| Defendant | Interested Party | Active | Tsekerides, Theodore | Weil Gotshal & Manges |
| Defendant | Interested Party | Active | Guidry, Robert E | Kuchler Polk Schell Weiner & Richeson LLC |
| Defendant | Interested Party | Active | Russo, Gary J | Jones Walker |
| Defendant | Interested Party | Active | Swetman, Glenn LM | Swetman Baxter Massenburg LLC |
| Defendant | Interested Party | Active | Denegre, George | Liskow & Lewis-New Orleans |
| Defendant | Interested Party | Active | Marshall, H Carter | Christovich & Kearney LLC |
| Defendant | Interested Party | Active | Sullivan, Norman C | Fowler Rodriguez Valdes-Fauli |
| Defendant | Interested Party | Active | Stern, Martin A | Adams & Reese LLP-New Orleans |
| Defendant | Interested Party | Active | Mcleod, Evans Martin | Phelps Dunbar-New Orleans |
| Defendant | Interested Party | Active | Gilly, George Moore | Phelps Dunbar-New Orleans |

| | | | | |
|---|---|---|---|---|
| Defendant | Interested Party | Active | Wallace, Campbell Edington | Frilot LLC |
| Defendant | Interested Party | Active | Mole, Joseph N | Frilot LLC |
| Defendant | Interested Party | Active | Fineran, Everett R | Frilot LLC |
| Defendant | Interested Party | Active | Clements, Miles Paul | Frilot LLC |
| Defendant | Interested Party | Active | Barrow, Chester Dennis | Ware Jackson Lee & Chambers LLP |
| Defendant | Interested Party | Active | Polk, Janika | Kuchler Polk Schell Weiner & Richeson LLC |
| Defendant | Interested Party | Active | Weigel, Alan M | Blank Rome LLP-New York |
| Defendant | Interested Party | Active | Webster, Wade | Fowler Rodriguez Valdes-Fauli |
| Defendant | Interested Party | Active | LaCour, Cliff A | Laborde & Neuner |
| Defendant | Interested Party | Active | Laborde, Cliffe E | Laborde & Neuner |
| Defendant | Interested Party | Active | Goodier, Glenn G | Jones Walker |
| Defendant | Interested Party | Active | Bertram, Richard | Jones Walker |
| Defendant | Interested Party | Active | Reid, Devin | Liskow & Lewis-New Orleans |
| Defendant | Interested Party | Active | McGuire, John R | Liskow & Lewis-New Orleans |
| Defendant | Interested Party | Active | Latham, Mark D | Liskow & Lewis-New Orleans |
| Defendant | Interested Party | Active | Johnson, Greg L | Liskow & Lewis-New Orleans |
| Defendant | Interested Party | Active | Jarrett, Russell Keith | Liskow & Lewis-New Orleans |
| Defendant | Interested Party | Active | Hinnigan, Emma | Liskow & Lewis-New Orleans |
| Defendant | Interested Party | Active | Haycraft, Don K | Liskow & Lewis-New Orleans |
| Defendant | Interested Party | Active | Abaunza, Donald R | Liskow & Lewis-New Orleans |
| Defendant | Interested Party | Active | Sevin, Kelley | Duncan & Sevin LLC |
| Defendant | Interested Party | Active | Martinez, Jenny L | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Hill, Gavin E | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Hartley, Floyd R | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Gannaway, Geoffrey | Beck Redden & Secrest LLP |
| Defendant | Interested Party | Active | Hall, Keith B | Stone Pigman Walther Wittmann LLC |
| Defendant | Interested Party | Active | Davidson, Jared A | Stone Pigman Walther Wittmann LLC |
| Defendant | Interested Party | Active | Long, Garrett S | Latham & Watkins LLP Chicago |
| Defendant | Interested Party | Active | Heiden, Thomas J | Latham & Watkins LLP Chicago |
| Defendant | Interested Party | Active | Kirby, Ky | Bingham McCutchen LLP - DC |
| Defendant | Interested Party | Active | Fitch, Warren Anthony | Bingham McCutchen LLP - DC |
| Defendant | Interested Party | Active | Kupperman, Stephen | Barrasso Usdin Kupperman Freeman & Sarver LLC |
| Defendant | Interested Party | Active | McCleskey, Bob | Phelps Dunbar-New Orleans |
| Defendant | Interested Party | Active | Adams, Angelle | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Beus, Joel | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Dolghih, Elisaveta | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Johanns, James | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Major, Stefanie | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Schwartz, Jon-Bernard | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Silvas, Israel | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | von Sternberg, Jerry | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Scalise, Kelly | Liskow & Lewis-New Orleans |
| Defendant | Interested Party | Active | Grabill, Jeremy | Weil Gotshal & Manges |
| Defendant | Interested Party | Active | Christy, Walter | Coats Rose Yale Ryman & Lee PC-Houston |
| Defendant | Interested Party | Active | Credeur, Jacob | Coats Rose Yale Ryman & Lee PC-Houston |
| Defendant | Interested Party | Active | Spellman, Johanna M | Latham & Watkins LLP Chicago |
| Defendant | Interested Party | Active | Tanner, Hugh | Morgan Lewis & Bockius-Houston |

| | | | | |
|---|---|---|---|---|
| Defendant | Interested Party | Active | Holtzman, Shannon S | Liskow & Lewis-New Orleans |
| Defendant | Interested Party | Active | Roth, Katherine S | Liskow & Lewis-New Orleans |
| Defendant | Interested Party | Active | Levine, Randall | Bingham McCutchen LLP - DC |
| Defendant | Interested Party | Active | Lundberg, George Andrew | Latham & Watkins-Los Angeles |
| Defendant | Interested Party | Active | Engelhardt, Leah | Preis & Roy |
| Defendant | Interested Party | Active | Richard, Kathryn | Duval Funderburk Sundbery Lovell & Watkins |
| Defendant | Interested Party | Active | Bivens, Frances E | Davis Polk & Wardwell LLP |
| Defendant | Interested Party | Active | Schubert, Daniel F | Davis Polk & Wardwell LLP |
| Defendant | Interested Party | Active | MacLeod, Michelle | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Mayeaux, Ben | Laborde & Neuner |
| Defendant | Interested Party | Active | Mestayer, Jed | Laborde & Neuner |
| Defendant | Interested Party | Active | Neuner, Frank | Laborde & Neuner |
| Defendant | Interested Party | Active | Sannino, Lance | Jones Walker |
| Defendant | Interested Party | Active | Cangelosi, Michael | Gieger Laborde & Laperouse LLC |
| Defendant | Interested Party | Active | O'Keefe, Patrick | Montgomery Barnett Brown Read Hammond & Mintz LLP |
| Defendant | Interested Party | Active | Brooks, Philip | Montgomery Barnett Brown Read Hammond & Mintz LLP |
| Defendant | Interested Party | Active | Clarke, Shaun | Gerger & Clarke |
| Defendant | Interested Party | Active | Wenk, Christopher | Covington & Burling LLP-DC |
| Defendant | Interested Party | Active | Depottere-Smith, Alexia | Covington & Burling LLP-San Francisco |
| Defendant | Interested Party | Active | Kirsch, Thomas | Winston & Strawn LLP-Chicago |
| Defendant | Interested Party | Active | Dupre, Andy J | Flanagan Partners LLP |
| Defendant | Interested Party | Active | Flanagan, Harold J | Flanagan Partners LLP |
| Defendant | Interested Party | Active | Brady, Sean P | Flanagan Partners LLP |
| Defendant | Interested Party | Active | Pesce, Stephen M | Flanagan Partners LLP |
| Defendant | Interested Party | Active | Parsons, Justin W | Carr Allison |
| Defendant | Interested Party | Active | Franco, Sandra | Bingham McCutchen LLP - DC |
| Defendant | Interested Party | Active | Morgan, Vincent | Pillsbury Winthrop Shaw Pittman LLP-Houston |
| Defendant | Interested Party | Active | Cooper, Rebecca Y | Larzelere Picou Wells Simpson Lonero LLC |
| Defendant | Interested Party | Active | Collins, Michael | Bickel & Brewer |
| Defendant | Interested Party | Active | Hickox, Kenneth | Bickel & Brewer |
| Defendant | Interested Party | Active | Raines, Carolyn | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Williams, Aimee | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Moore, Allan B | Covington & Burling LLP-DC |
| Defendant | Interested Party | Active | Stetler, David J | Stetler Duffy & Rotert Ltd |
| Defendant | Interested Party | Active | Love, Christopher | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Tarter, James | Morgan Lewis & Bockius-Houston |
| Defendant | Interested Party | Active | Bennion, Kodie | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Fernandez, Alexandra | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Renard, Jim | Bickel & Brewer |
| Defendant | Interested Party | Active | Lopez, S Kena | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Pearman, Nathan Douglas | Bickel & Brewer |
| Defendant | Interested Party | Active | Zwart, Daniel | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Michael, Nicole | Godwin Ronquillo PC-Dallas |
| Defendant | Interested Party | Active | Chocheles, Chris | Sher Garner Cahill Richter Klein McAlister & Hilbert LLC |
| Defendant | Interested Party | Active | Israel, Brian | Arnold & Porter LLP-DC |
| Defendant | Interested Party | Active | LaCour, Gregory S | Christovich & Kearney LLC |

| | | | | |
|---|---|---|---|---|
| Defendant | Interested Party | Active | Pritchard, John F | Pillsbury Winthrop Shaw Pittman LLP-New York |
| Defendant | Interested Party | Active | Smith, David | Ouellette & Smith |
| Defendant | Interested Party | Active | McKay, Jack | Pillsbury Winthrop Shaw Pittman LLP-New York |
| Defendant | Interested Party | Active | Flanders, Edward | Pillsbury Winthrop Shaw Pittman LLP-New York |
| Defendant | Interested Party | Active | Briscoe, Brandon C | Flanagan Partners LLP |
| Defendant | Interested Party | Active | Pulman, Stella | Pillsbury Winthrop Shaw Pittman LLP-Houston |
| Defendant | Interested Party | Active | Nizialek, Philip D | Carver Darden Koretzky Tessier Finn Blossman & Areaux LLC |
| Defendant | Interested Party | Active | Stassi, Robert S | Carver Darden Koretzky Tessier Finn Blossman & Areaux LLC |
| Defendant | Interested Party | Active | Lemann, Arthur Anthony | Lemann, Arthur A III & Associates Inc |
| Defendant | Interested Party | Active | Lemann, Arthur Anthony | Lemann, Arthur A III & Associates Inc |
| Defendant | Interested Party | Active | Shugrue, John | Reed Smith LLP |
| Defendant | Interested Party | Active | Rosenfield, David | Reed Smith LLP |
| Defendant | Interested Party | Active | Mahoney, Estelle | Schwab Law Firm |
| Defendant | Interested Party | Active | Tozzi, Rik S | Burr & Forman LLP-Atlanta |
| Defendant | Interested Party | Active | Finn, William | Carver Darden Koretzky Tessier Finn Blossman & Areaux LLC |
| Defendant | Interested Party | Active | Nicaud, Albert | Nicaud & Sunseri |
| Defendant | Interested Party | Active | Siemssen, Jeffrey | Nicaud & Sunseri |
| Defendant | Interested Party | Active | Wawrzycki, Michael T | Reich Album & Plunkett LLC |
| Defendant | Interested Party | Active | Reich, Robert S | Reich Album & Plunkett LLC |
| Defendant | Interested Party | Active | Salley, David | Salley Hite Mercer & Resor LLC |
| Defendant | Interested Party | Active | Arnold, Lance | Baldwin Haspel Burke & Mayer LLC |
| Defendant | Interested Party | Active | Smith, Jena | Baldwin Haspel Burke & Mayer LLC |
| Defendant | Interested Party | Active | Fagan, Aimee | McKool Smith PC |
| Defendant | Interested Party | Active | Stevenson, Ted | McKool Smith PC |
| Defendant | Interested Party | Active | Pollinger, Steve | McKool Smith PC |
| Defendant | Interested Party | Active | Hejny, Scott | McKool Smith PC |
| Defendant | Interested Party | Active | Ayers, Peter | McKool Smith PC |
| Defendant | Interested Party | Active | Soule, Scott Allen | Chaffe McCall LLP |
| Defendant | Interested Party | Active | Kreller, Stephen Skelly | Kreller Law Firm |
| Defendant | Interested Party | Active | Green, Eric | McKool Smith PC |
| Defendant | Interested Party | Active | Limpus, Chris | McKool Smith PC |
| Defendant | Interested Party | Active | Berger, Eric P | McKool Smith PC |
| Defendant | Interested Party | Active | Smith, Geoffrey | McKool Smith PC |
| Defendant | Interested Party | Active | Hoggan, Jared | McKool Smith PC |
| Defendant | Interested Party | Active | Blackstone, Jason | McKool Smith PC |
| Defendant | Interested Party | Active | Ren, LiLan | McKool Smith PC |
| Defendant | Interested Party | Active | McManus, Mike | McKool Smith PC |
| Defendant | Interested Party | Active | Greskowiak, Stacie | McKool Smith PC |
| Defendant | Interested Party | Active | Brown, Ada | McKool Smith PC |
| Defendant | Interested Party | Active | McGoey, William Martin | St Bernard Parish Government Legal Department |
| Defendant | Interested Party | Active | DeKlerk, Andrew | Frilot LLC |
| Defendant | Interested Party | Active | Krouse, AJ | Frilot LLC |
| Defendant | Interested Party | Active | Thibodeaux, Brandon | Frilot LLC |
| Defendant | Interested Party | Active | Robert, John Lewis | Chaffe McCall LLP |
| Interested | Interested Party | Active | Fisher, Joe J | Provost & Umphrey-Beaumont |

| | | | | |
|---|---|---|---|---|
| Party | | | | |
| Interested Party | Interested Party | Active | Garner, James Michael | Sher Garner Cahill Richter Klein McAlister & Hilbert LLC |
| Interested Party | Interested Party | Active | Seeger, Christopher | Seeger Weiss LLP |
| Interested Party | Interested Party | Active | Buchanan, David | Seeger Weiss LLP |
| Interested Party | Interested Party | Active | Irpino, Anthony | Irpino Law Firm |
| Interested Party | Interested Party | Active | Herman, Russ | Herman Herman Katz & Cotlar LLP |
| Interested Party | Interested Party | Active | Herman, Maury A | Herman Herman Katz & Cotlar LLP |
| Interested Party | Interested Party | Active | Herman, Steve | Herman Herman Katz & Cotlar LLP |
| Interested Party | Interested Party | Active | King, Henry A | King Krebs & Jurgens |
| Interested Party | Interested Party | Active | Service, LexisNexis | LexisNexis Service |
| Interested Party | Interested Party | Active | Nicholas, Steven L | Cunningham Bounds LLC |
| Interested Party | Interested Party | Active | Klick, James C | Herman Herman Katz & Cotlar LLP |
| Interested Party | Interested Party | Active | Olen, Steve | Cunningham Bounds LLC |
| Interested Party | Interested Party | Active | Diaz, Gerald J | Diaz Law Firm |
| Interested Party | Interested Party | Active | Gisleson, Soren E | Herman Herman Katz & Cotlar LLP |
| Interested Party | Interested Party | Active | McGovern, Francis E | Duke Law |
| Interested Party | Interested Party | Active | Waters, Deborah C | Waters Law Firm PC |
| Interested Party | Interested Party | Active | Kent, Russell S | Attorney General Office-Florida |
| Interested Party | Interested Party | Active | Smith, Chesterfield | Attorney General Office-Florida |
| Interested Party | Interested Party | Active | Cerniglia, Michael J | King Krebs & Jurgens |
| Interested Party | Interested Party | Active | Vincenzo, Michael L | King Krebs & Jurgens |
| Interested Party | Interested Party | Active | Maloney, Michael J | Maloney Martin LLP |
| Intervenor | Interested Party | Active | Bickford, Scott R | Martzell & Bickford |
| Intervenor | Interested Party | Active | Jones, Gladstone | Jones Swanson Huddell & Garrison LLC |
| Intervenor | Interested Party | Active | Garner, James Michael | Sher Garner Cahill Richter Klein McAlister & Hilbert LLC |
| Intervenor | Interested Party | Active | Force, Joshua Simon | Sher Garner Cahill Richter Klein McAlister & Hilbert LLC |
| Intervenor | Interested Party | Active | Elias, R Todd | Gordon Elias & Seely LLP |
| Intervenor | Interested Party | Active | Poirier, Aldric | Blue Williams LLP |
| Intervenor | Interested Party | Active | deGravelles, John W | deGravelles Palmintier Holthaus & Fruge LLP |
| Intervenor | Interested Party | Active | Garrison, Eberhard | Jones Swanson Huddell & Garrison LLC |
| Intervenor | Interested Party | Active | Huddell, Kevin | Jones Swanson Huddell & Garrison LLC |
| Intervenor | Interested Party | Active | Swanson, Lynn | Jones Swanson Huddell & Garrison LLC |
| Intervenor | Interested Party | Active | Lundy, Matthew E | Lundy Lundy Soileau & South LLP |

| | | | | |
|---|---|---|---|---|
| Intervenor | Interested Party | Active | Thomas, David Abboud | Walters Papillion Thomas Cullens LLC |
| Intervenor | Interested Party | Active | Walters, Edward | Walters Papillion Thomas Cullens LLC |
| Intervenor | Interested Party | Active | Coon, Brent | Coon, Brent & Associates-Beaumont |
| Intervenor | Interested Party | Active | Shaffer, Matthew D | Schechter McElwee Shaffer & Harris LLP |
| Intervenor | Interested Party | Active | Barrasso, J | Barrasso Usdin Kupperman Freeman & Sarver LLC |
| Intervenor | Interested Party | Active | Joyce, J | Barrasso Usdin Kupperman Freeman & Sarver LLC |
| Intervenor | Interested Party | Active | Mounger, H Price | Dodson Hooks & Frederick APLC |
| Intervenor | Interested Party | Active | Hooks, Kenneth H | Dodson Hooks & Frederick APLC |
| Intervenor | Interested Party | Active | Dodson, Richard J | Dodson Hooks & Frederick APLC |
| Intervenor | Interested Party | Active | Lacy, Virgil A | Blue Williams LLP |
| Intervenor | Interested Party | Active | Price, Andrea Mahady | Barrasso Usdin Kupperman Freeman & Sarver LLC |
| Intervenor | Interested Party | Active | Wannamaker, Catherine | Southern Environmental Law Center |
| Intervenor | Interested Party | Active | Swanson, James R | Fishman Haygood Phelps Walmsley Willis & Swanson LLP |
| Intervenor | Interested Party | Active | Peiffer, Joseph C | Fishman Haygood Phelps Walmsley Willis & Swanson LLP |
| Intervenor | Interested Party | Active | Mills, Alysson L | Fishman Haygood Phelps Walmsley Willis & Swanson LLP |
| Intervenor | Interested Party | Active | McCardle, Lance C | Fishman Haygood Phelps Walmsley Willis & Swanson LLP |
| Intervenor | Interested Party | Active | Burge, Jason W | Fishman Haygood Phelps Walmsley Willis & Swanson LLP |
| Intervenor | Interested Party | Active | Mauterer, Steven | Beevers & Beevers LLP |
| Intervenor | Interested Party | Active | Beevers, Wiley | Beevers & Beevers LLP |
| Intervenor | Interested Party | Active | Beevers, Raylyn | Beevers & Beevers LLP |
| Intervenor | Interested Party | Active | Palmintier, Mike | deGravelles Palmintier Holthaus & Fruge LLP |
| Intervenor | Interested Party | Active | Holthaus, Frank | deGravelles Palmintier Holthaus & Fruge LLP |
| Intervenor | Interested Party | Active | Fruge, Scott | deGravelles Palmintier Holthaus & Fruge LLP |
| Intervenor | Interested Party | Active | Juren, Jessica W | Coon, Brent & Associates-Houston |
| Intervenor | Interested Party | Active | Stump, Jacqueline | Jones Swanson Huddell & Garrison LLC |
| Intervenor | Interested Party | Active | Bartlett, Harvey | Jones Swanson Huddell & Garrison LLC |
| Intervenor | Interested Party | Active | Jacoby, Andrew | Jones Swanson Huddell & Garrison LLC |
| Intervenor | Interested Party | Active | Daschbach, Emma Elizabeth | Jones Swanson Huddell & Garrison LLC |
| Intervenor | Interested Party | Active | Momanaee, Audrey | Gardere Wynne Sewell LLP-Dallas |
| LexisNexis Service | Interested Party | Active | Service, LexisNexis | LexisNexis Service |
| Movant | Interested Party | Active | Dart, Henry T | Dart, Henry |
| Movant | Interested Party | Active | Arsenault, Richard J | Neblett Beard & Arsenault |
| Movant | Interested Party | Active | Smith, Reginald | King & Spalding LLP-Houston |
| Movant | Interested Party | Active | Roy, James P | Domengeaux Wright Roy & Edwards |
| Movant | Interested Party | Active | Harrell, Shirin E | Harrell & Nowak LLC |
| Movant | Interested Party | Active | Nowak, Eric R | Harrell & Nowak LLC |
| Movant | Interested Party | Active | Flattmann, Grady J | Dart, Henry |
| Movant | Interested Party | Active | Kanner, Allan | Kanner & Whiteley LLC |
| Movant | Interested Party | Active | Usry, Thomas Allen | Usry Weeks & Matthews |
| Movant | Interested Party | Active | Petersen, Elizabeth B | Kanner & Whiteley LLC |
| Movant | Interested Party | Active | Robertson, Tracey M | King & Spalding LLP-Houston |

| | | | | |
|---|---|---|---|---|
| Movant | Interested Party | Active | Young, Meredith Prechter | King & Spalding LLP-Atlanta |
| Movant | Interested Party | Active | Parrish, Ashley C | King & Spalding-DC |
| Movant | Interested Party | Active | Engel, Charles J | King & Spalding-DC |
| Movant | Interested Party | Active | Pollack, Serena E | Lowe Stein Hoffman Allweiss & Hauver LLP |
| Movant | Interested Party | Active | Hoffman, Mitchell J | Lowe Stein Hoffman Allweiss & Hauver LLP |
| Movant | Interested Party | Active | Hoffman, Jeffrey M | Lowe Stein Hoffman Allweiss & Hauver LLP |
| Petitioner | Interested Party | Active | Lyle, Michael J | Weil Gotshal & Manges LLP-DC |
| Petitioner | Interested Party | Active | Tsekerides, Theodore | Weil Gotshal & Manges |
| Petitioner | Interested Party | Active | McCleskey, Bob | Phelps Dunbar-New Orleans |
| Petitioner | Interested Party | Active | Hemphill, Gary | Phelps Dunbar-New Orleans |
| Petitioner | Interested Party | Active | Straub, Hugh | Phelps Dunbar-New Orleans |
| Petitioner | Interested Party | Active | Waid, Raymond | Phelps Dunbar-New Orleans |
| Petitioner | Interested Party | Active | Riviere, Bill | Phelps Dunbar-New Orleans |
| Petitioner | Interested Party | Active | Grabill, Jeremy | Weil Gotshal & Manges |
| Petitioner | Interested Party | Active | Petosa, Frank | Morgan & Morgan PA-Fort Myers |
| Plaintiff | Interested Party | Active | Budd, Russell W | Baron & Budd PC-Dallas |
| Plaintiff | Interested Party | Active | Bickford, Scott R | Martzell & Bickford |
| Plaintiff | Interested Party | Active | Bilek, Thomas E | Bilek Law Firm LLP |
| Plaintiff | Interested Party | Active | Hilliard, Robert C | Hilliard & Munoz LLP |
| Plaintiff | Interested Party | Active | Fibich, Kenneth Tommy | Fibich Hampton & Leebron LLP-Houston |
| Plaintiff | Interested Party | Active | Jones, Gladstone | Jones Swanson Huddell & Garrison LLC |
| Plaintiff | Interested Party | Active | Dart, Henry T | Dart, Henry |
| Plaintiff | Interested Party | Active | Lubel, Lance | Lubel Voyles LLP |
| Plaintiff | Interested Party | Active | Reich, Dennis Craig | Reich & Binstock LLP |
| Plaintiff | Interested Party | Active | Kirk, Dana Gareth | Kirk Law Firm |
| Plaintiff | Interested Party | Active | Thompson, Charles M | Thompson, Charles M & Associates PC |
| Plaintiff | Interested Party | Active | Spagnoletti, Francis I | Spagnoletti & Co |
| Plaintiff | Interested Party | Active | Wilson, David P | Provost & Umphrey-Beaumont |
| Plaintiff | Interested Party | Active | Fisher, Joe J | Provost & Umphrey-Beaumont |
| Plaintiff | Interested Party | Active | Sexton, Kenneth Edward | Gentle Turner & Sexton |
| Plaintiff | Interested Party | Active | Friedman, Jeffrey E | Friedman Leak Dazzio Zulanas & Bowling PC |
| Plaintiff | Interested Party | Active | Barr, Brian H | Levin Papantonio Thomas Mitchell Rafferty & Proctor PA |
| Plaintiff | Interested Party | Active | Poynter, Scott E | Emerson Poynter LLP |
| Plaintiff | Interested Party | Active | Rezvani, Tracy Diana | Finkelstein Thompson LLP |
| Plaintiff | Interested Party | Active | Cabraser, Elizabeth J | Lieff Cabraser Heimann & Bernstein LLP-San Francisco |
| Plaintiff | Interested Party | Active | Watts, Mikal C | Watts Guerra Craft LLP |
| Plaintiff | Interested Party | Active | Boies, David | Straus & Boies LLP-Birmingham |
| Plaintiff | Interested Party | Active | Josephson, Michael A | Fibich Hampton & Leebron LLP-Houston |
| Plaintiff | Interested Party | Active | Axvig, Nathan | Azar, Franklin D & Associates PC-Aurora |
| Plaintiff | Interested Party | Active | Lamothe, Frank E | Lamothe & Hamilton |
| Plaintiff | Interested Party | Active | Girardi, Thomas V | Girardi & Keese |
| Plaintiff | Interested Party | Active | Dampier, M Stephen | Dampier, M Stephen PC |
| Plaintiff | Interested Party | Active | Finkelstein, Burton H | Finkelstein Thompson LLP |
| Plaintiff | Interested Party | Active | Bartos, Mila F | Finkelstein Thompson LLP |
| Plaintiff | Interested Party | Active | Craig, Bruce A | Carlile Craig LLP |
| Plaintiff | Interested Party | Active | Garner, James Michael | Sher Garner Cahill Richter Klein McAlister & Hilbert LLC |

| | | | | |
|---|---|---|---|---|
| Plaintiff | Interested Party | Active | Force, Joshua Simon | Sher Garner Cahill Richter Klein McAlister & Hilbert LLC |
| Plaintiff | Interested Party | Active | McMullan, David M | Barrett Law Office PA |
| Plaintiff | Interested Party | Active | Moran, Kyle | Phelps Dunbar-New Orleans |
| Plaintiff | Interested Party | Active | McCraney, W Thomas | McCraney & Montagnet PLLC |
| Plaintiff | Interested Party | Active | Seely, Jeff | Gordon Elias & Seely LLP |
| Plaintiff | Interested Party | Active | Itkin, Jason A | Arnold & Itkin LLP |
| Plaintiff | Interested Party | Active | Williamson, Jimmy | Williamson & Rusnak |
| Plaintiff | Interested Party | Active | Lanier, W Mark | Lanier Law Firm-Houston |
| Plaintiff | Interested Party | Active | Ziek, Robin M | Ziek, Robin M |
| Plaintiff | Interested Party | Active | Herd, Charles F | Lanier Law Firm-Houston |
| Plaintiff | Interested Party | Active | Elias, R Todd | Gordon Elias & Seely LLP |
| Plaintiff | Interested Party | Active | Aragon, Leonard | Hagens Berman Sobol Shapiro LLP |
| Plaintiff | Interested Party | Active | Arnold, Kurt B | Arnold & Itkin LLP |
| Plaintiff | Interested Party | Active | Summy, Scott | Baron & Budd PC-Dallas |
| Plaintiff | Interested Party | Active | Breit, Jeffrey A | Breit Drescher Imprevento & Walker PC |
| Plaintiff | Interested Party | Active | Whatley, Joe R | Whatley Drake & Kallas |
| Plaintiff | Interested Party | Active | Fineman, Steven | Lieff Cabraser Heimann & Bernstein LLP-San Francisco |
| Plaintiff | Interested Party | Active | Fleishman, Wendy R | Lieff Cabraser Heimann & Bernstein LLP-San Francisco |
| Plaintiff | Interested Party | Active | Chalos, Mark P | Lieff Cabraser Heimann & Bernstein LLP-San Francisco |
| Plaintiff | Interested Party | Active | Rifkin, Mark | Wolf Haldenstein Adler Freeman & Herz LLP |
| Plaintiff | Interested Party | Active | Singleton, Willie James | Singleton Law Firm |
| Plaintiff | Interested Party | Active | Seeger, Christopher | Seeger Weiss LLP |
| Plaintiff | Interested Party | Active | Salim, Robert L | Salim, Robert L |
| Plaintiff | Interested Party | Active | Nast, Dianne M | Roda Nast PC |
| Plaintiff | Interested Party | Active | Arsenault, Richard J | Neblett Beard & Arsenault |
| Plaintiff | Interested Party | Active | Sonnier, Christopher | Sonnier Law Firm |
| Plaintiff | Interested Party | Active | Lockridge, Richard A | Lockridge Grindal Nauen PLLP |
| Plaintiff | Interested Party | Active | Shelquist, Robert K | Lockridge Grindal Nauen PLLP |
| Plaintiff | Interested Party | Active | Raiter, Shawn M | Larson King LLP-St Paul |
| Plaintiff | Interested Party | Active | Ingram, Carroll H | Ingram Wilkinson PLLC |
| Plaintiff | Interested Party | Active | Gibson, Charles E | Gibson Law Firm PLLC-Ridgeland |
| Plaintiff | Interested Party | Active | Garrison, W Lewis | Heninger Garrison Davis LLC |
| Plaintiff | Interested Party | Active | Fayard, Calvin Clifford | Fayard & Honeycutt |
| Plaintiff | Interested Party | Active | Emerson, John G | Emerson Poynter LLP |
| Plaintiff | Interested Party | Active | Wright, Bob F | Domengeaux Wright Roy & Edwards |
| Plaintiff | Interested Party | Active | Rebennack, Albert Joseph | Rebennack, Albert J |
| Plaintiff | Interested Party | Active | Becnel, Daniel E | Becnel Law Firm LLC-Reserve |
| Plaintiff | Interested Party | Active | Becnel, Darryl | Becnel Law Firm LLC-Reserve |
| Plaintiff | Interested Party | Active | Kingsdorf, Bruce S | Barrios Kingsdorf & Casteix LLP |
| Plaintiff | Interested Party | Active | Barrios, Dawn M | Barrios Kingsdorf & Casteix LLP |
| Plaintiff | Interested Party | Active | Edmond, Roderick E | Edmond & Lindsay LLP |
| Plaintiff | Interested Party | Active | Burke, Carla | Baron & Budd PC-Dallas |
| Plaintiff | Interested Party | Active | Murray, Arthur Mahony | Murray Law Firm |
| Plaintiff | Interested Party | Active | Hirsch, Jay F | Pope McGlamry Kilpatrick Morrison & Norwood LLP |

| | | | | |
|---|---|---|---|---|
| Plaintiff | Interested Party | Active | McGlamry, Michael L | Pope McGlamry Kilpatrick Morrison & Norwood LLP |
| Plaintiff | Interested Party | Active | Hanly, Paul J | Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP |
| Plaintiff | Interested Party | Active | Fisher, Clinton B | Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP |
| Plaintiff | Interested Party | Active | Conroy, Jayne | Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP |
| Plaintiff | Interested Party | Active | Marcus, Karen J | Finkelstein Thompson LLP |
| Plaintiff | Interested Party | Active | Hassinger, Lambert J | Galloway Johnson Tompkins Burr & Smith PLC-New Orleans |
| Plaintiff | Interested Party | Active | Voyles, Adam Quentin | Lubel Voyles LLP |
| Plaintiff | Interested Party | Active | Brady, Scott Earl | Bohrer Law Firm LLC |
| Plaintiff | Interested Party | Active | Penton, Ronnie G | Penton, Ronnie G |
| Plaintiff | Interested Party | Active | Levin, Arnold | Levin Fishbein Sedran & Berman |
| Plaintiff | Interested Party | Active | Silvestri, Frank A | Silvestri & Massicot-New Orleans |
| Plaintiff | Interested Party | Active | Lambert, Hugh | Lambert & Nelson PLC |
| Plaintiff | Interested Party | Active | deGravelles, John W | deGravelles Palmintier Holthaus & Fruge LLP |
| Plaintiff | Interested Party | Active | Massicot, John Paul | Silvestri & Massicot-New Orleans |
| Plaintiff | Interested Party | Active | Bruno, Joseph M | BRUNO & BRUNO LLP |
| Plaintiff | Interested Party | Active | Cunard, Rebecca Ann | Cunard, Rebecca A |
| Plaintiff | Interested Party | Active | Becnel, Robert M | Becnel Robert M |
| Plaintiff | Interested Party | Active | Murray, Stephen B | Murray Law Firm |
| Plaintiff | Interested Party | Active | Dumas, Walter Clayton | Dumas & Associates |
| Plaintiff | Interested Party | Active | Yuspeh, Wayne W | Yuspeh, Wayne W APLC |
| Plaintiff | Interested Party | Active | Alvarez, Alex | Alvarez, Alex PA |
| Plaintiff | Interested Party | Active | Lyons, Douglas | Lyons & Farrar PA |
| Plaintiff | Interested Party | Active | Moreland, Matthew B | Becnel Law Firm LLC-Reserve |
| Plaintiff | Interested Party | Active | Christina, Salvadore | Becnel Law Firm LLC-Reserve |
| Plaintiff | Interested Party | Active | Edwards, Wanda J | Fayard & Honeycutt |
| Plaintiff | Interested Party | Active | Easterby, Edwin Armi | Williams Kherkher Hart & Boundas LLP-Houston |
| Plaintiff | Interested Party | Active | Meunier, Gerald Edward | Gainsburgh Benjamin David Meunier & Warshauer LLC |
| Plaintiff | Interested Party | Active | Williams, Conrad SP | Williams Law Group LLC |
| Plaintiff | Interested Party | Active | Ryan, Michael Joseph | Krupnick Campbell et al |
| Plaintiff | Interested Party | Active | Garrison, Eberhard | Jones Swanson Huddell & Garrison LLC |
| Plaintiff | Interested Party | Active | Huddell, Kevin | Jones Swanson Huddell & Garrison LLC |
| Plaintiff | Interested Party | Active | Swanson, Lynn | Jones Swanson Huddell & Garrison LLC |
| Plaintiff | Interested Party | Active | Lundy, Matthew E | Lundy Lundy Soileau & South LLP |
| Plaintiff | Interested Party | Active | Murray Jr, Stephen B | Murray Law Firm |
| Plaintiff | Interested Party | Active | Kirin, Damon A | Diliberto & Kirin LLC |
| Plaintiff | Interested Party | Active | Diliberto, Robert J | Diliberto & Kirin LLC |
| Plaintiff | Interested Party | Active | Woods, Justin I | Gainsburgh Benjamin David Meunier & Warshauer LLC |
| Plaintiff | Interested Party | Active | Pfleeger, Bryan | Hingle, Michael & Associates LLC |
| Plaintiff | Interested Party | Active | Favre, Ronald | Hingle, Michael & Associates LLC |
| Plaintiff | Interested Party | Active | Roy, James P | Domengeaux Wright Roy & Edwards |
| Plaintiff | Interested Party | Active | Bertaut, Carmelite | Stone Pigman Walther Wittmann LLC |
| Plaintiff | Interested Party | Active | Wittmann, Phillip | Stone Pigman Walther Wittmann LLC |
| Plaintiff | Interested Party | Active | Sutton, Lionel H | Sutton Law Firm-New Orleans |
| Plaintiff | Interested Party | Active | Hayes, Jessica | Murray Law Firm |

| Plaintiff | Interested Party | Active | Burgess, L Clayton | Burgess, L Clayton APLC |
|---|---|---|---|---|
| Plaintiff | Interested Party | Active | Beasley, Jere L | Beasley Allen Crow Methvin Portis & Miles PC |
| Plaintiff | Interested Party | Active | Honeycutt, David Blayne | Fayard & Honeycutt |
| Plaintiff | Interested Party | Active | Shaul, Roman | Beasley Allen Crow Methvin Portis & Miles PC |
| Plaintiff | Interested Party | Active | Parker, Julie C | Sacks & Weston |
| Plaintiff | Interested Party | Active | Weston, John K | Sacks & Weston |
| Plaintiff | Interested Party | Active | Morrow, Patrick C | Morrow Morrow Ryan & Bassett |
| Plaintiff | Interested Party | Active | Andry, Jonathan | Andry Law Group LLC |
| Plaintiff | Interested Party | Active | Hall, Jim S | Hall, Jim S & Associates LLC |
| Plaintiff | Interested Party | Active | Norris, Johnny | Davis & Norris LLP |
| Plaintiff | Interested Party | Active | Vail, Tyler | Davis & Norris LLP |
| Plaintiff | Interested Party | Active | Lovelace, Dewitt M | Lovelace Law Firm PA |
| Plaintiff | Interested Party | Active | Stag, Michael G | Smith Stag LLC |
| Plaintiff | Interested Party | Active | Cossich, Philip F | Cossich Sumich Parsiola & Taylor LLC |
| Plaintiff | Interested Party | Active | Herman, Russ | Herman Herman Katz & Cotlar LLP |
| Plaintiff | Interested Party | Active | Ranier, Drew | Ranier Law Firm |
| Plaintiff | Interested Party | Active | Exnicios, Val | Liska Exnicios & Nungesser |
| Plaintiff | Interested Party | Active | Johnson, Jonathan W | Johnson, Jonathan W LLC |
| Plaintiff | Interested Party | Active | Leger Jr, Walter J | Leger & Shaw |
| Plaintiff | Interested Party | Active | Gordon, Elizabeth Lapeyre | Shields Mott Lund LLP |
| Plaintiff | Interested Party | Active | McKay, John F | Mckay Law Firm |
| Plaintiff | Interested Party | Active | McDougal, Cary | Baron & Budd PC-Dallas |
| Plaintiff | Interested Party | Active | Rhine, Joel Robert | Lea Rhine & Rosbrugh PLLC |
| Plaintiff | Interested Party | Active | Gonzalez, Ervin A | Colson Hicks Eidson |
| Plaintiff | Interested Party | Active | Martin, Richard Massie | Martin, Richard M Jr |
| Plaintiff | Interested Party | Active | Isaacson, William | Boies Schiller & Flexner LLP-DC |
| Plaintiff | Interested Party | Active | Couhig, Robert Emmett | Couhig Partners LLC |
| Plaintiff | Interested Party | Active | Sanchez, Cristina | Baron & Budd PC-Dallas |
| Plaintiff | Interested Party | Active | Barrett, John W | Barrett Law Office PA |
| Plaintiff | Interested Party | Active | Shaw, Franklin G | Leger & Shaw |
| Plaintiff | Interested Party | Active | Thomas, David Abboud | Walters Papillion Thomas Cullens LLC |
| Plaintiff | Interested Party | Active | Walters, Edward | Walters Papillion Thomas Cullens LLC |
| Plaintiff | Interested Party | Active | Reed, Shawn C | Howard & Reed |
| Plaintiff | Interested Party | Active | Harrell, Shirin E | Harrell & Nowak LLC |
| Plaintiff | Interested Party | Active | Nowak, Eric R | Harrell & Nowak LLC |
| Plaintiff | Interested Party | Active | Bohrer, Philip | Bohrer Law Firm LLC |
| Plaintiff | Interested Party | Active | Maples, F Gerald | Maples, F Gerald PA |
| Plaintiff | Interested Party | Active | Carter, James E | Hurt Stolz & Cromwell LLC |
| Plaintiff | Interested Party | Active | Thornhill, Tom | Thornhill Law Firm |
| Plaintiff | Interested Party | Active | Coon, Brent | Coon, Brent & Associates-Beaumont |
| Plaintiff | Interested Party | Active | Herman, Maury A | Herman Herman Katz & Cotlar LLP |
| Plaintiff | Interested Party | Active | Le, Cuong | Gardere Wynne Sewell LLP-Dallas |
| Plaintiff | Interested Party | Active | Tomlinson, John E | Beasley Allen Crow Methvin Portis & Miles PC |
| Plaintiff | Interested Party | Active | Slevinski, Amanda | Levin Papantonio Thomas Mitchell Rafferty & Proctor PA |
| Plaintiff | Interested Party | Active | Whittemore, Kent | Whittemore Law Group PA |
| Plaintiff | Interested Party | Active | Powers, Brett | Ranier Law Firm |
| Plaintiff | Interested Party | Active | Hoyle, David | Motley Rice LLC-Mount Pleasant |

| | | | | |
|---|---|---|---|---|
| Plaintiff | Interested Party | Active | Dean, Kevin R | Motley Rice LLC-Mount Pleasant |
| Plaintiff | Interested Party | Active | Taylor, Ricahrd | Taylor Martino Zarzaur PC |
| Plaintiff | Interested Party | Active | Kuykendall, Frederick T | Kuykendall & Associates LLC |
| Plaintiff | Interested Party | Active | Schultz, Gregory G | Taylor English Duma LLP |
| Plaintiff | Interested Party | Active | Devine, Foy R | Taylor English Duma LLP |
| Plaintiff | Interested Party | Active | Searcy, Christian D | Searcy Denney Scarola Barnhart & Shipley PA |
| Plaintiff | Interested Party | Active | Martin, Annika K | Lieff Cabraser Heimann & Bernstein LLP-San Francisco |
| Plaintiff | Interested Party | Active | Itkin, Cory D | Arnold & Itkin LLP |
| Plaintiff | Interested Party | Active | Grossman, Stuart Z | Grossman Roth PA |
| Plaintiff | Interested Party | Active | Smith, Kenneth W | Sheller PC |
| Plaintiff | Interested Party | Active | Herman, Steve | Herman Herman Katz & Cotlar LLP |
| Plaintiff | Interested Party | Active | Gresham, W Lee | Heninger Garrison Davis LLC |
| Plaintiff | Interested Party | Active | Lynch, Christopher Joseph | Hunter Williams & Lynch PA |
| Plaintiff | Interested Party | Active | Colon, Adrian A | BALLAY BRAUD & COLON PLC |
| Plaintiff | Interested Party | Active | Sterbcow, Paul M | Lewis Kullman Sterbcow & Abramson |
| Plaintiff | Interested Party | Active | Chaikin, Jordan L | Parker Waichman Alonso LLP |
| Plaintiff | Interested Party | Active | Harper, McKenna | Lubel Voyles LLP |
| Plaintiff | Interested Party | Active | Huber, Eric | Sierra Club |
| Plaintiff | Interested Party | Active | Flattmann, Grady J | Dart, Henry |
| Plaintiff | Interested Party | Active | Rumley, David | Wigington Rumley Dunn LLP |
| Plaintiff | Interested Party | Active | Holland, Eric D | Holland Groves Schneller & Stolze LLC |
| Plaintiff | Interested Party | Active | Alonso, Andres F | Parker Waichman Alonso LLP |
| Plaintiff | Interested Party | Active | Dicharry, Richard | Phelps Dunbar-New Orleans |
| Plaintiff | Interested Party | Active | Rubenstein, Joshua L | Scheuermann & Jones |
| Plaintiff | Interested Party | Active | Whitmore, David C | Scheuermann & Jones |
| Plaintiff | Interested Party | Active | McCrea, Mitchell | Baron & Budd PC-Dallas |
| Plaintiff | Interested Party | Active | Taschner, Dana B | Lanier Law Firm-Los Angeles |
| Plaintiff | Interested Party | Active | Knopf, Andrew F | Newsome Law Firm |
| Plaintiff | Interested Party | Active | Serna, Enrique G | Serna & Associates PLLC |
| Plaintiff | Interested Party | Active | Berniard, Jeffrey P | Berniard Law Firm |
| Plaintiff | Interested Party | Active | Torres, Sidney | Torres, Sidney D III APLC |
| Plaintiff | Interested Party | Active | Burns, Roberta | Torres, Sidney D III APLC |
| Plaintiff | Interested Party | Active | Rockforte, Nicholas R | Pendley Baudin & Coffin LLP |
| Plaintiff | Interested Party | Active | Coffin, Christopher L | Pendley Baudin & Coffin LLP |
| Plaintiff | Interested Party | Active | Baudin, Stanley P | Pendley Baudin & Coffin LLP |
| Plaintiff | Interested Party | Active | Nazareth, Neil | Martzell & Bickford |
| Plaintiff | Interested Party | Active | Doody, Spencer | Martzell & Bickford |
| Plaintiff | Interested Party | Active | Centola, Lawrence J | Martzell & Bickford |
| Plaintiff | Interested Party | Active | Keiser, Jeff J | Colson Hicks Eidson |
| Plaintiff | Interested Party | Active | Bart, Morris | Bart, Morris LLC |
| Plaintiff | Interested Party | Active | Becnel, Christopher Devon | Becnel Law Firm LLC-Reserve |
| Plaintiff | Interested Party | Active | Thibodeaux, Paul | Frilot LLC |
| Plaintiff | Interested Party | Active | Miller, Kerry J | Frilot LLC |
| Plaintiff | Interested Party | Active | Mason, Gary E | Mason Law Firm LLP |
| Plaintiff | Interested Party | Active | Alters, Jeremy | Alters Law Firm |
| Plaintiff | Interested Party | Active | Nicholas, Steven L | Cunningham Bounds LLC |
| Plaintiff | Interested Party | Active | Netting, Irma L | Lemmon Law Firm LLC |

| | | | | |
|---|---|---|---|---|
| Plaintiff | Interested Party | Active | Lemmon, Andrew A | Lemmon Law Firm LLC |
| Plaintiff | Interested Party | Active | Irvine, George R | Stone Granade & Crosby PC |
| Plaintiff | Interested Party | Active | Kanner, Allan | Kanner & Whiteley LLC |
| Plaintiff | Interested Party | Active | Mullins, Steve | Luckey & Mullins PLLC |
| Plaintiff | Interested Party | Active | Becnel, Toni | Becnel Law Firm LLC-Reserve |
| Plaintiff | Interested Party | Active | Gordon, Ben | Levin Papantonio Thomas Mitchell Rafferty & Proctor PA |
| Plaintiff | Interested Party | Active | Cash, William | Levin Papantonio Thomas Mitchell Rafferty & Proctor PA |
| Plaintiff | Interested Party | Active | Ecuyer, Michael J | Gainsburgh Benjamin David Meunier & Warshauer LLC |
| Plaintiff | Interested Party | Active | Cain, Joseph Edward | Herman Herman Katz & Cotlar LLP |
| Plaintiff | Interested Party | Active | McWilliams, Ned | Levin Papantonio Thomas Mitchell Rafferty & Proctor PA |
| Plaintiff | Interested Party | Active | Wynne, Robert | Arnold & Itkin LLP |
| Plaintiff | Interested Party | Active | Langlois, Wade A | Gaudry Ranson Higgins & Gremillion LLC |
| Plaintiff | Interested Party | Active | Connick, J Patrick | Connick, J Patrick |
| Plaintiff | Interested Party | Active | Rowan, Edward P | Taylor Martino Zarzaur PC |
| Plaintiff | Interested Party | Active | Mounger, H Price | Dodson Hooks & Frederick APLC |
| Plaintiff | Interested Party | Active | Hooks, Kenneth H | Dodson Hooks & Frederick APLC |
| Plaintiff | Interested Party | Active | Beckers, Michael T | Dodson Hooks & Frederick APLC |
| Plaintiff | Interested Party | Active | Dodson, Richard J | Dodson Hooks & Frederick APLC |
| Plaintiff | Interested Party | Active | Eiland, A Craig | Eiland, A Craig |
| Plaintiff | Interested Party | Active | Villmer, Matthew | Emmanuel Sheppard & Condon |
| Plaintiff | Interested Party | Active | Holley, Michael R | Lanier Law Firm-Houston |
| Plaintiff | Interested Party | Active | Usry, Thomas Allen | Usry Weeks & Matthews |
| Plaintiff | Interested Party | Active | Clegg, Michael V | Clegg, Michael V APLC |
| Plaintiff | Interested Party | Active | Livesay, Deborah | Taylor English Duma LLP |
| Plaintiff | Interested Party | Active | Greenwald, Robin L | Weitz & Luxenberg PC |
| Plaintiff | Interested Party | Active | Alvarez, Mekel | Bart, Morris LLC |
| Plaintiff | Interested Party | Active | Saad, Elias J | Saad, E J PC |
| Plaintiff | Interested Party | Active | Wood, E Kirk | Wood Law Firm LLC |
| Plaintiff | Interested Party | Active | Lakey, Robert F | Lakey, Robert F |
| Plaintiff | Interested Party | Active | DeBarbieris, Melissa | BRUNO & BRUNO LLP |
| Plaintiff | Interested Party | Active | Moore, Matthew | Alters Law Firm |
| Plaintiff | Interested Party | Active | Lemann, Jonathan | Couhig Partners LLC |
| Plaintiff | Interested Party | Active | Siracusa, John M | Rosenbaum Mollengarden Janssen & Siracusa PLLC |
| Plaintiff | Interested Party | Active | Krause, David | Krause Lawdog |
| Plaintiff | Interested Party | Active | Arceneaux, Robert E | Arceneaux, Robert E LLC |
| Plaintiff | Interested Party | Active | Klick, James C | Herman Herman Katz & Cotlar LLP |
| Plaintiff | Interested Party | Active | Taylor, Brandon J | Cossich Sumich Parsiola & Taylor LLC |
| Plaintiff | Interested Party | Active | Parsiola, David A | Cossich Sumich Parsiola & Taylor LLC |
| Plaintiff | Interested Party | Active | Cossich, Christina M | Cossich Sumich Parsiola & Taylor LLC |
| Plaintiff | Interested Party | Active | Britt, Darin S | Cossich Sumich Parsiola & Taylor LLC |
| Plaintiff | Interested Party | Active | Kahao, Kristopher R | Kleinpeter & Schwartzberg LLC |
| Plaintiff | Interested Party | Active | Mcleod, Evans Martin | Phelps Dunbar-New Orleans |
| Plaintiff | Interested Party | Active | Gilly, George Moore | Phelps Dunbar-New Orleans |
| Plaintiff | Interested Party | Active | Wallace, Campbell Edington | Frilot LLC |
| Plaintiff | Interested Party | Active | Fineran, Everett R | Frilot LLC |
| Plaintiff | Interested Party | Active | Clements, Miles Paul | Frilot LLC |

| | | | | |
|---|---|---|---|---|
| Plaintiff | Interested Party | Active | Campbell, Carl D | Maples, F Gerald PA |
| Plaintiff | Interested Party | Active | Schofield, Ralph | Keefe Anchors Gordon & Moyle |
| Plaintiff | Interested Party | Active | Moyle, Jon | Keefe Anchors Gordon & Moyle |
| Plaintiff | Interested Party | Active | Gordon, Alfred Benjamin | Keefe Anchors Gordon & Moyle |
| Plaintiff | Interested Party | Active | Anchors, Karen Michelle | Keefe Anchors Gordon & Moyle |
| Plaintiff | Interested Party | Active | Dickson, Thomas W | Taylor English Duma LLP |
| Plaintiff | Interested Party | Active | Warriner, C Calvin | Searcy Denney Scarola Barnhart & Shipley PA |
| Plaintiff | Interested Party | Active | Braud, Stephen Jacob | BALLAY BRAUD & COLON PLC |
| Plaintiff | Interested Party | Active | Tufts, Lucy E | Cunningham Bounds LLC |
| Plaintiff | Interested Party | Active | Olen, Steve | Cunningham Bounds LLC |
| Plaintiff | Interested Party | Active | Cunningham, Robert T | Cunningham Bounds LLC |
| Plaintiff | Interested Party | Active | Rash, David Charles | Alters Law Firm |
| Plaintiff | Interested Party | Active | Petersen, Elizabeth B | Kanner & Whiteley LLC |
| Plaintiff | Interested Party | Active | Hatcher, Christopher M | BRUNO & BRUNO LLP |
| Plaintiff | Interested Party | Active | Rausch, Joseph W | Hall, Jim S & Associates LLC |
| Plaintiff | Interested Party | Active | Barnett, Wesley W | Davis & Norris LLP |
| Plaintiff | Interested Party | Active | Nelson, Korey Arthur | Murray Law Firm |
| Plaintiff | Interested Party | Active | Jennings, Christopher D | Emerson Poynter LLP |
| Plaintiff | Interested Party | Active | Stevens, Elwood C | Domengeaux Wright Roy & Edwards |
| Plaintiff | Interested Party | Active | Colomb, Brian C | Domengeaux Wright Roy & Edwards |
| Plaintiff | Interested Party | Active | Hinnigan, Emma | Liskow & Lewis-New Orleans |
| Plaintiff | Interested Party | Active | Breit, Mitchell M | Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP |
| Plaintiff | Interested Party | Active | Zainey, Jay Christopher | Williams Law Group LLC |
| Plaintiff | Interested Party | Active | Stratton, Richard Douglas | Beasley Allen Crow Methvin Portis & Miles PC |
| Plaintiff | Interested Party | Active | Miller, Joseph Parker | Beasley Allen Crow Methvin Portis & Miles PC |
| Plaintiff | Interested Party | Active | Jones, Rhon E | Beasley Allen Crow Methvin Portis & Miles PC |
| Plaintiff | Interested Party | Active | Fry, A Brantley | Beasley Allen Crow Methvin Portis & Miles PC |
| Plaintiff | Interested Party | Active | Boutwell, Christopher Don | Beasley Allen Crow Methvin Portis & Miles PC |
| Plaintiff | Interested Party | Active | Sevin, Christine E | Leger & Shaw |
| Plaintiff | Interested Party | Active | Leger III, Walter John | Leger & Shaw |
| Plaintiff | Interested Party | Active | Zatzkis, Lanny R | Zatzkis McCarthy & Associates LLC |
| Plaintiff | Interested Party | Active | McCarthy, Karen D | Zatzkis McCarthy & Associates LLC |
| Plaintiff | Interested Party | Active | Daunoy, Yvette A | Zatzkis McCarthy & Associates LLC |
| Plaintiff | Interested Party | Active | Bilek, Kelly Cox | Bilek Law Firm LLP |
| Plaintiff | Interested Party | Active | Flowers, Jodi W | Motley Rice LLC-Mount Pleasant |
| Plaintiff | Interested Party | Active | Alexander, Elizabeth A | Lieff Cabraser Heimann & Bernstein LLP-San Francisco |
| Plaintiff | Interested Party | Active | Hall, Keith B | Stone Pigman Walther Wittmann LLC |
| Plaintiff | Interested Party | Active | Davidson, Jared A | Stone Pigman Walther Wittmann LLC |
| Plaintiff | Interested Party | Active | Markovits, Wilbert B | Waite Schneider Bayless & Chesley Co LPA |
| Plaintiff | Interested Party | Active | Marshall, Curt | Weitz & Luxenberg PC |
| Plaintiff | Interested Party | Active | LeMense, Julia A | Weitz & Luxenberg PC |
| Plaintiff | Interested Party | Active | Tebbutt, Charles M | Tebbutt, Charles M PC |
| Plaintiff | Interested Party | Active | Underhill, R Michael | United States Department of Justice Civil Torts Aviation & Admiralty |

| Plaintiff | Interested Party | Active | Reck, Gothard Joseph | Reck, Gothard J APLC |
|-----------|-----------------|--------|---------------------|---------------------|
| Plaintiff | Interested Party | Active | Garside, Clay | Waltzer & Wiygul |
| Plaintiff | Interested Party | Active | Wiygul, Robert | Waltzer & Wiygul |
| Plaintiff | Interested Party | Active | Healy, George W | Healy, George W IV & Associates |
| Plaintiff | Interested Party | Active | Yarborough, Gary McKay | Hesse & Butterworth PLLC |
| Plaintiff | Interested Party | Active | Butterworth, Alfred Zach | Hesse & Butterworth PLLC |
| Plaintiff | Interested Party | Active | Jackson, Sidney W | Jackson Foster & Richardson LLC |
| Plaintiff | Interested Party | Active | Richardson, Mathew B | Jackson Foster & Richardson LLC |
| Plaintiff | Interested Party | Active | Jacobs, Darleen M | Jacobs Sarrat & Lovelace |
| Plaintiff | Interested Party | Active | Lambremont, John B | Lambremont, John B Sr |
| Plaintiff | Interested Party | Active | Tran, Kinh Luan | Lee Tran & Liang APLC |
| Plaintiff | Interested Party | Active | Pollack, Serena E | Lowe Stein Hoffman Allweiss & Hauver LLP |
| Plaintiff | Interested Party | Active | Hoffman, Mitchell J | Lowe Stein Hoffman Allweiss & Hauver LLP |
| Plaintiff | Interested Party | Active | Hoffman, Jeffrey M | Lowe Stein Hoffman Allweiss & Hauver LLP |
| Plaintiff | Interested Party | Active | Allweiss, Michael Richard | Lowe Stein Hoffman Allweiss & Hauver LLP |
| Plaintiff | Interested Party | Active | Albritton, Melvin D | Lowe Stein Hoffman Allweiss & Hauver LLP |
| Plaintiff | Interested Party | Active | Lucado, M Shane | Shelby Lucado Esq Oil & Gas Litigation LLC |
| Plaintiff | Interested Party | Active | Marten, Bradley M | Marten Law PLLC |
| Plaintiff | Interested Party | Active | Larson, Linda R | Marten Law PLLC |
| Plaintiff | Interested Party | Active | McCorvey, Derriel Carlton | McCorvey, Derriel C LLC |
| Plaintiff | Interested Party | Active | Michles, Marcus | Michles & Booth PA |
| Plaintiff | Interested Party | Active | Sims, Stacey Lea | Morris Sakalarios & Blackwell PLLC |
| Plaintiff | Interested Party | Active | Orrill, R Ray | Orrill Cordell & Beary LLC |
| Plaintiff | Interested Party | Active | Beary, W Christopher | Orrill Cordell & Beary LLC |
| Plaintiff | Interested Party | Active | Salas, Camilo Kossy | Salas & Co LC |
| Plaintiff | Interested Party | Active | Northington, Hiawatha | Smith & Fawer LLC |
| Plaintiff | Interested Party | Active | Wannamaker, Catherine | Southern Environmental Law Center |
| Plaintiff | Interested Party | Active | Coumanis, Christ Nicholas | Coumanis & York PC |
| Plaintiff | Interested Party | Active | Long, Brenda G | Daniel Coker Horton & Bell PA |
| Plaintiff | Interested Party | Active | Crump, Martin D | Davis & Crump PC |
| Plaintiff | Interested Party | Active | Delise, Bobby J | Delise & Hall |
| Plaintiff | Interested Party | Active | Discon, Thomas M | DISCON LAW FIRM |
| Plaintiff | Interested Party | Active | Price, Donald Wayne | Due Price Guidry Piedrahita & Andrews |
| Plaintiff | Interested Party | Active | Guidry, Kirk A | Due Price Guidry Piedrahita & Andrews |
| Plaintiff | Interested Party | Active | Duval, Stanwood | Duval Funderburk Sundbery Lovell & Watkins |
| Plaintiff | Interested Party | Active | Swanson, James R | Fishman Haygood Phelps Walmsley Willis & Swanson LLP |
| Plaintiff | Interested Party | Active | Peiffer, Joseph C | Fishman Haygood Phelps Walmsley Willis & Swanson LLP |
| Plaintiff | Interested Party | Active | Mills, Alysson L | Fishman Haygood Phelps Walmsley Willis & Swanson LLP |
| Plaintiff | Interested Party | Active | McCardle, Lance C | Fishman Haygood Phelps Walmsley Willis & Swanson LLP |
| Plaintiff | Interested Party | Active | Burge, Jason W | Fishman Haygood Phelps Walmsley Willis & Swanson LLP |
| Plaintiff | Interested Party | Active | Galante, Scott M | Galante & Bivalacqua LLC |
| Plaintiff | Interested Party | Active | Goldberg, Kevin I | Goldberg Finnegan & Mester LLC |

| | | | | |
|---|---|---|---|---|
| Plaintiff | Interested Party | Active | Mauterer, Steven | Beevers & Beevers LLP |
| Plaintiff | Interested Party | Active | Beevers, Wiley | Beevers & Beevers LLP |
| Plaintiff | Interested Party | Active | Betzer, Bruce Charles | Betzer, Bruce C |
| Plaintiff | Interested Party | Active | Passler, Richard G | Breazeale Sachse & Wilson LLP |
| Plaintiff | Interested Party | Active | Butler, Peter J | Breazeale Sachse & Wilson LLP |
| Plaintiff | Interested Party | Active | Fink, Marc | Center for Biological Diversity |
| Plaintiff | Interested Party | Active | Bagwell, David Ashley | Bagwell, David A |
| Plaintiff | Interested Party | Active | Ward, Jasper D | Bahe Cook Cantley & Jones |
| Plaintiff | Interested Party | Active | Jones, Lawrence L | Bahe Cook Cantley & Jones |
| Plaintiff | Interested Party | Active | Leblanc, J Burton | Baron & Budd |
| Plaintiff | Interested Party | Active | Buppert, Gregory | Defenders of Wildlife |
| Plaintiff | Interested Party | Active | Hilleren, David A | Hilleren & Hilleren LLP |
| Plaintiff | Interested Party | Active | Palminter, Mike | deGravelles Palmintier Holthaus & Fruge LLP |
| Plaintiff | Interested Party | Active | Palmintier, Josh | deGravelles Palmintier Holthaus & Fruge LLP |
| Plaintiff | Interested Party | Active | Holthaus, Frank | deGravelles Palmintier Holthaus & Fruge LLP |
| Plaintiff | Interested Party | Active | Fruge, Scott | deGravelles Palmintier Holthaus & Fruge LLP |
| Plaintiff | Interested Party | Active | Davis, Gary A | Davis, Gary A & Associates |
| Plaintiff | Interested Party | Active | Whitlock, James S | Davis, Gary A & Associates |
| Plaintiff | Interested Party | Active | Diaz, Gerald J | Diaz Law Firm |
| Plaintiff | Interested Party | Active | Pote, David A | Kanner & Whiteley LLC |
| Plaintiff | Interested Party | Active | Impastato, Dominick F | Frishhertz & Associates LLC |
| Plaintiff | Interested Party | Active | Frischhertz, Lloyd N | Frishhertz & Associates LLC |
| Plaintiff | Interested Party | Active | Frischhertz, Marc L | Frishhertz & Associates LLC |
| Plaintiff | Interested Party | Active | Gibbs, Darryl M | Chhabra & Gibbs PA |
| Plaintiff | Interested Party | Active | Chhabra, Rogen K | Chhabra & Gibbs PA |
| Plaintiff | Interested Party | Active | Lamothe, Frank E | Lamothe Lea Aertker, LLC |
| Plaintiff | Interested Party | Active | Savoie, Rusty | Savoie, Rusty APLC |
| Plaintiff | Interested Party | Active | Gordon, Steve | Gordon Elias & Seely LLP |
| Plaintiff | Interested Party | Active | Bonner, William | Cunningham Bounds LLC |
| Plaintiff | Interested Party | Active | Fulmer, Brenda S | Searcy Denney Scarola Barnhart & Shipley PA |
| Plaintiff | Interested Party | Active | Waltzer, Joel | Waltzer & Wiygul |
| Plaintiff | Interested Party | Active | Petosa, Frank | Morgan & Morgan PA-Fort Myers |
| Plaintiff | Interested Party | Active | Sumich, Darren D | Cossich Sumich Parsiola & Taylor LLC |
| Plaintiff | Interested Party | Active | Gisleson, Soren E | Herman Herman Katz & Cotlar LLP |
| Plaintiff | Interested Party | Active | Stump, Jacqueline | Jones Swanson Huddell & Garrison LLC |
| Plaintiff | Interested Party | Active | Bartlett, Harvey | Jones Swanson Huddell & Garrison LLC |
| Plaintiff | Interested Party | Active | Jacoby, Andrew | Jones Swanson Huddell & Garrison LLC |
| Plaintiff | Interested Party | Active | Daschbach, Emma Elizabeth | Jones Swanson Huddell & Garrison LLC |
| Plaintiff | Interested Party | Active | Kennedy, Richard | Kennedy, Richard R APLC |
| Plaintiff | Interested Party | Active | Kennedy, Richard R | Kennedy, Richard R APLC |
| Plaintiff | Interested Party | Active | Lichtman, Jason | Lieff Cabraser Heimann & Bernstein LLP-San Francisco |
| Plaintiff | Interested Party | Active | Bradford, Brad | Aylstock Witkin Kreis & Overholtz PLLC |
| Plaintiff | Interested Party | Active | Cutter, C Brooks | Kershaw Cutter & Ratinoff LLP |
| Plaintiff | Interested Party | Active | Garbin, Vatroslav Jacob | Vincent, William S Jr |
| Plaintiff | Interested Party | Active | Vincent, William Jared | Vincent, William S Jr |
| Plaintiff | Interested Party | Active | Vincent, William S | Vincent, William S Jr |
| Plaintiff | Interested Party | Active | Kushlefsky, Noah H | Kreindler & Kreindler LLP |
| Plaintiff | Interested Party | Active | Tarricone, Anthony | Kreindler & Kreindler LLP |

| | | | | |
|---|---|---|---|---|
| Plaintiff | Interested Party | Active | Sims, Thomas | Baron & Budd PC-Dallas |
| Plaintiff | Interested Party | Active | Espino, Irma | Baron & Budd PC-Dallas |
| Plaintiff | Interested Party | Active | Hall, Alton J | Delise & Hall |
| Plaintiff | Interested Party | Active | McKelvin, Jodi K | Shelby Roden LLC |
| Plaintiff | Interested Party | Active | Roden, Robert B | Shelby Roden LLC |
| Plaintiff | Interested Party | Active | Robin, John Maxwell | Robin, John M APLC |
| Plaintiff | Interested Party | Active | Hayes, Edward Thomas | Leake & Andersson |
| Plaintiff | Interested Party | Active | Clark, Lange | Clark, Lange PC |
| Plaintiff | Interested Party | Active | Milam, Adam M | Milam & Milam LLC |
| Plaintiff | Interested Party | Active | Jophlin, Aaron S | Bell Legal Group |
| Plaintiff | Interested Party | Active | Bell, J Edward | Bell Legal Group |
| Plaintiff | Interested Party | Active | Mitchell, Natalie K | Kinney & Ellinghausen APLC |
| Plaintiff | Interested Party | Active | Smith, John H | McKernan Law Firm |
| Plaintiff | Interested Party | Active | Hazzard, Brent | Hazzard Law LLC |
| Plaintiff | Interested Party | Active | Ardoin, David | Ardoin, David W |
| Plaintiff | Interested Party | Active | Owen, William C | Owen, William C LLC |
| Plaintiff | Interested Party | Active | Benick, Eugene J | Finkelstein Thompson LLP |
| Plaintiff | Interested Party | Active | Sullivan, Jessica G | United States Department of Justice Civil Torts Aviation & Admiralty |
| Plaintiff | Interested Party | Active | Shutler, Sharon K | United States Department of Justice Civil Torts Aviation & Admiralty |
| Plaintiff | Interested Party | Active | Pfeffer, David Joseph | United States Department of Justice Civil Torts Aviation & Admiralty |
| Plaintiff | Interested Party | Active | McClellan, Jessica L | United States Department of Justice Civil Torts Aviation & Admiralty |
| Plaintiff | Interested Party | Active | Frost, Peter F | United States Department of Justice Civil Torts Aviation & Admiralty |
| Plaintiff | Interested Party | Active | Flynn, Stephen G | United States Department of Justice Civil Torts Aviation & Admiralty |
| Plaintiff | Interested Party | Active | Matusheski, Timothy | Matusheski, Timothy J PLLC |
| Plaintiff | Interested Party | Active | Wilson, Joshua David | Wiggins Childs Quinn & Pantazis |
| Plaintiff | Interested Party | Active | Tambling, Robert Douglas | Office of the Attorney General State of Alabama |
| Plaintiff | Interested Party | Active | Bleau, Thomas | Bleau Fox PLC |
| Plaintiff | Interested Party | Active | Fox, Martin | Bleau Fox PLC |
| Plaintiff | Interested Party | Active | Rees, Samuel T | Bleau Fox PLC |
| Plaintiff | Interested Party | Active | Snyder, Daniel C | Tebbutt, Charles M PC |
| Plaintiff | Interested Party | Active | Harvey, Judy | US Department of Justice/Enrd |
| Plaintiff | Interested Party | Active | Orourke, Steven | US Department of Justice/Enrd |
| Plaintiff | Interested Party | Active | Adams, Samuel T | Adams, Samuel T |
| Plaintiff | Interested Party | Active | Ancel, Devorah | Sierra Club |
| Plaintiff | Interested Party | Active | Ticer, Bernard H | Baldwin Haspel Burke & Mayer LLC |
| Plaintiff | Interested Party | Active | Taylor, Gerald B | Taylor Law Firm LLC |
| Plaintiff | Interested Party | Active | Lott, Casey | Langston & Lott P A |
| Plaintiff | Interested Party | Active | Dugan, James R | Dugan Law Firm APLC |
| Plaintiff | Interested Party | Active | Woodward, Margaret | Woodward, Margaret |
| Plaintiff | Interested Party | Active | Bruchhaus, David P | Mudd & Bruchhaus LLC |
| Plaintiff | Interested Party | Active | Cooper, Rebecca Y | Larzelere Picou Wells Simpson Lonero LLC |
| Plaintiff | Interested Party | Active | Maloney, Michael J | Maloney Martin LLP |
| Plaintiff | Interested Party | Active | Sternberg, Scott | Baldwin Haspel Burke & Mayer LLC |
| Plaintiff | Interested Party | Active | Didriksen, Caleb | Didriksen Law Firm |

| Plaintiff | Interested Party | Active | Cosenza, Diane R | Didriksen Law Firm |
|-----------|------------------|--------|------------------|--------------------|
| Plaintiff | Interested Party | Active | Garvey, Richard J | Didriksen Law Firm |
| Plaintiff | Interested Party | Active | Traina, Richard L | Didriksen Law Firm |
| Plaintiff | Interested Party | Active | Gurley, Michael | Wood Law Firm LLC |
| Plaintiff | Interested Party | Active | Byrum, Angel L | Orrill Cordell & Beary LLC |
| Plaintiff | Interested Party | Active | Mase, Curtis J | Mase Lara Eversole PA |
| Plaintiff | Interested Party | Active | Colvin, David L | Colvin Law Firm |
| Plaintiff | Interested Party | Active | Higgins, Daryl | Gaudry Ranson Higgins & Gremillion LLC |
| Plaintiff | Interested Party | Active | Calvert, Thomas B | Calvert, Thomas B APLC |
| Plaintiff | Interested Party | Active | Darling, Thomas W | Gaudry Ranson Higgins & Gremillion LLC |
| Plaintiff | Interested Party | Active | Dudenhefer, Frank C | Dudenhefer Law Firm LLC |
| Plaintiff | Interested Party | Active | Schiffrin, Richard | Schiffrin, Richard S LLC |
| Plaintiff | Interested Party | Active | Riviere, Mary W | Waitz & Downer |
| Plaintiff | Interested Party | Active | Downer, Huntington B | Waitz & Downer |
| Plaintiff | Interested Party | Active | McKay, Gail Nell | McKay, Gail N |
| Plaintiff | Interested Party | Active | Schoenberger, Kevin C | Schoenberger, Kevin C |
| Plaintiff | Interested Party | Active | Maher, Lisa | Couhig Partners LLC |
| Plaintiff | Interested Party | Active | Loehn, Thomas E | Lakey, Robert F |
| Plaintiff | Interested Party | Active | Pieksen, John Oliver | Pieksen, John & Associates LLC |
| Plaintiff | Interested Party | Active | Beasley, Ryan | Beasley, Ryan E Sr |
| Plaintiff | Interested Party | Active | Kaufman, Mark | Cossich Sumich Parsiola & Taylor LLC |
| Plaintiff | Interested Party | Active | Lemann, Arthur Anthony | Lemann, Arthur A III & Associates Inc |
| Plaintiff | Interested Party | Active | Lemann, Arthur Anthony | Lemann, Arthur A III & Associates Inc |
| Plaintiff | Interested Party | Active | Stipelcovich, Stephen | Samanie, Michael J |
| Plaintiff | Interested Party | Active | Mahoney, Estelle | Schwab Law Firm |
| Plaintiff | Interested Party | Active | de las Salas, Gabriel M | Alvarez & Barbara LLP |
| Plaintiff | Interested Party | Active | Barbara, Richard L | Alvarez & Barbara LLP |
| Plaintiff | Interested Party | Active | Wild, Cheryl L | Ungar & Byrne APLC |
| Plaintiff | Interested Party | Active | Ungar, Evette E | Ungar & Byrne APLC |
| Plaintiff | Interested Party | Active | Byrne, George W | Ungar & Byrne APLC |
| Plaintiff | Interested Party | Active | Utley, Kriste Talton | Boykin Ehret & Utley |
| Plaintiff | Interested Party | Active | Boykin, Terrill W | Boykin Ehret & Utley |
| Plaintiff | Interested Party | Active | Scurria, Brandy Gonzales | Gonzales, Brandy Legal Services LLC |
| Plaintiff | Interested Party | Active | Lund, Daniel | Shields Mott Lund LLP |
| Plaintiff | Interested Party | Active | Folkenflik, Max | Folkenflik & McGerity |
| Plaintiff | Interested Party | Active | Tillery, A Scott | Tillery & Tillery |
| Plaintiff | Interested Party | Active | Prestia, Michael G | Prestia, Michael |
| Plaintiff | Interested Party | Active | Foster, Murphy J | Breazeale Sachse & Wilson LLP |
| Plaintiff | Interested Party | Active | Tein, Michael Ross | Lewis Tein PL |
| Plaintiff | Interested Party | Active | White, Ben | White, Ben |
| Plaintiff | Interested Party | Active | Harvin, Joseph B | Harvin Law Firm PLC |
| Plaintiff | Interested Party | Active | Price, Bill | Price, William B PA |
| Plaintiff | Interested Party | Active | Sangisetty, Ravi K | Sangisetty & Samuels LLC |
| Plaintiff | Interested Party | Active | Willis, Jennifer N | Willis & Buckley APC |
| Plaintiff | Interested Party | Active | Castle, Teresa G | Garrity, Robert T Jr |
| Plaintiff | Interested Party | Active | Garrity, Robert T | Garrity, Robert T Jr |
| Plaintiff | Interested Party | Active | Chabert, Scotty E | Saunders & Chabert |

| | | | | |
|---|---|---|---|---|
| Plaintiff | Interested Party | Active | Donovan, Brian Joseph | Donovan Law Group |
| Plaintiff | Interested Party | Active | Kreller, Stephen Skelly | Kreller Law Firm |
| Plaintiff | Interested Party | Active | Derenbecker, Jessica R | Shields Mott Lund LLP |
| Plaintiff | Interested Party | Active | Hutchinson, Byron M | Hutchinson Law Office |
| Plaintiff | Interested Party | Active | O'Leary, T Patrick | Frilot LLC |
| Respondent | Interested Party | Active | Underhill, R Michael | United States Department of Justice Civil Torts Aviation & Admiralty |
| Respondent | Interested Party | Active | Frischhertz, Lloyd N | Frishhertz & Associates LLC |

B

# Exhibit B

Aerotek, Inc.
Ameri-Force, Inc.
Anadarko Petroleum Company
Anadarko Petroleum Corporation
Anadarko E&P Company LP
Art Catering, Inc.
Ashland
BJ Services Company, USA
BP America Inc.
BP America Production Company
BP Company North America Inc.
BP Corporation North America Inc.
BP Corporation North America Inc. Savings Plan Investment Oversight Committee
BP Energy Company
BP Exploration (Alaska) Inc.
BP Global Special Products (America) Inc.
BP Holdings North America Limited
BP plc
BP Products North America Inc.
Brett Robinson Gulf Corporation
Cameron Corporation
Cameron International Corporation f/k/a Cooper Cameron Corporation
Cameron International Corporation d/b/a/ Cameron Systems Corporation
Center for Toxicology and Environmental Health L.L.C.
Chouest Shorebase Services, LLC
Clean Harbors
Core 4 Kebawk, LLC
Crowder/Gulf Joint Venture
Crowder Gulf Disaster Recovery
Diamond Offshore Company
DOF Subsea USA, Inc.
Drill-Quip, Inc.
Entrix, Inc.
Environmental Standards
EPS Corporation
ERG
ES&H Environmental Services
ESIS, Inc.
Exponent
Global Diving & Salvage, Inc.
Gulf Offshore Logistics, LLC
Gulf Offshore Logistics International, LLC
Halliburton Energy Services, Inc.
Halliburton Company
Hamilton Eng.
Hepaco
Hilcorp Energy Company
Hyundai Heavy Industries Co. Ltd, Inc.
Hyundai Motor Company
In Rem Vessels
Island Ventures II
Jupiter Insurance Limited
LaBorde Marine Services, LLC
Lloyd's of London

Marine Spill Response Corporation
MEG Energy Corp
M-I L.L.C.
M-I Drilling Fluids L.L.C.
M-I Swaco
Miller Environmental Group, Inc.
Mitsui & Co. (USA), Inc.
Mitsui & Co. Ltd.
Mitsui Oil Exploration Co. Ltd.
Moran Environmental Recovery, LLC
MOEX Offshore 2007 LLC
Moex USA Corporation
MV Monica Ann
MV Pat Tilman
MV Damon B. Bankston
MV Max Chouest
MV Ocean Interventions
MV C. Express
MV Joe Griffin
MV Mr. Sidney
MV Hilda Lab
MV Sailfish
MV Seacor Washington
MV Seacor Vanguard
Nalco Holding Company
Nalco Finance Holdings LLC
Nalco Finance Holdings Inc.
Nalco Holdings LLC
Nalco Company
Nautical Ventures, LLC
Nautical Solutions, LLC
O'Brien's Response Management, Inc.
Ocean Runner, Inc.
Oceaneering International, Inc.
Offshore Cleaning Systems L.L.C.Offshore Service Vessels, LLC
Offshore Inland Marine & Oilfield Services, Inc.
Ranger Offshore, Inc.
Reel Pipe, LLC
Schlumberger, Ltd.
Seacor Marine, LLC
Seacor Marine, Inc.
Seacor Marine International, Inc.
Siemens Financial, Inc.
Seafairer Boat, LLC
State Street Bank and Trust Company
Subsea 7 LLC
The Response Group, Inc.
TestAmerica, Inc.,
Tiburon Divers, Inc.
Tidewater Marine LLC
Tiger Safety, LLC
TL Wallace
Transocean Inc.
Transocean Deepwater, Inc.
Transocean Drilling (U.S.A.) Inc.
Transocean Enterprise Inc.

Transocean Holdings Inc.
Transocean Holdings LLC
Transocean Ltd.
Transocean Offshore Deepwater Drilling, Inc.
Transocean Offshore USA, Inc.
Triton Asset Leasing GmbH
Triton Hungary Asset Management KFT
Triton Hungary Asset Management Limited Liability Company
USES/Construct Corps
Weatherford International Ltd.
Weatherford U.S. L.P
Worley Catastrophe Services, LLC
Worley Catastrophe Response, LLC

C

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | * | **MDL No. 2179** |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | **SECTION J** |
| | * | |
| | | |
| **This Document Applies to:** | * | **JUDGE BARBIER** |
| *All Cases (including 10-2771)* | * | |
| | * | **MAGISTRATE SHUSHAN** |

## ORDER

**[Amending and Superceding the Court's Previous Orders of December 28, 2011 (Rec.Doc.5022) and January 4, 2012 (Rec.Doc.5064), establishing an account and reserve]**

Before the Court is BP's Motion for Clarification and Reconsideration of the Court's December 28, 2011 Order and Reasons (Rec. Doc. 5044).[1]  BP requested expedited consideration of its motion, which the Court granted (Rec.Doc.5083), ordering that any response to BP's motion be filed not later than January 12, 2012.   The Court has received and considered responses from a number of parties, including  the PSC, the United States, the Attorney General for the State of Alabama, and also from a number of interested non-parties, including the Attorneys General for the States of Mississippi and Florida, as well as several non-PSC attorneys.

Also before the Court is the Joint Motion for Entry of Proposed Agreed Order filed by the Attorneys General for the States of Louisiana and Alabama, and the PSC.  (Rec.Doc.5230).

After consideration of these motions and the various responses,  the  Court hereby **GRANTS**

---

[1]The Order of December 28, 2011 was amended by Order dated January 4, 2012 (Rec.Doc.5064) to clarify that the hold-back order would apply prospectively only.

2 of 5

BP'S Motion for Clarification and Reconsideration (Rec.Doc.5044), and also **GRANTS** the Joint Motion for Entry of Proposed Agreed Order filed by the Attorneys General for the States of Louisiana and Alabama (Rec.Doc.5230), and hereby **AMENDS** and **SUPERCEDES** its previous Orders (Rec. Docs. 5022 and 5064) as follows:

**IT IS ORDERED** that Defendants shall withhold and deposit an amount equivalent to four percent (4%) of the gross monetary settlements, monetary judgments or other monetary payments by or on behalf of one or more Defendants to the State of Alabama or the State of Louisiana, or to any of their local governmental entities, arising out of the Macondo / Deepwater Horizon disaster,[2] into a court-supervised escrow account, in order to establish a fund from which common benefit litigation fees and expenses may be paid, if and as awarded by the Court, at an appropriate time, pursuant to procedures to be determined by future order of the Court.

The 4 % hold-back applicable to settlements, judgments or other payments to the States of Louisiana and Alabama shall <u>not</u> apply to (1) any State recoveries of whatever type that have previously been paid, prior to entry date of this Order, or are to be paid after entry of this Order pursuant to written agreements previously executed between the States of Louisiana and/or Alabama (as the sole party or as one of multiple parties) and any defendant, prior to the entry date of this Order, and (2) any State's

---

[2] The requirement to deposit "an amount equivalent to" the designated percentage is intended to afford the parties flexibility in settlement negotiation. Presumably the plaintiffs will attempt to negotiate settlement with one or more Defendants whereby the defendant(s) might agree to pay common benefit fees (and/or other attorneys' fees) over and above the settlement corpus, as part of the terms of the negotiated settlement. In the event, however, that the defendant(s) in question is (are) not willing to voluntarily fund the reserve over and above the settlement amount, the reserve (absent a final judgment or other order requiring Defendants to pay some or all attorneys' fees) would be reserved or "held back" out of the monetary judgment, monetary settlement or other monetary payment to the plaintiff, pending future action by the Court. While Plaintiffs may reserve the right to seek common benefit and/or other attorneys' fees under some potentially applicable fee-shifting provision, nothing in this Order would require a defendant to pay the plaintiff's common benefit and/or other attorneys' fees.

2

recovery (or benefit) for response costs, increased agency costs related to response, natural resource damages ("NRD"), NRD assessment, any other costs incurred through participation in the NRD assessment process, any State or Federal penalties (e.g. Clean Water Act penalties) (with the exception of penalties sought by District Attorneys under La. R.S. 56:40.1, et seq.), any State or Federal Oil Spill Trust Funding pollution removal payments, supplemental environmental projects and any other similar non-monetary recovery. All other monetary settlements, judgments or other payments to the States of Alabama and/or Louisiana are subject to the 4% hold-back.

**IT IS FURTHER ORDERED** that Defendants, or any agent or representative acting on a Defendant's behalf, shall withhold and deposit an amount equivalent to six percent (6%) of the gross monetary settlements, judgments or other payments made on or after December 30, 2011, by or on behalf of one or more Defendants to any other plaintiff or claimant-in-limitation who has had, currently has, or may hereinafter have, a suit or claim-in-limitation pending in these MDL proceedings (with the exception of settlements, judgments or other payments to the United States), into a court-supervised escrow account, in order to establish a fund from which common benefit litigation fees and expenses may be paid, if and as awarded by the Court, at an appropriate time, pursuant to procedures to be determined by future order of the Court.[3] Specifically, this hold back requirement applies to all actions filed in or removed to federal court that have been or become a part of the MDL, whether or not a motion to remand has been filed, and to state court plaintiffs represented by counsel who have participated in or had access to the discovery conducted in this MDL. Exempt from the current hold back requirement are settlements or other payments by the Gulf Coast Claims Facility, another claims

---

[3] In the event a Defendant does not agree to pay an amount equivalent to the hold-back percentage over and above the settlement corpus, *see supra* note 2, the Court intends that, as to any plaintiff or claimant-in-limitation represented by counsel, the hold-back shall be deducted from the attorney's contingent fee, rather than the client's portion of the recovery.

3

processor, or any Defendants to claimants who have never had, do not currently have, nor hereinafter have, actions or claims-in-limitation pending in the MDL. Also exempt from this hold back requirement are state court counsel who have or had no cases in this MDL and who have never had access to any of the discovery undertaken in the MDL.

Furthermore, the hold-back does not apply to settlement offers contained within payment determination letters from the GCCF (or BP with respect to Vessels of Opportunity property damage claims) which issued on or before December 30, 2011. In addition, where BP, other defendants, the GCCF or any other claims processor withholds a payment (or portion of a payment) pursuant to legally enforceable liens or writs of garnishment, the hold-back shall only apply to that portion of the settlement or payment not subject to the lien or garnishment (i.e., the "net" amount after the deduction of the lien or garnishment).

Nothing in this Order is intended to apply to judgments, settlements or other payments between or among BP, Transocean, Cameron, Halliburton, Weatherford, M-I, Anadarko, MOEX, and/or other Defendants, or any of their insurers.

No common benefit fees and/or expenses shall be awarded out of the MDL 2179 Reserve Account except by formal motion, with reasonable notice and an opportunity to be heard. All rights to seek or oppose an award of common benefit fees and/or expenses with respect to settlements, judgments or other payments arising out of the Macondo / Deepwater Horizon disaster that are not subject to this Order's hold back requirement shall be preserved.

Defendants shall tender such deposits to the Clerk of Court, 500 Poydras Street, Room C-151, New Orleans, Louisiana 70130, for deposit into the MDL No. 2179 Account and Reserve for Common Benefit Litigation Expenses ("MDL No. 2179 Reserve Account"). All deposits to the MDL No. 2179

Reserve Account shall be accompanied by information identifying the party and attorney making the deposit; the Defendant on whose behalf the payment is being made; the gross amount of the settlement, judgment or other payment; and the plaintiff, claimant or putative class member to whom the settlement, judgment or other payment was made.

Such information shall be kept confidential, and access to such information shall be limited in accordance with the procedures set forth under Pre-Trial Order No. 9; accordingly, Phil Garrett CPA shall track such information and prepare periodic reports to Court and Plaintiff Co-Liaison. Any further disclosure of such information shall require an order from this Court.

No party or attorney shall have any individual right to any of the deposits made into or funds maintained in this Court-supervised account; nor will such funds constitute the separate property of any party or attorney or be subject to garnishment or attachment for the debts of any party or attorney; nor shall such funds be allocated, disbursed or distributed except as provided by further order of this Court.

Any questions regarding the filing procedures with the Clerk of Court should be direct to Kim Lange, Financial, Clerk of Court, 504-589-7786, kim_lange@laed.uscourts.gov. Questions regarding the substance of any such deposits shall be directed to Philip Garrett, CPA, Garrett and Company CPA's, 117 Fairgrounds Boulevard, Bush, Louisiana 70431, 985-635-1500, pgarrett@garrettco.com.

**SIGNED** at New Orleans, Louisiana, this 18th day of January, 2012.

United States District Judge

5

D

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUSIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | § | **MDL NO 2179;** |
| DEEPWATER HORIZON, IN THE | § | **Ref CA No. 10-2771** |
| GULF OF MEXICO | § | **SECTION: J** |
| ON APRIL 20, 2010 | § | |
| | § | **JUDGE BARBIER** |
| | § | **MAG. JUDGE SHUSHAN** |
| This Document Relates Only to: | § | |
| 2:10-cv-2771 | § | |

**ANSWER TO COMPLAINT AND PETITION OF TRITON ASSET LEASING GMBH,
ET AL FOR EXONERATION FROM LIMITATION OF LIABILITY
AND CLAIM IN LIMITATION**

CLAIMANT ACULTECA, S.C.L., along with more than 300 fishing associations, who own more than 3,000 fishing vessels and represent more than 9,000 individual fishermen and all Fisherman Claimants[1] as set forth in Exhibit A, CLAIMANT CHANCE NORRIS d/b/a SANDALS BEACH SERVICE, a Real Property Claimant[2] as set forth in Exhibit B, and CLAIMANT MICHAEL CHATMAN and all Bodily Injury Claimants[3] as set forth in Exhibit C, file this Answer to Complaint and Petition of Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling, Inc., and Transocean Deepwater, Inc.'s (collectively "Petitioners" or "Complainants") Verified Complaint for Exoneration From or

---

[1] Commercial fishermen, oystermen, shrimpers, crabbers, the owners and operators of businesses involving commercial fishing (collectively referred to as "Fisherman Claimants").

[2] Owners, lessors, and lessees of real property alleged to be physically damaged and economically, harmed, or impacted by acts of Petitioners (collectively referred to as "Real Property Claimants).

[3] Individuals suffering personal injuries, including bodily injury, mental and physical disabilities caused by exposure to Chemical Dispersants (collectively referred to as "Bodily Injury Claimants").

Limitation of Liability and Claims in Limitation[4] and would respectfully show this Honorable

Court the following:

**A.**      **DEFENSES AND ANSWER**

This proceeding is frivolous.  Complainants are well aware that shore-side management

possesses privity and knowledge of the circumstances leading to the sinking of the vessel in

question.  This entire proceeding simply serves as a roadblock and delay tactic preventing those

injured from pursuing their claims in the court of their choice.

Further, this pleading is filed exclusively in the action filed under the Limitation of

Liability Act, 46 U.S.C. § 181, et seq. and Claimants object to the Court exercising jurisdiction

outside of the action.

For answer to the Complaint, Claimants state the following defenses and responses to the

allegations:

<div align="center"><strong>FIRST DEFENSE</strong></div>

The Complaint fails to state a claim or cause of action upon which relief can be granted.

Rule 12(b)(6), FED. R. CIV. PROC.

<div align="center"><strong>SECOND DEFENSE</strong></div>

The Limitation of Liability Act, 46 U.S.C. §§ 30501-30512, is discriminatory in that it

favors Petitioners over Claimants and deprives Claimants of property rights without due process

of law in violation of the Fifth and Fourteenth Amendments to the Constitution of the United

States of America.

---

[4] The Monition Order entered by Judge Keith Ellison specifically excluded Oil Pollution Act claims that could be brought against Petitioner. Further, with this filing, the Claimants listed herein are not, at this time, bringing claims against any other entity other than Petitioner.

### THIRD DEFENSE

The limitation fund is inadequate and the Complaint should be dismissed because Petitioners have failed to deposit adequate security equal to the value of the vessel and its appurtenant vessels, plus the pending freight; *i.e.,* the value of the contract under which the vessel was operating at the time of the incident made the basis of Claimants' claims. The proper security must be deposited at the time of filing. Rule F(1). Petitioners' deposit at the time of filing did not meet the requirements of Rule F(1). Accordingly, this limitation action must be dismissed.

### FOURTH DEFENSE

Claimants assert the flotilla doctrine. The limitation fund is inadequate and the Complaint should be dismissed because Petitioners have failed to deposit adequate security for the Vessel and for the additional vessels under contract within the flotilla, which were under a common operational control, supervision, and enterprise. Pursuant to Rule F(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims, the proper limitation fund must be deposited at the time of filing. Petitioners' deposit, at the time of filing, did not meet federal standards. As such, this limitation action must be dismissed.

### FIFTH DEFENSE

To the extent Petitioners' insurers attempt to avail themselves of the limitation/exoneration defense, Claimants assert that the Limitation of Liability Act is unavailable to insurers of vessel owners under the circumstances. In the alternative, no *prima facie* case has been made establishing they are entitled to avail themselves of the Limitation of Liability Act.

### SIXTH DEFENSE

The purpose of a limitation action is to provide a single forum for determining whether the vessel and its owner are liable at all, whether the owner may in fact limit liability to the value of the vessel and pending freight, and how the funds are to be distributed to the claimants. *See* 46 U.S.C. § 183; *see also* THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW 2ⁿᵈ Ed. § 13-5 (1994). Because of the nature and circumstances of this action, a limitations proceeding is inappropriate and unjustified.

### SEVENTH DEFENSE

Claimants respectfully reserve the right, pursuant to the "saving to suitors" clause of 28 U.S.C. § 1333(1), to pursue claims in the forum of choice. Claimants will move the Court to lift the injunction and stay of proceedings in other forums. *See In re Tetra Applied Technologies, L.P.*, 362 F.3d 388 (5ᵗʰ Cir. 2004). Further, pursuant to the holdings of *In Re Liverpool, etc. Nav. Co. (Vestris)*, 57 F.2d 176, 179 (2ⁿᵈ Cir. 1932); *Kreta Shipping v. Preussay International Steel Corp.*, 192 F.3d 41, 48 (2ⁿᵈ Cir. 1999); and *The Silver Palm*, 94 F.2d 776, 780 (9ᵗʰ Cir. 1937), upon Petitioners' failure to obtain relief in this limitation action (should resolution of this action precede judgment in other actions), Claimants hereby assert and claim the right to have claims and damages tried to a jury in the court of choosing.

### EIGHTH DEFENSE

Claimants reserve the right to contest the appraisal value of THE MODU DEEPWATER HORIZON and/or for any additional vessels in the flotilla, their engines, apparel, appurtenances, pending freight, contracts, etc., and the adequacy of the security.

## NINTH DEFENSE

The incident made the basis of Claimants' claims caused serious injury to Claimants, and was caused, at least, in part, by the negligence of Petitioners, their principals, agents, servants, and/or employees, and/or as a direct and proximate result of unseaworthy conditions existing aboard the vessel, which occurred with the privity and knowledge of Petitioners, their principals, agents, servants, and/or employees.  Accordingly, Petitioners cannot limit their liability.

## TENTH DEFENSE

The Complaint does not affect Claimants' right to maintenance and cure.  Thus, Petitioners' liability to Claimants for their intentional, willful, arbitrary and capricious refusal to provide Claimants' maintenance and cure is not limited to the value of any of its vessels.

## ELEVENTH DEFENSE

The limitation fund is inadequate and should be increased and/or this action should be dismissed because the limitation fund does not properly account for the value of the minerals and other appurtenances, attachments, freight and/or cargo aboard the vessel, subject to the control of the vessel, and/or owned by Petitioners.

**B.**    **ANSWER**

AND NOW, with full reservation of all defenses asserted above, Claimants answer the allegations of Petitioners, as follows:

### I.

Claimants deny the allegations in Paragraph 1 for lack of sufficient information to justify a belief in the truth thereof.

## II.

Claimants deny the allegations in Paragraph 2 for lack of sufficient information to justify a belief in the truth thereof.

## III.

Claimants deny the allegations in Paragraph 3 for lack of sufficient information to justify a belief in the truth thereof.

## IV.

Claimants deny the allegations in Paragraph 4 for lack of sufficient information to justify a belief in the truth thereof.

## V.

Claimants deny the allegations in Paragraph 5 for lack of sufficient information to justify a belief in the truth thereof.

## VI.

Claimants deny the allegations in Paragraph 6 for lack of sufficient information to justify a belief in the truth thereof.

## VII.

Claimants deny the allegations in Paragraph 7.

## VIII.

Claimants deny the allegations in Paragraph 8 for lack of sufficient information to justify a belief in the truth thereof.

## IX.

Claimants deny the allegations in Paragraph 9 for lack of sufficient information to justify a belief in the truth thereof.

## X.

Claimants deny the allegations in Paragraph 10.

## XI.

Claimants deny the allegations in Paragraph 11.

## XII.

Claimants deny the allegations in Paragraph 12.

## XIII.

Claimants deny the allegations in Paragraph 13 for lack of sufficient information to justify a belief in the truth thereof.

## XIV.

Claimants deny the allegations in Paragraph 14 for lack of sufficient information to justify a belief in the truth thereof.

## XV.

Claimants deny the allegations in Paragraph 15 for lack of sufficient information to justify a belief in the truth thereof.

## XVI.

Claimants deny the allegations in Paragraph 16 for lack of sufficient information to justify a belief in the truth thereof.

## XVII.

Claimants deny the allegations in Paragraph 17 for lack of sufficient information to justify a belief in the truth thereof.

## XVIII.

Claimants deny the allegations in Paragraph 18.

## XIX.

Claimants deny the allegations in Paragraph 19 for lack of sufficient information to justify a belief in the truth thereof.

## XX.

Claimants deny the allegations in Paragraph 20 for lack of sufficient information to justify a belief in the truth thereof.

## XXI.

Claimants deny the allegations in Paragraph 21 for lack of sufficient information to justify a belief in the truth thereof.

## XXII.

Claimants deny the allegations in Paragraph 22 for lack of sufficient information to justify a belief in the truth thereof.

## XXIII.

Claimants deny the allegations in Paragraph 23 for lack of sufficient information to justify a belief in the truth thereof.

## XXIV.

Claimants respectfully suggest that the allegations contained in Paragraph 24 are not the type to which Claimants can affirm or deny. To the extent such is incorrect, Claimants deny the allegations contained therein for lack of sufficient information to justify a belief in the truth thereof.

## C.     **CLAIM IN LIMITATION**

AND NOW, in the alternative pending the injunction and order of stay being lifted to prosecute claims against Petitioners and other parties in the venue of his choice, Claimants assert claims against Petitioners as follows:

### I.

Claimants, individuals and/or entities have suffered losses under admiralty or maritime law.  The Claimants can be defined as follows:

1. Commercial fishermen, oystermen, shrimpers, crabbers, the owners and operators of businesses involving commercial fishing (collectively referred to as "Fisherman Claimants").

2. Owners, lessors, and lessees of real property alleged to be physically damaged and economically, harmed, or impacted by acts of Petitioners (collectively referred to as "Real Property Claimants").

3. Individuals suffering personal injuries, including bodily injury, mental and physical disabilities caused by exposure to Chemical Dispersants (collectively referred to as "Bodily Injury Claimants").

### II.

Claimants, collectively, suffered physical loss, economic loss, and loss of property as a direct result of the explosion of the DEEPWATER HORIZON.  Such injuries were legally caused by the negligence and gross negligence of the Petitioners and the unseaworthiness of the Vessel in question.  The DEEPWATER HORIZON caught fire and exploded, and ultimately sunk while on navigable waters, injuring more than a hundred, and killing eleven.  Such an incident does not occur without an unseaworthy condition or negligence.

The Fisherman Claimants have suffered and will continue to suffer economic loss due to the Spill and response related injury to marine life in the Gulf of Mexico.

The Real Property claimants suffered and will continue to suffer as a result of destruction, loss of use, and diminution in the value of their property caused by the spill and the efforts to reduce the effect of the spill.

The Bodily Injury Claimants suffered injuries from bodily injury, pain and suffering, and mental anguish as a result of exposure to chemical dispersants used after the spill.

## III.

## NEGLIGENCE AND GROSS NEGLIGENCE

Petitioners were negligent, negligent per se, grossly negligent, and reckless for the following reasons:

a.   failure to properly supervise their crew;

b.   failure to properly train their employees;

c.   failure to provide adequate safety equipment;

d.   failure to provide adequate medical treatment;

e.   operating the vessel with an inadequate crew;

f.   failure to maintain the vessel;

g.   failure to heed test results and other warnings regarding the well's integrity;

h.   vicariously liable for their employees' and agents' negligence, gross negligence, and recklessness;

i.   violating applicable Coast Guard, MMS and/or OSHA regulations; and,

j.   other acts deemed negligent, grossly negligent, and reckless.

**IV.**

At all relevant times, the DEEPWATER HORIZON was unseaworthy.

**V.**

By reason of the occurrences made the basis of this action, including the conduct on the part of Petitioners, Claimants sustained severe bodily injuries and/or property losses, economic damages, and/or other costs as a result of the oil spill. Claimants have suffered physical pain and mental anguish and, in reasonable medical probability, will continue to do so for the balance of their natural lives.

Petitioners owed and breached duties of ordinary and reasonable care to Claimants in connection with the maintenance and operation of the Deepwater Horizon, and additionally owed and breached duties to Claimants to guard against and/or prevent such risk. Petitioners failed to exercise reasonable care and acted with gross negligence, willful misconduct, and reckless disregard for human life and the safety of the Claimants.

**VI.**

As a result of the foregoing injuries, Fishermen, Real Property Damage and Bodily Injury Claimants have suffered a loss of wages or earnings in the past and a loss of or reduction in the capacity to work and earn money in the future and, in reasonable probability, his earning capacity has been impaired permanently.

**VII.**

Additionally, Bodily Injury Claimants have incurred reasonable and necessary medical expenses in the past and, in reasonable probability, will incur reasonable medical expenses in the future.

**VIII.**

As a result of the injuries sustained in the occurrences of April 20, 2010, Bodily Injury Claimants have suffered in the past and will, in reasonable medical probability, continue to suffer permanent physical impairment.

**IX.**

Bodily Injury Claimants are physically impaired as a result of injuries he sustained on April 20, 2010. As a consequence they have lost the ability to perform household services and, in reasonable probability, to have lost the ability permanently.

**X.**

Pleading further, in the alternative, if it be shown that Bodily Injury Claimants were suffering from some pre-existing injury, disease and/or condition, then such was aggravated and/or exacerbated as a proximate result of the occurrence made the basis of Claimants underlying lawsuit.

**XI.**

Claimants are also entitled to punitive damages because the aforementioned actions of Petitioners were grossly negligent and reckless. Petitioners' conduct was willful, wanton, arbitrary, and capricious. They acted with flagrant and malicious disregard of Claimants' health and safety and the health and safety of his co-workers. Petitioners failed to properly maintain and/or operate the Deepwater Horizon, operated the vessel in such a manner to save time and money without regard to safety, ignored warnings, failed to implement and enforce safety regulations, failed to avoid or mitigate the explosion, and failed to establish and enforce an appropriate response plan. Petitioners were subjectively aware of the extreme risk posed by the condition which caused Claimant injuries, but did nothing to rectify them. Petitioners' acts and omissions involved an extreme degree of risk considering the probability and magnitude of

potential harm to Claimants and to others. Petitioners had actual, subjective awareness of the risk, and consciously disregarded such risk. Moreover, Claimants may recover punitive damages under the general maritime law because of the Vessel's unseaworthiness following the United States Supreme Court's ruling in *Atlantic Sounding.*[5]  All of the conduct mentioned in the above paragraphs was within the knowledge and privity of Petitioners.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Claimants pray that this Answer and Claim be deemed good and sufficient, that the injunction and order of stay in place be lifted so that he may prosecute his claims against Petitioners and other parties in the venue of his choice, that after due proceedings, there be judgment denying the Complaint of Petitioners for exoneration from or limitation of liability, with all costs to be borne by such Petitioners. Claimants demand against Petitioners as follows: economic and compensatory damages; punitive damages, pre-judgment and post-judgment interest at the maximum rate allowable by law, attorney's fees and costs of litigation, and such other relief available under all applicable state and federal laws and any relief the Court deems just.

Alternatively, that Petitioners be required to deposit additional security in the minimum amount required by law for the full value of all vessels in the flotilla which were under common operational control and supervision and engaged in a common enterprise, and that said security be based upon an appraisal issued by a commissioner appointed by the Court, in default of which the Complaint be dismissed; and for such other relief which he may show himself entitled.

Respectfully submitted,

---

[5] *Atl. Sounding Co. v. Townsend,* 129 S. Ct. 2561, 2575 (2009).

13

## THE BUZBEE LAW FIRM

By: ___ */S/ Anthony G. Buzbee* _____

Anthony G. Buzbee
State Bar No. 24001820
S.D. Tex. I.D. No. 22679
J.P. Morgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909
www.txattorneys.com

### ATTORNEY FOR CLAIMANTS

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing THE BUZBEE LAW FIRM'S ANSWER TO COMPLAINT AND PETITION OF TRITON ASSET LEASING GMBH, ET AL FOR EXONERATION FROM LIMITATION OF LIABILITY AND CLAIM IN LIMITATION has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send notice of electronic filing in accordance with the procedures established in MDL 2179, on this 19th day of April, 2011.

_____ */S/ Anthony G. Buzbee* _____
Anthony G. Buzbee

14

Exhibit A

1. Acuteca, S.C.L                                                      *On behalf of vessel(s) and crew*
2. Agrupacion La Unica, S.S.S.                                         *On behalf of vessel(s) and crew*
3. Agrupacion La Unika, S.S.S.                                         *On behalf of vessel(s) and crew*
4. Agua Rebuelta, S.S.S.                                               *On behalf of vessel(s) and crew*
5. Aguayo                          J Merced
6. Aguilar Rivera                  Ampelio
7. Aguilar-Suarez                  Juan
8. Ah Caray I, S.C. de R.L.                                            *On behalf of vessel(s) and crew*
9. Ahumada                         Everardo                            *On behalf of vessel(s) and crew*
10. Alejandre                      Emeterio
11. Alimentos Marinos Bagdad, S.C. de R.L. M.I.                        *On behalf of vessel(s) and crew*
12. Allen                          Michael
13. Alma Jarocha, S.C. de R.L.                                         *On behalf of vessel(s) and crew*
14. Almeida Sanchez                Guillermo
15. Almejeros de Alvarado, S.C. de R.L.                                *On behalf of vessel(s) and crew*
16. Alvarado Garcia                Alfredo          I.
17. Arreaga                        Reynaldo
18. Arroyo Grande S.C. de R.L. de C.V.                                 *On behalf of vessel(s) and crew*
19. Atlizintla, S.C. de R.L.                                           *On behalf of vessel(s) and crew*
20. Baena                          Juan                                *On behalf of vessel(s) and crew*
21. Balderas                       Leonel                              *On behalf of vessel(s) and crew*
22. Ballato                        Emilio                              *On behalf of vessel(s) and crew*
23. Baltazar Quezada               Ernesto
24. Banda Cruz                     Feliciana
25. Barahona                       Julio                               *On behalf of vessel(s) and crew*
26. Barra de Boca Ciega, S.C. de R.L.                                  *On behalf of vessel(s) and crew*
27. Barra de Chiltepec, S.C.L. de C.V.                                 *On behalf of vessel(s) and crew*
28. Barra De Conshillal, S.C. de R.L.                                  *On behalf of vessel(s) and crew*
29. Barra de Corazones, S.C. de R.L.                                   *On behalf of vessel(s) and crew*
30. Barra de Montepio, S.C. de R.L.                                    *On behalf of vessel(s) and crew*
31. Barra de Santa Maria, S.C. de R.L.                                 *On behalf of vessel(s) and crew*
32. Barra Vieja, S.C. de R.L.                                          *On behalf of vessel(s) and crew*
33. Basurto                        Refugio                             *On behalf of vessel(s) and crew*
34. Bautista                       Alfredo                             *On behalf of vessel(s) and crew*
35. Beasley                        William          W    d/b/a BEDCO Outlet
36. Becerra Guevara                Leonardo
37. Becerra Hernandez              Jose
38. Bedolla Morales                Jose De Jesus
39. Bella Palizada, S.C. de R.L.                                       *On behalf of vessel(s) and crew*
40. Boca del Estero, S.C. de R.L.                                      *On behalf of vessel(s) and crew*
41. Bodega Aleo La Biga, R.L. de C.V.   Israel

42. Bonanza, S.C. de R.L. de C.V.                                   *On behalf of vessel(s) and crew*
43. Brisas De Gobernado Cruz, S.C. de R.L. de C.V.                  *On behalf of vessel(s) and crew*
44. Brooks Bait & Tackle, Inc.
45. Brown                              Fred
46. Caballero                          Pablo                        *On behalf of vessel(s) and crew*
47. Cabayuso                           Gustavo
48. Cabrera                            Andres                       *On behalf of vessel(s) and crew*
49. Caltzontzin                        Felipe
50. Caltzontzin Lopez                  Monica
51. Camacho                            Leonso
52. Camacho                            Rolando
53. Camara                             Heberto                      *On behalf of vessel(s) and crew*
54. Canal de la Puntilla, S.C. de R.L.                              *On behalf of vessel(s) and crew*
55. Candelario                         Francisco
56. Cangrejeros del Manglar, S.C. de R.L.                           *On behalf of vessel(s) and crew*
57. Cano                               Joaquin                      *On behalf of vessel(s) and crew*
58. Cano                               Jose                         *On behalf of vessel(s) and crew*
59. Cao                                Hien         Duc
60. Captain Billy Nobles Jr., Inc.                                  *On behalf of vessel(s) and crew*
61. Carreno Gonzales                   Bernardino
62. Carrillo                           Eduardo                      *On behalf of vessel(s) and crew*
63. Carrillo Huerta                    Ana
64. Carvajal, S.C. de R.L.                                          *On behalf of vessel(s) and crew*
65. Casados                            David                        *On behalf of vessel(s) and crew*
66. Casanova                           Rosa                         *On behalf of vessel(s) and crew*
67. Castaneda Aguilera                 Jose
68. Casteneda                          Luis                         *On behalf of vessel(s) and crew*
69. Castro Flores                      Flavio
70. Catana                             Jose                         *On behalf of vessel(s) and crew*
71. Catemaxca                          Raquel                       *On behalf of vessel(s) and crew*
72. Cazarin                            Daniel                       *On behalf of vessel(s) and crew*
73. Cepeda                             Daniel                       *On behalf of vessel(s) and crew*
74. Cepeda Rodriguez                   Juan                         *On behalf of vessel(s) and crew*
75. Charron                            Richard
76. Chavez                             Victor                       *On behalf of vessel(s) and crew*
77. Chicharrones  de Pescado Pa' La Raza S.C. de R.L. de C.V.
78. Ciudad y Puerto de Alvarado, S.C. de R.L.                       *On behalf of vessel(s) and crew*
79. Club Playero, S.C. de R.L.                                      *On behalf of vessel(s) and crew*
80. Cocal Dorado, S.C. de R.L.                                      *On behalf of vessel(s) and crew*
81. Cokteles Y Mariscos Las Culturas, S.C. de R.L.                  *On behalf of vessel(s) and crew*
82. Colonia Moreno, S.C. de R.L.                                    *On behalf of vessel(s) and crew*
83. Congelados Marinos, S.A. de C.V.                                *On behalf of vessel(s) and crew*
84. Coperativa Caudillos S.C. de R.L.                               *On behalf of vessel(s) and crew*

| | | | |
|---|---|---|---|
| 85. Cordova | Mabial | | *On behalf of vessel(s) and crew* |
| 86. Cortez | Oscar | | |
| 87. Cortez | Francisco | | |
| 88. Criollo | Alberto | | *On behalf of vessel(s) and crew* |
| 89. Cruz | Andres | | *On behalf of vessel(s) and crew* |
| 90. Cruz | Lucio | | *On behalf of vessel(s) and crew* |
| 91. Cruz | Luis | | *On behalf of vessel(s) and crew* |
| 92. Cuellar | Fabian | | *On behalf of vessel(s) and crew* |
| 93. Cuellar | Fernando | | *On behalf of vessel(s) and crew* |
| 94. Cummings | Brenda | | |
| 95. Cummings | Larry | | |
| 96. Dalton | Billy | | |
| 97. Dang | Hien | Van | |
| 98. De Dios | Elias | | *On behalf of vessel(s) and crew* |
| 99. De Jesus Vasquez | Jose | | |
| 100. De La Cruz | Agustin | | *On behalf of vessel(s) and crew* |
| 101. De La Cruz | Candelario | | *On behalf of vessel(s) and crew* |
| 102. De Labra | Francisco | | |
| 103. De Los Santos | Ortencia | | *On behalf of vessel(s) and crew* |
| 104. De Ribera de Sonteomapan, S.C.L. | | | *On behalf of vessel(s) and crew* |
| 105. De Salta Barraca, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 106. Decombocadura del Rio Soto la Marina, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 107. Decuir | Alfredo | | *On behalf of vessel(s) and crew* |
| 108. Decuir | Raul | | *On behalf of vessel(s) and crew* |
| 109. Delfines de Centla, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 110. Delgadillo Pina | Ana | | |
| 111. Delgado | Rosa | | *On behalf of vessel(s) and crew* |
| 112. Deras | Felipe | | |
| 113. Diaz | Carlos | | *On behalf of vessel(s) and crew* |
| 114. Diaz | Maribel | | *On behalf of vessel(s) and crew* |
| 115. Diaz Hernandez | Gaudencio | | |
| 116. Diaz Meza | Carlos | | |
| 117. Dimas | Pablo | | *On behalf of vessel(s) and crew* |
| 118. Dimas Dimas | Armando | | |
| 119. Dimas Moreira | Alejandra | | |
| 120. Dimas Olivares | Candelario | | |
| 121. Domingez Silvestre | Marco | | |
| 122. Dominguez | Roberto | | |
| 123. Donnelly | Owen | Gene | |
| 124. Duran Torres | Ernesto | | |
| 125. Eaves | Gerald | Earl | |
| 126. Echavarria | Alejandro | | *On behalf of vessel(s) and crew* |
| 127. Ed's Yacht Brokers and Sales, Inc. | | | *On behalf of vessel(s) and crew* |

| | | | |
|---|---|---|---|
| 128. Ejidal Teodoro Gonzalez Gaviro, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 129. Ejidatarios, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 130. Ejido Reventadero, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 131. El Chamizal, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 132. El Conde Silva, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 133. El Coral de Magallanes S.C. de R.L. de C.V. | | | *On behalf of vessel(s) and crew* |
| 134. El Deslave, C.L. de C.V. | | | *On behalf of vessel(s) and crew* |
| 135. El Emporio de Santana, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 136. El Jurel, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 137. El Mexal de Isla Aguada, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 138. El Obispo, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 139. El Pampano, S.C.L. de C.V. | | | *On behalf of vessel(s) and crew* |
| 140. El Pinzon, S.C. de R.L. de C.V. | | | *On behalf of vessel(s) and crew* |
| 141. El Robalo de Vicente Guerrero, S.C. de R.L. de C.V. | | | *On behalf of vessel(s) and crew* |
| 142. Encema de Los Pinos, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 143. Encenada de Alvarado, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 144. Equipos Marinos de Frontera, S.C.L. | | | *On behalf of vessel(s) and crew* |
| 145. Espuma Blanca, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 146. Estero del Rey, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 147. Fco J. Mujica, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 148. Ferramad Max, S.C. de R.L. de M.I. | | | *On behalf of vessel(s) and crew* |
| 149. Fidalgo | Juan Carlos | | *On behalf of vessel(s) and crew* |
| 150. Flores Acosta | David | | |
| 151. Francisco | Heriberta | | *On behalf of vessel(s) and crew* |
| 152. Gager | William | | *On behalf of vessel(s) and crew* |
| 153. Galaviz Rodriguez | Juan | | |
| 154. Galeno Fernandez | Pedro | | |
| 155. Galeno Fernandez | Jorge | | |
| 156. Galicia Castro | Cristobal | | |
| 157. Gallardo | Emilio | | *On behalf of vessel(s) and crew* |
| 158. Gallardo | Cruz | | *On behalf of vessel(s) and crew* |
| 159. Gallardo | Felipe | | *On behalf of vessel(s) and crew* |
| 160. Gallardo | Olga | | *On behalf of vessel(s) and crew* |
| 161. Gallegos Morales | Jorge | | |
| 162. Gallo Duran | Gustavo | | |
| 163. Garcia | Feliciano | | *On behalf of vessel(s) and crew* |
| 164. Garcia Castillo | Luis | | |
| 165. Garcia Salazar | Wendy | I. | |
| 166. Gastian | Dora | | d/b/a Gastian's Pier |
| 167. Generacion 95, S.C. de R.L. de C.V. | | | *On behalf of vessel(s) and crew* |
| 168. Gomez | Dionicio | | *On behalf of vessel(s) and crew* |
| 169. Gomez | Jose | | *On behalf of vessel(s) and crew* |
| 170. Gomez | Ringo | | *On behalf of vessel(s) and crew* |

| | | |
|---|---|---|
| 171. Gonzalez | Moises | |
| 172. Gonzalez | David | |
| 173. Gonzalez | Jose | On behalf of vessel(s) and crew |
| 174. Gonzalez | Lazaro | On behalf of vessel(s) and crew |
| 175. Gonzalez | Maria | On behalf of vessel(s) and crew |
| 176. Gonzalez Mar | Alexis | |
| 177. Gonzalez Robledo | Joel          L. | |
| 178. Gonzalez Sandoval | Guillermina | |
| 179. Gonzalez Zamudio | Silvia | On behalf of vessel(s) and crew |
| 180. Granados Martinez | Maria | |
| 181. Granados Martinez | Luz          M. | |
| 182. Granados Zavala | J Trinidad | |
| 183. Granados Zavala | Maria Consuelo | |
| 184. Grava, Jr | Duvilio | |
| 185. Grupo Medpa, S.C. de R.L. de M.I. | | On behalf of vessel(s) and crew |
| 186. Grupo Pesquero de Salinas, S.C. de R.L. | | On behalf of vessel(s) and crew |
| 187. Grupo Tenatsi, S.C. de R.L. | | On behalf of vessel(s) and crew |
| 188. Grupo Yosigamar, S.C. de R.L. de M.I. | | On behalf of vessel(s) and crew |
| 189. Guatzozon | David | On behalf of vessel(s) and crew |
| 190. Guerrero Del Rio | Agustin | |
| 191. Guerrero Del Rio | Verulo | |
| 192. Gutierrez | Noe | On behalf of vessel(s) and crew |
| 193. Guzman | Lilia | On behalf of vessel(s) and crew |
| 194. Guzman Alvarez | Rogelio | |
| 195. Guzman Alvarez | Samuel | |
| 196. Hernandez | Ray David | |
| 197. Hernandez | Hector          S. | |
| 198. Hernandez | Alejandro | On behalf of vessel(s) and crew |
| 199. Hernandez | Edith | On behalf of vessel(s) and crew |
| 200. Hernandez | Fernando | On behalf of vessel(s) and crew |
| 201. Hernandez | Roman | On behalf of vessel(s) and crew |
| 202. Hernandez Perales | Laura | |
| 203. Hernandez Santillan | Adolfo | |
| 204. Herrera | Maria | On behalf of vessel(s) and crew |
| 205. Hicks | Milan          E | |
| 206. Hicks | Lorne | |
| 207. Hua | Khoi | |
| 208. Hughes | Michael | |
| 209. Hutchins | Heather | |
| 210. Ipina | Alejandro | On behalf of vessel(s) and crew |
| 211. Isla de la Laguna Pajonal, S.C. de R.L. | | On behalf of vessel(s) and crew |
| 212. Isla del Carrizal, S.S.S. | | On behalf of vessel(s) and crew |
| 213. Isla del Chayote del Playon de Sanchez Magallanes , S.C. de R.L. de C.V. | | On behalf of vessel(s) and crew |

| | | | |
|---|---|---|---|
| 214. Islas | Sara | | On behalf of vessel(s) and crew |
| 215. Islas del Paquillo, S.C. de R.L. de C.V. | | | On behalf of vessel(s) and crew |
| 216. Islas Unidas, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 217. Jaime | Julianna | | On behalf of vessel(s) and crew |
| 218. Jimenez | Jose | | |
| 219. Juarez | Luis | | On behalf of vessel(s) and crew |
| 220. Kelley | Donald | Earl | |
| 221. La Bellota, S.C. de R.L. de C.V. | | | On behalf of vessel(s) and crew |
| 222. La Campanita, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 223. La Centella, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 224. La Chispa Roja S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 225. La Esperanza S.C. de R.L. de C.V. | | | On behalf of vessel(s) and crew |
| 226. La Espina, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 227. La Flor del Coco, S.C.L. | | | On behalf of vessel(s) and crew |
| 228. La Flota, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 229. La Gaviota de Frontera, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 230. La Gaviota de Jalapita, S.C.L. de C.V. | | | On behalf of vessel(s) and crew |
| 231. La Jaivita, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 232. La Laguna Cayuapan, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 233. La Malinche de Centla, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 234. La Marina, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 235. La Mujer Costena, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 236. La Nueva Fe, S.C. de. R.L. | | | On behalf of vessel(s) and crew |
| 237. La Nueva Ola, S.C. de R.L. de C.V. | | | On behalf of vessel(s) and crew |
| 238. La Palma Real, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 239. La Picuda, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 240. La Tabasquenita, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 241. La Trufa, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 242. La Virgen, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 243. La Virtud de Pescar S.C. de R.L. de C.V. | | | On behalf of vessel(s) and crew |
| 244. Laguna de Chila, S.C de R.L | | | On behalf of vessel(s) and crew |
| 245. Laguna de la Tortuga, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 246. Laguna de Morelas, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 247. Laguna de Pinolapa, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 248. Laguna de Popuyeca, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 249. Laguna de Tacosta, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 250. Laguna Y Puerto de Alvarado, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 251. Lagunas Unidas al Sistema, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 252. Las Ampolas, S.C.L. | | | On behalf of vessel(s) and crew |
| 253. Las Aneas, S.C.L. | | | On behalf of vessel(s) and crew |
| 254. Las Mujeres del Marisco, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 255. Las Porfias, S.A. de R.L. de C.V. | | | On behalf of vessel(s) and crew |
| 256. Le | Hien | Kim Thi | |

| | | | |
|---|---|---|---|
| 257. Le | Mai | Thi | |
| 258. Le | Nam | Van | |
| 259. Le | Phuong | Van | |
| 260. Le | Quyet | Van | |
| 261. Le | Suyen | Van | |
| 262. Le | Vui | | |
| 263. Leandro | David | | *On behalf of vessel(s) and crew* |
| 264. Lebrancheros de Sonteomapan S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 265. Liberacion de la Barra, S.S.S. | | | *On behalf of vessel(s) and crew* |
| 266. Libres de las Escolleras, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 267. Lockley | Georgia | | |
| 268. Lopez | Enrique | | *On behalf of vessel(s) and crew* |
| 269. Lopez | Jose | | *On behalf of vessel(s) and crew* |
| 270. Lopez | Miriam | | *On behalf of vessel(s) and crew* |
| 271. Lopez Aguilar | Carlos | | |
| 272. Lopez Calixto | Gladis Yanira | | |
| 273. Lopez Garcia | Eriberto | | |
| 274. Lorenzo | Antioco | | *On behalf of vessel(s) and crew* |
| 275. Los Cavesos del Bajio, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 276. Los Rayados de Magallanes, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 277. Lucero del Oriente, C.V. de R.L. | Antonio | | *On behalf of vessel(s) and crew* |
| 278. Ly | Ty | | |
| 279. Magana | Maria | | *On behalf of vessel(s) and crew* |
| 280. Manigua 2, S.C. de R.L. de C.V. | | | *On behalf of vessel(s) and crew* |
| 281. Mano de Leon, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 282. Manzanares Chavez | Faustino | | |
| 283. Maria Hatowecto, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 284. Marin | Daniel | M. | |
| 285. Marinero de San Pedro, S.C. de R.L. de C.V | | | *On behalf of vessel(s) and crew* |
| 286. Marquez | Carlos | | *On behalf of vessel(s) and crew* |
| 287. Martinez | Mario | M. | |
| 288. Martinez | Carlos | | |
| 289. Martinez Gonzalez | Catalina | | |
| 290. Martinez Guevara | Jose | | |
| 291. Martinez Hernandez | Eduardo | | |
| 292. Martinez Marraquin | Jorge | | |
| 293. Martinez Mendoza | Saul | | |
| 294. Matamoros, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 295. Mayarazago Alto, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 296. Mayo | Fernando | | *On behalf of vessel(s) and crew* |
| 297. McNeil | Oliver | | |
| 298. Medina Delgadillo | Luis | | |

| 299. Medina Delgadillo | Alejandro | | |
|---|---|---|---|
| 300. Medina Delgadillo | Jose | | |
| 301. Mejia Duran | Jesus | | On behalf of vessel(s) and crew |
| 302. Melancon | Jack | A | On behalf of vessel(s) and crew |
| 303. Melancon | Jack | | |
| 304. Melancon | Sheila | | |
| 305. Mendez | Eber | | On behalf of vessel(s) and crew |
| 306. Mendoza | Juan | | On behalf of vessel(s) and crew |
| 307. Meza | Aracely | | On behalf of vessel(s) and crew |
| 308. Meza Baron | Teresa | | |
| 309. Millender | Charles | Keith | |
| 310. Milsadel, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 311. Mina | Alejandro | | |
| 312. Morales | Juan | P. | |
| 313. Morales | Ysidro | | On behalf of vessel(s) and crew |
| 314. Morales | Javier | | |
| 315. Morales Centeno | Joaquin | | |
| 316. Moreira Rivas | Benjamin | | |
| 317. Moreira Cepeda | Joaquin | | |
| 318. Morgado | Alicia | | On behalf of vessel(s) and crew |
| 319. Mujeres del Cabezo de la Palangana, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 320. Mujeres Esperimentando, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 321. Mulala, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 322. Munoz Iniguez | Gustavo | | |
| 323. Munoz Iniguez | Fernando | | |
| 324. NA Zoo, S.C. de R.L. de C.V. | | | On behalf of vessel(s) and crew |
| 325. Newsome | Joshua | Roy | |
| 326. Nghiem | Tommy | Quoc | |
| 327. Ngo | Tai | Minh | |
| 328. Nguyen | An | Van | |
| 329. Nguyen | Binh | | |
| 330. Nguyen | Bon | Van | |
| 331. Nguyen | Catherine | Mai | |
| 332. Nguyen | Em | Be | |
| 333. Nguyen | Hien | Van | |
| 334. Nguyen | Hien | Van | |
| 335. Nguyen | Hung | T. | |
| 336. Nguyen | Jackie | Lun | |
| 337. Nguyen | Nam | Van | |
| 338. Nguyen | Ngoc-Trang | Thi | |
| 339. Nguyen | Ngoi | Be | |
| 340. Nguyen | Phuc | Du | |

| | | | |
|---|---|---|---|
| 341. Nguyen | Son | Truc | |
| 342. Nguyen | Tai | Anh | |
| 343. Nguyen | Tam | Thanh | |
| 344. Nguyen | Thanh | Van | |
| 345. Nguyen | Toan | Quang | |
| 346. Nguyen | Vu | Thi | |
| 347. Nguyen | Dinh | | |
| 348. Nguyen | John | | |
| 349. Nguyen | Sony | | |
| 350. Nguyen | Dinh | | |
| 351. Nguyen | Bill | Quang | |
| 352. Nguyen | Nhat | Van | |
| 353. Nueva Esperanza de Rodriguez, S.C. de R.S. | | | On behalf of vessel(s) and crew |
| 354. Nuevo Dolores, S.S.S. | | | On behalf of vessel(s) and crew |
| 355. Nuevos Pescadores de la Laguna, S.C. de R.L. de C.V. | | | On behalf of vessel(s) and crew |
| 356. Ochoa | Jose | | On behalf of vessel(s) and crew |
| 357. Olan | Genofanes | | On behalf of vessel(s) and crew |
| 358. Origuela | Maria | | On behalf of vessel(s) and crew |
| 359. Orta Limon | Juan | | |
| 360. Ortiz Amaro | Maria De Jesus | | |
| 361. Padilla Alfaro | Gerardo | | |
| 362. Padilla Meza | Jair | | |
| 363. Padron Castillo | Ignacio | | |
| 364. Padron Martinez | Sandra | | |
| 365. Page | Jennifer | | |
| 366. Panatlan, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 367. Parra | Irbin | | On behalf of vessel(s) and crew |
| 368. Paso de Salta Barranca, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 369. Paso Nacional, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 370. Pastrana de la Garza | Luis | | |
| 371. Pedrero | Miguel | | |
| 372. Perez | Miguel | | |
| 373. Perez | Efren | | |
| 374. Perez | Filiberto | | On behalf of vessel(s) and crew |
| 375. Perez | Martin | | On behalf of vessel(s) and crew |
| 376. Perez | Carmen | | On behalf of vessel(s) and crew |
| 377. Perez Chacon | Patricia | | |
| 378. Perez Mendez | Imelda | | |
| 379. Perez Tovar | Juan | | |
| 380. Pescaderia Rosita, S.C.L. de C.V. | | | On behalf of vessel(s) and crew |
| 381. Pescadores de Tampacas, S.C. de R.L. | | | On behalf of vessel(s) and crew |
| 382. Pescadores Autenticos de Las Chacas y Rivera, S.C. de R.L. | | | On behalf of vessel(s) and crew |

| | | |
|---|---|---|
| 383. Pescadores De Aquiles Serdan, S.C.L. de C.V. | | *On behalf of vessel(s) and crew* |
| 384. Pescadores de Gonzales Ortega, S.C. de R.L. | | *On behalf of vessel(s) and crew* |
| 385. Pescadores de Ilusion, S.C. de R.L. | | *On behalf of vessel(s) and crew* |
| 386. Pescadores de la Laguna Colorada, S.C. de R.L. | | *On behalf of vessel(s) and crew* |
| 387. Pescadores de Playa Boqueron, S.C. de R.L. C.V. | | *On behalf of vessel(s) and crew* |
| 388. Pescadores de Potrero Mota de Chavez, S.C. de R.L. | | *On behalf of vessel(s) and crew* |
| 389. Pescadores de Reventadero, S.C. de R.L. | | *On behalf of vessel(s) and crew* |
| 390. Pescadores de Rovirosa, S.C. de R.L. de C.V. | | *On behalf of vessel(s) and crew* |
| 391. Pescadores de Salinas, S.C.L. | | *On behalf of vessel(s) and crew* |
| 392. Pescadores de Tampalache, S.C. de R.L. | | *On behalf of vessel(s) and crew* |
| 393. Pescadores de Tampico, S.C. de R.L. De C.V. | | *On behalf of vessel(s) and crew* |
| 394. Pescadores del Golfo de Mexico, S.C. de R.L. | | *On behalf of vessel(s) and crew* |
| 395. Pescadores del Golfo de Mexico, S.C. de R.L. | | *On behalf of vessel(s) and crew* |
| 396. Pescadores del Puente, S.C. de R.L. de C.V. | | *On behalf of vessel(s) and crew* |
| 397. Pescadores del Tamcci, S.C. de R.L. | | *On behalf of vessel(s) and crew* |
| 398. Pescadores Riberenos De Jalapita, S.C.L. de C.V. | | *On behalf of vessel(s) and crew* |
| 399. Pescadores Unidos de Arbolillos S.C. de R.L. | | *On behalf of vessel(s) and crew* |
| 400. Pescadores Unidos de la Laguna Camaronera, S.C.L. | | *On behalf of vessel(s) and crew* |
| 401. Pescadores Unidos de La Trocha, S.C. de R.L. | | *On behalf of vessel(s) and crew* |
| 402. Pescadores Unidos de Panuco, S.C.L | | *On behalf of vessel(s) and crew* |
| 403. Pescados y Mariscos La Capilla, S.C. de R.L. M.I. | | *On behalf of vessel(s) and crew* |
| 404. Pham | Dung | |
| 405. Pina Acevedo | Gloria | |
| 406. Plan de Figueroa, S.C. de R.L. | | *On behalf of vessel(s) and crew* |
| 407. Playa Cangregeros, S.S.C. | | *On behalf of vessel(s) and crew* |
| 408. Playa Salinas, S.C. de R.L. | | *On behalf of vessel(s) and crew* |
| 409. Ponce Sanchez | Emmanuel | |
| 410. Productores del Gulfo, S.S.S. | | *On behalf of vessel(s) and crew* |
| 411. Puch | Santiago | *On behalf of vessel(s) and crew* |
| 412. Punta de Diamante, S.C.L. | | *On behalf of vessel(s) and crew* |
| 413. Punta de Piedra, S.C. de R.L. | | *On behalf of vessel(s) and crew* |
| 414. Punta del Salado, S.C. de R.L. | | *On behalf of vessel(s) and crew* |
| 415. Punta del Toro, S.C. de R. L. | | *On behalf of vessel(s) and crew* |
| 416. Punta El Buey, S.C. de R.L. | | *On behalf of vessel(s) and crew* |
| 417. Quick | Robert | |
| 418. Quick's Fanin Bayou Bait | | |
| 419. Raffield | Linda | |
| 420. Ramirez | Alejandro | |
| 421. Ramirez | Francisco | *On behalf of vessel(s) and crew* |
| 422. Ramon | Luis | *On behalf of vessel(s) and crew* |
| 423. Razo | Andrea | *On behalf of vessel(s) and crew* |
| 424. Razo | Jenny | *On behalf of vessel(s) and crew* |
| 425. Renovacion y Solidaridad, S.C. de R.L. de C.V. | | *On behalf of vessel(s) and crew* |

| | | | |
|---|---|---|---|
| 426. Revolucion Y Progreso, S.S.S. | | | *On behalf of vessel(s) and crew* |
| 427. Rey Jasur S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 428. Reyes | Carlos | | *On behalf of vessel(s) and crew* |
| 429. Reyes Alvarez | Rosalio | | |
| 430. Reyes Mujica | Jesus | | |
| 431. Reyna Castro | Miguel | | |
| 432. Reyna Torres | Enrique | | |
| 433. Ribera Alto Del Tigre, S.S.S. | | | *On behalf of vessel(s) and crew* |
| 434. Riberena Laguna Madre, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 435. Riberena Malecon de la Puntilla, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 436. Riberenos del Carmen, S.L.L. de C.V. | | | *On behalf of vessel(s) and crew* |
| 437. Rincon de las Flores, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 438. Robles Sainez | Jose | | |
| 439. Robles Sainez | Maria | | |
| 440. Robles Sainez | Rogelio | | |
| 441. Robles Sains | Juan | | |
| 442. Robles Sandoval | Angelica | | |
| 443. Rocha | Jose | | *On behalf of vessel(s) and crew* |
| 444. Rocha Zarate | Miguel | A. | |
| 445. Rodriguez | Jose | L. | |
| 446. Rodriguez | Ramona | | *On behalf of vessel(s) and crew* |
| 447. Rodriguez Mancera | Jose | | |
| 448. Rodriguez Meza | Eusebio | | |
| 449. Rodriguez Tovar | Adan | | |
| 450. Rodriguez Tovar | Luis | | |
| 451. Rojas | David | | *On behalf of vessel(s) and crew* |
| 452. Rojas Rodriguez | Abel | | |
| 453. Roman | Francisco | | *On behalf of vessel(s) and crew* |
| 454. Rosas | Damaso | | *On behalf of vessel(s) and crew* |
| 455. Rosas | Juan | | *On behalf of vessel(s) and crew* |
| 456. Roxanne de Centla, S.C. de R.L. de C.V | | | *On behalf of vessel(s) and crew* |
| 457. Salinas Luna | Jose | | |
| 458. Samano Chavez | Cindy Celeste | | |
| 459. San Fernando, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 460. San Francisco, R.L. de C.V. | | | *On behalf of vessel(s) and crew* |
| 461. San Ramon, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 462. Sanchez | Gabriel | | |
| 463. Sanchez | Lorena | | |
| 464. Sanchez | Vicente | | |
| 465. Sanchez | Ernesto | | *On behalf of vessel(s) and crew* |
| 466. Sanchez | Joel | | *On behalf of vessel(s) and crew* |
| 467. Sanchez Orozco | Luis Alberto | | |
| 468. Sanchez-Aguilar | Quintin | | |

| | | | |
|---|---|---|---|
| 469. Santiago | Leoncio | | *On behalf of vessel(s) and crew* |
| 470. Sapp | Paul | C | |
| 471. Schoellas | Roland | | |
| 472. Seno los Platanos, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 473. Sepulveda Hernandez | David | | |
| 474. Sequera | Valentin | | *On behalf of vessel(s) and crew* |
| 475. Silva Olivares | J Carmen | | |
| 476. Skipper | Harold | | |
| 477. Solano | Miguel | | |
| 478. Solis Aldape | Hector | | |
| 479. Solis Aldape | Alejandro | | |
| 480. Solis Munoz | Justino | | |
| 481. Stheicy, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 482. Tagano | Manuel | | |
| 483. Tamiahua, S.C. de R.L. de C.V. | | | *On behalf of vessel(s) and crew* |
| 484. Tanchicuin Boca, S.C. de R.L. de C.V | | | *On behalf of vessel(s) and crew* |
| 485. Tatanan, S.C. de R.L. de C.V. | | | *On behalf of vessel(s) and crew* |
| 486. Tecomate S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 487. Tecun Chimin | Alberto | | |
| 488. Toral | Guillermina | | *On behalf of vessel(s) and crew* |
| 489. Torres | Alicia | | |
| 490. Torres Tejeda | Alberto | | |
| 491. Torres Tejeda | Jose | | |
| 492. Torrez | Alicia | | *On behalf of vessel(s) and crew* |
| 493. Torruco | Lorente | | *On behalf of vessel(s) and crew* |
| 494. Tovar Gamez | Jose | | |
| 495. Tovar Gamez | Jorge | | |
| 496. Tran | Ban | Van | |
| 497. Tran | Cong | Dinh | |
| 498. Tran | Khanh | Van | |
| 499. Underwood | Richard | | |
| 500. Unica Regional de Pescadores De Villa Cuauhtemoc, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 501. Unidos de Matamoros, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 502. Unidos en Solidaridad, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 503. Urbina | David | | |
| 504. Urbina Jr. | David | | |
| 505. Uresti Jr | Ernesto | | |
| 506. Urvina Rosas | Evelia | | |
| 507. Vallejo | Jose | | *On behalf of vessel(s) and crew* |
| 508. Vanesita Marinera, S.C. de R.L. de C.V. | | | *On behalf of vessel(s) and crew* |
| 509. Vargas | Marco | | *On behalf of vessel(s) and crew* |
| 510. Vargas Granados | Humberto | | |
| 511. Vargas Vargas | Mario | | |

| | | | |
|---|---|---|---|
| 512. Vazquez | Javier | | *On behalf of vessel(s) and crew* |
| 513. Vega Cercada y Alto del Hobo, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 514. Vicente | Damaso | | *On behalf of vessel(s) and crew* |
| 515. Vicente | George | | *On behalf of vessel(s) and crew* |
| 516. Victoria del Pescador, S.C. de R.L. de C.V | | | *On behalf of vessel(s) and crew* |
| 517. Villa del Mar, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 518. Villalon Flores | Jose | | |
| 519. Villalon Flores | Juan | M. | |
| 520. Villanueba Nunez | Jose | | |
| 521. Villanueva Torres | Manuel | | |
| 522. Villareal | Rodrigo | | |
| 523. Villareal Carillo | Mercedes | | *On behalf of vessel(s) and crew* |
| 524. Vinson | Ronald | | |
| 525. Voluntad y Trabajo, S.C. de R.L. | | | *On behalf of vessel(s) and crew* |
| 526. Warner | Jacquelyn | | |
| 527. Weidner | Richard | V | |
| 528. WETSU Seafood | | | *On behalf of vessel(s) and crew* |
| 529. Wilson | Tracy | | |
| 530. Wilson Gallegos | Teodoro | | *On behalf of vessel(s) and crew* |
| 531. Winkel | Kris | | |
| 532. Zamudio Cruz | Emeterio | | *On behalf of vessel(s) and crew* |
| 533. Zamudio Cruz | Isidoro | | *On behalf of vessel(s) and crew* |
| 534. Zamudio Palacios | Sergio | | *On behalf of vessel(s) and crew* |
| 535. Zuniga Paz | Angel | | *On behalf of vessel(s) and crew* |
| 536. 16 de Septiembre, S.C. de R.L. de C.V. | | | *On behalf of vessel(s) and crew* |
| 537. 20 De Abril Del Poblado Ignacio Zaragoza, S.C. de R.L. de C.V. | | | *On behalf of vessel(s) and crew* |
| 538. 21 de Marzo, S.C.L. | | | *On behalf of vessel(s) and crew* |
| 539. Amescua | Salvador | | |

# Exhibit B

1.  Chance        Norris        *d/b/a* Sandals Beach Service

# Exhibit C

| First | Middle | Last |
|-------|--------|------|
| 1. Hien | Duc | Cao |
| 2. Michael | | Chatman |
| 3. Kevin | | Deason |
| 4. Hao | Phi | Do |
| 5. Shelton | | Haywood |
| 6. Chukuma | | Holmes |
| 7. Gregory | | Jordan |
| 8. Dinh | Van | Le |
| 9. Phuong | Van | Le |
| 10. Quyet | Van | Le |
| 11. Mai | Thi | Le |
| 12. Hien | Kim Thi | Le |
| 13. Jimmy | | Le |
| 14. David | | Litzinger |
| 15. Alano | | Lopez |
| 16. John | | Morris |
| 17. Tommy | Quoc | Nghiem |
| 18. Bon | Van | Nguyen |
| 19. Tam | Thanh | Nguyen |
| 20. Tai | Anh | Nguyen |
| 21. Vu | Thi | Nguyen |
| 22. Catherine | Mai | Nguyen |
| 23. Toan | Quang | Nguyen |
| 24. Em | Be | Nguyen |
| 25. Sony | | Nguyen |
| 26. Binh | | Nguyen |
| 27. Crnest | | Palfrey |
| 28. Chinh | Van | Pham |
| 29. Glenn | Paul | Rocher Jr. |
| 30. David | | Thomas |
| 31. Nam | Van | Tran |
| 32. Khanh | Van | Tran |
| 33. Scott | Van | Tran |
| 34. Verne | | Ussery |
| 35. Sac | Van | Vu |
| 36. Son | T. | Vu |
| 37. Trung | T. | Vu |
| 38. Tabishia | | Williams |

E

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION: J |
| | * | |
| | * | JUDGE BARBIER |
| | * | |
| This Document Applies to: | * | |
| All Cases (including 10-2771) | * | MAG. JUDGE SHUSHAN |
| | * | |

## ORDER AND REASONS

### [As to the Motion to Establish Account and Reserve for Litigation Expenses (Rec. Doc. 4507)]

The Plaintiffs' Steering Committee ("PSC") has filed a Motion to Establish Account and Reserve for Litigation Expenses, seeking the creation of a common benefit "hold-back" fund. Rec. Doc. 4507. As requested by the PSC, the Defendants who are parties to this Multidistrict Litigation ("MDL") would be required upon settlement of any claimants' case, to hold-back and pay into a special common benefit account within the registry of the Court, a sum equivalent to 6% of the gross settlement amount in the case of private claimants. In the case of state or local governmental claimants, the hold-back would be 4% of the gross settlement. As explained by the PSC in its motion, such an order by the Court would not set the amounts of or award any common benefit fees or expenses, but rather simply establish a fund from which common benefit fees, if any, might later be disbursed. Such common benefit funds are often used by Courts in the MDL context where the Court appoints a Plaintiffs Steering Committee and other lead or liaison plaintiff counsel to

1

organize and spearhead the litigation on behalf of thousands of claimants and hundreds

of attorneys. *See In re Air Crash Disaster at Florida Everglades on Dec. 29, 1972*, 549

F.2d 1006, 1017-18 (5th Cir. 1977); *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128-30

(2d Cir. 2010) (Kaplan, J., concurring); *In re Genetically Modified Rice Litig.*, No. 4:06-md-

1811, 2010 WL 716190 at *4 & n.2 (E.D. Mo. Feb. 24, 2010); Fed. Judicial Ctr., *Manual for

Complex Litigation, Fourth* §§ 14.215, 20.312 (2004).

The Louisiana Attorney General has objected to the creation of a hold-back account

insofar as it applies to the State of Louisiana.  Louisiana is one of only two Gulf Coast

states that have filed claims in this MDL, the other being Alabama.  Notably, the Attorney

General for the State of Alabama long ago reached agreement with the PSC to work

cooperatively to further their joint or aligned interests.  Largely for this reason, the Court

appointed Alabama Attorney General Luther Strange as Coordinating Counsel for the Gulf

Coast States.  The Court has on multiple occasions encouraged the State of Louisiana to

cooperate with the PSC and the State of Alabama insofar as their interests are aligned

versus the Defendants in this complex MDL.  Rather than cooperate or attempt to work

collaboratively, the State of Louisiana, through its retained private counsel, has instead

often obstructed and frustrated  the progress of the litigation.

Recently, after it became clear that the State of Louisiana was unable to comply with

several orders of this Court, the PSC reached out and offered its technical assistance to

assist the State with its ESI production obligations.  Notably, it apparently required the

intervention of the Governor of Louisiana for this to occur.  In fact, the Governor's office and

the PSC have reached an agreement to work collaboratively to pursue their common

interests. *See* State of La., Off. of the Governor, Mot. to File Mem. in Supp., Rec. Doc.

4916.

The PSC's motion sets forth in great detail the tremendous amount of work, and the large investment of money that the PSC has advanced since the creation of this MDL in August 2010.[1] There can be no question that the PSC has taken seriously its fiduciary obligations in the best interests of all claimants, both private and governmental.

The Court does not at this time decide whether to award common benefit fees or expenses to the PSC. Those matters are reserved for another day. But, it is necessary to establish a mechanism to create a fund that could potentially be available to pay such fees and expenses if and when deemed appropriate. Before any such awards are made, there will be adequate due process given, with notice and opportunity to be heard on issues relating to any request for disbursements from the common benefit fund. As the PSC's motion points out, there are several possible outcomes in this case under which the hold-back fund will either be reduced, or possibly totally refunded to those who are required to contribute.

The Governor of Louisiana has filed a response to the PSC motion, stating that he has no objection to the requested 4% hold-back, as long as certain categories of recovery by the State are exempted therefrom. The PSC has advised the Court that it agrees with the Governor's position, and has submitted a revised proposed Order. The Alabama Attorney General has also advised that he has no objection to the proposed hold-back. For

---

[1] On November 7, 2011, the PSC reported: "In all, 340 lawyers from ninety different law firms have invested over 230,000 hours and contributed over $11.54 million in out-of-pocket held and shared expenses for the common benefit of claimants and litigants . . . In addition, the PSC members and other Common Benefit Work Group Members and Coordinators have incurred approximately $1.5 million in unpaid expenses, which are still being processed. At the same time, PSC members and other Common Benefit Attorneys have contributed and additional $1.8 million to a joint account for payment of further shared expenses, as incurred." PSC's Memo. in Supp. p. 9 & n.10, Rec. Doc. 4507-1 at 12 & n.10.

these reasons, the Court will issue an Order requiring a 4% hold-back contribution by the States of Louisiana and Alabama, with the exceptions as noted and requested by the Governor of Louisiana.[2]

Turning to other issues, some parties argue that claims which are settled through the Gulf Coast Claims Facility ("GCCF") should not be subject to the hold-back.  *See, e.g.*, Rec. Doc. 4682.  They note that the Oil Pollution Act of 1990 ("OPA") required BP to establish a procedure for receiving and settling claims, 33 U.S.C. § 2714, and further required claimants to present their claims to BP before proceeding in court,  33 U.S.C. § 2713.  Thus, it is argued that settlements produced via the GCCF  are not the result of any common benefit work.

The PSC has strongly advocated on behalf of persons submitting claims to the GCCF, continuing to apply public and private pressure to improve the GCCF claims handling operations.  For example, the PSC has actively lobbied and argued for  increased supervision and monitoring of the GCCF and Kenneth Feinberg/Feinberg Rozen, LLP. These efforts have met with at least partial success.

For instance, on February 2, 2011 the Court granted the PSC's motion (in part) and ordered the GCCF and BP to:

---

[2] The Louisiana Attorney General objects to what he characterizes as a 4% "contingent" fee, which he argues violates Louisiana's state sovereignty.  This argument is without merit.  The Court by its Order is not assessing any fees, much less a contingent fee.   To repeat, the 4% is only an interim hold-back contribution to a fund, from which fees might potentially be disbursed.  To accept the Attorney General's argument would mean that the State of Louisiana would be entitled to essentially a free ride despite any efforts of the PSC which serve to advance the State's claims.  The Court further notes that the Attorney General has apparently no qualms about paying substantial legal fees to multiple lawyers from five different outside law firms who are representing him in this MDL.  In contrast, the Alabama Attorney General is representing his State's interests solely with in-house attorneys in collaboration with the PSC.

(1) Refrain from contacting directly any claimant that they know or reasonably should know is represented by counsel, whether or not said claimant has filed a lawsuit or formal claim;

(2) Refrain from referring to the GCCF, Ken Feinberg, or Feinberg Rozen, LLP (or their representatives), as "neutral" or completely "independent" from BP. It should be clearly disclosed in all communications, whether written or oral, that said parties are acting for and on behalf of BP in fulfilling its statutory obligations as the "responsible party" under the Oil Pollution Act of 1990.

(3) Begin any communication with a putative class member with the statement that the individual has a right to consult with an attorney of his/her own choosing prior to accepting any settlement or signing a release of legal rights.

(4) Refrain from giving or purporting to give legal advice to unrepresented claimants, including advising that claimants should not hire a lawyer.

(5) Fully disclose to claimants their options under OPA if they do not accept a final
payment, including filing a claim in the pending MDL 2179 litigation.

(6) Advise claimants that the "pro bono" attorneys and "community representatives"
retained to assist GCCF claimants are being compensated directly or indirectly by BP.

Rec. Doc. 1098 at 14.

Early on, the PSC successfully advocated on behalf of Vietnamese and other non-English speaking claimants, and convinced the GCCF to employ translated forms, instructions, etc. The PSC also arranged to make translators available to claimants. The PSC has advocated for a full and transparent audit of the GCCF and its claims handling practices, and together with the U.S. Department of Justice, has persuaded Mr. Feinberg to agree to such an audit which is now in progress. The PSC has advocated, again with some success, for the GCCF to employ a more liberal causation standard in evaluating claims and has advanced similar causation arguments in this MDL proceeding. *See* Order

5

of Aug. 26, 2011, Rec. Doc. 3830 at 32-33. The PSC has successfully argued for the application of general maritime law and the possibility of punitive damages. *Id.* at 18-27. Although the GCCF does not pay punitive damages, the PSC may be able to show that this finding enhances the settlement value of compensatory claims.

Considering the unique circumstances of this case, it would be unfair to allow parties to benefit from these activities of the PSC, but avoid contributing to the common benefit fund simply because they are able to settle directly with the GCCF and avoid filing a claim in the MDL. Other parties have filed lawsuits or claims in this MDL, but then withdraw their claims once they have settled with the GCCF. Again, such parties have likely benefited from all of the common benefit work performed by the PSC.

A related argument concerns whether this Court has subject matter jurisdiction to order the hold-back in (1) cases that were filed in state court, removed to this Court (or removed to another federal court, then transferred to this Court), and have pending motions to remand, and (2) cases filed in state courts that were not removed. *See, e.g.,* Rec. Doc. 4657.

As to the first category of cases, the Court agrees with the concurring opinion in *In re Zyprexa Products Liability Litigation*, 594 F.3d 113 (2d Cir. 2010). In that case, the district court imposed attorney compensation protocols, including the creation of a common benefit fund, on a law firm that had sixty-one pending motions to remand. The law firm petitioned for a writ of mandamus to set aside the district court's decision. While the court of appeals simply denied the writ of mandamus,[3] the concurring opinion—with which the

---

[3] "[The law firm] has given us no basis in fact or in law on which we might conclude that the district court usurped its power or clearly abused its discretion." *Id.* at 118-19.

majority was "in sympathy," *id.* at 119—expressly approved of the district court's decision.

The concurring judge explained:

> While [a district court] must [determine whether it has subject matter jurisdiction] before it reaches the merits of the case before it, it is empowered to issue non-dispositive orders between the filing of the action and its ultimate determination on the merits.
>
> . . .
>
> Thus, a district court's order that is "collateral to the merits" may be upheld despite a later conclusion that the court lacked subject matter jurisdiction over the litigation.
>
> In this case, the set aside order simply imposed an assessment in order to create a fund that could be used to compensate attorneys who demonstrate that their efforts conferred a benefit on *Zyprexa* plaintiffs generally. It is even less related to the ultimate merits than orders awarding attorney's fees, which are collateral matters over which a court retains jurisdiction even if it ultimately is determined to lack subject matter jurisdiction. It does not preclude the [petitioner] from challenging any proposed distribution of funds on the ground that they did not benefit from the efforts of counsel to whom a distribution might be made. At least in these circumstances, the set aside order was collateral to the merits and well within the district court's power.
>
> The district court's determination to defer consideration of the jurisdictional challenges also was comfortably within the bounds of its discretion. While it usually is advisable for district courts to rule on any challenge to subject matter jurisdiction early in a lawsuit, district courts have broad scope to manage their own dockets in light of considerations of "economy of time and effort for itself, for counsel, and for litigants." The impact of such considerations in this case, and in some other MDL and mass tort cases, often may suggest a different course.
>
> Alleged mass torts, as the term implies, spawn masses of litigation. Plaintiffs understandably sue in *fora* that they regard as convenient or likely to be favorable including, in many instances, state courts. Indeed, some frame their complaints in ways that raise issues concerning removability. Defendants, moved by similar considerations, frequently remove many of these cases to federal courts. These tactical steps in turn often provoke large numbers of remand motions, as occurred in this MDL. Indeed, [the petitioner] alone has filed motions to remand in over 50 of its *Zyprexa* cases.

7

. . .

> A district judge managing such a complex situation reasonably may conclude that the court's time, especially early in the litigation, is better spent on activities other than deciding scores or hundreds of individual remand motions. . . . Deciding each motion prior to addressing other issues common to all or most cases therefore could require a significant expenditure of judicial time and resources, derailing the progress of the litigation as a whole. Delays of this nature could well frustrate the purpose of MDLs, which is "to promote just and efficient conduct" of actions involving common questions of fact.

> While every case turns on its own facts, I cannot say that the district court's decision to give priority to moving thousands of *Zyprexa* cases towards settlement or other disposition over focusing promptly on the hundreds of pending remand motions was an improvident exercise of the broad discretion that inheres in its docket management function.

*Id.* at 126-28 (Kaplan, J., concurring) (footnotes and citations omitted). The Court agrees with Judge Kaplan's analysis. Accordingly, the hold-back will apply to those cases with pending motions to remand.

As to the second category of cases, those before state courts, the district court in *In re Genetically Modified Rice Litigation* noted that requiring all lawyers—including those with cases in state courts—who benefit from the work of appointed counsel to contribute to a common benefit fund avoids unjust enrichment and therefore is in the interest of justice, but ultimately declined to do so with respect to state cases because it found it lacked subject matter jurisdiction. No. 4:06-md-1811, 2010 WL 716190 at *4-5 (E.D. Mo. Feb. 24, 2010) (citing *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-I*, 953 F.2d 162 (4th Cir. 1992); *Hartland v. Alaska Airlines*, 544 F.2d 992 (9th Cir. 1976)). However, in *In re Latex Gloves Products Liability Litigation*, the district court required an attorney who had cases before both in the federal MDL court and state courts to contribute to a reserve account a portion of settlement proceeds in order to gain access to discovery materials

8

held in a depository. No. 1148, 2003 U.S. Dist. LEXIS 18118 (E.D. Pa. Sept. 5, 2003). The

court explained,

> [The Case Management Order] is restricted to plaintiffs who have access to
> the discovery materials in the depository. Like movant, most plaintiff's
> counsel represent state court as well as federal court plaintiffs. Permitting
> [counsel] to use discovery information in their state cases without charge
> would produce an anomalous and undesirable predicament. As the Special
> Master noted, the [Case Management Order] attempts to avoid "imposing
> upon any counsel, including Mr. Benjamin, who has cases pending in both
> state and federal court, the dubious burden of utilizing PSC's work product
> exclusively in federal court cases and not in the state court litigation."

*Id.* at *5; *see also* Case Mgmt. Order No. 17 ¶ 3(f)(3), *In re Fosamax Prods. Liab. Lit.*, No.

1:06-md-1786 (S.D.N.Y. Apr. 28, 2011), ECF No. 1012 ("any plaintiff's counsel with cases

not in the MDL who utilizes any aspect of the MDL common benefit work product, or who

participates in a PSC-coordinated resolution, and who has not signed an Assessment

Option agreement, shall be subject to [a 9% hold-back assessment.]"). On this issue, the

Federal Judicial Center has written,

> Courts may direct contributions to be made by defendants, or by plaintiffs'
> counsel out of individual settlement payments received. Fees may not be
> imposed by a transferee judge on attorneys **with no cases in the MDL and
> who do not use federal discovery material.**

Fed. Judicial Ctr., *Managing Multidistrict Litigation in Products Liability Cases, A Pocket*

*Guide for Transferee Judges* 14-15 (2011) (emphasis added).

Accordingly, the hold-back requirement will not apply to state-court cases wherein

plaintiff's counsel has or had no other cases in this MDL and who have not participated in

or had access to the discovery conducted in this MDL.

In accordance with the above,

IT IS ORDERED that Defendants shall withhold and deposit an amount equivalent to four percent (4%) of the gross monetary settlements, monetary judgments or other monetary payments made on or after November 7, 2011, by or on behalf of one or more Defendants to the State of Alabama or the State of Louisiana, or to any of their local governmental entities, arising out of the Macondo / *Deepwater Horizon* disaster,[4] into a court-supervised escrow account, in order to establish a fund from which common benefit litigation fees and expenses may be paid, if and as awarded by the Court, at an appropriate time, pursuant to procedures to be determined by future order of the Court. No amount will be held back or "reserved" from State of Alabama or State of Louisiana recoveries that are non-monetary in nature. Nor will any amount be held back or reserved from payments to a State directly from a Responsible Party to reimburse the State for ongoing response costs, increased agency costs related to response, or costs incurred through participation in the NRDA process.

IT IS FURTHER ORDERED that Defendants, or any agent or representative acting on a Defendant's behalf, shall withhold and deposit an amount equivalent to six percent (6%) of the gross monetary settlements, judgments or other payments made on or after November 7, 2011, by or on behalf of one or more Defendants to any other plaintiff,

_____

[4] The requirement to deposit "an amount equivalent to" the designated percentage is intended to afford the parties flexibility in settlement negotiation. Presumably the plaintiffs will attempt to negotiate settlement with one or more Defendants whereby the defendant(s) might agree to pay common benefit fees (and/or other attorneys' fees) *over and above* the settlement corpus, as part of the terms of the negotiated settlement. In the event, however, that the defendant(s) in question is (are) not willing to voluntarily fund the reserve over and above the settlement amount, the reserve (absent a final judgment or other order requiring Defendants to pay some or all attorneys' fees) would be reserved or "held back" out of the monetary judgment, monetary settlement or other monetary payment to the plaintiff, pending future action by the Court. While Plaintiffs may reserve the right to seek common benefit and/or other attorneys' fees under some potentially applicable fee-shifting provision, nothing in *this* Order would *require* a defendant to pay the plaintiff's common benefit and/or other attorneys' fees.

putative class member or other claimant, arising out of the Macondo / *Deepwater Horizon* disaster, (with the exception of settlements, judgments or other payments to the United States), into a court-supervised escrow account, in order to establish a fund from which common benefit litigation fees and expenses may be paid, if and as awarded by the Court, at an appropriate time, pursuant to procedures to be determined by future order of the Court.[5]   Specifically, this hold back requirement applies to all actions filed in or removed to federal court that have been or become a part of the MDL, whether or not a motion to remand has been filed, claimants who settle directly with the Gulf Coast Claims Facility, or state court plaintiffs represented by counsel who have participated in or had access to the discovery conducted in this MDL.  Exempt from this hold back requirement are state court counsel who have or had no cases in this MDL and who have never had access to any of the discovery undertaken in the MDL.  Nothing in this Order is intended to apply to judgments, settlements or other payments between or among BP, Transocean, Cameron, Halliburton, Weatherford, M-I, Anadarko, MOEX, and/or other Defendants, or any of their insurers.

Defendants shall tender such deposits to the Clerk of Court, 500 Poydras Street, Room C-151, New Orleans, Louisiana 70130, for deposit into the MDL No. 2179 Account and Reserve for Common Benefit Litigation Expenses ("MDL No. 2179 Reserve Account").

All deposits to the MDL No. 2179 Reserve Account shall be accompanied by information identifying the party and attorney making the deposit;  the Defendant on whose

---

[5]  In the event a Defendant does not agree to pay an amount equivalent to the hold-back percentage over and above the settlement corpus, *see supra* note 4, the Court intends that, as to any claimant represented by counsel, the hold-back shall be deducted from the attorney's contingent fee, rather than the client's portion of the recovery.

behalf the payment is being made;  the gross amount of the settlement, judgment or other payment;  and the plaintiff, claimant or putative class member to whom the settlement, judgment or other payment was made.

Such information shall be kept confidential, and access to such information shall be limited in accordance with the procedures set forth under Pre-Trial Order No. 9; accordingly, Phil Garrett CPA shall track such information and prepare periodic reports to Court and Plaintiff Co-Liaison.  Any further disclosure of such information shall require an order from this Court.

No party or attorney shall have any individual right to any of the deposits made into or funds maintained in this Court-supervised account; nor will such funds constitute the separate property of any party or attorney or be subject to garnishment or attachment for the debts of any party or attorney; nor shall such funds be allocated, disbursed or distributed except as provided by further order of this Court.

Any questions regarding the filing procedures with the Clerk of Court should be direct to Kim Lange, Financial, Clerk of Court, 504-589-7786, kim_lange@laed.uscourts.gov. Questions regarding the substance of any such deposits shall be directed to Philip Garrett, CPA, Garrett and Company CPA's, 117 Fairgrounds Boulevard, Bush, Louisiana 70431, 985-635-1500, pgarrett@garrettco.com.

SIGNED at New Orleans, Louisiana, this 28th day of December, 2011.

United States District Judge

12

F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig | * | MDL No. 2179 |
| "Deepwater Horizon" in the Gulf | * | |
| of Mexico, on April 20, 2010 | * | SECTION: J |
| | * | |
| | * | JUDGE BARBIER |
| This Document Applies to: | * | |
| *All Cases* | * | MAG. JUDGE SHUSHAN |
| | * | |

**ORDER**

**[Amending the Court's previous Order of December 28, 2011, establishing an account and reserve (Rec. Doc. 5022)]**

In a letter to the Court dated January 3, 2012, the Gulf Coast Claims Fund ("GCCF") has expressed certain concerns over the Court's Order of December 28, 2011 (Rec. Doc. 5022), which established a "common benefit" reserve account and requires defendants and their agents to hold back 6% of settlements, including those made through the GCCF. In response to the GCCF's concerns, the Court **CLARIFIES AND AMENDS** its previous Order insofar as it applies to payments or settlements made by the GCCF:

1.    The 6% hold-back shall be applied to all prospective payments made to all claimants who were not issued a payment determination letter from the GCCF as of December 30, 2011.

2.    The 6% hold-back does <u>not</u> apply to settlement payments (interim or final) made on or before December 30, 2011, <u>nor</u> does the hold-back apply to settlement offers contained within payment determination letters from the GCCF which issued on or before December 30, 2011.

3.      Where the GCCF withholds a payment (or portion of a payment) pursuant to legally

enforceable liens or writs of garnishment, the 6% hold-back shall only apply to that

portion of the settlement not subject to the lien or writ of garnishment (i.e., the "net"

amount after the deduction of the lien or garnishment).

New Orleans, Louisiana this 4th day of January, 2012.

UNITED STATES DISTRICT JUDGE

**G**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In re: Oil Spill by the Oil Rig        MDL No. 2179
    "Deepwater Horizon" in the Gulf
    of Mexico, on April 20, 2010        SECTION J

Applies to: *All Cases*            JUDGE BARBIER

                                  MAGISTRATE JUDGE SHUSHAN

## ORDER

Before the Court is the Plaintiffs' Steering Committee's (PSC) **Motion for Court Approval of Proposed Notice and Reply (Rec. Docs. 1126 and 1313)**, as well as responses from Limitation Petitioners Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Drilling Inc., and Transocean Deepwater, Inc. ("Transocean") **(Rec. Doc. 1279)**, from Defendant Cameron International Corporation ("Cameron") **(Rec. Doc. 1281)**, from Defendant BP Exploration and Production, Inc. and BP America Production Company ("BP") **(Rec. Doc. 1291)**, and from other various plaintiffs **(Rec. Docs. 1274, 1280, and 1304)**.

Following the April 20, 2010 explosion, fire and capsizing of the Deepwater Horizon mobile drilling vessel, Transocean as the owner of the vessel filed a Petition for Limitation of Liability seeking to limit its liability to the value of the vessel following the casualty. Before the Limitation Action was transferred to this Court, the usual type of notice was approved and published pursuant to Rule F(4) of the Supplemental Rules for Admiralty or Maritime Claims. The monition date (deadline for the filing of claims in the limitation) was originally set for November 15, 2010. Subsequently, at the request of the parties, this Court extended the monition date to April 20, 2011, or one calendar year following the casualty.

The PSC has moved the Court to allow additional notice to be published in order to reach the largest possible number of potential claimants and to give them clear notice of the impending

deadline. The PSC is concerned that the previous notice was not in "plain English" and not designed to reach a broad audience due to being published only in the legal notices section of various daily newspapers in the region. The Court shares these concerns and asked the parties to confer with respect to the form and content of the proposed notice.

The parties met on February 18, 2011 and modified the form of the proposed notice and BP suggested further changes on February 21, 2011, which were accepted by the PSC and Transocean. Transocean has now withdrawn any objection to the PSC's motion. BP maintains its position that no additional notice is necessary, but withdraws its objection as to form of the proposed notice. Cameron maintains its objection to notice and form.

Having reviewed the contents of the proposed notice and the arguments of the parties, the Court finds that further notice to potential claimants should be given, pursuant to Rule F(4). Accordingly,

**IT IS ORDERED** that the Plaintiffs' Steering Committee's **Motion for Court Approval of Proposed Notice (Rec. Doc. 1126)** is hereby **GRANTED** and notice may be disseminated using the content contained in the exhibits attached to this Order. The content of the website listed on the legal notice, www.OilSpillCourtCase.com, and the telephone script for the dedicated toll-free number, 1-877-497-5926, shall be submitted in advance for approval by the Court.

New Orleans, Louisiana, this 23rd day of February, 2011.

**CARL J. BARBIER**
**United States District Judge**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In re: Oil Spill by the Oil Rig        MDL No. 2179
      "Deepwater Horizon" in the Gulf
      of Mexico, on April 20, 2010        SECTION J

Applies to: *All Cases*        JUDGE BARBIER

                                    MAGISTRATE SHUSHAN

## ORDER

**IT IS ORDERED** that any opposition to Plaintiffs' **Motion for Court Approval of Proposed Notice (Rec. Doc. 1126)** be filed no later than **Wednesday, February 16, 2011**.

New Orleans, Louisiana, this 9th day of February, 2011.

**CARL J. BARBIER**
**United States District Judge**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the | : | SECTION: J |
| GULF OF MEXICO, on | : |  |
| APRIL 20, 2010 | : |  |
|  | : | JUDGE BARBIER |
| THIS DOCUMENT RELATES TO: | | MAG. JUDGE SHUSHAN |
| ALL CASES. | | |
|  | : | |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. ..

## OPPOSITION TO "PLAINTIFFS' EX PARTE MOTION FOR COURT APPROVAL OF PROPOSED NOTICE"

NOW INTO COURT, through undersigned counsel, come the Plaintiffs in the following

cases, to submit this Opposition to "Plaintiffs' Ex Parte Motion For Court Approval of Proposed

Notice:"

1. Bill's Oyster House, LLC *et al* (E.D. La., 10-cv-1308)
2. Howard Buras (M.D. La., 10-cv-369; and E.D. La., 10-cv-2994)
3. Armand's Bistro (W.D. La., 10-cv-1007 and E.D. La., 10-cv-4489)
4. Faye Loupe *et al.* (E.D. La., 10-cv-2764)
5. Laura Gautreaux (E.D. La., 10-cv-1539)
6. Brent Rodrigue, Sr *et al.* (E.D. La., 10-cv-1325)
7. Issadore Creppel (E.D. La., 10-cv-1346)

On February 8, 2011 the Plaintiffs' Liaison Counsel filed "Plaintiffs' Ex Parte Motion

For Court Approval of Proposed Notice" (Doc. #1126). The Motion requests Court approval of

an attached Notice (Doc. #1126-3) "advising potential litigants of the availability of the Short-

Form Joinder and of the April 20, 2011 monition date in the Transocean Limitation."

The heading of the Motion states that it "Relates to: *B1 and B3 Bundle Cases*" and

"Relates to: No. 2771."

1

The proposed Notice instructs how one must file a claim "to preserve your ability to recover money and other damages against Transocean and include your claim in this trial."

However, as the proposed Notice is currently worded, the effect on anybody filing such a claim would be to:

> "also join you in the master lawsuit that has been filed against BP and the other defendants. If you do not want to join the master lawsuit you will still need to file an answer and claim by April 20, 2011 in order to preserve your right to recover against Transocean."

Contrary to the motion's heading that it relates only to the Transocean limitation, the motion, in fact, has a much broader scope and reach.

Granting this motion would have the effect of making the PSC class counsel for anybody filing such a claim, not only as regards claims against Transocean but also as well as all other defendants. In that numerous suits and class actions have already been filed in which parties are already represented by counsel, this language is inappropriate and should thus be removed.

The history of this case has been one of constant attempts and maneuvers to unnecessarily extend and protract this litigation and undermine the work of Mr. Feinberg and the Gulf Coast Claims Facility. As is well known, the more claims that are resolved through Mr. Feinberg's office (and the quicker they are so done), the smaller the number and amount of claims will be available for litigation.

Immediately after the spill occurred (and long before the Claims Facility was created), a number of the attorneys who were later appointed to the PSC requested that the undersigned, with Camilo Salas and Richard Arsenault, draft the original Complaint in this litigation (*Acy J. Cooper, Jr. et al. v. BP PLC et al.,* # 10-cv-1229), which Messrs. Becnel, Salas and Arsenault did.  Mr. Becnel also paid the $350.00 court cost for filing the suit.

2

The undersigned also filed the moving papers for this Multi District Litigation and argued before the MDL Panel that this Court or any other judge in the Eastern District of Louisiana be appointed to handle this Multi District Litigation.

When the President appointed Mr. Feinberg, the undersigned, along with Mr. Jerry Parker and Messrs. Salas and Arsenault, held numerous informational meetings for all interested attorneys, on behalf of the Louisiana State Bar Association, Harris Martin Publishing Company and others. We also arranged and held numerous private meetings with Mr. Feinberg and Mr. Rosen, his partner, and hosted a public presentation at Loyola Law School by Mr. Rosen that 200 attorneys from all over the country attended.

Immediately after Mr. Feinberg's appointment, he and/or Mr. Rosen had numerous meetings with undersigned, Mr. J.R. Whaley, and Messrs. Salas, Arsenault and Parker in an effort to resolve their large inventory of claims without having to resort to the PSC and the litigation. Shortly after these meetings, however, Russ Herman advised the undersigned and Messrs. Salas and Arsenault that their assistance was no longer wanted and requested that they withdraw from the *Acy Cooper, Jr. v BP* suit, which was done before the Honorable Sarah Vance, to whom the case had been originally allocated.

Much of the work being done by the PSC is unnecessary and involves efforts to garner fees rather than develop facts. The critical facts in this case have long been known through exhaustive work by the Presidential Spill Commission; the Joint Coast Guard/BOEM hearings; the Deepwater Horizon Study Group chaired by Professor Robert Bea of U.C., Berkeley; and numerous congressional committees (including California's Representative Waxman's House Energy and Commerce Committee and Massachusetts's Representative Markey's House Natural Resources Committee).

Upon information and belief, not a single PSC member personally attended the Joint Coast Guard/BOEM hearings. The undersigned, in contrast, DID attend the Joint Hearings, as well as did Scott Bickford, Ronnie Penton and a few other attorneys who had death or injury cases. Further, Mr. Will Percy of undersigned's office attended <u>all</u> the hearings in the New Orleans area as well as hearings in Houston. After every day's session, undersigned's office would produce written daily reports of that day's witnesses' testimony and, together with exhibits whenever they were available, and would send them both to everybody on the "list serve" and to anybody else who had an interest.

All the testimony from the dozens of witnesses before the Joint Hearings has by now been transcribed and is all available online, and its final report is forthcoming as soon as the study of the blowout preventer is completed. The Presidential Commission has published its exhaustive Final Report, which is also available online. Numerous congressional committees held hearings, both in the New Orleans area and in Congress. Undersigned sent representatives of his office to the local hearings and viewed them on CSPAN and the internet when available, and prepared and circulated summaries of these as well. The Deepwater Horizon Study Group has published numerous technical reports – all available online as well. This all has had the effect of minimizing the discovery for the PSC to conduct, and, accordingly, the minimization of fees they can charge for such.

So much evidence and testimony has come out of these various hearings and reports that the PSC has already had its most important discovery done for it by these groups and provided to the PSC, and the general public, for free.

Indeed, so much of the critical testimony and evidence has already been established that undersigned counsel is preparing motions for summary judgments against responsible parties in

this litigation. The PSC, however, per the directive of Mr. Steve Herman, has refused to allow

such proposed motions to be filed, resulting in still more unnecessary protraction of this

litigation - to the financial benefit of PSC but to the detriment of the victims of the spill.

A number of lawyers, including Messrs. Arsenault, Salas, Parker and myself, had

numerous meetings and seminars recommending that the Feinberg approach to settling claims

was far more efficient, transparent, and honest for people who had legitimate claims and,

therefore, this option should be considered first, prior to litigation. It was important to file a few

complaints in federal court in order to have a backup plan should the Feinberg approach prove to

be unfruitful. Throughout this process, many members of the Plaintiffs' Committee continually

objected to this approach and continually recommended litigation, with large legal fees as a

result, including large common benefit fees. We, however, continually recommended and urged

that fees should be kept minimal considering the losses suffered by the plaintiffs.

As of February 15, 2011, according to Gulf Coast Claims Facility's website, there have

been 490,186 claimants, of which 168,842 have been paid $3,396,354,241.09. 168,839

claimants have received Emergency Advance payments; 88,613 have received Final Quick Pay

payments; 2 have received Final Full Review payments (net of claimants with Quick Payment

issued); and 1 has received Interim payment (net of claimants with Quick Payment issued).

Pursuing and resolving these claims with Mr. Feinberg has been an ongoing process

involving constant phone conferences, hiring experts, gathering expert reports and having expert

testing conducted in numerous fields, including environmental toxicology, hydrology, and air-

modeling.

Mr. Arsenault even hired an expert hydrologist and environmental engineer, Dr. Frank

Willis. Dr. Willis, a pilot, continually flew and landed his seaplane throughout the Gulf region

and took photographs to document the discharge and track the flow of the oil as it spread out and approached the beaches, marshes and coastal estuaries. Another expert, Marco Kaltofen, on behalf of Mr. Stuart Smith's consortium of lawyers, tested the beaches from Louisiana to Florida. Other lawyers, including the undersigned and Mr. Salas, also had samples taken by Mr. Kaltofen to be used to fingerprint the oil and determine the extent of the spill. Professor Steve Werely from Purdue was retained to calculate flow rates.

When the members of the PSC were chosen, those attorneys, and, therefore, the PSC itself, lost all interest in working with Mr. Feinberg (where their fees would have been smaller). When Mr. Steven Herman was appointed as Liaison Counsel, he requested the undersigned to give to the PSC the numerous experts I and Messrs. Salas, Arsenault, Parker and Smith had already retained, paid and were working with, together with their entire work product. He demanded that the PSC members would then be in charge of these experts and that I and Messrs. Salas, Arsenault and Parker would have no further involvement. Mr. Herman reported that both he and Mr. Roy had come to the opinion that if all this was provided to the PSC, the PSC would allow the recovery of costs and include our time as common benefit time. However, it was specifically noted that neither Mr. Becnel nor his firm would be allowed to do any further common benefit work. This was decided despite all the work and the large inventory of clients (in terms of both numbers of clients and values of claims) that he, together with Messrs. Salas, Arsenault, Parker and Smith, had brought to the litigation.

The current motion pending before the Court is an attempt to make all claimants come under the jurisdiction of the PSC and, therefore, to gain unwarranted common benefit fees, to the financial detriment of the claimants.

6

There is no necessity at this time to adopt a Master Complaint suing all the defendants

(including BP, Halliburton, Anadarko, Weatherford and Cameron).

Accordingly, it is respectfully that the PSC's Motion as to the suggested language of the

Transocean Limitation Notice be denied.

Respectfully submitted,
this __16th__ day of __February__, 2011.

__/s/    Daniel E. Becnel, Jr._____
DANIEL E. BECNEL, JR. (#2926)
CHRISTOPHER D. BECNEL (#30859)
DARRYL J. BECNEL (#22943)
TONI S. BECNEL (#23645)
SALVADORE CHRISTINA, JR. (#27198)
MATTHEW B. MORELAND (#24567)
WILLIAM A. PERCY III (#01532)
**BECNEL LAW FIRM, LLC**
P. O. Drawer H
106 West Seventh Street
Reserve, Louisiana 70084
Telephone: (985) 536-1186
Facsimile: (985) 536-6445
E-mail: dbecnel@becnellaw.com
**Attorneys for Plaintiffs Bill's Oyster House,**
 **LLC; Howard Buras, Armand's Bistro, Faye**
 **Loup et al.; Laura Gautreaux, Brent Rodrigue,**
 **Sr., et al.; and Issadore Creppel**

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Motion will be served
on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in
accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed
with the Clerk of Court of the United States District Court for the Eastern District of
Louisiana by using the CM/ ECF System, which will send a notice of electronic filing in
accordance with the procedures established in MDL 2179, on this 16th_ day of _February_,

2011.

_/s/    Daniel E. Becnel, Jr._____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | : : : : : | MDL NO. 2179 |
| | : | SECTION: J |
| | : : : | |
| THIS DOCUMENT RELATES TO: ALL CASES | : : : | JUDGE BARBIER MAG. JUDGE SHUSHAN |

. . . . . . . . . . . . . . . . . . . . . . . . . . .   .   . . . . . . . . . . . . . . . . . . . . . .

## BP'S BRIEF IN OPPOSITION TO PLAINTIFF'S EX PARTE MOTION FOR COURT APPROVAL OF PROPOSED NOTICE

Defendants BP Exploration & Production Inc. and BP America Production Company (the "BP Parties") respectfully object to the PSC's Motion for Court Approval of its Proposed Notice ("Notice").  The proposed Notice does not simply advertise the April 20th monition deadline applicable to the Transocean Limitation Action, but rather seeks approval for a "Court Authorized Notice" scheme to solicit potential claimants to sue "BP and the other defendants," even though there has been no class certification ruling by this Court.  Indeed, at the PSC's request, all class certification issues in MDL 2179 have been tabled.  There is no basis in the law or under the Federal Rules for the Court to authorize the lawsuit solicitation provisions or the other expanded aspects of the PSC's proposed Notice.

To the extent the Court determines that additional Rule F(4) notice of the Limitation Action is necessary, the BP Parties do not object, so long as the notice is limited — as was the

previous Rule F(4) notice that was approved by Judge Ellison and published at the request of Transocean — to providing information about the monition date for the Limitation Action.

While the PSC seeks to use Rule F(4) as justification for its proposed Notice, the Notice goes well beyond virtually all of the Rule F(4) notification provisions. The PSC's Notice is a transparent attempt at using the Court's imprimatur to help the PSC solicit new potential claimants into MDL 2179 via a Rule 23 notice scheme, without having to first satisfy Rule 23's class certification requirements. The case law and authorities are clear on this point: no Rule 23 notice is permitted unless and until a class is certified.

In addition, the PSC's Notice would undercut the congressionally-mandated OPA claims process by issuing a "Court Authorized Notice" aimed at soliciting lawsuits that would automatically convert potential Limitation Action claimants against the vessel owner into MDL 2179 litigants versus other parties. If the PSC's Notice proceeds, it will likely result in improperly filed MDL 2179 claims that will have to be dismissed due to OPA's mandatory 90-day presentment requirement, wasting the time and resources of the Court, the parties, and the new claimants.

As stated above, the BP Parties do not object if the Court determines that further notice of the Limitation Action and monition date should be issued according to the Rule F(4) guidelines. Moreover, parties are free to advertise to potential claimants in accordance with the relevant legal and ethical rules. However, the PSC's attempt to invoke the Court's authority to solicit potential litigants against "BP and the other defendants" in MDL 2179 proceedings is unjustifiable and prohibited under well-established case law. The PSC's Motion, to that extent, should be denied.

## BACKGROUND

### 1.    Prior Notice by Transocean Of the Limitation Action.

On May 13, 2010, Judge Ellison of the Southern District of Texas ordered that Triton

Asset Leasing GmbH and various other Transocean entities (collectively "Transocean") publish

and distribute notice of the Limitation Action initiated by Transocean in accordance with Rule F

of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of

Civil Procedure [hereinafter Rule F].   (Ex. A, at 3-4.)   Judge Ellison's notice plan included

ordering Transocean to publish specific, detailed information about the Limitation Action in the

*Houston Chronicle* and to mail "a copy of the Notice of Complaint and Petition to every person

known to have made any claim or filed any actions" related to the *Deepwater Horizon* incident.

*Id.* at 4.

Transocean did not simply comply with the Court Order regarding publication in the

*Houston Chronicle*.   It went above-and-beyond, publishing the notice for four successive weeks

in at least 8 other newspapers, including the *Times Picayune* (New Orleans, LA), *The Daily*

*Advertiser* (Lafayette, LA), the *Mobile Press Register*, the *Panama City News Herald*, the *Biloxi-*

*Gulfport Sun Herald*, the *Pensacola News Journal*, *The Advocate* (Baton Rouge, LA), and the

*Miami Herald*.   (Exs. B & C.)   Transocean even republished its Rule F(4) notice without being

ordered to do so, after this Court moved the monition deadline.   (Transocean Resp. in Opp'n to

Pls.' Mot. at 2.)   There has been no suggestion from any party to this action that Transocean did

not comply with Judge Ellison's Order or meet the publication and notice requirements of Rule

F(4).

### 2.    Class Certification Issues Are Tabled By This Court At the PSC's Request.

In the fall of 2010, during discussions by the Court with various parties regarding initial

case management, the PSC opposed having the Court make an early determination on class

certification or having any class certification proceedings prior to the Limitation Trial (or prior to potential OPA test cases). On October 6, 2010, in the PSC's proposed Case Management Order, the PSC draft proposed an indefinite stay on class certification determinations. (Ex, D, Proposed CMO # 1, Doc 474-4, at 14.) Again, at the October 15, 2010 status conference, the PSC stated that class certification issues should be tabled pending further discovery and possible test trials. (Ex. E, Status Conf. Tr. 29-31, Oct. 15, 2010.) Four days later, on October 19, 2010, the Court issued PTO # 11, which stayed all "Federal Rule 23 motion practice and discovery on class certification issues . . . until further order of this Court." (Ex. F, PTO # 11 at § VII.) As a result of PTO # 11, there has been no discovery of class certification issues, no Rule 23 motion for class certification has been filed, and no determination by the Court as to the appropriateness of these cases for class treatment.

**3.      The Proposed Class Notice.**

On February 8, 2011, without meeting and conferring with the Defendants on the issue, the PSC filed a Motion asking the Court to approve its proposed Notice regarding the April 20th monition date to "potential claimants in Limitation *and other potential litigants*." (Pls.' Mem. at 2; emphasis added.) The Notice, which displays the Court's seal and the notation "Court Authorized Notice" prominently at the top, is entitled "To Protect Your Right to Recover Money and Other Damages Against Transocean." (Ex. G.)

The proposed Notice is very different from the notice under Rule F previously published by Transocean in accordance with Judge Ellison's Order. The body of the new Notice spends nearly as much time describing how potential claimants can bring a lawsuit against "BP and the other defendants" as it does discussing the Limitation Action. In fact, the Notice advertises that, by filing a short-form joinder claims form, potential claimants will be joined in the "master lawsuit that has been filed against BP and other Defendants." (Ex. G.) It also has an entire

4

section dedicated to explaining that a potential claimant can still bring a claim to the Gulf Coast Claims Facility (GCCF) if they submit a short-form joinder claims form. *Id.* In short, the Notice is not an expanded version of an admiralty law notice of the monition date; it is a lawyer's solicitation of new litigants to join litigation versus all defendants under the guise of a court notice.

As explained below, there is no basis in the law for such a class notice without a class certification order, or a notice that goes far beyond the Rule F parameters. The proposed Notice is instead a blatant solicitation of members of the public to join separate civil lawsuits before this Court. What's more, the Notice makes such solicitations using incomplete and inaccurate information about the effect of joining civil lawsuits on a member of the public's ability to make a claim against Responsible Parties including BP under OPA.

## ARGUMENT

The Court should deny the PSC's Motion because: (1) the Notice goes well-beyond the notice provisions of Rule F(4); (2) the Notice essentially seeks a "court authorized," pre-class certification solicitation of prospective claimants, which is clearly prohibited under Rule 23 and the corresponding case law; (3) the Notice would  undercut the congressionally-sanctioned OPA claims process; and (4) the Notice would likely lead to an influx of improperly filed claims that would have to be dismissed for failure to allege proper presentment, wasting the resources of both the Court and the parties. If the Court determines that additional notice should be distributed regarding the monition deadline of the Limitation Trial, such notice should be disseminated only according to the provisions of Rule F(4), as was prior notice by Transocean.

1.   **The PSC Notice Scheme Goes Well-beyond Rule F(4)'s Notification Provisions and Instead Seeks to Send A Broad, "Court Authorized" Solicitation For New Claimants.**

There is no basis for the PSC's proposed Notice scheme under Rule F(4).   First, Transocean — the party responsible for publishing Rule F(4) notice — has already met and exceeded the Rule F(4) publication requirements.   In addition to publishing the required notice for four successive weeks in the *Houston Chronicle* as ordered by Rule F(4) and Judge Ellison, Transocean also published notice for four successive weeks in at least 8 other major newspapers spanning the Gulf Coast region.   (Exs. B & C.)   The PSC has not claimed that Transocean did not comply with both Judge Ellison's Order and the notification requirements of Rule F(4).   Nor could it.   Not only did Transocean meet all of the Rule F(4) requirements, it even voluntarily published additional Rule F(4) notice for four consecutive weeks after this Court extended the monition deadline.   (Transocean Resp. in Opp'n to Pls.' Mot. at 2.)   The PSC also did not cite, and BP is not aware of, any cases in which a court ordered additional Rule F(4) notice after the requirements of Rule F(4) had been met.

Second, Rule F(4) is clear that notice regarding the Limitation Action is to be distributed by Transocean to newspapers identified by the Court and to the set of recipients described in the Rule.   Supp. R. for Certain Admiralty & Mar. Claims Rule F(4) ("The notice shall be published in such newspaper or newspapers as the court may direct once a week for four successive weeks prior to the date fixed for the filing of claims.   The plaintiff not later than the day of second publication shall also mail a copy of the notice to every person known to have made any claim against the vessel or the plaintiff arising out of the voyage or trip on which the claims sought to be limited arose.").   If the Court concludes that additional Rule F(4) notice regarding the monition date is necessary (for example, to emphasize the modified monition date of April 20,

2011), Transocean — not the PSC — is the proper party to arrange publication of that additional notice.

Moreover, while the PSC's Motion is conspicuously silent as to how the PSC intends to distribute its proposed Notice, the PSC's statement that it anticipates a "massive influx" of short-form joinders following its distribution implies that the PSC intends to distribute its Notice widely. (Ex. H, Status Conf. Tr. 17:8-14, Jan. 28, 2011.)  Indeed, the PSC has recently stated its intent to use TV and radio ads for solicitation of claimants under the guise of a court sanctioned notice.  But such a distribution scheme would go well-beyond the provisions of Rule F(4), which states that notice is to be sent "to every person known to have made any claim against the vessel or the plaintiff arising out of the voyage or trip on which the claims sought to be limited arose" (the "Required Parties") and to those "newspapers" identified by the Court.  The PSC has not argued or provided any evidence that Transocean failed to distribute its Rule F(4) notice to the Required Parties.   The only other avenue of publication contemplated by Rule F(4) is "newspapers as the court may direct."  The Rule does not grant the unlimited authority that the PSC is apparently seeking to distribute notice flyers, television commercials, and radio messages wherever it desires.

Third, the content of the PSC's Notice goes well-beyond what is envisioned by Rule F(4). This point is made plain by simply comparing the court-ordered Rule F(4) notices with the PSC's proposed Notice. (Exs. C & G.) Rule F(4)'s purpose regarding notification is to publicize the monition date and the underlying limitation action to potential claimants.  That is why the notifications published by Transocean are limited to addressing those two issues.  The PSC's Notice, however, plainly goes beyond publicizing the April 20, 2011 monition date for the Limitation Action.  For instance, it discusses filing a claim "against BP and the other defendants"

7

and has an entire section detailing that potential claimants can "participate in the federal lawsuit even if you already filed a claim with BP's GCCF." (Ex. G.)

In sum, while the PSC attempts to justify its Notice scheme via Rule F(4), the PSC's Notice does not stay within *any* of the Rule's requirements regarding notification. The PSC does not show that the Rule F(4) notification requirements have not already been met, that the PSC is a proper party to distribute any additional notice, that the additional notice will be distributed through the channels enumerated in Rule F(4), or that the sole purpose of the Notice is to advertise the monition date of the Limitation Action. Nor can it, because the primary purpose of the PSC's Notice is not to advertise the monition date of the Limitation Action, but rather to gather potential claimants for the PSC's lawsuit against "BP and the other defendants."

2.    **The PSC's Notice Proposal is Prohibited By Rule 23, Which Does Not Allow Pre-Class Certification Notice.**

The law on pre-class certification notice under Fed. R. Civ. P. 23 is clear: "***notice* for the purpose of bringing the claims of unnamed members of the plaintiff class before the court *may not issue before a class action has been certified*.**" *Pan Am. World Airways, Inc. v. US Dist. Ct. for the C.D. Cal.*, 523 F.2d 1073, 1079 (9th Cir. 1975) (emphasis added); *see also* Federal Practice & Procedure § 1788 (3rd ed.) ("[N]otice should not be sent out prior to class certification . . . ."); 3 Newberg on Class Actions § 8:9 (4th ed.) ("There is no occasion for any notice until after the propriety of the class action has been determined . . . ."); Manual for Complex Litigation (Fourth) § 21.311 ("[N]otice to class members should be given promptly *after* the certification order is issued.") (emphasis added). In fact, a recent Federal Claims Court decision could not find "a single case wherein a federal court permissibly notified potential plaintiffs of an on-going case before class certification." *Farmers Co-op. Co. v. U.S.*, 90 Fed. Cl. 72, 73 (Fed. Cl. 2009). The purpose of this prohibition is to prevent parties from

"circumvent[ing] Rule 23 by creating a mass of joined claims that resembles a class action but fails to satisfy the requirements of the rule." *Pan Am. World Airways, Inc.*, 523 F.2d at 1079.[1]

The PSC's proposed Notice scheme would issue a solicitation meant to "join [prospective claimants] in the master lawsuit that has been filed against BP and the other Defendants." (Ex. G)  Although not in its carefully-crafted Motion, Plaintiffs' Liaison Counsel stated in open court that it is essentially seeking to distribute a Rule 23 notice, asserting that its Notice is "typical" of other notices "used in communicating notices to punitive [*sic*] class members in various situations . . ." (Ex. H., Status Conf. Tr. 17:11-14, Jan. 28, 2011.)  Most troubling, perhaps, is that the PSC's Notice attempts to use the Court's imprimatur to help solicit these new claimants, as the very conspicuous Court seal and "Court Authorized Notice" notation at the top of the PSC's Notice demonstrate.[2]  While the PSC's Notice in some modified form might be proper if a class was ever certified in these cases, as things now stand, and at the urging of the PSC, all proceedings on class certification have been tabled indefinitely.  As a result, under virtually all of the case law and class action authorities, the PSC's Notice to prospective class members is wholly improper.[3]

---

[1] The PSC's Notice scheme would also effectively allow the PSC to distribute Rule 23 notice while preventing the defendants from availing themselves of the protections of Rule 23(f).

[2] To the extent the PSC or any other party, wants to privately advertise for clients, they are free to do so, provided the advertisements follow the relevant legal and ethical rules.  In fact, many lawyers have been running such advertisements for months.  The PSC should not, however, be allowed to blatantly solicit new claimants for these proceedings under the guise of a "Court Authorized Notice."

[3] The PSC's additional argument that its Notice is necessary to "help ameliorate any confusion that may have stemmed from potentially inaccurate or confusing information provided by or thru BP's Gulf Coast Claims Facility" is also without merit. (Pls.' Mem. at 1-2.)  The PSC's Notice simply combines limited information about the monition date for the Limitation Action with a straightforward solicitation to potential claimants to join in a lawsuit against "BP and other defendants."  Nothing in the PSC's Notice even addresses, let alone corrects, any alleged "potentially inaccurate or confusing" information allegedly released by the GCCF.

3.     **By Asking For Court Approval Of Its Notice, The PSC Seeks To Enlist The Court In An Effort To Undercut The OPA Claims Process And Frustrate Congressional Policy.**

The PSC Notice also runs afoul of OPA. OPA's administrative claims process is the congressionally-mandated vehicle for addressing maritime oil spills. Congress crafted OPA as a comprehensive statutory answer to oil spill liability and compensation. *Gabarick v. Lauren Mar. (Am.) Inc.*, No. 08-4007, 2009 WL 102549, at *2 (E.D. La. Jan. 12, 2009); *Tanguis v. M/V Westchester*, 153 F. Supp. 2d 859, 867 (E.D. La. 2001). As part of that federal regime, Congress instituted a requirement that "responsible parties" establish a privately-administered claims process for spill-related recoveries, rather than a process based primarily on litigation. 135 Cong. Rec. H7965 (daily ed. Nov. 2, 1989) ("The system of liability and compensation provided for in the bill . . . is ***intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation***.") (statement of Rep. Hammerschmidt) (emphasis added); 135 Cong. Rec. H7962 (daily ed. Nov. 2, 1989) (statement of Rep. Lent) ("***The thrust of this legislation is to "eliminate, to the extent possible, the need for an injured person to seek recourse through the litigation process***.") (emphasis added). Accordingly, Congress designed OPA to promote settlement and avoid litigation. *Gabarick*, 2009 WL 102549 at *3; *Turner v. Murphy Oil USA, Inc.*, No. 05-4206, 2007 WL 4208986, at *2 (E.D. La. Nov. 21, 2007); *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 238-39 (11th Cir. 1995); H.R. Rep. No. 101-242 Part 2, at 66 (1989) (lawsuits only appropriate "where attempts to reach a settlement with the responsible party . . . were unsuccessful").

To promote settlements through OPA claims facilities, Congress set out specific directions for "responsible parties" to advertise oil spills and corresponding recovery procedures. 33. U.S.C. §§ 2714(b) & (c). These statutory provisions and their regulatory counterparts empower the executive branch to regulate the content, scope, means, sufficiency, and timing of

advertising related to OPA spills and compensation. *See Id.*; 33 C.F.R. § 136.309 (National

Pollution Funds Center (NPFC) determines "type, geographic scope, frequency, and duration of

advertisement required" for the specific circumstances of each incident); 33 C.F.R. § 136.313

(content and NPFC control over content of advertising). Congress intended OPA's advertising

provisions and agency regulations to provide a unified governance regime binding public and

private parties. H.R. Rep. No. 101-653, at 18 (1990) (Conf. Rep.) ("The Conferees intend that

uniform procedures shall be established and that these procedures are used by both public and

private parties.").

Approving the PSC's Notice in this case would mean using the Court's imprimatur (via

the conspicuous placement of the Court's Seal and "Court Authorized Notice" notation at the top

of the Notice) to solicit claimants whose Limitation Action short-forms are automatically

converted into MDL 2179 cases. In effect, this would subject the MDL to Rule F(4) and work to

make litigation — instead of an OPA claims facility, as Congress intended — the primary

method for resolving spill-related claims. Endorsing the MDL as the main road to recovery

would, in turn, minimize the efficiencies Congress sought to promote through OPA's claims

process. Thus, by adding its seal of approval to the PSC's Notice, the Court would undercut

OPA and frustrate congressional policy.[4]

**4.      The PSC's Notice Will Result In Many Improperly-Filed Lawsuits By Claimants
Who Have Not Satisfied The Mandatory Presentment Requirements of 33 U.S.C.
§ 2713 Before Filing Suit.**

OPA has a mandatory 90-day presentment period that must lapse before a claimant may

file a lawsuit. 33 U.S.C. § 2713(a) & (c) ("***all claims*** for removal costs or damages ***shall be***

***presented first to the responsible party***") (emphasis added); *Boca Ciega*, 51 F.3d 235 (affirming

---

[4] In contrast, recall the Supreme Court's warning that "[e]ven in admiralty, however, where the federal judiciary's lawmaking power may well be at its strongest, it is our duty to respect the will of Congress." *Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 96 (1981).

dismissal of lawsuits not properly presented under OPA); *Gabarick*, 2009 WL 102549 (dismissing claims for failure to present pursuant to OPA); *Turner*, 2007 WL 4208986 (same); *Berthelot v. Boh Bros. Const. Co.*, No. Civ.A. 05-4182, 2006 WL 2256995 (E.D. La. July 19, 2006) (claim that OPA supports jurisdiction "has no merit" where plaintiffs do not satisfy OPA presentment); *Abundiz v. Explorer Pipeline Co.*, Nos. Civ.A. 300CV2029H, 303CV0508H, 303CV0787H.2003, WL 23096018 (N.D. Tex. Nov. 25, 2003) (dismissing claims for failure to present pursuant to OPA); *Marathon Pipe Line Co. v. LaRoche Indus. Inc.*, 944 F. Supp. 476 (E.D. La. 1996).

Accordingly, potential plaintiffs who have not already presented their claim to BP or the GCCF cannot satisfy OPA's 90-day presentment period in time to properly join the MDL by April 20, 2011. *See* 33 U.S.C. § 2713(c). The PSC's Notice nevertheless encourages — and seeks to recruit — potential MDL litigants to disregard OPA and file lawsuits before April 20, 2011. Because OPA bars lawsuits before presentment, the Court will have to dismiss the overwhelming majority of limitation claimants conjoined to the MDL through the PSC's Notice, for it is not sufficient to simply stay proceedings for such plaintiffs pending satisfaction of the OPA mandatory presentment requirement. *See Gabarick*, 2009 WL 102549, at *3 (holding that OPA claims filed in limitation action must be "dismissed without prejudice, rather than stayed, as desired by certain claimants" where claimants had not complied with presentment requirements).[5] Therefore, the "massive influx" of short forms that the Plaintiffs anticipate materializing based on the proposed Notice, (Ex. H, Status Conf. Tr. 17:8-10, Jan. 28, 2011), if

---

[5] The mandatory OPA presentment requirement will be addressed in detail in BP's Motion To Dismiss Plaintiffs' Master Complaint for the B1 Bundle. Dismissal is required pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6) where a plaintiff has failed to satisfy OPA's mandatory presentment requirement in advance of filing their lawsuit. *See also Boca Ciego*, 51 F.3d at 240; *Turner*, 2007 WL 4208986, at *2; *Berthelot*, 2006 WL 2256995, at *6; *Abundiz*, 2003 WL 23096018, at *3-5; *Marathon Pipe Line Co.*, 944 F. Supp. at 477; *Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 311 (E.D. Va. 1993).

an accurate prediction, would likely be a flood of improperly filed lawsuits that would serve to simply confuse potential litigants whose claims will likely have to be dismissed and waste both judicial and party resources.

Moreover, the Notice provides incorrect and misleading information about OPA presentment. The Notice states: "There may be other requirements you have to fulfill to proceed with a lawsuit against BP and the other defendants. You may, for example, have to fulfill presentment requirements of the Oil Pollution Act." (Ex. G.) Because OPA's pre-suit requirements are mandatory, recipients *will* have to meet additional requirements *before* joining the MDL. However, the Notice fails to inform recipients that they cannot meet these mandatory requirements by April 20, 2011, unless they filed final claims for a sum certain with supporting documentation before January 21, 2011. 33 U.S.C. §§ 2701(3) & 2713; *see, e.g., Gabarick*, 2009 WL 102549, at \*2 n.21. The Notice also states that "[y]ou can participate in the federal lawsuit even if you already filed a claim with BP's GCCF." (Ex. G.) But this is not true: recipients can only join MDL 2179 *after* they satisfy the mandatory pre-suit requirements of 33 U.S.C. § 2713. The Notice therefore provides inaccurate information that will mislead recipients into thinking that they are eligible for MDL 2179 when they are not.

The Notice also makes inaccurate and incomplete statements about the consequences of joining MDL 2179. The PSC's Notice promises that joining the MDL "will not prevent you from recovering money through BP's GCCF." (Ex. G.) First, this statement is not true, because legal determinations in both the Limitations Action and MDL 2179 may preclude recipients from recovering against BP and the GCCF. Second, given that the Notice states that "[y]ou can participate in the federal lawsuit even if you already filed a claim with BP's GCCF," the recipients will likely be misled into believing that filing a short-form joinder will also have no

impact on their ability to file a claim with the U.S. Coast Guard. *Id.* Under 33 U.S.C. § 2713(b)(2), however, as a matter of law, a claimant forfeits the ability to take a claim to the Coast Guard for the relief they are seeking through the short-form claims process during the pendency of their claim. Moreover, since there is no express tolling provision allowing potential litigants to regain this right in the event that MDL 2179 exceeds the relevant statute of limitations, short-form claimants could lose their right to recover from the Oil Spill Liability Trust Fund completely. *See* 33 U.S.C. §§ 2713(b)(2) & 2712(h). As a result of these misstatements and omissions, the PSC's Notice will likely confuse and mislead recipients about the legal rights that they may lose by filing a short-form joinder.

## **CONCLUSION**

The PSC is free to advertise for clients on its own within the relevant legal and ethical guidelines. Moreover, the BP Parties do not object if the Court determines that additional notice regarding the Limitation Action is necessary, provided that such notice tracks the prior Notice by Transocean and stays within the applicable provisions of Rule F(4). However, for the foregoing reasons, the BP Parties respectfully request that this Court deny the PSC's Motion to essentially enact a "court authorized" Rule 23 notice scheme to solicit prospective class members when no classes have been certified in this action.

Respectfully submitted,

/s/ Don K. Haycraft
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

14

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL  60654
312-862-2000 (Tel)
312-862-2200 (Fax)

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
202-662-5985

**Attorneys for BP America Production
Company and BP Exploration &
Production Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 16th day of February, 2011.

<div align="right">
_____ /s/ Don K. Haycraft _____
</div>

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | § | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE | § | |
| GULF OF MEXICO, on APRIL 20, 2010 | § | SECTION J |
| | § | |
| THIS DOCUMENT RELATES TO: | § | JUDGE BARBIER |
| | § | |
| ALL CASES | § | MAG. JUDGE SHUSHAN |

### THE BUZBEE LAW FIRM'S RESPONSE AND MEMORANDUM IN OPPOSITION
### TO PLAINTIFFS' *EX PARTE* MOTION
### FOR COURT APPROVAL OF PROPOSED NOTICE

The Buzbee Law Firm ("BLF"), which represents eighteen injured rig workers and thousands of individuals and entities affected by the catastrophic April 20, 2010 Deepwater Horizon Oil Spill, files this Response and Memorandum in Opposition to the Plaintiff Steering Committee's ("PSC") Motion for Court Approval of Proposed Notice (Dkt. Entry No.1126). BLF also requests a hearing for oral argument on this matter by separate document.

### INTRODUCTION

The PSC's Motion should be denied, or the notice should be modified, for the following reasons: 1) the Oil Pollution Act of 1990 ("OPA")[1] trumps the Limitation of Liability Act of 1851 (the "Limitation Act")[2]—under controlling law, and as set forth in the Stay Order, an OPA claimant is <u>not</u> required to file a claim in the Limitation Proceeding; 2) the proposed notice does not disclose that, by joining the Master Complaint, a claimant could be violating the Oil Pollution Act of 1990's ("OPA") 90-day presentment requirement; (3) the notice does not make clear that, if an individual chooses to file a claim, they are at the same time bringing claims against all Defendants in this litigation—such is unnecessary and premature; (4) the proposed notice does not disclose that the PSC may seek, and be awarded, attorneys' fees and expenses,

---

[1] 33 U.S.C. §§ *et seq.*
[2] 46 U.S.C. §§ *et seq*

which could be deducted from a claimant's recovery; 5) the proposed notice, and its practical effect, will serve to increase litigants in the litigation, for no legitimate reason, without giving the claims process a chance to work; 6) the proposed notice, and its practical effect, potentially interferes with the relationship between represented claimants and their attorneys; and 7) the proposed notice references a website, yet the website has no content. As such, there is no way to determine what information the PSC will be passing to both represented and unrepresented claimants. For these reasons, the PSC's Ex Parte Motion for Court Approval of Proposed Notice should be denied.

At a minimum, alternatively, the proposed notice should be revised. The revisions must include the following: 1) to disclose that it is not necessary to file a claim in the Transocean Limitation Proceeding in order to preserve any Oil Pollution Act claims, or any claims, except those against Transocean in the Limitation Proceeding; 2) to disclose that claimants may file a claim in the Transocean Limitation Proceeding to preserve their rights without filing claims against any of the other parties in this litigation (in other words, submitting the "short form joinder" is not a claimant's only choice); (3) to disclose that potential claimants may be violating the OPA's 90-day presentment period by filing the short form joinder, if they have not already presented their OPA claim ninety days beforehand; 4) the Court's seal and the "Court Authorized Notice" should be removed, as it appears that the PSC seeks to give legal advice, even though some of that advice appears to be incomplete; and 5) to disclose that, whether they have an attorney or not, if a claimant submits a claim in this MDL, that the PSC may seek and may be awarded fees and expenses out of a claimant's recovery.

## I.    The Oil Pollution Act Trumps the Limitation of Liability Act

From the outset, it is important to note that U.S. District Judge Ellison, who previously presided over the Limitation Proceeding, authorized and approved notice he felt to be sufficient to protect and notify potential claimants in the Limitation Proceeding.  See Exhibit A.  In the Order, the notice "require[d] claimants subject to the Injunction, Stay and Restraining Order herein to file their respective claims with the Clerk of this Court. Exhibit A, p.3.  What the PSC seeks is additional notice, citing as support, misleading comments and information on the part of BP and the Gulf Coast Claims Facility.  This notice is not required.

The proposed notice sought by the PSC appears to simply be a mechanism to encourage additional plaintiffs to prematurely join this Multi District Litigation—there can be no legitimate reason for such at this stage, especially in light of the fact that it is still unclear whether the claims process will fairly and reasonably compensate claimants. Notwithstanding the reasons behind such an effort, there are glaring legal hurdles with the dissemination of such a notice.  Most importantly, the OPA trumps the Limitation Act.  The Limitation Act is outdated and inapplicable to oil spills.  The purpose of the Limitation Act was to promote shipbuilding and investment in the American shipping industry and to promote international competition.  *See, e.g.*, *In the Matter of Metlife Capital*, 132 F.3d 818 (1st Cir. 1997).  But in 1989, the Exxon Valdez spill necessitated the creation of the OPA to govern liability of oil spills.  And it is the OPA that controls – it even provides limits of liability for responsible parties. *Id.* at 821.

Under the OPA, responsible parties[3] are strictly, and jointly and severally, liable for damages in connection with the discharge of oil.  OPA, 33 U.S.C. § 2701 *et seq.*  Generally, the

---

**** "Responsible party" means the following:
(A) Vessels. In the case of a vessel, any person owning, operating, or demise chartering the vessel.

responsible party could be limited to removal costs plus $75 million unless gross negligence;

willful misconduct; or violation of federal safety, construction, or operating regulations by a

responsible party is found. 33 U.S.C. 2704 (b)(2) and (c)(1)(A) and (B).  However, BP PLC has

expressly waived this $75 million OPA cap.  See Statement of BP Exploration & Production,

Inc. Re Applicability of Limit of Liability Under Oil Pollution Act of 1990, Document 559

(October 18, 2010). "BP already has paid claims many times over the OPA limit and will live up

to its public commitment to pay all legitimate claims made in connection with the Deepwater

Horizon incident and the resulting oil spill." *Id.* at p. 1.[4]

Also, OPA expressly trumps prior laws or general maritime law that limits liability in a

manner different from the OPA – including the Limitation Act.  It provides:

> Notwithstanding any other provision or rule of law, and subject to the provisions of this
> chapter each responsible party for a vessel or a facility from which oil is discharged or
> which poses the substantial threat of a discharge of oil, . . .is liable for the removal costs
> and damages specified in subsection (b) that result from such incident.

---

(B) Onshore facilities.  In the case of an onshore facility (other than a pipeline), any person owning or operating the facility, except a Federal agency, State, municipality, commission, or political subdivision of a State, or any interstate body, that as the owner transfers possession and right to use the property to another person by lease, assignment, or permit.

(C) Offshore facilities.  In the case of an offshore facility (other than a pipeline or a deepwater port licensed under the Deepwater Port Act of 1974 (33 U.S.C. 1501 et seq.)), the lessee or permittee of the area in which the facility is located or the holder of a right of use and easement granted under applicable State law or the Outer Continental Shelf Lands Act (43 U.S.C. 1301-1356) for the area in which the facility is located (if the holder is a different person than the lessee or permittee), except a Federal agency, State, municipality, commission, or political subdivision of a State, or any interstate body, that as owner transfers possession and right to use the property to another person by lease, assignment, or permit.

(D) Deepwater ports.  In the case of a deepwater port licensed under the Deepwater Port Act of 1974 (33 U.S.C. 1501-1524), the licensee.

(E) Pipelines.  In the case of a pipeline, any person owning or operating the pipeline.

(F) Abandonment.  In the case of an abandoned vessel, onshore facility, deepwater port, pipeline, or offshore facility, the persons who would have been responsible parties immediately prior to the abandonment of the vessel or facility.

See  33 U.S.C. § 2701 (32) (2004), as amended by PL 111-281, 2010 HR 3619 (October 15, 2010).
[4] In light of the fact that BP has waived the $75 million cap, why would any OPA claimant ever need to sue any other party?

33 U.S.C. § 2702 (a).

Further, many courts have expressly recognized that OPA effectively repealed the Limitation Act with respect to damages against responsible parties under the OPA. *See, e.g., In the Matter of Metlife Capital*, 132 F.3d 818 (1st Cir. 1997). In fact, four other provisions in the statute were repealed. *See* <u>33 U.S.C. §§ 2702(d)(1)(A)</u> (repealing the Limitation Act as to third parties solely responsible for a spill); 2718(a) (repealing the Limitation Act as to state and local statutory remedies); 2718(c)(1) (repealing the Limitation Act as to additional liability imposed by the United States, any state, or political subdivision); 2718(c)(2) (repealing the Limitation Act as to fines or penalties). *Id.* at 821.

In case there is any doubt, "'[W]here provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one....' " *See Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 154, (1976) (quoting *Posadas v. National City Bank,* 296 U.S. 497, 503, (1936) (noting standard for repeal by implication)).

Before the Limitation Action was transferred into this MDL proceeding, United States District Court Judge Keith Ellison recognized that the OPA trumped the Limitation Act. Judge Ellison found that claims for damages under OPA would not be stayed simply because the Limitation Action had been filed– including the OPA claims made against Transocean. And he expressly stated that those claims not stayed, need <u>not</u> be filed in the Limitation Proceeding:

> This injunction does not apply to any claims asserted against Petitioners under the Oil Pollution Act, 33 U.S.C. § 2701 *et seq.*, except for claims against Petitioners by OPA responsible parties as defined in 33 U.S.C. § 2701(32). This injunction does not apply to any claims, including those of private parties, asserted against Petitioners within the scope of 33 U.S.C. § 2718(a), inclusive, except for claims against Petitioners by responsible parties as defined in 33 U.S.C. § 2701(32). This injunction does not apply to any claims asserted against Petitioners by the United States, Indian Tribes, or a State or political subdivision of a State under the Oil Pollution Act, 33 U.S.C. § 2701, *et seq.* This injunction does not apply to any claims asserted against Petitioners by the United States

under the Clean Water Act, 33 U.S.C. § 1251 *et seq*, the Park Systems Resource Protection Act, 16 U.S.C. § 19jj *et seq*, the National Marine Sanctuaries Act, 16 U.S.C. § 1431 *et seq*, the Rivers and Harbors Act, 33 U.S.C. § 401 *et seq*, and the Comprehensive, Environmental, Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq*. This injunction does not apply to any claims by the United States or a State or political subdivision of a State for any fine, penalty or injunctive relief within the scope of 33 U.S.C. § 2718(c).

*See* Second Amended Order Directing Claimants to File and Make Proof of Claims, Directing the Issuance of Monition, And Restraining Prosecution of Claims, *In Re The Complaint and Petition of Triton Asset Leasing GMBH et al*, C.A. No. 4:10 -CV-1721, June 14, 2010, p. 4.

Generally, under the Limitation Act, once an owner/Petitioner files an action in limitation, all claims and proceedings related to the matter are stayed, and claims must be filed in the Limitation Proceeding.[5]  Because the Limitation Act does not apply to claims under the Oil Pollution Act, Judge Ellison expressly excluded them. If an OPA claimant's claims against the Petitioner in Limitation, who is also a Responsible Party, are not stayed, what possible reason would there be for a claimant to ever file a formal claim in the Limitation Proceeding? There is no reason, and telling claimants that they must do so is confusing and misleading—and is not in the claimant's best interests, at all.

The bottom line is that there is an Order in the Limitation Proceeding which makes clear that OPA claimants <u>need not</u> file a claim in the Limitation Proceeding.  For those who are also bringing claims under admiralty law, that is, that limited class of claimants who are not subject to

---

[5] **(a) In general.**--The owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter. The action must be brought within 6 months after a claimant gives the owner written notice of a claim.

**\*\*\***

**(c) Cessation of other actions.**--When an action has been brought under this section and the owner has complied with subsection (b), all claims and proceedings against the owner related to the matter in question shall cease.

See 46 U.S.C 30511.

the prohibitions set forth in *Robins Dry Dock*,[6] perhaps some modified and limited notice could

be fashioned, if such were shown to be necessary. Thus far, there has been no such showing.

## II.    The Proposed Notice

The proposed notice strongly encourages (or more appropriately scares) potential

claimants into submitting a claim in the Transocean Limitation Proceeding by April 20, 2011.

But, the Notice does not adequately disclose that, in reality, one wishing to filing a claim in the

Transocean Limitation Proceeding is actually doing much, more than that, under the current

system. Nor, does the notice explain the ramifications of doing that.

Also, the notice does not make clear that, by filling out the short form, a claimant is

possibly subjecting himself to an argument that the claimant did not follow OPA's presentment

requirement.  Of course, whether a particular claimant has properly presented their OPA claim

timely, before filing suit, will be determined on a case by case basis.  As this notice is designed

for the general public, it should advise of this risk.

Perhaps a workable solution would be to create a mechanism in which one wishing to

assert a claim in the Transocean Limitation Proceeding can submit a specifically drafted short

form joinder to do only that. (Of course, such individual or entity should be informed that such a

claim is not necessary if they only intend to bring claims against responsible parties under the

OPA.)  The proposed notice mentions this possibility, but for whatever reason, a short form

joinder into the Limitation Action only has not been established. If the PSC wishes to streamline

the process, and is looking out for the interests of all claimants, whether they be represented or

not, presumably, the PSC would enthusiastically take this step.

---

[6] 275 U.S. 303 (1927).  *Robins Dry Dock & Repair v. Flint* (1927), as this Court knows, is the seminal Supreme Court decision that stands for the proposition that  recovery of damages for pure economic damages under Admiralty Law is essentially limited to fishermen and oystermen, and those whose property was actually damaged by oil.

### A. The PSC's Proposal Essentially Waives the Presentment Requirement under the OPA

A claim for damages under the OPA must first be presented to a responsible party.  33 U.S.C. § 2713(a).  Under the OPA, the term "claim" means "a request, made in writing for a sum certain, for compensation for damages or removal costs resulting from an incident" – in this case, the oil spill.  33 U.S.C. § 2701(3).  If the party for whom presentment is made denies all liability for the claim, or if the claim is not settled by payment within ninety days after which the claim is presented, the claimant may initiate court proceedings or present the claim to the Oil Spill Liability Trust Fund.  33 U.S.C. §2713 (c).  Further, such claims for recovery of damages must be presented within three years of the spill.  33 U.S.C. § 2712(h)(2).  The proposed notice would undoubtedly reach claimants that have not presented a claim to the responsible party under the OPA and require them to initiate a lawsuit in the Limitations Action as well as the OPA – a clear violation of the OPA.  The Gulf Coast Claims Facility is designed for presentment of claims and will accept claims for final payment until its closure on August 22, 2013.

For these reasons, tying the two actions into one short-form joinder claim is simply not correct.  At a minimum, for those that must file claims in the Limitation Proceeding (again, those not pursuing claims under the OPA only) the notice and the short form joinder claim form should only be applicable to the Limitations Action and not require automatic joinder into the Master Complaint.

### B.   The Notice Fails to Disclose the PSC's Financial Interest

The PSC's actions do not ameliorate any confusion, but instead perpetuate confusion.  In fact, the PSC seeks court approval for a proposed notice, which cites a website for assistance in filing a claim form, WWW.OilSpillCourtCase.Com.  The website is currently without content and under construction. Who will control the dissemination of information on this website?

What is the court approving and sanctioning by approval of this notice directing potential claimants to an empty website? Who will insure that the information is not misleading or further confusing to potential claimants, some of which are represented? Further, the notice fails to disclose the PSC's financial interest in that it will no doubt seek attorney's fees and expenses from the recovery of any plaintiff who submits the short form joinder. At the end of the day, it is commonly known that Transocean's twenty-six million dollar Limitation Fund cannot even begin to compensate those that suffered personal injury from the explosion – much less the compensation of the billions of dollars in lost business opportunity claims if the Court found it to be applicable. To require this notice is misleading, and the required automatic intervention in the underlying OPA action is wrong. The only benefit from such notice is to the PSC, to the exclusion of other attorneys, and in contravention of private attorneys' contracts with their clients.

**III.      Alternatively, the Proposed Notice Must be Revised**

For the reasons stated above, this proposed notice should NOT be released because it is unnecessary, confusing and misleading. However, at a bare minimum, the following changes should be made.

**A. Claimants are Not Required to Join Limitation Action to Pursue OPA Claims**

The notice must affirmatively state that potential claimants are not required to join the limitation action in order to preserve their OPA claims. Judge Ellison affirmatively made this ruling on June 14, 2010, when he specifically recognized that OPA claims were not affected by the limitation action. See Exhibit A. The proposed notice misstates this ruling.

**B. Short Form Joinder Form is Not the Only Way to Make a Claim in the Limitation Action and Should Not be Used if Claimants Have Not Met the Ninety Day Presentment Period**

The notice must affirmatively state that the short form joinder is not the only method in which to join the limitations action and that direct filing can also be made into the action. Further, the notice must state that the Short Form Joinder Form should NOT be used if the potential claimant has not given the responsible parties – including both Transocean and BP – the required ninety day presentment requirement. Claimants are required to present a claim to the responsible party prior to filing suit. The proposed notice does not inform the potential claimants of this requirement.

**C. Court References on the Notice Should Be Removed**

The first line of the proposed notice states that it is a Court Authorized Notice and includes the Court's seal. The notice is in essence legal advice, albeit incomplete. As such, any reference that the notice is authorized, or use of the Court's seal, is improper and must be removed.

**D. Only the Court's Website Should Be Referenced**

The proposed Notice purports to direct claimants to two websites. As stated, one of these websites has no content. Without content, it is impossible to object to what the PSC ultimately intends to put on the website. For this reason, the only website that should be referenced is that of this Honorable Court, or the content of a dedicated website should be subject to vetting by all interested attorneys.[7]

---

[7] It should also be noted that it is unclear how and by what method the PSC intends to issue the proposed notice. This, again, raises severe concerns for those attorneys who have been diligently pursuing this case. Direct mail to represented clients of other attorneys will lead to lawsuits and claims of tortuous interference with private contracts.

**E.  The Notice Should Advise Claimants that the PSC Reserves a Right to Take a Fee**

In order to avoid further confusion and give rise to the fee storm that arose from BP's paying Feinberg and Feinberg insisting that a lawyer was not required, a fee disclosure should be made.  As a matter of full disclosure, potential claimants should understand that by completing the Short Form Joinder claim form, that the PSC will seek attorney's fee and expenses in both the limitations action and the master action.  At a very minimum, potential claimants should be advised of the monies they would be forfeiting by completing the Short Form Joinder form.

## CONCLUSION

The Buzbee Law Firm wholeheartedly supports any effort by the PSC to punish BP and any other liable party for its conduct.  And, the Buzbee Law Firm supports all PSC efforts to eliminate confusion, and stop the dissemination of misleading information to claimants, both represented and unrepresented by counsel.  But, the PSC should not, under any circumstances contribute to the confusion.  Many, many claimants wish to make use of the GCCF claims process. Most of these claimants have no claims under admiralty law, and only have claims under the OPA. These claimants will never have to file a claim in the limitation, but at some point down the road may become parties in the litigation against BP and Transocean.  More importantly, many claimants are vehemently opposed to litigation at this time, before the GCCF claims process plays out.  Simply put, the GCCF claims process must be given a chance to work, and the professional relationships between represented clients and their attorneys should be respected.  Thus, the Buzbee Law Firm does not necessarily disagree with the PSC's stated intention of eliminating confusion, but strongly disagrees with its method—which in the end creates even more confusion to the general public and would necessarily result in more people entering the litigation process. For these reasons, the Buzbee Law Firm respectfully requests that

this Court DENY the PSC's Ex Parte Motion for Court Approval of Proposed Notice. Alternatively, the Buzbee Law Firm, requests that the proposed notice be revised as set out herein.

Respectfully submitted,

## THE BUZBEE LAW FIRM

*/s/ Anthony G. Buzbee*
Anthony G. Buzbee
Trial Attorney
TBUZBEE@TXATTORNEYS.COM
State Bar No. 24001820
Caroline E. Adams
State Bar No. 24011198
JP Morgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Phone: 713-223-5393
Fax: 713-223-5909
www.txattorneys.com

12

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing THE BUZBEE LAW FIRM'S RESPONSE AND MEMORANDUM IN OPPOSITION TO PLAINTIFFS' *EX PARTE* MOTION FOR COURT APPROVAL OF PROPOSED NOTICE has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of February, 2011.

Respectfully submitted,

## THE BUZBEE LAW FIRM

*/s/ Anthony G. Buzbee*_____
Anthony G. Buzbee
State Bar No. 24001820
Trial Attorney
TBUZBEE@TXATTORNEYS.COM
Caroline E. Adams
State Bar No. 24011198
JP Morgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Phone: 713-223-5393
Fax: 713-223-5909
www.txattorneys.com

## CITATIONS OF AUTHORITIES

**Cases**

*In the Matter of Metlife Capital*, 132 F.3d 818 (1ˢᵗ Cir. 1997) .................................................... 3, 5

*Posadas v. National City Bank,* 296 U.S. 497, 503, (1936) ........................................................... 5

*Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 154, (1976) ..................................................... 5

**Statutes**

Oil Pollution Act ("OPA")

33 U.S.C. § 2701 *et seq*............................................................................................................... 3

33 U.S.C. § 2701(3) ...................................................................................................................... 8

33 U.S.C. § 2702 (a). .................................................................................................................... 5

33 U.S.C. § 2712(h)(2). ................................................................................................................ 8

33 U.S.C. § 2713(a). ..................................................................................................................... 8

33 U.S.C. §§ 2702(d)(1)(A) .......................................................................................................... 5

33 U.S.C. §§ *et seq*....................................................................................................................... 1

33 U.S.C. §2713 (c). ..................................................................................................................... 8

33 U.S.C. 2704 (b)(2) and (c)(1)(A) and (B) ............................................................................... 4

*33*U.S.C. § 2718(c). ...................................................................................................................... 6

Limitation of Liability Act of 1851 ("Limitation Act")

46 U.S.C. §§ *et seq*...................................................................................................................... 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL by the OIL RIG       *   MDL NO. 2179
     "DEEPWATER HORIZON" in the       *
     GULF OF MEXICO, on       *   SECTION:  J
     APRIL 20, 2010       *
            *   JUDGE BARBIER
THIS DOCUMENT RELATES TO ALL       *   MAG. JUDGE SHUSHAN
     CASES       *
            *

* * * * * * * * * * * * * * * * * * * * * * * * **

**OPPOSITION OF DEFENDANT CAMERON INTERNATIONAL**
**CORPORATION TO PLAINTIFF'S *EX PARTE***
**MOTION FOR COURT APPROVAL OF PROPOSED NOTICE**

Plaintiffs seek Court authorization for an elaborate notice program providing newspaper, television and radio announcements that will direct putative plaintiffs to call or web access the Plaintiff's Liaison Counsel for publicly available forms and information. To justify this proposal, plaintiffs cite Supplemental Admiralty Rule F(4) and "potentially inaccurate or confusing information provided by or thru (sic) BP's Gulf Coast Claims Facility." Rec. d. 1126-1, 1-2. But the notice program plaintiffs seek is not required or sanctioned by Rule F(4), and itself offers inaccurate and confusing statements. Accordingly, Cameron International Corporation ("Cameron") opposes the motion.

1046508v.1

## I.  PLAINTIFFS HAVE NOT DEMONSTRATED THAT NOTICE OF THE LIMITATION ACTION, AS ORDERED BY THE SOUTHERN DISTRICT OF TEXAS, IS LEGALLY DEFICIENT.

After the Transocean entities ("TO") filed their limitations petition in the Southern District of Texas, that Court issued an order directing that publication of the limitation action and its Limitation Order be published in certain newspapers as well as mailed to all individuals known to have made any claims against the TO petitioners. *In Re the Complaint and Petition of Triton Asset Leasing GmbH, et al.,* #10-1721, So. D. TX, May 13, 2010 and May 26, 2010.  Rec. d. 561-1 and 2.  The latter of these orders expressly carved out of the limitations proceeding OPA claims, that is, claims that ultimately have come to be handled by the Gulf Coast Claims Facility ("GCCF"): "This injunction does not apply to any direct claims asserted against Petitioners under the Oil Pollution Act, 33 U.S.C.§ 2701, et seq." Rec. d. 561-2, p.4.

Plaintiffs have offered no evidence that TO failed to comply with the notice provisions of the Southern District's order or that the Court ordered notice is in fact deficient. Rather, they contend that the multi-focused program they seek is needed to correct some statement of the GCCF that is alleged to be "*potentially* inaccurate or confusing." Rec. d. 1126-1, 1-2 (emphasis added).  They do not specify which GCCF statement *might be* inaccurate or confusing, so, it is impossible to ascertain whether the solution they propose would redress the problem they perceive.

Moreover, the record that is before this Court demonstrates due regard for the rights of potential claimants.  This Court has prominently posted on its Deepwater Horizon web home page the fact that claims against TO must be filed by April 20, 2011. Most recently, the Court announced at its monthly status conference the April 20th monitions deadline and memorialized the reference in its minute entry.  Rec. d. 1083.

2

Unless the Court finds plaintiffs have carried their heavy burden to show that TO's notice regarding its limitation petition -- previously approved by Judge Ellison -- is legally deficient in some regard, and that such deficiencies would in fact be redressed by their proposed notice, plaintiff's motion should be denied.[1]

## II.   THE PROPOSED NOTICE IS INACCURATE AS A MATTER OF LAW AND CONFUSING.

As set out above, the Limitation Order expressly carves out any direct OPA claims against TO from any possible limitation of recovery. However, plaintiffs' proposed notice incorrectly suggests that *OPA claims* are encompassed in the Limitation Order and are subject to the monitions date. As such, the proposal is contrary to the Limitation Order itself.

Moreover, plaintiffs' proposed notice is also inconsistent with the OPA legislative regime. The notice states that

> **You Can Continue To File Claims with BP's Gulf Coast Claims Facility ("GCCF")**
>
> The federal lawsuit is separate from the claims process in BP's GCCF. You can participate in the federal lawsuit even if you already filed a claim with BP's GCCF. Filing the claim form will not prevent you from recovering money through BP's GCCF.
>
> Rec. d. 1126-3.

---

[1]   Plaintiffs' counsel may be free, within certain boundaries, to themselves solicit clients. Such advertisements are limited by Federal Rule 23 and State Bar Association ethical constraints. In the absence of a finding that the notice previously approved by Judge Ellison is deficient, and that any such deficiency would be cured by plaintiffs' proposal, this Court should decline the invitation to bless counsel's ads.

3

Presumably, the "federal lawsuit" referenced is the MDL and not the limitation action, which is the subject of the first two paragraphs of the written notice. Even so, the quoted section ignores the presentment requirements of the OPA and suggests that a plaintiff may file an OPA claim AND a federal lawsuit. But OPA mandates that "all claims . . . shall be presented first to the responsible party" (or, alternatively, to the Oil Spill Liability Trust Fund ("Fund") established pursuant to 26 U.S.C. § 9509). 33 U.S.C. §§ 2713(a) and 2701(11) (definition of "Fund"). If a claim is either denied or not paid within 90 days, only then may the claimant sue "the responsible party." Id § 2713(c). When either a responsible party or the Fund pays compensation to a claimant, that payor becomes subrogated to "all" causes of action "that the claimant has under any other law." *Id.* § 2715(a). Similarly, when a responsible party is held liable under OPA, the responsible party may seek contribution against third parties who may be liable "under another law." *Id.* § 2709. *See* Cameron International Corporation's Memorandum in Support of Motion to Dismiss (CA 10-4185), Rec. d. 1152-1.

But, OPA does not authorize claimants to pursue litigation against *both* statutory responsible parties (here, BP and certain other defendants) *and* third parties, and effectively assigns the claimants' causes of action under any other law for pursuit by responsible parties or the Fund. Thus, to the extent the proposed notice implies that a putative plaintiff may file suit *prior* to the exhaustion of the presentment of his claim to the GCCF, or without ever filing with the GCCF, the notice is contrary to both the express provisions of OPA and the comprehensive regime that it establishes. Any suggestion that a GCCF claim is somehow extraneous to the MDL is incorrect and may cause individuals to not file or not pursue a GCCF claim to their detriment.

4

Lastly, the proposed notice is also incorrect when it implies that filing a lawsuit is an option, regardless of whether the individual may have settled and released all of his claims in a final settlement with the GCCF. Any suggestion that a claimant may sue in the MDL after he has compromised his claims in the GCCF creates the potential for confusion.

## III.  CONCLUSION

Plaintiffs have offered no support for their claim that notice concerning the TO limitation petition is defective or that their proposal would remedy any perceived problem. Plaintiffs are not entitled to the Court's imprimatur for their advertisements and their motion should be denied.

Respectfully submitted,

David J. Beck, T.A.
    dbeck@brsfirm.com
Joe W. Redden, Jr.
    jredden@brsfirm.com
David W. Jones
    djones@brsfirm.com
Geoffrey Gannaway
    ggannaway@brsfirm.com

BECK, REDDEN & SECREST, L.L.P.
One Houston Center
1221 Mckinney, Suite 4500
Houston, TX 77010-2010
713-951-3700
713-951-3720 (fax)

Howard L. Murphy, 9844
    hmurphy@dkslaw.com
DEUTSCH, KERRIGAN & STILES
755 Magazine Street
New Orleans, Louisiana 70130
504-581-5141
504-566-4039

/s/ Phillip A. Wittmann
Phillip A. Wittmann, 13625
    pwittman@stonepigman.com
Carmelite S. Bertaut, 3054
    cbertaut@stonepigman.com
Keith B. Hall, 24444
    khall@stonepigman.com
Jared Davidson, 32419
    jdavidson@stonepigman.com

STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
504-581-3200
504-581-3361 (fax)

**ATTORNEYS FOR CAMERON
INTERNATIONAL CORPORATION**

5

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Opposition of Defendant Cameron International Corporation to Plaintiffs' *Ex Parte* Motion for Court Approval of Proposed Notice has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pre Trial Order # 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179 on this 16th day of February, 2011.

*/s/ Phillip A. Wittmann*
Phillip A. Wittmann

6

1046508v.1

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

|  |  |  |
|---|---|---|
| | * | |
| IN RE: OIL SPILL by the OIL RIG, | * | **MDL NO. 2179** |
| "DEEPWATER HORIZON" IN THE | * | |
| GULF OF MEXICO, on APRIL 20, | * | |
| 2010 | * | |
| | * | |
| Relates to: *B1 and B3 Bundle Cases* | * | **JUDGE BARBIER** |
| | * | |
| Relates to: No. 10-2771 | * | **MAG. JUDGE SHUSHAN** |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## REPLY BRIEF IN SUPPORT OF MOTION FOR COURT APPROVAL OF NOTICE

### Introduction

The Plaintiff Steering Committee has the right, and arguably the responsibility, to inform potential litigants of their legal rights, and the mechanism adopted by the Court for the protection and enforcement of same. While such notice is not *required* by either Rule F(4) of the Supplemental Rules for Admiralty and Maritime Claims nor Rule 23(d) of the Rules of Civil Procedure, it is nevertheless *consistent with* the desire that people be informed of deadlines and other procedural issues potentially affecting their legal rights, including particularly the monition date in a Limitation proceeding. The Plaintiff Steering Committee, out of an abundance of caution, wants to ensure that the notice (which they have a right, and arguably the responsibility, to provide) is clear, accurate and formally approved by the Court. To the extent that the Court might have concerns that inclusion of the formal Court Seal might be inappropriate, such modification of the proposed Notice falls squarely within the Court's discretion. But the PSC

believes that Court approval is necessary and appropriate to distinguish the PSC's proposed

Notice from the cacophony of potentially confusing law firm solicitations and messages from

other sources, such as the GCCF and BP. While objecting to the PSC's efforts to advise people

of the Limitation deadline and availability of the Short-Form Joinder, the defendants have failed

to come forward with any basis upon which the proposed Notice could not or should not be

*authorized* by the Court. For these reasons, and for the reasons further outlined below, the PSC's

Motion for Court Approval of Notice should be granted.

<div align="center">**Background**</div>

On February 8, 2001, the Plaintiffs Steering Committee moved on an expedited basis for

Court approval of a proposed notice advising potential litigants of the availability of the Short-

Form Joinder process utilizing the Direct Filing Short Form to enable claimants to join the

Limitation action without preparing a formal pleading or paying a filing fee (approved by the

Court in PTO No. 25) and to advise and remind claimants of the deadline for asserting these

claims of the April 20, 2011 monition date in the Transocean Limitation.  At Defendants'

request, this Court set Wednesday, February 16, 2011 as the filing deadline for any objections

thereto.

Magistrate Judge Shushan placed the notice on her agenda for initial discussion at her

regular February 11, 2011 Status Conference.  To provide context for this discussion, the PSC

submitted a letter brief to Judge Shushan, together with proposed texts of broadcast (TV and

radio) public service announcement spots to complement the previously submitted print notice,

as components of a comprehensive notice program.  A true copy of this February 10, 2011 letter

brief and attachments thereto is attached hereto as Exhibit 1.

During the February 11, 2011 Status Conference, interested parties were heard by the

Magistrate Judge with respect to the content of the notice and the notice program itself, and

Judge Shushan made initial suggestions to revise the print notice. True copies of the current versions of the proposed print notice and radio and TV spots, reflecting the Magistrate Judge's suggestions, are collectively attached hereto as Exhibit 2.

As of Wednesday, February 16, 2011, objections had been filed by Defendants Transocean, BP, and Cameron..[1] This Response addresses the points raised in these objections to the extent they are relevant to the notice at issue.

## RESPONSE TO TRANSOCEAN'S OBJECTION

Plaintiffs do not suggest that Transocean is required to provide further notice under Rule F(4).[2] The PSC, rather, seeks to provide notice, due to a pressing need to effectively inform thousands of persons, most of whom are unfamiliar with the admiralty rules or procedures, and are not likely to appreciate the ramifications of a "monition date" without more information, that an impending deadline effects, and may foreclose, important procedural and substantive rights. The obligation to provide this notice in a meaningful way runs deeper than any Rule or statute. Meaningful notice is a Due Process right, and this Court possesses the authority and discretion to authorize efforts to ensure that such notice is given.[3] The United

---

[1] Several "Oppositions" were also filed by plaintiffs' counsel in various actions. But it is not clear how those plaintiffs have standing to object, and the objections themselves are largely irrelevant to the issues at hand. The opposition filed by Mr. Becnel, for example, is a narrative casting himself in a central role in events related to this litigation. While Mr. Becnel's recitation of the facts is, at best, negligently inaccurate, and, at worst, intentionally misleading, the PSC declines to engage in a side-show diversion from the appointed task.

[2] It should be noted, of course, that these Rule F(4) notices are written in technical admiralty language and appeared as small print legal notices in various newspapers, most recently in June 2010 (seven months ago) long before the development and approval of the Short-Form Joinder and the issuance of PTO No. 25. [*See* Exhibits to BP Opposition]

[3] Indeed, this Court has affirmatively published notice of the monition deadline on its own MDL 2179 website. Such Court-administered websites are now common practice in MDLs, although no rule or statute expressly requires them, because MDL courts recognize that, in large cases such as this
*Footnote continued on next page*

States Supreme Court, in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950),

established the principle, transcending any particular type of action or proceeding, that "when

notice is a person's due, process which is a mere gesture is not due process.  The means

employed must be such as are desirous of actually informing the absentee might reasonably

adopt to accomplish it."  339 U.S. at 315.  That is the goal of the PSC's proposed Notice and

program.  As *Mullane* explains:

> An elementary and fundamental requirement of due process in any
> proceeding which is to be accorded finality is notice reasonably
> calculated, under all the circumstances, to apprise interested parties
> of the pendency of the action and afford them an opportunity to
> present their objections. [citations omitted]  The notice must be of
> such nature as reasonably to convey the required information
> [citation] and it must afford a reasonable time for those interested
> to make their appearance [citations].  But if with due regard for the
> practicalities and peculiarities of the case these conditions are
> reasonably met, the constitutional requirements are satisfied.

339 U.S. 306, 314-315.

*Mullane*, it should be noted, was not a class action; it involved a statutory notice to trust

beneficiaries regarding a bank trust fund.  The published notice to potential beneficiaries of a

settlement of the account, by publication in a local newspaper, set forth merely the name and

address of the trust company, the name and the date of establishment of the common trust fund,

and a list of all participating estates, trusts, or fund (which notice was in compliance with the

relevant state notice statute).  It complied with the state statute, but was held inadequate.[4]

---

*Footnote continued from previous page*
one, thousands of laypeople, many of whom are unrepresented, have an ongoing interest in, and should be
able to stay informed about, the proceedings.  It is a simple matter of access to information.  This Court's
MDL No. 2179 website is a tremendous resource; however, many claimants are as yet unaware of it.  One
of the functions of the proposed notice is to widely disseminate this website address to enable claimants
to keep apprised of ongoing proceedings in this litigation, including events in the Limitation Action.

[4] The published notice in *Mullane* ran for four consecutive weeks, in the back pages of a
local newspaper, in small print.  *Id.* at 310; *see also* Hillsee, Wheatman & Intrepido, *Do You
Really Want Me to Know My Rights?  The Ethics Behind Due Process in Class Action Notice Is*
*Footnote continued on next page*

*Mullane* and other early cases were the genesis of the notice requirement later embodied in

Rule 23, with respect to opt-out class actions, which currently provides for the rigorous yet

flexible standard of "the best notice that is practicable under the circumstances" and the content

requirement that the notice must communicate "clearly and concisely" "in plain, easily

understood language" the rights and options of class members.

That the *Mullane* meaningful notice principle was subsequently written into Rule 23 does

not mean that the *Mullane* standard, which was established independently of Rule 23 and arose

in a non-class action proceeding, is now limited solely to class actions.  To the contrary, it is a

principle that should be applied to any instance in which many persons, unaware of and/or

unsophisticated with respect the pendency of proceedings that nonetheless affect their procedural

rights and legal interests, should be informed of deadlines that foreclose these rights, and the

actions they can take to protect themselves.  Plaintiffs' notice program is intended to implement

these principles.

Regardless of Transocean's prior notice under Rule F(4), there has not been widespread

notice of the existence of the Direct Filing Short Form process described and approved by PTO

No. 25.  A pressing need remains to effectively inform thousands of persons, most of whom are

unfamiliar with the admiralty rules or procedures, and who are unlikely to have found, read or

understood the Transocean notice, or to appreciate, that an impending deadline effects, and may

foreclose, important procedural and substantive rights.

---

*Footnote continued from previous page*
*More Than Just Plain Language: A Desire to Actually Inform*, 18 Geo. J. Legal Ethics 1359 (Fall
2005).  The problem in *Mullane* was, *inter alia*, that many of the beneficiaries were not local,
and had no way to know that they should be looking in these back pages for a tiny print notice
that affected their economic rights.  That is why, without taking issue as to whether Transocean
has complied with Rule F(4) notice, Plaintiffs' notice program comprises TV and radio spots, as
well as print notices, that will run multiple times throughout the entire geographic area affected
by the spill and its sequelae, as well as in nationwide publications.

Court approval is requested because Plaintiffs recognize the inherent authority of this Court, together with its case management authority under the Federal Rules and the MDL statute, 1) to notify and inform claimants directly where their rights are at stake; and 2) to implement procedures approved by this Court in PTO No. 25 to streamline, facilitate, and render less expensive and more-cost effective, the exercise of their rights given the sheer numbers of claimants involved and the finite resources of the court.

Transocean argues that the proposed notice is "potentially misleading" in two specific respects.  Transocean objects to the inclusion in the notice of this Court's seal, and the phrase "Court Authorized Notice".  Plaintiffs submit that the inclusion of the seal is a matter for this Court's determination and discretion; we propose to include it to highlight the importance of the notice, and to differentiate it from lawyer advertising and other communication.  Similarly, use of the legend "Court-Approved Notice" is accurate with respect to the form of notice that is approved by the Court, and is normally included in such notices.

Transocean's Rule F(4) notice prominently displayed the Southern District of Texas caption, and that court's Clerk's signature. This was appropriate, as these notices were court-approved. It is similarly appropriate for the PSC's proposed notice to include the Court seal and "Court Authorized Notice" legend upon court approval. Indeed, these are simplified versions of the format used in the Transocean notices.

<div align="center">

**PLAINTIFFS' RESPONSE TO BP'S OBJECTIONS**

</div>

Plaintiffs addressed the better part of BP's argument in their February 10, 2011 letter to Magistrate Judge Shushan, attached hereto as Exhibit 1.  Not every notice as to which court approval may be sought falls under Rule 23; and the courts' authority to approve notice is not limited to class certification.  This Court has the inherent authority, the discretion under Rule 16,

912094.1                                              -6-

and the power to implement its own orders (such as PTO No. 25) by approving notice to

litigants.  Such notices are often resolved in non-class contexts, such as bankruptcy proceedings,

to provide due process notice to claimants of claims deadlines, voting deadlines, and other

affirmative actions that must be taken by a specified deadline to preserve a procedural right or

statute.  While, indeed, as this Court is well aware, Rule 23(d) specifically authorizes the Court

to send notice and provide information to putative class members before class certification,[5] this

is not a "class action notice" that is submitted in connection with a class certification motion,

does not involve an opt-out deadline, and does not take the place of, or preclude the necessity

for, a later class notice if and when any component of these MDL proceedings is certified as a

Rule 23 class.[6]

The proposed Notice is not "solicitation" (although the Steering Committee members

certainly have the right to engage in clear and accurate communication protected by the First

Amendment, subject to the Professional Rules).  BP disparages the notice program as "a lawyer's

solicitation", and argues that the F(4) notice given to date more than suffices.  As noted above,

under *Mullane* and due process/notice principles the F(4) notice alone, while it may comply with

---

[5] FED. RULE CIV. PRO. 23(d)(1)(B)(i) ("the court may issue orders that require – to protect class members and fairly conduct the action – giving appropriate notice to some or all class members of any step in the action"); *see, e.g., Puffer v. Allstate Ins. Co.,* 614 F. Supp.2d 905, 908-911 (N.D.Ill. 2009); *Sanft v. Winnebago Industries, Inc.,* 216 F.R.D. 453, 460 (N.D.Iowa 2003).

[6] If this notice were to be characterized as a class action notice, it would correlate with notices given prior to, or independent of, the class certification decision, by a court in its discretion to protect putative class members, such as a Rule 23(d) notice.  Rule 23(d)(1)(B) authorizes the Court to issue orders that "require—to protect class members and fairly conduct the action, giving appropriate notice to some or all class members of:  (i) any step in the action; (ii) the proposed extent of the judgment; or (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action."  The notice standards developed previously in the Rule 23 context, embodied comprehensively in the Federal Judicial Center's 2010 *Judges' Guide*, are appropriately applied to other notices of events that implicate claimants' rights, whether they are characterized as class action notices or otherwise, and the PSC has done so here.

admiralty and maritime requirements in a routine case, is not sufficient here to give actual and meaningful, as opposed to merely constructive notice. In this case, such notice is being provided at the initial expense of the PSC, not to solicit clients, but to apprise all potential claimants, whether they are represented by counsel or not, of important deadlines and steps they must take to protect their interests and enforce their rights. This is an appropriate and necessary function of the PSC under PTO No. 8, and it is an appropriate matter for the Court's attention and approval.

BP complains of inadequate information on the nature and scope of the notice program itself, and of the steps that the PSC's experts are ready, willing, and able to take to expedite, facilitate, and reduce expense in the filing of the Short-Form Joinders. Ms. Kinsella and her colleagues at Kinsella Communications have served as court-approved and court-appointed notice experts and providers in a number of actions in this District, including the *Katrina* cases, and *Turner v. Murphy Oil*. It would be virtually impossible to find a currently practicing notice provider with broader experience, or one more highly regarded than Ms. Kinsella, who is frequently consulted in a wide array of situations calling for notice by both defendants and plaintiffs alike.

BP has a number of specific objections to the language of the proposed notice itself. We submit that these have been met by the notice itself, specifically, in the current form attached as Exhibit 2, which incorporates the suggestions of Judge Shushan. The print notice, to be effective, cannot be a "fine print" notice with extensive legalese. It must be simple, straightforward, and direct. It must be capable of prominent placement in publications, and the broadcast spots must similarly be succinct and to the point.

Obviously, there are many technical aspects to the Limitation Action, and a fuller explication is appropriate.[7] That is the very reason for the website, which will contain all court orders, transcripts, and pertinent briefs to date, as well as a set of frequently asked questions ("FAQs") which can be updated on an ongoing basis. This is a public website, and Defendants, as well as claimants, may go online to determine whether this detailed information is accurate and complete. The website will be built as the published and print notice campaign unfolds, and Plaintiffs are happy to submit website content for this Court's approval.

The notice is not a solicitation of new clients by the PSC; indeed, as BP points out, if the PSC wished to mount a client solicitation campaign, it or its members could do so. Yet the content of such a campaign, while complying with ethical requirements, would doubtless look much different from the proposed notice, for one simple reason: the proposed notice is indeed intended to be disseminated under Court authorization (and *imprimatur*), because it seeks to perform what is essentially a court function, not a lawyer solicitation function. As such, the notice avoids the *Mullane*-rejected trap of fine print and legalese, and complies with the plain language and other standards recommended by the Federal Judicial Center in its *Judges' Guide* to notices.

The Defendants have not pointed to anything "misleading" in the notice, nor provided any reason why this Court cannot or should not approve of a notice submitted by the Plaintiffs'

---

[7] Both BP and some of the plaintiffs who filed Oppositions complain that the proposed Notice is potentially "misleading" based upon – not facts, but - their own contentions regarding complex and unsettled questions of law which are largely disputed by the Plaintiff Steering Committee. Such debate is not appropriate in the context of a notice advising potential litigants of a legal deadline and a procedural mechanism to protect and enforce their rights. Nor is it appropriate to provide "one-size-fits-all" declarations or recommendations to a universe of persons and businesses whose legal rights may ultimately determined in widely divergent ways based on the nature of their claims and circumstances. The existence of such uncertainty, rather, is – as it should be – noted in the proposed Notice, and further in the FAQ, along with the recommendation that people who are confused about their rights seek advice from an attorney.

Steering Committee (to be disseminated at its initial expense), informing people in the clearest, plainest, most straightforward possible language, of legal rights, and of deadlines, that no one can deny are of central import to the Limitation action and trial over which this Court presides.

BP attaches, to its objections, a brief colloquy from the October 15, 2010 status conference.  Much has transpired since then.  This Court has determined to conduct the Limitation Trial prior to class certification issues, and the PSC endorses that view, as reflected in Case Management Order No. 1.  This is but one of the many procedural determinations that renders this litigation far from a routine MDL, or a routine maritime and admiralty case.  That is why simple repetition of the previously-published F(4) notice by Transocean, which is BP's suggested alternative to the Court-approved notice program Plaintiffs propose, would not be adequate.

This litigation affects many more claimants, in many more places, and in many more economic, sociological, business, and property situations, than the routine admiralty or maritime case; indeed more than any such case to date.  It is thus of utmost importance that, as clearly and simply as possible, and as effectively as possible, these claimants be given direct, clear, and forthright notice in media and in language that is designed to reach them of basic steps they must take with respect to the Limitation Action.  It is for them to decide how to take such action: either by filing the Short-Form Joinder, or filing their own claim, in their own way, through their own lawyer.  The proposed Notice embraces and informs them of these possibilities and opportunities.

## PLAINTIFFS' RESPONSES TO CAMERON INTERNATIONAL CORPORATION'S OBJECTION

Cameron objects on the ground that plaintiffs have not proved the prior Rule F(4) notice was "legally deficient". But, as demonstrated above, this is not the basis for the new notice, nor is such a showing required. The new notice is appropriate because new and important information is now available regarding the form and manner in which claimants may exercise their joinder rights. This information did not exist when the Rule F(4) notice was published, and it should now be published, at least as widely. Today, through no fault of Transocean, it is the 2010 F(4) notices that are inaccurate, incomplete, and obsolete.

Cameron correctly notes this Court's "due regard for the rights of potential claimants" observing that this Court has posted the April 20, 2011 deadline on its Deepwater Horizon MDL home web page, at its Status Conferences, and in minute entry. In light of this acknowledgement that this information is of importance and a proper subject of dissemination by the Court, Cameron's objection to the even wider dissemination of the same information, in order to reach claimants who do not attend the status conferences and who are as yet unaware of the Court's website, is unfounded.

Cameron characterizes the Notice's statement regarding participation in both the federal lawsuit and the GCCF as "misleading" because it purportedly ignores the OPA presentment requirement. The Notice as originally submitted stated:

> There may be other requirements you have to fulfill to proceed with a lawsuit against BP and the other defendants. You may, for example, have to fulfill presentment requirements of the Oil Pollution Act.   [*See* Doc 1126-3]

Upon the suggestion of Judge Shushan, the "presentment" example has been deleted (see Exhibit 2 hereto) as technical/legalese that would not be meaningful to claimants, and better

suited to a fuller explanation on the website, *e.g.* in the FAQs. The PSC is happy to do either, or

both. The point is that Cameron's interpretation of the interaction of OPA, the GCCF, and the

MDL is not the only one, and indeed each defendant's contentions on these points, not to

mention plaintiffs' will diverge. Cameron's stated concern for claimants, that "any suggestion that

a GCCF claim is somehow extraneous to the MDL is incorrect and may cause individuals not to

file or not to pursue a GCCF claim to their detriment" is belied by the language of the notice

itself, which includes a bold headline: "You Can continue to File Claims with BP's Gulf Coast

Claims Facility ('GCCF')." The Notice is neutral: it does not, and should not, attempt to force a

choice between joinder and the GCCF. Instead, it appears to be defendants' wish to do so.

The Notice does not, as Cameron contends, create "the potential for confusion" *vis-a-viz*

the GCCF. Plaintiffs submit that it is BP's GCCF which has created confusion, of which many

claimants continue to complain. It is BP's GCCF that is requiring releases, and hence attempting

to force a choice between what should be unconditional interim payments and assertion of claims

in the MDL, (including claims against Defendants other than BP and for relief which the GCCF

has unambiguously refused to consider or recognize). While plaintiffs are requesting, in another

context - *i.e.,* the Supplemental Brief requested in this Court's February 2, 2011 Order and

Reasons regarding the Motion to Supervise - correction and transparency regarding the GCCF's

conduct and procedures, the proposed Notice was designed to be general, neutral and non-

dispositive regarding potentially complex and as-yet-unsettled questions of law.

**Conclusion**

The many thousands of individuals and entities affected by the Deep Water Horizon catastrophe face a looming deadline for joinder in the Transocean Limitation. The monition date of April 20, 2011 is fast approaching. These claimants must act affirmatively, to satisfy a technical requirement in admiralty, that affects their procedural and substantive rights. They are, for the most, not repeat players in admiralty suits, unsophisticated in the procedures and technicalities of this type of litigation, and they justly look to the Court and its appointed PSC to provide information in as clear and simple a manner as possible so that they may timely act and protect their rights.

This 18th day of February, 2011.

Respectfully submitted,

<table>
<tr><td>__/s/ Stephen J. Herman____</td><td>__/s/ James Parkerson Roy____</td></tr>
<tr><td>**Stephen J. Herman**, La. Bar No. 23129</td><td>**James Parkerson Roy**, La. Bar No. 11511</td></tr>
<tr><td>**HERMAN HERMAN KATZ & COTLAR LLP**</td><td>**DOMENGEAUX WRIGHT ROY & EDWARDS LLC**</td></tr>
<tr><td>820 O'Keefe Avenue</td><td>556 Jefferson Street, Suite 500</td></tr>
<tr><td>New Orleans, Louisiana 70113</td><td>Lafayette, Louisiana 70501</td></tr>
<tr><td>Telephone: (504) 581-4892</td><td>Telephone: (337) 233-3033</td></tr>
<tr><td>Fax No. (504) 569-6024</td><td>Fax No. (337) 233-2796</td></tr>
<tr><td>E-Mail: sherman@hhkc.com</td><td>E-Mail: jimr@wrightroy.com</td></tr>
<tr><td>*Plaintiffs Liaison Counsel*</td><td>*Plaintiffs Liaison Counsel*</td></tr>
</table>

## PLAINTIFFS' STEERING COMMITTEE

| | |
|---|---|
| Brian H. Barr<br>LEVIN, PAPANTONIO, THOMAS, MITCHELL,<br>ECHSNER & PROCTOR, PA<br>316 South Baylen St., Suite 600<br>Pensacola, FL 32502-5996<br>Office: (850) 435-7045<br>Telefax: (850) 436-6187<br>E-Mail: bbarr@levinlaw.com | Robin L. Greenwald<br>WEITZ & LUXENBERG, PC<br>700 Broadway<br>New York, NY 10003<br>Office: (212) 558-5802<br>Telefax: (212) 344-5461<br>E-Mail: rgreenwald@weitzlux.com |
| Jeffrey A. Breit<br>BREIT DRESCHER & IMPREVENTO<br>999 Waterside Drive, Suite 1000<br>Norfolk, VA 23510<br>Office: (757) 670-3888<br>Telefax: (757) 670-3895<br>E-Mail: jbreit@bdbmail.com | Rhon E. Jones<br>BEASLEY, ALLEN, CROW, METHVIN, PORTIS &<br>MILES, P. C.<br>218 Commerce St., P.O. Box 4160<br>Montgomery, AL 36104<br>Office: (334) 269-2343<br>Telefax: (334) 954-7555<br>E-Mail: rhon.jones@beasleyallen.com |
| Elizabeth J. Cabraser<br>LIEFF, CABRASER, HEIMANN &<br>BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111-3339<br>Office: (415) 956-1000<br>Telefax: (415) 956-1008<br>E-Mail: ecabraser@lchb.com | Matthew E. Lundy<br>LUNDY, LUNDY, SOILEAU & SOUTH, LLP<br>501 Broad Street<br>Lake Charles, LA 70601<br>Office: (337) 439-0707<br>Telefax: (337) 439-1029<br>E-Mail: mlundy@lundylawllp.com |
| Philip F. Cossich, Jr.<br>COSSICH, SUMICH, PARSIOLA & TAYLOR<br>8397 Highway 23, Suite 100<br>Belle Chasse, LA 70037<br>Office: (504) 394-9000<br>Telefax: (504) 394-9110<br>E-Mail: pcossich@cossichlaw.com | Michael C. Palmintier<br>deGRAVELLES, PALMINTIER,<br>HOLTHAUS & FRUGE<br>618 Main Street<br>Baton Rouge, LA 70801-1910<br>Office: (225) 344-3735<br>Telefax: (225) 344-0522<br>E-Mail: mpalmintier@dphf-law.com |
| Robert T. Cunningham<br>CUNNINGHAM BOUNDS, LLC<br>1601 Dauphin Street, P. O. Box 66705<br>Mobile, AL 36660<br>Office: (251) 471-6191<br>Telefax: (251) 479-1031<br>E-Mail: rtc@cunninghambounds.com | Paul M. Sterbcow<br>LEWIS, KULLMAN, STERBCOW & ABRAMSON<br>601 Poydras Street, Suite 2615<br>New Orleans, LA 70130<br>Office: (504) 588-1500<br>Telefax: (504) 588-1514<br>E-Mail: sterbcow@lksalaw.com |
| Alphonso Michael "Mike" Espy<br>MORGAN & MORGAN, P.A.<br>188 East Capitol Street, Suite 777<br>Jackson, MS 39201<br>Office: (601) 949-3388<br>Telefax: (601) 949-3399<br>E-Mail: mike@mikespy.com | Scott Summy<br>BARON & BUDD, P.C.<br>3102 Oak Lawn Avenue, Suite 1100<br>Dallas, TX 75219<br>Office: (214) 521-3605<br>Telefax: (214) 599-1172<br>E-Mail: ssummy@baronbudd.com |

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA 70726
Office: (225) 664-4193
Telefax: (225) 664-6925
E-Mail: calvinfayard@fayardlaw.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail: ervin@colson.com

Mikal C. Watts (PSC)
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail: mcwatts@wgclawfirm.com

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that the above and foregoing Reply Brief will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 18th day of February, 2011.

/s/ James Parkerson Roy and Stephen J. Herman

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL by the OIL RIG
       "DEEPWATER HORIZON" in the       MDL NO. 2179
       GULF OF MEXICO, on
       APRIL 20, 2010       SECTION J

THIS DOCUMENT RELATES TO
ALL CASES       JUDGE BARBIER
       MAG. JUDGE SHUSHAN

_____\

### OPPOSITION TO "PLAINTIFFS' *EX PARTE* MOTION FOR COURT APPROVAL OF PROPOSED NOTICE"

**NOW INTO COURT,** through undersigned counsel, comes the Plaintiff in the following case, to submit this Opposition to "Plaintiffs *Ex Parte* Motion for Court Approval of Proposed Notice":

1. Key West Tiki Charters, Inc. (S.D. Fla., 4:10-cv-10039).

On February 8, 2011, Plaintiffs' Liaison Counsel filed "Plaintiffs *Ex Parte* Motion for Court Approval of Proposed Notice". The Motion requested Court approval of a proposed written Notice, containing language "...*advising potential litigants of the availability of the Short-Form Joinder and of the April 20, 2011 monition date in the Transocean Limitation*". The Notice also instructed how to file a claim "*[t]o preserve your ability to recover money and other damages against Transocean and include your claim in this trial*....". For the reasons fully discussed below, the undersigned opposes Court approval of the proposed Notice.

It is important to note that Liaison's Motion (doc.1126) expressly states the PSC seeks "…
*Court approval of the notice…advising potential litigants of the availability of the Short-Form
Joinder and of the April 20, 2011 monition date in the Transocean Limitation.*" Despite this
statement in the Motion, the actual language contained in the proposed Notice relates to matters
not only beyond notifying the public of the monition date, but references procedures which
would subject limitation claimants to the jurisdiction of the PSC *via* a "master complaint" against
all other defendants. The pertinent language is as follows:

> "The Court has simplified the process to file your claim against
> Transocean. You need to file a claim form by April 20, 2011. ..***Filing
> this claim form will also join you in the master lawsuit that has been
> filed against BP and the other defendants.*** If you do not want to join
> this master lawsuit you will still need to file an answer and claim by
> April 20, 2011, in order to preserve your right to recover against
> Transocean". [*Emphasis supplied*]

As proposed, filing a claim against *Transocean* would "also join" the claimant in the "master
lawsuit". Anyone filing a claim against *Transocean* would, in effect, make the Plaintiffs'
Steering Committee his or her counsel, for both the limitation *and* as to all other defendants in
the master lawsuit. The actual language in the proposed Notice is not limited to notifying the
public of the monition date, but, rather, consists of a veiled attempt to make all limitation
claimants subject to the auspices of the PSC *via* a master complaint against all other defendants,
resulting in its gaining unwarranted common benefit fees, with a concomitant reduction of the
net recovery available to the claimants.

Furthermore, with respect to the PSC's proposed procedure of automatic joinder of a
limitation claimant to the "master complaint", the proposed Notice fails to provide adequate
disclosure concerning the scope and nature of the *de facto* representation of the claimant by the
PSC. For example, there is no written disclosure concerning attorney fees & expenses that would

be charged by the PSC against the claimant's recovery. Disclosure of fees & expenses is required

by *Rule 1.5*, of the *Louisiana Rules of Professional Conduct.* The Notice is unclear, misleading

and lacks full disclosure of the elements of the attorney client relationship. As this Honorable

Court stated in Order (doc.1098)

> This Court encourages and commends any claims process that will fairly,
> quickly, and efficiently resolve claims in this litigation. Innovative and
> thoughtful procedures are to be encouraged. Those procedures must,
> however, be fully transparent so that claimants can evaluate them
> appropriately. The Court recognizes and appreciates the enormity of the
> undertaking of Mr. Feinberg and does not intend to impede or interfere
> with his ability to fairly and efficiently process claims.

In reading His Honor's "Order and Reasons", *supra*, it seems clear the Court was concerned

about transparency of the procedures and communications between Mr. Feinberg *et. al.* and

claimants. Equally important, of course, is that the procedures proposed, and communication

from, the PSC to claimants "...be fully transparent so that claimants can evaluate them

appropriately". The Notice lacks the essential element of transparency.

The PSC's attempt to create a procedure to automatically direct limitation claimants into

a "master complaint" may needlessly undermine the work of Mr. Feinberg's office and the

GCCF. While the Court previously issued an Order implementing precautions relating to

communications between Mr. Feinberg *et. al.* and claimants, the Court stated it did not intend to

impede or interfere with his ability to fairly and efficiently process claims. The PSC's attempt to

establish a Court approved 'Master Complaint" procedure, under the guise of a Notice to alert

the public of a monition date, can be viewed as an attempt to enhance the PSC's common benefit

fees; since as more claims are resolved through the efforts of Mr. Feinberg's office, the fewer the

number of claims there will be for litigation which the PSC controls. The proposal in the Notice

to automatically join limitation claimants into a master lawsuit is likely to confuse claimants and impede the GCCF claims process.

In conclusion, the proposed language in the Notice is outside the scope of what was requested in the Motion---notification of the monition date; and the Notice provision adopting a "Master Complaint" procedure is misleading, lacking in mandatory and adequate disclosure and not transparent.

For the reasons noted above, the undersigned respectfully objects and requests that the suggested language of the Transocean Limitation Notice be denied.

Respectfully submitted

Dated: February 16, 2011

Peter J. Cambs, Sr.
Parker Waichman Alonso LLP
Attorney for Plaintiff
3301 Bonita Beach Road
Suite 101
Bonita Springs, Florida 34134
Telephone:     (239) 390-8602
Facsimile:     (239) 390-0055
E-Mail:        pcambs@yourlawyer.com
Attorney for Key West Tiki Charters, Inc

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing Motion will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12 and that the foregoing will be electronically filed with the Clerk of Court of

the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 16th day of February, 2011.

Peter J. Cambs, Sr.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the Oil Rig | * | MDL NO. 2179 |
| "DEEPWATER HORIZON: in the | * | |
| GULF OF MEXICO, on April 20, 2010 | * | |
| | * | |
| RELATES TO: B1 AND B3 BUNDLE CASES | * | |
| | * | JUDGE BARBIER |
| | * | MAG. JUDGE SHUSHAN |
| THIS DOCUMENT RELATES TO: | * | |
| Civil Action No. 10-2771 | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### TRANSOCEAN PETITIONERS' RESPONSE IN OPPOSITION
### TO PLAINTIFFS' PROPOSED NOTICE TO PUTATIVE LIMITATION CLAIMANTS

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Limitation Petitioners Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc. (hereinafter collectively referred to as "Transocean"), and file this their Response in Opposition to the Plaintiffs' Proposed Notice to Putative Limitation Claimants.

### TRANSOCEAN HAS TWICE COMPLIED WITH
### RULE F(4)'S NOTICE REQUIREMENTS

Rule F(4) of the Supplemental Rules for Admiralty or Maritime Claims (hereinafter "Supplementary Rules") provides for a notice procedure which has been followed in Limitation

of Liability cases at least since 1872, when notice was governed by Admiralty Rule 51.[1]   The

current Rule provides for a notice procedure that is so clear and simple that it is hardly surprising

that little case law on Supplemental F(4) exists.[2]   Rule F(4) provides that "the court shall issue a

notice to all persons asserting claims with respect to which the complaint seeks limitation,

admonishing them to file their respective claims with the clerk of the court and to serve on the

attorneys for the plaintiff a copy thereof on or before a date to be named in the notice . . . the

notice shall be published in such newspaper or newspapers as the court may direct once a week

for four successive weeks prior to the date fixed for the filing of claims." Fed. R. Civ. P. Supp.

Rule F(4).

In his Order of May 13, 2010, the Hon. Keith P. Ellison required Petitioners to issue and

publish notice of the limitation action and the monition in accordance with Rule F(4).

Transocean complied with Rule F(4) and the Court's Order.   After Judge Ellison's original

monition deadline was extended by Judge Barbier, Transocean republished its earlier additional

Notice for four consecutive weeks, without being ordered by the Court to do so.   There is no

need for further notice, and there is no statutory or Rule-based support for the Court to direct that

additional notice be provided under Rule F(4).

---

[1]   The General Admiralty Rules 54, 55, 56, and 57 (80 U.S. xiii) became Rules 51, 52, 53, and 54, with slight
amendments.  General Admiralty Rules 51-54, first promulgated by the Supreme Court on May 6, 1872, were
merged into the Civil Rules in 1966.  The current Rule F(4) was derived from the former Admiralty Rule 51.

[2]   Virtually all case law on Rule F(4) concerns the filing of late claims, not the content or frequency of publication
of the F(4) notice.

## THE PLAINTIFFS' PROPOSED NOTICE IS POTENTIALLYMISLEADING

The Plaintiffs' proposed Notice is potentially misleading for the following reasons:

1.  The proposed Plaintiffs' Notice contains the seal of the United States District Court for the Eastern District of Louisiana and thus inappropriately creates the impression that the Plaintiffs' proposed Notice is issued by or on behalf of the Court, when it is not; and

2.  The proposed Plaintiffs' Notice contains the statement "Court Authorized Notice" and thus inappropriately creates the impression that the Plaintiffs' proposed Notice is Court directed, when Rule F(4) does not authorize such additional Notice or the language in the Notice.

There is no statutory or Rule-based support for the Plaintiffs' proposed Notice. Accordingly, the issuance of such Notice with the Court's seal and as a "Court authorized Notice" should not be permitted under Rule F(4) of the Supplemental Admiralty Rules.

WHEREFORE, PREMISES CONSIDERED, Limitation Petitioners Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc., file this their Response in Opposition to, the Plaintiffs' Proposed Notice.

Respectfully submitted,


By:___/s/ Steven L. Roberts_____
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Teri L. Donaldson (Florida, No. 784310)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,
teri.donaldson@sutherland.com

By: ___/s/ Kerry J. Miller_____
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com

-and-
By: ___/s/ Edwin G. Preis, Jr._____
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Edward F. Kohnke, IV (Louisiana, No. 07824)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com,
efk@preisroy.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 054933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

*Counsel for Triton Asset Leasing GmbH.,
Transocean Holdings LLC, Transocean
Offshore Deepwater Drilling Inc. and
Transocean Deepwater Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 16th day of February, 2011, I electronically

transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for

filing and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

/s/  Kerry J. Miller

H

## IN RE: OIL SPILL by "Deepwater Horizon"

## DIRECT FILING SHORT FORM[1]

**Authorized by Order of the Court, Civil Action No. 10 md 2179 Rec. Doc. 982**
**(Copies of said Order having also been filed in Civil Actions No. 10-8888 and 10-2771)**

| MDL 2179 | SECTION: J | JUDGE CARL BARBIER |
|---|---|---|

### CLAIM IN LIMITATION--JOINDER IN MASTER ANSWER--INTERVENTION AND JOINDER IN MASTER COMPLAINTS – PLAINTIFF/CLAIMANT PROFILE FORM

By submitting this document, I am asserting a claim in *Complaint and Petition of Triton Asset Leasing GmbH, et al.*, No. 10-2771; adopt and incorporate the Master Answer [Rec. Doc. 244] to the *Complaint and Petition of Triton Asset Leasing Gmbh, et al.*, in No. 10-2771; and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 879] for private economic losses ("B1 Bundle") filed in MDL No. 2179 (10 md 2179); and/or intervene into, join and otherwise adopt the Master Complaint [Rec. Doc. 881] for post-explosion injuries ("B3 Bundle") filed in MDL No. 2179 (10 md 2179).

| Last Name | First Name | Middle Name/Maiden | Suffix |
|---|---|---|---|
| | | | |

| Phone Number | E-Mail Address |
|---|---|
| Address | City / State / Zip |

| INDIVIDUAL CLAIM ☐ | BUSINESS CLAIM ☐ |
|---|---|
| Employer Name | Business Name |
| Job Title / Description | Type of Business |
| Address | Address |
| City / State / Zip | City / State / Zip |
| Last 4 digits of your Social Security Number | Last 4 digits of your Tax ID Number |

| Attorney Name | Firm Name |
|---|---|
| Address | City / State / Zip |
| Phone Number | E-Mail Address |

| Claim filed with BP?   YES ☐   NO ☐ | Claim Filed with GCCF?:   YES ☐   NO ☐ |
|---|---|
| If yes, BP Claim No.: | If yes, Claimant Identification No.: |

**Claim Type (Please check all that apply):**

| | |
|---|---|
| ☐ Damage or destruction to real or personal property | ☐ Fear of Future Injury and/or Medical Monitoring |
| ☐ Earnings/Profit Loss | ☐ Loss of Subsistence use of Natural Resources |
| ☐ Personal Injury/Death | ☐ Removal and/or clean-up costs |
| | ☐ Other: |

---

[1] This form should be filed with the U.S. District Court for the Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana 70130, in Civil Action No. 10-8888. While this Direct Filing Short Form is to be filed in CA No. 10-8888, by prior order of the Court, (Rec. Doc. 246, C.A. No. 10-2771 and Rec. Doc. 982 in MDL 2179), the filing of this form in C.A. No. 10-8888 shall be deemed to be simultaneously filed in C.A. 10-2771 and MDL 2179. Plaintiff Liaison Counsel, after being notified electronically by the Clerk of Court of the filing of this Short Form, shall promptly serve this form through the Lexis Nexis service system on Defense Liaison.

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

**Brief Description:**

1. For earnings/profit loss, property damage and loss of subsistence use claims, describe the nature of the injury.  For claims involving real estate/property, include the property location, type of property (residential/commercial), and whether physical damage occurred.  For claims relating to fishing of any type, include the type and location of fishing grounds at issue.

2. For personal injury claims, describe the injury, how and when it was sustained, and identify all health care providers and employers 2008 to present and complete authorization forms for each.

3. For post-explosion claims related to clean-up or removal, include your role in the clean-up activities, the name of your employer, and where you were working.

2

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

**Please check the box(es) below that you think apply to you and your claims:**
**Non-governmental Economic Loss and Property Damage Claims (Bundle B1)**

☐ 1. Commercial fisherman, shrimper, crabber, or oysterman, or the owner and operator of a business involving fishing, shrimping, crabbing or oystering.

☐ 2. Seafood processor, distributor, retail and seafood market, or restaurant owner and operator, or an employee thereof.

☐ 3. Recreational business owner, operator or worker, including a recreational fishing business, commercial guide service, or charter fishing business who earn their living through the use of the Gulf of Mexico.

☐ 4. Commercial business, business owner, operator or worker, including commercial divers, offshore oilfield service, repair and supply, real estate agents, and supply companies, or an employee thereof.

☐ 5. Recreational sport fishermen, recreational diver, beachgoer, or recreational boater.

☐ 6. Plant and dock worker, including commercial seafood plant worker, longshoreman, or ferry operator.

☐ 7 Owner, lessor, or lessee of real property alleged to be damaged, harmed or impacted, physically or economically, including lessees of oyster beds.

☐ 8. Hotel owner and operator, vacation rental owner and agent, or all those who earn their living from the tourism industry.

☐ 9. Bank, financial institution, or retail business that suffered losses as a result of the spill.

☐ 10. Person who utilizes natural resources for subsistence.

☐ 11. Other: _____

**Post-Explosion Personal Injury, Medical Monitoring, and Property Damage Related to Cleanup (Bundle B3)**

☐ 1. Boat captain or crew involved in the Vessels of Opportunity program.

☐ 2. Worker involved in decontaminating vessels that came into contact with oil and/or chemical dispersants.

☐ 3. Vessel captain or crew who was not involved in the Vessels of Opportunity program but who were exposed to harmful chemicals, odors and emissions during post-explosion clean-up activities.

☐ 4. Clean-up worker or beach personnel involved in clean-up activities along shorelines and intercoastal and intertidal zones.

☐ 5. Resident who lives or works in close proximity to coastal waters.

☐ 6. Other: _____

Both BP and the Gulf Coast Claims Facility ("GCCF") are hereby authorized to release to the Defendants in MDL 2179 all information and documents submitted by above-named Plaintiff and information regarding the status of any payment on the claim, subject to such information being treated as "Confidential Access Restricted" under the Order Protecting Confidentiality (Pre-Trial Order No. 11), and subject to full copies of same being made available to both the Plaintiff (or his attorney if applicable) filing this form and PSC through Plaintiff Liaison Counsel.

_____
Claimant or Attorney Signature

_____
Print Name

_____
Date

3

*The filing of this Direct Filing Short Form shall also serve in lieu of the requirement of a Plaintiff to file a Plaintiff Profile Form.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | * | MDL NO. 2179 |
|     "DEEPWATER HORIZON" in the | * | |
|     GULF OF MEXICO, on | * | |
|     APRIL 20, 2010 | * | SECTION: J |
| | * | |
| | * | |
| | * | JUDGE BARBIER |
| | * | MAG. JUDGE SHUSHAN |

**************************************************

**THIS DOCUMENT RELATES TO ALL CASES**

**PRETRIAL ORDER #  8**

**APPOINTMENT OF PSC AND PLAINTIFF EXECUTIVE COMMITTEE**

Numerous applications/nominations for the Plaintiffs' Steering Committee (PSC) positions

have been filed in accordance with the procedures set forth in Pretrial Order #1. The Court, after

having reviewed the applications and carefully considered the matter, hereby appoints the following

members to the PSC:

- Brian H. Barr

- Jeffrey A. Breit

- Elizabeth J. Cabraser

- Philip F. Cossich, Jr.

- Robert T. Cunningham

- Alphonso Michael Espy

- Calvin C. Fayard, Jr.

- Robin L. Greenwald

1

- Ervin A. Gonzalez

- Rhon E. Jones

- Matthew E. Lundy

- Michael C. Palmintier

- Paul M. Sterbcow

- Scott Summy

- Mikal C. Watts

Additionally, the Court appoints Plaintiffs Liaison Counsel, James Parkerson Roy and Stephen J. Herman, together with Brian Barr and Scott Summy, to comprise the Plaintiff Executive Committee. It shall be the Executive Committee's duty to coordinate the responsibilities of the PSC, schedule PSC meetings, keep minutes or transcripts of these meetings, appear at periodic court noticed status conferences, perform other necessary administrative or logistic functions of the PSC, act on behalf of the PSC between PSC meetings, and carry out any other duty as the Court may order.

The appointment to the PSC and/or Executive Committee is of a personal nature. Accordingly, the above appointees cannot be substituted by other attorneys, including members of the appointees's law firm, to perform the PSC's exclusive functions, such as committee meetings and court appearances, except with prior approval of the Court. Furthermore, the appointment to the PSC and/or Executive Committee is for one year from the date of this Order. Appointees may apply to be reappointed when their term expires. If or when they reapply, their application should contain references to the nature and scope of their work on the PSC and/or Executive Committee, including the time and resources expended during the prior term.

2

litigation. All stipulations entered into by the PSC, except for strictly administrative details such as scheduling, must be submitted for Court approval and will not be binding until the Court has ratified the stipulation. Any attorney not in agreement with a non-administrative stipulation shall file with the Court a written objection thereto within five (5) days after he/she knows or should have reasonably become aware of the stipulation. Failure to object within the term allowed shall be deemed a waiver and the stipulation will automatically be binding on that party.

(3)   Explore, develop, and pursue all settlement options pertaining to any claim or portion thereof of any case filed in this litigation.

(4)   Maintain adequate files of all pretrial matters, including establishing and maintaining a document or exhibit depository, in either real or virtual format, and having those documents available, under reasonable terms and conditions, for examination by all MDL Plaintiffs or their attorneys.

(5)   Perform any task necessary and proper for the PSC to accomplish its responsibilities as defined by the Court's orders, including organizing sub-committees or workgroups comprised of plaintiffs' attorneys not on the PSC and assigning them tasks consistent with the duties of the PSC.

(6)   Perform such other functions as may be expressly authorized by further orders of this Court.

SIGNED this 8th day of October, 2010, New Orleans, Louisiana.

_____
United States District Judge

J

## UNITED STATE DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| In Re: | Oil Spill by the Oil Rig | : | MDL NO. 2179 |
| | "Deepwater Horizon" in the | : | |
| | Gulf of Mexico, on | : | SECTION:  J |
| | April 20, 2010 | : | |
| | | : | JUDGE BARBIER |
| This Document Relates to All Cases | | : | MAG. JUDGE SHUSHAN |

.. .. ..  .. .. ..  .. .. ..  .. .. ..  .. .. ..  .. .. ..  .. .. ..  .. .. ..  .. .. .. .

## STATEMENT OF UNITED STATES:
### HOLDBACKS ON GCCF PAYMENTS CONFLICT WITH OIL POLLUTION ACT

The Court has ordered the Gulf Coast Claims Facility ("GCCF") to contribute a

percentage of all its future settlement payments to an escrow fund, which ultimately could serve

as a corpus out of which common benefit fees could be distributed.  The GCCF is not operated

by a government official of any sort, and its decisions are in no way controlled by the

government.  *See also* 2/2/11 Order at 9 n.1.  The United States, however, has a significant

interest in the claims resolution procedures of the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C.

§§ 2701 *et seq*., and the fulfillment of the policies that underlie it.  Because the interpretation of

those provisions in the Court's December 28, 2011 order may have significant implications for

application of the OPA in this oil spill and in future ones, the United States respectfully notes

that holdbacks from GCCF settlement payments conflict with OPA.[1]

Under the OPA, a Responsible Party is required to establish and advertise a claims

process that, if successful, provides parties the opportunity to avoid lengthy litigation and

_____

[1] In addition to exempting the United States from the scope of the Court's Order (Docket No. 5022 at page 11), the Order also provides at page 10, "No amount will be held back or 'reserved' from State of Alabama or State of Louisiana recoveries that are non-monetary in nature.  Nor will any amount be held back or reserved from payments to a State directly from a Responsible Party to reimburse the State for ongoing response costs, increased agency costs related to response, or costs incurred through participation in the NRDA process."  Both Alabama and Louisiana, as well as other affected states, are the United States' co-trustees for natural resources injured as a result of the Gulf Oil Spill.  Accordingly, the United States understood, and presently understands, that the Court's intention is to exempt from the Holdback any recoveries for Natural Resource Damages ("NRD") pursuant to OPA, 33 U.S.C. § 2702(b)(2)(A).  If we are mistaken in that belief, we respectfully request the opportunity to address the issue in a short supplemental brief.

ensures fair compensation to those harmed by an oil spill. 33 U.S.C. § 2714(b). In turn, the

OPA requires claimants to present their claims of harm to the Responsible Party before they can

resort to litigation, *id.* § 2713(a), and provides 90 days during which the parties must seek to

resolve their claims before they may go to court. *Id.* § 2713(d). When an RP denies liability for

a claim or the parties are unable to reach agreement within 90 days, the claimant may either

present his or her claim in federal court or to the National Pollution Funds Center ("NPFC") for

payment from the Oil Spill Liability Trust Fund ("Fund"). *Id.* § 2713(c), (d). The OPA thus

establishes an extra-judicial resolution opportunity that is, in important ways, different from the

usual tort law process.

The OPA thus reflects a congressional response after the Exxon Valdez disaster and

ensuing litigation, to give those harmed by an oil spill two separate opportunities to avoid

litigation: a statutorily-mandated claims process with the RP, with incentives for both parties to

resolve claims efficiently rather than facing costly litigation that may reach the same result, and

for those whose claims are not resolved, the option of pursuing an administrative resolution in

the NPFC.[2] OPA provides that this last choice – submitting a claim with the NPFC rather than

filing suit – is entirely the claimant's.

Withholding a portion of the settlement funds provided to a claimant who affirmatively

declines to come before this Court by initiating or joining litigation, with the funds to be

deposited in a litigation related fund, is a significant alteration of the policies reflected in the

OPA. OPA is designed to provide a means for claimants to be fully compensated by the polluter

or the Fund without resorting to costly and time-consuming litigation; the Order here would

nevertheless tax litigation costs against those claimants. By reaching into the claims process and

---

[2]"The Principal concept of this bill is to provide ready and *complete* compensation for any party
suffering damages from the discharges of oil or hazardous substances. The Fund is to provide
compensation for damage claims *fully* and promptly." Senate Report 101-94: Committee on
Environment and Public Works, Sec. 10 (July 28, 1989) (emphasis supplied).

2

explicitly diminishing the amount possible to be realized by claimants, the withholding vitiates a significant benefit of avoiding litigation.

The order here may also upset the incentives that Congress created for claimants and Responsible Parties to resolve their claims through private settlements. Under the system of settlement incentives created under the OPA, just as a Responsible Party knows that it will ultimately have to reimburse the NPFC for payments made out of the Fund on proper claims that the Responsible Party refuses to settle, a claimant knows that if a Responsible Party offers the claimant his or her full losses, the claimant will do no better by pursuing the claim with the NPFC or in court. If a Responsible Party's offer to pay full losses is automatically reduced, claimants will have reason to reject an otherwise sufficient offer and pursue payment from the Fund. The Fund may then require more time to process and pay meritorious claims, and would ultimately have to proceed against the Responsible Party to obtain reimbursement for those payments. Such increased transaction time and cost are inconsistent with the goals of OPA.

To be clear, the United States has little insight into changes that the PSC may have achieved through whatever engagement it has had with the GCCF. The GCCF committed to the Attorney General that it would undergo an independent evaluation. The PSC provided suggestions to the Department of Justice regarding the content of that evaluation; but in that regard the PSC is no different from other private citizens and public officials who made similar suggestions – including the State Attorneys General who made a number of suggestions and now see their citizens' settlements potentially reduced by holdback.

## CONCLUSION

The OPA claims process is intended by Congress to discourage litigation. Common benefit fees should therefore not be taxed to OPA claims settlements at any time. Any other result discourages others from following the dictates of OPA, encourages litigation, and puts at risk some portion of the settlement proceeds of claimants who followed OPA's directions.

3

Dated: January 12, 2012

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

JAMES NICOLL
Senior Counsel
NANCY FLICKINGER
Senior Attorney
SARAH HIMMELHOCH
Senior Attorney
DEANNA CHANG
SCOTT CERNICH
A. NATHANIEL CHAKERES
JUDY HARVEY
MATT LEOPOLD
JEFFREY PRIETO
GORDON YOUNG
ABIGAIL ANDRE
Trial Attorneys

/s/ Steven O'Rourke
STEVEN O'ROURKE
Senior Attorney
U.S. Department of Justice
Environmental Enforcement Section
PO Box 7611
Washington, DC 20044
(202) 514-2779
steve.o'rourke@usdoj.gov

TONY WEST
Assistant Attorney General
Civil Division

PETER F. FROST
Director, Torts Branch, Civil Division
Aviation and Admiralty Litigation
STEPHEN G. FLYNN
Assistant Director
MICHELLE T. DELEMARRE
SHARON K. SHUTLER
JILL DAHLMANN ROSA
JESSICA SULLIVAN
JESSICA L. McCLELLAN
MALINDA LAWRENCE
DAVID J. PFEFFER
ROBIN HANGER
LAURA MAYBERRY
BRIENA STRIPPOLI
Trial Attorneys
U.S. Department of Justice
Torts Branch, Civil Division
P.O. Box 14271
Washington, D.C. 20044-4271
(202) 616-4100
(202) 616-4002 (fax)

/s/ R. Michael Underhill
R. MICHAEL UNDERHILL, T.A.
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
7-5395 Federal Bldg., Box 36028
450 Golden Gate Ave.
San Francisco, CA 94102-3463
(415) 436-6648
(415) 436-6632 fax
mike.underhill@usdoj.gov

4

JAMES LETTEN
United States Attorney

SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
Hale Boggs Federal Building
500 Poydras St., Suite B-210
New Orleans, LA 70130

Attorneys for the UNITED STATES OF AMERICA

K

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL-2179 |
| "DEEPWATER HORIZON" in the | | |
| GULF OF MEXICO, on | : | |
| APRIL 20, 2010 | | |
| | : | SECTION J |
| | | |
| | : | |
| | | |
| THIS DOCUMENT RELATES TO: | : | JUDGE BARBIER |
| | | MAG. JUDGE SHUSHAN |
| ALL ACTIONS | : | |

......................................................................................................................

**STATEMENT OF INTEREST BY THE STATE OF FLORIDA**
**RELATED TO THE DECEMBER 28, 2011 ORDER**

**COMES NOW** Pamela Jo Bondi, the Attorney General for the State of Florida

("Florida"), and responds to the Court's invitation (Doc. 5083) for additional briefing on the

applicability of the December 28, 2011 Order (Doc. 5022) to individuals and businesses that

presented their claims to the Gulf Coast Claims Facility ("GCCF") but have chosen not to join

this litigation. Although Florida has many concerns with the December 28th Order, as later

amended (Doc. 5064), this statement focuses on the limited issue currently before the Court; the

ability of the Plaintiffs' Steering Committee ("PSC") to take hundreds of millions of dollars out

of the pockets of the individual and business claimants who have decided to pursue non-litigation

recoveries through the claims process required by the Oil Pollution Act of 1990 ("OPA").

Florida respectfully submits that the PSC has no rightful claim on these GCCF payments.[1]

**I.    Introduction**

---

[1]  By the filing of this document, Florida does not acknowledge or waive its right to object to
federal jurisdiction over any potential action that may be filed as a result of the Deepwater
Horizon oil spill.  Nor does Florida acknowledge its support for or waive its right to object to the
transfer and consolidation of actions brought by any governmental entities into a single action
with all litigants having filed claims in connection with this matter.

The Attorneys General of the Gulf Coast states are entrusted with protecting the collective legal rights of their citizens and advocating for their state's interests and public policy concerns as a sovereign. *See*, *e.g.*, *State ex rel. Att'y Gen. v. Gleason,* 12 Fla. 90, 112 (Fla. 1869). As Florida's chief legal officer, the undersigned has numerous responsibilities related to the Deepwater Horizon oil spill and its impact on Florida's sovereign interests and the interests of its people, environment, and economy, including monitoring and seeking to improve the GCCF claims process, for the benefit of all affected Florida citizens and businesses. Attorney General Bondi has met with Mr. Feinberg on several occasions and offered detailed suggestions for improvements to the GCCF process (as have the other Gulf Coast State Attorneys General).

It has been the Gulf Coast State Attorneys General, along with the United States Department of Justice, who are responsible for any meaningful improvements to the GCCF claims process. The only change to the claims process that the PSC might claim some credit for involves language describing the GCCF's relationship with BP, a nonmonetary issue. Moreover, General Bondi repeatedly requested that the GCCF undergo an independent audit, an agreement ultimately obtained by the Department of Justice.[2] Once the independent audit was announced, it was the Gulf Coast State Attorneys General (and not the PSC) who worked with the Department of Justice to help define the scope and nature of the independent audit. In contrast to these prolonged, significant, and continuing efforts to improve the GCCF claims process, the PSC has directed its energies towards diverting claimants from the GCCF and into this litigation.

## II.    Overview

The GCCF operates the claims process required by OPA on behalf of BP, a responsible party for the *Deepwater Horizon* blowout. As General Bondi and the other Gulf Coast State

---

[2] The December 28th Order incorrectly states that the PSC, together with DOJ, "persuaded Mr. Feinberg to agree to such an audit." (Doc. 5022 at 5.) There does not appear to be any record support for this statement; in fact, the PSC has never made this argument in its filings.

Attorneys General have often said, a fair and efficient claims process is necessary to fulfill the Congressional intent and allow the prompt and full recovery of the Gulf Coast from this economic and environmental disaster. As Rep. Hammerschmidt explained in urging passage of OPA, it was "intended to allow for quick and complete payment of reasonable claims without resort to cumbersome litigation." 135 Cong. Rec. H7965 (daily ed. Nov. 2, 1989).

With OPA, Congress created a non-judicial claims process that allows parties damaged by an oil spill the opportunity to be made whole. The OPA process is intended to be straightforward, providing prompt compensation to claimants without the requirement of retaining a private attorney. The claims process contemplated by OPA is thus designed to maximize claimant recoveries, while avoiding the delay and expense of litigation. Of course, if claimants are unsatisfied with the amounts offered through the claims process, they can then pursue claims with the Oil Spill Liability Trust Fund or file litigation.[3] Under OPA, a strict liability statute, the liability for damages has already been established and the claims process allows the involved parties to determine the amount required to make the claimants whole.[4]

The common benefit fund proposed by the PSC would be funded by, *inter alia*, six percent (6%) of any settlements or payments by the GCCF to individuals or business claimants on or after December 31, 2011. (Doc. 5064.) The PSC has argued that the fund would provide a source of compensation for the "common benefit" work if it was unable to obtain compensation directly from the Defendants. (Doc. 4739 at 7.) While the PSC has claimed that the seized "holdback" funds might later be returned to claimants, in whole or in part (Doc. 5153 at 2), it has

---

[3] The PSC missed the point when it argues that "OPA creates a Federal cause of action which includes the claims process." (Doc. 5153 at 1.) The purpose of the OPA claims process is to allow claimants the opportunity to obtain full compensation without the need for litigation.

[4] On May 10, 2010, BP wrote a letter to the Gulf Coast State Attorneys General, confirming its intention to waive any liability cap under OPA; likewise, BP established a $20 billion fund to compensate claimants on June 16, 2010. These actions made the claimant recoveries far more certain; likewise, both actions predated the August 10, 2010 Transfer Order creating this MDL.

not acknowledged the uncertainty over when the case may be resolved, especially since the

*Exxon Valdez* litigation continued for almost twenty (20) years before the litigants were paid.

**III.    Argument**

**The PSC has failed to meet its burden of establishing entitlement to a preliminary injunction under Fed. R. Civ. P. 65**

An order requiring payment of money into an escrow account must satisfy Fed. R. Civ. P.

65.  Courts consistently apply Rule 65 in assessing motions to place funds into escrow accounts

or to otherwise freeze assets. *See, e.g., Janvey v. Alguire*, 647 F.3d 585, 600 n.9 (5th Cir. 2011)

(motion to freeze assets must satisfy "the usual elements necessary to obtain a preliminary

injunction"); *In re Vioxx Prods. Liab. Litig.*, 2012 WL 10548, *3 (E.D. La. Jan. 3, 2012).

Likewise, where there is a factual dispute over the benefit allegedly conferred on claimants by

the PSC, as there clearly is here, no preliminary injunction may issue without an evidentiary

hearing. *See PCI Transp. Inc. v. Fort Worth & W.R.R. Co.*, 418 F.3d 535, 546 (5th Cir. 2005).

The PSC has the burden of establishing its right to injunctive relief.  "Injunctive relief is

'an extraordinary and drastic remedy,' and should only be granted when the movant has clearly

carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009); *In re*

*Vioxx Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 60269, *70 (E.D. La. Aug. 7, 2008).  Injunctive

relief should only be granted when there is:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a
> substantial threat that plaintiff will suffer irreparable injury if the injunction is not
> granted, (3) that the threatened injury to plaintiff outweighs the threatened harm
> the injunction may do to defendant, and (4) that granting the preliminary
> injunction will not disserve the public interest.

*Anderson*, 556 F.3d at 360 (quotation omitted).  Importantly, these requirements are conjunctive;

injunctive relief "should not be granted unless the party seeking it has **clearly carried** the burden

of persuasion on **all** four requirements." *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5h Cir. 2003) (citation and internal quotation marks omitted, emphases added).

### 1.   The PSC has failed to demonstrate a substantial likelihood that it would prevail on the merits of its request for "common benefit" fees.

The PSC did not even attempt to establish the first of the Rule 65 requirements – a substantial likelihood that it will prevail on the merits of its underlying request to require the GCCF claimants to pay over a portion of their non-litigation recoveries.  There is a substantial barrier to any such result, yet the PSC has not addressed it.  The PSC has no likelihood of success for at least the following reasons:

### a.   The Court lacks the authority to award a "common benefit" fee from future GCCF payments.

The PSC has failed to show that the future GCCF payments to individual and business claimants constitute a "common fund" under the control of this Court and within its jurisdiction. To put it simply: the Court lacks jurisdiction over GCCF claimants who have not filed in the MDL.   While the Court has expressed concern over parties who "filed lawsuits or claims in the MDL, but then withdraw their claims once they have settled with the GCCF … [noting] such parties have likely benefitted from all of the common benefit work performed by the PSC" (Doc. 5022 at 6), such parties would represent only a small portion of the GCCF claimants that would suffer harm from the PSC's requested relief.  Without commenting on the merits of applying the holdback order to the few GCCF claimants who appeared in but then withdrawn from the MDL, there is certainly no legal justification for subjecting all GCCF claimants to such a penalty.

In an MDL proceeding, when the transferee court has jurisdiction over the defendants or plaintiffs, its jurisdiction only applies to cases that have been transferred. *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162 (4th Cir. 1992) ("*Showa Denko*") ("The

authority for consolidating cases on the order of the judicial panel on multi-district litigation,

however, is merely procedural and does not expand the jurisdiction of the district court to which

the cases are transferred."). In *Showa Denko*, the district court ordered contributions to a

common fund to reimburse attorneys for discovery costs; contributions were set as a percentage

of all settlements and judgments paid by the defendants from "actions venued in state courts,

untransferred federal cases, and **unfiled claims in which any MDL defendant is a party or**

**payor**." *Id.*, at 164 (emphasis added). The Fourth Circuit held that the portion of the order that

"compels contributions from … claimants who have **chosen not to litigate but to compromise**

**their claims outside of the court** . . . [is an] impermissible reach." *Id.*, at 166 (emphasis added).

Furthermore, the Fourth Circuit struck a section of the order that directed the defendant to

withhold and transfer the assessment for claimants due to the same "overreaching defect." *Id.*

The PSC attempted to bypass the clear jurisdictional barrier by proposing an order

directed at the Defendants instead of the nonparties. However, in *United States ex rel. Bogart v.*

*King Pharmaceuticals*, 493 F.3d 323, 329 (3d Cir. 2007), the Third Circuit rejected the claim

that the district court's jurisdiction over the defendant gave it the power to create a common fund

from the defendant's settlement with nonparties where the court lacked jurisdiction over the

nonparties. Without jurisdiction over these GCCF claimants, the Court should deny the PSC's

unprecedented request to seize funds from the future GCCF payments.

### b.   The PSC failed to show that its work created a common benefit for GCCF claimants.

The common, or substantial, benefit doctrine is founded upon the idea that the courts can

prevent unjust enrichment. *See Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir.

1977). It allows plaintiffs who secure a common benefit for a group to spread the costs of

litigation among the group; thus, the plaintiff who secured the benefit is not worse off than the

parties who obtained the benefit from the work. *See id.* It "reflects the traditional practice in courts of equity . . . [and] rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Moreover, the "common fund" doctrine only applies when the litigation produces an actual monetary fund under the Court's jurisdiction.

To recover fees under this doctrine, the PSC must show that its efforts were a success and conferred a common benefit. In the words of the Fifth Circuit, an "[a]ttorney's fee may . . . be awarded to a successful litigant whose success confers 'a substantial benefit' on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Rogers v. Air Line Pilots Ass'n, Int'l*, 988 F.2d 607, 616 (5th Cir. 1993) (quoting *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)).

In this MDL proceeding, the PSC has yet to demonstrate that its work has conferred, or will confer, a benefit onto GCCF claimants. The Order credits the PSC with results that were brought about independently of any PSC involvement and, often, would have had no effect on the monetary recoveries of GCCF claimants in any event. *See*, *e.g.*, *In re Vioxx Prods. Liab. Litig.*, 2012 WL 10548, *4 (E.D. La. Jan. 3, 2012) (denying holdback request due to the lack of a connection between work done by the PSC and the plaintiffs' recoveries).

The PSC posits that it is entitled to a common benefit assessment on GCCF recoveries, arguing that it is "reasonable to conclude, at this point, that the values of GCCF settlements are at least partially a function of the significant litigation risk that BP faces." (Doc. 5153 at 1-2.) However, BP's litigation risk does not affect GCCF payment sizes because, by structure and design, BP has no influence over the methods by which the GCCF calculates its settlements; moreover, as the Court has acknowledged, punitive damages are unavailable under OPA and

7

thus any "litigation risk" for BP or other defendants on non-OPA claims could not influence the
GCCF's payouts under an OPA claims process. A preliminary injunction requires that the PSC
provide concrete evidence of a tangible benefit to GCCF claimants, not wishful supposition.

The PSC Motion is replete with examples of claimed "common benefit" work that have
not and will not confer any benefit on GCCF claimants. Two particular examples are illustrative.
The PSC claims that it has spent considerable time and money on causation issues, like the
Limitation Trial. However, GCCF claimants are filing under an OPA claims process which is
strict liability in nature; claimants have no need to demonstrate the liability of BP and certainly
do not care about the liability of other Defendants. It is particularly troubling that GCCF
claimants who chose to stay out of court would have their payments withheld due to the claimed
expense of a lengthy trial that will not even remotely benefit them.

The PSC likewise boasts of its 15,500 square feet warehouse with 70 computers and
fulltime staffing. The only claimed benefit is that it allows the PSC to "be more effective and
more efficient; facilitate interaction; promote the exchange of ideas among the group; yield
better insight and strategies; and enable document review to maintain the pace required by the
Court's schedule." (Doc. 4507-1 at 9.) While a document depository might confer a benefit on
the litigants, it does not help GCCF claimants. The PSC claims that "[t]he experience of
centralizing common benefit work at the Depository has created an *esprit d'corp* and positive
morale that has made the relocation sacrifice more than worthwhile." *Id.* GCCF claimants
should not be forced to contribute hundreds of millions of dollars to boost the PSC's morale.[5]

---

[5] The December 28th Order also penalizes the numerous GCCF claimants who obtain
resolutions from the GCCF claims process without retaining counsel; in other words, claimants
who are trying to maximize their recoveries by not paying a contingency fee to counsel of their
choice would still see their recovery reduced to provide a source of funds for the PSC.

**2.   The PSC has failed to demonstrate that there was a substantial threat it
would suffer an irreparable injury without the holdback.**

The PSC has made no attempt to establish that there was a substantial threat it would

suffer an irreparable injury if the injunction had not been granted.  For purposes of a preliminary

injunction, an "injury is irreparable only if it cannot be undone through monetary remedies."

*Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008) (citation omitted).

Here, the PSC did not even attempt to meet its burden of showing that it lacked monetary

remedies. *See Vioxx*, 2008 U.S. Dist. LEXIS 60269, *59 ("Plaintiffs' potential rights to

reimbursement will not be impacted when interim payments are made to claimants and their

attorneys.").  Rather, it sought only a monetary remedy where injunctive relief is unavailable.

**3.   The PSC has failed to demonstrate that any threatened injury to its interests
outweighed the definite harm to GCCF claimants from the injunction.**

The PSC's Motion made no effort to establish that its threatened injury outweighed the

definite harm to GCCF claimants.  The GCCF process is part of an OPA-mandated claims

process that allows claimants the opportunity to be made whole.  Redirection of any portion of a

GCCF payment makes claimants less than whole.

The PSC, in contrast, did not even claim that denial of their requested injunctive relief

would injure its members.  One of the criteria for the selection of PSC members was the financial

wherewithal to fund and prosecute this litigation.  The injunctive relief should not have been

granted because the PSC failed to demonstrate that the threatened injury to its interests (if any)

outweighed the definite harm to GCCF claimants.

The only claims made by the PSC for financial hardship are underwhelming at best,

especially since the substantial financial contributions required for such litigation were known

from the start of the case.  In particular, the PSC has argued that "340 lawyers from ninety

9

different firms . . . contributed over $11.54 million in out-of-pocket held and shared expenses for the common benefit." (Doc. 4507-1 at 9.)  However, the PSC never indicated how many of the hours or how much of the costs related to GCCF issues.  To illustrate the incredibly aggressive nature of the hold back, the Court should consider the amount that would be placed into escrow from only the GCCF payments.  Between October 3, 2011 and January 3, 2012, the GCCF paid individuals and businesses approximately $521.0 million or $173.9 million a month.  If the GCCF continues to pay claims at that rate, the escrow account would receive around $10.4 million dollars a month from GCCF payments.  In little more than a month, the $11.6 million in claimed out-of-pocket expenses would be entirely covered by the GCCF payments alone.  If the PSC prevails in this litigation, a holdback based on the recoveries of actual litigants will provide more than adequate compensation without the need to reduce the recoveries of GCCF claimants.

### 4.      The injunction disserves the public interest.

Finally, the PSC has failed to discuss, much less establish, that granting the preliminary injunction would not disserve the public interest.  The Order, by taking money away from claimants, deprives the Gulf Coast economy of the urgently needed $10 million in payments a month.  If aspects of this litigation continue for a prolonged time, as in the *Exxon Valdez* litigation, hundreds of millions of dollars will be removed from the Gulf Coast's economy.

## IV.   Conclusion

The State of Florida's interest is to see that its citizens are protected, with the recovery from this environmental disaster taking place as soon as possible.  Allowing the PSC to take tens of millions of dollars from the individual and business claimants that have decided to pursue a non-litigation claims process frustrates that interest and is contrary to both law and public policy.

**Respectfully submitted**,

**PAMELA JO BONDI**
ATTORNEY GENERAL
STATE OF FLORIDA

BY: /s/ Russell S. Kent

PATRICIA A. CONNERS
Associate Deputy Attorney General
Florida Bar No. 361275
E-mail: trish.conners@myfloridalegal.com
RUSSELL S. KENT
Special Counsel for Litigation
Florida Bar No. 20257
E-mail: russell.kent@myfloridalegal.com

Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
Telephone: 850-414-3300

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Statement of Interest will be filed into the record using the Court's ECF system and will be served on all counsel through Lexis-Nexis File & Serve in accordance with Pretrial Order No. 12 on this 12th day of January 2012.

/s/ Russell S. Kent
Russell S. Kent

L

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUSIANA


IN RE: OIL SPILL by the OIL RIG          *     MDL NO. 2179
DEEPWATER HORIZON in the
GULF OF MEXICO, on                       *     SECTION:  J
APRIL 20, 2010
                                         *     JUDGE BARBIER

This Document Applies to All Cases       *     MAG. JUDGE SHUSHAN

**********************************************************************

AMENDED PRETRIAL ORDER NO. 41

[CASE MANAGEMENT ORDER NO. 3]

In order to continue to organize and manage this complex litigation as efficiently as possible, upon consideration of the briefs filed by certain parties regarding this matter, and after consultations with Liaison Counsel, Coordinating Counsel for the States, and Coordinating Counsel for the Interests of the United States and consideration of the observations provided during those consultations, the Court adopts this Case Management Order No. 3 with respect to the scope and structure of the Trial of Liability, Limitation, Exoneration, and Fault Allocation ("Trial") that is scheduled to commence, as previously ordered in CMO No. 1 and CMO No. 2, on February 27, 2012.

I.      TRIAL STRUCTURE

The Trial will address all allocation of fault issues that may properly be tried to the Bench without a jury, including the negligence, gross negligence, or other bases of liability of, and the proportion of liability allocable to, the various defendants, third parties, and non- parties with respect to the issues, including limitation of liability. The Trial will be conducted in at least three phases. Each phase will be comprised of the presentation of evidence and consideration of

attendant legal questions pertaining to specific issues that will be the focus of that phase as described below. The focus of the phases of Trial will be as follows:

**Phase One ["Incident" Phase]** of the Trial will address issues arising out of the conduct of various parties, third parties, and non-parties allegedly relevant to the loss of well control at the Macondo Well, the ensuing fire and explosion on the MODU DEEPWATER HORIZON on April 20, 2010, and the sinking of the MODU DEEPWATER HORIZON on April 22,2010, and the initiation of the release of oil from the Macondo Well or DEEPWATER HORIZON during those time periods (collectively, the "Incident"). Phase One will include issues asserted in or relevant to counterclaims, cross-claims, third-party claims, and/or comparative fault defenses as appropriate.

**Phase Two ["Source Control" Phase]** of the Trial will address Source Control and Quantification of Discharge issues. "Source Control" issues shall consist of issues pertaining to the conduct of various parties, third parties, and non-parties regarding stopping the release of hydrocarbons stemming from the Incident from April 22, 2010 through approximately September 19, 2010. "Quantification of Discharge" issues shall consist of issues pertaining to the amount of oil actually released into the Gulf of Mexico as a result of the Incident from the time when these releases began until the Macondo Well was capped on approximately July 15, 2010 and then permanently cemented shut on approximately September 19, 2010. Phase Two will include issues asserted in or relevant to counterclaims, cross-claims, third party claims, and/or comparative fault defenses, as appropriate.

**Phase Three ["Containment" Phase]** of the Trial will address issues pertaining to the efforts by various parties, third parties, and non-parties aimed at containing oil discharged as a result of the Incident by, for example, controlled burning, application of dispersants, use of

2

booms, skimming, etc.  Phase Three of the trial will also address issues pertaining to the migration paths and end locations of oil released as a result of the Incident as carried by wind, currents, and other natural forces and as affected by efforts to contain or direct this migration.

Phase Three will include issues asserted in or relevant to counterclaims, cross-claims, third party claims, and/or comparative fault defenses, as appropriate.

## II.  ORDER OF PROCEEDINGS IN THE TRIAL

**The order of trial in Phase One** will be as follows:

**First**, the Claimants, through the Plaintiffs' Steering Committee ("PSC"), the United States (through its Court Appointed Coordinating Counsel and its representatives), and the States (through the Court Appointed Coordinating Counsel for State Interests and his representatives), shall adduce factual and expert evidence in support of those parties' claims against all defendants.

**Second**, Transocean shall present factual and expert evidence on its exoneration, limitation, and liability defenses, as well as its counter- and cross- claims and third party claims against any third party 14(c) defendants.

**Third**, the third-party defendants shall present their factual and expert evidence in support of their defenses to plaintiffs' claims and any other defendants' counter- and cross-claims and third party claims against them, and in support of their counter- and cross-claims and third party claims against other defendants. The Court encourages third-party defendants to confer and reach agreement as to their sequence of presentation, failing which, the Court will enter an order regarding same.

**Fourth**, the PSC, the United States, and the States shall present their rebuttal

3

evidence.

The Court will enter orders at a later date regarding the sequence of proceedings for Phase Two and Phase Three of the Trial. The record will be held open between Phases of the Trial unless the Court determines it is appropriate to deem the record closed on the issues in a particular Phase because the record has been sufficiently developed to permit final rulings on those issues.

All parties shall present evidence relevant to a particular Phase during that Phase and should not expect they will be permitted to fill evidentiary gaps in one Phase by presentation of evidence in a subsequent Phase; provided, however, that there may be circumstances in which it is appropriate to present evidence in one phase that is relevant to another phase -- such as, but not limited to, where the evidence is relevant to more than one phase or where efficiency is best served by permitting evidence to be admitted in more than one phase.

## III.   FINAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court anticipates that it will direct the parties to submit proposed findings of fact and conclusions of law promptly after the conclusion of each Phase of the Trial and final proposed findings of fact and conclusions of law regarding all evidence and legal issues in the liability portion(s) of the Trial promptly after the conclusion of Phase Three of the Trial.

At the end of each Phase of the Trial and after consideration of the parties' submissions, the Court may decide to issue partial Findings of Fact and Conclusions of Law for that Phase if it deems the record adequately developed.   If the Court does not find it appropriate to enter Findings of Fact and Conclusions of Law with respect to any issues tried until the conclusion of all Trial Phases, the Court may defer issuing its Findings of Fact and Conclusions of Law until the conclusion of all phases of the liability and limitation trial.

4

## IV.   PRETRIAL PROCEEDINGS

Discovery and other pretrial proceedings for Phase One will continue to be conducted in accordance with the provisions of CMO No. 1 (Rec. Doc. 569), CMO No. 2 (Rec. Doc.1506), and other applicable Pretrial Orders, as the provisions of those Orders may be applied or modified by future orders of the Court and in conferences conducted by the undersigned or by Magistrate Judge Shushan.

After consulting with Plaintiffs' Liaison Counsel, Coordinating Counsel for the State Interests, Coordinating Counsel for the United States, and Defendants' Liaison Counsel, the Court will enter additional Pretrial Orders regarding the scope and schedule for discovery and other pretrial proceedings with respect to Phase Two and Phase Three of the Trial. Subject to further consideration and specification, the Court anticipates that discovery and other pretrial proceedings for Phase Two of the Trial and possibly for Phase Three of the Trial will likely need to be conducted concurrently with pretrial proceedings for and the conduct of Phase One of the Trial, and that discovery and other pretrial proceedings for Phase Three of the Trial will likely need to be conducted concurrently with pretrial proceedings for and the conduct of Phase Two of the trial.

The Trial will stand in recess between Phase One and Phase Two of the Trial and between Phase Two and Phase Three of the Trial. The Court will determine during Phase One of the Trial the length of the recess before commencement of Phase Two of the Trial, and will determine during Phase Two of the Trial the length of the recess before commencement of Phase Three of the Trial. The Court expects that discovery for Phases Two and Three of the Trial will be largely completed in advance of those Phases and therefore expects that the recesses will not be used primarily for discovery for Phases Two and Three.

5

**V.   SUPPLEMENTATION OF AND AMENDMENTS TO THIS ORDER**

The provisions of this Order are provisional and may be supplemented or modified either

sua sponte or on motion by any party as may become necessary.


New Orleans, Louisiana, this 21st day of September, 2011.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

M

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the GULF | * | |
| OF MEXICO, on APRIL 20, 2010 | * | |
| | * | SECTION J |
| Relates to: *All Cases* | * | |
| | * | JUDGE BARBIER |
| (Including No. 10-2771) | * | |
| | * | MAG. JUDGE SHUSHAN |
| ************************************* | * | |

**MOTION TO ESTABLISH**
**ACCOUNT AND RESERVE FOR LITIGATION EXPENSES**

**NOW INTO COURT**, on behalf of attorneys contributing common benefit time and expenses, the undersigned Plaintiffs' Co-Liaison Counsel and members of the Plaintiffs' Steering Committee respectfully move for an order establishing a court-supervised escrow account and reserve, for the reasons that follow:

**I.**

Since the inception of this litigation, over 300 lawyers from more than ninety different firms have invested over 230,000 hours and contributed over $11.54 million in out-of-pocket expenses for the common benefit of claimants, litigants and putative classmembers affected by the Macondo / *Deepwater Horizon* disaster.

**II.**

In accord with prevailing MDL practice, the PSC seeks an order requiring the Defendants to reserve a percentage of ongoing settlements, judgments or other payments, and to deposit same in a court-supervised escrow account, pending ultimate determination of common benefit fees and costs that may be awarded by the Court, (if any).

934299.1                                   -1-

## III.

The PSC does *not,* at this point, seek an actual common benefit fee or cost reimbursement award – only a reserve.

## IV.

Indeed, the PSC's ultimate goal is to recoup the costs of prosecuting this litigation directly from the Defendants, and to seek such payment in the form of a statutory fee award, class counsel fee award, separately negotiated fee, or combination thereof - payable optimally over and above any settlement payments made by or on behalf of Defendants.

## V.

This mechanism now sought, routine in MDL litigation, would simply preserve a fund from which, at an appropriate time, if and as necessary, the Court could make common benefit fee and/or cost reimbursement awards, (to the extent that such must be awarded from the settlements' corpus).

## VI.

The PSC proposes, in this regard, that the Defendants be required to deposit a reserve in an amount equal to six percent (6%) [1] of the gross amount of any settlement, judgment or other payment by or on behalf of a Defendant arising out of the Macondo / *Deepwater Horizon* incident and spill into the court-supervised escrow account.[2]

## VII.

As noted above, the PSC does *not* seek a common benefit cost and/or fee award of 6%,

---

[1] In light of the coordination and contributions between and among the PSC and other Common Benefit Attorneys and the State of Alabama, as well as the State of Louisiana, the PSC seeks a reserve of only four percent (4%) of any settlement, judgment or other payment to the State of Alabama or the State of Louisiana. Moreover, the PSC does *not* seek any hold-back at this time over settlements, judgments or other payments to the United States.

[2] Some or all of the reserve may be paid directly by the Defendant, over and above the plaintiff's recovery, depending on the nature and terms of the settlement, judgment or other payment at issue.

nor suggest that six percent (6%) will be an appropriate award for their work and/or cost contributions at the end of the day.

## VIII.

Indeed, the PSC recognizes that an appropriate award may be less (or more) than six (6%), and could conceivably vary, in light of the nature of the plaintiff, the type of recovery, timing issues, or other circumstances.

## IX.

The PSC seeks a reserve of six percent (6%) because, as shown in the accompanying PSC ANNUAL STATUS REPORT AND MEMORANDUM IN SUPPORT OF MOTION TO ESTABLISH ACCOUNT AND RESERVE FOR COMMON BENEFIT LITIGATION EXPENSES, this percentage is consistent with what has been widely approved other MDLs.

## X.

The PSC members earlier agreed to a voluntary reserve from the attorney fee portion of their clients' settlements, and will likewise place those funds into the court-supervised account.[3]

## XI.

A determination as to the propriety, source, appropriate amount, and allocation of any common benefit fee and/or cost reimbursement award (if any) should be reserved for another day.

This 7th day of November, 2011.

Respectfully submitted,

_____/s/ Stephen J. Herman_____          _____/s/ James Parkerson Roy_____

---

[3] The PSC's voluntary hold-back agreement relating to settlements or payments prior to the entry of an order by the Court would be superseded by this Court's Order with respect to any future settlements, judgments or other payments, should the present motion be granted.

**Stephen J. Herman**, La. Bar No. 23129
**HERMAN HERMAN KATZ & COTLAR LLP**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 569-6024
E-Mail: sherman@hhkc.com
*Plaintiffs' Liaison Counsel*

**James Parkerson Roy**, La. Bar No. 11511
**DOMENGEAUX WRIGHT ROY & EDWARDS LLC**
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233-3033
Fax No. (337) 233-2796
E-Mail: jimr@wrightroy.com
*Plaintiffs' Liaison Counsel*

## PLAINTIFFS' STEERING COMMITTEE

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office: (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER & IMPREVENTO
999 Waterside Drive, Suite 1000
Norfolk, VA 23510
Office: (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Office: (415) 956-1000
Telefax: (415) 956-1008
E-Mail: ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Office: (504) 394-9000
Telefax: (504) 394-9110
E-Mail: pcossich@cossichlaw.com

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY 10003
Office: (212) 558-5802
Telefax: (212) 344-5461
E-Mail: rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office: (334) 269-2343
Telefax: (334) 954-7555
E-Mail: rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA 70601
Office: (337) 439-0707
Telefax: (337) 439-1029
E-Mail: mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA 70801-1910
Office: (225) 344-3735
Telefax: (225) 344-0522
E-Mail: mpalmintier@dphf-law.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL 36660
Office: (251) 471-6191
Telefax: (251) 479-1031
E-Mail: rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail: mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA 70726
Office: (225) 664-4193
Telefax: (225) 664-6925
E-Mail: calvinfayard@fayardlaw.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail: ervin@colson.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Office: (504) 588-1500
Telefax: (504) 588-1514
E-Mail: sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Office: (214) 521-3605
Telefax: (214) 599-1172
E-Mail: ssummy@baronbudd.com

Mikal C. Watts (PSC)
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail: mcwatts@wgclawfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that the above and foregoing Motion will be filed into the record

*via* the Court's ECF electronic filing system and will be served on all counsel *via* Lexis-Nexis

File & Serve, pursuant to PRE-TRIAL ORDER NO. 12, this 7th day of November, 2011.

/s/ Stephen J. Herman and James Parkerson Roy

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the GULF | * | |
| OF MEXICO, on APRIL 20, 2010 | * | |
| | * | SECTION J |
| Relates to: *All Cases* | * | |
| | * | JUDGE BARBIER |
| (Including No. 10-2771) | * | |
| | * | MAG. JUDGE SHUSHAN |
| *********************************** | * | |

## PSC STATUS REPORT
## AND MEMORANDUM IN SUPPORT OF MOTION TO
## ESTABLISH ACCOUNT AND RESERVE FOR LITIGATION EXPENSES

934310.1

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ......................................................................... 1

II. THE RESPONSIBILITIES OF THE PSC UNDER PTO #8 ................. 4

III. REPORT ON THE PSC's WORK IN MDL NO. 2179 ....................... 7

    A. Organization ............................................................... 7

    B. PSC Document Depository ......................................... 9

    C. Document Discovery ................................................ 10

    D. Weekly Discovery Conferences ................................ 11

    E. Cooperation with Opposing Counsel ......................... 11

    F. Coordination Between and Among Plaintiffs' Counsel and Litigants

    G. Depositions ............................................................ 13

    H. Pleading Bundles .................................................... 13

    I. Short Form Joinders and Other Case Management Initiatives ................ 14

    J. Limitation Trial Structure ........................................ 14

    K. Experts ................................................................. 15

    L. Legal Analysis ....................................................... 15

    M. Protection of Putative Class Members ....................... 16

    N. Science ................................................................. 17

IV. THE PSC AND OTHER COMMON BENEFIT ATTORNEYS ARE ADVANCING COSTS AND INVESTING TIME ON A CONTINGENT BASIS ...................................................................................... 19

V. THE SOURCE AND APPLICATION OF THE COMMON BENEFIT DOCTRINE: PRINCIPLES, PRACTICES, AND EQUITIES........................... 21

VI. THE FEDERAL DISTRICT COURTS HAVE THE AUTHORITY AND DISCRETION TO ENTER "HOLD BACK" ORDERS UNDER THE COMMON BENEFIT DOCTRINE ...................................................... 22

VII. "UP FRONT" ASSESSMENTS AND "HOLD BACK" ORDERS.................... 28

VIII. THE COMMON BENEFIT DOCTRINE INCENTIVIZES CONTINGENT EFFORTS AND EXPENDITURES TO CONSERVE THE RESOURCES OF LITIGANTS......................................................... 31

IX. WHAT IS THE CUSTOMARY OR APPROPRIATE RANGE OF COMMON BENEFIT ASSESSMENTS?........................................... 32

**TABLE OF CONTENTS**
(continued)

X.     THE PSC's REQUEST TO ESTABLISH A COURT-SUPERVISED
       ACCOUNT IN THESE MDL AND LIMITATION PROCEEDINGS ............... 35

XI.    CONCLUSION ...................................................................................................... 37

## I.   INTRODUCTION

On August 10, 2010, the United States Judicial Panel on Multidistrict Litigation issued its

Transfer Order in MDL No. 2179, centralizing the federal Deepwater Horizon-related

proceedings in the Eastern District of Louisiana, and assigning them to the Honorable Carl J.

Barbier for coordinated or consolidated proceedings pursuant to 28 U.S.C. § 1407.  That same

day, August 10, 2010, this Court issued its Pre-Trial Order No. 1, setting an initial conference

and making foundational provisions for the overall case management of these proceedings.

Among these provisions was a procedure for the appointment, and description of the functions,

of Plaintiffs' Liaison Counsel and a Plaintiffs' Steering Committee.  (*See* Document 2, filed

08/10/10, pp. 12-19, ¶¶ 16-17).

On August 27, 2010, in its Pre-Trial Order No. 6 [Doc 110], this Court appointed James

Parkerson Roy and Stephen J. Herman as Plaintiffs' Co-Liaison Counsel, to additionally serve as

*ex efficio* members of the Plaintiff Steering Committee, and as members of a Plaintiffs'

Executive Committee.  On October 8, 2010, in its Pre-Trial Order No. 8, this Court appointed, as

members of the Plaintiffs' Steering Committee ("PSC"), the undersigned counsel.  This Order

also appointed Plaintiffs' Co-Liaison Counsel together with PSC members Brian Barr and Scott

Summy, to comprise the Plaintiff Executive Committee.[1]

The undersigned Co-Liaison Counsel and members of the PSC hereby respectfully

submit this comprehensive Status Report to report upon and describe the progress of the

litigation throughout the past year, including the time and resources they have expended in

fulfilling their court-designated responsibilities, and in prioritizing and advancing the claims and

---

[1] On October 5, 2011, in its Pre-Trial Order No. 46 [Doc 4226], and pursuant to the consideration
of said counsels' applications, this Court re-appointed Plaintiffs' Co-Liaison Counsel and the originally-
appointed members of the Executive Committee and the PSC, and added Joseph F. Rice and Conrad S.P.
Williams to the PSC.

interests of plaintiffs in these MDL/Limitation proceedings.

The undersigned additionally move for an Order establishing a Court-supervised account for litigation expenses, and directing Defendants to deposit into this account an amount equal to a specified percentage of every settlement, judgment or other payment to a plaintiff or putative class member in connection with claims arising out of the Macondo / *Deepwater Horizon* disaster. This "hold back" mechanism, now routine in MDL litigation, will preserve a fund from which, at an appropriate time, if and as necessary, the Court may make common benefit fee and cost awards, (if any).[2]

The PSC does not, at this point, seek an actual common benefit fee or cost reimbursement award – only a reserve.

Indeed, the PSC's ultimate goal is to recoup the costs of prosecuting this litigation directly from the Defendants, and to seek such payment in the form of a statutory fee award, class counsel fee award, separately negotiated fee, or combination thereof - payable optimally over and above any settlement payments made by or on behalf of Defendants.

This mechanism now sought, routine in MDL litigation, would simply preserve a fund from which, at an appropriate time, if and as necessary, the Court could make common benefit fee and/or cost reimbursement awards.

---

[2] *See In re Vioxx Prod. Liab. Litig.* (MDL No. 1657), 760 F.Supp.2d at 654; *In re Zyprexa Prod. Liab. Litig.* (MDL No. 1596), 467 F.Supp.2d 256, 261-263 (E.D.N.Y. 2007); *In re Diet Drugs ("Phen-Fen") Prod. Liab. Litig.* (MDL No. 1203), 563 F.Supp.2d 442, 457-58, 491-96 (E.D.N.Y. 2008), *affirmed*, 582 F.3d 524 (3d Cir. 2009); *In re Yasmin & Yaz Mktg., Sales Practices and Prods. Liab. Litig.* (MDL No. 2100), 2010 U.S.Dist. LEXIS 22361, *9 (S.D.Ill. 2010) (8% assessment represents a hold back); *In re Medtronic, Inc. Implantable Defibrillators Prod. Liab. Litig.* (MDL No. 1726), 2008 U.S. Dist. LEXIS 122868 (D.Minn. 2008).

The PSC proposes, in this regard, that the Defendants be required to deposit a reserve in an amount equal to six percent (6%)[3] of the gross amount of any settlement, judgment or other payment by or on behalf of a Defendant arising out of the Macondo / *Deepwater Horizon* incident and spill into the court-supervised escrow account.[4]

As noted above, the PSC does *not* seek a common benefit cost and/or fee award of 6%, nor suggest that six percent (6%) will be an appropriate award for their work and/or cost contributions at the end of the day.

Indeed, the PSC recognizes that an appropriate award may be less (or more) than six percent (6%), and could conceivably vary, in light of the nature of the plaintiff, the type of recovery, timing issues, or other circumstances.

The PSC seeks a reserve of six percent (6%) because, (as shown in Section IX of this Memorandum), this percentage is consistent with what has been widely approved other MDLs.

The PSC members earlier agreed to a voluntary reserve from the attorney fee portion of their clients' settlements,[5] and will likewise place those funds into the court-supervised account.[6]

---

[3] In light of the ongoing and substantial coordination and contributions between and among the PSC and other Common Benefit Attorneys and the State of Alabama, as well as the State of Louisiana, the PSC seeks a reserve of only four percent (4%) of any settlement, judgment or other payment to the State of Alabama or to the State of Louisiana. Moreover, the PSC does *not* seek any hold-back at this time over settlements, judgments or other payments to the United States.

[4] Some or all of the reserve may be paid directly by the Defendant, over and above the plaintiff's recovery, depending on the nature and terms of the settlement, judgment or other payment at issue.

[5] It is, of course, the PSC's preference that any common benefit award not paid directly by Defendants be imposed on the contingent attorney fee portion of any recovery, to the extent it is practicable and equitable to do so.

[6] The PSC's voluntary hold-back agreement relating to settlements or payments prior to the entry of an order by the Court would be superseded by this Court's Order with respect to any future settlements, judgments or other payments, should the present motion be granted.

934310.1                              -3-

A determination as to the propriety, source, appropriate amount and allocation of any common benefit fee and/or cost reimbursement award (if any), should be reserved - pursuant to a transparent process, including notice and hearing, such as that described in Judge Fallon's *Vioxx* common benefit fee award and allocation decisions[7] - for another day.

## II.   THE RESPONSIBILITIES OF THE PSC UNDER PTO 8

This Court's October 8, 2010 Pre-Trial Order No. 8 provided and directed as follows, with respect to the duties and responsibilities to be undertaken by the PSC:

"The PSC will have the following responsibilities:

Discovery

(1)   Initiate, coordinate, and conduct all pretrial discovery on behalf of plaintiffs in all actions which are consolidated with the instant multi district litigation.

(2)   Develop and propose to the Court schedules for the commencement, execution, and completion of all discovery on behalf of all plaintiffs.

(3)   Cause to be issued in the name of all plaintiffs the necessary discovery requests, motions, and subpoenas pertaining to any witnesses and documents needed to properly prepare for the pretrial of relevant issues found in the pleadings of this litigation. Similar requests, notices, and subpoenas may be caused to be issued by the PSC upon written request by an individual attorney in order to assist him/her in the preparation of the pretrial stages of his/her client's particular claims.

(4)   Conduct all discovery in a coordinated and consolidated manner on behalf and for the benefit of all plaintiffs.

Hearings and Meetings

---

[7] *See In re Vioxx Prods. Liab. Litig.* (MDL No. 1657), 760 F.Supp.2d 640 E.D.La. 2010). *See also, In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 227, 234 (5th Cir. 2008).

(1) Call meetings of counsel for plaintiffs for any appropriate purpose, including coordinating responses to questions of other parties or of the Court. Initiate proposals, suggestions, schedules, or joint briefs, and any other appropriate matter(s) pertaining to pretrial proceedings.

(2) Examine witnesses and introduce evidence at hearings on behalf of plaintiffs.

(3) Act as spokesman for all plaintiffs at pretrial proceedings and in response to any inquiries by the Court, subject of course to the right of any plaintiff's counsel to present non-repetitive individual or different positions.

Trial

(1) Coordinate trial team(s)'s selection, management and presentation of any common issue, "bellwether" and/or "test" case trial(s).

Miscellaneous

(1) Submit and argue any verbal or written motions presented to the Court or Magistrate on behalf of the PSC as well as oppose when necessary any motions submitted by the defendant or other parties which involve matters within the sphere of the responsibilities of the PSC.

(2) Negotiate and enter into stipulations with Defendants regarding this litigation. All stipulations entered into by the PSC, except for strictly administrative details such as scheduling, must be submitted for Court approval and will not be binding until the Court has ratified the stipulation. Any attorney not in agreement with a non-administrative stipulation shall file with the Court a written objection thereto within five (5) days after he/she knows or should have reasonably become aware of the stipulation. Failure to object within the term allowed shall be deemed a waiver and the stipulation will automatically be binding on that party.

(3) Explore, develop, and pursue all settlement options pertaining to any claim or portion thereof of any case filed in this litigation.

(4) Maintain adequate files of all pretrial matters, including establishing and maintaining a document or exhibit depository, in either real or virtual format, and having those

> documents available, under reasonable terms and
> conditions, for examination by all MDL Plaintiffs or their
> attorneys.
>
> (5)   Perform any task necessary and proper for the PSC to
>       accomplish its responsibilities as defined by the Court's
>       orders, including organizing subcommittees or workgroups
>       comprised of plaintiffs' attorneys not on the PSC and
>       assigning them tasks consistent with the duties of the PSC.
>
> (6)   Perform such other functions as may be expressly
>       authorized by further orders of this Court."

PRE-TRIAL ORDER NO. 8, pp.3-4.

In its October 8, 2010 Pre-Trial Order No. 9, this Court issued specific and detailed

provisions for common benefit time and expense submissions, including task and activity codes

and forms. The undersigned, and other common benefit attorneys, have duly and regularly

submitted their time and cost reports to CPA Phil Garrett of Garrett and Company, who has

collected, corrected, and complied them. These are available to the Court at any time for its *in

camera* review.

As the *Manual*, the courts (including the Fifth Circuit), and commentators recognize,

contemporary multi-party litigation, including multi-district litigation, cannot function fairly and

efficiently without court designation of leadership (typically lead or liaison counsel and counsel

committees) to organize, coordinate, and conduct the work of common discovery, trial

preparation, and, as in this MDL, the trial itself.[8] On the plaintiffs' side, courts are advised to

designate, as this Court did in its Pre-Trial Order No. 8, a leadership group with the varied skills,

experience, resources, and attributes necessary to the vigorous prosecution of all plaintiffs'

common interests. This role transcends the traditional attorney-client role. As the *Manual*

observes, "counsel designated by the court also assume a responsibility to the court and an

---

[8] *See, e.g, MCL 4th*, §§ 10.22-10.225.

obligation to act fairly, efficiently, and economically in the interests of all parties and parties' counsel."[9]

## III.    REPORT ON THE PSC's WORK IN MDL NO. 2179

### A.    Organization

Even prior to the formal appointment of the PSC Order Pre-Trial Order No. 8, the acting Co-Liaison Counsel put in place a series of working groups, later finalized by the PSC. Co-Liaison and the PSC have been directing and coordinating their efforts ever since.

In order to perform and complete the extensive work necessary to prepare for the Limitation Trial and the other proceedings within the MDL and otherwise surrounding the Macondo / *Deepwater Horizon* incident and claims, the PSC has enlisted the assistance of a number of plaintiffs' counsel, from highly respected firms across the country, who represent plaintiffs in these proceedings and/or claimants in the GCCF process, and has organized these common benefit attorneys into Common Benefit Work Groups, which include, *inter alia*:

**Administrative Work Groups**
Depository
Privilege
Electronic Discovery
Summaries

**Legal Research & Writing Work Groups**
Maritime & Limitation Law & Briefing
Briefing (general)
Master Complaints (oversight)
B1 Master Complaint
RICO Work Group
B3 Master Complaint
Regulatory / Injunctive Work Group

---

[9] *MCL 4th*, § 10.22.

**Written Discovery**
BP/MOEX/Anadarko
Transocean
Halliburton
M1-Swaco
Schlumberger
Weatherford
Cameron
Third Party

**Science, Environmental and Damages Work Groups**
Economic Models / Property Damages
Science & Experts
Sampling & Testing
Environmental Impact
Ecological Impact
Medical Monitoring

**Jurisdiction**
BP PLC
Mitsui
Triton

**Deposition and Trial Prep Teams**
Phase One Liability Depo Team
Phase One Liability Expert Teams (by expert)
Phase One Liability Depo Cut Team
Phase Two Liability Depo Team
Document Review Team

**Punitive Damages**
Corporate Culture & History

**Insurance**

**GCCF**

These working groups are comprised of 45 formal Work Group Coordinators, (of whom

33 are from non-PSC firms), and 83 formal Work Group Members, (of whom 69 are from non-

PSC firms). These firms devote their time, and incur significant out-of-pocket expense, to

conduct the common benefit work essential to the prosecution of these MDL proceedings.

934310.1                                    -8-

In all, 340 lawyers from ninety different firms have invested over 230,000 hours and contributed over $11.54 million in out-of-pocket held and shared expenses for the common benefit of claimants and litigants affected by the Macondo / *Deepwater Horizon* disaster.[10]

### B.   PSC Document Depository

The prodigious task of document review, analysis, and case management has been headquartered at the MDL 2179 PSC Depository, located near the federal courthouse at the URS Building, 600 Carondolet Street, New Orleans, Louisiana. The PSC Depository encompasses the entire eighth floor, an area of approximately 15,500 square feet, encompassing conference and "war" rooms, offices, and over 70 dedicated computer workstations staffed on a fulltime basis. Very early on, the PSC unanimously decided to require document review and analysis, and other essential work, to be done **in person, by lawyers, at the Depository**, rather than remotely. The PSC recognized that this on-site, in-person approach involved personal sacrifice and inconvenience on the part of the PSC members and their staff. Experience has borne out the prediction that a collective real time, in-person approach would be more effective and more efficient; facilitate interaction; promote the exchange of ideas among the group; yield better insight and strategies; and enable document review to maintain the pace required by the Court's schedule. The experience of centralizing common benefit work at the Depository has created an *esprit d'corp* and positive morale that has made the relocation sacrifice more than worthwhile. We believe this approach, namely the Depository itself, a true headquarters and review center of the common benefit effort, (in effect the PSC "law firm" office), may be unique in current MDL

---

[10] In addition, the PSC members and other Common Benefit Work Group Members and Coordinators have incurred approximately $1.5 million in unpaid expenses, which are still being processed. At the same time, PSC members and other Common Benefit Attorneys have contributed and additional $1.8 million to a joint account for payment of further shared expenses, as incurred.

practice. It has become a giant "war room" manned on a daily basis since opening in December 2010.

### C.   Document Discovery

Document discovery is frequently an area of delay and frustration in MDL proceedings. This litigation, by contrast, has enjoyed the intensive and expeditious production of millions of pages of documents, enabling the litigation to proceed toward the deposition phase, and to trial in February 2012, on a timely basis. As of October 2011, the PSC had loaded approximately 15.7 million pages of documents into iConnect. (At least 20 million pages of additional documents produced by the U.S. are yet to be loaded.) More documents arrive on a daily basis. (In addition, the PSC and other Common Benefit Attorneys have collected, indexed and produced over 10,000 articles and other materials, as well as voluminous reliance documents in association with the Phase One Liability Expert Reports.) The PSC has utilized over 70 document reviewers and analysts, including PSC members, members of their firms, and other Common Benefit Attorneys, to review and analyze all documents, with a particular emphasis on the review of relevant custodial files produced in preparation for depositions.[11]

---

[11] For example, as of October 2011, the following subtotals, in pages of documents, had been received from defendants and third parties:

| Party | Pages |
|---|---|
| Add Energy | 161,722 |
| Am. Bur. Shipping | 5,606 |
| Anadarko | 159,904 |
| Baker Risk | 57,849 |
| BP | 4,929,739 |
| Cameron | 387,276 |
| Dril-Quip | 52,950 |
| Halliburton | 765,375 |
| M-I Swaco | 83,086 |
| ModuSpec | 12,320 |
| MOEX | 229,969 |

### D.   Weekly Discovery Conferences

Among the case management innovations implemented by the court which have proven to be of immense value to the efficient and cost-effective progress of these proceedings toward trial, and to which the PSC has dedicated intensive and ongoing effort, is that of regular weekly discovery conferences. To date, Magistrate Judge Shushan has presided over weekly Friday Discovery Conferences, and has issued around 100 Orders (including 25 working group Conference Orders) for the conduct of document and deposition discovery in these proceedings. As a result of the efforts of the PSC, and of U.S. and States' Coordinating Counsel, working in an atmosphere of good faith and civility with opposing counsel, under the continuous and ongoing guidance of the Court, through the hands-on management of the Magistrate Judge, stipulations and accommodations have been reached; expedited procedures have been developed; and the spirit of professionalism and cooperation called for by the *Manual For Complex Litigation* has prevailed.[12]

### E.   Cooperation with Opposing Counsel

The PSC recognizes that the "added demands and burdens of complex litigation place a premium on attorney professionalism" including the need to act as "advocates in a manner that will foster and sustain good working relationships among fellow counsel and the court," and to

| | |
|---|---|
| Trans | 6,406,718 |
| USA | 1,894,443 |
| Weatherford | 134,742 |
| Wild Well Control | 128,656 |
| Other Third Parties | 311,159 |
| **TOTAL** | **15,721,608** |

[12] *See, e.g., Manual For Complex Litigation, Fourth* (Federal Judicial Center 2004) (hereinafter "*MCL 4th*" or "*Manual*") § 10.21 Responsibilities in Complex Litigation: "...complex litigation places greater demands on counsel in their dual roles as advocates and officers of the court. The complexity of legal and factual issues makes judges especially dependent on the assistance of counsel" to make the litigation work.

communicate "constructively and civilly with one another and attempt to resolve disputes informally as often as possible." *MCL 4th*, § 10.21, pp 22-23. The PSC has striven to do so, in a litigation whose stakes are among the highest of any modern MDL, and the commitment, attitude and skill of the Magistrate Judge in supervising the discovery effort and other pretrial matters has made this challenge a pleasure.

**F.    Coordination Between and Among Plaintiffs' Counsel and Litigants**

The PSC has endeavored to work closely with counsel for the United States and other plaintiffs, including, particularly, Coordinating Counsel for the States and his staff. In addition to the formal Work Groups, outlined above, the PSC has endeavored to reach out to all attorneys handling claims in the GCCF and/or actions in the MDL/Limitation, through various ListServes, CLE programs, and PSC-sponsored meetings to provide updates regarding the body of accumulate information regarding the environmental and economic issues, the GCCF process, liability issues, trial plan, and the progress of the litigation itself.

Beyond the formal Work Groups, the PSC has organized meetings and calls to gather facts and to discuss issues and strategies between and among counsel prosecuting Vesseel of Opportunity ("VoO") contract and other claims, for example, oyster claims, and other types of claims being prosecuted by GCCF claimants, plaintiffs and putative classmembers.

The PSC provided assistance to thousands of *pro se* litigants who filed Short-Form Joinders in advance of the April 20, 2011 Limitation deadline, and have retained outside consultants to establish and maintain a database, so that important information can be provided if and as necessary. The PSC, at the same time, endeavors to respond to inquiries regarding pleadings, discovery and other matters, from *pro se* litigants, plaintiffs' counsel, and defense counsel, and to assist the Clerk of Court.

Subject to the confidentiality provisions of Pre-Trial Order No. 13, the PSC has made the

master set of deposition exhibits available to plaintiffs' counsel *via* FTP Site.  The PSC has also made its Depository available to Coordinating Counsel for States and his staff, counsel for the United States, and counsel for the State of Louisiana.

### G.     Depositions

As a result of an actively-managed, well-staffed, and intensively pursued document discovery phase, substantial and timely document production has occurred.  This in turn has assisted and enabled preparation for the multiple tracks of Phase One depositions that have been conducted, including multiple depositions in London.  The pace of depositions increased each month starting in early spring 2011.  On some days, as many as seven full day depositions were simultaneously taking place, on two continents.  To facilitate the efficient conduct of the London depositions, for approximately one month in June 2011, the PSC maintained a branch depository office at the London deposition building where the London office of Kirkland & Ellis International, LLP is located and the depositions were taken.  Depositions of witnesses on multiple tracks, many taking two days, have been conducted and coordinated at an intensive and unrelenting pace.  240 depositions were completed over the approximate six-month period of Phase I discovery.  Some deposition transcripts exceed 800 pages.  Over 5,000 deposition exhibits have been utilized.

The PSC has submitted over 100 sets of designations for the Phase One Trial, accompanied by high-lighted trial exhibits and the first group of two-page summaries.  Over 50 Phase One Liability Expert Depositions have been scheduled to occur in November-December 2011.

### H.     Pleading Bundles

As the *Manual* states among its general principles, the goal of active case management of complex litigation is to conserve the resources of the litigants and of the Court, and to promote

the fair and efficient resolution through "an effective plan for the orderly conduct of pretrial and trial proceedings."[13] To do so, the Court enlists the active cooperation and best efforts of designated counsel, to assure that large scale litigation does not become protracted litigation, and that complex proceedings do not sink under their own weight. To this end, this Court has adopted a series of innovative procedures, some of which have been proposed by Plaintiffs, others by Defendants, and some of which the Court has developed on its own. The PSC has played a major role in proposing and implementing key elements of this case management plan. These case management tools have included the Co-Liaisons' proposal for organizing the parties and claims into pleading bundles; the preparation and filing of the resulting pleading bundle complaints; and the briefing and argument of motions to dismiss directed to these Master Complaints

## I.      Short Form Joinders and Other Case Management Initiatives

Another innovative procedure is the design and utilization of short form joinders and other procedures to assist claimants, including *pro se* litigants, in appearing and preserving their claims in these proceedings.

Another innovative case management procedure in which the PSC has been an active participant is the Vessels of Opportunity ("VoO") charter dispute mediation program, in which the parties agreed to select a sample of cases for motions, briefing, discovery, and a mediation under a stipulated procedure in the close of 2011, in the hope that these proceedings will prove instructive and constructive in the resolution of some or all of the VoO contract claims.

## J.      Limitation Trial Structure

The Court has entertained proposals for a trial plan and structure for the limitation trial that will commence on February 27, 2012. The PSC has worked actively and creatively, with

---

[13] *MCL 4th*, § 10.13 at p. 13.

934310.1                                    -14-

opposing counsel, the Special Master, and the Court, in a fair and practical design for a phased

limitation trial. The Trial Plan recently announced by the Court incorporates the essential

aspects of these proposals, for a single Limitation Trial, in three Phases, conducted as a bench

trial. Phase I (the "Incident Phase") will involve issues relevant to the loss of well control, the

fire, explosion and sinking of the Deepwater Horizon, culminating in the release of oil from the

Macondo well. After a break of duration to be determined by the Court, the trial will resume for

Phase II, addressing source control and the quantification of the oil discharged from the well.

Phase III will address claims arising from the post-Incident clean-up efforts.

### K.    Experts

While the conduct of document and deposition discovery is a key task of the PSC, it is

not the only task that the PSC is performing, on an ongoing basis, for the common benefit. In

preparation for the Limitation Trial, the PSC has interviewed, evaluated, and retained experts in

multiple fields, as both consultants and testifying experts, and has formed working groups to

advance the Plaintiffs' case in the multiple complicated scientific, technical, environmental, and

maritime areas that are relevant to the trial in these proceedings.

The expert reports of key Phase One liability experts have been submitted, along with

voluminous productions of Consideration Materials and the filing of Expert Reliance Exhibit

Lists. At the same time, teams of Common Benefit Attorneys are working on the initial stages of

Phase Two liability expert reports, as well as the formulation of scientific, economic and

environmental analyses, theories and strategies.

### L.    Legal Analysis

In addition to work with experts, the PSC has undertaken the ambitious work of legal

analysis in the fields of the OPA, General Maritime Law, other federal and state law, punitive

damages, and the intersection and overlap of private economic loss, governmental, and public

interest claims.  Plaintiffs have consulted with legal as well as scientific and technical experts,
have conducted extensive legal as well as factual research, and have developed and implemented
the "pleading bundles" system to organize and prosecute common and recurring claims of
multiple categories of plaintiffs in this litigation.

### M.    Protection of Putative Class Members

The PSC has organized and preserved class action claims in these proceedings, and has
acted at all times to protect the procedural interests of putative class members in fair treatment in
these proceedings, including motions and reports directed to the activities of BP's GCCF, in
order to protect putative class members/claimants from unfair, coercive, or inconsistent treatment
with respect to the presentment of their claims to GCCF, and the preservation of their claims for
prosecution in these proceedings.

The PSC and other Common Benefit Attorneys have also provided substantial efforts to
ensure that claimants pursuing claims with Mr. Feinberg as part of BP's GCCF are aware of the
nature of the relationship between Mr. Feinberg and BP.  As the Court is aware, for many
months Mr. Feinberg claimed to be fully "independent" of BP despite the fact that his
relationship with BP was much more closely related.  After substantial briefing by the PSC, and
in coordination with several Attorneys General, the Court ordered Mr. Feinberg to stop referring
to himself as "independent" and to further abide by the prevailing rules and standards imposed
on lawyers with respect to communications with adverse and unrepresented parties.

The PSC continues to monitor the GCCF process, and filed a Supplemental Brief in
Support of Supervision Over the BP Interim Claim Process, seeking Court appointment of a
Special Master under Fed. R. Civ. P. 53 to ensure compliance with OPA, and to make findings
and/or recommendations regarding the satisfaction of OPA's presentment requirements and the
scope and/or efficacy of releases.  The PSC is also working with the U.S. Department of Justice

and the Gulf State Attorneys General in Attorney General Holder's audit of the GCCF.

The PSC and other Common Benefit Attorneys have provided further evidence and briefing to the Court to help ensure compliance with the Oil Pollution Act of 1990, and have otherwise worked with the GCCF, the Court, claimants, and others, in efforts to improve the fairness and efficiency of BP's GCCF process. These efforts, the PSC believes, provide a substantial common benefit to all claimants – even those who are not actively engaged in this MDL.

### N.   Science

The PSC has made considerable, vitally important scientific evidence contributions to the litigation and will continue to do so. The PSC has focused on the oil spill's environmental and ecological impacts and the damages flowing from those impacts. It has retained a robust data collection team of consultants ensuring that all relevant data is available and accessible for our experts, and it has a team of consultants ready to take samples in the event of current or future oiling events. Especially in light of BP's public statements that most if not all of the oil from the Deepwater Horizon was captured, has dissipated or has been degraded by weather and/or microorganisms, it is vital to the successful prosecution of the cases in the MDL to have world-renowned scientific experts who can credibly, forcefully and with robust scientific backing refute these insupportable statements by BP. It would be near impossible for all parties to the MDL to calculate both the extent and duration of the damages caused by this oil spill without the scientific evidence currently being developed by the PSC. Indeed, the team of scientific experts amassed by the PSC is putting the pieces together now to counter these false statements and demonstrate the actual volume of discharge, movement of the oil, and damage caused by that oil to the businesses in and around the Gulf; to businesses that rely on Gulf products; to people who rely on the Gulf for subsistence; to the natural resources (including shorelines, sea life, marshes

and beaches) shared by citizens of the U.S. and the States; to local tax revenues; and to numerous other injured claimants-in-limitation, GCCF claimants, and parties to the MDL pleading bundle complaints.

At the outset, the PSC, recognizing the critical aspect of the scientific evidence in this case, formed a "Science Group" in November 2010 to oversee and coordinate the five science and environmental Work Groups. The core members of the Group consist of attorneys from seven law firms, and have fulfilled numerous roles, including:

1.    Identifying potential expert witnesses on myriad science issues;

2.    Conducting a comprehensive literature and background review of each of the identified potential expert witnesses;

3.    Interviewing potential experts who passed the vetting process of (2) above;

4.    Retaining qualified experts in the dozens of fields relevant to proving the claims in the master bundle complaints;

5.    Compiling a notebook of qualified and retained experts in myriad fields of expertise relevant to the oil spill for review by any MDL attorney at the PSC depository;

6.    Evaluating and approving studies relevant to the task of proving environmental and ecological injury and damage to the plaintiffs in the MDL; and

7.    Developing and maintaining a library on all scientific studies and anecdotal articles that address the oil spill's environmental and ecological impacts.

Since the Group's formation, it has interviewed over 200 potential scientific experts — leaders in their fields of expertise — to ensure a top-rated group of experts with relevant experience for the MDL. This initial task was particularly challenging, as the list of experts knowledgeable about deepwater oil spills is small. It has required delving into issues such as (1) quantifying the oil that flowed from the riser; (2) quantifying the oil that reached and will continue to reach the surface; (3) determining the effect of the dispersant on oil coming out of the riser; (4) quantifying the oil that remains in the Gulf; (5) determining the likely quantity and

location of oil from the oil spill that will surface in the form of oil slicks, tar balls or tar mats in

the future; (6) evaluating the oil spill's impacts on the populations and the health of Gulf sea life

and the Gulf ecosystem as a whole; and (7) determining the length of time the environmental and

ecological impacts will continue.  Indeed, the answers to these questions and more are critical to

calculating the damages of any of the plaintiffs in the MDL; the scientific evidence the PSC and

other Common Benefit Attorneys are developing is critical to the trial phases following phase

one and for allocation purposes in the event of a resolution before final judgment.

To address the issues set forth above, the Group has hired dozens of experts and has

undertaken numerous studies and projects for the benefit of all of the plaintiffs in the MDL.[14]

This work is well underway and is on schedule to be produced in the form of expert reports and

models as early as December 2011.  The PSC and other Common Benefit Attorneys have

compiled and maintain notebooks containing relevant information regarding the experts

interviewed and retained to date.  These are available for review by private attorneys and federal,

state and local government attorneys with cases in the MDL and are critical to the successful

prosecution of their cases.

## IV.    THE PSC AND OTHER COMMON BENEFIT ATTORNEYS ARE ADVANCING COSTS AND INVESTING TIME ON A CONTINGENT BASIS

At every step, the PSC and other Common Benefit Attorneys have been keenly aware of

the importance of maintaining a schedule so as to meet the Court's firm trial date for the

February 2012 Limitation trial.  Time is money, and the time-sensitive prosecution of this

---

[14] Because the actual studies and projects are protected as the PSC's attorney work product, and the time to disclose the experts and this expert evidence is many months away, this memorandum will not disclose the names of the experts retained nor the specific studies and projects the PSC has undertaken to establish the extent and duration of environmental and ecological damages.  If the Court would like further detail in these areas, the PSC respectfully requests that it be permitted to submit that information for *in camera* review.

litigation has, and will, conserve not only the time, but the resources, of all involved.  Complex

litigation is expensive, and has become more so in recent years, despite the best efforts of courts,

and certainly the best efforts of Plaintiffs' counsel, to conserve costs and to do more with less.  In

complex litigation, it is the function of the PSC not only to perform the major work for the

common benefit of plaintiffs, but to fund the infrastructure and advance the considerable costs

that are necessary and unavoidable.  Because the PSC does so out-of-pocket, its interests in cost-

efficiency and expedition are aligned with those of all plaintiffs.[15]  Because its members dedicate

and pool their resources, they can face their well-funded adversaries in this litigation on a level

of commitment commensurate with the duties and responsibilities placed upon them by the

Court.

        The expenses referenced in this Status Report have been advanced by the PSC and other

Common Benefit Attorneys on a contingent basis.  The undersigned recognize that there is a risk

of non-recovery, and that any recovery will be delayed, to the end of these proceedings, and will

depend upon Court approval.  In order to produce, preserve, or enhance the benefit for Plaintiffs,

the PSC has committed to advance, out-of-pocket, the substantial costs of conducting discovery,

including building and maintaining the infrastructure of a document and discovery repository,

paying the costs related to depositions, experts, and testing.  Members of the PSC and other

Common Benefit Attorneys generally pay for their necessary travel and living expenses, out-of-

pocket.  To date, the members of the PSC and other Common Benefit Attorneys have contributed

---

[15] As Judge Easterbrook noted in *Kirsch v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986),
"The contingent fee [percent contract] uses private incentive rather than careful monitoring to
align the interests of lawyer and client.  The lawyer gains only to the extent his client gains . . . .
At the same time as it automatically aligns interests of lawyer and client, rewards exceptional
success, and penalizes failure, the contingent fee automatically handles compensation for the
uncertainty of litigation." *See also* Conte, *Attorney Fee Awards* (Third Edition) § 1.7 Economics
of Contingent-Fee-Award Practice, pp. 29-32

over $11.54 million towards common benefit shared and held expenses.  Assessments will

continue, as necessary, to pay for the costs of proceeding to trial, and conducting the limitation

trial and follow-on proceedings.  These expenses are advanced with only one guarantee,

contingent on a successful outcome:  that, under the equitable common benefit doctrine, as

established and articulated by the United States Supreme Court as within the inherent authority

of District Court judges, PSC and Common Benefit Attorneys are assured that the Court will

review their work and expenses, and enter an order providing for just and reasonable

reimbursement and compensation from the overall benefit obtained.[16]

## V.   THE SOURCE AND APPLICATION OF THE COMMON BENEFIT DOCTRINE: PRINCIPLES, PRACTICES, AND EQUITIES

In order to provide for the reimbursement of expenses advanced and compensation for

work performed by designated counsel who carry out their court-directed duties and

responsibilities, "common benefit", "hold back" or "assessment" orders are issued by MDL

judges in the exercise of their equity jurisdiction and inherent case management authority.

Judge Barbara Rothstein (the recent Director of the Federal Judicial Center) described

how this system works in *In re Phenylpropanolamine ("PPA") Prods. Liab. Litig.* (MDL

No. 1407), 2009 U.S.Dist. LEXIS 126729, *1-2 (W.D.Wash. 2009), "Certain lawyers

representing plaintiffs in this litigation were authorized to undertake work for the benefit of all

MDL 1407 plaintiffs (such work is hereinafter referred to as 'common benefit work').  Counsel

undertaking this work did so with the understanding that at the conclusion of MDL 1407, they

would be reimbursed out of an account funded with a percentage of verdicts and settlements in

---

[16] It is, of course, the preference of the undersigned that such a common benefit award be ultimately paid by the Defendants, in the form of statutory attorneys fees or negotiated terms, and not subtracted from the recoveries of Plaintiffs.  In the alternative, the PSC would suggest that such common benefit fees (if any) be taken first out of the contingency attorney fees (if any), as opposed to the net recovery.

cases associated with MDL 1407." The *PPA* common benefit account had been created by a

hold back order, (modified to 8% for a particularly complex settlement with one defendant),

similar in operation to the proposed order to establish a common benefit account and reserve

sought here. 2009 U.S. Dist. LEXIS 126729, **3-4.

> The overarching principles of the common benefit doctrine are threefold:
>
> 1) the common benefit system spreads the necessary costs of litigation equitably among all who receive a benefit from the litigation, but only if and when the benefit is realized by a recovery;
>
> 2) the common benefit system incentivizes designated counsel to undertake the substantial risk of advancing such necessary costs and time at their own expense, on a contingent basis, for the benefit of all, on the prospect of recouping it later, if and when these efforts are successful; and
>
> 3) the system produces a <u>net</u> benefit to all participants by eliminating duplication of cost and effort, and most fully realizing the potential economies of scale inherent in mass tort/mass disaster litigation.
>
> The common benefit system both reduces the overall and per-plaintiff expense of

litigation, and shifts the initial responsibility and risk for the expenditure of those costs from the

many who cannot afford to advance them, to the few who can.

## VI. THE FEDERAL DISTRICT COURTS HAVE THE AUTHORITY AND DISCRETION TO ENTER "HOLD BACK" ORDERS UNDER THE COMMON BENEFIT DOCTRINE

The courts appointed to serve as MDL transferee courts are vested with broad discretion

and authority to coordinate and supervise the complex multidistrict litigation that is centralized

under their stewardship. To manage such complex litigation, the transferee court may appoint

liaison counsel and plaintiffs' steering committees to coordinate and conduct investigation,

discovery, and other pretrial preparation and trial work. *See Manual for Complex Litigation*

*(Fourth)*, § 22.62. The "necessary corollary to court appointment of [such] counsel . . . is the

power to assure that these attorneys receive reasonable compensation for their work." As the

Fifth Circuit explained in *Florida Everglades*,

> "if lead counsel are to be an effective tool, the court must have
> means at its disposal to order appropriate compensation for them.
> The court's power is illusory if it is dependent upon lead counsel's
> performing the duties desired of them for no additional
> compensation."

*In re Air Crash Disaster at Florida Everglades* (MDL No. 139), 549 F.2d 1006, 1016 (5th Cir.

1977) ("*Florida Everglades*").[17]

The Fifth Circuit recently reaffirmed the principles and mechanisms it endorsed in

*Florida* Everglades in this very litigation, stating:

> "We have long held that a district court has the inherent authority
> and discretion to consolidate and manage complex litigation,
> particularly when serving as the transferee court in a multidistrict
> proceeding. *See In re Air Disaster at Fla. Everglades on Dec. 29,
> 1972*, 549 F.2d 1006, 1012-16 (5th Cir. 1977) (holding that an
> MDL transferee court has managerial power that is "especially
> strong and flexible in matters of consolidation," and that the
> court's managerial power necessarily includes the authority to
> appoint lead or liaison counsel and to compensate them for their
> work).  This discretion is firmly grounded in the Federal Rules of
> Civil Procedure, particularly Rules 16, 26, 37, 42, and 83, which
> contain numerous grants of authority that supplement a district
> court's inherent power to manage litigation.  Indeed, Rule 16(c)
> expressly authorizes district courts to adopt "special procedures for
> managing potentially difficult or protracted actions that may

---

[17] "A transferee court in a federal multidistrict litigation has the power to determine the
compensation for appointed lead counsel and to impose its fee calculation on all federal
plaintiffs, even if their cases are 1) before other federal courts rather than the transferee court, or
2) not yet in a federal court, but ultimately are in such a court." *In re Zyprexa Prod. Liab. Litig.*,
(MDL No. 1596) 467 F.Supp.2d 256, 265 (E.D.N.Y. 2006), *citing Walitalo v. Iacocca*, 968 F.2d
741, 747 (8th Cir. 1992), and *Florida Everglades*, 549 F.2d at 1019 (MDL transferee court that
appointed leadership committee "was the only tribunal that could effectively handle the fee
matter."). *See also Zyprexa*, 451 F.Supp.2d 458 (E.D.N.Y. 2006) (court exercised its case
management/common benefit authority to allocate a share of attorney fee responsibility to
federal and state governments collecting on Medicare/Medicaid liens from MDL settlements).

> involve complex issues, multiple parties, difficult legal questions,
> or unusual proof problems." Fed. R. Civ. P. 16(c)(2)(L)."[18]

Common benefit or "hold back" orders thus reflect a basic equitable principle: a party whose efforts benefit other parties should receive reasonable compensation for those benefits conferred, the burden should be shared among all beneficiaries, and the burden should be proportional to the benefit.

The Supreme Court has repeatedly held that a party who expended resources to secure a common benefit should be compensated by all those who have benefited. The Court first articulated this common benefit doctrine 130 years ago, long before the advent of modern class action or multidistrict litigation, in the landmark decision of *Trustees v. Greenough*, 105 U.S. 527 (1881). The doctrine articulated in *Trustees v. Greenough* ensures that litigants and counsel whose efforts and expenditures have recovered, preserved, or enhanced recoveries for the benefit of others are ratably reimbursed and compensated by the beneficiaries of their efforts. In traditional terms, this is an elementary matter of equitably apportioning the costs of a benefit conferred to avoid unjust enrichment. A long line of Supreme Court authority reaffirms that it is unjust enrichment and contrary to public policy for claimants who benefit from others' work in a litigation, to do so without contributing to the cost of the efforts that produced the benefit, and therefore recognizes a right to payment from them. *See Trustees, supra*; *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Sprague v. Ticonic National Bank*, 307 U.S. 161, 166 (1939). The common benefit doctrine "reflects the traditional practice in courts of equity" and "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472,

---

[18] *In re: State of Louisiana, Petitioner*, No. 11-30178, Order Denying Petition for Writ of Mandamus to the United States District Court for the Eastern District of Louisiana, U.S.D.C. No. 2:10-MD-2179, issued April 11, 2011.

478 (1980).

While the common benefit doctrine is applied frequently, but not exclusively, in class

actions, and shares some principles and concepts with the class counsel fee procedures under

Fed. R. Civ. P. 23, it was developed by the Supreme Court **independent** of the class action

procedure, and applies to **all** substantive and procedural litigation contexts. *See Sprague v.*

*Ticonic Nat'l Bank*, 307 U.S. 161, 166 (1939). "That the party in a situation like the present

neither purported to sue for a class nor formally established by litigation a fund available to the

class, does not seem to be a differentiating factor so far as it affects the source of the recognized

power of equity to grant reimbursements of the kind for which the petitioner in this case

appealed to the Chancellor's discretion." Rather, the power to withhold, collect and spread costs

through a common benefit mechanism is "part of the original authority of the Chancellor to do

equity in a particular situation." 307 U.S. at 166. The doctrine rests broadly on the principle that

"to allow others to obtain full benefit from the plaintiff's efforts without contributing equally to

the litigation expenses would be to enrich others unjustly at the plaintiff's expense."[19]

While the venerable equitable common benefit doctrine reflects the inherent ability of

*every* federal district judge to do equity in a wide variety of procedural circumstances, it has

become a staple of effective case management in modern complex litigation, especially

contemporary multidistrict ("MDL") litigation. The Fifth Circuit led the way in its early

appellate affirmation of a common benefit order in *Florida Everglades, supra,* which followed

the Supreme Court's *Trustees*, *Sprague* and *Pettus* common benefit decisions to hold that proper

management of multidistrict litigation requires the entry of what have since become known as

_____

[19] *Pettus*, 113 U.S. at 116; s*ee also Mulligan Law Firm v. Zyprexa MDL Plaintiffs'*
*Steering Committee*, 594 F.3d 113, 119 (2d Cir. 2010) (petition for writ of mandamus from MDL
common benefit order denied).

"common benefit," "assessment" or "hold back" orders. *Florida Everglades* gave practical implementation to court-appointed lead/liaison counsel and PSC structures by holding that because "lead counsel's services are in part for all parties with like interests and their lawyers," a multidistrict litigation transferee court is obligated to compensate counsel who developed and prosecuted a case from the recovery of others who reaped the benefit of that work and followed on its coat-tails. *Id.* at 1017 (emphasis added).

Thus, under the common benefit doctrine, multidistrict transferee courts are empowered to require that fees be equitably shared in complex civil litigation. *See, e.g., Florida Everglades*, 549 F.2d at 1016 ("We hold that the district court had the power to direct that the Committee and its counsel be compensated and that requiring the payment come from other [non-member] attorneys was permissible."); *Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992) ("District courts have exercised this power to establish fee structures designed to compensate committee members for their work on behalf of all plaintiffs involved in consolidated litigation."); *Walitalo v. Iacocca*, 968 F.2d 741, 747 (8th Cir. 1992) ("It is well established that courts can impose liability for court-appointed counsel's fees on all plaintiffs benefiting from their services"); *In re San Juan Dupont Plaza Hotel Fire Litig.* (MDL No. 721), 111 F.3d 220, 223-25 (1st Cir. 1997); *In re MGM Grand Hotel Fire Litig.* (MDL No. 453), 660 F.Supp. 522 (D.Nev. 1982); *In re FTC Line of Business Report Litig.*, 626 F.2d 1022, 1027 (D.C. Cir. 1980). Underlying these and other decisions, in a wide variety of class action, MDL, consolidated, and other complex litigation contexts, is "the equitable notion that those who have benefited from litigation should share its costs." *Skelton v. General Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1988) (citation omitted).

The *Manual for Complex Litigation (4th ed. 2004)* (the "*Manual 4th*"), emphasizes that, together with an MDL court's power and obligation to appoint responsible counsel, comes the

power and obligation to ensure that counsel who have undertaken core work on the litigation, particularly court-appointed counsel, receive compensation, including from later-filed (or unfiled) cases and settlements that take advantage of and piggy-back on their work. The *Manual 4th* recognizes and endorses the hold back mechanism as follows:

> "Class counsel generally have the benefit of the common fund doctrine to support payment for their efforts on behalf of the class or consolidated litigants. MDL judges generally issue orders directing that defendants who settle MDL-related cases contribute a fixed percentage of the settlement to a general fund to pay national counsel." *Id.* § 20.312; see also *id.* §§ 11.211, 14.211, 14.215, 22.927.

As *Greenough* noted, the fund from which common benefit fees and costs are to be paid must be "subject to the control of the court." 105 U.S. at 536. In *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980), the Supreme Court explained that this means the court must have "[j]urisdiction over the fund involved in the litigation." This criterion is satisfied by jurisdiction over a party that controls the fund, usually the defendant.[20] In the MDL context, transferee courts create this fund through orders directing defendants to "hold back" a specified percentage from settlements that release claims asserted in the MDL. The account into which these hold back funds are deposited becomes the source of common benefit fees and costs awards that are made, at the close of the proceedings, pursuant to duly-noticed motion and a court approval process. The unawarded funds are returned to the beneficiaries.

Admiralty and maritime proceedings, such as the instant consolidated Limitation proceedings, are familiar examples of *in rem* jurisdiction. The comprehensive case management jurisdiction of a district court over complex litigation, MDL proceedings, or class actions has

---

[20] Alan Hirsch and Diane Sheehey, *Awarding Attorneys' Fees and Managing Fee Litigation*, at p.59 (Federal Judicial Center 1994); Mary Frances Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees § 2.03*, at 2-27 to 2-34.1 (discussing various ways in which a court may exercise control of the fund).

also been recognized as *in rem*[21] jurisdiction, with the common fund, settlement fund, or the litigation or the complex litigation itself as the foundational *res*.  In the proper exercise of this *in rem* jurisdiction, the district court may regulate and enjoin the conduct of those appearing before it, and others, in order to prevent interference with its administration of the litigation, to enjoin conflicting or competing state proceedings, and to protect, preserve, approve, and apportion judgments or settlements.[22]

## VII.   "UP FRONT" ASSESSMENTS AND "HOLD BACK" ORDERS

A well-accepted feature of the common benefit doctrine, as it has been adapted to contemporary mass tort MDL case management, is the mechanism that enables MDL courts to exercise their jurisdiction over the named parties (including defendants) and their counsel to compensate and reimburse costs incurred and labor expended by designated counsel for the common benefit.  This is accomplished by ordering the Defendants, who are properly before the

---

[21] According to *Black's Law Dictionary* (7th Ed.), *in rem* [Latin for "against a thing"] is jurisdiction "involving or determining the status of the thing, and therefore the rights of persons generally with respect to that thing."  Accordingly,

> "An action *in rem* is one in which the judgment of the court determines the title to property, and the rights of the parties, not merely as between themselves, but also as against all persons at any time dealing with them or with the property upon which the court had adjudicated."  R.H. Graveson, *Conflicts of Laws*, 98 (7th. ed. 1974).

[22] *In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 306 (3d Cir. 2004); *In re Diet Drugs*, 282 F.3d 220, 235 n.12 (3d Cir. 2002); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334 35 (5th Cir. 1981).  *See also In Re Baldwin-United Corp.*, (MDL No. 581) 770 F.2d 328 (2d Circuit 1985), upholding the district court's authority, under the All-Writs Act, 28 U.S.C. § 1651, to enjoin states from bringing actions that would affect the rights of any plaintiff or class members, whose claims, in the form of putative class actions, were before the district court.  *Baldwin-United* analogized the MDL court's jurisdiction to "that of a court in an in rem action or in a school desegregation case, where it is intolerable to have conflicting orders from different courts." 770 F.2d at 337.  "An important feature of the All-Writs Act is its granted authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction."  *Id.* at 341.

court, to "hold back" a percentage of the funds they (or an amount equivalent to such percentage) pay to claimants to settle MDL-related claims. *See Diet Drugs*, 553 F.Supp.2d at 456-58; *Vioxx*, 760 F.Supp. at 654; *Zyprexa*, 467 F.Supp.3d at 261. The fund accumulated by deposits of this "hold back" into a Court-supervised account is then available to compensate (after court scrutiny and approval) Common Benefit Attorneys whose work has protected or enhanced the value of such claims, such as through the development of the law and facts common to all claims, or through the development of structures, mechanisms, or systems that facilitate or expedite the settlements themselves. This "hold back" frequently does not diminish the plaintiffs' recovery, or increase their attorneys' fees: it may, depending upon the circumstances, be assessed potentially or entirely against the defendants, or against the plaintiff attorney fee portion of any recovery. In some instances, it has been paid by the defendants in addition to awards to plaintiffs - *e.g.,* under statutory attorney fee provisions, or as a separately negotiated settlement term. This is the PSC's goal and preference here.

The amount and value of the benefit conferred is not determined by either the beneficiary or the benefactor, since each might view benefit with a different eye. The "hold back" itself thus does not guarantee that any specific amount of common benefit will be awarded or paid; it does not relieve common benefit applicants of the burden of demonstrating that their time, effort, and expense in fact produced the benefit; nor does it shift this burden from the applicants to anyone else. Funds available through a hold back mechanism to pay qualified applicants are not immediately awarded. The Court, as the most knowledgeable and neutral assessor of value, must decide – at a later appropriate time - how much to award, and to whom. Any balance not awarded is redistributed to the beneficiaries.

This failsafe feature of the hold back mechanism ensures that no claimant ever pays,

directly or indirectly, more than the value of the services rendered.[23]

Typically, Liaison Counsel and the members of the Court-designated PSC contribute "up front" cash assessments to fund the common benefit work. Here, almost twelve million dollars has already been contributed, on a contingent basis, by Co-Liaison Counsel, PSC members, and other Common Benefit Attorneys, to create a working fund to pay for the work of the document depository, the conduct of depositions, fact investigation, the retention and preparation of experts, and other activities which, in turn, will produce a tangible and valuable benefit for all plaintiffs. Without a hold back order in place, the PSC will have expended many millions of dollars in upfront assessments to fund the necessary work for the common benefit of all plaintiffs which this Court has designated and directed them to undertake, without any system for equitable reimbursement. In addition to the ongoing advancement of "up front" cost assessments to pay for document analysis, depositions, investigations, expert witnesses and other major expenses of this litigation, the PSC devotes its time, again on a contingent basis (PSC and other Common Benefit Attorneys have submitted over 230,000 hours to date), is keeping and submitting its time records, while awaiting the "if" and "when" of an ultimate recovery to recoup this common benefit time.

---

[23] For example, in the *Diet Drugs* MDL, the initial common benefit assessment was 9%, a typical assessment of that era. After it became clear there were sufficient funds available to compensate the common benefit lawyers, the court reduced this amount to 6%. *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 554 (3d Cir. 2009). *See also Turner v. Murphy Oil USA, Inc.*, 422 F. Supp. 2d 676 (E.D. La. 2006) (approving 10% assessment for common benefit attorney's fees, and 2% assessment for common benefit costs, on individuals who opted out and retained counsel for purposes of filing lawsuits or settling claims); *In re MGM Grand Hotel Fire Litig.* (MDL No. 453), 660 F. Supp. 522 (D. Nev. 1987) (adjusting assessment percentage upward to 7%). Common benefit orders typically provide that, to the extent the Fund ultimately exceeds the amount needed to make payments as provided in the Proposed Order, the Court may order a refund, on a *pro rata* basis, to those who contributed to the Fund. Such a rebate was recently ordered in the *Vioxx* litigation, in which the common benefit award ultimately approved was 6.5% of the $4-plus billion settlement, rather than the 8% originally requested and withheld.

## VIII.   THE COMMON BENEFIT DOCTRINE INCENTIVIZES CONTINGENT EFFORTS AND EXPENDITURES TO CONSERVE THE RESOURCES OF LITIGANTS

As noted above, multidistrict transferee courts routinely enter orders that create a funded source for future court-approved compensation to liaison counsel and court-appointed committees.  Along with judicial appointment of designated counsel (such as liaison counsel and plaintiffs' steering committee members), and the issuance of an order to provide for some measure of reimbursement and compensation for their services – *if* and *when* the litigation generates monetary recoveries – is the obligation of such counsel to conserve their own efforts, and to spend their time carefully and productively.  MDL courts ensure that such time is not wasted, duplicated, or expended unproductively or unnecessarily by keeping close watch over the time spent and costs incurred by designated counsel.  As this Court has done in Pre-Trial Order No. 9, MDL courts typically require designated counsel to report, periodically, to an auditor, or to the court itself, and time and costs records are scrutinized carefully before any judicial approval of payment occurs.  Funds held back under a common benefit order are distributed to counsel only after court scrutiny and approval of the reasonableness of the time and costs for which awards are requested.  *See generally*, *MCL 4th*, §§ 10.223; 14.215; 14.22-14.232.[24]

---

[24] The MDL court's case management authority over complex litigation extends beyond the evaluation, determination, and award of any common benefit fees, to the regulation of the contingent fees of all plaintiffs' attorneys who appear before it.  While not always exercised, this authority is available to limit, or "cap" in appropriate circumstances, contingent fees that would otherwise consume too much of the plaintiffs' recoveries.  *See, e.g.*, *In re Vioxx Products Liability Litigation (MDL No. 1657)*, 650 F. Supp. 2d 549 (E.D. La. 2010) (MDL transferee court imposed a 32% contingent fee cap based on the court's inherent authority, and its implied authority from the settlement, to limit the fees, and promote the just and efficient conduct of the litigation under 28 U.S.C. § 1407(a), the MDL statute).  In *Vioxx* the common benefit fee ultimately awarded (6.5%) was deducted from the private contingent fees, rather than the plaintiffs' share of the settlement proceeds.

Numerous courts have enforced the common benefit doctrine in the context of non-class, mass tort or product liability multidistrict litigation, as the early decrees in *Florida Everglades, supra*; and *In re MGM Grand Hotel Fire Litigation* (MDL No. 453) 570 F. Supp. 913 (D. Nev. 1983); and the recent common benefit orders entered in the *Avandia, Trasylol, Bextra* and *Kugel Mesh* MDLs demonstrate.[25]

Indeed, the common benefit doctrine is of particular, practical, and immediate utility in the MDL context. By designating a relatively small group of plaintiffs' attorneys with substantial resources that are directed by the Court to risk these resources in a common cause—the prosecution of the MDL on behalf of all plaintiffs—the Court assures at the outset that significant benefit accrues to all plaintiffs, their counsel, and to the system itself throughout the proceedings. Such benefit creation includes the real net benefit of lower costs and less work for individual counsel, some of which would otherwise be required to conducting all discovery, replicate the time and costs of litigating all motions, preparing for trial, and retaining all experts on their own. The only work entitled to compensation from a common benefit fund is work that has demonstrably provided a benefit to all plaintiffs, or to a defined group of plaintiffs as a whole—the common benefit work. In contrast, work benefiting only a single plaintiff is, of course, compensated under the terms of that plaintiffs' fee contract with his or her individual counsel.

## IX.   WHAT IS THE CUSTOMARY OR APPROPRIATE RANGE OF COMMON BENEFIT ASSESSMENTS?

The chart below illustrates assessments in recent MDLs, updating charts prepared by

---

[25] *See also, In re Protegen Sling and Vesica System Prods. Liab. Litig.* (MDL No. 1387), 2002 WL 31834446 (D. Md. Apr. 12, 2002) ("*Protegen Sling*") (9% set-aside); *In re Linerboard Antitrust Litig.* (MDL No. 1261), 292 F. Supp. 2d 644 (E.D. Pa. 2003) ("*Linerboard*") (establishing common fund and requiring set-aside for class counsel in antitrust multidistrict litigation).

Prof. William B. Rubenstein of Harvard Law School, which appeared in "On What A 'Common Benefit Fee' Is, Is Not, And Should Be," *Class Action Attorney Fee Digest* (March 2009), can be found at www.billrubenstein.com. As Professor Rubenstein reports, Court-approved hold back assessments in MDL litigation appear to range from 4%-18%, with a significant cluster in the 4%-8% range. The six percent (6%) hold back is a frequently selected percentage. This chart illustrates the hold back distribution:[26]



Professor Rubenstein's article also summarizes the way MDL common benefit fee assessments work:

> "Courts often set the fee early in the litigation, ordering the defendant to 'hold back' that amount from any settlement it reaches throughout the case. A fund is thereby generated, and at the conclusion of the case, those attorneys who did common benefit work can petition the judge for disbursement of some or all

---

[26] Recent additional hold back orders in *Fosamax* (up to 9%); *Zimmer* (4%); *Gladolinium* (6%) (*see fn.* 24 below) demonstrate this range.

> of the fund. . . the common benefit fee is therefore a way of
> spreading the fees for a case between [individual Plaintiffs'
> Attorneys] doing individual client work locally and PSCs doing
> common benefit work at the national or aggregate level. It is
> essentially an intra-attorney fee allocation mechanism."

Rubenstein, at p. 89. The assessment thus avoids adding a surcharge on plaintiffs to their

individual attorney's fees, so that even in cases where the defendant does not ultimately bear the

cost of the hold back, the system assures that all lawyers and clients share equitably in the costs,

as well as the benefits, of work done in connection with an MDL. It is common practice, in

contemporary MDLs, to impose any common benefit holdback against lawyers' fees, or other

sources, not claimants' proceeds.[27]

Three recent hold back orders from contemporary MDLs are attached as Exhibits A-C to

this submission to illustrate the mechanisms used to create "common benefit funds" in current

practice.[28] Clearly, each litigation presents circumstances that may call for variations; this

litigation includes the prospect of statutory fee awards under *e.g.*, the Clean Water Act and OPA,

---

[27] *See, e.g., In re Vioxx Prods. Liab. Litig.* (MDL No. 1657), 2010 U.S. Dist. LEXIS
139917 (E.D. La.. Dec. 9, 2010) (awarding a 6.5% common benefit assessment against the
attorneys' fees portions of recoveries from a comprehensive non-class personal injury settlement,
in the court's exercise of its inherent and case management authority over the beneficiaries of the
PSC's common benefit work).  At the appropriate time, the Court, consistent with MDL history
and procedure, will exercise its authority over the MDL and its participants to compensate and
reimburse approved work of court-appointed counsel in an appropriate amount. *See, e.g.,
Manual for Complex Litigation*, Fourth (Federal Judicial Center 2004), §§10.223, 14.215;
Hirsh & Sheehey, Awarding Attorneys' Fees and Managing Fee Litigation (Federal Judicial
Center 2005).

[28] *See* EXHIBIT A, *In re:  Fosamax Products Liability Litigation* (MDL No. 1789), *Case
Management Order No. 17* (amended) (Establishing Plaintiffs Common Benefit Fund) (SDNY
April 28, 2011) (up to 9% [mandatory] assessment); EXHIBIT B, *In re:  Zimmer Durom Hip Cup
Products Liability Litigation* (MDL No. 2158) Case Management Order No. 3:  Order
Establishing Common Benefit Fund (DNJ January 21, 2011) (4%); EXHIBIT C, *In re:
Gadolinium Based Contrast Agents Products Liability Litigation* (MDL No. 1909), Pretrial
Order No. 2 (Establishing Gadolinium Based Contrast Agents Fee and Expense Fund to
Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL
Administration at the Common Benefit) (ND Ohio, February 20, 2009) (6%).

making appropriate a hold back equivalent to, rather than deducted from, a specified percentage.

Because six percent (6%) is consistent with what has been widely approved other MDLs, the PSC now recommends this percentage be adopted by the Court as an across-the-board hold back with respect to settlements, judgments or other payments arising out of the Macondo / *Deepwater Horizon* incident and spill.[29]

## X. THE PSC's REQUEST TO ESTABLISH A COURT-SUPERVISED ACCOUNT IN THESE MDL AND LIMITATION PROCEEDINGS

The *Manual* advises the court to make provision for the compensation of designated counsel; in cases that will be litigated, adjudicated and resolved exclusively as class actions, Rule 23 itself provides a framework and a jurisprudence for such compensation, which is contingent upon a successful outcome, and subject to court review.[30] On the defense side, where payment by the hour (regardless of outcome and without deferral) is the norm, setting aside funds to compensate defense lead or liaison counsel on an ongoing basis is relatively straightforward.[31]

On the plaintiffs' side, however, most representation is contingent. In this MDL, contingent fee representation is, of necessity, the norm, at least for individual claimants who are not well funded commercial interests, or governmental entities. Indeed, the members of the

---

[29] In light of the ongoing and substantial coordination and contributions between and among the PSC and other Common Benefit Attorneys and the State of Alabama, as well as the State of Louisiana, the PSC seeks a reserve of only four percent (4%) of any settlement, judgment or other payment to the State of Alabama or to the State of Louisiana. Moreover, the PSC does *not* seek any hold-back at this time over settlements, judgments or other payments to the United States.

[30] This MDL, unlike some mass tort MDLs in which "hold back" orders are put in place, includes class actions for economic loss of the type courts have certified under Rule 23(b)(3). The ultimate resolution of all or part of these proceedings could take the form of a class action settlement. In such case, attorneys fees would be awarded, from the defendants or a common fund; the hold back account could be applied to this award, or, if unused, could be returned. In no event would duplicative costs or fees be paid.

[31] *See, e.g., MCL 4th*, § 14.215, Compensation for Designated Counsel.

Plaintiffs' Steering Committee designated by this Court act for the common benefit of all plaintiffs, are representing many of their personal clients on a contingent fee basis. Their clients typically advance neither fees nor costs; these are borne by the lawyers themselves. Accordingly, the members of the Plaintiffs' Steering Committee and other Common Benefit Attorneys are not only prosecuting their respective clients' claims on a contingent basis, risking both their time, and advancing costs out of their pocket to do so; they are working on a doubly contingent basis, since their common benefit works is likewise contingent. There is no public or private source of funding for their work on an ongoing basis, other than their own resources. Thus, while their service benefits the Court, the public, all plaintiffs, and indeed the defendant as well, at least indirectly, none of the beneficiaries is compensating the members of the PSC and other Common Benefit Attorneys, or defraying their expenses, on an ongoing basis.

To date, members of the PSC and other Common Benefit Attorneys have advanced millions of dollars to fund the work of the PSC, in addition to the travel costs and other costs they are paying, out-of-pocket, to serve on the PSC itself. They have invested thousands of hours of time. They recognize that these expenditures will not be reimbursed, in whole or in part, unless and until this litigation generates a benefit for the plaintiffs. At that point, they will apply to the Court for compensation and reimbursement, proportional to this benefit, requesting an award equivalent to a small percentage of the recovery. This may take the form of a statutory award of fees; a class action award governed by Rule 23(e), (h), and class action fee awards jurisprudence; a payment by the defendants, equal a percentage of but not deducted from, the recovery to plaintiffs; a request for award from a common benefit fund; or a "hold back" from individual recovery. The form of this request cannot be known at the present time, because the format the structure of any global verdict, judgment, or other final resolution is not presently

known, given the complexities of these MDL and consolidated limitation proceedings (which include or are associated with multiple class actions, the pleading bundles Master Complaints, the Limitation action, numerous individual cases, over 108,000 short-form joinders, approximately 20,000 additional claimants-in-limitation, and the GCCF claims process).

Since the touchstone of the equitable "common benefit" doctrine is indeed equity, that is, a fair apportionment of costs among beneficiaries, the exact nature of such an application cannot yet be forecast. However, because it is preferred practice for the court and parties to be aware of the potential magnitude of such a request, insofar as is practicable, the PSC notes at this time its own first step toward the equitable apportionment of common benefit expenses: its members' voluntary agreement to deposit a portion of their attorneys' fees on their own clients' settlement proceeds for common benefit fees and/or expenses – pending (and to be superseded by) a formal order of the Court. The PSC seeks to establish this Court-supervised fund in order to preserve this *res* intended to compensate and reimburse PSC members and other Common Benefit Attorneys for common benefit contributions to the litigation, as may be ultimately ordered or awarded by the Court.

While a common benefit award may be owed with respect to settlements or other payments previously made through the GCCF or otherwise, that is an issue left for another day.

Indeed, the PSC does *not,* at this time, seek an actual common benefit or cost reimbursement <u>award</u> – which may ultimately be paid directly by Defendants, may be less (or more) than six percent (6%), and could conceivably vary, in light of the nature of the plaintiff, the type of recovery, timing issues, or other circumstances.

## XI.   CONCLUSION

From August 2010 (and before) to the date of this submission, the PSC and other Common Benefit Attorneys have endeavored, on a daily basis, to discharge the responsibilities

placed upon them by this Court in Pre-Trial Order No. 8.  This Report describes, in summary

fashion, the work of the PSC and other Common Benefit Attorneys to date, to the extent

protective orders and the work-product doctrine permit.  This work continues on a daily basis,

with gathering intensity and purpose, as the date of the February 2012 Limitation and Liability

Trial draws near.  Based upon the foregoing, and submitting to the Court's evaluation and

assessment of their work thus far for the common benefit of plaintiffs and putative class

members in these MDL proceedings, the undersigned respectfully request that the Court

establish a Court-supervised trust fund, through the mechanism of reserve and deposit, by

Defendants, of amounts equivalent to six percent (6%) of each payment they make to plaintiffs,

putative classmembers or other claimants arising out of the Macondo / *Deepwater Horizon*

disaster.  This account would serve as a potential source from which potential common benefit

fees and costs may be requested, evaluated and awarded at an appropriate time, in the event or to

the extent such fees are not paid directly by Defendants.


     This 7th day of November, 2011.



Respectfully submitted,


     ___/s/ Stephen J. Herman___          ___/s/ James Parkerson Roy___
**Stephen J. Herman**, La. Bar No. 23129      **James Parkerson Roy**, La. Bar No. 11511
**HERMAN HERMAN KATZ & COTLAR LLP**      **DOMENGEAUX WRIGHT ROY & EDWARDS LLC**
820 O'Keefe Avenue                           556 Jefferson Street, Suite 500
New Orleans, Louisiana 70113                 Lafayette, Louisiana 70501
Telephone: (504) 581-4892                    Telephone: (337) 233-3033
Fax No. (504) 569-6024                       Fax No. (337) 233-2796
E-Mail: sherman@hhkc.com                     E-Mail: jimr@wrightroy.com
*Plaintiffs' Liaison Counsel*                *Plaintiffs' Liaison Counsel*


934310.1                          -38-

## PLAINTIFFS' STEERING COMMITTEE

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office: (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER & IMPREVENTO
999 Waterside Drive, Suite 1000
Norfolk, VA 23510
Office: (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Office: (415) 956-1000
Telefax: (415) 956-1008
E-Mail: ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Office: (504) 394-9000
Telefax: (504) 394-9110
E-Mail: pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL 36660
Office: (251) 471-6191
Telefax: (251) 479-1031
E-Mail: rtc@cunninghambounds.com

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY 10003
Office: (212) 558-5802
Telefax: (212) 344-5461
E-Mail: rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office: (334) 269-2343
Telefax: (334) 954-7555
E-Mail: rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA 70601
Office: (337) 439-0707
Telefax: (337) 439-1029
E-Mail: mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA 70801-1910
Office: (225) 344-3735
Telefax: (225) 344-0522
E-Mail: mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Office: (504) 588-1500
Telefax: (504) 588-1514
E-Mail: sterbcow@lksalaw.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail: mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA 70726
Office: (225) 664-4193
Telefax: (225) 664-6925
E-Mail: calvinfayard@fayardlaw.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail: ervin@colson.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Office: (214) 521-3605
Telefax: (214) 599-1172
E-Mail: ssummy@baronbudd.com

Mikal C. Watts (PSC)
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail: mcwatts@wgclawfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Memorandum will be filed into the record *via* the Court's ECF electronic filing system and will be served on all counsel *via* Lexis-Nexis File & Serve, pursuant to PRE-TRIAL ORDER NO. 12, this 7th day of November, 2011.

/s/ Stephen J. Herman and James Parkerson Roy

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN RE: OIL SPILL by the OIL RIG** | * | **MDL NO. 2179** |
| **"DEEPWATER HORIZON" in the GULF** | * | |
| **OF MEXICO, on APRIL 20, 2010** | * | |
| | * | **SECTION J** |
| **Relates to:** *All Cases* | * | |
| | * | **JUDGE BARBIER** |
| **(Including No. 10-2771)** | * | |
| | * | **MAG. JUDGE SHUSHAN** |
| ************************************* | * | |

**REPLY BRIEF**
**IN FURTHER SUPPORT OF THE PSC's MOTION TO**
**ESTABLISH ACCOUNT AND RESERVE FOR LITIGATION EXPENSES**

The Plaintiffs' Steering Committee, by and through Plaintiffs' Liaison Counsel, and on behalf of all Common Benefit Attorneys, respectfully submits the following Reply Brief in further support of the PSC's Motion to Establish Account and Reserve for Litigation Expenses:

**MAY IT PLEASE THE COURT:**

In response to the various Oppositions and other Responses to the instant Motion, the PSC believes it would be helpful to make it clear that: **(i)** The Proposed Order, if granted, would not result in a "shifting" of fees to the defendants; **(ii)** The Proposed Order, if granted, would only apply to settlements, judgments or other payments made after November 7, 2011; **(iii)** The Proposed Order is not intended to apply to judgments or settlements between and among Defendants; and **(iv)** The Court is not asked to determine that a four percent (4%) or six percent (6%) or any other common benefit fee is owed with respect to any settlement, judgment or other payment at this time.[1]

---

[1] *See* Proposed ORDER [Doc 4507-2].

**Objections that the Common Benefit Work Performed May Not Benefit Certain Claimants or Litigants Are Premature at This Time**

While the Plaintiff Steering Committee disagrees with the notion that the Common Benefit Work performed does not, directly and/or indirectly, benefit all claims settled or tried after November 7, 2011, such an inquiry is premature at this time.  As noted:

> …the PSC does *not* seek a common benefit cost and/or fee award of 6%, nor suggest that six percent (6%) will be an appropriate award for their work and/or cost contributions at the end of the day.
>
> **….an appropriate award may be less (or more) than six percent (6%), and could conceivably vary, in light of the nature of the plaintiff, the type of recovery, timing issues, or other circumstances**….
>
> A determination as to the propriety, source, appropriate amount and allocation of any common benefit fee and/or cost reimbursement award (if any), should be reserved … for another day.[2]

It is respectfully suggested that such determination should be made based upon an evidentiary record, in light of all facts and circumstances surrounding the ultimate judgments, settlements or other payments at issue, and not in a vacuum, based on little more than unsupported assumptions, assertions or self-motivated protestations.

**The Proposed Order Does Not "Shift" Attorneys Fees to Defendants**

While the defendants might ultimately be responsible to Plaintiffs for attorneys' fees under one or more fee-shifting provisions, the Proposed Order does not compel the defendants to fund the hold-back reserve fund over and above the plaintiff's recovery.  Rather, the Order, as proposed, affords the parties the flexibility to negotiate a resolution whereby either the defendant agrees to fund the reserve over and above the settlement amount, or the entire reserve is "held

---

[2] MOTION [Doc 4507] ¶¶ VII, VIII and XI (emphasis supplied).

back" out of the settlement amount - or where the reserve is funded on a shared basis. Nothing in the Order, as proposed, would *require* a defendant to pay attorneys' fees.[3]

### The Proposed Order Is Not Intended to Apply to Settlements Between and Among the Defendants

The Proposed Order is not intended to apply to judgments, settlements or other payments between and among BP, Transocean, Cameron, Halliburton, Weatherford, M1-Swaco, Anadarko or the other Defendants.

### The Hold-Back Order, As Currently Presented, Would Only Apply to Settlements, Judgments or Other Payments Occurring After November 7, 2011

While even some of the Oppositions suggest that the PSC and other Common Benefit Attorneys are likely entitled to at least some common benefit fee with respect to the approximately Six Billion Dollars already paid out by the GCCF, (and while reserving any rights to same), the Proposed Order, as currently presented, would only apply to judgments, settlements or other payments occurring after November 7, 2011.

While it is possible that some payments are still being made on a "mechanical" or "strict liability" basis under the OPA scheme, the Responsible Party has had eighteen (18) months to evaluate and recognize OPA claims.

Particularly given the broad GCCF Release, the Court's initial rulings on issues such as the availability of punitive damages under General Maritime Law and the viability of so-called "Moratorium" claims (heretofore not recognized by the GCCF), and the impending February

---

[3] To be sure: The PSC will, of course, attempt to negotiate settlement with one or more Defendants wherein the defendants agree to pay common benefit fees (and/or other attorneys' fees) over and above the settlement corpus, as part of the terms of the negotiated settlement. In the event, however, that Defendants are not willing to voluntarily fund the reserve out of their own pockets, the reserve (absent a final judgment requiring Defendants to pay some or all attorneys' fees) would be "held back" out of the judgment, settlement or other payment to the plaintiff.

2012 trial date, it is reasonable to assume that GCCF settlements at this point are at least as much a function of litigation risk as they are a function of voluntarily compliance with OPA.

Nor can it credibly be argued that the efforts of PSC and other Common Benefit Attorneys have not benefited persons and businesses (and in many cases their attorneys) prosecuting GCCF claims.  Among other things, the PSC and other Common Benefit Attorneys:

- Challenged ambiguities in and other problems with the initial BP Claims Process;

- Ensured that BP Claims Process and GCCF forms and information would be provided in Spanish, Cambodian and Vietnamese;

- Ensured, both pre-GCCF and within the GCCF, that payments to Vessel of Opportunity and other Clean-Up Workers would not be used as a set-off against, nor release of, claims for economic loss or other OPA claims;

- Met with Feinberg and others at the GCCF on numerous occasions, to make the claims process and methodologies more fair;

- Pursued motions and orders to assure fairness and accuracy in the communications provided by Feinberg and the GCCF to *pro se* litigants and represented parties;

- Developed and provided legal, scientific and economic information to be used in claims presentation and negotiations;

- Developed and confronted Feinberg and GCCF with legal, scientific and economic information;

- Participated in numerous community outreach and *pro bono* projects to educate claimants and attorneys regarding the GCCF claims process and assisting them with their claims;

- Pushed for OPA compliance;

- Pushed for the payment of interim claims;

- Challenged the scope and effect of the GCCF releases;

- Investigated, uncovered, documented, confronted the GCCF, and otherwise presented to the public, claimants and the Court delays, denials, inconsistencies, lack of transparency, and other individual and systemic problems or abuses within the GCCF;

- Participated in efforts with the U.S. Department of Justice and the States to audit the GCCF;

- Provided a mechanism for, notice to, and assistance to both represented parties and *pro se* litigants with respect to the Short Forms, in order to preserve their rights in the event that they could not, and/or do not, gain complete relief within the GCCF; and,

- Exerted an enormous litigation pressure, risk, leverage and incentive for BP, through the GCCF, to try to settle its liabilities, in advance of trial.

It would not be fair, it is respectfully submitted, for the plaintiffs who acted responsibly to preserve their rights before the Monition Date to bear the entire common benefit fee burden, (if any), while those who did not file in the MDL, but receive the same benefits, shoulder none of the responsibility.

Nor would it be fair to allow plaintiffs' attorneys, who are relying on the PSC and other Common Benefit Attorneys to develop the case and prepare it for trial, to pocket the entire attorney fee for themselves, by settling their clients' cases with Feinberg through the GCCF on the eve of trial.

## Conclusion

For these reasons, and for the reasons set forth in the original PSC STATUS REPORT AND MEMORANDUM IN SUPPORT OF MOTION TO ESTABLISH ACCOUNT AND RESERVE FOR LITIGATION EXPENSES, the Motion should be granted.

This 22nd day of November, 2011.

Respectfully submitted,

_____/s/ Stephen J. Herman_____
**Stephen J. Herman**, La. Bar No. 23129
**HERMAN HERMAN KATZ & COTLAR LLP**
820 O'Keefe Avenue
New Orleans, Louisiana 70113

_____/s/ James Parkerson Roy_____
**James Parkerson Roy**, La. Bar No. 11511
**DOMENGEAUX WRIGHT ROY & EDWARDS LLC**
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501

Telephone: (504) 581-4892
Fax No. (504) 569-6024
E-Mail: sherman@hhkc.com
*Plaintiffs' Liaison Counsel*

Telephone: (337) 233-3033
Fax No. (337) 233-2796
E-Mail: jimr@wrightroy.com
*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Reply Brief will be filed into the record *via* the Court's ECF electronic filing system and will be served on all counsel *via* Lexis-Nexis File & Serve, pursuant to PRE-TRIAL ORDER NO. 12, this 22nd day of November, 2011.

/s/ Stephen J. Herman and James Parkerson Roy