UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179 SECTION: J(1) |
| This Document Applies to: All Cases | * * * * * | JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**ORDER AND REASONS**
[Regarding Motion *in Limine* to Exclude Settlement Evidence]

Before the Court are BP's Motion *in Limine* to Preclude the Introduction of Evidence Related to Settlements Among the Parties (Rec. Doc. 4813), Cameron's Opposition in Part (Rec. Doc. 4861), the United States's opposition letter (Rec. Doc. 4888), Halliburton's response letter (Rec. Doc. 4897), the PSC's Memorandum in Opposition (Rec. Doc. 4874), and BP's reply (Rec. Doc. 4958). The issue is whether this Court should issue an order in advance of trial precluding the parties from introducing evidence concerning settlements and settlement negotiations among the parties.

**BACKGROUND AND PROCEDURAL HISTORY**

This tenth category of motions *in limine* is described as "BP's and others' Motion *in Limine* to Preclude Evidence Regarding Discussions and Settlements." Rec. Doc. 4572, at 2. The issue is whether evidence regarding settlement discussions and settlements could be relevant to a proper purpose, and whether an offering party need make a showing of such a purpose in advance of trial. As of the dates of submission of the memoranda under consideration, BP had settled with Anadarko,

MOEX, and Weatherford. Cameron filed its opposition on December 12, 2011, and has since settled with BP. A brief review of the terms of the settlements is necessary due to the arguments raised in the instant motion.[1]

Under BP's settlement agreement with Anadarko, Anadarko is obligated to pay BP $4 billion and transfer its 25% leasehold interest in MC252 to BP; the parties released all claims against one another related to the Deepwater Horizon incident; and BP agreed to indemnify Anadarko for any liability for numerous civil claims in this MDL. Anadarko also agreed to transfer to BP all of its third-party claims other than its claims under its insurance policies. Additionally, the BP-Anadarko settlement provides that BP will reimburse Anadarko 12.5% of the aggregate of any recoveries in excess of $1.5 billion from third parties such as Transocean and Halliburton, up to the amount of $1 billion.

The BP-MOEX settlement obligates MOEX to pay BP the sum of $1,065,000,000, transfer its 10% leasehold interest in MC252 to BP, and release BP from all claims related to the Deepwater Horizon incident. In turn, BP released MOEX from all of its potential claims against MOEX related to the incident and agreed to indemnify MOEX for any liability for numerous civil claims in this MDL. MOEX also agreed to release all of its claims against Anadarko and transfer to BP all of its third-party claims other than its claims against Anadarko or any claims under MOEX's offshore insurance policies. Additionally, the BP-MOEX settlement provides that BP will reimburse MOEX 5% of any recoveries in excess of $25 billion from third parties such as Transocean and Halliburton, up to the amount of $500 million.

Weatherford entered into a settlement and indemnity agreement with BP, wherein

---

[1] The terms of the BP-Cameron settlement are not before the Court because they did not exist at the time the instant memoranda were filed.

2

Weatherford agreed to pay BP $75,000,000; the parties agreed to release all claims against one another related to the Deepwater Horizon incident; and the parties agreed to indemnify one another for any liability for numerous civil claims in this MDL. Additionally, Weatherford agreed to transfer to BP all of its third-party claims relating to the incident.

All three of these settlement agreements obligate the settling parties to cooperate with BP in its defense of any claims related to the Deepwater Horizon incident. The BP-Anadarko settlement goes even further with respect to claims that fall outside the indemnification provisions, wherein Anadarko agreed not to "make any assertion, claim, or defense in any form or manner which alleges, or characterizes facts as demonstrating, gross negligence, recklessness, or wilful misconduct" relating to BP, including through expert testimony.

## THE PARTIES' ARGUMENTS

BP moves this Court for an order precluding the parties from introducing evidence concerning settlements and settlement negotiations among the parties. Primarily, BP asserts that the general prohibition in Rule 408(a) excludes the evidence related to settlements and that the exceptions in Rule 408(b) do not apply in this case.[2] BP contends that excluding all settlement

---

[2] See FED. R. EVID. 408:

(a) **Prohibited Uses.** Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
  (1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and
  (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

(b) **Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

evidence from the Phase I trial is the only outcome consistent with the policy of promoting settlements embodied in the prohibition of Rule 408(a). BP further contends that no party has made a showing that the evidence is being offered for a permitted purpose, such as proving a witness's bias or prejudice, and that there is no reason to think it will be possible for any party to make such a showing. BP cites the settlements already entered into and asserts that there is nothing about any of those settlements that gives any party or witness any incentive to alter evidence or testimony from what it would have otherwise given. BP asserts that the opposite inference is warranted because indemnification of a witness or his employer results in a reduction in the threat of potential liability and a correlative reduction in any monetary or other incentive to shape testimony to avoid liability.

