

**DALLAS** HOUSTON

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041

214.939.4400
800.662.8393
214.760.7332 Fax

GodwinRonquillo.com

DONALD E. GODWIN, SHAREHOLDER
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:     214.939.4412
DIRECT FAX:     214.939.4803
DGodwin@GodwinRonquillo.com

February 6, 2012

**BY EMAIL**

| | |
|---|---|
| The Honorable Carl J. Barbier | The Honorable Sally Shushan |
| United States District Judge | United States Magistrate Judge |
| 500 Poydras Street, Room C-268 | 500 Poydras Street, Room B345 |
| New Orleans, Louisiana  70130 | New Orleans, LA 70130 |

Re:   Reply Letter Brief Re Hearsay Objections to Trial Exhibits 151, 2731, 2964, and 1057: Email strings contained in the PSC 300

Dear Judge Barbier and Magistrate Judge Shushan:

In accordance with the Court's request in its February 2, 2012 email, this letter brief replies to the PSC and United States' Joint Memorandum in Support of Motion *in Limine* to Admit Into Evidence Representative E-Mail Communication Exhibits (the "Plaintiffs' Brief")(Rec. Doc. 5559-1).  The arguments below are made in addition to  Halliburton Energy Services, Inc.'s Letter Brief Re Hearsay Objections to Trial Exhibits 151, 2731, 2964, and 1057: Email strings contained in the PSC 300 ("HESI's Brief")(Rec. Doc. 5561).[1]  HESI objects to and moves to strike Exhibits 151, 1057, 2731, and 2964 as inadmissible hearsay.[2]

**A.**     **Burden**:  Pursuant to the Court's order dated January 11, 2012 (Rec. Doc. 5143) (the "Order"), the *offering* party or parties, in this instance the PSC and the United States (the "Plaintiffs"), must prove each of the five elements set forth by the Court for an email chain to qualify under the so-called business record exception.[3]  The Plaintiffs failed to satisfy (or in many cases, even attempt to satisfy) each of the required elements for the exhibits in question. The Plaintiffs similarly fail to meet their burden with regard to showing that two of these exhibits are party admissions.

---

[1] HESI incorporates by reference all previous arguments made in HESI's Brief.

[2] HESI reserves all other non-hearsay objections to these exhibits, including but not limited to those submitted in Rec. Docs 4525 and 4137.  Additionally, HESI reserves the right to object to any emails which were not originally designated on the "PSC 300" list.

[3] *See* HESI's Brief at 2.

**B.     Exhibit 151:** HESI agrees with Plaintiffs that the cover email "contains no relevant statements." Plaintiffs' Brief at 4. Accordingly, the email is not admissible, even if Plaintiffs do not seek admission for the truth of the matters asserted. With respect to the notes attached to the email, Plaintiffs claim they are admissible by incorporating and restating their prior arguments[4] that all such notes are categorically business records. "Whether *a particular record* qualifies for the exception hinges upon the content and preparation of the record." Order at 5-6 (emphasis added). Plaintiffs have not satisfied their burden of showing that *these specific notes* fall into the business record exception.[5]

The rationale underlying the business record exception is that *the inherent reliability of business records* is supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation. *US vs. Wells*, 262 F.3d 455, 462 (5th Cir. 2001). The notes do not demonstrate any "inherent reliability." The notes, which contain double hearsay, purportedly reflect David Sims's oral recollection of certain events surrounding the Incident, *over two months after the Incident*. Sims had a key leadership role over the BP drilling team that was responsible for the Macondo well. His personal involvement in the events leading up to the Incident preclude any indicia of inherent reliability. The fact that the interviewers/note-takers were BP representatives that were preparing for litigation also undermines any indicia of inherent reliability.[6]

Recording recollections of events eighty-three days after such events is not "at or near the time of the recorded events," despite the Plaintiffs' unsupported argument for a five month window. Plaintiffs have not shown that Sims had personal knowledge of what he told the interviewers.[7] Nor have Plaintiffs shown any BP policy requiring communications of this nature to be recorded in this manner.[8]

Finally, Plaintiffs have not shown that performing the interview, transcribing the statements in this manner, and emailing the statements are practices that occur in the regular course of BP's business.[9] Although Exhibit 151 is likely a party admission against BP under

---

[4] Two of the referenced letters are cited without dates or docket numbers.

[5] *See* HESI's Letter Brief re Motion to Exclude Non-Governmental Reports and Response to PSC's October 17, 2011 Letter Regarding Alleged Daubert/702 Issues. (Rec. Doc. 4894).

[6] The October 17, 2011 letter that Plaintiffs incorporate into their Brief (the "Letter") claims that all the notes are accurate based solely on the deposition testimony of one of the note-takers. (Rec. Doc. 4340-6 at 5_. This is hardly compelling evidence of trustworthiness.

[7] The notes explicitly state that "David was not aware of any specific example" when discussing complaints that were supposedly made pre-incident about contractors. Exhibit 151 at 11 (notes page 10).

[8] In fact, the Letter states that the notes should have been "uploaded to a SharePoint site maintained by BP" and not emailed. *Id*.

[9] The Letter cites to a BP general practice regarding incident investigations, but a policy that exists in a manual for a worst case scenario does not rise to the level of a regular business activity.

Fed. R. Evid. 801(d)(2)(D), the email and attachment constitute hearsay without exception as to HESI.

