# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179<br><br>SECTION: J(1) |
| This Document Applies to:<br>All Cases | * * * * * | JUDGE BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## ORDER AND REASONS
[Regarding Motions *in Limine* to Exclude Instances of Prior Alleged Improper Conduct <u>and</u> Prior Adverse Criminal, Civil or Regulatory Proceedings]

Before the Court are the PSC's letter brief (Rec. Doc. 4340-4); two related motions *in limine* filed by BP (Rec. Docs. 4514 and 4512); responses by the United States (Rec. Doc. 4759), Halliburton (Rec. Doc. 4770), and the PSC (Rec. Doc. 4648); and replies by BP (Rec. Docs. 4743 and 4744).

The first motion is described as "BP's and others' Motion *in Limine* to Preclude Evidence Regarding Instances of Prior Alleged Improper Conduct Unrelated to the Macondo Well Incident." Rec. Doc. 4572, at 2. The second motion is described as "BP's and others' Motion *in Limine* to Preclude Evidence Regarding Prior Adverse Criminal, Civil, or Regulatory Proceedings Unrelated to the Macondo Well Incident."

The contested exhibits at issue all share one of two common characteristics: (1) they pertain to a prior incident of some sort of disaster or accident in which BP was involved, and/or (2) they pertain to a prior civil, criminal, or regulatory proceeding in which BP was involved. The types of these exhibits are widely varied. One is a book called *Failure to Learn*, which purports to analyze

the BP Texas City refinery disaster and which allegedly was required reading for BP's executive management following the disaster. TREX 6026; Rec. Doc. 4648, at 7. Another is an "iWatch News" article purporting to report on alleged OSHA violations and penalties. TREX 6027. Other exhibits include the "OSHA Fact Sheet" and "Deferred Prosecution Agreement" . Several other exhibits include the Scottish Environment Protection Agency's "Major Incident Investigation Report" concerning the 2000 incident at BP's Grangemouth, Scotland complex (TREX 20006); a BP press release of its announcement of plea agreements and a deferred prosecution agreement with the DOJ regarding the Texas City refinery incident, oil transit line spills in Alaska, and improper propane trading (TREX 3820); BP "Risk Committee" minutes (TREX 3824); BP's internal emails and powerpoint presentations (TREX 3861); minutes of a meeting between BP and "Hermes (Equity Ownership Services)" (TREX 6250); a judgment in the Alaska District Court resulting from BP's guilty plea to Clean Water Act ("CWA") offenses (TREX 6008); and a judgment in the Southern District of Texas resulting from BP's guilty plea to Clean Air Act offenses (TREX 6006).

The parties seeking to admit the evidence at issue characterize it as probative of BP's past "process safety" failures. The PSC cites examples of BP's employees and experts having acknowledged that learning and implementing the lessons of prior incidents is an essential part of process safety and risk management. See Rec. Doc. 4648, at 2-3.

The parties' submissions identify three incidents involving BP facilities at which process safety arguably failed: (1) the 2005 Texas City refinery explosion, (2) the 2000 Grangemouth, Scotland petrochemical facility incidents, and (3) the 2006 rupture of a corroded pipeline at Prudhoe Bay, Alaska. The Texas City disaster involved a ground-level explosion that killed 15 people and injured 80 others. The incident resulted in BP pleading guilty to felony violations of the Clean Air

Act and a $50 million fine. The Grangemouth facility was the site of three incidents in 2000, none of which involved serious injuries: a power distribution failure, a steam main rupture, and a fire created by an ignited vapor cloud. The Prudhoe Bay oil spill in northern Alaska released over 200,000 gallons of oil. BP again pled guilty, this time to criminal CWA violations, and was fined $20 million. Allegedly in direct response to the Texas City incident, BP implemented a new Operating Management System ("OMS").[1] Allegedly, the OMS was not in place at Macondo.[2] These three incidents, investigations arising therefrom, and actions taken in response to the investigations, all constitute the evidence subject to the first motion. The second motion concerns evidence of fines and penalty assessments arising out of proceedings initiated as a result of the three and other prior incidents. For example, there are exhibits including negotiated settlements between BP and the government based on allegations of improper trading activity and instances of alleged improper disposal of hazardous materials.

## A. Evidence of Prior Incidents or Alleged Prior Misconduct

The Fifth Circuit has recognized that "[e]vidence of similar accidents occurring under substantially similar circumstances and involving substantially similar components may be probative . . . ." <u>Jackson v. Firestone Tire & Rubber Co.</u>, 788 F.2d 1070, 1082 (5th Cir. 1986). The proponents here have failed to demonstrate any substantial similarity between the prior incidents and the Macondo casualty. They argue, however, that each of the prior incidents involved "process safety" and therefore is admissible to bolster their claims that BP's lack of an adequate process

---

[1] <u>See</u> Deposition of Mark Bly, 225:17 to 226:18 (stating that the OMS was part of company-wide changes post-Texas City to improve safety performance).

