UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179 SECTION: J(1) |
| This Document Applies to: All Cases | * * * | JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

ORDER AND REASONS
[Regarding Motions *in Limine* to Exclude Other Government
Reports and Congressional Testimony]

Before the Court are the PSC's letter brief (Rec. Doc. 4340-2); motions *in limine* by Cameron (Rec. Doc. 4506), BP (Rec. Doc. 4515), Transocean (Rec. Doc. 4521), and Halliburton (Rec. Doc. 4523); an opposition by the PSC (Rec. Docs. 4650-1 and 4671); and responses and replies by Cameron (Rec. Docs. 4644 and 4742), BP (Rec. Doc. 4746), Transocean (Rec. Doc. 4747), Halliburton (Rec. Doc. 4776), Dril-Quip (Rec. Doc. 4768), and the United States (Rec. Doc. 4761). This category of motions *in limine* is described as "BP's and others' Motion *in Limine* to Preclude the Introduction into Evidence of Other Government Reports and Testimony (including a discussion of reliance upon this material by experts)." Rec. Doc. 4572, at 1. The issues pertain to the admissibility *vel non* of a number of governmental records and reports: the Investigation Report by the U.S. Chemical Safety and Hazard Investigation Board into Texas City Refinery Explosion and Fire (the "Texas City Refinery Report"); the Chief Counsel's Report; Tony Hayward and Jesse Gagliano's congressional testimony; a deferred prosecution agreement between

1

the United States and BP (the "Deferred Prosecution Agreement" or "DPA"); an OSHA fact sheet regarding BP (the "OSHA Fact Sheet"); the Report of the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling (the "National Commission Report"); and the so-called "Marshall Islands Report." Although the motions *in limine* address governmental reports generally, the briefs limit their arguments to the previously-mentioned reports.

The main issue is whether these items of evidence qualify for the "public records" hearsay exception found in Federal Rule of Evidence ("FRE") 803(8). A side issue briefly raised by BP is whether experts could rely on any of these documents, to the extent they are hearsay not covered by the FRE 803(8) exception.

**A. National Commission Report and Chief Counsel's Report**

As an initial matter, based on the Fifth Circuit case of U.S. v. Central Gulf Lines, Inc., 747 F.2d 315, 319 (5th Cir. 1984), the reports appear to be public records because the National Commission was authorized by and had a duty to report to the President. See id. at 319 ("[T]he record sought to be admitted must be made from *matters within the personal knowledge of the public official* making the record *or his agent* **or someone with a duty to report the matter to a public official. Rule 803(8) does not require a public official to make the record.**") (emphasis added). In Central Gulf, the report was prepared by an independent surveyor pursuant to a regulation. Likewise, in this case, the National Commission prepared its report pursuant to federal law (the Federal Advisory Committee Act and an executive order), and the National Commission Report is therefore "public."[1]

---

[1] See also In re Sept. 11 Litig., 621 F. Supp. 2d 131, 153 (S.D.N.Y. 2009) (finding the initial elements of Rule 803(8)(C) fulfilled by the 9/11 report of the National Commission on Terrorist Attacks, composed of 10 "prominent United States citizens" from different professions, because the report was one of a public commission pursuant to an act of Congress).

Although these reports may qualify as public records that are exempt from the hearsay rule under FRE 803(8), they contain multiple instances of inner hearsay that would have to be addressed at trial when a party seeks to introduce a portion of the reports. For example, the inner hearsay of other entities that provided information to the National Commission does not become admissible just because it is within a public record. See Romero-Baldazo v. Pan-Amer. Assur. Co., 1999 WL 824563, at *1 (5th Cir. 1999) ("Federal Rule of Evidence 803(8) applies to observations or findings of a government official, not to hearsay statements made by private actors which are contained in the report."); see also Moss v. Ole South Real Estate, Inc., 933 F.2d 1300, 1309-10 (5th Cir. 1991) (although government reports' reliance in part on hearsay evidence does not mandate exclusion, the appellate court noted that on remand, the district court "need not admit the entire investigatory file").

The Court is concerned by undue delay resulting from the need to conduct in-depth examinations to sift out the "inner hearsay" within otherwise admissible public records. This can be a valid ground for exclusion of any of the reports. See John McShain, Inc. v. Cessna Aircraft Co., 563 F.2d 632, 636 (3d Cir. 1977) (stating that admission of reports "would have involved a lengthy attempt to sift out admissible hearsay, as well as an inquiry into the 'circumstances bearing on . . . trustworthiness,'" which may have caused "undue delay or waste of time" during a lengthy trial). Just the first phase of the limitation trial is anticipated to last several months. Considering the volume of evidence and testimony which the parties plan to seek to introduce, much of which will likely be cumulative of that contained in the report, the Court does not intend to spend a great deal of time attempting to sort the wheat from the chaff. These reports are excluded from Phase I.

**B. Texas City Refinery Report**

The Texas City Refinery Report (or "TCR Report") was generated in March 2007 following

3

the March 2005 disaster at BP's Texas City refinery that killed 15 people and injured 180 others. The TCR Report was issued by the U.S. Chemical Safety and Hazard Investigation Board.

