UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No.     2179 |
| | Section:       "J" |
| This Document Relates to:   2:12-cv-00067 | Judge Barbier |
| | Mag. Judge Shushan |

*********************************************************************

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND

MAY IT PLEASE THE COURT:

The Plaintiffs Rory Degeyter, Hillard Doucet and Shawn Polkey, with all due respect to this Honorable Court, submit this Memorandum in Support of their Motion to Remand the Petition for Damages to Lafourche Parish, Louisiana after the Defendants BP America Production Company and BP Exploration & Production, Inc. [collectively referenced as BP] removed it asserting exclusive Federal jurisdiction under the Outer Continental Shelf Land Act (OCSLA), 43 USCA 1349 (b) (1).

The Petition for Damages[1]

The Plaintiffs filed a State action against Danos and Curole Staffing, L.L.C. (Danos) and both the BP entities, asserting that Danos was a Louisiana Company. (id at paragraph I)  The Plaintiffs further alleged that each of them entered a Master Charter Agreement with the BP entities for a fixed rate. (id at paragraphs III-V).  The Plaintiffs contended the charter agreement required written notice of termination. (id at paragraph VI).  Danos was specifically identified as:

> Defendant Danos and Curole Staffing, L.L.C., at all relevant times herein, administered the Vessel of Opportunity (V.O.O.) Program as the agent of Defendants BP Exploration & Production, Inc. and BP America Product

---

[1] Case 2-12-cv-00067, Document 1-1

1

> Company, including controlling assignments of the vessels and paying invoices of the V.O.O. participants. (id at paragraph VII).

The Plaintiffs averred that the Defendants ceased payments to them (id at paragraphs VIII and IX) but that BP's agent Danos:

> Represented to the Plaintiffs at the time of "decon" between September 17-20, 2010 they should remain on "standby" until they received written notice from Defendants BP Exploration & Production Inc. and/or BP America Product Company. Furthermore, Defendant Danos and Curole Staffing, L.L.C. represented to the Plaintiffs they would be paid according to the contract, until written notice was received.

The Plaintiffs' specifically pled reliance upon the (mis)representations of Danos and sought recovery of the money owed by <u>all</u> defendants until they received written termination, months later. (id at paragraphs X-XV).

The Plaintiffs' Affidavits[2]

The Plaintiffs, in connection with their Motion to Remand, submit their affidavits, which provide:

> Affiant is the captain and owner of the motor vessel, T Rozo, in the attached photograph (State Registration Number LA 8211 FM). Affiant entered a charter agreement through Danos & Curole Staffing, L.L.C. for marine work in the inland bays and bayous of Lafourche and Jefferson Parish (Primarily Lake Raccourci and Caminada Bay). At no time was he directed nor did he conduct marine work beyond 3 miles from the lawful Louisiana coastal border.

> The Defendant, Danos & Curole Staffing, L.L.C. contacted the affiant directly for the above described marine services.

---

[2] See Exhibit 1, in globo.

>The Defendant, Danos & Curole Staffing, L.L.C. required that the affiant sign daily log sheets on their letterhead and/or forms to verify work done on a daily basis for every day work was conducted. All compensation for the marine work conducted by Affiant was provided by and through Defendant, Danos & Curole Staffing, L.L.C.

Additionally, to dispel any notion that BP would utilize the Plaintiffs "skiffs" on the Outer Continental Shelf are pictures of the respective vessels. (id)

Discussion

The only question presented by the Plaintiffs' Motion to Remand is the reach and potential application of the OCSLA. The Master Vessel Charter Agreement[3] provides:

>Article 2.    Employment and Services of Vessel
>
>A.    During each CHARTER TERM, the VESSEL shall be employed exclusively for CHARTERER'S use as vessel of opportunity in the carriage of CHARTERER'S employees, contractors, business invitees, equipment and provisions and in the performance of various tasks associated with oil spill response and containment efforts as directed by CHARTERER (hereinafter referred to as SERVICES). Such SERVICES shall include, but not be limited to, tending or deploying boom and skimming equipment, skimming operations, recovering oiled debris, collecting garbage, assistance with wildlife operations and towing equipment. The VESSEL shall be required to attend training, participate in training exercises and drill to receive the necessary oil spill clean up credentials as appropriate to develop skills and procedures for oil spill response and

---

[3] Document 1-14 pages 1-43

containment. The VESSEL shall be available and at CHARTERER's disposal for operation twenty-four (24) hours per day. The VESSEL shall not be used for any purpose other than performance of SERVICES during the CHARTER TERM. (id at page 16 of 43).

