# EXHIBIT 19

# DEPOSITION TRANSCRIPT OF JOHN HUGHETT

1          UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF LOUISIANA
2
3    IN RE:  OIL SPILL      )  MDL NO. 2179
     BY THE OIL RIG         )
4    "DEEPWATER HORIZON" IN )  SECTION "J"
     THE GULF OF MEXICO, ON )
5    APRIL 20, 2010         )  JUDGE BARBIER
                            )  MAG. JUDGE SHUSHAN
6
7
8
9
10
11
12
13
14
15
16
17              *****************
                    VOLUME 2
18              *****************
19
20
          Deposition of John Paul Hughett, P.E.,
21   taken at the Pan-American Building, 601 Poydras
     Street, 11th Floor, New Orleans, Louisiana,
22   70130, on the 8th day of December, 2011.
23
24
25

```
 1        Q.   All right.  All opinions that you have in
 2   this case regarding the Macondo Well blowout are
 3   expressed in your original Report and in your
 4   Rebuttal Report, correct?
 5        A.   Yes, sir.
 6        Q.   And those are Exhibits 7725 and 7726,
 7   correct?
 8        A.   Yes, sir.
 9        Q.   Now, talking about float collars,
10   generally, you would agree with me, sir, that
11   Weatherford's float collar, the M45AP, such as
12   the one run in the Macondo Well, was intended to
13   perform three functions, which are:  The first
14   one, auto-fill for surge prevention when running
15   the casing in the hole, correct?  That would be a
16   function of the float collar?
17        A.   Yes, sir.
18        Q.   The second function of the Weatherford
19   float collar would be to serve as a landing
20   profile for the cementing plugs, correct?
21        A.   Yes, sir.
22        Q.   And the third is to prevent the backflow
23   of wet cement when the top plug lands and cement
24   displacement stops, correct?
25             MR. HEJNY:  Object to form.
```

Page 502

1  A. Yes, sir.
2  Q. (By Mr. Zeringue) Are you aware of any
3  other functions or purposes that the oil and gas
4  industry uses with respect to float collars such
5  as the Weatherford M45AP float collar?
6  A. Those are the generally accepted objects,
7  yes, sir.
8  Q. And you're a Drilling Engineer, correct?
9  A. Yes, sir.
10 Q. And in your experience, your 40 years of
11 Drilling Engineering, and your drilling of some
12 4,000 wells, and your supervision of same, is
13 that what you used the float collar for, those
14 three purposes that I just identified?
15            MR. HEJNY: Object to form.
16 A. Generally speaking, yes, sir.
17 Q. (By Mr. Zeringue) Now, you have not
18 expressed any opinion in your Report on the API's
19 gravity of the hydrocarbons that were in the
20 production interval of the Macondo Well, have
21 you?
22 A. No, sir.
23 Q. And you've made no investigation to
24 determine the API gravity of the hydrocarbons in
25 the production interval of the Macondo Well,

```
 1            MR. ZERINGUE:  (Indicating.)
 2       Q.   (By Mr. Zeringue) And if the hydrocarbons
 3  that were in the Macondo Well could get through
 4  the cement in the shoe track, you've not
 5  expressed an opinion on whether they could get
 6  through those flapper valves and on up to the
 7  production casing and to the rig floor, correct?
 8            MR. HEJNY:  Object to form.
 9       A.   Yes, sir, I did not express an opinion on
10  that.
11       Q.   (By Mr. Zeringue) Thank you.
12            Now, and you've not expressed an opinion
13  in this case on whether or not the Weatherford
14  M45AP float collar is a well control device?
15       A.   No, sir.
16       Q.   And you've not expressed an opinion in
17  this case on whether the Weatherford M45AP float
18  collar is a barrier to the flow of hydrocarbons,
19  correct?
20       A.   No, sir.
21       Q.   And you're not aware of any API Standard
22  or Practice that requires float collars, such as
23  the Weatherford M45AP, to seal in such a manner
24  that would prevent hydrocarbons from backflowing
25  into the casing in the event they got through
```

1  shoe track cement?

2     A.  No, sir.

3     Q.  You've not expressed any opinions in your

4  Report on whether the M45AP float collar that was

5  run in the hole at the Macondo Well on the long

6  string production casing was defective in any

7  way, have you?

8     A.  No, sir.

9     Q.  And you're not aware of any evidence that

10 indicates that the Weatherford M45AP float collar

11 was defective due to a manufacturing defect of

12 any sort, correct?

13    A.  No, sir.

14    Q.  And you've not rendered any opinion as to

15 whether the Weatherford M45AP float collar that

16 was run in the Macondo Well on the long string

17 production casing was defective in any way in its

18 design, correct?

