# EXHIBIT 52

# DEPOSITION TRANSCRIPT OF

# WARREN WINTERS

Case 2:10-md-02179-CJB-DPC   Document 5652-55   Filed 02/10/12   Page 2 of 17

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010                                    Reported by:
WARREN J. WINTERS                February 14, 2011                    JOSEPH R. KAISER, JR., CCR, RPR

Page 1

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
 2
 3
 4    IN RE:  OIL SPILL      MDL NO. 2179
      BY THE OIL RIG
 5    "DEEPWATER HORIZON"    SECTION:  J
      IN THE GULF OF
 6    MEXICO, ON APRIL       JUDGE BARBIER
      20, 2010               MAG. JUDGE SHUSHAN
 7
 8
 9
10
15
16
17         Deposition of WARREN J. WINTERS,
      taken in the Pan American Life Center,
18    Bayou Room, 11th Floor, 601 Poydras Street,
      New Orleans, Louisiana 70130, on Monday,
19    February 14, 2011.
20
21    APPEARANCES:
22
23         KIRKLAND & ELLIS LLP
           (By:  Walter R. Lancaster, Esquire)
24         333 South Hope Street
           Los Angeles, California 90071
25             (Attorneys for BP)
```

Case 2:10-md-02179-CJB-DPC   Document 5652-55   Filed 02/10/12   Page 3 of 17

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010                                                                                              Reported by:
WARREN J. WINTERS                                            February 14, 2011                                           JOSEPH R. KAISER, JR., CCR, RPR

Page 42

```
 1   or in-person meetings?
 2        A.   They are teleconferences.
 3        Q.   Let's go back to my earlier
 4   question about what you were asked to do by
 5   BP and you told us that you were asked to
 6   become part of the investigation of this
 7   incident.
 8             What were you asked to do?  And
 9   I'd also be interested in you telling us
10   who you were going to report to, or who you
11   reported to in your work and who, if
12   anyone, worked under you in doing what you
13   did?
14        A.   I reported to Mr. Kent Corser.
15   Nobody worked under my direction.  To
16   clarify it, nobody on the BP investigation
17   team worked under my direction.
18        Q.   Is there anyone other than the
19   people on the BP team that worked under
20   your direction?
21        A.   We did employ some third-party
22   consultants.
23        Q.   Can you be more specific?
24        A.   We employed cementing
25   consultants and engineering expertise.
```

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010
WARREN J. WINTERS February 14, 2011 JOSEPH R. KAISER, JR., CCR, RPR
Reported by:

Page 171

```
 1      A.     (Witness nods head).
 2      Q.     Okay.  Does BP consider the
 3   float collar a barrier?
 4      A.     I'm not sure but I don't think
 5   so.
 6      Q.     Okay.  Do you consider the float
 7   collar a barrier?
 8      A.     I don't view it as a primary
 9   barrier.  I do view it as a partial barrier
10   to hold the cement and shoe track in place.
11      Q.     All right.  So we consider it as
12   a barrier to prevent the flow of cement up
13   the wellbore.  You do consider it a barrier
14   for that purpose?
15      A.     It is designed to prevent
16   backflow of cement before it hardens.
17      Q.     Is it designed to prevent the
18   backflow of hydrocarbons, or do you know?
19      A.     I'm not considered a float
20   collar expert but I have gained greater
21   familiarity with the equipment in the
22   course of the investigation and I do not
23   think it's an absolute barrier.
24      Q.     Right.  Which means you would
25   never use a float collar as a stand-alone
```

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010
WARREN J. WINTERS February 14, 2011 JOSEPH R. KAISER, JR., CCR, RPR
Reported by:

Page 172

1   barrier independent of a good cement job;
2   correct?  For the purpose of preventing
3   hydrocarbons into the wellbore.  True?
4        A.    Having said I don't consider it
5   a primary barrier, then I wouldn't consider
6   it a barrier.
7        Q.    Okay.  Therefore, if you don't
8   consider the reamer collar a barrier and
9   you don't consider the float collar a
10  barrier, what you consider to be the
11  barrier for the wellbore is the cement job?
12       A.    That's the primary barrier.
13       Q.    Is that the barrier at the
14  bottom of the hole; right?
15       A.    Well, cement is always
16  considered the primary pressure barrier in
17  the well.
18       Q.    Okay.  All right.  Now, if you
19  go -- I think you said the well was
20  under-balanced at the time hydrocarbons
21  entered?
22       A.    It was concluded that the influx
23  occurred in association with the negative
24  pressure test.
25       Q.    So another barrier, a potential

Page 329

