UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" in | : | |
| the GULF OF MEXICO, on | : | SECTION:  J |
| APRIL 20, 2010 | : | JUDGE BARBIER |
| | : | MAG. JUDGE SHUSHAN |
| | : | |
| | : | JURY TRIAL DEMANDED |

. .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .

### REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE WARNING OPINIONS OF PSC EXPERT GREGG S. PERKIN, P.E.

The PSC's Opposition to Cameron's Motion *in Limine* (Doc. 5597; "Opposition") does not alter (and actually reinforces in many respects) the fact that Mr. Perkin's previously undisclosed warning opinions must be excluded at trial.

**A.    It is Undisputed that the "Warning" Opinions are Not Contained in the Report**

The PSC concedes that Mr. Perkin did not disclose any warning opinions in his Expert Report ("Report").  All they point to is a single sentence in one of several appendices that relates to only *one* of four undisclosed warning opinions that Mr. Perkin now seeks to offer at trial.[1] And the PSC does not even contend that this language is an express disclosure of an expert

---

[1] As noted in the Memorandum in support of Cameron's Motion, the PSC seeks to offer four new warning opinions relating to 1) the blade width limitations of the shearing blind ram; 2) the limitations of a BOP stack with a single blind shear ram; 3) the limitations of MUX cables; and 4) the limitations of subsea batteries.  (*See* Doc. 5360-1 at 2.)  With respect to the first two, the PSC offers no excuse for its violation of the Court's order on expert disclosures.  With respect to the latter two, the PSC argues "that it is only fair that the PSC expert should be permitted to opine on warnings" because of "the timing of Cameron's corporate designations" of 30(b)(6) witnesses who discussed these topics. (Opposition at 4.)  The PSC – which largely set the priority list for depositions – never raised the order of witnesses as an impediment to complying with the Court's expert disclosure requirements.  Moreover, this complaint never occurred to Mr. Perkin, who confirmed during his deposition that his Report contained "all of [his] opinions." (Perkin Depo. at 13-14.)

opinion contemplated by Rule 26 and the Court's orders. They claim only that a supposed "*implication* of [the appendix] language" should have been understood by Cameron to constitute a warning opinion concerning the ability of the blind shear ram to center pipe. (Opposition at 2.) The PSC offers no excuse for why this purported "implication" about a duty to warn – an "implication" appearing only in an appendix – was not made express and placed squarely in the body of the Report. It is not Cameron's burden to divine the existence and scope of opinions by implication from language buried in 241 pages of appendices.[2]

Nor by any reasonable interpretation does the appendix language constitute a disclosure of an opinion about a duty to warn, even by implication. It is not an opinion at all. It is a statement of three purported facts: 1) Cameron knew "that well bore materials outside the cutting blades [of the blind shear rams] would not be cut"; 2) "Cameron did not provide any warnings or instructions regarding this problem"; and 3) "Cameron took the position that BP and Transocean knew of this characteristic, and could have upgraded, had they chosen to do so." (Opposition at 2.) Nothing in these statements fairly conveys, by inference or otherwise, that Mr. Perkin questioned the validity of Cameron's so-called "position." To the contrary, he explicitly and repeatedly endorses it: "BP knew or reasonably should have known that it is when pipe is off-center inside the BOP, Horizon's BSR would likely not completely shear the pipe and thus not seal the well." (Report at 17-18; *see also* Perkin Depo. at 511(same).) Thus, the only plausible "implication" that can be gleaned from Mr. Perkin's Report is that Cameron did *not* have a duty to warn.

---

[2] Cameron certainly had no reason to expect that Mr. Perkin would attempt to provide warning opinions, especially considering that his Report lists the topics on which he was designated to provide expert testimony without reference to warnings. (*See* Report at 3.) Moreover, neither his Report nor his C.V. mentions any experience or expertise in product warnings. (*Id*. at 5 & Appx. L.)

Rather than defending these new opinions under Rule 26 and the Court's mandates on expert disclosures, the PSC seeks refuge in the Court's previous Order allowing Mr. Perkin to venture slightly beyond the precise language of his Report at trial. That ruling lends no support to the PSC's position here. There, the Court "reaffirm[ed] its prior orders restricting expert opinion to the four corners of the expert's written report," but made a very narrow exception. (Doc. 5505.) The Court allowed Mr. Perkin to use a specific adjective ("reckless") at trial that was not used in his Report because it has a lay meaning "consistent with" other terms ("grave danger") used by Mr. Perkin to describe the same conduct. (*Id*. at n. 2.) Here, by contrast, the PSC seeks an exception so broad that it would eviscerate the rule: they ask the Court to permit an expert to introduce opinions not contained in his Report – on an entirely new and distinct theory of liability about which he was not retained to provide expert testimony – that is utterly *inconsistent* with the opinions he did disclose his Report. That will not do.

