UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | : : : : | MDL NO. 2179 SECTION J |
| | : | JUDGE BARBIER |
| THIS DOCUMENT RELATES TO: | : : | |
| 10-4536 | : | MAGISTRATE JUDGE SHUSHAN |

**UNITED STATES' OPPOSITION TO BP'S MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF DR. RORY R. DAVIS (DOC. 5424)**

**INTRODUCTION**

On August 26, 2011, the United States submitted an Expert Report authored by Talas Engineering, Inc. ("the Talas Team") pertaining to the failure of the *Deepwater Horizon* blowout preventer ("BOP"). The Talas Team consists of Dr. Rory R. Davis, Dr. J. Neil Robinson, Mr. Patrick Novak, and Mr. Raymond Merala. Dr. Davis is the lead author on this initial report ("Talas Report") and contributed to each section therein. Dr. Davis' co-authors contributed to individual portions of the Talas Report. On November 7, 2011, the Talas Team submitted a rebuttal report, again with Dr. Davis serving as the lead author.

On January 24, 2012, BP filed a motion asking this Court to exclude the Talas Team's opinions that BP and Transocean failed to utilize the best available and safest technology for the *Deepwater Horizon* BOP (Doc. 5424). BP claims that these opinions constitute impermissible legal conclusions regarding the interpretation of federal regulations.

On its face, however, the Talas Report does not discuss or attempt to interpret the federal regulations. Though the language "best available and safest technology" appears in both the Talas Report and the Code of Federal Regulations at 30 C.F.R. § 250.107, these words also have

1

a common usage which the Talas Report utilized in conjunction with technical analysis to explain and compare available BOP technologies. The Talas Report's technical analysis of better and safer available technology will assist the Court in analyzing the complex issues presented in this case. Furthermore, the Talas Team's opinions on better and safer technology are relevant to issues beyond regulatory compliance, including gross negligence and willful misconduct. Because the Talas Report does not offer a regulatory interpretation but rather a technical analysis employing the common usage of the language, BP's motion to exclude should be denied.

## DISCUSSION

In the interest of brevity, the United States incorporates herein the legal standards under Fed. R. Evid. 702 (and *Daubert*) applicable in bench trials, as set forth in the "United States' Opposition to BP's Motion to Preclude Unreliable Opinions on the Failure of the Primary Cement Job," filed concurrently with this Opposition.

**1. Contrary to BP's assertion, the Talas Report does not discuss or interpret federal regulations.**

BP argues the conclusions in the Talas Report that better and safer technology could have been used on the *Deepwater Horizon's* BOP constitute conclusions of law and, therefore, should be excluded because they do not assist the trier of fact in understanding the evidence. Doc. 5424-1 at 3. As a preliminary matter, the United States agrees that it is ultimately the Court's role to make conclusions of law. However, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). Moreover, the Talas Report does not contain conclusions of law with respect to whether BP and Transocean violated the regulations requiring

the use of best available and safest technology; it merely contains opinions, based on sound engineering analyses, that better and safer technologies were available but not in use.[1]

BP's argument for excluding certain portions of the Talas Report is premised on the similarity of language used in the report to language in the Code of Federal Regulations. Specifically, 30 C.F.R. § 250.107 requires the use of "the best available and safest technology" during drilling operations. BP seeks to exclude Section III.3 and Section III.4.d of the Talas Report which address better and safer alternative BOP technologies.[2] *See* Talas Report at 11, 15-16.

The United States recognizes that Dr. Davis testified that he did intend to use the term "best available and safest technology" in the same fashion in which it is used in the federal regulations. Exh. A, Davis Depo at 115:19-23; 369:19-22. However, Dr. Davis also testified, when asked if he had determined whether the BOP was in compliance with the federal regulations, "This is not an area of – of my expertise, or my study, particularly." *Id*. at 115:4-9; *see id.* 115:11-16. *See also* Exh. B, Robinson Depo at 56:22-57:4; 67:20-68:11; 69:11-19 (Dr. Robinson also testified the report does not make conclusions with respect to regulatory

---

[1] In contrast, the rebuttal report submitted by one of BP's experts, Forrest Earl Shanks, does contain regulatory conclusions. Shanks opines that the *Deepwater Horizon* BOP complied with the federal regulations regarding best available and safest technology, and Shanks explicitly attempts to interpret the applicable regulations in his report. Shanks Rebuttal Rep. at 12-20. Furthermore, Shanks steadfastly maintained at his deposition that in discussing alternative technologies, he was only attempting to analyze the federal regulations. *See, e.g.*, Exh. C, Shanks Depo at Vol. 2, 107:15-108:7; 108:12-21; 110:5-24; 111:1-9; 121:2-11; 126:2-8. Under BP's argument, Shanks should be excluded from testifying regarding best available and safest technology.

It bears mentioning that Shanks nonetheless agreed that a mechanical engineer would have the requisite ability to compare alternative designs in order to analyze whether one piece of equipment is better or safer than another. *Id*. at 111:10-112:10. BP has not challenged the Talas Team's general qualifications as mechanical engineers.

