UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179<br><br>SECTION J |
| Applies to: *All Cases* | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

### ORDER

[Regarding Motions of Transocean, BP, M-I and Halliburton to Limit Scope of Adverse Inferences Drawn from Invocation of Fifth Amendment Privilege Against Self-Incrimination (Rec. docs. 5111, 5112, 5120 and 5144)]

BP seeks an order limiting the inferences which may be drawn from testimony in which a witness has invoked the Fifth Amendment. In the alternative, it seeks an order deferring the use and drawing of inferences from such testimony until a later phase of the trial. Rec. doc. 5112.

Transocean requests that no adverse inference against it be made based on any witness's invocation of the Fifth Amendment. Rec. doc. 5111.

Halliburton seeks an order limiting the drawing of inferences from testimony by non-Halliburton employees who have invoked the Fifth Amendment. Where the witness is a Halliburton employee, it seeks other limitations on any inferences adverse to it. Rec. doc. 5144.

M-I seeks an order excluding any adverse inferences against it based on invocations of the Fifth Amendment by non-M-I witnesses. Rec. doc. 5120.

The U.S. and PSC filed oppositions. Rec. docs. 5237 and 5259. BP and M-I filed replies. Rec. doc. 5355 and 5361.

A complete list of the persons who invoked the Fifth Amendment during their depositions can be found at Exhibit A to Rec. doc. 5120. One of these, Jesse Gagliano, waived his Fifth Amendment right and testified on February 7 and 8. As of the time of the incident, the persons who

invoked the Fifth Amendment were employed by BP, Transocean, Halliburton and Offshore Cleaning Systems.

Pursuant to Baxter v. Palmigiano, 425 U.S. 308, 18, 96 S.Ct. 1551, 1558 (1976), the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them. The decision as to whether to admit a person's invocation of the Fifth Amendment is committed to the discretion of the district court. Farace v. Independent Fire Insurance Co., 699 F.2d 204, 210 (5th Cir. 1983).

Transocean contends that no adverse inferences may be drawn from a refusal to answer: (1) self-serving leading questions; (2) an ambiguous or "broad form" question; or (3) a question outside the personal knowledge of the witness. Rec. doc. 5111 at 5-7. The PSC contends that the examples from the depositions cited by Transocean are not improper questions.

Transocean argues that adverse inferences may not be drawn if the evidence is otherwise inadmissible under Fed. R. Evid. 402, 403, 701 and 802 or any other evidence rule. This is not disputed by the U.S. and the PSC. Transocean urges that an adverse inference may not be drawn in violation of 46 U.S.C. 6308. The PSC disagrees.[1]

At issue are whether invocations of the Fifth Amendment by employees and non-employees of the movers can be the basis of an inference against the mover. In Federal Deposit Insurance Corporation v. Fidelity & Deposit Company of Maryland, 45 F.3d 969 (5th Cir. 1995), the Fifth Circuit refused "to adopt a rule that would categorically bar a party from calling as a witness a non-party who had no special relationship to the party, for the purpose of having that witness exercise

---

[1] Since the filing of the PSC's opposition, the Court issued its ruling on the motions *in limine* to exclude evidence of the Joint Investigation Report and Testimony. Rec. doc. 5448.

his Fifth Amendment right." Id. at 978. In FDIC, the chief lending officer of a bank made loans in exchange for bribes. He pled guilty. After the bank failed, the fidelity bond insurer was sued. At the trial, several witnesses who purportedly had relationships with the loan officer, invoked the Fifth Amendment.[2] The defendant argued that the district court improperly allowed the invocation by a non-party or non-agent of a party to be the basis for an inference against it. The Fifth Circuit held that district courts have to evaluate these situations on a case-by-case basis. In making this evaluation, the Fifth Circuit stated:

> In this case, any danger that the jury might have found that Pogue had committed dishonest acts merely from his association with witnesses who invoked the Fifth Amendment, thereby unduly prejudicing F & D, was avoided by the instruction that the jury was not to find liability absent evidence corroborating the relationships between the invoking witnesses and Pogue.
>
> There is no question that the evidence is relevant. F & D fails to make a competent argument as to why it was unfairly prejudiced by the admission of the evidence.

Id. at 978.

Here, with respect to non-employees, the movers contend that in this case adverse inferences should not be drawn because: (1) there is no relationship between the mover and the witness; and (2) the element of trustworthiness is lacking.

