UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | § § § § | MDL NO. 2179 SECTION: J |
| THIS PLEADING APPLIES TO: ALL CASES | § § § | JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |

### TRANSOCEAN'S OPPOSITION TO UNITED STATES' MOTION TO EXCLUDE ERIC GREGORY CHILDS AS AN EXPERT

NOW COMES Transocean Offshore Deepwater Drilling, Inc. ("Transocean") and files its response in opposition to the United States' Motion to Exclude Mr. Eric Gregory Childs as an Expert ("Motion"). For the reasons set forth below, this Court should deny the United States' Motion.

### INTRODUCTION

The United States' Motion falsely accuses Transocean of intentionally withholding information and documentation upon which Mr. Childs has relied in forming the opinions set forth in his expert reports. As explained in detail below, the documents sought by this Motion were produced in accordance with this Court's orders and well in advance of Mr. Childs's deposition. Transocean has complied with Federal Rule of Civil Procedure ("FRCP") 26(a)(2) and Federal Rules of Evidence ("FRE") 702, 703 and 705 in presenting Mr. Childs for his deposition and in the production of his expert reports. Under FRE 703, Mr. Childs may base opinions on facts and data supplied by others. Any attempt to strike him for relying in part on

others' testing and analyses lacks merit. Accordingly, this Court should deny the United States' Motion.

## BACKGROUND

Mr. Childs is a reputable, experienced mechanical engineer, whose nearly forty-year career and expertise have focused exclusively on BOPs. (<u>See</u> Resume, Expert Report.) Currently, Mr. Childs is Vice President at WEST Engineering Services ("WEST Engineering"), where he is responsible for operations and technical issues concerning BOPs and related components. Prior to joining WEST Engineering in 1996, Mr. Childs worked for Cameron in BOP design engineering for more than twenty years. Mr. Childs has spent a significant portion of his career assessing and analyzing BOP control systems, including AMF systems, control pod batteries and solenoids. (Deposition of Mr. Childs ("Childs Depo." 573:11-16.) His work has involved assessing control system circuitry to determine possible risks, analyzing the control system generally and troubleshooting. (Childs Depo. 570:4-571:17.) Based on Mr. Childs's collective experience, he is a control systems expert, with particular understanding of AMF battery operation and solenoids. (Childs Depo. 572:1-21; 573:25-575:5.)

Transocean hired Mr. Childs in May 2010 to work on Transocean's Internal Investigation Team and to specifically focus on BOP issues. (Childs Depo. 21:22-22:14.) Mr. Childs asked his employee from WEST Engineering, Mr. Tolleson, to conduct control system testing for Transocean's Internal Investigation Team, BOP Team. Mr. Tolleson is an electrical engineer who is a control systems specialist. Mr. Tolleson has worked for Mr. Childs for two years and has performed numerous engineering tests and analyses for Mr. Childs's review.

As part of his work on Transocean's Internal Investigation Team, Mr. Tolleson, under Mr. Childs' supervision and direction, conducted various tests on SEM batteries from

Transocean's *Deepwater Nautilus* and on solenoids from the *Discoverer Enterprise*. It was recommended that these tests be performed with components from the *Deepwater Nautilus* and *Discoverer Enterprise* because, similarly to the *Deepwater Horizon*, they both used the Mark II system. (Childs Depo. 211:2-212:19; 143:14-144:7; Deposition of Robert Ewen Florence 115:7-18.) Two other WEST engineers, Harshall Patil and Mika Reed, assisted Mr. Tolleson in the testing procedures (collectively "Childs's WEST Engineering Team").

The purpose of the battery tests was to identify possible mechanisms that drained the 27-volt battery of the blue pod after the incident. These tests were conducted at WEST Engineering facilities on various days between October 20, 2010 and December 13, 2010. (See TREX-050378.) On November 11, 2011, Transocean produced a Summary of SEM Battery Testing Results, a compilation of Mr. Tolleson's handwritten notes and testing results. (TREX-050378.) In conducting the battery tests, Childs's WEST Engineering Team identified a post-incident mechanism that likely drained the 27-volt battery in the blue pod.

