# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:   OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010

Relates to:  *All Cases*

MDL NUMBER 2179  SECTION: J

JUDGE BARBIER

MAGISTRATE JUDGE SHUSHAN

**************************************************************************************

## OPPOSITION TO CAMERON'S
## MOTION TO EXCLUDE ALL BOP DESIGN OPINIONS
## OFFERED BY PSC'S EXPERT GREGG S. PERKIN, P.E.

Perkin is a highly qualified mechanical engineer with extensive experience in oil field equipment, including BOPs.  He has been a consultant for Cameron, BP, Transocean, Shaffer, Hydril and others.  His opinions are well within his qualifications and experience and are fully supported by evidence and analysis:

MAY IT PLEASE THE COURT:

Typically, a qualified expert may offer testimony where it "will assist the *trier of fact . . .*" Fed. R. Evid. 702 (emphasis added). However, where, as in this case, "a district judge sits as a trier of fact in place of the jury," it is well established that "[m]ost of the safeguards provided for in *Daubert* are not as essential." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). In applying this principle, this Court has similarly noted that "the concerns of *Daubert* are largely moot in . . . a bench trial" because "*Daubert* was preoccupied with the courts' gatekeeping function vis-a-vis the *jury*." *Hebert v. Cannon*, CIV.A.A 04-1076, 2005 WL 3533695, at *2 (E.D. La. Oct 31, 2005) (Barbier, J.) (original emphasis). Indeed, citing this very reason, this Court has frequently denied motions to exclude experts in the bench trial setting. *See, e.g., U.S. Marine, Inc. v. United States*, CIV.A. 08-2571, 2009 WL 3480979, at *1 (E.D. La. Oct. 26, 2009) (Barbie, J.); *Poiencot v. Global*

*Sante Fe Drilling Co.*, CIV.A. 06-10793, 2008 WL 5429645, at *1 (E.D. la. Aug. 6, 2008) (Barbier, J.).  Despite the fact that the "objectives of *Daubert* are no longer implicated" in bench trials, *Thompson v. Rowan, Inc.*, 2007 WL 724646, at *1, and "the rejection of expert testimony is the exception rather than the rule," Advisory Committee Notes, Fed. R. Civ. P. 702 (2000), Cameron has chosen to file this *Daubert* motion.

Cameron attempts to exclude Perkin's testimony, arguing that the following opinions are not properly supported: 1) the BOP's ram blade was defective for being unable to shear off-center pipe and seal the well, and there were reasonable alternative designs; 2) the BOP's MUX cable design was defective because a single explosion could disable both control systems and therefore destroy all operator control of the BOP; and 3) the BOP's control system was defective for its inability to convey important well information to the rig floor in a manner that would warn the rig of rapidly increasing pressure.

These opinions are well supported, but, in any event, go to the weight, and not the admissibility, of the opinions.

1.    **PERKIN'S QUALIFICATIONS**

Gregg S. Perkin, P.E. has a Bachelor of Science degree from California State University at Long Beach.[1]  He became a professional engineer by exam in 1978 and is currently registered as a professional engineer in good standing by examination, experience and comity in thirteen states. Mr. Perkin is an inventor or co-inventor of thirteen U.S. patents.  Through the course of his forty-plus year career as a mechanical engineer, Mr. Perkin has become an expert in the design, use and evaluation of tools and equipment, tanks, pressure vessels, rotating and dynamic machinery, and

---

[1] Perkin's qualifications are more fully addressed in his Report, p.5 and Appendix L, p.104.

pipelines. His career began with a job involving the design, use and application of offshore and onshore blowout prevention equipment, including sub-sea production equipment. He has provided expert engineering services to numerous oil and gas exploration companies.

Mr. Perkin has provided expert testimony as a registered Professional Engineer at trial forty five times in eight states. Twenty nine of these directly involved oil and gas drilling equipment and drilling and production operations. Mr. Perkin twice provided expert trial testimony with regard to design, manufacture, assembly, testing, use and maintenance of oilfield BOP's. Additionally, Mr. Perkin has been asked to investigate, consult and provide an expert report and/or deposition in over twenty instances involving well control, BOPs, BOP Control Systems and blowouts.

Mr. Perkin has authored and co-authored energy BOP related technical papers and articles for the International Association of Drilling Contractors ("IADC").  Mr. Perkin has also served as a Lecturer and Instructor for FMC Corporation, Baker-Hughes, Incorporated and National Oil Well Varco.

