UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>This Document Relates to: *All Cases*<br><br>(Also applies to No. 10-2771) | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

**OPPOSITION TO BP'S *DAUBERT* MOTION TO EXCLUDE
OPINIONS AND TESTIMONY OF DR. BEA AND DR. GALE**

Plaintiffs respectfully submit the following Opposition to BP's Daubert Motion to Exclude Certain Opinions of Dr. Robert Bea and Dr. William Gale [Doc 5419]:

**MAY IT PLEASE THE COURT:**

BP's first argument relating to the reliability of Bea-Gale's causation opinion fails because BP challenges the weight of the opinion and not the field of Process Safety or the methodology. BP's second argument relating to BP's failure to learn from previous incidents similarly challenges the weight of the opinion, rather than the reliability. Finally, BP's third argument relating to expertise regarding operational drilling decisions fails because it ignores an expert's ability to rely upon the work and conclusions of other experts where, as here, it is of the nature typically relied upon within the field.

**I.   BP'S Arguments Concerning "Reliability" are Nothing More Than Challenges to the Weight of Bea-Gale's Opinions.**

Before responding to BP's individual arguments, it bears mentioning what BP is <u>not</u> arguing. BP is <u>not</u> arguing that the field of Process Safety and Risk Management is an

unrecognized field of study or practice incapable of expertise or specialized knowledge. BP is <u>not</u> arguing that Drs. Bea and Gale fail to have the requisite expertise in this field. BP is <u>not</u> arguing that the methodology reflected in the Bea-Gale Report lacks scientific rigor. BP is <u>not</u> arguing that Bea and Gale do not understand or somehow failed to apply the proper Industry Standards to BP.

Rather, BP is merely arguing that Drs. Bea and Gale somehow got it wrong. BP argues the evidence. BP argues that the experts should have relied on other evidence or looked at other procedures. By arguing the evidence, BP argues the weight of the Bea-Gale Report. Weight should be determined by the trier of fact at trial:

> Courts should not [be] lured by arguments disguised as <u>Daubert</u> challenges that actually attack the weight of the expert testimony, not its admissibility. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." <u>Hartley</u>, 310 F.3d at 1061 (quoting <u>Bonner v. ISP Tech., Inc.</u>, 259 F.3d 924, 929–30 (8th Cir. 2001) (internal citations and quotations omitted). Therefore, challenges to the factual bases or underpinnings of an expert opinion usually go only to weight and credibility of the evidence, not admissibility. <u>Moss v. Ole South Real Estate, Inc.</u>, 993 F.2d 1300, 1307 (5th Cir.1991); <u>Matador Drilling Co. v. Post</u>, 662 F.2d 1190, 1199 (5th Cir.1981).[1]

In the context of a bench trial in particular, these types of challenges are best left for trial:

> … the purpose of <u>Daubert</u> motion is "to ensure that only reliable and relevant expert testimony is presented to the jury." <u>Rushing v. Kansas City Southern Ry. Co.</u>, 185 F.3d 496, 506 (5th Cir.1999) (superseded by rule on other grounds), *citing* <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 590-93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Thus, "[m]ost of the safeguards provided for in <u>Daubert</u> are not as essential in a case such as this where a

---

[1] <u>St. Joseph Abbey v. Castille</u>, 2011 WL 2182046, at *1-*2 (E.D.La. 2011) (Duval, J.) (quoting <u>General Electric Capital Business Asset funding Corp. v. S.A.S.E. Military Ltd.</u>, 2004 WL 5495590, *5 (W.D. Tex. 2004)).

> district judge sits as the trier of fact in place of a jury." <u>Gibbs v. Gibbs</u>, 210 F.3d 491, 500 (5th Cir.2000).
>
> Given that this case is a bench trial, and thus that the objectives of <u>Daubert</u> are no longer implicated, the Court finds that the motion in limine to exclude the expert testimony of Pazos should be denied in all other respects at this time. Following the introduction of the testimony at trial, the Court will either exclude it at that point, or give it whatever weight it deserves.

