UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | : MDL NO. 2179 : : : SECTION: J : |
| Applies to: *All Cases* | : JUDGE BARBIER : MAG. JUDGE SHUSHAN |

..................................................................................................................................................

**OPPOSITION TO BP'S *DAUBERT* MOTION
TO EXCLUDE THE REPORT AND TESTIMONY OF DAVID PRITCHARD**

Plaintiffs respectfully submit the following memorandum in opposition to the Motion to Exclude the Report and Testimony of David Pritchard [Doc 5432]:

**MAY IT PLEASE THE COURT:**

Plaintiffs offer David Pritchard for his expertise in drilling; specifically, well procedure and execution. Typically, a qualified expert may offer testimony where it "will assist the *trier of fact* …." Fed. R. Evid. 702 (emphasis added). However, where, as in this case, "a district judge sits as the trier of fact in place of the jury," it is well established that "[m]ost of the safeguards provided for in *Daubert* are not as essential." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). In applying this principle, this Court has similarly noted that "the concerns of *Daubert* are largely moot in … a bench trial" because "*Daubert* was preoccupied with the courts' gatekeeping function vis-a-vis the *jury*." *Hebert v. Cannon*, No.04-1076, 2005 WL 3533695, at *2 (E.D. La. Oct. 31, 2005) (Barbier, J.). Indeed, citing this very reason, this Court has frequently denied motions to exclude experts in the bench trial setting. *See, e.g., U.S. Marine, Inc. v. United States*, CIV.A. 08-2571, 2009 WL 3480979, at *1 (E.D. La. Oct. 26, 2009) (Barbier, J.); *Poiencot v. Global SanteFe Drilling Co.*, No.06-10793, 2008 WL 5429645, at *1 (E.D. La. Aug. 6, 2008) (Barbier, J.); *Wilson v. Am. Sec. Ins. Co.*, No.07-5984, 2008 WL 2704522, at *1 (E.D. La. July 3,

1

2008) (Barbier, J.); *Matheny v. Tetra Technologies, Inc.*, No.07-1556, 2008 WL 2178091, at *1 (E.D. La. May 22, 2008) (Barbier, J.); *Sch. Bd. of Parish of St. Charles v. Shell Oil Co.*, No.04-2511, 2007 WL 756458, at *1 (E.D. La. Mar. 8, 2007) (Barbier, J.); *Thompson v. Rowan Companies, Inc.*, No.06-3218, 2007 WL 724646, at *1 (E.D. La. Mar. 6, 2007) (Barbier, J.); *Jordan v. Dixie Pump & Supply, Inc.*, No.05-4027, 2006 WL 3241366, at *1 (E.D. La. Nov. 7, 2006) (Barbier, J.); *Eagle Lake Estates, L.L.C. v. Cabot Oil & Gas Corp.*, No.04-169, 2005 WL 3541056, at *1 (E.D. La. Oct. 31, 2005) (Barbier, J.); *Albarado v. Chouest Offshore, LLC*, No.02-3504, 2003 WL 22204538, at *1 (E.D. La. Sept. 5, 2003) (Barbier, J.).

Despite that the "objectives of *Daubert* are no longer implicated" in bench trials, *Thompson*, 2007 WL 724646, at *1, and "the rejection of expert testimony is the exception rather than the rule," ADVISORY COMM. NOTES, Fed. Rule Evid. 702 (2000), BP has nonetheless deluged the Court with seventeen *Daubert* motions to exclude expert reports and testimony. Here, BP seeks to exclude Mr. Pritchard, arguing that he: (1) fails to consider alternative possible causes for the Macondo well blowout; (2) employs unreliable methodology; (3) lacks expertise; (4) makes credibility determinations; (5) impermissibly offers legal conclusions; and (6) relies on Dr. Andrew Hurst's opinions regarding the "Golden Zone theory"—opinions BP contends are likewise inadmissible. As established below, BP's contentions are inaccurate, and even if this case were to be tried to a jury, BP's contentions go to the weight, and not the admissibility, of Mr. Pritchard's opinions.

