UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER<br>MAGISTRATE JUDGE |
| ……………………………………………….. | : | SHUSHAN |

## BP'S MEMORANDUM IN OPPOSITION TO HALLIBURTON'S
## MOTION TO EXCLUDE THE TESTIMONY OF CHUCK SCHOENNAGEL

### INTRODUCTION

Halliburton's motion to exclude the testimony of Chuck Schoennagel, BP's expert regarding the MMS regulatory regime, should be denied. Mr. Schoennagel's opinions are appropriate in scope, particularly in light of the Court's order allowing experts to opine as to whether conduct was or was not in accord with MMS regulations. As an employee of the MMS for thirty-three years, including nine years as the Deputy Regional Director for the Gulf of Mexico OCS Region, Mr. Schoennagel is qualified to offer his opinions. His opinions are reliable, notwithstanding Halliburton's critique of his review of certain documents.

### BACKGROUND

Mr. Schoennagel has more than four decades of experience working with the MMS regulatory regime. He began working for the U.S. Geological Survey in 1973. Schoennagel Report at 1. Subsequently, in 1979, when the U.S. Geological Survey became the Minerals Management Service, Mr. Schoennagel stayed on as a petroleum engineer, and advanced up the ranks during his thirty-three year career at the MMS. *Id.* at 46-49. From July 1998 until he left the MMS in March 2007, Mr. Schoennagel was the Deputy Regional Director (DRD) for the Gulf of Mexico OCS Region. *Id.* at 46. In this position, Mr. Schoennagel had "responsibility for

regulating all activities conducted by the offshore oil and gas industry in the [Gulf of Mexico.]" *Id.* at 1.  During his career at the MMS, Mr. Schoennagel "formulat[ed] and interpret[ed] regulations, conduct[ed] accident investigations, and conduct[ed] civil penalty proceedings." *Id.* at 2.  With respect to regulatory formulation, Mr. Schoennagel participated in (1) "[t]he revision to the 30 CFR 250s published in the Federal register (FR) dated October 26, 1979"; (2) "[t]he revision to the 30 CFR 250s published in the FR dated April 1, 1988"; and (3) "[t]he revision to the 30 CFR 250s Subpart N OCS Civil Penalties published in the FR dated May 13, 1991." *Id.* at 2.  Moreover, Mr. Schoennagel has "had significant experience in interpreting regulations" through his work "as an accident investigator, as a reviewing officer in civil penalty cases, and as the DRD of the MMS GOMR." *Id*. In fact, while serving as a reviewing officer in civil penalty cases, Mr. Schoennagel "heard the first 13 cases in the GOMR in 1993 and a good portion of the 78 total cases initiated as of February 1996." *Id.* at 3.

In his expert report, Mr. Schoennagel: (1) provided background information on the MMS, *id.* at 4-5; (2) discussed the evolution of drilling regulations, *id.* at 5-9; and (3) explained the background of Lease OCS-G 32306, including the lease issuance, subsequent regulatory submittals, and Weekly Activity Report submittals, *id.* at 10-18.  He then explained how MMS regulations had moved to a performance based system, rather than a prescriptive system.  *Id.* at 19.  Finally, Mr. Schoennagel provided background and analysis concerning BP's MMS submissions and MMS regulations related to BP's conduct regarding the safe drilling margin, the temporary abandonment procedure, NEPA review, cementing, and the BOP.  *Id.* at 20-29.

**ARGUMENT**

I.    **Mr. Schoennagel's Opinions Regarding MMS Regulations Are Proper.**

Halliburton agues that Mr. Schoennagel's opinions should be excluded from evidence because they "consist[] primarily of legal conclusions concerning BP's supposed compliance with various MMS regulations." HESI Motion at 20.

As an initial matter, Mr. Schoennagel's opinions are not legal conclusions, but rather statements within his field of expertise that provide background and guidance concerning both the history and interpretation of MMS regulations, as well as MMS procedures. As he repeatedly testified in his deposition, he was very mindful that it is the Court's job, and not his, to apply those MMS regulations and determine whether BP complied with them. *See* Schoennagel Dep. at 156, 171, 184. Mr. Schoennagel's opinions support the conclusion that the regulations at issue were followed; that conclusion was based on his experience at the MMS and was not an independent legal conclusion, which would fall within the province of the Court. Mr. Schoennagel did not opine that BP satisfied any particular legal standard. More fundamentally, as the Court has already acknowledged in its January 31, 2012 Order Regarding BP's Motion *in Limine* to Bar Fact or Opinion Testimony on Issues of Law, Rec. Doc. No. 5495, it is permissible for a ***qualified*** expert to "opine on whether a person's conduct is or is not in accord with the regulations," *id.* at 2.

While courts generally "do not permit experts to testify as to matters of domestic law in order to avoid confusing the jury with multifarious pronouncements on the law," *Metrejean v. REC Marine Logistics*, *L.L.C*., No. 08-5049, 2009 WL 3062622, at * 2 (E.D. La. Sept. 21, 2009), Federal Rule of Evidence 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue," except that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or

3

condition that constitutes an element of the crime charged or of a defense.  Those matters are for the trier of fact alone," Fed. R. Evid. 704.  Thus, "an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997).

