# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179 <br><br> SECTION: J |
| This Document Relates To: All Actions | : : | JUDGE BARBIER <br> MAGISTRATE JUDGE |
| …………………………………………….. | : | SHUSHAN |

## BP'S MEMORANDUM IN OPPOSITION TO HALLIBURTON'S MOTION TO LIMIT THE TESTIMONY OF DR. J.J. AZAR

Halliburton's motion to limit the testimony of Dr. J.J. Azar, BP's drilling-engineering and well-planning expert, on the grounds that he is not qualified to render certain opinions should be denied. Dr. Azar is qualified to express the opinions set forth in his report. Halliburton's argument to the contrary finds little support in the law, ignores Dr. Azar's extensive qualifications, and mischaracterizes both the scope of his opinions and his deposition testimony regarding his ability to express his opinions.

## BACKGROUND

Dr. Azar has "taught and written about drilling engineering fundamentals" for his entire career. Azar Report at 1. He has a Ph.D in mechanical engineering, and served as a professor in the petroleum engineering department at the University of Tulsa from 1974 until 2002. *Id.* at 2. Dr. Azar also served as the Director of the Tulsa University Drilling Research Projects for twenty-five years. *Id.* at 2. While acting as Director, Dr. Azar developed "one of the most comprehensive and world-wide recognized programs in drilling engineering education and drilling research." *Id.* at 3. Dr. Azar has also been "conducting short courses in drilling and well control for the oil and gas industry since 1975." *Id.*

"In 1997 and 1998, [Dr. Azar] received two of the highest Society of Petroleum Engineers Awards: the SPE Drilling Engineering Award and the SPE Distinguished Achievement Award for Petroleum Engineering Faculty." *Id.* at 3. Dr. Azar was inducted into the U.S. National Academy of Engineering in 2004, and was awarded membership in the Texas National Academy of Medicine, Engineering, Sciences, and Technology in 2009. *Id.* Dr. Azar has authored or co-authored five textbooks and more than sixty publications in refereed technical journals. *Id.* at 3-4.

In his expert report, Dr. Azar rendered a number of opinions on a range of well-planning and drilling-engineering related topics based on his review of the record in light of his experience, including some that necessarily involved observations with regard to the cementing of the Macondo well – one of several key components of the well plan at the temporary abandonment stage. These opinions that contained discussions of cement-related topics included that "it is unquestionable in light of the blowout and what we now know about the flow path of the hydrocarbons that the cement failed and that the failure resulted in the formation being capable of allowing a kick to occur on the evening of April 20, 2010," *id.* at 36-37, that the use of six centralizers under the circumstances in play at the time "reflect[ed] a reasonable balance of the available choices, and [was] consistent with sound engineering principles," *id.* at 38, and that the decision to forego a cement bond log was reasonable since the April 15 drilling program specified that a cement bond log would only be run if the cement job was not successful and the Halliburton cementers had reported that the cement job was a success, *id.* at 39.

Dr. Azar did *not*, however, express any opinions regarding wait-on-cement time, float collars, the BOP, or wireline logging. More important for the purposes of Halliburton's arguments, Dr. Azar did not purport to be a "cement" expert. Neither in his report nor at his

deposition did he claim to be an expert on, for example, how or why the cement used at the Macondo well failed or how the cement should have been formulated. Dr. Azar is a drilling-engineering expert, knowledgeable about and qualified to offer opinions that relate to the range of processes and operations involved in planning and executing a well and other aspects of well design, including, at a general level, cement. He did not misrepresent his expertise, nor did he venture beyond it.

## ARGUMENT

### I.     Halliburton's Motion Misinterprets the Applicable Law.

The sole basis for Halliburton's motion is Dr. Azar's purported admissions as to his expertise. Halliburton makes no attack on Dr. Azar's credentials, and makes no substantive argument as to the merit of his opinions. Its only argument is that Dr. Azar admitted he was not an expert in certain specific areas relating to cementing, and it asserts that Dr. Azar's opinions in other cement-related areas should be excluded.

An expert must, of course, be qualified to testify regarding the matters he addresses, and possess "specialized knowledge," the basis of which can be "skill, experience, training, or education" or "practical experience." *United States v. Cooks*, 589 F.3d 173, 180 (5th Cir. 2009). It is critical, however, to appreciate that the expert's required qualifications are directly linked to the specialized knowledge, skill, training, or experience that he brings to bear in rendering his opinions. It is not enough to criticize an expert's lack of qualifications or experience to render opinions other than those he proffers. And it is a mistake to assume, for example, that an expert who opines as to the design and drilling of a well must be qualified as an expert on every aspect of every component product or equipment used in the drilling process.

