UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | : : : : : : | MDL NO. 2179<br><br>SECTION:  J<br>JUDGE BARBIER<br>MAG. JUDGE SHUSHAN<br><br>JURY TRIAL DEMANDED |

. . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .  . .

**CAMERON'S OPPOSITION TO BP'S MOTION TO EXCLUDE
CERTAIN OPINIONS AND TESTIMONY OF DAVID O'DONNELL**

Cameron International Corporation ("Cameron") files this Opposition to BP's Motion to Exclude Certain Opinions and Testimony of David O'Donnell ("Motion"; Doc. 5430) and Memorandum in support ("Memo."; Doc. 5430-1).

**A.    Introduction**

BP contends that David O'Donnell, Cameron's blowout preventer ("BOP") design expert, is not qualified to offer expert testimony regarding the suitability of the *Deepwater Horizon* BOP for the Macondo well.  (Memo. at 1.)  BP argues that Mr. O'Donnell lacks experience to offer an opinion on that subject and that he did not consider appropriate information.  BP is incorrect, and its Motion should be denied.

At the core of BP's Motion is the concept of maximum anticipated surface pressure ("MASP").  Because a BOP's ability to shear drill pipe depends on, among other things, pressure in the wellbore, MASP is a key variable in determining whether a BOP is appropriate for any given well.  BP claims that Mr. O'Donnell based his opinion on an incorrect MASP.  BP also claims that Mr. O'Donnell's use of this MASP constitutes a criticism of BP's calculation of MASP.  As discussed in more detail below, Mr. O'Donnell takes no issue with any of the inputs

or assumptions used by BP in calculating MASP for the Macondo well. Nor does he express any opinion about the propriety of BP's regulatory filings. Rather, Mr. O'Donnell opines simply on the proper information that should be used when selecting or configuring a BOP for a well. Specifically, Mr. O'Donnell opines that an operator and drilling contractor should evaluate a BOP based on the highest possible MASP for the well.

Given Mr. O'Donnell's extensive experience with predicting BOP capabilities at anticipated wellbore pressures, he is eminently qualified to offer this opinion, which does not relate to the calculation of MASP, but rather to the evaluation of BOP capabilities.

**B.    Legal Standard**

Expert opinion testimony is admissible if it is both relevant and reliable. Federal Rule of Evidence 702 notes that a witness can be qualified as an expert where he is qualified "by knowledge, skill, experience, training, or education." For expert testimony in a discipline such as engineering (at issue here), "the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the] discipline.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993)).

**C.    BP Fundamentally Misunderstands Mr. O'Donnell's Opinion**

BP's Motion seeking to exclude a portion of Mr. O'Donnell's expert testimony is premised on BP's belief that Mr. O'Donnell is opining on the accuracy of BP's MASP calculations and, presumably, whether the MASP calculations included on its application for permit to drill ("APD") complied with Mineral Management Service ("MMS") regulations. This is not the case.

Mr. O'Donnell is not a drilling engineer. As such, his opinion relates not to the calculation of MASP or the APD's compliance with MMS regulations, but rather to the use of

MASP calculations in determining whether a BOP is appropriate to use on a given well. Mr. O'Donnell has opined 1) that an operator should always use, at a minimum, the worst possible case MASP in determining the suitability of a BOP for a given well; 2) that BP's APD included calculations showing that, with a gas column to surface, the Macondo well could experience MASP at the BOP of 10,757 psi (*see* Ex. 1339 at 12); and 3) that this 10,757 psi figure was the highest MASP BP calculated for the Macondo well. If, as the APD suggests, 10,757 psi was the worst possible case MASP, that figure should have been used in determining whether the *Deepwater Horizon* BOP was appropriate for the Macondo well.

As Mr. O'Donnell noted in his deposition, "you've got to be prepared." (O'Donnell Depo. at 128.) This is in part because of the "large variances in shear forces required for shearing a particular piece of pipe." (O'Donnell Rebuttal Report at 6.) The higher the MASP used by the operator and drilling contractor, the greater tolerance the BOP will have for this variance. This is also why Cameron's official shearing guidance, Engineering Bulletin 702D (Ex. 1199), advises customers to use the largest feasible shearing capacity.

