## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CONSTANTIN LAND TRUST | * | CIVIL ACTION NO. 12-00179 |
| | * | |
| versus | * | SECTION: "J" (1) |
| | * | |
| BP AMERICA PRODUCTION | * | JUDGE CARL J. BARBIER |
| COMPANY, BP EXPLORATION & | * | |
| PRODUCTION, SEA SUPPORT | * | MAGISTRATE SALLY SHUSHAN |
| SERVICES, L.L.C., AND RANDY J. | * | |
| ADAMS | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM IN OPPOSITION TO MOTION TO REMAND

MAY IT PLEASE THE COURT:

BP America Production Company and BP Exploration & Production Inc. (collectively, "BP") respectfully oppose Plaintiff's motion to remand.  This is a case for trespass damages allegedly arising from BP's use of certain dock property in connection with its oil spill response operations.  Diversity jurisdiction exists because all properly joined defendants are citizens of states other than Louisiana and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  Like several other cases filed against BP since the April 2010 oil spill, the plaintiff, Constantin Land Trust ("CLT"), named local defendants solely in an attempt to defeat diversity jurisdiction.  Because there is no reasonable basis to predict that CLT can recover from the local defendants, they are not properly joined and their citizenship is disregarded for purposes of determining diversity.  *E.g.*, *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 513 (5th Cir. 2009); *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 817 (5th Cir. 1993).  CLT's motion to remand should be denied. *Id.*

## BACKGROUND

### 1. The Allegations of the Petition

CLT alleges that it was the sole owner of certain tracts of immovable property known as the Seafood Dock and the Pipeline Dock (hereafter, the "Property"). Petition at ¶¶ 3-4. CLT further alleges, "[u]pon information and belief," that "defendants used, occupied, performed construction upon, and otherwise converted" the Property without CLT's authorization or written agreement. Petition at ¶ 6; *see also* Petition at ¶ 7 (also alleging that "[u]pon information and belief all said defendants … dumped materials upon" the Property).[1] CLT seeks recovery of damages incurred as a result of the alleged trespass including, *inter alia*, damages for the cost to restore the Property to its original condition. Petition at ¶¶ 11-12.[2]

The Petition names two defendants in addition to BP: Randy Adams and his company, Sea Support Services, L.L.C. ("Sea Support"). With respect to Randy Adams, CLT alleges, "[u]pon information and belief," that Adams "brokered and/or negotiated" the use of the Property and that "Adams contributed to the acts of trespass and conversion," and "received remuneration from the defendants." Petition at ¶ 13. CLT does not allege any act or omission by Sea Support.

---

[1]   Although the Petition refers to "trespass and/or conversion," it does not allege any loss of or damage to **movable** property as is required to state a cause of action for conversion. *See Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853, 857 (La. 1998) (defining conversion as a cause of action to recover for loss of or damage to movable property).

[2]   The amount in controversy exceeds $75,000.00, exclusive of interest and costs, because, *inter alia*, the cost to restore the Property to its original condition would exceed $100,000.00. *See* Notice of Removal (Doc. 1) at ¶ 6; Mclemore Dec. (Exhibit B) at ¶¶ 4-6. CLT does not dispute that the amount in controversy requirement is met.

## 2. The Facts Established by Uncontroverted Evidence

The Petition omits the following discrete facts, which make clear that Adams and Sea Support are not legally responsible for CLT's alleged damages:

- In or around May 2010, BP retained Adams to help BP identify and/or secure vessels, equipment, rental property, and other items for use in connection with BP's oil spill response operations in Lafourche Parish. Affidavit of Randy J. Adams (attached hereto as Exhibit A) at ¶ 3.

- Pursuant to the scope of his engagement for BP, Adams helped negotiate an agreement between BP and Jay Pitre of Pitre Industries, in which Pitre Industries agreed to let BP use the Property. Adams Aff. at ¶ 4.

- Jay Pitre told Adams that he (Pitre) leased the Property from Constantin Land Trust and that he (Pitre) had the authority to sub-lease it. Adams Aff. at ¶ 5.

- Adams believed that Jay Pitre had full authority to sub-lease the Property and to permit any activities on the Property (including construction and other activities), and Adams never had any reason to question this belief. Adams Aff. at ¶ 6.

- Adams did not supervise, direct, control, order, or request any of the activities on the Property (including the construction work and other activities). Adams Aff. at ¶ 7.

