**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUSIANA**

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG DEEPWATER HORIZON IN THE GULF OF MEXICO, ON APRIL 20, 2010 | MDL No. 2179 |
| | Section: J |
| IN RE THE COMPLAINT AND PETITION OF TRITON ASSET LEASING GmbH, ET AL., IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY | Judge: Barbier |
| | Magistrate: Shushan |
| This Document Relates To: 2:10-CV-02771 | |

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT – SPECIFIC PERFORMANCE OF CONTRACTUAL ACCESS AGREEMENT**

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.  The Edward Wisner Donation (hereinafter "the Wisner Donation" or "the Donation") owns approximately 35,000 acres of land in lower Lafourche Parish, generally bounded by Bayou Lafourche, Caminada Bay and the Gulf of Mexico, extending north to Leeville, Louisiana. This includes approximately nine miles of the area known as Fourchon Beach, which directly fronts on the Gulf of Mexico. The Donation manages this property on behalf of its beneficiaries, including the City of New Orleans, Tulane University, the Medical Center of Louisiana, the heirs of Edward Wisner, and the Salvation Army. Over 60% of the Donation's income ultimately flows to charitable and philanthropic causes. [Exhibit 1 to Motion for Summary Judgment, Declaration of C. Cathy Norman ¶¶ II-IV].

2.  The Donation's Fourchon property is primarily fragile coastal wetlands, dunes and beaches, including about nine miles of Fourchon Beach. The Caminada Headland – better known as Fourchon Beach – is the last coastal barrier protecting the marshes of the Barataria Basin from the

open Gulf.  The Caminada Headland and the wetlands and uplands it protects are also in an area of the Louisiana coast that provides habitat for hundreds of species of plants and animals.  It is also an area that has experienced major land loss.  The Headland is currently retreating at up to 40 feet per year.  Without this barrier, the inland communities of the Barataria, Caminada and Terrebonne basins would be at serious risk because the wetlands would be exposed to the open Gulf of Mexico.  At the time of the Deepwater Horizon spill, a $72 million cooperative project called the Caminada Headlands Restoration project was scheduled to begin on the Donation's property.  The Caminada Headlands project is now scheduled to begin during 2012. [Exhibit 1 to Motion for Summary Judgment, Declaration of C. Cathy Norman ¶ V].

3.     Beginning in May, 2010 oil from the Deepwater Horizon spill began washing ashore on the Donation's Fourchon Beach property.  The Donation's property was the subject of massive oil spill response operations, at times involving over 1,000 workers, heavy equipment, board roads and massive earthen dams.  The massive response on the Donation's Fourchon property actually changed the physical structure of the beach itself.  Thousands of tons of oil and oily sediments were removed.  In places the clay layer that forms a stabilizing substrate for the beach was removed.  Heavy earthmoving equipment left sunken tracks, and removal of sediments left areas more vulnerable to erosion. The damming of breaches and construction of board roads also resulted in different erosional patterns. [Exhibit 1 to Motion for Summary Judgment, Declaration of C. Cathy Norman ¶ VII-VIII].

4.     Oil from the Deepwater Horizon spill remains present on the beach and in the marsh areas of the Donation's property.  [Exhibit 1 to Motion for Summary Judgment, Declaration of C. Cathy Norman ¶ X].

5. In August, 2010, the Donation entered into a contractual Access Agreement with BP Exploration & Production, Inc. This agreement (referred to as the "BP Access Agreement" or just "the Access Agreement") governs BP's presence on the Donation's property, and contains specific commitments on the part of the Company. [Exhibit 1 to Motion for Summary Judgment, Declaration of C. Cathy Norman ¶ XI].

6. The BP Access Agreement was negotiated between the parties. BP was represented by attorneys, and changes were made to the Agreement at BP's request. [Exhibit 1 to Motion for Summary Judgment, Declaration of C. Cathy Norman ¶ XI].

7. Paragraphs 2, 5, and 6 of the Access Agreement provide as follow:

> (2) Prior to beginning operations, or as they become available, Grantee will provide Grantor with a copy of all work plans, protocols, or contracts ("cleanup documents") relating to Grantee's oil spill cleanup operations on Grantor's property. Copies of any revised, updated or supplemented cleanup documents will be provided to Grantor as soon as they become available.
>
> * * *
>
> (5) Grantee will provide Grantor a weekly summary of all removal/response operations undertaken on Wisner property, including a description of each operation performed, the dates of each operation, and the identity of all companies who worked on each operation.
>
> * * *
>
> (6) Grantee will provide Grantor with a copy of all waste manifests or other documents detailing all materials removed from Wisner Donation property, the results of all testing of any kind carried out on Grantor's property by Grantee or its contractors or at Grantee's request in connection with operations, and all documentary information such as photographs, video, GPS logs, reports, work logs or journals kept in connection with SCAT assessments and oil removal operations. This information will be provided as received on a weekly basis. If Grantee believes that any oil or oiled waste removed from the Wisner Property is not attributable to the Deepwater Horizon oil spill, Grantee shall segregate that waste and notify Grantor to allow the waste to be documented and samples taken.

8. BP has provided limited information to the Donation on an episodic basis, but the full suite of information provided by the agreement has never been provided. For example,

operations on Donation property during 2011 were carried out under a document called the "2011 Interim Louisiana Shoreline Plan," a copy of which has never been provided to the Donation. Another example is that no Geographical Information System ("GIS") data has been provided, although such information was developed for the Donation's property. Reports from "SCAT" teams for 2011 have not been provided. [Exhibit 1 to Motion for Summary Judgment, Declaration of C. Cathy Norman ¶ XIII].

9. The Donation has no source other than BP to learn the full suite of information that has been developed on the property.

10. The Donation has made repeated requests that BP provide all of the information required by the Access Agreement. BP has not provided the information. . [Exhibit 1 to Motion for Summary Judgment, Declaration of C. Cathy Norman ¶ XIV].

11. The Donation has a critical need for immediate provision of information in BP's possession. Multi-million dollar restoration projects are currently planned for the Donation's property. Further, analyzing data on the impacts of response efforts is necessary to determine protective measures that should be taken to prevent damage to the property. [Exhibit 1 to Motion for Summary Judgment, Declaration of C. Cathy Norman ¶ IX].

Respectfully Submitted:

/s/ Robert Wiygul  
Robert Wiygul (LA #17411)  
1011 Iberville Drive  
Ocean Springs, MS 39564  
Office: (228) 872-1125  
Fax:   (228) 872-1128  
robert@waltzerlaw.com

/s/ Joel Waltzer  
Joel Waltzer (LA #19268)  
3715 Westbank Expressway, Ste. 13  
Harvey, LA  70058  
Office:  (504) 340-6300  
Fax:    (504) 340-6330  
joel@waltzerlaw.com

*Counsel for Plaintiffs*:

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been electronically filed through the Court's CM/ECF system and/or LexisNexis File & Serve, in accordance with Pretrial Order No. 12, which will send a notice of electronic filing to all counsel of record on this 17th day of February, 2012.

/s/ Robert Wiygul