UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | : : : : : : : | MDL NO. 2179<br><br>SECTION:  J<br>JUDGE BARBIER<br>MAG. JUDGE SHUSHAN<br><br>JURY TRIAL DEMANDED |

. .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .   . .

**REPLY IN SUPPORT OF CAMERON'S MOTION TO EXCLUDE OPINIONS OFFERED BY THE UNITED STATES' EXPERTS, TALAS ENGINEERING, INC.**

**A.     Talas is Not Qualified to Opine on BOP Design and Drilling Issues**

The United States spends half its Opposition (Doc. 5679) touting Talas's experience "running the gamut" on "matters as diverse as designing medical equipment, to designing mining equipment, to assisting in the development of the Titan rocket." (Opp. at 3.) Cameron does not question Talas's "diverse" engineering experience. But experience as an engineer does not equate to qualification as an expert in BOP design and drilling. *See Perkins v. Volkswagen*, 596 F.2d 681 (5th Cir. 1986) (affirming trial court's decision to prevent "specialist in mechanical engineering" with no experience in designing automobiles from testifying as automotive design expert); *Poland v. Beaird-Poulan*, 483 F. Supp. 1256 (W.D. La. 1980) (same concerning defects in chain saw design).

The United States notes that Talas has "over 130 years" of engineering experience. (Opp. at 2.) However, when it comes to *relevant* experience, Talas has none. Collectively, the members of Talas group had *zero days* of experience with BOPs or drilling prior to this case.[1] They are simply not qualified to offer the opinions challenged in Cameron's Motion.

---

[1] The United States notes that a Cameron expert, Cliff Knight, had no BOP experience prior to this case, and thus "under Cameron's view [he] would be excluded from testifying under *Daubert*." (Opp. at 5.) However, Mr. Knight (who offered opinions about failure analysis) did not, and could not, offer opinions about BOP design or drilling.

### B. Talas's Alternative Design Opinion is Unsupported

A prima facie design defect claim requires proof of "the availability of a technologically feasible and practical alternative design that would have reduced or prevented the plaintiff's harm." RESTATEMENT (THIRD) OF PRODUCTS LIABILITY § 2, cmt. f. Talas cannot make that showing. Talas points to Cameron "DVS" rams as an alternative blind shear ram design, noting that they have "improved centering ability" over the "SBR" model rams that were in the Deepwater Horizon BOP. (Opp. at 7.) However, the fact that DVS rams have "improved centering ability" is no evidence that those rams would have reduced or prevented the alleged harm. As discussed in Cameron's Motion, Talas did no analysis to establish that DVS rams (or any other ram design) would have made a difference in the Macondo incident. (Doc. 5412-1, at 5-7.) Without such an analysis, the Talas alternative design opinion should be excluded.

### C. Talas's Opinion Concerning "Foreseeable Conditions" is Unfounded

In its Motion, Cameron did not challenge the notion that drill pipe can be off-center during drilling operations. Rather, Cameron challenged Talas's unsupported opinion that the conditions it says were present during the incident – namely, the well blowing out, the rig on fire, the variable bore rams partially closed holding the drill pipe in the middle of the BOP below the blind shear rams, and the rig drifting significantly off location pulling the drill pipe to the side of the BOP – were foreseeable. They were not, and the United States does not even try to argue to the contrary. The unforeseeable nature of these conditions is particularly true given Dr. Davis' amusing concession that they were foreseeable "in retrospect." (Doc. 5412-1, at 8 (quoting Davis Depo. at 268-69)). Thus, the Talas "foreseeable conditions" opinion should be excluded.

### D. Talas's Opinion Concerning the Probability of Sealing is Unfounded

In its Motion, Cameron established that Talas did no analysis to support an opinion that "it is almost certain [the blind shear rams] would have cut the pipe and sealed the well" if they

2

had been activated shortly after the explosions on the rig.  Talas did no analysis of flow conditions, erosion, or damage to the side packers (the rubber BOP sealing components) that would have occurred during the shearing process.  (Doc. 5412-1, at 9-10.)

In its Opposition, the United States does not suggest that Talas performed this or any relevant analysis.  It contends instead that Talas looked at conditions *before* the shearing process.  Specifically, the United States notes that Talas analyzed (1) the pressure differential across the drill pipe (7,400 psi[2]) and "determined that it was well within the differential that size and grade pipe could handle" and (2) the flow conditions at the time of the explosions and found that "there would be no flow in the drill pipe … and near-zero annular flow." (Opp. at 9-10.)  But this is irrelevant.  The moment the blind shear rams punctured the drill pipe, the differential pressure would have been released and the flow would have resumed.  As acknowledged by Dr. Davis, Talas did no analysis to determine what would happen when that occurred:

> Q. You've not done any analysis of what would happen if you closed a blind shear ram with an evacuated riser and a differential pressure of 7400 psi in the drill pipe, have you?
> A. I have not done a particular analysis, no.
> Q. And you have not done any sort of analysis of the effect that that operation would have on the drill pipe itself, have you?
> A. No, no specific analysis.
> Q. And you have not done any analysis of the effect that that operation would have on the side packers, correct?
> A. Correct.
>                           * * *
> [Q.] [Y]ou don't know and have not analyzed at all what would happen when you pinch that pipe, correct?
> A. When you pinch the pipe with pressure in it, no.

(Davis Depo. (Ex. 1) at 284-85.)  Having done no analysis of what would happen when the drill pipe was sheared, Talas cannot opine to a reasonable degree of probability that the blind shear rams would have cut the pipe and sealed the well.  Accordingly, this opinion should be excluded.

---

[2] *See* Talas Expert Rebuttal Report (Ex. 2 to Cameron's Motion) at 16.

Respectfully submitted,

| | |
|---|---|
| */s/ David J. Beck* | |
| David J. Beck, T.A. | Phillip A. Wittmann, 13625 |
|   *dbeck@brsfirm.com* |   *pwittmann@stonepigman.com* |
| Joe W. Redden, Jr. | Carmelite S. Bertaut, 3054 |
|   *jredden@brsfirm.com* |    *cbertaut@stonepigman.com* |
| David W. Jones | Keith B. Hall, 24444 |
|   *djones@brsfirm.com* |    *khall@stonepigman.com* |
| Geoffrey Gannaway | Jared Davidson, 32419 |
|   *ggannaway@brsfirm.com* |    *jdavidson@stonepigman.com* |
| BECK, REDDEN & SECREST, L.L.P. | STONE PIGMAN WALTHER |
| One Houston Center | WITTMANN L.L.C. |
| 1221 McKinney St., Suite 4500 | 456 Carondelet Street |
| Houston, TX 77010 | New Orleans, Louisiana  70130 |
| Phone: (713) 951-3700 | Phone: (504) 581-3200 |
| Fax: (713) 951-3720 | Fax: (504) 581-3361 |

*Attorneys for Cameron International Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of February, 2012.

  */s/ David J. Beck*              