**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater | : | MDL No. 2179 |
| Horizon" in the Gulf of Mexico, on | : | |
| April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates To: All Actions | : | JUDGE BARBIER |
| | : | MAGISTRATE JUDGE |
| …………………………………………………... | : | SHUSHAN |

**BP'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE**
**CERTAIN OPINIONS AND TESTIMONY OF GREGG PERKIN**

The PSC devotes the bulk of its opposition to BP's motion to exclude Gregg Perkin's opinions to arguing the merits of its BOP case rather than responding to BP's arguments. The PSC cannot dispute that Mr. Perkin failed to engage in the type of independent analysis that is expected of those in his field. Instead of focusing on what Mr. Perkin ***actually did*** to support his opinions, the PSC engages in a hypothetical reconstruction of documents he ***could have*** reviewed or analyses he ***could have*** performed but did not. None of this establishes that Mr. Perkin's opinions are either relevant or reliable.

***First***, Mr. Perkin's opinions regarding BAST are irrelevant and unreliable. In asserting that Mr. Perkin should be allowed to opine on what constitutes the "best available and safest technology" ("BAST") under MMS regulations, the PSC does not even attempt to argue that Mr. Perkin is an expert on MMS regulations. Instead, the PSC tries to invoke the Court's order holding that Dr. Huffman, an expert for the United States, could opine on whether BP complied with other aspects of the regulations. Critically, however, in its ruling, the Court did ***not*** conclude that an industry expert is qualified to opine on the meaning of MMS regulations. Perkin is not an expert on MMS regulations, and the PSC does not contend that he is.

Not only is Mr. Perkin unqualified to interpret MMS regulations, but his opinion as to the meaning of "BAST" is unnecessary because the regulations themselves furnish a definition. *See* 30 C.F.R. § 250.105 (2009) (defining BAST as "the best available and safest technologies that the Director determines to be economically feasible wherever failure of equipment would have a significant effect on safety, health, or the environment."). Even more problematic, Mr. Perkin's interpretation of BAST contradicts the regulatory definition. Mr. Perkin testified that he "disagrees" with the regulatory definition and based his opinions on his own "acceptable product" definition of BAST. Dep. at 722:20-723:7, 742:6-20. Thus Perkin does not even purport to opine on whether the BOP complied with the actual applicable regulations. He opines on whether the BOP complied with his own personal redefinition of BAST. *See* PSC Mem. at 9-10. Thus he compounds his error of speaking beyond his qualifications with the further error of opining on a non-existent regulation. Any resulting opinions are unreliable and necessarily irrelevant. *See Fla. Dep't of Banking & Fin. v. Bd. of Governors of Fed. Reserve Sys.*, 800 F.2d 1534, 1536 (11th Cir. 1986) (statutory definition of term controls).

*Second*, Mr. Perkin's alternative BOP design and MUX cable opinions lack a reliable basis. The PSC cites several sources that it claims hypothetically *could* support Perkin's opinions on alternative BOP designs and MUX cables. Tellingly, however, the PSC fails to address the fundamental and unavoidable *Daubert* problem – the lack of analysis by Mr. Perkin himself. For example, the PSC asserts that Mr. Perkin could "reach conclusions based on his review of existing, alternative ram designs," yet Mr. Perkin conceded that he did *not* review the drawings or perform any engineering analysis for either the DVS or CDVS rams. Perkin Dep. at 211:10-212:18, 221:14-222:13, 549:14-553:1. Likewise, with respect to the use of two blind-shear rams and tandem boosters, the PSC states that there is "abundant evidence" to support Mr.

Perkin's opinions.  But, again, Mr. Perkin admitted *he* did *not* analyze whether two blind-shear rams would have made a difference on the day of the incident, *nor* did *he* analyze the feasibility of retrofitting the *Deepwater Horizon* BOP with tandem boosters or if they would even have fit. *Id.* at 219:9-220:2; 228:15-230:4.  Similarly, the PSC states (citing no supporting evidence) that MUX cable armor "is commonly used in drilling rigs and in industrial applications," but Mr. Perkin testified *he* had not even *looked* at any other MUX cable specifications.  *Id.* at 582:22-583:17.   And while Mr. Perkin admitted a "feasibility study" was necessary to evaluate alternative MUX cable routing, he conceded that *he* had *not* done one.  *Id.* at 579:3-580:1.

       *Third*, Mr. Perkin's maximum anticipated surface pressure ("MASP") opinion has no basis.  The PSC fails to identify any basis for his opinion regarding the use of a 100% gas column to calculate MASP, arguing instead (and erroneously) that MASP requires a "worst possible case" analysis.  The PSC does not dispute that Mr. Perkin could not identify *any* standard requiring a 100% gas column, nor that he did not attempt to determine how any other operator calculates MASP.  *Id.* at 104:7-111:7, 267:24-269:13, 274:1-276:3.  The PSC asserts that Mr. Perkin's MASP opinion is "supported by an authoritative textbook," PSC Mem. at 7, but Mr. Perkin never mentioned the textbook when asked in his deposition.  (On his errata sheet he identified a *different* book not mentioned in his report or reliance materials.)   The PSC's reference to certain BP documents is likewise misplaced.  Those documents address "maximum allowable wellhead pressure," not MASP.  *See* R. Miller Dep. at 73:1-74:4, 81:19-82:20.

       *Fourth*, the PSC does not dispute that Mr. Perkin has no experience with BOP operations or maintenance or that Mr. Perkin performed no independent analysis of BOP maintenance.  The PSC can point to documents, but citations and arguments of counsel cannot cure this deficiency nor constitute a reliable scientific methodology.

Dated: February 20, 2012

Respectfully submitted,


<u>/s / Don K. Haycraft</u>

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration &
Production Inc. & BP America Production
Company*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of February, 2012.

/s/  Don K. Haycraft__