UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : : | MDL No. 2179  SECTION: J  JUDGE BARBIER |
| This Document Relates To: All Actions | : : : : | MAGISTRATE JUDGE SHUSHAN |
| …………………………………………………... | : |  |

**BP'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE
CERTAIN OPINIONS AND TESTIMONY OF GREG CHILDS**

Transocean's response fails to refute BP's arguments that Mr. Childs' control-pod testing is irrelevant and unreliable.

*First*, Transocean's response confirms that Mr. Childs' tests are irrelevant.

Transocean fails to offer adequate support that the *Discoverer Enterprise* equipment on which the solenoid valve testing was performed was sufficiently similar to the *Deepwater Horizon* equipment to bridge the analytical gap between the tests and Mr. Childs' opinion. Transocean can only say that both rigs had a Cameron Mark II control system. TO Mem. at 3. This ignores the fact that each rig had customized hardware and software components, and Transocean provides no information as to what was done to compare the *Deepwater Horizon* software code to the *Discoverer Enterprise* software code. Moreover, Transocean's response admits that the solenoid valve testing did not replicate the conditions on the *Deepwater Horizon*.

For example, to support its theory that the Yellow pod's miswired solenoid valve 103 was capable of activating the high-pressure shear circuit on the night of the incident, Transocean performed tests on a solenoid valve that had reversed-wired coils. TO Mem. at 8. These tests were performed with no pressure applied to the valve, and the only goal of the test was to hear a

noise (a "clunk") when both coils were simultaneously energized.  *Id*.  But merely hearing a "clunk" from an unpressurized valve provides no evidence that such a valve could function under at least 3,000 psi of pressure and remain fully open for 30 seconds – as the valve at Macondo was required to do.  *See* Childs Dep. at 195:19 - 197:13; 189:7-14.

In addition, Transocean admits that the WEST engineering team failed to apply any hydraulic pressure during its tests: "Although hydraulic pressure was not applied, Childs's WEST Engineering Team relied upon the audible shift to determine whether the solenoid plunger successfully moved."  TO Mem. at 8.  And neither Transocean nor Mr. Childs provided information about visual observations or other observations of any plunger movement within the valve. Therefore, Transocean's solenoid valve test did not replicate or confirm any scenario that is relevant to the functioning of the Yellow pod's solenoid valve 103 on the night of the incident.

Transocean's response also fails to establish that the *Deepwater Nautilus* equipment on which the battery testing was performed was sufficiently similar to the *Deepwater Horizon* equipment at issue.  For one, Transcoean did not provide any information about whether the power supply on the *Deepwater Nautilus* was calibrated to simulate battery variance based on deviations in temperature.  In addition, Transocean's testing was performed under conditions that do not replicate conditions on the *Deepwater Horizon*.  Mr. Childs' team based its battery cycling theories on loaded power supply voltages below 6.5 volts with the current limited to 4 amps.  *See* TREX-07692 at 32-35.  But these voltage and current levels are less than the available voltage and current levels of the Blue pod's SEM B 9 volt battery on the night of the incident.  Indeed, more than a year after the incident (and after the Blue pod's batteries had been further stressed during DNV testing), a heavily loaded Blue pod SEM B 9 volt battery could still provide adequate voltage at a 4 amp current level.  *See* TREX-43410 at 1.  This suggests that the

same battery would have been capable of providing *even more* voltage and current during the incident.  Thus, Transocean's tests did not replicate or confirm any scenario that is relevant to the functioning of the Blue pod's SEM B 9 volt battery on the night of the incident.

*Second*, Transocean's response confirms that Mr. Childs did not use a reliable methodology for his testing.

Mr. Childs directed and relied upon others to test and generate data.  TO Mem. at 9-10. An expert may indeed rely on tests performed by others, but information regarding the details of a reliable methodology must still be provided.  *See*, *e.g.*, *McReynolds v. Sodexho Marriott Services, Inc.*, 349 F. Supp. 2d 30, 37 (D.D.C. 2004) (allowing expert testimony on work performed by others only where the expert was in a position to determine if the work was performed as requested and if any mistakes were made).  Mr. Childs cannot meet this standard, having admitted that these tests were "over his head," nor could he provide relevant facts to assess their reliability.  *See* Childs Dep. at 54:6-9; 145:3-146:18; 153:10-156:2; 158:3-16; 213:1-214:8; 502:10-24.  Mr. Childs was unable to provide even the most basic information about the testing methodology that would allow assessment of its technical validity.  Transocean's Opposition alludes to certain documents that have been provided regarding the testing, but that information is woefully insufficient, and does not provide the information that was identified in BP's opening memorandum to evaluate this testing.  *See* BP Mot. at 8-9.

Transocean also maintains that DNV's AMF tests bolster the reliability of its Yellow Pod Solenoid Valve 103 testing.  TO Mem. at 8.  But DNV's AMF tests do not provide an "objective, independent" validation of Transocean's test because, unlike Transocean's test, DNV applied pressure to the valve, and there is no evidence that DNV's tests were performed with both coils simultaneously energized.  Childs Dep. at 388:12-390:7.

Dated: February 20, 2012

Respectfully submitted,

/s / Don K. Haycraft

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Exploration & Production Inc. & BP America Production Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of February, 2012.

      /s/  Don K. Haycraft__