# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| In re: | Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : : | MDL No. 2179<br><br>SECTION: J |
| This Document Relates To: All Actions | | : : | JUDGE BARBIER |
| ………………………………………………... | | : | MAGISTRATE JUDGE SHUSHAN |

## BP'S REPLY TO HALLIBURTON IN SUPPORT OF ITS MOTION TO PRECLUDE UNRELIABLE OPINIONS ON THE FAILURE OF THE PRIMARY CEMENT JOB

BP filed a motion to preclude unreliable causation opinions on the part of several cement experts. Rec. Doc. 5435. This motion implicated the opinions of several experts, including Halliburton experts John Hughett, David Bolado, and Dr. Samuel Lewis. Halliburton responded to BP's motion in eleven pages of its fifty-nine page combined response. HESI Mem. at 9-19. This is BP's reply to Halliburton's response to BP's motion.

*First*, Halliburton concedes that its experts did not perform any scientific or empirical analysis on four of the five theories identified in BP's motion. Halliburton focuses its argument on the "analysis" conducted by Mr. Hughett on rig activities and concedes that its experts did not do any analysis on the remaining theories: bottoms-up circulation, rat-hole swapping, cement volume, and pump rate. Instead, Halliburton argues – without any evidentiary support – that it would be "virtually impossible" to run an experiment to determine whether there was rat hole swapping. HESI Mem. at 12. However, after Halliburton filed its brief, BP had the opportunity to depose Dr. Ravi, Halliburton's recently-tendered rebuttal expert, and he flatly rejected Halliburton's contention. He testified that it *would* be possible to run such an experiment:

Q.    Right.  If you had the time and resources to do it, is there anything that you could think of that would keep you from doing that type of analysis such as looking at the 14.1 ppg mud that was in the rathole and its propensity to swap with 16.7 ppg cement? Is there anything that would keep from you doing it if you had the time and the resources?

A.    ***You can always do a theoretical study to look at the numerical simulation***.

Ravi Dep. at 1179-1180 (emphasis added).  Although Halliburton argues in the abstract that its experts could not perform any analysis to support their opinions because there was "data that is lost or unavailable," HESI Mem. at 11-12, it only identifies one piece of missing data in its brief (Fann 70 data that was needed for Displace 3D modeling).  *Id.* at 10 n.8.

But sufficient data to perform analysis ***was*** available.  It is undisputed that Halliburton conducted post-incident Displace 3D modeling, TREX 42049, but Halliburton's expert never bothered to speak with the engineer to determine what data or assumptions were used to conduct that modeling or attempt to replicate that modeling himself.  Bolado Dep. at 260-261 ("Q:  Did you go talk to Mr. Savery and ask him how he ran his model?  A:  No, I did not."; "Q:  And you didn't ask Mr. Savery what assumptions he made?  A:  No, I did not.").  In addition, modeling could have been conducted using the available wellbore and cement job data.  For example, Mr. Bolado used the available data to run OptiCem models to analyze the cement job.  Bolado Rebuttal Report at 12-13.  As such, Halliburton's arguments fall flat.  There is no reasonable dispute that expert analysis could have been conducted to determine the effect of these phenomena, but no such analysis was conducted.  Thus, BP's motion should be granted as to bottoms-up circulation, rat-hole swapping, cement volume, and pump rate.[1]

---

[1] Halliburton's examples of purported BP "barstool" opinions are inapposite.  HESI Mem. at 14.  Mr. Crook's opinions are based on actual modeling or testing performed in this case.  Crook Report at 56-57 (stating that his displacement opinion relied on OptiCem and Displace 3D modeling), 27-28 and n.80 (stating that his SA-541 opinion relied on post-incident test results and the testimony of Halliburton experts).

*Second*, Halliburton's argument to the last challenged theory fails as well.  Halliburton argues that Mr. Hughett conducted an "analysis" of the swabbing and surging pressures.  HESI Mem. at 17-19.  Although Mr. Hughett set up the problem as Halliburton states (identifying the need for a certain amount of surge or swab pressure to move the wiper plugs), he did not actually perform any calculations to determine whether those surge or swab pressures would be realized through two-or-more miles of drilling mud at the bottom of the Macondo well.  When asked if he did "any scientific analysis at all" with respect to "swabbing and surging opinion," his answer was "No, sir."  Hughett Dep. at 555.  He then tried to justify his opinion based on his "experience," but that is classic "barstool" opinion testimony – where the expert conducts ***no scientific analysis at all*** on the facts of the case but claims to rely on unknown, undisclosed, and potentially dissimilar "experiences" to divine what ***may*** have happened.  Halliburton does not contend that the fluid-dynamics calculations suggested in BP's brief cannot be done, and it cannot hide from Mr. Hughett's own admission that he performed no "scientific analysis at all with respect to [his] swabbing and surging opinion."

*Third*, Halliburton incorrectly claims that BP "selectively attacks any cement failure theory that implicates BP."  HESI Mem. at 9.[2]  Instead, BP moved to exclude only those theories of cement failure where the experts performed ***no analysis*** on the downhole effect.  For example, BP did not move to exclude opinions on the lack of centralizers as a potential contributor to the failure of the cement job because the experts reviewed OptiCem and other models that attempt to characterize the ***downhole effect*** of additional centralizers.  At this stage of the litigation, it is Halliburton's burden to demonstrate its experts have satisfied *Daubert*.  They have not, and their untested and unsupported theories should be rejected.

---

[2] This statement is neither relevant nor true.  Mr. Gagliano testified that he recommended to BP the job procedure for the Macondo well, which included cement volume and pump rate.

Dated: February 20, 2012                    Respectfully submitted,


                                            /s / Don K. Haycraft.
                                            Don K. Haycraft (Bar #14361)
                                            R. Keith Jarrett (Bar #16984)
                                            LISKOW & LEWIS
                                            One Shell Square
                                            701 Poydras Street, Suite 5000
                                            New Orleans, Louisiana 70139-5099
                                            Telephone: (504) 581-7979
                                            Facsimile: (504) 556-4108

                                            and

                                            Richard C. Godfrey, P.C.
                                            (richard.godfrey@kirkland.com)
                                            J. Andrew Langan, P.C.
                                            (andrew.langan@kirkland.com)
                                            Timothy A. Duffy, P.C.
                                            (tim.duffy@kirkland.com)
                                            Kirkland & Ellis LLP
                                            300 North LaSalle Street
                                            Chicago, IL 60654
                                            Telephone: (312) 862-2000
                                            Facsimile: (312) 862-2200

                                            and

                                            Robert C. "Mike" Brock
                                            (mbrock@cov.com)
                                            Covington & Burling LLP
                                            1201 Pennsylvania Avenue, NW
                                            Washington, DC 20004-2401
                                            Telephone: (202) 662-5985

                                            *Attorneys for BP p.l.c., BP Exploration &*
                                            *Production Inc, and BP America Production*
                                            *Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of February, 2012.

/s/  Don K. Haycraft