UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig "Deepwater | : | MDL No. 2179 |
| Horizon" in the Gulf of Mexico, on | : | |
| April 20, 2010 | : | SECTION: J |
| | : | |
| This Document Relates To: All Actions | : | JUDGE BARBIER |
| | : | MAGISTRATE JUDGE |
| ……………………………………………... | : | SHUSHAN |

**BP'S REPLY TO THE UNITED STATES IN
SUPPORT OF ITS MOTION TO PRECLUDE UNRELIABLE
OPINIONS ON THE FAILURE OF THE PRIMARY CEMENT JOB**

BP filed a motion to preclude unreliable causation opinions on the part of several cement experts. Rec. Doc. 5435. This motion implicated the opinions of several experts, including United States expert Glen Benge. The United States responded to BP's motion with a ten-page memorandum. This is BP's reply to the response of the United States to BP's motion.

*First*, Mr. Benge's opinions that the BP Macondo well team's decisions "may have" increased the risk of failure to the primary cement job are not relevant. In order to be reliable, an opinion must do more than simply state that certain design decisions *may have* contributed to the blowout. Suggesting a possible correlation between a decision and the release of hydrocarbons into the well is simply not enough. To be helpful to the trier of fact, an opinion must demonstrate a causal connection between the decision and the event. *See* BP Mem. at 2-3 (citing *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 992-993 (5th Cir. 1997) and *Anderson v. Bristol Myers Squibb Co.*, CIV.A. H-95-0003, 1998 WL 35178199, at *4 (S.D. Tex. Apr. 20, 1998)).

To the extent the United States argues that Mr. Benge's opinions are not speculative because he is relying on his "experience" to opine on how the cement design looks on paper, those opinions do not address the potential for increased risk of a cement failure downhole and

are simply not relevant to the Phase 1 trial.  The issue for Phase 1 is *what caused* the incident, not what may have increased risk in the abstract.  "Barstool" opinions that do not involve an analysis of specific downhole conditions at the Macondo well to determine whether the conduct actually contributed to the incident are not relevant.  They fail to meet the requirement of being "helpful" expert testimony and should be excluded.  *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 591-92 (1993) (holding that expert testimony must be founded on "valid scientific connection[s] to the pertinent inquir[ies]" and "assist the trier of fact to understand the evidence or determine a fact at issue").[1]  Thus, for example, Mr. Benge posited that mud in the rat hole may have swapped positions with the cement and contaminated it.  But no expert in this case has done any calculations, experiments, or modeling to show that is, in fact, what likely happened here.  Nor has any expert proffered any peer-reviewed literature that demonstrates rat hole swapping likely occurred *here* at the Macondo well.  In short, there is no science driving these opinions, which never progress beyond the uncertain realm of maybe it happened, maybe it did not.

*Second*, Mr. Benge's speculative opinions should be rejected.  The United States concedes that Mr. Benge did not conduct any analysis of downhole conditions but argues that his speculations should be allowed based on his general "experience."  The United States makes no claim that there is a specific well that is substantially similar to the Macondo well where Benge had actually observed any of these phenomena occurring – a prerequisite to his experience being relevant.  Recognizing this, the United States argues that the Court should relax the standard for admissibility to allow this opinion because applying the *Daubert* standard "would exclude as 'speculative' virtually all expert opinions in this case."  U.S. Mem. at 4.  Assuming it were true

---

[1] The fact that the United States elicited "barstool" opinions from other experts is inapposite.  BP's motion seeks to exclude "barstool" opinions on these five unreliable causation topics regardless of the source of the testimony.

2

that scientific analysis were impossible (which it is not), there is no exception to Rule 702 or *Daubert* in such circumstances.  Were it truly impossible to determine what occurred with any scientific reliability, the remedy would certainly not be to let experts speculate in the courtroom instead of employing "the same level of intellectual rigor that characterizes the practice of an expert."  *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (U.S. 1999).

In any event, BP did not move to exclude all theories of cement failure – only those where the experts performed ***no analysis*** on the downhole effect of these phenomena on the cement job.  For example, BP did not move to exclude opinions that the number of centralizers was a potential contributor to the failure of the cement job because experts conducted or reviewed various models that attempted to characterize the ***downhole effect*** of additional centralizers.  Nothing in the United States' opposition disputes BP's assertion that analysis ***could have been*** conducted on the effect of rig activities, additional circulation, rathole swapping, additional cement volume, and greater pump rate.  Indeed, Halliburton's expert Dr. Ravi has admitted that such analysis is possible.  *See* BP Mem. in Reply to HESI at 1-2.  The problem is that neither Mr. Benge nor the Halliburton experts applied any "reliable principles and methods . . . to the facts of the case" to determine whether rathole swapping actually did contribute to the failure of the primary cement job.

Mr. Benge's opinions relating to circulation, volume of cement, and pump rate should be excluded because they (1) do not "help the trier of fact to understand the evidence or to determine a fact in issue"; and (2) are not the product of "reliable principles and methods" that have been "reliably applied . . . to the facts of the case."  Fed. R. Evid. 702.

Dated: February 20, 2012                              Respectfully submitted,

/s / Don K. Haycraft.
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Richard C. Godfrey, P.C.
(richard.godfrey@kirkland.com)
J. Andrew Langan, P.C.
(andrew.langan@kirkland.com)
Timothy A. Duffy, P.C.
(tim.duffy@kirkland.com)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

and

Robert C. "Mike" Brock
(mbrock@cov.com)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for BP p.l.c., BP Exploration & Production Inc, and BP America Production Company*

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 20th day of February, 2012.

                                                                /s/  Don K. Haycraft__