## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig<br>*Deepwater Horizon* in the Gulf<br>Of Mexico, on April 20, 2010<br><br>This document applies to:<br>ALL CASES | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

## MOTION TO STRIKE EXPERT REPORT OF EDWARD GEOFFREY WEBSTER FOR SUBSTANTIAL RELIANCE ON EXCLUDED JIT REPORT AND TESTIMONY OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF EXPERT REPORT AND TESTIMONY OF EDWARD GEOFFREY WEBSTER  REFERENCING EXCLUDED JIT REPORT AND JIT TESTIMONY

Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling, Inc., and Transocean Deepwater, Inc. (hereinafter collectively referred to as "Transocean"), pursuant to the Court's Order (Dkt. 5448) of January 26, 2012, as clarified by the Court's Order (Dkt. 5572), dated February 2, 2012, and pursuant to this Court's Order (Dkt. 5618), dated February 8, 2012, move to strike the expert report of Geoff Mr. Webster in its entirety or, in the alternative, to strike those opinions and portions of the report that substantially rely on, or reference or cite, the JIT Report and JIT testimony, as set forth hereinafter:

1.      In the above Orders, the Court ruled that the Report of the Joint Investigation Team (JIT), including both Volumes I and II, is inadmissible.  The Court likewise ruled that testimony given

before the JIT is inadmissible, as are any reports provided to the JIT by outside consultants.
Consequently, the Court ruled (Dkt. 5448, p. 3):

> Thus, expert reports and testimony are subject to the following:  (1) expert reports (or portions thereof) solely or substantially relying on marine casualty investigation reports will be stricken; and (2) references or citations to such reports within otherwise admissible reports will be stricken.

Mr. Webster relies substantially on the JIT Report and testimony. His 17-page report cites and relies upon the excluded JIT Report and testimony from the JIT hearings no less than 25 times.  His reliance on that inadmissible evidence is inextricably intertwined with all of the opinions stated in his report.  The whole report, therefore, should be struck.  In the alternative, those opinions that substantially rely on the JIT  Report and testimony should be struck, and all references and citations to the JIT Report and testimony should be struck.

2.     The Plaintiffs' Steering Committee ("PSC") retained Mr. Geoff Webster to "review and analyze certain facts and issues" in this case and provide an expert report "based on [his] expertise in marine engineering, naval architecture, marine surveying, and marine safety." Exhibit 7672, *Deepwater Horizon Explosion on April 20, 2010—FRCP Rule 26 Report of Geoff Mr. Webster* at 1. (Exhibit A, attached hereto).  Mr. Webster's conclusions are based on three "major opinions" regarding (1) Transocean's management and operation of the *Deepwater Horizon* compared to industry regulations and minimal standards, (2) Transocean's maintenance of the *Deepwater Horizon* and its equipment, "particularly its safety critical well blowout control" equipment, and (3) Transocean's training of the *Deepwater Horizon* crew.  *See* Exhibit 7672 at 2. Mr. Webster relies on these major opinions to form his overall conclusion that the *Deepwater Horizon* was "unseaworthy." *Id.*

3.     As discussed in detail herein, Mr. Webster's reliance on the excluded evidence is substantial and permeates every major opinion he renders.  Without his reliance on the excluded

evidence, there is an insufficient factual basis for his opinions.  Under this Court's prior rulings, Mr. Webster's entire report should, therefore, be struck.  In the alternative, each opinion that substantially relies upon the excluded evidence should be struck, and all references to the excluded evidence should be struck.

4.      Mr. Webster, after opining that the Deepwater Horizon was unseaworthy, supports that unwarranted conclusion with three "Major Opinions," as follows:

> (1)      Transocean failed to manage and operate its deepwater drilling vessel in accordance with applicable industry standards;
>
> (2)      Transocean failed to maintain its vessel and equipment, particularly its safety critical well blowout control vessel equipment in a staunch and ship shape condition; and
>
> (3)      Transocean failed to train its vessel crew in their assigned duties and responsibilities, as is required of a minimally prudent vessel owner.

(Report, p. 2).

Then, in the Executive Summary (Report, pp. 3-4), Mr. Webster opines in five areas:  (1) Transocean violated the ISM Code; (2) Transocean failed to properly implement the  ISM guidelines; (3) the Kongsberg-Simrad Integrated Alarm and Control System (IACS) was not in an automatic mode and gas detectors were inhibited; (4) the DWH's crew was incompetent and improperly trained, and (5) the BOP was incapable of performing its intended purpose and was improperly maintained.

