IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on April 10, 2010 | : : : : | MDL 2179 SECTION J |
| | : | JUDGE BARBIER |
| THIS DOCUMENT RELATES TO: TRAHAN v. BP p.l.c., et al., No. 2:11-cv-263 | : : : | MAG. JUDGE SHUSHAN |

BUDDY TRAHAN'S METAPHORICAL REQUEST FOR
A RIDE ON THE STREETCAR NAMED REMAND

I.   BUDDY TRAHAN'S BIG EASY BLUES.

Buddy Trahan needs a ride. He needs that ride every bit as much as he needed the help and kindness of strangers to escape the inferno aboard the Deepwater Horizon. Having survived that disaster catastrophically injured but alive, he is now in a first circle of waiting from which there is but one avenue of escape. That avenue is remand, but remand has been closed to Buddy Trahan for a long, long time. And so, like a beleaguered passenger who fruitlessly waits for a streetcar that will not come, Buddy Trahan has waited, and waited, and waited some more to be transported back to state court in Houston so that he may begin anew his long-derailed journey to justice. Yes, Buddy Trahan needs a ride, and he needs a ride on, as it were, the streetcar named remand. In sheer exhaustion from his torturous ordeal, he respectfully--but stridently--requests that the Court reopen the only avenue of escape, and grant him the ride he needs and deserves.

II.   WRONG PLACE. WRONG TIME.

It has not always been this way. But for almost two years now, Buddy Trahan has been in the wrong place at the wrong time. It began on April 20, 2010, when Buddy Trahan was aboard the Deepwater Horizon. The events of that fateful evening have been chronicled endlessly. But

1

lost amidst the frenzied furor over environmental calamity and economic catastrophe are stories of those like Buddy Trahan, who were the physical victims of the explosion and fire. Although luckier than the eleven who perished on the rig, Buddy Trahan suffered a medical textbook's worth of injuries. Hurled by the initial explosion against a wall approximately thirty feet distant, he was left unconscious, badly burned, and impaled through the neck on a hinge from a steel door. Dug from the rubble and separated from the hinge, he bled heavily from the fist-sized hole in his neck and a nine-inch bone-deep slash across his thigh. Twelve broken bones, eight other deep lacerations, a crushed knee, a closed head injury, burns over twenty-five percent of his body, and more than thirty other diagnoses round out the complement of Buddy Trahan's horrific injuries. With nine surgeries behind him, he still faces multiple future trips under the surgeon's knife.

But in a very real sense all of that was just the beginning, for Buddy Trahan again found himself in the wrong place at the wrong time when his Texas state-court lawsuit was removed to the Southern District of Texas. Although he immediately moved for remand for lack of subject matter jurisdiction, that court refused to address the motion and instead stayed the case pending the JPML's decision on its geographical fate. And when this Court entered a de facto moratorium on deciding remand motions, Buddy Trahan implored the court in the Southern District of Texas to lift the stay and rule on his motion before the JPML could mechanistically send the case to this Court. But that plea fell on deaf ears, as Judge Atlas expressed confidence that this Court would rule promptly on the motion to remand. So, too, did his plea to the JPML that this case not be dispatched to another federal court in which it did not belong. Ironically, the JPML responded to news of this Court's moratorium on deciding remand motions by positing that transferor courts

2

can decide remand motions before the cases are ordered transferred. And so his case was sent to this Court, where Buddy Trahan once again found himself in the wrong place at the wrong time.

### III. BUDDY TRAHAN AND JOSEF K.: PARALLEL OPPOSITE UNIVERSES.

Josef K. was "a young man entangled in the arcane and inscrutable webs of the law." Seevers v. Arkenberg, 726 F. Supp. 1159, 1161 (S.D. Ind. 1989). See Franz Kafka, The Trial (1925). So, too, is Buddy Trahan. For Josef K., the problem was being a perpetual defendant--for unknown and unknowable reasons--in a trial from which he could never be extricated. For Buddy Trahan, the problem is that--for reasons of a form of relative justice--he cannot even begin the process of obtaining a trial that he wants, needs, and deserves. Thus, Josef K. and Buddy Trahan inhabit parallel opposite universes. And just as the legal system crushed Josef K. by the attention it gave him, it is crushing Buddy Trahan by refusing to give him attention at all. Indeed, his case has sat dormant in this Court for 375 days, after a 160-day stop in the Southern District of Texas. That is 535 days of Buddy Trahan's life--and counting--spent in two federal courts that have no subject matter jurisdiction over his case. And because Buddy Trahan has not sued the Transocean defendants, he has been left to abide the numbing cold of injustice.[1]

We understand that the Court has been busy with other aspects of MDL 2179. Indeed, the Court has worked tirelessly to bring the matter to the verge of trial in the stage-one proceedings. With that trial anticipated to last for months, and two other stages to follow, the Court will have

