# Exhibit 1



41529609

Dec 22 2011
12:01AM

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * | MDL NO. 2179 <br><br> SECTION:   J <br><br> JUDGE BARBIER |
| Relates to:  *All Cases in Pleading Section III.B(3)* | * * | MAG. JUDGE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

---

### PLAINTIFFS' STEERING COMMITTEE'S OBJECTIONS, LIMITATIONS, RESERVATIONS AND RESPONSES TO CLEAN-UP RESPONDER DEFENDANTS' JOINT REQUESTS FOR ADMISSIONS, INTERROGATORIES, AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO THE B3 PLAINTIFFS REGARDING PREEMPTION AND DERIVATIVE IMMUNITY ISSUES

---

In accordance with the Court's ORDER of November 3, 2011, [Doc. 4472], Plaintiffs, by and through the Plaintiffs' Steering Committee (the "PSC"), respectfully submit the following Objections, Responses, Limitations, and Reservations to the Joint Requests for Admissions, Interrogatories, and Requests for Production of Documents to the B3 Plaintiffs regarding preemption and derivative immunity issues ("Defendants' Discovery"), propounded by Defendants Marine Spill Response Corporation, Airborne Support, Inc., Airborne Support International, Inc., Lynden Air Cargo LLC, Dynamic Aviation Group, Inc., International Air Response, Inc., Lane Aviation, National Response Corporation, O'Brien's Response Management, Inc., Tiger Rentals, Ltd., The Modern Group GP-SUB, Inc., The Modern Group, Ltd., and DRC Emergency Services, LLC (collectively, the "Clean-Up Responder Defendants"):

**PREFACE**

Plaintiffs understand that the limited Phase Three discovery (preemption/derivative immunity) authorized by the Court is directed to the Plaintiffs' Steering Committee.  The PSC respectfully responds to these Requests on behalf of all Plaintiffs and/or Claimants-in-Limitation, based upon the documents and other information collected, obtained and otherwise developed by the PSC and other common benefit Work Group Members, in coordination with the Coordinating Counsel for the interests of the States.  To the extent that Defendants' Discovery Requests might be construed to require the PSC to seek and obtain documents and other information from each and every plaintiff or claimant-in-limitation, Plaintiffs would object to such Requests as unduly burdensome, overbroad, not reasonably calculated to lead to the discovery of admissible evidence, and unauthorized by the Court.

Similarly, the Plaintiffs' Steering Committee does not believe that it would be appropriate to make formally binding "admissions" with respect to facts and/or other disputed issues on behalf of all plaintiffs and/or claimants-in-limitation.  Many (if not most) of the plaintiffs and/or claimants-in-limitation are without personal knowledge as to the facts at issue with respect to the preemption/derivative immunity issues for which the Court has permitted limited discovery.  To the extent that Defendants' Requests for Admissions might be construed to require the PSC to seek and obtain knowledge and/or consent from each and every plaintiff or claimant-in-limitation, Plaintiffs would object to such Requests as unduly burdensome, overbroad, not reasonably calculated to lead to the discovery of admissible evidence, and unauthorized by the Court.  In any event, for these and other reasons, the PSC will respond to the B3 Defendants' Requests for Admissions by indicating those facts or other contentions to which the PSC would be willing to stipulate for the purposes of the limited motions for summary

judgment on Preemption and/or Derivative Immunity issues to which this limited discovery is

directed..[1]

## GENERAL OBJECTIONS

1.  The PSC objects to Defendants' Requests to the extent they are not directly related to the alleged Preemption and/or Derivative Immunity defenses raised by the Clean-Up / Responder ["B3"] Defendants, for which which the Court has permitted limited discovery.

2.  The PSC objects to the "Definitions" and "Instructions" set forth in Defendants' Requests to the extent they differ from the requirements set forth in the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Louisiana, or the Orders of this Court.[2]

3.  The PSC objects to Defendants' Requests to the extent they seek information or documents outside the scope of discovery permissible under the Federal Rules of Civil Procedure, or the Orders of this Court.[3]

4.  The PSC objects to Defendants' Discovery Requests to the extent that they seek documents or information covered by the attorney-client privilege, the work product doctrine, expert and/or consultant work product privileges, or any other applicable privilege or immunity, including the Joint-Prosecution and/or Common-Interest Privilege.[4] None of the PSC's Responses are intended, or should be construed, as a waiver or relinquishment of any part of the protections afforded by the attorney-client privilege, the work product doctrine, or any other applicable privileges or immunities. The PSC reserves the right to withdraw and recover any documents covered by such privileges or immunities if the PSC inadvertently or mistakenly produces such document

---

[1] *See* ORDER (June 24, 2011) [Doc 3043], p.1 fn.1; *citing,* PRE-TRIAL ORDER NO. 8, Misc. ¶2.

