AO 88A (Rev 01/09) Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| | |
|---|---|
| IN RE: OIL SPILL by the "Deepwater Horizon" ) <br> *Plaintiff* ) <br> v. ) <br> This Document Relates to All Cases ) <br> ) <br> *Defendant* ) | Civil Action No.  MDL 2179 <br><br> (If the action is pending in another district, state where: <br> Eastern District of Louisiana |

## SUBPOENA TO TESTIFY AT A DEPOSITION
## OR TO PRODUCE DOCUMENTS IN A CIVIL ACTION

To: OCEANEERING INTERNATIONAL, INC., 11911 FM 529, Houston, Texas 77041

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Pan American Life Building, Conference Center, 601 Poydras Street, New Orleans, LA | Date and Time: <br> 04/09/2012 08:30 |
|---|---|

The deposition will be recorded by this method: __Videotaped Oral Deposition__

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:
See attached Notice of 30(b)(6) Deposition of Oceaneering International, Inc. with 30(b)(5) Document Requests.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: 01/26/2012

CLERK OF COURT

OR

_____         _____
 Signature of Clerk or Deputy Clerk       Attorney's signature

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*
_____, who issues or requests this subpoena, are:
Stephen J. Herman, 820 O'Keefe Avenue, New Orleans, LA 70113; (504) 581-4892; sherman@hhkc.com

AO 88A (Rev. 01/09) Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action (Page 2)

Civil Action No. MDL 2179

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

This subpoena for (name of individual and title, if any) **Oceaneering International, Inc.** was received by me on (date) **February 10, 2012**.

☐ I personally served the subpoena on the individual at (place) _____
on (date) _____ ; or

☐ I left the subpoena at the individual's residence or usual place of abode with (name) _____, a person of suitable age and discretion who resides there,
on (date) _____, and mailed a copy to the individual's last known address; or

☐ I served the subpoena on (name of individual) _____, who is designated by law to accept service of process on behalf of (name of organization) _____
on (date) _____ ; or

☐ I returned the subpoena unexecuted because _____ ; or

☒ Other (specify): **Served Certified Mail (see attached)**

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $ **0.00**.

I declare under penalty of perjury that this information is true.

Date: **February 24, 2012**

Server's signature

**Stephen J. Herman,
Plaintiffs Liaison Counsel
820 O'Keefe Ave., New Orleans, LA**

Server's address

Additional information regarding attempted service, etc:

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7011 0110 0001 6092 3073

Sent To: Oceaneering International
Street, Apt. No.; or PO Box No.: 11911 FM 529
City, State, ZIP+4: Houston, Tx 77041

PS Form 3800, August 2006           See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Oceaneering International
11911 FM 529
Houston, Tx 77041

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☒ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number (Transfer from service label)
7011 0110 0001 6092 3073

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-154

AO 88A (Rev. 01/09) Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*

  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

   **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

   **(i)** fails to allow a reasonable time to comply;

   **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

   **(iv)** subjects a person to undue burden.

  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

   **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

   **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*

  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

   **(i)** expressly make the claim; and

   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON: IN THE GULF OF MEXICO, on APRIL 20, 2010 | * * * * * | MDL NO. 2179 |
| THIS DOCUMENT RELATES TO: | * * | JUDGE BARBIER |
| *ALL CASES* | * * | MAG. JUDGE SHUSHAN |

*************************************************************************

## AGREED 30(b)(6) DEPOSITION NOTICE OF OCEANEERING INTERNATIONAL, INC. (WITH 30(b)(2) DOCUMENT REQUESTS)

By agreement of Plaintiffs' Liaison Counsel, Defense Liaison Counsel, Coordinating Counsel for the States, Coordinating Counsel for the U.S., and Counsel for Defendant, Oceaneering International, Inc. ("Oceaneering") the Oceaneering Defendant shall—pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and PRE-TRIAL ORDER NO. 17 (as supplemented and amended by PRE-TRIAL ORDER 27)—designate and produce one or more officers, managers, agents, employees, or other representatives of the Oceaneering Defendant to discuss the Areas of Inquiry identified below. The times and locations of the depositions will be scheduled in conjunction with the designees' fact depositions in their individual capacities, or otherwise as may be scheduled with Judge Shushan and the parties.

