UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG DEEPWATER HORIZON IN THE GULF OF MEXICO, ON APRIL 20, 2010 | MDL NO. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER |
| This Document Relates To:<br>210-CV-02771; MDL No. 2179 | MAGISTRATE NO. 1<br>MAGISTRATE SHUSHAN |

**FIRST AMENDED CROSS-CLAIMS OF THIRD-PARTY DEFENDANTS ANADARKO PETROLEUM CORPORATION AND ANADARKO E&P COMPANY LP**

Third-Party Defendants and Plaintiffs-in-Cross-Claims Anadarko Petroleum Corporation and Anadarko E&P Company LP (together "Anadarko") hereby state for their cross-claims the following:

**THE PARTIES**

**Third-Party Defendants and Plaintiffs-in-Cross-Claim**

1. Third-Party Defendant and Plaintiff-in-Cross-Claim Anadarko Petroleum Corporation ("APC") is a Delaware corporation with a principal place of business in The Woodlands, Texas.

2. Third-Party Defendant and Plaintiff-in-Cross-Claim Anadarko E&P Company LP ("Anadarko E&P") is a Delaware limited partnership with its principal place of business in The Woodlands, Texas. (APC and Anadarko E&P collectively are referred to herein as "Anadarko.").

3. Anadarko Petroleum Corporation and Anadarko E&P Company LP are parties to a Confidential Settlement Agreement ("the Settlement") with BP Exploration & Production Inc. ("BPXP"). Among other things, the Settlement provides that Anadarko releases all claims against

BPXP and its affiliates, and that Anadarko assigns to BPXP all right, title and interest in its cross-claims for damages against other defendants.

### The Transocean Third-Party Plaintiffs and Defendants-in-Cross-Claim

4.     Third-Party Plaintiff and Defendant-in-Cross-Claim Triton Asset Leasing GmbH ("Triton") is a limited liability company organized and existing under the laws of the Swiss Confederation with a principal office in Zug, Switzerland.

5.     Third-Party Plaintiff and Defendant-in-Cross-Claim Transocean Holdings LLC is a limited liability company organized and existing under the laws of the State of Delaware, with a principal office in Houston, Texas.

6.     Third-Party Plaintiff and Defendant-in-Cross-Claim Transocean Offshore Deepwater Drilling Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal office in Houston, Texas.

7.     Third-Party Plaintiff and Defendant-in- Cross-Claim Transocean Deepwater Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal office in Houston, Texas.  (Third-Party Plaintiffs and Defendants-in-Cross-Claim Triton, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc. are collectively referred to herein as "Transocean" and the "Transocean Defendants-in- Cross-Claim.").

### Third-Party Defendant and Defendant-in-Cross-Claims Halliburton

8.     Third-Party Defendant and Defendant-in-Cross-Claim Halliburton Energy Services, Inc. ("Halliburton") is a Delaware Corporation with its principal place of business in Houston, Texas.

9.     Sperry Drilling Services (f/k/a Sperry Sun Drilling Services) ("Sperry") is a division of Halliburton Energy Services, Inc.

**Third-Party Defendant and Defendant-in-Cross-Claims M-I**

10. Third-Party Defendant and Defendant-in-Cross-Claim M-I, LLC, also known as M-I Swaco ("M-I"), is a Delaware limited liability company with its principal place of business in Wilmington, Delaware.

**SUBJECT MATTER JURISDICTION AND VENUE**

11. The Court has admiralty and maritime jurisdiction and federal question jurisdiction over these Cross-Claims pursuant to Article III, Section 2 of the United States Constitution, 28 U.S.C. §§ 1333, 1367, 43 U.S.C. § 1349 and 33 U.S.C. § 2717. These are claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Venue is proper in this District pursuant to Rule F(9) of the Supplemental Rules for Admiralty and Maritime Claims.

**PERSONAL JURISDICTION**

12. Pursuant to Fed. R. Civ. P. 10(c), Anadarko respectfully incorporates by reference the allegations of Petitioners' Rule 14(c) Third-Party Complaint and Plaintiffs' First Amended Master Complaint, Cross-Claim, and Third-Party Complaint for Private Economic Losses in Accordance with PTO No. 11 [CMO No.1] Section III(B1) ["B1 Bundle"] with respect to the Court's personal jurisdiction over the Defendants-in-Cross-Claims herein.

