EXHIBIT 6

FIFTH AMENDMENT INVOCATIONS - ADVERSE INFERENCES

NAME:           STEPHEN BERTONE

EMPLOYER:       TRANSOCEAN

TITLE:          CHIEF ENGINEER; MAINTENANCE SUPERVISOR

Stephen Bertone was assigned to the *Deepwater Horizon* in 2003 and became the Chief Engineer on the rig in November 2008. He also was classified as the Maintenance Supervisor and was responsible for responding to recommendations in BP's audit of the *Deepwater Horizon* in September 2009.

### ADVERSE INFERENCES AGAINST TRANSOCEAN

**I. Application of the *Libutti* Factors**

The Court may draw adverse inferences against Transocean from Bertone's invocation of the Fifth Amendment under the four non-exclusive factors suggested by the Second Circuit in *LiButti v. United States*, 107 F.3d 110 (2d Cir. 1997), which this Court adopted in its February 14 Order (Doc. 5682). "Whether these or other circumstances unique to a particular case are considered by the trial court, the overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *LiButti,* 107 F.3d at 124. The *Libutti* factors, as applied to Bertone's Fifth Amendment invocations, are as follows:

**(1) the nature of the relevant relationships** – As this Court noted in its February 14 Order, the Fifth Circuit has refused to require a special relationship between a party and an invoking non-party witness before drawing an adverse inference against the party from the non-party's invocation. *FDIC v. Fidelity & Deposit Co.,* 45 F.3d 969, 978 (5th Cir. 1995). In *FDIC*, an adverse inference was permissibly drawn where the "relationship" in question was that of a bank loan officer and a customer of the bank. Because Transocean and Bertone are in an employer/employee relationship, the relationship is stronger here than in *FDIC*. As the Court stated in *FDIC*, "the fact of present employment serves primarily to reduce the chance that the employee will falsely claim to have engaged in criminal conduct for which the defendant employer is liable." *Id.* at 978 (citing ROBERT HEIDT, *The Conjurer's Circle--The Fifth Amendment Privilege in Civil Cases*, 91 YALE L.J. 1062, 1119-20 n. 214 (1982)). Adverse inferences may be drawn from the invocation by former employees, also. "Any factors

1

suggesting that a former employee retains some loyalty to his former employer--such as the fact that the employer is paying for his attorney--would serve the same purpose." *Id.*

Transocean argues that consideration of this factor with respect to its employees who, like Bertone, have filed suit against it, weighs against the inference. According to Transocean, "most of the current or former Transocean employees who have invoked the Fifth Amendment were in separate litigation directly adverse to Transocean, concerning the same incident at issue in this case, at the time of their depositions. Their relationship to Transocean is expressly adversarial, and their refusals to testify will not support an adverse inference against Transocean. *See, e.g., United States v. Philip Morris USA Inc.,* 2004 WL 5916865, at *1 (D.D.C. July 23, 2004) ("The relationship between Osdene and Defendant Philip Morris USA is hostile and adverse and therefore would not support the inference that the non-party's invocation of his Fifth Amendment rights promotes the interests of the Defendant.")." (Doc. 5111-1, p. 3.)

The *Philip Morris* decision does not discuss the nature of the relationship in question, so it is not clear what the relationship was in that case or why it was "hostile and adverse." In any event, the existence of an adverse relationship, in itself, is not decisive. For instance, in *Brinks, Inc. v. City of New York,* 717 F.2d 700 (2d Cir. 1983), a case relied on heavily in *Libutti,* the Court held that a jury could draw adverse inferences against a corporate defendant from the invocation of the Fifth Amendment by a former employee of the corporation; this even though the corporation had filed counter claims against the employee.

Transocean's argument suggests that employees like Bertone are disloyal to Transocean and are, instead, motivated to incriminate Transocean in order to advance their claims against it. Notably, the Court in the instant case, in its discussion of the defendants' claims that invocations by non-employees cannot result in adverse inference against them, stated as follows:

> In *FDIC*, the Fifth Circuit found no need for a special relationship between the witness and the party against whom the adverse inference was sought. It quoted the following from *RAD Services Inc. v. Aetna Casualty & Surety Co.*, 808 F. 2d 271, 275 (3rd Cir. 1986):
>
>> First, a witness truly bent on incriminating [a party] would likely offer damaging testimony directly, instead of hoping for an adverse inference from a Fifth Amendment invocation. Second, the trial judge could test the propriety of an invocation to ensure against irrelevant claims of privilege. Third, counsel may argue to the jury concerning the weight which it should afford the invocation and any inferences therefrom.

2

>45 F.3d at 978. This responds to the thrust of the movers' arguments concerning non-employees.

