# EXHIBIT 12

# FIFTH AMENDMENT INVOCATIONS - ADVERSE INFERENCES

NAME:            MICAH SANDELL

EMPLOYER:    TRANSOCEAN

TITLE:             CRANE OPERATOR

Micah Sandell was a crane operator employed by Transocean on the *Deepwater Horizon* at the time of the blowout.

**I.     Adverse Inferences to be Drawn against BP:  Application of the *Libutti* Factors**

In its February 14 Order, the Court held that an employment relationship between the invoking witness and the party against whom the inference is to be drawn is not necessary.  The Court rejected BP's argument, holding as follows:

> BP contends that under FDIC, the absence of an employment relationship between the invoking witness and the party against whom the adverse inference is sought remains relevant. It urges that the absence of an employment relationship is clearly an important circumstance courts consider when determining whether to apply adverse inferences. It argues that unlike the witnesses in FDIC, the Transocean and Halliburton employees will benefit from their invocation because the adverse inference will be used to attribute fault to BP rather than their employer. Further, it contends that the adverse inferences drawn from the invocations by the persons with relationships with the loan officer in FDIC were trustworthy. It urges that this quality is lacking for Transocean employees invoking the Fifth because of the adversarial relationship between Transocean and BP, such employees owe no loyalty to BP, and they are not controlled by it.
>
> In *FDIC*, the Fifth Circuit found no need for a special relationship between the witness and the party against whom the adverse inference was sought. It quoted the following from *RAD Services Inc. v. Aetna Casualty & Surety Co.*, 808 F. 2d 271, 275 (3rd Cir. 1986):
>
>> First, a witness truly bent on incriminating [a party] would likely offer damaging testimony directly, instead of hoping for an adverse inference from a Fifth Amendment invocation. Second, the trial judge could test the propriety of an invocation to ensure against irrelevant

1

> claims of privilege. Third, counsel may argue to the jury concerning the weight which it should afford the invocation and any inferences therefrom.
>
> 45 F.3d at 978. This responds to the thrust of the movers' arguments concerning non-employees.

(Doc. 5682, p. 4).  Thus, here, the fact that Sandell is not BP's employee does not mean that adverse inferences cannot be drawn against it from Sandell's invocation.

This Court opined in its February 14 Order that the inferences should be decided on a case-by-case basis, and the *Libutti* factors will be helpful in that effort.  However, not *all* of the *Libutti* factors must be met.  First, the *Libutti* Court itself stated that its factors were just suggestions.  Second, as the Court noted in its February 14 Order, the *FDIC* case is not inconsistent with *Libutti* – even though there was no evidence of control over the invoking witness in that case.  The *FDIC* case met only the fourth factor of *Libutti,* and this was sufficient for the Court to hold that the inference was proper.

The *Libutti* factors, applied here, are as follows:

**(1) the nature of the relevant relationships** – As noted, this Court has followed the Fifth Circuit's refusal to require a special relationship between the party and the invoking non-party witness.  *FDIC v. Fidelity & Deposit Co.,* 45 F.3d 969, 978 (5th Cir. 1995).  In *FDIC*, an adverse inference was permissibly drawn where the "relationship" in question was that of a bank loan officer and a customer of the bank.  As the *Libutti* Court noted, *FDIC* is "a case where the invoking non-party witnesses were neither employees, ex-employees nor members of any of the parties to the litigation. . . ." *Id*. at 123, and yet the *FDIC* Court permitted the inference to be drawn.  Here, the relationship between Sandell and BP is of similar strength.  It is not an employer/employee relationship, but Sandell and BP participated together in operations on the Macondo well, and all employees and their corporate employers were working toward the goal of temporary abandonment.

**(2) the degree of control of the party over the non-party witness** – BP had "control" over Sandell in the sense that it was the operator of the Deepwater Horizon and Sandell was a crane operator on the vessel.  This factor does not relate to the party's control over the witness's testimony; as the Court noted in *New Hampshire Ins. Co. v. Blue Water Off Shore LLC,* 2009 WL 792530 (S.D. Ala. 2009), this element addresses "the degree of control the party has 'vested in the non-party witness in regard to the key facts and general subject matter of the litigation' and approximates the analysis for admissions of a party opponent under Federal Rule of Evidence 801(d)(2)." *Id.*  Since BP and Sandell's employer were involved in the operation of the

Macondo well, which is the general subject matter of the litigation, the control element is met. However, even if it is not, it is not necessary that this element be met in order for an adverse inference to be drawn. It was not met in *FDIC*, yet the Court held in its February 14 Order that *FDIC* was not inconsistent with *Libutti*.

(3) **the compatibility of the interests of the party and non-party witness in the outcome of the litigation** - BP and Sandell have similar and compatible interests; it is in Sandell's interest that all of the defendants succeed in the litigation. According to the *Libutti* Court, "the trial court should evaluate whether the non-party witness is pragmatically a noncaptioned party in interest and whether the assertion of the privilege advances the interests of both the non-party witness and the affected party in the outcome of the litigation." *Id*. BP's interests are advanced by Sandell's invocation, as it prevents Plaintiffs from obtaining direct testimony from him that would likely be more damaging to BP than the inference requested.

(4) **the role of the non-party witness in the litigation** - As the a member of the Transocean rig crew being rushed through drilling operations by BP, Sandell plays a critical role in this litigation.

In the end, the question is whether the inference is trustworthy. The inference against BP from Sandell's invocation advances the search for the truth in this case, in which numerous witnesses have asserted their Fifth Amendment rights. The circumstances of this case render Sandell particularly worthy of belief as to the specific inference identified below and, accordingly, the Court should draw these inferences against BP.

## II.     Inferences Drawn Against BP

**A.     BP urged the Transocean rig crew to hurry up drilling operations on the Macondo well because they were behind schedule and over budget.**

```
      p. 18
14    Q. Isn't it a fact that as far as
15 you're aware of, BP didn't care how much
16 Transocean was behind on maintenance --.
20    Q. -- and, in fact, instructed
21 Transocean to keep going and keep going?
24    A.   Take the Fifth.

      p. 68
02    Q. You understood that there was a
```

03 sense of urgency among the rig crew to finish
04 the Macondo well and move on to the Nile?
07      A.    Take the Fifth.

     p. 68
09      Q. You knew the operations were
10 behind schedule?
13      A. Take the Fifth.

     p. 68
15      Q. You knew the operations were
16 over budget?
19      A. Take the Fifth