# EXHIBIT 13

# FIFTH AMENDMENT INVOCATIONS - ADVERSE INFERENCES

NAME:            ALLEN SERAILE

EMPLOYER:    TRANSOCEAN

TITLE:             ASSISTANT DRILLER

Seraile is a Transocean Assistant Driller who was working on board the *Deepwater Horizon* at the time of the April 20, 2010 blowout.

## I. Adverse Inferences Against Transocean: Application of the *Libutti* Factors

The Court may draw adverse inferences against Transocean from Seraile's invocation of the Fifth Amendment under the four non-exclusive factors suggested by the Second Circuit in *LiButti v. United States*, 107 F.3d 110 (2d Cir. 1997), which this Court adopted in its February 14 Order (Doc. 5682). "Whether these or other circumstances unique to a particular case are considered by the trial court, the overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *LiButti,* 107 F.3d at 124. The *Libutti* factors, as applied here, are as follows:

**(1) the nature of the relevant relationships** – As this Court noted in its Order, the Fifth Circuit has refused to require a special relationship between the party and the invoking non-party witness before drawing an inference from the non-party's invocation. *FDIC v. Fidelity & Deposit Co.,* 45 F.3d 969, 978 (5th Cir. 1995). In *FDIC*, an adverse inference was permissibly drawn where the "relationship" in question was that of a bank loan officer and a customer of the bank. Because Transocean and Seraile are in an employer/employee relationship, the relationship is stronger here than in *FDIC*. As the Court stated in *FDIC*, "the fact of present employment serves primarily to reduce the chance that the employee will falsely claim to have engaged in criminal conduct for which the defendant employer is liable." *Id.* at 978 (citing ROBERT HEIDT, *The Conjurer's Circle--The Fifth Amendment Privilege in Civil Cases*, 91 YALE L.J. 1062, 1119-20 n. 214 (1982)). Adverse inferences may be drawn from the invocation by former employees, also. "Any factors suggesting that a former employee retains some loyalty to his former employer--such as the fact that the employer is paying for his attorney--would serve the same purpose." *Id.*

Transocean argues that this factor is not met with respect to its employees who, like Seraile, have filed suit against it. According to Transocean, "most of the current or former

1

Transocean employees who have invoked the Fifth Amendment were in separate litigation directly adverse to Transocean, concerning the same incident at issue in this case, at the time of their depositions. Their relationship to Transocean is expressly adversarial, and their refusals to testify will not support an adverse inference against Transocean. *See, e.g., United States v. Philip Morris USA Inc.,* 2004 WL 5916865, at *1 (D.D.C. July 23, 2004) ("The relationship between Osdene and Defendant Philip Morris USA is hostile and adverse and therefore would not support the inference that the non-party's invocation of his Fifth Amendment rights promotes the interests of the Defendant.")." (Doc. 5111-1, p. 3.)

The *Philip Morris* decision does not discuss the nature of the relationship in question, so it is not clear what the relationship was in that case or why it was "hostile and adverse." In any event, the existence of an adverse relationship, in itself, is not decisive. For instance, in *Brinks, Inc. v. City of New York,* 717 F.2d 700 (2d Cir. 1983), a case relied on heavily in *Libutti,* the Court held that a jury could draw adverse inferences against a corporate defendant from the invocation of the Fifth Amendment by a former employee of the corporation; this even though the corporation had filed counter claims against the employee.

Transocean's argument suggests that employees like Seraile are disloyal to Transocean and are, instead, motivated to incriminate Transocean in order to advance their claims against it. Notably, the Court in the instant case, in its discussion of the defendants' claims that invocations by non-employees cannot result in adverse inference against them, stated as follows:

> In *FDIC*, the Fifth Circuit found no need for a special relationship between the witness and the party against whom the adverse inference was sought. It quoted the following from *RAD Services Inc. v. Aetna Casualty & Surety Co.*, 808 F. 2d 271, 275 (3rd Cir. 1986):
>
>> First, a witness truly bent on incriminating [a party] would likely offer damaging testimony directly, instead of hoping for an adverse inference from a Fifth Amendment invocation. Second, the trial judge could test the propriety of an invocation to ensure against irrelevant claims of privilege. Third, counsel may argue to the jury concerning the weight which it should afford the invocation and any inferences therefrom.
>
> 45 F.3d at 978. This responds to the thrust of the movers' arguments concerning non-employees.

