UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf Of Mexico, on April 20, 2010 | MDL No. 2179<br><br>SECTION: J |
| This document applies to:<br>ALL CASES & 2-10-cv-2771 | JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

## MOTION TO STRIKE PORTIONS OF EXPERT REPORTS AND DEPOSITIONS REFERENCING EXCLUDED JIT REPORT AND JIT TESTIMONY

Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling, Inc., and Transocean Deepwater, Inc. (hereinafter collectively referred to as "Transocean"), pursuant to the Court's Order (Dkt. 5448) of January 26, 2012, as clarified by the Court's Order (Dkt. 5572), dated February 2, 2012, and pursuant to this Court's Order (Dkt. 5618), dated February 8, 2012, move to strike the following references and opinions of the following experts, as contained in the expert's reports and in the deposition testimony of the experts, as set forth hereinafter:

1. The Court ruled that the Report of the Joint Investigation Team (JIT), including both Volumes I and II, is inadmissible. Consequently, the Court ruled (Dkt. 5448, p. 3):

> Thus, expert reports and testimony are subject to the following: (1) expert reports (or portions thereof) solely or substantially relying on marine casualty investigation reports will be stricken; and (2) references or citations to such reports within otherwise admissible reports will be stricken.

2.     Because the foregoing reports are inadmissible, and because any expert report and/or testimony that references or cites to the JIT Report or testimony is inadmissible, those portions of the expert reports and deposition testimony of the following experts should be stricken:

**A. Calvin Barnhill:**  P. 697, l. 14 – p. 710, l. 16 of the deposition of Calvin Barnhill. Mr. Barnhill was asked on cross-examination about the testimony before the JIT of Jimmy Harrell, the OIM of the Deepwater Horizon. Mr. Harrell's JIT testimony was quoted, and Mr. Barnhill was asked numerous questions based on that inadmissible JIT testimony.

(See Exhibit A attached hereto).

**B. J.R. Batte:**  On page 19 of the report of J.R. Batte, the sentence on page 19 stating, "The DPO, Andrea Fleytas, who was on watch on the vessel's bridge as the emergency evolved, had not been trained in the use of the vessel's safety monitoring equipment," and footnote 38 to that statement. During his deposition, Batte testified that his statement that Andrea Fleytas did not have any training on the safety monitoring equipment was based on her JIT testimony (*see* Batte Deposition at 237:18-239:1). The sources Mr. Batte provides in footnote 38 show only that she was not on the Kongsberg training lists; they do not support an assertion that she had received no training whatsoever. Batte relies only on JIT testimony for his assertion that Andrea Fleytas had not been trained in the use of the vessel's safety monitoring equipment.

On page 19, the statement, "[Andrea Fleytas] had never received training for a scenario in which there was contemporaneous activation of numerous detection zone alarms being triggered," and footnote 39 to that statement, which references JIT testimony. See Letter to Counsel from Donald K. Haycraft, dated November 11, 2011.

On page 25, the statement, "The DPO on duty on April 20, 2010 (Andrea Fleytas) had not been trained to push the Emergency Disconnect button," and footnote 60 to that statement, which references JIT testimony. See Letter to Counsel from Donald K. Haycraft, dated November 11, 2011.

On page 25, the statement, "Captain Kuchta was not trained to activate the ESD," and footnote 63 to that statement, which references JIT testimony

On page 29, the statement, "The DPO had not been trained on when to activate the ESD, and specifically, did not know if the detection of

