UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179<br><br>SECTION: J |
| APPLIES TO: *All Cases* | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

## ORDER

[Regarding Neutral Expert Forensic Examination and Report Regarding Halliburton Computers]

Considering the Court's Order of January 20, 2012 (Record Doc. No. 5307) granting in part BP Exploration & Production, Inc.'s ("BP") December 5, 2011 Motion for Spoliation Sanctions (Record Doc. 4799) for the purpose of providing Halliburton Energy Services' ("Halliburton") post incident proprietary Displace 3D modeling, considering BP and Halliburton's (the "Parties") discussions following submission of a proposed protocol and proposed engagement agreement (with attachment), and considering the conference held between the Parties, the Proposed Neutral Expert, and Special Master Captain Englebert;

IT IS ORDERED that the Protocol attached as Exhibit "A" to this Order is HEREBY APPROVED.

IT IS FURTHER ORDERED that the Elysium Digital Engagement Agreement (the "Elysium Agreement") attached as Exhibit "B" to this Order is HEREBY APPROVED.

IT IS FURTHER ORDERED (1) that consistent with the terms of this Court's Orders the examination (the "Forensic Examination") of (a.) the computer bearing Bates number ENAUS00061348 and (b.) two (2) drive images for another Halliburton contact, David Bedford,

1

bearing Bates numbers ENAUS00066583 and APMYJUL1101003L (collectively, the "Halliburton Computers") contemplated to be performed by Elysium Digital, LLC ("Elysium") under the terms of Exhibit "B" shall be and is conducted under this Court's auspices; and (2) the Court intends that, as a disinterested forensic examiner, Elysium, shall have complete and unfettered discretion to determine the timing and extent to which the further Forensic Examination described in Exhibit "A" is accomplished, consistent with this Court's orders and the Elysium Agreement. To the extent that any other Halliburton Computers are identified as properly being subject to the same Forensic Examination, such examination shall be done under the same terms and conditions.

IT IS FURTHER ORDERED that the Court acknowledges Halliburton's disclosure that Halliburton may provide (1) additional information in the form of prior forensic examinations performed by Halliburton; and/or (2) additional assistance to Elysium as is warranted in the form of further proprietary information, software, advice, or other access mechanisms, in furtherance of the Forensic Examination. Such assistance will be provided through and with the assistance of Special Master Captain Englebert.

IT IS FURTHER ORDERED that this Court finds that Elysium, nor any other party involved with the Forensic Examination contemplated herein, shall be in violation of any preservation of evidence obligation as a result of such participation in the Forensic Examination.

THUS DONE AND SIGNED, this 27th day of February, 2012, at New Orleans, Louisiana

SALLY SHUSHAN
UNITED STATES MAGISTRATE JUDGE

CONFIDENTIAL
PROVIDED PURSUANT TO COURT ORDER (R. DOC. 5307)

**PROTOCOL FOR NEUTRAL EXPERT FORENSIC EXAMINATION AND REPORT REGARDING HALLIBURTON COMPUTERS PURSUANT TO THE COURT'S JANUARY 20, 2012 ORDER**

(1) As required by Magistrate Judge Shushan's January 20, 2012 Order (the "January 20, 2012 Order") (R. Doc. 5307), Halliburton Energy Services ("Halliburton") produced Mark Savery's computer (bearing Bates No. ENAUS00061348) (the "Device") to Special Master Capt. Englebert (USCG Ret.) on February 2, 2012. Halliburton has also produced two drive images for another Halliburton contact, David Bedford (bearing Bates Nos. ENAUS00066583 and APMYJUL1101003L) to Capt. Englebert on February 3, 2012.

(2) Consistent with the January 20, 2012 Order, BP Exploration & Production, Inc. ("BP") and Halliburton (collectively, the "Parties") are entering into an agreement (the "Agreement") for services with Paul Mattal and Elysium Digital, LLC ("Elysium"). The Agreement will be performed by Mr. Mattal and his staff; Mr. Mattal will serve as a neutral expert (the "Neutral Expert") under the oversight and supervision of Capt. Englebert. Pursuant to the Agreement, Elysium will examine the Device and the two drive images for David Bedford, pursuant to the January 20, 2012 Order.

