

DONALD E. GODWIN, SHAREHOLDER
BOARD CERTIFIED - CIVIL TRIAL LAW -
TEXAS BOARD OF LEGAL SPECIALIZATION
DIRECT DIAL:      214.939.4412
DIRECT FAX:       214.939.4803
DGodwin@GodwinRonquillo.com

DALLAS  HOUSTON

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
214.939.4400
800.662.8393
214.760.7332  Fax

GodwinRonquillo.com

February 25, 2012

**VIA EMAIL**                                                                                      **CONFIDENTIAL**

The Honorable Carl J. Barbier
United States District Court
500 Poydras Street
New Orleans, LA 70130

      In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on
             April 20, 2010, MDL No. 2179.

Dear Judge Barbier:

      On Wednesday, February 22, 2012, Halliburton Energy Services, Inc. ("HESI") served objections to certain demonstratives proposed by BP. HESI has subsequently conducted several telephonic "meet and confer" conferences with BP to resolve HESI's objections, the most recent occurring late on the afternoon of Saturday, February 25, 2012. While significant progress has been made towards resolving a number of these objections, there remain two outstanding issues that require resolution by the Court because they involve demonstratives that BP intends to use in its opening statements or otherwise in the first week of trial. Given the short timeframe remaining for resolving such objections, HESI writes to advise the Court about these unresolved issues in order to expedite their resolution.

      First, BP proposes to use a demonstrative that refers to "Chevron testing." The reference to "Chevron testing" appears in a column with the heading "Unstable" set forth against a red background. *See* Ex. "A" attached hereto [D-4278]. Furthermore, in the entry under this title, BP attributes to the Chevron testing the opinion that "None of the tests produced a stable foam." *Id.* Based on this Court's prior rulings, HESI believes that a demonstrative that attributes the **opinion** that the cement was "unstable" violates the Court's orders *in limine*. *See* Rec. Docs. 5448, 5618, 5810 (the "Limine Orders"). The Limine Orders permit only the admission of (1) the "test results and data" from such a report, and (2) the "fact testimony" or "direct observations concerning cement testing results" of a witness to the testing. The Limine Orders exclude

February 25, 2012
Page 2

"opinion testimony" as inadmissible. Thus, while the underlying facts within the Chevron report, and the direct observations of a witness to those tests may be admissible, the ultimate opinion – that the cement was "stable" or "unstable" – is not admissible, whether contained in deposition testimony or the reports themselves. Craig Gardner was the author of the Chevron report, but Gardner is not designated as an expert witness by any party. The Court previously excluded opinions expressed in connection with the OTC report by Greg Garrison, in part because Garrison, like Gardner, was not designated as an expert witness by any party. Accordingly, BP's demonstrative contravenes the Limine Orders by attributing the ultimate opinion of "stability" or "instability" to the Chevron tests.

Second, BP proposes using certain graphs or charts that display well information (*e.g.* standpipe pressure, flow-out, etc.) in a manner and/or scale that differs from the manner or scale observed by Sperry's mudlogger, Joe Keith, on the evening of April 20, 2010. *See* Ex. "B" attached hereto [D-4110A-4112A; D-4113-14, D-4205]. The purpose of these demonstratives is to *highlight* or *magnify* the underlying data contained within the Sperry mudlogging data set so that certain trends or data points are more easily recognized. HESI has no objection to the use of such exhibits to highlight the underlying data itself, but HESI objects to the extent these demonstratives create the misleading impression that Keith was viewing the data on a scale that makes the data more easily recognized. This is not a situation in which a party is simply calling attention to a feature of an exhibit that was readily apparent to the opposing party in its original format. A key issue in this case is whether Keith was negligent in failing to recognize subtle trend lines in a portion of the Sperry data, and it is thus highly misleading to depict such trend lines in a manner and/or scale other than that which was visible to Keith on April 20th, making those trend lines seem easily recognizable without noting that Keith was <u>not</u> observing the data in that manner or on that scale. The obvious solution, which HESI has proposed, is to incorporate a parenthetical caveat or disclaimer on the demonstrative exhibits to the effect that Keith was not observing data on the same scale or in the same manner as displayed in the demonstrative. Despite disavowing any intention to create a misleading impression about what Keith was observing on April 20th, BP to date refuses to incorporate such a disclaimer.

HESI respectfully requests guidance from the Court, or a ruling on HESI's objections, in order to avoid unnecessary delay and interruptions during the first day of trial.

Respectfully submitted,

*Donald E. Godwin* (signature)

Donald E. Godwin