1
2
3

# UNITED STATE DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

4
5

500 Poydras Street
New Orleans, LA 70130

6

(504) 589-7600

7

| | | |
|---|---|---|
| -And- | **D. MONTGOMERY**<br><br>**All Other Similarly Situated Parties**<br>*Plaintiffs,*<br><br>**UNITED STATES OF AMERICA DEPARTMENT OF HOMELAND SECURITY UNITED STATES COAST GUARD** | **MDL NO.**<br><br>**SECTION: J-1**<br><br>**JUDGE**<br>**MAG. JUDGE**<br>**Case 2:10-md-02179-CJB-SS (lead)**<br>**Case 2:11-cv-02298-CJB-SS (member)** |
| Vs | | |
| -And- | Director of National Pollution Funds Center - Craig A. Bennett<br>**(In his Official Capacity as** Director, National Pollution Funds Center<br>United States Coast Guard)<br>*Defendants* | **MEMORANDUM in Support of Plaintiff's**<br>**Motion for Summary Judgment**<br>**as authorized under FRCP Rule 56.** |

| | |
|---|---|
| D. Montgomery<br>c/o ETR<br>33523 Eight Mile Rd<br>Bldg A-3, STE 108<br>Livonia, Michigan 48152<br>(313) 670-0371<br><br>Plaintiff, In Pro per | Matthew R. Dursa<br>Torts Branch, Civil Division<br>U.S. Department of Justice<br>.P.O. Box 14271<br>Washington, DC 20044-4271<br>Maryland Bar No. N/A<br>Telephone: (202) 616-4033<br>Facsimile: (202) 616-4159<br>Email: matthew.r.dursa@usdoj.gov<br>Attorney for Defendants |

8
9

TABLE OF
CONTENTS

# TABLE OF CONTENTS

Motion for Summary Judgment BY PlAINTIFF ................................................................. 1

MEMORANDUM in Support of Plaintiff's ........................................................................ 3

TABLE OF CONTENTS ..................................................................................................... 4

STATEMENT OF THE BASIS OF JURISDICTION.................................................................. 7

STATEMENT OF QUESTIONS INVOLVED .......................................................................... 8

LAW AND ARGUMENT .................................................................................................... 9

Standard of Review.................................................................................................... 9

I. BACKGROUND........................................................................................................ 10

II. Statutory and Regulatory Background ................................................................. 11

III. Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2011................ 12

IV. The Administrative Procedures Act (APA) ........................................................... 12

a. Standard of Review under the APA ..................................................................... 12

b. The NPFC is subject to the APA ........................................................................... 13

c. The NPFC is NOT exempt from the APA............................................................... 14

d. APA's Agency Requirements are mandatory for the NPFC ................................. 14

e. The NPFC Failed to Meet the APA's Statement of Authority of Solicitation Standard.............. 15

f. The NPFC Failed to Meet the APA's Statement of Principal Purpose of Information Standard . 15

g. The NPFC Failed to Meet the APA's Statement of Routine Uses of Information Standard ....... 16

h. The NPFC Failed to Meet the APA's Statement of Effects on Claimant Standard.................... 16

i. The NPFC Failed to Meet the APA's Relevant & Necessary Information Standard.................... 16

j. The NPFC Failed to Meet the APA's Fairness to the Individual Standard................................. 17

k. The NPFC Failed to Meet the APA's Collection of Information Standard................................... 19

l. The NPFC Failed to Meet the APA's Prohibited Records Keeping on Individual Standard.......... 20

m. The NPFC Failed to Meet the APA's Establishment of Rules of Conduct Standard.................. 21

n. The NPFC Failed to Meet the APA's Establishment of Safeguards Standard ........................... 22

o. The NPFC Failed to Meet the APA's Amendment of a Record Standard .................................. 22

V. The Plaintiffs were Prejudiced by the NPFC's errors............................................. 24

GCCF's Advance Payment is Prima Facie Evidence of Validity of Plaintiff Claim........................... 24

Depletion of the Fund................................................................................................ 25

Conclusion ................................................................................................................. 25

Exhibits ...................................................................................................................... 27

1     Exhibit 1 NPFC July 27, 2011 Final Decision ................................................................ 28

2     Exhibit 2, March 23, 2011 Letter Request for Additional Information............................. 29

3     Exhibit 3, March 25, 2011 Response to Request for Additional Information ................... 30

4     Exhibit 4 NPFC May 25, 2011, Initial  Decision............................................................. 31

5     Exhibit 5 Plaintiff's June 13, 2011, "REQUEST FOR RECONSIDERATION"  and a "REQUEST FOR
6     CORRECTION OF RECORDS" .................................................................................... 32

7     Exhibit 6, Bean Dredging, LLC, et al v. United States of America)...................................... 33

8     Exhibit 7, NPFC Claims Processing System .................................................................... 34

9     Exhibit 8 Affidavit of D. Montgomery............................................................................ 35

10    Exhibit 9, October 2010 Advance Payment from GCCF................................................... 36

11    **Cases**

12    . *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir.1981) ............................................ 24

13    Advanced Data Concepts, 216 F.3d at 1057. ...................................................................... 24

14    Alaska. Water Quality Ins. Syndicate v. United States, 522 F. Supp. 2d 220, 226 (D.D.C. 2007) ............ 11

15    Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed.Cir.1999).................................. 24

16    Barrett v. Soc. Sec. Admin., 309 F.3d 781, 785 (Fed.Cir.2002). ........................................................ 9

17    **Bean Dredging, LLC, et al v. United States of America, No. 08-01508**
18    **(D.D.C. 03/29/2011)** ................................................................................................ 11

