1

1    **Exhibit 1 NPFC July 27, 2011 Final Decision**

2

3

<u>**Reconsideration of CLAIM N10036-0566**</u>                    D. Montgomery v. U.S. Coast Guard

1    **Final Decision (Exhibit_1):**



**U.S. Department of**
**Homeland Security**

**United States**
**Coast Guard**

Director
United States Coast Guard
National Pollution Funds Center

NPFC CA   MS 7100
US COAST GUARD
4200 Wilson Blvd. Suite 1000
Arlington, VA 20598-7100
Staff Symbol (CA)
Phone: 202-493-6810
E-mail:
Donna.M.Holberg@uscg.mil
Fax:  202-493-6937

5890
7/27/2011

CERTIFIED MAIL – RETURN RECEIPT REQUESTED
Number: 7011 0470 0000 8895 0617

Engineering Technological Researchers
ATTN: Duane Montgomery
33523 Eight Mile Rd
Bldg A-3, Suite 108
Livonia, MI 48152

RE:    Claim Number: N10036-0566

Dear Mr. Montgomery:

The National Pollution Funds Center (NPFC), in accordance with the Oil Pollution Act of 1990, 33
U.S.C. § 2701 et seq. (OPA) and the associated regulations at 33 C.F.R. Part 136, denies payment on
claim number N10036-0566 involving the Deepwater Horizon incident. Please see the enclosed Claim
Summary/Determination Form for further explanation.

Disposition of this reconsideration constitutes final agency action.

If you have any questions or would like to discuss the matter, you may contact me at the above address
and phone number.

Sincerely,

Thomas S. Morrison
Chief, Claims Adjudication Division
U.S. Coast Guard

ENCL:  Claim Summary / Determination Form

2

**Reconsideration of CLAIM N10036-0566**         D. Montgomery v. U.S. Coast Guard

## CLAIM SUMMARY / DETERMINATION FORM

| Claim Number | : N10036-0566 |
|---|---|
| Claimant | : Engineering Technological Researchers |
| Type of Claimant | : Private (US) |
| Type of Claim | : Loss of Profits and Earning Capacity |
| Amount Requested | : $861,512.00 |

### *FACTS*:

On or about 20 April 2010, the Mobile Offshore Drilling Unit Deepwater Horizon (Deepwater Horizon) exploded and sank in the Gulf of Mexico. As a result of the explosion and sinking, oil was discharged. The Coast Guard designated the source of the discharge and identified BP as a responsible party (RP). BP accepted the designation and advertised its OPA claims process. On 23 August 2010, the Gulf Coast Claims Facility (GCCF) began accepting and adjudicating claims for certain individual and business claims on behalf of BP.

### *CLAIM AND CLAIMANT*:

On 25 February 2011, Engineering Technological Researchers (Claimant) presented an optional Oil Spill Liability Trust Fund (OSLTF) claim form to the National Pollution Funds Center (NPFC) for $115,460.00 in property damage and $746,052.00 in lost profits and earnings capacity. Claimant's total alleged loss equals $861,512.00. Duane Montgomery (Owner/Operator) asserted that he is the majority owner of the Claimant.[1]

Claimant is a nonprofit research, development and consulting firm. Claimant's primary data collection and monitoring tool is the research vessel SEASEARCHER, originally built by Bayliner and modified for long-distance, offshore use by the Lydia boat yard.[2] Owner/Operator indicated that property damages were caused by tarballs ingested into the SEASEARCHER's raw water intakes, which caused overheating and ruined both propulsion engines and generator sets. The claim also includes the Claimant's related and ensuing alleged loss of income from the unavailability of the SEASEARCHER.

The claimed loss of profits/earnings is calculated from the sum of 1 April 2010 through 31 December 2010 (second through fourth quarters of 2010) plus $186,513.00, which is the average of those three months as an estimate of 1st quarter of 2011 losses.

The personal property damages claimed are the cost of the replacement propulsion engines and generator sets, as indicated by the Toromont CAT price quote dated 18 October 2010.[3]

Claimant presented a claim to BP on 16 June 2010 and was assigned Claim #6899-124-172476. On 25 August 2010, Claimant presented an Emergency Advance Payment (EAP) claim to the GCCF for $43,596.78 in real/personal property damages. Claimant was assigned GCCF Claimant ID # 1070213 and Claim # 3010422. On 19 October 2010, Claimant received $43,900.00 in compensation from the GCCF on this claim.

---

[1] Letter of Explanation dated 27 February 2011.
[2] Id.
[3] Toromont Marine Power-CAT email quotation to Duane Montgomery on 16 October 2010, Re: Caterpillar 2x3056 engines and 2xC1.5 generators for Sail Boat.

**Reconsideration of CLAIM N10036–0566**                    D. Montgomery v. U.S. Coast Guard

(2) The kind and amount of coverage;

(3) The policy number;

(4) Whether a claim has been or will be presented to an insurer and, if so, the amount of the claim and the name of the insurer;

(5) Whether any insurer has paid the claim in full or in part or has indicated whether or not payment will be made;

(b) If requested by the Director, NPFC, the claimant shall provide a copy of the following material:

(1) All insurance policies or indemnification agreements;

(2) All written communications, and a summary of all oral communications, with any insurer or indemnifier;

(c) A claimant shall advise the Director, NPFC, of any changes in the information provided under this section.

33 CFR 136.233(a) A claim for loss of profits or impairment of earning capacity due to the injury to, destruction of, or loss of real or personal property or natural resources may be presented by a claimant sustaining the loss or impairment. The claimant need not be the owner of the damaged property or resources to recover for lost profits or income;

33 CFR 136.233(b) A claim for loss of profits or impairment of earning capacity that also involves a claim for injury to, or economic losses resulting from destruction of, real or personal property must be claimed under §136.213;

33 CFR 136.233(c) A claim for loss of profits or impairment of earning capacity that also involves a claim for loss of subsistence use of natural resources must be claimed under §136.219;

33 CFR 136.233   Proof.

In addition to the requirements of subparts A and B of this part, a Claimant must establish the following:

(a) That real or personal property or natural resources have been injured, destroyed, or lost;

(b) That the claimant's income was reduced as a consequence of injury to, destruction of, or loss of the property or natural resources, and the amount of that reduction;

(c) The amount of the claimant's profits or earnings in comparable periods and during the period when the claimed loss or impairment was suffered, as established by income tax returns, financial statements, and similar documents. In addition, comparative figures for profits or earnings for the same or similar activities outside of the area affected by the incident also must be established;

(d) Whether alternative employment or business was available and undertaken and, if so, the amount of income received. All income that a claimant received as a result of the incident must be clearly indicated and any saved overhead and other normal expenses not incurred as a result of the incident must be established.

1

**Reconsideration of CLAIM N10036-0566**            D. Montgomery v. U.S. Coast Guard

documentation in his March 25, 2011 response to the NPFC therefore no changes will be made to the record;

7. The NPFC stated in part in its Claim Summary Determination Form dated May 18, 2011 under cover letter dated May 23, 2011, under the section entitled "NPFC DETERMINATION", paragraph 11, the NPFC stated that the Claimant had not shown that his release of rights to Geico Indemnity Company (GEICO) did not apply to the damages for which the Claimant claimed to the NPFC. While the Claimant provided a copy of the front side of the payment check made by Geico which did specifically state on the front that the check was for "T/L FULL SETTLEMENT", the Claimant argues that the copy he sent the NPFC does not possess the Claimant's signature nor is any release of rights printed or implied on the check. The Claimant has not produced any documentation to support his statement has the Claimant has not been cooperative with the NPFC when trying to obtain a point of contact from Geico in order to obtain information pertaining to the damages paid by Geico to the Claimant. The record is accurate and therefore changes will not be made.

*NPFC Discussion on Request for Reconsideration Assertions made by the Claimant*

As noted above Claimant seeks the statutory authority by which the NPFC can make a formal request for information and seeks the principle purpose for which the information is intended to be used. The OPA and the associated regulations, as cited above, provide the authority and the principal purpose for which the information will be used. The specific pertinent regulations are listed below:

Pursuant to the governing claims regulations located at 33 CFR 136, the NPFC is authorized to request and obtain the necessary information for which a proper decision of a claim may be made. Specifically,

33 CFR 136.105 (a) The claimant bears the burden of providing all evidence, information, and documentation deemed necessary by the Director, NPFC, to support the claim;

33 CFR 136.105 (e) Each claim must include at least the following, as applicable:

33 CFR 136.105(e)(5) An explanation of how and when the removal costs or damages were caused by, or resulted from, an incident;

33 CFR 136.105(e)(6) Evidence to support the claim;

33 CFR 136.105(e)(7) A description of the actions taken by the claimant, or other person on the claimant's behalf, to avoid or minimize removal costs or damages claimed;

33 CRFR 136.105 (e)(11) If the claimant has insurance which may cover the removal costs or damages claimed, the information required under §136.111;

33 CFR 136.105(e)(13) In the discretion of the Director, NPFC, any other information deemed relevant and necessary to properly process the claim for payment;

33 CFR 136.111(a) A claimant shall provide the following information concerning any insurance which may cover the removal costs or damages for which compensation is claimed:

(1) The name and address of each insurer;

1

**Reconsideration of CLAIM N10036-0566**                D. Montgomery v. U.S. Coast Guard

On 02 November 2010, Claimant presented a supplemental real/personal property claim for $65,343.22 to the GCCF.  On 12 November 2010, the supplemental claim was denied by the GCCF.

