# Exhibit C

```
 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF LOUISIANA
 2
     ******************************************************************
 3

 4   IN RE:  OIL SPILL BY THE              DOCKET NO. MDL-2179
     OIL RIG DEEPWATER HORIZON             NEW ORLEANS, LOUISIANA
 5   IN THE GULF OF MEXICO ON              FRIDAY, FEBRUARY 17, 2012
     APRIL 20, 2010
 6   CIVIL

 7
     ******************************************************************
 8

 9                        TRANSCRIPT OF PROCEEDINGS
                 HEARD BEFORE THE HONORABLE SALLY SHUSHAN
10                     UNITED STATES MAGISTRATE JUDGE

11

12   APPEARANCES:

13   FOR THE PLAINTIFF:            DOMENGEAUX, WRIGHT, ROY & EDWARDS
                                   BY:  JAMES P. ROY, ESQ.
14                                 P. O. BOX 3668
                                   556 JEFFERSON ST.
15                                 LAFAYETTE, LA 70502-3668

16                                 HERMAN, HERMAN, KATZ & COTLAR, LLP
                                   BY:  STEPHEN J. HERMAN, ESQ.
17                                 820 O'KEEFE AVENUE
                                   NEW ORLEANS, LA 70113
18
                                   WILLIAMSON & RUSNAK
19                                 BY:  JIMMY WILLIAMSON, ESQ.
                                   4310 YOAKUM BOULEVARD
20                                 HOUSTON, TX 77006

21                                 LEVIN PAPANTONIO THOMAS MITCHELL
                                   RAFFERTY & PROCTOR, PA
22                                 BY:  BRIAN H. BARR, ESQ.
                                   316 SOUTH BAYLEN STREET, SUITE 600
23                                 POST OFFICE BOX 12308
                                   PENSACOLA, FL 32591
24

25
```

```
 1   Dr. Culver, he is willing to go to Lafayette to conduct the IME and
 2   he is willing to do it soon, so.
 3           THE COURT:  But we have not had an opportunity to look at
 4   the law that Mr. Habans is citing, nor have we read your
 5   opposition.
 6           MR. MILLER:  Neither have I, but it's coming.
 7           THE COURT:  But Dr. Culver does have an office in
 8   Lafayette.
 9           MR. MILLER:  Yes, and he is willing to travel and does
10   have availability over the next week or so.
11           THE COURT:  So we will get to it ASAP.
12           Okay.  Records custodians.  Do we all agree that any
13   records custodians that will come to trial will be coming to trial
14   at the end of the Phase One presentation and that they need not
15   appear February 27th, is there any issue here?
16           So we will work on that as the trial proceeds.
17           Okay.  Next up is advanced notice of exhibits.  BP has
18   suggested that before a party offers into evidence a large group of
19   documents, which some parties may contend are inadmissible under
20   some of Judge Barbier's in limine rulings, the party that wants to
21   introduce it provide notice to all.  Is there an issue with that?
22   And obviously, Steve, there is, come on up.
23           MR. HERMAN:  Steve Herman for the PSC.  I don't know if
24   there's an issue, I think we've advised everyone for several weeks
25   that we intend the first Thursday to offer, I don't know if it's
```

1  going to be 168 because we have to deal the Fifth Amendment and
2  there are some that are live witnesses on people's will call list
3  that I guess will be pulled.  But whatever that number is, I don't
4  know, 150 depositions, with whatever exhibits have been referenced
5  by any of the parties within those depositions.  So the defendants
6  have notice of that and I think, your Honor, I thought had ruled
7  last week, and I think it's in about three different orders, that
8  we're not going unbundle the bundles at this point.  And, you know,
9  it's a bench trial and I think Judge Barbier is perfectly capable
10 of considering admissible evidence and not considering inadmissible
11 evidence.
12              THE COURT:  Yeah.  And, you know, I think that's right.
13 I'm particularly, though, Steve, concerned about what we all are
14 now calling the trade secret information and how we're going to
15 deal with that because there is some truly trade secret information
16 in very few pages.  But that needs to be dealt with and we need to
17 consider how we're going to take care of that issue.
18              MR. HERMAN:  Understood.  But again, and I think people
19 have raised this in previous conferences, there's a difference
20 between what is offered into evidence then also what's admitted
21 into evidence ultimately by Judge Barbier and then also ultimately
22 what is released to the public.  I think we're all kind of seeing a
23 somewhat contemporaneous thing.  But if some of the bundles have to
24 be held up or redacted before they can be released to the public,
25 then that's a different issue than holding up -- being able to make

