UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179<br><br>SECTION J |
| Applies to: *All Cases* | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

## ORDER

[Regarding Overlap Issue for BP's Rule 30(b)(6) for Phase Two]

On March 23, 2011, the PSC served a Fed. R. Civ. P. 30(b)(6) notice on BP, which included the following two topics:

No. 4:  Potential costs, risks, benefits and other analyses or evaluations of potential methods to cap, control, contain, shut-in and/or kill the Macondo Well after April 20, 2012.

No. 5:  Evaluation, study and/or analysis of any potential method or technique to cap, control, contain, shut-in, temporarily abandon, and/or kill the Macondo Well after April 20, 2010, including the possible risks, benefits or other circumstances thereof.

(The "two March 23, 2011 topics").  In connection with Phase Two discovery, the PSC requests a Rule 30(b)(6) deposition from BP on the following topic:

For any and all attempts after April 20, 2010, to cap, control, contain, shut in, limit flow from, temporarily abandon and/or kill the Macondo Well by each of the following methods and any other method(s) used but not listed here: Actuation of the Deepwater Horizon BOP, Riser Insertion Tube Tool ("RITT"), Top Hat, Top Kill, Junk Shot, Cofferdam, Capping Stack, BOP on BOP strategies, Macondo Relief Well No. 1 and Macondo Relief Well No. 2 (hereinafter referred to as "Methods"):

a.  The total cost that BP incurred on each attempt and/or Method, including, but not limited to, labor, payments made to contractors and/or other entities working on BP's behalf, materials, overhead and the cost of removal of any replaced components, parts, equipment, material, and/or supplies;

b.  The level of approval necessary to fund and implement each attempt and/or Method, including the identity of each person who gave final approval;

- c. A description of the manner and methodology, including computer models, used to assess each attempt and/or Method;

- d. A description of the explanations and/or justifications for each attempt and/or Method made or prepared for approval within BP;

- e. Dates when planning began for each attempt and/or Method, including the length of time used to plan and budget;

- f. An explanation of and timeline for the steps involved in planning and/or implementing each attempt and/or Method;

- g. The identity of BP employees and contractors who planned, managed, and/or supervised the implementation of each attempt and/or Method;

- h. A description of each office, department, or other organization at BP that participated in the planning, budgeting, engineering, approval, supervision, coordination, or implementation of each attempt and/or Method; and

- i. For each Method actually attempted or performed by BP, BP's contractors and/or any other entity working on BP's behalf, an explanation of and timeline for the steps involved in performing each Method, and the identity of documents (with custodians) recording the performance of each Method.

(The "Phase Two topic").

BP objects to the Phase Two topic on the ground that it overlaps with the two Mach 23, 2011 topics. It contends that it should not be required to testify twice on the same topics. BP and the PSC submitted letter briefs and email on the issue. Rec. docs. 5223, 5390 and 5458.

The PSC contends that: (1) the information it seeks in the Phase Two topic was not covered in the two March 23, 2011 topics; (2) the discovery sought in the Phase Two topic is different from, and supplemental to, the discovery sought in the two March 23, 2011 topics; (3) they were concerned with whether BP was prepared for well control contingencies, and, whether, if there was an oil spill, it made appropriate plans; (4) they were concerned with "potential methods" to control or shut in the well and the Phase Two topic deals with specific measures on source control; (5) BP's

2

alleged failure to plan for an event of the magnitude of the Macondo spill is relevant to both Phase One and Phase Two; (6) BP's designees for the two March 23, 2011 topics were not designated to testify on specific aspects of source control; (7) since these designees were deposed, BP has produced documents relevant to Phase Two; (8) all parties knew that Phase Two discovery would be done in the Phase Two portion of the case; and (9) if it is not permitted to proceed with the Phase Two topic, it will require numerous depositions of individual deponents.

BP contends that: (1) the PSC's filings in April 2011 demonstrate that it was conducting discovery for the event and post-April 20 well-control issues (Rec. doc. 1951 at 7-15); (2) the testimony cited by the PSC from BP's designees on well control is selective; (3) the PSC chose to proceed with the depositions, while it knew that additional documents would be produced; and (4) the PSC could have avoided this problem by delaying the depositions.

