UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BOYD DAIGLE | * | CIVIL ACTION NO. 2:11-CV-02499 |
| | * | |
| versus | * | JUDGE MARTIN L. C. FELDMAN |
| | * | |
| DRC EMERGENCY SERVICES, LLC | * | MAGISTRATE JUDGE ALMA L. |
| and DRC MARINE, LLC | * | CHASEZ |
| | * | |
| | * | |

*****************************************

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants DRC Emergency Services, LLC and DRC Marine, LLC (collectively, "DRC") provide this memorandum in support of their motion to dismiss under Fed. R. Civ. P. 12(b)(6).

### I. INTRODUCTION

The plaintiffs' amended complaint is their *second* attempt to state a plausible claim for race discrimination. Like the first, it fails under established precedent. At bottom, the amended complaint does not allege sufficient *facts* to support a plausible inference that DRC prevented the plaintiffs from participating in the Vessel of Opportunity ("VoO") program because of their race. The plaintiffs' rote and formulaic claims of racial discrimination amount to no more than legal conclusions, which are not entitled to an assumption of truth under *Twombly* and *Iqbal*.

Moreover, the plaintiffs' legal conclusions are inherently contradictory. Often in the same breath, the plaintiffs claim that BP gave both minorities *and* non-minorities preferential treatment. Those contradictory claims negate any plausible inference that *anyone* was purposefully and intentionally prevented from participating in the VoO program because of his race. If anything, they highlight the plausibility of an "obvious alternative explanation" that

suggests BP's conduct was lawful, *i.e.* that BP was acting in a race-*neutral* manner in its administration of the VoO program. And the amended complaint completely discounts another "obvious alternative explanation" – that BP chose the Pointe Aux Chenes community for help in the VoO program because of its proximity to the Gulf and fleet of available fishing vessels.

The amended complaint suffers from other deficiencies as well. Principal among these is that the plaintiffs still not have alleged any specific facts showing that they were the victims of any alleged discrimination. Entirely absent from the complaint are allegations about (1) the plaintiffs' races, (2) the communities in which they lived (crucial information under their curious race discrimination theory), (3) what steps they took to participate in the VoO program, (4) the defendants' response, if any, and (5) any steps the plaintiffs took to challenge that response. The plaintiffs do not even allege that they own vessels – a necessary prerequisite to participating in the VoO program as a contractor. The lack of those basic factual allegations is fatal to their claims.

Nor do the plaintiffs allege any specific discriminatory policies conceived or implemented by *DRC*; the only specific policies alleged are those of **BP**. The plaintiffs improperly attempt to lump DRC in with BP by using the generic term "defendants" in a number of conclusory paragraphs. But that does not cure the absence of specific factual allegations that, if proven, would show that *DRC* intentionally and purposefully discriminated against the plaintiffs.

Finally, even if the complaint is not dismissed in its entirety, the Court should at least dismiss plaintiffs' Louisiana Unfair Trade Practices Act ("LUTPA") claim. The Fifth Circuit has noted that the thrust of LUTPA is deterring injury to competition. Undersigned counsel has not found any cases in which LUTPA was held to provide redress for a person not awarded a

contract because of their race. Nor have we found such a claim stated under the Federal Trade Commission Act, on which LUTPA is based. There is no reason for the Court to extend LUTPA where it is has never gone before.

## II. BACKGROUND

### A. DRC served as a contractor to BP during the clean-up of the Deepwater Horizon oil spill.

In the months following the explosion and sinking of the Deepwater Horizon, BP contracted with companies to handle various aspects of the oil spill clean-up. DRC was one of those companies. Part of DRC's role as a spill clean-up contractor involved administering a portion of the Vessel of Opportunity ("VoO") program, in which local fishermen and boat owners were contracted to participate in putting out boom and perform other spill clean-up activities. DRC conducted its spill-response activities throughout Southeastern Louisiana, including the parishes of Jefferson, Plaquemines, and, to a smaller extent, Terrebonne.

### B. Boyd Daigle files his initial complaint against DRC; faced with a motion to dismiss based on his complete lack of factual allegations, he seeks to amend.

