1                  UNITED STATES DISTRICT COURT

2                 EASTERN DISTRICT OF LOUISIANA

3

4

5    IN RE:  OIL SPILL BY THE OIL RIG     *    10-MD-2179-CJB-SS
              *DEEWATER HORIZON* IN THE       *
6    GULF OF MEXICO ON                    *
     APRIL 20, 2010                       *    October 28, 2011
7                                         *
                                          *
8    Applies to:  All Cases               *    9:30 a.m.
     * * * * * * * * * * * * * * * * * * *

9

10

11                  DISCOVERY STATUS CONFERENCE
               BEFORE THE HONORABLE SALLY SHUSHAN
12                UNITED STATES MAGISTRATE JUDGE

13

14   <u>Appearances</u>:

15

16   For the Plaintiffs:           Herman Herman Katz & Cotlar, LLP
                                    BY:  STEPHEN J. HERMAN, ESQ.
17                                  820 O'Keefe Avenue
                                    New Orleans, Louisiana 70113

18

19   For the Plaintiffs:           Williamson & Rusnak
                                    BY:  JIMMY WILLIAMSON, ESQ.
20                                  4310 Yoakum Boulevard
                                    Houston, Texas 77006

21

22

23

24

25

1    <u>APPEARANCES CONTINUED</u>:

2

3    For the Plaintiffs:              Levin Papantonio Thomas Mitchell
                                       Rafferty & Proctor
                                     BY:  BRIAN H. BARR, ESQ.
4                                    316 South Baylen Street
                                     Suite 600
5                                    Post Office Box 12308
                                     Pensacola, Florida 32591

6

7

8    For the Plaintiffs:              Irpino Law Firm
                                     BY:  ANTHONY IRPINO, ESQ.
                                     One Canal Place
9                                    365 Canal Street
                                     Suite 2990
10                                   New Orleans, Louisiana  70130

11

12   For the Federal                  U.S. Department of Justice
     Government Interests:          BY:  R. MICHAEL UNDERHILL, ESQ.
13                                        SARAH D. HIMMELHOCH, ESQ.
                                     450 Golden Gate Avenue
14                                   Rm. 7-5395
                                     San Francisco, California 94102

15

16

17   For BP:                          Liskow & Lewis, APLC
                                     BY:  DON K. HAYCRAFT, ESQ.
                                     701 Poydras Street
18                                   Suite 5000
                                     New Orleans, Louisiana 70139

19

20

21   For BP:                          Kirkland & Ellis, LLP
                                     BY:  J. ANDREW LANGAN, ESQ.
                                          MARK J. NOMELLINI, ESQ.
22                                        BRIAN A. KAVANAUGH, ESQ.
                                     300 N. Lasalle
23                                   Chicago, Illinois 60654

24

25

JODI SIMCOX, RMR, FCRR - OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

```
 1    APPEARANCES CONTINUED:

 2
      For Transocean:            Frilot, LLC
 3                               BY:  WADE B. HAMMETT, ESQ.
                                 1100 Poydras Street
 4                               Suite 3700
                                 New Orleans, Louisiana 70163
 5

 6
      For Transocean:            Sutherland Asbill & Brennan, LLP
 7                               BY:  RACHEL GIESBER CLINGMAN, ESQ.
                                 BY:  RICK MURPHY, ESQ.
 8                               1001 Fannin Street, Suite 3700
                                 Houston, Texas 77002
 9

10
      For Transocean:            Goforth Lewis
11                               BY:  DANIEL O. GOFORTH, ESQ.
                                 490 Woodway
12                               Suite 750
                                 Houston, Texas  77056
13

14
      For Cameron International:  Stone Pigman Walther Wittmann, LLC
15                               BY:  PHILLIP A. WITTMANN, ESQ.
                                      CARMELITE M. BERTAUT, ESQ.
16                               546 Carondelet Street
                                 New Orleans, Louisiana 70130
17

18
      For Halliburton:           Godwin Ronquillo, PC
19                               BY:  DONALD E. GODWIN, ESQ.
                                 1201 Elm Street, Suite 1700
20                               Dallas, Texas 75270

21

22    For Halliburton:           Godwin Ronquillo, PC
                                 BY:  R. ALAN YORK, ESQ.
23                               1331 Lamar, Suite 1665
                                 Houston, Texas 77010
24

25
```

```
 1   APPEARANCES CONTINUED:

 2   For Anadarko and MOEX:        Kuchler Polk Schell
                                     Weiner & Richeson, LLC
 3                                 BY:  DEBORAH D. KUCHLER, ESQ.
                                   1615 Poydras Street, Suite 1300
 4                                 New Orleans, Louisiana 70112

 5

 6   For Anadarko:                 Bingham McCutchen, LLP
                                   BY:  WARREN A. FITCH, ESQ.
 7                                 2020 K Street NW
                                   Washington, DC 20006
 8

 9
     For MI-Swaco:                 Morgan, Lewis & Bockius
10                                 BY: JAMES B. TARTER, ESQ.
                                   1000 Louisiana Street
11                                 Suite 4000
                                   Houston, Texas 77002
12

13
     For Seacor, and O'Briens      Weil, Gotshal & Manges
14   Response Management, and      BY: MICHAEL J. LYLE, ESQ.
     Siemens Financial, Inc.:      1300 Eye Street, NW
15                                 Suite 900
                                   Washington, D.C. 20005
16

17
     Official Court Reporter:      Jodi Simcox, RMR, FCRR
18                                 500 Poydras Street
                                   Room HB-406
19                                 New Orleans, Louisiana 70130
                                   (504) 589-7780
20

21

22   Proceedings recorded by mechanical stenography using
     computer-aided transcription software.
23

24

25
```

JODI SIMCOX, RMR, FCRR – OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

1                        <u>PROCEEDINGS</u>

2                      (October 28, 2011)

3          **THE DEPUTY CLERK:**  All rise.

4          **THE COURT:**  Everybody have a seat.

5                      **(OFF THE RECORD)**

6          **THE COURT:**  Back to our Friday business.  You-all

7    will note that Mr. O'Keefe is back.  We can manage this week

8    more capably with Mike back.  So that's good.

9               Does anybody want to give us an update on BOP

10   capping stack issues?

11         **MR. LANGAN:**  Your Honor, Andy Langan.

12              I have done some checking with my team since

13   Mr. Gasaway is out of town.  Here's what I know:  The laser

14   scan of the kinked riser is set to be done on November 7th.  I

15   believe that we're working out the details of exactly what's

16   going to be done, and that will be published in some fashion to

17   the parties, including Mike and his team.

18              Then I believe that in terms of the laser

19   scanning of the actual capping stack, some further work is

20   being done, and we're going to engage with Mike and his team.

21   The protocol is not quite ready for that, but I know it's being

22   worked on.

23         **THE COURT:**  Good.

24         **MR. LANGAN:**  So that's my report on -- for the next

25   steps about these inspections.

```
 1          THE COURT:  Andy, would you check the mic?  I don't
 2   think you're on.  So I think our phone participants are having
 3   problems.
 4               Charles, will you check the plug and see that
 5   the podium is plugged in?
 6          MS. HIMMELHOCH:  Your Honor, we can hear Mr. Langan
 7   clearly.
 8          THE COURT:  Oh, good.  Okay.  Good.  Thank you,
 9   Sarah.
10               Let's get an update on the Phase Two 30(b)(6)
11   rotations.  How are we coming on that?  We're on schedule?
12          MR. BARR:  Your Honor, Brian Barr for the PSC.
13          THE COURT:  Good morning, Brian.
14          MR. BARR:  All of the drafts have gone out.  Last
15   night, I think, they all got circulated, so everybody's got
16   them.
17               I have one question on your order from last
18   week.  Under your order, all the comments to the drafts are due
19   on November 1.  I've gotten some questions, people wondering,
20   is that for the first round that went out last week, or for the
21   round that went out yesterday as well?
22          THE COURT:  I think we'll have to stagger it.  So,
23   yes, that will be for the first round, and then a week later
24   for the second round.  We missed that.
25          MR. UNDERHILL:  Could I ask a question on that, Your
```

1    Honor?

2              **THE COURT:**  Sure.

3              **MR. UNDERHILL:**  The first round, I think that we may

4    have been staggered on those for the U.S.  What the defendants

5    have done, it appears to me -- and they can correct me if I'm

6    wrong -- is that they did one set of 30(b)(6) topics for

7    quantification and a separate for source control.

8                   That's posing a problem for us because, I mean,

9    the lines aren't so cleanly drawn in all cases.  It would help

10   us a lot in trying to deal with our client agencies, which are

11   numerous, if we could bounce next week's November 1st date out

12   a week.  That would really help us a lot.

13             **THE COURT:**  Okay.

14             **MR. UNDERHILL:**  Thank you very much.

15             **THE COURT:**  You're welcome very much.

16                   Okay.  We're going to take up any remaining

17   differences on the 30(b)(6) notices on the 18th, Friday the

18   18th status conference.  If you guys could get me your

19   submissions by close of business on the 15th so I can take a

20   look at those and be prepared to talk to you, that would be

21   great.

22                   So that's good.  We're in gear.

23                   Okay.  Transocean reported last week that it and

24   the United States was working on an issue regarding document

25   production.  Any update?  Do we need to know anything about

 1   that?

 2              **MR. UNDERHILL:**  I have not heard any loud noises from

 3   my side, so I take no news as good news.

