**KIRKLAND & ELLIS LLP**
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

March 8, 2012

**By Electronic Mail**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court
Room B345
500 Poydras St.
New Orleans, Louisiana 70130

   Re: MDL No. 2179 — Subpoena Served on Woods Hole Oceanographic Institution

Dear Judge Shushan:

  This letter explains the status of, and seeks the Court's assistance regarding, the subpoena served on Woods Hole Oceanographic Institution ("Woods Hole" or "WHOI") on December 9, 2011 (Attachment A), together with Woods Hole's December 23, 2011, objections to this subpoena (Attachment B).

**Background**

  As the Court knows, Woods Hole scientists performed acoustic and other analysis aimed at informing the United States' flow rate estimates. The work of Woods Hole scientists is cited in multiple sources, including the Flow Rate Technical Group ("FRTG") Report (Attachment C) as well as a preliminary public flow rate report and two published scientific articles (Attachment D). Woods Hole has also published on its website a synthesis of some of its research on the *Deepwater Horizon* incident, which is entitled "Science in a Time of Crisis: WHOI's Response to the *Deepwater Horizon* Oil Spill." This website publication features video interviews with several WHOI scientists and personnel.

  Dr. Marcia McNutt, director of the U.S. Geological Survey and lead author of the FRTG Report, has stated that "the technique that performed the best during the ongoing emergency was the acoustic technique." *See* Attachment C, at 2. Dr. McNutt has emphasized the importance she places on the acoustic work in a video presentation given at the Association for the Aquatic Sciences of Limnology and Oceanography's 2011 Aquatic Sciences Meeting. In the course of this presentation, Dr. McNutt asks the audience to focus on a slide showing the Wood Hole flow

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 8, 2012
Page 2


rate estimate, saying "look at how they nailed the flow rate with that acoustic analysis. Beautifully done." *See* http://www.aslo.org/sanjuan2011/plenary5.html (timestamp 41:50).

In light of the significance apparently placed on WHOI's work by the United States, the subpoena served on WHOI requests data and communications reflecting all WHOI work pertaining to the *Deepwater Horizon* incident. Since the date when the subpoena was served (December 9, 2011) and the date when WHOI's objections were served (December 23, 2011), counsel for BP have communicated frequently with counsel for WHOI in an effort to advance the production of subpoenaed documents and resolve disputed issues.

The record of those communications (attached as Attachment E) indicates the following:

- On December 20, 2011, counsel for BP offered counsel for WHOI a ten-day extension to produce documents responsive to the subpoena.

- On December 23, 2011, counsel for WHOI advised that the ten-day extension was not sufficient and objected to the subpoena on four general bases:

    (1)  the subpoena is overbroad and burdensome;

    (2)  the subpoena seeks documents that are subject to confidentiality requirements with the United States and other parties;

    (3)  some information related to WHOI's algorithms, code, and related methodologies is proprietary; and

    (4)  WHOI, as a nonprofit, scholastic organization need not disclose prepublication research pursuant to protection or privileges afforded to academics engaged in pre-publication research.

- In early January 2012, counsel for WHOI, Ms. Dahlia Fetouh, agreed to produce responsive documents not deemed to be subject to any objection, and agreed to contact WHOI to determine a date for production of documents.

- In January 2012, counsel for BP sent to counsel for WHOI Pretrial Order #13 to assist counsel for WHOI in understanding the protocol established by the MDL Court for the protection of confidential documents — including confidential documents of a nonparty.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 8, 2012
Page 3

- In late January 2012, counsel for WHOI advised counsel for BP that WHOI would be able to produce raw acoustic data "and the like," and that WHOI was in the process of collecting that data. Counsel for WHOI advised that WHOI objected to production of documents reflecting a deliberative or scholastic process associated with its work and that it also objected to the production of proprietary information (described as the intellectual property of researchers).

- In late January 2012, counsel for WHOI advised counsel for BP that some responsive documents would be sent for privilege review to the Coast Guard that same week and agreed to ask the Coast Guard when those documents would be ready to produce.

- On February 2, 2012, counsel for WHOI advised that documents had been sent to the Coast Guard and that the Coast Guard tentatively estimated one week for document review.

- On February 14, 2012, counsel for WHOI advised that documents had been delayed passing through the Coast Guard's security procedures and that no date certain was set for review and production as the Coast Guard was quite busy.

- On February 14, 2012, counsel for WHOI reiterated that WHOI would not produce certain unspecified documents based on "scholastic privileges," "confidentiality," or "other legal privileges" and did not agree to estimate the number of documents withheld pursuant to these privileges.

- On February 23, 2012, counsel for BP asked counsel for WHOI for a production calendar, including dates certain for an initial and any subsequent document production as well as a date estimate for a privilege log. Counsel for BP also asked for the basis for WHOI's assertion of a "scholastic privilege."

- On February 23, 2012, counsel for WHOI advised that its initial document production could be expected within 7-10 days and would contain documents pertaining to Part II of the subpoena (concerning gas/oil ratio issues) — and not the acoustic data requested in Part I of the subpoena, which was to be the focus of the initial collection as represented by counsel for WHOI in January.

