GOODWIN | PROCTER

Dahlia S. Fetouh
617.570.1263
dfetouh@goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

March 15, 2012

**Via Electronic Mail**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court
Room B345
500 Poydras St.
New Orleans, Louisiana 70130

Re:   *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010* (Docket No. MDL 2179); Subpoena Served on Woods Hole Oceanographic Institution

Dear Judge Shushan:

We are counsel to Woods Hole Oceanographic Institution ("WHOI") and write in response to British Petroleum's ("BP") March 8, 2012 letter (the "Letter") to the Court requesting assistance with respect to the subpoena it served on WHOI, and the Court's subsequent invitation for a response.

**Background**

WHOI is a non-profit research and educational organization dedicated to exploring and advancing the understanding of the world's oceans. Founded in 1930 and based in the small coastal town of Woods Hole, Massachusetts, WHOI conducts research in a number of oceanographic fields, including the study of large oil spills. WHOI also offers graduate degrees in fields such as ocean chemistry, geochemistry, marine biology, ocean policy, fluid dynamics, and applied ocean physics and engineering.

Following the explosion on the "Deepwater Horizon" oil rig, the U.S. Government—through the U.S. Coast Guard—contacted WHOI and asked that it "provide a comprehensive analysis of the oil flow releasing at the site" of the explosion. (Statement of Work at 1, Ex. 1.) Under the contract terms, the Government requested this report because BP had provided flow-rate estimates that "[we]re not consistent with other estimations," and the Government "s[ought]

GOODWIN | PROCTER

The Honorably Sally Shushan
March 15, 2012
Page 2

[an] accurate assessment[] of the oil flow characteristics and hydrocarbon releases into the water column." *Id.*

WHOI researchers studied the incident, both on site and at Woods Hole. Their efforts eventually resulted in the publication of several papers on the spill in well-respected peer-reviewed academic journals, including *Science, Proceeding of the National Academy of Sciences, Environmental Research Letters*, and *Environmental Science & Technology*.

Now, over two years after the first of these papers was published, BP has suddenly discovered a need for the immediate production of all records—voluminous as they may be—underlying WHOI's research. Despite this inexplicably delayed request, WHOI—contrary to what BP has suggested—has put forth an extensive, good-faith effort to respond to the demands of this subpoena. WHOI takes issue with BP's characterization of its efforts thus far, as set forth in pages 2-4 of the Letter, and believes that some clarification would be helpful to the Court:

- BP served its broad-ranging subpoena on WHOI on Thursday, December 8, 2011, and, despite knowing that the breadth of requested documents could be extensive, demanded that the documents be produced by January 9, 2012.

- In light of the expansive scope of the subpoena and the imminent holiday season, WHOI promptly contacted BP's counsel to request additional time to respond. Despite WHOI's expressed concerns about the burden BP was placing on WHOI by demanding such a potentially large production over the holiday season, BP only offered a 10-day extension.

- On December 23, 2011, WHOI complied with its obligations under the Federal Rules of Civil Procedure by serving its objections to the subpoena (the "Rule 45 Objection"). The Rule 45 Objection included both general objections and detailed specific objections to each of BP's individual requests. Although this satisfied its obligations under Federal Rule of Civil Procedure 45, WHOI offered to confer with BP in a good-faith effort to provide BP with relevant materials. WHOI remained hopeful that the parties could reach a satisfactory agreement as to the scope of the requests, as well as reimbursement of costs. WHOI gave notice to BP at that time that it would take some time to make final determinations concerning the documents requested in light of the number of potentially applicable confidentiality agreements. In the spirit of cooperation, however, WHOI began the process of collecting and processing documents in anticipation of production.

- Despite the difficulties of reaching parties during the holidays, WHOI spoke with representatives of the Coast Guard, the Department of Justice, and the National

GOODWIN | PROCTER

The Honorably Sally Shushan
March 15, 2012
Page 3

- Oceanic and Atmospheric Administration. Pursuant to its contractual obligations, WHOI notified them of BP's subpoena and sought guidance on how WHOI was to proceed in regard to producing documents in its possession that are covered by various governmental privileges and confidentiality agreements.

- On February 1, 2012, a mere five weeks after serving its Rule 45 Objection, WHOI sent its first proposed production, which included documents that were principally responsive to question two of the subpoena, to the Coast Guard for review. In doing so, WHOI had to overcome a number of hurdles, including absences due to holidays and key personnel being engaged in research at sea.

- The Coast Guard provided its comments and objections concerning the proposed first production in the afternoon on February 23, 2012. That production was then redacted pursuant to the Coast Guard's direction, reviewed, and sent to BP's counsel on March 2, 2012, (*see* Letter to BP from counsel for WHOI, March 2, 2012, Ex. 2), just one week after WHOI received the Coast Guard's response.

