# EXHIBIT 1

STATEMENT OF WORK
DEEPWATER HORIZON Oil Spill Flow Rate and Characteristics Analysis

**1.0   Background**

The explosion and sinking of the BP-leased DEEPWATER HORIZON oil rig (from here on referred to as the "site") resulted in a major oil spill in the Gulf of Mexico. Presently, the Unified Incident Command Post is directing the response effort in the vicinity of the release.  BP is the responsible party for the stoppage and cleanup of the spill.  BP has provided flow rate estimates but they are not consistent with other estimations. The Government seeks to provide accurate assessments of the oil flow characteristics and hydrocarbon releases into the water column.

**2.0   Scope**

The objective of this contract is to provide a comprehensive analysis of the oil flow releasing at the site.

**3.0   Requirements Tasking**

The requirements are to 1) conduct on-site data collection of the available oil spill flow characteristics with specific attention to rate estimation; 2) analyze the data gathered, and 3) provide a comprehensive analysis report.

**3.1   Data Collection Plan**

Prior to departure for on-site data collection, the Contractor shall provide a Data Collection Test Plan as Deliverable 1.  The plan shall include the description and sequence of operations.

**3.2   On-Site Data Collection**

The Contractor shall conduct on-site research into the flow rate of the oil spill in accordance with the Deliverable 1.  The Contractor shall provide daily reports as Deliverable 2; which include, but are not limited to: personnel involvement, equipment status, and a field analysis of data collected. The Contractor shall provide a trip report as Deliverable 3, which includes, but is not limited to: a summary of significant events during the deployment; equipment and sensor performance assessment, and a preliminary analysis of data collected.

**3.3   Data Analysis**

The Contractor shall analyze the data collected under Task 3.2 to provide a Final Oil Spill Flow Rate Report and Characterization Analysis Report as Deliverable 4.  This report shall be submitted within 5 business days after the conclusion of data collection period.

**3.4   Contract Archive**

The Contractor shall provide an electronic archive of all reports, test data, and other information gathered during the contract as Deliverable 5.  This archive shall be delivered at the conclusion of the period of performance.

**4.0   Other**

**4.1   Period of Performance**

The period of performance for this task is 30 days from contract award.

STATEMENT OF WORK
DEEPWATER HORIZON Oil Spill Flow Rate and Characteristics Analysis

### 4.2　　Travel

Travel to the U.S. Gulf Coast region is required for the research team.  All personnel and equipment required to gather data for oil spill analysis shall be deployed to the site.

### 4.3　　Government Furnished Information

The following information will be provided upon contract award:

1) USCG Marine Safety Lab oil test sample data.

### 4.4　　Security

This project is unclassified.

### 4.5　　Contracting Officer's Technical Representative (COTR)

The COTR for this task is Lieutenant Joseph Kusek.  He can be reached  at (860) 271-2789 or by email joseph.w.kusek@uscg.mil.

# EXHIBIT 2

# GOODWIN | PROCTER

Dahlia S. Fetouh
617.570.1263
dfetouh@
goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

March 2, 2012

**VIA FEDEX**

Karen McCartan DeSantis
Kirkland & Ellis LLP
655 Fifteen Street, N.W.
Washington, D.C. 20005

Re:   *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010* **(Docket No. MDL 2179); Subpoena Served on Woods Hole Oceanographic Institution**

Dear Karen:

Enclosed is Woods Hole Oceanographic Institution's ("WHOI") first production in response to British Petroleum's ("BP") subpoena *duces tecum*, served on WHOI in relation to the "Deepwater Horizon" litigation currently pending in United States District Court in the Eastern District of Louisiana ("District Court"). We produce these documents in a good faith effort to respond, but reserve all rights and objections as outlined in our December 23, 2011 Rule 45 Objections.

Further, these documents are produced in conformity with District Court's Pre-Trial Order No. 13 (Order Protecting Confidentiality) governing the "Deepwater Horizon" litigation, and should be considered protected by the same. Also, from your prior representations, we understand that you will enforce and protect the documents here produced pursuant to said order. This should not, however, be construed as a submission to the jurisdiction of that court.

The United States Coast Guard, pursuant to WHOI's agreement with it, has reviewed and approved the enclosed production. Two documents, WHOI-000312 and WHOI-000315, have been redacted at the Coast Guard's request in order to protect the deliberative process. Any remaining redactions are either to protect our client's privacy (redacting personal telephone numbers) or should be construed as an assertion of attorney-client privilege/attorney work product.

