# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

| Robert R. Gasaway | | |
|---|---|---|
| To Call Writer Directly: | (202) 879-5000 | Facsimile: |
| (202) 879-5175 | | (202) 879-5200 |
| robert.gasaway@kirkland.com | www.kirkland.com | |

March 15, 2012

**By Electronic Mail**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court
Room B345
500 Poydras St.
New Orleans, Louisiana 70130

        Re:    MDL No. 2179 — Subpoena Served on Woods Hole Oceanographic Institution

Dear Judge Shushan:

    We write to respond briefly to the letter sent earlier today by counsel for Woods Hole Oceanographic Institution ("WHOI"). We respectfully request that the Court take note of the following responses to points made in that letter.

    1.  **BP Has Not Been Dilatory**

    After referencing publication of the institution's research in scientific journals, WHOI's counsel remarks that "over two years after the first of these papers was published" BP "suddenly discovered a need for the immediate production of all records …." *See* Letter from Counsel for WHOI to the Court, at 2 (March 15, 2012) ("Letter").

    But in making this statement, counsel overlooks two basic facts that should be well known to persons familiar with civil litigation and this litigation in particular. ***First***, a mere passage of time is no defense to complying with a valid subpoena. ***Second***, discovery in this MDL is being conducted in phases — and WHOI's research happens to fall within the scope of Phase Two discovery. As this Court is well aware, BP began focusing on WHOI soon after Phase Two discovery began and has remained focused on WHOI ever since.

    Equally important, counsel also fails to fully and fairly explain the relevant scientific publication dates in this suggestion of some dilatory lapse by BP. In fact, the reports and papers referenced in the subpoena were published on the following approximate dates: June 2010

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 15, 2012
Page 2

(WHOI's preliminary, one-page flow rate report); March 2011 (Flow Rate Technical Group report); July 2011 (WHOI's gas-oil fraction report); and September 2011 (WHOI's revised flow rate report). As a result, the papers at issue were released over a fifteen-month period beginning less than two years ago, with the latest published only three months before service of BP's subpoena in December 2011. BP's subpoena was not "inexplicably delayed" in any relevant sense. *Cf.* Letter, at 2.

### 2. There's No Such Thing as "Scholastic Privilege"

With respect to WHOI's assertion of a "scholastic privilege," counsel misinterprets the caselaw. There is simply no law anywhere supporting a protection for discussions between researchers. Those discussions are not akin to a journalist's conversations with confidential sources, and only the latter have warranted limited protection in the First Circuit. *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 714-15 (1st Cir. 1998). Moreover, as BP has explained, even this "modicum of protection" was provided via application of Rule 26's balancing test and not by invocation of a privilege. *See id.* at 715-17. As noted in our recent letter to the Court, any balancing of the Rule 26 factors here tips heavily in BP's favor. *See* Letter from Counsel for BP to the Court, at 5 (March 8, 2012).

Furthermore, given the significance apparently placed on WHOI's work by the United States — including its assertions regarding the importance and reliability of the acoustic technique — BP is entitled to review all data and communications that raise questions concerning this methodology's purported reliability. It is thus critical that BP be permitted to review, *inter alia*, WHOI's communications regarding the techniques or methodologies used (or considered for use but rejected), communications assessing methodological and data reliability issues, and communications otherwise bearing on the validity and reliability of WHOI's work. This cannot be accomplished solely from reviewing raw data. Whereas counsel for WHOI suggests that it is in the "public interest" to shield these communications from analysis, *see* Letter, at 6, the true public interest involved here counsels strongly in favor of WHOI's disclosing and subjecting to analysis all of WHOI's data, analysis, and communications pertaining to the DWH incident.

Lastly on this point, it is interesting to note that the contract under which WHOI apparently performed the relevant work for the United States, *see* Letter, at Exhibit 1, does not state or even suggest that WHOI was performing the work as a scholarly endeavor.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 15, 2012
Page 3

### 3. BP Did Not Rush into Court

Counsel for WHOI suggests, erroneously, that counsel for BP was overly hasty in involving this Court in this subpoena dispute. In fact, while counsel for BP was told that counsel for WHOI had sent an unspecified number of additional documents to the U.S. Coast Guard for review, at the time of our initial letter to the Court, we had received only one small binder of responsive documents. Significantly, approximately 475 pages out of 631 pages in this binder (roughly 75%) consisted of documents already available to BP through public sources. Accordingly, the potentially new and useful universe of documents consisted solely of approximately 150 pages of the total initial production, and even this comparative handful of documents was responsive only to one section of the subpoena concerning analysis of gas-oil fraction issues. None of the acoustic or sonar data requested has yet been produced. Accordingly, as of today, March 15, 2012, this small binder of documents is still the only set of documents produced in response to BP's subpoena. Throughout the past three months, BP has waited patiently for production of responsive documents.

### 4. If Any Compensation Were Owed, It Should Come from the United States

While BP recognizes that WHOI is a nonprofit institution, this does not mean that BP is obliged under the law to compensate WHOI for time and effort spent responding to this subpoena. It is well established that "[u]sually, absent an order compelling document production, a non-party bears its own production cost." *See Behrend v. Comcast Corp.*, 248 F.R.D. 84, 86 (D. Mass. 2008) (citing *Boston Children's Heart Found., Inc. v. Nadal-Ginard*, No. 93-12539, 1995 WL 17015062, at *2 (D. Mass. Aug. 23, 1995)). Moreover, even in context of orders compelling production, courts look at several factors before requiring reimbursement, and in this case those factors weigh against shifting costs to BP. *See* Letter from counsel for BP to counsel for WHOI, at 3 (March 2, 2012).

In light of WHOI's cost concerns, BP suggests that counsel for WHOI consider requesting compensation from the United States for time and effort spent responding to the subpoena. The facts adduced to date clearly indicate that WHOI performed the work that prompted the subpoena under contract with the United States Coast Guard.

### 5. WHOI Has Presented No Specific Offers to Narrow the Subpoena

Although counsel for WHOI indicates that BP has declined requests to limit the scope of the subpoena or to ease the compilation of privilege logs, we note that counsel for WHOI has never made a specific request for either type of accommodation.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 15, 2012
Page 4


To be sure, counsel has served general objections to the subpoena and has indicated that WHOI will not provide certain communications deemed to be covered by privilege(s). But at no time has counsel specified how certain requests for data and communications might be specifically modified to ease the burdens that WHOI now alleges.

*       *       *

In closing, we would draw the Court's attention to the Letter's Exhibit 1. This exhibit specifies a number of "deliverables" that WHOI was to provide to the Coast Guard's technical representative as part of a specified work order. For instance, the contract required WHOI to "provide an electronic archive of all reports, test data, and other information gathered during the contract as Deliverable 5." Presumably, it would be a simple and efficient matter for counsel for either WHOI or the United States to procure and produce those deliverables to BP — for surely both WHOI and the Coast Guard have long been, and remain today, in possession of these important "reports," "test data," and related materials.

Respectfully submitted,

Robert R. Gasaway

cc (via electronic mail):

| | |
|---|---|
| Dahlia S. Fetouh | Don K. Haycraft |
| R. Michael Underhill | Plaintiffs' Liaison Counsel |
| Steven O'Rourke | Defense Liaison Counsel |
| Sarah D. Himmelhoch | |
| Robin L. Hanger | |
| A. Nathaniel Chakeres | |
| Barry E. Fields | |