1                    UNITED STATES DISTRICT COURT

2                   EASTERN DISTRICT OF LOUISIANA

3

4

5   IN RE:  OIL SPILL BY THE OIL RIG    *    10-MD-2179-CJB-SS
            DEEPWATER HORIZON IN THE    *
6           GULF OF MEXICO ON           *
            APRIL 20, 2010              *    March 23, 2012
7                                       *
                                        *
8   Applies to:  All Cases             *    9:30 a.m.
    * * * * * * * * * * * * * * * * * *

9

10

11                  DISCOVERY STATUS CONFERENCE
               BEFORE THE HONORABLE SALLY SHUSHAN
12               UNITED STATES MAGISTRATE JUDGE

13

14  Appearances:

15
    For the Plaintiffs:          Williamson & Rusnak
16                               BY:  JIMMY WILLIAMSON, ESQ.
                                 4310 Yoakum Boulevard
17                               Houston, Texas 77006

18
    For the Plaintiffs:          Levin Papantonio Thomas Mitchell
19                                 Rafferty & Proctor, PA
                                 BY:  BRIAN H. BARR, ESQ.
20                               316 South Baylen Street, Suite 600
                                 Post Office Box 12308
21                               Pensacola, Florida 32591

22
    For the United States        U.S. Department of Justice
23  of America:                  Environmental Enforcement Section
                                 BY:  STEVEN O'ROURKE, ESQ.
24                                    A. NATHANIEL CHAKERES, ESQ.
                                 Post Office Box 7611
25                               Washington, DC 20044

```
 1   For the State of             Attorney General of Alabama
     Alabama:                     BY:  COREY L. MAZE, ESQ.
 2                                500 Dexter Avenue
                                  Montgomery, Alabama 36130
 3

 4   For Transocean Holdings      Sutherland Asbill & Brennan, LLP
     LLC, Transocean Offshore     BY:  DAVID A. BAAY, ESQ.
 5   Deepwater Drilling Inc.,     1001 Fannin Street, Suite 3700
     Transocean Deepwater Inc.:   Houston, Texas 77002
 6

 7   For BP America Inc.,         Kirkland & Ellis, LLP
     BP America Production        BY:  ROBERT R. GASAWAY, ESQ.
 8   Company, BP Company          655 Fifteenth Street, NW
     North America Inc.,          Washington, DC 20005
 9   BP Exploration &
     Production Inc., BP
10   Holdings North America
     Limited, BP Products
11   North America Inc.:

12
     For Halliburton Energy:      Godwin Ronquillo, PC
13   Services, Inc.:              BY:  R. ALAN YORK, ESQ.
                                  1331 Lamar, Suite 1665
14                                Houston, Texas 77010

15
     For Anadarko Petroleum       Bingham McCutchen, LLP
16   Corporation, Anadarko        BY:  WARREN A. FITCH, ESQ.
     E&P Company LP:              2020 K Street, NW
17                                Washington, DC 20006

18
     Official Court Reporter:     Toni Doyle Tusa, CCR, FCRR
19                                500 Poydras Street, Room HB-406
                                  New Orleans, Louisiana 70130
20                                (504) 589-7778
                                  Toni_Tusa@laed.uscourts.gov
21

22

23

24
     Proceedings recorded by mechanical stenography using
25   computer-aided transcription software.
```

1          **I N D E X**

2                                                      <u>PAGE</u>

3    BOP & CAPPING STACK                              4

4    HALLIBURTON COMPUTER                            6

5    WOODS HOLE                                      7

6    30(B)(6) NOTICES OF THIRD PARTIES               8

7    U.S. AND BP PRODUCTION OF DOCUMENTS             9

8    30(B)(6) NOTICE OF THE UNITED STATES            9

9    30(B)(6) NOTICE OF BP                          10

10   QUANTIFICATION                                 13

11   30(B)(6) NOTICE OF ANADARKO                    14

12   OUTSTANDING 30(B)(6) NOTICES                   15

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          **<u>PROCEEDINGS</u>**

2                          **(March 23, 2012)**

3           (The following proceedings were held in open court.)

4           **THE COURT:**  Good morning everybody.  Have a seat.

5                  Let's see.  We are going to give Rob Gasaway the

6      morning's prize for the last e-mail transmitted before the

7      conference starts, 9:24 a.m.  Congratulations.

