UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179<br><br>SECTION: J |
| This Document Relates to: 12-00311 | Judge Barbier |
| | Mag. Judge Shushan |
| | **JURY TRIAL DEMANDED** |

### LIBERTY INSURANCE UNDERWRITERS, INC.'S ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES

Liberty Insurance Underwriters, Inc. (hereinafter referred to as "Liberty" or "Defendant") files this Answer and Affirmative Defenses to the Original Complaint of Cameron International Corporation (the "Complaint"). In support of this Answer, Liberty would respectfully show the Court as follows:

#### A. ADMISSIONS AND DENIALS

1. Defendant admits in part that this action relates to various lawsuits arising from the Gulf of Mexico oil spill, but Defendant denies that it disregarded any obligation under its contract of insurance to Cameron International Corporation ("Cameron") as stated in Paragraph 1 of the Complaint.

2. Defendant admits in part that Cameron reached a settlement with BP for $250 million. Defendant further admits in part that Cameron sought indemnity for the settlement from its insurers and that Liberty has not indemnified Cameron. Defendant denies all remaining allegations contained in Paragraph 2 of the Complaint.

3. Defendant admits in part that this action is based upon allegations of breach of contract and that Plaintiff seeks a declaratory judgment as stated in Paragraph 3 of the Complaint. Defendant denies that it breached the insurance contract or acted in bad faith and further denies that Plaintiff is entitled to any declaratory relief. Defendant denies all other allegations in Paragraph 3 of the Complaint.

4. Defendant admits the facts stated in Paragraph 4 of the Complaint.

5. Defendant admits that it is a corporation organized under laws of the State of Illinois. Liberty Insurance Underwriters Inc.'s principal place of business is Boston, Massachusetts. Liberty Insurance Underwriters Inc. trades under the name Liberty International Underwriters and Liberty Insurance Underwriters is not a legal entity, it is a marketing trade name for an internal division. Defendant denies all remaining allegations in Paragraph 5 of the Complaint.

6. In response to Paragraph 6 of the Complaint, Defendant admits that this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) based upon diversity jurisdiction as Plaintiff is a citizen of Delaware and Texas and Defendant is a citizen of Massachusetts and Illinois and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Defendant waives any objection to venue, but denies that a substantial part of the events giving rise to Plaintiff's claims occurred in the District as stated in Paragraph 7 of the Complaint.

8. Defendant admits the facts stated in Paragraph 8 of the Complaint.

9. Although Defendant is not in a position to know exactly how Cameron is "like" other companies, Defendant admits in part that Cameron's business faces certain risks related to oil and gas exploration. Pursuant to FRCP 8(b)(5), Defendant lacks the knowledge or

information sufficient to form a belief about the truth of the other allegations stated in Paragraph 9 of the Complaint but denies the remaining allegations.

10. Defendant admits in part that Cameron purchased insurance from Liberty and that Liberty has a website as stated in Paragraph 10 of the Complaint. The remaining allegations in Paragraph 10 are denied.

11. Defendant admits that Liberty issued to Cameron an excess insurance policy, Policy No. LQ1-B71-198583-046, which had effective dates of July 1, 2009 to July 1, 2010 (the "Policy"). In respect to the terms, conditions, limitations, and exclusions of the Policy, the Policy speaks for itself. Defendant admits that Cameron carried insurance with Liberty since July of 2006. Defendant denies that Cameron has never filed a claim with Liberty prior to the Deepwater Horizon incident, but admits that Cameron's prior claim was resolved within insurance limits under Liberty's coverage attachment point.

12. Defendant admits that Liberty issued Policy No. LQ1-B71-198583-046 to Cameron. In respect to the terms, conditions, limitations, and exclusions of the Policy, the Policy speaks for itself. Defendant admits that the Policy Limits of the Liberty Policy are $50 million subject to the terms, conditions, and limitations of the Policy. Because Plaintiff has only partially stated the terms and conditions of the policy and has omitted other essential terms and conditions, Defendant denies the remaining allegations as stated in Paragraph 12 of the Complaint.

