# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * * * | MDL NO. 2179 |
| | | SECTION: J |
| | * | JUDGE BARBIER |
| THIS DOCUMENT RELATES TO ALL ACTIONS | * | MAGISTRATE JUDGE SHUSHAN |
| | * | |
| | * | |
| | * | |

**********************************************************************************

## BP'S INITIAL BRIEF AND DOCUMENT IDENTIFICATION
## REGARDING DELIBERATIVE PROCESS PRIVILEGE

Robert R. Gasaway
Jeffrey Bossert Clark
Aditya Bamzai
Kirkland & Ellis LLP
655 Fifteenth Street, NW
Washington, D.C.  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Joel M. Gross
Allison B. Rumsey
Anne P. Davis
Arnold & Porter LLP
555 12th Street, NW
Washington, D.C. 20004-1206
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

*Attorneys for BP Exploration & Production Inc.*

Date:  March 29, 2012

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................1

ARGUMENT .....................................................................................................................3

I.     The Deliberative Process Privilege Does Not Apply To The Documents That BP Has Identified For *In Camera* Review...................................................3

       A.    The Identified Documents Are Not "Predecisional." ...............................................4

       B.    The Identified Documents Are Not "Deliberative." ................................................7

II.    Fundamental Fairness And BP's Need For Free And Open Discovery Overcome Any Deliberative Process Privilege Claim In This Case..................................10

       A.    The United States' Role In This Litigation Is Significant. ....................................11

       B.    The Challenged Documents Are Of Clear Relevance To BP's Defense. ................................................................................................................12

       C.    This Litigation Is Significant and Serious. ..........................................................13

       D.    The Evidence Sought Cannot Be Obtained From Other Sources. .........................13

       E.    Disclosure Will Promote — Not Inhibit — The United States' Scientific Consultative Process.............................................................................13

CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Batton v. Evers*,
   598 F.3d 169 (5th Cir. 2010)..............................................................................................7

*Branch v. Phillips Petroleum Co.*,
   638 F.2d 873 (5th Cir. 1981)...........................................................................................2, 8

*CNA Fin. Corp. v. Donovan*,
   830 F.2d 1132 (D.C. Cir. 1987) .........................................................................................9

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ...........................................................................................3

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ..........................................................................................................14

*Dow Jones & Co., Inc. v. Dep't of Justice*,
   917 F.2d 571 (D.C. Cir. 1990) .........................................................................................10

*EEOC v. California Psychiatric Transitions*,
   258 F.R.D. 391 (E.D. Cal. 2009)......................................................................................12

*EEOC v. Citizens Bank & Trust Co.*,
   117 F.R.D. 366 (D. Md. 1987) .........................................................................................12

*EEOC v. Greater Metroplex Interiors, Inc.*,
   No. 3-08-CV-1362-P, 2009 WL 412934 (N.D. Tex. Feb. 17, 2009) ........................................12

*EPA v. Mink*,
   410 U.S. 73 (1973) ..............................................................................................................8

*FDIC v. Hatziyannis*,
   180 F.R.D. 292 (D. Md. 1998) .........................................................................................12

*Federal Sav. & Loan Ins. Corp. v. Schoenberger*,
   No. 89–2756, 1990 WL 130641 (E.D. La. Aug. 30, 1990)...................................................11

*Greenpeace v. National Marine Fisheries Serv.*,
   198 F.R.D. 540 (W.D. Wash. 2000)................................................................................5, 9

*Gulf Prod. Co. v. Hoover Oilfield Supply*,
   No. 08–5016, 2011 WL 1321607 (E.D. La. Apr. 4, 2011) ...................................................3

*In re Franklin Nat'l Bank Sec. Litig.*,
   478 F. Supp. 577 (E.D.N.Y. 1979)...................................................................................11

*In re Subpoena Served Upon the Comptroller of the Currency*,
    967 F.2d 630 (D.C. Cir. 1992) ...................................................................... 10

