UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**********************************************************

IN RE:  OIL SPILL BY THE
OIL RIG *DEEPWATER HORIZON*
IN THE GULF OF MEXICO ON
APRIL 20, 2010

                          CIVIL ACTION NO. 10-MD-2179 "J"
                          NEW ORLEANS, LOUISIANA
                          FRIDAY, MARCH 16, 2012, 9:30 A.M.

THIS DOCUMENT RELATES TO
ALL ACTIONS

**********************************************************

       TRANSCRIPT OF WORKING GROUP STATUS CONFERENCE PROCEEDINGS
              HEARD BEFORE THE HONORABLE SALLY SHUSHAN
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:


FOR THE PLAINTIFFS:    IRPINO LAW FIRM
                       BY:  ANTHONY IRPINO, ESQUIRE
                       2216 MAGAZINE STREET
                       NEW ORLEANS, LA  70130


                       WILLIAMSON & RUSNAK
                       BY:  JIMMY WILLIAMSON, ESQUIRE
                       4310 YOAKUM BOULEVARD
                       HOUSTON, TX  77006


                       LEVIN PAPANTONIO THOMAS MITCHELL
                       RAFFERTY & PROCTOR
                       BY:  BRIAN H. BARR, ESQUIRE
                       316 SOUTH BAYLEN STREET, SUITE 600
                       PENSACOLA, FL  32502

09:20AM

```
 1    APPEARANCES CONTINUED:

 2


 3    FOR THE FEDERAL
      GOVERNMENT INTERESTS: U.S. DEPARTMENT OF JUSTICE
 4                          ENVIRONMENTAL ENFORCEMENT SECTION
                            BY:  STEVEN O'ROURKE, ESQUIRE
 5                               SCOTT CERNICH, ESQUIRE
                            P.O. BOX 7611
 6                          WASHINGTON, DC  20044

 7


 8                          SENIOR LITIGATION COUNSEL FOR E-DISCOVERY
                            ENVIRONMENT & NATURAL RESOURCES DIVISION
 9                          U.S. DEPARTMENT OF JUSTICE
                            BY:  SARAH D. HIMMELHOCH, ESQUIRE
10                               A. NATHANIEL CHAKERES, ESQUIRE
                            P.O. BOX 7611
11                          WASHINGTON, DC 20044

12


13                          U.S. DEPARTMENT OF JUSTICE
                            TORTS BRANCH, CIVIL DIVISION
14                          BY:  STEPHEN G. FLYNN, ESQUIRE
                            POST OFFICE BOX 14271
15                          WASHINGTON, DC  20044

16


17    FOR STATE INTERESTS:  ALABAMA ATTORNEY GENERAL'S OFFICE
                            BY:  COREY L. MAZE, ESQUIRE
18                               WINFIELD J. SINCLAIR, ESQUIRE
                            500 DEXTER AVENUE
19                          MONTGOMERY, AL  36130

20


21    FOR THE STATE OF
      LOUISIANA:            KANNER & WHITELEY
22                          BY:  DOUGLAS R. KRAUS, ESQUIRE
                            701 CAMP STREET
23                          NEW ORLEANS, LA  70130

24


25
```

```
 1    APPEARANCES CONTINUED:

 2


 3    FOR BP AMERICA INC.,
      BP AMERICA PRODUCTION
 4    COMPANY, BP COMPANY
      NORTH AMERICA INC.,
 5    BP CORPORATION NORTH
      AMERICA INC.,
 6    BP EXPLORATION &
      PRODUCTION INC.,
 7    BP HOLDINGS NORTH
      AMERICA LIMITED,
 8    BP PRODUCTS NORTH
      AMERICA INC.:          LISKOW & LEWIS
 9                           BY:  DON K. HAYCRAFT, ESQUIRE
                             ONE SHELL SQUARE
10                           701 POYDRAS STREET
                             SUITE 5000
11                           NEW ORLEANS, LA  70139

12

13                           KIRKLAND & ELLIS
                             BY:  J. ANDREW LANGAN, ESQUIRE
14                                BARRY E. FIELDS, ESQUIRE
                                  RYAN S. BABIUCH, ESQUIRE
15                           300 N. LASALLE
                             CHICAGO, IL  60654
16

17
                             KIRKLAND & ELLIS
18                           BY:  ROBERT R. GASAWAY, ESQUIRE
                                  JOSEPH A. EISERT, ESQUIRE
19                                KAREN M. DeSANTIS, ESQUIRE
                             655 FIFTEENTH STREET, N.W.
20                           WASHINGTON, DC  20005

21

22

23

24

25
```

```
 1    APPEARANCES CONTINUED:

 2


 3    FOR TRANSOCEAN HOLDINGS
      LLC, TRANSOCEAN
 4    OFFSHORE DEEPWATER
      DRILLING INC., AND
 5    TRANSOCEAN DEEPWATER
      INC.:                    FRILOT
 6                             BY:  KERRY J. MILLER, ESQUIRE
                                    DAVID BAAY, ESQUIRE
 7                             ENERGY CENTRE, 36TH FLOOR
                               1100 POYDRAS STREET
 8                             NEW ORLEANS, LA  70163

 9

10                             MUNGER TOLLES & OLSON
                               BY:  GRANT A. DAVIS-DENNY, ESQUIRE
11                             355 SOUTH GRAND AVENUE, 35TH FLOOR
                               LOS ANGELES, CA  90071
12

13

14    FOR CAMERON INTERNATIONAL
      CORPORATION:             STONE PIGMAN WALTHER WITTMANN
15                             BY:  CARMELITE M. BERTAUT, ESQUIRE
                               546 CARONDELET STREET
16                             NEW ORLEANS, LA  70130

17

18    FOR HALLIBURTON
      ENERGY SERVICES,
19    INC.:                    GODWIN RONQUILLO
                               BY:  DONALD E. GODWIN, ESQUIRE
20                                  JENNY L. MARTINEZ, ESQUIRE
                                    STEFANIE K. MAJOR, ESQUIRE
21                                  LAUREN MITCHELL, ESQUIRE
                                    SEAN W. FLEMING, ESQUIRE
22                             RENAISSANCE TOWER
                               1201 ELM STREET, SUITE 1700
23                             DALLAS, TX  75270

24

25
```

```
1    APPEARANCES CONTINUED:

2

3                            GODWIN RONQUILLO
                             BY:  R. ALAN YORK, ESQUIRE
4                                 GWEN E. RICHARD, ESQUIRE
                             1331 LAMAR, SUITE 1665
5                            HOUSTON, TX  77010

6

7    FOR ANADARKO
     PETROLEUM CORPORATION,
8    ANADARKO E&P COMPANY,
     LP:                     KUCHLER POLK SCHELL
9                            WEINER & RICHESON
                             BY:  SARAH E. IIAMS, ESQUIRE
10                           1615 POYDRAS STREET, SUITE 1300
                             NEW ORLEANS, LA  70112
11

12
                             BINGHAM MCCUTCHEN
13                           BY:  WARREN A. FITCH, ESQUIRE
                             2020 K STREET, NW
14                           WASHINGTON, DC  20006

15

16   FOR MOEX OFFSHORE
     2007, LLC:              PILLSBURY WINTHROP SHAW PITTMAN
17                           BY:  STELLA PULMAN, ESQUIRE
                             2 HOUSTON CENTER
18                           909 FANNIN, SUITE 2000
                             HOUSTON, TX 77010
19

20
     FOR M-I L.L.C.:         MORGAN, LEWIS & BOCKIUS
21                           BY:  STEVEN LUXTON, ESQUIRE
                                  R. SEAN BRENNAN, JR., ESQUIRE
22                           1000 LOUISIANA STREET, SUITE 4000
                             HOUSTON, TX  77002
23

24
     ALSO PRESENT:           ROBIN HANGER, ESQUIRE
25                           DAHLIA FETOUH, ESQUIRE
                             THOMAS MARIANI, ESQUIRE
```

1    APPEARANCES CONTINUED:

2

3    OFFICIAL COURT REPORTER:     CATHY PEPPER, CRR, RMR, CCR
                                  CERTIFIED REALTIME REPORTER
4                                 500 POYDRAS STREET, ROOM HB406
                                  NEW ORLEANS, LA   70130
5                                 (504) 589-7779
                                  Cathy_Pepper@laed.uscourts.gov
6
     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
7    PRODUCED BY COMPUTER.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          **I N D E X**

2

3    AGENDA ITEMS                                          PAGE

4

5    PRESERVATION OF THE CAPPING STACK/OWNERSHIP ISSUE......   8

6    CAPTAIN ENGLEBERT'S INVOICE FOR MARCH..................  10

7    WHAT WE THINK PHASE TWO IS GOING TO LOOK LIKE..........  10

8    CAPTAIN ENGLEBERT REPORTS ON THE HALLIBURTON COMPUTER    24

9    PROTOCOL...............................................

10   DOCUMENT PRODUCTION BY THE UNITED STATES AND THE         25

11   COAST GUARD AND PRIVILEGE ISSUES, ETCETERA.............

12   WOODS HOLE............................................   29

13   SUSPEND FOR THE TIME BEING THE APRIL DEPOSITIONS.......  31

14   STRUCTURING THE 30(B)(6) PROCESS......................   32

15   30(B)(6) NOTICE TO BP.................................   32

16   30(B)(6) TOPICS FOR THE UNITED STATES' WITNESSES.......  39

17   THIRD-PARTY 30(B)(6)..................................   40

18   NATIONAL MARINE FISHERIES SERVICE.....................   43

19   EVERY SATURDAY IS GOING TO BE E-MAIL FREE.............   44

20

21

22

23

24

25

**P-R-O-C-E-E-D-I-N-G-S**

FRIDAY, MARCH 16, 2012

M O R N I N G   S E S S I O N

(COURT CALLED TO ORDER)


09:29AM   THE DEPUTY CLERK:  All rise.

