UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | : : : : | MDL-2179 SECTION J |
| THIS DOCUMENT RELATES TO: | : | JUDGE BARBIER MAG. JUDGE SHUSHAN |
| ALL ACTIONS | : | |

…………………………………………………………………………………………………

**STATEMENT OF INTEREST BY THE STATE OF FLORIDA**
**RELATED TO THE TIMING OF ANY PRELIMINARY APPROVAL DECISION**

**COMES NOW** Pamela Jo Bondi, the Attorney General for the State of Florida ("Florida"),[1] and comments on the Court's consideration of any preliminary approval motion in light of the First Amended Order Creating Transition Process. (Doc. 5995.)  Attorney General Bondi offers these comments now due to the lack of information regarding the settlement details as well as the concern that the settlement may be preliminarily approved before this Office and other interested stakeholders have a meaningful opportunity to review and comment on its terms.

Based on this Office's current understanding of the proposed settlement terms, there are at least two major concerns.  First, it appears that the settlement will apply only to claims from Florida businesses and residents located in the Panhandle or along the west coast of Florida. Accordingly, thousands of Florida individual and business claims would not be covered by the settlement's terms and may be left without any recourse under the settlement, despite the fact

---

[1] By the filing of this document, Florida does not acknowledge or waive its right to object to federal jurisdiction over any potential action that may be filed as a result of the Deepwater Horizon oil spill. Nor does Florida acknowledge its support for or waive its right to object to the transfer and consolidation of actions brought by any governmental entities into a single action with all litigants having filed claims in connection with this matter.

that BP and even the Gulf Coast Claims Facility ("GCCF") have paid claims from almost every county in Florida.

Second, under paragraph fifteen of the transition order, the Court's preliminary approval of the proposed settlement would apparently result in the immediate discontinuation of the interim claims process, despite the fact that the Oil Pollution Act of 1990 ("OPA") absolutely requires such a process.[2]  This could significantly harm those individuals and businesses that have sought and received interim payments but decided not to submit final claims, perhaps due to their concerns over the spill's unknown long-term effects.  Requiring such claimants to pursue only final settlements, without regard for whether they can properly assess the value of their final claim, is unfair, contrary to OPA, and even an idea that Mr. Feinberg advocated but later abandoned.  Given the many unanswered questions regarding the proposed settlement terms, as well as the unusual and potentially adverse consequences of preliminary approval in this case, Florida respectfully submits that the Court should establish a briefing schedule on the preliminary approval motion to ensure that all concerned parties have an opportunity to review and provide input regarding the proposed settlement terms.

## I.        Introduction

The Attorney General of Florida is entrusted with protecting the collective legal rights of her citizens and advocating for her State's interests and public policy concerns as a sovereign. *See*, *e.g.*, *State ex rel. Att'y Gen. v. Gleason,* 12 Fla. 90, 112 (Fla. 1869).  As Florida's chief legal officer, the undersigned has numerous responsibilities related to the Deepwater Horizon oil spill and its impact on Florida's sovereign interests and the interests of its people, environment, and economy, including monitoring and improving any claims process, for the benefit of all affected Florida citizens and businesses.

---

[2]  The Court has recognized that OPA requires an interim claims process. (Doc. 912 at 7, 15.)

Most recently, Attorney General Bondi submitted a Statement of Interest (Doc. 5190) opposing the applicability of the December 28, 2011 Order (Doc. 5022) to individuals and businesses that presented their claims to the GCCF but chose not to join the litigation.  The Court subsequently ruled that the GCCF payments to individual and business claimants who remained outside of the litigation would not be subject to any holdback obligation. (Doc. 5274.)

General Bondi met with Mr. Feinberg on numerous occasions and offered detailed suggestions for improving the GCCF claims process.  However, there has not been any similar opportunity to provide input on the dramatically revised claims process under the proposed settlement.  Instead, the proposed settlement terms have been revealed, in broad strokes, only through a PSC memo or newspaper articles.  General Bondi plans to continue her advocacy for a fair, responsive, and transparent claims process and looks forward to reviewing the proposed settlement once it is filed with the Court.

