# EXHIBIT 4B

# **CAUSATION REQUIREMENTS FOR BUSINESSES ECONOMIC LOSS CLAIMS[1]**

**I.   Business Claimants for Which There is No Causation Requirement**

1) If you are a business in Zone A, you are not required to provide any evidence of causation unless you fall into one of the exceptions agreed to by the parties, and listed in footnote (1).

2) If you are a "Landing Site," or "Commercial Wholesale or Retail Dealer A," or "Primary Seafood Processor," as set forth in "Seafood Distribution Chain Definitions," you are not required to provide any evidence of causation.

3) If you are in Zone A, B or C and you are a "Commercial or Wholesale or Retail Dealer B," or a "Secondary Seafood Processor," or a "Seafood Wholesaler or Distributor," or a "Seafood Retailer," as set forth in "Seafood Distribution Chain Definition," you are not required to provide any evidence of causation.

4) If you are in Zone A or Zone B, and you meet the "Tourism Definition," you are not required to provide any evidence of causation.

5) If you are in Zone A, B or C, and you meet the "Charter Fishing Definition" you are not required to provide any evidence of causation.

**II.   Causation Requirements for Zone B and Zone C**

If you are not entitled to a presumption as set forth in (I) above and you are located in Zone B or Zone C then you must satisfy the requirements of one of the following sections A-E below:

A. V-Shaped Revenue Pattern:

Total business revenue shows the following pattern:

1. <u>DOWNTURN:</u>  a decline of an aggregate of 8.5% or more in total revenues over a period of three consecutive months between May-December 2010 compared to the same months in the Benchmark Period selected by the claimant;[2] AND

2. <u>LATER UPTURN:</u>  an increase of an aggregate of 5% or more in total revenues over the same period of three consecutive months in 2011 compared to 2010.[3]

OR

---

[1] This Causation Requirements for Business Economic Loss Claims does not apply to (i) Start-up Businesses; (ii) Failed Businesses; (iii) Entities, Individuals or Claims not included within the Economic Class definition; and (iv) Claims covered under the Seafood Program.
[2] See Compensation Framework for Business Economic Loss Claims.
[3] See Exhibit A attached hereto for an example of how this calculation is performed.

1

028725

B.  Modified V-Shaped Revenue Pattern:

Total business revenue shows the following pattern:

1. DOWNTURN: a decline of an aggregate of 5% or more in total revenues over a period of three consecutive months between May-December 2010 compared to the same months in the Benchmark Period selected by the claimant;[4] AND

2. <u>LATER UPTURN</u>:  an increase of an aggregate of 5% or more in total revenues over the same period of three consecutive months in 2011 compared to 2010;

<u>AND ONE OR MORE OF THE FOLLOWING</u>:

a.  The claimant demonstrates a decline of 10% in the share of total revenue generated by non-local customers over the same period of three consecutive months from May-December 2010 as selected by claimant for the Modified V-Shaped Revenue Pattern as identified in (II.B.1) compared to the same three consecutive month period in 2009, as reflected in:[5]

- customer credit card receipts or other contemporaneously maintained records of payment; or
- customer registration logs (e.g., hotel registries); or
- documentation maintained in the ordinary course of business that lists customers by location and monthly sales associated with those customers; or
- business documents reflecting contemporaneous recording of receipts or invoices listing customers by location.[6]

OR

b.  For business claimants that have customers in Zones A-C, the claimant demonstrates a decline of 10% in the share of total revenue generated by customers located in Zones A-C over the same period of the three consecutive months from May-December 2010 as selected by claimant for the Modified V-Shaped Revenue Pattern as identified in (II.B.1) compared to the same three consecutive month period in 2009, as reflected in:

---

[4] See Compensation Framework for Business Economic Loss Claims.
[5] A Customer shall be considered a "non-local customer" if they reside more than 60 miles from a claimant business location.
[6] See Exhibit B attached hereto for an example of how this calculation is performed.

