# EXHIBIT 8A

## Framework for Individual Economic Loss Claims

### Overview

Individual economic loss claims are claims by **Individuals**, who shall be defined as (i) Natural Persons who (a) satisfy (or whose employers satisfy) the Class Definition and (b) whose losses are not excluded from the Class and (ii) who seek compensation for lost earnings from employment due to or resulting from the DWH Spill for claims that are not excluded from the Class, with the following exceptions:

1. All Natural Persons (other than Natural Persons addressed in 2, 3 and 4 below) claiming losses related to business income required to be reported on Internal Revenue Service Form 1040 Schedules C, E or F are governed by the **Documentation Requirements for Business Economic Loss Claims**, **Causation Requirements for Business Economic Loss Claims**, and **Compensation Framework for Business Economic Loss Claims**, or, if appropriate, the **Failed Business Framework** or the **Start-up Business Framework**, rather than this **Framework for Individual Economic Loss Claims**.[1]

2. All Natural Persons claiming losses as an **Individual Periodic Vendor ("IPV")** or a **Festival Vendor** are governed by the **Addendum to Individuals Framework – IPVs and Festival Vendors**.[2]

3. Claims for lost earnings from employment as a **Commercial Fisherman**, **Seafood Crew**, **Oyster Leaseholder,** or **Seafood Vessel Owner**, all as defined in the **Seafood Distribution Chain Definitions**, shall be compensated through the **Seafood Program**, rather than this **Framework for Individual Economic Loss Claims**.

4. Claims by self-employed Natural Persons who satisfy the definition of a **Commercial Fisherman**, **Seafood Crew**, **Oyster Leaseholder**, or **Seafood Vessel Owner**, all as defined in the **Seafood Distribution Chain Definitions**, shall be compensated through the **Seafood Program**, rather than this **Framework for Individual Economic Loss Claims**.

As detailed below, **Individual** compensation for lost earnings is calculated as the difference between (i) a claimant's **Expected Earnings** for a specified period of time after the DWH Spill and (ii) a claimant's **Actual Earnings** over the same specified period.[3]  Each claimant must submit proof of earnings during the relevant time periods, as well as specified additional documentation to establish that the DWH Spill caused a loss of earnings.

Under this **Framework for Individual Economic Loss Claims**, a claimant may recover for lost earnings by submitting a sworn Claim Form and supporting documentation (when required) establishing that the claimant satisfies the documentation and causation requirements of one of

---

[1] Words or phrases in **Capitalized Bold-face Type** are defined terms with the meaning set forth in the "Definitions" section of this **Individual Economic Loss Claim Framework.**

[2] The terms **IPV** and **Festival Vendor** are defined in the **Addendum to Individuals Framework – IPVs and Festival Vendors**.

[3] All damages paid shall be paid on a pre-tax basis with proper Form 1099 or other reporting as required by the IRS.

four alternative methodological categories.  These categories, which are set forth fully in Sections I-IV of this **Framework for Individual Economic Loss Claims**, are summarized below.[4]

I.  INDIVIDUAL CLAIMANTS WITH CONTEMPORANEOUS TAX DOCUMENTS FOR 2010 AND BENCHMARK PERIOD:  Applies to **Individuals** providing **Tax Information Documents** for 2010 and the claimant selected **Base Year(s)**.  Requirements detailed in Section I must be fulfilled (**Category I**, beginning at page 10).

II.  INDIVIDUAL CLAIMANTS WITH PAY PERIOD OR OTHER EARNINGS DOCUMENTATION FOR 2010 AND BENCHMARK PERIOD:  Applies to **Individuals** without **Tax Information Documents** but with other contemporaneous documents presenting employment and compensation information for 2010 and the **Benchmark Period**.  Requirements detailed in Section II must be fulfilled (**Category II**, beginning at page 19).

III.  INDIVIDUAL CLAIMANTS WITH EARNINGS DOCUMENTATION FOR 2010 BUT WITHOUT COMPARABLE BENCHMARK PERIOD EARNINGS:  Applies to **Individuals** with **Tax Information Documents** or other contemporaneous documents presenting employment and compensation information for 2010 but without a comparable **Benchmark Period**. Requirements detailed in Section III must be fulfilled (**Category III**, beginning at page 28).

IV.  INDIVIDUAL CLAIMANTS WITHOUT EARNINGS DOCUMENTATION WHO SUBMIT INDIVIDUAL AND EMPLOYER SWORN WRITTEN STATEMENTS TO ESTABLISH EARNINGS: Applies to **Individuals** without any documentary proof but providing **Sworn Written Statements** (from both the claimant and the employer) presenting employment and compensation information for 2010.  Requirements detailed in Section IV must be fulfilled (**Category IV**, beginning at page 44).

**Definitions**

The following defined terms used in this **Framework for Individual Economic Loss Claims** shall have the meanings set forth below and be presented in **bold-faced type** throughout this Framework.

A.  **Actual Earnings:**  Claimant's income actually earned from the **Claiming Job(s)** during the **Compensation Period** excluding **Spill-Related Payments** and employment earnings from the VoO program (if any).  For purposes of calculating **Claimant Lost Earnings**, there may be

---

[4] For purposes of this **Framework for Individual Economic Loss Claims**, the presumption shall be that the location of economic loss for the **Claiming Job** is the location of the claimant's employer within the Class Definition geographic area, not the claimant's residence.  Claimants may establish an alternative location of economic loss for the **Claiming Job** other than their employer's location by providing evidence that their primary employment activities and responsibilities occur in a location different from their employer's business address, and that the claimed DWH Spill-related economic loss occurred at such location.  For example, the claimant works for a housekeeping company located in Zone C that services households in Zones A, B and C, including vacation condominiums located in Zone A, and the claimant establishes that she works primarily in Zone A.

028840

adjustments to **Actual Earnings** pursuant to Step 5 of the Compensation Calculations set forth in Categories I, II and III.

B.  **Base Year(s)**: A claimant selected period used for historical comparison and defined as one of the following options, provided that once selected, the same **Base Year(s)** shall be used in this **Framework for Individual Economic Loss Claims** for all purposes for which a **Base Year(s)** is required:

    1.  2009; or
    2.  The average of 2008 and 2009; or
    3.  The average of 2007, 2008 and 2009.

C.  **Benchmark Period**:  A time period for which a claimant was engaged in a **Claiming Job** or a comparable job (where "comparable" shall mean a job with the same employer, or a job with a new employer where the claimant's earned income changed by less than 20% between January 1 – April 30 of the **Base Year(s)** and January 1 – April 30, 2010), and which a claimant chooses for the following:

    1.  To establish baseline earnings to be used in calculating the claimant's **Expected Earnings**.

        i.  For Categories I and II, the **Benchmark Period** is the time period of at least 90 consecutive days within the claimant-selected **Base Year(s)** that corresponds to the same calendar months and days selected by the claimant as the **Compensation Period**.  In circumstances where the claimant chooses multiple **Base Years**, the **Benchmark Period** shall be calculated as the average of the time periods (of at least 90 consecutive days) from each **Base Year** that correspond to the same calendar months and days selected by the claimant as the **Compensation Period**.

        ii.  For a claimant in Category III, **2011 Benchmark Period** shall be defined as a 2011 time period of at least 90 consecutive days that corresponds to the same calendar months and days as the claimant's selected **Compensation Period**.

        iii.  If the pay periods fall on different dates in the **Benchmark Period** or the **2011 Benchmark Period**, earnings shall be allocated pro-rata to correspond to the dates of the **Compensation Period**.

        iv.  Examples of **Benchmark Period** and **2011 Benchmark Period** can be seen in Appendices A through F attached hereto.

    AND

    2.  If applicable, to establish the baseline historical earnings to be used in calculating the **Claimant Specific Growth Factor**.  For this purpose, the **Benchmark Period** is the consecutive pay periods which cover January through April of the claimant-selected **Base Year(s)**.  In circumstances where the claimant chooses multiple **Base Years**, the **Benchmark Period** shall be calculated as the average of the corresponding periods from each **Base Year**.   Examples can be seen in Appendices A through F attached hereto.

028841

D. **Claimant Lost Earnings:**  The claimant's **Expected Earnings** from all **Claiming Jobs** minus the claimant's **Actual Earnings** from all **Claiming Jobs** during the **Compensation Period**, minus any **Offsetting Earnings**.

E. **Claimants Without Comparable Benchmark Earnings:  Individuals** without historical earnings comparable to the **Compensation Period** employment shall use **2011 Benchmark Period** earnings (if any) to establish **Expected Earnings** (as described in Category III).  Those claimants are:

   1. **New Entrant To Employment:**  An **Individual** (i) who was not employed between January 1, 2007 and April 20, 2010, and (ii) who accepted an offer of first-time employment in a new job, full or part-time (including but not limited to seasonal employment), prior to April 20, 2010, to start working during the period April 21, 2010 to December 31, 2010, and (iii) whose offer was withdrawn or amended during 2010 after the DWH Spill.

      For example, if as of April 20, 2010, an **Individual** who had never been employed had received and accepted an offer of employment to begin working between April 21 and December 31, 2010, the **Individual** shall be considered a **New Entrant to Employment**.  Similarly, if an **Individual** had previously engaged in part-time work, but as of April 20, 2010 had accepted an offer for his or her first full-time position (or for his or her first seasonal employment position) to begin working between April 21 and December 31, 2010, the **Individual** shall also be considered a **New Entrant to Employment**.  And, if an **Individual** had worked prior to 2007, but not between January 1, 2007 and April 20, 2010, and had accepted an offer of employment to begin working between April 21 and December 31, 2010, the **Individual** shall be considered a **New Entrant to Employment**.

   2. **Claimant Who Had Less Than Twelve Months Of Earnings History But Was Employed On April 20, 2010:**  An **Individual** with 2010 earnings information who was employed on April 20, 2010 but who did not become employed until after April 20, 2009.

   3. **Career Changer:**  An **Individual** who (i) changed employer(s) and line of work between the **Benchmark Period** and the **Compensation Period** and (ii) whose earnings during the period January 1 - April 30, 2010 changed by more than plus or minus 20% compared to their earnings during the period January 1 - April 30 of the **Base Year(s)**.

F. **Claiming Job(s):**  The job held or secured by the claimant as of April 20, 2010 for which the claimant seeks compensation and for which causation requirements under this **Framework for Individual Economic Loss** are satisfied.  Any job from which the claimant generated earnings during the **Benchmark Period** and/or the **Compensation Period** (including Schedule C or F activities) and for which the claimant does not seek compensation shall be a **Non-Claiming Job.**

G. **Claims Administrator:**  The Claims Administrator and related staff appointed pursuant to the Economic And Property Damages Settlement Agreement and any Claims Administration Vendor operating in the Class Action Settlement Office.

028842

H. **Compensation Period**:  The **Compensation Period** is selected by the claimant.  It must include 90 or more consecutive days between April 21, 2010 and December 31, 2010, except for claimants who are in the **Primary Seafood Industry**[5] for which the time period is 90 or more consecutive days between April 21, 2010 and April 30, 2011.  Claimant can select only one **Compensation Period**, and the **Compensation Period** must correspond with the pay periods used by the employer (*i.e.*, start and end with the standard daily, weekly, or monthly pay period used by the employer).[6]

I. **Eligible Employer**:  An employer that (a) filed a claim in the MDL 2179 settlement process and established causation according to rules described in **Causation Requirements For Business Economic Loss Claims** or (b) received a compensation offer from the GCCF.

J. **Employment-Related Benefits Losses**:  Losses defined in the **Addendum Regarding Compensation Related to a Claimant's Loss of Employment-Related Benefits Income as a Result of the DWH Spill**.

K. **Expected Earnings**:  Claimant's earnings in the **Compensation Period** in the **Claiming Job** that would have been expected in the absence of the DWH Spill.

L. **Final Claimant Compensation**:  The **Final Compensation Amount** shall be the amount owed to the claimant.  For Categories I, II, and III, the **Final Compensation Amount** shall equal the sum of the **Claimant Lost Earnings**, any applicable **RTP**, any **Employment-Related Benefits Losses**, any **Reimbursable Training Costs**, and any **Reimbursable Search Costs**, less any **Spill-Related Payments**.  For Category IV, the **Final Compensation Amount** shall be the sum of the **Claimant Lost Earnings** and any applicable **RTP**, less any **Spill-Related Payments**.

M. **Framework for Individual Economic Loss Claims**:  This **Framework for Individual Economic Loss Claims**.

N. **Growth Factor**:  For claimants in Categories I – III only, **Growth Factor** shall be defined as any of the growth-related factors described below that may be applied in the calculation of a claimant's **Expected Earnings**, where the claimant is eligible, including the **Claimant Specific Growth Factor** or the **General Growth Factor**, and, if applicable, the **Industry Growth Factor**. Only certain claimants who qualify for compensation pursuant to Categories I, II and III below are eligible to receive any applicable factors.  **Growth Factors** are not applicable in Category IV.

    1. **Claimant Specific Growth Factor**:  **Claimant Specific Growth Factor** shall be defined as an individualized **Growth Factor** for each **Claiming Job** for which the claimant provides

---

[5] As used herein, the definitions of **Primary Seafood Industry** and **Secondary Seafood Industry** are set forth in the **Seafood Distribution Chain Definitions.**

[6] If the claimant has multiple **Claiming Jobs** which utilize different pay periods, the **Compensation Period** dates shall be selected to correspond to pay periods from the position producing greatest earnings.  Other wages (utilizing different pay period schedules), including wages from jobs worked in the **Compensation Period** for which lost earnings are not sought (where relevant), shall be allocated pro-rata to the days corresponding to the **Compensation Period**.  See examples at Appendix C.

028843

**Pay Period Earnings Documentation**. The **Claimant Specific Growth Factor** shall be calculated as the ratio of the claimant's actual January-April 2010 base earnings (including commissions but excluding bonuses) in the **Claiming Job** divided by actual January-April base earnings in the **Base Year(s)** (including commissions but excluding bonuses), provided that if the calculated rate is greater than +10%, the **Claimant Specific Growth Rate** shall be +10%, and if the calculated rate is less than -1.5%, the **Claimant Specific Growth Rate** shall be -1.5%.   If the **Claimant Specific Growth Factor** reflects a change of plus or minus 20% *and* the **Individual** was employed in a new line of work with a new employer, claimant shall be considered a **Career Changer** and be subject to the requirements of **Category III: INDIVIDUAL CLAIMANTS WITH EARNINGS DOCUMENTATION FOR 2010 BUT WITHOUT COMPARABLE BENCHMARK PERIOD EARNINGS**.

2. **General Growth Factor:** **General Growth Factor** shall be defined as a **Growth Factor** of 2.0% that shall be assumed and applied for a claimant in Category I or Category II who does not provide **Pay Period Earnings Documentation** or who is a **Seasonal Employee** (and therefore has no **Claimant Specific Growth Factor** because he or she has provided no basis for calculating it). For a claimant in Category III who has **2011 Benchmark Period** earnings, those earnings shall be decreased by the **General Growth Factor** to calculate **Expected Earnings**. For a **Career Changer** who does not have 2011 earnings information for the **2011 Benchmark Period**, the **General Growth Factor** may apply in establishing **Expected Earnings** pursuant to Category III.

3. **Industry Growth Factor**: **Industry Growth Factor** shall be defined as a **Growth Factor** of 1.5% and may be applied to claimants in Categories I, II and III in certain circumstances where the **Claiming Job** is a non-salaried, hourly wage job in both (i) the **Compensation Period** and (ii) the **Benchmark Period** or 2011, as relevant.

