# EXHIBIT 9

## Framework For Subsistence Claims

**A.    Eligibility**

1.    Only claimants who satisfy the "**Subsistence Claimant**" definition shall be eligible for compensation pursuant to this **Framework for Subsistence Claims**.

2.    "**Subsistence Claimant**" shall be defined as follows: (i) a Natural Person who satisfies the Class Definition, (ii) who fishes or hunts to harvest, catch, barter, consume or trade Gulf of Mexico natural resources (including **Seafood** and **Game[1]**), in a traditional or customary manner, to sustain his or her basic personal or family dietary, economic security, shelter, tool, or clothing needs[2], and (iii) who relied upon subsistence resources that were diminished or restricted in the geographic region used by the claimant due to or resulting from the DWH Spill.

3.    The **Subsistence Claimant** definition includes claimants who satisfy the definitions of a **Commercial Fisherman** and **Seafood Crew**, provided such claimants satisfy the other elements of the **Subsistence Claimant** definition and provide the documentation listed below.[3]

4.    The **Subsistence Claimant** definition does not include **Recreational Fishermen** or **Recreational Hunters**. "**Recreational Fishermen**" shall be defined as Natural Persons who fish for pleasure or sport. "**Recreational Hunters**" shall be defined as Natural Persons who hunt for pleasure or sport. The **Subsistence Claimant** definition does include claimants who hold a Recreational Fishing license, provided such claimants satisfy the other elements of the **Subsistence Claimant** definition and provide the documentation listed below.

**B.    Compensation**

1.    Identify the time period of loss of subsistence use consistent with the closure or impairment of geographic areas relied upon by the Claimant between April 20, 2010 and December 31, 2011.

2.    Identify the quantity of lost natural resources, including **Seafood** and **Game**. This will include quantity of natural resources given to members of Claimant's extended family unit for their personal consumption or for the purposes of barter. In making the determination, the Claims Administrator must evaluate any lost

---

[1]    "**Game**" is defined as nutria, mink, otters, raccoons, muskrats, alligators, and other wetlands and coastal wildlife.

[2]    This definition is derived from various statutory and regulatory sources (e.g., ANILCA, Coast Guard) revised to reflect the socio-economic realities of the Gulf Coast ethnic, traditional, and customary subsistence communities and individuals.

[3]    The definitions of **Seafood**, **Commercial Fisherman** and **Seafood Crew** from the **Seafood Distribution Chain** Definitions document shall apply herein.

earnings claim also submitted by the claimant for compensation under the Seafood Program to ensure that any in-kind **Seafood** compensation received by the claimant is appropriately allocated between the claimant's lost earnings and subsistence claims.  For example, **Seafood** sold by the claimant, rather than used for barter should be allocated toward lost earnings which shall be compensated through the Seafood Program.

    a.     Quantity of lost natural resources will be determined based on information provided by the claimant in intake forms and interviews with the Claims Administrator.

    b.     Quantity of lost natural resources will be calculated in, or converted to, measures of consumable retail product by the Claims Administrator.

    c.     Quantities of lost natural resources shall not exceed reasonable consumption rates as determined by the Claims Administrator.

3.     Calculate the **Total Value of Loss of Subsistence Use of Natural Resources** by multiplying the quantity in pounds by average post-spill retail price or, if unavailable, an estimated retail price based on a reasonable proxy.  Average post-spill retail prices, and any proxies there for, will be determined the Parties based on, where available, data on retail prices for Gulf of Mexico natural resources, and be subject to approval by the Claims Administration Panel. The Parties shall provide a chart of the approved, mutually agreed-upon prices to the Claims Administrator for use in calculation of Subsistence claims.

4.     Claimant will receive a Risk Transfer Premium ("RTP") of 2.25, in order to compensate for factors including value of Subsistence use, including damage to subsistence family and community customs and culture.

5.     Claimant's compensation pursuant to this Framework For Subsistence Claims shall be equal to the sum of (i) the Claimant's **Total Value of Lost Natural Resources** calculated in B(3) plus (ii) the Claimant's **Total Value of Lost Natural Resources** multiplied by 2.25.

**C.**    <u>**Documentation Requirements**</u>

The Claimant must provide sufficient information for the Claims Administrator to determine (1) that the claimant satisfies the **Subsistence Claimant** definition and, (2) the quantity of Gulf of Mexico natural resources from within the **Class Definition** geographic area lost by the **Subsistence Claimant** during the time period April 20, 2010 to December 31, 2011.  The required documents shall include:

1.     The Gulf of Mexico location(s) within the **Class Definition** geographic area where claimant fished or hunted or utilized Gulf of Mexico natural resources immediately prior to the oil spill.

028016

a.   **Type of documentation:** (1) Identification on map and narrative description on claims form; (2) narrative description on claims form of equipment used to fish or hunt; and (3) affidavit verifying location of claimant's fishing or hunting grounds.

2.   The location where the claimant fished or hunted or utilized Gulf of Mexico natural resources between April 20, 2010 and December 31, 2011.

a.   **Type of documentation:** Information provided by claimant on claims form.

3.   Length of time that fishing or hunting areas were closed or impaired as a result of the spill.

a.   **Type of documentation:** Information provided by claimant on claims form, to be confirmed by claims facility by reference to closure maps and other relevant reports.

4.   Prior to spill, claimant relied upon the fishing or hunting area at issue for subsistence purposes as defined above.

a.   **Type of documentation:** (1) Claimant to specify on claims form number of people in the extended family unit who rely on natural resources caught by the Subsistence Claimant, the specific species and amounts of natural resources relied upon, the percentage of subsistence source that natural resources from closed or impaired areas provided prior to the spill, and (2) a supporting affidavit.[4] Following an interview with the claimant, members of the claims administration staff may, at their discretion, require an additional affidavit from a third party or other appropriate supporting information.

5.   Copy of state and/or federal commercial or recreational fishing and/or hunting license. Deckhands or others that are not required to possess a fishing license are excused from this requirement.

**D.   <u>Court-Appointed Distribution Agents Audit Process</u>**

BP, the PSC and the Claims Administrator shall jointly propose a Court-Appointed Distribution Agent ("CADA"). Upon approval, the CADA shall work under the direction and supervision of the Claims Administrator. The CADA shall establish a dedicated team to assist Subsistence claimants in completing the claim form and collecting supporting documentation, and will also confirm the eligibility status of the claimants. The CADA will conduct subsistence interviews with claimants and apply the

---

[4] The Parties shall collaborate on a form affidavit for Subsistance Claimants, which shall be subject to approval by the Claims Administrator Panel.

028017

compensation formula.  The CADA team shall establish a physical presence and a reasonable operating schedule to allow claimants to be interviewed in their geographical area including at Landing Dock locations.

**E.**     **Field Visits**

There is no pre-set cap on payment amounts for Subsistence claims.  However, the CADA will not pay Subsistence claims with a base amount greater than $10,000 per extended family unit without conducting a field visit and investigation as to the accuracy of the claim prior to the payment.

**F.**     **RTP**

An RTP of 2.25 shall be applied to the base compensation amount.

4

028018