# EXHIBIT 24B

## BP P.L.C. BACK-UP GUARANTEE

1.   **Recitals.**

(a)   Whereas, BP Corporation North America Inc., an Indiana corporation (the "**First Guarantor**"), is providing a guarantee (the "**BPCNA Guarantee**") in favor of the Economic and Property Damages Settlement Class (the "**Beneficiary**") in connection with that certain Deepwater Horizon Economic and Property Damages Settlement Agreement to be dated on or around April 18, 2012 (the "**Agreement**"), guaranteeing the payment obligations (the "**Obligations**") of BP Exploration and Production Inc. and BP America Production Company (the "**Primary Obligors**") under the Agreement.

(b)   Whereas, the First Guarantor is a wholly-owned indirect subsidiary of BP p.l.c., a company incorporated in England and Wales (the "**Second Guarantor**"), and the Second Guarantor has agreed to provide this guarantee (the "**Guarantee**") pursuant to Section 37 of the Agreement.

(c)   Now, therefore, for good and valuable consideration received, the receipt and sufficiency of which are hereby acknowledged, the Second Guarantor agrees as follows:

2.   **Guarantee of Obligations.**  The Second Guarantor, subject to the terms and conditions herein, including, without limitation, the occurrence and continuance of a BPCNA Default, hereby absolutely, irrecoverably, and unconditionally guarantees the Beneficiary, by and through (i) the Claims Administrator, or (ii) Stephen J. Herman and/or James Parkerson Roy, or their successors, acting as Economic and Property Damages Class Settlement Counsel ("**Lead Class Counsel**"), that the Primary Obligors (or, if applicable, the First Guarantor) will duly and punctually pay all of the Primary Obligors' Obligations under the Agreement, as and when required in accordance with the terms thereof, in each case, without regard to whether such obligation is direct or indirect, contingent or otherwise, now or hereafter existing or owing, or incurred or payable before or after commencement of any proceedings by or against the Primary Obligors under any applicable bankruptcy or insolvency law or similar law or proceeding.  For purposes of this Guarantee, all capitalized terms not otherwise defined herein shall have the meaning ascribed to such term in the Agreement.

3.   **Event of Default of Primary Obligors and First Guarantor.**  The Primary Obligors and the First Guarantor shall be deemed in default solely after the occurrence of all of the following events ("**BPCNA Default**"):

(a)   The Primary Obligors have failed to pay an Obligation within the period allowed by the Agreement.

(b)   The Claims Administrator or Lead Class Counsel issues a Demand (defined in Clause 11(b)) to the Primary Obligors, the First Guarantor, and the Second Guarantor alleging that the Primary Obligors have not paid their Obligations within the period allowed by the Agreement.

029001

(c) The Primary Obligors do not cure the alleged breach within five (5) business days after receipt of the Demand.

(d) The Claims Administrator or Lead Class Counsel shall concurrently notify the Court (presiding judge or magistrate of the division of the District Court for the Eastern District of Louisiana having oversight of the Agreement) of the alleged breach, and Second Guarantor shall not oppose expedited consultation and/or mediation of the dispute.

(e) The Court informally consults regarding and/or mediates the dispute.

(f) The Primary Obligors fail to take curative action within the greater of (i) two business days after the conclusion of the consultation and/or mediation with the Court, or (ii) the balance of the time period specified in Clause 3(c).

(g) The occurrence and continuation of either: (i) a failure by First Guarantor to pay the applicable Obligations or otherwise cure the Default (as defined in the BPCNA Guarantee) of the Primary Obligors within the time specified in the BPCNA Guarantee, or (ii) a Net Worth Event as defined hereinafter.

4. **Obligation of Second Guarantor.** If and only if a BPCNA Default has occurred and such BPCNA Default has not been cured and is continuing, then Second Guarantor must pay or procure the payment of the applicable overdue and unpaid Obligations of the Primary Obligors within the greater of (i) 30 days from receipt of the Demand or (ii) 15 days after the determination of a BPCNA Default as specified in Clauses 3(a) – (g).

5. **Net Worth Event**. For purposes of this Guarantee, the terms set forth below have the following meanings.

"Consolidated Net Worth" means Total Assets less Total Liabilities.

"GAAP" means, as at any date of determination, generally accepted accounting principles in the United States.

