# EXHIBIT A

## DEFINITIONS

As used in the list of topics contained in this notice, the following terms are defined as set forth below:

1. "You," "your," and "yours" shall mean Det Norske Veritas ("DNV"), including without limitation all of DNV's present or former agents or representatives, or anyone acting or purporting to act for or on DNV's behalf for any purpose whatsoever.

2. "BOP system" or "BOP" shall mean, unless otherwise specified, the entire subsea blowout preventer system, including but not limited to, the BOP stack, BOP control system, BOP operating panels, Lower Marine Riser Package ("LRMP"), all rams, all preventers, any and all connectors or connections to the BOP stack, including the choke and kill lines and MUX cables, any and all emergency systems, any and all backup systems, the autoshear system, ROV intervention panels, the Automatic Mode Function deadman system, and any other components to the BOP.

3. "Communication" shall mean and include any transmission or exchange of any information, whether orally or in writing, including, without limitation, any conversation or discussion by means of letter, note, memorandum, inter-office correspondence, telephone, electronic mail, telegraph, telex, telecopies, cable communicating data processors, or some other electronic or other medium.

4. "Document" shall mean any printed, type-written or handwritten matter of whatever character, including, without limitation, the original and each non-identical copy of each and any writing, memorandum, letter, e-mail, correspondence, telegram, note, minutes, contract, agreement, interoffice and intraoffice communications, procedure, pamphlet, diary, record or note of telephone conversation, chart, schedule, entry, print, representation, record, report, photograph and any tangible item or thing of written, readable, graphic, audible, or visual material.

5. "Macondo Well" means the exploratory well drilled in Block 252 of the Mississippi Canyon.

6. "NASA Michoud facility" means the NASA Michoud facility in New Orleans, LA.

7. "Visual inspection" and "photo documentation" have the same meaning as the terms are used in Volume I of DNV's Final Report dated March 20, 2011.

8. "Dimensional measurements" has the same meaning as the term is used in Volume I of DNV's Final Report dated March 20, 2011.

9. "Three dimensional laser scanning" has the same meaning as the term is used in Volume I of DNV's Final Report dated March 20, 2011.

10. "Drill pipe" has the same meaning as the term is used in Volume I of DNV's Final Report dated March 20, 2011.

11. "Rams" means all rams including the Blind Shear ram (BSR), Casing Shear ram (CSR), Upper Variable Bore rams (VBR), Middle VBRs and Lower VBRs.

12. "Fluids" has the same meaning as the term is used in Volume I of DNV's Final Report dated March 20, 2011.

13. "Flow path" has the same meaning as the term is used in Volume I of DNV's Final Report dated March 20, 2011.

14. "Incident" means the loss of control of the Macondo Well and the fire and explosion(s) on board, and resulting sinking of, Transocean's *Deepwater Horizon* rig, in addition to the resulting oil spill in the Gulf of Mexico.

15. "Source Control Efforts" has the same meaning as "Source Control" in the Definitions contained in the United States' Initial Response to BP Exploration and Production Company's First Set of Discovery Requests served on May 19, 2011.

## AREAS OF INQUIRY

1. Whether the chain of custody of the BOP and drill pipe from the time they were raised from the sea floor on September 4, 2011 until you completed your testing or evaluation, including transportation from the Macondo Well to the NASA Michoud facility, and storage and/or preservation at the NASA Michoud facility, could have affected the geometry, internal dimensions, or structure of: (a) the BOP, (b) drill pipe within the BOP, ~~or~~ (c) drill pipe above and/or below the BOP, through which hydrocarbons may have flowed following the Incident, or (d) the Capping Stack.

2. The details of your preparation and plan for the forensic evaluation with regard to the geometry, internal dimensions, or structure of: (a) the BOP, (b) drill pipe within the BOP, ~~or~~ (c) drill pipe above and/or below the BOP, through which hydrocarbons may have flowed following the Incident, or (d) the Capping Stack.

3. The manner in which you performed your forensic evaluation with regard to the geometry, internal dimensions, or structure of: (a) the BOP, (b) drill pipe within the BOP, ~~or~~ (c) drill pipe above and/or below the BOP, through which hydrocarbons may have flowed following the Incident, or (d) the Capping Stack.

