

**U.S. Department of Justice**

Environment and Natural Resource Division

*P.O. Box 761*
*Washington, DC 20044*
*202-514-0180*
*Sarah.Himmelhoch@usdoj.gov*

March 15, 2012

**BY ELECTRONIC MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
Eastern District of Louisiana
Hale Boggs Federal Building
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

    Re:    MDL 2179: BP's Challenges to the United States' Privilege Logs

Dear Judge Shushan:

    I write in response to Mr. Gasaway's letter of March 7, 2012 regarding the United States' privilege logs. I will provide a short background and then respond to BP's proposed procedures.[1]

**Background**

    BP provided some metrics at the outset of its proposal, which prompts me to provide some additional metrics to put the controversy over the United States' privilege claims into context. Overall, the United States has produced approximately 11 million documents. To avoid unnecessarily reigniting the debate over what BP has complained are "non-user generated files",

---

[1] BP asserts that it did not receive the United States' 23rd, 34th, and 35th privilege logs. These logs were originally served upon BP at the same time as the other parties to the MDL, but have been re-served by Federal Express sent out on March 13, 2012. With respect to privilege logs 7-10, the United States agrees it has not provided revised logs and recommends that logs 7-10 be folded into the review process provided in this letter.

the United States will use for purposes of this discussion a figure of 8 million (subtracting the 3 million documents BP alleges were "non-user generated files").[2] Compared to the 8 million documents produced, the United States has withheld as deliberative process roughly 117,000 documents – or roughly 1.4 percent of the documents. This percentage of privilege claims is remarkable when one considers the breadth of the search terms used, including such search terms as:

>British Petroleum and MC252
>BP and MC252
>British Petroleum and Deepwater Horizon.

*See* United States' Status Report at Attachment 10, page 3 of 5, entry for RFP 54 (Docket No. 3928). Moreover, some of the search terms were specifically designed and targeted to collect information likely to be protected by the deliberative process privilege, including the following:

>Eop.gov and deepwater
>Executive Office and President and Deepwater
>Eop.gov and BP

*See* id., entry for RFP 47, 48.

In addition, when evaluating the propriety of claims of deliberative process it is vital to note that the United States' production in this case was unusual in that it included searches of the files of the Secretaries of the Interior, Energy, and Homeland Security, the Administrators of EPA and NOAA, the Deputy Secretary of the Interior, the Director of the USGS, the former head of the Sandia National Laboratories, NOAA's Principal Deputy Undersecretary for Oceans and Atmosphere, and many other high-level officials involved in numerous policy decisions related to management of the largest oil spill response in United States' history as well as regulatory and policy changes necessitated in the wake of the explosion from BP's well to prevent future loss of life and environmental damage.

**Deliberative Process Claims**

The United States believes that there are more efficient ways to address the deliberative process claims than that proposed by BP. Here is one such procedure. If BP agrees to this or a

---

[2] As discussed with the Court in a conference call on February 8, 2012, Mr. Gasaway's letter of February 16, 2012 made numerous assertions regarding the United States' production of documents and the purported prejudice BP has suffered. Since the requested relief in the letter was largely rendered moot as a result of the United States' production of documents, the Court agreed that the United States could reserve its right to contest BP's assertions if the need arose but did not need to provide a written response to Mr. Gasaway's letter. The United States continues to reserve its right to dispute Mr. Gasaway's contentions should they arise again.

similar procedure, the United States will work with BP to establish a schedule for completing the procedure that is expeditious but allows meaningful time for the United States to complete its review and obtain appropriate declarations for disputed documents.

As I noted during our recent telephone conference on this issue, the United States reserves the right to argue that it is inappropriate to require a declaration for every single assertion of deliberative process. As BP points out in its letter, the purpose of the declaration is to ensure that the claims of deliberative process are appropriate and have given due consideration to the policy goals of open government. It may be that BP can agree once the process below is completed that declarations in this unusual case are an unnecessary burden upon the United States and the United States reserves the right to argue that point.

