# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C.  20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

March 15, 2012

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Room B345
500 Poydras Street
New Orleans, LA  70130

Re:    The United States' Proposed Rule 30(b)(6) Deposition Schedule

Dear Judge Shushan:

We thought it might be helpful to lay out the current status of various issues that impact the scheduling of Rule 30(b)(6) depositions for consideration by the Court and parties in advance of the Friday, March 16, 2012, Phase 2 Working Group conference.

Within a relatively short period of time, the United States has produced a tremendous number of documents — many of which are irrelevant, produced late, or exhibit technical deficiencies — and the United States has broadly withheld tens of thousands of documents based on deliberative process privilege claims that it is has not supported.  Nonetheless, the United States' current proposed schedule for depositions does not contemplate a way for the parties to work their way through to solutions to these outstanding written discovery problems. The bottom line, discussed more fully below, is that BP believes the United States' proposed Rule 30(b)(6) schedule should be modified so that solutions to these problems can be put in place before impacted depositions proceed.

Additionally, BP reminds the Court and parties that BP proposed a default time allocation among parties for one-day and two-day Phase 2 depositions.  BP thus far has not received comment on this proposal and so, for convenience, the proposed allocation is re-attached for the parties' information. *See* Attachment 1.

BP will be prepared to address all of the above issues, plus any other issues of interest, on Friday.

Chicago      Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 15, 2012
Page 2

## I.     THE UNITED STATES' WRITTEN DISCOVERY PROBLEMS AFFECT THE PARTIES' ABILITY TO CONDUCT RULE 30(B)(6) WITNESS EXAMINATIONS.

Some brief history provides relevant context to the following scheduling discussion. Originally, the United States promised that it would complete its document productions, including Coast Guard documents, by August 31, 2011.  *See* Attachment 2, S. Himmelhoch email to R. Gasaway (June 3, 2011).  After this deadline proved unworkable, the United States and BP submitted an agreed order that provided the United States with additional time to produce documents and provided BP with scheduling certainty.  The United States then missed some of these Court-ordered deadlines, often without prior warning or subsequent explanation. *See* Attachment 3, R. Gasaway Ltr. to the Court, at 3-5 (Feb. 16, 2012).

BP recounts this oft-told tale just to illustrate why BP might worry legitimately about its ability to predict when documents relevant to taking or defending Rule 30(b)(6) depositions will be produced.  This legitimate concern about timely productions forms the backdrop against which BP has maintained, consistently, that all parties should have 45 days to review productions of relevant documents before depositions on topics related to those documents take place.  The United States initially agreed with this proposal.  But it later disagreed with the proposal.  In light of past experience, further explained in detail below, the protections that this clear rule would afford all parties are well warranted, and BP suggests that this sound practice be adopted.

Even more fundamentally, my February 16 letter explained that deficiencies in the United States' document productions threaten to prejudice BP's ability to question United States witnesses on quantification topics at the heart of Phase 2 litigation.  *See* Attachment 3.  Now that the United States has proposed a specific Rule 30(b)(6) deposition schedule, this prejudice is manifest.

### A.     Production Quality and Technical Issues.

The United States' document production efforts in this case, although perhaps unprecedented, have often fallen short of what the Court has required and of what constitutes best practices for electronic discovery in large civil litigation.  These production challenges are of relevance to scheduling because reviewing these large, spotty, unwieldy United States productions consumes tremendous attorney time and technical resources.

### (1)     Unwieldy and Deficient Productions.

As the Court knows, the United States has produced an extraordinary number of documents — approximately 1,186,831 documents since February 1, 2012, approximately

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 15, 2012
Page 3

3,597,043 documents since the beginning of the year, and approximately 9 million documents in the last six months. A large share of these documents were not reviewed before production. As a result, the United States' productions contain many irrelevant and technically deficient documents.

- The United States has produced at least 2.8 million documents that contain no useful, user-generated content, and this is a very conservative estimate. *See* Attachment 3, Appendix A.

- The United States has produced duplicate documents with the same Bates numbers. *See* Attachment 4, A. Pixton email to R. Hanger (Mar. 8, 2012). When this happens, BP cannot load the United States' productions until the time-consuming process of removing all duplicates has been completed.

- The United States has improperly converted files to massive numbers of images without usable content. Specifically, 7,396 documents (.064% of the United States production as of March 8), account for 31 million pages or 43% of all pages the United States has produced. Wading through these millions of useless pages consumes significant time and resources. *See id.*

- The United States productions have exhibited repeated problems with metadata. *See, e.g.*, Attachments 4-7.

Where appropriate, BP has offered technical resources to help work through these issues. BP has met with the United States to suggest ways of improving document productions and has played a direct role in assisting with the production of the United States' own Zantaz server documents. (Working together with BP, the United States was able to retrieve and produce the Zantaz documents in five weeks, even though the United States initially estimated that it would need three to six *months* just to retrieve the documents. (Decl. of Tony Irish ¶ 17 attached to US's Response to BP's Mot. to Compel (Dec. 21, 2011).)) Nonetheless, these production issues remain relevant to scheduling.

### (2)    EOP Documents.

The October 19, 2011 agreed Order required the following: "When the United States produces email communications to or from the EOP, the United States shall produce those as a separate production and identify the production as "Communications between the EOP and the Federal Agencies." (October 19, 2011 Order at ¶ 4.) This was thought to be an easy task because EOP documents must pass through a completely separate privilege review process, as

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 15, 2012
Page 4

the United States describes it.  Hence, any documents for which privilege was not asserted should have been easy to indentify and separately produce.

But the United States has not always complied with this aspect of the Order.  To correct this oversight, the United States proposed a solution — search for all documents containing an eop.gov email address in the TO, FROM, CC metadata fields.  Unfortunately, these fields do not always include email addresses.  Instead, the sender or recipient is often identified merely by name, which means, of course, that a search for "eop.gov" will not produce all documents that include an EOP recipient.  As one example of many, please see DSE002-001210, an email to John Holdren, among others, that a search for eop.gov email addresses does not return.

In sum, the United States' proposed solution for its failure to comply with Paragraph 4 of the October 19 agreed order does not really work. Accordingly, the United States should comply with the Order as soon as possible by otherwise identifying these high-priority documents.

## B.    Missing or Inadequate Custodial Productions.

BP has identified 144 custodians who were expected to have documents relevant to quantification issues, but who do *not* appear to be represented *at all* in the United States' productions to date.  *See* Attachment 8.  All of these 144 custodians appear on the lists of agreed-upon United States production custodians whose documents are subject to production.  *See* Attachment 4 to the United States' September 6, 2011 Status Report; United States Ltr. to the Court, at 2 (Jan. 26, 2012).

Significantly, this list includes 86 employees of national laboratories whose productions are relevant to the very first deponents that the United States proposes to offer for examination. Obviously such depositions should be put on hold for the time being.  Before depositions related to these "missing" productions occur, the parties should be assured that the United States has remedied the situation by timely producing all responsive, non-privileged documents drawn from these custodians.  For example, SNL042-011255 is an email to Dr. Sheldon Tieszen (of Sandia National Lab), among others.  But the United States has not produced any custodial documents from Dr. Tieszen, who contributed to the "Ratzel Report," one extremely important government quantification document.

In addition to these 144 "missing" custodial productions, BP has also preliminarily identified six custodians for whom the total quantity of documents produced to date appears improbably small.  *See* Attachment 9.  BP understands, of course, that audits and quality checks might mean that more documents from these custodians are forthcoming.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 15, 2012
Page 5

Nonetheless, these custodians' extremely thin productions appear far from complete at this juncture.  Here again, before depositions related to these apparently inadequate productions occur, the parties should be assured that the United States has remedied the situation by timely producing all responsive, non-privileged documents drawn from these custodians.

### C.      Unresolved Privilege Claims.

As the Court also knows, the United States has withheld tens of thousands of documents from the entities responsible for providing Rule 30(b)(6) witnesses, citing the deliberative process privilege.  BP has explained why there are significant doubts about the United States' ability to support and sustain these expansive claims.  *See* Attachment 10, R. Gasaway Ltr. to the Court (Mar. 7, 2012).

BP is now awaiting the production of the United States' declarations and revised logs so it can addresses the United States' broad and currently unsubstantiated assertions of the deliberative process privilege.  But in the meantime, the sustainability of the United States' broad claims is in serious doubt, as the United States has failed to provide declarations supporting what the documents are, what policy decision they relate to, and how releasing these documents would negatively affect future deliberations.  *See Resolution Trust Corp. v. Diamond*, 773 F. Supp. 597, 604-05 (S.D.N.Y. 1991) ("The RTC's blanket policy of nondisclosure of predecisional, deliberative documents shirks the agency's responsibility of determining the need for confidentiality and would force the court to bear the burden of making the determination without guidance from the agency.")  Further, given the narrow and precise contours of the deliberative process privilege, it is difficult to see how the United States could substantiate withholding under this privilege any documents (much less tens of thousands of documents) relating to its activities to estimate the flow that came from the Macondo Well before it was capped.  More than likely, then, withheld documents related to quantification topics have yet to be produced.  And as a result the scheduling of depositions related to these withheld documents may need to be adjusted.

Of particular importance to quantification deposition topics are the United States' general assertion of privilege over documents related to its publicly released flow rate estimates.  Recognizing the importance of this issue and the high priority placed on certain deliberative process claims, the Court recently asked the United States to provide background information to assist in finding a way forward.  Unfortunately, the United States did not provide this requested information in time for it to be evaluated and discussed in this letter.

But the larger problem is that any timeline the United States might propose is unlikely to be compatible with its proposed Rule 30(b)(6) deposition schedule.  For example, the United States has cited the deliberative process privilege in withholding over 3,500 documents from the

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 15, 2012
Page 6

three National Labs most involved in the flow rate estimates (Sandia, Los Alamos, and Lawrence Livermore).  Reading between the lines of the scant information included with the United States' privilege logs, these documents appear to address key technical issues and, if eventually produced, they could significantly affect the course of these very important depositions.  Nonetheless, the United States proposes to push this deposition through on April 11 and 12 before privilege issues regarding these thousands of withheld documents can be addressed and resolved.

