# Attachment 1

## Proposed Time Allocation for One-Day Deposition of BP Fact Witnesses in Phase 2

| Party | Minutes |
|---|---|
| PSC | 190 |
| US | 105 |
| Anadarko | 25 |
| Transocean | 25 |
| States | 20 |
| HAL/CAM | 20 |
| All others | 35 |
| BP | 30 |
| Total: | 450 minutes (7.5 hours) |

**Proposed Time Allocation for Two-Day Deposition of BP Fact Witnesses in Phase 2**

| Party | Minutes |
|---|---|
| PSC | 380 |
| US | 210 |
| Anadarko | 50 |
| Transocean | 50 |
| States | 40 |
| HAL/CAM | 40 |
| All others | 70 |
| BP | 60 |

Total:    900 minutes (15 hours)

**Proposed Time Allocation for One-Day Deposition of US Fact Witnesses in Phase 2**

| Party | Minutes |
|---|---|
| BP | 260 |
| PSC | 55 |
| Anadarko | 25 |
| Transocean | 25 |
| States | 20 |
| HAL/CAM | 20 |
| All others | 20 |
| US | 25 |
| | |
| Total: | 450 minutes (7.5 hours) |

**Proposed Time Allocation for Two-Day Deposition of US Fact Witnesses in Phase 2**

| Party | Minutes |
|---|---|
| BP | 520 |
| PSC | 110 |
| Anadarko | 50 |
| Transocean | 50 |
| States | 40 |
| HAL/CAM | 40 |
| All others | 40 |
| US | 50 |
| | |
| Total: | 900 minutes (15 hours) |

# Attachment 2



**"Himmelhoch, Sarah (ENRD)"**
**<Sarah.Himmelhoch@usdoj.g**
**ov>**

06/03/2011 05:53 PM

To  "Robert Gasaway" <rgasaway@kirkland.com>, "Underhill, Mike (CIV)" <Mike.Underhill@usdoj.gov>, "O'Rourke, Steve (ENRD)" <Steve.O'Rourke@usdoj.gov>

cc  "Alexandra Albright" <aalbright@kirkland.com>, "Andrew Bloomer" <abloomer@kirkland.com>, "Granta Nakayama" <granta.nakayama@kirkland.com>, "Joseph DeSanctis" <jdesanctis@kirkland.com>, "Joseph Eisert" <jeisert@kirkland.com>, "Joel M. Gross" <Joel.Gross@APORTER.COM>, "John Eisenberg" <john.eisenberg@kirkland.com>, <mbrock@cov.com>, <mbrowne@cov.com>, "Mark Nomellini" <mnomellini@kirkland.com>, "Michael Occhuizzo" <MOcchuizzo@kirkland.com>, "Micah Osgood" <mosgood@kirkland.com>, "Matthew Thuesen" <mthuesen@kirkland.com>, "Stuart Drake" <sdrake@kirkland.com>, <tduffy@kirkland.com>, "Yates French" <yfrench@kirkland.com>, "Andrew Langan" <alangan@kirkland.com>, "Allison Rumsey" <Allison.Rumsey@aporter.com>

bcc

Subject  RE: Search Criteria

Rob –

With the understanding that the United States may need to revisit these deadlines as the volume of responsive documents becomes clearer and the fact that, like BP, we may have supplemental productions after the specified dates, the United States will make every reasonable effort to meet the deadlines discussed below.  We thank you for your consideration on this matter.

Sarah D. Himmelhoch
Senior Litigation Counsel for E-Discovery
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
202-514-0180 (phone)

**From:** Robert Gasaway [mailto:rgasaway@kirkland.com]
**Sent:** Friday, June 03, 2011 12:50 PM
**To:** Himmelhoch, Sarah (ENRD); Underhill, Mike (CIV); O'Rourke, Steve (ENRD)
**Cc:** Alexandra Albright; Andrew Bloomer; Granta Nakayama; Joseph DeSanctis; Joseph Eisert; Joel M. Gross; John Eisenberg; mbrock@cov.com; mbrowne@cov.com; Mark Nomellini; Michael Occhuizzo; Micah Osgood; Matthew Thuesen; Stuart Drake; tduffy@kirkland.com; Yates French; Andrew Langan; Allison Rumsey
**Subject:** RE: Search Criteria

Dear Sarah,

Based on recent email exchanges and yesterday's telephone conversation, we set out below our understanding of the agreed deadlines to apply to BP's three sets of discovery to the United States. Naturally, these deadlines assume appropriate production practices, as developed in this MDL and in our discussions, relating to reasonable searches, supplementation of discovery responses, and providing

responses on a "rolling" basis. (For instance, it is very important to BP that document productions proceed on a "rolling" basis in advance of the August 1, 15, and 31 final deadlines reflected below, as we have discussed.)

