

U.S. Department of Justice
Environmental Enforcement Section
Environment & Natural Resources Division

---

*P.O. Box 7611*     *Telephone (202) 616-6537*
*Washington, DC 20044-7611*     *Facsimile (202) 616-6584*

**Via Electronic Mail**

March 27, 2012

**United States Response to BP's Objections to its 30(b)(6) Notice**

Dear Judge Shushan,

      As you ordered at the March 23, 2012 Working Group Conference, the United States is providing comments on the new objections raised by BP to its proposed 30(b)(6) notice (Attachment A to the March 15, 2012 Letter from Rob Gasaway, attached here as Attachment 1).[1]

      The United States recognizes that the Court does not want a detailed history of what was or was not previously agreed upon; but for the record, we agree entirely with the letter that Mr. Maze sent you on March 22, 2012 (Attachment 2).  BP's extensive thirteenth-hour objections require the Court and the parties to needlessly invest time and effort re-visiting settled issues. While the United States anticipates that a small number of the proposed objections are likely to be resolvable in the meet-and-confer process, many of the objections are thinly-veiled attempts to narrow the scope of Phase II, but as applied only to BP.  These topics fall generally into three categories.

      First, BP wishes to limit its topics to "technical" information, as opposed to communications about quantification or the context or motivation for various analyses.  BP has never limited itself to seeking solely "technical" information from the United States in Phase II discovery, but has consistently sought discovery regarding the context of various flow estimation efforts.  Yet – as of just two weeks ago -- BP suddenly wishes to impose such a limit on all discovery directed against BP on these topics.  The United States seeks nothing more than to make the same inquiries of BP that BP is making of the United States.

      Second, BP proposes to present only "types and methodologies" of analyses, and wants to exclude topics about data used, observations and measurements, or the identity of individuals involved.  BP justifies this limitation as "burdensome," but it is simply impossible to assess BP's

---

[1] The United States is currently conferring with the State of Alabama regarding the Source Control discovery topics.

1

analyses and calculations without understanding the underlying data or observations, and once again, BP is seeking the same types of information from the United States.

Third, BP wants to limit the topics to very particular time periods. For example, in Topic 26, BP attempts to prohibit questioning about what it knew about the oil reservoir prior to April 20, 2010, and in Topics 5 and 22, BP attempts to prohibit questioning about the oil once it left the BOP. These limitations are improper, as BP's pre-blowout understanding of the reservoir is relevant to certain flow rate estimation methodologies, and the behavior of the oil after it left the BOP is relevant to other flow rate estimation methodologies.

Further guidance from the Court regarding the scope of the Phase II quantification track, therefore, is likely to assist the parties in returning to a constructive process of working through discovery issues. In the meantime, the United States' specific responses to BP's objections on Quantification topics are as follows:

Topics 4-5, 7-8:

For each of these topics, BP objects to the following language (or language substantially similar to the following):

> the identity of individuals who directed, performed, or assisted in performing each prediction, estimate, characterization and/or measurement, and the identity of all documents, data, observations, calculations and/or measurements that were taken, used, relied upon or considered in the preparation of such preparations, estimates, characterizations and/or measurements. . . .

BP justifies this deletion as "unduly burdensome."

The United States believes that such information is critical to ascertaining who within BP was making the calculations that are the subject of these requests, who was directing them, and what data and information were relied upon by those persons. Unlike the United States, whose flow rate estimation work was shared with BP and the public, BP chose to keep its flow-related calculations secret. Consequently, much less is known about BP's calculations and estimates about the Macondo reservoir and the flow rate. If it remains true that Phase II discovery will proceed primarily through 30(b)(6) depositions, and not fact depositions, the United States will need to rely upon BP's 30(b)(6) deponents to provide a full picture of the types of calculations that were going on, who was performing them, and why. To the extent fact depositions are allowed, identifying the persons with knowledge is also important.

It should also be noted that BP requested, and the United States agreed, to have United States witnesses testify on analogous topics, particularly topics such as Topic 45 ("Any communications constituting directions, guidance, analysis, commentary or influence relating to the work of the FRTG [Flow Rate Technical Group] or to flow…."), Topic 46 ("The methods, calculations, analyses, estimates, factors, data, and assumptions considered or employed by the FRTG, any of its members, any of its sub-teams, or any of their members, during the course of any work performed by the FRTG or any sub-team to quantify or estimate the flow…."), and

Topic 50 ("Your efforts (including all communications, modeling, calculations and analysis of any kind) relating to all attempts to quantify the release of hydrocarbons…").[2] If such topics are relevant to BP's case as to why the FRTG's estimates may be incorrect, analogous topics are relevant to the United States' case as to whether BP's estimates were correct or not. Moreover, any discovery burden on BP of responding to such topics would be equally applicable to the United States.

Topics 5 & 22:

The United States is unclear as to the meaning or purpose of BP's proposed edit limiting Topic 5 to the physical or chemical properties of the well's discharge "before any release into the environment," and therefore objects to this proposed change. The phrase "release into the environment" is vague and ambiguous, and it could leave parties guessing about whether the phrase includes hydrocarbons inside the riser, or hydrocarbons under the Top Hat.

