

**U.S. Department of Justice**

Environment and Natural Resource Division

---

*P.O. Box 761*
*Washington, DC 20044*
*202-514-5261*
*Thomas.Benson@usdoj.gov*

April 18, 2012

**BY ELECTRONIC MAIL**

Robert Gasaway
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
rgasaway@kirkland.com

      Re:    MDL 2179: BP's Privilege Logs

Dear Mr. Gasaway:

      This letter addresses the privilege logs BP has produced thus far and the logs that BP will produce by April 30, 2012. The United States has several concerns with BP's logs as served thus far and we raise them now so that BP can revise its served logs and adjust its practice as necessary going forward.

      First, we do not believe that BP's logs thus far are sufficient to invoke the attorney client privilege or attorney work product protection. As you know, BP's privilege logs provide only a vague description of the type of document (i.e., report or email), the date, the author, and the recipients (including cc and bcc recipients). In a critical divergence from the United States' logs, BP has not provided *any* information about the subject matter of the document. As it stands, BP's logs simply do not provide sufficient information to determine whether the claimed privilege is applicable, and thus do not satisfy the Federal Rules of Civil Procedure or PTO 14's requirement that privilege logs include: "a description of the withheld document, communication or tangible thing in a manner that, without revealing information claimed privileged or protected, will enable a party to assess the validity or efficacy of the privilege claim." PTO 14 at ¶3.g; see also Fed. R. Civ. P. 26(b)(5) (requiring party to describe the nature of the documents not produced and do so in a manner that "will enable other parties to assess the claim."); *see also Haensel v. Chrysler Corp.*, 1997 WL 537687 (E.D. La. 1997) (requiring date, author, recipients and "brief description of the document" in order to claim privilege). By omitting subject matter information, BP's logs also make it difficult for the United States to determine how to prioritize which documents merit challenge and potential *in camera* review.

We ask that you include title and/or subject matter information on BP's April 30, 2012 logs and serve revised versions of the logs served thus far with that additional information. This will allow the United States to hone our privilege challenges and focus on those documents that may be important to us, thus minimizing the burden on BP and the Court.

Second, we do not believe that many of the listed documents can properly be considered privileged. In correspondence and meetings last fall, we noted that BP's flow work could not be considered privileged to the extent it involved factual analysis or was primarily motivated by the response rather than potential future litigation. Reviewing the privilege logs produced thus far[1] suggests that BP is claiming that thousands of documents neither written nor received by attorneys are protected attorney-client communications and attorney work product, including documents going back to the earliest days of the spill. We can only guess at the subject matter of these documents. However, to the extent that they address factual issues, they cannot be privileged. *See, e.g.*, *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982). Moreover, BP has already argued to the Court that technical analyses estimating the flow from the well are factual in nature. Doc. # 6148. As one of the company's cited cases explains: "Furthermore, because the only purpose of the study was to 'identify' and 'quantify,' the Court is hard-pressed to view it as anything but purely factual material which, therefore, is not privileged." *Mobil Oil Corp. v. Department of Energy*, 520 F. Supp. 414, 417 (N.D.N.Y. 1981) (cited by BP at Doc. # 6148 at 9). On this point we agree: BP's efforts to "quantify" the flow of oil are "factual material" that cannot be protected by the attorney client privilege or work product doctrine. Claiming privilege over documents dating from the response is also at odds with BP's publically-stated goal to "consult and collaborate with their colleagues in the scientific community, and to develop a well-founded, strongly defensible estimate of the flow rate." *BP's Preliminary Response to the Flow Rate and Volume Estimates Contained in Staff Working Paper No. 3*, at 9. Work performed in order to kill the well or participate in a collaborative scientific process to estimate flow cannot also be protected as attorney work product.

Finally, we respond briefly to your April 12, 2012 letter, in which you dismiss as a "mix of apples and oranges" our argument that BP should live by the rule of its brief and produce its internal flow analyses. It appears that BP intends to argue that the United States internal flow rate work should be produced while BP's should be protected. That position is neither fair nor grounded in the law. Moreover, even by BP's own account, any flow rate analysis in the litigation workstream did not begin flowing until July 19, 2010 – yet BP has claimed numerous technical documents before that time as privileged. *See* October 17, 2011 R. Gasaway Letter to S. O'Rourke, *et al*. It is not clear to us how such documents could be considered privileged. We would appreciate any explanation you can provide.

---

[1] This is not intended to be a comprehensive statement of the deficiencies in BP's log. We will serve our challenges according to the schedule ordered by the Court.

      We look forward to discussing these issues further with you, and, as necessary, with the Court. Please contact me if you have any questions.

                Sincerely,

                /s/ Thomas A. Benson

                Thomas A. Benson

cc:    Mark J. Nomellini
       J. Andrew Langan
       Joel M. Gross
       Allison B. Rumsey
       Allan Pixton
       R. Michael Underhill
       Steve O'Rourke
       Sarah D. Himmelhoch
       Bethany Engel
       Robin L. Hanger