# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

April 23, 2012

**BY ELECTRONIC MAIL**

Thomas A. Benson, Esq.
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 761
Washington, DC 20044

   Re: MDL No. 2179 — The United States' April 18, 2012 Letter re BP's Privilege Logs

Dear Mr. Benson:

  This letter responds to your letter of April 18, 2012 regarding BP's privilege logs. As you will see below, BP respectfully disagrees that BP's privilege logs fail to provide sufficient information to invoke the attorney-client privilege or work-product protection. Additionally, we submit that the United States' continued questioning of BP's privilege assertions continues to mix apples and oranges. We look forward to continuing this dialog with the United States and would welcome an opportunity to answer any questions you may have regarding specific entries on BP's privilege logs.

  **BP's Privilege Log Detail**

  Contrary to the position stated in your recent letter, the amount and type of informational detail provided by BP's privilege logs is consistent with the Federal Rules of Civil Procedure, applicable pretrial orders in MDL 2179, the practice of the parties in this litigation, and (in all relevant respects) the level of detail appearing in the United States' own privilege logs.

  Your letter is thus mistaken in asserting that "BP's privilege logs provide only a vague description of the type of document (i.e., report or email), the date, the author, and the recipients (including cc and bcc recipients)" and do not provide "*any* information about the subject matter of the document."

  To the contrary, for each document over which BP has claimed privilege, BP's privilege logs include a column with a "Privilege Description." As you can readily see by inspecting BP's logs, this column contains, not only the basis for BP's assertion of privilege, but also a brief

Chicago  Hong Kong  London  Los Angeles  Munich  New York  Palo Alto  San Francisco  Shanghai

## KIRKLAND & ELLIS LLP

Thomas A. Benson, Esq.
April 23, 2012
Page 2

description of the relevant document. To take just a few immediate examples, the first page of BP's most recent privilege log provides the following information for two specific documents withheld under claims of privilege:

- "Discussion among client representatives regarding attorney's request for information for the purpose of offering legal advice regarding Deepwater Horizon incident. Discussion of facts or issues or strategies in connection with, and/or in anticipation of litigation regarding Deepwater Horizon." (Entry No. 1.)

- "Discussion among client representatives reflecting attorney's legal advice regarding congressional response. Discussion of facts or issues or strategies in connection with, and/or in anticipation of litigation regarding congressional response." (Entry No. 8.)

*See* Attachment A (BP's Sixty-Third Privilege Log, p.1 (Jan. 31, 2012)).

Indeed, a comparison between these two entries and the corresponding United States privilege log entries dispels any notion that there is, as your letter asserts, some "critical divergence" between the information provided by United States logs and that provided by BP's logs. Consider, in this regard, the corresponding entries from the first page of the United States' most recent privilege log:

- "Memo re ERDC Spill Capability," withheld as "Internal pre-decisional and deliberative discussion of policy issues related to the response." (Entry No. 1).

- "Email re Legal Opinion and Talking Points Regarding Oil Spill Cleanup Activities and Deepwater Horizon," withheld as "Internal communication transmitting and discussing legal advice of counsel." (Entry No. 8.)

*See* Attachment B (U.S. Privilege Log, p.1 (Apr. 19, 2012)). Surely, any "divergence" between the amount of information conveyed by these United States and BP entries, far from being "critical," exists solely in the eye of the beholder.

As you know, BP has issued, and often been called upon to defend, 63 privilege logs in this litigation to date. But, tellingly, after over more than a year of litigation no party has ever contended (until now) that BP's logs are systematically inadequate for opposing parties to assess and (where appropriate) challenge BP's privilege assertions. Indeed, BP and the PSC have engaged in countless meet-and-confer discussions over the past twelve months in which BP's privilege log descriptions were used by the PSC to assess and challenge specified BP privilege claims. BP believes that, if the United States were to engage BP in a similar meet-and-confer

## KIRKLAND & ELLIS LLP

Thomas A. Benson, Esq.
April 23, 2012
Page 3

process, the United States (like the PSC) would soon find that BP's descriptions are perfectly adequate for purposes of making assessments of BP's claims of privilege.

### BP's Privilege Assertions

Your recent letter's mixed analysis of the United States' assertions of a deliberative process privilege and BP's assertions of a work-product protection continues to confuse apples with oranges.

