# Attachment A

Sixty-Third Privilege Log of BP America Inc., BP America Production Co. and BP Exploration & Production Inc.
In Re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,
MDL NO. 2179 (E.D. La.)
January 31, 2012

| Entry No. | Privilege Bates No. | Privilege Bates Family Range | Document Type | Date | From/Author | To/Recipient | CC | BCC | Privilege Reason | Privilege Description | Withheld or Redacted | Redacted Doc Bates Range |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | PRIV-BP-HZN-2179MDL00008597 | PRIV-BP-HZN-2179MDL00008597 - PRIV-BP-HZN-2179MDL00008597 | Email | 5/22/2010 | Ford, Susan | Rainey, David; Ahnell, Arden; Carragher, Peter | McKay, Lamar | | Attorney/Client,Work Product | Discussion among client representatives regarding attorney's request for information for the purpose of offering legal advice regarding Deepwater Horizon incident. Discussion of facts or issues or strategies in connection with, and/or in anticipation of litigation regarding Deepwater Horizon. | Privileged Withhold | |
| 2 | PRIV-BP-HZN-2179MDL00008598 | PRIV-BP-HZN-2179MDL00008598 - PRIV-BP-HZN-2179MDL00008598 | Email | 5/15/2010 | Phan, Kim | Wulf, Gary | Kirton, Bill | | Attorney/Client | Discussion among client representatives reflecting attorney's legal advice regarding Deepwater Horizon incident. | Privileged Redact | BP-HZN-2179MDL06566456 - BP-HZN-2179MDL06566462 |
| 3 | PRIV-BP-HZN-2179MDL00008599 | PRIV-BP-HZN-2179MDL00008599 - PRIV-BP-HZN-2179MDL00008599 | Email | 6/16/2010 | Hofer, Hanna | Nagel, David | Dudley, Robert | | Attorney/Client | Discussion among client representatives reflecting attorney's legal advice regarding Deepwater Horizon incident. | Privileged Redact | BP-HZN-2179MDL06566463 - BP-HZN-2179MDL06566463 |
| 4 | PRIV-BP-HZN-2179MDL00008600 | PRIV-BP-HZN-2179MDL00008600 - PRIV-BP-HZN-2179MDL00008600 | Spreadsheet | 7/8/2010 | Merrill, Robert Jr.; Lockett, Tim | | | | Attorney/Client,Work Product | Information and documents prepared for the purpose of seeking legal advice from attorney regarding Deepwater Horizon investigation. Document prepared in connection with, and/or in anticipation of litigation regarding Deepwater Horizon. | Privileged Withhold | |
| 5 | PRIV-BP-HZN-2179MDL00008601 | PRIV-BP-HZN-2179MDL00008601 - PRIV-BP-HZN-2179MDL00008602 | Email | 7/8/2010 | Allen, Timothy | Wulf, Gary | | | Attorney/Client | Discussion among client representatives reflecting attorney's legal advice regarding Deepwater Horizon investigation. | Privileged Withhold | |
| 6 | PRIV-BP-HZN-2179MDL00008602 | PRIV-BP-HZN-2179MDL00008601 - PRIV-BP-HZN-2179MDL00008602 | Report | 7/8/2010 | Allen, Timothy | Wulf, Gary | | | Attorney/Client | Information and documents prepared for the purpose of seeking legal advice from attorney regarding Deepwater Horizon investigation. | Privileged Withhold | |
| 7 | PRIV-BP-HZN-2179MDL00008603 | PRIV-BP-HZN-2179MDL00008603 - PRIV-BP-HZN-2179MDL00008603 | Report | 6/13/2010 | Zanghi, Mike | | | | Attorney/Client | Information and documents prepared for the purpose of seeking legal advice from attorney regarding Deepwater Horizon incident. | Privileged Withhold | |
| 8 | PRIV-BP-HZN-2179MDL00008604 | PRIV-BP-HZN-2179MDL00008604 - PRIV-BP-HZN-2179MDL00008604 | Email | 5/22/2010 | Morgheim, Jeffrey | McAughan, Kelly; Rainey, David; Thorseth, Jay; Yeilding, Cindy; Ritchie, Bryan | Bozeman, Walt | | Attorney/Client,Work Product | Discussion among client representatives reflecting attorney's legal advice regarding congressional response. Discussion of facts or issues or strategies in connection with, and/or in anticipation of litigation regarding congressional response. | Privileged Withhold | |
| 9 | PRIV-BP-HZN-2179MDL00008605 | PRIV-BP-HZN-2179MDL00008605 - PRIV-BP-HZN-2179MDL00008605 | Email | 5/31/2010 | Worsley, Mark | Lynch, Richard | McNeillie, Graham | | Attorney/Client | Discussion among client representatives regarding attorney's request for information for the purpose of offering legal advice regarding Deepwater Horizon incident. | Privileged Withhold | |
| 10 | PRIV-BP-HZN-2179MDL00008606 | PRIV-BP-HZN-2179MDL00008606 - PRIV-BP-HZN-2179MDL00008606 | Report | 4/22/2010 | Yerbury, Graham | | | | Attorney/Client | Information and documents prepared for the purpose of seeking legal advice from attorney regarding organizational strategies. | Privileged Redact | BP-HZN-2179MDL05073114 - BP-HZN-2179MDL05073170 |

