# BECNEL LAW FIRM, LLC
ATTORNEYS AND COUNSELORS AT LAW
NOTARIES PUBLIC

DANIEL E. BECNEL, JR.*
DARRYL J. BECNEL
MATTHEW B. MORELAND
KEVIN P. KLIBERT
SALVADORE CHRISTINA, JR
CHRISTOPHER D. BECNEL
KATHRYN W. BECNEL*
TONI S. BECNEL
JENNIFER L. CROSE
MARISHA B. FRAAZA
Of Counsel
BRADLEY D. BECNEL
*Also Admitted in Colorado

Please Reply To:
☐ 106 WEST SEVENTH STREET
P.O. DRAWER H
RESERVE, LOUISIANA 70084
(985) 536-1186
(985) 536-7904
FAX (985) 536-6445
E-MAIL: dbecnel@becnellaw.com
www.becnellaw.com

☐ 425 WEST AIRLINE HIGHWAY
SUITE B
LAPLACE, LOUISIANA 70068
(985) 651-6101
(985) 652-3643
(985) 652-3668
FAX (985) 651-6104

Kay K. Serven
   Office Administrator
Susan B. Williams
   Nurse

Monday, March 19, 2012

## Public Comment On MOEX Proposed Consent Decree

In Re: - Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010; MDL 2179;
   - D.J. Ref. 90-5-1-1-10026.
   - (Proposed Consent Decree with MOEX; Court Pleadings #5743 and 5743-1)

Via e-mail: pubcomment-ees.enrd@usdoj.gov
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611

Via U.S. Certified First Class Mail, R.R.R. # 7005-1160-0000-6945-2095
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611

Dear Sir or Madam,

I submit this Comment in response to the "Notice of Lodging of Proposed Consent Decree under the Clean Water", regarding the above matter, published by the Department of Justice in the February 24, 2012 Federal Register (Vol. 77, No. 37; FR Doc. 2012-4368). I submit this as a citizen of Louisiana and of the United States; and an attorney of record with

1

*** "Exhibit 1" To Plaintiffs' Memorandum In Support Of Motion To Intervene ***

thousands of clients in the Deepwater Horizon matter. Further, I filed the first class action suits in the *Deepwater Horizon* multi-district litigation on behalf of private plaintiffs as private attorneys general that made claims under the "Citizens Suit" provisions of the Clean Water Act (33 U.S.C. Sec 1365) for violations and enforcement of the Clean Water Act by and against BP, plc; BP Exploration and Production, Inc.; BP America, Inc.; Anadarko Petroleum Corporation; Mitsui Oil Exploration Co., Ltd; et al.[1]

As you know, the proposal would settle the civil penalties of defendant MOEX Offshore 2007 LLC ("MOEX") under the Clean Water Act for $45 million[2]. This amount is very inadequate.

I request that the Department of Justice withdraw and withhold its consent to the proposed judgment because it is inappropriate, improper and/or inadequate for the following reasons.

1. **The Proposed Penalty Is Inadequate at Even the $1,100/Barrel Penalty Rate.**

2. **The Evidence Currently Known Indicates That The Incident Was An Act Of "Gross Negligence", Thereby Triggering the $4,300/Barrel Penalty Rate**

3. **The Proposed Settlement is Even More Inadequate at the $4,300/Barrel Penalty Rate.**

4. **The Proposed Settlement Does Not Adequately Consider the "Penalty Factors" Of The Clean Water Act.**

5. **MOEX's Lack Of Active Participation In The Drilling Operation Should Not Mitigate Its Liability.**

6. **MOEX's Settlement With BP In This Matter Was At A Much Higher Rate Than The U.S.'s Proposed Settlement.**

---

[1] Tom Garner v BP, plc; BP Exploration and Production, Inc.; BP America, Inc.; Anadarko Petroleum Corporation; Mitsui Oil Exploration Co. Ltd.; Transocean Ltd., Transocean Offshore Deepwater Drilling, Inc.; Transocean Deepwater, Inc.; Halliburton Energy Services, Inc.; and Cameron International Corporation f/k/a Cooper Cameron Corporation (E.D.La, Civil Action No.# 10-01482 )(for Louisiana residents); and

