UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" In the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * * * | CIVIL ACTION<br><br>MDL NUMBER:   2179<br><br>SECTION   J |
| | * * * * | Honorable CARL J. BARBIER |
| This document relates to:<br><br>10-CV-04573 | * * * * * * * | Magistrate Judge SHUSHAN |
| ****************************************** | * | |

# OPPOSITION OF BP DEALER PLAINTIFFS TO

# JOINT MOTION FOR PRELIMINARY APPROVAL OF

# CLASS ACTION SETTLEMENT AND RELATED RELIEF

-1-

Plaintiffs TOBATEX, INC. and M.R.M ENERGY, INC. ("BP Dealer Plaintiffs") oppose the joint motion of the Plaintiffs' Steering Committee and BP Defendants for Preliminary approval of Class Action Settlement (Rec. Docs. 6266 and 6269)[1] on two grounds:

1.      The BP Dealer Plaintiffs have not had an adequate time to review the moving papers and settlement documents which appear to have been served on April 18, 2012, and less than a week before the hearing. As a result, the hearing should be continued to permit an adequate time to review and submit a more fully reasoned response.

2.      The proposed settlement improperly discriminates against BP Dealers and their employees, particularly those who are located in "Gulf Coast Area," without any basis or explanation suggesting that the settlement is collusive as to BP Dealers. All claims of BP Dealers and their employees related to their work as such are specifically excluded from the settlement agreement while claims by all other branded and unbranded dealers (e.g. Chevron, Shell) are included in the settlement.

**1.      Inadequate Notice and an Opportunity to be Heard.**

According to Movants, the parties reached an agreement in principal on March 2, 2012. (Rec. Doc. 6266-1 @ P. 6) Approximately 45 days later on April 18, 2012, the PSC and BP Defendants jointly filed voluminous documents seeking an almost instantaneous preliminary approval by this Court of two settlements. On the same day these motions and supporting papers were filed, this Court entered an Order (Rec. Doc. 6279) setting a hearing for preliminary approval of both settlements for April 25, 2012.

---

[1]     It does not appear that the motion related to Rec. Doc. 6269 was ever served through Lexis Nexis and this opposition based upon a reading of the supporting memorandum.

The settlement agreements and moving papers are comprised of approximately 2,000 detailed pages, including two detailed proposed class notices. One must assume that most of the 45 day lapse was consumed in drafting the various papers filed with this Court which are expected to be reviewed and understood on a moment's notice. No one can seriously be expected to read, digest, and analyze such lengthy, complicated and detailed documentation in that short of time and then prepare opposition with sufficient time for this Court to consider that opposition before the hearing.

BP Dealer Plaintiffs submit that this schedule provides an insufficient time to (i) review the documents filed, (ii) determine how the various classes are affected by the settlement and whether fundamental unfairness exists, (iii) communicate with clients and (iv) present cogent objections where warranted sufficiently in advance of the hearing to permit a meaningful review. This is simply a rush to judgment and the BP Dealer Plaintiffs submit that it is a denial of due process by providing an insufficient opportunity to respond.

For the foregoing reasons, it is respectfully requested that the April 25 hearing be continued for 30 days.

> 2. **BP Dealers and their Employees Are Prejudiced by the Proposed Settlement.**
>
> A. **Background.**

On December 16, 2010, the BP Dealer Plaintiffs filed their complaint herein which was given the case number 10-CV-04573. The complaint was filed as a class action and seeks relief for all BP and ARCO dealers in the United States and not simply those in the Gulf Coast Area.[2]

---

[2] ARCO is one of BP's brands.

To the extent not previously stayed, this action was stayed from inception pursuant to Paragraph 8 of Pre-Trial Order 25 (Rec. Doc. 983).  There has been no motion practice or responsive pleadings filed to date.  Instead, the BP Dealer Plaintiffs were told to sit and wait while the PSC prosecuted claims on their behalf.

The claims asserted by the BP Dealer Plaintiffs in their complaint primarily involve the tortious destruction of the BP "brand" by the defendants based which primarily occurred on dry land in the corporate offices of the defendants and which generated widespread negative publicity damaging the BP brand.  These claims are not maritime claims nor oil pollution act claims and the BP Dealer Plaintiffs have not alleged any such claims.  They are more akin to the securities claims of BP's shareholders whose "branded" shares were also damaged.

