**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" in | : | |
| the GULF OF MEXICO, on | : | SECTION:  J |
| APRIL 20, 2010 | : | JUDGE BARBIER |
| | : | MAG. JUDGE SHUSHAN |
| RELATES TO: 10-2771 | : | |
| | : | JURY TRIAL DEMANDED |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**STATEMENT OF CAMERON INTERNATIONAL CORPORATION CONCERNING**
**EFFECT OF PROPOSED ECONOMIC DAMAGE SETTLEMENT ON TRIAL PLAN**

Cameron respectfully submits this statement to address the proposed class settlement between BP and the PSC concerning economic loss ("Economic Damage Settlement," Doc. 6276-1) and its effect on the current trial plan (Amended PTO No. 41, Doc. 4083).  In short, the settlement, if approved, would change which parties will pursue particular theories of liability and defense at the Phase 1 trial, but would not remove any issues from the trial.  Accordingly, the Court does not need to revise the trial plan.[1]

In the following statement, Cameron will use the terms "settlement" and the "settling class" even though it acknowledges that the settlement is only proposed and that the settling class is only a "putative" class.

---

[1] In submitting this statement, respectfully, Cameron does not waive and still insists upon its position that (1) under the Seventh Amendment, the claims against it may not be properly adjudicated in a bench trial; and (2) allocation of fault to it may not be properly adjudicated (a) on an "incident-wide" basis or (b) in the absence of (i) individualized proof that Cameron's conduct or inaction was a proximate cause of injury allegedly suffered by a claimant or (ii) individualized proof that a claim for economic damages satisfies the "economic loss" doctrine.  *See* Docs. 1940, 2124, and  2667.  Nor, respectfully, does Cameron waive its position that OCSLA and OPA preclude the application of maritime law to the claims against Cameron to be adjudicated in this limitation proceeding and, in particular, that OCSLA and OPA preempt the recovery of punitive damages against Cameron as a matter of law.

I.      **Key Terms of the Settlement**

As Cameron understands the Economic Damage Settlement, the key terms affecting the Phase 1 trial appear in the class definition of Section 1 and the release provisions of section 10 and the assignment terms contains in section 11 and Exhibit 21.

The definition of the settling class does not include all the claimants in this proceeding. It even excludes some claimants, like in-state Florida residents and all real estate developers, that have asserted claims properly assigned to the B1 pleading bundle.  *See* §§ 1.1, 1.2.1, 2.2.4.7. Under § 2.2.5, the settling class does not include any governmental organization included in pleading Bundle C, such as the States, the entities joining the Local Government Master Complaint, or those entities filing a separate lawsuit.  Finally, section 2.2.2 excludes Defendants' employees, and section 3.1 expressly excludes bodily injury claims.  Consequently, the injury and death claims of pleading Bundle A are not affected by the settlement.

Section 10.1 fully releases the claims of the settling class against the Released Parties for Released Claims.  The Released Parties include all remaining defendants (including Cameron) other than the Transocean and Halliburton parties.  Section 10.3, Exhibit 20.     Under Section 10.2, Released Claims include all claims under any law for "compensatory" or "punitive" or "exemplary" or other "non-compensatory" damages against the Released Parties.  Under Section 10.2 (and §§ 3.6., 3.7 and 10.3), however, the settling class's claims "for punitive or exemplary damages against Halliburton and Transocean are reserved."

Section 1.1.1 of the Assignment further confirms the agreement of the settling class that the  payments to be made under the Economic Damage Settlement "constitute full, complete and total satisfaction of all of their Compensatory Damages against the Transocean parties and the Halliburton Parties."  Section 1.1.2.2 prohibits the settling class from seeking indirectly to collect

or recover compensatory damages from Transocean or Halliburton, but reconfirms the rights of the class "to pursue Transocean and Halliburton for exemplary and punitive damages."

Section 1.1.3 of the Assignment then assigns to the settling class certain of BP's "claims and causes of action against Transocean and Halliburton (but no other party) arising out of the" Deepwater Horizon incident.  The assigned claims encompass BP's direct tort claims for damage to the Macondo well, reservoir, and leasehold, as well as the costs of well control, and all BP claims for "punitive, exemplary, multiple, or non-compensatory damages."  Sections 1.1.3.1, 1.1.2.3, 1.1.3.3, 1.1.3.6.  The assigned claims also include BP's claims for subrogation and contribution.  Sections 1.1.3.4, 1.1.3.5.

