# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

300 North LaSalle
Chicago, Illinois 60654

Mark J. Nomellini
To Call Writer Directly:
(312) 862-2410
mark.nomellini@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

April 24, 2012

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Room B345
500 Poydras Street
New Orleans, LA  70130

Thomas A. Benson
U.S. Department of Justice
Environment and Natural Resource Division
P.O. Box 761
Washington, DC 0044

> Re:    MDL 2179:  Follow-Up To Mr. Gasaway's Letter of April 13; Response
> to Mr. Benson's Letter

Dear Judge Shushan and Tom:

I write regarding two related subjects:  (1) to follow up on Rob Gasaway's letter to Sarah Himmelhoch of April 13 (attached), concerning the U.S. privilege log; and (2) to respond to Tom Benson's letter of April 23, concerning the BP privilege log.

**I.    U.S. Privilege Log/Follow Up on Rob Gasaway's Letter of April 13**

As you know, on April 13, Rob Gasaway sent the attached letter to the Court and to Sarah Himmelhoch, including an excel chart with 13,991 documents representing BP's rough guesses as to which U.S. privilege log documents relate to quantification.  That letter asserted that, notwithstanding BP's rough guesses, the burden is on the U.S. to identify which entries on the U.S. privilege log in fact relate to quantification.  BP respectfully requested that the U.S. identify those quantification documents.  As BP explained during the April 12 teleconference and in the April 13 letter - only the U.S. can see the underlying documents associated with the U.S. privilege claims, to verify whether they relate to quantification.  *See* 4/13 Gasaway Ltr. at 2 ("This also makes sense in practice, for the United States is much better able than BP to identify Quantification documents referenced on its logs - after all, the United States can inspect withheld documents, while BP cannot.")

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
Thomas A. Benson
April 24, 2012
Page 2

In its April 23 letter, the U.S. states:

Tellingly, BP was able to go through the United States privilege log and identify a subset related to flow rate.  The United States would like to do the same, but cannot do so with any confidence.

The U.S.' statement that "BP was able to go through the United States privilege log and identify a subset related to flow rate" is inaccurate, insofar as it suggests that BP's list of 13,124 documents contains anything other than a "rough estimate" as to which documents on the U.S. log relate to quantification.  BP said the following on March 23 when it provided the list of potential quantification entries, at the U.S.' request:

As emphasized yesterday morning, BP views this list as very preliminary and subject to change. We do not believe the list contains all privilege log entries that reflect Quantification documents withheld by the United States under claims of deliberative process privilege. Nor do we believe the list exclusively reflects such documents. What we do think is that this represents a respectable rough-and-ready cut, even though it will ultimately be proven both under- and over-inclusive. We provide it, at the Court's request, with these understandings.

Indeed, during the April 12 call with the Court, the U.S. made the point that Mr. Petrino's "rough estimate" list of potential quantification entries on the U.S. log in fact proved to be *overinclusive*, because it contains many documents relating to source control and other non-quantification topics.  During the same April 12 call, BP made the point that Mr. Petrino's list is also *underinclusive*, because BP was not able to identify all the quantification documents based on the U.S. log.

For these reasons, Mr. Gasaway's April 13 letter requested that the U.S. identify which of the documents on its logs in fact relate to quantification.  We have not yet received a response to that letter.

As discussed below, we understand that the U.S. is now concerned with identifying which documents on *BP's* logs relate to quantification.  As the Court has often made clear, the door swings both ways, and the goal is to move the process forward as quickly as possible.  We are willing to provide this subject matter information for the BP logs (by identifying which documents relate to quantification and/or flow rate for the Macondo well), provided that the U.S. is willing to agree to Mr. Gasaway's request to identify which documents on the U.S. logs relate

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
Thomas A. Benson
April 24, 2012
Page 3

to quantification.  We believe that the mutual identification of quantification documents will help the parties put the privilege log process in the "done bucket."

## II.     BP Privilege Log/Response to Mr. Benson's Letter of April 23

### A.     The Goal Of Privilege Logs.

BP disagrees with the U.S.' assertions regarding the sufficiency of BP's privilege logs. As an initial matter, however, BP notes that the descriptions on the privilege logs do not have independent evidentiary value.  Instead, they serve a function:  to enable the parties to confirm that privileged documents are withheld, while non-privileged documents are produced.

