

GCCF        Gulf Coast Claims Facility
                    www.GulfCoastClaimsFacility.com

October 25, 2010

Mr. George H. Sheldon
Secretary
State of Florida
Department of Children and Families
1317 Winewood Boulevard
Tallahassee, FL  32399-0700

Dear Secretary Sheldon:

     I am in receipt of your letter, dated October 21, 2010, and hasten to respond. Since I plan to attend the October 28 meeting of the Economic Recovery Task Force, I welcome very much your comprehensive letter flagging important issues that you perceive as critical to the ultimate success of the Gulf Coast Claims Facility ("GCCF").

     First, you state that, when it comes to the GCCF, "the process is clearly broken." I disagree. In just two months, the GCCF has paid over 84,000 claimants in excess of $1.57 billion. In Florida alone, I have authorized payments for 33,634 Floridians – both individuals and businesses – totaling just over$535,000,000. Listening carefully to the recent criticism by your Task Force and others, I have recently eliminated any GCCF eligibility requirement tied to geographic proximity. The GCCF has also accelerated the payment of claims and accepted certain claimant assumptions that have resulted in increasing the generosity of the Program. And, this has all been accomplished through an emergency payment program that does not require any claimant to waive or release any rights that may exist in court against BP or any other defendant.

     You also state in the third paragraph of your letter that "over half of the claims filed by Floridians have not been resolved, with over 15,000 claims under review and another 15,000 or so claims apparently requiring additional documentation. Even worse the backlog is growing." You are wise to stress the word "apparently;" the fact is, that, of the 30,000 claims you mention, over 18,434 of these have been submitted <u>with no documentation whatsoever accompanying the claim form</u>. This is not a problem of inadequate documentation; it is a problem of no documentation! One may reasonably question whether these claims will ever be documented and whether they will ever be eligible for payment.



EXHIBIT
9

The recent flood of undocumented filings with the GCCF highlights one obvious fact – that the citizens of Florida see some value in submitting their claims to the GCCF in the hope of receiving compensation. You may deem the system "clearly broken;" but, based on the recent spike of filings (with some 50% of the total volume of GCCF filings arriving since October 1) I do not believe that the citizens of Florida agree with you. Statistics do not lie. The filing rate and payment amounts speak for themselves.

Nevertheless, I do agree with you that your thoughtful letter points out areas of concern; the GCCF process is far from perfect and I am continuing to make corrections designed to make the process more efficient and effective. I respond as follows to some of your constructive criticisms:

1) <u>Missing Explanations</u>
   The Program must be made more transparent so that claimants have a better understanding of the status of their claims and the reasons underlying the determinations and decisions of the GCCF. We are expanding the information available to claimants both through the site offices, the Call Center and online to provide claimants with better explanations of the status of their claim as well as an explanation of the emergency payment calculation. We have made these enhancements to the system and continue to work to improve the information flow to claimants. I am also planning to retain the services of more GCCF local individuals "in the field," at the various claim sites throughout the Gulf, to assist claimants in responding to their inquiries. This will be accomplished within the next few weeks.

2) <u>Adding Sufficient Resources</u>
   Contrary to your assertion, the GCCF does not confront "a substantial backlog in claims." There are two reasons for the current number of unprocessed claims: (1) total lack of documentation prohibiting processing and (2) submission of most of the pending claims after October 1. Both of these issues have been addressed. Claimants lacking adequate documentation for their claims have been notified; and we are currently processing those claims that arrived after October 1. "Additional resources" are not the issue.

3) <u>The Need to Refile</u>
   You have a fundamental misunderstanding of the GCCF filing process. This process is made expressly clear on the GCCF website and on the Claim Form itself. As over 255,000 claimants understand, a new claim form is necessary to provide the GCCF with additional information from each claimant concerning up to six months of damage (not just one month); in addition, the new claim form is necessary to provide

information regarding where and in what manner the claimant wishes to receive the GCCF payment. There is no need to refile any individual claimant's documentation previously submitted to BP. That documentation has been transferred to the GCCF. Over 255,000 claimants have complied with these easy filing requirements; there is no issue concerning filing procedures. As you point out in your letter, the problem is not "refiling" or ease of access to the GCCF; the current problem is the flood of claims being submitted to the GCCF, most with woefully inadequate documentation.

4) <u>The "More Generous" Criteria</u>
As I believe you must admit, the GCCF emergency payments to date have been much more generous than could possibly be attained in the courtroom. We have paid some 83,943 claimants; 87% <u>of these claimants received either the amounts requested in the individual claim forms, or an amount in excess of that requested</u>. What better evidence of generosity? The Oil Pollution Control Act ("OPA") is merely the starting point for my consideration of both eligibility and damage calculations; I believe I have gone further than OPA in finding eligibility and in calculating payments. But it is one thing to "give a claimant the benefit of the doubt on causation or damages with marginal proof;" it is something quite different when the claimant provides no documentation whatsoever. We certainly are not bound by any judicial doctrines such as "hearsay" or "authenticity." And, we are using methodologies designed to maximize the likelihood that a claimant will be found eligible and receive the maximum payment.

