GOODWIN | PROCTER

Dahlia S. Fetouh                          Goodwin Procter LLP
617.570.1263                              Counselors at Law
dfetouh@goodwinprocter.com                Exchange Place
                                          Boston, MA 02109
                                          T: 617.570.1000
                                          F: 617.523.1231

April 25, 2012

**Via Electronic Mail**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court
Room B345
500 Poydras St.
New Orleans, Louisiana  70130

Re:     *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20,*
        *2010* (Docket No. MDL 2179); Subpoena Served on Woods Hole Oceanographic
        Institution

Dear Judge Shushan:

        We are writing in response to this Court's April 20, 2012 Order ("Order") regarding BP's
subpoena of WHOI's "analysis documents."  We are grateful for the attention you have given
this matter, and are particularly appreciative of your careful consideration of the important need
to protect and nurture future research by not subjecting academics and their work to the litigation
process except when there is a demonstrated compelling need.  To this end, however, we write to
ask you to reconsider your Order to the extent that it sets March 10, 2011 as the date before
which WHOI must produce all "analysis documents."  We have provided additional information
below about the timeline of WHOI's work.  Based on that information, we believe the alternative
date set forth below is more consistent with the substance of your decision and your conclusion
that BP should not be given access to the "analysis documents for [WHOI's] articles."  Order, at
10.

        As we explain below, because of the lengthy lead time involved in the preparation and
submission of academic articles, the March 10, 2011 date provides WHOI scientists with
virtually no protection for their academic research.  To the contrary, due to the timing of the
article research and submissions, a March 10, 2011 cut-off date effectively requires WHOI and
its scientists to produce *all* relevant "analysis documents" from its oil spill research.  This would
include material related exclusively to its academic articles, such as discussions between the

GOODWIN | PROCTER

The Honorably Sally Shushan
April 25, 2012
Page 2

authors and the articles' editors and comments by peer reviewers, which the Order has held should be protected from production.

In keeping with the reasoning of the Court's Order, which emphasized the need to protect the interest of academic researchers more broadly, WHOI would like to suggest an alternative cut-off date of August 10, 2010, the day that WHOI submitted its Final Oil Spill Flow Rate Report and Characterization Analysis ("Final Report") to the United States Coast Guard ("USCG"). This date was the effective end date of WHOI's active involvement with the efforts of the Unified Command. After that date, WHOI's work shifted almost exclusively to its academic work. The only exception after August 10, 2010, is Dr. Camilli's limited contribution to the Flow Rate Technical Group ("FRTG"). Although we understand that BP may already have any communications related to the FRTG, WHOI proposes to agree to an exception to the August 10, 2010 cut-off for communications between its scientists and the FRTG subsequent to August 2010.

WHOI believes that the August 10, 2010 date will better protect its academic endeavors following the submission of its Final Report, while also providing BP with the "analysis documents" for which the Court has held it is entitled and which BP seeks to conduct its own independent review.

1.      **Background**

In order to explain the basis for our request, we have supplemented the Court's timeline with additional pertinent dates (additions are reflected in bold):

| | |
|---|---|
| April 20, 2010 | The Macondo Well blows out in the Gulf of Mexico. |
| **May 2, 2010** | **WHOI is approached by BP to help assess the size of the spill.** |
| **May 25, 2010** | **The USCG contracts with WHOI.** |
| June 10, 2010 | WHOI submits its Preliminary Report to the Flow Rate Measurement Group ("FRMG"). |
| July 15, 2010 | Oil stops flowing from the Well into the Gulf. |
| August 10, 2010 | WHOI submits its Final Oil Spill Flow Rate Report and Characterization Analysis to the USCG. |
| **September 2010** | **WHOI scientists turn from their work with Unified Command and begin working on their academic articles.** |

GOODWIN | PROCTER

The Honorably Sally Shushan
April 25, 2012
Page 3

| | |
|---|---|
| **January 25, 2011** | **WHOI scientists submit their articles to the Proceedings of the National Academy of Sciences ("PNAS") for review.[1]** |
| **January 25, 2011 - June 10, 2011** | **WHOI scientists discuss their articles with editors and peer reviewers from PNAS.** |
| March 10, 2011 | Publication of the U.S. Department of Interior's Assessment of Flow Rate Estimates for Deepwater Horizon/Macondo Well Oil Spill ("FRTG Assessment"). |
| July 18, 2011 | Publication of the article on the composition of oil and gas released during the spill. |
| August 11, 2011 | Publication of the article on acoustic measurement of the well flow rate. |

2.    **The March 10, 2011 Cut Off Date Provides Insufficient Protection For WHOI's Purely Academic Work**

As the timeline above makes clear, the unfortunate consequence of the Court's March 10, 2011 cut-off date is that WHOI's purely academic efforts are left essentially unprotected. The two spill-related articles published by WHOI scientists in PNAS were drafted, debated, and initially submitted to PNAS by January 25, 2011. By this point, WHOI's scientists estimate that their articles were over 95% complete. Thus, under this Court's current Order, almost *all* "analysis documents" related to those purely academic articles will have to be produced because they were drafted prior to the March 10, 2011 cut-off. This will include the innumerable pre-publication comments to and from the articles' international team of authors,[2] PNAS peer reviewers, and editors that were made before March 10, 2011.

