1                   UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
2

3      *********************************************************

4   IN RE:  OIL SPILL BY THE              Docket No. MDL-2179
    OIL RIG *DEEPWATER HORIZON*           New Orleans, Louisiana
5   IN THE GULF OF MEXICO ON              Friday, December 2, 2011
    APRIL 20, 2010
6   CIVIL

7
       *********************************************************
8

9            TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
             HEARD BEFORE THE HONORABLE SALLY SHUSHAN
10                 UNITED STATES MAGISTRATE JUDGE

11

12  APPEARANCES:

13  FOR THE PLAINTIFFS:          DOMENGEAUX, WRIGHT, ROY & EDWARDS
                                 BY:  JAMES P. ROY, ESQ.
14                               P. O. BOX 3668
                                 556 Jefferson St.
15                               Lafayette, LA 70502-3668

16
                                 HERMAN, HERMAN, KATZ & COTLAR, LLP
17                               BY:  STEPHEN J. HERMAN, ESQ.
                                 820 O'Keefe Avenue
18                               New Orleans, LA 70113

19
                                 LEVIN PAPANTONIO THOMAS MITCHELL
20                               RAFFERTY & PROCTOR
                                 BY:  BRIAN H. BARR, ESQ.
21                               316 South Baylen Street, Suite 600
                                 Pensacola, FL 32502
22

23                               LEWIS KULLMAN STERBCOW & ABRAMSON
                                 BY:  PAUL M. STERBCOW, ESQ.
24                               601 Poydras St., Suite 2615
                                 New Orleans, LA 70130
25

```
1                                    WILLIAMSON & RUSNAK
                                     BY:  JIMMY WILLIAMSON, ESQ.
2                                    4310 Yoakum Blvd.
                                     Houston, TX 77006
3

4                                    IRPINO LAW FIRM
                                     BY:  ANTHONY IRPINO, ESQ.
5                                    2216 Magazine St.
                                     New Orleans, LA 70130
6

7    FOR THE STATE OF LOUISIANA:     KANNER & WHITELEY
                                     BY:  DAVID A. POTE, ESQ.
8                                    701 CAMP STREET
                                     NEW ORLEANS, LA 70130
9

10   FOR THE STATE INTERESTS:        ATTORNEY GENERAL OF ALABAMA
                                     BY:  COREY L. MAZE, ESQ.
11                                   500 Dexter Ave.
                                     Montgomery, AB 36130
12

13   FOR THE UNITED STATES
     DEPARTMENT OF JUSTICE:          U.S. DEPARTMENT OF JUSTICE
14                                   TORTS BRANCH, CIVIL DIVISION
                                     BY:  R. MICHAEL UNDERHILL, ESQ.
15                                        SARAH D. HIMMELHOCH, ESQ.
                                     450 Golden Gate Ave.
16                                   7th Floor, Room 5395
                                     San Francisco, CA 94102
17

18   FOR BP AMERICA INC., BP
     AMERICA PRODUCTION COMPANY,
19   BP COMPANY NORTH AMERICA,
     INC., BP CORPORATION NORTH
20   AMERICA, INC., BP EXPLORATION &
     PRODUCTION INC., BP HOLDINGS
21   NORTH AMERICA LIMITED, BP
     PRODUCTS NORTH AMERICA INC.:     LISKOW & LEWIS
22                                    BY:  DON K. HAYCRAFT, ESQ.
                                      One Shell Square, Suite 5000
23                                    701 Poydras St.
                                      New Orleans, LA 70139
24

25
```

```
 1                                    KIRKLAND & ELLIS
                                      BY:  J. ANDREW LANGAN, ESQ.
 2                                         TIMOTHY A. DUFFY, ESQ.
                                           MARK J. NOMELLINI, ESQ.
 3                                         RYAN S. BABIUCH, ESQ.
                                           JEFFREY LAMB, ESQ.
 4                                    300 N. LaSalle
                                      Chicago, IL 60654
 5

 6                                    KIRKLAND & ELLIS
                                      BY:  ROBERT R. GASAWAY, ESQ.
 7                                    655 Fifteenth St., N.W.
                                      Washington, D.C. 20005
 8

 9                                    WILLIAMSON & RUSNAK
                                      BY:  JIMMY WILLIAMSON, ESQ.
10                                    4310 Yoakum Blvd.
                                      Houston, TX 77006
11

12       FOR HALLIBURTON
         ENERGY SERVICES, INC.:       GODWIN RONQUILLO
13                                    BY:  DONALD E. GODWIN, ESQ.
                                           JENNY L. MARTINEZ, ESQ.
14                                         STEPHANIE K. MAJOR, ESQ.
                                      Renaissance Tower
15                                    1201 Elm Street, Suite 1700
                                      Dallas, TX 75270
16

17                                    GODWIN RONQUILLO
                                      BY:  R. ALAN YORK, ESQ.
18                                    4 Houston Center
                                      1331 Lamar, Suite 1665
19                                    Houston, TX 77010

20
         FOR CAMERON INTERNATIONAL
21       CORPORATION:                 STONE PIGMAN WALTHER WITTMANN
                                      BY:  PHILLIP A. WITTMANN, ESQ.
22                                         CARMELITE M. BERTAUT, ESQ.
                                      546 Carondelet Street
23                                    New Orleans, LA 70130

24

25
```

```
 1   FOR ANADARKO PETROLEUM
     CORPORATION, ANADARKO E&P
 2   COMPANY, LP:                KUCHLER POLK SCHELL WEINER &
                                 RICHESON
 3                               BY:  DEBORAH D. KUCHLER, ESQ.
                                 1615 Poydras Street, Suite 1300
 4                               New Orleans, LA 70112

 5
                                 BINGHAM McCUTCHEN
 6                               BY:  WARREN A. FITCH, ESQ.
                                 2020 K Street, N.W.
 7                               Washington, D.C. 20006

 8
     FOR MOEX OFFSHORE 2007, LLC:    PILLSBURY WINTHROP SHAW PITTMAN
 9                               BY:  EDWARD FLANDERS, ESQ.
                                 1540 Broadway
10                               New York, NY 10036

11
                                 CARVER, DARDEN, KORETZKY, TESSIER,
12                               FINN, BLOSSMAN & AREAUX
                                 BY:  PHILIP D. NIZIALEK, ESQ.
13                               1100 Poydras St.,
                                 Energy Centre, Suite 3100
14                               New Orleans, LA 70163

15
     FOR M-I, LLC:               MORGAN LEWIS
16                               BY:  JAMES B. TARTER, ESQ.
                                      DENISE SCOFIELD, ESQ.
17                               1000 Louisiana St., Suite 4000
                                 Houston, TX 77002-5006

18

19   FOR TRANSOCEAN HOLDINGS, LLC,
     TRANSOCEAN OFFSHORE DEEPWATER
20   DRILLING INC., AND TRANSOCEAN
     DEEPWATER
21   INC.:                       FRILOT
                                 BY:  KERRY J. MILLER, ESQ.
22                               ENERGY CENTRE, 36TH FLOOR
                                 1100 POYDRAS STREET
23                               NEW ORLEANS, LA 70163

24

25
```

```
 1                                   SUTHERLAND, ASBILL & BRENNAN
                                     BY:  RACHEL G. CLINGMAN, ESQ.
 2                                        STEVEN L. ROBERTS, ESQ.
                                     1001 Fannin St., Suite 3700
 3                                   Houston, TX 77002-6760

 4

 5   FOR TRANSOCEAN EXCESS
     UNDERWRITERS:                   PHELPS DUNBAR
 6                                   BY:  EVANS M. McLEOD, ESQ.
                                     Canal Place
 7                                   365 Canal St., Suite 2000
                                     New Orleans, LA 70130
 8

 9   FOR DRIL-QUIP, INC.:            WARE, JACKSON, LEE & CHAMBERS
                                     BY:  C. DENNIS BARROW, JR., ESQ.
10                                   2929 Allen Parkway, 42nd Floor
                                     Houston, TX 77019
11

12   FOR WEATHERFORD U.S., L.P.:     JONES WALKER
                                     BY:  LANCE M. SANNINO, ESQ.
13                                   201 St. Charles Ave.
                                     New Orleans, LA 70170
14

15   FOR O'BRIEN'S RESPONSE
     MANAGEMENT, INC., SEACOR
16   HOLDINGS, INC., SEACOR
     OFFSHORE, LLC, SEACOR MARINE,
17   LLC, SEACOR WORLDWIDE, INC.,
     SEACOR MARINE, INC., SEACOR
18   MARINE INTERNATIONAL, INC.,
     AND SIEMENS FINANCIAL, INC.:    WEIL GOTSHAL & MANGES
19                                   BY:  JEREMY T. GRABILL, ESQ.
                                     767 Fifth Ave.
20                                   New York, NY 10153

21

     FOR MDL 2185:                   MITHOFF LAW FIRM
22                                   BY:  WILLIAM STRADLEY, ESQ.
                                     3450 One Allen Center
23                                   500 Dallas St.
                                     Houston, TX 77002
24

25
```

```
 1   FOR DNV:                          COHEN GORMAN & PUTNAM
                                       BY:  MARK COHEN, ESQ.
 2                                     1010 Lamar St., Suite 1000
                                       Houston, TX 77002-6314
 3

 4   FOR NATIONAL RESPONSE
     CORPORATION:                      MONTGOMERY BARNETT
 5                                     BY:  JEREMY D. RUSH, ESQ.
                                       3300 Energy Centre
 6                                     1100 Poydras St.
                                       New Orleans, LA 70163-3300
 7

 8   FOR LYNDEN, INC.:                 CHRISTOVICH & KEARNEY
                                       BY:  GREGORY SCOTT LaCOUR, ESQ.
 9                                     601 Poydras St., Suite 2300
                                       New Orleans, LA 70130
10

11   FOR DRC EMERGENCY
     SERVICES, LLC:                    FLANAGAN PARTNERS
12                                     BY:  ANDY DUPRE, ESQ.
                                       201 St. Charles Ave, Suite 2405
13                                     New Orleans, LA 70170

14
     FOR THE UNITED STATES
15   COAST GUARD:                      UNITED STATES COAST GUARD
                                       OFFICE OF CLAIMS AND LITIGATION
16                                     BY:  HEATHER S. KENNEALY, ESQ.
                                       2100 2nd St., S.W., Stop 7121
17                                     Washington, D.C. 20593-7121

18
     OFFICIAL COURT REPORTER:          Karen A. Ibos, CCR, RPR, CRR
19                                     500 Poydras Street, Room HB-406
                                       New Orleans, LA 70130
20                                     (504) 589-7776

21

22
          Proceedings recorded by mechanical stenography, transcript
23   produced by computer.

24

25
```

