# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | : | MDL NO. 2179 |
| "DEEPWATER HORIZON" IN THE GULF | : | |
| OF MEXICO, ON APRIL 20, 2010 | : | SECTION J |
| | : | |
| THIS DOCUMENT RELATES TO: | : | JUDGE BARBIER |
| | : | |
| ALL ACTIONS | : | MAGISTRATE JUDGE SHUSHAN |
| | : | |

........................................................................................................................................

# MEMORANDUM OF
# THE UNITED STATES OF AMERICA
# IN OPPOSITION TO BP'S MOTION TO DELAY TRIAL

## SUMMARY

For roughly 18 months the Phase 1 liability trial in this case was scheduled to begin February 27, 2012. A proposed partial settlement between BP and private party plaintiffs prompted delay of that trial, which was ultimately adjourned for an indefinite period of time to allow resolution of that partial private party settlement. BP has now moved to delay trial until mid-January, 2013 (Rec. Doc. 6266). The United States respectfully requests that BP's motion to delay trial further be denied, and that the Phase 1 trial commence at the first reasonable opportunity, in any event no later than Summer of 2012.[1]

## THE OVERRIDING PUBLIC POLICY REASONS
## SUPPORTING AN EARLY TRIAL DATE

The blowout, explosion, and fire aboard DEEPWATER HORIZON, and the resulting oil spill, was a tragedy that took eleven lives, caused the largest oil spill in our nation's history, wreaked devastating injuries to natural resources, and led to economic damages affecting people and businesses across a swath of Gulf Coast States. The United States therefore has publicly supported a settlement process whereby BP would provide relief to private parties who suffered – and those who still suffer – the devastating consequences of the personal, economic, and environmental disaster.[2]

---

[1] We believe that the trial plan in *U.S. v. BP, Transocean, et al.*, No. 10-4536, should proceed essentially the same as the Phase 1 and 2 trial structure previously governed by PTO 41. Phase 1 would be focused on the defendants' gross negligence and/or willful misconduct, as well as breaches of federal regulations, concerning the causes of the BP/Deepwater Horizon Oil Spill. Phase 2 would address quantification/flow rate, along with source control as necessary to try quantification. Clean Water Act ("CWA") penalties would be for a later phase, and natural resource damages would be addressed in a subsequent civil action.

[2] With respect to the proposed settlement between BP and the parties who comprise the proposed settling class, BP has represented that it estimates the settlement at approximately $7.8 billion, a figure that coincides with the profit of $7.685 billion the company made in merely the final *three months* of 2011.

1

BP's proposed partial resolution of private claims, however, should not allow it to impede trial and resolution of the broader *public* interests represented by the United States and the States. The United States' responsibilities under the Oil Pollution Act of 1990 ("OPA") require it to represent all of the interests of *all* of its citizens.  Likewise, through enforcement of the CWA's civil penalty provisions, the United States seeks to benefit all our citizens through prevention and deterrence of *future* spills that harm the environment and the broad economic interests flowing therefrom.  In short, the United States' claims are based not only on the goal of securing damages for prior private losses already caused by the Spill, but in restoring and protecting the Gulf for non-litigants and future generations.

BP's proposed delay would render these substantial public interests subservient to BP's corporate interest in resolving its litigation exposure to private party litigants.  This private party settlement process, however, need not preclude trial of the broader governmental claims, as the processes can and should proceed in tandem.[3]  The Court so far has very skillfully balanced the *parallel* interests of the public and the private plaintiffs.  We simply ask that the Court continue on that same path.

We also note that BP is not the only defendant in this case.  BP, Transocean and Anadarko are all liable for CWA penalties and ultimately have to answer for natural resource damages.  BP has waived limits on such damages, but the other parties have not.  Concluding a Phase 1 trial, which has every likelihood of establishing unlimited liability for natural resource damages for all

---

[3]  In addition to over-riding public policy concerns, there are many practical reasons why Phase 1 should proceed as originally planned.  Logistical and witness costs and expense are significant factors in a case this size; the additional delay proposed by BP will add considerably to those costs.  In addition, a more salient aspect of any litigation is that firm, early  trial dates promote settlements.  There is no better example than the eve-of-trial settlement between BP and the PSC here to prove this point.

defendants, will absolutely foster Gulf restoration and significantly improve the chances that damages proven in later phases will be fully collectible.  The results of a Phase1 trial are also most likely to support injunctive relief prayed for in the United States' complaint.  The simple, practical truth is that the sooner the issues of gross negligence and willful misconduct are resolved, the better it will be for all involved. Moreover, motion practice and stipulations already concluded likely narrow the scope of issues to be tried, even in Phase 1.

BP seems to suggest that the delay they propose is insubstantial; that is demonstrably not so. The trial date BP proposes would be a delay of nearly *eleven months* from the original trial date, a trial date for which all parties prepared with unprecedented effort and diligence.  After all parties answered the bell calling for a level of effort commensurate with the significance of the event and its impacts, BP now proposes that the heretofore quick march to justice should be slowed to a casual stroll.  The United States disagrees; determination of liability and fault for this historic conflagration and its impact on the Gulf should not be delayed.  Under the proposals of defendants like BP, a matter ready for trial will sit and wait – untried – for close to one year or maybe more.

