# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * * * * * * | MDL NO. 2179<br><br>SECTION: J<br><br><br>HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |
| Plaisance, *et al.*, individually and on behalf of the putative Medical Benefits Settlement Class,<br><br>Plaintiffs,<br><br>v.<br><br>BP Exploration & Production Inc., *et al.*,<br><br>Defendants. | * * * * * * * * * * * * * * | No. 12-CV-968<br><br>SECTION: J<br><br>HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

*DEEPWATER HORIZON* MEDICAL BENEFITS CLASS ACTION
SETTLEMENT AGREEMENT**, as Amended on May 1, 2012**

## MEDICAL BENEFITS CLASS ACTION
## SETTLEMENT AGREEMENT

**(subject to COURT approval)**

### PREAMBLE

This MEDICAL BENEFITS CLASS ACTION SETTLEMENT AGREEMENT**, dated as of April 18, 2012, and as amended from time to time** ("MEDICAL SETTLEMENT AGREEMENT"), ~~dated as of April 18, 2012,~~ is made and entered into by and among defendants BP Exploration & Production Inc. and BP America Production Company (collectively "BP"), by and through their attorneys, and the MEDICAL BENEFITS CLASS REPRESENTATIVES, individually and on behalf of the MEDICAL BENEFITS SETTLEMENT CLASS, by and through the MEDICAL BENEFITS CLASS COUNSEL.  This MEDICAL SETTLEMENT AGREEMENT is intended by the PARTIES fully, finally, and forever to resolve, discharge, and settle all RELEASED CLAIMS against the RELEASED PARTIES, as set forth below, subject to review and approval by the COURT.[1]

### RECITALS

A.     BP Exploration & Production Inc. and BP America Production Company are corporations organized under the laws of the State of Delaware and are engaged in the business of oil and gas exploration, production, and/or development.

B.     The MEDICAL BENEFITS CLASS REPRESENTATIVES are the named plaintiffs in the MEDICAL CLASS ACTION COMPLAINT in the action entitled *Plaisance, et al. v. BP Exploration & Production Inc., et al.*, filed on April 16, 2012, in the COURT.

---

[1]   Terms that appear in capital letters are defined terms, and such definitions apply throughout this MEDICAL SETTLEMENT AGREEMENT.

II.  **DEFINITIONS**

For purposes of this MEDICAL SETTLEMENT AGREEMENT, the following terms (designated by capitalization throughout this MEDICAL SETTLEMENT AGREEMENT) shall have the meanings set forth below:

A.  ACTUAL HOSPITAL EXPENSES shall mean those expenses incurred by or on behalf of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER for treatment while hospitalized for an ACUTE CONDITION or CHRONIC CONDITION where the hospitalization occurred within the timeframe set forth on the SPECIFIED PHYSICAL CONDITIONS MATRIX; provided, however, that where the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER was diagnosed with or treated for a condition other than an ACUTE CONDITION or CHRONIC CONDITION, the costs incurred in connection with such diagnosis or treatment are not ACTUAL HOSPITAL EXPENSES.  In no case shall ACTUAL HOSPITAL EXPENSES exceed the actual amount paid for the medical item, service, and/or prescription drug by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, any insurer, GOVERNMENT PAYER, or OTHER PAYER/PROVIDER as satisfaction in full for the claim, whether under a negotiated payment rate or otherwise.

B.  ACUTE CONDITION shall mean those SPECIFIED PHYSICAL CONDITIONS compensable on levels A1, A2, A3, and A4 of the SPECIFIED PHYSICAL CONDITIONS MATRIX.

C.  ADMINISTRATIVE BUDGET shall mean the administrative expense budget to be developed by the CLAIMS ADMINISTRATOR.

D.  ADMINISTRATIVE EXPENSES shall mean the SETTLEMENT COSTS described in Section XXII.D.3.

E.  ADMINISTRATIVE FUND shall mean the fund described in Section XXII.D.3.

8

F.      AFFILIATE shall mean with respect to any person or entity, any other person or entity that directly, or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, such person or entity.

G.      AUTHORIZED REPRESENTATIVE shall mean, as to a NATURAL PERSON who is (1) a minor, (2) lacking capacity or incompetent, or (3) an estate of a deceased human being, that NATURAL PERSON'S guardian, conservator, tutor, executor, personal representative, administrator, or other representative authorized under or by operation of applicable law to protect the rights and interests of that NATURAL PERSON.

H.      BACK-END LITIGATION OPTION shall mean the right of certain MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS to bring a lawsuit against a BACK-END LITIGATION OPTION DEFENDANT for a LATER-MANIFESTED PHYSICAL CONDITION, subject to the terms and conditions of Section VIII.

I.      BACK-END LITIGATION OPTION DEFENDANT shall mean a BP defendant (i) that  a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER has named in a NOTICE OF INTENT TO SUE,  (ii) that either does not exercise its option to mediate or exercises its option to mediate and the mediation does not resolve the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim, and (iii) that the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER names as a defendant in a BACK-END LITIGATION OPTION LAWSUIT.

J.      BACK-END LITIGATION OPTION LAWSUIT shall mean that lawsuit brought by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER against a BACK-END LITIGATION OPTION DEFENDANT for a LATER-MANIFESTED PHYSICAL CONDITION, in accordance with the provisions of Section VIII.

9

K.      BP shall mean BP Exploration & Production Inc. and BP America Production Company and their respective successors or assigns.

L.      BP ENTITIES shall mean BP Exploration & Production Inc., BP America Production Company, BP America Inc., BP Company North America Inc., BP Corporation North America Inc., BP Corporation North America Inc. Savings Plan Investment Oversight Committee, BP Energy Company, BP Exploration (Alaska) Inc., BP Global Special Products (America) Inc., BP Holdings North America Limited, BP p.l.c., BP Products North America Inc., and each of their respective direct or indirect parents, subsidiaries and subsidiary undertakings (as those terms are defined in the U.K. Companies Act 2006), AFFILIATES, divisions, and business units.

M.      BP'S COUNSEL shall mean Kirkland & Ellis LLP, Arnold & Porter LLP, and Liskow & Lewis.

N.      CHECK CASHING ARRANGEMENT shall mean the agreement between the LEAD PAYING AGENT and the GULF REGION BANK that provides that checks drawn on the GENERAL MEDICAL CLAIMS FUND will be eligible to be cashed or deposited in branches of the GULF REGION BANK, as described in Section XXII.N.

O.      CHRONIC CONDITION shall mean those SPECIFIED PHYSICAL CONDITIONS compensable on level B1 of the SPECIFIED PHYSICAL CONDITIONS MATRIX.

P.      CLAIMS ADMINISTRATOR shall mean that person or entity selected by the MEDICAL BENEFITS CLASS COUNSEL and BP and approved by the COURT who shall implement and administer this MEDICAL BENEFITS CLASS ACTION SETTLEMENT according to its terms and procedures for the benefit of the MEDICAL BENEFITS

10

SETTLEMENT CLASS, including: the collection, identification, and tabulation of any OPT OUTS; the transmission to BP'S COUNSEL and the MEDICAL BENEFITS CLASS COUNSEL of the identity and number of OPT OUTS; processing all claims for compensation for SPECIFIED PHYSICAL CONDITIONS and paying all qualifying claims; processing all claims for participation in the PERIODIC MEDICAL CONSULTATION PROGRAM and administering that program; performing administrative tasks relating to the BACK-END LITIGATION OPTION and related mediations; administering the GULF REGION HEALTH OUTREACH PROGRAM; making periodic reports to the COURT, BP'S COUNSEL, and MEDICAL BENEFITS CLASS COUNSEL; assisting in implementation of the MEDICAL BENEFITS SETTLEMENT CLASS NOTICE PLAN; **and** administering the process for the identification and satisfaction of liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type by GOVERNMENTAL PAYERS, MEDICARE PART C OR PART D PROGRAMS, and OTHER PAYERS/PROVIDERS and reporting to CMS and state agencies; and serving as trustee of the MEDICAL SETTLEMENT TRUST.

Q.    CLEAN-UP WORKERS shall mean all NATURAL PERSONS who performed RESPONSE ACTIVITIES, including:

1)    Captains, crew, and other workers employed under the Vessels of Opportunity ("VoO") program who performed RESPONSE ACTIVITIES;

2)    Workers employed to perform the decontamination of vessels involved in RESPONSE ACTIVITIES;

3)    Captains, crew, and other workers on vessels other than VoO who performed RESPONSE ACTIVITIES;

4)      Onshore personnel employed to perform RESPONSE ACTIVITIES; and

5)      Persons involved in the recovery, transport, and decontamination of wildlife affected by the *DEEPWATER HORIZON* INCIDENT.

R.      CMS shall mean the Centers for Medicare & Medicaid Services, the agency within the United States Department of Health and Human Services responsible for administration of the MEDICARE PROGRAM and the MEDICAID PROGRAM.

S.      COMMUNITY HEALTH WORKERS TRAINING PROJECT shall mean the project described in Section IX.C.2.c and Exhibit 15.

T.      COMPENSATORY DAMAGES, as used in Section XVII, shall mean any and all forms of damages, known or unknown, arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT, regardless of what such damages are designated, called, or labeled, for: (1) personal injury or bodily injury (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life), and any progression and/or exacerbation of personal injury or bodily injury, or wrongful death and/or survival actions as a result thereof; (2) loss of support, services, consortium, companionship, society or affection, or damage to familial relations arising out of any personal injury or bodily injury (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life) to another person, and any progression and/or exacerbation of personal injury or bodily injury to another person, or wrongful death and/or survival actions as a result thereof; (3) increased risk, possibility, or fear of suffering in the future from any disease, injury, illness, emotional or mental harm, condition, or death; and (4) medical screening and medical monitoring for undeveloped, unmanifested, and/or undiagnosed conditions.  COMPENSATORY DAMAGES do not include and may not be

interpreted to have any overlap with punitive, exemplary, multiple, or non-compensatory damages. The PARTIES further acknowledge and agree that the term COMPENSATORY DAMAGES as defined and used herein does not limit the total relevant amounts to be used for the calculation of punitive or other non-compensatory damages in any current or future litigation pursued by the MEDICAL BENEFITS SETTLEMENT CLASS, MEDICAL BENEFITS CLASS REPRESENTATIVES, and MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS.

U.      COURT shall mean the United States District Court for the Eastern District of Louisiana, Judge Carl Barbier, presiding in *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179.

V.      DAMAGES shall mean all forms of damages defined as broadly as possible without exception, including losses, costs, expenses, taxes, requests, royalties, rents, fees, profits, profit shares, earning capacity, loss of subsistence, damages to real or personal property, diminution in property value, punitive damages, exemplary damages, multiple damages, non-compensatory damages, COMPENSATORY DAMAGES, economic damages, injuries, liens, remedies, debts, claims, causes of action, or liabilities arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT, regardless of what such damages are designated, called, or labeled, for: (1) personal injury or bodily injury (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life), and any progression and/or exacerbation of personal injury or bodily injury, or wrongful death and/or survival actions as a result thereof; (2) loss of support, services, consortium, companionship, society or affection, or damage to familial relations arising out of any personal injury or bodily injury (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life) to another

13

person, and any progression and/or exacerbation of personal injury or bodily injury to another person, or wrongful death and/or survival actions as a result thereof; (3) increased risk, possibility, or fear of suffering in the future from any disease, injury, illness, emotional or mental harm, condition, or death; and (4) medical screening and medical monitoring for undeveloped, unmanifested, and/or undiagnosed conditions.

W.      DATA DISCLOSURE FORM shall mean that document, substantially in the form of Exhibit 1, that a ~~MEDICAL BENEFITS SETTLEMENT CLASS MEMBER~~**NATURAL PERSON** shall use to request information from the CLAIMS ADMINISTRATOR in accordance with Section XXI.B.3.b.

X.      *DEEPWATER HORIZON* INCIDENT shall mean the events, actions, inactions, and omissions leading up to and including (i) the blowout of the MC252 WELL, (ii) the explosions and fire on board the *Deepwater Horizon* on or about April 20, 2010, (iii) the sinking of the *Deepwater Horizon* on or about April 22, 2010, (iv) the release of oil, other hydrocarbons, and other substances from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, (v) the efforts to contain the MC252 WELL, and (vi) RESPONSE ACTIVITIES.

Y.      DEFECT shall mean any failure of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER to provide required information or documentation to the CLAIMS ADMINISTRATOR in accordance with Sections VI, VII, or VIII.

Z.      DWH TRUST shall mean the irrevocable common law trust established under Delaware law pursuant to the trust agreement titled "Deepwater Horizon Oil Spill Trust" dated August 6, 2010, and entered into among BP Exploration & Production Inc.; John S. Martin, Jr. and Kent D. Syverud, as individual trustees; and Citigroup Trust-Delaware, N.A., as corporate trustee.

14

AA.    DWH TRUST AGREEMENT shall mean the agreement dated August 6, 2010, establishing the DWH TRUST.

BB.    EFFECTIVE DATE shall mean (1) if no appeal is perfected or sought, the day following the expiration of the deadline for appealing the entry by the COURT of the FINAL ORDER AND JUDGMENT, (2) the day following the date all appellate courts with jurisdiction affirm the FINAL ORDER AND JUDGMENT or all such appeals are dismissed or denied, or (3) such date as MEDICAL BENEFITS CLASS COUNSEL and BP otherwise agree in writing.

CC.    ENVIRONMENTAL HEALTH CAPACITY AND LITERACY PROJECT shall mean the project described in Section IX.C.2.d and Exhibit 16.

DD.    FAIRNESS HEARING shall be the hearing scheduled by the COURT to consider the fairness, reasonableness, and adequacy of this MEDICAL SETTLEMENT AGREEMENT under Rule 23(e)(2) of the Federal Rules of Civil Procedure and to determine whether a FINAL ORDER AND JUDGMENT should be entered.

EE.    FINAL ORDER AND JUDGMENT shall mean that order entered by the COURT, described in Section XVIII.

FF.    FUNDS shall, collectively, mean the **MEDICAL SETTLEMENT TRUST ACCOUNT, the** GENERAL MEDICAL CLAIMS FUND, **the** GULF REGION HEALTH OUTREACH PROJECTS FUND, and the ADMINISTRATIVE FUND.

GG.    GCCF shall mean the Gulf Coast Claims Facility.

HH.    GENERAL MEDICAL CLAIMS FUND shall mean the fund described in Section XXII.D.2.

II.    GOVERNMENTAL PAYER shall mean any federal, state, or other governmental body, agency, department, plan, program, or entity that administers, funds, pays, contracts for, or

provides medical items, services, and/or prescription drugs, including but not limited to the MEDICARE PROGRAM, the MEDICAID PROGRAM, TRICARE, the Department of Veterans Affairs, and the Department of Indian Health Services; provided, however, that the term GOVERNMENTAL PAYER shall not include MEDICARE PART C OR PART D PROGRAMS or OTHER PAYERS/PROVIDERS.

JJ.     GRANT AGREEMENT shall mean an agreement substantially in the form of Exhibit 2, to be executed by each grantee for a GULF REGION HEALTH OUTREACH PROJECT.

KK.     GUARDIAN AD LITEM shall mean that person nominated by the agreement of BP and MEDICAL BENEFITS CLASS COUNSEL and approved by the COURT to perform the duties set forth in Section III.C.

LL.     GULF REGION BANK shall mean one or more federally insured depository institutions with branch locations throughout the Gulf Region.

MM.     GULF REGION HEALTH OUTREACH PROGRAM shall mean the program described in Section IX.

NN.     GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE shall mean the body described in Section IX.G.

OO.     GULF REGION HEALTH OUTREACH PROJECTS shall mean the COMMUNITY HEALTH WORKERS TRAINING PROJECT, the ENVIRONMENTAL HEALTH CAPACITY AND LITERACY PROJECT, the MENTAL AND BEHAVIORAL HEALTH CAPACITY PROJECT, and the PRIMARY CARE CAPACITY PROJECT.

PP.     GULF REGION HEALTH OUTREACH PROJECTS FUND shall mean the fund described in Section XXII.D.1.

QQ.     GULF REGION HEALTH OUTREACH PROJECTS LIBRARY shall mean the library described in Section IX.H.

RR.     HALLIBURTON shall mean Halliburton Energy Services, Inc. and all and any of its AFFILIATES, other than any person or entity that is also an AFFILIATE of any of the RELEASED PARTIES as of April 16, 2012.

