**National Association of Charterboat Operators**
P.O. Box 2990
Orange Beach, AL 36561
251-981-5136  FAX 251-981-8191
www.nacocharters.org



**Facsimile**

**To:** Judge Carl Barbier         **Fax #:** (504) 589-4536

**From:** Bobbi M. WAlker

**Date:** 4/25/2012

**Total Number of pages including Cover Page:** 9

### Message

Proposed BP Settlement

Fee ___
Process ___
X Dktd ___
CtRmDep ___
Doc. No. ___

6402



# National Association of Charterboat Operators

P.O. Box 2990 Orange Beach, AL 36561
Phone (251-981-5136) Fax (251-981-8191)
E-Mail: info@nacocharters.org   Web: www.nacocharters.org

**Bobbi M. Walker**
*Executive Director*

**Bob Zales, II**
Panama City Boatman Association
*President*

**Ed O'Brien**
Maryland Charter Boat Association
*First vice-president*

**Tom Becker**
Mississippi Charter Boat Captains
*Second vice-president*

**Gary Krein**
Charterboat Assoc. of Puget Sound
*Secretary*

**Ron Maglio**
Michigan City Charter Boat Assoc.
*Treasurer*

**Member Associations:**
Alaska Charter Association
Beach Haven Charter Fishing Association
Cape Cod Charter Boat Association
Captree Boatman Open & Charter Boats
Charterboat Association of Puget Sound
Chicago Sportfishing Association
Coastal Bend Guides Association
Deep Creek Charterboat Association
Destin Charterboat Association
Eastern Lake Erie Charter Boat Assoc.
Florida Guides Association, Inc.
Genesee Charterboat Association, Inc.
Golden Gate Fishermen's Association
Greater Point Pleasant Charter Boat Assoc
Hawaii Fishing & Boating Association
Homer (AK) Charter Association
Indiana's North Coast Charter Association
Islamorada Charterboat Association
Kenosha (WI) Charter Boat Association
Maine Association of Charterboat Captains
Marco Island Charter Captains Assoc.
Maryland Charterboat Association
Michigan City Charter Boat Association
Mississippi Charterboat Captains Assoc.
Northeast Charterboat Captains Assoc.
Northern Neck Charter Captains
Panama City Boatmen Association
Petersburg (AK) Charterboat Association
Port Aransas (TX) Boatmen, Inc.
Prince William Sound Charter Boat Assoc.
Seward Charterboat Association
Sitka (AK) Charter Boat Operators Assoc.
United Boatmen of New Jersey
Virginia Charter Boat Association
Waukegan Charter Boat Association
Westport Charterboat Association

April 24, 2012

Honorable Judge Carl Barbier        Sent Via Fax: (504) 589-4536
500 Poydras Street
Room C256
New Orleans, LA 70130

RE: Proposed BP Settlement

Dear Judge Barbier,

NACO is a National Non-Profit organization that represents over 3,000 charter boats (small businesses) across the United States. A significant number of our members are located along the Gulf of Mexico.

We wish to comment and seek your assistance in forcing BP to treat all small businesses, who were affected by the Horizon Deepwater Oil Spill, equally. Under the current agreement ONLY charter boats are required to deduct 33% of their VOO payments against their final claims. For some charter boats after taxes and expenses 33% was their profit for VOO work, which means they worked side by side with other commercial vessels to prevent this disastrous oil spill from destroying the wildlife, fisheries, shrimping and oyster resources for nothing.

We have attached (Exhibit 2) a letter dated May 3, 2010 where BPs attorney A.T. Chenault clearly states, " *We confirm that BP will NOT offset payments to vessels owners against claims they might have*".

Exhibit 4 (attached) a GCCF release dated September 23, 2010 that states, *"The GCCF announced that it would not deduct earnings from the Vessels of Opportunity Program from payments made to claimants. Approximately, 2,000 commercial fishing vessels and charter boats participated in spill cleanup via BPs Vessels of Opportunity program. The Program provided some commercial fishermen whose businesses were shut down by the spill with a chance to earn income. Feinberg stated: "I have listened to the fishermen in the Gulf. We will not be deducting their wages from their payments."*

Exhibit 5 (attached) dated November 19, 2010 letter from U.S. Department of Justice states, *"The draft final protocol could be more clear, as you have previously acknowledged, that individuals who participated in the Vessels of Opportunity program when BP pledged not to use those VOO payments as offsets will not see those payments offset".*

*NACO Page 2 of 2*

These VOO charter boat vessels help minimize, 24/7, BP damages and financial losses from the worst spill disaster this country has ever seen, in return for a fair payment for that effort, and BP agreed not to reduce or offset these individual's damage claims by any compensation payments made in the VOO clean-up programs.

Please correct an injustice and make BP stand behind the promises and commitments they made to charter boats. We are not aware of any claimant who has had his/her damage payments offset and/or reduced due to payments made by BP in the Vessels of Opportunity program. We sincerely appreciate your assistance to correct this injustice.

