# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | **MDL NO. 2179** <br><br> **SECTION J** |
| This document relates to all actions. | * * * * * * * * | **HONORABLE CARL J. BARBIER** <br><br> **MAGISTRATE JUDGE SHUSHAN** |

---

| | | |
|---|---|---|
| Bon Secour Fisheries, Inc., et al., on behalf of themselves and all others similarly situated, | * * * | **Civil Action No. 12-970** <br><br> **SECTION J** |
| Plaintiffs, | * * | |
| v. | * * | **HONORABLE CARL J. BARBIER** |
| BP Exploration & Production Inc.; BP America Production Company; BP p.l.c., | * * * | **MAGISTRATE JUDGE SHUSHAN** |
| Defendants. | * | |

---

**[REVISED PROPOSED] ORDER (1) GRANTING PRELIMINARY APPROVAL OF ECONOMIC AND PROPERTY DAMAGE CLASS ACTION SETTLEMENT, (2) GRANTING INTERIM CLASS COUNSEL'S MOTION FOR CONDITIONAL AND PRELIMINARY CERTIFICATION OF ECONOMIC AND PROPERTY DAMAGES CLASS FOR SETTLEMENT PURPOSES; APPOINTMENT OF CLASS REPRESENTATIVES; AND APPOINTMENT OF CLASS COUNSEL; (3) APPOINTING CLAIMS ADMINISTRATOR AND CLAIMS VENDORS; (4) APPOINTING GUARDIAN AD LITEM; (5) APPROVING AND ISSUING PROPOSED CLASS ACTION SETTLEMENT NOTICE PLAN; (6) APPROVING SETTLEMENT TRUST; AND (7) SCHEDULING A FAIRNESS HEARING**

Now before the Court are (A) Plaintiffs' Steering Committee and BP Defendants' Motions for (1) Preliminary Approval of Economic and Property Damage Class Action Settlement, (2) Scheduling a Fairness Hearing, (3) Approving and Issuing Proposed Class Action Settlement Notice, and (4) BP's Motion for Adjourning The Limitation and Liability Trial and

associated papers (Rec. Doc. 6266);[1] (B) Interim Class Counsel's Motion for Conditional and Preliminary Certification of Economic and Property Damages Class for Settlement Purposes; Appointment of Class Representatives; and Appointment of Class Counsel (Rec. Doc. 6269); and (C) Interim Class Counsel's and BP's Joint Supplemental Motion Related to the Economic and Property Damages Settlement.

WHEREAS, individual and representative Plaintiffs, on behalf of themselves and the proposed Economic and Property Damages Settlement Class (the "Class"), and Defendants the BP Parties, as defined in the Settlement Agreement, all acting by and through their respective counsel (the "Parties"), have agreed to seek Court approval, following notice to the Class and a hearing, for the resolution of this litigation upon the terms and conditions specified in the Settlement Agreement, under the procedure and criteria for approval of class action settlements set forth in Rule 23(e) of the Federal Rules of Civil Procedure,

NOW, THEREFORE, based upon (i) the Settlement Agreement; (ii) the supporting briefs and papers including the Interim Class Counsel's and BP's Joint Supplemental Motion Related to the Economic and Property Damage Settlement; (iii) the proposed forms of Class Notice; (iv) the program for directing notice to the Class submitted to the Court; (v) this Court's familiarity with the questions of fact and law arising in these proceedings; (vi) this Court's observation of the conduct of counsel for the parties in prosecuting and defending this litigation, coordinating discovery, preparing for trial, and negotiating at arm's length a proposed settlement with the participation of Magistrate Judge Shushan; (vii) the recommendations of counsel for the moving parties; (viii) the requirements of substantive and procedural law; and (ix) this Court's satisfaction that the proposed settlement appears to fall within the range of possible final

---

[1]   The Court notes that BP's request concerning the adjournment of the Limitation and Liability trial has been mooted by the Order specifying that this matter will be taken up during the May 3, 2012, in-chambers conference with Liaison Counsel.  (Rec. Doc. 6310.)

approval, and that a hearing should be held after the best practicable notice to members of the Class to finally determine if the terms of the proposed Settlement are fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23(e),

THE FOREGOING MOTIONS ARE GRANTED, AND IT IS HEREBY ORDERED AND DECLARED THAT:

## I.       Jurisdiction and Venue

1.       The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 1331 & 1333, and 33 U.S.C. § 2717(b).

2.       Venue is also proper in this District pursuant to 28 U.S.C. §§ 1391 & 1407, and 33 U.S.C. § 2717(b).

## II.      Preliminary and Conditional Certification of Class for Settlement Purposes Only

3.       On a preliminary basis and for settlement purposes only, for purposes of enabling and effectuating the issuance of notice and setting of a formal hearing to determine whether the terms of the proposed Settlement Agreement should be finally approved as fair, reasonable, and adequate, the proposed Economic and Property Damages Settlement Class is conditionally certified under Federal Rule of Civil Procedure 23(a) & 23(b)(3).  The class is defined as follows:

(a)    CLASS DEFINITION[2]

Economic and Property Damages Settlement Class shall mean the NATURAL PERSONS and ENTITIES defined in this Section 1, subject to the EXCLUSIONS in Section 2 below.  If a person or entity is included within the geographical descriptions in Section 1.1 or Section 1.2, and their claims meet the descriptions of one or more of the Damage Categories described in Section 1.3, that person or entity is a member of the Economic and Property Damages Settlement Class, unless the person or entity is excluded under Section 2:

---

[2] The Class Definition includes certain capitalized defined terms, the meaning of which is given in the *Deepwater Horizon* Economic and Property Damages Settlement Agreement.  Exhibits referenced in the above definition are included as exhibits to the Settlement Agreement.  Exhibits 22 and 23 are also reproduced as Appendixes A and B, respectively, to this Order.

