Exhibit C

# SEAFOOD COMPENSATION PROGRAM

## TABLE OF CONTENTS

| | Page |
|---|---|
| GENERAL FRAMEWORK AND OVERVIEW OF SEAFOOD COMPENSATION PROGRAM DISTRIBUTION | 3 |
| SHRIMP COMPENSATION PLAN | 4 |
| I. Expedited Compensation Method | 8 |
| II. Reduced Expedited Method | 13 |
| III. New Entrant Compensation Method | 15 |
| IV. Historical Revenue Method | 18 |
| V. Vessel Lease Compensation Allocation | 24 |
| OYSTER COMPENSATION PLAN | 25 |
| 1. Oyster Leaseholder Interest Compensation | 28 |
| 2. Oyster Leaseholder Lost Income Compensation | 29 |
| 3. Oyster Harvester Lost Income Compensation | 30 |
| 4. Vessel Lease Compensation Allocation | 40 |
| FINFISH COMPENSATION PLAN | 41 |
| I. Historical Revenue Method | 44 |
| II. Compensation for IFQ Quota Holders | 49 |
| III. Vessel Lease Compensation Allocation | 50 |
| BLUE CRAB/OTHER SEAFOOD COMPENSATION PLAN | 52 |
| I. Historical Revenue Method | ~~55~~ 56 |
| II. Vessel Lease Compensation Allocation | 63 |
| SEAFOOD CREW COMPENSATION PLAN | 65 |
| I. Category I Crew Compensation | 68 |
| II. Category II Crew Compensation | 70 |
| III. Category III Crew Compensation | 78 |
| SEAFOOD SPILL-PAYMENT REDUCTION PROCEDURES | 85 |

# SEAFOOD COMPENSATION PROGRAM

## OVERVIEW

The Seafood Compensation Program shall cover and compensate Commercial Fishermen, Seafood Boat Captains, all other Seafood Crew, Oyster Leaseholders, and Seafood Vessel Owners for economic loss claims relating to Seafood.[1]  All economic loss claims by Commercial Fishermen, Seafood Boat Captains, all other Seafood Crew, Oyster Leaseholders, and Seafood Vessel Owners relating to Seafood will be part of and must be brought under the Seafood Compensation Program.[2]

The Seafood Compensation Program is divided into the following compensation categories and claim types:

## TABLE 1

| CATEGORY | COMPENSABLE CLAIMS |
|---|---|
| Shrimp | • Vessel Owner/Commercial Fisherman Vessel Lessee claims<br>• Boat Captain claims |
| Oyster | • Leaseholder Interest claims<br>• Leaseholder Lost Income claims<br>• Vessel Owner/Oyster Harvester Vessel Lessee claims<br>• Boat Captain claims |
| Finfish | • Vessel Owner/Commercial Fisherman Vessel Lessee claims<br>• Boat Captain claims<br>• Individual Fishing Quota holder claims |
| Blue Crab/Other Seafood | • Vessel Owner/Commercial Fisherman Vessel Lessee claims  (including crab trap damage)<br>• Boat Captain claims |
| Seafood Crew (excluding Boat Captains) for all Seafood industries | • Crew claimants with standard documentation |

---

[1]  The terms Commercial Fisherman, Seafood Boat Captains, Seafood Crew, Oyster Leaseholders and Seafood Vessel Owners as defined in the "Seafood Distribution Chain Definitions" (Exhibit 3 to the *Deepwater Horizon* Economic and Property Damages Settlement Agreement) shall apply in this Seafood Compensation Program.

[2]  To the extent terms herein are defined in the *Deepwater Horizon* Economic And Property Damages Settlement Agreement, those definitions shall apply in the Seafood Compensation Program.  Nevertheless, any term specifically defined within the Seafood Compensation Program, shall be interpreted as set forth in this Seafood Compensation Program, notwithstanding any contrary definition in the *Deepwater Horizon* Economic And Property Damages Settlement Agreement.

| CATEGORY | COMPENSABLE CLAIMS |
|---|---|
| | • Crew claimants with documentation supplied by employer<br>• Crew claimants with documentation supplied by non-employers |

For each category and compensable claim type, a Claimant will have to establish that the Claimant is a Class Member and meets the separate eligibility requirements defined below.  In addition, Claimants are subject to the requirements of the *Deepwater Horizon* Economic And Property Damages Settlement Agreement and any applicable Court order, except as otherwise modified or provided by the Seafood Compensation Program.

