Exhibit D

# AMENDMENT NO. 1 TO
# *DEEPWATER HORIZON*
# ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT

The Parties to the ***DEEPWATER HORIZON* ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT** dated as of April 18, 2012 ("Agreement") hereby stipulate and agree as follows:

The caption of the *Bon Secour Fisheries* action is amended to delete in its entirety the existing text and to replace it will the following:

> Bon Secour Fisheries Inc, et al., on behalf of themselves and all others similarly situated, Plaintiffs, v. BP Exploration & Production Inc.; BP America Production Company; BP p.l.c., Defendants.

The title of the Agreement is amended to delete in its entirety the existing text and to replace it with the following:

> ***DEEPWATER HORIZON* ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT AS AMENDED ON MAY 1, 2012**

Recital B of the Agreement is amended to delete in its entirety the existing text and to replace it with the following:

> B.  **ECONOMIC CLASS REPRESENTATIVES** are the named plaintiffs in the Amended Economic and Property Damage Class Complaint (the "**ACTION**") entitled *Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production Inc. et al.*, No. 12-970, filed May 2, 2012 in the **COURT.**

Section 4.4.13.4 of the Agreement is amended to delete in its entirety the existing text and to replace it with the following:

> 4.4.13.4.   Retained professionals must verify that to the best of their knowledge they have submitted the information provided to them by the claimant on a consistent basis and have not ignored the implications of information known or reasonably suspected to be untrue, incomplete, inconsistent or inaccurate.

Section 5.12.1 of the Agreement is amended to delete in its entirety the existing text and to replace it with the following:

> 5.12.1. A Settlement Trust (the "Settlement Trust") shall be established for the purpose of paying Settlement Payments and the costs of administering the Settlement Program. The Settlement Trust shall be established pursuant to the order of the Court. The Settlement Trust shall be structured and operated in a manner so that it qualifies as a "qualified settlement fund" under section 468B(d)(2) of the Internal Revenue Code and Treasury Regulation §1.468B-1. The Settlement Trust shall be created and governed by a Trust Agreement in form and substance reasonably satisfactory to the Claims Administrator, Lead Class Counsel and the BP Parties (the "Economic Settlement Trust Agreement"). The Claims Administrator shall serve as Trustee of the Settlement Trust, and J. P. Morgan Trust Company of Delaware shall serve as the "Directed Trustee" with limited authority as set forth in the Economic Settlement Trust Agreement. Should the Court determine at any time that the Trustee or the Directed Trustee needs to be replaced, Lead Class Counsel or their designee and BP will agree to make a joint recommendation of one or more candidates for appointment by the Court, as Trustee or Directed Trustee, as the case may be. They shall continue the process of joint recommendation as necessary until Court approval is obtained. The Economic Settlement Trust Agreement shall be subject to approval by the Court. The Settlement Trust, subject to the requirements of Section 4.3.5 and Section 4.3.6.1, may hire Claims Administration Staff or Claims Administration Vendors as necessary for the Settlement Program. The Economic Settlement Trust shall be initially comprised of the following separate funds, which shall together constitute a single qualified settlement fund**:**

New Section 5.12.1.1.6 is inserted, reading as follows:

> 5.12.1.1.6  Economic Settlement Trust Account, into which the BP Parties shall pay, or cause to be paid, all amounts required to be paid to the Settlement Trust and from which the Trustee and/or the Directed Trustee shall transfer into the Funds listed in Section 5.12.1 such amounts as required under Section 5.12

Former Sections 5.12.1.1.6 and 5.12.1.1.7 are renumbered to reflect the insertion of new Section 5.12.1.1.6.

Section 5.12.1.1.7 of the Agreement (as renumbered following the insertion of new Section 5.12.1.1.6) is amended to delete in its entirety the existing text and to replace it with the following:

> 5.12.1.1.7.   With consent of the Parties and consistent with the terms of the Settlement Agreement, the Claims Administrator, as Trustee, may establish, or cause to be established, one or more additional funds for the payment of resolved Claims. Such additional funds shall be considered "Funds" for purposes of this Settlement Agreement, and, together with the Funds listed in Section 5.12.1, shall constitute a single qualified settlement fund.

