## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 |
| | | SECTION: J |
| This document relates to: | * * | |
| | * | HONORABLE CARL J. BARBIER |
| Actions within B3 Pleading Bundle | * * | MAGISTRATE JUDGE SHUSHAN |
| and | * * | |
| 12-968, *Plaisance, et al. v. BP Exploration & Production Inc., et al.* | * * * | |

## PRELIMINARY APPROVAL ORDER

### [As to the Proposed Medical Benefits Class Action Settlement]

On April 18, 2012, Interim Class Counsel and the Plaintiffs' Steering Committee (collectively, "PSC") and BP Exploration & Production Inc. and BP America Production Company (collectively, "BP") filed the "*Deepwater Horizon* Medical Benefits Class Action Settlement Agreement" ("Proposed Settlement" or "Settlement Agreement").  (Rec. Doc. 6273). Two Motions accompanied this filing and are before the Court.  First, the PSC moved for an order (a) conditionally and preliminarily certifying the "Medical Benefits Settlement Class" for settlement purposes only, (b) appointing class representatives, and (c) appointing class counsel. (Rec. Doc. 6272).  BP does not oppose this motion.  Second, the PSC and BP jointly moved for an order (a) preliminary approving the Proposed Settlement, (b) approving the Medical Benefits Settlement Class Notice and Notice Plan, and directing notice, (c) preliminarily appointing Garret Resolution Group as Claims Administrator, (d) appointing the Honorable Jack C. Watson (ret.) as Guardian Ad Litem, (e) appointing Hilsoft Notifications as Class Notice Agent, (f)

approving the creation of a "qualified settlement fund," (g) tolling and staying the statutes of limitations for certain claims, (h) scheduling a fairness hearing, and (i) designating the period and method for class members to opt out of the class.  (Rec. Doc. 6267).[1]  On May 1, 2012, the PSC and BP filed a Joint Supplemental Motion Related to Preliminary Approval of the Medical Benefits Class Action Settlement, which is also before the Court.  (Rec. Doc. 6399).[2]

## A.    LITIGATION BACKGROUND

On April 20, 2010, a blowout, explosion, and fire occurred aboard the DEEPWATER HORIZON, a semi-submersible offshore drilling rig, as it was engaged in drilling activities on the "Macondo Well" on the Outer Continental Shelf off the coast of Louisiana.  These events led to eleven deaths, dozens of injuries, and a massive discharge of oil into the Gulf of Mexico that continued for nearly three months.  On August 10, 2010, the Judicial Panel on Multidistrict Litigation centralized all federal actions (excluding securities suits) in this Court pursuant to 28 U.S.C. § 1407.  Eventually, hundreds of cases with thousands of individual claimants would be consolidated with this Multidistrict Litigation ("MDL").

Pretrial Order 11/Case Management Order 1 (Rec. Doc. 569) consolidated and organized claims into several "pleading bundles."  Relevant here is the "B3 bundle," which, as clarified by Pretrial Order 25 (Rec. Doc. 983), includes ". . . all claims for personal injury and/or medical monitoring for exposure or other injury occurring after the explosion and fire of April 20, 2010." In accordance the Court's Pretrial Orders, the PSC filed the B3 Master Complaint on December

---

[1]  BP also requested that the Court stay or adjourn any trial proceeding (including Phase I of the Limitation and Liability Trial, 10-2771) that would or might determine BP's liability to the Medical Benefits Settlement Class. That request is not considered here.  (*See* Order of April 23, 2012, Rec. Doc. 6310).

[2]  The Joint Supplement Motion (1) requested that the Court approve the "Medical Settlement Trust;" (2) made minor edits to the proposed class notice;  and (3) proposed other amendments to the Proposed Settlement regarding the trustee of the Medical Settlement Trust, the Claims Administrator, and correcting a typo in the Specified Physical Conditions Matrix.  (*See* Rec. Doc. 6399-2).

15, 2010 (Rec. Doc. 881), and an First Amended B3 Master Complaint on March 30, 2011 (Rec. Doc. 1812).   Numerous Defendants filed motions to dismiss the First Amended B3 Master Complaint.  On September 30, 2011, the Court issued an Order and Reasons granting in part and denying in part these motions.  (Rec. Doc. 4159; *see also* Rec. Doc. 4209).  Phase one of a multi-phase trial in Transocean's Limitation and Liability Action, Case No. 10-2771, was scheduled for February 27, 2012.

In the 20 months that have passed since the JPML's centralization order, the parties have engaged in extensive discovery and motion practice, including taking 311 depositions, producing approximately 90 million pages of documents, and exchanging more than 80 expert reports on an intense and demanding schedule.  Depositions were conducted on multiple tracks and on two continents.  Discovery was kept on course by weekly discovery conferences before Magistrate Judge Shushan.  The Court also held monthly status conferences with the parties.

BP and the PSC report that for a period of 10 months the PSC and BP engaged in intense, arm's length settlement negotiations over the proposed Medical Benefits Class Settlement.[3]  The parties report 120 face-to-face negotiation meetings occurred during this time, in addition to numerous phone calls and "WebEx Conferences."  (Tr. of Prelim. Approval Hr'g, 4/25/12, p. 84, Rec. Doc. 6395).[4]  In early 2012, Magistrate Judge Shushan began mediating these discussions. Teams met or spoke on a nearly daily basis during this time to negotiate over every aspect of the Proposed Settlement, including:  standards of proof, levels of compensation, and conditions to be included in the Specified Physical Conditions Matrix; components, duration, and frequency of

---

[3]  BP and the PSC also negotiated over the "*Deepwater Horizon* Economic and Property Damages Settlement."  That settlement is the subject of another Order.

