# EXHIBIT 2

# GRANT AGREEMENT

## PREAMBLE

This Grant Agreement ("GRANT AGREEMENT"), dated as of _____, 2012, is made and entered into by and among the CLAIMS ADMINISTRATOR (currently, Garretson Firm Resolution Group, Inc. d/b/a Garretson Resolution Group), BP Exploration & Production Inc., and BP America Production Company (collectively, "BP"), the MEDICAL BENEFITS CLASS COUNSEL, and the [NAME OF ENTITY GRANTEE], with [NAME OF PROJECT LEADER] as the Project Leader (collectively, the [Name of ENTITY GRANTEE] and [Name of Project Leader] are the "GRANTEE") (the CLAIMS ADMINISTRATOR, BP, MEDICAL BENEFITS CLASS COUNSEL, and GRANTEE, each a "PARTY," and collectively referred to as the "PARTIES").

Unless otherwise provided in this GRANT AGREEMENT, all capitalized terms in this GRANT AGREEMENT shall have the meanings set forth in the Medical Benefits Class Action Settlement Agreement executed on _____, 2012, as may be amended from time to time (the "MEDICAL SETTLEMENT AGREEMENT"), a copy of which is attached as Exhibit A.

## RECITALS

A. This GRANT AGREEMENT is part of the GULF REGION HEALTH OUTREACH PROGRAM that is established, under the MEDICAL SETTLEMENT AGREEMENT, to expand capacity for and access to high quality, sustainable, community-based healthcare services, including primary care, behavioral and mental health care, and environmental medicine, in the Gulf Coast. The GULF REGION HEALTH OUTREACH PROGRAM consists of four integrated GULF REGION HEALTH OUTREACH PROJECTS, including the project funded by this GRANT AGREEMENT, and a project to establish a GULF REGION HEALTH OUTREACH PROGRAM LIBRARY.

B. The PARTIES are entering into this GRANT AGREEMENT to implement activities that form a part of the GULF REGION HEALTH OUTREACH PROGRAM and hereby incorporate into this GRANT AGREEMENT the terms and conditions of the MEDICAL SETTLEMENT AGREEMENT applicable to the GULF REGION HEALTH OUTREACH PROGRAM.

C. Pursuant to the MEDICAL SETTLEMENT AGREEMENT, BP and the MEDICAL BENEFITS CLASS COUNSEL have awarded to the GRANTEE a grant in the amount of $_____ (the "GRANT") to [BRIEF DESCRIPTION OF PROJECT] (the "[NAME OF PROJECT]" or "PROJECT") as detailed in the project proposal and budget attached as Exhibit B (the "PROPOSAL").

D. This GRANT shall be paid in accordance with the payment schedule set forth in Section 3 of this GRANT AGREEMENT and the terms and conditions of the MEDICAL SETTLEMENT AGREEMENT.

E.  The GRANT TERM of this GRANT AGREEMENT is from the date of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER through the due date of the FINAL REPORT, as set forth in Section 4.2.

NOW THEREFORE, it is agreed that the foregoing recitals are hereby expressly incorporated into this GRANT AGREEMENT and made a part hereof and further, that in consideration of the agreements, promises, and mutual covenants set forth in this GRANT AGREEMENT and for such other good and valuable consideration, the PARTIES agree to the following terms and conditions:

1.  Use of Grant.

1.1  The GRANTEE agrees to use the GRANT only for the PROJECT in the manner described in the PROPOSAL, subject to the terms and conditions of this GRANT AGREEMENT, or any amendments as may be jointly agreed to by the MEDICAL BENEFITS CLASS COUNSEL and BP and approved by the COURT or any amendments as the COURT may request in its sole discretion.  The GRANTEE shall have the right to terminate this GRANT AGREEMENT, with 30 days' written notice to the other PARTIES, if the GRANT AGREEMENT is amended by the MEDICAL BENEFITS CLASS COUNSEL and BP and approved by the COURT or is altered by the COURT and the GRANTEE'S rights and obligations under this GRANT AGREEMENT are materially changed.

1.2  As described in the PROPOSAL, the Project Leader for this PROJECT shall be [Name of Project Leader] (the "PROJECT LEADER").  With the approval of the COURT, BP and the MEDICAL BENEFITS CLASS COUNSEL reserve the right to terminate or renegotiate the terms of this GRANT if there is a change in the PROJECT LEADER.

