# EXHIBIT 6

**Failed Business Compensation Framework**[1]

I.      **Definitions**

A "Failed Business" shall be an entity that commenced operations prior to November 1, 2008, and that, subsequent to May 1, 2010 but prior to December 31, 2011, either (i) ceased operations and wound down, or (ii) entered bankruptcy (through the filing of a petition for bankruptcy protection in a court of competent jurisdiction), or (iii) otherwise initiated or completed a liquidation of substantially all of its assets.

A "Failed Start-Up Business" shall be an entity that commenced operations on or after November 1, 2008, and, subsequent to May 1, 2010 but prior to December 31, 2011, either (i) ceased operations and wound down, or (ii) entered bankruptcy (through the filing of a petition for bankruptcy protection in a court of competent jurisdiction), or (iii) otherwise initiated or completed a liquidation of substantially all of its assets.

II.     **Causation Requirements**

If the claim is not excluded by the application of III below, a claimant may establish causation as follows:

  1. If the claimant is a Failed Business or a Failed Start-Up Business in Zone A, the claimant is not required to provide any evidence of causation unless you fall into the exception agreed to by the parties, and listed in footnote (1).

  2. If the claimant is a Failed Business or a Failed Start-Up Business meeting the definition of a "Commercial Fisherman," or "Landing Site," or "Commercial Wholesale or Retail Dealer A," or "Primary Seafood Processor," as set forth in "Seafood Distribution Chain Definitions," the claimant is not required to provide any evidence of causation.

  3. If the claimant is a Failed Business or a Failed Start-Up Business in Zone A, B or C and the claimant is also a "Commercial or Wholesale or Retail Dealer B," or a "Secondary Seafood Processor," or a "Seafood Wholesaler or Distributor," or a "Seafood Retailer," as set forth in "Seafood Distribution Chain Definition," the claimant is not required to provide any evidence of causation.

  4. If the claimant is a Failed Business or a Failed Start-Up Business in Zone A or Zone B, and the claimant also meets the "Tourism Definition," the claimant is not required to provide any evidence of causation.

---

[1] This Failed Business Compensation Framework does not apply to (i) Start-Up businesses (except Failed Start-Ups), (ii) Entities, Individuals or Claims not included within the Economic Class definition; or (iii) Claims covered under the Seafood Program.

1

028690

5.  If you are in Zone A, B or C, and you meet the "Charter Fishing Definition" you are not required to provide any evidence of causation.

6.  If the claimant is a Failed Business in Zone B not receiving a presumption, causation may be established by demonstrating the following:

    a.  A 8.5% decline in revenues during the months for which it operated between May 2010 and its last full month of operations (not to extend beyond April 2011) as compared to the comparable months during the period of May 2009 through April 2010.

    AND

    b.  The Administrator is provided evidence through documentation and/or affidavits that provide a reasonable basis to conclude that the DWH Spill was a substantial cause of the revenue decline. For example, the claimant provides evidence of customer cancellations or lost contracts related to the DWH Spill.

7.  If the claimant is a Failed Business that meets the definition of "Seafood Retailer" operating outside of Zone A, B, or C, the claimant may alternatively establish causation by showing that it experienced a 15% increase in costs during the months for which it operated between May 2010 and its last full month of operations (not to extend beyond April 2011) as compared to the comparable months during the period from May 2009 through April 2010. The claimant must also establish the specific basis for the cost increase and that, absent the DWH Spill, the increase in costs would not have occurred.

8.  If the claimant is a Failed Start-Up Business in Zone B not receiving a presumption, causation may be established by demonstrating the following:

    a.  A 8.5% decline in revenues during the months for which it operated between May 2010 and its last full month of operations (not to extend beyond April 2011) relative to expected revenue in the same time period as demonstrated by contemporaneous financial projections (to the extent available) and expressed as a percentage of expected revenue;[2]

    AND

    b.  The Administrator is provided evidence through documentation and/or affidavits that provide a reasonable basis to conclude that the DWH Spill was a substantial cause of the revenue decline. For example, the

---

[2] See Exhibit A attached hereto for an example of how this calculation is performed.

