# EXHIBIT 7

# Framework for Start-up Business Claims

The framework outlined below applies to claims for start-up businesses. For purposes of this Framework, a "Start-up Business" is considered to be a claimant with less than eighteen months of operating history at the time of the DWH Spill.[1]

## I. DEFINITIONS[2]

**Business Compensation Framework:** Business Compensation Framework is the Compensation Framework for Business Economic Loss Claims.

**Compensation Period:** The Compensation Period is selected by the claimant to include three or more consecutive months between May 2010 and April 2011.

**Benchmark Period:** The Benchmark Period is the post-spill time period between May 2011 and April 2012 corresponding to the months of the Compensation Period that serves as the basis for estimating the claimant's Expected Profit during 2010.

**Fixed and variable payroll expenses** shall be calculated in the same manner as in the Business Compensation Framework, provided that subpart 3 of the "Fixed & Variable Payroll Expenses (SG&A and COGS)" Definition shall be modified to identify the two months between May and December 2010 with the lowest Total Payroll Expense.

**Variable Costs** shall be determined in accordance with Business Compensation Framework Attachment A.

## II. OVERVIEW

As set forth more fully in the Compensation Calculation section below, 2010 claimant compensation (before any adjustments) will be calculated according to the following methodology:

A. Establish (i) the revenue the claimant would have expected to earn during the Compensation Period in the absence of the DWH Spill ("Expected Revenue"), and (ii) the variable costs the claimant would have expected to incur during the Compensation Period ("Expected Costs") to generate the Expected Revenue.

---

[1] This Framework for Start-up Business Claims does not apply to (i) Failed Businesses; (ii) Entities, Individuals or Claims not included within the Economic Class definition; or (iii) Claims covered under the Seafood Program.
[2] In addition to the following, other terms are defined in this document and indicated by initial capitals.

028661

       The difference between Expected Revenue and Expected Costs is Expected Profit.

  B.    Calculate actual profit/loss realized by the claimant during the Compensation Period based on the difference between (i) actual revenue, and (ii) actual variable costs.

  C.    Deduct actual profit/loss from Expected Profit over the Compensation Period to determine the Base Compensation Loss.

### III. CAUSATION REQUIREMENTS

**A.**     **Start-Up Businesses in Zones A, B and C For Which Causation Shall Be Presumed**

1) If the claimant is a Start-up Business in Zone A that is not excluded pursuant to the exception agreed to by the parties, and listed in footnote (1), the claimant is not required to provide any evidence of causation.

2) If the claimant is a Start-up Business meeting the definition of a "Commercial Fisherman," or "Landing Site," or "Commercial Wholesale or Retail Dealer A," or "Primary Seafood Processor," as set forth in "Seafood Distribution Chain Definitions," the claimant is not required to provide any evidence of causation.

3) If the claimant is a Start-up Business in Zone A, B or C and the claimant is also a "Commercial or Wholesale or Retail Dealer B," or a "Secondary Seafood Processor," or a "Seafood Wholesaler or Distributor," or a "Seafood Retailer," as set forth in "Seafood Distribution Chain Definition," the claimant is not required to provide any evidence of causation.

4) If the claimant is a Start-up business in Zone B, and the claimant also meets the "Tourism Definition," the claimant is not required to provide any evidence of causation.

5) If you are in Zone A, B or C, and you meet the "Charter Fishing Definition" you are not required to provide any evidence of causation.

**B.**     **Causation Requirements For Start-Up Businesses In Zones B and C**

If the claimant is located within Zones B or C and not entitled to a presumption, it must establish:

2

028662

1. **UPTURN REVENUE PATTERN PLUS**

   a. Claimant must demonstrate:

      1. If in Zone B, an increase of an aggregate of 8.5% or more in total revenues over a period of three consecutive months from May 2011 to April 2012 compared to the same months from May 2010 to April 2011 as selected by the claimant;[3]

      2. If in Zone C, an increase of an aggregate of 10% or more in total revenues over a period of three consecutive months from May 2011 to April 2012 compared to the same months from May 2010 to April 2011 as selected by the claimant;[4]

      AND

   b. <u>one or more of the following</u>:

      1. For business claimants that have customers in Zones A-C, the claimant demonstrates proof of an aggregate of 10% increase in the share of total revenue generated by customers located in Zones A-C over the same period of three consecutive months from May 2011 to April 2012 as selected by the claimant for the upturn revenue pattern as identified in § III.B.1.a compared to the same three consecutive month period from May 2010 to April 2011,[5] as reflected in:

         (a) customer credit card receipts or other contemporaneously maintained records of payment; or

         (b) customer registration logs (e.g., hotel registries); or

         (c) documentation maintained in the ordinary course of business that lists customers by location and monthly sales associated with those customers; or

---

[3] See Exhibit A attached hereto for an example of how this calculation is performed.
[4] See Exhibit A attached hereto for an example of how this calculation is performed.
[5] See Exhibit B attached hereto for an example of how this calculation is performed.

