# EXHIBIT 8D

## Addendum to Individual Framework

**I.**    **Individual Periodic Vendors ("IPV")**[1]

    **A.**    **Eligibility**

        An **IPV** is a Natural Person claiming economic loss during a period in May through December 2010 who satisfies all of the following criteria:

        1.    Regularly sold at retail during 2009 and 2010 any of the legal food, souvenir, art, tourist-related or water-related goods or services listed in Attachment A or substantially equivalent items ("**Covered Sales**") to CONSUMERS in Zones A, B or C during May through December 2009 and/or May through December 2010.

        2.    Made such **Covered Sales,** primarily to non-local CONSUMERS,[2] except that water-related **Covered Sales**, need not be primarily made to non-local CONSUMERS.

        3.    Did not maintain a permanent business location in a building at which the claimant made **Covered Sales**.

        4.    Held any licenses required by law.

        5.    Was not employed by an employer in connection with such **Covered Sales**.

        6.    Does not have **Tax Information Documents** sufficient to support a claim under the Business Compensation Framework for this claimed loss.

    **B.**    **Causation**

        1.    Causation shall be presumed for claimed losses associated with lost **Covered Sales** in Zones A and B. If the claimant alleges lost **Covered Sales** in Zone C, the claimant must provide either:

            a.    Documents establishing a decline of 5% or more in net earnings from the claimant's **Covered Sales** in Zone C during the claimant-selected period of 3 consecutive months or more during May through December 2010 ("**Compensation Period**"), compared to the same 3 or more consecutive month period in 2009; OR

---

[1] This section is not intended to compensate losses associated with vendors who do not qualify for compensation pursuant to Sections I – V and whose claimed losses relate to income from **Festivals** (as defined herein). **Festival**-related losses are addressed in a separate section of this document. Claimants may, however, file separate claims for compensation associated with **Festival-**related losses and **IPV**-related losses, as applicable.

[2] CONSUMER shall have the meaning in the Economic and Property Damages Settlement Agreement. A CONSUMER shall be considered a "non-local CONSUMER" if they reside more than 60 miles from the location at which claimant made the **Covered Sale**.

  b.  A statement from an **Adjacent Business** as defined in Section I(C)4(e) below, that the **Adjacent Business** experienced a decline in sales to non-local CONSUMERS during May through December 2010 compared to May through December 2009 due to or resulting from the DWH Spill.

**C.**  **Documentation Requirements**

An **IPV** under this Section must provide the documents indicated below:

1.  **Records Regarding Covered Sales**

  a.  Documents regarding the **IPV**'s **Covered Sales** in Zones A, B or C to CONSUMERS, including non-local CONSUMERS, from May through December 2009 and May through December 2010. The information must be sufficient for the **Claims Administrator** to determine that the **IPV** was in the business of regularly making such **Covered Sales** prior to April 20, 2010, and includes all information regarding the **IPV**'s revenues from **Covered Sales** from May through December 2009 and May through December 2010, as well as corresponding expenses. Such documentation could include, but is not limited to, the following:

    i.  Sales logs, sales tax receipts, cash receipts registers, credit card registers, bank statements or other contemporaneous records; and/or

    ii.  Receipts from third-party vendors or other sources related to the purchase of materials or equipment related to the **Covered Sales**; and/or

    iii.  Documents establishing any wages paid to employees or amounts paid to other individuals who assisted in making the **Covered Sales**, or any other expenses incurred in connection with the **Covered Sales**.

  b.  Photographs and other documentation (including but not limited to news articles, sales flyers or advertisements) reflecting (i) the goods or services sold in **Covered Sales** by the **IPV,** (ii) the location(s) at which the **IPV** sold the goods or services (including any documents providing information regarding an **Adjacent Business**), (iii) the prices charged for **Covered Sales** of goods or services, and/or other product information, and (iv) any biographical or other background information on the **IPV** selling the goods or services. The **IPV** shall also provide the date(s) of any photographs and the locations depicted. If the exact date is not available, the **IPV** may provide the month, or range of months, and year.

  c.  Documents establishing the **IPV**'s total earned income from **Covered Sales** (net of all variable expenses) for May through December 2009 and May through December 2010.

