# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois  60654

Andrew Langan, P.C.
To Call Writer Directly:
(312) 862-2064
andrew.langan@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

March 1, 2012

**Via E-Mail (Sally_Shushan@laed.uscourts.gov)**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
 Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, LA 70130

Re:  *In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 – Enforcement of the Court's January 20, 2012 Order re Spoliation Sanctions [Rec. Doc. 5307].

Dear Judge Shushan:

BP requests an order compelling Halliburton to comply with the Court's January 20, 2012 Order regarding BP's Motion for Spoliation Sanctions.  This request is submitted pursuant to paragraph 4 of the Order stating the parties should "proceed with all due speed and report any problems to the undersigned immediately."  (Rec. Doc. 5307 at 3).

The January 20, 2012 Order states that "Halliburton and BP shall meet-and-confer on whether the modeling can be replicated."  (Rec. Doc. 5307 at 3).  Halliburton has confirmed that it has the inputs used in the deleted Displace 3D modeling.  Despite BP's efforts, Halliburton refuses to run the Displace 3D model with these inputs or to confirm with Tommy Roth that the output of the modeling "replicate[s]" the deleted modeling that Mr. Roth described as refuting the allegation of mud channeling during the cement job.

## BACKGROUND

This is BP's third round of briefing to obtain Halliburton's non-privileged analysis of its April 19, 2010 cementing job using its proprietary Displace 3D software.

**Round 1.**  BP's efforts to obtain this Displace 3D modeling date back more than six months to the summer of 2011.  In July 2011, BP learned for the first time that Halliburton had conducted proprietary Displace 3D modeling in an email from Tommy Roth, Halliburton's Vice President for Cementing.  *See* Ex. A (TREX-04352) (7/25/10 Roth email dismissing the

Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai      Washington, D.C.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 1, 2012
Page 2

possibility of channeling based on post-incident modeling: "Subsequent testing with 3D confirms statement that spacer was sufficient."); Roth Dep. at 494:13-496:24.  BP could not locate this modeling in Halliburton's production.  Because this modeling was responsive to BP's discovery, BP conferred with Halliburton and requested that it produce the Displace 3D modeling.  Unable to obtain the production of the Displace 3D modeling and other post-incident investigation materials, BP moved to compel production.  (Rec. Doc. 3919).  On September 27, 2011, the Court granted BP's motion in part and ordered Halliburton to complete production of non-privileged documents by October 12, 2011.  (Rec. Doc. 4128 at 3).

        **Round 2.**  In response to the Court's order, Halliburton produced over 10,000 pages of documents relating to its post-incident investigation.  But Halliburton did not produce the Displace 3D modeling (or disclose that it was missing).  After reviewing the production, BP made additional requests for the Displace 3D modeling on October 13 and October 20, 2011.  On November 8, 2011, Halliburton disclosed for the first time during a meet-and-confer that the Displace 3D modeling results were "gone."

        Because relevant evidence governed by the Court's Pretrial Order No. 1 was destroyed, BP moved for spoliation sanctions on December 5, 2011.  (Rec. Doc. 4799).  In its briefing, Halliburton admitted that the models were "deleted."  (Rec. Doc. 4961 at 9).  On January 20, 2012, the Court granted BP's motion as to the Displace 3D modeling.  (Rec. Doc. 5307).  Among other things, the Court ordered (1) Halliburton to provide the computer at issue to Captain Englebert for forensic testing;[1]  (2) the parties to "meet-and-confer on whether the modeling could be replicated"; and (4) the parties to "proceed with all due speed and report any problems to the undersigned immediately."  (Rec. Doc. 5307 at 2-3).

        **Round 3.**  Since January 20, 2012, BP has conferred with Halliburton numerous times but has been unsuccessful in obtaining Halliburton's cooperation to replicate the Displace 3D modeling.  Halliburton confirms that it has the inputs for the deleted Displace 3D model but refuses to proceed further.  Ex. B.  First, Halliburton demands that BP (instead of Halliburton) run the Displace 3D software at a software escrow facility.  *Id.*  Displace 3D is Halliburton's proprietary software, and it would be difficult for BP to locate someone who is both proficient with the software and acceptable to Halliburton given the impending Phase 1 trial.

        Second, Halliburton will not commit to have Tommy Roth, who viewed the deleted Displace 3D model and stated that it "confirms . . . that spacer was sufficient," verify that the

---

[1] The forensic testing supervised by Captain Englebert is an ongoing separate work stream.  The Court recently approved the neutral expert and protocol for the testing.  (Rec. Doc. 5896).

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 1, 2012
Page 3

output "replicate[s]" what he previously saw.  It is undisputed that Halliburton is responsible for the deletion of the Displace 3D modeling.  As such, the parties are in the position of exploring options such as "forensic testing" and determining "whether the modeling could be replicated" due to Halliburton's malfeasance.  The only way to determine whether the new model "replicates" the deleted model referenced in Mr. Roth's email is to ask Mr. Roth.  Halliburton's refusal to commit to Mr. Roth's confirmation of the output is particularly unfair given that Halliburton was responsible for putting the parties in their current position.

