# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * * * * * * * | MDL NO. 2179<br><br>SECTION: J<br><br><br>HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |
| Plaisance, *et al.*, individually and on behalf of the Medical Benefits Settlement Class,<br><br>Plaintiffs,<br><br>v.<br><br>BP Exploration & Production Inc., *et al.*,<br><br>Defendants. | * * * * * * * * * * * * * * | NO. 12-CV-968<br><br>SECTION: J<br><br><br>HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR AN ORDER
DIRECTING AND PERMITTING DISCLOSURE OF DATA TO THE CLAIMS
<u>ADMINISTRATOR FOR THE MEDICAL BENEFITS CLASS ACTION SETTLEMENT</u>**

*COUNSEL FOR ALL MOVING PARTIES ARE LISTED AT END OF MEMORANDUM*

The Medical Benefits Settlement Class Representatives,[1] on behalf of themselves and of the members of the Medical Benefits Settlement Class, by and through Lead Class Counsel and Medical Benefits Class Counsel, and Defendants BP Exploration & Production Inc. and BP America Production Company (collectively, "BP") respectfully submit this Memorandum in support of their Joint Motion for an Order Directing and Permitting Disclosure of Data to the Claims Administrator for the Medical Benefits Class Action Settlement.  In BP's possession, custody, or control are databases, data files, data collections, and other documentary evidence (together, the "Data") containing information that the Claims Administrator for the Medical Settlement Agreement ("MSA") will need under the terms of the MSA to process claims.  BP and the Medical Benefits Settlement Class Representatives jointly request that the Court issue an order directing and permitting BP to provide the Data to the Claims Administrator.

I. **THE CLAIMS ADMINISTRATOR NEEDS ACCESS TO DATA IN BP'S POSSESSION TO FULFILL ITS DUTIES UNDER THE MEDICAL BENEFITS CLASS ACTION SETTLEMENT AGREEMENT.**

On April 18, 2012, BP and the Medical Benefits Settlement Class Representatives submitted a Joint Motion for Preliminary Approval of the Proposed Medical Benefits Class Action Settlement, Approval of Class Notice, and Related Matters (Rec. Doc. 6267).[2]  The MSA requires that the Claims Administrator evaluate claims from Medical Benefits Settlement Class Members, which in certain cases necessitates the use of the Data.

---

[1] Terms with initial capital letters used in this Memorandum have the meanings ascribed to the fully capitalized rendering of such terms in the Medical Benefits Class Action Settlement Agreement, as amended ("Medical Settlement Agreement"), unless otherwise defined or set off by quotation marks herein.

[2] On May 1, 2012, BP and the Medical Benefits Settlement Class Representatives submitted a Joint Supplemental Motion Related to Preliminary Approval of the Medical Benefits Class Action Settlement.  (Rec. Doc. 6399.)

Under the MSA, Medical Benefits Settlement Class Members may apply to receive compensation for Specified Physical Conditions and/or to participate in the Periodic Medical Consultation Program.  *See* MSA §§ IV.A-B.  To qualify for such compensation and/or benefits, Medical Benefits Settlement Class Members "must submit . . . proof of status as a Clean-Up Worker or proof of residency in Zone A or Zone B during the relevant time periods and, where applicable, proof of a Specified Physical Condition" to the Claims Administrator.  *See id.* at § XXI.C.  Under the terms of the agreement, status as a Clean-Up Worker can be established by specified forms of Data.  *See id.* at § XXI.C.4.d.  Additionally, claims by Clean-Up Workers for compensation under levels A3 and A4 of the Specified Physical Conditions Matrix ("Matrix") require use of the Data, and the Claims Administrator will not be able to evaluate such claims without it.  Similarly, Clean-Up Workers seeking compensation under Matrix level B1 may choose to rely in part on the Data, which the Claims Administrator must have to evaluate these claims as well.  Further, the Claims Administrator may disclose to an individual who properly requests it Data relating to that individual.  *See id.* at § XXI.B.3.  Thus, the Claims Administrator needs access to the Data in order to fulfill its responsibilities under the MSA.

