## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| In Re: | Oil Spill by the Oil Rig | : | MDL NO. 2179 |
| | "Deepwater Horizon" in the | : | |
| | Gulf of Mexico, on | : | SECTION: J |
| | April 20, 2010 | : | |
| | | : | JUDGE BARBIER |
| This Document Relates to: | | : | |
| Case No. 2:10-cv-04536 | | : | MAG. JUDGE SHUSHAN |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### UNITED STATES' MEMORANDUM IN OPPOSITION TO
### TWO MOTIONS TO INTERVENE [REC. DOCS. 6344; 6376]

In an attempt to block entry of the proposed consent decree between the United States and MOEX [Rec Doc. 5743-1] – which relates to MOEX's liability for civil penalties under Section 311(b) of the Clean Water Act, 33 U.S.C. § 1321(b) – the Movants have brought untimely motions to intervene into the United States' enforcement action.[1]

These Motions can be dispensed with quite easily, as Magistrate Judge Shushan has previously denied a very similar motion to intervene, in a lengthy, well-reasoned opinion that denied the Sierra Club's motion to intervene. Order [Regarding the Motion of the Sierra Club, Inc. to Intervene] (June 28, 2011) [Rec. Doc. 3065] ("Sierra Club Order"). This District Court summarily upheld the Magistrate Judge's Sierra Club Order, see Order (January 3, 2012) [Rec. Doc. 5059], and the issue was not appealed further. For all the reasons set out in the Sierra Club Order, these Motions should be denied. To the extent that the two Motions at issue here raise slightly different issues, we them address here.

---

[1] The United States opposes the following two motions and accompanying memoranda: Plaintiffs' Motion to Intervene ("Plaintiffs' Memo.") [Rec. Doc. 6344-1] and Mary G. Walton et al.'s Motion to Intervene ("Walton et al. Memo.") [Rec. Doc. 6376-1]. These various private parties participating in this multi-district litigation as plaintiffs are hereafter called the "Movants."

First, the Motions are untimely.  In the original motion to intervene filed by the Sierra Club over a year ago, the United States conceded that it was not untimely; however, the instant Motions come after a year of hard discovery, successful motion practice, and a settlement.  As such, they are untimely.

Second, the Movants erroneously maintain that the Clean Water Act's citizen suit provision, Section 505, 33 U.S.C. § 1365, provides them with an unconditional right to intervene pursuant to Federal Rule of Civil Procedure 24(a)(1).  Section 505, however, only authorizes intervention into government-initiated actions to require compliance with ongoing violations of effluent standards and limitations, which, as the Magistrate Judge has previously recognized, are not the subject of the United States' action here.  Sierra Club Order at 2.

Finally, to the extent that Movants also assert a right to intervene under Rule 24(a)(2), such a claim is entirely unsupported by their pleadings and, in any event, is foreclosed by the Magistrate Judge's Sierra Club Order.  As the Magistrate Judge stated in her prior Order, the Movants' interests in this regard can be adequately protected through the process for public comment on proposed consent decrees, id. at 14, 21, the very process that Movants followed already.  Moreover, as set forth in the Memorandum in Support of the United States' Unopposed Motion for Entry of Consent Decree [Rec. Doc. 6436-1], the Movants also cannot demonstrate that the proposed decree with MOEX is inadequate.  Accordingly, both motions to intervene should be denied.

## BACKGROUND

These two Motions have been submitted by parties also pursuing separate actions as plaintiffs in the MDL, including an action based on a "Class Action Complaint for Damages and

Injunctive Relief" in Case 10-3273.[2]  Case 10-3273 also includes a claim for CWA civil penalties (under the citizen suit provision) and seeks damages based in tort.  Both Motions follow comments submitted by the Movants' counsel objecting to the proposed Consent Decree between the United States and MOEX, lodged with the Court on February 17, 2012, to resolve MOEX's liability for civil penalties under Section 311(b) of the CWA.  [Rec. Doc. 5743].  These comments, received during the public comment period, generally state that the amount of the civil penalty is too low.  *See* Plaintiffs' Memo. [Rec. Doc. 6344-1], at 2-5; Walton et al. Memo. [Rec. Doc. 6376-1], at 2-5.  The United States has provided its response to these comments in its Memorandum in Support of its Motion for Entry of Consent Decree ("U.S. Memo. to Enter C.D.") [Rec. Doc. 6436-1].  For the reasons explained in that Memorandum, after reviewing the comments submitted by the Movants' counsel and other parties, the United States remains convinced that the settlement with MOEX is fair, adequate, reasonable, and consistent with the goals of the CWA.  U.S. Memo. to Enter C.D. at 3.

