Exhibit 1

EXECUTION VERSION

## PAYING AGENT AGREEMENT

This Paying Agent Agreement (this "Agreement") dated as of May 11, 2012 (the "Effective Date") among (i) the *Deepwater Horizon* Economic and Property Damages Settlement Trust, a trust established under Delaware law (the "Settlement Trust"); (ii) Patrick Juneau in his capacity as Trustee of the Settlement Trust and Claims Administrator of the Settlement Program (as defined below) (the "Trustee"); (iii) J.P. Morgan Trust Company of Delaware in its capacity as the Directed Trustee of the Settlement Trust (the "Directed Trustee"); (iv) JPMorgan Chase Bank, N.A. in its capacity as lead paying agent (the "Lead Paying Agent"); (v) The Garden City Group, Inc. (the "Claims Payment Agent"); and (vi) BP Exploration & Production Inc. ("BPEP").  (The Settlement Trust, the Trustee, the Directed Trustee, the Lead Paying Agent, the Claims Payment Agent and BPEP are collectively referred to herein as the "Parties.")  Capitalized terms defined in the Settlement Agreement (as defined below) and used herein without definition have the same meanings in this Agreement as in the Settlement Agreement.

RECITALS

A.      The Settlement Trust has been established pursuant to (i) the *Deepwater Horizon* Economic and Property Damages Trust Agreement dated as of May 4, 2012 (the "Trust Agreement") among BPEP, BP America Production Company (together with BPEP, "BP"), Lead Class Counsel, the Trustee and the Directed Trustee and (ii) the *Deepwater Horizon* Economic and Property Damages Settlement Agreement dated April 18, 2012, as amended on May 2, 2012 (the "Settlement Agreement"), pursuant to which BP settled certain economic and property damage claims asserted against it and certain of its affiliates relating to the Deepwater Horizon Incident in actions that have been consolidated in the United States District Court for the Eastern District of Louisiana (the "Court").  The Trustee also serves as Claims Administrator under the Settlement Agreement.

B.      The Settlement Trust is intended to meet the requirements of a qualified settlement fund within the meaning of section 468B of the Internal Revenue Code of 1986, as amended from time to time (the "Code"), and Treasury Regulation section 1.468B-1(c).

C.      The Settlement Agreement provides for the establishment of the Deepwater Horizon Court Supervised Settlement Program (the "Settlement Program") to be implemented through the establishment by the Settlement Trust of certain funds (collectively, the "Funds"), initially including an Economic Settlement Trust Account (as defined below), a Seafood Compensation Program Settlement Fund (the "Seafood Compensation Fund"), a General Claims Settlement Fund (the "General Claims Fund" and together with the Seafood Compensation Fund, the "Claims Funds"), an Administrative Expense Fund (the "Administrative Fund"), a Gulf Tourism and Seafood Promotional Fund (the "Promotional Fund"), and a Supplemental Information Program Fund (the "Supplemental Information Fund").

D.      Under the Settlement Agreement, the BP Parties are obligated to make, or may arrange for the Deepwater Horizon Oil Spill Trust (the "DHOS Trust") to make, certain payments to the Settlement Trust for transfer to the Funds, including the Claims Funds, in the amounts and at the times specified in the Settlement Agreement.

E.      The Settlement Agreement further provides that the Trustee, the Directed Trustee and the Claims Administrator shall enter into this Agreement to appoint a Lead Paying Agent and a Claims Payment Agent.  This Agreement must be in a form reasonably satisfactory to the BP Parties and Lead Class Counsel, and must be approved by the Court.

**NOW THEREFORE**, in consideration of the foregoing and of the mutual covenants hereinafter set forth, the Parties agree as follows:

1.      **Appointments**.   The Trustee, acting as Claims Administrator under the Settlement Agreement and Trustee under the Trust Agreement, and the Directed Trustee hereby appoint JPMorgan Chase Bank, N.A. as the Lead Paying Agent under the Settlement Agreement, and JPMorgan Chase Bank, N.A. hereby accepts such appointment under the terms and conditions set forth in this Agreement and in the Settlement Agreement.  The Trustee, acting as Claims Administrator under the Settlement Agreement and Trustee under the Trust Agreement, and the Directed Trustee hereby appoint The Garden City Group, Inc. as the Claims Payment Agent under the Settlement Agreement, and The Garden City Group, Inc. hereby accepts such appointment under the terms and conditions set forth in this Agreement and in the Settlement Agreement.

2.      **Establishment of Accounts; Deposits**.  (a)  The Directed Trustee shall establish the following segregated accounts to be held by the Directed Trustee:  the Economic Settlement Trust Account – Seafood Compensation Fund; the Economic Settlement Trust Account – General Claims Fund; the Economic Settlement Trust Account – Administrative Fund; the Economic Settlement Trust Account – Promotional Fund; and the Economic Settlement Trust Account – Supplemental Information Fund (individually, an "Economic Settlement Trust Sub-Account" and, collectively, the "Economic Settlement Trust Account").  The Directed Trustee shall also establish an Economic Settlement Trust Account – General as a recording account on its books and records.  The amounts required to be paid by or on behalf of BP to the Seafood Compensation Fund under the Settlement Agreement shall be deposited in the Economic Settlement Trust Account – Seafood Compensation Fund, for immediate transfer to the Seafood Compensation Fund Account (as defined and as set forth below).  The amounts required to be paid by or on behalf of BP to the General Claims Fund under the Settlement Agreement shall be deposited in the Economic Settlement Trust Account – General Claims Fund, for transfer to the General Claims Fund Account (as defined and as set forth below).  The amounts required to be paid by or on behalf of BP to each of the other Funds under the Settlement Agreement shall be deposited in the applicable Economic Settlement Trust Sub-Account in the Settlement Trust for transfer to the applicable Fund Account (as defined and as set forth below).  The Directed Trustee will confirm receipt of each such deposit to the Trustee, the Lead Paying Agent and BPEP promptly after the Directed Trustee's receipt thereof.

(b)   The Lead Paying Agent, acting as paying agent for the Settlement Trust, shall establish a segregated account of the Settlement Trust at the Lead Paying Agent for the Seafood Compensation Fund and the General Claims Fund (respectively, the "Seafood Compensation Fund Account" and the "General Claims Fund Account," and together, the "Claims Fund Accounts"), and the Administrative Fund, the Promotional Fund and the Supplemental Information Fund (respectively, the "Administrative Fund Account," the "Promotional Fund Account" and the "Supplemental Information Fund Account").

