UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the | * | |
| GULF OF MEXICO, on | * | SECTION J |
| APRIL 20, 2010 | * | |
| | * | JUDGE BARBIER |
| | * | MAG. JUDGE SUSHAN |
| **THIS DOCUMENT APPLIES TO:** | * | |
| No. 12-311 | * | **JURY TRIAL DEMANDED** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### LIBERTY INSURANCE UNDERWRITERS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO F.R.C.P.12(c)

Liberty Insurance Underwriters, Inc. ("Liberty") submits this Memorandum in Support of its Motion For Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).

### INTRODUCTION

This is an insurance coverage dispute between Cameron International Corporation ("Cameron"), which supplied the blowout preventer for the *Deepwater Horizon*, and Liberty, one of Cameron's excess insurers. The dispute arose because Liberty did not participate in funding Cameron's settlement with BP in the *Deepwater Horizon* Litigation. But, as a threshold matter, coverage under the Liberty Excess Policy is not triggered for two independent reasons:

*First,* by its express terms – and unlike any other policy in Cameron's insurance tower -- coverage under the Liberty Excess Policy is excess of "any type of . . . indemnification or other mechanism by which an insured arranges funding of legal liabilities." Here, as is common in the oil and gas industry, Cameron had just such indemnity rights from Transocean. Because the Liberty Excess Policy coverage is excess over Transocean's indemnity obligation, the extent of

1

which has not been determined, the Liberty Excess Policy is not triggered.  Cameron's claims fail this threshold coverage issue and should be dismissed.

*Second*, even if coverage had been triggered, Cameron is precluded from recovery under the policy:  Cameron's settlement with BP waives its indemnity rights against Transocean.  As Texas courts have made clear:  "[W]hen an insured extinguishes an insurer's subrogation rights the insured is precluded from recovery under the policy." *Mendez v. Allstate Prop. & Cas. Ins. Co.*, 231 S.W.3d 581, 585 (Tex. App.--Dallas 2007, no pet.).  Cameron's voluntary settlement with BP on terms that waived Cameron's right to indemnity, and thus Liberty's rights to subrogation, extinguished Cameron's rights under the Policy.

Moreover, Cameron's claims that the Liberty Excess Policy covers fees incurred in Cameron's continued defense of the *Deepwater Horizon* Litigation is exactly contrary to the terms of the Policy.  And as a matter of law, Cameron's bad faith claims fail because (1) absent coverage, there can be no bad faith claim, and (2) independently, Cameron's allegations do not state a bad faith claim under Texas law.

## BACKGROUND

Cameron's coverage claim arises from the *Deepwater Horizon* incident, with which the Court is intimately familiar, and from Cameron's related settlement with BP.   There  is  no dispute that, if the pre-conditions to coverage under the Liberty Excess Policy had been met, and Cameron had not extinguished Liberty's subrogation rights, Cameron's claim – with the exception of its claim for defense costs – would be covered.  Below are the facts related solely to the coverage dispute.

2

## A.      **THE POLICY**

Liberty issued to Cameron an excess insurance policy.  Policy No. LQ1-B71-198583-046, with effective dates of July 1, 2009 to July 1, 2010 ("Liberty Excess Policy" or the "Policy").[1]  The Liberty Excess Policy is excess of layers of insurance amounting to $103 million in underlying coverage and the Liberty Excess policy by its express terms is excess of other insurance, including indemnification.

### 1.      **"Other Insurance" Condition**

Liberty's policy is unique among the policies in Cameron's insurance tower.  The Policy terms include a Condition that its coverage is excess of "any type of . . . *indemnification or other mechanism by which an insured arranges for funding of legal liabilities*."[2]  Specifically, that Policy Condition States:

**CONDITIONS**

F.      Other Insurance

If other insurance applies to a "loss" that is also covered by this policy, this policy will apply excess of such other insurance.  Nothing herein will be construed to make this policy subject to the definitions, terms, conditions and exclusions of such other insurance.  However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

*Other insurance includes any type of self-insurance, indemnification or other mechanism by which an Insured arranges for funding of legal liabilities.* (emphasis added).

By virtue of the "Other Insurance" provision and other provisions, the Liberty Excess Policy sits excess of both $103 million of underlying insurance *and* Cameron's right to indemnification from third parties, a mechanism in addition to insurance by which Cameron

---

[1]  *See* Liberty Excess Policy attached hereto as Exhibit "A."

[2]  *See Id.* at Condition F.

740747_1

arranged to fund its legal liabilities. The fact that Liberty's layer of coverage was excess to other insurance and indemnification decreased Liberty's potential exposure because, in the oil and gas industry, indemnities and funding of legal liabilities *regardless of fault* are common place.[3] Undisputably, no other Cameron insurer had such language in their policies.

**2.     "Transfer of Rights" Condition**

The Liberty Excess Policy also contains specific terms and conditions to protect and limit Liberty's contractual rights. The Policy makes clear, as a condition of coverage, Cameron must do nothing to impair any subrogation rights that Liberty may have:

O.     Transfer of Rights of Recovery

1.  If any Insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The Insured must do nothing after loss to impair these rights and must help us enforce them.[4]

**3.     No Defense Obligations**

The Policy clearly provides that, while Liberty has a right to participate in the defense of Cameron, it does not have a duty to do so:

III.     DEFENSE

A.  We will not be required to assume charge of the investigation of any claim or defense of any suit against you.

B.  We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for "loss" under this policy. If we exercise such right, we will do so at our expense.

---

[3]  *See* Moojian Article, cited as an exhibit in Cameron's own Motion for Summary Judgment in the Oil Spill MDL.

[4]  First Underlying Policy issued by Illinois National Insurance Company, Policy Number: 27471353, attached as Exhibit "B," at Section VI. Conditions, Subpart O. Transfer of Rights of Recovery; *see also* Exhibit A, at Insuring Agreement, Section I (adopting terms of First Underlying Policy).

C. If the limits of liability of the Underlying Insurance shown in Item 5. of the Declarations are exhausted solely  by payment of "loss", we shall have the right but not the duty to investigate and settle any claim or assume the defense of any suit which, in our opinion, may give rise to a "loss" under this policy.  Such investigation or defense shall be at our own expense.  We may, however, withdraw from the defense of such suit and tender the continued defense to you if our applicable Limits of Liability shown in Item 4. of the Declarations are exhausted by payment of "loss."[5]

**4.   Policy Conditions Were Not Met**

The Policy further provides that Loss is payable after "the amount of loss has finally been determined" and that voluntary payments are not covered:

H.   When "Loss" is Payable

Coverage under this policy will not apply unless and until you or the insurer(s) of the Underlying Insurance shown in Item 5. of the Declarations has paid or is obligated to pay the full amount of such Limits of Liability.

