# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179<br><br>SECTION: J |
| THIS DOCUMENT RELATES TO:<br><br>*ALL CASES IN PLEADING BUNDLE SECTION III.B(3)* | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

### DECLARATION OF K. TIM PERKINS IN SUPPORT OF O'BRIEN'S RESPONSE MANAGEMENT INC.'S MOTION FOR SUMMARY JUDGMENT ON DERIVATIVE IMMUNITY AND PREEMPTION GROUNDS

1.  My name is K. Tim Perkins. I am the Chief Executive Officer of O'Brien's Response Management Inc. ("O'Brien's") and have served in that capacity since before the April 20, 2010 explosion and fire on the DEEPWATER HORIZON mobile offshore drilling unit and throughout the oil spill response and clean-up efforts that ensued.

2.  I submit this Declaration in support of O'Brien's Motion for Summary Judgment on Derivative Immunity and Preemption Grounds. The facts set forth herein are based on my personal knowledge and/or the books and records of O'Brien's.

3.  O'Brien's is largely a shore-based organization that provides emergency preparedness and response management services to its clients in a variety of industries, including the oil and energy industries.

4.  In the hours immediately following the explosion on the DEEPWATER

HORIZON on April 20, 2010, BP contacted O'Brien's for assistance with the response in light of prior commercial relationships between BP and O'Brien's, and O'Brien's immediately mobilized. Throughout the DEEPWATER HORIZON response efforts, O'Brien's served as a contractor to BP, but was subject to the ultimate authority and direction of the federal government, as described below.

5. During the course of the DEEPWATER HORIZON response efforts, O'Brien's employees filled various positions within the Incident Command System ("ICS"), the command and control organizational structure and management process used by the United States Department of Homeland Security to execute the oil spill response efforts, including at the Unified Area Command ("UAC") headquarters and at the five Incident Command Posts ("ICPs") established by the United States Coast Guard during the response (ICP Houma, ICP Mobile, ICP Miami, ICP Houston, and ICP Galveston). In all of these positions, O'Brien's employees acted under the leadership and at the direction of the Federal On-Scene Coordinator ("FOSC") (the federal official designated to direct the response to the DEEPWATER HORIZON oil spill), the FOSC's representatives ("FOSCRs"), and/or other federal officials.

6. Unlike various other Clean-Up Responder Defendants, O'Brien's did not provide any physical response resources—such as vessels, boom, skimming equipment, aircraft, or dispersant chemicals—during the DEEPWATER HORIZON response efforts.

7. During the DEEPWATER HORIZON response, O'Brien's employees participated in the aerial dispersant operations in accordance with their positions within the incident command structure. Federal government approval was necessary for all aerial dispersant operations and such authorization came exclusively from the FOSC, the

FOSCRs, and/or other federal officials. Instructions and/or approval of plans with regard to where, when, and how to apply dispersants were also provided by the federal government. At all times, aerial dispersant operations were monitored by federal government agencies, including United States Coast Guard Special Monitoring of Applied Response Technologies ("SMART") teams, in order to ensure that the operations were conducted safely and effectively.

8. At no time during the DEEPWATER HORIZON response was O'Brien's involved with any sub-sea dispersant operations.

9. *In situ* burning, also referred to as "controlled" burning, is the burning of oil off the surface of the water in a specific location. Fire-resistant booms, towed by a boat, collect the oil to be burned, which is then towed away from the main oil slick and ignited.

10. During the DEEPWATER HORIZON response, O'Brien's employees participated in the *in situ* burning operations in accordance with their positions within the incident command structure. Those employees were subject to the ultimate authority and direction of the FOSC, the FOSCRs, and/or other federal officials at all times.

11. Federal government approval was necessary for all *in situ* burning operations and such authorization came exclusively from the FOSC, the FOSCRs, and/or other federal officials. Instructions and/or approval of plans with regard to where, when, and how to conduct *in situ* burning operations were also provided by the federal government. At all times, *in situ* burning operations were monitored by federal government agencies, including United States Coast Guard SMART teams, in order to ensure that the operations were conducted safely and effectively.

12. At all times, O'Brien's employees participating in the DEEPWATER HORIZON response efforts followed the specific instructions relayed in the Incident Action Plans, which contained detailed instructions concerning the authorized response activities that were to occur each day and which were approved by the FOSC, the FOSCRs, and/or other federal officials at all times.

13. During the DEEPWATER HORIZON response, determinations regarding the use of respirators and other personal protective equipment were approved and directed by the UAC and O'Brien's complied with all such determinations.

14. At all times, O'Brien's employees participating in the DEEPWATER HORIZON spill response efforts were subject to the ultimate authority and direction of the FOSC, the FOSCRs, and/or other federal officials.

15. At all times during the DEEPWATER HORIZON response, O'Brien's employees complied with all governmental directives and authorizations relating to their functions and operations and did not exceed those directives and authorizations.

I declare under the penalties of perjury that the foregoing statements made in this declaration are true and correct.

EXECUTED on the 14TH day of May, 2012.

_____
K. Tim Perkins

4