# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179 |
| | SECTION: J |
| THIS DOCUMENT RELATES TO: | |
| *ALL CASES IN PLEADING BUNDLE SECTION III.B(3)* | JUDGE BARBIER MAG. JUDGE SHUSHAN |

**DECLARATION OF STEVEN CANDITO IN SUPPORT OF NATIONAL RESPONSE CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON DERIVATIVE IMMUNITY AND PREEMPTION GROUNDS**

1. My name is Steven Candito. I am the President of National Response Corporation ("NRC") and have served in that capacity since before the April 20, 2010 explosion and fire on the DEEPWATER HORIZON mobile offshore drilling unit and throughout the oil spill response and clean-up efforts that ensued.

2. I submit this Declaration in support of NRC's Motion for Summary Judgment on Derivative Immunity and Preemption Grounds. The facts set forth herein are based on my personal knowledge and/or the books and records of NRC.

3. NRC is a classified oil spill removal organization pursuant to the United States Coast Guard's Oil Spill Removal Organization program. NRC maintains a dedicated fleet of oil spill response vessels and barges and also maintains, pursuant to Coast Guard regulations, certain mandatory equipment (such as containment booms and other oil-skimming equipment) and trained personnel to operate this equipment.

4. In the hours immediately following the explosion on the DEEPWATER HORIZON on April 20, 2010, BP contacted O'Brien's Response Management Inc. ("O'Brien's") for assistance with the response. O'Brien's then contacted NRC to engage its participation in the response efforts, and NRC immediately mobilized. Throughout the DEEPWATER HORIZON response efforts, NRC served as a contractor to BP, but was subject to the ultimate authority and direction of the federal government, as described below.

5. During the course of the DEEPWATER HORIZON response efforts, NRC was called upon to mobilize its equipment and personnel to assist with various aspects of the response efforts, as directed by the Unified Area Command ("UAC"). NRC equipment and personnel were involved with the skimming, booming, onshore clean-up, vessel decontamination, and dispersant operations conducted out of certain of the incident command posts ("ICPs") established by the Coast Guard during the response, all as authorized and directed by the federal government.

6. During the course of the DEEPWATER HORIZON response efforts, several NRC employees also filled various positions within the Incident Command System ("ICS"), the command and control organizational structure and management process used by the United States Department of Homeland Security to execute the oil spill response efforts. NRC company representatives also provided support to the Federal On-Scene Coordinator representatives ("FOSCRs") and to other officials occupying positions in the incident command structure. In all of these positions, NRC employees acted under the leadership and at the direction of the Federal On-Scene Coordinator ("FOSC") (the federal official designated to direct the response to the

DEEPWATER HORIZON oil spill), the FOSCRs, and/or other federal officials.

7. During the DEEPWATER HORIZON response, all aerial dispersant operations were managed by the Dispersant Group in the Operations Section at the ICP in Houma, Louisiana ("ICP Houma"). The Dispersant Group at ICP Houma ran its operations out of two airports—the NASA Stennis Space Center in Mississippi and the Houma-Terrebonne Airport in Houma, Louisiana. Each airport had a liaison to the Dispersant Group at ICP Houma, such that the ICP was privy to all of the details of the operations going on at the two airports.

8. Federal government approval was necessary for all aerial dispersant operations and such authorization came exclusively from the FOSC, the FOSCRs, and/or other federal officials. Instructions and/or approval of plans with regard to where, when, and how to apply dispersants were also provided by the federal government. At all times, aerial dispersant operations were monitored by federal government agencies, including United States Coast Guard Special Monitoring of Applied Response Technologies ("SMART") teams, in order to ensure that the operations were conducted safely and effectively.

9. Aerial dispersant operations had separate spray aircraft and spotter aircraft, such that all dispersant spray aircraft were accompanied by a spotter aircraft whose mission was, in part, to ensure that no boats or platforms were located in the planned dispersant deployment area and to direct the spray aircraft when to turn its dispersant spray on and off.

10. At no time during the DEEPWATER HORIZON response was NRC involved with any sub-sea dispersant operations.

11.   At no time during the DEEPWATER HORIZON response was NRC involved with any *in situ* burning operations.

12.   At all times, NRC employees participating in the DEEPWATER HORIZON response efforts followed the specific instructions relayed in the Incident Action Plans, which contained detailed instructions concerning the authorized response activities that were to occur each day and which were approved by the FOSC, the FOSCRs, and/or other federal officials at all times.

13.   During the DEEPWATER HORIZON response, determinations regarding the use of respirators and other personal protective equipment were approved and directed by the UAC and NRC complied with all such determinations.

14.   At all times, NRC employees participating in the DEEPWATER HORIZON spill response efforts were subject to the ultimate authority and direction of the FOSC, the FOSCRs, and/or other federal officials.

15.   At all times during the DEEPWATER HORIZON response, NRC employees complied with all governmental directives and authorizations relating to their functions and operations and did not exceed those directives and authorizations.

I declare under the penalties of perjury that the foregoing statements made in this declaration are true and correct.

EXECUTED on the ___16___ day of May, 2012.

_____
Steven Candito

4