# Exhibit I



39546467

Aug 29 2011
5:31PM

# UNITED STATES DISTRICT OF COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | § MDL No. 2179 § § SECTION: J § § JUDGE BARBIER § MAG. JUDGE SHUSHAN |

**THIS DOCUMENT RELATES TO ALL CASES**

## UNITED STATES' SECOND RESPONSE TO BP EXPLORATION & PRODUCTION INC.'S SECOND SET OF DISCOVERY REQUESTS TO THE UNITED STATES OF AMERICA

The United States of America by its undersigned Counsel, and pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure, hereby submits the following objections and supplemental responses to BP Exploration & Production Inc.'s Second Set of Discovery Requests to the United States of America.

## GENERAL OBJECTIONS

The United States asserts the following objections to BP Exploration & Production Inc.'s ("BP") discovery requests. The United States has endeavored to identify the most relevant of these general objections in response to each individual request. Nonetheless, these general objections are incorporated by reference into each specific response set forth by the United States and are neither waived nor limited by the specific responses.

1.    The United States objects to the extent BP's requests call for information, seek discovery, or attempt to impose any obligations beyond that permitted or authorized by the Federal Rules of Civil Procedure or the Rules and Orders of this Court.

2.    The United States objects to BP's requests as premature to the extent they seek information scheduled for disclosure at a later time (such as witness lists and expert reports).

Coordinator and that the Federal On-Scene Coordinators for the response at all times were employees of the U.S. Department of Homeland Security. The United States denies this request in all other respects.

157.   Admit that an Officer of the United States Coast Guard provided signature approval for the Response Activities listed in Incident Action Plans.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.

**RESPONSE**: Subject to, and without waiving the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Incident Action Plans were reviewed, signed, and approved by the Federal On-Scene Coordinator or his representative. The United States denies this request in all other respects.

158.   Admit that the United States Government approved the Response Activities listed in Incident Action Plans signed by an Officer of the United States Coast Guard.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States also objects to the terms the "United States Government" and "directed" as undefined and subject to several interpretations. The United States further objects to this Request for Admission as overly broad and unduly burdensome and virtually impossible to answer because of the vast number of response activities that were identified in each of numerous Incident Action Plans. The Incident Action Plans were plans that set forth intended activities for a particular day, and some may have been superseded or modified by subsequent Incident Action Plans, orders, or directions and to

11

Quantification and calls for irrelevant information.  The United States also objects to this request

as vague and calling for expert opinion.  The United States further objects on the grounds that the

impacts of the discharge from the MC252 Well are still being studied as part of the Natural

Resource Damage Assessment process, and a complete understanding of those impacts will not

be known until the conclusion of that process.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States directs BP to its answer to Request for Admission 184, and denies this

request in all respects other than those expressly admitted in this response.

187.    Admit that the United States Government believes that application of dispersants
at the wellhead to the discharge from the MC252 Well was a prudent and responsible Response
Activity.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States also objects to this request

as overly broad because it is unlimited as to the timing of the application, the volume of

application, and the time of the belief.  The United States objects to the undefined terms

"prudent" and "responsible."  The United States further objects to the term "United States

Government" as an undefined term subject to several interpretations.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States directs BP to its answer to Request for Admission 184, and denies this

request in all respects other than those expressly admitted in this response.

188.    Admit that the final decision to use dispersants as a Response Activity was made
by the Federal On-Scene Coordinator, not BP.

33

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States also objects to this request as overly broad because it is unlimited as to the timing of the application, the volume of application, and the time of the belief.  The United States further objects to the terms "United States Government" and "final decision" as undefined and subject to several interpretations.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The Federal On-Scene Coordinator approved the use of dispersants up to a maximum limit per authorization.  The actual physical deployment of dispersants and the amounts actually used were within the knowledge and control of the defendant BP and its contractors.  Therefore, the United States denies this request.

189.    Admit that the volume of dispersants applied during Response Activities was reduced by 72 percent from peak levels in response to the United States Government's May 26, 2010 directive regarding dispersant use.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States also objects to this request as overly broad because it is unlimited as to the timing of the application, the volume of application, and the time of the belief.  The United States further objects to the term "United States Government" as an undefined term subject to several interpretations.  The United States further objects on the grounds that BP, and not the United States, applied the dispersants, and therefore BP, and not the United States, is the party in possession of the best information regarding the amounts of dispersants used.

34

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States refers BP to its answer to Request for Admission 197, and denies this request in all other respects.

199.    Admit that the Regional Response Plan for Region IV provided pre-approval for use of dispersants to respond to an oil spill.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States refers BP to its response to Request for Admission 195 and denies this Request for Admission in all other respects.

200.    Admit that the Regional Response Plan for Region VI provided pre-approval for use of dispersants to respond to an oil spill.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States refers BP to its response to Request for Admission 195, and denies this Request for Admission in all other respects.

201.    Admit that, for the period from on or about April 22, 2010 to on or about May 26, 2010, the United States Government approved the aerial application of dispersants as a Response Activity.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved application of dispersants as part of the Response Activities in various amounts and at various times between April 22, 2010 to on or about May 26, 2010. The United States denies this request in all other respects.

202.    Admit that, on or about May 26, 2010, the United States Government directed BP to eliminate the surface application of dispersants to the discharge from the MC252 Well.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

On May 26, 2010, the Environmental Protection Agency and the Coast Guard issued Dispersant Monitoring and Assessment Directive – Addendum 3, which directed BP to eliminate the surface application of dispersants, and "[i]n rare cases when there may have to be an exemption, BP must make a request in writing to the FOSC providing justification which will include the volume, weather conditions, mechanical or means for removal that were considered and the reason they were not used, and other relevant information to justify the use of surface

43

application.  The FOSC must approve the request and volume of dispersant prior to initiating

surface application." http://www.epa.gov/bpspill/dispersants/Rainey-letter-052610.pdf;

www.epa.gov/bpspill/dispersants/directive-addendum3.pdf.  The United States denies this

request in all other respects.

203.    Admit that, on or about May 26, 2010, the United States Government began
requiring written requests for authorization to apply dispersants by air to the surface of the water
in the Gulf of Mexico.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States directs BP to its answer to Request for Admission 202, and denies this

request in all other respects.

204.    Admit that the United States Government approved the aerial application of a
total of 15,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur
on May 28, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations.  The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

44

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 15,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on May 28, 2010.  The United States denies this request in all other respects.

205.    Admit that a request was made to the United States Government for approval to apply a total of 19,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on May 29, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States further objects to the term "United States Government" as an undefined term subject to several interpretations.  The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that BP made a request to the Federal On-Scene Coordinator for approval to apply a total of 19,000 gallons of dispersants by air to the surface of the water in the

45

Gulf of Mexico, to occur on May 29, 2010.  The United States denies this request in all other

respects.

206.    Admit that the United States Government approved the aerial application of a
total of 15,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur
on May 29, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial

application of a total of 19,000 gallons of dispersants to the surface of the water in the Gulf of

Mexico, to occur on May 29, 2010.  The United States denies this request in all other respects.

207.    Admit that the United States Government approved the aerial application of a
total of 19,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur
on May 30, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

46

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard. The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator. The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial

application of a total of 19,000 gallons of dispersants to the surface of the water in the Gulf of

Mexico, to occur on May 30, 2010. The United States denies this request in all other respects.

208.    Admit that the United States Government approved the aerial application of a
total of 19,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur
on May 31, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard. The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator. The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

47

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 19,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on May 31, 2010.  The United States denies this request in all other respects.

209.    Admit that a request was made to the United States Government for approval to apply a total of 21,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 1, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States further objects to the term "United States Government" as an undefined term subject to several interpretations.  The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Based on documents produced by BP, BP's aerial dispersant contractor submitted a request to Houma Unified Command that approval be sought to apply a total of 21,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 1, 2010. However, according to BP's Incident Commander, that request was not passed along to the Federal On-Scene Coordinator.  Accordingly, the United States denies this request.

48

210.    Admit that the United States Government did not approve the aerial application of any dispersants to the surface of the water in the Gulf of Mexico, to occur on June 1, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard. The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator. The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator did not approve the

aerial application of any dispersants to the surface of the water in the Gulf of Mexico on June 1,

2010, because no request was made to the Federal On-Scene Coordinator apply aerial dispersants

on that date. The United States denies this request in all other respects.

211.    Admit that a request was made to the United States Government for approval to apply a total of 21,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 2, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

49

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

      **RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

      Based on documents produced by BP, BP's aerial dispersant contractor submitted a

request to Houma Unified Command that approval be sought to apply a total of 21,000 gallons of

dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 2, 2010.

However, per BP's Incident Commander, and available approval documentation, that request

was not passed along to the Federal On-Scene Coordinator.  Accordingly, the United States

denies this request.

      212.    Admit that the United States Government did not approve the aerial application of
any dispersants to the surface of the water in the Gulf of Mexico, to occur on June 2, 2010.

      **OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations.  The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator did not approve the aerial application of any dispersants to the surface of the water in the Gulf of Mexico on June 2, 2010, because no request was made to the Federal On-Scene Coordinator to apply aerial dispersants on that date.  The United States denies this request in all other respects.

213.    Admit that a request was made to the United States Government for approval to apply a total of 21,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 3, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Based on documents produced by BP, BP's aerial dispersant contractor submitted a request to Houma Unified Command that approval be sought to apply a total of 21,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 3, 2010.  However, per BP's Incident Commander, and available approval documentation, the amount

51

requested for approval from the Federal On-Scene Coordinator was 2,000 gallons.  Accordingly, the United States denies this request.

