# EXHIBIT 7



42233555
Jan 31 2012
1:41PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | : | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | : : : : : | MDL NO. 2179 |
| | : | SECTION: J |
| THIS DOCUMENT RELATES TO: | : : | |
| *ALL CASES IN PLEADING BUNDLE SECTION III.B(3)* | : : : : | JUDGE BARBIER MAG. JUDGE SHUSHAN |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**JOINT STIPULATIONS OF FACT BETWEEN THE CLEAN-UP RESPONDER DEFENDANTS AND THE UNITED STATES OF AMERICA**

Marine Spill Response Corporation, Airborne Support, Inc., Airborne Support International, Inc., Lynden Incorporated, Dynamic Aviation Group, Inc., International Air Response, Inc., Lane Aviation, Inc., National Response Corporation, O'Brien's Response Management, Inc., Tiger Rentals, Ltd., The Modern Group GP-SUB, Inc., The Modern Group, Ltd., and DRC Emergency Services, LLC (collectively, the "Clean-Up Responder Defendants") and the United States of America hereby stipulate to the following facts:

1. On April 20, 2010, at 9:51 p.m. CDT, an explosion occurred on the DEEPWATER HORIZON mobile offshore drilling unit located in the Gulf of Mexico approximately 42 miles southeast of Venice, Louisiana.

2. On April 22, 2010, at 10:22 a.m. CDT, the DEEPWATER HORIZON sank in the Gulf of Mexico.

3. Nalco Company manufactures the dispersants Corexit EC9500A and Corexit EC9527A.

4. The dispersants Corexit EC9500A and Corexit EC9527A were listed on the National Contingency Plan ("NCP") Product Schedule as of April 20, 2010, and remain on the NCP Product Schedule to this day.

5. Before Corexit EC9500A and Corexit EC9527A were added to the NCP Product Schedule, the United States required effectiveness testing to be conducted on these dispersants as specified in 40 C.F.R. § 300.915(a)(7).

6. Before Corexit EC9500A and Corexit EC9527A were added to the NCP Product Schedule, the United States required toxicity testing to be conducted on these dispersants as specified in 40 C.F.R. § 300.915(a)(8).

7. Before Corexit EC9500A and Corexit EC9527A were added to the NCP Product Schedule, the United States required the submission of each dispersant's components as specified in 40 C.F.R. § 300.915(a)(10)-(11).

8. For the purposes of these stipulations, "regional dispersant pre-authorization plans for Regions IV and VI" mean the EPA Region IV Regional Response Team ("RRT") Policy for Use of Dispersants in Ocean and Coastal Waters and the EPA RRT-6 FOSC Dispersant Pre-Approval Guidelines and Checklist, respectively.

9. The regional dispersant pre-authorization plans for Regions IV and VI are based, in part, on scientific input from EPA, federal and state resource trustee agencies, and applicable state environmental agencies, and address factors such as the potential sources and types of oil that might be spilled, the existence and location of environmentally sensitive resources that might be impacted by spilled oil, available product and storage locations, available equipment and adequately trained operators, and the available means to monitor product application and effectiveness.

10. Products on the NCP Product Schedule as of April 20, 2010, including Corexit EC9500A and Corexit EC9527A, were pre-authorized for use in responding to oil spills under specified circumstances under the regional dispersant pre-authorization plans for Regions IV and VI.

11. Under the Clean Water Act ("CWA"), the Oil Pollution Act ("OPA"), and the NCP, the Federal On-Scene Coordinator ("FOSC") had authority to approve the use of dispersants that were pre-authorized under the regional dispersant pre-authorization plans for Regions IV and VI, including Corexit EC9500A and Corexit EC9527A, when the specified circumstances set forth in those plans were present.

12. For spill situations that are not addressed by the applicable regional dispersant pre-authorization plans, the FOSC may approve the use of dispersants listed on the NCP Product Schedule, including Corexit EC9500A and Corexit EC9527A, under specific circumstances set forth in the NCP at 40 C.F.R. § 300.910.

13. Efforts to control the source of the oil and to clean up the spill were governed by the provisions of OPA, the CWA, and the NCP, which together authorize the FOSC to direct and monitor all Federal, State, and private actions. Efforts to control the response were also governed by Homeland Security Presidential Directive 5 (HSPD-5), which designates the Secretary of Homeland Security as the Principal Federal Official for domestic incident management.

14. The Incident Command System ("ICS") was the organizational structure used by the Department of Homeland Security to execute the oil spill response efforts.

15. The United States Coast Guard established five Incident Command Posts in the following locations: Houston, Texas; Galveston, Texas; Houma, Louisiana; Mobile, Alabama; and Miami, Florida.

