UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179 |
| | SECTION: J |
| THIS DOCUMENT RELATES TO: | |
| *ALL CASES IN PLEADING BUNDLE SECTION III.B(3)* | JUDGE BARBIER MAG. JUDGE SHUSHAN |

## MEMORANDUM IN SUPPORT OF AIRBORNE SUPPORT, INC. AND AIRBORNE SUPPORT INTERNATIONAL, INC.'s MOTION FOR SUMMARY JUDGMENT ON DERIVATIVE IMMUNITY AND PREEMPTION GROUNDS

Airborne Support, Inc. and Airborne Support International, Inc. (sometimes collectively referred to herein as "Airborne Support" or "Defendants") respectfully submit this Memorandum in Support of their Motion for Summary Judgment on Derivative Immunity and Preemption Grounds to supplement the Joint Memorandum submitted by the Clean-Up Responder Defendants which is adopted and incorporated herein by reference pursuant to Rule 10 of the Federal Rules of Civil Procedure. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Airborne Support seeks dismissal, with prejudice, of all remaining claims which have been asserted against these Defendants in the Plaintiffs' First Amended Master Complaint in Accordance with PTO No. 11 Section III.B(3) (Rec. Doc. 1812) (hereinafter the "B3 Bundle Master Complaint").[1]

---

[1] As set forth in the Joint Memorandum filed by the Clean-Up Responder Defendants, following the Court's ruling on the motions to dismiss filed by certain of the Clean-Up Responder Defendants, only two causes of action in the B3 Bundle Master Complaint remain against Airborne Support: (i) Negligence (Third Claim for Relief - ¶¶ 240-49) and (ii) Gross Negligence (Fourth Claim for Relief - ¶¶ 250-57). *See* Amended Order and Reasons issued October 4, 2011 (MDL-2179 Rec. Doc. No. 4209).

## INTRODUCTION

Airborne Support, Inc. is a family-owned and operated small business based at the Houma-Terrebonne Airport in Houma, Louisiana which maintains and operates a fleet of specialized aircraft dedicated to emergency oil spill response.[2] Airborne Support, Inc. has been in operation for over twenty (20) years and is a recognized leader in this unique and vital industry, providing aerial response resources, including aerial dispersant application capability, to virtually every company involved in the exploration, transportation and production of oil and gas in the Gulf of Mexico.[3]

Airborne Support International, Inc. and Airborne Support, Inc. are commonly owned, but separate and distinct legal entities.[4] While the two companies share the same principals, they were independently incorporated and maintain separate books and records.[5] Airborne Support International, Inc. had no involvement in any operations conducted during the *DEEPWATER HORIZON* oil spill response, and there is no evidence to support any cause of action or theory of liability against this Defendant.[6] Airborne Support International, Inc. is entitled to summary judgment on this basis alone. Alternatively, to the extent any of the *DEEPWATER HORIZON* response activities conducted by Airborne Support, Inc. may be attributable to Airborne Support International, Inc., which is specifically denied, Airborne Support International, Inc. is entitled to summary judgment based on the same immunities and protections which bar Airborne Support, Inc.'s liability for such activities.

Prior to April 20, 2010, Airborne Support, Inc. entered into an "Agreement for Provision

---

[2] *See* Statement of Undisputed Material Facts in Support of Airborne Support, Inc. and Airborne Support International, Inc.'s Motion for Summary Judgment on Derivative Immunity and Preemption Grounds (hereinafter "Airborne Support's SUMF") at ¶1.

