UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179 |
| | SECTION: J |
| THIS DOCUMENT RELATES TO: | |
| *ALL CASES IN PLEADING BUNDLE SECTION III.B(3)* | JUDGE BARBIER MAG. JUDGE SHUSHAN |

**STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF AIRBORNE SUPPORT, INC. AND AIRBORNE SUPPORT
INTERNATIONAL, INC.'s MOTION FOR SUMMARY JUDGMENT
ON DERIVATIVE IMMUNITY AND PREEMPTION GROUNDS**

Pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56.1, Airborne Support, Inc. and Airborne Support International, Inc. (sometimes collectively referred to herein as "Airborne Support" or "Defendants") respectfully submit the following Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment on Derivative Immunity and Preemption Grounds to supplement the Joint Statement of Undisputed Material Facts filed on behalf of the Clean-Up Responder Defendants which are specifically adopted and incorporated herein by reference pursuant to Rule 10 of the Federal Rules of Civil Procedure.

1.  Airborne Support, Inc. is a family-owned and operated small business based at the Houma-Terrebonne Airport in Houma, Louisiana which maintains and operates a fleet of specialized aircraft dedicated to emergency oil spill response. *See* Exhibit "A" – Declaration of Brad Barker in Support of Airborne Support, Inc. and Airborne Support International, Inc.'s Motion for Summary Judgment on Derivative Immunity and Preemption Grounds (hereinafter "Brad Barker Decl.") at ¶ 3; Exhibit "B" – Declaration of Howard Barker in Support of Airborne

Support, Inc. and Airborne Support International, Inc.'s Motion for Summary Judgment on Derivative Immunity and Preemption Grounds (hereinafter "Howard Barker Decl.") at ¶ 3

2. Airborne Support, Inc. has been in operation for over twenty (20) years and is a recognized leader in this unique and vital industry, providing aerial response resources, including aerial dispersant application capability, to virtually every company involved in the exploration, transportation and production of oil and gas in the Gulf of Mexico. *See* Exhibit "A" - Brad Barker Decl. at ¶ 3.

3. Airborne Support International, Inc. and Airborne Support, Inc. are commonly owned, but separate and distinct legal entities. *See* Exhibit "B" - Howard Barker Decl. at ¶ 4.

4. Airborne Support International, Inc. and Airborne Support, Inc. were independently incorporated and maintain separate books and records. *See* Exhibit "B" - Howard Barker Decl. at ¶ 4.

5. Airborne Support International, Inc. had no involvement in any operations conducted during the *DEEPWATER HORIZON* oil spill response. *See* Exhibit "A" - Brad Barker Decl. at ¶ 5; Exhibit "B" - Howard Barker Decl. at ¶ 5.

6. Prior to April 20, 2010, Airborne Support, Inc. entered into an "Agreement for Provision of Response Resources" (the "Agreement") with National Response Corporation ("NRC"). *See* Exhibit "A" - Brad Barker Decl. at ¶ 4.

7. A true and correct copy of the "Agreement for Provision of Response Resources" between Airborne Support, Inc. and NRC is attached as Exhibit "1" to the Declaration of Brad Barker. *See* Exhibit "A" - Brad Barker Decl. at ¶ 4.

8.  NRC was (and is) classified as Oil Spill Removal Organization pursuant to the United States Coast Guard's Oil Spill Removal Organization program. *See* Exhibit "A" - Brad Barker Decl. at ¶ 4.

9.  In its capacity as an Oil Spill Removal Organization, NRC "provides personnel, equipment, supplies and other resources for responding to discharges of oil and hazardous substances from vessels and/or facilities and other emergency response situations, which resources NRC owns or procures by subcontract." *See* Exhibit "A" - Brad Barker Decl. at ¶ 4, and Exhibit "1" attached thereto – Agreement at p.1 ¶ 2(A).

10. The Agreement clearly contemplates work to be performed under the National Contingency Plan ("NCP") at the direction of the federal government. *See* Exhibit "A" - Brad Barker Decl. at ¶ 4, and Exhibit "1" attached thereto – Agreement at ¶¶ 2.1, 3.5, and 4.1.

11. Pursuant to the Agreement, Airborne Support, Inc. agreed to maintain its aerial resources and make them available for deployment if called upon and authorized to respond to a discharge. *See* Exhibit "A" - Brad Barker Decl. at ¶ 4, and Exhibit "1" attached thereto – Agreement at ¶¶ 1(D), 3.1, and 4.1.

