UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010<br><br>THIS DOCUMENT RELATES TO:<br><br>*ALL CASES IN PLEADING BUNDLE SECTION III.B(3)* | MDL NO. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  .  . . . . . . . . . . . . . . . . . . . . . . . . . . .

**MEMORANDUM IN SUPPORT OF DYNAMIC AVIATION GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT
ON DERIVATIVE IMMUNITY AND PREEMPTION GROUNDS**

MAY IT PLEASE THE COURT:

Dynamic Aviation Group, Inc. ("Dynamic") respectfully submits this Memorandum in Support of its Motion for Summary Judgment on Derivative Immunity and Preemption Grounds to supplement the Joint Memorandum submitted by the Clean-Up Responder Defendants[1] (which is hereby incorporated by reference in its entirety). Dynamic prays for a dismissal with prejudice of all remaining claims that have been asserted against it in the First Amended Master Complaint in Accordance with PTO No. 11 Section III.B(3) (Rec. Doc. 1812) (hereinafter the "B3 Bundle Master Complaint").[2]

In accordance with Magistrate Judge Shushan's Schedule for Limited B3 Discovery (Rec. Doc. 5000), Dynamic now renews its derivative immunity and implied preemption arguments

---

[1] Rec. Doc. 6535-2

[2] As set forth in the Joint Memorandum filed by the Clean-Up Responder Defendants, following the Court's ruling on the motions to dismiss filed by certain of the Clean-Up Responder Defendants, only two causes of action in the B3 Bundle Master Complaint remain against Dynamic: (i) Negligence (Third Claim for Relief - ¶¶ 240-49) and (ii) Gross Negligence (Fourth Claim for Relief - ¶¶ 250-57).

through the instant motion.  As is set forth in the Joint Memorandum filed by the Clean-Up Responder Defendants, and as more fully explained below, the indisputable facts demonstrate that the federal government was in charge of the response to the DEEPWATER HORIZON oil spill, that the federal government validly conferred authority upon Dynamic to conduct response operations, and that Dynamic never exceeded the scope of that authority during their efforts to assist with the response.  As a result, Dynamic is entitled to derivative immunity under the Clean Water Act ("CWA") and/or the Federal Tort Claims Act ("FTCA").  Alternatively, the claims in the B3 Bundle Master Complaint against Dynamic are barred by the doctrine of implied conflict preemption.

## FACTUAL BACKGROUND

Dynamic incorporates by reference the factual background set forth in the Joint Memorandum filed by the Clean-Up Responder Defendants[3], and provides the following additional details regarding the specific role Dynamic played in the DEEPWATER HORIZON response efforts.  Dynamic also incorporates the Joint Statement of Undisputed Material Facts of the Clean-Up Responder Defendants[4] attached to the referenced Joint Memorandum.

Dynamic Aviation Group, Inc. is a Virginia based entity that provides aircraft, flight and ground crews to various customers throughout the United States and the world.  Prior to the April 20, 2010 incident Dynamic had established a base at the Stennis International Airport in Bay St. Louis, MS.  John Giberson, a federally licensed commercial pilot, as well as a licensed Airframe and Powerplant mechanic, was assigned to the Dynamic/MSRC facility prior to April 20, 2010 incident.  Giberson has prepared a sworn affidavit setting forth Dynamic's activities in

---

[3] Rec. Doc. 6535-2

[4] Rec. Doc. 6535-3

response to the incident. Giberson's affidavit is attached hereto as Exhibit "A"[5].

At the time of the April 20, 2010 explosion and fire on the DEEPWATER HORIZON mobile offshore drilling unit, Dynamic was contracted to Marine Spill Response Corporation ("MSRC") to provide oil spill response services and to assist MSRC in responding to oil spills on BP's behalf.[6] At that time, MSRC was under contract with BP to provide oil spill response services in the event of a spill such as the April 20, 2010 incident.[7] Dynamic, a company providing aerial support to response contractors such as MSRC, participated in the response following the April 20, 2010 incident, only to the extent outlined and requested by the United States Federal Government.[8]

In the hours immediately following the explosion on the DEEPWATER HORIZON, BP contacted MSRC for assistance with their response efforts.[9] MSRC subsequently contacted Dynamic to engage its participation and assistance.[10] Throughout the federal government's unprecedented response efforts, although Dynamic was a contractor of MSRC and a subcontractor of BP, Dynamic and all of its employees were subject to the ultimate authority and direction of the federal government within the Incident Command System ("ICS"), the organizational structure used by the United States Department of Homeland Security to execute the oil spill response efforts.[11] In fact, all orders received by Dynamic regarding response

---

[5] *See* affidavit of John J. Giberson, attached as Exhibit "A", at ¶¶ 4 and 5.

