UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: OIL SPILL by the OIL RIG : MDL NO. 2179
"DEEPWATER HORIZON" in the :
GULF OF MEXICO, on :
APRIL 20, 2010 : SECTION: J
:
THIS DOCUMENT RELATES TO: :
:
*ALL CASES IN PLEADING BUNDLE* : JUDGE BARBIER
*SECTION III.B(3)* : MAG. JUDGE SHUSHAN
:

**AFFIDAVIT**

**STATE OF MISSISSIPPI**

**COUNTY OF HANCOCK**

BEFORE ME, the undersigned authority, personally came and appeared:

**JOHN J. GIBERSON**

a person of the full age of majority, who after being duly sworn, did depose and state under oath as follows:

1.

That he is of sound mind, of the full age of majority, competent in all respects and fully capable of making this Affidavit.

2.

That he is submitting this Affidavit in support of Dynamic Aviation Group, Inc's Motion for Summary Judgment on Derivative Immunity and Preemption Grounds, and that the facts set forth herein are accurate, true and correct and based on his personal knowledge and/or the books and records of Dynamic.

EXHIBIT A

3.

That he is submitting this Affidavit of his own free will and without coercion, inducement or other compensation.

4.

That he is currently employed with Dynamic Aviation Group, Inc. (hereinafter "Dynamic") in the position of Base Manager at the Dynamic Aviation/Marine Spill Response Corporation ( hereinafter "MSRC") facility at Stennis Airport in Bay St. Louis, MS.

5.

That he served in that capacity before, during and after the April 20, 2010 explosion and fire on the DEEPWATER HORIZON mobile offshore drilling unit, as well as throughout the oil spill response (hereinafter "the Response") that followed.

6.

That prior to the April 20, 2010 incident MSRC had contracted with BP to provide oil spill response services to BP in the event of a spill such as the April 20, 2010 incident.

7.

That at the time of the April 20, 2010 incident Dynamic was contracted to MSRC to provide oil spill response services, to assist MSRC in responding to oil spills on BP's behalf.

8.

That, pursuant to the agreement between Dynamic and MSRC, Dynamic maintained an aircraft equipped to apply dispersants at the MSRC hangar at the Stennis

Airport in Bay St. Louis, MS.

9.

That during the hours immediately following the explosion on the DEEPWATER HORIZON on April 20, 2010, BP contacted MSRC for assistance with the Response. MSRC then contacted Dynamic to engage its participation in the Response.

10.

That after the April 20, 2010 incident occurred Donald Toenshoff of MSRC came to MSRC's Stennis Airport hangar and began to supervise all of MSRC's and Dynamic's spill response operations.

11.

That by April 21, 2010, Dynamic had mobilized aircraft to assist with the Response.

12.

That during the days immediately following Dynamic's initial mobilization of its aircraft located at the Stennis Airport additional Dynamic aircraft from all over the country were brought to the Stennis Airport to assist with the Response.

13.

That throughout the Response Dynamic served as a subcontractor to BP, but was subject to the ultimate authority and direction of the federal government, as described below.

14.

That during the course of the Response, Dynamic was called upon to mobilize its equipment and personnel to assist with aerial application of dispersants and providing

spotter aircraft for other aircraft applying dispersants during the Response, all of which was directed by the Unified Area Command ("UAC"), as is outlined in greater detail below.

15.

That Dynamic's pilots and aircraft were involved in the aerial application of dispersant materials used during the Response following the April 20, 2010 explosion and fire on the DEEPWATER HORIZON.

16.

That Dynamic had no role in the selection of the dispersant materials used in the Response.

17.

That the orders of the UAC were actually relayed to Dynamic by Toenshoff, by other representatives of MSRC, and/or by email from the UAC directly to the affiant.

18.

That throughout the Response, Dynamic served as a subcontractor to BP, but was always subject to the ultimate authority and direction of the federal government.

19.

During the Response, all aerial dispersant operations were managed by the Dispersant Group in the Operations Section at the ICP in Houma, Louisiana ("ICP Houma"). The Dispersant Group at ICP Houma ran its operations out of two airports— the Stennis International Airport in Bay St. Louis, MS and the Houma-Terrebonne Airport in Houma, LA. Each airport had a liaison to the Dispersant Group at ICP Houma, such that the ICP was privy to all of the details of the operations going on at the

two airports. Operations at both airports had separate spray aircraft and spotter aircraft, such that all dispersant spray aircraft were accompanied by a spotter aircraft to ensure that no boats or platforms were located in the planned dispersant deployment area.

20.

That government approval was necessary for all aerial dispersant operations and such authorization came exclusively from the Federal On Scene Coordinator (hereinafter "FOSC") and/or the UAC, and that all instructions regarding where and when to apply dispersants were provided exclusively by the Dispersant Group at ICP Houma.

21.

That at all times, aerial dispersant operations were monitored by federal government agencies, including United States Coast Guard Special Monitoring of Applied Response Technologies ("SMART") teams, in order to ensure that the operations were conducted safely.

22.

That Dynamic made a total of 11 flights wherein Dynamic aircraft applied dispersants, on the following dates: April 25, 2010 (3), April 26, 2010 (3), April 28, 2010, May 25, 2010, May 26, 2010, May 27, 2010 and June 5, 2010. All of these flights were conducted out of the Stennis International Airport.

23.

That, other than the 11 flights identified in Paragraph 22 above, during all remaining flights made by Dynamic during the Response, made between April 25, 2010 and July 22, 2010, Dynamic aircraft served only as spotter aircraft and did not apply any dispersants.

24.

That Dynamic employees participating in the Response followed the aerial Dispersant Operations Plans received from ICP Houma, which contained detailed instructions concerning the authorized response activities that were to occur each day.

25.

That at all times Dynamic employees participating in the Response were subject to the ultimate authority and direction of the FOSC and/or other federal officials.

26.

That at all times during the Response, Dynamic employees complied with all governmental directives and authorizations relating to their functions and operations and never exceeded those directives and authorizations.

27.

That during its Response activities any flight involving a Dynamic aircraft that originated out of the Houma, LA Airport was a spotter flight, and no dispersants were applied from Dynamic aircraft during any such flight.

28.

That at no time during the Response was Dynamic involved with any sub-sea dispersant operations or applications.

29.

That at no time during the Response was Dynamic involved with any *in situ* burning operations.

5/8/12
DATE

John J. Giberson
JOHN J. GIBERSON

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 8th DAY
OF MAY, 2012.

Arleen A. Shubert
NOTARY PUBLIC

Arleen A. Shubert
PRINTED NAME

MY COMMISSION EXPIRES 11/15/13

8 0151
NOTARY ID NO.:

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 80151
ARLEEN A. SHUBERT
Commission Expires
Nov. 15, 2013
HANCOCK COUNTY

7