UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:   OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179 |
| | SECTION: J |
| THIS DOCUMENT RELATES TO: | JUDGE BARBIER |
| *ALL CASES IN PLEADING BUNDLE SECTION III.B(3)* | MAG. JUDGE SHUSHAN |

**MEMORANDUM IN SUPPORT OF LYNDEN, INC.'S MOTION FOR SUMMARY JUDGMENT ON DERIVATIVE IMMUNITY AND PREEMPTION GROUNDS**

Lynden, Inc. joined with the other Clean-Up Responder Defendants to move this Court for Summary Judgment on Derivative Immunity and Preemption Grounds. Lynden, Inc. submits this short memorandum in further support of the Joint Motion for Summary Judgment.

As explained in the Clean-Up Responder Defendants' Joint Memorandum and attached documents and pleadings and as further shown here, Lynden, Inc. is entitled to an Order dismissing the remaining claims asserted against it in the *First Amended Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["B3 Bundle"], Complaint in Admiralty Rule 9(h)* [doc. 1812.]).[1]

I.   INTRODUCTION

Defendant Lynden, Inc. is incorporated in Washington State with its principal place of business in Seattle. Lynden, Inc. owns various subsidiary corporations each of which provides

---

[1] As set forth in the Joint Memorandum the Clean-Up Responder Defendants filed, following the Court's ruling on various motions to dismiss filed by certain Clean-Up Responder Defendants, only two causes of action asserted in the Amended B3 Bundle Master Complaint remain against Lynden: (i) negligence and (ii) gross negligence. *See First Amended Master Complaint (B3 Bundle)*, Third Claim for Relief - ¶¶ 240-49 and (ii) Fourth Claim for Relief - ¶¶ 250-57.

1

distinct transportation services. Lynden, Inc. is not registered to do business in Louisiana nor does it do business in Louisiana. As more fully set forth in its previously-filed Memorandum in Support of Lynden Incorporated's Motion to Dismiss for Lack of Personal Jurisdiction [doc. 1399], Lynden, Inc. has no business presence and no operations in Louisiana and is not subject to *in personam* jurisdiction in this Court.[2]

One of Lynden, Inc.'s subsidiaries is Lynden Air Cargo, LLC, an Alaska-based company which provides air cargo transportation services and is a standby oil spill response provider.[3] Plaintiffs did not sue Lynden Air Cargo, LLC. Instead, in their original *Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["B3 Bundle"], Complaint in Admiralty Rule 9(h)* [doc. 881], plaintiffs named only Lynden, Inc. as a party defendant. In paragraph 57 plaintiffs alleged as follows:

> Defendant Lynden, Inc. is a Washington Corporation with its principal place of business in Seattle, Washington, which at all times was doing business in the State of Louisiana by virtue of its 100 percent ownership interest in Lynden Air Cargo, LLC, an Alaska limited liability company with its principal place of business in Seattle, Washington, which at all pertinent times was doing business in the State of Louisiana (collectively, "Lynden"). Lynden participated in the post-explosion Oil Spill remediation and response efforts.

*See Master Complaint (B3 Bundle)*, ¶ 57. In that pleading plaintiffs neither named Lynden Air

---

[2] Lynden, Inc. filed a Motion to Dismiss for Lack of Personal Jurisdiction on February 28, 2011 [Doc. 1399]. This Court did not rule on Lynden, Inc.'s motion and instead afforded plaintiffs the opportunity to direct limited jurisdictional discovery to Lynden, Inc. *See* Order and Reasons [As to Motions to Dismiss the B3 Master Complaint] [doc. 4159], p. 24. Plaintiffs *never* conducted such jurisdictional discovery. Thus, to the extent this Court may consider an alternative basis for dismissing Lynden, Inc., Lynden, Inc. renews its motion to dismiss for lack of personal jurisdiction.

[3] *See* Declaration of Judy McKenzie, President and CEO of Lynden Air Cargo, LLC. Declaration ¶ 4, exhibit "A."

