## CHARTER AGREEMENT
## OIL SPILL DISPERSANT SPRAYING SERVICES

This Agreement is entered into this 26th day of April, 2010, between Lynden Air Cargo, LLC (Carrier) with offices at 6441 South Airpark Place, Anchorage, Alaska 99502 and BP Exploration Inc. (Charterer), with offices at 501 Westlake Park Blvd., Houston, Texas 77494.

Whereas Charterer is managing a spill response operation in the Gulf of Mexico due to the Deepwater Horizon drill rig accident April 20, 2010, and;

Whereas Carrier is an operator of Lockheed L382G Hercules aircraft with experience in providing spray services utilizing the Biegert ADDS pack system and is available to provide these services to Charterer;

Now, therefore, the Carrier and Charterer hereby agree as follows:

1. SERVICES

    a. Charterer to provide aircraft(s) with Biegert ADDS pack system(s) on standby at Stennis International Airport or other such location as is mutually agreed in writing by the parties
    b. One Biegert ADDS pack system is provided by Clean Caribbean & Americas under separate contract to Charterer
    c. One Biegert ADDS pack system is provided by Alyeska Pipeline Service Company/SERVS to Charterer
    d. Carrier to provide spray services in the Gulf of Mexico as directed by Charterer
    e. Spotter aircraft to be provided by Charterer

2. INDEMNIFICATION

    Charterer agrees to defend, protect and indemnify Carrier from all claims, losses, liabilities, suits, fines or other damages (collectively, "Claims") resulting from the provision of Services including without limitation any Claims for environmental damages caused by dispersant. Charter will provide written authorization from the Unified Command and any other appropriate governmental authorities for use of dispersants and spraying in the area covered by this Agreement.

3. TERMS AND CONDITIONS

    All terms and conditions per Attachment A shall apply.

EXHIBIT B

**Highly Confidential**
Pursuant to CMO 13

LYN-00160

4. DURATION OF AGREEMENT

The initial term of this Agreement will be from April 25, 2010, the date of the first positioning flight by Carrier from Anchorage, Alaska and continue as Charterer requires.

5. NOTICES

All notices, advisories, authorizations, or changes applying to this Agreement shall be sent as follows:

LYNDEN AIR CARGO, LLC
6441 SOUTH AIRPARK PLACE
ANCHORAGE, ALASKA 99502
ATTN: JUDY MCKENZIE
PHONE: 907-249-4100
CELL: 907-230-4917
EMAIL: judy@lynden.com
24 HOUR PHONE: 907-249-0225

BP EXPLORATION, INC.
501 WESTLAKE PARK BLVD
HOUSTON, TEXAS 77494
ATTN: STEVE SAUTEL
PHONE: 907-339-4640
CELL: 907-440-0827
EMAIL: Steve.Sautel@bp.com

6. ENTIRE AGREEMENT

This Agreement, including all attachments herein, shall constitute the entire agreement and understanding between the parties concerning the subject matter herein, and all prior agreements, understandings and commitments with respect to the subject matter herein are merged into this Agreement. No changes, alterations or modifications to this Agreement shall be effective unless in writing and signed by the parties hereto.

LYNDEN AIR CARGO, LLC

By _Judy A. McKenzie_ (signature)

Judy A. McKenzie
(name)

President
(title)

BP EXPLORATION, INC.

By _[signature]_
(signature)

Steve Sautel
(name)

BP Logistics
(title)

**Highly Confidential**
Pursuant to CMO 13

LYN-00161

ATTACHMENT A



**LYNDEN AIR CARGO, LLC**

6441 South Airpark Place, Anchorage, Alaska 99502
Charters: 888-243-7248 or 907-249-0256
Facsimile: 907-257-5124   www.lac.lynden.com

