UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | ) ) ) ) ) ) | MDL NO. 2179  SECTION:  J JUDGE BARBIER MAGISTRATE JUDGE SHUSHAN |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) ) ) ) ) | |

**WOODS HOLE OCEANOGRAPHIC INSTITUTION'S OPPOSITION TO BP'S OBJECTION TO AND APPEAL FROM MAGISTRATE JUDGE'S ORDERS REGARDING PRODUCTION OF WOODS HOLE ANALYSIS DOCUMENTS [REC. DOC. 6522]**

On May 8, 2012, Magistrate Judge Shushan entered an order [Rec. Doc. 6463] affirming her decision [Rec. Doc. 6304] to protect from disclosure certain deliberative e-mails, drafts, and other internal communications ("analysis documents") related to the purely academic work performed by scientists at Woods Hole Oceanographic Institution ("WHOI") on the *Deepwater Horizon* oil spill.  Although the Magistrate Judge correctly recognized that analysis documents written by scientists in preparation for publication in academic journals are afforded protections from discovery, the Court determined that the protection should only be extended to documents created after March 10, 2011, the date the Flow Rate Technical Group's ("FRTG") final report was published.  [*See* Rec. Doc. 6304, at 11.].  As demonstrated below, and in prior briefing, BP has not met its burden to show the Magistrate Judge's determination to protect some, but not all, analysis documents was clearly erroneous or contrary to law in balancing the interests of both parties.

As background, WHOI is the largest independent oceanographic research institution in the United States and has been in existence since 1930. *See, e.g.*, WOODS HOLE OCEANOGRAPHIC INSTITUTION, http://www.whoi.edu/about (last visited May 17, 2012).  It is a

fully-accredited, private, nonprofit research and higher education facility dedicated to marine science and engineering, and to the education of marine researchers.  *Id.*  Further, WHOI, in a joint program with MIT, awards post-graduate degrees in numerous oceanographic programs including marine geology and chemical oceanography.  *Id.*

 Because of this expertise, WHOI's faculty and students annually research and publish countless studies on the ocean and the maritime environment.  As the *Deepwater Horizon* oil spill was the largest oil spill in United States' waters in history, it is unsurprising that many of WHOI's researchers, scientists, and students have spent (and continue to spend) a considerable amount of time studying various aspects of this disaster and both the current and potential future implications for the oceans and marine life.  Two of the many papers WHOI scientists have written about the *Deepwater Horizon* incident—one related to the acoustic measurement of the oil well's flow rate and the other concerning hydrocarbon sampling and analysis of the oil from the spill—are the subject of the present subpoena seeking the pre-publication deliberative and internal analysis documents of scientists.[1]

 Federal courts—and particularly the First Circuit and the District of Massachusetts where the subpoena was issued[2]—recognize the important and often critical work scientists do and the need to protect them, where possible, from the risk of public assault in the courtroom.  *See, e.g.*, *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (holding that need for the professors' notes, tape recordings, and transcripts of interviews solely for impeachment was not great when weighed against the professors' "future research efforts but also those of other

---

[1]  *See* C. Reddy, et al, *Composition and fate of gas and oil released to the water column during the* Deepwater Horizon *oil spill*, PNAS; and R. Camilli, et al, *Acoustic Measurement of the* Deepwater Horizon *Macondo well flow rate*, PNAS Early Edition.

[2]  An MDL court "acts as a judge of the [subpoena-issuing] court" when resolving discovery disputes.  *U.S. ex rel. Pogue v. Diabetes Treatment Cntrs. of Am., Inc.*, 444 F.3d 462, 469 (6th Cir. 2006).  Although First Circuit law is not necessarily binding in this instance, "the law of the [subpoena-issuing] forum . . . merits close consideration."  *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987).

similarly situated scholars"); *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 249 F.R.D. 8, 14 (D. Mass. 2008) (holding emails and communications between authors and journal editors need not be disclosed because, while relevant, the materials only use was for the impeachment which would harm "both its journalistic and scholarly missions, and by extension harmful to the medical and scientific communities, and to the public interest"). These cases reflect a valid and strong concern that if researchers' pre-publication internal debates, drafts, and discussions are subject to subpoena, then full and honest academic debate will be stifled.

While this interest must be balanced with a party's rights to discovery, WHOI has in this instance provided BP with all the necessary documents to reproduce, analyze, and challenge its published papers. BP has no valid need for more. BP's only reason in seeking these internal emails and documents—and particularly those that post-date August 10, 2010, the date that WHOI submitted its final report on the flow rate to the USCG—can be the hope that BP might uncover material it could use to embarrass and harass WHOI's scientists. For fuller detail and arguments on scholastic privilege and the protections given to academic freedom, WHOI respectfully refers the Court to WHOI's extensive briefing of the issues found in its prior submissions to the Magistrate Judge. [*See, e.g.*, Rec. Doc. 6361 (WHOI's motion for reconsideration); Rec. Doc. 6539 (WHOI's reply to BP's motion for reconsideration); Rec. Doc. 6268 (WHOI's April 5, 2012 letter to the Court); Rec. Doc. 6105 (WHOI's March 15, 2012 letter to the Court).]

Although the Magistrate Judge correctly determined that the scholastic privilege applied to analysis documents, WHOI disagrees with the date used by the Court, March 10, 2011. By ordering the production of documents dated between August 10, 2010, and March 10, 2011, the court compelled the disclosure of a substantial number of analysis documents related solely to

WHOI's academic work, which directly contravenes the substance of the April 20 Order. Nearly all the scientific writing, analysis, and deliberative discussions among and between the numerous academics involved in the production of these articles, both in and outside of WHOI,[3] occurred before March 10, 2011, the date that Magistrate Judge Shushan selected as a proxy to divide documents that should and should not be produced. This disconnect exists because the articles were drafted in the fall of 2010 and then submitted on January 25, 2011, well before the Magistrate Judge's cut-off date. As a consequence, BP has already received a windfall as a result of these Orders. If this Court were to take any action on the Magistrate Judge's Orders, it should be to extend the scholastic privilege to all analysis documents that concerned the journal publications, whether created before or after March 10, 2011, as requested in WHOI's motion for reconsideration of the April 20 Order.

In light of the extensive briefing that took place before Magistrate Judge Shushan, WHOI incorporates by reference each of its prior motions and letters to the Court regarding the protection to be afforded to academic work.

---

[3]  In addition to WHOI's faculty members Dr. Richard Camilli and Dr. Christopher Reddy, the international team of authors involved with the two relevant papers includes Dr. G. Todd Ventura of the University of Oxford, Prof. J. Samuel Arey of the Swiss Federal Institute of Technology at Lausanne, Prof. Alexandra Techet of MIT, Dr. Daniel Di Iorio of the University of Georgia, and Dr. Louis Whitcomb of Johns Hopkins University.

Dated:  May 18, 2012                                  Respectfully submitted,


  /s/ Dahlia S. Fetouh
Dahlia S. Fetouh (BBO # 651196)
Christopher C. Land (BB0 # 624852)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109-2881
P: 617-570-1000
F: 617-523-1231
dfetouh@goodwinprocter.com
cland@goodwinprocter.com

5

**CERTIFICATE OF SERVICE**

I, Dahlia S. Fetouh, herby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that a copy of this pleading will be sent directly via first-class and electronic mail to counsel for BP, on this 18th Day of May, 2012.[4]

    /s/ Dahlia S. Fetouh_____
    Dahlia S. Fetouh

---

[4] Should the Court so direct, WHOI will register with LexisNexis File & Serve and serve all parties via that method, pursuant to the terms of Scheduling Order No. 12.