UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179<br><br>SECTION: J |
| THIS DOCUMENT RELATES TO:<br><br>*ALL CASES IN PLEADING BUNDLE SECTION III.B(3)* | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

## INTERNATIONAL AIR RESPONSE, INC.'S STATEMENT OF UNCONTESTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Now into Court, through undersigned counsel, comes defendant International Air Response, Inc. to: (1) adopt the *Joint Statement of Undisputed Material Facts in Support of Clean-Up Responder Defendants' Motions for Summary Judgment on Derivative Immunity and Preemption Grounds*; and (2) supplement that *Joint Statement* with the following specific facts as to defendant International Air Response, Inc.

1. International Air Response, Inc. is an Arizona company with its principal place of business and base of operations at the Phoenix-Mesa Gateway Airport (KIWA), Mesa, Arizona.

2. International Air Response, Inc. provides specialized aerial services and aircraft to government and private sector customers in the United States and internationally.

3. International Air Response, Inc. owns, operates, leases, sells, and maintains various types of utility and transport aircraft. International Air Response, Inc.

offers various services, including aerial delivery; aerial dispersant; oil spill response; agricultural pest control; aerial research, development, test, and evaluation; military parachute training; transportation of oversized/specialized cargo; delivery of humanitarian aid to remote areas; and aerial firefighting services.

4. On September 1, 2006, IAR entered into a contract with Marine Spill Response Corporation entitled *Agreement for the Provision of Dispersant Services by and Between Marine Spill Response Corporation and International Air Response, Inc*. This Agreement was amended three times: Amendment No: M002, dated January 15, 2009, Amendment No: M003, dated April 20, 2010; and Amendment MOO4, dated June 24, 2010.

5. In the hours following the explosion on the DEEPWATER HORIZON on April 20, 2010, Marine Spill Response Corporation contacted IAR for assistance pursuant to the above-referenced *Agreement for the Provision of Dispersant Services by and Between Marine Spill Response Corporation and International Air Response, Inc*.

6. On April 21, 2010, IAR's C-130A Hercules aircraft, registration number N117NT, departed from its Arizona base with six crewmen bound for the NASA Stennis Space Center Airport in Mississippi.

7. During the DEEPWATER HORIZON response, Billy Grantham, the Chief Financial Officer and Director of Business Development of International Air Response, Inc., acted as International Air Response, Inc.'s on-scene director in Stennis, Mississippi, both overseeing and flying oil spill response and aerial dispersant missions throughout the Gulf of Mexico.

8. Throughout the DEEPWATER HORIZON response efforts, International

Air Response, Inc. was subject to the ultimate authority and direction of the federal government as directed by the Unified Area Command. Under the Government's supervision and authorization, International Air Response, Inc.'s aircraft and personnel applied approved oil dispersants to the surface of the water in the Gulf of Mexico.

9. The Dispersant Group in the Operations Section at the Incident Command Post in Houma, Louisiana, managed all aerial dispersant operations during the DEEPWATER HORIZON response.

10. The Dispersant Group at Incident Command Post – Houma conducted operations from two airports – the NASA Stennis Space Center in Mississippi and the Houma-Terrebonne Airport in Houma, Louisiana.

11. Each airport had a liaison to the Dispersant Group at Incident Command Post – Houma, such that the Incident Command Post was privy to all of the details of the operations going on at the two airports.

12. Operations at both airports had separate spray aircraft and spotter aircraft, such that all dispersant spray aircraft were accompanied by a spotter aircraft to ensure no boats or platforms were located in the planned dispersant deployment area.

13. International Air Response, Inc.'s personnel did not participate in the aerial dispersant operations conducted out of the Houma-Terrebonne Airport.

14. United States Government approval was required and obtained for all aerial dispersant operations and such authorization came exclusively from the Federal On-Scene Coordinator.

15. The federal government provided Instructions on where, when, and how to apply dispersants and at all times monitored the aerial dispersant operations to ensure the

operations were conducted safely and according to the government's directives.

16. During the DEEPWATER HORIZON response International Air Response, Inc. was not involved with any sub-sea dispersant operations.

17. During the DEEPWATER HORIZON response International Air Response, Inc. was not involved with any *in situ* burning operations.

18. During the DEEPWATER HORIZON response International Air Response, Inc. was not involved with any skimming of oil operations.

19. During the DEEPWATER HORIZON response International Air Response, Inc. was not involved with any beach clean-up efforts.

20. During the DEEPWATER HORIZON response International Air Response, Inc. was not involved with decontaminating vessels.

21. At all times, International Air Response, Inc.'s employees participating in the DEEPWATER HORIZON response efforts followed the instructions relayed in the Incident Action Plans, which contained detailed instructions concerning the authorized response activities that were to occur each day.

22. The Unified Area Command determined applicable safety equipment to use and International Air Response, Inc. complied with all such determinations throughout International Air Response's involvement in DEEPWATER HORIZON clean-up response.

23. Employees of International Air Response, Inc., participating in the DEEPWATER HORIZON spill response efforts, were subject to the ultimate authority and direction of the Federal On-Scene Coordinator, the Federal On-Scene Coordinator representatives and/or other federal officials.

24. At all times during the DEEPWATER HORIZON response, International Air Response, Inc.'s employees complied with all governmental directives and authorizations relating to their functions and operations and those employees never exceeded those directives or authorizations.

Respectfully submitted,

s/*Kevin R. Tully*

KEVIN R. TULLY - BAR #1627
H. CARTER MARSHALL - BAR #28136
**CHRISTOVICH & KEARNEY, LLP**
Suite 2300
Pan American Life Center
601 Poydras Street
New Orleans, Louisiana 70130-6078
Telephone: (504) 561-5700
Attorneys for International Air Response, Inc.

**CERTIFICATE**

I hereby certify that the above and foregoing Statement of Uncontested Facts in Support of IAR's Motion for Summary Judgment on Derivative Immunity and Preemption Grounds has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 18th day of May 2012.

                                                                         s/*Kevin R. Tully*
                                                                         KEVIN R. TULLY
                                                                          H. CARTER MARSHALL