UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179 |
| | SECTION: J |
| THIS DOCUMENT RELATES TO: | JUDGE BARBIER |
| *ALL CASES IN PLEADING BUNDLE SECTION III.B(3)* | MAG. JUDGE SHUSHAN |

**MEMORANDUM IN SUPPORT OF INTERNATIONAL AIR RESPONSE, INC.'S MOTION FOR SUMMARY JUDGMENT ON DERIVATIVE IMMUNITY AND PREEMPTION GROUNDS**

International Air Response, Inc. ("IAR") joined with the other Clean-Up Responder Defendants to move this Court for Summary Judgment on Derivative Immunity and Preemption Grounds. IAR submits this short memorandum in further support of summary judgment.

As explained in the Clean-Up Responder Defendants' Joint Memorandum and attached documents and pleadings and as further shown here, IAR is entitled to an Order dismissing the remaining claims asserted against it in the *First Amended Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["B3 Bundle"], Complaint in Admiralty Rule 9(h)* [doc. 1812.].[1]

I.   INTRODUCTION

Plaintiffs set forth the following allegations specifically mentioning defendant IAR by

---

[1] As set forth in the Joint Memorandum the Clean-Up Responder Defendants filed, following the Court's ruling on various motions to dismiss filed by certain Clean-Up Responder Defendants, only two causes of action asserted in the Amended B3 Bundle Master Complaint remain against IAR: (i) negligence and (ii) gross negligence. *See First Amended Master Complaint ("B3 Bundle")*, [doc. 1812], Third Claim for Relief - ¶¶ 240-49 and (ii) Fourth Claim for Relief - ¶¶ 250-57.

1

name in their March 30, 2011, *First Amended Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["B3 Bundle"], Complaint in Admiralty Rule 9(h)* [doc. 1812]:

> Defendant International Air Response, Inc. ("IAR") is an Arizona Corporation with its principal place of business in Coolidge, Arizona and at all pertinent times was doing business in the State of Louisiana. IAR participated in the post-explosion Oil Spill remediation and response efforts.

*Id.,* ¶ 67.

> In addition to directing vessels at sea, BP coordinates and directs aircraft owned and/or operated by Defendants MSRC, O'Brien, Modern Group, NRC, Lane, Dynamic, ASI, ASI International, Lynden, IAR and others that fly out over the Gulf to spot oil slicks and to spray chemical dispersants to oil on the surface of the Gulf.

*Id.,* ¶ 122.

> IAR owns and operates at least one spray plane used in connection with BP's aerial spraying of chemical dispersants.

*Id.,* ¶ 140.

Based upon the plaintiffs' allegations, the facts and the governing law, IAR is entitled to summary judgment because IAR enjoys: (1) derivative immunity under the Clean Water Act, 33 U.S.C. §1251, *et seq.*; (2) the Federal Tort Claims Act;[2] and/or (3) the claims in the *First Amended Master Complaint (B3 Bundle)* against the Clean-Up Responder Defendants are preempted.

II.  INTERNATIONAL AIR RESPONSE, INC.'S ROLE DURING THE OIL SPILL CLEAN-UP

IAR incorporates by reference the factual background the Joint Memorandum and the Joint Statement of Uncontested Material Facts filed by the Clean-Up Responder Defendants and

---

[2] Congress repealed and replaced the original Federal Torts Claims Act. Its provisions are now found at 28 U.S.C. §§1291, 1346, 1402, 2401, 2402, 2411, 2412 and 2671 to 2680.

–2–

provides briefly the following additional details regarding IAR's role in the DEEPWATER HORIZON disaster response.

Shortly after the explosion on DEEPWATER HORIZON, International Air Response, Inc. was called upon to assist the cleanup efforts by applying chemical dispersants.[3] The United States Government within the Incident Command System authorized and directed the oil spill response effort, including applying chemical dispersants to the affected sea.[4] The Clean-Up Responder Defendants participated in the DEEPWATER HORIZON spill response efforts in accordance with the roles, if any, assigned to them within the Unified Area Command System and the Incident Command Post.[5] Thus, the federal government exercised ultimate authority over and directed IAR's response role.[6]

Beginning the day after the DEEPWATER HORIZON explosion and continuing throughout the oil spill response, Incident Action Plans were prepared daily. Each Incident Action Plan contained detailed instructions concerning the response activities scheduled for the day. The Federal On-Site Coordinator or the Federal On-Site Coordinator's representative(s) reviewed, approved and signed each Incident Action Plan and then delivered the daily Incident

---

[3]  On September 1, 2006, IAR entered into a contract with Marine Spill Response Corporation entitled <u>Agreement for the Provision of Dispersant Services by and Between Marine Spill Response Corporation and International Air Response, Inc.</u>, produced in this litigation with bates numbers IAR 00152-234.  This Agreement was thrice amended:  Amendment No: M002, dated January 15, 2009, which is contained in the previously-listed bates numbered documents; Amendment No: M003, dated April 20, 2010, bates number IAR 00235-36; and Amendment MOO4, dated June 24, 2010,bates number IAR 00237.  *See* exhibit 1.

