**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO ON APRIL 20, 2010 | ) | MDL 2179 |
| | ) | JUDGE BARBIER |
| | ) | SECTION "J" |
| Member case: Duong, et al. v. BP America Production Company, et al., 12-814 | ) | MAGISTRATE JUDGE WILKINSON |
| | ) | MAG. DIV. 2 |

**MEMORANDUM IN SUPPORT OF BP DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING IMPLEMENTATION OF BP DEEPWATER HORIZON SETTLEMENT**

Plaintiffs in this lawsuit are 41 Vietnamese and Cambodian-American fishermen residing in Louisiana, Mississippi, and Texas. They allege that they are representative of a group of approximately 4,000 Vietnamese- and Cambodian-American fishermen who were affected by the BP Oil Spill and were discriminated against in the administration of the Vessels of Opportunity Program ("VoO Program"). Plaintiffs seek individual and class-wide damages under Section 1981 of the Civil Rights Act of 1866.

After this lawsuit was filed, certain parties to the BP Deepwater Horizon MDL litigation reached two Settlement Agreements—one to resolve certain claims by private individuals and businesses for economic loss and property damage resulting from the "Deepwater Horizon Incident" (the "Economic Damages Settlement") and the other to resolve certain medical claims stemming from the cleanup response (the "Medical Benefits Settlement"). On May 2, 2012, the Court entered its Order granting preliminary approval of both Settlement Agreements.

Based on the complaint's allegations concerning Plaintiffs' places of residence and the damages sought, Plaintiffs and putative class members in the present action are almost certainly members of the Economic Damages Settlement class.[1] Additionally, regardless of the damages sought in this lawsuit, to the extent Plaintiffs and putative class members decide to accept the benefits of the Economic Damages Settlement, they will then be barred under the terms of the required release from pursuing the claims in this lawsuit. Thus, until the settlement process has unfolded and the Plaintiffs and putative class members make their decisions whether to accept settlement payments and release all claims against BP (and the other named Defendants, who are released parties in the proposed settlements), the scope of this case—and whether it has sufficient putative class members to proceed as a class action—is unknown. Continuing to conduct proceedings in the interim risks a waste of the parties' and the Court's resources. Additionally, it would be inappropriate for Plaintiffs to have an opportunity to litigate BP's anticipated motion to dismiss, and thereby test the sufficiency of their complaint, before they and putative class members are required to make a decision whether to opt-out of the settlement.

For these reasons, Defendants BP Exploration & Production Inc. and BP America Production Company (collectively "BP") move this Court to temporarily stay further proceedings and suspend all responsive pleading and answer deadlines in the above-captioned action, pending implementation of the BP Deepwater Horizon settlement.

[1] Although less certain based on the allegations and damages sought herein, Plaintiffs and putative class members also may be members of the Medical Benefits Settlement class. Should that prove to be the case, this would provide further support for the temporary stay sought herein.

## BACKGROUND

### A. Plaintiffs Allege Discrimination Against Vietnamese- and Cambodian-American Fishermen Who Participated in the VoO Program.

In April 2010, a blowout occurred aboard the Deepwater Horizon, a semi-submersible offshore drilling rig, resulting in an oil spill in the Gulf of Mexico. In the months following the spill, BP undertook massive clean-up efforts, which included the creation and implementation of the VoO Program.

The VoO Program was initially designed to engage local communities and to provide a source of income to commercial fishermen impacted by the oil spill, but it eventually evolved into a key feature of BP's clean-up efforts. In the early days of the program, participants conducted oil surveillance and transported personnel, supplies, and wildlife, but as time passed, participants' operations expanded to include deploying boom, skimming oil, and other clean-up measures. *See e.g.*, Ex. 1, Nov. 7, 2011 Dep. Tr. M. Kissinger at 41:16-25, 70:23-71:6.

Vessel owners could apply to participate in the VoO Program by signing and submitting a Master Vessel Charter Agreement. In order to be deployed or put "on hire," vessel captains and crewmembers were required to attend a four-hour safety training session. Additionally, the vessel had to pass a dockside examination and satisfy crew requirements based on the size of the vessel. These requirements served as pre-requisites to being *eligible* to participate in the VoO Program. If a vessel fulfilled these requirements, it was eligible to be deployed but not guaranteed to be deployed. For example, as of July 2010, the VoO Program had already contracted with over 5,000 vessels even though an average of only 3,000 vessels deployed daily. *See* Ex. 2, M. Kissinger Decl. at ¶¶ 13, 15.

