

**U.S. Department of Justice**

Environment and Natural Resource Division

---

*P.O. Box 761*
*Washington, DC 20044*
*202-514-0180*
*Sarah.Himmelhoch@usdoj.gov*

June 5, 2012

**BY ELECTRONIC MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
 Eastern District of Louisiana
Hale Boggs Federal Building
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

      Re:    MDL No. 2179 — BP's Challenge to 21 of the 119 United States' Deliberative Process Privilege Claims

Dear Judge Shushan:

      BP's challenge to 21 deliberative process privilege claims by the United States ignores the context that prompted this litigation. On April 20, 2010, the United States government mobilized in response to a fire and explosion from BP's well that killed eleven people and spewed oil into the Gulf of Mexico for nearly four months. While the United States was still engaged in its largest oil spill response in history, this MDL was constituted and on December 15, 2010, the United States brought claims pursuant to the Declaratory Judgment and Clean Water Acts. Since filing its complaint the United States has responded to discovery related to its own claims, as well as discovery related to the numerous other claims that are part of the MDL.

      BP has sought extensive discovery and the United States has provided millions of documents. In addition, BP has challenged over 13,000 privilege log entries asserting the deliberative process privilege. In a very short time, the United States reviewed each of the challenged documents in light of the important issues at stake in this litigation and BP's purported need for the internal deliberations of the United States and released all but 119 of the documents that were relevant to this phase of the litigation. Of the 119 documents that the United States continues to assert the deliberative process privilege over, BP has now challenged the deliberative process assertion with respect to 21 documents.

In bringing its challenges to these 21 documents, BP suggests that because the deliberative process privilege is a qualified privilege, the deliberative materials are entitled to less protection than the attorney work product protection, another qualified privilege. To the contrary, as the case BP itself cites states, "the assumption is that the 'government, no less than the citizen, needs open but protected channels for the kind of plain talk that is essential to the quality of its functioning.'" *In re Franklin*, 478 F. Supp. 577, 581 (E.D. N.Y. 1979) (quoting *Carl Zeiss Sitfung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 325 (D.D.C. 1966), *aff'd* 384 F.2d 979 (D.C. Cir. 1967)).

Importantly, the United States released the thousands of documents it did *not* because it believed the deliberative process privilege had been improperly asserted as to most of those documents. Rather, as the United States indicated in its May 15, 2012 letter to this Court:

> [W]e are releasing documents despite the fact that many of them do qualify as deliberative process materials. Because there is no subject matter waiver for the due process privilege, because of the importance of this case, the desire of the Court to keep this case moving expeditiously, and the fact that these documents will receive limited distribution because of the protections afforded by PTO 13, the United States is choosing to be far more selective in its assertion of the deliberative process privilege in this phase of the litigation. We reserve the right to rely upon the protections of this privilege where necessary or appropriate to protect the important role of full and frank recommendations to senior managers in the process of governmental decision-making and to continue confidential treatment of these documents so as to avoid chilling future decision making.

Analysis of BP's challenges involves two questions: (1) whether the elements of the privilege have been established and (2) whether BP's need for the documents outweighs the need to protect the kind of communication essential to functioning in a dynamic and complex response action. *See Newport Pacific Inc. v. County of San Diego,* 200 F.R.D. 628, 637 (S.D. Cal. 2001). BP has failed to establish its right to the documents at either step in the process.

*First*, BP has not challenged the United States' proof of the elements of the deliberative process privilege, except to assert that "purely factual" information is not protected and suggest that some of the documents the United States has withheld fall within this category. The United States has pared its deliberative process claims to the very core of the apple, releasing those documents that can be released without significant harm and redacting those where it made sense to do so.[1]

BP asserts that the challenged documents are "of the same type as the previously withheld documents that the United States released." The differing quality between the documents withheld and those released, as the Court will see when reviewing the documents in camera, is that the documents still withheld constitute that core of deliberation internal to the

---

[1] BP argues that the United States should produce redacted versions of the 21 documents it has challenged. While it is possible that some of these documents could be redacted, the substance of the factual information contained in these privileged communications has been produced in numerous forms to BP and requiring redaction here would be, in essence, a meaningless exercise.

government over how to provide direction to BP in addressing its gushing well. The discussions that have been withheld are not of facts necessary to understand the events. Instead, they are recommendations regarding the particularly governmental role of ensuring that directives issued by the Unified Command are clear and effective.

In short, BP has all but conceded that the United States has established that the deliberative process privilege applies to these 21 documents. These documents are internal, pre-decisional documents reflecting the very sorts of recommendations that are best made in a protected zone in which those speaking to power can afford to make controversial or unpopular arguments so that the decision maker is fully informed and has taken appropriate consideration of all sides of a difficult issue. *See W&T Offshore, Inc. v. U.S. Dep't of Commerce*, No. Civ. A. 03-2285, 2004 WL 2115418 at *2 (E.D. La. 2004) (holding that the deliberative process privilege allows agencies to "freely explore possibilities, engage in internal debates, and encourage frank discussion . . . .").

