**Stipulation Regarding Early Restoration Project
for the Deepwater Horizon Oil Spill--
Louisiana Oyster Cultch Project**

This Stipulation Regarding an Early Restoration Project for the Deepwater Horizon Oil Spill--
Louisiana Oyster Cultch Project ("Project Stipulation" or "Stipulation"), is made by and among
BP Exploration & Production Inc. ("BPXP"), the State Trustees and Federal Trustees as defined
herein (collectively, with the United States Department of Justice, the "Parties") in accordance
with the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater
Horizon Oil Spill ("Framework Agreement") executed April 20, 2011.  This Project Stipulation
is governed by the Framework Agreement and incorporates its terms by reference.  This Project
Stipulation will be effective when signed by an authorized representative of each of the Parties.

WHEREAS, for purposes of this Project Stipulation, the United States is acting on behalf
of the following federal trustees of natural resources:  the Secretary of the United States
Department of the Interior ("DOI"), through its applicable bureaus, and the Administrator of the
National Oceanic and Atmospheric Administration ("NOAA") (collectively "Federal Trustees");
and

WHEREAS, for purposes of this Project Stipulation, the States of Alabama, Florida,
Louisiana, Mississippi, and/or Texas (collectively, "States") are acting through the following
state trustees of natural resources:  for the State of Alabama, the Alabama Department of
Conservation and Natural Resources and the Geological Survey of Alabama; for the State of
Florida, the Florida Department of Environmental Protection and the Florida Fish and Wildlife
Conservation Commission; for the State of Louisiana, the Louisiana Coastal Protection and
Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of
Environmental Quality, the Louisiana Department of Wildlife and Fisheries, and the Louisiana
Department of Natural Resources; for the State of Mississippi, the Mississippi Department of
Environmental Quality; and for the State of Texas, the Texas Parks and Wildlife Department, the
Texas General Land Office, and the Texas Commission on Environmental Quality (collectively,
"State Trustees"; the State and Federal Trustees collectively are referred to as the "Trustees");
and

WHEREAS, on or about April 20, 2010, the mobile offshore drilling unit Deepwater
Horizon experienced an explosion, fire and subsequent sinking in the Gulf of Mexico resulting in
a release of oil into the Gulf of Mexico and response actions ("the Oil Spill"); and

WHEREAS, the Trustees are conducting a Natural Resource Damage Assessment
("NRDA"), as that term is defined in 15 C.F.R. § 990.30 and corresponding state law provisions,
to determine Natural Resource Damages resulting from the Oil Spill in accordance with federal
and state laws and authorities.  To date, BPXP has been participating cooperatively in the NRDA
as provided under applicable laws and regulations; and

WHEREAS, while the NRDA is continuing, the Trustees have approved the Deepwater
Horizon Oil Spill Phase I Early Restoration Plan and Environmental Assessment ("Phase I Early
Restoration Plan"), dated April 17, 2012, after public notice of the proposed plan, a reasonable
opportunity for public comments, and consideration of all comments received, which includes
the project described herein ("Early Restoration Project"); and

WHEREAS, the Trustees have determined that the Early Restoration Project meets the criteria set forth in Paragraph 6 of the Framework Agreement and is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.; and

WHEREAS, all Parties agree that this Project Stipulation has been negotiated in good faith and that it is fair, reasonable, and in the public interest;

NOW, THEREFORE, in accordance with the Framework Agreement and in consideration of the promises exchanged herein, the Parties hereby agree and stipulate as follows:

I.   RESTORATION PROJECT

A. The Trustees have selected the Early Restoration Project set forth in Appendix A (including project description, estimated project budget, location, and anticipated schedule), attached hereto and incorporated by reference, as an appropriate restoration project to address natural resource injuries resulting from the Oil Spill.  On December 15, 2011, the Trustees published for public notice and comment a draft Phase I Early Restoration Plan that included the Early Restoration Project.  On April 17, 2012, after considering all public comments received on the draft plan, the Trustees adopted a final Phase I Early Restoration Plan that included the Early Restoration Project.  The final Phase I Early Restoration Plan (along with supporting documentation) is available publicly as described in Appendix B.

