UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179 SECTION "J" |
| This Document Relates to: MDL No. 2179; No. 10-4536 | * * * * * | JUDGE BARBIER MAGISTRATE NO. 1 MAGISTRATE SHUSHAN |
| * * * * * * * * * * * * | | |

MEMORANDUM OF ANADARKO PETROLEUM CORPORATION
AND ANADARKO E&P COMPANY LP REGARDING
UNITED STATES' MOTION FOR ENTRY OF CONSENT DECREE

Anadarko Petroleum Corporation and Anadarko E&P Company, LP (together "Anadarko") do not oppose the United States' Unopposed Motion for Entry of Consent Decree [Rec. Doc. 6436] (the "Motion"). Anadarko files this brief memorandum solely to note that certain of the United States' arguments in support of entry of the settlement do not accurately reflect the statutory penalty factors and are otherwise inconsistent with the Clean Water Act ("CWA"), and should not be adopted by the Court in subsequent proceedings involving other parties.

I.   ARGUMENT

The CWA sets out specific factors that the Court must use to assess the appropriate amount of civil penalties: (1) the "seriousness of the violation"; (2) the economic benefit to the violator, if any; (3) the degree of culpability; (4) any other penalty assessed for the same incident; (5) any history of prior violations; (6) the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge; (7) the economic impact of the penalties on the violator; and (8)

A/74958127.3

any other matters as justice may require. 33 U.S.C. § 1321(b)(8). A district court has discretion in determining a penalty amount, but it must consider each factor. Although the United States references certain of the statutory factors in its arguments in support of entry of the consent decree, it does not undertake a complete penalty analysis consistent with the prescribed factors in the CWA. Thus, the United States' analysis cannot serve as a basis for any subsequent penalty assessment by this Court.

### A.   A "Top-Down" Penalty Assessment Approach is not Mandatory.

The United States' Motion purports to outline the penalty assessment framework that would be conducted by this Court, but it does not accurately reflect this Court's duties and discretion in assessing a penalty under the CWA.

The United States asserts that "the Fifth Circuit has used a 'top-down' approach to determine the amount of civil penalties" under the CWA. Motion at 16. While the Fifth Circuit has affirmed district courts' use of a "top-down" approach in certain cases, the Fifth Circuit has never held that a "top-down" approach to CWA penalty assessment is mandatory. *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.,* 73 F.3d 546, 573 (5th Cir. 1996). The plain text of the CWA does not mandate any particular approach, except to require consideration of each of the listed factors. Federal Courts of Appeal have held that district courts have discretion to use either a "top-down" or "bottom-up" approach in assessing penalties, depending on the circumstances. *See, e.g., .S. v. Smithfield Foods, Inc.,* 191 F.3d 516, 528 n. 7 (4th Cir. 1999) ("the CWA does not require the use of either method, however, courts have applied both"); U.*S. v. Municipal Authority of Union Tp.*, 150 F.3d 259, 265 (3d Cir. 1998) ("Some courts have employed a "top down" approach … [o]ther courts have used a "bottom up" approach. . . ."). This Court should exercise its own judgment to determine whether a "top-down," "bottom-

up," or some other approach that considers all statutory factors[1] is appropriate, after all interested parties have had an opportunity to brief the issue.

B.  **Certain of the United States' Arguments are not Relevant to the Statutory Penalty Factors.**

The United States' Motion identifies various facts purportedly supporting the settlement amount, but these alleged facts are not relevant to the penalty assessment factors under the statute. The United States argues that "MOEX stood to make substantial profits if Macondo had been a success" and that this alleged fact weighs in favor of assessing a high penalty against MOEX. Motion at 13.

