# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C.  20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

June 8, 2012

**BY ELECTRONIC MAIL**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana  70130

> Re:   MDL No. 2179 — Challenge to 21 of the 119 United States' Deliberative Process Privilege Claims

Dear Judge Shushan:

In its response to BP's request that this Court review 21 deliberative process privilege claims, the United States essentially concedes that BP has properly identified the legal principles that this Court should apply in conducting such a review.

Accordingly, BP respectfully requests that the Court (1) review the roster of 21 documents that BP has identified and the United States has submitted for *in camera* review, and (2) direct the United States to produce all 21 of these documents.

As an initial matter, the United States concedes that the deliberative process privilege does not protect purely factual material, and that "it is possible that some of [the challenged] documents could be redacted."  U.S. letter at 2 n.1.  Of course, if documents can be redacted, they must be produced in redacted form.  *See* BP's May 29, 2012 letter at 3-4 (citing cases).  The United States thus has no response for this black-letter proposition other than to claim that "the substance of the factual information contained in these privileged communications has been produced in numerous forms" and "requiring redaction here would be, in essence, a meaningless exercise."  U.S. letter at 2 n.1.  It is not, however, the United States' prerogative to select which redactions are meaningful and which are "meaningless."  Because the deliberative process privilege does not protect factual statements, all factual statements appearing in the 21 documents are subject to discovery**.**

More fundamentally, the United States is on equally flimsy grounds in trying to avoid production of any of the well-defined, narrowly confined 21-document subset that BP now seeks to obtain through discovery.  *First*, the United States concedes that the "deliberative process

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
June 8, 2012
Page 2


privilege is a qualified privilege." U.S. letter at 2.  The privilege here asserted by the United States therefore unquestionably can be overcome where, as here, BP's interests in production outweigh the Government's interests in secrecy.

*Second*, the United States concedes that "a government acting as plaintiff [is] a[] factor to consider" in determining whether the United States' interests are sufficiently weighty.  *Id.* at 4.  In fact, however, as the authority cited in BP's opening letter establishes, this factor weighs heavily in favor of disclosure and is largely determinative in this instance.

The deliberative process privilege is "severely restricted" where the government seeks affirmative relief.  *United States v. Ernstoff*, 183 F.R.D. 148, 153 (D.N.J. 1998) (citing cases).  This is because it is "fundamentally unfair to allow [the government] to evade discovery of materials" in such cases.  *Id.*  Although BP has not reviewed the 21 challenged documents, they almost certainly are of central relevance to BP's defense of the United States' expected claims for Clean Water Act civil penalties based, in part, on the statutory penalty factor that examines "the nature, extent, and degree of success of any efforts of the violator to minimize or mitigate the effects of the discharge."  33 U.S.C. § 1321(b)(8).

To take just a few examples:

- In general, the documents appear to be highly relevant to showing that the United States was in charge (and of course very much aware of) the various source-control operations and options in directing the source control efforts of BP and other responsible parties — information that would rebut the (erroneous) arguments already being voiced that BP was responsible for all source-control decisions following the *Deepwater Horizon* incident.

- The withheld documents dated June 7 likely relate to a directive issued on June 8 (HCG013-009500) that required that BP demonstrate collection capacity to cover the full estimated amount of the spill.  These documents might show that the directive responded to BP's own planning, and might also reflect the scope and understanding of the flow rate from the *Deepwater Horizon*.

- The withheld documents dated July 16, 2010 might indicate the uncertainty and concern over allowing the well to be shut-in and the consequent Government-ordered delays in the shut-in process.  Such a document obviously would be of relevance to rebutting the contentions of those parties that claim that BP should have capped the well at some earlier point in time.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
June 8, 2012
Page 3

- The withheld documents dated July 21, 2010 might similarly address concerns over shutting in the well and reflect conversations about shut-in pressure, a key factual issue related to final-day flow-rate estimation.

- The withheld documents regarding static kill might show that the United States considered and agreed with the operation.

To be sure, these possibilities are given solely for illustrative purposes, and BP must necessarily speculate to some extent about the role these 21 documents might play, given the current stage of Phase 2 discovery and the fact that BP has not reviewed them. But these types of uncertainties are precisely why courts "severely restrict" the deliberative process privilege where, as here, the government acts as a party plaintiff.

Where as here, the United States wishes to recoup large monetary penalties by bringing criticisms of BP's source control efforts and flow rate estimates, it is simply unfair for the United States, at the same time, to shield from discovery documents that describe BP's collaboration with the United States, undertaken alongside the United States, largely at BP's own expense.

In this regard, it is important to recognize that the response to the *Deepwater Horizon* oil spill was a collaborative effort, with the United States possessing the "final say" over major decisions. BP's actions with respect to source control were at all times monitored, evaluated, and ultimately controlled and directed by government officials. The United States, under the aegis of the Federal On-Scene Coordinator and the Unified Command structure, was in charge of the source control actions taken in response to the *Deepwater Horizon* oil spill. The United States should not now be able to hide the nature and extent of that collaboration in this litigation, and thereby hamper BP's ability to effectively defend itself from accusations that the company steered the response effort or adopted flawed source-control ideas.

