UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * * * * * * | MDL No. 2179<br><br>SECTION: J<br><br>JUDGE BARBIER |
| (REF: CA 10-8888; CLAIM OF SEAHAWK DRILLING INC.) | * * | MAGISTRATE JUDGE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MOTION FOR STATUS CONFERENCE AND EXPEDITED TRIAL DATE

NOW INTO COURT comes Claimant Seahawk Drilling Inc. ("Seahawk"), and respectfully requests that the Court schedule a Status Conference in the above-captioned matter to request and expedited trial setting and scheduling order on the issue of whether its losses are (a) related to the federal moratoria on deepwater drilling and/ or (b) whether moratoria-related claims a covered economic loss under the Oil Pollution Act of 1990.

Before the oil spill, Seahawk the second-largest shallow-water jack-up drilling company in the world and owned a fleet of 20 mobile offshore jack-up drilling vessels. On April 20, 2010, the demand for Seahawk's shallow water services was significantly impeded when the J/U DEEPWATER HORIZON exploded and the Macondo well blew out. The oil spill directly curtailed demand for new offshore drilling services in shallow water. Contracts between Seahawk and oil companies to drill were deferred or canceled as oil companies decided to limit drilling operations or not initiate new shallow water as a result of the oil spill. Moreover, Seahawk incurred considerable expenses in having to meet the new safety requirements imposed by the federal government in the wake of the oil spill.

1

The slow pace at which Seahawk was able to return its fleet of shallow water drilling rigs to work caused Seahawk to idle four of its working rigs in August 2010, and another rig could no longer charge the much more lucrative day rate it was set to receive and, instead, could only charge the lower standby rate. Eventually, the deferral and cancellation of contracts resulting from the oil spill severely impacted Seahawk's revenue, and it was forced to file for bankruptcy. On February 11, 2011, Seahawk filed for bankruptcy in the Bankruptcy Court for the Southern District of Texas. As part of the bankruptcy, on April 11, 2011, Seahawk sold its entire fleet of drilling rigs to Hercules Offshore at a severely discounted price. The company is now in liquidation. Seahawk's potential for future income has been totally and permanently impaired. Seahawk's total damages arising out of the oil spill are approximately $216 million.

On September 10, 2011, Seahawk filed a claim with the Gulf Coast Claims Facility ("GCCF"). Additional materials were provided on January 31, 2011. After Seahawk declared bankruptcy, Seahawk amended its claim on March 17, 2011 to include a claim for loss of market capitalization. On May 28, 2011, GCCF denied Seahawk's claim. Seahawk appealed that decision on June 10, 2011, but the appeal was deemed ineligible on July 30, 2011. An additional claim was submitted on October 26, 2011, with revised information submitted on November 21, 2011. Seahawk's claim for lost profits and loss of earning capacity was denied on December 22, 2011. Further confirmation of the denial of these claims was sent on March 21, 2012, although GCCF advised that Seahawk was eligible to receive $14,360 as a final payment for property damage to oil rigs that needed to be cleaned of oil in the Gulf of Mexico and that it could elect to receive 60% of this amount as part of the final payment transition process.

On April 20, 2011, Seahawk filed the Court-approved short form joinder in the referenced limitation action.

On May 3, 2012, Plaintiffs Steering Committee and BP entered into an Amended Settlement Agreement purporting to settle various claims arising out of the spill, including claims for economic losses. This Amended Settlement Agreement, however, specifically excluded any "moratoria-related" claims from its scope. According to the settlement agreement, Seahawk is not eligible to submit a claim to the court-supervised settlement administration.

Accordingly, Seahawk requests that this Court convene a status conference for the purposes of entering a scheduling order and setting trial on an expedited basis to resolve these important issues. Seahawk's claims present a bellwether claim that will provide answers to these overarching issues regarding the recoverability of economic losses.

### CERTIFICATE OF NON-SUPPORT

In accord with Pretrial Order No. 11, undersigned counsel certifies that it contacted the Plaintiffs Steering Committee and advised of its intent to file this motion. Plaintiffs Liaison Counsel responded that the PSC did not support the filing of this motion.

Respectfully submitted,

/s/ Peter L. Hilbert, Jr.
JAMES M. GARNER (# 19589)
PETER L. HILBERT, JR. (#6875)
KEVIN M. MCGLONE (#28145)
**Sher Garner Cahill Richter Klein & Hilbert, L.L.C.**
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112-1033
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
COUNSEL FOR SEAHAWK DRILLING, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2012, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Peter L. Hilbert, Jr.*
PETER L. HILBERT, JR.