

SUTHERLAND ASBILL &  BRENNAN LLP

1001 Fannin, Suite 3700

Houston, Texas 77002

713.470.6100  Fax 713.654.1301

www.sutherland.com

**DAVID A. BAAY**
DIRECT LINE: 713.470.6112
E-mail:david.baay@sutherland.com

June 16, 2012

*VIA ELECTRONIC MAIL*

The Honorable Sally Shushan
United States District Court
 Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana  70130

> **Re:     MDL No. 2179 – Schedule 1 Challenges to the United States "Confidentiality Promise" Privilege**

Dear Judge Shushan:

Pursuant to this Court's orders of May 11, 2012 (Rec. Doc. 6510) and May 21, 2012 (Rec. Doc. 6561),  Transocean submits this brief and list of representative documents as its schedule 1 challenges to the United States claims of a "confidentiality promise" privilege on privilege logs served before May 1, 2012.  The United States claims this so-called privilege continues to protect 21 Phase II documents containing statements provided to the Oil Spill Commission under a promise of confidentiality.  The United States does not claim attorney-client or work product protection over these 21 documents.[1]

## I.     Challenged Entries and Meet-and-Confer Process

On May 31, 2012, Transocean challenged the basis and validity of the United States' decision to withhold 314 documents under an unidentified "CP" privilege, based on "assur[ances] of confidentiality."  The United States agreed to release 64 of these challenged entries on June 6, 2012, but continues to assert the privilege over 21 Phase II entries – with the rest either to be produced in a redacted form, not subject to challenge at this time, erroneously logged, or duplicates of other entries. [2]   Curiously, the United States released all "CP" documents containing BP or Woods Hole statements, but continues to withhold the majority of

---

[1] The United States asserts some of these documents are protected by both the deliberative process privilege and the confidentiality promise privilege.  For those documents, Transocean asks only that the Court resolve the confidentiality promise privilege claim.  If the confidentiality promise privilege is removed, the remaining deliberative process privilege claim will be addressed in accordance with the Court's order on deliberative process privilege claims.  (Rec. Doc. 6604.)
[2] Transocean does not challenge the United States' assertion of confidentiality promise privilege over non-Phase II documents.  It reserves its right to challenge those entries relating to later phases at the appropriate time.

The Honorable Sally Shushan
June 16, 2012
Page 2

documents containing statements of its own employees and contractors made under the same "assurances of confidentiality."

The United States' June 6, 2012 response claims that its "CP" or confidentiality promise privilege is based on an extension of the so-called *Machin* privilege, which protects confidential statements made to military air crash safety investigators. The United States response states that the Oil Spill Commission promised persons interviewed during the Commission's investigation that their statements would not be disclosed. The United States believes this promise makes documents containing those statements immune from discovery. The United States cites a string of cases – all of which apply the *Machin* privilege to protect confidential statements made to military air crash safety investigators – to support its confidentiality promise privilege.

Transocean continues to object to the confidentiality promise privilege claims that the United States has not agreed to withdraw or otherwise limit. As the party withholding documents behind a claim of privilege, the United States bears the burden of showing that the privilege applies. *See King v. University Healthcare Systems, L.C.*, 645 F.3d 713, 720-21 (5th Cir. 2011). For the reasons set forth below and based on the representative documents submitted to this Court for *in camera* review, Transocean believes the confidentiality promise privilege does not apply to the Oil Spill Commission's investigation, and even if it does, the United States has waived its protection.

## II.     The *Machin* Privilege

The *Machin* privilege does not apply to all government investigations. It was originally applied to protect confidential statements made to Air Force investigators in the wake of a B-52 bomber crash. *Machin v. Zuckert*, 316 F.2d 336 (D.C. Cir. 1963). The rationale, as described by the *Machin* court:

> [W]hen disclosure of investigative reports obtained in large part through promises of confidentiality would hamper efficient operation of an important Government program and perhaps even, as the Secretary [of the Air Force] here claims, **impair the national security by weakening a branch of the military**, the reports should be considered privileged. **Especially is that so when are sought in connection with a litigation to which the Government is not a party**[.]

*Id.* at 339 (emphasis added).

Federal courts have repeatedly held that the *Machin* privilege applies only to air crash safety investigations. In 2010, the District of Columbia – the same district that first applied the *Machin* privilege – refused to extend the *Machin* privilege to the United States' investigation of the 2007 Crandall Canyon Mine collapse. As in this case, the government refused to disclose interview materials, claiming the persons interviewed were promised confidentiality. In ordering that the interviews be produced, the court noted that the D.C. Circuit had only applied the

The Honorable Sally Shushan
June 16, 2012
Page 3

*Machin* privilege in air crash investigations, and a broader "accident investigation privilege" "does not appear in the *Machin* opinion" and "does not appear in any federal case!" *UtahAmerican Energy, Inc. v. Dep't of Labor*, 700 F. Supp. 2d 99, 110 (D.D.C. 2010) (exclamation point in original).

In 1996, the United States was similarly rebuffed. The court refused to apply *Machin* privilege protection to a confidential Navy medical investigation "because the instant case [did] not involve statements made to air crash safety investigators," and therefore, "the *Machin* privilege simply [did] not apply[.]" *Nickerson v. United States*, No. 95 C 7395, 1996 WL 5633465 (N.D. Ill. Oct. 1, 1996); *accord Powell v. Dep't of Justice*, 584 F.Supp. 1508, 1519 n.9 (N.D. Cal. 1984) ("[The *Machin*] privilege protects confidential statements made to air crash safety investigators and has no application to this case.").[3]

In the 50 years since *Machin*, not one federal Court of Appeals has extended the privilege beyond the military context. Even the Supreme Court has recognized its limited application, describing the *Machin* privilege as "protecting confidential statements made to government air crash safety investigators." *Dep't of Justice v. Julian*, 486 U.S. 1, 20 (1988).

