# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * | MDL No. 2179 |
| · | * * | SECTION: "J" JUDGE BARBIER |
| This Document Relates to: No. 10-4536 | * * | |
| | * * | MAGISTRATE JUDGE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \* \*

# CONSENT DECREE BETWEEN THE
## UNITED STATES AND MOEX OFFSHORE 2007 LLC

A.   WHEREAS, Plaintiff the United States of America ("United States") filed a Complaint on December 15, 2010, captioned *United States of America v. BP Exploration & Production Inc. et al.*, Civ. Action No. 2:10-cv-04536, in the U.S. District Court for the Eastern District of Louisiana (the "Court"), alleging, among other things, that MOEX Offshore 2007 LLC ("Offshore") violated § 311 of the Clean Water Act, 33 U.S.C. § 1321 ("CWA"). The claim(s) alleged against Offshore for violation of the CWA in the United States' Complaint is based on discharges of hydrocarbons into waters of the United States beginning on April 20, 2010, relating to the Macondo Well[1] and the *Deepwater Horizon*, the mobile offshore drilling unit lost in the course of the blowout of the Macondo Well.

B.   WHEREAS, the State of Alabama ("Alabama") filed a complaint in the Court on August 12, 2010, and an amended complaint on April 4, 2011, alleging, among other things, that Offshore, MOEX USA Corporation ("MOEX USA"), the sole member of Offshore, and MOECO, the corporate parent of MOEX USA, as a result of the Deepwater Horizon Incident are liable for civil penalties under the Alabama Environmental Management Act for violating the Alabama Water Pollution Control Act, Alabama Air Pollution Control Act, Alabama Hazardous Waste Management Act and Alabama Solid Waste Disposal Act. Alabama further alleged that MOECO is the alter ego of Offshore and MOEX USA and that any liability of Offshore and MOEX USA is therefore imputed to MOECO.

C.   WHEREAS, the State of Louisiana ("Louisiana") filed a complaint in the Court on March 3, 2011, and an amended complaint on April 19, 2011, alleging, among other things,

---

[1] The definitions of this and other capitalized terms not defined on first reference are set forth below in Article III.

that Offshore, MOEX USA, and MOECO as a result of the Deepwater Horizon Incident are liable for civil penalties under the Louisiana Environmental Quality Act. Louisiana further alleged that MOECO is the alter ego of Offshore and MOEX USA and any liability of Offshore and MOEX USA is therefore imputed to MOECO.

D.    WHEREAS, the States of Texas, Mississippi, and Florida have not filed complaints in the Court concerning the Deepwater Horizon Incident, but have advised counsel for the Parties that they have potential claims for civil penalties against Offshore, MOEX USA, and/or MOECO.

E.    WHEREAS, the Court, on November 14, 2011, dismissed all civil penalty claims and all general maritime negligence claims asserted by Alabama and Louisiana against Offshore and MOEX USA, and those States have advised counsel for the Parties that they intend to appeal that ruling.

F.    WHEREAS, the MOEX Entities continue to deny that they have any liability arising out of or relating to the Deepwater Horizon Incident; the MOEX Entities continue to assert that they lacked any authority to control the activities associated with the Deepwater Horizon mobile offshore drilling unit and had no involvement in the events leading up to the Deepwater Horizon Incident.

G.    WHEREAS, counsel for the Parties have been advised by the States of Florida, Louisiana, Mississippi, and Texas that those States plan to participate in the terms provided by Article V of this Consent Decree by executing the appropriate instrument set forth in Appendices B1 through B5, supported by appropriate State processes.

H.    WHEREAS, under the schedule for MDL 2179 (E.D. La.), the Court has scheduled a trial to begin on February 27, 2012, on matters relevant to the claims asserted in the United States' Complaint, including the taking of evidence that could be relevant to the claims of the United States for civil penalties under § 311(b) of the CWA, as set forth in the Complaint.

I.    WHEREAS, the MOEX Entities contend that Offshore previously held a ten percent investment interest in the lease of the Macondo Well site, that Offshore no longer has any interest in that lease, and that neither MOEX USA nor MOECO has ever held an interest in that lease.

J.    WHEREAS, the MOEX Entities contend that they and MOECO have not, either directly or through a subsidiary, been the operators of any oil exploration or production project in the Gulf of Mexico.

K.    WHEREAS, the MOEX Entities contend that they and MOECO have never been subject to government-imposed penalties, fines, or sanctions for any violations of the CWA, based on activities in the Gulf of Mexico or elsewhere.

L.    WHEREAS, the MOEX Entities represent to the United States that, effective May 20, 2011, the MOEX Entities and MOECO assigned to BP Exploration and Production, Inc., all right, title, and interest to all claims and causes of action that the MOEX Entities could assert against any person arising from or relating to the Deepwater Horizon Incident (other than claims against Anadarko and certain insurance claims).

M.    WHEREAS, Offshore represents that MOECO has assigned to Offshore any remaining right, title and interest to any claims or causes of action that MOECO could assert

4

against any person arising from or relating to the Deepwater Horizon Incident (other than claims against Anadarko and certain insurance claims).

       N.     WHEREAS, the MOEX Entities did not participate in discussions between and among the States and the United States concerning either the payments due under Article V of this Consent Decree or the SEP specifications set forth in Paragraph 16, Article VI of this Consent Decree.

       O.     WHEREAS, the Parties agree, and the Court by entering this Consent Decree finds that this Consent Decree, (i) has been negotiated in good faith and will limit and avoid litigation between the Parties, and (ii) is fair, reasonable, and furthers the objectives of the CWA.

       NOW, THEREFORE, before the trial of any claims in connection with the Deepwater Horizon Incident, and without further adjudication or admission of any issue of fact or law, except as expressly set forth in Paragraph O above and Article I below, and with the consent of the Parties,

       IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.    JURISDICTION AND VENUE

       1.     This Court has jurisdiction over the subject matter of this action, pursuant to 33 U.S.C. § 1321(b) and 28 U.S.C. §§ 1331, 1345, and 1355, and over the Parties for the purposes of the entry and enforcement of this Consent Decree. Venue lies in the Eastern District of Louisiana pursuant to 28 U.S.C. § 98(a), 33 U.S.C. § 1321(b)(7)(E), and 28 U.S.C. §§ 1391 and 1395. Solely for purposes of this Consent Decree or any action to enforce this Consent Decree, the Parties acknowledge (a) the Court's exclusive jurisdiction over this Consent Decree and any action to enforce it, and (b) venue in the Eastern District of Louisiana. The federal civil penalty

assessed under this Consent Decree is under 33 U.S.C. § 1321(b)(7) as set forth in the

Complaint, in conformance with 33 U.S.C. § 1321(b)(11), which provides that civil penalties

shall not be assessed under both 33 U.S.C. §§ 1319 and 1321(b)(11) for the same discharge.  For

the purposes of this Consent Decree, the MOEX Entities agree that the Complaint states against

Offshore a claim for which, if proven, relief may be granted under the CWA.  Offshore has

denied, and continues to deny, any liability for civil penalties under the CWA or any State law.

## II.    APPLICABILITY

2.      The obligations of this Consent Decree apply to and are binding upon, separately

and collectively, the Parties, and each of their successors, assigns, or other entities or persons

otherwise bound by law to comply with this Consent Decree.

3.      In any action to enforce this Consent Decree, the MOEX Entities shall not raise as

a defense the failure by any officer, director, employee, agent, or contractor of any MOEX Entity

to take any actions necessary to comply with the provisions of this Consent Decree.

## III.    DEFINITIONS

4.      Terms used in this Consent Decree that are defined in the CWA, or in regulations

promulgated pursuant to the CWA, shall have the meanings assigned to them in such law or

regulations, unless otherwise provided in this Consent Decree.  Whenever the terms set forth

below are used in this Consent Decree, the following definitions shall apply:

a.      "Article" shall mean a portion of this Consent Decree denoted by a Roman

numeral.

b.      "Complaint" shall mean the complaint filed by the United States on

December 15, 2010, Civ. No. 10-4536 (E.D. La.).

