

**U.S. Department of Justice**

Environment and Natural Resource Division

---

*P.O. Box 7611*
*Washington, DC 20044*
*202-616-7915*
*Jeffrey.Prieto@usdoj.gov*

June 18, 2012

**BY ELECTRONIC MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
Eastern District of Louisiana
Hale Boggs Federal Building
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

      Re:    MDL 2179: United States' Brief Regarding BP's Proposal to Take Six Additional Non-party 30(b)(6) Depositions

Dear Judge Shushan:

      As explained to the Court in person at Working Group Conferences and in prior correspondence, the United States opposes BP's proposal to serve six additional non-party 30(b)(6) deposition notices, consisting of three to Universities employing faculty members whom served on the National Incident Command's Flow Rate Technical Group ("FRTG") and three to reservoir engineering firms that participated on the FRTG Reservoir Modeling team.[1] *See* Attachments A-F (Draft 30(b)(6) Notices).

---

[1] Initially, BP also proposed to notice Columbia University to obtain information regarding the work of Professor Timothy Crone, who was not a participant in the FRTG but contributed to an October 2011 publication on flow rate. As part of the meet and confer process, BP offered not to notice Professor Crone in exchange for the United States agreeing not to oppose the notices to the other six non-parties. The United States declined the offer. *See* Attachment G. On June 15, 2012, BP counsel notified the United States that BP will not notice Professor Crone "at this time." *See* Attachment H.

The draft notice of Professor Crone is seeking information regarding his contribution to the published paper, *Review of flow rate estimates of the Deepwater Horizon oil spill*, Proceedings of Natural Academy of Sciences (PNAS) (October 28, 2011). We note that Professor Crone contribution is analogous to the Woods Hole contributions to the PNAS paper that the Court ruled was outside the scope of discovery Order Regarding BP's Subpoena for Woods Hole's Analysis Documents [Rec. Doc. 6304 at 10-11].

BP proposes to send 30(b)(6) notices to the following Universities and entities:

- Purdue University, seeking the work of FRTG Plume sub-team member, Professor Steven Wereley;
- University of California, San Diego, seeking the work of FRTG Plume sub-team member, Professor Juan Lasheras;
- University of California, Santa Barbara, seeking the work of FRTG Plume sub-team member, Professor Ira Leifer;
- Kelkar & Associates ("Kelkar");
- Gemini Solutions ("Gemini"); and
- R.G. Hughes and Associates ("Hughes").

BP's proposal is untimely, duplicative of topics in BP's 30(b)(6) notice to the United States and, at its core, an attempt to circumvent the Court's limit on individual fact depositions established in its September 8, 2011 Working Group Order [Rec. Doc. 3949]. In addition, the University academics served at a time of national crisis. If BP succeeds in its pursuit of these individuals and institutions, future calls to provide specialized expertise in the face of disasters may go unheeded.

**BP's Untimely Proposal Uses the 30(b)(6) Deposition Process to Circumvent this Court's Limit on Individual Fact Witnesses**

BP's blatant attempt to use six additional non-party 30(b)(6) depositions to circumvent the Court's limit on individual fact witnesses should not be allowed. BP has been aware of the identities and roles of these individuals and institutions since 2010.[2] In fact, BP's initial Phase 2 witness list included for personal depositions Professors Kelkar (as well as his colleagues Drs. H. Ates and A. Bahar), R.G. Hughes, Juan Lasheras, Ira Leifer, Steven Wereley, along with every individual participant in the FRTG Plume Team. None of the entities, University or otherwise, that BP now seeks to depose as 30(b)(6) witnesses was listed. BP's final reduced witness list, submitted to the Court in August 2011, likewise lists Professors Wereley, Lasheras, Leifer, and Kelkar (along with many other individual FRTG participants) for *personal* depositions. *See* Attachment I (BP's August 25, 2011 Witness List). Tellingly, as in its earlier lists, BP does not include 30(b)(6) depositions of the Universities or entities proposed in May 2012. BP's witness lists demonstrate BP decided in Spring 2011 that the professors should be individually deposed, as opposed to choosing to list the professors' work as 30(b)(6) deposition topics. Nonetheless BP waited until May of 2012 to convert these individual depositions to 30(b)(6) depositions.

