# Attachment A

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of Indiana

IN RE:  OIL SPILL by the OIL RIG )
"DEEPWATER HORIZON" )
in the GULF OF MEXICO )
on APRIL 20, 2010 )
)

Civil Action No.  MDL 2179

(If the action is pending in another district, state where:
Eastern District of Louisiana )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  PURDUE UNIVERSITY, 475 STADIUM MALL DRIVE
WEST LAFAYETTE, INDIANA 47907

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: All documents and materials set out in the attached Exhibit A, in accordance with FRCP 45.  A custodian must appear and offer testimony, to be recorded stenographically, as to the authenticity of the documents described and set forth in Exhibit A and produced pursuant to the subpoena duces tecum served concurrently herewith.

| Place: Nearby hotel, office, or location otherwise agreed to. | Date and Time: July 2, 2012 at 2 pm EDT |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _____

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* BP Exploration & Production Inc. and BP America Production Company _____ , who issues or requests this subpoena, are:
Karen McCartan DeSantis, Kirkland & Ellis LLP, 655  Fifteenth Street NW, Washington, DC 20005
kdesantis@kirkland.com
(202) 879-5000



AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  MDL 2179

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:



## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*

 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

 **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

 **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

 **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

 **(i)** fails to allow a reasonable time to comply;

 **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

 **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

 **(iv)** subjects a person to undue burden.

 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

 **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

 **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

 **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

 **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*

 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

 **(i)** expressly make the claim; and

 **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).



## EXHIBIT A TO "SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION"

### DEFINITIONS

As used in the list of topics contained in this notice, the following terms (whether or not capitalized in the list of topics) are defined as set forth below:

1.  "Communication" means and includes any transmission or exchange of any information, whether orally or in writing, including without limitation any conversation or discussion by means of letter, note, memorandum, interoffice correspondence, telephone, electronic mail, telegraph, telex, telecopies, cable communicating data processors, or some other electronic or other medium.

2.  "Document" means and includes any printed, typewritten or handwritten matter of whatever character, including without limitation the original and each non-identical copy of each and any writing, memorandum, letter, e-mail, correspondence, telegram, note, minutes, contract, agreement, information, interoffice and intra-office communications, procedure, pamphlet, diary, record or note of telephone conversation, chart, schedule, entry, print representation, record, report, photograph, and any tangible item or thing of written, readable, graphic, audible, or visual material.

3.  "DWH" refers to the Deepwater Horizon rig and/or its appurtenances used in deepwater oil drilling in the Gulf of Mexico.

4.  "Flow Rate Analysis" means work done as any part of an effort to observe, measure, assess, or estimate the rate of flow or flow volume of hydrocarbons



resulting from the DWH incident through the use of velocimetry techniques, including without limitation PIV and feature tracking.

5. "FRTG" refers to the Flow Rate Technical Group, convened by National Incident Commander Admiral Thad Allen and led by Dr. Marcia McNutt.

6. "FRTG Report" means the report entitled "Assessment of Flow Rate Estimates for the Deepwater Horizon/Macondo Well Oil Spill," dated March 10, 2011, prepared by the FRTG.

7. "Incident" refers to the April 20, 2010 occurrence in the Gulf of Mexico in which the Deepwater Horizon vessel caught fire and sank.

8. "MC252" or "Macondo Well" refers to Mississippi Canyon Block 252, part of the Macondo Prospect in the Gulf of Mexico.

9. "Online Storage Site" means any Internet site where digital files, documents, or data can be stored, uploaded, backed up, or shared, including without limitation Dropbox, Wuala, or iCloud.

10. "PIV" means particle image velocimetry as the term is used in the Reports.

11. "Plume Team" refers to the Plume Calculation Team of the FRTG.

12. "Preliminary Report" means the report entitled "Estimated Leak Rates and Lost Oil from the Deepwater Horizon Spill, May 27, 2010," authored by the Plume Team.

13. "Reports" means the Preliminary Report and the Revised Report.

14. "Revised Report" means the report entitled "Deepwater Horizon Release Estimate of Rate by PIV," dated July 21, 2010, authored by the Plume Team.

15. "Usable Form" means a form that allows the data to be evaluated, manipulated, calculated, or further processed without the use of additional code, programming, or



metadata, and which includes any and all necessary glossaries, keys, and indices for interpretation of the material.

16. "Velocimetry Information and Data" means all measurements, calculations, images, estimates, figures, and results as either inputs or outputs from your flow rate analysis work.

17. "Video" refers to video used in flow rate analysis, including without limitation videos of the end of the riser, the riser kink, and the post-June 2 cut riser.

18. "Video Images" refers to frames or images of video used or modified by you or other members of the Plume Team to aid in your and/or their flow rate analysis.

19. "You" and "Your" refer to Purdue University, Steven Wereley, and any employees, staff, assistants, research assistants, or colleagues, located at Purdue University or elsewhere, who performed, assisted, reviewed, or otherwise contributed to the work described or referenced in Appendix 6 of the Preliminary Report or Appendix 5 of the Revised Report.

<u>DOCUMENTS REQUESTED</u>

Any and all documents, data, and communications related to the acquisition, processing, and analysis of velocimetry information and data regarding the flow of hydrocarbons, including without limitation oil and gas, resulting from the DWH incident; any and all documents, data, and communications related to the development, production, and analysis of the reports; any and all documents, data, and communications related to the location and chain of custody of any and all velocimetry information and data generated from the effort to measure the flow of hydrocarbons resulting  from the DWH incident and/or to develop the reports; and any and all documents, data, and communications related to responses to any and all requests for proposals



("RFPs") that pertain to the use of any velocimetry technique used in flow rate analysis with respect to the DWH incident.  These requests shall include, without limitation:

1.   Any and all documents, data, and/or communications received from or sent to BP or any agency of the U.S. government concerning your work for the FRTG, including without limitation videos in their *original, unaltered* format, computer-aided design drawings, tables, schematics, and illustrations, as well as information about the oil ratio, camera viewing angle, the geometry of the riser and the blowout preventer, and in situ conditions of the oil flow, such as pressure measurements, sea currents, flow temperature, and sea temperature.

2.   Any and all documents, data, and/or communications, digital or otherwise, shared between you and other FRTG members, including research assistants and support staff.

3.   Any and all documents, data, and/or communications received from or sent to third parties, including academics and experts not involved in the FRTG, regarding flow rate analysis done by you and/or others on the Plume Team.

4.   Any and all documents, data, and/or communications received from or sent to the media regarding the flow rate analysis and/or Plume Team work undertaken by you and/or any other Plume Team member.

5.   Any and all documents, data, and/or communications used, developed, or created by you and/or others as part of your flow rate analysis and/or Plume Team work, including videos and video images processed or modified by you and/or other Plume Team members.



6. Any and all documents, data, and/or communications regarding or reflecting collaboration with others, including but not limited to, Timothy Crone, on any work and/or analysis related to the flow of hydrocarbons resulting from the DWH incident.

7. Any and all documents, data, and/or communications used or relied upon to generate any figures, tables, graphics, or illustrations in the reports.

8. Any and all of the software, algorithms, or source codes and executables (if it was a compiled software and not using scripted language), including all of the input and initialization files for said codes, used and/or developed as part of your work and/or that of any member of the Plume Team to:

   a. Process the video images for the intensity analysis;

   b. Process the video images for the cross-correlation PIV;

   c. Process the video images for the feature tracking;

   d. Calculate or estimate flow rate;

   e. Select the region in which velocity measurements were taken; and

   f. Develop your entrainment model and the assumptions used therein.

Include all procedures used, from the image processing to the signal processing. Include all versions of the software, algorithms, or source codes used, including without limitation the versions used to develop your work for the Preliminary Report and the Revised Report.  If the source code was modified, produce the specific versions used for your Preliminary Report analysis and Revised Report analysis as well as a complete, documented history of any changes to the code(s).

9. Any and all abstracts, information, articles, theories and/or hypotheses, whether digital or in hard copy and whether published or not, relied upon to develop or refine



the aforementioned codes, as well as your handwritten or digital notes regarding these articles.  Include all publications by the source code authors in which these codes have previously been used.

10. All of the raw data, including velocity measurements obtained using the PIV and feature tracking methodologies, as well as documentation of the file format and contents and the exact procedures followed.

11. Any and all laboratory research notebooks, whether digital or in hard copy, used or maintained by you and/or the Plume Team for the duration of your work on flow rate analysis and/or for the Plume Team, including without limitation:

    a.  Backup history reflecting modifications of the files if a digital notebook was maintained; and

    b.  Laboratory internal documents outlining the laboratory's policies and/or guidelines for proper use and maintenance of lab notebooks.

12. Any and all data, files and documentation related to any prior or concurrent error analysis performed for evaluating the accuracy of your PIV and feature tracking codes.  Include images from the oil spill as well as any other artificial or benchmark images or experiments relied on, as well as documents describing this data and detailing how the data and/or images were generated or produced.

13. Any and all system software or programs necessary to read any files, data, or information from (1) through (12) above, or any codes, programs, or metadata used for translating the files from (1) through (12) above into usable form.

14. Any and all agreements related to flow rate analysis and/or the Plume Team's work between and/or among (a) you and Purdue University, (b) you and the FRTG or any



entity of the U.S. government, and (c) the FRTG or any entity of the U.S. government and Purdue University.



AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of Indiana

| | |
|---|---|
| IN RE:  OIL SPILL by the OIL RIG )<br>"DEEPWATER HORIZON" )<br>in the GULF OF MEXICO )<br>on APRIL 20, 2010 )<br>) | Civil Action No.   MDL 2179<br><br>(If the action is pending in another district, state where:<br>Eastern District of Louisiana        ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  PURDUE UNIVERSITY, 475 STADIUM MALL DRIVE
WEST LAFAYETTE, INDIANA 47907

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

All information set out in the attached Exhibit A, in accordance with FRCP 45.

| Place: Nearby hotel, office, or location otherwise agreed to. | Date and Time:<br>September 19, 2012 Time to be decided |
|---|---|

The deposition will be recorded by this method: certified shorthand reporter duly authorized to administer oaths and audio-visual equipment including, but not limited to, interactive real-time transcription.

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

All documents and materials set out in the attached Exhibit A, in accordance with FRCP 45. A custodian must appear and offer testimony, to be recorded stenographically, as to the authenticity of the documents described and set forth in Exhibit A and produced pursuant to the subpoena duces tecum and ad testificandum served concurrently herewith.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _____

        *CLERK OF COURT*

                            OR

_____       _____
    *Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*    BP Exploration &
Production Inc. and BP America Production Company      , who issues or requests this subpoena, are:

Karen McCartan DeSantis, Kirkland & Ellis LLP, 655 Fifteenth Street NW, Washington, DC 20005
kdesantis@kirkland.com



AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  MDL 2179

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____                          _____
                                                            *Server's signature*

                                                _____
                                                            *Printed name and title*

                                                _____
                                                            *Server's address*

Additional information regarding attempted service, etc:



## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).



## EXHIBIT A TO "SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION"

### DEFINITIONS

As used in the list of topics contained in this notice, the following terms (whether or not capitalized in the list of topics) are defined as set forth below:

1. "Communication" means and includes any transmission or exchange of any information, whether orally or in writing, including without limitation any conversation or discussion by means of letter, note, memorandum, interoffice correspondence, telephone, electronic mail, telegraph, telex, telecopies, cable communicating data processors, or some other electronic or other medium.

2. "Document" means and includes any printed, typewritten or handwritten matter of whatever character, including without limitation the original and each non-identical copy of each and any writing, memorandum, letter, e-mail, correspondence, telegram, note, minutes, contract, agreement, information, interoffice and intra-office communications, procedure, pamphlet, diary, record or note of telephone conversation, chart, schedule, entry, print representation, record, report, photograph, and any tangible item or thing of written, readable, graphic, audible, or visual material.

3. "DWH" refers to the Deepwater Horizon rig and/or its appurtenances used in deepwater oil drilling in the Gulf of Mexico.

4. "Flow Rate Analysis" means work done as any part of an effort to observe, measure, assess, or estimate the rate of flow or flow volume of hydrocarbons resulting from



the DWH incident through the use of velocimetry techniques, including without limitation PIV and feature tracking.

5. "FRTG" refers to the Flow Rate Technical Group, convened by National Incident Commander Admiral Thad Allen and led by Dr. Marcia McNutt.

6. "FRTG Report" means the report entitled "Assessment of Flow Rate Estimates for the Deepwater Horizon/Macondo Well Oil Spill," dated March 10, 2011, prepared by the FRTG.

7. "Incident" refers to the April 20, 2010 occurrence in the Gulf of Mexico in which the Deepwater Horizon vessel caught fire and sank.

8. "MC252" or "Macondo Well" refers to Mississippi Canyon Block 252, part of the Macondo Prospect in the Gulf of Mexico.

9. "Online Storage Site" means any Internet site where digital files, documents, or data can be stored, uploaded, backed up, or shared, including without limitation Dropbox, Wuala, or iCloud.

10. "PIV" means particle image velocimetry as the term is used in the Reports.

11. "Plume Team" refers to the Plume Calculation Team of the FRTG.

12. "Preliminary Report" means the report entitled "Estimated Leak Rates and Lost Oil from the Deepwater Horizon Spill, May 27, 2010," authored by the Plume Team.

13. "Reports" means the Preliminary Report and the Revised Report.

14. "Revised Report" means the report entitled "Deepwater Horizon Release Estimate of Rate by PIV," dated July 21, 2010, authored by the Plume Team.

15. "Usable Form" means a form that allows the data to be evaluated, manipulated, calculated, or further processed without the use of additional code, programming, or



metadata, and which includes any and all necessary glossaries, keys, and indices for interpretation of the material.

16. "Velocimetry Information and Data" means all measurements, calculations, images, estimates, figures, and results as either inputs or outputs from your flow rate analysis work.

17. "Video" refers to video used in flow rate analysis, including without limitation videos of the end of the riser, the riser kink, and the post-June 2 cut riser.

18. "Video Images" refers to frames or images of video used or modified by you or other members of the Plume Team to aid in your and/or their flow rate analysis.

19. "You" and "Your" refer to Purdue University, Steven Wereley, and any employees, staff, assistants, research assistants, or colleagues, located at Purdue University or elsewhere, who performed, assisted, reviewed, or otherwise contributed to the work described or referenced in Appendix 6 of the Preliminary Report or Appendix 5 of the Revised Report.

<u>SUBJECTS FOR TESTIMONY</u>

1. Your and/or others' work for the United States and/or the FRTG and/or the Plume Team regarding the flow of hydrocarbons resulting from the DWH incident.

2. Your knowledge of and involvement in acquiring, processing, and/or analyzing data and/or video regarding the flow of hydrocarbons resulting from the DWH incident.

3. Your knowledge of the persons or entities acquiring, processing, and/or analyzing the flow of hydrocarbons resulting from the DWH incident.

4. Your analysis and conclusions regarding the flow of hydrocarbons resulting from the DWH incident.



5. Your knowledge of the analysis and conclusions of others regarding the flow of hydrocarbons resulting from the DWH incident.

6. Your and/or others' analysis of any video and/or video images processed, used, or relied upon to develop your flow rate analysis or Plume Team work.

7. Error and uncertainty analyses undertaken by you and/or others as part of Plume Team work and/or flow rate analysis.

8. Your and/or others' use and/or development of the software, algorithms, or source codes and executables used as part of your work to:

    a. Process the video images for the intensity analysis;

    b. Process the video images for the cross-correlation PIV;

    c. Process the video images for the feature tracking;

    d. Calculate or estimate flow rate;

    e. Select the region in which velocity measurements were taken; and

    f. Develop your entrainment model and the assumptions used therein.

9. Your and/or others' communications with any third parties, including academics and experts not involved in the FRTG, regarding your work and/or analysis related to the flow of hydrocarbons resulting from the DWH incident.

10. Your and/or others' communications with the media regarding your flow rate analysis or Plume Team work.

11. Your and/or others' communications with the United States, any United States employee, any national laboratory or any of its employees, or anyone affiliated or working with the FRTG or the Plume Team regarding the flow of hydrocarbons resulting from the DWH incident.



12. Your receipt of financial or other compensation from any source for your role in analyzing the flow of hydrocarbons resulting from the DWH incident.



# Attachment B

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of California

IN RE:    OIL SPILL by the OIL RIG       )
          "DEEPWATER HORIZON"            )
          in the GULF OF MEXICO          )       Civil Action No.   MDL 2179
          on APRIL 20, 2010              )
                                         )       (If the action is pending in another district, state where:
                                         )            Eastern District of Louisiana          )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: UNIVERSITY OF CALIFORNIA, SAN DIEGO
    9500 GILMAN DRIVE, LA JOLLA, CA 92093

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: All documents and materials set out in the attached Exhibit A, in accordance with FRCP 45.  A custodian must appear and offer testimony, to be recorded stenographically, as to the authenticity of the documents described and set forth in Exhibit A and produced pursuant to the subpoena duces tecum served concurrently herewith.

| Place: Covington & Burling LLP<br>9191 Towne Centre Drive, 6th Floor<br>San Diego, CA 92122 | Date and Time:<br>July 2, 2012 at 2 pm PDT |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _____

                    *CLERK OF COURT*
                                              OR

_____          _____
  *Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* BP Exploration & Production
Inc. and BP America Production Company_____ , who issues or requests this subpoena, are:

Karen McCartan DeSantis, Kirkland & Ellis LLP, 655  Fifteenth Street NW, Washington, DC 20005
kdesantis@kirkland.com
(202) 879-5000

DRAFT

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   MDL 2179

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:



AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).



