# BINGHAM

Warren Anthony Fitch
Direct Phone:   +1.202.373.6695
Direct Fax:     +1.202.373.6001
tony.fitch@bingham.com

June 19, 2012

**Via E-Mail**

The Honorable Sally Shushan
United States District Court for the
   Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, LA 70130

**Re:   Phase Two Rule 30(b)(6) Deposition Notice to Anadarko**

Dear Judge Shushan:

I write with respect to the final draft of the Phase Two Rule 30(b)(6) Deposition Notice that was provided to Anadarko on June 15 after it became apparent that further discussions among the parties regarding certain areas of disagreement would be futile.  This letter first summarizes the contents of the draft Notice and the agreements and disagreements among the parties and then sets forth the basis for Anadarko's positions on the issues requiring your resolution.  Although Anadarko has, of course, not served formal Responses and Objections to the draft Notice, the areas of disagreement can be addressed now, in keeping with the Court's effort to resolve as many issues as possible before the Rule 30(b)(6) depositions commence.

Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
2020 K Street NW
Washington, DC
20006-1806

T +1.202.373.6000
F +1.202.373.6001
bingham.com

### SUMMARY OF THE PROPOSED NOTICE
### AND OF DISCUSSIONS AMONG THE PARTIES

The proposed Notice to Anadarko consists of 25 topics.  A copy of the Notice is attached hereto. (Exh. A). Topics 1, 2, 3 and 19 relate primarily to Source Control issues. Topics 4-9, 14 and 18-25 relate primarily to Quantification issues.  Topics 10-13 and 15-17 relate primarily to Spill Preparedness.

As you know, Anadarko was a non-operating party under the Operating Agreement that governed Anadarko's investment in BP's exploration and development of MC252.  Consequently, and not surprisingly, Anadarko had very limited information about the issues addressed in Phase One discovery and to be addressed in the Phase One trial and has even less information about the Quantification and Source Control issues to be addressed in Phase Two.

A/74974386.3

Hon. Sally Shushan
June 19, 2012
Page 2

Anadarko has limited information on certain Quantification and Source Control related topics, including Topics 4.a, 5, 6, 7, 19, and 22. As discussed more fully below, Anadarko employees have already testified fully on a number of the topics contained in the revised Notice and consequently, a second deposition of the same witness on the same subject is neither necessary nor appropriate. Nonetheless, the United States seeks another deposition on the very same issues on which these witnesses have previously testified, and therefore this is the first issue that requires your attention. (Anadarko will designate representatives to provide testimony on portions of Quantification-related Topics 5, 6, 7 and a portion of Topic 22 and will provide available dates in accordance with your directives for what we anticipate will be quite short depositions of these representatives.)

Cognizant of the Company's responsibilities under Rule 30(b)(6), Anadarko counsel interviewed the relevant Anadarko employees with respect to the deposition topics in the original Notice to Anadarko that was under discussion since last November. As a result of that work, Anadarko determined that it has no information regarding topics 1, 2, 3, 4.b, 4.c, 8, 9, 14, 16, 18, 20, or 22-25 as they were originally drafted. However, the PSC has revised or entirely replaced many topics in the draft Notice that was provided to Anadarko this past Friday. Thus, Anadarko counsel will now commence a second inquiry of its employees to re-identify the revised topics on which it has no information, as well as revised topics on which it might have information – if any.

The PSC and Anadarko had agreed that Anadarko would simply stipulate that it has no information on certain specific topics, in lieu of producing a witness. The United States has largely refused to join in this approach. Due to the United States' objections, unless the Court assists in this matter, Anadarko will have to undertake the pointless and wasteful exercise of producing a witness for no other purpose than to state that Anadarko has no information on these topics.

Finally, the PSC and Anadarko have been unable to reach agreement with respect to topics 10-13, 15 and 17, all of which relate to preparedness for responding to a spill at sites other than MC252. This is the second issue that requires your attention.

## ARGUMENT

**Anadarko's Employees Should Not Be Required to Testify a Second Time, on Exactly the Same Subject-Matter on Which They Have Already Been Deposed**

Topic 4 asks Anadarko to produce a 30(b)(6) witness to testify about "[t]he manner, methodology and mode that Anadarko, Anadarko's contractors or any other entity

Hon. Sally Shushan
June 19, 2012
Page 3

working on Anadarko's behalf, used to predict, estimate, characterize and/or measure the daily amount of discharge from the Macondo Well."[1] The PSC, the United States, and other interested parties extensively questioned Anadarko fact witness Dawn Peyton on September 8, 2011 about precisely this issue. Peyton Dep. at 54:3-57:25; 103:18-109:15 (Exh. B). Ms. Peyton is the only Anadarko employee knowledgeable about this matter and therefore would be Anadarko's 30(b)(6) representative on these subjects. Since Ms. Peyton would offer the same testimony in response to the same questions, to avoid unnecessary duplication Anadarko is willing to adopt her prior testimony as the testimony of the Company. There is no need to insist that she appear for a second deposition.

