# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON: IN THE GULF OF MEXICO, on APRIL 20, 2010 | * * * * * | MDL NO. 2179 |
| THIS DOCUMENT RELATES TO: | * * | JUDGE BARBIER |
| ALL CASES | * * | MAG. JUDGE SHUSHAN |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## AGREED 30(b)(6) DEPOSITION NOTICE OF ANADARKO DEFENDANTS

By agreement of Plaintiffs' Liaison Counsel, Defense Liaison Counsel, Coordinating Counsel for the States, Coordinating Counsel for the U.S., and Counsel for Defendants Anadarko Petroleum Corporation ("APC") and Anadarko E&P Company LP ("AE&P"), (collectively the "Anadarko Defendants"), the Anadarko Defendants shall—pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and PRE-TRIAL ORDER No. 17 (as supplemented and amended by PRE-TRIAL ORDER 27)—designate and produce one or more officers, managers, agents, employees, or other representatives of the Anadarko Defendants to discuss the Areas of Inquiry identified below.  The Parties agree that in identifying each of the Areas of Inquiry below they are not seeking to discover privileged or work product information, waiving any applicable privilege or work product claim, or making any representation as to the existence or scope of responsive, non-privileged information with respect to any particular Area of Inquiry.  The times and locations of the depositions will be scheduled in conjunction with the designees' fact

1

depositions in their individual capacities, or otherwise as may be scheduled with Judge Shushan and the parties.

## Areas of Inquiry

1. For any and all attempts after April 20, 2010, to cap, control, contain, shut in, limit flow from, temporarily abandon and/or kill the Macondo Well by each of the following methods and any other method(s) used but not listed here: Actuation of the Deepwater Horizon BOP, Riser Insertion Tube Tool ("RITT"), Top Hat, Top Kill, Junk Shot, Cofferdam, Capping Stack, BOP on BOP strategies, Macondo Relief Well No. 1 and Macondo Relief Well No. 2 (hereinafter, collectively referred to as "Methods"):

    a. The total cost that Anadarko incurred on each attempt and/or Method, including, but not limited to, labor, payments made to contractors or other entities working on Anadarko's behalf, materials, overhead and the cost of removal of any replaced components, parts, equipment, material, and/or supplies;

    b. The process of approval to fund and/or implement Top Kill, Capping Stack, and BOP-on-BOP strategy, including the responsibility and identity of each person involved;

    c. A description of the manner and methodology, including computer models, used to assess each attempt and/or Method;

    d. A description of the explanations and/or justifications for each attempt and/or Method made or prepared for approval within Anadarko;

    e. Dates when planning began for each attempt and/or Method, including the length of time used to plan and budget;

    f. An explanation of and timeline for the steps involved in planning and/or implementing each attempt and/or Method, including both the design of any equipment and the steps involved in the Method; and

    g. The identity of Anadarko employees and contractors who planned, managed, and/or supervised the implementation of each attempt and/or Method.

2. For any and all subsea collection efforts identified in BP's June 9, 2010, June 13, 2010, or June 21, 2010 letters to Rear Admiral James A. Watson that were considered, but not used, to cap, control, contain, shut in, limit flow from, and/or kill the Macondo Well after April 20, 2010:

   a. The total cost anticipated and/or actually incurred to research/investigate the effort including, but not limited to, labor, payments made to contractors or other entities working on Anadarko's behalf, materials, overhead and the cost of removal of any replaced components, parts, equipment, material and/or supplies;

   b. The process of approval to fund and/or implement each attempt and/or Method, including the responsibility and identity of each person involved and the reasons why approval was not given and/or the attempt was not funded or implemented;

   c. A description of the manner and/or methodology, including computer models, used to assess each effort;

   d. Dates when planning or consideration for each such effort began, including the length of time used to plan and budget; and

   e. An explanation of and timeline for the steps involved in planning and/or implementing each effort, including both the design of any equipment and the steps involved in the Method.

3. For any and all attempts between January 1, 2008 and April 20, 2010, to cap, control, contain, shut in, limit flow from, and/or kill a flowing subsea Gulf of Mexico well (with a release equal to or greater than 50 BBOE or where hydrocarbons reached the rig floor) in which Anadarko has either an operational or other interest by any Method listed above or by any other method(s) used but not listed above:

   a. The total cost that Anadarko incurred to complete each attempt and/or Method, including, but not limited to, labor, payments made to contractors or other entities working on Anadarko's behalf, materials, overhead and the cost of removal of any replaced components, parts, equipment, material, and/or supplies;

   b. The process of approval to fund and/or implement each attempt and/or Method, including the responsibility and identity of each person involved.

   c. A description of the manner and methodology, including computer models, used to assess each attempt and/or Method;

   d. A description of the rationale for each attempt and/or Method made or prepared for approval within Anadarko;

   e. Dates when planning began for each attempt and/or Method, including the length of time used to plan and budget;

3

  f.  An explanation of and timeline for the steps involved in planning and/or implementing each attempt and/or Method, including both the design of any equipment and the steps involved in the Method; and

  g.  The identity of Anadarko employees and contractors who planned, managed, and/or supervised the implementation of each attempt and/or Method.

