**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| KONG DUONG, NUOI HAN, RAN VAN TRAN | * | |
| DAVID VAN, TAM VU, BAO HUNG, MY T. | * | MDL 2179 |
| TRAN, LUONG XUAN PAHM, KANDY TRAN | * | |
| NHAN NGUYEN, TRUYEN TRAN, HUONG LE | * | |
| QUAN TRAN, HIEP AN CAO, THUAN VAN LE | * | |
| CUC VAN HUYNH, NUOI VAN PHAM, TOM | * | JUDGE BARBIER |
| CONG HUYNH, KHANH HUYNH, TINH | * | |
| NGUYEN, HUY VO, KENT VO, LAN DO, DAI | * | SECTION J |
| LE, KHANH NGUYEN, ANH LY, KINH | * | |
| NGUYEN, DAN DO, LOC VAN NGUYEN, JULIE | * | MAGISTRATE JUDGE |
| THANH NGUYEN, KONG DUONG, THAI TRAN | * | WILKINSON |
| SINH PHAM, SAK DAKARITH, CHAMROEUN | * | |
| DUONG, LIM SENG, CHAMREOEUN KANG, | * | MAG DIV. 2 |
| SIENG SUONG, DRANSON PHAM, DONG | * | |
| NGUYEN, BICH BUI & SU NGUYEN | * | |
| | * | |
| VS. | * | |
| | * | |
| BP AMERICA PRODUCTION COMPANY, BP | * | |
| EXPLORATION AND PRODUCTION, INC., | * | |
| DRC EMERGENCY SERVICES, LLC, & DANOS | * | |
| AND CUROLE MARINE CONTRACTORS, LLC | * | |
| | * | |
| | * | |
| Member Case: Duong et al. v. BP America | * | |
| Production, et al., 12-814 | * | |

* * * * * * * * * * * * * * ** * * * * * * * * * * * * * *

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
"MOTION TO STAY PROCEEDINGS PENDING IMPLEMENTATION OF BP
DEEPWATER HORIZON SETTLEMENT."**

Plaintiffs, a class of Southeast Asian American fishermen residing in the United States Gulf Coast, filed this suit against Defendants, BP America Production Company, BP Exploration and Production, Inc., and their contractors, for violating Section 1891 of the Civil Rights Act of 1866.  The Defendants now move the Court to stay this proceeding by arguing that the Multidistrict District Litigation Settlement Agreement ("Settlement Agreement") also encompasses the Plaintiffs' civil rights claim, and that a claimant who signs a general release under the Settlement Agreement would essentially extinguish his/her race discrimination claim under this lawsuit.

The Defendants' argument cannot be sustained for the following reasons: 1) the subject settlement release does not encompass the Plaintiffs' race discrimination claim; 2) construing the Settlement Agreement to also include the Plaintiffs' claim of race discrimination would violate Plaintiffs' due process rights; 3) construing the subject release to not cover the Plaintiffs' race discrimination claim prevents a lengthy and complicated collateral attack against the MDL's Settlement Agreement;  and 4) the public policy intent behind the Civil Rights Act necessitates the preservation and expeditious rendering of this lawsuit.

## INTRODUCTION

On April 20, 2010, an explosion on the oil vessel *Deepwater Horizon* in the Gulf of Mexico caused the most devastating, unprecedented environmental disaster in the history of the United States.  The explosion caused oil to gush out from the Macondo Well into the Gulf of Mexico destroying marine and coastal environments and created ongoing economic hardship for hundreds of thousands of people along the Gulf Coast.  To contain and clean up the spill, BP initiated the Vessel of Opportunity ("V.o.O.")

Program through which commercial fishermen and others were contracted to assist in the clean up.  On October 19, 2010, this Court entered its Case Management Order No. 1, wherein it directed a Master Complaint to be filed on behalf of the thousands of individuals who were victims of the oil spill seeking damages for physical injuries, costs of future medical screening and monitoring, the implementation of a medical screening and monitoring program and/or property damage resulting from clean-up efforts after the explosion.  The Master Complaint (Document 879) is incorporated by reference as Plaintiffs' Exhibit A. Subsequently, a First Amended Master Complaint was filed further alleging and clarifying the acts of negligence of BP in causing the explosion on the *Deepwater Horizon* and the subsequent oil spill.  The First Amended Master Complaint (Document 1128) is incorporated by reference and attached hereto as Plaintiffs' Exhibit B.  Nowhere in the Master Complaint and the First Amended Master Complaint is the issue of race discrimination alleged.  After the Vessel of Opportunity term ended on November 26, 2010, individuals who contracted to work in the program filed suit against BP and its contractors alleging a breach of contract under the terms of the Master Vessel Charter Agreement.  The Court then ordered that the suits in connection with the V.o.O. Program be consolidated and resolved under the Multidistrict Litigation by the Plaintiff Steering Committee.  A preliminary settlement was reached between BP and the Plaintiffs' Steering Committee for economic and property damage claims in connection with the oil spill on, or about March of 2012.  This lawsuit was then filed independently of the MDL in the US District Court for the Eastern District of Louisiana alleging race discrimination against BP and its contractors in the implementation of the V.o.O. Program.  The Defendants then filed this motion to stay proceedings.

