

**U.S. Department of Justice**

Environment and Natural Resource Division

---

*P.O. Box 7611*
*Washington, DC 20044*
*202-616-7915*
*Jeffrey.Prieto@usdoj.gov*

June 25, 2012

**BY ELECTRONIC MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
Eastern District of Louisiana
Hale Boggs Federal Building
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

      Re:    MDL 2179: United States' Reply Brief Regarding BP's Proposal to Take Six
                Additional Non-party 30(b)(6) Depositions

Dear Judge Shushan:

      We are writing to respond to BP's Brief in Opposition relating to BP's proposed six additional non-party 30(b)(6) deposition notices, consisting of three to Universities employing faculty members whom served on the National Incident Command's Flow Rate Technical Group ("FRTG") and three to reservoir engineering firms that participated on the FRTG Reservoir Modeling team.

      Although BP argues that the sole question is whether the subpoenas properly seek relevant information, *see* June 22, 2012 BP Br. at 3, the primary issue before the Court is its inherent power to establish case management limits and manage discovery. BP's proposal should be denied because the proposed non-party 30(b)(6) notices are an obvious attempt to circumvent the Court's limit on individual fact depositions established in its September 8, 2011 Working Group Order [Rec. Doc. 3949].[1] BP listed Professors Lasheras, Wereley, Leifer, Kelkar, and Hughes for *personal* depositions on its Phase 2 proposed witness lists, but, tellingly, did not list 30(b)(6) depositions of any of the newly proposed Universities or entities.

---

[1] While BP's brief questions the United States' ability to raise issues on this matter, BP does not offer any authority prohibiting the Court from enforcing its own Case Management Order.

BP's proposal should also fail because it seeks to depose Universities even though those Universities were not engaged by the United States to conduct flow rate estimates. For these reasons alone, the Court should deny BP's attempt to take the additional non-party 30(b)(6) depositions.

**BP's Proposal to Serve 30(b)(6) Depositions is Simply an Attempt to Circumvent this Court's Limit on Individual Fact Witnesses**

BP seeks to recast the issue of whether it is using the additional non-party 30(b)(6) depositions to circumvent the Court's limit on individual fact witnesses by asserting the Universities are proper entities with knowledge. For example, BP states the Universities in question are the proper entities because BP is interested more broadly in Deepwater Horizon-related work done by *anyone* associated with the University. *See* June 22, 2012 BP Br. at 6 (emphasis in original). BP's own proposed notices contradict this claim. The "Definitions" section seeks information relating to work that only the professors contributed to, namely FRTG reports. See, e.g., United States Attachment C (Proposed 30(b)(6) Notice of University of California, Santa Barbara).

BP then makes the spurious argument that Universities are the proper entities because they were named in the "Acknowledgement" section of the FRTG report. *See* June 22, 2012 BP Br. at 6. This argument fails when one actually reads the FRTG Report's Acknowledgement section. The FRTG Report recognizes participating "academic researchers" and then names their affiliated Universities. *See* Mar. 10, 2011 *Assessment of Flow Rate Estimates for the Deepwater Horizon/Macondo Well Oil Spill* [Rec. Doc. 6104 at p. 18]. This type of recognition does not justify an affiliated University being subject to a non-party 30(b)(6) deposition.

BP also maintains that while it may have indicated a desire to depose various researchers working with the FRTG in their personal capacity, it should not be precluded from "properly" issuing 30(b)(6) notices to the Universities. *See* June 22, 2012 BP Br. at 6. We simply note that notices are not properly issued if the Court finds that they circumvent case management limits.

Finally, BP's argument that the Universities are the proper entities with knowledge is contradicted by BP own statements in other portions of its brief. For example, BP states that the proposed subpoenas are tailored to elicit testimony on how the United States arrived at its flow rate estimates. *See* June 22, 2012 BP Br. at 6. What BP fails to mention is that the United States did not contact or engage the Universities to prepare flow rate estimates. As stated previously, a 30(b)(6) designee does not give "personal opinions" of individuals but rather presents an entity's "position" on the topics in the notice. *See Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). Because the United States did not work with Universities on flow rate estimates, the Universities developed no official position on the matter.

BP clearly seeks the professors' personal opinions of the work they performed, not the Universities' positions of this work, none of which was conducted as part of the business of the University. The proper way for BP to obtain the information it seeks, i.e., the personal knowledge of individual professors, is through personal depositions (with leave of the Court, of course) (Rec. Doc. 3949). *See Gossar v. Soo Line R.R. Co.*, 2009 U.S. Dist. LEXIS 100931, at

\*16-17 (D. Kan. 1996) (holding in part that a 30(b)(6) motion to obtain crew members' observations of an accident was not the "proper or efficient manner for obtaining this information," and that the crew members should instead be deposed and that "requiring a corporate representative to testify as to this information would be unduly duplicative.").

