

**U.S. Department of Justice**

Environment and Natural Resource Division

---

P.O. Box 7415
Washington, DC 20044
judith.harvey@usdoj.gov

June 21, 2012

**BY ELECTRONIC MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
  Eastern District of Louisiana
Hale Boggs Federal Building
United States Courthouse
500 Poydras Street, Room B-345
New Orleans, LA 70130

    Re:    MDL 2179: United States' Brief Regarding Anadarko's Objections to its Phase Two Rule 30(b)(6) Deposition Notice

Dear Judge Shushan:

    Anadarko asserts that it should be exempt from designating a witness for certain Phase Two topics because (1) an Anadarko deponent already testified on similar subjects as part of Phase One, or (2) Anadarko purports to have no information on the topic. Anadarko's arguments should be rejected because, at the time of the Phase One depositions, the United States had not received responses to its Phase Two interrogatories and document requests of Anadarko and other parties, including BP. In addition, the limited Phase One testimony of individual Anadarko employees and contractors on source control and quantification issues is not a substitute for a corporate designee on the specific and detailed 30(b)(6) topics requested in the Phase Two notice. Finally, because Anadarko has already agreed to designate a witness for at least some of the topics included in the notice, it cannot claim it would be unduly burdened to prepare a witness on the remaining topics for which it states it does not have any information.

    In its attempt to limit the scope of discovery, Anadarko suggests at the outset that, as BP's non-operating partner, it possesses only a small amount of information regarding the quantification and source control issues to be addressed in Phase Two. Anadarko's role in the response – while limited when viewed in comparison to BP's more extensive involvement – is far from non-existent. Indeed, Anadarko provided the services of its contractor, Mr. Robert Quitzau, who worked full-time on the response from the beginning of May until mid-September 2010 as an integral member of the teams working on the junk shot, top kill, hydrostatic kill, and relief wells. *See* Quitzau Dep. at 234:22-237:11; 258:12-266:22 (Attachment A). At least five

other Anadarko employees who were not deposed in the Phase One proceedings contributed to response-related subsea and BOP efforts, at least one of whom worked on the Q4000 vessel positioned above the Macondo Well. *See* Hollek Dep. at 216:1-217:14 (Attachment B); Quitzau Dep. at 227:9-232:6 (Attachment A). In light of its employees' and contractor's personal involvement in response operations, Anadarko may well be aware of important information relevant to the Phase Two proceedings that was not disclosed during the Phase One depositions.

**Anadarko Should Not Be Exempt From Preparing Witnesses When It Did Not Respond to the United States' Phase Two Document Requests Until After the Phase One Depositions**

Anadarko objects to a number of topics, including Topics 4.a, 9, 14, arguing that an Anadarko witness previously testified on the same subject matter as part of the Phase One depositions and should not be deposed again. However, at the time of Mr. Quitzau's and Ms. Peyton's depositions, on May 25-26 and September 8, 2011, respectively, the United States had not yet obtained responses to its first Phase Two interrogatories and document requests of Anadarko, BP, and other parties. Indeed, the United States, like other parties, did not make its Phase Two document requests until late summer 2011. *See* U.S. Phase II First Set of Interrogatories and First Set of Requests for Production to BP (Aug. 18, 2011) (Attachment C); Joint Phase II First Set of Interrogatories and First Set of Requests for Production to Anadarko Petroleum Corporation and Anadarko E&P Company LP (Sept. 29, 2011) (Attachment D).

Of particular relevance to this dispute, the United States' September 29, 2011 request to Anadarko included a request for documents related to Ms. Peyton's deposition testimony regarding post-incident flow rate calculations that are a subject of Topic 4.a. Subsequently, during the meet-and-confer process, the United States amended its request to specifically seek:

> [A]ny and all documents relating to tests, studies, reports, charts, evaluations, estimates, technical notes and technical memorandums relating to the Macondo Well prepared by Anadarko Petroleum Corporation employee Dawn Peyton, including any reports using the Prosper and/or Nexus Computer Modeling Programs and the calculations referenced in the Anadarko Petroleum Corporation Interoffice Memorandum from Dawn Peyton to Alan O'Donnell. See, ANA-MDL-000261741.

*See* Letter to K. Kirby from J. Prieto dated May 18, 2012 (Attachment E). In May 2012, Anadarko agreed to provide any responsive documents to this and other Phase Two requests by June 15, 2012. On that date, the United States received a large production from Anadarko, consisting of *over 120,000 pages* of documents, which are currently being uploaded into our system for review. *See* Letter from C. Delgado to S. Herman and S. Himmelhoch dated June 15, 2012 (Attachment F). The United States has also received significant and detailed document production from BP relevant to specific source control attempts, including extensive models, estimates and predictions, that it did not have during the Anadarko Phase One depositions. *See*

BP-HZN-2179MDL05863070 (Attachment G).[1]  Now that it has the parties' responses to its Phase Two document requests, the United States should be allowed to take a deposition to learn the full extent of Anadarko's participation in and its knowledge of facts related to the attempts to stem and quantify the flow of oil from the Macondo Well.

