

**U.S. Department of Justice**

Environment and Natural Resource Division

---

*P.O. Box 761*
*Washington, DC 20044*
*202-514-0180*
*Sarah.Himmelhoch@usdoj.gov*

June 26, 2012

**BY ELECTRONIC MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
 Eastern District of Louisiana
Hale Boggs Federal Building
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

      Re:    MDL No. 2179 — BP's Schedule 1 Challenges to the United States' Non-
              Deliberative Process Privilege Claims

Dear Judge Shushan:

      The United States has produced over 15 million documents in this litigation and currently asserts the attorney work product protection over only approximately 5,868 documents. Of these documents, approximately three hundred relate to Phase II.[1] BP has challenged the United States' assertion of this privilege as to a single category of documents and has also challenged the United States' decisions as to whether attorney-client privileged communications must be logged pursuant to PTO 14. Neither category of challenge can withstand scrutiny, as can be readily determined by the requested *in camera* review of the specified documents.

---

[1] The numbers presented in this paragraph are based upon the United States' most recent consolidated privilege log. Since that time, the United States has provided some additional small privilege logs but has also released a large number of documents from its privilege claims. The United States is engaged in a review of its privilege claims to (a) determine whether the document will continue to be withheld as privileged and (b) if so, to what phase of the litigation is the document relevant. The aggressive schedule for completing this review requires completion by July 2, 2012, and therefore the United States' privilege claims may decrease further in number after this letter is filed.

**Communications with FRTG Members**

BP's claim that the United States has over-withheld documents relating to the work of the FRTG (BP Letter at 4) is belied by a simple examination of the United States' privilege claims as of this date. Of the work product claims, only sixty-seven entries on the United States' logs related to documents to, from, or authored by a member of the FRTG. Such a limited number of claims can hardly be called "overly aggressive" in a production of over 15 million documents.

BP's specific challenges are premised on a fallacy that must be addressed. Specifically, BP argues that United States has opposed the Rule 30(b)(6) depositions of these individuals and therefore is precluded from asserting privilege over communications with them. To the contrary, the United States' position with respect to the depositions is built on the same foundation as its privilege claims: these individuals were working at the direction of the United States and their work is part and parcel of the FRTG work being conducted as part of the response. For these reasons, a Rule 30(b)(6) deposition of the United States on the work of the FRTG will capture the work of these individuals, making separate depositions of them unnecessary and duplicative. For the same reasons, the assertion of appropriate privileges as to communications with these individuals is proper. In other words, for purposes of responding to discovery, in both instances the United States seeks to marry itself to these individuals and in neither instance does it seek a divorce.

To the extent that BP seeks to suggest that the United States is not entitled to confidential communications with FRTG members, such an argument goes too far. It is premised on the notion that these individuals were "third parties." Importantly, several members of the FRTG were in fact full-time federal employees, including Marcia K. McNutt, Bill Lehr, Pedro Espina, Franklin Shaffer, and Antonio Possolo.

It is true that several FRTG members were uncompensated volunteers or individuals who were paid relatively nominal sums after they completed their work. Nonetheless, these individuals were consultants for the United States and the law is clear that work product protection extends to work performed by consultants. *See, e.g., Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1261 (3d Cir. 1993).[2] In the case of the FRTG members on the

---

[2] So too, does the deliberative process privilege extend to work of consultants. *See Ryan v. U.S. Dept. of Justice*, 617 F.2d 781, 790 (D.C. Cir. 1980) (deliberative process privilege applies to memoranda created outside of the executive branch, *e.g.*, by a consultant, so long as preparation was in response to an initiative from the executive branch); *Brush Wellman, Inc. v. Dept. of Labor*, 500 F. Supp. 519, 522 (N.D. Ohio 1980) (documents prepared by outside consultants over which Department of Labor asserted privilege were intra-agency memoranda and protected by the privilege); *Soucie v. David*, 448 F.2d 1067, 1078 n. 44 (D.C. Cir. 1971) (where the government has special need for opinion and recommendation of outside experts and temporary consultants, deliberative process privilege can apply because "those individual should be able to give their judgments freely without fear of publicity"); *Wu v. National Endowment for the*

challenged emails, these individuals were working at the direction of the United States and were advised they were to treat the challenged communications as confidential. Accordingly, the United States has not waived the protection for its litigation preparation.[3]

The remainder of BP's challenge to the assertion of work product over the select few documents is premised on a misunderstanding of the documents. Except where it would reveal privilege or otherwise be inappropriate, on its privilege logs the United States described a withheld email as an "email re [subject line of email]." For this reason, the documents BP challenges are described as "Email[s] re PNAs Format for Papers", "Email re PNAS Image Velocimetry Draft," and "Email re In Light of Your Popularity" because those are the subject lines assigned to the emails by the authors. As the requested *in camera* review will reveal, the withheld documents are not discussions of "the format for work to be published" as BP theorizes, but are, as the United States sets forth in its privilege log, discussions of requests made by counsel for the United States as part of their work to prepare for this litigation. As such, these communications are properly withheld as attorney work product.

Notably, the United States has produced redacted versions of the email chains relating to the PNAS that reveal the non-work product portions of the emails. The non-privileged versions of these documents are contained in Attachment 1.[4]

A review of the withheld documents will show that the United States has withheld an extremely limited number of communications with the FRTG that are legitimately protected by the work product protection and attorney client privilege. Accordingly, after *in camera* review of the documents contained in Attachment 2, the United States requests the Court uphold its privilege claims.

**United States' Logging Practices**

BP's final complaint is that the United States may be improperly excluding certain attorney-client communication from its privilege logs pursuant to PTO 14. As the Court will recall, the December 2, 2011 Working Group Conference Order provides:

For privilege logs prepared after December 2, 2011, all parties, including the U.S.,

---

*Humanities*, 460 F.2d 1030, 1031-33 (5th Cir. 1972) (evaluative reports prepared by outside specialists are protected by the privilege, even though the specialists were not employees of the agency asserting the privilege).

[3] In its argument, BP makes the irrelevant and blanket claim that "disclosure of attorney work product to third parties does not waive the protection." BP Letter at 4. As set forth more fully in Mr. Cernich's letter to you challenging BP's privilege assertions, some disclosures to third parties do in fact waive the work product protection – for instance, a voluntary transfer of BP's work product to the United States outside this litigation would waive the work product protection since the United States is an adverse party to BP and the provisions of PTO 14 would not apply.

[4] The remaining challenged document, discussed below, could not reasonably be redacted and so has not been produced in redacted form.

3

are not required to log privileged forwarded emails of post-April 20, 2010 communications exchanged between the Producing Party and their counsel or among counsel for the Producing Party, even when the forwards involve solely non-attorneys. Of course, if the non-attorneys add comments that are responsive and non-privileged, they will be produced.

Rec. Doc. 4807 at 2-3. As an *in camera* examination of the single document BP identified (contained in Attachment 3) will show, the United States has complied with this instruction by excluding from its privilege logs documents that fall within the provisions of this Courts' orders.

<div align="center">* * * * * * * * * *</div>

In sum, the United States identified on its privilege log less than .6% of the number of documents it has produced and has since worked under aggressive time frames to significantly further narrow its privilege claims to the very barest minimum necessary to allow the United States the fair opportunity to conduct its mission and bring a just resolution to this case. BP's objections are not well founded and should be rejected.

<div style="margin-left:50%">
Respectfully submitted,

/s/ Sarah D. Himmelhoch

Sarah D. Himmelhoch
</div>

cc:     Liaison & Coordinating Counsel (excluding Attachment 2)
        Robert Gasaway (excluding Attachment 2)