

**U.S. Department of Justice**

Environment and Natural Resource Division

*P.O. Box 7611*
*Washington, DC 20044*
*202-514-5261*
*Thomas.Benson@usdoj.gov*

June 26, 2012

**BY ELECTRONIC MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
 Eastern District of Louisiana
Hale Boggs Federal Building
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

> Re:   MDL No. 2179 — Transocean's Challenge to 22 of the United States'
>       Confidentiality Promise Privilege Claims

Dear Judge Shushan:

      On May 21, 2010, the President signed an executive order creating the Oil Spill Commission ("OSC") and directing it to "examine the relevant facts and circumstances concerning the root causes of the Deepwater Horizon oil disaster."  OSC Chief Counsel's Report at 1, *available at* http://www.oilspillcommission.gov/chief-counsels-report.  The President ordered the OSC to issue a report within six months of its first meeting.  *Id.*  The OSC did not have subpoena power, and it relied on the cooperation of individuals involved in the accident and the aftermath.  *Id*. at 2-3.  In conducting some of its interviews, the OSC promised witnesses confidentiality in exchange for their frank statements.  Transocean challenges 22 such documents related to Phase 2.  The challenged documents are generally interview notes or summaries for witnesses to whom the OSC promised confidentiality.

      The United States should not be ordered to break the confidentiality promises made by the OSC.  As Transocean's own cited cases reveal, precedent does not require production of these documents.  Instead, the foundational cases are premised not on the unique facts of air crash investigations, but the broader notion that confidentiality may be necessary in government investigations in order to serve the public interest.  Moreover, as the Court will see in reviewing the *in camera* sample, the documents will not provide any significant unique information.  The

1

harm that ordering their production may cause in chilling future efforts to investigate and prevent accidents vastly outweighs any meager new information gleaned from this handful of documents. Indeed, Transocean does not even attempt to argue that the value of the privileged information outweighs the government interest in privilege. The company thus concedes that the balance favors maintaining the confidentiality promises.

As Transocean acknowledges, courts have created a privilege to protect information obtained based on promises of confidentiality. As the *Machin* court explained:

> We agree with the Government that *when disclosure of investigative reports obtained in large part through promises of confidentiality would hamper the efficient operation of an important Government program* and perhaps even, as the Secretary here claims, impair the national security by weakening a branch of the military, *the reports should be considered privileged*.

*Machin v. Zuckert*, 316 F.2d 336, 339 (D.C. Cir. 1963) (emphasis added). The Fifth Circuit has followed *Machin* and explained in greater detail why the privilege for confidentiality promise materials is necessary:

> To permit a breach of assurances of confidentiality given in order to obtain answers to such questions as these may perhaps provide access to more information in that particular case, but common sense tells us that it will likely also assure that in future cases such information will never see the light of day and will be of use to no one. Logic argues, then, that in such a circumstance as the Aircraft Accident Safety Investigation, where premises of confidentiality have been found helpful and perhaps essential to obtaining information upon which to base corrective action, those promises should be respected and the answers and speculations which they produce shielded from disclosure.

*Cooper v. Dept. of Navy of U.S.*, 558 F.2d 274, 277 (5th Cir. 1977). In this case, the privilege was formally asserted by OSC Executive Director Richard Lazarus in a confidential memo to Department of Energy Assistant General Counsel Susan Beard. R. Lazarus March 11, 2011 Confidential Memo to S. Beard (attached for review *in camera*). There is no dispute that the privilege exists or that there is an important public policy basis for it. The logic of the privilege, as explained in *Machin* and *Cooper*, applies as neatly in this case as it does to the facts of those cases.

Transocean, however, argues that the privilege is limited to investigations of airplane crashes. Doc. # 6689 ("TO Brief") at 2-4. Neither logic nor the wellspring cases require such a result. Nothing in *Machin* indicates the decision is to be limited to air crash investigations.[1] Instead, the language quoted above makes clear that the principle is broader: when disclosure would hamper efficient operation of an important government program, the privilege applies.

---

[1] Transocean argues that *Machin* is limited based on the unique nature of military investigations. TO Brief at 3. However, *Machin* itself makes no reliance on the nature of the investigation.

2

*Machin*, 316 F.2d at 339. There is nothing distinctive about airplane crashes that make those accidents more important to investigate and guard against than other types of accidents. This case demonstrates the consequences that can flow from deepwater drilling accidents.

Transocean relies on three district court cases to say that *Machin* does not apply outside air crash investigations. TO Brief at 2. Transocean all but ignores the district court cases that reach the opposite conclusion.[2] As one court recently found, the claim that *Machin* applies solely to air crash safety investigations "is a *nonstarter*." *Amnesty International USA v. C.I.A.*, 728 F. Supp. 2d 479, 529 (S.D.N.Y. 2010) (emphasis added); *see also Peck v. U.S.*, 88 F.R.D. 65, 74 (S.D.N.Y. 1980) (finding privileged an FBI investigation into a conspiracy to assault civil rights activists); *Cooney v. Sun Shipbuilding & Drydock Co.*, 288 F. Supp. 708, 715 (E.D. Pa. 1968) (finding privileged an investigation into the accidental death of a man who fell off a ship). These cases reveal that the privilege applies in a wide variety of contexts. Moreover, two appellate courts have considered confidentiality promise privilege claims outside the narrow air crash investigation context. While the courts allowed disclosure of the documents at issue on the facts present, they did *not* reject the application of the privilege outside the air crash investigation setting. *Merrill v. Federal Open Market Committee of Federal Reserve System*, 565 F.2d 778, 786 (D.C. Cir. 1977), *overruled on other grounds*, 443 U.S. 340 (1979); *General Services Administration v. Benson*, 415 F.2d 878, 881 (9th Cir. 1969). As the *Merrill* court explained

> This privilege is based upon the need for the government to obtain otherwise unavailable information in order to discharge properly its responsibility to make policy decisions. Efficient fact-gathering is an essential first step in the decisionmaking process. The privilege for witnesses rests on the recognition that the quality of that process as well as the decision reached is impoverished as access to relevant facts decreases.

