# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

June 26, 2012

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
500 Poydras Street
New Orleans, LA 70130

     Re:  MDL 2179 — Response to Halliburton and Transocean Schedule 1
         Challenges to BP's Privilege Logs

Dear Judge Shushan:

  After hearing oral argument, this Court requested on May 18, 2012, that Transocean and Halliburton limit any Phase 2 privilege challenges to a modest number of BP log entries. *See* Hr'g Tr. 26:4-8, 28:5-9. In response, Transocean asserted challenges to *11,631* entries on BP's privilege logs, and Halliburton launched an additional 3,556 challenges, even though at the time these challenges were asserted the United States had already challenged *8,281* similar entries. Although BP was able to identify a sizable degree of duplication across the three sets of challenges, the Halliburton and Transocean submissions still represent thousands of additional privilege challenges.

  BP nonetheless embarked on a good-faith effort of further review to winnow down the thousands of challenged entries. At the end of this time-consuming process, every challenged document had been re-reviewed by at least one attorney, and BP had made a good-faith attempt to "call balls and strikes" as to each challenged document.

  Pursuant to the Court's orders, Halliburton and Transocean now bring joint challenges to 20 BP privilege log entries. Because Halliburton and Transocean have filed separate briefs, BP addresses their challenges in turn.

### I.  HALLIBURTON'S CHALLENGES

  Rather than specifically challenging attorney-client privilege or work-product claims for the documents that it submits for *in camera* review, Halliburton raises general objections and offers specific documents as potential examples to illustrate those general objections.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
June 26, 2012
Page 2

### A.   Halliburton — MC252_Email_Retention Documents

On Tuesday, June 12, Halliburton sent BP examples of privilege log entries that included "MC252_Email_Retention" as a recipient. Halliburton, apparently was of the mistaken view that "MC252_Email_Retention" denoted a distribution list. Halliburton therefore asked BP for "a list of persons receiving email" sent to this address. Later the same day, Halliburton again raised the issue during a meet-and-confer, again asking for a list of people who received email sent to this address.

BP assured Halliburton in response that this email address did not represent a distribution list. Instead, as its name suggests, the address was established, not to expand the number of live email recipients, but only to preserve emails that bear on the *Deepwater Horizon* Incident.

Nonetheless, Halliburton's brief continues to express concern that this email address represents a distribution list constituting an unknown number of unidentified recipients. HESI Let. at 3. Halliburton then invokes case law questioning privilege claims in the face of wide distribution lists.

Halliburton's arguments in this vein fail for the simple reason that MC252_Email_Retention is *not a distribution list*; it is instead a single *retention address—*an electronic document collection point. Not surprisingly, as part of BP's extensive efforts to preserve documents generated during the incident response, the MC252_Email_Retention mailbox was set up as one mechanism among many for preserving communications that could be relevant to future litigation. BP does not assert, and has never asserted, that any email is privileged *because* it was sent to the MC252_Email_Retention address. Whether or not an email was copied to that address is irrelevant to BP's privilege analysis. As Halliburton concedes, BP already has produced thousands of responsive, non-privileged emails that were copied to MC252_Email_Retention. BP hopes that this additional information will suffice to put this particular issue to rest.

### B.   Halliburton — BP "Manuals"

In its June 12 meet-and-confer communication, Halliburton also expressed doubts about twenty-four documents that were described on BP privilege logs as "Manual/SOP" ("Standard Operating Procedure"). After reviewing these 24 privilege log entries, BP (i) agreed to produce two of the documents; (ii) corrected the privilege log descriptions for ten more documents; and (iii) identified the remaining 12 documents as relating to other phases of this litigation. BP also noted that three of the documents in question had been produced in redacted form, and suggested that Halliburton review these three documents to verify that the corrected description "Report" was indeed accurate.

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
June 26, 2012
Page 3

Halliburton responded by citing case law that it claims supports its assertion that manuals cannot be protected by the attorney-client privilege or work-product doctrine. Halliburton argues that BP's correction of these descriptions "does not support [its] privilege claim."

In this regard, BP assumes that Halliburton does not mean to contend that a report can never be privileged. That position plainly would be indefensible. It appears from the cases on which Halliburton relies that Halliburton continues to believe that the challenged documents are manuals, not reports. BP nonetheless stands by its corrected description for the two documents currently at issue and is confident that the Court will agree with these revised descriptions upon reviewing the documents *in camera*.

Finally, it may be worth noting that Halliburton letter contains a subtle inaccuracy regarding BP's statements about documents that continue to appear on BP's logs. *See* HESI Let. at 2 ("…assuring that all withheld documents are in fact entitled to privileged protection"). In fact, at every step of both its ongoing review process and the most relevant meet-and-confer discussions, BP has always reserved the right to make further privilege log revisions, just as it has similarly reserved its right to claw back documents that may have been inadvertently produced. This Court has encouraged parties to review and revise privilege determinations, where appropriate. BP has affirmatively and diligently responded to this call.

## II.      TRANSOCEAN'S ARGUMENTS

Transocean's brief challenges eight documents as to which BP asserted attorney-client privilege and another eight documents as to which BP has asserted work-product protection.

### A.      Transocean — Sufficiency of BP Privilege Log Descriptions

As a preliminary matter, BP notes that Transocean is attempting to re-litigate the sufficiency of the entries appearing on BP's privilege logs. In fact, Transocean raises this issue at three different points in its brief. *See* Transocean Let. at 1, 2, 3. BP reminds Transocean, as it has done in the past, of the following two points.