Secondarily, BP asserts that the fact and terms of any settlements are inadmissible as irrelevant, for the purpose of establishing liability for the loss of control of the Macondo Well. BP responds to the PSC and the United States's argument that the terms of settlements may be relevant to damage or penalty calculations by suggesting that the Court may consider these facts via stipulation or judicial notice. Finally, BP asserts that the evidence related to settlements must be excluded as unduly prejudicial under Rule 403. BP contends in a footnote that "[t]he issue is whether the evidence presented at trial (and the record generated for any appeals) should include unduly prejudicial facts" and that undue delay and cumulative evidence are likely to result from the introduction of settlement information into the trial. BP concludes both its initial memorandum and its reply by requesting that this Court make clear that the prohibitions in Paragraph 8 of PTO 38 apply equally to evidence, questions, or arguments that include the fact of settlement or the terms

---

Id.

of any settlement for purposes of the Phase I trial.[3]

The PSC asserts that BP's failure to identify the particular evidence it seeks to exclude is sufficient reason for the Court to deny BP's motion. Additionally, the PSC asserts that the evidence related to settlements is potentially relevant to prove the bias or prejudice of witnesses who may testify during Phase I, citing BP's settlement with Anadarko as an example of the realignment of the parties' interests. The PSC asserts that a witness who would otherwise have testified adversely to BP's interest may alter his or her testimony, in an attempt to show negligence or gross negligence on the part of Halliburton or Transocean, because his or her interests are now aligned with BP.[4] Further, the PSC asserts that evidence related to settlements will be relevant to a valuation of the actual harm component of compensatory damages in this case. Finally, the PSC asserts that PTO 38 does not preclude admission of settlement evidence, contending that the terms of PTO 38 provide the offering party an opportunity to demonstrate good cause justifying admission.

The United States asserts that BP's motion should be denied to the extent it seeks a blanket ruling that the following are inadmissible: (a) the fact that a settlement between parties has occurred, (b) the amount of the settlement, and (c) the terms of the final agreed-upon settlement. The U.S. asserts that the financial motivation for BP to attempt to control the presentation of evidence solicited or submitted by its settlement partners or indemnitees falls within the "bias or prejudice" exception of Rule 408(b). Additionally, the U.S. asserts that the settlements are also relevant to its civil penalty claim under section 311(b)(7) of the Clean Water Act ("CWA"). The CWA lists eight

---

[3] "Settlement Communications are not discoverable or admissible in this MDL absent a court order issued after the party seeking discovery or admission of such communications has demonstrated good cause." PTO 38, Rec. Doc. 3201, at 2.

[4] BP responds to this assertion by pointing out that BP and Anadarko have always had a shared interest in showing that BP is not liable, as it would be extremely difficult for Anadarko to be held liable if BP were not liable.

penalty factors that the Court must consider in determining the penalty, and the U.S. asserts that the settlement evidence would be directly relevant to the "economic impact of the penalty on the violator" and "any other matters as justice may require" factors.

Halliburton seeks the admission of evidence related to settlements to show the true alignment of the parties and the potential bias and prejudice on the part of witnesses for the settling parties. Halliburton asserts that the settling parties are aligned in interest and actively cooperating with BP, which is a circumstance that the fact finder is entitled to consider and that Halliburton is entitled to use in its defense. For example, the BP-Anadarko settlement prevents Anadarko from making a claim or defense that characterizes facts as demonstrating BP's gross negligence. Absent that requirement, Anadarko would have had an incentive to demonstrate BP's gross negligence, in order to lessen Anadarko's own liability. Halliburton contends that the settling parties, by obtaining indemnification from BP, have less of a motive or incentive to vigorously assert claims against BP or defend claims asserted against the settling parties. Further, Halliburton adverts that the settling parties have assigned to BP their rights to any claims asserted, or which could be asserted, against other parties (such as Halliburton), relating to the Deepwater Horizon incident. Finally, Halliburton asserts that the settlement evidence is relevant and admissible for purposes of assessing the damages recoverable by the defendants and assessment of the contribution and indemnity cross claims asserted in this MDL.

Cameron requests that BP's motion be denied to the extent it seeks to preclude the admission of settlements to show a witness's bias or prejudice without affording the offering party an opportunity to make such a showing because BP's request is premature. Further, Cameron asserts that settlement evidence may be necessary to establish a nonsettling party's rights to settlement

credits or offsets.[5]

**DISCUSSION**

Federal Rule of Evidence 408 excludes evidence of settlement negotiations if offered to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction. FED. R. EVID. 408(a). The Rule itself provides, however, that it does not require exclusion when the evidence is offered "for another purpose, such as proving a witness's bias or prejudice . . . ." FED. R. EVID. 408(b). Whether evidence should be admitted for another purpose is within the discretion of the district court; the decision to admit or exclude evidence proferred for other purposes will be reversed only for an abuse of that discretion. Belton v. Fibreboard Corp., 724 F.2d 500, 505 (5th Cir. 1984); see also United States Aviation Underwriters, Inc. v. Olympia Wings, Inc., 896 F.2d 949, 956 (5th Cir. 1990) (Rule 408 permits settlement evidence for any purpose except to prove or disprove liability or the amount of the claim). Therefore, this Court has wide latitude to decide whether the evidence should be admitted based on whether the offering party has demonstrated that the evidence is being offered for a purpose outside the general prohibition of Rule 408(a).