      **C.**    **Exhibit 1057:** Plaintiffs' analysis of Exhibit 1057 ignores the author's testimony about the email. While HESI has no reason to dispute that the email was sent at or near the time of the event recorded, Bodek did not testify that he had personal knowledge of the events leading up to the squeeze job. *Id*. at 7. To the contrary, he testified about his *lack of knowledge*. *See* Bodek Depo. at 159:12-13 ("I didn't know it was a cement job").

      Plaintiffs attempt to show that the email was sent in the course of regular business activity by describing Bodek's duties to communicate with other BP employees. However, even if Bodek had such duties, Plaintiffs have not shown that it was in BP's regular course of business for Bodek to send *this particular email*. As he states four times between page 158, line 16 and page 159, line 13 of his deposition, *he was kidding*. Bodek Depo. 158:16-159:13. Additionally, there is no evidence that it is BP's "regularly conducted business activity" to send or receive emails that contain attempts at humor. Plaintiffs' Brief at 8.

      Although Bodek may be qualified to prove up the email, he did just the opposite by testifying about his lack of knowledge concerning the events surrounding the email. Because Bodek was kidding and had no personal knowledge of the events leading up to the squeeze job, the Court should reject Plaintiffs' claim that "there is every reason to believe that Bodek had a strong motive to be accurate and not to be deceitful when he typed his statement." *See* Bodek Depo. at 159:8 ("I was kidding. I did not know").

      The Plaintiffs' argument that Exhibit 1057 is at least an admission fails because "[t]he mere fact that a producing defendant's employee sent an email while at work from a work computer to a co-employee does not mean that the email was composed or received concerning a matter within the scope of an employee's employment." Order at 10. Bodek was not employed by BP to send "kidding statements" to "friends" via email. *See* Bodek Depo. at 158:25-159:2 (stating that email was a "kidding statement when talking to a friend at an expense of another co-worker"). Nor was Brian Morel employed by BP to receive such emails. Because Plaintiffs have not shown that it was part of Bodek's employment responsibility to email jokes to Morel, this exhibit is not an admission. *See* Fed. R. Evid. 801(d)(2)(C).

      Plaintiffs claim that Exhibit 1057 should be admitted under Fed. R. Evid. 801(c) to show "contemporaneous evidence of Bodek's opinion of the cement job's quality" should be rejected. *See* Plaintiffs' Brief at 11. Bodek admitted that he had no knowledge of the cement job. Because he had no personal knowledge of the cement job, he could not have an opinion about its quality. The only thing this email is evidence of is Mr. Bodek's sense of humor on February 13, 2010. Bodek had no incentive to protect HESI, and thus his *testimony*, not the email, should be considered reliable.

      **D.**    **Exhibit 2731:** Contrary to Plaintiffs' assertion, the Court's Order Regarding Halliburton's Motion to Disqualify Michael Viator, Fred Sabins and CSI Technologies, Inc

("CSI") (Rec. Doc. 4838) is highly relevant to the admissibility of this document.[10] By allowing into evidence documents reflecting CSI's work and opinions, the Plaintiffs request an end-run around the Court's ruling. Granting this request would render the Court's order meaningless. The fact that Kent Corser, a member of BP's Bly investigation team, is the author of the email does not render it any more admissible since it is entirely focused on CSI's opinions, which have been stricken.

While a certain level of frequency is required to qualify a document under the business record exception, frequency *alone* is not sufficient.[11] Furthermore, the focus is on the regularity of the activity within the communication, in addition to the communication itself. In this case, the email does not pertain to an activity the "type of which regularly occurs in the course of [BP's] day-to-day activity." Order at 8 (quoting Graham, Federal Practice and Procedures: Evidence §7047 (Interim Edition)). Additionally, the email was sent weeks after the event recorded in it.

Furthermore, Kent Corser purports to provide factual information, such as "we had a 16.7 ppg tail," to which he has *no personal knowledge*. Plaintiffs do not even claim that Corser has personal knowledge of the contents of the email. Because Corser was not on the rig or otherwise involved in creating the well design, he received this information from another unnamed source, making this statement hearsay within hearsay.

**E.** **Exhibit 2964:** Plaintiffs argue that this exhibit is not offered for the truth of the matters asserted, but "to illustrate the nature and extent of BP's role in, and influence over, CSI's testing and reporting process." Brief at 19; Rec. Doc. 4838. There is no permissible reason for the Plaintiffs to offer any exhibit to illustrate BP's influence over CSI because CSI's testimony and opinions will never be introduced or rebutted. While HESI agrees that BP's influence over CSI was profound and extensive, this level of bias is exactly why this exhibit should not be entered into evidence.

For the foregoing reasons, HESI respectfully requests that the Court sustain its hearsay objections to Exhibits 151, 1057, 2731, and 2964.

Respectfully submitted,

*Donald E. Godwin*

Donald E. Godwin

---

[10] With regard to Exhibits 2731 and 2964, HESI incorporates by reference all arguments and authorities cited in its Motion to Exclude testimony, documents, and other evidence reflecting any expert opinion(s) of Fred Sabins or CSI Technologies, Inc. regarding the Macondo well. (Rec. Doc. 5142).

[11] The Court, as its fourth requirement for the business record exception, states "it must be the producing defendant's regular practice to send or receive emails that record the type of the event(s) documented in the email." Order at 7. However, this is but one of five requirements. No matter how great the regularity, the proponent must also show evidence of the other requirements.