[2] <u>See</u> Deposition of Kal Jassal, 143:14 to 143:22 (stating that the OMS did not apply to leased facilities like the Deepwater Horizon).

safety system contributed to the Macondo blowout. BP argues that such evidence is merely intended to prove "bad character" and that BP allegedly acted in a similarly "bad" manner in connection with Macondo, a purpose expressly prohibited by Federal Rule of Evidence 404(b).

FRE 404(b) states, in pertinent part:

**(1) Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2) Permitted Uses; Notice in a Criminal Case.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Evidence of prior conduct should be excluded under FRE 404(b) because the alleged prior conduct is not sufficiently similar to the Deepwater Horizon incident, particularly with respect to the issues that will be tried in Phase I. The evidence should also be excluded under FRE 403, which states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As to the dangers of unfair prejudice, confusion of the issues, or misleading the jury, these are not valid concerns in the context of a non-jury trial.[3] However, the Court is greatly concerned about considerations of "undue delay, waste of time, and presentation of cumulative evidence ." Phase I of this limitation trial is anticipated to last approximately three months. If the Court permits the

---

[3]Although evidence may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, "[t]his portion of Rule 403 has no logical application to bench trials." Gulf States Utilities Co. V. Ecodyne Corp., 635 F.2d 517, 519 (5th Cir. 1981). "Rule 403 assumes a trial judge is able to discern and weigh the improper inferences against probative value and necessity. Certainly, in a bench trial, the same judge can also exclude those improper inferences from his mind in reaching a decision." Id.

parties to introduce evidence of prior accidents or prior instances of alleged misconduct, BP will have to be afforded an opportunity to present evidence concerning these prior events in order to both (1) defend its conduct regarding those instances and (2) prove those instances' dissimilarity to the facts of this case, so as to demonstrate the inapplicability of the exceptions to Rule 404(b).

The prior incidents and the Macondo incident are remote in time. The prior incidents were all land-based, while the Macondo incident occurred in the Gulf of Mexico. Additionally, the circumstances of oil refinery disasters and a MODU exploratory drilling disaster are vastly different. The PSC and the Government argue that the similarity between prior incidents and Macondo is that they are all large-scale, process-safety caused industrial accidents. But that is an over-generalization; the specific process safety failures at a refinery are different from those on a MODU.

If the Court were to allow evidence of previous, unrelated incidents, there is a real danger of creating a "trial within a trial". See In re Chicago Flood Litig., 1995 WL 437501, at *6 (N.D. Ill. July 21, 1995) ("[E]vidence regarding prior accidents may lead to a "trial-within-a trial" by requiring the defendant to bring in extensive evidence to establish that the prior incident lacks probative value.").

For these reasons, the Court will grant the motion in limine to exclude evidence of prior accidents or alleged misconduct in Phase I of the trial. It may be that some of this evidence will become more relevant and admissible at a later phase, e.g., if and when the Court is required to consider the quantum of punitive damages or the assessment of CWA penalties. However, in determining what caused the April 20, 2010 blowout, any potential probative value of such evidence is substantially outweighed by concerns of undue delay and waste of time.

This ruling does not preclude other evidence of whether or not BP had in place an adequate

5

process safety system on the Deepwater Horizon at the time of the Macondo blowout in April, 2010. For example, the plaintiffs allege that following the Texas City fire in 2005, BP created a new OMS specifically designed to improve process safety throughout BP's operations. Allegedly, the OMS should have been, but was not, in place for the drilling of the Macondo well in the Gulf of Mexico. This is an example of relevant, and admissible, evidence pertaining to BP's alleged lack of an adequate process safety system for the Macondo operation.

Also, expert reports are not necessarily excluded merely because they rely upon prior-incident process safety evidence. See FED. R. EVID. 703 ("If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted."). Arguably, evidence of prior incidents would be the precise sort of information that process safety experts would rely upon, even in forming opinions about what happened at Macondo.

**B. Evidence of Prior Civil, Criminal or Regulatory Proceedings**

As to evidence of prior adverse criminal, civil, and regulatory proceedings, the arguments and analysis are similar. This evidence fails under FRE 404(b) for lack of similarity; FRE 401 for lack of relevance; and FRE 403 for reasons of undue delay and waste of time during the trial of Phase I. None of the proffered evidence would make it more or less likely that BP is responsible for loss of control of the Macondo well. For these reasons, this evidence is excluded from Phase I of the trial. Again, it may be that some of this evidence will become more relevant and admissible at a later phase where the Court is required to assess punitive damages or CWA penalties.

Accordingly,

**IT IS ORDERED** that

BP's Motion *in Limine* to Preclude the Introduction of Evidence Regarding Instances of Prior Alleged Improper Conduct Unrelated to the Macondo Well Incident (Rec. Doc. 4514); and BP's Motion *in Limine* to Preclude the Introduction of Evidence Regarding Prior Adverse Criminal, Civil, or Regulatory Proceedings Concerning Conduct Unrelated to the Macondo Well Incident (Rec. Doc. 4512), are both **GRANTED IN PART**, as described above.

New Orleans, Louisiana, this 9th day of February, 2012.

_____
UNITED STATES DISTRICT JUDGE