The Fifth Circuit has recognized that "[e]vidence of similar accidents occurring under substantially similar circumstances and involving substantially similar components may be probative . . . ." Jackson v. Firestone Tire & Rubber Co., 788 F.2d 1070, 1082 (5th Cir. 1986). The 2005 Texas City accident, which involved an explosion and fire at a refinery on land, is not substantially similar or relevant to the 2010 Deepwater Horizon casualty which involved a drilling vessel operating fifty miles offshore in navigable waters. Further, any arguable relevancy is substantially outweighed by "considerations of undue delay, waste of time or needless presentation of cumulative evidence" during a trial that is already anticipated to be very lengthy. See FRE Rule 403.

## C. Congressional Hearing Testimony

On the PSC's "List of 300" is the transcript of the June 17, 2010 hearing by the U.S. House of Representatives Committee on Energy and Commerce, Subcommittee on Oversight and Investigations, at which Tony Hayward testified. The congressional interview of Jesse Gagliano is also on the List of 300, although the parties did not submit the transcript of Gagliano's testimony with the instant set of motions *in limine*. Defendants object to the admissibility of the hearing transcripts of both Hayward and Gagliano.

The congressional hearing testimony of Hayward and Gagliano does not fall under Rule 803(8). However, the testimony may be admissible under another hearsay exception, as a prior inconsistent statement, or as a party admission.[2] In such a case, Hayward's testimony could be

---

[2] The Court notes that the deposition testimony of Mr. Hayward will be introduced at trial. Apparently, Mr. Gagliano will testify either live or by deposition. Accordingly, it is unclear what purpose their congressional testimony would serve except as possible impeachment material.

4

admissible against BP and Gagliano's against Halliburton. Further, experts may be allowed to allude to congressional hearing testimony. FRE 703 permits an expert's reliance upon inadmissible facts if of the type reasonably relied upon by experts in the field. Even if an expert discloses the congressional testimony to assist the Court's evaluation of the expert's opinion, the danger of unfair prejudice is mitigated by the fact that this is a non-jury trial.

**D. Marshall Islands Report**

The Republic of the Marshall Islands (the "Republic"), Office of the Maritime Administrator (the "Administrator"), issued its "Deepwater Horizon Marine Casualty Investigation Report," which recites that the investigation was conducted under the Republic's laws and regulations, to determine the cause of the Macondo well casualty. The executive summary explains that the Republic was the Deepwater Horizon's flag state. It explains that the Administrator's investigation drew upon Joint Investigation documents and testimony, the Republic Administrator's own investigators' findings, outside experts, and technical consultants.

The issue of the Marshall Islands Report's admissibility has not been thoroughly briefed by the parties; and even though the introduction to the report states that the report is based in part on Joint Investigation evidence and testimony, the full extent of reliance is unclear. The report's reliance on Joint Investigation materials may run into statutory exclusion issues, and there are also trustworthiness issues to the extent the report relies only upon *parts* of the Joint Investigation. In other words, while basing the report on inadmissible evidence may present statutory exclusion concerns, basing the report on only a portion of available Joint Investigation materials may pose just-as-significant reliability concerns. It is also not clear that the report is the product of proper

5

legal authority.³  For these reasons, this report is excluded.

**E.  Deferred Prosecution Agreement**

The DPA is a 2007 agreement between BP and the DOJ regarding an alleged conspiracy by BP to manipulate the February 2004 propane market so as to inflate the price of propane.

The DPA does not fall under Rule 803(8).  This does not appear to be a report or record of a public agency.  Further, although it appears an open question whether legal conclusions within a document that otherwise consists of "factual findings" under Rule 803(8) are admissible, the Ninth Circuit in <u>Sullivan v. Dollar Tree Stores, Inc.</u>, 623 F.3d 770, 777 (9th Cir. 2010) joined the Eleventh and Fourth Circuits in answering in the negative.  Thus, Rule 803(8)(c) would not apply.  Rule 803(8)(A) does not apply because the DPA does not set forth activities of the DOJ.  Rule 803(8)(B) does not apply because the DPA does not set forth "matters observed"—but rather, BP's contractual agreement.

Also, the Court finds that the conduct at issue in the DPA is too dissimilar and not relevant to the primary issue in the upcoming trial—the cause or causes of the Deepwater Horizon blowout and well control failure.

**F.  OSHA Fact Sheet**

The OSHA Fact Sheet is an informational flyer on OSHA's website.  It is a summary of (1) BP's alleged failure to comply with a settlement agreement with OSHA regarding the Texas City refinery blowout and (2) citations for alleged safety violations discovered during OSHA's inspection

---

³ <u>See</u> Marshall Islands Report, at 49 n.461 ("Conclusions regarding the causal factors of the casualty and the subsequent fire and explosions are drawn from the annexed consultant reports . . . as these topics are outside the purview of the flag State."); at 53 ("[T]he regulation and oversight of drilling operations are outside the purview of the flag State . . . .").

of the Texas City facility in 2009. The OSHA Fact Sheet recites that it "is advisory in nature and informational in content." The Court is not persuaded that the OSHA Fact Sheet qualifies for the Rule 803(8) hearsay exception. Moreover, the Court has excluded evidence pertaining to the Texas City accident.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS IN PART and DENIES IN PART** the subject motions in limine (Rec. Docs. 4506, 4515, 4521, and 4523). Except as stated above, the other governmental reports and congressional testimony are excluded from evidence in connection with the Phase I of the limitation trial. It may be that some of the excluded evidence will become more relevant and admissible in a later phase of the trial, particularly in connection with the assessment of punitive damages or civil fines and penalties.

New Orleans, Louisiana, this 9th day of February, 2012.

_____
UNITED STATES DISTRICT JUDGE