The Plaintiffs suggest that the maritime activities delineated in the Charter Agreement do not provide suitable specificity to conclude the moving defendants[4] have satisfied the test for determining whether Federal OCSLA jurisdiction exists in a breach of contract action. The "focus of the contract test" was set forth in Grand Isle Shipyard, Inc. v. Seacor Marine, L.L.C. 589 F.3d 778, 781 (5th Cir. 2009):

> "This test looks to where the contract contemplates that most of the work will be performed: if a majority of the performance called for by the contract is on stationary platforms on the OCS, that is the situs of the controversy for purposes of determining whether the law of the adjacent state applies.....[i]f a majority of the work called for by the contract is aboard Vessels on Navigable Waters on the OCS, this is the situs of the controversy. We hold the focus-of-the-contract test is the appropriate test to apply in determining the situs of the controversy in contract cases...."

In this case the Plaintiffs operated under the Charter Agreement as "boom tenders" and never left the navigable waters of Louisiana. Under the focus-of-the-contract test and founded upon the actions of the Plaintiffs operating under the imprecise Master Charter Agreement, the OCSLA does not govern the Plaintiffs' Petition for Damages. The OCSLA provides two jurisdictional provisions germane to the instant

---

[4] "The removing party bears the burden of proving the Court has jurisdiction to hear the claim." Jernigan v. Ashland Oil, Inc. 989 F.2d 812, 815 (5th Cir. 1993)

inquiry, namely, 43 USCA 1333 (A) (1) and 42 USCA 1349 (b) (1), which provide, respectively,

> "The Constitution and laws and civil jurisdiction of the United States are extended to the subsoil and seabed of the Outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (<u>other than a ship or a vessel</u>) for the purpose of transporting such resources, to the same extent as if the Outer Continental Shelf were an area of exclusive Federal jurisdiction located within a state" [Emphasis added]; and

> "The District Courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (a) any operation conducted on the Outer Continental Shelf which involves exploration, development or production of the materials of the subsoil and seabed of the Outer Continental Shelf, or which involves the rights to such minerals."

In <u>Demette v. Falcon Drilling Co.</u> 280 F.3d 492, 496 (5th Cir. 2002) the Fifth Circuit determined under 43 USC 1331 that the OCSLA situses did <u>not</u> include a ship or a vessel. Under 43 USCA 1349 the Fifth Circuit has developed a "but for" test as explained in <u>Tennessee Gas Pipeline v. Houston Casualty Insurance Co.</u> 87 F.3d 150 (5th Cir. 1996) to determine if an injury arose in connection with an OCSLA operation. In this case the Plaintiffs' economic injuries received from the misrepresentation by BP's

5

agent to remain ready for work [tending booms] is far too attenuated from the Deepwater Horizon's Operation on the Outer Continental Shelf to confer Federal jurisdiction.[5]

In Lopez v. Air Logistics, L.L.C. 2002 WL 356 305 (ED La. 2002) the District Court granted the Plaintiff's Motion to Remand a Maritime Claim despite the Defendant's claim of OCSLA Jurisdiction.[6] The Court in Lopez relied upon Hufnagel v. Omega Service Industries, Inc. 182 F.3d 340, 351 (5th Cir. 1999) in which the Fifth Circuit "strongly suggested the OCSLA does not provide removal jurisdiction in general maritime cases, in the absence of diversity." Lopez at p. 5.