19    A.  No, sir, I didn't opine to that.

20    Q.  And you've not rendered any opinions that

21 the Weatherford M45AP float collar that was run

22 in the Macondo Well was defective in any way due

23 to an inadequate instruction or the lack of

24 warnings or a failure to warn, correct?

25              MR. HEJNY:  Object to form.

1    A.   No, sir.
2    Q.   (By Mr. Zeringue) And you're familiar
3  with the pertinent instructions here for the
4  Weatherford flow-activated float collar was to
5  establish flow rates of five to seven or eight
6  barrels per minute as stenciled on the float
7  collar, correct?
8    A.   Yes, sir.
9    Q.   And you've not rendered any opinion that
10 the float collar departed in any way from its
11 intended design, correct?
12            MR. HEJNY:  Object to form.
13   A.   No, sir.
14   Q.   (By Mr. Zeringue) And you've not rendered
15 any opinion on whether or not the float collar
16 had any manufacturing defect when it left
17 Weatherford's hands, correct?
18   A.   Correct, yes, sir.
19   Q.   And you've not examined the float collar
20 that was actually run in the Macondo Well,
21 correct?
22   A.   That -- that's not available to any of
23 us, no, sir.
24   Q.   You have not examined it, correct?
25   A.   No, no, sir.

Page 510

```
 1        Q.   And you did no scientific analysis
 2   either, did you?
 3        A.   No, sir.
 4        Q.   And you did no technical analysis either,
 5   did you?
 6             MR. HEJNY:  Object to form.
 7        A.   No, sir.
 8        Q.   (By Mr. Zeringue) Halliburton holds its
 9   cement out as a barrier to hydrocarbon flow, does
10   it not?
11             MR. HEJNY:  Object to form.
12        A.   That's generally accepted in the
13   industry, yes, sir.
14        Q.   (By Mr. Zeringue) That cement is used to
15   be a barrier to the flow of hydrocarbons from a
16   formation, such as the production interval at the
17   Macondo Well, correct?
18        A.   Yes, sir.
19        Q.   Have you ever written up a Well Program
20   or supervised the writing of a Well Program or a
21   Drilling Program on any well in which a float
22   collar alone would be used as a barrier to
23   hydrocarbon flow from the formation without
24   cement?
25        A.   No, sir.
```

Page 511

```
 1        Q.   You would agree that a float collar is a
 2   tool designed to aid in the placement of cement,
 3   that is, to keep it in place, if pumped into
 4   place, correct?
 5        A.   Yes, sir.  That particular function is to
 6   keep the cement still after being placed.
 7        Q.   Keep it in place, correct?
 8        A.   Yes, sir.
 9        Q.   You've never designed a float collar,
10   have you?
11        A.   No, sir.
12        Q.   You've not rendered any opinion in your
13   Reports, Exhibits 7725 or 7726, in which you
14   state that Weatherford was in any way negligent
15   or otherwise at fault in this matter; is that
16   correct, sir?
17        A.   That is correct.
18        Q.   Are you familiar with a contingency plan
19   in the oil industry, generally, regarding if
20   there's questions as to whether or not a float
21   collar converts, that the pressure should be held
22   on the top plug, so that the cement can set?  Are
23   you familiar with that type of contingency plan?
24        A.   Yes, sir.  I reference that in my Report.
25        Q.   And Halliburton is aware of that type of
```

PURSUANT TO CONFIDENTIALITY ORDER

**WORLDWIDE**

Systems Technology for the Litigation World

Court Reporting • Video Production • Videoconferencing • Litigation Group

December 15, 2011

Donald E. Godwin – *Via e-mail*
GODWIN RONQUILLO
1201 Elm Street, Suite 1700
Dallas, TX 75270-2041

Re:   Deposition of **John Paul Hughett, P.E., Vol. 2**
      12/08/2011
      In Re: Oil Spill by the Oil Rig "Deepwater Horizon"

Dear Mr. Godwin:

Enclosed please find the signature copy of the deposition of the witness named above. Please have the witness review the deposition and **sign the signature page and amendment sheets** prior to returning it to our office.

In accordance with the Federal Rules of Civil Procedure, your client has **45** days to review, sign and amend the deposition, then return the amendment sheets and signature page back to our office by **January 29, 2012** for further processing.

We sincerely appreciate your choosing Worldwide Court Reporters, Inc. and look forward to working with you in the future. If you have any questions regarding this matter, please feel free to contact our office.

Sincerely,

Rebeca Aguirre
Worldwide Court Reporters, Inc.

No. 1-38843

cc:   US Dept. of Justice
      Don K. Haycraft
      J. Robert Warren

**Corporate Headquarters**
3000 Weslayan St.   Suite 235   Houston TX 77027
713-572-2000   Fax 713-572-2009                                        For U.S. & International Services: 1-800-745-1101