```
 1            UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
 2
 3
 4    IN RE:  OIL SPILL      MDL NO. 2179
      BY THE OIL RIG
 5    "DEEPWATER HORIZON"    SECTION:  J
      IN THE GULF OF
 6    MEXICO, ON APRIL       JUDGE BARBIER
      20, 2010               MAG. JUDGE SHUSHAN
 7
 8
 9
14
15                    Volume II
16
17       Deposition of WARREN J. WINTERS,
      taken in the Pan American Life Center,
18    Bayou Room, 11th Floor, 601 Poydras Street,
      New Orleans, Louisiana 70130, on Tuesday,
19    February 15, 2011.
20
21    APPEARANCES:
22        KIRKLAND & ELLIS LLP
            (By:  Walter R. Lancaster, Esquire)
23        333 South Hope Street
          Los Angeles, California 90071
24            (Attorneys for BP)
25
```

Case 2:10-md-02179-CJB-DPC Document 5652-55 Filed 02/10/12 Page 7 of 17

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010
WARREN J. WINTERS February 15, 2011 JOSEPH R. KAISER, JR., CCR, RPR
Reported by:

Page 507

1 are.
2     Q.    Okay.  Can I ask you what your
3 role was with the BP investigative team
4 with respect to the Weatherford float
5 collar?
6     A.    I initiated and directed the
7 analysis of Weatherford float equipment
8 conducted by Stress Engineering Services.
9     Q.    And what did you do to become
10 familiar with the Weatherford float collar?
11     A.    The investigation team contacted
12 Weatherford and asked for assistance in
13 obtaining ten representative examples of
14 the Weatherford float equipment that was
15 used in the Macondo well production casing.
16     Q.    Did you inspect those sample
17 float collars?
18     A.    They were examined and evaluated
19 by Stress Engineering Services.
20     Q.    Were you able to look at one
21 that was disassembled?
22     A.    That was done.  It was aided by
23 Weatherford also providing a complete set
24 of loose parts.
25     Q.    I'm going to show you what's

Case 2:10-md-02179-CJB-DPC   Document 5652-55   Filed 02/10/12   Page 8 of 17

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010
WARREN J. WINTERS　　　　　　　　　　February 15, 2011　　　　　　　　　　JOSEPH R. KAISER, JR., CCR, RPR

Page 509