The broad exception to the "four corners" rule that the PSC seeks would not only disrupt the Court's trial plan, but also result in unfair prejudice to Cameron. The PSC – the party that plainly violated the disclosure rules – would enjoy the element of surprise at trial, while Cameron's ability to cross-examine Mr. Perkin would be substantially impaired. Despite the PSC's 10-page attempt to explicate the implied "disclosures" of *sub silentio* opinions in the Report, Cameron is still left completely in the dark. For example, there has been no disclosure of what specific language should have been used to "warn" BP and Transocean; whether any particular language Cameron did use in its product disclosures was insufficient; what type of warning or disclosure is required by industry standards or regulations; and, perhaps most importantly, how such a warning or disclosure could have reduced or eliminated the risk had it been provided. *See*, *e.g.*, *Vandiver v. Ohio River Co.*, 174 Fed. Appx. 206, 208 (5th Cir. 2006)

(warning defect must be "proximate cause of injury;" expert must show specific alternative warning would prevent injury).  Rule 26 and the Court's orders limiting expert testimony to the four corners of a report are meant precisely to prevent this type of prejudicial situation, in which a party would have to conduct a discovery-type cross-examination for the first time during trial.

**B.**     **Mr. Perkin's Warning Testimony is Irrelevant**

The PSC's Opposition cites a litany of inapposite cases regarding the general standard for relevance in unrelated contexts, yet they ignore the case in which Mr. Perkin's warning opinions were excluded as irrelevant under almost identical circumstances.  In *Peppers v. Aries Marine Corp.*, No. Civ. A. 3:04-cv-02356-RGJ-KLH at 6–7 (W.D. La. Jan. 30, 2006), the Western District of Louisiana *excluded* Mr. Perkin's opinion that a BOP manufacturer had a duty to warn a sophisticated user about product dangers that were open and obvious.  (Doc. 5360-2 at 7.)  The argument for exclusion is even stronger here, where the PSC does not contest the underlying facts that render Mr. Perkin's warning opinions completely irrelevant.  Mr. Perkin's consistent opinion – disclosed in his Report and reaffirmed at his deposition – is that BP and Transocean knew or should have known of all the risks associated with the BOP, including all of the risks implicated by each of his four undisclosed warning opinions.[3]  As the Court held in *Peppers*, a manufacturer has no duty to warn its customers of risks already known to those customers and "therefore any testimony from Perkin regarding warnings is irrelevant." *Id*.

Simply put, the PSC wants to have their cake and eat it too.  They argue that Mr. Perkin's undisclosed warning opinions might be relevant if the opinions he did disclose in his Report are proven wrong at trial.  They cite no case law in support of this novel theory of conditional relevance for alternative (and irreconcilable) expert opinions.  Instead, they merely state,

---

[3] This remains the position the PSC will advance at trial, as they concede in their Opposition. (*See* Opposition at 9 ("The PSC is *not agreeing* that *neither* BP nor Transocean had knowledge of these deficiencies") (emphasis supplied).)

4

incorrectly, that other parties will dispute Mr. Perkin's opinion at trial that BP and Transocean were sophisticated users who understood the limitations of BOPs. No other experts will offer such an opinion at trial.[4] And, even if one did, the opinions of other experts cannot (and Mr. Perkin concedes have not) changed the opinions set forth in his Report – opinions he claims to hold to "a reasonable degree of probability." (Report at 22.) Mr. Perkin cannot simultaneously hold diametrically opposed opinions that he will employ as the trial unfolds in whatever way will best advance the PSC's chances of success. Mr. Perkin has steadfastly maintained that, based on his analysis of the evidence, BP and Transocean were aware of the risks and limitations of the BOP. The undeniable import of that opinion is that Cameron had no duty to warn. Mr. Perkin and the PSC cannot have it both ways.

Accordingly, Mr. Perkin's new and undisclosed warning opinions are irrelevant under FED. R. EVID. 402. In addition, this testimony will waste time at trial and confuse the issues that the trial seeks to clarify, and therefore should be excluded pursuant to FED. R. EVID. 403.

---

[4] No Transocean expert has taken this position, and BP's BOP expert (Mr. Shanks) has withdrawn the only "warning" opinion in his original report after he repeatedly conceded at his deposition that he did not possess any knowledge of what BP knew about this topic. (*See, e.g.,* Shanks Depo. at 274-76 ("I can't speak for BP on – on that matter, no").)

Respectfully submitted,

| | |
|---|---|
| */s/ David J. Beck* | |
| David J. Beck, T.A. | Phillip A. Wittmann, 13625 |
|   *dbeck@brsfirm.com* | *pwittmann@stonepigman.com* |
| Joe W. Redden, Jr. | Carmelite S. Bertaut, 3054 |
|   *jredden@brsfirm.com* |   *cbertaut@stonepigman.com* |
| David W. Jones | Keith B. Hall, 24444 |
|   *djones@brsfirm.com* |   *khall@stonepigman.com* |
| Geoffrey Gannaway | Jared Davidson, 32419 |
|   *ggannaway@brsfirm.com* |   *jdavidson@stonepigman.com* |
| BECK, REDDEN & SECREST, L.L.P. | STONE PIGMAN WALTHER |
| One Houston Center | WITTMANN L.L.C. |
| 1221 McKinney St., Suite 4500 | 456 Carondelet Street |
| Houston, TX 77010 | New Orleans, Louisiana 70130 |
| Phone: (713) 951-3700 | Phone: (504) 581-3200 |
| Fax: (713) 951-3720 | Fax: (504) 581-3361 |

*Attorneys for Cameron International Corporation*

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 13th day of February, 2012.

                                            */s/ David J. Beck*
                                              David J. Beck