[2] Dr. Davis was the lead author of the Talas Report and contributed to all sections. Dr. Robinson contributed to Section III.4.

violations). Furthermore, it is important to note that the United States is not offering Dr. Davis as an expert on interpretation of the regulations, nor does the Talas Report opine on whether BP or Transocean committed any regulatory violations. At his deposition, Dr. Davis made clear that he "didn't go through [a] detailed analysis" to determine whether BP or Transocean had violated any particular regulation. Exh. A, Davis Depo at 115:11-16.

It is clear from the face of the report that the United States does not offer Dr. Davis or the Talas Team as experts on the federal regulations. Where the availability of better and safer technology is analyzed in Section III.3 and Section III.4.d of the Talas Report, the regulation itself is never mentioned, discussed, cited, or quoted. Indeed, the Talas Report is completely silent with respect to any attempt to interpret the regulation and offers no opinion as to whether BP or Transocean violated it. BP's suggestion that the Talas Report offers legal conclusions about the relevant federal regulations is firmly rebutted by the lack of any regulatory discussion whatsoever in the report itself.

Instead, the Talas Report discusses the quality and safety capability of other available technologies utilizing the expertise for which the United States has offered the Talas Team: mechanical engineering. Both Section III.3 and Section III.4.d provide an engineering analysis comparing the capabilities of various Cameron technologies that were available to BP and Transocean, had they desired to implement them on the *Deepwater Horizon* BOP. For example, after discussing maintenance failures that resulted in the inability of the BOP's automatic mode function from activating, Section III.3 compares Cameron's Mark II control pod, which was installed on the *Deepwater Horizon* BOP, to Cameron's newer Mark III control system, which BP and Transocean opted not to implement. Talas Report at 11. The Talas Report explains from

an engineering standpoint that the Mark III control system offers additional functions that could have avoided the battery and solenoid failures that occurred on April 20, 2010. *Id*.

Section III.4.d is generally devoted to explaining the shearing capabilities of the *Deepwater Horizon*'s blind shear ram. Talas Report at 15-16. Noting that the blind shear ram failed to seal the well due to its inability to cut off-center pipe, Section III.4.d includes one paragraph comparing other Cameron blind shear rams with greater centering and shearing capacities to the equipment used on the *Deepwater Horizon*. *Id*. at 15. The discussion examines the capability of the blind shear ram from an engineering perspective and without any discussion of federal regulations.

To the limited extent "best available and safest technology" is discussed in the Talas Report, the analysis proceeds from an engineering perspective rather than a regulatory one. While the Talas Team's discussion of the capabilities and comparative quality of the available technologies may be relevant to the determination of regulatory compliance, the Report does not go beyond an engineering discussion of these components. It should also be noted that the Talas Report's analysis of this issue reaches beyond regulatory compliance, because the question of whether BP and Transocean failed to utilize the proper equipment for their operations at Macondo is also relevant to the issues of gross negligence and willful misconduct.

Because the four corners of the Talas Report contain no discussion, interpretation, or opinion regarding the parties' compliance with any federal regulations, BP's motion to exclude sections III.3 and III.4.d should be denied.

**2. Regulatory terms may also have common usages.**

As the United States similarly explained in its response to BP's motion in limine to bar opinion testimony on issues of law (Doc. 5231), legal terms of art often also have a non-legal

usage. With respect to "best available and safest technology," it is clear that words such as "better", "best", "safer", and "safest" have common usages that do not necessarily carry strict legal definitions.

The Talas Report uses the terms "best available and safest drilling technology" in the context of analyzing specific BOP technologies that were available, as well as whether these technologies may have impacted the events that occurred on the *Deepwater Horizon*. In doing so, the Talas Report does not opine on whether any particular regulation was violated. Rather, the terms "better," "best," "safer," and "safest" quite clearly have common usage meanings as employed in an engineering analysis. As Dr. Robinson explained in his deposition, the terms "best" and "safest" are commonly understood words and the Talas Report seeks only to offer a technical analysis employing the common usage. Exh. B, Robinson Depo at 54:11-54:19; 60:21-61:11; 61:25-62:5. Even BP's expert, Forrest Earl Shanks, agreed that mechanical engineers can compare alternative designs in order to evaluate whether one piece of equipment is better or safer than another. Exh. C, Shanks Depo at 111:10-112:10.

Accordingly, the Court should not exclude portions of the report that do not interpret federal regulations, especially in light of the fact that the language in question involves commonly understood terms.

**3. The Talas Report's discussion of alternative technologies is reliable and will assist the trier of fact.**

Rule 702 permits the admission of expert testimony if it is both relevant and reliable. The Talas Report's engineering analysis regarding the capabilities and comparative quality of the available BOP technologies applies reliable engineering principles. The report discusses specific technical deficiencies of the control system, with respect to the batteries and solenoids, as well as the blind shear ram. The Talas Report goes on to examine updated control systems and blind

6

shear ram designs which were offered by Cameron and were compatible with the *Deepwater Horizon*'s BOP.  The engineering principles employed by the Talas Team are reliable, scientific bases for comparing this equipment.