BP contends that under FDIC, the absence of an employment relationship between the invoking witness and the party against whom the adverse inference is sought remains relevant. It urges that the absence of an employment relationship is clearly an important circumstance courts consider when determining whether to apply adverse inferences. It argues that unlike the witnesses in FDIC, the Transocean and Halliburton employees will benefit from their invocation because the

---

[2] In LiButti v. United States, 107 F.3d 110 (2nd Cir. 1997), the Second Circuit described FDIC as "a case where the invoking non-party witnesses were neither employees, ex-employees nor members of any of the parties to the litigation. . . ." Id. at 123.

adverse inference will be used to attribute fault to BP rather than their employer.  Further, it contends that the adverse inferences drawn from the invocations by the persons with relationships with the loan officer in FDIC were trustworthy.  It urges that this quality is lacking for Transocean employees invoking the Fifth because of the adversarial relationship between Transocean and BP, such employees owe no loyalty to BP, and they are not controlled by it.

In FDIC, the Fifth Circuit found no need for a special relationship between the witness and the party against whom the adverse inference was sought.  It quoted the following from RAD Services Inc. v. Aetna Casualty & Surety Co., 808 F. 2d 271, 275 (3rd Cir. 1986):

> First, a witness truly bent on incriminating [a party] would likely offer damaging testimony directly, instead of hoping for an adverse inference from a Fifth Amendment invocation.  Second, the trial judge could test the propriety of an invocation to ensure against irrelevant claims of privilege.  Third, counsel may argue to the jury concerning the weight which it should afford the invocation and any inferences therefrom.

45 F.3d at 978.  This responds to the thrust of the movers' arguments concerning non-employees.

With respect to employees, the arguments vary among the movers.  Transocean contends that the relationship between it and its employees is insufficient because they sued it for personal injury.  BP contends that inferences should not be drawn against because: (1) its employees chose to invoke the Fifth Amendment; (2) they did not do so at BP's urging; and (3) it provided corporate designees for all topics on which its employees took the Fifth Amendment.  These factors also must be evaluated on the case-by-case witness-by-witness analysis the district court is required to make.  FDIC, 45 F.3d at 978.

Transocean and BP argue that, based upon the consideration of the non-exclusive four factors in LiButti v. United States, 107 F.3d 110 (2nd Cir. 1997), it is improper to draw adverse inferences

4

from the invocations of the witnesses.[3]  The PSC argues that the LiButti factors have not been adopted by the Fifth Circuit.  The Court finds these factors are useful in making the case-by-case evaluation required by FDIC and are not inconsistent with it.  In FDIC, before the jurors could draw an adverse inference, they were required to find that: (1) the loan officer committed a dishonest or fraudulent act; and (2) the invoking witness acted in collusion with the loan officer to commit a dishonest or fraudulent act.  45 F.3d at 979, n. 5.  These findings are consistent with the fourth LiButti factor (the role of the non-party witness in the litigation).

>   The Court agrees with BP that:
>
>   No matter what general rules can and cannot be drawn, there is universal agreement that no party, including the PSC, has yet to establish the required foundation for any particular inference – indeed, they have not even identified the specific inferences they seek.

Rec. doc. 5535 at 5.

BP also argues that the Court should defer ruling on the use of the invocation of the Fifth Amendment and adverse inferences until all phases of the trial are complete.  It contends that the witnesses may waive their invocations of the Fifth Amendment and testify, thus urging that any drawing of inferences is premature.  The Court declines to decide that issue now.  For example, if findings of fact are issued at the conclusion of Phase One and before the start of Phase Two, it will be necessary to rule on the use of invocations for Phase One.

IT IS ORDERED that the motions of Transocean, BP, M-I and Halliburton to preclude the use of, and the drawing of adverse inferences from, testimony in which a witness has invoked the Fifth Amendment (Rec. doc. 5111, 5112, 5120 and 5144) are DENIED WITHOUT PREJUDICE

---

[3] The four factors are: (1) the nature of the relevant relationships; (2) the degree of control of the party over the non-party witness; (3) the compatibility of the interests of the party and non-party witness in the outcome of the litigation; and (4) the role of the non-party witness in the litigation.  107 F.3d at 123.

to re-urge on a case-by-case basis.

      New Orleans, Louisiana, this 14th day of February, 2012.

                                                **CARL J. BARBIER**
                                                **United States District Judge**