In August 2011, Childs's WEST Engineering Team also performed solenoid testing on Transocean's *Discoverer Enterprise*, intentionally wiring a solenoid valve in reverse polarity to understand how it would behave. Childs's WEST Engineering Team discovered that a solenoid wired in reverse polarity successfully functions when power is run through the SEM, as it would be during an AMF sequence. (See TREX-50165.)

As part of Transocean's Internal Investigation Team, Mr. Childs also worked with Mr. Robert Tiano and Mr. Rodney Manning, both of whom were responsible for analyzing the *Deepwater Horizon's* BOP maintenance. Their analysis is found in Macondo Well Incident, Transocean Investigation Report issued in June 2011 ("Transocean Internal Investigation Report"), Appendices H, I and J. Transocean's Internal Investigation Report was clearly

identified as reliance material in support of Mr. Childs's initial report – a fact the United States conveniently ignores. (TREX-03808.)

In addition, while on the Internal Investigation Team, Mr. Childs reviewed analyses performed by Stress Engineering Services, Inc. ("Stress Engineering"), a third-party vendor hired by Transocean to provide structural analysis of the Macondo #252 work string and hydraulic analysis of the well prior to the incident. The reports prepared by Stress Engineering were published for public review in June 2011 as Appendix M and Appendix G respectively to the Transocean Internal Investigation Report. On numerous occasions during Transocean's internal investigation, Mr. Childs worked with David Garrett, the principal of Stress Engineering, regarding various well flow and structural calculations and models. Mr. Childs also met with Mr. Garrett more than five times regarding those issues in preparing his expert reports. (Childs Depo. 240: 4-22.)

On September 23, 2011, Mr. Childs submitted an expert report on behalf of Transocean, and on November 7, 2011, he submitted a rebuttal report. Mr. Childs's opinions in those reports, and which he supported at deposition, are based on forty years of experience in the industry and reliable, scientific testing or structural analyses which have been produced to all parties in this litigation.

**ARGUMENT**

**I.    Transocean Has Produced the Facts and Data Mr. Childs Considered in Forming His Opinions.**

Federal Rule of Procedure Civil 26(a)(2)(B) requires an expert witness to prepare and sign a written report, unless otherwise stipulated or ordered by the court. The report must contain: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; and (ii) the facts or data considered by the witness in forming them. . . ." Fed.

R. Civ. P. 26(a)(2)(B)(i), (ii). In its Motion, the United States makes numerous false statements, attempting to lead this Court to believe that Transocean violated Rule 26(a)(2)(B) by intentionally failing to produce documents and facts or data considered by Mr. Childs in forming his opinions. In reaching this conclusion, the United States misstates the facts and overreaches in its assumptions.

First, the United States seeks "documentation" of "numerous conversations" with other experts and "verbal reports" of the battery and solenoid testing at issue. (Motion at 3.) There simply is no documentation of verbal reports or conversations that Mr. Childs considered in forming his opinions. Any such "verbal reports" and "conversations" were oral and not documented. Therefore, nothing exists to produce.

Second, the United States attacks Transocean for producing the Summary of SEM Testing Results on November 11, 2011, "well after the date for production of relied upon materials and after the deadline for submission of *rebuttal* reports." (Motion, at 4.) On September 2, 2011, this Court issued an Order Regarding Phase One Exhibits and Expert Discovery Production, setting an expert rebuttal report deadline of November 7, 2011, and a deadline for supplementing parties' exhibit lists, including expert reliance exhibits, on November 11, 2011. (Docket No. 3916 at 7.) Transocean produced the SEM Battery Testing Results on November 11, 2011, within the Court's deadline. (See EXHIBIT A, Production Transmittal letter dated November 11, 2011.)