Since 1996, Mr. Perkin has been a part time Instructor at the University of Texas' Petroleum Extension Service ("PETEX"). Mr. Perkin created and conducted classes in Oil & Gas Drilling & Production Operations, Mechanical Engineering, Drilling Rig Safety, Well Control, Directional Drilling and Well Servicing Operations. Between 2004 and 2010, Mr. Perkin served on PETEX's Advisory Board. In January of 2011, Mr. Perkin became one of the Principals and an Instructor at Energy Training Solutions, L.L.C. ("ETS") where he continues to teach improved and updated energy related courses. This includes BOP use, design and well control. His students over the last 15 years have included employees of virtually every major energy industry company, including BP, Transocean, Cameron and Halliburton.

Although Cameron attempts to disparage Mr. Perkin's qualifications as they concern the evaluation of BOPs, it is highly instructive that, outside the context of this litigation, Cameron thought highly enough of Mr. Perkin's qualifications in this regard that **it hired him to review the design on one of its own BOPs** (Gregg Perkin Deposition, p.83).

With these qualifications, Mr. Perkin need not have actually designed a BOP in order to render expert testimony on this subject. Neither Rule 702 nor *Daubert* require an expert to have designed a given product in order to opine about whether the design or operation is defective. *Betts v. General Motors Corp.*, 2008 WL 2789524, at *8 (5th Cir. 2008)(citing *Guy v. Crown Equipment Corp.*, 394 F.3d 320, 327 (5th Cir. 2004) (holding that there is *"no requirement that the expert actually design, produce and test their proposed design on the specific product at issue"*).  The Fifth Circuit has held that an expert's opinion based "mainly on his personal observation, professional experience, education and training" is admissible.  *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002).

2.     **THE *DEEPWATER HORIZON* SHOULD HAVE BEEN EQUIPPED WITH BETTER RAM TECHNOLOGY**

Cameron argues that Perkin provides inadequate support for his opinion that BP should have availed itself of better and safer ram technologies which were available prior to April 20, 2010. In doing so, Cameron ignores Perkin's fully supported opinions that **a)** the BOP failed to seal the well because the cutting blades of the BOP's Shear Blind Rams ("SBR's" sometimes referred to as "BSR's") were incapable of shearing the off-center pipe; **b)** it is common for pipe to be off-center and entirely foreseeable to Cameron; and, **c)** Cameron manufactured alternate technologies which would have cured or ameliorated this dangerous defect.

Cameron incorrectly argues that Perkin's review and analysis of alternative designs must be

supported by his testing or independent engineering analysis. Perkin "need not develop and test a prototype, nor must he publish his opinion in order to validate his conclusion as to safety devices suitable for this particular piece of machinery"; on the contrary, he can reach conclusions based on his review of existing, alternative ram designs and his knowledge in the area. *Surace v. Catepillar, Inc.*, 1995 WL 303895, at *2 (E.D.Pa. May 16, 1995), *aff'd in part, rev'd in part, on other grounds*, 111 F.3d 1039 (3rd Cir. 1997). See also, *Johnson v. Samsung Electronics America, Inc.,* 277 F.R.D. 161, 166 (E.D. La., Sept. 14, 2011); *Colon v. BIC USA, Inc.*, 199 F.Supp.2d 53, 76 (S.D.N.Y. Dec. 19, 2001); *Columbo v. CMI Corp.*, 26 F.Supp.2d 574, 577 (W.D.N.Y. Nov. 16, 1998). In addition, review of testing, experimental or statistical data generated by others in the field may suffice as a reasonable methodology upon which to base an expert opinion. *Monsanto Co. v. David*, 516 F.3d 1009, 1015 (Fed. Cir. 2008); *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 94, 95 (2d Cir. 2000); *Clark v. Takata Corp.*, 192 F.3d 750, 758  (3d Cir. 1999).

Perkin's testimony regarding the availability and effectiveness of these alternative ram designs is fully supported by, *inter alia*, evidence of testimony and documents from Cameron itself. The failure of the BOP to seal the well was because the BOP cutting blades (the "ram blocks") did not extend across the entire wellbore, a conclusion shared by other BOP experts including those retained by BP, Transocean, the USA and Halliburton. (Shanks, TREX-08122, pp. 29-30, 50; Childs, TREX-07687, pp. pg. 2, 22; Davis, TREX-07660, p. 15; and Stevick, TREX-07755, pp. 18-19, 27-28, respectively)[2]

Off-center pipe is a common occurrence (Dep. Patrick Campbell, pp. 39-40). The risk that

---

[2] Cameron's BOP experts took no position on whether the pipe was off-center. DNV also reached the same conclusion, but that finding may or may not be admissible depending on the scope of the Court's prior ruling.

the BOP might fail because of the blade's inability to completely shear the off-center pipe is grave since the well could not be shut in. (Dep. Billy Dean Ambrose, p.159)  The BOP on the *Horizon* was configured such that the SBR was its *only* means on shearing the pipe and sealing the well. Cameron itself had technologies which would have alleviated or ameliorated this grave and foreseeable danger including DVS rams, cDVS rams, and the use of two SBR's.