<u>Thompson v. Rowan Companies</u>, 2007 WL 724646, at *1 (E.D. La. 2007) (Barbier, J.).

### A. Each of the Bea-Gale Three Opinions Is Amply Supported.

BP's first argument challenges the "reliability" of the Bea-Gale Report by arguing that the evidence Bea and Gale relied upon was biased or otherwise limited. In addition to ignoring the reality that no one or two people could ever read the 72 million pages of documents that have been exchanged in this litigation, or the more than 300 depositions that have been taken, BP summarily dismisses the 464 documents on the Reliance List and 51 depositions cited in the Report.

The 80 page Bea-Gale Report is comprised of more than 300 footnotes that run the gamut from internal BP policies and procedures, internal BP communications, depositions from the CEO of BP down to the Company Man on the *Horizon,* test results, industry treatises and guidelines, and even factual accounts of Professor Bea's own personal experience as a paid consultant for BP. The Bea-Gale Consideration List contains over 3,000 references. <u>Report</u>, <u>Appendix E</u>.

Even without such impressive documentary and testimonial reliance materials, the sheer breadth and depth of Professor Bea's experience carries enough weight to make the opinions both credible and reliable. Professor Bea has over 50 years of experience in the oil and gas industry. In addition to teaching in the University of California system,

Professor Bea has authored, contributed to, and delivered over 500 articles, books, and reports on issues related to risk and risk management. When it was looking for an objective outsider to provide reliable consultation on risk management, *BP hired Professor Bea.*

### B. Bea-Gale's Opinions Address the Process Safety and Risk Management of the Company that Exercised Final Operational and Decisional Control.

BP also complains that the Bea-Gale opinions are somehow "unreliable" because they focus primarily on BP. However, for Process Safety to work, there must only be One system in place, One system responsible for the decisions, and One company with ultimate control over those decisions. Without singular responsibility, the reactive, interactive, and proactive barriers necessary to prevent a catastrophic event will not function. Report, at 9-12.

Bea-Gale assessed whether the Process Safety System of the company with ownership, control, and ultimate responsibility caused the Macondo blowout, summarizing their conclusion as follows:

> BP Management's systemic Process Safety and Risk Management failings caused the Macondo blowout. BP Management refused to identify the risk, refused to manage the risk, refused to establish operating guidelines commensurate with the dangerousness of deepwater exploration drilling, and refused to ensure that critical safety equipment was functional to industry standards.
>
> BP Management knew that drilling the Macondo well was a highly risky and dangerous venture that demanded taking a cautious and conservative approach to meet its objectives and obligations. However, at each major decision point, BP Management chose the cheaper and riskier path. BP's drilling operations violated industry accepted Process Safety and Risk Management standards and even its own Group Defined standards and practices. BP knowingly took unnecessary risks and committed the

4

very same failures that resulted in major incidents at BP's Texas City, Grangemouth, Scotland, and Prudhoe Bay facilities.[2]

## II. Ample Evidence Supports Bea and Gale's Opinion Concerning the Causal Link Between the Macondo Blowout and Past Disasters.

On February 9, 2012, this Court issued its ruling on the admissibility of BP's Prior Bad Acts. [Rec. Doc. 5634] The Court found that the disasters at Texas City, Prudhoe Bay, and Grangemouth were not, in and of themselves, standing alone, sufficiently related to be admissible in the Phase 1 Liability Trial, (although potentially relevant to the calculation of punitive damages at a later phase). Id. at 5. The Court, at the same time, recognized that:

> … expert reports are not necessarily excluded merely because they rely upon prior incident process safety evidence. See FED. R. EVID. 703 ("If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted."). Arguably, evidence of prior incidents would be the precise sort of information that process safety experts would rely upon, even in forming opinions about what happened at Macondo.