I. **Mr. Pritchard's Opinions Are Based On His Evaluation of the Circumstances Surrounding the Macondo Well Explosion.**

Pritchard did not *assume* BP's responsibility for the Macondo well blowout; it is Mr. Pritchard's *opinion*, supported by expertise and fact, that BP is responsible. As recognized by

many, including BP itself, the operator of a well bears ultimate control.[1]  Here, Mr. Pritchard delves into BP's responsibilities and explains precisely how, in the events leading up to the blowout, BP's abrogation of those responsibilities led to the explosion, fire and spill.[2]  Mr. Pritchard's opinions are not based on a "premise" or an "assumption" of BP's responsibility, but based on his evaluation of BP's well procedures and execution—in other words, BP's actions as the final decision maker.

Secondly, BP's criticism that Mr. Pritchard fails to consider alternative causes for the blowout simply misconstrues Mr. Pritchard's analysis.  Mr. Pritchard has evaluated the events leading up to and following the Macondo well blowout.  He has looked at cementing.[3]  He has considered opinions regarding the flow of reservoir fluids.[4] He has discussed float collars and the blow out preventer.[5]  He has evaluated the monitoring of the Macondo well.[6]  He has reviewed the Sperry-Sun data in addition to the daily data from the BP OpenWells Reports.[7]  To put it simply, Mr. Pritchard looked at the whole picture,[8] and in doing so, reasonably concluded that BP, as the Operator of Macondo, recklessly piled risk on top of risk, resulting in the blowout.[9]

Further, the case law cited by BP, such as *Michaels v. Avitech, Inc.*, 202 F.3d 746 (5th Cir. 2000), and *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239 (5th Cir. 2002), are wholly inapplicable

---

[1] *See, e.g.,* Ex. A: D. Rainey Dep. (BP GOM VP-Expl.) 420:16-20, June 3, 2011; R. Beruite Dep. (BP Cement Consultant) 264:06-12, Aug. 29, 2011; D. Cameron Dep. (TO Well Const. Supervisor) 314:08-10, June 13, 2011; P. Roller Dep. (TO Invest. Team; Drill. Engr) 262:21-23, Aug. 25, 2011; R. Sweatman Dep. (HESI Chief Technical Prof.-Cement Task Force Member) 345:24-346:20, Nov. 10, 2011; L. McMahan Dep, (T.O. VP-Performance) 452:24-453:06, June 30, 2011; S. Sannan Dep. (TO Mgr. - N. Am.) 409:22- 411:3, July 28, 2011.
[2] *See, e.g.,* Ex. B, D. Pritchard Dep. 206:20-207:7, Nov. 14, 2011.
[3] Ex. B, D. Pritchard Dep. 70:18-22, 107:21-108:14, 110:15-111:8, 114:18-115:07.
[4] Ex. B, D. Pritchard Dep. 58:10-24.
[5] Ex. B, D. Pritchard Dep. 221:13-223:18, 525:15-526:02, 531:22-532:03, 532:14-17, 533:04-534:08.
[6] Ex. B, D. Prichard Dep. 321:09-17, 398:13-399:01, 415:21-416:18, 459:18-462:06.
[7] Ex. B, D. Pritchard Dep. 116:09-17, 118:13-21, 122:01-04, 146:23-147:11, 181:13-16.
[8] Ex. B, D. Pritchard Dep. 618:24-619:20.
[9] Ex. B, D. Pritchard Dep. 115:05-07; Ex. E, D. Pritchard Tech. Rep. at 16-23 (summarizing unnecessary risks).

to the facts of this case. In *Michaels*, the Fifth Circuit limited its holding to those situations where "the plaintiff's *only* evidence of the defendant's negligence [was] an inference from the observation of a dangerous condition." *Michaels*, 288 F.3d at 753-54 (emphasis supplied). Here, Plaintiffs' evidence—and Mr. Pritchard's consideration materials, reliance exhibits and ultimate conclusions as stated in his report—go far beyond a mere "inference". Further, in *Pipitone,* a case dissimilar in almost every respect, the expert admitted "it was as likely as not" that the product caused the alleged injury. *Pipitone,* 288 F.3d at 245. Mr. Pritchard unequivocally concludes that BP is ultimately responsible, despite the acts of contractors, because BP failed to properly design, plan, and execute the well, including failing to properly implement procedures with contractors. Moreover, BP's criticism that Pritchard allegedly failed to consider the actions of contractors is more properly directed toward the weight of the evidence, not admissibility. *See United States v. 14.38 Acres of Land,* 80 F.3d 1074, 1077 (5th Cir. 1996) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility"); *Jones v. Otis Elevator Co.,* 861 F.2d 655, 663 (11th Cir. 1988) (holding that any weaknesses in the underpinnings of an expert's opinion goes to weight and not admissibility).