Courts within the Fifth Circuit have permitted experts to testify within these bounds regarding various statutory requirements.  For example, in *Chaney v. Omega Protein, Inc.*, No. 09-7235, 2010 WL 4668445, at *2 (E.D. La. Nov. 8, 2010), this Court allowed an expert who was a former Commander in the U.S. Coast Guard to testify regarding "the proper and customary procedures on vessels."  Similarly, Mr. Schoennegal offered opinions regarding MMS procedures in reviewing and approving permits and other submissions.  *See* Schoennagel Dep. at 30-31, 190-92.  In *Lofton v. McNeil Consumer & Specialty Pharmaceuticals*, No. 3:05-CV-1531-L (BH), 2008 WL 4878066, at * 9 (N.D. Tex. July 25, 2008), the United States District Court for the Northern District of Texas permitted experts to testify regarding "the adequacy of Motrin's label in warning for signs and symptoms of TEN" under relevant Federal Drug Administration regulations.  The court also noted that "[a]ny doubts about the relevance of the[] [experts'] experience as it pertains to OTC labeling is a question of weight, not admissibility."  *Id.*  In *Bigelow v. N. Y. Lighter Co.*, No. A–03–CA–340 LY, 2005 WL 6742497, at *2 (W.D. Tex. June 27, 2005), the United States District Court for the Western District of Texas permitted an expert to opine regarding a "lighter importer's (and [a] manufacturer's) compliance with federal safety regulations and whether the subject lighter was defective."  Mr. Schoennagel's testimony fits within these parameters.[1]

---

[1] BP's reserves the position set forth in its motion *in limine* on this issue. The testimony it sought to exclude of other experts and fact witnesses who opined that BP's conduct was "negligent" or "reckless" was of a fundamentally

## II. Mr. Schoennagel Is Qualified to Offer His Opinions.

Mr. Schoennagel has over four decades of experience working with the MMS regulatory regime. He began his career as a petroleum engineer and advanced through the MMS ranks, serving for nine years as the DRD for the Gulf of Mexico OCS Region. Post-retirement, Mr. Schoennagel acted as a consultant to major oil companies on a wide variety of MMS regulatory issues. Halliburton argues that regardless of his experience, Mr. Schoennagel is not qualified to provide an opinion on the MMS regulatory regime. HESI Motion at 21. Halliburton's argument in this regard is essentially a recycling of its legal-conclusion argument and reduces to little more than the obvious statement that Mr. Schoennagel is not a lawyer or professor of law. Halliburton's additional assertions in this respect are mere makeweight. It claims, for example, that Mr. Schoennagel "was unable to answer whether BP was required to take any further action if it modified its temporary abandonment plan," *id.* at 22, and that Mr. Schoennagel "admitted that it ha[d] been at least 12 years since he was involved in discussions relating to changes to the [CFR]," *id.* Playing "gotcha" with an expert at a deposition does not establish a lack of qualifications or experience. Nor does the fact that it has been some time since an expert engaged in a particular activity mean he is not qualified to discuss the subject or diminish his expertise. If anything, critiques such as these – which do not take any issue with Mr. Schoennagel's actual credentials or extensive experience – should, at most, go to the weight, not the admissibility, of his testimony.

## III. Mr. Schoennagel's Opinions Are Reliable.

Halliburton also argues that the analysis Mr. Schoennagel performed "fails to meet the *Daubert* standards because it is unreliable and lacks a proper foundation." *Id.* at 25.

---

different character than an opinion as to the MMS drilling regulations. With regard to the MMS expert testimony to which BP did object, it too was different from Mr. Schoennagel's focused opinions regarding the MMS regulatory regime and practices within the MMS.

5

Specifically, it claims that Mr. Schoennagel's opinions that "there was prompt and full disclosure by BP to MMS of what was occurring on the well as it was drilled," and that BP provided all the necessary information in its APD reports, were speculative. *Id.* Additionally, Halliburton argues that Mr. Schoennagel cannot offer any opinions about BP's compliance with MMS regulations without examining the IADC reports in depth. *Id.*

These arguments all take Mr. Schoennagel to task for not reviewing source documents or other materials to Halliburton's satisfaction. But the record is quite clear as to what Mr. Schoennagel reviewed, what he did not review, and the basis for his conclusions. The materials Mr. Schoennagel reviewed included BP's regulatory submittals and Weekly Activity Reports, correspondence between BP employees and the MMS regulators, and testimony from the MMS regulators (Bryan, Domangue, Eric Neal, Robert Neal, Frank Patton, Michael Saucier, and David Trocquet) and BP employees Scherie Douglas and Heather Powell. Halliburton does not establish that Mr. Schoennagel's opinions are the product of unfounded speculation, but only raises criticisms as to his assumptions. In such a case, where Halliburton is free to explore its arguments regarding Mr. Schoennagel's opinions on cross-examination, these alleged shortcomings do not warrant the exclusion of Mr. Schoennagel's opinions under *Daubert*. Moreover, Mr. Schoennagel's opinions are not speculative; they are based on his many years of experience working at the MMS, and his understanding of the actions that the MMS takes with respect to various filings. Halliburton's suggestion that there are other ways in which Mr. Schoennagel could have reached his conclusions do not invalidate either the experience he brought to bear nor the conclusions he reached. "Neither Rule 702 of the Federal Rules of Evidence nor *Daubert* require specific actions to be taken to validate the investigation done by an 'expert' witness," and therefore the argument that the expert's "opinions should be excluded

6

because they are based on speculation and 'bad facts' . . . . go[es] to the weight to be accorded to [the expert's] testimony, not the admissibility of the testimony." *Voth v. State Farm Fire & Cas. Ins. Co.*, No. 07-4393, 2009 WL 411459, at *5 (E.D. La. Feb. 17, 2009).

## CONCLUSION

BP respectfully requests that the Court enter an order denying Halliburton's motion to exclude Mr. Schoennagel's testimony.

Dated: February 14, 2012

Respectfully submitted,

/s / Don K. Haycraft

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP

1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration &
Production Inc. & BP America Production
Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of February, 2012.

/s/  Don K. Haycraft__