Halliburton glosses over this distinction when it cites authority for the proposition that an expert's admission as to the scope of his expertise mandates the exclusion of his opinions. By its

own description, only two of the four cases it cites (*Lassiegne* and *Anderson*) involved an admission by the expert that he or she was not qualified.  The other two cases (*Ingram Barge* and *Free*) reference no such admissions.  And even in the two cases that do mention an admission by the expert, the Court's ruling was also based on flaws in the opinions themselves.  *See Lassiegne v. Taco Bell Corp.*, 202 F. Supp. 2d 512, 518 (E.D. La. 2002) (noting that the expert's opinion as to general causation did not address the specific events of the case); *Anderson v. Raymond Corp.*, 340 F.3d 520, 523 (8th Cir. 2003) (noting the expert's lack of practical experience with regard to the subject matter of his opinions).   In short, Halliburton cites no case where the expert's admission alone was sufficient to strike his opinions without some additional analysis as to ***how*** the alleged lack of expertise actually undercut the reliability of the specific opinions the expert expressed.   Moreover, because the so-called "admissions" that Halliburton relies upon as the basis for excluding Dr. Azar's opinions do not line up with the opinions Halliburton seeks to exclude, these cases do not support exclusion here.

## II.   Halliburton Ignores Dr. Azar's Credentials and Experience that Support His Opinions.

Dr. Azar's report addresses drilling-engineering and well-planning topics, areas that span a wide range of issues in this case.  As outlined above, Dr. Azar was a professor of drilling engineering for thirty-seven years at the University of Tulsa, and has studied, taught, and written on these subjects.  In assessing and explaining his analysis of the facts and circumstances of the planning and execution of this well, Dr. Azar – like most of the other experts in this litigation – necessarily discussed a broad range of topics that were involved in the drilling of a well like Macondo, including the cement program.  Indeed, discussing the components of a drilling program in a vacuum, without the context of the other design elements or operations around which those components would be run, would make no sense and would not aid the Court in

4

understanding those components.  Halliburton makes no attempt to actually explain how Dr. Azar lacks the credentials or experience to render his opinions.  Instead, Halliburton seizes upon certain specific statements made by Dr. Azar regarding his estimation of the limitations of his expertise as to a number of specific cementing topics in an effort to prevent Dr. Azar entirely from discussing cement as an aspect of the drilling program.  The statements upon which Halliburton relies cannot provide the basis for such an exclusion.

### III.     Halliburton Misrepresents Dr. Azar's Opinions and Testimony.

Halliburton's motion rests upon the strawman assertion that Dr. Azar rendered opinions on cement and cementing operations.  HESI Motion at 26.  But Dr. Azar had not rendered any such opinions, and did not purport to be a cement expert.  He is an expert in drilling engineering, and is extremely knowledgeable about the engineering principles pertaining to the drilling of a deepwater well.  One need not be a "cement" expert to know and understand that the cement was intended to be a barrier to flow in the well.  Dr. Azar was qualified to opine that once the well experienced an uncontrolled kick that became a blowout, the cement failed.  His opinion was based on his knowledge of drilling-engineering principles, not on any assertions about what may have caused the cement to fail.  *See* Azar Report at 36-37 ("I am not an expert in cement, and leave it to others to opine on the reason for the failure of the cement.  But, I believe it is unquestionable in light of the blowout and what we now know about the flow path of the hydrocarbons that the cement failed and that the failure resulted in the formation being capable of allowing a kick to occur on the evening of April 20, 2010.").  Nor is Dr. Azar alone among non-cement experts in expressing that view.  *See, e.g.*, Calvin Barnhill Report at 2, 43 ("The high quality hydrocarbon bearing zone(s) exposed during the drilling of the Macondo Well were not isolated by the cemented production casing"); Calvin Barnhill Dep. at 38 ("Q. Okay. Do you

consider yourself an Expert in deepwater well cementing?   A. Again, I – I've reviewed deepwater well cementing programs. As a Petroleum Engineer, I'm very used to working with cementing programs and designing cementing programs.  I am not a cementing Expert from the standpoint of the – the manufacture, design, or testing of cement.").

Halliburton similarly mischaracterizes Dr. Azar's opinion that touches on the use of foam cement.   Dr. Azar testified during his deposition that his opinions about the use of foam cement at the Macondo well were based on common industry knowledge.  *See* Azar Dep. at 188 ("[[I]t is very common knowledge in the industry] . . . .[that] nitrogen is . . . used in the industry for reducing cement slurry density.").  Contrary to Halliburton's contention, HESI Motion at 27, Dr. Azar never offered any opinions about the goals of using foamed cement.  Dr. Azar's alleged "admission" in this regard came in the course of his answering questions that had nothing to do with foam cement.  *See* Azar Dep. at 187, 202.