### D.   Mr. O'Donnell is Qualified to Render the Opinions at Issue

The manner in which one calculates MASP, whether that method is widely used in the industry, and whether MMS required such a calculation to be submitted as part of the application process, are all irrelevant to Mr. O'Donnell's opinion. In his expert opinion, once it is determined that it is possible that a certain MASP might be present in a well, the BOP should be capable of shearing drill pipe at that MASP because the operator may in fact need to shear drill pipe at that pressure and because there is so much variability in predicting shear pressures.

For this reason, Mr. O'Donnell's lack of experience with preparing APDs for submittal to MMS and his lack of experience as an operator or drilling contractor are of no moment. His

expert testimony relates only to the proper way to evaluate the fitness of a BOP for a given well. Of the numerous BOP experts retained by the parties to this litigation, none has near the depth or breadth of experience with BOPs as Mr. O'Donnell. He spent forty years designing, manufacturing, and evaluating BOP components and systems. He has authored BOP maintenance and inspection procedures. He has traveled all over the world to investigate unexpected failures of BOP equipment and to identify both the causes of the failures and the best ways to remedy identified issues. He is eminently qualified to offer the opinion that operators should always use the worst possible case MASP to determine the suitability of a BOP for a given well. (O'Donnell Report at 19-22; O'Donnell Depo. at 116.)[1]

**E.    Mr. O'Donnell Considered the Relevant Information.**

Because BP misunderstands Mr. O'Donnell's opinion, it spends nearly half its Memorandum arguing that his opinion is unreliable because he did not consider certain information. However, the information BP argues should have been taken into account is either irrelevant to Mr. O'Donnell's opinion or inconsistent with information Mr. O'Donnell did consider – namely, the testimony of BP's corporate representative.

---

[1] BP claims that Mr. O'Donnell lacks expertise in "evaluating BOPs for use with a specific well." (Doc. 5430 at 2.) To the contrary, Mr. O'Donnell has substantial experience predicting the capabilities of a BOP at a given wellbore pressure. He testified during his deposition in no uncertain terms that throughout his career he has "done calculations" and "furnish[ed] information" to operators and drilling contractors who sought out his advice when determining whether a BOP was appropriate to use on a specific well. (O'Donnell Depo. at 279-80.) While those who sought his assistance did not use the technical term MASP, they provided an expected wellbore pressure for Mr. O'Donnell to use in his calculations. (*Id.*) Mr. O'Donnell went on explain that he would recommend to his customers who had calculated multiple possible MASPs that they use the highest value because "[y]ou want to be safe. You want to make sure that you have everything you need to control the environment." (*Id.* at 280.) This is consistent with his deposition testimony that "you want to have a safety factor .... If you're not using the worst case that could occur, I think you're kidding yourself." (*Id.* at 116.)

4

1. <u>Federal Regulations are Irrelevant to Mr. O'Donnell's Opinion</u>

BP argues that Mr. O'Donnell's opinion is unreliable because he failed to consider federal regulations in evaluating the fitness of the *Deepwater Horizon* BOP for the Macondo well. (Memo. at 7-8.) This argument misses the mark. BP provides no explanation as to <u>*why*</u> MMS regulations related to MASP should be relevant to Mr. O'Donnell's engineering opinion about the appropriate way to determine whether a BOP is suitable for a well. As discussed above, Mr. O'Donnell's opinion does not touch on BP's regulatory compliance. Rather, Mr. O'Donnell opines on engineering principles and BOP design – the regulatory requirements of MMS simply do not factor into this analysis, and BP offers no evidence or argument as to why they should.

2. <u>Mr. O'Donnell Considered the Relevant Testimony</u>

As support for his statement that the 10,757 psi calculation in the APD appears to be the worst possible case MASP for the Macondo well, Mr. O'Donnell pointed to BP Group Practice 10-10, Well Control (Ex. 215; "GP 10-10") which mandates that the maximum pressure for a BOP be calculated in a certain way for exploration wells such as Macondo. Specifically, GP 10-10 states:

> 6.1.2. The BOP stack and wellhead in place at any point during the course of the well shall be of sufficient working pressure and temperature rating to contain the maximum allowable surface pressure and temperature from total depth of the current open hole section.
>
> 6.1.3. The maximum allowable wellhead pressure shall take into account a gas column to surface for exploration and appraisal wells, whilst for development wells reservoir fluid shall be used.