- Sea Support did not supervise, direct, control, order, or request any of the activities on the Property (including the construction work and other activities). Adams Aff. at ¶ 8.

- Neither Adams nor his limited liability company, Sea Support, ever occupied, used, damaged, dumped materials on, or performed construction on the Property. Adams Aff. at ¶¶ 9-10.

BP does not admit that it damaged the Property, but there is no question that BP used the Property. *See* BP's Answer (Doc. 5) at ¶ 6; Mclemore Declaration (attached hereto as Exhibit B) at ¶¶ 2-4. The BP defendants are the only properly joined defendants in this dispute.

## ARGUMENT

### A. The Test For Improper Joinder

The test for improper joinder is whether there is "no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 513 (5th Cir. 2009) (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)).[3] While CLT incorrectly suggests that any possibility of recovery is sufficient for remand, "any possibility" is not the test for improper joinder in the Fifth Circuit. *See* CLT Memo. (Doc. 4-1) at 6 (citing the Eleventh Circuit). Rather, the Fifth Circuit requires that "there must be a *reasonable* possibility of recovery, not merely a *theoretical* one." *Kling*, 575 F.3d at 513 (original emphasis) (internal quotations omitted).

The scope of the inquiry for improper joinder is broader than that employed on a motion to dismiss because the Court may pierce the pleadings and consider summary judgment-type evidence to determine whether the plaintiff has a factual basis for the claims pleaded in his state-court Petition. *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007); *In re: 1994 Exxon Chem. Fire*, 558 F.3d 378, 385 (5th Cir. 2009). According to the Fifth Circuit:

> [W]e have consistently recognized that diversity removal may be based on evidence outside the pleadings to establish that the plaintiff has no possibility of recovery on the claim or claims asserted against the named resident defendant and that hence such defendant is fraudulently joined and his citizenship must be disregarded for jurisdictional purpose.

---

[3] Improper or fraudulent joinder can also be established when there is "actual fraud in the pleading of jurisdictional facts." *Smallwood*, 385 F.3d at 573 (internal quotations omitted). According to the Fifth Circuit, "there is no substantive difference" between "fraudulent joinder" and "improper joinder," but it prefers "improper joinder" as "being more consistent with the statutory language." *Id.* at 571 n.1.

*Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 389 (5th Cir. 2000) (citing cases).  Thus, this Court "must look beyond the plaintiffs' arguments about the facts and examine the specific facts and evidence which have been submitted … to determine if there is any possibility of recovery against an allegedly fraudulently joined defendant."  *Pate v. Adell Compounding, Inc.*, 970 F. Supp. 542, 549 (M.D. La. 1997); *see also LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th Cir. 1992) ("A court is to pierce the pleadings to determine whether, under controlling state law, the non-removing party has a valid claim against the non-diverse parties.").

Although *unchallenged* factual allegations must be construed in the plaintiff's favor, this construction is not required when, as here, the allegations are conclusory and/or refuted by competent evidence.  *Badon*, 224 F.3d at 393-94; *Mitchell v. Exxon Corp.*, 860 F. Supp. 332, 335-36 (M.D. La. 1994) (conclusory allegations that might get plaintiffs past an exception of no cause of action in a Louisiana court are insufficient to allow an inference of fact in plaintiff's favor on motion to remand).  As explained by the Fifth Circuit:

> [O]ur precedent establishes that "a removing party's claim of fraudulent joinder to destroy diversity is viewed as similar to a motion for summary judgment."  While such a procedure requires that "all *disputed* questions of fact" be "resolved in favor of the nonremoving party," "[a]s with a summary judgment motion, in determining diversity the mere assertion of 'metaphysical doubt as to the material facts' i[s] insufficient to create an issue if there is no basis for those facts."  So also as with a summary judgment motion:
>
> > [W]e resolve factual controversies in favor of the nonmoving party, but *only* when there is an actual controversy, that is, when *both* parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*

*Badon*, 224 F.3d at 393-94 (original emphasis) (internal citations omitted).

Finally, the improper joinder/reasonable possibility of recovery test is strictly limited to the claims asserted in the petition at the time of removal. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700-01 (5th Cir. 1999); *Cavallini v. State Farm Mut. Auto Ins.*, 44 F.3d 256, 263-65 (5th Cir. 1995). The plaintiff's post-removal filings "may **not** be considered … to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court." *Griggs*, 181 F.3d at 700 (emphasis added). The Fifth Circuit has explained:

> The rationale for determining removal jurisdiction on the basis of claims in the state court complaint as it exists at the time of removal is obvious. Without such a rule, disposition of the issue would never be final, but would instead have to be revisited every time the plaintiff sought to amend the complaint to assert a new cause of action against the nondiverse defendant, all at considerable expense and delay to the parties and the state and federal courts involved. Limiting the removal jurisdiction question to the claims in the state court complaint avoids that unacceptable result, and permits early resolution of which court has jurisdiction, so that the parties and the court can proceed with, and expeditiously conclude, the litigation.