Each of the three major opinions, and each of the five areas discussed, are riddled with references to the excluded JIT Report and testimony, and should be struck, as discussed immediately below.

5.      Mr. Webster begins his substantive discussion in part IV of his report.  Part IV is entitled, "ISM CODE" (Report, p. 5).  On page 5 and on page 6 of the report, up to the last full paragraph on page 6,  Mr. Webster merely sets forth what he contends are the relevant CFR provisions.  In

the last full paragraph on page 6, he opines that Transocean failed to properly name a Designated Person Ashore (DPA).  That last paragraph is the sole support for his opinion concerning the DPA.  The paragraph relies almost exclusively on the JIT Report.  (*See* footnotes 34-37).  That entire paragraph, as well as the footnotes should be struck.  Without that paragraph, there is no factual foundation for Mr. Mr. Webster's opinions about the DPA.

6.      At the end of page 6, immediately following the last full paragraph described above, Mr. Webster begins with, "In addition to the above **overarching** failure … ." (Emphasis added).  That phrase must be struck along with the last full paragraph on page 6.  Because Mr. Webster himself describes his conclusion (which should be struck) as "overarching," it is clear that his unsupported and unsupportable opinion about the DPA infects his entire discussion about Transocean's alleged violation of the ISM Code.

7.      At the bottom of page 6 and continuing onto page 7, Mr. Webster states that Transocean violated the ISM Code by naming the OIM as the person in charge (PIC) of the vessel, which  he says caused confusion during well control situations.  He then states:

> Further, this caused a delay in activating the vessel's emergency shutdown system (ESD), which was designed to shut down the generators and close the ventilation dampers and also caused a delay in activating the emergency disconnect system (ESD) to allow the vessel to float off the BOP stack and burning well.

That statement is followed by footnote 43, and sole reference in footnote 43 is to the JIT Report.  The foregoing sentence and the reference to the JIT Report should be struck.  Without the foregoing sentence, any alleged violation of the ISM Code is divorced from, and not proximately related to, the blowout.

8.      On page seven of his report, Mr. Webster then makes assertions about Captain Kuchta's alleged lack of proper training on the SMS.  Beginning with the word, "Further," in the last paragraph on page 7, and continuing through the first paragraph on page 8, the sole references

(footnotes 44-46) are to the JIT Report.  The first full paragraph on page 8 begins, "In sum," and relies on the opinions described above that should be struck because of the substantial reliance on the JIT Report and testimony, including  Mr. Webster's opinions regarding the DPA.

9.      Next, beginning on page 8 of his report, Mr. Webster offers opinions on Transocean's alleged improper maintenance.  On page 10, he states, "Further, there was no documentation that equipment was taken off the vessel every three (3) to five (5) years to be fully inspected and rebuilt back to new tolerance, as is required by industry regulation and practice."  Footnote 69 supports that statement, and footnote 69 references the JIT Report.  Again, on page 11, Mr. Webster states:

> Indeed, Transocean had only partially completed its SMS with respect to the IACS alarm inhibitions and bypass activities as of April 20, 2010.
>
> In sum, Transocean failed to author and implement the legally required SMS for the DWH, as is required of a minimally competent vessel operator.  This resulted in a vessel fraught with equipment and safety system problems that was manned by an incompetent master and crew and was incapable of protecting the environment.  Together, these vessel operator failures caused and/or contributed to the explosion, fire, and sinking of the DWH on April 20, 2010.

The sole reference for the first sentence quoted above is the JIT Report (see footnote 81).  The next full paragraph, also quoted above, which summarizes the discussion in part IV of his report, is substantially based on the excluded JIT Report and testimony.  In short, all of the opinions expressed in part IV should be struck.

10.     Beginning on page 11, Mr. Webster opines about the IACS system.  The last paragraph on that page, which continues to page 12, is based on the JIT Report and testimony.  (See footnotes 85-87).  That paragraph and the JIT references should be struck.  The facts stated in that paragraph form the foundation for the remainder of the discussion in part V of his report.  At the bottom of page 12 and continuing to page 13, Mr. Webster states

> However, the intake valves and fire dampers in the ventilation duct system, and the air intake valves on the diesel engines on the DWH had to be manually closed from the bridge because the automatic response system was intentionally disabled.

The support for that statement is footnote 94, and the sole reference in footnote 94 is the JIT testimony of  Michael Williams.  The foregoing statement and the JIT references should be struck.