---

1 All of this is not for lack of trying. Buddy Trahan's action was originally filed as Trahan v. BP, plc, et al., No. 2010-52092, in the 270th Judicial District Court of Harris County, Texas. Upon removal to the Southern District of Texas, the case was assigned No. 4:10-3198. Buddy Trahan originally filed his Motion for Remand in the Southern District of Texas-Houston Division on September 20 and October 8, 2010 (Rec. Doc. #7, 17 in Cause No. 4:10-cv-03198). After receiving Conditional Transfer Order #5, on November 17, 2010, Buddy Trahan filed a Motion and Brief to Vacate Conditional Transfer Order No. 5 pursuant to 7.4(d) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("JPML") (Rec. Doc. # 357). On February 10, 2011, the JPML (i) denied Buddy Trahan's motion to vacate the conditional transfer previously directed, and (ii) ordered the case transferred for inclusion in MDL 2179. In this Court, the case is assigned number 2:11-cv-00263-CJB-SS (Rec. Doc. #32 in Cause No. 4:10-cv-03198). After the JPML transferred Buddy Trahan's case to this Court, he re-filed his motion for remand on April 8, 2011 (Rec. Doc. #1900).

devoted years to this matter before its eventual conclusion. And there is no doubt that the Court's approach will have been beneficial in quantitative terms, i.e., in structuring the proceedings with a quantitative bias to achieve the greatest good for the greatest number with the Court's finite human resources. But the discretionary decision to favor the many over the few comes at a high qualitative price. The economic and environmental victims of the Deepwater Horizon disaster--who belong in federal court because their claims derive from federal statutes--are well on their way to an ultimate resolution. But physical victims of the tragedy like Buddy Trahan--who belong in state court because the federal courts lack jurisdiction over their claims--have seen their needs and just deserts sacrificed to an unfortunate form of relative justice. At the same time, those who caused the disaster have benefited by Buddy Trahan's relegation to the Twilight Zone: with no fear of facing judgment day any time soon, their incentive is simply to ignore him.

### IV.   THE TIME IS NIGH AND THE TOOLS ARE AT HAND.

Some would say that Buddy Trahan's plight has reached a state of disgrace, and is worthy of shedding societal tears. Cf. Bob Dylan, The Lonesome Death of Hattie Carroll, on The Times They Are A-Changin' (Columbia Records 1964) ("[Y]ou who philosophize disgrace and criticize all fears/bury that rag deep in your face now's the time for your tears."). Whether or not that is so, the Court has at hand the tools to remedy Buddy Trahan's plight. Indeed, all the Court need do is apply the law set forth in its Order dated October 6, 2010 (Rec. Doc. # 470), to wit:

> It is well settled that maritime claims do not arise under the laws of the United States. It is therefore true that unless a defendant is not a citizen of the state in which the action was brought, [28 U.S.C.] § 1441(b) does not allow maritime law claims to be removed to federal Court. This is true even if the court has both OCSLA and admiralty jurisdiction because the Fifth Circuit has not determined that finding that a court has OCSLA jurisdiction is synonymous with finding that a plaintiff's claim arises under the laws of the United States.

4

(Rec. Doc. # 470, at 9). In this circumstance, therefore, jurisdiction stands or falls on the presence of absence of diversity jurisdiction. Here, there is no diversity because Buddy Trahan and several of the defendants are citizens of Texas, the state in which this case was filed. Thus, Buddy Trahan's plight can be remedied with literally a few moments of the Court's valuable time. Importantly, remanding this case will neither delay, nor otherwise affect, the trial setting for stage one.

V.     BUDDY TRAHAN'S MODEST PROPOSAL.

When queried by his Aunt how none of the values she had tried to impart meant anything to him, Binx Bolling replied: "My objections, though they are not exactly objections, cannot be expressed in the usual way. To tell the truth, I can't express them at all." Walker Percy, The Moviegoer (First Vintage International Edition, April 1998), at 224-25. Unlike Binx Bolling, Buddy Trahan can--and did--express his objections to the treatment he feared from the courts. What is more, he expressed those objections in the usual way to the Southern District of Texas, to the JPML, and to this Court. All that was for naught and Buddy Trahan fears that his time is running out. He therefore expresses his objections in what some might deem an unconventional manner. But as the Chief Justice has observed, ""[w]hen you got nothing, you got nothing to lose." Sprint Communications Co., L.P. v. APCC Services, Inc., 554 U.S. 269, 301 (2008) (Roberts, C.J., dissenting), quoting Bob Dylan, Like a Rolling Stone, on Highway 61 Revisited (Columbia Records 1965). Accordingly, Buddy Trahan respectfully requests that the Court (i) take this missive in the spirit in which it is intended, (ii) lift the moratorium on deciding motions to remand, (iii) give Buddy Trahan his much-needed and well-deserved ride on the metaphorical Streetcar Named Remand, and (iv) remand this case to Texas state court.

5

Respectfully submitted,

**Lubel Voyles LLP**

By: /s/ Lance H. Lubel
    Lance H. Lubel
    Texas State Bar No.: 12651125
    5020 Montrose Blvd., Suite 800
    Houston, Texas 77006
    Telephone No.: (713) 284-5200
    Facsimile No.: (713) 284-5250
    Email: lance@lubelvoyles.com
**ATTORNEYS FOR BUDDY TRAHAN**

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that the above and foregoing ***Buddy Trahan's Metaphorical Request For A Ride On The Streetcar Named Remand*** has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this the 21st day of February, 2012.

/s/ Lance H. Lubel