[2] *See generally,* PRE-TRIAL ORDERS NOS. 1, 8, 11, 24 and 25; ORDER [Doc 2291] (May 9, 2011), ¶ 7; ORDER [Doc 4472] (Nov. 3, 2011); PREFACE, *supra.*

[3] *See generally,* PRE-TRIAL ORDERS NOS. 1, 8, 11, 24 and 25; ORDER [Doc 2291] (May 9, 2011), ¶7; ORDER [Doc 4472] (Nov. 3, 2011); PREFACE, *supra.*

[4] *See generally,* FED. RULE EVID. 502; FED. R. CIV. PRO. 26(b)(3); FED. R. CIV. PRO. 26(b)(4). *See also,* PRE-TRIAL ORDER NO. 1, ¶ 20; PRE-TRIAL ORDER NO. 14, ¶ 2; PRE-TRIAL ORDER NO. 18; ORDER [Doc 3916] (Sept. 2, 2011), p.1 fn.1.

or information in response to Defendants' Discovery, in accordance with PRE-TRIAL ORDER NO. 14, or as otherwise may be ordered by the Court or permitted by law.

5. The PSC objects to Defendants' Discovery to the extent it seeks information or documents that are not in the possession, custody or control of the PSC.[5]

6. The PSC objects to Defendants' Discovery to the extent that it contains vague or ambiguous terms or are overly broad, unduly burdensome and oppressive, and/or not reasonably calculated to lead to the discovery of admissible evidence.

7. The PSC objects to Defendants' Discovery to the extent that Defendants have equal or greater access to the documents or other information requested, than do Plaintiffs.

8. The PSC objects to Defendants' Discovery to the extent it seeks to establish (or discover) second-hand, legal, technical and/or scientific knowledge, opinions, theories and/or conclusions – as opposed to *facts*.

9. The PSC objects to Defendants' Discovery in the nature of contention interrogatories and requests for production, which, if proper at all, should be answered near the completion of discovery, rather than during these early stages of the proceedings.[6]

10. The PSC objects to Defendants' Discovery relating to Defendants' own documents (or other information) as beyond the scope of legitimate and permissible discovery, because it does not seek to "discover" documents or information, but only to determine what documents or information Plaintiffs have discovered or obtained or deems to be relevant. Because the second-hand knowledge of the PSC is neither relevant nor reasonably calculated to lead to admissible evidence, it is: (i) protected as Work Product;[7] (ii) unduly burdensome to request the PSC to conduct the same type of review and analysis that could be as easily conducted by Defendants and/or their counsel; and (iii) beyond the scope and objectives of legitimate discovery.[8]

---

[5] *See* PREFACE, *supra.*

[6] FED. RULE CIV. PRO. 33(a)(2); M.A. Everett v. U.S. Air Group, Inc., 165 F.R.D. 1, 3 (D.D.C. 1995); B. Braun Medical v. Abbott Labs, 155 F.R.D. 525, 527 (E.D.Pa. 1994); In re Convergent Technologies Securities Litigation, 108 F.R.D. 328, 334 (N.D.Cal. 1985).

[7] *See* Gould v. Mitsui Mining & Smelting, 825 F.2d 676, 680 (2d Cir. 1987); Shelton v. American Motors, 805 F.2d 1323, 1328-1329 (8th Cir. 1986); Sporck v. Peil, 759 F.2d 312, 316 (3d Cir. 1985); James Julian v. Raytheon, 93 F.R.D. 138, 144 (D.Del. 1982); Smith v. Florida Power & Light, 632 So.2d 696 (Fla. App. 3rd Dist. 1994).

[8] *See, e.g.,* Smith v. BIC Corp, 121 F.R.D. 235, 244-245 (E.D.Pa. 1988), *rev'd, in part,* BIC v. Smith, 869 F.2d 194 (3d Cir. 1989). In the relevant portion of *Smith,* the U.S. Third Circuit denied

11. The PSC objects to Defendants' Discovery Requests to the extent they seek confidential settlement negotiations or communications or other information which would not be admissible under Federal Rule of Evidence 408.

12. The PSC reserves all objections as to the admissibility of written responses and/or documents until such time as they are sought to be introduced into evidence and/or otherwise used in these proceedings.

13. The PSC objects to Defendants' Discovery Requests to the extent they seek information from individual plaintiffs rather than the PSC.  The PSC does not have access to the documents and information of individual plaintiffs and/or their counsel in MDL 2179, and to the extent Defendants' Discovery is meant to be propounded on all plaintiffs in MDL 2179, it is overly broad and burdensome and otherwise objectionable as set forth below.  Accordingly, the responses herein are submitted on behalf of the PSC.  Further, the PSC is not able to "admit" to any fact on behalf of any individual plaintiff.

### RESERVATION OF RIGHTS TO SUPPLEMENT AND AMEND

The PSC respectfully reserves the right to further supplement and amend these discovery responses as discovery related to general B3 issues is conducted, defendants' expert reports are served, and/or as different or additional facts or information may come to light through discovery or is otherwise uncovered or developed.

---

BIC the production of information "since they were allegedly internal documents from BIC – *the documents were already in their possession.*" 869 F.2d at 197 (emphasis supplied).  At the same time, BIC sought a protective order to prohibit the plaintiff from disseminating trade secret information, regarding the design, safety, and quality tests of the product, and to limit discovery of other accident or claims information.  This part of the trial court's ruling was reversed, in part, by the Third Circuit, which granted BIC a protective order with respect to its trade secrets, but affirmed the trial court's ruling compelling BIC to produce information regarding other injuries or claims. *See* BIC v. Smith, 869 F.2d at 201-202.