### Areas of Inquiry

1. For any and all attempts by anyone after April 20, 2010, to cap, control, contain, shut in, limit flow from, temporarily abandon and/or kill the Macondo Well by each of the following methods and any other method(s) used but not listed here: Actuation of the Deepwater Horizon BOP, Riser Insertion Tube Tool ("RITT"), Top Hat, Top Kill, Junk Shot, Cofferdam, Capping Stack, BOP on BOP

strategies, Macondo Relief Well No. 1 and Macondo Relief Well No. 2 (hereinafter, collectively referred to as "Methods"):

   a. The total input that Oceaneering had for each attempt and/or Method, including, but not limited to, labor, communications to contractors and/or other entities working on Oceaneering's behalf, materials, overhead and components, parts, equipment, material, and/or supplies used on same;

   b. The communications and plans to implement each attempt and/or Method, including the identity of each person who gave input;

   c. A description of any manner and methodology discussed or suggested or recommended, including computer models for each attempt, idea, or Method;

   d. A description of the explanations and/or justifications for each attempt, suggestion or Method made, discussed or prepared;

   e. Dates when planning began for each attempt, suggestion and/or Method, including the length of time to plan;

   f. An explanation of and timeline for the steps involved in planning and implementing any attempt and/or Method;

   g. The identity of Oceaneering employees and contractors who planned, managed, supervised or assisted in the implementation of any attempt and/or Method;

   h. A description of each office, department, or other organization at Oceaneering that participated in planning, engineering, approval, supervision, coordination, and/or implementation of any attempt and/or Method; and

   i. For each Method in which Oceaneering played a role, an explanation of and timeline for the steps involved in such actions, including the identity of Oceaneering employees and contractors who performed each action, and the identity of documents (with custodians) recording the actions.

2. For any and all attempts between January 1, 2000 and April 20, 2010, to cap, control, contain, shut in, limit flow from, temporarily abandon and/or kill a flowing subsea Gulf of Mexico well by any Method listed above or by any other method(s) used but not listed above:

   a. The input that Oceaneering had to complete each attempt and/or Method,

   b. A description of the manner and methodology, including computer models, used to assess each attempt and/or Method;

2

    c. A description of the explanations and/or justifications for each attempt and/or Method within Oceaneering;

    d. Dates when planning began for each attempt and/or Method, including the length of time to plan and budget;

    e. An explanation of and timeline for the steps involved in planning and implementing each attempt and/or Method;

    f. The identity of Oceaneering employees and contractors who planned, managed, and supervised the implementation of each attempt and/or Method;

    g. A description of each office, department, or other organization at Oceaneering that participated in the planning, budgeting, engineering, approval, supervision, coordination, and/or implementation of each attempt and/or Method; and

    h. For each Method actually performed in which Oceaneering participated, the identity of Oceaneering employees and contractors who worked on each Method, and the identity of documents (with custodians) recording the performance of each Method.

3. The manner, methodology and mode Oceaneering, Oceaneering's contractors and/or any other entity working on Oceaneering's behalf, predicting, estimating, characterizing and/or measuring any discharge from the Macondo Well (including any knowledge or information known, disclosed or obtained) from:

    a. April 20, 2010 through July 15, 2010;

    b. July 16, 2010 through September 19, 2010; and

    c. September 20, 2010 through the present,

including the identity of individuals involved in each prediction, estimate, characterization and/or measurement and the identity of all documents (with custodians), data, observations, calculations and/or measurements that were predicted, taken, used, relied upon, or considered by Oceaneering, Oceaneering's contractors and/or any other entity working on Oceaneering's behalf.

4. The manner, methodology and mode Oceaneering, Oceaneering's contractors and/or any other entity working on Oceaneering's behalf used (or have knowledge of, or information about) to predict, estimate, characterize and/or measure the physical or chemical properties of any substance discharged from the Macondo Well from:

    a. April 20, 2010 through July 15, 2010;

    b. July 16, 2010 through September 19, 2010; and

    c. September 20, 2010 through the present,

including the identity of individuals involved in each prediction, estimate, characterization and/or measurement and the identity of all documents (with custodians), data, observations, calculations and/or measurements that were predicted, taken, used, relied upon, or considered by Oceaneering, Oceaneering's contractors and/or any other entity working on Oceaneering's behalf.