**STATEMENT OF FACTS**

13. On April 20, 2010, a well blowout caused an explosion and fire on the *Deepwater Horizon*, a semi-submersible mobile offshore drilling unit that was conducting deepwater offshore drilling and related oil exploration activities in the Gulf of Mexico (the "Blowout"). The Blowout sank the *Deepwater Horizon* and caused oil to spill into the Gulf of Mexico (the "Spill").

14. The Blowout and Spill occurred in Mississippi Canyon Block 252 in the Gulf of Mexico, which contains the "Macondo Well."

15. The Transocean Defendants-in-Cross-Claim are the Owners, Managing Owners, Owners *Pro Hac Vice*, and/or Operators, of the *Deepwater Horizon*, and/or are considered Co-Owners of the *Deepwater Horizon*. Transocean provided the *Deepwater Horizon* and the personnel to operate the rig and its equipment and systems. Transocean also provided the

16.     Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations. This included both onshore engineering support and offshore equipment and personnel based on *Deepwater Horizon*. Halliburton was responsible for and provided technical advice as to the design, modeling, placement, and testing of the cement that was pumped into place between the casing and the geological formation and in the shoe track and annulus to isolate hydrocarbons from the wellbore at the Macondo well site. Sperry was responsible for mudlogging equipment and personnel. Sperry mudlogging personnel were responsible for monitoring the well and advising the driller in the areas of mud pit volume changes, mud flow in and out of the well, mud gas levels and any pressure fluctuations.

17.     M-I provided the *Deepwater Horizon* with the mud products essential to maintaining well balance needed for safe deepwater offshore drilling, including drilling fluids and spacers, engineering services, and mud supervisory personnel, such as mud engineers and drilling fluid specialists, to manage the properties of those fluids in the Macondo Well. M-I employed and/or supervised key fluid activities concerning the Macondo Well, such as the mud displacement that was occurring at the time of the Blowout and the provision of "spacer" solution.

## ALLEGATIONS AS TO TRANSOCEAN

18.     Anadarko repeats and realleges the allegations above.

19.     At all times material hereto, the *Deepwater Horizon* was owned, navigated, manned, possessed, managed, and controlled by Transocean.

20.     Transocean provided the *Deepwater Horizon* vessel and personnel to operate it at the Macondo site and also was responsible for maintaining well control equipment, such as the BOP and its control systems.

21.     Transocean also provided operational support for drilling related activities on board the *Deepwater Horizon*, as well as onshore supervision and support for those drilling activities.

22. As the owner and manager of the *Deepwater Horizon*, Transocean owed duties to Anadarko to, *inter alia*, man, possess, manage, control, navigate, maintain, and operate the *Deepwater Horizon* with reasonable and ordinary care.

23. The duties owed by Transocean to Anadarko arose out of Transocean's status and duties as the Owner, Managing Owner, Owner *Pro Hac Vice*, and/or Operator or Co-Owner of the *Deepwater Horizon* used at the Macondo Well site, its undertaking of responsibility for the complex, technical process of deepwater offshore drilling, its contractual obligations, and its knowledge of the risks to life and property inherent in deepwater offshore drilling, federal and state regulations, and industry custom and practice.

24. Transocean breached the duties it owed to Anadarko.

25. Transocean's conduct in breaching its duties to Anadarko constituted negligence, or gross negligence, and/or willful misconduct as may be established at trial based upon the evidence, in disregard of the rights and safety of others, and all such blameworthy conduct was within the privity or knowledge of Transocean's managers.

26. Transocean's negligence, or gross negligence and/or willful misconduct as may be established at trial based upon the evidence, in reckless disregard of the rights and safety of others was committed in connection with operations that, if performed incorrectly, were known by Transocean as foreseeable causes of blowouts.