(Doc. 5682, p. 4.) The same argument could be made as to Bertone's Fifth Amendment invocations. If he were truly bent on incriminating Transocean to advance his personal injury case against it, he would offer damaging testimony directly, instead of hoping that the Court would draw an adverse inference against Transocean based on his invocation.

**(2) the degree of control of the party over the non-party witness** – Transocean exercised control over Bertone as his employer. Transocean argues that it did not have control over its employees who had filed suit against it at the time of their depositions. As the Court noted in *New Hampshire Ins. Co. v. Blue Water Off Shore LLC,* 2009 WL 792530 (S.D. Ala. 2009), the "control" element deals not with the party's ability to control the witness at the time of his testimony, but "the degree of control the party has 'vested in the non-party witness in regard to the key facts and general subject matter of the litigation' and approximates the analysis for admissions of a party opponent under Federal Rule of Evidence 801(d)(2)." *Id.* (quoting *Libutti*). Thus, Transocean's lack of control over Bertone at the time of his deposition is not relevant to this factor. Moreover, any statement by Bertone would qualify as an admission by Transocean under the Federal Rules of Evidence.

**(3) the compatibility of the interests of the party and non-party witness in the outcome of the litigation** - With respect to this factor, the *LiButti* Court directed that "the trial court should evaluate whether the non-party witness is pragmatically a noncaptioned party in interest and whether the assertion of the privilege advances the interests of both the non-party witness and the affected party in the outcome of the litigation." *Libutti,* 107 F.3d at 123. Despite Bertone's suit against Transocean, Bertone and Transocean have similar interests in that it is in Bertone's penal interest that Transocean succeed in the litigation, particularly with respect to any actions on his part. Bertone's invocation advances Transocean's interests to the extent that it prevents Plaintiffs from obtaining testimony from him that would likely be damaging to Transocean. Thus, Bertone's interests in the outcome of the case are compatible with Transocean's.

**(4) the role of the non-party witness in the litigation** – As Transocean's Chief Engineer on the Deepwater Horizon, Bertone plays a critical role in this litigation. Bertone's role is significant, as the maintenance of the *Deepwater Horizon* is a central issue in this case.

In the end, the question is whether the inference is trustworthy and advances the search for the truth. Nineteen witnesses have asserted their Fifth Amendment rights in this case, leaving Plaintiffs without direct testimony on several key issues. The circumstances of this case render Harrell particularly worthy of belief as to the specific inferences identified below and, accordingly, this Court should draw these inferences against Transocean.

**II.     Adverse Inferences To Be Drawn Against Transocean.**

**A.     Transocean failed to perform the necessary overdue maintenance on the *Deepwater Horizon*.**

     pp. 18-19
17   Q.   Mr. Bertone, how much of the
18  planned maintenance was completed between
19  September 2009 and April 20th, 2010?
20    A.   Same answer.
21    Q.   Okay.  Isn't it true that very
22  little of the planned maintenance identified
23  in this executive summary was performed
24  between September 2009 and April 20, 2010?
19:01   Q.   You can answer
02  now.
03    A.   Same answer.

     p. 33
05    Q.   A rig saver is a safety device
06  that shuts off ventilation of air into the
07  engine and thus a potential ignition source;
08  is that correct?
10    A.   Same answer.
11    Q.   All right.
12  Isn't it true that the rig savers on the
13  engines that were running that night also
14  failed?
15    A.   Same answer.

## ADVERSE INFERENCES AGAINST BP

**I.     Inferences Drawn Based on Invocations of Non-Employees:  Application of the *Libutti* Factors**

In its February 14 Order, the Court agreed with the PSC that an employment relationship between the invoking witness and the party against whom the inference is to be drawn is not necessary. The Court rejected BP's argument, holding as follows:

> BP contends that under FDIC, the absence of an employment relationship between the invoking witness and the party against whom the adverse inference is sought remains relevant. It urges that the absence of an employment relationship is clearly an important circumstance courts consider when determining whether to apply adverse inferences. It argues that unlike the witnesses in FDIC, the Transocean and Halliburton employees will benefit from their invocation because the adverse inference will be used to attribute fault to BP rather than their employer. Further, it contends that the adverse inferences drawn from the invocations by the persons with relationships with the loan officer in FDIC were trustworthy. It urges that this quality is lacking for Transocean employees invoking the Fifth because of the adversarial relationship between Transocean and BP, such employees owe no loyalty to BP, and they are not controlled by it.
>
> In *FDIC*, the Fifth Circuit found no need for a special relationship between the witness and the party against whom the adverse inference was sought. It quoted the following from *RAD Services Inc. v. Aetna Casualty & Surety Co.*, 808 F. 2d 271, 275 (3rd Cir. 1986):
>
>> First, a witness truly bent on incriminating [a party] would likely offer damaging testimony directly, instead of hoping for an adverse inference from a Fifth Amendment invocation. Second, the trial judge could test the propriety of an invocation to ensure against irrelevant claims of privilege. Third, counsel may argue to the jury concerning the weight which it should afford the invocation and any inferences therefrom.
>
> 45 F.3d at 978. This responds to the thrust of the movers' arguments concerning non-employees.