(Doc. 5682, p. 4.) The same argument applies to Seraile's invocation. If he were "truly bent" on incriminating Transocean to advance his personal injury case against it, he would offer damaging

2

testimony directly, instead of hoping that the Court would draw an adverse inference against Transocean based on his invocation.

(2) **the degree of control of the party over the non-party witness** – Transocean exercised control over Seraile as its employee. Transocean argues that it did not have control over its employees who had filed suit against it at the time of their depositions. As the Court noted in *New Hampshire Ins. Co. v. Blue Water Off Shore LLC,* 2009 WL 792530 (S.D. Ala. 2009), the "control" element deals not with the party's ability to control the witness at the time of his testimony, but "the degree of control the party has 'vested in the non-party witness in regard to the key facts and general subject matter of the litigation' and approximates the analysis for admissions of a party opponent under Federal Rule of Evidence 801(d)(2)." *Id.* (quoting *Libutti*). Thus, Transocean's lack of control over Seraile at the time of his deposition is not the question. Moreover, any statement by Seraile would qualify as an admission by Transocean under the Federal Rules of Evidence.

(3) **the compatibility of the interests of the party and non-party witness in the outcome of the litigation** - With respect to this factor, the *LiButti* Court directed that "the trial court should evaluate whether the non-party witness is pragmatically a noncaptioned party in interest and whether the assertion of the privilege advances the interests of both the non-party witness and the affected party in the outcome of the litigation." *Libutti,* 107 F.3d at 123. Seraile and Transocean have similar interests in that it is in Seraile's penal interest that Transocean succeed in the litigation, particularly with respect to any actions on his part. Seraile's invocation advances Transocean's interests to the extent that it prevents Plaintiffs from obtaining direct testimony from him that would likely be more damaging to Transocean than the inferences requested. Seraile and Transocean share an incentive that Transocean be absolved of liability with respect to any actions on Seraile's part.

(4) **the role of the non-party witness in the litigation** – As an assistant driller on the Deepwater Horizon on the night of the blowout, Seraile plays a critical role in this litigation. The failure to monitor the well is a key issue in this case, as is Transocean's failure to maintain the Deepwater Horizon. Seraile has unique knowledge on both of those issues. As the Court noted in its Order, this is the one *Libutti* factor that was present in *FDIC,* and it is also met here.

In the end, the question is one of trustworthiness. An inference against BP from Seraile's invocation advances the search for the truth in this case. Numerous witnesses have asserted their Fifth Amendment rights, leaving Plaintiffs without direct testimony on several key issues. The circumstances of this case render Seraile particularly worthy of belief as to the specific inference identified below and, accordingly, this Court should draw this inference against Transocean.

## II. Inferences to be Drawn Against Transocean

**A.     Transocean's drilling crew failed to properly monitor the well.**

     **p. 52**
02    Q. Isn't it true that the
03 OIM, the driller and the assistant driller did
04 not properly monitor the Macondo well during the
05 hour before mud and hydrocarbons hit the rig
06 floor?
08    A. Same answer.

     **p. 56**
21    Q. You'd agree with me, wouldn't you, that
22 the drilling crew has primary responsibility for
23 kick detection?
24    A. Same answer.

     **p. 61**
01    Q. And it was the drilling crew's
02 responsibility to monitor while displacing the
03 riser to seawater; is that right?
04    A. Same answer.
05    Q. And one of the responsibilities is to
06 shut in the well as quickly as possible if a kick
07 is indicated or suspected; isn't that right?
08    A. Same answer.

     **p. 66**
15    Q. And the drilling crew is responsible for
16 monitoring the returns during the negative test;
17 isn't that right?
18    A. Same answer.
19    Q. And the drilling crew is also responsible
20 for monitoring the line to the cement manifold
21 and choke and kill lines; isn't that right?
22    A. Same answer.

     **p. 116**
10    Q. A driller must shut in a well as quickly

11 as possible if a kick is indicated, correct?
12     A.  Same answer.
13     Q.  And that's true even if a kick is only
14 suspected?
15     A.  Same answer.