2

|  |  |
|---|---|
|  | combustible gas in the engine room merited activating the ESD," and footnote 82 to that statement, which references JIT testimony. |
|  | The following portions of Mr. Batte's deposition testimony should be struck because those portions rely on JIT testimony:  P. 149, l. 2 – p. 150, l. 24; p. 232, l. 16 – p. 233, l. 23; p. 237, l. 9 – p. 239, l. 1; p. 269, l. 18 – p. 275, l. 14; p. 276, l. 5 – p. 277, l. 23; p. 278, l. 7 – p. 282, l. 25; p. 285, l. 10 – l. 21; p. 286, l. 5 – l. 11; p. 287, l. 1 – l. 11. |
|  | (See Exhibit B attached hereto). |
| **C. David Bolado** | On page 34 of the report, the statements beginning, "I note that the Joint Investigation Taskforce (JIT) …" and continuing to the end of the page, together with the footnotes 56 and 57 to those statements, which reference the JIT Report.  Additionally, the statement at p. 39, referencing the JIT Report in footnote 62. |
|  | (See Exhibit C attached hereto). |
| **D. David G. Calvert** | The statement on page 9 of Calvert's report, "Lee Lambert of BP and Vincent Tabler, a Halliburton cementer, personally observed 5.5 bbls of flow back, and noted that the flow was a pencil stream that eventually stopped," and footnote 23, which references the JIT Report. |
|  | (See Exhibit D, attached hereto.) |
| **E. Ronald Crook** | Section 7.2.4, pp. 37 – 39 and footnotes 112 – 114 and footnotes 116 – 119  of the Crook Report describes the content of the OTC Report and bases numerous opinions on the OTC report, as well as the excluded testimony of Greg Garrison.  Footnote 125 (p. 40)(quoting Garrison testimony for statement that turbulent flow is not possible in GOM deepwater wells).  Footnote 128 (p. 42) quoting the Garrison testimony to support the statement that bottoms-up circulation is not necessary or even possible in many wells),  Footnote, 168 (p. 53), and footnote 185 (p. 58) quoting Garrison testimony to support the statements that a stable foam cement across even a few feet of annulus would be sufficient).  Footnote 200 (p. 63), which quotes the deposition testimony of Greg Garrison to support the statement that there is no industry practice that requires BP to wait 48 hours after running the cement before beginning negative pressure test.  Footnote 202 (p. 64), quoting Garrison testimony to support the statement that operator gets a UCA compressive strength test  from the operator and can use the results as a guideline.  The footnotes and the statements based on those footnotes should be excluded. |
|  | (See Exhibit E, attached hereto). |

| | |
|---|---|
| **F. Paul Dias** | The statement on page 40 of the Dias report that, "Once again, the DNV forensic examination showed insufficient maintenance of important control pod components by Transocean." |
| | (See Exhibit F, attached hereto). |
| **G. Robert Grace** | The following portions of Mr. Grace's deposition testimony should be struck because those portions rely on Jimmy Harrell's JIT testimony (see, e.g., p. 341, l. 23 – p. 342, p. 2: "Q.    What do you base your testimony here today on that Mr. Harrell determined that the first test was a success?  A.  The – he testified – he testified in the Marine Board[.]"):  p. 93, l. 25 – p. 94, l. 19;  p. 100, l. 11 – p.101, l. 3;  p. 158, l. 23 – p. 163, l. 1;  p. 212, l. 14 – p. 213, l. 3;  p. 293, l. 5 – p. 295, l. 1;  p. 325, l. 10 – p. 326, l. 20; p. 331, l. 15 – p. 332, l. 4;  p. 335, l. 18 – p. 336, l. 10; p. 339, l. 23 – p. 344, l. 17.  In addition, the foregoing deposition portions should be struck because Mr. Grace's expert report does not contain the opinions expressed in his deposition testimony.  His report does not mention Mr. Harrell's views on the success or failure of the negative pressure test, and his opinions in his expert report are not based on those views. |
| | (See Exhibit G, attached hereto). |
| **H. Sam Lewis** | The statement on page 14 of the Lewis expert report, "BP decided to stop drilling at a total depth of 18,360 ft. – right in the middle of the main hydrocarbon level," and footnote 20, which references the JIT Report as the basis for the statement.  The statement on page 15 of the Lewis expert report, "BP reached the volume of mud to be circulated prior to cementing," and footnote 25 thereto, referencing the JIT Report as the basis for the statement.  The statements on page 43, beginning with "I also note that the JIT Report concluded," and continuing to the footnote 108, should struck, as well as footnotes 107 and 108, which form the basis for the statements.  The statements on page 45 of the Lewis expert report beginning with the statement, "I also note that the JIT Report concluded," and continuing to footnote 112, which should be struck, as well as footnote 112a, which references the JIT Report as the basis for the statements. |
| | (See Exhibit H, attached hereto). |
| **I. Greg McCormack** | The statement on page 25 of the McCormack report that is supported by footnote 96, which is a reference to the JIT Report on which he relied for the statement. |
| | (See Exhibit I, attached hereto). |
| **J. Andrew Mitchell** | Footnote 52 of p. 18 of the report of Captain Andrew Mitchell, which references the deposition testimony of David Young at pages 196-197 |