(3) With respect to communications regarding the examination by the Neutral Expert:

   a. Capt. Englebert may have discussions with the Parties and the Neutral Expert and/or, at her discretion, have *ex parte* discussions with either of the Parties or the Neutral Expert regarding the substance of the examination.

   b. The Neutral Expert may not have *ex parte* discussions with one of the Parties regarding the substance of the examination without obtaining the consent of the other Party.

(4) Capt. Englebert will coordinate the secure transport of the Device and Bedford drive images to the forensic examination laboratory of the Neutral Expert. The nature of the transportation, as well as the chain of evidence documentation, will be directed by Capt. Englebert at her discretion, with the assistance of Elysium.

(5) Capt. Englebert will also coordinate the provision of any other related materials to Elysium, including (a) any additional information in the form of any prior, related forensic examinations performed by Halliburton; and/or (b) any additional, warranted assistance Halliburton may provide to Elysium, in the form of further proprietary information, software, advice, or other access mechanisms, in furtherance of the Forensic Examination.

(6) Within five (5) business days of receiving the Device and Bedford drive images, under supervision of the Neutral Expert, Elysium will create two bit-by-bit full forensic images of the Device, and copies of the received forensic images.

(7) Under supervision of the Neutral Expert, Elysium will subsequently conduct an examination of the copy of the Device and Bedford drive images (the "Examination") for the following purposes:

   a. To identify and retrieve any files, logs, data, or information that relate to or

Exhibit A

CONFIDENTIAL
PROVIDED PURSUANT TO COURT ORDER (R. DOC. 5307)

were generated by the "Displace 3D" modeling program, including any related and/or previously deleted files or data;

b.  To investigate the registry or other files, logs, data, or information that would indicate or reflect any usage of the "Displace 3D" modeling program, including the creation, review, revision, or deletion of files; and

c.  To investigate any other files, logs, data, unallocated space, or information that would reveal the timing, circumstances, scope, and/or nature of the deletion of any data or files that relate to or were generated by the "Displace 3D" modeling program.

(8) After Elysium has conducted a preliminary examination of the Devices pursuant to Paragraph (7), Capt. Englebert, Elysium, and the Parties will hold a status conference via telephone to discuss any files, logs, data, or information (including file fragments and slack space) identified by Elysium that may relate to the "Displace 3D" modeling program and the files that were the subject of the Court's January 20, 2012 Order. The purpose of the status conference is to determine which, if any, of the identified files, data or data fragments should be investigated further, as well as determine what information should be the subject of the final report of the Neutral Expert.

(9) Because of the proprietary nature of Halliburton's Displace 3D software, the Neutral Expert may request information from Halliburton needed to identify and locate relevant materials during the Examination. Halliburton has indicated its willingness to provide such reasonable assistance as is necessary to attain the specified goals of the Examination; such assistance will be coordinated through Capt. Englebert.

(10) Capt. Englebert may, at her discretion, attend any or all of the Examination.

(11) Within ten (10) business days of completing the Examination, the Neutral Expert will provide a written report of his findings (the "Report") to Capt. Englebert, with copies to the Parties' designated contact persons, via email.

(12) Any documents, files, data, or information identified or recovered by the Neutral Expert that relate to the "Displace 3D" modeling program, as well as those files that were the subject of the Court's January 20, 2012 Order, will be produced to Capt. Englebert and the Parties concomitantly with the Report provided to Capt. Englebert and the Parties. Such documents, files, data, or information will be accompanied by information indicating the history of such documents, files, data, or information, to the extent that such information is available.[1] If these data are large, they will be loaded onto Truecrypt-encrypted USB hard drives, copies of which will be provided to Capt. Englebert and each of the Parties. To the extent that any documents, data, or information are identified for production, Elysium will confer with Capt. Englebert and the Parties to determine the appropriate file naming and/or

---

[1] E.g., "found no files, no evidence of deletion;" "all files deleted on [x] date;" "[identified] files deleted on [x] date, but recovered and indexed as [{y} files];" etc.