19    **Bean Dredging, LLC, et al v. United States of America, No. 08-01508**
20    **(D.D.C. 03/29/2011),** ............................................................................................... 13

21    Bowey v. West, 218 F.3d 1373, 1376 (Fed.Cir.2000)........................................................8, 9, 13

22    Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973));............................. 24

23    Carr v. Soc. Sec. Admin., 185 F.3d 1318, 1322 (Fed.Cir.1999). ......................................... 25

24    City of Houston, 24 F.3d at 1428; Cnty. of Suffolk, 605 F.3d at 140–41 .............................. 25

25    Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed.Cir.1996)......................................... 24

26    *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir.1981). ................................... 9

27    Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1338 (Fed.Cir.2001)... 24

28    In Florida Power & Light Co. v. Lorion,............................................................................... 24

29    Info. Tech., 316 F.3d at 1319; Alfa Laval, 175 F.3d at 1367 ................................................ 24

30    Kornman v. Secs. & Exch. Comm'n, 592 F.3d 173, 184 (D.C. Cir. 2010) ............................. 25

31    Levine v. United States, 453 F.3d 1348, 1350 (Fed.Cir.2006)............................................... 24

32    Marsh v. Or. Natural Res. Council, 490 U.S. 360, 375-78, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989). ..... 24

33    *Motor Vehicles Manufacturing Association of the United States v. State Farm Mutual Automobile*
34    *Insurance Company 463 U.S. 29, 43 (1983)*...................................................................... 13

35    Rice v. Harken Exploration Co., 250 F.3d 264, 266 (5th Cir. 2001)....................................... 11

36    Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed.Cir.1996);...................................... 24

37    **Statutes**

1  33 U.S.C. § 2702(a). ................................................................................................ 11
2  33 U.S.C. § 2704(c)(1)(B). ...................................................................................... 12
3  5 U.S.C. § 7703(c); ..................................................................................................... 9
4  5 U.S.C. §706(2)(A), .............................................................................................. 13
5  5 USC § 552(e)(2). ................................................................................................... 20
6  Administrative Procedure Act ("APA"), 5 U.S.C. § 701 ................................. 13
7  APA, 5 U.S.C. § 706 ............................................................................................... 12
8  APA. Title 5 USC § 551 ........................................................................................ 14
9  Oil Pollution Act of 1990 (the "OPA"), 33 U.S.C. § 2701 ........................... 11
10 Title 5 USC § 551 ................................................................................................... 14
11 U.S.C. **TITLE 42 CHAPTER 21 SUBCHAPTER I § 1983 § 1983. Civil action for deprivation of rights** ........... 7
12 U.S.C. TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a - Records maintained on individuals; (e)(1), (2),
13    (3)(A), (3)(B), (3)(C), (3)(D), (4)(A), (4)(B), (4)(C), (4)(D), (4)(E), (4)(F), (4)(G), (4)(H), (4)(I), (5), (7) and
14    (9) ............................................................................................................................... 7
15 **U.S.C. Title 5 USC CHAPTER 5, SUBCHAPTER II** ................................................ 8
16 USC TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a ............................................. 14

17 **Rules**

18 33 C.F.R. § 136.1 ....................................................................................................... 11
19

20

1

2  ## STATEMENT OF THE BASIS OF JURISDICTION

3

4      This lawsuit seeks Judicial Review of the "**UNITED STATES OF AMERICA**

5  **DEPARTMENT OF HOMELAND SECURITY UNITED STATES COAST**

6  **GUARD National Pollution Funds Center's**" (NPFC) Final Decision (***Exhibit 1***),

7  denying the Plaintiff's claim against the **OIL SPILL LIABILITY TRUST FUND** in the

8  amount of **$861,512.00.** The Plaintiff further seeks declaratory and injunctive

9  relief enjoining the Defendants from denying claims from victims of the **Oil Spill by the**

10 **Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010**.

11

12     The Plaintiff also seeks monetary damages in the amount of $2,584,536 for the

13 Defendants' intentional or willful violation of U.S.C. TITLE 5 PART I CHAPTER 5

14 SUBCHAPTER II § 552a - Records maintained on individuals; (e)(1), (2), (3)(A), (3)(B),

15 (3)(C), (3)(D), (4)(A), (4)(B), (4)(C), (4)(D), (4)(E), (4)(F), (4)(G), (4)(H), (4)(I), (5), (7)

16 and (9). The Plaintiff also seeks monetary, declaratory and injunctive relief  under U.S.C.

17 **TITLE 42 CHAPTER 21 SUBCHAPTER I § 1983 § 1983. Civil action for**

18 **deprivation of rights**.

19

1

**STATEMENT OF QUESTIONS INVOLVED**

3

    1.  **Whether U.S.C. Title 5 USC CHAPTER 5, SUBCHAPTER II -**
        **ADMINISTRATIVE PROCEDURE IS APPLICABLE TO THE NPFC'S**
        "<u>Adjudication Process</u>

        Defendant Answered NO.

        Plaintiff Answered YES.

Statutory interpretation is a question of law, which the courts  review without deference.    See, e.g., Bowey v. West, 218 F.3d 1373, 1376 (Fed.Cir.2000).

    2.  Whether the NPFC's Final decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."    5 U.S.C. §  706(2)(A) (2000).

        Defendant Answered NO.

        Plaintiff Answered YES.

Statutory interpretation is a question of law, which the courts  review without deference.    See, e.g., Bowey v. West, 218 F.3d 1373, 1376 (Fed.Cir.2000).

## LAW AND ARGUMENT

### Standard of Review

Review of United States of America's Department of Homeland Security U.S. Coast Guard's National Pollution Funds Center's (NPFC's) FINAL decision is authorized under the **U.S.C. TITLE 5 PART I CHAPTER 7 § 702 – Right** of **review**. The NPFC's holding must be affirmed unless it is found to be: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); Barrett v. Soc. Sec. Admin., 309 F.3d 781, 785 (Fed.Cir.2002).