On 5 January 2011, Claimant presented two Full Review Final Payment claims ($216,539.00 in lost profits and earnings; $65,343.00 in real/personal property damages) to the GCCF.  Those claims remain pending.

## *REQUEST FOR RECONSIDERATION:*

On June 13, 2011, the Claimant sent a request for reconsideration to the NPFC stating he would like the NPFC to reconsider his claim as he disagreed with the NPFC's denial.

The NPFC originally denied the claim on May 23, 2011 on the grounds that some of Claimant's information was inconsistent and some of his statements asserting that its damage to personal property and loss of income due to the incident were not supported by the evidence in the claim submission file.  For instance, Mr. Montgomery, Owner/Operator of the Claimant, alleged that on or about 10 May 2010, while the Claimant engaged in gathering water and soil samples during a pollution monitoring exercise, SEASEARCHER's raw water intakes ingested oily tarballs from the Deepwater Horizon oil spill, which caused the engines and gensets to overheat and burn out.  The Owner/Operator further alleged that SEASEARCHER was towed back to port and Geico Indemnity Company paid him $8,109.00 for the loss.[4]

On reconsideration, the Claimant provided an email with a 99-page written reconsideration request formatted to look like a Court Pleading which includes a request to correct records as identified in the Claimant's email to the NPFC dated June 13, 2011 at 2:32PM.[5]  Specifically, Claimant argues two major points with respect to the NPFC's original request for additional information letter that was sent to the Claimant dated March 23, 2011 and by which the Claimant argues 146 Counts against the NPFC:

1. Claimant seeks the statutory authority by which the NPFC can make a formal request for information and which authorizes the NPFC to make such a request for information;
2. Claimant seeks the principle purpose for which the information requested by the NPFC is intended to be used.

## *RECONSIDERATION CLAIM ANALYSIS:*

The claimant requested reconsideration and a correction of record which was received by the NPFC on June 13, 2011 via email. Claimant seeks a correction of the record based on several statutes that are not applicable to claims presented to the Oil Spill Liability Trust Fund.

---

[4] Although Owner/Operator alleged that this payment was limited because he did not have an OPA rider on his policy, the Geico check made out to Owner indicated "T/L Full Settlement."  Owner/Operator was asked repeatedly to clarify with his insurer whether his rights to recover for his alleged loss have been subrogated.  To date, he has not complied with this request.
[5] See, Email from Claimant to Mr. Richard Cool dated June 13, 2011 at 2:32 PM.

1

**Reconsideration of CLAIM N10036-0566**            D. Montgomery v. U.S. Coast Guard

He first cites to 5 U.S.C. § 552a, which is part of the Administrative Procedure Act. Section 552a addresses the maintenance of records[6] that an agency might compile on an individual. Its purpose is to protect the individual against an invasion of personal information; it forbids the disclosure of such records except under strict requirements. It also allows individuals on whom information is compiled the opportunity to review the information and request that the agency correct any inaccuracies in the record. 5 USC § 552a (d)(2)(B).

Claimant also cites to Section 552a (e)(1)–(4), which provides that an agency requesting information shall inform that individual of (1) the authority granted by statute or executive order, (2) the principal purpose or purposes for which the information is intended, the routine uses which may be made of the information, and (3) the effects on him, if any, of not providing all or any of the information.

Claimant cites to 5 U.S.C. § 552a (g)(1) and (g)(2)(B), which provides for civil remedies if an agency makes a determination not to amend an individual's record in accordance with his request. The remedies include the assessment of attorney fees and litigation costs reasonably incurred in which the complainant has substantially prevailed.

Finally, Claimant cites to 5 U.S.C. §§ 702 and 703 which provide that a person suffering a legal wrong because of agency action or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. Civil action may include declaratory judgment or injunctive relief.

The statutes cited by the Claimant are not applicable for the following reasons. First, the record that the Claimant seeks to correct is not a record as defined under Section 552a. Section 552a records are typically personal information compiled on an individual and an agency should correct inaccuracies of the record if requested by an individual. In this case, the Claimant seeks a correction of information that he submitted in pursuit of reimbursement of alleged lost profits and personal property damage from the Oil Spill Liability Trust Fund (the Fund).

As Claimant cites in the Oil Pollution Act of 1990 (OPA), the Fund is available to pay for claims for uncompensated removal costs and uncompensated damages. 33 U.S.C. § 2712(a)(4). OPA also provides that claims regulations shall be developed detailing the authority to obligate the Fund. 33 U.S.C. § 2712(e)(1). The National Pollution Funds Center (NPFC), which administers the Fund, developed claims regulations found at 33 CFR Part 136 pursuant to statutory authority.

Citing Section 552a (e), the Claimant argues that the determination to deny his claim did not cite the authority seeking such information, the intended use of the information or the effect if the requested information is not provided. As noted above, the statutory authority cited by the Claimant is not applicable to the claims process. However, OPA and the claims regulations provide the authority seeking this information. Also the claims regulations require that a Claimant has the burden of providing all information needed to prove his claim 33 CFR 136.105. The intended use of the requested information to substantiate the damages asserted by a Claimant. Finally, if a Claimant fails to meet the burden of establishing entitlement to reimbursement, i.e., he doesn't provide the requested information, the effect of not providing the information will be, as in this case, denial of the claim.

Claimant finally argues that there are civil remedies if an agency does not correct a record when requested by an individual. Again, these remedies are not applicable to claims information. There is, however, an administrative remedy if a claim is denied on reconsideration. 5 U.S.C. §

---

[6] "Record" is 5 U.S.C. § 552a means "any item, collection, or grouping of information that is maintained by an agency including but not limited to an individual's education, financial transactions, medical history and criminal or employment history and that contains his name or other identifying number or symbol." 5 U.S.C. § 552a (a)(4).

1

<u>**Reconsideration of CLAIM N10036-0566**</u>          D. Montgomery v. U.S. Coast Guard

704 provides that a Claimant may seek administrative review of a claims decision under an arbitrary and capricious standard.

### *NPFC Determination on Reconsideration*

As noted above, 33 CFR 136.105(a) and 136.105(e)(6) provides that the Claimant bears the burden of providing to the NPFC all evidence, information, and documentation deemed necessary by the Director, NPFC, to support the claim. Under 33 CFR § 136.233, a Claimant must establish loss of profits or impairment of earning capacity and that the loss was due to the destruction or injury to real or personal property or natural resources. The NPFC considered all the documentation submitted by the Claimant. The request for reconsideration must be in writing and include the factual or legal grounds for the relief requested, providing any additional support for the claim. 33 CFR 136.115(d).

The NPFC performed a *de novo* review of the entire claim submission upon reconsideration.

The NPFC performed a complete review of the documentation presented by the Claimant. The NPFC will address the Claimant's request for reconsideration and request for correction of the record separately below for easy identification of arguments raised by the Claimant based on two categories.

### *Correction of the Record*

The Claimant has identified the following items to which he requests that the NPFC make record corrections to. The Claimant cites TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a as his basis for his request for record correction. As noted above, 5 U.S.C. § 552a is not applicable authority for correcting the facts in the Claimant's claim and supporting documentation. As discussed below, the Claimant seeks correction of facts either submitted by him or gathered by the NPFC because he disagrees with the facts.

1.  The Claimant stated that the correct date the claim was submitted to the NPFC was Sunday, February 27, 2011 at 11:43 PM by email to "Lara YN1 Negron-Abreu@uscg.mil;

2.  The Claimant stated that he disagrees with the statement made in the NPFC Claim Summary Determination Form under the "NPFC Determination" section located in paragraph 5. The NPFC stated in part that the Claimant "made the diagnosis himself" which the Claimant argues that he provided a written response to the NPFC on March 25, 2011 with respect to this topic and therefore disagrees;

3.  The Claimant stated that he disagrees with the NPFC Claim Summary Determination where the NPFC stated under the "NPFC Determination" section located in paragraph 6 that neither cost estimate diagnoses the source of the Claimant's alleged damage as the Deepwater Horizon oil spill. Claimant argues that both estimates did diagnose the source of the damage as the Deepwater Horizon oil spill because of tar balls.