1   our offer of proof essentially.
2              THE COURT:  Okay.  Andy, do you want to comment on that?
3              MR. LANGAN:  Your Honor, yes.  So I think the last time
4   we talked about this we noted that there are some examples, we
5   think fairly clear examples of rulings on motions in limine that
6   really casting the doubt, or really have been resolved and the
7   whole depositions or nearly whole depositions are no longer
8   admissible.  Like, for instance, there was a 30(b)(6) of
9   Mr. Armstrong that related to other incidents.  We now have a
10  ruling that other incidents aren't admissible.  And so what's the
11  point of massive offerings of these things when the judge has
12  already said that they shouldn't come in.  So I still don't
13  understand what the point is.
14             We would like to cut through that, I think we sent a
15  letter in that had six or seven examples of these, and Mr. Herman's
16  reaction was too bad we're doing it anyway.  I mean, that's at
17  least how I read his response, unless we're told we can't.  So we
18  continue to object to that and we don't understand the point.
19             THE COURT:  Mr. Roy wants to come up on that one.  Come
20  on up, Mr. Roy.
21             MR. ROY:  Your Honor, without dwelling on the specific
22  deposition that Andy mentioned, we can work out the details of
23  whether actual testimony is or is not admissible as we go.  The
24  court specifically ruled that evidence of prior incidents and
25  alleged lessons learned or not learned might be referred to

1   legitimately by experts.
2           THE COURT:  Right.
3           MR. ROY:  That's Dr. Bea, Dr. Bea is the first witness.
4           THE COURT:  That's fine.  But does that mean that the
5   deposition that Andy referenced comes in?
6           MR. ROY:  That's why I say it's a separate evidentiary
7   issue, and we can pull that aside and talk about those two or three
8   or whatever it is that deal specifically with it.  But I rise for
9   the limited purpose of making it very clear that however you
10  resolve the specific admissibility or non-admissibility of the
11  testimony of Mr. Armstrong on the lessons that BP did or did not
12  learn from Texas City, Grangemouth, Alaska pipeline, et cetera,
13  that this does not impact Dr. Bea's ability to rely --
14          THE COURT:  Judge Barbier was very clear about that.
15          MR. ROY:  And Dr. Bea's ability to rely upon that
16  testimony.
17          THE COURT:  Fine.  But Judge Barbier was very clear about
18  that.  He is not going to re-try any of those prior incidents.  And
19  so what I would like you to do, Jim, is I would like you to talk to
20  Andy or his designee and your designee about what BP believes is
21  now inadmissible due to the judge's ruling about other incidents,
22  for instance.
23          MR. ROY:  Sure.
24          THE COURT:  And see if you can't reach agreement with
25  regard to those depositions, those exhibits that should come out