Pretrial Order no. 11 (Case Management Oder no. 1 "CMO") provided for discovery on casualty and spill liability, limitation and related issues:

> Discovery will be focused on the activities and events leading up to and including April 20, 2010 Macondo well incident and resulting explosion, fire and loss of the rig. Discovery will also include discovery of issues relating to the cause or causes and extent of the associated oil spill, and the cause or causes of damages alleged to have resulted therefrom.

Rec. doc. 569 at 8 and 9.[1]  Pretrial Order no. 17 provides that:

> As a general rule, no witness should be deposed more than once in this proceeding unless the subject matter of the proposed second deposition was declared off limits by the Court during the first deposition or upon a showing of good cause by the party seeking the second deposition. . . .

Rec. doc. 740 at 9.

---

[1] CMO No. 1 referred to this as included within Phase I Discovery. The term "Phase I" in CMO No. 1 did not have the same meaning as the terms Phase I or Phase One used by the parties in their briefs on the overlap issue.

The trial plan was not entered until September 21, 2011. Rec. doc. 4083. It established a trial structure with Phase One-Incident, Phase Two-Source Control, and Phase Three-Containment. Rec. doc. 4083 at 2-3.

Between the entry of CMO no. 1 and the trial plan, there was considerable discussion about the trial structure. On February 25, 2011, Judge Barbier asked counsel to begin discussing a trial plan for the February 27, 2012 trial. Rec. doc. 1393. On March 25, 2011, BP reported that the parties met to discuss the trial plan and hoped to propose a plan by the next status conference. Rec. doc. 1761. On April 13, 2011, the PSC, Transocean and Alabama submitted a trial plan. They urged that the February 27, 2012 trial include two fault allocations, the second of which would take into account evidence relating to the post-April 20 efforts to cap the well which affected the duration and extent of the spill. Rec. doc. 1951 (Exhibit A at 3). At an April 20, 2011 conference with liaison counsel, Transocean argued that the issues did not break down into clean chronological steps. It urged that much of the focus on source control would involve pre-April 20, 2011 matters as the parties examined the plans in case of a blow-out. On April 26, 2011, the PSC proposed that fact discovery on source control and oil flow rate be conducted from June 2011 through January 2012. Rec. doc. 2130 (Exhibit B).

On May 26, 2011, Judge Barbier requested further briefing on the trial plan. Rec. doc. 2560. On July 8, 2011, he announced that he would issue an order which would largely adopt the trial plan proposed by Anadarko with its three phase structure which is found in the September 21, 2011 trial plan. Rec. doc. 3196.

As early as the February 11, 2011 working group conference, the parties were asked to prepare Rule 30(b)(6) deposition notices. On March 11, 2011, BP was ordered to designate its representatives by March 18. Rec. doc. 1631. The PSC reports that BP's designees for the two March 23, 2011 topics testified on May 19-20 (Richard Lynch), June 9 (Henry Thierens), June 16

4

(Paul Tooms), and June 29 (Kevin Kennelly).

The Phase Two topic sought by the PSC is partially duplicative of the two March 23, 2011 topics. When the two March 23, 2011 topics were confected, there was no distinction between Phase One and Phase Two discovery which developed during the course of discovery and was crystalized by July 8 when Judge Barbier announced he would adopt Anadarko's trial plan. During this process it became apparent that the issues within Phase One and Phase Two could not be prepared for trial by February 27.[2] The Court has sought to avoid some of the discovery issues encountered in what is now referred to as Phase One by requiring the parties to complete their Phase Two document production and start with Rule 30(b)(6) depositions rather than individual fact witness depositions.

Based on all of these considerations and notwithstanding some duplication, the PSC will be permitted to proceed with the Phase Two topic. The Court will not permit repetitious questioning. It is impossible to referee disputes over duplicative examination during a deposition. To prevent duplicative examination, there will be <u>tight</u> limits on the time permitted to examine the designees on the Phase Two topic.

New Orleans, Louisiana, this 6th day of March, 2012.

                                          **SALLY SHUSHAN**
                                          **United States Magistrate Judge**

---

[2] The PSC recognized this with its proposal that there be a fact witness trial on blowout, source control and oil flow rate starting on February 27 followed by an expert testimony trial on these same issues beginning on June 1, 2012. Rec. doc. 2130 (Exhibit B).