Boyd Daigle initially filed this matter as a single plaintiff against DRC on October 5, 2011.[1] Daigle's complaint, without *any* supporting factual allegations, claimed that he had sought to participate in the VoO program but that DRC had denied him that opportunity because of his race.[2] DRC moved to dismiss based on the absence of factual allegations.[3] After, the submission date on DRC's motion was continued twice, Daigle (along with two new plaintiffs, Messrs. Gaudet and Matherne) filed the amended complaint at issue.

The amended complaint is styled as a purported class action brought on behalf of:

---

[1] Rec. Doc. 1, plaintiff's original complaint.

[2] *Id*.

[3] Rec. Doc. 3, DRC's motion to dismiss.

3

> All persons and/or entities who were boat captains and/or crew members who contracted with BP, Lawson, DRC, and/or Unnamed Contractors to participate in the VOO Program, and/or who applied to participate in the VOO Program, but were excluded from full enjoyment to make and/or enforce a VOO Program contract because of their respective race, color, and/or ethnicity.[4]

Despite the amended complaint's grandiose scope, its factual allegations remain sparse. The following facts can be drawn from it:

- After the Deepwater Horizon spill, BP created the VoO program to assist in the cleanup.[5]

- BP oversaw the VoO program,[6] and contracted with DRC, and others, to administer it.[7]

- Allegedly, in response to public pressure regarding "corruption" in the program and its effect on "minority fishing communities," "BP capriciously selected only communities with relatively high minorities to receive preference in the VOO program."[8]

- These communities, "upon information and belief," had "relatively high concentrations of Native Americans, African Americans, and/or Asian Americans."[9]

Based on this "information and belief" (and apparently nothing else), the plaintiffs then offer a list of legal conclusions alleging that they were purposefully and intentionally excluded from VoO on the basis of race. They allege that in the communities selected for preference, many "non-minorities were prevented from fully participating in the VoO program because of their race, color, and/or ethnicity.[10] They also allege that in other non-targeted communities,

---

[4]  Rec. Doc. 12, plaintiffs' first amended and supplemental complaint, ¶ 45.

[5]  *Id*., ¶¶ 19-20.

[6]  *Id*., ¶ 22.

[7]  *Id*., ¶ 23.

[8]  *Id.*, ¶ 26.

[9]  *Id.* The plaintiffs allege that one such community selected for preferential treatment was Pointe Aux Chenes, Louisiana.

[10]  *Id.*, ¶ 24.

minorities were prevented from fully participating in the VoO program, again because of their "race, color and/or ethnicity."[11] The plaintiffs then allege that all of these persons were prevented from participating in VoO because of the defendants' policies, which were "intentionally discriminatory, discriminatory in effect, and/or disparately impacted Plaintiffs because of their race, color and/or ethnicity."[12]

### C.  The amended complaint contains no factual allegations of discrimination against the plaintiffs.

The amended complaint contains absolutely no specific factual allegations about the named plaintiffs' efforts to participate in VoO. It is silent on such basic facts as: (1) the plaintiffs' race, (2) where they lived, (3) when and how they applied to participate in VoO, and (4) the defendants' response to that application and any efforts by the plaintiffs to challenge it. Also unclear is whether any of the plaintiffs were even eligible to participate in the VoO program; it is not alleged, for example, whether any of the named plaintiffs *even owned a vessel*.[13]

---

[11]  *Id.*, ¶ 30.

[12]  *Id.*, ¶ 32.

[13]  In opposition to DRC's first motion to dismiss, Daigle admitted that he did *not* seek to become an employee of DRC. Rec. Doc. 10, ¶ 2. Accordingly, though the amended complaint is unclear, this motion assumes that the plaintiffs sought to become *contractors* in the VoO program. DRC reserves its right to raise applicable defenses should it later appear that any plaintiff sought *employment* instead.

### III.  LAW AND ARGUMENT

#### A. To state a claim, the plaintiffs must plead sufficient *facts* to give rise to a plausible inference that the defendants purposefully discriminated against them based on their race; legal conclusions of discrimination are insufficient.

##### 1.  The pleading standard under Rule 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[14] The Supreme Court has held that a claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[15] "Factual allegations must be enough to raise a right to relief above the speculative level."[16] And a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."[17] "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"[18]

The United States Supreme Court has developed a "two-pronged approach" for resolving 12(b)(6) motions to dismiss.[19] First, the Court must identify allegations that are conclusory and thus not entitled to the assumption of truth.[20] Legal conclusions "must be supported by factual allegations."[21] For any remaining allegations (that is, those allegations that are more than merely conclusory), the Court assumes the veracity of those well-pleaded factual allegations and

---

[14]  *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

[15]  *Iqbal*, 129 S. Ct. at 1940.