 4              **THE COURT:**  I couldn't agree with you more.  We're

 5   going to pass that for this week.  What we'll do is we'll take

 6   that off unless it comes back up.

 7              Then, Mr. Haycraft, we had a little dust-up

 8   yesterday with regard to the well advisor program.

 9              **MR. HAYCRAFT:**  Yes, ma'am.

10              Your Honor, the -- I think my two e-mails

11   yesterday afternoon and this morning cover the issue.  As you

12   know, from July, August and September, this has been a topic of

13   great interest to BP.  We discovered after -- or during David

14   Cameron's deposition on June 13th that such a program even

15   existed.

16              Upon pressing for further discovery on that,

17   specifically, was the program used in connection with planning

18   for the Macondo 252 well by Marianas and *DEEPWATER HORIZON*, I

19   believe it was in August that Transocean counsel reported in

20   this courtroom that, "No.  The program had never been used at

21   Macondo 252," and that was the end of that story.

22              We then went back and double-checked our own

23   document review and found, indeed, an e-mail from the OIM on

24   *DEEPWATER HORIZON* to Mr. Paul Johnson, the rig manager, dated,

25   I believe it's early February 2010, or perhaps late

1    January 2010, making an inquiry about a particular aspect of

2    the well advisor program, namely the kick tolerance for that

3    well.  The e-mail got forwarded to general manager Bill Sannon,

4    who then responded back to Paul Johnson, who then told the rig

5    that their proposed kick tolerance deviation was approved.

6              That e-mail had an -- had a file subject --

7    regarding subject line of "well adviser.xls."  So it was clear

8    that the program, in some manner, had been used.  So I brought

9    that to the Court's attention in September.  Ultimately, it was

10   agreed between the parties that there would be a 30(b)(6) on

11   that subject, which happened yesterday.

12             The 30(b)(6) witness, Barry Braniff, whose

13   deposition we've been anticipating for more than 30 days, as

14   Your Honor could see in the transcript, had not looked for any

15   documents, had not commissioned the looking for any documents,

16   had not talked to Paul Johnson about the well advisor program,

17   had not talked to any rig crew member.

18             Your Honor will recall that although certain

19   crew members either have personal counsel and/or are taking the

20   Fifth, namely Jimmy Harrell, the Offshore Installation Manager,

21   but on the other 21-day hitch, there's another OIM named Rodney

22   Ryan.  But Mr. Braniff didn't check with Rodney Ryan, didn't

23   check with Paul Johnson, didn't check with Bill Sannon, simply

24   relied upon the document that was presented to him during his

25   deposition preparation for yesterday's deposition, which was,

1  indeed, the single e-mail that we had pulled out of the

2  thousands of millions of documents to demonstrate that,

3  apparently, well advisor was used.

4              Now, counsel can tell Your Honor in open court

5  that, "Well, that's all there is.  That's the only evidence

6  there is out there."  But yesterday was our chance to ask the

7  corporation whether well advisor had been used; and, if so, to

8  what extent, and for what reasons it was or wasn't used.  We

9  got Mr. Braniff, who was evasive and obfuscatory to say the

10 least.

11             We believe that the 30(b)(6) presentation is

12 inadequate.  We request that Transocean present a properly

13 prepared 30(b)(6) witness on this very discrete topic so we can

14 be assured, and the Court can be assured, that we have found

15 answers to questions that are not insignificant.

16             Whether Transocean engaged in a well review

17 program is part of their Operations and Performance Manual.

18 It's part of their Well Control Manual.  Namely, the rig -- the

19 rig senior crew, with its shoreside management, is supposed to

20 engage in a careful multi-item checklist of kick tolerance,

21 pore pressure, frac gradient, maximum anticipated surface

22 pressure, all kinds of criteria for judging and having a peer

23 review of the operators drilling program.

24             We really, to this date on October the 28th,

25 don't have a clear idea of what review this rig crew or this

1    shore management did.  Many of these documents have been

2    produced after the witness was deposed; namely, for example,

3    Paul Johnson, Daun Winslow.  We didn't have, for example, the

4    Offshore Integrity case until after both of those gentlemen

5    were already deposed.

6              I think there's a pattern here, and Transocean

7    is evading answering the question, "Was the well advisor

8    program used by both Marianas in the early stages of drilling

9    this well, and then the *DEEPWATER HORIZON* beginning in

10   mid-February of 2010?"  It's an important issue, and we haven't

11   found the answers.

12             Thank you, Your Honor.

13        **THE COURT:**  Thanks, Don.

14             All right.  Good morning.

15        **MR. MURPHY:**  Good morning, Your Honor.  I'm Rick

16   Murphy from Sutherland.

17             I attended the deposition with counsel for BP

18   yesterday afternoon.  I think it is absolutely wrong to say

19   that Transocean is being the least bit evasive about this.

20   Mr. Braniff, who is the company expert on well advisor, was

21   examined by counsel for BP for four hours and five minutes

22   yesterday.  He testified in detail about how the spreadsheet

23   program was used at Macondo, going over the checklist under

24   questioning by Mr. Lancaster.

25             The fact is after a year and a half of

1   litigation in this case and discovery, the only document anyone

2   has ever seen -- and we searched -- that says anything about

3   the use of well advisor at Macondo is the spreadsheet about

4   which Mr. Braniff was examined yesterday and the e-mail where

5   it was transmitted to Paul Johnson.  That's it.  He was

6   prepared to testify about that spreadsheet, and he did.

7               Now, with respect to inquiring of anyone, the

8   person who filled out the spreadsheet was Mr. Anderson.

9   Mr. Anderson perished in the incident.  There was no phone call

10   to be made to learn anything more about what Mr. Anderson did

11   to prepare the spreadsheet.  I believe the matter's closed.

12   We've done everything we can.

13               **THE COURT:**  Well, I'll tell you what let's do, why

14   don't one of the two of you -- I guess, Don, I'll put it on

15   you -- send me the entire transcript.

16               **MR. HAYCRAFT:**  I did, Your Honor, this morning.

17               **THE COURT:**  Oh, you did.  How did I miss that?

18               **MR. HAYCRAFT:**  I don't know.

19               **THE COURT:**  I did read the clips that you sent me

20   last night.

21               **MR. HAYCRAFT:**  Right.  I sent the entire transcript

22   at 8:15.

23               **MS. KUCHLER:**  At 8:21, Your Honor.

24               **THE COURT:**  Thank you, Deb.

25               **MR. HAYCRAFT:**  I've referenced in my transmittal

1    e-mail the pages, 92 through 95 and 292 through 294, of that

2    transcript where we find out that Mr. Jason Anderson is

3    certainly dead in this tragedy, partly --

4            **MR. GOFORTH:**  You found that out?

5            **MR. HAYCRAFT:**  Pardon me, Danny?

6            **MR. GOFORTH:**  Excuse me.

7            **MR. HAYCRAFT:**  The point is that there are surviving

8    crew members.  More importantly, there's a surviving OIM.  And

9    one has to ask them, and Mr. Johnson, the rig manager

10   performance, whose duty it is under the company manuals to

11   perform this checklist, why they didn't do it.

12           I just can't take counsel's word that, of all

13   the thousands of documents, this one e-mail is it if you

14   haven't checked with the OIM on the other 21-day hitch, or the

15   senior toolpusher on the other 21-day hitch, or the rig

16   manager, whose ultimate responsibility it is to perform the

17   well planning process.

18           **THE COURT:**  Okay.  Thanks, guys.  I will look at the

19   full transcript and we'll get a ruling out pretty quickly.

20           **MS. CLINGMAN:**  Your Honor, this is Rachel Clingman.

21   May I have just a moment?  Because I think I'm the counsel

22   referred to as making a representation that this has not been

23   used.

24           If you may recall, I was asked to stipulate that

25   it had not been used.  What I represented to the Court and

1    counsel is we did not have evidence other than what had already

2    been produced, and I did not think it would be appropriate to

3    make that kind of stipulation because we don't know.

4                **THE COURT:**  Right.  Rachel, I do recall that.

5                **MS. CLINGMAN:**  Thank you very much.

6                      What we did at the time, you may also recall, is

7    we did go back and do another document search and confirmed, I

8    believe in open court, that we could not locate any other

9    documents than those that had been produced.  So we're

10   rehashing, to some extent, the discussion I believe we've

11   already had in front of Your Honor, and it's been resolved.

12               **THE COURT:**  Right.  I recall that, and you did

13   certify a further search for documents.

14                     The issue that Don raises is, I think, a little

15   bit more limited.  I think he's satisfied on the document

16   search, perhaps I'm wrong, and we'll ask him to correct me if I

17   am.

18                     I think what he is unhappy about is that he got

19   the well advisor program information after he had deposed the

20   people that he otherwise would have questioned about it, and

21   Mr. Braniff didn't do what he believes was the due diligence in

22   talking to those people so that he could respond on behalf of

23   the company.

24                     Do I have it right, Don?

25               **MR. HAYCRAFT:**  That's exactly right, Your Honor.

1            **THE COURT:** Okay. So we'll take a look at it,

2 Rachel. Yes, I do recall that specifically, so I appreciate

3 your piping in and putting it on the record.

4            **MS. CLINGMAN:** Thank you.

5            **THE COURT:** Okay. Sarah, Lawrence Livermore National

6 Laboratory, I hear about them on NPR.

7            **MS. HIMMELHOCH:** Yes, they're busy folks.