- On February 28, 2012, counsel for WHOI provided to counsel for BP authority which it relied upon for its asserted "scholastic privilege."

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 8, 2012
Page 4

- On March 2, 2012, BP responded regarding WHOI's claimed authority for "scholastic privilege."

- On March 6, 2012 — three months after service of the subpoena — counsel for BP received the first production of any documents, consisting of one small binder of documents — mostly public documents — and no acoustic data or analysis.

In sum, notwithstanding three months of diligent efforts, BP has yet to receive any acoustic data and has received almost none of the data, analyses, and communications the subpoena requests.

**Jurisdiction to Enforce the Subpoena**

The multidistrict litigation ("MDL") statute provides that MDL courts have authority to enforce subpoenas issued by other district courts. That statute reads: "The judge to whom such [MDL] actions are assigned . . . may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(b) (2006).

Although § 1407 expressly refers only to pretrial depositions, the "overwhelming weight of authority" supports the proposition that MDL courts are also empowered to quash, modify, or enforce extra-district subpoenas duces tecum. *See In re Clients and Former Clients of Baron & Budd*, *P.C.*, 478 F.3d 670, 671 (5th Cir. 2007); *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 444 F.3d 462, 468-69 (6th Cir. 2006). "[T]he rationale underlying the MDL statute of 'just and efficient' resolution of pretrial proceedings requires the conclusion that Section 1407(b)'s grant of authority applies to both deposition subpoenas and documents-only subpoenas." 444 F.3d at 469 n.4.

**WHOI's Privilege Claims**

In her letter of February 28, Counsel for WHOI describes the "scholastic privilege" as a "well-established protection" in federal court, but the only case cited for this broad proposition is *Cusumano v. Microsoft Corp.*, 162 F.3d 708 (1st Cir. 1998). In fact, neither the First Circuit nor any other federal circuit court has acknowledged the existence of a "scholastic privilege," or has held that academic research is entitled to the protections of such a "privilege."

A fair reading of *Cusumano* indicates that only the highly journalistic nature of the researchers' work in that case would "suggest" affording a "modicum of protection" to certain "confidential" research materials which, in that case, were comprised of interviews with human

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 8, 2012
Page 5

sources. *Id.* at 714-15. *Cusumano* further indicates that the protection to be provided should be "commensurate to that which the law provides for journalists" so that sources would not hesitate to confide in researchers conducting interviews. *Id.* at 714. *Cusumano* then protected some research material, not through an application of a "privilege," but rather through application of Rule 26's balancing test. That test "contemplates consideration of myriad factors, often uniquely drawn out of the factual circumstances of a particular case." *Id.* at 716. The Rule 26 balancing test — not a "privilege" — was also at issue in the only other case cited by counsel for WHOI in support of a "scholastic privilege": *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 249 F.R.D. 8 (D. Mass. 2008) (*In re Bextra I*).

Application of the Rule 26 test used in both *Cusumano* and *In re Bextra I* weighs strongly in BP's favor here. BP cannot obtain the subpoenaed documents elsewhere, even were it to "expend substantially more effort," because Woods Hole has sole possession of the responsive documents. *See* 249 F.R.D. at 12; 162 F.3d at 712. Further, the data and communications requested by BP cannot be characterized as being of "limited probative value." 249 F.R.D. at 12. On the contrary, the requested data and communications are central to the scientific articles referenced in the subpoena and allegedly inform the United States' flow rate estimates released to the public and now at issue in litigation. Unlike in *Cusumano*, BP's need for the subpoenaed material cannot be described as "not great," and BP's use of the material is not solely "for purposes akin to impeachment." 162 F.3d at 712. Rather, BP seeks the subpoenaed documents in order to fully understand both the analysis and conclusions of WHOI scientists and others in order to inform its work on subjects in litigation.

### WHOI's Other Confidentiality Claims

WHOI's objections with respect to "confidentiality" of information can easily be addressed by the process established in PTO 13. That Order was sent to counsel for WHOI many weeks ago.

\* \* \* \* \*

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 8, 2012
Page 6

      In light of the above, BP respectfully requests the Court's assistance in managing and advancing the time for the production of documents by Woods Hole. BP has patiently but unsuccessfully worked with Woods Hole to resolve outstanding issues for three months. Now, however, given the meager initial production of WHOI documents received this week and the compelling need for obtaining the requested data, BP requests that the Court work with counsel for BP, counsel for WHOI, and (to the extent production timing is being affected by Coast Guard document reviews) counsel for the United States to enforce the subpoena and resolve any disputed claims of privilege.

                  Respectfully submitted,

                  Robert R. Gasaway

Attachments

cc (via electronic mail):

| | |
|---|---|
| Dahlia S. Fetouh | Joel M. Gross |
| R. Michael Underhill | Allison B. Rumsey |
| Steven O'Rourke | Don K. Haycraft |
| Sarah D. Himmelhoch | Plaintiffs' Liaison Counsel |
| Robin L. Hanger | Defense Liaison Counsel |
| A. Nathaniel Chakeres | |