- In the meantime, WHOI has continued its document gathering and review. As an academic institution, WHOI's scientists are frequently away, often so that they can conduct research at sea or make presentations at academic conferences. These absences make communications and gathering documents for review difficult and cumbersome. Despite all this, WHOI has already sent two further productions to the Coast Guard for its approval and review.

- Furthermore, WHOI has not provided specific production dates to BP largely because the government review process is outside of its control. WHOI could not commit to dates when it had no control over an important part of the process.

Put succinctly, within *nine weeks* of having objected to BP's subpoena, WHOI overcame a holiday season, unavailable scientists, and government review to provide BP with responsive documents, and all *without a single concession* from BP in terms of the scope of the production requested or an agreement to pay the reasonable costs of such an onerous undertaking. In other words, WHOI, a non-profit organization of limited resources, has made significant efforts to respond to the subpoena of a multibillion dollar international corporation that has made no real effort to mitigate the burden it is placing on a non-party.

**BP's Letter is Premature and Unnecessary.**

Despite BP's increasingly aggressive demands, WHOI has continued its efforts to respond to the demands of the subpoena. On Friday, March 2, 2012, WHOI sent a second

GOODWIN | PROCTER

The Honorably Sally Shushan
March 15, 2012
Page 4

production—including sonar and acoustic data files—to the Coast Guard for review. A third production, comprised of acoustic files, Doppler imaging, ROV location files, methodology papers, supporting documents, and video imaging, was sent to the Coast Guard for review on Wednesday, March 14, 2012.

Given this, and before seeking any involvement of the Court, BP should, at a minimum, review the materials already produced and WHOI's upcoming productions to determine if they are sufficient for its needs. Indeed, BP's decision to bring these issues to the Court at this juncture is surprising in light of WHOI's clear statement to BP in its February 28, 2011 letter that WHOI anticipated sending a second production to the Coast Guard within a week. (Letter to BP from counsel for WHOI, February 28, 2012, Ex. 3; *see also* Letter to BP from counsel for WHOI, March 2, 2012, Ex. 2.) These productions will provide all data recorded, as well as the mathematical equations, offsets points, and assumptions used by WHOI scientists in writing the analytical papers. With this data, any marine science expert could recreate and analyze WHOI's results.

### WHOI's Productions Include Extensive Data and Documents.

To date, WHOI has produced over 34 GB of data to the Coast Guard and/or BP, including over 52,000 pages of documents, 31 hours of ROV video and locations logs, acoustic data, ocean sample logs, oil sample findings, equipment testing reports, ROV offsets, underlying methodologies, published algorithms, and mathematical questions.

Despite BP's characterization of the first production in its Letter, WHOI's production has been substantive and responsive to BP's broad demands. All told, WHOI has responded to or otherwise produced responsive documents and data to twenty-four of the twenty-nine lengthy demands served by BP. (*See* Ex. 4 (listing requests and responses).) WHOI's productions include significant amounts of data and analysis, and have provided BP with ***all the records, data, and information needed for BP to recreate the same studies to test their validity and assumptions***. In addition, we understand that any responsive emails or documents to or from WHOI scientists that were either to or from other members of Flow Rate Technical Group have already been produced to BP by the Government.

GOODWIN | PROCTER

The Honorably Sally Shushan
March 15, 2012
Page 5

### Certain Requested Documents are Protected by the Scholastic Privilege[1]

Federal courts, and particularly the First Circuit and the District of Massachusetts where the subpoena was issued, recognize the important and often critical work scientists do.[2] These cases reflect a valid and strong concern that if researchers' pre-publication internal debates, drafts, and discussions are subject to subpoena, then full and honest academic debate will be stifled. That potentially chilling effect endangers both scientific advancement and the health and welfare of the public.

While this privilege must be balanced with a party's rights to discovery, here, WHOI is providing responsive documents to twenty-four of the twenty-nine broad categories of documents requested, which contain sufficient information and data for BP to analyze and test WHOI's conclusions. There is no valid reason or necessity for BP to push its requests further and be given access to the draft versions of the reports, or the scientists' internal discussions prior to publishing their conclusions.

In order to protect the important goal of academic research, academics "engaged in pre-publication research should be accorded protection commensurate to that which the law provides for journalists." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 714 (1st Cir. 1998) (affirming the district court's order quashing a third-party subpoena seeking academic researchers' notes, tapes, and recorded transcripts used for a published study). This protection applies because "scholars too are information gatherers and disseminators." *Id.* Protecting the non-disclosure of internal academic discussions on draft scientific publications "help[s] to ensure that the articles disseminated to the medical and scientific communities are of the highest quality." *In re Bextra* I, 249 F.R.D. at 14 (quashing subpoena of peer review comments of the *New England Journal of Medicine*); *see also In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab.*

---

[1] BP takes issue with WHOI's use of the term "scholastic privilege," but this is little more than a red herring—and one about which courts have warned before. *See, e.g., In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 249 F.R.D. 8, 12 n.3 (D. Mass. 2008) (*In re Bextra* I) ("The First Circuit has cautioned against engaging in semantic discussions about whether or not the protection to be afforded to information compiled pre-publication constitutes a 'privilege' instead [of] laying out the analysis framework [as] described [by that court].").