LIBA/2267793.1

GOODWIN | PROCTER

Karen DeSantis
March 2, 2012
Page 2

Finally, as we have previously discussed, WHOI is in the midst of preparing a second production of relevant, non-privileged documents. We hope to submit these documents to the Coast Guard shortly for review, and we will endeavor to produce them as soon as that review is complete.

Sincerely,

*Dahlia Fetouh/pm*

Dahlia S. Fetouh

DF

LIBA/2267793.1

# EXHIBIT 3

GOODWIN | PROCTER

Dahlia S. Fetouh
617.570.1263
dfetouh@goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

February 28, 2012


**Via Electronic Mail and First-Class Mail**

Karen McCartan DeSantis
Kirkland & Ellis LLP
655 Fifteen Street, N.W.
Washington, DC  20005


Re:   *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010* (Docket No. MDL 2179); Subpoena Served on Woods Hole Oceanographic Institution

Dear Karen:

I write in response to your letter dated February 23, 2012 (the "Letter"), requesting that Woods Hole Oceanographic Institution ("WHOI") provide a production schedule including "dates certain" for WHOI's initial production as well as an estimate on the time necessary to produce a privilege log, all by the following day, February 24, 2012.

We first note that British Petroleum's ("BP") demand for WHOI to respond within 24 hours hardly comports with BP's obligations under Rule 45. *See* Fed. R. Civ. P. 45(c)(1) ("A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena."). This demand, coupled with BP's refusal to cover WHOI's expenses incurred in connection with responding to BP's broad subpoena and BP's demand for a detailed privilege log, serves to illustrate BP's unreasonable approach to this non-party subpoena.

You state at the outset of the Letter that time is critical to BP, noting that the subpoena was issued 10 weeks ago. But you fail to acknowledge that the subpoena was served shortly before the Christmas and New Year holidays. You also fail to acknowledge that WHOI timely served its objections to the subpoena pursuant to Rule 45 on December 23rd (the "Rule 45 Objection"). Despite the fact that WHOI is under no obligation to provide any documents following service of its Rule 45 Objection, WHOI has attempted to negotiate with BP in good faith in order to provide you with relevant materials. While we understand you may be under a difficult time constraint in light of the current trial schedule, we do note that BP was fully aware of WHOI's

GOODWIN | PROCTER

Karen McCartan DeSantis, Esq.
February 28, 2012
Page 2

work and the primary article at issue in the subpoena which was published by WHOI over two years ago in June 2010. Any time pressure is not of WHOI's making.

As we have explained several times the process of collecting and producing documents has been slowed by forces outside of WHOI's control. As we have previously informed you, many of the materials sought by the subpoena are within the control of individuals who have been inaccessible at sea for periods of time since the subpoena was served. Moreover, as we made clear in our Rule 45 Objection and our subsequent conversations, before WHOI can produce any material it must be reviewed by the federal government pursuant to WHOI's contractual obligations. Thus, while WHOI has endeavored to collect and produce materials to BP in response to the subpoena, WHOI cannot provide BP with "dates certain" for future events that are contingent on the actions of others.

**Scholastic Privilege**

In the Letter, you claim that "you are not aware of any basis" for the scholastic and academic process protection asserted in our Rule 45 Objection and ask us to provide authority for this well-established protection. Although we believe the assertions in our Rule 45 Objection are sufficient and that BP's counsel must certainly be capable of identifying this authority, we provide the following summary of the academic and scholastic process protection to aid your consideration of our objections. Namely, federal courts have recognized that in order to protect the important goal of academic research, academics "engaged in pre-publication research should be accorded protection commensurate to that which the law provides for journalists." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 714 (1st Cir. 1998) (affirming the district court's order quashing a third-party subpoena seeking academic researchers notes, tapes, and recorded transcripts used for a published study). This protection applies because "scholars too are information gatherers and disseminators." *Id.*

Indeed, courts have held that internal discussions on academic research must be protected from disclosure to avoid a chilling effect on frank, fulsome, and important scientific debate. Protecting the non-disclosure of internal academic discussions on draft scientific publications "help[s] to ensure that the articles disseminated to the medical and scientific communities are of the highest quality." *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 249 F.R.D. 8, 14 (D. Mass. 2008) (*In re Bextra* I) (quashing subpoena of peer review comments of the *New England Journal of Medicine*); *see also In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, No. 08 C 402, 2008 U.S. Dist. LEXIS 21098 (N.D. Ill. Mar. 14, 2008) (*In re Bextra* II) (same). This protection exists to allow scientists to have an open debate without fear of being later questioned on a postulated statement taken out of context. As the First Circuit noted, it is harmful to academic debate "'if disclosure of outtakes, notes, and other unused information, even if nonconfidential, becomes routine and casually, if not cavalierly, compelled.'"