8           **MR. HAYCRAFT:**  Did you read it?

9           **THE COURT:**  I did.  Well, I scanned it.

10                 Can phone participants hear us okay?

11          **UNKNOWN SPEAKER:**  Your Honor, is it possible to make

12     you any louder?

13          **THE COURT:**  To make me any louder?

14          **UNKNOWN SPEAKER:**  That works.

15          **THE COURT:**  Usually I don't get that request.

16                 Well, let's get going.  BOP and capping stack

17     issues.  We understand from Captain Englebert that her real

18     concern here is that the capping stack contains approximately

19     1,000 gallons of fluid.  That seems to be her concern.  So I

20     was wondering whether Transocean and BP could agree to move the

21     capping stack perhaps to TO's yard and we can work things out

22     from there?

23                 What do you think, Rob?

24          **MR. GASAWAY:**  Good morning, Your Honor.  Rob Gasaway

25     for BP.

1              **THE COURT:**  Good morning.

2              **MR. GASAWAY:**  I had not heard before about the fluid

3    concern.

4              **THE COURT:**  We spoke to her yesterday afternoon.  I

5    just didn't get an e-mail out until 9:37.

6              **MR. GASAWAY:**  So you get the prize, Your Honor.

7              **THE COURT:**  No, I didn't get an e-mail out.

8              **MR. GASAWAY:**  We had not heard about the fluid issue

9    and that concern.  What I would like to do is three things in

10   the next week, if we could.

11             Number one, let us follow up on what the fluid

12   issue is and the options for addressing it.

13             Number two, following up on last week's

14   conference, Kerry and Mr. Baay and David Grassmick and I have

15   talked, and we are putting together the paperwork that goes to

16   ownership.  So I think we will be in a position to know where

17   that is.

18             The third thing that I was hoping we could get

19   some clarity on was just the Department of Justice's position,

20   not today but maybe by next week.  As we had understood it, the

21   Department of Justice was interested in keeping the capping

22   stack in Court possession for some time and certainly beyond

23   the start of hurricane season in June, as the Court described

24   last week.

25             I don't know if the Department of Justice's

1  position has changed since our understanding.  Your Honor, I

2  don't know if we were confused as to that understanding, but

3  just maybe by next Friday Mr. O'Rourke or somebody can tell us

4  what their position is as to when the capping stack would be

5  appropriately moved from Court possession into either TO or

6  BOP's possession, just get some clarity on that.

7       **THE COURT:**  I guess our fourth option is if they want

8  to maintain control of it, then we think about costs and we

9  also think about whether we can drain the liquid.

10      **MR. GASAWAY:**  Exactly.  That would make sense,

11  Your Honor.

12      **THE COURT:**  So those are our options.

13           Steve O'Rourke, I take it you want a week to

14  think about that?

15      **MR. O'ROURKE:**  Yes, Your Honor.

16      **THE COURT:**  Thank you.

17           Who wants to give us an update on the

18  Halliburton computer issue?  By the way, I note Mr. Godwin's

19  absence.

20      **MR. YORK:**  That is correct, Your Honor.  He is out of

21  town today.

22      **THE COURT:**  Out of New Orleans today.

23      **MR. YORK:**  Out of one of the towns in which we have

24  been operating from.  Alan York for Halliburton.

25           Your Honor, my understanding is that

1  Captain Englebert has forwarded a list of files to both BP and
2  Halliburton.  There's a conference call scheduled for next
3  Thursday with the parties to go over those files.
4          **THE COURT:**  Good.  So we are progressing.  Thank you.
5              Next up on my agenda, at least, is Woods Hole
6  and whether we have made any progress on that.  Notice that I
7  moved that forward in case she was on the phone today.
8          **MR. CHAKERES:**  Yes, Your Honor.  I do not believe
9  that counsel for Woods Hole is on the phone.  My understanding
10  from the Coast Guard is they are making every effort to
11  complete their review today, which would enable the production
12  of those documents to BP.  I will provide the Court and BP with
13  additional guidance should I so hear.
14          **THE COURT:**  Question for you:  On the contract itself
15  with Woods Hole and the government, we glanced at it yesterday.
16  I didn't see any compensation other than reimbursement of
17  expenses.  Is that correct?  In other words, it was a
18  noncompensated contract other than reimbursement of expenses?
19          **MR. CHAKERES:**  Your Honor, I'm actually not
20  intimately familiar with that contract or the circumstances of
21  compensation.  We can check on that.
22          **THE COURT:**  If you would check on that and just drop
23  me an e-mail because that might be something that we want to
24  consider when we look at the privilege issue.
25          **MR. CHAKERES:**  Thank you.