13. Defendant admits that Liberty issued Policy No. LQ1-B71-198583-046 to Cameron. In respect to the terms, conditions, limitations, and exclusions of the Policy, the Policy speaks for itself. Defendant admits that Liberty Mutual, Illinois National Insurance Company, ACE American Insurance Company and XL Insurance Company Limited are below

Liberty in the insurance tower. Because Plaintiff has only partially stated the terms of the policy and has omitted other essential terms and conditions, Defendant denies the remaining allegations stated in Paragraph 13 of the Complaint.

14. Defendant denies the allegations stated in Paragraph 14 of the Complaint.

15. Defendant admits in part that Cameron purchased insurance from other carriers as stated in Paragraph 15 of the Complaint. Defendant cannot admit at this time that Plaintiff's allegations and incorrect conclusions of law about the interplay of the various insurance policies is accurate and as such denies the same.

16. Defendant admits the facts stated in Paragraph 16 of the Complaint.

17. Defendant admits the facts stated in Paragraph 17 of the Complaint.

18. Defendant admits the facts stated in Paragraph 18 of the Complaint.

19. Defendant admits the facts stated in Paragraph 19 of the Complaint.

20. Defendant admits the facts stated in Paragraph 20 of the Complaint.

21. Defendant admits that lawsuits against Cameron and others relating to the BP oil spill have been consolidated in the Oil Spill MDL pending before Judge Barbier as stated in Paragraph 21 of the Complaint. Defendant admits that various plaintiffs in the MDL seek various damages, *inter alia*, damages for lost revenue, wrongful death, environmental damages, personal and property damages.

22. Pursuant to FRCP 8(b)(5), Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations as stated in Paragraph 22 of the Complaint.

23. Pursuant to FRCP 8(b)(5), Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations as stated in Paragraph 23 of the Complaint.

24. Defendant denies the allegations stated in Paragraph 24 of the Complaint.

25. Defendant denies in part the allegations stated in Paragraph 25 of the Complaint but admits that Cameron gave notice of the claim on or about April 28, 2010.

26. Defendant denies the facts stated in Paragraph 26 of the Complaint.

27. Defendant denies the facts stated in Paragraph 27 of the Complaint.

28. Defendant admits the facts stated in Paragraph 28 of the Complaint.

29. Defendant denies the facts stated in Paragraph 29 of the Complaint.

30. Defendant denies the facts stated in Paragraph 30 of the Complaint.

31. Pursuant to FRCP 8(b)(5), Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning what Cameron believed as stated in Paragraph 31 of Plaintiff's Complaint. The remaining allegations contained in Paragraph 31 of the Complaint are denied.

32. Defendant admits in part that the Terms and Conditions of the two equipment purchase orders ("T&C") and the written Master Service Agreement between Cameron and Transocean ("MSA") contain indemnification provisions by which Transocean was to indemnify Cameron. Defendant further admits in part that Transocean disputed its obligation to indemnify Cameron, but denies all remaining allegations stated in Paragraph 32 of the Complaint.

33. Defendant denies that the indemnity provisions cited from the T&C are accurately stated in Paragraph 33 of the Complaint. The contract itself (the T&C) is the best evidence with respect to the true contents of the agreement entered between Cameron and Transocean.

34. Defendant admits that the indemnity provision cited in Paragraph 34 of the Complaint is accurately stated, but further states that the contract itself (the MSA) is the best evidence with respect to the true contents of the agreement entered between Cameron and Transocean.

35. Defendant admits that Cameron sought enforcement of its rights to indemnity in the Oil Spill MDL as stated by Plaintiff in Paragraph 35 of the Complaint. Defendant admits in part that Transocean agreed to honor its knock-for-knock indemnity obligation. Pursuant to FRCP 8(b)(5), Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations as stated in Paragraph 35 of the Complaint.