*McMillan v. United States (In re APCO Liquidating Trust)*,
    420 B.R. 648 (Bankr. M.D. La. 2009) .......................................................... 12, 13

*Missouri Coalition for Env't Found. v. U.S. Army Corps of Eng'rs*,
    542 F.3d 1204 (8th Cir. 2008) ........................................................................ 7

*Mobil Oil Corp. v. Dep't of Energy*,
    520 F.Supp. 414 (N.D.N.Y. 1981) ................................................................. 9

*Morley v. CIA*,
    508 F.3d 1108 (D.C. Cir. 2007) ..................................................................... 4

*National Ass'n of Home Builders v. Norton*,
    309 F.3d 26 (D.C. Cir. 2002) ......................................................................... 9

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ....................................................................................... 3

*Pacific Gas & Elec. Co. v. United States*,
    70 Fed. Cl. 128 (Fed. Cl. 2006) ..................................................................... 2, 3

*Parke, Davis & Co. v. Califano*,
    623 F.2d 1 (6th Cir. 1980) .............................................................................. 6

*Petroleum Info. Corp. v. U.S. Dep't of Interior*,
    976 F.2d 1429 (D.C. Cir. 1992) ..................................................................... 8

*Playboy Enters. v. Dep't of Justice*,
    677 F.2d 931 (D.C. Cir. 1982) ....................................................................... 5, 6, 9

*Seafirst Corp. v. Jenkins*,
    644 F. Supp. 1160 (W.D. Wash. 1986) ......................................................... 6

*Senate of the Commonw. of Puerto Rico on Behalf of*
    *Judiciary Comm. v. U.S. Dept. of Justice*,
    823 F.2d 574 (D.C. Cir. 1987) ....................................................................... 4, 8

*Smith v. FTC*,
    403 F. Supp. 1000 (D. Del. 1975) .................................................................. 7

*United States v. Ernstoff*,
    183 F.R.D. 148 (D.N.J. 1998) ........................................................................ 12

*Vaughn v. Rosen*,
    523 F.2d 1136 (D.C. Cir 1975) ...................................................................... 5

*Wilderness Soc'y v. U.S. Dep't of Interior*,
    344 F. Supp. 2d 1 (D.D.C. 2004) ................................................................... 5

iii

**Statutes**

CWA Section 311(b)(7)(A) ......................................................................................................... 12

**Other Authorities**

FRTG March 2011 Report ......................................................................................................... 12

Hugh Gauch, THE SCIENTIFIC METHOD IN PRACTICE (2003) ....................................................... 13

## INTRODUCTION

On August 2, 2010, the United States announced its "ground truth" factual assessment of the amount of oil that had flowed from the riser of the *Deepwater Horizon* during the recent oil spill. This estimate of 4.9 million barrels (+/- 10%) was developed by a collaboration of scientists drawn from various institutions and disciplines.

Despite the United States' declaration that it was "ground truth," the August 2 estimate was in fact the fourth official estimate to be released by the United States' Flow Rate Technical Group ("FRTG") since the *Deepwater Horizon* oil spill had begun. The FRTG's prior estimates of flow, each of which consolidated a number of individual measurements by different scientists, suggested a lower measured flow rate than the August 2 "ground truth" estimate. In reaching this new and higher estimate of the size of the oil spill, the United States relied on the work of a Science Team that included scientists drawn from United States Department of Energy National Labs (Sandia, Los Alamos, Lawrence Livermore) and the FRTG, a group headed by Dr. Marcia McNutt of the United States Geological Survey. The FRTG in turn consisted of scientists from a variety of institutions enlisted by the United States to employ different methodologies to determine the discharge from the oil spill.