09:29AM   THE COURT:  Good morning, everybody.  Have a seat.

09:30AM      Kerry, you haven't seen the handheld mic, have you?

09:30AM   MR. MILLER:  I sure haven't.

09:30AM   THE COURT:  We don't seem to be able to locate it.

09:30AM      Good morning, phone participants.

09:30AM   MS. HIMMELHOCH:  Good morning, Your Honor.

09:30AM   THE COURT:  How is everybody?  Happy Friday.

09:30AM      I see my friends in the back.  That's good.  I kept
09:30AM   thinking the numbers would be reduced, but I guess they are not,
09:30AM   right?

09:31AM      Let's get started on BOP and capping stack.  Could
09:31AM   we get an update, please, on where we stand on the preservation
09:31AM   of the capping stack/ownership issue.

09:31AM      Kerry, this would involve you.

09:31AM   MR. MILLER:  Thanks.

09:31AM   THE COURT:  You're welcome.

09:31AM   MR. MILLER:  We're still talking about Rob's letter from
09:31AM   last month.  I'm still trying to process all of those pages.

09:31AM 1          THE COURT:  So am I.

09:31AM 2          MR. GASAWAY:  Good morning, Your Honor.  Rob Gasaway for

09:31AM 3  BP.

09:31AM 4          THE COURT:  Good morning, Rob.

09:31AM 5          MR. GASAWAY:  It remains in dispute between Transocean

09:31AM 6  and BP who owns the capping stack.

09:31AM 7          We do have an arrangement with Captain Englebert

09:31AM 8  where there is no immediate need to move it from Michoud.  We, on

09:31AM 9  our side -- and you know Mr. Grassmick, who has been diligently

09:31AM 10 trying to track down some comprehensive group of documents that

09:32AM 11 we would be in a position to share that would help establish why

09:32AM 12 we think it's ours.

09:32AM 13         Candidly, we've got some, and not all, and that

09:32AM 14 process is continuing.  But our understanding from Transocean is

09:32AM 15 that Transocean continues to think it's theirs, and BP continues

09:32AM 16 to think it's ours, certainly.

09:32AM 17         THE COURT:  I assume, eventually, you'll come up with

09:32AM 18 that purchase order, right?

09:32AM 19         MR. GASAWAY:  We have some documentation, Your Honor,

09:32AM 20 but it was a very hectic period when that was being assembled.

09:32AM 21         THE COURT:  Yes, exactly.

09:32AM 22         As long as you all are communicating with

09:32AM 23 Captain Englebert, I know that she would like to get this

09:32AM 24 resolved before hurricane season.  That's her big issue.  So as

09:32AM 25 long as y'all are communicating, I'm okay.

09:32AM 1          MR. GASAWAY:  We'll put that on the agenda before

09:32AM 2  hurricane season.

09:32AM 3          THE COURT:  Good.  That starts --

09:32AM 4              Michael?

09:32AM 5          THE CLERK:  June 1st.

09:32AM 6          THE COURT:  -- June 1, hurricane season.  It's not far

09:33AM 7  away.

09:33AM 8              Thank you.

09:33AM 9          MR. GASAWAY:  You're welcome, Your Honor.

09:33AM 10         THE COURT:  Now, let's see.  We want to thank

09:33AM 11 Halliburton, who has processed Captain Englebert's invoice for

09:33AM 12 March.  Thank you.  BP and the US still remain outstanding, so

09:33AM 13 just a reminder.

09:33AM 14             I guess I wanted to follow up where we left off

09:33AM 15 last week, guys, on a discussion, just a general discussion of

09:33AM 16 what we think Phase Two is going to look like.

09:33AM 17             Mr. Barr, good morning.

09:33AM 18         MR. BARR:  Good morning, Your Honor.  Brian Barr for the

09:33AM 19 PSC.

09:33AM 20         THE COURT:  I understand you have a new picture; is that

09:33AM 21 correct?

09:33AM 22         MR. BARR:  I do have a new picture.  Would you like to

09:33AM 23 see it?

09:33AM 24         THE COURT:  Would you like to put it up on the screen?

09:34AM 25         MR. BARR:  He apparently was extremely surprised about

09:34AM 1    something, and I have no idea what, but --

09:34AM 2         THE COURT:  For the phone participants, we're looking at

09:34AM 3    Brian's baby boy, who looks shocked.  Cute.

09:34AM 4         All right.  So let's get an update, Brian, if any.

09:34AM 5         MR. BARR:  Well, we went back this weekend and did a lot

09:34AM 6    of work trying to determine what evidence we already have and

09:34AM 7    where we are.

09:34AM 8         After doing that, what I'll say is, after fully

09:34AM 9    analyzing the evidence obtained by the PSC during the course of

09:34AM 10   discovery to this point in the litigation, the PSC believes and

09:34AM 11   has concluded that it has obtained most, if not all, of the proof

09:34AM 12   necessary relevant to Phase Two issues.

09:34AM 13        We're continuing to examine, of course, the

09:34AM 14   evidence obtained to this point, and will inform the Court in the

09:35AM 15   unlikely event the PSC believes it requires time during the

09:35AM 16   upcoming Phase Two depositions.

09:35AM 17        Particularly, on quantification, while, perhaps,

09:35AM 18   you know, this issue is relevant to issues or claims of other

09:35AM 19   parties, the amount of oil released from the Macondo well, the

09:35AM 20   PSC does not believe, does not have a direct impact on the claims

09:35AM 21   brought by plaintiffs in the master complaints prepared by the

09:35AM 22   PSC.

09:35AM 23        THE COURT:  That's very clarifying.  Terrific.

09:35AM 24        Does anybody have questions or want to chime in on

09:35AM 25   what they think about Phase Two as it's affected as we go

09:35AM  1    forward.

09:35AM  2              I can see, Andy, that the answer would be yes.

09:35AM  3              MR. LANGAN:  What about source control and the PSC?

09:35AM  4              THE COURT:  Yes, source control.  Okay.  I've heard

09:36AM  5    Phase Two is what I've heard.

09:36AM  6              MR. BARR:  Well, I can address that a little further.

09:36AM  7              THE COURT:  Yes, sure.

09:36AM  8              MR. BARR:  We believe, as shown by the Court's most

09:36AM  9    recent overlap order, much of the Phase One discovery already

09:36AM 10    conducted is overlapped in the Phase Two issues, in that most of

09:36AM 11    the defense witnesses with primary authority over the source

09:36AM 12    control efforts were deposed in Phase One.

09:36AM 13              As a result of this discovery, the PSC has already

09:36AM 14    obtained virtually all or all of the proof it feels is necessary

09:36AM 15    regarding source control.  We will inform the Court of any time

09:36AM 16    we believe it requires on any specific Phase Two depositions, if

09:36AM 17    the need for such time becomes necessary.

09:36AM 18              THE COURT:  Andy, does that answer your question?

09:36AM 19              MR. LANGAN:  It's very helpful, Your Honor.

09:36AM 20              THE COURT:  Good.  Okay.

09:36AM 21              MR. LANGAN:  So it just reinforces what I was trying to

09:36AM 22    say over the phone last week, which is we think it looks very

09:36AM 23    different.

09:36AM 24              THE COURT:  Which is why you decided to come back to

09:36AM 25    court this week.

09:36AM 1          MR. LANGAN:  It's nice to be here, Your Honor.

09:37AM 2          MR. BARR:  With a tie on.