## II.    Overview

After the *Deepwater Horizon* spill, BP, as one of the designated responsible parties, created an OPA claims process for affected individuals and businesses.  In the initial months after the spill, BP received and paid OPA claims arising from the oil spill.  After criticism of its handling of the claims process, BP agreed to transfer responsibility for reviewing and paying OPA claims to Kenneth Feinberg and the GCCF.  Between August 2010 and early 2012, the GCCF paid approximately $6 billion in individual and business claims to Gulf Coast residents, including over $2.5 billion to individuals and businesses throughout the State of Florida.

In early March of 2012, BP and the Plaintiffs' Steering Committee ("PSC") announced that they had reached an agreement-in-principle on the resolution of individual and business claims arising out of the *Deepwater Horizon* spill.  To date, many of the terms of the settlement have not been disclosed.  On March 8, 2012, the very day of its submission, the Court granted

the PSC's Motion to Establish and Govern Transition Process by entering the proposed transition order.[3] (Doc. 5987.)

The Order ends administration of the GCCF claims process and replaces it with the Court Supervised Claims Process ("CSCP"), which applies its own methodology and procedures.  In the time between the March 8th Order and the establishment of the CSCP, the claims process is run by a "Transition Coordinator" that allows claimants the choice between GCCF (including an interim payment option) and CSCP methodologies.  The PSC is required to file its preliminary approval papers by April 16, 2012.  (Doc. 5995.)

The transition order states that "**if the Court provides Preliminary Approval to the proposed Settlement** and the Claims Administrator certifies the Court Supervised Claims Process is ready to open, **then the Court will enter an appropriate Order terminating the Transition Process**." (Doc. 5995 ¶ 7.) (emphasis added)  After the end of the transition process, the CSCP and its unspecified methodology for final settlements will apparently be the only option for individual and business claimants seeking compensation for their oil spill losses.  Although the Order allows interim claims during the Transition Period, "[w]hen the [CSCP] begins processing claims, there will be no right to request or receive interim payments from the Transition Process or the [CSCP]." (*Id.*  ¶ 15.) The transition order thus appears to create a claims process that deprives claimants of a type of relief expressly granted by Congress.

## III.    Argument

### 1.  The CSCP process appears to improperly disallow interim claims.

OPA was amended in 1996 to expressly require that the "responsible party . . . establish a procedure for the payment or settlement of claims for interim, short-term damages." 33 U.S.C. §

---

[3] The transition order was amended to change one date and make it consistent with the other dates in the document. (Doc. 5995.)

2705(a).  The interim claim option is a vital part of the OPA claims process because it allows claimants to submit claims (and receive compensation) for only the damages they have suffered to date and not speculate as to future events.  Without the interim claim option, claimants can only submit final claims that require a release of all claims, including future and unknown claims.

When BP transferred control of the OPA claims process to the GCCF, one of the issues of contention was the GCCF's policy of not providing an option for interim claims.  Interested parties, including the Gulf Coast Attorneys General, reminded the GCCF of the express OPA requirement for interim claims, including through this Office's August 20, 2010 letter to Mr. Feinberg, *available at* http://myfloridalegal.com/webfiles.nsf/WF/KGRG-89JJBR/ $file/LetterToFeinberg9-20-2010.pdf.  The GCCF quickly reversed itself and allowed interim claims.  According to the limited available information regarding the new CSCP, the PSC has repeated the GCCF's early mistake of not allowing interim claims.

### 2.  There is insufficient information available to evaluate the settlement terms.

The settling parties have disclosed alarmingly little about a settlement that would affect such a large group of individual and business claimants.  The transition order proposed by the PSC and entered by the Court provides some clues but mostly focuses on how the transition will occur. (Doc. 5995.) However, the PSC has released some limited details about the settlement terms.[5] PSC, Frequently Asked Questions Regarding Deepwater Horizon Economic and Property Damages Settlement, *available at*

http://www.weitzlux.com/pdf/BPSettlementEconomicLossFAQ.pdf (last visited April. 11, 2012).