2

- customer credit card receipts or other contemporaneously maintained records of payment; or
- customer registration logs (e.g., hotel registries); or
- documentation maintained in the ordinary course of business that lists customers by location and monthly sales associated with those customers; or
- business documents reflecting contemporaneous recording of receipts or invoices listing customers by location.[7]

OR

c. The claimant provides contemporaneous written evidence of the cancellation of a contract as the direct result of the spill that claimant was not able to replace. Proof of a spill-related contract cancellation only establishes causation for the specific contract substantiated by the claimant and may result in recovery only of damages solely associated with such contract.

OR

C. Decline-Only Revenue Pattern:

1. <u>DOWNTURN:</u> a decline of an aggregate of 8.5% or more in revenues over a period of three consecutive months between May-December 2010 compared to the same months in the Benchmark Period selected by the claimant;[8]

AND

2. Specific documentation identifying factors outside the control of the claimant that prevented the recovery of revenues in 2011, such as:
   - The entry of a competitor in 2011
   - Bankruptcy of a significant customer in 2011
   - Nearby road closures affecting the business
   - Unanticipated interruption resulting in closure of the business
   - Product/Service replacement by Customer
   - Loss of financing and/or reasonable terms of renewal;

AND

3. <u>ONE OF THE FOLLOWING</u>:

---

[7] See Exhibit C attached hereto for an example of how this calculation is performed.
[8] See Compensation Framework for Business Economic Loss Claims.

3

028727

- The claimant demonstrates proof of a decline of 10% in the share of total revenue generated by non-local customers over the same period of three consecutive months from May-December 2010 as selected by the claimant for the Decline-Only Revenue Pattern as identified in (II.C.1) compared to the same three consecutive month period in 2009, as reflected in:[9]
    - customer credit card receipts or other contemporaneously maintained records of payment; or
    - customer registration logs (e.g., hotel registries); or
    - documentation maintained in the ordinary course of business that lists customers by location and monthly sales associated with those customers; or
    - business documents reflecting contemporaneous recording of receipts or invoices listing customers by location.[10]

- For business claimants that have customers in Zones A-C, the claimant demonstrates proof of a decline of 10% in the share of total revenue generated by customers located in Zones A-C over the same period of three consecutive months from May-December 2010 as selected by the claimant for the Decline-Only Revenue Pattern as identified in (II.C.1) compared to the same three consecutive month period in 2009, as reflected in:
    - customer credit card receipts or other contemporaneously maintained records of payment; or
    - customer registration logs (e.g., hotel registries); or
    - documentation maintained in the ordinary course of business that lists customers by location and monthly sales associated with those customers; or
    - business documents reflecting contemporaneous recording of receipts or invoices listing customers by location.[11]

OR

D. Proof of Spill-Related Cancellations

- Claimant may establish causation by providing contemporaneous written evidence of spill-related reservation cancellations (*i.e.*, letters, emails, hotel logs for the relevant time, or an affidavit from an independent third party citing the

---

[9] A Customer shall be considered a "non-local customer" if they reside more than 60 miles from a claimant business location.
[10] See Exhibit B attached hereto for an example of how this calculation is performed.
[11] See Exhibit C attached hereto for an example of how this calculation is performed.

028728

spill as the reason for cancellation) that the claimant was unable to rebook. Proof of spill-related reservation cancellations only establishes causation for the specific cancellations substantiated by the claimant and may result in recovery only of damages solely associated with such cancellations established as causally resulting from the spill. However, if the lodging facility has food and/or beverage services on site, the evidence of cancellation shall satisfy causation for the specific losses corresponding to such cancellation in those service areas as well.

- The claimant provides contemporaneous written evidence of the cancellation of a contract as the direct result of the spill that claimant was not able to replace. In the absence of contemporaneous written evidence, the claimant must present an affidavit from an independent third party affirming that the cancellation was spill-related. Proof of a spill-related contract cancellation only establishes causation for the specific contract substantiated by the claimant and may result in recovery only of damages solely associated with such contract.