O. **Offsetting Earnings:** Earnings from any **Non-Claiming Job(s)** during the claimant's **Compensation Period** in excess of earnings from any **Non-Claiming Job(s)** during the claimant's **Benchmark Period**, if any, shall offset **Claimant Lost Earnings** unless:

1. If the claimant provides documentation (as described in O.3) establishing that he or she worked the same or more total hours at all **Claiming Job(s)** during the **Compensation Period** (as compared to the **Benchmark Period**), then (a) no **Offsetting Earnings** shall apply, and (b) to the extent the claimant worked more total hours in all **Claiming Jobs** in the **Compensation Period** (relative to the **Benchmark Period**), **Actual Earnings** shall be limited as set forth in Step 5 of the Compensation Calculation**s** set forth in Categories I, II and III.

    OR

2. If the claimant (i) provides documentation (as described in O.3) establishing that he or she worked fewer total hours at all **Claiming Jobs** during the **Compensation Period** (as compared to the **Benchmark Period**), and (ii) provides evidence as to the number of hours worked in a **Non-Claiming Job(s)** during the **Compensation Period** and the **Benchmark Period**, then **Offsetting Earnings** shall be calculated as follows:

6

028844

      i.   The average hourly rate for the **Non-Claiming Job(s)** during the **Compensation Period**, multiplied by the *lesser* of the following:

         a.   The total number of increased hours worked in the **Non-Claiming Job(s)** during the **Compensation Period** above the hours (if any) worked at that job or activity during the claimant's **Benchmark Period** (which may be zero); or

         b.   The sum of the total number of hours lost in the **Claiming Job(s)**.

   3.   Documentation sufficient to satisfy O.1 and O.2 by establishing the number of hours worked (and, if relevant, wage rate) in (a) the **Claiming Job(s)** and (b) the **Non-Claiming Job(s)** during both (c) the **Compensation Period** and (d) the **Benchmark Period** (as relevant), includes the following:

      i.   For any **Claiming Job** or **Non-Claiming Job** which is paid on an hourly basis, the claimant must provide documentation establishing the number of hours worked for each hourly position and for the relevant period(s). Documentation could include, for example, pay stubs.

      ii.   For non-hourly jobs, the claimant must provide an **Employer Sworn Written Statement** and any other documentation establishing the number of hours worked for each relevant position and period, including, but not limited to documentation reflecting overtime worked.

      iii.   For any Schedule C or F activity, the claimant must provide a **Claimant Sworn Written Statement** and all available supporting documentation disclosing the number of hours worked in connection with the identified activity for each of the relevant periods.

P.  **One Time, Non-Recurring Event Compensation**:  If a claimant can establish lost earnings income or profit from a **Claiming Job** due to the cancellation of a contract for a **One Time, Non-Recurring Event** as set forth in the **One Time Loss Addendum**, the claimant may receive additional compensation in accord with **One Time Loss Addendum**.

Q.  **Pay Period Earnings Documentation:**  Documentation sufficient to establish a claimant's earnings from employment and hours worked during the applicable period(s), including (i) the **Benchmark Period** (relevant for Categories I and II), (ii) January through April of 2010 and the **Base Year(s)**, (iii) the **Compensation Period** (relevant for Categories I through III), and (iv) the **2011 Benchmark Period** (relevant for Category III).  Documentation may include:

- Paycheck stubs; and/or

- Other employer records documenting actual amounts paid, if applicable; and/or

- Bank records showing income deposits and supporting documentation indicating the source of those deposits; and/or

028845

- A bank statement or other contemporaneous documentation verifying the absence of income for all or part of the **Compensation Period**; and/or

- Receipts or records from check cashing and payday loan services; and/or

- Contracts for employment accompanied by documentation establishing that wages or other amounts to be paid pursuant to the contract, if applicable, were in fact paid; and/or

- Pay period earnings detail submitted under oath and included in court filings (for example, documentation provided in connection with divorce, child support, or wage garnishment proceedings).

R. **Reimbursable Search Costs:**  Documented travel and job search costs actually incurred after April 20, 2010 in searching for alternative employment due to job loss or work reduction after the DWH Spill.

S. **Reimbursable Search Cost Documentation:**  Documents reflecting all amounts incurred for **Reimbursable Search Costs** sought by the claimant.

T. **Reimbursable Training Costs:**  Training, licensing and educational tuition, fees, and similar expenses for courses or programs related to improving job skills or securing alternate employment (*i.e.*, education not in pursuit of a two- or four-year degree) in which claimant enrolled and participated commencing on or after April 21, 2010 through December 31, 2010 due to job loss or work reduction after the DWH Spill.

U. **Reimbursable Training Cost Documentation:**  Documents reflecting all amounts paid for **Reimbursable Training Costs** sought by the claimant, and all certificates, course credits, diplomas, or licenses obtained by the claimant based upon the claimant's completion of such training.

V. **Risk Transfer Premium ("RTP"):**  A factor by which **Claimant Lost Income** may be multiplied as defined and agreed to in the **Economic And Property Damages Settlement Agreement**.

W. **Seasonal Employee:**  An **Individual** with earnings during 6 or fewer consecutive months during the **Base Year(s)** but who was not employed as of April 20, 2010, and who as of that date had accepted an offer of employment for a later period in 2010 which subsequently was withdrawn or amended during 2010 after the DWH Spill.

X. **Spill-Related Payments:**  Compensation paid to a claimant by BP or GCCF related to the DWH Spill for loss of earnings for the **Claiming Job**, including (but not limited to) payments made pursuant to the BP/GCCF Oil Pollution Act of 1990 ("OPA") claims facilities.

Y. **Sworn Written Statement**:  A written statement submitted under penalties of perjury, which may be submitted electronically, along with any attachments, but which must be manually signed by the person making the statement and reflect such manual signature.  In addition,

028846

the statement may have a second, electronic signature using an approved technology such as (but not limited to) Adobe Echosign.[7]  A **Sworn Written Statement** submitted by a claimant is a **Claimant Sworn Written Statement** and a **Sworn Written Statement** submitted by a claimant's employer is an **Employer Sworn Written Statement**.

Z.  **Tax Information Documents**:  **Tax Returns** and Forms W-2 and/or 1099.

AA. **Tax Returns:**  Federal or state income tax returns, including any relevant supporting schedules.

**Sworn Claim Form Requirement**

Each claimant must complete and submit a Claim Form which the claimant shall verify under penalties of perjury.  The Claim Form shall direct the claimant to provide information, including the claimant's chosen **Base Year(s)** and **Compensation Period**.  The claimant shall attach required documents supporting the claim.  All statements made in, and documents submitted with, the Claim Form may be verified as judged necessary by the **Claims Administrator**.  The claimant shall provide forms in which the claimant shall authorize the **Claims Administrator** to: (1) verify employment and obtain copies of wage records, (2) obtain **Tax Information Documents** from the Internal Revenue Service and/or Social Security Administration, and (3) confirm any bank account information used in support of a claim, but the authorization for bank records shall be limited to the **Benchmark Period** (or the **2011 Benchmark Period**, where relevant) and **Compensation Period**.  The Claim Form may be submitted in electronic fashion, including scanning of documents or copies of verification from public databases providing the same information as would be provided by the original document. The Claim Form and any **Sworn Written Statements** must be manually signed and reflect such manual signature.  In addition, the Claim Form and any **Sworn Written Statement** may have a second, electronic signature using an approved technology such as (but not limited to) Adobe Echosign.[8]

---

[7] The parties agree that the signed statement must be as fully enforceable against the maker as a hand-signed statement.  If and to the extent it is determined that an e-signed statement will be so enforceable, then an e-signed statement alone will suffice.

[8] The parties agree that the signed statement must be as fully enforceable against the maker as a hand-signed statement.  If and to the extent it is determined that an e-signed statement will be so enforceable, then  an e-signed statement alone will suffice.

028847

**I.**   **CATEGORY I:  INDIVIDUAL CLAIMANTS WITH CONTEMPORANEOUS TAX INFORMATION DOCUMENTS FOR 2010 AND BENCHMARK PERIOD**

If available, the **Individual** claimant must provide claimant's federal or state **Tax Returns** or Forms W-2 and/or 1099 for the **Compensation Period** and for the **Base Year(s)**.[9]  In such cases, the **Individual** claimant's compensation shall be calculated according to this Category I.  If **Tax Returns** or Forms W-2 and/or 1099 are not available, the claimant must provide a written statement under oath attesting that no **Tax Returns** are available and attesting that the claimant made diligent efforts to obtain Forms W-2 from his or her employer.  An **Individual** claimant who is a **Career Changer** should proceed to Category III.  A claimant who lacks **Tax Information Documents** and/or data for a **Benchmark Period** cannot proceed under this Category I and should proceed to Category II, III or IV, as relevant.

A.   **Documentation Requirements**

1.   **Documentation Establishing Employment Earnings:**  For each year included in the **Base Year(s)**, and for 2010, **Individual** claimants must provide at least one of the following **Tax Information Documents**:

- Federal tax Form 1040 pages 1 and 2, all pages of Schedules C, E, and F, and any supporting statements attached to the Form 1040 filing (including Form W-2s for joint returns); or
- State tax return, including any supporting schedules or statements; or
- Forms W-2 documenting earnings; and/or
- Forms 1099 documenting earnings.

2.   **Documentation Establishing Pay Period Earnings:**  To the extent available, a claimant must provide **Pay Period Earnings Documentation** for the **Benchmark Period** and for 2010.  A claimant also must provide documentation to establish any bonuses and/or commissions received during the **Benchmark Period** and the **Compensation Period**, as well as bonuses and/or commissions received during January or February of the **Base Year(s)**, 2010 and 2011 for all jobs worked.

To the extent **Pay Period Earnings Documentation** is unavailable, the claimant shall so indicate in the sworn Claim Form, and earnings shall be treated as earned evenly throughout each year.

3.   **Documentation Of Earnings From Other Sources During the Compensation Period:**  Claimants must also submit documents sufficient to establish the source(s) and amounts of earnings, if any, from other post-DWH Spill sources of income including: (1) **Spill-Related**

---

[9] If an **Individual** claimant has not maintained copies of his or her federal income tax returns, he or she shall request a copy or transcript directly from the IRS.  If a claimant has not maintained copies of his or her Forms W-2, he or she shall request copies directly from the IRS or each employer he or she worked for during the **Compensation Period** and the **Benchmark Period**.  A federal **Tax Information Document** shall be considered available if it exists and is in the claimant's possession or has not been requested from the IRS and/or employer.

028848

**Payments**, and (2) compensation received from and hours worked in each employment position other than the **Claiming Job(s)**.  The types of documents sufficient to satisfy this requirement are as follows:

- Forms W-2, paycheck stubs or other employer-provided payroll information; and/or

- Bank records showing income deposits and supporting documentation indicating the source of those deposits; and/or

- Documents from BP/GCCF showing payment and BP/GCCF Claim Number; and/or

- Forms 1099; and/or

- Receipts from check cashing services; and/or

- Other documents provided by an employer setting forth for such other employment position(s) (i) required hours of work, (ii) actual hours worked by claimant, and (iii) compensation rate.

4. **Documentation Establishing Other Costs/Losses**:  The claimant may also submit **Reimbursable Training Cost Documentation**, **Reimbursable Search Cost Documentation**, and/or documentation regarding **Employment-Related Benefits Losses**.

5. **Additional Claimant Documentation**:

    a. **Claimant Employability Documentation:** Consists of both:

        i. A copy of a Social Security card, government-issued identification (for example, a valid driver's license), temporary worker visa, or green card that was valid as of April 20, 2010 for the claimant, or a print out from a public database providing the same information as would be provided by the original document;

        AND

        ii. Evidence the claimant was at least 16 years of age as of April 20, 2010. Acceptable evidence includes a copy of a valid driver's license, a valid passport, a certified copy of the claimant's birth certificate, or a print out from a public database providing the same information as would be provided by the original document.

    b. **Licensing Documentation**:  If claimant's employment requires a government-issued license/permit, a copy of valid 2010 and 2011 licenses, if appropriate, or a print out from a public database providing the same information as would be provided by the original document.  Licenses could include, but are not limited to:

        i. Taxi/livery licenses.

        ii. Real Estate Sales licenses.

        iii. Other licenses and permits related to income sources.

028849

   c. If the claimant's employment in the **Claiming Job** was terminated between April 20, 2010 and December 31, 2010, the claimant shall have the burden of proof to establish the termination was not for cause.  The termination shall be deemed not for cause if:

     i. The claimant establishes that he or she filed for and received unemployment, including, for example, as evidenced by Form 1099 G.

       OR

     ii. Claimant provides a letter from the former employer or an **Employer Sworn Written Statement** confirming termination was not for cause.  Any such letter must include contact information for an authorized representative of the employer.

       OR

     iii. Other documentation acceptable to the **Claims Administrator** that establishes that the claimant was not terminated for cause.

6. **Additional Documentation to Establish Causation Presumptions:**

If the claimant seeks to qualify for a causation presumption as set forth in Sections I.B.1 and I.B.2.a, the claimant must provide documentation for 2010 to establish that the claimant or the claimant's employer satisfies (or satisfied) the geographic requirements and/or the definition of an entity or Natural Person included in the **Primary Seafood Industry**, **Secondary Seafood Industry**, **Tourism**,[10] or **Charter Fishing**[11] as applicable.  To satisfy this requirement, the claimant must demonstrate the employer's location and the following:

   a. That the claimant works or worked for an employer that filed a claim in the MDL No.  2179 settlement process and was determined by the **Claims Administrator** to satisfy one of the above-listed definitions;

      OR

   b. That the claimant's **Tax Information Documents**, **Pay Period Earnings Documentation**, or other documentation establishes that the claimant's employer satisfies one of the above-listed definitions.

B. **Causation Requirements**

In order to establish causation under this Category I, a claimant must satisfy the following:

1. The claimant must have been employed in the **Claiming Job** on April 20, 2010, unless the claimant is a **Seasonal Employee** who can provide evidence of historical seasonal employment beginning after April 20 in the **Base Year(s)**.

---

[10] The definition of **Tourism** is set forth in the **Tourism Definition**, Bates 026632 - 026646.

[11] The definition of **Charter Fishing** is set forth in Definitions Section 38 of the *Deepwater Horizon* Economic and Property Damages Settlement Agreement.

028850

2. The claimant must satisfy one of the following:

    a. **Individual Claimants With Presumed Causation:**  The DWH Spill shall be presumed to be the cause of lost earnings for a **Claiming Job** during the **Compensation Period** for the following categories of claimants who submit the required documentation, provided that the claimant can demonstrate that any loss of income or employment related to the **Claiming Job** was not a function of the claimant's termination for cause pursuant to the Documentation Requirements set forth in Section I.A.5.c:

        i. If a claimant is an **Individual** seeking compensation for an economic loss relating to employment within Zone A,[12] the claimant is not required to provide any evidence of causation relating to that **Claiming Job**.

        ii. If a claimant is an individual seeking compensation for an economic loss for a job in which he or she was employed by, or exclusively serviced, an entity or Natural Person that satisfies the **Primary Seafood Industry** definition as set forth in the **Seafood Distribution Chain Definitions**, the claimant is not required to provide any evidence of causation relating to that **Claiming Job**.

        iii. If a claimant is an individual seeking compensation for an economic loss for a job in which he or she was employed by an entity or Natural Person that satisfies the **Secondary Seafood Industry** definition as set forth in the **Seafood Distribution Chain Definitions**, and the entity or Natural Person was located in Zones B or C, the claimant is not required to provide any evidence of causation relating to that **Claiming Job**.

        iv. If the claimant is an **Individual** seeking compensation for an economic loss for a job in which he or she was employed by a business located in Zone B that meets the definition of **Tourism**, the claimant is not required to provide any evidence of causation relating to that **Claiming Job**.

        v. If the claimant is an **Individual** seeking compensation for an economic loss for a job in which he or she was employed by an entity or Natural Person that satisfies the definition of **Charter Fishing**, and the **Charter Fishing** business was located in Zones A, B or C, the claimant is not required to provide any evidence of causation relating to that **Claiming Job**.