"Net Worth Event" means the Consolidated Net Worth of the First Guarantor, as demonstrated in the most recently produced audited, annual consolidated balance sheet shall be less than ten billion ($10,000,000,000), pursuant to audited financials that First Guarantor shall produce to Lead Class Counsel and the Claims Administrator at least once a year, subject to a customary confidentiality agreement reasonably acceptable to the First Guarantor and the Second Guarantor. If the annual audited financials required hereunder (subject to the confidentiality agreement) are not produced on or before the earlier of (a) 120 days after the end of First Guarantor's fiscal year or (b) the date the audited financials are provided to the First Guarantor's creditors, a Net Worth Event will immediately be deemed to have occurred without the need for further action of any kind; provided, however, that the First Guarantor's subsequent provision of the audited financials to Lead Class Counsel and the Claims Administrator showing the Consolidated Net Worth of the First Guarantor to be in excess of ten billion dollars ($10,000,000,000) shall immediately cure the Net Worth Event.

"Total Assets" means, as at any date of determination, all assets of the First Guarantor and its subsidiaries on a consolidated basis in conformity with GAAP.

"Total Liabilities" means, as at any date of determination, all liabilities of the First Guarantor and its subsidiaries on a consolidated basis in conformity with GAAP.

6. **Joint and Several Obligation.** The Second Guarantor's obligations under this Guarantee are contingent upon the occurrence and continuation of a BPCNA Default. Upon and after the occurrence, and during the continuance, of a BPCNA Default, (a) this Guarantee shall be a guarantee of payment, and not of collection, of the applicable overdue and unpaid Obligations; (b) the Second Guarantor's obligations hereunder shall be on a "joint and several" basis with the Primary Obligors and the First Guarantor to the same degree and extent as if the Second Guarantor had been a co-principal obligor of the applicable unpaid Obligations, and (c) a separate action or actions may be brought and prosecuted against the Second Guarantor to enforce this Guarantee, irrespective of whether any action is brought upon the Primary Obligors or the First Guarantor or whether any Primary Obligor or First Guarantor is joined in any such action or actions.

7. **Duration.** The obligations of the Second Guarantor set forth herein constitute the full recourse obligations of the Second Guarantor enforceable against it to the full extent of all its assets and properties and shall remain in full force and effect until the earlier of (i) such time as all the Obligations of the Primary Obligors under the Agreement have been performed in full and so declared by Court order, (ii) five years after the Effective Date, as defined in the Agreement, or (iii) such time as the Agreement terminates or becomes null and void for any of the reasons set out in Section 21 of the Agreement.

8. **Waiver of Defenses.** The obligations of the Second Guarantor hereunder shall not be subject to any counterclaim, setoff, deduction, diminution, abatement, stay, recoupment, suspension, deferment, reduction or defense (other than full and strict payment or other satisfaction of the Obligations) based upon any claim the Second Guarantor may have against the Beneficiary or any other obligor. Subject to Clause 7, the obligations of the Second Guarantor hereunder shall remain in full force and effect without regard to, and shall not be released, discharged or reduced (except to the extent of any defenses to payment or performance to which the Primary Obligors are entitled under the Agreement) for any reason, including (a) any amendment or waiver of any term of the Agreement, whether or not the Beneficiary, Primary Obligors, or the Second Guarantor has notice or knowledge of any of the foregoing; or (b) any bankruptcy, insolvency or similar proceeding with respect to the First Guarantor or Primary Obligors or their respective properties, or any action taken by any trustee or receiver or by any court in any such proceeding. The Second Guarantor also waives any right to demand arbitration or mediation, and any right to a jury trial. The obligations of the Second Guarantor hereunder shall be subject to, and the Second Guarantor shall be entitled to assert, any counterclaim, setoff, deduction, or defense that the Primary Obligors could assert against the Beneficiary under the Agreement.

9. **Waiver of Notice.** Except as set forth in this Guarantee, the Second Guarantor unconditionally waives all notices which may be required by statute, rule of law or otherwise to preserve any rights against the Second Guarantor hereunder, including (a) notice of the acceptance of this Guarantee by the Beneficiary or any assignee thereof, or the modification of

3

the Obligations or notice of any other matters relating thereto; (b) any presentment, demand, notice of dishonor, protest or nonpayment of any damages or other amounts payable under the Agreement; (c) any requirement for the enforcement, assertion or exercise of any right or remedy under the Agreement; (d) any requirement of diligence; (e) if the Primary Obligors are in default, the right to require the Beneficiary to proceed against the Primary Obligors or any other person liable on the Obligations, and the Second Guarantor waives the right to have the property of the Primary Obligors first applied to discharge the Obligations.