4. Whether you were unable to accurately or precisely evaluate the geometry, internal dimensions, or structure of (a) the BOP, (b) drill pipe within the BOP, or (c) drill pipe above or below the BOP, through which hydrocarbons may have flowed following the Incident for any reason and your knowledge, opinions, or conclusions as to why you were unable to perform such an evaluation.

5. Any uncertainty associated with your forensic evaluation as it relates to the geometry, internal dimensions, or structure of: (a) the BOP, (b) drill pipe within the BOP, or (c) drill pipe

above and/or below the BOP through which hydrocarbons may have flowed following the Incident.

6. All communications, data, modeling, calculations, observations and analysis relating to the geometry and structure of the Capping Stack, the BOP, drill pipe within the BOP, and drill pipe above and below the BOP through which hydrocarbons may have flowed following the Incident, including visual inspection and photo documentation, dimensional measurements, and three dimensional laser scanning.

7. All communications, data, modeling, calculations, observations and analysis relating to your recovery of and assessment of drill pipe, annulars, rams, fluids and other material from the BOP and drilling riser relating to an assessment of the flow path of hydrocarbons following the Incident.

8. All communications, data, modeling, calculations, observations and analysis relating to an assessment of the flow path of hydrocarbons through the BOP following the Incident, including obstructions, closures, or restrictions to flow through the BOP.

9. All communications, data, modeling, calculations, observations and analysis relating to erosion or corrosion of the Capping Stack, the BOP and drill pipe.

10. All communications, data, modeling, calculations, observations and analysis relating to changes to the BOP following the April 20, 2010 incident.

11. Your knowledge, prior to April 20, 2010, of the existence within the industry of documented procedures, designs, or devices for capping a deepwater well.

12. Your participation in Source Control Efforts.

13. Your knowledge of methods to analyze multiphase flow in piping systems through orifices, bends, elbows, restrictions, contractions or expansions, including but not limited to choke valves, and how such methods are applied.

14. Your knowledge of the use of subsea chokes as multiphase flowmeters.

15. Your knowledge of subsea choke flow characteristics, including without limitation all data and analysis related to DNV Research Report No. 9202054, Det Norske Veritas, Norway (1992).

16. Your knowledge of the accuracy of different mass flow rate models, including without limitation, Hydro, Sachdeva, Perkins, HEM, Simpsons, Chisholm, and Morris.

17. Your knowledge of understanding and analyzing multiphase flows, including use of the multiphase flow software OLGA for analysis of multiphase flow in pipe systems.

18. "Information or expertise on existing technology that detects increased flow in an oil or gas pipe system, or detects increased pressure, and automatically transmits information, or alerts, or warnings, to a selected recipient, or that automatically starts a sequence to shut off the flow in

such oil or gas pipe system; the available technology, and application, implementation, and use of same, is requested, not any particular instances of system failure. This area of inquiry is limited to methods that are used or that could be used in deepwater drilling. Particular instances of system failures or investigations are not included in the information sought."

# EXHIBIT B

### DOCUMENTS REQUESTED

DNV is further requested, in accordance with Rule 30(b)(2) of the Federal Rules of Civil Procedure, as well as Rule 26, Rule 34, and Pre-Trial Orders Nos. 16, 17 and 27, to produce, or identify by specific Bates Number(s) (if already produced), the following documents, at least ten (10) days prior to the time of the relevant designee's deposition:

1. All photographs, videos, documents, and communications discussing or describing the geometry of the BOP and how that geometry may have changed between April 20, 2010 and July 15, 2010.

2. All photographs, videos, documents, and communications discussing or describing the flow path within the BOP from any time between April 20, 2010 and July 15, 2010.

3. All photographs, videos, documents, and communications discussing or describing erosion or corrosion of the BOP, any drill pipe within the BOP, and any drill pipe above or below the BOP at any time between April 20, 2010 and July 15, 2010.

4. Any documents concerning the existence within the industry of procedures, designs, or devices for capping a deepwater well prior to April 20, 2010.