The procedure the United States proposes is as follows:

STEP 1: The United States de-duplicates the entries on the privilege logs

> Because the documents were pulled from so many different agencies using so many different email programs and the time for production and review was short, the United States recognizes that there are numerous emails and potentially other duplicate documents listed on its privilege logs. The United States proposes to de-duplicate on a document (rather than family) level so that each unique document appears only once on the privilege log regardless of whether it is a member of several different families. The United States would remove documents with matching MD5 Hash values and also any emails in which all of the following fields were identical: (a) sender; (b) all recipients (including blind copies); (c) subject line; (d) date sent; and (e) time sent. The United States would also provide a cross-walk of documents removed from the log as duplicates.

STEP 2: The United States segregates and sets aside for later consideration documents not relevant to Phases 1 and 2.

> In the course of negotiating search terms with BP, the United States agreed to several search terms that collected quantities of information relevant to Phase 3 or other as yet unspecified phases of this litigation, but are not relevant to Phases 1 or 2. It makes sense that any such documents appearing on the United States' privilege logs be set aside until we have resolved our disputes regarding the most time-sensitive documents.[3]

---

[3] The United States would also, in the course of this review, identify and release any documents over which it no longer seeks to assert a privilege or which were inadvertently identified as privileged. In addition, it would remove from the logs documents it determines are wholly unrelated to the case at bar but were inadvertently identified on the log.

STEP 3:   The United States serves BP with a revised privilege log identifying those withheld solely on the grounds of deliberative process and related to Phase 1 or 2.

STEP 4:   The United States and BP meet and confer regarding which documents BP contends require a declaration.

STEP 5:   The United States serves any declarations necessary after the meet and confer

STEP 6:   Concurrently with or after Step 5, BP brings to the Court any challenges to the remaining United States' deliberative process privilege claims.

I continue to work with my litigation support contractor and the affected agencies to develop a time line on which this proposed procedure could be completed, but have learned from painful experience in this case that providing proposed deadlines without sufficient information ultimately results in needed extensions and frustrated opponents. Therefore, I believe it is important to obtain BP's agreement at the outset that we should first narrow the disputed documents down to those relevant just to Phase 1 and Phase 2 and that our proposed de-duplication is acceptable to BP so that whatever schedule we propose is properly tailored to the procedure to be followed.

**Law Enforcement Privilege Claims**

The United States does not concur that declarations are necessarily required in all instances in which the law enforcement privilege is asserted. The case which BP cites for this principle, *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988), is a FOIA decision not a decision regarding the assertion of the law enforcement privilege in the context of discovery. Given the relatively small number of these claims, moreover, it seems appropriate for BP to examine the privilege log entries and identify if it truly requires additional information in order to evaluate the applicability of the privilege in the context of this case. Therefore, we propose that the law enforcement privilege claims be handled like the privilege claims other than the deliberative process claims.

**Attorney Work Product, Attorney-Client, and other Privilege Claims**

We believe it unwise to set a deadline for either party to complete challenges to privilege log entries related to Phase 2 documents in isolation. Discovery in this phase is just beginning and we believe a deadline to challenge privilege logs applicable to Phase 2 documents is more appropriately set when the parties have a firm understanding of the overall schedule for Phase 2. What may seem insignificant to the United States now in reviewing BP's privilege logs could take on significance in light of deposition or other testimony elicited in the course of discovery. We assume the same is true of BP.

      Moreover, imposing early deadlines for raising challenges to privilege claims may result in more disputes being brought to the Court than are necessary. It is frequently the case that parties are able to work out disputes regarding the sufficiency of logs or the applicability of privileges if they are given an opportunity to (1) notify the other parties of their concerns; (2) meet with the other parties and discuss; and (3) take actions to cure or alter privilege claims where agreement is reached. Therefore, the United States proposes that no deadline be imposed on any party to challenge Phase 2 documents appearing on any privilege logs until the overall schedule for Phase 2 is established.

      We appreciate your consideration of the United States' proposal and look forward to answering any questions you may have.

      Sincerely,

      /s/ Sarah D. Himmelhoch

      Sarah D. Himmelhoch

cc:    Liaison & Coordinating Counsel
       Robert Gasaway