The same concern reappears regarding the United States' expansive (and currently unsubstantiated) assertions of the deliberative process privilege relating to practically all of deposition topics related to quantification — including the Science Advisors (Topics 53-60) and the FRTG (Topics 44-52).  For these reasons, the Court and parties must find a way for these privilege claims to be resolved so that these quantification depositions can go forward.

## II.   THE UNITED STATES' PROPOSED RULE 30(B)(6) SCHEDULE SHOULD BE MODIFIED.

In view of the written discovery issues described above, as well as other considerations, the United States proposed schedule for 30(b)(6) depositions of quantification witnesses presents significant problems.

***Sandia, Los Alamos, and Lawrence Livermore National Labs***.  The proposed April 11-12 deposition of these three key National Labs (Topics 61-74, 82-89) cannot reasonably be compressed into a two-day deposition.  These labs were integral to several key quantification methods.  These depositions will cover significant amounts of technical information requiring more time than a regular fact deposition.  Accordingly, even apart from the issues addressed above, BP recommends that each national laboratory be given its own separate deposition.

***United Area Command***.  As the Court knows, the United States has not finished producing documents from the Unified Area Command.  The proposed April 16-17, 23-24, and 25-26 depositions include topics related to the United Area Command's involvement in quantification issues — Topics 35-43.  Depositions on these topics should not proceed until the Unified Area Command's documents have been produced with sufficient time for BP to review them.

***Flow Rate Technical Group***.  Depositions on topics directed to the FRTG (44-52) especially should not go forward until the issues surrounding the United States' privilege claims for significant portions of its flow rate calculations have been addressed.  Additionally, several topics directed out of the FRTG implicate acoustics analysis performed by Woods Hole Oceanographic Institute (WHOI) which contracted with the United States Coast Guard.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 15, 2012
Page 7


Accordingly, the FRTG topics should not go forward until documents related to WHOI's acoustics work are produced with sufficient time for BP to review them.  As the Court well knows, BP does not have the WHOI documents, even though it has been struggling for months to obtain them.

*Organizational Topics*.  Currently, the United States proposes to offer deponents on the organization of the FRTG and the preparation of *The Oil Budget Calculator* (Topics 44 and 90.2 respectively) only *after* offering witnesses on substantive topics related to the FRTG and the preparation of this publication.  But questioning will proceed much more efficiently and effectively if the organizational deposition precedes the substantive depositions.

*      *      *

We hope this broad overview proves helpful in laying out the current status of various issues that bear on written discovery and Rule 30(b)(6) deposition scheduling.  As noted above, BP looks forward to further discussing these issues on Friday.

Sincerely,

Robert R. Gasaway

Attachments

cc (via electronic mail):

R. Michael Underhill
Steven O'Rourke
Sarah D. Himmelhoch
Robin L. Hanger
A. Nathaniel Chakeres
Brian H. Barr
Joel M. Gross
Allison B. Rumsey
Don K. Haycraft
Plaintiffs' Liaison Counsel
Defense Liaison Counsel (dsc2179@liskow.com)

**R. Allan Pixton | Kirkland & Ellis LLP**
300 North LaSalle Street | Chicago, Illinois 60654
Direct: (312) 862-2453 | Fax: (312) 862-2200

---

**From**: Hanger, Robin L. (CIV) [mailto:Robin.L.Hanger@usdoj.gov]
**Sent**: Wednesday, March 07, 2012 05:01 PM
**To**: Sally Shushan <Sally_Shushan@laed.uscourts.gov>; Mike_OKeefe@laed.uscourts.gov <Mike_OKeefe@laed.uscourts.gov>; Sarah.Himmelhoch@usdoj.gov
**Cc**: mary.rose.alexander@lw.com; Barr, Brian <BBarr@levinlaw.com>; dennisbarrow@warejackson.com; Beck, David J. <dbeck@brsfirm.com>; Berman, Lisa (ENRD) <Lisa.Berman@usdoj.gov>; Colby, Paul <paulcolby@warejackson.com>; deepwater.horizon@usdoj.gov; connie.delgado@bingham.com; Flanders, Ed <edward.flanders@pillsburylaw.com>; jfunderburk@morganlewis.com; dgodwin@godwinronquillo.com; Grabill, Jeremy <jeremy.grabill@weil.com>; dkhaycraft@liskow.com; Hebert, Joshua <jhebert@caci.com>; Henry, Camile <chenry@caci.com>; Henry, Camille (CIV) <Camille.Henry@usdoj.gov>; sherman@hhkc.com; Homer, Andrew <andrew.homer@pillsburylaw.com>; deepwater.horizon@usdoj.gov; airpino@irpinolaw.com; Kent, Russell <russell.kent@myfloridalegal.com>; Kirby, Ky E. <ky.kirby@bingham.com>; Kuchler, Deborah D. <dkuchler@kuchlerpolk.com>; Langan, Andrew; LeBouef, Susan <SUSANL@wrightroy.com>; Leith, Cheryl <cheryl.leith@lw.com>; mlemoine@joneswalker.com; Lerner, Daryl <dlerner@morganlewis.com>; Lyle, Michael J. <michael.lyle@weil.com>; Maher, Erin; CMaze@ago.state.al.us; McCulley, Catherine <catherine.mcculley@pillsburylaw.com>; kmiller@frilot.com1; PMills@ago.state.al.us; Nelson, Thomas; Ng, Patrick <patrick.ng@pillsburylaw.com>; Niermann, Jon <jon.niermann@oag.state.tx.us>; sean.obrien@sutherland.com; Peterson, Lili <e.petersen@kanner-law.com>; Phillips, Trey <treyphillipsdwh@ag.state.la.us>; Plaintiffs' Centralized Mailbox <liaison2179@liskow.com>; Raines, Carolyn <CRaines@GodwinRonquillo.com>; Roy, James <jimr@wrightroy.com>; Salaj, Steve <ssalaj@caci.com>; psavoy@brsfirm.com; aschexneider@joneswalker.com; daniel.schubert@davispolk.com; Scofield, Denise <dscofield@morganlewis.com>; Strange, Luther <luther.strange@ago.state.al.us>; Tambling, Richard <RTambling@ago.state.al.us>; Tanner, Hugh <htanner@morganlewis.com>; Terrell, Megan <TerrellM@ag.state.la.us>; Toscano, David <david.toscano@davispolk.com>; theodore.tsekerides@weil.com; Vide, Cynthia A. <cvide@caci.com>; Weigel, Alan M. <AWeigel@BlankRome.com>; Wittman, Phillip A. <pwittman@stonepigman.com>; Wood, M. <MWOOD@ago.state.ms.us>
**Subject**: Update on Discovery Technical Issues and Coast Guard Production

Good afternoon Judge Shushan,

My apologies for this late email.  BP and the Government spoke earlier and are working towards correcting a few technical issues regarding productions.  I am confident we can work them out without need to involve the Court's time.

With regard to Coast Guard, we propose that Coast Guard documents that remain to be ingested and searched will be produced by May 31, 2012.  We also request an additional 60 days after May 31, 2012, to review those documents that require privilege review.

Thank you for your time.

My best,
Robin Lea Hanger
Trial Attorney
Aviation & Admiralty Litigation
Civil Division, Torts Branch
U.S. Department of Justice
1425 New York Ave. N.W.
Washington, D.C. 20005

Robin.L.Hanger@usdoj.gov
T: 202.305.0049
F: 202.616.4159

Mailing address:
P.O. Box 14271
Washington, D.C. 20044-4271

# Attachment 5

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois  60654

<table>
<tr><td>Mark J. Nomellini<br>To Call Writer Directly:<br>(312) 862-2410<br>mark.nomellini@kirkland.com</td><td>(312) 862-2000<br><br>www.kirkland.com</td><td>Facsimile:<br>(312) 862-2200</td></tr>
</table>

July 28, 2011

**Via Electronic Mail**

Sarah D. Himmelhoch, Esq.
Senior Litigation Counsel for E-Discovery
Environment & Natural Resources Division
U.S. Department of Justice
RFK Main Building
950 Pennsylvania Ave., NW
Washington, DC 20530

Re:  *In re Oil Spill by the Oil Rig "Deepwater Horizon," MDL No. 2179*

Dear Ms. Himmelhoch:

We have encountered certain issues (described below) as we have been reviewing the United States' ongoing document production in MDL 2179.  Could you please remedy these issues?

## I.    Missing or Incorrectly Formatted Metadata

According to Pre-Trial Order #16 ("PTO #16"), the United States must produce "associated metadata and objective coding consistent with the DOJ guidelines."  (PTO #16, Paragraph 11.)  Notwithstanding PTO #16, each of the United States' production load files is missing a number of key, required metadata fields, including, but not limited to APPLICAT, PRPRTIES, HASH, SUBJECT and FAMILY RANGE.  (We do note that this last metadata field, FAMILY RANGE, was included in two of the United States' 14 production volumes to date; namely Volumes 1 and 5.)  Additionally, a number of metadata fields provided by the United States, such as DOCID, ATTACHID, and PARENTID, do not contain data consistent with the Field Descriptions provided under PTO #16.

Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai      Washington, D.C.

# KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
July 28, 2011
Page 2

**II.      Native Files**

To date, the United States has produced 3,430 native files that lack a file extension and have been produced in an unknown file format.  Without this information BP is unable to open and review these files.

Please provide revised load files with the required metadata fields for these documents. Please also provide, for the 3,430 native files referred to above, a file copy that includes a file extension or other file format information that permits BP to open the file.