I also note for the record your statement that the August 31 USCG document production deadline may in the United States's view have to be adjusted based on progress in organizing and sorting through the Mandeville Louisiana archive.

Many thanks,

ROB

Event

June 20, 2011 – Complete responses to interrogatories and RFAs related to the "Event"
August 1, 2011 – Complete document production related to the "Event"


Source Control and Quantification

August 1, 2011 –  Responses to interrogatories and RFAs related to Source Control and Quantification
August 15, 2011 – Complete document production related to Source Control and Quantification, with the exception of documents in the custody of the United States Coast Guard
August 31, 2011 – Complete document production from the United States Coast Guard related to Source Control and Quantification

```
*************************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
*************************************************************
```

# Attachment 3

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C.  20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

February 16, 2012

**By Electronic Mail**

The Honorable Sally Shushan and
    Mr. Michael O'Keefe
United States District Court
Room B345
500 Poydras Street
New Orleans, LA  70130

Re:    MDL No. 2179 — United States' Written Discovery

Dear Judge Shushan:

Following Mike O'Keefe's suggestion at our most recent conference with the Court, this letter provides the Court and parties with an update regarding on-going discussions between the United States and BP regarding written discovery issues.

The letter takes as a starting point Sarah Himmelhoch's letter to all parties of February 9, 2012, which address two issues that bear significantly on the parties' ability to efficiently and effectively conduct 30(b)(6) deposition discovery — the United States' continued production of millions of files lacking user-generated content and the United States' approach to compliance with written discovery deadlines.  *See* Attachment 1, S. Himmelhoch Ltr to Parties (Feb. 9. 2012).

As explained in BP's most recent letter to the United States, the United States' poor-quality productions, including its production of millions of useless documents and millions of others near the commencement of Phase 2 Rule 30(b)(6) depositions, are causing significant prejudice.  *See* Attachment 2, J. Eisert Ltr to S. Himmelhoch (Feb. 6. 2012).

Moreover, the United States continues to miss production deadlines and to avoid providing clear guidance as to when its document productions will be completed.  The date originally negotiated for the completion of all the United States' document productions was August 30, 2011.  *See* Attachment 3.  After that date proved unworkable, BP asked the United States to provide more realistic production dates, and the Court's October 19 Order reflects the dates the United States provided.  *See* Attachment 4.  The Order's purpose was to provide the United States with extra time needed to complete productions in exchange for certainty about the

Chicago      Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
Mr. Michael O'Keefe
February 16, 2012
Page 2

United States' production schedule.  But it is now clear that the United States has failed to meet the dates specified in the October 19 Order, and there is no indication of when it can comply.

The United States' February 9 letter indicates, in effect, that the United States believes it should be allowed to continue in this fashion and that BP should be willing to accommodate the United States to the detriment of BP's own deposition discovery preparations.

Respectfully, BP must disagree.  BP would instead submit that the United States' discovery conduct should not prejudice BP and that BP and the United States should instead agree on Court-determined deadlines and guidelines for the United States' remaining production efforts.

## I.    THE UNITED STATES HAS PRODUCED AT LEAST 2,851,524 FILES WITHOUT ANY USEFUL, USER-GENERATED CONTENT.

The United States regularly cites total production numbers as evidence of its efforts to comply with its document production responsibilities.  *See, e.g.*, Attachment 5, S. Himmelhoch Ltr (Nov. 22, 2011); Attachment 6, S. Himmelhoch Ltr (Jan. 26, 2012), at 2.  But these figures of total documents produced should be placed in proper context.

As of GOV116 (January 17, 2012), the United States has produced approximately 8,704,165 documents.  And of these, approximately 2,851,524 files have no useful, user-generated content.  This number is a conservative tally because we have limited our analysis in the manner described in Appendix A.  We believe that a more comprehensive analysis would yield even higher figures.