In addition, there are methods to estimate flow volume or fluid properties *after* discharge to the environment, such as measuring/analyzing amounts collected, analyzing aerial images, using acoustic or sonar imaging, and analyzing video footage. The United States has agreed to produce witnesses on those topics, and if BP conducted any such analyses, is should do so too.

As for Topic 22, the United States reiterates its view that the phrase "into the environment" is vague and ambiguous. The United States intends for the topic to call for BP to provide a witness who can testify as to BP's efforts to measure the size of all of the apertures through which the Macondo fluids were flowing. BP seeks to limit this topic to just the size of apertures at the point of discharge, materially limiting the scope of the topic. Therefore, the United States cannot agree to BP's proposed change.

Topic 6:

The United States is unclear as to the meaning or purpose of BP's proposed edit to Topic 6. Topic 6 relates to BP's efforts to analyze reservoir depletion. Pressure depletion is merely one aspect of this issue, and therefore the United States objects to BP's attempt to limit this topic solely to pressure depletion. The United States also disagrees with BP's assertion that this topic improperly overlaps with Topics 4 and 7. Topic 4 relates generally to efforts to estimate flow rate. While reservoir depletion modeling may well bear on flow rate (hence the relevance of Topic 6), this is not reason alone to limit Topic 6. Topic 7 as written does include within its scope "reservoir pressure," and thus the United States is willing to negotiate a change to either Topic 6 or Topic 7 to clarify the distinction between the two topics.

---

[2] A near-final version of the agreed 30(b)(6) Notice to the United States is enclosed as Attachment B to the March 15, 2012 Gasaway letter. The subsequent changes to that Notice did not affect the Topics cited here.

3

Topics 9 and 14:

Both of these topics relate to BP's communications with the public and governmental entities. BP never took the position that its communications with the public and the government were outside the scope of Phase II discovery until the March 16, 2012 Working Group Conference, when it stated that only "technical" depositions were necessary at this time, and requested that these two topics should be postponed. The United States objects to this proposal. The question of what information BP was sharing with the United States and the public is critical to understanding the context of the calculations BP was performing, and it also provides insight into the motivation behind those calculations. Additionally, the vast majority of the calculations performed by other parties (including the United States) relied upon information or assumptions provided by BP. The United States needs discovery into the provenance and reliability of the information that was supplied to it by BP.

BP has consistently taken the position that non-technical information going to the purpose behind calculations is relevant to Phase II discovery. It has sought discovery into EOP documents (even though the EOP documents are unlikely to provide any technical insight into quantification issues) and is seeking to depose United States witnesses on such topics as Topic 48 ("All communications involving the FRTG or any of its members regarding the purpose or timing of any attempt to quantify or estimate the flow of hydrocarbons…"). The United States has agreed to provide such documents and to put forward witnesses on such topics on the understanding that the motivation and context for flow rate estimates were proper subjects of Phase II discovery.

Topic 19:

As with Topics 4-5 and 7-8, the United States will be unable to depose all of the relevant fact witnesses who have information relevant to Phase II quantification issues. It therefore needs BP to provide a 30(b)(6) witness who can testify about the identities of the persons who performed these calculations.

Topic 23:

BP's proposed addition limits discovery to the "types and methodologies" used, apparently to avoid any testimony on the data used, results shown, conclusions drawn, or communications made about these estimates. Such a limitation would prevent the United States from fully understanding the accuracy or reliability of BP's estimates.

Topic 25:

The United States believes a meet and confer with BP regarding BP's proposed change may be useful in resolving this objection.

Topic 26:

BP seeks to eliminate this topic entirely. The United States cannot agree to BP's proposal. The topic seeks information from BP as to the work it performed prior to the blowout to estimate the potential size and characteristics of the Macondo reservoir. While some of that work may have been supplemented or replaced once additional data was gathered after the blowout, a great deal about what is known about the Macondo reservoir still comes from BP's pre-drill estimates. In particular, to the United States' knowledge, there has not been additional seismic work performed that would change the pre-drill seismic estimates about the size of the Macondo reservoir.

**Conclusion:**

The United States requests that BP's objections seeking to limit the scope of Phase II discovery be rejected by the Court. BP has sought extensive Phase II discovery from the United States regarding the context and purpose of its flow rate estimates, and the United States is working diligently to comply with BP's requests. BP should do the same.

Respectfully,

*/s/A. Nathaniel Chakeres*
A. Nathaniel Chakeres
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
601 D Street NW
Washington, DC 20004
(202) 616-6537 (telephone)
(202) 532-5973 (mobile)
(202) 616-6584 (facsimile)
aristide.chakeres@usdoj.gov

U.S.P.S. mailing address:
P.O. Box 7611
Washington, DC 20044-7611

CC:
Rob Gasaway
Andrew Langan
Don Haycraft
Plaintiffs' Liaison Counsel
States' Counsel
Defendants' Liaison Counsel

5

Attachments:

Attachment 1: March 15, 2012 Letter from Rob Gasaway re: Phase 2 30(b)(6) Notices (with Attachment A, BP proposed edits to BP 30(b)(6) Notice, and Attachment B, proposed United States 30(b)(6) Notice)

Attachment 2: March 21, 2012 Letter from Corey Maze re: BP 30(b)(6) Notice