As your letter concedes, the deliberative process privilege does not protect documents containing factual material. By contrast, it is black-letter law that the work-product protection and attorney-client privilege may protect documents containing factual material. Indeed, the very existence of the "fact work product" doctrine, *see, e.g.*, *Hickman v. Taylor*, 329 U.S. 495 (1947), conclusively indicates that your claim that "to the extent that they address factual issues, [documents] cannot be privileged" is vastly overbroad and ultimately incorrect.

The cases your letter cites in this regard do not support the United States' position. For example, *In re International Systems & Controls Corporation Securities Litigation*, 693 F.2d 1235 (5th Cir. 1982), does not stand for the proposition that the work-product protection may never extend to documents "to the extent that they address factual issues." Rather, *International Systems* adopts the traditional distinction between opinion work product and fact work product. *See id.* at 1240.

Likewise, *Mobil Oil Corporation v. Department of Energy*, 520 F. Supp. 414 (N.D.N.Y. 1981), holds only that "purely factual material . . . is not privileged" under the deliberative process privilege. *Id.* at 417. Critically, *Mobil Oil* does not purport to analyze the scope of privileges other than the deliberative process privilege — such as the work-product protection or attorney-client privilege.

More fundamentally, and once again contrary to your letter, there is no unfairness or inconsistency in the positions BP is taking in this litigation. As BP has explained, the United States may not — nor may BP — assert a deliberative process privilege over factual documents. At the same time, however, both the United States and BP may, where appropriate, assert work-product and attorney-client protections over documents containing factual information. The two parties are thus similarly and fairly situated with respect to these privileges.

Indeed, the United States' memorandum regarding the deliberative process privilege acknowledges that certain factual analyses may be "protected pursuant to the attorney work product doctrine." (Doc. No. 6212, at 1 n.1.) It would therefore be patently unfair for the United

# KIRKLAND & ELLIS LLP

Thomas A. Benson, Esq.
April 23, 2012
Page 4

States to assert such a privilege for its own benefit, while at the same time insisting that other parties should be denied the right to assert a similarly expansive work-product protection.

Nor is there inconsistency between BP's continued assertion of legally recognized privileges and the company's prior statements. In this regard, BP's submission of a comment tentatively explaining flaws in the government's otherwise unrebutted flow rate estimates cannot credibly be interpreted as a subject-matter or other waiver BP's right to protect otherwise privileged documents. Our position on this point remains unchanged from the position stated in our September 16, 2011 letter to Sarah Himmelhoch. *See* Attachment C, at 4-6.

To be sure, BP does not assert that its internal flow rate work is protected simply by virtue of its having been conducted internally. BP has therefore produced much of its internal flow rate work in this litigation, and readily agrees that the work-product doctrine does not encompass investigations that were *not* conducted at the direction of counsel or in preparation for litigation, such as the investigations that produced BP's Internal Investigation ("Bly") Report. *See* Doc. No. 3894, at 1 (Sept. 1, 2011 Order). But the requirement that internal flow rate work be produced stops where a legally recognized privilege — such as the work-product protection or attorney-client privilege — begins.

Finally, your letter contains the following statements: "Moreover, even by BP's own account, any flow rate analysis in the litigation workstream did not begin flowing until July 19, 2010 — yet BP has claimed numerous technical documents before that time as privileged. *See* October 17, 2011 R. Gasaway Letter to S. O'Rourke, *et al*. It is not clear to us how such documents could be considered privileged."

But if the United States believes that particular documents appearing on BP's privilege logs fall outside of the proper scope of a privilege BP is asserting, we would welcome an opportunity to re-review, and meet and confer with you about, those documents. In this regard, we would ask that the United States kindly point us to specific documents on BP's logs, dated prior to July 19, 2010, that you believe contain "flow rate analysis in the litigation workstream." We are willing to promptly review such a list of documents and to discuss your specific concerns about the documents.

## KIRKLAND & ELLIS LLP

Thomas A. Benson, Esq.
April 23, 2012
Page 5

* * * * *

      BP hopes this letter has answered your questions regarding BP's privilege logs. Naturally, BP remains willing to meet and confer with the United States with respect to questions about specific BP privilege log entries.

      Sincerely,

      Robert R. Gasaway

Attachments

cc (via electronic mail):

R. Michael Underhill
Steven O'Rourke
Sarah D. Himmelhoch
Robin L. Hanger
A. Nathaniel Chakeres
Bethany Engel
Thomas Benson
Joel M. Gross
Allison B. Rumsey
Defense Liaison Counsel
Plaintiffs' Liaison Counsel