# Attachment B

| First | Last | DocDate | Privileges | Author | Recipients | Attorney | Description | Basis | Family | Redacted | Log |
|---|---|---|---|---|---|---|---|---|---|---|---|
| C1A027-005726 | C1A027-005730 | 20100504 | DP | Fleming, Beth, DOD | Patano, Alfred, DOD; Dixon, Lester S., DOD; Semonite, Todd T., DOD; Lorrentz, Warren P., DOD | N/A | Memo re ERDC Spill Capability | Internal pre-decisional and deliberative discussion of policy issues related to the response | C1A027-005722-C1A027-005732 | N/A | Log 16 |
| C1A047-000325 | C1A047-000327 | 20100714 | DP | Clarke, Douglas, DOD | Small, Daniel L.; Lorentz, Warren; Bridges, Todd S. | N/A | Email re draft USACE Recommended Response for Dredging Operations Following Oil Spill Incidents | Internal pre-decisional and deliberative discussion of policy issues related to the response | C1A047-000325-C1A047-000453 | N/A | Log 31 |
| C1A074-003917 | C1A074-003920 | 20100514 | DP | Theel, Heather J., DOD | Lorentz, Warren P., DOD | N/A | Email re Oil Spill | Internal pre-decisional and deliberative discussion of policy issues related to response, restoration, and recovery. | C1A074-003917-C1A074-003927 | N/A | Log 31 |
| C1C002-000092 | C1C002-000095 | 20100831 | DP | Stroupe, Wayne A., DOD | None Identified | N/A | Document titled Draft Innovative Military Technology Improves Oil Bird Surveys | Internal pre-decisional draft report reflecting redline-strikeout changes | C1C002-000092-C1C002-000095 | N/A | Log 15 |
| C1C002-000096 | C1C002-000099 | 20100826 | DP | Stroupe, Wayne A., DOD | None Identified | N/A | Document titled Draft Innovative Military Technology Improves Oil Bird Surveys | Internal pre-decisional draft report reflecting redline-strikeout changes | C1C002-000096-C1C002-000099 | N/A | Log 15 |
| C1C002-000188 | C1C002-000190 | 20100603 | DP | Stroupe, Wayne A., DOD | Holland, Jeffery P., DOD; Cullinane, John M., DOD; Fleming, Beth, DOD; Quimby, Deborah H., DOD; Martin, William D., DOD | N/A | Email re NY Times Inquiry on Oil Spill Work - Possible ERDC Response? | Internal pre-decisional and deliberative discussion of policy issues related to the response | C1C002-000188-C1C002-000190 | N/A | Log 16 |
| C1C002-000191 | C1C002-000193 | 20100603 | DP | Fleming, Beth, DOD | Stroupe, Wayne A., DOD; Holland, Jeffery P., DOD; Cullinane, John M., DOD; Quimby, Deborah H., DOD; Martin, William D., DOD | N/A | Email re NY Times Inquiry on Oil Spill Work - Possible ERDC Response? | Internal pre-decisional and deliberative discussion of policy issues related to the response | C1C002-000191-C1C002-000193 | N/A | Log 16 |
| C1C002-000224 | C1C002-000224 | 20100513 | AC | Anderson, Robert T., DOD | Holder, Ken, DOD; Jones, Amanda S., DOD; Stroupe, Wayne A., DOD; Worley, Frank E., DOD; Breazeale, Kavanaugh, DOD | Wilson, John Maxwell, DOD | Email re Legal Opinion and Talking Points Regarding Oil Spill Cleanup Activities and Deepwater Horizon | Internal communication transmitting and discussing legal advice of counsel | C1C002-000224-C1C002-000227 | N/A | Log 15 |
| C1C002-000245 | C1C002-000248 | 20100514 | DP | Stroupe, Wayne A., DOD | None Identified | N/A | Draft testimony titled Complete Statement of Honorable Jo Ellen Darcy, Assistant Secretary of the Army for Civil Works before the Committee on Environment and Public Works, United States Senate on Oil Spill Response in Coastal Louisiana May 18, 2010 | Internal pre-decisional draft of testimony of senior manager reflecting staff recommendations including redline-strikeout changes | C1C002-000245-C1C002-000248 | N/A | Log 15 |