Grady Thigpen et al. v BP, plc; BP Exploration and Production, Inc.; BP America, Inc.; Anadarko Petroleum Corporation; Mitsui Oil Exploration Co. Ltd.; Transocean Ltd., Transocean Offshore Deepwater Drilling, Inc.; Transocean Deepwater, Inc.; Halliburton Energy Services, Inc.; and Cameron International Corporation f/k/a Cooper Cameron Corporation (S.D. Ms., Civil Action # 10-cv-280; and, after transfer to E.D.La., #10-cv-3273)(for Mississippi residents)

[2] The total amount of the Proposed Settlement is $90 million, as follows: $45 million to the United States, $25 million to the Gulf States affected by the spill, and $20 million for coastal environmental projects.

7. Conclusion.

### 1. The Proposed Penalty Is Inadequate at Even the $1,100/Barrel Penalty Rate.

The Clean Water Act provides for fines in a situation such as this from $1,100 per barrel spilled to, in the case of "gross negligence", $4,300 per barrel.

The U.S. has estimated the amount spilled to have been 4.1 million barrels[3].

MOEX owned a 10% in interest in the well.

If the fine were assessed at $1,100/barrel, the total fine would be $4.51 billion. Moex's 10% share would therefore be $451 million. The $45 million proposed settlement, however, would be only 1% of a $4.51 billion penalty against BP.

### 2. The Evidence Currently Known Indicates That The Incident Was An Act Of "Gross Negligence", Thereby Triggering the $4,300/Barrel Penalty Rate.

The Chief Counsel's Report of the Presidential Commission made several findings that could reasonably lead one to determine that the spill was the result of gross negligence:

> The Chief Counsel's team concluded that all of the technical failures at Macondo can be traced back to management errors by the companies involved in the incident. BP did not fully appreciate all of the risks that Macondo presented. It did not adequately supervise the work of its contractors, who in turn did not deliver to BP all of the benefits of their expertise. BP personnel on the rig were not properly trained and supported, and all three companies failed to communicate key information to people who could have made a difference.

Among other things:

> BP did not adequately identify or address risks created by last-minute changes to well design and procedures. BP changed its plans repeatedly and up to the very last minute, sometimes causing confusion and frustration among BP employees and rig personnel.

---

[1] On 2 August 2010, the United States Department of Energy and the Flow Rate Technical Group issued an estimate that 4.9 million barrels of oil had flowed from the Macondo well, and 4.05 million barrels had been discharged into the Gulf (the difference being the amount of oil captured by vessels on the surface as part of the well containment efforts). Its "Assessment of Flow Rate Estimates for the Deepwater Horizon/Macondo Well Oil Spill is available at: http://www.doi.gov/deepwaterhorizon/loader.cfm?csModule=security/getfile&PageID=237763 .

> When BP did send instructions and procedures to rig personnel, it often provided inadequate detail and guidance.
>
> It is common in the offshore oil industry to focus on increasing efficiency to save rig time and associated costs. But management processes must ensure that measures taken to save time and reduce costs do not adversely affect overall risk. BP's management processes did not do so.[3] (Emphasis added).

Further, the Chief Counsel's Final Report was but one of numerous reports, studies, and hearings that came to similar findings, including those by:

- the U.S. Coast Guard;
- the U.S. Mineral Management Service (now the Bureau of Ocean Energy, Management, Regulation and Enforcement);
- the Deepwater Horizon Study Group;
- the Final Report of the National Commission on BP Deepwater Horizon and Offshore Drilling; and
- numerous Congressional Committees.

Accordingly, in light of these factors, combined with MOEX's knowledge of BP's history of violations, it is very likely that a trial would result in a determination of "gross negligence" against MOEX as well as BP, thereby resulting in the increased fine of up to $4,300/barrel.

## 3. The Proposed Settlement is Even More Inadequate at the $4,300/Barrel Penalty Rate For Acts of "Gross Negligence".

If the fine were assessed at $4,300/barrel, and the total fine would be $17.63 billion. Moex's 10% share would therefore be $1.763 billion. The $45 million proposed settlement, however, would be only 0.26% of a $17.63 billion penalty against BP.