It is alleged that BP and the other named defendants owed the BP Dealers a duty not to damage or destroy the BP brand, that they negligently took actions and caused or knew that their actions would be widely publicized in a manner which substantially damaged the BP brand and logo, and that as a result of this conduct and publication thereof the BP Dealers suffered both economic damages to their businesses and property and in some instances physical property damage and personal injuries caused by assaults and other conduct by a highly angered consuming public whose reactions were clearly foreseeable.  Thus, a dealer located in San Francisco may easily have suffered greater damages than a dealer located in Venice, Louisiana.

However, included within the class definition contained in the BP Dealer Plaintiffs' complaint are independent BP dealers who are located in the Gulf Coast Area.  Those dealers not only suffered damages from the injury to the BP brand but they suffered the same type of damages suffered by non-BP brand dealer/competitors such as Chevron, Shell, Exxon, etc.

The BP Dealer Plaintiffs' complaint does not assert claims on behalf of the BP Dealers' employees.  Certainly, some of these employees either lost their jobs or had their hours reduced as a result of BP's tortious conduct.  Some may also have suffered personal injuries while working such as might result from exposure to chemicals used to combat the oil spill.  Only the PSC is charged with looking out for their interests.

From the outset, this Court placed the PSC in charge of filing bundled pleadings to essentially consolidate all of the various claims so that common issues could be decided expeditiously.  All other actions, including the BP Dealer Plaintiffs action, were stayed.

The PSC's bundled pleadings asserted claims or purported to assert claims which would include some of the claims of the BP Dealers and some of the claims of the BP Dealers' employees.  The PSC never asserted in its bundled pleadings the "brand" damage claims asserted in the BP Dealer Plaintiffs' complaint, although the PSC was aware that such claims had been asserted by the BP Dealer Plaintiffs.  Nor did the PSC's bundled pleadings assert the claims of employees of BP Dealers either for economic loss or personal injuries arising out of the damage to the BP brand and logo.

The PSC's bundled complaints generally did assert claims of service station owners, operators and employees who suffered damages related directly to the Deepwater Horizon disaster.  For example economic damage claims were asserted by dealers who lost income because tourists did not come to the Gulf Coast Area and purchase products and services.  Economic and on-the-job personal injury claims of employees who lost income and suffered injuries were also included in the bundled pleadings.  As to all of these claims, the bundled pleadings did not differentiate based on "brand."  All brands were included.

As noted in the moving papers, defendants filed numerous motions to dismiss claims asserted in the bundled pleadings. On August 26, 2011, this Court issued its order granting in part and denying in part those motions to dismiss. (Rec. Doc. 3830) This order in dismissing the state law claims placed in substantial doubt the viability of the economic claims which the PSC had asserted on behalf of most non-BP service station dealers and their employees. This order did not address the "brand" claims asserted in the BP Dealer Plaintiff's complaint and the nature of those claims suggested that a similar ruling was unlikely since those claims were not maritime or OPA claims but arose out of non-maritime, dry-land tortious conduct.

**B.     The Settlement Agreements and There Discriminatory Effects on BP Dealers and Employees.**

A review of the Settlement Agreements starts with the Class Definitions begin with certain geographic limitations defined as the Gulf Coast Areas and Specified Gulf Waters. Such a limitation may be appropriate when examining the causal connection of tourism based claims of businesses and their employees generally. However, the nature of the "brand" claims asserted in the BP Dealer Plaintiffs' complaint are not causally connected to a geographic location. Notwithstanding, the BP Dealer Plaintiffs do not object to the geographical limitations since they apply equally to all service station dealers and the BP Dealers located outside the Gulf Coast Area will still be permitted to pursue their claims.

The Class Definitions then include virtually every person or entity who worked, lived, owned property or gained a livelihood within the Gulf Coast Areas or Specified Gulf Waters regardless of whether those persons or entities have or had a maritime or OPA claim. Thus, <u>all</u> service station dealers and their employees are included within the Class Definition because a

service station dealer and their employees are not included in the Oil and Gas and Support Services to Oil and Gas Industry categories listed in Exhibits 16, 17 and 19.  Moreover, the "Deepwater Horizon Incident" is defined to include "BP public statements. . . ." and the publicity was a contributing factor in the decrease of tourism.  (See Economic Damages Settlement Agreement Paragraph 38.43)

As a result of these Class Definitions, the Economic Damages Settlement Agreement provides recoveries to the Chevron and Shell dealers located in the geographic area and also to their employees.  Clearly, these dealers suffered losses when tourists did not flock to the Gulf Coast for their vacations and buy gas and other products from these dealers.  Equally clearly, some station employees lost their jobs or had their hours reduced when the tourists failed to show and had similar problems in light of the ruling on the motions to dismiss. However and assuming these dealers did not have tar balls roll up on their stations, these claims may not have even been viable following this Court August 2011 order.