In summary, under the settlement, the settling class will not be pursuing compensatory damage claims against any remaining defendant, and will not be pursuing punitive damage claims against BP or Cameron.  But the settling class will be pursuing the assigned claims against Transocean and Halliburton that BP was originally pursuing, in addition to the reserved punitive damage claims that the class members were originally pursuing.  As a consequence of the assignment agreement, the settling class will have a direct stake in the allocation of fault among the remaining defendants as it pursues recovery from Transocean and Halliburton under the assigned contribution and subrogation claims of BP.  Moreover, the other claimants – the States, the local government claimants, and the personal injury claimants, as well as the economic loss claimants excluded from the Economic Damage settlement class – will continue to pursue their claims against all the remaining defendants, leaving the same set of issues to be resolved.

**B.      The Phase 1 Trial**

Under the trial structure as currently planned (Doc. 4083), the "Trial will address all allocation of fault issues that may properly be tried to the Bench without a jury, including the negligence, gross negligence or other bases of liability of, and the proportion of liability allocable to, the various defendants, third parties, and non-parties with respect to the issues." Each of these issues will still be tried after approval of the settlement.  The Economic Damage Settlement Class, Transocean, and Halliburton will all need to try fault and allocation of liability among the various defendants, third parties and non-parties.   Moreover, all non-settling claimants and all remaining defendants would still try the bases of liability of the remaining defendants for both allocable compensatory damages and non-allocable punitive damages. Cameron, therefore, can see no reason to alter the overall trial structure as a consequence of the settlement.

Nor can Cameron see a reason to recast the various Phases of trial.  All of the claimants and all the remaining defendants – BP, Transocean, Halliburton, Cameron and M-I – are still involved in Phase 1.  The three phases not only will allow an orderly presentation of evidence, but also retain the possibility that particular parties can be relieved of participation in later phases.  Cameron therefore believes that consolidation of the first two trial phases would be imprudent.

There should likewise be no need to revise the order of proof for the Phase 1 trial. Claimants still need to present their evidence **first**.  To be sure, the settlement, if approved, may leave the settling class with more evidence to present than would have been presented in the absence of the assignment, but that evidence against Transocean and Halliburton should still be presented at the outset.  All claimants should present their evidence **first** as originally planned.

4

Transocean should still present its evidence **second**.  The settlement should not impact Transocean's presentation of evidence.  All the claims against Transocean and all of its defenses remain to be tried.

After the court's grant of summary judgment in favor of Weatherford and Dril-Quip and its order permitting Anadarko not to participate in Phase 1, there are fewer defendant parties to present their evidence.  And BP may have less evidence to present if the assignment of its claims to the settlement class is effective.  But the settlement should not impact Halliburton's or any other defendant's presentation of evidence.  The remaining defendants should still present their evidence **third** in the order.

Finally, it still makes sense for the claimants' rebuttal evidence to be presented **fourth.**

## III.  Trial Schedule

Because there is no need to revise the trial plan, Cameron would prefer to proceed immediately with the Phase I trial.  However, Cameron does not oppose BP's position that the trial should be adjourned pending final approval of the proposed class settlements.  The assignment terms of the settlement appear to make it inadvisable to proceed with trial any earlier. Respectfully submitted,

*/s/ David J. Beck*

5

David J. Beck, T.A.
 *dbeck@brsfirm.com*
Joe W. Redden, Jr.
 *jredden@brsfirm.com*
David W. Jones
 *djones@brsfirm.com*
Geoffrey Gannaway
 *ggannaway@brsfirm.com*
BECK, REDDEN & SECREST, L.L.P.
One Houston Center
1221 McKinney St., Suite 4500
Houston, TX 77010
Phone: (713) 951-3700
Fax: (713) 951-3720

Phillip A. Wittmann, 13625
 *pwittmann@stonepigman.com*
Carmelite S. Bertaut, 3054
 *cbertaut@stonepigman.com*
Keith B. Hall, 24444
 *khall@stonepigman.com*
Jared Davidson, 32419
 *jdavidson@stonepigman.com*
STONE PIGMAN WALTHER
WITTMANN L.L.C.
456 Carondelet Street
New Orleans, Louisiana  70130
Phone: (504) 581-3200
Fax: (504) 581-3361

*Attorneys for Cameron International Corporation*

## CERTIFICATE OF SERVICE

  I hereby certify that the above and foregoing document has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of April, 2012.

       */s/ David J. Beck* _____
       David J. Beck