BP Privilege Assertions

BP's privilege assertions have repeatedly been tested in MDL 2179.  And, in all cases, BP privilege claims have been sustained.  For example:

- On April 8, 2011, the Court reported on its review of a random sample of 100 documents designated as privileged by BP, and noted that BP's redactions had been "surgical."

- On March 24, 2011, the Court upheld BP's privilege claims with respect to a memorandum drafted by Mike Nash.

- On May 17, 2011, the Court upheld BP's privilege claims with respect to the Baxter Investigation documents.

- On October 19, 2011, the Court upheld BP's privilege claim with respect to BP-HZN-2179MDL03716673-4.

U.S. Privilege Assertions

Thus far, BP has challenged 100 claims of deliberative process privilege by the U.S., so that they could be evaluated by the Court.  The U.S. elected to produce all 100 documents.

### B.     PTO 14

PTO 14 was negotiated over a period of several weeks and hearings before the Court. The final order required the parties to provide various categories of information, including:  (1) a statement of the ground(s) alleged for withholding such document; (2) the date of the document

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
Thomas A. Benson
April 24, 2012
Page 4

or communication; (3) the identity of its author and signatories and to whom it was sent; (4) whether the asserted privilege(s) also applies to any attachments; (5) an indication of all authors, signatories or recipients of the document who are attorneys; (6) a statement as to whether the entire document has been redacted/withheld or only a portion has been redacted, and the bates number of the redacted document; and (7) a description of the withheld document, communication or tangible thing in a manner that, without revealing information claimed privileged or protected, will enable a party to assess the validity or efficacy of the privilege claim.

There is no dispute that BP has provided categories (1)-(6) here. Those categories were included in PTO 14 for good reason: information about author, recipient, date, type of privilege, redactions, and whether attorneys are copied on the log are all important in assessing privilege. The U.S. does not dispute that it received these useful categories of information.

In his letter of April 18, Mr. Benson also requested that BP provide additional "title and/or subject matter information." But PTO 14--which was the subject of substantial debate among the parties--does not require "title and/or subject matter"; rather, the seventh and final category of information required by PTO 14 is "a description of the withheld document" that "will enable a party to assess the validity or efficacy of the privilege claim."

Do BP's privilege logs descriptions "enable a party to assess the validity or efficacy of the privilege claim"? The proof lies in the twelve-plus months of negotiations between BP and the PSC regarding BP's assertions of privilege. Since January 2011, BP has served 63 privilege logs. BP and the PSC held over 20 meet-and-confer meetings on privilege issues. The scripts for those 20-plus meet-and-confer sessions were BP's privilege logs. The PSC successfully used BP's logs to challenge BP's assertions of privilege. And the PSC never claimed that BP's descriptions were insufficient to enable the PSC to assess the validity of BP's privilege logs. BP believes that, if the U.S. were to engage BP in meet-and-confer discussions, the U.S. would reach the same conclusion as the PSC. To the extent that the U.S. seeks more information about any particular privilege log entry in connection with those meet-and-confer sessions, BP is willing to provide it (so long as there is no disclosure of privileged information), just as BP repeatedly did for the PSC.

## C.      BP's Offer Of Compromise

The U.S. has indicated that it would like "to go through the [BP] privilege log and identify a subset related to flow rate," but "cannot do so with any confidence." In the interests of

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
Thomas A. Benson
April 24, 2012
Page 5


compromise, BP will agree to identify the documents on its privilege log that relate to quantification and/or flow rate from the Macondo well, provided that the U.S. will do the same.

*****

   For the foregoing reasons, and to move the process forward, BP respectfully suggests that the U.S. agree to BP's proposed compromise:  namely, that both parties identify the entries on their privilege logs that relate to quantification.


        Sincerely,


        /s/ Mark J. Nomellini

Attachments

cc (via electronic mail):

R. Michael Underhill
Steven O'Rourke
Sarah D. Himmelhoch
Robin L. Hanger
A. Nathaniel Chakeres
Brian H. Barr
Joel M. Gross
Allison B. Rumsey
Don K. Haycraft
Plaintiffs' Liaison Counsel
Defense Liaison Counsel (dsc2179@liskow.com)