5) <u>Transparency</u>
Each claim must be considered on its individual merits taking into account "proximity, nature of business and dependency on Gulf." The four examples you provide in your letter would all be eligible for compensation <u>assuming adequate documentation of damage</u>. But I agree with you that the reasons underlying individual GCCF determinations should be made more transparent. (See 1. above.)

6) <u>Restricting Eligibility and Recovery</u>
As already indicated, current GCCF statistics demonstrate that the Fund is not "restricting eligibility and recovery," and is not less generous than recovery under OPA. To the contrary, the GCCF determinations have been more generous than likely judicial determinations under OPA. Of course, the courts will in all likelihood have the opportunity in the near future to further define the scope and impact of the OPA statute. In the meantime, however, my goal is to encourage all claimants to enter the GCCF and receive generous compensation without the necessity of

litigation. At your suggestion, and that of others, I have eliminated any specific proximity requirement for eligibility  But a claimant must still document the damage suffered as a result of the oil spill. I am sure you agree with me that a claim that is not accompanied by <u>any</u> documentation is not compensable, whether under the GCCF or OPA.

7)    <u>Mandatory Process</u>
Filing with the GCCF is purely voluntary. Neither the Administration nor BP can change the language of OPA (which makes no reference to the GCCF). If a claimant wishes to file a claim against BP rather than the GCCF, that is entirely up to the claimant; nothing prevents the claimant from filing a lawsuit against BP if BP refuses to process the claim. I also believe that this entire discussion is moot; the GCCF has received over 255,000 claims and no claimant is complaining that  the process is not voluntary.

8)    <u>What Evidence will the Gulf Coast Claim Facility Actually Accept?</u>
First, the major problem I confront is the claim with no accompanying documentation at all. Second, it is unclear to me what you are suggesting in your letter; if there are "fee and/or tips for which there are no records," what should the GCCF rely upon to approve the individual claim? Will the ship captain submit a written statement proving the underlying claim? I reiterate that the GCCF has paid 87 % of all eligible claimants what they have requested or, in some cases, even more.   I will accept your language concerning the need for "marginal proof." But such "marginal proof" cannot be no proof at all.

9)    <u>Using Restrictive Revenue Comparisons</u>
You state in your letter that "The application forms imply the Gulf Coast Claim Facility is simply looking at 2009 revenues as the measure of revenues that would exist in 2010 were it not for the spill." I disagree that there is such an "implication" in the claim form; to the contrary, the claim form expressly requests "Copies of monthly financial statements for 2007- 2010." It also requests a "Record of monthly sales  for January 2008 – December 2009 and to date (or Income Tax Returns for individuals for 2008 – 2009)" Simply stated, the GCCF does not rely on "simply looking at 2009 revenues;" instead, we attempt to  maximize payments to the claimant based upon the best years of prior revenue generation.

10)    <u>No Interim Claims Process per the Oil Pollution Act</u>
I am inclined to agree with you when it comes to the issue of "interim claims." My current thinking is to include some type of interim claim process after November 23 pursuant to the language of OPA and the constructive recommendations of Attorney General McCollum. I have

not yet finalized the Final Protocol; but it does make sense in light of OPA and the needs of eligible claimants, to provide a choice of interim payments versus a Final Payment.

11)   <u>Overbroad Releases</u>
Again, I am inclined to agree with you that the language of any release following a Final Payment should not "release bodily injury claims if all they have submitted is an economic claim," and that to do otherwise would not be "fair." My current inclination is to make clear in any Final Protocol this point you raise in your letter.

Mr. Secretary, you state that the citizens of the Gulf "deserve more compassion and attention then they have received." I agree that the citizens of the Gulf deserve compassion. I disagree that they have not received it. The GCCF is a unique response to an unprecedented tragedy in the Gulf. It is not perfect and thanks to your constructive criticism, and that of others, it can and will be improved. But I know of few catastrophes in our Nation's history that have given rise to anything like the GCCF, and the generosity of the Program to date. I accept your letter in the spirit of constructive criticism, designed to improve the responsiveness of the GCCF. I am committed to working with you and the other members of the Economic Recovery Task Force in the weeks, months and years ahead.

I look forward to my appearance before the Task Force on October 28.

Sincerely,

Kenneth R. Feinberg
Administrator
Gulf Coast Claims Facility

cc:   Mr. Chris Hart
Chairman, Economic Recovery Task Force