These types of documents—common to most academic publications—are unprotected under the Court's current Order despite the Court's conclusion that they should not be produced because their production "could hamper future research efforts." Order, at 10. As the Court properly recognized in its Order, production of these types of documents "may discourage [academics] from participating in the authorship of articles relating to matters in litigation." *Id.*

---

[1]    Both published PNAS papers note they were received for review on January 25, 2011. *See* Christopher M. Reddy, Composition and fate of gas and oil released to the water column during the *Deepwater Horizon* oil spill, PNAS; Richard Camilli, Acoustic Measurement of the *Deepwater Horizon* Macondo well flow rate, PNAS Early Edition.

[2]    Other authors of these papers came from the University of Oxford, the Swiss Federal Institute of Technology at Lausanne, MIT, the University of Georgia, and Johns Hopkins University.

GOODWIN | PROCTER

The Honorably Sally Shushan
April 25, 2012
Page 4

WHOI respectfully requests, therefore, that the Court shift the applicable cut-off date to August 10, 2010, in order to apply the principles espoused by the Court in the Order. WHOI believes that this will afford WHOI scientists protection for their purely academic endeavors, while also giving BP access to relevant "analysis documents" from WHOI's earlier work with Unified Command.

### 3. WHOI's Work On The FRTG Assessment Was Minimal After August 10, 2010

The Court, in its effort to balance the competing interests at play here, has chosen to distinguish between the work done by WHOI scientists in "close association" with the Government,[3] including work done on the FRTG Assessment, and the work WHOI scientists did primarily in conjunction with other "academic institutions." The Court concluded that granting BP "access to the analysis documents associated with WHOI's work on the FRTG Assessment . . . will not hamper WHOI's future research," and therefore directed WHOI to produce all analysis documents from before the date of the publication of the final FRTG Assessment, which the Court determined was the effective cut-off date of WHOI's "close participation" with the Government. Order, at 10–11.

The Court appears to base its conclusion that "WHOI did not stop working on the flow rate analysis when it submitted its final report to the Coast Guard" on the fact that Richard Camilli—one of WHOI's scientists—appeared as an author on the FRTG Assessment, which was not published until some seven months after WHOI submitted its primary findings to the Government on August 10, 2010. *See id.* at 9–10. WHOI acknowledges that Dr. Camilli was credited as an author on that report.[4] In reality, however, Dr. Camilli's substantive involvement with the FRTG essentially ended with the submission of WHOI's Final Report. Any involvement beyond that point was negligible, as Dr. Camilli's communications with the FRTG clearly reveal.

Neither Dr. Camilli nor WHOI was working in "close association" with the Government after August 10, 2010. Following the submission of WHOI's Final Report, Dr. Camilli focused his efforts almost exclusively on the development of an academic article stemming from his work on the oil spill—work which this Court has recognized may have "followed from WHOI work conducted for the Coast Guard," but which is distinct from that earlier work and subject to

---

[3]    As a point of fact, WHOI's work with the oil spill was done in connection with the Unified Command, a group that included both the Government and BP. Thus, WHOI's association was as "close" to BP as it was to the Government during the course of its involvement with the spill.

[4]    In fact, his only substantive additional contribution to the FRTG Assessment from August 10, 2010, to March 10, 2011, can be found on pages 15–17 of that report.

GOODWIN | PROCTER

The Honorably Sally Shushan
April 25, 2012
Page 5

protection. *Id.* at 10. And it was this post-August 10, 2010 work which ultimately culminated in the submission of his paper to PNAS on January 25, 2011.[5] As such, the vast majority of the "analysis documents" that were created after August 10, 2010, are exactly the type of academic and scholarly discussions that the Court sought to protect, but which are left unfortunately exposed by the Order's operative cut-off date of March 10, 2011.[6]

Nevertheless, in an effort to follow the Court's holding with respect to the FRTG Assessment, WHOI will agree to produce communications post-August 10, 2010 that concern the work done for the FRTG Assessment.

### 4. The Abbreviated Production Schedule Provides WHOI With Insufficient Time to Conduct A Thorough Review

WHOI is working diligently to ensure compliance with the Order. At this point, however, WHOI believes that the current schedule is infeasible. Although WHOI is striving to produce the documents as quickly as possible, WHOI asks the Court to extend the production date by two weeks, to May 18, 2012, to allow WHOI the time necessary to properly collect and review the relevant documents.

\*        \*        \*

In light of the above, WHOI respectfully requests that the Court reconsider its April 20, 2012 Order. WHOI believes that replacing the March 10, 2011 cut-off date with August 10, 2010, will more accurately divide WHOI's work with Unified Command from its purely academic research, and will accord the latter the protection the Court intended to give WHOI's academic efforts in the first instance. Moreover, the two-week extension in the production schedule will allow WHOI the necessary time to properly prepare its production, while still affording BP adequate time to review the documents prior to its depositions.

We appreciate your reconsideration of this matter and your willingness to hold the time for appeal in abeyance pending your determination of this request.

---

[5]   Dr. Reddy's PNAS paper was also submitted on January 25, 2011; thus the two principle articles were completed and submitted well before the Court's current March 10, 2011 cut-off date.

[6]   WHOI notes that all FRTG communications with WHOI likely have been or will be produced by the US Government, but WHOI will produce them as necessary.

GOODWIN | PROCTER

The Honorably Sally Shushan
April 25, 2012
Page 6


Respectfully,

Dahlia S. Fetouh

DSF/aed

cc:    Robert R. Gasaway, Esq.
       Karen McCartan DeSantis, Esq.