<u>P R O C E E D I N G S</u>

(FRIDAY, DECEMBER 2, 2011)

(STATUS CONFERENCE)


1    (OPEN COURT.)

2          THE COURT:  Can the phone participants hear us okay?

3          ALL:  Yes, ma'am.  Good morning.

4          THE COURT:  Good morning, good morning.  Okay, guys, I

5    hope this is going to be a fast one.  I've warned Mr. Godwin to

6    keep it to a minimum.  I guess I should ask you all not to be

7    lengthy because I know we've all got lots of things to do today.

8    We've got Mr. Cohen on the phone for DNV; is that right?

9          MR. COHEN:  Yes, ma'am.  Good morning, Judge.

10          THE COURT:  Good morning, Mr. Cohen.  How are you?

11          MR. COHEN:  Very well, ma'am.  How was your Thanksgiving

12    holiday?

13          THE COURT:  Lovely, thank you.  And I hope the same for

14    you.

15          We've got the request for the depositions, the DNV

16    depositions.  I've heard from Mike Underhill who has submitted to

17    me a proposed order that I think will cover confidentiality on the

18    release of the depositions.  Do we have any opposition to the

19    release of the depositions subject to the Chemical Safety Board

20    agreeing that they will abide by certain statutes which protect the

21    confidentiality of the depositions?

```
 1              MS. CLINGMAN:  Yes, your Honor.

 2              THE COURT:  You do?  Oh, Transocean objects.  Okay.  Do

 3    you want to speak up.

 4              MS. CLINGMAN:  Yes, Rachel Clingman for Transocean.  The

 5    difference, your Honor, now between CSB did this one before and

 6    availed itself of confidential information by entering a trade

 7    secret type arrangement.  CSB at the time was not an active

 8    litigant in the case, CSB has since now filed a claim against

 9    Transocean and is fighting a conditional transfer order to this

10    court.  And disputing this court's jurisdiction and honestly

11    disputing even if the matters are related.  So we do object to CSB

12    obtaining information without signing the protective order as have

13    all of the other interested parties.

14              THE COURT:  Come on up, Mike.

15              MR. UNDERHILL:  Thank you, your Honor, and thank you,

16    Rachel.  I kind of thought that was coming.  If I might make a

17    suggestion.  I think this is a practical solution to an issue that

18    may come to the point that you're making on behalf of Transocean,

19    it may come to that depending on what the MDL panel does.

20              If I might make a suggestion as to all of my friends on

21    the defense side, in this case almost every document that has been

22    subject to discovery has been marked confidential or highly

23    confidential.  In some cases, in my humble opinion,

24    inappropriately.  I think that the defendants have benefited from

25    that on a public relations aspect.  I am honestly surprised that to
```

```
 1   this date some news media with fairly substantial litigation
 2   budgets and First Amendment interests haven't challenged the
 3   confidentiality order.
 4          I am frankly at this point and this issue trying to defer
 5   some of those issues.  I would suggest this is probably not the
 6   best time to address it.  I am not trying to help you out here,
 7   it's not my job, but I would point that out as a factor that you
 8   might want to consider in whether you want to oppose this.  It may
 9   be something we have to address down the road, but I would suggest
10   this is probably not the place to do it.
11          And if the MDL panel denies the motion remand to Texas,
12   if we want to address it again we can do it.  But let's get over
13   this small bump in an easy way with a minimum of blood in the
14   highway.  That's my perspective and my suggestion.
15          THE COURT:  Well, I guess my only comment would be that
16   it would certainly shorten the process for DNV, which is why we're
17   getting the request.  But do you all want to defer that and talk
18   again, how would you like to work on it?
19          MS. CLINGMAN:  We're happy to talk further.  I think,
20   Mike, I appreciate your comments, it does raise though the
21   possibility that CSB is then standing on some confidentiality
22   objections which for the other parties are now coming due.  And a
23   lot of information has been challenged, confidentiality, and we're
24   de-designating a good portion of it and that's going on now.  So
25   that actually heightens rather than allays my concerns.
```

1          But I think, yes, let's do talk and see if we can reach

2     an agreement.  I do appreciate DNV's interest and understand what

3     they're trying to do.

4          THE COURT:  Mark, we are going to defer this.  If we

5     reach an agreement this week, we will let you know.  Otherwise

6     we'll defer it until next week and see where we are.

7          MR. COHEN:  Thank you, Judge.  May we -- let's see, I

8     think that's the only active -- well, go ahead.  Protocols, are you

9     going to be dealing with those soon, Judge, before we jump off?

10    Because DNV is interested in the result on the question of

11    approving the protocol for capping stack testing.

12         THE COURT:  Well, that's very interesting because guess

13    what's next up on my agenda?

14         MR. COHEN:  Thank you, Judge.

15         THE COURT:  And Mr. Gasaway is looking at me.

16         MR. COHEN:  Thank you, your Honor.

17         THE COURT:  You're welcome.

18         MR. UNDERHILL:  I will throw out one suggestion, your

19    Honor.  That the request for the depositions did not come from the

20    CSB, it came from DNV.  CSB requested interview, DNV thought this

21    was a way to shortcut or avoid that.

22         THE COURT:  Right.

23         MR. UNDERHILL:  So from what I understand, if the CSB may

24    not care if they don't look at the depos, they're simply going to

25    interview the witnesses.  So I come to this as somewhat of a

 1   neutral party, notwithstanding my comments about confidentiality

 2   orders.  And I, lest it be taken that way, that wasn't a threat

 3   from the CSB, they've made no such indication to me.  This was a

 4   general observation about the case and confidentiality designations

 5   in general that I think may be looking at the parties down the

 6   road, particularly as we get closer to trial.