BP also incongruously attempts to don the mantle of protector of the private plaintiff settlement classes by arguing that they somehow would be adversely affected if the United States and other government plaintiffs were to proceed to trial.  First, we observe that defendant BP is ill-suited to assume such a role.  More fundamentally, however, BP's argument seeks to pit the private plaintiffs' interests against the public interests of the United States, the States, and their citizens.  For our part, we decline BP's effort to stage a competition between public plaintiffs vs. private plaintiffs as – far to the contrary – we view those interests as complimentary, parallel, and non-competitive. Indeed, that is the way the litigation was handled by the public and private plaintiffs throughout this

case; it is the way in which the Court skillfully and even-handedly managed the litigation from the outset; and it is the way the United States intends to proceed going forward.

Second, BP correctly notes that with respect to assessment of the CWA penalty, both the United States and BP (and defendants Anadarko and Transocean) are entitled to put on evidence concerning the factors set out in section 311(b)(8) of the CWA, 33 U.S.C. § 1321(b)(8).[4]  The phase necessary for the parties to present relevant evidence of the section 311(b)(8) factors could be conducted following a Phase 2 trial, and need not be unduly complicated.  Indeed, much of the information is a matter of record and even publicly available.[5]  It appears, however, that BP nevertheless unnecessarily seeks to put over that hearing, and therefore the assessment of the CWA penalty, until after later resolution of claims for natural resource damages recoverable under the OPA.

In sum, the trial delay sought by BP and other defendants will delay more than just a judicial proceeding; it will inevitably delay recovery and restoration for fragile Gulf resources, the interests of which can only be vindicated by actions of the United States and the various States affected by BP's conduct.  To prevent that wholly unnecessary and harmful result, we respectfully request and urge the Court to deny BP's motion to delay trial.

---

[4]  Section 311(b)(8) of the CWA lists eight penalty factors that the Court shall consider in determining the penalty.  The penalty factors are (1) "the seriousness of the violation or violations," (2) "the economic benefit to the violator, if any, resulting from the violation," (3) "the degree of culpability involved," (4) "any other penalty for the same incident," (5) "any history of prior violations," (6) "the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge," (7) "the economic impact of the penalty on the violator," and (8) "any other matters as justice may require."

[5]  For example, BP's 2011 profit of over $25 billion is relevant to the factor specifying "the economic impact of the penalty on the violator."  The amount of the profit and other relevant information is available in BP's 2011 Annual Report, which is posted on the web.

4

Dated: May 1, 2012.                                    Respectfully submitted,

BRIAN HAUCK                                            IGNACIA S. MORENO
Deputy Assistant Attorney General                      Assistant Attorney General
Civil Division                                         Environment & Natural Resources Division

PETER F. FROST                                         JAMES NICOLL
Director, Torts Branch, Civil Division                 Senior Counsel
Aviation & Admiralty Litigation                        NANCY FLICKINGER
STEPHEN G. FLYNN                                       Senior Attorney
Assistant Director                                     SARAH HIMMELHOCH
MICHELLE T. DELEMARRE                                  Senior Attorney
SHARON K. SHUTLER                                      DEANNA CHANG
JILL DAHLMANN ROSA                                     SCOTT CERNICH
JESSICA SULLIVAN                                       A. NATHANIEL CHAKERES
JESSICA L. MCCLELLAN                                   JUDY HARVEY
MALINDA LAWRENCE                                       MATT LEOPOLD
DAVID J. PFEFFER                                       GORDON YOUNG
ROBIN HANGER                                           JEFFREY PRIETO
LAURA MAYBERRY                                         ABIGAIL ANDRE
BRIENA STRIPPOLI                                       Trial Attorneys
Trial Attorneys
U.S. Department of Justice
Torts Branch, Civil Division                           /s/ Steven O'Rourke
PO Box 14271                                           STEVEN O'ROURKE
Washington, DC 20044                                   Senior Attorney
(202) 616-4100                                         U.S. Department of Justice
(202) 616-4002 fax                                     Environmental Enforcement Section
                                                       PO Box 7611
                                                       Washington, DC 20044
/s/ R. Michael Underhill                               (202) 514-2779
R. MICHAEL UNDERHILL, T.A.                             steve.o'rourke@usdoj.gov
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
7-5395 Federal Bldg., Box 36028
450 Golden Gate Ave.
San Francisco, CA 94102-3463
(415) 436-6648
(415) 436-6632 fax
mike.underhill@usdoj.gov

JAMES LETTEN
United States Attorney

SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
Hale Boggs Federal Building
500 Poydras St., Suite B-210
New Orleans, LA 70130

Attorneys for the UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

I hereby certify that, today, the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

Dated: May 1, 2012.                     /s/  R. Michael Underhill
                                        United States Department of Justice