SS.     HALLIBURTON PARTIES shall mean HALLIBURTON (including all persons, entities, subsidiaries, divisions and business units comprised thereby); each of HALLIBURTON'S respective past, present and future directors, officers, employees, general or limited partners, members, joint venturers, and shareholders, and the past, present and future spouses, heirs, beneficiaries, estates, executors, administrators, personal representatives, attorneys, agents, trustees, insurers, reinsurers, predecessors, successors, indemnitees, assigns, AFFILIATES; any natural, legal or juridical person or entity acting on behalf of or having liability in respect of HALLIBURTON, in their respective capacities as such; and the federal Oil Spill Liability Trust Fund and any state or local fund, and each of their respective AFFILIATES including their officers, directors, shareholders, employees, and agents.

TT.     HIPAA shall mean the administrative simplification provisions of the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) and the implementing regulations issued thereunder, 45 C.F.R. Parts 160, 162, and 164, and shall incorporate by reference the provisions of the Health Information Technology for Economic and Clinical Health Act (Title XIII of Division A and Title IV of Division B of the American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5 (2009)) pertaining to PROTECTED HEALTH INFORMATION.

UU.     INTERIM CLASS COUNSEL shall mean James P. Roy and Stephen J. Herman.

VV.   LATER-MANIFESTED PHYSICAL CONDITION shall mean a physical condition that is first diagnosed in a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER after April 16, 2012, and which is claimed to have resulted from such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S exposure to oil, other hydrocarbons, or other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or exposure to dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, where such exposure occurred on or prior to September 30, 2010, for ZONE A RESIDENTS; on or prior to December 31, 2010, for ZONE B RESIDENTS; and on or prior to April 16, 2012, for CLEAN-UP WORKERS.

WW.   LEAD PAYING AGENT shall mean the entity as described in Section XXII.L and N.

XX.   LIBRARY MATERIALS shall mean the materials for the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY described in Section IX.H.

YY.   MC252 WELL shall mean the exploratory well named "Macondo" that was being drilled by the Transocean *Marianas* and *Deepwater Horizon* rigs in Mississippi Canyon, Block 252 on the outer continental shelf in the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

ZZ.   MEDIATION INFORMATION FORM shall mean that document, substantially in the form of Exhibit 3, to be submitted to the CLAIMS ADMINISTRATOR by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER claiming a LATER-MANIFESTED PHYSICAL CONDITION where a BP defendant has requested that a mediation take place.

AAA.  MEDICAID PROGRAM shall mean the federal program administered by the states under which certain medical items, services, and/or prescription drugs are furnished to Medicaid beneficiaries under Title XIX of the Social Security Act, 42 U.S.C. § 1396–1, *et seq*.

BBB.  MEDICAL BENEFITS CLASS ACTION SETTLEMENT shall mean that settlement contemplated under this MEDICAL SETTLEMENT AGREEMENT.

CCC.  MEDICAL BENEFITS CLASS COUNSEL shall mean INTERIM CLASS COUNSEL and, upon appointment, such other counsel as the COURT may appoint to represent the MEDICAL BENEFITS SETTLEMENT CLASS.   Upon appointment, INTERIM CLASS COUNSEL shall serve as Lead Class Counsel.

DDD.  MEDICAL BENEFITS CLASS REPRESENTATIVES shall mean Kip Plaisance, Jason Perkins, Camille Warren, Christian Pizani, Max Plaisance, Benjamin Judah Barbee, Cornelius Divinity, Janice Brown, Carlton Caster, George Baker, and Duffy Hall, or such other or different persons as may be designated by the COURT as the representatives of the MEDICAL BENEFITS SETTLEMENT CLASS.

EEE.  MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall mean each NATURAL PERSON who is a member of the MEDICAL BENEFITS SETTLEMENT CLASS.

FFF.   MEDICAL BENEFITS SETTLEMENT CLASS NOTICE shall mean that notice described in Section XI.

GGG.  MEDICAL BENEFITS SETTLEMENT CLASS NOTICE AGENT shall mean that person or entity who shall implement the MEDICAL BENEFITS SETTLEMENT CLASS NOTICE PLAN and who shall be responsible for the publication and giving of notice to the MEDICAL BENEFITS SETTLEMENT CLASS.

HHH.  MEDICAL BENEFITS SETTLEMENT CLASS NOTICE PLAN shall mean that which sets forth the methods, timetable, and responsibilities for providing notice of this MEDICAL BENEFITS CLASS ACTION SETTLEMENT to MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS.

III.    MEDICAL CLASS ACTION COMPLAINT shall mean the complaint captioned "*Plaisance, et al. v. BP Exploration & Production Inc., et al.*" filed in the COURT on April 16, 2012.

JJJ.    MEDICAL SETTLEMENT TRUST shall mean the trust described in Section XXII.C and D to be established for the purpose of paying SETTLEMENT COSTS.

**KKK. MEDICAL SETTLEMENT TRUST ACCOUNT shall mean that account created under the MEDICAL SETTLEMENT TRUST AGREEMENT and held by the trustee and the directed trustee of the MEDICAL SETTLEMENT TRUST into which BP shall make payments pursuant to Section XXII of this MEDICAL SETTLEMENT AGREEMENT.**

**LLL.** ~~KKK.~~   MEDICAL SETTLEMENT TRUST AGREEMENT shall mean the agreement that will establish the MEDICAL SETTLEMENT TRUST and entered into among BP, the MEDICAL BENEFITS CLASS COUNSEL, ~~and~~ the CLAIMS ADMINISTRATOR ~~as~~**,** **and the** trustee **and the directed trustee of the MEDICAL SETTLEMENT TRUST AGREEMENT**.

**MMM.** ~~LLL.~~  MEDICARE PART C OR PART D PROGRAM shall mean the program (or programs) under which Medicare Advantage, Medicare cost, and Medicare health care prepayment plan benefits and Medicare Part D prescription drug plan benefits are administered by private entities that contract with CMS.

**NNN.** ~~MMM.~~ MEDICARE PROGRAM shall mean the Medicare Parts A and B federal program administered by CMS under which certain medical items, services, and/or prescription drugs are furnished to Medicare beneficiaries under Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq*.

**OOO.** ~~NNN.~~ MENTAL AND BEHAVIORAL HEALTH CAPACITY PROJECT shall mean the project described in Section IX.C.2.b. and Exhibit 14.

**PPP.** ~~OOO.~~ MONTHLY ESTIMATE shall mean the monthly process described in Section XXII.G by which the CLAIMS ADMINISTRATOR will provide BP with an amount that BP shall contribute to the GENERAL MEDICAL CLAIMS FUND.

**QQQ.** ~~PPP.~~ MSP shall mean the Medicare Secondary Payer Act, set forth at 42 U.S.C. § 1395y(b), as amended from time to time.

**RRR.** ~~QQQ.~~ MSP LAWS shall mean the MSP and implementing regulations, including but not limited to 42 C.F.R. Part 411 Subparts B - H, 42 C.F.R. § 422.108 (Medicare Part C regulations), and 42 C.F.R. § 423.462 (Medicare Part D regulations), and other applicable written CMS guidance.

**SSS.** ~~RRR.~~ NATURAL PERSON shall mean a human being and, in the case of a human being who died on or after April 20, 2010, shall include such human being's estate.  For purposes of this MEDICAL SETTLEMENT AGREEMENT, a NATURAL PERSON who is (1) a minor, (2) lacking capacity or incompetent, or (3) an estate of a deceased human being shall be deemed to act through his, her, or its AUTHORIZED REPRESENTATIVE.

**TTT.** ~~SSS.~~ NOTICE OF DEFECT shall mean that document that the CLAIMS ADMINISTRATOR shall send to any MEDICAL BENEFITS SETTLEMENT CLASS

MEMBER whose PROOF OF CLAIM FORM or NOTICE OF INTENT TO SUE contains a DEFECT.

**UUU.** ~~TTT.~~ NOTICE OF INTENT TO SUE shall mean that document, substantially in the form of Exhibit 4, to be submitted to the CLAIMS ADMINISTRATOR by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER seeking to bring a BACK-END LITIGATION OPTION LAWSUIT.

**VVV.** ~~UUU.~~ OPT OUT shall mean the process by which any NATURAL PERSON included in the MEDICAL BENEFITS SETTLEMENT CLASS exercises his or her right to exclude himself or herself from the MEDICAL BENEFITS SETTLEMENT CLASS in accordance with Fed. R. Civ. P. 23(c)(2).

**WWW.** ~~VVV.~~ OPT OUTS shall mean those NATURAL PERSONS included in the MEDICAL BENEFITS SETTLEMENT CLASS definition who have timely and properly exercised their rights to OPT OUT and therefore are not MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS.

**XXX.** ~~WWW.~~ OTHER PARTY shall mean every person, entity, or party other than the RELEASED PARTIES.

**YYY.** ~~XXX.~~ OTHER PAYER/PROVIDER shall mean any healthcare provider, employer, workers' compensation carrier (including a state workers' compensation fund), group health plan, non-group health plan, insurer, Federal Employees Health Benefit plan (such as Blue Cross Federal or Blue 365), or other entity (other than a GOVERNMENTAL PAYER, MEDICARE PART C OR PART D PROGRAM sponsor, or MEDICAL BENEFITS SETTLEMENT CLASS MEMBER), that administers, funds, pays, contracts for, or provides

medical items, services, and/or prescription drugs to a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

**ZZZ.** ~~YYY.~~ OTHER RELEASED PARTIES shall mean those persons, entities, divisions, and business units listed on Exhibit 6. Notwithstanding anything herein to the contrary, in no event shall any of the following be deemed to be a RELEASED PARTY: TRANSOCEAN or HALLIBURTON. The MEDICAL BENEFITS SETTLEMENT CLASS, MEDICAL BENEFITS CLASS REPRESENTATIVES, and MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS specifically reserve its and their rights for punitive and exemplary damages against TRANSOCEAN and HALLIBURTON subject to Section XVII.

**AAAA.** ~~ZZZ.~~ PARTIES shall mean the MEDICAL BENEFITS CLASS REPRESENTATIVES, individually and on behalf of the MEDICAL BENEFITS SETTLEMENT CLASS, and BP.

**BBBB.** ~~AAAA.~~ PAYING AGENT AGREEMENT shall mean the agreement described in Section XXII.N.

**CCCC.** ~~BBBB.~~ PERIODIC MEDICAL CONSULTATION PROGRAM shall mean that program described in Section VII and Exhibit 12.

**DDDD.** ~~CCCC.~~ PHYSICIAN'S CERTIFICATION FORM shall mean that document attached as Appendix C to the NOTICE OF INTENT TO SUE, and described in Section XXI.I.7.

**EEEE.** ~~DDDD.~~ PLAINTIFFS' STEERING COMMITTEE or PSC shall mean those counsel appointed to the PLAINTIFFS' STEERING COMMITTEE by the COURT, in its Pretrial Order No. 46, dated October 5, 2011 (Doc. 4226) in MDL 2179.

**FFFF.** ~~EEEE.~~ PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER shall mean an order entered by the COURT.

**GGGG.** ~~FFFF.~~ PRIMARY CARE CAPACITY PROJECT shall mean the project described in Section IX.C.2.a and Exhibit 13.

**HHHH.** ~~GGGG.~~ PROOF OF CLAIM FORM shall mean that document, substantially in the form of Exhibit 5, to be submitted under penalty of perjury to the CLAIMS ADMINISTRATOR by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER applying for compensation for a SPECIFIED PHYSICAL CONDITION and/or participation in the PERIODIC MEDICAL CONSULTATION PROGRAM.

**IIII.** ~~HHHHH.~~ PROTECTED HEALTH INFORMATION shall mean individually identifiable health information, as defined in 45 C.F.R. § 160.103.

**JJJJ.** ~~IIII.~~ RELATED CLAIMS shall mean all claims brought by MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS against RELEASED PARTIES pending in the COURT, in any other federal court, in any state court, or in any other tribunal or forum that are covered by the RELEASE set forth in Section XVI.

**KKKK.** ~~JJJJ.~~ RELEASE shall mean those terms of this MEDICAL SETTLEMENT AGREEMENT set forth in Section XVI.

**LLLL.** ~~KKKK.~~ RELEASED CLAIMS shall mean those claims described in Section XVI.

**MMMM.** ~~LLLL.~~ RELEASED PARTIES for purposes of the RELEASED CLAIMS shall mean (i) the BP ENTITIES (including all persons, entities, subsidiaries, divisions, and business units comprised thereby), together with (ii) the DWH TRUST, (iii) the persons, entities, divisions, and business units listed on Exhibit 6 ("OTHER RELEASED PARTIES"); (iv) each of the BP ENTITIES and the OTHER RELEASED PARTIES' respective past, present, and future directors, officers, employees, general or limited partners, members, joint venturers, and

shareholders, and their past, present, and future spouses, heirs, beneficiaries, estates, executors, administrators, personal representatives, attorneys, agents, trustees, insurers, reinsurers, predecessors, successors, indemnitees, and assigns; and (v) any natural, legal, or juridical person or entity acting on behalf of or having liability in respect of the BP ENTITIES or the OTHER RELEASED PARTIES, in their respective capacities as such; and, as to (i)-(v) above, each of their respective AFFILIATES, including their AFFILIATES' officers, directors, shareholders, employees, and agents.   RELEASED PARTIES shall also include any vessels owned or chartered by any RELEASED PARTY (except for the *Deepwater Horizon* itself). Notwithstanding anything herein to the contrary, in no event shall any of the following be deemed to be a RELEASED PARTY:  TRANSOCEAN or HALLIBURTON.  The MEDICAL BENEFITS SETTLEMENT CLASS, MEDICAL BENEFITS CLASS REPRESENTATIVES, and MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS specifically reserve its and their rights for punitive and exemplary damages against TRANSOCEAN and HALLIBURTON subject to Section XVII.

**NNNN.** ~~MMMM.~~ REQUEST FOR REVIEW FORM shall mean that document, substantially in the form of Exhibit 7, that a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER shall use to request a one-time review of a denial of his or her claim in accordance with Section V.M.

**OOOO.** ~~NNNN.~~ RESPONSE ACTIVITIES shall mean the clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances that were done under the auspices of the Unified Command, BP, or a federal, state, or local authority.

**PPPP.**   ~~OOOO.~~ SETTLEMENT BENEFITS shall mean those benefits that qualifying MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS may receive under the terms of the MEDICAL SETTLEMENT AGREEMENT, including compensation for SPECIFIED PHYSICAL CONDITIONS as set forth in the SPECIFIED PHYSICAL CONDITIONS MATRIX, medical consultation visits under the PERIODIC MEDICAL CONSULTATION PROGRAM, the right to seek compensation for a LATER-MANIFESTED PHYSICAL CONDITION from BP under the BACK-END LITIGATION OPTION, and benefits provided under the GULF REGION HEALTH OUTREACH PROGRAM.

**QQQQ.**   ~~PPPP.~~ SETTLEMENT COSTS shall mean (i) all compensation for SPECIFIED PHYSICAL CONDITIONS as provided in Section VI and Exhibit 8; (ii) all costs associated with the PERIODIC MEDICAL CONSULTATION PROGRAM as provided in Section VII; (iii) all costs associated with the GULF REGION HEALTH OUTREACH PROGRAM as provided in Section IX; (iv) all applicable federal, state, or local taxes on monies held ~~by~~**in** the ~~**CLAIMS ADMINISTRATOR**~~**MEDICAL SETTLEMENT TRUST** in accordance with the terms of this MEDICAL SETTLEMENT AGREEMENT; (v) all reasonable compensation to and all reasonable out-of-pocket costs and expenses incurred by the CLAIMS ADMINISTRATOR (including the CLAIMS ADMINISTRATOR'S staff and contractors) in performing its duties in accordance with Sections V and XXI, the GUARDIAN AD LITEM in performing his or her duties in accordance with Section III.C, and the mediators used in connection with claims for LATER-MANIFESTED PHYSICAL CONDITIONS in performing their duties in accordance with Section VIII.E; (vi) all reasonable costs and expenses associated with the MEDICAL BENEFITS SETTLEMENT CLASS NOTICE and implementation of the MEDICAL BENEFITS SETTLEMENT CLASS NOTICE PLAN, including any supplements thereto

26

ordered by the COURT, and all reasonable compensation to and all reasonable out-of-pocket costs and expenses incurred by the MEDICAL BENEFITS SETTLEMENT CLASS NOTICE AGENT (including the NOTICE AGENT'S staff and contractors) in performing its duties in accordance with Section XI; **and** (vii**) all reasonable costs and compensation associated with the operations and administration of the MEDICAL SETTLEMENT TRUST; and (viii**) all other costs and compensation reasonably associated with the implementation and administration of this MEDICAL SETTLEMENT AGREEMENT.  BP shall have the right to challenge before the COURT the reasonableness of any compensation, costs, and/or expenses sought by the NOTICE AGENT, the CLAIMS ADMINISTRATOR, **the trustee and/or the directed trustee of the MEDICAL SETTLEMENT TRUST,** the GUARDIAN AD LITEM, or the mediators.