Sincerely,

Bobbi M. Walker
Executive Director

Cc: Stephen J. Herman
    James Parkenson Roy
    Patrick Juneau



A. T. CHENAULT
Partner
Direct Dial: 504.595.5157
Email: achenault@frvf-law.com

May 3, 2010

James C. Klick, Esq.
Herman, Herman, Katz & Cotlar
820 O'Keefe Avenue
New Orleans, Louisiana 70113-1116

    Re: Voluntary Waiver and Release
         Used at BP Sign-Up in Plaquemines Parish
         Our File: 4190-082

Dear Jim:

    This is a follow up to our telephone conversation today and my forwarding to you a proposed Stipulation and Consent Agreement.

    You asked for a response to your letter of May 2, 2010, and I will do so to the best of my ability.

    We have no personal knowledge of the presentation of a Voluntary Waiver and Release to numerous people from Plaquemines Parish in Venice, Louisiana. However, it is the position of BP that any such documents will be rescinded and not binding on anyone signing same. No waiver and release will be required.

    With respect to your conversation with Mr. Murray Green, after discussions with representatives of BP today, we confirm that except as noted below and in the next paragraph, items 1 through 4 are correct. One caveat is that except as explained in the next paragraph, if some person is asked by a representative of BP to sign a blanket release and/or waiver of liability as a condition of working for BP, it will be an inadvertent error and such release will be destroyed and not enforced.

    Also, please understand that, as per our proposed Stipulation and Consent Agreement, the use of voluntary waiver and releases or similar documents may be included with respect to BP's engagement of commercial contractors or fleet owners who are in the business of mitigation or clean-up operations of oil, or other contractors not involved in the mitigation and clean-up relating to the DEEPWATER HORIZON, or involving completely separate operations of BP unrelated to the DEEPWATER HORIZON explosion.

FOWLER RODRIGUEZ VALDES-FAULI · COUNSELLORS AT LAW
400 Poydras Street 30th Floor · New Orleans, Louisiana 70130 · Phone: (504) 523-2600 Fax: (504)
New Orleans · Houston · Miami · Mobile · Bogota

EXHIBIT
2

James C. Klick, Esq.
May 3, 2010
Page 2

    Lastly, we confirm that BP will not offset payments to vessel owners or other volunteers against claims they might have.

    We appreciate your cooperation in resolving these issues.

Very truly yours,

A. T. Chenault

ATC/ddb

Gulf Coast Claims Facility

# GCCF  Gulf Coast Claims Facility

En Español | Tiếng Việt

**FOR IMMEDIATE RELEASE**
September 23, 2010

## GULF COAST CLAIMS FACILITY MARKS ONE-MONTH ANNIVERSARY

**NEARLY $350 MILLION DOLLARS PAID TO CLAIMANTS ON EMERGENCY BASIS TO DATE**

WASHINGTON, DC ---- Today marks the one-month anniversary of the opening of the Gulf Coast Claims Facility (www.gulfcoastclaimsfacility.com) independently administrated by Kenneth Feinberg. The GCCF has distributed a total of $348,271,393 to 26,448 claimants in the Gulf.

"In just four short weeks, we have paid out almost as much money to the people in the Gulf as BP paid out in four months. We have staff working 24 hours a day, seven days a week, in three shifts, pouring over claimants' documents and cutting checks to those who can prove economic loss. We are making every effort to process claims on an accelerated basis. We are reviewing 1,500 claims per day with varying degrees of complexity. This is only the beginning," said Feinberg.

The GCCF just this week announced that it would not deduct earnings from the Vessels of Opportunity Program from payments made to claimants. Approximately 2,000 commercial fishing vessels and charter boats participated in spill cleanup via BP's "Vessels of Opportunity" program. The Program provided some commercial fishermen whose businesses were shut down by the spill with a chance to earn income. Feinberg stated: "I have listened to the fishermen in the Gulf. We will not be deducting their wages from their payments."

In addition to making payments for lost income and lost profits, The GCCF provides information on how to file a claim, how to check the current status of a claim, and answers to questions about the process. Supplemental checks, adjusting payments made to certain claimants, were issued during the past three weeks of submissions. In recent days, the GCCF has improved the methods by which claimants can review the status of their claim, or inquire as to the method used by the GCCF to calculate individual payments.

The GCCF will be accepting claims for Emergency Advance Payments through November 23, 2010.

Currently the GCCF has approximately 24,000 claims with insufficient or no documentation. These claimants have been notified they need to provide the GCCF with additional information in order for their claims to be processed.

Since being named Administrator of the GCCF, Feinberg has visited the Gulf Coast dozens of times, meeting with thousands of people to explain the claims process and answer questions.

The GCCF continues to work diligently to identify and prevent the payment of fraudulent claims, including in the past few days the refusal of the GCCF to accept over 4,000 bogus claims for "subsistence" with handwritten and "fill-in-the-blank" letters attached and no additional supporting documentation. The GCCF is also actively reviewing several submissions for potential fraud and, if appropriate, will refer such claims to the Department of Justice.