1.1.    Individuals.  Unless otherwise specified, all Natural Persons residing in the United States who, at any time between April 20, 2010 and April 16, 2012, lived in, worked in, were offered and accepted work in, owned or leased real or personal property located within, or owned or leased or worked on a vessel harbored or HOME PORTED in the States of Louisiana, Mississippi, or Alabama, the counties of Chambers, Galveston, Jefferson and Orange in the State of Texas, or the counties of Bay, Calhoun, Charlotte, Citrus, Collier, Dixie, Escambia, Franklin, Gadsden, Gulf, Hernando, Hillsborough, Holmes, Jackson, Jefferson, Lee, Leon, Levy, Liberty, Manatee, Monroe, Okaloosa, Pasco, Pinellas, Santa Rosa, Sarasota, Taylor, Wakulla, Walton and Washington in the State of Florida, including all adjacent Gulf waters, bays, estuaries, straits, and other tidal or brackish waters within the States of Louisiana, Mississippi, Alabama, or those described counties of Texas or Florida (the "GULF COAST AREAS") (Exhibit 22), or the U.S. waters of the Gulf of Mexico and all adjacent bays, estuaries, straits, and other tidal or brackish waters within the Gulf Coast Areas, as specifically shown and described in Exhibit 23 ("SPECIFIED GULF WATERS"), or worked on a vessel in Specified Gulf Waters after April 20, 2009.  With respect to SEAFOOD CREW  Claims, persons must have worked on a vessel that landed SEAFOOD in the Gulf Coast Areas after April 20, 2009.

and

1.2.    Entities.  All Entities doing business or operating in the Gulf Coast Areas or Specified Gulf Waters that:

> 1.2.1.  at any time from April 20, 2010 to April 16, 2012, owned, operated, or leased a physical facility in the Gulf Coast Areas or Specified Gulf Waters and (A) sold products in the Gulf Coast Areas or Specified Gulf Waters (1) directly to CONSUMERS or END USERS of those products or (2) to another Entity that sold those products directly to Consumers or End Users of those products, or (B) regularly purchased Seafood harvested from Specified Gulf Waters in order to produce goods for resale;

> 1.2.2.  are service businesses with one or more full-time employees (including owner-operators) who performed their full-time services while physically present in the Gulf Coast Areas or Specified Gulf Waters at any time from April 20, 2010 to April 16, 2012; or

> 1.2.3.  owned, operated, or leased a vessel that (1) was Home Ported in the Gulf Coast Areas at any time from April 20, 2010 to April 16, 2012, or (2)  landed Seafood in the Gulf Coast Areas at any time from April 20, 2009 to April 16, 2012; or

> 1.2.4.  owned or leased REAL PROPERTY in the Gulf Coast Areas at any time from April 20, 2010 to April 16, 2012;

1.3.    Individuals and Entities who meet the geographical descriptions of Sections 1.1 or 1.2 above are included in the Economic Class only if their

- 4 -

Claims meet the descriptions of one or more of the Damage Categories described below.

1.3.1.   The following are summaries of the Damage Categories, which are fully described in the attached Exhibits 1A-15:

1.3.1.1.    Seafood Compensation Program.  Damages suffered by a COMMERCIAL FISHERMAN, Seafood Crew, or SEAFOOD VESSEL OWNER that owned, operated, leased or worked on a vessel that (1) was Home Ported in the Gulf Coast Areas at any time from April 20, 2010 to April 16, 2012, or (2) Landed Seafood in the Gulf Coast Areas at any time from April 20, 2009 to April 16, 2012; and damages suffered by, inter alia, OYSTER LEASEHOLDERS and IFQ Owners.  (Exhibit 10).  Claims for Economic Damage arising from the fishing, processing, selling, catching, or harvesting of menhaden (or "pogy") fish are excluded from the Seafood Compensation Program and other Economic Damage Claims under this Agreement.

1.3.1.2.    Economic Damage Category.  Loss of income, earnings or profits suffered by Natural Persons or Entities as a result of the DEEPWATER HORIZON INCIDENT, subject to certain Exclusions. (Exhibits 16-19)

1.3.1.3.    Subsistence Damage Category.  Damages suffered by Natural Persons who fish or hunt to harvest, catch, barter, consume or trade Gulf of Mexico natural resources, including Seafood and GAME, in a traditional or customary manner, to sustain their basic or family dietary, economic security, shelter, tool or clothing needs, and who relied upon subsistence resources that were diminished or restricted in the geographic region used by the CLAIMANT due to or resulting from the Deepwater Horizon Incident.  (Exhibit 9)

1.3.1.4.    VoO Charter Payment Category.  Damages suffered by Natural Persons or Entities who registered to participate in BP's Vessels of Opportunity ("VoO") program and executed a VoO MASTER VESSEL CHARTER AGREEMENT with BP, Lawson, USMS, USES, DRC, or any other BP subcontractor as CHARTERER, and completed the initial VoO training program.

1.3.1.5.    Vessel Physical Damage Category.  Physical damage that was sustained by an eligible Claimant's eligible vessel due to or resulting from the Deepwater Horizon Incident or the Deepwater Horizon Incident response cleanup operations, including the Vessels of Opportunity Program.  (Exhibit 14)

1.3.1.6.    Coastal Real Property Damage Category.  Damages alleged by a Coastal Real Property Claimant that meet the requirements set forth in the Coastal Real Property Claim Framework.

- 5 -

1.3.1.7.    Wetlands Real Property Damage Category.    Damages alleged by a Wetlands Real Property Damage Claimant that meet the requirements set forth in the Wetlands Real Property Claim Framework.

1.3.1.8.    Real Property Sales Damage Category.   Damages alleged by a Real Property Sales Claimant that meet the requirements set forth in the Real Property Sales Framework.

1.3.1.9.    Individuals/Employees in Otherwise Excluded Oil and Gas, Gaming, Banking, Insurance, Funds, Defense Contractors, Developers Industries, and any Entity selling or marketing BP-branded fuel (including jobbers and branded dealers):  As more fully described in Exhibit 16 and Section 5.10 below, individuals and employees of businesses and employers in these otherwise excluded industries described in Section 2 may submit Claims for Economic Damage outside of these excluded industries, and may pursue all other recovery permitted under other aspects of the Settlement.

1.3.1.10.   Individuals/Employees in Support Services to Oil and Gas Industry:  As more fully described in Exhibit 16 and Section 5.10 below, individuals and employees of businesses/employers in the SUPPORT SERVICES TO OIL AND GAS INDUSTRY, described in Exhibit 16 may submit Claims for Economic Damage incurred as a result of their employment in the Support Services to Oil and Gas Industry for (i) non-moratoria business interruption from Support Services to Oil and Gas Industry activities and (ii) non oil and gas industry Economic Damages due to or resulting from the Deepwater Horizon Incident, except for moratoria claims.  As is also more fully described in Exhibit 16, these individuals and employees may also pursue Claims for other Economic Damage outside the Support Service to Oil and Gas Industry, and may pursue all other recovery permitted under other aspects of the Settlement.