Claimants are able to file a single Seafood Compensation Program Sworn Claim Form seeking compensation for multiple compensable claims.  A Claimant filing a claim under the different plan in the Seafood Compensation Program, may be required to use different historical information for the Benchmark Period and must review the definition of Benchmark Period in each plan.  For example, the Claimant may use a different Benchmark Period for the Claimant's claim under the Shrimp Compensation Plan and the Claimant's claim under the Oyster Compensation Plan.  The following provides a non-exhaustive list of examples in which a single claimant might be eligible to receive compensation for multiple compensable claims:

- A shrimp Vessel Owner/Commercial Fisherman Vessel Lessee who is also a shrimp Boat Captain may be eligible to receive compensation both as a shrimp Vessel Owner/Commercial Fisherman Vessel Lessee and shrimp Boat Captain.
- An oyster leaseholder may be eligible to receive compensation for both Leaseholder Interest and Leaseholder Lost Income claims.  If the oyster leaseholder claimant is also a Vessel Owner/Commercial Fisherman Vessel Lessee and a Boat Captain, that claimant may be eligible to receive compensation as both an oyster Vessel Owner/Commercial Fisherman Vessel Lessee and an oyster Boat Captain.
- A claimant who is a Boat Captain for vessel(s) in both the blue crab industry and shrimp industry may be eligible to receive compensation under applicable blue crab and shrimp categories.

~~Claimants filing multiple claims under the~~ Seafood Compensation Program ~~are required to submit all claims at the same time on a single Seafood Compensation Program Sworn Claim Form.  The single Seafood Compensation Program Sworn Claim Form~~**Sworn Claim Forms** may be submitted at any time after entry of the Preliminary Approval Order, but no later than thirty (30) days from the date of entry of the Final Order and Judgment of the District Court ruling upon final approval of the Settlement (**Bar Date**).  Claims will be processed and paid as expeditiously as possible by the Claims Administrator.

It is expressly acknowledged that the fact that a Claimant has made a claim and/or received compensation under the Seafood Compensation Program, does not preclude that claimant from making an independent claim and/or receiving compensation under the *Deepwater Horizon* Economic And Property Damages Settlement Agreement.

2

Compensation received by an eligible Claimant under the Seafood Compensation Program will be reduced by the amount of prior Seafood Spill-Related Payments as described in the Seafood Spill Related Payment Reduction Procedures in this document.[3]  No other reductions to the compensation amount under the Seafood Compensation Program will be taken, including compensation received for work in the VoO Program or compensation for VoO Damages under the Settlement.

~~Compensation under the~~**The** Seafood Compensation Program ~~provides compensation for~~**shall cover and compensate the** economic loss claims ~~of~~**for** Commercial Fishermen, Seafood Crew, Oyster Leaseholders, **and** Seafood Vessel Owners~~, and Individual Fishing Quota holders including all lost in kind payments of Seafood and all lost sales of Seafood, including undocumented sales.  To the extent Commercial Fishermen, Seafood Crew, Vessel Owners and Seafood Boat Captains engage in subsistence activities unrelated to their commercial fishing for Seafood activities and have valid subsistence loss claims other than the losses compensated in the Seafood Compensation Program, such claims do not fall within the scope of this Seafood Compensation Program and recovery, if any, would be under the Subsistence Claim Framework~~.  **It does not cover subsistence claims**.

### General Framework and Overview of Seafood Compensation Program Distribution

The Seafood Compensation Program is estimated to result in prompt claims payments totaling more than $1.9 billion representing approximately 83% of the $2.3 billion Seafood Compensation Program Amount.  After applying the terms of the *Deepwater Horizon* Economic And Property Damages Settlement Agreement (including determining the Seafood Compensation Program Amount) and paying the eligible Seafood Compensation Program claims, the Claims Administrator shall determine the amount of funds, if any, constituting the remaining Seafood Compensation Program Amount.  In the event there are Seafood Compensation Program Amount funds remaining, such funds will be distributed to claimants that received compensation from the Seafood Compensation Program.  The balance will be distributed to each Claimant in proportion to the Claimant's gross compensation expressed as a share of the gross compensation paid by the Claims Administrator to all claimants under the Seafood Compensation Program.[4]  Gross compensation reflects compensation paid by the Claims Administrator prior to deduction for Seafood Spill-Related Payments.  **If, however, the Court-Appointed Neutral determines that a distribution other than purely proportional would be more appropriate in light of the information available at the time of the second distribution, he may recommend to the Court that the second distribution be reallocated in an alternative fashion.  Any such reallocation will be subject to court approval.**