Section 5.12.1.1.8 of the Agreement (as renumbered following the insertion of new Section 5.12.1.1.6) is amended to delete in its entirety the existing text and to replace it with the following:

> 5.12.1.1.8.   The Claims Administrator is authorized and directed to establish, or cause to be established, and operate a Reserve Fund in the event the Economic Class receives any monies due pursuant to Section 5.15. Notwithstanding the preceding sentence, in the event that there are monies remaining in this Reserve Fund, and the Agreement is terminated pursuant to Section 21, any remaining unspent funds in this Reserve Fund shall revert as determined by BP and Lead Class Counsel at the time such Reserve Fund is established. However, nothing herein shall prevent the expenditure of any such funds prior to Final Approval.

Section 5.12.1.2 of the Agreement is amended to delete in its entirety the existing text and to replace it with the following:

> 5.12.1.2.   The Settlement Trust and each of the Funds shall be managed by the Trustee and the Directed Trustee and shall be subject to the continuing jurisdiction and supervision of the Court. The Claims Administrator shall serve as the Trustee and as the administrator of the qualified settlement fund for purposes of Treasury Regulation §1.468B-2(k)(3) and shall be responsible for making any necessary tax filings and payments of taxes, estimated taxes, and associated interest and penalties, if any, by the Settlement Trust and responding to any questions from, or audits regarding such taxes by, the Internal Revenue Service or any state or local tax authority, as well as questions from the Department of Labor. The Trustee shall also be responsible for complying with all tax information reporting and withholding requirements with respect to payments made by the Settlement Trust, as well as paying any associated interest and

penalties. Any such tax, interest and penalty payments shall be paid from the Administrative Fund. The Trustee may delegate any of his responsibilities as trustee to the Directed Trustee as set forth in the Economic Settlement Trust Agreement.

Section 5.12.1.3 of the Agreement is amended to delete in its entirety the existing text and to replace it with the following:

5.12.1.3    The BP Parties shall pay or cause to be paid, within 10 days of Preliminary Approval, an initial amount of $1 billion to the Settlement Trust. Of this initial $1 billion, $500 million shall be transferred to the Seafood Compensation Fund, and $500 million shall be transferred to the General Claims Fund. Thereafter, the BP Parties shall pay or cause to be paid, within 10 days of the commencement of each calendar quarter, beginning with the third quarter of 2012, six additional quarterly payments as follows:

(i) $500 million per quarter to the Settlement Trust for three quarters (of which additional $500 million payments, $300 million shall transferred paid to the Seafood Compensation Fund, and $200 million shall be transferred to the General Claims Fund);

(ii) then, $400 million per quarter to the Settlement Trust for one quarter (of which additional $400 million payment, $300 million shall be transferred to the Seafood Compensation Fund, and $100 million shall be transferred to the General Claims Fund); and

(iii) then, $300 million per quarter to the Settlement Trust for two quarters (of which additional $300 million payments, all $300 million shall be transferred to the Seafood Compensation Fund).

The initial $1 billion payment and the six subsequent quarterly payments described in clauses (i) through (iii) above shall be irrevocable payments by the BP Parties. If at any time the balance in the Seafood Compensation Fund falls below $300 million and/or the balance in the General Claims Fund falls below $200 million, the Claims Administrator shall provide a written notice to the BP Parties and Lead Class Counsel specifying the balance in the Settlement Trust and each of the Claims Funds. The BP Parties will promptly pay or cause to be paid additional amounts to the Settlement Trust, from time to time upon receipt of such notice, sufficient to restore the balance of the General Claims fund to at least $200 million and the balance of the Seafood Compensation Fund to at least $300 million; provided that in no event will the sum of all amounts allocated and paid into the Seafood Compensation Fund under all provisions of this Agreement, in the aggregate, exceed the Seafood Compensation Program Amount (and if it is determined that any amounts were contributed to the

Seafood Compensation Fund in excess of the Seafood Compensation Program Amount, the amount of such excess shall be repaid from the Seafood Compensation Fund to the BP Parties). The Claims Administrator will provide the BP Parties and Lead Class Counsel with periodic reports relating to the Claims or other amounts paid from the Seafood Compensation Fund and the General Claims Fund and projections of Claims or other payments that are in process, in each case in such detail and with such frequency as the BP Parties may reasonably request.