[4]  Apart from these meetings, there were also 145 face-to-face negotiation meetings regarding the proposed Economic and Property Damages Settlement.

the Periodic Medical Consultation Program; scientific support for plaintiffs' claims and BP's defenses; BP's alleged liability; the need for, components of, and appropriate funding for the Gulf Region Health Outreach Program; circumstances under which lawsuits for Later-Manifested Physical Conditions could be brought; the terms and provisions of the Agreement; notice documents, forms, and other exhibits; and procedures for resolving liens.  The parties report that they consulted with medical and scientific experts concerning the structure of benefits.

On February 26, 2012, the eve of the Limitation and Liability Trial, the Court adjourned proceedings for one week to allow the parties to make further progress on their settlement talks. (Rec. Doc. 5887).  On March 2, 2012, the Court was informed that BP and the PSC had reached an Agreement-in-Principle on the proposed settlements.  Consequently, the Court adjourned Phase I of the trial, because of the potential for realignment of the parties in this litigation and substantial changes to the current trial plan.  (Rec. Doc. 5955).  The parties continued to work on finalizing the details of the settlements.  On April 16, 2012, the PSC filed a new class action complaint to serve as the vehicle for the proposed Medical Benefits Settlement Class Action Settlement Agreement.  *See* No. 12-968, *Plaisance, et al. v. BP Exploration & Production Inc.*, *et al.*[5]  On April 18, 2012, the PSC and BP filed the instant Proposed Settlement (Rec. Doc. 6276) and related Motions (Rec. Docs. 6267,6272, 6399).

## B.    OVERVIEW OF THE PROPOSED SETTLEMENT[6]

The Proposed Settlement intends to resolve the personal and bodily injury claims of certain individuals related to the exposure of oil and/or chemical dispersant.  To effectuate the

---

[5]  The PSC similarly filed a new class action related to the proposed Economic and Property Damages Settlement.  *See* Rec. Doc. 6412, *Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production Inc., et al.*, No. 12-970.

settlement, the PSC seeks to conditionally certify the "Medical Benefits Settlement Class" pursuant to Federal Rule 23(a) and (b)(3).  The Class consists of:

> [A]ll Natural Persons who resided in the United States as of April 16, 2012, and who:
>
> 1) Worked as Clean-Up Workers at any time between April 20, 2010, and April 16, 2012;
>
> 2) Resided in Zone A [specified Gulf Coast beachfront areas] for some time on each of at least sixty days between April 20, 2010, and September 30, 2010 ("Zone A Resident"), and developed one or more Specified Physical Conditions between April 20, 2010, and September 30, 2010; or
>
> 3) Resided in Zone B [specified Gulf Coast wetlands areas] for some time on each of at least sixty days between April 20, 2010, and December 31, 2010 ("Zone B Resident").

(Proposed Settlement, § I.A., Rec. Doc. 6273-1).  Certain individuals are explicitly excluded from the class (for example, non-Clean-Up Workers that cleaned or reconditioned the tanks or holds used to carry hyrdrocarbons or petrochemicals are excluded).  The claims of those excluded from the proposed class and those who opt out of the class are unaffected by the Proposed Settlement.

The Proposed Settlement contains four types of benefits:  (1) qualifying class members are compensated for "Specified Physical Conditions," (2) a "Periodic Medical Consultation Program" is established for qualifying class members that will remain in place for 21 years, (3) a "Back-End Litigation Option" allows class members to engage in litigation or mediation of claims for certain conditions that may manifest in the future, and (4) a "Gulf Region Health Outreach Program" is created.

---

6   The Proposed Settlement is a lengthy document with many defined terms of art.  This summary is intended only to convey a general description of the Proposed Settlement.  Parties, claimants, etc. should refer to the Proposed Settlement (Rec. Doc. 6273, as amended by Rec. Doc. 6399) to understand any specific component or term.

Compensation for the "Specified Physical Conditions" ranges from $900 to $60,700, as determined by the "Specified Physical Conditions Matrix" (Exhibit 8 to the Proposed Settlement, Rec. Doc. 6273-10).   Compensation amounts are based on the class member's status as a Clean-Up Worker, Zone A, or Zone B resident; whether the Specified Physical Condition is acute or chronic; and the type of proof that the Class Member submits to the Claims Administrator.[7]   All but the lowest compensation level may be increased if there was overnight hospitalization and/or actual hospital expenses.   The PSC and BP represent that "The Specified Physical Conditions Matrix accounts for medical conditions that reasonably could arise from exposure to oil, other hydrocarbons, or other substances released from the MC252 Well and/or the *Deepwater Horizon* and its appurtenances, as well as exposure to dispersants or decontaminants used during the Response Activities."  (Memo. in Supp. of Mot. for Prel. Approval p.8, Rec. Doc. 6267-1 at 15). This is an uncapped, claims-made process.   Claims must be submitted within one year of the "Effective Date" of the Proposed Settlement. (Proposed Settlement § V.A, Rec. Doc. 6273-1).

The "Periodic Medical Consultation Program" is available to all Clean-Up Workers and Zone B Residents, as well as Zone A residents that qualify for compensation for a Specified Physical Condition.   Participants are entitled to an initial medical consultation followed by additional visits every three years during the 21-year life of the program.   The program includes "[c]omprehensive medical, occupational and environmental history, and physical examination including vision screening."  (Proposed Settlement, Ex. 12, Rec. Doc. 6273-14 at 2).   At the

---

[7] For example, Zone A or B Residents <u>without</u> medical records may receive $900 if they experienced a listed "Acute Condition," provided they submit declarations under oath attesting to the conditions or symptoms within the applicable timeframe, identifying the route, circumstances, and dates of alleged exposure, and providing certain additional corroborating information.   If these residents have medical records to support the "Acute Condition," they may receive $5,450, plus additional payments for any overnight hospitalization and actual hospital expenses.

physician's discretion, specified blood, urine, cardiac, and respiratory tests may also be performed.