1.3  The GRANTEE agrees that any portion of the GRANT that is not expended or committed for the purposes described in the PROPOSAL, or as amended by joint agreement of the MEDICAL BENEFITS CLASS COUNSEL and BP and approved by the COURT or any amendment as the COURT may request in its sole discretion, must be promptly returned to the CLAIMS ADMINISTRATOR without request.  BP and the MEDICAL BENEFITS CLASS COUNSEL shall make a recommendation to the COURT on how such returned funds shall be distributed in furtherance of the GULF REGION HEALTH OUTREACH PROGRAM, and such funds shall be distributed by the CLAIMS ADMINISTRATOR as ordered by the COURT.

1.4  The GRANTEE shall use no more than 12% of the GRANT for overhead or indirect expenses as reflected in the budget provided with the PROPOSAL.

1.5  Any proposed change of more than 10% to a budget line item for the PROJECT on an annual basis must be approved in advance in writing by the CLAIMS ADMINISTRATOR, BP, and the MEDICAL BENEFITS CLASS COUNSEL and approved by the COURT.

1.6  [Two/Three] representatives of the PROJECT, including the PROJECT LEADER, shall serve on the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE.  Such Committee shall meet quarterly, at least twice-per-year

in person, at an agreed to location in the Gulf region, to (a) receive written reports on the implementation of each of the GULF REGION HEALTH OUTREACH PROJECTS, (b) evaluate the implementation of each of the GULF REGION HEALTH OUTREACH PROJECTS, (c) confirm that the required benchmarks set forth in each of the respective GULF REGION HEALTH OUTREACH PROJECT'S GRANT AGREEMENTS are being satisfactorily met, (d) identify activities to enhance cooperation among, and integration of the activities covered by, the GULF REGION HEALTH OUTREACH PROJECTS, and (e) by a 3/4th vote of all members, identify activities and make recommendations regarding adjustments needed to enhance the implementation of any GULF REGION HEALTH OUTREACH PROJECT, including delaying the distribution of funds for a particular project because benchmarks set forth in a GULF REGION HEALTH OUTREACH PROJECT'S GRANT AGREEMENT are not being satisfactorily met.  Any expenses relating to the PROJECT LEADER'S service on such Committee shall be paid by the CLAIMS ADMINISTRATOR and not from the GRANT.  Any requirements related to the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE as provided in this Section 1.6, or in any other provision, of this GRANT AGREEMENT may be amended upon joint agreement of the MEDICAL BENEFITS CLASS COUNSEL and BP and approval of the COURT or by the COURT in its sole discretion.

2. <u>Investment of Grant</u>.  All unspent or uncommitted GRANT funds shall be invested in highly liquid interest-bearing or income-earning investments (such as an interest-bearing bank account) with the primary objective of preservation of principal so that they remain available for the funding of the PROJECT in the manner described in the PROPOSAL.  Any interest or other income generated by the GRANT must be applied to the purposes of the PROJECT.

3. <u>Payment of Grant</u>.

    3.1   Subject to the terms and conditions of the MEDICAL SETTLEMENT AGREEMENT and this GRANT AGREEMENT, BP, either directly or indirectly, shall transfer, or cause to be transferred, to the CLAIMS ADMINISTRATOR, and the CLAIMS ADMINISTRATOR shall disburse, GRANT funds via wire transfer in six installments upon the CLAIMS ADMINISTRATOR'S receipt of this GRANT AGREEMENT signed by the GRANTEE, and upon the satisfactory completion by the GRANTEE of all the terms and conditions contained in this GRANT AGREEMENT, which incorporates the PROPOSAL, according to the following schedule:

    (a)   DISTRIBUTION ONE shall be a payment distributed in the amount of $_____ within 30 days of the entry of the PRELIMINARY APPROVAL AND CLASS CERTIFICATION ORDER.

    (b)   DISTRIBUTION TWO shall be a payment distributed in the amount of $_____ within 90 days of DISTRIBUTION ONE.

    (c)   DISTRIBUTION THREE shall be a payment distributed in the amount of $_____ one year after DISTRIBUTION ONE.

    (d) DISTRIBUTION FOUR shall be a payment distributed in the amount of $_____ two years after DISTRIBUTION ONE.

    (e) DISTRIBUTION FIVE shall be a payment distributed in the amount of $_____ three years after DISTRIBUTION ONE.

    (f) DISTRIBUTION SIX shall be a payment distributed in the amount of $_____ four years after DISTRIBUTION ONE.

 3.2 If the MEDICAL SETTLEMENT AGREEMENT is terminated for any reason, is not approved by the COURT and all appeals of any such denial are exhausted without such denial being reversed or vacated by an appellate court, or if the COURT approves the MEDICAL SETTLEMENT AGREEMENT and any such approval is reversed or vacated by an appellate court after all appeals are exhausted, BP shall, at any time thereafter, have the right, in its sole discretion, to terminate, or to require the CLAIMS ADMINISTRATOR to terminate, any payments scheduled to be paid under the distribution schedule set forth in Section 3.1 of this GRANT AGREEMENT.  Upon such termination of funding, the GRANTEE shall expend all GRANT funds already received by it in accordance with this GRANT AGREEMENT and then this GRANT AGREEMENT shall terminate.