028691

    claimant provides evidence of customer cancellations or lost contracts related to the DWH Spill.

9.  If the claimant is a Failed Business or Failed Start-Up Business in Zone C, then paragraphs 6 and 8 apply with the percentage of decline changing to 10%.

10.  If the claimant is a Failed Business or Failed Start-Up Business in Zone D, then paragraphs 6 and 8 apply with the percentage of decline changing to 15%.

### III. Excluded Business Failure

Any Failed Business satisfying subparts (a), (b), or (c), below shall not be entitled to compensation pursuant to section IV.

  a.  The Failed Business or Failed Start-Up Business reported negative EBITDA[3] for the twelve month period prior to May 1, 2010 (or, in the event that the claimant is a Failed Start-Up Business with less than twelve months of operating history, negative EBITDA for the months during which the business operated prior to May 1, 2010).

  b.  The Failed Business or Failed Start-Up Business was in default prior to May 1, 2010 under any existing financing agreement.

  c.  The Failed Business or Failed Start-Up Business is located in Zone D and does not satisfy the "Tourism" or "Seafood Distribution Chain" definitions.

### IV. Documentation Requirements

1.  Claimant shall provide the following documentation:

  a.  An affidavit from an authorized representative of the claimant certifying the following:

  b.  The position of the affiant, his or her relationship to the claimant, and certification that the affiant is authorized to act on behalf of the claimant.

  c.  The date on which the entity was incorporated and the date on which it began operations.

  d.  Certification that, as of May 1, 2010:

---

[3] EBITDA is defined as earnings before interest, income taxes, depreciation, amortization and owner's compensation.

3

      i. No bankruptcy filing, asset liquidation, or debt restructuring had been initiated; (A renewal of a business loan will not be deemed restructuring.)

      ii. The business was in full compliance with all covenants as to financial condition governing outstanding borrowing or credit agreements prior to the DWH Spill; and

      iii. All documentation submitted consists of or was derived from documents maintained in the ordinary course of business.

2. Documents reflecting corporate or partnership organization (e.g., articles of incorporation or partnership agreements).

3. Actual annual and monthly financial statements (including income statements and balance sheets) for at least all of 2009 and January-April of 2010 or if the claimant is a Failed Start-Up Business, for all months of operation prior to May 1, 2010. Claimant may prepare financial statements from contemporaneous business records currently maintained, as long as the claimant provides the documents or information upon which any subsequently-prepared financial statements are based.

4. Actual annual and monthly financial statements (including income statements and balance sheets) for May 2010 through present, or through the liquidation of the company, or cessation of operation, whichever occurs first. Claimant may prepare financial statements from contemporaneous business records currently maintained, as long as the claimant provides the documents or information upon which any subsequently-prepared financial statements are based.

5. Any and all credit agreements, promissory notes, lease agreements, letters of credit and other loan documentation, including any notices of default, in existence as of April 20, 2010 or entered into thereafter including amendments related thereto.

6. Any and all projections, forecasts or budgets prepared prior to April 20, 2010 projecting, predicting or forecasting the financial performance of the business for any period after April 20, 2010.

7. To the extent applicable, any and all bankruptcy schedules, including the original petition, any confirmed plans of liquidation or reorganization, and any documentation evidencing standing to pursue claims if vested with any entity or other party other than the debtor filing bankruptcy. To the extent the claimant has not filed for bankruptcy protection, (a) documentation reflecting the company's entry into the liquidation process, (b) any and all documentation reflecting the standing or authority of the claimant to pursue any claims of the

4

028693

business, and (c) any documentation evidencing standing to pursue claims if vested with any entity or other party other than the claimant pursuing the liquidation of its assets.

8. Evidence of any asset sales, including a description of each asset and the corresponding sales prices, and evidence of any payments of liquidation proceeds in satisfaction of debt and/or other creditor obligations.