3

028663

  (d) business documents reflecting contemporaneous recording of receipts or invoices listing customers by location; or

  (e) Any other documentation providing evidence of the portion of the claimant's revenue projected to be generated by customers in Zones A-C versus outside of Zones A-C during the Compensation Period.  The claimant must be able to demonstrate that the projections were prepared prior to the DWH Spill and provided to and utilized by a financial institution extending credit to the Start-up Business.

 OR

2. For businesses meeting the Tourism Definition or the Seafood Distribution Chain Definition, the claimant demonstrates proof of an aggregate of 10% increase in the share of total revenue generated by non-local customers[6] over the same period of three consecutive months from May 2011 to April 2012 as selected by claimant for the upturn revenue pattern as identified in § III.B.1.a compared to the same three consecutive month period from May 2010 to April 2011,[7] as reflected in:

  (a) customer credit card receipts or other contemporaneously maintained records of payment; or

  (b) documentation maintained in the ordinary course of business that lists customers by location and monthly sales associated with those customers; or

  (c) business documents reflecting contemporaneous recording of receipts or invoices listing customers by location; or

  (d) customer registration logs (e.g., hotel registries); or

---

[6] A Customer shall be considered a "non-local customer" if they reside more than 60 miles from a claimant business location.
[7] See Exhibit C attached hereto for an example of how this calculation is performed.

028664

   (e) Any other documentation providing evidence of the portion of claimant's revenue projected to be generated by local versus non-local customers during the Compensation Period.  The claimant must be able to demonstrate that the projections were prepared prior to the DWH Spill and provided to and utilized by a financial institution extending credit to the Start-up Business.

OR

2. **Proof of Spill-Related Cancellations**

 a. Claimant may establish causation by providing contemporaneous written evidence of spill-related reservation cancellations (*i.e.,* letters, emails, hotel logs for the relevant time, or an affidavit from an independent third party citing the DWH Spill as the reason for cancellation) that the claimant was unable to rebook ("Un-replaced Cancellations").  Proof of Un-replaced Cancellations only establishes causation for those specific Un-replaced Cancellations substantiated by the claimant and may result in recovery only with respect to such Un-replaced Cancellations.  However, if the lodging facility has food and/or beverage services on site, the evidence of Un-replaced Cancellations shall satisfy causation for the specific losses corresponding to such Un-replaced Cancellations in those service areas as well.

  OR

 b. The claimant provides contemporaneous written evidence of the cancellation of a contract, or loss of previously-committed capital investments from investors and/or business loans arising from the DWH Spill that the claimant was not able to replace.  In the absence of contemporaneous written evidence, the claimant must present an affidavit from an independent third party affirming that the cancellation or loss was spill-related.  Proof of any spill-related contract cancellations or losses discussed above only establishes causation for the specific loss substantiated by the claimant and may result in recovery of amounts solely associated with such loss.

028665

C. **Causation Requirements for Start-Up Businesses in Zone D**

If the claimant is located within Zone D, it must establish one or more of the following:

1. **UPTURN REVENUE PATTERN PLUS**

    a. an increase of an aggregate of 15% or more in total revenues over a period of three consecutive months from May 2011 to April 2012 compared to the same months from May 2010 to April 2011 as selected by the claimant;[8]

    AND

    b. <u>one of the following</u>:

    1. For business claimants that have customers in Zones A-C, the claimant demonstrates proof of an aggregate of 10% increase in the share of total revenue generated by customers located in Zones A-C over the same period of three consecutive months from May 2011 to April 2012 as selected by the claimant for the upturn revenue pattern as identified in § III.C.1.a compared to the same three consecutive month period from May 2010 to April 2011,[9] as reflected in:

        (a) customer credit card receipts or other contemporaneously maintained records of payment;

        (b) customer registration logs (e.g., hotel registries);

        (c) documentation maintained in the ordinary course of business that lists customers by location and monthly sales associated with those customers; or

        (d) business documents reflecting contemporaneous recording of receipts or invoices listing customers by location.