027376

      d.      Any available documents showing that the **IPV** made **Covered Sales** to non-local CONSUMERS in each period, with supporting information and/or documentation sufficient to permit the **Claims Administrator** to reasonably conclude that the **IPV** made sales to non-local CONSUMERS in each period.

           i.      For **IPVs** selling in Zones A and B, sales to non-local CONSUMERS shall be presumed.

           ii.      For **Covered Sales** in Zone C, the **IPV** may provide **IPV's** receipts reflecting purchasers' addresses, and/or documentation establishing that the **Covered Sales** were made on an interstate highway or other highway in Zone C or in an area generally visited by Tourist such as a museum, zoo, or historic site.

      e.      Documents identifying by name, address and telephone number any employee in connection with the **Covered Sales** of claimant during 2009 or 2010.

2. **Licensing Documentation**: If a government-issued license/permit was required to make any **Covered Sales**, **IPV** shall provide a copy of valid 2009 and 2010 licenses,[3] or evidence such existed, such as:

- Business license.
- Vendor's license.
- Peddlers license.
- Itinerant Vendor license.
- Commercial/recreational fishing license.
- Occupational license.
- Sales tax license.
- Other licenses & permits related to income sources.
- Canceled check for license or affidavit from issuing government body.

3. **IPV Employability Documentation**[4]: The **IPV** must provide both:

---

[3] To the extent a state or municipality or other governmental agency agrees to provide the **Claims Administrator** with access to any official database sufficient for the **Claims Administrator** to confirm the claimant possessed a valid 2009 and 2010 license, the **Claims Administrator** need not require from the claimant a copy of the valid license. Rather, the **Claims Administrator** is authorized to accept from the claimant the license number as sufficient to satisfy this subpart, and the **Claims Administrator** will use the database to confirm claimant's license is valid.

3

      a.      A copy of a Social Security card, government issued identification, temporary worker visa, or green card that was valid as of April 20, 2010 or verification of existence of at least one such document from a public database providing the same information as would be provided from the original document;

*AND*

      b.      Evidence that the **IPV** was at least 16 years of age as of April 20, 2010. Acceptable evidence includes a copy of a valid driver's license, a valid passport, or the **IPV**'s birth certificate, other government issued identification indicating date of birth, or verification of existence of at least one such document from a public database providing the same information as would be provided from the original document.

4.    **<u>IPV Sworn Written Statement</u>**:  The **IPV** must submit a **Sworn Written Statement** that sets forth all of the following:

      a.      Verification that the **IPV** does not have available, and is not able to provide, **Tax Information Documents** sufficient to support a claim as a business under the Business Compensation Framework for the claimant **Covered Sales**.

      b.      A description of the **Covered Sales** made by the **IPV**, including a description of the relevant goods or services sold by the **IPV**.

      c.      A statement that (i) the **IPV** possessed and has attached copies of all required licenses as set forth in section IC.2., or (ii) the reason no such license(s) were required.

      d.      A statement that all available documentation regarding revenue and expenses related to **Covered Sales** during the periods (i) May through December 2009 and (ii) May through December 2010 that the **IPV** possesses or has access to has been provided in support of the claim.

      e.      The name, address, telephone number and a brief description of at least one business satisfying the Tourism definition and located on a parcel of property with a boundary within 100 yards of any location at which the **IPV** made or arranged for **Covered Sales** ("**Adjacent Business**"), and a **Sworn Written Statement** from an owner or employee of such business

---

[4]    To the extent the state or federal government agrees to provide the **Claims Administrator** with access to any official database sufficient for the **Claims Administrator** to confirm that a claimant possessed valid documentation of the type required in subparts 3(a) and 3(b).  The **Claims Administrator** may not require from the claimant a copy of the requested document.  Rather, the **Claims Administrator** is authorized to accept from the claimant the relevant government issued number as sufficient to satisfy this subpart 3, and the **Claims Administrator** shall utilize the database to confirm the claimant's government issued numbered is valid.

        in support of the claim.  If no such **Adjacent Business** exists, the **IPV** shall so state.

    f.    To the extent the **IPV** is not able to provide documents demonstrating the revenue associated with **Covered Sales**, the **IPV** should estimate the **Covered Sales** revenues in each of Zone A, B or C for both May through December 2009 and May through December 2010, and explain the basis for the estimates provided (e.g., "Sold ___ bags of peanuts at ___ per unit").  To the extent documentation exists in support of the earned income estimate (or components thereof), copies of such documentation must be provided.