For these reasons, BP respectfully requests that the Court order Halliburton to (1) have Mark Savery certify the inputs used in the Displace 3D modeling (Halliburton has agreed to do this (*see* Ex. B)); (2) run the Displace 3D modeling with Mr. Savery's inputs; and (3) have Mr. Roth certify whether the output "replicates" the deleted Displace 3D output referenced in his July 25, 2010 email.

## ARGUMENT

### A.      Legal Standard.

District courts are provided broad discretion to oversee and manage discovery.  *Dollar v. Long Mfg.*, 561 F.2d 613, 616 (5th Cir. 1977).  The district court's discretion in such matters has been described as "considerable."  *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.,* 73 F.3d 546, 569 (5th Cir. 1996) (internal citations omitted).

A party subject to a court order is "under a duty to make in good faith all reasonable efforts to comply" with the order.  *Eulich v. United States*, No. Civ.A.3:99CV1842–L, 2004 WL 1844821, at *3 (N.D. Tex. Aug. 18, 2044) (citing *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976)).  Moreover, courts have not hesitated to hold parties in contempt for failure to comply with orders in good faith.  *See, e.g., S.E.C. v. Res. Dev. Int'l LLC*, 217 Fed. Appx. 296, 299 (5th Cir. 2007) (unpub.) (affirming district court's holding defendant in contempt because "his efforts did not go far enough" in complying with receivership order); *Eulich*, 2004 WL 1844821, at *3 (holding defendant in civil contempt for failure to "make all reasonable efforts to comply" with court order).

BP does not seek sanctions here but seeks only an order compelling Halliburton to comply with the Court's January 20, 2012 Order.  *See, e.g., Fairfield Fin. Mortg. Grp. v. Luca*, No. CV06-5962, 2008 WL 5001105, at *5-6 (E.D.N.Y. 2008) (granting plaintiff's request for order compelling defendant's full compliance with earlier orders).  Specifically, BP requests that the Court issue an order requiring Halliburton to (1) have Mark Savery certify the inputs used in the Displace 3D modeling; (2) run the Displace 3D modeling with Mr. Savery's inputs; and

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 1, 2012
Page 4

(3) have Mr. Roth certify whether the output "replicates" the deleted Displace 3D output referenced in his July 25, 2010 email.

> **B.      Halliburton Should Not Be Permitted to Shift to BP the Burden of Running the Displace 3D Model on Its Proprietary Software and Obtaining Mr. Roth's Cooperation to Verify the Output.**

The parties are in this position of recreating the Displace 3D modeling due to deletion of evidence by Halliburton.  (Rec. Doc. 4961 at 9 (Halliburton admits that the original modeling results "were deleted" from a Halliburton computer)).  Halliburton only revealed that the results were deleted after BP brought a motion for sanctions.

Now that the Court has ordered Halliburton to produce the computer for forensic testing and confer with BP on whether the modeling can be replicated (*see* Rec. Doc. 5307 at 2-3), Halliburton continues to evade its discovery obligations by refusing to run the Displace 3D modeling.  Nor will Halliburton agree to have Mr. Roth confirm the output of any modeling, which is necessary for BP to confirm that the results replicate the results that have been deleted from Halliburton's possession.  Halliburton's stances fall well short of its "duty to make in good faith all reasonable efforts to comply" with the Court's January 20 Order.  *See Eulich*, 2004 WL 1844821, at *3 (citing *Rizzo*, 539 F.2d at 465).  Halliburton put BP in this position of having to replicate Displace 3D modeling because the original results were deleted.  Halliburton should not be rewarded, nor BP punished, by shifting the burden of replicating the missing modeling to BP.

## CONCLUSION

In sum:

    a)  Halliburton was ordered to produce documents related to any non-privileged, post-incident investigation, which includes the Displace 3D modeling at issue, by October 12, 2011 (*see* Rec. Doc. 4128);

    b)  Halliburton failed to do so (*see* Rec. Doc. 4799 at Exs. 32 & 33);

    c)  Halliburton disclosed the disappearance of the modeling only after BP insisted on a firm production date (*see* Rec. Doc. 4799 at Ex. 35);

    d)  Halliburton was ordered to produce the computer for forensic testing, and meet and confer with BP on whether the Displace 3D modeling can be replicated (*see* Rec. Doc. 5307 at 2-3);

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
March 1, 2012
Page 5

     e)   Despite having the inputs, Halliburton now declines to run the Displace 3D modeling or have Mr. Roth confirm the output (*see* Ex. B); and

     f)   Halliburton instead tries to place that burden on BP, who is only in this position because the original modeling was deleted from a Halliburton computer (*see id.*).

     BP has sought the production of this Displace 3D modeling since last summer. With Phase 1 trial scheduled to start in less than a week, BP's prejudice increases with each day that Halliburton refuses to run the model and verify that the output "replicates" the prior output referenced in Mr. Roth's email. BP therefore respectfully requests that the Court issue an order requiring Halliburton to (1) have Mark Savery certify the inputs used in the Displace 3D modeling (Halliburton has already agreed to do this); (2) run the Displace 3D modeling with Mr. Savery's inputs; and (3) have Mr. Roth certify whether the output "replicates" the deleted Displace 3D output referenced in his July 25, 2010 email.

     Thank you for your consideration of this submission.

                        Respectfully submitted,

                        /s/ Andrew Langan

                        Andrew Langan, P.C.