II.     **THE DATA CONTAIN INFORMATION IDENTIFYING POTENTIAL CLASS MEMBERS AND CONCERNING THEIR POTENTIAL CLAIMS FOR BENEFITS UNDER THE MEDICAL SETTLEMENT AGREEMENT.**

Beginning shortly after April 20, 2010, thousands of Clean-Up Workers throughout the Gulf Region performed Response Activities.[3]  During and after the Response Activities, BP and

---

[3] Response Activities, as defined in Section II.OOOO of the Medical Settlement Agreement, "mean[s] the clean-up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the release of oil, other hydrocarbons, and other substances from the MC252 WELL and the *Deepwater Horizon* and/or its appurtenances that were done under the auspices of the Unified Command, BP, or a federal, state, or local authority."

certain of its contractors memorialized information that identifies participants in Response Activities as well as medical attention provided to some of those individuals. BP has identified the following data sources as containing potentially relevant information, access to which is required for the Claims Administrator to fulfill its responsibilities under the MSA:

### A. The "Medical Encounters" Database

Medic stations funded by BP were made available to Clean-Up Workers during Response Activities. Information regarding the persons visiting the stations generally was recorded on intake forms, either in writing or electronically, and subsequently entered into BP's "Medical Encounters" database. This database is in the format of an Excel spreadsheet and contains, among other things, demographic information and, in some cases, medical history and treatment information for those persons who visited medic stations. In some cases, workers also signed medical authorization forms, allowing the collection of records relating to their follow-up care. BP has the paper copies and electronic files underlying the entries in the "Medical Encounters" database, including medical records obtained pursuant to signed authorizations. These records exist in both paper copies and pdf format.

### B. The "Badged Worker" Database

Identification badges were issued to individuals authorized to access those areas where Response Activities were performed, including crew members for Vessels of Opportunity ("VoOs"). A BP contractor kept, and still maintains, the "Incident Action Plan" database, which contains, among other things, data identifying those persons who were issued security badges in connection with Response Activities, and includes workers' names, dates of birth, phone, email, emergency contact information, and employer information. The "Incident Action Plan" database existed prior to the *Deepwater Horizon* Incident, and also includes information and documents unrelated to Response Activities. The entries identifying those who worked in Response

3

Activities have been segregated into the "Badged Workers" database, which is in the format of an Excel spreadsheet and to which BP has access.

### C.     The "Training" Database

BP and its contractors provided Health, Safety, and Environmental training to individuals seeking to be hired as Clean-Up Workers. Information regarding those individuals who attended training sessions was logged into the "Training" database. This database includes, among other fields, the names of those who attended training sessions, training modules, the location of the training, and the identity of the trainers. The "Training" database, which is in the format of an Excel spreadsheet, includes both individuals who ultimately participated in Response Activities and those who attended the training but ultimately did not participate.

### D.     "Traction" Database Information

In order to comply with reporting requirements mandated by the Occupational Safety and Health Administration ("OSHA"), BP maintains the "Traction" database, which contains information related to occupational accidents or injuries reported by BP employees and BP embedded contractors. Although this database is used to track all such information across BP, for a time injuries and illnesses reported by Clean-Up Workers were entered into this database. Those portions of the "Traction" database that contain information about injuries and illnesses reported by Clean-Up Workers have been extracted into the format of an Excel spreadsheet, and include, where available, the name, date of injury, employer, vessel name, and a narrative section describing the injury or illness. BP also has access to the back-up paper copies and pdf files of materials underlying the entries in this database.

### E.     The "Injury and Illness" Database

The "Injury and Illness" database contains information regarding occupational illnesses and injuries reported by those performing Response Activities, which was recorded in incident

4

reports completed by safety officers working in the field. The entries in this database, which is in the format of an Excel spreadsheet, summarize the incident reports and include, where available, an individual's name, date of birth, incident location, incident date, and a narrative field, among other information. BP also has access to the back-up paper copies and pdf files of materials underlying the entries in this database.