## ARGUMENT

### I.      The Motions Are Not Timely

Under Rule 24(a), motions to intervene must be timely.  Here, the Movants filed their Motions well after they were on notice of the United States' Clean Water Act claims, and the Motions do not satisfy the threshold requirement of timeliness.

Movants assert—without any support or explanation—that their motions for intervention are timely.  Plaintiffs' Memo. at 5; Walton et al. Memo. at 5.  Factors to consider in determining timeliness of an intervention motion made under Rule 24(a) are:  (1) length of delay between the

---

[2] We believe that the claim for injunctive relief was disposed of by the Court's Order on the D1 Bundle.  "Order and Reasons [As to D1 Master Complaint]" [Rec. Doc. 2784].

time the would-be-intervenor knew or should have known of its interest in case and filing of

intervention motion; (2) prejudice to existing parties from such delay; (3) prejudice to would-be-

intervenor if motion is denied; and (4) unusual circumstances militating either for or against a

finding of timeliness. *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).

Turning to the first factor, the Movants, as participants in this MDL, knew or should have

known of any stake they had in the United States' action involving Clean Water Act penalties

long before filing these motions to intervene. *See Effjohn Intern. Cruise Holdings, Inc. v. A&L

Sales, Inc.*, 346 F.3d 552, 561-62 (5th Cir. 2003) (upholding district court's finding of

untimeliness where proposed intervenor was lead plaintiff in the proceedings, who was

"obviously well aware of the events in the litigation and cannot claim ignorance"); *Kneeland v.

National Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987) (upholding district

court's finding that intervention motion was untimely where motion was filed almost four

months after lawsuit was removed to federal court and eight days before the end of discovery,

where applicant did not suggest that it lacked ample notice of its interest in the lawsuit or offer

any unusual circumstances mitigating its delay); *Lelsz v. Kavanagh*, 710 F.2d 1040, 1044 (5th

Cir. 1983) (considering "the movant's failure to apply for intervention *as soon as* it knew or

reasonably should have known of its interest") (emphasis added).[3]   The fact that the Movants

waited to file their Motions until they had the opportunity to view the terms of the United States'

---

[3] The timeliness inquiry may also consider the movant's failure to apply for intervention from the time it "became aware that his interest would no longer be protected by the existing parties to the lawsuit." *Edwards v. Houston*, 78 F.3d 983, 1000 (5th Cir. 1996).  The Movants here do not articulate what their interests are in the resolution of the Clean Water action against MOEX, let alone explain why they are not being adequately represented by the United States, except to state that the penalties in the MOEX proposed consent decree are too low.  As discussed *infra* at Part III, the Magistrate Judge has already found those interests to be insufficient to warrant intervention.

proposed consent decree with MOEX does not excuse Movants' untimely filing, as it is "always a possibility that the present parties will settle a lawsuit."  *Bush v. Viterna*, 740 F.2d 350, 358 (5th Cir. 1984).

With regard to the second factor, the United States would be seriously prejudiced by the Movants' delay in attempting to intervene in the government's enforcement action.  The proposed consent decree with MOEX represents the culmination of many months of settlement discussions and negotiations not only between MOEX and the United States, but also with Gulf State Attorneys General and their staffs.  *See* U.S. Memo. to Enter C.D. at 9.  Allowing Movants to intervene at this juncture, significantly after the Movants knew of any potential stake they had in the action, would be prejudicial to the existing parties as it would upend the almost-complete settlement process, particularly as it appears Movants' only motivation for intervention is to block entry of the proposed consent decree.  *See Altier v. Worley Catastrophe Response, LLC*, Case Nos. 11-241; 11-242, 2012 WL 161824, at *9 (E.D. La. Jan. 18, 2012) (finding intervention would be highly prejudicial to the existing parties where proposed intervenors could "sidetrack [the settlement] process and attempt to negotiate new terms when the settlement is nearly complete").