- 2 -

(c)   As used in this Agreement, "Fund Accounts" refers to, collectively, the Economic Settlement Trust Account, the Seafood Compensation Fund Account, the General Claims Fund Account, the Administrative Fund Account, the Promotional Fund Account and the Supplemental Information Fund Account.

(d)   The Trustee and/or the Claims Administrator shall direct the Directed Trustee and the Lead Paying Agent to transfer from the Economic Settlement Trust Account to the other Fund Accounts all amounts that have been paid to the Economic Settlement Trust Account by or on behalf of BP pursuant to the Trust Agreement, as required by the Settlement Agreement.  To effectuate the objectives of the Settlement Agreement and the Paying Agent Arrangement (as defined in Section 4(b) below), such transfers shall be executed pursuant to the standing order attached hereto as Appendix A, which standing order may be modified by the Trustee or the Claims Administrator as set forth in the Trust Agreement, with such modification to be effective upon written notice thereof to the Lead Paying Agent and the Directed Trustee (the "Standing Order") or such other orders provided by the Trustee or the Claims Administrator.  The amounts required to be paid by or on behalf of BP to the Seafood Compensation Fund under the Settlement Agreement shall be deposited in the Economic Settlement Trust Account — Seafood Compensation Fund as set forth in Section 2(a) above and then immediately transferred by the Directed Trustee and the Lead Paying Agent to the Seafood Compensation Fund Account pursuant to the Standing Order or such other orders provided by the Trustee or the Claims Administrator.  The amounts required to be paid by or on behalf of BP to the General Claims Fund under the Settlement Agreement shall be deposited in the Economic Settlement Trust Account — General Claims Fund as set forth in Section 2(a) above and then transferred by the Directed Trustee and the Lead Paying Agent to the General Claims Fund Account pursuant to the Standing Order or such other orders provided by the Trustee or the Claims Administrator.  The amounts required to be paid by or on behalf of BP to each of the other Funds under the Settlement Agreement shall be deposited in the applicable Economic Settlement Trust Sub-Account as set forth in Section 2(a) above and then transferred by the Directed Trustee and the Lead Paying Agent to the applicable Fund Account pursuant to the Standing Order or such other orders provided by the Trustee or the Claims Administrator.

(e)   The Lead Paying Agent will confirm receipt of each such deposit to the Trustee, the Directed Trustee and BPEP promptly after the Lead Paying Agent's receipt thereof.  The Lead Paying Agent shall have no duty to solicit any payments which may be due it or any Fund Account nor shall the Lead Paying Agent have any duty or obligation to confirm or verify the accuracy or correctness of any amounts deposited with it hereunder.

(f)   The Trustee shall open one or more non-interest bearing deposit accounts (each a "Deposit Account") at the Lead Paying Agent for each Fund.  Each such Deposit Account will be part of the applicable Fund for purposes of this Agreement and the Settlement Agreement, including any reversionary interest that BP may have in such Fund.  The Trustee hereby grants to the Claims Payment Agent the authority to draw checks on, or otherwise initiating payments from, the Deposit Accounts associated with the Seafood Compensation Fund Account and the General Claims Fund Account to make the payments from these Funds as required by the Settlement Agreement.

3. **Investment**. (a) As set forth in the Standing Order, the Trustee is hereby delegating his investment authority and responsibilities to the Lead Paying Agent, as set forth and subject to the requirements of Sections 4.1 and 4.2 of the Trust Agreement, subject to the Lead Paying Agent's Standard of Care as set forth in Section 9(b) below. As hereby authorized by the Trustee, acting as Trustee under the Trust Agreement, all amounts in each of the Fund Accounts, including the Economic Settlement Trust Account held at the Directed Trustee, shall be invested by the Lead Paying Agent conservatively in a manner designed to assure timely availability of funds, protection of principal and avoidance of concentration risk in accordance with the requirements and limitations set forth on Appendix B hereto. The Lead Paying Agent is hereby authorized to execute purchases and sales of investments ("Investments") through the facilities of its own trading or capital markets operations or those of any affiliated entity. Any earnings attributable to the Economic Settlement Trust Account ─ General Claims Fund and the General Claims Fund Account shall be transferred to the Economic Settlement Trust Account ─ Administrative Fund and the Administrative Fund Account, respectively, on a calendar quarterly basis no later than the 10th Business Day after the end of such quarter. Any earnings attributable to any Economic Settlement Trust Sub-Account (other than the Economic Settlement Trust Account ─ General Claims Fund Account) and any Fund Account (other than the General Claims Fund Account) shall be added to such respective Economic Settlement Trust Sub-Account and Fund Account.

(b) Market values, exchange rates and other valuation information (including without limitation, market value, current value or notional value) of any Investment furnished in any report or statement may be obtained from third-party sources and will be furnished for the use of the Settlement Trust, the Trustee and the Directed Trustee. The Lead Paying Agent shall have no responsibility to determine the market or other value of any Investment and makes no representation or warranty, express or implied, as to the accuracy of any such valuations or that any values necessarily reflect the proceeds that may be received on the sale of an Investment. If the Lead Paying Agent satisfies the Standard of Care set forth in Section 9(b) below in connection with such Investments, the Lead Paying Agent shall not have any liability for any loss sustained as a result of any Investment made pursuant to the terms of this Agreement or as a result of any liquidation of any Investment prior to its maturity. The Lead Paying Agent shall have the right to liquidate any Investments held in order to provide funds necessary to make required payments under this Agreement and the Settlement Agreement.

4. **General Payment Responsibilities**. (a) The Lead Paying Agent shall serve as lead paying agent for each of the Fund Accounts and in that capacity shall pay Settlement Claims and other costs relating to the Settlement Program from the applicable Fund Account as directed from time to time by the Trustee acting as Claims Administrator under the Settlement Agreement or by one or more persons designated in writing by the Trustee acting as Claims Administrator (each an "Authorized Representative"). The Claims Payment Agent is an Authorized Representative with respect to the Claims Fund Accounts. Except as otherwise provided in Section 4(b) below, any instructions setting forth, claiming, containing, objecting to, or in any way related to the transfer or distribution of amounts held in the Seafood Compensation Fund Account, the General Claims Fund Account, the Administrative Fund Account, the Promotional Fund Account or the Supplemental Information Fund Account (such amounts, the "Fund Account Amounts"), must be in writing or set forth in a Portable Document Format ("PDF"), executed by the Trustee acting as the Claims Administrator as evidenced by the signatures of the

person or persons signing this Agreement or one of his designated persons as set forth in Schedule 1, including, but not limited to one or more Authorized Representatives, and delivered to the Lead Paying Agent only by confirmed facsimile or attached to an email on a Business Day only at the fax number or email address set forth in Section 11 below.  No instruction for or related to the transfer or distribution of any of the Fund Account Amounts shall be deemed delivered and effective unless the Lead Paying Agent actually shall have received it on a Business Day by facsimile or as a PDF attached to an email only at the fax number or email address set forth in Section 11 below and as evidenced by a confirmed transmittal to the Party's or Parties' transmitting fax number or email address and the Lead Paying Agent has been able to satisfy any applicable security procedures as may be required hereunder.  The Lead Paying Agent shall not be liable to any Party or other person for refraining from acting upon any instruction for or related to the transfer or distribution of any portion of the Fund Account Amounts if delivered to any other fax number or email address, including but not limited to a valid email address of any employee of the Lead Paying Agent.