When the amount of "loss" has finally been determined, we will promptly pay on your behalf the amount of "loss" covered under this policy.

**V. CONDITIONS**

**E. Notice of Occurrence**

4. The Insureds will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.[6]

\*\*\*\*\*

These provisions expressly provide that (1) Liberty owes no defense obligation to Cameron, (2) is not obligated to indemnify Cameron for a voluntary payment, and (3) is entitled to subrogation rights.

---

[5] Exhibit A, at Insuring Agreements, Section III.

[6] Id. at Section V(E).

5

**B.**   **CAMERON'S CLAIMS**

As the Liberty Excess Policy terms make clear, the Policy is not just excess of underlying policy limits, here $103 million, but also is excess of Cameron's indemnification rights. The latter requirement is not satisfied here, as a matter of law.  Specifically, as Cameron vigorously argued in its motion for summary judgment filed in the MDL, Cameron was entitled to indemnification from Transocean from two contractual sources, the Cameron-Transocean purchase order and the Master Services Agreement.  According to Cameron, pursuant to these indemnification agreements, Transocean was contractually obligated to:

    (a) Hold Cameron harmless from all the pending claims asserted in these consolidated proceedings; [and]

    (b) To undertake the defense of Cameron against all of these claims; and

    (c) Reimburse Cameron for all attorneys' fees and expenses incurred in defense of the covered claims.[7]

In support of the motion, Cameron presented persuasive arguments which Liberty adopts that Cameron was owed valuable and valid indemnification from Transocean.

Indeed, this Court already has ruled that BP must indemnify Transocean for compensatory damages asserted by third parties against Transocean related to sub-surface pollution, even if the claim is the result of Transocean's own strict liability, negligence, or gross negligence.[8]  Pursuant to the Cameron-Transocean purchase order and Master Services Agreement, Transocean, likewise, is required to indemnify Cameron for such claims.  Because

---

[7] Motion of Cameron, Dkt 4524.

[8] ORDER AND REASONS As to Transocean and BP's Cross-Motion for Partial Summary Judgment Regarding Indemnity, Document 5446, Case 2:10-md-02179-CJB-SS.

6

Cameron had a viable indemnification claim from Transocean in the Oil Spill MDL – including for claims resolved by the settlement, the attachment point for the Liberty Excess Policy has not been reached and coverage under the Liberty Excess Policy has not triggered.   As a result, Liberty has no duty to indemnify Cameron.

## C.   THE BP SETTLEMENT

As Cameron negotiated the settlement with BP, instead of pursuing indemnification, Cameron ignored the Liberty Excess Policy's terms and conditions and attempted to force Liberty to accept a settlement that waived all of Liberty's valuable contractual rights, including its subrogation rights.   When Liberty objected to the waiver of its subrogation rights and other non-monetary terms, Cameron settled anyway.   On December 16, 2011, BP and Cameron officially reached a settlement where BP agreed to indemnify Cameron for claims (except fines, penalties, sanctions, or exemplary damages) related to pollution from the *Deepwater Horizon* incident in exchange for a $250 million payment and significantly, Cameron's waiver of all subrogation and indemnification rights against BP and Transocean.[9]   After the settlement, Cameron withdrew its Motion For Summary Judgment concerning its claims for indemnification, thus precluding any determination of Cameron's right to indemnification from Transocean.   The settlement was funded in part by some of Cameron's other insurers and in part by Cameron itself.[10]

### 1.   Cameron's Lawsuit Against Liberty

Cameron thereafter filed this lawsuit against Liberty, seeking recovery of the Liberty Excess Policy's $50 million limit, and payment of defense costs.   Through its Amended Complaint, Cameron also alleges a claim for bad faith penalties and damages.   Cameron has pled

---

[9]   Amended Complaint, Paragraph 46.

[10]   Amended Complaint at Paragraphs 58-59.

740747_1

six causes of action.[11]   Cameron has asserted three claims on the insurance contract:  a cause of action for breach of contract[12], declaratory judgment for indemnity[13], and declaratory judgment for defense costs[14].  Cameron also asserts three bad faith claims – invoking both Texas and Louisiana law -- all of which are predicated on Cameron having a claim on the insurance contract; alleged violation of Louisiana Revised Statute 22:1892[15], and alleged violations of the Texas Insurance Code §§ 541[16] and 542[17].

Cameron's claims ignore the terms, conditions, and exclusions under the Liberty Excess Policy.  Among others, Cameron ignores the "Other Insurance" provision under which the Liberty Excess Policy is excess to indemnification obligations owed Cameron.  Pursuant to this provision, the Liberty Excess Policy has not attached, and Liberty is not liable to Cameron for any claim or cause of action asserted in Cameron's Complaint.  Cameron also ignores the Policy's plain language which does not include defense costs as "Loss" and allows, but does not obligate, Liberty to assume the defense.  Because Liberty is not liable to Cameron under the Policy, no claim for bad faith lies.  Accordingly, Liberty is not liable to Cameron for any asserted cause of action and Cameron's claims should be dismissed.

---

[11]   *See* Amended Complaint, Doc. 6287.

[12]   Amended Complaint at Paragraph 62 *et. seq.*

[13]   Amended Complaint at Paragraph 67 *et. seq.*

[14]   Amended Complaint at Paragraph 73 *et. seq.*

[15]   Amended Complaint at Paragraph 80 *et. seq.*

[16]   Amended Complaint at Paragraph 85 *et. seq.*

[17]   Amended Complaint at Paragraph 89 *et. seq.*

740747_1

### F.R.C.P. 12(b)(6) and 12(c) STANDARDS

Both a Rule 12(b)(6) motion to dismiss and a Rule 12(c) motion for judgment on the pleadings are subject to the same standard of review.[18]   When reviewing these motions, courts must accept all well-pleaded facts as true and view them in the light most favorable to the nonmoving party.[19]   However, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[20]   "To survive [these motions], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[21]   The moving party bears the burden of showing that "plaintiff can prove no set of facts consistent with the allegations in the complaint which would entitle it to relief."[22]   The reviewing court "must accept all well-pleaded factual allegations in the light most favorable to the non-moving party."[23]   Conclusory allegations or legal conclusions, however, will not suffice to defeat these motions.[24]

As a general rule, in considering a Rule 12(b)(6) motion to dismiss and a Rule 12(c) motion for judgment on the pleadings, a district court must limit itself to the facts stated in the complaint.   However, there are several exceptions to this rule.   For example, a court may also consider documents that a defendant attaches to the motion which are referred to in the plaintiff's complaint and central to the claims therein.[25]   Because Cameron has clearly referenced the Liberty excess Policy in its Complaint, the Court can consider the terms of the Policy in deciding

---

[18] *In re Chinese Manufactured Drywall Products Liability Litigation*, 759 F. Supp. 2d 822, 828 (E.D. Louisiana, 2010) citing, *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 313 (5th Cir.2002).