214.    Admit that the United States Government approved the aerial application of a total of 2,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 3, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States further objects to the term "United States Government" as an undefined term subject to several interpretations.  The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 2,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 3, 2010.  The United States denies this request in all other respects.

215.    Admit that a request was made to the United States Government for approval to apply a total of 22,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 4, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States further objects to the term

52

"United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Based on documents produced by BP, BP's aerial dispersant contractor submitted a request to Houma Unified Command that approval be sought to apply a total of 22,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 4, 2010. However, per BP's Incident Commander, and available approval documentation, that request was not passed along to the Federal On-Scene Coordinator.  Accordingly, the United States denies this request.

216.    Admit that the United States Government did not approve the aerial application of any dispersants to the surface of the water in the Gulf of Mexico, to occur on June 4, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-

53

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator did not approve the

aerial application of any dispersants to the surface of the water in the Gulf of Mexico on June 4,

2010, because no request was made to the Federal On-Scene Coordinator to apply aerial

dispersants on that date.  The United States denies this request in all other respects.

217.    Admit that a request was made to the United States Government for approval to
apply a total of 40,000 gallons of dispersants by air to the surface of the water in the Gulf of
Mexico, to occur on June 5, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations.  The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

Based on documents produced by BP, BP's aerial dispersant contractor submitted a

request to Houma Unified Command that approval be sought to apply a total of 40,000 gallons of

54

dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 5, 2010.

However, per BP's Incident Commander, and available approval documentation, the amount

requested for approval from the Federal On-Scene Coordinator was 2,200 gallons.  Accordingly,

the United States denies this request.

218.    Admit that the United States Government approved the aerial application of a total of 125 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 5, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations.  The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial

application of 2,200 gallons of dispersants to the surface of the water in the Gulf of Mexico, to

occur on June 5, 2010.  The United States denies this request in all other respects.

219.    Admit that the United States Government approved the aerial application of a total of 2,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 6, 2010.

55

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 2,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 6, 2010.  The United States denies this request in all other respects.

220.    Admit that the United States Government approved the aerial application of a total of 4,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 7, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States further objects to the term "United States Government" as an undefined term subject to several interpretations.  The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-

56

Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 4,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 7, 2010. The United States denies this request in all other respects.

221.   Admit that a request was made to the United States Government for approval to apply a total of 104,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 8, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Based on documents produced by BP, BP's aerial dispersant contractor submitted a request to Houma Unified Command that approval be sought to apply a total of 104,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 8, 2010.

However, based on available approval documentation, the amount requested for approval from

the Federal On-Scene Coordinator was 32,000 gallons. Accordingly, the United States denies

this request.

222.    Admit that the United States Government approved the aerial application of a
total of 32,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur
on June 8, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard. The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator. The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial

application of a total of 32,000 gallons of dispersants to the surface of the water in the Gulf of

Mexico, to occur on June 8, 2010. The United States denies this request in all other respects.

223.    Admit that a request was made to the United States Government for approval to
apply a total of 32,000 gallons of dispersants by air to the surface of the water in the Gulf of
Mexico, to occur on June 9, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations.  The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

Based on documents produced by BP, BP's aerial dispersant contractor submitted a

request to Houma Unified Command that approval be sought to apply a total of 32,000 gallons of

dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 9, 2010.

However, per BP's Incident Commander, and available approval documentation, the request was

not sent to the Federal On-Scene Coordinator for approval.  Accordingly, the United States

denies this request.

224.    Admit that the United States Government did not approve the aerial application of
any dispersants to the surface of the water in the Gulf of Mexico, to occur on June 9, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that Federal On-Scene Coordinator did not approve the aerial application of any dispersants to the surface of the water in the Gulf of Mexico on June 9, 2010, because no request was made to the Federal On-Scene Coordinator to apply aerial dispersants on that date. The United States denies this request in all other respects.

225.    Admit that a request was made to the United States Government for approval to apply a total of 32,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 10, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that BP made a request to the Federal On-Scene Coordinator for approval to apply a total of 32,000 gallons of dispersants by air to the surface of the water in the

Gulf of Mexico, to occur on June 10, 2010.  The United States denies this request in all other respects.

226.    Admit that the United States Government approved the aerial application of a total of 21,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 10, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 21,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 10, 2010.  The United States denies this request in all other respects.

227.    Admit that a request was made to the United States Government for approval to apply a total of 36,200 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 11, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Documents produced by BP show that BP's aerial dispersant contractor submitted a request to Houma Unified Command that approval be sought to apply a total of 36,200 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 11, 2010. However, based on available approval documentation, the amount requested for approval from the Federal On-Scene Coordinator was 15,700 gallons. Accordingly, the United States denies this request.

228.    Admit that the United States Government approved the aerial application of a total of 15,700 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 11, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The Federal On-Scene Coordinator approved the aerial application of a total of 15,300 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 11, 2010.  Accordingly, the United States denies this request.

229.     Admit that a request was made to the United States Government for approval to apply a total of 58,160 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 12, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Documents produced by BP and available approval documentation show that BP's contractor submitted a request for the aerial application of 38,160 gallons the night before June

63

12, 2010, and then revised its request on the morning of June 12, 2010, to 20,000 gallons. These amounts were not cumulative. Accordingly, the United States denies this request.

230.   Admit that the United States Government approved the aerial application of a total of 7,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 12, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 7,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 12, 2010. The United States denies this request in all other respects.

231.   Admit that a request was made to the United States Government for approval to apply a total of 70,600 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 13, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term

64

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

Documents produced by BP and available approval documentation show that BP's

contractor submitted a request for the aerial application of 36,000 gallons the night before June

13, 2010, and then revised its request on the morning of June 13, 2010, to 34,600 gallons.  These

amounts were not cumulative.  Accordingly, the United States denies this request.

232.    Admit that the United States Government approved the aerial application of a
total of 36,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur
on June 13, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 36,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 13, 2010. The United States denies this request in all other respects.

233.    Admit that a request was made to the United States Government for approval to apply a total of 59,800 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 14, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Based on documents produced by BP and available approval documentation, BP's contractor submitted a request for the aerial application of 36,000 gallons the night before June 13, 2010, and then revised its request on the morning of June 13, 2010, to 34,600 gallons. These amounts were not cumulative. Accordingly, the United States denies this request.

66

234.    Admit that the United States Government approved the aerial application of a total of 17,800 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 14, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial

application of a total of 17,800 gallons of dispersants to the surface of the water in the Gulf of

Mexico, to occur on June 14, 2010.  The United States denies this request in all other respects.

235.    Admit that the United States Government's delay in approving the requested dispersant application limited the amount of dispersants that was applied by air to the surface of the water in the Gulf of Mexico on June 14, 2010, in comparison with the amount that the United States Government approved for such application on that date.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

67

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request. The United States further

objects to this request because it calls for information that is known only to BP or its contractors.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States is unable to admit or deny this request, as it calls for information

known only to BP or its contractors regarding the reasons why dispersant could not be applied in

the quantities that were approved.  In addition, a number of external factors, including weather,

visibility, changes in the characteristics of an oil slick, and the presence of responders or wildlife

in the vicinity of a dispersant target may have, at various times, affected the ability of BP to

apply dispersants.  The United States has not been able, after a reasonable inquiry, to determine

which factors affected the ability of BP to apply dispersants on this date.

236.    Admit that a request was made to the United States Government for approval to
apply a total of 46,000 gallons of dispersants by air to the surface of the water in the Gulf of
Mexico, to occur on June 15, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Based on documents produced by BP and available approval documentation, BP's contractor submitted a request for the aerial application of 23,000 gallons the night before June 15, 2010, and then again requested approval of 23,000 gallons on the morning of June 15, 2010.  These amounts were not cumulative.  Accordingly, the United States denies this request.

237.    Admit that the United States Government approved the aerial application of a total of 15,500 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 15, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

69

The Federal On-Scene Coordinator approved the aerial application of a total of 23,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 15, 2010. Accordingly, the United States denies this request.

238.    Admit that the United States Government's delay in approving the requested dispersant application limited the amount of dispersants that was applied by air to the surface of the water in the Gulf of Mexico on June 15, 2010, in comparison with the amount that the United States Government approved for such application on that date.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.   The United States further objects to this request because it calls for information that is known only to BP or its contractors.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States is unable to admit or deny this request, as it calls for information known only to BP or its contractors regarding the reasons why dispersant could not be applied in the quantities that were approved.  In addition, a number of external factors, including weather, visibility, changes in the characteristics of an oil slick, and the presence of responders or wildlife in the vicinity of a dispersant target may have, at various times, affected the ability of BP to

70

apply dispersants.  The United States has not been able, after a reasonable inquiry, to determine which factors affected the ability of BP to apply dispersants on this date.

239.    Admit that a request was made to the United States Government for approval to apply a total of 46,700 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 16, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Based on documents produced by BP and available approval documentation, BP's contractor submitted a request for the aerial application of 27,700 gallons the night before June 16, 2010, and then revised its request on the morning of June 16, 2010, to 19,000 gallons.  These amounts were not cumulative.  Accordingly, the United States denies this request.

240.    Admit that the United States Government approved the aerial application of a total of 19,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 16, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

71

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial

application of a total of 19,000 gallons of dispersants to the surface of the water in the Gulf of

Mexico, to occur on June 16, 2010.  The United States denies this request in all other respects.