16. At all times, the FOSC was an employee of the U.S. Department of Homeland Security.

17. Pursuant to the CWA, OPA, and the NCP, the Commander of the Coast Guard's Marine Safety Unit at Morgan City, Louisiana, was the first FOSC to direct the response to the oil spill that resulted from the April 20, 2010 explosion of the mobile offshore drilling unit DEEPWATER HORIZON (the "Oil Spill Response").

18. On April 23, 2010, United States Coast Guard Rear Admiral Mary Landry was named the FOSC and in that capacity, pursuant to the CWA, OPA and NCP, directed the Oil Spill Response.

19. On April 23, 2010, Admiral Landry established the Unified Area Command ("UAC") for the DEEPWATER HORIZON response at the Shell Training and Conference Center in Robert, Louisiana.

20. On April 29, 2010, pursuant to 40 C.F.R. § 300.323, the Commandant of the United States Coast Guard classified the DEEPWATER HORIZON spill as a "spill of national significance."

21. On May 1, 2010, pursuant to 40 C.F.R. § 300.323(c), the Secretary of Homeland Security named Admiral Thad Allen as "National Incident Commander" for the DEEPWATER HORIZON spill response efforts.

22. During the DEEPWATER HORIZON spill response, consistent with 40 C.F.R. § 300.323(c), the National Incident Commander focused on unifying the government's response, particularly at the inter-departmental level, external communications, and

technical issues such as source control, assessing oil flow, and containing oil from the well, and issues emanating from the response that were outside the NCP. The FOSC focused on conducting the response, addressing the concerns of state and local leaders, and oil removal and mitigation measures across affected areas.

23. On June 1, 2010, United States Coast Guard Rear Admiral James Watson assumed the FOSC position from Rear Admiral Landry and in that capacity, pursuant to the CWA, OPA and NCP, directed the Oil Spill Response.

24. On June 16, 2010, the UAC headquarters was moved to New Orleans.

25. On July 12, 2010, United States Coast Guard Rear Admiral Paul Zukunft assumed the FOSC position from Rear Admiral Watson and in that capacity, pursuant to the CWA, OPA and NCP, directed the Oil Spill Response.

26. Beginning on April 21, 2010, and continuing throughout the DEEPWATER HORIZON spill response, "Incident Action Plans" were prepared on a daily basis that contained detailed instructions concerning the response activities that were to occur each day. Each Incident Action Plan was reviewed, signed, and approved by the FOSC and/or the FOSC's representative(s) and then delivered to the Incident Command Posts for execution by, among others, various Clean-Up Responder Defendants. Accordingly, the United States authorized and/or directed all spill response activities set forth in the Incident Action Plans as of the time each Incident Action Plan was issued.

27. At 7:00 a.m. and 5:30 p.m. daily, the UAC convened an area command meeting with Incident Commanders from each of the Incident Command Posts.

28. The Clean-Up Responder Defendants participated in the DEEPWATER HORIZON spill response efforts in accordance with the roles, if any, assigned to them within the Unified

Area Command system and the Incident Command Posts.

29. The FOSC's representatives and other federal officials were present in the various Incident Command Posts to monitor the execution of the detailed instructions contained in the Incident Action Plans.

30. At various times during the Oil Spill Response, the FOSC, with the appropriate concurrence of and/or consultation with other state and federal agency officials pursuant to 40 C.F.R. § 300.910 and the applicable regional dispersant pre-authorization plans, authorized the application of Corexit EC9500A and Corexit EC9527A to the surface of the waters of the Gulf of Mexico.

31. The authorizations described in Stipulation No. 30 included limits on where, when, and in what quantity the dispersants could be applied.

32. In authorizing the application of Corexit EC9500A and Corexit EC9527A to the surface of the Gulf of Mexico, the FOSC acted pursuant to the OPA, the CWA, including 33 U.S.C. § 1321(d)(2), and the NCP, including 40 C.F.R. §§ 300.120, 300.135, and 300.910.

33. With regard to dispersant use, the Clean-Up Responder Defendants performed their spill response activities, if any, pursuant to the authorization, direction, and/or control of the FOSC and/or the FOSC's representative(s) through daily Incident Action Plans and/or as otherwise authorized and/or directed by federal officials acting under the authority of the incident command system/unified command structure.

34. Pursuant to the RRT VI Pre-Approval Guidelines, the FOSC and/or the FOSC's representative(s) completed the "Dispersant Pre-Approval Initial Call Checklist" and

"FOSC Dispersant Use Checklist" on April 21, 2010 and specifically authorized the use of dispersants in response to the DEEPWATER HORIZON spill at that time.