[3] *See* Airborne Support's SUMF at ¶ 2.
[4] *See* Airborne Support's SUMF at ¶ 3.
[5] *See* Airborne Support's SUMF at ¶ 4.
[6] *See* Airborne Support's SUMF at ¶ 5.

of Response Resources" (the "Agreement") with National Response Corporation ("NRC").[7] NRC was (and is) classified as Oil Spill Removal Organization pursuant to the United States Coast Guard's Oil Spill Removal Organization program.[8] In its capacity as an Oil Spill Removal Organization, NRC "provides personnel, equipment, supplies and other resources for responding to discharges of oil and hazardous substances from vessels and/or facilities and other emergency response situations, which resources NRC owns or procures by subcontract."[9] The Agreement clearly contemplates work to be performed under the National Contingency Plan ("NCP") at the direction of the federal government.[10] Pursuant to the Agreement, Airborne Support, Inc. agreed to maintain its aerial resources and make them available for deployment if called upon and authorized to respond to a discharge.[11]

In the hours immediately following the April 20, 2010 explosion on the *DEEPWATER HORIZON*, NRC and O'Brien's Response Management Inc. ("O'Brien's")[12] contacted Airborne Support, Inc. to provide notice of the incident, advise of the potential discharge, and to place Airborne Support, Inc.'s aerial resources on stand-by to assist in responding to the unfolding disaster.[13] Although Airborne Support, Inc. was initially called upon as an NRC contractor and member of its Oil Spill Removal Organization network, once Airborne Support, Inc. and its employees were mobilized and reported for duty, they, like NRC, were subject to the direction

---

[7] *See* Airborne Support's SUMF at ¶¶ 6, 7.
[8] *See* Airborne Support's SUMF at ¶ 8; *see also* 33 C.F.R. § 155.1035(i)(6); Guidelines for the U.S. Coast Guard Oil Spill Removal Organization Classification Program, *available at* http://www.uscg.mil/hq/nsfweb/nsfcc/ops/ResponseSupport/RRAB/OSRODoc/OSROGuidelines2007draft.pdf (last visited May 16, 2012).
[9] *See* Airborne Support's SUMF at ¶ 9.
[10] *See* Airborne Support's SUMF at ¶ 10. Airborne Support International, Inc. had no involvement in the *DEEPWATER HORIZON* oil spill response operations. *See* Airborne Support's SUMF at ¶¶ 5, 12.
[11] *See* Airborne Support's SUMF at ¶ 11.
[12] NRC and O'Brien's are both subsidiaries of Seacor Holdings Inc. *See* O'Brien's & NRC Corporate Disclosure Statements (Rec. Docs. 1391 & 1392).
[13] *See* Airborne Support's SUMF at ¶ 13.

and ultimate authority of the federal government within the Incident Command System ("ICS"), the command and control organizational structure and management process employed by the United States Department of Homeland Security to manage and execute the *DEEPWATER HORIZON* oil spill response efforts.[14] Throughout the federal government's unprecedented response to this Spill of National Significance, all Airborne Support, Inc. response activities were conducted pursuant to such federal direction and authority.[15]

In accordance with Magistrate Judge Shushan's Schedule for Limited B3 Discovery (Rec. Doc. 5000), Airborne Support now re-asserts its derivative immunity and implied preemption arguments and moves for summary judgment on those grounds. As set forth in the Joint Memorandum filed by the Clean-Up Responder Defendants, and further explained below, the indisputable facts demonstrate the federal government was in command of the *DEEPWATER HORIZON* oil spill response and validly conferred authority upon Clean-Up Responder Defendants, including Airborne Support, Inc., in order to implement the federal response plan. Airborne Support, Inc. faithfully operated within the scope of that authority and executed the will of the federal government.[16] In responding to Limited B3 Discovery, Plaintiffs have failed to come forward with any evidence to dispute the validity of authority conferred by the federal government or to suggest Airborne Support, Inc. deviated from and/or exceeded such authority, much less any evidence of injury and/or damage resulting therefrom. As a result, Airborne Support is entitled to derivative immunity under the Clean Water Act ("CWA") and/or the Federal Tort Claims Act ("FTCA"). Alternatively, the Plaintiffs' claims against Airborne Support are barred by the doctrine of implied conflict preemption.

---

[14] *See* Airborne Support's SUMF at ¶¶ 14, 15, 16, 19, 21, 30, 31, 32 and 33.
[15] *Id.*
[16] *See* Airborne Support's SUMF at ¶¶ 16, 19, 21, 30, 31, 32 and 33.