12. Airborne Support International, Inc. had no involvement in the *DEEPWATER HORIZON* oil spill response operations orchestrated by the federal government. *See* Exhibit "A" - Brad Barker Decl. at ¶ 5; Exhibit "B" - Howard Barker Decl. at ¶ 5.

13. In the hours immediately following the April 20, 2010 explosion on the *DEEPWATER HORIZON*, NRC and O'Brien's Response Management Inc. ("O'Brien's") contacted Airborne Support, Inc. to provide notice of the incident, advise of the potential discharge, and to place Airborne Support, Inc.'s aerial resources on stand-by to assist in responding to the unfolding disaster. Exhibit "A" - Brad Barker Decl. at ¶ 6.

14. On April 22, 2010, the Federal-On Scene Coordinator ("FOSC"), a federal official designated to direct the *DEEPWATER HORIZON* oil spill response, authorized and instructed Airborne Support, Inc. to conduct a 1,880 gallon aerial application of EPA-approved dispersants to oil on the surface of federal waters in the Gulf of Mexico. Exhibit "A" - Brad Barker Decl. at ¶ 7.

15. In accordance with the FOSC's authorization and instruction, the first aerial dispersant sortie originating from the Houma-Terrebonne Airport for the *DEEPWATER HORIZON* oil spill response was successfully completed by Airborne Support, Inc. spray aircraft, N932H, accompanied by an Airborne Support, Inc. spotter aircraft, N38WA, with United States Coast Guard and O'Brien's personnel on board. Exhibit "A" - Brad Barker Decl. at ¶ 7.

16. During the course of the *DEEPWATER HORIZON* response efforts, Airborne Support, Inc. was again called upon by the federal government to mobilize and deploy its equipment and personnel to execute similar missions and/or to assist with certain aspects of the federal response plan requiring and/or warranting the use of such aerial resources, all as determined, authorized and directed by the FOSC and/or the FOSC's representatives ("FOSCRs") within Unified Area Command ("UAC") and/or other arms of the federal Incident Command System ("ICS"), the command and control organizational structure and management process used by the United States Department of Homeland Security to execute the oil spill response effort. Exhibit "A" - Brad Barker Decl. at ¶¶ 8, 10.

17. In the days immediately following its initial mobilization and aerial dispersant sortie, Airborne Support, Inc. began conducting daily "spotter" or reconnaissance/observation flights over the Gulf of Mexico to assist in gathering information and intelligence on the oil spill

for review, analysis and use by federal officials authorized and empowered to make response decisions within the ICS. Exhibit "A" - Brad Barker Decl. at ¶ 8.

18. In addition to these spotter flights, Airborne Support, Inc.'s *DEEPWATER HORIZON* response activities consisted of (i) aerial application of EPA-approved dispersants to oil on the surface of federal waters of the Gulf of Mexico; (ii) spotter flights supporting spray aircraft during aerial application of EPA-approved dispersants to oil on the surface of federal waters of the Gulf of Mexico; (iii) spotter flights supporting United States Coast Guard/NOAA/EPA Special Monitoring of Applied Response Technologies ("SMART") team monitoring missions; and (iv) one spotter/reconnaissance/observation flight to assist in gathering information and intelligence for use by the United States Coast Guard's Rapid Assessment ("RAT") teams. Exhibit "A" - Brad Barker Decl. at ¶ 13.

19. In all of these efforts, Airborne Support, Inc. and its employees were subject to the ultimate direction and authority of the federal government, and all Airborne Support, Inc. response activities were undertaken and executed pursuant to such direction and authority. Exhibit "A" - Brad Barker Decl. at ¶¶ 9, 10, 11, 13, 14, 15.

20. United States Coast Guard and authorized personnel from various other public and private entities positioned in the federal ICS accompanied Airborne Support, Inc. aircraft to participate in and/or observe assigned missions. Exhibit "A" - Brad Barker Decl. at ¶ 8.

21. Throughout the *DEEPWATER HORIZON* response, all of Airborne Support, Inc.'s resources were consolidated under the leadership of the Houma Incident Command Post ("ICP Houma"), and all Airborne Support, Inc. response activities, including spotter and aerial dispersant application flights, were conducted out of the Houma-Terrebonne Airport as directed and authorized by the federal government. Exhibit "A" - Brad Barker Decl. at ¶¶ 11, 12.