[6] Exhibit "A," at ¶ 7.

[7] Exhibit "A," at ¶ 6.

[8] Exhibit "A," at ¶¶ 18 and 26.

[9] Exhibit "A," at ¶ 9.

[10] *Id.*

[11] Exhibit "A," at ¶¶ 13, 18, 19, 20, 21, 24, 25 and 26.

3

operations came from the Unified Area Command ("UAC"), part of the ICS set up by the federal government.

Those orders not received directly from the government through the UAC were relayed to Dynamic by Donald Toenshoff or other representatives of MSRC.[12]

Pursuant to the contract with MSRC, Dynamic maintained an aircraft equipped to apply dispersants at the MSRC hangar at the Stennis Airport in Bay St. Louis, Mississippi.[13] By April 21, 2010, Dynamic had mobilized aircraft and personnel to assist MSRC with the response efforts.[14] During the course of the response, Dynamic made a total of eleven (11) flights wherein Dynamic aircraft actually applied dispersants to the waters of the Gulf of Mexico.[15] All of these flights were conducted out of the Stennis International Airport.[16] All remaining flights made by Dynamic between April 25, 2010 and July 22, 2010, were spotter flights wherein no dispersants were applied by Dynamic aircraft.[17] Dynamic played no role whatsoever in the selection of the dispersant materials used in the response.[18] Furthermore, Dynamic was never involved with any sub-sea dispersant applications or any *in situ* burning operations.[19] At all times during the DEEPWATER HORIZON response, Dynamic and its employees complied with all governmental directives and authorizations relating to their functions and operations and never

---

[12] Exhibit "A," at ¶ 17.

[13] Exhibit "A," at ¶ 8.

[14] Exhibit "A," at ¶ 11.

[15] Exhibit "A," at ¶ 22.

[16] *Id.*

[17] Exhibit "A," at ¶ 23.

[18] Exhibit "A," at ¶ 16.

[19] Exhibit "A," at ¶¶ 28 and 29.

exceeded those directives and authorizations. [20]

## ARGUMENT

Dynamic incorporates by reference the applicable law as set forth in the Joint Memorandum submitted by the Clean-Up Responder Defendants[21], as well as the general application of that law to the claims against the Clean-Up Responder Defendants in the B3 Bundle Master Complaint. For the reasons set forth therein, above and below, Dynamic is entitled to derivative immunity and, alternatively, the remaining claims against Dynamic in the B3 Bundle Master Complaint are preempted, such that Dynamic is entitled to summary judgment as explained below.

### I. DYNAMIC HAS DERIVATIVE CLEAN WATER ACT IMMUNITY

The parties to this litigation, pursuant to Court Order, engaged in discovery directed to the issues presented in this motion. Because the "limited B3 discovery" has confirmed that Dynamic performed the actions that are the subject of the B3 Bundle Master Complaint pursuant to the authorization, direction, and ultimate control of the federal government, Dynamic must share in the federal government's broad immunity for such actions under the CWA.[22] Plaintiffs have not and will not be able to demonstrate that Dynamic was acting pursuant the authority and direction of any entity other then the federal government. Indeed, the CWA provides absolute immunity to the federal government in connection with oil spill response efforts and, to protect the unique federal interests over this area of significant national concern, Dynamic must share in such immunity. Consequently, this Court should grant summary judgment to Dynamic and

---

[20] Exhibit "A," at ¶ 26

[21] Rec. Doc. 6535-2

[22] *See* 33 U.S.C. § 1321(j)(8) ("The United States Government is not liable for any damages arising from its actions or omissions relating to any response plan required by this section.").

dismiss all remaining claims against Dynamic in the B3 Bundle Master Complaint with prejudice.