Cargo, LLC as a defendant nor served a summons on Lynden Air Cargo, LLC.[4]

On March 30, 2011, plaintiffs filed their *First Amended Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["B3 Bundle"], Complaint in Admiralty Rule 9(h)* [doc. 1812], in which they slightly altered their allegations as to defendant Lynden, Inc. as follows:

> Defendant Lynden, Inc. is a Washington Corporation with its principal place of business in Seattle, Washington, which at all times was doing business in the State of Louisiana by virtue of its 100 percent ownership interest in Defendant Lynden Air Cargo, LLC, an Alaska limited liability company with its principal place of business in Seattle, Washington, which at all pertinent times was doing business in the State of Louisiana (collectively, "Lynden"). Lynden participated in the post-explosion Oil Spill remediation and response efforts.

*See First Amended Master Complaint (B3 Bundle)*, ¶ 65.  Although plaintiffs inserted "defendant" before Lynden Air Cargo, LLC in the *First Amended Master Complaint (B3 Bundle)*, this is a misnomer.  Plaintiffs neither requested service of a summons upon Lynden Air Cargo, LLC nor affected service upon Lynden Air Cargo, LLC.

In addition to paragraph 65, "Lynden" is mentioned in two other paragraphs of plaintiffs' *First Amended Master Complaint (B3 Bundle)*:

> In addition to directing vessels at sea, BP coordinates and directs aircraft owned and/or operated by Defendants MSRC, O'Brien, Modern Group, NRC, Lane, Dynamic, ASI, ASI International, Lynden, IAR and others that fly out over the Gulf to spot oil slicks and to spray chemical dispersants to oil on the surface of the Gulf.

*Id.,* ¶ 122.

> MSRC owns four of the ten spray planes used in connection with BP's aerial spraying of chemical dispersants.  MSRC and/or its contractors, Lynden Air Cargo, LLC and/or Dynamic Aviation, operate the spray planes.

---

[4] As a factual matter, Lynden Air Cargo, Inc. is an Alaska corporation and has its principal place of business in Anchorage, Alaska, not in Seattle as plaintiffs alleged.

*Id.*, 138.

Lynden Air Cargo, LLC – not defendant Lynden, Inc. – participated in the oil spill clean-up response. Five days after the explosion on board DEEPWATER HORIZON, Lynden Air Cargo, LLC was contacted and asked if it could assist in the unfolding clean-up efforts. Lynden Air Cargo, LLC was able to help and therefore BP retained Lynden Air Cargo, LLC to assist in applying chemical dispersants.[5]

Lynden, Inc. is the party defendant in this Court and plaintiffs' allegations against Lynden, Inc. do not allege any direct wrongdoing or fault by Lynden, Inc. Instead, plaintiffs appear to contend Lynden, Inc. is vicariously liable for alleged negligence or gross negligence of its subsidiary Lynden Air Cargo, Inc. Assuming solely for argument's sake plaintiffs could hold Lynden, Inc. vicariously liable for the alleged negligence or fault of its subsidiary, Lynden, Inc. is nevertheless entitled to summary judgment. Because Lynden Air Cargo, LLC enjoys: (1) derivative immunity under the Clean Water Act, 33 U.S.C. §1251, *et seq.*; and (2) the Federal Tort Claims Act;[6] and/or (3) the claims in the *First Amended Master Complaint (B3 Bundle)* against the Clean-Up Responder Defendants are preempted, Lynden Air Cargo, LLC could not be liable to plaintiffs. Therefore, defendant Lynden, Inc., can not be held liable to plaintiffs under any vicarious liability theory or under any "single business enterprise" theory. Dismissal of plaintiffs' remaining claims against Lynden, Inc. is therefore warranted.