## AGREEMENT OF AIRCRAFT CHARTER

Charter # 674

| CHARTERER | | CONSIGNEE | |
|---|---|---|---|
| Name | | Name | |
| BP | | | |
| Contact | | Contact | |
| JOHN T HUSUM | | | |
| Street Address | | Street Address | |
| 501 WESTLAKE PARK BLVD | | | |
| City/State/Country/Zip | Phone | City/State/Country/Zip | Phone |
| HOUSTON, TX 77494 | 281-366-8999 | | |

| BILLING | | DESCRIPTION OF SERVICE | |
|---|---|---|---|
| Name | | AIRCRAFT TYPE : L382G | |
| BP | | PAYLOAD : ADDS PAC | |
| Mailing Address | | Actual payload shall be limited to either weight or volume and is approximately only and not guaranteed. Operating conditions may result in increase or decrease in weight limit. | |
| City/State/Country/Zip | Phone / Fax | | |
| Approx. Date to Start | Airport of Departure | Intermediate Traffic/Entry Port | Airport of Destination |
| April 25, 2010 | ANC | OPF | HSA/ANC |

| CREDIT | | CHARGES | |
|---|---|---|---|
| Credit Terms : ACCOUNT | | Charter Price | REDACTED |
| (if applicable) | | Load/Unload | |
| Payables Contact : | | Excess Value | |
| Payables Phone : | | Trans tax | REDACTED |
| Payables Fax : | | Other | |
| | | | REDACTED |
| Credit Check | | TOTAL (1 flight) | |
| Credit Terms OK | | Demurrage Rate | |

| CARGO | RELEASE VALUE |
|---|---|
| Commodity(ies) | Carrier's liability is limited and all goods shall have a release valuation as set forth in the terms and conditions which follow, unless a higher valuation is given and approved by Carrier in the space immediately below: |
| Volume | |
| Weight | Declared Higher Value : |
| Dimensions | Carrier's Acceptance : |

### SPECIAL AGREEMENTS

REDACTED

Lynden Air Cargo, LLC (Carrier) agrees to charter to Charterer, and Charterer agrees to charter from Carrier, the aircraft for the flight, itinerary, service and/or period identified pursuant to the terms and conditions which are attached hereto and which are also set forth at www.lac.lynden.com.

EXECUTED ON April 26, 2010 AT ANCHORAGE, AK.

| Charterer's Authorized Signature | Carrier's Authorized Signature |
|---|---|

1

Highly Confidential
Pursuant to CMO 13

LYN-00162

**LYNDEN AIR CARGO, LLC**

6441 South Airpark Place, Anchorage, Alaska 99502
Charters: 888-243-7248 or 907-249-0256
Facsimile: 907-257-5124   www.lac.lynden.com

| | |
|---|---|
| Printed Name and Title | Printed Name and Title |
| | Jim Davis, Director of Marketing & Traffic |

2

**Highly Confidential**
Pursuant to CMO 13

LYN-00163


# TERMS AND CONDITIONS

1. Basic Agreement. Charterer and Carrier agree that the following terms and conditions shall be exclusively applicable to this charter and to the cargo, from the point at which Carrier has received the cargo for shipment until the cargo is tendered or made available to the Consignee for delivery, except as otherwise noted herein.

2. Definitions. In this charter: the term "Carrier" means Lynden Air Cargo, LLC, an Alaska limited liability company; the term "Charterer" means the party identified as such on the face as well as the owner, shipper, Consignee and anyone with right of claim to or through the cargo; the term "Consignee" means the party identified as such by Charterer on the face; the term "cargo" means those items tendered by Charterer to Carrier for transportation which are described on the face and/or on the air waybill.

3. Charter Price, Charges and Related Provisions.

    A. Price. Charterer shall pay Carrier the charter price which is set forth on the face, which shall be deemed irrevocably earned unless transportation hereunder is canceled, in which event the provisions of subsection 4.D. below shall apply.

    B. Layover and Demurrage. The parties shall allow a maximum of two (2) hours layover at the points of origin and destination, and one (1) hour layover at any scheduled stop, for loading and unloading, customs clearance and similar matters, without any additional charge. Layovers in excess of the foregoing and all other delays caused by Charterer and/or the cargo shall be charged to Charterer at the demurrage rate set forth on the face. Such delay shall include, without limitation, unavailability of cargo for loading at the time specified, inadequate or unacceptable packaging, delay in receipt of operational permits, inadequate customs documentation, delay caused by inadequate paperwork, delay in customs clearance (for any reason) and delay during loading or unloading caused by Charterer and/or the cargo.