[4]  The Incident Command System is the organizational structure the United States Department of Homeland Security uses to execute the response to an oil spill of national significance.

[5]  *See Joint Stipulation of Fact Between the Clean-Up Responder Defendants and the United States of America*, ¶ 28, exhibit 2.

[6]  *See* Billy Grantham Declaration ¶ 9, exhibit 3. (Mr. Grantham became ill and was unable to sign the affidavit by the time IAR need to file this motion.  Mr. Grantham will sign the Declaration within the next few days after which IAR will move to supplement the record with the signed Declaration.)

Action Plan for execution by, among others, the Clean-Up Responder Defendants, including IAR. And, between April 21, 2010, and July 19, 2010,[7] the Federal On-Site Coordinator or the Federal On-Site Coordinator's representative(s) specifically authorized the use of dispersants Corexit® EC9500A and Corexit® EC9527A on the surface of the affected areas of the Gulf of Mexico.[8] At no time during the DEEPWATER HORIZON response was IAR involved with any sub-sea dispersant operations or *in situ* burning operations.[9]

At the outset of the response to an unparalleled oil spill disaster, IAR mobilized one C-130A Hercules aircraft, registration number N117NT, with its related equipment and personnel to assist in applying chemical dispersants.[10] Specifically, on April 21, 2010, N117TG departed Arizona with six crewmembers and headed to the NASA Stennis Space Center Airport in Mississippi. This aircraft thereafter operated from the NASA Stennis Space Center Airport.[11] At all times during the DEEPWATER HORIZON disaster response, IAR and its employees acted under the leadership of and at the direction of the Federal On-Site Coordinator, the Federal On-

---

[7] The last application of chemical dispersant to affected waters of the Gulf of Mexico occurred on July 19, 2010. *See Joint Stipulation of Fact Between the Clean-Up Responder Defendants and the United States of America*, ¶¶ 39-41.

[8] Defendant Nalco Company manufactured the dispersants Corexit® EC9500A and Corexit® EC9527A and both dispersants were as of April 20, 2010 and are still listed on the National Contingency Plan Product Schedule. *See Joint Stipulations of Fact Between the Clean-Up Responder Defendants and the United States of America*, ¶¶ 3-4.

[9] Grantham Declaration ¶¶ 13-14. Plaintiffs do not allege to the contrary. *See, e.g., First Amended Complaint ("B3 Bundle")*, ¶ 122.

[10] Grantham Declaration ¶ 7.

[11] Following the explosion and resulting oil spill, the United States Coast Guard established five Incident Command Posts in the following locations: Houston, Texas; Galveston, Texas; Houma, Louisiana; Mobile, Alabama; and Miami, Florida. *See Joint Stipulations of Fact Between the Clean-Up Responder Defendants and the United States of America*, ¶ 15. The NASA Stennis Space Center Airport operations were under the direction of the Houma Incident Command Post. *Also see* Grantham Declaration ¶ 10.

Site Coordinator's representatives and/or other federal officials.[12]  Throughout the DEEPWATER HORIZON disaster response, IAR and its employees complied with all government directives and authorizations relating to the application of chemical dispersants and IAR and its employees did not exceed those directions or authorizations.[13]

III.   LAW AND ARGUMENT

IAR incorporates by reference the applicable law forth in the Joint Memorandum and the Joint Statement of Uncontested Material Facts the Clean-Up Responder Defendants submitted, as well as the general application of that law to the claims against the Clean-Up Responder Defendants in the *First Amended Master Complaint (B3 Bundle)*.  In this section, IAR will further explain why it is entitled to derivative immunity and, alternatively, why the remaining claims against it in the *First Amended Master Complaint (B3 Bundle)* are preempted, such that IAR is entitled to summary judgment.

   A.   *IAR Enjoys Derivative Clean Water Act Immunity*

Because the "limited B3 discovery" confirms IAR performed the actions made the subject of the of the *First Amended Master Complaint (B3 Bundle)* pursuant to the authorization, direction, and ultimate control of the federal government, IAR shares in the federal government's broad immunity for such actions under the Clean Water Act.  *See* 33 U.S.C. §1321(j)(8)("The United States Government is not liable for any damages arising from its actions or omissions relating to any response plan required by this section.")[14]  Indeed, the Clean Water Act provides absolute immunity to the federal government in connection with oil spill response efforts and, to

---

[12] Grantham Declaration ¶ 20.  *See also Joint Stipulation of Fact Between the Clean-Up Responder Defendants and the United States of America*, ¶¶ 39-43.