Plaintiffs named in this action are 41 Vietnamese- and Cambodian-Americans who reside in Louisiana, Mississippi, and Texas. They allege that they represent "a group of approximately

4,000 Vietnamese and Cambodian-American fishermen affected by the BP Oil Spill, and who applied for the Vessel of Opportunity Program but were never hired because of the discriminatory acts of the defendants." Compl. ¶ VIII. Judge Barbier released this case from the MDL, but as of this filing, Plaintiffs have not consented to Judge Wilkinson's jurisdiction. *See* Ex. 3, Magistrate Judge Wilkinson's May 3, 2012 Minute Entry.

### B. Approval of the BP Deepwater Horizon Economic Damages Settlement Agreement

On April 18, 2012, the Plaintiffs' Liaison Counsel and BP agreed on the terms of two settlement agreements to resolve certain claims pending in the Deepwater Horizon MDL proceeding—the Economic and Property Damages Action Settlement and the Medical Benefits Class Action Settlement. On May 2, 2012, the Court preliminarily approved both agreements.[2] The Court's Preliminary Approval Order outlines a reasonably expedited settlement schedule, with a fairness hearing scheduled as early as November 8, 2012 and an opt-out deadline of October 1, 2012.[3]

The Economic Damages Settlement class includes individuals who lived or worked within a defined geographic scope—including Louisiana, Mississippi, Alabama, and some coastal counties in Texas and Florida—and who suffered damages related to, among other things, the VoO Program, economic damage, property loss, vessel physical damage, subsistence damages, and seafood compensation damages. Class members may submit multiple claims and receive compensation for multiple categories of damages. Class members who accept payment

---

2 Preliminary Approval Order as to the Proposed Economic and Property Damages Action Settlement, 2:10-md-02179-CJB-SS (May 2, 2012); Preliminary Approval Order as to the Proposed Medical Benefits Class Action Settlement, 2:10-md-02179-CJB-SS (May 2, 2012).

3 Preliminary Approval Order as to the Proposed Economic and Property Damages Action Settlement, 2:10-md-02179-CJB-SS, at 32, 40 (May 2, 2012); Preliminary Approval Order as to the Proposed Medical Benefits Class Action Settlement, 2:10-md-02179-CJB-SS, at 26 (May 2, 2012).

are required to enter into a broad release of all claims against BP and all other *Duong* Defendants[4]—*i.e.*, "all claims arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident." *Deepwater Horizon* Economic and Property Damages Settlement Agreement as Amended on May 2, 2012, at 69-71.[5]

Under the Economic Damages Settlement, any Economic Class member determined to qualify for one or more settlement payments "shall have the option to receive prompt payment of such compensation prior to the Effective Date upon the execution of an INDIVIDUAL RELEASE. The BP Parties' obligation to make Settlement Payments to any qualifying Economic Class Member who signs an Individual Release prior to the Effective Date, and the terms of every such Individual Release, shall be fully enforceable, binding and irrevocable, regardless of whether the Effective Date occurs." *Id.* at 2-3. Thus, as the Court explained in its Preliminary Approval Order, "the Proposed Settlement is different from many other class settlements in that payments are not delayed pending the Court's fairness hearing and final

4 Released Parties include "(i) BP (including all persons, entities, subsidiaries, divisions and business units comprised thereby), together with (ii) the Deepwater Horizon Oil Spill Trust; (iii) the persons, entities, divisions, and business unites listed on Exhibit 20 ("other Released Parties"); (iv) each of BP's and Other Released Parties' respective past, present and future directors, officers, employees, general or limited partners, members, joint ventures, and shareholders, and their past, present and future spouses, heirs, beneficiaries, estates, executors, administrators, personal representatives, attorneys, agents, trustees, insurers, reinsurers, predecessors, successors, indemnities, assigns; (v) any natural legal or juridical person or Entity acting on behalf of or having liability in respect of BP or the Other Released Parties, in their respective capacities as such; and (vi) the federal Oil Spill Liability Trust Fund and any state or local fund, and, as to i-vi above, each of their respective Affiliates, including their Affiliates' officers, directors, shareholders, employees, and agents. Released Parties will also include any vessels owned or chartered by any Released Parties (except for the Deepwater Horizon itself)." *Deepwater Horizon* Economic and Property Damages Settlement Agreement as Amended on May 2, 2012, at 71-72 Attached as Exhibit 4 to this memorandum is the list of "Other Released Parties" identified in Exhibit 20 to *Deepwater Horizon* Economic and Property Damages Settlement Agreement as Amended on May 2, 2012.