*Second,* BP has failed to establish a need for the information that outweighs the deterrent effect of releasing these communications. BP asserts that the 21 documents that it is has challenged are "being sought *solely* for purposes of defending" against the United States' claims for civil penalties. BP's Letter at 3 (emphasis altered). Thus, BP must show how internal deliberations would bear on the question of how large a penalty it should pay for the disaster at its well. BP has made no effort to explain beyond asserting that the documents are "relevant to the United States' involvement with capping the flow of oil." *Id.* at 2.

BP makes no effort to identify a particular fact it seeks to establish – or rebut – that these types of documents would make more or less likely. In other words, BP does not establish how the United States' internal deliberations over proposed directives actually relate to the potential civil penalties in this matter. BP articulates no theory of defense for which it requires the information and points to no assertion by the United States to which these documents are essential for rebuttal. In short, BP has vaguely asserted topical relevance and assumed that was sufficient to overcome the assertion of an important privilege.

That a document is relevant to the claims in an action is not in and of itself grounds to overcome a privilege. If mere relevance were sufficient to overcome a qualified privilege than no party would ever be able to assert work product protection over materials prepared in anticipation of the litigation in which the privilege is asserted, thereby undermining the premise behind that privilege. This absurd but necessary result of BP's argument demonstrates that mere relevance in some sense to the United States' involvement in capping the well does not establish a need sufficient to overcome any qualified privilege – be it the work product doctrine or the deliberative process privilege.

By contrast, the United States has provided a declaration – from the General Counsel of the Department of Energy – that release of this information would in fact harm the decision making of the United States. The potential for chilling effect is particularly great here where the communications at issue were made in the course of an unprecedented response during which individuals were forced to make significant decisions without benefit of time to reflect and communications were hurried and informal. Moreover, these communications are less than two

years old, making the sting of their release greater and therefore the deterrent effect more significant.

BP argues that because the United States has produced similar documents to those among the 21, it cannot claim privilege on the 21. This creates a perverse incentive for future cases and makes no sense in this instance. The purpose of the privilege is to "enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government." *United States Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 150). The "very slight differences" that BP hypothesizes between those documents the United States has released and those it has claimed privilege upon is precisely the difference between those that would chill future decision processes and those that would not. To order the release of the 21 documents at this point sends the message that there is *no* protected space for government workers and decision makers in the midst of a national emergency. This could chill communications during the next disaster, harming the public by impeding the speed and quality of the government response.

BP also argues that the deliberative process privilege should be off limits where the United States affirmatively brings suit. Such a rule would place the United States in an impossible position in situations like this one. The United States government had no choice but to oversee the response actions – the National Contingency Plan requires such a role. Moreover, the United States had to step in to oversee the killing of the well – the public demanded it after BP failed repeatedly in initial attempts to do so. At the same time, the United States is charged by Congress to enforce the Clean Water Act and Oil Pollution Act, among many others, and give meaning to the provisions of those statutes that penalize those whose actions and failure to act result in oil spills. To say that performance of the second duty waives privilege over the decisions made discharging the first duty is to force the government to choose between statutory mandates that allow no such choice. If given credence, BP's argument would mean that *none* of the United States' deliberative process claims can stand.[2]

The case law requires no such result. *See United States v. Hooker Chemicals & Plastics Corp.*, 114 F.R.D. 100, 102 (W.D.N.Y. 1987) ("[T]he state does not waive its right to withhold privileged deliberative documents simply because it is a plaintiff in a given action."); *see also E.E.O.C. v. Burlington N. & Santa Fe Ry. Co.*, 621 F. Supp. 2d 603, 607 (W.D. Tenn. 2009); *Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.* 232 F.R.D. 103, 110 (S.D.N.Y. 2005). Indeed, the very cases BP cites make clear that there is no clear rule preventing a government plaintiff from using the deliberative process privilege. The BP cited cases treat the government acting as plaintiff as another factor to consider, and then looked further at whether the agency in question regularly conducts similar litigation as plaintiff and whether the documents at issue are "routine reports produced in the ordinary course of business by an organization which regularly engages in affirmative litigation." *United States v. Ernstoff*, 183 F.R.D. 148, 153 (D.N.J. 1998). This case is light-years away from the type of routine enforcement actions cited by BP in its brief. The documents at issue are not routine agency documents – they are the work of a special

---

[2] If in fact, BP is arguing that the United States can have no deliberative process in this case, it comes late to the question by briefing it now, after the Parties and the Court have spent weeks navigating BP's challenges to the United States' deliberative process claims.

*ad hoc* group brought together specifically to respond to the spill and including leaders from multiple federal agencies.  This is not an instance of the government claiming privilege over documents that private litigants would have to turn over.  *Contra Ernstoff*, 183 F.R.D. at 153.  No private litigant would *have* such documents because only the government has the responsibility to oversee the response.

      For all of these reasons, BP has failed to establish that its need for the documents outweighs the right of the "government, no less than the citizen, . . . . [to] open but protected channels for the kind of plain talk that is essential to the quality of its functioning.'"  *In re Franklin*, 478 F. Supp. at 581.  Accordingly, BP's motion to compel the release of these 21 documents – out of more than 15 million produced by the United States in this litigation – should be denied, particularly given BP's failure to establish any particularized need for these documents.

                                                        Sincerely,

                                                        /s/ Sarah D. Himmelhoch

                                                        Sarah D. Himmelhoch

cc:      Liaison & Coordinating Counsel
           Robert Gasaway