B. The Parties agree that the Early Restoration Project is consistent with section 1006 of the Oil Pollution Act, 33 U.S.C. § 2706, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq., is in the public interest and meets all of the following criteria:

   i.   contributes to making the environment and the public whole by restoring, rehabilitating, replacing, or acquiring the equivalent of natural resources or services injured as a result of the Oil Spill, or compensating for interim losses resulting from the Oil Spill;

   ii.  addresses one or more specific injuries to natural resources or services associated with the Oil Spill;

   iii. seeks to restore natural resources, habitats or natural resource services of the same type, quality, and of comparable ecological and/or human use value to compensate for identified resource and service losses resulting from the Oil Spill;

   iv.  is not inconsistent with the anticipated long-term restoration needs and anticipated final restoration plan; and

   v.   is feasible and cost effective.

C. The Early Restoration Project shall be implemented by the following Trustee(s): Louisiana Coastal Protection and Restoration Authority, Louisiana Department of Wildlife & Fisheries, and Louisiana Oil Spill Coordinator's Office ("implementing Trustee(s)").

2

D. The implementing Trustee(s) shall provide quarterly status reports on the Early Restoration Project to all Parties describing the progress on project implementation during each period (including a summary of costs expended during that quarter), until the implementing Trustee(s) has completed construction of the project, or until the NRD case is concluded by a judicially approved consent decree or final judgment resolving BPXP's potential liability for natural resource damages resulting from the Oil Spill, whichever comes first. The first status report shall be due within ninety (90) days of the filing of this Project Stipulation.  Once the implementing Trustee(s) completes construction of the Early Restoration Project, the implementing Trustee(s) shall provide annual status reports on the Early Restoration Project to all Parties describing the status of and any changes to the Early Restoration Project during each period.  The Trustees may group multiple Early Restoration Projects in a single report.

E. All Parties shall also have the right to observe or inspect the implementation of the Early Restoration Project to the greatest extent practicable based on the design of the project, site conditions, and any legal limitations on access controlled by third parties.  In addition, BPXP shall have the further right to access and copy final design, permitting, oversight and monitoring data, and reports that are collected or generated for the Early Restoration Project.  All such data and reports shall be available to BPXP, after applicable quality assurance/quality control, and may be incorporated into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment at the discretion of the Trustees in accordance with the Oil Pollution Act, 33 U.S.C. §§ 2701, and the Oil Pollution Act Regulations (Natural Resource Damage Assessments), 15 C.F.R. §§ 990 et seq.

F. Prior to signing this Project Stipulation, the implementing Trustee(s) coordinated with the Federal On-Scene Coordinator (FOSC) to ensure that the Early Restoration Project will not obstruct, duplicate or conflict with any ongoing response actions, and ongoing response actions, if any, will not obstruct, duplicate or conflict with the Early Restoration Project.

II. <u>FUNDING FOR PROJECTS IMPLEMENTED BY ONE OR MORE TRUSTEES</u>

A. BPXP shall provide funding in the amount of $ 14,874,300 for the Early Restoration Project in accordance with Paragraphs II.C. and II.D. below, absent the entry of a judicial stay or other court order that prevents project implementation or otherwise affects the terms of this Project Stipulation.  All funds provided to any Trustee under this Stipulation shall be paid and deposited in accordance with the instructions provided by the implementing Trustee(s) pursuant to Paragraphs II.C. and II.D. below.

B. The Trustees shall use the funds paid under this Stipulation only for implementation of the Early Restoration Project, including oversight, monitoring, corrective actions, and any agreed upon contingencies, except as provided in Paragraphs II.F. and II.G.  An estimated budget for the Early Restoration Project is set forth in Appendix A.