The United States does not identify to which factor this argument supposedly is relevant, and there is no support either in the text of the CWA or in reported decisions that potential profits are relevant to a penalty assessment under the CWA. The only arguably relevant factor is the "economic benefit" factor, but that requires the Court to consider the "economic benefit to the violator, if any, resulting from the violation" of the CWA, not the economic benefit that may have been realized had a violation never occurred. 33 U.S.C. § 1321(b)(8). This factor is intended "to prevent a party violating the CWA from gaining an unfair advantage against its competitors, and to prevent it from profiting from its wrongdoing." *United States v. Allegheny Ludlum Corp.*, 366 F.3d 164, 178 (3d Cir. 2004); *United States v. Scruggs*, No. G-06-776, 2009 WL 500608, at *4 (S.D. Tex. Feb. 26, 2009) (same). No one could reasonably contend that any of the non-operating investors benefitted financially from the violation in this case

---

[1] While the record evidence here is not clear, it appears that the latter approach was used here, where an amount the United States considers to be fair and appropriate in light of the statutory factors was agreed upon in arriving at the settlement amount with MOEX.

A/74958127.3                           3

The United States' implicit suggestion that there is something worthy of punishment in merely investing in a potentially profitable oil and gas exploration and production operation on the OCS is unfounded. The United States earns substantial royalties from the sale of minerals extracted from the OCS, and domestic energy exploration and production serves a critical social need. The United States thus has a powerful interest in incentivizing private investment in exploration and production on the OCS, and no public purpose is served by penalizing investors who make such beneficial projects possible, but who have no control over the actual operations.

Finally, the United States also contends that a large CWA penalty is warranted in this case because "Congress intended that the cost of pollution would be borne by the parties directly engaged in the enterprise which caused the spill," Motion at 13 (emphasis added), but that observation is irrelevant to assessment of civil penalties under the CWA. CWA penalties do not recover damages for the costs of an oil spill. OPA, not the CWA, is the principle federal law governing reimbursement of the costs of oil pollution. As the United States makes clear, and this Court has held, the "[t]he purpose of civil penalties is to punish the violator…." Motion at 20; Order and Reasons as to Transocean and BP's Cross- Motions for Partial Summary Judgment Regarding Indemnity [Doc. 5446] at 20. That is why, as the United States argues – and Anadarko agrees – CWA penalties do "not allocate proportionate liability for response costs or damages, but rather targets a specific penalty to a specific defendant." Motion at 10, n. 9.

## II.  CONCLUSION

Anadarko recognizes that the only issue the Court need resolve is whether the proposed settlement is fair and reasonable, and Anadarko does not oppose the United

States' Motion for Entry of Consent Decree.  Notwithstanding, as explained above, many of the United States' arguments in support of its Motion are either not consistent with, or are wholly irrelevant to, the statutory penalty factors prescribed in the CWA.  The United States' arguments in its Motion therefore should not provide a framework for resolution of any future CWA penalty assessments or settlements.

                                                                          Respectfully submitted,

DATED: June 7, 2012                  BINGHAM McCUTCHEN, LLP

                                                                          /s/ *James J. Dragna*
                                                                          James J. Dragna
jim.dragna@bingham.com
Bingham McCutchen LLP
355 South Grand Avenue
Suite 4400
Los Angeles, California 90071-3106
Telephone (213) 680-6436
Facsimile (213) 680-8636

Ky E. Kirby
ky.kirby@bingham.com
David B. Salmons
david.salmons@bingham.com
Michael B. Wigmore
michael.wigmore@bingham.com
Warren Anthony Fitch
tony.fitch@bingham.com
Randall M. Levine
randall.levine@bingham.com
2020 K Street, NW
Washington, DC 20006-1806
Telephone (202) 373-6000
Facsimile (202) 373-6001

A/74958127.3                                      5

                        KUCHLER POLK SCHELL
                        WEINER & RICHESON, LLC

Deborah D. Kuchler, T.A. (La. Bar No. 17013)
dkuchler@kuchlerpolk.com
Janika Polk (La. Bar No. 27608)
jpolk@kuchlerpolk.com
Robert Guidry (La. Bar No. 28064)
rguidry@kuchlerpolk.com
1615 Poydras Street, Suite 1300
New Orleans, LA  70112
Tel:  (504) 592-0691
Fax:  (504) 592-0696

A/74958127.3            6

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Pre-trial Order No. 12, I have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve system, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, who will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on June 7, 2012.

_____*/s/ James J. Dragna*_____
James J. Dragna