***Third***, in attempting to rebut BP's need for just 21 specifically identified documents, the United States sets up, and then tries to knock down, a strawman; namely, an argument that the Government "does not waive its right to withhold privileged deliberative documents" because of its status as a plaintiff. U.S. letter at 4 (quoting *United States v. Hooker Chemicals & Plastics Corp.*, 114 F.R.D. 100, 102 (W.D.N.Y. 1987)).

But BP has never claimed that the United States "waived" its ability to assert the deliberative process privilege by suing BP. This is a primary reason why BP challenged only a small subset of 21 of the 119 documents over which the United States continues to assert a deliberative process privilege while allowing almost 100 other documents to go unchallenged. There is simply no truth to the United States' exaggerated claim that "[t]o order the release of the

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
June 8, 2012
Page 4


21 documents at this point sends the message that there is no protected space" for the government.  U.S. letter at 4.

What BP does insist is that — under case authorities that BP relies on and the United States does not claim were wrongly decided — the Government's ability to assert the privilege is "severely restricted" where, as here, it is a party plaintiff; and that the United States has greatly lessened expectations of deliberative privacy where, as here, it finds itself working collaboratively with a private party to determine how to contain, control, and close the MC 252 Well; and that any residual interest the United States may have in such circumstances is substantially outweighed by BP's interest in production of the 21 challenged documents.  *See, e.g.*, *Ernstoff*, 183 F.R.D. at 153; *see also Resolution Trust Corp. v. Diamond*, 773 F. Supp. 597, 605 n.7 (S.D.N.Y. 1991) (distinguishing *Hooker Chemicals*, and noting that "the government's role as plaintiff remains a consideration to be weighed in determining whether the privilege is overcome by the need for disclosure").

*Fourth*, the United States contends that its ability to assert the deliberative process privilege as a party plaintiff should be restricted only as to "routine reports produced in the ordinary course of business by an organization which regularly engages in affirmative litigation." U.S. letter at 4 (quoting *Ernstoff*, 183 F.R.D. at 153).

But the cases support no such restriction.  *See, e.g.*, *FDIC v. Hatziyannis*, 180 F.R.D. 292, 294 (D. Md. 1998) (defendant's interest outweighed government's where documents were "case-specific" and government entity "frequently finds itself as a plaintiff"); *EEOC v. Citizens Bank*, 117 F.R.D. 366 (D. Md. 1987) (denying assertion of deliberative process privilege without mentioning "routine" nature of documents); *McMillan v. United States (In re APCO Liquidating Trust)*, 420 B.R. 648, 654-655 (Bankr. M.D. La. 2009) ("The EPA cannot reasonably seek more than $10,000,000 from the estate for remediation based on [ ] analysis and decline to disclose to the Liquidating Trustee that analysis, which is relevant to the trustee's effort to determine the validity of the EPA's claim.").  In other words, there is no automatic deliberative shield, merely because the United States established an "*ad hoc* group" of decisionmakers under the factual circumstances of this case.  U.S. letter at 5.  To the contrary, the non-routine and highly collaborative nature of the *Deepwater Horizon* spill response, with the United States at the top of the pyramid and ultimately in charge, cuts strongly in favor of disclosure.  Indeed, it would be fundamentally unfair to allow the Government to collaborate closely with BP on a government-directed spill response, and then seek large financial penalties in part on grounds that the spill response was somehow misdirected, while at the same time shielding documents necessary for BP's defense of those claims.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
June 8, 2012
Page 5

    *Finally*, the United States tautologically asserts that this is "not an instance of the government claiming privilege over documents that private litigants would have to turn over," on the basis that "[n]o private litigant would *have* such documents because only the government has the responsibility to oversee the response." U.S. letter at 5. This claim obviously sweeps much too broadly. It would appear that, on the United States' logic, government documents are *always* subject to withholding from discovery because no private litigant ever creates government documents. Unsurprisingly, the United States cites no authority for such an approach to analyzing the deliberative process privilege.

*   *   *   *

    For all the above reasons, BP's need for full disclosure of the 21 challenged documents outweighs the United States' interest in shielding the documents from discovery. BP respectfully requests that the Court direct that, in light of BP's well tailored request, the fact that it is the United States that has initiated this litigation, and the nature of the United States' collaboration with BP, a complete production of these 21 documents is in order.

                                            Sincerely,

                                            Robert R. Gasaway

cc (via electronic mail):

Michael O'Keefe
R. Michael Underhill
Steven O'Rourke
Sarah D. Himmelhoch
A. Nathaniel Chakeres
Bethany Engel
Thomas A. Benson
Joel M. Gross
Allison B. Rumsey
Plaintiffs' Liaison Counsel
Defense Liaison Counsel (dsc2179@liskow.com)