The *Machin* privilege's limited application is based on the unique nature of military investigations. After a military accident, the government conducts two separate investigations: (1) a primary investigation, which documents the factual matter pertaining to the accident and (2) a safety investigation, which is solely concerned with safety and prevention of accidents. *See Cooper v. Dep't of Navy*, 558 F.2d 274, 275-76 (5th Cir. 1977) (describing Navy investigation); *see also Brockway v. Dep't of Air Force*, 518 F.2d 1184, 1185 (8th Cir. 1975) (describing Air Force investigation). Per military policy, only the primary investigation may form the basis for legal or administrative actions. The safety investigation is only available to those concerned with safety. It is not published nor is it available to military officials or lawyers defending actions against the United States. The *Machin* privilege only applies to the specialized safety investigation. *Cooper*, 558 F.2d at 278-79. It does not apply to the primary investigation. *Id.* In fact, the United States' recent attempts to expand the *Machin* privilege other primary investigations have been rejected.

---

[3] Notwithstanding *Machin's* limited reach (i.e., only to the air crash safety investigation context), a small set of district court cases outside the Fifth Circuit have cited *Machin* in other contexts that are in no way analogous to the United States' assertion of the privilege here. *See Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479 (S.D.N.Y. 2005) (citing *Machin* in connection with the denial of a Freedom of Information Act request to the CIA regarding a CIA investigation of detainee treatment); *Peck v. United States*, 88 F.R.D. 65 (D.C.N.Y. 1980) (denying, in a Federal Tort Claims Act lawsuit against the United States, a plaintiff's request for production seeking documents related to an FBI Office of Professional Responsibility investigation); *Cooney v. Sun Shipbuilding & Drydock Co.*, 288 F.Supp. 708 (D.C. Pa. 1968) (quashing subpoena by a plaintiff who was seeking information from a non-party, the Department of Labor, regarding an investigation that the government agency had conducted).

The Honorable Sally Shushan
June 16, 2012
Page 4

In this case, the government once again attempts to expand the boundaries of the *Machin* privilege. In doing so, the United States ignores almost 50 years of history and the rationale of the *Machin* decision itself. The Oil Spill Commission was charged with determining the causes of the Macondo oil spill, improving the country's ability to respond to oil spills, and recommending reforms to make offshore energy production safer. The Commission's report is publically available online and has been used for a number of non-accident prevention purposes, including this litigation. It is not a confidential safety investigation. Rather, it is a primary investigation analogous to the Crandall Canyon investigation, to which the *Machin* privilege did not apply.

### III.    Balancing

Moreover, the *Machin* privilege is not absolute and should not be applied where, as here, the government seeks affirmative relief. In *United States v. San Antonio Portland Cement Co.*, the court held that governmental privileges such as the *Machin* privilege could not be invoked to withhold government reports, memoranda, and Internal Revenue Service documents where the United States brought suit against a mining company to recover allegedly erroneous tax refunds. 33 F.R.D. 513, 514-15 (W.D. Tex. 1963). The court reasoned that "[i]t would be *unconscionable*" to permit the government to prosecute a civil suit and then "deprive the defendant of matters which might be material to its defense." *Id.* at 515 (emphasis added); *see also id.* at 515 n. 5 (distinguishing *Machin* as a case wherein "the Government… was not involved in the basic litigation, but was merely a third party upon whom a subpoena had been served). Because the disputed documents "appear[ed] to be relevant" and did not "reveal any military or state secrets," the government was not permitted to withhold them under claim of privilege. *Id.* at 515-16.

Here, the United States has brought suit seeking significant damages and penalties against Transocean, and it would be unconscionable, if not unconstitutional, to allow the government to withhold documents that are potentially relevant to Transocean's defense.

### IV.    Waiver

Finally, even if the *Machin* privilege applies to the Oil Spill Commission's investigation, the United States waived its protection by publicizing its report and/or selectively disclosing the BP and Woods Hole statements. Broadcasting a *Machin*-protected investigation report constitutes waiver. *Cooper v. Dep't of Navy*, 558 F.2d 274, 278 (5th Cir. 1977). Disclosure destroys the assurance of confidentiality and renders the *Machin* privilege rationale moot.

This court has also held disclosure of investigation reports constitutes waiver in this litigation. On September 1, 2011, this Court ruled that publication of Transocean's internal investigation report waived work product protection, reasoning that imposing such a wavier rule prevents the party from using work product protection to selectively disclose the favorable results of its investigation while withholding the full evidence from its adversaries. (Rec. Doc.

The Honorable Sally Shushan
June 16, 2012
Page 5

3894.)  Transocean believes the same concerns apply to the publication of the Oil Spill
Commission's report, especially in light of the United States' selective confidentiality promise
waiver.

The United States waived confidentiality privilege protection by publishing the Oil Spill
Commission report and selectively disclosing the BP and Woods Hole statements.  Allowing the
government to pick and choose which documents will remain privileged violates the basic
notions of fairness expressed in the Court's work-product decision.  This is especially true in a
case – such as this one – where the United States initiates an investigation and prosecutes the
claims arising out of that investigation.

**V.      Conclusion**

Transocean respectfully requests that this Court inspect *in camera* the designated
documents on the attached spreadsheet to determine whether the confidentiality promise
privilege applies to the Oil Spill Commission's investigation, and if it does, whether the United
States has waived its protection.


                                        Sincerely,

                                        _____/s/_____
                                        David Baay