6

      c.      "Consent Decree" shall mean this Consent Decree, including all appendices attached hereto.

      d.      "Date of Entry" shall mean the date upon which the Court enters this Consent Decree.

      e.      "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

      f.      "Deepwater Horizon Incident" shall mean the following, all through the date of lodging of this Consent Decree:  all discharges of hydrocarbons or other substances from the Deepwater Horizon mobile offshore drilling unit and/or the Macondo Well occurring on or after April 20, 2010, the explosion and fire on the Deepwater Horizon, the loss of the Deepwater Horizon, containment efforts related to the Macondo Well, construction of the relief wells within the meaning of  the Macondo Well, and clean-up and remediation efforts, and all other responsive actions in connection with the foregoing events.

      g.      "Eligible SEP Costs" shall mean the following costs incurred and paid by the MOEX Entities:

      i.      For SEPs completed by the MOEX Entities in compliance with Article VI of this Decree:  the actual purchase price of the SEP Property(ies) (including the price of  any necessary conservation easements) and the following normal and customary costs associated with acquiring land or easements: appraisal costs, broker fees, option fees, recording fees and taxes, survey costs, title and closing costs, title search and insurance costs, as well as the

costs of environmental assessment required by this Consent Decree or applicable law or regulation; and

        ii.      For the first three (3) pre-approved SEPs withdrawn by the MOEX Entities in compliance with Article VI of this Decree: fifty percent (50%) of the costs specified in Subparagraph 4.g.i., above.

        h.      "Interest" shall mean the interest earned at the rate and method specified by 28 U.S.C. § 1961(a) and (b), beginning upon the date of lodging of this Consent Decree and ending on the date the payment is made under Paragraph 8.

        i.      "Macondo Well" shall mean Wells Nos. 1, 2, and 3 at and within Block 252, Mississippi Canyon, OCS Official Protraction Diagram, NH 16-10 existing on or before the date of lodging of this Consent Decree.

        j.      "MOECO" shall mean Mitsui Oil Exploration Co., Ltd., a corporation formed under the laws of Japan, which (i) is not a party to this Consent Decree, (ii) contests the jurisdiction of the Court in connection with this Consent Decree and any matter centralized in MDL 2179 E.D. La, and (iii) denies all liability in connection with the Deepwater Horizon Incident.

        k.      "MOEX Entities" shall mean, together, Offshore and MOEX USA.

        l.      "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or a capital letter.

        m.      "Parties" shall mean, collectively, the United States and the MOEX Entities, and "Party" shall mean each individually.

8

n.     "Recipient(s)" shall mean the person(s) or entity(ies) that the MOEX Entities cause to acquire and protect the SEP Properties pursuant to this Consent Decree.

o.     "SEP(s)" shall refer to a Supplemental Environmental Project(s) undertaken pursuant to this Consent Decree.

p.     "SEP Property(ies)" shall mean the real property interest(s) acquired as a land acquisition and habitat protection SEP(s).

q.     "State Covenants Not to Sue" with reference to the States of Alabama, Florida, Louisiana, Mississippi, and Texas, shall mean documents in the form attached to this Consent Decree as Appendices B1 through B5, respectively (varying from the models set forth in Appendices B1 through B5 only with respect to dates, required signatures, attestations, and payment instructions, unless the relevant State and the MOEX Entities agree otherwise).

r.     "States" shall mean, collectively, the States of Alabama, Florida, Louisiana, Mississippi, and Texas; "State" shall refer to each individually.

## IV.     LODGING CONSENT DECREE WITH THE COURT

5.     The United States shall lodge this Consent Decree with the Court upon execution by the Parties.

6.     After lodging the Consent Decree, if the United States receives an executed State Covenant Not to Sue from a State, the United States shall transmit such State Covenant Not to Sue to the MOEX Entities.

7.     The MOEX Entities' obligations under this Consent Decree commence upon the Court's entry of this Consent Decree.

## V.    CIVIL PENALTIES AND RELATED TERMS

8.    Within thirty (30) days after the Date of Entry of this Consent Decree, the MOEX Entities shall pay civil penalties in the following amounts (with Interest) to the United States and to each State that has provided to the MOEX Entities an executed State Covenant Not to Sue:

| | | |
|---|---|---|
| a. | United States: | $45,000,000 |
| b. | Alabama: | $ 5,000,000 |
| c. | Florida: | $ 5,000,000 |
| d. | Louisiana: | $ 6,750,000 |
| e. | Mississippi: | $ 5,000,000 |
| f. | Texas: | $ 3,250,000 |

9.    If the MOEX Entities have not received an executed State Covenant not to Sue from a State within thirty (30) days after the Date of Entry, the MOEX Entities are under no further obligation to pay a civil penalty to that State under this Consent Decree. Upon request from a State or the United States, the MOEX Entities must confirm in writing whether they have received any State Covenant Not to Sue.

10.    The MOEX Entities' payments and other performance under this Consent Decree shall not constitute an admission by the MOEX Entities of any liability for civil penalties or any other claim arising out of or relating to the Deepwater Horizon Incident, and the MOEX Entities have denied and continue to deny any liability under the CWA for the Deepwater Horizon Incident.

11.    The MOEX Entities shall make payment of all amounts due the United States pursuant to this Consent Decree through FedWire Electronic Funds Transfer ("EFT") pursuant to

instructions that shall be provided to the MOEX Entities by the Financial Litigation Unit of the Office of the United States Attorney, Eastern District of Louisiana.  The MOEX Entities shall cause payment to be accompanied by a transmittal letter that shall specify that the payment is being made pursuant to this Consent Decree and also shall specify that the payment is to be deposited into the Oil Spill Liability Trust Fund under 33 U.S.C. § 1321(s) and 26 U.S.C. § 9509(b)(8), and shall reference the civil number assigned to this case (10-4536), along with DJ No. 90-5-1-1-10026.

12.     Payment of all amounts due each State shall be made pursuant to instructions by each State (see Appendices B1 - B5).

13.     If paid timely and in full (including Interest), the payments described in Paragraph 8 are the maximum amount to be paid under Article V of this Consent Decree, in return for the State Covenants Not to Sue provided to the MOEX Entities, along with the covenant not to sue provided by the United States in this Consent Decree (Paragraph 42).

14.     If any payment to be made under Article V of this Consent Decree by the MOEX Entities is more than ten (10) Days late, in addition to Interest that would be due and any other available remedy, the MOEX Entities also shall be liable to the United States for a per-day, stipulated penalty of one-quarter of one percent (0.25 percent) of the principal sum that was due but not timely paid, until such overdue sum is paid; that amount accrues each day (after the first ten (10) Days) that a payment goes unmade and is due immediately upon demand in writing by the United States.

15.     The MOEX Entities agree that neither they nor any affiliated entity will capitalize into inventory or basis nor take as a tax deduction, in the United States or elsewhere, any portion of the monies paid to any government under Paragraph 8 of this Consent Decree.

VI.     SUPPLEMENTAL ENVIRONMENTAL PROJECTS

16.     General Requirements. The MOEX Entities shall implement the SEPs set forth below and shall spend not less than twenty million dollars ($20,000,000) in Eligible SEP costs on such implementation.  Each SEP must be approved by the United States and otherwise implemented in conformance with this Consent Decree. (Neither approvals by the United States under this Consent Decree nor this Consent Decree, alter any law applicable to activities undertaken to implement SEPs.)  The intent of the Parties is that one-hundred percent (100%) of the specified amounts be expended as set forth in Subparagraphs 16.a through 16.d, but where the MOEX Entities have spent ninety-five percent of the sum so specified on Eligible SEP Costs in a State, the MOEX Entities shall be permitted to expend the remaining funds on SEPs in another State or States listed in Subparagraphs 16.a through 16.d:

a.     The MOEX Entities shall implement one or more land acquisition and habitat protection SEP(s) in the State of Florida, as more fully set forth in Appendix C.  The sum specified for Subparagraph 16.a is $5,000,000 in Eligible SEP Costs;

b.     The MOEX Entities shall implement one or more land acquisition and habitat protection SEP(s) in the State of Louisiana, as more fully set forth in Appendix C.  The sum specified for Subparagraph 16.b is $6,750,000 in Eligible SEP Costs;

12

        c.      The MOEX Entities shall implement one or more land acquisition and habitat protection SEP(s) in the State of Mississippi, as more fully set forth in Appendix C.  The sum specified for Subparagraph 16.c is $5,000,000 in Eligible SEP Costs;

        d.      The MOEX Entities shall implement one or more land acquisition and habitat protection SEP(s) in the State of Texas, as more fully set forth in Appendix C.  The sum specified for Subparagraph 16.d is $3,250,000 in Eligible SEP costs.