BP's decision to convert the fact witnesses to 30(b)(6) depositions is especially untimely considering the parties have been working diligently, under the Court's guidance, to finalize the scope of the depositions in order for the non-party depositions to start this August. BP's attempt to seek six depositions at this stage undermines the integrity of the Court's case management

---

[2] At the absolute latest, BP learned of these proposed witnesses and their work when the FRTG's final report was released on March 10, 2011. *See* March 10, 2011 *Assessment of Flow Rate Estimates for the Deepwater Horizon/Macondo Well Oil Spill* [Rec. Doc. 6104].

efforts and jeopardizes the work of the Court and the parties by setting a precedent for additional late-noticed depositions to go forward without good cause. The proper intention of a 30(b)(6) deposition is to streamline the deposition and discovery process, see *Harris v. New Jersey*, 259 F.R.D. 89, 92 (D.N.J. 2007). Unfortunately, the proposed 30(b)(6) depositions may have the opposite effect, potentially derailing the Court's and the parties' diligent attempts to have third-party 30(b)(6) depositions commence in August. Moreover, the United States has no confidence that BP will not attempt to add other newly-identified third parties as 30(b)(6) deponents.[3]

In addition to streamlining the discovery process, the purpose of a Rule 30(b)(6) deposition is "to avoid the possibility that several officers and managing agents [of an organization] might be deposed in turn, with each disclaiming personal knowledge of facts that are clearly known to persons within the organization and thus to the organization itself." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). This concern is not present here because one person within each of the Universities named on the subpoenas has all of the information regarding those topics.

In this case, BP simply is using a 30(b)(6) notice to get the desired individual deponent in the chair and ask about his personal knowledge. BP's contention that it will be satisfied with whatever witness a University prepares is belied by the proposed notices themselves, which include names of the individual professors in the definition of "you." *See*, *e.g*., Attachment C (Proposed 30(b)(6) Notice of University of California, Santa Barbara). A 30(b)(6) designee does not give "personal opinions" of individuals but rather presents an entity's "position" on the topics in the notice. *Brazos River Auth.*, 469 F.3d at 433; *Hyde v. Stanley Tools*, 107 F. Supp. 2d 992, 992-93 (E.D. La. 2000). It is a fiction to say that a University would have any position on these technical topics independent of the professor's personal opinion as to the work that individual professor conducted. The point of a Rule 30(b)(6) deposition is to allow a party to obtain information from a corporate entity. Here, the professors' work was not part of the Universities' business. Therefore, BP is calling a Rule 30(b)(6) deposition what is really an individual deposition.

BP has suggested in the meet-and-confer process that United States' proposed depositions of Intertek, Isotech, and World Oilfield Machine, Inc ("WOM") are analogous. The situations are inapposite. First, these three non-parties had numerous individuals involved in the efforts to kill the well, so are proper Rule 30(b)(6) depositions. Second, the depositions proposed by the United States were raised shortly after we learned the nature of the work performed by these entities. As the Court is aware, the United States first proposed 30(b)(6) depositions of Intertek, Isotech, and WOM at the March 30, 2012 Working Group Conference. It was only after BP's Phase II document productions that the United States learned that these

---

[3] The Court also should consider that BP likely will seek 30(b)(6) depositions of the remaining FRTG members not employed by the United States and their associated Universities, thus bringing the total of additional depositions to at least a dozen. If the Court allows the depositions requested at this late stage by BP to proceed, other parties, including the United States, may seek to take additional 30(b)(6) depositions of non-parties along the same lines of what BP is seeking here.

non-parties were performing work or supplying services or materials relevant to Phase II.  As noted in our prior correspondence, BP professed to not know the identity of the company that provided the Capping Stack dual gate valves or to have engineering drawings of those valves; it turned out that WOM manufactured and provided them.  *See* Attachment J (Letter from Scott Cernich to Judge Shushan dated May 18, 2012).

**BP's Additional Non-party 30(b)(6) Deposition notices are Duplicative and Unnecessary**

In addition to BP's end run around the Court's individual deposition limit, the United States further objects to BP's proposal as duplicative of topics already contained in BP's 30(b)(6) notice to the United States.  The Court may refuse to allow a 30(b)(6) deposition where the topics "merely request duplication of other information already obtained through other discovery methods."  *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010).