## EXHIBIT A TO "SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION"

### DEFINITIONS

As used in the list of topics contained in this notice, the following terms (whether or not capitalized in the list of topics) are defined as set forth below:

1. "Communication" means and includes any transmission or exchange of any information, whether orally or in writing, including without limitation any conversation or discussion by means of letter, note, memorandum, interoffice correspondence, telephone, electronic mail, telegraph, telex, telecopies, cable communicating data processors, or some other electronic or other medium.

2. "Document" means and includes any printed, typewritten or handwritten matter of whatever character, including without limitation the original and each non-identical copy of each and any writing, memorandum, letter, e-mail, correspondence, telegram, note, minutes, contract, agreement, information, interoffice and intra-office communications, procedure, pamphlet, diary, record or note of telephone conversation, chart, schedule, entry, print representation, record, report, photograph, and any tangible item or thing of written, readable, graphic, audible, or visual material.

3. "DWH" refers to the Deepwater Horizon rig and/or its appurtenances used in deepwater oil drilling in the Gulf of Mexico.

4. "Flow Rate Analysis" means work done as any part of an effort to observe, measure, assess, or estimate the rate of flow or flow volume of hydrocarbons



resulting from the DWH incident through the use of velocimetry techniques, including without limitation PIV and feature tracking.

5. "FRTG" refers to the Flow Rate Technical Group, convened by National Incident Commander Admiral Thad Allen and led by Dr. Marcia McNutt.

6. "FRTG Report" means the report entitled "Assessment of Flow Rate Estimates for the Deepwater Horizon/Macondo Well Oil Spill," dated March 10, 2011, prepared by the FRTG.

7. "Incident" refers to the April 20, 2010 occurrence in the Gulf of Mexico in which the Deepwater Horizon vessel caught fire and sank.

8. "MC252" or "Macondo Well" refers to Mississippi Canyon Block 252, part of the Macondo Prospect in the Gulf of Mexico.

9. "Online Storage Site" means any Internet site where digital files, documents, or data can be stored, uploaded, backed up, or shared, including without limitation Dropbox, Wuala, or iCloud.

10. "PIV" means particle image velocimetry as the term is used in the Reports.

11. "Plume Team" refers to the Plume Calculation Team of the FRTG.

12. "Preliminary Report" means the report entitled "Estimated Leak Rates and Lost Oil from the Deepwater Horizon Spill, May 27, 2010," authored by the Plume Team.

13. "Reports" means the Preliminary Report and the Revised Report.

14. "Revised Report" means the report entitled "Deepwater Horizon Release Estimate of Rate by PIV," dated July 21, 2010, authored by the Plume Team.

15. "Usable Form" means a form that allows the data to be evaluated, manipulated, calculated, or further processed without the use of additional code, programming, or



metadata, and which includes any and all necessary glossaries, keys, and indices for interpretation of the material.

16. "Velocimetry Information and Data" means all measurements, calculations, images, estimates, figures, and results as either inputs or outputs from your flow rate analysis work.

17. "Video" refers to video used in flow rate analysis, including without limitation videos of the end of the riser, the riser kink, and the post-June 2 cut riser.

18. "Video Images" refers to frames or images of video used or modified by you or other members of the Plume Team to aid in your and/or their flow rate analysis.

19. "You" and "Your" refer to the University of California, San Diego ("UCSD"), Juan C. Lasheras, and any employees, staff, assistants, research assistants, or colleagues, located at UCSD or elsewhere, who performed, assisted, reviewed, or otherwise contributed to the work described or referenced in Appendix 4 of the Preliminary Report or Appendix 8 of the Revised Report.

## DOCUMENTS REQUESTED

Any and all documents, data, and communications related to the acquisition, processing, and analysis of velocimetry information and data regarding the flow of hydrocarbons, including without limitation oil and gas, resulting from the DWH incident; any and all documents, data, and communications related to the development, production, and analysis of the reports; any and all documents, data, and communications related to the location and chain of custody of any and all velocimetry information and data generated from the effort to measure the flow of hydrocarbons resulting from the DWH incident and/or to develop the reports; and any and all documents, data, and communications related to responses to any and all requests for proposals



("RFPs") that pertain to the use of any velocimetry technique used in flow rate analysis with respect to the DWH incident.  These requests shall include, without limitation:

1. Any and all documents, data, and/or communications received from or sent to BP or any agency of the U.S. government concerning your work for the FRTG, including without limitation videos in their *original, unaltered* format, computer-aided design drawings, tables, schematics, and illustrations, as well as information about the oil ratio, camera viewing angle, the geometry of the riser and the blowout preventer, and in situ conditions of the oil flow, such as pressure measurements, sea currents, flow temperature, and sea temperature.

2. Any and all documents, data, and/or communications, digital or otherwise, shared between you and other FRTG members, including research assistants and support staff.

3. Any and all documents, data, and/or communications between and/or among individuals from the University of California, San Diego and the University of Washington, any or all of them, regarding flow rate analysis, the reports, or the FRTG Report, including without limitation communications between May 13, 2010 and June 13, 2010.

4. Any and all documents, data, and/or communications received from or sent to third parties, including academics and experts not involved in the FRTG, regarding flow rate analysis done by you and/or others on the Plume Team.

5. Any and all documents, data, and/or communications received from or sent to the media regarding flow rate analysis and/or Plume Team work undertaken by you and/or any other Plume Team member.

4



6. Any and all documents, data, and/or communications used, developed, or created by you and/or others as part of your flow rate analysis and/or Plume Team work, including videos and video images processed or modified by you and/or other Plume Team members.

7. Any and all documents, data, and/or communications used or relied upon to generate any figures, tables, graphics, or illustrations in the reports.

8. Any and all of the software, algorithms, or source codes and executables (if it was a compiled software and not using scripted language), including all of the input and initialization files for said codes, used and/or developed as part of your work and/or that of any members of the Plume Team to:

    a. Process the video images for the intensity analysis;

    b. Process the video images for the cross-correlation PIV;

    c. Process the video images for the feature tracking;

    d. Calculate or estimate flow rate;

    e. Select the region in which velocity measurements were taken; and

    f. Develop your entrainment model and the assumptions used therein.

9. Include all procedures used, from the image processing to the signal processing. Include all versions of the software, algorithms, or source codes used, including without limitation the versions used to develop your work for the Preliminary Report and the Revised Report.  If the source code was modified, produce the specific versions used for your Preliminary Report analysis and Revised Report analysis as well as a complete, documented history of any changes to the code(s).



10. Any and all abstracts, information, articles, theories and/or hypotheses, whether digital or in hard copy and whether published or not, relied upon to develop or refine the aforementioned codes, as well as your handwritten or digital notes regarding these articles.  Include all publications by the source code authors in which these codes have previously been used.

11. All of the raw data, including velocity measurements obtained using the PIV and feature tracking methodologies, as well as documentation of the file format and contents and the exact procedures followed.

12. Any and all laboratory research notebooks, whether digital or in hard copy, used or maintained by you and/or the Plume Team for the duration of your work on flow rate analysis and/or for the Plume Team, including without limitation:

    a.  Backup history reflecting modifications of the files if a digital notebook was maintained; and

    b.  Laboratory internal documents outlining the laboratory's policies and/or guidelines for proper use and maintenance of lab notebooks.

13. Any and all data, files and documentation related to any prior or concurrent error analysis performed for evaluating the accuracy of your PIV and feature tracking codes.  Include images from the oil spill as well as any other artificial or benchmark images or experiments relied on, as well as documents describing this data and detailing how the data and/or images were generated or produced.

14. Any and all system software or programs necessary to read any files, data, or information from (1) through (13) above, or any codes, programs, or metadata used for translating the files from (1) through (13) above into usable form.



15. Any and all agreements related to flow rate analysis and/or the Plume Team's work between and/or among (a) you and the University of California, San Diego ("UCSD"), (b) you and the University of Washington ("UW"), (c) you and the FRTG or any entity of the U.S. government, (d) the FRTG or any entity of the U.S. government and UCSD or UW, and/or (e) UCSD and UW.



AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of California

IN RE: OIL SPILL by the OIL RIG )
"DEEPWATER HORIZON" )
in the GULF OF MEXICO )
on APRIL 20, 2010 )
)

Civil Action No. MDL 2179

(If the action is pending in another district, state where:
Eastern District of Louisiana )

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: UNIVERSITY OF CALIFORNIA, SAN DIEGO
9500 GILMAN DR., LA JOLLA, CA 92093

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

All information set out in the attached Exhibit A, in accordance with FRCP 45.

| Place: Covington & Burling LLP<br>9191 Towne Centre Drive, 6th Floor<br>San Diego, CA 92122 | Date and Time:<br>September 11, 2012, Time to be determined. |
|---|---|

The deposition will be recorded by this method: certified shorthand reporter duly authorized to administer oaths and audio-visual equipment including, but not limited to, interactive real-time transcription.

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

All documents and materials set out in the attached Exhibit A, in accordance with FRCP 45. A custodian must appear and offer testimony, to be recorded stenographically, as to the authenticity of the documents described and set forth in Exhibit A and produced pursuant to the subpoena duces tecum and ad testificandum served concurrently herewith.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _____

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*      BP Exploration & Production Inc. and BP America Production Company _____, who issues or requests this subpoena, are:

Karen McCartan DeSantis, Kirkland & Ellis LLP, 655 Fifteenth Street NW, Washington, DC 20005
kdesantis@kirkland.com



AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  MDL 2179

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____  for travel and $ _____  for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:



## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).



**EXHIBIT A TO "SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION"**

DEFINITIONS

As used in the list of topics contained in this notice, the following terms (whether or not capitalized in the list of topics) are defined as set forth below:

1. "Communication" means and includes any transmission or exchange of any information, whether orally or in writing, including without limitation any conversation or discussion by means of letter, note, memorandum, interoffice correspondence, telephone, electronic mail, telegraph, telex, telecopies, cable communicating data processors, or some other electronic or other medium.

2. "Document" means and includes any printed, typewritten or handwritten matter of whatever character, including without limitation the original and each non-identical copy of each and any writing, memorandum, letter, e-mail, correspondence, telegram, note, minutes, contract, agreement, information, interoffice and intra-office communications, procedure, pamphlet, diary, record or note of telephone conversation, chart, schedule, entry, print representation, record, report, photograph, and any tangible item or thing of written, readable, graphic, audible, or visual material.

3. "DWH" refers to the Deepwater Horizon rig and/or its appurtenances used in deepwater oil drilling in the Gulf of Mexico.

4. "Flow Rate Analysis" means work done as any part of an effort to observe, measure, assess, or estimate the rate of flow or flow volume of hydrocarbons resulting from



the DWH incident through the use of velocimetry techniques, including without limitation PIV and feature tracking.

5. "FRTG" refers to the Flow Rate Technical Group, convened by National Incident Commander Admiral Thad Allen and led by Dr. Marcia McNutt.

6. "FRTG Report" means the report entitled "Assessment of Flow Rate Estimates for the Deepwater Horizon/Macondo Well Oil Spill," dated March 10, 2011, prepared by the FRTG.

7. "Incident" refers to the April 20, 2010 occurrence in the Gulf of Mexico in which the Deepwater Horizon vessel caught fire and sank.

8. "MC252" or "Macondo Well" refers to Mississippi Canyon Block 252, part of the Macondo Prospect in the Gulf of Mexico.

9. "Online Storage Site" means any Internet site where digital files, documents, or data can be stored, uploaded, backed up, or shared, including without limitation Dropbox, Wuala, or iCloud.

10. "PIV" means particle image velocimetry as the term is used in the Reports.

11. "Plume Team" refers to the Plume Calculation Team of the FRTG.

12. "Preliminary Report" means the report entitled "Estimated Leak Rates and Lost Oil from the Deepwater Horizon Spill, May 27, 2010," authored by the Plume Team.

13. "Reports" means the Preliminary Report and the Revised Report.

14. "Revised Report" means the report entitled "Deepwater Horizon Release Estimate of Rate by PIV," dated July 21, 2010, authored by the Plume Team.

15. "Usable Form" means a form that allows the data to be evaluated, manipulated, calculated, or further processed without the use of additional code, programming, or



metadata, and which includes any and all necessary glossaries, keys, and indices for interpretation of the material.

16. "Velocimetry Information and Data" means all measurements, calculations, images, estimates, figures, and results as either inputs or outputs from your flow rate analysis work.

17. "Video" refers to video used in flow rate analysis, including without limitation videos of the end of the riser, the riser kink, and the post-June 2 cut riser.

18. "Video Images" refers to frames or images of video used or modified by you or other members of the Plume Team to aid in your and/or their flow rate analysis.

19. "You" and "Your" refer to the University of California, San Diego ("UCSD"), Juan C. Lasheras, and any employees, staff, assistants, research assistants, or colleagues, located at UCSD or elsewhere, who performed, assisted, reviewed, or otherwise contributed to the work described or referenced in Appendix 4 of the Preliminary Report or Appendix 8 of the Revised Report.

<u>SUBJECTS FOR TESTIMONY</u>

1. Your and/or others' work for the United States and/or the FRTG and/or the Plume Team regarding the flow of hydrocarbons resulting from the DWH incident.

2. Your knowledge of and involvement in acquiring, processing, and/or analyzing data and/or video regarding the flow of hydrocarbons resulting from the DWH incident.

3. Your knowledge of the persons or entities acquiring, processing, and/or analyzing the flow of hydrocarbons resulting from the DWH incident.



4. Your analysis and conclusions regarding the flow of hydrocarbons resulting from the DWH incident.

5. Your knowledge of the analysis and conclusions of others regarding the flow of hydrocarbons resulting from the DWH incident.

6. Your and/or others' analysis of any video and/or video images processed, used, or relied upon to develop your flow rate analysis or Plume Team work.

7. Error and uncertainty analyses undertaken by you and/or others as part of Plume Team work and/or flow rate analysis.

8. Your and/or others' use and/or development of the software, algorithms, or source codes and executables used as part of your work  to:

     a.   Process the video images for the intensity analysis;

     b.   Process the video images for the cross-correlation PIV;

     c.   Process the video images for the feature tracking;

     d.   Calculate or estimate flow rate;

     e.   Select the region in which velocity measurements were taken; and

     f.   Develop your entrainment model and the assumptions used therein.

9. Your and/or others' communications with any individuals from the University of California, San Diego and the University of Washington, any or all of them, regarding flow rate analysis, the reports, or the FRTG Report, including without limitation communications between May 13,  2010 and June 13, 2010.

10. Your and/or others' communications with any third parties, including academics and experts not involved in the FRTG, regarding your work and/or analysis related to the flow of hydrocarbons resulting from the DWH incident.



11. Your and/or others' communications with the media regarding your flow rate analysis or Plume Team work.

12. Your and/or others' communications with the United States, any United States employee, any national laboratory or any of its employees, or anyone affiliated or working with the FRTG or the Plume Team regarding the flow of hydrocarbons resulting from the DWH incident.

13. Your receipt of financial or other compensation from any source for your role in analyzing the flow of hydrocarbons resulting from the DWH incident.



# Attachment C

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Central District of California

| | |
|---|---|
| IN RE:  OIL SPILL by the OIL RIG<br>"DEEPWATER HORIZON"<br>in the GULF OF MEXICO<br>on APRIL 20, 2010 | )<br>)<br>)<br>)<br>)<br>) |

Civil Action No.  MDL 2179

(If the action is pending in another district, state where:
Eastern District of Louisiana         )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  UNIVERSITY OF CALIFORNIA, SANTA BARBARA
SANTA BARBARA, CA 93106

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: All documents and materials set out in the attached Exhibit A, in accordance with FRCP 45.  A custodian must appear and offer testimony, to be recorded stenographically, as to the authenticity of the documents described and set forth in Exhibit A and produced pursuant to the subpoena duces tecum served concurrently herewith.

| Place: Nearby hotel, office, or location otherwise agreed to. | Date and Time:<br>July 2, 2012 at 2 pm PDT |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _____

| | |
|---|---|
| *CLERK OF COURT* | OR |
| _____<br>*Signature of Clerk or Deputy Clerk* | _____<br>*Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*  BP Exploration & Production Inc. and BP America Production Company _____ , who issues or requests this subpoena, are:

Karen McCartan DeSantis, Kirkland & Ellis LLP, 655 Fifteenth Street NW, Washington, DC 20005
kdesantis@kirkland.com
(202) 879-5000

DRAFT

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   MDL 2179

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

DRAFT

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).



# EXHIBIT A TO "SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION"

## DEFINITIONS

As used in the list of topics contained in this notice, the following terms (whether or not capitalized in the list of topics) are defined as set forth below:

1. "Communication" means and includes any transmission or exchange of any information, whether orally or in writing, including without limitation any conversation or discussion by means of letter, note, memorandum, interoffice correspondence, telephone, electronic mail, telegraph, telex, telecopies, cable communicating data processors, or some other electronic or other medium.

2. "Document" means and includes any printed, typewritten or handwritten matter of whatever character, including without limitation the original and each non-identical copy of each and any writing, memorandum, letter, e-mail, correspondence, telegram, note, minutes, contract, agreement, information, interoffice and intra-office communications, procedure, pamphlet, diary, record or note of telephone conversation, chart, schedule, entry, print representation, record, report, photograph, and any tangible item or thing of written, readable, graphic, audible, or visual material.

3. "DWH" refers to the Deepwater Horizon rig and/or its appurtenances used in deepwater oil drilling in the Gulf of Mexico.

4. "Flow Rate Analysis" means work done as any part of an effort to observe, measure, assess, or estimate the rate of flow or flow volume of hydrocarbons



resulting from the DWH incident through the use of velocimetry techniques, including without limitation PIV and feature tracking.