Similarly, revised topics 9 and 14 now ask for 30(b)(6) testimony about flow rate analyses during and with respect to BP's Source Control efforts, and Topic 19 seeks testimony about pressure/temperature measurements taken from, and configuration of, the capping stack. These topics involve issues on which Anadarko's designated 30(b)(6) witness on the subject of Anadarko's involvement in Source Control efforts, Robert Quitzau, has already been or could have been deposed during Phase One. Quitzau Dep. at 239:5-241:6; 356:16-357:13; 444:6-25; 478:16-483:6 (Exh. C). Here, again, there is no basis for requiring him to be deposed again on topics within the scope of his prior Rule 30(b)(6) deposition.[2]

Topic 22 now seeks, in part, testimony regarding Anadarko's pre- and post-incident geological and geophysical evaluation of the Macondo reservoir, and presents the same concern because pre-incident geological and geophysical evaluation was covered in detail in the individual and Rule 30(b)(6) deposition of Mr. Paul Chandler. Chandler Dep. at 19:8-20:4; 32:15-33:2; 47:1-7; 58:22-60:10; 73:16-76:22; 113:1-18 (Exh. D). He should not be required to repeat his testimony regarding the pre-incident analyses.

The Court has unambiguously ordered that duplicative depositions are to be avoided: "As a general rule, no witness should be deposed more than once in this proceeding unless the subject matter of the proposed second deposition was declared off limits by the Court during the first deposition or upon a showing of good cause by the party seeking the second deposition. Demonstration of good cause could be, by way of example, the production of highly relevant documents after the deposition."

---

[1] Anadarko does not, for any purpose, concede that the discharge of oil from the *Deepwater Horizon's* riser and BOP properly can be characterized as a "discharge from the Macondo well."

[2] The same issue may also arise with respect to other newly re-formulated topics, such as Topics 2, 18, 21, 24 and 25; as noted above, Anadarko counsel will commence their new round of inquiry expeditiously.

Hon. Sally Shushan
June 19, 2012
Page 4

PTO17 [Rec. Doc. 740] at 9. Consistent with the Court's direction, no other fact witness has been called to testify for a second time as a 30(b)(6) witness to address the same subject matter covered in that witness's fact deposition. There is no good cause for Ms. Peyton, Mr. Quitzau or Mr. Chandler to be the first, second and third to endure such a pointless burden. The PSC and the United States cannot point to any subject that was off limits in their depositions, and no subsequently produced document warrants revisiting their prior testimony. The PSC and the United States should not be permitted to impose upon Ms. Peyton, Mr. Quitzau, Mr. Chandler or any other Anadarko employee for a second, totally unnecessary time.

**There is No Basis for Requiring Anadarko to Testify on Spill Preparedness Issues Which Have No Bearing on Its or Any Other Party's Potential Liability**

Topics 10-13, 15 and 17 seek voluminous information about Anadarko's plans for dealing with uncontrolled releases at sites *other than Macondo*, prior to and after April 20, 2010, including: Anadarko's costs incurred in connection with such planning; equipment, products, and materials reserved, set aside, purchased or constructed for such purposes; and Anadarko's Regional Oil Spill Response Plan. (Topic 16 seeks similar information regarding preparation of a "Worst Case Scenario" for the Macondo Well, but non-operator Anadarko did no such work and has no such information.) The information requested in topics 10-13, 15 and 17 has nothing to do with pre- or post-spill operations on the Macondo site, the subjects of the Phase Two trial, or any other issue in this case. Anadarko should not be required to present testimony on issues that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence, especially in light of the substantial burden of marshaling the Company's information on these topics.

Anadarko's oil spill preparations for non-Macondo sites prior to or after April 20, 2010 are irrelevant to any party's claims or defenses. Judge Barbier has held that because Anadarko had no operational control over the *Deepwater Horizon's* operations, Anadarko owed no duty of care to any of the various plaintiffs and cross-claimants. B1 Order [Rec. Doc. 3830] at 28. All negligence or fault based claims against Anadarko were dismissed, and Anadarko has been excused from the Phase One trial. Because Anadarko is not liable for any other party's actions, including any plans for addressing a release, the information sought by the PSC regarding Anadarko's pre- or post-April 20, 2010 preparedness planning for non-Macondo wells cannot be relevant to any party's claims or defenses.

Hon. Sally Shushan
June 19, 2012
Page 5

The PSC appears to fall back on the recycled rationalization that Anadarko's preparedness planning at non-Macondo sites before and after[3] the *Deepwater Horizon* spill may provide evidence of an "industry standard." The Court already has rejected this precise contention. During Phase One, BP sought discovery into Anadarko's deep water drilling practices, policies and procedures at sites other than Macondo, contending that such evidence was relevant to an "industry standard of care." You carefully considered the parties' arguments and denied the requested discovery – not once, but twice. Order Regarding BP's Motion to Compel Discovery from Anadarko [Rec. Doc. 3921] (Ex. E); Order Denying BP's Motion for Reconsideration [Rec. Doc. 4125] (Ex. F). A reiteration of the same faulty contention provides no basis for the Court to deviate from its prior rulings rejecting the supposed "industry standard" rationale.

\* \* \* \* \*

In sum, there is no good cause whatsoever for subjecting Anadarko employees to a second deposition in contravention of the "one bite at the apple" rule in this case. The PSC also has adduced no basis for subjecting Anadarko to the burden and expense of preparing for and testifying about spill preparedness matters that have no bearing on the case.

As always, thank you for your consideration of these points.

Respectfully submitted,

Warren Anthony Fitch

cc: Liaison and Coordinating Counsel
    Ky E. Kirby, Esq.

Encls.

---

[3] Anadarko's *post*-April 20-22, 2010 oil spill preparedness plans have no relevance even to a supposed "industry standard" rationale. Post-spill oil preparedness plans cannot possibly show the industry standard of care *before* the spill, and to the extent that any such plans were changed following the *Deepwater Horizon* incident, that evidence likely would be inadmissible as a "subsequent remedial measure" under FRE 407.