4. The manner, methodology and mode that Anadarko, Anadarko's contractors or any other entity working on Anadarko's behalf, used to predict, estimate, characterize and/or measure the daily amount of discharge from the Macondo Well from:

  a.  April 20, 2010 through July 15, 2010;

  b.  July 16, 2010 through September 19, 2010; and

  c.  September 20, 2010 through the present,

  Including the results of such efforts, the identity of the individuals and groups who undertook such efforts, and a description of the data, observations and assumptions on which such efforts were based.

5. The manner, methodology and mode that Anadarko, Anadarko's contractors or any other entity working on Anadarko's behalf used to predict, estimate, characterize and/or measure the physical or chemical properties of any substance contained in the daily discharge from the Macondo Well, as well as the effects of changes in pressure and/or temperature on the aforementioned physical or chemical properties, including the results of such efforts, the identity of the individuals and groups who undertook such efforts, and a description of the data, observations and assumptions on which such efforts were based.

6. The manner, methodology and mode that Anadarko, Anadarko's contractors or any other entity working on Anadarko's behalf used to predict, estimate, characterize and/or measure pressure depletion of the Macondo M56 hydrocarbon reservoir tapped by the Macondo Well from:

  a.  April 20, 2010 through July 15, 2010;

  b.  July 16, 2010 through September 19, 2010; and

  c.  September 20, 2010 through the present,

  Including the results of such efforts, the identity of the individuals and groups who undertook such efforts, and a description of the data, observations and assumptions on which such efforts were based.

7. The manner, methodology and mode that Anadarko, Anadarko's contractors or any other entity working on Anadarko's behalf used to predict, estimate, characterize and/or measure the pressure inside the Macondo Well (including but not limited to the reservoir pressure), pressures at the BOP, pressures through the capping stack, and pressures at whatever points hydrocarbons were being released into the Gulf of Mexico for every day from:

    a. April 20, 2010 through July 15, 2010;

    b. July 16, 2010 through September 19, 2010; and

    c. September 20, 2010 through the present,

    Including the results of such efforts, the identity of the individuals and groups who undertook such efforts, and a description of the data, observations and assumptions on which such efforts were based.

8. The manner and/or methodology that Anadarko, Anadarko's contractors or any other entity working under Anadarko's direction used to predict, estimate, characterize and/or measure the temperature of the discharge from the Macondo Well, including but not limited to the reservoir temperature, temperatures inside the wellbore, the temperature at the BOP, and the temperature at the point where hydrocarbons were being released into the Gulf of Mexico for every day from:

    a. April 20, 2010 through July 15, 2010;

    b. July 16, 2010 through September 19, 2010; and

    c. September 20, 2010 through the present,

    Including the results of such efforts, the identity of the individuals and groups who undertook such efforts, and a description of the data, observations and assumptions on which such efforts were based.

9. Your efforts (including all communications, modeling, calculations and analysis) undertaken or used in connection with: the flow rate estimate of 1,000 bopd announced by Admiral Landry on April 24, 2010; the flow rate estimate of 5,000 bopd announced by Admiral Landry on April 28, 2010; the flow rate estimate announced by the Flow Rate Technical Group ("FRTG") on or about May 27, 2010 (according to National Commission Staff Working Paper #3); the flow rate estimate announced by the FRTG on or about June 10, 2010 (according to National Commission Staff Working Paper #3); the flow rate estimate announced by the FRTG on or about June 15, 2010 (according to National Commission Staff Working Paper #3).

10. All planning, preparations, discussions, evaluations and/or training with regard to a "Worst Case Scenario" well control / hydrocarbon discharge event, or an uncontrolled release of hydrocarbons subsea into the Gulf of Mexico prior to April 20, 2010.

11. Costs, expenses, or expenditures incurred—including both out-of-pocket costs and/or internal costs—in association with the planning, preparations, discussions, evaluations and/or training for a) a "Worst Case Discharge scenario" well control/hydrocarbon discharge event or b) an uncontrolled subsea release of hydrocarbons into the Gulf of Mexico prior to April 20, 2010.