**ARGUMENT**

**A) THE SETTLEMENT AGREEMENT DOES NOT EMCOMPASS RACE DISCRIMINATION.**

Whether or not a stay is appropriate in this situation will turn upon whether the issues incorporated into the MDL's Settlement Agreement and the issues of this case rest upon "substantially similar" claims. The Plaintiffs allege in the instant suit that the Defendants violated Section 1891 of the Civil Rights Act of 1886 in their hiring practices in connection with the Vessel of Opportunity Program. This issue is wholly different from the issue considered in MDL's Settlement Agreement in fact and in law. The Master Complaint filed pursuant to CMO No. 1, and the subsequent First Amended Complaint, only sought damages for victims of the oil spill under the Oil Pollution Act of 1990 and other related maritime tort law. The Vessel of Opportunity lawsuits were filed under a breach of contract theory in connection with the Master Vessel Charter Agreement signed between BP and their contractors and the commercial fishermen. As the title of the Settlement Agreement succinctly conveys, the agreement only addresses issues in connection with economic and property damages as a result of the *Deepwater Horizon* incident. The issue of race discrimination was never litigated, nor was it even contemplated during the negotiation process that produced the MDL's Settlement Agreement. Thus, if the Honorable Court were to review the Settlement Agreement (Document 6430), which the Plaintiffs have incorporated by reference and attached hereto as Plaintiffs' Exhibit C, the Court will see that the words "race discrimination" are nowhere to be found in the entire 1033-page document, nor have the Defendants'

produced an affidavit from anyone who was involved in the negotiation process that produced the MDL's Settlement Agreement alleging that the issue of race discrimination was fully presented, argued, and fully incorporated into the Settlement Agreement. Now the Defendants argue that the Settlement Agreement covers even the Plaintiffs' race discrimination claim! In arguing that the Settlement Agreement also encompasses the Plaintiffs' race discrimination claim, the Defendants try to get rid of these claims through the back door like a thief in the night, and in so doing uproot all notions of what is legal, just, and fair.

While it is true that some courts have stayed cases where the claim of a different ongoing legal proceeding is not identical to the claim before those courts, courts do not grant stays when those claims are substantially different. *Save Power v. Syntek Fin. Corp*, 121 F.3d 947, at 950 (5th.Cir. 1997). In *Save Power v. Syntek*, the Fifth Circuit applied the "substantially similar" test to a 'first to file' case, where the question was whether courts can dismiss, transfer, or stay a case pending the resolution of a similar case that was filed first. *Id.* at 950. Cases "should be more than merely related." *Buckalew v. Celanese*, Ltd., No Civ. A. G-05-315, 2005 WL 2266619, *3 (S.D. Tex. Sept. 16, 2005); *Save Power*, 121 F.3d at 950 (stating that "[t]he crucial inquiry is one of substantial overlap.").

The litany of cases cited by the Defendants **argues against** their own motion as the courts in these cases use the "substantially similar" test to decide whether to stay proceedings. Importantly, in this matter, the facts and law in this case have no similarities to the issues incorporated in the Settlement Agreement. In *Meints v. Regis Corp.*, the District Court of the Southern District of California stayed a new lawsuit for

labor violations because a class action case on nearly identical labor violation claims was pending. 2010 WL 3058300 (S.D. Cal. Aug. 2, 2010) (citing *Nakash v. Marciano*, 882 F.2d 1411, 1416-1417 (9th Cir.1989), the 9th Circuit case that outlines the "substantially similar" test). See *Fitzer v. American Institute of Baking, Inc.*, T 2010 WL 1955974 (S.D. Ga. May 13, 2010) (a stay pending the distribution of a compensation fund for victims of salmonella, the exact cause of action of the plaintiff); *Lindley v. Life Investors Ins. Co. of Amer.*, 2009 WL 3296498 (N.D. Ok. Oct. 9, 2009) (a state claim versus the fairness of an identical nationwide claim); *In re RC2 Corp. Toy Lead Paint Products Liability Litigation*, 2008 WL 548772, at *5 (N.D. Ill. Feb. 20, 2008) (citing similar plaintiffs and similar claims "for breach of warranties, consumer fraud, negligence, etc."); etc. In the case at bar, the Defendants have failed to cite an example where a court stayed a proceeding to await the result of another proceeding on a substantially different claim.