BP should not be allowed to use the 30(b)(6) process to get the professors in question to testify about their personal knowledge. BP has provided no evidence besides an Acknowledgment page reference recognizing the professors' place of employment that the Universities would have any position on the FRTG Report.

**BP's Additional Non-party 30(b)(6) Deposition Notices are Duplicative**

BP maintains that the proposed non-party 30(b)(6) notices are not duplicative due to the centrality of the Universities and entities' participation to the United States' work, thus requiring discovery from both the United States and the Universities and entities. *See* June 22, 2012 BP Br. at 6. As noted previously, topics 44-47 and 49-51 of BP's 30(b)(6) notice to the United States call for extensive information regarding the FRTG and its analyses, including the methods, calculations, analyses, estimates, factors, data and assumptions considered or employed by the FRTG generally and the Plume and Reservoir sub-teams specifically. A comparison of the 30(b)(6) notice sent to the United States and the proposed notices to the non-parties demonstrates that the FRTG-related work of the professors that BP is seeking is covered by the notice to the United States. *See* Attachment A. To the extent that BP's proposed notice seeks additional, non-FRTG-related information, such information would be strictly within the individual researcher's personal knowledge. A fact deposition is the appropriate vehicle for obtaining this information.

**BP's Additional Non-party 30(b)(6) Deposition Notices are Untimely**

BP maintains that the proposed non-party depositions are timely because of unsuccessful efforts to secure document productions without subpoenas from the professors in question. *See* June 22, 2012 BP Br. at 4. As stated previously, the United States has made a good faith effort to collect documents from the individual FRTG members whose work is covered by these proposed notices. The United States does not necessarily oppose the document production portion of the proposed subpoenas so long as those requests are narrowly tailored and directed only at persons or entities for which document productions were less than complete.[2] However, ongoing document production challenges relating to individuals should not be used as a justification for non-party 30(b)(6) depositions.

BP also observes that the United States' objections to timing are in contrast to the United States' proposed depositions of Intertek, Isotech, and World Oilfield Machine, Inc ("WOM"). *See* June 22, 2012 BP Br. at 4-5. The United States previously provided an explanation as to why the situations are inapposite. *See* June 18, 2012 United States Br. at 3-4. It should be noted again that BP's inclusion of isolated references to Intertek, Isotech and WOM appearing in Phase I

---

[2] The United States preserves its right to claw back documents as privileged and that a reasonable time frame is provided.

documents,[3] is in marked contrast to BP's demonstrated awareness of the professors and their work when the FRTG's final report was released on March 10, 2011, s*ee* Mar. 10, 2011 *Assessment of Flow Rate Estimates for the Deepwater Horizon/Macondo Well Oil Spill* [Rec. Doc. 6104], and BP's full knowledge of the involvement of Professors Lasheras, Wereley, and Leifer on May 27, 2010 (http://www.doi.gov/news/pressreleases/Flow-Rate-Group-Provides-Preliminary-Best-Estimate-Of-Oil-Flowing-from-BP-Oil-Well.cfm).  This again begs the question of why BP did not include these proposed 30(b)(6) depositions on any of its proposed deposition lists.  The answer is simple.  BP believed that the proper way to obtain the information it was seeking was through personal depositions, not 30(b)(6) depositions.

**Conclusion**

In light of the above arguments, the United Sates respectfully requests that the Court deny BP's proposal to take the six additional non-party 30(b)(6) depositions.  Allowing the depositions undermines the Court's case management efforts and involves Universities which were not contacted or engaged by the United States to conduct flow rate estimates.  Beyond the harm to the schedule set by this Court, allowing the depositions BP seeks sends a message to academics in the aftermath of future tragedies: that both they and their Universities will be forced to engage in time-consuming discovery.  In the future, the academics who would have volunteered may pass, or may be forced to do so by their Universities, hindering the United States response.

Respectfully submitted,

| /s/ Jeffrey M. Prieto | /s/ Judy B. Harvey |
|---|---|
| Jeffrey M. Prieto | Judy B. Harvey |

cc: Liaison & Coordinating Counsel
    Robert Gasaway

---

[3] Certainly, the Court did not expect or desire the United States to issue a 30(b)(6) notice to every non-party whose name appeared in a Phase 1 document.