**Anadarko Has Not Demonstrated That it Should Be Treated Any Differently From Other Parties Who Have Agreed to Prepare Witnesses for Phase Two Deposition Topics**

Anadarko's attempt to limit its involvement in the Phase Two deposition process by providing stipulations in lieu of live depositions also should be rejected.  Anadarko fails to give any compelling reason as to why it should be treated differently from the other parties who have agreed to prepare Rule 30(b)(6) witnesses on Phase Two topics despite also providing witnesses in Phase One who responded to questions regarding source control and quantification.[2]

Anadarko's reference to language in PTO #17 as a justification for not preparing witnesses on certain Phase Two topics is unpersuasive.  The Court's order states that, with certain exceptions, "[a]s a general rule, *no witness* should be deposed more than once in this proceeding." (emphasis added).  Here, the plaintiffs do not seek the re-deposition of any single individual to obtain his or her personal knowledge.  Rather, through the 30(b)(6) process, the United States is seeking to obtain, from whomever Anadarko selects as its designee, the company's collective knowledge on the specific Phase Two topics noticed.  *See Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) ("[A] rule 30(b)(6) designee does not give his personal opinions . . . . When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition.").

While Mr. Quitzau did provide testimony on behalf of Anadarko as to the general nature of his and others' involvement in the source control efforts in May 2011, Anadarko was not at that time required to prepare Mr. Quitzau as to the specific Phase Two topics now noticed by the plaintiffs, including those source control topics that also have bearing on the quantification issue. *See Spicer v. Universal Forest Prods., Eastern Div., Inc.*, No. 7:07cv462, 2008 WL 4455854, at *4 (W.D. Va. Oct. 1, 2008) (finding that the 30(b)(6) topics at issue were not unreasonably cumulative or duplicative because they were not "addressed with any specificity elsewhere").

---

[1] This document is an email chain dated May 17, 2010 with the subject "Formation/Wellhead pressure response during a rate diversion kill," and includes as recipients Mr. Quitzau of Anadarko and BP personnel.  The document was produced by BP in January 2012; as of June 21, 2012, we have not yet located the document in Anadarko's productions.

[2] By way of example, BP has agreed to put forth witnesses on the extensive number of 30(b)(6) topics requested by the plaintiffs notwithstanding the fact that many BP witnesses also testified during Phase One on subjects related to source control and quantification, including Richard Lynch, Paul Tooms, Walt Bozeman, Dave Rainey, Tony Emmerson, Gordon Birrell, Jay Thorseth, Doug Suttles, James Dupree, and Andrew Frazelle.

For example, the Phase Two deposition notice to Anadarko seeks detailed information about the configuration of the capping stack (Topic 19), attempts to measure the pressure and/or temperature of the well (Topic 20), and efforts to estimate, predict or model the shut-in pressure of the well (Topic 23). Accordingly, notwithstanding Mr. Quitzau's prior testimony, Anadarko should put up a witness to testify as to the full extent of the company's knowledge on these more detailed topics.

With respect to Ms. Peyton, when she testified in September 2011, she testified entirely in her individual capacity. The fact that a party has already taken depositions of individuals does not insulate a corporation from producing corporate representatives to give Rule 30(b)(6) depositions on the same topics. *See Landmark Screens, LLC v. Morgan, Lewis Bockius LLP*, No. C08-02581, 2010 WL 3221859, at *2 (N.D. Cal. Aug. 13, 2010). Anadarko's proposal to now adopt Ms. Peyton's testimony as the testimony of the company is wholly inadequate, particularly given the United States' later Phase Two request for documents related to her work on flow rate (discussed *supra*) as well as the fact that the other deposing parties were not on notice that her testimony would preclude further inquiry into subject areas that she testified about in Phase One.

Finally, in support of its argument for providing stipulations prepared by counsel instead of a 30(b)(6) designee, Anadarko argues that producing a witness to state that the company has no information on these topics "would be a pointless and wasteful exercise." On the contrary, a deposition would provide the United States the opportunity to question the designee on the extent of his or her preparation regarding the topic, thereby allowing the United States to evaluate whether the company conducted a sufficient investigation in concluding that it had no information on the topic. Moreover, given that Anadarko has agreed to provide a witness on several of the topics already, it does not appear to be significantly more burdensome to prepare a witness on the topics for which Anadarko claims not to have any information.

**Conclusion**

In sum, given Anadarko's demonstrated involvement in the response and relief efforts, it should prepare a designee as to the particular 30(b)(6) deposition topics now that the United States has the benefit of Phase Two document productions. The limited testimony of individual Anadarko contractors and employees on source control and quantification issues in Phase One is not a substitute for a corporate designee to speak on behalf of the company on the more specific and detailed 30(b)(6) topics requested in the Phase Two notice.

Respectfully submitted,

/s/ Judy B. Harvey

Encls.

cc:   Liaison & Coordinating Counsel
      Anthony Fitch