565 F.2d at 786 (internal citations omitted).

These cases confirm that the confidentiality promise privilege is viable outside air crashes. The Supreme Court has suggested as much in finding that in developing FOIA exceptions, "Congress . . . recognizes a need for claims of privilege when confidentiality is necessary to ensure frank and open discussion and hence efficient governmental operations."[3] This case fits neatly within the criteria set forth by the Supreme Court. Of

---

[2] Transocean addresses the contrary case law merely by saying in a footnote that they are not analogous. TO Brief at 3 n3. The cases need not be analogous to a fatal deepwater drilling accident – which is unique so far – to refute Transocean's claim that the confidentiality promise privilege is limited to air crash investigations. They demonstrate that there are various scenarios in which disclosure of confidentiality promise materials would chill future investigations and hinder efforts to improve systems to avoid accidents.

[3] Transocean cites a Supreme Court dissent without acknowledging the opinion did not speak for the Court. TO Brief at 3 (citing *Dep't of Justice v. Julian*, 486 U.S. 1, 20 (1988)). In any event, *Julian* merely describes *Machin* as covering air crashes, without considering whether the privilege applies more broadly.

course, no court has held that confidentiality privilege applies to fatal, environmentally disastrous deepwater drilling accidents because the facts of this case are thankfully unique so far. But the logic of *Machin* and the other wellspring cases suggests that if confronted with these facts those courts would have upheld the privilege.

      Transocean next argues that the Court should reject the confidentiality privilege here because the United States brought suit. This Court has already ruled that the fact that the United States is a plaintiff does not affect the balancing the Court must perform in evaluating whether to order production of privileged materials. Doc. # 6650 at 3-4. That same reasoning applies here. Moreover, any balancing requires the Court to assess the value to Transocean of the privileged documents compared to the harm to the public of disclosure. As the Court will see in reviewing the sample of CP documents *in camera*, there is minimal unique information – at best – within these documents. Transocean does not contend otherwise. The information these witnesses provided to the OSC has been produced in documents or will be available through depositions. Thus the value to Transocean is minimal, while the harm in chilling the ability of investigators to get at the truth after the next major accident could be profound.[4] As the Fifth Circuit explained, once confidentiality promises are breached, "common sense tells us that it will likely also assure that in future cases such information will never see the light of day and will be of use to no one." *Cooper*, 558 F.2d at 277.

      Finally, Transocean claims that the United States has waived the confidentiality promise privilege. TO Brief at 4-5. This claim misunderstands the underlying facts. First, the United States did *not* release some confidentiality promise documents while withholding others, as Transocean suggests. The confidentiality promise documents we were able to release in response to the Parties' challenges were those that, on further review, were not confidentiality promise materials at all. Second, publishing the results of the OSC investigation does not compel releasing the confidentiality promise materials collected by the commission. From the start, the purpose of the OSC was to investigate and deliver a final report to the public and government decision makers. OSC Chief Counsel's Report at 1. That mandate was created by order of the President. The report was never intended to be private, so publishing it does not constitute a waiver. To hold otherwise would be akin to saying that privilege for an internal attorney memo that forms the basis for a brief is waived by filing the brief. The OSC has never disclosed the confidentiality promise materials themselves, and took care in the published materials *not* to identify those who provided confidential information, and so has not waived the privilege for those materials.[5]

---

[4] The harm from disclosure cannot be cured by producing as confidential documents in this case; the potential chill from the prospect of one's frank disclosure being used against the United States in litigation is as powerful as any other. Transocean has not argued otherwise.

[5] Transocean's citation to this Court's ruling on Transocean's privilege waiver is inapposite. *See* TO Brief at 4-5 (citing Doc. # 3894). The privilege at issue there was the attorney work product protection. Finding a waiver of that privilege does not yield the potential for public policy harm that could come from finding a waiver of the confidentiality promise privilege.

4

In the wake of an unprecedented human and environmental tragedy, the President created the Oil Spill Commission and charged it to investigate and report on the causes of the accident and reforms necessary to avoid a similar disaster in the future. The commission needed "to obtain otherwise unavailable information in order to discharge properly its responsibility to make policy decisions." *Merrill*, 565 F.2d at 786. In fulfilling its Presidential mandate, the OSC determined that it needed to promise confidentiality to certain witnesses in order to obtain the necessary information. Voiding that promise now will discourage witnesses from talking frankly to investigators after the next accident and frustrate efforts to prevent and mitigate such disasters. The Court should uphold the United States' promise of confidentiality for these 22 documents out of the 15 million produced by the government.

        Sincerely,

        s/ *Thomas A. Benson*
        Thomas A. Benson


cc:    Liaison & Coordinating Counsel (without attachments)