*First*, the Court ruled on April 25, 2012, that the level of detail in BP's privilege logs is sufficient. (Dkt. No. 6352.) And even prior to this April ruling, the Court had similarly ruled, on December 28, 2011, that one of Halliburton's privilege log entries was sufficient, even though that entry described the underlying document only as "Email communication relaying request for direction of counsel." (Dkt. No. 5015, at 2 n.1.)

*Second*, Transocean has up until this point *vigorously defended* privilege logs entries that provide *less detail* than do BP's. (Dkt. No. 3831, at 16-18.) For instance, Transocean has characterized a claim that its own log entries contained insufficient information as "a procedural

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
June 26, 2012
Page 4

claim with no substance." *Id*. at 16.  Further, Transocean fought to establish the sufficiency of privilege log entries where the author was described only as "DWH Investigation Team," and the description was only "Checklist for draft report prepared under supervision of counsel and in anticipation of litigation." (*See* Dkt. No. 3894, at 4.) Moreover, Transocean won a ruling in its favor on this issue, *id*., and it continues to benefit from that ruling.

All parties have had this Court's prior rulings to guide them during Phase 2 discovery. Now, however, Transocean would apparently ask the Court revisit these prior decisions and retroactively hold BP alone to a different standard. This request should be denied.

### B. Transocean — Attorney-Client Privilege Documents

Transocean next challenges BP's assertion of attorney-client privilege over eight specific documents represented by entries numbered 6, 26, 211, 421, 426, 574, 609, and 712.

In this connection, Transocean correctly states that documents do not become privileged merely because they were shared with an attorney.  Transocean incorrectly claims, however, that communications between non-attorneys, described as "reflecting" legal advice on the privilege log, cannot be privileged. *See* Transocean Let. at 2.

As explained in BP's brief opposing the United States' challenges, the Fifth Circuit has held that even communications exclusively between non-attorneys are protected if created as part of a process of conveying or soliciting legal advice. *See* BP's Opp. to U.S. Br. at 5-6.  In this regard, Transocean mis-cites *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982), to support its claim that "[n]on-attorney communications are only privileged if the document was created for the primary purpose of seeking legal advice or to aid in litigation." Transocean Let. at 2. *El Paso* discusses the scope of the work product doctrine, and discusses only the waiver of attorney-client privilege. *See* 682 F.2d at 542. Because Transocean is not arguing waiver here, *El Paso* is plainly inapposite.

### C. Transocean — Work Product Doctrine Documents

Transocean lastly challenges BP's assertion of the work-product doctrine over eight specific documents represented by entries numbered 73, 110, 146, 195, 410, 686, 1567, and 2549.[1]

---

[1] BP notes that the date and authorship for Entry Number 110 are incorrectly reflected on BP's privilege log. This document in fact dates from September 21, 2010, and its author should have been listed as Doug Suttles. The privilege log's document description is correct.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
June 26, 2012
Page 5

Transocean contends that any document created in the three-month period between the incident on April 20, 2010 and the *Deepwater Horizon* spill being successfully controlled and ended in mid-July of that year is "unlikely" to have been prepared for the primary purpose of aiding in future litigation, and, therefore, none of these documents can properly be considered protectable work product. *See* Transocean Let. at 4.

This claim is inherently unpersuasive. Significantly, Transocean itself has claimed work-product protection for more than 800 documents dating from this same period. More fundamentally, even apart from Transocean's refutation of its own argument, Transocean's assertion that no one in the entire BP organization could have done anything during those three months in anticipation of litigation is facially unsound. This argument fails for the same reasons the United States' chronology-based "heightened scrutiny" argument fails. *See* BP's Opp. to U.S. Br. at 4-6, 10.

Transocean's other work-product arguments also mirror those of the United States and thus fail for similar reasons. In particular, Transocean contends (i) that there is allegedly insufficient evidence that particular documents were prepared in anticipation of litigation; and (ii) that BP must show that any document for which it asserts work-product protection was primarily engendered by litigation. *See* Transocean Let. at 4. These arguments are fully rebutted in BP's response to the United States' challenges. *See* BP's Opp. to U.S. Br. at 7-10.

### III.   BP CONTINUES TO COOPERATE AND WINNOW DOWN ITS PRIVILEGE LOGS

The foregoing notwithstanding, and in a spirit of cooperation, BP continues to engage in a good-faith effort to identify any material still listed on privilege logs that can properly be produced. After further detailed review, BP will produce documents corresponding to nine challenged privilege log entries; namely, ones numbered 6, 73, 146, 421, 426, 527[2], 609, 712, and 2549.

BP continues to assert privilege protection for documents corresponding to eleven other challenged privilege log entries; namely, ones numbered 26, 110, 195, 211, 410, 574, 686, 1389, 1486, 1567, and 1650.

---

[2]   Note that BP has already produced textual duplicates of this particular document. *See, e.g.,* BP-HZN-2179MDL00252277, BP-HZN-2179MDL00259990, and BP-HZN-2179MDL00205731.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
June 26, 2012
Page 6

                                      Sincerely,

                                      Robert R. Gasaway

Attachment

cc (via electronic mail):

Donald E. Godwin
David A. Baay
Joel M. Gross
Allison B. Rumsey
Plaintiffs' Liaison Counsel
Defense Liaison Counsel (dsc2179@liskow.com)