BP asserts that the general prohibition in Rule 408(a) excludes all evidence related to settlements and that the exceptions in Rule 408(b) do not apply in this case. However, its argument is based upon evidence that BP anticipates will be introduced rather than evidence actually

---

[5] Cameron filed its opposition (Rec. Doc. 4861) on December 12, 2011, and has since settled with BP.

introduced.[6] The Court finds that the proper course is to wait until any settlement evidence is actually sought to be introduced to determine admissibility. If a party offers settlement evidence for the purpose of proving a witness's bias or prejudice, and demonstrates good cause for its admission in order to comport with PTO 38, the evidence could provide a basis upon which the Court may make or clarify a finding of fact. On the other hand, if a party inappropriately offers settlement evidence to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction, the Court can decline to admit that evidence when it is actually offered. It is sufficient for present purposes that there are plausible scenarios in which settlement evidence would be probative concerning bias. For example, because Anadarko is now contractually prevented from attempting to prove any gross negligence of BP and because Anadarko could receive a percentage of third-party recoveries by BP against its co-defendants, Anadarko's post-settlement, realigned interest could suggest an incentive to prove the gross negligence of BP's co-defendants.

BP's additional arguments for inadmissibility under Rules 402 and 403 request a premature decision as well. The standard for relevance under Rule 401 is broad enough to encompass settlement evidence offered for purposes outside the general prohibition of Rule 408(a), so a blanket ruling precluding introduction of settlement evidence before any evidence has actually been offered would be premature. Similarly, any ruling regarding concerns of cumulative evidence, undue delay, or a waste of time should not be made before trial based only on the consideration of evidence that

---

[6] For instance, BP asserts that "much, if not all, of the 'testimony' that the PSC and the U.S. claim they need to show is biased will likely be presented via designations of deposition testimony that pre-dates any relevant settlement." Rec. Doc. 4958 at n. 1.

BP *anticipates* will be introduced.[7]

Finally, it should be noted that PTO 38 has only preliminarily addressed the admissibility of evidence regarding settlement negotiations in this MDL, expressly leaving the door open to the admissibility of "Settlement Communications," if the offering party demonstrates "good cause." PTO 38, Rec. Doc. 3201, at 2 (see also footnote 2, *supra*). For the purposes of PTO 38, the term "Settlement Communications" is defined as:

> (a) oral or written communications that occurred between April 20, 2010 and the date of this order relating to the settlement of the Subject Claims; (b) oral settlement discussions between any Parties concerning any Subject Claims that take place after the date of this Order; and (c) materials in written or electronic form that are: (i) prepared for purposes of settlement negotiations with respect to any Subject Claims, (ii) exchanged by and between the negotiating parties in settlement negotiations with respect to any Subject Claims after the date of this Order, and (iii) labeled in accordance with Paragraph 5.

Id. Paragraph 5 requires all written or electronic materials created after the date of PTO 38 that a party wishes to have treated as "Settlement Communications" to be "conspicuously labeled 'Settlement Communication' at the time of the exchange." Id. BP seeks an order precluding the parties from introducing *any* evidence concerning settlements and settlement negotiations among the parties, rather than seeking an exclusion of specific evidence proffered by a party. Therefore, PTO 38 is irrelevant to the instant motion.

For the foregoing reasons, **IT IS ORDERED** that BP's Motion *in Limine* to Preclude the Introduction of Evidence Related to Settlements Among the Parties (Rec. Doc. 4813) be and is

---

[7] Further, although evidence may also be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, "[t]his portion of Rule 403 has no logical application to bench trials." Gulf States Utilities Co. v. Ecodyne Corp., 635 F.2d 517, 519 (5th Cir. 1981). "Rule 403 assumes a trial judge is able to discern and weigh the improper inferences that a jury might draw from certain evidence, and then balance those improprieties against probative value and necessity. Certainly, in a bench trial, the same judge can also exclude those improper inferences from his mind in reaching a decision." Id. BP asserts that the record on appeal should be free from any unduly prejudicial evidence regarding settlement, but the issues of unfair prejudice, confusion of the issues, or misleading the jury would surely be as inapplicable to the Fifth Circuit.

9

hereby **DENIED**.

New Orleans, Louisiana, this 7th day of February, 2012.

_____
UNITED STATES DISTRICT JUDGE