District Judge Feldman in Auguilard v. Chevron, U.S.A. 1993 WL 515764 (ED La. 1993) granted a Motion to Remand in a multiple defendant case where both general maritime law and the OCSLA were implicated by the pleadings.[7]

This Honorable Court in In Re: Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico on April 20, 2010 747 F. Supp. 2d 704 (ED La. 2010) denied the State of Louisiana's Motion to Remand under 43 USCA 1349 [the "catch all jurisdiction] when it wrote:

> III. *Admiralty Jurisdiction*
>
> [5] Plaintiff argues that even if § 1349(b)(1) gives this court original jurisdiction over this matter, maritime law requires this case to be remanded. Title 28 U.S.C. § 1441(b) states that "any civil action of which the district courts have original jurisdiction founded on a claim or right arising

---

[5] See Landry v. Island Operating Company, Inc. Civ. No. 09-1051 (W.D. La. Sept. 30 2009).
[6] "Although OCSLA applies to all claims arising on the Shelf, it does not displace general maritime law if it is otherwise applicable."
[7] "Plaintiffs claim against the vessel owner states a maritime tort because of the well settled rule that, absent some sort of overreaching, a plaintiff is a master of his complaint...Under the savings to suitors clause, 28 USC 1333,....the suit cannot be removed to Federal Court without some basis for Federal jurisdiction other than the cases' maritime character."

under the ... laws of the United States shall be removable." "Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). It is well settled that maritime law claims do not arise under the laws of the United States. *See In re Dutile*, 935 F.2d 61, 63 (5th Cir.1991) (citing *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959)). It is therefore true that unless a defendant is not a citizen of the state in which the action was brought, § 1441(b) does not allow maritime law claims to be removed to federal court. This is true even if the court has both OCSLA and admiralty jurisdiction because the Fifth Circuit has not determined that finding that a court has OCSLA jurisdiction is synonymous with finding that a plaintiff's claim arises under the laws of the United States. *See Tenn. Gas Pipeline*, 87 F.3d at 156; *See also Walsh v. Seagull Energy Corporation*, 836 F.Supp. 411, 417–18 (S.D.Tex.1993); *Rivas v. Energy Partners of Delaware*, No. Civ. A. 99-2742, 2000 WL 127290, *5 (E.D.La. Feb. 1, 2000) (stating "the Fifth Circuit has never held that where OCSLA and general maritime law overlap, the case is removable without regard to citizenship"); 28 U.S.C. § 1441(b). Nevertheless, Defendants in this matter are not citizens of Louisiana (the state in which the action was brought). Therefore, because this court has original jurisdiction under § 1349(b)(1), it does not matter whether Plaintiff's claims arise under the laws of the United States. This matter is removable because "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. §

1441(b). The remainder of Plaintiff's arguments related to admiralty jurisdiction are premised on what law should apply. Despite Plaintiff's claims, nothing Plaintiff cites indicates that a discussion of these issues would have any bearing on whether this Court has jurisdiction over this matter. Further, having determined that a decision that admiralty jurisdiction applies would not affect the Court's jurisdiction determination, a decision on whether state, admiralty, or other law applies does not need to be addressed at this time.

It is arguable that this Honorable Court did not entirely rest its Remand Ruling on the OCSLA, but found diversity of citizenship to also control the thought process of the tribunal.

In this case the Court is faced with a non-diverse Defendant/Agent of BP making, it is alleged, misrepresentations as to the term of the Master Charter Agreement, which does not delineate a zone of service for the hired vessels. The Plaintiffs suffered economic injury from a state law tort by an agent of BP. The Plaintiffs, under the Master Charter Agreement, were "boom tenders" whom never left the navigable waters of Louisiana. The relationship between the BP Operation on the OCSLA and the Plaintiffs tending oil spill booms in the navigable waters of Louisiana wherein turn they are lied to by non-diverse agents of BP is far too tenous to support Federal jurisdiction under the Fifth Circuit's "but-for" test. Therefore, the Plaintiffs' Motion to Remand should be GRANTED.

Respectfully submitted,

/s/ Andre' P. LaPlace
**Andre' P. LaPlace (LBRN 8039)**
2762 Continental Drive, Ste. 103
Baton Rouge, Louisiana 70808
Telephone (225) 924-6898
Facsimile (225) 924-6877
Email: alaw@andrelaplace.com