```
 1      A.   It provided us some information
 2  of interest, especially as regards the flow
 3  rates and pressures which one might expect
 4  the equipment to convert.
 5      Q.   Did you find that Weatherford
 6  misrepresented any information in this
 7  technical unit as compared to what you
 8  found in your investigation?
 9      A.   Stress Engineering found that
10  the float equipment they tested in their
11  flow loop behaved within the suggested
12  performance ratings of this brochure.
13      Q.   Just a few questions on the
14  brochure.  Under the section on the first
15  page entitled performance, do you see that
16  before you?
17      A.   Yes.
18      Q.   Can you explain what is meant
19  by, or what you understand is meant by back
20  pressure rating of 5,000 PSI?
21      A.   I don't claim to have an expert
22  opinion on this but in the Stress
23  Engineering test it was understood that up
24  to 5,000 PSI could be applied from beneath
25  to the -- closed to the float equipment
```

Case 2:10-md-02179-CJB-DPC   Document 5652-55   Filed 02/10/12   Page 9 of 17

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010
WARREN J. WINTERS           February 15, 2011           JOSEPH R. KAISER, JR., CCR, RPR
Reported by:

Page 511

1  seemed to be a small rate.
2     Q.   Insignificant?
3     A.   We understood that the foremost
4  purpose of the float equipment would be to
5  prevent cement from back-flowing through
6  the float collar and becoming contaminated.
7  The expectation is that it should be held
8  there long enough to harden.
9     Q.   Well, this amount of leakage
10 that you found, in your opinion, would not
11 have affected that primary purpose of the
12 float collar?
13    A.   It was the intuitive belief of
14 the investigators that that would not
15 interfere with maintaining the cement long
16 enough for it to harden.
17    Q.   I'm going to show you a document
18 that I'm identifying as Exhibit 234.  And
19 it's the BP Bates stamp number ending in
20 6792 that's been given to parties in
21 interest here.  I'll ask you if that is an
22 e-mail that you sent?
23    A.   It is.
24         (Whereupon, the document
25 referred to was marked as Exhibit No. 234

Case 2:10-md-02179-CJB-DPC Document 5652-55 Filed 02/10/12 Page 10 of 17

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010
WARREN J. WINTERS · February 15, 2011 · JOSEPH R. KAISER, JR., CCR, RPR

Page 514

1  small amount of leakage.
2          Could that have been attributed
3  to the fact that Stress was using clay sand
4  to test the float collar, as opposed to the
5  type of sand that API would recommend for
6  the mud used to test the float collar?
7      A.   I don't know.
8      Q.   But do you -- you do know they
9  were using clay sand?
10     A.   I do know where they got the
11 sand.
12     Q.   Did you specify that?  Did BP
13 specify that that coarser sand be used for
14 the testing by Stress?
15     A.   We did not specify that type of
16 sand.  We did specify sand that conformed
17 to the API recommended practice 10F.
18     Q.   Well, did the clay sand conform
19 with API RP 10F?
20     A.   It was my understanding that it
21 was coarser than that recommended by API RP
22 10F.
23     Q.   And yet despite the coarser sand
24 that was used, the stress test showed that
25 these float collars met API 10F criteria?

Case 2:10-md-02179-CJB-DPC Document 5652-55 Filed 02/10/12 Page 11 of 17

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010  
WARREN J. WINTERS  February 15, 2011  JOSEPH R. KAISER, JR., CCR, RPR

Page 515

1    A.    Generally, yes. I'll just
2 qualify by my earlier statement that we
3 realized there was not a distinct pass/fail
4 criterion for judging success of a
5 back-pressure test. There was no leakage
6 criterion clearly stated.
7    Q.    Going back to Exhibit 218, what
8 did you, what do you understand is meant by
9 plug bump pressure?
10    Do you see that line?
11    A.    Yes.
12    Q.    Do you have an understanding
13 what that means?
14    A.    I'm not entirely confident of my
15 understanding but I interpret it as being
16 the maximum pressure that should be applied
17 to a wiper plug once landed on top of the
18 float collar.
19    Q.    Was that tested by Stress?
20    A.    No.
21    Q.    Why not?
22    A.    Well, they were not instructed
23 to.
24    Q.    And why not?
25    A.    The investigation team was most

Page 519