BP does not challenge Dr. Davis or his co-authors with respect to their engineering qualifications or abilities to opine on whether particular BOP components properly functioned during the *Deepwater Horizon* blowout.  Nor does BP challenge the Talas Team's ability to reliably opine on whether the SBR-model blind shear ram was capable of centering or shearing the drill pipe.  Nonetheless, BP claims that Dr. Davis' mechanical engineering background is somehow insufficient for comparing the quality and ability of alternative BOP technologies in light of the particular failures at Macondo.

Specifically, BP argues that Dr. Davis' lack of prior experience regarding the design and usage of BOPs and BOP control systems disqualifies him from opining on whether equipment available in the marketplace was better or safer than what was used on the *Deepwater Horizon*.  To support its position, BP relies on the language of 30 C.F.R. § 250.107 requiring the use of best available and safest technology "when practical."  As the United States has already explained, however, the Talas Report neither analyzes this regulation, nor does it offer any opinions as to whether the regulation was violated.  Because the United States does not offer the Talas Team as experts on regulatory compliance, an analysis of every regulatory element is unnecessary.

The mechanical engineers on the Talas Team are competent to reliably compare the capabilities of various technologies with respect to the tasks required at Macondo.  Their engineering analysis will assist the Court in understanding the complex evidence in the case.  Moreover, the equipment comparison offered in the Talas Report is relevant not only to the

7

regulatory issue, but is also helpful with respect to the question of whether BP and Transocean were grossly negligent or engaged in willful misconduct in refusing to upgrade their BOP equipment. The report does not attempt to usurp the Court's role in making legal conclusions; it seeks only to assist the Court with respect to the engineering analysis necessary to evaluate the applicable technologies. At the close of trial, the Court will have ample evidence from which to determine what regulations were violated. Any testimony offered by the parties' experts will be accorded the weight the Court deems appropriate.

The public interest would best be advanced by liberally permitting competent expert testimony regarding the engineering capabilities of the alternative technologies available to BP and Transocean prior to the *Deepwater Horizon* incident.[3] Therefore, the Court should deny BP's motion to limit the expert testimony of Dr. Davis and the Talas Team.

## **CONCLUSION**

The Talas Report does not discuss or attempt to interpret the federal regulations. Rather, the discussion of "best available and safest technology" proceeds by way of a technical engineering analysis which explains and compares available BOP technologies. Dr. Davis and the Talas Team's discussion of these engineering principles will assist the Court in analyzing the complex technical issues presented in this case. For all of these reasons, the United States respectfully requests that the Court deny BP's motion to limit the testimony of Dr. Rory Davis.

---

[3] In the event the Court is not inclined to deny BP's motion in its entirety, the United States requests that the Court follow the procedure set forth in its Order regarding non-factual lay witness testimony (Doc. 5492), and reserve judgment on the admissibility of live testimony until it is offered at trial.

Dated: February 14, 2012                                   Respectfully submitted,

IGNACIA S. MORENO                                          TONY WEST
Assistant Attorney General                                 Assistant Attorney General
Environment & Natural Resources Division                   Civil Division

JAMES NICOLL                                               PETER F. FROST
Senior Counsel                                             Director, Torts Branch, Civil Division
NANCY FLICKINGER                                           Aviation & Admiralty Litigation
Senior Attorney                                            STEPHEN G. FLYNN
SARAH HIMMELHOCH                                           Assistant Director
Senior Attorney                                            MICHELLE T. DELEMARRE
DEANNA CHANG                                               SHARON K. SHUTLER
SCOTT CERNICH                                              JILL DAHLMANN ROSA
A. NATHANIEL CHAKERES                                      JESSICA SULLIVAN
RACHEL HANKEY                                              JESSICA L. McCLELLAN
ABIGAIL ANDRE                                              MALINDA LAWRENCE
JUDY HARVEY                                                DAVID J. PFEFFER
MATT LEOPOLD                                               ROBIN HANGER
JEFFREY PRIETO                                             LAURA MAYBERRY
GORDON YOUNG                                               BRIENA STRIPPOLI
Trial Attorneys                                            Trial Attorneys
                                                           U.S. Department of Justice
/s/ Steven O'Rourke                                        Torts Branch, Civil Division
STEVEN O'ROURKE                                            PO Box 14271
Senior Attorney                                            Washington, DC 20044
U.S. Department of Justice                                 (202) 616-4100
Environmental Enforcement Section                          (202) 616-4002 fax
PO Box 7611
Washington, DC 20044                                       /s/ R. Michael Underhill
(202) 514-2779                                             R. MICHAEL UNDERHILL, T.A.
steve.o'rourke@usdoj.gov                                   Attorney in Charge, West Coast Office
                                                           Torts Branch, Civil Division
                                                           7-5395 Federal Bldg., Box 36028
                                                           450 Golden Gate Ave.
                                                           San Francisco, CA 94102-3463
                                                           (415) 436-6648
                                                           (415) 436-6632 fax
                                                           mike.underhill@usdoj.gov

JAMES LETTEN
United States Attorney

SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
650 Poydras St., Suite 1600
New Orleans, LA 70130

Attorneys for the UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of February, 2012.

/s/ Steven O'Rourke
U.S. Department of Justice