Third, the United States claims that there are "missing tests" on October 18, October 19, October 23, and November 23, 2010. Again, the United States overreaches. Although WEST Engineering Weekly Activity reports show that work for the testing was performed on October 18, October 19 and October 23, this work was limited to setting up or calibrating testing

5

equipment. Childs's WEST Engineering Team did not conduct battery testing that Mr. Childs considered in reaching his conclusions on those dates. Nor did Mr. Childs rely on any battery testing from October 18, 19 or 23.

The United States' assertion that battery testing also was conducted on November 23, 2010 is inaccurate. (Motion at 4.) Neither the WEST Engineering Weekly Activity Reports nor the SEM Battery Testing Results reflect testing performed on November 23, 2010. (See TREX-050378; TREX-07708.) Again, the United States is seeking documents that do not exist and which Mr. Childs could not have considered in reaching his conclusions.

Fourth, the United States erroneously states that Transocean failed to provide documentation of its tests conducted on solenoids wired in reverse polarity. (Motion at 5.) On October 14, 2011, Transocean produced the testing document upon which Mr. Childs relied in reaching his opinions regarding the yellow pod. (See TREX-050129.) As with the battery testing document described above, this document was relied upon as foundation for opinions stated in Mr. Child's initial and rebuttal reports and was described on Mr. Childs's reliance list submitted on November 11, 2011. (Childs's Rebuttal Report, Reliance List.)

Fifth, the United States errs in its claim that Transocean failed to produce the maintenance analysis performed by Mr. Robert Tiano and Mr. Rodney Manning. (Motion at 6.) Messrs. Tiano and Manning were members of Transocean's Internal Investigation Team, and their analysis was issued in June 2011 in Appendices H, I, and J of Transocean's Internal Investigation Report. Mr. Childs's reliance lists submitted on September 23, 2011, and November 7, 2011, listed the Internal Investigation Report, which includes all of its appendices. (Childs's Report, Reliance List; Childs's Rebuttal Report, Reliance List.)

In light of the above facts, the United States cannot credibly argue that it is missing the facts and data considered by Mr. Childs in reaching his conclusions. The facts and data considered by Mr. Childs in forming his opinions have been produced pursuant to FRCP 26(a)(2)(B) and in accordance with Court-imposed deadlines. The United States received Mr. Childs's supplemental reliance documents on November 11, 2011, three weeks before his December 1-2, 2011 deposition.[1] Accordingly, the United States has not been harmed or prejudiced by Transocean's disclosures and productions.[2] The request for sanctions to exclude Mr. Childs is improper and should be denied.

## II. An Expert May Rely on Facts and Data Supplied By a Third Party in Reaching His Opinions.

This Court already has ruled that a designated author of an expert report may testify for all co-authors of the report. (See Order (Working Group Conference on February 3, 2012 Paragraph 6, Docket No. 5609.) Yet, the United States seeks to exclude Mr. Childs's expert reports under Federal Rule of Evidence 702 for improper foundation. Although this argument is based primarily on the United States' mistaken belief that Transocean failed to disclose facts, data, and outside opinions underlying Mr. Childs's reports, the United States also challenges the reliability of Mr. Childs's opinions because he based his conclusions, in part, on testing

---

[1] It is interesting to note that for fact witnesses in this case, the Court has allowed custodial files to be produced only 10 days before deposition. Here, parties had Mr. Childs's supplemental reliance documents at least three weeks before his deposition.

[2] The case law cited by the United States to strike Mr. Childs for an alleged failure to identify or produce work product of other experts is inapposite. In Smith v. Jacobs Engineering Group, Inc., No. 4:06cv496-WS/WCS, 2008 WL 4264718, at *4-7 (N.D. Fla. 2008), the expert's reliance on third-party sources was not discovered until the expert's deposition, and prior to the deposition, the expert had denied relying on the third-party source. By contrast, here, Transocean disclosed Mr. Childs's reliance on testing performed by the WEST Engineering Team in submitting Mr. Childs's first report on September 23, 2011, and again with the rebuttal report on November 7, 2011. Moreover, the Transocean Internal Investigation Team Report issued in June 2011 informed the United States that Transocean relied, in part, on independent testing in reaching its conclusions. Transocean produced the solenoid and battery testing Mr. Childs considered in forming his opinions well in advance of his deposition.

performed by Childs's WEST Engineering Team.  (Motion at 9-10.)  As a general rule, *questions relating to bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility* and should be left for the fact-finder's consideration. Johnson v. Samsung Electronics Am., Inc., 277 F.R.D. 161, 165 (E.D. La. 2001); Fed. R. Evid. 702.