Cameron's DVS rams covered more of the wellbore than the SBR's thereby reducing the chance that drillpipe would be outside the cutting blades. (TREX-07001, p.6 of 17; Dep. Melvin Whitby, p.352) DVS rams also provided enhanced centering capabilities. (TREX-07660, p.15; TREX-07661, p.17) They were inexpensive, available, and would have been little or no trouble to install. (Dep. Jack Carter Erwin, p.18)  While DVS rams did not extend entirely across the well bore,[3] their blades were wider than the SBR blades on the DWH BOP and would have increased its ability to center the pipe.  Both of these features would have improved the ability of the DWH BOP to seal the well and were touted by Cameron (TREX-07001, p.6 of 17) and confirmed by West Engineering. (TREX-01300, pp.3-5)  These points are also confirmed by BP's BOP expert Forest Shanks (TREX-08122, p. 58) the U.S. BOP expert Rory Davis et al (TREX-07660, p.15 and TREX-07661, p.17).

Cameron offered yet another ram blade, the "cDVS," which was designed to overcome the shortcomings of the SBR by extending the blades *entirely* across the well bore. (Dep. Cameron Corporate Representative David McWhorter, pp.145-148; Dep. Cameron Engineer Melvin Whitby, p. 649) The cDVS rams were available since 2005 (Dep. Whitby, p. 354) and were available in the

---

[3] Cameron unfairly accuses Perkin of falsely stating that the DVS blade extended entirely across the well bore. Despite Cameron's effort to prevent it, Perkin made a point on the record to correct this earlier testimony and state that he was referring to the cDVS blades. (Dep. Gregg Perkin, pp. 624-626)  After the correction, Cameron chose not to inquire further.

18 3/4" (the size of the Macondo wellbore). (TREX-03185, p.CAM_CIV_0098267 - Cameron

Engineering Bulletin 702D, and TREX-05985, p.BP HZN 2179MDL 00057634)[4]  West Engineering

also supports and validates Perkin's opinion that there were feasible alternative designs for the

*Horizon* BOP. (TREX-01300, pp.3-5, and TREX-07001, p.6 of 17)

3.      **OPINIONS ON MUX CABLES AND CONTROLS**

        Both MMS regulations and API (American Petroleum Institute) **require** that there be

*redundant* BOP control systems. (30 CFR 250.443). Cameron employee Richard Coronado admitted

that this redundancy requirement mandated two complete control systems with no "single points of

failure" ("SPOF'). (Dep. Coronado, pp. 608-609). Because both sets of BOP MUX cables on the

DWH converged in the moonpool at the top of the riser, a known "hazardous area,"[5] the DWH

control system violated this design mandate (see *e.g.* TREX-07581, p. 2, 24 and TREX-05094, p.

5). Because the MUX cables traveled through a SPOF, there was no functional redundancy and the

explosion on the DWH destroyed both MUX cable control systems of the BOP. No party to the case

has disputed that a single explosion destroyed both MUX cables and disabled all operator control.

(see, *e.g.* TREX-00001, Bly Report, p.151) Perkin's opinion that this SPOF should have been

addressed and eliminated is supported by both MMS and API requirements for redundancy.

        Perkin offered three alternative designs to eliminate or ameliorate this dangerous SPOF. The

first of these was an acoustic trigger (which might be generically called a "remote control"). Thus,

if the MUX cables were disabled, this backup system could still activate the BOP. Such a system has

---

[4] These depositions and documents are among many relied upon by Perkin to support his opinions. See report, TREX-07535, generally and TREX-07536, generally, including review of designs from other manufacturers (Dep. Gregg Perkin, pp. 89-91).

[5] See, *e.g.* testimony of BP WSL Martin Breazeale, pp. 74-75 and Cameron's own schematic, TREX-08037.

been available through Cameron since 1999 and Cameron witnesses have stated it is a good, reliable system with no known failures. (Dep. William LeNormand, p. 95; Dep. David McWhorter, pp. 124-125; Dep. Edward Gaude, pp. 78-80; Dep. Jack Carter Erwin, pp. 49-50)  It is clear that Perkin's opinion on the feasibility of this alternative design is adequately supported.

Perkin also opined that the cables themselves could be protected from explosion by protective coverings. (TREX-07535, p.19 and TREX-07536, p.39)  Such technology is commonly used on drilling rigs and in industrial applications. In addition, Perkin opined that one of the MUX cables could be rerouted so that it did not travel through the moonpool.  He testified that this was feasible and that there was no engineering reason that such rerouting could not be done.  (Dep. Gregg Perkin, pp.576-578) As set forth in his report, these conclusions are based on engineering judgment and principles, and established technology, following decades of work in the oil industry.