Id. at 6. Hence, to the extent that BP's Motion seeks to exclude the earlier process safety-caused disasters, Plaintiffs respectfully suggest that the Court's previous Order addresses the issue.

Nonetheless, BP's reliability argument fails for the same reason it failed above – BP is arguing the weight of the evidence, not the methodology or field. Bea-Gale's Report addresses the three previous disasters in a straight-forward Macondo contextual

---

[2] Report, at ii.

manner – to provide an explanation as to how the Macondo blowout could have occurred (and could have been prevented) :

> During the ten years preceding the Macondo blowout, BP had three major accidents at its oil and gas handling facilities. These accidents exposed common organizational and systemic flaws in BP's Process Safety and Risk Management stemming from a poor safety (protection) culture that placed profits before prudence. The organizational and systemic causes of these major accidents are virtually identical to the systemic and organizational causes of the Macondo blowout. As a result, *these three major accidents shed light on why the Macondo blowout occurred and add context to the management decisions that caused the Macondo blowout.*

Report, at 29 (emphasis supplied). This causal link between the previous three process-safety-caused disasters and the Macondo blowout are bolstered by a number of supporting sub-opinions. (As well as the opinions and methodologies of BP's own experts, Burch and Sutcliffe, and the testimony of BP's own employees, DeFranco, Baxter and Grounds, *see* OPPOSITION TO MOTION TO EXCLUDE PRIOR BAD ACTS [Doc 4648], pp.2-3.) These supporting sub-opinions are as follows:

- BP Management emphasized and incentivized a culture that placed profits over safety;

- BP Management did not oversee and monitor Process Safety risks;

- BP's oil and gas handling facilities did not have effective Process Safety barriers;

- BP did not perform effective audits at Grangemouth, Texas City, and Prudhoe Bay;

- BP's oil and gas handling facilities did not create, follow, and update safety critical procedures;

- BP did not maintain suitable, safety critical equipment; and

- BP did not learn from prior incidents and near misses.

Bea-Gale then took these sub-opinions, reflecting grounded Process Safety principles, and drew the causation line to Process Safety violations at Macondo. BP's argument that Bea and Gale in their depositions failed to account for any and all remedial steps BP took, thereby rendering their opinion "unreliable," equates to nothing more than argument over which evidence the Court should consider as more compelling. Bea and Gale had more than ample evidence to reach their opinions, and BP knows better than to challenge their methodology.

Bea-Gale considered and weighed the Process Safety violations of the past, compared to the Process Safety violations at Macondo, and was able to opine that the similarity was more than just compelling – it was déjà vu all over again. Specifically, Bea-Gale looked at BP's own assessment (or those it accepted) of these disasters as well as the steps BP took in allegedly fixing these Process Safety failures. Bea-Gale reviewed BP's policies and practices enacted after these disasters. Bea-Gale examined deposition after deposition of those people within BP responsible for the creation, execution, and auditing of Process Safety. Some of these people included: Tony Hayward, Mark Bly, Samuel DeFranco, John Mogford, Cheryl Grounds, Harry Thierens, Pat O'Bryan, Kevin Lacy, and Kal Jassal.

After this thorough factual gathering, Bea-Gale compared them to industry accepted principles of Process Safety such as AMERICAN PETROLEUM INSTITUTE RECOMMENDED PRACTICE 75: DEVELOPMENT OF A SAFETY AND ENVIRONMENTAL PROGRAM FOR OFFSHORE OPERATIONS AND FACILITIES, Section 1.2.1 (3rd ed. 2004), PROCESS SAFETY PERFORMANCE INDICATORS FOR THE REFINING AND PETROCHEMICAL INDUSTRIES ANSI/API RECOMMENDED PRACTICES RP-754 (2010), GUIDELINES FOR

CHEMICAL PROCESS QUANTITATIVE RISK ANALYSIS, CENTER FOR CHEMICAL PROCESS SAFETY (1989); GUIDELINES FOR PREVENTING HUMAN ERROR IN PROCESS SAFETY, CENTER FOR CHEMICAL PROCESS SAFETY (1994).[3]   See also Report, at 1-17.