II. **BP's Attempt to Twist Mr. Pritchard's Methodology Into Circular Logic Ignores the Obvious Conclusions Stemming From the Macondo Well Explosion.**

Redundant throughout BP's motion is the argument that Mr. Pritchard relies on the occurrence of the blowout—"a negative result"—as the "sole" basis for his opinion that "BP must have done something wrong" (Doc. No. 5432 at 7). First and foremost, it should be noted that BP has openly admitted that the Macondo blowout should have never happened, and was

entirely preventable.[10]  Thus, BP's attempt to now criticize what it itself has essentially deemed obvious is ludicrous.

Further, while Mr. Pritchard admits—in response to persistent questioning—that BP acted recklessly as evidenced by the blowout, Mr. Pritchard does not *assume* that BP was reckless simply because of the blowout.  In fact, Mr. Pritchard made this clear to BP's counsel during his deposition:

> Q. [The] question that you ask yourself when you as an Engineer are using your Engineering definition of "grossly reckless," starting with "a sloppy operation."  You start with: "Did it blow or not?"
>
> A. What are the facts of the well?
>
> Q. Do – do you understand my question?
>
> A. And – and – and – I understand your question.
>
> Q. Okay.
>
> A. But the first question I ask, as in any of my hazards planning, and what I've done over my year career –
>
> Q. Okay.
>
> A. – is I never assume any causals.  I always start with the facts of the well, beginning with design.
> …
> Q. Okay.  You did not assume any causes before you started this work, correct?
>
> A. Sir, I had no presumptions.
>
> Q. Okay.  You were open to look at all information that was available to you?
>
> A. And I did look at all information that I felt was necessary to analyze the well.[11]

---

[10] Ex. C: A. Hayward (BP CEO) Dep. 462:11-463:09, June 8, 2011; S. DeFranco (BP Segment Tech. Engin. Auth.-Process Safety) Dep. 144:18-145:01, 150:13-17, 151:09-151:24, April 12, 2011; D. Rainey (BP GOM VP-Expl.) Dep. 389:17-24; R. Bodek (BP Expl. Geologist) Dep. 328:6-23, 329:4-19; K. Lacy (BP GOM VP D&C) Dep. 124:05-124:16, June 1, 2011; M. Bly (BP Exec. VP S&OR) Dep. 439:16-18, Feb. 18, 2011.

Accordingly, Mr. Pritchard has not assumed that BP acted recklessly just because the blowout occurred, and BP's attempt to convert his remarks—which state the obvious—into "circular logic" should fail. By BP's own admission, this blowout should not have occurred, and Mr. Pritchard's statements reflecting such are not bases for exclusion.

### III. Mr. Pritchard's Responses to BP's Badgering Questions About BP Employee Competence Solidify His Expert Qualifications.

BP questions the qualifications of Mr. Pritchard by focusing on Mr. Pritchard's statements regarding BP's competence (Doc. No. 5432 at 4-6). In his report, Mr. Pritchard concludes that, among other things, "no minimally competent drilling and completions engineer or manager would have signed off on the decisions made by BP on the Macondo well."[12] Despite BP's thirty deposition questions regarding competency—in a seeming attempt to tire Mr. Pritchard into a different conclusion—Mr. Pritchard's answers remained focused on BP's decisions while simultaneously reinforcing his own qualifications.[13]

For example, not only is he a registered Petroleum Engineer, but Mr. Pritchard has directly engaged with drilling contractors, including the skilled labor of drillers, toolpushers, floorhands and roustabouts.[14] In fact, Mr. Pritchard has been evaluating wells since before graduating from college, and over the past 43 years, has consulted for major oil and chemical companies all over the world, focusing on drilling hazards management and analysis.[15] Furthermore, Mr. Pritchard has significant experience as a company man and a well site leader, noting "maybe 50% of [his] time has been [spent] chasing rigs, so to speak."[16]