Likewise, Halliburton's claim that Dr. Azar was unable to opine as to whether gelled mud had the capacity to contaminate the cement and therefore prevent it from achieving zonal isolation, HESI Motion at 27, did not relate to any of the opinions that Dr. Azar actually sought to express, either in his report or at his deposition.  Dr. Azar testified that his "background in engineering allow[ed] [him] to be able to offer an opinion [as] to what a bottom[s]-up or circulation through a zone that's supposed to be cemented, what it should do."  Azar Dep. at 358. Again, Dr. Azar's opinion did not require any analysis or expertise with regard to cement *per se*, nor of the level of detail sought in the question by Halliburton at Dr. Azar's deposition, but simply of the role played by cement and cementing decisions in the well-design and drilling process – areas that Halliburton does ***not*** argue are outside of Dr. Azar's expertise.

Halliburton also claims that Dr. Azar opined on cement bond logging and centralizers. HESI Motion at 28-29.  Again, the opinions expressed by Dr. Azar in these areas did not require that Dr. Azar be a cement expert or an expert in cement bond logs themselves, but rather of the decision-making process in planning a well that would lead other drilling engineers (who would have qualifications similar to Dr. Azar's and are likewise not cement experts) to make decisions with respect to these design elements.  Dr. Azar's opinions regarding centralizers were based on his general knowledge of drilling-engineering principles as they related to the planning and execution of the well, not on any analysis of conclusions with regard to the specifics of the job performed by Halliburton.

Specifically, at his deposition, Dr. Azar was asked whether he had the expertise to offer an opinion *about the number of centralizers that should have been used* at the Macondo well, to which he candidly replied in the negative.  Azar Dep. at 338-39.  In his report, Dr. Azar opined with respect to the *decision-making process undertaken by the drilling engineers* that, based on his expertise in well planning and drilling engineering, BP acted reasonably in using the number of centralizers it did in light of all the relevant circumstances and the competing risk considerations.  Azar Report at 37-39.

Additionally, Halliburton argues that Dr. Azar provided opinions regarding mudlogging. HESI Motion at 29.  Dr. Azar did opine that "mudloggers are charged with monitoring the well at all times.  In this way, the mudloggers served as a 'second set of eyes' to the Transocean driller, in watching the well," Azar Report at 11, and that "simultaneous rig operations [did not] hinder[] the ability of the Transocean drilling crew and Sperry Sun mudloggers to monitor the Macondo well on the evening of April 20," *id.* at 44. These opinions, like those described above, did not require Dr. Azar to be an expert in mudlogging.  Rather, they were offered in light of his

general knowledge of drilling-engineering principles as they related to the planning and execution of the Macondo well.  *See* Azar Dep. at 346 (testifying that he based his opinions regarding the mudloggers' monitoring of the Macondo well on "general knowledge").  Dr. Azar did not offer any opinions regarding mudlogging that were unrelated to the monitoring of Macondo well data.  Although Halliburton claims that Dr. Azar admitted he was not an expert in mudlogging, Dr. Azar in fact truthfully acknowledged during his deposition that he did "not have any expertise or experience to offer an expert opinion regarding *the quality* of [Halliburton's] mud logging services on the Macondo well."  Azar Dep. at 346 (emphasis added).

## CONCLUSION

Halliburton fails to even address the proposition that Dr. Azar's opinions that involve issues related to cement, cementing operations, cement bond logging, centralizers, and mudlogging are all based on his expertise in drilling engineering and well planning.  Moreover, Dr. Azar expresses no opinions as to wait-on-cement time, float collars, the BOP, or wireline logging.  Halliburton's motion to limit Dr. Azar's testimony should therefore be denied.

Dated: February 14, 2012                    Respectfully submitted,

                                            /s / Don K. Haycraft

                                            Don K. Haycraft (Bar #14361)
                                            R. Keith Jarrett (Bar #16984)
                                            LISKOW & LEWIS
                                            One Shell Square
                                            701 Poydras Street, Suite 5000
                                            New Orleans, Louisiana 70139-5099
                                            Telephone: (504) 581-7979
                                            Facsimile: (504) 556-4108

                                            and

                                            Richard C. Godfrey, P.C.

(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration & Production Inc. & BP America Production Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of February, 2012.

/s/  Don K. Haycraft__