BP argues that Mr. O'Donnell was wrong to point to GP 10-10. BP claims that the "maximum allowable wellhead pressure" ("MAWP") used in GP 10-10 is different from the MASP used in MMS filings, including the APD from which Mr. O'Donnell took the MASP value referenced in

5

his opinions. BP faults Mr. O'Donnell for conflating MAWP and MASP because he relied "solely on the deposition testimony of BP employee Andrew Frazelle." (Memo. at 5.) However, Mr. Frazelle was not simply one of the many BP employees deposed in this case. He was BP's 30(b)(6) corporate representative "with regard to blowout preventer Regulatory issues." (Frazelle Depo. at 78:4-6.) During Mr. Frazelle's deposition, he confirmed that MAWP calculated per GP 10-10 is the same as the MASP submitted to MMS. (*Id.* at 128 (stating that MAWP is "what we submit on the APD"); *id.* at 127 (confirming that MAWP is what the well is capable of producing); 592-93 (equating MAWP and MASP).)

BP cannot fault Mr. O'Donnell for relying on its 30(b)(6) witness's testimony. Nevertheless, BP argues that Mr. O'Donnell should have considered arguably conflicting testimony offered by a "casing engineer," Rich Miller. (Memo. at 8-9.) Mr. Miller, however, was not BP's corporate representative on any topic (let alone ones related to BP policy or MMS regulations), and he gave the testimony cited by BP only after Mr. Frazelle testified on the same issue. There is no reason to credit Mr. Miller's interpretation of the GP 10-10 language over the interpretation of BP's corporate representative on this topic.

3. Mr. O'Donnell  Considered the Relevant Industry Practice

Lastly, BP criticizes Mr. O'Donnell's opinion because he failed to consider industry practice "regarding the calculation of MASP." (Memo. at 9.) Again, however, Mr. O'Donnell offers no opinions about the accuracy of the MASP calculations included in the APD. Accordingly, any industry practices regarding such calculations are irrelevant to his opinion.

Mr. O'Donnell's opinion is that drillers and operators should consider the highest possible MASP when evaluating a BOP's shearing capability. That opinion does consider the *relevant* industry practice: that of BOP manufacturers. Mr. O'Donnell formed his opinion based

both on his long experience in designing, manufacturing, and evaluating BOPs at NOV Schaffer, and his review of the relevant Cameron guidance on the issue, such as the admonition in EB 702D that BOPs should be configured with the "largest feasible shearing capacity." In short, he formed his opinion after considering the proper industry standards, where appropriate.

**F.     Conclusion**

It is Mr. O'Donnell's opinion, based on his years of experience, that an operator and drilling contractor should evaluate a BOP based on the highest possible MASP for the well. That opinion is not a comment on the manner in which an operator calculates MASP or regulatory requirements or industry practices relating to MASP. Cameron, therefore, respectfully requests that the Court deny BP's Motion.


Respectfully submitted,


*/s/ David J. Beck*_____

| | |
|---|---|
| David J. Beck, T.A. | Phillip A. Wittmann, 13625 |
| *dbeck@brsfirm.com* | *pwittmann@stonepigman.com* |
| Joe W. Redden, Jr. | Carmelite S. Bertaut, 3054 |
| *jredden@brsfirm.com* | *cbertaut@stonepigman.com* |
| David W. Jones | Keith B. Hall, 24444 |
| *djones@brsfirm.com* | *khall@stonepigman.com* |
| Geoffrey Gannaway | Jared Davidson, 32419 |
| *ggannaway@brsfirm.com* | *jdavidson@stonepigman.com* |
| BECK, REDDEN & SECREST, L.L.P. | STONE PIGMAN WALTHER |
| One Houston Center | WITTMANN L.L.C. |
| 1221 McKinney St., Suite 4500 | 456 Carondelet Street |
| Houston, TX 77010 | New Orleans, Louisiana 70130 |
| Phone: (713) 951-3700 | Phone: (504) 581-3200 |
| Fax: (713) 951-3720 | Fax: (504) 581-3361 |

*Attorneys for Cameron International Corporation*


**CERTIFICATE OF SERVICE**

8

I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of February, 2012.

                                                */s/ David J. Beck*
                                                David J. Beck