*Cavallini*, 44 F.3d at 264.

The application of these standards in this case compels the conclusion that Adams and Sea Support are improperly-joined defendants whose citizenship does not defeat diversity. CLT's allegations, on their face, fail to state a valid cause of action against these defendants. Even if the allegations were sufficient, the sworn statements attached hereto establish that the local defendants are not responsible for CLT's alleged damages as a matter of Louisiana law. The motion to remand should be denied.[4]

---

[4]   "Courts routinely dismiss non-diverse parties in conjunction with the denial of a plaintiff's motion to remand on the basis of improper joinder." *Bratton v. Sumter Network Design, Inc.*, No. 07-698, 2009 WL 720884, at *1 (W.D. La. Mar. 13, 2009) (citing cases); *see also Serigne v. Loupe Constr. & Consulting Co.*, No. 10-3891, 2011 WL 197900, at * 3 (E.D. La. Jan. 20, 2011) (dismissing claims asserted against the improperly joined defendant, Loupe Construction).

**B. CLT Lacks a Reasonable Possibility of Recovery Against the Local Defendants for Trespass.**

As CLT concedes in its brief (p. 6), civil trespass requires "an unlawful physical invasion" of another's property, and a trespasser is "one who goes upon the property of another without the other's consent." *Pepper v. Triplet*, 864 So. 2d 181, 197 (La. 2004). CLT does not allege - or even argue - that Adams or Sea Support ever physically invaded the Property.[5] Indeed, the evidence is unrebutted that Adams and Sea Support did **not** use, occupy, damage, dump materials on, or perform construction on CLT's property. Adams Aff. at ¶¶ 9-10.

Other than its flawed "negligent brokering" theory (discussed below), CLT makes no effort to establish any possibility that Adams or Sea Support could be held liable for causing BP's alleged trespass. CLT does not allege that Adams or Sea Support directed or supervised construction activities or any other aspect of the alleged trespass, and the evidence is clear that they did not do so. Adams Aff. at ¶¶ 7-8. The conclusory allegation that Adams "contributed to the acts of trespass," on its own, is wholly insufficient. *Kling*, 575 F.3d at 515 ("conclusory allegations do not establish a reasonable possibility of recovery"); *Kimball v. Modern Woodmen of America*, 939 F. Supp. 479, 482 (M.D. La. 1996) ("Plaintiffs may not rely upon generalized, conclusory allegations ... on a motion to remand ..."); *Pate v. Adell Compounding, Inc.*, 970 F. Supp. 542, 547-48 (M.D. La. 1997) (conclusory assertions, without allegations or evidence of

---

[5]     CLT's allegation, "upon information and belief," that "defendants" used the Property does not state a claim for relief against Adams or Sea Support. *E.g., U.S. v. The Louisiana Clinic*, No. 99-1767, 2002 WL 1066745, at *5 (E.D. La. May 28, 2002) (rejecting the attempt "to rope in all defendants on every count simply by alleging '[u]pon information and belief' that 'each and every defendant knowingly and intentionally conspired...'" on grounds that such allegations are "'legal conclusions masquerading as factual conclusions,' [which] do not suffice to state a claim even under the liberal pleading requirements of Rule 8"); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (plaintiffs must allege the basis of their claim against **each** defendant; lumping defendants together violates Federal Rule of Civil Procedure 8).

7

specific facts, do not bind the Court and do not support a reasonable possibility of recovery against non-diverse defendant; remand denied).

### C. CLT Lacks a Reasonable Possibility of Recovery Against the Local Defendants for Negligent Brokering.

CLT argues that it has alleged a "negligence cause of action" based upon "negligence in negotiating an agreement for the use of CLT's property" because the public record reflects that CLT owned the Property.  CLT Memo. (Doc. 4-1) at p. 5.  Tellingly, CLT cites no legal authority for its "negligent brokering" theory. As set forth below, CLT's argument is not only contrary to Louisiana law, but it is also refuted by the evidence.