In short, because the opinions in part V of his report rely substantially on the JIT Report and testimony, the opinions in part V of Mr. Webster's report should be struck.

11.	In part VI, beginning on page 13, Mr. Webster expresses and discusses his opinion that the DWH crew was "incompetent."  The first paragraph of part VI is supported by footnotes 95-97, and those footnotes refer only to the JIT testimony of Andrea Fleytas.  The entire paragraph and the JIT references should be struck.  The last sentence in the second paragraph of part VI  (p. 13) states, "Further, while Transocean policy required the drillers to respond to combustible and toxic gas alarms, they were not trained on the IACS system."  That is supported by footnote 99, which references only the JIT Report.

The opinions in part VI rely substantially on the JIT Report and testimony, and all opinions expressed in part VI should be struck.

12.	Part VII of Mr. Mr. Webster's report states his opinions about the alleged insufficiency and improper maintenance of the BOP.  On page 15, the first sentence of the second paragraph states, "Proper function of the BSR required operation of at least one of the two control pods located on the subsurface BOP." That statement is supported by footnote 119, which solely references the DNV Report itself, which under the Court's Orders is part of the JIT investigation and likewise barred.  The sentence on page 15, "The drilling crew next activated the variable bore rams (VBR)," is supported by footnote 124, which refers only to the JIT Report.  The

foregoing statements should be struck, along with the JIT references.  The foregoing statements are integral to the conclusions reached in part VII and, consequently, the opinions expressed in part VII should be struck entirely.

13.     As demonstrated above, every major opinion expressed by Mr. Webster with respect to every subject area he addresses in his report substantially relies on the JIT Report and testimony. When the statements detailed above, which explicitly rely on the JIT Report and testimony and are the foundation for Mr. Mr. Webster's opinions, are removed from Mr. Mr. Webster's report, the whole report collapses.  The entire report should be struck.

14.     In addition, if Mr. Webster's entire report were stricken, his deposition testimony should also be stricken in its entirety.  If only portions of Webster's report are stricken, the following portions of Webster's deposition testimony, in which he relied on the JIT Report and testimony, should be struck:  P. 31, l. 25 – p. 32, l. 17;  p. 47, l. 21 – p. 48, l. 11; p. 49, l. 24 – p. 50, l. 11; p. 74, l. 10 – l. 19;  p. 109, l. 12 – l. 24;  p. 120, l. 14 – p. 121, l. 3; p. 134, l. 8 – p. 134, l. 25; p. 135, l. 22 – p. 136, l. 6; p. 136, l. 7 – l. 25;  p. 139, l. 10 – l. 16;  p. 142, l. 10 – p. 143, l. 2; p. 143, l. 11 – p. 144, l. 3;  p. 145, l. 8 – l. 18; p. 146, l. 6 – p. 146, l. 20.

The foregoing deposition excerpts are attached hereto as Exhibit B.

Respectfully submitted this 20th day of February, 2012,

By:  /s/Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 007842125)
Kent C. Sullivan (Texas, No. 19487300)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 470-6100
Facsimile:  (713) 654-1301
Email:  steven.roberts@sutherland.com

By:  /s/Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone:  (504) 599-8169
Facsimile:  (504) 599-8154
Email:  kmiller@frilot.com

                    -and-

Rachel.clingman@sutherland.com
kent.sullivan@sutherland.com

By:  /s/Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Richard J. Hymel (Louisiana, No. 20230)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone:  (337) 237-6062
Facsimile:  (337) 237-9129

                -and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone:  (504) 581-6062
Facsimile:  (504) 522-9129
Email: egp@preisroy.com
rjh@preisroy.com

                -and-

By:  /s/Brad D. Brian
Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 54933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone:  (213) 683-9100
Facsimile:  (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com
allen.katz@mto.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone:  (713) 224-8380
Facsimile:  (713) 225-9945
Email:  john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Esterling LLP
4900 Woodway, Suite 750

Houston, Texas 77056
Telephone:  (713) 650-0022
Facsimile:  (713) 650-1669
Email:dangoforth@goforthlaw.com

*Counsel for Triton Asset Leasing GmbH,
Transocean Holdings LLC, Transocean
Offshore Deepwater Drilling Inc. and
Transocean Deepwater Inc.*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 20th, 2012, I electronically filed the foregoing with the

Court's CM/ECF system and service on all counsel by using the LexisNexis File & Serve, in

accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting

electronic notice.

/s/  Kerry J. Miller