**AND NOW,** subject to, and without waiving, each and every one of the GENERAL OBJECTIONS and the reservations contained in the PREFACE, which apply to each and every one of Defendants' Requests for Production, Interrogatories and Requests for Admissions, as though restated in full therein, Plaintiffs respectfully respond as follows:

## RESPONSES TO CLEAN-UP RESPONDER DEFENDANTS' DISCOVERY
## THE CLEAN-UP RESPONDER DEFENDANTS' REQUESTS FOR ADMISSION

REQUEST FOR ADMISSION NO. 1

Admit that prior to the DEEPWATER HORIZON Incident, Regional Response Team IV and Regional Response Team VI pre-authorized the use of dispersants for oil spill response operations in their geographic areas of responsibility.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC can neither admit nor deny Request No. 1 because it is vague and ambiguous and includes undefined terms such as "pre-authorized," and "dispersants," and on those bases denies.

REQUEST FOR ADMISSION NO. 2

Admit that the DWH Dispersants were listed on the NCP Product Schedule as of April 20, 2010, and remain on the NCP Product Schedule to this day.

RESPONSE

Subject to and without waiving the GENERAL OBJECTIONS  (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC would be willing to stipulate to this Request, for purposes of the B3 motions that are the subject of this limited B3 discovery.

REQUEST FOR ADMISSION NO. 3

Admit that the Oil Spill Response was conducted pursuant to the National Oil and Hazardous Substances Pollution Contingency Plan which provides for a response conducted under the direction of an On-Scene Coordinator.

RESPONSE

In addition to the GENERAL OBJECTIONS  (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC further states that it lacks knowledge or information sufficient to admit or deny the Request, and on these bases denies.

REQUEST FOR ADMISSION NO. 4

Admit that the UAC established for the Oil Spill Response operated under the leadership and direction of a FOSC.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC further states that it lacks knowledge or information sufficient to admit or deny Request No. 4, and on this basis denies.

REQUEST FOR ADMISSION NO. 5

Admit that the FOSCs for the Oil Spill Response at all times were employees of the United States Department of Homeland Security.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC lacks knowledge or information sufficient to admit or deny Request No. 5, and on that basis denies.

REQUEST FOR ADMISSION NO. 6

Admit that the first FOSC for the DEEPWATER HORIZON Incident and Oil Spill Response was the Commander of the Marine Safety Unit of the United States Coast Guard in Morgan City, Louisiana.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC lacks knowledge or information sufficient to admit or deny Request No. 6, and on this basis denies.

REQUEST FOR ADMISSION NO. 7

Admit that on April 23, 2010, United States Coast Guard Rear Admiral Mary Landry became the FOSC for the Oil Spill Response.

RESPONSE

Subject to and without waiving the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC would be willing to stipulate to this Request, for purposes of the B3 motions that are the subject of this limited B3 discovery.

REQUEST FOR ADMISSION NO. 8

Admit that United States Coast Guard Rear Admiral Landry established operations for the UAC for the Oil Spill Response at the Shell Training and Conference Center in Robert, Louisiana on April 23, 2010.

RESPONSE

Subject to and without waiving the GENERAL OBJECTIONS  (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC would be willing to stipulate to this Request, for purposes of the B3 motions that are the subject of this limited B3 discovery.

REQUEST FOR ADMISSION NO. 9

Admit that on April 29, 2010 the Oil Spill was declared a Spill of National Significance by the Secretary of the Department of Homeland Security.

RESPONSE

Subject to and without waiving the GENERAL OBJECTIONS  (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC would be willing to stipulate to this Request, for purposes of the B3 motions that are the subject of this limited B3 discovery.

REQUEST FOR ADMISSION NO. 10

Admit that on May 1, 2010 the Secretary of the Department of Homeland Security appointed United States Coast Guard Commandant Admiral Thad Allen as National Incident Commander for the Oil Spill Response.

RESPONSE

Subject to and without waiving the GENERAL OBJECTIONS  (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC would be willing to stipulate to this Request, for purposes of the B3 motions that are the subject of this limited B3 discovery.

REQUEST FOR ADMISSION NO. 11

Admit that on June 1, 2010, United States Coast Guard Rear Admiral James Watson became the FOSC for the Oil Spill Response.

RESPONSE

Subject to and without waiving the GENERAL OBJECTIONS  (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC would be willing to stipulate to this Request, for purposes of the B3 motions that are the subject of this limited B3 discovery.

REQUEST FOR ADMISSION NO. 12

Admit that on July 12, 2010 United States Coast Guard Rear Admiral Paul Zukunft became the FOSC for the Oil Spill Response.

RESPONSE

Subject to and without waiving the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC would be willing to stipulate to this Request, for purposes of the B3 motions that are the subject of this limited B3 discovery.

REQUEST FOR ADMISSION NO. 13

Admit that the United States Coast Guard established five Incident Command Posts in the following locations following the Oil Spill: Houston, Texas; Galveston, Texas; Houma, Louisiana; Mobile, Alabama; and Miami, Florida.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC lacks knowledge or information sufficient to admit or deny this Request, and on that basis denies.