5. The manner, methodology and mode Oceaneering, Oceaneering's contractors and/or any other entity working on Oceaneering's behalf used (or have knowledge of, or information about) to predict, estimate, characterize and/or measure the potential or actual daily depletion of the hydrocarbon reservoir tapped by the Macondo Well from:

    a. April 20, 2010 through July 15, 2010;

    b. July 16, 2010 through September 19, 2010; and

    c. September 20, 2010 through the present,

including the identity of individuals involved in each prediction, estimate, characterization and/or measurement and the identity of all documents (with custodians), data, observations, calculations and/or measurements that were predicted, taken, used, relied upon, or considered by Oceaneering, Oceaneering's contractors and/or any other entity working on Oceaneering's behalf.

6. The manner, methodology and mode Oceaneering, Oceaneering's contractors and/or any other entity working on Oceaneering's behalf used (or have knowledge of, or information about)to predict, estimate, characterize and/or measure the pressure inside the Macondo Well, including but not limited to the reservoir pressure, the pressure inside the wellbore, the pressure at the BOP, and the pressure at the point of discharge for every day from:

    a. April 20, 2010 through July 15, 2010;

    b. July 16, 2010 through September 19, 2010; and

    c. September 20, 2010 through the present,

including the identity of individuals involved in each prediction, estimate, characterization and/or measurement and the identity of all documents (with custodians), data, observations, calculations and/or measurements that were

predicted, taken, used, relied upon, or considered by Oceaneering, Oceaneering's contractors and/or any other entity working on Oceaneering's behalf.

7. The manner, methodology and mode Oceaneering, Oceaneering's contractors and/or any other entity working on Oceaneering's behalf used (or have knowledge of, or information about) to predict, estimate, characterize and/or measure the temperature of the discharge from the Macondo Well for every day from:

   a. April 20, 2010 through July 15, 2010;

   b. July 16, 2010 through September 19, 2010; and

   c. September 20, 2010 through the present,

   including the identity of individuals involved in each prediction, estimate, characterization and/or measurement and the identity of all documents (with custodians), data, observations, calculations and/or measurements that were predicted, taken, used, relied upon, or considered by Oceaneering, Oceaneering's contractors and/or any other entity working on Oceaneering's behalf.

8. Knowledge of all person(s) and/or entities charged with predicting, calculating, analyzing, determining, estimating, modeling, simulating, reporting, presenting, and/or releasing to the media and/or the public any information regarding the amount of hydrocarbons released from the Macondo Well into the atmosphere, ocean, and/or environment for every day from:

   a. April 20, 2010 through July 15, 2010;

   b. July 16, 2010 through September 19, 2010; and

   c. September 20, 2010 to the present.

9. All knowledge or information pertaining to planning, preparations, discussions, evaluations and/or training with regard to a hydrocarbon discharge event, or an uncontrolled release of hydrocarbons subsea into the Gulf of Mexico prior to April 20, 2010.

10. Costs, expenses, or expenditures incurred—including both out-of-pocket costs and/or internal costs—in association with the planning, preparations, discussions, evaluations and/or training for a) a well control/hydrocarbon discharge event or b) an uncontrolled subsea release of hydrocarbons into the Gulf of Mexico prior to April 20, 2010.

11. All planning, preparations, discussions, evaluations and/or training for a) a "Worst Case Scenario" well control/hydrocarbon discharge event, or b) an

uncontrolled release of hydrocarbons subsea into the Gulf of Mexico after April 20, 2010.

12. Knowledge or information of all communications made, transmitted, announced, drafted, discussed, sent, received, analyzed, reviewed, considered, and/or exchanged with the public, press, third parties, including, without limitation, scientists, engineers, educators, reporters, spokespersons, and/or representatives, officials, and/or designees of the United States, Louisiana, Mississippi, Alabama, Florida, and/or Texas regarding the amounts of hydrocarbons released from the Macondo Well from April 20, 2010 through the present including, without limitation, any communications criticizing, qualifying, discrediting, refuting, rejecting, and or denying the validity calculations or analysis by other person(s) and/or entities regarding quantification of hydrocarbons being released from the Macondo Well.

13. All equipment, products, and/or materials presently identified, reserved, set aside, under construction / development, purchased, and/or developed by, or at the request of, Oceaneering or its' customers for the use in an uncontrolled subsea blowout in the Gulf of Mexico.