27. As alleged in more detail in BPXP's Cross-Claim and Third-Party Complaint against Transocean, Transocean's breaches of its duties included, but were not limited to, the following:

   a. failing to properly manage, control, maintain and operate the *Deepwater Horizon* and its safety equipment, including the gas sensors, emergency shutdown systems, BOP diverter system and alarm and venting systems;

   b. disabling vital alarm systems on the *Deepwater Horizon* before the Blowout; upon information and belief, had Transocean not disabled the alarm

- 5 -

systems, the system would have sounded alarms just after the Blowout, shut down all potential ignition sources, alerting the crew to activate the drilling rig's emergency disconnect system ("EDS"), which likely would have prevented the explosion and saved the lives of the 11 rig workers who perished in the disaster;

      c.      violating the International Safety and Management Code ("ISM"), as adopted by the International Convention for the Safety of Life at Sea ("SOLAS"), which provides rules and standards to ensure that ships are constructed, equipped, and manned to safeguard life at sea, by failing to properly maintain the vessel, train personnel, and perform appropriate risk assessment analyses. *See* 46 USC §§ 3201-3205 and 33 CFR §§ 96.230 and 96.250;

      d.      failing to take reasonable steps in response to its knowledge that its safety performance during offshore drilling operations was poor and in response to its knowledge of significant problems related to the *Deepwater Horizon's* equipment and maintenance, including problems with the *Deepwater Horizon's* BOP, electronic alarm systems, ballast systems used to stabilize the vessel in the water, and other significant deficiencies that could lead to loss of life, serious injury, or environmental damage as a result of inadequate use and/or failure of equipment;

      e.      unreasonably postponing and ignoring needed maintenance on the *Deepwater Horizon*, and overriding or disabling vital safety mechanisms and alarms;

      f.      misinterpreting the negative pressure test results, leading the rig crew to the erroneous view that the test was a success and well integrity had been established;

      g.      failing to ensure that all foreseeable repairs, if any, and foreseeable modifications, if any, to the *Deepwater Horizon's* BOP were performed,

h. failing to use replacement parts for the BOP that were manufactured by Cameron, the BOP's manufacturer;

i. failing to ensure that the testing of the *Deepwater Horizon's* BOP was comprehensive, reviewed, and verified, and further failing to check and verify the BOP's entire operating and control system, including but not limited to, checking for leaks at ROV connection points, and verifying the functionality of the AMF and/or autoshear;

j. failing properly to maintain functioning, independent control pods for the BOP;

k. failing timely to activate the ("EDS") after indications of well control problems and mud/hydrocarbons coming up the riser;

l. failing adequately to train its employees in well control;

m. failing to adequately train its employees in responding to emergencies, including but not limited to, using the alarm and safety systems on the rig;

n. failing to adequately assess the log and/or to report well stability or control issues to the Captain and others on the bridge prior to the Blowout; and

o. opening or failing to close the mud gas separator line in response to the well control event.

## COUNT I

### NEGLIGENCE AGAINST TRANSOCEAN - MARITIME LAW

28. Anadarko repeats and realleges the allegations above.

29. Transocean owed duties to Anadarko to, *inter alia*, man, possess, manage, control, navigate, maintain, and operate the *Deepwater Horizon* with reasonable and ordinary care.

30. Transocean breached its duties to Anadarko by committing acts of negligence, or gross neglgigence, gross fault, and/or willful misconduct as may be established at trial based upon the evidence, and all such blameworthy conduct was within the privity or knowledge of Transocean's managers, as alleged more specifically above and in BPXP's Cross-Claims and Third-Party Complaint against Transocean.

31. Transocean's conduct was the proximate cause of foreseeable damage suffered by Anadarko, including claims made against it for liability for death, personal injury, clean-up costs, economic loss, loss of investment, lost profits, and any damages or fines assessed in pending or future proceedings involving the Spill. In addition, Anadarko has suffered economic losses as a result of Transocean's negligence, including, *inter alia*, the loss of the reservoir, the loss of its investments, lost profits, and defense costs, including attorneys' fees.

WHEREFORE, Anadarko respectfully prays that judgment enter in its favor and that it be awarded its damages against Transocean.