(Doc. 5682, p. 4). Thus, here, the fact that Bertone is not an employee of BP does not mean that adverse inferences cannot be drawn against it from Bertone's invocation.

This Court has opined that the inferences should be decided on a case-by-case basis, and the *Libutti* factors will be helpful in that effort. However, not *all* of the *Libutti* factors must be met for an inference to be drawn. First, the *Libutti* Court itself stated that its factors were just suggestions. Second, as the Court noted in its February 14 Order, the *FDIC* case is not inconsistent with *Libutti* – even though there was no evidence of control over the invoking

5

witness in that case. The *FDIC* case met only the fourth factor of *Libutti,* and this was sufficient for the Court to hold in the instant case that the *FDIC* case was consistent with *Libutti.* In the end, the question is whether the invocations are trustworthy.

The *Libutti* factors, applied here, are as follows:

**(1) the nature of the relevant relationships** – As noted, this Court has followed the Fifth Circuit's refusal to require a special relationship between the party and the invoking non-party witness. *FDIC,* 45 F.3d at 978. While the relationship between Bertone and BP is not that of an employer and employee, Bertone and BP participated together in operations on the Macondo well, over which BP was in charge, and all employees and their corporate employers were working toward the goal of temporary abandonment.

**(2) the degree of control of the party over the non-party witness** – BP had "control" over Bertone in the sense that it was the operator of the Macondo well and in charge of the operations there, and Bertone was the Chief Engineer and Maintenance Supervisor. BP was certainly in charge, and in control, of all of the temporary abandonment procedures that took place on the *Deepwater Horizon.* Significantly, this factor does not relate to the party's control over the witness's testimony; as the Court noted in *New Hampshire Ins. Co. v. Blue Water Off Shore LLC,* 2009 WL 792530 (S.D. Ala. 2009), this element addresses "the degree of control the party has 'vested in the non-party witness in regard to the key facts and general subject matter of the litigation' and approximates the analysis for admissions of a party opponent under Federal Rule of Evidence 801(d)(2)." *Id.* Since BP and Bertone's employer were involved in the operation of the Macondo well and BP was in charge of the temporary abandonment procedures (which is the general subject matter of the litigation), the control factor weighs in favor of the inference. Of course, it is not essential that this factor be met in order for an adverse inference to be drawn. It was not present in *FDIC,* yet the Court in that case held that the inference was proper.

**(3) the compatibility of the interests of the party and non-party witness in the outcome of the litigation** - According to the *Libutti* Court, "the trial court should evaluate whether the non-party witness is pragmatically a noncaptioned party in interest and whether the assertion of the privilege advances the interests of both the non-party witness and the affected party in the outcome of the litigation." *Id.* Bertone's invocation advances BP's interests, since it prevents Plaintiffs from obtaining Bertone's direct testimony that would likely be damaging to BP.

**(4) the role of the non-party witness in the litigation** - As Transocean's Chief Engineer on the *Deepwater Horizon*, Bertone plays a critical role in this litigation. Bertone's role is significant, as the maintenance of the *Deepwater Horizon* is a central issue in this case.

Under the unique circumstances of this case, in which nineteen witnesses have invoked

their Fifth Amendment rights, the Court would advance the search for the truth by drawing the specific inferences listed below.

**II.    Adverse Inferences to be Drawn Against BP**

**A.    BP ignored that Transocean failed to perform the necessary overdue maintenance on the Deepwater Horizon.**

```
       p. 16
12     Q.   Okay.  Isn't it true that BP was
13  well aware of the many problems that the
14  Deepwater Horizon was experiencing, prior to
15  April 20th, 2010?
16     A.   Same answer.
```

**B.    BP placed time and money over safety.**

```
       p. 38
11     Q. In fact, BP was
12  instructing Transocean employees to drill as
13  fast as they possibly could because BP was
14  behind schedule and over budget on the
15  Deepwater Horizon; isn't that correct?
17     A.   Same answer.

       p. 39
01     Q.   And because it
02  was behind schedule and over budget BP was
03  putting profits over safety of the personnel
04  on this rig; was it not?
06     A.   Same answer.
```