4

of that deposition. The testimony being referenced is, in fact, an attorney quoting the JIT testimony of David Young. (See Exhibit J-1, attached hereto). Footnote 53 on p. 18 of the Mitchell report, and the accompanying text, which references the testimony of Jimmy Harrell at the JIT.

The following portions of Captain Mitchell's deposition testimony should also be struck because those portions rely on JIT testimony: 249:16-254:13; 255:3-257:4; 260:16-24.

(See Exhibit J, attached hereto).

**K. Jeff Wolfe** — The following portions of the deposition of designated expert, Jeff Wolfe, refers to and is based upon the JIT report and testimony: P. 196, l. 1 – l. 14; p. 199, l. 13 – p. 201, l. 19; p. 233, l. 10 – p. 235, l. 16; p. 236, l.1 – l. 11.

(See Exhibit K, attached hereto).

**L. Frederick Beck** — Footnote 158, p. 105 of the Expert Report of Frederick Beck and the accompanying text; footnote 167, p. 107, and the accompanying text on pp. 106-107, which references and relies on the JIT testimony of Joseph Keith. Footnote 142, p. 46 of the Rebuttal Report of Frederick Beck, which relies on JIT testimony of Joseph Keith.

(See Exhibit L, attached hereto).

**M. George Medley** — Footnotes 8, 9, 10, and 11, p. 2 of the Rebuttal Report of George Medley, which relies on JIT testimony of Joseph Keith. The following portions of the deposition of George Medley, which rely on the JIT testimony of Jimmy Harrell: p. 224, l. 18 – p. 230, l. 7; p. 233, l. 13 – p. 234, l. 5; p. 235, l. 4 – p 236, l. 25; p. 263, l. 10 – p. 263, l. 18; p. 267, l. 6 – p. 267, l. 11.

(See Exhibit M, attached hereto).

**N. Kris Ravi** — The following references to the excluded testimony of Greg Garrison and the accompanying text should be struck from the rebuttal report of Dr. Kris Ravi: footnote 7, p. 4; footnote 65, p. 18; footnote 70, p. 19; footnote 81, p. 20; footnotes 83 and 84, p. 21.

(See Exhibit N, attached hereto).

Respectfully submitted,

By: /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com
rachel.clingman@sutherland.com
kent.sullivan@sutherland.com

By: /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com

-and-

By: /s/ Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Richard J. Hymel (Louisiana, No. 20230)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com, rjh@preisroy.com

-and-

By: /s/ Brad D. Brian
Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 54933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com, allen.katz@mto.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

Daniel O. Goforth (Texas, No. 08064000)
Goforth Geren Easterling LLP
4900 Woodway, Suite 750
Houston, Texas 77056
Telephone: (713) 650-0022
Facsimile: (713) 650-1669
Email: dangoforth@goforthlaw.com

*Counsel for Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc. and Transocean Deepwater Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2012, I electronically filed the foregoing with the Court's CM/ECF system and service on all counsel by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice.

/s/  Kerry J. Miller