CONFIDENTIAL
PROVIDED PURSUANT TO COURT ORDER (R. DOC. 5307)

Bates Numbering convention for such production.

(13) The Neutral Expert will securely return the Device, forensic copies, any hardware or software purchased for the Examination, and any other materials or information related to the engagement to Capt. Englebert within thirty (30) calendar days after conclusion of the Examination, unless otherwise directed by Capt. Englebert or ordered by the Court. Any copies of files, logs, data, or information related to the Examination that remains in the possession of the Neutral Expert shall be deleted or destroyed within thirty (30) after the completion of the Examination; certification of such destruction shall be provided to Capt. Englebert.

(14) To the extent that any other Halliburton devices or images are identified by the Parties to be similarly examined, they will also be subject to this Protocol. If additional devices or media are to be examined, this may affect the schedule and Protocol; in that case, the Neutral Expert, Capt. Englebert, and the parties will together determine reasonable adjustments to the Protocol and a reasonable new timetable.

CONFIDENTIAL
PROVIDED PURSUANT TO COURT ORDER (R. DOC. 5307)

## Engagement Agreement for Computer Forensic Services by Elysium Digital Pursuant to the Court's January 20, 2012 Order

In this matter, BP Exploration & Production, Inc. ("BP") and Halliburton Energy Services ("Halliburton") (collectively, the "Parties") agree to engage Elysium Digital, LLC, its agents, and contractors (collectively "Elysium") as a Neutral Expert, as required by Magistrate Judge Shushan's January 20, 2012 Order (R. Doc. 5307), for computer forensic imaging and analysis in the *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 matter (the "Engagement").

To avoid any confusion or misunderstanding concerning the retention of Elysium's services, charges, and billing, this agreement (the "Agreement") shall confirm the terms of the Engagement by the Parties. This Agreement shall also confirm Special Master Capt. Suzanne E. Englebert's oversight, supervision, and coordination of the Engagement in her role as agent for the U.S. District Court of Louisiana on the Deepwater Horizon Case as court appointed Special Master.

### SCOPE OF ENGAGEMENT:

The Scope of Engagement, including the role of Capt. Englebert's oversight, supervision, and coordination, is detailed in the accompanying Protocol for Neutral Expert Forensic Examination and Report Regarding Halliburton Computers Pursuant to the Court's January 20, 2012 Order. It is expected that the consultants at Elysium that will work on this project are: Paul Mattal (lead), Jakob Wahlberg, and Mark Antalik.

### PAYMENT:

Elysium will invoice the Parties simultaneously on a monthly basis for all services rendered and expenses incurred. All engagement costs will be shared equally by BP and Halliburton, where BP will be responsible for making full payment to Elysium of its invoices and Halliburton will reimburse BP for one-half of each such payment. Elysium will charge for such services and expenses in accord with the "Elysium Digital Billing Rates and Policies for Engagement" schedule attached as Exhibit A. Elysium shall use its best judgment as to which consultant(s) shall perform services related to the Engagement.

Each invoice will include the cost of services and expenses not billed prior to that invoice. Elysium's invoices will be due and payable within sixty (60) days, and if such invoices are not paid within sixty (60) days, the Parties agree to pay a late charge of 1.5% per month, compounded monthly (or if the maximum allowed by law is less, that amount) on the outstanding balance. The Parties shall be equally responsible for all collection costs, including attorneys' fees. If any Party disagrees with any item on a given invoice, such Party must notify Elysium in writing, setting forth specific objections, within seven (7) days of receipt of the invoice. Elysium also may raise the issue of any untimely payments with Capt. Englebert for resolution. In the event that an invoiced amount is not paid within sixty (60) days, Elysium also reserves the right, and the Parties and Capt. Englebert agree that Elysium has the right, to suspend all work on the Engagement until all amounts owed to Elysium on the Engagement are paid in full.