Judicial review is confined to the full administrative record before the agency at the time the decision was made. *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir.1981).

Statutory interpretation is a question of law, which the courts review without deference.   See, e.g., Bowey v. West, 218 F.3d 1373, 1376 (Fed.Cir.2000).

Montgomery v USA        Case 2:11-cv-02298-CJB-SS        U S Dist Ct EAST DIST OF LA

1    **I. BACKGROUND**

2

3    1.  "On April 20, 2010, the Macondo 252 well, 45 miles off the coast of Louisiana experienced a

4        catastrophic blowout, causing a major explosion, fire and subsequent sinking of the Mobile

5        Offshore Drilling Unit DEEPWATER HORIZON. The fire and explosion caused the deaths of 11

6        persons aboard the unit, and the blowout resulted in a catastrophic oil spill one mile below the

7        surface of the ocean."

8        .

9    2.  The Plaintiff filed a claim (GCCF #1070213) with the responsible party, BP plc and the Gulf Coast

10       Claims Facility on June 16, 2010 and the Plaintiff's claim status was still being reported as

11       "Under Review" as of June 12, 2011.

12

13   3.  On February 25, 2011, the Plaintiff filed a claim with the Defendants,  UNITED STATES OF

14       AMERICA DEPARTMENT OF HOMELAND SECURITY UNITED STATES COAST GUARD National

15       Pollution Funds Center and Director Craig A. Bennett,  against the **OIL SPILL LIABILITY TRUST**

16       **FUND** in the amount of **$861,512.00.**

17

18   4.  On May 25, 2011, the Defendants, U.S. Coast Guard National Pollution Funds Center and

19       Director Craig A. Bennett issued a Decision (***Exhibit 4***), denying the Plaintiff's claim.

20

21   5.  On June 13, 2011, the Plaintiff submitted, to the Defendants, a "REQUEST FOR

22       RECONSIDERATION"  and a "REQUEST FOR CORRECTION OF RECORDS as

23       authorized under TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a." (See ***Exhibit***

24       ***5***).

25

26   6.  On July 27, 2011, the Defendants, U.S. Coast Guard National Pollution Funds Center and Director

27       Craig A. Bennett issued a **FINAL** Decision (***Exhibit 1***), denying the Plaintiff's claim.

28

29

30

1

## II. Statutory and Regulatory Background[1]

3

Congress passed the Oil Pollution Act of 1990 (the "OPA"), 33 U.S.C. § 2701 et seq., in
response to the Exxon Valdez oil spill in Prince William Sound, Alaska. Water Quality Ins.
Syndicate v. United States, 522 F. Supp. 2d 220, 226 (D.D.C. 2007). The statute, which lays out
a comprehensive framework for assessing liability for costs and damages associated with oil
spills, was intended "to streamline federal law so as to provide quick and efficient cleanup of oil
spills, compensate victims of such spills, and internalize the costs of spills within the petroleum
industry." Rice v. Harken Exploration Co., 250 F.3d 264, 266 (5th Cir. 2001).

11

Title I of the OPA assigns liability to the owners and operators of vessels that discharge oil into
the navigable waters of the United States. The statute provides, in relevant part, that "each
responsible party for a vessel or a facility from which oil is discharged . . . into or upon the
navigable waters or adjoining shorelines . . . is liable for the removal costs and damages . . . that
result from such an incident." 33 U.S.C. § 2702(a). This includes all removal costs incurred by
the United States government and certain removal costs incurred by third parties. Id. § 2702(b).
In certain circumstances, however, a responsible party may seek to limit its financial liability and
secure reimbursement for costs incurred. Id. §§ 2704, 2708. To do so, the responsible party must
submit a claim directly to the Oil Spill Liability Fund. Id. § 2713(b)(1)(B). The NPFC, which is
part of and administered by the United States Coast Guard (the "Coast Guard"), which is in turn
a component part of the Department of Homeland Security, is responsible for processing claims
for reimbursement under the OPA. The Coast Guard has enacted a comprehensive set of
regulations governing the procedures for presenting, filing, processing, settling, and adjudicating
such claims. See 33 C.F.R. § 136.1 et seq. The NPFC may deny a claim for reimbursement
where certain conditions are not met; as is particularly relevant to the instant action, a
responsible party is not eligible for reimbursement if "the incident was proximately caused by . .
. the violation of an applicable Federal safety, construction or operation regulation by[] the

---

[1] See **Bean Dredging, LLC, et al v. United States of America, No. 08-01508 (D.D.C. 03/29/2011)**
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
2011.DDC.0000255< http://www.versuslaw.com>
Civil Action No. 08-01508 (CKK)

1    responsible party, an agent or employee of the responsible party, or a person acting pursuant to a

2    contractual relationship with the responsible party." 33 U.S.C. § 2704(c)(1)(B).