    Additionally, the Claimant stated he disagreed with paragraph 7 under the "NPFC Determination" section whereby the NPFC contacted Bayliner (the manufacturer) who confirmed that the subject vessel is a 1996 Bayliner 2858 Ciera Command Bridge, single screw watercraft designed for a gas engine. The manufacturer further confirmed that the

1

**Reconsideration of CLAIM N10036-0566**              D. Montgomery v. U.S. Coast Guard

subject vessel would not be compatible or even modified with the two CAT 3056 diesel engines and C1.5 genset that are listed as the replacement engines for the SEASEARCHER. Claimant argues that on March 25, 2011, he advised the NPFC that his vessel is a custom boat that was modified by the Lydia Boat Yard and that Bayliner has been producing Twin Engine Diesel boats since the 1980's;

4.  The Claimant stated that he disagreed with paragraph 8 under the "NPFC Determination" section where the NPFC stated that two CAT 3056 engines could not fit into the 2858 Ciera Command Bridge's engine box. The Claimant argues that he provided a copy of a deposit for his quote for the two CAT 3056 engines for his SEASEARCHER vessel therefore the information the manufacturer provided to the NPFC is untrue;

5.  The Claimant stated that he disagreed with paragraph 9 under the "NPFC Determination" section where the NPFC stated that the Owner/Operator provided a task log with positions (latitudes and longitudes) for the vessel SEASEARCHER. The NPFC had further stated that the Claimant alleged on May 10, 2010 that the SEASEARCHER experienced complete engine failure and had to be towed to port despite the fact that the task log indicated the vessel continued at the same SOG (sound over Ground) of 10° for another 15 days after the date the engines were allegedly ruined. The Claimant argues that the NPFC statement is untrue because the Claimant argues that the device that measures SOG was malfunctioning and defaulted to 10° at every location. The Claimant further argues that he remained at sea for another 15 days after the engine failed waiting for a tow vessel to become available;

6.  The Claimant stated that he disagreed with paragraph 10 under the "NPFC Determination" section where the NPFC stated that the Claimant's financial documentation was also inconsistent. The Claimant argues that the NPFC statement is untrue and that the NPFC never asked for any clarification on the financial documents. The Claimant further argues that the SEASEARCHER is the only data collection tool owned and without the SEASEARCHER in operation, there is no income therefore the Claimant's records show no income from May through December 2010 which the Claimant asserts is accurate;

7.  Finally, the Claimant stated that he disagreed with paragraph 11 under the "NPFC Determination" section where the NPFC stated that the Claimant had not shown that his release of rights to Geico Indemnity Company (GEICO) did not apply to the damages for which the Claimant claimed to the NPFC. While the Claimant provided a copy of the front side of the payment check made by Geico which did specifically state on the front that the check was for "T/L FULL SETTLEMENT", the Claimant argues that the copy he sent the NPFC does not possess the Claimant's signature nor is any release of rights printed or implied on the check.

In closing, for the Correction of Record section of the Claimant's request for reconsideration document, the Claimant asserts that refusal of the NPFC to make the above references changes to the record within 30 days of receipt of his request will result in the Claimant filing a civil action for judicial review as authorized under TITLE 5 PART I CHAPTER 5 SUBCHAPTER II § 552a. As fully discussed above, the cited statute is not applicable to Claimant's claim.

1

**Reconsideration of CLAIM N10036-0566**                    D. Montgomery v. U.S. Coast Guard

*NPFC Discussion on Correction of Record assertions made by the Claimant*

The Claimant identified 7 specific topics which he requests the NPFC correct the record. After review of the 7 arguments made by the Claimant, the NPFC has determined that the statements that Claimant wants corrected are not warranted based on the following arguments:

1.  The NPFC stated in its Claim Summary Determination Form dated May 18, 2011 under cover letter dated May 23, 2011, under the section entitled "CLAIM AND CLAIMANT" that on February 25, 2011, the Claimant presented an optional Oil Spill Liability Trust Fund (OSLTF) claim form to the NPFC. That date was accurate as evidenced by the date which the Claimant signed the OSLTF claim form on page 2. Additionally, under section entitled "Claimant's Submission to the OSLTF", the NPFC stated that on March 2, 2011 the claim was presented to the NPFC. It is important to note that while the Claimant signed his claim form on February 25, 2011 and emailed his claim to the NPFC on Sunday, February 27, 2011, the NPFC normal work days are Monday through Friday therefore the claim was not officially completely entered into the NPFC's Claims Processing System (CPS) and identified as an official claim until March 2, 2011 as identified. Based on these facts, the NPFC's record is accurate as stated warranting no correction;

2.  The NPFC stated in part in its Claim Summary Determination Form dated May 18, 2011 under cover letter dated May 23, 2011, under the section entitled "NPFC DETERMINATION", paragraph 5, that the Claimant "made the diagnosis himself". The NPFC held a telephone conference with the Claimant on March 22, 2011 at approximately 1401 EDT at which time the Claimant made the verbal statement to Mr. Richard Cool of the NPFC that he made the diagnosis himself when the Claimant was asked ..."what boatyard or CAT dealer had made the diagnosis that was summarized in the June 12, 2010 estimate and damage report". While the Claimant did send a written response to the NPFC dated March 25, 2011 as asserted, the information referenced in the NPFC Claim Summary Determination Form associated with the March 22, 2011 phone call is accurate as stated as warrants no correction;

3.  The NPFC stated in part in its Claim Summary Determination Form dated May 18, 2011 under cover letter dated May 23, 2011, under the section entitled "NPFC DETERMINATION", paragraph 6, that neither cost estimate diagnoses the source of the Claimant's alleged damage as the Deepwater Horizon oil spill. It is important to note that with respect to the June 12, 2010 estimate from CAT under the "Diagnostic Summary" it states…."Marine engines overheating failure in both port and starboard engines and genset due to raw water intake obstruction with "Tar like" oily substance. Engine replace required. Not under warranty". It is clear on this 30 day quote that the substance is identified by its characteristics although without sample analysis, there would be no way for the CAT dealer to positively identify the exact cause of the problem.

    Now with respect to the October 18, 2010 quote requested and sent via email as identified on the quote, it states…"This is for the required equipment replacement due to BP Gulf of Mexico Oil Spill damage as you have mentioned". It is clear based on the wording in this quote that this statement was added based on what the Claimant stated to the Company and is not based on their independent findings without sample analysis to make such an assertion.

1

**Reconsideration of CLAIM N10036-0566**                    D. Montgomery v. U.S. Coast Guard

1

**Reconsideration of CLAIM N10036-0566**          D. Montgomery v. U.S. Coast Guard

Additionally, the NPFC stated in part in its Claim Summary Determination Form dated May 18, 2011 under cover letter dated May 23, 2011, under the section entitled "NPFC DETERMINATION", paragraph 7, that the NPFC contacted Bayliner (the manufacturer) who confirmed that the subject vessel is a 1996 Bayliner 2858 Ciera Command Bridge, single screw watercraft designed for a gas engine. The manufacturer further confirmed that the subject vessel would not be compatible or even modified with the two CAT 3056 diesel engines and C1.5 genset that are listed as the replacement engines for the SEASEARCHER. Claimant argues that on March 25, 2011, he advised the NPFC that his vessel is a custom boat that was modified by the Lydia Boat Yard and that Bayliner has been producing Twin Engine Diesel boats since the 1980's. While Bayliner may have been producing diesel engines that is not the issue here. The Claimant made an assertion that his vessel was modified although the Claimant never produced any documentation in support of his assertions that would refute what the manufacturer contends. The Claimant had the opportunity on reconsideration to produce any new information he desired the NPFC to consider but he has opted only to make written assertions with no support;

4.  The NPFC stated in part in its Claim Summary Determination Form dated May 18, 2011 under cover letter dated May 23, 2011, under the section entitled "NPFC DETERMINATION", paragraph 8, the NPFC stated that two CAT 3056 engines could not fit into the 2858 Ciera Command Bridge's engine box. The Claimant argues that he provided a copy of a deposit for his quote for the two CAT 3056 engines for his SEASEARCHER vessel therefore the information the manufacturer provided to the NPFC is untrue. The information contained in the record was provided to the NPFC by the manufacturer and the NPFC would have no reason to change what the manufacturer asserts. The Claimant asserts because he has a receipt for a deposit on the engines he has purportedly purchased that this receipt is evidence that the manufacturer is incorrect. The NPFC is not convinced by the Claimant's argument and therefore the record will not be changed;

5.  The NPFC stated in part in its Claim Summary Determination Form dated May 18, 2011 under cover letter dated May 23, 2011, under the section entitled "NPFC DETERMINATION", paragraph 9, that the Owner/Operator provided a task log with positions (latitudes and longitudes) for the vessel SEASEARCHER. The NPFC had further stated that the Claimant alleged on May 10, 2010 that the SEASEARCHER log indicated the vessel continued at the same SOG (Speed over Ground) of 10" for another 15 days after the date the engines were allegedly ruined. The Claimant argues that the NPFC statement is untrue because the Claimant argues that the device that measures SOG was malfunctioning and defaulted to 10" at every location. The Claimant further argues that he remained at sea for another 15 days after the engine failed waiting for a tow vessel to become available. The Claimant never produced any evidence in support of his assertions and the information stated by the Claimant is accurate based on the record at the time the determination was made therefore the record stands and will not be changed;

6.  The NPFC stated in part in its Claim Summary Determination Form dated May 18, 2011 under cover letter dated May 23, 2011, under the section entitled "NPFC DETERMINATION", paragraph 10, the NPFC stated that the Claimant's financial documentation was also inconsistent. The Claimant argues that the NPFC statement is untrue and that the NPFC never asked for any clarification on the financial documents. The NPFC did request in detail in its original request for additional information dated March 23, 2011 pertaining to the Claimant's financial documentation although the Claimant refused to produce the requested

1

### Reconsideration of CLAIM N10036-0566

D. Montgomery v. U.S. Coast Guard

33 CFR 136.235   Compensation allowable.

The amount of compensation allowable is limited to the actual net reduction or loss of earnings or profits suffered. Calculations for net reductions or losses must clearly reflect adjustments for—

(a) All income resulting from the incident;

(b) All income from alternative employment or business undertaken;

(c) Potential income from alternative employment or business not undertaken, but reasonably available;

(d) Any saved overhead or normal expenses not incurred as a result of the incident; and

(e) State, local, and Federal taxes.