1  because of the in limine ruling.
2           MR. ROY:  Right.  If I could just emphasize what we think
3  is a discrete difference and nuance we believe in the order, the
4  ruling of the court.
5           It dealt with specific reports, investigations as to
6  whether they were by themselves admissible.  When we're dealing
7  with BP key people who either admit they knew of a lesson to be
8  learned or they didn't and they were aware of it, our position is
9  that is inseparable from the concept of process safety because
10 process safety by even their own expert's definition requires
11 looking back and learning from mistakes in processes in the past.
12          So all I am saying is is that I believe that BP's
13 position, I would love to hear to the contrary, but I believe BP's
14 wish list is nobody ever gets to talk or ask questions of any
15 witness except Dr. Bea about Grangemouth, Texas City, or Prudhoe
16 Bay, or any other disaster that BP suffered.  And all I am saying
17 to you is that once Dr. Bea explains the connection and what he has
18 relied upon as he has in his report, as well as in his discovery
19 deposition, that this may very well at least to the extent it's
20 relevant allow the actual direct testimony of BP key players to
21 say, you know, I didn't learn anything.  That's relevant.  Once
22 Dr. Bea testifies --
23          THE COURT:  It may be, it may be, Jim, but I am not sure
24 it comes in in your initial offer.
25          MR. ROY:  No, I agree.

```
 1              THE COURT:  So what I would like you to do is, Andy, can
 2   you provide the PSC with not just a list of examples but a more
 3   comprehensive list of what you believe should not come in because
 4   of Judge Barbier's in limine rulings and let them take a look at it
 5   and let's see.  I'll be glad to work with you all on it this week.
 6              MR. LANGAN:  Can we start with the deposition list we
 7   sent to Steve in which he said sorry, too bad, we're doing it
 8   anyway?
 9              THE COURT:  Sure.
10              MR. LANGAN:  That was the meet and confer so far, we said
11   how about these and he said no.
12              THE COURT:  I think that Steve has now decided, yes, he
13   will talk to you.
14              MR. LANGAN:  And that's a step in the right direction.
15              I also need to comment here.  I mean, it's very
16   interesting that we learned today that Bea is going first.  And
17   it's clear from Mr. Roy's comment that this is what this is going
18   to be about, this is their grand strategy to undue a motion in
19   limine ruling they don't like.  So it's going to be up to Judge
20   Barbier, but it's very -- I'm all for transparency and I greatly
21   appreciate hearing a preview of their strategy, but we're going to
22   have a contest about that I'm sure before Judge Barbier.
23              THE COURT:  And I won't be there, so.
24              MR. LANGAN:  The other thing I was going to say is on the
25   March 1st proffer of 168 depositions, I just want to say once
```

1   again, I think that's far from a forgone conclusion in Judge
2   Barbier's mind from what I heard on the 3rd of February that he is
3   going to entertain a massive dump of depositions.  I heard him say
4   on several occasions on the 3rd of February that he had in mind
5   more like 50 or 60.  So I know Steve needs to say what he needs to
6   say and we need to say what we've said, which is we think he has
7   something very different in mind and we don't waive our rights on
8   that.
9              THE COURT:  Okay.  Steve.
10             MR. HERMAN:  Happy to talk to Mr. Langan.  Before I talk
11  to Mr. Langan, I would like to know what the logistics are that the
12  court anticipates, because let's assume I sit down with Mr. Langan
13  and I agree that these five questions under the court's in limine
14  ruling are not admissible and these seven exhibits are not
15  admissible.  Where do we go from there?  Do we go back to the
16  inData and tell them they have to take apart the bundles and put
17  them back together?
18             THE COURT:  We've spoken to Jordan about that because I
19  was very concerned about the confidential information and how we
20  were going to deal with that.  And so Jordan reports that he can go
21  in and redact pages or lines or part of an exhibit that is linked
22  to the depositions.  And so that's doable and he didn't seem to
23  think it was a big deal.
24             Now, we can do a conference call with Jordan, he is in
25  town for the duration so we might even be able to get together with

1   him, but he indicated that if we gave him specific instructions on
2   what to do, he can do it.
3              MR. HERMAN:  Okay.  That sounds optimistic.
4              THE COURT:  I am an optimist.
5              MR. HERMAN:  Me too.  I am trying to get a sense, maybe
6   this question is better posed to Andy, of what the universe is, is
7   it limited to prior incidents or now are we going to go back and
8   have BP tell us everything that it contends that the court has
9   ruled inadmissible and we're going to waste three weeks going back
10  and fighting about it.
11             THE COURT:  I think that why don't you and Andy and I get
12  together after the conference and kind of put some parameters on
13  it, okay?  Fair enough?
14             MR. HERMAN:  That's fine.  While I am up here can I say
15  something else?
16             THE COURT:  Off topic?
17             MR. HERMAN:  It's somewhat related.  It's a CYA for our
18  trial team on the Baxter order.  I think we fundamentally agree
19  with the principles and we've always agreed with it, that we won't
20  ask about the Baxter investigation.  The slight dilemma that we
21  have is that because the order includes the analyses that were done
22  within the document that we don't have anymore, that nobody's read
23  in, I don't know, six or nine months, we're certainly not going to
24  intentionally ask about it because we don't even know what it is,
25  but it's possible that we could ask a question and then they jump