[16]  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (quotations marks, citations, and footnote omitted, emphasis added).

[17]  *Iqbal*, 129 S. Ct. at 1949.

[18]  *Id*.

[19]  *Id.* at 1950.

[20]  *Id*.

[21]  *Id.*

determines "whether they plausibly give rise to an entitlement to relief."[22]  Claims that are merely "conceivable" will not survive a motion to dismiss: "The plausibility standard is not akin to a 'probability requirement,' but it asks for *more* than a sheer possibility that a defendant has acted unlawfully."[23]  Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."[24]

Finally, the Court need not accept the plaintiffs' conclusions at face value.  It is free to "draw on its judicial experience and common sense"[25] and infer from the factual allegations any "obvious alternative explanations" that suggests lawful rather than unlawful conduct.[26]  As will be seen, that precept has particular application in this case.

### 2. To state a claim under 42 U.S.C. § 1981, the plaintiffs must come forth with plausible allegations of purposeful race discrimination.

42 U.S.C. § 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens."  Subsection (b) of § 1981 defines the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

To establish a *prima facie* case under § 1981 "the plaintiff must allege facts to support the following three elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by defendants; [and] (3) the discrimination concerns one or

---

[22]   *Id*.

[23]   *Id.* at 1949 (emphasis added).

[24]   *Id*.

[25]   *Id*. at 1950.

[26]   *Id*. at 1951-52.

more of the activities enumerated in the statute."[27] Though a race-discrimination claim may be supported with circumstantial evidence, a plaintiff must still "plead facts sufficient to create an inference that an adverse employment decision was based on impermissible considerations."[28]

Importantly, the plaintiffs must plead sufficient facts to establish a plausible inference that DRC denied them access to the VoO program *because* of their race. The Supreme Court has held that an actionable claim under § 1981 requires *purposeful and intentional* discrimination; a mere showing of a disparate impact is not sufficient.[29] And alleging purposeful discrimination is not formulaic. The Fifth Circuit warns that "discriminatory purpose…implies more than intent as violation or as awareness of consequences."[30] Instead, it "implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group."[31] Even assuming the

---

[27] *Vaughn Medical Equipment Repair Service, L.L.C. v. Jordan Reses Supply Co.*, Civil Action No. 10-cv-124, 2010 WL 3488244 at * 21 (E.D. La. Aug. 26, 2010) (Berrigan, J.); *see also Bellow v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997) ("To establish a section 1981 claim, the plaintiff must show that (1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute."). DRC notes while courts sometimes state that a § 1981 plaintiff must be a minority, the Supreme Court has held that white citizens may also bring a claim under this statute. *McDonald v. Santa Fe Trails Transp. Co.*, 427 U.S. 273 (1976).

[28] *Matthews v. Int'l House of Pancakes, Inc.*, 597 F. Supp. 2d 663, 674-75 (E.D. La. 2009) (Roby, M.J.).

[29] *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 390-91 (1982) ("Even if a neutral law has a disproportionately adverse impact upon a racial minority, it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose…We conclude, therefore, that § 1981, like the Equal Protection Clause can be violated only by purposeful discrimination…In light of our holding that § 1981 can be violated only be intentional discrimination…")

[30] *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988) (Rubin, J.) (quoting *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979)). Although *Lavernia* was an equal protection case, the Supreme Court's decision in *General Bldg. Contractors Ass'n* makes clear that the requirements for proving intentional discrimination under § 1981 and the equal protection clause are the same.

[31] *Lavernia*, 845 F.2d at 496 (emphasis original).

amended complaint's sparse factual allegations to be true, they fall short of even creating an inference that the defendants acted in this manner.

### 3. The amended complaint does not contain sufficient factual allegations to support its legal conclusions that defendants engaged in purposeful discrimination.