8            **THE COURT:** Exactly.

9                I think your request is fine; and relative to

10 the Secretary of Commerce, none of us caught that. So there

11 you go.

12            **MS. HIMMELHOCH:** Okay.

13            **THE COURT:** All right. Now, we're going to have to

14 ask Mr. Underhill to fill in for Mr. Maze on the calendar.

15            **MR. UNDERHILL:** Uh-oh. I don't think I'm qualified

16 to do this.

17            **THE COURT:** I don't either.

18            **MR. UNDERHILL:** And you're going to stipulate, I

19 know.

20            **THE COURT:** I don't think you are either, but we're

21 going to give you a shot.

22            **MR. UNDERHILL:** Big shoes to fill.

23            **THE COURT:** That's right.

24                Andy, have you tracked down Ms. Heather Powell

25 on November the 18th?

1      **MR. LANGAN:**  Your Honor, yes.  I have a two-part

2  answer about Heather Powell.  First of all, technically, she

3  may be available on November 18th.  However, I have been asked

4  to ask Your Honor and Mr. Williamson if we could possibly leave

5  it on the 17th.  It's just a heck of a lot more convenient for

6  her for various reasons.  But the theoretical answer is:  She

7  is theoretically available on the 18th with a very strong

8  preference for the 17th.

9      **THE COURT:**  Okay.  Mr. Williamson.

10      **MR. WILLIAMSON:**  We can leave it on the 17th, Your

11  Honor, although we did want it earlier.  We'll be happy to

12  accommodate BP again.

13      **THE COURT:**  Yet again.

14      **MR. LANGAN:**  Thank you.

15      **MR. UNDERHILL:**  Heather Powell, the 17th.

16      **THE COURT:**  The 17th, there's no --

17      **MR. LANGAN:**  Stays as is.

18      **THE COURT:**  As is.

19      **MR. UNDERHILL:**  In Houston?

20      **THE COURT:**  In Houston.

21      **MR. LANGAN:**  In Houston.  That's correct.

22          Thank you.

23      **THE COURT:**  Jimmy, I don't know if you're the one to

24  discuss Mr. Coronado.  Have you-all thought about that issue?

25      **MR. WILLIAMSON:**  We have, Your Honor, and I've talked

1  with Cameron's counsel.  They've indicated to me that they

2  think that they're going to be filing some sort of report on

3  November 7th involving Mr. Coronado.  So, with the Court's

4  permission, Cameron and I have agreed that we will visit, if

5  necessary, on November 8th.  So with the Court's indulgence.

6              **THE COURT:**  All right.  We'll just carry that over.

7              **MR. LANGAN:**  Your Honor, I just wanted to note that

8  your last order said that he would be scheduled as part of the

9  expert rotation.  It wasn't part of your draft order, I guess

10 understandably so, because there's no report yet.  Is that the

11 point?

12             **THE COURT:**  Yes.  It seemed to us, Mike looked at it

13 with me when he got back, and a possible comprise that you-all

14 might think about is putting him on November 14th and

15 15th right at the beginning of the expert depositions.  One,

16 there are not a lot of depositions scheduled in that time

17 period, so he could fit in nicely, if he's available.  That

18 would give you the opportunity to depose him early in the

19 expert schedule.

20             If we put him later, he'll probably be No. 6 or

21 7 at the same time.

22             **MR. WILLIAMSON:**  That sounds like an excellent

23 suggestion.  I would request permission to wait until

24 November 8th when I discuss it with Cameron's counsel.

25             **THE COURT:**  Good.

1          **MR. WILLIAMSON:**  Certainly, BP also, I think, has --

2  BP had actually had the impetus on wanting his deposition.  We

3  have merely joined in that.

4          **THE COURT:**  Right.

5          **MR. WILLIAMSON:**  I'm sure we can work out the time.

6          **THE COURT:**  Yes.  If you guys would check to see if

7  Mr. Coronado might be available on November 14th and 15th, if

8  that works for everybody else, and for him, that might be a

9  good way to handle it.

10          **MR. LANGAN:**  Sounds good to us, Your Honor.  Thank

11  you.

12          **THE COURT:**  Okay.  Thanks.

13          **MR. UNDERHILL:**  Might we offer a witness, Your Honor?

14          **THE COURT:**  You might.

15          **MR. UNDERHILL:**  Lieutenant Houck, November 21st.

16          **THE COURT:**  November 21, let's see how that looks.

17  That looks good.

18          **MR. O'KEEFE:**  That's because it's an expert week.

19          **THE COURT:**  That's right.  That is an expert week.

20  It's not going to look so good once we get our expert schedule

21  done, but can we live with it?  I mean, that's going to be a

22  very busy week.

23          **MR. WILLIAMSON:**  Your Honor, I'm showing that there's

24  only two expert depositions that day, Heenan and Robinson, or

25  at least that's my --

1          **THE COURT:**  Oh, yes.  We do have those scheduled.
2     You're right, Jimmy.
3          **MR. WILLIAMSON:**  So, anyway, we have no objection.
4          **THE COURT:**  So we're going to go with that.  The
5     21st for Lieutenant Houck.
6              Have the parties agreed whose office Mr. McKay
7     is going to be deposed in?  I don't remember that.
8          **MR. LANGAN:**  The Andrews Kurth firm, Your Honor.
9          **THE COURT:**  That's right.  I did see an e-mail on
10    that.
11         **MR. LANGAN:**  600 Travis, I think it is, in Houston.
12         **THE COURT:**  600 Travis.
13         **MR. LANGAN:**  42nd floor.
14         **THE COURT:**  42nd floor.  Andy knows everything.
15             All right.  We got a report from Denise Scofield
16    that Maxie Doyle is going to be scheduled on November the 4th.
17             Good morning.
18         **MR. TARTER:**  Good morning, Your Honor.  J.B. Tarter
19    for MI.
20             It's actually Doyle Maxie, just so we keep the
21    record -- get the name correctly.
22         **THE COURT:**  Oh, sorry.  Doyle Maxie.
23         **MR. TARTER:**  Yes, Your Honor.
24         **THE COURT:**  I thought *Maxie* is the first name.
25         **MR. HAYCRAFT:**  Everybody gets it wrong.

1          **THE COURT:**  It just sounds better.

2          **MR. TARTER:**  Thank you, Your Honor.

3          **THE COURT:**  You're welcome.

4                  Okay.  So Maxie will be firm on the calendar.

5                  Next up was Gary Leach.  Anything to report on

6     Gary?

7          **MR. HAMMETT:**  Good morning, Your Honor.  Wade Hammett

8     for Transocean.  Transocean and Cameron have agreed that

9     there's no need to take Mr. Leach's deposition.

10         **THE COURT:**  Lovely.

11         **MR. HAMMETT:**  I can also report on Don Vidrine.

12         **THE COURT:**  Yes.

13         **MR. HAMMETT:**  Vidrine's lawyer has talked to the

14    treating physicians and we expect to get responses any day now

15    on whether he'll be able to respond.

16         **THE COURT:**  Good.  Terrific.  Thanks for the update

17    on that.  All right.

18         **MR. WILLIAMSON:**  Before we leave that subject, Judge.

19         **THE COURT:**  Yes, sir.

20         **MR. WILLIAMSON:**  Since Mr. Leach was actually

21    scheduled and he got put off and now Cameron and Transocean,

22    and this is new to me, I suspect we will not contest that.  I

23    would like the right to make sure I kind of check with my

24    appropriate team members to see if we have a desire for Leach

25    independent of them.

1        **THE COURT:**  Fair enough.

2        **MR. WILLIAMSON:**  We probably won't, but I want to

3   make sure I check with the right people.

4        **THE COURT:**  No problem.  If you do, let us know and

5   we'll put it back on the agenda for next week.

6        **MR. WILLIAMSON:**  Thank you, Your Honor.

7        **THE COURT:**  No problem.

8             I think you're down, Mr. Underhill, unless I

9   missed somebody.  I hope we're at the end of scheduling

10  depositions other than expert depositions.

11       **MR. BARR:**  Your Honor, before we move off of the

12  deposition scheduling -- Brian Barr for the PSC.  I just have a

13  question on the Viator deposition.  I want to make sure I've

14  got this right:  90 minutes, Don's got all the time.  Correct?

15       **THE COURT:**  Correct.

16       **MR. BARR:**  Okay.  My team's asking me.  They're

17  looking at it and wanting to make sure that we don't have to

18  have somebody asking questions.  So that's what I wanted to

19  make sure.  Thank you.

20       **THE COURT:**  Don's got all the time.  He likes it that

21  way, by the way.

22       **MR. GODWIN:**  We are in agreement, Your Honor.

23       **MR. LANGAN:**  If Mr. Viator's counsel, Ms. Mince, had

24  a few questions at the end, or BP had a few cleanup questions

25  at the end, I assume that -- this is America; right?