[2] An MDL court "acts as a judge of the [subpoena-issuing] court" when resolving discovery disputes. *U.S. ex rel. Pogue v. Diabetes Treatment Cntrs. of Am., Inc.*, 444 F.3d 462, 469 (6th Cir. 2006). Although First Circuit law is not necessarily binding in this instance, "the law of the [subpoena-issuing] forum . . . merits close consideration." *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987).

*Litig.*, No. 08 C 402, 2008 U.S. Dist. LEXIS 21098 (N.D. Ill. Mar. 14, 2008) (*In re Bextra* II) (same).

This protection exists to allow scientists to have an open debate without fear of being later questioned on a postulated statement taken out of context and before debate has concluded. As the First Circuit noted, it is harmful to academic debate "if disclosure of outtakes, notes, and other unused information, even if non-confidential, becomes routine and casually, if not cavalierly, compelled." *Cusumano*, 162 F.3d at 715 (quoting *United States v. LaRouche Campaign*, 841 F.2d 1176, 1182 (1st Cir. 1988)) (internal quotation marks omitted). Compelling such disclosure would be "harmful to the [academic institution's] ability to fulfill both its journalistic and scholarly missions, and by extension harmful to the medical and scientific communities, and to the public interest." *In re Bextra* I, 249 F.R.D. at 14. These principles apply here.

As BP acknowledges, the scholastic privilege is subject to a balancing test—one which weighs heavily in favor of the non-profit academic institution which has substantially complied with the third party subpoena. See *Cusumano*, 162 F.3d at 716. As laid out in Rule 26(b)(2)(c)(iii), the Court should limit the extent of discovery if it determines the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issue." *In re Bextra* I, 249 F.R.D. at 11 (citing rule); *see also Cusumano*, 162 F.3d at 716.

Academics' notes, conversations, and debates regarding publications are confidential. *In re Bextra* I, 249 F.R.D. at 13-14. Consequently, they cannot be compelled absent a strong showing of necessity—a showing BP is unable to make. WHOI's existing and forthcoming productions of materials, coupled with publicly-available information about WHOI's methodology, are more than sufficient to provide BP with a fulsome understanding of WHOI's analysis. BP's claimed need for any pre-publication deliberations at WHOI, therefore, can be for no reason other than hoping to find some basis to impeach WHOI's results. This goal is not permissible basis for compelling disclosure. Courts have concluded that seeking internal drafts, notes, and information on academic debates for impeachment purposes is not a valid "necessity" for compelling documents from a third-party academic institution such as WHOI. *In re Bextra* I, 249 F.R.D. at 12 (noting that, although "comments . . . which could form a basis for impeachment of the authors [may be relevant]," their "probative value is nevertheless limited") (citing *Cusumano*, 162 F.3d at 716); *see also Plough Inc. v. National Academy of Sciences*, 530 A.2d 1152 (D.C. 1987) (rejecting companies attempt to compel "internal deliberations" and preliminary drafts of a study on aspirin in hopes to "rebut the presumption of validity" of the study). Further, a party does not need to see internal confidential discussions to review or

GOODWIN | PROCTER

The Honorably Sally Shushan
March 15, 2012
Page 7

analyze the data; a party's "own experts are equally able to review and analyze the articles for flaws in methodology or otherwise." *In re Bextra* I at 13.

BP also cannot show a "necessity" for any responsive documents or communications with or among the Flow Rate Technical Group that WHOI may have in its possession because those documents have already been produced to BP by the Government. The burden and expense of reviewing and producing documents already produced clearly outweighs any interest BP may have in such duplicative documents.

Further, although BP downplays this fact, WHOI is a non-party, non-profit institution that has been involuntarily pulled into this litigation. In such situations, as the First Circuit has stated, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Cusumano*, 162 F.3d at 716. As in *Cusumano*, *In re Bextra* I, *In re Bextra* II, and *Plough Inc.*, this concern is not diminished because an academic institution studied and then published articles on a topic likely subject to litigation.