GOODWIN | PROCTER

Karen McCartan DeSantis, Esq.
February 28, 2012
Page 3

*Cusumano*, 162 F.3d at 715 (quoting *United States v. LaRouche Campaign*, 841 F.2d 1176, 1182 (1st Cir. 1988)). Compelling such disclosure would be "harmful to the [academic institution's] ability to fulfill both its journalistic and scholarly missions, and by extension harmful to the medical and scientific communities, and to the public interest." *In re Bextra* I, 249 F.R.D. at 14. These principles apply here. Accordingly, WHOI should not—and indeed cannot—be compelled to disclose the internal documents and discussions that are the foundation of its academic research.

**Compensation for WHOI's Expenses**

Remarkably, BP continues to impose requirements on WHOI that exceed the requirements of Rule 45 while simultaneously refusing to compensate WHOI, a non-profit organization, for its expenses incurred in responding to this third party subpoena. WHOI's efforts in responding to the subpoena come at considerable expense to WHOI, in terms of lost productivity, legal expense, and actual production costs.

Rule 45 provides that the subpoenaing party should help offset the costs to a non-party in responding to subpoena it issues. *See* Fed. R. Civ. P. 45(c)(1) ("A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena."); *see also Am. Fed. of State, Cnty. and Mun. Emps. (AFSCME) Council 79 v. Scott*, No. 11-21976-Civ-Ungaro/Torres, 2011 WL 6057553, at *4 n.1 (S.D. Fla. 2011) ("The costs of producing the documents required by this Order must be borne by the Defendant, as the ACLU is not a party in the case and Rule 45 clearly allows for the recovery of reasonable costs by the non-party served with a subpoena."); *cf.* Advisory Comm. Notes to 1991 Amendments to Rule 45 ("A non-party required to produce documents or materials is protected against significant expense resulting from involuntary assistance to the court."). This is particularly true where, as here, a large corporation's request to a non-profit entity like WHOI places an onerous burden of time and money on that non-profit. *In re Grand Jury Subpoena Duces Tecum Issued to S. Motor Carriers Rate Conference, Inc., Dated August 13, 1975*, 405 F.Supp. 1192, 1198 (N.D. Ga. 1975) (protecting a nonprofit company from significant expenses and disruption of work by ordering subpoenaing party to bear the costs of production). Now not only is BP demanding the production of voluminous materials without compensation, it is also demanding that WHOI go to the added expense of creating a detailed privilege log without offering to cover that expense, limit the categories that must be logged, or consider whether a log is truly necessary. This position runs directly counter to Rule 45 and the policies behind it.

Finally, the suggestion that it is appropriate to refuse to compensate WHOI for its costs because WHOI "undertook its work on the matter at issue with full knowledge that its work would likely be relevant in ongoing and potential litigation" is entirely without merit. WHOI and its scientists

GOODWIN | PROCTER

Karen McCartan DeSantis, Esq.
February 28, 2012
Page 4

went to great personal sacrifice to provide aid after the explosion and oil spill. To suggest that WHOI should not be entitled to compensation under Rule 45 because it should have known that BP would drag it into this litigation, is not only unfounded but serves as a paramount illustration of why nonprofits and academics such as WHOI and its researchers should be protected from the kind of intrusive and unreasonable demands made in the subpoena. BP's approach has the danger of creating precisely the kind of chilling effect that federal courts have sought to avoid.

\*   \*   \*

Reserving all rights and protections asserted above and in WHOI's Rule 45 Objection, WHOI will continue its efforts to gather and produce relevant non-privileged documents that have been reviewed and approved for such disclosure by the Coast Guard. As previously disclosed, we recently received comments from the Coast Guard on our first collection and we anticipate that our first production will be shipped to you shortly. Scientists needed to gather our second production have recently returned from sea, and we are scheduled to meet with them this week. We anticipate that we will be in a position to send a second set of documents to the Coast Guard by the end of next week.