1        **THE COURT:**  Okay.  Thanks.

2             Now Mr. Barr.  Good morning.

3        **MR. BARR:**  Good morning, Your Honor.

4        **THE COURT:**  How are you?

5        **MR. BARR:**  I'm doing great.

6        **THE COURT:**  Good.  Come on up.

7        **MR. BARR:**  It's never good to get summoned.

8        **THE COURT:**  You can bring the iPad.  Have you got any

9   new pics?

10       **MR. BARR:**  None that you would be interested in, I

11   don't think.

12       **THE COURT:**  I won't comment on that.

13             You were going to give us a draft of an order

14   relative to 30(b)(6) notices to third parties.

15       **MR. BARR:**  Yes.  I have drafted that, and then there

16   was some discussion about which third parties to send it to.  I

17   wasn't exactly sure and so I thought -- I was actually going to

18   bring it up.

19             I know it will be directed to Exxon and

20   Cudd Well Control.  I think it is primarily intended to be

21   directed at the source control issues.  So I have talked with

22   the United States this morning on ones they do not want on that

23   order that are primarily quantification or have quantification

24   issues, so that it's my understanding it will only be directed

25   to Exxon and Cudd Well Control after that discussion this

1  morning.

2           **THE COURT:**  Okay.  United States, you all agree with

3  that?

4           **MR. CHAKERES:**  Yes, Your Honor, we do.

5           **THE COURT:**  So, really, the only two parties that are

6  not involved in quantification are those two, and all the other

7  third parties are quantification.

8           **MR. BARR:**  That's been what's represented to me.

9           **THE COURT:**  Good.  I appreciate it, Brian.  Thank

10  you.

11           **THE COURT:**  Relative to the production of documents,

12  U.S. and BP production of documents, we did start our telephone

13  conferences Tuesday and Thursday with BP and the United States,

14  and I thought they went pretty well.  We are going to continue

15  with that in an effort to make sure that we get this taken care

16  of so that we can move forward hopefully expeditiously on

17  depositions, certainly the quantification depositions.

18           As to the 30(b)(6) notice of the United States,

19  I think we have reached agreement, and it probably needs to

20  just go on out, huh?

21           **MR. GASAWAY:**  Your Honor, Rob Gasaway for BP.  That

22  is our understanding.  We got the final changes requested in

23  from Nat Chakeres of the United States on Wednesday night.  We

24  agreed to them promptly.  As requested by the Court, we

25  circulated it yesterday afternoon to all parties.

1      We know of no other issues or outstanding issues
2  with that notice with those last changes to Topics 97 and 100.
3  We were thinking that, given the notice, if all parties could
4  just make sure that any final comments come in by close of
5  business today, that would be great.  If there are none, BP
6  would take on the task of going ahead and getting that out and
7  filing it, as was the practice in Phase One.

8      **THE COURT:**  Does that meet with everybody's
9  agreement, close of business today, any last tweaking?  Speak
10 now or forever hold your peace.  Good.  That's a big issue off
11 the list.  That's good.

12     So now comes the issue that there's been a lot
13 of chatter about, the 30(b)(6) notice of the deposition of BP.
14 Come on up, Rob.

15     You know, it seems to me that we don't need to
16 decide whether or not the notice was final.  Everybody seems to
17 want to tinker with it.  So let's tinker with it and get
18 ourselves a final and not try to retrace history.  I never find
19 that history helps us in our endeavors here.

20     So one of the big issues that I understand
21 Transocean especially has an issue with is whether or not we
22 have taken off the table the topic of source control and cap
23 and contain.  I haven't taken it off the list.  I think we
24 agreed last week that it would still be relevant to issues that
25 the states want to raise and issues the United States may want

1    to raise later on in the litigation.  So I want to be clear

2    that it's not off the table, but I don't consider it to be a

3    priority right this minute.  Is that a helpful clarification?