36. Defendant admits in part that Transocean denied that it had a direct duty to indemnify Cameron for pollution and related claims. Defendant further admits in part that the issue of indemnities was being litigated in the MDL. Defendant denies the remaining allegations as stated in Paragraph 36 of the Complaint.

37. Defendant denies Cameron had no indemnity available from Transocean at the time of its settlement with BP. Rather, Cameron unilaterally extinguished the existing and viable indemnity available to it under its contract with Transocean without the approval and over the objections of Liberty. Defendant denies the remaining allegations as stated in Paragraph 37 of the Complaint. In addition, Defendant denies that it denied coverage, denied coverage in bad faith and violated its contractual obligations to Cameron as alleged in bold and underlined text on page 11 of the Complaint.

38. Defendant admits in part that Cameron negotiated a settlement with BP with respect to the Deepwater Horizon incident. Defendant is unable to admit or deny the accuracy of Cameron's speculative statements quantifying its potential exposure to liability. Defendant denies the remaining allegations as stated in Paragraph 38 of the Complaint.

39. Defendant admits in part that Cameron sought funding for the Cameron – BP settlement from its insurers. Defendant further admits in part that Cameron and Liberty exchanged information during the litigation and settlement process. Defendant denies that it

breached any obligation owed to Cameron and denies the remaining allegations as stated in Paragraph 39 of the Complaint.

40. Defendant admits in part that BP's settlement demands included a waiver by Cameron of Cameron's rights to indemnification from Transocean and the Cameron insurer's waiver of rights to subrogation. The remaining allegations stated in Paragraph 40 of the Complaint are denied.

41. Defendant admits in part that BP and Cameron held several rounds of settlement negotiations, but Defendant denies the remaining facts stated in Paragraph 41 of the Complaint.

42. Defendant admits in part that oral arguments on the parties' cross motions for summary judgment on their indemnification claims was set for December 16, 2011. The remaining allegations stated in Paragraph 42 of the Complaint are denied.

43. Defendant admits in part BP and Cameron settled for $250 million and that BP conditioned settlement on Cameron's waiver of indemnifications rights against Transocean and Cameron's insurers' waiver of subrogation rights. The remaining allegations stated in Paragraph 43 of the Complaint are denied.

44. Defendant admits in part that Liberty objected to the non-monetary terms of the settlement. The remaining allegations stated in Paragraph 44 of the Complaint are denied.

45. Defendant denies the allegations stated in Paragraph 45 of the Complaint.

46. Defendant denies the allegation that it denied coverage as stated in Paragraph 46 of the Complaint. Specifically, Liberty did not deny coverage, but rather its excess policy does not attach to the settlement until all underlying insurance plus indemnities are exhausted. Defendant admits that the Other Insurance Condition provides in part that "[o]ther insurance includes any type of self-insurance, indemnification or other mechanism by which an Insured

arranges for funding of legal liabilities." Defendant denies the remaining allegations stated in Paragraph 46 of the Complaint.

47.     Defendant denies that its reliance on the Other Insurance Condition was pretextual. Defendant admits in part that BP made the release of existing indemnities a condition of settlement with Cameron. Defendant further admits in part that the claims for indemnification between the various parties to the Oil Spill MDL were being litigated. Defendant denies the remaining allegations stated in Paragraph 47 of the Complaint.

48.     Defendant denies the allegations stated in Paragraph 48 of the Complaint.

49.     Defendant denies the allegations stated in Paragraph 49 of the Complaint.

50.     Defendant admits in part that indemnities are commonplace in the oil and gas industry. Defendant denies that the Other Insurance Condition is an "exclusionary clause", but rather a Policy Condition. Defendant denies that the Other Insurance Condition is ambiguous. Defendant denies the remaining allegations stated in Paragraph 50 of the Complaint.

51.     Defendant denies the allegations stated in Paragraph 51 of the Complaint.

52.     Paragraph 52 of the Complaint does not require a response. To the extent a response is required, Defendant denies its position or interpretation of the Policy was unreasonable. The remaining allegations stated in Paragraph 52 of the Complaint are denied.