Now, having publicly stated a "ground truth" factual estimate that embraces a higher *post hoc* discharge figure than the contemporaneous assessments would suggest, it seems that the United States is trying to invoke the "deliberative process" privilege to protect documents that appear to relate, among other things, to its various prior flow rate measurements and calculations. Of the very large number of documents the United States has tried to protect under the guise of the deliberative process privilege (more than 80,000 in all), BP has tentatively identified more than 10,000 that, based upon the descriptions provided in the government's

privilege logs and the identity of the governmental entity that withheld the document appear to relate to flow rate issues, including the work of the FRTG and/or United States Science Team.

As the Court is aware, BP's ability to identify and challenge particular documents has been affected by the United States' failure to satisfy the procedural requirements for invoking the deliberative process privilege.  Specifically, the United States has not yet, *for each document withheld* under the privilege, submitted a declaration by the head of the agency claiming the privilege that contains particular descriptions of the material withheld and "precise and certain" reasons for the agency's need to maintain secrecy.  *See Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 882-83 (5th Cir. 1981); *Pacific Gas & Elec. Co. v. United States*, 70 Fed. Cl. 128, 135 (Fed. Cl. 2006).  Nonetheless, and with agreement of the parties, this Court established a multi-step process for testing the United States' expansive deliberative process privilege claims.  This brief, together with the attached selection of 100 documents identified for further scrutiny, is the first step in that process.  (*See* Attachment A.)  It bears mentioning, however, that the burden remains on the United States to identify each purported act of "policymaking" to which it claims the privilege applies.

Although BP, without benefit of the required declarations, cannot possibly understand the particular content of the withheld documents, what is clear even from the logs provided is that the United States is using a privilege intended to protect discussions and deliberations in advance of *policy* determinations to shield documents reflecting discussions and deliberations concerning a *factual* issue, namely, the amount of oil discharged during the spill.  For reasons set forth below, BP submits that the United States' invocation of the deliberative process privilege is inappropriate as to documents related to the estimation of flow rate and respectfully requests the Court to order the prompt production of such documents.

## ARGUMENT

It is well-established that, in order to invoke the deliberative process privilege, the United States must show that a document is both "predecisional" and "deliberative."  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975); *see also Gulf Prod. Co. v. Hoover Oilfield Supply*, No. 08–5016, 2011 WL 1321607 at *5 (E.D. La. Apr. 4, 2011) (Roby, M.J.) (*quoting Pacific Gas & Elec. Co.*, 70 Fed. Cl. at 133).  The United States bears the burden of making this showing.  *See, e.g.*, *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) ("the agency has the burden of establishing what deliberative process is involved, and the role played by the documents in issue in the course of that process").  It cannot meet that burden here for the documents that BP has identified for the Court's *in camera* review, because the documents are neither (1) "predecisional" (in that they do not relate to any policy decision adopted by the United States), nor (2) "deliberative" (in that they appear to contain purely factual, rather than policy-oriented, information).  And even if any given one of the documents were deemed both "predecisional" and "deliberative," the United States' deliberative process privilege can be outweighed by a litigant's (such as BP's) need for the documents, particularly where (as here) the United States itself has initiated a lawsuit and put the factual issues over which it claims privilege in play.

I. **The Deliberative Process Privilege Does Not Apply To The Documents That BP Has Identified For *In Camera* Review.**

For many, if not most, of the documents over which the United States has asserted the deliberative process privilege, the United States has made no showing whatsoever that the document is "predecisional" and "deliberative."  BP believes that the United States can do neither.  To be sure, the United States' failure to provide the requisite declarations supporting privilege makes it difficult at this stage to prove that no privilege could apply to these

documents.  Nevertheless, based on the information that BP possesses, it is already clear that the United States' assertion of the deliberative process privilege is far more expansive than what the applicable cases can support.

### A.  The Identified Documents Are Not "Predecisional."

To establish that a document is predecisional, the United States must identify the decisional process for which the agency prepared the document and show that the document encompasses internal opinions, evaluations, or recommendations antecedent to the outcome of that decisional process.  *See Senate of the Commonw. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dept. of Justice*, 823 F.2d 574, 585-86 (D.C. Cir. 1987).  As then-Judge Ruth Bader Ginsburg explained in *Senate of the Commonwealth of Puerto Rico*, "[a] document is predecisional if it precedes, in temporal sequence, the decision to which it relates.  Accordingly, to approve exemption of a document as predecisional, a court must be able to pinpoint an agency decision or policy to which the document contributed."  *Id.* at 585 (internal quotation marks and citations omitted).