09:37AM 3          MR. LANGAN:  I see Mr. Maze rising.  All I want to say

09:37AM 4    about what the State of Alabama might say is -- and we can talk

09:37AM 5    about this if there is a dispute --

09:37AM 6          THE COURT:  Sure.

09:37AM 7          MR. LANGAN:  -- but it seems to us that the State of

09:37AM 8    Alabama's civil penalty claims under state law have been

09:37AM 9    dismissed.  It's possible they can be appealed some day, I guess.

09:37AM 10   That's not a basis in which to open up a whole new discovery

09:37AM 11   front that nobody else wants.

09:37AM 12         So we just think the case is going to look a whole

09:37AM 13   lot different, and that's what we'll tell Judge Barbier at the

09:37AM 14   appropriate time.

09:37AM 15         Thank you.

09:37AM 16         THE COURT:  Thank you, Andy.

09:37AM 17         MR. MAZE:  Corey Maze on behalf of the State of Alabama.

09:37AM 18   I'll probably speak a little on behalf of Louisiana, too.

09:37AM 19         I will not mention civil penalties.  We'll discuss

09:37AM 20   that when the time is right.

09:37AM 21         I will say that the PSC deciding that it does not

09:37AM 22   want to continue Phase Two source control or any other Phase Two

09:37AM 23   depositions is not the position of the states as of now.

09:37AM 24         I learned of this, this week.  Louisiana learned of

09:37AM 25   it about 10 minutes ago.  We would like time to discuss this

09:37AM 1    amongst ourselves, the PSC and the United States.

09:38AM 2            I will say as an initial thought, I don't think

09:38AM 3    that frustrating might be the right word, but the states went

09:38AM 4    through the entire Phase Two discovery process, and, to cut BP

09:38AM 5    short, when BP has not settled with Alabama or Louisiana, and we

09:38AM 6    have outstanding claims that we may or may not agree we have all

09:38AM 7    of the discovery that we want, when BP's position all along is,

09:38AM 8    we want everything so we can decide whether or not to go in a

09:38AM 9    certain way, we need time to sit back and think whether or not we

09:38AM 10   want to continue going forward with the claims that we have not

09:38AM 11   settled yet.

09:38AM 12           So, if we can ask for that time, that would be

09:38AM 13   appreciated.

09:38AM 14       THE COURT:  I don't think we're going to make any

09:38AM 15   decisions today.  I think we are all still in the process of

09:38AM 16   thinking about how things will shake out, and I'm just trying to

09:38AM 17   continue the discussion.

09:38AM 18       MR. MAZE:  I agree.

09:38AM 19       THE COURT:  So, I think it's helpful to know what the

09:38AM 20   PSC's position is.  Then that, again, causes you to think about

09:39AM 21   what your position is and how that affects you.

09:39AM 22       MR. MAZE:  I agree with everything you said.

09:39AM 23           The only other thing I will add is I think it makes

09:39AM 24   Mr. Gasaway's attempt to have us determine time allocations today

09:39AM 25   in his letter last night severely premature now.

09:39AM 1          THE COURT:  Severely?

09:39AM 2          MR. MAZE:  Yes.  Well, I mean, the PSC has a vast

09:39AM 3    majority of the time and now has said they don't want to go

09:39AM 4    forward, and the states have 20 and 40 minutes each.  So, from

09:39AM 5    our standpoint --

09:39AM 6          THE COURT:  We can rethink that, Corey.

09:39AM 7          MR. MAZE:  Right.  That's the only thing.  I think we

09:39AM 8    just need to put that off, too.

09:39AM 9          THE COURT:  I think we're going to, unfortunately, be

09:39AM 10   putting a lot off today.

09:39AM 11         MR. MAZE:  Agreed.

09:39AM 12         THE COURT:  That's not my preference, but I think that's

09:39AM 13   where we're headed today.

09:39AM 14             But one thing that I would like to continue to do

09:39AM 15   is to have everybody think about what our trial plan going

09:39AM 16   forward is going to look like.  It's on everybody's mind, and

09:40AM 17   we've got some serious discussion and thinking to do.

09:40AM 18         MR. MAZE:  Is it my understanding that we will not be

09:40AM 19   briefing at any time what we think the trial plan should look

09:40AM 20   like?

09:40AM 21         THE COURT:  No, I think we will be briefing it.  I just

09:40AM 22   don't know when.

09:40AM 23         MR. MAZE:  Okay.

09:40AM 24         THE COURT:  What I might do is ask at the end of today's

09:40AM 25   conference to see liaison counsel for a brief discussion on that

09:40AM 1    issue.

09:40AM 2         MR. MAZE:  Understood.

09:40AM 3         THE COURT:  So I think we'll conclude with that today.

09:40AM 4         MR. MAZE:  That's all we're --

09:40AM 5         MR. KRAUS:  Good morning, Your Honor.  Doug Kraus on

09:40AM 6    behalf of Louisiana.

09:40AM 7         I just want to concur with what Mr. Maze said.  In

09:40AM 8    light of the PSC's statement today, we should be getting more

09:40AM 9    time, as opposed to less.

09:40AM 10        I mean, the default time for one-day depositions

09:40AM 11   was 45 minutes previously.  In light of the PSC's statement here

09:40AM 12   today, the states should get a combined two hours, at a minimum,

09:40AM 13   of these Phase Two depositions.  I just want to confer that.

09:40AM 14   Thank you.

09:40AM 15        THE COURT:  We're not going to decide that today.

09:41AM 16        Come on up, Mr. O'Rourke.  Good morning.

09:41AM 17        MR. O'ROURKE:  Good morning, Your Honor.  Steve O'Rourke

09:41AM 18   for the United States.

09:41AM 19        I'll just quickly lay out our positions on the two

09:41AM 20   tracks.

09:41AM 21        On the quantification track, we think that has to

09:41AM 22   go forward.  There is no reason to delay it.  We've already

09:41AM 23   produced the documents.  We've already got positive dates for our

09:41AM 24   30(b)(6) witnesses.  How that fits into the case is the

09:41AM 25   United States sued BP, Transocean, Anadarko, for civil penalties,

09:41AM 1   and the number of barrels controls the maximum available civil

09:41AM 2   penalty.

09:41AM 3          It's largely unrelated to Phase One issues, so it

09:41AM 4   can go forward.  We could even have a trial of Phase Two prior to

09:41AM 5   Phase One if we had to.  We could combine them, however that

09:41AM 6   works out; but, it's crucial to the United States to go forward

09:41AM 7   with the quantification track.

09:41AM 8          The source control track, as we said before, we're

09:41AM 9   a lot less concerned with.  Of course, there may be bleed-over.

09:41AM 10  How do you know how much oil is coming out; you have to know

09:42AM 11  what's going on with the BOP.  So there could be some bleed-over.

09:42AM 12  The stipulations that you oversaw, of course, resolve a lot of

09:42AM 13  those issues.

09:42AM 14         We sort of think -- BP probably would agree with

09:42AM 15  us, and plaintiffs seemed to also -- that the source control

09:42AM 16  track maybe need not go forward.  We think there would probably

09:42AM 17  have to be some sort of minor custodian of records type things

09:42AM 18  because we saw what happened in Phase One -- Anthony probably

09:42AM 19  remembers -- at the end, having to get all of these things

09:42AM 20  authenticated and so on.

09:42AM 21         So we agree that the source control track should be

09:42AM 22  canceled, except for to the extent of this bleed-over from the

09:42AM 23  quantification track or as necessary to authenticate documents.

09:42AM 24         There is some relevance to our penalty claim.  One

09:42AM 25  of the penalty factors in the statute is the success or failure

09:42AM 1   of efforts to mitigate the discharge.  So we have the right to

09:42AM 2   put on that evidence; we just don't think we need a huge

09:42AM 3   discovery track on that.

09:42AM 4        MR. FITCH:  I'm sorry.  We simply couldn't hear his last

09:42AM 5   sentence.

09:42AM 6        THE COURT:  Poor O'Rourke.  Caution him as I might, he

09:43AM 7   can't seem to speak up.

09:43AM 8        MR. FITCH:  I'm not trying to be -- you know how old I

09:43AM 9   am, Judge.

09:43AM 10        MR. O'ROURKE:  The last comment was that we reserve the

09:43AM 11   right to put on evidence about efforts to mitigate as one of the

09:43AM 12   penalty factors.

09:43AM 13        I think that's what I said.  Is that what I said?

09:43AM 14        THE COURT:  We could ask the court reporter to read it

09:43AM 15   back to us, but we won't bother with that.  How's that?

09:43AM 16        Thank you.  I appreciate it.