---

[5]  The document warns that its terms are subject to modification.  However, it is the best publicly available information as of the date of this filing.

The PSC document indicates that economic and property damage settlements are open to "[p]eople and businesses who live, work, or own/lease property in the Gulf Coast Area, (the entire states of Louisiana, Mississippi, and Alabama, the four southeastern counties of Texas that lie on the water, and the panhandle and the west coast of Florida), and the adjacent Gulf Waters." *Id.* at 3. This document offers no rationale as to why anyone in the entire states of Louisiana, Mississippi or Alabama can claim economic damages but Floridians and their businesses are limited to specific regions.

The apparent categorical exclusion of large portions of Florida is particularly troublesome as individuals and businesses throughout Florida have received claims payments, both under the BP and GCCF claims processes. Indeed, the GCCF initially wanted to pay claims only for certain geographic regions within the Gulf Coast, but relented after considerable pressure from the Gulf Coast Attorneys General, including through this Office's July 2, 2010 and September 20, 2010 letters to Mr. Feinberg, *available at* http://myfloridalegal.com/webfiles.nsf/WF/JFAO-86YS8N/$file/Feinberg.pdf and http://myfloridalegal.com/webfiles.nsf/WF/KGRG-89JJBR/$file/LetterToFeinberg9-20-2010.pdf. Nor does the document describe what options exists for Floridians located outside of the specific regions who wish to pursue economic claims, despite the fact that any determination on final approval is likely several months away.

The PSC document further discloses that claim settlements will account for geographic location by dividing the class area into four zones and "[b]usinesses and individuals have either causation presumptions or other requirements for causation depending upon geographic location and business/employer types." *Id.* at 7. However, the document offers no description of the geographic zones or the differing causation rules. Until further information and explanation is released about the settlement, it is impossible to assess the potentially large effects that

6

preliminary approval will have on the various interests.  At this point, the little information has been disclosed about the settlement and the CSCP appears to provide substantial grounds for fairness objections.

### 3.  Preliminary approval of the settlement has abnormally far-reaching implications.

Typically, a grant of preliminary approval to a settlement has little legal effect.  "At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." David F. Herr, Annotated Manual For Complex Litigation, (4th ed. 2009) 501 (Author's Comments to § 21.63).  Thus, at the preliminary approval stage, the Court typically determines only whether there is reason to believe that the proposed settlement is "fair, reasonable, and adequate." However, the Court should  conduct a far more rigorous analysis of the proposed settlement terms here because preliminary approval directly leads to the apparent elimination of an important and legally required component of an OPA claims process while potentially harming thousands of Floridians by excluding them from viable claims options for no apparent reason.

## IV.   Conclusion

The State of Florida's interest is to see that its citizens and businesses are protected and that the recovery from this environmental disaster occurs as soon as possible.  The few disclosed details (including the apparent elimination of interim claims and the disparate treatment of Florida individual and business claimants) raise troubling questions about the fairness and rationale behind the settlement and the CSCP policies.  Florida respectfully submits that the Court should delay any immediate decision on the preliminary approval motion and instead establish a briefing schedule allowing a meaningful opportunity for review and comment.

**Respectfully submitted**,

**PAMELA JO BONDI**
ATTORNEY GENERAL
STATE OF FLORIDA

BY: /s/ Russell S. Kent

PATRICIA A. CONNERS
Associate Deputy Attorney General
Florida Bar No. 361275
E-mail:  trish.conners@myfloridalegal.com
RUSSELL S. KENT
Special Counsel for Litigation
Florida Bar No. 20257
E-mail:  russell.kent@myfloridalegal.com

Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
Telephone:  850-414-3300

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Statement of Interest will be filed into the record using the Court's ECF system and will be served on all counsel through Lexis-Nexis File & Serve in accordance with Pretrial Order No. 12 on this 13th day of April 2012.

/s/ Russell S. Kent
Russell S. Kent

8