OR

E. A non-rural business claimant on a property that is in close proximity (within 100 yards) to the property of a separate MDL 2179 business claimant that has established causation ("Causation Proxy Claimant") may rely on the documentation submitted by such Causation Proxy Claimant to satisfy these Causation Requirements for Business Economic Loss Claims. A "Rural Business" claimant located within one quarter-mile of the property of the Causation Proxy Claimant may rely on the documentation submitted by the Causation Proxy Claimant to satisfy these causation requirement only if the claimant provides information sufficient for the Claims Administrator to determine that a causal relationship exists between the claimant's financial performance and the financial performance of the Causation Proxy Claimant. A Rural Business shall be defined as one is located in area outside an Urban Area or Urban Cluster, as defined by the US Census Bureau's classification. Only business claimants with annual revenue of $75,000 or below are eligible to establish causation under this Subpart IIE.

III. **Causation Requirements for Zone D**

If you are not entitled to a presumption as set forth in (I) above and you are located outside of Zones A, B or C, then you must satisfy the requirements of one of the following sections A-F below:

A. V-Shaped Revenue Pattern:

Business revenue shows the following pattern:

028729

1. <u>DOWNTURN</u>:  a decline of an aggregate of  15% or more in total revenues over a period of  three consecutive months between May-December 2010 compared to the same months in the Benchmark Period selected by the claimant;[12]

    AND

2. <u>LATER UPTURN</u>:  an increase of an aggregate of 10% or more in total revenues over the same period of three consecutive months in 2011 compared to 2010. [13]

OR

B.    Modified V-Shaped Revenue Pattern:

Total business revenue shows the following pattern:

1. <u>DOWNTURN</u>:  a decline of an aggregate of 10% or more in total revenues over the same period of three consecutive months between May-December 2010 compared to the same months in the Benchmark Period selected by the claimant;[14]

    AND

2. <u>LATER UPTURN</u>:  an increase of an aggregate of 7% or more in total revenues over the same period of three consecutive months in 2011 compared to 2010;

    AND

3. <u>ONE OF THE FOLLOWING</u>:

    - The claimant demonstrates proof of a decline of 10%  in the share of total revenue generated by non-local customers over the same period of three consecutive months from May-December 2010 as selected by the claimant for the Modified V-Shaped Revenue Pattern identified in (III.B.1) compared to the same three consecutive month period in 2009, as reflected in:[15]

---

[12] See Compensation Framework for Business Economic Loss Claims.
[13] See Exhibit A attached hereto for an example of how this calculation is performed.
[14] See Compensation Framework for Business Economic Loss Claims.
[15] A Customer shall be considered a "non-local customer" if they reside more than 60 miles from a claimant business location.

6

028730

- - - customer credit card receipts or other contemporaneously maintained records of payment; or
    - customer registration logs (e.g., hotel registries); or
    - documentation maintained in the ordinary course of business that lists customers by location and monthly sales associated with those customers; or
    - business documents reflecting contemporaneous recording of receipts or invoices listing customers by location.[16]
  - For business claimants that have customers in Zones A-C, the claimant demonstrates proof of a decline of 10% in the share of total revenue generated by customers located in Zones A-C over the same period of the three consecutive months from May-December 2010 as selected by the claimant for the Modified V-Shaped Revenue Pattern identified in (III.B.1) compared to the same three consecutive month period in 2009, as reflected in:
    - customer credit card receipts or other contemporaneously maintained records of payment; or
    - customer registration logs (e.g., hotel registries); or
    - documentation maintained in the ordinary course of business that lists customers by location and monthly sales associated with those customers; or
    - business documents reflecting contemporaneous recording of receipts or invoices listing customers by location.[17]
  - The claimant provides contemporaneous written evidence of the cancellation of a contract as the direct result of the spill that claimant was not able to replace. Proof of a spill-related contract cancellation only establishes causation for the specific contract substantiated by the claimant and may result in recovery only of damages solely associated with such contract.