---

[12] For purposes of this **Framework for Individual Economic Loss Claims**, the presumption shall be that the location of economic loss for the **Claiming Job** is the location of the claimant's employer within the Class Definition geographic area, not the claimant's residence.  Claimants may establish an alternative location of economic loss for the **Claiming Job** other than their employer's location by providing evidence that their primary employment activities and responsibilities occur in a location different from their employer's business address, and that the claimed DWH Spill-related economic loss occurred at such location.  For example, the claimant works for a housekeeping company located in Zone C that services households in Zones A, B and C, including vacation condominiums located in Zone A, and the claimant establishes that she works primarily in Zone A.

028851

OR

b. **Individual Claimants Without Presumed Causation:** If a claimant is not entitled to a causation presumption as set forth in Section I.B.2.a, the claimant can establish causation for a **Claiming Job** during the **Compensation Period** only by satisfying the requirements of one of the following sub-sections:

    i. Causation is established if the **Claiming Job** is with an **Eligible Employer**. The **Claims Administrator** shall verify that the employer is an **Eligible Employer**.

    ii. Causation for a **Claiming Job** is established if the claimant provides an **Employer Sworn Written Statement** attributing the claimant's loss of income during the **Compensation Period** to the DWH Spill. The **Employer Sworn Written Statement** must articulate in detail how the claimant's losses at the **Claiming Job** are causally related to the DWH Spill. Such **Employer Sworn Written Statement** must also include contact information for an authorized representative of the employer.

    iii. The **Claims Administrator** shall evaluate the credibility and reliability of the information provided by the employer and the claimant, including any **Sworn Written Statements**, and have the right to request supplemental documentation and/or to interview the employer in accordance with the **Addendum Regarding Interviews of Claimant Alleging Economic Loss**.

**C.**    **Compensation Calculation**

The **Claims Administrator** shall use **Tax Information Documents** and other supporting documentation provided by the claimant to calculate the **Claimant Lost Earnings**. As set forth in the steps below, **Claimant Lost Earnings** includes: (1) any reduction in earnings between the **Compensation Period** and the **Benchmark Period** for each **Claiming Job**, plus (2) any lost potential earnings growth expected for each **Claiming Job** in the absence of the DWH Spill, minus (3) any **Offsetting Earnings**. Lost potential earnings growth expected for each **Claiming Job** shall be determined through application of (a) a **Claimant Specific Growth Factor**, or (b) a **General Growth Factor**; in addition, for claims based on non-salaried, hourly-wage jobs, an **Industry Growth Factor** is applied.

The claimant shall receive a lump-sum final payment that includes compensation for **Claimant Lost Earnings**, plus any applicable **RTP** agreed upon by the parties, plus compensation for properly documented **Employment-Related Benefits Losses**, **Reimbursable Training Costs** and **Reimbursable Search Costs**, or **One Time, Non-Recurring Event Commission Compensation**, if any, less any **Spill-Related Payments**.

Example compensation calculations are set forth in Appendices A through F attached hereto.

**Step 1:  Claimant Selects Compensation Period and Benchmark Period**

1. Claimant selects a **Compensation Period**. For a claimant who (i) was terminated for cause in 2010 from the **Claiming Job(s)**, or (ii) otherwise ended employment at the

14

**Claiming Job(s)** in 2010 for reasons unrelated to the DWH Spill, the **Compensation Period** may not extend beyond the termination date.

2. Claimant selects a **Base Year(s)**.

**Step 2:  Determine Benchmark Period Earnings for the Months Corresponding to the Compensation Period**

Earnings during the **Benchmark Period** months (as evidenced by **Tax Information Documents**) shall include earned income from each **Claiming Job** (or comparable job) and shall be assumed to have been earned evenly throughout the year unless the claimant provides **Pay Period Earnings Documentation** sufficient to establish actual earnings distribution throughout the year. All bonuses and/or commissions shall be allocated pro rata across the period for which they were awarded, and annual performance bonuses paid in January and February shall be assumed to relate to the prior calendar year, unless the documents establish that the bonus related to a specific period of time.

**Step 3:  Determine Earnings Growth Factor(s)**

1. *__Claimant Specific Growth Factor__*:  For claimants who provide **Pay Period Earnings Documentation** sufficient to calculate a **Claimant Specific Growth Factor**, the following **Growth Factors** may apply:

   a. **Claimant Specific Growth Factor** is defined, and the calculation is explained, in Definitions Section N.1.

   b. **Industry Growth Factor** is defined in Definitions Section N.3.

2. *__Claimants for Whom Claimant Specific Growth Factor Is Not Applicable__*:  For claimants unable to provide **Pay Period Earnings Documentation** sufficient to calculate a **Claimant Specific Growth Factor** and for **Seasonal Employees**, no **Claimant Specific Growth Factor** shall apply.  Instead, the following **Growth Factors** may apply:

   a. **General Growth Factor** is defined in Definitions Section N.2 and is 2.0%.

   b. **Industry Growth Factor** is defined in Definitions Section N.3:  For claims based on non-salaried, hourly-wage jobs, an **Industry Growth Factor** of 1.5% shall be applied.

**Step 4:  Calculate Expected Earnings**

**Expected Earnings** equal the **Benchmark Period** earnings calculated in Step 2 increased by the applicable **Growth Factors** (from Step 3).

*__Expected Earnings__ = __Benchmark Period__ Earnings from Step 2 x (1 + applicable Step 3 __Growth Factor(s)__)*

**Step 5:  Determine Actual Earnings and Any Offsetting Earnings In The Compensation Period**

**Actual Earnings** for all **Claiming Jobs** and any applicable **Offsetting Earnings** during the **Compensation Period** shall be determined based on **Tax Information Documents** and **Pay**

028853

**Period Earnings Documentation** provided by the claimant and other documentation relevant to determining **Offsetting Earnings**.

To the extent the claimant does not have **Pay Period Earnings Documentation** for a **Claiming Job**, **Actual Earnings** during the **Compensation Period** shall be estimated for that **Claiming Job** by dividing the claimant's total 2010 **Claiming Job** earnings by 12 and multiplying that amount by the number of months in the **Compensation Period**. All bonuses and/or commissions shall be allocated pro rata across the periods for which they were awarded, and annual performance bonuses paid in January and February shall be assumed to relate to the prior calendar year, unless the documents establish that the bonus related to a specific period of time.

**Offsetting Earnings** and **Actual Earnings** from all **Claiming Jobs** shall be calculated giving consideration to all **Claiming Jobs**, provided that:

1.  If the claimant has only one **Claiming Job**, then:

    i.   If **Pay Period Earnings Documentation** (or other documentation relevant to calculating **Offsetting Earnings**) reflects the same or an increased number of hours worked at the **Claiming Job** in the **Compensation Period** relative to the **Claiming Job** (or comparable job) in the **Benchmark Period**, **Actual Earnings** shall be limited to earnings from the **Claiming Job** (or comparable job) over the same total number of hours worked in the **Benchmark Period**, and no **Offsetting Earnings** shall apply.

         OR

    ii.  If **Pay Period Earnings Documentation** (or other documentation) (i) reflects a decrease in hours worked at the **Claiming Job** during the **Compensation Period**, and (ii) the claimant's **Pay Period Earnings Documentation** reflects additional hours worked at a **Non-Claiming Job** (whether such **Non-Claiming Job** was held in the **Benchmark Period** or is a new position), **Offsetting Earnings** shall be calculated and factored into the determination of **Claimant Lost Earnings**.

2.  If the claimant has more than one **Claiming Job**, then:

    i.   If **Pay Period Earnings Documentation** (or other documentation relevant to calculating **Offsetting Earnings**) for all **Claiming Jobs** reflects the same or an increased number of total hours worked across all **Claiming Jobs** during the **Compensation Period** (relative to all **Claiming Jobs** (or comparable jobs) in the **Benchmark Period**), aggregate **Actual Earnings** in the **Compensation Period** shall be limited to total earnings from all **Claiming Jobs** (or comparable jobs) over the same number of total hours worked in the **Benchmark Period**, provided that earnings from hours lost in one **Claiming Job** shall be replaced by earnings from the same number of hours worked in a different **Claiming Job** during the **Compensation Period**. No **Offsetting Earnings** shall apply.

16

028854

OR

ii. If **Pay Period Earnings Documentation** (or other documentation relevant to calculating **Offsetting Earnings**) for all **Claiming Jobs** reflects (i) fewer total hours worked across all **Claiming Jobs** during the **Compensation Period** (relative to all **Claiming Jobs** (or comparable jobs) in the **Benchmark Period**), but (ii) more hours worked in one (or more) **Claiming Job(s)** in the **Compensation Period** (relative to the same **Claiming Job(s)** in the **Benchmark Period**), aggregate **Actual Earnings** in the **Compensation Period** shall include total earnings from all **Claiming Jobs** (or comparable jobs) in the **Compensation Period**.  If the claimant's **Pay Period Earnings Documentation** also reflects additional hours worked at a different (**Non-Claiming Job**) position (whether such position was held in the **Benchmark Period** or is a new position), **Offsetting Earnings** shall be calculated and factored into the determination of **Claimant Lost Earnings** for the number of hours representing the difference between (a) total hours worked in all **Claiming Jobs** in the **Compensation Period**, and (b) total hours worked in all **Claiming Jobs** in the **Benchmark Period**.

OR

iii. If **Pay Period Earnings Documentation** (or other documentation) for all **Claiming Jobs** (i) reflects a decrease in hours worked at each **Claiming Job** during the **Compensation Period**, and (ii) the claimant's **Pay Period Earnings Documentation** reflects additional hours worked at a different position (whether such position was held in the **Benchmark Period** or is a new position), **Offsetting Earnings** shall be calculated and factored into the determination of **Claimant Lost Earnings** for the total lost hours.

OR

iv. If the claimant does not have **Pay Period Earnings Documentation** (or other documentation establishing hours worked) for all **Claiming Jobs**, then **Actual Earnings** shall include all earnings from all **Claiming Jobs** and **Offsetting Earnings** shall apply.

**Step 6:  Determine Claimant Lost Earnings**

**Claimant Lost Earnings** shall be calculated as (a) the difference between (i) the claimant's **Expected Earnings** during the **Compensation Period** (Step 4) from all **Claiming Jobs** and (ii) the claimant's **Actual Earnings** during the **Compensation Period**, as adjusted, if relevant, (Step 5) from all **Claiming Jobs**, reduced by (b) any applicable **Offsetting Earnings**.

**Step 7:  Calculate Final Claimant Compensation**

**Final Claimant Compensation** shall be **Claimant Lost Earnings** (Step 6) adjusted as follows:

1. Add any applicable **RTP** agreed to by the parties.  For an employee terminated for cause from a **Claiming Job**, no **RTP** shall apply.

17

– For claimants whose **Claimant Lost Earnings** result from more than one **Claiming Job**, the claimant's applicable **RTP** shall be calculated based on (i) the percentage of total **Claimant Lost Earnings** related to each **Claiming Job**, multiplied by (ii) the **RTP** applicable to each **Claiming Job**, which is determined by the job type (**Tourism**/Other Industries) and zone (Zone A, B, C or D).  For example, a claimant with 50% of their lost earnings from a job Zone A hotel, and 50% of their lost earnings from a job in a Zone C restaurant shall receive an **RTP** that is calculated as follows:

$$\text{Applicable RTP} = .5 * \text{RTP}_{\text{Zone A Tourism (hotel)}} + .5 * \text{RTP}_{\text{Zone C Tourism (restaurant)}}$$

2. Add any **Reimbursable Training Costs**.  **Reimbursable Training Costs** shall be fully reimbursed if the training led directly to earned income in 2010.  If no corresponding income was earned in 2010, then **Reimbursable Training Costs** shall be reimbursed up to $2,000.

   For example:  A claimant who paid $3,000 after April 20, 2010 to secure a commercial trucking license and who earned income as a commercial trucker in 2010 shall receive $3,000 in reimbursement.  If the claimant earned no income from commercial trucking during 2010, the claimant would receive a $2,000 reimbursement.

3. Add any **Reimbursable Search Costs**.

4. Add any applicable **Employment-Related Benefits Losses**.

5.  Add any **One Time, Non-Recurring Event Compensation**.

6. Subtract any **Spill-Related Payments.**

7. The formula for **Final Claimant Compensation** is:

   **Claimant Lost Earnings**

   \+    (**Claimant Lost Earnings x any applicable RTP**)

   \+    **Employment-Related Benefits Losses** (if applicable)

   \+    **Reimbursable Training Costs** (full if led to earned income in 2010 from area of training, otherwise $2,000) (if applicable)

   \+    **Reimbursable Search Costs** (if applicable)

   \+    **One Time, Non-Recurring Event Compensation** (if applicable)

   \-    **Spill-Related Payments** (if applicable)

   \-    VoO Settlement Offset and/or VoO Earned Income Offset (if any)

028856

II. **CATEGORY II:  INDIVIDUAL CLAIMANTS WITH PAY PERIOD OR OTHER EARNINGS DOCUMENTATION FOR 2010 AND BENCHMARK PERIOD[13]**

> **Individual** claimants who do not have **Tax Information Documents** available for either 2010 or the **Base Year(s)** may instead provide **Pay Period Earnings Documentation** sufficient to establish earnings during the **Compensation Period** and the **Benchmark Period**.  Such **Individual** claimants must provide a written statement under oath attesting that no **Tax Returns** are available and attesting that the claimant made diligent efforts to obtain Forms W-2 from his or her employer and stating that they are not available.  An **Individual** claimant who is a **Career Changer** should proceed to Category III.  An **Individual** claimant who lacks **Tax Information Documents** and **Pay Period Earnings Documentation** for the **Benchmark Period** and/or 2010 must so state in the sworn Claim Form.  In such circumstances, claimant cannot proceed under this Category II and should proceed to Category III or IV to the extent the claimant qualifies under any such Category.

A. **Documentation Requirements**

   1. **Documentation Establishing Employment Earnings:**  To the extent available, the claimant must provide **Pay Period Earnings Documentation** for the **Benchmark Period** and for 2010. Where incomplete **Pay Period Earnings Documentation** is provided, **Expected Earnings** and **Actual Earnings** shall be calculated based only on the actual documentation provided.  A claimant also must provide documentation to establish any bonuses and/or commissions received during the **Benchmark Period** and the **Compensation Period**, as well as bonuses and/or commissions received during January or February of the **Base Year(s)**, 2010 and 2011 for all jobs worked.