10.     **Subordination of Rights.**  The Second Guarantor shall be subrogated to all rights of the Beneficiary against the Primary Obligors and the First Guarantor in respect of any amounts paid by the Second Guarantor pursuant to the Guarantee, provided that the Second Guarantor waives any rights it may acquire by way of subrogation under this Guarantee, by any payment made hereunder or otherwise (including, without limitation, any statutory rights of subrogation under Section 509 of the Bankruptcy Code, 11 U.S.C. § 509, or otherwise), reimbursement, exoneration, contribution, indemnification, or any right to participate in any claim or remedy of the Beneficiary against the Primary Obligors or any collateral which the Beneficiary now has or acquires, until all of the Obligations shall have been irrevocably and indefeasibly paid to the Beneficiary in full.  If (a) the Second Guarantor shall make payment to the Beneficiary of all or any part of the Obligations, and (b) all the Obligations shall have been indefeasibly paid in full, then the Beneficiary shall, at the Second Guarantor's request, execute and deliver to the Second Guarantor appropriate documents necessary to evidence the transfer by subrogation to the Second Guarantor of any interest in the Obligations resulting from such payment of the Second Guarantor.  Any sums received by the Second Guarantor in violation of the foregoing shall be held in trust for the Beneficiary and shall be promptly paid over to the Claims Administrator or Lead Class Counsel on behalf of the Beneficiary without any need for further action of any kind by the Beneficiary, to be credited and applied against the Obligations.

11.     **Demands.**

(a)     This Guarantee may only be enforced by the Claims Administrator or Lead Class Counsel on behalf of the Beneficiary and may not be enforced by any other Natural Person or Entity, including, without limitation, any member of the Beneficiary.

(b)     Any demand sent by the Claims Administrator or Lead Class Counsel to the Second Guarantor under this Guarantee shall be in writing and shall (i) state the reasons for making such demand, and (ii) clearly identify the Obligations under the Agreement which the Primary Obligors have failed to pay, and such notice shall be delivered or sent by email, facsimile, and overnight mail to the Second Guarantor at its address as provided under Clause 14(b) ("**Demand**").

(c)     All Demands to proceed under this Guarantee must be sent to the Second Guarantor by the Claims Administrator or Lead Class Counsel.

12.     **Representations and Warranties.**

(a)     The Second Guarantor is a company duly formed and validly existing under the laws of England and Wales.

4

029004

(b) The Second Guarantor has the power and authority to execute, deliver and perform its obligations under this Guarantee and has taken all necessary action to authorize the execution, delivery and performance of this Guarantee. No consent is required for the due execution, delivery, and performance by the Second Guarantor of this Guarantee, except those that have been obtained and are in full force and effect.

(c) The authorization, execution, delivery and performance of this Guarantee by the Second Guarantor will not result in any breach of or default under (or any condition which with the giving of notice or lapse of time or both would constitute a breach or default under) (i) the constituent documents of the Second Guarantor, or (ii) any contract, indenture, mortgage, security agreement or other document, instrument or agreement or any judgment, order or decree or law, rule, or regulation to which the Second Guarantor is a party or to which the Second Guarantor or any of its property is subject.

13. **Sole Remedy.** The Second Guarantor's obligations under this Guarantee are the sole and exclusive remedy of the Beneficiary against the Second Guarantor under the Agreement. The Second Guarantor's entire obligation to the Beneficiary is the guarantee of the Obligations and the other obligations expressly set forth in Clause 14 and the Second Guarantor shall have no other obligations of any kind to the Beneficiary. No person or entity, other than the Beneficiary acting through the Claims Administrator or Lead Class Counsel, shall have any rights, remedies or recourse to the Second Guarantor under this Guarantee.

14. **Miscellaneous.**

(a) The Second Guarantor shall not assign any of its rights or delegate any of its duties under this Guarantee to any person or entity without the prior written consent of the Beneficiaries. This Guarantee shall be binding upon Second Guarantor, its successors, and assigns, and shall inure to the benefit of Beneficiary, its successors, and assigns.