Sincerely,

/s/ Mark J. Nomellini/ap

cc:    Robert R. Gasaway

# Attachment 6

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:                         (202) 879-5000                                    Facsimile:
(202) 879-5175                                                                                      (202) 879-5200
robert.gasaway@kirkland.com                      www.kirkland.com

September 5, 2011

**Via Electronic Mail**

Sarah D. Himmelhoch, Esq.
Senior Litigation Counsel for E-Discovery
Environment & Natural Resources Division
U.S. Department of Justice
RFK Main Building
950 Pennsylvania Ave., NW
Washington, DC 20530

Re:  *In re Oil Spill by the Oil Rig "Deepwater Horizon," MDL No. 2179*

Dear Sarah:

During the August 26, 2011 status conference before Judge Shushan, you provided an update on the U.S. government's document production effort.  You indicated that the U.S. government has "hit the 17 million page mark, and we have a lot more in the pipeline already to go out," yet the U.S. government is "not going to be done by August 31."  (Tr. 19:9-11.)  You also mentioned that you "would do a comprehensive status report for the Court and the parties on September 6th that says here is what we managed to get done, here is what we think we can get done, and the schedule for getting that done and then let the parties raise issues with respect to whether we've got our priorities right in trying to complete the rest of the effort."  (Tr. 20:1-6.)

We appreciate the U.S. government's discovery efforts to date.  We appreciate in particular every effort the government makes to meet the August 31 deadline for producing Phase 2 documents, and we look forward to your September 6 report.   Even so, this letter points out several deficiencies in the U.S. government's document productions thus far that hamper BP's ability to effectively review these documents (*e.g.*, lack of family metadata) or increase the time and expense of doing so (*e.g.*, production of system files, other non-relevant documents, and documents BP itself produced to the U.S. and other parties).  This is especially significant in light of the enormous number of documents produced in the last three weeks — over 1.3 million

Hong Kong       London       Los Angeles       Munich       New York       Palo Alto       San Francisco       Shanghai       Washington, D.C.

# KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
September 5, 2011
Page 2

documents comprising almost 13 million pages.  We intend to discuss these deficiencies with Judge Shushan during the September 9 conference to the extent that we cannot resolve them before then.

## I.     PTO-Required Metadata Still Is Missing or Incorrectly Formatted

In his July 28, 2011 to you, my colleague Mark Nomellini identified missing or incorrectly formatted metadata in the United States' document productions.  Specifically:

> According to Pre-Trial Order #16 ("PTO #16"), the United States must produce "associated metadata and objective coding consistent with the DOJ guidelines." (PTO #16, Paragraph 11.)  Notwithstanding PTO #16, each of the United States' production load files is missing a number of key, required metadata fields, including, but not limited to APPLICAT, PRPRTIES, HASH, SUBJECT and FAMILY RANGE.  (We do note that this last metadata field, FAMILY RANGE, was included in two of the United States' 14 production volumes to date; namely Volumes 1 and 5.)  Additionally, a number of metadata fields provided by the United States, such as DOCID, ATTACHID, and PARENTID, do not contain data consistent with the Field Descriptions provided under PTO #16.

In your August 2, 2011 email, you "agree[d] that in some cases [the U.S.] did not include all of the available data (*i.e.*, hash values for the electronic records) and in other cases [the U.S.] produced data that was not formatted as outlined in the PTO."  You also said:  "To correct these errors we will go back through each of our 19 deliveries to date and make the appropriate adjustments to the original load file, then send out a replacement file as needed.... [I]n some cases the data is not included because there was no information provided for those fields."

On August 17, 2011, the U.S. government produced "enhanced load files" for eight of the 19 production volumes for which missing and incorrectly formatted metadata previously had been produced.  As of this writing, BP has still not received any corrected load files for the first 11 U.S. government production volumes.  Additionally, it appears that even in the "enhanced load files" and the load files of subsequently produced U.S. government production volumes, important metadata fields still are not populated or are incorrectly formatted.  For example, of the 79,135 documents which the provided metadata fields indicate are emails, less than 16% of those documents contain any populated sender information, and less than 4% contain any family range information.  (*See* Attachment A.)  Additionally, of that very small set of documents that do contain family range metadata, several of them have family information that does not make sense, such as the metadata that indicates a document is part of an approximately 28,000-

# KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
September 5, 2011
Page 3

document family.[1]  Without taking a position now as to the sufficiency of producing only 79,135 emails in a production that now consists of well over 2 million documents,[2] this letter renews Mark's earlier request that the U.S. government promptly provide all of the metadata required under PTO #16.  The production of such metadata not only is mandated by PTO #16, but the near complete lack of family metadata produced by the U.S. government impairs BP's ability to put documents in the proper context relative to each other.

## II.    Reproduction of Documents Produced By BP and Other Parties In MDL 2179

According to the metadata provided in the ATTITLE, SUBJECT, and/or FOLDERID fields, the U.S. government has produced over 200,000 documents that BP previously produced to the U.S.  Additionally, it appears that the U.S. government has reproduced a large number of documents previously produced to the U.S. government by Cameron.  Because the Bates stamps of these documents have not been OCR'ed or extracted, however, it is impossible for BP to tell exactly how many documents the U.S. government has merely reproduced from other MDL 2179 producing parties.  Examples of these reproduced documents include, but are not limited to, those identified in Attachment A.

Please promptly identify the Bates stamps of all documents in the U.S. government productions which are documents that BP or other parties produced to the U.S. government in MDL 2179.  In addition, please specifically identify by Bates stamps all such documents in future U.S. government productions when making such productions.

## III.    Videos

The U.S. government's production contains a number of videos that ordinarily would be filtered out of a typical document production.  The irrelevant documents include (i) the video produced at IMS053-002663 depicting a fight being watched by spectators; (ii) the video produced at IMS170-005137 depicting Ed Montana's "Obamanation" music video; (iii) the video produced at IMS247-005516 depicting a video "remix"; (iv) the video produced at IMS170-010291 depicting a cat frolicking and then being thrown; and (v) the video produced at IMS060-012957 depicting a recorded segment from a hidden camera.  We understand of course

---

[1]    *See* DEO014-001639;DEO076-000001-DEO122-117292 (family of 28,738 documents) and DEO017-002340;DEO072-000001-DEO074-089500 (family of 11,554 documents).

[2]    The analysis contained within this letter is preliminary and covers the 2,369,610 documents comprising 16,228,532 pages produced by the U.S. government through GOV034.

## KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
September 5, 2011
Page 4

that these videos likely were downloaded by custodians and then made their way from there into the U.S. government's production sets.  We nonetheless ask that you make every effort to filter out such videos in future productions.

In that regard, we have been unable to locate any videos of the burning *Deepwater Horizon* rig after it had exploded, but before it sank.  We had expected that the U.S. government, particularly the U.S. Coast Guard, would have taken and produced such videos.  Please let us know (and identify by Bates stamps) what videos have been produced and/or are to be produced.

## IV.    Non-Viewable Files, System Files, and Unknown Native Files

The U.S. government's production contains a significant number of documents that normally would be filtered out of a typical discovery production.  Examples of these types of files include, but are not limited to: (1) over 148,000 java script class files and system files, which are generally associated with applications and do not contain user-edited content; (2) close to 150,000 non-viewable TIFF files produced as natives; and (3) almost 13,000 native files that lack an extension.  (*See* Attachment A.)

Please provide revised load files with the required metadata fields for these documents (including the original native format of the non-viewable TIFF files).  Please also provide, for the native files referred to above, a file copy that includes a file extension or other file format information that permits BP to open the file.  Finally, we respectfully request that the U.S. government better filter future productions for system files and other non-responsive files.

## V.    Instant Messages and Text Messages

Would you please let us know the United States' position on whether it is collecting and producing instant messages and text messages?  We understand that the Court has not imposed an obligation to preserve such messages.  While PTO 22 addresses the question of parties' duty to preserve, it does not address the discoverability of documents that have been preserved by individual custodians regardless of whether or not there was a duty to preserve in the first instance.  Please let us know whether the United States is collecting and producing instant messages and text messages to the extent that individual custodians have preserved them.

*  *  *  *

Finally, in light of the U.S. government's continuing production issues as described to BP and in the August 26 status conference, we think it is appropriate to move the motion to compel

# KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
September 5, 2011
Page 5


deadline for "Event" related discovery, as between the U.S. and BP, from September 15, 2011 to October 15, 2011.


Sincerely,

Robert R. Gasaway



Attachment

cc (via electronic mail):

| | |
|---|---|
| R. Michael Underhill | Mark J. Nomellini |
| Steven O'Rourke | Joel M. Gross |
| J. Andrew Langan, P.C. | Allison B. Rumsey |
| Stuart A.C. Drake | Don K. Haycraft |
| Joseph A. Eisert | |

# ATTACHMENT A

Attachment A

## I.     PTO-Required Metadata Still Is Missing or Incorrectly Formatted

The United States has produced 79,135 documents which indicate the record is an email in either the PRPRTIES, APPLICAT or TO and FROM fields.  Of this set, only 12,507 records contain sender information, and only 2654 contain any coding indicating the document contains attachments.  Furthermore, there are 1,967 records for which there is no sender, recipient or even subject coding.  The attached spreadsheet lists the 79,135 records referred to above, including all the fields mentioned.