The United States' continued production of files containing no useful information is a significant, continuing problem.  Given the disconnect between what we are seeing in the United States' actual productions and the situation described in the United States' February 9 letter, we think it would be helpful, once again, to have our respective technical discovery experts discuss these issues.  We respectfully renew our request that the United States attempt to remove useless files from future productions.  We offer our assistance in helping the United States to achieve this goal.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
Mr. Michael O'Keefe
February 16, 2012
Page 3

## II.   THE UNITED STATES SHOULD AGREE TO AND ABIDE BY COURT-ORDERED DEADLINES.

The United States' violations of the agreed October 19 Order are depriving BP of the ability to prepare effectively for questioning government witnesses about government documents relevant to topics at the heart of the Phase 2 litigation.  Adding to this injury, the United States continues to decline to offer guidance on when its remaining documents (some well past due) will be produced.  With Phase 2's Rule 30(6)(b) depositions looming in the near future, it is important that the MDL parties be given a clear understanding of the timelines for future document productions.

***The United States' Productions***.  The United States' February 9 letter does not clarify the expected timing of its remaining document productions.

For example, the United States "expects to release" 23,000 DOE documents, and DOI and EPA documents past their due date are reported as "pending production."  *See* Attachment 1, at 3.  But the timing of this expected "release" is not reported.

Most importantly, the United States is retreating from the position stated in our Friday, February 3 telephone conference during which it was stated — without qualification — that the United States would be finished producing EOP privilege logs and documents by February 29.  Now the United States says that the completion of the production of these documents by February 29 is "an ambitious goal."  *See* Attachment 1, at 2.

This significant and prejudicial retreat is consistent with a pattern of missed Court deadlines — including extensions of deadlines appearing in the Court's October 19 Order.  According to our tally, the United States has missed the following deadlines without requesting extensions before those breaches occurred:

- **EOP**.  The agreed October 19 scheduling Order required the production of EOP privilege logs and residual documents on or before November 30, 2011.  *See* Attachment 4, Order (Oct. 19, 2011), at 2.  The United States requested and received an extension until January 15, 2011, to produce these materials.  *See* Attachment 5, S. Himmelhoch Ltr (Nov. 22, 2011).  The United States has not requested a further extension, yet its February 9 letter states there are 75,000 more EOP documents to either log or produce.  *See* Attachment 1, at 2.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
Mr. Michael O'Keefe
February 16, 2012
Page 4

- **DOE**.  The agreed Order required the production of DOE (and the National Labs) privilege logs and residual documents on or before November 30, 2011.  *See* Attachment 4, at 2.  The United States requested and received an extension until December 20, 2011, to produce these materials.  *See* Attachment 7, S. Himmelhoch Email to J. Shushan (Nov. 29, 2011) ("With respect to the ACOE and DOE privilege logs, I request an extension of time until December 20, 2011 to complete these logs and production of documents inadvertently withheld as privileged.")  The United States has not requested a further extension; nevertheless, just yesterday, on February 15, 2012, the United States produced documents from Lawrence Livermore National Laboratory.  *See* Attachment 8, S. Himmelhoch Production Ltr (Feb. 15, 2012), at 2.  This production comes after significant productions of DOE documents well after December 20, 2011.  (The United States has produced DOE documents — only some of which were also EOP documents — on the following post-December 20, 2011 production drives: GOV102-2, GOV106, GOV108, GOV116, GOV119, GOV122-GOV125, GOV127, GOV133, GOV135-GOV139.)  Moreover, the United States claims there are still 23,000 DOE documents that need to be logged or produced, exclusive of DOE documents that are within the EOP review.  *See* Attachment 1, at 3.

- **USACE**.  Like the DOE materials, the agreed Order required the production of USACE privilege logs and residual documents on or before November 30, 2011.  *See* Attachment 4, at 3.  And like DOE materials, the United States requested and received an extension until December 20, 2011, to produce these materials.  *See* Attachment 7.  The United States did not request a further extension, but according to its February 9 letter, the United States, nevertheless, has 1,715 documents pending production, and approximately 1,000 more it is still logging.