| C1C002-000263 | C1C002-000263 | 20100708 | DP | Fleming, Beth, DOD | Stroupe, Wayne A., DOD; Quimby, Deborah H., DOD; Claypool, Dolly, DOD | N/A | Email re Oil Spill Tiger Team Update | Internal pre-decisional and deliberative discussion of policy issues related to the response | C1C002-000263-C1C002-000263 | N/A | Log 16 |
| C1C002-000264 | C1C002-000265 | 20100619 | DP | solia@bellsouth.net | Stroupe, Wayne A., DOD | N/A | Email re Oil Spill Tiger Team Update | Internal pre-decisional and deliberative discussion of briefing regarding policy issues related to the response | C1C002-000264-C1C002-000265 | N/A | Log 19 |
| C1C002-000269 | C1C002-000270 | 20100513 | DP | Anderson, Robert T. DOD | Pawlik, Eugene A., DOD; Holder, Ken, DOD; Jones, Amanda S., DOD; Stroupe, Wayne A., DOD; Garman, Doug M., DOD | N/A | Email re Thoughts on The Concept Barrier Island "Defense" Plan | Internal pre-decisional and deliberative discussion of policy issues related to the response | C1C002-000269-C1C002-000270 | N/A | Log 19 |
| C1C002-000304 | C1C002-000312 | 20100604 | DP | Stroupe, Wayne A., DOD | None Identified | N/A | Memo re STRATCOM Emergency permits dated June 4, 2010 | Internal pre-decisional and deliberative draft document regarding policy issues related to the response | C1C002-000304-C1C002-000312 | N/A | Log 19 |
| C1C002-000315 | C1C002-000316 | 20100504 | DP | Stroupe, Wayne A., DOD | None Identified | N/A | Draft Talking Points for Gulf Oil Spill Response | Internal draft briefing papers for senior managers reflecting staff recommendations regarding policy decisions related to the response actions | C1C002-000315-C1C002-000316 | N/A | Log 15 |
| C1C002-000327 | C1C002-000328 | 20100619 | DP | Stroupe, Wayne A., DOD | solia@bellsouth.net; Quimby, Deborah, DOD | N/A | Email re Oil Spill Tiger Team Update | Internal pre-decisional and deliberative discussion of policy issues related to the response | C1C002-000327-C1C002-000328 | N/A | Log 19 |
| C1C002-000432 | C1C002-000433 | 20100510 | DP | Stroupe, Wayne A., DOD | None Identified | N/A | Draft Talking Points for Gulf Oil Spill Response | Internal draft briefing papers for senior managers reflecting staff recommendations regarding policy decisions related to the response actions | C1C002-000431-C1C002-000433 | N/A | Log 15 |
| C1C002-000437 | C1C002-000438 | 20100517 | DP | Stroupe, Wayne A., DOD | None Identified | N/A | Memo re Permit Work Flow in Response to Deepwater Horizon Incident dated May 17, 2010 | Internal pre-decisional and deliberative draft document regarding policy issues related to the response | C1C002-000437-C1C002-000438 | N/A | Log 19 |
| C1C004-000168 | C1C004-000170 | 20100603 | DP | Fleming, Beth, DOD | Stroupe, Wayne A., DOD; Holland, Jeffery P, DOD; Cullinane, John M, DOD CC: Quimby, Deborah H, DOD; Martin, William D ERDC-CHL-MS | N/A | Email re NY Times Inquiry on Oil Spill Work - Possible ERDC Response | Internal pre-decisional and deliberative discussion of policy issues related to public outreach | C1C004-000168-C1C004-000170 | N/A | Log 19 |
| C1C004-000171 | C1C004-000173 | 20100603 | DP | Stroupe, Wayne A., DOD | Holland, Jeffery P., DOD; Cullinane, John M., DOD; Fleming, Beth, DOD; Quimby, Deborah, DOD; Martin, William D., DOD | N/A | Email re NY Times Inquiry on Oil Spill Work - Possible ERDC Response | Internal pre-decisional and deliberative discussion of policy issues related to public outreach | C1C004-000171-C1C004-000173 | N/A | Log 19 |