## 4. The Proposed Settlement Does Not Adequately Consider the "Penalty Factors" Of The Clean Water Act.

The Clean Water Act specifies several explicit factors that are to be considered when

---

[3] Executive Summary of Findings; Chief Counsels Report; National Commission on the BP Deepwater Horizon Oil Spill and Offshore Drilling, p. xi. Available at: http://www.oilspillcommission.gov/final-report

4

assessing a penalty[5]. Although this is a proposed settlement and not an assessment, there is

insufficient discussion of CWA's penalty factors. Without such, it is not possible to determine if the Proposed Settlement amount may be adequate. Therefore, the Proposed Settlement should be withdrawn and revised also to include a discussion of how the amount relates to the penalty factors.

### 5. MOEX's Lack of Active Participation in the Drilling Operation Should Not Mitigate Its Liability.

In the years immediately preceding the Deepwater Horizon incident, BP had accumulated by far the worst safety record of any major oil company. As noted in a study discussed on National Public Radio in the immediate aftermath of the explosion:

> BP's safety record has come under intense scrutiny ever since the blowout and resulting explosion at its Deepwater Horizon offshore oil rig led to the deaths of 11 workers, injuries to others, and the still uncontrolled spewing of tens of thousands of barrels of crude oil into the Gulf of Mexico.
>
> On Monday, the Center for Public Integrity reported that its analysis of Occupational Safety and Health Administration records for the energy giant revealed that it has racked up far more serious safety violations at its refineries than its competitors.
>
> In a report with the unambiguous title "Renegade Refiner: OSHA Says BP Has Systemic Safety Problem" the CPI, a Washington, D.C.-based watchdog group writes that 97 percent of the worst violations were found at BP refineries.
>
> An excerpt from its report:
>
>> BP is battling a massive oil well spill in the Gulf of Mexico after an April 20 platform blast that killed 11 workers. But the firm has been under intense OSHA scrutiny since its refinery in Texas City, Texas, exploded in March 2005, killing 15 workers. While continuing its probe in Texas City, OSHA launched a nationwide refinery inspection program in June 2007 in

---

[5] "In determining the amount of a civil penalty under paragraphs (6) and (7), the Administrator, Secretary, or the court, as the case may be, shall consider the seriousness of the violation or violations, the economic benefit to the violator, if any, resulting from the violation, the degree of culpability involved, any other penalty for the same incident, any history of prior violations, the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge, the economic impact of the penalty on the violator, and any other matters as justice may require."
33 U.S.C. § 1321(b)(8); ("Clean Water Act; Determination of Amount")

response to a series of fires, explosions and chemical releases throughout the industry.

Refinery inspection data obtained by the Center under the Freedom of Information Act for OSHA's nationwide program and for the parallel Texas City inspection show that BP received a total of 862 citations between June 2007 and February 2010 for alleged violations at its refineries in Texas City and Toledo, Ohio.

Of those, 760 were classified as "egregious willful" and 69 were classified as "willful." Thirty of the BP citations were deemed "serious" and three were unclassified. Virtually all of the citations were for alleged violations of OSHA's process safety management standard, a sweeping rule governing everything from storage of flammable liquids to emergency shutdown systems. BP accounted for 829 of the 851 willful violations among all refiners cited by OSHA during the period analyzed by the Center.

Top OSHA officials told the Center in an interview that BP was cited for more egregious willful violations than other refiners because it failed to correct the types of problems that led to the 2005 Texas City accident even after OSHA pointed them out. In Toledo, problems were corrected in one part of the refinery but went unaddressed in another. Jordan Barab, deputy assistant secretary of labor for occupational safety and health, said it was clear that BP "didn't go nearly far enough" to correct deficiencies after the 2005 blast.