Normally, the BP dealers in the Gulf Coast Areas and their employees would have been included in the Class Definitions would have been included in this settlement.  However and apparently as an afterthought, Paragraph 2.2.4.8 of the Economic Damages Settlement Agreement specifically excludes "Any entity selling or marketing BP-branded fuel. . ."[3]   This provision excludes the claims of a BP dealer in the geographic area even though the claims of the Shell dealer across the street is included.

---

[3]   It is not entirely clear whether individuals employed by entities who are BP dealers are also excluded but Paragraph 1.3.1.9 suggests that individual claims related to employment with BP dealers is also excluded.

Nowhere in the settlement agreements or in the moving papers is there any justification or even discussion as to why BP Dealers and their employees located in the Gulf Coast Areas or the Specified Gulf Waters are excluded from the settlement, particularly when their competitors in the same area are included.  This Court should satisfy itself that there is a lawful basis for this discrimination before approving the settlement, even preliminarily.

Since the settlement was first announced in March, attempts by the BP Dealer Plaintiffs to communicate with the PSC, Liaison Counsel, Interim Class Counsel and Counsel for the BP Defendants have been met with silence from all who participated in drafting the Settlement Agreements.  Such silence infers collusion.

BP Dealer Plaintiffs submit that there is no basis in fact or law for excluding the BP Dealers, particularly those located in the Gulf Coast Areas or Specified Gulf Waters, or their employees from this settlement.  Since no justification has been provided by either the PSC or the BP Defendants, there exists the inference of collusion which taints the entire settlement.

BP Dealers had absolutely nothing to do with the Deepwater Horizon disaster.  They are victims, just like the Chevron or Shell dealer.  Their only "affiliation" with BP is that they have contracts permitting them to use the brand, obligating them to protect the brand and authorizing them to purchase and sell BP branded motor fuels.  All are independent owners.  Many have only a single station.  All have been damaged by the public outrage at the highly publicized tortious conduct of the BP defendants.  They and their employees deserve to be included in the settlement and their exclusion taints the settlement process, absent some cogent basis for which none has been given.

3. **Conclusion.**

BP Dealer Plaintiffs seek a 30 day continuance of the hearing on Preliminary Class Approval and other relief sought by the Joint Motion of the PSC and the BP Defendants. Based upon the length of the moving papers and the seriousness of the settlement, there should not be a rush to judgment. If the settlement requires modification, then that should be done before any notices are sent to the class.

BP Dealer Plaintiffs also seek to remove the exclusion from the Settlement Agreements which exclude the claims of the BP Dealers and their employees. The exclusion is discriminatory and without any justification or basis in law or fact. The claims of the BP Dealers are substantial and certainly have more merit than those of their competitors who did not have to withstand the public outrage caused by the misconduct of the BP Defendants. Moreover, their claims do not rest on their proximity to the Gulf Coast. Their claims rest on the national public perception of BP.

**RESPECTFULLY SUBMITTED BY:**

(s) Samuel T. Rees

Samuel T. Rees (LA Bar No. 30203)
26 Muirfield Place
New Orleans, Louisiana 70131
Telephone: (213) 220-9988
Fax: (323) 874-1234
STReesEsq@earthlink.net

AND

Thomas P. Bleau (CA Bar No. 152945)
Martin R. Fox (CA Bar No. 155783)
Bleau Fox
A Professional Law Corporation
3575 Cahuenga Boulevard West, Suite 580
Los Angeles, CA 90068
Telephone: (323) 874-8613
Fax: (323) 874-1234
tbleau@bleaufox.com
mfox@bleaufox.com

Attorneys for Plaintiffs and Plaintiff Class

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing have been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of April 2012.

      /s/ Samuel T. Rees
      Samuel T. Rees