 7           MR. COHEN:  Your Honor, this is Mark Cohen.  Just so the

 8   factual background is clear, I didn't burden you with all of that,

 9   Mike's description is entirely accurate.  CSB asked for an

10   interview, we said have you read the JIT and deposition testimony,

11   that might answer a lot of the questions, save time and money.

12   They hadn't.  I proposed that I would ask for permission to release

13   the information, that's how we got here.

14           THE COURT:  The JIT report is not confidential, they can

15   go find that on the internet.

16           MR. COHEN:  Absolutely, your Honor, correct.  It was only

17   the depositions that I was seeking leave of court for.

18           THE COURT:  Right.  Okay.  Well, we're going to defer

19   that, Mark, and now we're going to move on the BOP and capping

20   stack, so you can pop off when we're done.

21           Good morning, Rob.

22           MR. GASAWAY:  Good morning, your Honor.

23           THE COURT:  How are you doing?

24           MR. GASAWAY:  I'm doing good.  How was your Thanksgiving?

25   Or did we cover that before?

```
 1              THE COURT:  I didn't eat as much as I would have liked,

 2    but I'm glad about that.  So I hope yours was good.

 3              MR. GASAWAY:  I ate everything I wanted.

 4              THE COURT:  Good.  All right.  Let's talk about it.

 5    We've got the proposed protocol for disassembly of the flanges and

 6    other components of the capping stack for the purpose of taking

 7    measurements.  Are you aware of any opposition to that?

 8              MR. GASAWAY:  No, your Honor.  To be clear, we should

 9    allow this, you know, other parties to speak.  We've had direct

10    conversations with the Department of Justice, they're comfortable

11    with this.  They want to be kept in the loop, especially with

12    regard to the cleaning, what chemicals will be used, et cetera,

13    what protocols will be used; and as we identify specific vendors

14    going forward, they want to be kept in that loop as well.  But we

15    thought it was important to get this document out before everybody

16    so they could weigh in on any concerns.

17              THE COURT:  Okay.  It was just circulated, what, last

18    night, huh?

19              MR. GASAWAY:  I think -- well, it was circulated earlier

20    to the Department of Justice, we got their sign off; but for most

21    of the parties here, they would have seen it yesterday.

22              THE COURT:  Why don't we do this, guys, why don't we say

23    that if we don't get any objections by midday Monday, we'll go

24    ahead and sign it.

25              MR. GASAWAY:  Okay, thank you.
```

 1          THE COURT:  I've looked it over, I don't understand it,

 2   but I've looked it over.

 3          MR. GASAWAY:  Thank you, your Honor.

 4          THE COURT:  So that would be midday Monday.

 5          So, Mark, does that answer your question?  Mark Cohen?

 6          MR. COHEN:  Yes, Judge, here I am, it's Cohen.  And my

 7   only lingering issue is to confirm that with the order approving

 8   the protocol the court's direct involvement is at an end, there

 9   would be no need for the judge to review the anticipated contract

10   between DNV and BP, for example.

11          THE COURT:  I think that's correct.

12          MR. COHEN:  That's what I was told, I just wanted to make

13   sure.

14          MR. GASAWAY:  As you know, we've taken a fairly liberal

15   view of that, but thank you for approving the order.

16          THE COURT:  Okay.  All right.  Then we wanted to talk

17   about payment of Captain Englebert's invoice and Rob has come up

18   with a proposal, I am not sure everybody has had an opportunity to

19   look at it.  It looked very reasonable to me as far as how the

20   costs were going to be allocated.  Why don't I give everybody an

21   opportunity to look at it and express any complaints that they have

22   regarding the proposal.

23          Do you want to do that by close of business on Tuesday?

24   If not, Rob, do you propose paying the invoice and then being

25   reimbursed or how do you want to do that?

```
 1              MR. GASAWAY:  No.

 2              THE COURT:  No.  No, they don't want to extend credit to

 3     you other people.  Is that correct, Rob?

 4              MR. GASAWAY:  That's correct.

 5              THE COURT:  Okay.  Guys, everybody look at Rob's

 6     proposal, which I think looks reasonable, but any complaints let me

 7     know.  If you don't have a complaint, I would like you to get your

 8     checks out to Captain Englebert ASAP because we're going to be

 9     getting these every month.

10              And, Rob, I guess I am going to ask you to undertake to

11     make your suggestions on allocation every month.

12              MR. GASAWAY:  We would be more than happy to, your Honor.

13              THE COURT:  I appreciate that.  Thank you.

14              MR. GASAWAY:  You're welcome.

15              MR. YORK:  Has that been circulated, your Honor?

16              THE COURT:  Yes, it came out, I think, early this

17     morning.

18              MR. GASAWAY:  It came out yesterday.

19              MR. HERMAN:  1:58 yesterday.

20              THE COURT:  At 1:58 yesterday.  I guess I didn't look at

21     it until this morning.

22              MR. HERMAN:  Maybe my e-mail is faster.

23              THE COURT:  No, it's not faster, I just didn't open it,

24     Steve.  You know, you sit in these conferences and answer e-mails,

25     I don't have that luxury.
```

```
 1              MR. GASAWAY:  Can I just mention one thing in the old

 2    business category, your Honor?

 3              THE COURT:  Sure.

 4              MR. GASAWAY:  You asked two weeks about the approval for

 5    the riser scan protocol, and we had deferred that and that's also

 6    been sent to you now.  I don't know of any objections to that.

 7              THE COURT:  I thought I had done that?  No?

 8              MR. GASAWAY:  To the extent -- I just wanted to make sure

 9    that you had that.  To the extent that that's there for follow-up,

10    you now have that.

11              THE COURT:  And I have not entered it?  I'll check.  I

12    thought I had entered the scan protocol, but I'll check; if it

13    hadn't been entered, I'll go ahead and do it.

14              MR. GASAWAY:  Thank you, your Honor.

15              THE COURT:  All right.  Thank you for pointing out that I

16    hadn't done it.

17              MR. GASAWAY:  Well, you may have done it, I may just

18    haven't seen the order, so.  But you have it.

19              THE COURT:  I do have it, thank you.  All right.

20              We had a meeting with, I had a meeting with the United

21    States regarding the ongoing cement testing.  The target date for

22    completion of that now is mid December, they've managed to move

23    that up.  We had a very helpful conversation about what's involved

24    and why it's taking so long, but they're putting extra personnel on

25    it and we're hoping to see that very shortly.
```

1          Okay.  Next up is Mr. Nomillini's consideration of the

2    posting in privilege logs of e-mail strings where the original

3    string was confidential and whether subsequent strings from that

4    need to be posted.  And, Mark, I don't know if everybody has seen

5    it, he has replied and I think the reply went to everyone.  But the

6    reply reads as follows:  "During last Friday's conference, the

7    United States asked whether post-April 20th, 2010 communications

8    exchanged between the Producing Party and their counsel or among

9    counsel for the Producing Party that are then forwarded solely

10   among non-attorneys need to be logged.  The Court asked that BP

11   consider this question.  Thus far, BP has been logging the

12   privileged forwards of these post April 20th, 2010, communications,

13   even when the forward solely involved non-attorneys.  However, BP

14   is willing to agree that the United States not be required to log

15   privileged forwards of "post-April 20th, 2010, communications

16   exchanged between the Producing Party and their counsel or among

17   counsel for the Producing Party," even when the forwards solely

18   involve non-attorneys.  Of course, if the non-attorneys add

19   comments that are responsive and non-privileged, they would be

20   produced.  It is assumed that these rules would apply to all

21   parties."

22          So I think that answers the question and I think we can

23   operate with that rule from now on, unless somebody has a problem

24   with it.  And, Sarah, I assume that answers your question?

25          MS. HIMMELHOCH:  It does, your Honor, and we do not have

 1   any objection to proceeding under those rules.

 2           THE COURT:  I didn't think you would.  But thank you.

 3           We have a request from the United States to move the

 4   deadline for privilege logs for three of the federal agencies to

 5   December 20th.  Has everybody had an opportunity to consider the

 6   request and is there any opposition?

 7           MS. HIMMELHOCH:  Your Honor, this is Sarah Himmelhoch.  I

 8   had a productive call with Rob Gasaway and Andy Langan this

 9   morning, and they think it's appropriate for you, I, and BP to have

10   a sort of off-line conversation, for want of a better term, to talk

11   about what this means in terms of the start of depositions and

12   everything else.  But I haven't heard from anyone else regarding an

13   objection.