**RRRR.** ~~QQQQ.~~ SPECIFIED PHYSICAL CONDITION shall mean one or more of the ACUTE CONDITIONS or CHRONIC CONDITIONS identified in Exhibit 8 that arose out of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S exposure to oil, other hydrocarbons, or other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, and that first manifested or was exacerbated within the timeframes set forth in Exhibit 8.  Notwithstanding any of the foregoing, a SPECIFIED PHYSICAL CONDITION shall not include any conditions or symptoms claimed by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER which conditions or symptoms resulted from the August 23, 2010, ammonia leak reported at Millard Refrigerated Services in Theodore, Alabama.

**SSSS.** ~~RRRR.~~ SPECIFIED PHYSICAL CONDITIONS MATRIX shall mean that document attached as Exhibit 8.

**TTTT.** ~~SSSS.~~ TRANSOCEAN shall mean Transocean Ltd., Transocean, Inc., Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH and all and any of their AFFILIATES, other than any person or entity that is also an AFFILIATE of any of the RELEASED PARTIES as of April 16, 2012.

**UUUU.** ~~TTTT.~~ TRANSOCEAN PARTIES shall mean TRANSOCEAN (including all persons, entities, subsidiaries, divisions and business units comprised thereby); each of TRANSOCEAN'S respective past, present and future directors, officers, employees, general or limited partners, members, joint venturers, and shareholders, and their past, present and future spouses, heirs, beneficiaries, estates, executors, administrators, personal representatives, attorneys, agents, trustees, insurers, reinsurers, predecessors, successors, indemnitees, assigns, AFFILIATES; any natural, legal or juridical person or entity acting on behalf of or having liability in respect of TRANSOCEAN, in their respective capacities as such; and the federal Oil Spill Liability Trust Fund and any state or local fund, and each of their respective AFFILIATES including their officers, directors, shareholders, employees, and agents.

**VVVV.** ~~UUUU.~~ TRICARE shall mean the federal program managed and administered by the United States Department of Defense through the TRICARE Management Activity under which certain medical items, services, and/or prescription drugs are furnished to eligible members of the military services, military retirees, and military dependants under 10 U.S.C. § 1071, *et seq*.

**WWWW.** ~~VVVV.~~ UNKNOWN CLAIMS shall mean all past, present, and future claims arising out of facts, including new facts or facts found hereafter to be other than or different from the facts now believed to be true, relating in any way to any matter covered by the RELEASE in

Section XVI that MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS do not in whole or in part know or suspect to exist in their favor and which, if known by them, might have affected their decision to settle; provided, however, that UNKNOWN CLAIMS shall not include claims for LATER-MANIFESTED PHYSICAL CONDITIONS in accordance with Section VIII.

**XXXX.** ~~WWWW.~~ ZONE A shall mean the geographic areas described in Exhibit 9, and depicted in the map contained in Exhibit 10.  In the event of a conflict between the written description and the map, the written description shall govern.

**YYYY.** ~~XXXX.~~ ZONE A RESIDENT shall have the meaning ascribed to such term in the MEDICAL BENEFITS SETTLEMENT CLASS definition in Section I.A.

**ZZZZ.** ~~YYYY.~~ ZONE B shall mean the geographic areas described in Exhibit 9, and depicted in the map contained in Exhibit 11.  In the event of a conflict between the written description and the map, the written description shall govern.

**AAAAA.** ~~ZZZZ.~~ ZONE B RESIDENT shall have the meaning ascribed to such term in the MEDICAL BENEFITS SETTLEMENT CLASS definition in Section I.A.

In this MEDICAL SETTLEMENT AGREEMENT, unless the context requires otherwise, (a) words expressed in the masculine shall include the feminine and neuter gender and vice versa; (b) the word "will" shall be construed to have the same meaning and effect as the word "shall"; (c) the word "or" shall not be exclusive; (d) the word "extent" in the phrase "to the extent" shall mean the degree to which a subject or other thing extends, and such phrase shall not simply mean "if"; (e) references to "day" or "days" in the lower case are to calendar days, but if the last day is a Saturday, Sunday, or legal holiday (as defined in Fed. R. Civ. P. 6(a)(6)), the period shall continue to run until the end of the next day that is not a Saturday, Sunday, or legal holiday; (f) references to "the date hereof" are to the date of this MEDICAL SETTLEMENT

29

AGREEMENT; (g) references to this MEDICAL SETTLEMENT AGREEMENT shall include all exhibits, schedules, and annexes hereto; (h)  references to any law shall include all rules and regulations promulgated thereunder; (i) the terms "include", "includes", and "including" shall be deemed to be followed by "without limitation", whether or not they are in fact followed by such words or words of similar import; and (j) references to dollars or "$" are to United States dollars.

IX.    **GULF REGION HEALTH OUTREACH PROGRAM**

A.    The GULF REGION HEALTH OUTREACH PROGRAM shall be established under this MEDICAL SETTLEMENT AGREEMENT to expand capacity for and access to high quality, sustainable, community-based healthcare services, including primary care, behavioral and mental health care, and environmental medicine, in the Gulf Coast communities in Louisiana, Mississippi, Alabama, and the Florida Panhandle.  The GULF REGION HEALTH OUTREACH PROGRAM shall consist of four integrated GULF REGION HEALTH OUTREACH PROJECTS and shall establish a GULF REGION HEALTH OUTREACH PROGRAM LIBRARY.

B.    Funding and implementation of the GULF REGION HEALTH OUTREACH PROGRAM shall begin upon the COURT'S entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER; provided, however, that if this MEDICAL SETTLEMENT AGREEMENT is terminated in accordance with Section XIV, BP shall have no obligation to continue with the funding of the GULF REGION HEALTH OUTREACH PROGRAM.

C.    The Program

1)    Upon entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER, the CLAIMS ADMINISTRATOR shall enter into a GRANT AGREEMENT substantially in the form of Exhibit 2 with the grantee(s) for each GULF REGION HEALTH OUTREACH PROJECT and shall disburse funds to each such project in accordance with the terms of this Section IX.E and the grant proposals attached as Exhibits 13, 14, 15 and 16.

2)    The GULF REGION HEALTH OUTREACH PROJECTS shall be the following:

72

a)      A grant of $50 million to expand and improve access to health care in underserved Gulf Coast communities in Louisiana, Mississippi, Alabama, and the Florida Panhandle (the "PRIMARY CARE CAPACITY PROJECT") as detailed in Exhibit 13.

b)      A grant of $36 million to address behavioral and mental health needs, expertise, capacity, and literacy in the Gulf Coast communities in Louisiana, Mississippi, Alabama, and the Florida Panhandle (the "MENTAL AND BEHAVIORAL HEALTH CAPACITY PROJECT") as detailed in Exhibit 14.

c)      A grant of $4 million to train community health workers on peer listening, community resiliency, and other related issues in Gulf Coast communities in Louisiana, Mississippi, Alabama, and the Florida Panhandle (the "COMMUNITY HEALTH WORKERS TRAINING PROJECT") as detailed in Exhibit 15.

d)      A grant of $15 million to expand and improve environmental health expertise, capacity, and literacy in the Gulf Coast communities in Louisiana, Mississippi, Alabama, and the Florida Panhandle (the "ENVIRONMENTAL HEALTH CAPACITY AND LITERACY PROJECT") as detailed in Exhibit 16.

D.    Grantees

1)      The grantees for the PRIMARY CARE CAPACITY PROJECT shall be the Louisiana Public Health Institute ("LPHI") and the Alliance Institute, with LPHI acting as fiscal sponsor for such project and with Eric Baumgartner as the Project Leader.

2)      The grantees for the MENTAL AND BEHAVIORAL HEALTH CAPACITY PROJECT shall be Louisiana State University Health Sciences Center with Dr. Howard Osofsky and Dr. Joy Osofsky as the Project Leaders, University of Southern Mississippi with Dr. Timothy Rehner as the Project Leader, University of South Alabama with Dr. Jennifer

Langhinrichsen-Rohling as the Project Leader, and University of West Florida with Dr. Glenn Rohrer as the Project Leader.

3)      The grantee for the COMMUNITY HEALTH WORKERS TRAINING PROJECT shall be University of South Alabama with Dr. J. Steven Picou as the Project Leader.

4)      The grantee for the ENVIRONMENTAL HEALTH CAPACITY AND LITERACY PROJECT shall be Tulane University School of Public Health and Tropical Medicine with Dr. Maureen Y. Litchveld as the Project Leader.

5)      Each GULF REGION HEALTH OUTREACH PROJECT shall be implemented in compliance with the terms of its GRANT AGREEMENT.  No funds distributed to a GULF REGION HEALTH OUTREACH PROJECT shall be used for any purpose other than the purposes set forth in such project's GRANT AGREEMENT.  The grantees of a GULF REGION HEALTH OUTREACH PROJECT shall maintain clear, accurate, and complete records with respect to funds received under the GULF REGION HEALTH OUTREACH PROGRAM.  The grantee(s) of a GULF REGION HEALTH OUTREACH PROJECT shall be responsible for complying with all applicable laws and regulations, including income and employment tax obligations, medical licensure requirements, and HIPAA.

6)      The grantee(s) of a GULF REGION HEALTH OUTREACH PROJECT shall make quarterly written reports regarding implementation of their respective grants, and shall also provide such written reports to the CLAIMS ADMINISTRATOR at least 10 days in advance of the scheduled quarterly meetings of the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE, pursuant to Section IX.G.3.  The CLAIMS ADMINISTRATOR shall provide such reports to the GULF REGION HEALTH OUTREACH

PROGRAM COORDINATING COMMITTEE, MEDICAL BENEFITS CLASS COUNSEL, and BP.

7)     The grantee(s) of a GULF REGION HEALTH OUTREACH PROJECT shall provide such additional information regarding the implementation of their respective grants as may be reasonably requested by the CLAIMS ADMINISTRATOR or as may be required by law or requested by the COURT.

8)     The grantee(s) of a GULF REGION HEALTH OUTREACH PROJECT shall, prior to receiving any disbursement of funds, execute a GRANT AGREEMENT, in substantially the same form as attached as Exhibit 2, which shall include, to the extent allowed by law, a hold harmless agreement in favor of MEDICAL BENEFITS CLASS COUNSEL, MEDICAL BENEFITS CLASS REPRESENTATIVES, BP, and its counsel, employees, and agents, and the CLAIMS ADMINISTRATOR, and protecting MEDICAL BENEFITS CLASS COUNSEL, MEDICAL BENEFITS CLASS REPRESENTATIVES, BP, and its counsel, employees, and agents, and the CLAIMS ADMINISTRATOR from any liability for activities of a grantee in connection with a GULF REGION HEALTH OUTREACH PROJECT.

E.     Funding Amounts and Disbursements of Funds

1)     Provided that the grantee of a GULF REGION HEALTH OUTREACH PROJECT has executed a GRANT AGREEMENT, the CLAIMS ADMINISTRATOR shall disburse funds to that GULF REGION HEALTH OUTREACH PROJECT in six distributions, in the amounts set forth in Section IX.E.3, payable on the schedule set forth below:

a)     Distribution One shall be distributed to each GULF REGION HEALTH OUTREACH PROJECT within 30 days of the entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER.

b)      Distribution Two shall be distributed within 90 days of Distribution One.

c)      Distribution Three shall be distributed 1 year after Distribution One.

d)      Distribution Four shall be distributed 2 years after Distribution One.

e)      Distribution Five shall be distributed 3 years after Distribution One.

f)      Distribution Six shall be distributed 4 years after Distribution One.

2)      ~~BP shall transfer to~~ **At least 10 days prior to the scheduled date of each of these distributions, BP shall transfer into the MEDICAL SETTLEMENT TRUST ACCOUNT for transfer by the trustee and/or the directed trustee into** the GULF REGION HEALTH OUTREACH PROJECTS FUND sufficient funds to allow the CLAIMS ADMINISTRATOR to make ~~each of these distributions at least 10 days prior to the scheduled date of~~ each such distribution.

3)      The CLAIMS ADMINISTRATOR shall make the distributions to the GULF HEALTH OUTREACH PROJECTS from the GULF REGION HEALTH OUTREACH PROJECTS FUND in the following amounts:

a)      The PRIMARY CARE CAPACITY PROJECT shall be funded in the amount of $50 million as follows:

(i)      Distribution One:  $2,250,000;

(ii)     Distribution Two:  $7,848,806;

(iii)    Distribution Three:  $16,222,413;

76

(iv)     Distribution Four: $14,072,680;

(v)      Distribution Five: $5,486,348; and

(vi)     Distribution Six: $4,119,753.

b)      The  MENTAL  AND  BEHAVIORAL  HEALTH  CAPACITY

PROJECT shall be funded in the amount of $36 million as follows:

(i)      Distribution One: $1,389,008;

(ii)     Distribution Two: $4,667,024;

(iii)    Distribution Three: $13,221,164;

(iv)     Distribution Four: $7,432,198;

(v)      Distribution Five: $5,574,149; and

(vi)     Distribution Six: $3,716,457.

c)      The     COMMUNITY     HEALTH     WORKERS     TRAINING

PROJECT shall be funded in the amount of $4 million as follows:

(i)      Distribution One: $388,571;

(ii)     Distribution Two: $1,165,713;

(iii)    Distribution Three: $750,000;

(iv)     Distribution Four: $650,000;

(v)      Distribution Five: $550,000; and

(vi)     Distribution Six: $495,716.

d)      The   ENVIRONMENTAL   HEALTH   CAPACITY   AND

LITERACY PROJECT shall be funded in the amount of $15 million as follows:

(i)      Distribution One: $755,847;

(ii)     Distribution Two: $2,267,539;

(iii)    Distribution Three:  $2,998,139;

(iv)    Distribution Four:  $3,002,636;

(v)     Distribution Five:  $2,997,509; and

(vi)    Distribution Six:  $2,978,330.

F.     The administrative duties of the CLAIMS ADMINISTRATOR **and the trustee and/or the directed trustee of the MEDICAL SETTLEMENT FUND** with respect to the GULF REGION HEALTH OUTREACH PROGRAM shall include:

1)     Upon the entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER, the ~~CLAIMS ADMINISTRATOR~~**trustee and/or the directed trustee of the MEDICAL SETTLEMENT TRUST** shall undertake all necessary steps to establish the GULF REGION HEALTH OUTREACH PROJECTS FUND.

2)     The CLAIMS ADMINISTRATOR **and/or the trustee and/or the directed trustee of the MEDICAL SETTLEMENT TRUST** shall establish procedures and controls to manage and account for: (a) the disbursement of funds from the GULF REGION HEALTH OUTREACH PROJECTS FUND to the GULF REGION HEALTH OUTREACH PROJECTS; (b) the disbursement of funds from the ADMINISTRATIVE FUND for the reasonable and necessary costs of establishing, implementing, and managing the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY; and (c) the payment from the ADMINISTRATIVE FUND of all other costs associated with the GULF REGION HEALTH OUTREACH PROGRAM.

3)     The CLAIMS ADMINISTRATOR shall annually conduct a financial audit of each of the GULF REGION HEALTH OUTREACH PROJECTS and report the results of such financial audits to MEDICAL BENEFITS CLASS COUNSEL and BP.  In the event that

78

a financial audit reveals any material financial irregularity in a GULF REGION HEALTH OUTREACH PROJECT, the CLAIMS ADMINISTRATOR shall cease any further disbursements to such project and shall notify and seek direction from MEDICAL BENEFITS CLASS COUNSEL, BP, and the COURT.