###

**EXHIBIT 4**



**U. S. Department of Justice**

Office of the Associate Attorney General

---

The Associate Attorney General                Washington, D.C. 20530

November 19, 2010

Mr. Kenneth Feinberg
Feinberg Rozen, LLP
The Willard Office Building
1455 Pennsylvania Avenue, NW
Suite 390
Washington, DC 20004-1008

Dear Mr. Feinberg:

    This is a critical time for your Gulf Coast Claims Facility, as you transition from your initial emergency phase to the final protocol governing payment of interim and final claims. As the United States has believed from the outset, a claims facility overseen by a neutral, independent administrator has an opportunity to gain the public's trust in a way that a claims facility managed by BP would not. But independence is not enough: The GCCF must also earn that trust through the efficient and fair administration of claims submitted by the individuals and businesses affected by the Deepwater Horizon Oil Spill. Decisions that you make now, and actions that the GCCF takes now, will affect the lives of those in the Gulf long after the cameras have moved on to other stories. There are a number of issues that I believe must be addressed.

    First, I continue to have concerns about the pace of the claims process, particularly given the resources available for this claims process. Many of the individuals and businesses whose claims are under review do not have the means to get by while they await GCCF processing. While you have indicated that poor documentation has made it difficult to address some claims quickly, over the past two weeks the number of claims requiring additional documentation has actually gone down – while the number of claims under review has increased significantly.

    As you move from the initial emergency phase to the final protocol governing claims administration, it is critical that you pay the remaining legitimate and documented emergency claims quickly. I request that you complete processing and payment of such claims by December 15, 2010, which will be roughly 3 weeks after receipt of the last emergency claims.

    Second, a smooth transition to the next phase of processing claims is essential. I am pleased that, at the insistence of the United States and others seeking a fair and expeditious claims process, the draft final protocol has now been revised so that claimants who do not wish to resolve all of their past and future claims will be able to accept, without signing a release, interim payments for past damages. We think this choice, if implemented properly, is consistent with OPA. Interim payments will be an important source of relief for those who continue to be

**EXHIBIT 5**

APR-25-2012 03:06 FROM- T-318 P0046/0054 F-294
Case 2:10-md-02179-CJB-DPC Document 6402 Filed 04/25/12 Page 8 of 9   P.8/9

affected by the Spill and who are uncertain about what the future will bring. Final payments will be available for those who wish, once and for all, to move forward from the Spill and receive a lump sum payment for past and future harm.

Nonetheless, there remain a number of important issues that need to be clarified in the final protocol.

- Your draft final protocol permits claimants to seek interim claims once per quarter. Many of these claimants are living paycheck to paycheck. Permitting them to seek reimbursement only once every three months – especially if their claims then have to sit in a backlog at the GCCF – imposes a burden that claimants should not have to bear. This problem could be addressed in significant part if claimants were permitted to seek interim claims on a monthly basis or if claimants who were facing hardship or had a demonstrated need could seek payments more than once a quarter.

- As we have discussed previously, the GCCF must apply OPA, and in particular the aspect of OPA that requires responsible parties to pay individuals harmed "as a result of" the oil spill. You have made clear that you have applied the OPA standard in making your decisions on particular claims; we think the final protocol should expressly state that the GCCF is applying the "as a result of" standard.

- The proposed release for final claims remains overbroad in multiple ways. As noted above, if individuals wish to receive a lump sum for all past and future damages, in exchange for a release, they should have the option of doing so. But as currently drafted, the release would appear to require claimants to release even claims for types of damages, such as behavioral health claims, that could not have been presented to the GCCF. The release is also sufficiently vague that it suggests that claimants have to release claims of spouses and business partners, even in situations where such a release is unfair and nonsensical. We think these and other problems of overbreadth can and must be addressed in the final version.

- The final protocol should have a streamlined and fair appeals process that does not limit the rights of claimants and does not slow their receipt of payment. Essential to the legitimacy of this process will be the selection of judges to oversee it. Retired jurists or other highly qualified individuals who have the highest integrity and will have the confidence of the people of the Gulf – which will be more likely when the judges are themselves from the Gulf Region – should serve in this capacity.

- The draft final protocol could be more clear, as you have previously acknowledged, that individuals who participated in the Vessels of Opportunity program when BP pledged not to use those VOO payments as offsets will not see those payments offset.

Third, I believe that additional transparency about the claims process is critical. When you administered the September 11th Victim Compensation Fund, you recognized the importance of transparency and the value of providing the public with more information about the principles being applied. Where non-personally identifiable, aggregated information can be provided to

help critical stakeholders understand the process and principles being used to decide claims, there is very little reason not to do so. For the people of the Gulf to feel fairly treated, they must have a greater understanding of the operation of the GCCF and its treatment of claims.

The mission of the GCCF remains critical to the restoration of the Gulf. As we have said before, the success of the GCCF must be judged by whether the people of the Gulf feel fairly treated. I urge you to take action so that the GCCF improves its performance to gain their trust and fulfill its mission.

Sincerely,

Thomas J. Perrelli

Thomas J. Perrelli