1.3.1.11.   Businesses/Employers in Otherwise Excluded Gaming, Banking, Insurance, Funds, Defense Contractors and Developers Industries:  As more fully described in Exhibit 16 and Section 5.10 below, businesses and employers in these otherwise excluded industries described in Section 2 may submit Claims only for Coastal Real Property Damage and Wetlands Real Property Damage, but are not entitled to recover under any other aspect of the Settlement.

1.3.1.12.   Businesses/Employers in Support Services to Oil and Gas Industry:  As more fully described in Exhibit 16 and Section 5.10 below, businesses and employers in the "Support Services to Oil and Gas Industry," described in Exhibit 16, may submit Claims for (i) non-moratoria business interruption from Support Services to Oil and Gas Industry activities and (ii) non-oil and gas industry Economic

Damages arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident, except for moratoria claims, and may pursue all other recovery permitted under other aspects of the Settlement.

(b)   Exclusions from the Economic and Property Damages Settlement Class Definition

2.1.     Notwithstanding the above, the following individuals and Entities, including any and all of their past and present predecessors, successors, personal representatives, agents, trustees, insurers, reinsurers, indemnitors, subrogees, assigns, and any other Natural Person, legal or juridical person or Entity entitled to assert any Claim on behalf of or in respect of any such individual or Entity in their respective capacities as such are excluded from the Economic Class.

2.2.     Excluded Individuals or Entities:

2.2.1.   Any Economic Class Member who or which timely elects to be excluded from the Economic Class under the deadlines and procedures to be set forth in the ECONOMIC AND PROPERTY DAMAGES SETTLEMENT CLASS ACTION SETTLEMENT NOTICE.

2.2.2.   Defendants in MDL 2179, and individuals who are current employees, or who were employees during the CLASS PERIOD, of BP or other defendants in MDL 2179.

2.2.3.   The Court, including any sitting judges on the United States District Court for the Eastern District of Louisiana, their law clerks serving during the pendency of the MDL, and members of any such judge's or current law clerk's immediate family.

2.2.4.   The following exclusions are based on the substantive nature of the business, not the legal or juridical form of that business.  Any of the following types of Entity, or any Natural Person to the extent he or she alleges Economic Damage based on their employment by such an Entity, during the Class Period are excluded:

2.2.4.1.   Financial Institutions as identified in the NAICS codes listed on Exhibit 18, which include, by way of example, commercial banks; savings institutions; credit card issuers; credit insurers; factors or other sales finance entities; financial or investment advisers or portfolio managers; fund managers; investment banking entities; lending institutions; real estate mortgage or lending entities; brokers or dealers of securities, commodities, commodity contracts or loans; securities or commodities exchanges; entities serving as custodians, fiduciaries or

trustees of securities or other financial assets; or entities engaged in other financial transaction intermediation, processing, reserve or clearinghouse activities, provided, that the following shall not be excluded solely pursuant to this Section 2.2.4.1 unless they are subject to a different exclusion:  stand-alone ATMs, credit unions, pawn shops, businesses engaged predominantly in making payday loans or paycheck advances and businesses that sell goods and services and offer financing on these purchases to their customers.

2.2.4.2.   Funds, Financial Trusts, and Other Financial Vehicles, as identified in the NAICS codes listed on Exhibit 18, after giving effect to the bracketed exceptions contained in NAICS Codes  525920 and 523991, which include by way of example, public-open end investment funds; investment funds; real estate investment trusts; REMICS; mutual funds; money market funds; derivatives; health and welfare funds; insurance funds; pension funds; financial trusts; and special purpose financial vehicles provided, that successions, estates, testamentary trusts, trusts of Natural Persons, bankruptcy estates, limited liability companies, corporations, Sub-Chapter "S" corporations, partnerships, limited partnerships, joint ventures, and any other businesses or juridical Entities, shall not be excluded pursuant to this Section 2.2.4.2 solely by reason of their form of legal or juridical structure or organization, except to the extent they are excluded pursuant to another exclusion in Section 2.2 of this Agreement.

2.2.4.3.   Gaming, as identified in the NAICS codes listed on Exhibit 18, which includes, by way of example, casinos; casino hotels; off-track betting parlors; racetracks and other gambling establishments provided, that the following shall not be excluded solely pursuant to this Section 2.2.4.3 unless they are subject to a different exclusion: (a) bingo parlors, and (b) video gaming at bars, bingo parlors, hotels, off-track betting parlors, racetracks, restaurants and truck stops.

2.2.4.4.   Insurance Entities, as identified in the NAICS codes listed on Exhibit 18, which include, by way of example, insurance carriers issuing disability, health, life, medical, property and casualty, title or other insurance; reinsurers;   insurance   agencies   and   brokerages; underwriting agencies or organizations; claims adjusters

and processors; third-party insurance or fund administrators; or other insurance-related businesses.

2.2.4.5.  Oil and Gas Industry, as identified in the NAICS codes listed on Exhibit 17, which includes by way of example, firms engaged in:  extracting crude petroleum, natural gas or other hydrocarbons; drilling wells; preparing, maintaining or constructing petroleum or natural gas well-sites or other mineral extraction sites; mining; maintaining or constructing petroleum or natural gas pipeline or distribution facilities; pipeline distribution of crude petroleum, refined petroleum, oil or natural gas; petroleum or natural gas refining or other mineral refining and/or manufacturing; manufacturing petroleum lubricating oil and grease, petrochemical products, or other petroleum and coal products or chemical products derived from extracted minerals; merchant wholesaling of construction and mining (except oil well) machinery and equipment; wholesale distribution of oil well machinery, equipment and supplies; wholesale distribution of petroleum, petroleum products, other extracted minerals, chemical products produced from extracted or refined minerals, petroleum bulk stations and terminals, petroleum and petroleum products merchant wholesalers.

2.2.4.6.   Defense Contractors/Subcontractors, including firms which derive in excess of at least 50% of their annual revenue from contracts with the United States Department of Defense and Individuals whose employer qualifies as a Defense Contractor.