---

[3]  Seafood Spill-Related Payments are defined as compensation paid to a claimant through the OPA Process, by BP, the GCCF, or through the Transition Facility for economic loss claims relating to Seafood.

[4]  All claimants who receive compensation under the Seafood Compensation Program are entitled to a share of the distribution of the balance whether or not their individual claims have been characterized as "lump sum" or a similar term, and whether or not they are members of Categories II and III of the Seafood Crew Compensation Plan (each of which provides for an Aggregate Compensation Amount, which shall not apply as a limitation to a Claimant's entitlement to a share of the balance to be distributed).

3

Seafood Spill-Related Payments, including documents providing the claimant's BP/GCCF/Transition Facility Claim Number, if applicable, and any corresponding payments.

**Shrimp Compensation Plan Definitions:**

Benchmark Period[6] is selected by the Claimant and can be (i) 2009, (ii) 2008 and 2009, or (iii) 2007, 2008 and 2009.  If the Claimant elects to use years 2008 and 2009 or 2007, 2008, and 2009, the annual revenue amounts shall be averaged.  **In the event the Claims Administrator determines that the Claimant (individual or vessel) did not participate at the same level of effort in shrimp harvesting due to circumstances beyond the Claimant's control (such as illness, disability or major mechanical failure), the Claims Administrator may at his discretion allow the Claimant to exclude one or more years of the Benchmark Period.**

A Vessel Owner or Commercial Fisherman Vessel Lessee must submit separate Vessel Owner/Commercial Fisherman Vessel Lessee claims for each vessel they owned or leased and may select different Benchmark Periods for different vessels.

A Boat Captain's claim reflects the Claimant's activities on all vessels, and the Boat Captain must select a single Benchmark Period for the Claimant's claim.

A Vessel Owner or Commercial Fisherman Vessel Lessee who also submits a Boat Captain claim may select different Benchmark Periods for the Claimant's Vessel Owner/Commercial Fisherman Vessel Lessee claim and the Claimant's Boat Captain claim.

**Compensation Plan Methods:**

There are four methods for a Vessel Owner/Commercial Fisherman Vessel Lessee and/or Boat Captain to be compensated under the Shrimp Compensation Plan.  The options are:

- Expedited Compensation Method
- Reduced Expedited Compensation Method
- New Entrant Compensation Method
- Historical Revenue Method

A Vessel Owner or Commercial Fisherman Vessel Lessee may select different Compensation Plan Methods for different vessels.  There is no qualifying revenue level required for the Historical Revenue Method.  The qualifying vessel revenue for the Expedited Compensation Method and Reduced Expedited Compensation Method is summarized in the second column of Table 2 and the compensation amount is summarized in the third column.  The eligibility, documentation and details of each method are described more fully in Sections I and II below.

---

[6] For the Seafood Compensation Program, the Benchmark Period is defined independently for each Seafood Compensation Program Plan and is set forth within the specific Plan.  Definitions of Benchmark Period in any other frameworks in the *Deepwater Horizon* Economic And Property Damages Settlement Agreement do not apply in the Seafood Compensation Program.

7

    December 31, 2009.  If the Commercial Fisherman Vessel Lessee was not the sole Boat Captain for that vessel for some portion of January 1, 2007 through December 31, 2009, to the extent possible, the Claimant shall identify all other Boat Captains employed on the vessel and the time periods for which the Boat Captains were employed.

6.  To establish eligibility to participate in the Finfish Compensation Plan a Boat Captain must provide:

  A.  Proof that as of April 20, 2010 the Boat Captain held a governmental license (even if it had expired before that date) authorizing the Claimant to operate as a Boat Captain and/or to commercially fish for finfish in the Specified Gulf Waters for the 2009 season or the 2010 season.