Section 5.12.1.4 of the Agreement is amended to delete in its entirety the existing text and to replace it with the following:

5.12.1.4    The BP Parties shall pay or cause to be paid to the Settlement Trust for transfer to the Administrative Fund (i) an initial amount equal to $50 million to be paid by no later than 10 days after Preliminary Approval, and (ii) additional amounts as may be required on a monthly basis thereafter during the administration of the Settlement Program in accordance with an administrative expense budget to be developed by the Claims Administrator, subject to the reasonable approval of the BP Parties and Lead Class Counsel (the "Administrative Budget"). Contracts entered into with Claims Administration Vendors and their subcontractors shall provide the BP Parties and Lead Class Counsel with a right to receive invoices submitted by Claims Administration Vendors and their subcontractors and a reasonable amount of time to raise concerns or objections to such invoices prior to their payment. The Claims Administrator shall provide the BP Parties and Lead Class Counsel on a monthly basis with a report of Administrative Expenses paid in connection with the Settlement Program in such detail as the BP Parties may reasonably request and a reconciliation of such payments in comparison to the Administrative Budget. The BP Parties and the Claims Administrator shall adjust the monthly payment amounts accordingly to assure that sufficient funds are on deposit in the Administrative Fund to cover the Administrative Expenses on a timely basis. Payment of administrative expenses by the Claims Administrator shall be subject to oversight by the District Court.

Section 5.12.1.5.1 of the Agreement is amended to delete in its entirety the existing text and to replace it with the following:

5.12.1.5.1    The BP Parties have established the Deepwater Horizon Oil Spill Trust pursuant to a Trust Agreement dated as of August 6, 2010 (the "Deepwater Horizon Trust Agreement") for the purpose of providing funds to be used to satisfy damage claims, as more particularly described in the Deepwater Horizon Trust Agreement, arising from or related to the

- 5 -

DWH Oil Spill.  The BP Parties may satisfy each of its payment obligations under this Section 5.12.1 by arranging for the Deepwater Horizon Oil Spill Trust to make such payment.  It is contemplated by the BP Parties that such payments generally will be made by the Deepwater Horizon Oil Spill Trust.  Nothing contained herein in any way limits or impairs the duties and obligations of the BP Parties under this Agreement or the Guarantees of payment obligations under this Agreement provided by BPCNA and BP p.l.c. set forth in Exhibit 24.

Section 5.12.1.5.2 of the Agreement is amended to delete in its entirety the existing text and to replace it with the following:

5.12.1.5.2.   The Claims Administrator, as Trustee, and/or the Directed Trustee shall establish an escrow account (each a "Fund Account") for each Fund with the Lead Paying Agent (as defined below) as escrow agent.  Each payment specified in this Section 5.12.1 shall be made into the principal Fund Account established for the applicable Fund, as designated in writing by the Claims Administrator.

Section 5.12.1.6 of the Agreement is amended to delete in its entirety the existing text and to replace it with the following:

5.12.1.6   Amounts deposited in the Settlement Trust and each Fund Account shall be invested conservatively in a manner designed to assure timely availability of funds, protection of principal and avoidance of concentration risk, only in the following types of investments:

- United States government money market funds having a AAA/Aaa rating awarded by at least two of the three major rating agencies (Standard & Poor's, Moody's or Fitch); or

- Short-dated United States treasury bills and/or interest bearing deposits at federally insured depository institutions that are at all times rated A+/A1 or higher by Standard & Poor's and Moody's provided such depository institution rated A+/A1 or higher at all times holds a stable or positive outlook.

Section 5.12.1.6.3 of the Agreement is amended to delete in its entirety the existing text and to replace it with the following:

5.12.1.6.3   Any earnings attributable to the Economic Settlement Trust Account and the General Claims Funds shall be transferred to the Administrative Fund and any earnings on the Administrative Fund shall be retained in the

- 6 -

Administrative Fund. Any earnings attributable to the Seafood Compensation Fund shall be retained in the Seafood Compensation Fund. Any earnings attributable to the Gulf Tourism and Seafood Promotional Fund shall be retained in the Gulf Tourism and Seafood Promotional Fund. Any earnings attributable to the Supplemental Information Program Fund shall be retained in the Supplemental Information Program Fund.