The "Back-End Litigation Option" provides a mediation/litigation process for class members that manifest a physical condition in the future claimed to be due to exposure to oil and/or chemical dispersant.  Class members must elect between choosing relief under this option or any applicable workers' compensation law.   If the class member elects to proceed with the Back-End Litigation Option, he or she must notify BP within four years of either the first diagnosis of the condition or the "Effective Date" of the Proposed Settlement, whichever is later. BP then has the option to mediate the claim.  If mediation does not resolve the claim, or if BP decides not to mediate, then the class member has the right to file suit.  In such litigation, certain issues are stipulated and may not be litigated (e.g., exposure of the class member to oil and/or dispersant).  Other issues, such as causation, would have to be proven.  Punitive damages are not available.

Finally, under the "Gulf Region Health Outreach Program" BP will provide $105 million of grants in Gulf Coast communities in Louisiana, Mississippi, Alabama, and the Florida Panhandle to (1) expand and improve access to health care in underserved areas; (2) address behavioral and mental health needs, expertise, capacity, and literacy; (3) train community health workers on peer listening, community resiliency, and other issues; and (4) expand and improve environmental health expertise, capacity, and literacy.   BP will also fund the creation and maintenance of a publicly accessible and searchable online library of health and environmental-related materials related to the "*Deepwater Horizon* Incident" and "Response Activities."

BP will pay all costs associated with the Proposed Settlement. BP has also agreed to pay class counsel's fees, expenses, and costs, equivalent to 6% of the value of benefits actually

provided to class members, provided that this amount combined with the similar amount awarded under the Economic and Property Damages Settlement does not exceed $600 million. The PSC and BP note that these amounts were negotiated only after full agreement was reached as to all other terms of the Proposed Settlement.

In exchange for the benefits provided to Class Members, the proposed Settlement provides for a comprehensive release of specified physical and bodily injury claims (excepting claims made in accordance with the "Back-End Litigation Option") against BP and other parties and entities involved in the *Deepwater Horizon* Incident, except for Transocean and Halliburton. Class members would agree not to accept or attempt to recover any compensatory damages from Transocean and Halliburton, but they preserve their ability to seek punitive damages from these parties.

## C.   LEGAL STANDARDS

### 1.   Preliminary Approval

Federal Rule of Civil Procedure 23 governs class actions, including the requirements for class certification and settlement.   "'Before an initial class ruling, a proposed class settlement may be effectuated by stipulation of the parties agreeing to a temporary settlement class for purposes of settlement only.'"   *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2012 WL 92498, at *8 (E.D. La. Jan. 10, 2012) (quoting 4 William B. Rubinstein et al., *Newberg on Class Actions* § 11:22 (4th ed. 2010)); *see also Manual for Complex Litigation (Fourth)* [MCL 4th] § 21.612 (2004) ("Parties quite frequently enter into settlement agreements before a decision has been reached whether to certify a class.").   "Settlement classes—cases certified as class actions solely for settlement—can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits."   MCL 4th § 21.612.

However, even in this context the requirements for class certification in Rule 23(a) and (b) must be satisfied, except that a court need not inquire whether the case, if tried, would present intractable management problems under Rule 23(b)(3)(D). *Id.* § 22.921 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997)). Additionally, the terms of the proposed settlement must comport with Rule 23(e).

Courts have developed a two-step process when considering a proposed settlement of a class action. *See Chinese-Manufactured Drywall*, 2012 WL 92498, at *7 (citations omitted). First, if the class was not previously certified, the Court "'should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).'" *Id.* (quoting MCL 4th § 21.632). Also, the Court must "'make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.'" *Id.* (quoting MCL 4th § 21.632). Second, if preliminary approval is granted and following the notice and opt-out period, the Court holds a Rule 23(e)(2) final fairness hearing to decide whether to approve or disapprove the settlement. *See id.* Final determination on class certification is also reserved for the final fairness review.

### 2.      Rule 23(a) and (b) Criteria for Class Certification

With respect to class certification, Rule 23(a) requires that:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "The first two requirements focus on the characteristics of the class; the second two focus instead on the desired characteristics of the class representatives." *Chinese-*

*Manufactured Drywall*, 2012 WL 92498 at *8 (quotations and citations omitted).   This assures that courts will identify the common interests of class members and evaluate the named plaintiffs' and class counsel's ability to fairly and adequately protect class interests.  *Id.*

As to Rule 23(a)(1)'s "numerosity" requirement, the mover typically must show that "joinder is impracticable through 'some evidence or reasonable estimate of the number of purported class members.'"  *Id.* at *9 (quoting *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D.La.2006)).   However, "a good-faith estimate of the class size is sufficient when the precise number of class members is not readily ascertainable."   1 William B. Rubenstein, *Newberg on Class Actions* §§ 3:12, 3:13 (5th ed. 2011).  Numerosity frequently receives summary treatment and is often uncontested.  *Id.*  Rule 23(a)(2)'s "commonality" requirement is not demanding; it is met "when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members."  *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (quotations and citations omitted).   Rule 23(a)(3)'s "typicality" requirement is also not demanding; it "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Id*.   The typicality inquiry does not test whether the class members suffered varying harms; diversity in damages "will not affect their legal or remedial theories, and thus does not defeat typicality."  *Id.*  Rule 23(a)(4)'s "adequacy" requirement is satisfied where:   "(1) the named plaintiffs' counsel will prosecute the action zealously and competently; (2) the named plaintiffs possess a sufficient level of knowledge about the litigation to be capable of taking an active role in and exerting control over the prosecution of the litigation; and (3) there are no conflicts of interest between the named plaintiffs and the absent class members."  *Hamilton v. First Am. Title Ins. Co.*, 266 F.R.D. 153, 163-64 (N.D. Tex., 2010); *see also Feder v. Elec. Data Sys. Corp.*, 429

F.3d 125, 129 (5th Cir. 2005).  Finally, Rule 23(a) also contains an implied requirement that the

class be adequately defined and clearly ascertainable.  *Union Asset Mgmt. Holding A.G. v. Dell,*

*Inc.*, 669 F.3d 632, 639 (5th Cir. 2012).