 3.3 BP, either directly or indirectly, may, in its sole discretion, distribute, or cause to be distributed, to the CLAIMS ADMINISTRATOR and may direct the CLAIMS ADMINISTRATOR to distribute GRANT funds to the GRANTEE in advance of the distribution schedule set forth in Section 3.1 of this GRANT AGREEMENT.  Any GRANT funds so distributed in advance to the GRANTEE shall be credited, dollar-for-dollar, against any distributions to be made under the distribution schedule set forth in Section 3.1 of this GRANT AGREEMENT, starting with the next scheduled distribution.

4. <u>Reporting</u>.

 4.1 The GRANTEE shall provide quarterly written reports regarding implementation of the PROJECT, and shall provide such written reports to the CLAIMS ADMINISTRATOR at least 10 days in advance of the scheduled quarterly meetings of the GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE or, if requested by the CLAIMS ADMINISTRATOR, on the schedule established by the CLAIMS ADMINISTRATOR.  The reports shall provide a narrative of the progress in achieving the objectives and deliverables of the PROJECT, as set forth in the PROPOSAL, and an accounting of the expenditures of the GRANT funds.  The GRANTEE'S final quarterly report shall be due no later than six months after DISTRIBUTION SIX of the GRANT, as provided in Section 3.1 of this GRANT AGREEMENT, has been fully expended by the GRANTEE.

 4.2 The GRANTEE shall provide a final written report ("FINAL REPORT") regarding the objectives and deliverables of the PROJECT within six months of the date that is five years after DISTRIBUTION ONE.

 4.3 The GRANTEE shall provide such additional information regarding the PROJECT and expenditure of GRANT funds as may be reasonably requested by the CLAIMS ADMINISTRATOR or as may be required by law or requested by the COURT.

      4.4      The GRANTEE shall notify the CLAIMS ADMINISTRATOR in writing within two weeks of any major development in the implementation of the PROJECT that is likely to have a material impact on the GRANTEE or on its ability to achieve the PROJECT'S objectives.

      4.5      The GRANTEE and relevant PROJECT staff agree to be available for periodic meetings or calls with the CLAIMS ADMINISTRATOR or its designee to discuss the PROJECT and to facilitate communications regarding the implementation of the PROJECT.

      4.6      Any narrative or financial reports provided or requested pursuant to this Section 4 shall be provided in a form as reasonably requested by the CLAIMS ADMINISTRATOR, GULF REGION HEALTH OUTREACH PROGRAM COORDINATING COMMITTEE or the COURT receiving or requesting such reports.

5.      <u>Compliance</u>.

      5.1      The GRANTEE shall be responsible for complying with all applicable laws and regulations, including income and employment tax obligations, medical licensure requirements, and HIPAA restrictions.

      5.2      The GRANTEE shall cooperate with the CLAIMS ADMINISTRATOR in supplying any information to the CLAIMS ADMINISTRATOR that the CLAIMS ADMINISTRATOR may reasonably require in making any necessary tax filings associated with the CLAIMS ADMINISTRATOR'S holding and distribution of GRANT funds to the GRANTEE.

6.      <u>Record Maintenance and Inspection</u>.

      6.1      The CLAIMS ADMINISTRATOR shall annually conduct a financial audit of the PROJECT, and the GRANTEE shall cooperate in such audits.

      6.2      The GRANTEE agrees to maintain adequate records for the PROJECT to enable the CLAIMS ADMINISTRATOR to determine how the GRANT funds were expended.  The GRANTEE also agrees to make its books and records relating to the GRANT available for inspection by the CLAIMS ADMINISTRATOR or its designee at reasonable times and permit it to monitor and conduct an evaluation of operations under this GRANT, which may include a discussion of the PROJECT with the GRANTEE'S staff and a review of financial and other records connected with this GRANT and the PROJECT.

      6.3      The GRANTEE agrees to maintain accurate and complete books and records of receipts and expenditures made using the GRANT for at least four years after the last distribution under the GRANT, as provided in Section 3.1 of this GRANT AGREEMENT, and shall provide the CLAIMS ADMINISTRATOR with full access to review such books and records at reasonable times during such time period.