9. A listing of any assets which have not been liquidated at the time of the claim submission, including a description of each asset, the recorded net book value of each asset, and, if available, all certified appraisals of the value of each asset.

10. A listing of any debt and/or trade creditor obligations outstanding at the time of the claim submission.

**V.   Compensation**

1. For Failed Businesses that meet one of the causation requirements set forth above, claimant compensation shall be determined as follows:

    a. Sum the latest twelve months EBITDA of the business for the twelve month period prior to May 1, 2010.

    b. Identify the general industry in which claimant operates and locate the corresponding median Market Value of Invested Capital ("MVIC") to EBITDA multiple from Table 1 below. If an appropriate industry and multiple cannot be found in the Table 1, use the "All Deals" median MVIC to EBITDA multiple at the bottom of the table.

    c. Multiply the EBITDA by the MVIC to EBITDA multiple to calculate the Pre-DWH Spill total enterprise value ("TEV").

    d. Determine the Liquidation Value of assets as either (i) the court-approved reorganization value, to the extent reorganized under bankruptcy law process or (ii) sales proceeds from assets liquidated plus certified appraisal values of assets yet to be liquidated under a plan of liquidation, net of actual or anticipated liquidation costs (including out-of-pocket costs to the claimant for the liquidation or wind down process), as relevant. If no certified appraisal exists for un-liquidated assets, net book values will be used. The total liquidation value (including both realized and unrealized amounts) shall be increased for any creditor claims existing pre-DWH Spill and discharged during bankruptcy, and any amounts received by the claimant from BP or the GCCF pursuant to BP's OPA Claims process, or profits earned by the claimant by participating in any BP-sponsored spill remediation program to determine the Net

5

              Liquidation Value. However, no credit will be taken for unliquidated assets that the claimant tenders to BP.

     e.     Calculate claimant compensation by subtracting the Net Liquidation Value from the Pre-DWH Spill TEV.

     f.     A Risk Transfer Premium ("RTP") will not be applied to claimant compensation for Failed Businesses because the measurement of TEV incorporates the future lost profits of the business.

2.     For Failed Start-Up Businesses that meet one of the causation requirements set forth above, claimant compensation shall be calculated as follows:

     a.     Calculate book value of equity as of May 1, 2010.

     b.     Subtract amounts distributed to equity holders subsequent to the DWH Spill.

     c.     Add the total current amount of unpaid obligations of claimant to its creditors.

     d.     Subtract the book value of assets remaining to be liquidated unless such assets are tendered to BP then the value shall not be subtracted.

     e.     Subtract any other proceeds received by the claimant from BP or the GCCF pursuant to BP's OPA Claims process, or profits earned by the claimant by participating in any BP-sponsored spill remediation program.

     f.     Where a Failed Start-Up Business receives compensation under this framework, compensation shall be provided to the claimant for an owner's "sweat equity" if the owners submit affidavits setting forth for each owner (i) the nature of services provided by that owner to the claimant for which the owner received no compensation or less than fair market compensation, (ii) the time period over which the services were rendered, (iii) the average amount of time per week devoted to the Failed Start-Up Business, and, (iv) if employed outside the Failed Start-Up Business during the time the business operated, a description of that employment.

          Where these criteria are satisfied, claimant shall be entitled to "sweat equity" compensation as set forth below. In addition, two example calculations are attached hereto as Exhibit B.

          1.     Step 1: Calculate the Monthly Sweat Equity Benchmark Income pursuant to Step 1 subparts (a) through (d).

6

028695

Step 1a:  Identify the "Commencement Date": the day that the Failed Start-Up Business commenced operations.

Step 1b:  Identify the "Sweat Equity Contribution Start Date": the date when the owner first began performing sweat equity work or the date six months prior to the Commencement Date, whichever yields the shorter time period.