---

[8] See Exhibit A attached hereto for an example of how this calculation is performed.
[9] See Exhibit B attached hereto for an example of how this calculation is performed.

028666

        OR

2. For businesses meeting the Tourism Definition or the Seafood Distribution Chain Definition, the claimant demonstrates proof of an aggregate of 10% increase in the share of total revenue generated by non-local customers over the same period of three consecutive months from May 2011 to April 2012 as selected by claimant for the upturn revenue pattern as identified in § III.C.1.a compared to the same three consecutive month period from May 2010 to April 2011,[10] as reflected in:

    (a) customer credit card receipts or other contemporaneously maintained records of payment; or

    (b) customer registration logs (e.g., hotel registries).

    (c) documentation maintained in the ordinary course of business that lists customers by location and monthly sales associated with those customers; or

    (d) business documents reflecting contemporaneous recording of receipts or invoices listing customers by location.

2. **PROOF OF SPILL-RELATED CANCELLATIONS**

    a. Claimant may establish causation by providing contemporaneous written evidence of spill-related reservation cancellations (i.e., letters, emails, hotel logs for the relevant time, or an affidavit from an independent third party citing the DWH Spill as the reason for cancellation) that the claimant was unable to rebook ("Un-replaced Cancellations"). Proof of Un-replaced Cancellations only establishes causation for those specific Un-replaced Cancellations substantiated by the claimant and may result in recovery only with respect to such Un-replaced Cancellations. However, if the lodging facility has food and/or beverage services on site, the evidence of Un-replaced Cancellations shall satisfy causation for the specific losses corresponding to such Un-replaced Cancellations in those service areas as well.

---

[10] See Exhibit C attached hereto for an example of how this calculation is performed.

028667

OR

  b. The claimant provides contemporaneous written evidence of the cancellation of a contract, or loss of previously-committed capital investments from investors and/or business loans arising from the DWH Spill that the claimant was not able to replace.  In the absence of contemporaneous written evidence, the claimant must present an affidavit from an independent third party affirming that the cancellation or loss was spill-related.  Proof of any spill-related contract cancellations or losses discussed above only establishes causation for the specific loss substantiated by the claimant and may result in recovery of amounts solely associated with such loss.

## IV. COMPENSATION CALCULATION

### A. Determination of Claimant's Expected Profit/Loss

1. Claimant's Expected Revenue and Expected Costs shall equal, respectively:

  a. Actual revenue earned and actual variable costs incurred by claimant's business during the Benchmark Period; or

  b. Claimants can alternatively elect to establish Expected Revenue and Expected Costs based on financial projections for the Start-up Business.  Projections must be prepared prior to the DWH Spill and provided to and utilized by a financial institution, other entity in the primary business of lending or investing money (ex.- private equity firms, investment banks, etc.), or non-family private investors with business lending experience (hereafter referred to as "Lender") who confirm their use of such projections in extending credit to the Start-up Claimant.

  c. Regardless of the basis upon which Expected Revenue and Expected Costs are established, the determination will exclude any one-time non-operating income/expenses (including, but not limited to, any business interruption insurance proceeds received by the claimant during the relevant period), any payments received by the claimant from BP or the GCCF pursuant to BP's OPA Claims process for the same business claim.

028668

    2.     Claimant's Expected Profit/Loss for the Compensation Period will be calculated as the difference between the claimant's Expected Revenue and Expected Costs, provided that Expected Revenue and Expected Costs must both be based on actual results from the Benchmark Period, or, if alternatively selected by claimants in Zones B and C, both Expected Revenue and Expected Costs must both be based on qualifying projections as described herein.

**B.     Determination of Claimant's Actual Profit/Loss**

    1.     Actual Profit/Loss generated over the Compensation Period will be calculated as the difference between (i) the claimant's actual revenues and (ii) the claimant's actual variable costs, both for the Compensation Period.

    2.     Actual revenue and actual Variable Costs will exclude any one-time non-operating income/expenses (including any business interruption insurance proceeds received by the claimant during the relevant period), any payments received by the claimant from BP or the GCCF pursuant to BP's OPA Claims process. Further, for claimants that participated in the VoO program, Actual Profit/Loss will exclude revenue generated by or costs incurred in connection with VoO.[11]

**C.     Calculation of Claimant Compensation**

    1.     Calculate the claimant's Base Compensation Loss as the difference between (i) claimant's Expected Profit/Loss and (ii) the claimant's Actual Profit/Loss generated over the Compensation Period.