    g.    To the extent the **IPV** is not able to provide documents demonstrating the expenses associated with the **Covered Sales**, the **IPV** should provide (i) a description of any materials purchased by the **IPV** in connection with making the **Covered Sales**, including the name and address of the provider of the materials, and the estimated costs of such materials in total and/or for each good or service sold in **Covered Sales**, (ii) an estimate of any wages paid to employees or amounts paid to other individuals who assisted in making the **Covered Sales** and an identification of the period to which such payments relate, and (iii) a description and estimate of any other expenses incurred in connection with the **Covered Sales**.

    h.    A description of any cash or in-kind payments made by the **IPV** in 2009, 2010 and/or 2011 to an **Adjacent Business** in consideration of such **Adjacent Business** permitting or facilitating **IPV**'s **Covered Sales**.

    i.    An explanation sufficient to permit the **Claims Administrator** to determine that any reduction of **IPV**'s net earnings from **Covered Sales** from May through December 2010 compared to prior periods was due to or resulting from the DWH Spill.

5.    **Adjacent Business Sworn Written Statement**:

The **IPV** must procure and submit a **Sworn Written Statement** from an owner or employee of an **Adjacent Business(es)** ("**Adjacent Business Affiant**"), setting forth the following:

    a.    The name, address, telephone number of the **Adjacent Business Affiant** and relationship to the **Adjacent Business**; and

    b.    The business name, address(es), telephone number(s), and website(s) of the **Adjacent Business**, and a description of the nature of the business; and

    c.    A description of any cash or other payments made by the **IPV** in 2009, 2010 and/or 2011 to the **Adjacent Business** in consideration of such **Adjacent Business** permitting or facilitating the **IPV**'s sales; and

027379

      d.      A statement setting forth the dates and other information regarding the **IPV**'s **Covered Sales** witnessed by the **Adjacent Business Affiant** – e.g., "I observed **IPV** selling _____ [TYPE OF GOODS OR SERVICES] at [LOCATION] during approximately [DAYS OR WEEKS] during [PRE-SPILL PERIOD] and I observed the **IPV** selling _____ [TYPE OF GOODS OR SERVICES at [LOCATION] during approximately [DAYS OR WEEKS] during [the **Compensation Period**]." If the **IPV** made **Covered Sales** in multiple locations during the pre-DWH Spill period, and wishes to rely upon all of those sales, the **IPV** should submit an **Adjacent Business Sworn Written Statement** with respect to each such location; and

      e.      For an **IPV** alleging losses in Zone C who does not submit documentation establishing a decline of 5% or more in net earnings from **Covered Sales** in Zone C during the **Compensation Period**, compared to the same 3 or more consecutive month period in 2009, then the **Adjacent Business Affiant** must set forth the following additional information:

          i.      A statement from the **Adjacent Business Affiant** that the **Adjacent Business** experienced a decline in sales to non-local CONSUMERS during the same three or more consecutive months in May through December 2010 compared to the same three or more consecutive months in May through December 2009;

          ii.      A description of the amount and time period of such decline, the **Adjacent Business Affiant's** basis for such statements; and

          iii.      An explanation of how the decline was due to or resulting from the DWH Spill.

**D.**      <u>**Compensation Calculation**</u>

Consistent with the Causation provisions of Section B.1., the **Claims Administrator** shall evaluate the sufficiency and reliability of information provided by **IPV** and the supporting **Adjacent Business Affiant(s)**, including the sworn claim form, **Sworn Written statements**, interviews (if any) and/or any supplemental information the **Claims Administrator** may require, to determine whether (i) the **IPV** engaged in **Covered Sales** to non-local CONSUMERS and such non-local **Covered Sales** declined in the **Compensation Period** and/or (ii) the **IPV** experienced any other decline in **Covered Sales** due to or resulting from the DWH Spill. Compensation may be awarded where the **Claims Administrator** determines that causation has been established based upon the above-described information as well as sufficient documentation for the **Claims Administrator** to determine that the **Covered Sales** identified by the claimant occurred during the periods indicated ("**Sufficient Documentation**"). Examples of such **Sufficient Documentation** include:

      1.      A summary spreadsheet with accompanying supporting schedules reflecting the total revenues and total expenses associated with **Covered Sales**; or

027380

    2.      Documents from persons or entities unrelated to the claimant that reflect the total revenues and total expenses associated with **Covered Sales**.

The **IPV Earnings from Covered Sales** shall be calculated as the difference between a) the **IPV's** total revenues less corresponding total expenses related to **Covered Sales** for any claimant selected **Compensation Period** of three or more consecutive months between May 1 and December 31, 2010, and b) the same months in 2009.