**F.     Wildlife Organizations**

BP has prepared a chart, in the format of a Word document, which lists known organizations that participated in the recovery, transport, and decontamination of wildlife during Response Activities. The chart contains the names of the entities, their role in performing Response Activities, and contacts at each of the entities.

**G.     Industrial Hygiene Monitoring Spreadsheets and Time History Reports**

Industrial hygiene specialists monitored exposure to various substances by collecting measurements from Clean-Up Workers who wore a sampling apparatus while performing Response Activities. These Clean-Up Workers are identified in "Industrial Hygiene Monitoring" spreadsheets, to which BP has access. These spreadsheets, which are in the format of Excel spreadsheets, also include, where available, the names of the individuals who wore the apparatus, their date of birth, and the last four digits of their Social Security numbers, among other information.

BP also has access to the paper copies of "Time History Reports" for such Clean-Up Workers, which have been scanned into pdf format. Some of these reports also include demographic information of the Clean-Up Workers wearing the apparatus, including addresses and contact information.

### H.   "Persons on Board" Lists

Some vessels whose crew performed Response Activities submitted "Persons on Board" lists to BP. Some of the lists are in the format of Excel spreadsheets, while other lists are in the format of Word documents. The information contained in the lists varies by vessel, but most lists include the names of crew members.

### I.   Commercial Invoices From VoO

BP has a collection of commercial invoices from vessels that participated in the VoO program. The invoices, which are in the format of pdf files, contain vessel names and registration numbers, and to the extent they charge for individual crew members' time, the names of crew members on the vessels. Some of the files also contain demographic information for individual crew members.

### J.   Invoices from Ambulance Service Companies

On occasions where individuals who visited a medic station needed additional medical attention, ambulance services transported them to off-site medical treatment facilities. Ambulance service companies submitted invoices to BP requesting payment for such transport, which may contain the following information: the name of the person being transported, a basic description of the medical service provided, date of transportation, time of transportation, transport destination, and, on occasion, medical records generated by the ambulance service companies. BP has access to the paper copies of these invoices, which have been scanned into pdf files.

### III.   TO AVOID ANY DOUBT ABOUT BP'S ABILITY TO PROVIDE DATA TO THE CLAIMS ADMINISTRATOR, THE PARTIES SEEK A COURT ORDER DIRECTING AND PERMITTING BP TO DO SO.

The nature of some of the information contained in the Data described above makes an order compelling and permitting disclosure prudent. Some of the Data may arguably contain

6

Protected Health Information[4] subject to implementing regulations issued under the administrative simplification provisions of the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) ("HIPAA").  The "Privacy Rule" regulations (45 C.F.R. pts. 160 and 164(a), (e)) — issued by the U.S. Department of Health and Human Services pursuant to HIPAA's administrative simplification provisions — provide that a "covered entity may not use or disclose protected health information" of an individual except (1) with the written authorization of the individual; or (2) as "permitted or required by" the Privacy Rule itself.  45 C.F.R. § 164.502(a).  For the purposes of the Privacy Rule, a "covered entity" is any "health plan; health care clearinghouse; [or] health care provider[5] who transmits any health information in electronic form in connection with a [covered] transaction."  *See* 45 C.F.R. § 160.103.

BP does not believe that it meets the definition of a "covered entity" (and this Court need not reach this issue), but out of an abundance of caution, BP does not wish to disclose the Data to the Claims Administrator without an order from this Court directing and permitting such disclosure.  *See, e.g.*, 45 C.F.R. § 164.502(a).  An Order directing and permitting disclosure will act as a prophylactic measure to ensure that BP will not be in violation of the Privacy Rule by sharing the Data with the Claims Administrator.

---

[4] Protected Health Information, as defined in Section II.IIII of the Medical Settlement Agreement, "mean[s] individually identifiable health information, as defined in 45 C.F.R. § 160.103."

[5] The term "health care provider" is defined to include, among other things, "any . . . person or organization who furnishes, bills, or is paid for health care in the normal course of business," while a covered "transaction" is defined to include, among other things, a "[f]irst report of injury." 45 C.F.R. § 160.103 (citing 42 U.S.C. § 1395x(s), (u)).