The Movants also have not articulated any possible prejudice to them if their Motions are denied, nor have they identified any unusual circumstances weighing in favor of timeliness, and thus fail to meet the third and fourth timeliness factors.  The Movants' own lawsuits primarily seek personal damages, see, e.g., Complaint, *Walton et al. v. BP et al.*, Case No. 10-4204 (E.D. La. filed Nov. 10, 2010), at 15-24, but no claims for damages are resolved by the proposed consent decree with MOEX, and any interest the Movants have in the resolution of their damage claims is preserved by their ongoing participation in the MDL.  While it is true that one action

brought by some of the Movants includes a CWA claim for penalties, see *Thigpen, et al. v. BP et al.*, Case No. 10-3273 (transferred to E.D. La. Sept. 8, 2010), the amount of penalties in the proposed consent decree with MOEX does not provide a sufficient basis for intervention, as discussed *infra* at Part III.

Because timeliness is a threshold issue, the Movants' failure to file a timely motion is fatal to their claim for intervention, and must be denied on that basis. *Corley v. Jackson Police Dep't*, 755 F.2d 1207, 1209 (5th Cir. 1985).

## II.    Section 505 of the CWA Does Not Provide an Unconditional Right to Intervene into the United States' Action for Civil Penalties under Section 311(b)

Even if the Movants' motions were filed on time, their motions must still fail because they do not have an unconditional right of intervention under a federal statute.

Intervention is mandatory, upon filing of a timely motion, if a federal statute confers an unconditional right to intervene. Fed. R. Civ. P. 24(a)(1). These Motions should be denied because the Clean Water Act does not provide an unconditional right to intervene into this government enforcement action based on the oil pollution provisions of Section 311(b) of the Act, 33 U.S.C. § 1321(b). While the CWA grants citizens a right to intervene in some circumstances, those circumstances plainly do not exist here. Section 505, 33 U.S.C. § 1365, is the CWA's "citizen suit" provision. It provides for a private right of action for violations of effluent standards and limitations, *id.* § 1365(a)(1)(A), and permits a citizen to intervene in such a government-initiated action, but only where the citizen would otherwise have been able to bring such a suit under Section 505. *Id.* § 1365(b)(1)(B); *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 837-38 (8th Cir. 2009). Through this tailored scheme, Congress has permitted citizens to supplement federal enforcement, but has not "enable[d] citizens to

6

commandeer the federal enforcement machinery." *Dubois v. Thomas*, 820 F.2d 943, 949 (8th Cir. 1987); *see also* S. Rep. No. 99-50, at 28 (1985).

As the Magistrate Judge recognized in her Sierra Club Order, the government's enforcement action here does not implicate CWA Section 505. *See* Sierra Club Order at 2. Section 505(a) provides that a citizen may only commence a civil action under the CWA against a person "alleged to be in violation of (A) an effluent standard or limitation . . . or (B) an order issued by the Administrator or a State with respect to such a standard or limitation."  33 U.S.C. § 1365(a).  A citizen's right to intervention is correspondingly restricted to those matters involving civil or criminal actions initiated by EPA or a State to "require compliance with the standard, limitation or order."  *Id.* § 1365(b)(1)(B).  For purposes of the citizen suit provision, "effluent standard or limitation" is defined in relation to prohibitions or limitations established under selected sections of the CWA.  33 U.S.C. § 1365(f).[4]  Nowhere does the definition include CWA Section 311's (33 U.S.C. § 1321) prohibition on the discharge of oil in such quantities as may be harmful.  As a result, suits based on that provision – such as the government's enforcement action in which the Movants seek to intervene – do not provide a statutory basis for Section 505 citizen suit intervention.  *See also* Sierra Club Order at 2 ("The United States has not alleged an

---

[4] 33 U.S.C. § 1365(f) states:

> For purposes of this section, the term 'effluent standard or limitation under this chapter' means (1) effective July 1, 1973, an unlawful act under subsection (a) of section 1311 of this title [Section 301]; (2) an effluent limitation or other limitation under section 1311 [Section 301] or 1312 of this title; (3) standard of performance under section 1316 of this title; (4) prohibition, effluent standard or pretreatment standards under section 1317 of this title; (5) certification under section 1341 of this title; (6) a permit or condition thereof issued under section 1342 of this title, which is in effect under this chapter (including a requirement applicable by reason of section 1323 of this title); or (7) a regulation under section 1345(d) of this title.

ongoing violation of an effluent standard or limitation and is not proceeding under Section

505.").