(b)     The Lead Paying Agent and the Claims Payment Agent shall establish an arrangement (the "Paying Agent Arrangement") whereby the Claims Payment Agent will have the ability to draw checks on or wire funds from sufficient available funds in the Deposit Accounts associated with the Claims Fund Accounts to make Settlement Payments.  Prior to authorizing payment of Settlement Payments to any Claimant, the Claims Payment Agent will request from such Claimant either an Internal Revenue Service ("IRS") Form W-9 (or its successor form) or an IRS Form W-8 (or its successor form) duly completed and executed by such Claimant, to the extent required by U.S. tax law.  Preparation and processing of IRS Forms 1099-MISC or 1042-S with respect to such payments to the extent required by law, and withholding of taxes and due payment as required by law or otherwise permitted under the Settlement Agreement, shall be performed by the Claims Payment Agent, as described in Section 10 below.  The Claims Payment Agent shall instruct the Lead Paying Agent to transfer funds from the applicable Claims Fund Accounts to the applicable Deposit Accounts in such amounts as correspond with all check payments and other payments initiated by the Claims Payment Agent prior to issuance of such payments.  All Parties agree that such funds shall remain on deposit in the Deposit Accounts until the issued payments are paid from the Deposit Accounts or this Agreement is terminated and the Deposit Accounts are closed.  The Trustee hereby authorizes the Claims Payment Agent to, and the Claims Payment Agent shall, enter into bank account and service agreements on behalf of the Settlement Trust with the Lead Paying Agent with regard to the Deposit Accounts associated with the Claims Fund Accounts, including Lead Paying Agent's Positive Pay and Payee Verification Service Terms (collectively, the "Bank Service Agreements").  Pursuant to the Bank Service Agreements, the Claims Payment Agent shall provide to the Lead Paying Agent (or its designated affiliate) a nightly, system-generated notification report of all check issuances, through an electronic file in the format and specifications required by the Lead Paying Agent.  Such notification report shall be used by the Lead Paying Agent in connection with the funding of the Deposit Accounts from the applicable Claims Fund Accounts, as provided above, and in connection with the operation of the Encashment Program described below.  In accordance with and subject to the Standard of Care set forth in Section 9(b) below, the Lead Paying Agent hereby commits to meeting all agreed upon timelines including (i) processing all required payments by wire as directed by the Trustee or its designees in accordance with this Agreement, (ii) with regard to the check issuances by the Claims Payment Agent on the Deposit Account(s), establishing the Encashment Program and

entering into the arrangements with the Gulf Region Bank(s) described in Section 5 below, and (iii) providing all necessary staff training both at the Lead Paying Agent and the Gulf Region Bank(s).  The Lead Paying Agent and the Claims Payment Agent hereby each agree, in accordance with and subject to the Standard of Care set forth in Section 9(b) below, to deploy sufficient internal resources to assure operational readiness and effectiveness.

(c)  In the event funds transfer instructions are set forth in a permitted instruction from a an Authorized Representative of the Trustee acting as Claims Administrator in accordance with Section 4(a) above, the Lead Paying Agent is authorized to seek confirmation of such funds transfer instructions by a single telephone call-back to one of the Authorized Representatives of the Trustee acting as Claims Administrator, and the Lead Paying Agent may rely upon the confirmation of anyone purporting to be that Authorized Representative.  The persons and telephone numbers designated for call-backs may be changed only in a writing executed by Authorized Representatives of the applicable Party and actually received by the Lead Paying Agent via facsimile or as a PDF attached to an email.  Except as set forth in Sections 4(b) above and 4(d) below, no funds will be disbursed until an Authorized Representative is able to confirm such instructions by telephone call-back.  The Lead Paying Agent and the bank to which such funds are being transferred may rely solely upon any account numbers or similar identifying numbers provided by and confirmed by an Authorized Representative.

(d)  The Parties agree that repetitive funds transfer instructions may be given to the Lead Paying Agent for one or more beneficiaries where only the date of the requested transfer, the amount of funds to be transferred, and/or the description of the payment shall change within the repetitive instructions ("Standing Settlement Instructions").  Any such Standing Settlement Instructions shall be set up in writing in advance of any actual transfer request and shall contain complete funds transfer information (as set forth above) for the beneficiary.  Any such set-up of Standing Settlement Instructions (other than those established concurrently with the execution of this Agreement), and any changes in existing set-up, shall be confirmed by means of a verifying call-back to an Authorized Representative.  Standing Settlement Instructions will continue to be followed until cancelled by the Trustee acting in his capacity as Claims Administrator in a writing signed by an Authorized Representative and delivered to the Lead Paying Agent in accordance with this Agreement.  Once set up as provided herein, the Lead Paying Agent may rely solely upon such Standing Settlement Instructions and all identifying information set forth therein for each beneficiary.  Each Party agrees that any Standing Settlement Instructions shall be effective as the funds transfer instructions of such Party or the Parties, as applicable, without requiring a verifying call-back, as set forth in Section 4(c) above, if such Standing Settlement Instructions are consistent with previously authenticated Standing Settlement Instructions for that beneficiary.

(e)  The Parties acknowledge that there are certain security, corruption, transmission error and access availability risks associated with using open networks such as the internet and the Parties hereby expressly assume such risks.