[19] *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996).

[20] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

[21] *Gonzalez v. Kay,* 577 F.3d 600, 603 (5th Cir.2009)(quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

[22] *Baton Rouge Bldg. & Constr. Trades Council AFL–CIO v. Jacobs Constructors, Inc.,* 804 F.2d 879, 881 (5th Cir.1986).

[23] *Am. Waste & Pollution Control Co. v. Browning Ferris Inc.,* 949 F.2d 1384, 1386 (5th Cir.1991).

[24] See *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993).

[25] See *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir.2000).

740747_1

this motion.[26]  The Court also may consider in connection with a 12(b) or 12(c) motion, pleadings in other lawsuits, which are a matter of public record.[27]

## ARGUMENTS & AUTHORITIES

Texas law applies the same rules to the interpretation of an insurance policy as to any other contract.[28]  When the policy's language can be given a definite or certain legal meaning, it is not ambiguous and it is construed as a matter of law.[29]  Importantly, a court will "construe the policy to give effect to each term in the contract and to avoid rendering any term a nullity."[30] The primary goal is to give effect to the written expression of the parties' intent and where the policy's language can be given a definite or certain legal meaning, it is not ambiguous and it is construed as a matter of law.[31]

As all six of these causes of action are based upon the terms of the Liberty Excess Policy, this entire dispute can be appropriately resolved as a matter of law on the clear terms of the insurance policy alone.  In fact, a determination that the Liberty Excess Policy is excess of

---

[26] *See, e.g., In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) ("[B]ecause the defendants attached the [insurance] contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss.") (citation omitted).

[27] *See, e.g., Burns v. Mayes*, No. 09-20126, 2010 WL 445629, at *1 (5th Cir. 2010) (relying on court records in deciding a Rule 12(b)(6) motion); *Hall v. Hodgkins*, 305 Fed. Appx. 224, 226 (5th Cir. 2008) (taking judicial notice of publicly available pleadings filed by the plaintiff in earlier cases and holding that it is appropriate to take judicial notice of matters of public record when deciding a 12(b)(6) motion to dismiss; *In re Chinese Manufactured Drywall Prods. Liab. Lit.*, 759 F. Supp. 2d 822, 828 (E.D. La. 2010) (considering pleadings filed in other cases in deciding Rule 12(c) motions; *Xavier v. Belfor USA Group, Inc.*, Nos. 06-491, 06-7084, 2007 WL 4224320, at *2 (E.D. La. Nov. 26, 2007) (taking judicial notice of pleadings filed in other courts and reasoning that "[b]ecause these pleadings are matters of public record, . . . the Court may take judicial notice of these documents in connection with Defendant's Rule 12(b)(6) Motion to Dismiss").

[28] *ARM Properties Management Group v. RSUI Indem. Co.*, 400 Fed.Appx. 938 (5th Cir. 2010); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

[29] *Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 626 (5th Cir. 1998);  *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

[30] *Lynch Props., Inc.,* 140 F.3d 622 at 626.

[31] *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998); *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)

740747_1

Cameron's indemnification rights and therefore was not triggered ends the dispute and requires a judgment for Liberty.

**A.    Because The Excess Policy Has Not Been Triggered, Cameron Has No Breach of Contract Claim.**

Cameron's first cause of action is based upon breach of contract. Under Texas law, for Cameron to prevail on a cause of action for breach of contract, Cameron must demonstrate the following:

1. There is a valid, enforceable contract;

2. Plaintiff and defendant are in privity;

3. The plaintiff performed, tendered performance, or was excused from performing its contractual obligations;

4. The defendant breached the contract; and

5. The defendant's breach caused the plaintiff injury.[32]

Putting aside whether Cameron can prove that it performed its obligations under the Policy, Liberty did not breach the insurance contract (element 4) because the Liberty Excess Policy has not been triggered.

The Liberty Excess Policy contains a unique provision, expressly providing that the Policy is excess of other insurance, including "indemnification or other mechanism by which an Insured arranges for funding of legal liabilities. The "Other Insurance" provision states:

---

[32] *See B & W Sup. V. Beckman*, 305 S.W.3d 10 (Tex. App.—Houston [1st Dist.] 2009, pet denied); *City of The Colony v. North Tex. Mun. Water Dist.*, 272 S.W.3d 699, 739 (Tex. App.—fort Worth 2008, pet. filed 3-4-09); *Valero Mktg. & Sup. Co. v. Kalama Int'l.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *Hovorka v. Community Health Sys.*, 262 S.W.3d 503, 508-09 (Tex. App.—El Paso 2008, no pet.); *Cannon v. ICO Tubular Servs.*, 905 S.W.2d 380, 393 (Tex. App.—Houston [1st Dist.] 1995, no writ).

740747_1

F.      Other Insurance

If other insurance applies to a "loss" that is also covered by this policy, this policy will apply excess of such other insurance.   Nothing herein will be construed to make this policy subject to the definitions, terms, conditions and exclusions of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

Other insurance includes any type of self-insurance, indemnification or other mechanism by which an Insured arranges for funding of legal liabilities.[33]

Courts have enforced similar provisions which put the insured on notice that the insured

will not step in and pay prior to exhaustion of funds from other sources.   *See e.g., Warren Hosp.*

*v. Am. Cos. Co. of Reading, Pa.,* 2009 WL 3074611 (D. N.J. Sept. 23, 2009) (policy is excess of

self insurance); *NM Hosp., Inc. v. Am. Cas. Co. of Reading Pa.,* 1996 WL 599468 at 2 (E.D. La.

Oct. 17, 1996) (Duval J.) ("The other insurance clause makes clear that if other funds are

available from another listed source, including a self-insured, the (insurance) is an excess

insurance only".)   In *Warren Hospital* and *NM Hospital,* the policies expressly defined "Other

Insurance" to include self-insurance.     Following the well-established rule of contract

interpretation that insurance is a contract that must be enforced as written, the courts in *Warren*

*Hospital and NM Hospital* enforced the plain terms of the policies which provided the policies

were excess of self-insurance.