241.   Admit that the United States Government's delay in approving the requested
dispersant application limited the amount of dispersants that was applied by air to the surface of
the water in the Gulf of Mexico on June 16, 2010, in comparison with the amount that the United
States Government approved for such application on that date.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.  The United States further

objects to this request because it calls for information that is known only to BP or its contractors.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States is unable to admit or deny this request, as it calls for information

known only to BP or its contractors regarding the reasons why dispersant could not be applied in

the quantities that were approved.  In addition, a number of external factors, including weather,

visibility, changes in the characteristics of an oil slick, and the presence of responders or wildlife

in the vicinity of a dispersant target may have, at various times, affected the ability of BP to

apply dispersants.  The United States has not been able, after a reasonable inquiry, to determine

which factors affected the ability of BP to apply dispersants on this date.

242.    Admit that a request was made to the United States Government for approval to
apply a total of 44,800 gallons of dispersants by air to the surface of the water in the Gulf of
Mexico, to occur on June 17, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Based on documents produced by BP and available approval documentation, BP's contractor submitted a request for the aerial application of 25,800 gallons the night before June 17, 2010, and then revised its request on the morning of June 17, 2010, to 19,000 gallons. These amounts were not cumulative. Accordingly, the United States denies this request.

243.   Admit that the United States Government approved the aerial application of a total of 18,700 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 17, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 18,700 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 17, 2010. The United States denies this request in all other respects.

244.   Admit that a request was made to the United States Government for approval to apply a total of 38,400 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 18, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

Based on documents produced by BP and available approval documentation, BP's

contractor submitted a request for the aerial application of 21,000 gallons the night before June

18, 2010, and then revised its request on the morning of June 18, 2010, to 17,400 gallons.  These

amounts were not cumulative.  Accordingly, the United States denies this request.

245.   Admit that the United States Government approved the aerial application of a total of 19,200 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 18, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard. The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator. The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial

application of a total of 19,200 gallons of dispersants to the surface of the water in the Gulf of

Mexico, to occur on June 18, 2010. The United States denies this request in all other respects.

246.    Admit that a request was made to the United States Government for approval to
apply a total of 28,700 gallons of dispersants by air to the surface of the water in the Gulf of
Mexico, to occur on June 19, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard. The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator. The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

Based on documents produced by BP and available approval documentation, BP's contractor submitted a request for the aerial application of 16,400 gallons the night before June 19, 2010, and then revised its request on the morning of June 19, 2010, to 12,300 gallons. These amounts were not cumulative. Accordingly, the United States denies this request.

247.    Admit that the United States Government approved the aerial application of a total of 12,300 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 19, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total 16,400 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 19, 2010. The United States denies this request in all other respects.

248.    Admit that a request was made to the United States Government for approval to apply a total of 31,780 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 20, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

Based on documents produced by BP and available approval documentation, BP's

contractor submitted a request for the aerial application of 15,500 gallons the night before June

20, 2010, and then revised its request on the morning of June 20, 2010, to 16,280 gallons.  These

amounts were not cumulative.  Accordingly, the United States denies this request.

249.    Admit that the United States Government approved the aerial application of a
total of 15,500 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur
on June 20, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 15,500 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 20, 2010.  The United States denies this request in all other respects.

250.    Admit that a request was made to the United States Government for approval to apply a total of 33,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 21, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

Based on documents produced by BP and available approval documentation, BP's contractor submitted a request for the aerial application of 22,600 gallons the night before June

79

21, 2010, and then revised its request on the morning of June 21, 2010, to 10,400 gallons. These amounts were not cumulative. Accordingly, the United States denies this request.

251.   Admit that the United States Government approved the aerial application of a total of 10,400 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 21, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 22,600 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 21, 2010. The United States denies this request in all other respects.

252.   Admit that a request was made to the United States Government for approval to apply a total of 27,487 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 22, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term

80

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

     **RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

     Based on documents produced by BP and available approval documentation, BP's

contractor submitted a request for the aerial application of 17,000 gallons the night before June

22, 2010, and then revised its request on the morning of June 22, 2010, to 10,487 gallons.  These

amounts were not cumulative.  Accordingly, the United States denies this request.

     253.    Admit that the United States Government approved the aerial application of a
total of 10,487 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur
on June 22, 2010.

     **OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 10,487 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 22, 2010.  The United States denies this request in all other respects.

254.    Admit that a request was made to the United States Government for approval to apply a total of 11,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 23, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that a request was made to the Federal On-Scene Coordinator for approval to apply a total of 11,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 23, 2010.  The United States denies this request in all other respects.

82

255.    Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 23, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 23, 2010. The United States denies this request in all other respects.

256.    Admit that the United States Government approved the aerial application of a total of 22,400 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 24, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S.

83

Coast Guard. The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator. The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial

application of a total of 22,400 gallons of dispersants to the surface of the water in the Gulf of

Mexico, to occur on June 24, 2010. The United States denies this request in all other respects.

257.    Admit that a request was made to the United States Government for approval to
apply a total of 42,600 gallons of dispersants by air to the surface of the water in the Gulf of
Mexico, to occur on June 25, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard. The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator. The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

Based on documents produced by BP and available approval documentation, BP's

contractor submitted a request for the aerial application of 28,200 gallons the night before June

25, 2010, and then revised its request on the morning of June 25, 2010, to 14,400 gallons. These

amounts were not cumulative. Accordingly, the United States denies this request.

258.    Admit that the United States Government approved the aerial application of a
total of 14,400 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur
on June 25, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard. The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator. The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial

application of a total of 14,400 gallons of dispersants to the surface of the water in the Gulf of

Mexico, to occur on June 25, 2010. The United States denies this request in all other respects.

259.    Admit that the United States Government's delay in approving the requested
dispersant application limited the amount of dispersants that was applied by air to the surface of
the water in the Gulf of Mexico on June 25, 2010, in comparison with the amount that the United
States Government approved for such application on that date.

85

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.   The United States further objects to this request because it calls for information that is known only to BP or its contractors.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States is unable to admit or deny this request, as it calls for information known only to BP or its contractors regarding the reasons why dispersant could not be applied in the quantities that were approved.  In addition, a number of external factors, including weather, visibility, changes in the characteristics of an oil slick, and the presence of responders or wildlife in the vicinity of a dispersant target may have, at various times, affected the ability of BP to apply dispersants.  The United States has not been able, after a reasonable inquiry, to determine which factors affected the ability of BP to apply dispersants on this date.

260.    Admit that a request was made to the United States Government for approval to apply a total of 74,200 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 26, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

Based on documents produced by BP and available approval documentation, BP's

contractor submitted a request for the aerial application of 30,600 gallons the night before June

26, 2010, and then revised its request on the morning of June 26, 2010, to 43,600 gallons.  These

amounts were not cumulative.  Accordingly, the United States denies this request.

261.    Admit that the United States Government approved the aerial application of a
total of 43,600 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur
on June 26, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 43,600 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 26, 2010. The United States denies this request in all other respects.

262.    Admit that the United States Government's delay in approving the requested dispersant application limited the amount of dispersants that was applied by air to the surface of the water in the Gulf of Mexico on June 26, 2010, in comparison with the amount that the United States Government approved for such application on that date.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request. The United States further objects to this request because it calls for information that is known only to BP or its contractors.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States is unable to admit or deny this request, as it calls for information known only to BP or its contractors regarding the reasons why dispersant could not be applied in

88

the quantities that were approved.  In addition, a number of external factors, including weather,

visibility, changes in the characteristics of an oil slick, and the presence of responders or wildlife

in the vicinity of a dispersant target may have, at various times, affected the ability of BP to

apply dispersants.  The United States has not been able, after a reasonable inquiry, to determine

which factors affected the ability of BP to apply dispersants on this date.

> 263.    Admit that a request was made to the United States Government for approval to apply a total of 61,480 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on June 27, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations.  The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

Based on documents produced by BP and available approval documentation, BP's

contractor submitted a request for the aerial application of 50,600 gallons the night before June

27, 2010, and then revised its request on the morning of June 27, 2010, to 10,880 gallons.  These

amounts were not cumulative.  Accordingly, the United States denies this request.

264.   Admit that the United States Government approved the aerial application of a total of 10,880 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 27, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial

application of a total of 10,880 gallons of dispersants to the surface of the water in the Gulf of

Mexico, to occur on June 27, 2010.  The United States denies this request in all other respects.

265.   Admit that the United States Government's delay in approving the requested dispersant application limited the amount of dispersants that was applied by air to the surface of the water in the Gulf of Mexico on June 27, 2010, in comparison with the amount that the United States Government approved for such application on that date.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

90

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.   The United States further

objects to this request because it calls for information that is known only to BP or its contractors.

     **RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

     The United States is unable to admit or deny this request, as it calls for information

known only to BP or its contractors regarding the reasons why dispersant could not be applied in

the quantities that were approved.  In addition, a number of external factors, including weather,

visibility, changes in the characteristics of an oil slick, and the presence of responders or wildlife

in the vicinity of a dispersant target may have, at various times, affected the ability of BP to

apply dispersants.  The United States has not been able, after a reasonable inquiry, to determine

which factors affected the ability of BP to apply dispersants on this date.

     266.     Admit that the United States Government approved the aerial application of a
total of 5,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on
June 28, 2010.

     **OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 5,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 28, 2010. The United States denies this request in all other respects.

267.   Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 29, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 29, 2010. The United States denies this request in all other respects.

268.    Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on June 30, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial

application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of

Mexico, to occur on June 30, 2010.  The United States denies this request in all other respects.

269.    Admit that the United States Government approved the aerial application of a total of 20,100 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 1, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

93

Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 20,100 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 1, 2010. The United States denies this request in all other respects.