35. At the time the FOSC and/or the FOSC's representative(s) completed the RRT VI Pre-Approval Initial Call and Dispersant Use Checklists, the FOSC and/or the FOSC's representative(s) determined that the use of dispersants in response to the DEEPWATER HORIZON spill would likely provide a net environmental benefit if used under the appropriate circumstances as delineated in the Pre-Approval Guidelines and pursuant to any further direction from the FOSC and/or the FOSC's representative(s).

36. On April 22, 2010, the FOSC authorized and instructed Clean-Up Responder Defendant Airborne Support, Inc. to conduct a trial application of up to 1,880 gallons of dispersants to oil on the surface of the water in the Gulf of Mexico.

37. On April 22, 2010, Clean-Up Responder Defendant Airborne Support, Inc. applied 1,880 gallons of dispersants to oil on the surface of the water in the Gulf of Mexico as authorized and instructed by the FOSC.  This was the first instance in which any Clean-Up Responder Defendant applied dispersants to oil on the surface of the water in the Gulf of Mexico during the DEEPWATER HORIZON spill response.

38. Following the issuance of the Dispersant Monitoring and Assessment Directive – Addendum 3, BP and/or various Clean-Up Responder Defendants periodically submitted written requests to the FOSC and/or the FOSC's representative(s) and received written authorization for each aerial application of dispersants to oil slicks on the surface of the water in the Gulf of Mexico.

39. Following the issuance of the Dispersant Monitoring and Assessment Directive – Addendum 3, the FOSC and/or the FOSC's representative(s) approved the specific use of

dispersants in compliance with Addendum 3 for each aerial application of dispersants through July 19, 2010.

40. Following the issuance of Dispersant Monitoring and Assessment Directive – Addendum 3, the FOSC and/or the FOSC's representative(s) authorized the following maximum amounts for the aerial application of dispersants to oil slicks on the surface of the water in the Gulf of Mexico:  15,000 gallons on May 28, 2010; 19,000 gallons on May 29, 2010; 19,000 gallons on May 30, 2010; 19,000 gallons on May 31, 2010; 2,000 gallons on June 3, 2010; 2,200 gallons on June 5, 2010; 2,000 gallons on June 6, 2010; 4,000 gallons on June 7, 2010; 32,000 gallons on June 8, 2010; 21,000 gallons on June 10, 2010; 15,300 gallons on June 11, 2010; 7,000 gallons June 12, 2010; 36,000 gallons on June 13, 2010; 17,800 gallons on June 14, 2010; 23,000 gallons on June 15, 2010; 19,000 gallons on June 16, 2010; 18,700 gallons on June 17, 2010; 19,200 gallons on June 18, 2010; 16,400 gallons on June 19, 2010; 15,500 gallons on June 20, 2010; 22,600 gallons on June 21, 2010; 10,487 gallons on June 22, 2010; 10,000 gallons on June 23, 2010; 22,400 gallons on June 24, 2010; 14,400 gallons on June 25, 2010; 43,600 gallons on June 26, 2010; 10,880 gallons on June 27, 2010; 5,000 gallons on June 28, 2010; 10,000 gallons on June 29, 2010; 10,000 gallons on June 30, 2010; 20,100 gallons on July 1, 2010; 20,000 gallons on July 2, 2010; 10,000 gallons on July 3, 2010; 8,640 gallons on July 4, 2010; 6,720 gallons on July 5, 2010; 10,000 gallons on July 6, 2010; 10,000 gallons on July 7, 2010; 10,000 gallons on July 8, 2010; 10,000 gallons on July 9, 2010; 10,000 gallons on July 10, 2010; 10,000 gallons on July 11, 2010; 10,000 gallons on July 12, 2010; 5,000 gallons on July 13, 2010; 10,000 gallons on July 14, 2010; and 375 gallons on July 19, 2010.