## FACTUAL BACKGROUND

Airborne Support incorporates by reference the factual background set forth in the Joint Memorandum filed by the Clean-Up Responder Defendants, and provides the following additional details regarding Airborne Support, Inc.'s specific role in the *DEEPWATER HORIZON* response efforts.

On April 22, 2010, the Federal-On Scene Coordinator ("FOSC"), a federal official designated to direct the *DEEPWATER HORIZON* oil spill response, authorized and instructed Airborne Support, Inc. to conduct a 1,880 gallon aerial application of EPA-approved dispersants to oil on the surface of federal waters in the Gulf of Mexico.[17] In accordance with the FOSC's authorization and instructions, the first aerial dispersant sortie originating from the Houma-Terrebonne Airport for the *DEEPWATER HORIZON* oil spill response was successfully completed by Airborne Support, Inc. spray aircraft, N932H, accompanied by an Airborne Support, Inc. spotter aircraft, N38WA, with United States Coast Guard and O'Brien's personnel on board.[18] During the course of the *DEEPWATER HORIZON* response efforts, Airborne Support, Inc. was again called upon by the federal government to mobilize and deploy its equipment and personnel to execute similar missions and/or to assist with certain aspects of the federal response plan requiring and/or warranting the use of such aerial resources, all as determined, authorized and directed by the FOSC and/or the FOSC's representatives ("FOSCRs") within the Unified Area Command ("UAC") or other arms of the federal ICS.[19]

In the days immediately following its initial mobilization and aerial dispersant sortie, Airborne Support, Inc. began conducting daily "spotter" or reconnaissance/observation flights

---

[17] *See* Airborne Support's SUMF at ¶ 14. *See also* Joint Statement of Undisputed Material Facts in Support of Clean-Up Responder Defendants' Motions for Summary Judgment (hereinafter "Joint SUMF") at ¶ 67.
[18] *See* Airborne Support's SUMF at ¶ 15. *See also* Joint SUMF at ¶ 68.
[19] *See* Airborne Support's SUMF at ¶ 16.

over the Gulf of Mexico to assist in gathering information and intelligence on the oil spill for review, analysis and use by federal officials authorized and empowered to make response decisions within the ICS.[20] In addition to these spotter flights, Airborne Support, Inc.'s *DEEPWATER HORIZON* response activities consisted of (i) aerial application of EPA-approved dispersants to oil on the surface of federal waters of the Gulf of Mexico; (ii) spotter flights supporting spray aircraft during aerial application of EPA-approved dispersants to oil on the surface of federal waters of the Gulf of Mexico; (iii) spotter flights supporting United States Coast Guard/NOAA/EPA Special Monitoring of Applied Response Technologies ("SMART") team monitoring missions; and (iv) one spotter/reconnaissance/observation flight to assist in gathering information and intelligence for use by the United States Coast Guard's Rapid Assessment ("RAT") teams.[21] In all of these efforts, Airborne Support, Inc. and its employees were subject to the ultimate direction and authority of the federal government, and all Airborne Support, Inc. response activities were undertaken and executed pursuant to such direction and authority.[22]

Throughout the *DEEPWATER HORIZON* response, all of Airborne Support, Inc.'s resources were consolidated under the leadership of the Houma Incident Command Post ("ICP Houma"), and all Airborne Support, Inc. response activities, including spotter and aerial dispersant application flights, were conducted out of the Houma-Terrebonne Airport as directed and authorized by the federal government.[23] All aerial dispersant operations conducted during