22. Airborne Support, Inc. did not participate in operations, including aerial spotter and/or aerial dispersant flights, conducted out of NASA's John C. Stennis Space Center. Exhibit "A" - Brad Barker Decl. at ¶ 12.

23. At no time during the *DEEPWATER HORIZON* response efforts was Airborne Support, Inc. involved with any sub-sea dispersant operations. Exhibit "A" - Brad Barker Decl. at ¶ 17.

24. At no time during the *DEEPWATER HORIZON* response efforts was Airborne Support, Inc. involved with any surface application of dispersants from vessels. Exhibit "A" - Brad Barker Decl. at ¶ 18.

25. At no time during the *DEEPWATER HORIZON* response efforts was Airborne Support, Inc. involved with shoreline clean-up operations. Exhibit "A" - Brad Barker Decl. at ¶ 19.

26. At no time during the *DEEPWATER HORIZON* response efforts was Airborne Support, Inc. involved with any *in situ* burning operations. Exhibit "A" - Brad Barker Decl. at ¶ 20.

27. At no time during the *DEEPWATER HORIZON* response efforts was Airborne Support, Inc. involved with any aerial dispersant operations which may have been conducted in the territorial waters of any State and/or in federal waters less than twelve (12) nautical miles off the coast of any State. Exhibit "A" - Brad Barker Decl. at ¶ 21.

28. At no time during the *DEEPWATER HORIZON* response efforts was Airborne Support, Inc. involved with any aerial dispersant operations which may have been conducted in federal waters off the coast of Texas, Mississippi, Alabama or Florida. Exhibit "A" - Brad Barker Decl. at ¶ 22.

29. At no time during the *DEEPWATER HORIZON* response efforts was Airborne Support, Inc. involved with the engagement, training and/or supervision of any "VoO Plaintiffs", "Decontamination Plaintiffs" and/or "Onshore Plaintiffs" defined in Plaintiffs' First Amended Master Complaint in Accordance with PTO No. 11 Section III.B(3) (Rec. Doc. 1812) (the "B3 Bundle Master Complaint"), and did not participate in any determinations made by the UAC with respect to the use of respirators and/or other personal protective equipment by these or any other classification of plaintiffs. Exhibit "A" - Brad Barker Decl. at ¶ 23.

30. All aerial dispersant operations conducted during the *DEEPWATER HORIZON* response were approved by the federal government through the FOSC. Exhibit "A" - Brad Barker Decl. at ¶ 14.

31. Airborne Support, Inc. and its employees participating in the *DEEPWATER HORIZON* response efforts followed approved directives, instructions and action plans handed down from the FOSC and/or the FOSCRs at UAC or ICP Houma which detailed the authorized response activities to be executed each day. Exhibit "A" - Brad Barker Decl. at ¶ 15.

32. Airborne Support, Inc. and its employees participating in the *DEEPWATER HORIZON* response efforts took no action independent of the federal government, outside of its assigned role in the federal ICS and/or beyond the scope of federal authorization. Exhibit "A" - Brad Barker Decl. at ¶ 16.

33. At all times during the *DEEPWATER HORIZON* response, Airborne Support, Inc. and its employees acted at the direction of the United States pursuant to authority validly conferred by federal officials within the ICS, faithfully obeyed the directives given and operated within the scope of such authority to execute the will of the federal government. Exhibit "A" - Brad Barker Decl. at ¶ 27.

                Respectfully submitted,
                LABORDE & NEUNER

By:   */s/ Ben L. Mayeaux*
       FRANK X. NEUNER, JR. - #7674 ("TC")
       (FNeuner@ln-law.com)
       BEN L. MAYEAUX - #19042
       (BMayeaux@ln-law.com)
       JED M. MESTAYER - #29345
       (JMestayer@ln-law.com)
       One Petroleum Center, Suite 200
       1001 West Pinhook Road
       Lafayette, Louisiana 70503
       Phone: (337) 237-7000
       Facsimile: (337) 233-9450

       *Attorneys for Defendants, Airborne Support, Inc. and Airborne Support International, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Statement of Undisputed Material Facts in Support of Airborne Support, Inc. and Airborne Support International, Inc.'s Motion for Summary Judgment on Derivative Immunity and Preemption Grounds has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 18th day of May, 2012.

/s/   Ben L. Mayeaux
COUNSEL