Private entities such as Dynamic are entitled to derivative federal immunity when they perform work pursuant to the authorization and direction of the federal government, and the acts of which Plaintiffs complain fall within the scope of those government directives.[23] As explained in the Joint Memorandum filed by the Clean-Up Responder Defendants, there can be no doubt that the federal government was exercising legitimate authority in directing the response to the DEEPWATER HORIZON oil spill. And as set forth above, throughout the federal government's unprecedented response to this Spill of National Significance, Dynamic and its employees were subject to the ultimate authority and direction of the federal government within the ICS and did not exceed or disobey the government's directives at any time.[24] Thus, Dynamic is entitled to share derivatively in the federal government's absolute immunity under the CWA and should be granted summary judgment.

## II. ALTERNATIVELY, DYNAMIC HAS DERIVATIVE DISCRETIONARY FUNCTION IMMUNITY UNDER THE FEDERAL TORT CLAIMS ACT

For essentially the same reasons, though the Court need not reach the issue, Dynamic is also entitled to derivative discretionary function immunity under the Federal Tort Claims Act ("FTCA").[25] As explained in the Joint Memorandum filed by the Clean-Up Responders, the

---

[23] *See Yearsley v. W.A. Ross Construction,* 309 U.S. 18, 20-21 (1940); *Ackerson v. Bean Dredging, LLC,* 589 F.3d 196, 206-07 (5th Cir. 2009).

[24] Exhibit "A," at ¶¶ 13, 18, 20, 21, 24, 25, and 26.

[25] *See* 28 U.S.C. § 2680(a) (barring claims against the federal government "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused"); *Hix v. United States Army Corp of Engineers,* 155 Fed. App'x 121, 125 (5th Cir. 2005) (recognizing that discretionary function immunity "also extends to contractors who work to implement programs as agents of the federal government").

general principles of *Yearsley* govern the issue of private entities' entitlement to derivative discretionary function immunity.[26] Moreover, as further explained in the Joint Memorandum filed by the Clean-Up Responder Defendants, there can be no doubt that the federal government would enjoy discretionary function immunity for its actions in responding to the DEEPWATER HORIZON oil spill. Thus, because it is indisputable that the federal government validly conferred authority upon Dynamic during the response and that Dynamic never exceeded that authority, Dynamic should also be granted summary judgment because it is entitled to derivative discretionary function immunity under the FTCA.

### III. ALTERNATIVELY, THE CLAIMS AGAINST DYNAMIC IN THE B3 BUNDLE MASTER COMPLAINT ARE PREEMPTED

Although the Court need not reach this issue to grant Dynamic's motion for summary judgment, the remaining claims in the B3 Bundle Master Complaint are also subject to dismissal in accordance with the doctrine of implied conflict preemption under the unique circumstances of this case. As explained in the Joint Memorandum submitted by the Clean-Up Responder Defendants, the claims asserted against Dynamic in the B3 Bundle Master Complaint conflict with the comprehensive federal response scheme set forth in the CWA, OPA, and the NCP, because Dynamic was compelled by federal law to obey the daily directives issued by the FOSC and/or the FOSC's representative(s) in responding to the DEEPWATER HORIZON spill—the only spill ever to be designated a Spill of National Significance. Accordingly, Dynamic is entitled to summary judgment and such claims should be dismissed pursuant to the doctrine of implied conflict preemption.

---

[26] *See Chesney v. Tennessee Valley Authority,* 782 F. Supp. 2d 570, 581-82 (E.D. Tenn. 2011).

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Joint Memorandum submitted by the Clean-Up Responder Defendants[27], Dynamic respectfully requests that the instant motion be granted, thereby dismissing the remaining claims against Dynamic in the B3 Bundle Master Complaint with prejudice.

        Respectfully submitted,

        /s/ *Leo R. McAloon, III*
        Leo R. McAloon , III (NO. 19044)
        Email Address: lmcaloon@glllaw.com
        Michael D. Cangelosi (NO. 30427)
        Email Address: mcangelosi@glllaw.com
        Gieger, Laborde & Laperouse, L.L.C.
        701 Poydras Street, Suite 4800
        New Orleans, Louisiana 70139-4800
        Telephone: (504) 561-0400
        Facsimile: (504) 561-1011
        *Attorneys for Dynamic Aviation Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on all counsel of record by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 18th day of May, 2012.

        /s/ Leo R. McAloon, III

---

[27] Rec. Doc. 6535-2