II.  AS A PRELIMINARY LEGAL AND FACTUAL MATTER, LYNDEN, INC. CANNOT BE HELD VICARIOUSLY LIABILE FOR LYNDEN AIR CARGO, LLC AS LYNDEN, INC. IS NOT THE ALTER EGO OF LYNDEN AIR CARGO, LLC

Only for the purpose of this motion for summary judgment, Lynden, Inc. will brief the

---

[5] *See* "Charter Agreement Oil Spill Dispersant Spraying Services" entered into on April 26, 2010, between Lynden Air Cargo, LLC and BP Exploration Inc., exhibit "B."

[6] Congress repealed and replaced the original Federal Torts Claims Act. Its provisions are now found at 28 U.S.C. §§1291, 1346, 1402, 2401, 2402, 2411, 2412 and 2671 to 2680.

matter as if Lynden, Inc. is subject to *in personam* jurisdiction in this Court *and* could be held vicariously liable for the alleged negligence or gross negligence of a subsidiary Lynden Air Cargo, LLC. But, to be clear, personal jurisdiction over Lynden, Inc. is lacking,[7] and Lynden, Inc. could not be held liable vicariously or under an alter ego theory for the actions of Lynden Air Cargo, LLC.

As set forth above, Lynden, Inc. did not engage in any DEEPWATER HORIZON oil spill response. The *Master Complaint*, as amended, appears to assert as a basis for exercising personal jurisdiction over Lynden, Inc. and potential liability against Lynden, Inc. because of Lynden Air Cargo, LLC's oil spill response. Such allegations do not suffice to impose liability on Lynden, Inc.

First, parent-subsidiary corporations are presumptively independent of each other. *See IMC Exploration Company v. Texaco Inc.*, 2005 WL 161178, *3 (E.D.La. Jan. 24, 2005)(Barbier, J.)(discussed within context of whether personal jurisdiction could be asserted over one company based upon action of a related company); *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999)(same.) The presumption of independence may be overcome only by "clear evidence" that one corporation is the "alter ego of another" and the party alleging the alter ego relationship bears the burden of proving it. *IMC Exploration Company v. Texaco Inc.*, 2005 WL 161178, * 3, *citing Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d at 338. *Also see Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 492-93 (5th Cir. 1974), *overruled on other grounds, Insurance Corporation of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03, 102 S.Ct. 2099, 2104-05 (1982), *as stated in Burstein v. State*

---

[7] Lynden, Inc. will not repeat here the legal authorities or the facts set forth in the submitted affidavits in support of its motion to dismiss on the basis of lack of *in personam* jurisdiction which law and facts may be found in Lynden, Inc.'s earlier-filed Motion to Dismiss and accompanying memorandum and exhibits [doc. 1399.]

*Bar of California,* 693 F.2d 511, 518 n. 12 (5th Cir. 1982).

Second, the factors to consider whether one entity is the alter ego of another or whether the two entities are a "single business enterprise" are similar. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 587 (5th Cir. 2010), *citing Green v. Champion Ins. Co.*, 577 So.2d 249, 257-58 (La.App. 1 Cir. 1991). Those factors include, but are not limited to, common ownership, directors and officers, employees, and offices; unified control; inadequate capitalization; noncompliance with corporate formalities; centralized accounting; unclear allocation of profits and losses between corporations; one corporation paying the salaries, expenses, or losses of another corporation; and undocumented transfers of funds between entities. *See Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d at 587; *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 385-89 (5th Cir. 2000); *Green*, 577 So.2d at 258. No one factor is dispositive. *Green*, 577 So.2d at 258.

As the Declaration of Everett H. Billingslea sets forth, Lynden, Inc. and Lynden Air Cargo, LLC are not alter egos of each other.[8] Mr. Billingslea attests, *inter alia*:

- Lynden Air Cargo, LLC is a wholly-owned subsidiary of Lynden, Inc. The two companies are distinct and corporate formalities are strictly observed and maintained.