    C. Expenses, Charges and Advances. All fuel, oil, crew salary, crew expense, aircraft maintenance and aircraft landing and handling fees shall be paid by Carrier. All other expenses, charges and costs, including, without limitation, transportation taxes, foreign taxes, levies, non-objection fees, duties, royalties, special or accessorial services (storage, surface transportation, dunnage, bracing, etc.) requested by Charterer or necessary for the cargo, and all other costs in connection with the cargo and/or this charter, shall be paid for by Charterer; any advances or disbursements made by Carrier for Charterer or the cargo shall be promptly reimbursed by Charterer.

    D. Payment and Interest. Charterer shall pay Carrier the charter price prior to flight departure. Carrier shall invoice Charterer for all other charges, expenses and advances, with payment due upon presentation of invoice. All payments shall be made without deduction or setoff. Amounts which are due but unpaid shall accrue interest at a rate of one and one-half percent (1½%) per month or the highest rate allowed by law, whichever is less, until paid in full.

3

**Highly Confidential**
Pursuant to CMO 13

LYN-00164

E. <u>Collection, Lien and Related Rights.</u> Charterer shall remain responsible for all sums due hereunder until fully paid. Carrier shall have a lien which shall survive delivery upon all cargo to secure full payment of amounts due under this charter. In the event any such amounts are not paid, Carrier may enforce its lien and at any time dispose of or sell the cargo or any portion thereof, publicly or privately and without notice to Charterer, and may collect sums due from the proceeds. Charterer shall pay for or reimburse Carrier for its costs related to any efforts to collect amounts due hereunder, including legal fees and costs. Charterer additionally grants Carrier a consensual lien on all cargo subsequently carried by Carrier for Charterer to secure payment of sums due under this charter.

4. <u>Carrier's Rights and Responsibilities.</u>

A. <u>Exclusive Control and Performance.</u> Carrier shall have exclusive direction and control over the aircraft, its crew and passengers, and all cargo on board. Carrier agrees to undertake to provide the transportation services with due diligence but does not guarantee any speed, route, departure or arrival time or date. Carrier shall be entitled to subcontract the whole or any part of the transportation services, and each such subcontractor shall be entitled to all rights, benefits, defenses, limitations and/or immunities available to Carrier pursuant to this charter.

B. <u>Liberties.</u>
   1) Carrier shall be at liberty to: make interim stops for fuel, supplies, repairs and to receive and discharge cargo for others; utilize the payload on positioning and depositioning flights and any available payload not utilized by Charterer, and the revenue generated from the transportation of such items, shall be retained by Carrier and shall not reduce or offset the charter price; take whatever steps and do whatever actions it deems necessary for the protection of itself, the aircraft, pilots and passengers, including, without limitation, the substitution of another aircraft, making collect communications, disposing of cargo without instruction and/or tendering transportation of the cargo to other carrier(s). Carrier shall also be excused from delay or inability to perform caused by circumstances beyond its reasonable control.

   2) Due to Carrier's unique aircraft and its capability to provide air dispersant services, it is understood and agreed that this charter is subject to Carrier's prior commitment to an emergency response entity requiring that the aircraft be available to such response entity within a limited time frame. In the event of receipt of notice of activation for such emergency response, Carrier shall immediately notify Charterer and this charter may be delayed or terminated.

C. <u>Right of Refusal.</u> Carrier may refuse carriage of cargo which, in its sole discretion: is improperly packaged; is not suitable for carriage; is hazardous/dangerous; exceeds the operational capacity of the aircraft; cannot be loaded within the allotted space; cannot be transported in accordance with applicable laws and regulations; or, has an aggregated value in excess of $1,000,000 with no prior special arrangements having been made.

4

**Highly Confidential**
Pursuant to CMO 13

LYN-00165

D. Cancellation. Transportation shall be canceled if Charterer fails to deliver the cargo to the aircraft at the point of departure within three (3) hours of the scheduled flight departure time. If transportation is canceled pursuant to this subsection, Charterer shall pay the following amount to Carrier: if canceled 16 or more days in advance, 20% of the charter price; if canceled between 8 and 15 days in advance, 50% of the charter price; if canceled 7 days or less in advance, 90% of the charter price. The date of intended flight departure shall be used for calculating how long in advance cancellation occurred. Said amount is not to be deemed a penalty, but rather shall be paid to Carrier for Carrier's actual expense and damage caused by cancellation.