[13] Grantham Declaration ¶ 21.

[14] This Court has affirmed that the United States is immune from claims "based on responder activities" under 33 U.S.C. §1321(j)(8).  *See* Nov. 18, 2011, Transcript at p. 56 [Rec. doc. 4786.]

protect the unique federal interests over this area of significant national concern, IAR must share in such immunity.[15] Consequently, this Court should grant summary judgment to IAR and dismiss all remaining claims pending in the *First Amended Master Complaint (B3 Bundle)* against IAR with prejudice.

Private entities such as IAR are entitled to derivative federal immunity when such private entities perform work pursuant to the authorization and direction of the federal government and here the actions about which plaintiffs complain fall squarely within the scope of those government directives and authorizations. *See Yearsley v. W.A. Ross Construction*, 309 U.S. 18, 20-21, 60 S.Ct. 413 (1940); *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 206-07 (5th Cir. 2009); *Myers v. United States*, 323 F.2d 580 (9th Cir. 1963); *Green v. ICI American, Inc.*, 362 F.Supp. 1263 (E.D.Tenn. 1973); *Dolphin Gardens, Inc. v. United States*, 243 F.Supp. 824 (D.Conn. 1965).[16] As explained in the Clear-Up Defendants' Joint Memorandum, without peradventure the federal government exercised its legitimate authority in directing the response

---

[15] The B3 Bundle plaintiffs failed to respond to the Court's ordered limited B3 discovery and hence it must be concluded they have no material facts to oppose the Clean-Up Responder Defendants' derivative immunity and implied preemption arguments.

[16] Indeed, the entire format established by Congress and set forth in the governing rules designed to respond to oil spills anticipates private companies will work with and at the direction of the United States. As such, those private companies are entitled to the immunities afforded the United States Government and its direct employees as a matter of sound public policy. *See, e.g., Filarsky v. Delia*, ___ U.S. ___, 132 S.Ct. 1657, 1665-66 (2012)("Affording immunity not only to public employees but also to others acting on behalf of the government similarly serves to 'ensure that talented candidates [are] not deterred by the threat of damages suits from entering public service.' [*Citation omitted.*] The government's need to attract talented individuals is not limited to full-time public employees. Indeed, it is often when there is a particular need for specialized knowledge or expertise that the government must look outside its permanent work force to secure the services of private individuals. * * * The City of Rialto certainly had no permanent employee with anything approaching those qualifications. To the extent such private individuals do not depend on the government for their livelihood, they have freedom to select other work – work that will not expose them to liability for government actions. This makes it more likely that the most talented candidates will decline public engagements if they do not receive the same immunity enjoyed by their public employee counterparts.")

to the DEEPWATER HORIZON oil spill and the subsequent environmental disaster. Throughout the federal government's unprecedented response to this Spill of National Significance,[17] IAR and its employees were subject to the ultimate authority and direction of the federal government within the Incident Command System and IAR did not exceed or disobey the government's directives at any time.[18]  Thus, IAR shares derivatively in the federal government's absolute immunity under the Clean Water Act.

> B. *Alternatively, IAR has Derivative Discretionary Function Immunity Under the Federal Torts Claims Act*

For essentially the same reasons, although this Court need not reach the issue, IAR enjoys derivative discretionary function immunity under the Federal Tort Claims Ac which bars claims against the federal government based upon the exercise or performance or the failure to exercise

---

[17]  *See* 40 CFR §300.232:

> (a)  A discharge may be classified as a spill of national significance (SONS) by the Administrator of EPA for discharges occurring in the inland zone and the Commandant of the USCG for discharges occurring in the coastal zone.
>
> (b)  For a SONS in the inland zone, the EPA Administrator may name a senior Agency official to assist the OSC in communicating with affected parties and the public and coordinating federal, state, local, and international resources at the national level.  This strategic coordination will involve, as appropriate, the NRT, RRT(s), the Governor(s) of affected state(s), and the mayor(s) or other chief executive(s) of local government(s).
>
> (c)  For a SONS in the coastal zone, the USCG Commandant may name a National Incident Commander (NIC) who will assume the role of the OSC in communicating with affected parties and the public, and coordinating federal, state, local, and international resources at the national level.  This strategic coordination will involve, as appropriate, the NRT, RRT(s), the Governor(s) of affected state(s), and the mayor(s) or other chief executive(s) of local government(s).