5 "*Deepwater Horizon* Incident" is defined in the settlement documents as: "the events, actions, inactions and omissions leading up to and including (i) the blowout of the MC252 WELL; (ii) the explosions and fire on board the *Deepwater Horizon* on or about April 20, 2010; (iii) the sinking of the *Deepwater Horizon* on or about April 22, 2010; (iv) the release of oil, other hydrocarbons and other substances from the MC252 Well and/or the *Deepwater Horizon* and its appurtenances; (v) the efforts to contain the MC252 Well; (vi) RESPONSE ACTIVITIES, including the VoO Program; (vii) the operation of the GCCF; and (viii) BP public statements relating to all of the foregoing. *Deepwater Horizon* Economic and Property Damages Settlement Agreement as Amended on May 2, 2012, at 97.

approval process. If preliminary approval is given, the Settlement Program will process claims and make settlement payments to class members so long as they execute an individual release." *Id.* at 7. As noted above, the Court granted preliminary approval on May 2, 2012, thereby triggering the timeline for implementation of the settlement.

## ARGUMENT

Plaintiffs allege they are residents of the geographic area encompassed by the Economic Damages Settlement. The damages they seek in this litigation on behalf of themselves and the members of the putative class also are encompassed by the Agreement. Plaintiffs and the class on whose behalf they sue may accept the settlement terms and release BP (and the other named Defendants) from further liability, which would extinguish the claims they have brought in this lawsuit. A temporary stay is appropriate because the scope of this case cannot be known until the Plaintiffs and putative class members determine whether they will participate in the settlement. Many courts have granted stays in precisely the same circumstances as those present here, namely, when the settlement of a related action will substantially affect future proceedings of the case. This Court should follow this guidance and exercise its discretion to order a temporary stay in this case.

### A. Plaintiffs Likely Are Members of the Economic Damages Settlement Class.

Based on the allegations of their complaint, Plaintiffs likely are members of the Economic Damages Settlement Class. They live within the relevant geographic area[6] and they seek damages encompassed within one or more of the damages categories encompassed by that

[6] All 41 Named Plaintiffs fall within the geographical scope of the settlement. Plaintiffs numbered 1-37 and 39-41 in the complaint live in Louisiana or Mississippi, and thus fall within the geographic scope of the settlement. Compl. at 2-4; *Deepwater Horizon* Economic and Property Damages Settlement Agreement as Amended on May 2, 2012, at 3-4. Plaintiff numbered 38 in the complaint, lives in Galveston County (in the city of Dickinson, Texas), which is also within the geographic scope of the settlement agreement. Compl. at 4; *Deepwater Horizon* Economic and Property Damages Settlement Agreement as Amended on May 2, 2012, at 3-4.

agreement. Additionally, Plaintiffs and the putative class members may have suffered damages unrelated to the damages sought in this lawsuit yet encompassed within the settlement agreement. To the extent any Plaintiff or putative class member accepts the settlement terms, then that individual may no longer pursue the claims asserted in this lawsuit by operation of the terms of the release.

**1. Damages related to VoO Charter Payments**

Plaintiffs complain that they were not "hired" to perform services under VoO contracts because of their race. It is unclear whether this means that they signed VoO contracts and attended the requisite safety trainings but their vessels were never deployed, or that they attempted to but never actually signed VoO contracts. Either way, Plaintiffs' claims fall within the Economic Damages Settlement. If Plaintiffs fall within the former category, then they seek damages covered by the VoO Charter Payment category described herein. Alternately, if the Plaintiffs fall within the latter category, then they seek damages covered by the Economic Damage category described below in Section 2.

The VoO Charter Payment category applies to anyone who registered to participate in the VoO program, executed a VoO charter agreement, and completed the initial VoO training program. *Deepwater Horizon* Economic and Property Damages Settlement Agreement as Amended on May 2, 2012, at 6, 32-33, 104. This category includes both individuals whose vessels were actually deployed and those whose vessels were not. *Id.* If Plaintiffs contend that they registered to participate in the VoO program by executing a Master Vessel Charter Agreement and completed the safety training program, then their claims are encompassed by this agreement inasmuch as they seek "any payment or compensation related to participation in the VoO program." *Id.* at 111.