C. Initial Payment:  Within thirty (30) days of the filing of this Project Stipulation or receipt of written payment instructions from the implementing Trustee(s), whichever is later, BPXP shall cause the transfer of 25% of the amount specified in Paragraph II.A. from the

Early Restoration Subaccount[1] to the account or accounts and in the manner designated in the payment instructions.

D.  Additional Payments:  The remaining 75% of the amount specified in Paragraph II.A. shall be paid from the Early Restoration Subaccount as follows:

    i.  The implementing Trustee(s) elects to perform the Early Restoration Project with the use of contractor(s). Unless other payment arrangements are specified in Appendix A, BPXP shall transfer 25% of the amount specified in Paragraph II.A. from the Early Restoration Subaccount to the account or accounts designated by the implementing Trustee(s) within fifteen (15) days after the date that BPXP receives written notice from the implementing Trustee(s) of issuance of a Request for Proposal, or other appropriate applicable procurement mechanism, or within sixty (60) days of the filing of this Project Stipulation, whichever is later; such notice shall include written payment instructions.  BPXP shall transfer the remaining 50% of the amount specified in Paragraph II.A. from the Early Restoration Subaccount to the account or accounts designated in the payment instructions within fifteen (15) days of notice to BPXP of the selection of a contractor but before award of a contract to implement the Early Restoration Project, or within seventy-five (75) days of the filing of this Project Stipulation, whichever is later.

E.  In addition to the amount specified in Paragraph A of this section, BPXP shall make available contingency funding from the Early Restoration Subaccount of up to $708,300 for the Early Restoration Project, as provided herein ("Contingency Funding"). Contingency Funding shall only be used for the Early Restoration Project and shall only be used to pay for actual cost overruns, performance monitoring, adaptive management, corrective actions and other implementation costs that are within the scope of the Early Restoration Project.  If the implementing Trustee(s) believes that Contingency Funding will be required, such Trustee shall provide to BPXP a statement, together with supporting materials, demonstrating that the funds received pursuant to Paragraph A of this section have been expended for the Early Restoration Project.  Such a statement shall also include an explanation of the need, the amount of funds requested from the Contingency Funding, and a detailed description of the proposed work activities.  BPXP shall pay the implementing Trustee(s) for such Contingency Funding, up to a maximum amount of $708,300 within 30 days of receipt of the statement.

F.  Any and all funds transferred pursuant to Paragraph 5 of the Framework Agreement and Paragraphs II.C. and II.D. of this Project Stipulation, along with any accrued interest, that have not been spent and remain unobligated after the implementing Trustee(s) has completed the Early Restoration Project, including all performance monitoring and corrective actions, shall be retained by the Trustees.  Such funds may only be used by the implementing Trustee(s) for another restoration project agreed to by all Trustees, provided, however, that such funds may not be used for another project unless and until

---

[1] The Early Restoration Subaccount means the separate subaccount within the Deepwater Horizon Oil Spill Trust, the private trust previously established by BPXP that was created and holds the $1 billion BPXP committed toward early restoration projects, as required by the terms of the Framework Agreement.

the implementing Trustee(s) has confirmed in writing that the Early Restoration Project is complete and no funding pursuant to Paragraph II.E. will be required.  BPXP shall not be entitled to any additional NRD Offsets or other credits related to any additional restoration work performed with such retained funds.

G. If implementation of the Early Restoration Project does not commence, as specified in Appendix A, by the end of the eighteenth (18th) month after the date all Parties have signed this Project Stipulation, unless the Parties agree otherwise, the Project Stipulation shall be void and the funds transferred pursuant to Paragraph 5 of the Framework Agreement and Paragraphs II.C. and II.D. of this Project Stipulation that have not been spent and remain unobligated, along with any accrued interest, shall remain in the account or accounts to which they have been transferred and only be used for another project under a new Project Stipulation agreed to by all the Parties under the terms of the Framework Agreement.