17.     This Consent Decree shall not be construed to:

        a.      Require the MOEX Entities to take or hold title to any SEP Property;

        b.      Require the MOEX Entities to provide representations or warranties concerning a SEP Property beyond any required by applicable law or negotiated by a Recipient;

        c.      Prohibit the MOEX Entities from seeking approval from the United States for a greater number of SEPs than necessary to meet the terms of this Consent Decree; and

        d.      Compel the MOEX Entities to implement any proposed SEP they withdraw from further consideration, if and only if the MOEX Entities: (i) effect such withdrawal in writing and in compliance with the terms of this Consent Decree, and (ii) do not violate the requirements of Paragraphs 16 (General Requirements) and 34 (deadline to complete all SEPs) and Appendix C of this Consent Decree.

18.     The purpose of the SEPs is to preserve and protect the SEP Properties in their natural state, thus providing environmental benefits to the ecological resources of the SEP Properties.  It is anticipated that the lands will contain habitat and natural resources worthy of conservation in perpetuity, and/or will protect water quality in the Gulf of Mexico region.

19. <u>Proposed SEPs Submission for Preliminary Approval</u>. For each SEP proposed, the MOEX Entities shall, after consultation with the affected State(s), submit to the United States for its review and preliminary approval:

    a. A detailed description of the SEP Property to be acquired consistent with this Decree, including Appendix C;

    b. The expected Recipient of the SEP Property; and

    c. The expected purchase price for the SEP Property including the fair market value of the SEP Property based upon an independent third-party appraisal or other third-party valuation prepared in accordance with established appraisal standards (although the Parties recognize that the purchase price of a property may differ from an appraisal for various reasons, including without limitation the property's ecological significance and the seller's unwillingness to accept a lower price).

    d. The certification required under Paragraph 26.

20. Upon preliminary approval by the United States, the MOEX Entities may proceed to implement such SEP(s).

21. <u>Action on Each Preliminarily-Approved SEP: Withdraw the Proposed SEP from Further Consideration or Make Required Submissions</u>. Within ninety (90) days after the date of preliminary approval of a SEP by the United States, the MOEX Entities shall either (i) withdraw the SEP from further consideration by written notice to the United States, or (ii) supply the United States the following for its review and approval:

a.      A proposed deed, conservation easement or other appropriate instrument under applicable state law transferring the SEP Property interest(s) from the current owner to the designated Recipient of the SEP Property interest(s);

b.      A title insurance commitment naming the designated Recipient of the SEP Property interest as the proposed insured, accompanied by complete, legible copies of the deed(s) that vested title in the current owner(s) and all documents referenced in the title insurance commitment;

c.      A mechanism for ensuring that the SEP Property is both perpetually maintained as a protected area through deed restrictions, covenants, and/or conservation easements (consistent with the purpose of the SEP as set forth in Paragraph 18) and free from all uses or conditions that are inconsistent with ecosystem protection;

d.      A current assessment of the actual environmental conditions of the SEP Property.

22.      After review of the documents submitted pursuant to Paragraph 21, the United States, after consultation with the relevant State, shall in writing:  (i) approve the acquisition; (ii) approve the acquisition upon specified conditions; or (iii) disapprove the acquisition, in whole or in part, and provide the grounds for any disapproval.

23.      Action on Other-than-Unconditioned Approval: Withdraw SEP from Consideration or Cure Deficiency or Condition.  If the United States disapproves an acquisition (in whole or in part) or approves an acquisition conditionally, then within sixty (60) days of that action (or such longer time as may be agreed upon by the Parties, in writing, before the expiration of the sixty-day period),  the MOEX Entities must either: (i) withdraw the proposed

SEP from further consideration by written notice to the United States; or (ii) correct all deficiencies and meet all conditions in the disapproval or conditional approval and submit the documents to the United States for review and approval in accordance with Paragraph 21.

24.    Action on Each Approved Acquisition:  Complete the Acquisition or Withdraw the SEP from Consideration.   If the United States approves an acquisition as provided in Paragraph 22, then no later than one hundred and twenty (120) days after the approval, the MOEX Entities shall either:  (i) withdraw the SEP from further consideration by written notice to the United States; or (ii) ensure that all documents necessary to transfer the title, SEP Property interest, easement, or other SEP Property interest are transferred to the designated Recipient and assure that such SEP Property interest is appropriately recorded in the relevant jurisdiction, and that an owner's title insurance policy consistent with the title insurance commitment referenced in Paragraph 21.b has been issued.

25.    The MOEX Entities are responsible for the satisfactory completion of the SEPs in accordance with the requirements of this Consent Decree.  The MOEX Entities may use contractors or consultants in planning and implementing the SEPs.

26.    With regard to each SEP, when the MOEX Entities submit to the United States the SEP Property description for preliminary review and approval pursuant to Paragraph 19, the MOEX Entities shall certify the truth and accuracy of each of the following:

a.    Neither the MOEX Entities nor MOECO are required to perform or develop the SEPs by any federal, state, or local law or regulation and are not required to perform or develop the SEPs by agreement, grant, or as injunctive relief awarded in any other action in any forum;

16

b.      The SEP is not a project that the MOEX Entities or MOECO were planning or intending to construct, perform, or implement other than in the settlement embodied in this Consent Decree;

c.      Neither the MOEX Entities nor MOECO received or will receive credit for the SEP in any other enforcement action;

d.      Neither the MOEX Entities nor MOECO will receive any reimbursement for any portion of the SEP from any other person; and

e.      Neither the MOEX Entities nor MOECO are party to any open federal financial assistance transaction that is funding or could be used to fund the same activity as the SEP; and further, that, to the best of their knowledge and belief after reasonable inquiry, there is no such open federal financial transaction that is funding or could be used to fund the same activity as the SEP, nor has the same activity been described in an unsuccessful federal financial assistance transaction proposal submitted to EPA or the Coast Guard within two years of the date of the settlement (unless the project was barred from funding as statutorily ineligible).  For purposes of this certification, the term "open federal financial assistance transaction" refers to a grant, cooperative agreement, loan, federally-guaranteed loan guarantee or other mechanism for providing federal financial assistance whose performance period has not yet expired.

27.     SEP Completion Report.  Within forty-five (45) days after the completion of the final SEP that the MOEX Entities propose as the collection of SEPs that will complete the performance required under Article VI of this Consent Decree, the MOEX Entities shall submit a SEP Completion Report to the United States and the affected States in accordance with Article

17

XII of this Consent Decree (Notices).  The SEP Completion Report shall contain the following information for each SEP:

      a.    A detailed description of the SEP as implemented (or confirmation that the previously-submitted description remains accurate);

      b.    A description of any problems encountered in completing the SEP and the solutions thereto;

      c.    Documentation of the deed, conservation easement or other appropriate instrument under state law transferring the SEP Property interest(s) to the designated Recipient and documentation of recordation in the relevant jurisdiction;

      d.    An itemized list of all Eligible SEP Costs expended;

      e.    Certification that the SEP has been fully implemented pursuant to the provisions of this Decree; and

      f.    A general description of the environmental and/or public health benefits expected from completion of the SEP (with a quantification of the benefits and pollutant reductions, if feasible).  In addition, the MOEX Entities shall submit an itemization of any other Eligible SEP Costs within the meaning of Subparagraph 4.g.

28.    The United States, in its sole discretion, may require information in addition to that described in the preceding Paragraph, in order to evaluate the MOEX Entities' SEP Completion Report.

29.    After receiving the SEP Completion Report, the United States shall notify the MOEX Entities as to whether the MOEX Entities have satisfactorily completed the requirements of Article VI and Appendix C of this Consent Decree. If the United States advises that the

MOEX Entities have not satisfactorily completed one or more SEPs, the notice from the United States shall specify the grounds on which the completion appears to be unsatisfactory under the terms of this Consent Decree. The MOEX Entities shall have sixty (60) days from the date of such notice (or such longer period as to which the Parties may agree, in writing, before the expiration of the sixty day period) to cure any deficiency in such SEP(s) specified by the United States. Notwithstanding anything to the contrary in this Consent Decree, if the MOEX Entities have otherwise complied with the requirements of Article VI and Appendix C, the MOEX Entities performance shall not be deemed unsatisfactory completion based solely on the MOEX Entities' proving expenditures of Eligible SEP Costs less than twenty million dollars ($20,000,000) but more than nineteen million eight hundred and sixty thousand dollars ($19,860,000) in Eligible SEP Costs.

30.     Disputes concerning the satisfactory completion of the SEPs and the amount of Eligible SEP Costs may be resolved under Article VII of this Decree (Dispute Resolution). No other disputes arising under Article VI (SEPs) shall be subject to Dispute Resolution.