Kelkar, Gemini, and Hughes made up the Reservoir sub-team who performed work as part of the FRTG.  Professors Wereley, Lasheras and Leifer, respectively, were members of the Plume sub-team who also performed work as part of the FRTG.  BP's 30(b)(6) notice to the United States topics 44-47 and 49-51 call for extensive information regarding the FRTG and its analyses, including the methods, calculations, analyses, estimates, factors, data and assumptions considered or employed by the FRTG generally and the Plume and Reservoir sub-teams specifically.  *See* Attachment K (BP's 30(b)(6) Deposition Notice of the United States).  BP's 30(b)(6) notice to the United States topics further includes all communications within or among the FRTG and its sub-teams regarding the MC252 well.  The United States has produced to BP the files of Kelkar, Gemini, Hughes and the Plume sub-team professors, and will present witnesses to testify regarding the work of the FRTG and the sub-teams.

BP may argue that the additional non-party 30(b)(6) depositions are needed because the work of the individual professors differs from how this work was presented in the FRTG Report.  This argument fails because the FRTG Report incorporates and discusses the work of each of the professors in question.  *See* Assessment of Flow Rate Estimates for the Deepwater Horizon/Macondo Well Oil Spill (March 10, 2011), App. E (Reservoir Team Report); Plume Team Report (July 21, 2010), App. 5 (Gulf Oil Spill PIV Analysis by Professor Steve Wereley), App. 6 (Riser Pipe Flow Estimate by Professor Ira Leifer), & App. 8 (Flow Rate Estimation from Feature Tracking by Professor Juan C. Lasheras, et al.), *available at* http://www.usgs.gov/oilspill/.  Moreover, any potential differences between the individual members of the FRTG and the ultimate conclusions of the sub-teams are covered by the existing notice to the United States.  The Court should order that the topics directed to United States be narrowed if BP is allowed to take the non-party depositions under consideration.  For instance, if BP is able to elicit Rule 30(b)(6) testimony from Gemini, Kelkar and Hughes, than it will have testimony from the entire Reservoir Modeling sub-team.  At that point, there is no purpose in having a separate witness from the United States provide the same testimony.

Furthermore, BP specifically requested that the United States collect documents from the individual FRTG members whose work is covered by these proposed notices and the United States agreed, despite the fact that they were not United States employees.  *See* United States' Status Report on Efforts to Respond to Discovery Served on the United States Before July 1,

2011 [Rec. Doc. 3928] at 23. The United States, having collected their documents and worked with these individuals, stands ready to testify as to their work as part of the 30(b)(6) deposition noticed of the United States. The work these individuals did was part of and at the direction of the United States. Having insisted that the United States must respond on behalf of these individuals in discovery, BP has no right to conduct further discovery directly of them.

### BP's Additional Non-party 30(b)(6) Notices Unfairly Punish Those Professors who Immediately Responded to a National Crisis

The United States objects to BP's proposal because allowing the depositions to occur will unfairly punish those professors who immediately responded to a national crisis.[4] The professors subject to BP's proposed notices had important expertise not readily available to the parties in the aftermath of the spill. These professors should be lauded, not punished, for making themselves available during this time of national need.

The United States is concerned that if the depositions are allowed to take place, it will have a chilling effect on Universities allowing their professors to get involved in these types of activities. Universities may preclude preeminent researchers from providing their expertise during times of national need because they fear later being entangled in litigation proceedings.

In addition, once they consider the legal ramifications of their efforts, researchers with similar important expertise may be reticent in the future to offer the type of services responders do not possess. This possible result is especially unfortunate because BP can obtain the information it seeks – based on discovery already served – without directly implicating the professors in question.

### Conclusion

In light of the above arguments, the United Sates respectfully requests that the Court deny BP's proposal to take seven additional non-party 30(b)(6) depositions. Allowing the depositions would not only undermine the Court's case management efforts, but may affect the decisions of future researchers and their respective institutions during times of national crisis.

                                              Respectfully submitted,

                                              /s/ Jeffrey M. Prieto
                                              Jeffrey M. Prieto

                                              /s/ Judy B. Harvey
                                              Judy B. Harvey

---

[4] Some of the professors were not paid for their efforts and some were paid after the fact to cover certain costs associated with their FRTG work.

cc: Liaison & Coordinating Counsel

Robert Gasaway