5. "FRTG" refers to the Flow Rate Technical Group, convened by National Incident Commander Admiral Thad Allen and led by Dr. Marcia McNutt.

6. "FRTG Report" means the report entitled "Assessment of Flow Rate Estimates for the Deepwater Horizon/Macondo Well Oil Spill," dated March 10, 2011, prepared by the FRTG.

7. "Incident" refers to the April 20, 2010 occurrence in the Gulf of Mexico in which the Deepwater Horizon vessel caught fire and sank.

8. "MC252" or "Macondo Well" refers to Mississippi Canyon Block 252, part of the Macondo Prospect in the Gulf of Mexico.

9. "Online Storage Site" means any Internet site where digital files, documents, or data can be stored, uploaded, backed up, or shared, including without limitation Dropbox, Wuala, or iCloud.

10. "PIV" means particle image velocimetry as the term is used in the Reports.

11. "Plume Team" refers to the Plume Calculation Team of the FRTG.

12. "Preliminary Report" means the report entitled "Estimated Leak Rates and Lost Oil from the Deepwater Horizon Spill, May 27, 2010," authored by the Plume Team.

13. "Reports" means the Preliminary Report and the Revised Report.

14. "Revised Report" means the report entitled "Deepwater Horizon Release Estimate of Rate by PIV," dated July 21, 2010, authored by the Plume Team.

15. "Usable Form" means a form that allows the data to be evaluated, manipulated, calculated, or further processed without the use of additional code, programming, or



metadata, and which includes any and all necessary glossaries, keys, and indices for interpretation of the material.

16. "Velocimetry Information and Data" means all measurements, calculations, images, estimates, figures, and results as either inputs or outputs from your flow rate analysis work.

17. "Video" refers to video used in flow rate analysis, including without limitation videos of the end of the riser, the riser kink, and the post-June 2 cut riser.

18. "Video Images" refers to frames or images of video used or modified by you or other members of the Plume Team to aid in your and/or their flow rate analysis.

19. "You" and "Your" refer to the University of California, Santa Barbara ("UCSB"), Ira Leifer and any employees, staff, assistants, research assistants, or colleagues, located at UCSB or elsewhere, who performed, assisted, reviewed, or otherwise contributed to the work described or referenced in Appendix 7 of the Preliminary Report or Appendix 6 of the Revised Report.

## DOCUMENTS REQUESTED

Any and all documents, data, and communications related to the acquisition, processing, and analysis of velocimetry information and data regarding the flow of hydrocarbons, including without limitation oil and gas, resulting from the DWH incident; any and all documents, data, and communications related to the development, production, and analysis of the reports; any and all documents, data, and communications related to the location and chain of custody of any and all velocimetry information and data generated from the effort to measure the flow of hydrocarbons resulting  from the DWH incident and/or to develop the reports; and any and all documents, data, and communications related to responses to any and all requests for proposals



("RFPs") that pertain to the use of any velocimetry technique used in flow rate analysis with respect to the DWH incident.  These requests shall include, without limitation:

1. Any and all documents, data, and/or communications received from or sent to BP or any agency of the U.S. government concerning your work for the FRTG, including without limitation videos in their *original, unaltered* format, computer-aided design drawings, tables, schematics, and illustrations, as well as information about the oil ratio, camera viewing angle, the geometry of the riser and the blowout preventer, and in situ conditions of the oil flow, such as pressure measurements, sea currents, flow temperature, and sea temperature.

2. Any and all documents, data, and/or communications, digital or otherwise, shared between you and other FRTG members, including research assistants and support staff.

3. Any and all documents, data, and/or communications received from or sent to third parties, including academics and experts not involved in the FRTG, regarding flow rate analysis done by you and/or others on the Plume Team.

4. Any and all documents, data, and/or communications received from or sent to the media regarding flow rate analysis and/or Plume Team work undertaken by you and/or any other Plume Team member.

5. Any and all documents, data, and/or communications used, developed, or created by you and/or others as part of flow rate analysis and/or Plume Team work, including videos and video images processed or modified by you and/or other Plume Team members.



6. Any and all documents, data, and/or communications used or relied upon to generate any figures, tables, graphics, or illustrations in the reports.

7. Any and all of the software, algorithms, or source codes and executables (if it was a compiled software and not using scripted language), including all of the input and initialization files for said codes, used and/or developed as part of your work and/or that of any members of the Plume Team to:

   a. Process the video images for the intensity analysis;

   b. Process the video images for the cross-correlation PIV;

   c. Process the video images for the feature tracking, including without limitation the hydrate tinged boils tracking;

   d. Calculate or estimate flow rate;

   e. Select the region in which velocity measurements were taken; and

   f. Develop your entrainment model and the assumptions used therein.

Include all procedures used, from the image processing to the signal processing. Include all versions of the software, algorithms, or source codes used, including without limitation the versions used to develop your work for the Preliminary Report and the Revised Report.  If the source code was modified, produce the specific versions used for your Preliminary Report analysis and Revised Report analysis as well as a complete, documented history of any changes to the code(s).

8. Any and all abstracts, information, articles, theories and/or hypotheses, whether digital or in hard copy and whether published or not, relied upon to develop or refine the aforementioned codes, as well as handwritten or digital notes regarding these

5



articles.  Include all publications by the source code authors in which these codes have previously been used.

9. All of the raw data, including velocity measurements obtained using the PIV and feature tracking methodologies, as well as documentation of the file format and contents and the exact procedures followed.

10. Any and all laboratory research notebooks, whether digital or in hard copy, used or maintained by you and/or the Plume Team for the duration of work on flow rate analysis, including without limitation:

   a. Backup history reflecting modifications of the files if a digital notebook was maintained; and

   b. Laboratory internal documents outlining the laboratory's policies and/or guidelines for proper use and maintenance of lab notebooks.

11. A list of any and all of the assumptions used in your work as well as support for those assumptions, including without limitation the assumptions used in your work reflected on pages 71-72 and 78 of the Revised Report.

12. Any and all data, files and documentation related to any prior or concurrent error analysis performed for evaluating the accuracy of your PIV and feature tracking codes.  Include images from the oil spill as well as any other artificial or benchmark images or experiments relied on, as well as documents describing this data and detailing how the data and/or images were generated or produced.

13. Any and all system software or programs necessary to read any files, data, or information from (1) through (12) above, or any codes, programs, or metadata used for translating the files from (1) through (12) above into usable form.



14. Any and all agreements related to flow rate analysis and/or the Plume Team's work between and/or among (a) you and UCSB, (b) you and the FRTG or any entity of the U.S. government, and (c) the FRTG or any entity of the U.S. government and UCSB.



AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Central District of California

IN RE:   OIL SPILL by the OIL RIG            )
         "DEEPWATER HORIZON"                 )
         in the GULF OF MEXICO               )   Civil Action No.   MDL 2179
         on APRIL 20, 2010                   )
                                             )   (If the action is pending in another district, state where:
                                             )        Eastern District of Louisiana            )

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   UNIVERSITY OF CALIFORNIA, SANTA BARBARA
      SANTA BARBARA, CA 93106

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

All information set out in the attached Exhibit A, in accordance with FRCP 45.

| Place: Nearby hotel, office, or location otherwise agreed to. | Date and Time: September 13, 2012 Time to be decided |
|---|---|

The deposition will be recorded by this method:  certified shorthand reporter duly authorized to administer oaths and audio-visual equipment including, but not limited to, interactive real-time transcription.

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

All documents and materials set out in the attached Exhibit A, in accordance with FRCP 45.  A custodian must appear and offer testimony, to be recorded stenographically, as to the authenticity of the documents described and set forth in Exhibit A and produced pursuant to the subpoena duces tecum and ad testificandum served concurrently herewith.

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _____

      *CLERK OF COURT*
                                    OR

      _____          _____
      *Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   BP Exploration &
Production Inc. and BP America Production Company _____, who issues or requests this subpoena, are:

Karen McCartan DeSantis, Kirkland & Ellis LLP, 655  Fifteenth Street NW, Washington, DC 20005
kdesantis@kirkland.com



AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  MDL 2179

### PROOF OF SERVICE
#### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                       *Server's signature*

                                                       _____
                                                       *Printed name and title*

                                                       _____
                                                       *Server's address*

Additional information regarding attempted service, etc:



AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).



**EXHIBIT A TO "SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION"**

DEFINITIONS

As used in the list of topics contained in this notice, the following terms (whether or not capitalized in the list of topics) are defined as set forth below:

1.  "Communication" means and includes any transmission or exchange of any information, whether orally or in writing, including without limitation any conversation or discussion by means of letter, note, memorandum, interoffice correspondence, telephone, electronic mail, telegraph, telex, telecopies, cable communicating data processors, or some other electronic or other medium.

2.  "Document" means and includes any printed, typewritten or handwritten matter of whatever character, including without limitation the original and each non-identical copy of each and any writing, memorandum, letter, e-mail, correspondence, telegram, note, minutes, contract, agreement, information, interoffice and intra-office communications, procedure, pamphlet, diary, record or note of telephone conversation, chart, schedule, entry, print representation, record, report, photograph, and any tangible item or thing of written, readable, graphic, audible, or visual material.

3.  "DWH" refers to the Deepwater Horizon rig and/or its appurtenances used in deepwater oil drilling in the Gulf of Mexico.

4.  "Flow Rate Analysis" means work done as any part of an effort to observe, measure, assess, or estimate the rate of flow or flow volume of hydrocarbons

DRAFT

resulting from the DWH incident through the use of velocimetry techniques, including without limitation PIV and feature tracking.

5. "FRTG" refers to the Flow Rate Technical Group, convened by National Incident Commander Admiral Thad Allen and led by Dr. Marcia McNutt.

6. "FRTG Report" means the report entitled "Assessment of Flow Rate Estimates for the Deepwater Horizon/Macondo Well Oil Spill," dated March 10, 2011, prepared by the FRTG.

7. "Incident" refers to the April 20, 2010 occurrence in the Gulf of Mexico in which the Deepwater Horizon vessel caught fire and sank.

8. "MC252" or "Macondo Well" refers to Mississippi Canyon Block 252, part of the Macondo Prospect in the Gulf of Mexico.

9. "Online Storage Site" means any Internet site where digital files, documents, or data can be stored, uploaded, backed up, or shared, including without limitation Dropbox, Wuala, or iCloud.

10. "PIV" means particle image velocimetry as the term is used in the Reports.

11. "Plume Team" refers to the Plume Calculation Team of the FRTG.

12. "Preliminary Report" means the report entitled "Estimated Leak Rates and Lost Oil from the Deepwater Horizon Spill, May 27, 2010," authored by the Plume Team.

13. "Reports" means the Preliminary Report and the Revised Report.

14. "Revised Report" means the report entitled "Deepwater Horizon Release Estimate of Rate by PIV," dated July 21, 2010, authored by the Plume Team.

15. "Usable Form" means a form that allows the data to be evaluated, manipulated, calculated, or further processed without the use of additional code, programming, or



metadata, and which includes any and all necessary glossaries, keys, and indices for interpretation of the material.

16. "Velocimetry Information and Data" means all measurements, calculations, images, estimates, figures, and results as either inputs or outputs from your flow rate analysis work.

17. "Video" refers to video used in flow rate analysis, including without limitation videos of the end of the riser, the riser kink, and the post-June 2 cut riser.

18. "Video Images" refers to frames or images of video used or modified by you or other members of the Plume Team to aid in your and/or their flow rate analysis.

19. "You" and "Your" refer to the University of California, Santa Barbara ("UCSB"), Ira Leifer and any employees, staff, assistants, research assistants, or colleagues, located at UCSB or elsewhere, who performed, assisted, reviewed, or otherwise contributed to the work described or referenced in Appendix 7 of the Preliminary Report or Appendix 6 of the Revised Report.

## SUBJECTS FOR TESTIMONY

1. Your and/or others' work for the United States and/or the FRTG and/or the Plume Team regarding the flow of hydrocarbons resulting from the DWH incident.

2. Your knowledge of and involvement in acquiring, processing, and/or analyzing data and/or video regarding the flow of hydrocarbons resulting from the DWH incident.

3. Your knowledge of the persons or entities acquiring, processing, and/or analyzing the flow of hydrocarbons resulting from the DWH incident.

4. Your analysis and conclusions regarding the flow of hydrocarbons resulting from the DWH incident.

3



5. Your knowledge of the analysis and conclusions of others regarding the flow of hydrocarbons resulting from the DWH incident.

6. Your and/or others' analysis of any video and/or video images processed, used, or relied upon to develop your flow rate analysis or Plume Team work.

7. Error and uncertainty analyses undertaken by you and/or others as part of Plume Team work and/or flow rate analysis.

8. Your and/or others' use and/or development of the software, algorithms, or source codes and executables used as part of work to:

    a. Process the video images for the intensity analysis;

    b. Process the video images for the cross-correlation PIV;

    c. Process the video images for the feature tracking, including without limitation the hydrate tinged boils tracking;

    d. Calculate or estimate flow rate;

    e. Select the region in which velocity measurements were taken; and

    f. Develop your entrainment model and the assumptions used therein.

9. Your and others' communications with any third parties, including academics and experts not involved in the FRTG, regarding work and/or analysis related to the flow of hydrocarbons resulting from the DWH incident.

10. Your and/or others' communications with the media regarding flow rate analysis or Plume Team work.

11. Your and/or others' communications with the United States, any United States employee, any national laboratory or any of its employees, or anyone affiliated or working with the



FRTG or the Plume Team regarding the flow of hydrocarbons resulting from the DWH incident.

12. Your receipt of financial or other compensation from any source for your role in analyzing the flow of hydrocarbons resulting from the DWH incident.



# Attachment D

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of Oklahoma

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO on APRIL 20, 2010 | ) ) ) ) ) | Civil Action No.   MDL 2179 |
| *Defendant* | ) ) | (If the action is pending in another district, state where: Eastern District of Louisiana            ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Kelkar & Associates, Inc.
     3528 East 104th Street, Tulsa, OK 74137

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Exhibit A

| Place:  GableGotwals, attn: Steven Barhols 100 W. Fifth Street Tulsa, OK  74103 | Date and Time: 07/02/2012 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  _____

| *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*    BP Production & Exploration, Inc. and BP America Production Company _____ , who issues or requests this subpoena, are:

Robert R. Gasaway, Kirkland & Ellis LLP, 655 Fifteenth Street, NW, Washington, DC 20005
rgasaway@kirkland.com
(202) 879-5000



AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   MDL 2179

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:



AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).



## EXHIBIT A TO "SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION"

### DEFINITIONS

As used in the list of topics contained in this notice, the following terms (whether or not capitalized in the list of topics) shall have the meaning as set forth below:

1. "United States" shall mean the United States of America, including its departments, agencies, and instrumentalities, any employees, agents or assigns of these departments, agencies, and instrumentalities.

2. "Flow Rate Technical Group" or "FRTG," shall mean the group established on May 19, 2010 by Admiral Thad Allen, National Incident Commander, for the purpose of estimating the rate of hydrocarbon flow from the MC252 Well.

3. "Model" means any analysis including computer software or any computer aided simulation used to estimate, analyze, calculate, or otherwise evaluate the performance of a hydrocarbon reservoir, any characteristics of a hydrocarbon reservoir, the size, shape, or placement of a hydrocarbon reservoir, flow rate of hydrocarbons or other substances from a hydrocarbon reservoir, pressure or pressure changes in a hydrocarbon reservoir, pressure within a hydrocarbon producing system, hydrocarbon reservoir depletion, and/or flow of oil or other substances through a well, pipe system, or other hydrocarbon production system. These include models created by computer modeling programs such as Eclipse, PETREL, GAP, VIP, OLGA, Pipesim, PIE, MBAL, Reveal, or Prosper.

4. "Document" means any record, communication, or memorialization of any kind on any medium, electronic or hardcopy, including printed, typewritten or handwritten matter of whatever character, including without limitation the original and each non-identical

K&E 18646111.5

 DRAFT

copy of each and any writing, memorandum, letter, e-mail, correspondence, telegram,

note, minutes, contract, agreement, interoffice and intra-office communications,

procedure, pamphlet, diary, record or note of telephone conversation, chart, schedule,

entry, print representation, record, report, photograph, and any tangible item or thing of

written, readable, graphic, audible, or visual material.

5. "Communication" shall mean and include any transmission or exchange of any

information, whether orally or in writing, including without limitation any conversation

or discussion by means of letter, note, memorandum, interoffice correspondence,

telephone, electronic mail, telegraph, telex, telecopies, cable communicating data

processors, or some other electronic or other medium.

6. "Usable form" means a form that allows the data to be evaluated, manipulated,

calculated, or further processed without the use of additional code, programming, or

metadata, and which includes any and all necessary glossaries, keys, and indices for

interpretation of the material.

7. "MC252" refers to Mississippi Canyon Block 252, also known as the Macondo

Prospect, in the Gulf of Mexico.

8. "Relating to" or "related to," when referring to any given subject matter, shall mean

any document that constitutes, comprises, involves, contains, embodies, reflects,

identifies, states, mentions, alludes to, refers directly or indirectly to, or is in any way

relevant to the particular subject matter identified.

9. "MC252 Well" shall mean the exploratory well that was being drilled by the

*Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the outer

6



continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

10. "MC252 Hydrocarbon Reservoir" shall mean the hydrocarbon bearing zones that were penetrated by the exploratory well that was being drilled by the *Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the outer continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

11. "Analog well" means a well considered by you or anyone within the Flow Rate Technical Group to be an analog to MC252, information about which was used by you or provided to you by the United States or anyone else.

12. "You" and "Your" refer to Kelkar and Associates, Inc., and any of its officers, employees, contractors, fellows, researchers, analysts, other assistants, and agents.