12. All planning, preparations, discussions, evaluations and/or training for a) a "Worst Case Discharge scenario" well control/hydrocarbon discharge event, or b) an uncontrolled release of hydrocarbons subsea into the Gulf of Mexico after April 20, 2010, excluding the efforts of Anadarko, Anadarko's contractors and/or entities under the direction of Anadarko in the effort to cap, contain, shut-in, limit flow from and/or kill the Macondo Well.

13. Costs, expenses, or expenditures incurred, including both out-of-pocket costs and/or internal costs, associated with the planning, preparations, discussions, evaluations and/or training for a) a "Worst Case Discharge scenario" well control / hydrocarbon discharge event or b) an uncontrolled release of hydrocarbons subsea into the Gulf of Mexico after April 20, 2010, excluding the costs, expenses or expenditures incurred by Anadarko, Anadarko's contractors and/or entities under the direction of Anadarko in the effort to cap, contain, shut-in, limit flow from and/or kill the Macondo Well.

14. The use of any analysis, calculations, assumptions or modeling of the flow rate of hydrocarbons from the Macondo MC252 well undertaken by or on behalf of Anadarko or the Unified Command in connection with the analysis, consideration or execution of any Source Control Method (as that term is defined in Topic 1).

15. All Source Control equipment, products, and/or materials presently identified, reserved, set aside, under construction / development, purchased, and/or developed by, or at the request of, Anadarko for use in a subsea release of hydrocarbons in the Gulf of Mexico.

16. Calculations, models, programs, data, discussion, analyses, and/or communications made, transmitted, announced, drafted, discussed, sent, received, analyzed, reviewed, considered, and/or exchanged both internally and with third parties regarding Anadarko's determination of what the "Worst Case Scenario" was for the Macondo Well.

17. Calculations, models, programs, data, discussion, analyses, and/or communications made, transmitted, announced, drafted, discussed, sent, received, analyzed, reviewed, considered, and/or exchanged both internally and with third

==parties regarding the creation of Anadarko's "Regional Oil Spill Response Plan" as such document pertains to Source Control and the determination of Worst Case Scenario for an exploration well.==

18. All calculations and analyses performed to quantify the amount of oil flowing through the capping stack of the Macondo Well at any time between July 12, 2010 and July 15, 2010, and the identity of all individuals or groups who undertook such efforts.

19. The configuration of the capping stack (including ram position at all times) and all pressure measurements (including calibration measurements) and temperature measurements taken from the capping stack from July 12, 2010 and August 3, 2010.

20. All attempts by Anadarko, Anadarko's contractors and/or any other entity working under the direction of Anadarko, made to measure the pressure and/or temperature of any portion of the Macondo Well or its discharge—either above or below the BOP—between April 20, 2010 and August 3, 2010.

21. All attempts by Anadarko, Anadarko's contractors and/or any other entity working under the direction of Anadarko, made to measure the size of the apertures through which hydrocarbons were being released into the environment at the Macondo Well between April 20, 2010 and August 3, 2010.

22. All efforts by Anadarko, Anadarko's contractors and/or any entity under the direction of Anadarko to predict, calculate, analyze, determine, estimate, model, simulate, and/or interpret (after January 1, 2009) the geophysical or geological characteristics, and (after April 1, 2010) the petrophysical characteristics, of the Macondo M56 reservoir.

23. All efforts by Anadarko, Anadarko's contractors or any other entity working on Anadarko's behalf to calculate, estimate, predict, and/or model the shut-in wellhead pressure of the Macondo Well after April 20, 2010.

24. All analysis, calculations, modeling, or estimates by Anadarko, Anadarko's contractors or any other entity working on Anadarko's behalf relating to the effect of obstructions in the wellbore, the BOP, and/or the riser.

25. All analysis, calculations, modeling, or estimates by Anadarko, Anadarko's contractors, and/or any entity working under the direction of Anadarko, relating to the effect of erosion on the rate of flow from the Macondo well.

This ____ day of _____, 2012.

Respectfully submitted,

_____  _____

Stephen J. Herman, La. Bar No. 23129  James Parkerson Roy, La. Bar No. 11511
Herman Herman Katz & Cotlar LLP  Domengeaux Wright Roy & Edwards LLC
820 O'Keefe Avenue  556 Jefferson Street, Suite 500
New Orleans, Louisiana 70113  Lafayette, Louisiana 70501
Telephone: (504) 581-4892  Telephone: (337) 233-3033
Fax No. (504) 569-6024  Fax No. (337) 233-2796
E-Mail: Sherman@hhkc.com  E-Mail: jimr@wrightroy.com

*Plaintiffs Liaison Counsel*  *Plaintiffs Liaison Counsel*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing Motion will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179.

_____<br>
James Parkerson Roy and Stephen J. Herman