On the other hand, Courts have rejected motions to stay under the "substantially similar" test. See *Holder v. Holder*, 305 F.3d 854 (9th Cir. 2002) (finding the District Court erred in holding that issues raised in "state custody proceedings were substantially similar to the federal Hague Convention proceedings."); *Sadid v. Idaho State Univ.*, 4:11-cv-00103-BLW (D. Idaho March 12, 2012) (dismissing a motion to stay because settlement of an ongoing claim would not resolve a key issue in the new claim; citing, *Intel v. Adv'd Micro Devices*, 12 F.3d 908, 913 (9th Cir. 1993).

Courts have routinely rejected settlements with overly broad releases. See, e.g., *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, at 18-19 (reversing district court's approval of class settlement agreement with over broad release

provision that provided for uncompensated release of unliquidated potato futures contracts that were not encompassed within the class complaint concerning liquidated contracts); *Petruzzi's, Inc. v. Darling-Delaware Co., Inc.,* 880 F. Supp. 292, 299-301 (M.D. Pa. 1995) (rejecting class settlement requiring release of all class members' claims when only one-half of class received any direct economic benefit from agreement); *Apparicio v. Radioshack Corp.,* 2009 WL 1490560, *2 (C.D.Cal. May 21, 2009); *Cf. Vasquez v. Coast Valley Roofing, Inc.,* 670 F.Supp.2d 1114 (E.D.Cal. November 17, 2009) (finding significant in granting preliminary approval of class settlement, "[t]hese released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants."). Some jurisdictions have the principle of closely scrutinizing class settlement terms that are outside the scope of the operative complaint. See *National Super Spuds*, 660 F.2d at 18 ("If a judgment after trial cannot extinguish claims not asserted in the class action complaint, a judgment approving a settlement in such an action should not be able to do so either."); *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460-61 (2nd Cir. 1982) (holding that class action settlement agreement enjoining class members from prosecuting claims that were not part of the class complaint was properly approved by the district court since the released claims arose out of the identical factual predicate as the claims in the complaint); *Trotsky v. Los Angeles Fed. Sav. & Loan Assn.,* 48 Cal.App.3d (1975).

In regards to the matter at hand, the issue of race of discrimination was never alleged in the Master Complaint, the First Amended Master Complaint, or in any V.o.O. related complaints. The words "race discrimination"—or even simple "discrimination"—

are nowhere to be found in the MDL's Settlement Agreement. Thus, any release signed under the Settlement Agreement cannot encompass the claim of race discrimination. Pursuant to the above cited jurisprudence, if a claimant in this case were to sign a general release under the Settlement Agreement, he/she would only relinquish claims that are part of the Settlement Agreement, not claims that are outside its reach.

## B) TO DO WHAT THE DEFENDANTS REQUEST WOULD VIOLATE DUE PROCESS.

The Defendants argue that if Plaintiffs sign the Settlement Agreement's release, which seeks to cover "all claims arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident", Plaintiffs cannot pursue their claims under the Civil Rights Act of 1866, which bars racially discriminative practices in hiring and contracting. If this Honorable Court were to accept the Defendants' argument, then an issue arises: whether the Plaintiffs in this proceeding were afforded the due process of law guaranteed by the U.S. Constitution. The notion that the individual litigant possesses a constitutional right to his day in court before his rights may be judicially altered has long served as a guide for the shaping of modern procedure. The concept "due process of law" has been understood as "[a]n orderly proceeding wherein a person is served with notice, actual or constructive, and has an opportunity to be heard and to enforce and protect his rights before a court having power to hear and determine the case." *Kazubowshi v. Kazubowski,* 45 Ill.2d 405, 259, N.E.2d 282 290; *Black's Law Dictionary,* 6th Edition, 500. As mentioned above, the issue in this proceeding was not considered or even known about by the parties that negotiated the MDL Settlement Agreement. The facts and law in this case differ greatly from the issues incorporated in

the Settlement Agreement, which are mostly medical or economic losses stemming from the Defendants' negligence, recklessness, or breach of contract. The issue of discrimination surrounding this lawsuit has not been heard by this Honorable Court, the facts have not been presented, and an agreement has not been discussed. The Defendants, in their motion to stay proceedings, simply assert that the general release signed by the claimants under the Settlement Agreement extinguishes the claimants' race discrimination claim without presenting any evidence showing that the discrimination issue was addressed by this Court and incorporated into the Settlement Agreement.