```
 1       A.     Engineering report on testing of
 2  Weatherford M45 AP float collar.
 3       Q.     And did you read this report
 4  before today?
 5       A.     Yes.
 6       Q.     Did you read the report --
 7  strike that.  Could you turn to the page I
 8  had tabbed, I think it is Roman numeral 6.
 9       A.     Okay.
10       Q.     May I see it, please?
11              Yes.  Well, if you could read
12  the summary into the record, please?
13       A.     Performance tests on five
14  Weatherford M45 AP float collars were
15  successfully completed at the SES test
16  facility in Waller, Texas from 23 July to
17  20 October, 2010.
18              The performance tests consisted
19  of flow endurance tests, steady state flow
20  conversion tests, flow surge conversion
21  tests, flow surge tests on converted float
22  collars and mechanical failure tests on
23  auto-filled tubes.
24              The float surge test represented
25  the sudden clearance of a blockage in the
```

Case 2:10-md-02179-CJB-DPC   Document 5652-55   Filed 02/10/12   Page 13 of 17

IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010
WARREN J. WINTERS         February 15, 2011         JOSEPH R. KAISER, JR., CCR, RPR
Reported by:

Page 520

1   flow cap, such as a blockage at the reamer
2   shoe.
3            Based on test results, the float
4   collars appeared to meet the requirements
5   of API RP 10F for endurance testing.  The
6   test results do not indicate any
7   performance conflicts with published
8   Weatherford data for the M45 AP float
9   collar.
10           Post-tests inspection did not
11  reveal any damage or anomalies that would
12  affect the intended performance of the
13  float collar.
14       Q.   Do you agree or disagree with
15  that summary?
16       A.   I agree.
17       Q.   You agree with it.  Did you see
18  any representations by Weatherford in any
19  material that you reviewed that was not
20  verified in these Stress tests?
21       A.   No.
22       Q.   So it's a correct statement,
23  then, that Weatherford, number one,
24  represents that its float collar will meet
25  the performance criteria of API RP 10F.

# GAUDET KAISER, L.L.C.

601 Poydras Street, Suite 1720   New Orleans, Louisiana 70130
Phone: (504) 525-9100   Fax: (504) 525-9109

**BOARD-CERTIFIED COURT REPORTERS & LITIGATION SUPPORT**

**WITNESS NAME:** WARREN J. WINTERS VOL. I

**DATE TAKEN:** February 14, 2011

**IN RE:** OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010

## CORRECTIONS:

PAGE: 123 LINE: 17 CHANGE: DEIRUTE to BEIRUTE
PAGE: 123 LINE: 18 CHANGE: DEIRUTE to BEIRUTE
PAGE: 175 LINE: 7 CHANGE: BELLS to VALVES
PAGE: 224 LINE: 14 CHANGE: ~~PROGNOSED to~~ PROGNOST® to prognosed
PAGE: 233 LINE: 11 CHANGE: BAROUDI to BEIRUTE
PAGE: 233 LINE: 13 CHANGE: BAROUDI to BEIRUTE
PAGE: 233 LINE: 15 CHANGE: BAROUDI to BEIRUTE
PAGE: 264 LINE: 4 CHANGE: CAT to CAP
PAGE: 273 LINE: 20 CHANGE: BAROUDI to BEIRUTE
PAGE: 285 LINE: 3 CHANGE: SERVICE to SURFACE
PAGE: 285 LINE: 7 CHANGE: SERVICE to SURFACE
PAGE: 291 LINE: 1 CHANGE: ELEMENT to ALLAMON
PAGE: 316 LINE: 3 CHANGE: "A COMPLETED PULLED OPEN" to "COMPLETELY PULLED ABOVE THE"

SIGNED: Warren J. Winters   DATE: March 31, 2011

State of Texas
County of Harris
This instrument was acknowledged before me on March 31st, 2011 by Warren J. Winters.

Website: www.gaudetkaiser.com
ALT. EMAIL: Gkp2003@aol.com & gkp@gaudetkaiser.com


Notary Public Signature

GLORIA CAZARES
Notary Public, State of Texas
My Commission Expires
February 04, 2014


RECEIVED APR - 1 2011

# GAUDET KAISER, L.L.C.

**BOARD CERTIFIED COURT REPORTERS**

February 25, 2011

WARREN J. WINTERS
c/o Frank Sramek
300 North LaSalle Street
13th floor
Chicago, Illinois 60654

**IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010**

As requested, you are to read and sign, pursuant to Rule 30(e) of the Federal Rules of Civil Procedure and/or Article 1445 of the Louisiana Code of Civil Procedure, the enclosed certified transcript of your sworn testimony which was taken in connection with the above—captioned matter.

DO NOT WRITE ON PRINTED TRANSCRIPT PAGES CONTAINING TESTIMONY.