Under Federal Rule of Evidence 702, an expert may testify in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.  Fed. R. Evid. 702.  Federal Rule of Evidence 703 permits an expert witness to base opinions on three possible sources of evidence: (1) firsthand observation; (2) trial testimony or hypothetical questions; and (3) *facts or data provided to the expert by out-of-court third parties*.  See Fed. R. Evid. 703 Notes of Advisory Committee.  With respect to data obtained from others, that information need not be independently admissible for the expert's opinion to be admitted, so as long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703.

An expert may rely on any facts or data "of a type reasonably relied upon by experts in the particular field," including facts, data, and opinions that are otherwise inadmissible. Fed. R. Evid. 703.  The modern view recognizes that experts often rely on facts and data supplied by third parties.  See Gussack Realty Co. v. Xerox Co., 224 F.3d 85, 94 (2d. Cir. 2000).   This includes relying on analyses performed by one's assistants.  See, e.g., McReynolds v. Sodexho, 349 F.Supp.2d 30, 36-37 (D.D.C. 2004) (admitting expert's opinions based on statistical analyses run by assistants who wrote and understood the computer programming); Derrickson v. Circuit City Stores, Inc., No. 95–3296, 1999 WL 1456538, at *20 (D.Md. Mar. 19, 1999) (same).

8

The term "data" also is intended to encompass the reliable opinions of other experts. Fed. R. Evid. 702 Advisory Committee Notes to 2000 Amendments; see also Mason v. Safeco Ins. Co., No. 4:09-cv-1081, 2010 WL 3341582 at *8 (E.D. Mo. Aug. 23, 2010) ("[a]n expert may rely on the reliable opinion of another expert in forming his own opinion").  Courts recognize that an expert may rely on the conclusions and opinions reached by another expert who performed forensic testing.  See Johnson, 277 F.R.D. at 166 (permitting expert to rely on conclusions from forensic testing conducted by other experts in products liability case).

Here, like a doctor that relies on laboratory blood tests in making a diagnosis, Mr. Childs directed and relied on others, such as his WEST Engineering Team, to test and generate data that Childs evaluated and used to support his opinions.  The United States has now declared that only Mr. Davis will testify at trial and will rely, in part, on the work of the United States' four other BOP experts.  (Davis Deposition 139:9-14; Working Group Order, January 27, Docket No. 5476.)  Yet the United States continues to complain that Mr. Childs also relied on others for testing data.  The United States cannot have it both ways.  Clearly, the United States understands that an expert may base his opinions on facts and data collected by others without calling into question the reliability of the expert's conclusions.

## CONCLUSION

There simply is no justification for excluding Mr. Childs as an expert.  Transocean has produced the facts and data considered by Mr. Childs in forming his opinions.  The Federal Rules of Evidence permit Mr. Childs to rely on testing conducted by third parties.  Transocean disclosed that Mr. Childs bases his opinions, in part, on testing performed by others.  Therefore, the United States is not harmed or prejudiced by Mr. Childs's reliance disclosures or documents, and this Motion should be denied.

Respectfully submitted,

By:   /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 470-6100
Facsimile:  (713) 654-1301
Email:  steven.roberts@sutherland.com
rachel.clingman@sutherland.com
kent.sullivan@sutherland.com

By:   /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com

-and-

By:   /s/ Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Richard J. Hymel (Louisiana, No. 20230)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, rjh@preisroy.com

-and-

By:   /s/ Brad D. Brian
Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 54933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

*Counsel for Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2012, I electronically filed the foregoing with the Court's CM/ECF system and service on all counsel by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

/s/  Kerry J. Miller