## 4.   OTHER BOP CONTROLS

Perkin testified that the *Horizon* BOP could and should have had, as a part of the its control system, alarms alerting rig personnel of pressure fluctuations in the riser. In this case, it would have warned the drill crew of rapidly rising pressure in the riser. Perkin testified that such technology was feasible (TREX-07537, pp. 65-66; Dep. Gregg Perkin, pp. 568). DNV's Gary Kenny confirmed that such technology has eisted for decades. (Dep. Gary Kenny, 25-28)

## 5.   OTHER DAUBERT RULINGS DISTINGUISHABLE AND IRRELEVANT

In an attempt to discredit Perkin, Cameron cites three cases in which his testimony was limited due to alleged deficiencies in his methodology.  However, when one examines the cited decisions in detail, it is clear that they are both irrelevant and inapposite.

In *Peppers v. Aries Marine Corp.*, No. 3:04-CV-02356-RGJ-KLH (W.D. La.2006), the

district Judge's ruling on his Magistrate Judge's recommendations (attached to Cameron's Motion as part of Exhibit 3) shows that Perkin withdrew an opinion he had rendered previously upon learning that it was based on inaccurate information. The Court stated that since Perkin had submitted no supplementary report after correcting his original opinion, the plaintiff had no evidence to support the original position.

Cameron's characterization of the *Smith v. Ideal Indus.*, No. 2:08-CV-05169-KDE-KWR (E.D. La. 2009) is also misleading. Cameron strongly implies that the Court adopted as its own the reasoning outlined in the defendant's Motion *in Limine* regarding Mr. Perkin as its own. In actuality, the reason that the Court granted the Motion *in Limine* are not stated. The Court's one page cursory order on the subject merely indicates that the Motion was granted and notes that its "reasons [were] orally stated" (Attached to Cameron's Motion as Exhibit 4). Again, this opinion simply does not support Cameron's arguments or its disparagement of Mr. Perkin's methods.

Finally, Cameron cites *Lindsay v. Diamond Offshore Mgmt. Co.*, No.2:09-cv-06437-ILRL0KWR (E.D. La. 2010). Mr. Perkin was not allowed to testify in that case, not because of any flaw in his methods but, rather, because the Court found that the subject of his testimony was common enough that it would not aid the trier of fact in coming to its conclusion. Further, the plaintiff's counsel had not submitted Mr. Perkin's testimony timely, and it was not allowed to go to the jury for that reason (Attached to Cameron's Motion as Exhibit 5). Like the other cases cited, this opinion is inapposite and irrelevant.

## Conclusion

For the above and foregoing reasons, Cameron's *Daubert* Motion to Exclude Perkin should be denied.

This <u>14</u>th day of <u>February</u>, <u>2012</u>.

Respectfully submitted,

/s/   Stephen J. Herman

**Stephen J. Herman**, La. Bar No. 23129
**HERMAN HERMAN KATZ &COTLAR LLP**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 569-6024
E-Mail: sherman@hhkc.com
*Plaintiffs Liaison Counsel*

/s/ James Parkerson Roy

**James Parkerson Roy**, La. Bar No.11511
**DOMENGEAUX WRIGHT ROY &EDWARDS LLC**
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233-3033
Fax No. (337) 233-2796
E-Mail: jimr@wrightroy.com
*Plaintiffs Liaison Counsel*

### PLAINTIFFS' STEERING COMMITTEE

Brian H. Barr
PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office: (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office: (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor

Robin L. Greenwald LEVIN,
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY 10003
Office: (212) 558-5802
Telefax: (212) 344-5461
E-Mail: rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW,METHVIN,
PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office: (334) 269-2343
Telefax: (334) 954-7555
E-Mail: rhon.jones@beasleyallen.com

San Francisco, CA 94111-3339 Office:
(415) 956-1000
Telefax: (415) 956-1008
E-Mail: ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail: pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC 1601
Dauphin Street,
P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail: rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A. 188
East  Capitol  Street,  Suite  777
Jackson, MS 39201
Office: (601) 949-3388
Telefax:  (601)  949-3399 E-Mail:
mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW Denham
Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail: calvinfayard@fayardlaw.

Ervin A. Gonzalez
COLSON  HICKS  EIDSON  255
Alhambra Circle, Penthouse Coral
Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail: ervin@colson.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail: mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES,    PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail: mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS,  KULLMAN,  STERBCOW  &
ABRAMSON
601 Poydras Street, Suite 2615 New Orleans,
LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail: sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail: ssummy@baronbudd.com

Mikal C. Watts
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100 San
Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail: mcwatts@wgclawfirm.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP 435 Corporate
Drive, Suite 101 Maison Grand Caillou
Houma, Louisiana 70360 Office: (985)
876-7595 Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.  Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

## CERTIFICATE OF SERVICE

We Hereby Certify that this Opposition will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of February, 2012.

/s/ James Parkerson Roy and Stephen J. Herman