Finally, there is a certain irony with BP challenging the "reliability" of Professor Bea's opinions.  BP hired Professor Bea as a consultant for over 10 years to assess and advise on Process Safety matters.  As related in the Report:

> BP Management knew before the blowout that it was committing Process Safety and Risk Management violations in its deepwater exploration and production in the Gulf of Mexico.  In a 2003 report commissioned by BP titled "Human and Organizational Factors in Design and Operation of Deepwater Structures," Professor Bea advised BP Management that it should include in its Gulf of Mexico deepwater operations Process Auditing, Reward System, Quality Degradation, Perception of Risk, and Command and Control Elements.

Report, at xix.   Sadly, BP did not listen:

> BP Management  knew all three of these problems were caused by its decision to cut costs, its decision to downsize, and its decision to focus on production to the detriment of responsible management and adequate protection system safety.  BP Management also knew that it had created Process Safety dangers.  BP Management knew this because Professors Bea and Roberts told them.  *Professor Bea told BP Management three times that it was headed for disaster.*[4]

---

[3] A number of these industry standard publications were authored by Professor Bea. See Robert Bea and Karlene Roberts, MANAGING RAPIDLY DEVELOPING CRISIS:  REAL TIME PREVENTION OF SYSTEM ACCIDENTS, Report to BP, Houston, TX (2003); Robert Bea, HUMAN & ORGANIZATIONAL FACTORS IN DESIGN AND OPERATION OF DEEPWATER STRUCTURES, Report to BP, Houston, TX (2003).  Robert Bea, "Human & Organizational Factors in the Safety of Offshore Structures," RISK AND RELIABILITY IN MARINE TECHNOLOGY, Balkema Publishers (1998); "Design for Reliability: Human and Organizational Factors," HANDBOOK OF OFFSHORE ENGINEERING (2005); "Building Process Safety Culture, Tools to Enhance Process Safety Performance," AMERICAN INSTITUTE OF CHEMICAL ENGINEERS (2005).

[4] Id. at vi (emphasis supplied).

### III. As Unchallenged Experts in Process Safety and Risk Management, Bea and Gale Are Entitled to Rely Upon the Expertise and Reports of Others.

BP's last argument challenges Bea-Gale's ability to render an opinion on certain fields in which they admitted they were not experts. Yet, an expert can rely upon otherwise inadmissible evidence as long as it is of a type "reasonably relied upon by experts in the particular field." FED. R. EVID. 703. *See also,* Monsanto Co. v. David, 516 F.3d 1009, 1015-16 (5th Cir. 2008) (finding that expert could rely upon a report prepared by someone else). The purpose of allowing experts to rely on another expert's opinions is that "an expert cannot be an expert in all fields, and it is reasonable to expect that experts will rely on the opinion of experts in other fields as background material for arriving at an opinion." Concerned Area Residents for the Environ. v. Southview Farm, 834 F. Supp. 1422, 1436 (W.D.N.Y. 1993).[5]

While Bea and Gale are not experts in every scientific and engineering field involved in drilling a deepwater well, (and frankly it is doubtful that any one person could be), Bea and Gale are experts in the field of Process Safety. BP does not challenge this qualification. "Process Safety" is described as follows:

> Process Safety and Risk Management forms the basis of a Safety Management System, which includes the standard of care and regulatory requirements for oil and gas drilling around the world. This industry recognizes and incorporates the philosophy, principles, ethics, and tools of these engineering disciplines for controlling risks. The particulars may vary depending on the circumstances, yet there are accepted rules used throughout – risk must be identified, analyzed, and mitigated by continuous

---

[5] *See also,* Johnson v. Samsung Electronics America, Inc., 277 F.R.D. 161, 166 (E.D. La. 2011) (Duval, J.) ("An expert may rely on the reliable opinion of another expert in forming his own opinion") (quoting Mason v. Safeco Insurance Company of America, 2010 WL 3341582 at *8 (E.D. Mo. 2010) (citing Fed.R.Evid. 702 Advisory Committee Notes to 2000 Amendments ("The term 'data' is intended to encompass the reliable opinions of other experts")).