---

[11] Ex. B, D. Pritchard Dep. 145:13-146:22.
[12] Ex. E, D. Pritchard Tech. Rep. at 23.
[13] Ex. B, D. Pritchard Dep. 85:22-91:9,125:6-127:25, 583:2-588:20.
[14] Ex. B, D. Pritchard Dep. 95:19-97:11.
[15] Ex. B, D. Pritchard Dep. 16:3-17:3.
[16] Ex. B, D. Pritchard Dep. 63:19-64:25

BP's assertion that Mr. Pritchard is not qualified to opine on "a person's competency" misses the point of Mr. Pritchard's opinions. Mr. Pritchard has not, as he made clear during his deposition, evaluated the individual personnel files of BP's engineers and managers.[17] Instead, Mr. Pritchard has evaluated the facts surrounding the blowout to reach his opinions—opinions he is fully qualified to make.[18]

## IV. BP Confuses Mr. Pritchard's Reliance on Sworn-To Testimony With a Credibility Determination.

Despite Mr. Pritchard's express statement that he has not made credibility determinations,[19] BP nonetheless argues that Mr. Pritchard has done just that with respect to BP petrophysicist, Galina Skripnikova. Mr. Pritchard relies on Ms. Skripnikova's testimony in opining that BP failed to maintain zonal isolation. During the first day of her deposition, Ms. Skripnikova admitted that, prior to the incident, analysis indicated that gas was present at 17,467 feet—which would violate MMS regulations requiring more than 500 feet from the top of cement (located at 17,260 feet):

> Q. So here's my question: When was this more data available such that this analysis which caused you-all to highlight as probable hydrocarbon zone, the one at 14,467[sic], when was that analysis done?
>
> A. The analysis was done the day of the incident.
>
> Q. The day of the incident?
>
> A. Yes.
>
> Q. After the cement job was done, right?
>
> A. Yes.[20]

---

[17] Ex. B, D. Pritchard Dep. 127:12-128:1.
[18] Ex. E, D. Pritchard Tech. Rep. at 14-15.
[19] Ex. B, D. Pritchard Dep. 117:25-118:21 ("Did you discount testimony because you personally believed you didn't trust the witness? … A. No sir ….")
[20] Ex. D, Skripnikova Dep. 212:4-212:24, July 7, 2011.

During the second day of her deposition, Ms. Skripnikova testified that after the blowout, she met with other petrophysicists post incident to evaluate the well data:

> Q. Okay. Now, you've talked a lot in the last day and a half about how after the accident on April 20th yourself and some other petrophysicists came together and looked at the well data further, correct, just to get us level set?
>
> A. Post incident.[21]

Although Ms. Skripnikova unequivocally stated "the analysis was done on the day of the incident," BP now contends that her subsequent testimony regarding her post-blowout meeting with other petrophysicists somehow replaces her earlier testimony.[22] This is illogical, as Ms. Skripnikova's initial testimony involved different facts, dates, etc., and regardless, Ms. Skripnikova never formally changed her testimony. For BP to question Mr. Pritchard regarding this non-existent variance essentially entraps Mr. Pritchard in an imagined credibility determination. As Mr. Pritchard testified, he has not assessed the credibility of Ms. Skripnikovoa, or any other witness, and he has properly relied upon their sworn-to statements.

**V.   Mr. Pritchard Does Not Provide a Legal Opinion.**

BP argues that Mr. Pritchard's opinions and testimony should also be excluded because he allegedly renders "legal" conclusions by opining that: (1) BP has misrepresented itself to MMS and (2) had BP correctly reported to MMS, BP would have stood in violation of MMS regulations. Mr. Pritchard has not drawn legal conclusions. Instead, Mr. Pritchard's opinions with respect to BP and MMS are factually intensive, focusing on the differences between what BP *reported* to MMS and what was *actually* occurring on Macondo.[23]

---

[21] Ex. D, Skripnikova Dep. 572:18-25, July 8, 2011.
[22] (Doc. No. 5432 at 8 ("Nevertheless, when he was pressed to admit that Skripnikova testified later in her deposition, that with respect to her analysis of the 17467 foot sand, she was referring to her knowledge *after* the incident …." (original emphasis)))
[23] *See* Ex. E, Pritchard Tech. Rep. § 7.