Louisiana law does not impose a duty on brokers to check the public record.  To the contrary, "a broker is entitled to assume that the person representing himself to be the owner either is the owner, or is authorized to represent the owner." *Business Brokers of La., Inc. v. Nguyen*, No. 11-0411, 2011 La. App. LEXIS 1579, at *16 (La. App. 1st Cir. Dec. 21, 2011); *see also Strahan v. Weiland*, 216 So. 2d 169, 172 (La. App. 1st Cir. 1968) (same). "The broker is under no obligation to examine the title to determine the true owner and in the absence of actual knowledge to the contrary may presume his client [the seller] to be the owner." *Id.*

In addition, Louisiana law clearly provides that "corporate officers, employees **and agents** do not owe duties to third persons and cannot be held liable to third persons for negligence, mismanagement, and omissions in a commercial context." *Dennis v. Copelin*, 669 So. 2d 556, 561 (La. App. 4th Cir. 1996) (emphasis added) (reversing judgments for negligence against defendants who, during course of contract work for third party entities, failed to discover another party's improper transactions; defendants owed no duties to plaintiff who was not a party to their contracts); *see also Technical Resource Servs., Inc. v. Shell Exp. & Prod. Co.*, No. 09-7339, 2010 WL 890533, at *4 (E.D. La. Mar. 8, 2010) (denying remand because employees and

agents were improperly joined).  The alleged "negligent brokering" at issue here occurred in a commercial context and pursuant to the scope of Adams' engagement for BP.  Adams Aff. at ¶¶ 3-4, 11.  As a result, CLT, who was not a party to BP's agreement with Adams, has no cause of action against Adams for alleged negligence in the course of Adams' performance for BP.  *Id.*

CLT's attempt to devise a negligence claim by imposing a duty to check the public record also incorrectly assumes that the public record would have accurately established whether Pitre had the authority to permit BP's use of the Property.  Louisiana law does not require that all leases be recorded, and verbal leases, which obviously cannot be recorded, are fully enforceable in Louisiana.  La. Civ. Code art. 2681.  Louisiana lessees have the right to sublease unless the lease contract expressly prohibits it, La. Civ. Code art. 2713, and Jay Pitre **told** Randy Adams that he had authority to sub-lease the Property.  Adams Aff. at ¶ 5.  Adams believed that Pitre had full authority to sub-lease the Property and to permit any activities thereon (including construction and other activities), and Adams never had any reason to question this belief. Adams Aff. at ¶ 6.  There is no factual or legal basis for CLT's negligent brokering theory.

Although BP is not required to refute claims or theories that are not pleaded in the Petition, the Adams Affidavit precludes any basis for finding that Adams or Sea Support owed or breached any other duties to CLT.   Neither defendant occupied, used, damaged, dumped materials on, or performed construction on the Property.   Adams Aff. at ¶¶ 9-10.   Nether defendant supervised, directed, controlled, ordered, or requested any activities on the Property (including construction work and any other activities).  Adams Aff. at ¶¶ 7-8.  CLT does not allege any contractual or employment relationship with Adams or Sea Support, and no such relationship has ever existed.  Adams Aff. at ¶¶ 11-12.  In sum, there is no basis whatsoever for a finding that Randy Adams or Sea Support breached any duty to CLT.

9

The evidence is unrebutted and clear:  CLT lacks a reasonable possibility of recovery against the local defendants for the claims asserted in the Petition.

## CONCLUSION

BP has more than satisfied its burden of establishing improper joinder.  Here, as in *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 513-16 (5th Cir. 2009), the plaintiff's conclusory allegations against the local defendants fail to establish a reasonable possibility of recovery.  Moreover, BP has submitted uncontroverted evidence establishing that Adams and Sea Support are not legally responsible for CLT's alleged damages.  There is simply no reasonable basis to predict that CLT can recover against Adams or Sea Support for the claims alleged in the Petition.  Fifth Circuit precedent cited herein thus compels the conclusion that Adams and Sea Support were improperly joined, and their citizenship must be disregarded for purposes of determining diversity jurisdiction.  The motion to remand should be denied.

Respectfully submitted,

/s/ Shannon S. Holtzman
Shannon S. Holtzman, T.A. (Bar #19933)
Erin L. Delatte (Bar #33088)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108

**Attorneys for BP America Production Company and BP Exploration & Production Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 14, 2012, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.

/s/ Shannon S. Holtzman

1089933_1.Docx

11