REQUEST FOR ADMISSION NO. 14

Admit that beginning on April 22, 2010, and continuing throughout the Oil Spill Response, Incident Action Plans were prepared by the UAC which contained detailed instructions concerning the Oil Spill Response activities that were to occur each day.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC lacks knowledge or information sufficient to admit or deny Request No. 14, and that it can neither admit nor deny Request No. 14 because it is vague and ambiguous and includes undefined terms such as "prepared," "Incident Action Plans," and "detailed instructions," and on those bases denies.

REQUEST FOR ADMISSION NO. 15

Admit that following the Oil Spill the UAC and the various Incident Command Posts held daily conference calls at 7:00 a.m. and 5:30 p.m. to discuss the Oil Spill Response activities that were to occur each day.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC lacks knowledge or information sufficient to admit or deny Request No. 15, and on that basis denies.

REQUEST FOR ADMISSION NO. 16

Admit that the United States reviewed and approved every Incident Action Plan that the UAC disseminated.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC lacks knowledge or information sufficient to admit or deny Request No. 16, and that it can neither admit nor deny Request No. 16 because it is vague and ambiguous and includes undefined terms such as "reviewed" and "approved," and on those bases denies.

REQUEST FOR ADMISSION NO. 17

Admit that the VoO Program was part of the UAC's integrated response to the Oil Spill.

RESPONSE

Subject to and without waiving the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC would be willing to stipulate to this Request, for purposes of the B3 motions that are the subject of this limited discovery.

REQUEST FOR ADMISSION NO. 18

Admit that crew members of vessels in the VoO Program were required by the United States to complete an Oil Spill-specific, OSHA-approved, four-hour Worker Safety Training Course entitled RP MC 252, Module 3 Marine.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC lacks knowledge or information sufficient to admit or deny Request No. 18, and on that basis denies.

REQUEST FOR ADMISSION NO. 19

Admit that if a vessel in the VoO Program was to come in direct contact with oil, the United States required that at least one person on board have completed the 40-hour Hazardous

Waste Operations and Emergency Response (HAZWOPER) training program.

RESPONSE

Subject to and without waiving the GENERAL OBJECTIONS  (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC would be willing to stipulate to this Request, for purposes of the B3 motions that are the subject of this limited discovery.

REQUEST FOR ADMISSION NO. 20

Admit that all personnel aboard vessels in the VoO Program were required by the United States to wear appropriate personal protective equipment with which they were provided.

RESPONSE

In addition to the GENERAL OBJECTIONS  (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC lacks knowledge or information sufficient to admit or deny Request No. 20, and that it can neither admit nor deny Request No. 20 because it is vague, ambiguous, and lacks sufficient context, including undefined terms such as "personal protective equipment," and on those bases denies.

REQUEST FOR ADMISSION NO. 21

Admit that the United States provided federal supervision of vessels in the VoO Program through the use of United States Coast Guard patrol boats, United States Coast Guard liasons, and National Guard personnel.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC lacks knowledge or information sufficient to admit or deny Request No. 21 and that it can neither admit nor deny the Request because it is vague and ambiguous and includes undefined terms such as "supervision," and on those bases denies.

REQUEST FOR ADMISSION NO. 22

Admit that the United States defined the standards for decontamination of vessels in the VoO program.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC lacks knowledge or information sufficient to admit or deny Request No. 22, and that it can neither admit nor deny the Request because it is vague and ambiguous, and on those bases denies.

REQUEST FOR ADMISSION NO. 23

Admit that no Clean-Up Responder Defendant participated in, or was otherwise involved with, the subsea application of dispersants during the Oil Spill Response.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC lacks knowledge or information sufficient to admit or deny Request No. 23, and that it can neither admit nor deny the Request because it is vague and ambiguous, and on those bases denies.

REQUEST FOR ADMISSION NO. 24

Admit that Clean-Up Responder Defendant DRC Emergency Services, LLC did not participate in the application of dispersants during the Oil Spill Response.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC lacks knowledge or information sufficient to admit or deny Request No. 24, and that it can neither admit nor deny the Request because it is vague and ambiguous, and on those bases denies.

REQUEST FOR ADMISSION NO. 25

Admit that Clean-Up Responder Defendant Airborne Support International, Inc. did not participate in the application of dispersants during the Oil Spill Response.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC states that it lacks knowledge or information sufficient to admit or deny Request No. 25, and that it can neither admit nor deny the Request because it is vague and ambiguous, and on those bases denies.

REQUEST FOR ADMISSION NO. 26

Admit that Clean-Up Responder Defendant Tiger Rentals, Ltd. did not participate in the application of dispersants during the Oil Spill Response.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8

and 9) and PREFACE, the PSC states that it lacks knowledge or information sufficient to admit or deny Request No. 26, and that it can neither admit nor deny the Request because it is vague and ambiguous, and on those bases denies.

REQUEST FOR ADMISSION NO. 27

Admit that Clean-Up Responder Defendant The Modern Group GP-SUB, Inc. did not participate in the application of dispersants during the Oil Spill Response.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC states that it lacks knowledge or information sufficient to admit or deny Request No. 27, and that it can neither admit nor deny the Request because it is vague and ambiguous, and on those bases denies.

REQUEST FOR ADMISSION NO. 28

Admit that Clean-Up Responder Defendant The Modern Group, Ltd. did not participate in the application of dispersants during the Oil Spill Response.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC states that it lacks knowledge or information sufficient to admit or deny Request No. 28, and that it can neither admit nor deny the Request because it is vague and ambiguous, and on those bases denies.