14. Calculations, models, programs, data, discussion, analyses, and/or communications made, transmitted, announced, drafted, discussed, sent, received, analyzed, reviewed, considered, and/or exchanged both internally and with third parties regarding any Oceaneering customer's determination of what the "Worst Case Scenario" was for the Macondo Well.

15. Calculations, models, programs, data, discussion, analyses, and/or communications made, transmitted, announced, drafted, discussed, sent, received, analyzed, reviewed, considered, and/or exchanged both internally and with third parties regarding the creation of any Oceaneering customer's Oil Spill Response Plan.

16. All knowledge of, or information known, regarding analyses, calculations, assumptions, and data cited and/or relied upon in "BP's Preliminary Response to the Flow Rate and Volume Estimates Contained in Staff Working Paper No. 3" submitted by BP to the National Oil Spill Commission on or about October 21, 2010.

17. All knowledge of, or information known, regarding calculations and analyses performed to quantify the amount of oil flowing through the capping stack at any time between the installation of the capping stack and the shut-in of the Macondo Well.

18. The configuration of the capping stack (including ram position) and all pressure measurements (including calibration measurements) and temperature

measurements taken from the capping stack between the installation of the capping stack and the commencement of the static kill.

19. All attempts, both successful and unsuccessful, Oceaneering, Oceaneering's contractors and/or any other entity working on Oceaneering's behalf made to measure the pressure and/or temperature of any portion of the Macondo Well or its discharge—either above, at or below the BOP—between April 20, 2010 and the static kill.

20. All post-April 20, 2010 knowledge of, or analysis by, Oceaneering, Oceaneering's contractors and/or any other entity working on Oceaneering's behalf of the M56 reservoir and its geological, geochemical, geophysical, and/or petrophysical characteristics, including but not limited to the analysis performed in the various drafts of BP's "Post-Well Subsurface Description of Macondo well (MC 252)" Technical Memorandum.

21. All post-blowout efforts by Oceaneering, Oceaneering's contractors and/or any other entity working on Oceaneering's behalf to calculate, estimate, predict, and/or model the shut-in wellhead pressure of the Macondo Well.

22. All analysis, calculations, modeling, or estimates by Oceaneering, Oceaneering's contractors and/or any other entity working on Oceaneering's behalf relating to the effect of obstructions in the wellbore, the BOP, and/or the riser on the rate of flow from the Macondo Well.

23. Any information regarding the quantity of substances released from the Macondo Well from April 20, 2010 to the present.

24. Any information regarding efforts by others to control, stop or restrict the release of substances from the Macondo Well.

25. All information regarding documents, work services, personnel, equipment, changes, and costs, done on the Macondo Well up to, and including, April 20, 2010.

26. All information regarding documents, work services, personnel, equipment, changes, and costs, done on the Deepwater Horizon up to, and including, April 20, 2010.

27. All work done by Oceaneering, Oceaneering's contractors and/or any other entity working on Oceaneering's behalf relating to the installation, operation, closure, monitoring, and/or removal of the capping stack on the Macondo Well.

**Document Requests**

The Oceaneering Defendant are further requested, in accordance with Rule 30(b)(2) of the Federal Rules of Civil Procedure, as well as Rule 26, Rule 34, and PRE-TRIAL ORDERS NOS. 16, 17 and 27, to produce, or identify by specific Bates Number(s) (if already produced), the following documents, at least ten (10) days prior to the time of the relevant designee's deposition:

**First Set of Requests**

For each Area of Inquiry identified above, please produce all documents provided to, reviewed with, utilized by, and/or relied upon by the deponent to prepare for his or her deposition testimony.

**Second Set of Requests**

For each Area of Inquiry identified above, please produce all documents which relate, pertain, evidence and/or reflect the issues, topics and/or events described therein or associated therewith.

**Third Set of Requests**

For each corporate designee, please produce a copy of his or her custodial file, current resume or CV, and a copy of any and all prior testimony, whether provided in an individual or representative capacity, including any and all deposition testimony, trial testimony, sworn statements, affidavits, declarations, expert reports, and/or testimony before a legislative, regulatory or investigative body or agency.

This 27th day of January, 2012.