## COUNT II

### INDEMNITY IN TORT AGAINST TRANSOCEAN - MARITIME LAW

32. Anadarko repeats and realleges the allegations above.

33. The Blowout, the Spill, and the resulting damages were caused by the negligence, or gross negligence and/or willful misconduct of Transocean as may be established at trial based upon the evidence, and all such blameworthy conduct was within the privity or knowledge of Transocean's managers.

34. Anadarko is without fault with respect to the Blowout and the Spill. If Anadarko is found liable at all for damages in connection with the Blowout or the Spill, such liability will be purely vicarious, strict, and passive.

35. Any and all damages assessed against Anadarko, whether vicariously or by operation of law, including without limitation any liability imposed in excess of the cap on liability provided for in the OPA, 33 U.S.C. § 2704, should be repaid by Transocean as a wrongdoer who owes indemnity to parties who are without fault.

WHEREFORE, Anadarko respectfully prays that judgment enter in its favor and that it be awarded its damages against Transocean.

## COUNT III

### CONTRIBUTION AGAINST TRANSOCEAN - MARITIME LAW

36. Anadarko repeats and realleges the allegations above.

37. Anadarko is without fault with respect to the Blowout and the Spill. If Anadarko is found liable at all for damages in connection with the Blowout or the Spill, such liability will be purely vicarious, strict, and passive.

38. Anadarko is entitled to contribution from Transocean, who bears a proportional degree of fault for Blowout and the Spill.

WHEREFORE, Anadarko respectfully prays that judgment enter in its favor and that it be awarded its damages against Transocean.

## COUNT IV

### CONTRIBUTION AGAINST TRANSOCEAN - OIL POLLUTION ACT

39. Anadarko repeats and realleges the allegations above.

40. The claims asserted in these proceedings require the Court to assess and allocate proportional responsibility among all defendants (if any) for the damages claimed by the plaintiffs.

41. Anadarko is without fault with respect to the Blowout and the Spill. If Anadarko is found liable at all for damages in connection with the Blowout or the Spill, such liability will be purely vicarious, strict, and passive

42. Anadarko is entitled to contribution from Transocean, who bears a proportional degree of fault for Blowout and the Spill.

43. In the event Anadarko is found liable for damages in any respect under the OPA, it is entitled under § 2709 of the OPA to contribution from Transocean in the amount of Transocean's proportional degree of responsibility for any damages assessed against them.

WHEREFORE, Anadarko respectfully prays that judgment enter in its favor and that it be awarded its damages against Transocean.

## ALLEGATIONS AS TO HALLIBURTON AND SPERRY

44. Anadarko repeats and realleges the allegations above.

45. Halliburton provided engineering services, materials, testing, mixing, and pumping for cementing operations onboard the *Deepwater Horizon*, as well as onshore engineering support for those operations, which are critical to preventing well failures and blowouts. Halliburton also provided technical advice about the design, modeling, placement, and testing of the cement that was used in the Macondo Well at and before the time of the Blowout, including but not limited to, the cement that was pumped into place behind the casing string and in the shoe track to isolate the hydrocarbons and seal the bottom of the well against the influx of hydrocarbons.

46. Sperry was responsible for mud logging personnel and equipment on the *Deepwater Horizon*, including down-hole drilling tools. Sperry's mud logging personnel were partially responsible for monitoring the well, including mud pit fluid levels, mud float in and out of the well, mud gas levels, and pressure fluctuations.

47. Halliburton and Sperry owed Anadarko a duty of reasonable and ordinary care in the performance of these responsibilities, including the duty to exercise reasonable care in conducting cementing, testing, analysis, and monitoring of the Macondo Well.

48. Halliburton and Sperry's duty of care arose from their assuming responsibility for the complex, technical process of deepwater offshore drilling and related activities, their contractual obligations, their knowledge of the risks to life and property inherent in deepwater offshore drilling, federal and state regulations, and industry custom and practice.