Should Elysium's Billing Rates change during the Engagement, Elysium will provide the Parties with 30 days' advance written notice before invoicing at the revised rates. Elysium reviews its rates each spring, with any revisions typically occurring effective the following July 1.

If Elysium determines it is necessary to purchase hardware or software to complete the Engagement, the Parties shall pay for procurement of such items. The purchase of any such items over $1,000 will require

Elysium Digital Engagement Agreement, p. 1

Exhibit B

CONFIDENTIAL
PROVIDED PURSUANT TO COURT ORDER (R. DOC. 5307)

the Parties' prior written approval, where written approval can be made by electronic mail. For the purchase of such items or any other purchases necessary for the Engagement, the Parties shall also pay all sales and other taxes, federal, state or otherwise (however designated) that may be imposed. At the conclusion of the Engagement and if all invoices have been paid, Elysium will deliver any such purchased hardware or software to Capt. Englebert.

Elysium generally performs Engagement services during regular working hours. Elysium understands that in certain circumstances, it may be desired that Elysium perform Engagement consulting services after the conclusion of regular working hours (7 am – 7 pm, Eastern) or on weekends and holidays (collectively, "Evening/Weekend Hours"). If Elysium agrees and is able to provide Engagement services during Evening/Weekend Hours, Elysium reserves the right to charge a 100% premium in addition to its regular fees for all Engagement services performed during the Evening/Weekend Hours' time period. Elysium shall notify the Parties in advance of performing any Engagement services during the Evening/Weekend Hours rate period, and shall also notify the Parties of the deadline for notifying Elysium not to perform Engagement services during such rate period. This premium shall not apply to Engagement services which consist of time expended by experts either testifying or performing work directly preparing for such testimony.

Elysium acknowledges that all materials and information disclosed to it by the Parties (except for any materials and information which are or become generally known without any wrongful act by Elysium), and the work Elysium provides hereunder to the Parties, are confidential and proprietary, and Elysium agrees to abide by all reasonable restrictions placed by the Parties on the dissemination of such materials and information. In the event that Elysium is served with a subpoena or other legal process requesting the disclosure of such confidential materials or information, and unless prohibited by the operation of law, Elysium will promptly notify the Parties of same, in writing, prior to the disclosure of such confidential materials or information.

The services to be provided to the Parties by Elysium, all related communications, and all written materials prepared by or at the direction of Capt. Englebert in connection with those services are intended in every respect to be confidential, and protected as applicable under state or federal law. By providing information to Elysium in connection with its performance of the services outlined in this Agreement, Capt. Englebert and the Parties do not waive and do not intend to waive any confidentiality applicable to such information. Elysium agrees not to disclose any of the confidential information provided pursuant to this Agreement to third parties without the express written permission of Capt. Englebert or the Parties, except as required by law.

The Parties acknowledge that Elysium owns certain software tools that may be used in connection with the Engagement. In its sole discretion, Elysium also may create new software or software tools for use in connection with the Engagement. All such software or software tool creations shall remain Elysium's sole and exclusive property. The Parties acknowledge that neither they nor any other person or entity shall have any interest whatsoever in any such creation, and the Parties agree to execute whatever further documents are necessary to preserve and to protect Elysium's rights in such property. Notwithstanding the above, Elysium and the Parties further agree that any data, information or analysis derived through use of such software or software tool creations in connection with the Engagement shall be the property of the Parties.

The Parties acknowledge that Elysium cannot guarantee a successful result in its technical consulting services. The Parties also acknowledge that their undertaking to compensate Elysium for its services and expenses is not dependent on the content of any affidavit Elysium may file, the content of any testimony or report that Elysium may provide, or the outcome in any litigation or dispute resolution method.