3

4

### III. Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2011

6

7    This civil action arises from the April 20, 2010 explosion and fire on the DEEPWATER

8    HORIZON mobile offshore drilling unit ("MODU"), and the subsequent discharge of millions of

9    gallons of oil into the Gulf of Mexico. The Macondo 252 well, located 45 miles off the coast of

10   Louisiana experienced a catastrophic blowout, causing a major explosion, fire and subsequent

11   sinking of the Mobile Offshore Drilling Unit DEEPWATER HORIZON. The fire and explosion

12   caused the deaths of 11 persons aboard the unit, and the blowout resulted in a catastrophic oil

13   spill one mile below the surface of the ocean, leading to an unprecedented oil spill response – the

14   most challenging and complex our nation has ever mobilized. The lack of human access and

15   enormous pressures 5,000 feet below the ocean's surface complicated the response to the

16   Macondo well disaster. Major technological challenges arose in the face of solutions to control

17   the wellhead as they were developed. The continuous discharge of large quantities of oil from the

18   well for almost three months severely tested our nation's capability and capacity to effectively

19   remove oil from the water, beaches, and marshes. The Deepwater horizon oil spill is the nation's

20   first declared Spill of National Significance (SONS) and the first time in history where a

21   National Incident Commander (NIC) was designated.

22

23   IV. The Administrative Procedures Act (APA)

24

25

26   *a. Standard of Review under the APA*

27

28   In reviewing agency rulemaking, the standard of review is governed by the APA, 5

29   U.S.C. § 706. Under this standard, the court must —hold unlawful and set aside agency

30   action, findings, and conclusions‖ that are —arbitrary, capricious, an abuse of discretion,

31   or otherwise not in accordance with law . . . [or] unsupported by substantial evidence.‖

32   *Id.* § 706(2)(a). As the Supreme Court elaborated in *Motor Vehicles Manufacturing*

1  *Association of the United States v. State Farm Mutual Automobile Insurance Company*

2  *463 U.S. 29, 43 (1983) (internal quotations and citations omitted). (—State Farm||):*

3     *The scope of review under the arbitrary and capricious standard is narrow and a*

4     *court is not to substitute its judgment for that of the agency. Nevertheless, the*

5     *agency must examine the relevant data and articulate a satisfactory explanation*

6     *for its action[,] including a rational connection between the facts found and the*

7     *choices made. . . . Normally, an agency rule would be arbitrary and capricious if*

8     *the agency has relied on factors which Congress has not intended it to consider,*

9     *entirely failed to consider an important aspect of the problem, offered an*

10    *explanation for its decision that runs counter to the evidence before the agency, or*

11    *is so implausible that it could not be ascribed to a difference in view or the*

12    *product of agency expertise.*

16  Statutory interpretation is a question of law, which the courts review without deference.   See, e.g.,

17  Bowey v. West, 218 F.3d 1373, 1376 (Fed.Cir.2000).

19     First, the trial court must determine whether the government acted without rational basis

20  or contrary to law when evaluating the Plaintiffs' claims.   Second, if the trial court finds that the

21  government's conduct fails the APA review under 5 U.S.C. § 706(2)(A), then it proceeds to

22  determine, as a factual matter, if the Plaintiff was prejudiced by that conduct.

25  **b. The NPFC is subject to the APA**

27  In **Bean Dredging, LLC, et al v. United States of America, No. 08-01508 (D.D.C.**

28  **03/29/2011)**, the District Court and the Defendants acknowledged that the District Court has the

29  authority to review the Final Decision of the Defendants under the Administrative Procedure Act

30  ("APA"), 5 U.S.C. § 701*et seq.*, **(Exhibit 6, Bean Dredging, LLC, et al v. United States of**

31  **America)**

1

***c. The NPFC is NOT exempt from the APA***

The NPFC is NOT exempt from the APA. Title 5 USC § 551 – Definitions, clearly states:

> "Agency" means each authority of the Government of the United States, whether or not it
> is within or subject to review by another agency, but does not include—

> **(A)** the Congress;

> **(B)** the courts of the United States;

> **(C)** the governments of the territories or possessions of the United States;

> **(D)** the government of the District of Columbia;

> or except as to the requirements of section 552 of this title—

> **(E)** agencies composed of representatives of the parties or of representatives of
> organizations of the parties to the disputes determined by them;

> **(F)** courts martial and military commissions;

> **(G)** military authority exercised in the field in time of war or in occupied territory; or

> **(H)** functions conferred by sections 1738, 1739, 1743, and 1744 of title 12; subchapter II
> of chapter 471 of title 49; or sections 1884, 1891–1902, and former section 1641 (b)(2),
> of title 50, appendix;

The NPFC does not meet any of the criteria listed in Title 5 USC § 551, that would exclude the
NPFC from the requirements of the APA.

***d. APA's Agency Requirements are mandatory for the NPFC***

The Defendants, U.S. Coast Guard National Pollution Funds Center maintains a system
of records for the adjudication of claims submitted to the OIL SPILL LIABILITY TRUST
FUND, called the **<u>USCG - NPFC Claims Processing System (NPFC-CPS) (2010)</u>. <u>(See
Exhibit 7, NPFC Claims Processing System)</u>.**
Under USC TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a - Records maintained on
individuals; (e), the law clearly states:

Montgomery v USA        Case 2:11-cv-02298-CJB-SS        U S Dist Ct EAST DIST OF LA

1    "(e) Agency Requirements.— Each agency that maintains a system of records **shall**—..."

2    The usage of the word "SHALL" clearly implies that if the NPFC maintains  s system of record,

3    then the NPFC is required to following the Agency Requirements as listed in USC TITLE 5

4    PART I CHAPTER 5 SUBCHAPTER II § 552a.

5

6    *e. The NPFC Failed to Meet the APA's Statement of Authority of Solicitation Standard*

7

8    NPFC's failure to comply with USC  TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a -

9    Records maintained on individuals; (e) (3)(A),   were violations of law under §  706(2)(A).

10       1.   On March 23, 2011, in violation of U.S.C. TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a -

11            Records maintained on individuals; (e)(3)(A) , the Plaintiff received a letter by email and certified

12            U.S. mail (**See Exhibit 2, March 23, 2011 Letter**).from Richard M. Cool, Claims Adjuster

13            employee for the Defendants, U.S. Coast Guard National Pollution Funds Center and Director

14            Craig A. Bennett, requesting information without stating:

15                    The authority (whether granted by statute, or by executive order of the President)

16                    which authorizes the solicitation of the information and whether disclosure of such

17                    information is mandatory or voluntary.