The primary purpose of the information requested from the Claimant is to enable the NPFC to make a decision based on all information provided by the Claimant in support of his request for compensation.

Finally, it is important to note that the Claimant has refused to provide the required and requested information as evidenced by the original submission along with the Claimant's response to the NPFC's March 23, 2011 request for additional information. While the Claimant also had the opportunity to produce the necessary information on reconsideration, the Claimant has opted to only make arguments which he has not supported with additional information.

Based on the foregoing information, the NPFC again denies the claim because (1) the Claimant has failed to demonstrate that he had an alleged loss of profits in the amount claimed and (2) the Claimant has failed to demonstrate a loss of profits due to the injury, destruction or loss of property or natural resources as a result of a discharge or substantial threat of a discharge of oil.

This claim is denied upon reconsideration.

Claim Supervisor: *Thomas Morrison*

Date of Supervisor's review: *7/27/11*

Supervisor Action: *Denial on reconsideration approved*

Supervisor's Comments:

1
2

**2**

Montgomery v USA        Case 2:11-cv-02298-CJB-SS        U S Dist Ct EAST DIST OF LA

1    **Exhibit 2, March 23, 2011 Letter Request for Additional Information**

2

3

U.S. Department of
Homeland Security

**United States
Coast Guard**



Director
United States Coast Guard
National Pollution Funds Center

NPFC CA  MS 7100
US COAST GUARD
4200 Wilson Blvd., Suite 1000
Arlington, VA 20598-7100
Staff Symbol: (CA)
Phone: 800-280-7118
E-mail: richard.m.cool@uscg.mil
Fax:  202-493-6937

CERTIFIED MAIL – RETURN RECEIPT REQUESTED
Number: 7011  0470  0000  8895  5711

5890/DWHZ
Claim # N10036-0566
23 March 2011

Engineering Technological Researchers Corporation
c/o Mr. Duane Montgomery
33523 Eight Mile Road, Bldg A-3, Suite 103
Livonia, Michigan 48152

Re: Claim Number:  N10036-0566

Dear Mr. Montgomery:

Enclosed please find a list of the documentation that we have received in support of your claim:

Documentation Previously Provided:

1. NPFC Optional OSLTF Claim Form 25 February 2011.
2. Claim submission, table of contents and overview
3. Wikipedia excerpt on Deepwater Horizon oil spill.
4. NOAA charts depicting approximate oil spill locations for—
    a. April 25 to April 28, 2010,
    b. April 27 to May 1, 2010,
    c. April 29 to May 3, 2010,
    d. April 30 to May 4, 2010,
    e. May 1 to May 5, 2010, and
    f. May 2 to May 6, 2010.
5. Engineering Technological Researchers Corp. Profit and Loss Statements for 1st, 2nd, 3rd and 4th Quarters, 2010.
6. Estimate and Damage Report June 12, 2010, for vessel SeaSeascarcher, in the amount of $51,956.78. One page.
7. Estimate and Damage Report October 18, 2010: Quote for (2) 3056 Caterpillar Marine Engines and (2) C1.5 generator for Sail Boat, from Toromount CAT, Concord, Ontario, Canada. 30-Day Quote dated 18 October 2010 in $60,390 CDN, plus taxes. 5 pages.
8. Receipt for engine deposit in amount of $30,000.00, dated 29 October 2010.
9. Parcel Plus/FedEx shipping receipt dated 29 October 2010, with accompanying order number 8217.
10. Invoice for Engine Removal in amount of $915.00 for work completed 17 September 2010, from Jim Pettit' Diesel Service, Felton, DE.  Invoice number obscured.

11. Invoice for Engine Removal in amount of $670.00 for work completed 24 September 2010, from Jim Pettit' Diesel Service, Felton, DE.  Invoice number 347256.
12. Handwritten, non-negotiable check copy on PNC Bank for $1,585.00, payable to Jim Pettit's Diesel Service, dated 22 October 2010.
13. Invoice for Engine Removal (Statement) in account with Sea Coast Services LLC to Duane, for work completed 24 September 2010, in amount of $928.
14. Handwritten, non-negotiable check copy on PNC Bank for $928, payable to Sea Coast Services LLC, dated 22 October 2010.
15. Four undated photos of engine removals.
16. 2008 Tax Form 1120, Corporate Income Tax Return for Engineering Technological Researchers Corp (1 page).
17. 2009 Tax Form 1120, Corporate Income Tax Return for Engineering Technological Researchers Corp (1 page).
18. State of Michigan Watercraft Registration for 30 ft. 6 in, 1996 Bayliner, registration number 0757135, expiring 31 March 2013.
19. Michigan boat registration decal, number 0757135, showing expiration date of 13 Mar 13
20. Pantaenius Yacht Insurance quotation number 2-000000-747198-10 for stated value yacht insurance dated 03 December 2010 for the sailing yacht Lydia 'Seasearcher'.
21. Claim for damages, BP claim number 6866-124-172976 in the amount of $43,856.78, dated 16 June 2010.
22. Copy of Claimant's Ohio State Driver's License, number RS615688
23. Copy of GEICO Indemnity Company check #N84797105 dated 6/14/2010, in the amount of $8,109.00, payable to ETR, Attn: Duane Montgomery, for Comprehensive Coverage, T/L Full Settlement.
24. Certified mail receipts and USPS payment for mailing to BP Oil Service Center
25. BP letter to Claimant dated 19 July, 2010, regarding insufficient documentation.
26. ESIS claim adjuster letter to Claimant dated 22 July 2010, requesting copy of certain documents, including Social Security Card, Log with mapping grid and pictures of vessel,
27. Claimant letter of 21 July 2010 to BP/ESIS, providing 7 pages of task log sheets, Ohio Driver's License with SSN and documentation of mailing.
28. GCCF letter of 23 August 2010 with listing of Claim Site Offices.
29. Undated and unsigned copy of Claimant's GCCF Claim Form for Emergency Advance Payment in the amount of $81,032.36.
30. Claimant's GCCF Claim Form for Final Payment in the amount of $281,882.22, signed 11/18/2010.
31. GCCF Emergency Advance Payment Determination and payment check for $43,900 dated 19 October 2010.
32. GCCF Denial letter for Supplemental Emergency Advance Payment, .dated 12 November 2010.
33. GCCF Claimant and Claim Information report, accessed 2/27/2011.
34. NOAA information sheet, "Understanding Tar Balls", July 8, 2010.
35. 30-Day Quote for (2) 125 HP Marine Propulsion Engines and (1) 10 kW Generator Set including labor and materials from MAK Caterpillar Marine Power Systems. Quote dated 12 June 2010 for $51,956.78.

36. Receipt for document shipping charges to Toromount CAT of $27.85 dated 29 October 2010.
37. Quote for Vessel Insurance from Pantaenius Yacht Insurance dated 03 December 2010.
38. Quarterly Profit and Loss Statements from 2010. Statements for Q2 through Q4 may be incomplete.
39. Task Log for Engineering Technological Researchers Corporation indicating site coordinates from 01 March 2010 through 25 May 2010.

In order for us to review your claim further, please provide the following documentation and answer the following questions in as much detail as possible:

Documentation Requested:

1. Complete Income Tax Return Filings from 2008 and 2009, with all forms, schedules and attachments. Provide 2010 if available. Only one page of each was provided.
2. Complete state income tax return filings for Michigan/Ohio from 2008, 2009 and (if available) 2010.
3. Detailed Monthly Profit and Loss Statements from January 2008 through the present. Only quarterly statements were previously provided. These statements need to have actual reported amounts.
4. Monthly Customer Sales Ledgers from January 2008 through the present.
5. Any applicable agreements/customer contracts or grants for 2010 and 2011.
6. Copies of grants received for performing research, studies, etc.
7. Documentation verifying the make and model numbers of your original engines and generator sets. If available, provide the associated serial numbers.
8. Copies of all actual invoices and receipts related to the engine replacement. Please note it appears that only quotes or estimates have been provided to date.
9. Provide copies of actual payments made for the engine replacement/ repairs.
10. For new engines, provide listing of any upgrades not installed on original engines.
11. Pictures of the vessel from ahead, the side and the stern.

Please Answer the Following Questions:

1. Provide a detailed description of Engineering Technological Researchers Corporation to include but not limited to the following items:
   a. Type of entity that Engineering Technological Researchers Corporation is currently operated as. The State of Michigan indicates that the subject entity was formed as a Non-Profit Non-Stock Corporation on June 7, 2006. Please indicate if the corporation is still operated under this status.
   b. If the corporation has shareholders, identify the current shareholders/ owners.
   c. Describe the services/ products provided by the corporation.
   d. Describe the typical clientele of the business.
   e. Describe how the corporation earns income.
   f. The Corporate filing in Michigan indicates that the Corporation would be financed through fundraising, donations and grants. Please describe in further

detail and explain if the Corporation still relies on this type of financing to fund operations.

    i. From whom do you receive such sources of funds?

    g. Identify and describe significant projects from 2009 and 2010, including any projects that were scheduled following the Deepwater Horizon incident.

    h. Identify the number of people employed by the corporation.

    i. Describe the type of personnel employed by the corporation.

2. Identify your role and title within Engineering Technological Researchers Corporation. The 2006 Michigan non-profit filing does not indicate you to be an owner or officer of Engineering Technological Researchers Corporation. If authorized to represent the company by letter or power of attorney, a copy of the document is required.