The plaintiffs have not pleaded any overt acts by the defendants displaying a racial or discriminatory animus. They have also not pleaded any specific circumstantial evidence – *i.e.*, they were told there was no work, but a minority/non-minority neighbor down the street received a contract the next day – to support their claims, either. Presumably they have not pleaded these facts, even after amendment, because they do not exist.[32]

Instead, the plaintiffs rest their amended complaint on several broad, nonspecific factual allegations. Essentially, they allege that BP was unprepared for the Deepwater Horizon explosion and the spill that followed.[33] In its haste to respond, it implemented the VoO program.[34] The VoO program became a "corrupt and a vehicle for graft," which caused "public outcries."[35] To respond to these "public outcries," BP "arbitrarily" or "capriciously" selected certain fishing communities believed to have high concentrations of minorities – one of which being Pointe Aux Chenes – to "receive preference" in the program.[36]

---

[32] *Puente v. Ridge*, 324 Fed. App'x 423, 428 (5th Cir. 2009) ("[W]hen a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.") (quoting *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n. 3 (1st Cir.1976)).

[33] Rec. Doc. 12, plaintiffs' first amended and supplemental complaint, ¶¶ 19-21.

[34] *Id.*, ¶ 22.

[35] *Id.*, ¶ 23.

[36] *Id.*, ¶ 26. The plaintiffs variously refer to BP's selection of targeted areas as "arbitrary" (¶ 34) or "capricious" (¶ 26).

What the Court must decide, then, is whether those scant factual allegations support an inference that the plaintiffs' *legal* conclusions of purposeful and intentional discrimination are correct. The plaintiffs' factual allegations fail that test.

As a threshold matter, the allegation that BP selected Pointe Aux Chenes in order to discriminate against non-minorities, or that BP denied non-minorities in the area the right to participate in VoO because of their race, are mere legal conclusions that are not supported by fact-based allegations in the amended complaint. Under *Twombly* and *Iqbal,* those conclusions are not entitled to the assumption of truth reserved for factual allegations. And under specific Fifth Circuit precedent, they do not suffice to prevent 12(b)(6) dismissal.[37]

The amended complaint does not plead sufficient *facts* that, if true, would support a plausible inference that purposeful and intentional discrimination occurred. The plaintiffs vaguely allege that BP decided to target Pointe Aux Chenes as a reaction to outcry over alleged "corruption" and "graft" in the VoO program, and the alleged effect on minority fishing communities. But even if that was true, it doesn't support an inference that non-minorities in that area were purposefully *excluded* because of their race. Nor does it support the allegation that in other areas, minorities were purposefully excluded because of *their* race. Those claims are nothing more than *legal conclusions* that cannot support a cause of action.

And ironically, the amended complaint's legal conclusions themselves are *contradictory*; if proven they would actually *disprove* the plaintiffs' case. BP is alleged, in some areas, to have

---

[37]   *See, e.g., Richards v. JRK Property Holdings*, 405 Fed. App'x 829, 831 (5th Cir. 2010) ("In the Plaintiff's complaint, she asserted that she was discharged due to her race in violation of Title VII…However, the complaint did not set forth any factual allegations to support a racial discrimination claim. The only facts alleged were (1) Richards was terminated from her position as a property manager in October 2008; and (2) Richards *believed* she was terminated because she is African-American. *Richards provided no facts that lend support to her belief that she was terminated because of her race. Her assertion of racial discrimination is a legal conclusion that the court is not required to accept and does not suffice to prevent a motion to dismiss.*") (emphasis added).

10

given "preference" to minority applicants for VoO contracts.  Yet in others, it allegedly gave preference to non-minority applicants.  Thus, *both* minority and non-minority applicants allegedly received preference.  These inconsistent allegations thus refute any theory that BP (or any of the other defendants) engaged in purposeful discrimination.

This point is explained in *Washington v. State of Louisiana*.[38]  There, a § 1981 plaintiff alleged that she suffered adverse employment consequences – including denial of requests for medical leave, unfavorable schedule assignments, and pay decreases – because of her race.  But her complaint alleged that her supervisors showed favor towards "their friends and favorites, who are usually white individuals, and *sometimes but to a lesser extent, to those employees who are black.*"[39]  Judge Brady of the Middle District of Louisiana dismissed her claim because she did "not allege that she was treated less favorably than similarly situated individuals because of her race."[40]  He concluded then that she had "not plausibly argue[d] that [her treatment] was based on race," and had not pleaded the requisite "racial animus" to support her claim.