1          THE COURT:  I assume that Don will do what he usually
2    does is trade things for time, or -- do I have that right, Don?
3          MR. GODWIN:  You do, Your Honor.
4          THE COURT:  I thought I did.
5          Or he will graciously ask Ms. Mince to extend
6    some time to you.  I'm not going to prohibit you from asking a
7    few questions, and I hope Ms. Mince will do her usual
8    cooperation.
9          MR. LANGAN:  Thank you.  All right.
10         THE COURT:  Anthony?
11         MR. IRPINO:  I would imagine if Andy would wear some
12   sort of Texas memorabilia, maybe a hat or a jersey, that might
13   be able to get him a few minutes.
14         THE COURT:  I can't see Andy in a hat, but okay.
15         Okay.  Let's talk about the deposition
16   designations and how we're coming on that.
17         Alan, do you want to give us an update?  I don't
18   know how you came up as the lead on this, but you did.
19         MR. YORK:  Alan York for Halliburton.  I'm not sure
20   either, Your Honor, but I'm happy to serve in whatever capacity
21   the Court needs me to serve.
22         Things are better, I think, this week.  There
23   are still some issues that we continue to come up with on
24   individual depositions.
25         THE COURT:  Those unnamed parties.

1          **MR. YORK:**  Unnamed parties.  I really do believe that
2    part of the problem there is it's the parties -- and I'm not
3    casting aspersions -- but it's the parties that are not using
4    an electronic means of generating the load files, but instead
5    are going in and doing manually-generated load files.  That
6    seems to be where some of the problems are arising.
7          So I think that we are in fairly good shape.  I
8    haven't heard any screams from anyone about today's deadlines.
9    I think next week starts to get --
10          **THE COURT:**  A little hairier.
11          **MR. YORK:**  And the weeks after that worse.
12          I would be remiss if I didn't bring up to the
13    Court, we're now further into the process and see how the
14    process is going.  Next week we go from having 15 in a group to
15    20 in a group.  That five doesn't sound like a lot unless
16    you've been racing to get to the deadline on the 15 and the
17    extra five looks like it's going -- and then we have two weeks
18    of that and then we go up to 33, 36.
19          I just want to make --
20          **THE COURT:**  The thought being that the further down
21    the road, the smaller the depositions, that it wouldn't be such
22    a hard task.  If we're wrong about that, as you go into this
23    next 20, let's raise the issue.
24          **MR. YORK:**  Because several of the depositions, even
25    as we go on, are two-day depositions.

1           The point that I would make is:  While it may be

2    true that at the end of reading a two-day deposition, that

3    there are lesser number of actual designations that come from

4    it, it doesn't lessen the time that's necessary to read the

5    two-day deposition and to make that determination.  It's the

6    same amount of time.  So we have real concerns about that.

7           **THE COURT:**  Has the communication within data

8    improved?

9           **MR. YORK:**  I believe so.  I think Jordan has been

10   flipping the plaintiffs' depositions around fairly

11   expeditiously.  We're getting those back.  I've had several

12   conversations with him this week when we've had a couple of

13   issues.  I know that the U.S. provided some cleanup

14   designations for groups 3 -- 4, 5 and 6, I think.

15           We confirmed with Jordan that those will be

16   captured in the transcript that gets flipped next --

17   transcripts that get flipped next Monday.  So I think the

18   process is moving.  There are warps that we will have to deal

19   with along the way, but the process seems to be moving.

20           **THE COURT:**  Good.

21           Is there anything further that you think we need

22   to speak to Jordan about?

23           **MR. YORK:**  I don't think so, Your Honor.  I think

24   we're going -- I think the real test is about to come.  This is

25   the week that we will have 60 depositions all in the queue.

1    Next week will be the week that 30 of those depositions, we

2    have two-page summaries and objections due on, at which time

3    Jordan's going to have 60 depositions that he's dealing with

4    and 30 that he's trying to put into final package form.

5                    He has not indicated a problem.  He has

6    indicated that he's not sleeping much, but neither are the rest

7    of us.  So I think it's -- from where we can see right now,

8    everything's okay.

9              **THE COURT:**  Okay.

10             **MR. YORK:**  Cautiously.

11             **THE COURT:**  I think what we're going to do is we're

12   going to touch base with Jordan on a weekly basis to make sure

13   everything's being communicated and running smoothly from his

14   end.  If anything comes up that the parties think we can

15   improve as far as communication, anybody who has ideas, let us

16   know.  We will take seriously your comment about increasing the

17   number of depositions that need to be cut from 20, you know, to

18   25, et cetera.  We'll look at that again.

19             **MR. YORK:**  I would also, just -- I know the Court is

20   aware because it's in the order, but the Friday immediately

21   following Thanksgiving is one of the Fridays that we have 33

22   affirmative designations due.

23             **THE COURT:**  What's your point?

24             **MR. YORK:**  No specific point, just -- as Robert's

25   Rules would say:  Point of information.

1            **THE COURT:**  Thank you.  We will look at that, Alan.

2     I was unaware of that.  I'm also unaware of when Thanksgiving

3     is.  So...

4            It was kind of like, Sarah, like Yom Kippur.

5     Same difference.

6            Hey, Carmelite.

7            **MS. BERTAUT:**  Judge, I appreciate the mechanics of

8     it.  I guess I just want a point of clarification as to a

9     higher level analysis of this.

10           With this week, we have, as Alan said, 60

11     depositions that plaintiffs have designated cuts on.  In fact,

12     moving into the next week, they'll be up to 100.  I know that

13     next week you've asked the plaintiffs to identify, I think,

14     which depositions they will affirmatively offer into evidence.

15           I wonder if it does not make some sense for us

16     to at least visit with the Court as to whether the Court

17     anticipates there will be any limits put on deposition

18     designations in terms of deponents offered by a party.

19           Because the week after next -- two weeks from

20     today -- or, actually, maybe as early as Monday,

21     November 8th or 7th, I think the plan is for the first 30

22     depositions to go to the Court.  I would just ask that before

23     any submissions go to the Court that we have clarified, are

24     there going to be any limitations put on this process?  I know

25     Kerry last week raised the issue about experts.

1              I know that in the deposition protocol, for

2    example, we went originally with two-day depositions and then

3    defaulted to one day because of time issues.  So I just raise

4    the point that we need to understand if there are going to be

5    any limitations before any evidence is offered to the Court.

6              Then secondly, suggest that maybe the way to

7    handle it is, as I say, you're at 60 right now, which is what

8    plaintiffs had thought was going to be their outer limits of

9    getting close to where they think they are done, with the

10   understanding there may be some wiggle room at the back end.

11   But maybe the time has come for the Court to require the

12   parties to affirmatively state that they are sponsoring a

13   deposition before the parties have to get into this 30-whatever

14   numbers.

15             THE COURT:  All right.  We'll take a look at

16   certainly the increasing number.  Because we've not given Judge

17   Barbier any, he'll be trying to catch up.  So we'll try to see

18   if we can't adjust the schedule, so he can continue -- oh, look

19   at Mr. Herman here -- so he can continue to process the

20   depositions we're giving him.  But if we're going to give him

21   60, that gives us a little time to maybe adjust things.  So

22   we'll take a look at it.

23             Hello, Mr. Herman.

24             MR. HERMAN:  Good morning, Judge.

25             THE COURT:  How are you?

1              **MR. HERMAN:**  Steve Herman for the plaintiffs.

2                     Can I just adopt and incorporate everything that

3    I said last week to save time?

4              **THE COURT:**  Yes, you may.  I remember what you said,

5    and you're going push it out, you don't care.  Is that right?

6              **MR. HERMAN:**  Well, there's some other -- I guess I

7    can make some other points of disagreement with opposing

8    counsel's characterizations this morning, but I think the

9    record from last week speaks for itself.  We stand by that.

10                    I think that they can bet that the first 30 that

11   go to the Court are going to be on our list of 30.  It's a good

12   faith list.  We talked last week about the changing alignments,

13   and there might be further changing alignments between now and

14   trial.  We'll see.  So we'll get a good faith list by next

15   Friday.

16             **THE COURT:**  I agree.  I think the first 60 is a good

17   bet that those will appear on the PSC/United States priority

18   list.

19             **MR. UNDERHILL:**  Maybe so Carmelite can move off this

20   point for next week, perhaps she wasn't in chambers, but if I

21   heard correctly Judge Barbier when he popped into your chambers

22   once a while ago, he indicated that one suggestion he had was

23   at the end of a phase that parties would be able to submit

24   proposed finding's of fact and cite to a specific deposition.

25                    So instead of, say, a transcript that might

1   designate 400 pages, I might want to cite page 1, lines 3 to 5,

2   and that's it for that depo.  So I think there is a solution,

3   and I think Judge Barbier may be ahead of the counsel on this

4   one.

5                  So as far as limitations on witnesses, if a

6   witness has two lines in a 500-page deposition, well, I think

7   the two lines, if they're relevant, they should come in.  There

8   should not be an up front exclusion of proposed or potential

9   testimony.

10                 So I think there's a solution, and I think Judge

11  Barbier got it.

12          MS. BERTAUT:  Judge, let me be clear:  I wasn't

13  proposing a limitation.  I'm asking the Court for clarification

14  as to whether the Court anticipates one.  I'm not trying to

15  belabor the point, but I don't want to -- with all due respect,

16  I think we ought to know, is this a witness that's coming in as

17  a witness.  I think that before the judge gets records, we need

18  to understand who's proposing it.  That's all I'm asking.

19                 If at that point we know that those depositions

20  are going to be offered, then plaintiffs have no problem

21  admitting and saying, sponsoring that.

22                 Thank you.

23          THE COURT:  Thank you.

24                 Mr. Herman, you just wrote me an e-mail.  What

25  did it say?