The burden and expense caused by this subpoena has already been substantial. While the demands of discovery in this situation may appear insignificant to a multinational corporation like BP, they come at a heavy cost to WHOI, in terms of both lost time for research, legal expenses, and expended resources. Individuals at WHOI have already spent hundreds of hours attempting to respond to the subpoena, often having to forsake their normal duties. WHOI researchers have already missed an opportunity to submit a proposal for funding because of the demands of responding to the subpoena. Moreover, WHOI has incurred substantial costs—both direct and indirect—in responding to the repeated and insistent demands of BP throughout the last two months. Those costs must be borne directly by the non-profit's endowment.

**BP's Refusal to Narrow the Scope of its Requests or Compensate WHOI for Expenses Incurred in Connection with Subpoena Violates Rule 45(c)**

Although BP has an affirmative duty to take reasonable steps to avoid imposing an undue burden on a non-party, it has refused to make any accommodations, offer to limit discovery, or cover costs. *See* Fed. R. Civ. P. 45(c)(1) ("A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena."); *see also Am. Fed. of State, Cnty. and Mun. Emps. (AFSCME) Council 79 v. Scott*, No. 11-21976-Civ-Ungaro/Torres, 2011 WL 6057553, at *4 n.1 (S.D. Fla. Dec. 5, 2011) ("The costs of producing the documents required by this Order must be borne by the Defendant, as the ACLU is not a party in the case and Rule 45 clearly allows for the recovery of reasonable costs by the non-party served with a subpoena."); *cf.* Advisory Comm. Notes to 1991 Amendments to Rule 45 ("A non-party required to produce documents or

GOODWIN | PROCTER

The Honorably Sally Shushan
March 15, 2012
Page 8

materials is protected against significant expense resulting from involuntary assistance to the court.").

Since issuing the subpoena, and in spite of its Rule 45(c) duties to take reasonable steps to avoid imposing an undue burden, BP has:

- Refused to offer to limit the scope of production in any way. *Cf. In re Bextra* I, 249 F.R.D. at 12 (Pfizer negotiated, offered and than limited its demands to only two questions from an initial voluminous demand on the *New England Journal of Medicine*).

- Refused to reimburse any costs other than copying and mailing costs despite the more than 300 hours lost by WHOI personnel gathering and reviewing the data produced to date, as well as the cost of legal counsel.

- Refused to limit the scope of any privilege log or consider whether a log is truly necessary.

- Refused to await review by the Coast Guard of the two pending productions before requesting that WHOI appear before this Court.

- Refused to address subpoena issues in the District of Massachusetts, which issued the subpoena and is where WHOI is located, and instead has required that WHOI appear before this distant Court, despite the added inconvenience and cost that it may place on WHOI, a non-party.

A large corporation's request to a non-profit entity like WHOI for voluminous materials places an onerous burden of time and money on that non-profit, and BP should be required to cover those costs. *See In re Grand Jury Subpoena Duces Tecum Issued to S. Motor Carriers Rate Conference, Inc., Dated August 13, 1975*, 405 F. Supp. 1192, 1198 (N.D. Ga. 1975) (protecting a nonprofit company from significant expenses and disruption of work by ordering subpoenaing party to bear the costs of production).

**The Court Should Decline to Exercise Jurisdiction Over this Dispute.**

Although this Court has the discretion to exercise jurisdiction as a Massachusetts District Court under the MDL statute, WHOI respectfully requests that the Court refrain from so exercising that power and allow that any future matters relating to this subpoena be heard directly in the United States District Court for the District of Massachusetts. As explained above, WHOI is based in Massachusetts, as is its counsel. Accordingly, the subpoena was issued

GOODWIN | PROCTER

The Honorably Sally Shushan
March 15, 2012
Page 9

out of the District of Massachusetts, which retains jurisdiction to hear any disputes concerning the subpoena. As a non-party, non-profit institution, the additional burden on WHOI in appearing in a distant court may prove substantial. For the convenience of the WHOI scientists and executives who may need or desire to participate in hearings, we ask the Court to decline jurisdiction over any dispute arising out of this subpoena and order BP to raise its concerns, if any, in the District of Massachusetts.

\* \* \*

In light of the above, WHOI respectfully requests that the Court decline BP's request for "assistance in managing and advancing the time for the production of documents by Woods Hole." Letter at 6. As we have explained, WHOI has gone to considerable lengths to comply with BP's subpoena despite the significant strain on WHOI's resources, the broad and expansive nature of the request, and the complications of Government review that are outside of WHOI's control. WHOI has been open in its communications with BP and made clear before BP sent its Letter to the Court that much of the data about which BP is now complaining was already in the pipeline for production. As such, to the extent the Court decides to exercise jurisdiction, WHOI requests the Court's protection in narrowing the burden placed by BP and ordering compensation for WHOI's lost time and expense.

Respectfully,

*Dahlia Fetouh*

Dahlia S. Fetouh

DSF/aed
Attachments

cc:   Robert R. Gasaway, Esq.
      Karen McCartan DeSantis, Esq.

LIBA/2270389