Sincerely,

*Dahlia S. Fetouh*
Dahlia S. Fetouh

DSF/cmc

LIBA/2265504.2

# EXHIBIT 4

BP'S THIRD PARTY SUBPOENA
OF
WOODS HOLD OCEANOGRAPHIC INSTITUTION

| Production Demand No. | BP Demands and WHOI's Production Responses |
|---|---|
| **Document Request No. I.1.:** | Any and all time referenced acoustic information and data from the acoustic imaging sonar and the acoustic Doppler sonar, including without limitation information and data in the form of MATLAB (".**mat**") data files with all variables identified, and in the form of binary data files with format identified. *Objections have been served.* |
| **Document Request No. I.2.a-e** | Any and all data, information, communication, or files relating to the remotely operated vehicle's ("**ROV**") operation and standard suite of navigation sensors and coordinate system, including without limitation: <br><br>a.  Any and all documents, data, information, logs, files, and/or communications regarding the ROV's operation.<br><br>*Produced records of ROV recorded temperatures and sampling times, see WHOI 000389-0398; WHOI 000222-0231; other locations records produced, currently being reviewed by Coast Guard.*<br><br>b.  The position, location, and/or description of the ROV reference point for the ROV coordinate system.<br><br>*Currently being reviewed by Coast Guard.*<br><br>c.  Any and all three-dimensional, time-referenced information and data regarding any change in the ROV's position, location, direction, orientation, and/or attitude (*i.e.*, pitch, yaw, and roll), based on the ROV's coordinate system, including without limitation information and data in the form of MATLAB (".**mat**") data files with all variables identified, and in the form of binary data files with format identified.<br><br>*Currently being reviewed by Coast Guard.* |

| Production Demand No. | BP Demands and WHOI's Production Responses |
|---|---|
| | d. The position, location, direction, and orientation of the acoustic imaging sonar sensors and the acoustic Doppler sonar sensors on the ROV relative to the ROV's coordinate system.<br><br>*Currently being reviewed by Coast Guard.*<br><br>e. Any and all three-dimensional, time-referenced information and data regarding any change in the position, location, direction, and/or orientation of the acoustic imaging sonar sensors and acoustic Doppler sonar sensors, based on the ROV's coordinate system.<br><br>*Currently being reviewed by Coast Guard.* |
| **Document Request No. I.3:** | Any and all data, information, communication, or files used and/or relied upon to generate or develop any figures, tables, graphics, or illustrations in the Revised Report.<br><br>*Reference materials and articles produced; currently being reviewed by Coast Guard.* |
| **Document Request No. I.4:** | Any and all acoustic information and data from the acoustic imaging sonar, in the form of DIDSON ("**.ddf**") data files, including without limitation all settings, all headers with identification, with all binned intensity data, for all beams.<br><br>*Produced; currently being reviewed by Coast Guard. See also ROV recorded temperatures and sampling times (WHOI 000389-0398; WHOI 000222-0231).* |
| **Document Request No. I.5:** | The manufacturer(s), models, and serial numbers for the acoustic imaging sonar and the acoustic Doppler sonar.<br><br>*On information and belief, not in custody or control of WHOI.* |
| **Document Request No. I.6:** | Any and all video or film recordings or data used by Woods Hole corresponding to any and all acoustic information and data in the Reports.<br><br>*Currently being reviewed by Coast Guard.* |

2

| Production Demand No. | BP Demands and WHOI's Production Responses |
|---|---|
| **Document Request No. I.7:** | Any and all documents, data, and/or communications relating to the calculation of the momentum length scale of the jet sources in the Revised Report.<br><br>*Underlying data currently being reviewed by Coast Guard.* |
| **Document Request No. I.8:** | Any and all documents, data, and/or communications relating to the downward-continued plume model algorithm in the Revised Report.<br><br>*Underlying data currently being reviewed by Coast Guard.* |
| **Document Request No. I.9:** | Any and all documents, data, and/or communications relating to the estimation or determination of the flow regimes and entrainment coefficients, including any and all documents, data, and/or communications regarding the material and environmental conditions, as described in the Revised Report.<br><br>*Underlying data currently being reviewed by Coast Guard.* |
| **Document Request No. I.10:** | Any and all information and data regarding the accuracy, precision, and/or reliability (*i.e.*, confidence intervals) of any and all acoustic information and data, including without limitation the basis for determining the accuracy, precision, and/or reliability of any and all acoustic information and data and the methodology for determining the accuracy, precision, and/or reliability of any and all acoustic information and data.<br>*Reference materials and articles produced; currently being reviewed by Coast Guard.* |
| **Document Request No. I.11:** | Any and all documents and communications regarding any basis for using or citing to each of the referenced sources in the Revised Report.<br><br>*Reference materials and articles produced; currently being reviewed by Coast Guard.* |