4         **MR. BAAY:**  That is helpful, Your Honor.  Thank you

5    very much.  We just didn't want our silence on the subject last

6    week to be interpreted as apathy on whether source control goes

7    forward or not.  It's very much our position that it does go

8    forward; maybe not with the priority that quantification gets,

9    but it does go forward.

10        **THE COURT:**  I would like to interpret silence as

11   acquiescence, but I guess I can't do that.  That would be nice.

12   So with that in mind, it seems to me, guys, that we try to get

13   ourselves a 30(b)(6) deposition notice of BP proper on

14   quantification issues.

15             I guess maybe I want to hear from the states and

16   the United States as to whether they want to include topics on

17   cap and contain and well control at this point or whether they

18   want to defer that to a later stage.

19        **MR. MAZE:**  Corey Maze for Alabama.  Two points.

20             Number one, the primary concern that we were

21   bringing up is not moving backwards.  At some point we want --

22   I have the pen ready.  I'm ready to start putting source

23   control topics on the calendar, but we wanted to make sure that

24   the most clear point was that we don't want to move back to

25   where we were in December.

1          We can work together as plaintiffs if you will

2    give us two weeks to discuss what, if any, source control

3    topics we do and don't want to move forward on.  I think as you

4    know, especially from Transocean, there are other defendants, I

5    think, that may want to do them all, so however that plays into

6    it.  But if you will give us two weeks, we will meet together

7    and get back to you with sort of a unified plaintiffs' idea of

8    what we want.

9          **THE COURT:**  Right.  Remember, Corey, that when you

10   say you have your pen ready and you are ready to pencil it in

11   that we need to consider document production.

12         **MR. MAZE:**  Absolutely.

13         **THE COURT:**  That's an across-the-board problem that

14   we are encountering.

15         **MR. MAZE:**  As far as Alabama is concerned, we have no

16   problem with quantification being prioritized in front.  That's

17   not a problem.

18         **THE COURT:**  Good.  You have your two weeks.  You want

19   us to defer this for two weeks --

20         **MR. MAZE:**  Yes.

21         **THE COURT:**  -- the discussion?

22         **MR. MAZE:**  I know we won't be here in two weeks, but

23   we will notify you in -- two weeks from today is Good Friday,

24   and you told me I couldn't come that day because your doors

25   would be closed.

1          **THE COURT:**  That is correct.  It's a New Orleans
2    holiday.
3          **MR. MAZE:**  Right.
4          **THE COURT:**  So I get the day off two weeks from
5    today.  That's great.
6               Rob, anything further on the quantification
7    topics that you want to talk about?
8          **MR. GASAWAY:**  Just, Your Honor, that my March 15
9    letter encapsulated all the edits that BP wanted to the
10   quantification topics just like the minor edits we were talking
11   about to the quantification topics for the U.S.  So in addition
12   to the source control track we are going to have discussion, I
13   guess, with Mr. Maze as the leader, we would also like to hear
14   from the United States as to the 15 quantification topics that
15   were laid out in my March 15 letter, are we agreed on those.
16   Again, if not, tell us where the substantive disagreements are.
17   We would just like to focus on substance, not process here.
18         **THE COURT:**  That seems fair.
19              Steve, do you think that by next week we will be
20   in a position to have heard from you guys on those 15
21   quantification topics?
22         **MR. O'ROURKE:**  Your Honor, this is Steve O'Rourke for
23   the United States.  Yeah, I think by next week we can certainly
24   talk about those 15 quantification topics.  Again, we thought
25   they were done.

1    **THE COURT:**  Well, if they are, that's great.  All you
2    need to say is they are done.
3    **MR. O'ROURKE:**  We also agree that the source control
4    should be a lower priority, as you just said.  That's fine by
5    us.  Indeed, maybe it should never happen.  That's the position
6    we have been taking.  I think for purposes of today, we'll just
7    say we'll go through the March 15 letter and by next Friday we
8    will tell you yes or no.
9    **THE COURT:**  Easily, if the topics are done and you're
10   happy with them, we'll move on.
11   **MR. O'ROURKE:**  Great.  Thank you.
12   **MR. FITCH:**  Judge, Tony Fitch for Anadarko.  I prefer
13   probably to lie in the weeds back there, but we are the other
14   target of a potential 30(b)(6) notice.  I have brought Corey up
15   to date on where my discussions regarding both source control
16   and quantification topics were with Brian, and I think that
17   Corey and I will chat early next week.  I didn't want you to
18   think that there was not an issue there.
19            Making the source control topics a lower
20   priority will at least defer the possibility of having to come
21   to court for some resolution.  I think it's another reason for
22   pushing those back as far as possible.  Not having been an
23   operator, not having been directly involved in source control,
24   we are in a somewhat different position, we suggest.  If we can
25   defer all of that, so much the better for all of us.