53.     Paragraph 53 of the Complaint does not require a response. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations as stated in Paragraph 53 of Plaintiff's Complaint.

54.     Defendant admits in part that Cameron and BP settled and that Cameron paid $50 million. Defendant denies that it acted in bad faith as alleged in Paragraph 54 of the Complaint. Defendant denies the remaining allegations stated in Paragraph 54 of the Complaint.

55. Defendant admits that Cameron and its insurers have paid BP $250 million, but denies the remaining allegations stated in Paragraph 55 of the Complaint.

56. Defendant denies the allegations stated in Paragraph 56 of the Complaint.

57. Defendant repeats and reincorporates by reference its admissions and denials as stated in Paragraphs 1 through 56 above.

58. Defendant admits the allegations stated in Paragraph 58 of the Complaint.

59. Defendant denies the allegations contained in Paragraph 59 of the Complaint.

60. Defendant denies the allegations contained in Paragraph 60 of the Complaint.

61. Defendant denies the allegations contained in Paragraph 61 of the Complaint.

62. Defendant repeats and reincorporates by reference its admissions and denials as stated in Paragraphs 1 through 62 above.

63. Defendant denies the allegations contained in Paragraph 63 of the Complaint.

64. As stated, Defendant denies the allegations contained in Paragraph 64 of the Complaint.

65. Defendant admits the allegations stated in Paragraph 65 of the Complaint.

66. Defendant admits the allegations stated in Paragraph 66 of the Complaint.

67. Defendant denies the allegations stated in Paragraph 67 of the Complaint.

68. Defendant repeats and reincorporates by reference its admissions and denials as stated in Paragraphs 1 through 67 above.

69. Defendant denies the allegations stated in Paragraph 69 of the Complaint.

70. Defendant denies the allegations stated in Paragraph 70 of the Complaint.

71. Defendant admits the allegations stated in Paragraph 71 of the Complaint.

72. Defendant denies the allegations stated in Paragraph 72 of the Complaint.

73. Defendant admits the allegations stated in Paragraph 73 of the Complaint.

74. Defendant denies the allegations stated in Paragraph 74 of the Complaint.

75. Defendant denies that Cameron is entitled to any of the damages and relief prayed for it its "Demand for Relief" including subparts A through H.

## B. AFFIRMATIVE DEFENSES

76. In addition to and without waiving the foregoing, Defendant herein repeats and incorporates Paragraphs 1 through 75 above of its answer and denials as though fully recited verbatim herein and asserts the following affirmative defenses as authorized by Fed. R. Civ. P. 8(c).

### First Affirmative Defense:
### Failure to State a Claim-Bad Faith

77. Defendant affirmatively pleads that Plaintiff has failed to state a claim for which relief may be granted for a cause of action for bad faith. Fed. R. Civ. P. 12(b)(6); *and see Maryland Insurance Co. v. Head Indus. Coatings and Servs., Inc.*, 938 S.W.2d 27, 28 (Tex. 1996, reh'g. overruled). Plaintiff has not formally pled such a cause of action and the references to "bad faith" in the Complaint fail to state a claim upon which relief may be granted.

### Second Affirmative Defense
### Policy Defenses

78. Plaintiff's claims are excluded or limited by applicable policy terms, conditions, and exclusions contained in the Policy, which are adopted herein as if fully plead *in extenso*. Relevant policy provisions include within limitation the following::

Excess Insurance Policy

Policy Number:   LQ1-B71-198583-046

Item 1:   Named Insured:
CAMERON INTERNATIONAL CORPORATION

Item 2:      POLICY PERIOD
             July 1, 2009 to July 1, 2010

             *****

Item 4:      LIMITS OF LIABILITY
             Our liability under this policy will not exceed the following limit: 100.00% percent of "loss" excess of the Underlying Insurance stated in Item 5 of the Declarations, but for no greater than:
             $50,000,000.00 – Each Occurrence
             $50,000,000.00 –Aggregate Limit (where applicable)