Here, the United States has not yet identified any specific policy decision, or policymaking process, to which the withheld documents contributed.  That failure — unless remedied by the United States' declarations and future pleadings — would be fatal in itself, because the United States' "failure to specify the relevant final decision constitutes a sufficient ground" for rejecting the invocation of the privilege.  *Id.* ("We search in vain through the supporting material submitted by the DOJ for any identification of the specific final decisions to which the advice or recommendations contained in the withheld documents contributed."); *see also Morley v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007) ("The CIA has provided no hint of a final agency policy its 'predecisional' material preceded."); *Wilderness Soc'y v. U.S. Dep't of*

*Interior*, 344 F. Supp. 2d 1, 12 (D.D.C. 2004) (rejecting invocation of privilege when court could not "clearly identify an agency decision to which the advice, recommendations, thoughts and opinions contained in the withheld documents contributed").

BP assumes that the United States will claim that the "final decision" at stake here was determination of the proper quantity of oil discharged during the oil spill.  That factual determination, however, does not make the FRTG report a "final decision" within the scope of the deliberative process privilege.  Unlike "final decisions" such as the adoption of internal agency policy, the decision to prosecute, or the promulgation of an agency rule, the FRTG's final report (and presumably its internal discussions) involved technical and factual determinations about the estimate of the flow of oil.  Such internal debate or discussions among United States officials about the quantity of oil arising from the spill is not reflective of a *policy*making process — it is simply a debate about what is essentially a *factual* determination.  Factual determinations of this nature are quintessentially outside the scope of the deliberative process privilege.  *See Playboy Enters. v. Dep't of Justice*, 677 F.2d 931, 935 (D.C. Cir. 1982) (rejecting invocation of privilege where "the only mission of the task force was to investigate the facts surrounding certain events") (internal quotations omitted); *Vaughn v. Rosen*, 523 F.2d 1136, 1145 (D.C. Cir 1975) (evaluation reports that merely provide observations or raw data "are not themselves a part of the decisional process").

Under this approach, scientific conclusions and expressions of expert opinion or professional judgment garner no automatic protection under the privilege — they must relate to the exercise of a specific agency policy decision to be shielded from disclosure.  *Greenpeace v. National Marine Fisheries Serv.*, 198 F.R.D. 540, 545 (W.D. Wash. 2000) (finding privilege did not apply where fact-based scientific conclusions were "unrelated to any discretionary policy-

making"); *see also Parke, Davis & Co. v. Califano*, 623 F.2d 1, 6 (6th Cir. 1980) (expert opinions of agency scientists and medical personnel applying FDA regulations were unconnected to policy decisions of agency and hence not protected); *Seafirst Corp. v. Jenkins*, 644 F. Supp. 1160, 1163 (W.D. Wash. 1986) (expressions of expert opinion unrelated to policy decision not protected).

These cases firmly indicate that the United States' invocation of the deliberative process privilege here sweeps too broadly.  To be sure, BP has no quarrel with the United States' argument that internal deliberations about, for example, the promulgation of proposed rules are "predecisional" within the meaning of the privilege.  *See, e.g.*, IMV874-055763-814 (email re "Draft Proposed Rule titled Rights-of-use and Easements for Oil and Gas Operations on the Outer Continental Shelf").   But the United States' withholding of numerous email communications that include FRTG members has no basis in the law.  *See, e.g.*, IGS606-045905 (email between Ira Leifer and Steven Wereley, two non-government employee members of the FRTG described as "Email re Kink plume Estimated Flow of 48 cm/s"); IGS635-004385-86 (email from Steven Wereley to other members of FRTG described as "Email re pressure-based Flow Calcs").  The FRTG had no agency *policy*making authority — it was a group of non-government scientists charged with a factual determination concerning quantification of flow during the spill.  There is therefore no basis for the United States' claim that communications that include FRTG members reflect internal policymaking.  *See Playboy Enters.*, 677 F.2d at 935.