09:43AM 17        MR. LANGAN:  Your Honor, Andy Langan for BP.

09:43AM 18        I would like the opportunity to think about this,

09:43AM 19   like you've encouraged us to do, and consult with our client and

09:43AM 20   our team about this; but, much of what Mr. O'Rourke had to say, I

09:43AM 21   think we probably agree with, in terms of what the priority

09:43AM 22   should be, the quantification aspect of Phase Two, which

09:43AM 23   Your Honor has said before, I think we agree with that.

09:43AM 24        As you know, we have been -- and we'll talk about

09:43AM 25   today -- trying very, very hard to get the discovery we think we

09:43AM  1  need on quantification in various ways.

09:43AM  2          I think we would further agree with Mr. O'Rourke

09:43AM  3  that much of the previously contemplated source control track is

09:44AM  4  no longer relevant to the Phase Two trial that had been

09:44AM  5  contemplated by Pretrial Order 41.  We agree with that.

09:44AM  6          Finally, I think we would agree with Mr. O'Rourke

09:44AM  7  that, at the time at which Judge Barbier considers the

09:44AM  8  Clean Water Act penalties, there's a set of eight statutory

09:44AM  9  factors.  Clearly, BP will have proofs on those eight factors and

09:44AM 10  will want to be heard and be able to put in proofs about our

09:44AM 11  efforts to stop the flow, our efforts to address the spill, all

09:44AM 12  the efforts that we took, and beyond, on the other factors, as

09:44AM 13  well.

09:44AM 14          I don't know that that's the subject of discovery

09:44AM 15  now.  We just want to make sure we have the opportunity to put

09:44AM 16  our proofs in, just like Mr. O'Rourke will want to; but, I don't

09:44AM 17  think that that's necessary to -- we don't need a full source

09:44AM 18  control track for Phase Two to make sure we have the right to put

09:44AM 19  in those proofs.  I think that's apples and oranges.  I just

09:44AM 20  wanted to make sure that we were clear on that.

09:45AM 21          THE COURT:  Steve, any comment on that?  I assume, based

09:45AM 22  on your comments, that you tend to agree with what Andy just

09:45AM 23  said, which is --

09:45AM 24          MR. O'ROURKE:  He was right about everything, I think --

09:45AM 25          THE COURT:  Well, and I'm asking you --

09:45AM  1           MR. O'ROURKE:  -- so yes, I agree with him.

09:45AM  2           THE COURT:  -- whether you think that a full-fledged

09:45AM  3   track is not necessary, but we do need to think about discovery

09:45AM  4   of both the United States' claims and BP's defenses relative to

09:45AM  5   the eight factors.

09:45AM  6           MR. O'ROURKE:  Yes, and I think that we've -- I think

09:45AM  7   all the parties have assumed that those factors would be some

09:45AM  8   other yet-to-be-named phase something.

09:45AM  9           They were not part of Phase One.  They are not part

09:45AM 10   of Phase Two and Three, really.  There was certainly overlap with

09:45AM 11   the Phase One trial about negligence.  You know, one of the

09:45AM 12   penalty factors is efforts to comply and things like that, so

09:46AM 13   that evidence would have been relevant in this yet-to-be-named

09:46AM 14   penalty phase.

09:46AM 15           We were never trying to press that penalty phase

09:46AM 16   right now, in light of all that was going on with the plaintiffs'

09:46AM 17   claims; but, yes, that -- some day, that is going to have to

09:46AM 18   happen.  We should go forward now with the Phase Two

09:46AM 19   quantification track, have the Phase Two quantification trial,

09:46AM 20   and, at some point during this trial plan briefing, we'll talk

09:46AM 21   about when that penalty phase should go forward.

09:46AM 22           There could be quite a bit of discovery there

09:46AM 23   because each of the three defendants that we're after, their

09:46AM 24   history of compliance and noncompliance in other cases is a

09:46AM 25   relevant factor.  That could be an enormous thing right there.

09:46AM  1   Their financial ability to pay.  These could all be -- this
09:46AM  2   penalty phase track could be another really big track.  The
09:46AM  3   quantification track is much more discrete, so that's why we
09:46AM  4   think we should go forward with that now.
09:46AM  5        THE COURT:  Good.  That helps clarify, don't you think,
09:46AM  6   Andy?
09:46AM  7        MR. LANGAN:  It does.  Of course, we have a different
09:46AM  8   view on how extensive it really needs to be; but, I agree in
09:47AM  9   concert with Mr. O'Rourke that the opportunity to develop proofs
09:47AM 10   and the opportunity to present those proofs on the eight penalty
09:47AM 11   factors is a right that we have and they have, and we've always
09:47AM 12   contemplated it's going to be separate.
09:47AM 13        Thank you.
09:47AM 14        THE COURT:  Right.  Okay.  Good.  Thank you.
09:47AM 15        Corey.
09:47AM 16   MR. MAZE:  Just briefly --
09:47AM 17        Corey Maze for Alabama.
09:47AM 18        -- the same would hold true for the states.  I know
09:47AM 19   we said we wouldn't talk about penalty claims, but now I am.
09:47AM 20        We have essentially the same factors under Alabama
09:47AM 21   and Louisiana law.  My understanding, from what Andy is saying,
09:47AM 22   is that they would prefer us to seek discovery on those
09:47AM 23   particular factors in a similarly later penalty phase stage
09:47AM 24   should our claims be reinstated.  If that's my understanding, we
09:47AM 25   will take that into consideration when we talk this week as to

09:47AM 1   what we think Phase Two needs to be for this trial.

09:47AM 2           I want to make one point of clarification.  The way

09:47AM 3   I understood BP to say it was, is that the PSC or that the

09:47AM 4   plaintiffs didn't believe that there was relevant evidence on the

09:48AM 5   Phase Two trial.

09:48AM 6           What Brian said was, he believed that there was

09:48AM 7   relevant Phase Two evidence towards the plaintiffs' claims, but

09:48AM 8   they have sufficient evidence already from the discovery that we

09:48AM 9   had.  It's not that Phase Two isn't relevant; they simply believe

09:48AM 10  they have enough evidence already.  That's the question the

09:48AM 11  states will contemplate before we get back to you.

09:48AM 12          THE COURT:  Good.

09:48AM 13          So come on up, Andy.

09:48AM 14          MR. LANGAN:  So, on Corey's point about when Alabama's

09:48AM 15  fines and penalties may be relevant, we hadn't really thought

09:48AM 16  about that.  We did win that case, so we haven't really

09:48AM 17  considered it.  So we were talking hypotheticals there.

09:48AM 18          The only thing, also, I wanted to mention at this

09:48AM 19  time to have the Court think about, because I think you asked us

09:48AM 20  to think about what are future phases going to look at -- and I

09:48AM 21  know this is the start of discussion and not the end of it --

09:48AM 22  there may come a time in which we come to the Court, Your Honor

09:48AM 23  and Judge Barbier, and say that, on the NRD side of the house,

09:48AM 24  that this penalty phase on Clean Water Act could somehow be

09:49AM 25  melded together with whatever analysis the Court is going to do

09:49AM 1   of the NRD side of the house because there may be relevance to

09:49AM 2   the eight penalty factors about, you know, what the impact's

09:49AM 3   really been, the restoration that's been made and all that kind

09:49AM 4   of stuff.

09:49AM 5           So I just want to plant that seed, put that down as

09:49AM 6   a placeholder.  It might be something we come back to with a more

09:49AM 7   detailed proposal.

09:49AM 8           Thank you.

09:49AM 9       THE COURT:  Good, I'm glad you did that.  That will get

09:49AM 10  me thinking.

09:49AM 11          Any other comments on this topic?

09:49AM 12          Nothing from you, Don?

09:49AM 13      MR. GODWIN:  Nothing.

09:49AM 14      THE COURT:  You're very quiet today.

09:49AM 15      MR. GODWIN:  Well, I'm just sitting here waiting to see

09:49AM 16  if my client's name is mentioned.

09:49AM 17      THE COURT:  Halliburton.

09:49AM 18      MR. GODWIN:  Now, I'll say something.  Good morning,

09:49AM 19  Your Honor.

09:49AM 20      THE COURT:  Good morning, Don.

09:49AM 21      MR. O'ROURKE:  So I'm up here to move to amend the

09:49AM 22  complaint and add Halliburton.

09:50AM 23      THE COURT:  Good.  I like that, Steve.

09:50AM 24      MR. GODWIN:  I don't like that too much.

09:50AM 25      MR. O'ROURKE:  Just for the record, we don't necessarily

09:50AM 1   agree with what Mr. Langan just said about the connection between

09:50AM 2   the penalty factor and the NRD.