OR

C. Decline-Only Revenue Pattern:

1. <u>DOWNTURN:</u> a decline of an aggregate of 15% or more in total revenues over a period of three consecutive months between May-December 2010 compared to the same months in the Benchmark Period selected by the claimant without a recovery in the corresponding months of 2011;[18]

---

[16] See Exhibit B attached hereto for an example of how this calculation is performed.
[17] See Exhibit C attached hereto for an example of how this calculation is performed.
[18] See Compensation Framework for Business Economic Loss Claims.

7

028731

AND

2. Specific documentation identifying factors outside the control of the claimant that prevented the recovery of revenues in 2011:
   - The entry of a competitor in 2011
   - Bankruptcy of a significant customer in 2011
   - Nearby road closures affecting the business
   - Unanticipated interruption resulting in closure of the business
   - Produce/Source replacement by Customer,
   - Loss of financing and/or reasonable terms of renewal;

AND

3. <u>ONE OR MORE OF THE FOLLOWING</u>:

- The claimant demonstrates proof of a decline of 10% in the share of total revenue generated by non-local customers over the same period of three consecutive months from May-December 2010 as selected by the claimant for the Decline-Only Revenue Patter as identified in (III.C.1) compared to the same three consecutive month period in 2009, as reflected in:[19]
    - customer credit card receipts or other contemporaneously maintained records of payment; or
    - customer registration logs (e.g., hotel registries); or
    - documentation maintained in the ordinary course of business that lists customers by location and monthly sales associated with those customers; or
    - business documents reflecting contemporaneous recording of receipts or invoices listing customers by location.[20]

- For business claimants that have customers in Zones A-C, the claimant demonstrates proof of a decline of a 10% in the share of total revenue generated by customers located in Zone A, Zone B, or Zone C over the same period of three consecutive months from May-December 2010 as selected by the claimant for the Decline-Only Revenue Pattern as identified in (III.C.1) compared to the same three consecutive month period in 2009, as reflected in:
    - customer credit card receipts or other contemporaneously maintained records of payment; or
    - customer registration logs (e.g., hotel registries); or

---

[19] A Customer shall be considered a "non-local customer" if they reside more than 60 miles from a claimant business location.
[20] See Exhibit B attached hereto for an example of how this calculation is performed.

028732

- - o documentation maintained in the ordinary course of business that lists customers by location and monthly sales associated with those customers; or
  - o business documents reflecting contemporaneous recording of receipts or invoices listing customers by location.[21]

OR

D. Proof of Spill-Related Reservation Cancellations

- Claimant may establish causation by providing contemporaneous written evidence of spill-related reservation cancellations (*i.e.*, letters, emails, hotel logs for the relevant time) that the claimant was unable to rebook. Proof of spill-related reservation cancellations only establishes causation for the specific cancellations substantiated by the claimant and may result in recovery only of damages solely associated with such cancellations established as causally resulting from the spill. However, if the lodging facility has food and/or beverage services on site, the evidence of cancellation shall satisfy causation for the losses in those service areas as well.

- The claimant provides contemporaneous written evidence of the cancellation of a contract as the direct result of the spill that claimant was not able to replace. In the absence of contemporaneous written evidence, the claimant must present an affidavit from an independent third party affirming that the cancellation was spill-related. Proof of a spill-related contract cancellation only establishes causation for the specific contract substantiated by the claimant and may result in recovery of damages solely associated with such contract.

OR

E. For claimants defined as "Seafood Retailers" (including restaurants):

- o Claimant demonstrates purchases of Gulf of Mexico harvested seafood from Zone A, Zone B or Zone C vendors represented at least 10% of food costs during 2009, as reflected in historical purchase orders and/or invoices.

AND

---

[21] See Exhibit C attached hereto for an example of how this calculation is performed.

9

028733

- - Claimant demonstrates a decline of 7.5% in gross profit (gross sales less cost of goods sold) over a period of three consecutive months between May-December 2010 compared to the same months in 2009.