   2. **Documentation Of Earnings From Other Sources During the Compensation Period:** Claimants must also submit documents sufficient to establish the source(s) and amounts of earnings, if any, from other post-DWH Spill sources of income including:  (1) **Spill-Related Payments**, and (2) compensation received from and hours worked in each employment position other than the **Claiming Job(s)**.  The types of documents sufficient to satisfy this requirement are as follows:

      - Forms W-2, paycheck stubs or other employer-provided payroll information; and/or

      - Bank records showing income deposits and supporting documentation indicating the source of those deposits; and/or

      - Document from BP/GCCF showing payment and BP/GCCF Claim Number; and/or

      - Forms 1099; and/or

      - Receipts from check cashing services; and/or

      - Other documents provided by an employer setting forth for such other employment position(s) (i) required hours of work, (ii) actual hours worked by claimant, and

---

[13] A claimant who has no job earnings from any **Benchmark Period** may not proceed under Category II but should proceed to Category III as a potential **New Entrant To Employment** or **Claimant Who Had Less Than Twelve Months Of Earnings History But Was Employed On April 20, 2010**, or to Category IV, as relevant.

028857

(iii) compensation rate.

3. **Documentation Establishing Other Costs/Losses**:  The claimant may also submit **Reimbursable Training Cost Documentation**, **Reimbursable Search Cost Documentation**, and/or documentation regarding **Employment-Related Benefits Losses.**

4. **Additional Claimant Documentation**

   a. **Claimant Employability Documentation**:  Consists of both:

      i. A copy of a Social Security card, government-issued identification (for example, a valid driver's license), temporary worker visa, or green card that was valid as of April 20, 2010 for the claimant, or a print out from a public database providing the same information as would be provided by the original document;

         AND

      ii. Evidence the claimant was at least 16 years of age as of April 20, 2010. Acceptable evidence includes a copy of a valid driver's license, a valid passport, a certified copy of the claimant's birth certificate, or a print out from a public database providing the same information as would be provided by the original document.

   b. **Licensing Documentation**:  If claimant's employment requires a government-issued license/permit, a copy of valid 2010 and 2011 licenses, if appropriate, or a print out from a public database providing the same information as would be provided by the original document.  Licenses could include, but are not limited to:

      i. Taxi/livery licenses.

      ii. Real Estate Sales licenses.

      iii. Other licenses and permits related to income sources.

   c. If the claimant's employment in the **Claiming Job** was terminated between April 20, 2010 and December 31, 2010, the claimant shall have the burden of proof to establish the termination was not for cause.  The termination shall be deemed not for cause if:

      i. The claimant establishes that he or she filed for and received unemployment, including, for example, as evidenced by Form 1099 G.

         OR

      ii. Claimant provides a letter from the former employer or an **Employer Sworn Written Statement** confirming termination was not for cause.  Any such letter must include contact information for an authorized representative of the employer.

         OR

      iii. Other documentation acceptable to the **Claims Administrator** that establishes that the claimant was not terminated for cause.

028858

5. **Additional Documentation to Establish Causation Presumptions**:

If the claimant seeks to qualify for a causation presumption as set forth in Sections II.B.1 and II.B.2.a, the claimant must provide documentation for 2010 to establish that the claimant or the claimant's employer satisfies (or satisfied) the geographic requirements and/or the definition of an entity or Natural Person included in the **Primary Seafood Industry**, **Secondary Seafood Industry, Tourism**,[14] or **Charter Fishing**[15] as applicable.  To satisfy this requirement, the claimant must demonstrate the employer's location and the following:

a. That the claimant works or worked for an employer that filed a claim in the MDL No.  2179 settlement process and was determined by the **Claims Administrator** to satisfy one of the above-listed definitions;

OR

b. That the claimant's **Tax Information Documents**, **Pay Period Earnings Documentation**, or other documentation establishes that the claimant's employer satisfies one of the above-listed definitions.

B. **Causation Requirements**

In order to establish causation under this Category II, a claimant must satisfy the following:

1. The claimant must have been employed in the **Claiming Job** on April 20, 2010, unless the claimant is a **Seasonal Employee** who can provide evidence of historical seasonal employment beginning after April 20 in the **Base Year(s)**.

2. The claimant must satisfy one of the following:

a. **Individual Claimants With Presumed Causation:**  The DWH Spill shall be presumed to be the cause of lost earnings for a **Claiming Job** during the **Compensation Period** for the following categories of claimants who submit the required documentation, provided that the claimant can demonstrate that any loss of income or employment related to the **Claiming Job** was not a function of the claimant's termination for cause pursuant to the Documentation Requirements set forth in Section II.A.4.c:

i. If a claimant is an **Individual** seeking compensation for an economic loss relating to employment within Zone A,[16] the claimant is not required to provide any evidence of causation relating to that **Claiming Job**.

---

[14] The definition of **Tourism** is set forth in the **Tourism Definition**, Bates 026632 - 026646.

[15] The definition of **Charter Fishing** is set forth in Definitions Section 38 of the *Deepwater Horizon* Economic and Property Damages Settlement Agreement.

[16] For purposes of this **Framework for Individual Economic Loss Claims**, the presumption shall be that the location of economic loss for the **Claiming Job** is the location of the claimant's employer within the Class Definition geographic area, not the claimant's residence.  Claimants may establish an alternative location of economic loss for the **Claiming Job** other than their employer's location by providing evidence that their primary employment activities and responsibilities occur in a location different from their employer's business address, and that the claimed DWH Spill-related economic loss occurred at such location.  For example, the claimant works for a

028859

ii.  If a claimant is an individual seeking compensation for an economic loss for a job in which he or she was employed by, or exclusively serviced, an entity or Natural Person that satisfies the **Primary Seafood Industry** definition as set forth in the **Seafood Distribution Chain Definitions**, the claimant is not required to provide any evidence of causation relating to that **Claiming Job**.

iii.  If a claimant is an individual seeking compensation for an economic loss for a job in which he or she was employed by an entity or Natural Person that satisfies the **Secondary Seafood Industry** definition as set forth in the **Seafood Distribution Chain Definitions**, and the entity or Natural Person was located in Zones B or C, the claimant is not required to provide any evidence of causation relating to that **Claiming Job**.

iv.  If the claimant is an **Individual** seeking compensation for an economic loss for a job in which he or she was employed by a business located in Zone B that meets the definition of **Tourism**, the claimant is not required to provide any evidence of causation relating to that **Claiming Job**.

v.  If the claimant is an **Individual** seeking compensation for an economic loss for a job in which he or she was employed by an entity or Natural Person that satisfies the definition of **Charter Fishing**, and the **Charter Fishing** business was located in Zones A, B or C, the claimant is not required to provide any evidence of causation relating to that **Claiming Job**.

OR

b.  **Individual Claimants Without Presumed Causation:**  If a claimant is not entitled to a causation presumption as set forth in Section II.B.2.a, the claimant can establish causation for a **Claiming Job** during the **Compensation Period** only by satisfying the requirements of one of the following sub-sections:

i.  Causation is established if the **Claiming Job** is with an **Eligible Employer**.  The **Claims Administrator** shall verify that the employer is an **Eligible Employer**.

ii.  Causation for a **Claiming Job** is established if the claimant provides an **Employer Sworn Written Statement** attributing the claimant's loss of income during the **Compensation Period** to the DWH Spill.  The **Employer Sworn Written Statement** must articulate in detail how the claimant's losses at the **Claiming Job** are causally related to the DWH Spill.  Such **Employer Sworn Written Statement** must also include contact information for an authorized representative of the employer.

iii.  The **Claims Administrator** shall evaluate the credibility and reliability of the information provided by the employer and the claimant, including any **Sworn Written Statements**, and have the right to request supplemental

---

housekeeping company located in Zone C that services households in Zones A, B and C, including vacation condominiums located in Zone A, and the claimant establishes that she works primarily in Zone A.

028860

documentation and/or to interview the employer in accordance with the **Addendum Regarding Interviews of Claimant Alleging Economic Loss**.

C.  **Compensation Calculation**

The **Claims Administrator** shall use **Pay Period Earnings Documentation** or annual employer-provided payroll information submitted by the claimant pursuant to Section II.A, and other supporting documentation provided by the claimant, to calculate the **Claimant Lost Earnings**. As set forth in the steps below, **Claimant Lost Earnings** includes: (1) any reduction in earnings between the **Compensation Period** and the **Benchmark Period** for each **Claiming Job**, plus (2) any lost potential earnings growth expected for each **Claiming Job** in the absence of the DWH Spill, minus (3) any **Offsetting Earnings**.  Lost potential earnings growth expected for each **Claiming Job** shall be determined through application of (a) a **Claimant Specific Growth Factor**, or (b) a **General Growth Factor**; in addition, for claims based on non-salaried, hourly-wage jobs, an **Industry Growth Factor** is applied.

The claimant shall receive a lump-sum final payment that includes compensation for **Claimant Lost Earnings**, plus any applicable **RTP** agreed upon by the parties, plus compensation for properly documented **Employment-Related Benefits Losses, Reimbursable Training Costs** and **Reimbursable Search Costs**, or **One Time, Non-Recurring Event Commission Compensation**, if any, less any **Spill-Related Payments**.

Example compensation calculations are set forth in Appendices A through F attached hereto.

**Step 1:  Claimant Selects Compensation Period and Benchmark Period**

1.  Claimant selects a **Compensation Period**.  For a claimant who (i) was terminated for cause in 2010 from the **Claiming Job(s)**, or (ii) otherwise ended employment at the **Claiming Job(s)** in 2010 for reasons unrelated to the DWH Spill, the **Compensation Period** may not extend beyond the termination date.

2.  Claimant selects a **Base Year(s)**.

**Step 2:  Determine Benchmark Period Earnings for the Months Corresponding to the Compensation Period**

Earnings during the **Benchmark Period** shall be established on the basis of **Pay Period Earnings Documentation** and shall include earned income from each **Claiming Job** (or comparable job).  The specific determination of earnings for the **Benchmark Period** shall depend on the nature and extent of the **Pay Period Earnings Documentation** provided.  For example, if the claimant submits **Pay Period Earnings Documentation** that covers only discrete portions of a given calendar year (e.g., employee commission statements from May 2009 and December 2009), the **Claims Administrator** shall base the **Benchmark Period** earnings only on the actual documentation provided (*i.e.,* data shall not be extrapolated to periods for which **Pay Period Earnings Documentation** was not provided).

If the claimant submits **Pay Period Earnings Documentation** that provides data as to full year earnings but not the allocation of those earnings (*i.e.,* a year-end paystub), and if the

028861

claimant also provides additional **Pay Period Earnings Documentation** deemed by the **Claims Administrator** to be sufficient for purposes of allocating those earnings across the relevant period, earnings shall be allocated accordingly.  If no additional information is provided regarding the allocation of those earnings, the **Claims Administrator** shall assume a pro rata distribution over the relevant period.

All bonuses and/or commissions shall be allocated pro rata across the period for which they were awarded, and annual performance bonuses paid in January and February shall be assumed to relate to the prior calendar year, unless the documents establish that the bonus related to a specific period of time.

### Step 3:  Determine Earnings Growth Factor(s)

1. ***Claimant Specific Growth Factor***:  For claimants who provide **Pay Period Earnings Documentation** sufficient to calculate a **Claimant Specific Growth Factor**, the following **Growth Factors** may apply:

   a. **Claimant Specific Growth Factor** is defined, and the calculation is explained, in Definitions Section N.1).

   b. **Industry Growth Factor** is defined in Definitions Section N.3.

2. ***Claimants for Whom Claimant Specific Growth Factor Is Not Applicable***:  For claimants unable to provide **Pay Period Earnings Documentation** sufficient to calculate a **Claimant Specific Growth Factor** and for **Seasonal Employees**, no **Claimant Specific Growth Factor** shall apply.  Instead, the following **Growth Factors** may apply:

   a. **General Growth Factor** is defined in Definitions Section N.2 and is 2.0%.

   b. **Industry Growth Factor** is defined in Definitions Section N.3:  For claims based on non-salaried, hourly-wage jobs, an **Industry Growth Factor** of 1.5% shall be applied.

### Step 4:  Calculate Expected Earnings

**Expected Earnings** equal the **Benchmark Period** earnings calculated in Step 2 increased by the applicable **Growth Factors** (from Step 3).

> ***Expected Earnings** = **Benchmark Period** Earnings from Step 2 x (1 + applicable Step 3 **Growth Factor(s))***

### Step 5:  Determine Actual Earnings and Any Offsetting Earnings In The Compensation Period

**Actual Earnings** for all **Claiming Jobs** and any applicable **Offsetting Earnings** during the **Compensation Period** shall be determined based on **Pay Period Earnings Documentation** provided by the claimant and other documentation relevant to determining **Offsetting Earnings**.  All bonuses and/or commissions shall be allocated pro rata across the period for which they were awarded, and annual performance bonuses paid in January and February shall be assumed to relate to the prior calendar year, unless the documents establish that the bonus related to a specific period of time.

24

028862

**Offsetting Earnings** and **Actual Earnings** from all **Claiming Jobs** shall be calculated giving consideration to all **Claiming Jobs**, provided that:

1.  If the claimant has only one **Claiming Job**, then:

    i.  If **Pay Period Earnings Documentation** (or other documentation relevant to calculating **Offsetting Earnings**) reflects the same or an increased number of hours worked at the **Claiming Job** in the **Compensation Period** relative to the **Claiming Job** (or comparable job) in the **Benchmark Period**, **Actual Earnings** shall be limited to earnings from the **Claiming Job** (or comparable job) over the same total number of hours worked in the **Benchmark Period**, and no **Offsetting Earnings** shall apply.

        OR

    ii. If **Pay Period Earnings Documentation** (or other documentation) (i) reflects a decrease in hours worked at the **Claiming Job** during the **Compensation Period**, and (ii) the claimant's **Pay Period Earnings Documentation** reflects additional hours worked at a **Non-Claiming Job** (whether such **Non-Claiming Job** was held in the **Benchmark Period** or is a new position), **Offsetting Earnings** shall be calculated and factored into the determination of **Claimant Lost Earnings**.

2.  If the claimant has more than one **Claiming Job**, then:

    i.  If **Pay Period Earnings Documentation** (or other documentation relevant to calculating **Offsetting Earnings**) for all **Claiming Jobs** reflects the same or an increased number of total hours worked across all **Claiming Jobs** during the **Compensation Period** (relative to all **Claiming Jobs** (or comparable jobs) in the **Benchmark Period**), aggregate **Actual Earnings** in the **Compensation Period** shall be limited to total earnings from all **Claiming Jobs** (or comparable jobs) over the same number of total hours worked in the **Benchmark Period**, provided that earnings from hours lost in one **Claiming Job** shall be replaced by earnings from the same number of hours worked in a different **Claiming Job** during the **Compensation Period**.  No **Offsetting Earnings** shall apply.

        OR

    ii. If **Pay Period Earnings Documentation** (or other documentation relevant to calculating **Offsetting Earnings**) for all **Claiming Jobs** reflects (i) fewer total hours worked across all **Claiming Jobs** during the **Compensation Period** (relative to all **Claiming Jobs** (or comparable jobs) in the **Benchmark Period**), but (ii) more hours worked in one (or more) **Claiming Job(s)** in the **Compensation Period** (relative to the same **Claiming Job(s)** in the **Benchmark Period**), aggregate **Actual Earnings** in the **Compensation Period** shall include total earnings from all **Claiming Jobs** (or comparable jobs) in the **Compensation Period**.  If the claimant's **Pay Period Earnings Documentation** also reflects additional hours worked at a different (**Non-Claiming Job**) position (whether

25

such position was held in the **Benchmark Period** or is a new position), **Offsetting Earnings** shall be calculated and factored into the determination of **Claimant Lost Earnings** for the number of hours representing the difference between (a) total hours worked in all **Claiming Jobs** in the **Compensation Period**, and (b) total hours worked in all **Claiming Jobs** in the **Benchmark Period**.