(b) Any notice to the Second Guarantor pursuant to this Guarantee shall be sent by electronic mail, facsimile, and overnight mail to the following individuals, who are authorized to receive all notices, demands, suits to perform, and all other correspondence arising out of the Guarantee:

| | |
|---|---|
| Rupert Bondy | David Bucknall |
| Group General Counsel | Group Treasurer |
| BP p.l.c. | BP p.l.c. |
| 1 St James's Square | 4th Floor |
| London SW1Y 4PD | 20 Canada Square |
| United Kingdom | London E14 5NJ |
| Fax: +44-20-7496-4242 | United Kingdom |
| E-mail: Rupert.Bondy@uk.bp.com | Fax: +44-20-7948-7783 |
| | E-mail: David.Bucknall@uk.bp.com |

029005

| | |
|---|---|
| John E. (Jack) Lynch Jr. | James J. Neath |
| Deputy Group General Counsel | Associate General Counsel |
| U.S. General Counsel | BP America Inc. |
| BP America Inc. | 501 Westlake Park Boulevard |
| 501 Westlake Park Boulevard | Houston, TX 77079 |
| Houston, TX 77079 | Fax: 281-366-5901 |
| Fax: 713-375-2808 | E-mail: James.Neath@bp.com |
| E-mail: John.Lynch@uk.bp.com | |

Any notice to Beneficiary pursuant to this Guarantee shall be sent by electronic mail, facsimile, and overnight mail to the following individuals in their capacity as Lead Class Counsel:

| | |
|---|---|
| Stephen J. Herman | James Parkerson Roy |
| Herman Herman Katz & Cotlar LLP | Domengeaux Wright Roy & Edwards |
| 820 O'Keefe Avenue | LLC 556 Jefferson Street, Suite 500 |
| New Orleans, LA 70113 | Lafayette, LA 70501 |
| Fax: 504-561-6024 | Fax: 337-233-2796 |
| E-mail: sherman@hhkc.com | E-Mail: jimr@wrightroy.com |

Any notice to the Claims Administrator pursuant to this Guarantee shall be sent by electronic mail, facsimile, and overnight mail to the following individual in his capacity as the Claims Administrator:

Patrick Juneau
Juneau David, APLC
Post Office Drawer 51268
Lafayette, LA 70505-1268
Fax: 337-269-0061
E-mail: paj@juneaudavid.com
        fgg@juneaudavid.com

Whenever any notice is sent related to this Guarantee, such notice shall be sent to all of the addressees listed in this Clause 14(b).

(c)    This Guarantee shall not be amended without the written consent of the Second Guarantor and the Beneficiaries.

(d)    The provisions of this Guarantee shall be deemed severable, and if any one or more provisions of this Guarantee shall be determined to be invalid or unenforceable, all other provisions shall, nevertheless, remain in full force and effect.

(e)     If the Second Guarantor has performed under this Guarantee, then within 30 days of a written demand, the Second Guarantor shall pay all reasonably incurred and properly documented out-of-pocket costs, fees, and/or expenses incurred by the Claims Administrator and/or Lead Class Counsel, including fees and disbursements of counsel, in connection with the pursuit of performance under this Guarantee.

(f)     THIS GUARANTEE SHALL BE GOVERNED IN ALL RESPECTS, INCLUDING AS TO VALIDITY, INTERPRETATION AND EFFECT, BY THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO ITS PRINCIPLES OR RULES OF CONFLICT OF LAWS, TO THE EXTENT SUCH PRINCIPLES OR RULES ARE NOT MANDATORILY APPLICABLE BY STATUTE AND WOULD PERMIT OR REQUIRE THE APPLICATION OF THE LAWS OF ANOTHER JURISDICTION.

(g)     Pursuant to the Court's continuing jurisdiction over the Agreement, the Second Guarantor, Beneficiary, Claims Administrator, and Lead Class Counsel agree that the United States District Court for the Eastern District of Louisiana shall have exclusive jurisdiction and venue to enforce, interpret, give effect to, or resolve any disputes, cases, or controversies concerning this Guarantee.  If MDL 2179 has not yet been terminated, any pleading filed on behalf of any complainant party relating to the Guarantee shall be accompanied by a legal request for such dispute, case, or controversy to be made part of MDL 2179.  In all other respects and purposes unrelated to matters involving the Guarantee or its enforcement, the Second Guarantor specifically reserves any and all defenses to the jurisdiction and venue of this Court.  The Beneficiary, Claims Administrator, and Lead Class Counsel agree that the Second Guarantor's agreement in this Clause 14(g) does not constitute a waiver of jurisdictional defenses, consent to jurisdiction, or an act supporting or sufficient to establish jurisdiction over the Second Guarantor for any matter besides disputes, cases, or controversies concerning this Guarantee.

IN WITNESS WHEREOF, the undersigned Second Guarantor has by its duly authorized representative executed and delivered this Guarantee to the Beneficiary as of this 16th day of April, 2012.

BP P.L.C.

By: _____/s/ B. Gilvary_____
Name: BRIAN GILVARY
Title: CHIEF FINANCIAL OFFICER

8

029008