USEmailProd.xls

## II.     Reproduction of Documents Produced By BP and Other Parties In MDL 2179

### (a)     Reproduction of BP Produced Documents

According to metadata provided in the ATTITLE, SUBJECT and/or FOLDERID fields, United States has produced 225,476 documents previously produced by BP.  Below is a sample of these documents, see attached spreadsheet for full list.

| BEGDOC# | ATTITLE | FOLDERID | SUBJECT |
|---|---|---|---|
| OSE002-001948 | 172 Rig Planner with Major Ops BP-HZN-MBI00108172.xls | \T10\T10.05.FX D\T10.05.05.FX D\T10.05.05.10.FX D\T10.05.05.10.04.FX D\_tmax_documents\Well Design\172 Rig Planner with Major Ops BP-HZN-MBI00108172.xls | \T10\T10.05.FX D\T10.05.05.FX D\T10.05.05.10.FX D\T10.05.05.10.04.FX D\_tmax_documents\Well Design\172 Rig Planner with Major Ops BP-HZN-MBI00108172.xls (Page 1 of 29) |
| OSE002-001977 | 173 Trouble Time BP-HZN-MBI00108167.xls | \T10\T10.05.FX D\T10.05.05.FX D\T10.05.05.10.FX D\T10.05.05.10.04.FX D\_tmax_documents\Well Design\173 Trouble Time BP-HZN-MBI00108167.xls | \T10\T10.05.FX D\T10.05.05.FX D\T10.05.05.10.FX D\T10.05.05.10.04.FX D\_tmax_documents\Well Design\173 Trouble Time BP-HZN-MBI00108167.xls (Page 1 of 39) |
| OSE111-000232 | High Quality Print.joboptions | \T40\T40.01FX D\T40.01.09.FX D\OLD STUFF\4.1 Flowpath\Supporting Documents\BP-HZN-OSC00007731 - ETP casing.pdf+\ZZZ.ZZZ+\High Quality Print.joboptions | \T40\T40.01.FX D\T40.01.09.FX D\OLD STUFF\4.1 Flowpath\Supporting Documents\BP-HZN-OSC00007731 - ETP casing.pdf+\ZZZ.ZZZ+\High Quality Print.joboptions (Page 1 of 6) |



US Prod of BP Docs .xls

### (b)     Reproduction of Cameron Produced Documents

From a sampling of the 29,055 documents identified in the attachment below, the United States appears to have reproduced many documents that contain Cameron Bates stamps.



USG CAM Produced Docs.xlsx

Attachment A

### III.    Videos

Samples of irrelevant videos are identified in the cover letter.

### IV.    Non-Viewable Files, System Files, and Unknown Native Files

### (a)    Non-Viewable Java Script Class files

The United States has produced 138,306 currently identified java script class files.  These files are generally associated with applications and do not contain user edited content.

In addition, the United States has not provided any metadata to indicate the responsiveness of these produced documents.  A sample of this set is below and the full list is attached hereto.

| BEGDOC# | SUBJECT | FILEPATH | FOLDERID | APPLICAT | PRPRTIES | ATTITLE | DOCLINK |
|---------|---------|----------|----------|----------|----------|---------|---------|
| OSE058-001214 | ByteToCharBig5.class | \T30\T30.07.FX D\T30.07.01.FX D\T30.07.01.FX D\Temporary\Adobe Illustrator CS5\payloads\AdobeJRECS5-mul\Assets1_1.zip+\_106_937e 3b5c52279fdd5627a6a21e1f720 c+\sun\io\ByteToCharBig5.class | \T30\T30.07.FX D\T30.07.01.FX D\T30.07.01.FX D\Temporary\Adobe Illustrator CS5\payloads\AdobeJRECS5-mul\Assets1_1.zip+\_106_937e3b5c5 2279fdd5627a6a21e1f720c+\sun\io\ ByteToCharBig5.class | Java Class File | Java Class File | ByteToCha rBig5.class | DOCLINK\0 0\02\OSE0 58-001214 |
| OSE058-001215 | ByteToCharBig5 _HKSCS.class | \T30\T30.07.FX D\T30.07.01.FX D\T30.07.01.FX D\Temporary\Adobe Illustrator CS5\payloads\AdobeJRECS5-mul\Assets1_1.zip+\_106_937e 3b5c52279fdd5627a6a21e1f720 c+\sun\io\ByteToCharBig5_HKS CS.class | \T30\T30.07.FX D\T30.07.01.FX D\T30.07.01.FX D\Temporary\Adobe Illustrator CS5\payloads\AdobeJRECS5-mul\Assets1_1.zip+\_106_937e3b5c5 2279fdd5627a6a21e1f720c+\sun\io\ ByteToCharBig5_HKSCS.class | Java Class File | Java Class File | ByteToCha rBig5_HKS CS.class | DOCLINK\0 0\02\OSE0 58-001215 |



US GOV
Non-Viewable Class F

### (b)    System Files

The United States has produced at least 10,624 readily recognizable system files which do not contain user edited or generated content.  The file extensions included in creating this total consist of:  DLL, EXE, LNK, INF, REG, PNF, NLS, SO, SYS, SDI, INI and BAT.  A full list of bates numbers producing native files with these extensions is attached  hereto.

| File Extension | Count of File Extensions |
|----------------|--------------------------|
| Dll | 5,112 |
| Exe | 1,318 |
| Lnk | 807 |
| Inf | 774 |
| Reg | 729 |
| Pnf | 289 |
| Nls | 590 |
| So | 27 |
| Sys | 509 |
| Sdi | 289 |

| | |
|---|---|
| Ini | 177 |
| bat | 3 |

Attachment A



04. Non-Viewable
System Files.xlsx

**(c)      Non-Viewable TIFF Files Produced as Natives**

The United States has produced 142,902 currently identified records in which a TIFF file was produced as a native.  In these instances, sampled below and enumerated on the attachment hereto, the document is neither viewable as a bates stamped image nor as a separate native file.

| BEGDOC# | ATTITLE | PRPRTIES | APPLICAT | DOCLINK | FileName | FOLDERID |
|---------|---------|----------|----------|---------|----------|----------|
| SNL084-000277 | | | | DOCLINK\00\47\SNL084-000277.tif | | |
| SNL084-000700 | | | | DOCLINK\00\47\SNL084-000700.tiff | | |
| SNL084-046737 | | | | DOCLINK\00\52\SNL084-046737.tiff | | |
| NPT309-000030 | ._05142010_2024RiseEndPlume91deg00001.tif | | | E:\prod20110730_1\DOCLINK\00\00\NPT309-000030.tif | | \05142010_2024_RiserEndPlume\._05142010_2024RiseEndPlume91deg00001.tif |
| NPT309-000031 | ._05142010_2024RiseEndPlume91deg00002.tif | | | E:\prod20110730_1\DOCLINK\00\00\NPT309-000031.tif | | \05142010_2024_RiserEndPlume\._05142010_2024RiseEndPlume91deg00002.tif |



Non-ViewableTif.xlsx

**(d)      Non-Viewable Native and No Metadata**

The United States has produced 12,887 currently identified records where the files could not be imaged; the native file cannot be opened because there is no file extension nor was any metadata provided to identify the document being produced.  A sample of these documents is below and a full listing of the currently identified documents is attached.

| BEGDOC# | SUBJECT | FILEPATH | FOLDERID | APPLICAT | PRPRTIES | ATTITLE | DOCLINK |
|---------|---------|----------|----------|----------|----------|---------|---------|
| HCG032-000001 | | | | | | | \HCG032\DOCLINK\00\00\HCG032-000001 |
| HCG032-000119 | | | | | | | \HCG032\DOCLINK\00\00\HCG032-000119 |
| HCG032-000120 | | | | | | | \HCG032\DOCLINK\00\00\HCG032-000120 |
| HCG032-000121 | | | | | | | \HCG032\DOCLINK\00\00\HCG032-000121 |
| HCG032-000122 | | | | | | | \HCG032\DOCLINK\00\00\HCG032-000122 |
| HCG032-000325 | | | | | | | \HCG032\DOCLINK\00\00\HCG032-000325 |



Examples of
Non-Viewable-No Met

# Attachment 7

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

September 22, 2011

**By Electronic Mail**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court
Room B345
500 Poydras Street
New Orleans, LA  70130

Re:  **In re Oil Spill by the Oil Rig "Deepwater Horizon," MDL No. 2179**

Dear Judge Shushan:

This letter is submitted as comment on the United States' September 6, 2011 Status Report ("Report").  The letter focuses on addressing a number of Phase II discovery issues — some of which were previously discussed at the September 9, 2011 status conference.

As explained below, BP has serious concerns with certain aspects of the United States' Report, especially with its impact on the discovery calendar.  BP therefore respectfully requests that the Court impose a discovery deadline of October 15, 2011, for documents responsive to the search terms that the United States and BP agreed to as of July 19, 2011.

Additionally, as mentioned at the September 9 status conference, BP is concerned that certain technical deficiencies persist in the United States' productions, including missing or incomplete metadata.  We would appreciate the Court's attention and assistance on these technical issues as well, in the event the United States and BP cannot resolve the issues between themselves.

## I.  THE UNITED STATES HAS MISSED ITS DEADLINES, AND NEW DISCOVERY DEADLINES SHOULD BE SET.

The United States initially agreed that that it would produce documents related to source control and quantification issues by no later than August 15 or August 31, 2011.  As the Court is aware, the United States did not meet those deadlines.

What is most concerning to BP is not that deadlines were missed, but that there are now no deadlines in place of the recently missed deadlines.  To be sure, the United States' Report

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 22, 2011
Page 2

does offer certain target dates for producing some documents. But for many other categories of documents it specifies no production dates at all.[1]  The Report ends with United States' pledge to work "as quickly as practicably" to meet its discovery obligations. (Report at 24.) Recent correspondence from the United States further discusses these timing issues — but once again without offering a deadline for completing the United States' document production. (Enclosure 1 at 5-6.)

For reasons set forth below, BP respectfully requests that, in view of the ambiguity of the United States' commitments to new production deadlines, the Court should remedy the situation by directing the United States to complete by October 15 the tasks it originally agreed to complete by August 15 and 31.

## A.    The United States Agreed To Produce Source Control and Quantification Documents By No Later Than August 31.

The United States initially agreed that that it would produce documents related to source control and quantification — along with corresponding, court-mandated, electronically stored information — by August 15 and August 31, respectively, depending on whether the individual document came from a non-Coast Guard repository or a Coast Guard repository.