- **BOEMRE**.  The agreed Order required the production of BOEMRE privilege logs and residual documents on or before December 31, 2011.  *See* Attachment 4, at 3.  The United States requested and received an extension until January 31, 2012, to produce these documents due to corrupted drives the United States apparently had not backed-up.  *See* Attachment 9, S. Himmelhoch Email (Nov. 3, 2011).  Although the United States did not request a further extension, on February 9, 2012, it produced more BOEMRE docs.  *See* Attachment 10, S. Himmelhoch Production Ltr (Feb. 9, 2012).  And per its February 9 letter, the United States still has residual Department of Interior documents pending production.  *See* Attachment 1, at 4.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
Mr. Michael O'Keefe
February 16, 2012
Page 5

- **NOAA**.  The agreed Order required the production of NOAA privilege logs and residual documents on or before January 31, 2012.  *See* Attachment 4, at 3.  Although the United States did not ask for an extension, the United States now claims that NOAA's residual documents will be produced by February 29, 2012, a month after the Court-ordered deadline.  *See* Attachment 1, at 3.

- **EPA**.  The agreed Order required the production of EPA's privilege logs and residual documents on or before December 31, 2011.  *See* Attachment 4, at 3.  Although the United States did not ask for an extension, its letter of February 9 states that the EPA still has residual documents pending production.  *See* Attachment 1, at 4.

- **Coast Guard**.  The United States continues to have very little to offer on the timing of Coast Guard productions.  BP cannot take depositions of government witnesses on source control topics until the United States completes production of these documents with sufficient time for BP to review them.

It goes without saying that silently letting discovery deadlines pass is not the best way to handle a party's (often understandable) inability to meet a discovery deadline.  As the court explained in *Cobell v. Babbitt*, 37 F. Supp. 2d 6, 10 (D.D.C. 1999), where a party "fails to live up to its own expectations which have subsequently been embodied in a court order, it should, at the very least, notify the court and move for an enlargement of time" rather than waiting for the deadline to pass.  As we have indicated before, the Federal Rules of Civil Procedure apply to all parties, including the United States.  *Bradley v. United States*, 866 F.2d 120, 126-27 (5th Cir. 1989).

*Phase 2's Rule 30(b)(6) Deposition Schedule*.  The risk of prejudice to BP and other parties provides further grounds for this Court's attention to these written discovery issues.

As we all know, the Phase 2 Rule 30(b)(6) deposition effort will contrast significantly from Phase 1 deposition discovery.  In Phase 1, the vast majority of depositions were of fact witnesses, who testified from personal knowledge as opposed to as representatives of an entity.

In these Phase 1 fact depositions, certified custodial productions guaranteed that relevant documents would be produced at least ten calendar days before the deposition (although the United States missed this mark for seven of 19 witnesses).  Moreover, the relevant universe of custodial documents was often of manageable size and could be adequately digested even under the accelerated pace of Phase 1 deposition discovery.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
Mr. Michael O'Keefe
February 16, 2012
Page 6

By contrast, preparing for Phase 2's Rule 30(b)(6) depositions will require identifying the universe of documents relevant to various topics, which is necessarily more difficult than simply locating a given custodian's document collection responsive to a given set of search terms. Moreover, many of these documents contain highly technical information that requires additional time to understand and evaluate.

Sifting through large numbers of documents lacking any user-generated content introduces unnecessary noise into an already time-consuming endeavor. And by declining to provide accurate information about when the significant numbers of remaining documents are going to be produced, the United States continues to add additional uncertainty into the discovery equation. The sheer volume of the United States' productions over the last month — approximately 3,052,163 documents since January 3, 2012 (GOV108-GOV138) — makes this task all the more daunting.

Perhaps most significant of all, the United States' February 9 letter attempts to renege on the United States' previous agreement that parties should have 45 days to review relevant documents before depositions on those topics occur. *Compare* Attachment 1, at 5 *with* Attachment 11, N. Chakeres Email to Parties (Jan. 17, 2011).

\*       \*       \*

By producing so many documents so late in the process and now seeking to shorten BP's time to review them, the United States would suggest an approach that threatens to prevent BP and other parties from adequately preparing for the upcoming Rule 30(b)(6) depositions.

Perhaps importantly, this situation finds an analogue in the Phase 1 discovery process. In Phase 1, the United States has continued to produce Phase 1 BOEMRE documents (even apart from Zantaz documents) well into the Phase 1 trial preparation period — some as late as February 6, 2012 (GOV135) with others yet to be produced. *See* Attachment 12, S. Himmelhoch Production Ltr (Feb. 6, 2012); Attachment 1, at 4. In this way, the United States prejudiced the parties' Phase 1 trial preparations. BP respectfully submits that the Court has made clear that a similar situation should not occur in Phase 2.