# Attachment C

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

September 16, 2011

**By Electronic Mail**
**By First Class Mail**

Sarah D. Himmelhoch, Esq.
Senior Litigation Counsel for E-Discovery
Environment and Natural Resource Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

Re: MDL 2179: Attorney Work Product Doctrine

Dear Ms. Himmelhoch:

I write to respond to your letter of August 24, 2011 (the "U.S. Letter"). While we are happy that our clients agree that Halliburton and Transocean must disclose more information than they have to date, it appears we may fundamentally disagree about the protections afforded attorney work product and the procedures in place for the disclosure of each side's expert opinions in this multidistrict litigation.

By way of context, BP has disclosed a large number of documents and large amount of data prepared before the shut-in of the well that relate to quantification of flow rates and spill volumes. BP witnesses have also testified in depositions concerning those issues.

After the well was sealed, and in anticipation of litigation that has since begun, BP's counsel commenced and directed a process to examine the available information on flow quantification, spill volumes and the opinions on those topics that had been made public by the United States, including the Flow Rate Technical Group. BP intends to present its position on quantification issues during Phase 2 of the MDL 2179 Limitation Trial, including via the submission of expert reports.

BP has never made public the details of its internal, privileged work on quantification. While your letter places emphasis on the fact that counsel for BP did make written and oral submissions to the Presidential Commission, as you know, those submissions raised a number of questions about the United States' volume estimates and emphasized the need for more work related to quantification of flow rates and spill volumes. As you also know, counsel for BP,

# KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
September 16, 2011
Page 2

together with one BP non-attorney employee (Trevor Hill) met with Commission staff to explain and answer questions with respect to BP's written submission. BP did this as part of its overall effort to be as cooperative as possible with the Commission, so as to facilitate the President's goals in establishing the Commission.

BP's Presidential Commission Comment was not made public by BP, but neither did BP seek to withhold it from the DOJ. Immediately after submitting it to the Presidential commission, BP offered to submit it to the DOJ, and at DOJ's request in fact did submit it. BP also offered to provide DOJ with the same briefing it had given to the Commission, but DOJ declined this offer.

The present issue under discussion has nothing to do with whether the United States may obtain BP's written submission to the Presidential Commission. It already has that submission. And to the extent the United States would like to know what BP employee Trevor Hill told Commission staff, it can seek to depose Mr. Hill and ask those questions directly.

Instead, the United States now suggests that by cooperating with the Presidential Commission, BP somehow waived its right to maintain confidentially regarding its internal attorney-directed work product on this important issue. That suggestion is misguided, and we urge you to reconsider and withdraw it.

We note in this regard that we understand that the United States is continuing to review its litigation position on flow volume and may or may not present at trial a position in line with the government position announced on August 3, 2010. Significantly, BP has not sought production of the United States' attorney work product related to this on-going work. Nor has BP contended that the United States has effected a subject matter waiver of the privilege otherwise covering these materials even though (i) the United States has previously issued public reports on the quantification issue, (ii) the United States complaint includes an allegation concerning the volume of oil discharged ("millions of barrels") and (iii) Mr. Underhill has told Judge Shushan that the Government's quantification work is on-going and as a result its spill volume number may be revised upward from the 4.9 million barrel figure previously announced. If BP were somehow required to produce BP attorney work product on quantification issues to the United States, fairness would dictate that the United States produce its analogous attorney work product to BP.

Nonetheless if you intend to pursue your request, we would submit that as a matter of law, the United States is not entitled to the documents it seeks.

## KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
September 16, 2011
Page 3

     As an initial matter, we note for the record that your letter and this dispute is not ripe. BP and the United States continue to conduct discovery. Any assertion that BP has improperly withheld documents can be meaningfully addressed only *after* BP has finished producing documents and preparing a privilege log. Instead of speaking prematurely and in the abstract about what is and is not privileged, the resolution of privilege disputes should occur only once a specific controversy about a specific document arises.

     More fundamentally, however, we believe your letter misunderstands the scope of the work-product doctrine. Even if the United States could identify at this juncture a document being withheld as work product, there is no legal basis for your letter's claim that such a privilege can be "overcome." U.S. Letter at 1. The United States already possesses BP generated raw factual data that could potentially be relevant to computing flow rates (*i.e.*, the technical readings of BP's measurement devices). Consequently, we understand the United States to seek access, not to BP's data, but rather BP's *interpretation* of that data. BP has no obligation to share such analysis that was created at the direction of counsel in preparation for anticipated litigation.

     In addition, your letter misunderstands BP's legal position vis-à-vis Halliburton and Transocean. The work-product doctrine does not protect investigations that were not conducted at the direction of counsel or in preparation for litigation, such as the investigations that produced BP's Internal Investigation ("Bly") Report or the analogous investigations commissioned and undertaken by Halliburton and Transocean. *See* Sept. 1, 2011 Order at 1 (No. 3894). What the work-product doctrine does protect is investigations that *are* directed by counsel to prepare for litigation. BP has not waived that privilege. While BP will readily produce all documents relating to the former category of investigations, it has no legal obligation to produce documents relating to the latter category. Nothing in the "logic" of what BP has said to Halliburton or Transocean, *id.*, is to the contrary.

     Each of these two points is further discussed below.

    I.    <u>**The Work-Product Privilege Has Not Been "Overcome."**</u>

     There is no basis for your assertion that the work-product doctrine has been "overcome." It is well-established that "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). After all, anything that compromises the sanctity of the "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible" components of an attorney's work product undermines the "interests of the clients and the cause of justice." *Id.* at 511. Likewise,

# KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
September 16, 2011
Page 4

"attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *United States v. Nobles*, 422 U.S. 225, 238-39 (1975).

To be sure, BP agrees that as a general matter raw factual data is not subject to attorney-client or work-product protection. But your letter requests much more than raw factual data, which BP has already provided to the United States through the Department of Energy. Accordingly, we understand that the United States seeks not BP's data, which it already has, but rather BP's *interpretation* of that data. That, of course, is a horse of a different color.

To the extent the United States requests BP's analysis and interpretation of underlying data, it is difficult to understand its need for such information. BP has no unique ability to *analyze* the relevant factual data. Indeed, the United States has developed its own flow rate estimates using a large team of government scientists drawn from the U.S. Geological Survey, three national laboratories, the Woods Hole Oceanographic Institute, and a host of other government agencies and non-government entities. Against this backdrop, the United States has no need—much less a "substantial need," FED. R. CIV. P. 26(b)(3)(A)(ii)—for BP's privileged analysis and interpretation of the relevant facts.

## II. BP Has Not "Waived" Its Work-Product Privilege.

We also disagree with your assertion that BP has "waived" its work-product privilege for "the analysis in BP's flow assessment documents" by "publicly promis[ing] that it would release its own flow rate estimates." U.S. Letter at 2. You cite as the source of this "promise" the Comment BP provided to the Presidential Commission, where BP stated that it "fully intends to present its own estimates as soon as the information is available to get the science right," and "[o]nce BP's technical team has access to the necessary data and information and has developed a flow estimate of its own, [BP] will share it with the Commission." *Id.* (quoting BP's Preliminary Response to the Flow Rate and Volume Estimates Contained in Staff Working Paper No. 3, at 2, 9). Based on that "promise," your letter claims that the work product privilege cannot apply because "the 'primary motivating force' behind [the material's] creation was [not] to aid in future litigation." *Id.* at 3 (quoting *United States v. El Paso Co.*, 682 F.2d 530, 542 (1982)). This argument misses the mark.