"The only thing you can conclude is that BP has a serious, systemic safety problem in their company," Barab said.[6]

Aside from the Texas City explosion, for which BP pleaded guilty to felony violations of the Clean Air Act and a $50 million fine following the Texas City incident, other major recent major safety violations by BP include a series of accidents in 2000 at BP's Grangenouth, Scotland petrochemical facility and a 2006 rupture of a corroded pipeline at Prudhoe Bay, Alaska.[7,8,9]

---

[6] "BP Refinery Safety Record Industry's Worst: Watchdog", National Public Radio, by Frank James, May 17, 2010. Available at: http://www.npr.org/blogs/thetwo-way/2010/05/bp_refinery_safety_record_indu.html

[7] "BP's blemished safety record is off-limits in trial, judge rules", Times Picayune, by Mark Schleifstein, February 9, 2012.
Available at: http://www.nola.com/news/gulf-oil-spill/index.ssf/2012/02/judge_rules_bps_blemished_safe.html

MOEX was obviously willing to risk investing in a venture with BP while fully aware of BP's notorious and outstanding record of safety violations. It was a business decision MOEX considered and was willing to take. Accordingly, the fact that MOEX was not an active partner in the actual drilling of the well should not act as a factor to mitigate its culpability.

### 6. MOEX's Settlement with BP in This Matter Was at a Much Higher Rate than the U.S.'s Proposed Settlement.

MOEX settled BP's claims against it in this litigation for $1.065 billion (and MOEX's transfer of its leasehold interest, the worth of which is now highly questionable as a result of the explosion and the sealing of the well.[10]

BP has stated that its best estimate for its total cost for the spill is $37.2 billion.[11]

MOEX therefore has assumed responsibility with BP for 2.9% of BP's anticipated liability.

As noted above, however, the U.S. Proposed Settlement assesses MOEX for only (a) 1% of BP's fine (if fined at $1,100/barrel), or (b) 0.26% (at $4,300/barrel). Even using the lower $1,100/barrel formula, in other words, the U.S. Proposed Settlement assesses MOEX at only one-third the rate (1%) that MOEX settled with BP itself (2.9%)

---

[8] "Major incident investigation report BP Grangemouth Scotland: 29th May - 10th June 2000".
Available at: http://www.hse.gov.uk/comah/bpgrange/index.htm

[9] "Biggest Oil Field in U.S. Is Forced to Stop Pumping", New York Times: August 8, 2010.
Available at: http://www.nytimes.com/2006/08/08/business/08oil.html?pagewanted=print

[10] "Order and Reasons" (Regarding Motion in Limine to Exclude Settlement Evidence)", p. 2; February 7, 2012. Doc # 5603. As this Court noted: "The BP-MOEX settlement obligates MOEX to pay BP the sum of $1,065,000,000, transfer its 10% leasehold interest in MC252 to BP, and release BP from all claims related to the Deepwater Horizon incident. In turn, BP released MOEX from all of its potential claims against MOEX related to the incident and agreed to indemnify MOEX for any liability for numerous civil claims in this MDL. MOEX also agreed to release all of its claims against Anadarko and transfer to BP all of its third-party claims other than its claims against Anadarko or any claims under MOEX's offshore insurance policies. Additionally, the BP-MOEX settlement provides that BP will reimburse MOEX 5% of any recoveries in excess of $25 billion from third parties such as Transocean and Halliburton, up to the amount of $500 million."

[11] "BP Reaches Estimated $7.8 Billion Deal With Spill Victims", Bloomberg News, March 14, 2012...
Available at: http://www.businessweek.com/news/2012-03-14/bp-reaches-estimated-7-dot-8-billion-deal-with-spill-victims

7

## 7. Conclusion:

As Professor David Uhlmann of the University of Michigan Law School and the former chief of the Justice Department's environmental crime section judiciously stated, this was only a "modest settlement". [12]

Accordingly, I request that the Department of Justice withhold and withdraw its Consent to the proposed Settlement and Judgment.

Sincerely,

Daniel E. Beenel, Jr.

---

[12] (See "U.S Files Motion Seeking Moex Accord in BP Spill Case"; Bloomberg News; February 17, 2012;   Available at:  http://www.bloomberg.com/news/2012-02-17/u-s-files-motion-seeking-moex-settlement-in-bp-gulf-of-mexico-spill-case.html