14           THE COURT:  Okay.  Well, why don't we have that

15   discussion after the fact.  Does anybody else have a problem with

16   the requested extension?

17           MR. FITCH:  Judge, Tony Fitch for Anadarko.  We don't

18   have any problem with this privilege log extension.

19           The United States has another extension request with

20   respect to some of its production suggesting that be January 15th.

21   I have a substantial problem with that when the court's ready to

22   discuss it.

23           THE COURT:  I don't think I've seen that.

24           MS. HIMMELHOCH:  You haven't, your Honor, because that

25   one was not a court ordered deadline, that was a deadline for

1   responding to the various defendants Phase Two discovery request.

2   We've responded to the request for production, but there are

3   requests for admission and interrogatories included.  And there are

4   a couple of reasons we requested the extension, one of the most

5   significant being we are engaged in productive discussions with BP

6   regarding the stipulations related to source control, which would

7   address many of the requests for admission and at least parts of

8   the interrogatories.  And we wanted to give that stipulation

9   process an opportunity to reach fruition or die before engaging in

10  the formal discovery response.

11          My understanding based on my conversation with

12  Mr. Gasaway this morning is that we would expect those stipulations

13  to be circulated to the parties at large sometime in the next two

14  weeks, and then, of course, they will need an opportunity to review

15  those.  But it did seem to make sense to us to allow the United

16  States to finish that stipulation process and then respond to the

17  written discovery.

18          THE COURT:  Okay.  Tony.

19          MR. FITCH:  Judge, my concern is:  (A) that is in some

20  instance apples and oranges; but (B) more fundamentally depositions

21  are scheduled to start two days later on January 17th.  And it

22  simply places the other parties in an impossible position with

23  respect to those fairly important 30(b)(6) depositions not to have

24  those responses.  Now, one partial solution will perhaps be to not

25  schedule the U.S.'s 30(b)(6) depositions for a little while.  But

```
1    it is a definite concern.

2            THE COURT:  Okay.  I appreciate it.  Thank you.  Okay.

3    We will follow-up on that.

4            Let's see.  Corey, you doing okay on your privilege log

5    issue?  You're coming along?

6            MR. MAZE:  Yes.  We produced all of our documents this

7    week and should have our privilege log out by next Wednesday as you

8    ordered.

9            THE COURT:  Good.  Good, good, good.  And I guess the

10   same is true with BP responding to Alabama's Phase Two, everything

11   is on track, huh?

12           MR. LANGAN:  Your Honor, it's Andy Langan, and I believe

13   that is the case.  Mr. Duffy might be able to confirm.  I think we

14   served discovery responses on the 30th of November.

15           THE COURT:  Good.  Okay.  Thank you.

16           We are making progress on Louisiana document production,

17   and we have scheduled regular status conferences to make sure that

18   stays on schedule; and so far so good, just want to report that.

19           Okay.  We had a November 25th deadline as to the PSC

20   designating any additions to the prioritized deposition list, we

21   didn't see anything, which is good news.  December 2nd is the

22   deadline for all other parties to designate depositions for use at

23   trial, so I guess we'll see that at some point today.

24           If the defendants make any further designations, we're

25   going to go ahead and amend the schedule to account for those
```

```
 1    additions.  So we should be reaching the end of that phase of

 2    things, which is good.

 3                  MR. YORK:  Your Honor --

 4                  THE COURT:  Come on up, Alan.  My deposition guru.

 5                  MR. YORK:  Alan York for Halliburton.  Just to notice the

 6    status, I don't know Brian Cavanaugh is on the phone yet, but Brian

 7    sent an e-mail to defense counsel earlier this week seeking to

 8    gather all of the names of additional folks left in the universe of

 9    77 that were either Phase Two or deleted by the PSC.  He has been

10    gathering those names and I think that there were a couple of

11    parties still left to respond that.  The gathering should be

12    complete by today and then I think the idea is that we try to

13    within -- to prioritize them, that may be Monday, if the court's

14    okay with that.

15                  THE COURT:  I'm okay with that.  Is the number going to

16    be 77?

17                  MR. YORK:  I don't know, your Honor.  I will tell you

18    that we designated --

19                  THE COURT:  It will be close; is that correct?

20                  MR. YORK:  I will tell you from Haliburton's perspective,

21    just over half of those I think will probably end up being

22    designated but I think there will be some whittling down.  And I do

23    believe that a lot of the ones that are being designated are being

24    designated for very narrow issues, which will be very narrow

25    designations we're hoping.
```

```
 1              THE COURT:  I wonder if Judge Barbier is listening?

 2              MR. YORK:  I'm looking for the lightening bolts, your

 3    Honor.

 4              THE COURT:  Thank you, Alan.

 5              MR. CAVANAUGH:  Your Honor, Brian Cavanaugh for BP.

 6    That's right.  Thank you, Alan.  And I am hopeful that we will hear

 7    from the couple of defendants we haven't heard from yet and be able

 8    to circulate at least to defendants and PSC by the end of the day

 9    the list and then we will work on prioritization and hopefully have

10    something for you on Monday.

11              THE COURT:  Okay.  Exhibits, we still have the issue of

12    serious authenticity objections.  Are you all still working through

13    those issues?  And if so, that's fine.

14              MR. NOMILLINI:  Your Honor, it's Mark Nomillini.  Yes, we

15    are, we're engaged in a good, cooperative process with the PSC.  We

16    are going to submit something to your Honor I guess addressing two

17    things:  One, the status of that process; and, two, there are some

18    documents where I think we're at loggerheads.  And we should be

19    getting that to you within the next couple of days.

20              THE COURT:  Okay.  Great.  Appreciate the update.

21              Okay.  Motions in limine.  We've got seven of them under

22    submission to Judge Barbier.

23              THE LAW CLERK:  That's not quite right.

24              THE COURT:  That's not?  Let me see.

25              THE LAW CLERK:  Six.  Read the footnote.
```

```
 1              THE COURT:  I stand corrected, six.  We do have some

 2      discussions going on between Tim Duffy and Steve Herman relative to

 3      what is on the in limine schedule as No. 11, BP and others motions

 4      in limine to preclude inappropriate evidence arising from

 5      deposition designations or other anticipated testimony.  I think

 6      that there has been agreement on changing the deadlines for those.

 7      Is that right, Steve?

 8              MR. HERMAN:  I guess so.  I am still not sure what

 9      exactly we're supposed to do.

10              MR. DUFFY:  Your Honor, if I could, it's Tim Duffy.  Good

11      morning.

12              THE COURT:  Good morning.

13              MR. DUFFY:  Yeah, we had simply asked that the date be

14      bumped a little bit given that we're still finishing up the

15      designations, and frankly there's potentially a number of small

16      issues that arise from those designations and the fact that we have

17      three other motions due on Monday, or three other categories of

18      motions due on Monday, we would ask that that be moved to the next,

19      sort of next round, we're trying to avoid Christmas, to put it on

20      the same schedule as the last two.

21              I don't know if there is agreement as to that date issue,

22      but I think my conversation with Mr. Herman yesterday sort of

23      touched upon the issue of what are these motions about and why are

24      we doing them and that sort of stuff, which I thought was sort of

25      water under the bridge, but I am happy to discuss it.
```

```
 1              THE COURT:  No, I understood that.  And I don't have a

 2   problem with moving the date so that No. 11 on the list of in

 3   limine motions would be revised to coincide with the dates of 12

 4   and 13.  So the original letters will be due on 1/9, oppositions

 5   1/16, and any reply on 1/23/2012.  Relative to what we're talking

 6   about, Steve, which was your question.  Who knows.

 7              MR. DUFFY:  Your Honor, I think we discussed this I think

 8   in several conferences.  I remember Mr. Langan I think it was over

 9   a month ago when we first started putting in the deposition

10   designations and objections to those.

11              THE COURT:  Right.

12              MR. DUFFY:  And asking the question, can we simply list

13   an objection or do we need to actually submit briefing on our basis

14   for each of these objections.

15              THE COURT:  And I said you could do either, right.

16              MR. DUFFY:  Yeah, we would have the chance to do that at

17   the motion in limine stage.

18              THE COURT:  Right.  And so, Steve, my kind of answer to

19   you is what are we talking about, we're talking about any motions

20   in limine or any other pretrial motions that any party wants to

21   file can be filed before January 23rd.  This looks to me like a

22   catchall category relative to deposition designations.

23              MR. HERMAN:  Steve Herman for the plaintiffs.  I don't

24   know what they're intending, but if they're intending to brief

25   extensively every single objection that they've made in every
```

```
 1    single deposition designation, it's going to be somewhat onerous
 2    for us, if we even need to respond to that.  Mu understanding
 3    from --
 4             THE COURT:  May I interrupt?
 5             MR. HERMAN:  Sure.
 6             THE COURT:  Think back, what's the page limitation on in
 7    limine?
 8             MR. HERMAN:  Good point.
 9             MR. DUFFY:  Well, your Honor, if I could on that.  I have
10    no intention of writing any more motions than I absolutely have to.
11    But this is a catchall category, and just to take an example one of
12    the issue that comes out of the designations is the use of
13    testimony where people have taken the Fifth Amendment.  So I
14    anticipate that we'll probably have a motion about Fifth Amendment
15    testimony; we might have a different one that talks about some
16    other issue raised by particular questioning.  By no means are we
17    going to submit more than two or three of these things, and we're
18    certainly not going to look back and go to each deposition
19    designation, we may have just a few examples.
20             MR. HERMAN:  That makes sense.
21             MR. DUFFY:  It may not fit in the category of one motion
22    and that's why the "S" is in the schedule that I originally
23    drafted.
24             THE COURT:  Okay.  But with page limitations that we have
25    in place, I don't anticipate that anybody is going to be filing
```