    G.    The GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE

    1)    The GULF REGION HEALTH OUTREACH PROJECTS shall, to the greatest extent possible, function in a cooperative and integrated manner and have reasonable flexibility to adjust their respective implementations to respond to changed needs and circumstances.  To accomplish this goal, a GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE shall be created upon the entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER.

    2)    The GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE shall be comprised of a maximum of 13 persons. Representatives from each of the GULF REGION HEALTH OUTREACH PROJECTS shall be members of the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE, as follows:  (i) the PRIMARY CARE CAPACITY PROJECT and the MENTAL AND BEHAVIORAL HEALTH CAPACITY PROJECT shall each have no more than 3 members and (ii) the ENVIRONMENTAL CAPACITY AND LITERACY PROJECT and the COMMUNITY HEALTH WORKERS TRAINING PROJECT shall each have no more than 2 members.  Membership of a representative of a GULF REGION HEALTH OUTREACH PROJECT shall be contingent on his or her continuing to provide services as part of a GULF REGION HEALTH OUTREACH PROJECT.  Up to 3 members who are not affiliated with a

GULF REGION HEALTH OUTREACH PROJECT, including a chairperson of the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE, shall be selected by MEDICAL BENEFITS CLASS COUNSEL and BP.  In the event a member of the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE is unable to continue to serve, MEDICAL BENEFITS CLASS COUNSEL and BP shall jointly select a replacement member.

3)	The GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE shall meet quarterly, at least twice-per-year in person at an agreed upon location in the Gulf region, to (a) receive written reports on the implementation of each of the GULF REGION HEALTH OUTREACH PROJECTS, (b) evaluate the implementation of each of the GULF REGION HEALTH OUTREACH PROJECTS, (c) confirm that the required benchmarks set forth in each of the respective GULF REGION HEALTH OUTREACH PROJECTS' GRANT AGREEMENTS are being satisfactorily met, (d) identify activities to enhance cooperation among, and integration of the activities covered by, the GULF REGION HEALTH OUTREACH PROJECTS, and (e) by a vote of at least 10 out of 13 members, identify activities and make recommendations, as set forth in Section IX.G.4 below regarding adjustments needed to enhance the implementation of any GULF REGION HEALTH OUTREACH PROJECT, including a recommendation to delay the distribution of funds for a particular project because benchmarks set forth in a GULF REGION HEALTH OUTREACH PROJECT'S GRANT AGREEMENT are not being satisfactorily met.

4)	Recommendations by the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE on how to enhance cooperation among, and integration of the activities covered by, the GULF REGION HEALTH OUTREACH PROJECTS

80

and, to the extent warranted, adjustments to enhance the implementation of the respective GULF REGION HEALTH OUTREACH PROJECTS (*e.g.*, accelerate the funding schedule of a GULF REGION HEALTH OUTREACH PROJECT, delay the funding schedule of a GULF REGION HEALTH OUTREACH PROJECT, or reallocate the funding within a GULF REGION HEALTH OUTREACH PROJECT), shall be made in writing to the CLAIMS ADMINISTRATOR, MEDICAL BENEFITS CLASS COUNSEL, and BP.   MEDICAL BENEFITS CLASS COUNSEL and BP shall promptly evaluate such recommendations, and, if MEDICAL BENEFITS CLASS COUNSEL and BP jointly agree such recommendations should be adopted, they shall jointly seek approval of the COURT to implement such recommendations. If MEDICAL BENEFITS CLASS COUNSEL and BP do not jointly agree such recommendations should be adopted, funding of the GULF REGION HEALTH OUTREACH PROJECT shall continue pursuant to the original funding schedule.

       5)    Notwithstanding anything in the foregoing, neither MEDICAL BENEFITS CLASS COUNSEL, BP, the CLAIMS ADMINISTRATOR, nor the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE shall have any authority to change the goals of the GULF REGION HEALTH OUTREACH PROGRAM, or to reallocate funding among the GULF REGION HEALTH OUTREACH PROJECTS, unless such change in goals or reallocation of funding is approved by the COURT on joint motion of MEDICAL BENEFITS CLASS COUNSEL and BP.

       6)    MEDICAL BENEFITS CLASS COUNSEL and BP representatives may attend the quarterly meetings of the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE as observers and at their own expense.

81

7)       The CLAIMS ADMINISTRATOR shall make arrangements for and pay, out of the ADMINISTRATIVE FUND, the reasonable and necessary expenses for the quarterly meetings of the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE.

8)       The CLAIMS ADMINISTRATOR shall pay, out of the ADMINISTRATIVE FUND, each member of the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE reasonable and necessary travel and lodging expenses for each quarterly meeting that he or she attends.  The CLAIMS ADMINISTRATOR shall also pay, out of the ADMINISTRATIVE FUND, each member of the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE who is not a representative of a GULF REGION HEALTH OUTREACH PROJECT a $1,000 honorarium for each quarterly meeting that he or she attends.

9)       The CLAIMS ADMINISTRATOR shall pay, out of the ADMINISTRATIVE FUND, the Chair of the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE a reasonable fee, which shall be approved by MEDICAL BENEFITS CLASS COUNSEL AND BP, for his or her services on such committee.

H.       GULF REGION HEALTH OUTREACH PROGRAM LIBRARY

1)       Beginning no later than 3 months following the entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER, the CLAIMS ADMINISTRATOR shall undertake to create, maintain, and update annually a publicly accessible, text-searchable, indexed, online electronic GULF REGION HEALTH OUTREACH PROGRAM LIBRARY comprised of LIBRARY MATERIALS.

2)       LIBRARY MATERIALS shall include:

a)       Documents and electronically stored information describing and/or identifying the composition of oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances and/or dispersants and/or decontaminants used in the RESPONSE ACTIVITIES;

b)       Documents and electronically stored information describing and/or identifying the quantity of oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances and/or dispersants and/or decontaminants used in the RESPONSE ACTIVITIES;

c)       Documents and electronically stored information describing and/or identifying the fate and transport (including the timing and quantity thereof) of oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances and/or dispersants and/or decontaminants used in the RESPONSE ACTIVITIES;

d)       Documents and electronically stored information describing and/or identifying the nature, content, and scope of the RESPONSE ACTIVITIES;

e)       Documents and electronically stored information describing and/or identifying any health risks or effects from exposure to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances and/or any of the dispersants and/or decontaminants used in the RESPONSE ACTIVITIES;

f)       Documents and electronically stored information describing and/or identifying natural attenuation or decomposition of oil, other hydrocarbons, and other substances

83

released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances and/or the dispersants and/or decontaminants used in the RESPONSE ACTIVITIES;

g)   Documents and electronically stored information describing and/or identifying the nature, content, and scope of in situ burning performed during the RESPONSE ACTIVITIES, including any health risks and effects associated with in situ burning of any oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances and any of the dispersants and/or decontaminants used in the RESPONSE ACTIVITIES;

h)   Documents and electronically stored information describing and/or identifying any monitoring, sampling or testing for oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances and/or dispersants and/or decontaminants used in the RESPONSE ACTIVITIES, including any results thereof;

i)   Materials describing and/or identifying occupational safety, worker protection, and preventative measures for CLEAN-UP WORKERS; and

j)   Documents and electronically-stored information describing and/or identifying any health studies of persons exposed to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances and/or dispersants and/or decontaminants used in the RESPONSE ACTIVITIES.

3)   The definition of LIBRARY MATERIALS shall not include any documents and electronically-stored information that contain or would reveal information protected by (a) HIPAA or other applicable privacy laws, and/or (b) the attorney-client privilege, work product doctrine, or common interest privilege.   To the extent any LIBRARY

MATERIALS contain such information, all such information shall be redacted by the entity supplying such LIBRARY MATERIALS.  LIBRARY MATERIALS also excludes (i) any documents and electronically-stored information that are in the possession, custody, or control of BP solely by virtue of such documents and electronically-stored information having been produced to BP in the MDL 2179 litigation, and (ii) emails (but not attachments to such emails that fall within the definition of LIBRARY MATERIALS) that are in the possession, custody, or control of BP or any of its employees.

4)      Costs associated with the creation, maintenance, and updating of the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY shall be SETTLEMENT COSTS.

5)      The GULF REGION HEALTH OUTREACH PROGRAM LIBRARY shall remain in existence for the 21 years following the EFFECTIVE DATE.

6)      As soon as practicable following the entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER (but no later than 6 months after such order) and every year thereafter for the 21 years following the EFFECTIVE DATE, BP shall provide to the CLAIMS ADMINISTRATOR for inclusion in the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY all LIBRARY MATERIALS in BP'S possession, custody, or control that have not previously been provided to the CLAIMS ADMINISTRATOR.  Where identical copies of LIBRARY MATERIALS are in the possession, custody, or control of BP, it shall provide only one copy of such materials.

7)      Beginning no later than 3 months following the entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER and every year thereafter for the 21 years following the EFFECTIVE DATE, the CLAIMS ADMINISTRATOR

shall request by any applicable freedom of information law that the federal government, the state governments of Alabama, Florida, Louisiana, and Mississippi, the governments of the Gulf coast counties of Alabama, Florida, and Mississippi, and the governments of the Gulf parish counties of Louisiana, provide to the CLAIMS ADMINISTRATOR for inclusion in the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY any LIBRARY MATERIALS which have not previously been provided to the CLAIMS ADMINISTRATOR. The CLAIMS ADMINISTRATOR shall be authorized to reimburse such entities providing LIBRARY MATERIALS the actual, reasonable costs of providing such materials, which shall be SETTLEMENT COSTS.

8)      Beginning no later than 3 months following the entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER and every year thereafter during the operation of the GULF REGION HEALTH OUTREACH PROJECTS, the CLAIMS ADMINISTRATOR shall request and obtain copies of any reports or studies created through the activities of the GULF REGION HEALTH OUTREACH PROJECTS for inclusion in the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY that refer or relate to any health risks or effects of (a) oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, (b) the dispersants and/or decontaminants used in the RESPONSE ACTIVITIES, and (c) the RESPONSE ACTIVITIES, but excluding any materials that would reveal information protected by HIPAA or other applicable privacy laws, or that have previously been provided to the CLAIMS ADMINISTRATOR.

9)      Beginning no later than 3 months following the entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER, MEDICAL

86

BENEFITS CLASS COUNSEL shall have the right to submit LIBRARY MATERIALS for inclusion in the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY.

10)     The act of providing LIBRARY MATERIALS by BP or MEDICAL BENEFITS CLASS COUNSEL to the CLAIMS ADMINISTRATOR for inclusion in the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY shall not constitute an admission by BP of the authenticity of such materials, of the truth of the matters asserted in such materials, or of the relevancy of such materials in any legal or other proceeding.

11)     The fact of access by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER pursuing a BACK-END LITIGATION OPTION LAWSUIT against a BACK-END LITIGATION OPTION DEFENDANT for a LATER-MANIFESTED PHYSICAL CONDITION to LIBRARY MATERIALS produced by BP to the CLAIMS ADMINISTRATOR for inclusion in the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY shall not constitute, and shall not be contended to constitute, satisfaction by BP of its obligation to produce materials or disclose information in response to discovery requests in litigation, except to the extent BP'S discovery responses comply with Federal Rules of Civil Procedure Rule 33(d), Rule 34(b)(2)(E), or any other applicable Federal Rule of Civil Procedure governing discovery.

## X.      PRELIMINARY APPROVAL BY THE COURT AND CLASS CERTIFICATION

A.      Promptly after the execution of this MEDICAL SETTLEMENT AGREEMENT, the PARTIES shall file with the COURT this MEDICAL SETTLEMENT AGREEMENT, as well as a Joint Motion for Preliminary Approval of the Medical Benefits Class Action Settlement, Approval of Class Notice, and Related Matters.  Simultaneously, the MEDICAL BENEFITS CLASS REPRESENTATIVES shall file with the COURT a Motion for Certification of a Rule 23(b)(3) Class for Purposes of Settlement.

B.      The PARTIES agree to take all actions and steps reasonably necessary to obtain a PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER from the COURT.

C.      Promptly following the filing of the Joint Motion for Preliminary Approval of the Medical Benefits Class Action Settlement, Approval of Class Notice, and Related Matters, BP and MEDICAL BENEFITS CLASS COUNSEL shall file with the COURT a motion seeking the creation of a MEDICAL SETTLEMENT TRUST and appointment of the ~~CLAIMS ADMINISTRATOR as~~ trustee **and the directed trustee of such MEDICAL SETTLEMENT TRUST**.

D.      The PARTIES agree that any certification of the MEDICAL BENEFITS SETTLEMENT CLASS shall be for settlement purposes only.  The PARTIES do not waive or concede any position or arguments they have for or against class certification of any class for any other purpose in any action or proceeding.  Any class certification order entered in connection with this MEDICAL SETTLEMENT AGREEMENT shall not constitute an admission by BP, or finding or evidence, that the MEDICAL BENEFITS CLASS REPRESENTATIVES' claims, or the claims of any other MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, or the claims of the MEDICAL BENEFITS SETTLEMENT CLASS are appropriate for litigation class treatment.  To the extent the COURT enters the proposed form of PRELIMINARY APPROVAL

88

AND CLASS CERTIFICATION ORDER, the FINAL ORDER AND JUDGMENT will provide for vacation of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER in the event that this MEDICAL SETTLEMENT AGREEMENT does not become effective.  In the event that the COURT certifies the proposed MEDICAL BENEFITS SETTLEMENT CLASS in connection with this MEDICAL SETTLEMENT AGREEMENT, BP will not oppose a motion brought by INTERIM CLASS COUNSEL, MEDICAL BENEFITS CLASS COUNSEL, or the PSC seeking to certify a litigation class against TRANSOCEAN or HALLIBURTON, but limited solely to the recovery of punitive damages.

E.     Upon    entry    of    the    PRELIMINARY    APPROVAL    AND    CLASS CERTIFICATION ORDER, the statutes of limitation applicable to any and all claims or causes of action that have been or could be asserted by or on behalf of any MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS are hereby tolled and stayed.  The limitations period shall not begin to run again for any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER unless and until (a) they OPT OUT of the MEDICAL BENEFITS SETTLEMENT CLASS or (b) this MEDICAL SETTLEMENT AGREEMENT is terminated pursuant to Section XIV.  In the event the MEDICAL SETTLEMENT AGREEMENT is terminated pursuant to Section XIV, the limitations period for each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER as to whom the limitations period had not expired as of the date of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER shall extend for the longer of 90 days from the last required issuance of notice of termination or the period otherwise remaining before expiration. Notwithstanding the temporary tolling agreement herein, the PARTIES recognize that any time already elapsed for any MEDICAL BENEFITS CLASS REPRESENTATIVES or MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS on any applicable statutes of limitations shall

not be reset, and no expired claims shall be revived, by virtue of this temporary tolling agreement. MEDICAL BENEFITS CLASS REPRESENTATIVES and MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS do not admit, by entering into this MEDICAL SETTLEMENT AGREEMENT, that they have waived any applicable tolling protections available as a matter of law or equity.   Nothing in this MEDICAL SETTLEMENT AGREEMENT shall constitute an admission in any manner that the statute of limitations has been tolled for anyone outside the MEDICAL BENEFITS SETTLEMENT CLASS, nor does it constitute a waiver of legal positions regarding tolling.