2.2.4.7.  Real Estate Developers, including any Natural Person or Entity that develops commercial, residential or industrial properties.  This includes, but is not limited to, any Entity developing an entire subdivision (as defined by the law of the state in which the parcel is located) of Real Property, including condominiums with multiple residential units and/or a residential subdivision with contiguous home sites and homes, provided, however, that Real Estate Developers shall be eligible to assert Coastal Real Property Claims under Section 5.7 and Real Property Sales Damage Claims under Section 5.9

2.2.4.8.  Any Entity selling or marketing BP-branded fuel, including jobbers and branded dealers.

- 9 -

2.2.5.  GOVERNMENTAL ORGANIZATIONS, as defined in this Agreement, provided that Native American tribal Entities may consent to participate in the Settlement as to otherwise eligible Claims.

2.2.6.  Any Natural Person or Entity who or that made a claim to the GCCF, was paid and executed a GCCF RELEASE AND COVENANT NOT TO SUE, provided, however, that the execution of a GCCF Release and Covenant Not to Sue shall not prevent a Natural Person or Entity from making a VoO Charter Payment Claim or a Vessel Damage Claim, nor shall a release covering only bodily injury prevent a Natural Person from making Claims under this Agreement.

4.      With respect to the Economic Class Definition, the Court hereby adopts the defined terms and definitions set forth in the Economic and Property Damages Settlement Agreement.  The Settlement Agreement and its Exhibits shall be provided to potential class members via the Notice Plan, such as by posting on the Settlement website.

5.      The Court preliminarily and conditionally finds, for settlement purposes only, that the terms of the Settlement Agreement are sufficiently fair, reasonable, adequate, and consistent with governing law to warrant: (a) preliminary approval; (b) the preliminary and conditional certification of the settlement class; (c) the scheduling of the Fairness Hearing; and (d) the distribution of Notice to the Class.

6.      The Court is satisfied for preliminary purposes that a settlement class made up of persons or entities having claims in the specified categories should be conditionally certified. The Court is further satisfied that, pursuant to the proposed terms of the Settlement Agreement, Class Members who opt out or who possess reserved claims will be able to pursue those claims effectively outside the Class Settlement.

7.      Specifically, this Court finds and holds that the Economic Loss and Property Damage Settlement Class satisfies the following requirements of class action case law, Federal Rule of Civil Procedure Rule 23(a), and Federal Rule of Civil Procedure 23(b)(3):

(a) Ascertainability:  The Class, as defined above, is discrete and ascertainable.  It is objectively defined by reference to geographical boundaries and other

- 10 -

criteria that are known to or knowable by Class Members, and by detailed compensation frameworks that include eligibility criteria, such that those within the geographical bounds of the Class can determine whether they have experienced any of the categories of cognizable injury that are payable under the Settlement Agreement and that qualify them for Class membership.

(b) <u>Numerosity</u>:    The Economic Loss and Property Damage Class consists of more than one-hundred thousand individuals and businesses dispersed across the Gulf Coast that either (1) have already filed short-form joinders; (2) have claims pending before the Gulf Coast Claims Facility ("GCCF"); or (3) were harmed by the *Deepwater Horizon* spill but have not filed a claim.  The class is so numerous that joinder is impractical.  Hence, Rule 23(a)(1)'s numerosity requirement is satisfied.

(c) <u>Commonality</u>:  The commonality requirement is satisfied because members of the Class share numerous common legal and factual questions, the resolution of which would advance the determination of one or more issues in the case. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (1999).  Common factual issues include (1) BP's share of liability compared to other defendants, (2) the facts of BP's conduct in designing the well, and (3) the facts of BP's conduct in seeking to control and contain the spill.  The answers to such questions are the same no matter who in the Class asks them, or how many times they are asked.  Common legal issues arising under federal law include (1) preemption questions regarding the Outer Continental Shelf Lands Act, the Clean Water Act, and federal maritime law; (2) statutory construction issues under each of these statutes, including the standard of causation that applies under the Oil Pollution Act, and (3) questions under federal maritime law, including the standard under which punitive damages are available.  The questions are capable of classwide resolution, and the answers to these common questions are both critical to the litigation and have shaped the terms and conditions of the proposed Settlement.  Accordingly, Rule 23(a)(2)'s commonality requirement is satisfied.

(d) <u>Typicality</u>:  The claims of the Class Representatives are typical of the claims of the Class.    The Class Representatives' claims arise from the same underlying event and course of conduct; the Class Representatives share the same federal legal theories as the claims of the Class Members; and the Class Representatives include at least one representative asserting each category of loss covered by the proposed Settlement.  Typicality "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent."  *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999).    In addition, the Class Representatives will advance the interests of all Class Members.  Rule 23(a)(3)'s typicality requirement is therefore satisfied.

(e) <u>Adequacy</u>:    "Rule 23(a)(4) is satisfied where: (1) the named plaintiffs' counsel will prosecute the action zealously and competently; (2) the named plaintiffs possess a sufficient level of knowledge about the litigation to be

capable of taking an active role in and exerting control over the prosecution of the litigation; and (3) there are no conflicts of interest between the named plaintiffs and the absent class members." *Hamilton v. First Am. Title Ins. Co.*, 266 F.R.D. 153, 163-64 (N.D. Tex., 2010); *see also Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005). Here, the Class Representatives have been consulted and participated in the determination of the settlement terms, will fairly and adequately protect the interests of the Class, have no conflicts with each other, and are represented by qualified counsel who are competent to represent the Class and prosecute this litigation. The Class Counsel regularly engage in complex litigation similar to the present case and have demonstrated their dedication by devoting substantial effort, energy, and resources to the prosecution of this action. *See Stimson v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002). Accordingly, Rule 23(a)(4)'s adequacy requirement is met.