  B.  Proof that either the Boat Captain worked:

   1.  on one or more commercial finfishing vessels that were home ported in the Gulf Coast Areas from April 20, 2010 through the date of execution of the Settlement Agreement; or,

   2.  one or more commercial finfishing vessels that landed finfish in the Gulf Coast Areas from April 20, 2009 through the date of execution of the Settlement Agreement.

7.  A Sworn Statement attesting whether or not the Claimant received any Seafood Spill-Related Payments.  If the Claimant received Seafood Spill-Related Payments, the Claimant shall provide documents[8] sufficient to establish the timing, amount and source of Seafood Spill-Related Payments, including documents providing the claimant's BP/GCCF/Transition Facility Claim Number, if applicable, and any corresponding payments.

**Finfish Compensation Plan Definition:**

Benchmark Period[9] is selected by the Claimant and can be (i) 2009, (ii) 2008 and 2009, or (iii) 2007, 2008 and 2009.  If the Claimant elects to use years 2008 and 2009 or 2007, 2008, and 2009, the annual revenue amounts shall be averaged.  **In the event the Claims Administrator determines that the Claimant (individual or vessel) did not participate at the same level of effort in finfish harvesting due to circumstances beyond the Claimant's control (such as**

---

[8]  When documents are requested in the Seafood Compensation Program, Claimant may provide either legible copies or originals of the documents.

[9]  For the Seafood Compensation Program, the Benchmark Period is defined independently for each Seafood Compensation Program Plan and is set forth within the specific Plan. Definitions of Benchmark Period in any other frameworks in the *Deepwater Horizon* Economic And Property Damages Settlement Agreement do not apply in the Seafood Compensation Program.

**illness, disability or major mechanical failure), the Claims Administrator may at his discretion allow the Claimant to exclude one or more years of the Benchmark Period.**

A Vessel Owner or Commercial Fisherman Vessel Lessee must submit separate Vessel Owner/Commercial Fisherman Vessel Lessee claims for each vessel they owned or leased and may select different Benchmark Periods for different vessels.

A Boat Captain's claim reflects the Claimant's activities on all vessels, and the Claimant must select a single Benchmark Period for the Boat Captain's claim.

A Vessel Owner or Commercial Fisherman Vessel Lessee who also submits a Boat Captain claim may select different Benchmark Periods for the Claimant's Vessel Owner/Commercial Fisherman Vessel Lessee claim and the Claimant's Boat Captain claim.

**Compensation Plan Method:**

Vessel Owners/Commercial Fisherman Vessel Lessees and Boat Captains will be compensated through the Historical Revenue Method. A Vessel Owner or Commercial Fisherman Vessel Lessee must submit separate Vessel Owner/Commercial Fisherman Vessel Lessee claims for each vessel they owned or leased.

Additionally, owners of Individual Fishing Quota ("IFQ") shares may be eligible to receive compensation for their IFQ shares under the IFQ Share Compensation Method.

I.   **Historical Revenue Method**

  A.   **Eligibility Requirements**

   1.   **Vessel Owner/Commercial Fisherman Vessel Lessee**

To be eligible under the Historical Revenue Method, a Vessel Owner/Commercial Fisherman Vessel Lessee must meet the eligibility requirements of the applicable paragraphs of the "Generally Applicable Provisions of the Finfish Compensation Plan" above and provide evidence to demonstrate his or her commercial finfishing revenue during the selected Benchmark Period.

   2.   **Boat Captains**

To be eligible under the Historical Revenue Method, a Boat Captain must meet the eligibility requirements of the applicable paragraphs of the "Generally Applicable Provisions of the Finfish Compensation Plan" above and provide evidence to demonstrate his or her commercial gross earnings from commercial finfishing on vessels for which he or she served as Boat Captain during the selected Benchmark Period.