Section 5.12.1.7 of the Agreement is amended to delete in its entirety the existing text and to replace it with the following:

5.12.1.7.   The Claims Administrator, the Trustee and the Directed Trustee shall enter into a Paying Agent Agreement, in form and substance reasonably satisfactory to the BP Parties and Lead Class Counsel and approved by the Court, pursuant to which a federally insured depository institution approved by the BP Parties and Lead Class Counsel and the Court will serve as the lead paying agent and escrow agent for the Claims Funds (the "Lead Paying Agent"), and Garden City Group, Inc. (or another entity agreed to by the BP Parties and Lead Class Counsel, with approval of the Court) will serve as the claims payment agent for the Claims Funds (the "Claims Payment Agent"). In addition, the Lead Paying Agent may enter into an arrangement with one or more other federally insured depository institutions with branch locations in the Gulf Region (collectively, the "Gulf Region Bank") and/or another check cashing facility agreed to by BP and Lead Class Counsel, and approved by the Court that provides that checks drawn on the Fund Accounts of the Claims Funds will be eligible to be cashed or deposited in branches of the Gulf Region Bank in a manner that will expedite the recipients' access to such funds (the "Check Cashing Arrangement").

Section 5.12.2 of the Agreement is amended to delete in its entirety the existing text and to replace it with the following:

5.12.2   Notwithstanding any other provision of this Agreement, the BP Parties may enter into an arrangement with the Claims Administrator and the Corporate Trustee and/or Lead Paying Agent (as such terms are defined in the Deepwater Horizon Trust Agreement) of the Deepwater Horizon Oil Spill Trust with respect to Settlement Payments as directed by the Claims Administrator in accordance with the Deepwater Horizon Trust Agreement.

New Section 38.45 is inserted, reading as follows:

38.45.   Directed Trustee shall mean the J. P. Morgan Trust Company of Delaware, exercising the limited authority as set forth in the Economic Settlement

Trust Agreement, with the Claims Administrator serving as Trustee of the Settlement Trust.

New Section 38.47 (as renumbered following the insertion of new Section 38.45) is inserted, reading as follows:

38.47    Economic Settlement Trust Account shall mean the account of the Settlement Trust into which the BP Parties shall pay, or cause to be paid, all amounts required to be paid to the Settlement Trust and from which the Trustee and/or the Directed Trustee shall transfer into the Funds listed in Section 5.12.1 such amounts as required under Section 5.12.

New Section 38.153 (as renumbered following the insertion of new Sections 38.45 and 38.47) is inserted, reading as follows:

38.153.    Trustee shall mean the Claims Administrator when serving as trustee of the Settlement Trust, with Directed Trustee J. P. Morgan Trust Company of Delaware exercising the limited authority as set forth in the Economic Settlement Trust Agreement.

The provisions in Section 38, Definitions, are renumbered to accommodate the two additions to Section 38 appearing immediately above.

Exhibit 10 to the Agreement, Page 2, Penultimate Paragraph, is amended to delete in its entirety the existing text and to replace it with the following:

Seafood Compensation Program Sworn Claim Forms may be submitted at any time after entry of the Preliminary Approval Order, but no later than thirty (30) days from the date of entry of the Final Order and Judgment of the District Court ruling upon final approval of the Settlement (**Bar Date**).  Claims will be processed and paid as expeditiously as possible by the Claims Administrator.

Exhibit 10 to the Agreement, Page 3, Second Paragraph, is amended to delete in its entirety the existing text and to replace it with the following:

The Seafood Compensation Program shall cover and compensate the economic loss claims for Commercial Fishermen, Seafood Crew, Oyster Leaseholders, and Seafood Vessel Owners.  It does not cover subsistence claims.

Exhibit 10 to the Agreement, page 3, "General Framework and Overview of Seafood Compensation Program Distribution," is amended to delete in its entirety the existing text and replace it with the following:

> The Seafood Compensation Program is estimated to result in prompt claims payments totaling more than $1.9 billion representing approximately 83% of the $2.3 billion Seafood Compensation Program Amount. After applying the terms of the *Deepwater Horizon* Economic And Property Damages Settlement Agreement (including determining the Seafood Compensation Program Amount) and paying the eligible Seafood Compensation Program claims, the Claims Administrator shall determine the amount of funds, if any, constituting the remaining Seafood Compensation Program Amount. In the event there are Seafood Compensation Program Amount funds remaining, such funds will be distributed to claimants that received compensation from the Seafood Compensation Program. The balance will be distributed to each Claimant in proportion to the Claimant's gross compensation expressed as a share of the gross compensation paid by the Claims Administrator to all claimants under the Seafood Compensation Program.[4] Gross compensation reflects compensation paid by the Claims Administrator prior to deduction for Seafood Spill-Related Payments. If, however, the Court-Appointed Neutral determines that a distribution other than purely proportional would be more appropriate in light of the information available at the time of the second distribution, he may recommend to the Court that the second distribution be reallocated in an alternative fashion. Any such reallocation will be subject to court approval.