As mentioned, in addition to the requirements of Rule 23(a), one of the subsections of

Rule 23(b) must be satisfied in order to be certified as a class.  Here, the PSC moves under Rule

23(b)(3), which provides:

> A class action may be maintained if Rule 23(a) is satisfied and if:
> . . .
> (3) the court finds that the questions of law or fact common to class members
> predominate over any questions affecting only individual members, and that a
> class action is superior to other available methods for fairly and efficiently
> adjudicating the controversy. The matters pertinent to these findings include:
>> (A) the class members' interests in individually controlling the prosecution or
>> defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy already
>> begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigation of the
>> claims in the particular forum; and
>> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).   "To succeed under Rule 23(b)(3), Plaintiffs must sufficiently

demonstrate both predominance of common class issues and that the class action mechanism is

the superior method of adjudicating the case."  *Chinese-Manufactured Drywall*, 2012 WL 92498

at *9 (citations and quotations omitted).   The predominance inquiry tests "whether proposed

classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S.

at 623 (citation omitted).   "To predominate, common issues must form a significant part of

individual cases."  *In re Vioxx*, 239 F.R.D. at 460 (citing *Mullen*, 186 F.3d at 626).   Because

class certification is for settlement-only purposes, the Court need not inquire whether the case, if

tried, would present intractable management problems.  *Amchem*, 521 U.S. at 620.  "Together

subsection (a) and (b) requirements insure that a proposed class has sufficient unity so that the

absent class members can fairly be bound by decisions of the class representatives.  *Chinese-Manufactured Drywall*, 2012 WL 92498 at *8 (citations and quotations omitted).

      **3.**      **Rule 23(e) Criteria for Preliminary Approval of a Proposed Class Settlement**

Turning to the terms of the settlement, Rule 23(e) places the burden of persuasion on the movers that the proposed settlement is "fair, reasonable, and adequate."  *Id.* at *7.   However, the standards for granting preliminary approval are not as stringent as those applied to a motion for final approval:  "The questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *In re OCA, Inc. Securities & Derivative Litig.*, No. 05-2165, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008) (quotations and citations omitted); *see also In re Traffic Exec. Ass'n-E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980) (describing preliminary approval as "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness") (citations omitted).  If the proposed settlement "discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *OCA,* 2008 WL 4681369, at *11 (citations omitted).  "If the Court finds portions of the proposed settlement problematic, it may indicate preliminary disapproval of the agreement and recommend that the parties make certain revisions or modifications."  *Chinese-Manufactured Drywall*, 2012 WL 92498, at *7.

Courts have held that "approval of settlement class actions under Rule 23(e) requires closer judicial scrutiny than approval of settlements reached only after class certification has been litigated through the adversary process."  MCL 4th § 21.612.  However, "[e]xtended

litigation between or among adversaries," as occurred here, "might bolster confidence that the settlement negotiations were at arm's length."   *Id.*   "If, by contrast, the case is filed as a settlement class action or certified for settlement with little or no discovery, it may be more difficult to assess the strengths and weaknesses of the parties' claims and defenses, to determine the appropriate definition of the class, and to consider how class members will actually benefit from the proposed settlement."   *Id.*; *see also id.* § 22.921 ("If the case has been litigated extensively, the judge may have sufficient reliable information to determine whether the class should be certified and whether the settlement terms are the fair, reasonable, and adequate result of arms-length negotiations.").

### 4.      Rule(c)(2)(B) and (e)(1) Criteria Regarding Notice

Where parties seek certification of a settlement class pursuant to Rule 23(b)(3) and approval of a settlement pursuant to Rule 23(e), notice of the class settlement must meet the requirements of both Rule 23(c)(2)(B) and Rule 23(e)(1). *In re CertainTeed Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 480 (E.D. Pa. 2010); *accord In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 231 (S.D. W. Va. 2005); *see also* MCL 4th § 21.633 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined.").   Rule 23(c)(2)(B) states:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. Proc. 23(c)(2)(B).  The notice requirements of Rule 23(e)(1) are less stringent:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal.

Fed. R. Civ. P. 23(e)(1).  Subject to the minimum requirements of due process, notice under Rule (e)(1) gives the Court discretion over the form and manner of notice.  *See Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1059 (5th Cir. 1979).  Significantly, compliance with Rule 23(c)(2)(B) can satisfy the Due Process Clause.  *See In re Enron Corp. Secs., Derivs., & "ERISA" Litig.*, No. MDL-1446, 2008 WL 4178151, at *2 (S.D. Tex. Sept. 8, 2008).

## D.    OBJECTIONS

Non-settling Defendant Halliburton Energy Services, Inc. (Rec. Doc. 6350) and Plaintiff Malcolm Coco (Rec. Doc. 6318) oppose preliminary approval and/or preliminary and conditional certification of the settlement class.  The Court has considered these arguments.  Assuming these parties have standing to object,[8] the Court finds these objections do not preclude granting preliminary approval and preliminary class certification.

## F.    ORDER WITH REASONS[9]

The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 1331 and 1333 and also has jurisdiction over the parties.  Having consider the record of these proceedings,

---

[8]   *See* 4 William B. Rubenstein, et al., *Newberg on Class Actions* § 11:55 (4th ed. 2011).