7.      <u>Indemnification</u>.  To the maximum extent permissible under applicable law, [NAME OF ENTITY GRANTEE] shall indemnify and hold harmless the MEDICAL BENEFITS CLASS COUNSEL, the MEDICAL BENEFITS CLASS COUNSEL'S representatives, and BP and their directors, officers, employees, consultants, representatives, counsel and agents from and against

all third party claims, liabilities, suits, demands, losses, judgments, fines, penalties, interest, expenses, and costs (including, without limitation, reasonable accounting and attorneys' fees and disbursements) which result from any breach of the GRANTEE'S representation or warranties made in relation to this GRANT AGREEMENT, or from any breach of the terms of this GRANT AGREEMENT, or from any negligent acts or omissions of the GRANTEE, its directors, officers, employees, consultants, representatives or agents relating to or in any way connected with, activities conducted pursuant to this GRANT AGREEMENT.

8.  Property Rights.  Any tangible or intangible property, including copyrights, obtained or created by the GRANTEE as part of the PROJECT financed by this GRANT shall remain the property of the GRANTEE.

9.  Public Disclosure.

    9.1  BP or the MEDICAL BENEFITS CLASS COUNSEL may make information about this GRANT public at any time as part of press releases, public reports, speeches, newsletters, and other public documents.  The GRANTEE agrees to such disclosure.

    9.2  The GRANTEE may make information about this GRANT public at any time on its websites and as part of press releases, public reports, speeches, newsletters, and other public documents.  The CLAIMS ADMINISTRATOR, BP, and the MEDICAL BENEFITS CLASS COUNSEL agree to such disclosure.

10. Reservation of Rights.

    10.1  In the event that a financial audit, as provided in Section 6.1 of this GRANT AGREEMENT, reveals any material financial irregularity in the implementation of the PROJECT, as determined, after consultation with BP and the MEDICAL BENEFITS CLASS COUNSEL, by the CLAIMS ADMINISTRATOR, the CLAIMS ADMINISTRATOR shall cease any further disbursements to the GRANTEE, shall report such irregularity to the COURT, the MEDICAL BENEFITS CLASS COUNSEL, and BP, and shall make no further distributions under this GRANT AGREEMENT unless ordered to do so by the COURT.

    10.2  With the approval of the COURT, the CLAIMS ADMINISTRATOR may discontinue making payments under this GRANT AGREEMENT and may require the GRANTEE to repay any GRANT funds not yet spent, if the GRANTEE fails to comply with any material term or condition of this GRANT AGREEMENT, or to comply with any law or regulation or order applicable to this GRANT AGREEMENT.

11. Miscellaneous.

    11.1  Failure by any PARTY at any time to require performance by any other PARTY of any provision of this GRANT AGREEMENT shall in no way affect the right to require full performance any time thereafter, nor shall the waiver by any PARTY of a breach of any provision of this GRANT AGREEMENT constitute a waiver of any succeeding breach of same or any other provision, nor constitute a waiver of the provision itself.

11.2     This GRANT AGREEMENT, including the Exhibits, constitutes the entire understanding of the PARTIES with respect to the subject matter of this GRANT AGREEMENT, and supersedes all prior agreements and understandings, whether oral or written. This GRANT AGREEMENT is made exclusively with the GRANTEE and may not be transferred or assigned to another organization or person without prior written approval of the CLAIMS ADMINISTRATOR, BP, and the MEDICAL BENEFITS CLASS COUNSEL, and the approval of the COURT.  This GRANT AGREEMENT may be amended or modified only by a mutual written agreement of the PARTIES that has been approved by the COURT, as may be jointly agreed to by the MEDICAL BENEFITS CLASS COUNSEL and BP and approved by the COURT or as the COURT may request in its sole discretion.

11.3     Sections 4, 5, 6, 7, 8, 9 and 10 shall survive termination of this GRANT AGREEMENT.

11.4     This GRANT AGREEMENT shall be deemed to be made under, and in all respects shall be interpreted under and governed by, the laws of the [State of Delaware].

IN WITNESS WHEREOF, the PARTIES have caused this GRANT AGREEMENT to be executed by their duly authorized representatives and attorneys below.


GARRETSON FIRM RESOLUTION GROUP, INC.

By:_____

Name:_____

Title:_____



BP EXPLORATION & PRODUCTION INC

By:_____

Name:_____

Title:_____



BP AMERICA PRODUCTION COMPANY

By:_____

Name:_____

Title:_____

- 7 -

- 8 -

MEDICAL BENEFITS CLASS COUNSEL

By:_____

Name:_____

Title:_____


[NAME OF ENTITY GRANTEE]

By:_____

Name:_____

Title:_____


[NAME OF PROJECT LEADER]


_____
PROJECT LEADER