Step 1c:  Establish the Sweat Equity Benchmark Period:  The Sweat Equity Benchmark Period shall consist of the time period from the "Sweat Equity Benchmark Period Start Date" through the "Sweat Equity Benchmark Period End Date."

The "Sweat Equity Benchmark Period Start Date" will be either:

    a)    January 1 of the calendar year preceding the year in which the Sweat Equity Contribution Start Date occurred, or

    b)    January 1 of any year prior to the year identified in (a) above, but not preceding January 1, 2007.

For example, for a business with a Commencement Date of January 1, 2010, and a Sweat Equity Contribution Start Date of August 10, 2009, the claimant may choose as the Sweat Equity Benchmark Period Start Date either January 1, 2008 or January 1, 2007.

The "Sweat Equity Benchmark Period End Date" shall be defined as the end of the last full month preceding the Sweat Equity Contribution Start Date.  For example, if the Sweat Equity Contribution Start Date was August 10, 2009, the Sweat Equity Benchmark Period End Date will be July 31, 2009.

Step 1d:  Calculate the "Monthly Sweat Equity Benchmark Income."  The owner shall provide documentation of income earned for the Sweat Equity Benchmark Period, including tax returns, W-2s, year-end pay stub information and, if available, monthly or other periodic pay stubs or other records reflecting monthly earned income ("Earned Income Documentation").  Monthly Sweat Equity Benchmark Income shall be determined by dividing:

    (i)    Total income earned from all employers and/or activities (including self-employment) during the

        Sweat Equity Benchmark Period, as reflected in Earned Income Documentation

        by

    (ii)    The total number of months in the Sweat Equity Benchmark Period, adjusted, if relevant, to exclude months where the owner provides documents evidencing that

        a.    No income was earned, *and*

        b.    The owner was not employed, functioning as an independent contractor, or otherwise engaged in income-generating activities unrelated to the Failed Start-Up Business. For example, if the owner was a real estate agent operating as an independent contractor, the owner must include all months for which he or she functioned as a real estate agent, even if no income was earned in a particular month.

2. Step 2: For each owner, determine the "Sweat Equity Compensation Period" as the period from his or her Sweat Equity Contribution Start Date to the date the Failed Start-Up Business (i) ceased operations and wound down, or (ii) entered bankruptcy (through the filing of a petition for bankruptcy protection in a court of competent jurisdiction), or (iii) otherwise initiated or completed a liquidation of substantially all of its assets ("Failure Date"). Total Monthly Sweat Equity across all owners in a given month is calculated by summing the monthly Sweat Equity Benchmark Income for each owner with sweat equity in the relevant month for all months in the Sweat Equity Compensation Period. The maximum amount of Total Monthly Sweat Equity in any month is $12,500. Total Sweat Equity represents the sum of the Total Monthly Sweat Equity for all owners and cannot exceed $150,000.

3. Step 3: To determine Net Sweat Equity for each owner, from the Total Sweat Equity in Step 2, subtract (i) any funds (including payroll earnings, draws, cancelled loans or other distributions) actually paid to an owner by the Failed Start-Up during its

8

        operation and (ii) any income earned by the owner from employment outside the Failed Start-Up.  These amounts shall be established by the owner providing documentation in the form of tax returns, W-2s, year-end pay stub information or the Failed Start-Up's contemporaneously maintained payroll records.

g.    An RTP will not be applied to claimant compensation for Failed Start-Up Businesses.