    2.     Apply the agreed-upon RTP.

    3.     Deduct any payments received by the claimant from BP or the GCCF pursuant to BP's OPA claims process, any VoO Settlement Payment Offset and VoO Earned Income Offset, where applicable.

**D.     DOCUMENTATION REQUIREMENTS**

In addition to the relevant information requirements set forth in the Documentation Requirements for Business Claims, the following supplemental information may be required:

---

[11] Claimants are required to report payments received under the VoO program. If claimants that received VoO payments fail separately to report costs incurred in VoO and non-VoO activities, then Actual Profit/Loss for non-VoO activity alone can be determined through a pro-rata revenue based allocation of variable costs between VoO and non-VoO related activities.

9

028669

1. Contemporaneously prepared monthly financial statements from the inception of the start-up business through 2011.

2. Documents evidencing loss of previously-committed capital investments from investors and/or business loans due, and the inability to procure replacement financing, as relevant.  Acceptable documentation includes a letter withdrawing capital, or other contemporaneous documentation evidencing the investment withdrawal.

3. Evidence of any payments received by the claimant from BP or the GCCF pursuant to BP's OPA claims process.

4. All financial projections (or business plans containing financial projections) prepared for the Start-up Business prior to the DWH Spill, and contemporaneous documentation and/or written confirmation from the Lender establishing that such projections were submitted to and utilized by the Lender prior to extending credit to the Start-up Business.

    a. Additional documentation as necessary to provide the background and experience of any Lenders not regulated by a government agency (ex.- FDIC, SEC, etc.).

    b. Written confirmation from Lender that projections submitted as part of the claim were utilized by the Lender in granting credit prior to the DWH Spill.

5. Claimants shall provide an executed subrogation waiver or indemnity in the release.

028670

**Exhibit A**

## Example of Upturn Revenue Causation Tests for Start-Up Business Claims
## Claimant in Zone B (8.5% Upturn Revenue Test)

Examples 1 and 2 demonstrate a claimant that passes or fails the Upturn Revenue Causation Test.

### Example 1:

| Month | Revenue by Year | |
|---|---|---|
|  | 2010 | 2011 |
| June | 285,000 | 320,000 |
| July | 330,000 | 350,000 |
| August | 295,000 | 335,000 |
| 3-Month Aggregate: [Sum of June, July, August] | 910,000 | 1,005,000 |
| **Upturn Revenue Percentage:** | **10.4%** | =(1,005,000 - 910,000)/910,000 |

Claimant Passes Upturn Revenue Test

### Example 2:

| Month | Revenue by Year | |
|---|---|---|
|  | 2010 | 2011 |
| June | 285,000 | 290,000 |
| July | 330,000 | 330,000 |
| August | 295,000 | 315,000 |
| 3-Month Aggregate: [Sum of June, July, August] | 910,000 | 935,000 |
| **Upturn Revenue Percentage:** | **2.7%** | =(935,000 - 910,000)/910,000 |

Claimant Fails Upturn Revenue Test

Notes:

Upturn Revenue Causation Test works in the same way for claimants in Zones C or D, with higher thresholds for the revenue upturn. In Zone C the upturn revenue percentage must be 10%. In Zone D the upturn revenue percentage must be 15%.

In these examples the Start-Up business claimant has selected June, July, and August as the three consecutive months to use.

11

## Example of Upturn Revenue Causation Tests for Start-Up Business Claims
## Claimant in Zone B (8.5% Upturn Revenue Test)

Example 3 demonstrates that under an aggregate test, three months of revenues are summed. The individual months may be up or down, as long as the three month aggregate period passes the test.

### Example 3A:

| Month | Revenue by Year | |
|---|---|---|
| | 2010 | 2011 |
| June | 285,000 | 320,000 |
| July | 330,000 | 350,000 |
| August | 295,000 | 335,000 |
| 3-Month Aggregate: [Sum of June, July, August] | 910,000 | 1,005,000 |
| Upturn Revenue Percentage: | 10.4% | =(1,005,000 - 910,000)/910,000 |

*Claimant Passes Upturn Revenue Test*

### Example 3B:

| Month | Revenue by Year | |
|---|---|---|
| | 2010 | 2011 |
| June | 285,000 | 220,000 |
| July | 330,000 | 450,000 |
| August | 295,000 | 335,000 |
| 3-Month Aggregate: [Sum of June, July, August] | 910,000 | 1,005,000 |
| Upturn Revenue Percentage: | 10.4% | =(1,005,000 - 910,000)/910,000 |