The **IPV's Lost Earnings** shall be calculated as the **IPV Earnings from Covered Sales** for the **Base Period** minus the **IPV Earnings from Covered Sales** for the **Compensation Period.**

The **IPV's Compensation Amount** shall be equal to the lesser of the **IPV's Lost Earnings** or $12,000. An RTP of 1 shall be applicable.

If the **Claims Administrator** has reason to question the reliability of the information provided or if the **Claims Administrator** feels that the information supplied is insufficient for a determination of the **IPV**'s loss to be made under this Section I, then the **Claims Administrator** may request an interview of the **IPV** and/or the **Adjacent Business Affiant(s)** consistent with the **Interview Procedures** set forth in the **Addendum Regarding Interviews of Claimants Alleging Individual Economic Loss.**[5]

The **Claims Administrator** shall determine the Final Compensation Amount based on the information provided by the **IPV** and the supporting **Adjacent Business Affiant**(s), including the sworn claim form, affidavits, interviews, any supplemental information the Claims Administrator may require the **IPV** to provide to support the claim, and/or any other information the **Claims Administrator** may determine to be relevant and reliable. The **Claims Administrator** may rely on his credibility and reliability determinations in determining the Final Compensation amount, if any, to be provided to the **IPV**.

II. **FESTIVAL VENDORS**[6]

    A.    <u>**Eligibility**</u>

A "**Canceled Festival**" is a **Festival** that occurred at any time from May through December 2009 and was originally scheduled to occur at any time between May through December 2010, but was canceled after April 20, 2010 as a result of the DWH Spill.

---

[5] Nothing in this Individual Economic Loss Framework shall in any way limit the right and obligation of the **Claims Administrator** to investigate fully all suspicions of fraudulent conduct by or on behalf of any claimant, including but not limited to conducting any interviews and obtaining any documents the **Claims Administrator** deems necessary.

[6] For purposes of this document, **IPVs** and **Festival Vendors** are considered to be separate claimants, but nothing precludes a claimant from making a claim both as a **IPV** and as a **Festival Vendor**.

[6] The Parties shall seek a Court Order authorizing them to obtain from relevant state and local authorities information regarding examples of **Festivals** that may be presented at the Fairness Hearing.

7

A "**Festival**" includes organized street festivals, tournaments or major sporting events, outdoor art exhibitions, carnivals or other similar events of the type set forth in Attachment B held in Zone A, B or C at any time during May through December 2009 and/or May through December 2010.

"**Festival Sales**" are legal sales of items defined as **Covered Sales** made at retail at **Festivals**.

A "**Replacement Festival**" includes any organized street festival, tournament or major sporting event, outdoor art exhibition, carnival or other similar event of the type set forth in Attachment B, regardless of where that event was held, in which the claimant participated between May and December 2010 in lieu of a **Canceled Festival**.

"**Replacement Festival Sales**" are legal sales of items defined as **Covered Sales** made at retail at **Replacement Festivals**.

A claimant must be an eligible **Festival Vendor** to qualify for compensation pursuant to this Section II.  A "**Festival Vendor**" (also referred to herein as "claimant") is a Natural Person claiming economic loss for a period in May through December 2010 who satisfied all of the following criteria below:

1. Regularly made **Festival Sales** prior to April 20, 2010; and

2. Held any and all licenses and/or permits required by law; and

3. Was not employed by an employer in connection with such sales; and

4. Does not have **Tax Information Documents** sufficient to support a claim under the Business Compensation Framework; and

5. Claims a loss of revenue and earnings related to a **Festival** in which the **Festival Vendor** participated or would have participated absent the DWH Spill.

B. <u>Causation</u>

1. Causation shall be presumed for claimed losses associated with **Festival Sales** in Zones A and B.

2. If the claimant alleges lost eligible **Festival Sales** in Zone C, the claimant must provide all of the following:

    a. A **Festival Vendor Sworn Written Statement** that includes the information required in Section I(C)5(g); and

    b. Certain relevant documentation specified herein; and

    c. A **Festival Coordinator Sworn Written Statement** by a **Festival Coordinator** of each **Festival** at which the **Festival Vendor** planned to, or did, make **Festival Sales**.  The terms **Festival Coordinator Sworn**

8

>           **Written Statement** and **Festival Coordinator** are defined in Sections II(C)5 below.