7

## IV. AN ORDER REQUIRING BP TO PRODUCE THE DATA TO THE CLAIMS ADMINISTRATOR WOULD BEST SERVE THE INTERESTS OF THE MEDICAL BENEFITS SETTLEMENT CLASS.

The MSA requires the Parties to seek an order from the Court directing and permitting BP to provide the Data to the Claims Administrator.  MSA § XXI.B.1.  The reasons for this requirement are obvious — the Data provide an essential tool for the processing of claims, and requiring BP to obtain individual consent from every person for whom it has Data in its possession, custody, or control would be impractical and inefficient, and would delay the timely processing of claims.  The paperwork and time required to obtain such consent would only complicate the claims process.  Further, pursuant to the Settlement Agreement, individuals wishing to obtain information pertaining to them in the Data are to submit such a request to the Claims Administrator, not to BP.

Disclosure of the Data to the Claims Administrator presents no risk of improper use, and thus will not implicate the confidentiality concerns that underlie HIPAA's Privacy Rule.  Under the terms of the MSA, the Claims Administrator shall be required to maintain the Data (and any protected health information contained therein) "in strict confidence and shall not disclose any information in the database, data files, and other documentary evidence to any person or entity," using the Data solely for evaluating, processing, and auditing claims.  *Id.* at § XXI.B.3.  Moreover, because a Medical Benefits Settlement Class Member must necessarily provide documentary proof of his or her status and/or injury or condition in order to qualify for compensation for a Specified Physical Condition and/or qualify to participate in the Periodic Medical Consultation Program, the privacy implications are the same whether this information is turned over through the Data or by some other means.  The information is needed by the Claims Administrator to verify a claim in any event.

8

## **CONCLUSION**

For the reasons set forth above, the Parties respectfully request the entry of an Order, a proposed form of which accompanies the Parties' Joint Motion, directing and permitting BP to turn over the Data to the Claims Administrator for the Medical Benefits Class Action Settlement use for the limited purposes set forth in Section XXI.B.3 of the MSA.


May 9, 2012                                                       Respectfully submitted,


*/s/ Stephen J. Herman*  
Stephen J. Herman, La. Bar No. 23129  
HERMAN HERMAN KATZ & COTLAR LLP  
820 O'Keefe Avenue  
New Orleans, Louisiana 70113  
Telephone: (504) 581-4892  
Fax No. (504) 569-6024  
E-Mail: sherman@hhkc.com  

*Lead Class Counsel and Medical Benefits Class Counsel*

*/s/ James Parkerson Roy*  
James Parkerson Roy, La. Bar No. 11511  
DOMENGEAUX WRIGHT ROY & EDWARDS LLC  
556 Jefferson Street, Suite 500  
Lafayette, Louisiana 70501  
Telephone: (337) 233-3033  
Fax No. (337) 233-2796  
E-Mail: jimr@wrightroy.com  

*Lead Class Counsel and Medical Benefits Class Counsel*

## MEDICAL BENEFITS CLASS COUNSEL

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Telefax: (843) 216-9290
E-Mail: jrice@motleyrice.com

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office: (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER IMPREVENTO &
WALKER, P.C.
999 Waterside Drive, Suite 1000
Norfolk, VA 23510
Office: (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Office: (415) 956-1000
Telefax: (415) 956-1008
E-Mail: ecabraser@lchb.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, LA 70360
Office: (985) 876-7595
Telefax: (985) 876-7594
E-Mail: duke@williamslawgroup.org

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY 10003
Office: (212) 558-5802
Telefax: (212) 344-5461
E-Mail: rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office: (334) 269-2343
Telefax: (334) 954-7555
E-Mail: rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH,
LLP
501 Broad Street
Lake Charles, LA 70601
Office: (337) 439-0707
Telefax: (337) 439-1029
E-Mail: mlundy@lundylawllp.com

Philip F. Cossich, Jr.  
COSSICH, SUMICH, PARSIOLA & TAYLOR  
8397 Highway 23, Suite 100  
Belle Chasse, LA 70037  
Office: (504) 394-9000  
Telefax: (504) 394-9110  
E-Mail: pcossich@cossichlaw.com