      Cases cited by Movants to support their claim for an unconditional right of intervention

under the CWA, Plaintiffs' Memo. at 6-7; Walton et al. Memo. at 6-7, are inapposite because

they do not involve violations of Section 311's oil discharge provisions, but rather ongoing

violations of effluent standards and permits regulated and enforced under different provisions of

the CWA.[5]  Indeed, in *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968 (2d

Cir. 1984), the court declined to find a statutory right of intervention under the CWA where the

underlying action was based on the emergency powers provisions of the Act, 33 U.S.C. §

1364(a), and sought to abate an "imminent and substantial endangerment." *Id.* at 979.  The court

reasoned that because the action did not seek to enforce an "effluent standard or limitation" or

"an order issued by the Administrator or State with respect to such a limitation," the CWA did

not provide a right of intervention.  *Id.* (quoting 33 U.S.C. § 1365(a)).

      Because Section 505(b)(1)(B), 33 U.S.C. § 1365(b)(1)(B), plainly does not provide for

intervention of right where the underlying action, as here, is based on violations of the Act's oil

discharge prohibition, Movants are not entitled to intervention as of right under Rule 24(a)(1).

---

[5] *See, e.g.*, *United States v. Metro. St. Louis Sewer Dist.*, 883 F.2d 54, 55 (8th Cir. 1989) (suit against
municipal sewer district alleging that defendant had discharged pollutants in violation of effluent
standards, and requesting compliance with the Clean Water Act); *United States v. Ketchican Pulp Co.*, 74
F.R.D. 104, 105-06, (D. Alaska 1977) (suit involving allegations that defendant discharged effluents from
mill in violation of standards set forth in its permit); *Ohio v. Callaway*, 497 F.2d 1235 (6th Cir. 1974)
(complaint alleging that proposed water storage project would violate water quality standards).

III.    **The Court's Prior Orders in this Case Foreclose Movants' Intervention Based on Rule 24(a)(2)**

While the Movants' claim for intervention appears to be based solely on CWA Section 505(b)(1)(B) and Rule 24(a)(1), see Plaintiffs' Memo. at 4; Walton et al. Memo. at 4, they also recite the standards for intervention under Rule 24(a)(2). *Id.* However, the Movants fail to provide any discussion as to whether and how those standards are satisfied here, or why their circumstances would dictate a different result than Sierra Club's proposed intervention into the government's action, which was denied by the Magistrate Judge. [Rec. Doc. 3065]. Accordingly, even if the Movants' pleadings could be read expansively to seek intervention pursuant to Rule 24(a)(2), their Motions should be denied.

The Fifth Circuit has stated that Rule 24(a)(2) is based on four "well-settled" requirements: (1) the applicant must file a timely application; (2) the applicant must claim an interest in the subject matter of the action; (3) the applicant must show that disposition of the action may impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties to the litigation. *New Orleans Public Serv., Inc. v. United Gas Pipeline Co. (NOPSI)*, 732 F.2d 452, 463 (5th Cir. 1984). The movant has the burden of demonstrating its entitlement to intervene. *United States v. Texas Eastern Transmission Corp.*, 923 F.2d 410, 414 (5th Cir. 2007).

To begin with, even though Movants have brought other actions in the MDL arising from the Deepwater Horizon incident, they fail to articulate any direct, substantial and legally protectable interest in *this* action that would warrant intervention. *See NOPSI*, 732 F.2d at 464. If the Movants' interest lay in ensuring that the environmental laws as they relate to the Gulf of Mexico and its natural resources are enforced, the Magistrate Judge has already held in the

9

context of ruling on Sierra Club's motion that such an interest is too generalized to provide a

basis for intervention.  *See* Sierra Club Order, at 12-13.  Movants also cannot claim, in light of

the Magistrate's Order, a legally protectable interest in the proposed amount of civil penalties

MOEX would pay under the terms of the proposed consent decree.  *See id.* at 13-14.

 Moreover, the Movants' interests in obtaining personal damages from defendants in the

MDL would not be impaired by the proposed consent decree between the United States and

MOEX.  As discussed, the settlement would resolve MOEX's liability for civil penalties under

Section 311(b) of the CWA, and does not settle any claims regarding damages under the Oil

Pollution Act, 33 U.S.C. 2701 *et seq.*  In any event, the public comment process, through which

the Movants raised concerns with the proposed consent decree, provides a sufficient opportunity

for Movants to protect their interests.  *See, e.g.*, *Stotts v. Memphis Fire Dep't*, 679 F.2d 579, 584

(6th Cir. 1982); *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994); *City of

Bloomington, Ind. v. Westinghouse Elec. Corp.*, 824 F.2d 531, 537 (7th Cir. 1987).  *See also*

Sierra Club Order at 14, 21.