5.    **Encasement Program.**  The Lead Paying Agent (a) agrees that checks drawn upon the Deposit Accounts associated with any of the Claims Fund Accounts will be accepted for cashing and payment at any of the Lead Paying Agent's branches located in the States of Alabama, Florida, Louisiana, Mississippi, or Texas (the "Gulf Region") without the requirement

that the holder open or maintain an account with the Lead Paying Agent or pay a check-cashing or other similar fee, and (b) shall enter into an arrangement with one or more additional depository institutions with branch locations in the Gulf Region, each of which depository institutions shall be subject to the approval of BPEP, the Lead Class Counsel and the Court under the Settlement Agreement (each a "<u>Gulf Region Bank</u>"), pursuant to which such Gulf Region Bank will accept checks drawn upon the Deposit Accounts associated with the Claims Fund Accounts for cashing and payment at any of its branches located in the Gulf Region without the requirement that the holder open or maintain an account with such Gulf Region Bank or pay a check-cashing or other similar fee (the "<u>Encashment Program</u>").   The Parties hereby acknowledge that Regions Bank, having its principal place of business in Birmingham, Alabama ("<u>Regions Bank</u>"), has been approved as a Gulf Region Bank by all necessary parties described above.   The Deposit Accounts associated with the Claims Fund Accounts shall remain fully funded for the Claims Payment Agent or other Authorized Representative for all outstanding payments issued by the Claims Payment Agent prior to sending payment, or instructing the Lead Paying Agent to transfer such payments, to the claimants/payees including such amount to provide sufficient liquidity to process checks cashed at the Gulf Region Banks under the Encashment Program.   As part of the Encashment Program, the Lead Paying Agent hereby commits to developing and implementing fraud protection systems and processes of a high standard, including frequent updating of positive pay files, effective verification systems and all requisite teller and other staff training.   The Trustee and the Claims Payment Agent hereby authorize the Lead Paying Agent to provide check issuance information for the Deposit Accounts associated with the Claims Fund Accounts to each Gulf Region Bank and its agents, including without limitation any check validation service.   The Lead Paying Agent shall serve as the single point of interface for the Trustee with respect to the Encashment Program and will administer and be responsible for all arrangements with the Gulf Region Banks.   The Parties hereby agree that the Encashment Program will not include any check-cashing arrangements with Walmart or any other non-depository institution.

6.      **Reports**.   The Lead Paying Agent shall provide to the Trustee, the Directed Trustee and BPEP (via e-mail, online access, direct host-to-host transmission or other agreed upon method to a list of recipients authorized by the Trustee, the Directed Trustee and BPEP, respectively) the reports listed on <u>Appendix C</u> hereto with the frequency provided therein.   The Lead Paying Agent shall provide to the Trustee, BPEP or the Lead Class Counsel such additional reports as such person may reasonably request.   In addition to the reports specified in Section 4 hereof, the Claims Payment Agent shall provide to the Trustee, the Directed Trustee and BPEP an annual report listing the Form 1099 and Form 1042-S recipients and shall provide to the Trustee, the Directed Trustee, the Lead Paying Agent, the Lead Class Counsel or BPEP such other reports as such person or entity may reasonably request.

7.      **Succession.**   The Lead Paying Agent may resign and be discharged from its duties or obligations hereunder by giving at least ninety (90) days' advance notice in writing of such resignation to the Trustee, the Directed Trustee and BPEP specifying the date when such resignation shall take effect.   The Lead Paying Agent's sole responsibility after such ninety-day notice period expires shall be to hold the Fund Account Amounts (without any obligation to reinvest the same) and to deliver the same to a designated successor paying agent, if any, appointed by BPEP, the Trustee and the Directed Trustee, or such other person designated by BPEP, the Trustee and the Directed Trustee, or as ordered by the Court, at which time of

delivery, the Lead Paying Agent's obligations hereunder shall cease and terminate. If prior to the effective resignation date, BPEP, the Trustee and the Directed Trustee have failed to appoint a successor paying agent, or to instruct the Lead Paying Agent to deliver the Fund Account Amounts to another person as provided above, at any time on or after the effective resignation date, the Lead Paying Agent may interplead the Fund Account Amounts with the Court. Subject to the approval of BPEP, the Lead Class Counsel and the Court under Section 5.12.1.7 of the Settlement Agreement, the Trustee may remove the Lead Paying Agent and terminate this Agreement as to the Lead Paying Agent by giving the Lead Paying Agent at least thirty (30) days' advance notice in writing of such removal and termination specifying the date when such removal and termination shall take effect. The Lead Paying Agent shall deliver the Fund Account Amounts to any appointed successor paying agent, at which time the Lead Paying Agent's obligations under this Agreement shall cease and terminate. Any corporation or association into which the Lead Paying Agent may be merged or converted or with which it may be consolidated, or any corporation or association to which all or substantially all the escrow business of the Lead Paying Agent may be transferred, shall be the Lead Paying Agent under this Agreement without further actions. The Claims Payment Agent may resign and be discharged from its duties or obligations hereunder by giving at least ninety (90) days' advance notice in writing of such resignation to the Trustee, the Lead Paying Agent and BPEP specifying the date when such resignation shall take effect. Subject to the approval of BPEP, the Lead Class Counsel and the Court under Section 5.12.1.7 of the Settlement Agreement, the Trustee may remove the Claims Payment Agent and terminate this Agreement as to the Claims Payment Agent by giving the Claims Payment Agent at least thirty (30) days' advance notice in writing of such removal and termination specifying the date when such removal and termination shall take effect. Any corporation or association into which the Claims Payment Agent may be merged or converted or with which it may be consolidated, or any corporation or association to which all or substantially all the escrow business of the Claims Payment Agent may be transferred, shall be the Claims Payment Agent without further actions. It will be the responsibility of the Trustee or Claims Payment Agent (on behalf of the Trustee) to notify the Lead Paying Agent upon termination of the Settlement Agreement and to provide instructions as required by the Settlement Agreement to the Lead Paying Agent as to the disbursement of any remaining Fund Account Amounts and amounts in the Deposit Accounts.

      8. **Fees**. The Settlement Trust agrees to pay the Lead Paying Agent compensation for the services to be rendered hereunder, which, unless otherwise agreed in writing by the Trustee and BPEP, shall be solely as described in <u>Appendix D</u> attached hereto. The Settlement Trust agrees to pay the Claims Payment Agent compensation for the services to be rendered hereunder, which shall be set forth in a separate agreement between the Trustee, or other party authorized by the Trustee, and the Claims Payment Agent. The obligations contained in this Section 8 shall survive the termination of this Agreement and the resignation, replacement or removal of the Lead Paying Agent or the Claims Payment Agent, as applicable. The BP Parties and Lead Class Counsel, and not the Trustee and/or the Directed Trustee, selected JPMorgan Chase Bank, N.A. as the Lead Paying Agent, and BPEP, the Lead Paying Agent and the Directed Trustee, and not the Trustee, set the compensation described in <u>Appendix D</u>.