As in *Warren Hospital* and *NM Hospital,* this Court, likewise, should follow Texas law to

enforce the insurance contract as written, and hold that the "Other Insurance" clause here makes

clear that if there are funds available from an indemnification obligation, this insurance is excess

of those funds.

Cameron undisputably had such indemnification in place to fund legal liabilities arising

from its blowout preventer from Transocean from two contractual sources of indemnity.   The

---

[33]  *See* Exhibit A at V. CONDITIONS, F. Other Insurance.

two contractual sources of indemnification are the Cameron-Transocean purchase order and the

Master Services Agreement.  Those indemnification provisions provide:

### Purchase Order's Terms & Conditions

In the event that Purchaser [i.e. Transocean] is entitled to indemnity *under any contract* with its customers or suppliers with respect to pollution, loss of hydrocarbons, damage to reservoirs, loss of hole or other damages associated with blowout or loss of well control.  *Purchaser [Transocean] will provide Seller [Cameron] with the benefit of such indemnity to the fullest extent possible.*[34]  (emphasis added).

### Transocean-Cameron Master Services Agreement

Transocean agrees that *if Transocean is entitled to indemnity under any contract with its customers or suppliers with respect to pollution*, loss of hydrocarbons, damage to reservoirs, loss of hole or other damages associated with blowout or loss of well control, *Transocean will provide Contractor [Cameron] with the benefit of such indemnity to the fullest extent possible.* (emphasis added).

Cameron, in fact, moved to enforce Transocean's indemnification obligations, arguing:

With respect to the *Deepwater Horizon* and in general, Transocean agreed in writing to hold Cameron harmless from injury and death claims of Transocean employees and invitees and from property damage claims.  Transocean also agreed to provide Cameron with the benefits of the indemnity contained in Transocean's contract with its customer BP.[35]

This Court's recent ruling confirms what Cameron asserted in its Motion For Summary

Judgment – that Cameron had available indemnification rights.  The provisions of the Cameron

Master Service Agreement provides that "if Transocean is entitled to indemnity", . . . Transocean

will provide [Cameron] with the benefit of such indemnity to the fullest extent possible.  This

Court has held that Transocean is entitled to indemnity from BP.  On January 26, 2012, the Court

---

[34] *See* Cameron's Memorandum in Support of Motion for Summary Judgment Declaring Obligations of Transocean to Indemnify and Defend Cameron, Doc. 4524-1, pgs. 4-8.

[35] Motion of Cameron, Dkt 4524.

740747_1

issued its decision which interpreted the language in Articles 24.2 and 25.1 of the BP-Transocean

Drilling Contract and confirmed Article 25.1 was fully incorporated into Article 24.2.[36]   Articles

24.2 and 25.1, as reproduced in the Court's decision, are below.

24.2   COMPANY [BP] RESPONSIBILITY

[BP] SHALL ASSUME FULL RESPONSIBILITY FOR AND *SHALL, PROTECT, RELEASE, DEFEND, INDEMNIFY, AND HOLD [Transocean] HARMLESS* FROM AND AGAINST ANY LOSS, DAMAGE, EXPENSE, CLAIM, FINE, PENALTY, DEMAND, OR LIABILITY *FOR POLLUTION OR CONTAMINATION*, INCLUDING CONTROL AND REMOVAL THEREOF, ARISING OUT OF OR CONNECTED WITH OPERATIONS UNDER THIS CONTRACT HEREUNDER AND *NOT ASSUMED BY [Transocean]* IN ARTICLE 24.1 ABOVE, WITHOUT REGARD FOR NEGLIGENCE OF ANY PARTY OF PARTIES AND *SPECIFICALLY WITHOUT REGARD FOR WHETHER THE POLLUTION OR CONTAMINATION IS CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OR FAULT OF [Transocean].*

25.1   INDEMNITY OBLIGATION

*EXCEPT TO THE EXTENT ANY SUCH OBLIGATION IS SPECIFICALLY LIMITED TO CERTAIN CAUSES ELSEWHERE IN THIS CONTRACT,* THE PARTIES INTEND AND AGREE THAT *THE PHRASE "SHALL PROTECT, RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS" MEANS* THAT THE INDEMNIFYING PARTY SHALL PROTECT, RELEASE, DEFEND, INDEMNIFY, AND HOLD HARMLESS THE INDEMNIFIED PARTY OR PARTIES FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION, DAMAGES, COSTS, EXPENSES (INCLUDING REASONABLE ATTORNEYS FEES), JUDGMENTS AND AWARDS OF ANY KIND OR CHARACTER, WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING PREEXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE *UNSEAWORTHINESS OF ANY VESSEL* OR VESSELS (INCLUDING THE DRILLING UNIT), BREACH OF REPRESENTATION OR WARRANTY, EXPRESSED OR IMPLIED, *BREACH OF CONTRACT, STRICT LIABILITY,* TORT, *OR THE NEGLIGENCE OF ANY PERSON OR PERSONS, INCLUDING THAT OF THE INDEMNIFIED PARTY, WHETHER SUCH*

---

[36] Order and Reasons [As to Transocean and BP's Cross-Motions for Partial Summary Judgment Regarding Indemnity], Document 5446, page 10 of 30.

740747_1

**NEGLIGENCE BE** SOLE, JOINT, OR CONCURRENT, ACTIVE, PASSIVE, OR **GROSS** OR ANY OTHER THEORY OF LEGAL LIABILITY <u>AND WITHOUT REGARD TO WHETHER THE CLAIM AGAINST THE INDEMNITEE IS THE RESULT OF AN INDEMNIFICATION AGREEMENT WITH A THIRD PARTY</u>.
(Underline added).

The Court confirmed, "Article 25.1 is itself a clear and unequivocal agreement to provide its broad indemnity coverage whenever the triggering phrase 'shall protect...' appears."[37] And, "The Drilling Contract reflects that they attempted to allocate risk ahead of time, ostensibly in the hopes that some degree of certainty may be brought to the risks inherent in that undertaking."[38]  The Court concluded that "BP is required to indemnify Transocean for compensatory damages asserted by third parties against Transocean related to pollution that did not originate on or above the surface of the water, even if the claim is the result of Transocean's strict liability, negligence, or gross negligence."[39]

It is undisputed that Article 25.1 includes the language, "and without regard to whether the claim against the indemnitee is the result of an indemnification agreement with a third party." As discussed and diagramed in Cameron's Complaint, Cameron is entitled to the benefit of Article 25.1 through its contract with Transocean.[40]  Accordingly, Cameron undisputably had indemnification rights from Transocean.