270.   Admit that the United States Government's delay in approving the requested dispersant application limited the amount of dispersants that was applied by air to the surface of the water in the Gulf of Mexico, to occur on July 1, 2010, in comparison with the amount that the United States Government approved for such application on that date.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to this Request for Admission as calling for speculation. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

94

The United States is unable to admit or deny this request, as it calls for information

known only to BP or its contractors regarding the reasons why dispersant could not be applied in

the quantities that were approved.  In addition, a number of external factors, including weather,

visibility, changes in the characteristics of an oil slick, and the presence of responders or wildlife

in the vicinity of a dispersant target may have, at various times, affected the ability of BP to

apply dispersants.  The United States has not been able, after a reasonable inquiry, to determine

which factors affected the ability of BP to apply dispersants on this date.

271.    Admit that a request was made to the United States Government for approval to
apply a total of 64,800 gallons of dispersants by air to the surface of the water in the Gulf of
Mexico, to occur on July 2, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that a request was made to the Federal On-Scene Coordinator

for approval to apply a total of 64,800 gallons of dispersants by air to the surface of the water in

the Gulf of Mexico, to occur on July 2, 2010.  The United States denies this request in all other respects.

272.    Admit that the United States Government approved the aerial application of a total of 20,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 2, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 20,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 2, 2010.  The United States denies this request in all other respects.

273.    Admit that the United States Government's delay in approving the requested dispersant application limited the amount of dispersants that was applied by air to the surface of the water in the Gulf of Mexico, to occur on July 2, 2010, in comparison with the amount that the United States Government approved for such application on that date.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information.  The United States further objects to the term

96

"United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request. The United States further objects to this request because it calls for information that is known only to BP or its contractors.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States is unable to admit or deny this request, as it calls for information known only to BP or its contractors regarding the reasons why dispersant could not be applied in the quantities that were approved. In addition, a number of external factors, including weather, visibility, changes in the characteristics of an oil slick, and the presence of responders or wildlife in the vicinity of a dispersant target may have, at various times, affected the ability of BP to apply dispersants. The United States has not been able, after a reasonable inquiry, to determine which factors affected the ability of BP to apply dispersants on this date.

274.    Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 3, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S.

97

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial

application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of

Mexico, to occur on July 3, 2010.  The United States denies this request in all other respects.

275.    Admit that a request was made to the United States Government for approval to
apply a total of 20,840 gallons of dispersants by air to the surface of the water in the Gulf of
Mexico, to occur on July 4, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations.  The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

Based on documents produced by BP and available approval documentation, BP's

contractor submitted a request for the aerial application of 10,000 gallons the night before July 4,

2010, and then revised its request on the morning of July 4, 2010, to 7,000 gallons. These

amounts were not cumulative. Later in the day on July 4, 2010, BP's contractor requested

approval for the aerial application of an additional 3,840 gallons. Accordingly, the United States

denies this request.

276.    Admit that the United States Government approved the aerial application of a
total of 8,640 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on
July 4, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard. The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator. The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial

application of a total of 8,640 gallons of dispersants to the surface of the water in the Gulf of

Mexico, to occur on July 4, 2010. The United States denies this request in all other respects.

99

277.    Admit that a request was made to the United States Government for approval to apply a total of 16,700 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on July 5, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations.  The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

Based on documents produced by BP and available approval documentation, BP's

contractor submitted a request for the aerial application of 10,000 gallons the night before July 5,

2010, and then revised its request on the morning of July 5, 2010, to 6,700 gallons.  These

amounts were not cumulative.  Accordingly, the United States denies this request.

278.    Admit that the United States Government approved the aerial application of a total of 6,700 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 5, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

100

States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 6,720 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 5, 2010. The United States denies this request in all other respects.

279. Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 6, 2010.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 6, 2010.  The United States denies this request in all other respects.

280.    Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 7, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 7, 2010.  The United States denies this request in all other respects.

281.    Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 8, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information.  The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial

application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of

Mexico, to occur on July 8, 2010.  The United States denies this request in all other respects.

282.    Admit that the United States Government approved the aerial application of a
total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur
on July 9, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 9, 2010.  The United States denies this request in all other respects.

283.   Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 10, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 10, 2010. The United States denies this request in all other respects.

284.   Admit that the United States Government approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 11, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial

application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of

Mexico, to occur on July 11, 2010.  The United States denies this request in all other respects.

285.    Admit that a request was made to the United States Government for approval to
apply a total of 10,000 gallons of dispersants by air to the surface of the water in the Gulf of
Mexico, to occur on July 12, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admit that a request was made to the Federal On-Scene Coordinator for approval to apply a total of 10,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on July 12, 2010.  The United States denies this request in all other respects.

286.    Admit that the United States Government approved the aerial application of a total of 5,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 12, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

106

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 12, 2010.  The United States denies this request in all other respects.

287.    Admit that a request was made to the United States Government for approval to apply a total of 10,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on July 13, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that a request was made to the Federal On-Scene Coordinator for approval to apply a total of 10,000 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on July 13, 2010.  The United States denies this request in all other respects.

288.    Admit that the United States Government approved the aerial application of a total of 5,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 13, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial

application of a total of 5,000 gallons of dispersants to the surface of the water in the Gulf of

Mexico, to occur on July 13, 2010.  The United States denies this request in all other respects.

289.    Admit that the United States Government approved the aerial application of a
total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur
on July 14, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial application of a total of 10,000 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 14, 2010.  The United States denies this request in all other respects.

290.   Admit that a request was made to the United States Government for approval to apply a total of 30,100 gallons of dispersants by air to the surface of the water in the Gulf of Mexico, to occur on July 15, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

After a reasonable good faith inquiry of the documents available for search at this time, the United States is unable to admit or deny this request.

109

291.    Admit that the United States Government approved the aerial application of a total of 20,100 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 15, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

After a reasonable search of the available documentation, the United States has been

unable to find documentation to support the assertion that any aerial dispersant application was

approved on July 15, 2010.  Documents produced by BP state that no authorization was given on

that day.  Accordingly, the United States denies this request.

292.    Admit that the United States Government approved the aerial application of a total of 375 gallons of dispersants to the surface of the water in the Gulf of Mexico, to occur on July 19, 2010.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations. The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator approved the aerial

application of a total of 375 gallons of dispersants to the surface of the water in the Gulf of

Mexico, to occur on July 19, 2010.  The United States denies this request in all other respects.

293.    Admit that the United States Government approved the application of dispersants
to the surface of the Gulf of Mexico by the M/V International Peace in order to evaluate
dispersant effectiveness and health risks.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations.  The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

111

The United States admits that the Federal On-Scene Coordinator approved the application of dispersants to the surface of the Gulf of Mexico by the M/V International Peace for the following purposes:

- Collect samples pre and post dispersant application to assess dispersant effectiveness, subsurface dispersant plume characteristics and to generate data which can be used to assess environmental and safety issues.

- Conduct toxicity testing at multiple depths according to the *Surface Water Sampling Plan for Dispersant Application Monitoring* approved by Houma UC on June 3, 2010.

- Evaulate the effectiveness of applying dispersants to emulsified oil as recommended by SINTEF.

The United States denies this request in all respects except as expressly admitted in this response.

294.    Admit that, on or about May 15, 2010, the United States Government authorized the application of dispersants at the wellhead to the discharge from the MC252 Well.

**OBJECTION**:  The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations.  The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard.  The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator.  The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

112

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that, on or about May 15, 2010, the Federal On-Scene Coordinator authorized the application of dispersants at the wellhead to the discharge from the MC252 Well. The United States denies this request in all other respects.

295.    Admit that, on or about May 26, 2010, the United States Government directed BP to limit the application of dispersants at the wellhead to the discharge from the MC252 Well to a maximum of 15,000 gallons per day.

**OBJECTION**: The United States hereby incorporates by reference its General Objection 3 (Premature) because this request goes beyond the Event, Source Control, or Quantification and calls for irrelevant information. The United States further objects to the term "United States Government" as an undefined term subject to several interpretations. The United States is still in the process of collecting and processing documents in the possession of the U.S. Coast Guard. The United States has made a reasonable, good-faith effort to locate documentation for each of the requests and approvals that were sent to and from the Federal On-Scene Coordinator. The United States specifically reserves the right to supplement its answer if additional information is located that is pertinent to this request.

**RESPONSE**: Subject to, and without waiving, the foregoing general and specific objections, the United States responds as follows:

The United States admits that, on or about May 26, 2010, the Federal On-Scene Coordinator directed BP to limit the application of dispersants at the wellhead to the discharge from the MC252 Well to a maximum of 15,000 gallons per day. The United States denies this request in all other respects.

113

296.   Admit that the United States Government authorized BP to increase application of dispersants from 15,000 gallons to 23,000 gallons for June 4, 2010, at the wellhead to the discharge from the MC252 Well.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations.  The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator authorized BP to

increase application of dispersants from 15,000 gallons to 23,000 gallons for June 4, 2010, at the

wellhead to the discharge from the MC252 Well.  The United States denies this request in all

other respects.

297.   Admit that, on June 19, 2010, the United States Government authorized BP to increase application of dispersants from 15,000 gallons to 21,600 gallons for 24 hours at the wellhead to the discharge from the MC252 Well.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations.  The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

     **RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

     The United States admits that the Federal On-Scene Coordinator approved the application

of dispersants at the wellhead at a rate of 15 gallons per minute at the wellhead to the discharge

from the MC252 Well for June 19, 2010.  The United States denies this request in all other

respects.