41. Contemporaneous records created by various of the Clean-Up Responder Defendants indicate that the following amounts of dispersants were aerially applied to oil slicks on the surface of the Gulf of Mexico after the issuance of Dispersant Monitoring and Assessment Directive – Addendum 3:  10,259 gallons on May 28, 2010; 15,131 gallons on May 30, 2010; 11,676 gallons on May 31, 2010; 1,900 gallons on June 3, 2010; 125 gallons on June 5, 2010; 3,998 gallons on June 7, 2010; 5,505 gallons on June 8, 2010; 4,506 gallons on June 10, 2010; 14,305 gallons on June 11, 2010; 6,996 gallons on June 12, 2010; 35,212 gallons on June 13, 2010; 10,706 gallons on June 14, 2010; 2,608 gallons on June 15, 2010; 13,380 gallons on June 16, 2010; 12,123 gallons on June 17, 2010; 15,564 gallons on June 18, 2010; 2,604 gallons on June 19, 2010; 15,403 gallons on June 20, 2010; 10,355 gallons on June 21, 2010; 2,008 gallons on June 22, 2010; 5,099 gallons on June 23, 2010; 21,088 gallons on June 24, 2010; 4,633 gallons on June 25, 2010; 23,022 gallons on June 26, 2010; 6,623 gallons on June 27, 2010; 17,852 gallons on July 1, 2010; 12,737 gallons on July 2, 2010; 3,840 gallons on July 4, 2010; 803 gallons on July 5, 2010; 1,000 gallons on July 7, 2010; 999 gallons on July 13, 2010; and 200 gallons on July 19, 2010.

42. During the DEEPWATER HORIZON spill response, no dispersant applications were authorized by the FOSC or the FOSC's representative(s) for areas shoreward of the RRT IV and RRT VI pre-authorization zones, except if such applications were necessary to prevent or substantially reduce a hazard to human life.

43. During the DEEPWATER HORIZON spill response, no Clean-Up Responder Defendant conducted any unauthorized dispersant spray missions in areas shoreward of the RRT IV and RRT VI pre-authorization zones.

44. During the DEEPWATER HORIZON spill response, no dispersant operations were authorized by the FOSC or the FOSC's representative(s) outside of daylight hours.

45. During the DEEPWATER HORIZON spill response, no Clean-Up Responder Defendant conducted any dispersant spray missions outside of daylight hours.

46. During the DEEPWATER HORIZON spill response, the FOSC and/or the FOSC's representative(s) prohibited dispersant spraying within two nautical miles from boats and platforms.

47. During the DEEPWATER HORIZON spill response, all aerial dispersant spray aircraft were accompanied by a spotter aircraft whose mission was, in part, to ensure that no boats or platforms were located in the planned dispersant deployment area.

48. Admiral Thad Allen made the following statement on August 1, 2010 regarding dispersants: "It's a decision by the [FOSC] whether to approve the incident commander's recommendation to use dispersants . . . . It's a very disciplined doctrinal process on how this works.  In the end it may be executed by BP through a contractor.  But these are all decisions made by the [FOSC] because that's where the responsibility rests."

49. Admiral Thad Allen made the following statement on August 1, 2010 regarding dispersants: "I'm satisfied that we only use them when they're needed."

50. The FOSC concluded in its September 2011 report to the National Response Team that "dispersants were an effective response tool, and prevented millions of gallons of oil from impacting the sensitive shorelines of the GOM states."

Dated: January 31, 2012

| | |
|---|---|
| IGNACIA S. MORENO | TONY WEST |
| Assistant Attorney General | Assistant Attorney General |
| Environment & Natural Resources Division | Civil Division |
| JAMES NICOLL | PETER F. FROST |
| Senior Counsel | Director, Torts Branch, Civil Division |
| NANCY FLICKINGER | Admiralty and Aviation |
| Senior Attorney | STEPHEN G. FLYNN |
| STEVEN O'ROURKE | Assistant Director |
| Senior Attorney | MICHELLE DELEMARRE |
| DEANNA CHANG | SHARON SHUTLER |
| SCOTT CERNICH | JESSICA SULLIVAN |
| ABIGAIL ANDRE | JESSICA MCCLELLAN |
| JUDY HARVEY | DAVID PFEFFER |
| MATT LEOPOLD | MALINDA LAWRENCE |
| Trial Attorneys | Trial Attorneys |
| Environment & Natural Resources Division | Torts Branch, Civil Division |
| P.O. Box 7611 | P.O. Box 14271 |
| Washington, DC 20044-7611 | Washington, DC 20044-4271 |
| | |
| SARAH HIMMELHOCH | R. MICHAEL UNDERHILL, T.A. |
| Senior Litigation Counsel | Attorney in Charge, West Coast Office |
| /s/ A. Nathaniel Chakeres | Torts Branch, Civil Division |
| A. NATHANIEL CHAKERES | U.S. Department of Justice |
| Trial Attorney | 7-5395 Federal Bldg., Box 36028 |
| Environment & Natural Resources Division | 450 Golden Gate Avenue |
| U.S. Department of Justice | San Francisco, CA 94102-3463 |
| P.O. Box 7611 | Telephone: 415-436-6648 |
| Washington, DC 20044 | Facsimile: 415-436-6632 |
| Telephone: 202-514-2779/202-616-6537 | E-mail: mike.underhill@usdoj.gov |
| E-mail: sarah.himmelhoch@usdoj.gov | |
| aristide.chakeres@usdoj.gov | |