---

[20] *See* Airborne Support's SUMF at ¶ 17.
[21] *See* Airborne Support's SUMF at ¶ 18. United States Coast Guard and authorized personnel from various other public and private entities positioned in the federal ICS accompanied Airborne Support, Inc. aircraft to participate in and/or observe assigned missions. *See* Airborne Support's SUMF at ¶ 20.
[22] *See* Airborne Support's SUMF at ¶ 19.
[23] *See* Airborne Support's SUMF at ¶ 21. Airborne Support, Inc. did not participate in operations, including aerial spotter and/or aerial dispersant flights, conducted out of NASA's John C. Stennis Space Center. *See* Airborne Support's SUMF at ¶ 22. Additionally, at no time during the *DEEPWATER*

the *DEEPWATER HORIZON* response were approved by the federal government through the FOSC.[24] Airborne Support, Inc. and its employees participating in the *DEEPWATER HORIZON* response efforts followed approved directives, instructions and action plans handed down from the FOSC and/or the FOSCRs at UAC or ICP Houma which detailed the authorized response activities to be executed each day.[25] Airborne Support, Inc. took no response action independent of the federal government, outside of its assigned role in the federal ICS and/or beyond the scope of federal authorization.[26]

## ARGUMENT

Airborne Support adopts and incorporates herein by reference the applicable law set forth in the Joint Memorandum submitted by the Clean-Up Responder Defendants, as well as the general application of that law to the Plaintiffs' claims against the Clean-Up Responder Defendants in the B3 Bundle Master Complaint. In addition, the following is submitted to further explain why Airborne Support is entitled to derivative immunity and, alternatively, why the remaining claims in the B3 Bundle Master Complaint are preempted, such that Airborne Support is entitled to summary judgment.

### I. AIRBORNE SUPPORT HAS DERIVATIVE CLEAN WATER ACT IMMUNITY

Because all of Airborne Support, Inc.'s actions in responding to the *DEEPWATER HORIZON* disaster were performed pursuant to valid authorization, direction, and ultimate

---

*HORIZON* response efforts was Airborne Support, Inc. involved with any sub-sea dispersant operations, surface application of dispersants from vessels, shoreline clean-up and/or *in situ* burning operations. *See* Airborne Support's SUMF at ¶¶ 23, 24, 25, 26. Further, Airborne Support, Inc. was not involved with the engagement, training and/or supervision of any "VoO Plaintiffs", "Decontamination Plaintiffs" and/or "Onshore Plaintiffs" defined in Plaintiffs' B3 Bundle Master Complaint, and did not participate in any determinations made by the UAC with respect to the use of respirators and/or other personal protective equipment by these or any other classification of plaintiffs. *See* Airborne Support's SUMF at ¶ 29.

[24] *See* Airborne Support's SUMF at ¶ 30.
[25] *See* Airborne Support's SUMF at ¶ 31.
[26] *See* Airborne Support's SUMF at ¶ 32.

control of the federal government, Airborne Support must share in the federal government's broad immunity for such actions under the CWA. *See* 33 U.S.C. § 1321(j)(8) ("The United States Government is not liable for any damages arising from its actions or omissions relating to any response plan required by this section."). The CWA provides absolute immunity to the federal government in connection with oil spill response efforts, and Airborne Support, Inc., an agent simply acting under authority validly conferred by the federal government, must share in such immunity to protect the unique federal interests over this area of significant national concern. Accordingly, Airborne Support is entitled to summary judgment based on absolute immunity under the CWA, and all Plaintiffs' remaining claims asserted in the B3 Bundle Master Complaint should be dismissed, with prejudice.

Private entities such as Airborne Support are entitled to derivative federal immunity when directed to perform work pursuant to authorization validly conferred by the federal government. *See Yearsley v. W.A. Ross Construction*, 309 U.S. 18, 20-21 (1940); *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 206-07 (5th Cir. 2009). As set forth in the Joint Memorandum filed by the Clean-Up Responder Defendants, it is undisputed that the federal government exercised legitimate authority, specifically vested in it by the CWA, in responding to this Spill of National Significance.[27] Throughout the unprecedented response to the *DEEPWATER HORIZON* oil spill, Airborne Support, Inc. and its employees acted at the direction of and pursuant to authority validly conferred by the federal government within the ICS.[28] Airborne Support, Inc. did not disobey the government's directives or operate outside the scope of that authority. *Id.* Thus,

---

[27] *See, e.g.* 33 U.S.C. § 1321(c)(1)(A) ("The President shall, in accordance with the National Contingency Plan and any appropriate Area Contingency Plan, ensure effective and immediate removal of a discharge . . . of oil . . . into or on the navigable waters."); 40 C.F.R. § 300.322(b) (If an oil spill "poses or may present a substantial threat to public health or welfare of the United States," the FOSC "*shall direct all* federal, state, or *private actions* to remove the discharge." (*emphasis added*)); *see also* 40 C.F.R. § 300.120; and 40 C.F.R. § 300.135.