- Lynden Air Cargo, LLC is a separate Profit & Loss entity, distinct both from Lynden, Inc. and from other Lynden, Inc. subsidiaries. The revenue and expenses of Lynden Air Cargo, LLC are separately booked and accounted for. Pursuant to specific Internal Revenue Code rules and regulations governing subchapter S

---

[8]  *See* Declaration of Everett H. Billingslea in Support of Lynden Incorporated's Motion to Dismiss for Lack of Personal Jurisdiction [doc. 1399-2], exhibit "C." Mr. Billingslea is currently the Senior Vice President of Lynden, Inc.

corporations and their subsidiaries, Lynden Air Cargo, LLC's profits are paid as a dividend to Lynden, Inc., as would normally be the case between a corporation and its shareholders. Operating capital is then reinvested by Lynden, Inc. as owner and shareholder. All financial transactions between Lynden, Inc. and Lynden Air Cargo, LLC are documented and accounted for pursuant to IRS rules and regulations. There are no undocumented transactions between parent and subsidiary.

- Lynden, Inc. and Lynden Air Cargo, LLC are separately managed and have separate executive officers. Jon Burdick is the president and Jim Jansen is the CEO of Lynden, Inc.[9] Judy McKenzie is the president and CEO of Lynden Air Cargo, LLC. No officers of Lynden Air Cargo, LLC are employed by Lynden, Inc. No officers of Lynden, Inc. are employed by Lynden Air Cargo, LLC.

- The Board of Directors of Lynden, Inc. and the Board of Managers of Lynden Air Cargo, LLC are separate bodies that have separate responsibilities and meet separately, although certain Directors serve on both Boards. The Lynden Air Cargo Board meets three times a year in Anchorage, Alaska, and is responsible for Lynden Air Cargo, LLC's operations. The Board of Lynden, Inc. is a separate body and meets in Washington State, separately from the Board of Lynden Air Cargo, LLC, and at different times of the year. The Board of Lynden, Inc. is responsible for the operations of Lynden, Inc. and for the overarching business strategy of the Lynden family of companies. Corporate formalities between Lynden, Inc. and its subsidiaries, including Lynden Air Cargo, LLC are strictly

---

[9] Although correct when Mr. Billingslea signed his Declaration, today Jon Burdick is both the President and CEO of Lynden, Inc. and Jim Jansen is the Chairman of Lynden, Inc.

observed.

*See* Declaration of Everett H. Billingslea in Support of Lynden Incorporated's Motion to Dismiss for Lack of Personal Jurisdiction [doc. 1399-2.]  Plaintiffs lack any facts to contradict Mr. Billingslea's Declaration and they have no facts to meet their burden to establish Lynden, Inc. and Lynden Air Cargo, LLC are the alter egos of each other or operate as a "single business enterprise."[10]  Furthermore, the test to impose liability under an alter ego theory against one corporation for the acts of another is even more stringent than the test to assert *in personam* jurisdiction under an alter ego theory.  *See Hargrave*, 710 F.2d at 1161; *Stuart v. Spademan*, 772 F.2d 1185, 1197 fn 11 (5th Cir. 1985); *Lehigh Valley Indus., Inc. v. Birenbaum*, 389 F.Supp. 798, 803-04 (S.D.N.Y.), *aff'd,* 527 F.3d 87 (2nd Cir. 1975).

Notwithstanding the above, for the remainder of this memorandum and for purposes of this motion only, Lynden, Inc. will assume this Court could exercise *in personam* jurisdiction over it *and* the Court could find Lynden, Inc. and Lynden Air Cargo, LLC were alter egos of each other and/or operated as a "single business enterprise."  Even assuming such hypotheses, which are denied, Lynden, Inc. is entitled to a judgment of dismissal because Lynden Air Cargo, LLC enjoys derivative immunity under the Clean Water Act and/or the Federal Tort Claims Act.  Additionally or alternatively, the doctrine of implied conflict preemption bars plaintiffs' claims asserted in the *First Amended Master Complaint (B3 Bundle)*.