E. Termination. Carrier may terminate this charter without notice if Charterer breaches any provision hereof or if Carrier, in its sole discretion, determines that the transportation of the cargo would be unsafe or in violation of any applicable law, rule or regulation. In the event of cancellation pursuant to this subsection, the cargo shall be returned to Charterer, its agent or assign, at Charterer's sole cost and expense, at the point of receipt by Carrier.

5. Charterer's Rights and Responsibilities.

A. Air Waybill and Disclosure. Prior to flight departure, Charterer is required to complete and deliver to Carrier an air waybill setting forth: the date/place of completion; places of departure/interim stops/destination; name/address of consignee; precise nature of the cargo; number of packages; method of packing; particular marks/numbers used; weight/quantity/volume/dimensions of cargo; actual condition of cargo and its packaging at time of tender for shipment; and, any special circumstances/conditions/handling information. Charterer warrants the completeness and accuracy of the foregoing information; Carrier shall not be responsible for checking or confirming Charterer's disclosures, and shall be entitled to rely upon the completeness and accuracy thereof. The air waybill shall be considered a receipt only and not the contract for transportation of the cargo. In the event of any conflict between this charter and the air waybill, this charter shall prevail.

B. Hazardous Cargo. Charterer shall not tender to Carrier any cargo which is hazardous or dangerous without prior notification to and the assent of Carrier, verbal or otherwise, with Charterer to be responsible for a full disclosure of the nature of the cargo, any hazards/dangers associated therewith, special handling/packing/packaging, and compliance with all regulatory requirements. Notwithstanding acceptance of such cargo by Carrier for shipment, Charterer shall remain responsible for all loss and damage resulting from the hazardous/dangerous character of said cargo, whether to Carrier and/or its employees and property or to other persons or property.

C. Preparation and Delivery of Cargo. Charterer shall deliver the cargo to Carrier at the time and place indicated on the face, properly prepared, labeled, securely packaged, loaded and ready for transportation by aircraft. Upon request by Carrier, Charterer shall also provide skids or bases to reduce the floor-bearing weight of individual pieces, and such skids/bases shall be included in Charterer's disclosure to Carrier as to the weight of cargo to be transported.

D. Couriers. Upon approval by Carrier (which approval shall not be reasonably withheld), couriers may accompany cargo for the safety and protection thereof in accordance with Federal Aviation Administration's regulations and limitations relating to couriers.

5

**Highly Confidential**
Pursuant to CMO 13

LYN-00166

E. **Other Responsibilities.** Charterer shall be responsible for loss or damage to the aircraft or other property aboard the aircraft, including expense, claim, liability and/or suit associated therewith, caused by or attributable to Charterer, its employees and/or the cargo. Charterer shall also be responsible for any other matter allocated to it pursuant to this charter, including loss, damage, expense, claim, liability and/or suit associated therewith, to include all matters not specifically allocated to Carrier. Charterer agrees to indemnify and hold harmless (including legal fees and costs) Carrier of and from the foregoing responsibilities.

6. **Liability and Indemnity.** Carrier's liability with respect to the goods, Charterer, Consignee and/or any other party claiming with respect to the goods and whether for loss, damage, delay, shortage, misdelivery, failure to delivery or otherwise, shall be only as follows:

   A. **Exceptions.** Carrier shall not be liable for loss, damage, delay or other result caused by:

      1. acts of God, perils of the air, fire, acts of war, public enemies, public authorities acting with actual or apparent authority in the premises, authority of law, quarantine, riots, unavailability in whole or part of aircraft fuel, hijacking, sabotage, strikes, civil commotion, hazards or dangers incident to war or nuclear risk or any other circumstance beyond the actual control of Carrier;

      2. the act or default of Charterer or Consignee;

      3. the nature of the cargo or any defect, characteristic or inherent vice thereof;

      4. violation by Charterer or Consignee of any term or condition contained in or incorporated into this charter, including, without limitation, improper packing, securing, marking or addressing, and/or failure to observe any of the terms or conditions relating to shipments not acceptable for transportation or acceptable only under certain conditions;

      5. compliance with the delivery provisions from Charterer or noncompliance with special instructions not authorized herein; or

      6. shortage of cargo loaded and sealed in containers or other packages by Charterer providing the seal is unbroken at time of delivery and the container or other package retains its basic integrity.