[18] Grantham Declaration ¶¶ 20-21.

–8–

or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused. *See* 28 U.S.C. §2680 which in pertinent part reads:

> §2680. Exceptions
>
> The provisions of this chapter and section 1346(b) of this title shall not apply to –
>
> (a)   Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
>
> * * *

*See also Hix v. United States Army Corp of Engineers*, 155 Fed. Appx 121, 125 (5th Cir. 2005)(recognizing that discretionary function immunity "also extends to contractors who work to implement programs as agents of the federal government"); *Bynum v. FMC Corp.*, 770 F.2d 556, 564 (5th Cir.1985)("[W]hen contractors as agents or officers of the federal government . . . work according to government specifications, they are entitled to assert the government's sovereign immunity in suits arising from that activity.")

As all Clean-Up Responders explained in their Joint Memorandum, the general principles of *Yearsley*, 309 U.S. 18, 60 S.Ct. 413, govern the issue of private entities' entitlement to derivative discretionary function immunity. *See also Chesney v. Tennessee Valley Authority*, 782 F. Supp. 2d 570, 581-82 (E.D. Tenn. 2011). Moreover, there is no doubt but that the federal government would enjoy discretionary function immunity for its actions in responding to the DEEPWATER HORIZON oil spill. Thus, because it is indisputable that the federal government validly conferred authority upon IAR during the response and IAR did not exceed such authority

or directions, IAR also enjoys derivative discretionary function immunity under the Federal Torts Claims Act.

> C. *Alternatively, the Claims Asserted in the First Amended Master Complaint (B3 Bundle) Against the Clean-Up Responder Defendants, including IAR are Preempted*

Although the Court need not reach this issue to grant IAR summary judgment, the remaining claims asserted in the *First Amended Master Complaint (B3 Bundle)* are also subject to dismissal in accord with the doctrine of implied conflict preemption under the unique circumstances of this case. As the Clean-Up Responder Defendants' Joint Memorandum sets forth, the claims asserted against IAR in the *First Amended Master Complaint (B3 Bundle)* conflict with the comprehensive federal response scheme set forth in the Clean Water Act, the Oil Pollution Act, and the National Oil and Hazardous Substances Pollution Contingency Plan,[19] because federal law compelled IAR to obey the daily directives issued by the Federal On-Site Coordinator and/or the Federal On-Site Coordinator's representative(s) in responding to the DEEPWATER HORIZON oil spill – the only oil spill to date designated as a Spill of National Significance. Accordingly, IAR is entitled to summary judgment and the remaining claims of the *First Amended Master Complaint (B3 Bundle)* should be dismissed pursuant to the doctrine of implied conflict preemption.

IV.   CONCLUSION

For the foregoing reasons and for those contained in the Joint Memorandum the Clean-Up Responder Defendants submitted, IAR respectfully requests this Court to grant summary

---

[19]  The National Oil and Hazardous Substances Pollution Contingency Plan is more commonly called the National Contingency Plan or NCP, and it is the federal government's blueprint for responding to both oil spills and hazardous substance releases. The National Contingency Plan is the result of the United State Government's efforts to develop a national response capability and promote overall coordination among the hierarchy of responders and contingency plans.

judgment, recognizing that IAR enjoys derivative immunity under the Clean Water Act and/or the Federal Tort Claims Act and/or that the doctrine of implied conflict preemption bars plaintiffs' claims asserted in the *First Amended Master Complaint (B3 Bundle)*. Wherefore, International Air Response, Inc., for the reasons set forth in the Clean-Up Responder Defendants Joint Motion for Summary Judgment and in the related, attached documents, and as further set forth here, prays for summary judgment and an Order, dismissing with prejudice the allegations plaintiffs' set forth against International Air Response, Inc. in their *First Amended Master Complaint (B3 Bundle)*.

Respectfully submitted,

s/*Kevin R. Tully*

**KEVIN R. TULLY - BAR #1627**
**H. CARTER MARSHALL - BAR #28136**
**CHRISTOVICH & KEARNEY, LLP**
Suite 2300
Pan American Life Center
601 Poydras Street
New Orleans, Louisiana 70130-6078
Telephone: (504) 561-5700
Attorneys for International Air Response, Inc.

## **CERTIFICATE**

I hereby certify that the above and foregoing Memorandum in Support of IAR's Motion for Summary Judgment on Derivative Immunity and Preemption Grounds has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 18th day of May 2012.

s/*Kevin R. Tully*
KEVIN R. TULLY
H. CARTER MARSHALL