**2. Economic Damage**

The Economic Damage category provides relief to those who experienced "loss of profits, income and/or earnings" that are not covered by other damages categories in the settlement agreement. *Id* at 98-99. The settlement agreement broadly defines "Economic Damage" as any income or earnings "allegedly arising *out of, due to, resulting from, or relating in any way to, directly or indirectly,* the Deepwater Horizon Incident." *Id.* at 98-99. To the extent Plaintiffs and/or putative class members qualify for these damages and accept the settlement agreement, the terms of the release would prevent them from continuing to litigate these claims.

Additionally, to the extent Plaintiffs allege that they attempted to sign a VoO contract but were prevented from doing so, they would not be eligible for payment under the VoO Charter Payment category (because they did not execute an agreement, attend training, or complete other requirements), but they would be able to seek damages addressed within the Economic Damage category.

**3. Subsistence Damages**

Based on the limited facts alleged in the Complaint, it is also possible that Plaintiffs seek damages included within the Subsistence category. This category applies to those "who fish or hunt to harvest, catch, barter, consume or trade Gulf of Mexico natural resources . . . and who relied upon Subsistence resources that were diminished or restricted" by the oil spill. *Id.* at 5, 31-32. The settlement agreement broadly defines "Subsistence Damage" as the inability (or decreased ability) to use natural resources for subsistence purposes "alleged to arise out of, result from or relate in any way to, directly or indirectly, the Deepwater Horizon Incident." *Id.* at 109. To the extent Plaintiffs and/or putative class members in this case relied upon natural resources

in the Gulf of Mexico for subsistence and accept the settlement agreement, they will be barred under the terms of the release from continuing to litigate the claims in this lawsuit.

**4. Seafood Compensation Damages**

The Economic Damages Settlement compensates all fishermen, boat captains, and other seafood crew and vessel owners for damages "arising out of commercial fishing related activities." *Id.* at 5, 29, 108, Exhibit 10. According to Plaintiffs' complaint, "[o]ver half of all active commercial fishermen affected by the BP Oil Spill were Asians of the Vietnamese and Cambodian origin." Compl. ¶ VIII. Specifically, Vietnamese-Americans owned one-third of the vessels with federal shrimp permits and one-half of the boats actually fishing, and they operated 62% of Mississippi licensed vessels over 45 feet long, 75% of Louisiana licensed vessels over 50 feet long, and 65% of Alabama licensed vessels over 45 feet long. *Id.* at ¶ VI. Based on the Complaint's allegations, it is likely that a significant number of the named and putative class members are potential class members in the seafood program settlement.

**5. Real Property Damages**

The Economic Damages Settlement also compensates individuals who suffered physical damages to their vessels, coastal properties, and wetlands properties, as well as individuals who suffered real property sales damages. *Id.* at 33-34. The amount of recovery available for these claimants is tailored to the particular property at issue. To the extent Plaintiffs and/or putative class members are eligible for payment for real property damage and accept the settlement, they will be barred from pursuing the claims in this lawsuit. Even if Plaintiffs should decide to opt-out of the settlement, Plaintiffs cannot, under the terms of the release, continue to litigate on behalf of putative class members who accept settlement payments and release all claims against BP.

### 6. Racial Discrimination Is Not Excluded From the Settlement

The Economic Damages Settlement reserves only seven claims to the settlement class. The reserved claims are (1) bodily injury claims, with an understanding that these claims may be covered by the Medical Benefits Class Action Settlement; (2) claims of BP shareholders in any derivative or direct action solely in their capacity as a BP shareholder; (3) claims for moratoria losses; (4) claims relating to menhaden (or "pogy") fishing, processing, selling, catching, or harvesting; (5) claims for economic damage suffered by entities or employees in the banking, gaming, financial, insurance, oil and gas, real estate development, defense contractor industries, and entities selling or marketing BP-branded fuel; (6) claims for punitive damages against Halliburton and Transocean; and (7) assigned claims against Transocean and Halliburton. *Id.* at 12. Claims for alleged racial discrimination in connection with the VoO program are not among the reserved claims.

## B. The BP Deepwater Horizon Settlements Substantially Affect This Case.

Plaintiffs' and putative class members' membership in the Economic Damages Settlement class substantially affects the nature of this case. Even if the Named Plaintiffs choose to exclude themselves from the settlement class, they cannot continue to litigate this action on behalf of those who accept settlement payments and release BP (and all other Defendants named in this matter) from further liability. The parties and the Court will not know the scope of this case, including whether it has sufficient putative class members to support a motion for class certification, until after the completion of the settlement's opt-out process on October 1, 2012. It is in these precise circumstances—where a settlement is likely to substantially affect the proceedings of the case—that courts regularly grant motions to stay.