H. Notwithstanding any provision of this Project Stipulation, if the cost of the Early Restoration Project exceeds the amount of funding stated in Paragraph II.A. above plus the Contingency Funding, the Parties may agree, in writing, to increase the amount of funding that BPXP will provide for the Early Restoration Project under this Project Stipulation from the Early Restoration Subaccount.


III.   NRD OFFSETS

A. The natural resources and/or services predicted to result from the Early Restoration Project ("NRD Offsets") are set forth in Appendix C, attached hereto and incorporated by reference.  Trustee(s) whose resources are addressed in the Early Restoration Project, as designated by the Trustee Council in accordance with Paragraph 11 of the Framework Agreement, are also identified in Appendix C.  To the extent the Parties anticipate that one or more NRD Offsets are likely to need to be scaled against injuries to one or more natural resources and/or services that are not of the same type or quality, and scaling factors have been agreed upon, Appendix C also includes those scaling factors.  NRD Offsets shall be applied only to the injuries within the boundaries of the state or states in which the Early Restoration Project is implemented, or as otherwise provided in Appendix C.

B. Terms used in the NRD Offsets that are defined in OPA or in 15 C.F.R. Part 990 shall have the meaning set forth in the statute or regulations, except where a different definition is provided in Appendix C or in Appendix D (Glossary of Terms), attached hereto and incorporated by reference, in which case the meaning provided in the applicable Appendix shall control.

C. The Trustees, collectively and individually, shall credit all NRD Offsets against their assessment of total injury resulting from the Oil Spill as provided in the Framework Agreement.

D. Upon full payment of the amount specified in Paragraph II.A., BPXP shall be entitled to the NRD Offsets set forth in Appendix C as provided in the Framework Agreement.

E. The Trustees agree that the NRD Offsets set forth in Appendix C shall apply to the NRDA even if the Early Restoration Project does not achieve the anticipated results.

F.  BPXP waives the right to claim that the Early Restoration Project provides benefits to natural resources or services beyond those identified in Appendix C, or provides benefits to Trustees other than those identified in Appendix C.

G.  Except as otherwise agreed to by the Parties, none of the terms of this Stipulation, including, without limitation, the amount of the NRD Offset and the methodology used to calculate the NRD Offset in this Project Stipulation, shall be used as precedent for any other restoration project.  Furthermore, neither the amount of the NRD Offset nor the methodology used to calculate the NRD Offset shall be used as precedent for determining NRD Offsets or the benefits or effects of restoration in this or for any other case.

H.  Any NRD Offsets set forth in Appendix C shall be applied to reduce the Trustees' assessment of natural resource damages resulting from the Oil Spill in any civil litigation or other proceeding brought by the Trustees, individually or collectively, seeking natural resource damages.  To the extent NRD Offsets have been applied as provided in the Framework Agreement by the Trustees in the assessment of total injury, then BPXP is not entitled to any further application of the NRD Offsets in litigation or other proceedings brought by the Trustees.


IV.   UNDERLINE_EFFECT OF STIPULATION

A.  This Project Stipulation is binding upon the Parties and their successors and assigns.

B.  Except as provided herein, the Parties make no admission of fact or law by entering into this Project Stipulation.

C.  The Trustees agree to incorporate this Project Stipulation into the Administrative Record for the Deepwater Horizon Natural Resource Damage Assessment.

D.  Within five (5) days of execution of this Project Stipulation, the United States, acting through the United States Department of Justice, counsel representing those State Trustees who are parties in the Deepwater Horizon Oil Spill Multi-District Litigation ("MDL"), and BPXP shall file a notice of this Project Stipulation, for informational purposes only, with the MDL Court in the form of Appendix E (Notice of Project Stipulation), attached hereto and incorporated by reference.

E.  The Trustees hereby covenant not to sue BPXP for claims for damages or injuries to or losses of natural resources resulting from the activities of the Trustees in implementing the Early Restoration Project.