31.     Each submission required under this Article shall be signed by an official of the MOEX Entities with knowledge of the SEP and shall contain the following certification:

> I certify that the statements made herein by the undersigned are true, complete and correct to the best of my knowledge and belief and are made in good faith. Title 18 USC Sec. 1001 makes it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious, or fraudulent statements or representations as to any matter within its jurisdiction.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

32.     Any public statement, oral or written, in print, film, or other media, made by the MOEX Entities making reference to the SEPs under this Decree shall include the following language:  This project was undertaken in connection with the settlement of an enforcement action, United States v. MOEX Offshore 2007 LLC, et al., (No. 2:10-cv-04536 (E.D. La.)).

33.     The MOEX Entities agree that neither they nor any affiliated entity will capitalize into inventory or basis nor take as a tax deduction, in the United States or elsewhere, any portion of the costs or expenditures incurred in performing the SEPs.

34.     The MOEX Entities shall complete all SEPs needed to comply with Article VI no later than seven-hundred-thirty (730) Days after the Date of Entry, unless the Parties extend the time for completion by agreement in writing before the deadline for completion.

35.     <u>Stipulated Penalties: SEPs</u>.

a.      If the MOEX Entities fail to satisfactorily meet any SEP implementation deadline set forth under Paragraph 21 (Action on Each Preliminarily-Approved SEP),  Paragraph 24 (Action on Each Approved Acquisition), or Paragraph 27 (SEP Completion Report), the MOEX Entities shall pay stipulated penalties as set forth in this Subparagraph, upon a written demand from the United States, in the following amounts for each day any deadline in those paragraphs remains unmet:

| Period of Noncompliance | Per Violation/Per Day |
| --- | --- |
| 11th through 30th day | $1,000.00 |
| 31st through 60th day | $1,800.00 |
| 61st day and over | $3,200.00 |

20

b.    If after seven-hundred-thirty (730 Days) after Date of Entry, the MOEX

Entities have not complied with one or more of Paragraph 16 (General Requirements), Paragraph

27 (SEP Completion Report), or Paragraph 34 (deadline to complete all SEPs), the United States

may elect to terminate further work on SEPs, if it determines that the MOEX Entities are not

making a good faith effort to satisfactorily complete one or more SEPs needed to comply with

Paragraph 16 (General Requirements).  The United States shall provide written notice of SEP

termination to the MOEX Entities.  If the United States terminates, the MOEX Entities shall be

liable for a single termination stipulated penalty of twenty million dollars ($20,000,000) less any

amount that the MOEX Entities have expended in Eligible SEP Costs.  If the United States

terminates the work on SEPs pursuant to this Subparagraph 35.b, the MOEX Entities shall have

no further obligation to complete any SEPs under this Consent Decree, upon payment of all

stipulated penalties accrued under this Consent Decree.

## VII.    DISPUTE RESOLUTION

36.    Unless otherwise expressly provided for in this Consent Decree, the dispute

resolution procedures of this Article shall be the exclusive mechanism to resolve disputes arising

under or with respect to this Consent Decree.  The MOEX Entities' failure to seek resolution of a

dispute under this Article shall preclude them from raising any such issue as a defense to an

action by the United States to enforce any obligation of the MOEX Entities arising under this

Decree.

37.    Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under

this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be

considered to have arisen when the MOEX Entities send the United States a written Notice of

Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed twenty (20) Days from the date the dispute arises, unless that period is modified by written agreement of the Parties. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within twenty (20) Days after the conclusion of the informal negotiation period, the MOEX Entities invoke formal dispute resolution procedures as set forth below.

38.   Formal Dispute Resolution.

a.   The MOEX Entities shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States Party a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting the MOEX Entities' position and any supporting documentation relied upon by the MOEX Entities.

b.   The United States shall serve its Statement of Position within forty-five (45) Days of receipt of the MOEX Entities' Statement of Position. The United States' Statement of Position shall include, but is not limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on MOEX Entities unless the MOEX Entities file a motion for judicial review of the dispute in accordance with the following Paragraph.

39.   The MOEX Entities may seek judicial review of the dispute by filing with the Court and serving on the United States in accordance with Article XII (Notices) of this Consent Decree, a motion requesting judicial resolution of the dispute. The motion must be filed within thirty (30) Days of receipt of the United States' opposing Statement of Position pursuant to the

22

preceding Paragraph. The motion shall contain a written statement of the MOEX Entities'
position on the matter(s) in dispute, including any supporting factual data, analysis, opinion, or
documentation, and shall set forth the relief requested and any schedule within which the dispute
must be resolved for orderly implementation of this Consent Decree.

40.    The United States shall respond to the MOEX Entities' motion within the time
period allowed by the Local Rules of this Court.

41.    Standard of Review. The MOEX Entities shall bear the burden of demonstrating
that their position complies with this Consent Decree. The invocation of dispute resolution
procedures under this Article shall not, by itself, extend, postpone, or affect in any way any
obligation of the MOEX Entities under this Consent Decree, unless and until final resolution of
the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to
accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of
the dispute. If the MOEX Entities do not prevail on the disputed issue, stipulated penalties shall
be assessed and paid as provided in Paragraph 35 (Stipulated Penalties).

## VIII.   COVENANTS NOT TO SUE

42.    The United States covenants not to sue (under the Complaint or any other
instrument) the MOEX Entities and MOECO, which includes those companies' officers,
directors, shareholders, employees, and agents (all in their official capacities as such), for civil or
administrative penalties for the Deepwater Horizon Incident under: (a) CWA §§ 311 (b)(6) or
(7), 33 U.S.C. §§1321(b)(6) or (7); (b) the Outer Continental Shelf Lands Act, 43 U.S.C. §
1350(b), including without limitation, "Oil and Gas and Sulphur Operation in the Outer
Continental Shelf," Title 30 C.F.R. Subparts A, B, C, D, and E of Part 250; (c) Endangered

Species Act § 11(a)(1), 16 U.S.C. § 1540(a)(1); (d) Marine Mammal Protection Act § 105(a)(1), 16 U.S.C. § 1375(a)(1); (e) National Marine Sanctuaries Act § 306(1), 16 U.S.C. § 1436(1); and (f) the federal Oil and Gas Royalty Management Act, 30 U.S.C. § 1719(a). This covenant takes effect upon timely payment of all sums due under Article V of this Consent Decree.

43.     The MOEX Entities covenant not to sue the United States for any costs or damages relating to the Deepwater Horizon Incident, including but not limited to any action under Oil Pollution Act ("OPA") §§ 1007, 1008, 1012, or 1013, 33 U.S.C. §§ 2707, 2708, 2712, and 2713.

## IX.   EFFECT OF SETTLEMENT AND RESERVATION OF RIGHTS

44.     Nothing in this Consent Decree may be construed to alter the ability of the United States to pursue any party named in the Complaint, either for civil penalties under the CWA or otherwise, other than as provided under Paragraph 42 of this Consent Decree (Covenant Not to Sue by the United States).

45.     The stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for any violation of this Consent Decree or applicable law by the MOEX Entities.  The Parties each reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Paragraph does not alter the scope or effect of Paragraphs 42 and 43 (Covenants Not to Sue).

46.     Except as expressly set forth herein, this Consent Decree does not affect, limit, or increase the rights of (a) the MOEX Entities, MOECO, or the United States, or (b) anyone who is not a Party to this Consent Decree.

47.     Except as expressly set forth herein, this Consent Decree shall not be construed to create rights in, or grant any cause of action for, any third party that is not a Party to this Consent Decree.

48.     In any administrative or judicial proceeding initiated by the United States, the MOEX Entities shall not assert, and may not maintain, any defense or claim upon the principle of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in *United States v. BP Exploration & Production Inc., et al*, Civ. No. 2:10-cv-04536 (E.D. La.).  This Paragraph does not alter the scope or effect of the Covenant Not to Sue in Paragraph 42.