DOCUMENTS REQUESTED

1. Any and all documents, data, information and communications related to your work for the United States and/or the Flow Rate Technical Group on MC252. This request shall include, without limitation:

    a.  Any and all communications with the United States, any United States employee, any national laboratory or any of its employees, or anyone affiliated or working with the Flow Rate Technical Group related to MC252.

    b.  Any and all documents, data, information, and/or communications related to models of the MC252 hydrocarbon reservoir, models of any characteristic of the MC252 well, or models used to estimate the flow rate of hydrocarbons or other substances from the MC252 well, including without limitation the models themselves; documents, data, or information related to the inputs, outputs, or

K&E 18646111.5

 DRAFT

results of these models; black oil models; equation of state (EOS) models; and/or communications related to the inputs, outputs, or results of these models.

c. Any and all documents, data, information, and/or communications related to the characteristics of MC252, the MC252 hydrocarbon reservoir, or the MC252 well, including without limitation pressure, permeability, porosity, rock compressibility, viscosity of reservoir fluids, GOR of reservoir fluids, Pressure Volume Temperature ("PVT") properties, formation volume factor, initial reservoir pressure, water saturation, reservoir temperature, water drive, final reservoir pressure, productivity index, thickness of hydrocarbon bearing sands, skin, compressibility of reservoir fluids, saturation pressure, drainage area, amount of hydrocarbons initially in the reservoir, and the depletion of hydrocarbons and the effect on pressure.

d. Any and all documents, data, information, and/or communications related to reports, preliminary reports, and/or drafts of reports related to MC252, including without limitation:

   i. Any and all reports (preliminary or final), drafts of reports, or drafts of reports marked for correction related to MC252.

   ii. Any and all documents and/or communications regarding any basis for using or citing sources referenced in any report, preliminary report, and/or drafts of reports related to MC252.

   iii. Any and all documents, data, and/or communications used to calculate, support, review, compare, analyze, confirm, measure, or otherwise



evaluate any and all conclusions and determinations in any report, preliminary report, and/or drafts of reports related to MC252.

    iv.  Any and all communications regarding reports (final or preliminary), drafts of reports, or drafts of reports marked for correction related to MC252.

e.  Any and all communications amongst you and/or your employees, contractors, staff, or agents related to MC252.

f.  Any and all maps related to MC252.

g.  Any and all documents, data, information, and/or communications related to any calculations, estimations, or analysis of the MC252 hydrocarbon reservoir, flow of oil or other substances through the MC252 well, fluids discharged from the MC252 wellhead, fluids contained in the MC252 hydrocarbon reservoir, or any other aspect of MC252.

h.  Any and all documents, data, information, and/or communications related to pressure changes that occurred as oil or any other substance flowed through the MC252 Well.

2.  All documents referring or relating to the physical or chemical properties of oil or any other substance discharged from the wellhead of the MC252 Well.

3.  All documents referring or relating to predictions, estimates or measurements of the amounts of oil or any other substance discharged from the wellhead of the MC252 Well.

4.  Any and all documents, data, information, and/or communications referring or relating to the geometry of the MC252 Well (e.g., from the bottomhole to the wellhead) and any changes to the geometry of the MC252 Well from the time of the Incident until the

K&E 18646111.5



MC252 Well was shut-in; the geometry of the BOP/LMRP and any changes to the geometry of the BOP/LMRP from the time of the Incident until the MC252 Well was shut-in; and the geometry of the riser and any changes to the geometry of the riser before it was removed on June 3, 2010.

5. Any and all documents, including but not limited to any underlying data and communications by, among, or involving you, your employees, contractors, or agents and the United States, referring or relating to the flow path of hydrocarbons in the MC252 Well, the riser, and the BOP/LMRP, including but not limited to all documents referring or relating to the effect of changes in geometry of the MC252 Well, the riser, and the BOP/LMRP, and possible obstructions to the flow of hydrocarbons in the bottomhole, the wellbore, the riser, and the BOP/LMRP.

6. Any and all documents or communications referring or relating to hypotheses or judgments made about any reservoir pressure changes, including any such pressure changes resulting from well draw-down or well skin.

7. Any and all data related to MC252 provided to you by the United States, including without limitation bottomhole pressure transient data, the wellbore schematic listing all critical dimensions and depths, flow assurance, wax, and asphaltene analyses, geochemical analysis, mud log and CMR analysis, and raw log data.

8. Any and all data provided to you by the United States relating to any well that was considered to be an analog well by the Flow Rate Technical Group, including without limitation bottomhole pressure transient data, the wellbore schematic listing all critical dimensions and depths, flow assurance, wax, and asphaltene analyses, geochemical analysis, mud log and CMR analysis and raw log data.

K&E 18646111.5



9. Any and all documents related to any efforts to determine the volume of oil spilled or the flow rate of oil spilled from the MC252 Well, including but not limited to calculations of volumes of oil spilled and the flow rate at which oil was spilled from the MC252 Well.



AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Oklahoma

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG<br>"DEEPWATER HORIZON" in the<br>GULF OF MEXICO on APRIL 20, 2010 | )<br>)<br>)<br>)<br>)<br>) |

Civil Action No.   MDL 2179

(If the action is pending in another district, state where:
Eastern District of Louisiana            )

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Kelkar & Associates, Inc.
 3528 East 104th Street, Tulsa, OK 74137

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Exhibit A

| Place: GableGotwals, attn: Steven Barhols<br> 100 W. Fifth Street<br> Tulsa, OK  74103 | Date and Time:<br><br> 08/15/2012 8:30 am |
|---|---|

The deposition will be recorded by this method:   Stenographic and Audio-Visual

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  _____

*CLERK OF COURT*

OR

_____        _____
 *Signature of Clerk or Deputy Clerk*                              *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*      BP Production &
Exploration, Inc. and BP America Production Company      , who issues or requests this subpoena, are:
Robert R. Gasaway, Kirkland & Ellis LLP, 655 Fifteenth Street, NW, Washington, DC 20005
rgasaway@kirkland.com
(202) 879-5000



AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  MDL 2179

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                      *Server's signature*

                                           _____
                                                      *Printed name and title*

                                           _____
                                                      *Server's address*

Additional information regarding attempted service, etc:



AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).



## **EXHIBIT A TO "SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION"**

### DEFINITIONS

As used in the list of topics contained in this notice, the following terms (whether or not capitalized in the list of topics) shall have the meaning as set forth below:

1. "United States" shall mean the United States of America, including its departments, agencies, and instrumentalities, any employees, agents or assigns of these departments, agencies, and instrumentalities.

2. "Flow Rate Technical Group" or "FRTG," shall mean the group established on May 19, 2010 by Admiral Thad Allen, National Incident Commander, for the purpose of estimating the rate of hydrocarbon flow from the MC252 Well.

3. "Model" means any analysis including computer software or any computer aided simulation used to estimate, analyze, calculate, or otherwise evaluate the performance of a hydrocarbon reservoir, any characteristics of a hydrocarbon reservoir, the size, shape, or placement of a hydrocarbon reservoir, flow rate of hydrocarbons or other substances from a hydrocarbon reservoir, pressure or pressure changes in a hydrocarbon reservoir, pressure within a hydrocarbon producing system, hydrocarbon reservoir depletion, and/or flow of oil or other substances through a well, pipe system, or other hydrocarbon production system. These include models created by computer modeling programs such as Eclipse, PETREL, GAP, VIP, OLGA, Pipesim, PIE, MBAL, Reveal, or Prosper.

4. "Document" means any record, communication, or memorialization of any kind on any medium, electronic or hardcopy, including printed, typewritten or handwritten matter of whatever character, including without limitation the original and each non-identical

13

 DRAFT

copy of each and any writing, memorandum, letter, e-mail, correspondence, telegram, note, minutes, contract, agreement, interoffice and intra-office communications, procedure, pamphlet, diary, record or note of telephone conversation, chart, schedule, entry, print representation, record, report, photograph, and any tangible item or thing of written, readable, graphic, audible, or visual material.

5. "Communication" shall mean and include any transmission or exchange of any information, whether orally or in writing, including without limitation any conversation or discussion by means of letter, note, memorandum, interoffice correspondence, telephone, electronic mail, telegraph, telex, telecopies, cable communicating data processors, or some other electronic or other medium.

6. "Usable form" means a form that allows the data to be evaluated, manipulated, calculated, or further processed without the use of additional code, programming, or metadata, and which includes any and all necessary glossaries, keys, and indices for interpretation of the material.

7. "MC252" refers to Mississippi Canyon Block 252, also known as the Macondo Prospect, in the Gulf of Mexico.

8. "Relating to" or "related to," when referring to any given subject matter, shall mean any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

9. "MC252 Well" shall mean the exploratory well that was being drilled by the *Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the outer

K&E 18646111.5



continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

10. "MC252 Hydrocarbon Reservoir" shall mean the hydrocarbon bearing zones that were penetrated by the exploratory well that was being drilled by the *Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the outer continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

11. "Analog well" means a well considered by you or anyone within the Flow Rate Technical Group to be an analog to MC252, information about which was used by you or provided to you by the United States or anyone else.

12. "You" and "Your" refer to Kelkar and Associates, Inc., and any of its officers, employees, contractors, fellows, researchers, analysts, other assistants, and agents.

<u>SUBJECTS FOR TESTIMONY</u>

1. Your work for the United States and/or the Flow Rate Technical Group regarding MC252.

2. Your knowledge of and involvement in acquiring, processing, and/or analyzing data regarding the flow of hydrocarbons from the MC252 Well.

3. Your knowledge of the persons or entities acquiring, processing, and/or analyzing the flow of hydrocarbons from the MC252 Well.

4. Your analysis and conclusions regarding the flow of hydrocarbons from the MC252 Well.

5. Your analysis of the chemical composition, viscosity, compressibility, formation volume factor, gas/oil ratio ("GOR"), saturation pressure, and density of the fluid in, or discharged from, the MC252 Hydrocarbon Reservoir.

K&E 18646111.5



6. Your analysis of the geophysical, geological, and petrophysical properties of the MC252 Hydrocarbon Reservoir.

7. Your analysis of the pressure of the MC252 Well, including the pressure in the MC252 Hydrocarbon Reservoir, the pressure in the wellbore, the pressure at the wellhead, the pressure in the blowout preventer, and the pressure in the capping stack.

8. Your analysis of the flow path of hydrocarbons discharged from the MC252 Well.

9. Any well that you considered, or were asked to consider, as an analog well to the MC252 Well, including the reasons why it was considered an analog well and the purposes for which that analog was used.

10. Your communications with the United States, any United States employee, any national laboratory or any of its employees, or anyone affiliated or working with the Flow Rate Technical Group related to MC252.

11. Your receipt of financial or other compensation from any source for your role in acquiring, processing, and/or analyzing the flow of hydrocarbons from the MC252 Well.



Attachment E

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

IN RE: OIL SPILL by the OIL RIG   )
"DEEPWATER HORIZON" in the   )
GULF OF MEXICO on APRIL 20, 2010   )  Civil Action No.   MDL 2179
  )
  )  (If the action is pending in another district, state where:
  )   Eastern District of Louisiana   )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Gemini Solutions Inc.
  702 Morton Street, Richmond, TX 77469

 ☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following
documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the
material: See Exhibit A

| Place: Liskow & Lewis, attn: Don Haycraft<br>1001 Fannin Street, Suite 1800<br>Houston, TX 77002 | Date and Time:<br><br>07/02/2012 5:00 pm |
|---|---|

  ❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or
other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party
may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

  The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule
45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are
attached.

Date:  _____

    *CLERK OF COURT*
           OR

  _____    _____
    *Signature of Clerk or Deputy Clerk*       *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   BP Production &
Exploration, Inc. and BP America Production Company _____ , who issues or requests this subpoena, are:

  Robert R. Gasaway, Kirkland & Ellis LLP, 655 Fifteenth Street, NW, Washington, DC 20005
  rgasaway@kirkland.com
  (202) 879-5000



AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   MDL 2179

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____                        _____
                                                        *Server's signature*

                                               _____
                                                        *Printed name and title*

                                               _____
                                                        *Server's address*

Additional information regarding attempted service, etc:



AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).



## EXHIBIT A TO "SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION"

### DEFINITIONS

As used in the list of topics contained in this notice, the following terms (whether or not capitalized in the list of topics) shall have the meaning as set forth below:

1. "United States" shall mean the United States of America, including its departments, agencies, and instrumentalities, any employees, agents or assigns of these departments, agencies, and instrumentalities.

2. "Flow Rate Technical Group" or "FRTG," shall mean the group established on May 19, 2010 by Admiral Thad Allen, National Incident Commander, for the purpose of estimating the rate of hydrocarbon flow from the MC252 Well.

3. "Model" means any analysis including computer software or any computer aided simulation used to estimate, analyze, calculate, or otherwise evaluate the performance of a hydrocarbon reservoir, any characteristics of a hydrocarbon reservoir, the size, shape, or placement of a hydrocarbon reservoir, flow rate of hydrocarbons or other substances from a hydrocarbon reservoir, pressure or pressure changes in a hydrocarbon reservoir, pressure within a hydrocarbon producing system, hydrocarbon reservoir depletion, and/or flow of oil or other substances through a well, pipe system, or other hydrocarbon production system. These include models created by computer modeling programs such as Eclipse, PETREL, GAP, VIP, OLGA, Pipesim, PIE, MBAL, Reveal, or Prosper.

4. "Document" means any record, communication, or memorialization of any kind on any medium, electronic or hardcopy, including printed, typewritten or handwritten matter of whatever character, including without limitation the original and each non-identical

K&E 18646111.5



copy of each and any writing, memorandum, letter, e-mail, correspondence, telegram, note, minutes, contract, agreement, interoffice and intra-office communications, procedure, pamphlet, diary, record or note of telephone conversation, chart, schedule, entry, print representation, record, report, photograph, and any tangible item or thing of written, readable, graphic, audible, or visual material.

5. "Communication" shall mean and include any transmission or exchange of any information, whether orally or in writing, including without limitation any conversation or discussion by means of letter, note, memorandum, interoffice correspondence, telephone, electronic mail, telegraph, telex, telecopies, cable communicating data processors, or some other electronic or other medium.

6. "Usable form" means a form that allows the data to be evaluated, manipulated, calculated, or further processed without the use of additional code, programming, or metadata, and which includes any and all necessary glossaries, keys, and indices for interpretation of the material.

7. "MC252" refers to Mississippi Canyon Block 252, also known as the Macondo Prospect, in the Gulf of Mexico.

8. "Relating to" or "related to," when referring to any given subject matter, shall mean any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

9. "MC252 Well" shall mean the exploratory well that was being drilled by the *Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the outer

K&E 18646111.5



continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

10. "MC252 Hydrocarbon Reservoir" shall mean the hydrocarbon bearing zones that were penetrated by the exploratory well that was being drilled by the *Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the outer continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

11. "Analog well" means a well considered by you or anyone within the Flow Rate Technical Group to be an analog to MC252, information about which was used by you or provided to you by the United States or anyone else.

12. "You" and "Your" refer to Gemini Solutions Inc. and any of its officers, employees, contractors, fellows, researchers, analysts, other assistants, and agents.

## DOCUMENTS REQUESTED

1. Any and all documents, data, information and communications related to your work for the United States and/or the Flow Rate Technical Group on MC252. This request shall include, without limitation:

   a. Any and all communications with the United States, any United States employee, any national laboratory or any of its employees, or anyone affiliated or working with the Flow Rate Technical Group related to MC252.

   b. Any and all documents, data, information, and/or communications related to models of the MC252 hydrocarbon reservoir, models of any characteristic of the MC252 well, or models used to estimate the flow rate of hydrocarbons or other substances from the MC252 well, including without limitation the models themselves; documents, data, or information related to the inputs, outputs, or

7



results of these models; black oil models; equation of state (EOS) models; and/or communications related to the inputs, outputs, or results of these models.

c.  Any and all documents, data, information, and/or communications related to the characteristics of MC252, the MC252 hydrocarbon reservoir, or the MC252 well, including without limitation pressure, permeability, porosity, rock compressibility, viscosity of reservoir fluids, GOR of reservoir fluids, Pressure Volume Temperature ("PVT") properties, formation volume factor, initial reservoir pressure, water saturation, reservoir temperature, water drive, final reservoir pressure, productivity index, thickness of hydrocarbon bearing sands, skin, compressibility of reservoir fluids, saturation pressure, drainage area, amount of hydrocarbons initially in the reservoir, and the depletion of hydrocarbons and the effect on pressure.

d.  Any and all documents, data, information, and/or communications related to reports, preliminary reports, and/or drafts of reports related to MC252, including without limitation:

   i.   Any and all reports (preliminary or final), drafts of reports, or drafts of reports marked for correction related to MC252.

   ii.  Any and all documents and/or communications regarding any basis for using or citing sources referenced in any report, preliminary report, and/or drafts of reports related to MC252.

   iii. Any and all documents, data, and/or communications used to calculate, support, review, compare, analyze, confirm, measure, or otherwise

8



evaluate any and all conclusions and determinations in any report, preliminary report, and/or drafts of reports related to MC252.

   iv.   Any and all communications regarding reports (final or preliminary), drafts of reports, or drafts of reports marked for correction related to MC252.

e.   Any and all communications amongst you and/or your employees, contractors, staff, or agents related to MC252.

f.   Any and all maps related to MC252.

g.   Any and all documents, data, information, and/or communications related to any calculations, estimations, or analysis of the MC252 hydrocarbon reservoir, flow of oil or other substances through the MC252 well, fluids discharged from the MC252 wellhead, fluids contained in the MC252 hydrocarbon reservoir, or any other aspect of MC252.

h.   Any and all documents, data, information, and/or communications related to pressure changes that occurred as oil or any other substance flowed through the MC252 Well.