In violation of due process of law, the Defendants are attempting to use the Settlement Agreement to release them from every claim they can imagine, along with claims the Defendants did not imagine when the settlement agreement was drafted. If the Defendants were given their way, any lawsuit asserted against BP that included the words oil spill and gulf coast would be barred by the settlement. Defendant's overly broad construction of the Settlement Agreement is unreasonable, unsubstantiated by legal precedence, and violates due process of law guaranteed by the US Constitution.

### C) CONSTRUING THE SETTLEMENT AGREEMENT TO NOT COVER RACE DISCRIMINATION PREVENTS A LENGTHY COLLATERAL ATTACK.

Defendants argue that staying the proceeding is judicially economical. However, if the Court were to construe the Settlement Agreement to cover the Plaintiffs' race discrimination claim, then Plaintiffs must collaterally challenge the Settlement Agreement and further tax the judiciary. Plaintiffs have a due process right to have a Court litigate their discrimination lawsuit. To enforce this right, Plaintiffs must collaterally challenge the Settlement Agreement, asserting that it does not address the

Plaintiffs' race discrimination claim on two grounds: adequacy of representation and failure to provide notice.

As a matter of due process, named plaintiffs in the prior action must have adequately represented absent class members. See *Hansberry v. Lee*, 311 U.S. 32 (1940); *Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997). Inadequate representation can occur when class representatives fail to assert, or lack standing to assert, claims possessed by other members of the putative class. *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 339 (S.D.N.Y. 2002) ("Plaintiffs fail to cite, and this Court cannot find, any authority for the proposition that absent class members with personal injury or property claims can be adequately represented by class representatives seeking only injunctive relief.") *see also Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 550–51 (D. Minn.1999); *In re Teflon Prods. Liab. Litig.*, 254 F.R.D. 354, 366–68 (S.D. Iowa 2008); *Feinstein v. Firestone Tire &Rubber Co.*, 535 F. Supp. 595, 606–07 (S.D.N.Y. 1982); *Pearl v. Allied Corp.*, 102 F.R.D. 921, 922–24 (E.D. Pa. 1984); *Krueger v. Wyeth, Inc.*, No. 03CV2496 JLS, 2008 WL 481956, *2–4 (S.D. Cal. Feb. 19, 2008); *Small v. Lorillard Tobacco Co., Inc.*, 252 A.D.2d 1, 11–12 (N.Y. App. Div. 1998).

As for notice, settlement notices must "fairly apprise the prospective class members of the terms of the proposed settlement and of the options that are open to them in connection with proceedings." *Grunun v. International House of Pancakes*, 513 F. 2d 114, 122 (8th Cir. 1975). The Supreme Court's decision in *Mullane v. Central Hanover Bank & Trust* has been interpreted to require that the class members be provided notice of the types of claims that are being settled. *Twigg v. Sears, Roebuck & Co* 153 F.3d 1222 (11th Cir. 1998) (invalidating a class action settlement's notice because "[t]he notices do

not alert a reader that the prior action included claims by Sears customers based upon being billed for services that Sears never performed." )

The Plaintiffs, here, can make a strong collateral challenge on both representation and notice grounds. It is unlikely that the negotiating parties discussed, considered, or even knew about a possible race discrimination claim. The MDL's original complaint never mentioned race discrimination. The Defendants have not provided any evidence that the negotiating parties to the Settlement Agreement considered, or even knew about a possible discrimination claim. The negotiating parties cannot claim to have provided notice for a claim they did not even know existed nor can they reasonably assert that they adequately represented those claimants.

If the Court were to accept the Defendants' request, then the Court essentially rules that the issue of race discrimination has been settled when it is not, and the Plaintiffs would be deprived of their constitutional right to a day in court, which is a violation of the constitutional mandate of this great nation.