You are permitted to make changes, if any, to your sworn testimony by reflecting such changes by page number and line number along with the reason(s) therefore, on the Witness' Errata Page located immediately before the Witness' Certificate Page.

WHETHER OR NOT YOU MAKE CHANGES TO YOUR SWORN TESTIMONY, YOU ARE TO SIGN THE WITNESS' CERTIFICATE PAGE which is located immediately after the Witness' Errata Page.

Your failure to return this certified transcript within thirty (30) days of the date shown on the return receipt may result in your sworn testimony being used as fully as though signed by you. To be sure that the transcript is received in a timely fashion, please return the transcript, and this letter, to me by certified mail or by courier.

To maintain the integrity of this certified transcript in the identical form as it was forwarded to you, I, as the officer before whom your sworn testimony was taken, instruct you:

1) DO NOT MARK ON, WRITE ON, OR IN ANY WAY ALTER THE PRINTED TRANSCRIPT PAGES CONTAINING TESTIMONY;
2) DO NOT REMOVE OR TAMPER WITH THE REPORTER'S SEAL AFFIXED TO THE LAST PAGE.

Should you have any questions, please do not hesitate to call Gaudet Kaiser, L.L.C.
Thank you for your cooperation.

JOSEPH R. KAISER, JR., CCR, RPR (Officer)
cc: PAUL M. STERBCOW, ESQUIRE (Noticing Counsel)

601 Poydras Street, Suite 1720
New Orleans, Louisiana 70130
Website: www.gaudetkaiser.com

PHONE (504) 525-9100
FAX   (504) 525-9109

Email: gkp2003@aol.com

**GAUDET KAISER, L.L.C.**

601 Poydras Street, Suite 1720     New Orleans, Louisiana 70130
Phone: (504) 525-9100     Fax: (504) 525-9109

BOARD-CERTIFIED COURT REPORTERS & LITIGATION SUPPORT

**WITNESS NAME: WARREN J. WINTERS VOL. II**

**DATE TAKEN: February 15, 2011**

**IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010**

## CORRECTIONS:

PAGE: 352 LINE: 6 CHANGE: "THERE'S" TO "SOMETIMES THERE'S"

PAGE: 388 LINE: 22 CHANGE: "LOCATIONS" TO "LOAD CONDITIONS" (TWICE)

PAGE: 460 LINE: 15 CHANGE: "INCLUDING" TO "CONCLUDING"

PAGE: 513 LINE: 21 CHANGE: "THE CEMENT" TO "IF THE CEMENT"

PAGE: 535 LINE: 25 CHANGE: "FLOW" TO "FLOAT"

PAGE: 541 LINE: 4 CHANGE: "BECAME" TO "DECAYING"

PAGE: 562 LINE: 17 CHANGE: "BELL" TO "WELL"

PAGE: 566 LINE: 20 CHANGE: "ONE OF THE" TO "THE"

PAGE: 581 LINE: 15 CHANGE: "OVER-WELL FLOW" TO "OLGA WELL FLOW"

PAGE: 646 LINE: 19 CHANGE: "FLOAT CONDITIONS" TO "CONDITIONS"

PAGE: 660 LINE: 3 CHANGE: "HATCHES" TO "PATCHES"

PAGE: ____ LINE: ____ CHANGE: ____

PAGE: ____ LINE: ____ CHANGE: ____

SIGNED: _Warren J. Winters_     DATE: March 31, 2011

State of Texas
County of Harris

This instrument was acknowledged before me on March 31st, 2011 by Warren J. Winters.

Website: www.gaudetkaiser.com     ALT. EMAIL: Gkp2003@aol.com & gkp@gaudetkaiser.com

_Gloria Cazares_
Notary Public Signature

GLORIA CAZARES
Notary Public, State of Texas
My Commission Expires
February 04, 2014

RECEIVED APR - 1 2011

**GAUDET KAISER, L.L.C.**
601 Poydras Street, Suite 1720    New Orleans, Louisiana 70130
Phone: (504) 525-9100    Fax: (504) 525-9109

BOARD-CERTIFIED COURT REPORTERS & LITIGATION SUPPORT

## WITNESS CERTIFICATE

I, **WARREN J. WINTERS,** have read or have had the foregoing testimony read to me and hereby certify that it is a true and correct transcription of my testimony, with the exception of any attached corrections or changes.

01 APRIL 2011                                    Warren J Winters
_____                        _____
(Date Signed)                                      (Signature)

__X__  Signed with corrections as attached.

_____  Signed with no corrections noted.

MELISSA L. CARDENAS
Notary Public, State of Texas
My Commission Expires
May 17, 2013

11745 Bricksome Avenue, Suite A-4         PHONE  (225) 291-3411
Baton Rouge, Louisiana 70816              FAX    (225) 291-7990

263 W. Causeway Approach                  PHONE  (504) 525-9100
Mandeville, Louisiana 70448               FAX    (504) 525-9109

Website: www.gaudetkaiser.com             ALT. EMAIL:
                                          Gkp2003@aol.com & gkp@gaudetkaiser.com