9

>> application and maintenance of *layers of protection* known as protective barriers.

Report, at iii (emphasis in original).  Because Process Safety involves the assessment and management of risk across an Engineering System which itself entails a number of different disciplines, a Process Safety expert must rely upon experts in these other disciplines when measuring the risk.  "It 'is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert.'" In re Genetically Modified Rice Litigation, 666 F.Supp.2d 1004, 1033 (E.D. Mo. 2009) (quoting Dura Auto. Sys. of Ind., Inc. v. CTS Corp., 285 F.3d 609, 613 (7th Cir.2002)).

BP's argument is fatally flawed in another respect.  BP does not challenge the underlying propositions on which Bea-Gale rely.  The list of key drilling decisions that increased risk is amply supported throughout the record, by other experts, and in Bea-Gale's own report.  See Report, at 64.  Bea-Gale are opining on the "increase of risk" for the decision, not on the underlying decision itself.  For example, Bea-Gale opine on the increase of risk in not running a cement bond log or not waiting for the results to the negative pressure test before proceeding further.  These types of risk-centric opinions are squarely within the province of Process Safety experts.

**Conclusion**

For the above and foregoing reasons, BP's Motion to Exclude Certain Opinions and Testimony of Dr. Robert Bea and Dr. William Gale should be denied.

Dated: February 14, 2012.

Respectfully submitted,

| | |
|---|---|
| /s/ Stephen J. Herman | /s/ James Parkerson Roy |
| Stephen J. Herman, La. Bar No. 23129 | James Parkerson Roy, La. Bar No. 11511 |
| HERMAN HERMAN KATZ | DOMENGEAUX WRIGHT ROY |
| & COTLAR LLP | & EDWARDS LLC |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhkc.com | E-Mail: jimr@wrightroy.com |
| *Plaintiffs' Liaison Counsel MDL 2179* | *Plaintiffs' Liaison Counsel MDL 2179* |

**PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Brian H. Barr | Robin L. Greenwald |
| LEVIN, PAPANTONIO, THOMAS, | WEITZ & LUXENBERG, PC |
| MITCHELL, ECHSNER & PROCTOR, PA | 700 Broadway |
| 316 South Baylen St., Suite 600 | New York, NY  10003 |
| Pensacola, FL 32502-5996 | Office:  (212) 558-5802 |
| Office:  (850) 435-7045 | Telefax: (212) 344-5461 |
| Telefax: (850) 436-6187 | E-Mail:  rgreenwald@weitzlux.com |
| E-Mail: bbarr@levinlaw.com | |
| | |
| Jeffrey A. Breit | Rhon E. Jones |
| BREIT DRESCHER IMPREVENTO & | BEASLEY, ALLEN, CROW, METHVIN, |
| WALKER, P.C. | PORTIS & MILES, P. C. |
| 999 Waterside Drive, Suite 1000 | 218 Commerce St., P.O. Box 4160 |
| Norfolk, VA 23510 | Montgomery, AL 36104 |
| Office:  (757) 670-3888 | Office:  (334) 269-2343 |
| Telefax: (757) 670-3895 | Telefax: (334) 954-7555 |
| E-Mail: jbreit@bdbmail.com | E-Mail:  rhon.jones@beasleyallen.com |

11

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail:  ervin@colson.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH, LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Mikal C. Watts (PSC)
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail:  mcwatts@wgclawfirm.com

**CERTIFICATE OF SERVICE**

    WE HEREBY CERTIFY that the above and foregoing Opposition will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 14th day of February, 2012.

                                                  /s/ Stephen J Herman and James Parkerson Roy