Further, MMS officials have already interpreted their regulations—interpretations to which Mr. Pritchard's opinions conform. Through the testimonies of David Trocquet, MMS District Manger for the New Orleans Office; Michael Saucier, MMS Regional Supervisor; Robert Neal, MMS Drilling Inspector; and Frank Patton, MMS Drilling Engineer, the details emerge of what is required by MMS regulations.[24] Moreover, BP's own testimony provides a similar interpretation of MMS regulations.[25] Based on these interpretations, Mr. Pritchard has evaluated the facts to determine the accuracy of BP's original submissions to MMS and the resulting implications of any inaccuracies.

Mr. Pritchard's opinions regarding BP and MMS do not seek to interpret regulations nor do they seek to conclude a legal matter at issue before the Court. The purpose of Mr. Pritchard's opinions and testimony are to assist in the matters at hand: ascertaining liability for the damages caused by the Macondo well explosion. Such testimony is appropriate. *See, e.g., C.P. Interests, Inc. v. California Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001) (evaluating expert's conclusion against ultimate issues to be tried).

### VI. Mr. Pritchard's Reliance on Dr. Hurst is Proper.

BP asserts that Mr. Pritchard's reliance on Dr. Andrew Hurst's opinions regarding the

---

[24] Ex. F: D. Trocquet Dep. (BOEMRE 30(b)(6)-NOLA District Mgr.) 50:13-20, 53:10-55:4, 108:10-109:25, 204:07-24, 205:03-09, 217:19-218:19, 251:05-253:14, 260:11-262:10, 262:20-264:25, 265:04-268:07, 270:02-22, 271:16-276:01, 281:20-281:04, Sept. 23, 2011; M. Saucier Dep. (MMS Reg. Spvr., Field Operations), 92:12-:24, 94:15-23, 108:04-109:02, 111:21-113:07, 116:04-11, 118:10-20, 123:22-124:07, 124:08-14, 156:22-25, 158:12-159:16, 165:20-166:07, 197:18-20, 249:01-09, July 27, 2011; R. Neal Dep. (MMS Drilling Inspector) 35:04-13, 63:22-64:09, 74:17-75:22, 84:02-20, 87:17-88:05, July 19 2011; F. Patton Dep. (MMS Drilling Eng. NOLA Dist.) 76:21-25, 150:11-18, 282:17-23, 292:02-05, 292:25-293:06, 314:24-315:14, 316:27-317:02, 319:16-320:13, 321:21-322:06, 324:03-07, 324:04-325:20, 325:23-326:07, 326:07-326:14, 327:23-328:16, 328:23-329:10, 331:16-333:23, 339:14-339:18, 342:24-343:12, 346:19-347:11, 347:19-348:01, 348:02-349:04, 434:190-435:05, 463:24-464:03, July 14, 2011.

[25] *See, e.g.,* Ex. G: M. Sepulvado Dep. (BP Wellsite Leader) 439:23-23, 439:25-440:01, 447:03-19, May 11, 2011; S. Douglas Dep. (BP Reg. Compliance Team Lead) 95:17-96:24, 97:07-23, 98:03-10, 104:05-11, Oct. 11, 2011; H. Powell Dep. (BP GOM Reg. Advisor) 155:7-18, Nov. 17, 2011; J. Guide Dep. (BP Wells Team Leader) 534:12-534:16, May 10, 2011.

Golden Zone are inadmissible.  As established in Plaintiffs' response to BP's motion to exclude Dr. Hurst, fully incorporated by reference herein, Dr. Hurst's opinions should be admitted, and the "Golden Zone theory" is indeed a reliable theory.  As noted by Statoil researchers, including Paul Nadeau, the 2000 Schlumberger Medal winner for scientific excellence in mineralogy, "[t]he Golden Zone concept is an empirically verifiable theory …" because reliable scientific analysis of mineral diagensis have established the Golden Zone to be a thermal area where the majority of conventional oil an gas resources are located and remain in a steady state with respect to temperature.[26]  This theory has been widely recognized and published,[27] and Mr. Pritchard's reliance thereon, with respect to well design and operations, is proper.

## CONCLUSION

For the above and foregoing reasons, the Court should deny BP's Motion to Exclude the Report and Testimony of David Pritchard.

This 14th day of February, 2012.