REQUEST FOR ADMISSION NO. 29

Admit that between April 22, 2010 and July 19, 2010, the United States specifically authorized the use of the DWH Dispersants on the surface of the water in the Gulf of Mexico as part of the Oil Spill Response at various times and in various amounts.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC lacks knowledge or information sufficient to admit or deny Request No. 29, and that it can neither admit nor deny the Request because it is vague and ambiguous and includes undefined terms such as "authorized," "various times," and "various amounts," and that at least one agency of the federal government objected to the use of the DWH Dispersants, and on those bases denies.

REQUEST FOR ADMISSION NO. 30

Admit that no Clean-Up Responder Defendant applied any dispersants to the surface of the water in the Gulf of Mexico during the Oil Spill Response without the explicit approval of the United States.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the lacks knowledge or information sufficient to admit or deny Request No. 30, and that it can neither admit nor deny Request No. 30 because it is vague, ambiguous, and includes undefined terms such as "explicit approval," and that at least one agency of the federal government did not give its explicit approval of the application of dispersants to the surface of the water in the Gulf of Mexico, and on those bases denies.

REQUEST FOR ADMISSION NO. 31

Admit that no Clean-Up Responder Defendant applied any dispersants in areas outside of the Regional Response Team IV and Regional Response Team VI pre-authorization zones during the Oil Spill Response.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC lacks knowledge or information sufficient to admit or deny Request No. 31, and on that basis denies.

REQUEST FOR ADMISSION NO. 32

Admit that at no time did the United States place an absolute ban on the use of dispersants as part of the Oil Spill Response.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC lacks knowledge or information sufficient to admit or deny Request No. 32, and that it can neither admit nor deny Request No. 32 because it is vague and ambiguous and includes undefined terms such as "absolute ban," and that at least one agency of the federal government objected to the use of the DWH Dispersants, and on those bases denies.

REQUEST FOR ADMISSION NO. 33

Admit that the United States specifically authorized in-situ burning of oil, mechanical skimming of oil, the use of boom, and beach/marsh clean-up activities as part of the Oil Spill Response at various times.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC lacks knowledge or information sufficient to admit or deny Request No. 33, and that it can neither admit nor deny Request No. 33 because it is vague and ambiguous and includes undefined terms such as "mechanical skimming of oil," "use of boom," and "beach/marsh clean-up activities," and on those bases denies.

REQUEST FOR ADMISSION NO. 34

Admit that no Clean-Up Responder Defendant engaged in in-situ burning of oil, mechanical skimming of oil, the use of boom, or beach/marsh clean-up activities during the Oil Spill Response without the explicit approval of the United States.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC lacks knowledge or information sufficient to admit or deny Request No. 34, and that it can neither admit nor deny the Request because it is vague and ambiguous and includes undefined terms such as "mechanical skimming of oil," "use of boom," and "beach/marsh clean-up activities," and on those bases denies.

REQUEST FOR ADMISSION NO. 35

Admit that the United States was responsible for determining the appropriate health and safety measures for the Oil Spill Response.

RESPONSE

Subject to and without waiving the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the Request is denied.

REQUEST FOR ADMISSION NO. 36

Admit that the United States oversaw and monitored the use of the DWH Dispersants on the surface of the water in the Gulf of Mexico, in-situ burning of oil, mechanical skimming of oil, the use of boom, and beach/marsh clean-up activities during the Oil Spill Response.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, the PSC lacks knowledge or information sufficient to admit or deny Request No. 36, and that it can neither admit nor deny the Request because it is vague and ambiguous and includes undefined terms such as "oversaw," and "monitored," and on those

bases denies.

REQUEST FOR ADMISSION NO. 37

Admit that no Clean-Up Responder Defendant exceeded the scope of the authority obtained from the United States during the Oil Spill Response.

RESPONSE

In addition to the GENERAL OBJECTIONS (in particular General Objections Nos. 5, 6, 7, 8 and 9) and PREFACE, Request No. 37 is not a proper request because it calls for a legal conclusion, and further that the PSC lacks knowledge or information sufficient to admit or deny Request No. 37, and on those bases denies.

## INTERROGATORIES

INTERROGATORY NO. 1

If your response to any of the foregoing Requests for Admissions is anything other than an unqualified admission:

    a.   identify with particularity all facts that support your denial of each such Request for Admission;

    b.   identify all witnesses with knowledge of any facts that support your denial of each such Request for Admission; and

    c.   identify all documents that support your denial of each such Request for Admission.

RESPONSE

See Objections and Responses to Requests for Admission Nos. 1 - 37. *See also,* GENERAL OBJECTIONS (including particularly General Objections Nos. 4, 5, 6, 7, 8, 9, 10 and 13).

INTERROGATORY NO. 2

Identify all facts and documents in your possession, custody, or control that support the contention that BP was in control of the Oil Spill Response.

RESPONSE

*See* GENERAL OBJECTIONS (including particularly General Objections Nos. 4, 5, 6, 7, 8, 9, 10 and 13).

INTERROGATORY NO. 3

Identify all facts and documents in your possession, custody, or control that support the contention that the United States did not specifically authorize various Clean-Up Responder Defendants to use the DWH Dispersants on the surface of the water in the Gulf of Mexico as part of the Oil Spill Response.