Respectfully submitted,

| | |
|---|---|
| Stephen J. Herman, La. Bar No. 23129 | /s/ James Parkerson Roy |
| Herman Herman Katz & Cotlar LLP | James Parkerson Roy, La. Bar No. 11511 |
| 820 O'Keefe Avenue | Domengeaux Wright Roy & Edwards LLC |
| New Orleans, Louisiana 70113 | 556 Jefferson Street, Suite 500 |
| Telephone: (504) 581-4892 | Lafayette, Louisiana 70501 |
| Fax No. (504) 569-6024 | Telephone: (337) 233-3033 |
| E-Mail: Sherman@hhkc.com | Fax No. (337) 233-2796 |
| | E-Mail: jimr@wrightroy.com |
| *Plaintiffs Liaison Counsel* | *Plaintiffs Liaison Counsel* |

## PLAINTIFFS' STEERING COMMITTEE

Brian Barr
Levin, Papantonio, Thomas, Mitchell,
Echsner & Proctor, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502
Office: (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
Breit Drescher & Imprevento
999 Waterside Drive, Suite 1000
Norfolk, VA 23510
Office: (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
Lieff, Cabraser, Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Office: (415) 956-1000
Telefax: (415) 956-1008
E-Mail: ecabraser@chb.com

Philip F. Cossich, Jr.
Cossich, Sumich, Pariola & Taylor
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Office: (504) 394-9000
Telefax: (504) 394-9110
E-Mail: pcossich@cossichlaw.com

Robert T. Cunningham
Cunningham Bounds, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL 36660
Office: (251) 471-6191
Telefax: (251) 479-1031
E-Mail: rtc@cunninghambounds.com

Robin Greenwald
Weitz & Luxenberg, PC
700 Broadway
New York, New York 10003
Office: (212) 558-5802
Telefax: (212) 244-5461
E-Mail: rgreenwald@weitzlux.com

Rhon E. Jones
Beasley, Allen, Crow, Methvin,
Portis & Miles, P.C.
218 Commerce St., P. O. Box 4160
Montgomery, AL 36104
Office: (334) 269-2343
Telefax: (334) 269-2343
Rhon.Jones@beasleyvallen.com

Matthew E. Lundy
Lundy, Lundy, Soileau & South, LLP
501 Broad Street
Lake Charles, LA 70601
Office: (337) 439-0707
Telefax: (337) 439-1029
mlundy@lundylawllp.com

Michael C. Palmintier
deGravelles, Palmintier, Holthaus &
Fruge
618 Main Street
Baton Rouge, LA 70801-1910
Office: (225) 344-3735
Telefax: (225) 344-0522
Email: mpalmintier@dphf-law.com

Paul M. Sterbcow
Lewis, Kullman, Sterbcow & Abramson
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Office: (504) 588-1500
Telefax: (504) 588-1514
sterbcow@lksalaw.com

| | |
|---|---|
| Alphonso Michael "Mike" Espy<br>Morgan & Morgan, P.A.<br>188 East Capitol Street, Suite 777<br>Jackson, MS 39201<br>Office: (601) 949-3388<br>Telefax: (601) 949-3399<br>E-Mail: mike@mikespy.com | Scott Summy<br>Baron & Budd, P.C.<br>3102 Oak Lawn Avenue, Suite 1100<br>Dallas, TX 75219<br>Office: (214) 521-3605<br>Telefax: (214) 599-1172<br>E-Mail: ssummy@baronbudd.com |
| Calvin C. Fayard, Jr.<br>Fayard & Honeycutt<br>519 Florida Avenue, SW<br>Denham Springs, LA 70726<br>Office: (225) 664-4193<br>Telefax: (225) 664-6925<br>E-Mail: calvinfayard@fayardlaw.com | Mikal C. Watts<br>Watts Guerra Craft, LLP<br>Four Dominion Drive, Building 3<br>Suite 100<br>San Antonio, Texas 78257<br>Office: (210) 447-0500<br>Telefax: (210) 447-0501<br>E-Mail: mcwatts@wgclawfirm.com |
| Ervin A. Gonzalez<br>Colson Hicks Eidson<br>255 Alhambra Circle, Penthouse<br>Coral Gables, FL 33134<br>Office: (305) 476-7400<br>Telefax: (305) 476-7444<br>E-Mail: Ervin@colson.com | |

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Notice has been served on all counsel pursuant to Pre-Trial Order 12 *via* Lexis-Nexis File & Serve, and that the above and foregoing Requests for Production have also been served on all counsel pursuant to Pre-Trial Order No. 12 *via* Lexis-Nexis File & Serve this 27 day of January, 2012.

_____