49. As alleged in more detail in BPXP's Third-Party Complaint against Halliburton, Halliburton and its division Sperry committed acts of negligence, or gross negligence, willful misconduct, and/or acted with reckless disregard of the rights and safety of others as may be established at trial based upon the evidence, all in breach of its duties to Anadarko by, *inter alia*:

a. failing to review properly the results of its own pre-job cement tests which, if properly reviewed, would have led Halliburton to redesign the cement used in the Macondo Well;

b. performing the Macondo job without carefully reviewing laboratory foam stability data and without solid evidence that the foamed cement design would be stable;

c. failing to require comprehensive lab testing to ensure the density and stability of the cement;

d. recommending a cement design without conducting any formal internal review of that design;

e. selecting the pre-test conditioning time informally, choosing different conditioning times (ranging from no time to three hours) in each of the four foam stability tests without any stated explanation;

f. assuming, without apparent scientific basis, that conditioning the base slurry before foaming was scientifically equivalent to foaming the cement then pumping it down the well;

g. failing to exercise reasonable care in conducting its cementing, testing, analysis, and monitoring of the *Deepwater Horizon's* well and in guarding against or preventing the risk of an oil spill;

h. failing to recommend and carry out the proper design, modeling, placement, and pumping of the cement in the Macondo Well at and before the time of the Blowout;

i. missing signs of a kick during displacement of the riser with seawater which, if noticed, would have allowed the rig crew to shut in the well before hydrocarbons entered the riser and thereby prevented the Blowout; and

   j. failing properly to monitor the Macondo Well, including mud pit fluid levels, mud flow in and out of the well, mud gas levels, and pressure fluctuations.

50. By making these as well as other decisions and/or taking these as well as other acts, Halliburton, and its division Sperry, acted with negligence, or gross negligence, willful misconduct, and/or reckless disregard of human life and the safety and health of the environment as may be established at trial based upon the evidence.

## COUNT V

## NEGLIGENCE AGAINST HALLIBURTON AND SPERRY - MARITIME LAW

51. Anadarko repeats and realleges the allegations above.

52. Halliburton and Sperry owed Anadarko a duty of reasonable and ordinary care in the performance of their responsibilities, including the duty to exercise reasonable care in conducting its cementing, testing, analysis, and monitoring of the *Deepwater Horizon's* well.

53. Halliburton and Sperry breached their duties to Anadarko by committing acts of negligence, or gross negligence, willful misconduct, and/or reckless disregard as may be established at trial based upon the evidence, as alleged more specifically above and in BPXP's Third-Party Complaint against Halliburton.

54. Halliburton and Sperry's conduct was the proximate cause of foreseeable damage suffered by Anadarko, including claims made against it for liability for death, personal injury, clean-up costs, loss of investment, lost profits, and any damages or fines assessed in pending or future proceedings involving the Spill.  In addition, Anadarko has suffered economic losses as a result of Halliburton and Sperry's negligence, including, *inter alia*, the loss of the reservoir, the loss of its investments, lost profits, and defense costs, including attorneys' fees.

  WHEREFORE, Anadarko respectfully prays that judgment enter in its favor and that it be awarded its damages against Halliburton and Sperry.

## COUNT VI

**INDEMNITY IN TORT AGAINST HALLIBURTON AND SPERRY - MARITIME LAW**

55. Anadarko repeats and realleges the allegations above.

56. The Blowout, the Spill, and the resulting damages were caused by the negligence, or gross negligence and/or willful misconduct of Halliburton and Sperry as may be established at trial based upon the evidence.

57. Anadarko is without fault with respect to the Blowout and the Spill. If Anadarko is found liable at all for damages in connection with the Blowout or the Spill, such liability will be purely vicarious, strict, and passive.

58. Any and all damages assessed against Anadarko, whether vicariously or by operation of law, should be repaid by Halliburton and Sperry as wrongdoers who owe indemnity to parties who are without fault.

WHEREFORE, Anadarko respectfully prays that judgment enter in its favor and that it be awarded its damages against Halliburton and Sperry.

## COUNT VII

**CONTRIBUTION AGAINST HALLIBURTON AND SPERRY - MARITIME LAW**

59. Anadarko repeats and realleges the allegations above.

60. Anadarko is without fault with respect to the Blowout and the Spill. If Anadarko is found liable at all for damages in connection with the Blowout or the Spill, such liability will be purely vicarious, strict, and passive.

61. Anadarko is entitled to contribution from Halliburton and Sperry, who bear a proportional degree of fault for the Blowout and Oil Spill.