Elysium Digital Engagement Agreement, p. 2

CONFIDENTIAL
PROVIDED PURSUANT TO COURT ORDER (R. DOC. 5307)

The Parties also acknowledge that Elysium's primary business is to perform technical consulting services on behalf of a large number of law firms and other entities. The Parties understand and agree that Elysium may have performed, may be performing, or may perform in the future such services on behalf of a law firm, person or other entity involved in the Engagement, including one involved therein in a capacity adverse to either Party. Notwithstanding the above, Elysium represents that, to the best of its knowledge, unless otherwise disclosed to the Parties, it has not performed, is not now performing, and will not perform technical consulting services concerning the Engagement and/or the events that directly gave rise to the Engagement on behalf of any law firm, person or entity other than the Parties. Elysium also represents that it will comply with the terms of any protective order or confidentiality agreement Elysium has entered into or will enter into in connection with the Engagement.

The Parties expressly authorize Elysium to review and process all data, (including but not limited to any specifications, trade secrets, designs, plans, documentation, employee/personnel information, medical and health-related information, or other information), media, and other materials provided to Elysium under this Agreement. The Parties acknowledge and agree that Elysium's review procedures may include copying and storing electronic data, media, and other materials supplied by the Parties onto Elysium's computer networks. The Parties acknowledge that the review and assessment of electronic data and/or the attempted recovery or reconstruction of electronic data are inherently dangerous to both the electronic data itself and/or to the electronic media on which it resides. The Parties therefore understand and agree that Elysium neither provides nor makes any warranty regarding electronic data assessment, location, discovery and/or recovery, and that the process of storing, reviewing, assessing, locating, discovering and/or recovering any such electronic data may result in the complete or partial irrecoverable loss of such electronic data, the electronic media on which it resides, and/or the computer hardware and/or software associated with it, and agrees that Elysium shall have no liability with regard to any such loss.

Elysium warrants that its services will be performed in a professional and workmanlike manner. For any breach of such warranty, the Parties' sole and exclusive remedy, and Elysium's entire liability, shall be the re-performance of the non-conforming services. Elysium shall have no liability to the Parties for indirect, consequential, incidental, special or punitive damages of any kind. In no event shall Elysium be liable to the Parties for any amount exceeding the total fees paid by the Parties to Elysium under this Agreement. Elysium is not a law firm or a provider of legal services, and it thus is not responsible for ensuring that its services provided under this Engagement comply with any applicable legal rules or procedures. Elysium makes no representation or warranty that its work product, including but not limited to any expert reports or testimony, will be admissible as evidence or that such work product complies with any applicable rules of the pertinent court or administrative entity.

This Agreement shall be governed by and construed under the laws of the Commonwealth of Massachusetts. Except as stated below, if a dispute arises between Elysium and the Parties out of or relating to Elysium's performance under this Agreement, or any breach of this Agreement by Elysium or the Parties (or regarding the relationship between Elysium and the Parties before, during or after the term of this Agreement), and if the dispute cannot be settled through negotiation, Elysium and the Parties agree first to try in good faith to settle the dispute by mediation administered by a mutually acceptable mediator. If mediation does not resolve the matter, any such dispute shall be arbitrated through the American Arbitration Association ("AAA") and according to AAA Commercial Arbitration Rules. The sole jurisdiction and venue for any such dispute is the Commonwealth of Massachusetts, County of Suffolk. The Parties assent to the jurisdiction of the Commonwealth of Massachusetts for any dispute arising out of or relating to this Agreement. The terms and procedures of this dispute resolution paragraph, including those concerning mediation, shall not govern collection actions and claims for non-payment of fees, or a claim of copyright,

Elysium Digital Engagement Agreement, p. 3

CONFIDENTIAL
PROVIDED PURSUANT TO COURT ORDER (R. DOC. 5307)

trademark or patent infringement. The terms and procedures of this dispute resolution paragraph shall not govern any dispute or disagreement arising with regard to the interpretation or application of the Protocol for Neutral Expert Forensic Examination and Report Regarding Halliburton Computers Pursuant to the Court's January 20, 2012 Order. Disputes regarding the Protocol for Neutral Expert Forensic Examination and Report Regarding Halliburton Computers Pursuant to the Court's January 20, 2012 Order shall in the first instance be resolved by Capt. Englebert, with the Parties reserving the right to have such disputes resolved by Judge Shushan.