18

19    *f. The NPFC Failed to Meet the APA's Statement of Principal Purpose of Information Standard*

20

21    NPFC's failure to comply with USC  TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a -

22    Records maintained on individuals; (e)(3)(B),   were violations of law under §  706(2)(A).

23       2.   On March 23, 2011, in violation of U.S.C. TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a -

24            Records maintained on individuals; (e)(3)(B) , the Plaintiff received a letter by email and certified

25            U.S. mail (**See Exhibit 2, March 23, 2011 Letter**).from Richard M. Cool, Claims Adjuster

26            employee for the Defendants, U.S. Coast Guard National Pollution Funds Center and Director

27            Craig A. Bennett, requesting information without stating:

28                    Without stating the principal purpose or purposes for which the information is intended

29                    to be used.

1

***g. The NPFC Failed to Meet the APA's Statement of Routine Uses of Information Standard***

NPFC's failure to comply with USC  TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a - Records maintained on individuals; (e)(3)(C),   were violations of law under §  706(2)(A).

3.  On March 23, 2011, in violation of U.S.C. <u>TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a - Records maintained on individuals; (e)(3)(C)</u> , the Plaintiff received a letter by email and certified U.S. mail (**See Exhibit 2, March 23, 2011 Letter**).from Richard M. Cool, Claims Adjuster employee for the Defendants, U.S. Coast Guard National Pollution Funds Center and Director Craig A. Bennett, requesting information without stating:

> Without stating the routine uses which may be made of the information.

***h. The NPFC Failed to Meet the APA's Statement of Effects on Claimant Standard***

NPFC's failure to comply with USC  TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a - Records maintained on individuals; (e)(3)(D),  were violations of law under §  706(2)(A).

4.  On March 23, 2011, in violation of U.S.C. <u>TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a - Records maintained on individuals; (e)(3)(D)</u> , the Plaintiff received a letter by email and certified U.S. mail (**See Exhibit 2, March 23, 2011 Letter**).from Richard M. Cool, Claims Adjuster employee for the Defendants, U.S. Coast Guard National Pollution Funds Center and Director Craig A. Bennett, requesting information without stating:

> Without stating the effects on him, if any, of not providing all or any part of the requested information.

***i. The NPFC Failed to Meet the APA's Relevant & Necessary Information Standard***

NPFC's failure to comply with USC  TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a - Records maintained on individuals; (e)(5),  were violations of law under §  706(2)(A).

1     5.  On March 23, 2011, in violation of U.S.C. <u>TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a -

2       Records maintained on individuals; (e)(5)</u> , the Plaintiff received a letter by email and certified

3       U.S. mail (**See Exhibit 2, March 23, 2011 Letter**).from Richard M. Cool, Claims Adjuster

4       employee for the Defendants, U.S. Coast Guard National Pollution Funds Center and Director

5       Craig A. Bennett, requesting,

6         10. The website for "Engineering Technological Researchers Corporation" indicates you
           were running for the 13th Congressional District in Michigan. Describe how your
           involvement in politics and campaigning affected your day to day business operations.

7

8       The Defendants request for information regarding the Plaintiff's election campaign is not

9       relevant to the Plaintiff's claim and as such a violation of law, section (e)(5) which states:

10      (5) maintain all records which are used by the agency in making any determination about any
11      individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary
12      to assure fairness to the individual in the determination;
13

14

15   *j. The NPFC Failed to Meet the APA's Fairness to the Individual Standard*

16    6.  On March 23, 2011, in violation of U.S.C. <u>TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a -

17      Records maintained on individuals; (e)(5)</u> , the Plaintiff received a letter by email and certified

18      U.S. mail (**See Exhibit 2, March 23, 2011 Letter**).from Richard M. Cool, Claims Adjuster

19      employee for the Defendants, U.S. Coast Guard National Pollution Funds Center and Director

20      Craig A. Bennett, requesting,

21        7.  Please identify the name of the dealership/marina that provided the first cost estimate for
           replacement of the engines on 12 June 2010. Was this the company that diagnosed oil or
           tar balls in the cooling system?

22      On March 25, 2011, (*See Exhibit 3, March 25, 2011 Response to Request for Additional*

23      *Information*), the Plaintiff responded with,

          iii.      Please identify the name of the
                dealership/marina that provided the first
                cost estimate for replacement of the
                engines on 12 June 2010. Was this the
                company that diagnosed oil or tar balls in
                the cooling system?
                **Response: Vessel was not taken to a**

24

**dealership. Caterpillar 800 support
number was called and an authorized
service agent was sent out to work on
the Vessel. We received all information
from the Caterpillar 800 support call
center by phone and fax.**

1
2       On May 23, 2011, the Defendants issued an Initial Decision (NPFC May 25, 2011, Initial Decision
3       (***Exhibit 4***) which stated:

4       resulted from "obstruction with 'Tar like' oily substance." The NPFC questioned the Owner about this
        diagnosis to which the Owner replied that he had made the diagnosis himself. The second cost estimate

5       The Defendant falsely and unfairly claimed that the Plaintiff had "*made the diagnosis himself*"

6       when the record clearly shows in writing that the Plaintiff stated an "authorized service agent"

7       made the diagnosis. As such, the Defendant committed a violation of law, section (e)(5) which

8       states:

9       **(5)** maintain all records which are used by the agency in making any determination about
10      any individual with such accuracy, relevance, timeliness, and completeness as is
11      reasonably necessary to assure fairness to the individual in the determination;

12      The administrative record does not show a rational connection between the facts (the written

13      statements that the Plaintiff provided in Exhibit 3, March 25, 2011 **Response to Request for**

14      **Additional Information**) and the NPFC's determination that "***Owner replied that he had made***

15      ***the diagnosis himself***."