3. Describe how you are compensated by the corporation.

4. You provided a Task Log for Engineering Technological Researchers Corporation through May 25, 2010. Describe the operations performed at the stated coordinates.

5. Differentiate your operations between Livonia, Michigan, Ohio and other locations where you may operate.

6. Your vessel is identified as a 30.5 ft, 1996 Bayliner. We are not aware that Bayliner manufactured diesel-powered vessels. Please identify the Bayliner model number and where the vessel is normally stored when not in operating on a contract or grant.

7. Please identify the name of the dealership/marina that provided the first cost estimate for replacement of the engines on 12 June 2010. Was this the company that diagnosed oil or tar balls in the cooling system?

8. Provide the date in which the vessel/ engines became inoperable.

9. Describe the last date following the Deepwater Horizon incident that you were able to perform business operations.

    a. Have you repaired your vessel and resumed business operations? If so, when you did you resume operations?

    b. Provide a detailed timeline of your actions after determining that your vessel was inoperable.

10. The website for "Engineering Technological Researchers Corporation" indicates you were running for the 13th Congressional District in Michigan. Describe how your involvement in politics and campaigning affected your day to day business operations.

11. Your campaigning website lists your working experience, however; it does not seem to mention Engineering Technological Researchers Corporation. Please explain.

12. Explain the differences in claimed amounts from your application to the GCCF for Final Payment and your claim with the NPFC.

13. Explain how you determined your claimed losses.


Please understand that no claim is guaranteed to be paid even if the documentation requested is provided. To be paid, the claim and the documentation must meet evidentiary requirements. If we do not receive sufficient documentation from you within 14 days of the date of this letter, we will proceed to adjudicate the claim without it. This may result in a diminished settlement offer and/or denial of the claim.

If you have any questions about the request or would like to discuss the matter, you may write me at the above address or contact me by phone at 800-280-7118 or by email at Richard.M.Cool@uscg.mil.

Sincerely,

Richard M. Cool
Claims Adjuster
National Pollution Funds Center

**3**

1    **Exhibit 3, March 25, 2011 Response to Request for Additional Information**

2

3

NPFC #N10036-0566:                                Montgomery vs. BP et al



1                                    Director
2                        National Pollution Funds Center
3                             Arlington, VA 22203
4                  YN1 Lara K. Negron-Abreu, NPFC Claims Adjudication
5              US COAST GUARD STOP 7100, 4200 Wilson Boulevard Ste 1000
6                             Arlington, VA 20598-7100
7                  Phone:  800.280.7118, Fax:   202.493.6937
8                        Lara.K.Negron-Abreu@uscg.mil
9
10
11   **D. Montgomery**                              )
12   *Plaintiff,*                                   )
13                                                  )
14   *v.*                                           )
15                                                  ) Case No. GCCF #1070213
16   **BP**                                         )     BP #6866-124-172-976
17                                                  ) **NPFC #N10036-0566**:
18   *Defendants,*                                  ) Adjustor: Rick Cool
19   _____/

     **D. Montgomery**                          **BP Oil Service Center**
     c/o Engineering Technological Researchers, **4375 Michoud Blvd.**
     33523 Eight Mile Road                      **New Orleans, LA 70129**
     Bldg. A-3; Ste 108                         **504-254-8951**
     Livonia, MI 48152
     Duane_Montgomery@yahoo.com                 Defendant
     Plaintiff, In Pro per
     305-978-5997

20

21   <u>**RESPONSE TO MARCH 23, 2011 REQUEST FOR**</u>
22   <u>**ADDITIONAL INFORMATION**</u>

NPFC #N10036-0566:                                    **Montgomery vs. BP et al**

Documentation Requested:

1.  Complete Income Tax Return Filings from 2008 and 2009, with all
    forms, schedules and attachments. Provide 2010 if available. Only
    one page of each was provided.
    **Response: OBJECTION – Privilege Material may disclose
    client's information in violation of confidentiality agreements.**

**2.** Complete state income tax return filings for Michigan/Ohio from
    2008, 2009 and (if available) 2010.
    **Response: OBJECTION – Privilege Material may disclose
    client's information in violation of confidentiality agreements.**

3.  Detailed Monthly Profit and Loss Statements from January
    2008 through the present. Only quarterly statements were
    previously provided. These statements need to have actual
    reported amounts.
    **Response:** Document requested is not available.  If document
    becomes available within the 14 day time limit, the document(s)
    will be submitted as a supplement or addendum to this filing.

4.  Monthly Customer Sales Ledgers from January 2008
    through the present.
    **Response: OBJECTION – Privilege Material may disclose
    client's information in violation of confidentiality agreements.**

5.  Any applicable agreements/customer contracts or
    grants for 2010 and 2011.
    **Response: OBJECTION – Privilege Material may disclose
    client's information in violation of confidentiality agreements.**

6.  Copies of grants received for performing research, studies, etc.
    **Response:** The requested document(s) does not exist.

7.  Documentation verifying the make and model numbers of
    your original engines and generator sets. If available, provide
    the associated serial numbers.
    **Response:** The requested document(s) does not exist.

8.  Copies of all actual invoices and receipts related to the engine
    replacement. Please note it appears that only quotes or estimates
    have been provided to date.
    **Response:** The work has not been completed.
    **Invoices for the work that has been completed to date was**

NPFC #N10036-0566:                                      Montgomery vs. BP et al

submitted with the claim submission: See original claim
submission on pages:

RECEIPT FOR ENGINE DEPOSIT OCT 29TH , 2010
............................................. 21
INVOICE FOR ENGINE REMOVAL SEP 17TH , 2010
.......................................... 25
RECEIPT PAYING INVOICE FOR ENGINE REMOVAL SEP 17TH , 2010
......... 27
INVOICE FOR ENGINE REMOVAL SEP 24TH , 2010
.......................................... 28
RECEIPT PAYING INVOICE FOR ENGINE REMOVAL
SEP24TH 2010  .
                        ……………………………………………
…… 29

**Also, see attached invoice from Toromont CAT, dated
December 2, 2010:**

9.  Provide copies of actual payments made for the engine replacement/ repairs.
    **Response:** The work has not been completed.
    Document(s) requested is not available.  If document becomes
    available within the 14 day time limit, the document(s) will be
    submitted as a supplement or addendum to this filing. Cancelled
    bank checks have been ordered and will be submitted as a
    supplement or addendum to this filing.

10. For new engines, provide listing of any upgrades not installed on original engines.
    **Response:** The work has not been completed.  We are
    anticipating upgrades or changes to the following:
    a.  **Engine beds**
    b.  **Motor mounts**
    c.  **Exhaust and mufflers system**
    d.  Engine controls and dash gages (rpm, temp, etc)
    e.  Throttle and gear shifters
    f.  Prop shafts and possible props
    g.  12 volt to 24 volt conversion
    h.  Fuel filtering system
    i.  Fire prevention insulation

11. Pictures of the vessel from ahead, the side and the stern.
    **Response:** Document(s) requested is not available.  If document becomes available

NPFC #N10036-0566:                                    Montgomery vs. BP et al

1   within the 14 day time limit, the document(s) will be submitted as a supplement or
2   addendum to this filing.
3
4        Please Answer the Following Questions:
5
6           1.  Provide a detailed description of Engineering Technological
7           Researchers Corporation to include but not limited to the following
8           items:
9                   a. Type of entity that Engineering Technological Researchers
10                  Corporation is currently operated as. The State of Michigan
11                  indicates that the subject entity was formed as a Non-Profit Non-
12                  Stock Corporation on June 7, 2006. Please indicate if the
13                  corporation is still operated under this status.
14                  **Response: YES**
15
16
17                  b. If the corporation has shareholders, identify the current
18                  shareholders/ owners.
19                  **Response: NO Shareholder, I, Duane Montgomery is the only**
20                  **owner**
21
22
23                  c. Describe the services/ products provided by the corporation.
24                  **Response: Research, Development and Data collection and**
25                  **analysis.**
26
27
28
29                  d. Describe the typical clientele of the business.
30                  **Response: Automotive, Utilities and Government entities**
31
32
33                  e. Describe how the corporation earns income.
34                  **Response: By performing consulting services for Research,**
35                  **Development and Data collection and analysis.**
36
37
38                  f  The Corporate filing in Michigan indicates that the
39                  Corporation would be financed through fundraising, donations
40                  and grants. Please describe in further detail and explain if the
41                  Corporation still relies on this type of financing to fund
42                  operations.
43                  **Response: The Corporation does not rely on this type of**
44                  **financing to fund operations. .**
45                          i.  From whom do you receive such sources of funds?
46                                  **Response: OBJECTION –**
47                                  **Privilege Material may**

NPFC #N10036-0566:                                    Montgomery vs. BP et al

> **disclose client's information in
> violation of confidentiality
> agreements.**

    g.  Identify and describe significant projects from 2009 and 2010, including any

projects that were scheduled following the Deepwater Horizon incident,

> **Response:   OBJECTION  –  Privilege
> Material   may   disclose   client's
> information in violation of confidentiality
> agreements.**

    h.  Identify the number of people employed by the corporation,

> **Response: 25 to 30 persons**

    i.  Describe the type of personnel employed by the corporation.