That same dynamic is at play here.  The amended complaint's legal claims are that certain members of both minority *and* non-minority groups received preferential treatment that was denied to others *within their groups*.  That negates the claim that BP sought to *exclude* members of either group on the basis of their race.  If anything, it is an "obvious alternative explanation" that BP was attempting to ensure that people of *all* races were given an equal opportunity to participate in the VoO program.  The plaintiffs cannot avoid that conclusion by arbitrarily drawing geographic boundaries within a single program meant to combat a single oil spill.

---

[38]   No. 10-261, 2010 WL 3169279, at *2 (M.D. La. Aug. 11, 2010).

[39]   *Id*. (emphasis original).

[40]   *Id.*

Finally, the plaintiffs discount another "obvious alternative explanation" for giving preference to Pointe Aux Chenes in the VoO program. It is a fishing community near the Gulf in South Louisiana. It is not surprising that such a community would be fertile ground for BP to find fishermen ready to participate in the VoO program; there was an oil spill threatening them and they had boats ready to go.

### 4. The plaintiffs' amended complaint fails to allege even the most basic elements of the named plaintiffs' claims.

Even if plaintiffs' conflicting allegations of race discrimination could pass muster, the amended complaint still fails. The named plaintiffs have not alleged even the most basic factual allegations to show that *they* were damaged by any alleged discriminatory practices. We note a few of the amended complaint's glaring absences:

- What race are the plaintiffs?

- What community do the plaintiffs live in, and did that community receive preference?

- Were the plaintiffs qualified to even participate in the VOO program (*i.e.*, did each plaintiff even have a vessel?)[41]

- And even more basic – what efforts did the plaintiffs make to participate in the VOO program, when were these efforts made, and what reception or response did they get from BP or the other defendants?

The amended complaint offers no answers. And its purported class action plea cannot cure these fundamental problems. The plaintiffs are not certified as representatives of a class, and without certification, they lack standing to assert the claims of others.

The Fifth Circuit has held that the absence of such basic factual allegations compels dismissal. In *Landavazo v. Toro Co.*, the plaintiff ("Landavazo") sued his former employer

---

[41] The plaintiffs' allegation that they were merely "boat captains and/or crew members" (Rec. Doc. 12, ¶¶ 2-3) suggests that some may *not* have owned vessels.

12

alleging that the employer fired him because of his race in violation of 42 U.S.C. § 1981. According to his complaint:

> Mr. Landavazo was terminated on or about December 9, 2004. Defendant purportedly terminated his employment because Plaintiff supposedly claimed unworked overtime. This purported reason is false, pretextual and a mere excuse for unlawful motivations. The real reasons Mr. Landavazo was discriminated and retaliated against in the terms, conditions, and privileges of his employment is because of his race, color, national origin and or ethnicity…[42]

The district judge *sua sponte* dismissed Landavazo's complaint for failure to state a claim upon which relief could be granted.[43] The Fifth Circuit affirmed, holding that the complaint lacked the basic facts to support its theory of race discrimination:

> ***Conspicuously missing from the pleading are minimal facts pertaining to Landavazo's race, ethnicity, and/or national origin; any acts of alleged retaliation or discriminatory conduct; or any other facts related to a discrimination or retaliation claim.*** Even though the district court liberally construed the pleading as asserting claims under § 1981, it properly dismissed those claims for failure to state a claim upon which relief could be granted.[44]

---

[42] 301 Fed. App'x 333, 334 (5th Cir. 2008).

[43] *Id*.

[44] *Id.* at 336 (emphasis added); *see also Vaughn Medical Equipment Repair Service, L.L.C.*, 2010 WL 3488244 at * 21 - * 23 (Berrigan, J.) ("Although replete with conclusory allegations of racial animus, the complaint is bereft of any contextualized factual assertions from which to infer the defendants' activities were ultimately driven by discriminatory intent. This deficiency is fatal to plaintiff's civil rights claims…Pursuant to *Ashcraft v. Iqbal*, each of these conclusory allegations is to be ignored. The plaintiff has failed to plead any facts that would permit the reasonable inference that the defendants activities were motivated by an intent to discriminate against plaintiff on the basis of race. Therefore, it cannot state a claim under § 1981…and these claims must be DISMISSED."); *McNeal v. David Zerkel Sales, Ltd.*, Civil Action No. 10-cv-1723, 2011 WL 3206845 at * 7 (W.D. La. May 12, 2011) ("Plaintiff's allegations of race-based firing or hostile work environment are not supported by enough facts to overcome the Rule 12(b)(6) challenge.") (citing *Richards*, 405 Fed. App'x. at 830).