1        **MR. HERMAN:**  I was probably cc'ing you on an e-mail
2   thanking Brian for a suggestion that he made about an exhibit.
3   That's probably what it is.
4        **THE COURT:**  Okay, yes.  Okay.
5        The missing page, page 14 out of 84, huh?
6        **MR. KAVANAUGH:**  Your Honor, Brian Kavanaugh.
7        We have that page.  We're happy to substitute
8   it.  The issue I was just -- and to get it in today, that's not
9   a problem for us.  The issue I was more concerned about was
10  just I know Jordan, in preparing the bundle for the witnesses,
11  is going to include the complete exhibit as was marked at the
12  deposition.  It was more about substituting that.  I guess it's
13  similar to the issue we've been dealing with on the trial
14  exhibit side for deposition exhibits that have been missing
15  pages.
16       So we can get our highlighted -- that
17  highlighted page in.  It's just it's not technically part of
18  the deposition exhibit, and we want to make sure we jump
19  through all the right hoops on substituting it.
20       **THE COURT:**  I don't think anybody's going to object
21  to that.  Why don't we think about that; and if there's no
22  objection, let's go ahead and put the page in and complete the
23  exhibit with that page, and then we don't have to wait for
24  going back to the other court reporting firm and having them
25  respond.  It just seems like a more direct route to the end.

 1                    Okay.  We're working on weeks four, five and six
 2      for expert depositions.  We have feedback from BP, Halliburton,
 3      and Cameron --
 4                MR. O'KEEFE:  We have feedback from everyone but
 5      Weatherford now.
 6                THE COURT:  Everybody but Weatherford now, Mike says.
 7      So we will try to get those done.  Those are going to be some
 8      really bad weeks from what we can see.
 9                    It looks like some days are six at a time, Mike.
10                MR. O'KEEFE:  Maybe worse.
11                THE COURT:  Oh, even better.  Maybe worse, according
12      to Mr. O'Keefe.  I don't know what to say about that other than
13      I'm glad it's not me.
14                    Okay.  We have the Anadarko agreement out there.
15      We will get a ruling out on the in camera inspection.  That's
16      just an update.
17                    Motions in limine --
18                MR. HAMMETT:  Your Honor.
19                THE COURT:  Oh, I'm sorry.
20                MR. HAMMETT:  Wade Hammett for Transocean.
21                    Transocean would like to submit a letter next
22      week to see the un-redacted settlement agreement.  I'm sorry.
23      The microphone was not on.
24                THE COURT:  That's no problem.  I think everybody
25      wants that.  So I'm not sure that you need to submit a letter.

1  I think everybody except BP wants to see the un-redacted.  So

2  it's before me.

3              **MR. HAMMETT:**  We just wanted to say that on the

4  record, Your Honor.

5              **THE COURT:**  There you go.  So I'll take a look at

6  that this week.

7              **MR. LANGAN:**  Your Honor, one other thing.  In your

8  order it says that Mr. Roy requested that BP and Anadarko

9  produce any commercial agreements that were contemporaneously

10  entered into at the time of the settlement.

11              **THE COURT:**  Right.

12              **MR. LANGAN:**  Besides the transfer of the MC 252 lease

13  interests, there are no other commercial agreements.

14              **MR. HERMAN:**  Thanks, Andy.

15              **THE COURT:**  Good.  Perfect.  Thank you.

16              Alan.

17              **MR. YORK:**  Judge, before we get too far afield from

18  the deposition designations, I did want to get clarification on

19  one point that my team had brought up.  We're getting now to

20  groups that have some of the Fifth Amendment depositions.

21              Obviously, those are a little bit of a different

22  animal.  So in terms of dealing with objections, I think there

23  will be, I think, a larger number of objections actually to

24  things, such as, foundation.  Because when people know what the

25  answer's going to be, they ask all kinds of questions that --

1   trying to get an adverse inference that the witness may have no
2   foundation for answering.
3                    So I just wanted to find out from the Court if
4   it has any desire as to how that be handled, or if we just go
5   forward and put in all of the objections on those Fifth
6   Amendment depositions?
7            **THE COURT:**  Well, I hadn't thought about it.  This is
8   the first I've thought about it.  But, I guess, Alan, a couple
9   of things.  First of all, it seems to me you-all can stipulate
10  that the witness invoked the Fifth in answer to every question,
11  and you can cut out the answer.  Can we do that?  It seems to
12  me that would be easy.  So Judge Barbier doesn't have to read
13  1,500 invocations of the Fifth.
14           **MR. YORK:**  It may be a little late for that because
15  some of those designations have already gone in.
16           **THE COURT:**  All right.  Fair enough.  Future, you
17  might think about it.  I don't want to redo anything.  But in
18  the future, you-all might want to think about just a
19  stipulation that the witness invoked the Fifth in answer to
20  every question, and you can cut all that paper out.
21                   Relative to objections to the questions that is
22  more than just to form.  It seems to me that if a party wants
23  to designate the objection, go ahead and designate it.  Was
24  there a lot of colloquy following that in most instances?
25           **MR. YORK:**  No.  I think it's more along the lines of

1   a question or asking a witness a question for which there is no

2   demonstrable basis that the witness would have any experience

3   or expertise that would allow them to answer that question,

4   asking questions about ultimate issues.

5            THE COURT:  Well, why not; right?

6            MR. YORK:  You know you're going to get the same

7   answer, so...

8            THE COURT:  Exactly.  I guess -- I mean, my gut

9   reaction is I guess we need to put those in.

10           Do you-all want to think about that?

11           MR. UNDERHILL:  May I make a suggestion, Your Honor?

12           THE COURT:  Sure.

13           MR. UNDERHILL:  To make amends to my friend Carmelite

14  when I was a little bit snippy with her there, I think from a

15  practical matter, I suspect the Fifth Amendment depositions are

16  ones that are not going to be high on Judge Barbier's list to

17  read.

18           THE COURT:  I agree.

19           MR. UNDERHILL:  I mean, there are no substantive

20  answers.  It's the questions that count.

21           So if we -- and I'm just thinking because I do

22  some of my own designations.  To do the tables, it's going to

23  be a laborious process to cut out all those objections.  I'd

24  suggest we do it like we did the first ones with the

25  understanding that Judge Barbier is probably not going to be

1   reading those at 11:00 at night before he reads a real

2   deposition.  That might solve all of our problems, including

3   Carmelite's, at least partially.  It's a suggestion.

4           **THE COURT:**  Yes, I like it.

5           **MR. WILLIAMSON:**  Also, Judge, the two-page advocacy

6   summaries will address -- I mean, that addresses the issue, I

7   mean, in a way.  I'm not suggesting anyone -- I'm not taking a

8   position on how you handle objections.

9           But if you take a Fifth Amendment deposition --

10  by the way, in some of those Fifth Amendment depositions, so

11  the Court will know, they did answer some questions and they

12  didn't answer others.  Some Fifth Amendment depositions, they

13  refused to answer anything but their name; but some Fifth

14  Amendment depositions, they would answer certain questions and

15  not others.

16          But the two-page advocacy summaries are going to

17  give the parties the opportunity to tell Judge Barbier what

18  they think is relevant out of that particular deposition in

19  terms of the issues.

20          **THE COURT:**  Jimmy, how many of these are on your

21  priority list?  Are most of them on your priority list?

22          **MR. WILLIAMSON:**  I don't think any of those are in

23  the first 30.  Let me make -- back up.  Yes.  I need to tell

24  the Court:  Critical members of the operations team for BP,

25  Mr. Morel, Mr. Hafle, Mr. Vidrine -- well, Vidrine, I think

1  actually, and Mr. Kaluza, all invoked their privilege at
2  various points.
3              So certainly those are witnesses who are in the
4  top priority group that's being presented to the Court.  But
5  other witnesses --
6          **THE COURT:**  But they didn't invoke it in full, they
7  gave some testimony?  I thought Kaluza invoked it in full.
8          **MR. UNDERHILL:**  Morel invoked it in full.
9          **THE COURT:**  Morel.
10         **MR. WILLIAMSON:**  I think Morel invoked it in full;
11 Hafle, I don't remember; Vidrine, of course, utilized -- I
12 think he invoked it, but then I also think Vidrine then used
13 his personal health --
14         **MR. HAYCRAFT:**  Well, Vidrine hasn't testified.
15         **THE COURT:**  Yes.  We're waiting for written answers
16 to questions.
17         **MR. WILLIAMSON:**  And he -- and on the basis of his
18 health issue, he has not formally taken a position yet.
19         **THE COURT:**  Well, is another way to skin the cat to
20 just put the Fifth Amendment witnesses at the tail end of the
21 designations?
22         **MR. WILLIAMSON:**  With -- I don't want to commit to
23 that today, because those four people I just mentioned --
24         **THE COURT:**  With the exception of those four.
25         **MR. WILLIAMSON:**  That's probably a -- I'm more than

1  happy to present that suggestion, because that's probably
2  workable with the exception probably of those four.
3          **THE COURT:**  Well, it seems to me that would make
4  sense.  That, one, we can think about how we want to handle
5  objections and the continuing invocation of the Fifth.
6          Mr. Herman?
7          **MR. HERMAN:**  Steve Herman for the plaintiffs.
8          There's an issue that dovetails with this, and I
9  think that's going to be the subject of one of the defendants'
10 first motions in limine, which is there are several of the key
11 folks, I think Gagliano -- and who else, Mike?  There's two BP
12 guys.  I think, maybe Hafle, maybe another one, and Jimmy
13 Harrell, who, although they took the Fifth in depositions, had
14 previously testified before the NBI.
15         Their NBI testimony is significant.  It was
16 because we wanted to tee the issue up, and because we thought
17 the defendants probably would want to get clarification, we
18 both listed those transcripts, the NBI transcripts.  I think
19 both in the list of the 300 so-called.  I think at least one
20 from BP, who I think was Hafle; one from Transocean, who I
21 think was Harrell; and one from Halliburton, which I think was
22 Gagliano.
23         Then also, I think either two or three of those
24 are probably in the first 30.  With respect to both, at least
25 ideally, their NBI testimony, to the extent it's admissible, as

1    well as them taking the Fifth in their depositions.