3

| Production Demand No. | BP Demands and WHOI's Production Responses |
|---|---|
| **Document Request No. I.12:** | Any and all documents, data, and/or communications used to calculate, support, review, compare, analyze, confirm, measure, or otherwise evaluate any and all conclusions and determinations in the Reports.<br><br>*Objections have been served.* |
| **Document Request No. I.13:** | Any system software and/or programs necessary to read any files, data, or information from (1) through (12) above, or any codes, programs, or metadata used for translating the files from (1) through (12) above into usable form.<br><br>*BP demands third-party software which WHOI has licenses for, but does not believe it can give a license to BP, especially when such licenses are freely available in the market place.* |
| **Document Request No. II:** | Any and all documents, data, information, and communications related to the acquisition, processing, and analysis of oil and gas compositions or samples from MC252; any and all documents, data, information, and communications related to the development, production, and analysis of the Gas and Oil Report; and any and all documents, data, information, and communications related to the location and chain of custody of any and all information and data generated from the effort to measure what You refer to as the gas-to-oil ratio ("**GOR**"), composition, or other properties of the oil and gas released from MC252. |
| **Document Request No. II.1.:** | Any and all documents, data, information, and communications related to the equipment used to collect and contain the fluid samples from the MC252, and Your decision to use this particular equipment over any other equipment.<br><br>*Produced records of supporting articles and methodology (WHOI 000420-0570); nearly 100 pages of email dialogue with Coast Guard on selecting and testing equipment to be used (WHOI 000232-0318); and video logs of sampling, chain of custody of samples, and equipment testing reports, (WHOI 000571-00597).* |

4

| Production Demand No. | BP Demands and WHOI's Production Responses |
|---|---|
| **Document Request No. II.2.:** | Any and all documents, data, information, and communications related to the collection locations of the MC252 fluid, and Your decision to collect from such locations as opposed to other locations.<br><br>*Produced in part, see above.* |
| **Document Request No. II.3.:** | Any and all documents, data, information, and communications related to the amount of fluid that You collected and the duration of the fluid collection, and whether that amount and duration can produce a representative fluid sample.<br><br>*See WHOI 000399-0419.* |
| **Document Request No. II.4.:** | Any and all documents, data, information, and communications related to Your determination as to what a representative sample would be for this particular fluid and these particular flowing conditions.<br><br>*On information and belief, no such documents exist.* |
| **Document Request No. II.5.:** | Any and all documents, data, information, and communications related to the manner in which You analyzed the MC252 fluid and, in particular, what You refer to as the GOR.<br><br>*See WHOI 000319-00388; WHOI 000399-0405.* |
| **Document Request No. II.6.:** | Any and all documents, data, information, and communications related to what You were attempting to measure in Your analysis of the MC252 sample, including whether You were attempting to measure the amount of gas that was dissolved in the liquid or whether You were attempting to measure the fraction of gas and the fraction of oil in the fluid.<br><br>*See WHOI 000319-00388; WHOI 000399-0405; WHOI 00617-000631.* |

| Production Demand No. | BP Demands and WHOI's Production Responses |
|---|---|
| **Document Request No. II.7.:** | Any and all documents, data, information, and communications related to Your representation that You measured a GOR of 1,600 from sample MW-1 and 2,470 from sample MW-2. *Objections have been served.* |
| **Document Request No. II.8.:** | Any and all documents, data, information, and communications related to whether, and to what extent, there may be errors in what You refer to as GOR for the sampled fluid due to the manner in which You collected the MC252 samples, including the amount of fluid collected and the duration of Your collection. *Objections have been served.* |
| **Document Request No. II.9.:** | Any and all documents, data, information, and communications related to the process and manner in which You collected the MC252 fluid samples and transported such samples to a laboratory for analysis. *See response to II.1.* |
| **Document Request No. II.10.:** | Any and all documents, data, information, and communications related to the pressure and temperature at which the MC252 fluid samples were collected. *Produced records of ROV recorded temperatures and sampling times, see WHOI 000389-0398; WHOI 000222-0231.* |
| **Document Request No. II.11.:** | Any and all documents, data, information, and communications related to Your expertise to determine what You refer to as GOR for a multiphase hydrocarbon fluid. *See WHOI 000001-0221.* |

| Production Demand No. | BP Demands and WHOI's Production Responses |
|---|---|
| **Document Request No. II.12.:** | Any system software and/or programs necessary to read any files, data, or information from (1) through (II) above, or any codes, programs, or metadata used for translating the files from (1) through (11) above into usable form.<br><br>*BP demands third-party software which WHOI has licenses for, but does not believe it can give a license to BP, especially when such licenses are freely available in the market place.* |

7