1          **THE COURT:**  We'll put that down.

2                   Corey, you will take the lead on looking at

3    that?

4          **MR. MAZE:**  Yes.

5          **THE COURT:**  Thank you.

6                   Are there any other 30(b)(6) notices out there

7    that I might be unaware of?

8                   Mr. Williamson, good morning.

9          **MR. WILLIAMSON:**  Your Honor, Jimmy Williamson for the

10   PSC.

11                  I guess just out of caution I want to tell the

12   Court that, yes, there are -- none that you're not aware of

13   that I know of, but I will just mention a couple.  There are

14   30(b)(6) notices outstanding to Wild Well, to Oceaneering --

15         **THE COURT:**  Those are the third parties.

16         **MR. WILLIAMSON:**  -- Schlumberger.  I'm sorry.  Maybe

17   I misunderstood the Court's comment.

18         **THE COURT:**  Cudd Well, ExxonMobil, Oceaneering, DNV,

19   Woods Hole, RRB, Wild Well, Schlumberger, Stress Engineering,

20   Pencor, and Statoil.

21         **MR. WILLIAMSON:**  Sure.

22         **THE COURT:**  Does that sound good?

23         **MR. WILLIAMSON:**  Yes.  As the Court knows, I think

24   the states --

25         **THE COURT:**  ADD Engineering.

1      **MR. WILLIAMSON:**  And at one time it was Statoil, but

2    I don't know anything about the Statoil.  The reason I rose is

3    I just wanted to make sure the Court knew those.  As the Court

4    knows based upon previous statements, I have not actively been

5    following up on that.  We have turned that information to the

6    U.S. and the states, and for that matter to the defendants

7    also, so that they can kind of take the lead in connection with

8    that.  If I misunderstood the Court's comments, I apologize.

9            **THE COURT:**  No, no.  You got it.

10            Steve, you were trying to tell me one more

11    deponent who was not on my list.

12            **MR. CHAKERES:**  The BP Institute, Your Honor.

13            **THE COURT:**  That one I'm totally unaware of.

14            **MR. CHAKERES:**  It's come up in previous conferences,

15    the BP Institute for Multiphase Flow.

16            One thing that we would ask, some of those

17    parties that we have been tasked with facilitating service and

18    negotiating the scope of the topics have been asking what they

19    should be expecting in terms of timing.  I think that some of

20    the topics to third parties have not been fully negotiated yet

21    in terms of the language of the topics.  So we may not be in a

22    position today, but we would like to keep that on the Court's

23    radar, once we figure out a time frame that works with the

24    document productions on the quantification depositions, to be

25    able to give some guidance to those third parties.

1        **THE COURT:**  We do need to do that.  It's a question

2   of what comes first, the chicken or the egg.  Why don't we

3   spend the next week circulating and trying to refine the

4   30(b)(6) notices for these third parties.  Let's get that done.

5   Then we can circulate it to them and see if they have any

6   problems.

7        **MR. CHAKERES:**  Thank you.

8        **THE COURT:**  Then we can concentrate on when we will

9   be ready to slot them into a schedule.

10        **MR. CHAKERES:**  Okay.

11        **THE COURT:**  Let's get the notices done.  If there are

12   any that are not done, let's circulate it to all.  Once we have

13   agreement in this group, we'll ask you to circulate it to the

14   third parties.  If there are no objections, then we will

15   consider them ready for scheduling.

16        **MR. CHAKERES:**  My understanding -- and I think

17   someone might correct us -- was that within this group, the

18   language for all of those I believe was complete, and they are

19   out there with the third parties at various stages of

20   completion.

21        **THE COURT:**  Okay.  So if they are all complete,

22   that's great.