Item 5:      SCHEDULE OF UNDERLYING INSURANCE
             <u>First Underlying Insurance Policy</u>
             Insurer: Illinois National Insurance Company      Applicable Limit(s)
             Policy Number: 27471353                           $25,000,000.00 Each Occurrence
             Policy Period: 7/1/2009 to 7/1/2010               $25,000,000.00 Aggregate Limit
                                                                      (where applicable)

             Other Underlying Insurance-
             <u>(Excess of First Underlying Insurance Policy)</u>
             Insurer: Various Companies                        Applicable Limits(s)
             Policy Number: As per on file with company        $75,000,000.00 Each Occurrence
             Policy Period: 7/1/2009 to 7/1/2010               $75,000,000.00 Aggregate Limit
                                                                      (where applicable)

INSURING AGREEMENTS

  I.    COVERAGE

        We will pay on behalf of the Insured "loss" that results from an occurrence during the "policy period." We will pay "loss" in excess of the Underlying Insurance shown in Item 5. of the Declarations, but only up to an amount not exceeding our Limits of Liability shown in Item 4. of the Declarations. Except for any definitions, terms, conditions and exclusions of this policy, the coverage provided by this policy is subject to the terms and conditions of the First Underlying Insurance Policy, as shown in Item 5. of the Declarations.

                                        *****

  II.   LIMITS OF LIABILITY
                                        *****

        B. The Limits of Liability of this policy will apply as follows:

1. This policy applies only in excess of the Underlying Insurance shown in Item 5. of the Declarations.

2. The aggregate limit shown in Item 4. of the Declarations is the most we will pay for all "loss" that is subject to an aggregate limit provided by the First Underlying Insurance Policy. . .

3. Subject to Paragraph B.2. above, the occurrence limit shown in Item 4. of the Declarations is the most we will pay for all "loss arising out of any one occurrence to which this policy applies.

4. Subject to Paragraphs B.2 and B.3 above, if the limits of liability of the Underlying Insurance shown in Item 5. of the Declarations are reduced or exhausted solely by payment of "loss," such insurance provided by this policy will apply in excess of the reduced Underlying Insurance or, if all such coverage is exhausted, will apply as underlying insurance subject to the same terms, conditions, definitions and exclusions of the First Underlying Insurance Policy, except for any definitions, terms, conditions and exclusion of this policy.

III. DEFENSE

A. We will not be required to assume charge of the investigation of any claim or defense of any suit against you.

B. We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for "loss" under this policy. If we exercise such right, we will do so at our expense.

C. If the limits of liability of the Underlying Insurance shown in Item 5. of the Declarations are exhausted solely by payment of "loss", we shall have the right but not the duty to investigate and settle any claim or assume the defense of any suit which, in our opinion, may give rise to a "loss" under this policy. Such investigation or defense shall be at our own expense. We may, however, withdraw from the defense of such suit and tender the continued defense to you if our applicable Limits of Liability shown in Item 4. of the Declarations are exhausted by payment of "loss."

IV. DEFINITIONS

"Loss" means those sums which you are legally obligated to pay as damages, after making proper deductions for all recoveries and salvage, which damages are covered by the First Underlying Insurance Policy.

*****

V.  CONDITIONS

    E.    Notice of Occurrence:

*****

        3.    You and any other involved Insured must:

*****

            c)    cooperate with us in the investigation, settlement or defense of the claim of suit; and

            d)    assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

        4.    The Insureds will not, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense . . . without our consent.

*****

F.    Other Insurance

If other insurance applies to a "loss" that is also covered by this policy, this policy will apply excess of such other insurance. Nothing herein will be construed to make this policy subject to the definitions, terms, conditions and exclusions of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

Other insurance includes any type of self-insurance, indemnification or other mechanism by which an Insured arranges for funding of legal liabilities.