Moreover, many of the challenged documents do not relate to any United States function at all.  Some appear to discuss a series of articles published by FRTG director Marcia McNutt in the publication *Proceedings of the National Academy of Sciences*.  *See, e.g.*, NOA020-002795-

98 (email from M. McNutt to employees at Departments of Interior and Commerce, "Email re Comments on Peer Reviewed Flow Rate Study.").  Others relate to third-party flow estimates by non-government scientists that were not procured by the United States, but which the United States later endorsed.  For example, emails between Marcia McNutt and Timothy Crone, a scientist from Columbia University who independently estimated flow and was never a member of the FRTG, have been withheld from production.  It is difficult to conceive how such discussions could possibly reflect *internal* agency policymaking or decisions.  *See, e.g.*, IGS606-048343-44 (email from Timothy Crone, Columbia University, to Marcia McNutt described as "Email re Flow Rate Paper").

> ### B.    The Identified Documents Are Not "Deliberative."

Even if the United States could show that the identified documents related to a particular "final decision," it has the burden of showing that those documents are deliberative, rather than merely factual or observational — or to the extent that any particular document contains both deliberative and factual material, the United States has the burden of showing the impossibility of extricating unprotected factual portions of documents from those portions that may be protected.  *See Smith v. FTC*, 403 F. Supp. 1000, 1018 (D. Del. 1975); *see also Batton v. Evers*, 598 F.3d 169, 183 (5th Cir. 2010) (remanding for the agency to provide "at least the minimal information necessary" to make a determination whether documents contain non-privileged factual information); *Missouri Coalition for Env't Found. v. U.S. Army Corps of Eng'rs*, 542 F.3d 1204, 1212 (8th Cir. 2008) ("The agency has the burden to show that the exempt portions of the documents are not segregable from the non-exempt material.").  It cannot meet that burden here.

A "deliberative" document contains materials that "bear on the formulation or exercise of agency policy-oriented *judgment*" because the deliberative process privilege "is centrally concerned with protecting the process by which *policy* is formulated." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992). The document must be "part of the agency give-and take . . . by which the decision itself is made. The agency must establish what deliberative process is involved and the role played by the documents in issue in the course of that process." *Commonw. of Puerto Rico*, 823 F.2d at 585. Hence, under the privilege, "factual information generally must be disclosed, but materials embodying officials' opinions are ordinarily exempt." *Petroleum Information Corp.*, 976 F.2d at 1434 (citing *EPA v. Mink*, 410 U.S. 73, 87-91 (1973)). To be sure, "[t]o the extent that predecisional materials, even if 'factual' in form, reflect an agency's preliminary positions or ruminations about how to exercise discretion on some policy matter, they are protected" by the deliberative process privilege. *Id.* at 1435. But "when material could not reasonably be said to reveal an agency's or official's mode of formulating or exercising *policy*-implicating judgment, the deliberative process privilege is inapplicable." *Id.* (emphasis added).

The *factual* flow rate work by the United States, and documents reflecting internal discussions about that work, are not privileged because they do not reflect "deliberations" or "policymaking" but rather concern a factual issue that is central to the case. For example, as then-Judge Ginsburg explained, the United States' "mission in creating [a databank to consolidate data from existing records], while challenging and important, is essentially technical and facilitative" — and thus not protected by the privilege. *Petroleum Info. Corp.*, 976 F.2d at 1437; *see also Mink*, 410 U.S. at 87-91; *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 882 (5th Cir. 1981) (the purpose of the deliberative process privilege "would not be frustrated by

disclosure of those memoranda consisting solely of factual material or of purely factual material contained within deliberative memoranda and separable from its context.  Thus, the courts have uniformly held that such purely factual information is not protected by the privilege."); *Playboy Enters.*, 677 F.2d at 935 ("[A] report does not become a part of the deliberative process merely because it contains only those facts which the person making the report thinks material.  If this were not so, every factual report would be protected as a part of the deliberative process."); *National Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002) (recognizing "a distinction between factual information, which generally must be disclosed, and materials embodying officials' opinions, which are ordinarily exempt") (quotations omitted).