09:50AM 3               We are not trying to get the NRD stuff scheduled

09:50AM 4   any time soon.  I don't think you or Judge Barbier want that, and

09:50AM 5   we're not pressing for that at all.

09:50AM 6               THE COURT:  Well, I didn't take his comment to press for

09:50AM 7   that.  I thought that he was saying there might be some overlap

09:50AM 8   between the penalty phase and the NRD phase, which we all agree

09:50AM 9   comes later.

09:50AM 10              MR. O'ROURKE:  Right.  I think that is what he's saying.

09:50AM 11  I'm just saying we don't necessarily agree that that somehow

09:50AM 12  stops the penalty phase from going forward.

09:50AM 13              THE COURT:  Oh, I see.  Okay.  I'm with you.

09:50AM 14              MR. O'ROURKE:  Nor does it mandate that the NRD phase

09:50AM 15  happens earlier.

09:50AM 16              THE COURT:  Got you.  Placeholder.

09:50AM 17              MR. LANGAN:  So Mr. O'Rourke and I will continue these

09:50AM 18  discussions and stake out our positions at the appropriate time.

09:51AM 19              THE COURT:  Correct.  That would be good.

09:51AM 20              MR. LANGAN:  Thank you.

09:51AM 21              THE COURT:  All right.  Let's see.

09:51AM 22              Captain Englebert reports on the Halliburton

09:51AM 23  computer protocol that it is proceeding, and she anticipates a

09:51AM 24  listing of files this week, so presumably today, if her

09:51AM 25  prediction is correct.  So that's just going forward.  We'll just

09:51AM  1    keep that on the agenda.

09:51AM  2              Now, we got several letters yesterday relating to

09:51AM  3    document production by the United States and the Coast Guard and

09:51AM  4    privilege issues, etcetera.  So I've read them.  I'm not sure

09:51AM  5    that I've digested them.

09:52AM  6              What I think we're going to do -- I know this is

09:52AM  7    going to make Mr. Gasaway and Ms. Himmelhoch happy -- but I think

09:52AM  8    what we're going to have to do is start conferences a couple of

09:52AM  9    times a week to try to work through the process, kind of like

09:52AM 10    what we did with the BOP testing protocol.

09:52AM 11              You all can tell me, do you want Mondays and

09:52AM 12    Wednesdays, or do you want Tuesdays and Thursdays until we get

09:52AM 13    this wrangled out?  You don't need to tell me now; but, we're

09:52AM 14    going to start scheduling them.

09:52AM 15              Also, Sarah and Rob, if you two are the point

09:52AM 16    people, why don't you all let me know Mondays and Wednesdays,

09:52AM 17    Tuesdays and Thursdays, and what time is good for you.  We'll

09:52AM 18    just start working through those issues.

09:53AM 19              It seems to me it's not productive, I don't think,

09:53AM 20    to do it in a big conference like this.  I do want to try to work

09:53AM 21    through all of this with you.

09:53AM 22              Do either of you all or Mark have updates that you

09:53AM 23    want to give us beyond the letter?

09:53AM 24         MS. HIMMELHOCH:  Your Honor, this is Sarah Himmelhoch.

09:53AM 25              I guess we're obviously -- we're happy to work with

09:53AM 1  you.  Either Monday/Wednesday, Tuesday/Thursday, either one works

09:53AM 2  for us, and we'll make ourselves available at the time.

09:53AM 3           I guess I would like to raise a question about

09:53AM 4  renewing the concept of the parties trying to work these issues

09:53AM 5  out amongst themselves.  I mean, we had heard from BP that they

09:53AM 6  had some concerns about their list of custodians, but the first

09:53AM 7  time I had concrete detail about what their concern is, is when,

09:54AM 8  at midnight, before the status conference, Rob sends to the Court

09:54AM 9  a letter saying, here is the list of people that we think the

09:54AM 10 United States has missed inappropriately.

09:54AM 11          I think that there is a lot of work that, if Rob

09:54AM 12 will simply pick up the phone -- no offense to Rob -- but give us

09:54AM 13 a call.  Send me that list, and I can probably get back to you,

09:54AM 14 and we can engage in some productive discussion, the United

09:54AM 15 States and BP together.

09:54AM 16          Because what seems to be happening -- and I do not

09:54AM 17 mean to malign Mr. Gasaway -- but what seems to be happening is

09:54AM 18 they are attempting to use good faith discovery disagreements or

09:54AM 19 misunderstanding to create a tactical advantage.

09:54AM 20          The complaints that Mr. Gasaway listed in his

09:54AM 21 letter of last night, like the fact that they are getting

09:54AM 22 duplicate documents, is a result of good faith difference of

09:54AM 23 opinion about what we agreed about in the October 19th order.

09:54AM 24 They said they wanted us to produce documents only in whole

09:55AM 25 family, so we were producing documents only in whole families,

09:55AM  1   even if that included duplicates.

09:55AM  2           The moment they raised that with us, we've now

09:55AM  3   agreed that we're going to change our practice, and when we've

09:55AM  4   already produced the original family, stop producing the rest of

09:55AM  5   the family.

09:55AM  6           There's a lot of stuff that seems to be eating up

09:55AM  7   your time that doesn't need to be eating up your time if the

09:55AM  8   conversation can happen between BP and the United States first.

09:55AM  9       THE COURT:  Yes.  Sarah, the conferences might be three

09:55AM 10   or five minutes with me.  I'm not anticipating that this is going

09:55AM 11   to be a long, drawn-out process where I'm on the phone constantly

09:55AM 12   with you.  I just to want make sure that we are moving along, and

09:55AM 13   that we've got it organized, and that, to the extent practical,

09:55AM 14   we keep it focused and directed.

09:55AM 15           So no malign meant on either side.  I just want to

09:56AM 16   make sure that we keep it going kind of like we did with the BOP

09:56AM 17   protocol.

09:56AM 18       MS. HIMMELHOCH:  We're happy to do that, Your Honor.

09:56AM 19       THE COURT:  All I did was check in every morning.  It

09:56AM 20   was -- how long was my call, Rob?

09:56AM 21       MR. GASAWAY:  It was very efficient, Your Honor.

09:56AM 22       THE COURT:  -- bam, bam, bam --

09:56AM 23       MR. GASAWAY:  Exactly.

09:56AM 24       THE COURT:  -- and I was off the phone.

09:56AM 25           So don't think, Sarah, that I'm intending to spend

09:56AM 1   an hour a day, twice a week, working on this.  It might happen,
09:56AM 2   but I suspect not.
09:56AM 3            I do think that you all work very well together,
09:56AM 4   and I'm hoping that we can steer you in the right direction and
09:56AM 5   y'all will work it out.
09:56AM 6            MS. HIMMELHOCH:  Okay.
09:56AM 7            THE COURT:  Okay.
09:56AM 8            All right.  So where does that leave us?
09:56AM 9            Rob, did you have anything else you wanted to say
09:56AM 10  by way of update?
09:56AM 11           MR. GASAWAY:  No.  That makes sense to BP, Your Honor.
09:56AM 12           As a placeholder, to borrow Andy's term, we
09:56AM 13  disagree with some of what Sarah just said, but we'll leave it
09:57AM 14  for another day.  Let's just go forward with the calls.
09:57AM 15           THE COURT:  Good.
09:57AM 16           Good morning.
09:57AM 17           MR. CERNICH:  Good morning, Your Honor, Scott Cernich
09:57AM 18  for the United States.
09:57AM 19           I just wanted to, in response to Mr. Gasaway's
09:57AM 20  letters, just make the point that just because we haven't been
09:57AM 21  sending these letters doesn't mean that we're not having some of
09:57AM 22  the same issues identified by Mr. Gasaway.  We've received a long
09:57AM 23  list of unreadable files produced by BP.  That happened in Phase
09:57AM 24  One to almost all the parties, so that's not a new issue.
09:57AM 25           Just to think of an example, for one particular

09:57AM 1  witness, Ms. Kercho, out of 1100 documents produced, 200 to
09:57AM 2  300 of those are not printable and unreadable.
09:57AM 3          Also, as you know, BP has provided a number of
09:57AM 4  privilege logs, totalling 63 to date.  A number of the entries in
09:57AM 5  there are quantification related, load calculations dating back
09:57AM 6  to as early as May 2010, while the well was still flowing.
09:58AM 7          BP also has claimed privilege over operational
09:58AM 8  data, as opposed to any work product or those types of analyses.
09:58AM 9  I'll just make the point that, despite all of those things, we've
09:58AM 10 provided you with a list of deponents, and we're ready to go
09:58AM 11 ahead and move forward with Phase Two quantification discovery.
09:58AM 12         THE COURT:  Okay, Scott.  Thank you.
09:58AM 13         My fault here.  I see that we have Ms. Fetouh -- is
09:58AM 14 that how I pronounce it -- on the line.
09:58AM 15         MS. FETOUH:  That's right, Your Honor.  Thank you for
09:58AM 16 inviting us to the conference today.
09:58AM 17         THE COURT:  You are very welcome.
09:58AM 18         MS. FETOUH:  This is Dahlia Fetouh, from Goodwin
09:58AM 19 Procter, on behalf of Woods Hole.
09:58AM 20         THE COURT:  If I had paid attention, I would have put
09:58AM 21 you first on the list, but I wasn't paying attention.  I just
09:59AM 22 noticed you were on the line.  So, my apologies.
09:59AM 23         What I would like to do with Woods Hole, if this is
09:59AM 24 agreeable to you, is also have an off-line discussion with you
09:59AM 25 and Rob Gasaway relative to resolution of this issue.