OR

F. A non-rural business claimant on a property that is in close proximity (within 100 yards) to the property of a separate MDL 2179 business claimant that has established causation ("Causation Proxy Claimant") may rely on the documentation submitted by such Causation Proxy Claimant to satisfy these Causation Requirements for Business Economic Loss Claims. A "Rural Business" claimant located within one quarter-mile of the property of the Causation Proxy Claimant may rely on the documentation submitted by the Causation Proxy Claimant to satisfy these causation requirement only if the claimant provides information sufficient for the Claims Administrator to determine that a causal relationship exists between the claimant's financial performance and the financial performance of the Causation Proxy Claimant. A Rural Business shall be defined as one is located in area outside an urban area or urban cluster, as defined by the US Census Bureau's classification. Only business claimants with annual revenue of $75,000 or below are eligible to establish causation under this Subpart IIIF.

**Exhibit A**

**Summary of Revenue Pattern Requirements for Causation Tests**

| Test | Zone A | | Zone B (Non-Tourism and Non-Seafood) | | Zone C (Non-Seafood) | | Zone D | |
|---|---|---|---|---|---|---|---|---|
| | Down | Up | Down | Up | Down | Up | Down | Up |
| V-Test | N/A | | -8.5% | 5% | -8.5% | 5% | -15% | 10% |
| Modified V-Test * | N/A | | -5% | 5% | -5% | 5% | -10% | 7% |
| Down Only Test * | N/A | | -8.50% | N/A | -8.50% | N/A | -15% | N/A |

\* = For the Modified V-Test and the Down Only Test, additional requirements apply, as described in Sections IIB, IIC, IIIB, and IIIC above.

10

028734

**Examples of Revenue Pattern Requirements for Causation Tests**

In these examples, the claimant is located in Zone B or C, uses 2008-2009 average as Benchmark Period, and has selected June, July and August as its three consecutive months.

**Example 1:**

| Month | 2008 | 2009 | Average of 2008-2009 | 2010 | 2011 | |
|---|---|---|---|---|---|---|
| | | | Revenue by Year | | | |
| June | 325,000 | 300,000 | 312,500 | 285,000 | 305,000 | |
| July | 360,000 | 350,000 | 355,000 | 330,000 | 345,000 | |
| August | 340,000 | 325,000 | 332,500 | 295,000 | 330,000 | |
| 3-Month Aggregate: [Sum of June, July, August] | 1,025,000 | 975,000 | 1,000,000 | 910,000 | 980,000 | |
| | | | Down Percentage: | | -9.0% | =(910,000 - 1,000,000)/1,000,000 |
| | | | Up Percentage: | | 7.7% | =(980,000 - 910,000)/910,000 |

Claimant passes V-Test. Note: A claimant that satisfies the revenue pattern requirements for the V-Test will always also satisfy the requirements for the Modified V-Test and Down Only Test.

**Example 2:**

| Month | 2008 | 2009 | Average of 2008-2009 | 2010 | 2011 | |
|---|---|---|---|---|---|---|
| | | | Revenue by Year | | | |
| June | 325,000 | 300,000 | 312,500 | 295,000 | 320,000 | |
| July | 360,000 | 350,000 | 355,000 | 335,000 | 355,000 | |
| August | 340,000 | 325,000 | 332,500 | 315,000 | 340,000 | |
| 3-Month Aggregate: [Sum of June, July, August] | 1,025,000 | 975,000 | 1,000,000 | 945,000 | 1,015,000 | |
| | | | Down Percentage: | | -5.5% | =(945,000 - 1,000,000)/1,000,000 |
| | | | Up Percentage: | | 7.4% | =(1,015,000 - 945,000)/945,000 |

Claimant fails V Test and the Down Only Test.
Claimant has satisfied the revenue pattern requirement for the Modified V-Test and can establish causation if able to satisfy the additional requirements described in Section IIB above.