OR

iii.   If **Pay Period Earnings Documentation** (or other documentation) for all **Claiming Jobs** (i) reflects a decrease in hours worked at each **Claiming Job** during the **Compensation Period**, and (ii) the claimant's **Pay Period Earnings Documentation** reflects additional hours worked at a different position (whether such position was held in the **Benchmark Period** or is a new position), **Offsetting Earnings** shall be calculated and factored into the determination of **Claimant Lost Earnings** for the total lost hours.

OR

iv.   If the claimant does not have **Pay Period Earnings Documentation** (or other documentation establishing hours worked) for all **Claiming Jobs**, then **Actual Earnings** shall include all earnings from all **Claiming Jobs** and **Offsetting Earnings** shall apply.

## Step 6:  Determine Claimant Lost Earnings

**Claimant Lost Earnings** shall be calculated as (a) the difference between (i) the claimant's **Expected Earnings** during the **Compensation Period** (Step 4) from all **Claiming Jobs** and (ii) the claimant's **Actual Earnings** during the **Compensation Period**, as adjusted, if relevant (Step 5) from all **Claiming Jobs**, reduced by (b) any applicable **Offsetting Earnings**.

## Step 7:  Calculate Final Claimant Compensation

**Final Claimant Compensation** shall be **Claimant Lost Earnings** (Step 6) adjusted as follows:

1.   Add any applicable **RTP** agreed to by the parties.  For an employee terminated for cause from a **Claiming Job**, no **RTP** shall apply.

–   For claimants whose **Claimant Lost Earnings** result from more than one **Claiming Job**, the claimant's applicable **RTP** shall be calculated based on (i) the percentage of total **Claimant Lost Earnings** related to each **Claiming Job**, multiplied by (ii) the **RTP** applicable to each **Claiming Job**, which is determined by the job type (**Tourism**/Other Industries) and zone (Zone A, B, C or D).  For example, a claimant with 50% of their lost earnings from a job Zone A hotel, and 50% of their lost earnings from a job in a Zone C restaurant shall receive an **RTP** that is calculated as follows:

$$\text{Applicable RTP} = .5 * \text{RTP}_{\text{Zone A Tourism (hotel)}} + .5 * \text{RTP}_{\text{Zone C Tourism (restaurant)}}$$

2.   Add any **Reimbursable Training Costs**.  **Reimbursable Training Costs** shall be fully reimbursed if the training led directly to earned income in 2010.  If no corresponding

26

income was earned in 2010, then **Reimbursable Training Costs** shall be reimbursed up to $2,000.

> For example:  A claimant who paid $3,000 after April 20, 2010 to secure a commercial trucking license and who earned income as a commercial trucker in 2010 shall receive $3,000 in reimbursement.  If the claimant earned no income from commercial trucking during 2010, the claimant would receive a $2,000 reimbursement.

3. Add any **Reimbursable Search Costs**.

4. Add any applicable **Employment-Related Benefits Losses**.

5.  Add any **One Time, Non-Recurring Event Compensation**.

6. Subtract any **Spill-Related Payments**.


7. The formula for **Final Claimant Compensation** is:

> **Claimant Lost Earnings**
>
> +     (**Claimant Lost Earnings x any applicable RTP**)
>
> +     **Employment-Related Benefits Losses** (if applicable)
>
> +     **Reimbursable Training Costs** (full if led to earned income in 2010 from area of training, otherwise $2,000) (if applicable)
>
> +     **Reimbursable Search Costs** (if applicable)
>
> +     **One Time, Non-Recurring Event Compensation** (if applicable)
>
> -     **Spill-Related Payments** (if applicable)
>
> -     VoO Settlement Offset and/or VoO Earned Income Offset (if any)

028865

III. **CATEGORY III:  CLAIMANTS WITH EARNINGS DOCUMENTATION FOR 2010 BUT WITHOUT COMPARABLE BENCHMARK PERIOD EARNINGS**

For **Individual Claimants Without Comparable Benchmark Earnings** who meet the definition of a **New Entrant To Employment**, a **Claimant Who Had Less Than Twelve Months Of Earnings History But Was Employed On April 20, 2010** or a **Career Changer**, **2011 Benchmark Period** earnings shall be used to establish **Expected Earnings**, provided that if no such earnings exist, the claimant's **Expected Earnings** will be based on the applicable alternative identified in this Category III, Step 2.

If available, the Category III claimant must provide federal or state **Tax Returns** or Forms W-2 for 2010 and 2011 (and for 2009 if the claimant is a **Career Changer** who did not work in the relevant 2011 time period).[17]  If **Tax Returns** or Forms W-2 and/or 1099 are not available, the claimant must provide a written statement under oath attesting that no **Tax Returns** are available and attesting that the claimant made diligent efforts to obtain Forms W-2 from his or her employer.

Category III claimants who do not have **Tax Information Documents** available may instead provide **Pay Period Earnings Documentation** sufficient to establish earnings during the **Compensation Period** and 2011 (and for 2009 if the claimant is a **Career Changer** who did not work in the relevant 2011 time period).  If no **Pay Period Earnings Documentation** or other annual employer-provided payroll documentation is available for 2010 and 2011 (and for 2009 if the claimant is a **Career Changer** who did not work in the relevant 2011 time period), claimant shall so state in the sworn Claim Form.

In the event a claimant cannot provide **Tax Information Documents** or **Pay Period Earnings Documentation** or, for claimants who were not employed in 2011, other documentation required in III.B.1.b or III.B.2.b, claimant may not proceed under this Category III and should proceed to Category IV to the extent the claimant qualifies for compensation under that Category.

A. **Documentation Requirements**

1. **Documentation Establishing Employment Earnings**:  Claimants under this Category who have **Tax Information Documents** for 2010 and 2011 must provide at least one of the following **Tax Information Documents** for 2010 and 2011 and, if a **Career Changer**, for 2009:

    - Federal tax Form 1040 pages 1 and 2, all pages of Schedules C, E, and F, and any supporting statements attached to the Form 1040 filing (including Form W-2s for joint returns); or
    - State tax return, including any supporting schedules or statements; or
    - Forms W-2 documenting earnings; or
    - Forms 1099 documenting earnings.

---

[17] If a claimant has not maintained copies of his or her federal income tax returns, he or she shall request a copy or transcript directly from the IRS.  If a claimant has not maintained copies of his or her Forms W-2, he or she shall request copies directly from the IRS for each employer they worked for during the **Compensation Period** and 2011 (and, if the claimant is a **Career Changer**, for 2009).  A federal **Tax Information Document** shall be considered available if it exists and is in the claimant's possession or has not been requested from the IRS and/or employer.

028866

2.  **Documentation Establishing Pay Period Earnings**:  To the extent it is available, or if **Tax Information Documents** for 2010 and 2011 are not available, a claimant must provide **Pay Period Earnings Documentation** for 2010 and the **2011 Benchmark Period**.  A claimant also must provide documentation to establish any bonuses and/or commissions received during the **2011 Benchmark Period** and the **Compensation Period**, as well as bonuses and/or commissions received during January or February of the 2010 and 2011 for all jobs worked. A **Career Changer** must also provide such information for 2009.  To the extent **Pay Period Earnings Documentation** is unavailable, the claimant shall so indicate in the sworn Claim Form, and earnings shall be treated as earned evenly throughout each year.

3.  **Documentation Of Earnings From Other Sources During the Compensation Period**: Claimants must also submit documents sufficient to establish the source(s) and amounts of earnings, if any, from other post-DWH Spill sources of income (and, if a **Career Changer**, for 2009) including: (1) **Spill-Related Payments**, and (2) compensation received from and hours worked in each employment position other than the **Claiming Job(s)**.  The types of documents sufficient to satisfy this requirement are as follows:

    - Forms W-2, paycheck stubs or other employer-provided payroll information; and/or

    - Bank records showing income deposits and supporting documentation indicating the source of those deposits; and/or

    - Documents from BP/GCCF showing payment and BP/GCCF Claim Number; and/or

    - Forms 1099; and/or

    - Receipts from check cashing services; and/or

    - Other documents provided by an employer setting forth for such other employment position(s) (i) required hours of work, (ii) actual hours worked by claimant, and (iii) compensation rate.

4.  **Documentation Establishing Other Costs/Losses**:  The claimant may also submit **Reimbursable Training Cost Documentation**, **Reimbursable Search Cost Documentation**, and/or documentation regarding **Employment-Related Benefits Losses.**

5.  **Additional Claimant Documentation:**

    a.  **Claimant Employability Documentation**:  Consists of both:

        i.  A copy of a Social Security card, government-issued identification (for example, a valid driver's license), temporary worker visa, or green card that was valid as of April 20, 2010 for the claimant, or a print out from a public database providing the same information as would be provided by the original document;

            AND

        ii. Evidence the claimant was at least 16 years of age as of April 20, 2010. Acceptable evidence includes a copy of a valid driver's license, a valid passport, a certified copy of the claimant's birth certificate, or a print out from a public

028867

database providing the same information as would be provided by the original document.

b. **Licensing Documentation**:  If claimant's employment requires a government-issued license/permit, a copy of valid 2010 and 2011 licenses, if appropriate, or a print out from a public database providing the same information as would be provided by the original document.  Licenses could include, but are not limited to:

   i. Taxi/livery licenses.

   ii. Real Estate Sales licenses.

   iii. Other licenses and permits related to income sources.

c. If the claimant's employment in the **Claiming Job** was terminated between April 20, 2010 and December 31, 2010, the claimant shall have the burden of proof to establish the termination was not for cause.  The termination shall be deemed not for cause if:

   i. The claimant establishes that he or she filed for and received unemployment, including, for example, as evidenced by Form 1099 G.

      OR

   ii. Claimant provides a letter from the former employer or an **Employer Sworn Written Statement** confirming termination was not for cause.  Any such letter must include contact information for an authorized representative of the employer.

      OR

   iii. Other documentation acceptable to the **Claims Administrator** that establishes that the claimant was not terminated for cause.

6. **Additional Documentation to Establish Causation Presumptions**:

If the claimant is (i) a **Career Changer** or a **Claimant Who Had Less Than Twelve Months of Earnings History But Was Employed On April 20, 2010** who seeks to qualify for a causation presumption as set forth in Sections III.B.1.a, III.B.1.b and III.B.1.c.i, or (iii) a **New Entrant to Employment** who seeks to qualify for a causation presumption as set forth in Sections III.B.2.a, III.B.2.b and III.B.2.c.i, the claimant must provide documentation 2010 and 2011 (and, if the claimant is a **Career Changer**, for 2009) to establish that the claimant or the claimant's employer satisfies (or satisfied) the geographic requirements and/or the definition of an entity or Natural Person included in the **Primary Seafood Industry**, **Secondary Seafood Industry**, **Tourism**,[18] or **Charter Fishing**[19] as applicable.  To satisfy this requirement, the claimant must demonstrate the employer's location and the following:

---

[18] The definition of **Tourism** is set forth in the **Tourism Definition**, Bates 026632 - 026646.
[19] The definition of **Charter Fishing** is set forth in Definitions Section 38 of the *Deepwater Horizon* Economic and Property Damages Settlement Agreement.

028868

    a. That the claimant works or worked for an employer that filed a claim in the MDL No. 2179 settlement process and was determined by the **Claims Administrator** to satisfy one of the above-listed definitions;

    OR

    b. That the claimant's **Tax Information Documents**, **Pay Period Earnings Documentation**, or other documentation establishes that the claimant's employer satisfies one of the above-listed definitions.

7. The Causation Requirements set forth in Section III.B below may require additional documentation.

B. **Causation Requirements**

1. **Causation for a Career Changer and a Claimant Who Had Less Than Twelve Months of Earnings History But Was Employed On April 20, 2010:** In order for a **Career Changer** or a **Claimant Who Had Less Than Twelve Months of Earnings History But Was Employed On April 20, 2010** to establish causation under this Category III, the claimant must satisfy the following:

    a. The claimant must have been employed in the **Claiming Job** on April 20, 2010.

    AND

    b. During the **2011 Benchmark Period** (even if 2011 is not used to calculate **Expected Earnings**), the claimant was either (i) employed, (ii) temporarily medically incapacitated such that the claimant was unable to work but expected to return to the workforce shortly thereafter, (iii) engaged in activities or in a condition entitling an employee to leave under Section 102 of The Family Medical Leave Act, of 1993, as amended, 29 U.S.C. §§ 2601, 2612, but did not receive compensation,[20] (iv) involuntarily unemployed and can appropriately document job search activities, provided that the claimant can demonstrate that any involuntary unemployment was not a function of the claimant's termination for cause, (v) a full time student, (vi) medically incapacitated such that the claimant was unable to work and was expected to be unable to return to the workforce, or (vii) was engaged in full-time volunteer or missionary work or had chosen to leave the workforce to serve as a full-time parent or legal guardian. Documentation satisfying this requirement includes one of the following:

        i. For a claimant employed during 2011, **Tax Information Documents**, **Pay Period Earnings Documentation**, or other annual employer-provided payroll

---

[20] If the claimant is (i) a **Career Changer** or a **Claimant Who Had Less Than Twelve Months Of Earnings History But Was Employed On April 20, 2010**, and (ii) was on temporary medical leave from his or her employer pursuant to the Family Medical Leave Act, and (iii) received compensation during the time period of **2011 Benchmark Period**, the claimant shall be considered to have been employed during the time he or she was receiving compensation.

028869

information or other documentary evidence acceptable to the **Claims Administrator**.

ii. For a temporarily medically-incapacitated **Individual**, documentation establishing that claimant experienced the temporary disability, such as hospital or medical records or records reflecting receipt of short-term disability or similar benefits.

iii. For an **Individual** engaged in activities or a condition entitling an employee to leave under Section 102 of The Family Medical Leave Act, of 1993, as amended, 29 U.S.C. §§ 2601, 2612, who did not receive compensation during the **2011 Benchmark Period**, documentation establishing the activities or condition, the duration of such activities or condition, any compensation received during such periods, and/or communications with the employer regarding the same.

iv. For an involuntarily unemployed **Individual**, contemporaneous documentation evidencing a job search and diligent efforts to secure employment, as well as the documentation set forth in Section III.A.5 demonstrating that the involuntary unemployment was not a function of the claimant's termination for cause.

v. For a full-time student, documentation reflecting full-time matriculation or enrollment at a college or university, such as a matriculation certificate, tuition bill and evidence of payment, a transcript, a degree, certificate, or diploma indicating completion of a course of study, or a letter from the college or university registrar verifying the matriculation.

vi. For a medically-incapacitated **Individual** not expected to return to the workforce, documentation establishing the claimant experienced such disability, such as hospital or medical records or records reflecting receipt of Social Security or other disability benefits.

vii. For an **Individual** who was engaged in full-time volunteer or missionary work or who had chosen to leave the workforce to serve as a full-time parent or legal guardian, documentation evidencing the reason that the **Individual** was not engaged in work for monetary compensation.