This understanding was set forth in my June 3, 2011 e-mail to the United States:

Based on recent email exchanges and yesterday's telephone conversation, we set out below our understanding of the agreed deadlines to apply to BP's three sets of discovery to the United States. . . . [I]t is very important to BP that document productions proceed on a "rolling" basis in advance of the August 1, 15, and 31 final deadlines reflected below, as we have discussed.

I also note for the record your statement that the August 31 USCG document production deadline may in the United States's view have to be adjusted based on progress in organizing and sorting through the Mandeville Louisiana archive.

---

[1]    As some relevant examples, the Report states the United States plans to have collected outstanding BOEMRE paper documents by October 1, 2011, but that it "cannot reliably provide an estimated completion date." (Report at 8.) The United States estimates it will not complete collecting documents from EPA until November 15, 2011. The report does not state when these documents will be produced. (Report at 16-17.) With respect to the Coast Guard documents, the United States still "is not yet in a position to provide the parties or this Court with a reliable estimate of time required to complete production of responsive documents." (Report at 12.)

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 22, 2011
Page 3

...

**Event**

June 20, 2011 — Complete responses to interrogatories and RFAs related to the
"Event"

August 1, 2011 — Complete document production related to the "Event"

**Source Control and Quantification**

August 1, 2011 — Responses to interrogatories and RFAs related to Source
Control and Quantification

August 15, 2011 — Complete document production related to Source Control and
Quantification, with the exception of documents in the custody of the United
States Coast Guard

August 31, 2011 — Complete document production from the United States Coast
Guard related to Source Control and Quantification

(Enclosure 2.)

The United States responded on June 3: "With the understanding that the United States
may need to revisit these deadlines as the volume of responsive documents becomes clearer and
the fact that, like BP, we may have supplemental productions after the specified dates, the United
States will make every reasonable effort to meet the deadlines discussed below.  We thank you
for your consideration on this matter."  *Id.*

> **B.      The United States Encouraged Further Search Criteria and Agreed
> That Those Further Search Criteria Would Not Change the Deadlines
> for Producing Documents Responsive to Pre-Existing Search Criteria.**

The United States' Report suggests the difficulties encountered by the United States in
meeting its August 15 and August 31 production deadlines are attributable in part to the timing
of certain proposals for new search criteria put forward by Anadarko and BP.  Respectfully, it
was in fact the United States, more than BP, that pressed to reopen the search criteria discussion.
(*See* Enclosure 3.)

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 22, 2011
Page 4

     More importantly, as Enclosure 3 details, the United States and BP agreed that the addition of new Phase II search criteria would have no bearing on the August deadlines for production of documents responsive to the Phase II search criteria to which the United States had already agreed by July 19, 2011. Hence, when BP submitted additional search criteria after July 19, those new criteria were not supposed to affect in any way the completion of previously agreed-upon United States' productions. BP's post-July 19 search criteria proposals thus had no bearing on the United States' ability to meet its August 15 and 31 deadlines.

### C.    Comparisons Between the United States' Document Production And The Productions Of Others Are Not Necessarily Meaningful.

     The United States Report tries to frame the size of United States' document production obligations by comparing the magnitude of those obligations to the magnitude of other parties' obligations — particularly as to the volume of documents produced. (*See* Report at 24; Hr'g Tr.[2] 23:14-23 at Enclosure 4.)

     Respectfully, these comparisons must be placed in context. To some extensive degree, the United States is not reviewing the documents that it is producing before they go out the door. (Hr'g Tr. 20:10-14.) Rather, the United States applies search terms and then produces many, if not all,[3] of the non-privileged documents electronically identified, without reviewing the documents for responsiveness.[4] As a result, BP and other parties are forced to sift through such

---

[2]    The final transcript of the September 9, 2011 status conference is referenced as "Hr'g Tr.," and the relevant pages are included for reference at Enclosure 4.

[3]    The United States has indicated that, depending on the agency and whether the document is a video or a picture, it manually reviews some documents. The United States may also automatically weed out certain documents having certain file formats.

[4]    The United States has produced over 200,000 documents that BP previously produced to the U.S. Additionally, it appears that the United States has reproduced a large number of documents it may have obtained from a Cameron production. Examples of these reproduced documents include, but are not limited to, those identified in Attachment A to BP's September 5, 2011 letter (Enclosure 5). The prefixes on all of these approximately 200,000 government-reproduced documents ("OSE") indicates that they originated from the files of the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling. In response, the United States claims BP requested such a production in its RFP 58 ("All documents constituting, referring, or relating to any working papers or reports created by the National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling or its staff.") (Enclosure 1 at 4.) It appears the Parties' have a good faith disagreement about what constitutes a working paper *created by* the Commission and documents related to those specific efforts. The Parties will continue to confer regarding the meaning of each other's document requests in the hope of avoiding further miscommunications.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 22, 2011
Page 5

irrelevant documents as (1) over 252,992 java script class files and system files, which are generally associated with applications and do not contain user-edited content; (2) close to 150,000 non-viewable TIFF files produced as natives; (3) almost 24,000 native files that lack an extension; and (4) multiple video and other files that are wholly irrelevant.[5]  (See Enclosures 1 and 5 for prior communications between BP and the United States on these technical issues.)

To be sure, not all documents produced by BP itself have been relevant.  BP's own reviews for relevance have undoubtedly been subject to human error.  But the share of irrelevant materials produced by BP, we believe, may well be significantly less than the share of irrelevant materials produced by the United States.  Our point is just that BP devotes substantial resources to ensuring human review of the vast majority of its production documents before they go out the door.  To the extent the United States fails to perform such review, it effectively shifts much of the review-for-relevance burden to other parties, and, moreover, this additional review burden is then made all the heavier by the fact the United States has not provided metadata as required by PTO 16 (as described in Part II below).

###     D.     The Court Should Establish An October 15, 2011 Deadline for the United States' Production of Documents Responsive to Search Terms Agreed to by the United States as of July 19, 2011.

Even when properly framed, BP understands that the United States, like BP, is putting forward substantial discovery efforts.  BP also understands that the United Stated has been unable to meet its discovery deadlines, in part because the United States has had to deal with "a forest fire that shut down one facility, a cyber attack that shut down another facility, an earthquake, and a hurricane, and then torrential rains." (Hr'g Tr. 19:12-17.)

But those events are now past.  BP is concerned more about the future; specifically, we are concerned that the United States has not specified any overall completion date for the production of documents that were originally to be produced as of August 31.  The United States cites the sums of money some government agencies are expending in responding to discovery requests as well as other challenges the United States has confronted, including the amount of potentially responsive documents, lack of manpower, difficulty converting file formats, and "historically ... very limited search and collection tools." (Report at 8, 11, 16.)  But BP too —

---

[5]   Some examples include: (1) the video produced at IMS053-002663 depicting a fight being watched by spectators, (2) the video produced at IMS170-005137 depicting Ed Montana's "Obamanation" music video, (3) the video produced at IMS247-005516 depicting a video "remix," (4) the video produced at IMS170-010291 depicting a cat frolicking and then being thrown, and (5) the video produced at IMS060-012957 depicting a recorded segment from a hidden camera.  (Enclosure 5 at 3-4.)

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 22, 2011
Page 6

as a defendant responding to the United States' claims — also has incurred large discovery expenses.

Moreover, under the Federal Rules of Civil Procedure, the Government has the same obligation to produce documents as does BP and all other MDL 2179 litigants.  As the Fifth Circuit has held:

> All parties are expected to conform their conduct to these rules ... this is even more true for the federal government, a party that regularly appears before the federal courts, knows the rules by which they operate, and is even at times a special beneficiary of those rules.... [T]hese [budgetary] conditions do not and cannot justify policies that are predicated upon a disregard of the power of federal courts and the rights of opposing parties, both of which are embodied in the federal rules, the local rules, and court orders. *Bradley v. United States*, 866 F.2d 120, 126-27 (5th Cir. 1989).

Against this backdrop, a new Court-specified production deadline is appropriate.

### E.      This October 15, 2011 Deadline Should Apply to Documents from the Executive Office of the President.

A final issue, which we addressed at greater length in our letter to the Court of September 8, 2011, is the Court-ordered production of "communications concerning source control and quantification between agencies and the EOP." (Doc. #3377.)  The United States' Report states that there are "significant communications between the federal agencies and the [EOP]." (Report at 22.)

At the September 9 status conference, after a colloquy with the Court, the United States said it thought it would begin rolling productions of these emails in the next two weeks. (Hr'g Tr. 26:4-5.)  Some of these documents have now been produced, and the parties continue to confer regarding this issue. (*See* Enclosure 1 at 5.)  Here again, however, the United States has not provided an estimate for when this production will be complete.  BP respectfully requests that the Court order that the production of documents from the EOP — as well as the other documents referenced in this letter — be completed by October 15.

*        *        *        *

To summarize, BP respectfully urges that the Court order the United States to produce by October 15 the documents it originally agreed to produce by August 15 or 31.  The timing of the

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 22, 2011
Page 7

United States' productions inevitably affects the overall progress of this litigation. For example, the motion to compel deadline between BP and the United States is October 15, 2011, but many of the United States' new production and privilege review target dates now fall well after October 15. The October 15 deadline will thus need to be adjusted, and other Phase 2 milestones may need to be adjusted as well.

Accordingly, *with respect to documents responsive to the search terms that the United States had agreed to as of July 19, 2011*, BP requests that the Court order the United States to complete, by October 15, 2011, its entire document production related to the Event, Source Control, and Quantification. BP would further ask that the Court direct that this October 15, 2011 deadline apply to email communications back-and-forth between federal agencies and the Executive Office of the President.