In sum, although we recognize that the United States has marshaled significant (and perhaps unprecedented) resources in attempting to comply with its discovery obligations, the United States should acknowledge that its efforts have not yet hit the mark.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
Mr. Michael O'Keefe
February 16, 2012
Page 7


Against this backdrop, the United States should agree on a structured path forward so that all MDL parties and the Court can anticipate and manage the significant challenges presented by the United States' written discovery.  The United States' letter of February 9 fails to suggest such a structure.  BP would request that the Court facilitate a dialogue and select an appropriate path forward.

Sincerely,

Robert R. Gasaway

Attachments

cc (via electronic mail):

R. Michael Underhill
Steven O'Rourke
Sarah D. Himmelhoch
Robin L. Hanger
A. Nathaniel Chakeres
J. Andrew Langan, P.C.
Joel M. Gross
Allison B. Rumsey
Don K. Haycraft
Plaintiffs' Liaison Counsel
Defense Liaison Counsel

# Appendix A

## APPENDIX A

To facilitate a meaningful discussion of these issues at the appropriate level of specificity, we have broken the types of files at issue into three categories we think provide a useful basis for further discussion.  We have also attached a new .CSV file containing 2,851,524 beginning Bates numbers corresponding to documents/files produced by the United States that have no user-generated content and columns to the right showing into which of three general categories each document falls (described below).  (We will contact the United States separately regarding 67,068 provided to previously because those documents do not reasonably fit into these three categories.)

Also, the attached .CSV file has many documents at issue that fall into more than one category.  The numbers of documents corresponding to each heading category below therefore are not additive, and the total number of documents/files at issue is 2,851,524.  All of the Bates numbers in this .CSV file were on the list we previously provided to the United States on February 6, 2012.  *See* Attachment 2.

### 1.    Files With NSRL MD5 Hash Values (966,592)

At the outset, we recognize that one definition of "system file" is limited to the National Software Reference Library's (NSRL) list of certain md5 hash values.  Our use of the term "system files" during a conversation with the Court was a more general, descriptive one.  But if the United States prefers, we can use this technical definition going forward.

Even using this definition, the United States is simply incorrect to say that there are no system files on the list of United States production files without user-generated content that we provided on February 6.  Perhaps the United States based its conclusion simply on the file extensions for a sample of the files we identified.

Of the documents on this list, 966,592 have an md5 hash value matching the NIST NSRL database v2.34.  These therefore are system files under your preferred definition of "system files."  The attached .CSV file notes in the column "NSRLMATCH" if a documents is an NSRL system file.  All of the Bates numbers in this .CSV file were on the list we previously provided.

As the United States' February 9 letter recognizes, these files should have been excluded from the United States' productions during the "standard removal of system files" because these are not files that "do (or may) contain user generated content."

### 2.    Other Files With No User-Generated Content (2,585,114)

The NSRL system files just mentioned are not the only category of files the United States continues to produce that have no user-generated content.

Certain other types of documents with no user-generated content are noted as such in the OTHERSYSTEMFILE column.  This category of documents includes files that are used to support software or are from locations on custodian's hard drives where such support files are stored.  Specifically, we have included in this category files with the extension .DLL, .EXE, .MSI, .PROPERTIES, or .CLASS and files that were stored in the directories "\System Volume

Information\", "\System 32\", "\Program Files\", or "\Program Files (x86)\".   There are 2,585,114 of these files listed in the attached .CSV file.

To be clear, the files just discussed are not the files the United States suggests on page 1 of its February 9 letter.  The files it suggests are the more exotic file types that require specific, rarer software to view — for examples, a file generated by OptiCem, a program used "to design and simulate the optimum cement job"[1], or a .GIS file containing geographic information.  Those files "do (or may) contain user generated content," and as the United States correctly relays, per the October 19 Order, these native files should be retained with a slip sheet produced in their place.

By contrast, the documents noted as OTHERSYSTEMFILE in the .CSV file do not have any user-generated content.  The United States' excuse for producing these documents is that it wished for the parties to have the software necessary to view these more exotic file types — such as a .GIS file, to use the prior example.  We thank the United States for this consideration, but it might be more efficient for all parties if the United States would instead provide the standard installation DVDs from the applicable software vendors and any necessary licensing information.  A document production is not an appropriate or an efficient means for providing certain proprietary software.