First and foremost, your letter significantly over-reads BP's statements in the Comment. BP does indeed expect to produce a flow rate analysis in the MDL litigation. BP has also been willing to entertain the idea of stipulating to a reasonable flow rate in discussions with the United States. But to say that BP has somehow promised to release "all documents relating to its

**KIRKLAND & ELLIS LLP**

Sarah D. Himmelhoch, Esq.
September 16, 2011
Page 5

estimation into the flow rate," U.S. Letter at 4, including specifically all *privileged* documents, goes beyond a fair reading of BP's Comments to the Commission.

This case, moreover, differs from *El Paso*. There, the question was whether routine "tax pool analysis" is attorney work product. The Fifth Circuit said no, because "[b]usiness imperatives, not the press of litigation, call these documents into being." 682 F.2d at 543. Here, pending and imminent litigation was clearly driving BP's flow rate efforts at the time it provided its Comment. After all, the flow rate analysis at issue was undertaken after the well was sealed and had no operational impact; was prepared by a group organized and functioning under the direction of counsel; and was created for the purpose of preparing for litigation of issues central to claims then expected to be filed (and that subsequently were filed) by the United States.

Your letter also wrongly asserts that "BP's public release of its technical critique of the FRTG/DOE Science Team estimates waived whatever work product protection applied at that time: the work product doctrine cannot be used as both a sword and a shield." *Id.* at 3-4. That is incorrect. For one thing, BP's Comment was not published on BP's initiative for general public consumption, as was the Bly Report and the Halliburton and Transocean equivalents of the Bly Report. Instead, the Comment was publicly released *by the Presidential Commission*, not BP.

Nor is it true that BP has waived anything by filing the Comment. "[M]ore than once, the Fifth Circuit has held that the mere voluntary disclosure of work-product to a third person is insufficient in itself to waive the work product privilege." *PBC Management, Inc. v. Roberson*, No. 10-798, 2010 WL 4553507, at *2 n.2 (E.D. La. Oct. 28, 2010) (citing *In re Grand Jury Proceedings*, 43 F.3d 966, 970 (5th Cir. 1994); *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989)). BP's Comment was induced by a specific request by the official Presidential Commission. In it, BP merely tentatively explained the flaws in the government's analysis and suggested where additional research was necessary. The Comment did not offer an affirmative case, and so was hardly a "sword," and in the absence of BP's comment, the Commission would have thought that the government's flow rate estimates were iron clad and undisputed. Nor will BP in any way seek now to use its Comment as a "sword" in Phase 2 of this multidistrict litigation. Rather, BP plans to present its position through well-qualified expert witnesses, whose reports you will timely receive and whose depositions you can take. The comment itself will not be part of BP's evidentiary showing, except perhaps if a need arises to rebut a mischaracterization of it by opposing parties.

To say that BP's attempt to clarify issues subject to imminent litigation can constitute waiver would chill parties' willingness to share critical information with official investigatory bodies. The work-product privilege "is an intensely practical one, grounded in the realities of litigation in our adversary system," *Nobles*, 422 U.S. at 239, and it ignores both reality and

KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
September 16, 2011
Page 6

commonsense to find waiver where a party responds to an investigatory body's request for information by pointing to issues for which additional research is necessary. In any event, the general rule is that disclosure of a document does not result in waiver of the work-product privilege on the subject matter of the document. *See, e.g.*, *Varel v. Banc One Capital Partners, Inc.*, No. CA3:93-CV-1614-R, 1997 WL 86457, at *2 (N.D. Tex. Feb. 25, 1997) ("a wholesale subject-matter waiver of work product protection 'should only be found when it would be inconsistent with the purposes of the work product privilege to limit the waiver to the actual documents disclosed'"). Accordingly, there is no basis for subject matter waiver here.

* * * *

In sum, we believe that the requests in your letter are premature, overbroad, and legally and factually unsupported. We would respectfully request that you reconsider and withdraw them. My BP co-counsel, Joel Gross, will soon contact you to see if our two sides can meet in person at a mutually convenient time and amicably resolve our differences of opinion on this important issue.

Sincerely,

Robert R. Gasaway

cc (via electronic mail):

    R. Michael Underhill
    Steven O'Rourke
    J. Andrew Langan, P.C.
    Don K. Haycraft
    Mark J. Nomellini
    Stuart A.C. Drake
    Joseph A. Eisert
    Joel M. Gross
    Allison B. Rumsey