1    extensive briefs on every deposition designation.  And that's the

2    good news; the bad news is there are more motions coming.

3            MR. HERMAN:  If it seems onerous, I'm sure we will

4    request an extension.  I guess what we were really reacting to, and

5    I apologize if I misunderstood what this catchall was for, but just

6    going back a very long time ago to when Judge Barbier was with us

7    in some liaison conference meeting, I think it was in your

8    chambers, where I guess the fight, for lack of a better word, was

9    whether he was going to rule on every single objection and I

10   thought the answer to that was no.

11           THE COURT:  It was a very clear no.

12           MR. HERMAN:  So we certainly don't have extensive

13   briefing on every single objection, so that's the only thing I was

14   responding to.

15           THE COURT:  That's right.  No, and I think that's right.

16   Just to reiterate, Judge Barbier clearly said he is not going to

17   rule on every objection that is asserted in the deposition

18   designations, that he will rule on those that he believes are

19   material to his ultimate findings of fact.  And so with that in

20   mind, we'll take it from there.

21           Come on up, Alan.

22           MR. YORK:  Alan York for Halliburton.  In case Judge

23   Barbier was listening before on the deposition designations and is

24   still listening, a point to try to take a motion in limine off his

25   desk, I am trying to take the lightening bolts away, No. 10 on the

```
 1    court's list is BP's and others motion in limine to preclude

 2    evidence regarding discussions and settlements.

 3              THE COURT:  Yes.

 4              MR. YORK:  And I just wanted to raise the point that we

 5    already have Judge Barbier's signed PTO 38 that I think would seem

 6    to address that issue, and says that settlement discussions are

 7    neither discoverable nor admissible.  And we've been taking up the

 8    settlement agreements as they happen one at a time.  So I am just

 9    not sure whether there is something beyond what's covered by PTO 38

10    that's intended by No. 10.  But I just wanted to point it out in

11    the event that we could avoid one of the motions that's on the

12    list.

13              THE COURT:  Good.  I don't have a problem with that, and

14    as long as we're -- oh, go ahead.  I'm sorry, Steve.

15              MR. HERMAN:  Steve Herman for the plaintiffs.  If we've

16    inadvertently listed something that BP thinks falls under that or

17    any other defendant, we will be happy to meet and confer and try to

18    work that out.

19              THE COURT:  That's fine.  And while we're on that

20    subject, you will recall that last week we asked everybody to

21    contact me relative to the possibility of settlement discussions,

22    and I think everybody has contacted me so I appreciate that.

23              Relative to that:  All discussions regarding possible

24    settlement are strictly confidential.  Information exchanged

25    between the parties and the court shall not be shared with others
```

1    unless the parties who have shared the information agree to such

2    disclosure.  Some documents which might be exchanged during any

3    settlement discussions may be subject to specific confidentiality

4    agreements.  But all documents and information exchanged during any

5    such discussions will be subject to Pretrial Order No. 13 as

6    "highly confidential", and subject to Pretrial Order No. 38, which

7    Alan just referenced.  All discussions are covered by the terms of

8    Rule 408 of the Rules of Evidence.

9          So I want to make that perfectly clear to everybody, and

10   I don't think it's something that you all didn't expect, but it's

11   clear for the record this is any discussions we have are subject to

12   those terms.  So thank you, Alan, I'm glad you raised it.

13         MR. DUFFY:  Your Honor, it's Tim Duffy again.  If I just

14   could, I don't anticipate, although this is one of the problems

15   with doing motions in limine before we know what all of the

16   exhibits are, I don't anticipate, I don't know that anyone has

17   tried to put any documents or evidence of discussion in, but I

18   guess I just have to question, does discussion include the

19   agreement and the fact of settlement?  Because I think that's what

20   we're concerned about at trial.  And that's what I would anticipate

21   filing a motion on; if we don't have to, that's great.

22         THE COURT:  The agreement and the fact of settlement?

23         MR. YORK:  X party settled with Y party for so many

24   dollars.

25         THE COURT:  Why don't we think about that and see if we

1    can reach agreement on that for next week.

2         MR. DUFFY:  Okay.  We'll hold off on filing anything on

3    that topic.

4         THE COURT:  So it would be your position that at trial if

5    a settlement has been effected that is not admissible at trial?

6         MR. DUFFY:  Yeah.  I know there are exceptions to the

7    rule, but absent a particularized showing in the context of a

8    particular witness's testimony, I think that should be the general

9    rule, yeah.

10        THE COURT:  Okay.  All right.  I understand.

11        MR. UNDERHILL:  Should we defer?

12        THE COURT:  I think we should.  Do you want to comment?

13        MR. UNDERHILL:  Judge, for discussion I think it might

14   benefit now to put some of the issues on the table.  I think

15   that -- I'm trying to think through this.  I can think that on the

16   Clean Water Act penalty the amount of settlements and

17   reimbursements may, in fact, be relevant to the judge's assessment

18   of the penalty, the amount of the penalty.  It's one of the factors

19   to be considered as the financial paying upon a defendant.  And if

20   they've received reimbursement, then I think that's a factor at

21   least I think that would be for consideration.