## XVIII.  FINAL ORDER AND JUDGMENT AND DISMISSAL WITH PREJUDICE

A.  The PARTIES shall jointly seek a FINAL ORDER AND JUDGMENT, from the COURT that:

1)  approves the MEDICAL BENEFITS CLASS ACTION SETTLEMENT in its entirety pursuant to Fed. R. Civ. P. 23(e) as fair, reasonable, and adequate;

2)  finds that this MEDICAL SETTLEMENT AGREEMENT, with respect to MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who are minors, lack capacity, or are incompetent, is fair;

3)  confirms the certification of the MEDICAL BENEFITS SETTLEMENT CLASS, for settlement purposes only;

4)  confirms the appointment of the MEDICAL BENEFITS CLASS REPRESENTATIVES;

5)  confirms the appointment of the MEDICAL BENEFITS CLASS COUNSEL;

6)  finds that the MEDICAL BENEFITS SETTLEMENT CLASS NOTICE has satisfied the requirements set forth in Fed. R. Civ. P. 23(c)(2)(B);

7)  permanently bars and enjoins each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER from commencing, asserting, and/or prosecuting any and all RELEASED CLAIMS against any RELEASED PARTY;

8)  dismisses with prejudice the MEDICAL CLASS ACTION COMPLAINT, without further costs, including claims for interest, penalties, costs and attorneys' fees;

9)  orders the dismissal with prejudice of all RELATED CLAIMS pending in the COURT, and without further costs, including claims for interest, penalties, costs, and attorneys' fees, thereby effectuating the RELEASE;

119

10) orders all MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS with RELATED CLAIMS pending in any federal or state court, forum, or tribunal other than the COURT to dismiss with prejudice such RELATED CLAIMS, and without further costs, including claims for interest, penalties, costs, and attorneys' fees, thereby effectuating the RELEASE;

11) confirms the appointment of The Garretson Firm Resolution Group, Inc. d/b/a Garretson Resolution Group ("GRG") as the CLAIMS ADMINISTRATOR and **confirms the appointment of the trustee and the directed** trustee of the MEDICAL SETTLEMENT TRUST;

12) confirms that it retains continuing jurisdiction over the "qualified settlement fund," as defined in Section 468B(d)(2) of the Internal Revenue Code of 1986, as amended, and Treasury Regulation Section 1.468B-1, created under the MEDICAL SETTLEMENT AGREEMENT;

13) expressly incorporates the terms of this MEDICAL SETTLEMENT AGREEMENT and provides that the COURT retains continuing and exclusive jurisdiction over the PARTIES, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS and this MEDICAL SETTLEMENT AGREEMENT, to interpret, implement, administer and enforce the MEDICAL SETTLEMENT AGREEMENT in accordance with its terms;

14) finds that to the extent this MEDICAL BENEFITS CLASS ACTION SETTLEMENT results in the splitting of the claim of any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, that such result has been agreed to by the PARTIES, and that any remaining claim of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER not

settled and released by this MEDICAL BENEFITS CLASS ACTION SETTLEMENT is expressly reserved; and

            15)    orders all MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS to comply with the Other Protections provisions of Section XVII.

## XXI.   **CLAIMS ADMINISTRATION**

    A.    <u>Claims Administrator</u>

    1)    The CLAIMS ADMINISTRATOR shall be appointed by the COURT. The CLAIMS ADMINISTRATOR shall faithfully implement and administer the MEDICAL SETTLEMENT AGREEMENT according to its terms and procedures.

    2)    The PARTIES' Joint Motion for Preliminary Approval of the Medical Benefits Class Action Settlement, Approval of Class Notice, and Related Matters shall request that the COURT appoint GRG as CLAIMS ADMINISTRATOR.

    3)    The CLAIMS ADMINISTRATOR may be removed by joint motion made by BP'S COUNSEL and MEDICAL BENEFITS CLASS COUNSEL, and granted by the COURT.

    4)    If the CLAIMS ADMINISTRATOR resigns, is removed, or is otherwise unable to continue employment in this position, the MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL shall jointly select a new proposed CLAIMS ADMINISTRATOR, and move the COURT to approve the new proposed CLAIMS ADMINISTRATOR.  The MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL and the COURT will follow this process until such time as a new CLAIMS ADMINISTRATOR is approved by the COURT and appointed.

    5)    The COURT shall have ongoing and exclusive jurisdiction over the CLAIMS ADMINISTRATOR and shall retain such jurisdiction through and after the EFFECTIVE DATE.  The COURT may, at its sole discretion, request reports or information from the CLAIMS ADMINISTRATOR.  The CLAIMS ADMINISTRATOR shall be responsible for reporting and providing information to the COURT at such frequency and in such a manner as the COURT directs.

6)      Subject to certain indemnities that BP will provide to the CLAIMS ADMINISTRATOR in connection with its contract to undertake claims administration as set forth in this MEDICAL SETTLEMENT AGREEMENT, neither the PARTIES (including their AFFILIATES, and their and their AFFILIATES' respective heirs, beneficiaries, agents, estates, executors, administrators, personal representatives, subsidiaries, parents, partners, limited partners, members, joint venturers, shareholders, predecessors, successors, assigns, insurers, trustees, servants, past, present or future officers, directors, agents, employees and/or independent contractors, and/or any other successors, assigns, or legal representatives thereof), nor BP'S COUNSEL, INTERIM CLASS COUNSEL, MEDICAL BENEFITS CLASS COUNSEL, nor the PSC (including their respective heirs, beneficiaries, agents, estates, executors, administrators, personal representatives, subsidiaries, parents, partners, limited partners, members, joint venturers, shareholders, predecessors, successors, assigns, insurers, trustees, servants, past, present or future officers, directors, agents, employees and/or independent contractors, and/or any other successors, assigns, or legal representatives thereof), shall be liable for any act, or failure to act, of the CLAIMS ADMINISTRATOR.

7)      BP will be responsible for paying any and all of the reasonable compensation and out-of-pocket costs and expenses of the CLAIMS ADMINISTRATOR related to its performance of its duties described in this MEDICAL SETTLEMENT AGREEMENT. Such compensation, costs, and expenses shall be SETTLEMENT COSTS **and shall be paid out of the ADMINISTRATIVE FUND**.

8)      Upon appointment by the COURT, the CLAIMS ADMINISTRATOR shall faithfully implement and administer this MEDICAL SETTLEMENT AGREEMENT according to its terms, including without limitation:

a)      Creation and operation of a website, a web portal, and a call center to communicate with MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS and facilitate the filing of claims;

b)      Creation and operation of a claims processing system to process all claims made by MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS;

c)      Identifying and creating a mechanism for implementation of the PERIODIC MEDICAL CONSULTATION PROGRAM;

d)      Implementing a mechanism for the identification and resolution of liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type;

e)      Coordination and management of the GULF REGION HEALTH OUTREACH PROGRAM;

f)      Identifying mediators for and managing mediations of LATER-MANIFESTED PHYSICAL CONDITION claims;

g)      Reviewing and evaluating submitted claims so that, upon the EFFECTIVE DATE, (1) MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS can promptly be notified of the status of their claims, (2) MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS with qualifying claims for SPECIFIED PHYSICAL CONDITIONS can be promptly paid, and (3) MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS with qualifying claims for participation in the PERIODIC MEDICAL CONSULTATION PROGRAM can promptly begin receiving that benefit; **and**

h)      Serving as trustee of the MEDICAL SETTLEMENT TRUST and as administrator of the qualified settlement fund as described in Section XXII.C and

128

~~managing the MEDICAL SETTLEMENT TRUST and each of the FUNDS as described in Section XXII.D; and~~

**h)** ~~i)~~ Such other tasks reasonably necessary to accomplish the goals contemplated by this MEDICAL BENEFITS SETTLEMENT AGREEMENT.

9) The CLAIMS ADMINISTRATOR shall have the right to retain counsel and other professionals in order to facilitate its ability to carry out its duties under this MEDICAL SETTLEMENT AGREEMENT, and the reasonable costs and expenses of such counsel and other professionals shall be SETTLEMENT COSTS.

10) In connection with a claim of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who is a minor, lacks capacity, is incompetent, or is deceased, the CLAIMS ADMINISTRATOR shall abide by all substantive laws of the domicile of such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER concerning distribution of settlement benefits. Where short form procedures exist concerning the distribution of such settlement benefits that do not require domiciliary court approval or supervision, the CLAIMS ADMINISTRATOR is authorized to adopt those procedures as part of the claims administration process applicable to such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

11) All disbursements by the CLAIMS ADMINISTRATOR **and/or the trustee and/or the directed trustee of the MEDICAL SETTLEMENT TRUST** prior to the EFFECTIVE DATE (other than the disbursements made pursuant to Section IX.B) will be subject to review and approval by the MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL.

B. <u>Databases and Other Information to be Maintained by the Claims Administrator</u>

1)     On or about the date on which the PARTIES file their Joint Motion for Preliminary Approval of the Medical Benefits Class Action Settlement, approval of the Class Notice and Related Matters, the PARTIES shall also seek an order from the COURT that directs BP to provide the CLAIMS ADMINISTRATOR with those databases, data files, data collections, or other documentary evidence in its possession, custody, or control that will allow the CLAIMS ADMINISTRATOR to determine the status of a ~~MEDICAL BENEFITS SETTLEMENT CLASS MEMBER~~**NATURAL PERSON** claiming to be a CLEAN-UP WORKER and/or a claim made by a CLEAN-UP WORKER for compensation for a SPECIFIED PHYSICAL CONDITION.  The following databases, data files, or other documentary evidence shall be included in such order:

     a)     The "Medical Encounters" database, which is in Excel format and contains information concerning CLEAN-UP WORKERS who visited medic stations funded by BP and made available to CLEAN-UP WORKERS;

     b)     The underlying documentation and records from which the "Medical Encounters" database was created, which files exist in both pdf format and paper copies;

     c)     The database identifying "Badged Workers," which is derived from the "Incident Action Plan" database, is in Excel format, and contains information concerning those individuals who received a badge that allowed them access to areas where RESPONSE ACTIVITIES were taking place;

     d)     The "Training" database, which is in Excel format and contains information concerning individuals who received training provided by BP and or/its contractors that was required in order to allow those individuals to be hired as CLEAN-UP WORKERS;

e)      Those portions of the "Traction" database, which is in Excel format, that contain information about injuries and illnesses reported by CLEAN-UP WORKERS during the performance of RESPONSE ACTIVITIES;

f)      The underlying documentation and records from which those portions of the "Traction" database were created, which documentation and records exist in both pdf format and paper copies;

g)      The "Injury and Illness" database, which is in Excel format and contains information about injuries and illnesses reported by CLEAN-UP WORKERS during RESPONSE ACTIVITIES;

h)      The underlying documentation and records from which those portions of the "Injury and Illness" database were created, which documentation and records exist in pdf format and paper copies;

i)      Documentation and records, including invoices, containing the identity of organizations that participated in the recovery, transport, and decontamination of wildlife during RESPONSE ACTIVITIES;

j)      Documentation and records identifying contractors retained by BP to perform RESPONSE ACTIVITIES and individuals who performed RESPONSE ACTIVITIES, including Industrial Hygiene Monitoring spreadsheets and Time History Reports for those who were being monitored;

k)      Documentation and records, including invoices, from ambulance companies; and

l)      "Persons on Board" lists for vessels that were engaged in RESPONSE ACTIVITIES.

2)      Within 10 days of the entry of the order described in Section XXI.B.1, BP shall provide the CLAIMS ADMINISTRATOR with the databases, data files, and other documentary evidence identified in Section XXI.B.1.  To the extent that BP identifies any additional databases, data files, data collections, or other documentary evidence in its possession, custody, or control that will allow the CLAIMS ADMINISTRATOR to determine the status of a ~~MEDICAL BENEFITS SETTLEMENT CLASS MEMBER~~**NATURAL PERSON** claiming to be a CLEAN-UP WORKER, and/or a claim made by a CLEAN-UP WORKER for compensation for a SPECIFIED PHYSICAL CONDITION, BP shall notify MEDICAL BENEFITS CLASS COUNSEL and shall promptly provide such databases, data files, data collections, or other documentary evidence to the CLAIMS ADMINISTRATOR.

3)      THE CLAIMS ADMINISTRATOR may use such databases, data files, and other documentary evidence only for the purpose of evaluating, processing, and auditing claims by MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS for compensation for SPECIFIED PHYSICAL CONDITIONS or participation in the PERIODIC MEDICAL CONSULTATION PROGRAM.  The CLAIMS ADMINISTRATOR shall maintain all such databases, data files, and other documentary evidence in strict confidence and shall not disclose any information in the database, data files, and other documentary evidence to any person or entity; provided, however, that:

a)      The CLAIMS ADMINISTRATOR may disclose such information to a person or entity if ordered to do so by the COURT; and

b)      The CLAIMS ADMINISTRATOR may disclose to a ~~MEDICAL BENEFITS SETTLEMENT CLASS MEMBER~~**NATURAL PERSON** information from the databases, data files, or other documentary evidence described in Section XXI.B.1-2 relating to

that ~~MEDICAL BENEFITS SETTLEMENT CLASS MEMBER~~**NATURAL PERSON** upon receipt of a completed and signed DATA DISCLOSURE FORM substantially in the form of Exhibit 1 from that ~~MEDICAL BENEFITS SETTLEMENT CLASS MEMBER~~**NATURAL PERSON**. Such disclosure shall be made within 10 days of receipt by the CLAIMS ADMINISTRATOR of such request, shall be made at no cost to the ~~MEDICAL BENEFITS SETTLEMENT CLASS MEMBER~~**NATURAL PERSON**, and shall be made irrespective of when ~~the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER~~**that NATURAL PERSON** makes such request.

        C.      PROOF OF CLAIMS FORMS

        1)      All MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS applying for compensation for a SPECIFIED PHYSICAL CONDITION and/or participation in the PERIODIC MEDICAL CONSULTATION PROGRAM must submit a PROOF OF CLAIM FORM and all required documentation, including proof of status as a CLEAN-UP WORKER or proof of residency in ZONE A or ZONE B during the relevant time periods and, where applicable, proof of a SPECIFIED PHYSICAL CONDITION, in accordance with the requirements set forth in this MEDICAL SETTLEMENT AGREEMENT.

        2)      A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER must submit the PROOF OF CLAIM FORM and any required documentation to the CLAIMS ADMINISTRATOR via United States mail.

        3)      All PROOF OF CLAIM FORMS must be submitted to the CLAIMS ADMINISTRATOR no later than 1 year after the EFFECTIVE DATE. Any PROOF OF CLAIM FORM that is submitted more than 1 year after the EFFECTIVE DATE shall be denied

by the CLAIMS ADMINISTRATOR as not timely, and the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim for benefits shall be denied.

4) The CLAIMS ADMINISTRATOR will review every PROOF OF CLAIM FORM and all documentation and authorizations submitted therewith to confirm that:

a) the PROOF OF CLAIM FORM has been timely submitted;

b) the "Personal & Background Information" section of the PROOF OF CLAIM FORM has been completed in its entirety;

c) the PROOF OF CLAIM FORM has been signed by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, or where applicable his or her AUTHORIZED REPRESENTATIVE, under penalty of perjury;

d) where the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is a CLEAN-UP WORKER, the PROOF OF CLAIM FORM identifies his or her employer(s), duration and approximate dates of employment, and documentary proof of that employment by each employer; provided, however, that inclusion of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER on one or more of the BP databases, data files, data collections, and other documentary evidence identified in Section XXI.D.1.a shall also establish that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S status as a CLEAN-UP WORKER;

e) where a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is a ZONE A RESIDENT or a ZONE B RESIDENT, the PROOF OF CLAIM FORM identifies the location(s) of his or her residence and time frame(s) of residency, and includes proof of residency in each such residence;

134

f)      for those MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS seeking compensation for a SPECIFIED PHYSICAL CONDITION, the PROOF OF CLAIM FORM identifies each SPECIFIED PHYSICAL CONDITION that the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER claims to have developed; the date on or about that he or she developed such SPECIFIED PHYSICAL CONDITION; information regarding his or her exposure to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, if applicable; the name and contact information of any medical professional who diagnosed or treated the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER with such SPECIFIED PHYSICAL CONDITION, and a description of any medical treatment received for each SPECIFIED PHYSICAL CONDITION;

g)      the PROOF OF CLAIM FORM identifies whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is represented by a lawyer, and if so, the name, law firm, address, e-mail address, and telephone number of that lawyer;

h)      the PROOF OF CLAIM FORM includes an executed authorization compliant with the HIPAA;

i)      the PROOF OF CLAIM FORM includes a signed authorization for release of employment information, where the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER bases a claim on his or her status as a CLEAN-UP WORKER;

j)      the PROOF OF CLAIM FORM includes a written representation by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, made under penalty of perjury, whether a subrogation lien or claim has been asserted with respect to such MEDICAL

135

BENEFITS SETTLEMENT CLASS MEMBER'S right to receive benefits under the MEDICAL BENEFITS SETTLEMENT, and, if so, the name(s), address(es), telephone number(s), and e-mail address(es) of all subrogees; and

k)      where an AUTHORIZED REPRESENTATIVE is applying on behalf of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER for compensation for a SPECIFIED PHYSICAL CONDITION or participation in the PERIODIC MEDICAL CONSULTATION PROGRAM, the PROOF OF CLAIM FORM identifies the name, address, telephone number, and e-mail address of the AUTHORIZED REPRESENTATIVE, identifies the authority giving the AUTHORIZED REPRESENTATIVE the right to act on behalf of such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, and includes documentation sufficient to verify that he or she is legally authorized to submit a claim on behalf of such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

5)      Any PROOF OF CLAIM FORM submitted without sufficient proof of status as a CLEAN-UP WORKER or residency in ZONE A or ZONE B shall be rejected by the CLAIMS ADMINISTRATOR, subject to the provisions of Section V.E.