(f) <u>Predominance</u>:  This is, unlike most mast torts, a single-incident disaster, governed predominantly by a single body of federal law including OPA and uniform federal maritime law.  Common factual and legal questions include liability for economic damages arising from the blowout of the MC252 Well and the sinking of the *Deepwater Horizon.*  In the absence of settlement, as the design of Phase I of the Limitation and Liability Trial illustrates, liability would be determined predominately under a single body of federal statutory and/or common law.  As noted above, there are dozens of legal and factual issues that are common to the class and the resolution of which will determine the liability of BP to the class in one proceeding.  In contrast to these numerous common issues, the individual questions are few, and generally only concern issues of individual causation and damage calculation. Recognizing the significance of the common issues to this case long before a settlement was contemplated, the Court (1) stayed the resolution of all motions affecting only individual cases, *see* Pretrial Order 15 (Rec. Doc. 676), and (2) designed a phased trial structure in which the first *three* phases were allocated to the resolution of common issues, *see* Pretrial Order 41, as amended (Rec. Doc. 4083).  The proposed Economic Class is sufficiently cohesive to warrant adjudication by representation.  The claims are related, cohesive, and all arise out of the same nucleus of operative fact.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620-21 (1997); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297, 338 (3d Cir. 2011) (en banc), *cert. denied, Murray v. Sullivan*, --- S. Ct. ----, No. 11-1111, 2012 WL 779996 (U.S. Apr. 2, 2012). Accordingly, Rule 23(b)(3)'s predominance requirement is satisfied.

(g) <u>Superiority</u>:  This Court need not decide whether a class is superior from the standpoint of trial management, nor need the parties agree or concede on this point.  When confronted with a "request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (citation omitted); *Billitteri v. Sec. Am., Inc.*, 2011 WL 3586217, at *8 (N.D. Tex. Aug. 4, 2011); *In re Chinese-Manufactured Dry Wall Prods., Liab. Litig.*, 2012 WL 92498 (E.D. La. Jan.

10, 2012). Moreover, this is a classic case for class treatment, as the litigation is unusually complex and expensive, and it involves many thousands of plaintiffs whose claims arise from the same event, many with comparatively modest claims. Class treatment therefore allows many plaintiffs to recover who might otherwise be unable to do so. Moreover, a settlement that provides a comprehensive, court-supervised, and internally consistent mechanism for compensating plaintiffs is superior to many thousands of separate determinations of damages. The litigation of these issues on a case-by-case basis could give rise to disproportionate and undue expense and delay for the Parties, and such piecemeal litigation would needlessly tax the resources of the judiciary and the Parties. A class action procedure, with clearly defined roles for the parties, their counsel, and the Court, and the due process protections for absent class member claimants uniquely afforded by Rule 23, is available here, and it is superior to other available methods for fairly and efficiently resolving this controversy. Rule 23(b)(3)'s superiority requirement is satisfied.

## III.   Preliminary Approval of Class Action Settlement and Fairness Hearing

8.     The Court preliminarily approves the Economic and Property Damages Settlement Agreement filed with this Court on April 18, 2012 (Rec. Doc. 6276-1), as amended as set forth in Interim Class Counsel's and BP's Joint Supplemental Motion Related to the Economic and Property Damages Settlement, as fair, reasonable, adequate, entered in good faith, free of collusion, and within the range of possible judicial approval.

9.     The Court finds, upon its own observation and experience over the course of this litigation, including monthly status conferences, weekly discovery conferences, extensive pleadings and motion practice, the design, organization and scheduling of a multi-phase trial, and the intensive discovery and preparation for these trial phases, that counsel for the Parties have significant experience in litigating complex litigation and class actions in general, have comprehensive knowledge of the issues in this litigation, and brought this experience and information to bear in negotiating a settlement suited to the circumstances of this litigation.

10.    The Parties engaged in a multi-month, extensive, arms-length settlement process, free of collusion, and overseen by Magistrate Judge Shushan. The Parties engaged in substantial discovery and motions practice to evaluate the merits of the claims and defenses and extensively

investigated and analyzed the facts and legal issues surrounding those claims and defenses. Pretrial discovery and trial preparation included approximately 311 depositions, the production, review, and analysis of millions of documents; the retention and discovery of numerous scientific, technical, and industry experts; and the extensive associated investigation and analyses of the facts and legal issues surrounding relevant claims and defenses.

11.     Over the course of these many months, the Parties' counsel, assisted and informed by experts and colleagues with specialized knowledge of various aspects of the litigation and the array of claims categories, engaged in numerous and ongoing settlement discussions and negotiation sessions, both in person and via telephone conference.   These activities were conducted by the authorized representatives (including, for the Plaintiffs, Plaintiffs' Co-Liaison/Interim Class Counsel and many members of the Court-appointed PSC) and proceeded without disrupting, delaying, or detracting from the Parties' thorough trial preparations, under the brisk and systematic trial preparation schedule set and maintained by this Court.   During these lengthy settlement negotiations, which commenced in February 2011 and continued for more than one year, the Parties negotiated the detailed, complex, and carefully thought-out claims categories and benefits of this settlement.   Likewise, the Parties negotiated the precise language and terms of the Settlement Agreement and Exhibits; the proposed administrative and transition orders; the claims forms and procedures to enable Class members to make claims under the settlement without delay; and the comprehensive Notice Plan to provide notice of the settlement, the approval process, and the dates, deadlines, and options that are important to the Class.

12.     As part of these negotiations, the Parties, with the assistance of several types of subject matter experts, engaged in an extensive analysis of various types of economic injuries sustained by class members as a result of the Deepwater Horizon Incident.   Based on this

comprehensive analysis and investigation, counsel for the Parties had a solid basis for concluding that the Settlement Agreement provides meaningful benefits for class members that may have suffered economic losses as a result of the Deepwater Horizon Incident.

13.     The Parties requested that this Court facilitate the transition from the GCCF to a Court-Supervised program, negotiated the details of a transition process, and submitted these processes to enable the Court to issue a series of Transition Orders commencing on March 8, 2012.   The transition processes described in these orders were designed by the Parties to effectuate the directive of the Court that such transition take place without material interruption or delay to the processing and payment of claims pending in the GCCF, and to effectuate as seamless as practicable a transition to a Court-Supervised process.   The Parties also designed, and made preparations for the immediate establishment, staffing, and operation of a Court-Supervised Settlement Program to commence delivery of the benefits of the settlement immediately upon entry of this Order.