**Blue Crab/Other Seafood Compensation Plan Definition:**

Benchmark Period[12] is selected by the Claimant and can be (i) 2009, (ii) 2008 and 2009, or (iii) 2007, 2008 and 2009.  If the Claimant elects to use years 2008 and 2009 or 2007, 2008, and 2009, the annual revenue amounts shall be averaged.  **In the event the Claims Administrator determines that the Claimant (individual or vessel) did not participate at the same level of effort in blue crab/other seafood harvesting due to circumstances beyond the Claimant's control (such as illness, disability or major mechanical failure), the Claims Administrator may at his discretion allow the Claimant to exclude one or more years of the Benchmark Period.**

A Vessel Owner or Commercial Fisherman Vessel Lessee must submit separate Vessel Owner/Commercial Fisherman Vessel Lessee claims for each vessel they owned or leased and may select different Benchmark Periods for different vessels.

A Boat Captain's claim reflects the Claimant's activities on all vessels, and the Boat Captain must select a single Benchmark Period for the Claimant's claim.

A Vessel Owner or Commercial Fisherman Vessel Lessee who also submits a Boat Captain claim may select different Benchmark Periods for the Claimant's Vessel Owner/Commercial Fisherman Vessel Lessee claim and the Claimant's Boat Captain claim.

**Compensation Plan Method:**

Vessel Owners/Commercial Fisherman Vessel Lessees and Boat Captains will be separately compensated for blue crab claims and Other Seafood claims through the Historical Revenue Method.  Claimants may submit a claim for either or both blue crab or Other Seafood categories.  Compensation for blue crab claims is set forth in Section I.C and compensation for Other Seafood claims is set forth in Section I.D.  A Vessel Owner or Commercial Fisherman Vessel Lessee must submit separate Vessel Owner/Commercial Fisherman Vessel Lessee claims for each vessel they owned or leased.

Additionally, Vessel Owners and Commercial Fisherman Vessel Lessees that establish they commercially fished for blue crab in the Benchmark Period and who satisfy the applicable paragraphs of the Generally applicable Provisions of the Blue Crab/Other Seafood Compensation Plan above and in Section I.A. below will receive a lump sum payment as set forth in Section I.

---

[12] For the Seafood Compensation Program, the Benchmark Period is defined independently for each Seafood Compensation Program Plan and is set forth within the specific Plan.  Definitions of Benchmark Period in any other frameworks in the *Deepwater Horizon* Economic And Property Damages Settlement Agreement do not apply in the Seafood Compensation Program.

**TABLE 2**

|  | **BLUE CRAB VESSEL OWNERS/COMMERCIAL FISHERMAN VESSEL LESSEES** | **BLUE CRAB BOAT CAPTAINS** |
|---|---|---|
| RTP | 6.0 | 5.0 |

In addition, Vessel Owners/Commercial Fisherman Vessel Lessees who receive Final Blue Crab Compensation shall also receive a lump sum payment of $7,500 per vessel.

**A. D. Compensation Calculations for Other Seafood**

    1.    Calculate Benchmark Other Seafood Revenue

        a.    If trip tickets or their equivalents are used, the volume and price of Other Seafood on the trip tickets or their equivalents are used to calculate gross revenue from Other Seafood landed in the Gulf Coast Areas.  If the Claimant is a Vessel Owner/Commercial Fisherman Vessel Lessee, the Claimant may provide trip tickets or their equivalents for the Benchmark Period for each Vessel for which compensation is being sought.  If the Claimant is a Boat Captain, the Claimant may provide trip tickets for all vessels the Claimant served as a Captain during the Benchmark Period.

        – OR –

        b.    The Claims Administrator may determine the gross vessel revenue or Boat Captain earnings from Other Seafood landings in the Gulf Coast Areas based on the Claimant's tax returns, monthly profit and loss statements, or financial information if the Claims Administrator has sufficient information to determine: (i) Claimant's revenue from Other Seafood as compared to other sources and (ii) Claimant's revenue from Other Seafood landings in the Gulf Coast Areas.  If necessary, the Claims Administrator may require supplemental information from the Claimant in order to make these determinations.

    2.    Calculate Total Adjusted Benchmark Other Seafood Revenue by multiplying the Additional Catch Adjusted Benchmark Other Seafood Revenue by 1.1, the Adjustment for Changes in 2010-11 Prices.

Total Adjusted Benchmark Other Seafood Revenue =
(Benchmark Other Seafood Revenue * Adjustment for Changes in 2010-11 Prices).

61