Exhibit 10 to the Agreement, page 7, "Shrimp Compensation Plan Definitions," First Paragraph, is amended to delete in its entirety the existing text and replace it with the following:

> Benchmark Period[6] is selected by the Claimant and can be (i) 2009, (ii) 2008 and 2009, or (iii) 2007, 2008 and 2009. If the Claimant elects to use years 2008 and 2009 or 2007, 2008, and 2009, the annual revenue amounts shall be averaged. In the event the Claims Administrator determines that the Claimant (individual or vessel) did not participate at the same level of effort in shrimp harvesting due to circumstances beyond the Claimant's control (such as illness, disability or major mechanical failure), the Claims Administrator may at his discretion allow the Claimant to exclude one or more years of the Benchmark Period.

Exhibit 10 to the Agreement, Pages 43-44, "Finfish Compensation Plan Definition," First Paragraph, is amended to delete in its entirety the existing text and to replace it with the following:

> Benchmark Period[9] is selected by the Claimant and can be (i) 2009, (ii) 2008 and 2009, or (iii) 2007, 2008 and 2009. If the Claimant elects to use years 2008 and 2009 or 2007, 2008, and 2009, the annual revenue amounts shall be averaged. In the event the Claims

Administrator determines that the Claimant (individual or vessel) did not participate at the same level of effort in finfish harvesting due to circumstances beyond the Claimant's control (such as illness, disability or major mechanical failure), the Claims Administrator may at his discretion allow the Claimant to exclude one or more years of the Benchmark Period.

Exhibit 10 to the Agreement, Page 55, "Blue Crab/Other Seafood Compensation Plan Definition," First Paragraph, is amended to delete in its entirety the existing text and to replace it with the following:

Benchmark Period[12] is selected by the Claimant and can be (i) 2009, (ii) 2008 and 2009, or (iii) 2007, 2008 and 2009.  If the Claimant elects to use years 2008 and 2009 or 2007, 2008, and 2009, the annual revenue amounts shall be averaged.  In the event the Claims Administrator determines that the Claimant (individual or vessel) did not participate at the same level of effort in blue crab/other seafood harvesting due to circumstances beyond the Claimant's control (such as illness, disability or major mechanical failure), the Claims Administrator may at his discretion allow the Claimant to exclude one or more years of the Benchmark Period.

Exhibit 10 to the Agreement, Page 55, header reading "A.  Compensation Calculations for Other Seafood," is amended to delete in its entirety the existing text and to replace it with the following:

D.  Compensation Calculations for Other Seafood

All other provisions of the Agreement shall remain unchanged.

Executed this 2nd day of May, 2012.

BP EXPLORATION & PRODUCTION INC.

By: *James J. Neath* (signature)
Name: James J. Neath
Title: Associate General Counsel


By: _____

Name: Richard C. Godfrey, P.C.
Kirkland & Ellis LLP
Counsel for BP Exploration & Production Inc.


BP AMERICA PRODUCTION COMPANY

By: *James J. Neath* (signature)
Name: James J. Neath
Title: Associate General Counsel


By: _____

Name: Richard C. Godfrey, P.C.
Kirkland & Ellis LLP
Counsel for BP America Production Company

BP EXPLORATION & PRODUCTION INC.

By: _____
Name: James J. Neath
Title: Associate General Counsel


By: *Richard C. Godfrey, P.C.* (signature)

Name: Richard C. Godfrey, P.C.
Kirkland & Ellis LLP
Counsel for BP Exploration & Production Inc.


BP AMERICA PRODUCTION COMPANY

By: _____
Name: James J. Neath
Title: Associate General Counsel


By: *Richard C. Godfrey, P.C.* (signature)

Name: Richard C. Godfrey, P.C.
Kirkland & Ellis LLP
Counsel for BP America Production Company

PLAINTIFFS' INTERIM CLASS COUNSEL

By: _____

Name: James Parkerson Roy

By: _____

Name: Stephen J. Herman

- 12

amend. No. 1 (Econ.)