[9]   Terms with initial capital letters used in this Order shall have the meanings ascribed to the fully capitalized rendering of such terms in the Medical Benefits Class Action Settlement Agreement (Rec. Doc. 6273), unless otherwise defined herein.

the arguments and recommendations of counsel for the moving parties, and the requirements of law, the Court GRANTS the parties' motions as follows:

IT IS HEREBY ORDERED:

## I. Preliminary Certification of Class for Settlement Purposes Only.

1.        On a preliminary basis for settlement purposes only, the Medical Benefits Settlement Class is certified under Federal Rule of Civil Procedure Rule 23(b)(3) and shall consist of:

All Natural Persons who resided in the United States as of April 16, 2012, and who:

(a)     Worked as Clean-Up Workers at any time between April 20, 2010, and April 16, 2012; or

(b)     Resided in Zone A for some time on each of at least sixty days between April 20, 2010, and September 30, 2010 ("Zone A Resident"), and developed one or more Specified Physical Conditions between April 20, 2010, and September 30, 2010; or

(c)     Resided in Zone B for some time on each of at least sixty days between April 20, 2010, and December 31, 2010 ("Zone B Resident").[10]

Excluded from the Medical Benefits Settlement Class are the following:

(a)     Any Medical Benefits Settlement Class Member who timely and properly elects to be excluded from the Medical Benefits Settlement Class ("Opt Outs") under the procedures set forth in Paragraph 29 of this Order;

(b)     Any person employed by BP Entities at any time between April 20, 2010, and April 16, 2012;

(c)     The Court, including any sitting judges on the United States District Court for the Eastern District of Louisiana and their law clerks serving on or after April 20, 2010, through April 16, 2012;

(d)     Any person who was on the *Deepwater Horizon* on April 20, 2010;

(e)     Any person who has previously asserted and released his or her claims against BP relating to any illnesses or injuries allegedly suffered as a result of exposure to oil, other hydrocarbons, or other substance released from

---

[10]   Zone A includes specified Gulf Coast beachfront areas and Zone B includes specified Gulf Coast wetlands areas. Both Zones are clearly and objectively described in the Medical Settlement Agreement and Exhibit 9 thereto.

the MC252 Well and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the Response Activities, including those persons who have provided final releases to the GCCF in exchange for payment from the GCCF for such illnesses or injuries; and

(f)     Any person who is a Zone A Resident or Zone B Resident, but not a Clean-Up Worker, and who worked in one or more of the following capacities for a cumulative duration of at least five years prior to April 20, 2010:

    (i)     Cleaning or reconditioning of the tanks or holds of barges, tankers or lighters, tanker trucks, tanker rail cars, or any other tank (stationary or mobile) used to hold hydrocarbons or petrochemicals;

    (ii)     Storage, handling, or cleaning of naturally occurring radioactive materials ("NORMs"), including radionuclides;

    (iii)     Storage, transportation, distribution, or dispensing of gasoline, diesel, jet fuel, kerosene, motor fuels, or other hydrocarbon-based fuels at any bulk storage facility (not including gas stations or gas station convenience stores), bulk plant, or bulk terminal facility that stores hydrocarbons or petrochemicals;

    (iv)     Loading or unloading bulk crude oil or petroleum hydrocarbons onto or from trucks, ships, barges, or other vessels; or

    (v)     Tar distillation.

2.     The Court preliminarily and conditionally finds, for settlement purposes only, that the Medical Benefits Settlement Class satisfies the following requirements of Federal Rule of Civil Procedure Rule 23(a) and Rule 23(b)(3):

(a)     <u>Ascertainability</u>:   The Class, as defined above, is discrete and ascertainable.   It is objectively defined by reference to geographic boundaries and other criteria that are known to or knowable by Class Members, such that individuals can determine whether are within the Class.

(b)     <u>Numerosity</u>:   The parties estimate that there are approximately 90,000 Clean-Up Workers and 105,000 Zone A and Zone B Residents.   In addition, approximately 16,000 individuals have filed Short Form Joinders asserting claims for personal injury and/or bodily injury as a result of the *Deepwater Horizon* Incident, and more such claims continue to be filed. The Medical Benefits Settlement Class is so numerous that joinder of all

members is impracticable.    Thus, the Rule 23(a)(1) numerosity requirement has been met.

(c)    Commonality:  There are questions of fact or law common to the Medical Benefits Settlement Class.  Common questions of fact exist because the *Deepwater Horizon* Incident was the common event giving rise to the claims of the Medical Benefits Settlement Class Members.  Common questions of law exist because the claims of the Medical Benefits Settlement Class are governed by General Maritime Law.  BP's alleged liability for the oil spill is an issue central to the validity of each one of the claims in this case, and the answer to this and other common questions of fact and law will drive the resolution of the litigation.  The commonality requirement of Rule 23(a)(2) is satisfied.

(d)    Typicality:  The Medical Benefits Class Representatives are all members of the Medical Benefits Settlement Class, and their claims arise from the same course of conduct and share the same legal theory as the claims of the Medical Benefits Settlement Class Members.  Each of the Medical Benefits Class Representatives will make legal and factual arguments similar to those of the Medical Benefits Settlement Class Members.  The claims of the Medical Benefits Class Representatives are typical of those of the Medical Benefits Settlement Class and satisfy Rule 23(a)(3).

(e)    Adequacy:  The Medical Benefits Class Representatives assert claims that are representative of the claims of the Medical Benefits Settlement Class.  As such, even though the claims may not be identical to every claim of every Medical Benefits Settlement Class Member, the proposed class representatives can fairly and adequately represent the Medical Benefits Settlement Class.  The adequacy requirement also considers counsel for the Medical Benefits Settlement Class.  Here, all of the Medical Benefits Class Counsel have substantial experience in prosecuting environmental, mass tort, and complex class actions, and have dedicated substantial resources to the prosecution of this action.  The adequacy requirement of Rule 23(a)(4) is satisfied.