028698

*Table 1: Industry Multiples*

| General SIC Code | Industry Description | Median MVIC to EBITDA Multiple |
|---|---|---|
| 41 | Local And Suburban Transit And Interurban Highway Passenger Transportation | 3.1x |
| 42 | Motor Freight Transportation And Warehousing | 2.9x |
| 44 | Water Transportation | 7.1x |
| 45 | Transportation By Air | 4.6x |
| 47 | Transportation Services | 3.6x |
| 48 | Communications | 5.5x |
| 50 | Wholesale Trade-durable Goods | 5.0x |
| 51 | Wholesale Trade-non-durable Goods | 3.9x |
| 52 | Building Materials, Hardware, Garden Supply, And Mobile Home Dealers | 3.4x |
| 53 | General Merchandise Stores | 1.5x |
| 54 | Food Stores | 2.4x |
| 55 | Automotive Dealers And Gasoline Service Stations | 1.8x |
| 56 | Apparel And Accessory Stores | 2.6x |
| 57 | Home Furniture, Furnishings, And Equipment Stores | 3.5x |
| 58 | Eating And Drinking Places | 1.9x |
| 59 | Miscellaneous Retail | 3.2x |
| 65 | Real Estate | 2.8x |
| 70 | Hotels, Rooming Houses, Camps, And Other Lodging Places | 1.8x |
| 72 | Personal Services | 2.3x |
| 73 | Business Services | 4.4x |
| 75 | Automotive Repair, Services, And Parking | 3.3x |
| 76 | Miscellaneous Repair Services | 4.0x |
| 79 | Amusement And Recreation Services | 2.1x |
| 81 | Legal Services | 3.2x |
| 82 | Educational Services | 4.6x |
| 83 | Social Services | 4.1x |
| 87 | Engineering, Accounting, Research, Management, And Related Services | 5.0x |
| | **All Deals** | **3.2x** |

Source: Pratt's Stats® - Private Company Merger and Acquisition Transaction Database. Data reflects all deals in the database with a disclosed MVIC to EBITDA multiple and a report date of January 1, 2008 or later.

028699

**Exhibit A**

## Summary of Revenue Decline Causation Tests for Failed Businesses

|  | Zone A Decline Threshold | Zone B (Non-Tourism and Non-Seafood) Decline Threshold | Zone C (Non-Seafood) Decline Threshold | Zone D Decline Threshold |
|---|---|---|---|---|
| Revenue Decline Test | N/A | -8.5% | -10.0% | -15% |

11

028700

**Exhibit A (continued)**

### Example of Revenue Decline Causation Tests for Failed Business Claims

In Examples 1 and 2, the claimant is assumed to be in Zone B and the claimant's last full month of operations is July 2010. These examples demonstrate a claimant that passes and a claimant that fails the Revenue Decline Causation Test.

**Example 1:**

| Month | Revenue by Year | |
|---|---|---|
|  | 2009 | 2010 |
| May | 300,000 | 250,000 |
| June | 350,000 | 275,000 |
| July | 325,000 | 225,000 |
| 3-Month Aggregate: [Sum of June, July, August] | 975,000 | 750,000 |
| **Revenue Decline Percentage:** | **-23.1%** | =(750,000 - 975,000)/975,000 |

*Claimant Passes Revenue Decline Test*

**Example 2:**

| Month | Revenue by Year | |
|---|---|---|
|  | 2009 | 2010 |
| May | 300,000 | 295,000 |
| June | 350,000 | 335,000 |
| July | 325,000 | 315,000 |
| 3-Month Aggregate: [Sum of June, July, August] | 975,000 | 945,000 |
| **Revenue Decline Percentage:** | **-3.1%** | =(945,000 - 975,000)/975,000 |

*Claimant Fails Revenue Decline Test*

Notes:

Revenue Decline Causation Test works in the same way for claimants in Zones C or D, with higher thresholds for the revenue decline. In Zone C the revenue decline percentage must be 10%. In Zone D the revenue decline percentage must be 15%.

028701

**Exhibit A (continued)**

### Example of Revenue Decline Causation Tests for Failed Business Claims
### Claimant in Zone B (8.5% Revenue Decline Test)

> In Examples 3A-C the claimant is assumed to be in Zone B and the claimant's last full month of operations is July 2010. Examples 3A-C demonstrate that under an aggregate test, three months of revenues are summed. The individual months may be up or down, as long as the three month aggregate period passes the test.