*Claimant Passes Upturn Revenue Test*

### Example 3C:

| Month | Revenue by Year | |
|---|---|---|
| | 2010 | 2011 |
| June | 285,000 | 220,000 |
| July | 330,000 | 250,000 |
| August | 295,000 | 535,000 |
| 3-Month Aggregate: [Sum of June, July, August] | 910,000 | 1,005,000 |
| Upturn Revenue Percentage: | 10.4% | =(1,005,000 - 910,000)/910,000 |

*Claimant Passes Upturn Revenue Test*

Notes:

Upturn Revenue Causation Test works in the same way for claimants in Zones C or D, with higher thresholds for the revenue upturn. In Zone C the upturn revenue percentage must be 10%. In Zone D the upturn revenue percentage must be 15%.

In these examples the Start-Up business claimant has selected June, July, and August as the three consecutive months to use.

028672

**Exhibit B**

# Example of Customer Mix Test for Start Up Business Claimants
# (Customers in Zones A-C)

Based on 3-month time period selected for Modified V or Down-Only test

### Example 1:

| Customer Residence | Aggregate of June-August '10 | Aggregate of June-August '11 |
|---|---|---|
| | LT= Less than | GE=Greater than or equal to |
| Zone D | $80,000 | $85,000 |
| Zones A-C | $20,000 | $25,000 |
| Total | $100,000 | $110,000 |
| % Zones A-C | 20% | 23% |

*Claimant passes Customer Mix Test:* *Claimant has a 15 percent increase in share of revenue from customers in Zones A-C [15%= .15 = (23-20)/20]*

### Example 2:

| Customer Residence | Aggregate of June-August '10 | Aggregate of June-August '11 |
|---|---|---|
| Zone D | $50,000 | $55,000 |
| Zones A-C | $50,000 | $55,000 |
| Total | $100,000 | $110,000 |
| % Zones A-C | 50% | 50% |

*Claimant fails Customer Mix Test:* *No change in share of revenue from customers in Zones A-C.*

### Example 3:

| Customer Residence | Aggregate of June-August '10 | Aggregate of June-August '11 |
|---|---|---|
| Zone D | $50,000 | $55,000 |
| Zones A-C | $50,000 | $65,000 |
| Total | $100,000 | $120,000 |
| % Zones A-C | 50% | 54% |

*Claimant fails Customer Mix Test:* *Claimant has an 8% increase in share of revenue from customers in Zones A-C [8% = .08 = (54-50)/50]*

028673

**Exhibit C**

# Example of Customer Mix Test for Start Up Business Claimants (Non-Local Customers)

Based on 3-month time period selected for Modified V or Down-Only test

| **Example 1:** | LT= Less than | GE=Greater than or equal to |
|---|---|---|
| **Customer Residence** | **Aggregate of June-August '10** | **Aggregate of June-August '11** |
| LT 60 miles from claimant | $80,000 | $85,000 |
| GE 60 miles from claimant | $20,000 | $25,000 |
| Total | $100,000 | $110,000 |
| % GE 60 miles | 20% | 23% |
| | *Claimant passes Customer Mix Test:  Claimant has a 15 percent increase in share of revenue from non-local customers  [15%= .15 = (23-20)/20]* ||

| **Example 2:** | | |
|---|---|---|
| **Customer Residence** | **Aggregate of June-August '10** | **Aggregate of June-August '11** |
| LT 60 miles from claimant | $50,000 | $55,000 |
| GE 60 miles from claimant | $50,000 | $55,000 |
| Total | $100,000 | $110,000 |
| % GE 60 miles | 50% | 50% |
| | *Claimant fails Customer Mix Test:  No change in share of revenue from non-local customers.* ||

| **Example 3:** | | |
|---|---|---|
| **Customer Residence** | **Aggregate of June-August '10** | **Aggregate of June-August '11** |
| LT 60 miles from claimant | $50,000 | $55,000 |
| GE 60 miles from claimant | $50,000 | $65,000 |
| Total | $100,000 | $120,000 |
| % GE 60 miles | 50% | 54% |
| | *Claimant fails Customer Mix Test:  Claimant has an 8% increase in share of revenue from non-local customers [8% = .08 = (54-50)/50]* ||

028674