C. <u>**Documentation Requirements**</u>

A **Festival Vendor** under this Section must provide the documents indicated below:

1. <u>**Records Regarding Festival Sales**</u>

    a. Documents regarding the **Festival Vendor**'s **Festival Sales**, from both May through December 2009 and May through December 2010, and for any **Replacement Festival Sales** from May through December 2010. The information must be sufficient for the **Claims Administrator** to determine that the **Festival Vendor** was in the business of regularly making **Festival Sales** prior to April 20, 2010, and includes all information regarding the **Festival Vendor's** revenues and expenses from **Festival Sales** from May through December 2009 and May through December 2010, and for **Replacement Festival Sales** from May through December 2010. Such documentation could include, but is not limited to, the following:

        i. Sales logs, sales tax receipts, cash receipts registers, credit card registers, bank statements or other contemporaneous records; and/or

        ii. Receipts from vendors or other sources related to product costs, material purchases, and/or equipment purchases related to the **Festival Sales** and **Replacement Festival Sales**; and/or

        iii. Documents establishing any wages paid to employees or amounts paid to other individuals who assisted in making the **Festival Sales** or **Replacement Festival Sales**, or any other expenses incurred in connection with the **Festival Sales** or **Replacement Festival Sales**.

    b. Documents evidencing participation in any and all **Festivals** during the period May through December 2009 and May through December 2010, and all **Replacement Festivals** from May through December 2010, including but not limited to (i) records of payment made by **Festival Vendor** to participate in each **Festival** or **Replacement Festival**, if applicable, and (ii) entry or registration forms, or other documents showing all booth or stall assignments, if applicable.

    c. If applicable, documents evidencing **Festival Vendor's** intended participation in a **Canceled Festival**, including but not limited to (i) records of payment made by **Festival Vendor** to participate in each **Festival** and returned due to the **Canceled Festival** being canceled, and (ii) entry or registration forms, or other documents showing all booth or stall assignments, and (iii) any documents notifying the **Festival Vendor** that the **Canceled Festival** was canceled. The **Festival Vendor shall** also

9

       identify any **Replacement Festival** in which the **Festival Vendor** participated and the corresponding **Canceled Festival**. If the **Festival Vendor** did not participate in any **Replacement Festivals**, the **Festival Vendor** should so state.

  d. Documents identifying by name, address and telephone number any employee in connection with the **Festival Sales** or **Replacement Festival Sales** of claimant during 2009 or 2010.

2. **Licensing Documentation**[7]: If a government-issued license/permit was required to make any **Festival Sales** or **Replacement Festival Sales**, **Festival Vendor** shall provide a copy of valid 2009 and 2010 licenses, such as:

- Business license.
- Vendor's license.
- Commercial/recreational fishing license.
- Occupational license.
- Peddler's license.
- Itinerant Vendor license.
- Sales tax license.
- Other licenses & permits related to income sources.

3. **Festival Vendor's Employability Documentation**[8]: The **Festival Vendor** must provide both:

  a. A copy of a Social Security card, government issued identification or card, temporary worker visa, or green card that was valid as of April 20, 2010 or a verification of existence of at least one such document from a public database providing the same information as would be provided from the original document;

---

[7] To the extent a state or municipality or other governmental agency agrees to provide the **Claims Administrator** with access to any official database sufficient for the **Claims Administrator** to confirm the claimant possessed a valid 2009 and 2010 license, the **Claims Administrator** need not require from the claimant a copy of the valid license. Rather, the **Claims Administrator** is authorized to accept from the claimant the license number as sufficient to satisfy this subpart, and the **Claims Administrator** will use the database to confirm claimant's license is valid.

[8] To the extent the state or federal government agrees to provide the **Claims Administrator** with access to any official database sufficient for the **Claims Administrator** to confirm that a claimant possessed valid documentation of the type required in subparts 3(a) and 3(b). The **Claims Administrator** may not require from the claimant a copy of the requested document. Rather, the **Claims Administrator** is authorized to accept from the claimant the relevant government issued number as sufficient to satisfy this subpart 3, and the **Claims Administrator** shall utilize the database to confirm the claimant's government issued numbered is valid.

10

*AND*

    b.    Evidence that the **Festival Vendor** was at least 16 years of age as of April 20, 2010. Acceptable evidence includes a copy of a valid driver's license, a valid passport, or a copy of the **Festival Vendor**'s birth certificate or verification of existence of at least one such document from a public database providing the same information as would be provided from the original document.