Robert T. Cunningham  
CUNNINGHAM BOUNDS, LLC  
1601 Dauphin Street, P. O. Box 66705  
Mobile, AL 36660  
Office: (251) 471-6191  
Telefax: (251) 479-1031  
E-Mail: rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy  
MORGAN & MORGAN, P.A.  
188 East Capitol Street, Suite 777  
Jackson, MS 39201  
Office: (601) 949-3388  
Telefax: (601) 949-3399  
E-Mail: mike@mikespy.com

Calvin C. Fayard, Jr.  
FAYARD & HONEYCUTT  
519 Florida Avenue, SW  
Denham Springs, LA 70726  
Office: (225) 664-4193  
Telefax: (225) 664-6925  
E-Mail: calvinfayard@fayardlaw.com

Ervin A. Gonzalez  
COLSON HICKS EIDSON  
255 Alhambra Circle, Penthouse  
Coral Gables, FL 33134  
Office: (305) 476-7400  
Telefax: (305) 476-7444  
E-Mail: ervin@colson.com

Michael C. Palmintier  
deGRAVELLES, PALMINTIER, HOLTHAUS & FRUGE  
618 Main Street  
Baton Rouge, LA 70801-1910  
Office: (225) 344-3735  
Telefax: (225) 344-0522  
E-Mail: mpalmintier@dphf-law.com

Paul M. Sterbcow  
LEWIS, KULLMAN, STERBCOW & ABRAMSON  
601 Poydras Street, Suite 2615  
New Orleans, LA 70130  
Office: (504) 588-1500  
Telefax: (504) 588-1514  
E-Mail: sterbcow@lksalaw.com

Scott Summy  
BARON & BUDD, P.C.  
3102 Oak Lawn Avenue, Suite 1100  
Dallas, TX 75219  
Office: (214) 521-3605  
Telefax: (214) 599-1172  
E-Mail: ssummy@baronbudd.com

Mikal C. Watts  
WATTS GUERRA CRAFT, LLP  
Four Dominion Drive, Building 3, Suite 100  
San Antonio, TX 78257  
Office: (210) 447-0500  
Telefax: (210) 447-0501  
E-Mail: mcwatts@wgclawfirm.com

| | |
|---|---|
| | /s/ Richard C. Godfrey, P.C. |
| James J. Neath | Richard C. Godfrey, P.C. |
| Mark Holstein | J. Andrew Langan, P.C. |
| BP AMERICA INC. | Andrew B. Bloomer, P.C. |
| 501 Westlake Park Boulevard | Elizabeth A. Larsen |
| Houston, TX  77079 | KIRKLAND & ELLIS LLP |
| Telephone:  (281) 366-2000 | 300 North LaSalle Street |
| Telefax:  (312) 862-2200 | Chicago, IL  60654 |
| | |
| | Don K. Haycraft (Bar #14361) |
| Ellen K. Reisman | R. Keith Jarrett (Bar #16984) |
| Angel L. Tang | LISKOW & LEWIS |
| Ryan O. McMonagle | 701 Poydras Street, Suite 5000 |
| ARNOLD & PORTER LLP | New Orleans, Louisiana 70139 |
| 777 South Figueroa Street | Telephone:  (504) 581-7979 |
| Los Angeles, CA 90017-5844 | Telefax:  (504) 556-4108 |
| | |
| Ethan P. Greene | Robert C. "Mike" Brock |
| Amy L. Rohe | COVINGTON & BURLING LLP |
| ARNOLD & PORTER LLP | 1201 Pennsylvania Avenue, NW |
| 555 Twelfth Street, NW | Washington, DC 20004 |
| Washington, DC 20004-1206 | Telephone:  (202) 662-5985 |
| | Telefax:  (202) 662-6291 |

*Of Counsel*

***ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.
AND BP AMERICA PRODUCTION COMPANY***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 9th day of May, 2012.

/s/ Don K. Haycraft
Don K. Haycraft