 Lastly, the Movants' public comments on the proposed consent decree with MOEX

cannot be read to suggest that the United States has failed to adequately represent their interests

with regard to the amount of Clean Water Act penalties.  The Movants claim that the amount of

settlement with MOEX is too low, citing, *inter alia*, the $4,300 per barrel amount maximum

penalty where the discharge is the result of gross negligence, and BP's $1 billion settlement with

MOEX as a point of comparison.  Plaintiffs' Memo. at 2-5; Walton et al. Memo. at 2-5.  As fully

explained in the United States' Memorandum in Support of the Motion to Enter the Consent

Decree, however, all general maritime law negligence claims against MOEX were dismissed,

and there does not appear to be evidence of MOEX's gross negligence.  U.S. Memo. to Enter

C.D. at 23-24.  In the absence of gross negligence or willful misconduct, MOEX cannot be liable

for a penalty greater than $1,100 per barrel.  33 U.S.C. 1321(b)(7)(A); 40 C.F.R. §§ 19.2, 19.4 -

Table.  Furthermore, MOEX's settlement with BP (which resolves all claims against MOEX

except civil penalties) provides no basis of comparison to the proposed consent decree (that

resolves only MOEX's liability for civil penalties but reserves all other claims of the United

States).  U.S. Memo. to Enter C.D. at 24.

    In short, even if the Motions could be read to allege a claim under Rule 24(a)(2),

Movants do not meet their burden of establishing that they demonstrate the requirements for

intervention under that provision.

## CONCLUSION

    For the foregoing reasons, both Motions for intervention into the United States'

enforcement action must be denied.


Dated:  May 11, 2012                          Respectfully Submitted,


BRIAN HAUCK                                   IGNACIA S. MORENO
Deputy Assistant Attorney General            Assistant Attorney General
Civil Division                                Environment & Natural Resources
                                              Division

PETER F. FROST                                PATRICK CASEY
Director, Torts Branch, Civil Division        JAMES NICOLL
Aviation & Admiralty Litigation               Senior Counsel
STEPHEN G. FLYNN                              NANCY FLICKINGER
Assistant Director                            Senior Attorney
MICHELLE T. DELEMARRE                         SARAH HIMMELHOCH
SHARON K. SHUTLER                             Senior Attorney
JILL DAHLMANN ROSA                            DEANNA CHANG
JESSICA SULLIVAN                              SCOTT CERNICH
JESSICA L. MCCLELLAN                          A. NATHANIEL CHAKERES
MALINDA LAWRENCE                              JUDY HARVEY

DAVID J. PREFFER                          MATT LEOPOLD
ROBIN HANGER                              GORDON YOUNG
LAURA MAYBERRY                            JEFFREY PRIETO
BRIENA STRIPPOLI                          ABIGAIL ANDRE
Trial Attorneys                           Trial Attorneys
U.S. Department of Justice
Torts Branch, Civil Division
P.O. Box 14271
Washington, D.C. 20044
(202) 616-4100
(202) 616-4002 fax


/s/ R. Michael Underhill                  /s/ Steven O'Rourke
R. MICHAEL UNDERHILL, T.A.                STEVEN O'ROURKE
Attorney in Charge, West Coast Office     Senior Attorney
Torts Branch, Civil Division              U.S. Department of Justice
7-5395 Federal Bldg., Box 36028           Environmental Enforcement Section
450 Golden Gate Avenue                    P.O. Box 7611
San Francisco, CA 94102-3463              Washington, D.C. 20044
(415) 436-6648                            (202) 514-2779
(415) 436-6632 fax                        steve.o'rourke@usdoj.gov
mike.underhill@usdoj.gov


JIM LETTEN
United States Attorney

SHARON SMITH
Assistant United States Attorney
Eastern District of Louisiana
650 Poydras St., Ste 1600
New Orleans, LA 70130


Attorneys for the UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on all counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 11th day of May, 2012.


/s/ Steve O'Rourke

U.S. Department of Justice