9.      **Duties, Indemnity and Exculpation.**

(a)  The Lead Paying Agent shall have only those duties as are specifically and expressly provided herein, and no other duties shall be implied.  The Lead Paying Agent shall not be required to determine if any other Party has complied with any other agreement. Notwithstanding the terms of any other agreement between the other Parties, the terms and conditions of this Agreement shall control the actions of the Lead Paying Agent.  The Lead Paying Agent may conclusively rely upon any written notice, document, instruction or request delivered by the Parties believed by it to be genuine and to have been signed by an Authorized Representative(s), as applicable, without inquiry and without requiring substantiating evidence of any kind and the Lead Paying Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document, notice, instruction or request.  The Lead Paying Agent shall not be liable for any action taken, suffered or omitted to be taken by it in good faith except to the extent that the Lead Paying Agent's negligence or willful misconduct was the cause of any direct loss to any Party.  The Lead Paying Agent may execute any of its powers and perform any of its duties hereunder directly or through affiliates or agents, including but not limited to, Regions Bank or other Gulf Region Banks approved as provided in Section 5 above hereof.  In the event the Lead Paying Agent receives instructions, claims or demands from any other Party hereto which conflict with the provisions of this Agreement, or if the Lead Paying Agent receives conflicting instructions from the other Parties, the Lead Paying Agent shall be entitled at its option either to (i) refrain from taking any action until it shall be given either a joint written direction executed by Authorized Representatives of the other Parties which eliminates such conflict or a final court order; or (ii) file an action in interpleader with the Court. The Lead Paying Agent shall not be liable or become liable in any way for its refusal to comply with such conflicting claims, demands or instructions.   Anything in this Agreement to the contrary notwithstanding, in no event shall the Lead Paying Agent be liable for special, incidental, punitive, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Lead Paying Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.  The indemnities and liabilities of the Trustee and the Directed Trustee shall be governed by Sections 3.5 and 3.6 of the Trust Agreement.

(b)  In the exercise of any of the authorities, powers or discretion conferred upon it by this Agreement, the Lead Paying Agent shall be held harmless and be free and wholly exonerated from liability on account of any honest error of judgment, or by reason of acts or things done, suffered or omitted without willful misconduct or negligence, and the Lead Paying Agent (and its agents, officers, employees, directors and affiliates not to include any Gulf Region Bank) shall be indemnified, jointly and severally, by the Settlement Trust (solely out of the Administrative Fund) and BPEP for any expense (including attorneys' fees and other costs of investigation, defense or settlement of any claim), judgment, settlement, tax, damage, claim or other liability arising as a result of the performance by the Lead Paying Agent of its obligations hereunder or the performance by any of its agents (including any Gulf Region Bank) of any of its obligations in connection with the services contemplated by this Agreement, in any such case if such performance satisfies the foregoing standard of care (herein referred to as the "Standard of Care").  With regard to the Deposit Accounts of the Claims Funds and the Encashment Program, the Lead Paying Agent will be deemed to have met the Standard of Care if it implements, maintains and manages, as part of the Encashment Program with the applicable Gulf Region

Bank, a process and procedure whereby the Lead Paying Agent pays or authorizes payment of any checks which match the check issuance information received from the Claims Payment Agent, including any updated information as provided pursuant to the Bank Service Agreements, following a reasonable verification, under the standard procedures of the Lead Paying Agent's branches or the applicable Gulf Region Bank, of the identity of the Claimant presenting such check for payment.  In the exercise of any of the authorities, powers or discretion conferred upon them by law or by this Agreement, the Claims Payment Agent shall be held harmless and be free and wholly exonerated from liability on account of any honest error of judgment, or by reason of acts or things done, suffered or omitted without willful misconduct or gross negligence, and the Claims Payment Agent shall be indemnified, jointly and severally, by the Settlement Trust (solely out of the Administrative Fund) and BPEP for any expense (including attorneys' fees and other costs of investigation, defense or settlement of any claim), judgment, settlement, tax or other liability arising as a result of the Claims Payment Agent's performance of its obligations hereunder that satisfies the foregoing Standard of Care.  In addition, the Claims Payment Agent is permitted to rely upon the validity, accuracy and content of any payment delivery instructions provided by Claimants and upon the amount and type of payments as provided to the Claims Payment Agent by the Claims Administrator or his authorized representatives.  Provisions in other agreements relating to the retention of the Claims Payment Agent to provide services under the Deepwater Horizon Economic and Property Damages Settlement Agreement may provide additional indemnification for the Claims Payment Agent.  The indemnities contained herein in respect to the Lead Paying Agent shall survive the resignation or removal of the Lead Paying Agent, and the indemnities contained herein in respect to the Claims Payment Agent shall survive the resignation or removal of the Claims Payment Agent.

(c)  The fact that the Lead Paying Agent or any of its affiliates is active in the investment business shall not be deemed a conflict of interest, and purchases and sales of investments may be made through the Lead Paying Agent or through any firm that is an affiliate of the Lead Paying Agent and may result in the payment of fees to the Lead Paying Agent or its affiliates.

10.  **Taxpayer Reporting.**

(a)  As set forth in the Trust Agreement, the Trustee shall be the "administrator" of the Settlement Trust within the meaning of Treasury Regulation section 1.468B-2(k)(3), and shall comply with its duties and obligations as administrator pursuant to the Treasury Regulations promulgated under section 468B of the Code and as set forth in the Trust Agreement.  BP shall comply with any requirements applicable to the transferor of a qualified settlement fund pursuant to the Treasury Regulations promulgated under section 468B of the Code.

(b)  On or before the date required by applicable U.S. tax law, the Claims Payment Agent shall (1) deduct and cause the Lead Paying Agent to withhold, any applicable federal withholding tax from any payment of Settlement Payments and shall timely and duly pay, or cause to be timely and duly paid, such withheld taxes to the proper taxing authority in accordance with applicable U.S. tax law; (2)(i) to the extent required by U.S. tax law, prepare and mail, or cause to be prepared and mailed, to each Claimant to whom a payment of Settlement Payments has been made (other than a Claimant who demonstrates, by furnishing a valid Form W-8, his, her, or its status as a foreign corporation, foreign partnership, foreign trust or nonresident alien (a "Foreign Person"), in accordance with applicable tax law) an IRS Form

1099-MISC or other applicable form reporting the aggregate amount received by such Claimant; and (ii) prepare and file, or cause to be prepared and filed, copies of such IRS Forms 1099-MISC or such other applicable form with the IRS or other applicable taxing authority on or before the date required, in accordance with applicable U.S. tax law; and (3)(i) to the extent required by U.S. tax law, prepare and mail, or cause to be prepared and mailed, to each Claimant who is a Foreign Person to whom a Settlement Payments has been paid an IRS Form 1042-S or other applicable form reporting the aggregate amount received by such Claimant in accordance with applicable U.S. tax law; and (ii) prepare and file, or cause to be prepared and filed, copies of such IRS Forms 1042-S or such other applicable form with the IRS or other applicable taxing authority on or before the date required, in accordance with applicable U.S. tax law.