Enforcing the "Other Insurance" clause as written and considering Cameron's available indemnification rights, the Liberty Excess Policy does not attach to the Cameron-BP settlement

---

[37] ORDER AND REASONS As to Transocean and BP's Cross-Motion for Partial Summary Judgment Regarding Indemnity, Document 5446, Case 2:10-md-02179-CJB-SS, at pg. 9.

[38] *Id.* at pg. 16.

[39] ORDER AND REASONS As to Transocean and BP's Cross-Motion for Partial Summary Judgment Regarding Indemnity, Document 5446, Case 2:10-md-02179-CJB-SS.

[40] Amended Complaint, Paragraph 42.

740747_1

until the amount of indemnity owing Cameron from Transocean has been determined.[41]
Therefore, Liberty has no duty to indemnify Cameron.

### 1. Cameron Should be Judicially Estopped from Taking Contradictory Positions on Indemnity Owed to it by Transocean.

To avoid the Liberty Excess Policy's "Other Insurance" provision, Cameron flip-flops from its prior judicially asserted position and now alleges it had no indemnity at the time of its settlement with BP because Transocean contested its obligation.[42]   Cameron's flip-flop should not be condoned and Cameron should be judicially estopped from taking this contradictory position. "Judicial estoppel is a common-law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position."[43]

In the Oil Spill MDL pending before this Court, Cameron presented a substantial legal memorandum in support of their Motion for Contractual Indemnification against Transocean.[44] In the Motion and supporting Memorandum, Cameron expressly affirmed its right to indemnification from Transocean.   Cameron should be judicially estopped from now taking a completely contradictory position.   Liberty adopts Cameron's arguments, which are even more

---

[41] Exhibit "A" at Subsection F, "Other Insurance."

[42] Amended Complaint, at Paragraph 38.

[43] *Brandon v. Interfirst Corp.*,858 F.2d 266, 268, (5th Cir 1988)  (stating, "Generally, the doctrine applies in cases where a party attempts to contradict his own sworn statements in the prior litigation." *USLIFE Corp. v. U.S. Life Ins. Co.,* 560 F.Supp. 1302, 1304–05 (N.D.Tex.1983).  The purpose of the doctrine is "to prevent parties from 'playing fast and loose' with (the courts) to suit the exigencies of self- interest." *Id.* at 1305 (citing *Scarano v. Central Ry. Co. of New Jersey*, 203 F.2d 510, 513 (3d Cir.1953)). "Although the law of the Fifth Circuit is scant on the subject of judicial estoppel, the doctrine is recognized and has been applied here." *USLIFE,* 560 F.Supp. at 1305 & n. 2 (citing cases); *see, e.g., Jett v. Zink,* 474 F.2d 149, 154–55, *reh'g denied,* 474 F.2d 1347, 1348 (5th Cir.), *cert. denied, sub nom.   Sterling Oil of Oklahoma, Inc. v. Chamberlain,* 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 104 (1973) (*e.g.* party who argued that action was *quasi in rem* was precluded from arguing at a later stage in the litigation that the action was *in personam* ); *In re Double D Dredging Co.,* 467 F.2d 468, 469 (5th Cir.1972) (party who argued that a ship had been in navigable waters was later estopped from arguing that the ship had not been in navigable waters)).

[44] Memorandum in Support of Cameron International's Motion for Summary Judgment Denying All Claims Asserted by Transocean and Declaring Obligations of Transocean to Indemnify and Defend Cameron, Document 4524-1.

16

persuasive now that the Court has concluded that Paragraph 25.1 of the BP-Transocean Drilling Contract fully incorporates Paragraph 24.2.

## 2.  **Cameron's Attempt at Forced Waiver of Liberty's Policy Rights is Improper**

Cameron apparently believes that because it agreed to waive its indemnification rights in the BP settlement, it can convert the Liberty Excess Policy into one that attaches upon exhaustion of just the underlying limits, writing out of the Policy the "Other Insurance" provision. Neither the Policy nor the law permit Cameron to rewrite the Policy and force the waiver of Liberty's contractual rights. The Liberty Excess Policy expressly provides that it is excess over other insurance, including indemnification.[45] The Policy further provides that subrogation rights cannot be impaired and voluntary payments cannot be made.[46] Liberty's contract rights cannot be altered, re-written, or impaired because Cameron unilaterally decided to enter into an agreement which (1) prevented a judicial determination of Cameron's right to indemnification from Transocean, and (2) prevented Liberty from pursuing its subrogation rights against liable parties, including BP and Transocean.

"It is the law of Texas . . . that where a person insured under a contract which contains a right of subrogation on behalf of the insurance company settles with or releases a wrongdoer from liability for a loss before payment has been made by the insurance company, the latter's right of subrogation is thereby destroyed. Having done this, the insured forfeits any claim for indemnity under the policy." *Foundation Reserve Ins. Co. v. Cody*, 458 S.W.2d 214, 216 (Tex.Civ.App., 1970, no pet.), citing *International Ins. Co. v. Medical-Professional Building*, 405 S.W.2d 867 (Tex.Civ.App.-- Corpus Christi 1966, writ ref'd n.r.e.); *Maryland Motor Car*

---

[45] Exhibit "A" at Subsection F, "Other Insurance."

[46] Id. at Subsection V. CONDITIONS, E. Notice of Occurrence.

740747_1

*Ins. Co. v. Haggard*, 168 S.W. 1011 (Tex.Civ.App., Texarkana 1914); *State Farm Mutual Automobile Ins. Co. v. Elkins*, 451 S.W.2d 528 (Tex.Civ.App.-- Tyler 1970); *Gulf Ins. Co. v. White*, 242 S.W.2d 663 (Tex.Civ.App.-- Dallas 1951).

Separately, Cameron's decision to pay $250 million to BP, without Liberty's consent with respect to the non-monetary terms of the settlement, was a voluntary payment that could not impose any obligation or contractual duty on the part of Liberty.[47]   The Policy states: "The Insured will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."[48]   Because Cameron voluntarily settled these claims while some indemnities were still undetermined, Liberty has not breached the insurance policy and its duty to indemnify has not been triggered.

## B.   Liberty Is Entitled To Dismissal of Cameron's Claim For Declaratory Judgment On Indemnity.

Cameron's second cause of action is for declaratory judgment seeking a declaration that Liberty must indemnify Cameron for the Cameron-BP settlement in the Oil Spill MDL.[49]   As demonstrated above, the Liberty Excess Policy has not attached to the Cameron-BP settlement until the amount of indemnity owing Cameron from Transocean has been determined because "[o]ther insurance includes any type of self-insurance, <u>indemnification or other mechanism by which an Insured arranges for funding of legal liabilities.</u>"

---

[47] Liberty did not object to the settlement amount, but did not consent for Cameron to waive Liberty's subrogation rights and other valuable contractual rights.