     298.    Admit that the United States Government authorized BP to apply more than
15,000 gallons of dispersants for July 11, 2010, at the wellhead to the discharge from the MC252
Well.

     **OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations.  The United

States is still in the process of collecting and processing documents in the possession of the U.S.

Coast Guard.  The United States has made a reasonable, good-faith effort to locate

documentation for each of the requests and approvals that were sent to and from the Federal On-

Scene Coordinator.  The United States specifically reserves the right to supplement its answer if

additional information is located that is pertinent to this request.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

The United States admits that the Federal On-Scene Coordinator authorized BP to apply

more than 15,000 gallons of dispersants for July 11, 2010, at the wellhead to the discharge from

the MC252 Well.  The United States denies this request in all other respects.

299.    Admit that the United States Government authorized BP to increase application of
dispersants to twelve gallons per minute, or approximately 17,000 gallons, for July 12, 2010, at
the wellhead to the discharge from the MC252 Well.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

Based on available documentation, the approved rate of subsea dispersant application on

July 12, 2010, was 15,000 gallons/day.  Accordingly, the United States denies this request.

343.    Admit that representatives of the United States Government were stationed in the
Houston Incident Command Post during the Response.

**OBJECTION**:  The United States hereby incorporates by reference its General

Objection 3 (Premature) because this request goes beyond the Event, Source Control, or

Quantification and calls for irrelevant information. The United States further objects to the term

"United States Government" as an undefined term subject to several interpretations.

**RESPONSE**:  Subject to, and without waiving, the foregoing general and specific

objections, the United States responds as follows:

116

# Exhibit J

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF LOUISIANA
2

     IN RE:  OIL SPILL BY    MDL NO. 2179
3    THE OIL RIG
     "DEEPWATER HORIZON"     SECTION:  J
4    IN THE GULF OF
     MEXICO, ON APRIL 20,    JUDGE BARBIER
5    2010                    MAG. JUDGE SHUSHAN

6



12

13

14              **VOLUME 1 OF 2**

15       Deposition of **DOUG SUTTLES** taken in the

16   Orleans Room, Pan American Life Center, 601

17   Poydras Street, New Orleans, Louisiana, on

18   Thursday, May 19, 2011.

19

20   **APPEARANCES:**

21   ON BEHALF OF THE PLAINTIFFS STEERING
     COMMITTEE:
22

         WATTS GUERRA CRAFT, LLP
23       (BY:  MIKAL WATTS, ESQUIRE
               DAVID V. McLENDON, ESQUIRE)
24       W.D. DENIS, ESQUIRE)
     Four Dominion Drive, Bldg. 3, Suite 100
25   San Antonio, Texas 78257

1      Q.      Well, who -- who made the final

2  decisions on -- if you had a dispute over

3  something that was going to be done or

4  implemented, did you make that final decision

5  or did somebody else?

6      MS. KARIS:

7              Object to form.

8      A.      Well, the structure for Unified

9  Command is set out -- I believe it's set out

10  in the National Contingency Plan and through

11  ICS is that the FOSC has the ultimate

12  authority.  So it's a -- Unified Command

13  structure has the key stakeholders.  Those

14  are set out in the plan.  And it -- it tries

15  to achieve consensus, but the ultimate

16  decision rights are with the FOSC, which was

17  a Coast Guard admiral.  It changed which one

18  throughout the spill.

19  EXAMINATION BY MR. BARR:

20      Q.      And -- and just for the record,

21  could you state what FO -- FOSC is?

22      A.      Federal on scene coordinator.

23  And I believe on an offshore spill, that's

24  the Coast Guard and an -- and on a offshore

25  spill, it's Coast Guard, and in shore I

343

1    everything -- but includes those topics, yes.

2         Q.    Okay.  Now, do you know whether

3    or not it's important to determine a flow

4    rate according to BP's own regional response

5    plan?

6         A.    I'm -- I'm sorry.  I don't

7    understand your question.

8         Q.    Does your region -- does BP's

9    regional response plan that you were in

10   charge of implementing, does it require BP to

11   establish a flow rate?

12        A.    Well, I think first the response

13   was under Unified Command.  It -- it -- it

14   wasn't under me.  It was under the direction

15   of Unified Command where it was -- the --

16   the -- the final authority sat with the FOSC.

17   So we should make sure we understand that.

18              And the plan itself does outline

19   the -- the capabilities that we had available

20   at the time.  The plan was submitted at a

21   time, as I understand it, that we were

22   drilling the well.

23        Q.    That doesn't really answer my

24   question.

25              Do you know whether or not the

536

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  OIL SPILL BY    MDL NO. 2179
THE OIL RIG
"DEEPWATER HORIZON"      SECTION:  J
IN THE GULF OF
MEXICO, ON APRIL 20,    JUDGE BARBIER
2010                    MAG. JUDGE SHUSHAN



**VOLUME 2 OF 2**

Deposition of **DOUG SUTTLES** taken in the

Mardi Gras Room, Pan American Life Center,

601 Poydras Street, New Orleans, Louisiana,

on Friday, May 20, 2011.


**APPEARANCES:**

ON BEHALF OF THE PLAINTIFFS STEERING
COMMITTEE:
      LEVIN, PAPANTONIO, THOMAS, MITCHELL,
      ECHSNER, RAFFERTY & PROCTOR, PA
      (BY:  BRIAN H. BARR, ESQUIRE)
      316 S. Baylen Street, Suite 600
      Pensacola, Florida 32502

1       A.     Yes, it did.

2       Q.     Sir, did you -- did you

3  participate yourself personally with the

4  Unified Command?

5       A.     Yes, I did.

6       Q.     Did you meet, yourself, with the

7  FOSC?

8       A.     Yes, I did.

9       Q.     How often?

10      A.     Many, many, many times every

11  day.

12      Q.     Many, many times every day with

13  both the Unified Command and the FOSC?

14      A.     Yes, sir.  We had -- it -- it --

15  it changed during the response, but usually

16  twice daily UAC, Unified Area Command,

17  meetings, staff meetings, and then there'd be

18  numerous topics throughout the day outside of

19  that where I would meet with the FO -- FOSC

20  to discuss issues, answer questions,

21  understand their requests, these kind of

22  things.

23      Q.     Sir, were there requests and

24  suggestions about the efforts to deal with

25  the oil that was being released brought to

1    the Unified Command and brought to the FOSC?

2            A.        Yes, there were.

3            Q.        Was that often?

4            A.        Yes.  The way the ICS process

5    works, effectively you have a -- a daily plan

6    which describes the actions that would be

7    taken in the response which has to be

8    approved by the UAC, and that comes up for

9    approval every single day during the

10   response.  And that occurs both at Unified

11   Area Command and in the incident command

12   posts.

13           Q.        Did you -- and by you here I

14   think I mean you and -- and BP -- undertake

15   to do anything with the surface burns or the

16   use of booms or the skimming of oil from the

17   surface or the use of dispersants without the

18   approval and direction of the United States

19   Government?

20           A.        Well, the way the Unified Area

21   Command works is, is that's where the

22   authority for action occurs, and it's a

23   process that's intended to create consensus.

24   But as -- the phrase being used consistently

25   throughout the response was the FOSC has

1    51 percent of the vote.  We could not take

2    action in the response without the approval

3    of the FOSC.

4         Q.     Sir, and -- and you say -- you

5    testified that you could not take action

6    without the approval of the FOSC.

7              Sir, is it also true that you

8    did not take those actions without the

9    approval of the FOSC?

10        A.     Not response actions.  But we

11   did take actions such as providing grants to

12   the states to support -- provide them funds

13   to cover their costs to -- to make sure that

14   wasn't inhibiting their ability to support

15   the response.  And we also gave, for

16   instance, financial grants to support tourism

17   to try to mitigate and offset economic

18   impacts.  But response -- direct response

19   activities, I'm not aware of any actions we

20   took without the approval of the FOSC.

21        Q.     And if I could -- if I could

22   narrow your focus even more to dispersants,

23   did the approvals and direction by the United

24   States Government and the FOSC include

25   whether dispersants would be used at all on

1    this spill?

2        A.    We could only use dispersants

3    with the approval of the -- of the FOSC and

4    the Government, yes.

5        Q.    And did those same approvals and

6    directions from the Government and the FOSC

7    also include which dispersants you could use?

8        A.    My understanding of the -- the

9    dispersants we used were we had an oil spill

10   response plan which referenced approved

11   dispersants.  I believe it's from the

12   National Contingency Plan.  And that was

13   the -- so we were using Government-approved

14   dispersants, and we only used those with the

15   Government's approval.

16       Q.    Sir, did the approvals and

17   directions by the United States Government

18   and the FOSC also include in which areas of

19   the Gulf of Mexico dispersants could be used?

20       A.    Yes, yes, sir, they did.

21       Q.    Did the approvals and directions

22   by the United States Government and the FOSC

23   include whether dispersants could be used on

24   the surface of the water?

25       A.    Yes, sir, there were very clear

1    guidelines which said where they could and

2    could not use and later in the response the

3    exact locations were -- were -- were having

4    to be formally approved.

5         Q.      And did those same approvals

6    from the Government and the FOSC include

7    whether dispersants could be used -- applied

8    subsurface, that is, below the surface of the

9    Gulf of Mexico?

10        A.      Yes, we -- we only used subsea

11   dispersants with explicit approval from the

12   Government.

13        Q.      Mr. Suttles, did those same

14   series of approvals and directions from the

15   United States Government and the FOSC also

16   include the manner, for instance, by ship or

17   by plane, the manner in which the dispersants

18   could be applied?