JIM LETTEN
United States Attorney
SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
Hale Boggs Federal Building
500 Poydras Street, Ste. B-210
New Orleans, LA 70130

Attorneys for the UNITED STATES OF AMERICA

11

/s/ Michael J. Lyle
Michael J. Lyle (DC #475078, IL #6199227)
Eric C. Lyttle (DC #482856)
Meghan A. McCaffrey (DC #993442, NY #4703708)
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 682-7157
Facsimile: (202) 857-0940

Theodore E. Tsekerides (NY #2609642)
Jeremy T. Grabill (NY #4501755)
Natalie R. Blazer (NY #4728994)
Jesse L. Morris (NY #4848438)
Sylvia E. Simson (NY #4803342)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8218
Facsimile: (212) 310-8007

Patrick E. O'Keefe (LA Bar #10186)
Philip S. Brooks, Jr. (LA Bar #21501)
MONTGOMERY, BARNETT, BROWN, REED,
        HAMMOND & MINTZ LLP
3300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3300
Telephone: (504) 585-3200
Facsimile: (504) 585-7688

Attorneys for O'BRIEN'S RESPONSE
MANAGEMENT, INC. and NATIONAL
RESPONSE CORPORATION

/s/ Alan M. Weigel
Alan M. Weigel, Esq.
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Telephone: 212-885-5000
Facsimile: 917-332-3836
E-mail: aweigel@blankrome.com

Attorneys for MARINE SPILL
RESPONSE CORPORATION

/s/ Leo R. McAloon, III
Leo R. McAloon, III (No. 19044)
E-mail: lmcaloon@glllaw.com
Michael D. Cangelosi (No. 30427)
E-mail: mcangelosi@glllaw.com
GIEGER, LABORDE & LAPEROUSE, L.L.C.
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011

Attorneys for DYNAMIC AVIATION
GROUP, INC.

/s/ Kevin R. Tully
Kevin R. Tully - #1627
H. Carter Marshall - #28136
Gregory S. LaCour - #23823
CHRISTOVICH & KEARNEY, LLP
601 Poydras Street, Suite 2300
New Orleans, Louisiana 70130-6078
Telephone: (504) 561-5700
E-mail: krtully@christovich.com
E-mail: hcmarshall@christovich.com

Attorneys for INTERNATIONAL
AIR RESPONSE, INC. and
LYNDEN INCORPORATED

/s/ Ben L. Mayeaux
Frank X. Neuner, Jr. (#7674)
Ben L. Mayeaux (#19041)
Jed M. Mestayer (#29345)
LABORDE & NEUNER
One Petroleum Center, Suite 200
1001 W. Pinhook Rd.
Lafayette, Louisiana 70503
Telephone: (337) 237-7000

Attorneys for AIRBORNE SUPPORT, INC. and
AIRBORNE SUPPORT INTERNATIONAL, INC.

/s/ George E. Crow
George E. Crow
LAW OFFICE OF GEORGE E. CROW
P.O. Box 30
Katy, TX 77492
For Overnight Physical Delivery use
1519 Miller Avenue
Katy, TX 77493
Telephone: (281) 391-9275
E-mail: georgecrow@earthlink.net

Attorney for LANE AVIATION, INC.

/s/ John E. Galloway
John E. Galloway (#5892)
Cherrell R. Simms (#28227)
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
701 Poydras Street, Suite 4040
New Orleans, Louisiana 70139
Telephone: (504) 525-6802
Facsimile: (504) 525-2456

Attorneys for TIGER RENTALS, LTD.,
THE MODERN GROUP, LTD., and
THE MODERN GROUP GP-SUB, INC.

/s/ Harold J. Flanagan
Harold J. Flanagan (Bar No. 24091)
Stephen M. Pesce (Bar No. 29380)
Brandon C. Briscoe (Bar No. 29542)
Sean P. Brady (Bar No. 30410)
Andy Dupre (Bar No. 32437)
FLANAGAN PARTNERS LLP
201 St. Charles Avenue, Suite 2405
New Orleans, Louisiana 70170
Telephone: 504-569-0235
Facsimile: 504-592-0251
hflanagan@flanaganpartners.com
spesce@flanaganpartners.com
sbrady@flanaganpartners.com
adupre@flanaganpartners.com

Attorneys for DRC EMERGENCY SERVICES, LLC

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Joint Stipulations of Fact Between the Clean-Up Responder Defendants and the United States of America has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 31st day of January, 2012.

    /s/ Michael J. Lyle
    Michael J. Lyle