[28] *See* Airborne Support's SUMF at ¶¶ 16, 19, 21, 30, 31, 32 and 33.

Airborne Support is entitled to share derivatively in the federal government's absolute immunity under the CWA and is entitled summary judgment.

## II. ALTERNATIVELY, AIRBORNE SUPPORT HAS DERIVATIVE DISCRETIONARY FUNCTION IMMUNITY UNDER THE FEDERAL TORT CLAIMS ACT

Though the Court need not reach the issue, Airborne Support is also entitled to derivative discretionary function immunity under the Federal Tort Claims Act ("FTCA"). *See* 28 U.S.C. § 2680(a) (barring claims against the federal government "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused"); *Hix v. United States Army Corp of Engineers*, 155 Fed. App'x 121, 125 (5th Cir. 2005) (recognizing discretionary function immunity "also extends to contractors who work to implement programs as agents of the federal government"). The general principles of *Yearsley* govern the issue of private entities' entitlement to derivative discretionary function immunity. *See Chesney v. Tennessee Valley Authority*, 782 F. Supp. 2d 570, 581-82 (E.D. Tenn. 2011). As explained in the Joint Memorandum filed by the Clean-Up Responders, the federal government would enjoy discretionary function immunity for its actions in responding to the *DEEPWATER HORIZON* oil spill. The federal government validly conferred authority upon Airborne Support, Inc. during the *DEEPWATER HORIZON* response, and Airborne Support, Inc. acted pursuant to and within the scope of that authority. Accordingly, Airborne Support is also entitled to derivative discretionary function immunity under the FTCA.

## III. ALTERNATIVELY, THE CLAIMS AGAINST AIRBORNE SUPPORT IN THE B3 BUNDLE MASTER COMPLAINT ARE PREEMPTED

The remaining claims in the B3 Bundle Master Complaint are further subject to dismissal pursuant to the doctrine of implied conflict preemption. As set forth in the Joint Memorandum

filed by the Clean-Up Responder Defendants, the claims asserted against Airborne Support in the B3 Bundle Master Complaint conflict with the comprehensive federal response scheme mandated by the CWA, OPA, and the NCP because Airborne Support, Inc. was compelled by federal law to obey the daily directives issued by the FOSC and/or the FOSC's representative(s) in responding to the *DEEPWATER HORIZON* oil spill. Accordingly, Airborne Support is entitled to summary judgment and such claims should be dismissed pursuant to the doctrine of implied conflict preemption.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Joint Memorandum submitted by the Clean-Up Responder Defendants, Airborne Support, Inc. and Airborne Support International, Inc. respectfully request that they be granted summary judgment dismissing the remaining claims against them in Plaintiffs' B3 Bundle Master Complaint, with prejudice.

Respectfully submitted,

LABORDE & NEUNER

By: /s/ Ben L. Mayeaux
FRANK X. NEUNER, JR. - #7674 ("TC")
(FNeuner@ln-law.com)
BEN L. MAYEAUX - #19042
(BMayeaux@ln-law.com)
JED M. MESTAYER - #29345
(JMestayer@ln-law.com)
One Petroleum Center, Suite 200
1001 West Pinhook Road
Lafayette, Louisiana 70503
Phone: (337) 237-7000
Facsimile: (337) 233-9450

*Attorneys for Defendants, Airborne Support, Inc. and Airborne Support International, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum in Support of Airborne Support, Inc. and Airborne Support International, Inc.'s Motion for Summary Judgment on Derivative Immunity and Preemption Grounds has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 18th day of May, 2012.

/s/ Ben L. Mayeaux
COUNSEL