---

[10]  *See also Hargrave v. Fibreboard,* 710 F.2d 1154, 1160 (5th Cir.1983)("We have noted often that 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations."); *and id.* at 1161 ("The policymaking authority held and exercised by [the parent corporation] was no more than that appropriate for a sole shareholder of a corporation, and certainly not enough to warrant the extraterritorial exercise of jurisdiction over that shareholder[.]") *And also see Administrators of Tulane Educational Fund v. Ipsen, S.A.*, 450 Fed.Appx. 326 (5th Cir. 2011).

III.     LYNDEN AIR CARGO, LLC'S RESPONSE DURING THE OIL SPILL CLEAN-UP

Lynden, Inc. incorporates by reference the factual background the Joint Memorandum and the Joint Statement of Uncontested Material Facts filed by the Clean-Up Responder Defendants sets forth and provides only briefly the following additional details regarding Lynden Air Cargo, LLC's role in the DEEPWATER HORIZON disaster response.

After the DEEPWATER HORIZON exploded and oil began its uncontrolled release into the Gulf of Mexico, the United States Government – within the Incident Command System – authorized and directed the oil spill response effort, including the application of chemical dispersants to the affected sea.[11]  Beginning the day after the DEEPWATER HORIZON explosion and continuing throughout the oil spill response, Incident Action Plans were prepared daily.  Each Incident Action Plan contained detailed instructions concerning the response activities scheduled for the day.  The Federal On-Site Coordinator or the Federal On-Site Coordinator's representative(s) reviewed, approved and signed each Incident Action Plan and then delivered the daily Incident Action Plan for execution by, among others, the Clean-Up Responder Defendants, including Lynden Air Cargo, LLC.  And, between April 21, 2010, and July 19, 2010,[12] the Federal On-Site Coordinator or the Federal On-Site Coordinator's representative(s) specifically authorized the use of dispersants Corexit® EC9500A and Corexit® EC9527A on the surface of the affected areas of the Gulf of Mexico.[13]  At no time during the

---

[11]  The Incident Command System is the organizational structure the United States Department of Homeland Security uses to execute the response to an oil spill of national significance.  *See Joint Stipulation of Fact Between the Clean-Up Responder Defendants and the United States of America*, ¶ 14, exhibit "D."

[12]  The last application of chemical dispersant to affected waters of the Gulf of Mexico occurred on July 19, 2010.  *See Joint Stipulation of Fact Between the Clean-Up Responder Defendants and the United States of America*, ¶¶ 39-41.

[13]  Defendant Nalco Company manufactured the dispersants Corexit® EC9500A and Corexit® EC9527A and both dispersants were as of April 20, 2010 and are still listed on the National

–9–

DEEPWATER HORIZON response was Lynden Air Cargo, LLC involved with any sub-sea dispersant operations or *in situ* burning operations.[14]

During the course of this response to an unparalleled oil spill disaster, Lynden Air Cargo, LLC mobilized two L382 Hercules aircraft with their related equipment and personnel to assist in applying chemical dispersants.[15] The Lynden Air Cargo, LLC's aircraft that applied chemical dispersants operated from the NASA Stennis Space Center Airport in Mississippi.[16] At all times during the DEEPWATER HORIZON disaster response, Lynden Air Cargo, LLC and its employees acted under the leadership of and at the direction of the Federal On-Site Coordinator, the Federal On-Site Coordinator's representatives and/or other federal officials.[17] Throughout the DEEPWATER HORIZON disaster response, Lynden Air Cargo, LLC and its employees complied with all government directives and authorizations relating to the application of chemical dispersants and Lynden Air Cargo, LLC and its employees did not exceed those directions or authorizations.[18]

---

Contingency Plan Product Schedule. *See Joint Stipulations of Fact Between the Clean-Up Responder Defendants and the United States of America*, ¶¶ 3-4.

[14] McKenzie Declaration ¶¶ 11-12. Plaintiffs do not alleged to the contrary. *See, e.g., First Amended Complaint (B3 Bundle)*, ¶ 122.

[15] McKenzie Declaration ¶ 6.