   B. **Consequential Damages.** Neither Carrier nor Charterer shall not be liable for any consequential or special damages of any type howsoever arising, whether loss of income or profits or otherwise and whether or not Carrier had or should have had knowledge that such might occur.

   C. **Limitation of Liability.** Charterer agrees that unless a higher value is declared on the face hereof Carrier's liability for loss, damage or otherwise with respect to the cargo is limited to fifty cents ($.50) per pound actual weight of the cargo so lost or damaged or actual loss or damage with respect to said cargo, whichever is less.

6

**Highly Confidential**
Pursuant to CMO 13

LYN-00167

D. **Higher Value.** Charterer may declare a higher value for the cargo than the foregoing, in which event such declaration must be inserted by Charterer on the face hereof and Charterer must pay to Carrier seventy five cents ($.75) for each one hundred dollars ($100) or fraction thereof value declared. In the event of such declaration of higher value and loss, damage or other failure to deliver such cargo, Carrier's liability for such loss or damage shall be limited to the declared value or the actual loss or damage with respect to said cargo, whichever is less.

E. **Delivery in Good Condition.** Receipt by the Consignee of the cargo without written notification of damage on the delivery receipt shall be prima facie evidence that the cargo has been delivered to Consignee in the same good condition, count and order as when received by Carrier.

F. **Claims.** As a condition precedent to recovery against Carrier:

1. The cargo must be carefully inspected at delivery and any loss or damage then evident must be noted on Carrier's copy of the air waybill.

2. In the event of loss or damage not ascertainable at delivery, written notice thereof must be given to Carrier within fifteen (15) days following delivery, after which time it shall be conclusively presumed the cargo was delivered in the same condition and count as when received by Carrier.

3. In the event of cargo which has been lost or otherwise not delivered, Carrier must be given written notice of said loss or failure to deliver within 15 days from the date upon which the cargo should have been delivered.

4. Carrier shall have a reasonable opportunity to inspect the cargo, packing and packaging in the same condition as received by Charterer and/or Consignee and before alteration or destruction.

5. Written claim for loss or damage specifying the particulars thereof must be filed with Carrier within nine (9) months of the date of delivery or date by which the cargo should be been delivered.

6. Suit against Carrier must be filed two (2) years following date of delivery of the cargo or date by which the cargo should have been delivered.

7. There shall be no recovery against Carrier until the charter price and all other sums due Carrier pursuant to this charter have been paid in full.

7. **International Flights.** In the event of an international shipment, the transportation of the cargo and Carrier's liability hereunder shall be subject to the Convention for the Unification of Certain Rules Relating to International Carriage By Air signed at Warsaw in October of 1929 as amended by any protocol to which the United States is signatory; any provision hereof contrary to said convention shall be deemed superseded and amended by the applicable provision(s) of said convention, but all remaining terms and conditions shall continue to be applicable.

8. **Law, Jurisdiction and Legal Fees.** This charter shall be governed by the laws of the state of Alaska, and any dispute arising out of or in connection with this charter and/or the transportation of the cargo hereunder shall be brought in state or federal court located in Anchorage, Alaska, with the substantially prevailing party to recover its reasonable legal fees and costs.

7

**Highly Confidential**
Pursuant to CMO 13

LYN-00168

9. <u>Integration and Headings</u>. This document, the air waybill and any agreed attachments hereto constitute the entire agreement between the parties with respect to the transportation of the cargo, superseding and negating all prior or contemporaneous agreements, written and oral. This agreement may not be modified or amended except by a writing signed by both parties. The headings used herein are for convenience only, are not substantive and may not be used to interpret the agreement between the parties.

8

**Highly Confidential**
Pursuant to CMO 13

LYN-00169