District courts have the inherent authority to control their dockets, which includes the power to stay proceedings: "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 255-56 (1936). Courts frequently exercise this authority when the settlement of a different case "substantially affects" the outcome of the plaintiffs' case. *See, e.g., Resco Products, Inc., v. Bosai Minerals Group Co., Ltd*, 2010 WL 2331069, at *7 (W.D. Pa. June 4, 2010) (granting a stay because a settlement "may substantially affect this case or be dispositive of the issues"); *Lindley v. Life Investors Ins. Co. of Amer.*, 2009 WL 3296498, at *3 (N.D. Ok. Oct. 9, 2009) (granting a stay because a settlement would have a "significant impact" on the case before the court); *In re RC2 Corp. Toy Lead Paint Products Liability Litigation*, 2008 WL 548772, at *5 (N.D. Ill. Feb. 20, 2008) (staying the case because a settlement would have "a substantial effect" on some or all of the plaintiffs' claims); *Chartenar v. Provident Mut. Life Ins. Co.*, 2003 WL 22518526, at *2-3 (E.D. Pa. Oct. 22, 2003) (staying a case because a settlement would "have a substantial affect on, if not dispose of," some or all of the claims); *Schwarz v. Prudential-Bache Securities, Inc.*, 1991 WL 137157, at *1 (E.D. Pa. July 19, 1991) (stating that it is "eminently proper" to stay a case when a different case may "substantially affect it or even be dispositive").

The Economic Damages Settlement substantially affects this case because (1) the composition of the putative class and whether this case may even proceed as a class action cannot be known until after individuals have had an opportunity to opt-out; (2) the settlement may bear on this Court's class certification decision or the resolution of other matters; (3) the Plaintiffs have not yet opted out of the settlement, and unless and until they do, the settlement

may prove dispositive of their claims; and (4) even if the Named Plaintiffs exclude themselves from the settlement, they cannot continue to litigate the claims of those who do not opt-out.

Many courts have granted stays in similar circumstances. *See, e.g.*, *Fitzer v. American Institute of Baking, Inc.*, 2010 WL 1955974, at *2 (S.D. Ga. May 13, 2010) (granting a motion to stay because the settlement of a different case "may affect the composition of [the] putative class" and "may ultimately come to bear on the court's class certification decision") (internal quotations removed); *Resco Products, Inc.*, 2010 WL 2331069, at *7 (granting a stay because a settlement "may substantially affect this case or be dispositive of the issues"); *Meints v. Regis Corp.*, 2010 WL 3058300, at *3 (S.D. Cal. Aug. 2, 2010) (granting a motion to stay because the settlement of a related case was "likely to prevent Plaintiff from proceeding with this case as a class action as to any of her claims"); *Lindley*, 2009 WL 3296498, at *2-3 (granting a motion to stay because putative members of the plaintiff's proposed class were also members of a settlement class in a different case; the court cites six federal cases that entered stays under the same circumstances); *Annunziato v. eMachines Inc.*, 2006 WL 5014567, at *5-6 (C.D. Cal. July 24, 2006) (granting a stay because the plaintiff's claims and the members of the putative class were the same as those in a case that recently settled). *Cf. Bechtel Corp. v. Local 215, Laborers' Intern. Union of North America*, 544 F.2d 1207, 1215 (3d Cir. 1976) (affirming a stay "because of the discretionary power inherent in a trial court to stay an action before it," and because an arbitrator's resolution "could obviate the need to pursue [a claim] to trial").

For example, in *Fitzer v. American Institute of Baking, Inc.*, the plaintiffs filed a class action lawsuit on behalf of individuals who contracted food poisoning after ingesting salmonella-tainted peanut butter. 2010 WL 1955974, at *1. When a bankruptcy court created a settlement fund to compensate the poisoned individuals, the defendants moved for a stay, arguing that

"because the true effect of the . . . Settlement Procedures will not be known until those procedures are completed, [the] Court should stay all aspects of this case for six months." *Id.* at *2. The court agreed and held that a stay was appropriate "because the distribution of the settlement fund may affect the composition of the putative class [and] it may ultimately come to bear on the court's class certification decision." *Id.* (internal quotations removed). As in *Fitzer*, a short stay of five months is proper in this case because until the Plaintiffs and putative class members decide whether to opt-out of the settlement, the composition of the putative class is unknown.