V.   GENERAL PROVISIONS AND RESERVATIONS OF RIGHTS

A.  Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation shall not be construed to limit in any way the authority of the Trustees to perform assessments, engage in any restoration planning, or select and implement restoration projects; nor shall it require BPXP to fund any of these activities.

B.  This Project Stipulation shall not limit the Trustees' rights to recover costs for reasonable oversight costs related to assessments, restoration planning activities, selection and implementation of restoration projects, or other reasonable costs as provided in 33 U.S.C.

§ 2706 including the Trustees' costs associated with the selection of Early Restoration Projects, development of the Early Restoration Plan(s), and general non-project specific administration and monitoring of the early restoration process; provided, however, nothing in this Project Stipulation shall permit the Trustees to recover additional costs of implementation of the Early Restoration Project except in accordance with Paragraph II.H.

C. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., this Project Stipulation does not operate to release BPXP from any potential natural resource damage or other liability, and the Trustees reserve all other claims against BPXP and/or other parties related to natural resource damage liability or any other liability arising from the Oil Spill.

D. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees reserve the right to use any appropriate methodologies for assessing natural resources injuries, for determining the natural resource damages and for planning and scaling restoration for the Oil Spill.

E. Except with respect to the Early Restoration Project that BPXP has agreed to fund and the agreed upon NRD Offsets under this Project Stipulation, BPXP reserves all legal and evidentiary defenses it may have against any claim asserted by any Trustee, including, without limitation, any defenses related to natural resource damages arising from the Oil Spill, any natural resource damages assessment associated with the Oil Spill, and any methodologies the Trustees use to assess natural resources injuries, determine the natural resource damages claims, and in planning and scaling restoration.  BPXP reserves all claims, cross-claims or counterclaims it may have against any person or entity not a party to this Stipulation.

F. Except for the stipulated NRD Offsets and as set forth herein in Paragraph IV.E., the Trustees expressly reserve all claims, demands, and causes of action, either judicial or administrative, past or future, in law or equity, against any person or entity not a party to this Project Stipulation for any matter arising out of or in any way relating to the Oil Spill.

G. BPXP reserves its ability to assert that successful implementation of the Early Restoration Project results in a reduction of private claims for loss of profits or impairment of earning capacity due to the injury, destruction or loss of real property, personal property, or natural resources that have been or may be brought by any other person or claimant under the Oil Pollution Act, 33 U.S.C. § 2702 (b)(2)(C) and (E), or any other federal, state or local laws.  The Trustees, individually and collectively, hereby agree that they will not oppose BPXP's effort to receive such a reduction; provided however that nothing herein shall require any Trustee to support BPXP's effort to receive such a reduction.

H. The undersigned representative of each Party certifies that he or she is fully authorized to enter into the terms and conditions of this Project Stipulation and to execute and legally bind such Party to this document.  This Project Stipulation may be signed in counterparts.

IN WITNESS WHEREOF, the undersigned Parties have executed and delivered this Project Stipulation, effective as of the date of execution by all Parties.

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Louisiana Oyster Cultch Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____6/4/12_____
Date

*Ignacia S. Moreno*

IGNACIA S. MORENO
U.S. Department of Justice
Assistant Attorney General
601 D Street, NW
Washington, D.C. 20004

_____
Date

_____

U.S. Department of the Interior

_____
Date

_____

CRAIG R. O'CONNOR
National Oceanic and Atmospheric
Administration

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Louisiana Oyster Cultch Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE UNITED STATES:

_____
Date

_____
IGNACIA S. MORENO
U.S. Department of Justice
Assistant Attorney General
601 D Street, NW
Washington, D.C. 20004

_____5/22/12_____
Date

_____
RACHEL JACOBSON
U.S. Department of the Interior
Acting Assistant Secretary for Fish and Wildlife and Parks
1849 C Street NW
Washington, D.C. 20240