49.     This Consent Decree is without prejudice to the rights of the United States against the MOEX Entities and MOECO with respect to all matters other than those set forth in Paragraph 42 (Covenant Not to Sue), including, without limitation, to the following (as to which the MOEX Entities and MOECO continue to deny that they have any liability):

        a.      Claims based on a failure of MOEX Entities to meet a requirement of this Consent Decree;

        b.      Any criminal liability;

        c.      Liability for past, present, or future discharges of oil other than those expressly resolved herein;

        d.      Reimbursement to the federal Oil Spill Liability Trust Fund for any disbursements arising from the Deepwater Horizon Incident or any other related incident, including subrogated claims pursuant to § 1015 of the OPA, 33 U.S.C. § 2715; and

25

e.   Liability under § 1002 of the OPA, 33 U.S.C. § 2702, for removal costs or for damages, including but not limited to damages for injury to or loss of natural resources, and for the cost of any natural resource damage assessments, and also including the claim for a declaratory judgment of liability under OPA already pleaded in the United States Complaint under the Declaratory Judgment Act.

## X.   PUBLIC PARTICIPATION

50.   This Consent Decree shall be lodged with the Court for public notice and comment in accordance with the procedures of 28 C.F.R. § 50.7.

51.   The United States reserves the right to withdraw or withhold its consent to this Consent Decree if the comments received by it regarding this Consent Decree disclose facts or considerations indicating that this Consent Decree is inappropriate, improper, or inadequate.

52.   The MOEX Entities consent to entry of this Consent Decree by the Court without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of this Consent Decree, unless the United States withdraws from this Consent Decree under Article X.

## XI.   COSTS

53.   No Party will seek from another Party any costs (28 U.S.C. § 1920) or attorney fees arising from Civil Action 10-4536 incurred on or before the date of lodging to this Consent Decree.

## XII.   NOTICES

54.   Unless otherwise specified herein, any notifications, submissions, or communications required by this Consent Decree shall be made in writing sent by (a) overnight

mail or courier and (b) email or facsimile to the addressees shown on Appendix A to this Consent Decree.

55.     A Party may, by written notice to the other Party, change its designated notice recipient or notice address provided above.

56.     Notices sent pursuant to this Article XII shall be deemed given the Day of transmittal and deemed received the Day after transmittal, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIII.   RETENTION OF JURISDICTION

57.     The Court shall retain jurisdiction over the case set forth in the caption in this Consent Decree for the purpose of resolving disputes arising under this Consent Decree and effectuating or enforcing compliance with the terms of this Consent Decree.

## XIV.   SIGNATORIES/SERVICE

58.     Each of the undersigned representatives certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree, to execute this Consent Decree, and to legally bind the Party he or she represents to this Consent Decree.

59.     This Consent Decree may be executed in counterparts, and its validity shall not be challenged on that basis.  The Parties agree to accept service of process as specified in Article XII and Appendix A with respect to all matters arising under or relating to this Consent Decree. For purposes of this Consent Decree a signature page that is transmitted electronically (e.g., by facsimile or e-mailed "PDF") shall have the same effect as an original.

## XV.   INTEGRATION

60.      This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than any deliverables that are subsequently submitted and approved pursuant to this Consent Decree, no other document, or any representation, inducement, agreement, understanding, or promise, shall constitute any part of this Consent Decree or the settlement it represents.

## XVI.   FINAL JUDGMENT

61.      Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and the MOEX Entities and therefore the Court enters this Consent Decree as a final judgment under Federal Rules of Civil Procedure 54 and 58.


Dated and entered in New Orleans, Louisiana, this __18th__ day of _____June_____, 2012.


_____

United States District Judge

28

THE UNDERSIGNED PARTIES ENTER INTO THIS CONSENT DECREE:

FOR THE UNITED STATES:


TONY WEST
Assistant Attorney General
Civil Division
U.S. Department of Justice

Date: **2·16·12**


PETER F. FROST
Director, Torts Branch, Civil Division
Admiralty and Aviation
U.S. Department of Justice

Date: 2/16/12


IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources
   Division
U.S. Department of Justice

Date: 2/16/12


STEVE O'ROURKE
Senior Attorney
(For himself and all in Environment Division
working on MDL 2179)
Environment and Natural Resources
   Division
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
Telephone: (202) 514-2779
Facsimile: (202) 514-0097
E-mail: steve.o'rourke@usdoj.gov

Date: 2-17-12

R. MICHAEL UNDERHILL, T.A.
Attorney in Charge, West Coast Office
(For himself and all in Civil division
  working on MDL 2179)
Torts Branch, Civil Division
U.S. Department of Justice
7-5395 Federal Bldg., Box 36028
450 Golden Gate Avenue
San Francisco, CA 94102-3463
Telephone: (415) 436-6648
Facsimile: (415) 436-6632
E-mail: mike.underhill@usdoj.gov

Date:  2/16/12

PATRICK M. CASEY
Senior Counsel
Environment and Natural Resources
  Division
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
Telephone: (202) 514-1448
Facsimile: (202) 514-0097
E-mail: Patrick.casey@usdoj.gov

Date:  2-17-12

JIM LETTEN
United States Attorney
Eastern District of Louisiana

SHARON D. SMITH
Assistant United States Attorney
Eastern District of Louisiana
650 Poydras Street, Suite 1600
New Orleans, LA 70130
Telephone: (504) 680-3000
Facsimile: (504) 680-3184
E-mail: Sharon.d.smith@usdoj.gov

Date: 2/10/2012

_____

CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance
    Assurance
U.S. Environmental Protection Agency
Washington, DC 20460

Date:    2 / 16 / 12

_____

PAMALA J. MAZAKAS
Acting Director, Office of Civil Enforcement
Office of Enforcement and Compliance
    Assurance
U.S. Environmental Protection Agency
Washington, DC 20460

Date:    2/15/12

_____

JOHN FOGARTY
Associate Director, Office of Civil
    Enforcement
Office of Enforcement and Compliance
    Assurance
U.S. Environmental Protection Agency
Washington, DC 20460

Date:    2·16·12

REAR ADMIRAL FREDERICK J. KENNEY
Judge Advocate General
United States Coast Guard
Department of Homeland Security

Date:   16 Feb 2012

CAPTAIN TIMOTHY P. CONNORS
Chief, Office of Claims and Litigation
United States Coast Guard
Department of Homeland Security

Date:   16 Feb 2012

33

**FOR MOEX OFFSHORE 2007 LLC:**

NAOKI ISHII
President
MOEX Offshore 2007 LLC
9 Greenway Plaza
Suite 1220
Houston, TX 77046
Fax: (713) 352-8510

Date: 2/14/2012

THOMAS A. CAMPBELL
Pillsbury Winthrop Shaw Pittman LLP
2 Houston Center
909 Fannin Street, Suite 2000
Houston, TX 77010
Telephone: (713) 276-7676
Facsimile: (713) 582-6033
E-mail: tom.campbell@pillsburylaw.com

Date: 2-14-12

34

**FOR MOEX USA CORPORATION:**

_____

NOBORU TSURUTA
Director and President
MOEX USA Corporation
9 Greenway Plaza
Suite 1220
Houston, TX 77046
Fax: (713) 352-8510

Date: 2/14/12

_____

THOMAS A. CAMPBELL
Pillsbury Winthrop Shaw Pittman LLP
2 Houston Center
909 Fannin Street, Suite 2000
Houston, TX 77010
Telephone: (713) 276-7676
Facsimile: (713) 582-6033
E-mail: tom.campbell@pillsburylaw.com

Date: 2-14-12

35

Appendix A
Notices

Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:


To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-1-1-10026
Fax: (202) 514-0097

Peter Frost
Director, Torts Branch, Civil Division
Admiralty and Aviation
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Fax: (202) 616-4002
Email: peter.frost@usdoj.gov

Sharon D. Smith
Assistant United States Attorney
United States Attorney's Office, E.D. Louisiana
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Fax: (504) 589-4510
Email: sharon.d.smith@usdoj.gov

John Fogarty
Associate Director of Enforcement
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, DC 20460
Fax: (202) 564-0011
Email: fogarty.johnpc@epamail.epa.gov

Heather Kennealy
Litigation Attorney
Office of Claims and Litigation (CG-0945)
United States Coast Guard
2100 2nd Street SW STOP 7121
Washington, DC 20593-7121
Fax: (202) 372-3975
Email: heather.s.kennealy@uscg.mil


To MOEX Offshore 2007 LLC:

MOEX Offshore 2007 LLC
9 Greenway Plaza
Suite 1220
Houston, TX 77046
Fax: (713) 532-8510
Email: naoki_ishii@moexus.com

With a copy to:

Thomas A. Campbell
Pillsbury Winthrop Shaw Pittman LLP
2 Houston Center
909 Fannin Street, Suite 2000
Houston, TX 77010
Fax: (281) 582-6033
Email: tom.campbell@pillsburylaw.com