2.   All documents referring or relating to the physical or chemical properties of oil or any other substance discharged from the wellhead of the MC252 Well.

3.   All documents referring or relating to predictions, estimates or measurements of the amounts of oil or any other substance discharged from the wellhead of the MC252 Well.

4.   Any and all documents, data, information, and/or communications referring or relating to the geometry of the MC252 Well (e.g., from the bottomhole to the wellhead) and any changes to the geometry of the MC252 Well from the time of the Incident until the



MC252 Well was shut-in; the geometry of the BOP/LMRP and any changes to the geometry of the BOP/LMRP from the time of the Incident until the MC252 Well was shut-in; and the geometry of the riser and any changes to the geometry of the riser before it was removed on June 3, 2010.

5. Any and all documents, including but not limited to any underlying data and communications by, among, or involving you, your employees, contractors, or agents and the United States, referring or relating to the flow path of hydrocarbons in the MC252 Well, the riser, and the BOP/LMRP, including but not limited to all documents referring or relating to the effect of changes in geometry of the MC252 Well, the riser, and the BOP/LMRP, and possible obstructions to the flow of hydrocarbons in the bottomhole, the wellbore, the riser, and the BOP/LMRP.

6. Any and all documents or communications referring or relating to hypotheses or judgments made about any reservoir pressure changes, including any such pressure changes resulting from well draw-down or well skin.

7. Any and all data related to MC252 provided to you by the United States, including without limitation bottomhole pressure transient data, the wellbore schematic listing all critical dimensions and depths, flow assurance, wax, and asphaltene analyses, geochemical analysis, mud log and CMR analysis, and raw log data.

8. Any and all data provided to you by the United States relating to any well that was considered to be an analog well by the Flow Rate Technical Group, including without limitation bottomhole pressure transient data, the wellbore schematic listing all critical dimensions and depths, flow assurance, wax, and asphaltene analyses, geochemical analysis, mud log and CMR analysis and raw log data.

K&E 18646111.5



9. Any and all documents related to any efforts to determine the volume of oil spilled or the flow rate of oil spilled from the MC252 Well, including but not limited to calculations of volumes of oil spilled and the flow rate at which oil was spilled from the MC252 Well.



K&E 18646111.5

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

IN RE: OIL SPILL by the OIL RIG )
"DEEPWATER HORIZON" in the )
GULF OF MEXICO on APRIL 20, 2010 )      Civil Action No.   MDL 2179
)
)      (If the action is pending in another district, state where:
)           Eastern District of Louisiana          )

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Gemini Solutions Inc.
     702 Morton Street, Richmond, TX 77469

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Exhibit A

| Place: Liskow & Lewis, attn: Don Haycraft<br>1001 Fannin Street, Suite 1800<br>Houston, TX 77002 | Date and Time:<br><br>08/13/2012 8:30 am |
|---|---|

The deposition will be recorded by this method:  __Stenographic and Audio-Visual__

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _____

         *CLERK OF COURT*

                                            OR

_____          _____
  *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*     __BP Production &__
__Exploration, Inc. and BP America Production Company_____ , who issues or requests this subpoena, are:
Robert R. Gasaway, Kirkland & Ellis LLP, 655 Fifteenth Street, NW, Washington, DC 20005
rgasaway@kirkland.com
(202) 879-5000



AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   MDL 2179

# PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                                                *Server's signature*

                                                 _____
                                                                *Printed name and title*


                                                 _____
                                                                *Server's address*

Additional information regarding attempted service, etc:



AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).



**EXHIBIT A TO "SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION"**

<u>DEFINITIONS</u>

As used in the list of topics contained in this notice, the following terms (whether or not capitalized in the list of topics) shall have the meaning as set forth below:

1. "United States" shall mean the United States of America, including its departments, agencies, and instrumentalities, any employees, agents or assigns of these departments, agencies, and instrumentalities.

2. "Flow Rate Technical Group" or "FRTG," shall mean the group established on May 19, 2010 by Admiral Thad Allen, National Incident Commander, for the purpose of estimating the rate of hydrocarbon flow from the MC252 Well.

3. "Model" means any analysis including computer software or any computer aided simulation used to estimate, analyze, calculate, or otherwise evaluate the performance of a hydrocarbon reservoir, any characteristics of a hydrocarbon reservoir, the size, shape, or placement of a hydrocarbon reservoir, flow rate of hydrocarbons or other substances from a hydrocarbon reservoir, pressure or pressure changes in a hydrocarbon reservoir, pressure within a hydrocarbon producing system, hydrocarbon reservoir depletion, and/or flow of oil or other substances through a well, pipe system, or other hydrocarbon production system. These include models created by computer modeling programs such as Eclipse, PETREL, GAP, VIP, OLGA, Pipesim, PIE, MBAL, Reveal, or Prosper.

4. "Document" means any record, communication, or memorialization of any kind on any medium, electronic or hardcopy, including printed, typewritten or handwritten matter of whatever character, including without limitation the original and each non-identical

K&E 18646111.5



copy of each and any writing, memorandum, letter, e-mail, correspondence, telegram,

note, minutes, contract, agreement, interoffice and intra-office communications,

procedure, pamphlet, diary, record or note of telephone conversation, chart, schedule,

entry, print representation, record, report, photograph, and any tangible item or thing of

written, readable, graphic, audible, or visual material.

5. "Communication" shall mean and include any transmission or exchange of any

information, whether orally or in writing, including without limitation any conversation

or discussion by means of letter, note, memorandum, interoffice correspondence,

telephone, electronic mail, telegraph, telex, telecopies, cable communicating data

processors, or some other electronic or other medium.

6. "Usable form" means a form that allows the data to be evaluated, manipulated,

calculated, or further processed without the use of additional code, programming, or

metadata, and which includes any and all necessary glossaries, keys, and indices for

interpretation of the material.

7. "MC252" refers to Mississippi Canyon Block 252, also known as the Macondo

Prospect, in the Gulf of Mexico.

8. "Relating to" or "related to," when referring to any given subject matter, shall mean

any document that constitutes, comprises, involves, contains, embodies, reflects,

identifies, states, mentions, alludes to, refers directly or indirectly to, or is in any way

relevant to the particular subject matter identified.

9. "MC252 Well" shall mean the exploratory well that was being drilled by the

*Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the outer

K&E 18646111.5



continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

10. "MC252 Hydrocarbon Reservoir" shall mean the hydrocarbon bearing zones that were penetrated by the exploratory well that was being drilled by the *Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the outer continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

11. "Analog well" means a well considered by you or anyone within the Flow Rate Technical Group to be an analog to MC252, information about which was used by you or provided to you by the United States or anyone else.

12. "You" and "Your" refer to Gemini Solutions Inc. and any of its officers, employees, contractors, fellows, researchers, analysts, other assistants, and agents.

<u>SUBJECTS FOR TESTIMONY</u>

1. Your work for the United States and/or the Flow Rate Technical Group regarding MC252.

2. Your knowledge of and involvement in acquiring, processing, and/or analyzing data regarding the flow of hydrocarbons from the MC252 Well.

3. Your knowledge of the persons or entities acquiring, processing, and/or analyzing the flow of hydrocarbons from the MC252 Well.

4. Your analysis and conclusions regarding the flow of hydrocarbons from the MC252 Well.

5. Your analysis of the chemical composition, viscosity, compressibility, formation volume factor, gas/oil ratio ("GOR"), saturation pressure, and density of the fluid in, or discharged from, the MC252 Hydrocarbon Reservoir.



K&E 18646111.5

6. Your analysis of the geophysical, geological, and petrophysical properties of the MC252 Hydrocarbon Reservoir.

7. Your analysis of the pressure of the MC252 Well, including the pressure in the MC252 Hydrocarbon Reservoir, the pressure in the wellbore, the pressure at the wellhead, the pressure in the blowout preventer, and the pressure in the capping stack.

8. Your analysis of the flow path of hydrocarbons discharged from the MC252 Well.

9. Any well that you considered, or were asked to consider, as an analog well to the MC252 Well, including the reasons why it was considered an analog well and the purposes for which that analog was used.

10. Your communications with the United States, any United States employee, any national laboratory or any of its employees, or anyone affiliated or working with the Flow Rate Technical Group related to MC252.

11. Your receipt of financial or other compensation from any source for your role in acquiring, processing, and/or analyzing the flow of hydrocarbons from the MC252 Well.



K&E 18646111.5

# Attachment F

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Louisiana

IN RE: OIL SPILL by the OIL RIG       )
"DEEPWATER HORIZON" in the        )
GULF OF MEXICO on APRIL 20, 2010   )    Civil Action No.   MDL 2179
                                )
                                )    (If the action is pending in another district, state where:
                                )                         )

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  R.G. Hughes and Associates, L.L.C.
     5541 Duncan Kenner Drive, Baton Rouge, LA 70820

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Exhibit A

| Place: Liskow & Lewis, attn: Don Haycraft 701 Poydras Street, Suite 5000 New Orleans, LA 70139 | Date and Time: 07/02/2012 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

     The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _____

     *CLERK OF COURT*
                                 OR

_____       _____
   *Signature of Clerk or Deputy Clerk*                 *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*    **BP Production &**
**Exploration, Inc. and BP America Production Company** _____ , who issues or requests this subpoena, are:

  Robert R. Gasaway, Kirkland & Ellis LLP, 655 Fifteenth Street, NW, Washington, DC 20005
  rgasaway@kirkland.com
  (202) 879-5000



AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   MDL 2179

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                                    *Server's signature*

                                              _____
                                                    *Printed name and title*

                                              _____
                                                    *Server's address*

Additional information regarding attempted service, etc:



## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).



### EXHIBIT A TO "SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION"

### DEFINITIONS

As used in the list of topics contained in this notice, the following terms (whether or not capitalized in the list of topics) shall have the meaning as set forth below:

1. "United States" shall mean the United States of America, including its departments, agencies, and instrumentalities, any employees, agents or assigns of these departments, agencies, and instrumentalities.

2. "Flow Rate Technical Group" or "FRTG," shall mean the group established on May 19, 2010 by Admiral Thad Allen, National Incident Commander, for the purpose of estimating the rate of hydrocarbon flow from the MC252 Well.

3. "Model" means any analysis including computer software or any computer aided simulation used to estimate, analyze, calculate, or otherwise evaluate the performance of a hydrocarbon reservoir, any characteristics of a hydrocarbon reservoir, the size, shape, or placement of a hydrocarbon reservoir, flow rate of hydrocarbons or other substances from a hydrocarbon reservoir, pressure or pressure changes in a hydrocarbon reservoir, pressure within a hydrocarbon producing system, hydrocarbon reservoir depletion, and/or flow of oil or other substances through a well, pipe system, or other hydrocarbon production system. These include models created by computer modeling programs such as Eclipse, PETREL, GAP, VIP, OLGA, Pipesim, PIE, MBAL, Reveal, or Prosper.

4. "Document" means any record, communication, or memorialization of any kind on any medium, electronic or hardcopy, including printed, typewritten or handwritten matter of whatever character, including without limitation the original and each non-identical



copy of each and any writing, memorandum, letter, e-mail, correspondence, telegram, note, minutes, contract, agreement, interoffice and intra-office communications, procedure, pamphlet, diary, record or note of telephone conversation, chart, schedule, entry, print representation, record, report, photograph, and any tangible item or thing of written, readable, graphic, audible, or visual material.

5. "Communication" shall mean and include any transmission or exchange of any information, whether orally or in writing, including without limitation any conversation or discussion by means of letter, note, memorandum, interoffice correspondence, telephone, electronic mail, telegraph, telex, telecopies, cable communicating data processors, or some other electronic or other medium.

6. "Usable form" means a form that allows the data to be evaluated, manipulated, calculated, or further processed without the use of additional code, programming, or metadata, and which includes any and all necessary glossaries, keys, and indices for interpretation of the material.

7. "MC252" refers to Mississippi Canyon Block 252, also known as the Macondo Prospect, in the Gulf of Mexico.

8. "Relating to" or "related to," when referring to any given subject matter, shall mean any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

9. "MC252 Well" shall mean the exploratory well that was being drilled by the *Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the outer

K&E 18646111.5



continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

10. "MC252 Hydrocarbon Reservoir" shall mean the hydrocarbon bearing zones that were penetrated by the exploratory well that was being drilled by the *Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the outer continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

11. "Analog well" means a well considered by you or anyone within the Flow Rate Technical Group to be an analog to MC252, information about which was used by you or provided to you by the United States or anyone else.

12. "You" and "Your" refer to R.G. Hughes and Associates, L.L.C., and any of its officers, employees, contractors, fellows, researchers, analysts, other assistants, and agents.

<u>DOCUMENTS REQUESTED</u>

1. Any and all documents, data, information and communications related to your work for the United States and/or the Flow Rate Technical Group on MC252. This request shall include, without limitation:

    a. Any and all communications with the United States, any United States employee, any national laboratory or any of its employees, or anyone affiliated or working with the Flow Rate Technical Group related to MC252.

    b. Any and all documents, data, information, and/or communications related to models of the MC252 hydrocarbon reservoir, models of any characteristic of the MC252 well, or models used to estimate the flow rate of hydrocarbons or other substances from the MC252 well, including without limitation the models

7



themselves; documents, data, or information related to the inputs, outputs, or results of these models; black oil models; equation of state (EOS) models; and/or communications related to the inputs, outputs, or results of these models.

c.  Any and all documents, data, information, and/or communications related to the characteristics of MC252, the MC252 hydrocarbon reservoir, or the MC252 well, including without limitation pressure, permeability, porosity, rock compressibility, viscosity of reservoir fluids, GOR of reservoir fluids, Pressure Volume Temperature ("PVT") properties, formation volume factor, initial reservoir pressure, water saturation, reservoir temperature, water drive, final reservoir pressure, productivity index, thickness of hydrocarbon bearing sands, skin, compressibility of reservoir fluids, saturation pressure, drainage area, amount of hydrocarbons initially in the reservoir, and the depletion of hydrocarbons and the effect on pressure.

d.  Any and all documents, data, information, and/or communications related to reports, preliminary reports, and/or drafts of reports related to MC252, including without limitation:

    i.   Any and all reports (preliminary or final), drafts of reports, or drafts of reports marked for correction related to MC252.

    ii.  Any and all documents and/or communications regarding any basis for using or citing sources referenced in any report, preliminary report, and/or drafts of reports related to MC252.

    iii. Any and all documents, data, and/or communications used to calculate, support, review, compare, analyze, confirm, measure, or otherwise



8

evaluate any and all conclusions and determinations in any report, preliminary report, and/or drafts of reports related to MC252.

    iv.  Any and all communications regarding reports (final or preliminary), drafts of reports, or drafts of reports marked for correction related to MC252.

  e.  Any and all communications amongst you and/or your employees, contractors, staff, or agents related to MC252.

  f.  Any and all maps related to MC252.

  g.  Any and all documents, data, information, and/or communications related to any calculations, estimations, or analysis of the MC252 hydrocarbon reservoir, flow of oil or other substances through the MC252 well, fluids discharged from the MC252 wellhead, fluids contained in the MC252 hydrocarbon reservoir, or any other aspect of MC252.

  h.  Any and all documents, data, information, and/or communications related to pressure changes that occurred as oil or any other substance flowed through the MC252 Well.

2.  All documents referring or relating to the physical or chemical properties of oil or any other substance discharged from the wellhead of the MC252 Well.

3.  All documents referring or relating to predictions, estimates or measurements of the amounts of oil or any other substance discharged from the wellhead of the MC252 Well.

4.  Any and all documents, data, information, and/or communications referring or relating to the geometry of the MC252 Well (e.g., from the bottomhole to the wellhead) and any changes to the geometry of the MC252 Well from the time of the Incident until the



K&E 18646111.5

MC252 Well was shut-in; the geometry of the BOP/LMRP and any changes to the geometry of the BOP/LMRP from the time of the Incident until the MC252 Well was shut-in; and the geometry of the riser and any changes to the geometry of the riser before it was removed on June 3, 2010.

5. Any and all documents, including but not limited to any underlying data and communications by, among, or involving you, your employees, contractors, or agents and the United States, referring or relating to the flow path of hydrocarbons in the MC252 Well, the riser, and the BOP/LMRP, including but not limited to all documents referring or relating to the effect of changes in geometry of the MC252 Well, the riser, and the BOP/LMRP, and possible obstructions to the flow of hydrocarbons in the bottomhole, the wellbore, the riser, and the BOP/LMRP.

6. Any and all documents or communications referring or relating to hypotheses or judgments made about any reservoir pressure changes, including any such pressure changes resulting from well draw-down or well skin.

7. Any and all data related to MC252 provided to you by the United States, including without limitation bottomhole pressure transient data, the wellbore schematic listing all critical dimensions and depths, flow assurance, wax, and asphaltene analyses, geochemical analysis, mud log and CMR analysis, and raw log data.

8. Any and all data provided to you by the United States relating to any well that was considered to be an analog well by the Flow Rate Technical Group, including without limitation bottomhole pressure transient data, the wellbore schematic listing all critical dimensions and depths, flow assurance, wax, and asphaltene analyses, geochemical analysis, mud log and CMR analysis and raw log data.

10



9. Any and all documents related to any efforts to determine the volume of oil spilled or the flow rate of oil spilled from the MC252 Well, including but not limited to calculations of volumes of oil spilled and the flow rate at which oil was spilled from the MC252 Well.