### D)  THE PUBLIC POLICY UNDERLYING THE 1866 CIVIL RIGHTS ACT DEMAND THAT THE COURT RULE THAT THE SETTLEMENT AGREEMENT DOES NOT COVER THIS MATTER OR DENY DEFENDANTS' MOTION TO STAY

Even if this Court rules that the Settlement Agreement covers this matter, the Court should overrule Defendants' motion to stay because staying this proceeding will cause a financial burden for the Plaintiffs.  If this Court grants the motion to stay, Plaintiffs will face two choices. The first choice is for Plaintiffs to opt into the Settlement Agreement and lose their race discrimination claim. The second is for Plaintiffs to opt out and wait indefinitely until this stay can be lifted.  However, many Plaintiffs object to any

further delay because the Oil Spill has put them under intense financial strain. In the end, some Plaintiffs will have no choice but to opt back into the Settlement Agreement and lose their race discrimination claim without any proper legal consideration.

The Defendants cited the sentence in *Landis's* giving this Court the discretion to grant a motion to stay for the sake of judicial economy, but failing to cite the next sentences where Landis's limit that discretion. *Landis v. North American Co.*, 299 U.S. 248, 256 ("True, the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."); *Dise v.Express Marine, Inc.*, No. 08-1227, 2008 WL 2163920, at *3 (S.D. Ala. May 19, 2008) (a court may consider the prudential advantages of a stay, "but must also examine the relative prejudice and hardship worked on each party if a stay is or is not granted.").

Public policies underlying the Civil Rights Act of 1866 are in favor of a ruling that the Settlement Agreement does not cover race discrimination claims and for the swift continuation of this matter. Courts must consider public policy when scrutinizing class settlements that have private/public concerns. See *Brooklyn Sav. Bank v. O'Neill*, 324 U.S. 697, 706-707 (1945) (finding that private waivers of FLSA would "thwart the legislative policy [FLSA] was designed to effectuate"); *United States v. City of Alexandria*, 614 F.2d 1358, 1362 (5th Cir. 1980) (noting judicial duty to ensure class action settlement agreements are neither illegal nor contrary to public policy). When discrimination is involved, proponents of the class settlement bear the burden of proving

that the settlement represents a fair and reasonable resolution of class members' discrimination claims. See, e.g., *In re General Motors Corp. Pick-Up Fuel Tank Products Liability Litigation*, 55 F.3d 768, 785 (3rd Cir. 1995), cert. denied, 516 U.S. 824 (1995); *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983). In the case at bar, the Defendants fail to meet their burden.

Congress enacted the Civil Rights Act of 1866 to redress the badges and incidents of slavery. *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409 (1968). The Act's intent is not only to punish race discriminatory practices in hiring and contracting, but also to bring such practices into the public sphere. Here, the Defendants' intention is apparent. The MDL's complaint and the Settlement Agreement do not even hint at settling Plaintiffs' race discrimination claim. The Defendants obviously want the general release under the MDL Settlement Agreement to cover the Plaintiffs race discrimination claim, and hope that every single Plaintiff signs the Settlement Agreement. The intended result is that, in public, Defendants alleged discriminatory acts are hidden or minimized. Obscuring, minimizing, or delaying an answer to racism would go against Congressional intent.

## CONCLUSION

Plaintiffs recognize the scandalous nature behind an allegation of race discrimination. If Defendants were not liable, then Defendants would also benefit from a swift adjudication of this matter. What the Court should not allow is for Defendants is to obscure or minimize this serious issue of discrimination; to pressure Plaintiffs into never bringing forth their race discrimination claim by tying their hands; to sign away their rights without due process of law; or to delay matters so that the Defendants' acts appear

to have happened in the distant past. Public policy dictates a swift, open, and honest adjudication of a charge of racism.

Justice and precedence dictate that this Court must deny the Defendants' motion to stay, and issue a ruling that any release signed under the MDL Settlement Agreement does not affect the Plaintiffs' discrimination claim.

RESPECTFULLY SUBMITTED:

s:\Ryan Beasley
Ryan E. Beasley, Esq.
Bar No: 24079939
2439 Manhattan Blvd., Suite 302
Harvey, LA 70058
T: 504-367-5001
F: 504-684-1231
ryan@rbeasleylaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing response has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court of the Eastern District of Louisiana by using the CM/ECF System, which will send notice in accordance with the procedures established in MDL 2179, on this 21st day of June, 2012

s:\Ryan Beasley
Ryan Beasley, Esq.