Respectfully submitted,

| | |
|---|---|
| /s/ Stephen J. Herman | /s/ James Parkerson Roy |
| **Stephen J. Herman**, La. Bar No. 23129 | **James Parkerson Roy**, La. Bar No.11511 |
| **HERMAN HERMAN KATZ** | **DOMENGEAUX WRIGHT ROY** |
| **& COTLAR LLP** | **&EDWARDS LLC** |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhkc.com | E-Mail: jimr@wrightroy.com |
| *Plaintiffs Liaison Counsel* | *Plaintiffs Liaison Counsel* |

---

[26] Ex. H, A. Buller, P. A. Bjørkum, P. H. Nadeau, & O. Walderhaug, *Distribution of Hydrocarbons in Sedimentary Basins: The Importance of Temperature*, R&D Memoir Series No. 7 at 10, (Statoil ASA 2005) [TREX 20060].

[27] Ex. I, P. H. Nadeau, *The 2010 George Brown Lecture: Earth's Energy "Golden Zone": A Synthesis From Mineralogical Research*, 46 Clay Minerals 1 (2011) [TREX 20093].

**PLAINTIFFS' STEERING COMMITTEE**

Brian H. Barr
PAPANTONIO, THOMAS, MITCHELL,
ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office: (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA 23451
Office: (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com
Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Office: (415) 956-1000
Telefax: (415) 956-1008
E-Mail: ecabraser@lchb.com
Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC 1601
Dauphin Street,
P. O. Box 66705
Mobile, AL 36660
Office: (251) 471-6191
Telefax: (251) 479-1031
E-Mail: rtc@cunninghambounds.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW Denham
Springs, LA 70726
Office: (225) 664-4193
Telefax: (225) 664-6925
E-Mail: calvinfayard@fayardlaw.

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH,

Robin L. Greenwald Levin,
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY 10003
Office: (212) 558-5802
Telefax: (212) 344-5461
E-Mail: rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW,METHVIN,
PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office: (334) 269-2343
Telefax: (334) 954-7555
E-Mail: rhon.jones@beasleyallen.com
Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA & TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Office: (504) 394-9000
Telefax: (504) 394-9110
E-Mail: pcossich@cossichlaw.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A. 188
East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399 E-Mail:
mike@mikespy.com

Ervin A. Gonzalez
COLSON HICKS EIDSON 255
Alhambra Circle, Penthouse Coral
Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail: ervin@colson.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,

| | |
|---|---|
| LLP<br>501 Broad Street<br>Lake Charles, LA 70601<br>Office: (337) 439-0707<br>Telefax: (337) 439-1029<br>E-Mail: mlundy@lundylawllp.com | HOLTHAUS & FRUGE'<br>618 Main Street<br>Baton Rouge, LA 70801-1910<br>Office: (225) 344-3735<br>Telefax: (225) 344-0522<br>E-Mail: mpalmintier@dphf-law.com |
| Paul M. Sterbcow<br>LEWIS, KULLMAN, STERBCOW & ABRAMSON<br>601 Poydras Street, Suite 2615 New Orleans, LA 70130<br>Office: (504) 588-1500<br>Telefax: (504) 588-1514<br>E-Mail: sterbcow@lksalaw.com | Scott Summy<br>BARON & BUDD, P.C.<br>3102 Oak Lawn Avenue, Suite 1100<br>Dallas, TX 75219<br>Office: (214) 521-3605<br>Telefax: (214) 599-1172<br>E-Mail: ssummy@baronbudd.com |
| Mikal C. Watts<br>WATTS GUERRA CRAFT, LLP<br>Four Dominion Drive, Building 3, Suite 100 San Antonio, TX 78257<br>Office: (210) 447-0500<br>Telefax: (210) 447-0501<br>E-Mail: mcwatts@wgclawfirm.com<br>Joseph F. Rice<br>MOTLEY RICE LLC<br>28 Bridgeside Blvd. Mount Pleasant, SC 29464<br>Office: (843) 216-9159<br>Fax No. (843) 216-9290<br>E-Mail: jrice@motleyrice.com | Conrad S.P. "Duke" Williams<br>WILLIAMS LAW GROUP 435 Corporate Drive, Suite 101 Maison Grand Caillou Houma, Louisiana 70360 Office: (985) 876-7595 Fax No. (985) 876-7594<br>E-Mail: duke@williamslawgroup.org |

**CERTIFICATE OF SERVICE**

  We hereby certify that this Memorandum will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of February, 2012.

                     s/ James Parkerson Roy and Stephen J. Herman