RESPONSE

*See* GENERAL OBJECTIONS (including particularly General Objections Nos. 4, 5, 6, 7, 8, 9, 10 and 13).

INTERROGATORY NO. 4

Identify all facts and documents in your possession, custody, or control that support the contention that any Clean-Up Responder Defendant exceeded the scope of the United States' authorizations concerning the use of the DWH Dispersants on the surface of the water in the Gulf of Mexico during the Oil Spill Response.

RESPONSE

*See* GENERAL OBJECTIONS (including particularly General Objections Nos. 4, 5, 6, 7, 8, 9, 10 and 13).

INTERROGATORY NO. 5

Identify all VoO Plaintiffs, Decontamination Plaintiffs, Vessel Plaintiffs, Onshore Plaintiffs, and Resident Plaintiffs that are alleged to have suffered an injury as a result of a Clean-Up Responder Defendant exceeding the scope of the United States' authorizations concerning the use of the DWH Dispersants on the surface of the water in the Gulf of Mexico during the Oil Spill Response.

RESPONSE

*See* GENERAL OBJECTION NO. 1.  *See also* GENERAL OBJECTIONS NOS. 2, 3, 4, 5, 6, 7, 8, 9, 10 and 13). Subject to, and without waiving, the above and foregoing objections, *see* VoO PLAINTIFF PROFILE FORMS, SHORT FORM JOINDERS and/or PLAINTIFF FACT SHEETS filed and/or served to date.

INTERROGATORY NO. 6

For each plaintiff identified in response to Interrogatory No. 5, state the following:

a.   when and where the plaintiff's alleged injury occurred;

    b.   the identity of the Clean-Up Responder Defendant alleged to have exceeded the scope of the United States' authorizations concerning the use of the DWH Dispersants on the surface of the water in the Gulf of Mexico;

    c.   a description of how, when, and where that Clean-Up Responder Defendant exceeded the scope of the United States' authorizations concerning the use of the DWH Dispersants on the surface of the water in the Gulf of Mexico;

    d.   a description of how that alleged exceedance caused the plaintiff's injury;

    e.   the details of the activities being conducted by the plaintiff when the alleged exceedance occurred;

    f.   whether any personal protective equipment was being worn by the plaintiff when the alleged exceedance occurred, and if so, the type of personal protective equipment;

    g.   the names of any other persons or vessels present at the time, and in the vicinity, of where the alleged exceedance occurred; and

    h.   a description of the plaintiff's alleged injury.

<u>RESPONSE</u>

    *See* GENERAL OBJECTION NO. 1. *See also* GENERAL OBJECTIONS NOS. 2, 3, 4, 5, 6, 7, 8, 9, 10 and 13. Subject to, and without waiving, the above and foregoing objections, *see* VoO PLAINTIFF PROFILE FORMS, SHORT FORM JOINDERS and/or PLAINTIFF FACT SHEETS filed and/or served to date.

<u>INTERROGATORY NO. 7</u>

    Identify all facts and documents in your possession, custody, or control that support the contention that the United States did not specifically authorize various Clean-Up Responder Defendants to conduct in-situ burning of oil, mechanical skimming of oil, the use of boom, and beach/marsh clean-up activities as part of the Oil Spill Response.

<u>RESPONSE</u>

    *See* Objections to Interrogatory No. 2.

<u>INTERROGATORY NO. 8</u>

    Identify all facts and documents in your possession, custody, or control that support the contention that any Clean-Up Responder Defendant exceeded the scope of the United States' authorizations concerning in-situ burning of oil, mechanical skimming of oil, the use of boom,

and beach/marsh clean-up activities during the Oil Spill Response.

RESPONSE

    *See* Objections to Interrogatory No. 2.

INTERROGATORY NO. 9

    Identify all VoO Plaintiffs, Decontamination Plaintiffs, Vessel Plaintiffs, Onshore Plaintiffs, and Resident Plaintiffs that are alleged to have suffered an injury during the Oil Spill Response as a result of a Clean-Up Responder Defendant exceeding the scope of the United States' authorizations concerning in-situ burning of oil, mechanical skimming of oil, the use of boom, and beach/marsh clean-up activities.

RESPONSE

    *See* Objections and Responses to Interrogatory Nos. 2, 5 and 6.

INTERROGATORY NO. 10

    For each plaintiff identified in response to Interrogatory No. 9, state the following:

    a.  when and where the plaintiff's alleged injury occurred;

    b.  the identity of the Clean-Up Responder Defendant alleged to have exceeded the scope of the United States' authorizations concerning in-situ burning of oil, mechanical skimming of oil, the use of boom, or beach/marsh clean-up activities;

    c.  a description of how, when, and where that Clean-Up Responder Defendant exceeded the scope of the United States' authorizations concerning in-situ burning of oil, mechanical skimming of oil, the use of boom, or beach/marsh clean-up activities;

    d.  a description of how that alleged exceedance caused the plaintiff's injury;

    e.  the details of the activities being conducted by the plaintiff when the alleged exceedance occurred;

    f.  whether any personal protective equipment was being worn by the plaintiff when the alleged exceedance occurred, and if so, the type of personal protective equipment;

    g.  the names of any other persons or vessels present at the time, and in the vicinity, of where the alleged exceedance occurred; and

    h.  a description of the plaintiff's alleged injury.