WHEREFORE, Anadarko respectfully prays that judgment enter in its favor and that it be awarded its damages against Halliburton and Sperry.

## ALLEGATIONS AS TO M-I

62. Anadarko repeats and realleges the allegations above.

63. M-I provided the *Deepwater Horizon* with the mud products essential to safe deepwater offshore drilling, including drilling fluids and spacers, engineering services, and mud supervisory personnel, such as mud engineers and drilling fluid specialists, to manage the properties of those fluids in the Macondo Well. M-I employed, planned and/or supervised key fluid activities concerning the Macondo Well, such as the mud displacement that was occurring at the time of the Blowout and the provision of "spacer" solution.

64. M-I owed Anadarko a duty of reasonable and ordinary care in the performance of the foregoing duties, including but not limited to, providing, controlling, and monitoring the mud and spacer solutions used on the *Deepwater Horizon*.

65. M-I's duty of care arose from its assuming responsibility for the complex, technical process of deepwater offshore drilling mud products, mud placement and related activities, its contractual obligations, its knowledge of the essential role that mud products and displacement play in protecting against the risks to life and property inherent in deepwater offshore drilling, federal and state regulations, and industry custom and practice.

66. As alleged in more detail in BPXP's Counter Complaint against M-I L.L.C., M-I breached its duties to Anadarko.

## COUNT VIII

## NEGLIGENCE AGAINST M-I - MARITIME LAW

67. Anadarko repeats and realleges the allegations above.

68. M-I owed Anadarko a duty of reasonable and ordinary care in the performance of its responsibilities, including but not limited to, providing, controlling and monitoring the mud and spacer solutions used on the *Deepwater Horizon*.

69. M-I breached its duties to Anadarko by committing acts of negligence, as alleged more specifically above, and in BPXP's Counter Complaint against M-I L.L.C..

70. M-I's conduct was the proximate cause of foreseeable damage suffered by Anadarko, including claims made against it for liability for death, personal injury, clean-up costs, loss of investment, lost profits, and any damages or fines assessed in pending or future

WHEREFORE, Anadarko respectfully prays that judgment enter in its favor and that it be awarded its damages against M-I.

## COUNT IX

### INDEMNITY IN TORT AGAINST M-I - MARITIME LAW

71. Anadarko repeats and realleges the allegations above.

72. The Blowout, the Spill and the resulting damages were caused by the gross negligence, willful misconduct and/or negligence of M-I.

73. Anadarko is without fault with respect to the Blowout and the Spill. If Anadarko is found liable at all for damages in connection with the Blowout or the Spill, such liability will be purely vicarious, strict, and passive.

74. Any and all damages assessed against Anadarko, whether vicariously or by operation of law, should be repaid by M-I as a wrongdoer who owes indemnity to parties who are without fault.

WHEREFORE, Anadarko respectfully prays that judgment enter in its favor and that it be awarded its damages against M-I.

## COUNT X

### CONTRIBUTION AGAINST M-I - MARITIME LAW

75. Anadarko repeats and realleges the allegations above.

76. Anadarko is without fault with respect to the Blowout and the Spill. If Anadarko is found liable at all for damages in connection with the Blowout or the Spill, such liability will be purely vicarious, strict, and passive.

77. Any and all damages assessed against Anadarko, whether vicariously or by operation of law, should be repaid by Halliburton and Sperry as wrongdoers who owe indemnity to parties who are without fault.

WHEREFORE, Anadarko respectfully prays that judgment enter in its favor and that it be awarded its damages against M-I.

## PRAYER FOR RELIEF

WHEREFORE, Third-Party Defendants and Plaintiffs-in-Cross-Claim Anadarko Petroleum Corporation and Anadarko E&P Company LP respectfully pray that, after due proceedings, the Court enter judgment in their favor as set forth herein, grant their requests for general, equitable and legal relief, and enter such other relief as the Court deems just and proper.

Respectfully submitted,

DATED:  February 13, 2012           BINGHAM McCUTCHEN LLP

*/s/ James J. Dragna*_____
James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

KUCHLER POLK SCHELL
WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com

Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA 70112
Tel: (504) 592-0691
Fax: (504) 592-0696