The Parties may terminate this Agreement at any time upon written notice to Elysium. Elysium may terminate this Agreement upon thirty days' prior written notice to the Parties and Capt. Englebert. Notwithstanding the above, Elysium also reserves the right to terminate performance of its services immediately if, in Elysium's sole, reasonable judgment: (1) such performance would create or constitute a conflict of interest with regard to Elysium's performance of services on behalf of another person or entity and such conflict was not caused by an action taken by Elysium subsequent to entry into this Engagement, or (2) the scope of the Engagement expands, or is likely to expand, to include the following activities: (a) initiation of a criminal investigation or the filing of criminal charges against any party in connection with the subject matter of the Engagement; (b) review, analysis or production of pornographic material, including but not limited to child pornography; (c) employee/personnel information, medical and health-related information; (d) allegations of medical malpractice; or (e) domestic disputes and family law matters, including but not limited to allegations of abuse, adultery, illegitimacy, or child-custody disputes. Elysium shall be excused from delays in performance, or failure to perform its obligations, to the extent that such delays or such failure result from an act of God or from causes beyond the reasonable control of Elysium, or as a result of the Parties' failure to carry out its obligations in whole or in part.

This Agreement is the complete and exclusive Agreement between Elysium and the Parties for this Engagement, with the express understanding that the scope of this Engagement is set forth in the accompanying Protocol for Neutral Expert Forensic Examination and Report Regarding Halliburton Computers Pursuant to the Court's January 20, 2012 Order. This Agreement supersedes and merges all prior proposals, understandings and agreements (oral or written) between Elysium and the Parties, as relates to the subject matter of the Engagement and this Agreement. This Agreement cannot be modified except in writing; any such modification must be signed by Elysium and both Parties and approved by Capt. Englebert before given effect.

## INDEMNIFICATION:

The Parties acknowledge that in entering into the Engagement, the Parties are asking Elysium to perform services which may or may not implicate the intellectual-property rights of third parties other than Halliburton Energy Services. In consideration of Elysium's services on behalf of the Parties, Halliburton Energy Services agrees, at its sole expense, to indemnify Elysium with respect to all claims, lawsuits, judgments, settlements, penalties, expenses and costs of any kind (collectively, "Claims"), including reasonable attorneys' fees, arising out of the services performed by Elysium for the Parties, such indemnification to be limited to Claims alleging that Elysium's performance of such services violated the intellectual property rights (either statutory, contractual or common law in nature) of a third party. Such indemnification also shall not apply to acts outside the scope of the services requested by the Parties. The indemnification provided under this Agreement shall continue as to Elysium for any action Elysium took or did not take while serving in an indemnified capacity, even though Elysium may have since ceased to serve in such capacity.

Each party, employee or agent signing below represents and warrants that he or she has the authority to bind his or her respective party.

Elysium Digital Engagement Agreement, p. 4

CONFIDENTIAL
PROVIDED PURSUANT TO COURT ORDER (R. DOC. 5307)

I, HAVING DUE AUTHORITY TO SIGN ON BEHALF OF THE INDICATED ENTITY, ACKNOWLEDGE RECEIPT OF AND AGREEMENT WITH THE TERMS OF ELYSIUM DIGITAL L.L.C.'S ENGAGEMENT AS SET FORTH ABOVE.

Elysium Digital, LLC

By: _[signature]_   Date: 02/23/2012

Name: MARK ANTALIK

Title: ELECTRONIC INVESTIGATIONS AND DISCOVERY MANAGER

BP Exploration & Production, Inc.

By: _[signature]_   Date: 2/24/2012

Name: APRIL L. JONES

Title: Procurement Specialist

Halliburton Energy Services

By: _[signature]_   Date: 2-24-2012

Name: James W. Ferguson

Title: Sv. VP


Approved by:

U.S. District Court of Louisiana Special Master

By: _[signature]_   Date: 2/24/2012
Capt. Suzanne E. Englebert


Elysium Digital Engagement Agreement, p. 5