16      Therefore, based upon the Full Administrative record at the time of the decision, this

17      Honorable Court must declare the NFPC's determination on the diagnoses in the cost estimate of

18      12 June 2010, as  arbitrary, capricious, an abuse of discretion,  and  (2)  unsupported by

19      substantial evidence."

20

21

22      7.  On May 25, 2011, in violation of U.S.C. TITLE 5 PART I CHAPTER 5 SUBCHAPTER

23          II § 552a - Records maintained on individuals; (e)(5), the Defendants, U.S. Coast Guard

24          National Pollution Funds Center and Director Craig A. Bennett issued a Final Decision

25          (***Exhibit 1***), which intentional and willfully contained an inaccurate statement claiming

26          "*Neither cost estimate, therefore, diagnoses the source of the Claimant's alleged damage*

1    *as the Deepwater Horizon oil spill. Owner, however, intentionally inserted this language*

2    *into the cost estimate of 12 June 2010."*

3    Neither cost estimate, therefore, diagnoses the source of the Claimant's alleged damage as the Deepwater Horizon oil spill.  Owner, however, intentionally inserted this language into the cost estimate of 12 June 2010.

4    The administrative record does not show a rational connection between the facts and the NPFC's

5    determination that "*Owner intentionally inserted this language into the cost estimate of 12 June*

6    *2010*".

7    Therefore, based upon the Full Administrative record at the time of the decision, this Honorable

8    Court must declare the NPFC's determination on the diagnoses in the cost estimate of 12 June

9    2010, as  arbitrary, capricious, an abuse of discretion,  and  (2)  unsupported by substantial

10   evidence."

11

12

13   *k. The NPFC Failed to Meet the APA's Collection of Information Standard*

14

15       8.   On May 25, 2011, in violation of U.S.C. TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a -

16            Records maintained on individuals; (e)(5), the Defendants, U.S. Coast Guard National Pollution

17            Funds Center and Director Craig A. Bennett issued a Final Decision (***Exhibit 1***), which intentional

18            and willfully contained an inaccurate statement claiming

19

20            *"Owner/Operator also submitted a Michigan (MI) Watercraft Registration purportedly for the*

21            *SEASEARCHER. The registration indicated that the vessel is a 30' 1996 Bayliner. Owner/Operator*

22            *confirmed that the vessel is a Bayliner modified for long distance offshore use. /The NPFC*

23            *contacted Bayliner (manufacturer), which confirmed that the registered watercraft is a 1996*

24            *Bayliner 2858 Ciera Command Bridge single screw designed for a gas engine. Bayliner indicated*

25            *that such a vessel would not be compatible or even modified, with the two CAT 3056 diesel*

26            *engines and C 1.5 genset, which are listed as replacement engines for the engines in*

27            *SEASEARCHER."*

Owner/Operator also submitted a Michigan (MI) Watercraft Registration purportedly for the
SEASEARCHER. The registration indicated that the vessel is a 30' 1996 Bayliner. Owner/Operator
confirmed that the vessel is a Bayliner modified for long distance offshore use. The NPFC contacted
Bayliner (manufacturer), which confirmed that the registered watercraft is a 1996 Bayliner 2858 Ciera
Command Bridge, single screw, designed for a gas engine. Bayliner indicated that such a vessel would
not be compatible or even modified, with the two CAT 3056 diesel engines and C1.5 genset, which are
listed as replacement engines for the engines in SEASEARCHER.

Two CAT 3056 engines could not fit into the 2858 Ciera Command Bridge's engine box. Bayliner
indicated that the dimensions of this engine box are 48.5 inches wide by 47.25 inches in length. Based on
information available to the NPFC, the length of a single Caterpillar 3056 marine propulsion engine is
42.06 inches in length (without transmission) and 30.6 inches wide. With no clearance between or beside
the engines, the combined width of two Caterpillar 3056 engines would exceed the available width of the
engine box.

1

2          The Plaintiff **DENIES** the Defendants' statements regarding the design of the

3          vessel SEASEARCHER.

4

5          The Defendants' statement is arbitrary, capricious, and an abuse of discretion, and contrary to

6          law under U.S.C. TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a which states:

7          **(2)** collect information to the greatest extent practicable directly from the subject individual when

8          the information may result in adverse determinations about an individual's rights, benefits, and

9          privileges under Federal programs;

10

11         Under 5 USC § 552(e)(2), the Defendants are required to collect information "to the

12    greatest extent practicable directly from the subject individual when the information may result

13    in adverse determinations about an individual's rights, benefits, and privileges under Federal

14    programs". The Defendants violated 5 USC § 552(e)(2), by contacting the Boat manufacturer...

15

16    Therefore, based upon the Full Administrative record at the time of the decision, this Honorable

17    Court must declare the NFPC's determination based on third ex-parte information is a violation

18    of law under 5 USC § 552(e)(2).

19

20

21    *I. The NPFC Failed to Meet the APA's Prohibited Records Keeping on Individual Standard*

22

1  NPFC's failure to comply with USC  TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a -

2  Records maintained on individuals; (e)(7),  were violations of law under §  706(2)(A).

3      9.   On March 23, 2011, in violation of U.S.C. <u>TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a -</u>

4          <u>Records maintained on individuals; (e)(5)</u> , the Plaintiff received a letter by email and certified

5          U.S. mail (<u>**See Exhibit 2, March 23, 2011 Letter**</u>).from Richard M. Cool, Claims Adjuster

6          employee for the Defendants, U.S. Coast Guard National Pollution Funds Center and Director

7          Craig A. Bennett, requesting,

> 10. The website for "Engineering Technological Researchers Corporation" indicates you
> were running for the 13th Congressional District in Michigan. Describe how your
> involvement in politics and campaigning affected your day to day business operations.