> **Response: Project Manager, Analysts, Engineers,
> Administrators and Assistants.**

    ii.     Identify your role and title within
> Engineering Technological Researchers
> Corporation.
>     The 2006 Michigan non-profit
> filing does not indicate you to be an
> owner or officer of
>     Engineering Technological
> Researchers Corporation. If authorized
> to represent the
>     company by letter or power of
> attorney, a copy of the document is
> required.

> **Response: I am the owner, the
> Michigan filings list me as the
> "Incorporator" which is the owner of
> a company with no shareholders.**

3. Describe how you are compensated by the corporation.

**Response: Salary**

4. You provided a Task Log for Engineering Technological Researchers Corporation through May 25, 2010. Describe the operations performed at the stated coordinates.

> **Response:  OBJECTION  –  Privilege  Material**

NPFC #N10036-0566:                                    **Montgomery vs. BP et al**

1    **may disclose client's information in violation of**
2    **confidentiality agreements.**
3
4    5.   Differentiate your operations between Livonia,
5    Michigan, Ohio and other locations where you may
6    operate.
7    **Response: In some cases we are required to operate an**
8    **office within the State of the client.**
9
10   6. Your vessel is identified as a 30.5 t, 1996 Bayliner.
11   We are not aware that Bayliner manufactured diesel-
12   powered vessels. Please identify the Bayliner model
13   number and where the vessel is normally stored when
14   not in operating on a contract or grant.
15   **Response: Vessel in not normally stored due to on-**
16   **going assignments over the past 7 years. SeaSearch**
17   **is a Custom Boat that was modified by the Lydia**
18   **Boat Yard. Bayliner has been producing Twin**
19   **Engine Diesel boats since the 1980's.**
20
21   **Samples of other Twin Diesel-Powered Bayliner**
22   **boats:**
23
24   1.   http://boats.oodle.com/view/1987-bayliner-3270-
25        motor-yacht-diesel/2450442204-chesterfield-va/
26
27   2.   http://www.yachtworld.com/core/listing/boatMer
28        gedDetails.jsp?boat_id=2285117&ybw=&units=
29        Feet&currency=USD&access=Public&listing_id
30        =29066&url=
31
32
33   3.   http://bayliner32xx.com/DesktopDefault.aspx?tab
34        index=8&tabid=29
35
36   4.   http://www.dieselboats.net/dieselboats/Diesel_Ba
37        yliner.php
38
39
40        iii.    Please identify the name of the
41                dealership/marina that provided the first
42                cost estimate for replacement of the
43                engines on 12 June 2010. Was this the
44                company that diagnosed oil or tar balls in
45                the cooling system?
46                **Response: Vessel was not taken to a**

NPFC #N10036-0566:                                    Montgomery vs. BP et al

1          dealership. Caterpillar 800 support
2          number was called and an authorized
3          service agent was sent out to work on
4          the Vessel. We received all information
5          from the Caterpillar 800 support call
6          center by phone and fax.
7
8
9       8. Provide the date in which the vessel/ engines became inoperable,
10      Response: At some point beginning May 1, 2010 and complete
11      failure on May 10, 2010.
12
13
14      9. Describe the last date following the Deepwater
15      Horizon incident that you were able to perform
16      business operations.
17      Response: May 10, 2010
18
19          a. Have you repaired your vessel and resumed
20          business operations? If so, when you
21              did you resume operations?
22      Response: NO
23
24          b. Provide a detailed timeline of your actions
25          after determining that your vessel was inoperable.
26      Response: OBJECTION – question calls for a
27      "narrative answer" -  It invites the witness to
28      narrate a series of occurrences, which may
29      produce irrelevant or otherwise inadmissible
30      testimony.
31
32      10. The website for "Engineering Technological
33      Researchers Corporation" indicates you were running
34      for the 13th Congressional District in Michigan.
35      Describe how your involvement in politics and
36      campaigning affected your day to day business
37      operations.
38      Response:   OBJECTION  –  Irrelevant,   this
39      question invites  or  causes  the  witness  to  give
40      evidence not related to the facts of the case at hand.
41
42      11. Your campaigning website lists your working
43      experience, however; it does not seem to mention
44      Engineering Technological Researchers Corporation.
45      Please explain.
46      Response: It is unethical to use a political website to

NPFC #N10036-0566:                                    Montgomery vs. BP et al

1          advertise or promote a private business.
2
3
4          12. Explain the differences in claimed amounts from
5          your application to the GCCF for Final Payment and
6          your claim with the NPFC.
7          **Response: I filed my claim in November of 2010 for**
8          **only the losses in the second quarter of 2010. The**
9          **GCCF did not announce it new protocol in**
10         **calculation of future losses until February of 2011.**
11
12     12. Explain how you determined your claimed losses.
13         **Response:**
14
15  **Loss Earnings (from Profit and Loss statements)**

16   Apr 1 to June 30, 2010          $(216,539)

17   Jul 1 to Sep 30, 2010           $(171,653)

18   Oct 1 to Dec 31, 2010           $(171,347)

19   Jan 1 to Mar 31, 2011

20   Estimated avg of last 3 qtr     $( 186,513)

21   Subtotal                        $( 746,052)

22  **Personal Property Loss**

23   New engines and gensets         $ 115,460

24  **Grand Total**                    **$861,512.00**

25

26  **The GCCF release its calculation as:**

27         2x their proven 2010 losses. (2010 losses + 70% of 2010 losses + 30% of
28         2010 losses = 2x 2010 losses).
29
30         GULF COAST CLAIMS FACILITY ANNOUNCEMENT
31         OF
32         PAYMENT   OPTIONS,   ELIGIBILITY   AND   SUBSTANTIATION
33         CRITERIA, AND
34         FINAL PAYMENT METHODOLOGY
35         February 2, 2011
36         http://www.gulfcoastclaimsfacility.com/METHODOLOGY.%20FEB.2.%
37         20FINAL%20DRAFT.pdf
38
39  **Loss Earnings (from Profit and Loss statements)**

NPFC #N10036-0566:                                    Montgomery vs. BP et al

| | | | |
|---|---|---|---|
| 1 | Apr 1 to June 30, 2010 | | $(216,539) |
| 2 | Jul 1 to Sep 30, 2010 | | $(171,653) |
| 3 | Oct 1 to Dec 31, 2010 | | $(171,347) |
| 4 | ~~Jan 1 to Mar 31, 2011~~ | | |
| 5 | ~~Estimated avg of last 3 qtr~~ | ~~$( 186,513)~~ | |
| 6 | Subtotal | ~~$( 746,052)~~ | $(559,539) |
| 7 | **Personal Property Loss** | | |
| 8 | New engines and gensets | | $ 115,460 |
| 9 | Total 2010 losses as : | | $ 674.999 |
| 10 | GCCF calculated Total with Future = 2x 2010 losses = $ 674.999 x 2 = **$1,349,998** | | |

11

12 **The Claimant, Duane Montgomery, reserves the right to supplement**

13 **this filing with additional documents as soon as the missing documents**

14 **become available.**

15

16 **I, Duane Montgomery, state under oath that the information contained**

17 **in this filing is true to the best of my knowledge.**

18

19 *Duane Montgomery* **(electronic signature)**

20 **Duane Montgomery      Dated: March 25, 2011**

21

22

23
24

**4**

Montgomery v USA          Case 2:11-cv-02298-CJB-SS          U S Dist Ct EAST DIST OF LA

1    **Exhibit 4 NPFC May 25, 2011, Initial  Decision**

2

3

U.S. Department of
Homeland Security

**United States
Coast Guard**



Director
**National Pollution Funds Center**
United States Coast Guard

NPFC CA   MS 7100
US COAST GUARD
4200 Wilson Blvd. Suite 1000
Arlington, VA 20598-7100
Staff Symbol: (CA)
Phone: 202-493-6700
E-mail: arl-pf-npfcclaimsinfo@uscg.mil
Fax:  202-493-6937

CERTIFIED MAIL – RETURN RECEIPT REQUESTED
Number:  7011  0470  0000  8895  6541

DWHZ/5890
23 May 2011

Engineering Technological Researchers
ATTN: Duane Montgomery
33523 Eight Mile Rd, Bldg A-3, Suite 108
Livonia, MI  48152

RE:   Claim Number: N10036-0566

Dear Mr. Montgomery:

The National Pollution Funds Center (NPFC), in accordance with the Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq. (OPA) and the associated regulations at 33 C.F.R. Part 136, DENIES payment on claim number N10036-0566 involving the Deepwater Horizon oil spill.  Please see the enclosed Claim Summary/Determination Form for further explanation.

You may make a written request for reconsideration of this claim.  The reconsideration must be received by the NPFC within 60 days of the date of this letter and must include the factual or legal basis of the request for reconsideration, providing any additional support for the claim.  However, if you find that you will be unable to gather particular information within the time period, you may include a request for an extension of time for a specified duration with your reconsideration request.

Reconsideration of the denial will be based upon the information provided.  A claim may be reconsidered only once. Disposition of that reconsideration in writing will constitute final agency action.  Failure of the NPFC to issue a written decision within 90 days after receipt of a timely request for reconsideration shall, at the option of the claimant, be deemed final agency action.  All correspondence should include claim number N10036-0566.