Like the pleadings in *Landavazo*, the amended complaint does not even offer the most basic facts to support its allegation that the named plaintiffs suffered purposeful and intentional discrimination. Those allegations are thus are entitled to no weight under governing precedent.

> **B.   Even if the plaintiffs had alleged factual allegations supporting a claim, that claim is only against BP, not DRC.**

Even if the plaintiffs' bare-bones factual allegations establish a claim of intentional race discrimination, they establish it only against BP. The amended complaint lacks *any* specific allegations of discriminatory conduct by DRC. It alleges that "*BP* created what is now known as the Vessels of Opportunity program (the "VOO Program")."[45] It also alleges that "[a]t all relevant times herein, *BP* oversaw the program."[46] And, most importantly, *all of the allegedly discriminatory policies were BP's*. For instance, the plaintiffs allege that *BP* chose to target certain communities with allegedly high concentrations of minorities to receive preference in the VoO program:

> 26.   In response to public outcries regarding the corruption and its effect on minority fishing communities, **BP** capriciously selected only communities with relatively high concentrations of minorities to receive preference in the VOO Program. Such minority communities, upon information and belief, included those which had relatively high concentrations of Native Americans, African-Americas, and/or Asian Americans.[47]

And it alleges that *BP*'s alleged policies also resulted in discrimination – against minorities, this time – in other areas:

> 37.   Conversely, and upon information and belief, ***BP's*** arbitrary and discriminatory selection of certain

---

[45]   Rec. Doc. 12, plaintiffs' first amended and supplemental complaint, ¶ 22 (emphasis added).

[46]   *Id*. (emphasis added).

[47]   (Emphasis added). *See also id.*, ¶ 27 ("***BP's*** selective process, in turn, prevented many local boat captains and/or crew members from participating in the VOO Program because of their race, color, or ethnicity.") (emphasis added).

14

>communities for racial and/or ethnic preference in its implementation of the VOO Program prevented minorities, who were otherwise eligible for participation in the VOO Program, from full enjoyment to make and enforce contracts.[48]

The amended complaint contains *no factual allegations* that DRC had *any* role in selecting what communities would receive preference, or in conceiving and implementing any discriminatory policies. The plaintiffs attempt to get around this by referring to "Defendants'" policies and procedures. That is just a label. Referring to "Defendants'" phantom policies – without saying what those policies were – is insufficient to plausibly state a claim. The only allegation of a discriminatory policy is BP's "preference" policy. So, even if the complaint establishes a claim, that claim has been properly pled against only BP – not DRC.

### C. Alternatively, the plaintiffs' LUTPA claim should be dismissed; LUTPA does not provide a cause of action for failure to award a contract based on race.

Even if the Court finds that plaintiffs have stated a claim under § 1981, their claim under the Louisiana Unfair Trade Practices Act ("LUTPA") still warrants dismissal. LUTPA is not aimed at racial discrimination of the type complained of. LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[49] A business practice is considered "unfair" under LUTPA when it offends established public

---

[48] (Emphasis added). *See also id.*, ¶ 30 ("Conversely, in communities not selected for preferential treatment by **BP**, certain minorities, including Native Americans, African-Americans, and Asian-Americans, were prevented from fully and equally participating in the VOO Program because of their race, color, and/or ethnicity.") (emphasis added).

[49] La. R.S. § 51:1405(A).

15

policy and is unethical, oppressive, unscrupulous, or substantially injurious.[50] And a business practice is "deceptive" under LUTPA when it amounts to fraud, deceit, or misrepresentation.[51]

The Louisiana Supreme Court has made clear that "the range of prohibited practices under LUTPA is extremely narrow."[52] We have not found a single case in which a Louisiana state or federal court has expanded that extremely narrow range of prohibited practices to include a decision not to award a contract based on race. Nor have we found any decision of the Federal Trade Commission holding such conduct to be an unfair or deceptive trade practice.[53] The lack of such a holding by the FTC is noteworthy, as LUTPA provides that its provisions do not apply to:

> [a]ny conduct which complies with section 5(a)(1) of the Federal Trade Commission Act [15 U.S.C., 45(a)(1)], as from time to time amended, any rule or regulation promulgated thereunder and any finally adjudicated court decision interpreting the provisions of said Act, rules and regulations.[54]