2                    So I think that our position is probably going

3    to be:  To the extent that their NBI testimony is admissible,

4    which we think it is, then we think that it's reasonable for us

5    to present that to the Court at an earlier time, perhaps

6    separate and apart from when and whether their Fifth Amendment

7    deposition testimony goes in.

8                **THE COURT:**  Okay.  So let's see if we can --

9                    Go ahead, Jimmy.

10               **MR. WILLIAMSON:**  I want to make sure my team is

11   correcting me.  In addition to those four, Mr. Gagliano, who is

12   a Halliburton employee, and Mr. Harrell, who is a Transocean

13   employee, probably should be put in that first cut that Steve

14   just referred to.

15               **THE COURT:**  Okay.

16               **MR. WILLIAMSON:**  Obviously, every witness is equally

17   important, and the trier of fact will give the appropriate

18   weight.  But after you get past those six, I suspect that some

19   of the other witnesses, perhaps, are not at the center of the

20   controversy as much.  The trier of fact may find that.  So

21   pushing those down a little bit might make sense for various

22   points.

23               **THE COURT:**  So other than those six who are on your

24   priority list, I don't have a list of who the other Fifth

25   Amendment people are.  But why don't we get a list and agree

1    that they'll be at the back end of the designations.  We can

2    talk about how to handle -- that will give us some time on

3    handling objections.  Those cuts on those six people have been

4    done by the PSC, huh?

5           MR. WILLIAMSON:  I'm pretty sure.  I know those four

6    BP people were in the front cut.

7           MR. UNDERHILL:  No, they all have been done.

8           MR. WILLIAMSON:  Right.

9           THE COURT:  Okay.  Well, we're not going to tinker

10   with what's done.  But if you guys will give everyone a list of

11   who the other Fifth Amendment deponents are, let's agree that

12   we'll put them at the end, which will help with the time

13   crunch.  Then we can figure out what to do as far as

14   designation of those people.

15          MR. WILLIAMSON:  I think that works, Your Honor.

16          THE COURT:  Okay.

17          MR. YORK:  This is Alan York for Halliburton.

18               We'll just proceed with doing objections the way

19   that we think we need to to protect...

20          THE COURT:  Exactly.

21          MR. YORK:  Thank you, Judge.

22          THE COURT:  On those six witnesses.  Right.

23               So now we're going to go talk about the

24   preliminary motion in limine schedule, which has been through a

25   few revisions.  The latest revision, let's see, is October the

1   19th from Kerry Miller, and that's the 11:14 p.m. transmission

2   last night while the post-game commentary was going on.

3            MR. LANGAN:  We just wanted to mention that

4   Mr. Miller's proposal is fine with BP.  So any --

5            THE COURT:  Yes.  I thought it looked fine.  We had

6   some comments from, let's see, BP and Anadarko -- I'm sorry,

7   Anadarko's request was for -- well, let's take them up, I

8   guess, in order.

9            Let's talk about Kerry's revisions to the draft

10  schedule.  Does anybody have any problems with it?

11           Then a couple of parties said that they may want

12  to add some items to the in limine listing.  I think, Tony,

13  that you had said that you might want to.

14           MR. FITCH:  Judge, I sent you, Wednesday night, a

15  halfway detailed request in that regard.  It is not strictly --

16  it is not an MIL.  It is a suggestion that a related set of

17  motions with respect to cross-claims raising the same issue as

18  the M -- our MIL should, for reasons of efficiency and

19  clarification, sooner rather than later, be heard by Judge

20  Barbier on the 18th.

21           THE COURT:  Yes.  Now, I ran that past Judge Barbier.

22  He did not object to that.  I want to make sure that nobody has

23  an objection to Tony's request to have Anadarko's motion in

24  limine heard at the same time as the motions to dismiss the

25  cross-claims against it.

1          **MR. FITCH:**  It's the other way around.  If the MIL is

2    already scheduled, then we are requesting that the MTD's on the

3    cross-claims be scheduled on the 18th also.

4          **THE COURT:**  Any opposition to that request?  Because

5    if not, I think it --

6          **MR. FITCH:**  They both have briefing schedules that

7    end beforehand, so it does work.

8          **THE COURT:**  Correct.  Correct.  So unless there is an

9    objection, I think Judge Barbier is inclined to go ahead and

10   set that all together.

11         **MR. FITCH:**  Thank you, and thank you for the update.

12         **THE COURT:**  Okay.

13              Does anybody have anything else that they would

14   like to add to the schedule or they think they might want to

15   add to the schedule?  Because if not, we'll go ahead and adopt

16   it.  All right.

17              Transocean.

18         **MR. HAMMETT:**  Your Honor, Wade Hammett.  Just

19   wondering if on topic 6 if we can get clarification about the

20   prior incidents question, if that is encompassed in the topic 6

21   or requires a separate topic.

22         **THE COURT:**  I have -- let's find out what everybody

23   else thinks about that.  The question being on item No. 6 on

24   the revised schedule:  Is this intended to cover prior

25   incidents as addressed in the letter brief submitted by the

1  PSC?  If it does not, prior incidents should be added as a
2  separate topic.
3          MR. HERMAN:  I'm not sure what the answer is.  I
4  mean, I think it is, but I don't know.
5          THE COURT:  I think it is.
6          MR. NOMELLINI:  Your Honor, Mark Nomellini.  It is.
7  It's wrapped into that.
8          THE COURT:  I thought it was, Mark.  Thank you for
9  that.
10          It was my impression that it is the same issue.
11  So the motion in limine to preclude evidence regarding
12  instances of prior alleged improper conduct also includes prior
13  incidents.
14          MR. HERMAN:  I guess.  I mean, it's their motion.  I
15  guess they'll frame it however they want.
16          THE COURT:  Thank you, Mr. Herman.  That was helpful.
17          All right.  So we're going to go ahead and adopt
18  that as the schedule.  You-all can go ahead.
19          Andy, we do need to make the date adjustment.
20  Let's see.  You had said you needed the date adjustment once
21  the Court enters the order.  This does not -- I guess maybe it
22  does.  The second date that Kerry has inserted would be the
23  date that these are due.  Right?
24          MR. LANGAN:  I think that's right, Your Honor.
25          THE COURT:  That is what he's indicating.  So this

1  will have the new dates on it, and we'll take the old dates

2  out.

3             MR. LANGAN:  Okay.  Thank you.

4             THE COURT:  Good.

5             Mike reminds me that for experts today's the

6  date that we're waiting to hear from you on time requests.  So

7  if you're not working on that, a friendly reminder.

8             Don't forget with the motions in limine

9  briefing, ten-page limitation, ten pages reply; five page --

10  I'm sorry -- ten-page opposition, five-page replies.  To the

11  extent that you can, do joint briefs or split up the pages

12  amongst parties.

13             We've already talked about how to handle

14  confidential information and exhibits that you want the judge

15  to look at can go in on CD.  If you want to submit it that way,

16  that will be fine.

17             Does anybody want to give us an update from the

18  PSC on the discussion we had last week on striking in-house

19  experts?  I went back and looked at the in-house experts and it

20  is my thought that the six people involved are people who have

21  previously been deposed.  Is that right, Transocean and BP?

22             I know for BP it is.

23             MR. LANGAN:  That is the case for ours, yes.

24             THE COURT:  Okay.  All right.

25             Jimmy?

1       **MR. WILLIAMSON:**  There's three Cameron people.  Steve

2   can address the others.

3       **THE COURT:**  Oh, Cameron.  Those three have been

4   deposed as well?  No, two of the three.

5       **MR. WILLIAMSON:**  Correct.

6       **THE COURT:**  Two of the three have been deposed.

7   Okay.

8       But nothing further we need updates on, huh?

9       **MR. HERMAN:**  I don't think so.  I think we're going

10  to wait.

11      **THE COURT:**  Lie in wait?

12      **MR. HERMAN:**  Well, you could put it that way.  But I

13  think what we're really doing is we're waiting until the

14  November 7th deadline so that everybody knows all of the

15  reports have been filed.  Then whenever the next discovery

16  conference is, I think we'll have a definitive answer for you.

17      **THE COURT:**  Okay.  Good.

18      Alan.

19      **MR. YORK:**  Alan York for Halliburton.  I just wanted

20  to clarify, Your Honor.  We do have a couple of in-house

21  experts included in ours.  But because of this potential issue,

22  our in-house experts went ahead and did reports so that we

23  could avoid the issue.  So I just want to make sure that

24  everyone understands we do have a couple of in-house experts in

25  there, but they went ahead and did reports.