23           Rob, do you know whether they are all complete?

24        **MR. GASAWAY:**  Well, your Honor, I don't.  In my very

25   early letter this morning, the 8:00 letter, I did suggest that

1    we do exactly this, that we do a survey of where these notices
2    stand.  Obviously, we heard from the PSC last week.  They are
3    going to be taking a much different role than we had expected.
4    They were on point for a lot of these.
5                What I would suggest is exactly what the Court
6    was suggesting.  Perhaps between the United States and BP, we
7    could do a survey of all the notices, where they stand as to
8    terms of language, where they stand in terms of service, where
9    they stand in terms of perhaps third parties objecting, etc.,
10   and break those down by quantification topics and source
11   control topics and be in a position next Friday to report to
12   the Court kind of globally, maybe with a spreadsheet, here's
13   where the third-party 30(b)(6) stands.
14             **THE COURT:**  If we agree that this group has finalized
15   the deposition notices and they have all been served, then we
16   need to contact the third parties.  If they have objections, we
17   need to resolve them.  If they don't have objections, then we
18   will consider them ready to be scheduled.  Okay?
19                Do most of these have document requests
20   associated with them, Rob?
21             **MR. GASAWAY:**  I would say most of them do.
22             **THE COURT:**  Let's add that to our survey, have we
23   gotten document production.  So, for instance, we know there is
24   an issue with Woods Hole and its document production.
25             **MR. GASAWAY:**  Correct, Your Honor.

1          **THE COURT:**  So let's add that column to the survey.

2     If there's no objection, have they produced their documents.

3          **MR. GASAWAY:**  That makes sense, Your Honor.

4          **THE COURT:**  Good enough.

5          **MR. O'ROURKE:**  Your Honor, Steve O'Rourke.  We'll do

6     that, what you just said, but I can't help feel we are getting

7     set up here.  We finalize our notice.  We propose our dates.

8     All of the sudden BP's notice isn't final anymore.  All of the

9     sudden the third-party notices aren't final anymore.  But we

10    will do what you say.

11         **THE COURT:**  Well, Steve, I hear you, but look, we are

12    trying really hard to work our way through the U.S. document

13    production issues.  You know, no blame anywhere, but we really

14    had been working toward an August 2011 completion of U.S.

15    document production, and I find myself at the end of March not

16    having completed U.S. document production.

17              So I hear you, but that's the elephant in the

18    room.  I feel as though I have to get a better handle on that

19    before we just go taking depositions because I can see what's

20    going to happen.  People are going to say, "Crucial documents

21    were produced after we got to take this deposition.  We want to

22    retake this deposition."  I'm trying to avoid that.

23         **MR. O'ROURKE:**  I understand that, Judge, but that

24    happens in every case.

25         **THE COURT:**  Oh, it does.

1      **MR. O'ROURKE:**  The third parties don't need our

2 documents.  As I have said before here, BP doesn't need our

3 documents, let alone our privilege documents, to prepare their

4 own witnesses for a 30(b)(6) of what that company knows, but I

5 will sit down now.

6      **THE COURT:**  Thank you.

7      We are going to make a land speed record.  Who

8 has other things to discuss today?  That wasn't a hand up, was

9 it?

10      It seems to me, guys, that it's been a sort of

11 uneasy kind of two to three weeks.  I don't know what's causing

12 it, whether I'm causing it, whether you're causing it, whether

13 the proposed class action settlement is causing it, but we have

14 managed to work our way through a lot of problems in this case.

15 It seems to me that we'll be able to work our way through this

16 and solidly into Phase Two shortly.  So let's not get

17 discouraged.  That's my pep talk for the day.

18      **MR. BAAY:**  You're not gloomy today.

19      **THE COURT:**  I'm not gloomy today.  I'm partly cloudy.

20      Is there anything else anybody else wants to

21 raise?  If not, why don't you all go get yourselves some

22 brunch.  Thank you very much.  Thanks, phone participants.

23      (Proceedings adjourned.)

24      * * *

25

1                        **CERTIFICATE**

2           I, Toni Doyle Tusa, CCR, FCRR, Official Court

3    Reporter for the United States District Court, Eastern District

4    of Louisiana, do hereby certify that the foregoing is a true

5    and correct transcript, to the best of my ability and

6    understanding, from the record of the proceedings in the

7    above-entitled matter.

8

9

10                              s/ Toni Doyle Tusa
                                Toni Doyle Tusa, CCR, FCRR
11                              Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25