H.    When "Loss" is Payable

Coverage under this policy will not apply unless and until you or the insurer(s) of the Underlying Insurance shown in Item 5. of the Declarations has paid or is obligated to pay the full amount of such Limits of Liability.

When the amount of "loss" has finally been determined, we will promptly pay on your behalf the amount of "loss" covered under this policy.

*****

VI.   CONDITIONS [FIRST UNDERLYING POLICY]

O.   Transfer of Rights of Recovery

1. If any Insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The Insured must do nothing after loss to impair these rights and must help us enforce them.

79.   "Loss" is not payable under the Policy and the Policy has not attached because all underlying policy limits have not been exhausted and because the full amount of indemnification flowing to Cameron has not been determined and therefore the amount of "loss" has not been determined. Liberty does not waive any Policy provision and reserves the right to add additional Policy defenses as discovery in this action continues.

### Third Affirmative Defense
### No Attachment

80.   Defendant asserts that its indemnity obligation, if any, has not attached because all underlying insurance limits have not been fully exhausted and because the indemnity which may be available to fund Cameron's legal liabilities has not been determined and has been waived by the Plaintiff.

### Fourth Affirmative Defense
### Plaintiff's Cause of Action for Breach of Contract is Premature

81.   Plaintiff's cause of action for breach of contract is premature since Liberty's indemnity obligation has not attached at this time.

### Fifth Affirmative Defense
### Damage Limitation

82.   Plaintiff's damages, if any, are limited by the amount set forth in the policy limitations provisions of the applicable policy.

### Sixth Affirmative Defense
### No Duty To Defend And No Obligation To Pay Defense Costs

83. By the clear terms of the Policy, the Policy expressly negates any duty to defend. While the Policy gives Liberty the right to "associate" in the defense, it specifically negates any "obligation" to do so. Moreover, the Policy does not obligate Liberty to reimburse for defense costs.

### Seventh Affirmative Defense
### Attorney Fees and Costs Incurred In This Suit Are Not Recoverable

84. Plaintiff has failed to state a claim which entitles it to recovery of attorney fees and costs incurred in prosecuting of this suit.

### Eighth Affirmative Defense
### Failure to Satisfy Conditions Precedent

85. Defendant denies that all conditions precedent to suit have been met or have occurred. In particular, Defendant denies that Liberty's indemnity obligation has attached until all underlying insurance limits have been fully exhausted and until all indemnity obligations have been determined. Liberty further reserves the right to amend this answer to assert any additional defenses or any other applicable terms, provisions, exclusions, limitations, or conditions of the Policy that may become apparent during Defendant's ongoing investigation and discovery.

### Ninth Affirmative Defense
### Impairment of Subrogation Rights

86. Plaintiff is precluded from recovery under the policy because it extinguished Liberty's subrogation rights.

WHEREFORE, Defendant Liberty Insurance Underwriters Inc. prays that upon final trial and hearing hereof, Plaintiff takes nothing and that Liberty recover its costs, fees, and expenses,

and for such other further relief to it they may show itself justly entitled, both at law and in equity.

March 29, 2012

Respectfully submitted,

/s/ Judy Y. Barrasso
Judy Y. Barrasso, TA, 2814
Celeste, Coco-Ewing, 25002
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
504-589-9700 (Telephone)
504-589-9701 (Facsimile)

OF COUNSEL:
Christopher W. Martin
Federal I.D. 13515
Gary L. Pate
Federal I.D. 29713
MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
808 Travis, Suite 1800
Houston, Texas 77002
713-632-1700 (Telephone)
713-222-0101 (Facsimile)

Paul R. Koepff
Federal I.D. PK8452
CLYDE & CO US LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
212-710-3900 (Telephone)
212-710-3950 (Facsimile)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing has been served on Counsel for Cameron International Corporation by electronically uploading the same to Lexis Nexis file & Serve in accordance with Pretrial Order No. 12, on March 29, 2012.

/s/ Judy Y. Barrasso