The fact that scientific expertise is brought to bear on, among other things, raw data or observations "does not transform interpretations of facts into communications protected by the deliberative process privilege."  *Greenpeace*, 198 F.R.D. at 545 (quotation omitted); *see also Ethyl Corp. v. EPA*, 478 F.3d 47, 50 (4th Cir. 1973) (requiring disclosure of documents containing "scientific, medical, economic and technological data of a purely factual nature"); *Mobil Oil Corp. v. Dep't of Energy*, 520 F.Supp. 414, 417 (N.D.N.Y. 1981) (government study of a crude oil data system was not protected "because the only purpose of the study was to 'identify' and 'quantify,'" therefore the Court was "hard-pressed to view it as anything but purely factual material which, therefore, is not privileged").

These standards, moreover, are particularly heightened in the context of outside consultants.  The deliberative process privilege extends to such non-Government employees only in limited circumstances.  "[M]aterial derived from an outside expert" is not "inviolable"; to the contrary, "factual data, for example, are still susceptible to discovery."  *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1162 (D.C. Cir. 1987).  Only when outside experts function as

9

surrogate members of the agency and "submit recommendations as to decisions" does their work fall within the privilege. *Id.*; *see also Dow Jones & Co., Inc. v. Dep't of Justice*, 917 F.2d 571, 575 (D.C. Cir. 1990) (holding that outsiders' communications can fall within the privilege *only* "so long as those communications are part and parcel of *the agency's* deliberative process").

In this case, the function of the FRTG was to collect raw data and observations regarding the oil flow rate during the spill and to develop scientific flow rate estimates by bringing to bear the expertise of a number of different scientific experts.  Although the United States' descriptions are terse and generally uninformative, there is little doubt that many of the withheld communications dealt with objective factual information such as scientific flow rate estimates, exchanges of raw data, observations of the well head plume, and scientific methods used to estimate the gas-to-oil ratio.  *See, e.g.*, IGS648-009364-65 (email from Richard Camilli, Woods Hole Oceanographic Institute, to Marcia McNutt, DOI, described as "Email re update on GOR and Discussion of draft FRTG manuscript"); IGS648-009250 (email from Richard Camilli, Woods Hole Oceanographic Institute, to Marcia McNutt and Mark Sogge, DOI, described as "Discussion of Flow Rate Measurement"); SNL095-010748-49 (email from scientists at the Sandia laboratory described as "Email re 5% Flow Rate"); IMU016-000228-225 (described as "Draft briefing report re nodal analysis estimates of fluid flow from the BP Macondo M56 Well."); NOA017-002578-79 (described as "Email re Estimation of Flow Rate from Well Head).

## II.    Fundamental Fairness And BP's Need For Free And Open Discovery Overcome Any Deliberative Process Privilege Claim In This Case.

In all events, even if the United States could satisfy the burden of establishing that the challenged documents are "predecisional" and "deliberative," the deliberative process privilege is not absolute.  The deliberative process privilege is only a qualified privilege, and it can be overcome by a sufficient showing of need.  *See In re Subpoena Served Upon the Comptroller of*

*the Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992).  In each case, the court must weigh the benefit of government secrecy against the need for free and open discovery.  *See In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 582, 586 (E.D.N.Y. 1979).