09:59AM 1          I have read your letter.  I chewed on it pretty

09:59AM 2    well.

09:59AM 3          Hold on just a second.

09:59AM 4          And, I guess, the US.  I do need the US.  Thank

09:59AM 5    you.

09:59AM 6          Is there a time that is good for you today where we

09:59AM 7    could have that off-line discussion?

10:00AM 8          MS. FETOUH:  Certainly, Your Honor.  I am at your

10:00AM 9    disposal today.

10:00AM 10          THE COURT:  Guys, what are your travel plans?

10:00AM 11          MR. GASAWAY:  BP is at your disposal, Your Honor, any

10:00AM 12    time after this -- maybe we could just do it immediately after

10:00AM 13    this court hearing.

10:00AM 14          THE COURT:  We could.  Ms. Fetouh, I've got your

10:00AM 15    telephone number.  You're in the office?

10:00AM 16          MS. FETOUH:  I am.

10:00AM 17          THE COURT:  Well, good.  I expect that we will finish up

10:00AM 18    the conference in the next, say, half hour.  Maybe what I'll do

10:00AM 19    is I'll bring the representatives from the United States and BP

10:00AM 20    in, we'll have a quick conference call, and release you from our

10:00AM 21    bondage.

10:00AM 22          MS. FETOUH:  Thank you, Your Honor.

10:00AM 23          THE COURT:  Again, apology that I didn't realize you

10:00AM 24    were on the line.

10:00AM 25          MR. GASAWAY:  Your Honor, can I suggest that we include

10:00AM  1    Ms. DeSantis, my colleague, in that as well.  Ms. DeSantis has

10:00AM  2    really been the person that has been dealing most directly with

10:00AM  3    this.

10:00AM  4            Obviously, we can e-mail back and forth about the

10:01AM  5    logistics, but I just wanted to give a heads-up, we'd like her

10:01AM  6    included.

10:01AM  7            THE COURT:  Good.  That will be fine.

10:01AM  8            MR. O'ROURKE:  For us, it's Mr. Chakeres, who is

10:01AM  9    probably on the phone.  He should be.

10:01AM 10            THE COURT:  Yes, Nat, you're there, right?

10:01AM 11            So what I think I want to do, ladies and gentlemen,

10:01AM 12    after having read the letters last night, is suspend for the time

10:01AM 13    being the April depositions.  I want to try to get us straight on

10:01AM 14    document production, resolution of privilege issues, etcetera.

10:01AM 15            This is not an indefinite suspension, but I do want

10:01AM 16    to try to get a firmer grasp on where we are on document

10:02AM 17    production and other issues, so that we can proceed with a fair

10:02AM 18    and balanced deposition schedule between BP and the

10:02AM 19    United States.

10:02AM 20            So I hope to work through that with you all

10:02AM 21    starting today, and see if we can't get some of this resolved and

10:02AM 22    back on the calendar.

10:02AM 23            So does anybody have any comments on that issue?  I

10:02AM 24    know, Mr. O'Rourke, you've already commented earlier today.

10:02AM 25            So, Rob?

10:02AM 1          MR. GASAWAY:  Just one comment overall on the process,

10:02AM 2     Your Honor, and directing the Court and the parties' attention to

10:02AM 3     one of the letters we sent in late last night.  This was the one

10:02AM 4     that was entitled Draft PSC Phase Two 30(b)(6) Notice of

10:02AM 5     BP Defendants.

10:02AM 6          I just wanted to, if it would be helpful, run

10:03AM 7     through a little bit of the logic of what we're trying to do

10:03AM 8     there in terms of structuring the 30(b)(6) process, if that would

10:03AM 9     be helpful.

10:03AM 10         THE COURT:  Well, as I understood it -- and perhaps I'm

10:03AM 11    wrong -- we have mooted out that issue this morning.

10:03AM 12         MR. GASAWAY:  Well, here's the issue, just to be fair to

10:03AM 13    all parties, is the PSC was taking the lead on a 30(b)(6) notice

10:03AM 14    to BP.  As you know, each party was assigned a counterparty, and

10:03AM 15    the PSC was assigned to BP.

10:03AM 16         So now I think we have largely mooted out a lot of

10:03AM 17    the PSC's objections to the 30(b)(6) notice; but, we clearly

10:03AM 18    heard from Mr. O'Rourke that even though the PSC does not believe

10:03AM 19    it needs additional quantification discovery from BP,

10:03AM 20    Mr. O'Rourke is in a different position.

10:03AM 21         So we would be happy if that was completely mooted;

10:03AM 22    but, I think what Mr. O'Rourke would tell you is that the

10:03AM 23    United States was relying on the PSC's notice.  Therefore, to the

10:04AM 24    extent that there are quantification topics, they very much want

10:04AM 25    to go forward with those quantification topics.

10:04AM 1        Now, if I have that wrong, we're thrilled, but I

10:04AM 2  can't believe --

10:04AM 3        THE COURT:  No, it must be.

10:04AM 4        Go ahead, Rob, I'm listening.

10:04AM 5        MR. GASAWAY:  Here is my proposal.  Assuming that I

10:04AM 6  heard Mr. O'Rourke right and they want to go forward with

10:04AM 7  discovery of BP on the quantification, what we tried to do in

10:04AM 8  that particular letter last night was get very particular about

10:04AM 9  which topics are quantification topics and how those should be

10:04AM 10  worded very exactly, so, as we go forward and schedule

10:04AM 11  depositions, we know which ones we prioritize and what the exact

10:04AM 12  wording of the topics are.

10:04AM 13        To make a long story short, we started with

10:04AM 14  26 topics in the original draft of the PSC notice.  We decided

10:05AM 15  that six of them related to source control and four to spill

10:05AM 16  preparedness.  That took us down to 16 topics.

10:05AM 17        We decided to combine two of them, Numbers 23 and

10:05AM 18  26.  That left us with 15.

10:05AM 19        Then, of those 15, we took a step back and said,

10:05AM 20  look, 12 of these are really the core technical quantification

10:05AM 21  30(b)(6) topics.  They are the ones that are going to provide

10:05AM 22  testimony that an expert might want to rely on.

10:05AM 23        Three of them, Numbers 9, 14, and 18, are really

10:05AM 24  communication type of topics, what did you tell the public, what

10:05AM 25  did you tell the press, what did you tell the media, what did you

10:05AM 1    tell shareholders, what did you tell third parties, what did you

10:05AM 2    tell the Presidential Commission.  Those are communication

10:05AM 3    topics.

10:05AM 4           So what we are focusing on is trying to get a

10:05AM 5    narrow, quantification-focused 30(b)(6), point one; point two,

10:05AM 6    with particular language; and, point three, just trying to

10:06AM 7    anticipate the Court's priorities, recognizing that the Court

10:06AM 8    would be most interested in putting those technical

10:06AM 9    quantification topics first.

10:06AM 10          So, although we're suspending deposition

10:06AM 11   scheduling, and we think that's a good idea, I want the Court to

10:06AM 12   know that we are focusing on those 12 technical topics.  We do --

10:06AM 13   are in a position to start suggesting names and dates for those

10:06AM 14   core quantification topics.

10:06AM 15          Finally, we think that, by getting some form of

10:06AM 16   notice officially out -- I don't think it could be called the PSC

10:06AM 17   notice anymore, maybe it's now called the United States'

10:06AM 18   notice -- but some form of notice out to BP that's agreed upon as

10:06AM 19   to those quantification topics we prioritized with appropriate

10:06AM 20   language, we think might be helpful in moving the process

10:06AM 21   forward.  That was the intent of that one particular letter last

10:06AM 22   evening.