**Example 3:**

| Month | 2008 | 2009 | Average of 2008-2009 | 2010 | 2011 | |
|---|---|---|---|---|---|---|
| | | | Revenue by Year | | | |
| June | 325,000 | 300,000 | 312,500 | 285,000 | 300,000 | |
| July | 360,000 | 350,000 | 355,000 | 330,000 | 325,000 | |
| August | 340,000 | 325,000 | 332,500 | 295,000 | 310,000 | |
| 3-Month Aggregate: [Sum of June, July, August] | 1,025,000 | 975,000 | 1,000,000 | 910,000 | 935,000 | |
| | | | Down Percentage: | | -9.0% | =(910,000 - 1,000,000)/1,000,000 |
| | | | Up Percentage: | | 2.7% | =(935,000 - 910,000)/910,000 |

Claimant fails V Test and the Modified V-Test.
Claimant has satisfied the revenue pattern requirement for the Down Only Test and can establish causation if able to satisfy the additional requirements described in Section IIC above.

Notes:

The causation tests would work in the same way for claimants in Zone D with higher thresholds for the tests. In Zone D, the V-Test thresholds are -15% decline, 10% upturn; the Modified V-Test thresholds are -10% decline, 7% upturn; the Down-Only Test threshold is -15%.

11

028735

## Examples of Revenue Pattern Requirements for Causation Tests

In these examples, the claimant is located in Zone B or C, uses 2008-2009 average as Benchmark Period, and has selected June, July and August as its three consecutive months.

Example 4 demonstrates that under an aggregate test, three months of revenues are summed. The individual months may be up or down, as long as the three month aggregate period passes the test.

**Example 4A:**

| | | | Revenue by Year | | |
|---|---|---|---|---|---|
| Month | 2008 | 2009 | Average of 2008-2009 | 2010 | 2011 |
| June | 325,000 | 300,000 | 312,500 | 285,000 | 305,000 |
| July | 360,000 | 350,000 | 355,000 | 330,000 | 345,000 |
| August | 340,000 | 325,000 | 332,500 | 295,000 | 330,000 |
| 3-Month Aggregate: [Sum of June, July, August] | 1,025,000 | 975,000 | 1,000,000 | 910,000 | 980,000 |
| | | | **Down Percentage:** | **-9.0%** | =(910,000 - 1,000,000)/1,000,000 |
| | | | **Up Percentage:** | **7.7%** | =(980,000 - 910,000)/910,000 |

*Claimant passes V-Test.  Note: A claimant that satisfies the revenue pattern requirements for the V-Test will always also satisfy the requirements for the Modified V-Test and Down Only Test.*

**Example 4B:**

| | | | Revenue by Year | | |
|---|---|---|---|---|---|
| Month | 2008 | 2009 | Average of 2008-2009 | 2010 | 2011 |
| June | 325,000 | 300,000 | 312,500 | 385,000 | 305,000 |
| July | 360,000 | 350,000 | 355,000 | 230,000 | 345,000 |
| August | 340,000 | 325,000 | 332,500 | 295,000 | 330,000 |
| 3-Month Aggregate: [Sum of June, July, August] | 1,025,000 | 975,000 | 1,000,000 | 910,000 | 980,000 |
| | | | **Down Percentage:** | **-9.0%** | =(910,000 - 1,000,000)/1,000,000 |
| | | | **Up Percentage:** | **7.7%** | =(980,000 - 910,000)/910,000 |

*Claimant passes V-Test.*

**Example 4C:**

| | | | Revenue by Year | | |
|---|---|---|---|---|---|
| Month | 2008 | 2009 | Average of 2008-2009 | 2010 | 2011 |
| June | 325,000 | 300,000 | 312,500 | 385,000 | 305,000 |
| July | 360,000 | 350,000 | 355,000 | 430,000 | 345,000 |
| August | 340,000 | 325,000 | 332,500 | 95,000 | 330,000 |
| 3-Month Aggregate: [Sum of June, July, August] | 1,025,000 | 975,000 | 1,000,000 | 910,000 | 980,000 |
| | | | **Down Percentage:** | **-9.0%** | =(910,000 - 1,000,000)/1,000,000 |
| | | | **Up Percentage:** | **7.7%** | =(980,000 - 910,000)/910,000 |