AND

c. The claimant must satisfy one of the following:

i. **Presumed Causation:**  The DWH Spill shall be presumed to be the cause of lost earnings for a **Claiming Job** during the **Compensation Period** for the following categories of claimants who submit the required documentation, provided that the claimant can demonstrate that any loss of income or employment related to the **Claiming Job** was not a function of the claimant's termination for cause pursuant to the Documentation Requirements set forth in Section III.A.5.c:

32

028870

1) If a claimant is an **Individual** seeking compensation for an economic loss relating to employment within Zone A,[21] the claimant is not required to provide any evidence of causation relating to that **Claiming Job**.

2) If a claimant is an individual seeking compensation for an economic loss for a job in which he or she was employed by, or exclusively serviced, an entity or Natural Person that satisfies the **Primary Seafood Industry** definition as set forth in the **Seafood Distribution Chain Definitions**, the claimant is not required to provide any evidence of causation relating to that **Claiming Job**.

3) If a claimant is an individual seeking compensation for an economic loss for a job in which he or she was employed by an entity or Natural Person that satisfies the **Secondary Seafood Industry** definition as set forth in the **Seafood Distribution Chain Definitions**, and the entity or Natural Person was located in Zones B or C, the claimant is not required to provide any evidence of causation relating to that **Claiming Job**.

4) If the claimant is an **Individual** seeking compensation for an economic loss for a job in which he or she was employed by a business located in Zone B that meets the definition of **Tourism**, the claimant is not required to provide any evidence of causation relating to that **Claiming Job**.

5) If the claimant is an **Individual** seeking compensation for an economic loss for a job in which he or she was employed by an entity or Natural Person that satisfies the definition of **Charter Fishing**, and the **Charter Fishing** business was located in Zones A, B or C, the claimant is not required to provide any evidence of causation relating to that **Claiming Job**.

OR

ii. **Individual Claimant Without Presumed Causation:**  If a claimant is not entitled to a causation presumption as set forth in Section III.B.1.c.i, the claimant can establish causation for a **Claiming Job** during the **Compensation**

---

[21] For purposes of this **Framework for Individual Economic Loss Claims**, the presumption shall be that the location of economic loss for the **Claiming Job** is the location of the claimant's employer within the Class Definition geographic area, not the claimant's residence.  Claimants may establish an alternative location of economic loss for the **Claiming Job** other than their employer's location by providing evidence that their primary employment activities and responsibilities occur in a location different from their employer's business address, and that the claimed DWH Spill-related economic loss occurred at such location.  For example, the claimant works for a housekeeping company located in Zone C that services households in Zones A, B and C, including vacation condominiums located in Zone A, and the claimant establishes that she works primarily in Zone A.

028871

**Period** only by satisfying the requirements of one of the following sub-sections:

1) Causation is established if the **Claiming Job** is with an **Eligible Employer**.  The **Claims Administrator** shall verify that the employer is an **Eligible Employer**.

2) Causation for a **Claiming Job** is established if the claimant provides an **Employer Sworn Written Statement** attributing the claimant's loss of income during the **Compensation Period** to the DWH Spill. The **Employer Sworn Written Statement** must articulate in detail how the claimant's losses at the **Claiming Job** are causally related to the DWH Spill.  Such **Employer Sworn Written Statement** must also include contact information for an authorized representative of the employer.

iii. The **Claims Administrator** shall evaluate the credibility and reliability of the information provided by the employer and the claimant, including any **Sworn Written Statements**, and have the right to request supplemental documentation and/or to interview the employer in accordance with the **Addendum Regarding Interviews of Claimant Alleging Economic Loss**.

2. **Causation for a New Entrant to Employment**:  In order for a **New Entrant to Employment** to establish causation under this Category III, the claimant must satisfy the following:

   a. The claimant must satisfy the definition of a **New Entrant to Employment** and shall provide documentation showing residency, or that the claimant took significant affirmative steps to establish residency, within close enough proximity to the anticipated location of employment to travel to the job as frequently as required by the employer, for a period of at least 60 days after April 20, 2010 but before December 31, 2010 (or before April 30, 2011 for claimants whose employer or expected employer satisfied the **Primary Seafood Industry** definition). Documentation meeting this requirement includes:

      i. A lease or rental agreement; or

      ii. A sublease agreement; or

      iii. Contemporaneous utility bills.

   AND

   b. During the **2011 Benchmark Period**, the claimant was either (i) employed, (ii) temporarily medically incapacitated such that the claimant was unable to work but expected to return to the workforce shortly thereafter, (iii) engaged in activities or in a condition entitling an employee to leave under Section 102 of The Family Medical Leave Act, of 1993, as amended, 29 U.S.C. §§ 2601, 2612, but did not

34

receive compensation,[22] (iv) involuntarily unemployed and can appropriately document job search activities, provided that the claimant can demonstrate that any involuntary unemployment was not a function of the claimant's termination for cause, (v) a full time student, (vi) medically incapacitated such that the claimant was unable to work and was expected to be unable to return to the workforce, or (vii) was engaged in full-time volunteer or missionary work or had chosen to leave the workforce to serve as a full-time parent or legal guardian.  Documentation satisfying this requirement includes one of the following:

    i.  For a claimant employed during 2011, **Tax Information Documents**, **Pay Period Earnings Documentation**, or other annual employer-provided payroll information or other documentary evidence acceptable to the **Claims Administrator**.

    ii.  For a temporarily medically-incapacitated **Individual**, documentation establishing that claimant experienced the temporary disability, such as hospital or medical records or records reflecting receipt of short-term disability or similar benefits.

    iii.  For an **Individual** engaged in activities or a condition entitling an employee to leave under Section 102 of The Family Medical Leave Act, of 1993, as amended, 29 U.S.C. §§ 2601, 2612, who did not receive compensation during the **2011 Benchmark Period**, documentation establishing the activities or condition, the duration of such activities or condition, any compensation received during such periods, and/or communications with the employer regarding the same.

    iv.  For an involuntarily unemployed **Individual**, contemporaneous documentation evidencing a job search and diligent efforts to secure employment, as well as the documentation set forth in Section III.A.5 demonstrating that the involuntary unemployment was not a function of the claimant's termination for cause.

    v.  For a full-time student, documentation reflecting full-time matriculation or enrollment at a college or university, such as a matriculation certificate, tuition bill and evidence of payment, a transcript, a degree, certificate, or diploma indicating completion of a course of study, or a letter from the college or university registrar verifying the matriculation.

    vi.  For a medically-incapacitated **Individual** not expected to return to the workforce, documentation establishing the claimant experienced such disability, such as hospital or medical records or records reflecting receipt of Social Security or other disability benefits.

---

[22] If the claimant is (i) a **Career Changer** or a **Claimant Who Had Less Than Twelve Months Of Earnings History But Was Employed On April 20, 2010**, and (ii) was on temporary medical leave from his or her employer pursuant to the Family Medical Leave Act, and (iii) received compensation during the time period of **2011 Benchmark Period**, the claimant shall be considered to have been employed during the time he or she was receiving compensation.

028873

vii. For an **Individual** who was engaged in full-time volunteer or missionary work or who had chosen to leave the workforce to serve as a full-time parent or legal guardian, contemporaneous documentation evidencing the reason that the **Individual** was not engaged in work for monetary compensation.

AND

c.   The claimant must satisfy one of the following:

i.   **Presumed Causation:**  The DWH Spill shall be presumed to be the cause of lost earnings for a **Claiming Job** during the **Compensation Period** for **New Entrants to Employment** who provide documentation showing proof of an offer of employment made and accepted prior to April 20, 2010 for employment to begin between April 21 and December 31, 2010 (or for employment to begin between April 21, 2010 and April 30, 2011 for claimants in the **Primary Seafood Industry**), provided that the following conditions are also met:

1)   The offer documentation evidences expected employment:

a)   Within Zone A;[23] or,

b)   In which the offering employer was an entity or Natural Person that satisfies the **Primary Seafood Industry** definition as set forth in the **Seafood Distribution Chain Definitions**; or,

c)   In which the offering employer was an entity or Natural Person that satisfies the **Secondary Seafood Industry** definition as set forth in the **Seafood Distribution Chain Definitions**, and the entity or Natural Person was located in Zones B or C; or

d)   In which the offering employer was a business located in Zone B that meets the definition of **Tourism**; or

e)   In which the offering employer was a business located in Zones A, B or C that satisfies the definition of **Charter Fishing.**

---

[23] For purposes of this **Framework for Individual Economic Loss Claims**, the presumption shall be that the location of economic loss for the **Claiming Job** is the location of the claimant's employer within the Class Definition geographic area, not the claimant's residence.  Claimants may establish an alternative location of economic loss for the **Claiming Job** other than their employer's location by providing evidence that their primary employment activities and responsibilities occur in a location different from their employer's business address, and that the claimed DWH Spill-related economic loss occurred at such location.  For example, the claimant works for a housekeeping company located in Zone C that services households in Zones A, B and C, including vacation condominiums located in Zone A, and the claimant establishes that she works primarily in Zone A.

028874

2) The documentation provided must include information sufficient to establish proposed start and end dates, wage rate and projected hours, and withdrawal of the offer during the period April 21 through December 31, 2010.

OR

ii. **Individual Claimant Without Presumed Causation:**  If the **New Entrant to Employment** is not entitled to a causation presumption as set forth in Section III.B.2.c.i, the claimant can establish causation for a **Claiming Job** during the **Compensation Period** only by providing an **Employer Sworn Written Statement** attributing the claimant's loss of income during the **Compensation Period** to the DWH Spill.  The statement must articulate in detail how the claimant's losses are causally related to the DWH Spill, and must specifically (i) attest to the claimant's accepted employment offer (including start and end dates, wage rate and projected hours), and (ii) verify that the employer's decision not to employ the claimant, or to employ the claimant in a reduced capacity, was due to or resulting from the DWH Spill.  Such letter must also include contact information for an authorized representative of the employer.

iii. The **Claims Administrator** shall evaluate the credibility and reliability of the information provided by the employer and the claimant, including any **Sworn Written Statement(s)**, and have the right to request supplemental documentation and/or interview the employer in accordance with the **Addendum Regarding Interviews of Claimant Alleging Economic Loss**.

C. **Compensation Calculation**

For claimants who were employed in 2011 in the same job or similar job as that performed or offered and withdrawn in the **Compensation Period** selected by the claimant, the **Claims Administrator** shall use either **Tax Information Documents** and/or **Pay Period Earnings Documentation**, to calculate the **Claimant's Lost Earnings**.  As set forth in the steps below, **Claimant's Lost Earnings** includes any lower amount of earnings in the **Compensation Period** as compared to the **2011 Benchmark Period**, after those 2011 earnings have been decreased by the **General Growth Factor**, less any **Offsetting Earnings**.  In addition, for claims based on non-salaried, hourly-wage jobs, the claimant's 2011 earnings shall also be decreased by the **Industry Growth Factor**.

For any Category III claimant not employed in 2011 in the same job or similar job as that performed or offered and withdrawn in the **Compensation Period** selected by the claimant and satisfying a requirement of Section III.B.1.b or III.B.2.b above, **Expected Earnings** for each type of Category III claimant shall be based on alternative data, as described in detail in Item 2 of Step 2 below.

The claimant shall receive a lump-sum final payment that includes compensation for **Claimant's Lost Earnings**, plus any applicable **RTP** agreed upon by the parties, plus compensation for properly documented **Employment-Related Benefits Losses, Reimbursable Training Costs** and

37

**Reimbursable Search Costs**, if any, less the amounts of any **Spill-Related Payments**.

Example compensation calculations are set forth in Appendices A through F attached hereto.

**Step 1:  Claimant Selects Compensation Period**

1. Claimant selects a **Compensation Period**.  For a claimant who (i) was terminated for cause in 2010 from the **Claiming Job(s)**, or (ii) otherwise ended employment at the **Claiming Job(s)** in 2010 for reasons unrelated to the DWH Spill, the **Compensation Period** may not extend beyond the termination date.

**Step 2:  Identify 2011 Benchmark Period Earnings to Be Used in Calculating Expected Earnings**

The purpose of this Step 2 is to identify earnings to be used in calculating **Expected Earnings**.

1. For claimants employed during a **2011 Benchmark Period**, the claimant's earnings used in calculating **Expected Earnings** shall be the claimant's earnings from such 2011 period.

   a. **Claimants with Tax Information Documents:** Earnings during the **2011 Benchmark Period** as evidenced by **Tax Information Documents** shall include earned income from the **Claiming Job** (or comparable job) and shall be assumed to have been earned evenly throughout 2011 unless the claimant provides **Pay Period Earnings Documentation** sufficient to establish actual earnings distribution.  All bonuses and/or commissions shall be allocated pro rata across the period for which they were awarded, and annual performance bonuses paid in January and February shall be assumed to relate to the prior calendar year, unless the documents establish that the bonus related to a specific period of time.

   b. **Claimants with only Pay Period Earnings Documentation**:  Earnings during the **2011 Benchmark Period** as evidenced by **Pay Period Earnings Documentation** for each **Claiming Job** shall be determined based upon the nature and extent of the documentation provided.

      i. If the claimant submits **Pay Period Earnings Documentation** that covers only discrete portions of 2011, the **Claims Administrator** shall base the **2011 Benchmark Period** earnings for that job only on the actual documentation provided (i.e., data shall not be extrapolated to periods for which **Pay Period Earnings Documentation** was not provided).

028876

ii.     If the claimant submits **Pay Period Earnings Documentation** for a job that provides data as to full year earnings but not the allocation of those earnings (*i.e.*, a year-end paystub), then if the claimant also provides additional **Pay Period Earnings Documentation** deemed by the **Claims Administrator** to be sufficient for purposes of allocating those earnings across the relevant period, earnings for that job shall be allocated consistent with that **Pay Period Earnings Documentation**.

iii.    If no additional information is provided regarding the allocation of those earnings, the **Claims Administrator** shall assume a pro rata distribution over the relevant period.

iv.     All bonuses and/or commissions shall be allocated pro rata across the period for which the claimant indicates they were awarded, and annual performance bonuses paid in January and February shall be assumed to relate to the prior calendar year, unless the documents establish that the bonus related to a specific period of time.

OR

2.  For claimants not employed during the **2011 Benchmark Period**, but who satisfied the causation requirement in Section III.B.3, the claimant's earnings used in calculating **Expected Earnings** shall be one of the following:

a.  **New Entrant To Employment:**  The claimant's **Expected Earnings** during the **Compensation Period** shall be based on the rescinded or reduced offer of employment or **Employer Sworn Written Statement** used to establish causation.

b.  **Claimant Who Had Less Than Twelve Months Of Earnings History But Was Employed On April 20, 2010:**  The claimant's **Expected Earnings** shall be based on the claimant's average monthly pre-DWH Spill earnings in the **Claiming Job**, recognizing that this calculation shall be based on less than twelve months of earnings data and shall be subject to an **Industry Growth Factor** only, if relevant, as described below.

c.  **Career Changer:**  The claimant's **Expected Earnings** shall be based on earnings in the 2009 time period of at least 90 consecutive days corresponding to the time period of at least 90 consecutive days within the same months selected by the claimant as the **Compensation Period**.