## II.     TECHNICAL PROBLEMS APPEAR IN THE UNITED STATES' PRODUCTIONS.

BP is concerned about the technical production issues discussed in BP's September 5, 2011 letter to the US. (Enclosure 5.) These include missing or incorrectly formatted PTO-required metadata; the reproduction of documents produced by BP and other parties in MDL 2179; and non-viewable files, system files, and unknown native files.

BP raised these technical issues on the record during the September 9, 2011 status conference, and the United States stated that it would "be able to advise [BP] early next week that [it] figured out the cause of the issues ...." (Hr'g Tr. 28:19-22.) The United States has not yet figured out the causes of all of these issues. Nonetheless, since the September 9 status conference, the parties have discussed, and continue to discuss, the issues. BP has received more information from the United States this week, and although it does not fully agree with the United States' various technical assessments, it will continue working proactively with the United States. (*See* Enclosure 1.) At this point, however, BP believes the most efficient solution, as we stated at the September 9, 2011 status conference (Hr'g Tr. 28:6-13, 28:25-29:10), would be for technical specialists from both parties immediately to meet and begin to tackle these technical issues.

### A.     The United States' Document Productions Lack Court-Ordered Metadata Or Are Incorrectly Formatted.

By way of background, PTO 16, as well as the plain language of Federal Rule 34, requires that the United States produce all ESI with metadata for those documents maintained electronically. *See* PTO 16, ¶ 2 & Ex. 1 (requiring production of metadata). *See also Chevron*

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 22, 2011
Page 8

*Corp. v. Stratus Consulting, Inc.*, No. 10-00047, 2010 WL 3489922, at *4 (D. Colo. Aug. 31, 2010) (ordering production of meta data finding "production of documents without metadata intact … make[s] it more difficult for Petitioner to use the information efficiently).

Aware of these requirements, BP informed the United States on July 28, 2011, that each of its production load files was missing a number of key, required metadata fields, including but not limited to APPLICAT, PRPTIES, HASH, SUBJECT and FAMILY RANGE. (Enclosure 6 at 1.) In an August 2, 2011 email, the US "agree[d] that in some cases [the U.S.] did not include all of the available data (*i.e.*, hash values for the electronic records) and in other cases [the U.S.] produced data that was not formatted as outlined in the PTO." The US also said, "To correct these errors we will go back through each of our 19 deliveries to date and make the appropriate adjustments to the original load file, then send out a replacement file as needed…. [I]n some cases the data is not included because there was no information provided for those fields." (Enclosure 7.)

On August 17, 2011, the United States produced "enhanced load files" for eight of the 19 production volumes for which missing and incorrectly formatted metadata previously had been produced. As of this week, BP has still not received any corrected load files for the first 11 Government production volumes. Additionally, it appears that even in the "enhanced load files," as well as in the load files transmitted to BP as part of subsequent productions, important metadata fields still are not populated or are incorrectly formatted. This is particularly the case for emails.

For example, of the 170,463 documents[6] which the provided metadata fields indicate are emails, only 52% of those documents contain any populated sender information, and very few emails contain any family range information (.54% contain PARENTID information, 5.17% contain ATTACHID information, and .38% contain any FAMLYRNG information). (See Enclosures 1 and 5 for prior communications between BP and the United States on these technical issues.) Moreover, even among the comparatively small subset of documents that do contain family range metadata, the family information makes no sense at all in some instances —

---

[6]     At this time, BP is still investigating the fact that, based on its analysis of metadata and other factors, the production contains only 170,463 emails in a production that now consists of well over 2.6 million documents. Specifically, the analysis contained within this letter is preliminary and covers the 2,662,974 documents comprising 17,152,154 pages produced by the U.S. government through GOV045.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 22, 2011
Page 9

such as one document's metadata identifying it as part of a document family consisting of approximately 28,000 members.[7]

In other instances the United States' production documents have come accompanied by incomplete family metadata. For example, the TIFF image of the email produced at Bates N1A001-000570 identifies on its face six attachments, but the available family metadata identifies only two US-produced documents as attachments to this email. Specifically, the family metadata for the six sequentially Bates-stamped documents that follow the email indicate that only the last two of these six documents constitute attachments to the email (Beg Bates N1A001-000578 and 000580), but the four documents in-between (Beg Bates N1A001-000571, 000575, 000576, 000577) are not identified as attachments.

In still other instances, TIFF images of emails produced by the United States indicate one or more attachments, yet the emails lack family metadata identifying which production documents, if any, constitute those attachments.[8] Even a document-by-document review of such emails cannot pinpoint their attachments because apparently the documents following these TIFF image emails do not constitute the emails' attachments. Without the required family metadata, BP can never know for sure which documents are the attachments to these emails, or if those attachments have been produced at all. BP should not have to guess as to answers that required metadata is supposed to provide.

## B.    These Technical Defects Hamper Parties' Ability to Review the Productions.

The production of certain metadata, including with respect to emails, is not only mandated by PTO 16, but is also essential for orderly document review. Accordingly, the near complete lack of family metadata produced by the U.S. government, as well as the lack of other

---

[7]    *See*  DEO014-001639;DEO076-000001-DEO122-117292  (family of 28,738 documents) and DEO017-002340;DEO072-000001-DEO074-089500 (family of 11,554 documents).

[8]    *See, e.g.,* documents with beginning Bates stamps: IMS169-030787, IMS169-031661, IMS169-032125, IMS169-032129, IMS169-032131, IMS169-033132, IMS169-034376, OSE001-001867 , OSE014-001063 , OSE014-001150 , OSE014-001780 , OSE014-002585 , OSE014-002933 , OSE014-002950 , OSE014-003060 , OSE030-000688, OSE030-000975, OSE030-000988, OSE030-000995, OSE030-001108, OSE030-001294, OSE030-001569, OSE030-001588, OSE030-001607, OSE030-001627, OSE030-001658, OSE030-001689, OSE030-001776, OSE030-001778, OSE030-001847, OSE030-001859, OSE030-002141, OSE030-002145, OSE030-002206, OSE030-002213, OSE030-002232, OSE030-002795, OSE030-003553, OSE030-003561, OSE030-003566, OSE050-002419, OSE050-002495, OSE050-003029, OSE050-004119, OSE050-004924, OSE050-005260, OSE204-007761, OSE204-007939, OSE204-007976, OSE204-008496.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 22, 2011
Page 10

required metadata (*e.g.*, TO and FROM fields), hampers BP's and other parties' ability to effectively and efficiently review the U.S. productions. For example, because required metadata is missing from the US productions:

- BP, while reviewing documents, cannot easily propagate or carry-over the coding from one document to the rest of the family, for example, from the email to its attachments or from one attachment to others.

- In instances where a document is identified as significant, BP is forced by the missing information regarding family relationships to manually inspect the preceding and following documents to determine whether one or the other constitutes those attachments. For example, before using a potentially significant production document, BP would need to review surrounding documents in an attempt to ensure that the identified document is not missing other related documents in light of the fact that, in the absence of metadata, BP cannot identify which documents are and are not attachments to particular emails.

- BP is thus often forced to review documents in linear fashion, one after the next, in hopes that the US production documents have been produced much like hard copy documents were produced back in olden times, with attachments immediately following related emails.

In light of the number of documents the US expects to produce in coming weeks (as detailed in the Report), BP respectfully submits that now is a good time to address these issues. BP stands ready to hold a meet and confer immediately between a knowledgeable government e-discovery expert/technician and a corresponding e-discovery expert/technician for BP to determine whether these are data issues or process/quality control issues and, importantly, how best to resolve them. Although the United States thinks this schedule may be ambitious, BP hopes such a meeting can be immediately arranged. Once the parties have begun to discuss these issues, BP would be pleased to involve your Honor as appropriate.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 22, 2011
Page 11

### CONCLUSION

BP has taken to heart the Court's admonitions that parties should work through discovery disputes, and BP has attempted to do that with respect to the United States' document productions. BP does not doubt that the United States' litigation team has devoted substantial resources to its document production. That is appreciated and appropriate in a case such as this one. But it has now become clear that a Court-imposed October 15 production deadline, and Court involvement as described above, could both be very helpful in making sure these important productions stay on track.

Respectfully submitted,

Robert R. Gasaway

Enclosures

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
September 22, 2011
Page 12


cc (via electronic mail):

R. Michael Underhill
Steven O'Rourke
Sarah Himmelhoch
Allison B. Rumsey
J. Andrew Langan, P.C.
Mark J. Nomellini
Stuart A.C. Drake
Joel M. Gross
Don K. Haycraft
Defense Liaison Counsel
Plaintiffs' Liaison Counsel
Hon. Luther Strange
Corey L. Maze
Joseph A. Eisert