The United States also claims that our previous list contains "many" user-generated files such as .LOGS, .CSV, and .PDF files.  It is demonstrably incorrect that all of these files are user-generated because 498 of them have md5 hash values that match the NSRL list of system files — meaning that 498 of the .LOGS, .CSV, and .PDF files are not user-generated system files.  They are of a file type that *could* contain user-generated content, but 498, in fact, do not.

The remaining .LOGS, .CSV, or .PDF files on the list are unlikely to contain user-generated content because they have been produced from locations on custodians' hard drives that do not store user-generated documents — for example in directories such as "\System Volume Information\."  Regardless of their source, these files do not contain any user-generated content.

### 3.      "Dot-Underscore" Structured Metadata Files (151,237)

The attached .CSV file lists 151,237 documents (noted in the column RESOURCEFORK) that the United States claims are image or video files, but this is incorrect.  These are not the image files themselves, which the United States has also produced.  Instead, these have the same name as the data files, but are prefixed with a dot-underscore — "._filename.txt").  These separate "dot-underscore" files contain structured metadata for files found on a Macintosh computer for things like icons, file sizes, or other metadata, and do not contain user-generated content.  This metadata should be produced, if at all, within the load file that accompanies the United States' productions — not as separate production documents.

---

[1]     *See* http://www.halliburton.com/ps/default.aspx?pageid=893&navid=218&prodid=PRN::11026270785447.

\*       \*       \*

To summarize, the files in the attached .CSV are distributed among the previous three categories accordingly:

| Total Files | NSRL | NSRL ONLY | OTHERSYSTEMFILE | OTHERSYSTEMFILE ONLY | RESOURCEFORK | RESOURCEFORK ONLY |
|---|---|---|---|---|---|---|
| 2,851,524 | 966,592 | 115,174 | 2,585,114 | 1,734,285 | 151,237 | 150,646 |

# Attachment 4

| | |
|---|---|
| **From:** | Pixton, Allan |
| **Sent:** | Thursday, March 08, 2012 12:38 PM |
| **To:** | 'robin.l.hanger@usdoj.gov' |
| **Cc:** | Eisert, Joseph A.; Nomellini, Mark J.; Gasaway, Robert R.; Sarah.Himmelhoch@usdoj.gov; 'lisa.berman@usdoj.gov'; deepwater.horizon@usdoj.gov; 'cvide@caci.com' |
| **Subject:** | RE: Update on Discovery Technical Issues and Coast Guard Production |
| **Attachments:** | US MDL Production - FAMLYRNG-ATTCHIDS Mismatch Report 2012.03.08.xlsx; US MDL Production - Duplicate BEGDOC Report 2012.03.08.xlsx; US MDL Production - 1000 Plus Page Document Report 2012.03.08.xlsx |

Robin,

Thank you for taking the time to meet and confer with us yesterday regarding technical issues with the United States' production. I have tried to summarize our discussion below.

**Non-User-Generated-Created Content:**

BP appreciates the efforts undertaken by the United States to curb the production of non-user-generated content in its recent productions– as evidenced by the fact that whereas GOV001 – GOV111 contained 2,921,907 non-user-generated files (4,809,573 pages), GOV112 – GOV166 contains significantly less non-user-generated content.

**BEGDOC Duplicate Documents:**

As discussed on our call, we have encountered numerous instances where a document with a given BEGDOC has been produced multiple times by the United States. GOV107 - GOV166 contains 555,152 such documents (2,596,806 pages). Although some of these duplicates may be explained by the United States' efforts to reunite families that were partially produced prior to entry of the agreed upon October 19, 2011 order, industry standard practice is to produce only new documents along with a metadata overlay to update previously produced documents. We have attached a list of the affected BEGDOCs.

**High Page Count Items:**

7,396 documents (.064% of United States' documents) accounts for more than 31 million pages or 43% of all pages produced by the United States to date. The vast majority of these documents are unusable when converted to TIFF images and should only be produced in native format. We ask that for future productions, you evaluate documents that would result in over 1,000 pages to determine if the document is useful in TIFF image format or if the document should only be produced in native format. We have attached a list of the BEGDOCs, and we would be happy to meet and confer with you further to discuss how to implement such a screening process.

**Family Metadata Issues:**

We have encountered documents produced by the United States where the attachment range (ATTCHIDS) do not fall within the document family range (FAMLYRNG). Although this is a difficult issue to quantify, we have attached a list of example BEGDOCs for you to review.

We appreciate your prompt response.

Best regards,

Allan

1