22        The second part is that to the extent that a party

23   disputes that *McDermott v. Amclyde* applies, then the amount would

24   become relevant.  To the extent *McDermott* applies, then probably

25   the amount of the settlement isn't relevant because it's only a

```
 1    percentage of the fault of the non-settling party that counts.  So
 2    I am not sure that all parties are on board with the application of
 3    McDermott.  So I throw those out for two issues where I think that
 4    there would be a legal hurdle to make it a blanket exclusion of
 5    settlement amounts and/or agreements.  Perhaps I am wrong on that,
 6    but those are just thoughts off the top of my head.
 7              THE COURT:  Okay.  That's helpful.
 8              MR. ROY:  Your Honor, Jim Roy for the PSC.  Mr. Underhill
 9    raised the first of two points I wanted to raise, and we concur
10    with him wholeheartedly.
11              But the second point is, it should be a matter of record,
12    we think it's well established law that parties cannot settle and
13    conceal the true realignment of their interest from the trier of
14    fact.  In this case you don't have the issue, I don't think, of a
15    jury trial -- well, even if you did, the fact of a settlement
16    certainly must be disclosed and must be part of the record for the
17    court to understand the true alignment.  In this case certainly I
18    don't think anybody is going to try to say, for example, Anadarko,
19    MOEX, and BP are truly independent of each other in all of their
20    interests as a result of their settlements.  Their settlements
21    belie that fact, and the court certainly should be aware of that.
22              Not to create a new issue for today's discussion, the
23    real point is we don't think a blanket prohibition is appropriate
24    to deny the court's -- the record of these settlements.
25              THE COURT:  Tim, I think that answers our question.
```

```
 1              MR. DUFFY:  I realize these are all issues, which is why

 2    I put it on the list, because I think maybe at some point it

 3    deserves some briefing.  If we want to think about it one more week

 4    and --

 5              THE COURT:  No, I think that answers your question.  We

 6    can defer it for a week, but I am going to get the same answer from

 7    Mr. Roy and Mr. Underhill.

 8              MR. DUFFY:  We'll go ahead and file our motion and just

 9    get started on it.

10              THE COURT:  That's what I think is probably the best

11    course of action.

12              Okay.  We are almost ready to issue a schedule for

13    rebuttal experts in January.  The only thing we need is a date for

14    Dan Farr.

15              MS. CLINGMAN:  Rachel Clingman for Transocean.  We just

16    sent Mike an e-mail.  We are hoping to get that for the 10th of

17    January, he is in Singapore, we've been trading e-mails, he asked

18    for the 20th and we told him that was too late, so we hope to be

19    able to confirm as soon as I can get back with him.

20              THE COURT:  Okay.  Good, good, good.  Thank you, I

21    appreciate it.

22              Okay.  Relative to the motion, Halliburton's motion to

23    disqualify CSI and Sabins, we're going to try to hop on a ruling

24    shortly.  What I think we should do, he is set for December 14th

25    and 15th, it seems to me that what we should do because we know
```

1   there's going to be an appeal either way the ruling comes down,

2   right?  Right.  So what we should probably do is if the appeal is

3   heard by then and there's a decision, we can go forward with

4   Mr. Sabins as scheduled if that's the decision.  If, on the other

5   hand, there is not an appeal ruling by then, it seems to me we wait

6   for the ruling and only once the appeal ruling is issued do we go

7   ahead and take Mr. Sabins' deposition.  Does that make sense to you

8   guys?

9              MR. LANGAN:  Your Honor, Andy Langan for BP.  So you say

10  we keep Sabins as is?  We keep him on the schedule but understand

11  that it may be pushed off?

12             THE COURT:  Exactly.

13             MR. LANGAN:  Okay.

14             THE COURT:  So that if, in fact, we can get a ruling out

15  and have it appealed and decided on appeal before the 15th, well,

16  then okay.  I suspect that's going to be very close.

17             MR. LANGAN:  I also wanted to know, we this morning filed

18  a motion relating to the reply papers.

19             THE COURT:  I haven't read it but I saw it come in.

20             MR. LANGAN:  Okay.  That's relevant here, too.

21             THE COURT:  Okay.  Don.

22             MR. GODWIN:  Good morning, your Honor.  Don Godwin for

23  Halliburton.  We agree with what you suggest, your Honor, regarding

24  leaving the deposition on the calendar with the understanding that

25  depending upon your ruling, if there's an appeal then we would --

1   it would go to Judge Barbier; and if he has not decided it by the

2   14th, then the deposition would be rescheduled, pulled down and

3   rescheduled at a later date, we're agreeable with that.

4              THE COURT:  Okay.  Good.

5              MR. GODWIN:  Thank you, your Honor.

6              THE COURT:  Thanks, guys.

7          We had a request from the PSC for BP to produce

8   Mr. Armstrong live at trial.  Andy, have you had any opportunity to

9   consider the request?

10             MR. LANGAN:  We are considering, your Honor.  I think

11  there may be an issue about whether he is, in fact, an officer.  So

12  the rules are the rules.  If he is, then we understand.  I

13  understand we owe Mr. Herman and Mr. Roy a response on this, but.

14             THE COURT:  That's a good enough update.

15             MR. HERMAN:  I think we actually jumped the gun because I

16  think it wasn't due until today and we thought it was due last

17  week.

18             THE COURT:  Okay.  Good.

19          Does anybody want to report on the status of progress on

20  Phase One stipulations?

21             MR. DUFFY:  Your Honor, Tim Duffy again.  We circulated

22  all of the stipulations I think that have been proposed so far,

23  along with our, BP's position on them, some of which was simply we

24  can agree, some of which was we need to discuss, some were sort of

25  outside the boundaries.  We did that on November 18th and I don't

1    think we've heard anything back from anyone yet.

2              THE COURT:  Okay.  I looked at those.  Go ahead, Kerry.

3              MR. MILLER:  We made comments to the spreadsheet, and I

4    have to get that circulated to the other parties and I will do so

5    early next week.  But it looks like we ought to be in a position to

6    have a final meet and confer and some of which we can agree to, and

7    the ones we can't I think we'll just have to cut out for now.

8              THE COURT:  Okay.  Good.

9              Sarah, do you want to report on B3 stipulations?

10             MS. HIMMELHOCH:  As far as I know we are plugging away on

11   them.  I honestly dropped the ball and didn't check in with

12   Mr. Chickerus (PHONETIC), our lead on that, but I have received no

13   report of delay on that.  I think we're working away.  We have not

14   finished yet, I know that for sure.

15             THE COURT:  Okay.  Good.  All right.

16             Now, let's talk about demonstrative exhibits because

17   we've had on and off discussions about that for awhile.  Judge

18   Barbier feels very strongly that there should be no surprises at

19   trial, that demonstrative exhibits should be prepared and exchanged

20   prior to trial.  And I know that there are people in the room who

21   might have a different point of view.

22             I can see how during the course of trial an expert might

23   want to modify something based on another expert's testimony, that

24   kind of thing; but for the most part, I think that Judge Barbier

25   expects that the case in chief demonstratives should be exchanged.

1           So I would like you all to begin thinking about that, and

2    I think we should probably think about setting a deadline prior to

3    trial for exchange of those, because if there are going to be

4    objections, I think he is going to want to have the objections

5    before trial commences.  He might be able to rule on them, but

6    certainly he will be alerted to that at the time that the

7    demonstratives are used at trial.  So just something that we need

8    to start working through.

9           Okay.  Anybody want to comment?

10          MR. LANGAN:  Your Honor --

11          THE COURT:  Mr. Roy gave me a dirty look.

12          MR. LANGAN:  Your Honor, Andy Langan for BP.  I guess --

13   understood.  I think that perhaps we could talk about working

14   towards a good faith exchange what people reasonably anticipate.

15   But inevitably, I think Mr. Roy made this point in chambers, people

16   are going to be working with their experts and all of that kind of

17   thing.  And not only that, with the order of proof that Judge

18   Barbier has set under Pretrial Order 41, our case in chief may not

19   start until April, May, I don't know.

20          THE COURT:  I think it's going to move more quickly than

21   you anticipate.

22          MR. LANGAN:  Perhaps.

23          THE COURT:  But anyway, that's my projection, I don't

24   know.