6)      Each MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who submits a PROOF OF CLAIM FORM shall, in such form, (i) identify all known GOVERNMENTAL PAYERS, MEDICARE PART C OR PART D PROGRAMS, and OTHER PAYERS/PROVIDERS from whom such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is or was entitled to benefits for medical items, services, and/or prescription drugs on or after April 20, 2010, for injuries claimed to arise out of the *DEEPWATER HORIZON* INCIDENT and who he or she believes or suspects may hold or assert any liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type

136

in connection with compensation or benefits claimed or received by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER pursuant to this MEDICAL SETTLEMENT AGREEMENT; (ii) provide to the CLAIMS ADMINISTRATOR any correspondence that he or she has received in which GOVERNMENTAL PAYERS, MEDICARE PART C OR D PROGRAM sponsors, and/or OTHER PAYER/PROVIDERS assert liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type for medical items, services, and/or prescription drugs on or after April 20, 2010, for injuries claimed to arise out of the *DEEPWATER HORIZON* INCIDENT; (iii) authorize the CLAIMS ADMINISTRATOR to transmit information necessary to comply with reporting obligations to GOVERNMENTAL PAYERS; (iv) agree that as a condition of his or her participation in this MEDICAL BENEFITS CLASS ACTION SETTLEMENT, the CLAIMS ADMINISTRATOR may satisfy any liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type of a GOVERNMENTAL PAYER for payment or reimbursement associated with any medical items, services, and/or prescription drugs furnished to that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER; and (v) subject to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S right to object to the fact and/or amount, agree that the CLAIMS ADMINISTRATOR may negotiate and satisfy any disclosed or identified liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type of any MEDICARE PART C OR PART D PROGRAM SPONSOR or OTHER PAYER/PROVIDER for payment or reimbursement associated with any medical items, services, and/or prescription drugs furnished to that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER out of any compensation to be awarded to a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

7)      The CLAIMS ADMINISTRATOR shall adopt appropriate internal claims processing procedures which (i) allow payment of claims through either a check or an electronic funds transfer and (ii) allow payments of claims directly to counsel for those MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who are represented by individual counsel and provide appropriate documentation confirming such representation and authorizing payment to such individual counsel.

D.      Establishment of Status as a CLEAN-UP WORKER

1)      Status of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER as a CLEAN-UP WORKER shall be established by:

a)      inclusion of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER on one or more of the following BP databases, data files, data collections, or other documentary evidence that have been provided to the CLAIMS ADMINISTRATOR pursuant to Section XXI.B.1:

(i)      the "Medical Encounters" database, which contains information concerning CLEAN-UP WORKERS who visited medic stations funded by BP and made available to CLEAN-UP WORKERS;

(ii)      the "Badged Worker" database, which contains information concerning those individuals who received a badge that allowed them access to areas where RESPONSE ACTIVITIES were taking place;

(iii)      those portions of the "Traction" database that contain information about injuries and illnesses reported by CLEAN-UP WORKERS during the performance of RESPONSE ACTIVITIES;

138

(iv)   the "Injury and Illness" database, which contains information about injuries and illnesses reported by CLEAN-UP WORKERS during RESPONSE ACTIVITIES;

(v)   documentation or records, including invoices, that identify individuals who performed RESPONSE ACTIVITIES, including the underlying documentation and records from the "Medical Encounters," "Training," and "Injury and Illness" databases, Industrial Hygiene Monitoring spreadsheets, Time History Reports, and Persons on Board lists; or

(vi)   personal information contained in documentation and records containing the identity of organizations that participated in the recovery, transport, and decontamination of wildlife during RESPONSE ACTIVITIES.

b)   Documentation during the appropriate time period, of work for or a contract with any entity or person engaged in RESPONSE ACTIVITIES that is identified in those databases, data files, or other documentary evidence provided to the CLAIMS ADMINISTRATOR by BP pursuant to Section XXI.B.1 (*e.g.*, W-2 forms, 1099 forms, pay stubs, copy of worker identification badges, contracts, tax returns, declaration under penalty of perjury by such person or entity); or

c)   any other documentation submitted by or on behalf of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER determined by the CLAIMS ADMINISTRATOR to establish more likely than not that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S status as a CLEAN-UP WORKER.

2)   Inclusion of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER on the "Training" database, which contains information concerning individuals who

139

received training provided by BP that was required in order to allow those individuals to be hired as CLEAN-UP WORKERS, provided to the CLAIMS ADMINISTRATOR pursuant to Section XXI.B.1 of this MEDICAL SETTLEMENT AGREEMENT, cannot alone establish status as a CLEAN-UP WORKER, but may be used to corroborate other documentation.

      3)    A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER cannot establish his or her status as a CLEAN-UP WORKER by his or her own uncorroborated declaration; provided, however, that a declaration signed under penalty of perjury by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER or third party, including an employer or a co-worker, may be used to explain or corroborate other documentation.  Further, as provided in Section XXI.D.1.b above, a declaration from an entity or person described in Section XXI.B.1 may be used to establish status as a CLEAN-UP WORKER.

    E.    <u>Establishment of Status as a ZONE A RESIDENT or ZONE B RESIDENT</u>

      1)    Status as a ZONE A RESIDENT or ZONE B RESIDENT shall be established by documentation of the fact and time-frame of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S residency at any time during the period between April 20, 2010, and September 30, 2010, for a ZONE A RESIDENT or between April 20, 2010, and December 31, 2010, for a ZONE B RESIDENT (*e.g.*, copies of a lease or title to property, utility or phone bills, a driver's license or other government-issued ID, or similar documentation found to be acceptable by the CLAIMS ADMINISTRATOR).

      2)    The fact of residency must be demonstrated by documentation.  However, if no documentary proof of the time-frame of residency is available, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER may provide a declaration signed under penalty of perjury to demonstrate the time-frame of residence only.

3)      A minor or incompetent or incapacitated person claiming to be a ZONE A RESIDENT or a ZONE B RESIDENT may also establish the fact, location and duration of his or her residency through (1) school records, custody orders, medical records, and/or similar evidence; or (2) for a minor or incompetent or incapacitated person claiming to be a ZONE A RESIDENT or a ZONE B RESIDENT who lacks documentation, a declaration by an AUTHORIZED REPRESENTATIVE signed under penalty of perjury confirming such minor or incompetent or incapacitated person's residency in ZONE A between April 20, 2010, and September 30, 2010, for a ZONE A RESIDENT or in ZONE B between April 20, 2010, and December 31, 2010, for a ZONE B RESIDENT.

4)      Except as provided in Section XXI.E.3, a declaration made by or on behalf of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is not acceptable proof of ZONE A or ZONE B residency.

F.      Proof of ACTUAL HOSPITAL EXPENSES

1)      A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER seeking reimbursement of ACTUAL HOSPITAL EXPENSES incurred in connection with a SPECIFIED PHYSICAL CONDITION must provide documentation of such ACTUAL HOSPITAL EXPENSES, including hospital or physician records, bills, statements, receipts, proof of payment, or other similar documentation found to be acceptable by the CLAIMS ADMINISTRATOR, documenting the fact, cost, and payment of the hospitalization, and that the hospitalization was related to the claimed SPECIFIED PHYSICAL CONDITION.   The CLAIMS ADMINISTRATOR shall not compensate for any ACTUAL HOSPITAL EXPENSES that are not substantiated through documentation.   The CLAIMS ADMINISTRATOR shall review the documentation of ACTUAL HOSPITAL EXPENSES to determine whether:

141

a)       it is an acceptable form of documentary proof;

b)       the submitted billed expenses related to the SPECIFIED PHYSICAL CONDITION;

c)       the submitted expenses occurred within the reimbursable time frame as set forth in the SPECIFIED PHYSICAL CONDITIONS MATRIX; and

d)       the submitted expenses were paid by or on behalf of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER.

G.       Audit of Claims for Compensation for SPECIFIED PHYSICAL CONDITION

1)       On a monthly basis, the CLAIMS ADMINISTRATOR shall audit five percent of the total PROOF OF CLAIM FORMS that the CLAIMS ADMINISTRATOR has found to qualify for compensation for a SPECIFIED PHYSICAL CONDITION during the preceding month. The CLAIMS ADMINISTRATOR shall select the PROOF OF CLAIM FORMS for auditing on a random basis; provided, however, that the CLAIMS ADMINISTRATOR may also consider whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is submitting a PROOF OF CLAIM FORM under A1, A2, A3, A4, or B1 for purposes of ensuring audits of all types of claims

2)       Upon selection for audit of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim seeking compensation under levels A1, A3, or A4, on the SPECIFIED PHYSICAL CONDITIONS MATRIX, the CLAIMS ADMINISTRATOR shall notify MEDICAL BENEFITS CLASS COUNSEL, the audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, and BP'S COUNSEL of the selection of the claim for audit and shall require that, within 30 days, the audited MEDICAL BENEFITS SETTLEMENT

142

CLASS MEMBER submit to the CLAIMS ADMINISTRATOR, to the extent not already provided, the following documents and information:

a)	The audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S employment records for April 20, 2010, to April 16, 2012, but only if the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is claiming compensation for a SPECIFIED PHYSICAL CONDITION based on his or her status as a CLEAN-UP WORKER;

b)	Fully completed and executed authorizations that will allow the CLAIMS ADMINISTRATOR to obtain copies of the audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S employment records for April 20, 2010, to April 16, 2012, but only if the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is claiming compensation for a SPECIFIED PHYSICAL CONDITION based on his or her status as a CLEAN-UP WORKER; and

c)	Such other relevant documents or information within the audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S possession, custody, or control as may reasonably be requested by the CLAIMS ADMINISTRATOR under the circumstances.

d)	The CLAIMS ADMINISTRATOR shall pay reasonable copying costs to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER providing the documents and information specified in Sections XXI.G.3.a and XXI.G.3.c above.

3)	Upon selection for audit of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim seeking compensation under levels A2 or B1 on the SPECIFIED PHYSICAL CONDITIONS MATRIX, the CLAIMS ADMINISTRATOR shall notify MEDICAL BENEFITS CLASS COUNSEL, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER and BP'S COUNSEL of the selection of the claim for audit and shall require

143

that within 30 days, the audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER submit to the CLAIMS ADMINISTRATOR, to the extent not already provided, the following documents and information:

a)      All of the audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S medical records in his or her possession, custody, or control that relate to the condition and/or symptom(s) claimed by MEDICAL BENEFITS SETTLEMENT CLASS MEMBER;

b)      A list of all health care  providers seen by the audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER since April 20, 2010;

c)      A HIPAA-compliant release substantially in the form of Appendix B to Exhibit 5, to obtain the audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S medical records from health care providers since April 20, 2010;

d)      The audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S employment records for April 20, 2010, to April 16, 2012, but only if the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is claiming compensation for a SPECIFIED PHYSICAL CONDITION based on his or her status as a CLEAN-UP WORKER;

e)      Fully completed and executed authorizations that will allow the CLAIMS ADMINISTRATOR to obtain copies of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S employment records for April 20, 2010, to April 16, 2012, but only if the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is claiming compensation for a SPECIFIED PHYSICAL CONDITION based on his or her status as a CLEAN-UP WORKER; and

f)      Such other relevant documents or information within the audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S possession, custody, or control as may reasonably be requested by the CLAIMS ADMINISTRATOR under the circumstances.

g)      The CLAIMS ADMINISTRATOR shall pay reasonable copying costs to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER providing the documents and information specified in Sections XXI.G.3.a and XXI.G.3.c.

4)      In addition to those audits to be performed pursuant to Section XXI.G.1 above, the CLAIMS ADMINISTRATOR may select for audit additional qualifying claims by MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS for compensation for SPECIFIED PHYSICAL CONDITIONS where the CLAIMS ADMINISTRATOR, based upon its experience with the claims administration process, determines that the PROOF OF CLAIM FORM and/or documents submitted in support of the PROOF OF CLAIM FORM may contain intentional misrepresentation, omission, or concealment of material facts relating to the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim for compensation for a SPECIFIED PHYSICAL CONDITION.  In particular, the CLAIMS ADMINISTRATOR may select for audits additional qualifying claims that involve use of a form declaration or involve medical examinations that were conducted at locations other than standard treatment or diagnosis settings (*e.g.* hotel rooms).

5)      A claim by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER for compensation for a SPECIFIED PHYSICAL CONDITION shall not be paid while it is the subject of an audit.

6)      If a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER unreasonably fails or refuses to provide the CLAIMS ADMINISTRATOR with any materials,

documents, or information sought by the CLAIMS ADMINISTRATOR for an audit within the time frame for submitting additional materials, documents, or information and, under appropriate circumstances, after being afforded an additional period of time to do so, the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim shall be denied.

       7)     With respect to all audits of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS' claims for compensation for a SPECIFIED PHYSICAL CONDITION, the CLAIMS ADMINISTRATOR shall do the following:

       a)     Review each such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S declaration, supporting documentation, medical records (if applicable), employment records, and all other documents or information that the CLAIMS ADMINISTRATOR has obtained relating to that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim; and

       b)     Determine whether a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S PROOF OF CLAIM FORM submitted to the CLAIMS ADMINISTRATOR intentionally misrepresents, omits, and/or conceals material facts that affect the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S qualification for compensation for a SPECIFIED PHYSICAL CONDITION.

       8)     If, upon completion of an audit, the CLAIMS ADMINISTRATOR makes a determination that there has not been an intentional misrepresentation, omission, or concealment of a material fact made in connection with the claim submitted by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, then the claim shall be paid.

       9)     If, upon completion of an audit, the CLAIMS ADMINISTRATOR makes a determination that there has been intentional misrepresentation, omission, or concealment of a

material fact made in connection with the claim submitted by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER that affects the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S qualification for compensation for a SPECIFIED PHYSICAL CONDITION, the CLAIMS ADMINISTRATOR shall notify the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER of such findings.   Such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER may respond to such notice within 15 days with any evidence indicating why no intentional misrepresentation, omission, and/or concealment of a material fact has been made.  If, after its receipt and consideration of all such evidence, the CLAIMS ADMINISTRATOR determines that an intentional misrepresentation, omission, and/or concealment of a material fact has been made, or upon expiration of the 15 day response period and the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER does not respond to the CLAIMS ADMINISTRATOR'S notice described above, the CLAIMS ADMINISTRATOR shall do the following:

a)     Deny that MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claim and make no payment on such claim;

b)     Notify MEDICAL BENEFITS CLASS COUNSEL, the audited MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, and BP'S COUNSEL of the results of the audit and the denial of the claim; and

c)     Report the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER to the responsible government authorities pursuant to Section XXI.H below.

10)     The CLAIMS ADMINISTRATOR shall complete all audits described herein within 30 days of receipt of the documents and information set forth in Section XXI.G.3.a and Section XXI.G.3.c above.

147

H.      <u>Fraudulent or Intentional Misstatements of Fact</u>

All statements made in the PROOF OF CLAIM FORM, NOTICE OF INTENT TO SUE, and MEDIATION INFORMATION FORM are sworn statements submitted to the CLAIMS ADMINISTRATOR under penalty of perjury.  All statements and documentary proof submitted in support of a PROOF OF CLAIM FORM, NOTICE OF INTENT TO SUE, and MEDIATION INFORMATION FORM are subject to verification, investigation, and review by the CLAIMS ADMINISTRATOR.  If the CLAIMS ADMINISTRATOR at any time has reason to believe that a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER has made an intentional misrepresentation, omission, or concealment of a material fact in the PROOF OF CLAIM FORM, NOTICE OF INTENT TO SUE, or MEDIATION INFORMATION FORM, or has provided fraudulent proof in support of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S claims, the CLAIMS ADMINISTRATOR shall discontinue processing the claim and report the alleged intentional misrepresentation, omission, or concealment of material fact and/or alleged fraudulent proof to the COURT, the United States Attorney's Office, the MEDICAL BENEFITS CLASS COUNSEL, and BP'S COUNSEL.