14.     The comprehensive system of claims frameworks featured in the Settlement Agreement is the product of many months of intensive negotiation, provides for class recovery unlimited by any aggregate cap, does not constitute a limited fund to be divided among competing claimants (with the sole exception of the $2.3 billion Seafood Compensation Program, whose allocation was placed with a court-appointed neutral), and does not place class members in conflict or competition with each other.   The settlement thus provides "a procedure for distribution of the settlement fund that treats class claimants equitably amongst themselves." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 189 (5th Cir. 2010).   The Parties agreed that claims may be made and paid under the terms of the Settlement Agreement without the imprimatur of final settlement approval.   This is an unusual and particularly beneficial feature of the Settlement Agreement for Class Members, as is the provision that any Class Counsel fees and

costs awarded by the Court will not be deducted from Class Members' recoveries or their private attorneys' fees, but will be paid by BP in addition to other class benefits.

15.     At this stage, the Settlement Agreement appears eminently fair, has no obvious deficiencies, does not improperly grant preferential treatment to the Class Representatives or to segments of the Class, and does not grant excessive compensation to attorneys.  It plainly falls within the range of possible judicial approval.   The Settlement Agreement thus merits preliminary approval, particularly in light of the law collected in the MANUAL FOR COMPLEX LITIGATION (FOURTH) §§ 21.612, 21.62, and 21.632.

16.     This preliminary approval is subject to further and final consideration at a Fairness Hearing (the "Fairness Hearing"), which shall be held at 8:30 a.m. on November 8, 2012, before this Court at Courtroom C268 of the United States District Court for the Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana, 70130.  The Class will be provided notice of the date, time, place and purpose of the Fairness Hearing as set forth in the Notice Plan approved and issued in connection with this Order.  The Court may adjourn the Fairness Hearing, as necessary, upon notice (e.g. via the Court and Settlement websites) to the members of the Settlement Class.

17.     At the Fairness Hearing, this Court will consider:  (1) whether to grant final approval of the Settlement Agreement pursuant to Rule 23(e) as fair, reasonable, adequate, and in the best interests of the Class and to authorize all acts necessary to consummate and effectuate the terms and conditions of the Settlement Agreement; (2) whether the Court should certify the Class for settlement purposes only; (3) whether the Court should enter a Final Judgment approving the Settlement and dismissing the Action with prejudice while retaining jurisdiction to enforce the Final Judgment, Settlement Agreement, and any follow-on litigation, including litigation concerning Individual Releases signed pursuant to the Settlement Agreement's claims

process; (4) whether the fees and expenses submitted by Class Counsel should be approved; (5) the merits of any objections to the Settlement; and (6) such other matters as the Court may deem necessary and appropriate.

18.     In considering whether to grant final approval to the Settlement Agreement after the Fairness hearing, the Court will review the six "*Reed* factors":

> (1) [T]he existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors, Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)); *see also Union Asset Mgmt. Holding A.G. v. Dell*, 669 F.3d 632, 639 (5th Cir. 2012); *In re Katrina Canal Breaches Litig.*, 628 F.3d at 194; *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004).

## IV.     Appointment of Class Counsel, Class Representatives, Claims Administrator, Claims Administration Vendors, and Guardian Ad Litem.

19.     The counsel previously appointed in Pretrial Order 46 (Rec. Doc. 4226) as Plaintiffs' Co-Liaison Counsel and Interim Class Counsel, Stephen J. Herman and James Parkerson Roy, are hereby appointed as Lead Class Counsel.

20.     The counsel previously appointed by the Court to serve on the Plaintiffs' Steering Committee and to serve the common benefit, as described in its Pretrial Orders Nos. 8, 9, and 46 (Rec. Docs. 506, 508, 4226), are hereby appointed to serve as Class Counsel for the Settlement Class under Rules 23(e) and 23(g), and shall act on behalf of the Class Representatives and all members of the Settlement Class:

| | |
|---|---|
| Brian H. Barr | Rhon E. Jones |
| Jeffery A. Breit | Matthew E. Lundy |
| Elizabeth J. Cabraser | Michael C. Palmintier |
| Philip F. Cossich, Jr. | Joseph F. Rice |
| Robert T. Cunningham | Paul M. Sterbcow |
| Alphonso Michael Espy | Scott Summy |
| Calvin C. Fayard, Jr. | Mikal C. Watts |
| Robin L. Greenwald | Conrad S. P. Williams |
| Ervin A. Gonzalez | |

21.     The Individuals and Entities identified as individual and representative Plaintiffs in the Amended Class Action Complaint for Private Economic Losses and Property Damages captioned *Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production Inc., et al.*, Civil Action No. 12-970, filed herein on May 2, 2012 (Rec. Doc. 6412) are hereby appointed as the Class Representatives of the conditionally certified Economic Class, for settlement purposes only.

22.     This Order is entered for the purposes of initiating, implementing, and facilitating the procedures contained in Fifth Circuit law and those recommended in the MANUAL FOR COMPLEX LITIGATION to give notice to the entire Class and proceed toward the Fairness Hearing, to assist the Class Members in learning of their rights and options under the Settlement, and to assist the Court in making its independent, informed, and final determination as to whether the Settlement Agreement merits final approval and whether the Economic Class certification should be confirmed under Rules 23(a), (b)(3), and (e), for the collective purpose of effectuating the settlement.  If this Settlement Agreement is terminated or is not consummated for any reason, the foregoing certification of the Class and appointment of Class Counsel and Class Representatives shall be vacated and of no further effect with respect to any party to, or claim asserted in, this action.

23.     The Court appoints Patrick Juneau as Claims Administrator to oversee the Claims Administration Vendor, which will process the claims, beginning without delay, in accordance with the Settlement Agreement.  The Court appoints Garden City Group, Inc., BrownGreer PLC, PwC, and Postlethwaite & Netterville as Claims Administration Vendors.  The Court previously appointed Mr. Juneau and Lynn Greer of BrownGreer in connection with the Transition Process established by a prior Order (Rec. Doc. 5995).  Given their prior transitional appointments, Mr. Juneau, Ms. Greer, and her firm, BrownGreer, are well-positioned to begin implementation of the claims process established in the Settlement Agreement along with PwC and Postlethwaite & Netterville, pending review of the Settlement Agreement in connection with the Fairness Hearing to be held November 8, 2012.

24.     This Court, BP, or Lead Class Counsel may request reports or information from the Claims Administrator.  The Claims Administrator shall be responsible for reporting and providing information to the Court, BP, and Lead Class Counsel periodically, or at such frequency and in such a manner as the Court directs.

25.     This Court shall have ongoing and exclusive jurisdiction over the Claims Administrator and Claims Administration Vendors and shall retain such jurisdiction through and after the Settlement Agreement's Effective Date, in the event it occurs.