(f)    Predominance:  Questions of fact or law common to the Medical Benefits Settlement Class Members predominate over any questions affecting only individual members.  The claims of the Medical Benefits Settlement Class Members arose from a common event—the *Deepwater Horizon* Incident—and the defendants' actions and decisions relating to the blowout of the MC252 Well, the capping of the MC252 Well, containment of the oil spill, use of dispersants, and clean-up activities involved a single course of conduct.    Moreover, the claims of the Medical Benefits Settlement Class are based on General Maritime Law, a single body of law.  The resolution of defendants' alleged liability for the *Deepwater Horizon* Incident, and whether the oil and dispersants were capable of causing the injuries claimed, will either prove or disprove essential

17

elements of each Medical Benefits Settlement Class Member's claims. These complex and important common issues predominate over the issues that must be determined on an individual basis. The predominance requirement of Rule 23(b)(3) is satisfied.

(g)     Superiority:   A class action is superior to other available methods for fairly and efficiently adjudicating this controversy, including ongoing litigation and multiple trials. Repetitive individual litigation and trials of BP's alleged conduct by all members of the Medical Benefits Settlement Class would be inefficient. Moreover, the cost of litigating the claims in this complex litigation on a case-by-case basis would be very expensive for many Medical Benefits Class Members, and likely consume a significant amount of their potential recoveries, while the proposed settlement provides certain benefits that, in some cases, could not even be obtained by class members through litigation. Piecemeal litigation and the individual re-litigation of the same facts and legal issues in thousands of cases would also burden and unnecessarily tax the limited resources of the judiciary. The consideration of common questions of fact and law in a class action will conserve judicial resources and promote the fair and efficient resolution of the Medical Benefits Class Members' claims. Accordingly, the superiority requirement of Rule 23(b)(3) is satisfied.

## II. Preliminary Approval of the Medical Benefits Class Settlement.

3.     The Court preliminarily approves the Medical Benefits Class Action Settlement (the "Settlement") as set forth in the Medical Settlement Agreement (Rec. Doc. 6273-1), as amended by the First Amendment to the Settlement that is attached as Exhibit C to the Memorandum in Support of the Joint Supplemental Motion of Plaintiffs and BP Related to Preliminary Approval of the Medical Benefits Class Action Settlement (Rec. Doc. 6399). The Court specifically finds that the proposed Settlement (i) is fair, reasonable, and adequate based on the Court's preliminary inquiry; (ii) is the result of protracted and intense negotiations conducted by the parties at arms' length and in good faith, and is not the result of collusion; (iii) discloses no reason to doubt its fairness and has no obvious deficiencies; (iv) does not improperly grant preferential treatment to the Medical Benefits Class Representatives or segments of the class; and (v) falls within the range of possible judicial approval. Further, the

18

Court is satisfied that, under the terms of the Medical Settlement Agreement, Medical Benefits Settlement Class Members who Opt Out or who possess reserved claims will be able to pursue those claims effectively outside the Settlement.

4.      The Court further finds that, given its preliminary approval of the Settlement, it is appropriate to send notice to the Medical Benefits Settlement Class Members and to conduct a hearing pursuant to Federal Rule of Civil Procedure 23(e) to consider whether the Settlement should be finally approved.

5.      The Court therefore directs that a Fairness Hearing be scheduled for **November 8, 2012 at 8:30 a.m.** in Courtroom C268 of the United States District Court for the Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana, 70130, to consider the fairness, reasonableness, and adequacy of the Settlement under Federal Rule of Civil Procedure 23(e)(2) and to determine whether a Final Order And Judgment should be entered.

6.      Motion papers in support of settlement and class certification shall be due on **August 13, 2012**.  Reply submissions shall be due on **October 22, 2012**.

### III. Approval of Class Notice.

7.      The Court approves the form and content of the Medical Benefits Settlement Class Notice Plan and its attachments (to the extent they have not been revised by the Parties' supplemental filing), substantially in the form of Exhibit 2 to the Declaration of Cameron R. Azari, Esq., which is itself Exhibit B to the parties' Memorandum in support of their Joint Motion for Preliminary Approval of Proposed Medical Benefits Class Action Settlement, Approval of Class Notice, and Related Matters, as satisfying the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e)(1) and due process.  The Court also approves the form and content of the Medical Benefits Settlement Class Notice, attached as exhibits to the

Supplemental Declaration of Cameron R. Azari, Esq., which is itself Exhibit B to the Memorandum in Support of the Joint Supplemental Motion of Plaintiffs and BP Related to Preliminary Approval of the Medical Benefits Class Action Settlement, as satisfying the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e)(1) and due process.

8.     The Medical Benefits Settlement Class Notice clearly and concisely states in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members.   *See* Fed. R. Civ. P. 23(c)(2)(B).

9.     The Notice Plan contemplates direct mailed notice to identifiable individual class members and, to the extent known, their attorneys.  In addition, the Notice Plan provides for a broad-reaching published Notice in numerous national and local media, with a notice effort covering the entire United States, primarily focusing on the main impact states of Louisiana, Alabama, and Mississippi, and enumerated counties in Texas and Florida.  Furthermore, banner notice ads will appear on highly trafficked websites.  There will also be a case website where potential class members can obtain additional information and documents.  This Notice Plan provides the best notice practicable under the circumstances pursuant to Fed. R. Civ. P. 23(c)(2)(B).

10.     In addition, the Court finds that the Notice and the Notice Plan comply with Fed. R. Civ. P. 23(e)(1)'s requirement that the Court direct notice to Class Members in a reasonable

manner.  The notice is reasonably calculated to inform interested parties of the pendency of the Settlement and afford them an opportunity to present their objections.