**Example 3A:**

| Month | Revenue by Year | |
|---|---|---|
| | 2009 | 2010 |
| May | 300,000 | 250,000 |
| June | 350,000 | 275,000 |
| July | 325,000 | 225,000 |
| | | |
| 3-Month Aggregate: | 975,000 | 750,000 |
| [Sum of June, July, August] | | |
| Revenue Decline Percentage: | | -23.1% =(750,000 - 975,000)/975,000 |
| *Claimant Passes Revenue Decline Test* | | |

**Example 3B:**

| Month | Revenue by Year | |
|---|---|---|
| | 2009 | 2010 |
| May | 300,000 | 350,000 |
| June | 350,000 | 175,000 |
| July | 325,000 | 225,000 |
| | | |
| 3-Month Aggregate: | 975,000 | 750,000 |
| [Sum of June, July, August] | | |
| Revenue Decline Percentage: | | -23.1% =(750,000 - 975,000)/975,000 |
| *Claimant Passes Revenue Decline Test* | | |

**Example 3C:**

| Month | Revenue by Year | |
|---|---|---|
| | 2009 | 2010 |
| May | 300,000 | 350,000 |
| June | 350,000 | 375,000 |
| July | 325,000 | 25,000 |
| | | |
| 3-Month Aggregate: | 975,000 | 750,000 |
| [Sum of June, July, August] | | |
| Revenue Decline Percentage: | | -23.1% =(750,000 - 975,000)/975,000 |
| *Claimant Passes Revenue Decline Test* | | |

Notes:

Revenue Decline Causation Test works in the same way for claimants in Zones C or D, with higher thresholds for the revenue decline. In Zone C the revenue decline percentage must be 10%. In Zone D the revenue decline percentage must be 15%.

13

## Exhibit B

**Examples of Sweat Equity Calculation**

**Example 1:**

**Step 1: Calculate Monthly Sweat Equity Benchmark Income**

| | | | |
|---|---|---|---|
| **Step 1a: Identify the Commencement Date of Operations** | | January 1, 2010 | [a] |
| **Step 1b: Identify the Sweat Equity Contribution Start Date** | | August 10, 2009 | [b] |
| (6 months or less prior to the Commencement Date) | | | |

**Step 1c: Establish the Sweat Equity Benchmark Period**

Sweat Equity Bencmark Period Start Date — **Option 1:** January 1, 2008 [c]
- or -
(Must begin no later than January 1 of the calendar year preceding the year in which the Sweat Equity Contribution Start Date occurred. However, the Claimant may, if relevant, elect a longer period and add the twelve months of 2008 or the 24 months of 2007 and 2008. Period ends with the last full month preceding the Sweat Equity Contribution Start Date.) — **Option 2:** January 1, 2007 [d]

Sweat Equity Benchmark Period End Date — July 31, 2009 [e]
(Last full month prior to the Sweat Equity Contribution Start Date)

**Step 1d: Calculate Monthly Sweat Equity Benchmark Income**

Historical Earned Income
- January - December 2007 Earned Income — $50,000 [f]
- January - December 2008 Earned Income — $55,000 [g]
- January - July 2009 Earned Income — $35,000 [h]

Sweat Equity Benchmark Period Options

**Option 1: January 1, 2008 - July 30, 2009**[1]
- Total Compensation — $90,000 — [i]=[g]+[h]
- Number of Months in Period with Earned Income — 19 — [j]=count of months from [c] to [e]
- Average Monthly Compensation — $4,737 — [k]=[i]/[j]

**Option 2: January 1, 2007 - July 30, 2009**[2]
- Total Compensation — $140,000 — [l]=[f]+[g]+[h]
- Number of Months in Period with Earned Income — 31 — [m]=count of months from [d] to [e]
- Average Monthly Compensation — $4,516 — [n]=[l]/[m]

**Owner Selects Option 1 for Monthly Benchmark Period Income** — **$4,737** — [o]=maximum of [k] and [n]
(Maximum of $12,500)