4.    <u>**Festival Vendor Sworn Written Statement**</u>:  The **Festival Vendor** must submit a **Festival Vendor Sworn Written Statement** setting forth all of the items below:

    a.    Verification that the **Festival Vendor** does not have available, and is not able to provide, **Tax Information Documents** sufficient to support a claim as a business under the Business Compensation Framework.

    b.    A description of the **Festival Sales** and **Replacement Festival Sales**, made by the **Festival Vendor**, including a description of the relevant goods or services sold by the **Festival Vendor**.

    c.    A statement that (i) the **Festival Vendor** possessed and has attached copies of all required licenses and/or permits as set forth in Section II(C)2, or (ii) that no such license(s) were required.

    d.    A statement that all available receipts or records of **Festival Sales** and/or **Replacement Festival Sales** from (i) May through December 2009 and (ii) May through December 2010 that **Festival Vendor** possesses or has access to have been provided in support of the claim.

    e.    A list of each **Festival** and **Replacement Festival** in which the **Festival Vendor** participated as a vendor in 2009 and 2010, and each **Canceled Festival**. The **Festival Vendor** must also provide the following in writing, as well as the supporting documentation identified above:

        i.    the name, date(s) and location(s) of each **Festival**, or **Replacement Festival**, and, for **Canceled Festivals**, the name and originally planned date(s) and location(s);

        ii.    the name, address, business telephone number, and a brief description of any sponsor or organizer of each **Festival, Canceled Festival** and **Replacement Festival**;

        iii.    a description of all fees paid in connection with participation or exhibition in each **Festival, Canceled Festival** or **Replacement Festival**; and

        iv.    for each **Festival** or **Replacement Festival**, a statement that provides all booth or stall assignments, records of payment made by **Festival Vendor** to participate in each **Festival** or

                       **Replacement Festival**, and sales tax receipts obtained by the **Festival Vendor** in connection with their participation.

        f.        To the extent the **Festival Vendor** is unable to provide documents demonstrating the revenue associated with **Festival Sales** and/or **Replacement Festival Sales**, the **Festival Vendor** should estimate the revenue from **Festival Sales** for both May through December 2009 and May through December 2010 and for **Replacement Festival Sales** from May through December 2010, and explain the basis for the estimates provided (e.g., "Sold ___ bags of peanuts at ___ per unit"). To the extent documentation exists in support of the earned income estimate (or components thereof), provide copies of such documentation.

        g.        To the extent the **Festival Vendor** is not able to provide documents demonstrating all expenses associated with the **Festival Sales** or **Replacement Festival Sales**, the **Festival Vendor** should provide a description of any materials purchased by **Festival Vendor** in connection with making the **Festival Sales** or **Replacement Festival Sales**, including the name and address of the provider of the materials, the actual or estimated costs of such materials in total and/or for each good or service item sold.

        h.        An explanation sufficient to permit the **Claims Administrator** to determine that any reduction of **Festival Vendor Earnings** from **Festival Sales** or **Replacement Festival Sales** in May through December 2010 compared to **Festival Vendor Earnings** from the same **Festivals** (and any **Festivals** canceled in 2010 due to the DWH Spill) was due to or resulting from the DWH Spill, where **"Festival Vendor Earnings"** shall be calculated as the **Festival Vendor's** total revenues less total expenses associated with **Festival Sales**.

5.        **Festival Coordinator Sworn Written Statement(s):**  A **Sworn Written Statement** from an individual representing the entity or committee responsible for organizing the **Festival** ("**Festival Coordinator**") for each **Festival, Canceled Festival** or **Replacement Festival** for which loss is claimed setting forth all of the following:[9]

        a.        The name, address, telephone number of the **Festival Coordinator** affiant.

        b.        The name, date and location of each **Festival** or **Replacement Festival** for which the affiant served as a **Festival Coordinator** and in which the **Festival Vendor** applied to participate, and the name, address and

---

[9] If the **Festival Coordinator** is willing to provide at one time information identified in subparts 5(c), 5(d) and 5(e) for all **Festival Vendors** at one time, then a single **Festival Coordinator Sworn Written Statement** shall be sufficient for all claims by **Festival Vendors**. Alternatively, the **Festival Coordinator** may prefer to provide separate **Festival Coordinator Sworn Written Statements** for each **Festival Vendor** containing the information required in subparts 5(c), 5(d) and 5(e), and this shall likewise be acceptable.