(c)   The Parties understand and intend that any income tax returns required to be filed with respect to the receipt by a Claimant of Settlement Payments shall be prepared and filed by such Claimant with the IRS and any other taxing authority as required by law.  Any income or other taxes required to be paid by a Claimant shall be the sole responsibility of such Claimant.

11.   **Notices.**  All communications hereunder shall be in writing or set forth in a PDF attached to an email, and all instructions from a Party or the Parties to the Lead Paying Agent shall be executed by an Authorized Representative, and shall be delivered in accordance with the terms of this Agreement by facsimile, email or overnight courier only to the appropriate fax number, email address, or notice address set forth for each Party in Appendix E.  For purposes of this Agreement, "Business Day" means any day other than a Saturday, Sunday or any other day on which the Lead Paying Agent located at the notice address set forth on Appendix E is authorized or required by law or executive order to remain closed.

12.   **Patriot Act Disclosure**.  Section 326 of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("USA PATRIOT Act") requires the Lead Paying Agent to implement reasonable procedures to verify the identity of any person that opens a new account with it.  Accordingly, the Parties acknowledge that Section 326 of the USA PATRIOT Act and the Lead Paying Agent's identity verification procedures require the Lead Paying Agent to obtain information which may be used to confirm the Parties' identity including without limitation name, address and organizational documents ("Identifying Information").  The Parties agree to provide the Lead Paying Agent with and consent to the Lead Paying Agent obtaining from third parties any such Identifying Information required as a condition of opening an account with or using any service provided by the Lead Paying Agent.

13.   **Miscellaneous**.   The provisions of this Agreement may be waived, altered, amended or supplemented, as a whole or in part, only by a writing signed by the Parties.  Neither this Agreement nor any right or interest hereunder may be assigned as a whole or in part by any Party hereto, except as provided in Section 7 above, without the prior consent of the other Parties hereto.   This Agreement shall be governed by and construed under the laws of the State of Delaware.  Each Party hereto irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds and irrevocably consents to service of process by mail or in any other manner permitted by applicable law and consents to the jurisdiction of the courts located in the State of New York.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.  To the

extent that in any jurisdiction any Party may now or hereafter be entitled to claim for itself or its assets, immunity from suit, execution, attachment (before or after judgment) or other legal process, such Party shall not claim, and hereby irrevocably waives, such immunity.  No Party to this Agreement shall be liable to any other Party for losses due to, or if it is unable to perform its obligations under the terms of this Agreement because of, acts of God, fire, war, terrorism, floods, strikes, or other causes reasonably beyond its control.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties may be transmitted by facsimile, and such facsimile will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.  If any provision of this Agreement is determined to be prohibited or unenforceable by reason of any applicable law of a jurisdiction, then such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in such jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction.  A person who is not a Party to this Agreement shall have no right to enforce any term of this Agreement.  Where, however, the conflicting provisions of any such applicable law may be waived, they are hereby irrevocably waived by the Parties hereto to the fullest extent permitted by law, to the end that this Agreement shall be enforced as written.

**IN WITNESS WHEREOF**, the parties hereto have executed this Paying Agent Agreement as of the Effective Date.

*DEEPWATER HORIZON* **ECONOMIC AND PROPERTY DAMAGES SETTLEMENT TRUST**

By:_____
Name:  Patrick Juneau
Title:   Trustee


_____
**PATRICK JUNEAU, as Trustee of the Settlement Trust and Claims Administrator**

**J.P. MORGAN TRUST COMPANY OF DELAWARE, as Directed Trustee of the Settlement Trust**


By:_____
Name:  James H. Gavin III
Title:   Vice President

**JPMORGAN CHASE BANK, N.A. as Lead Paying Agent**


By:_____
Name:  Gregory Campbell
Title:   Executive Director

**THE GARDEN CITY GROUP, INC. as Claims Payment Agent**


By:_____
Name:  Karen Shaer
Title:   General Counsel and Senior Vice President

**BP EXPLORATION & PRODUCTION INC.**


By:_____
Name:  Geir Robinson
Title:   Vice President

**APPENDIX A**

Standing Order Regarding the Transfer and Investment of Funds

The Trustee hereby directs the Directed Trustee and the Lead Paying Agent, pursuant to Section 2.4 of the *Deepwater Horizon* Economic and Property Damages Trust Agreement dated as of May 4, 2012, to take the following actions. (Capitalized terms are as defined in the Trust Agreement or the Paying Agent Agreement.)

When funds are paid by or on behalf of BP into the Economic Settlement Trust Account, the Directed Trustee and the Lead Paying Agent shall:

1. Immediately allocate and transfer from the Economic Settlement Trust Account – Seafood Compensation Fund to the Seafood Compensation Fund Account held by JPMorgan Chase Bank, N.A. all funds designated by BP for deposit into the Seafood Compensation Fund.

2. As soon as possible, but not later than the next business day, allocate and transfer from the Economic Settlement Trust Account – General Claims Fund to the General Claims Fund Account held by JPMorgan Chase Bank, N.A. sufficient funds to maintain a balance equal to $300,000,000, which is 150% of the minimum balance required to be held in such Fund under Section 5.12.1.3 of the Settlement Agreement.

3. As soon as possible, but not later than the next business day, allocate and transfer from the other Economic Settlement Trust Sub-Accounts to the applicable Fund Account 50% of the funds designated by BP for deposit into such Fund Account.

4. Transfer to the applicable Fund Account from the Economic Settlement Trust Sub-Account for each Fund any balance remaining from prior payments from BP to such Fund Account.

5. Transfer any earnings attributable to the Economic Settlement Trust Account — General Claims Fund and the General Claims Fund Account to the Economic Settlement Trust Account — Administrative Fund and the Administrative Fund Account, respectively, on a calendar quarterly basis no later than the 10th business day after the end of such quarter. Any earnings attributable to the remaining Funds of the Economic Settlement Trust shall remain in each such respective Fund.

Thereafter, the Directed Trustee and the Lead Paying Agent shall:

1. To the extent the balance of the General Claims Fund Account is less than $275,000,000, allocate and transfer sufficient funds, to the extent available, from the Economic Settlement Trust Account – General Claims Fund Account to increase the balance of the General Claims Fund Account to $300,000,000.

Pursuant to Section 2.4(H) of the Trust Agreement, the Trustee hereby delegates any or all of the discretionary power and authority conferred in the Settlement Trust at any time with respect to the investment of amounts held by the Settlement Trust, including in the Fund Accounts, to JPMorgan Chase Bank, N.A., which has demonstrated the experience and qualifications necessary for the responsible exercise of such discretion, subject to the Standard of Care set forth in Section 9(b) of the Paying Agent Agreement.