[48] Exhibit "A" at V. CONDITIONS, E. Notice of Occurrence, 4.

[49] *See* Amended Complaint at Paragraphs 67-72.

In addition, the Policy also states:

**When "Loss" is Payable**

When the amount of 'loss' has finally been determined, we will promptly pay on your behalf the amount of 'loss' covered under this policy."[50]

This determination has not been made at this time. In *Data Specialties, Inc. v. Transcontinental Ins. Co.*, 125 F.3d 909 (5th Cir. 1997), the 5th Circuit, quoting the Texas Supreme Court, explained, "The insurer does not pay because (the assured) is alleged to be legally responsible, but because (the assured) has been adjudicated to be legally responsible."[51]  As such, Liberty has no duty to indemnify Cameron until it is "determined" that the Liberty excess Policy has attached to the Cameron-BP settlement.  Because the Liberty excess Policy has not attached to the Cameron-BP settlement, there is no duty to indemnify Cameron.  Because there is no duty to indemnify Cameron, Liberty is entitled to dismissal of this cause of action as a matter of law.

Moreover, the Policy also includes a condition that Cameron, except at its own cost, will not voluntarily make a payment, assume any obligation, or incur any expense, without Liberty's consent.  This condition states:  "The Insured will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."[52]

Cameron breached this condition when it paid BP and extinguished Liberty's subrogation rights without Liberty's consent.  In *Motiva Enterprises, LLC v. St. Paul Fire and Marine Ins. Co.* (5th Cir. 2006), the Fifth Circuit interpreted a consent-to-settle clause almost identical to the one in this policy and ruled, "the consent-to-settle clause required the insurer's advance consent

---

[50] Exhibit "A" at V. CONDITIONS, H. When "Loss" is Payable.

[51] *Data Specialties, Inc. v. Transcontinental Ins. Co.*, 125 F.3d 909 (5th Cir. 1997), quoting *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 25 (Tex. 1965).

[52] Exhibit "A" at V. CONDITIONS – E. Notice of Occurrence, 4.

740747_1

to any settlements that it would be funding."[53]   The Eastern District of Louisiana has ruled that *Motiva* stands for the principle that, "under Texas law, the failure to obtain consent constituted a material breach of the insurance contract, thereby relieving the insurance company of the obligation to pay the settlement."[54]

The Southern District of Texas, in *Hardesty Builders, Inc. v. Mid-Continent Ins. Co.,* recently cited *Motiva,* and stated, "The Fifth Circuit has made clear that under Texas law an insurer may escape liability on the basis of a settlement-without-consent provision, with or without a showing of prejudice."[55]   The *Hardesty* decision states: "[t]he Policy unambiguously required the consent of Mid-Continent prior to any voluntary settlement incurred by Hardesty. By proceeding to reach a settlement without Defendants' permission, Plaintiff breached the "no voluntary assumption" condition of the Policy [and] Plaintiff is not entitled to indemnity for the settlement agreement."[56]   This breach of contract makes Cameron responsible for their voluntary payment.   Liberty has no contractual duty to indemnify Cameron for the voluntary payment Cameron made and as such, Liberty is entitled to dismissal of this cause of action.

**C.     Liberty is Entitled To Dismissal Of Cameron's Claim For Declaratory Judgment On Defense Costs.**

Cameron's third cause of action is for declaratory judgment seeking a declaration that Liberty must indemnify Cameron for defense costs "in connection with the claims asserted in the Oil Spill MDL and related proceedings on an unlimited basis until Liberty exhausts its $50

---

[53] *Motiva Enterprises, LLC v. St. Paul Fire and Marine Ins. Co.*, 445 F.3d 381, 383 and FN 1(5th Cir. 2006).   In *Motiva*, the clause specifically states: "No Insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."

[54] *Lytal Enterprise, Inc. v. Newfield Exploration Co.*, 2006 WL 2990124 (not reported in F.Supp.2d).

[55] *Hardesty Builders, Inc. v. Mid-Continent Cas. Co.*, 2010 WL 5146597, p. 10 (S.D. Tex 2010), citing *Motiva* 445 F.3d at 386-387.

[56] *Id.* at 11.

million limit by indemnifying Cameron for its settlement of the BP claim."[57]  This claim must be

dismissed because, in addition to the fact that the Liberty Excess Policy was not triggered, the

Policy does not obligate Liberty to pay defense costs.  The Policy provides the following with

respect to the duty to defend and defense costs:

III.    DEFENSE

A. We will not be required to assume charge of the investigation of any
   claim or defense of any suit against you.

B. We will have the right, but not the duty, to be associated with you
   or your underlying insurer or both in the investigation of any claim
   or defense of any suit which in our opinion may create liability on
   us for "loss" under this policy.  If we exercise such right, we will
   do so at our expense.

C. If the limits of liability of the Underlying Insurance shown in Item
   5. of the Declarations are exhausted solely  by payment of "loss",
   we shall have the right but not the duty to investigate and settle any
   claim or assume the defense of any suit which, in our opinion, may
   give rise to a "loss" under this policy.   Such investigation or
   defense shall be at our own expense.  We may, however, withdraw
   from the defense of such suit and tender the continued defense to
   you if our applicable Limits of Liability shown in Item 4. of the
   Declarations are exhausted by payment of "loss."

As stated, the Liberty policy expressly negates any duty to defend.   Paragraph A

establishes that Liberty "will not be required to assume . . . defense of any suit against you."

Further, Paragraph B provides that there is no obligation or duty to associate in the defense.

In addition, Liberty is not liable for defense costs pursuant to the clear and unambiguous

terms of the Policy.  First, the term "loss" does not include defense costs.  The Liberty policy

states that Liberty will pay on behalf of the Insured "loss" that results from an occurrence during

the "policy period." "Loss" is defined in the policy as "those sums which the insured is legally

---

[57] *See* Amended Complaint at Paragraph 75.

obligated to pay as damages, after making proper deductions for all recoveries and salvage." Notably, "loss" under the Liberty excess Policy does not include defense costs.[58]

Second, the Liberty policy expressly addresses defense costs and provides that Liberty has no obligation to pay them. With respect to defense costs, the Policy states "[w]e will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for "loss" under this policy. If we exercise such right, we will do so at our expense." Liberty has not exercised the "right" at this time and therefore, it has no obligation to assume such expense. Based on the plain language in the Liberty policy, Cameron is not entitled to recover the cost of its defense from Liberty.