19        A.      That's correct.

20        Q.      Did those same approvals or

21   directions by the United States Government

22   and the FOSC also include how much dispersant

23   could be used?

24        A.      Yes, they did, the -- the

25   volumes that could be applied had to be

624

```
 1   approved.
 2        Q.      And were those volumes, as you
 3   recall it, Mr. Suttles, approved daily by the
 4   FOSC and the Government?
 5        A.      At the outset I don't believe
 6   the volumes were reported every day.  I don't
 7   know that there was a -- so at the beginning
 8   it was aerial dispersant used.  The
 9   authorization for aerial dispersant was being
10   used, and the -- the -- the organization, the
11   part of the Unified Command which included BP
12   staff, Government staff, experts from spill
13   response communities, would put forward their
14   plan, and that would be applied.
15              Later on in the spill, the --
16   the daily volumes had to have explicit
17   written approval is my memory.
18        Q.      And, similarly, Mr. Suttles, did
19   those same approvals and directives from the
20   United States Government and the FOSC include
21   how long dispersants could be used?
22        A.      Help me understand what you mean
23   by "how long."
24        Q.      Well, for -- how -- for what
25   period of time in -- in the response to the
```

1   spill that dispersants could be used?

2       A.      Yes, they did.   They were --

3   they were explicit on that area, at least to

4   my knowledge.

5       Q.      And sitting here today, so far

6   as you can recall, were any of those things

7   that you and I just went through done without

8   the approval and direction of the United

9   States Government and the FOSC?

10          DEFENSE COUNSEL:

11              Object to form.

12      A.      In relation to dispersant use,

13  not to my knowledge.   This was an area that I

14  would characterize the Government's

15  involvement to be extreme.

16  EXAMINATION BY MR. HEIDEN:

17      Q.      Thank you, sir.

18      MR. HEIDEN:

19              Pass the witness.

20      THE VIDEOGRAPHER:

21              We're going off the record.

22  It's 10:02.   This is Videotape No. 2.

23              (Short recess.)

24      THE VIDEOGRAPHER:

25              Back on the record.   It's 10:02;

```
1     Videotape No. 2.
2     EXAMINATION BY MR. TSEKERIDES:
3            Q.       Good morning, Mr. Suttles.  My
4     name is Ted Tsekerides, and I represent two
5     of the cleanup responders, O'Brien's Response
6     Management and National Response Corporation.
7                     You've talked both today and
8     yesterday about the FOSC.  That's the Federal
9     On-Scene Coordinator, correct?
10           A.       Yes, that's correct.
11           Q.       Is that a person?
12           A.       It was a named individual, yes.
13           Q.       Okay.  Who was the first FOSC
14    that you recall?
15           A.       Admiral Mary Landry.
16           Q.       Okay.  And is she a Coast Guard
17    official?
18           A.       She's the -- a rear admiral in
19    the Coast Guard and I believe in charge of
20    the 8th district, which here -- is based here
21    in New Orleans.
22           Q.       Okay.  And how long -- for how
23    long was she the FOSC?
24           A.       I believe she was the FOSC from
25    the start of the -- from the -- from the
```

1    have.   It even has processes for things like

2    plannings and approvals and tracking of

3    activities and costs.   It -- it lays much of

4    this out in -- in quite a bit of detail.   And

5    these are things which are drilled upon and

6    practiced with the Coast Guard and oil and

7    gas companies including BP.

8                    So when the accident occurred,

9    we all knew that that would be the structure

10   that would be used for the response.   We were

11   familiar with that, we had individuals

12   trained in that.   The Coast Guard, other

13   members of government agencies do, too.

14                   And the structure has a Unified

15   Area Command which is the ultimate authority,

16   and the ultimate authority there is held by

17   the FOSC, and then you have incident command

18   posts which essentially mimic that structure.

19   So -- but -- but they're the more operational

20   units.

21                   So the FO -- the Unified Area

22   Command is trying to set strategy and

23   direction.   They're monitoring results,

24   intervening where necessary, playing a large

25   role in -- in external communications.   And

1    report to Unified Area Command.

2         Q.     So all -- all roads lead up to

3    Unified Command?

4         A.     That -- that's my understanding,

5    yes.

6         Q.     Okay.  And then the FO -- FOSC

7    sits on top of the Unified Command?

8         A.     That's correct.

9         Q.     Okay.  I think you were shown a

10   document yesterday and, I apologize, I

11   don't -- I don't have it, but let's see if I

12   can recall.  You sent the letter, I think, in

13   July of 2010 to one of the admirals, and this

14   was in connection with the dispersant use.

15              Was it the case that -- that BP

16   had to get permission -- and you touched upon

17   this a little bit today -- but that you had

18   to get permission from the Government to use

19   the dispersants?

20        A.     Yes, we did.  The -- the --

21   the -- the -- the requirements around

22   dispersant use changed over time and actually

23   became a daily requirement where we had to --

24   to -- and for some applications and for

25   others we could get it for a week or -- we

1   had to make a formal written request of the
2   FOSC to apply dispersants and the volumes and
3   the limits and the conditions and so forth.
4        Q.      How did the -- or strike that.
5              What role did the EPA play in --
6   in terms of what permission you needed?  Were
7   they involved in that process at all, as far
8   as you know?
9        A.      Extremely involved.
10        Q.      And how would you describe their
11   involvement?
12        A.      They were -- in many cases they
13   appeared to be the government entity setting
14   forth the requirements, in some cases
15   explicitly making requests of us outside of
16   the FOSC for data, for requirements, and
17   other things.  So they were very involved.
18              I -- my understanding was the
19   FOSC was -- particularly later on in the
20   spill was only granting authority with
21   consultation and support from the EPA on
22   dispersant use.
23        Q.      Now, as far as you knew, was the
24   structure that BP would have to ask the FOSC
25   and -- and you would be blind to whether they

1    time we acted.

2         Q.      Okay.  And how was that

3    permission communicated to you?  Was there

4    something in writing or would they call you

5    on the phone, tell you in person?  How did

6    that work?

7         A.      Well, it -- it varied.  At the

8    beginning, since it was a -- a formal or

9    preapproved portion of the spill response

10   plan, I believe that -- that the approval

11   came to the daily approval of the -- I think

12   what's called the IAP, which is the -- the --

13   the daily plan.

14              Later on the Government

15   required -- usually required me in my role as

16   the BP area commander to formally write to

17   the FOSC for permission, and then they would

18   sign off on the letter or send me a response

19   granting permission for applications of

20   dispersants.

21        Q.      And then once you got that

22   permission, what did you do?

23        A.      Well, that information would be

24   conveyed back to the incident command posts,

25   and those teams would then implement their --

665

1    Command reviewed a plan, didn't like it,

2    and -- and sent it back?

3         A.       There were elements of the plan

4    at times which were not approved, and -- and

5    changes were -- were -- were told to be made

6    to the plans.

7         Q.       Okay.  And the decisions

8    ultimately at the Unified Area Command would

9    have been by the FOSC to determine at the end

10   of the day?

11        A.       The end -- the end of the day

12   we -- no plan could be approved without the

13   approval of the FOSC.

14        Q.       Okay.  Focusing a little bit on

15   in situ burn -- and I'll apologize in advance

16   if you don't have personal knowledge, but

17   that's fine, just tell me.

18             Were you ever out when an

19   in situ burn activity was taking place?  And

20   what I mean by that, were you ever out on a

21   vessel watching in situ burn taking place?

22        A.       I -- I observed at a distance

23   in situ burns while in aircraft over the

24   spill site and while on the drilling rigs

25   supporting the relief wells.

# Exhibit K

1              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
2

3  IN RE:  OIL SPILL       )   MDL NO. 2179
   BY THE OIL RIG          )
4  "DEEPWATER HORIZON" IN ) SECTION "J"
   THE GULF OF MEXICO, ON )
5  APRIL 20, 2010          )   JUDGE BARBIER
                           )   MAG. JUDGE SHUSHAN
6

7

8

9

10

11

12

13

14

15

16

17              * * * * * * * * * * * * * * * * *
                        VOLUME 2
18              * * * * * * * * * * * * * * * * *

19

20

        Deposition of Richard Lynn Morrison,
21  taken at the Pan-American Building, 601 Poydr as
   Street, 11th Floor, New Orleans, Louisiana,
22  70130, on the 19th day of October, 2011.

23

24

25

**PURSUANT TO CONFIDENTIALITY ORDER**

460

1  would be sitting here and Doug would be sitti ng

2  there, and they -- they ran the Unified Area

3  Command as a collective.

4        We tried to collaborate clearly and - -

5  and -- and make joint decisions based on good

6  data.  But if -- if there was ever a conflict  or

7  if there was ever a disagreement on to go A - -

8  Option A or Option B, the Federal On-Scene

9  Commander had the final word.

10      Q.  So would you agree, then, that the

11  Federal On-Scene Commander would have exercis ed

12  ultimate authority over the response activiti es?

13      A.  Yes.

14      Q.  Okay.  Now, is it your recollection t hat

15  this spill was also designated a "Spill of

16  National Significance"?

17      A.  Correct.

18      Q.  Do you know what that means?

19      A.  I didn't -- I didn't before, and I do n't

20  know what exactly the criteria is for that, o ther

21  than it was going to require them mustering

22  more -- more resources as a Federal Governmen t.

23      Q.  And do you recall Admiral Allen being

24  appointed a National Incident Commander for t he

25  spill?

**PURSUANT TO CONFIDENTIALITY ORDER**

1    Plans, and particularly this one for Period 2 ,

2    would have been issued before the events

3    described therein were to take place?