[16] Following the explosion and resulting oil spill, the United States Coast Guard established five Incident Command Posts in the following locations: Houston, Texas; Galveston, Texas; Houma, Louisiana; Mobile, Alabama; and Miami, Florida. *See Joint Stipulations of Fact Between the Clean-Up Responder Defendants and the United States of America*, ¶ 15. The NASA Stennis Space Center Airport operations were under the direction of the Houma Incident Command Post. *Also see* McKenzie Declaration ¶ 9.

[17] McKenzie Declaration ¶ 17. *See also Joint Stipulation of Fact Between the Clean-Up Responder Defendants and the United States of America*, ¶¶ 39-43.

[18] McKenzie Declaration ¶ 18. *See also Joint Stipulation of Fact Between the Clean-Up Responder Defendants and the United States of America*, ¶ ¶33, 43 and 45.

IV.     LAW AND ARGUMENT

Lynden, Inc. incorporates by reference the applicable law forth in the Joint Memorandum and the Joint Statement of Uncontested Material Facts the Clean-Up Responder Defendants submitted, as well as the general application of that law to the claims against the Clean-Up Responder Defendants in the *First Amended Master Complaint (B3 Bundle)*.  In this section, Lynden, Inc. will further explain why it is entitled to derivative immunity and, alternatively, why the remaining claims against it in the *First Amended Master Complaint (B3 Bundle)* are preempted, such that Lynden, Inc. is entitled to summary judgment.

A.     *Lynden Air Cargo, LLC Enjoys Derivative Clean Water Act Immunity*

Because the "limited B3 discovery" confirms Lynden Air Cargo, LLC performed the actions made the subject of the of the *First Amended Master Complaint (B3 Bundle)* pursuant to the authorization, direction, and ultimate control of the federal government, Lynden Air Cargo, LLC must share in the federal government's broad immunity for such actions under the Clean Water Act.  *See* 33 U.S.C. §1321(j)(8)("The United States Government is not liable for any damages arising from its actions or omissions relating to any response plan required by this section.").[19]  Indeed, the Clean Water Act provides absolute immunity to the federal government in connection with oil spill response efforts and, to protect the unique federal interests over this area of significant national concern, Lynden Air Cargo, LLC must share in such immunity.[20] Consequently, this Court should grant summary judgment to Lynden, Inc. and dismiss all remaining claims pending in the *First Amended Master Complaint (B3 Bundle)* against Lynden,

---

[19]  This Court has affirmed that the United States is immune from claims "based on responder activities" under 33 U.S.C. §1321(j)(8).  *See* Nov. 18, 2011, Trans., p. 56 [Rec. doc. 4786.]

[20]  The B3 Bundle plaintiffs failed to respond to the Court's ordered limited B3 discovery and hence it must be concluded they have no material facts to oppose the Clean-Up Responder Defendants immunity and implied preemption arguments.

Inc. based upon the actions of Lynden Air Cargo, LLC with prejudice.

Private entities such as Lynden Air Cargo, LLC are entitled to derivative federal immunity when such private entities perform work pursuant to the authorization and direction of the federal government and here the actions about which plaintiffs complain fall squarely within the scope of those government directives and authorizations. *See Yearsley v. W.A. Ross Construction*, 309 U.S. 18, 20-21, 60 S.Ct. 413 (1940); *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 206-07 (5th Cir. 2009); *Myers v. United States*, 323 F.2d 580 (9th Cir. 1963); *Green v. ICI American, Inc.*, 362 F.Supp. 1263 (E.D.Tenn. 1973); *Dolphin Gardens, Inc. v. United States*, 243 F.Supp. 824 (D.Conn. 1965).[21]  As explained in the Clean-Up Defendants' Joint Memorandum, without peradventure the federal government exercised its legitimate authority in directing the response to the DEEPWATER HORIZON oil spill and the subsequent environmental disaster. Throughout the federal government's unprecedented response to this Spill of National Significance,[22] Lynden Air Cargo, LLC and its employees were subject to the