As in the cases cited above, a stay is also appropriate because it will save the Court and the parties substantial resources. Both BP and co-defendant DRC Emergency Services have already submitted motions to dismiss the complaint filed in *Daigle* (a VoO racial discrimination case before Judge Wilkinson, before whom a motion to stay is pending), and BP may file a motion to dismiss the complaint in this case. These motions, if unsuccessful, would be followed by other motions, discovery, and class certification matters. It would be a waste of judicial resources for the court and the parties to invest the time required to resolve these matters only to have the issues mooted by the Plaintiffs' and putative class members' participation in the settlement. *See Louisiana Stadium and Exposition Dist. v. Financial Guar. Ins. Co.*, 2009 W. 926982, at *1 (E.D. La. 2009) (stating that the waste of judicial resources "would be substantial . . . since the Court would have to spend time familiarizing itself with the intricacies of a case involving complex financial transactions that will ultimately be" resolved elsewhere). This exact conclusion was reached in *Meints v. Regis Corp.*, where the court held that "[a]llowing Plaintiff to proceed to class discovery in this case when a settlement potentially barring her class action is pending would waste judicial resources and require Defendant to expend significant effort to

comply with discovery requests in a case which is unlikely to result in class certification." 2010 WL 625338, at *1 (S.D. Cal. Feb. 16, 2010).

The length of the stay also does not prejudice Plaintiffs. The Economic Damage Settlement opt-out deadline is October 1, 2012, resulting in only an approximately five-month delay before the contours of this case are defined. This delay does not prejudice the Plaintiffs because they only recently filed their complaint, the parties are not in the midst of discovery, and this Court has not yet set a trial date. These same reasons were sufficient for the *Fitzer* Court to find that granting a six-month delay was not prejudicial. *Fitzer*, 2010 WL 1955974, at *2. Also, prejudice does not exist where granting a motion to stay will create a slight delay "when compared to the hardship to the defendants and the interests of judicial economy." *See e.g.*, *Brandt v. BP, P.L.C.*, 2010 WL 2802495, at *2 (D. S.C. 2010) (finding a "few months" of delay not prejudicial "when compared to the hardship to the defendants and the interests of judicial economy") (collecting cases); *Lindley*, 2009 WL 3296498, at *4 (finding a one-month delay not prejudicial). Here, the hardships BP will face in the absence of a stay and the interests of judicial economy outweigh any inconvenience to the Plaintiffs caused by a slight delay. BP should not be forced to incur the costs of litigating yet another class action (including the costs associated with motion practice and discovery) for claims that have already been resolved.

Given the effort expended in reaching the Economic Damages Settlement, the overlap between the settlement class and Plaintiffs' proposed class, the substantial resources saved by granting a stay, the lack of prejudice to Plaintiffs, and the hardship BP faces in the absence of a stay, this Court should temporarily stay this action pending implementation of the settlement.

**C. A Stay Is Appropriate To Maintain The Status Quo Pending The Settlement Opt-Out Date.**

A stay also is appropriate to maintain the status quo pending Plaintiffs' and putative class members' decisions whether to exclude themselves from the settlement class. Unless the action is stayed, the parties will be engaged in motion practice testing the sufficiency of Plaintiffs' complaint. Plaintiffs should not have the opportunity to test the sufficiency of their complaint prior to the time they and putative class members are required to decide whether to exclude themselves from the class settlements. *See Dege v. Hutchinson Tech., Inc.*, 2007 WL 3275111, at *2 (D. Minn. Nov. 2, 2007) (declining to enter a ruling on the merits because it "would provide an unfair advantage to potential plaintiffs who may be waiting to determine whether to opt-in to [a different class action] lawsuit"); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270-71 (2d Cir. 2006) (denying plaintiffs a second opportunity to opt-out because there had been "changes in the information available to class members since expiration of the first opportunity to request exclusion").

**CONCLUSION**

For the foregoing reasons, BP Exploration & Production Inc. and BP America Production Company request that the Court temporarily stay these proceedings pending implementation of the Economic Damages Settlement Agreement.

Dated: May 31, 2012

Respectfully submitted,

/s/ Don Haycraft

Don Haycraft (Bar #14361)
Liskow & Lewis
701 Poydras St., Suite 5000
New Orleans, LA 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108
dkhaycraft@liskow.com

Sallie G. Smylie, P.C.
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
sallie.smylie@kirkland.com

*Attorneys for BP Exploration and Production Inc. and BP America Production Co.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 31st day of May, 2012.

/s/_Don Haycraft__________________