_____5/23/12_____
Date

_____
CRAIG R. O'CONNOR
National Oceanic and Atmospheric

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Louisiana Oyster Cultch Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF ALABAMA:



____5/22/12_____
Date

R. COOPER SHATTUCK
Chief Legal Advisor for Governor Robert Bentley and Principal Representative for Alabama Trustees
State Capitol, 600 Dexter Avenue, Room N-103
Montgomery, Alabama 36130

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Louisiana Oyster Cultch Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF FLORIDA:

May 22, 2012
Date

LARRY MORGAN
Florida Department of Environmental
Protection
Chief Deputy General Counsel
3900 Commonwealth Blvd, MS 35
Tallahassee, Florida 32399-3000

May 23, 2012
Date

NICK WILEY
Florida Fish and Wildlife Conservation
Commission
Executive Director
620 South Meridian Street
Tallahassee, Florida 32399-1600

11

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Louisiana Oyster Cultch Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:


___5/23/12_____
Date

_____
GARRET GRAVES
Louisiana Coastal Protection and
Restoration Authority
Chair
P.O. Box 94004,
Baton Rouge, Louisiana 70804-9004


_____
Date

_____
ROLAND GUIDRY
Louisiana Oil Spill Coordinator's Office
Oil Spill Coordinator
P.O. Box 66614
Baton Rouge, Louisiana 70896


_____5/23/12_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301


_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898


_____
Date

_____
SCOTT ANGELLE
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Louisiana Oyster Cultch Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

_____
Date

_____
GARRET GRAVES
Louisiana Coastal Protection and
Restoration Authority
Chair
P.O. Box 94004,
Baton Rouge, Louisiana 70804-9004

5/23/12
_____
Date

_____
ROLAND GUIDRY
Louisiana Oil Spill Coordinator's Office
Oil Spill Coordinator
P.O. Box 66614
Baton Rouge, Louisiana 70896

_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

_____
Date

_____
SCOTT ANGELLE
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

12

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Louisiana Oyster Cultch Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

_____
Date

_____
GARRET GRAVES
Louisiana Coastal Protection and
Restoration Authority
Chair
P.O. Box 94004,
Baton Rouge, Louisiana 70804-9004

_____
Date

_____
ROLAND GUIDRY
Louisiana Oil Spill Coordinator's Office
Oil Spill Coordinator
P.O. Box 66614
Baton Rouge, Louisiana 70896

_____
Date

_____
PEGGY HATCH
Louisiana Department of Environmental
Quality
Secretary
P.O. Box 4301
Baton Rouge, Louisiana 70821-4301

*5-23-2012*
_____
Date

_____
ROBERT BARHAM
Louisiana Department of Wildlife and
Fisheries
Secretary
P.O. Box 98000
Baton Rouge, Louisiana 70898

_____
Date

_____
SCOTT ANGELLE
Louisiana Department of Natural Resources
Secretary
P.O. Box 94396
Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Louisiana Oyster Cultch Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF LOUISIANA:

_____              _____
Date                                 GARRET GRAVES
                                     Louisiana Coastal Protection and
                                     Restoration Authority
                                     Chair
                                     P.O. Box 94004,
                                     Baton Rouge, Louisiana 70804-9004


_____              _____
Date                                 ROLAND GUIDRY
                                     Louisiana Oil Spill Coordinator's Office
                                     Oil Spill Coordinator
                                     P.O. Box 66614
                                     Baton Rouge, Louisiana 70896


_____              _____
Date                                 PEGGY HATCH
                                     Louisiana Department of Environmental
                                     Quality
                                     Secretary
                                     P.O. Box 4301
                                     Baton Rouge, Louisiana 70821-4301


_____              _____
Date                                 ROBERT BARHAM
                                     Louisiana Department of Wildlife and
                                     Fisheries
                                     Secretary
                                     P.O. Box 98000
                                     Baton Rouge, Louisiana 70898