To MOEX USA Corporation:

MOEX USA Corporation
9 Greenway Plaza
Suite 1220
Houston, TX 77046
Fax: (713) 532-8510
Email:  matt_pulman@moexus.com

With a copy to:

Thomas A. Campbell
Pillsbury Winthrop Shaw Pittman LLP

2 Houston Center
909 Fannin Street, Suite 2000
Houston, TX 77010
Fax: (281) 582-6033
Email: tom.campbell@pillsburylaw.com

## Appendix B1

### State of Alabama
### Release and Covenant Not to Sue

For and in consideration of the agreed settlement payment and the other terms set forth in this Release and Covenant Not to Sue, the State of Alabama, acting by and through its Office of the Attorney General, on behalf of itself and all its political subdivisions, hereby releases and forever discharges, and covenants not to sue or cause another to sue for or on any claim or cause of action for civil or administrative penalties under the laws of the State of Alabama, the United States, or any other State, which the State of Alabama now has, ever had, or may have, now or in the future, whether known, unknown, suspected, claimed, asserted, or unasserted, arising out of or relating in any way to the Deepwater Horizon Incident, against MOEX Offshore 2007 LLC ("Offshore"), MOEX USA Corporation ("MOEX USA"), Mitsui Oil Exploration Co., Ltd. ("MOECO") and each of their affiliates, including without limitation, Mitsui & Co., Ltd, Mitsui & Co. (U.S.A.), Inc., the Ministry of Economy, Trade and Industry of the Government of Japan and the other minority shareholders of MOECO, and each of them, and each of their past and present officers, directors, shareholders, parents, subsidiaries, business units, predecessors, successors, employees, agents and representatives, or any of them (referred to collectively as the "Released Parties"). In no event shall the Released Parties include any defendant in MDL 2179 pending in the United States District Court for the Eastern District of Louisiana, unless such defendant is identified by name hereinabove in this Release and Covenant Not to Sue.

This Release and Covenant Not to Sue shall remain effective regardless of any appeals or court decisions relating to the liability of the Released Parties. Any reversal, modification or vacatur of the Consent Decree among the United States of America, Offshore and MOEX USA entered in MDL 2179 shall not affect the validity or force of this Release and Covenant Not to Sue.

The State of Alabama acknowledges that the payment made hereunder shall not constitute an admission by Offshore, MOEX USA, MOECO or any other Released Party of any liability for civil penalties or any other claim arising out of or relating to the Deepwater Horizon Incident, and that those persons deny all such liability.

By executing this Release and Covenant Not to Sue on behalf of the State of Alabama, its political subdivisions, Luther Strange, Attorney General represents and affirms his authority to act on behalf of and bind these parties to this Release and Covenant Not to Sue.

This Release and Covenant Not to Sue shall take effect upon payment to the State of Alabama by or on behalf of Offshore and MOEX USA of the sum of five million dollars ($5,000,000). The payment to the State of Alabama shall be made in accordance with instructions to be supplied to Offshore and MOEX USA by the State of Alabama with an executed copy of this Release and Covenant Not to Sue.

For purposes of this Release and Covenant Not to Sue, the following definitions shall apply:

The term "Deepwater Horizon Incident" shall mean all discharges of hydrocarbons or other substances from the *Deepwater Horizon* Mobile Offshore Drilling Unit and/or Macondo Well arising from or relating to the events of April 20, 2010 at the Macondo Well; the blowout, explosion and fire occurring on the *Deepwater Horizon* on April 20, 2010; the drilling that preceded the blowout; the loss of the drilling unit; the subsequent clean-up and remediation efforts and all other responsive actions, including without limitation the containment efforts and the drilling of relief wells.

The term "claim or cause of action for civil or administrative penalties" shall mean all past, present or future claims, rights, causes of action, demands, lawsuits, administrative or regulatory proceedings, obligations, or liabilities of any kind, nature or description whereby the State of Alabama or any of its political subdivisions initiates or seeks to obtain or recover any monetary payment or other relief that constitutes a civil or administrative penalty.

The term "laws of the State of Alabama" shall mean the laws of the State of Alabama, together with any civil or administrative penalty regulations promulgated under that state's law or by any political subdivision of that State.

_____

LUTHER STRANGE
ATTORNEY GENERAL
STATE OF ALABAMA

OFFICE OF THE ATTORNEY GENERAL

P.O. BOX 300152

MONTGOMERY, AL 36130-0152

## Appendix B2

### State of Florida
### Release and Covenant Not to Sue

For and in consideration of the agreed settlement payment and the other terms set forth in this Release and Covenant Not to Sue, the State of Florida, acting by and through its Attorney General along with the Florida Department of Environmental Protection, hereby releases and forever discharges, and covenants not to sue or cause another to sue for or on any claim or cause of action for civil or administrative penalties, which the State of Florida now has, ever had, or may have, now or in the future, whether or not suspected, claimed, asserted or unasserted, arising out of or relating in any way to the Deepwater Horizon Incident, against MOEX Offshore 2007 LLC ("Offshore"), MOEX USA Corporation ("MOEX USA"), Mitsui Oil Exploration Co., Ltd. ("MOECO"), Mitsui & Co. (U.S.A.), Inc., Mitsui & Co. Ltd, and each of their past and present officers, directors, direct or indirect shareholders, parents, subsidiaries, business units, predecessors, successors, employees, agents and representatives, or any of them (referred to collectively as the "Released Parties"). In no event shall the Released Parties include any defendant in MDL 2179 pending in the United States District Court for the Eastern District of Louisiana, unless such defendant is identified by name hereinabove in this Release and Covenant Not to Sue. The State of Florida specifically reserves all of its rights and remedies against any person or entity other than the Released Parties.

This Release and Covenant Not to Sue shall remain effective regardless of any appeals or court decisions relating to the liability of the Released Parties. Any reversal, modification or vacatur of the Consent Decree among the United States of America, Offshore and MOEX USA entered in MDL 2179 shall not affect the validity or force of this Release and Covenant Not to Sue. This Release and Covenant Not to Sue shall be governed by and construed in accordance with Florida law.

The State of Florida acknowledges that the payment made hereunder shall not constitute an admission by Offshore, MOEX USA, MOECO or any other Released Party of any liability for civil penalties or any other claim arising out of or relating to the Deepwater Horizon Incident, and that those persons deny all such liability.

By executing this Release and Covenant Not to Sue on behalf of the State of Florida, the undersigned represent and affirm their authority to act on behalf of and bind the State of Florida to this Release and Covenant Not to Sue.

This Release and Covenant Not to Sue shall take effect upon payment to the State of Florida by or on behalf of Offshore and MOEX USA of the sum of five million dollars ($5,000,000). The State of Florida shall provide payment instructions to counsel for Offshore and MOEX USA within ten (10) business days after approval of the Consent Decree. Offshore and MOEX USA have also agreed to complete five million dollars ($5,000,000) in supplemental environmental

projects within Florida as part of the Consent Decree but the Parties acknowledge that such projects are not additional consideration for this Release and Covenant Not to Sue.

For purposes of this Release and Covenant Not to Sue, the following definitions shall apply:

The term "Deepwater Horizon Incident" shall mean all discharges of hydrocarbons or other substances from the *Deepwater Horizon* Mobile Offshore Drilling Unit and/or Macondo Well arising from or relating to the events of April 20, 2010 at the Macondo Well; the blowout, explosion and fire occurring on the *Deepwater Horizon* on April 20, 2010; the drilling that preceded the blowout; the loss of the drilling unit; the subsequent clean-up and remediation efforts and all other responsive actions, including without limitation the containment efforts and the drilling of relief wells.

The term "claim or cause of action for civil or administrative penalties" shall mean all past, present or future claims, rights, causes of action, demands, lawsuits, administrative or regulatory proceedings, obligations, or liabilities of any kind, nature or description whereby the State of Florida initiates or seeks to obtain or recover any monetary payment or other relief that constitutes a civil or administrative penalty.

Executed on this ____ day of _____, 2012 in Tallahassee, Florida.