K&E 18646111.5

AO 88A  (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Louisiana

IN RE: OIL SPILL by the OIL RIG                    )
"DEEPWATER HORIZON" in the                         )
GULF OF MEXICO on APRIL 20, 2010                   )        Civil Action No.   MDL 2179
                                                   )
                                                   )        (If the action is pending in another district, state where:
                                                   )                                                                )

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  R.G. Hughes and Associates, L.L.C.
     5541 Duncan Kenner Drive, Baton Rouge, LA 70820

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a
deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate
one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf
about the following matters, or those set forth in an attachment:

See Exhibit A

| Place: Liskow & Lewis, attn: Don Haycraft<br>701 Poydras Street, Suite 5000<br>New Orleans, LA 70139 | Date and Time:<br><br>08/14/2012 8:30 am |
|---|---|

The deposition will be recorded by this method:   Stenographic and Audio-Visual

❏ *Production:* You, or your representatives, must also bring with you to the deposition the following documents,
electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the
material:

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule
45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are
attached.

Date:  _____

        *CLERK OF COURT*
                                              OR

    _____          _____
    *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*      BP Production &
Exploration, Inc. and BP America Production Company      , who issues or requests this subpoena, are:
Robert R. Gasaway, Kirkland & Ellis LLP, 655 Fifteenth Street, NW, Washington, DC 20005
rgasaway@kirkland.com
(202) 879-5000



AO 88A  (Rev.  06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  MDL 2179

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named individual as follows:   _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because:   _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:



## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).



## EXHIBIT A TO "SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION"

### DEFINITIONS

As used in the list of topics contained in this notice, the following terms (whether or not capitalized in the list of topics) shall have the meaning as set forth below:

1. "United States" shall mean the United States of America, including its departments, agencies, and instrumentalities, any employees, agents or assigns of these departments, agencies, and instrumentalities.

2. "Flow Rate Technical Group" or "FRTG," shall mean the group established on May 19, 2010 by Admiral Thad Allen, National Incident Commander, for the purpose of estimating the rate of hydrocarbon flow from the MC252 Well.

3. "Model" means any analysis including computer software or any computer aided simulation used to estimate, analyze, calculate, or otherwise evaluate the performance of a hydrocarbon reservoir, any characteristics of a hydrocarbon reservoir, the size, shape, or placement of a hydrocarbon reservoir, flow rate of hydrocarbons or other substances from a hydrocarbon reservoir, pressure or pressure changes in a hydrocarbon reservoir, pressure within a hydrocarbon producing system, hydrocarbon reservoir depletion, and/or flow of oil or other substances through a well, pipe system, or other hydrocarbon production system. These include models created by computer modeling programs such as Eclipse, PETREL, GAP, VIP, OLGA, Pipesim, PIE, MBAL, Reveal, or Prosper.

4. "Document" means any record, communication, or memorialization of any kind on any medium, electronic or hardcopy, including printed, typewritten or handwritten matter of whatever character, including without limitation the original and each non-identical copy of each and any writing, memorandum, letter, e-mail, correspondence, telegram,

13



note, minutes, contract, agreement, interoffice and intra-office communications, procedure, pamphlet, diary, record or note of telephone conversation, chart, schedule, entry, print representation, record, report, photograph, and any tangible item or thing of written, readable, graphic, audible, or visual material.

5. "Communication" shall mean and include any transmission or exchange of any information, whether orally or in writing, including without limitation any conversation or discussion by means of letter, note, memorandum, interoffice correspondence, telephone, electronic mail, telegraph, telex, telecopies, cable communicating data processors, or some other electronic or other medium.

6. "Usable form" means a form that allows the data to be evaluated, manipulated, calculated, or further processed without the use of additional code, programming, or metadata, and which includes any and all necessary glossaries, keys, and indices for interpretation of the material.

7. "MC252" refers to Mississippi Canyon Block 252, also known as the Macondo Prospect, in the Gulf of Mexico.

8. "Relating to" or "related to," when referring to any given subject matter, shall mean any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

9. "MC252 Well" shall mean the exploratory well that was being drilled by the *Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the outer continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

K&E 18646111.5



10. "MC252 Hydrocarbon Reservoir" shall mean the hydrocarbon bearing zones that were penetrated by the exploratory well that was being drilled by the *Deepwater Horizon* in the Macondo prospect of Mississippi Canyon 252 in the outer continental shelf of the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

11. "Analog well" means a well considered by you or anyone within the Flow Rate Technical Group to be an analog to MC252,  information about which was used by you or provided to you by the United States or anyone else.

12. "You" and "Your" refer to R.G. Hughes and Associates, L.L.C., and any of its officers, employees, contractors, fellows, researchers, analysts, other assistants, and agents.

## SUBJECTS FOR TESTIMONY

1. Your work for the United States and/or the Flow Rate Technical Group regarding MC252.

2. Your knowledge of and involvement in acquiring, processing, and/or analyzing data regarding the flow of hydrocarbons from the MC252 Well.

3. Your knowledge of the persons or entities acquiring, processing, and/or analyzing the flow of hydrocarbons from the MC252 Well.

4. Your analysis and conclusions regarding the flow of hydrocarbons from the MC252 Well.

5. Your analysis of the chemical composition, viscosity, compressibility, formation volume factor, gas/oil ratio ("GOR"), saturation pressure, and density of the fluid in, or discharged from, the MC252 Hydrocarbon Reservoir.

K&E 18646111.5



6. Your analysis of the geophysical, geological, and petrophysical properties of the MC252 Hydrocarbon Reservoir.

7. Your analysis of the pressure of the MC252 Well, including the pressure in the MC252 Hydrocarbon Reservoir, the pressure in the wellbore, the pressure at the wellhead, the pressure in the blowout preventer, and the pressure in the capping stack.

8. Your analysis of the flow path of hydrocarbons discharged from the MC252 Well.

9. Any well that you considered, or were asked to consider, as an analog well to the MC252 Well, including the reasons why it was considered an analog well and the purposes for which that analog was used.

10. Your communications with the United States, any United States employee, any national laboratory or any of its employees, or anyone affiliated or working with the Flow Rate Technical Group related to MC252.

11. Your receipt of financial or other compensation from any source for your role in acquiring, processing, and/or analyzing the flow of hydrocarbons from the MC252 Well.

K&E 18646111.5



# Attachment G

**Harvey, Judy (ENRD)**

| | |
|---|---|
| **From:** | Prieto, Jeffrey (ENRD) |
| **Sent:** | Monday, June 11, 2012 7:53 PM |
| **To:** | Beffa, Darin T.; DeSantis, Karen McCartan |
| **Cc:** | Harvey, Judy (ENRD); Chakeres, Aristide (ENRD); Himmelhoch, Sarah (ENRD); Cernich, Scott (ENRD) |
| **Subject:** | RE: 30(b)(6) Briefing Schedule |

Dear Ms. DeSantis and Mr. Beffa,

It was a pleasure to chat with you today.

We appreciate your proposed schedule of:
- U.S. Brief: June 15
- BP Opposition: June 18
- U.S. Reply: June 22

We propose:
- U.S. Brief: June 15
- BP Opposition: June 21
- U.S. Reply: June 26

We respectfully decline your offer to drop the deposition notice to Columbia University in exchange for the United States not opposing the additional six notices.

Please feel free to contact me if you believe we need to set up a call.

Best,

Jeff

Jeffrey M. Prieto
Counsel
Office of the Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7415
Ben Franklin Station
Washington, DC 20044-7415
Phone: 202-616-7915

*This e-mail, including attachments, contains information that is confidential and it may be protected by the attorney/client or other privileges. This e-mail, including attachments, constitutes non-public information intended to be conveyed only to the designated recipient(s). If you are not an intended recipient, please delete this e-mail, including attachments, and notify me by return mail, e-mail or at (202) 616-7915. The unauthorized use, dissemination, distribution or reproduction of this e-mail, including attachments, is prohibited and may be unlawful.*

---

**From:** Prieto, Jeffrey (ENRD)
**Sent:** Monday, June 11, 2012 8:15 AM
**To:** 'Eisert, Joseph A.'; Cernich, Scott (ENRD)
**Cc:** Harvey, Judy (ENRD); Chakeres, Aristide (ENRD); Himmelhoch, Sarah (ENRD); Langan, Andrew; Beffa, Darin T.; DeSantis, Karen McCartan; Gasaway, Robert R.
**Subject:** RE: 30(b)(6) Briefing Schedule

Hi all,

We can use dial-in number, 866.410.9426 and code, 2026167915.

Best,

Jeff

Jeffrey M. Prieto
Counsel
Office of the Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7415
Ben Franklin Station
Washington, DC 20044-7415
Phone: 202-616-7915

*This e-mail, including attachments, contains information that is confidential and it may be protected by the attorney/client or other privileges. This e-mail, including attachments, constitutes non-public information intended to be conveyed only to the designated recipient(s). If you are not an intended recipient, please delete this e-mail, including attachments, and notify me by return mail, e-mail or at (202) 616-7915. The unauthorized use, dissemination, distribution or reproduction of this e-mail, including attachments, is prohibited and may be unlawful.*

**From:** Eisert, Joseph A. [mailto:jeisert@kirkland.com]
**Sent:** Friday, June 08, 2012 1:38 PM
**To:** Prieto, Jeffrey (ENRD); Cernich, Scott (ENRD)
**Cc:** Harvey, Judy (ENRD); Chakeres, Aristide (ENRD); Himmelhoch, Sarah (ENRD); Langan, Andrew; Beffa, Darin T.; DeSantis, Karen McCartan; Gasaway, Robert R.
**Subject:** RE: 30(b)(6) Briefing Schedule

Jeff, Scott--

Can you discuss the schedule and the subpoenas today at 3:30 PM Eastern or later, or Monday between 11 AM and 2 PM Eastern?

Joe

Joseph A. Eisert | Kirkland & Ellis LLP
655 Fifteenth Street, N.W. Suite 1200 | WASHINGTON, DC 20005 | (202) 879-5136 DIRECT | (202) 879-5200 FAX  |
joseph.eisert@kirkland.com

**From:** Prieto, Jeffrey (ENRD) [mailto:Jeffrey.Prieto@usdoj.gov]
**Sent:** Thursday, June 07, 2012 10:11 PM
**To:** Gasaway, Robert R.; Beffa, Darin T.; DeSantis, Karen McCartan
**Cc:** Harvey, Judy (ENRD); Cernich, Scott (ENRD); Chakeres, Aristide (ENRD); Sarah.Himmelhoch@usdoj.gov; Eisert, Joseph A.; Langan, Andrew
**Subject:** Re: 30(b)(6) Briefing Schedule

Dear Mr. Gasaway,

We are open to discussing dates. We look forward to considering your proposed opposition and reply alternatives.

Best,

Jeff

Sent Using U.S. DOJ/ENRD BES 5 Server

---

**From**: Gasaway, Robert R. [mailto:rgasaway@kirkland.com]
**Sent**: Thursday, June 07, 2012 09:51 PM
**To**: Prieto, Jeffrey (ENRD); Beffa, Darin T. <dbeffa@kirkland.com>; DeSantis, Karen McCartan <kdesantis@kirkland.com>
**Cc**: Harvey, Judy (ENRD); Cernich, Scott (ENRD); Chakeres, Aristide (ENRD); Himmelhoch, Sarah (ENRD); Eisert, Joseph A. <jeisert@kirkland.com>; Langan, Andrew <alangan@kirkland.com>
**Subject**: Re: 30(b)(6) Briefing Schedule

Dear Mr. Prieto, four days for BP's opposition and five for USA's reply??

---

**From**: Prieto, Jeffrey (ENRD) [mailto:Jeffrey.Prieto@usdoj.gov]
**Sent**: Thursday, June 07, 2012 07:57 PM
**To**: Beffa, Darin T.; DeSantis, Karen McCartan
**Cc**: Harvey, Judy (ENRD) <Judith.Harvey@usdoj.gov>; Cernich, Scott (ENRD) <Scott.Cernich@usdoj.gov>; Chakeres, Aristide (ENRD) <Aristide.Chakeres@usdoj.gov>; Sarah.Himmelhoch@usdoj.gov; Gasaway, Robert R.; Eisert, Joseph A.
**Subject**: 30(b)(6) Briefing Schedule

Dear Ms. DeSantis and Mr. Beffa,

As we discussed during yesterday's call, the United States proposes the following briefing schedule:

- U.S. Brief: June 18
- BP Opposition: June 22
- U.S. Reply: June 27

Please don't hesitate to contact me (202.616.7915) or Judy Harvey (202.514.3932) if you wish to set up a call to discuss this matter.

Regards,

Jeff Prieto

************************************************************
IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
************************************************************

************************************************************
IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
*********************************************************

# Attachment H

**Harvey, Judy (ENRD)**

| | |
|---|---|
| **From:** | DeSantis, Karen McCartan [kdesantis@kirkland.com] |
| **Sent:** | Friday, June 15, 2012 6:38 PM |
| **To:** | Prieto, Jeffrey (ENRD); Cernich, Scott (ENRD) |
| **Cc:** | Himmelhoch, Sarah (ENRD); Harvey, Judy (ENRD); Eisert, Joseph A.; Chakeres, Aristide (ENRD); Gasaway, Robert R.; Nomellini, Mark J.; Petrino, Michael A.; Pixton, Allan; Beffa, Darin T.; Posteraro, Julie; Benson, Thomas (ENRD); Engel, Bethany (ENRD) |
| **Subject:** | RE:Subpoenas: Columbia University |

Jeff and Scott,

I am writing to advise that BP does not intend to serve Columbia University with a subpoena regarding the work of Professor Crone at this time.  Subpoenas to six entities, then, are at issue in our briefing regarding subpoenas.

Thanks,
Karen

**********************************************************
IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
**********************************************************

# Attachment I

DRAFT -- 8/25/2011
Draft by Counsel for Discussion Purposes Only
Not Reviewed or Approved by Client

## SOURCE CONTROL AND QUANTIFICATION DEPONENT SHORT LIST[1]

| # | Name | Employer | Title/Position |
|---|------|----------|----------------|
| 1 | Allen, Thad | USCG | Admiral |
| 2 | Ammerman, Curtt | U.S. Government | Lab Scientist; Applied Engineering Technology 1 (AET-1) Principal investigator; Intelligent Wind Turbines Mentor, Los Alamos National Laboratories |
| 3 | Barnett, David | Wild Well Control | VP Engineering |
| 4 | Bickel, Thomas C. | U.S. Government | Director of Engineering Sciences, Sandia National Laboratory (SNL) |
| 5 | Black, Steven | U.S. Government | AET-DO Engineering Standards Board, LANL |
| 6 | Blankenship, Doug | U.S. Government | Manager – Geothermal Energy & Drilling Technology, SNL |
| 7 | Boomer, Paul | University of Texas at Austin | Senior Lecturer, Petroleum and Geosystems |
| 8 | Borns, David | U.S. Government | Manager – Geotechnology and Engineering Department, SNL |
| 9 | Bowen, Andy | Woods Hole Oceanographic Institution | |
| 10 | Brannon, Richard | U.S. Government | Post Incident Response |
| 11 | Bristol, Sky | U.S. Government | Post Incident Response |
| 12 | Browner, Carol | U.S. Government | Director, White House Office of Energy and Climate Change Policy |
| 13 | Bullman, Jack | U.S. Government | Director of the Spacecraft and Vehicle Systems Department, Engineering Directorate at NASA |
| 14 | Burns, Mike | U.S. Government - Los Alamos National Laboratory, Department of Energy | Deputy Associate Director for Global Security, LANL |
| 15 | Camilli, Richard | Woods Hole Oceanographic Institution | Post Incident Response |
| 16 | Chu, Steven | United States Department of Energy | Secretary of Energy |
| 17 | Cook, Kevin | U.S. Government | USCG -- Admiral; RADM, Director of Prevention Policy |
| 18 | Cooper, George A. | U.S. Government; UC Berkeley, Lawrence Berkeley National Laboratory | DOE Science Team; senior petroleum engineer |

---

[1]     BP reserves the right to modify this preliminary list, which is based on discovery to date and the current status of BP's knowledge, understanding, and belief.