RESPONSE

*See* Objections and Responses to Interrogatory Nos. 2, 5 and 6.

INTERROGATORY NO. 11

Identify all facts and documents in your possession, custody, or control that support the contention that the United States was not responsible for determining the appropriate health and safety measures of the Oil Spill Response.

RESPONSE

*See* Objections to Interrogatory No. 2.

INTERROGATORY NO. 12

Identify all facts and documents in your possession, custody, and control that support the contention that any Clean-Up Responder Defendant failed to follow the appropriate health and safety standards established by the United States for the Oil Spill Response.

RESPONSE

*See* Objections to Interrogatory No. 2.

INTERROGATORY NO. 13

Identify all VoO Plaintiffs, Decontamination Plaintiffs, Vessel Plaintiffs, Onshore Plaintiffs, and Resident Plaintiffs that are alleged to have suffered an injury during the Oil Spill Response as a result of a Clean-Up Responder Defendant violating a health or safety standard established by the United States.

RESPONSE

*See* Objections and Responses to Interrogatory Nos. 2, 5 and 6.

INTERROGATORY NO. 14

For each plaintiff identified in response to Interrogatory No. 13, state the following:

a.  when and where the plaintiff's alleged injury occurred;

b.  the health or safety standard allegedly violated;

c.  the identity of the Clean-Up Responder Defendant alleged to have violated the health or safety standard;

    d.  a description of how, when, and where that Clean-Up Responder Defendant violated the health or safety standard;

    e.  a description of how the alleged violation caused the plaintiff's injury;

    f.  the details of the activities being conducted by the plaintiff when the alleged violation occurred;

    g.  the names of any other persons or vessels present at the time, and in the vicinity, of where the alleged violation occurred; and

    h.  a description of the plaintiff's alleged injury.

<u>RESPONSE</u>

*See* Objections and Responses to Interrogatory Nos. 2, 5 and 6.

<u>INTERROGATORY NO. 15</u>

Identify all facts and documents in your possession, custody, or control that support the contention that the United States did not oversee and monitor the use of the DWH Dispersants on the surface of the water in the Gulf of Mexico, in-situ burning of oil, mechanical skimming of oil, the use of boom, and beach/marsh clean-up activities during the Oil Spill Response.

<u>RESPONSE</u>

*See* Objections to Interrogatory No. 2.

<u>INTERROGATORY NO. 16</u>

For each plaintiff identified in response to Interrogatory No. 5, identify all documents that reference the alleged exceedance.

<u>RESPONSE</u>

*See* Objections and Responses to Interrogatory Nos. 2, 5 and 6.

<u>INTERROGATORY NO. 17</u>

For each plaintiff identified in response to Interrogatory No. 9, identify all documents that reference the alleged exceedance.

RESPONSE

    *See* Objections and Responses to Interrogatory Nos. 2, 5 and 6.

INTERROGATORY NO. 18

    For each plaintiff identified in response to Interrogatory No. 13, identify all documents that reference the alleged violation.

RESPONSE

    *See* Objections and Responses to Interrogatory Nos. 2, 5 and 6.

**RESPONSES TO CLEAN-UP RESPONDER DEFENDANTS' REQUESTS FOR PRODUCTION OF DOCUMENTS**

REQUEST FOR PRODUCTION NO. 1

    Please produce any and all documents identified in your response to Interrogatory No. 1.

RESPONSE

    *See* Objections and Response to Interrogatory No. 1.

REQUEST FOR PRODUCTION NO. 2

    Please produce any and all documents identified in your response to Interrogatory No. 2.

RESPONSE

    *See* Objections and Response to Interrogatory No. 2.

REQUEST FOR PRODUCTION NO. 3

    Please produce any and all documents identified in your response to Interrogatory No. 3.

RESPONSE

    *See* Objections and Response to Interrogatory No. 3.

REQUEST FOR PRODUCTION NO. 4

    Please produce any and all documents identified in your response to Interrogatory No. 4.

RESPONSE

*See* Objections and Response to Interrogatory No. 4.

REQUEST FOR PRODUCTION NO. 5

Please produce any and all documents identified in your response to Interrogatory No. 7.

RESPONSE

*See* Objections and Response to Interrogatory No. 7.

REQUEST FOR PRODUCTION NO. 6

Please produce any and all documents identified in your response to Interrogatory No. 8.

RESPONSE

*See* Objections and Response to Interrogatory No. 2.

REQUEST FOR PRODUCTION NO. 7

Please produce any and all documents identified in your response to Interrogatory No. 11.

RESPONSE

*See* Objections and Response to Interrogatory No. 11.

REQUEST FOR PRODUCTION NO. 8

Please produce any and all documents identified in your response to Interrogatory No. 12.

RESPONSE

*See* Objections and Response to Interrogatory No. 12.

REQUEST FOR PRODUCTION NO. 9

Please produce any and all documents identified in your response to Interrogatory No. 15.

RESPONSE

*See* Objections and Response to Interrogatory No. 15.

REQUEST FOR PRODUCTION NO. 10

Please produce any and all documents identified in your response to Interrogatory No. 16.

RESPONSE

*See* Objections and Response to Interrogatory No. 16.