8

9

10         The Defendants request for information regarding the Plaintiff's election campaign which is an

11         activity that the Plaintiff has a right guaranteed by the First Amendment. and as such a violation

12         of law, section (e)(7) which states:

13             (7) maintain no record describing how any individual exercises rights guaranteed by the First

14             Amendment unless expressly authorized by statute or by the individual about whom the record is

15             maintained or unless pertinent to and within the scope of an authorized law enforcement activity;

16  Therefore, based upon the Full Administrative record at the time of the decision, this Honorable

17  Court must declare the NFPC's request for information regarding the Plaintiff's election

18  campaigning a violation of the law under , section (e)(7)

19

20

21  *m. The NPFC Failed to Meet the APA's Establishment of Rules of Conduct Standard*

22

23  The NPFC's has no rules in place to provide any Claimants with any protections under APA,

24  because the NPFC has stated on the record that the APA does not apply. Section (e)(9) states:

25             (9) establish rules of conduct for persons involved in the design, development, operation, or

26             maintenance of any system of records, or in maintaining any record, and instruct each such

27             person with respect to such rules and the requirements of this section, including any other rules

28             and procedures adopted pursuant to this section and the penalties for noncompliance;

29  Therefore, based upon the Full Administrative record at the time of the decision, this Honorable

30  Court must declare the NFPC's claims process fails to provide Rules of conduct that meet the

Montgomery v USA        Case 2:11-cv-02298-CJB-SS         U S Dist Ct EAST DIST OF LA

1  APA standard and as such the NPFC's claims process is a violation of the law under , section

2  (e)(9).

3

4

5  *n. The NPFC Failed to Meet the APA's Establishment of Safeguards Standard*

6

7  The NPFC's has no Safeguards in place to provide any Claimants with any protections under

8  APA, because the NPFC has stated on the record that the APA does not apply. Section (e)(10)

9  states:

10        (10) establish appropriate administrative, technical, and physical safeguards to insure the security
11        and confidentiality of records and to protect against any anticipated threats or hazards to their
12        security or integrity which could result in substantial harm, embarrassment, inconvenience, or
13        unfairness to any individual on whom information is maintained;

14  Therefore, based upon the Full Administrative record at the time of the decision, this Honorable

15  Court must declare the NFPC's claims process fails to provide Safeguards that meet the APA

16  standard and as such the NPFC's claims process is a violation of the law under , section (e)(10).

17

18

19

20  *o. The NPFC Failed to Meet the APA's Amendment of a Record Standard*

21

22    1.  On March 23, 2011, in violation of U.S.C. TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a -

23        Records maintained on individuals; (e)(5) , the Plaintiff received a letter by email and certified

24        U.S. mail (**See Exhibit 2, March 23, 2011 Letter**).from Richard M. Cool, Claims Adjuster

25        employee for the Defendants, U.S. Coast Guard National Pollution Funds Center and Director

26        Craig A. Bennett, requesting,

          7.  Please identify the name of the dealership/marina that provided the first cost estimate for
              replacement of the engines on 12 June 2010.  Was this the company that diagnosed oil or
27            tar balls in the cooling system?

28        On March 25, 2011, (**See Exhibit 3, March 25, 2011 Response to Request for Additional**

29        **Information**), the Plaintiff responded with,

iii.    Please identify the name of the
        dealership/marina that provided the first
        cost estimate for replacement of the
        engines on 12 June 2010. Was this the
        company that diagnosed oil or tar balls in
        the cooling system?
        **Response: Vessel was not taken to a**

1

**dealership. Caterpillar 800 support
number was called and an authorized
service agent was sent out to work on
the Vessel. We received all information
from the Caterpillar 800 support call
center by phone and fax.**

2

3      On May 23, 2011, the Defendants issued an Initial Decision (NPFC May 25, 2011, Initial Decision

4      (*Exhibit 4*) which stated:

       resulted from "obstruction with 'Tar like' oily substance." The NPFC questioned the Owner about this

5      diagnosis to which the Owner replied that he had made the diagnosis himself. The second cost estimate

6      The Defendant falsely and unfairly claimed that the Plaintiff had "*made the diagnosis himself*"

7      when the record clearly shows in writing that the Plaintiff stated an "authorized service agent"

8      made the diagnosis. As such, the Defendant committed a violation of law, section (e)(5) which

9      states:

10         **(5)** maintain all records which are used by the agency in making any determination about

11         any individual with such accuracy, relevance, timeliness, and completeness as is

12         reasonably necessary to assure fairness to the individual in the determination;

13     The Full administrative record at the time of the NPFC's decision clearly shows that the Plaintiff

14     filed on June 13, 2011, "**REQUEST FOR RECONSIDERATION" and a "REQUEST FOR**

15     **CORRECTION OF RECORDS**" *Exhibit 5*), which was authorized under TITLE 5 PART I CHAPTER 5

16     SUBCHAPTER II § 552a - Records maintained on individuals; (d)(2)(B). In violation of the Plaintiff's rights

17     under subsection 552a, the NPFC made a decision on a false record that the NPFC refused to correct.

18

19     Therefore, based upon the Full Administrative record at the time of the decision, this Honorable

20     Court must declare that the Plaintiff was prejudiced by the NFPC's conduct of refusal to correct

21     the record. Because the Judicial review is confined to the full administrative record before the

1  agency at the time the decision was made. *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 284

2  (D.C. Cir.1981).