Mail reconsideration requests to:

Director (ca)
NPFC CA MS 7100
US COAST GUARD
4200 Wilson Blvd, Suite 1000
Arlington, VA 20598-7100

Sincerely,

Claims Adjudication Division
National Pollution Funds Center
U.S. Coast Guard

Enclosures:    (1) Claim Summary/Determination Form
               (2) List of Documentation Provided by Claimant

CLAIM SUMMARY / DETERMINATION FORM

| | |
|---|---|
| Date | : 5/18/2011 |
| Claim Number | : N10036-0566 |
| Claimant | : Engineering Technological Researchers |
| Type of Claimant | : Private (US) |
| Type of Claim | : Loss of Profits and Earning Capacity |
| Amount Requested | : $861,512.00 |

## FACTS

On or about 20 April 2010, the Mobile Offshore Drilling Unit Deepwater Horizon (Deepwater Horizon) exploded and sank in the Gulf of Mexico. As a result of the explosion and sinking, oil was discharged. The Coast Guard designated the source of the discharge and identified BP as a responsible party (RP). BP accepted the designation and advertised its OPA claims process. On 23 August 2010, the Gulf Coast Claims Facility (GCCF) began accepting and adjudicating claims for certain individual and business claims on behalf of BP.

## CLAIM AND CLAIMANT

On 25 February 2011, Engineering Technological Researchers (Claimant) presented an optional Oil Spill Liability Trust Fund (OSLTF) claim form to the National Pollution Funds Center (NPFC) for $115,460.00 in property damage and $746,052.00 in lost profits and earnings capacity. Claimant's total alleged loss equals $861,512.00. Duane Montgomery (Owner/Operator) asserts that he is the majority owner of Claimant.[1]

Claimant is a nonprofit research, development and consulting firm. Claimant's primary data collection and monitoring tool is the research vessel SEASEARCHER, originally built by Bayliner and modified for long-distance, offshore use by the Lydia boat yard.[2] Owner/Operator indicates that property damages were caused by tarballs ingested into the SEASEARCHER's raw water intakes, which caused overheating and ruined both propulsion engines and generator sets. The claim also includes Claimant's related and ensuing alleged loss of income from the unavailability of the SEASEARCHER.

The claimed loss of profits/earnings is calculated from the sum of 1 April 2010 through 31 December 2010 (second through fourth quarters of 2010) plus $186,513.00, which is the average of those three months as an estimate of 1st quarter of 2011 losses.

The personal property damages claimed are the cost of the replacement propulsion engines and generator sets, as indicated by the Toromont CAT price quote dated 18 October 2010.[3]

## APPLICABLE LAW

Under the Oil Pollution Act of 1990 (OPA), at 33 U.S.C. § 2702(a), responsible parties are liable for removal costs and damages resulting from the discharge of oil into or upon the navigable waters or adjoining shorelines or the exclusive economic zone, as described in § 2702(b) of OPA.

The OSLTF, which is administered by the NPFC, is available, pursuant to 33 U.S.C. § 2712(a)(4) and § 2713 and the OSLTF claims adjudication regulations at 33 C.F.R. Part 136, to pay claims for uncompensated damages. One type of damages available pursuant to 33 C.F.R. § 136.231 is a claim for loss of profits or impairment of earning capacity due to injury to or destruction of natural resources.

Under 33 C.F.R. § 136.233 a claimant must establish the following:

---

[1] Letter of Explanation dated 27 February 2011.
[2] Id.
[3] Toromont Marine Power-CAT email quotation to Duane Montgomery on 16 October 2010, Re: Caterpillar 2x3056 engines and 2xC1.5 generators for Sail Boat.

(a) That real or personal property or natural resources have been injured, destroyed, or lost.

(b) That the claimant's income was reduced as a consequence of injury to, destruction of, or loss of property or natural resources, and the amount of that reduction.

(c) The amount of the claimant's profits or earnings in comparable periods and during the period when the claimed loss or impairment was suffered, as established by income tax returns, financial statements, and similar documents. In addition, comparative figures for profits or earnings for the same or similar activities outside of the area affected by the incident also must be established.

(d) Whether alternative employment or business was available and undertaken and, if so, the amount of income received. All income that a claimant received as a result of the incident must be clearly indicated and any saved overhead and other normal expenses not incurred as a result of the incident must be established.

Under 33 C.F.R. § 136.105(a) and § 136.105(e)(6), the claimant bears the burden of providing to the NPFC, all evidence, information, and documentation deemed necessary by the Director, NPFC, to support the claim.

Under 33 C.F.R. § 136.235, the amount of compensation allowable for a claim involving loss of profits or impairment of earning capacity is limited to the actual net reduction or loss of earnings or profits suffered. Calculations for net reductions or losses must clearly reflect adjustments for—

(a) All income resulting from the incident;
(b) All income from alternative employment or business undertaken;
(c) Potential income from alternative employment or business not undertake, but reasonably available;
(d) Any saved overhead or normal expenses not incurred as a result of the incident; and
(e) State, local, and Federal taxes.

### DETERMINATION OF LOSS

**Claimant's Submission to the OSLTF**

Claimant provided a number of documents in support of the claim. Those documents are listed in Enclosure (2). Included in those documents are seven pages that indicate Gulf of Mexico positions (latitudes and longitudes) for vessel SEASEARCHER from 1 March 2010 through 25 May 2010.

Claimant presented a claim to BP on 16 June 2010 and was assigned Claim #6899-124-172476. On 25 August 2010, Claimant presented an Emergency Advance Payment (EAP) claim to the GCCF for $43,596.78 in real/personal property damages. Claimant was assigned GCCF Claimant ID # 1070213 and Claim # 3010422. On 19 October 2010, Claimant received $43,900.00 in compensation from the GCCF on this claim.

On 02 November 2010, Claimant presented a supplemental real/personal property claim for $65,343.22 to the GCCF. On 12 November 2010, the supplemental claim was denied by the GCCF.

On 5 January 2011, Claimant presented two Full Review Final Payment claims ($216,539.00 in lost profits and earnings; $65,343.00 in real/personal property damages) to the GCCF. Those claims remain pending.

On 2 March 2011, Claimant presented this claim for $115,460.00 in real or property damages and $746,052.00 in loss of profits and impairment of earnings capacity resulting from the Deepwater Horizon oil spill.

**NPFC Determination**

Under 33 C.F.R. § 136.105(a) and 136.105(e)(6), the claimant bears the burden of providing to the NPFC all evidence, information and documentation deemed necessary by the director, NPFC, to support the claim. The NPFC considered all documentation presented by Claimant.

Under 33 C.F.R. § 136.9, falsification of claims, persons submitting false claims or making false statements in connection with claims under this part may be subject to prosecution under Federal law, including but not limited to 18 U.S. C. §§ 287 and 1001. In addition, persons submitting written documentation in support of claims under this part which they know, or should know, is false or omits a material fact may be subject to a civil penalty for each claim.

Owner/Operator alleged that on or about 10 May 2010, while the Claimant engaged in gathering water and soil samples during a pollution monitoring exercise, SEASEARCHER's raw water intakes ingested oily tarballs from the Deepwater Horizon oil spill, which caused the engines and gensets to overheat and burn out. Owner/Operator further alleged that SEASEARCHER was towed back to port and Geico Indemnity Company paid him $8,109.00 for the loss.[4]

Owner/Operator submitted two separate cost estimates from Caterpillar (CAT) for replacement engines and gensets. He also submitted receipts for engine removal, which he dates on 17 and 24 September 2010. He also provided pictures purportedly of the engine removal from the SEASEARCHER and a check from OVNI USA to Toromat Marine Power CAT for an engine deposit in the amount of $30,000.00.

The first cost estimate, dated 12 June 2010 and purportedly from CAT Marine Power Systems, quoted Owner/Operator a total of $51,956.78 for two marine propulsion engines and one C1.5 10kW marine genset. The cost estimate included a diagnostic summary, which indicated that engine and genset failure resulted from "obstruction with 'Tar like' oily substance." The NPFC questioned the Owner about this diagnosis to which the Owner replied that he had made the diagnosis himself. The second cost estimate dated 18 October 2010 and purportedly from Toromont Marine Power CAT, indicated that "[t]his is for the required equipment replacement due to the BP Gulf of Mexico Oil Spill damage as *you* have mentioned."[5]

Neither cost estimate, therefore, diagnoses the source of the Claimant's alleged damage as the Deepwater Horizon oil spill. Owner, however, intentionally inserted this language into the cost estimate of 12 June 2010.

Owner/Operator also submitted a Michigan (MI) Watercraft Registration purportedly for the SEASEARCHER. The registration indicated that the vessel is a 30' 1996 Bayliner. Owner/Operator confirmed that the vessel is a Bayliner modified for long distance offshore use. The NPFC contacted Bayliner (manufacturer), which confirmed that the registered watercraft is a 1996 Bayliner 2858 Ciera Command Bridge, single screw, designed for a gas engine. Bayliner indicated that such a vessel would not be compatible or even modified, with the two CAT 3056 diesel engines and C1.5 genset, which are listed as replacement engines for the engines in SEASEARCHER.

Two CAT 3056 engines could not fit into the 2858 Ciera Command Bridge's engine box. Bayliner indicated that the dimensions of this engine box are 48.5 inches wide by 47.25 inches in length. Based on information available to the NPFC, the length of a single Caterpillar 3056 marine propulsion engine is 42.06 inches in length (without transmission) and 30.6 inches wide. With no clearance between or beside the engines, the combined width of two Caterpillar 3056 engines would exceed the available width of the engine box.