The reference to section 5(a)(1) of the FTC Act makes sense, as LUTPA's prohibition on unfair or deceptive trade practices is modeled on it.[55] Section 5(a)(1), in language almost identical to La. R.S. § 51:1405, prohibits "[u]nfair methods of competition in or affecting commerce, and

---

[50] *Surgical Care Center of Hammond, L.C. v. Hospital Service Dist. No. 1 of Tangipahoa Parish*, 309 F.3d 836, 843 (5th Cir. 2002) (citing *Jefferson v. Chevron, U.S.A., Inc.*, 98-254 (La. App. 4th Cir. 05/20/98), 713 So. 2d 785, 792-93.

[51] *Id.*

[52] *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 2009-1633 (La. 04/23/10), 35 So. 3d 1053, 1060.

[53] Unlike LUTPA, the FTC Act does not contain a private right of action. *Norris v. Fairbanks Capital Corp.*, 178 Fed. App'x 401, 403 (5th Cir. 2006) (plaintiff "had no private right of action under the Federal Trade Commission Act"); *Cranfill v. Scott & Fetzer Co.*, 752 F. Supp. 732, 734 (E.D. Tex. 1990) ("[i]t is well settled law" that no implied private right of action exists under the FTC Act). Decisions interpreting what is an unfair trade practice under the Act emanate from the FTC itself, not the courts.

[54] La. R.S. § 51:1406(4).

[55] *See Cheramie*, 35 So. 3d at 1056 n.4 (noting that LUTPA is one of a number "little FTCs" adopted by the states and based on the federal statute).

16

unfair or deceptive acts or practices in or affecting commerce."[56] Unsurprisingly, Louisiana courts have looked to Federal Trade Commission decisions in determining what constitutes an unfair or deceptive trade practice under LUTPA.[57]

The Fifth Circuit has noted that the "real thrust" of the LUTPA "is to deter injury to competition."[58] The complete lack of jurisprudence interpreting LUTPA, since its enactment in 1972, to provide a remedy for racial discrimination claims simply confirms this. It should also be noted that while the Louisiana Supreme Court, in *Cheramie*, has recently expanded the concept of standing under LUTPA beyond consumers and business competitors, it made clear that the scope of the statute, and a plaintiff's burden to state a claim under it, remains the same.[59] So *Cheramie* offers the plaintiffs no refuge. LUTPA does not provide a cause of action for racial discrimination in the awarding of private contracts.

Finally, even if the Court were to consider this issue unsettled, it would still mandate dismissal. The function of this Court, in interpreting unsettled issues of state law, is to "predict state law, not to create or modify it."[60] Any substantive change to the law regarding the causes of action available under LUTPA must be made by the Louisiana Supreme Court, not a federal

---

[56]   15 U.S.C. § 45(a)(1).

[57]   *See, e.g.*, *Stephenson v. Paine Webber Jackson & Curtis, Inc.*, 839 F.2d 1095, 1101 (5th Cir. 1988); *Guste v. Demars,* 330 So. 2d 123, 125 (La. App. 1st Cir. 1976); *see also Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., Inc.*, 292 F.3d 471, 481 (5th Cir. 2002) (noting that "LUTPA is modeled after the Federal Trade Commission Act" and drawing support from Supreme Court jurisprudence interpreting the Act).

[58]   *Schenck v. Living Centers-East, Inc.*, 917 F. Supp. 432, 439 (E.D. La. 1996) (quoting *Omnitech International, Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir.1994)) ("The real thrust of the LUTPA, modeled after the Federal Trade Commissions Act ... is to deter injury to competition.").

[59]   *Cheramie*, 35 So. 3d at 1058 ("Although LUTPA is available to plaintiffs other than business competitors and consumers, a plaintiff's burden of proving an unfair or deceptive method, act, or practice on the part of a defendant is not lessened by this opinion.").