 1            THE COURT:  Okay.  Belts and suspenders, huh,
 2   Mr. Godwin?
 3            MR. GODWIN:  You know I'm making the calls, Judge.
 4            MR. HERMAN:  Steve Herman for the plaintiffs.
 5            Should I infer from your -- from the Court's
 6   comments that it might be a reasonable interpretation that the
 7   four corners rule would apply to the deposition in that case
 8   and, therefore, the in-house expert would not able to proffer
 9   any opinions that are not either within the four corners of the
10   deposition and/or the four corners of disclosure?
11            THE COURT:  You can infer that without any briefing
12   on the issue.  That is my reaction, yes.
13            MR. HERMAN:  Thanks.
14            MR. O'KEEFE:  What if he's designated as a rebuttal
15   expert?
16            THE COURT:  Oh, rebuttal expert.  Mike wants to know
17   what if he's designated as a rebuttal expert.
18            MR. HERMAN:  Well, that's why I think we were going
19   to wait until we saw it, everything that came in on
20   November 7th.
21            THE COURT:  Right.  I think that's a good idea.
22            But without any briefing on it, without having
23   read any of the depositions or any of the disclosures, I'm
24   operating in a vacuum.  But that's my initial reaction.
25            MR. HERMAN:  Thank you.

1          **THE COURT:**  Okay.  Anything that we need to discuss

2     with regard to the meet and confer process on authenticity?

3          **MR. YORK:**  Your Honor, just --

4          **THE COURT:**  Hello, Alan.

5          **MR. YORK:**  Just one point of clarification.  On the

6     19th, in response to, I think, one of Transocean's requests,

7     you had altered the date in the schedule for the presentation

8     of previously unproduced consideration materials.  In that

9     order there's a -- you changed the date to November 11th and

10    dropped a footnote that said:  "The deadline for parties to

11    exchange final good faith exhibit lists, including all reliance

12    exhibits," which actually, according to the prior order, the

13    deadline for the good faith exhibit list was November 14th.

14          I'm not trying to be hyper-technical, but we're

15    all sort of working off the November 14th date for the good

16    faith exhibit --

17          **THE COURT:**  Work off November 14th.

18          **MR. YORK:**  Thank you.

19          **THE COURT:**  November 11th, I now understand is a

20    holiday.  Didn't know that last week, but now I do.

21          All right.  We're working on a discovery

22    schedule for the cleanup responder defendants that I'm pretty

23    sure will be implemented this coming week.

24          Is there anything I need to know about the

25    discussions on the BP/Halliburton meet and confer?

 1          **MR. LANGAN:**  Your Honor --

 2          **MR. LYLE:**  Your Honor, this is Mike Lyle for the

 3   cleanup responders.  If we could just touch base on that for a

 4   second.

 5          **THE COURT:**  Okay.  Mike, go ahead.

 6          **MR. LYLE:**  Thank you, Your Honor.

 7               That is progressing.  One -- we have two issues.

 8   One, we were wondering if we could have an additional week for

 9   the -- to get the stipulations circulated.  It's just taking a

10   little bit longer than we had anticipated.

11          **THE COURT:**  No problem.

12          **MR. LYLE:**  Secondly, does Your Honor want us to

13   circulate to you the revised schedule that incorporates the

14   language that we all agreed upon during the week?

15          **THE COURT:**  That would be really good.  I think we

16   want to go ahead and include page 2 again of the draft schedule

17   for discussion once again.  So that would be helpful, Mike, if

18   you would do that.

19          **MR. LYLE:**  We've had the pen on page 1.  I'm not sure

20   who has it on page 2.

21          **THE COURT:**  Okay.  That would be Jim Click has that

22   for us.  So if you want to get in touch with Jim, he'll pop

23   that out to you and you can circulate that.  When you make the

24   revision, make the revision with the extra week for

25   stipulations.

1    **MR. LYLE:**  Will do.  Thank you, Your Honor.

2    **THE COURT:**  No problem.  You said you had two things.

3    **MR. LYLE:**  Those were the two, the extension and then
4    what you wanted with respect to the -- circulating the order.

5    **THE COURT:**  That will fine.  Thank you.  I appreciate
6    you taking care of that.

7    **MR. LYLE:**  Thank you.

8    **MR. LANGAN:**  Your Honor, Andy Langan.

9        We're back to the Halliburton discussions.
10   Nothing ripe for the Court yet.  We did, after a fair amount of
11   work, have now sent to Halliburton a couple of letters sort of
12   outlining what we think the remaining issues are to sort of
13   further the meet and confer process.  I'm sure we'll be talking
14   to Don and his team about that and, hopefully, can resolve it;
15   and, if not, we'll be in touch.

16   **THE COURT:**  Good.  Do you want me to take it off
17   until you-all tell me to put it back on?

18   **MR. LANGAN:**  That's fine.

19   **MR. GODWIN:**  That's fine with me, Judge.

20   **MR. LANGAN:**  We're capable of re-raising it.

21   **THE COURT:**  Yes.  Well, that was kind of my point,
22   Andy.

23   **MR. LANGAN:**  Thank you, Your Honor.

24   **MR. GODWIN:**  Thanks, Judge.

25   **THE COURT:**  Have we completed all Phase One discovery

 1   issues?  Please tell me yes.
 2          **MR. LANGAN:**  We're also in discussions with
 3   Transocean on some privilege issues.
 4          **THE COURT:**  Other than the meet and confer process.
 5   But we don't have anything out there that Mike and I have
 6   missed?  Scheduling, rulings that need to come out?  We've not
 7   missed anything?
 8          Good.
 9          Have you-all moved the ball forward at all on
10   conferring on bringing corporate witnesses voluntarily to trial
11   so that we can bring that issue to a head?
12          **MR. LANGAN:**  Your Honor, Andy Langan for BP.
13          After last week, we thought our short-term
14   project was to look at the list of people of ours that other
15   people have requested and come today prepared to talk about
16   which of those are officers that we understand we would need to
17   bring.
18          **THE COURT:**  That you agree need no come.
19          **MR. LANGAN:**  Under the law.
20          **THE COURT:**  Right.
21          **MR. LANGAN:**  We've done that, and we're prepared to
22   talk about that.  I don't know if others are.
23          **THE COURT:**  It's up to you guys, if you-all would
24   rather have Andy send you the list.  I would ask the other
25   corporate defendants either report to us today or send out a

 1   list of those people that you agree you, under Rule 45, are
 2   required to bring live at trial.
 3               Then I'd like the other defendants and the PSC
 4   and the United States and the states to say, "Oh, no, what
 5   about these fellows?"  So that we know what the universe is and
 6   we can work our way through it.
 7               Andy, do you want to go ahead and give your
 8   list?
 9         MR. LANGAN:  I'm at Your Honor's pleasure.  All I
10   would ask for is:  Is everyone going to do the same today?
11         THE COURT:  Yes.  Is everybody prepared to do the
12   same today?
13               No, they're not prepared today.
14         MR. LANGAN:  Thus my caution.
15         THE COURT:  Thus you are correct, Andy.
16               When would you-all like to disclose yourselves?
17         MS. BERTAUT:  Next week.
18         THE COURT:  We're going to have to bring this up
19   pretrial.  Because that sounds to me like it may be a real
20   serious issue that the Court will have to tackle.
21         MR. WITTMANN:  Why don't we do it next week, Judge?
22         THE COURT:  You-all want to do close of business on
23   Wednesday?
24               Andy, that's okay by you?
25         MR. LANGAN:  Absolutely.  We're ready today, but

1  it --

2          **THE COURT:**  I understand.  But is that good enough

3  for you for the other guys?

4          **MR. LANGAN:**  Oh, sure.  Of course.  Absolutely.

5          **THE COURT:**  Let's have all the defendants tell us who

6  they agree will be brought live at trial either because they're

7  good people or because Rule 45 requires it.

8          **MR. HAYCRAFT:**  They're lawful people.

9          **THE COURT:**  Right.

10         **MR. LANGAN:**  I just want some clarification.  I

11  actually thought the short-term project was, "Who do we agree,

12  no doubt, Rule 45 requires," and we were going to start there.

13         **THE COURT:**  Correct.

14         **MR. LANGAN:**  We're ready to do that today.  If you're

15  also asking, "Who out of the goodness of our hearts," we might

16  be -- that's an entirely, I think, a longer term and different

17  discussion.

18         **THE COURT:**  You've not made that decision yet?

19         **MR. LANGAN:**  No.

20         **THE COURT:**  Well, then let's go with the short list

21  first.

22         **MR. LANGAN:**  Thank you.

23         **THE COURT:**  You're welcome.

24         **MR. UNDERHILL:**  Let the record reflect we're trusting

25  Andy's good heart on this.

1      THE COURT:  Jim.

2      MR. WILLIAMSON:  Judge, I need to revisit something.

3  I noticed when the Court asked a while ago about Phase One

4  discovery issues, I notice Mr. Chemali and Mr. Garrison are set

5  this week.  And I notice BP and Transocean both submitted

6  letters to you, I believe, yesterday -- I saw them either early

7  this morning or last evening -- asking for additional time.

8           We'll submit a letter if the Court prefers that

9  protocol, but I just wanted to stand to say we don't mind the

10  Court making some minor reduction in PSC time, but we have an

11  interest in those two depositions also.  So we want to make

12  sure we know that -- as the Court weighs their request, we want

13  to make sure that the Court weighs our request that we want a

14  significant amount of time with those witnesses.

15      THE COURT:  So we'll take it from the United States,

16  huh?