In assessing the United States' interest in secrecy against the need for discovery, courts have identified various factors, which include: (1) the importance of the United States' role in the litigation; (2) "[t]he importance of the documents to the defense and their relevance"; (3) the seriousness of the litigation; (4) "[t]he availability of information on the same issue from a different source"; and (5) the possibility of future timidity by government employees.  *See Federal Sav. & Loan Ins. Corp. v. Schoenberger*, No. 89–2756, 1990 WL 130641 at *5 (E.D. La. Aug. 30, 1990) (citing cases).

Here, it is critical to bear in mind that the disclosures BP requests were not part of an attorney-directed or otherwise privileged workstream under the attorney-client privilege or work-product doctrine.  They are instead documents that were developed remote from any attorney involvement, were generated in the heat and light of a robust scientific debate, and are being sought for purposes of defending against litigation the United States itself has brought against BP.  In this case, all factors weigh heavily in favor of these documents' disclosure.

### A.    The United States' Role In This Litigation Is Significant.

The role of the United States as plaintiff in this case is a highly significant factor favoring disclosure of the challenged documents.  This is not the usual deliberative process case where a party challenges a government action or seeks documents under the Freedom of Information Act, and the United States tries to prevent its decisional process from being swept into the prying eyes of the public under circumstances it played no role in bringing about.

Here, quite to the contrary, it is the United States that has brought this case, seeking large monetary penalties against BP.  In cases such as this one where the United States plays such an active role "courts have severely restricted the use of the privilege by government agencies that are seeking affirmative judicial relief."  *United States v. Ernstoff*, 183 F.R.D. 148, 153 (D.N.J. 1998).  That is because "'[w]hen the government seeks affirmative relief, it is fundamentally unfair to allow it to evade discovery of materials that a private plaintiff would have to turn over.'"  *Id.* (quoting *FDIC v. Hatziyannis*, 180 F.R.D. 292, 293 (D. Md. 1998)); *see also EEOC v. California Psychiatric Transitions*, 258 F.R.D. 391, 398 (E.D. Cal. 2009) (same); *EEOC v. Citizens Bank & Trust Co.*, 117 F.R.D. 366 (D. Md. 1987) (same); *McMillan v. United States (In re APCO Liquidating Trust)*, 420 B.R. 648, 654-655 (Bankr. M.D. La. 2009) (same); *EEOC v. Greater Metroplex Interiors, Inc.*, No. 3-08-CV-1362-P, 2009 WL 412934 at *2 (N.D. Tex. Feb. 17, 2009) (Kaplan, M.J.) (same).

### B.     The Challenged Documents Are Of Clear Relevance To BP's Defense.

The challenged documents are central to this case, and this factor also weighs heavily in favor of disclosure.  Under Section 311(b)(7)(A) of the Clean Water Act (CWA), the maximum penalties the Court can assess are calculated based on the number of stock tank barrels of oil discharged.  The FRTG announced on August 2, 2010 that it had estimated a total flow of 4.9 million stock tank barrels of oil (which, after accounting for the 811,000 barrels captured via vessels on the surface without entering water, would translate to 4.1 million stock tank barrels discharged to water).  *See* FRTG March 2011 Report at 1-2.  As discussed, the FRTG described the August estimate as "ground truth" and has since supported its conclusion by reference to certain other oil flow rate estimates, including the Woods Hole estimate.  *Id.*  All documents that

12

reflect data underlying, debates over, criticism of, errors in, or otherwise elucidate flow rate facts and estimates are highly relevant to BP's defense of this litigation.

### C.      This Litigation Is Significant and Serious.

The ramifications of the United States' suit are significant and serious, as the United States is seeking very large civil penalties from BP. *See In re APCO Liquidating Trust*, 420 B.R. at 654-55 (finding that $10 million in remediation costs sought by the EPA "supports the conclusion that this is serious litigation" for purposes of assessing the need to produce materials otherwise protected by the deliberative process privilege).