10:06AM 23          THE COURT:  I have to tell you, I was unaware that that

10:06AM 24   had not been finalized; so, when this came across my desk, it was

10:07AM 25   like a real surprise.

10:07AM 1    Another reason -- yet another reason that I want to

10:07AM 2  go ahead and suspend the deposition schedule because I was

10:07AM 3  totally unaware of unresolved issues on that deposition notice.

10:07AM 4    MR. GASAWAY:  Well, thank you, Your Honor.  I'm glad we

10:07AM 5  brought it to your attention last night.  Thank you.

10:07AM 6    THE COURT:  I guess I'm glad.  I don't know.

10:07AM 7    I think Corey was up first.  Corey, were you up?

10:07AM 8    MR. MAZE:  The way I understood what was just said was

10:07AM 9  that, number one, that this wasn't finalized, and that is not my

10:07AM 10 understanding of what happened.

10:07AM 11   I mean, the states and other parties didn't draft

10:07AM 12 this with BP, PSC did, but we reviewed it.  Because of that, my

10:07AM 13 understanding is not that the six source control and four spill

10:07AM 14 preparedness topics just magically went away, or that there was

10:07AM 15 some sort of agreement that they went away.  For the reasons we

10:07AM 16 said earlier, we believe they haven't gone away.

10:08AM 17   By now trying to call this the United States'

10:08AM 18 notice, to get rid of those ten, is to do a disservice to those

10:08AM 19 of us who still think those may be a topic that was agreed upon

10:08AM 20 and finalized.  We have to make that -- I just didn't want the

10:08AM 21 way that it was just presented to the Court to become the way it

10:08AM 22 seemed by everyone, because we still don't agree that that's

10:08AM 23 true.

10:08AM 24   THE COURT:  As I said, I was unaware of any issue at

10:08AM 25 all, so.

10:08AM  1          MR. MAZE:  Right.  I was, too.

10:08AM  2          MR. FITCH:  Tony Fitch, Anadarko, Judge.

10:08AM  3              It is correct that, in fact, those notices have not

10:08AM  4   been actually finalized and served.

10:08AM  5              Just out of fairness to the United States and

10:08AM  6   others, Anadarko has issues with respect to the proposed schedule

10:08AM  7   of topics that are similar to, but not in all instances the same

10:08AM  8   as, those that apparently BP has been raising.  So those would

10:08AM  9   need to be worked out at some point, as Brian had indicated to

10:08AM 10   you about a month ago; but, those will still need to be worked

10:09AM 11   out, I'm afraid.

10:09AM 12          THE COURT:  Okay, thank you.

10:09AM 13              Come on up, Scott.

10:09AM 14          MR. CERNICH:  Scott Cernich for the United States.

10:09AM 15              I think I heard Mr. Gasaway say that the topics

10:09AM 16   that BP was going to move forward on were characterized as

10:09AM 17   12 technical topics and not the communications.  I'm not clear on

10:09AM 18   the distinction there and why one should not be included with the

10:09AM 19   other.  It's our position that all of the topics should move

10:09AM 20   forward, and there is no reason to segregate those out.

10:09AM 21          THE COURT:  Yes.  I'm with you.

10:09AM 22              Rob, do you want to respond?

10:09AM 23          MR. GASAWAY:  Let me clarify.  First of all, with

10:09AM 24   respect to the distinction between source control and

10:09AM 25   quantification which Corey Maze was talking about, we're not

10:09AM 1    saying that all of the source control topics are off the table.

10:09AM 2    What we're saying now is that the PSC has said it's not moving

10:09AM 3    forward with discovery.

10:09AM 4          We've heard the United States say they want to move

10:09AM 5    forward with quantification discovery at this time.  We've heard

10:10AM 6    the states say that they want to move forward with source control

10:10AM 7    discovery.

10:10AM 8          In light of those three statements that we've heard

10:10AM 9    this morning, maybe what makes sense would be to have one

10:10AM 10   30(b)(6) notice from the United States on quantification topics,

10:10AM 11   the 15 that I was talking about, and maybe another from the

10:10AM 12   states on the ten source control topics, now that people are

10:10AM 13   realigning themselves.

10:10AM 14         BP obviously reserves the right to, you know,

10:10AM 15   advocate on its position on both those groups of topics; but, in

10:10AM 16   no way are we saying, let's decide right now that one or the

10:10AM 17   other is off the table.  We're just saying, as a procedural

10:10AM 18   matter, given the realignment of the parties, it may make sense

10:10AM 19   to finalize this in a different way than was contemplated, but

10:10AM 20   certainly nothing is off the table.  So that's kind of just the

10:10AM 21   formal rearranging.

10:10AM 22         Now, the prioritization.  What I said was two

10:10AM 23   things.  I didn't say we were taking anything off the table or

10:10AM 24   not going forward on anything.  I said, first of all, we think it

10:11AM 25   makes sense to prioritize quantification over source control, so

10:11AM 1   the United States' topics over the other topics.

10:11AM 2          What we also said was that even though we

10:11AM 3   understand that the United States wants all 15 quantification

10:11AM 4   topics, including the communication topics, and that they would

10:11AM 5   want those to be in a notice, for purposes of seeking out

10:11AM 6   witnesses, seeking out available dates, coming prepared to court

10:11AM 7   to offer witnesses, we thought it would be the Court's preference

10:11AM 8   if we looked at the technical topics first and were prepared to

10:11AM 9   go forward with scheduling them first, not thinking that we could

10:11AM 10  not ever schedule the three communications ones, but just in

10:11AM 11  terms of priorities.

10:11AM 12         So the bottom line here is, contrary to the worries

10:11AM 13  that we've just heard expressed, BP is not thinking of taking any

10:11AM 14  topics off the table.  We're just trying to reformat and

10:11AM 15  reprioritize in light of changed circumstances.

10:12AM 16         THE COURT:  I understood you to say that.

10:12AM 17         Scott, does that help?  Come on up.

10:12AM 18         Also, I want to ask you, Rob, you had said in your

10:12AM 19  letter that you thought that organizational depositions could

10:12AM 20  proceed as well.  You thought you were in a position to go

10:12AM 21  forward with that.  So that also would be front-loaded in your

10:12AM 22  proposal?

10:12AM 23         MR. GASAWAY:  Well, yeah, let me address that very

10:12AM 24  briefly.  What I've just been talking about is obviously the

10:12AM 25  30(b)(6) topics for BP witnesses.

10:12AM 1          THE COURT:  Yes.

10:12AM 2          MR. GASAWAY:  Now, we're over to 30(b)(6) topics for the

10:12AM 3   United States' witnesses.

10:12AM 4               As our letter suggests, there is a lot of different

10:12AM 5   moving parts there, and that, certainly, one of them is going

10:12AM 6   forward with the organizational one early on and some of the

10:12AM 7   others later on.

10:12AM 8          THE COURT:  Scott, did that help clarify or not?

10:12AM 9          MR. CERNICH:  No, not a lot.

10:13AM 10              It's our view that the communications that were

10:13AM 11  going on within the BP organization are critical to the

10:13AM 12  quantification topics here.

10:13AM 13              I really don't understand the distinction here

10:13AM 14  because the United States is asking BP for 30(b)(6) witnesses to

10:13AM 15  testify what BP was doing, what information they had related to

10:13AM 16  quantification.  It is simply intrinsic in it that it was -- that

10:13AM 17  it related -- or that communications within the BP organization

10:13AM 18  related to that work.

10:13AM 19              In talking about -- talking about these 30(b)(6)

10:13AM 20  notices and negotiating them, BP was insistent that language

10:13AM 21  related to all communications was also covered with their

10:13AM 22  30(b)(6) notice to the United States.

10:13AM 23         THE COURT:  Thank you.

10:13AM 24              All right.  You can see I feel fairly defeated

10:14AM 25  today.

10:14AM  1          MR. O'ROURKE:  Your Honor, Steve O'Rourke.

10:14AM  2          Six weeks ago, you told everybody to show up with

10:14AM  3   names and dates for the topics in the 30(b)(6).  Ours are up

10:14AM  4   there.  Now, we just start over again from scratch?

10:14AM  5          THE COURT:  Well, it's not starting over again from

10:14AM  6   scratch; but, I have to tell you that six weeks ago I thought we

10:14AM  7   were much further along than I come to find out I am today.

10:14AM  8   Hence, my fairly gloomy attitude this morning.

10:14AM  9          This is not an indefinite suspension.  I do intend

10:14AM 10   to get back to you.  But I've got a lot of things that I've got

10:14AM 11   to work through; and, there is two of us and how many of you.