*Claimant passes V-Test.*

Notes:

The causation tests would work in the same way for claimants in Zone D with higher thresholds for the tests.  In Zone D, the V-Test thresholds are -15% decline, 10% upturn; the Modified V-Test thresholds are -10% decline, 7% upturn; the Down-Only Test threshold is -15%.

028736

**Exhibit B**

# Example of Customer Mix Test (Non-Local Customers)

The claimant in this Exhibit B uses the same three-month time period as the claimant in Exhibit A (June-July-August).

To pass the test, claimants must demonstrate proof of a decline of 10% or more in the share of total revenue generated by non-local customers over the same period of three consecutive months from May-December 2010 as selected by the claimant for the Modified V-Test or Down Only Tests compared to the same three consecutive months in 2009.

**Example 1:**

| | LT= Less than | GE=Greater than or equal to |
|---|---|---|
| **Customer Residence** | **June-August '09** | **June-August '10** |
| LT 60 miles from claimant | $80,000 | $66,000 |
| GE 60 miles from claimant | $20,000 | $14,000 |
| Total | $100,000 | $80,000 |
| % GE 60 miles | 20% | 17.5% |
| | *Claimant passes Customer Mix Test:* *Claimant has a 12.5 percent decline in share of total revenue from non-local customers [12.5%= .125 = (20-17.5)/20].* | |

**Example 2:**

| **Customer Residence** | **June-August '09** | **June-August '10** |
|---|---|---|
| LT 60 miles from claimant | $50,000 | $40,000 |
| GE 60 miles from claimant | $50,000 | $40,000 |
| Total | $100,000 | $80,000 |
| % GE 60 miles | 50% | 50% |
| | *Claimant fails Customer Mix Test:* *No change in share of total revenue from non-local customers. [0% = 0 = (50-50)/50].* | |

**Example 3:**

| **Customer Residence** | **June-August '09** | **June-August '10** |
|---|---|---|
| LT 60 miles from claimant | $50,000 | $48,000 |
| GE 60 miles from claimant | $50,000 | $40,000 |
| Total | $100,000 | $88,000 |
| % GE 60 miles | 50% | 45.5% |
| | *Claimant fails Customer Mix Test:* *Claimant has a 9% decline in share of total revenue from non-local customers [9% = .09 = (50-45.5)/50].* | |

028737

**Exhibit C**

# Example of Customer Mix Test (Customers in Zones A-C)

The claimant in this Exhibit B uses the same three-month time period as the claimant in Exhibit A (June-July-August).

To pass the test, claimants must demonstrate proof of a decline of 10% or more in the share of total revenue generated by customers in Zones A-C over the same period of three consecutive months from May-December 2010 as selected by the claimant for the Modified V-Test or Down Only Tests compared to the same three consecutive months in 2009.

### Example 1:

| Customer Residence | June-August '09 | June-August '10 |
|---|---|---|
| Zone D | $80,000 | $66,000 |
| Zones A-C | $20,000 | $14,000 |
| Total | $100,000 | $80,000 |
| % Zones A-C | 20% | 17.5% |
| | ***Claimant passes Customer Mix Test:*** *Claimant has a 12.5 percent decline in share of total revenue from customers in Zones A-C  [12.5%= .125 = (20-17.5)/20]* | |

### Example 2:

| Customer Residence | June-August '09 | June-August '10 |
|---|---|---|
| Zone D | $50,000 | $40,000 |
| Zones A-C | $50,000 | $40,000 |
| Total | $100,000 | $80,000 |
| % Zones A-C | 50% | 50% |
| | ***Claimant fails Customer Mix Test:*** *No change in share of total revenue from customers in Zones A-C. [0% = 0 = (50-50)/50]* | |