**Step 3:  Determine Earnings Growth Factor(s)**

1.  The following **Growth Factors** may apply for purposes of calculating **Expected Earnings**:

a.  **General Growth Factor** is defined in Definitions Section N.2 and is 2.0%.

b.  **Industry Growth Factor** is defined in Definitions Section N.3.  For claimants in non-salaried, hourly wage jobs, the **Industry Growth Factor** of 1.5% shall be

028877

applied.

    c.   **Claimant Specific Growth Factor** is defined, and the calculation is explained in Definitions Section N.1.  For purposes of this Section III, a **Claimant Specific Growth Factor** may apply only in the limited circumstance of a **Career Changer** who does not have earnings during the **2011 Benchmark Period** for one of the reasons set forth in Section III.B.3.

### Step 4:  Calculate Expected Earnings

**Expected Earnings** will be calculated as follows:

1.   For claimants covered by Step 2.a, **Expected Earnings** equal the earnings over the **2011 Benchmark Period**, decreased by the applicable **Growth Factors** (from Step 3).

    ***Expected Earnings** = **2011 Benchmark Period** Earnings from Step 2 x (1 - applicable Step 3 Growth Factor(s))*

2.   For claimants covered by Step 2.b, **Expected Earnings** are calculated according to one of the following:

    a.   **New Entrant To Employment:**  The claimant's **Expected Earnings** during the **Compensation Period** shall be based on the rescinded or reduced offer of employment or **Employer Sworn Written Statement** used to establish causation.  No **Growth Factors** apply.

    b.   **Claimant Who Had Less Than Twelve Months Of Earnings History But Was Employed On April 20, 2010:**  The claimant's **Expected Earnings** shall be based on the claimant's average monthly pre-DWH Spill earnings in the **Claiming Job**, recognizing that this calculation shall be based on less than twelve months of earnings data and shall be increased by the **Industry Growth Factor**, if relevant. No other **Growth Factors** shall apply.

    c.   **Career Changer:**  The claimant's **Expected Earnings** shall be based on earnings in the 2009 time period of at least 90 consecutive days corresponding to the time period of at least 90 consecutive days within the same months selected by the claimant as the **Compensation Period**, increased by the **Claimant Specific Growth Factor** or the **General Growth Factor**, as applicable, and by an **Industry Growth Factor**, if applicable.

### Step 5:  Determine Actual Earnings and Any Offsetting Earnings In The Compensation Period

**Actual Earnings** for all **Claiming Jobs** and any applicable **Offsetting Earnings** during the **Compensation Period** shall be determined based on **Tax Information Documentation** or **Pay Period Earnings Documentation** provided by the claimant and other documentation relevant to determining **Offsetting Earnings**.

To the extent the claimant does not have **Pay Period Earnings Documentation** for a **Claiming Job**, **Actual Earnings** during the **Compensation Period** shall be estimated for that **Claiming Job** by dividing the claimant's total 2010 **Claiming Job** earnings by 12 and

028878

multiplying that amount by the number of months in the **Compensation Period**. All bonuses and/or commissions shall be allocated pro rata across the periods for which they were awarded, and annual performance bonuses paid in January and February shall be assumed to relate to the prior calendar year, unless the documents establish that the bonus related to a specific period of time.

**Offsetting Earnings** and **Actual Earnings** from all **Claiming Jobs** shall be calculated giving consideration to all **Claiming Jobs**, provided that:

1.  If the claimant has only one **Claiming Job**, then:

    i.  If **Pay Period Earnings Documentation** (or other documentation relevant to calculating **Offsetting Earnings**) reflects the same or an increased number of hours worked at the **Claiming Job** in the **Compensation Period** relative to the **Claiming Job** (or comparable job) in the **Benchmark Period**, **Actual Earnings** shall be limited to earnings from the **Claiming Job** (or comparable job) over the same total number of hours worked in the **Benchmark Period**, and no **Offsetting Earnings** shall apply.

    OR

    ii. If **Pay Period Earnings Documentation** (or other documentation) (i) reflects a decrease in hours worked at the **Claiming Job** during the **Compensation Period**, and (ii) the claimant's **Pay Period Earnings Documentation** reflects additional hours worked at a **Non-Claiming Job** (whether such **Non-Claiming Job** was held in the **Benchmark Period** or is a new position), **Offsetting Earnings** shall be calculated and factored into the determination of **Claimant Lost Earnings**.

2.  If the claimant has more than one **Claiming Job**, then:

    i.  If **Pay Period Earnings Documentation** (or other documentation relevant to calculating **Offsetting Earnings**) for all **Claiming Jobs** reflects the same or an increased number of total hours worked across all **Claiming Jobs** during the **Compensation Period** (relative to all **Claiming Jobs** (or comparable jobs) in the **Benchmark Period**), aggregate **Actual Earnings** in the **Compensation Period** shall be limited to total earnings from all **Claiming Jobs** (or comparable jobs) over the same number of total hours worked in the **Benchmark Period**, provided that earnings from hours lost in one **Claiming Job** shall be replaced by earnings from the same number of hours worked in a different **Claiming Job** during the **Compensation Period**. No **Offsetting Earnings** shall apply.

    OR

    ii. If **Pay Period Earnings Documentation** (or other documentation relevant to calculating **Offsetting Earnings**) for all **Claiming Jobs** reflects (i) fewer total hours worked across all **Claiming Jobs** during the **Compensation Period** (relative to all **Claiming Jobs** (or comparable jobs) in the **Benchmark Period**), but (ii)

41

more hours worked in one (or more) **Claiming Job(s)** in the **Compensation Period** (relative to the same **Claiming Job(s)** in the **Benchmark Period**), aggregate **Actual Earnings** in the **Compensation Period** shall include total earnings from all **Claiming Jobs** (or comparable jobs) in the **Compensation Period**.  If the claimant's **Pay Period Earnings Documentation** also reflects additional hours worked at a different (**Non-Claiming Job**) position (whether such position was held in the **Benchmark Period** or is a new position), **Offsetting Earnings** shall be calculated and factored into the determination of **Claimant Lost Earnings** for the number of hours representing the difference between (a) total hours worked in all **Claiming Jobs** in the **Compensation Period**, and (b) total hours worked in all **Claiming Jobs** in the **Benchmark Period**.

    OR

  iii.  If **Pay Period Earnings Documentation** (or other documentation) for all **Claiming Jobs** (i) reflects a decrease in hours worked at each **Claiming Job** during the **Compensation Period**, and (ii) the claimant's **Pay Period Earnings Documentation** reflects additional hours worked at a different position (whether such position was held in the **Benchmark Period** or is a new position), **Offsetting Earnings** shall be calculated and factored into the determination of **Claimant Lost Earnings** for the total lost hours.

    OR

  iv.  If the claimant does not have **Pay Period Earnings Documentation** (or other documentation establishing hours worked) for all **Claiming Jobs**, then **Actual Earnings** shall include all earnings from all **Claiming Jobs** and **Offsetting Earnings** shall apply.

## Step 6:  Determine Claimant Lost Earnings

**Claimant Lost Earnings** shall be calculated as (a) the difference between (i) the claimant's **Expected Earnings** during the **Compensation Period** (Step 4) from all **Claiming Jobs** and (ii) the claimant's **Actual Earnings** during the **Compensation Period**, as adjusted, if relevant, (Step 5) from all **Claiming Jobs**, reduced by (b) any applicable **Offsetting Earnings**.

## Step 7:  Calculate Final Claimant Compensation

Final claimant compensation shall be **Claimant Lost Earnings** (Step 6) adjusted as follows:

  1.  Add any applicable **RTP** agreed to by the parties, provided that:

     –  For claimants whose **Claimant Lost Earnings** result from more than one **Claiming Job**, the claimant's applicable **RTP** shall be calculated based on (i) the percentage of total **Claimant Lost Earnings** related to each **Claiming Job**, multiplied by (ii) the **RTP** applicable to each **Claiming Job**, which is determined by the job type (**Tourism**/Other Industries) and zone (Zone A, B, C or D).  For example, a claimant with 50% of their lost earnings from a job

42

028880

Zone A hotel, and 50% of their lost earnings from a job in a Zone C restaurant shall receive an **RTP** that is calculated as follows:

$$\textbf{Applicable RTP} = .5*\textbf{RTP}_{\text{Zone A Tourism (hotel)}} + .5*\textbf{RTP}_{\text{Zone C Tourism (restaurant)}}$$

- For claimants unable to work in 2011 because they were (i) a full time student, (ii) medically incapacitated such that the claimant was unable to work and was expected to be unable to return to the workforce, or (iii) engaged in full-time volunteer or missionary work or had chosen to leave the workforce to serve as a full-time parent or legal guardian (as set forth in Section III.B.3), no **RTP** shall be applied.

  - For an employee terminated for cause in 2010 from a **Claiming Job**, no **RTP** shall apply.

2. Add any **Reimbursable Training Costs**.  **Reimbursable Training Costs** shall be fully reimbursed if the training led directly to earned income in 2010.  If not, then **Reimbursable Training Costs** shall be reimbursed up to $2,000.

   For example:  A claimant who paid $3,000 after April 20, 2010 to secure a commercial trucking license and who earned income as a commercial trucker in 2010 shall receive $3,000 in reimbursement.  If the claimant earned no income from commercial trucking during 2010, the claimant would receive a $2,000 reimbursement.

3. Add any **Reimbursable Search Costs**.

4. Add any applicable **Employment-Related Benefits Losses**.

5. Add any **One Time, Non-Recurring Event Compensation**.

6. Subtract any **Spill-Related Payments**.


7. The formula for **Final Claimant Compensation** is:

   |   | **Claimant Lost Earnings** |
   |---|---|
   | + | (**Claimant Lost Earnings x applicable RTP (if any)**) |
   | + | **Employment-Related Benefits Losses** (if applicable) |
   | + | **Reimbursable Training Costs** (full if led to earned income in 2010 from area of training, otherwise $2,000) (if applicable) |
   | + | **Reimbursable Search Costs** (if applicable) |
   | + | **One Time, Non-Recurring Event Compensation** (if applicable) |
   | - | **Spill-Related Payments** (if applicable) |
   | - | VoO Settlement Offset and/or VoO Earned Income Offset (if any) |

43

028881

**IV. CATEGORY IV:  CLAIMANTS WITHOUT EARNINGS DOCUMENTATION WHO SUBMIT CLAIMANT AND EMPLOYER SWORN WRITTEN STATEMENTS TO ESTABLISH EARNINGS**

Any claimant who satisfies all of the following criteria may be eligible for compensation pursuant to this Category IV:

1.  The claimant's employer or employment is located in Zones A, B or C.[24]

2.  The claimant does not have **Tax Information Documents** or **Pay Period Earnings Documentation** for the **Claiming Job** evidencing his or her earnings during the relevant time period.   For claimants whose employer(s) is an entity or Natural Person satisfying the **Primary Seafood Industry** definition, the relevant periods shall be (i) April 21, 2009 through April 20, 2010, and (ii) April 21, 2010 through April 30, 2011.  For all other claimants, the requisite periods shall be (i) April 21 through December 31, 2009 and (ii) April 21 through December 31, 2010.

3.  The claimant is not a **New Entrant to Employment**.

Claimants who meet the criteria above may instead establish lost earnings and causation by submitting, in addition to a sworn Claim Form, (a) a **Claimant Sworn Written Statement** with specified contents, (b) one or more **Employer Sworn Written Statement(s)** providing information for at least the periods April 21 through December 31, 2009, and April 21 through December 31, 2010,[25,26] and, at the claimant's option, for additional periods as described below, (c) any other specified documentation.  In addition, the **Claims Administrator** may interview the claimant and/or the employer consistent with the **Addendum Regarding Interviews of Claimant Alleging Economic Loss** and Section IV.B, below.

A.  **Documentation And Causation Requirements**:

A Category IV claimant must provide a sworn Claim Form and all of the documents identified below.  The **Claims Administrator** shall review and assess the documentation provided by the claimant, including information from the claimant's employer(s), and any other information deemed relevant by the **Claims Administrator**, for purposes of determining whether the

---

[24] For purposes of this **Framework for Individual Economic Loss Claims**, the presumption shall be that the location of economic loss for the **Claiming Job** is the location of the claimant's employer within the Class Definition geographic area, not the claimant's residence.  Claimants may establish an alternative location of economic loss for the **Claiming Job** other than their employer's location by providing evidence that their primary employment activities and responsibilities occur in a location different from their employer's business address, and that the claimed DWH Spill-related economic loss uniquely occurred at such location.  For example, the claimant works for a housekeeping company located in Zone C that services households in Zones A, B and C, including vacation condominiums located in Zone A, and the claimant establishes that she works primarily in Zone A.

[25] For claimants whose employer(s) is an entity or Natural Person satisfying the **Primary Seafood Industry** definition, the claimant should instead provide one or more **Employer Sworn Written Statement(s)** for the periods (i) April 21, 2009 through April 20, 2010 and (ii) April 21, 2010 through April 20, 2011.

[26] If the information for both required periods can be satisfied with an **Employer Sworn Written Statement** from one employer, only one **Employer Sworn Written Statement** is required.  If a single employer is not able to provide the necessary information for both required periods set forth above, the claimant must submit at least one **Employer Sworn Written Statement** for each period.

028882

claimant experienced a loss of earnings during April 21 through December 31, 2010,[27] and, if so, whether the loss was due to or resulting from the DWH Spill.  The **Claims Administrator** shall rely on his assessment of the credibility and reliability of the information submitted in determining if this causation requirement is satisfied.

1. **Claimant Sworn Written Statement**: The claimant shall submit a **Claimant Sworn Written Statement** which sets forth  the following information and shall attach any relevant documents in claimant's possession:

    a. No **Tax Returns** are available for 2009 and 2010.

    b. No **Pay Period Earnings Documentation** is available for the **Claiming Job(s)** for the period April 21 through December 31 of 2009 and 2010.[28]

    c. The claimant made diligent efforts to obtain Form W-2s for 2009 and 2010 from his or her employer(s) and they are not available.

    d. The claimant's employment history with each employer, including, for example, the nature of the work performed, number of years worked, whether the employment is steady or seasonal, year-round or intermittent, and the circumstances of the claimant's departure and/or termination, if applicable.  At a minimum, the claimant shall include the following:

        i. The business name, last known address, telephone number and, if available, website of each of claimant's employers for the period April 21 through December 31 of 2009 and 2010.[29]

        ii. To be potentially eligible for an **RTP**, the claimant must also provide the above information for the period April 21 through December 31, 2011.[30]

    e. The claimant's actual earned income from all sources in 2009 and 2010, and any other earnings history that the claimant believes is relevant to support the claim, including any support for the claimant's belief that these actual earned amounts are accurate.

    f. If applicable, the claimant's BP/GCCF Claim Number, and a listing of any **Spill-Related Payments** received by the claimant.

    g. An explanation of how the reduction of claimant's hours of work, termination of the claimant's employment, and/or withdrawal of an offer of employment

---

[27] For claimants whose employer(s) is an entity or Natural Person satisfying the **Primary Seafood Industry** definition, the potential loss period shall be April 21, 2010 through April 20, 2011.

[28] For claimants whose employer(s) is an entity or Natural Person satisfying the **Primary Seafood Industry** definition, the claimant should instead verify that no **Pay Period Earnings Documentation** for the **Claiming Job** is available for the periods (i) April 21, 2009 through April 20, 2010 and (ii) April 21, 2010 through April 20, 2011.