# Attachment 8

# Agreed-Upon Custodians Without A Custodial  Production

| Name | Agency | Branch | Office |
|---|---|---|---|
| Aines, Roger | DOE | NNSA | LLNL |
| Allen, Harry | EPA | | |
| Andrews, David | EPA | | |
| Andy, Adora | EPA | | |
| Angelo, James W. | DOE | NNSA | LANL |
| Armijo, Steven V. | DOE | NNSA | LANL |
| Art, Blair M. | DOE | NNSA | LANL |
| Ates, Harun | | | Kelkar & Associates |
| Aubrey, Joysree B. | DOE | NNSA | LANL |
| Bahar, Asnul | | | Kelkar & Associates |
| Ball, Stephen | EPA | Region 4 | |
| Balzner, Stephen J. | DOE | NNSA | LANL |
| Barbier, Charlotte | DOE | Office of Sci | ORNL |
| Barras, John | DOD | ACOE | ERDC |
| Benner, John C. | DOE | NNSA | LANL |
| Bishop, Alan | DOE | NNSA | LANL |
| Blanchard, Jeremy | DOE | Office of Sci | PNNL |
| Bontha, Jagan | DOE | Office of Sci | PNNL |
| Borries, Sam | EPA | Region 5 | |
| Bossert, James E. | DOE | NNSA | LANL |
| Boudrie, Richard L. | DOE | NNSA | LANL |
| Briggs, Matthew E. | DOE | NNSA | LANL |
| Brock, Jerry S. | DOE | NNSA | LANL |
| Buerki, Karen | EPA | Region 4 | |
| Burgess, Christopher | EPA | HQ | |
| Busheck, Thomas | DOE | NNSA | LLNL |
| Caballero, Richard A. | DOE | NNSA | LANL |
| Cantwell, James C. | DOE | NNSA | LANL |
| Canzler, Erica | EPA | HQ | |
| Chadwick, Mark B. | DOE | NNSA | LANL |
| Cieslak, Wendy R. | DOE | NNSA | LANL |
| Clark, Josie | EPA | Region 10 | |
| Cohen-Hopkins, Kawana | EPA | HQ | |
| Costigan, Stephen A. | DOE | NNSA | LANL |
| Cuellar-Hengartner, Leticia | DOE | NNSA | LANL |
| Dare, Jeffrey H. | DOE | NNSA | LANL |
| Dasari, Venkateswara Rao | DOE | NNSA | LANL |
| Davico, Gustavo | DOD | ACOE | ERDC |
| Davidson, John Wiley | DOE | NNSA | LANL |
| DeAngelis, Gregory | EPA | | |
| Dixon, Warren | EPA | | |
| Efferson, Mike | DOC | NOAA | NWS |
| Eisele, Shawna L. | DOE | NNSA | LANL |
| Enderlin, Carl | DOE | Office of Sci | PNNL |
| Escapule, Rusty | DOE | NNSA | SNL |
| Fagan, Matthew J. | DOE | NNSA | LANL |
| Finsterle, Stefan | DOE | Office of Sci | LBNL |
| Ford, Richard Alyn | DOE | NNSA | LANL |
| Fort, James | DOE | NNSA | PNNL |
| Frefield, Barry | DOE | Office of Sci | LBNL |
| Fulton, Robert D. | DOE | NNSA | LANL |

# Agreed-Upon Custodians Without A Custodial  Production

| Name | Agency | Branch | Office |
|------|--------|--------|--------|
| Gardner, David L. | DOE | NNSA | LANL |
| Garrard, Jordan | EPA | Region 4 | |
| Gaughan, Perry | EPA | Region 4 | |
| Gauglitz, Philip | DOE | Office of Sci | PNNL |
| Gilleland, Ida | EPA | Region 6 | |
| Goodman, Dawn A. | DOE | NNSA | LANL |
| Gottesman, Larry | EPA | HQ | |
| Greenwood, Susan | DOD | ACOE | CECC-G |
| Heinzerling, Lisa | EPA | | |
| Hetrick, David M. | DOE | Office of Sci | ORNL |
| Hill, Franklin | EPA | Region 4 | |
| Holz, Theresa | EPA | Region 5 | |
| Homer, David | EPA | | |
| Horn, Tom | DOC | NOAA | NMFS/NWFSC |
| Hudson, Scott | EPA | CINC | |
| Hughes, R.G. | FRTG | | RG Hughes & Assoc. |
| Hundley, Michael F. | DOE | NNSA | LANL |
| Hurtle, Kenneth P. | DOE | NNSA | LANL |
| Jones, Kathy | EPA | HQ | |
| Katz, Jonathan | SA | | SA |
| Kelley, Karen Corzine | DOE | NNSA | LANL |
| Kiene, William | DOC | NOAA | NOS/ONMS |
| Kilgore, Jack | DOD | ACOE | ERDC |
| Knapp, Bret E. | DOE | NNSA | LANL |
| Kovak, Brian | EPA | Region 2 | |
| Lansing, Michael A. | DOE | NNSA | LANL |
| Lasheras, Juan | FRTG | UC SD | FRTG |
| Leach, Sarah | DOD | ACOE | ERDC |
| Leibman, Christopher P. | DOE | NNSA | LANL |
| Lins, Lawrence | EPA | Region 5 | |
| Lopez, Aaron A. | DOE | NNSA | LANL |
| Mahoney, Lenna | DOE | Office of Sci | PNNL |
| Martinez, Amanda M. | DOE | NNSA | LANL |
| Martz, Roger L. | DOE | NNSA | LANL |
| Matzke, James L. | DOE | NNSA | LANL |
| Maupin, Ryan D. | DOE | NNSA | LANL |
| McDermon, John C. | DOE | NNSA | LANL |
| McGuire, Jim | EPA | Region 4 | |
| McIntosh, David | EPA | Region 6 | |
| Meyer, P.A. | DOE | Office of Sci | PNNL |
| Mielke, Angela M. | DOE | NNSA | LANL |
| Miller, Kevin | EPA | HQ | |
| Moridis, George | DOE | NNSA | LBNL |
| Nalipinski, Mike | EPA | Region 1 | |
| Neu, Mary P. | DOE | NNSA | LANL |
| Nichols, Tonya | EPA | CINC | |
| Onishi, Yasuo | DOE | Office of Sci | PNNL |
| Pan, Lehua | DOE | Office of Sci | LBNL |
| Pannala, Sreekanth | DOE | Office of Sci | ORNL |
| Pelowitz, Denise B. | DOE | NNSA | LANL |
| Pfund, David | DOE | Office of Sci | PNNL |

# Agreed-Upon Custodians Without A Custodial Production

| Name | Agency | Branch | Office |
|---|---|---|---|
| Pilch, Marty | DOE | NNSA | SNL |
| Rasmussen, Richard | DOE | NNSA | LANL |
| Reagan, Matthew T. | DOE | Office of Sci | LBNL |
| Rector, David | DOE | Office of Sci | PNNL |
| Regan, Amy H. | DOE | NNSA | LANL |
| Rhame, Kenneth | EPA | Region 4 | |
| Ricks, Robert | DOC | NOAA | NWS/SR |
| Russell, Chris | EPA | | |
| Sams, Neal | DOE | OFE | NETL |
| Schraad, Mark W. | DOE | NNSA | LANL |
| Scott, Kathey | DOC | NOAA | NOS |
| Seestrom, Susan J. | DOE | NNSA | LANL |
| Selle, Tony | EPA | Region 8 | |
| Shahin, Bea | DOD | ACOE | ERDC |
| Simpson, William M. | DOE | NNSA | LANL |
| Sinah, Dipen N. | DOE | NNSA | LANL |
| Sood, Avneet | DOE | NNSA | LANL |
| Stanford, Anthony R. | DOE | NNSA | LANL |
| Stark, Peter C. | DOE | NNSA | LANL |
| Stearns, John H. | DOE | NNSA | LANL |
| Stewart, Mark | DOE | Office of Sci | PNNL |
| Stulen, Rick | DOE | NNSA | SNL |
| Summa, Deborah A. | DOE | NNSA | LANL |
| Taylor, Antoinette | DOE | NNSA | LANL |
| Taylor, Tammy P. | DOE | NNSA | LANL |
| Tieszen, Sheldon | DOE | NNSA | SNL |
| Turek, James | DOC | NOAA | NMFS/OHC |
| Turner, Kevin | EPA | Region 5 | |
| Umlauf, Gretchen | DOC | NOAA | NMFS/SWR |
| Vansyoc, Kelley G. | DOE | NNSA | LANL |
| Vilijoen, Milena | DOC | NOAA | NMFS/OHC |
| Villa, Catherine | EPA | Region 10 | |
| Walden, Ted | EPA | Region 4 | |
| Wallace, Terry C. | DOE | NNSA | LANL |
| Wells, Beric | DOE | Office of Sci | PNNL |
| Whelan, Ann | EPA | Region 5 | |
| Wittkamp, Carol | DOD | ACOE | MVN |
| Wolfe, Stephen | EPA | Region 5 | |
| Yarbro, Stephen L. | DOE | NNSA | LANL |
| Young, Cathy | EPA | Region 1 | |
| Zollinger, Michael S. | DOE | NNSA | LANL |
| Zumbro, Martha V. | DOE | NNSA | LANL |

# Attachment 9

**ATTACHMENT 9:  CUSTODIAL PRODUCTIONS THAT ARE LIKELY INCOMPLETE**

To date, the United States has only produced 11 documents for **Dr. Mohan Kelkar**, and 91 for **Dr. Mahendra Verma**, both of whom were members of the FRTG Reservoir Modeling Team and whose work is central to understanding the bases for the flow rates provided in Appendix E of the FRTG Report.  The number of documents produced for Drs. Kelkar and Verma seem improbably low when one compares these scant productions to, for example, the thousands of documents collected from the FRTG Modeling Team's BOEMRE representatives, Don Maclay, Gerald Crawford, and David Absher.  Indeed, one would expect Dr. Verma, the Reservoir Modeling Team's USGS representative and advisor to the team in the area of reservoir simulation, would have a significant amount of documents from his review of and advice regarding the various other team members' work.  Likewise, it is almost certain that Dr. Kelkar, the president and founder of Kelkar and Associates, Inc., one of the firms hired to contribute to the FRTG Report, would have more than 11 responsive documents.

Probable deficiencies also appear in the collection of documents from key members of the team assembled by the Sandia National Laboratory.  In particular, deficiencies are quite likely in the collection of documents from **Arthur Ratzel**, **Ron Dykhuizen**, **Tom Hunter**, and **Charlie Morrow**, all of whom are listed as contributors to the report titled "DOE-NNSA Flow Analysis Studies Associated with the Oil Released following the Deepwater Horizon Accident" (the "Ratzel Report"), which calculates a cumulative flow from the well of around 5 million barrels.  *See* Report, at 13.

To date, the United States has only produced 699 documents from Arthur Ratzel, the team lead for this report, which is surprising when one considers that there are over seven thousand documents produced from the custodial file of Steward Griffiths, the author of another report also issued by the Sandia National Laboratory.  Furthermore, the United States has produced less than a thousand total documents from the custodial files of Ron Dykuizen (334 total documents), Tom Hunter (10 total documents), and Charlie Morrow (634 total documents), all of whom are listed as contributors to the Ratzel Report.