25          MR. LANGAN:  All right.  A lot of projections.

```
 1              But in any event, I would be delighted to see Mr. Roy's
 2    demonstratives as soon as possible, but we're the defendant.
 3              THE COURT:  You want a December 31st deadline for
 4    Mr. Roy, right?
 5              MR. LANGAN:  But we have to be fair.  So we're going to
 6    talk about this there has some recognition of the fact that the
 7    order of proof is different and we're a defendant, so I don't know
 8    how it is that we're supposed to be required to bring forth
 9    demonstratives before we've heard their case.  So you asked for a
10    comment.
11              THE COURT:  That's a good point.  Yeah, that's a comment.
12    Who else wants to comment?  Dennis, do you have something to say?
13              MR. BARROW:  Briefly.  Dennis Barrow on behalf of
14    Dril-Quip.  I'd echo the importance of the order of proof.  We're
15    in a strange position and we're not exactly sure what we're accused
16    of doing wrong, the pleadings don't really say.  So the trial is
17    going to be interesting, and so for us it's going to be difficult
18    to prepare demonstratives defending ourselves when no one is really
19    criticizing us.  So we think it more appropriate for certain things
20    to bring them up a week ahead of time or something like that.
21              THE COURT:  Okay.  All right.  I understand the order of
22    proof issue.
23              Good morning, Mr. Sterbcow.
24              MR. STERBCOW:  Good morning, your Honor, good to see you
25    again.
```

```
 1              THE COURT:  Thank you.  You too.
 2              MR. STERBCOW:  Two issues:  On behalf of the PSC, we
 3    could live with producing our demonstratives probably two, maybe
 4    three weeks out, I think that's reasonable and it's per this
 5    courthouse's practice.
 6              THE COURT:  It is.
 7              MR. STERBCOW:  Likewise, it is my experience in this
 8    courthouse that the defendants produce demonstrative exhibits at
 9    the same time.  I've never tried a case here where I have to wait
10    until my case is over and then we stop and have a conference so I
11    can look at the other side's demonstratives, which are also
12    typically listed in the pretrial order.  And so again, I am not
13    sure why we need to change the rules for this case.  So I just
14    state for the record the PSC is likely going to have an issue with
15    that.
16              THE COURT:  Okay.  Thank you.  All right.  Anybody else
17    want to comment on that issue?
18              Let's see.  We had the issue of service of deposition
19    notice on certain third-party deponents, and the parties were
20    supposed to meet and confer and see if they could reach some
21    agreement on that by today.  Is there any report on that?
22              Good morning.
23              MR. BARR:  Good morning, your Honor, Brian Barr for the
24    PSC.
25              We have not had that meet and confer yet.  We're working
```

```
 1   on it, but we've been trying to get through all of the other
 2   30(b)(6) topics.  But Rob and I spoke a little bit a couple of
 3   weeks ago to try to coordinate that so we can get it worked out.
 4              THE COURT:  Okay.  Sounds good.  Thank you.
 5              Phase Two stipulations, where are we on working on that?
 6              MR. GASAWAY:  Your Honor, I think that's a good news
 7   story.  I think we're very close with the Department of Justice as
 8   Sarah mentioned.  We would hope to get them out next week.  I know
 9   that Sarah said within two weeks, but I think our hope is really
10   from our side to get stipulations that are agreed to by BP and the
11   Department of Justice to all of the parties by next week.
12              THE COURT:  Good.  That's great.  Thank you, Rob.
13              MR. GASAWAY:  You're welcome.
14              THE COURT:  All right.  Guys, believe it or not that's
15   the end of my agenda.
16              MS. HIMMELHOCH:  Your Honor, I have two quick things.
17              THE COURT:  Yes, Sarah.
18              MS. HIMMELHOCH:  The first is I just wanted to make sure
19   that everyone in the room is aware I had circulated a proposed
20   order regarding the, giving BP and the United States permission to
21   dispose of what we call the duplicate and trash documents that were
22   generated by the IDP.  I sent it to everyone on all of my e-mailing
23   lists, but I wanted to make sure that folks in the room were aware
24   it had gone out.  We would like to propose that to Judge Barbier in
25   the relatively near future.
```

1          And then the other thing was getting a schedule with you

2   to have the conversation between you, me, and Rob with respect to

3   the United States' deadlines.

4          THE COURT:  Do you want to propose something, do you want

5   to do it right after this meeting?

6          MS. HIMMELHOCH:  Right after this meeting would work

7   terrific for me if that works for you.

8          THE COURT:  That works fine.  So why don't you call back

9   into my office, say, in 15 minutes.

10         MS. HIMMELHOCH:  I hate to say it, but I don't have the

11  phone number in your office.

12         THE COURT:  All right.  Are you ready?

13         MS. HIMMELHOCH:  Yes.

14         THE COURT:  This should be on your computer.

15         MS. HIMMELHOCH:  It should be.

16         THE COURT:  Yeah, it should be.  Are you ready, it's

17  (504) 589-7620.

18         MS. HIMMELHOCH:  7620.  Okay.  I'll dial in about three

19  minutes after the call is over.

20         THE COURT:  All right.  Kerry.

21         MR. MILLER:  Quickly, your Honor.  We glazed over, I

22  think, Phase One trial exhibits; or if you covered it, then I was

23  asleep at the wheel.  But a question about that.  We're wading

24  through the exhibit lists and the referenced exhibits that were

25  produced in the last couple of weeks, and of course we have three

1    categories that you set forth:  Deposition exhibits, reliance

2    exhibits and other.  This comment relates to other.  And what we're

3    finding as we move into the category of other is those are exhibits

4    that weren't deposition exhibits and weren't reliance exhibits, so

5    in some case they haven't been produced.

6          So there is a reference to an exhibit -- and I just want

7    to make sure I am not missing anything to begin with -- a reference

8    to an exhibit, a photo of XYZ.  Where do I get the photo?  Is there

9    a process by which, for example, if it's a BP reference or PAC

10   reference, is there a mechanism in place where we call or access,

11   you know, the particular documents so we can look at it to see if

12   there is an objection or not?  Is anybody else experiencing that or

13   am I the only one?

14         MR. NOMILLINI:  Kerry, it's Mark Nomillini.  We are

15   facing the same issue, and I think it's twofold:  No. 1, there are

16   documents on people's exhibit lists that have been produced but

17   that I think parties haven't had time to put the Bates numbers in

18   the exhibit list documents because, for example, in the case of the

19   expert documents, a lot of them were produced nearly simultaneously

20   with the exhibit lists.

21         So my request would be to ask everyone to put into your

22   exhibit list the Bates numbers associated with produced documents,

23   if you haven't already.  And I think this applies across the board

24   to everyone, including us, just because of the timing of the

25   production of the expert documents, the Bates numbers didn't make

1    it in to most people's lists.

2           The second item that Kerry is referring to is documents

3    that have never been produced, for example, some kind of video.

4    And I think that the parties will need to work cooperatively in

5    terms of making those available for inspection so that we can

6    object to the documents on the exhibit list as soon as possible.

7           THE COURT:  Does that answer it?  Not really?

8           MR. MILLER:  No, it addresses it.  And I think I share

9    the same concerns that Mark do because there are some exhibits

10   referenced on the list that when we get into all of our databases

11   either we can't find because there is no Bates label, that was his

12   category No. 1; or we can't find because they've never been

13   produced.

14          So to make these objections by the 30th, we need to

15   develop a way for, as Mark pointed out, if it's been produced but

16   no Bates label, we need to get the Bates range for the document so

17   we can find it.  And if it's never been produced, is there a way by

18   which that can be produced without having to look through the

19   needle in the haystack approach?

20          THE COURT:  Okay.  So it seems to me what we probably

21   need to do is why don't you pull out that list of exhibits that

22   have that concern, as far as you're concerned, and circulate it to

23   everybody with a request that either it be produced so it can be

24   Bates labeled; or if it has not been Bates labeled but it's in the

25   process of being done, then we can wait until it's Bates labeled

```
 1   and you can go ahead and then object to the Bates labeled exhibit.

 2            MR. MILLER:  And I think that's right, I think it's going

 3   to have to be a comprehensive list.  We will begin to give our

 4   input, but it's a rolling issue because as you review the exhibits,

 5   that's when you find them -- well, that's when you know you can't

 6   find them, and then you compile the list that way.

 7            THE COURT:  If you can pull those out and put them on

 8   your XL spreadsheet --

 9            MR. MILLER:  And it really falls into the two categories

10   of either the reliance exhibits where you don't have the Bates

11   numbers because of the time crunch or in the other category and

12   that's where they haven't been produced.  Deposition exhibits are

13   easy.

14            THE COURT:  I assume the other category is a modest

15   number of exhibits, huh?

16            MR. MILLER:  Yeah, I don't think it's a huge number; and

17   deposition exhibits, I don't think it's a problem at all.  It's in

18   the other two categories.

19            THE COURT:  Exactly.  So let's work through that and,

20   yes, you don't need to object until you've seen it.  Once you've

21   seen it, you might not object.

22            MR. MILLER:  That allies my concern mostly, and we'll

23   develop a process by sharing which ones we think don't have the

24   referenced exhibit.

25            THE COURT:  Okay.  Thanks for raising it.  Hello, Alan.
```

1          MR. YORK:  Alan York for Halliburton.  This falls along

2    with that discussion, I think, and it's just a date clarification.