I.      <u>NOTICE OF INTENT TO SUE</u>

The CLAIMS ADMINISTRATOR shall review each completed NOTICE OF INTENT TO SUE and the materials submitted therewith to confirm that:

1)      the NOTICE OF INTENT TO SUE and related materials have been timely submitted;

2)      the NOTICE OF INTENT TO SUE has been signed by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER or, where applicable, the AUTHORIZED REPRESENTATIVE, under penalty of perjury;

3)      the "Personal & Background Information" section of the NOTICE OF INTENT TO SUE has been completed in its entirety;

4)      the NOTICE OF INTENT TO SUE identifies the LATER-MANIFESTED PHYSICAL CONDITION with which the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER was diagnosed;

5)      the NOTICE OF INTENT TO SUE identifies the date on which the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER was diagnosed with the LATER-MANIFESTED PHYSICAL CONDITION;

6)      the NOTICE OF INTENT TO SUE identifies the medical professional who diagnosed the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER with the LATER-MANIFESTED PHYSICAL CONDITION;

7)      the NOTICE OF INTENT TO SUE includes a PHYSICIAN'S CERTIFICATION FORM, substantially in the form of Appendix C to Exhibit 4, from a medical professional providing the diagnosis and date of diagnosis of the LATER-MANIFESTED PHYSICAL CONDITION claimed by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER, or includes medical records containing the diagnosis and date of first diagnosis of the LATER-MANIFESTED PHYSICAL CONDITION claimed by the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER;

8)      the NOTICE OF INTENT TO SUE contains a certification that the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER has not filed and will not file a claim for benefits under workers' compensation law or the Longshore and Harbor Workers' Compensation Act for that LATER-MANIFESTED PHYSICAL CONDITION.

9)      the NOTICE OF INTENT TO SUE identifies whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is represented by a lawyer, and if so, the name, law firm, address, e-mail address, and telephone number of that lawyer;

10)     where an AUTHORIZED REPRESENTATIVE is applying on behalf of a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER for compensation for such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S LATER-MANIFESTED PHYSICAL CONDITION, the NOTICE OF INTENT TO SUE includes documentation confirming that such AUTHORIZED REPRESENTATIVE is legally authorized to file a lawsuit on behalf of such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER; and

11)     the NOTICE OF INTENT TO SUE (1) identifies all known GOVERNMENTAL PAYERS, MEDICARE PART C OR PART D PROGRAMS, and OTHER PAYERS/PROVIDERS from whom such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is or was entitled to benefits for medical items, services, and/or prescription drugs on or after April 16, 2012, for injuries claimed to arise out of the *DEEPWATER HORIZON* INCIDENT and who he or she believes or suspects may hold or assert any liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type in connection with compensation or benefits claimed or received by a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER pursuant to this MEDICAL SETTLEMENT AGREEMENT; and (2) authorizes the CLAIMS ADMINISTRATOR to transmit information necessary to comply with reporting obligations to GOVERNMENTAL PAYERS.

J.      Selection of Mediators

Within 30 days of the EFFECTIVE DATE, the CLAIMS ADMINISTRATOR shall nominate no fewer than 3 individuals to serve as mediators and transmit the names of such

individuals to the MEDICAL BENEFITS CLASS COUNSEL AND BP.  The MEDICAL BENEFITS CLASS COUNSEL and BP must approve the individuals nominated by the CLAIMS ADMINISTRATOR to serve as mediators.  Upon approval by the MEDICAL BENEFITS CLASS COUNSEL and BP, the mediator(s) will be retained.  During the tenure of his or her retention, a mediator shall not enter the employ or contract (other than for the purposes of providing mediation services) with the MEDICAL BENEFITS CLASS COUNSEL, BP, or BP'S COUNSEL.  A mediator may not mediate a claim involving a party he has previously represented.  Any mediator may be removed upon the joint request of the MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL.  Replacements for any mediator who is removed or can no longer serve shall be identified by the CLAIMS ADMINISTRATOR, subject to approval of the MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL.

K.    Reporting

The CLAIMS ADMINISTRATOR shall make reports as follows:

1)    Weekly Reporting Obligations

a)    Between entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER and the FAIRNESS HEARING, the CLAIMS ADMINISTRATOR shall provide BP and MEDICAL BENEFITS CLASS COUNSEL with a weekly report of:

(i)    The number and identity of OPT OUTS;

(ii)    The number and identity of persons revoking an OPT OUT; and

(iii)    The weekly number and total number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who have filed a PROOF OF CLAIM FORM and the type(s) of benefits being sought in the PROOF OF CLAIM FORM.

151

      2)        Monthly Reporting Obligations

      a)        Beginning on the date of the FAIRNESS HEARING and for 3 calendar years thereafter, the CLAIMS ADMINISTRATOR shall provide BP and MEDICAL BENEFITS CLASS COUNSEL with a monthly report of, where applicable:

      (i)        The monthly number and total number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who have filed a PROOF OF CLAIM FORM and the type(s) of benefit being sought in the PROOF OF CLAIM FORM;

      (ii)        The monthly number and total number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who have received compensation for SPECIFIED PHYSICAL CONDITIONS and the monthly amount and total amount paid;

      (iii)        The monthly number and the total number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who have sought, but have been found by the CLAIMS ADMINISTRATOR not to qualify for, compensation for a SPECIFIED PHYSICAL CONDITION;

      (iv)        Activity in the PERIODIC MEDICAL CONSULTATION PROGRAM, including the number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS qualifying to participate in the PERIODIC MEDICAL CONSULTATION PROGRAM, the monthly number and total number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS receiving physician visits, and the monthly amount and the total amount paid to each provider and to all providers within the PERIODIC MEDICAL CONSULTATION PROGRAM;

(v)     The monthly number and identity of, as well as the total number of, MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS filing a NOTICE OF INTENT TO SUE;

(vi)     The monthly number of mediations, and the total number of mediations, involving MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS claiming LATER-MANIFESTED PHYSICAL CONDITIONS and the outcomes of such mediations;

(vii)     The total number and identity of all MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS then eligible to bring a BACK-END LITIGATION OPTION LAWSUIT;

(viii)   A summary accounting of the administrative expenses incurred by the CLAIMS ADMINISTRATOR in the preceding month; and

(ix)     The total amounts disbursed to each grantee participating in the GULF REGION HEALTH OUTREACH PROGRAM.

3)     Annual Reporting Obligations

a)     Beginning on the first January after the EFFECTIVE DATE, the CLAIMS ADMINISTRATOR shall provide annual reports to the COURT, BP, and the MEDICAL BENEFITS CLASS COUNSEL of:

(i)     The amounts spent by the CLAIMS ADMINISTRATOR **and/or the trustee and/or the directed trustee of the MEDICAL SETTLEMENT TRUST** on each of the following in the preceding year: compensation for SPECIFIED PHYSICAL CONDITIONS; the PERIODIC MEDICAL CONSULTATION PROGRAM; activities related to the BACK-END LITIGATION OPTION process; the

GULF REGION HEALTH OUTREACH PROGRAM; administrative expenses; payments to CMS, OTHER GOVERNMENTAL PAYERS, MEDICARE PART C OR PART D PROGRAM sponsors, and OTHER PAYERS/PROVIDERS; and all other SETTLEMENT COSTS;

(ii)    The number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS, broken down by SPECIFIED PHYSICAL CONDITIONS MATRIX category (*i.e.* A1, A2, A3, A4, B1) who, in the preceding  year, received compensation for a SPECIFIED PHYSICAL CONDITION and the number of persons who sought but were found by the CLAIMS ADMINISTRATOR not to qualify for compensation for a SPECIFIED PHYSICAL CONDITION;

(iii)    The number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who, in the preceding year, qualified for participation in the PERIODIC MEDICAL CONSULTATION PROGRAM, the number and identity of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who participated in the PERIODIC MEDICAL CONSULTATION PROGRAM, and the number of persons who sought to qualify for, but were found by the CLAIMS ADMINISTRATOR not to qualify for, the PERIODIC MEDICAL CONSULTATION PROGRAM;

(iv)    The number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS who filed a NOTICE OF INTENT TO SUE in the preceding year;

(v)    The number of MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS whose claims for LATER-MANIFESTED PHYSICAL CONDITIONS were mediated in the preceding year and the outcomes of such mediations;

154

(vi) The number and identity, in a format acceptable to the COURT, of all MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS then eligible to bring a BACK-END LITIGATION OPTION LAWSUIT;

(vii) Status reports from each of the grantees participating in the GULF REGION HEALTH OUTREACH PROGRAM for the duration of such projects; **and**

(viii) A status report regarding the implementation and operations of the GULF REGION HEALTH OUTREACH PROGRAM LIBRARY**.; and**

**(ix) A status report from the trustee and/or the directed trustee of the MEDICAL SETTLEMENT TRUST.**

b) Such reports to the COURT shall be done in a form and manner deemed acceptable to the COURT.

L.     Financial Audit

Beginning on the first January after the EFFECTIVE DATE, and each year thereafter, the CLAIMS ADMINISTRATOR shall cause an audit to be performed by a Certified Public Accountant upon the financial records of the CLAIMS ADMINISTRATOR **and the MEDICAL SETTLEMENT TRUST**, which shall reflect amounts received from BP in the prior year and payments made in the prior year **by the CLAIMS ADMINISTRATOR**.  Complete copies of such audits shall be provided to the COURT, MEDICAL BENEFITS CLASS COUNSEL, and BP.

## XXII.  **BP PAYMENT OBLIGATIONS**

A.     BP, jointly and severally, shall be responsible for payment of all SETTLEMENT COSTS.  BP may satisfy all of its payment obligations under this MEDICAL SETTLEMENT AGREEMENT by directly paying or causing the DWH TRUST to make payments into the FUNDS as set forth herein.

1)     BP Corporation North America, Inc., an Indiana corporation, shall not be a PARTY to this MEDICAL SETTLEMENT AGREEMENT but shall serve as guarantor of BP'S payment obligations under this MEDICAL SETTLEMENT AGREEMENT as set forth in the Guarantee attached hereto as Exhibit 17.

2)     BP p.l.c. shall not be a PARTY to this MEDICAL SETTLEMENT AGREEMENT but shall serve as a back-up guarantor to BP Corporation North America for a period of 5 years after the EFFECTIVE DATE as set forth in the Guarantee attached hereto as Exhibit 18.

B.     BP has established the DWH TRUST pursuant to the DWH TRUST AGREEMENT for the purpose of providing funds to be used to satisfy claims, as more particularly described in the DWH TRUST AGREEMENT, arising from or related to the *DEEPWATER HORIZON* INCIDENT.  BP may satisfy each of its payment obligations under this MEDICAL SETTLEMENT AGREEMENT, including this Section XXII, by arranging for the DWH TRUST to make such payment on BP'S behalf.  It is contemplated by BP that such payments generally will be made by the DWH TRUST.  Nothing contained in this Section XXII in any way limits or impairs the duties and obligations of BP under this MEDICAL SETTLEMENT AGREEMENT or the guarantees of payment obligations under this MEDICAL SETTLEMENT AGREEMENT provided by BP Corporation North America, Inc. and BP p.l.c. set forth in Exhibits 17 and 18, respectively.

156

C.      BP**, and** MEDICAL BENEFITS CLASS COUNSEL**, and the CLAIMS ADMINISTRATOR** will file a proposed MEDICAL SETTLEMENT TRUST AGREEMENT with the COURT.    Upon approval of the proposed MEDICAL SETTLEMENT TRUST AGREEMENT by the COURT, BP, MEDICAL BENEFITS CLASS COUNSEL, **the trustee and the directed trustee of the MEDICAL SETTLEMENT TRUST,** and the CLAIMS ADMINISTRATOR will execute the MEDICAL SETTLEMENT TRUST AGREEMENT approved by the COURT, thereby creating the MEDICAL SETTLEMENT TRUST.    The MEDICAL SETTLEMENT TRUST shall be structured and operated in a manner so that it qualifies as a "qualified settlement fund" under section 468B(d)(2) of the Internal Revenue Code and Treasury Regulation §1.468B-1.

D.      The MEDICAL SETTLEMENT TRUST shall be comprised of the **following three separate funds, which the CLAIMS ADMINISTRATOR will establish as three separate bank accounts at one or more federally insured depository institutions approved by BP and MEDICAL BENEFITS CLASS COUNSEL, but which shall togetherFUNDS. The trustee and/or the directed trustee shall establish the MEDICAL SETTLEMENT TRUST ACCOUNT, into which BP shall make payments as required by this MEDICAL SETTLEMENT AGREEMENT.    The trustee and/or the directed trustee shall also establish three separate funds, into which the trustee and/or the directed trustee shall transfer funds at the direction of the CLAIMS ADMINISTRATOR and pursuant to the terms of this MEDICAL SETTLEMENT AGREEMENT and on which the CLAIMS ADMINISTRATOR shall have signatory authority.    These FUNDS shall** constitute a single qualified settlement fund:

1)      GULF REGION HEALTH OUTREACH PROJECTS FUND, which shall be used ~~by the CLAIMS ADMINISTRATOR~~ solely to make payments for the GULF REGION HEALTH OUTREACH PROJECTS pursuant to Section IX.E;

2)      GENERAL MEDICAL CLAIMS FUND, which shall be used ~~by the CLAIMS ADMINISTRATOR~~ solely to make payments for (a) all compensation for SPECIFIED PHYSICAL CONDITIONS as provided in Section VI and Exhibit 8, and (b) all costs associated with the PERIODIC MEDICAL CONSULTATION PROGRAM as provided in Section VII;

3)      ADMINISTRATIVE FUND, which shall be used ~~by the CLAIMS ADMINISTRATOR~~ to pay all SETTLEMENT COSTS other than the payments described in Sections XXII.D.1 and XXII.D.~~2. All such remaining SETTLEMENT COSTS~~**2, which** shall constitute ADMINISTRATIVE EXPENSES.~~.~~ **; and**

**4)      The MEDICAL SETTLEMENT TRUST ACCOUNT, which shall be used solely to transfer funds into the FUNDS described above in Section XXII.D.1-3.**

E.      ~~Both the~~**The** MEDICAL SETTLEMENT TRUST and ~~each of~~ the FUNDS shall be managed by the ~~CLAIMS ADMINISTRATOR~~**trustee and/or the directed trustee of the MEDICAL SETTLEMENT TRUST as provided in the MEDICAL SETTLEMENT TRUST AGREEMENT** and shall be subject to the continuing jurisdiction and supervision of the COURT.  ~~The CLAIMS ADMINISTRATOR shall serve as the~~**Each of the FUNDS shall be maintained in separate bank accounts at one or more federally insured depository institutions approved by BP and MEDICAL BENEFITS CLASS COUNSEL.  MEDICAL BENEFITS CLASS COUNSEL and BP shall nominate Matthew L. Garretson as the trustee and J.P. Morgan Trust Company of Delaware as the directed** trustee of the

MEDICAL SETTLEMENT TRUST and **Matthew L. Garretson** as the administrator of the qualified settlement fund for purposes of Treasury Regulation §1.468B-2(k)(3)~~. The CLAIMS ADMINISTRATOR~~**, subject to the approval of the COURT.  The trustee and/or the direct trustee may be removed by joint motion made by BP'S COUNSEL and MEDICAL BENEFITS CLASS COUNSEL, and granted by the COURT.  If the trustee and/or directed trustee resigns, is removed, or is otherwise unable to continue employment in that position, the MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL shall jointly select a new proposed trustee and/or directed trustee, as the case may be, and move the COURT to approve the new proposed trustee and/or directed trustee, as the case may be. The MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL and the COURT will follow this process until such time as a new trustee and/or directed trustee, as the case may be, is approved by the COURT and appointed.  The COURT shall have ongoing jurisdiction over the trustee and the directed trustee and shall retain such jurisdiction through and after the EFFECTIVE DATE.  The trustee and the directed trustee of the MEDICAL SETTLEMENT TRUST** shall have the authority to make **payments from the MEDICAL SETTLEMENT TRUST ACCOUNT into the other FUNDS and to make** disbursements from the FUNDS **at the direction of the CLAIMS ADMINISTRATOR and** consistent with the terms of this MEDICAL SETTLEMENT AGREEMENT~~. The CLAIMS ADMINISTRATOR~~ **and the MEDICAL SETTLEMENT TRUST AGREEMENT.  The trustee of the MEDICAL SETTLEMENT TRUST** shall be responsible for making any necessary tax filings and payments of taxes, estimated taxes, and associated interest and penalties, if any, by the MEDICAL SETTLEMENT TRUST and responding to any questions from, or audits regarding such taxes by, the Internal Revenue Service or any state or local tax

authority.   The ~~CLAIMS ADMINISTRATOR~~**trustee of the MEDICAL SETTLEMENT TRUST** also shall be responsible for complying with all tax information reporting and withholding requirements with respect to payments made by the MEDICAL SETTLEMENT TRUST, as well as paying any associated interest and penalties.  Any such taxes, interest, and penalty payments shall be SETTLEMENT COSTS and shall be paid by the ~~CLAIMS ADMINISTRATOR~~**trustee of the MEDICAL SETTLEMENT TRUST** from the ADMINISTRATIVE FUND.