26.     The Honorable P. Raymond Lamonica, solely in his individual capacity, is appointed as the Guardian Ad Litem for the Economic and Property Damages Settlement Class Members who are minors, lack capacity, or are incompetent in accordance with Section 31 of the Economic and Property Damages Settlement Agreement and subject to appropriate commercial terms.  Such appointment shall remain in effect until the entry of a Final Order and Judgment, if that event occurs, or the date the Agreement terminates, whichever occurs first.  By agreement of the Parties, reasonable fees and costs of the Guardian Ad Litem shall be "Settlement Costs"

within the meaning of the Settlement Agreement.  *See* Settlement Agreement Section 5.12.1.1.3. The Guardian Ad Litem's duty in Section duty in Section 31.1 of the Settlement Agreement to "investigate the potential claims for all persons who are minors or incompetent adults, who, but for their lack of capacity, may otherwise participate as Economic Class Members" shall be interpreted to mean that the Guardian Ad Litem shall inquire of existing minor or incompetent claimants that the Guardian Ad Litem learns of whether they have any claims falling into any Category covered by and not excluded from the Settlement Agreement.

27.     The Guardian Ad Litem shall make an independent investigation into the terms and provisions of the Economic Loss and Property Damage Settlement Agreement on behalf of those class members who are minors, lack capacity, or are incompetent, as described in Section 31 of the Medical Benefits Settlement Agreement.  Based on that investigation, prior to the Fairness Hearing, the Guardian Ad Litem shall by October 8, 2012, report to the Parties and make a recommendation to this Court as to the fairness of the Economic Loss and Property Damages Settlement Agreement with respect to those class members who are minors, lack capacity, or are incompetent.

28.     The Court approves the Economic and Property Damages Trust Agreement attached as Exhibit A to the parties' memorandum in support of Interim Class Counsel's and BP's Joint Supplemental Motion Related to the Economic and Property Damages Settlement, the creation of the Economic and Property Damages Trust Agreement Settlement Trust ("Settlement Trust"), and the appointment of Patrick Juneau as Trustee and J. P. Morgan Trust Company of Delaware as Directed Trustee with limited authority as set forth in the Trust Agreement.  The Court also finds that the Settlement Trust fulfills the requirements for a qualified settlement fund under section 468B(d)(2) of the Internal Revenue Code and Treasury Regulation § 1.468B-1. The Court will retain continuing jurisdiction over the Settlement Trust.

## V.    **Approval of Class Notice**

29.    The Court approves the form and content of the Economic Loss and Property Damage Class Notice as attached to the Declaration of Cameron R. Azari, Esq. (Rec. Doc. 6266-2) as well as the Economic and Property Damage Notice Plan described in same Exhibit, as amended as set forth in Interim Class Counsel's and BP's Joint Supplemental Motion Related to the Economic and Property Damages Settlement and Exhibit B thereto, as satisfying the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e)(1), and due process.

30.    The Economic Loss and Property Damage Settlement Class Notice clearly and concisely states in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members. *See* Fed. R. Civ. P. 23(c)(2)(B).

31.    The Notice Plan contemplates direct mailed notice to individual class members, to the extent known, and their attorneys, to the extent known.  In addition, the Notice Plan provides for a broad-reaching published Notice in numerous national and local media, with a notice effort covering the entire United States, primarily focusing on the main impact States of Louisiana, Alabama, and Mississippi, and enumerated counties in Texas and Florida.  Furthermore, banner notice ads will appear on national and local web properties.  A complete copy of the Settlement Agreement with exhibits will be provided to any individuals or entities wishing to determine whether they are class members and what their rights are under the Settlement Agreement. There will also be a case website where potential class members can obtain additional information and documents, including a list of frequently asked questions that will be regularly

updated to provide useful information about the Settlement. This Notice Plan provides the best notice practicable under the circumstances pursuant to Fed. R. Civ. P. 23(c)(2)(B).

32.     In addition, the Court finds that the Notice and the Notice Plan comply with Fed. R. Civ. P. 23(e)(1)'s requirement that the Court direct notice to Class Members in a reasonable manner.  The notice is reasonably calculated to inform interested parties of the pendency of the settlement and afford them an opportunity to determine whether they are class members, seek all relevant information about the Settlement Agreement, determine their rights under the Settlement Agreement, and present their objections, if any.

33.     In conclusion, the Court finds that the Economic Loss and Property Damage Settlement Class Notice and the Economic Loss and Property Damage Settlement Class Notice Plan will provide notice in a reasonable manner to all class members who would be bound by the Economic Loss and Property Damage Settlement, including individual notice to all members who can be identified through reasonable effort.  The Economic Loss and Property Damage Settlement Class Notice and the Economic Loss and Property Damage Settlement Class Notice Plan constitute the best notice that is practicable under the circumstances.

34.     This Court orders that the Class Notice shall be disseminated as set forth in the Notice Plan.

35.     The Court directs counsel for the Parties, no later than ten days before the date of the Fairness Hearing, to file with the Court evidence that the Notice Plan has been carried out.

36.     The Court appoints Hilsoft Notifications as the Class Notice Administrator to implement the Class Notice and Class Notice Plan.  This Court may, at its sole discretion, request reports or information from the Notice Administrator.  The Notice Administrator shall be responsible for reporting and providing information to the Court at such frequency and in such manner as the Court directs.

37.     This Court shall have ongoing and exclusive jurisdiction over the Class Notice Administrator and shall retain such jurisdiction through and after the Settlement Agreement's Effective Date, in the event it occurs.

## VI.     Procedures and Deadlines for Opting Out, Objecting, and Appearing at the Fairness Hearing

38.     Any Economic Loss and Property Damage Class Member who wishes to exclude himself, herself, or itself from the Class must submit a written exclusion request, following the instructions in the Class Notice, which must be received by Garden City Group, properly addressed and postmarked no later than October 1, 2012.  All such written requests must be signed by the Natural Person or Entity seeking to exclude himself, herself or itself from the Class, but may be submitted by attorneys for such Natural Persons or Entities.