11.      In conclusion, the Court finds that the Medical Benefits Settlement Class Notice and the Medical Benefits Settlement Class Notice Plan will provide notice in a reasonable manner to class members who would be bound by the Settlement, including individual notice to all members who can be identified through reasonable effort.  The Medical Benefits Settlement Class Notice and the Medical Benefits Settlement Class Notice Plan constitute the best notice that is practicable under the circumstances.

### IV. Appointment and Duties of Class Notice Agent, Claims Administrator, Class Representatives, Class Counsel, and Guardian Ad Litem.

12.      The Court appoints Hilsoft Notifications to act as the Medical Benefits Settlement Class Notice Agent.  This Court may, as it deems appropriate, request reports or information from the Notice Agent.  The Notice Agent shall be responsible for reporting and providing information to the Court at such frequency and in such manner as the Court directs.  The Court shall have ongoing and exclusive jurisdiction over the Notice Agent and shall retain such jurisdiction through and after the Medical Settlement Agreement's Effective Date, in the event it occurs.

13.      The Court preliminarily and conditionally appoints The Garretson Firm Resolution Group, Inc. d/b/a Garretson Resolution Group as the Claims Administrator to implement and administer the Medical Settlement Agreement in accordance with its terms and conditions.  Such appointment shall remain in effect until the date on which the Court issues a Final Order And Judgment approving the Settlement, in the event that occurs, or the date the Agreement terminates, whichever occurs first.

14.     The Court directs Garretson Resolution Group to take all steps that are reasonably necessary to implement and provide for prompt administration of the Settlement under the terms of the Medical Settlement Agreement, including, but not limited to, the duties described in Section XXI of the Agreement.  This Court shall have ongoing and exclusive jurisdiction over the Claims Administrator, and shall retain such jurisdiction until the date on which the Court issues a Final Order And Judgment approving the Settlement, in the event that occurs, or the date the Agreement terminates, whichever occurs first.

15.     Garretson Resolution Group and Hilsoft Notifications are directed to implement the Medical Benefits Settlement Class Notice Plan and to disseminate the Medical Benefits Settlement Class Notice in accordance with that Notice Plan.

16.     The Court directs Medical Benefits Class Counsel, BP, and the Claims Administrator to take all steps reasonably necessary to effectuate the terms of the Medical Settlement Agreement.

17.     The Court preliminarily and conditionally appoints the following as Medical Benefits Class Representatives: Kip Plaisance, Jason Perkins, Camille Warren, Christian Pizani, Max Plaisance, Benjamin Judah Barbee, Cornelius Divinity, Janice Brown, Carlton Caster, George Baker, and Duffy Hall.

18.     The Court preliminarily and conditionally appoints Medical Benefits Class Counsel as follows:

    a.   Plaintiffs' Co-Liaison Counsel and Interim Class Counsel, Stephen J. Herman and James Parkerson Roy, as set forth in Pretrial Order 46 (Rec. Doc. 4226), are hereby appointed Medical Benefits Class Counsel and Lead Class Counsel; and

b.   The following counsel, previously appointed to serve on the Plaintiffs' Steering Committee and to serve the common benefit, as set forth in Pretrial Orders Nos. 8, 9 and 46 (Rec. Docs. 506, 508, 4226), are hereby appointed Medical Benefits Class Counsel:

| | |
|---|---|
| Brian H. Barr | Rhon E. Jones |
| Jeffery A. Breit | Matthew E. Lundy |
| Elizabeth J. Cabraser | Michael C. Palmintier |
| Philip F. Cossich, Jr. | Joseph F. Rice |
| Robert T. Cunningham | Paul M. Sterbcow |
| Alphonso Michael Espy | Scott Summy |
| Calvin C. Fayard, Jr. | Mikal C. Watts |
| Robin L. Greenwald | Conrad S. P. Williams |
| Ervin A. Gonzalez | |

19.   The Honorable Jack C. Watson (ret.) is appointed as the Guardian Ad Litem for Medical Benefits Settlement Class Members who are minors, lack capacity, or are incompetent, in accordance with Section III of the Medical Settlement Agreement and subject to appropriate commercial terms.  Such appointment shall remain in effect until the entry of a Final Order And Judgment, if that event occurs, or the date the Agreement terminates, whichever occurs first.

20.   The Guardian Ad Litem shall make an independent investigation into the terms and provisions of the Medical Settlement Agreement on behalf of those class members who are minors, lack capacity, or are incompetent, as described in Section III.C.2 of the Agreement. Based on that investigation, prior to the Fairness Hearing, the Guardian Ad Litem shall by **October 8, 2012** report to the Parties and make a recommendation to this Court as to the fairness of the Agreement with respect to those class members who are minors, lack capacity, or are incompetent, in accordance with Section III.C.2.

**V. Approval of Medical Settlement Trust Agreement, Medical Settlement Trust, and Appointment of Trustees.**

21.      The Court approves the Medical Settlement Trust Agreement, which is attached as Exhibit A to the Memorandum in Support of the Joint Supplemental Motion of Plaintiffs and BP Related to Preliminary Approval of the Medical Benefits Class Action Settlement (Rec. Doc. 6399); the creation of the Medical Settlement Trust; and the appointment of Matthew L. Garretson as Trustee and J.P. Morgan Trust Company of Delaware as Directed Trustee of the Medical Settlement Trust.[11]   The Court finds that the Medical Settlement Trust fulfills the requirements for a qualified settlement fund under § 468B(d)(2) of the Internal Revenue Code and Treasury Regulation § 1.468B–1.   The Court shall have ongoing jurisdiction over the Medical Settlement Trust, the Trustee, and the Directed Trustee, and shall retain such jurisdiction through and after the Medical Settlement Agreement's Effective Date, in the event it occurs.

**VI. Procedures and Deadlines for Objecting, Opting Out, or Appearing at the Fairness Hearing.**

22.      A Medical Benefits Settlement Class Member may present written objections, if any, explaining why he or she believes the Settlement should not be approved by the Court as fair, reasonable, and adequate.