**Step 2: Calculate Total Sweat Equity**

Failure Date — December 31, 2010 — [p]
(Date the Failed Start-Up either (i) ceased operations and wound down, (ii) filed for bankruptcy protection, or (iii) otherwise initiated or completed a liquidation of substantially all of its assets)

Selected Average Monthly Benchmark Period Income — $4,737 — =[o]
Number of Months Sweat Equity Provided — 17 — [q]=count of months from [b] to [p]
(Number of months between the Sweat Equity Contribution Start Date and the Failure Date)

**Total Gross Sweat Equity** — **$80,526.32** — [r]=[o]*[q]
(Maximum of $150,000)

**Step 3: Calculate Net Sweat Equity Compensation by Subtracting Actual Earned Income**

Actual Earned Income after the Sweat Equity Contribution Start Date — $0 — [s]

**Net Sweat Equity Compensation** — **$80,526** — [t]=[r]-[s]

Notes:
[1] Claimant uses only the minimum time to calculate the Sweat Equity Benchmark Period, which provides a larger monthly amount here.
[2] Claimant uses the full months available to calculate the Sweat Equity Benchmark Period.

14

028703

## Exhibit B (continued)

**Example 2:**

### Step 1: Calculate Monthly Sweat Equity Benchmark Income

| | | |
|---|---|---|
| **Step 1a: Identify the Commencement Date of Operations** | December 10, 2008 | [a] |
| **Step 1b: Identify the Sweat Equity Contribution Start Date** | August 10, 2008 | [b] |
| (6 months or less prior to the Commencement Date) | | |
| **Step 1c: Establish the Sweat Equity Benchmark Period** | | |
| **Sweat Equity Bencmark Period Start Date** | January 1, 2007 | [c] |
| (Must begin no later than January 1 of the calendar year preceding the year in which the Sweat Equity Contribution Start Date occurred. However, the Claimant may, if relevant, elect a longer period and add the twelve months of 2008 or the 24 months of 2007 and 2008. Period ends with the last full month preceding the Sweat Equity Contribution Start Date.) | | |
| **Sweat Equity Benchmark Period End Date** | July 30, 2008 | [d] |
| (Last full month prior to the Sweat Equity Contribution Start Date) | | |

**Step 1d: Calculate Monthly Sweat Equity Benchmark Income**
**Historical Earned Income**

| | | |
|---|---|---|
| January - December 2007 Earned Income | $50,000 | [e] |
| January - July 2008 Earned Income | $30,000 | [f] |

**Sweat Equity Benchmark Period (One Option)**
**January 1, 2007 - July 30, 2008**

| | | |
|---|---|---|
| Total Compensation | $80,000 | [g]=[e]+[f] |
| Number of Months in Period with Earned Income | 19 | [h]=count of months from [c] to [d] |
| Average Monthly Compensation | $4,211 | [i]=[g]/[h] |
| **Monthly Benchmark Period Income** | **$4,211** | [j]=[i] |
| (Maximum of $12,500) | | |

### Step 2: Calculate Total Sweat Equity

| | | |
|---|---|---|
| **Failure Date** | December 31, 2010 | [k] |
| (Date the Failed Start-Up either (i) ceased operations and wound down, (ii) filed for bankruptcy protection, or (iii) otherwise initiated or completed a liquidation of substantially all of its assets) | | |
| **Selected Average Monthly Benchmark Period Income** | $4,211 | =[j] |
| **Number of Months Sweat Equity Provided** | 29 | [l]=count of months from [b] to [k] |
| (Number of months between the Sweat Equity Contribution Start Date and the Failure Date) | | |
| **Total Gross Sweat Equity** | **$122,105** | [m]=[j]*[l] |
| (Maximum of $150,000) | | |

### Step 3: Calculate Net Sweat Equity Compensation by Subtracting Actual Earned Income

| | | |
|---|---|---|
| **Actual Earned Income after the Sweat Equity Contribution Start Date** | **$0** | [n] |
| **Net Sweat Equity Compensation** | **$122,105** | [o]=[m]-[n] |

15

028704