12

027386

        business telephone number of any sponsor or organizer of each such **Festival, Canceled Festival** or **Replacement Festival**.

    c.    Identification of each **Festival** or **Replacement Festival** in which the **Festival Vendor** (i) submitted an application, and (ii) paid a deposit or fee, and (iii) either (a) participated, or (b) did not participate because it was a **Canceled Festival**. If the **Festival Coordinator** is providing information regarding a **Canceled Festival** that was canceled after April 20, 2010, and therefore (i) no application was submitted by the **Festival Vendor**, and/or (ii) no deposit or fee was paid by the **Festival Vendor** for the **Canceled Festival**, the **Festival Coordinator** need only provide the requested information regarding the **Festival Vendor's** participation in the same **Festival** in prior periods, as well as any information available to the **Festival Coordinator** regarding the **Festival Vendor's** expected participation in the **Canceled Festival**.

    d.    Copies of any application, or record of deposit or fee or notice of cancellation identified in (c) above.

    e.    Any applicable permit required to hold any **Festival** or **Replacement Festival**, and, if available, any **Canceled Festival**, in which the **Festival Vendor** applied to participate.

    f.    Attendance data (or an estimate) for each **Festival** in which the **Festival Vendor** participated and, if the same **Festival** was held in a prior year, attendance data (or an estimate) for the nearest prior year or period prior to the DWH Spill.

    g.    Only if the **Festival** is located in Zone C, the **Festival Coordinator** must also set forth that the **Festival** was a **Canceled Festival** or experienced a decline in attendance, compared to either the prior year or projected attendance, due to or resulting from the DWH Spill. The **Festival Coordinator** must include (i) a statement describing the reasons for the cancellation or the amount of decline, and the affiant's basis for such statements, and (ii) a statement that the **Festival Coordinator** affiant believes that the cancellation of a **Canceled Festival**, or the decline in attendance at a **Festival** during the period May 1 through December 31, 2010 was due to or resulting from the DWH Spill.

6.    **Sponsor Sworn Written Statement**: If no **Festival Coordinator** affiant is available, submit a **Sworn Written Statement** from another person other than a relative who has personal knowledge of the **Festival Vendor's** participation in a **Festival** or non-participation in a **Canceled Festival** (including but not limited to a customer, fellow **Festival Vendor**, or operator of a business located within 100 feet of the **Festival Vendor's** sales location at the **Festival**), providing details regarding the **Festival** or **Canceled Festival** and the **Festival Vendor's** relationship to such **Sponsor** that shall set forth all of the following:

    a.    Name, address, phone and e-mail of the **Sponsor.**

13

027387

      b.      Basis for the personal knowledge.

      c.      Description of the **Festival** or **Canceled Festival.**

      d.      Information regarding the **Festival Vendor's** participation in the **Festival** (including date(s), location(s) and the description of the **Festival Sales**, if applicable).

      e.      Information regarding **Canceled Festival** in which the **Festival Vendor** was scheduled and registered to participate (including date(s), location(s) and the description of the **Festival Sales**, if applicable) but did not participate because it was a **Canceled Festival**, and how the cancellation was due to or resulting from the DWH Spill.

7. The **Claims Administrator** shall evaluate the sufficiency and reliability of information provided by **Festival Vendor** and the supporting **Festival Coordinator** affiant(s), including the sworn claim form, the **Festival Vendor Sworn Written Statement**, the **Festival Coordinator Sworn Written Statement(s)**, the **Sponsor Sworn Written Statement(s)** and/or any supplemental information the **Claims Administrator** may require, to determine whether (i) **Festival Vendor** engaged in **Festival Sales** and (ii) such sales declined in the period May through December 2010.

D. <u>**Compensation Calculation**</u>

Where the **Claims Administrator** determines that causation has been established based upon (i) the Zone, or (ii) the **Festival Vendor Sworn Written Statement** and either (a) **Festival Coordinator Sworn Written Statement(s)** or (b) **Sponsor Sworn Written Statement(s)**, as well as other documentation, a **Festival Vendor** relying on this Section II may receive compensation as follows:

1. **Festival Vendors with Documentation Establishing Loss of Earnings from Festivals**

      a.      **Step 1**: Specify **Festivals** or **Canceled Festivals** for which claimant incurred economic loss related to the DWH Spill.