The Trustee hereby states that these directions do not:

- violate any provision of the Trust Agreement, the Settlement Agreement, or any related document listed in the recitals or anywhere throughout the Trust Agreement.
- adversely affect the qualification of the Settlement Trust as a qualified settlement fund.

The Directed Trustee and the Lead Paying Agent need not review whether the Trustee is satisfying its responsibilities under the Trust Agreement, including whether the direction from the Trustee may adversely affect the qualification of the Settlement Trust as a qualified settlement fund.

Neither the Directed Trustee nor the Lead Paying Agent has an obligation to investigate or confirm the authenticity of directions that it receives from the Trustee that comply with the terms of the Trust Agreement or the Paying Agent Agreement, as applicable.

The Trustee may amend, revoke or supplement this Standing Order at any time as set forth in the Trust Agreement.

APPROVED AND DIRECTED:

Date: _____          _____
                               Patrick Juneau, Trustee


Date: _____          _____
                               Patrick Juneau, Claims Administrator

- 15 -

**APPENDIX B**

**Investment Guidelines and Limitations**

Amounts deposited in each Fund Account shall be invested by the Lead Paying Agent conservatively in a manner designed to assure timely availability of funds, protection of principal and avoidance of concentration risk, only in the following types of investments:

- United States government money market funds having a AAA/Aaa rating awarded by at least two of the three major rating agencies (Standard & Poor's, Moody's or Fitch); or

- Short-dated United States treasury bills and/or interest bearing deposits at federally insured depository institutions that are at all times rated A+/A1 or higher by Standard & Poor's and Moody's provided such depository institution rated A+/A1 or higher at all times holds a stable or positive outlook.

The total amount of cash invested in any single United States government money market fund by the Funds in the aggregate shall not exceed $200 million and the total amount invested in deposits at federally insured depository institutions by the Funds in the aggregate shall not exceed $40 million per depository institution.

The Lead Paying Agent shall also be permitted to deposit funds in federally insured non-interest bearing depository accounts with each Gulf Region Bank in such amounts as may be reasonably necessary to provide sufficient liquidity to process checks cashed at such Gulf Region Bank under the Encashment Program, provided that the maximum aggregate amount to be on deposit in all Gulf Region Banks at any time shall not exceed $20 million without the prior written consent of BPEP.

# Appendix C

## Reports from Lead Paying Agent

|  |  | Frequency |
|---|---|---|
| **Requested Reports** | | |
|  | Investment Funds Balances | Daily |
|  | Management Report with a summary page containing total trust asset balance, total interest income earned from investment funds, injections to the trust with total number of injections and disbursements per fund with the number of transactions per fund (5.12.3.) | Weekly, Monthly, Quarterly |
|  | Trust Transactional Report (Statement listing) | Weekly |
|  | Detail Statement Reports (preferably in CD format) for each account | Monthly |
|  | All Bank Statements and Investment Fund Statements (including bank statements for Gulf Region Bank(s)) | Monthly |
|  | Summary report of the balance of each bank account | Monthly |
|  | Report of the type of investments that the funds are in (5.12.1.6.3.) | Monthly |
|  | Voided check and returned wire listing | Monthly |
|  | Reconciliation between JPMorgan/Lead Paying Agent and Garden City Group/Claims Payment Agent (by wire, by ach, by check, and fund account) with access to supporting documentation | Monthly |
|  | Reconciliation between JPMorgan/Lead Paying Agent and Trustee of the Settlement Trust/Claims Administrator of Settlement Program by each bank account/fund account with access to supporting documentation | Monthly |
|  | Trustee Fees, Lead Paying Agent fees, and Expense Listing with supporting documentation | Monthly |
|  | Paying agent fees and expenses listing with supporting documentation. | Monthly |

| | | |
|---|---|---|
| | Checking Account Reports to include, but not limited to: Summary by Transaction, Paid Check Proof, Duplicate Checks, Paid Checks and Reversals, Stops on File, Stop Payments, Paid Checks, Back value Detail Report, Proof of Outstanding, Outstanding Checks, Issuance List and Paid without Issuance | Monthly |
| | | |
| **System** | | |
| | Access to payment transaction data/ supporting documentation on web portal (JPMorgan Online Transaction Listing) with ability to download data | Current/Daily |

## APPENDIX D

### Lead Paying Agent and Directed Trustee Fee Schedule[1]

# Structuring and Implementation Fee:   $250,000 (one-time payment)

One-time, upfront structuring and implementation fees covering the paying agent structure which consists of the following key one-time components and activities:

- **Set-up and implementation**
- **Network management & coordination**
- **Value-added and ancillary activities**
- **Engagement of Gulf Region Bank(s) for the purpose of providing the Encashment Program**

The upfront, one-time payment of $250,000 is payable upon the execution of this Agreement.

# Annual Administrative Fees:   $87,500 (annual payment)

Annual fees covering administration of the following:

- **All accounts, which may include Master Trust Account(s), NY DDA Check Funding Account(s), NY DDA Reserve Funding Account(s), and DDA Check Funding Account(s) maintained by third party regional banking partner(s)**
- **Investments**
- **Management of interactions with claims administrator(s)**
- **Management of interactions with third party regional banking partner(s)**
- **Coordination of issuance and payment files between the Claims Administrator(s), JPMorgan, and the Gulf Region Bank(s) for purpose of performing positive pay and other fraud prevention activities**
- **Directed Trustee services, as set forth in the Joint Retention Agreement with J.P. Morgan Trust Company of Delaware**

The first annual payment of $87,500 is payable upon execution of this Agreement.

## Paying Agent and Disbursement Management Fees

The following identifies the overall payment processes involved in the disbursement of funds to claimants from the Economic and Property Damages Settlement Trust.  Included are the following areas of payment solutions:

- **Check Payments (JPMorgan / Gulf Region Bank(s))**
- **Wire Payments (JPMorgan only)**

---

[1]  The fees for the Lead Paying Agent and the Directed Trustee are being paid by the Settlement Trust on a combined basis, with the Lead Paying Agent and the Directed Trustee allocating such combined fee between themselves.

## Claims Payment Solution

### Check & Electronic Transfer Payments

To cover the ongoing management and administration of a check disbursement / electronic transfer payment solution with Gulf Region Bank(s)' branch network and related services.