**D.     Liberty Is Entitled To Dismissal Of Plaintiff's Claims Of Violation Of Louisiana Revised Statute 22:1892.**

Plaintiff's Amended Complaint at Paragraph 80 *et. seq.* alleges that Liberty has violated Louisiana Revised Statute 22:1892 by arbitrarily, capriciously and without probable cause not paying the amount demanded by Cameron within thirty days. For the reasons stated above, Liberty owes neither indemnification or defense costs to Cameron. Therefore, as a matter of law, Cameron has no bad faith claim. *Betzel v. State Farm Lloyds*, 2005 WL 1500826 *3, (N.D.Tex.,2005) (Not Reported in F.Supp.2d).

In any event, this Louisiana statute does not apply to this insurance dispute involving a Texas insured and its insurer. Plaintiff's claims under Louisiana Revised Statute 22:1892 are a duplication of claims which Plaintiff has asserted under the Texas Insurance Code §§541 and

---

[58] Many policies define "loss" differently. In contrast to the Liberty Policy in which "loss" does not include defense costs, some policies are written to specifically include defense costs. For example, *National Union Fire Ins. Co. of Pittsburg, PA v. U.S. Liquids, Inc.,* 88 Fed.Appx. 725, 731(5th Cir. 2004), the insurance policy expressly defined "loss" to include "defense costs." If an insurance policy uses unambiguous language, it must be enforced as written. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.,* 267 S.W.3d 20, 23 (Tex.2008).

542.   Under the Texas Insurance Code 541.453 "Double Recovery Prohibited," the statute provides: "A person may not recover damages and penalties for the same act or practice under both this chapter and another law."  In its Amended Complaint Cameron seeks damages under Chapter 541 and 542 of the Texas Insurance Code, but also under Louisiana Revised Statute which is cumulative and redundant of the Texas statute.  The damages under the Louisiana Statute are duplicative of the damages under the Texas.  Cameron cannot have it both ways.

Nor does the statute apply to a failure to settle a third party claim against an insured. Louisiana courts have held that the statute is penal in nature and must be strictly construed.[59] The statute, Louisiana Revised Statute 22:1892(A)(1) does not specifically authorize a claim by an insured against an insurer for failure to settle and does not apply to such a claim on its face. See e.g., Louque v. Allstate Ins. Co., 314 P.3d 776 (5th Cir. 2002) (Section A(1) "does not squarely cover" such a claim).  Louisiana courts have held that the list of duties giving rise to a bad faith claim is exclusive and if a duty is not listed, its breach does not give rise to a bad faith claim.

Louisiana Revised Statute 22:1892A(2) also is inapplicable to Cameron's claims per its plain terms.  By its terms, Section 1892A(2) is limited to "the amount of any third party property damage claim and of any reasonable medical expenses claim due any bona fide third party claimant."  On its face, Section A(2) deals with an insurer's obligations to third-party claimants, not first party insureds.  Moreover, the Cameron-BP Settlement is a settlement which clearly encompasses other tortfeasors and includes more than just BP's own property damage and

---

[59] See, e.g., Jackson v. State Farm Fire & Cas. Co., 2010 WL 724108 at 3 (E.D. La. Feb. 22, 2010) ([Louisiana's] bad faith statutes are penal in nature and should be strictly construed).; see also Theriot v. Midland Risk ins. Co., 95-2895 (La. 5/20/97), 694 So. 2d 184, 187 ("[W]hen the legislature specifically enumerates a series of things, the legislature's omission of other items, which could have been easily included in the statute, is deemed intentional.").

740747_1

medical expense claims.  Therefore, Section 1892(A)(2) is inapplicable and the claim should be dismissed.

The claim also should be dismissed because Cameron cannot satisfy the predicate requirements to asserting a claim under Section 1892, which requires an insurer to pay the portion of the claim which is unquestionably due within 30 days of receipt of a satisfactory proof of loss.[60]  In order to prevail under this particular statute, the insured must establish that (a) the insurer received "satisfactory proof of loss", (b) failed to pay the claim within the applicable statutory period, and (c) that the failure to timely tender a reasonable amount was arbitrary, capricious, or without probably cause.[61]  A "satisfactory proof of loss" means that the insurer has received sufficient information to "*fully* apprise the insurer of the insured's claim."[62]  Until the amount of indemnity owed from Transocean to Cameron is determined as a matter of law, there is not sufficient information to "fully apprise" Liberty of the amount of potentially covered loss. Therefore, there is no "satisfactory proof of loss" at this time to trigger application of the timetable for payment.

**E.    Liberty Is Entitled To Dismissal Of Cameron's Claims Of Violation Of Texas Insurance Code Section 541.**

Cameron alleges that Liberty has violated Section 541 of the Texas Insurance Code by:

(a)     knowingly misrepresenting when Liberty's limit attached and whether Cameron is entitled to indemnity for its losses associated with the Deepwater Horizon incident;

---

[60]   *Hart v. Allstate Insurance Company*, 437 So.2d 823 (La.1983).

[61]   *Champagne v. Hartford Cas. Ins. Group*, 607 So.2d 752, 757 (La.App. 1st Cir.1992).

[62]   *McDill v. Utica Mut. Ins. Co.*, 475 So.2d 1085, 1089 (La.1985). *Armstrong v. Safeway Ins. Co.*, 47 So.3d 63 (La. App. 3rd Cir. 2010).

740747_1

(b)     knowingly failing to effect a prompt, fair, and equitable settlement of a

claim where Liberty's liability is reasonably clear;

(c)     irresponsibly and unjustifiably holding Cameron's settlement with BP

hostage in order to avoid or reduce Liberty's payment obligations;

(d)     taking advantage of Cameron's precarious situation in the Oil Spill MDL

by unscrupulously offering Cameron a mere fraction of its full policy; and

(e)     intentionally forcing Cameron to institute suit to recover the $50 million

Cameron was forced to pay to BP due to Liberty's breach.[63]

Elements (c), (d), and (e) cited in Plaintiff's Amended Complaint are simply not elements

of common law or statutory bad faith under Texas law.

The elements of a bad faith cause of action are: (1) the insurer denied or delayed payment

of the insured's claim, and (2) the insurer knew or should have known that liability was

reasonably clear.[64]   Evidence that shows only a bona fide coverage dispute between the parties is

not enough to establish liability for bad faith.[65]

Here, Liberty has not "denied" (element 1) Cameron's claim.   Liberty has simply stated

that in accordance with policy terms, the Cameron excess policy has not attached to the

Cameron-BP settlement.   Because the Liberty policy has not attached to the Cameron-BP

Settlement, Liberty has not "delayed payment." (element 1).   Until the amount of indemnity is

determined, "liability is [not] reasonably clear." (element 2).