4        A.   Yes.  So it -- so in this Incident Ac tion

5    Plan, it's going from 4/22 to 4/23, and it's

6    signed in 4/22.  So it's right in the middle  of a

7    period.

8        Q.   Okay.  If you'll turn over to kind of  the

9    middle of -- of the document, the Bates numbe r

10   down at the bottom right corner ends in -- in

11   0020, and this page at the top is identified  "ICS

12   204 - Assignment List."

13           Do you see that?

14       A.   Yes, I do.

15       Q.   And do you know what a -- an ICS 204  form

16   is?

17       A.   No.  I know there's a number of stand ard

18   forms in ICS, and each -- each section in --

19   inside of ar -- inside of the Incident Comman d

20   has a -- has a role in completing these as pa rt

21   of the -- the Incident Action Plan.  So I

22   wouldn't have been able to tell you 204 or 21 4

23   or -- but I -- I -- I recognize this.

24       Q.   But you understand that the Incident

25   Action Plans contain assignment lists such as

**PURSUANT TO CONFIDENTIALITY ORDER**

468

1    this, that would go out to the field, sort of

2    directing them what to do, correct?

3        A.   I'm -- I'm not real certain how the - -

4    how the form was -- was used to direct work.

5    I -- I -- my -- my recollection was it was

6    capturing a little bit of work that was done,  and

7    then requisition for resources and those kind  of

8    things, yeah.

9        Q.   Okay.   On this page that ends in the

10   Bates No. 20, if you look at the bottom, ther e's

11   a section called "Assignments"?

12       A.   M-h'm.

13       Q.   And there's a line there that reads:

14   "Conduct on-water booming and skimming operat ions

15   as needed in vicinity of rig consistent with

16   environmental planning."

17            Do you see that?

18       A.   Yes, I do.

19       Q.   Okay.

20       A.   M-h'm.

21       Q.   So is it -- is it your understanding  that

22   the -- the Incident Action Plan here for Peri od 2

23   contains the instruction for responders to

24   "conduct...booming and skimming operations as

25   needed..."?

**PURSUANT TO CONFIDENTIALITY ORDER**

1     A.  So let me just look in here.  (Review ing

2  document.)  Yeah.  So, the -- yes, this looks

3  like a -- this is the Mechanical Regov --

4  Recovery Group working inside of the Operatio ns

5  section, lead by James Black.  And -- and thi s

6  may have been his way of directing that work.

7  I'm just not sure.

8     Q.  Okay.

9     A.  I know you can't ask him.  He passed

10  away.  He's dead.

11     Q.  Sorry about that.

12        If you would turn to the next page, e nds

13  with the Bates No. 021.

14     A.  M-h'm.

15     Q.  It's another -- another ICS 204 form  for

16  a different branch, actually for a different

17  Division/Group within the Offshore Pollution

18  Operations Branch.

19        Do you see that?

20     A.  Yes.

21     Q.  It's for the Dispersant Group?

22     A.  Yes.

23     Q.  And, again, in the Assignment section , it

24  reads:  "Conduct dispersant operations as

25  required/approved."

**PURSUANT TO CONFIDENTIALITY ORDER**

470

1     A.  Yes.

2     Q.  Do you see that?

3     A.  M-h'm.

4     Q.  So, again, would you agree that as of

5  Period 2, the -- the Federal On-Scene Coordin ator

6  is directing the responders to "conduct

7  dispersant operations as required/approved"?

8     A.  Yes, I do.

9     Q.  I wanted to ask you about another --

10  another page in here.  It's a few more pages

11  over, ends in the Bates No. 025.  It's an

12  "ICS 207 - Organization Chart"?

13     A.  (Reviewing document.)  20 -- yes.

14     Q.  You see your name is on the chart ove r on

15  the left under "BST."

16        Do you see that?

17     A.  I do, yes.

18     Q.  And you may have said this earlier, b ut

19  what does "BST" stand for?

20     A.  Business Support Team.

21     Q.  And what is that?

22     A.  These are the folks that are there to

23  assist the Incident Command Team with whateve r

24  issues or problems that are arising that's no t

25  really part of responding directly to the spi ll.

**PURSUANT TO CONFIDENTIALITY ORDER**

475

1  an example of that.

2      Q.  (Nodding.)

3      A.  So as the -- as the spill started to  move

4  and the -- and the oil started to move and st art

5  to threaten Alabama, we would talk to the

6  Incident Command Post, best utilization of

7  vessels, where do we want to send the fleet.   So

8  we went from a, you know, a single state resp onse

9  to one that cut across state lines.

10      And the Area Command, Admiral Landry,  and

11  Doug would -- would engage with those Inciden t

12  Commanders, and see the -- see the surveillan ce

13  of what we had, where the risks were and wher e

14  the oil was moving, and they would, if we nee ded

15  to, redirect resources to help mitigate the r isk.

16  And we would do that in skimming, we would do

17  that in aerial dispersants, and what have you .

18  So that was the kind of things they were

19  directing, as well.

20      And -- and -- and, of course, the

21  execution of that, those big goals and strate gies

22  was done at those Incident Command Posts.

23      Q.  All right.  So did -- did BP ever per form

24  any response operations, such as applying

25  dispersants, conducting in situ burns, or

**PURSUANT TO CONFIDENTIALITY ORDER**

1
2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

3    IN RE:  OIL SPILL          )   MDL NO. 2179
     BY THE OIL RIG            )
4    "DEEPWATER HORIZON" IN    )   SECTION "J"
     THE GULF OF MEXICO, ON    )
5    APRIL 20, 2010            )   JUDGE BARBIER
                               )   MAG. JUDGE SHUSHAN

6
7

8                REPORTER'S CERTIFICATION
       TO THE ORAL AND VIDEOTAPED DEPOSITION OF
9                 RICHARD LYNN MORRISON
                   OCTOBER 19, 2011
10                     VOLUME 2

11

12          I, Emanuel A. Fontana, Jr., Certified
     Shorthand Reporter in and for the State of Texas,
     hereby certify to the following:

13

14          That the witness, **RICHARD LYNN MORRISON**, was
     duly sworn by the officer and that the transcript
     of the oral deposition is a true record of the
15   testimony given by the witness;

16          That the deposition transcript was submitted
     on November 16 , 2011, to the witness or to
17   Attorney J. Robert Warren  for the witness to
     examine, sign, and return to Worldwide Court
18   Reporters, Inc., by December 31  , 2011.

19          That the amount of time used by each party
     at the deposition is as follows:

20
     Mr. Fleming - 10 Minutes
21   Mr. Godwin - 50 Minutes
     Ms. Bertaut - 27 Minutes
22   Mr. Brody - 4 Minutes
     Mr. Grabill - 23 Minutes
23   Mr. Weigel - 29 Minutes
     Ms. Karis - 3 Minutes
24   Ms. Greenwald - 51 Minutes

25

PURSUANT TO CONFIDENTIALITY ORDER

1      I further certify that I am neither counsel
for, related to, nor employed by any of the
2   parties in the action in which this proceeding
was taken, and further that I am not financially
3   or otherwise interested in the outcome of the
action.

4
      SUBSCRIBED AND SWORN to by me on this 19th
5   day of October, 2011.

6

7

8   _____
    Emanuel A. Fontana, Jr., RPR
9   Texas CSR No. 1232
    Expiration Date: 12/31/12
10  Worldwide Court Reporters
    Firm Registration No. 223
11  3000 Weslayan, Suite 235
    Houston, Texas   77027
12  (713) 572-2000

13

14

15

16

17

18

19

20

21

22

23

24

25

PURSUANT TO CONFIDENTIALITY ORDER

549



1
2          I, RICHARD LYNN MORRISON, have read t he
3      foregoing deposition and hereby affix my
4      signature that same is true and correct, exce pt
5      as noted on the attached Amendment Sheet.
6
7                              RICHARD LYNN MORRISON
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**PURSUANT TO CONFIDENTIALITY ORDER**

# Exhibit L

1          UNITED STATES DISTRICT COURT
        EASTERN DISTRICT OF LOUISIANA
2

3  IN RE:  OIL SPILL          )    MDL NO. 2179
  by the OIL RIG,            )
4  DEEPWATER HORIZON in       )    SECTION "J"
  the GULF OF MEXICO,        )
5  April 20, 2010             )    JUDGE BARBIER
                  )
6                   )    MAG. JUDGE
                 )    SHUSHAN
7



13

14              **VOLUME 2**

15

16

17       Deposition of **DAVID RAINEY**, taken at
Pan-American Building, 601 Poydras Street,
11th Floor, New Orleans, Louisiana, 70130, on
18  June 3, 2011.