---

[21]  Indeed, the entire format established by Congress and set forth in the governing rules designed to respond to oil spills anticipates private companies will work with and at the direction of the United States. As such, those private companies are entitled to the immunities afforded the United States Government and its direct employees as a matter of sound public policy. *See, e.g., Filarsky v. Delia*, ___ U.S. ___, 132 S.Ct. 1657, 1665-66 (2012)("Affording immunity not only to public employees but also to others acting on behalf of the government similarly serves to 'ensure that talented candidates [are] not deterred by the threat of damages suits from entering public service.' [*Citation omitted.*] The government's need to attract talented individuals is not limited to full-time public employees. Indeed, it is often when there is a particular need for specialized knowledge or expertise that the government must look outside its permanent work force to secure the services of private individuals. * * *  The City of Rialto certainly had no permanent employee with anything approaching those qualifications. To the extent such private individuals do not depend on the government for their livelihood, they have freedom to select other work – work that will not expose them to liability for government actions. This makes it more likely that the most talented candidates will decline public engagements if they do not receive the same immunity enjoyed by their public employee counterparts.")

[22]  *See* 40 CFR §300.232:

> (a)  A discharge may be classified as a spill of national significance (SONS) by the Administrator of EPA for discharges

ultimate authority and direction of the federal government within the Incident Command System and Lynden Air Cargo, LLC did not exceed or disobey the government's directives at any time.[23] Thus, Lynden Air Cargo, LLC shares derivatively in the federal government's absolute immunity under the Clean Water Act.  To the extent Lynden, Inc. could be held liable for actions of Lynden Air Cargo, LLC, the actions of Lynden Air Cargo, LLC are immune pursuant to the immunity the Clean Water Act affords.

> B. *Alternatively, Lynden, Inc. has Derivative Discretionary Function Immunity Under the Federal Torts Claims Act*

For essentially the same reasons, although this Court need not reach the issue, Lynden Air Cargo, LLC enjoys derivative discretionary function immunity under the Federal Tort Claims Ac which bars claims against the federal government based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.  *See* 28 U.S.C. §2680 which in pertinent part reads:

---

> occurring in the inland zone and the Commandant of the USCG for discharges occurring in the coastal zone.
>
> (b)   For a SONS in the inland zone, the EPA Administrator may name a senior Agency official to assist the OSC in communicating with affected parties and the public and coordinating federal, state, local, and international resources at the national level.  This strategic coordination will involve, as appropriate, the NRT, RRT(s), the Governor(s) of affected state(s), and the mayor(s) or other chief executive(s) of local government(s).
>
> (c)   For a SONS in the coastal zone, the USCG Commandant may name a National Incident Commander (NIC) who will assume the role of the OSC in communicating with affected parties and the public, and coordinating federal, state, local, and international resources at the national level.  This strategic coordination will involve, as appropriate, the NRT, RRT(s), the Governor(s) of affected state(s), and the mayor(s) or other chief executive(s) of local government(s).

[23] McKenzie Declaration ¶¶ 16-18.

> **§2680.  Exceptions**
>
> The provisions of this chapter and section 1346(b) of this title shall not apply to –
>
> (a)     Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
>
> * * *

*See also Hix v. United States Army Corp of Engineers*, 155 Fed. Appx 121, 125 (5th Cir. 2005)(recognizing that discretionary function immunity "also extends to contractors who work to implement programs as agents of the federal government"); *Bynum v. FMC Corp.*, 770 F.2d 556, 564 (5th Cir.1985)("[W]hen contractors as agents or officers of the federal government . . . work according to government specifications, they are entitled to assert the government's sovereign immunity in suits arising from that activity.")