05/23/12
_____              _____
Date                                 SCOTT ANGELLE
                                     Louisiana Department of Natural Resources
                                     Secretary
                                     P.O. Box 94396
                                     Baton Rouge, Louisiana 70804-9396

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Louisiana Oyster Cultch Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF MISSISSIPPI:


_____5/23/12_____                     _____
Date                                          TRUDY D. FISHER
                                              Mississippi Department of Environmental
                                              Quality
                                              Executive Director
                                              P.O. Box 2261
                                              Jackson, Mississippi 39225-2261

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Louisiana Oyster Cultch Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____5/24/12_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744

_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711-2873

_____
Date

_____

Texas Commission on Environmental Quality

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Louisiana Oyster Cultch Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:


_____
Date

_____
CARTER SMITH
Texas Parks and Wildlife Department
Executive Director
4200 Smith School Road
Austin, Texas 78744


_____
Date

_____
LARRY L. LAINE
Texas General Land Office
Deputy Land Commissioner and Chief Clerk
P. O. Box 12873
Austin, Texas 78711-2873


_____
Date

_____
Texas Commission on Environmental Quality


14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Louisiana Oyster Cultch Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR THE STATE OF TEXAS:

_____
Date

_____
Texas Parks and Wildlife Department

_____
Date

_____
Texas General Land Office

_____
5/24/12
Date

_____
Zak Covar, Executive Director
Texas Commission on Environmental Quality

14

THE UNDERSIGNED PARTY enters into this Project Stipulation for the Louisiana Oyster Cultch Project in the matter of *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, relating to the *Deepwater Horizon* Oil Spill.

FOR BP EXPLORATION & PRODUCTION, INC.:

_____5.17.12_____
Date

_____5-17-12_____
Date

*Approved J.M.*

Agent authorized to accept notices or service on behalf of BP Exploration & Production, Inc.:

Name:                    Jean Martin, *or successor attorney assigned to manage Deepwater*
                         *Horizon Natural Resource Damage Claims*
Address:                 BP Legal Department
                         501 Westlake Park, Blvd., 16th
                         Houston, Texas 77079
Telephone Number:        281-366-6060
Facsimile Number:        281-366-5901

**APPENDIX A**

**<u>EARLY RESTORATION PROJECT</u>**

# Appendix A:  Louisiana Oyster Cultch Project

## 1.0   INTRODUCTION

This document describes the Louisiana Oyster Cultch Project (the "Early Restoration Project") to be implemented with funding provided by BPXP, resulting in the NRD Offsets identified in Appendix C.  This document is part of a Project Stipulation executed by BPXP, the Trustees, and the United States Department of Justice.

## 2.0   PROJECT DESCRIPTION

The Louisiana Oyster Cultch Project involves: (1) the placement of oyster cultch onto approximately 850 acres of public oyster seed grounds throughout coastal Louisiana, including 3-Mile Bay, Drum Bay, Lake Fortuna, South Black Bay, Hackberry Bay and Sister Lake (Figure 1), and (2) construction of an oyster hatchery facility in Grand Isle, Louisiana that would produce supplemental larvae and seed.



Figure 1. Louisiana oyster cultch planting locations.

## 3.0   PROJECT IMPLEMENTATION

### 3.1   Performance Criteria, Monitoring and Maintenance

Consistent with section 3.2.2.2.3 of the Deepwater Horizon Oil Spill Phase I Early Restoration Plan and Environmental Assessment ("Plan"), project performance will be assessed through physical and biological monitoring of oyster cultch plants.  The monitoring program will determine whether the project goals and objectives have been

achieved, or whether corrective actions are required to meet the goals and objectives. Biological monitoring parameters will consist of oyster metrics including density, size, and spat settlement in cultch plants. This monitoring will be consistent with the oyster monitoring protocols used by the Louisiana Department of Wildlife and Fisheries in their annual oyster stock assessment activities. Oyster cultch plant maintenance will consist of periodic evaluation of cultch coverage within the placement boundaries and could include cultch replenishment, if feasible.