_____

RUSSELL S. KENT
Special Counsel for Litigation
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050

_____

LARRY R. MORGAN
Deputy General Counsel
Florida Department of Environmental Protection
3900 Commonwealth Boulevard
Tallahassee, FL 32399-6575

**Appendix B3**
**State of Louisiana**
**Release and Covenant Not to Sue**

For and in consideration of the agreed settlement payment and the other terms set forth in this Release and Covenant Not to Sue, the State of Louisiana, acting by and through its Secretary of the Department of Environmental Quality and Attorney General, hereby releases and forever discharges, and covenants not to sue or cause another to sue for or on any claim or cause of action for civil or administrative penalties under the laws of the State of Louisiana, the United States, or any other State, which the State of Louisiana now has, ever had, or may have, now or in the future, whether or not suspected, claimed, asserted, or unasserted, arising out of or relating in any way to the Deepwater Horizon Incident, against MOEX Offshore 2007 LLC ("Offshore"), MOEX USA Corporation ("MOEX USA"), Mitsui Oil Exploration Co., Ltd. ("MOECO"), Mitsui & Co. (U.S.A.), Inc. and each of their direct or indirect shareholders including without limitation, Mitsui & Co., Ltd., the Ministry of Economy, Trade and Industry of the Government of Japan and the other minority shareholders of MOECO, and each of them, and each of their past and present officers, directors, shareholders, parents, subsidiaries, business units, predecessors, successors, employees, agents and representatives, or any of them (referred to collectively as the "Released Parties"). In no event shall the Released Parties include any defendant in MDL 2179 pending in the United States District Court for the Eastern District of Louisiana, unless such defendant is identified by name hereinabove in this Release and Covenant Not to Sue. The State of Louisiana specifically reserves all of its rights and remedies against any person or entity other than the Released Parties.

This Release and Covenant Not to Sue shall remain effective regardless of any appeals or court decisions relating to the liability of the Released Parties. Any reversal, modification or vacatur of the Consent Decree among the United States of America, Offshore and MOEX USA entered in MDL 2179 shall not affect the validity or force of this Release and Covenant Not to Sue. This Release and Covenant Not to Sue shall be governed by and construed in accordance with Louisiana law.

The State of Louisiana acknowledges that the payment made hereunder shall not constitute an admission by Offshore, MOEX USA, MOECO or any other Released Party of any liability for civil penalties or any other claim arising out of or relating to the Deepwater Horizon Incident, and that those persons deny all such liability.

By executing this Release and Covenant Not to Sue on behalf of the State of Louisiana, the undersigned represent and affirm his/her authority to act on behalf of and bind the State of Louisiana to this Release and Covenant Not to Sue.

This Release and Covenant Not to Sue shall take effect upon payment to the State of Louisiana by or on behalf of Offshore and MOEX USA of the sum of six million, seven hundred and fifty thousand dollars ($6,750,000). The payment to the State of Louisiana shall be made through an

Electronic Funds Transfer ("EFT") pursuant to instructions that shall be provided to the MOEX Entities by the Fiscal Office of the Louisiana Department of Environmental Quality. The MOEX Entities shall cause payment to be accompanied by a Settlement Payment Form that shall specify that the payment is being made pursuant to this Release and Covenant Not to Sue.

For purposes of this Release and Covenant Not to Sue, the following definitions shall apply:

The term "Deepwater Horizon Incident" shall mean all discharges of hydrocarbons or other substances from the *Deepwater Horizon* Mobile Offshore Drilling Unit and/or Macondo Well arising from or relating to the events of April 20, 2010 at the Macondo Well; the blowout, explosion and fire occurring on the *Deepwater Horizon* on April 20, 2010; the drilling that preceded the blowout; the loss of the drilling unit; the subsequent clean-up and remediation efforts and all other responsive actions, including without limitation the containment efforts and the drilling of relief wells.

The term "claim or cause of action for civil or administrative penalties" shall mean all past, present or future claims, rights, causes of action, demands, lawsuits, administrative or regulatory proceedings, obligations, or liabilities of any kind, nature or description whereby the State of Louisiana initiates or seeks to obtain or recover any monetary payment or other relief that constitutes a civil or administrative penalty.

The term "laws of the State of Louisiana" shall mean the laws of the State of Louisiana, together with any civil or administrative penalty regulations promulgated under that state's law.

**LOUISIANA DEPARTMENT OF
ENVIRONMENTAL QUALITY**

_____                    _____
Peggy M. Hatch                                                         Date
Secretary

**LOUISIANA OFFICE OF THE
ATTORNEY GENERAL**

_____                    _____
James D. "Buddy" Caldwell                                      Date
Louisiana Attorney General

I have reviewed the Release and Covenant Not to Sue and the referenced Consent Decree and I concur with this settlement.

_____                    _____
Garret Graves                                                          Date
Executive Assistant to the Governor
Office of Coastal Affairs

## Appendix B4

## State of Mississippi
### Release and Covenant Not to Sue

For and in consideration of the agreed settlement payment and the other terms set forth in this Release and Covenant Not to Sue, the State of Mississippi, acting by and through its Attorney General and its Department of Environmental Quality, hereby releases and forever discharges, and covenants not to sue or cause another to sue for or on any claim or cause of action for civil or administrative penalties under the laws of the State of Mississippi, the United States, or any other state, which the State of Mississippi now has, ever had, or may have, now or in the future, whether known, unknown, suspected, claimed, asserted, or unasserted, arising out of or relating in any way to the Deepwater Horizon Incident, against MOEX Offshore 2007 LLC ("Offshore"), MOEX USA Corporation ("MOEX USA"), Mitsui Oil Exploration Co., Ltd. ("MOECO") and each of their affiliates, including without limitation, Mitsui & Co., Ltd, Mitsui & Co. (U.S.A.), Inc., the Ministry of Economy, Trade and Industry of the Government of Japan and the other minority shareholders of MOECO, and each of them, and each of their past and present officers, directors, shareholders, parents, subsidiaries, business units, predecessors, successors, employees, agents and representatives, or any of them (collectively referred to herein as the "Released Parties"). The State of Mississippi specifically reserves all of its rights and remedies against any other person or entity other than the Released Parties. In no event shall the Released Parties include any defendant in MDL 2179 pending in the United States District Court for the Eastern District of Louisiana, unless such defendant is identified by name hereinabove in this Release and Covenant Not to Sue.

This Release and Covenant Not to Sue shall remain effective regardless of any appeals or court decisions relating to the liability of the Released Parties. Any reversal, modification or vacatur of the Consent Decree among the United States of America, Offshore and MOEX USA entered in MDL 2179 shall not affect the validity or force of this Release and Covenant Not to Sue.

The State of Mississippi acknowledges that the payment made hereunder shall not constitute an admission by Offshore, MOEX USA, MOECO or any other Released Party of any liability for civil penalties or any other claim arising out of or relating to the Deepwater Horizon Incident, and that those persons deny all such liability.

By executing this Release and Covenant Not to Sue on behalf of the State of Mississippi, Attorney General Jim Hood and Mississippi Department of Environmental Quality Executive Director Trudy Fisher represent and affirm their authority to act on behalf of and bind the State of Mississippi to this Release and Covenant Not to Sue.

This Release and Covenant Not to Sue shall take effect upon payment to the State of Mississippi by or on behalf of Offshore and MOEX USA of the sum of five million dollars ($5,000,000). The payment to the State of Mississippi shall be deposited into the Mississippi Pollution

Emergency Fund pursuant to Miss. Code Ann. § 49-17-68.  The State of Mississippi shall provide payment routing instructions to counsel for Offshore and MOEX USA within ten (10) business days after approval of the Consent Decree.  Offshore and MOEX USA have also agreed to complete five million dollars ($5,000,000) in supplemental environmental projects within Mississippi as part of the Consent Decree but the Parties acknowledge that such projects are not additional consideration for this Release and Covenant Not to Sue.

This Release and Covenant Not to Sue shall be governed by and construed in accordance with the Constitution and laws of the State of Mississippi, excluding its conflict of laws provisions, and any litigation with respect thereto shall be brought in the courts of the State of Mississippi.

For purposes of this Release and Covenant Not to Sue, the following definitions shall apply:

The term "Deepwater Horizon Incident" shall mean all discharges of hydrocarbons or other substances from the *Deepwater Horizon* Mobile Offshore Drilling Unit and/or Macondo Well arising from or relating to the events of April 20, 2010 at the Macondo Well; the blowout, explosion and fire occurring on the *Deepwater Horizon* on April 20, 2010; the drilling that preceded the blowout; the loss of the drilling unit; the subsequent clean-up and remediation efforts and all other responsive actions, including without limitation the containment efforts and the drilling of relief wells.

The term "claim or cause of action for civil or administrative penalties" shall mean all past, present or future claims, rights, causes of action, demands, lawsuits, administrative or regulatory proceedings, obligations, or liabilities of any kind, nature or description whereby the State of Mississippi initiates or seeks to obtain or recover any monetary payment or other relief that constitutes a civil or administrative penalty.