DRAFT -- 8/25/2011
Draft by Counsel for Discussion Purposes Only
Not Reviewed or Approved by Client

| # | Name | Employer | Title/Position |
|---|------|----------|----------------|
| 19 | Crone, Timothy | Lamont-Doherty Earth Observatory, Columbia University | Lamont Assistant Research Professor |
| 20 | Dean, Michael | United States Government | U.S. Navy Chief Engineer |
| 21 | Domangue, Bryan | BOEMRE | Houma District Manager |
| 22 | Dudek, Charles | U.S. Government | Member of Marine Safety Unit, Coast Guard Reserve |
| 23 | Dykhuizen, Ronald C. | Sandia National Laboratories, Department of Energy | Engineer – Fluid and Thermal Sciences SNL |
| 24 | Flores, Oscar | U.S. Government | Department of Mechanical Engineering at University of Washington; Board Member, Audit Committee |
| 25 | Garwin, Richard Lawrence | U.S. Government | IBM Fellow (emeritus); DOE Science Team |
| 26 | Gibbs, Scott W. | Los Alamos National Laboratory, Department of Energy | National Labs Scientist |
| 27 | Griffiths, Stewart K. | Sandia National Laboratories, Department of Energy | National Labs Scientist |
| 28 | Guffee, Ray M. | U.S. Government | AET-1 Engineering Standards Board, LANL |
| 29 | Hayes, David | U.S. Department of the Interior | Deputy Secretary of the Interior |
| 30 | Henry, Charlie | NOAA, Department of Commerce | Lead Scientific Support Coordinator for the DWH Spill, Acting Director of NOAA's GOM Disaster Response Center |
| 31 | Herbst, Lars | BOEMRE | Regional Director for the Gulf of Mexico Region |
| 32 | Hoshman, Russell | U.S. Government | Federal Mining Petroleum Engineering, BOEMRE |
| 33 | Hsieh, Paul | USGS | Scientist |
| 34 | Hunter, Tom | U.S. Government | Former Sandia Laboratory Director |
| 35 | Jackson, Lisa | U.S. Government | Administrator, EPA |
| 36 | Keenan, Patrick | U.S. Navy | Captain |
| 37 | Kelkar, Dr. M. | University of Tulsa | |
| 38 | Landry, Mary | USCG | Rear Admiral, USCG, |
| 39 | Lasheras, Juan | U.S. Government; University of California San Diego | Professor of Engineering and Applied Sciences, University of California San Diego |
| 40 | Lehr, Bill | NOAA, Department of Commerce | NOAA; Senior Scientist, Office of Response and Restoration, National Ocean Service |
| 41 | Leifer, Ira | U.S. Government | Post Incident Response; Assoc. Researcher, Marine Science Institute, University of California Santa Barbara |

DRAFT -- 8/25/2011
Draft by Counsel for Discussion Purposes Only
Not Reviewed or Approved by Client

| # | Name | Employer | Title/Position |
|---|------|----------|----------------|
| 42 | Levine, Ed | NOAA, Department of Commerce | |
| 43 | Linegar, Kirt | U.S. Government | U.S. Coast Guard Lieutenant |
| 44 | Lubchenco, Jane | NOAA, Department of Commerce | NOAA Administrator; Under Secretary of Commerce for Oceans and Atmosphere |
| 45 | McMahon, Larry | Transocean | Vice President |
| 46 | McNutt, Marcia | USGS, DOI | Director, U.S. Geological Survey (USGS) |
| 47 | Miller, Mark | NOAA, Department of Commerce | Technical Professional - Real Time Operations, NOAA |
| 48 | Napolitano, Janet | U.S. Government | Secretary, Department of Homeland Security |
| 49 | Neffenger, Peter V. | U.S. Government | Rear Admiral, Commander of the Ninth Coast Guard District |
| 50 | Odom, Michael | USCG | Lieutenant Commander |
| 51 | Paradis, Scott | U.S. Government | Captain, USCG; Federal On-Scene Coordinator (FOSC) |
| 52 | Possolo, Antonio | National Institute of Standards and Technology (NIST) | Chief, Statistical Engineering Division; National Institute of Standards and Technology – Post Incident Response |
| 53 | Qualkebush, Darin | U.S. Government | National Technical Advisor, OCS National Center of Expertise, USCG |
| 54 | Ratzel, Arthur C. | Sandia National Laboratories, Department of Energy | Director, Engineering Sciences Center, SNL  Post Incident Response |
| 55 | Rees Jr., William | U.S. Government - Los Alamos National Laboratory, Department of Energy | Deputy Under Secretary of Defense |
| 56 | Salazar, Ken | U.S. Department of the Interior | Secretary of the Interior |
| 57 | Savas, Omar | University of California Berkeley | Professor of Mechanical Engineering |
| 58 | Shepard, Mark | USCG | Lieutenant Commander |
| 59 | Slocum, Alexander | U.S. Government | Professor of Mechanical Engineering at MIT; Director of The Precision Engineering Group at MIT |
| 60 | Sogge, Mark | USGS, Department of the Interior | Chief of Staff, US Geological Survey (Deputy Lead) – Post Incident Response |
| 61 | Tatro, Majorie | U.S. Government | Director of the Energy and Transportation Security Center, SNL |
| 62 | Tieszen, Sheldon R. | Sandia National Laboratories, Department of Energy | Fire Sciences & Technologies Department, SNL |
| 63 | Tolstoy, Maya | Lamont–Doherty Earth Observatory, Columbia University | |

DRAFT -- 8/25/2011
Draft by Counsel for Discussion Purposes Only
Not Reviewed or Approved by Client

| # | Name | Employer | Title/Position |
|---|------|----------|----------------|
| 64 | Trocquet, David | BOEMRE | District Manager for the MMS New Orleans District Office, Field Operations |
| 65 | Trosclair, Troy | BOEMRE | Deputy Regional Supervisor for District Operations |
| 66 | Wapman, Derek | U.S. Government | Weapon Engineering, LLNL |
| 67 | Watson, James | USCG | Rear Admiral/FOSC Coordinator |
| 68 | Wereley, Steve | R&B Falcon; Purdue University | Associate Professor of Mechanical Engineering, Purdue University – Post Incident Response |
| 69 | Wright, Rusty | BOEMRE | Regional Administrator, Gulf of Mexico, BOEMRE Oil Spill Program |
| 70 | Anadarko 30(b)(6) on Source Control and Quantification issues. | | |
| 71 | BP 30(b)(6) on Source Control and Quantification issues (to the extent either is not already covered). | | |
| 72 | Cameron 30(b)(6) on Source Control and Quantification issues. | | |
| 73 | Cudd Well Control 30(b)(6) on Source Control and Quantification issues. | | |
| 74 | ExxonMobil 30(b)(6) on Quantification issues, including the application of subsea dispersants. | | |
| 75 | Halliburton 30(b)(6) on Source Control and Quantification issues. | | |
| 76 | Transocean 30(b)(6) on Source Control and Quantification issues. | | |
| 77 | U.S. Government 30(b)(6) on Source Control and Quantification issues. | U.S. Government | |

4

# Attachment J



**U.S. Department of Justice**

Environment and Natural Resource Division

*P.O. Box 7611*
*Washington, DC 20044*
*202-514-0056*
*Scott.Cernich@usdoj.gov*

May 18, 2012

**BY ELECTRONIC MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
Eastern District of Louisiana
Hale Boggs Federal Building
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

    Re:    MDL 2179: Third Party 30(b)(6) Topics

Dear Judge Shushan:

At this morning's Working Group Conference, BP proposed three additional non-party 30(b)(6) depositions: Kelkar & Associates ("Kelkar"), Gemini Solutions ("Gemini"), and R.G. Hughes and Associates ("Hughes"). The United States objects to BP's proposal as untimely and duplicative of topics already contained in BP's 30(b)(6) notice to the United States. Kelkar, Gemini, and Hughes were members of the National Incident Command's Flow Rate Technical Group ("FRTG") Reservoir Subteam, one of several subteams performing work as part of the FRTG. Topics 44-52 of BP's 30(b)(6) notice to the United States calls for extensive information regarding the FRTG and its analyses, including the work of the Reservoir Subteam. The United States has produced to BP the files of Kelkar, Gemini, and Hughes and will present witnesses to testify regarding the work of the FRTG generally and the Reservoir Team specifically.

The United States proposed depositions of three non-parties is a wholly different situation. As you know, the United States first proposed 30(b)(6) depositions of Intertek, Isotech, and World Oilfield Machine, Inc. ("WOM") at the March 30, 2012 Working Group Conference. It was only after BP's Phase II document productions that we learned that these non-parties were performing work or supplying services or materials relevant to Quantification.

In stark contrast, BP learned of the Kelkar, Gemini, and Hughes FRTG work, at the very latest, over a year ago, when the FRTG's final report was released on March 10, 2011.  The United States is concerned that BP's proposed additional depositions will set a  precedent for further late-noticed 30(b)(6) depositions, including 30(b)(6) depositions of every FRTG member who is not employed by the United States, of which there are at least a dozen if BP intends to drill down to depose the scientists on each subteam.

While the United States has begun discussions with Intertek, Isotech, and WOM regarding 30(b)(6) deposition notices and document productions, we would be more than happy to limit or avoid these depositions if possible.  The topics contained in the proposed notices are discrete and straightforward.

Intertek and Isotech provided laboratory testing for BP on samples from the Macondo well.  The United States interest is quite simple – Do we have all of the data, including all testing results?  How were the samples tested?  What happened to the samples after testing?  Were the tests conducted in a manner consistent with Intertek's and Isotech's standard methods and practices?  Are the data valid and reliable?  Can the relevant documents be authenticated?

WOM is an oilfield equipment company that supplied the dual gate valves installed on the Capping Stack and may have supplied identical equipment to BP for flow testing after the well was killed.  BP has professed to not be able to locate engineering drawings of these valves – the subject of so much measuring and scanning at the NASA Michoud facility.[1]  Further, BP has asserted attorney-client privilege and work product protection over communications with WOM employee Richard Lemke.  *See* PRIV-BP-HZN-2179MDL00019706; PRIV-BP-HZN-2179MDL00019779.  The United States does not believe such communications are privileged or protected.  Our interest is limited.  The United States would like WOM to provide us with engineering drawings and product information for the dual gate valves,[2] confirm that WOM's equipment is manufactured according to WOM's specifications, provide us with all communications with BP or any other party, and all documents, related to WOM's involvement with the Macondo well pre- or post-shut-in (which we believe is limited to supplying equipment and documentation), and authenticate its documents.

---

[1] BP also has professed not to have reliable engineering drawings or schematics for the Capping Stack generally. This is the Capping Stack that BP proposed to the United States government, and in fact used, to shut in the Macondo well on July 15, 2010.  Indeed, BP has claimed attorney-client privilege or work product protection over 44 documents on its Good Faith Quantification list described by BP as "Engineering Drawings/Schematics."  Due to the opaque descriptions in BP's privilege logs, it is impossible for the United States to adduce whether all or any of those documents are related to the WOM valves or the Capping Stack.

[2] The United States is surprised that BP did not obtain this information prior to installing the valves on the Capping Stack.

       The United States appreciates your consideration of this matter and respectfully suggests that it is inappropriate to allow the additional 30(b)(6) depositions proposed by BP.

Respectfully submitted,

/s/ Scott M. Cernich
Scott M. Cernich

cc:    Liaison & Coordinating Counsel
       Robert Gasaway

# Attachment K

LEXISNEXIS® FILE & SERVE
43393470
E-SERVICE
Mar 30 2012
11:34AM

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | : : : | MDL No. 2179<br><br>SECTION: J |
| | : | |
| This Document Relates To: All Actions | : | JUDGE BARBIER |
| | : | MAGISTRATE JUDGE |
| …………………………………………….... | : | SHUSHAN |

### AGREED 30(b)(6) DEPOSITION NOTICE OF THE UNITED STATES

By agreement of Plaintiffs' Liaison Counsel, Defense Liaison Counsel, Coordinating Counsel for the States, and Coordinating Counsel for the U.S., the U.S. shall, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and Pre-Trial Order No. 17 (as supplemented and amended by Pre-Trial Order 27), designate and produce one or more officers, managers, agents, employees, or other representatives of the U.S. to discuss the Areas of Inquiry identified below.  The times and locations of the depositions will be scheduled in conjunction with the designees' fact depositions in their individual capacities, or otherwise as may be scheduled with Judge Shushan and the parties.

### DEFINITIONS

As used in the list of topics contained in this notice, the following terms are defined as set forth below:

1.      "Source Control Efforts" has the same meaning as "Source Control" in the Definitions contained in the United States' Initial Response to BP Exploration and Production Company's First Set of Discovery Requests served on May 19, 2011.

2.      "Unified Command" means all personnel and functions of the "Unified Area Command" and the "Incident Command Post" at Houston, Texas, as the terms "Unified Area Command" and "Incident Command Post" are used in the report to the National Response Team entitled, "On Scene Coordinator Report -- *Deepwater Horizon* Oil Spill" and dated September 2011 (the "OSC Report").

3.      "National Incident Commander" has the same meaning as when used in the OSC Report.

4.     "MC 252 Well" means the exploratory well drilled in Block 252 of the Mississippi Canyon.

5.      "Junk Shot" means the operation by which bridging material was injected into the Deepwater Horizon blow-out preventer either from the surface or through a subsea manifold as part of the Top Kill operations.

6.      "Top Hat" means the mechanical device used to collect hydrocarbons from the top of the Lower Marine Riser Package up to the *Discover Enterprise* after the riser was cut off in June 2010.

7.     "Top Kill" means the operations comprised of the Momentum Kill and Junk Shot attempted in May 2010 as a means to kill the MC 252 Well.

8.      "Momentum Kill" means the operation by which drilling fluid was pumped into the Deepwater Horizon blow-out preventer at a high rate of speed in an attempt to overcome the flow of hydrocarbons as part of the Top Kill operations.

9.     Static Kill" means the operation by which drilling fluid was pumped into the *Deepwater Horizon* blow-out preventer after the well had been closed in.

10.     "Erosion" means the gradual degradation, deterioration, or destruction of surface material  caused by the mechanical action of, for example, the flow of fluids and/or other materials, including but not limited to hydrocarbons.

## AREAS OF INQUIRY

### A. Source Control

1.     Your review and approval of BP's 2009 Regional Oil Spill Response Plan -- Gulf of Mexico.

2.     Your knowledge on or before April 20, 2010, of any requirements that Oil Spill Response Plans, Exploration Plans, or any other regulatory submittal include provisions regarding how to respond to subsea oil well blow-outs (including deepwater oil well blow-outs) on the Outer Continental Shelf, by containing, capturing, controlling, capping or stopping the flow of oil and gas from the well.

3.      Other than blow-out preventers, your knowledge of the state of the art within the industry as to any device, system, assembly, procedure or technology for response to subsea oil well blow-outs (including deepwater oil well blow-outs) by containing, capturing, controlling, capping or stopping the flow of oil and gas from the well.

4.     The training of United States personnel, including but not limited to personnel of the United States Coast Guard prior to April 20, 2010, to respond to, or to participate in a response to, an offshore oil well blow-out relating to Source Control Efforts.

5.      Your knowledge of the Source Control elements of BP's offshore oil spill response programs, or emergency management training programs, for responses to offshore oil well blowouts, between January 1, 2005 and April 20, 2010, including any audits or approvals of such training programs.

6.      Your knowledge of the role of and categories and types of actions taken by the Unified Command, as created and implemented pursuant to the National Incident Management System, in Source Control Efforts

7.      Your knowledge of the role of and categories and types of actions taken by the office of the National Incident Commander in Source Control Efforts, including, but not limited to, the acquisition and distribution of information or data related to the Source Control efforts.

8.      Your knowledge of the role and actions of any United States personnel or United States contractors in Source Control Efforts that were not undertaken under the scope and authority of the Unified Command or the National Incident Commander, e.g., as reflected on such entity's formal organizational chart.

9.      Your knowledge of BP's efforts to engage or include United States personnel or United States contractors in Source Control Efforts.

10.      Your knowledge of any omissions by BP to engage or include United State personnel or United States contractors in Source Control Efforts.

11.      Your knowledge of BP's efforts to provide information to United States personnel or United States contractors in connection with Source Control Efforts.

12.      Your knowledge of any failure by BP to provide information to United States personnel or United States contractors in connection with Source Control Efforts.

13.      To the extent not otherwise addressed by these topics, your knowledge of and involvement in the decision regarding whether or not to undertake a specific Source Control Effort for which a proposal, evaluation or analysis had been developed

14.      Your knowledge of and involvement in the sequencing of Source Control Efforts, including the considerations or factors that accounted for the sequence of Source Control Efforts.

15.      Your knowledge of and involvement in the identification, design, planning, fabrication, testing, selection, and/or approval of the efforts used to activate the *Deepwater Horizon* blow-out preventer on or after April 20, 2010, through the use of remotely operated vehicles ("ROVs").

16.      Your knowledge of and involvement in the identification, design, planning, fabrication, testing, selection, and/or approval of the use of a pollution dome or cofferdam as a means to capture oil and gas from the MC252 Well.

17.     Your knowledge of and involvement in the identification, design, planning, fabrication, testing, selection, and/or approval of the use of a riser insertion tube tool as a means to capture oil and gas from the MC252 Well.

18.     Your knowledge of and involvement in the identification, design, planning, fabrication, testing, selection, and/or approval of the use of a second blowout preventer as a means to control or cease the flow of oil and gas from the MC252 Well.

19.     Your knowledge of and involvement in the identification, design, planning, fabrication, testing, selection, and/or approval of the use of a capping stack as a means to control or cease the flow of oil and gas from the MC252 Well.

20.     Your knowledge of and involvement in the identification, design, planning, fabrication, testing, selection, and/or approval of the use of Junk Shot(s) as a means to stop the flow of oil and gas from the MC252 Well.

21.     Your knowledge of and involvement in the identification, design, planning, fabrication, testing, selection, and/or approval of the use of Momentum Kill(s) as a means to stop the flow of oil and gas from the MC252 Well.

22.     Your knowledge of and involvement in the identification, design, planning, fabrication, testing, selection, and/or approval of the use of Top Kill as a means to stop the flow of oil and gas from the MC252 Well.

23.     Your knowledge of and involvement in the identification, design, planning, fabrication, testing, selection, and/or approval of the use of a Top Hat as a means to capture oil and gas from the MC252 Well.

24.     Your knowledge of and involvement in the identification, design, planning, fabrication, testing, selection, and/or approval of the use of the choke or kill line of the *Deepwater Horizon* blow-out preventer as a means to capture oil and gas from the MC252 Well.

25.     Your knowledge of and involvement in the identification, design, planning, fabrication, testing, selection, and/or approval of the use of free standing risers and floating production, storage and offloading vessels as a means to capture oil and gas from the MC252 Well.

26.     Your knowledge of and involvement in the identification, design, planning, fabrication, testing, selection, and/or approval of the use of a Static Kill as a means to kill the MC252 Well.

27.     Your knowledge of and involvement in the identification, design, planning, fabrication, testing, selection, and/or approval of the use of relief wells as a means to stop the flow of oil and gas from the MC252 Well.