REQUEST FOR PRODUCTION NO. 11

Please produce any and all documents identified in your response to Interrogatory No. 17.

RESPONSE

*See* Objections and Response to Interrogatory No. 17.

REQUEST FOR PRODUCTION NO. 12

Please produce any and all documents identified in your response to Interrogatory No. 18.

RESPONSE

*See* Objections and Response to Interrogatory No. 18.


This 21st day of December, 2011.


Respectfully submitted,


    /s/   Stephen J. Herman                          /s/ James Parkerson Roy
**Stephen J. Herman**, La. Bar No. 23129    James Parkerson Roy, La. Bar No. 11511
HERMAN HERMAN KATZ & COTLAR LLP    DOMENGEAUX WRIGHT ROY & EDWARDS LLC
820 O'Keefe Avenue                          556 Jefferson Street, Suite 500
New Orleans, Louisiana 70113                Lafayette, Louisiana 70501
Telephone: (504) 581-4892                   Telephone: (337) 233-3033
Fax No. (504) 569-6024                      Fax No. (337) 233-2796
E-Mail: sherman@hhkc.com                    E-Mail: jimr@wrightroy.com
*Plaintiffs Liaison Counsel*                *Plaintiffs Liaison Counsel*

**ROBIN L. GREENWALD, ESQ.**
**JAMES C. KLICK, ESQ.**
**JAMES BILSBORROW, ESQ.**
**CRAIG ROBINSON, ESQ.**

## Plaintiffs' Steering Committee

| | |
|---|---|
| Brian H. Barr<br>LEVIN, PAPANTONIO, THOMAS,<br>MITHCELL, ECHSNER & PROCTOR, PA<br>316 South Baylen Street,  Suite 600<br>Pensacola, FL  32502-5996<br>Office:  (850) 435-7045<br>Telefax:  (850) 436-6187<br>E-Mail:  bbarr@levinlaw.com | Robin L. Greenwald<br>WEITZ & LUXENBERG, PC<br>700 Broadway<br>New York, NY  10003<br>Office:  (212) 558-5802<br>Telefax:  (212) 344-5461<br>E-Mail:  rgeeenwald@weitzlux.com |
| Jeffrey A. Breit<br>BREIT DRESCHER & IMPREVENTO<br>999 Waterside Drive, Suite 1000<br>Norfolk, VA  23510<br>Office:  (757) 670-3888<br>Telefax:  (757) 670-3895<br>E-Mail:  jbreit@bdbmail.com | Rhon E. Jones<br>BEASLEY, ALLEN, CROW, METHVIN,<br>PORTIS & MILES, P.C.<br>218 Commerce Street, P.O. Box 4160<br>Montgomery, AL  36104<br>Office:  (334) 269-2343<br>Telefax:  (334) 954-7555<br>E-Mail:  rhon.jones@beasleyallen.com |
| Elizabeth J. Cabraser<br>LIEFF, CABRASER, HEIMANN &<br>BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA  94111-3339<br>Office:  (415) 956-1000<br>Telefax:  (415) 956-1008<br>E-Mail:  ecabraser@lchb.com | Matthew E. Lundy<br>LUNDY, LUNDY, SOILEAU & SOUTH,<br>LLP<br>501 Broad Street<br>Lake Charles, LA  70601<br>Office:  (337) 439-0707<br>Telefax:  (337) 439-1029<br>E-Mail:  mlundy@lundylawllp.com |
| Philip F. Cossich, Jr.<br>COSSICH, SUMICH, PARSIOLA &<br>TAYLOR<br>8397 Highway 23, Suite 100<br>Belle Chasse, LA  70037<br>Office:  (504) 394-9000<br>Telefax:  (504) 394-9110<br>E-Mail:  pcossich@cossichlaw.com | Michael C. Palmintier<br>deGRAVELLES, PALMINTIER,<br>HOLTHAUS & FRUGÉ<br>618 Main Street<br>Baton Rouge, LA  70801-1910<br>Office:  (225) 344-3735<br>Telefax:  (225) 344-0522<br>E-Mail:  mpalmintier@dphf-law.com |
| Robert T. Cunningham | |

CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P.O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax:  (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS  39201
Office:  (601) 949-3388
Telefax:  (601) 949-3399
E-mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax:  (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL  33134
Office:  (305) 476-7400
Telefax:  (305) 476-7444
E-Mail:  Ervin@colson.com

Joseph F. Rice
MOTLEY RICE, LLC
28 Bridgeside Blvd.
Mount Pleasant SC 29465
Office:  (843) 216-9000
Telefax:  (843) 216-9450
E-Mail:  jrice@motleyrice.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  psterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax:  (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Mikal C. Watts (PSC)
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX  78257
Office:  (210) 447-0500
Telefax:  (210) 447-0501
E-Mail:  mcwatts@wgclawfirm.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP, LLC
Maison Grand Caillou
435 Corporate Drive, Suite 101
Houma, LA  70360
Office: (985) 876-7595
Telefax: (985) 876-7594
E-Mail:  duke@williamslawgroup.org

<u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that the above and foregoing will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, this <u>21</u><u>st</u> day of <u>December</u>, <u>2011</u>.

<u>/s/  James Parkerson Roy and Stephen J. Herman</u>

27