3

4  **V. The Plaintiffs were Prejudiced by the NPFC's errors**

5

6       The trial court is required to determine whether these errors in the NPFC's claims review

7  process significantly prejudiced Plaintiffs.   Alfa Laval Separation, Inc. v. United States, 175

8  F.3d 1365, 1367 (Fed.Cir.1999);  Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581

9  (Fed.Cir.1996);  Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed.Cir.1996).

10       Prejudice is a question of fact.   Advanced Data Concepts, 216 F.3d at 1057.   To

11  establish "significant prejudice" Plaintiffs must show that there was a "substantial chance" it

12  would have received the claim award but for the errors in NPFC claims ***Adjudication*** processs.

13  Info. Tech., 316 F.3d at 1319; Alfa Laval, 175 F.3d at 1367. When making a prejudice analysis

14  in the first instance, to make factual findings from the record evidence as if it were conducting a

15  trial on the record.

16

17       The Supreme Court has established that review under the APA is generally limited to the

18  administrative record.   In Florida Power & Light Co. v. Lorion, the Supreme Court stated that

19  "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. §

20  706, to the agency decision based on the record the agency presents to the reviewing court."

21  470 U.S. 729, 743-44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985).   The Court emphasized that

22  "[t]he focal point for judicial review should be the administrative record already in existence, not

23  some new record made initially in the reviewing court." Id. at 743, 105 S.Ct. 1598 (quoting

24  Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973));  cf.   Marsh v. Or.

25  Natural Res. Council, 490 U.S. 360, 375-78, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989). See also

26  Levine v. United States, 453 F.3d 1348, 1350 (Fed.Cir.2006);  Impresa Construzioni Geom.

27  Domenico Garufi v. United States, 238 F.3d 1324, 1338 (Fed.Cir.2001).

28

29  ***GCCF's Advance Payment is Prima Facie Evidence of Validity of Plaintiff Claim***

30

Montgomery v USA        Case 2:11-cv-02298-CJB-SS        U S Dist Ct EAST DIST OF LA

1   There was a "substantial chance" the Plaintiff would have received the claim award but

2   for the errors in NPFC claims *Adjudication* process, because the Plaintiff's claim was evaluated

3   by the Responsible parties and approved for an advance payment in the amount of $43, 900. (See

4   Exhibit 9 Exhibit 9, October 2010 Advance Payment from GCCF).

5   The Advance payment establishes a prima facie case of the validity of the Plaintiffs' claim and

6   the NPFC has not provided clear and convincing evidence, on the administrative record at the

7   time the NPFC made its final decision, that the "**diagnosis**" was made by the Plaintiff.  Carr v.

8   Soc. Sec. Admin., 185 F.3d 1318, 1322 (Fed.Cir.1999).

9

10  *Depletion of the Fund*

11

12  The Plaintiffs are also Prejudiced by the NPFC's determination because under the APA, district

13  courts can grant a limited monetary award only if it is in the form of specific relief paid from a

14  particular "*res*". Once the "*res*" no longer exists, the claim becomes moot because funds cannot

15  be obtained from any other source. See City of Houston, 24 F.3d at 1428; Cnty. of Suffolk, 605

16  F.3d at 140–41.

17  Due to the size of the BP Oil Spill on April 20, 2010, the Fund may be depleted before the

18  Plaintiff is granted a court judgment.

19

20  **Conclusion**

21

22  The  NPFC's determination, as to the" **diagnosis"**, is **NOT** based on "such relevant

23  evidence as a reasonable mind might accept as adequate to support [its] conclusion." Kornman v.

24  Secs. & Exch. Comm'n, 592 F.3d 173, 184 (D.C. Cir. 2010). The NPFC's determination also

25  failed to explain a rational connection between the facts found in the Plaintiff's written

26  statements and the NPFC's determintation that the "*Plaintiff made the diagnosis himself*".

27  The Plaintiffs prays this Honorable Court to rule r, the NPFC's determinations was

28  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, under the

29  APA.The Plaintiffs further pray this Honorable Court to set aside ALL NPFC's determinations

30  of denial for all victims (who appealed to the NPFC) of the  of the  April 20, 2010, Gu;f pf

31  Mexico Mobile Offshore Drilling Unit DEEPWATER HORIZON oil spill.

Montgomery v USA          Case 2:11-cv-02298-CJB-SS          U S Dist Ct EAST DIST OF LA

1

2    Date:
3    Respectfully submitted,
4
5    _____
6    Plaintiff and representative of **All Other Similarly Situated Parties**
7

8    D. Montgomery
9    c/o ETR
10   33523 Eight Mile Rd
11   Bldg A-3, STE 108
12   Livonia, Michigan 48152
13   (313) 670-0371
14

15

16

17

18

Montgomery v USA        Case 2:11-cv-02298-CJB-SS        U S Dist Ct EAST DIST OF LA

1    **Exhibits**
2       1.  Exhibit 1 NPFC July 27, 2011 Final Decision
3       2.  Exhibit 2, March 23, 2011 Letter Request for Additional Information
4       3.  Exhibit 3, March 25, 2011 Response to Request for Additional Information
5       4.  Exhibit 4 NPFC May 25, 2011, Initial  Decision
6       5.  Exhibit 5 Plaintiff's June 13, 2011, "REQUEST FOR RECONSIDERATION"  and a
7           "REQUEST FOR CORRECTION OF RECORDS"
8       6.  Exhibit 6, Bean Dredging, LLC, et al v. United States of America)
9       7.  Exhibit 7, NPFC Claims Processing System).
10      8.  Exhibit 8 Affidavit of D. Montgomery
11      9.  Exhibit 9, October 2010 Advance Payment from GCCF
12
13
14
15