---

[4] Although Owner/Operator alleges that this payment was limited because he did not have an OPA rider on his policy, the Geico check made out to Owner indicated "T/L Full Settlement." Owner/Operator was asked repeatedly to clarify with his insurer whether his rights to recover for his alleged loss have been subrogated. To date, he has not complied with this request.

[5] 18 October 2010 price quote by Toromont CAT (emphasis added).

Additionally, the Owner/Operator also provided task log with positions (latitudes and longitudes) for the vessel SEASEARCHER. Although he alleged that on 10 May 2010 SEASEARCHER experienced complete engine failure[6] and had to be towed to port, the task log indicated that the vessel continued at the same SOG [Speed over Ground] of "10" for another 15 days after the date the engines were allegedly ruined.[7]

Claimant's financial documentation is also inconsistent. Although the Claimant reportedly grossed $13,253,712.78 in 2008 and $15,875,945.00 in 2009, the Claimant's Profit & Loss Statements from 1 April through 30 December 2010 (2nd, 3rd, and 4th quarters) shows no actual revenues, costs of sales, or expenses (including sales and marketing, R&D, or general and administrative expenses).[8] It is unclear how the loss of SEASEARCHER, a single vessel reportedly under OVNI division, impacts the revenue stream for four different divisions in a multi-million dollar corporation.

Notwithstanding the above, the Claimant has not shown that the Owner/Operator's release of rights to Geico Indemnity Company (Geico) do not apply to the damages claimed. Owner/Operator provided a copy of payment made by Geico to him for damages which, by way of his signature and release on the check,[9] may have subrogated all of the Claimant's rights for damages resulting from this incident to Geico.

In light of the foregoing, this claim is DENIED

| | |
|---|---|
| Claim Supervisor: *NPFC Claims Adjudication Division* | |
| Date of Review: *5/23/11* | |
| Supervisor's Actions: *Denial approved* | |
| Supervisor's Comments: | |

---

[6] Owner's 25 March 2011 Response to March 23, 2011 Request for Additional Information, page 7.
[7] Engineering Technological Researchers' Task Site Log for SeaSearcher in Gulf of Mexico, 1 March 2010 through 25 May 2011.
[8] 2008 Federal Tax Form 1120 indicates gross income of $13,253,712.78 and 2009 Federal Tax Form 1120 indicates gross income of $15,875,945.00.
[9] Included in claim package is copy of Geico Indemnity Company Check number N84797105, which indicates that the payment is for T/L Full Settlement.

Enclosure (2) Documentation Provided by Claimant          Claim Number N10036-0566

1. NPFC Optional OSLTF Claim Form 25 February 2011.

2. Claim submission cover, table of contents and overview of damage claim.

3. Wikipedia excerpt on Deepwater Horizon oil spill.

4. NOAA charts depicting approximate oil spill locations for—

    a. April 25 to April 28, 2010,

    b. April 27 to May 1, 2010,

    c. April 29 to May 3, 2010,

    d. April 30 to May 4, 2010,

    e. May 1 to May 5, 2010, and

    f. May 2 to May 6, 2010.

5. Statement of submissions to BP and the GCCF, as well as Statement of the Claim.

6. Engineering Technological Researchers Corp. Profit and Loss Statements for 1st, 2nd, 3rd and 4th Quarters, 2010.

7. Estimate and Damage Report June 12, 2010, for vessel SeaSeasearcher, in the amount of $51,956.78, with a Diagnostic Summary.

8. Estimate and Damage Report October 18, 2010: Quote for (2) 3056 Caterpillar Marine Engines and (2) C1.5 generator for Sail Boat, from Toromont CAT, Concord, Ontario, Canada. 30-Day Quote dated 18 October 2010 in $60,390 CDN, plus taxes, (5 pages) sent via email.

9. Receipt for engine deposit in amount of $30,000.00, dated 29 October 2010.

10. Wire Transfer Information Sheet for Toromont CAT.

11. Parcel Plus/FedEx shipping receipt in the amount of $27.85 dated 29 October 2010, accompanying order number 8217.

12. Parcel Plus shipping order #8217 in the amount of $2715.

13. Invoice for Engine Removal in amount of $915.00 for work completed 17 September 2010, from Jim Pettit's Diesel Service, Felton, DE.  Invoice number obscured.

14. Invoice for Engine Removal in amount of $670.00 for work completed 24 September 2010, from Jim Pettit's Diesel Service, Felton, DE.  Invoice number 347256.

15. Handwritten, non-negotiable check copy on PNC Bank for $1,585.00, payable to Jim Pettit's Diesel Service, dated 22 October 2010.

16. Four undated photos of engine removals.

17. Invoice for Engine Removal (Statement) in account with Sea Coast Services LLC to Duane, for work completed 24 September 2010, in amount of $928.

18. Handwritten, non-negotiable check copy on PNC Bank for $928, payable to Sea Coast Services LLC, dated 22 October 2010.

19. 2008 Tax Form 1120, Corporate Income Tax Return for Engineering Technological Researchers Corp (1 page) showing gross receipts/sales of $13,253,712.78.

20. 2009 Tax Form 1120, Corporate Income Tax Return for Engineering Technological Researchers Corp (1 page) showing gross receipts/sales of $15,875,945.09.

21. State of Michigan Watercraft Registration for 30 ft. 6 in, 1996 Bayliner Hull ID Number BL2A09ECH596, registration number 0757135, expiring 31 March 2013.

22. Michigan watercraft registration decal, number 0757135, showing expiration date of 13 Mar. 13.

23. Pantaenius Yacht Insurance quotation number 2-000000-747198-10 for stated value yacht insurance dated 03 December 2010 for Sailing Yacht Lydia 'Seasearcher', 5 pages.

24. Demand for payment on BP claim number 6866-124-172976 in the amount of $43,856.78, dated 16 June 2010.

25. (Duplicate) State of Michigan Watercraft Registration for 30 ft. 6 in, 1996 Bayliner Hull ID Number BL2A09ECH596, registration number 0757135, expiring 31 March 2013.

26. (Duplicate) Michigan watercraft registration decal, number 0757135, showing expiration date of 13 Mar. 13.

27. Electronics Invoice/Repair Order of 12 June 2010, totaling $51,956.78 and including Diagnostic Summary.

28. Profit and Loss Statement for period 1 Jan. 10 through 31 Mar. 10, showing revenues of $2,884,727.

29. (Duplicate) 2008 Tax Form 1120.

30. (Duplicate) 2009 Tax Form 1120.

31. Copy of Claimant's Ohio State Driver's License, number RS615688

32. Copy of GEICO Indemnity Company check #N84797105 dated 6/14/2010, in the amount of $8,109.00, payable to ETR, Attn: Duane Montgomery, for Comprehensive Coverage, T/L Full Settlement.

33. Certified mail receipts and USPS payment for mailing to BP Oil Service Center

34. BP letter to Claimant dated 19 July, 2010, regarding insufficient documentation.

35. ESIS claim adjuster letter to Claimant dated 22 July 2010, requesting copy of certain documents, including Social Security Card, Log with mapping grid and pictures of vessel and with copy of postmarked envelope marked 22 July 2010.

36. Claimant letter of 21 July 2010 to BP/ESIS, providing 7 pages of task log sheets, Ohio Driver's License with SSN and documentation of mailing.

37. GCCF letter of 23 August 2010 with listing of Claim Site Offices.

38. GCCF Claim Packet and mailing documentation.

39. Undated and unsigned copy of Claimant's GCCF Claim Form for Emergency Advance Payment in the amount of $81,032.36.

40. GCCF letter of 30 September 2010 requesting information necessary to complete review of [the] claim.

41. Claimant's GCCF Claim Form for Final Payment in the amount of $281,882.22, signed 11/18/2010, with mailing documentation.

42. GCCF Emergency Advance Payment Determination and payment check for $43,900 dated 19 October 2010.

43. GCCF Denial letter for Supplemental Emergency Advance Payment, dated 12 November 2010.

44. GCCF Claimant and Claim Information report, accessed 2/27/2011.

45. GCCF Claimant Status sheet, 27 Feb. 2011.

46. NOAA information sheet, "Understanding Tar Balls", July 8, 2010.

47. (Duplicate) 30-Day Quote for (2) 125 HP Marine Propulsion Engines and (1) 10 kW Generator Set including labor and materials from MAK Caterpillar Marine Power Systems. Quote dated 12 June 2010 for $51,956.78.

48. (Duplicate) Receipt for document shipping charges to Toromont CAT of $27.85 dated 29 October 2010.

49. (Duplicate) Quote for Vessel Insurance from Pantaenius Yacht Insurance dated 03 December 2010.

50. Quarterly Profit and Loss Statements from 2010.

51. Task Log for Engineering Technological Researchers Corporation indicating site coordinates from 01 March 2010 through 25 May 2010.

52. Toromont CAT Invoice to Engineering Technological Researchers (ETR) on (2) 3056 engines and (2) C1.5 generators, totaling $115,460, indicating a progress payment made in the amount of $30,000.

53. Claimant response to NPFC's 23 March 2011 Request for Additional Information, 9 pages.

54. Duane Montgomery letter of 24 March 2011 to the Clerk of the House of Representatives; to the Director, NPFC; to Kenneth R. Feinberg; and to the District of Columbia Bar.