[60]   *City of Alexandria v. Cleco Corp.*, 735 F. Supp. 2d 448, 457 (W.D. La. 2010) (citing *Am. Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1391 (5th Cir. 1991)) (declining to expand the Louisiana Supreme Court's decision in *9 to 5 Fashions, Inc. v. Spurney* to tortious interference with contract claims against municipal officers).

court exercising pendent jurisdiction over such a claim under section 1367.[61] There is also no practical reason for this Court to reach to find a cause of action for the plaintiffs under LUTPA, as there are other statutes – including 42 U.S.C. § 1981, on which the plaintiffs purport to base their claims in this case – that address racial discrimination in private contracts. Even if the Court were to find that plaintiffs have pleaded a claim under § 1981, their LUTPA claims should be dismissed.[62]

### D. The plaintiffs have already had a chance to amend their complaint; further amendments would be futile.

The Court should dismiss the case *without* granting the plaintiffs' leave to amend again. There is no doubt that dismissal without leave should be granted only when further amendments would be futile.[63] But that remedy is appropriate here.

The amended complaint's contradictory allegations of both discrimination and preferential treatment are fatal. Those contradictions are inherent in their allegations; the plaintiffs cannot solve the problem without abandoning half of their case. Further, this is now the plaintiffs' second attempt to state a claim, and they still have not alleged a single fact to

---

[61] *Am. Waste & Pollution Control Co.*, 949 F.2d at 1391 (quoting *Cargill, Inc. v. Offshore Logistics, Inc.,* 615 F.2d 212, 215 (5th Cir.1980)) ("In fulfilling our *Erie* role, we can only predict Louisiana state law; '[i]t is up to the Supreme Court of Louisiana and not this court to change the substantive law of that state.'").

[62] Also, we note that in La. R.S. § 51:1409 LUTPA authorizes a plaintiff to bring an action for damages "individually but not in a representative capacity." This provision has been interpreted to act as a "clear ban" against class actions by private persons under the Act. *Indest-Guidry, Ltd. v. Key Office Equip., Inc.*, 2008-599 (La. App. 3d Cir. 11/5/08), 997 So. 2d 796, 810 (quoting *State ex rel. Guste v. General Motors Corp.*, 370 So. 2d 477, 483 (La.1978) (Dennis, J., concurring)). Although this issue technically should be addressed during the class certification process (if that ever occurs), it highlights the deficiencies of plaintiffs' LUTPA class allegations.

[63] *In re MasterCard Intern. Inc, Internet Gambling Litigation*, 132 F. Supp. 2d 468, 497 (E.D. La. 2001) (Duval, J.) (dismissing without leave when "[t]he defects in plaintiffs' complaints appear[ed] insurmountable"); *Hart v. Bayer Corp.,* 199 F.3d 239, 248 n.6 (5th Cir. 2000) (court should not generally dismiss without leave to amend unless defect is incurable); *Confederate Memorial Association v. Hines,* 995 F.2d 295, 299 (D.C. Cir. 1993) (district court acted properly when it failed to grant leave to amend granting motion to dismiss when dismissed party does not indicate particular grounds and dismissed party previously brought same suit in another court).

support the named plaintiffs' cause of action for race discrimination. There is nothing to suggest that they will be able to if given another opportunity.

## IV.  CONCLUSION

Like Daigle's first complaint, the plaintiffs' amended complaint contains insufficient factual allegations to support their allegations of purposeful race discrimination on the part of DRC. And their legal conclusions are self-contradictory. There are also *no* facts to support an allegation that these named plaintiffs suffered discrimination, even if the more general allegations were sufficient. Finally, there is no factual allegation that DRC discriminated against *anyone* – the only policies that are alleged were those of BP. The complaint is deficient as a matter of law and should be dismissed for failure to state a claim upon which relief may be granted. Alternatively, the Court should at least dismiss the LUTPA claim because that statute – which prohibits an "extremely narrow" range of practices – does not provide a remedy for the claims at issue here.

Respectfully submitted,

/s/      Harold J. Flanagan
Harold J. Flanagan (Bar No. 24091)
Stephen M. Pesce (Bar No. 29380)
Sean P. Brady (Bar No. 30410)
Andy Dupre (Bar No. 32437)
**FLANAGAN PARTNERS LLP**
201 St. Charles Avenue, Suite 2405
New Orleans, Louisiana 70170
Telephone:  504-569-0235
Facsimile:  504-592-0251
hflanagan@flanaganpartners.com
spesce@flanaganpartners.com
sbrady@flanaganpartners.com
adupre@flanaganpartners.com

*Attorneys for DRC Emergency Services, LLC and DRC Marine, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was served upon opposing counsel of record this 7th day of March, 2012, by e-filing same into the CM/ECF system which will automatically deliver a copy of same to all counsel.

/s/     Harold J. Flanagan