17      MR. WILLIAMSON:  Whatever is appropriate.  The United

18  States, in my experience, has always asked highly relevant

19  questions.

20      THE COURT:  Okay.  Thank you, Jimmy.  That was, you

21  know -- just kidding.  But thank you, Jimmy.  We don't need a

22  letter on that.  So noted.

23      MR. WILLIAMSON:  Thank you.

24      THE COURT:  Okay.  We got a statement from counsel in

25  Texas that the Transocean motion to dismiss the maintenance and

1  cure claims has been mooted out.  I just wanted to make sure

2  that Transocean agrees that it's moot.

3          **MR. HAMMETT:**  Yes, ma'am.

4          **THE COURT:**  Okay.  Thank you.

5              Is there any progress to report or you want me

6  just to carry over the discussion on stipulations for Phase

7  One?

8          **MR. LANGAN:**  Your Honor, Andy Langan for BP.

9  Internally, at least, we've moved that ball forward.  I think

10  very shortly we'll be able to send out to the parties a

11  spreadsheet that has things like, "As far as BP is concerned,

12  we agree with these, don't agree with these, need to talk about

13  these."  So I'm sure, if not today, then very early next week,

14  we'll push that ball down the court.

15              In the meantime, Cameron has sent us some

16  additional ones.

17          **THE COURT:**  Good.  If BP wants to suggest them and

18  wants to add to the list, feel free.

19          **MR. LANGAN:**  Yes.  Right.

20          **MR. YORK:**  It's on our radar as well, Andy.  We're

21  going to have something to you.  Next week is our goal to have

22  something to you.

23          **THE COURT:**  That's progress.  That's good, guys.

24          **MR. FITCH:**  Anadarko would request until -- we still

25  have a few in mind outstanding.  Recent developments.  We will

1  get them in next week.

2          **THE COURT:**  Good.  Thank you, Tony.

3                Okay.  Andy, you had asked last week about

4  marking as exhibits discovery requests and responses.

5          **MR. LANGAN:**  Your order resolves that.

6          **THE COURT:**  I wanted to make sure that we covered it

7  today.  You-all should not designate as exhibits full responses

8  to a full set of interrogatories or request for production.

9  But if you've got a request for admission and a response that

10  you think is something that you need to point out to Judge

11  Barbier, it may be admitted -- marked as an exhibit and

12  admitted.

13          **MR. LANGAN:**  Thank you.

14          **THE COURT:**  No problem.

15                We got a letter this week from Courtroom

16  Connect.  You-all recall that part of our trial planning

17  process is to include Courtroom Connect as the vendor for the

18  court.

19                The letter is dated October 22nd, if anybody

20  would like a copy of it, you're welcome to it.  It turns out

21  that the CEO of Courtroom Connect is a gentleman by the name of

22  David Feinberg, the brother of Kenneth Feinberg.  We are being

23  surrounded by Feinbergs.

24                They disclosed this to us.  They say that

25  Kenneth Feinberg is an investor in Courtroom Connect, but is

1    not involved in any way of the operations of the company; and

2    vice versa, Courtroom Connect has no relationship with the GCCF

3    or this litigation.  But for purposes of full disclosure, you

4    now know.  If anybody has a problem, why don't you let us know

5    within seven days.  Okay.

6              MR. WILLIAMSON:  Let's start all over.

7              THE COURT:  Let's just start over again.  What can I

8    say?  There are Feinbergs everywhere.

9                   Allocation of time for opening statements.  Andy

10   asked me to reconsider opening statement allotments.  I've got

11   copies up here.  I've bumped him back up to 90 minutes.  I

12   don't think anybody else was affected.  It is still a draft,

13   because I don't make the decision regarding this.  Judge

14   Barbier is inclined to give you each three minutes.

15                  Charles, why don't you put that out there for

16   anybody who wants the draft may have it.  I think that covers

17   my agenda for the day.  Look at that, I think we're doing a

18   world record.

19                  Does anybody have anything else that you'd like

20   to raise?

21             MR. UNDERHILL:  Do we have a conference on the

22   11th or are we off?

23             THE COURT:  That's a question.  That is a holiday.

24   Would you-all want to skip that week entirely, or would you

25   want a telephone conference on the 10th or the 11th?  What's

1  the consensus?

2          **MR. LANGAN:**  Andy Langan for BP.

3               If we're going to do anything, I would suggest

4  it be a telephone call on the 11th.

5          **THE COURT:**  Okay.

6          **MR. LANGAN:**  The 10th is an issue for me.

7          **THE COURT:**  See, Underhill doesn't like that.

8          **MR. LANGAN:**  Well, do we even need it?

9          **THE COURT:**  That's my question.  I'm perfectly

10  willing not to have a conference.

11          **MR. LANGAN:**  I'm not sure we do.

12          **THE COURT:**  It's my impression that you-all would

13  really like not to have a conference.  But if the consensus is

14  you want it, we'll do it.

15          **MR. LANGAN:**  My motion would be keep the schedule

16  you've already outlined, which is no conference.  Full stop.

17          **THE COURT:**  Fine.  That works.

18               Don, you don't want to come in?

19          **MR. GODWIN:**  Well, I do, Judge, but...

20          **THE COURT:**  Thank you, Don.

21          **MR. GODWIN:**  You're welcome.

22          **THE COURT:**  What you got, Anthony?

23          **MR. IRPINO:**  Anthony Irpino for the PSC.

24               Two things, Your Honor, and I'll make them

25  brief.  One, I just got wind, I think yesterday, of some B3

1   search terms that got sent around.  I hadn't seen them or
2   hadn't been involved in any of the process of drafting them,
3   and I don't think anybody from the PSC had been.
4              To the extent that is occurring, I'd just ask
5   somebody to, please, include, in addition to Jim and Steve, me.
6              **THE COURT:**  Remind me --
7              **MR. NOMELLINI:**  Anthony, it's Mark Nomellini.
8              I can help you out there.  Those are just search
9   terms that BP and the PSC and others have already agreed to for
10  Phase One and Phase Two.  We were just highlighting for the
11  gentleman in Texas what those were.
12             **MR. IRPINO:**  Oh, okay.
13             **THE COURT:**  That's all agreed to.  What we're trying
14  to do is include in the discovery the *Hebert* case pending in
15  Texas state court involving dispersants; and the search terms
16  that we're discussing are the search terms that have already
17  been agreed to in the MDL, but he has not signed off on.
18             So it's not new search terms for you guys.
19             **MR. IRPINO:**  That's what threw us.
20             **MR. HERMAN:**  We got the communication.  We just
21  didn't know where it came from.  We appreciate it.  What Mark
22  said makes complete sense.
23             **THE COURT:**  Yes.  Thank you, Mark.
24             **MR. HERMAN:**  I think that we've extended an offer to
25  Mr. Lanier's firm to provide them with relevant documents from

1    the litigation to the extent we have them, and to cooperate

2    with him and let him -- if there's going to be depositions, we

3    certainly think that we should take the lead on those to the

4    extent they're MDL depositions.

5              But if there's some, as we did before with some

6    of the earlier depositions, if there's some issue that they

7    think is unique to their case, then they'd be free to attend

8    the deposition and maybe ask some questions at the end.

9              THE COURT:  Yes.  It looks like that's going to work

10   out.  So that's the good news.  We're not sure of it yet, but

11   that's part of the discussion that we're having relative to the

12   discovery schedule, limited discovery.  So, hopefully, that

13   clarifies it, Anthony.

14             MR. IRPINO:  Great.  Wonderful.

15             The second thing is we're going to be forwarding

16   around -- and I'm just putting everybody on notice -- a second

17   confidentiality order for deposition testimony -- designations

18   of deposition testimony and having filings relative to that.

19             I don't think it will be anywhere near as

20   convoluted as the deposition exhibit or document

21   de-confidentiality order.  Because everybody -- the way that

22   the protocol -- PTO 13 works right now, everybody has the

23   opportunity from day one to designate as confidential.

24             So we don't have to file it, then see if other

25   people agree or whatever.  But I do think it would be helpful

1  in the same vein to have things out there so everybody knows

2  what's designated, what's not, what's been challenged, what's

3  been un-designated, and just have it in a comprehensive

4  document.

5            So that will be the next step.  I think it will

6  be much shorter and much quicker.  We'll be sending that around

7  to the parties.

8            THE COURT:  Good.  Thank you.

9            Anybody else?

10           MR. GOFORTH:  Andy Goforth, Your Honor.  I was

11  distracted during the discussion of the November 11th meeting.

12           THE COURT:  We're not having a conference on November

13  the 11th.

14           MR. GOFORTH:  Thank you.

15           THE COURT:  We're taking a day off.  Even Mr. Godwin

16  wants that.

17           What else?  Anything else, guys?

18           Okay, guys.  That should send you into the next

19  weekend.  Thanks very much and we'll see you soon.

20           (WHEREUPON, the proceedings were concluded.)

21

22

23

24

25

1                                *****

2                          **<u>CERTIFICATE</u>**

3              I, Jodi Simcox, RMR, FCRR, Official Court Reporter

4     for the United States District Court, Eastern District of

5     Louisiana, do hereby certify that the foregoing is a true and

6     correct transcript, to the best of my ability and

7     understanding, from the record of the proceedings in the

8     above-entitled and numbered matter.

9

10

11                              S/ Jodi Simcox, RMR, FCRR
                                Jodi Simcox, RMR, FCRR
12                              Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25