### D.      The Evidence Sought Cannot Be Obtained From Other Sources.

To the extent that the challenged documents reflect raw data, or internal assessments and calculations stemming from such data, they are highly material to the defense of this case and could not be obtained otherwise.  As a result, this factor also tilts heavily in favor of disclosure of the challenged documents.

### E.      Disclosure Will Promote — Not Inhibit — The United States' Scientific Consultative Process.

As noted, it is the United States' burden to establish in the first instance that the withheld documents contributed to a specific decision or policy.  But even if the United States were able to make that showing (and BP believes it cannot) the United States would still have to establish that the disclosure of internal deliberations would so adversely affect United States employees and scientists that they would cease to engage in similar scientific consultations in the future.

But an important expectation of all scientists — one embedded in the very foundations of the scientific method — is that participants in scientific endeavors will share, scrutinize and debate basic scientific questions of data integrity and methodology.  The root foundations of scientific inquiry presume that data and calculations — and critical assessments of data and

calculations — will be available for careful scrutiny by other scientists, thus giving the scientific community at large an opportunity to verify results by attempting to reproduce them.  The basic norm of scientific practice is that all experimental results should be capable of verification by other scientists, by being reproduced by other scientists.  *See* Hugh Gauch, THE SCIENTIFIC METHOD IN PRACTICE 124-25 (2003).

Against this backdrop, the Court may rightly be skeptical of arguments that the government and private sector scientists who were members of the FRTG (or are members of national laboratories) should be shielded from peer review because their work undertaken remotely from any attorney involvement was done at the behest of the United States.  It is highly doubtful that government scientists would cease to engage in scientific analysis, or the peer review of scientific results, merely because their work is open to scrutiny by fellow scientists as all scientific work should be.  *Cf. Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593-94 (1993) ("[S]crutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected.").  Indeed, it is much more likely that government scientists would welcome such scrutiny.

*       *       *       *

The scientific documents BP seeks via this Motion simply are not the type of documents to which the deliberative process privilege properly applies.  The fundamental purpose of the privilege is to promote candid discussions among government employees in agency policymaking processes.  Here, however, the relevant context is not a policymaking one but one involving purely scientific (and non-legally privileged) debates over technical issues.  There is, therefore, no social or governmental interest in secrecy and certainly none that can displace the need for accurate judicial fact-finding in important litigation.

14

## CONCLUSION

For the foregoing reasons, BP respectfully requests that the Court order the United States to promptly produce the challenged documents.

Date: March 29, 2012

Respectfully submitted,

/s/ Don K. Haycraft

| | |
|---|---|
| Robert R. Gasaway | Don K. Haycraft (Bar #14361) |
| Jeffrey Bossert Clark | R. Keith Jarrett (Bar #16984) |
| Aditya Bamzai | Liskow & Lewis |
| Kirkland & Ellis LLP | 701 Poydras Street, Suite 5000 |
| 655 Fifteenth Street, NW | New Orleans, Louisiana 70139-5099 |
| Washington, D.C.  20005 | Telephone: (504) 581-7979 |
| Telephone: (202) 879-5000 | Facsimile: (504) 556-4108 |
| Facsimile: (202) 879-5200 | |

Joel M. Gross                    and
Allison B. Rumsey
Anne P. Davis                    Richard C. Godfrey, P.C.
Arnold & Porter LLP              J. Andrew Langan, P.C.
555 12th Street, NW              Kirkland & Ellis LLP
Washington, D.C. 20004-1206      300 North LaSalle Street
Telephone: (202) 942-5000        Chicago, IL 60654
Facsimile: (202) 942-5999        Telephone: (312) 862-2000
                                 Facsimile: (312) 862-2200

                                 Robert C. "Mike" Brock
                                 Covington & Burling LLP
                                 1201 Pennsylvania Avenue, NW
                                 Washington, DC 20004-2401
                                 Telephone: (202) 662-6000
                                 Facsimile: (202) 662-6291

*Attorneys for BP Exploration & Production Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 29th day of March, 2012.

/s/ Don K. Haycraft
Don K. Haycraft