10:14AM 12          So I've got to try to understand where the wheel

10:14AM 13   came off the cart, which is how I'm feeling today, and put the

10:15AM 14   wheel back on.  So you'll just have to bear with me and let me

10:15AM 15   work through it.  Okay?

10:15AM 16          So does anybody have anything else that they want

10:15AM 17   to cover before I go take the off-line conference on Woods Hole?

10:15AM 18          Following that, I would like to see liaison counsel

10:15AM 19   in chambers.

10:15AM 20          MR. BARR:  Just one quick thing.

10:15AM 21          Brian Barr for the PSC.

10:15AM 22          I got a call from Exxon's lawyer this week about

10:15AM 23   the third-party 30(b)(6) outstanding to them.  Those had

10:15AM 24   placeholder dates in them.  They were wondering whether or not

10:15AM 25   they could get some sort of an order -- and I'm happy to put it

10:15AM 1    together, a proposed order -- but essentially suspending the

10:16AM 2    third-party deposition dates, so that they know that they don't

10:16AM 3    have to show up on those dates.

10:16AM 4            THE COURT:  Yes, I thought we had notified all third

10:16AM 5    parties --

10:16AM 6            MR. BARR:  I told her that.

10:16AM 7            THE COURT:  Yes.  Put it together, and we'll sign it.

10:16AM 8            MR. BARR:  Okay.

10:16AM 9            THE COURT:  You see, that was the easiest thing we've

10:16AM 10   covered today.

10:16AM 11           MR. BARR:  I'm glad I could do something.

10:16AM 12           THE COURT:  Yes, I appreciate it.

10:16AM 13           MR. BARR:  I would say -- and this isn't really my fight

10:16AM 14   anymore, given our position -- but I was under the impression the

10:16AM 15   30(b)(6) notices were final as well.  The discussions on those

10:16AM 16   have been -- the only thing outstanding were the overlap and the

10:16AM 17   lookback, and we've got orders on those now.

10:16AM 18           But, you know, just -- that's where I thought those

10:16AM 19   were, but apparently I was incorrect in my thinking.

10:16AM 20           THE COURT:  What can I tell you?  It's now been two

10:16AM 21   weeks in a row that I've been somewhat taken aback.  How about

10:16AM 22   that?  Is that a nice way of saying it?

10:16AM 23           MR. CHAKERES:  Your Honor, this is Nat Chakeres for the

10:17AM 24   United States.

10:17AM 25           THE COURT:  Yes, Nat.

10:17AM 1        MR. CHAKERES:  I just wanted to have a clarification

10:17AM 2  question from Brian Barr.  This was something that he felt was

10:17AM 3  simple, and we want to muddy it up a little.

10:17AM 4            It's our position that there is a fairly clear

10:17AM 5  distinction for most of the third parties about whether they are

10:17AM 6  quantification or source control related.  We have been in

10:17AM 7  contact with the quantification third parties that we have been

10:17AM 8  tasked with preparing their subpoenas, and they are, you know,

10:17AM 9  very interested in knowing when to go forward.  It's our position

10:17AM 10 that those depositions, as with the rest of the quantification

10:17AM 11 depositions, should go forward.

10:17AM 12            So not wanting to, you know, get too far ahead of

10:17AM 13 ourselves, you know, we would like to -- we're ready to schedule

10:17AM 14 those, as well, is what we're trying to say.

10:17AM 15       THE COURT:  Right.  Those are on the April calendar?

10:17AM 16       MR. CHAKERES:  Excuse me.  I'm sorry.  I didn't --

10:18AM 17       THE COURT:  You said they've been scheduled.  When are

10:18AM 18 they scheduled for?

10:18AM 19       MR. CHAKERES:  They have not been scheduled.  We would

10:18AM 20 like to schedule them.  I think those third parties we have been

10:18AM 21 communicating with, particularly PENCOR and Add Energy, have been

10:18AM 22 looking at their calendars and are eager to be scheduled.

10:18AM 23       THE COURT:  Brian, would you speak to Nat and include

10:18AM 24 those third parties in your draft order?  We just have to put in

10:18AM 25 the order, you know, what's happening.

10:18AM 1      MR. BARR:  I will do that.  Yes, Your Honor.

10:18AM 2      THE COURT:  Make it brief, maybe two lines.

10:18AM 3      MR. BARR:  I'll make it simple.

10:18AM 4      THE COURT:  Make it simple.  Thank you.

10:18AM 5      MS. HIMMELHOCH:  Your Honor, this is Sarah Himmelhoch.

10:18AM 6      I just wanted to give you a quick update on your

10:18AM 7  request to NMFS, if you would like it now.

10:18AM 8      THE COURT:  Request to who?

10:18AM 9      MS. HIMMELHOCH:  To National Marine Fisheries Service.

10:18AM 10     THE COURT:  Oh, good.  That would be great.  Thank you,

10:18AM 11 Sarah.  I forgot about that.

10:18AM 12     MS. HIMMELHOCH:  We had a telephone conference between

10:18AM 13 the PSC representative, BP attorney and NMFS.  We've got a good

10:19AM 14 understanding of what they are looking for.

10:19AM 15     I had a call with NMFS this morning in which we

10:19AM 16 worked through some of the concerns they had and some of the

10:19AM 17 mechanics.  We have a call scheduled at 4:00 p.m. with BP and the

10:19AM 18 PSC to give an update on where we are and when we might be able

10:19AM 19 to get them that data.

10:19AM 20     So I think we're moving forward.  I don't think

10:19AM 21 there are any major road blocks; but, I'll advise if anything

10:19AM 22 changes after our call with BP and the PSC this afternoon.

10:19AM 23     THE COURT:  Good.  Thank you.  Very helpful.  Anybody --

10:19AM 24 I see Tony.  Anybody else have anything?  All right.

10:19AM 25     MR. IRPINO:  Your Honor, real quickly, we have a

10:19AM 1    St. Patrick's Day parade tomorrow going down Magazine Street.

10:19AM 2              THE COURT:  I'm aware of that.

10:19AM 3              MR. IRPINO:  In case anybody is in town, but

10:19AM 4    particularly for the in-town attorneys, we'd like to invite them.

10:19AM 5    Our firm is having a party.

10:19AM 6              THE COURT:  Oh, nice.  Where is it?

10:19AM 7              MR. IRPINO:  The Court is invited.

10:19AM 8              THE COURT:  Thank you.  I might show up.

10:20AM 9              MR. IRPINO:  2216 Magazine Street, the Garden District,

10:20AM 10   right by Magazine and Jackson.  Food, fun --

10:20AM 11             THE COURT:  Fantabulous.

10:20AM 12             MR. IRPINO:  -- party favors.

10:20AM 13             THE COURT:  While we're on the topic of food and fun --

10:20AM 14   thank you, Anthony, that's very kind of you -- I was speaking to

10:20AM 15   Mr. Haycraft yesterday, who suggested to me that every other

10:20AM 16   Saturday e-mail free was confusing because people were constantly

10:20AM 17   in discussion about whether it was an e-mail free Saturday or

10:20AM 18   not.

10:20AM 19             So we're going to make it easy.  Every Saturday is

10:20AM 20   going to be e-mail free.  How about that?

10:20AM 21             MS. HIMMELHOCH:  Thank you, Your Honor.

10:20AM 22             THE COURT:  You're very welcome, Sarah.

10:20AM 23             Look, even Corey liked that one.

10:20AM 24             Anything else?  We're going to go place a call to

10:21AM 25   Woods Hole.  If liaison counsel would hang around, we'll come out

10:21AM  1    and get you all, say, in 15 minutes or so.  Thank you.

10:21AM  2             MR. LANGAN:  Thank you, Your Honor.

10:21AM  3             MS. HIMMELHOCH:  Thank you.

10:21AM  4             MR. FITCH:  Thank you, Judge.

       5             (WHEREUPON, the proceedings were concluded at

       6    10:21 a.m.)

       7                          *    *    *

       8

       9

       10                   REPORTER'S CERTIFICATE

       11

       12        I, Cathy Pepper, Certified Realtime Reporter, Registered

       13   Merit Reporter, Certified Court Reporter of the State of

       14   Louisiana, Official Court Reporter for the United States District

       15   Court, Eastern District of Louisiana, do hereby certify that the

       16   foregoing is a true and correct transcript, to the best of my

       17   ability and understanding, from the record of the proceedings in

       18   the above-entitled and numbered matter.

       19

       20

       21                         *s/Cathy Pepper*
                                  _____

       22                         Cathy Pepper, CRR, RMR, CCR
                                  Certified Realtime Reporter
       23                         Registered Merit Reporter
                                  Official Court Reporter
       24                         United States District Court
                                  Cathy_Pepper@laed.uscourts.gov
       25