### Example 3:

| Customer Residence | June-August '09 | June-August '10 |
|---|---|---|
| Zone D | $50,000 | $48,000 |
| Zones A-C | $50,000 | $40,000 |
| Total | $100,000 | $88,000 |
| % Zones A-C | 50% | 45.5% |
| | ***Claimant fails Customer Mix Test:*** *Claimant has a 9% decline in share of total revenue from customers in Zones A-C [9% = .09 = (50-45.5)/50]* | |

028738

**Addendum To
Causation Requirements For Business Economic Loss Claims and
<u>Compensation Framework for Business Economic Loss Claims</u>**

The term "Benchmark Period" is defined at pp. 1-2 in the **Compensation Framework for Business Economic Loss Claims** (Ex. 4C). That definition provides:

> The Benchmark Period is the pre-DWH Spill time period which claimant chooses as the baseline for measuring its historical financial performance. The claimant can select among the following Benchmark Periods: 2009; the average of 2008-2009; or the average of 2007-2009, provided that the range of years selected by the claimant will be utilized for all Benchmark Period purposes.

Footnote 2 of the **Causation Requirements For Business Economic Loss Claims** (Ex. 4B) specifically incorporates that definition of Benchmark Period by reference.

Accordingly, once the claimant selects the Benchmark Period year(s) (2009, the average of 2008-2009, or the average of 2007-2009), the **same** Benchmark Period year(s) are used "for all Benchmark Period purposes" -- specifically, the same Benchmark Period year(s) are used for purposes of determining **both** causation and compensation.

In contrast, a claimant is not required to use the same **months** in the Benchmark Period for purposes of establishing causation pursuant to Ex. 4B and determining compensation pursuant to Ex. 4C.

For example, when evaluating whether a claimant can satisfy causation using the "V Test," the claimant may select any consecutive 3-month period between May and December 2010 for comparison to a comparable period in the Benchmark Period (i.e., 2009, the average of 2008-2009, or the average of 2007-2009). After establishing causation, however, the claimant may select a different 3 or more consecutive <u>months</u> between May and December 2010 in determining compensation in accordance with the **Compensation Framework for Business Economic Loss Claims**, so long as the claimant uses the same Benchmark Period <u>years</u> as the basis for comparison. Thus, if the claimant selected for *causation* the three months of May - July in the Benchmark Period years of the average of 2008-2009, the claimant can select for *compensation* different months -- e.g., August - October -- but must use the same average of 2008-2009 Benchmark Period. The same Benchmark Period year(s) thus must be used both for causation (Ex. 4B) and compensation (Ex. 4C).

The additional examples on the next page illustrate these rules:

028779

Scenario 1:

1) Claimant selected the months of May-July 2010 for the purpose of determining causation, and the claimant, using these months, meets the causation test for the Benchmark period years of 2009, 2008-2009 and 2007-2009;
2) In determining Compensation, Claimant would be allowed to select the months of August through November 2010 as compared to the months of August through November in either 2009, 2008-2009 or 2007-2009 as the Benchmark years – whichever provides the highest compensation.

Scenario 2:

1) Claimant selected the months of October – December 2010 for the purpose of determining causation and the claimant, using these months, meets the causation test for the Benchmark period years of 2009, 2008-2009;
2) In determining compensation, Claimant could select the months of May-September 2010 as compared to the months of May-September in either 2009 or 2008-2009 – whichever provides the highest compensation.

Scenario 3:

1) Claimant selected the months of June – August 2010 for the purpose of determining causation and the claimant, using these months, meets the causation test for the Benchmark period year of 2009.  In addition, Claimant selected the months of August – October 2010 for the purpose of determining causation, and the claimant, using these months, meets the causation test for the Benchmark period years of 2007-2009;
2) In determining compensation, Claimant could select the months of May-December 2010 as compared to the months of May-December in either 2009 or 2007-2009 – whichever provides the highest compensation.

028780