[29] For claimants whose employer(s) is an entity or Natural Person satisfying the **Primary Seafood Industry** definition, the claimant should instead provide the business name and last known address of each of claimant's employers for the periods (i) April 21, 2009 through April 20, 2010 and (ii) April 21, 2010 through April 20, 2011.

[30] For claimants whose employer(s) is an entity or Natural Person satisfying the **Primary Seafood Industry** definition, the claimant should instead provide the business name and last known address of each of claimant's employers for the period April 21, 2011 through April 20, 2012 to be potentially eligible for an **RTP**.

028883

related to the **Claiming Job(s)** during the period from April 21, 2010 - December 31, 2010 was due to or resulting from the DWH Spill.[31]

h.  A statement and any available documentation establishing that the claimant was present and available to work in Zones A, B or C in close enough proximity to the anticipated location of employment to travel to the job as frequently as required by the employer during the period from April 21, 2010 to December 31, 2010.[32]

    i.  To be potentially eligible for an **RTP**, the claimant must satisfy the above requirement for the period April 21 through December 31, 2011.[33]

    ii.  Documentation that could demonstrate presence and availability includes, but is not limited to, the following:

        1)  A lease or rental agreement; or
        2)  A sublease agreement; or
        3)  Contemporaneous utility bills.

2.  **Claimant Employability Documentation:**

Consists of both:

a.  A copy of a Social Security card, government-issued identification (for example, a valid driver's license), temporary worker visa, or green card that was valid as of April 20, 2010, or a print out from a public database providing the same information as would be provided by the original document.

*AND*

b.  Evidence that the claimant was at least 16 years of age as of April 20, 2010. Acceptable evidence includes a valid driver's license, a valid passport, or a copy of the claimant's birth certificate, or a print out from a public database providing the same information as would be provided by the original document.

3.  **Licensing Documentation:**  If the claimant's employment in the **Claiming Job** requires a government-issued license/permit, the claimant shall provide a copy of valid 2009, 2010 and, if applicable, 2011 licenses, or a print out from a public database providing the same information as would be provided by the original document, such as:

---

[31] For claimants whose employer(s) is an entity or Natural Person satisfying the **Primary Seafood Industry** definition, the claimant should instead provide an explanation of how the reduction of claimant's hours of work, termination of the claimant's employment, and/or withdrawal of an offer of employment for the periods (i) April 21, 2009 through April 20, 2010 and (ii) April 21, 2010 through April 20, 2011 was due to or resulting from the DWH Spill.

[32] For claimants whose employer(s) is an entity or Natural Person satisfying the **Primary Seafood Industry** definition, the claimant should instead provide information regarding his or her presence and availability for work in Zones A, B or C for the period April 21, 2010 through April 20, 2011.

[33] For claimants whose employer(s) is an entity or Natural Person satisfying the **Primary Seafood Industry** definition, the claimant should instead provide information regarding his or her presence and availability for work in Zones A, B or C for the period April 21, 2011 through April 20, 2012 to be potentially eligible for an **RTP**.

028884

a. Taxi/livery licenses.

b. Real Estate Sales licenses.

c. Other licenses and permits related to income sources.

4. **Employer Sworn Written Statement:** The claimant shall submit an **Employer Sworn Written Statement** from at least one of his or her employers during each of the periods April 21 through December 31 of 2009 and 2010, which sets forth the following information with any relevant documents attached.[34] If the information for both required periods can be satisfied with an **Employer Sworn Written Statement** from one employer, only one **Employer Sworn Written Statement** is required. If a single employer is not able to provide the necessary information for both required periods, the claimant must submit at least one **Employer Sworn Written Statements** for each period.

a. **Employer Information**

i. Employer's business name

ii. Address(es)

iii. Telephone number(s)

iv. Website(s), if available

v. A description of the nature of the business

vi. Compensation practices (for example, weekly or bi-weekly pay periods), wage rates, and typical hours worked for employees holding jobs comparable to the **Claiming Job**.

vii. If the employer is not an **Eligible Employer**, information sufficient to establish the following:

1) The size and scale of the employer's business, such as:

a) Size of physical plant;

b) Best estimate of the number of customers;

c) Best estimate of the volume of product produced;

d) Best estimate of the number of full-time and part-time employees;

e) Financial information; and/or

f) To the extent the business is a seasonal business, this information should be provided to reflect business size during different seasons.

---

[34] For claimants whose employer(s) is an entity or Natural Person satisfying the **Primary Seafood Industry** definition, the **Employer Sworn Written Statement** shall be provided from each of the claimant's employers for the periods (i) April 21, 2009 through April 20, 2010 and (ii) April 21, 2010 through April 20, 2011.

028885

2) Copies of any applicable required licenses possessed by the employer during the period April 21 through December 31 of 2009 and 2010,[35] or a print out from a public database providing the same information as would be provided by the original document .

b. **Employee Information**

i. The claimant's employment history with employer, including, for example, the nature of the work performed, number of years worked, whether the employment is steady or seasonal, year-round or intermittent, and the circumstances of the claimant's departure and/or termination, if applicable.

ii. The claimant's wage rate and total compensation for the following periods, if applicable:

1) April 21 through December 31, 2009;[36]
2) April 21 through December 31, 2010;[37]
3) April 21 through December 31, 2011;[38] and
4) Any other time period for which the employer is able and elects to provide the requested information.

If the employer cannot provide precise actual dates and times, it shall be sufficient for the employer to provide more general information satisfying this standard – for example, "Claimant was employed for 30 days at a rate of $100 per day for 12 weeks during the months of [June - August 2009]".

iii. If the employer (i) employed the claimant and/or (ii) offered the claimant employment during the period from April 21, 2010 - December 31, 2010,[39] the employer shall provide the following:

1) How the employer (a) terminated the claimant's employment, (b) reduced the claimant's hours of work, (c) withdrew an offer of employment, (d) did not extend an offer of seasonal (partial year) employment to the claimant, or (e) otherwise reduced employee's compensation due to or resulting from the DWH Spill with sufficient

---

[35] For claimants whose employer(s) is an entity or Natural Person satisfying the **Primary Seafood Industry** definition, the employer should instead provide copies of any applicable required licenses for the periods (i) April 21, 2009 through April 20, 2010 and (ii) April 21, 2010 through April 20, 2011.

[36] For claimants whose employer(s) is an entity or Natural Person satisfying the **Primary Seafood Industry** definition, the appropriate period is from April 21, 2009 through April 20, 2010.

[37] For claimants whose employer(s) is an entity or Natural Person satisfying the **Primary Seafood Industry** definition, the appropriate period is from April 21, 2010 through April 20, 2011.

[38] For claimants whose employer(s) is an entity or Natural Person satisfying the **Primary Seafood Industry** definition, the appropriate period is from April 21, 2011 through April 20, 2012.

[39] For claimants whose employer(s) is an entity or Natural Person satisfying the **Primary Seafood Industry** definition, the appropriate period is from April 21, 2010 through April 20, 2011.

028886

detail to permit the **Claims Administrator** to calculate the claimant's lost hours of work and lost earnings from such employment during such period.

2) A specific explanation of how (i) the reduction of claimant's hours of work identified, or (ii) the withdrawal of, or (iii) the failure to extend, an offer of employment was due to or resulting from the DWH Spill.

The number of affidavits submitted by an employer on behalf of the claimant and any other claimants shall be monitored by the **Claims Administrator** for reasonableness in light of the employer's operations.  For example, it would be anticipated that a 10-room motel would have approximately five full-time equivalent employees, or that a 50-seat diner-style restaurant would have approximately five full-time equivalent servers.

B. **Interviews**

1. The **Claims Administrator** shall have the right to interview all claimants and related employer(s) in this Category IV claiming lost earnings of $7,500 or more and up to 25% of all other claimants within this Category IV and their supporting employer(s), in accordance with the provisions of the **Addendum Regarding Interviews of Claimant Alleging Economic Loss**.[40]

2. In addition, and notwithstanding the provisions of Section IV.B.1, the **Claims Administrator** shall have the right to interview any employer who submits an **Employer Sworn Written Statement** on behalf of more claimants than the **Claims Administrator** determines is reasonable for the position for which the employer is providing the **Employer Sworn Written Statement**, in accordance with the provisions of the **Addendum Regarding Interviews of Claimant Alleging Economic Loss**.

C. **Description Of Compensation Calculation**

The **Claims Administrator** shall determine the **Final Claimant Compensation** amount based on the totality of the information provided by the claimant and his or her employer(s), including the sworn Claim Form, **Claimant Sworn Written Statement**, **Employer Sworn Written Statement(s)**, interviews (if any), and/or any supplemental information the **Claims Administrator** may require the claimant to provide to support the claim, and/or any other information the **Claims Administrator** may determine to be relevant and reliable (collectively, the "**Claim File**").  The **Claims Administrator** shall rely on his assessment of the reliability and credibility of the **Claim File** information and the specifics of any claimed economic loss in determining the claimant's compensation, if any, to be provided to the claimant.

---

[40] In addition, nothing in this **Framework for Individual Economic Loss Claims** shall in any way limit the right and obligation of the **Claims Administrator** to investigate fully all suspicions of fraudulent conduct by or on behalf of any claimant, including but not limited to conducting any interviews and obtaining any documents the **Claims Administrator** deems necessary.  Any such interviews will not be included in the 25% limit set forth above.

028887

**Step 1:  Calculate Claimant's Lost Earnings**

In determining the claimant's lost earnings for the **Claiming Job**, the **Claims Administrator** shall consider the following factors:

1. **Prior Employment History:**  The extent to which the **Claim File** establishes the claimant's pre-DWH Spill employment in the **Claiming Job**, including the type of work performed, wage rate, and amount of time spent working in the **Claiming Job**.

2. **Post-DWH Spill Anticipated Employment**: The extent to which the **Claim File** establishes the claimant's post-DWH Spill expected employment in the **Claiming Job**, including the job description, wage rate, and amount of time claimant was expected to be employed in the **Claiming Job** during the period from April 21 through December 31, 2010,[41] and wages expected to be earned in the **Claiming Job**.

3. **Post-DWH Spill Actual Employment**: The extent to which the **Claim File** establishes the claimant's actual post-DWH Spill employment in the **Claiming Job**, including the job description, wage rate, amount of time claimant actually was employed in the **Claiming Job** during the period from April 21 through December 31, 2010,[42] and actual earnings in the **Claiming Job and** any other employment during that period.

4. **Lost Earnings And Causation**:  The extent to which the **Claim File** establishes (a) a reduction in anticipated employment and earnings in the **Claiming Job** during the period from April 21 through December 31, 2010,[43] and (b) the extent to which any such reduction in anticipated employment and earnings was due to or resulting from the DWH Spill.

5. **Continued Employment in 2011**:  The extent to which the **Claim File** establishes that the claimant was employed in the **Claiming Job** or a similar job in 2011 and lived within 60 miles of his place of employment.

Based on the **Claims Administrator's** consideration of the totality of the information above, the **Claims Administrator** shall determine the claimant's lost earnings for the period April 21 through December 31, 2010[44] up to a cap of $20,000.

---

[41] For claimants whose employer(s) is an entity or Natural Person satisfying the **Primary Seafood Industry** definition, the **Claims Administrator** shall consider the extent to which the claimant has established his or her expected post-DWH Spill employment in the **Claiming Job** for the period April 21, 2010 through April 20, 2011.

[42] For claimants whose employer(s) is an entity or Natural Person satisfying the **Primary Seafood Industry** definition, the **Claims Administrator** shall consider the extent to which the claimant has established his or her actual post-DWH Spill employment in the **Claiming Job** for the period April 21, 2010 through April 20, 2011.

[43] For claimants whose employer(s) is an entity or Natural Person satisfying the **Primary Seafood Industry** definition, the claimant shall establish the claimant's lost earnings for the period April 21, 2010 through April 20, 2011.

[44] For claimants whose employer(s) is an entity or Natural Person satisfying the **Primary Seafood Industry** definition, the claimant shall establish the claimant's expected post-DWH Spill employment for the period April 21, 2010 through April 20, 2011.

028888

**Step 2:  Apply RTP, If Applicable**

Only claimants who, in 2011, (1) continued to be employed in a position the same as, or similar to, the **Claiming Job**, and (2) still lived within 60 miles of their place of employment, shall be eligible for an **RTP** of 1.

If eligible, the claimant's lost earnings shall be multiplied by the **RTP**.

**Step 3:  Determine Claimant's Compensation**

Deduct any **Spill-Related Payments** from the sum of Steps 1 and 2 to determine claimant's compensation amount.

Claimants under this Category IV shall not be eligible to recover **Reimbursable Search Costs**, **Reimbursable Training Costs** or **Employment-Related Benefits Losses**.

The formula for the claimant's compensation is:

> **Claimant's lost earnings (not to exceed $20,000) (from Step 1)**
>
> + **(Claimant's lost earnings (not to exceed $20,000) x RTP (if any)) (from Step 2)**
>
> + **One Time, Non-Recurring Event Compensation:** if applicable, provided, however, that in no event shall this amount exceed:  ($20,000 less Claimant's lost earnings from Step 1)
>
> - **Spill-Related Payments (if applicable) (from Step 3)**
>
> - VoO Settlement Offset and/or VoO Earned Income Offset (if any)

028889

**One Time Loss Addendum**

A **One Time, Non-Recurring Event** shall be defined as an event or sale that (i) would have occurred in the **Claiming Job** between April 21, 2010 and December 31, 2010, and (ii) had not been included in the **Individual's** income from the **Claiming Job** in 2007, 2008 or 2009, and (iii) was canceled due to or resulting from DWH Spill.

An **Individual** asserting lost earnings due to cancellation of a **One Time, Non-Recurring Event** must provide documentation and establish causation as follows:

**Documentation and Causation**

The claimant shall provide all of the following:

1. Copy of contract for the **One Time, Non-Recurring Event** scheduled to occur during the period April 21, 2010 and December 31, 2010, and canceled subsequent to April 21, 2010.  The contract must indicate the date, time and details of the event.

2. Documentation sufficient to establish the lost earnings, income or profit, to the claimant in respect of the **One Time, Non-Recurring Event**, including but not limited to a **Sworn Written Statement** by the party responsible for canceling the contract for the **One Time, Non-Recurring Event**.

3. Documentation establishing that the lost earnings, income or profit, identified in 2 is (a) for claimants with more than ten sales per year in the **Base Year(s)**, equal to or greater than 10% of the claimant's earnings in the **Base Year(s)** from the **Claiming Job**, or (b) for claimants with fewer than ten sales per year in the **Base Year(s)**, greater than two times the claimant's average commission on all transactions in the **Base Year(s)** from the **Claiming Job**.

4. Documentation sufficient to establish that (a) the cancellation of the **One Time, Non-Recurring Event** was due to or resulting from the DWH Spill, including but not limited to a **Sworn Written Statement** by the party responsible for canceling the contract for the **One Time, Non-Recurring Event,** and (b) the cancellation was a loss to claimant.

5. Documentation establishing that the lost earnings, income or profit, are not duplicative of amounts quantified as **Claimant Lost Earnings** in Step 6 of the **Compensation Calculation** for Categories I, II or III.

6. Itemized commission statements for 2007, 2008 and 2009, if applicable.

**Compensation for the One Time, Non-Recurring Event**

Compensation for the **One Time, Non-Recurring Event** shall equal the lost earnings for the **One Time, Non-Recurring Event**, and no **RTP** shall be applicable to the corresponding loss.

028890