Tom Hunter has also been identified by the United States as one of Secretary Chu's Science Advisors.  (US's Initial Response to BPXP First Set of Discovery Requests, at 13 (May 19, 2011.)  It is improbable that, during his important service as a Science Advisor to Secretary Chu, Dr. Hunter accumulated only 10 non-privileged documents responsive to the agreed search terms.

# Attachment 10

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:                                    (202) 879-5000                                    Facsimile:
(202) 879-5175                                                                                                      (202) 879-5200
robert.gasaway@kirkland.com                          www.kirkland.com

March 7, 2012

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Room B345
500 Poydras Street
New Orleans, LA 70130

           Re:     United States' Privilege Logs

Dear Judge Shushan:

On Friday, March 2, you asked BP to provide a suggested timeline for the Court's and parties' review of the entries on the United States' voluminous privilege logs. This letter proposes a framework and a timeline for any challenges any party might wish bring to these numerous claims of privilege. In addition, this letter also identifies some of what BP has thus far learned from reviewing the United States' privilege logs, including the United States' extensive invocation of the deliberative process privilege, which constitutes the vast majority of the overall number of privilege claims.

### Background

Preliminarily, we would like to remind the Court and parties that BP previously stated that it was not challenging United States' logs 1-11. (Hr'g Tr. at 19:19 - 20:13 (Jan. 13, 2012).) This leaves the United States' logs 12-38 (as of today) as the focus of any potential challenges (at least potential challenges by BP).

Two factors, however, somewhat complicate this situation. *First*, on November 27, 2011, the United States stated by email that it would serve revised versions of logs 7-10, but it has not yet done so. BP therefore reserves its rights if the United States were to serve revised versions of these logs in the future.

*Second*, BP has no record that the United States served logs 23, 34, and 35. BP recently requested that the United States send (or resend) these logs, but we have not yet received the logs. Accordingly, we note that the schedule we propose below assumes that BP and the other MDL parties receive these missing privilege logs by this Friday, March 9, 2012. (If BP and the

Chicago      Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai

# KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
March 7, 2012
Page 2

other parties do not receive them by that date, we may need to alter the proposed schedule below to accommodate the review of these late-arriving privilege logs.)

Next, some numerical metrics may be helpful in framing this scheduling discussion. The 24 relevant privilege logs that have been sent to BP (Logs 12-22, 24-33, 36-38) contain by our count approximately 92,552 entries. Of this total, approximately 81,854 entries (or 88 percent) withhold documents *exclusively* under a claim of deliberative process privilege. The chart below illustrates the number of total privilege claims by the United States. (Note that, because one document may be withheld under more than one claim of privilege, the numbers below do not sum to the total number (92,552) of overall entries.)

| Attorney-Client/ Work Product | Law Enforcement | 46 U.S.C. § 6308 | Deliberative Process | Other |
|:---:|:---:|:---:|:---:|:---:|
| 11,015 | 191 | 1,419 | 83,681 | 52 |

### A.    Managing Challenges to Assertions of the Deliberative Process Privilege

BP respects the United States' legitimate invocation of the deliberative process privilege. But the fundamental question is whether the United States is properly invoking this privilege. This question is critical, because as the figures above make clear, claims of this privilege form the vast majority of the United States' overall privilege assertions.

To be sure, the Fifth Circuit and many other circuits lack a well developed body of deliberative process privilege caselaw. This is because litigation involving this privilege typically involves challenges to federal agency action being litigated (often as not) in the D.C. Circuit. The Fifth Circuit has therefore recognized the D.C. Circuit as the "federal appellate court with the most experience in this field" and approvingly cited D.C. Circuit caselaw. *Cooper Cameron Corp. v. U.S. Dept. of Labor, Occupational Safety & Health Admin.*, 280 F.3d 539, 543 (5th Cir. 2002).

The deliberative process privilege traces its roots to common-law origins, and it is incorporated within the Freedom of Information Act's exceptions to disclosure of governmental information, 5 U.S.C. § 552(b)(5). *See Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Courts often cite these plentiful FOIA cases in litigation contexts where the privilege has been asserted. *See, e.g., Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 882 n.9 (5th Cir. 1981). Compared to the robust privilege covering presidential communications, the deliberative process privilege — not surprisingly — is weaker and subject

## KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
March 7, 2012
Page 3

to a more flexible balancing test.  *See In re Sealed Case*, 121 F.3d 729, 737-38, 746 (D.C. Cir. 1997).

The government may claim this qualified privilege only for certain materials that are both predecisional and deliberative.  *See N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975).  "A document is predecisional if it precedes, in temporal sequence, the decision to which it relates.  Accordingly, to approve exemption of a document as predecisional, a court must be able to pinpoint an agency decision or policy to which the document contributed."  *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) (internal quotation marks and citations omitted).

To qualify as deliberative, a document must be "a direct part of the deliberative process in that it *makes recommendations* or *expresses opinion on legal or policy matters*."  *Vaughn v. Rosen,* 523 F.2d 1136, 1146 (D.C.Cir. 1975) (emphasis added).  In other words, the document must be "part of the agency give-and-take … by which the decision itself is made.  The agency must establish what deliberative process is involved and the role played by the documents in issue in the course of that process."  *Com. of Puerto Rico*, 823 F.2d at 585.

The qualified deliberative process privilege does not encompass post-decisional material that merely states, explains, or comments on governmental decisions already made.  *Sears Roebuck*, 421 U.S. at 151 ("[I]t is difficult to see how the quality of a decision will be affected by communications with respect to the decision occurring after the decision is finally reached.").  Nor does it extend to (1) facts contained within predecisional deliberations or (2) materials the agency has incorporated, formally or informally, into its eventual decision.  *Branch*, 638 F.2d at 882; *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Perhaps most important for present purposes, courts also have adopted the common sense position that the privilege does not apply, or should be severely restricted, in cases where the government is a party to the litigation, and its motives are at issue.  *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 145 F.3d 1422, 1424 *on reh'g in part*, 156 F.3d 1279 (D.C. Cir. 1998); *United States v. Ernstoff*, 183 F.R.D. 148, 153 (D.N.J. 1998); *E.E.O.C. v. Citizens Bank*, 117 F.R.D. 366, 366 (D. Md. 1987) ("[W]hen the Government seeks affirmative relief, it is fundamentally unfair to allow it to evade discovery of materials that a private plaintiff would have to turn over.")

Finally, it is important to recognize as a procedural matter that the United States' current privilege logs do not properly assert the deliberative process privilege.  To properly assert the privilege, the government must submit a declaration (signed by the relevant department head or a suitable delegee) stating that the declarant has personally inspected the withheld documents and

# KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
March 7, 2012
Page 4

explaining why those documents fall within the scope of the privilege. *See Landry v. F.D.I.C.*, 204 F.3d 1125, 1135 (D.C. Cir. 2000); *accord Branch*, 638 F.2d at 882.

As the Fifth Circuit has noted, "The purpose of this procedural requirement is to insure that subordinate officials do not lightly or mistakenly invoke the government's privilege in circumstances not warranting its application." *Branch*, 638 F.2d at 882; *see also Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, 267 F.R.D. 1, 4 (D.D.C. 2010) ("A common practice of agencies seeking to invoke the deliberative process privilege is to establish the privilege through a combination of privilege logs, which identify specific documents, and declarations from agency officials explaining what the documents are and how they relate to the [agency] decision." (internal quotation marks omitted)).

## B. Assertions of the Law Enforcement Privilege

The United States, likewise, is the sole party that may invoke the law enforcement privilege. Like the deliberative process privilege, however, the law enforcement privilege requires formal invocations through submission of agency declarations in the manner described above. *See In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988). Until the United States provides declarations supporting its assertions of the law enforcement privilege, those claims too have not been perfected.

## C. Proposed Schedule for Challenging the United States' Privilege Logs

Against the above backdrop, and given the significant efforts currently being expended by the United States in producing documents, BP respectfully proposes the following framework and timing for the Court's review and consideration of any challenges to the United States' claims of privilege.

Specifically, BP proposes the following schedule for presenting challenges, if any, to the government's claims on privileges asserted on Logs 12-38 (provided logs 23, 34, and 35 are received by Friday March 9).

- On or before April 6, 2012, BP will bring challenges (if any) to entries on the above privilege logs asserting attorney-client privilege ("AC") or the work product doctrine ("WP").

- Sixty days after receiving the United States' declaration(s) supporting its claims of deliberative process privilege, BP will bring challenges (if any) to the claims each respective declaration supports.

# KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
March 7, 2012
Page 5

- Similarly, thirty days after receiving the United States' declaration(s) supporting its claims of law enforcement privilege, BP will bring challenges (if any) to the claims each respective declaration supports.

- On or before April 13, 2012, BP will bring challenges (if any) to entries on the above privilege logs that fall in the categories of privileges other than those specifically listed above; namely, the "work product" (WP) "attorney client" (AC) "law enforcement (LE) and/or "deliberative process"(DP) privileges.  (This category would include, for example, the joint investigation privilege, privacy act privilege, plus entries on the United States' logs that are not otherwise designated.)

BP believes this schedule should provide all parties reasonable time for reviewing the United States' claims of privilege that the proposal encompasses.

United States privilege claims not covered by this proposal can be addressed in a similar tiered fashion, and according to an appropriate and agreed-upon timetable, once those claims have ripened.

Sincerely,

Robert R. Gasaway

cc (via electronic mail):

R. Michael Underhill
Steven O'Rourke
Sarah D. Himmelhoch
Robin L. Hanger
A. Nathaniel Chakeres
Joel M. Gross
Allison B. Rumsey
Don K. Haycraft
Plaintiffs' Liaison Counsel
Defense Liaison Counsel