3          There was an order, working group conference order on May

4    23rd that set December 30th as the date for the parties to file

5    their live trial witness lists and their final exhibit lists.  Then

6    there was a subsequent order on September 2nd that changed some of

7    those dates that changed the date for the final exhibit lists to

8    January 13th, which we think that's the correct date; but since,

9    believe it or not, we're only now 28 days away from December 30th,

10   we want to make sure that whether the court's intent was that the

11   live witness lists and the final exhibit lists be on January 13th

12   or whether we have live witness lists on the 30th and final exhibit

13   lists on January 13th.

14          I just want to make sure we're meeting the deadlines.

15   Our preference would be that we make it all on January 13th and we

16   make it cleaner.  If no one has an objection to that.

17          THE COURT:  Does anybody have any objection to that?

18          MR. HERMAN:  No.

19          THE COURT:  Not even Mr. Roy?

20          MR. ROY:  No, ma'am.

21          THE COURT:  Make it the 13th.

22          MR. YORK:  Easy enough.  Thank you, Judge.

23          THE COURT:  Mr. Roy.

24          MR. ROY:  Yes, ma'am.

25          THE COURT:  What you got?

 1          MR. ROY:  Jim Roy for the PSC.  On an unrelated matter --

 2    well, it is related but not precisely the same.

 3          The issue of the pretrial stipulation has been a topic of

 4    discussion on our side of the fence and with some of our colleagues

 5    on the other side.  It is the view of the PSC at least that the

 6    pretrial stipulation should be largely the traditional pretrial

 7    stipulation that the court has expected in prior litigation in this

 8    district.  And we have already started preparing at least an

 9    initial draft subject to guidance from the court on what it is the

10    court would like.

11          We understand there's a separate deadline and a separate

12    listing for exhibits, got it; separate for the witnesses, got it;

13    but as far as the contention part, the stipulations part, and what

14    not, we're working on ours now and would look to ultimately

15    circulate that to the other parties.  But we would like guidance

16    whether the court wants that or whether the court wants something

17    different.  Just please give us guidance.

18          THE COURT:  I've been thinking about that.  Andy, do you

19    want to comment?

20          MR. LANGAN:  I am really glad Mr. Roy raised this.  Your

21    Honor, given the amount of work that the parties have already done

22    on witness lists, exhibit lists, and depo designations, given the

23    fact that we already have Pretrial Order 41 which structures the

24    trial, I would like to entertain the notion we dispense with any

25    such requirement for a pretrial order given all of the work that

 1   we've already done.  It sounds like a fair amount of make work, but

 2   anyway.

 3          THE COURT:  Well, it has occurred to me that a formal

 4   pretrial order may be make work and a lengthy make work process.  I

 5   do think that stipulations are helpful, I do think that perhaps

 6   listings of contested issues are helpful.  Why don't you let me

 7   speak to Judge Barbier about what he thinks we should do relative

 8   to abbreviating the pretrial order process and giving him what he

 9   thinks would be useful to him.

10          MR. ROY:  Just as I thought, I haven't discussed it with

11   my colleagues or -- I'm sorry, Phil.

12          MR. WITTMANN:  I just wanted to say I think you need a

13   pretrial order at least to the extent of setting forth what you're

14   going to do in Phase One and Phase Two so the parties are real

15   clear on what's going to happen in those phases.  I think a

16   pretrial order would be helpful in that respect.

17          THE COURT:  I am real clear.

18          MR. WITTMANN:  I am frankly not quite as clear, Judge,

19   and I would like to see it put in writing for us.

20          THE COURT:  Okay.  Thanks, Phil.

21          MR. ROY:  Yes, ma'am.  One thought to explore we would

22   suggest, your Honor, is if the court is not going to have the

23   traditional form pretrial, and I am sympathetic to Andy's comment,

24   there are a lot of separate paths being taken through separate

25   orders and instructions of the court that may all end up at the

1   same place and accomplish largely the same thing; but the one thing

2   that is not accomplished, I would respectfully submit to you, is

3   the contention part.

4         At the very least it would seem that concurrently parties

5   ought to be required to submit to the court in advance of trial the

6   same as we would do largely in a pretrial brief what our

7   contentions are.  And, you know, if not detailed argument, at least

8   semi-argument as to how the pieces fit together.

9         THE COURT:  I think that probably, and I haven't spoken

10  to Judge Barbier about this, but I think that would probably be

11  more helpful to him than the standard pretrial order.  And so I

12  will take that up with him and see what he likes.

13        MR. ROY:  We're prepared to do anything, just tell us

14  what oar we have to pull.

15        THE COURT:  You're ready.

16        MR. ROY:  We're ready.

17        THE COURT:  Okay.  Thanks, Jim, I will talk to him about

18  that.

19        MR. UNDERHILL:  Mike Underhill, U.S.  I am not normally

20  in the business of asking to write more than I have to, I usually

21  avoid a trial brief if I can.  The court clearly doesn't need a

22  statement of facts much in this case, I think the court after

23  reading the depos of two pagers understands it and the motion

24  practice knows this as well as anybody.  I am thinking in terms of

25  a legal analysis, the law, you know, like a negligence case, a slip

1   and fall case, a vessel case, Jones Act, unseaworthiness, whatever,

2   the judge knows the law.

3        On this one we've got issues like gross negligence and

4   willful misconduct that the parties may have different views as to

5   what those terms mean.  I think it may benefit the court to have

6   the parties' views on the law on the legal issues so when the court

7   hears the testimony of experts and live witnesses, and depos for

8   that matter, be a little bit easier to plug in where the court

9   thinks it needs to go.  So not a long factual brief but I think a

10  legal brief wouldn't hurt.

11       I am not necessarily limited to gross negligence and

12  willful misconduct, there may be other legal issues, but I think a

13  tight focus on those might be beneficial to Judge Barbier.

14       THE COURT:  Okay.  Good.

15       MR. YORK:  Alan York for Halliburton.  Judge, we'll

16  obviously do whatever you want us to do, but I do want to point out

17  that when we were having initial trial planning meetings and Judge

18  Barbier joined us, one of the things that he said was he did not

19  want pretrial briefs, he was going to rely on post trial briefs

20  instead.  So to some extent the issue has been addressed, I think,

21  at an earlier time.

22       THE COURT:  Okay.  Anthony, is this on the same topic?

23       MR. IRPINO:  No, Judge.

24       THE COURT:  So let me speak to Judge Barbier about that,

25  and I will try to get you all a read next week.

```
 1            All right.  Anthony, what have you got?

 2            MR. IRPINO:  I think we've kind of fallen back again, we

 3     talked about scheduling another meeting at the Swizzle Stick that

 4     we were trying to get done before Christmas.  And I was bringing

 5     that to the court's attention and seeing if there was a possibility

 6     of that occurring or shortly after the holiday.

 7            THE COURT:  Well, well...

 8            MR. WITTMANN:  I think we were on board for hosting a

 9     party that night, your Honor.

10            THE COURT:  That was my recollection, huh?  What was the

11     date, do you remember, Phil?

12            MR. WITTMANN:  The 16th?

13            MR. MAZE:  Thursday the 15th.

14            THE COURT:  Yeah, I thought it was Thursday the 15th.

15     And unless that's changed, I assume I have that on the calendar.

16            MR. WITTMANN:  I don't have my calendar with me, but I

17     think that's right.

18            THE COURT:  I tell you what, we will have that on the

19     agenda for next week, how about that?  We'll make it an agenda

20     item.

21            MR. WITTMANN:  Okay.

22            THE COURT:  All right.  Thank you.  That will be number

23     one on the agenda next week.  Exactly.

24            Okay.  Anything else?  Going, going, gone.  Thank you,

25     guys.
```

1    Would you all stick around for just a minute because

2  there's a few of you that I want to maybe talk to before I have my

3  Gasaway/Sarah conference.

4    So thank you very much, phone participants.  Thank you,

5  have a great weekend.

6    (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

7

8                    *  *  *  *  *  *

9

10              REPORTER'S CERTIFICATE

11

12    I, Karen A. Ibos, CCR, Official Court Reporter, United

13  States District Court, Eastern District of Louisiana, do hereby

14  certify that the foregoing is a true and correct transcript, to the

15  best of my ability and understanding, from the record of the

16  proceedings in the above-entitled and numbered matter.

17

18

19  _____

20              Karen A. Ibos, CCR, RPR, CRR

21              Official Court Reporter

22

23

24

25