F.      BP shall pay or cause to be paid a total of $105 million ~~to~~**into the MEDICAL SETTLEMENT TRUST ACCOUNT for transfer by the trustee and/or the directed trustee into** the GULF REGION HEALTH OUTREACH PROJECTS FUND according to the schedule set forth in Section IX.E.

G.      Within 10 days after the EFFECTIVE DATE, BP shall pay or cause to be paid ~~to~~**into the MEDICAL SETTLEMENT TRUST ACCOUNT for transfer by the trustee and/or the directed trustee into** the GENERAL MEDICAL CLAIMS FUND an initial amount equal to $10 million.  For the three years following the EFFECTIVE DATE, if the GENERAL MEDICAL CLAIMS FUND falls to a balance of less than $5 million, the CLAIMS ADMINISTRATOR shall provide a written notice to BP specifying the balance in the GENERAL MEDICAL CLAIMS FUND, and BP will promptly pay or cause to be paid an additional amount ~~to~~**into the MEDICAL SETTLEMENT TRUST ACCOUNT for transfer by the trustee and/or the directed trustee into** the GENERAL MEDICAL CLAIMS FUND sufficient to restore such balance to at least $10 million or enter into another appropriate arrangement with the CLAIMS ADMINISTRATOR to assure that sufficient funds are maintained in the GENERAL MEDICAL CLAIMS FUND to satisfy projected payments;

provided, however, that no such arrangement shall be entered into without the written agreement of MEDICAL BENEFITS CLASS COUNSEL.  Thereafter, commencing three years after the EFFECTIVE DATE, the CLAIMS ADMINISTRATOR shall provide in writing to BP and MEDICAL BENEFITS CLASS COUNSEL a good faith, reasonable estimate of the amount of payments the CLAIMS ADMINISTRATOR anticipates will be made from the GENERAL MEDICAL CLAIMS FUND during the next succeeding calendar month (each a MONTHLY ESTIMATE).  Each such MONTHLY ESTIMATE will be provided to BP and MEDICAL BENEFITS CLASS COUNSEL at least 10 business days prior to the commencement of the calendar month covered by such estimate.  Within seven business days after receipt of such MONTHLY ESTIMATE, BP shall pay or cause to be paid **to**<u>**into the MEDICAL SETTLEMENT TRUST ACCOUNT for transfer by the trustee and/or the directed trustee into**</u> the GENERAL MEDICAL CLAIMS FUND, the amount specified in the MONTHLY ESTIMATE.  Within ten business days after the end of each calendar month, the CLAIMS ADMINISTRATOR shall provide BP and MEDICAL BENEFITS CLASS COUNSEL with a reconciliation (in such detail as BP and/or MEDICAL BENEFITS CLASS COUNSEL may reasonably request) comparing the actual amount paid during such calendar month by the GENERAL MEDICAL CLAIMS FUND with the amount reflected in the MONTHLY ESTIMATE for such month.  To the extent the amount reflected in such MONTHLY ESTIMATE exceeds the amount actually paid in such month by the GENERAL MEDICAL CLAIMS FUND, such excess shall be credited against BP'S subsequent payment obligations to the GENERAL MEDICAL CLAIMS FUND.  If at any time the CLAIMS ADMINISTRATOR reasonably believes that the balance in the GENERAL MEDICAL CLAIMS FUND is not sufficient to pay the projected sums to be paid out of the GENERAL MEDICAL CLAIMS

FUND during that calendar month, the CLAIMS ADMINISTRATOR shall provide a written notice to BP and MEDICAL BENEFITS CLASS COUNSEL specifying the additional amounts needed to satisfy such projected sums.  BP will promptly pay or cause to be paid such additional amount ~~to~~**into the MEDICAL SETTLEMENT TRUST ACCOUNT for transfer by the trustee and/or the directed trustee into** the GENERAL MEDICAL CLAIMS FUND or enter into another appropriate arrangement with the CLAIMS ADMINISTRATOR to assure that sufficient funds will exist in the GENERAL MEDICAL CLAIMS FUND to satisfy projected sums to be paid out of the GENERAL MEDICAL CLAIMS FUND during that calendar month; provided, however, that no such arrangement shall be entered into without the written agreement of MEDICAL BENEFITS CLASS COUNSEL.  The CLAIMS ADMINISTRATOR will provide BP and MEDICAL BENEFITS CLASS COUNSEL with periodic reports relating to payments from the GENERAL MEDICAL CLAIMS FUND and projections of payments that are in process, in each case in such detail as BP and/or MEDICAL BENEFITS CLASS COUNSEL may reasonably request, but in no such case shall such reports include the names of any MEDICAL BENEFITS SETTLEMENT CLASS MEMBER indicating that he or she received compensation for a SPECIFIED PHYSICAL CONDITION or participated in the PERIODIC MEDICAL CONSULTATION PROGRAM.

H.    BP shall pay or cause to be paid ~~to~~**into the MEDICAL SETTLEMENT TRUST ACCOUNT for transfer by the trustee and/or the directed trustee into** the ADMINISTRATIVE FUND (i)  $15 million no later than 15 days after the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER is entered and (ii) additional amounts as may be required on a monthly basis thereafter during the existence of this MEDICAL SETTLEMENT AGREEMENT in accordance with the ADMINISTRATIVE BUDGET to be

developed by the CLAIMS ADMINISTRATOR, subject to the approval of both BP and MEDICAL BENEFITS CLASS COUNSEL, which shall not be unreasonably withheld.  The CLAIMS ADMINISTRATOR shall provide reports consistent with Section XXI.K.  Nothing in Section XXI.K shall preclude BP or MEDICAL BENEFITS CLASS COUNSEL from requesting such additional information concerning the ADMINISTRATIVE ~~FUNDS~~**FUND or the MEDICAL SETTLEMENT TRUST ACCOUNT** as is reasonably necessary.  BP and the CLAIMS ADMINISTRATOR shall adjust the monthly payment amounts accordingly to ensure that sufficient funds are on deposit in the ADMINISTRATIVE FUND to cover the ADMINISTRATIVE EXPENSES on a timely basis.

I.      BP may contest any request for payment from the CLAIMS ADMINISTRATOR by filing a motion with the COURT within 10 days of receipt of such request; provided, however, that BP may not contest any payments made or to be made by the CLAIMS ADMINISTRATOR to MEDICAL BENEFITS SETTLEMENT CLASS MEMBERS for compensation for a SPECIFIED PHYSICAL CONDITION.  Such motion must state with specificity the reasons for BP'S challenge of the CLAIMS ADMINISTRATOR'S request for payment.  BP shall request an expedited hearing of any such motion.

J.      BP shall have the right (but not the obligation) to prepay, or cause to be prepaid, any of its payment obligations to the FUNDS under the MEDICAL SETTLEMENT AGREEMENT.  In connection with any such prepayment, BP shall designate in writing the payment obligation that is being prepaid and how such prepayment should affect BP'S remaining payment obligations (*i.e.*, whether the amount prepaid should be credited against the next payment obligation or to one or more subsequent payment obligations or a combination thereof).

K.      BP shall have a reversionary interest in (i) any amounts that remain in the GENERAL MEDICAL CLAIMS FUND 1 year after at the close of the PERIODIC MEDICAL CONSULTATION PROGRAM, (ii) any amounts that remain in the GULF REGION HEALTH OUTREACH PROJECTS FUND at the earlier of the time all distributions have been made pursuant to Section IX.E or the time this MEDICAL SETTLEMENT AGREEMENT terminates under Section XIV, and/or (iii) any amounts that remain in **the MEDICAL SETTLEMENT TRUST ACCOUNT or** the ADMINISTRATIVE FUND 1 year following the conclusion of the MEDICAL SETTLEMENT AGREEMENT, as determined by the COURT.

L.      Amounts deposited in each of the FUNDS shall be invested conservatively in a manner designed to assure timely availability of funds, protection of principal and avoidance of concentration risk, and only in the following types of investments:

1)      United States government money market funds having a AAA/Aaa rating awarded by at least two of the three major rating agencies (Standard & Poor's, Moody's or Fitch); or

2)      Short-dated United States treasury bills and/or interest bearing deposits at federally insured depository institutions that are at all times rated A+/A1 or higher by Standard & Poor's and Moody's provided such depository institution rated A+/A1 or higher at all times holds a stable or positive outlook.

3)      The total amount of cash invested in any single United States government money market fund by the FUNDS in the aggregate shall not exceed $50 million and the total amount invested in deposits at federally insured depository institutions by the ~~Funds~~**FUNDS** in the aggregate shall not exceed $25 million per depository institution.

M.     Any earnings attributable to the **MEDICAL SETTLEMENT TRUST ACCOUNT, the** GENERAL MEDICAL CLAIMS FUND**,** and**/or** the GULF REGION HEALTH OUTREACH PROJECTS FUND shall be transferred to the ADMINISTRATIVE FUND, and any earnings on the ADMINISTRATIVE FUND shall be retained in the ADMINISTRATIVE FUND.  Such earnings may be used to pay SETTLEMENT COSTS out of the ADMINISTRATIVE FUND.

N.     The GENERAL MEDICAL CLAIMS FUND shall have an escrow account, with the LEAD PAYING AGENT as the escrow agent.  Notwithstanding the investment criteria set forth in Section XXII.L above, in order to provide liquidity, the LEAD PAYING AGENT shall be permitted to deposit in a federally insured depository account with the GULF REGION BANK such amount as may be specified in the LEAD PAYMENT AGENT AGREEMENT.

O.     The CLAIMS ADMINISTRATOR **and the trustee and the directed trustee of the MEDICAL SETTLEMENT TRUST** shall enter into a PAYING AGENT AGREEMENT, in form and substance reasonably satisfactory to BP and MEDICAL BENEFITS CLASS COUNSEL, and approved by the COURT, pursuant to which a federally insured depository institution, approved by BP and MEDICAL BENEFITS CLASS COUNSEL, will serve as escrow agent and LEAD PAYING AGENT for the GENERAL MEDICAL CLAIMS FUND. The LEAD PAYING AGENT shall enter into the CHECK CASHING ARRANGEMENT with the GULF REGION BANK that provides that checks drawn on the GENERAL MEDICAL CLAIMS FUND will be eligible to be cashed or deposited in branches of the GULF REGION BANK in a manner that will expedite the recipients' access to such funds.  Additionally, the LEAD PAYING AGENT may enter into an arrangement with a check-cashing facility agreed to by BP and MEDICAL BENEFITS CLASS COUNSEL and approved by the COURT.

Consistent with the foregoing, the PAYING AGENT AGREEMENT and the CHECK CASHING ARRANGEMENT collectively shall provide for the following:

      1)     The CLAIMS ADMINISTRATOR **and/or the trustee** shall be provided with checks that reflect the name of the GULF REGION BANK, the GULF REGION BANK'S Louisiana, Mississippi, Alabama, or Florida address, and are drawn on the GENERAL MEDICAL CLAIMS FUND maintained by the LEAD PAYING AGENT.

      2)     The CLAIMS ADMINISTRATOR **and/or the trustee** may use such checks to pay SETTLEMENT COSTS payable out of the GENERAL MEDICAL CLAIMS FUND.  The CLAIMS ADMINISTRATOR shall provide to the LEAD PAYING AGENT (or its designee) a nightly, system-generated notification of all check issuances, through an electronic file.  This notification report shall be used by the LEAD PAYING AGENT in connection with its operation of the encashment program described below.

      3)     The GULF REGION BANK will accept such checks for cashing without the requirement that the holder open or maintain an account at the GULF REGION BANK.  The COURT-approved check-cashing facility will accept such checks for cashing.

      4)     The LEAD PAYING AGENT and the GULF REGION BANK (and, if applicable, the COURT-approved check-cashing facility) will maintain an encashment program, to be approved by BP and MEDICAL BENEFITS CLASS COUNSEL, which approval shall not be unreasonably withheld, designed to prevent fraud or other improper payments of checks drawn on the GENERAL MEDICAL CLAIMS FUND.

      5)     The PAYING AGENT AGREEMENT will also provide standard indemnification by the MEDICAL SETTLEMENT TRUST and BP of the LEAD PAYING AGENT (in its capacity as such and as escrow agent for the GENERAL MEDICAL CLAIMS

FUND), with such indemnification excluding negligence and willful misconduct by the LEAD PAYING AGENT.  The PAYING AGENT AGREEMENT shall be governed by New York law.

P.      In the event the **trustee and the directed trustee of the MEDICAL SETTLEMENT TRUST and the** CLAIMS ADMINISTRATOR ~~is~~**are** unable to enter into any of the arrangements specified in ~~this~~ Section XXII**.O** or any of such arrangements thereafter terminate, ~~the  CLAIMS ADMINISTRATOR and~~ BP **and MEDICAL BENEFITS CLASS COUNSEL** shall cooperate to develop and implement an alternative program, which must be ~~agreed to by MEDICAL BENEFITS CLASS COUNSEL and~~ approved by the COURT.

Q.      In the event that the COURT does not approve the MEDICAL SETTLEMENT TRUST AGREEMENT, BP shall pay or cause to be paid all SETTLEMENT COSTS into an account established by the CLAIMS ADMINISTRATOR that is structured and operated in a manner so that it qualifies as a "qualified settlement fund" under Section 468B(d)(2) of the Internal Revenue Code and Treasury Regulation §1.468B-1.  All other provisions of this Section XXII shall otherwise apply.

R.      Notwithstanding any provision of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119, amended by the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029, or any subsequent legislation mandating or subsidizing health insurance coverage, BP shall pay or cause to be paid in full all SETTLEMENT COSTS, including all SETTLEMENT COSTS associated with the PERIODIC MEDICAL CONSULTATION PROGRAM and GULF COAST REGION HEALTH OUTREACH PROGRAM, and shall not bill any GOVERNMENTAL PAYER, MEDICARE PART C OR PART D PROGRAM sponsor, or OTHER PAYER/PROVIDER for any such costs.

S.      Unless the COURT directs otherwise, a separate fund (intended to qualify as a "qualified settlement fund," under § 468B(d)(2) of the Internal Revenue Code and Treasury Regulation § 1.468B.1) will be established out of which common benefit attorneys' fees and costs to the MEDICAL BENEFITS CLASS COUNSEL and/or other common benefit attorneys who have submitted time and costs in compliance with Pretrial Order 9 will be paid pursuant to order of the COURT.  This separate qualified settlement fund will be established pursuant to order of the COURT, and will operate under COURT supervision and control.  This separate qualified settlement fund shall be separate from the qualified settlement fund described in Section XXII.C and any of the ~~funds~~**FUNDS** described in Section XXII.D, and will not be administered by the CLAIMS ADMINISTRATOR.   This Section shall be determined in conjunction with the negotiation of attorneys' fees to be conducted and shall be set forth in Exhibit 19 and as approved by the COURT.  BP's discharge from liability regarding payment of these attorneys' fees and costs into the fund described in this Section XXII.S shall be set forth in Exhibit 19 and as approved by the COURT.  The COURT shall determine the form and manner of administering of this fund, in which BP will also have no reversionary interest.

**T.      Wherever in this MEDICAL SETTLEMENT AGREEMENT the CLAIMS ADMINISTRATOR is authorized or directed, as the context may reflect, to pay, disburse, reimburse, hold, waive, or satisfy any monetary obligation provided for or recognized under any of the terms of this MEDICAL SETTLEMENT AGREEMENT, the CLAIMS ADMINISTRATOR may comply with such authorization or direction by directing the trustee and/or the directed trustee to, as appropriate, pay, disburse, reimburse, hold, waive, or satisfy any such monetary obligation.**