39.     All Economic Loss and Property Damage Class Members who do not timely and properly Opt Out shall, in all respects, be bound by all terms of this Agreement and the Final Order and Judgment, shall be entitled to all procedural opportunities and protections described herein and provided by the Court, and all compensation for which they qualify under its terms, and shall be permanently and forever barred from commencing, instituting, maintaining or prosecuting any action based on any Released Claim against any Released Parties in any court of law or equity, arbitration tribunal, administrative proceeding, or other forum.

40.     Any Economic Loss and Property Damage Class Member may present written objections explaining why the Agreement should not be approved as fair, reasonable and adequate; why attorneys' fees and expenses to Economic Class Counsel should not be awarded in the amounts requested; or why judgment should not be entered as to that Economic Loss and Property Damage Class Member.  Specifically, any Economic Class Member wishing to object to any aspect of the Agreement must file a written statement of the objection(s) with the Court, and serve same on Economic Loss and Property Damage Class Counsel and BP's Counsel, by

first-class mail, no later than August 31, 2012. The written statement of the objection(s) must include (a) a detailed statement of the Economic Class Member's objection(s), as well as the specific reasons, if any, for each objection, including any evidence and legal authority the Class Member has to support each objection and any evidence the Class Member has in support of his/her/its objection(s); (b) the Economic Class Member's name, address and telephone number; (c) written proof that the individual or entity is in fact an Economic Loss and Property Damage Class Member, such as proof of residency, ownership of property and the location thereof, and/or business operation and the location thereof; and (d) any other supporting papers, materials or briefs the Economic Class Member wishes the Court to consider when reviewing the objection. Any Class Member who fails to comply with these provisions shall waive and forfeit any and all rights to object to the Settlement Agreement, shall be forever foreclosed from making any objection to it, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in this matter.

41.     Within ten days after the deadline for Class Members to request exclusion from the Class, Class Counsel and Counsel for the Released Parties shall exchange a complete list of all timely and valid requests for exclusion received as of that date.  This list may be supplemented after the Fairness Hearing to the extent any additional timely and valid requests for exclusion are submitted.

42.     Any Economic Class Member may revoke his, her, or its Opt Out from the Economic Class and thereby receive the benefit of this Economic and Property Damage Settlement up until three (3) days prior to the Fairness Hearing; or later, if the BP Parties consent in their sole and unilateral discretion as provided in Section 8.2.6 of the Settlement Agreement; or otherwise, if the Court so orders on good cause shown.

43.     Upon entry of the Preliminary Approval Order, the statutes of limitation applicable to any and all claims or causes of action that have been or could be asserted by or on behalf of any Economic Class Member are hereby tolled and stayed. The limitations period shall not begin to run again for any Economic Class Member unless and until (a) they Opt Out of the Economic Class, or (b) they execute an Individual Release, or (c) the Agreement is terminated pursuant to Court order.

## VII.     Additional Directives

44.     Nothing in this Order shall be construed or used as an admission, concession, or declaration by or against any of the settling Parties:  (1) as to the certification of any other class in this or any other action for any purpose other than the effectuation of the proposed Settlement Agreement; or (2) as to any fault, wrongdoing, breach, or liability.  This Order shall not be construed as a finding or conclusion of the Court with respect to the merit or lack of merit of any claim asserted in this action or of any defense to any claim asserted in this action.  Neither the Settlement Agreement nor the Court's orders issued in connection with consideration of the Settlement, including this Order, shall be offered into evidence or used in this or any other action for any purpose, including, but not limited to, the existence, certification, or maintenance of any other class for any other purpose.

45.     In no event shall the termination or non-consummation of the Settlement Agreement affect the validity or finality of any Individual Releases signed by claimants accepting payments from the Claims Administrator and Claims Administration Vendors pending final fairness review and approval of the Settlement Agreement.  Pursuant to the Court's supplemental and ancillary jurisdiction to enforce and oversee its own orders, the Court assumes and retains jurisdiction to enforce any Individual Releases signed by claimants accepting payments from the Claims Administrator and Claims Administration Vendors pending final

fairness review and approval of the Settlement Agreement.  Additionally, if the Settlement Agreement receives final approval after the Fairness Hearing, the Court intends to retain jurisdiction over the enforcement of Individual Releases granted after the Effective Date as well.

46.     Consistent with this Court's supplemental and ancillary jurisdiction, the Court explicitly retains continuing and exclusive jurisdiction over the Parties, the Economic Loss and Property Damage Settlement Class Members, and the Settlement Agreement to interpret, implement, administer, and enforce the Settlement Agreement in accord with its terms, including with respect to the validity and finality of Individual Releases signed by Settlement Class Members receiving settlement payments, during the period before the Fairness Hearing and final review of the Settlement Agreement conclude.

47.     Upon consummation and approval of the Settlement provided for in the Settlement Agreement, the Settlement Agreement and each and every term and provision thereof and exhibits thereto shall be deemed incorporated herein as if explicitly set forth and shall have the full force and effect of an Order of this Court.

48.     Upon motion of any Party, the Court may, for good cause, extend any of the deadlines set forth in this Order, if necessary and appropriate, upon practicable notice to the Class, such as on the Court and Settlement websites.

ORDERED this _____ day of May 2012.


_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

**Appendix A (Settlement Agreement Ex. 22)**

## Map of Gulf Coast Area



**Appendix B (Settlement Agreement Ex. 23)**

# Map of Specified Gulf Waters



| BOUNDARY POINTS IN GULF OF MEXICO | | | | | |
|---|---|---|---|---|---|
| Point | Latitude | Longitude | Point | Latitude | Longitude |
| A | 28.206°N | -96.318°W | G | 25.703°N | -91.092°W |
| B | 25.956°N | -97.145°W | H | 25.669°N | -88.385°W |
| C | 25.971°N | -96.980°W | I | 24.933°N | -87.210°W |
| D | 25.997°N | -93.445°W | J | 24.941°N | -86.938°W |
| E | 24.734°N | -93.664°W | K | 25.207°N | -86.553°W |
| F | 25.445°N | -91.645°W | L | 23.925°N | -81.216°W |

028891

## Map of Specified Gulf Waters



BOUNDARY POINTS

| Point | Latitude | Longitude |
|-------|----------|-----------|
| A | 29.197°N | -95.057°W |
| B | 29.086°N | -95.130°W |
| C | 29.063°N | -95.092°W |
| D | 28.986°N | -94.978°W |

# Map of Specified Gulf Waters