23.      A Medical Benefits Settlement Class Member may object on his or her own behalf or through an attorney hired at that Medical Benefits Settlement Class Member's own expense.  No later than **August 31, 2012**, objectors not represented by an attorney must (1) serve on the Medical Benefits Class Counsel and BP's Counsel, by United States mail, a written statement of the objection(s), and (2) file with the Court a written statement of the objection(s).

---

[11] "Trustee" and "Directed Trustee" have the meanings ascribed to such terms in the Medical Settlement Trust Agreement.

24.     An attorney asserting objections on behalf of a Medical Benefits Settlement Class Member must (1) file a notice of appearance with the Court by **August 31, 2012**; (2) file a sworn declaration attesting to the representation of each Medical Benefits Settlement Class Member on whose behalf the objection is being filed or a copy of the contract (to be filed *in camera*) between that attorney and each such Medical Benefits Settlement Class Member by **August 31, 2012**; and (3) serve a copy of the notice of appearance and statements on the Medical Benefits Class Counsel and BP's Counsel, by United States mail, by **August 31, 2012**; (4) serve on the Medical Benefits Class Counsel and BP's Counsel, by United States mail a written statement of the objection(s) by **August 31, 2012**; and (5) file with the Court a written statement of the objection(s) by **August 31, 2012**.

25.     The written statement of objection(s) filed by a Medical Benefits Settlement Class Member or, if represented, his or her counsel, must include (1) written evidence establishing that the individual is a Medical Benefits Settlement Class Member; (2) a detailed statement of the Medical Benefits Settlement Class Member's objection(s), as well as the specific reasons, if any, for each such objection, including any evidence and legal authority the Medical Benefits Settlement Class Member wishes to bring to the Court's attention, and any evidence the Medical Benefits Settlement Class Member wishes to introduce in support of his or her objection(s); (3) the Medical Benefits Settlement Class Member's address and telephone number; and (4) any other supporting papers, materials, or briefs the Medical Benefits Settlement Class Member wishes the Court to consider when reviewing the objection.

26.     A Medical Benefits Settlement Class Member or, if represented, his or her attorney, seeking to make an appearance at the Fairness Hearing must serve on the Medical

Benefits Class Counsel and BP's Counsel, by United States mail, and file with the Court, by **August 31, 2012**, a written notice of his or her intention to appear at the Fairness Hearing.

27.     If a Medical Benefits Settlement Class Member or an attorney acting on behalf of a Medical Benefits Settlement Class Member fails to comply with Paragraphs 22-25 of this Order, that Medical Benefits Settlement Class Member shall waive and forfeit any and all rights he or she may have to object to the Medical Benefits Class Action Settlement, and shall be bound by the terms of the Agreement upon the Effective Date, if that event occurs.

28.     Submission of a Proof of Claim Form shall not waive a Medical Benefits Settlement Class Member's right to object to the Settlement so long as he or she complies with Paragraphs 22-25 of this Order.

29.     The Court directs that any Medical Benefits Settlement Class Member wishing to exclude himself or herself from the Medical Benefits Settlement Class must submit a written request stating "I wish to exclude myself from the Medical Benefits Settlement Class" (or substantially similar clear and unambiguous language), and also containing that Medical Benefits Settlement Class Member's printed name, address, phone number, and date of birth, and enclosing a copy of his or her driver's license or other government-issued identification.  The written request to Opt Out must be signed by the Medical Benefits Settlement Class Member seeking to exclude himself or herself from the Medical Benefits Settlement Class or, where applicable, by his or her Authorized Representative.  The written request to Opt Out must be sent to the Claims Administrator, properly addressed and postmarked no later than **October 1, 2012**. The Claims Administrator must provide copies of all completed requests to Opt Out to the Medical Benefits Class Counsel and BP's Counsel within 7 days of receipt of each such request.

30.     All Medical Benefits Settlement Class Members who do not timely and properly Opt Out from the Medical Benefits Settlement Class shall in all respects be bound by all terms of the Medical Settlement Agreement and the Final Order And Judgment, and shall be permanently barred and enjoined from commencing, asserting, and/or prosecuting any and all Released Claims against any Released Party, if the Effective Date occurs.

31.     Prior to the entry of a Final Order And Judgment, any Natural Person may revoke his or her Opt Out from the Medical Benefits Settlement Class by submitting a written request to the Claims Administrator stating, "I wish to revoke my request to be excluded from the Medical Benefits Settlement Class" (or substantially similar clear and unambiguous language), and also containing the Natural Person's printed name, address, phone number, social security number, and date of birth.  The written request to revoke an Opt Out must be signed by the Natural Person or, where applicable, his or her Authorized Representative, seeking to revoke his or her Opt Out.

**VII.  Tolling of the Statute of Limitations.**

32.     The Court tolls and stays the statutes of limitation applicable to any and all claims or causes of action for Released Claims that have been or could be asserted by or on behalf of any Medical Benefits Settlement Class Members unless and until they Opt Out of the Medical Benefits Settlement Class or the Medical Settlement Agreement is terminated pursuant to Section XIV.

**VIII.    Timeline**

33.     For convenience, pertinent deadlines are repeated here:

> (a)     Notice to be disseminated in accordance with the Notice Plan
> (b)     Motion papers in support of settlement to be filed by August 13, 2012
> (c)     Objections to be filed by August 31, 2012
> (d)     Opt-Out period to be closed by October 1, 2012
> (e)     Guadian Ad Litem's Report filed by October 8, 2012
> (f)     Reply submissions to be filed by October 22, 2012
> (g)     Fairness hearing on November 8, 2012 at 8:30 a.m.

**IT IS SO ORDERED.**

New Orleans, Louisiana, this 2nd day of May, 2012.

_____
United States District Judge