            The **Festival Vendor** will be eligible for compensation for losses associated with each **Eligible Festival.** An "**Eligible Festival**" shall be defined as a **Festival** or **Canceled Festival** that satisfies all of the following criteria:

            i.      The **Festival Vendor** must demonstrate losses associated with the **Festival**.

            ii.      The **Festival** must have taken place (or for a **Canceled Festival**, must have been originally scheduled to take place) between May 1, 2010 and December 31, 2010.

    iii. Claimant must have participated in the **Festival** in 2010, or, for **Canceled Festivals**, the claimant must provide documents establishing the cancellation, and that the claimant participated in same **Festival** in 2009.

    iv. Documentation (including **Festival Coordinator Sworn Written Statement(s)**) must be sufficient to establish loss.

  b. **Step 2:** Determine **Festival Vendor Earnings** in May through December 2009 from **Eligible Festivals** identified in Step 1.

  c. **Step 3:** Determine **Festival Vendor Earnings** from **Eligible Festival(s)** or **Replacement Festival(s)** in May through December 2010.

  d. **Step 4:** Calculate **Festival Vendor Lost Earnings**

  **Festival Vendor Lost Earnings** will be calculated as the difference between **Festival Vendor Earnings** from **Eligible Festival(s)** from May through December 2009 (determined in Step 2) less **Festival Vendor Earnings** from **Eligible Festival(s)** or **Replacement Festival(s)** from May through December 2010 (determined in Step 3).

  Total **Festival Vendor Lost Earnings** may not exceed $12,000.  An RTP of an amount agreed upon by the arties not to exceed 1 shall be applicable.

2. **Festival Vendor Without Sufficient Documentation Of Earnings From Festival Sales Who Relies On Festival Coordinator Sworn Statements**.

For a **Festival Vendor** without documentation sufficient to demonstrate and calculate **Festival Vendor Earnings** from **Eligible Festival(s)**, and who relies on a **Sworn Written Statement(s)** by a **Festival Coordinator**, such **Festival Vendor** will be compensated up to $10,000, based upon the **Claims Administrator's** assessment of the credibility and reliability of the information provided by the **Festival Vendor** in support of the claim (including financial performance, completeness and accuracy of documentation, interview results, and any other relevant information).  No RTP shall be applicable.

If the **Claims Administrator** has reason to question the reliability of the information provided or if the **Claims Administrator** feels that the information supplied in insufficient for a determination of the **Festival Vendor's** loss under this Section II. Then the **Claims Administrator** may request an interview of the **Festival Vendor** and/or the **Festival Coordinator**, consistent with the **Interview Procedures** set forth in the **Addendum Regarding Interviews of Claimants Alleging Economic Loss**.

The **Claims Administrator** shall determine the Final Compensation Amount based on the information provided by the **Festival Vendor** and the supporting **Festival Coordinator** affiant(s), including the sworn claim form, the **Festival Vendor Sworn Written Statement**, the **Festival Coordinator Sworn Written Statement(s)**, the **Sponsor Sworn Written Statement(s)**, interviews and/or any supplemental information the **Claims Administrator** may require the **Festival**

15

027389

**Vendor** to provide to support the claim.  The **Claims Administrator** may rely on his credibility and reliability determinations in determining the Final Compensation Amount, if any, to be provided to the **Festival Vendor**.

16

027390

**Attachment A**

**COVERED SALES**

1. Peanuts (boiled or roasted) or popcorn

2. Hot dogs

3. Ice Cream

4. Snow Cones

5. Tattoos

6. Snakes

7. Beads

8. Fresh fish or shellfish

9. Jams, jellies and preserves, and other canned fruit and vegetables

10. Fruit

11. Small wood carvings such as wood clocks, statues or wall hangings

12. Shell jewelry

13. Street artists, caricaturists, or facepainters

14. Street performers, mimes and magicians

15. Sellers of clothing specifically promoting the city, beaches or other tourism activities (sports teams, fishing, etc.)

16. Hair-weaving and braiding (not including cutting and hairdressing)

17. Shallow Water Divers in portions of the Gulf contained in the Class Definition

18. Boat Repair Divers in portions of the Gulf contained in the Class Definition

19. Swamp Boat and Air Boat Operators in portions of the Gulf contained in the Class Definition

20. Parasail, scuba and snorkel teachers/operators in portions of the Gulf contained in the Class Definition

Expressly excluded from this Framework are Deepwater Divers and any individuals working on an Oil Rig.

027391

**Attachment B**

<u>**INCLUDED IN FESTIVALS**</u>

1. Street festivals or fairs (excluding neighborhood block parties or garage sales or flea markets)

2. Outdoor art exhibitions (same exclusions)

3. Fishing tournaments

4. Golf tournaments

5. Boating tournaments

6. Rodeos

7. 4-H competitions

8. Major college or professional sports events (not including regular season games, local club or K-12 school events)

9. Carnivals

18

027392