**Monthly Charge:  $37,500**

Monthly program fees would cover all ongoing activities, incremental staffing and operational capacity management associated with the disbursements program at JPMorgan and the Gulf Region Bank(s) including handling of potential special situations arising out of the long-term, high visibility nature of the claims facility and the complex and geographically wide-spread scope of the underlying solution.

The first monthly payment of $37,500 is payable 30 days after the Effective Date of this Paying Agent Agreement, provided the Encashment Program has been successfully implemented by the Lead Paying Agent.  A monthly payment of $12,500 is payable as set forth the Paying Agent Agreement under the Medical Settlement Agreement.  The total monthly program fees payable by the Trust to JPMorgan is $50,000 while it serves as Lead Paying Agent under both the Economic and Property Damages Settlement Agreement and the Medical Settlement Agreement.  To the extent that one or the other of the Economic and Property Damages Settlement Agreement or the Medical Settlement Agreement is terminated or becomes null and void and, therefore, the Paying Agent Agreement under such settlement agreement is terminated, but JPMorgan continues in its role as Lead Paying Agent under the other settlement agreement, the monthly program fees payable to JPMorgan shall remain $50,000.

| SERVICE FEES | Price Per Unit |
|---|---|
| **Checking Services** | |

**Per check cashed over the counter:**                                   $6.00

*The encashment charge covers systems and processes necessary for enabling check validation and generation of unique authorization codes for audit-trail integrity, providing analytics / data to Gulf Region Bank(s) for cash inventory planning, training support, ongoing MIS and process oversight.*

**Clearing, positive pay, payee match, incremental fraud protection and**          $0.50
**reconcilement/reporting:**

*Apart from clearing and funding for checks, per check clearing fee is to accept issuance data from the Claims Administrators, managing check and account reconciliation, running positive pay and payee match against each check, image archiving, and providing online and file based access to reports and check images to all parties, as needed. This charge also includes maintaining data integrity between the DDA platform and any incremental fraud protection systems.*

**Electronic Transfers**

**Domestic Wire Transfers – Incoming & Outgoing**                         $3.50

*Per wire fees for all claims wire payments sent to claimants as well as wires between funding accounts to support the account management.*

**ACH Transfers – Incoming & Outgoing**                                    $0.50

*Per ACH transfer fee for all claims ACH transfer payments sent to claimants as well as ACH transfers between funding accounts to support the account management.*

## Legal Fees:  At Cost

To cover JPMorgan and its subsidiaries and affiliates' external counsel legal fees and expenses in connection with the activities contemplated by the engagement.

## Other Fees (excludes any expenses or fees paid to Gulf Region Bank(s)

Any reasonable charges for out-of-pocket expenses or for any services of an extraordinary nature that JPMorgan or its legal counsel may be called upon from time to time to perform in either an agency or fiduciary capacity will be passed through at cost.

## Other Terms – Fees

All annual and monthly fees, unless otherwise stated, are due in advance following successful implementation of the payment structure described in the main body of this Paying Agent Agreement. Any reasonable charges for out-of-pocket expenses or for any services of an extraordinary nature that JPMorgan or its legal counsel may be called upon from time to time to perform in either an agency or fiduciary capacity will be passed through at cost.  Should this schedule of fees be accepted and agreed upon and work commenced on this transaction but subsequently halted and the transaction described is not consummated the legal fees incurred, along with all out-of-pocket expenses and a satisfactory termination fee to be agreed by JPMorgan, the Trustee and BPEP will be payable.

## APPENDIX E

### Addresses for Notice

If the Settlement Trust or to Patrick Juneau, as Trustee of the Settlement Trust or Claims Administrator:

> Patrick Juneau
> Juneau David, APLC
> 1018 Harding Street, Suite 202
> Lafayette, LA 70503
> Fax:  (337) 269-0061
> paj@juneaudavid.com

If to J.P. Morgan Trust Company of Delaware, Directed Trustee of the Settlement Trust:

> James H. Gavin III
> Vice President
> J.P. Morgan Trust Company of Delaware
> 500 Stanton Christiana Road, CC Commons
> North/South, Floor 2
> Newark, Delaware 19713-2107
> Fax:  (302) 634 - 4474
> james.h.gavin@jpmorgan.com

If to JPMorgan Chase Bank, N.A., Lead Paying Agent:

> Gregory Campbell
> Executive Director
> JPMorgan Chase Bank, N.A.
> Escrow Services
> Attention: Rory Nowakowski
> 420 West Van Buren Street, 5th Floor
> Chicago, IL 60606-3534
> Fax: (312) 954 0430
> mw.escrow@jpmorgan.com

If to Claims Payment Agent:

> Karen Shaer
> General Counsel and Senior Vice President
> The Garden City Group, Inc.
> 1985 Marcus Ave
> Lake Success, NY  11042
> Fax:  631-940-6554
> Karen.Shaer@gcginc.com

If to BP:

Geir Robinson
BP
501 WestLake Park Blvd.
Houston, TX 77079
Fax:  281-504-6567
Geir.Robinson@uk.bp.com

## Schedule 1

**Telephone Numbers and Authorized Signatures for**
**Person(s) Designated to Give Instructions and Confirm Funds Transfer Instructions**

For Seafood Compensation Fund Account:

|  | <u>Name</u> | <u>Telephone Number</u> | <u>Signature</u> |
|---|---|---|---|
| 1. | _____ | _____ | _____ |
| 2. | _____ | _____ | _____ |
| 3. | _____ | _____ | _____ |

General Claims Fund Account:

|  | <u>Name</u> | <u>Telephone Number</u> | <u>Signature</u> |
|---|---|---|---|
| 1. | _____ | _____ | _____ |
| 2. | _____ | _____ | _____ |
| 3. | _____ | _____ | _____ |

Administrative Fund Account:

|  | <u>Name</u> | <u>Telephone Number</u> | <u>Signature</u> |
|---|---|---|---|
| 1. | _____ | _____ | _____ |
| 2. | _____ | _____ | _____ |
| 3. | _____ | _____ | _____ |

Promotional Fund Account:

|  | <u>Name</u> | <u>Telephone Number</u> | <u>Signature</u> |
|---|---|---|---|
| 1. | _____ | _____ | _____ |
| 2. | _____ | _____ | _____ |
| 3. | _____ | _____ | _____ |

Supplemental Information Fund Account:

| | Name | Telephone Number | Signature |
|---|---|---|---|
| 1. | _____ | _____ | _____ |
| 2. | _____ | _____ | _____ |
| 3. | _____ | _____ | _____ |

All instructions, including but not limited to funds transfer instructions, whether transmitted by facsimile or set forth in a PDF attached to an email,  must include the signature of the Authorized Representative authorizing said funds transfer on behalf of each Party.