---

[63] Amended Complaint, Paragraph 86.

[64] *Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 213 (Tex. 1988); *Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 56 (Tex. 1997); *Texas Mut. Ins. Co. v. Ruttiger,* 265 S.W.3d 651, 660-61 (Tex. App.—Houston [1st Dist.] 2008, pet. filed 9-25-08); *Spicewood Summit Office Condos. Ass'n v. America First Lloyd's Ins. Co.,* 287 S.W.3d 461, 468 (Tex. App.-Austin 2009, pet. filed 7-27-09).

[65] *State Farm Fire & Cas. Co. v. Simmons,*963 S.W.2d 42, 44 (Tex. 1998); *State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 448 (Tex. 1997); *Spicewood Summit,* 287 S.W.3d at 468; *Ruttinger,* 265 S.W.3d at 661.

740747_1

Moreover, Texas does not recognize a claim for the breach of the duty of good faith and fair dealing for an insurer's failure to settle liability claims by a third-party against its insured.[66] The Texas Supreme Court in *Rocor International, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,*[67] for the first time recognized statutory liability from a liability insurer to its insured for failing to settle a third-party claim. This liability was predicated upon violation of the Unfair Claims Settlement Practices Act but was limited to the context of a *Stowers* demand.[68] In that decision, a majority held that in order to establish liability for the insurer's failure to reasonably attempt settlement of a claim against the insured, the insured must show that:

> (1) the policy covers the claim; (2) the insured's liability is *reasonably clear*; (3) the claimant has made a proper settlement demand within policy limits; and (4) the demand's terms are such that an ordinarily prudent insurer would accept it.[69] (emphasis added).

The requirements for a valid or proper settlement demand are the same under both the common law *Stowers* doctrine and the Unfair Claims Settlement Practices Act. The *Rocor* court stated:

> Accordingly, we hold that an insurer's statutory duty to reasonably attempt settlement of a third-party claim against its insured is not triggered until the claimant has presented the insurer with a proper settlement demand within policy limits that an ordinarily prudent insurer would have accepted. A proper settlement demand generally must propose to release the insured fully in exchange for a stated sum, although it may substitute the "policy limits" for that amount. At a minimum, the settlement demand must clearly state a sum certain and propose to fully release the insured.[70]

First, the *Stowers* elements cannot be met here as a matter of law because Liberty never received a demand within its limits for which it could have obtained a complete release of its insured. The demand by BP was for far more than Liberty's limits and therefore, the *Stowers*

---

[66] *Texas Farmers Insurance Company v. Soriano*, 881 S.W.2d 312, 317 (Tex.1994).

[67] *Rocor Intl, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 77 S.W.3d 253 (Tex. 2002).

[68] Tex. Ins. Code Art. 21.21 has been changed to Art. 541.060, but the standard remains the same.

[69] *Id.* at 262.

[70] *Id.*

740747_1

doctrine does not apply, either under common law principles or under the statutory scheme. Second, and independently, under the *Rocor* standard stated above, Liberty's liability was never reasonably clear until the Transocean-Cameron indemnity issue is resolved and the attachment point of the Liberty Policy is determined.

As such, Cameron's cause of action based upon alleged violations of Section 541 of the Texas Insurance Code should be dismissed.

**F.   Liberty Is Entitled To Dismissal Of Cameron's Claims Of Violation Of The Prompt Payment Statute.**

Cameron alleges that Liberty has violated Section 542 of the Texas Insurance Code which is referred to as the Prompt Payment of Claims Act with respect to the payment of defense costs. Liberty has not. The elements of a cause of action based on Section 542 of the Texas Insurance Code are as follows:

1.   The plaintiff had a claim under an insurance policy.

2.   The plaintiff gave proper notice of its claim to the insurer.

3.   The insurer is liable for the claim.

4.   The insurer violated chapter 542 by not timely

(1) acknowledging, investigating, or requesting information about the claim;

(2) accepting, rejecting, or extending time to decide the claim; or

(3) paying the claim.[71]

As demonstrated above in Section C which is incorporated herein by reference, the Liberty Excess Policy negates any duty to defend; and "loss" under the Policy does not include defense costs. Since the Liberty Excess Policy does not provide for defense costs, Liberty

---

[71] The elements are found in Tex. Ins. Code §542.051(2), §542.055, §542.056, §542.060; *Allstate Ins. Co. v. Bonner,* 51 S.W.3d 289, 291 (Tex. 2001).

cannot be liable for allegedly delaying payment of the same (element 3 above).  As such, because there is no liability to pay defense costs, Liberty is entitled to dismissal of Cameron's claims under Section 542 of the Texas Insurance Code.

Moreover, Section 542 applies to first-party insurance claims.[72]  Cameron's claim is a third-party claim and as such dismissal of this claim is appropriate.

## CONCLUSION

For the above reasons, Liberty Insurance Underwriters, Inc. respectfully prays that this Court would dismiss all claims and causes of action asserted by Plaintiff Cameron International Corporation and for such other or further relief at law or equity to which Liberty Insurance Underwriters, Inc. shows itself justly entitled.

Respectfully submitted,

/s/ Judy Y. Barrasso
Judy Y. Barrasso, 2814
Celeste Coco-Ewing, 25002
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana  70112
504.589.9700 (Telephone)
504.589.9701 (Facsimile)

OF COUNSEL:

Christopher W. Martin
Federal I.D. 13515
Gary L. Pate
Federal I.D. 29713
MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
808 Travis, Suite 1800
Houston, Texas 77002
713-632-1700 (Telephone)
713-222-0101 (Facsimile)

---

[72]  Tex. Ins. Code §542.051(2); *Evanston Ins. Co. v. ATOFINA Pets., Inc.,* 256 S.W.3d 660, 674 (Tex. 2008); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.,* 242 S.W.3d 1, 16 (Tex. 2007); *State Farm Life Ins. Co. v. Martinez,* 216 S.W.3d 799, 802 (Tex. 2007); *Northern Cty. Mut. Ins. Co. v. Davalos,* 140 S.W.3d 685, 690 (Tex. 2004).

740747_1

And

Paul R. Koepff
Federal I.D. PK8452
CLYDE & CO US LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
212-710-3900 (Telephone)
212-710-3950 (Facsimile)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing Motion for Judgment on the Pleadings Pursuant to F.R.C.P. 12(c) has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 4th day of May, 2012.

*/s/ Judy Y. Barrasso*
Judy Y. Barrasso

740747_1