19

  **APPEARANCES:**
20

21  Mr. Duke Williams
  Mr. Christopher Zainey
22  WILLIAMS LAW GROUP
  909 Poydras Street, Suite 1650
23  New Orleans, Louisiana 70112
  (985) 876-7595

24

25

```
 1   instance --
 2        A.      Right.
 3        Q.      -- for skimming, burning,
 4   booming, dispersants, were they brought to
 5   the unified command?
 6        A.      They were part of unified
 7   command.  So yes.
 8        Q.      And were they brought to FOSCs?
 9        A.      The FOSC was part of the unified
10   command.  So the conversations were happening
11   all the time, how do we best respond to this.
12        Q.      So the answer to that question
13   is yes also?
14        A.      Again, I'm not sure what you
15   mean by were proposals brought.
16        Q.      Well, let me try it again.
17        A.      Proposals surfaced in those
18   conversations.
19        Q.      Were all of the actions, so far
20   as you know, for responding to the oil that
21   was released subject to the approval of the
22   FOSC?
23        A.      Absolutely.
24        Q.      And did you -- and in that
25   respect, I mean you, BP -- undertake to do
```

```
 1    anything with skimming or burning or booming
 2    or dispersants without the approval or
 3    direction of the United States government?
 4         A.      Not to my knowledge.
 5         Q.      And did you undertake to do
 6    anything -- again, skimming or burning or
 7    bombing or dispersants -- without the
 8    approval or the direction of the FOSC?
 9         A.      Not to my knowledge.
10         Q.      And further narrowing the focus,
11    Mr. Rainey, to dispersants.  Were you
12    required to obtain permission from the FOSC
13    before using any dispersants?
14         A.      Yes.
15         Q.      Were you required to do that
16    each time before you used dispersants?
17         A.      We did get a point -- we get to
18    a -- we got to a point, I believe, where we
19    got approval for maybe a week at a time,
20    maybe a month at a time for specific amounts.
21    But in general in answer to your question,
22    yes.
23         Q.      Was there any use of
24    dispersants, so far as you know, over the
25    objection of the United States government or
```

# Exhibit M

```
1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA
2

3   IN RE:  OIL SPILL      )  MDL NO. 2179
    BY THE OIL RIG         )
4   "DEEPWATER HORIZON" IN )  SECTION "J"
    THE GULF OF MEXICO, ON )
5   APRIL 20, 2010         )  JUDGE BARBIER
                           )  MAG. JUDGE SHUSHAN
6

7

8

9

10

11

12

13

14

15

16

17           ******************
                 VOLUME 1
18           ******************

19

20          Deposition of ANDREW GEORGE
21   INGLIS, taken at Kirkland & Ellis
22   International, 30 St. Mary Axe, 22nd Floor,
23   London EC3A 8AF, England, United Kingdom, on
24   the 21st day of July, 2011.
25
```

**PURSUANT TO CONFIDENTIALITY ORDER**

1   on Mr. Suttles to respond more directly to

2   these type of questions?

3          A.      Yes, I would.

4          Q.      And if Mr. Suttles testified

06:12  5   that Nalco had no role in any of those

6   decisions, would you have any reason to

7   contradict him?

8          A.      No, I won't.

9          Q.      And is it your belief, sir, that

06:12  10  the unified command was responsible for

11  making the decisions related to the use of

12  dispersants?

13         A.      Again, the unified command had

14  overall control of the -- of the response.

06:12  15  All decisions eventually, you know, came

16  through the unified command structure, were

17  signed off by the federal on-scene commander.

18  So that was the structure by which all

19  decisions were made.

06:12  20         Q.      The United States --

21         A.      So it --

22         Q.      The United States -- the federal

23  on-site coordinator of the United States made

24  the ultimate decisions with respect to the

06:12  25  use of dispersants in the Gulf in response to

**PURSUANT TO CONFIDENTIALITY ORDER**

```
 1  THE STATE OF LOUISIANA :
    PARISH    OF    ORLEANS :
 2
    I, PHYLLIS WALTZ, a Certified Court Reporter,
 3  Registered Professional Reporter, and
    Certified Realtime Reporter in and for the
 4  State of Louisiana, do hereby certify that
    the facts as stated by me in the caption
 5  hereto are true; that the above and foregoing
    answers of the witness, ANDREW GEORGE INGLIS,
 6  to the interrogatories as indicated were made
    before me by the said witness after being
 7  first duly sworn to testify the truth, and
    same were reduced to typewriting under my
 8  direction; that the above and foregoing
    deposition as set forth in typewriting is a
 9  full, true, and correct transcript of the
    proceedings had at the time of taking of said
10  deposition.
11  I further certify that I am not, in any
    capacity, a regular employee of the party in
12  whose behalf this deposition is taken, nor in
    the regular employ of his attorney; and I
13  certify that I am not interested in the
    cause, nor of kin or counsel to either of the
14  parties.
15  GIVEN UNDER MY HAND AND SEAL OF OFFICE, on
    this, the            day of JULY, 2011.
16
17
18  _____
    PHYLLIS WALTZ, RPR, CRR
19  TEXAS CSR NO. 6813
    Expiration Date:  12/31/11
20  LOUISIANA CCR NO. 2011010
    Expiration Date:  12/31/11
21
22  Worldwide Court Reporters, Inc.
    Firm Certification No. 223
23  3000 Weslayan, Suite 235
    Houston, Texas  77027
24  (713) 572-2000
25
```

**PURSUANT TO CONFIDENTIALITY ORDER**

*In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in*
*the Gulf of Mexico, on April 20, 2010*
UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF LOUISIANA
MDL NO. 2179

DEPOSITION TRANSCRIPT ERRATA SHEET

Deponent: ANDREW GEORGE INGLIS
Dates of Deposition: July 21-22, 2011

| PAGE(S) | LINE(S) | CORRECTION | REASON |
|---------|---------|------------|--------|
| 11 | 6 | analysis to **Ellis** | Transcription Error |
| 136 | 12 | well, if there **is** a requirement to put a | Transcription Error |
| 141 | 19 | We just – we just **redefined** | Transcription Error |
| 152 | 1-4 | My definition of a successful response is, **as** part of unified command, did BP do everything it could to bring the well under control. | Transcription Error |
| 161 | 11 | copper dam to **cofferdam** | Transcription Error |
| 166 | 14 | So against the unified command's strategy **of** | Transcription Error |
| 166 | 21 | to say that this is a technique **that** wouldn't make | Transcription Error |
| 167 | 6 | As I was just said, to **As I just said** | Transcription Error |
| 171 | 12 | those **devices** and building that tool kit, they | Transcription Error |
| 182 | 9 | quarter to **quartile** | Transcription Error |
| 190 | 22 | Is that to **"It's that"** | Transcription Error |
| 201 | 9 | the top, those are all important **aspects** of | Transcription Error |
| 205 | 16 | Second to **segment** executive team. | Transcription Error |
| 206 | 5 | for **development** purposes. | Transcription Error |
| 223 | 10 | I was working **in** some capacity | Transcription Error |
| 236 | 10 | what we meant to **what was meant** | Transcription Error |
| 237 | 21 | NIPC to **IPC** | Transcription Error |

1.

| PAGE(S) | LINE(S) | CORRECTION | REASON |
|---------|---------|-----------|--------|
| 244 | 15 | described **standard for** the local OMS handbook. | Transcription Error |
| 252 | 20 | posed Texas City to **post Texas City** | Transcription Error |
| 257 | 8 | would have been recorded and **managed**. So | Transcription Error |
| 283 | 8 | withinside to **inside** | Transcription Error |
| 283 | 17 | covered to **cover** | Transcription Error |
| 283 | 18 | recommendations **that came** from the Baker | Transcription Error |
| 296 | 13 | access to **appraisal** | Transcription Error |
| 298 | 19 | what I had to **that I had**. | Transcription Error |
| 307 | 18-19 | Mr. Neal, join, too, in the defense to **Mr. Neal, joint defense.** | Transcription Error |
| 319 | 23 | surface exploration to **surface expression** | Transcription Error |
| 335 | 3 | I believe to "I **don't** believe" | Transcription Error |
| 343 | 7 | potential to **potentially** | Transcription Error |
| 345 | 3-4 | Updates to the board in terms of **the response** | Transcription Error |
| 350 | 11 | Shaw and Barbara Yilmaz was that **it** was Pat O'Bryan. | Transcription Error |
| 363 | 12-13 | that worker to **that worked**; certain one to **certain ones** | Transcription Error |
| 367 | 8 | Transocean new safety management system to **Transocean safety management system** | Transcription Error |
| 377 | 4 | years to **year** | Transcription Error |
| 379 | 9 | decide to **decided** | Transcription Error |
| 379 | 15 | cap to **gap** | Transcription Error |
| 458 | 22 | raise to **raised** | Transcription Error |
| 462 | 17 | document **you're** reading from. | Transcription Error |

| PAGE(S) | LINE(S) | CORRECTION | REASON |
|---------|---------|------------|--------|
| 533 | 15 | No, I haven't to **No, I hadn't** | Transcription Error |
| 537 | 23 | that. **I didn't** have any conversations of | Transcription Error |
| 550 | 4 | people **working** within that structure. | Transcription Error |
| 587 | 11 | "some" to **"notes"** | Transcription Error |
| 608 | 20 | the – non-**operating** partners would give | Transcription Error |
| 611 | 20 | given to **giving** | Transcription Error |
| 613 | 11 | Anadarko person, you know, may **well** have | Transcription Error |
| 613 | 25 | ask to **asked** | Transcription Error |
| 615 | 16 | who does what. | Transcription Error |
| 621 | 20 | the front line. They're prioritized, **as a** | Transcription Error |
| 659 | 16 | 14 to **40** | Transcription Error |
| 659 | 18 | 14 to **40** | Transcription Error |
| 675 | 24 | "attempted" to **"integrity"**. | Transcription Error |
| 696 | 9 | Operation and integrity to **operational integrity**. | Transcription Error |
| 713 | 22 | "rider" to **"better"** | Transcription Error |
| 714 | 3 | deriving to **driving** | Transcription Error |
| 731 | 18 | "sores" to **"others"** | Transcription Error |
| 754 | 6 | It don't know to **I don't know** | Transcription Error |

I, the undersigned, do hereby certify that I have read the foregoing transcript and that to the best of my knowledge said testimony is true and accurate, with the exception of the changes listed above.

Signature: _____     Date: 21st Sept 2011

Andrew George Inglis

3.