As all Clean-Up Responders explained in their Joint Memorandum, the general principles of *Yearsley*, 309 U.S. 18, 60 S.Ct. 413, govern the issue of private entities' entitlement to derivative discretionary function immunity.  *See also Chesney v. Tennessee Valley Authority*, 782 F. Supp. 2d 570, 581-82 (E.D. Tenn. 2011).  Moreover, there is no doubt but that the federal government would enjoy discretionary function immunity for its actions in responding to the DEEPWATER HORIZON oil spill.  Thus, because it is indisputable that the federal government validly conferred authority upon Lynden Air Cargo, LLC during the response and Lynden Air Cargo, LLC did not exceed such authority or directions, Lynden Air Cargo, LLC would also enjoy derivative discretionary function immunity under the Federal Torts Claims Act.  Hence, if Lynden Air Cargo, LLC enjoys immunity, Lynden, Inc. is entitled to summary judgment inasmuch as plaintiffs' claims against Lynden, Inc. are based upon the conduct of Lynden Air

Cargo, LLC and plaintiffs ability to recover for such conduct.

  C. *Alternatively, the Claims Asserted in the First Amended Master Complaint (B3 Bundle) Against the Clean-Up Responder Defendants, including Lynden, Inc. are Preempted*

Although the Court need not reach this issue to grant Lynden, Inc. summary judgment, the remaining claims asserted in the *First Amended Master Complaint (B3 Bundle)* are also subject to dismissal in accord with the doctrine of implied conflict preemption under the unique circumstances of this case. As the Clean-Up Responder Defendants' Joint Memorandum sets forth, the claims asserted against Lynden, Inc. in the *First Amended Master Complaint (B3 Bundle)* conflict with the comprehensive federal response scheme set forth in the Clean Water Act, the Oil Pollution Act, and the National Oil and Hazardous Substances Pollution Contingency Plan,[24] because federal law compelled Lynden Air Cargo, LLC to obey the daily directives issued by the Federal On-Site Coordinator and/or the Federal On-Site Coordinator's representative(s) in responding to the DEEPWATER HORIZON oil spill – the only oil spill to date designated as a Spill of National Significance. Accordingly, Lynden, Inc. is entitled to summary judgment and the remaining claims of the *First Amended Master Complaint (B3 Bundle)* should be dismissed pursuant to the doctrine of implied conflict preemption.

V. CONCLUSION

For the foregoing reasons and for those contained in the Joint Memorandum the Clean-Up Responder Defendants submitted, Lynden, Inc. respectfully requests this Court to grant summary judgment, recognizing that Lynden Air Cargo, LLC enjoys derivative immunity under

---

[24] The National Oil and Hazardous Substances Pollution Contingency Plan is more commonly called the National Contingency Plan or NCP, and it is the federal government's blueprint for responding to both oil spills and hazardous substance releases. The National Contingency Plan is the result of the United State Government's efforts to develop a national response capability and promote overall coordination among the hierarchy of responders and contingency plans.

–15–

the Clean Water Act and/or the Federal Tort Claims Act and/or that the doctrine of implied conflict preemption bars plaintiffs' claims asserted in the *First Amended Master Complaint (B3 Bundle)*. Therefore, because the plaintiffs seek relief against Lynden, Inc. based upon the conduct of Lynden Air Cargo, LLC, which company enjoys immunity, Lynden, Inc. is entitled to summary judgment, dismissing with prejudice the allegations plaintiffs' set forth against it in their *First Amended Master Complaint (B3 Bundle)*.

        Respectfully submitted,

        s/*Kevin R. Tully*

**KEVIN R. TULLY - BAR #1627**
**H. CARTER MARSHALL - BAR #28136**
**CHRISTOVICH & KEARNEY, LLP**
Suite 2300
Pan American Life Center
601 Poydras Street
New Orleans, Louisiana 70130-6078
Telephone: (504) 561-5700
Attorneys for Lynden, Inc.

–17–

## **CERTIFICATE**

I hereby certify that the above and foregoing Memorandum in Support of Lynden, Inc.'s Motion for Summary Judgment on Derivative Immunity and Preemption Grounds has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 18th day of May 2012.

                s/*Kevin R. Tully*
                KEVIN R. TULLY
                H. CARTER MARSHALL