Project implementation will commence upon filing of the Notice of Project Stipulation with the MDL Court. Project implementation will be complete when the performance criteria consistent with section 3.2.2.2.3 of the Plan have been met.

## 3.2     Estimated Budget – Louisiana Oyster Cultch Project

| Cost Category | Cost |
|---|---:|
| Project Implementation Base Cost (includes, without limitation, project planning, permitting, engineering design, construction, oversight, inspection, monitoring, and adaptive management, consistent with section 3.2.2.2.3 of the Plan) | $14,874,300 |
| Potential Contingency Amount, consistent with the provisions of Paragraph II.E. | Up to $708,300 |
| *Total Potential Project Costs* | *Up to $15,582,600* |

17

**APPENDIX B**

**<u>EARLY RESTORATION PLAN</u>**

The Early Restoration Project is included in the Deepwater Horizon Oil Spill Phase I Early Restoration Plan and Environmental Assessment (the "Plan"), available at www.doi.gov/deepwaterhorizon, which was adopted by the Trustees after public review and comment.  Public comments received on the Plan are summarized in the Plan, and Trustees' responses to the comments are included.  All public comments received on the Plan are included in full in the NRDAR Administrative Record for the Plan, which can be found at the same web address.

**APPENDIX C**

**NRD OFFSETS**

NRD Offsets are 4,000,000 discounted kilogram years (Dkg-Ys) of oyster Secondary Production (based on ash-free dry weight of oyster tissue) in Louisiana, applicable first to any oyster injuries in Louisiana, and if any surplus remains, to nearshore benthic invertebrate injuries in Louisiana, as determined by the Trustees' total assessment of injury for the Oil Spill.

For the purposes of applying the NRD Offsets to the calculation of injury, the Parties agree as follows:

(1)  In the event that the injury determination for oysters in Louisiana is characterized in the natural resource damages assessment using a metric other than Dkg-Ys of oyster Secondary Production (based on ash-free dry weight of oyster tissue) in Louisiana, the Trustees agree to translate the agreed upon NRD Offsets into a currency consistent with the metric used to characterize the injury. Any necessary translation of the offsets will rely on the data and methods developed for the assessment and authorized in 15 C.F.R. Sections 990, *et seq*.

(2) The Trustees agree that the comparison of injury to NRD Offsets must account for the baseline condition of the injured resource.

For the purposes of Paragraph III.A. of this Project Stipulation, the Trustees whose resources are addressed by this Early Restoration Project are the Louisiana Coastal Protection and Restoration Authority, the Louisiana Oil Spill Coordinator's Office, the Louisiana Department of Environmental Quality, the Louisiana Department of Wildlife and Fisheries, the Louisiana Department of Natural Resources, NOAA and DOI.

**APPENDIX D**

**GLOSSARY OF TERMS**

These definitions are not considered to be a comprehensive list for all Early Restoration Projects under the Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill executed April 20, 2011.  Future projects may require other definitions, including but not limited to, other definitions for habitats included in this list.

**Oyster Cultch Definitions**

**Secondary Productivity**: The strict definition of secondary productivity is the rate of production of consumers (heterotrophs) in an ecosystem (Edmondson & Winberg, 1971). Oyster production is a portion of secondary productivity, and for oyster cultch projects is defined as the secondary production attributed to oysters only.

**Oyster cultch**: The term oyster cultch refers to clean oyster shell or other clean hard substrate (limestone, crushed concrete,) placed  in areas of soft sediments which provides the required surfaces for the settlement of oyster larvae (spat) from the water column.

*Edmondson, W.T. & G.G. Winberg, 1971, IBP Handbook on Secondary Productivity International Biome Programmed, London, 358 p.*

**Discounted Kilogram Years** is expressed as the present value of 2012 kilogram years.

**APPENDIX E**

**<u>NOTICE OF PROJECT STIPULATION</u>**