The term "laws of the State of Mississippi" shall mean the laws of the State of Mississippi, together with any civil or administrative penalty regulations promulgated under that State's law or by that State.

Approved by:


_____     _____
Jim Hood, Attorney General for the State of Mississippi     Date


_____     _____
Trudy D. Fisher, Executive Director     Date
Mississippi Department of Environmental Quality


46

## Appendix B5

### State of Texas
### Release and Covenant Not to Sue

For and in consideration of the agreed settlement payment and the other terms set forth in this Release and Covenant Not to Sue, the State of Texas, acting by and through its Attorney General, on behalf of itself and its agencies, hereby releases and forever discharges, and covenants not to sue or cause another to sue for or on any claim or cause of action for civil or administrative penalties under the laws of the State of Texas, the United States, or any other State, which the State of Texas now has, ever had, or may have, now or in the future, whether known, unknown, suspected, claimed, asserted, or unasserted, arising out of or relating in any way to the Deepwater Horizon Incident, as well as the State of Texas' portion of any state law claims that could have been asserted by local government entities, including, but not limited to: the Texas Natural Resources Code, the Texas Water Code, the Texas Health and Safety Code, and the Texas Parks and Wildlife Code, against MOEX Offshore 2007 LLC ("Offshore"), MOEX USA Corporation ("MOEX USA"), Mitsui Oil Exploration Co., Ltd. ("MOECO") and each of their affiliates, including without limitation, Mitsui & Co., Ltd, Mitsui & Co. (U.S.A.), Inc., the Ministry of Economy, Trade and Industry of the Government of Japan and the other minority shareholders of MOECO, and each of them, and each of their past and present officers, directors, shareholders, parents, subsidiaries, business units, predecessors, successors, employees, agents and representatives, or any of them (referred to collectively herein as the "Released Parties"). In no event shall the Released Parties include any defendant in MDL 2179 pending in the United States District Court for the Eastern District of Louisiana, unless such defendant is identified by name hereinabove in this Release and Covenant Not to Sue.

This Release and Covenant Not to Sue shall remain effective regardless of any appeals or court decisions relating to the liability of the Released Parties. Any reversal, modification or vacatur of the Consent Decree among the United States of America, Offshore and MOEX USA entered in MDL 2179 shall not affect the validity or force of this Release and Covenant Not to Sue.

The State of Texas acknowledges that the payment made hereunder shall not constitute an admission by Offshore, MOEX USA, MOECO or any other Released Party of any liability for civil penalties or any other claim arising out of or relating to the Deepwater Horizon Incident, and that those persons deny all such liability.

By executing this Release and Covenant Not to Sue, Jon Niermann, Chief, Environmental Protection Division, Office of the Attorney General, State of Texas, represents and affirms his authority to act on behalf of and bind the State of Texas and its agencies to this Release and Covenant Not to Sue.

This Release and Covenant Not to Sue shall take effect upon payment to the State of Texas of $3,250,000 by or on behalf of Offshore and MOEX USA as provided in an Agreed Final

Judgment to be filed in the District Court of Travis County, Texas. This executed Release and Covenant Not to Sue will not be filed or used as evidence in any court other than the District Court of Travis County, Texas, except that any of the Released Parties may use it as a defense to any lawsuit for civil penalties that is brought against such Released Party by or on behalf of the State of Texas. The above-referenced payment to the State of Texas shall be made by Wire Transfer to the Comptroller of Public Accounts, State of Texas, for the Attorney General's Suspense Account, using the following instructions:

| | |
|---|---|
| Financial Institution: | TX COMP AUSTIN |
| Routing Number: | 114900164 |
| Account Name: | Comptroller of Public Accounts |
| | Treasury Operations |
| Account Number to Credit: | 463600001 |
| Reference: | AG No. 12-3309643 (MOEX Civil Penalties) |
| Attention: | Office of the Attorney General |
| | Chief, EPD Div. (512-463-2012) |
| Contact: | Abel Rosas, Fin. Rptg (512-475-4380) |

At the time of payment, the payor shall likewise send a copy of the Wire Transfer authorization form and transaction record to Thomas.Edwards@oag.state.tx.us.

For purposes of this Release and Covenant Not to Sue, the following definitions shall apply:

The term "Deepwater Horizon Incident" shall mean all discharges of hydrocarbons or other substances from the *Deepwater Horizon* Mobile Offshore Drilling Unit and/or Macondo Well arising from or relating to the events of April 20, 2010 at the Macondo Well; the blowout, explosion and fire occurring on the *Deepwater Horizon* on April 20, 2010; the drilling that preceded the blowout; the loss of the drilling unit; the subsequent clean-up and remediation efforts and all other responsive actions, including without limitation the containment efforts and the drilling of relief wells.

The term "claim or cause of action for civil or administrative penalties" shall mean all past, present or future claims, rights, causes of action, demands, lawsuits, administrative or regulatory proceedings, obligations, or liabilities of any kind, nature or description whereby the State of Texas or any of its agencies initiates or seeks to obtain or recover any monetary payment or other relief that constitutes a civil or administrative penalty (however, the term shall not include claims for Natural Resource Damages or assessments of such damages that do not constitute civil penalties).

The term "laws of the State of Texas" shall mean the laws of the State of Texas, together with any civil or administrative penalty regulations promulgated under that state's law or by any of its agencies.

THE STATE OF TEXAS

_____

Jon Niermann, Chief
Environmental Protection Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0052
Jon.Niermann@oag.state.tx.us

## Appendix C

# Supplemental Environmental Projects

Consistent with the provisions in Article VI of this Consent Decree and this Appendix C, the MOEX Entities shall acquire or cause to be acquired SEP Properties in the States of Louisiana, Texas, Mississippi, and Florida for transfer to and acquisition by governmental entities, non-profit groups, land trusts, or other entities appropriate for the purposes of these SEPs, which shall protect them in perpetuity from development by encumbering them with appropriate conservation easements, deed restrictions, covenants, or other institutional controls. The SEP Properties that the MOEX Entities acquire or cause to be acquired, shall not include any natural resources damaged by the Deepwater Horizon Incident.  The SEP Properties shall contain habitat and natural resources worthy of conservation in perpetuity, and/or will protect water quality in the Gulf of Mexico region.  The SEP Properties shall be either (i) coastal or riparian real property interests that are in close proximity to the Gulf of Mexico or, (ii) if inland, real property interests proximate to the Gulf of Mexico that protect wildlife habitat and water resources, so that the protection of such habitat and water resources also protects or enhances wildlife habitat or water quality in the Gulf of Mexico.  The United States reserves the right to reject any proposed SEP based on the terms of or information gathered under Appendix C, Article VI of this Consent Decree, and EPA's *Supplemental Environmental Projects Policy* (May, 1, 1998).

The proposed SEPs in each State are further described below.

## 1. Louisiana

The MOEX Entities shall cause conservation easements to be recorded and/or real properties to be acquired in Louisiana. The MOEX Entities shall arrange for these SEP Properties to be transferred to the State or an appropriate conservation organization or organizations, on the condition that the Recipients of title shall encumber the SEP Properties with appropriate conservation easements or other encumbrances that will protect the SEP Properties in perpetuity.

## 2. Texas

The MOEX Entities shall cause conservation easements to be recorded and/or real properties to be acquired in Texas. The MOEX Entities shall arrange for these SEP Properties to be transferred to the State or an appropriate conservation organization or organizations, on the condition that the Recipients of title shall encumber the SEP Properties with appropriate conservation easements or other encumbrances that will protect the SEP Properties in perpetuity.

## 3. Mississippi

The MOEX Entities shall cause conservation easements to be recorded and/or real properties to be acquired in Mississippi. The MOEX Entities shall arrange for these SEP Properties to be transferred to the State or an appropriate conservation organization or organizations, on the condition that the Recipients of title shall encumber the SEP Properties with appropriate conservation easements or other encumbrances that will protect the SEP Properties in perpetuity.

## 4. Florida

The MOEX Entities shall cause conservation easements to be recorded and/or real

properties to be acquired in Florida.  The MOEX Entities shall arrange for these SEP Properties to be transferred to the State or an appropriate conservation organization or organizations, on the condition that the Recipients of title shall encumber the SEP Properties with appropriate conservation easements or other encumbrances that will protect the SEP Properties in perpetuity.