28.     Your understanding of the path (or paths) through which hydrocarbons flowed from the MC252 reservoir through and out of the MC252 Well between April 20, 2010, and July 15, 2010, including any information supporting that understanding.

29.     Your knowledge of and involvement with the selection, testing, monitoring, approval, and use of subsea or surface dispersants at or in the area immediately above the MC252 Well as those matters affected or relate to Source Control Efforts and any effort to quantify the flow of hydrocarbons from the MC 252 Well.

30.     Your knowledge of and involvement in the development and implementation of simultaneous operations procedures or plans for vessels working in the immediate vicinity of the MC 252 Well.

31.     Your knowledge of any suggestion or proposal to utilize the Macondo wellbore or either relief well for future production from MC 252.

32.     Your knowledge of any delay in the drilling or either relief well due to the taking of samples in the wellbore.

33.     Your knowledge of the financial support, labor, equipment, facilities and other resources devoted by BP to Source Control Efforts.

**B. Quantification**

**<u>Unified Command/Unified Area Command/Houston Incident Command</u>**

34.     Your efforts (including all communications, modeling, calculations and analysis of any kind) leading to the flow rate estimate of 1,000 bopd announced by Admiral Landry on April 24, 2010.

35.     Your efforts (including all communications, modeling, calculations and analysis of any kind) leading to the flow rate estimate of 5,000 bopd announced by Admiral Landry on April 28, 2010.

36.     Your efforts (including all communications, modeling, calculations and analysis of any kind) relating to all attempts to quantify the release of hydrocarbons from the Macondo MC252 well after April 20, 2010, whether or not those efforts resulted in a finalized or public estimate.

37.     All communications, data, modeling, calculations and analysis relating to the effect of restrictions on flow from the MC252 well, including flow path within the well, cement, riser geometry, the BOP, or any other restriction, including the effect of removing or mitigating any restriction (*e.g.*, by erosion) or the development or existence of leak points.

38.     All communications, data, modeling, calculations and analysis of the MC252 reservoir, including its geological formation, integrity, pressure, and composition (including the composition of oil, natural gas and any other constituents or components of the reservoir) and the effect of reservoir depletion on the flow of hydrocarbons from the MC252 well.

39.     All communications, data, modeling, calculations and analysis relating to "skin" within the MC252 reservoir.

40.     All communications, data, modeling, calculations and analysis relating to the collection of hydrocarbons from the MC 252 well using the Riser Insertion Tool, including any effect such information had on any estimate of flow rates.

41.     All communications, data, modeling, calculations and analysis relating to the effect of the flow of hydrocarbons from the MC252 well on any attempt or technique considered to stop the flow of hydrocarbons from the well.

42.     All communications, data, modeling, calculations and analysis identifying or relating to factors affecting the ability to estimate the flow of hydrocarbons from the MC252 well or the accuracy of any such estimate.

**Flow Rate Technical Group (FRTG):**

43.     The organization and operation of the Flow Rate Technical Group ("FRTG") and all of its sub-teams, and the selection of their members and staff.

44.     Any communications constituting directions, guidance, analysis, commentary or influence) relating to the work of the FRTG or to flow, between the FRTG or any of its members and any person in the Federal Interagency Solutions Group (FISG), Executive Office of the President (EoP), Department of Energy (DoE), Department of the Interior (DoI), Environmental Protection Agency (EPA), Department of Homeland Security (DHS) or Department of Commerce (DoC), or anyone acting on their behalf.

45.     The methods, calculations, analyses, estimates, factors, data and assumptions considered or employed by the FRTG, any of its members, any of its sub-teams, or any of their members, during the course of any work performed by the FRTG or any sub-team to quantify or estimate the flow of hydrocarbons from the MC252 well, including velocimetry, nodal analysis, reservoir analysis, hydraulics, acoustics, surface expression, mass balance, multiphase flow, and gas/oil ratio ("GOR").

46.     All communications within or among the FRTG and its sub-teams regarding the difficulty, quality, accuracy or uncertainties associated with its work to quantify or estimate the flow of hydrocarbons from the MC252 well.

47.     All communications involving the FRTG or any of its members regarding the purpose or timing of any attempt to quantify or estimate the flow of hydrocarbons from the MC252 well.

48.     Your efforts (including all communications, modeling, calculations and analysis of any kind) leading to the May 27, 2010 flow rate estimate of 12,000 to 19,000 bopd.

49.     Your efforts (including all communications, modeling, calculations and analysis of any kind) relating to all attempts to quantify the release of hydrocarbons from the MC252 well after April 20, 2010, whether or not those efforts resulted in a finalized or public estimate.

50.     Your knowledge of any documents, analysis or discussion relating to erosion (the gradual degradation, deterioration, or destruction of surface material  caused by the mechanical

action of, e.g., the flow of fluids and/or other materials, including but not limited to hydrocarbons) occurring within the MC252 well and any of its constituent elements, including erosion of the bottomhole, annular cement, casing hanger interior, blind shear ram, riser, any drill pipe remaining in the riser, or any other section or portion of the flow path of hydrocarbons from the MC252 well, on and after April 20, 2010.

51.     The effect of erosion on the flow rate of hydrocarbons from the MC252 well on and after April 20, 2010.

**Department of Energy "Science Team":**

52.     The organization and operation of the Department of Energy Science Team, including the selection of its members and staff.

53.     The methods, calculations, analyses, estimates, factors, data and assumptions considered or employed by the Science Team or any of its members to quantify or estimate the flow of hydrocarbons from the MC252 well.

54.     All communications involving the Science Team or any of its members regarding the difficulty, quality, accuracy or uncertainty associated with any attempt to quantify or estimate the flow of hydrocarbons from the MC252 well.

55.     All communications involving the Science Team or any of its members regarding the purpose or timing of any attempt to quantify or estimate the flow of hydrocarbons from the MC252 well.

56.     Your knowledge of any documents, analysis or discussion relating to erosion (the gradual degradation, deterioration, or destruction of surface material  caused by the mechanical action of, e.g., the flow of fluids and/or other materials, including but not limited to hydrocarbons) occurring within the MC252 well and any of its constituent elements, including erosion of the bottomhole, annular cement, casing hanger interior, blind shear ram, riser, any drill pipe remaining in the riser, or any other section or portion of the flow path of hydrocarbons from the MC252 well, on and after April 20, 2010.

57.     The effect of erosion on the flow rate of hydrocarbons from the MC252 well on and after April 20, 2010.

58.     Your knowledge, consideration or analysis of the National Commission Chief Counsel's conclusion (2011 Report at 45) that "the interior of the BOP (through which hydrocarbons definitely flowed) showed serious erosion, as did the interior of the casing hanger."

59.     Your knowledge, consideration or analysis of the National Commission Chief Counsel's conclusion (2011 Report at 212) that "initial photos from the recovered BOP show erosion in the side of the blowout preventer around the ram, which was a possible flow path for hydrocarbons."

**Los Alamos National Lab (LANL):**

60.     The organization and operation of the LANL team, including the selection of its members and staff.

61.     The methods, calculations, analyses, estimates, factors, data and assumptions considered or employed by the LANL team or any of its members to quantify or estimate the flow of hydrocarbons from the MC252 well.

62.     All communications involving the LANL team or any of its members regarding the difficulty, quality, accuracy or uncertainty associated with any attempt to quantify or estimate the flow of hydrocarbons from the MC252 well.

63.     All communications between the LANL team or any of its members and any other person regarding the flow rate work being undertaken by any other national laboratory or agency of the Federal Government.

64.     All communications involving the LANL team or any of its members regarding the purpose or timing of any attempt to quantify or estimate the flow of hydrocarbons from the MC252 well.

65.     Your knowledge of any documents, analysis or discussion relating to erosion (the gradual degradation, deterioration, or destruction of surface material  caused by the mechanical action of, e.g., the flow of fluids and/or other materials, including but not limited to hydrocarbons) occurring within the MC252 well and any of its constituent elements, including erosion of the bottomhole, annular cement, casing hanger interior, blind shear ram, riser, any drill pipe remaining in the riser, or any other section or portion of the flow path of hydrocarbons from the MC252 well, on and after April 20, 2010.

66.     The effect of erosion on the flow rate of hydrocarbons from the MC252 well on and after April 20, 2010.

**Lawrence Livermore National Lab (LLNL):**

67.     The organization and operation of the LLNL team, including the selection of its members and staff.

68.     The methods, calculations, analyses, estimates, factors, data and assumptions considered or employed by the LLNL team or any of its members to quantify or estimate the flow of hydrocarbons from the MC252 well.

69.     All communications involving the LLNL team or any of its members regarding the difficulty, quality, accuracy or uncertainty associated with any attempt to quantify or estimate the flow of hydrocarbons from the MC252 well.

70.     All communications between the LLNL team or any of its members and any other person regarding the flow rate work being undertaken by any other national laboratory or agency of the Federal Government.

71.    All communications involving the LLNL team or any of its members regarding the purpose or timing of any attempt to quantify or estimate the flow of hydrocarbons from the MC252 well.

72.    Your knowledge of any documents, analysis or discussion relating to erosion (the gradual degradation, deterioration, or destruction of surface material  caused by the mechanical action of, e.g., the flow of fluids and/or other materials, including but not limited to hydrocarbons) occurring within the MC252 well and any of its constituent elements, including erosion of the bottomhole, annular cement, casing hanger interior, blind shear ram, riser, any drill pipe remaining in the riser, or any other section or portion of the flow path of hydrocarbons from the MC252 well, on and after April 20, 2010.

73.    The effect of erosion on the flow rate of hydrocarbons from the MC252 well on and after April 20, 2010.

**Lawrence Berkeley National Lab (LBNL):**

74.    The organization and operation of the LBNL team, including the selection of its members and staff.

75.    The methods, calculations, analyses, estimates, factors, data and assumptions considered or employed by the LBNL team or any of its members to quantify or estimate the flow of hydrocarbons from the MC252 well.

76.    All communications involving the LBNL team or any of its members regarding the difficulty, quality, accuracy or uncertainties associated with any attempt to quantify or estimate the flow of hydrocarbons from the MC252 well.

77.    All communications between the LBNL team or any of its members and any other person regarding the flow rate work being undertaken by any other national laboratory or agency of the Federal Government.

78.    All communications involving the LBNL team or any of its members regarding the purpose or timing of any attempt to quantify or estimate the flow of hydrocarbons from the MC252 well.

79.    Your knowledge of any documents, analysis or discussion relating to erosion (the gradual degradation, deterioration, or destruction of surface material  caused by the mechanical action of, e.g., the flow of fluids and/or other materials, including but not limited to hydrocarbons) occurring within the MC252 well and any of its constituent elements, including erosion of the bottomhole, annular cement, casing hanger interior, blind shear ram, riser, any drill pipe remaining in the riser, or any other section or portion of the flow path of hydrocarbons from the MC252 well, on and after April 20, 2010.

80.    The effect of erosion on the flow rate of hydrocarbons from the MC252 well on and after April 20, 2010.

**Sandia National Lab (SNL):**

81.     The organization and operation of the SNL team, including the selection of its members and staff.

82.     The methods, calculations, analyses, estimates, factors, data and assumptions considered or employed by the SNL team or any of its members to quantify or estimate the flow of hydrocarbons from the MC252 well.

83.     All communications involving the SNL team or any of its members regarding the difficulty, quality, accuracy or uncertainty associated with any attempt to quantify or estimate the flow of hydrocarbons from the MC252 well.

84.     All communications between the SNL team or any of its members and any other person regarding the flow rate work being undertaken by any other national laboratory or agency of the Federal Government.

85.     All communications involving the SNL team or any of its members regarding the purpose or timing of any attempt to quantify or estimate the flow of hydrocarbons from the MC252 well.

86.     Your knowledge of any documents, analysis or discussion relating to erosion (the gradual degradation, deterioration, or destruction of surface material  caused by the mechanical action of, e.g., the flow of fluids and/or other materials, including but not limited to hydrocarbons) occurring within the MC252 well and any of its constituent elements, including erosion of the bottomhole, annular cement, casing hanger interior, blind shear ram, riser, any drill pipe remaining in the riser, or any other section or portion of the flow path of hydrocarbons from the MC252 well, on and after April 20, 2010.

87.     The effect of erosion on the flow rate of hydrocarbons from the MC252 well on and after April 20, 2010.

88.     Preparation of the report "DOE-NNSA Flow Analysis Studies Associated with the Oil Release following the Deepwater Horizon Accident, SAND2010-XXXX, Arthur C. Ratzel III, Team Lead, Sandia National Laboratories, December 2010.

**Federal Interagency Solutions Group (FISG):**

89.     Preparation of the reports "McNutt, M, R. Camilli, G. Guthrie, P. Hsieh, V. Labson, B. Lehr, D. Maclay, A. Ratzel, and M. Sogge. 2011; Assessment of Flow Rate Estimates for the Deepwater Horizon / Macondo Well Oil Spill, Flow Rate Technical Group report to the National Incident Command, Interagency Solutions Group, March 10, 2011" and "Oil Budget Calculator, Deepwater Horizon, Technical Documentation, November 2010, A Report by the Federal Interagency Solutions Group, Oil Budget Calculator Science and Engineering Team."

90.     All communication between the FISG or any of its members and any other person regarding the flow rate work being undertaken by any national laboratory or agency of the Federal Government.

91.     The methods, calculations, analyses, estimates, factors, data and assumptions considered or employed by the FISG or any of its members to quantify or estimate the flow of hydrocarbons from the MC252 well.

92.     All communications involving the FISG or any of its members regarding the difficulty, quality, accuracy or uncertainties associated with any attempt to quantify or estimate the flow of hydrocarbons from the MC252 well.

93.     All communications involving the FISG or any of its members regarding the purpose or timing of any attempt to quantify or estimate the flow of hydrocarbons from the MC252 well.

94.     Your knowledge of any documents, analysis or discussion relating to erosion (the gradual degradation, deterioration, or destruction of surface material  caused by the mechanical action of, e.g., the flow of fluids and/or other materials, including but not limited to hydrocarbons) occurring within the MC252 well and any of its constituent elements, including erosion of the bottomhole, annular cement, casing hanger interior, blind shear ram, riser, any drill pipe remaining in the riser, or any other section or portion of the flow path of hydrocarbons from the MC252 well, on and after April 20, 2010.

95.     The effect of erosion on the flow rate of hydrocarbons from the MC252 well on and after April 20, 2010.

**Environmental Protection Agency (EPA):**

96.     Any communications constituting directions, guidance, analysis, commentary or influence between the EPA and any person in the FRTG, FISG, Executive Office of the President, Department of Energy, Department of the Interior, Department of Homeland Security or Department of Commerce, or anyone acting on their behalf, regarding Source Control Efforts or the quantification or estimation of hydrocarbons escaping from the MC252 well.

97.     The EPA's role and participation in the process of considering or determining the amount or type of dispersants to be applied in connection with the release of hydrocarbons from the MC252 Well, and the methods, calculations, analyses, estimates, factors, data and assumptions considered or employed by the EPA in connection with that role.

98.     All communications involving the EPA regarding the purpose or timing of any attempt to quantify or estimate the flow of hydrocarbons from the MC252 well.

**National Institute of Standards and Technology (NIST):**

99.     Any communications constituting directions, guidance, analysis, commentary or influence) between the NIST and any person in the FRTG, FISG, Executive Office of the President, Environmental Protection Agency, Department of Energy, Department of the Interior, Department of Homeland Security or Department of Commerce, or anyone acting on their behalf, regarding the quantification or estimation of hydrocarbons escaping from the MC252 well.

100.     The methods, calculations, analyses, estimates, factors, data and assumptions considered or employed by the NIST in performing or reviewing any work to quantify or estimate the flow of hydrocarbons from the MC252 well, including velocimetry, nodal analysis, reservoir analysis, hydraulics, acoustics, surface expression, mass balance, multiphase flow, and gas/oil ratio ("GOR").

101.     All communications within or among the NIST regarding the difficulty, quality, accuracy or uncertainties associated with efforts to quantify or estimate the flow of hydrocarbons from the MC252 well.

102.     All communications involving the NIST regarding the purpose or timing of any attempt to quantify or estimate the flow of hydrocarbons from the MC252 well.

103.     Your knowledge of any documents, analysis or discussion relating to erosion (the gradual degradation, deterioration, or destruction of surface material  caused by the mechanical action of, e.g., the flow of fluids and/or other materials, including but not limited to hydrocarbons) occurring within the MC252 well and any of its constituent elements, including erosion of the bottomhole, annular cement, casing hanger interior, blind shear ram, riser, any drill pipe remaining in the riser, or any other section or portion of the flow path of hydrocarbons from the MC252 well, on and after April 20, 2010.

104.     The effect of erosion on the flow rate of hydrocarbons from the MC252 well on and after April 20, 2010.


Dated:  March 30, 2012                          Respectfully submitted,

                                                By:  /s/ J. Andrew Langan, P.C.

                                                Richard C. Godfrey, P.C.
                                                J. Andrew Langan, P.C.
                                                Timothy A. Duffy, P.C.
                                                Kirkland & Ellis LLP
                                                300 North LaSalle Street
                                                Chicago, IL 60654
                                                Telephone: (312) 862-2000
                                                Facsimile:  (312) 862-2200

                                                and

                                                Don K. Haycraft (Bar #14361)
                                                R. Keith Jarrett (Bar #16984)
                                                LISKOW & LEWIS
                                                701 Poydras Street, Suite 5000
                                                New Orleans, Louisiana 70139-5099

Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Robert C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: (202) 662-5985

*Attorneys for the BP Parties*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on this 30th day of March, 2012.

/s/   J. Andrew Langan, P.C.___