UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * * | MDL NO. 2179<br><br>SECTION J<br><br>JUDGE BARBIER<br>MAG. JUDGE SUSHAN |
| THIS DOCUMENT APPLIES TO:<br>No. 12-311 | * * | **JURY TRIAL DEMANDED** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### LIBERTY'S REPLY IN SUPPORT OF ITS RULE 12C MOTION

Liberty Insurance Underwriters, Inc. hereby replies to Cameron International Corporation's Response (R. Doc. 6697) to Liberty's Rule 12(c) Motion (R. Doc. 6438). As demonstrated below, Cameron cannot not avoid the inevitable legal conclusions drawn from its pleadings:

- ➤ The Transocean Indemnity obligation is "Other Insurance" – a point Cameron concedes;

- ➤ Cameron bargained away its right, and therefore, Liberty's subrogation right, to indemnity from Transocean, making it impossible for coverage to attach;

- ➤ By bargaining away those rights, Cameron impaired Liberty's subrogation rights, destroying any coverage that would have attached;

- ➤ The plain terms of the policy do not cover defense costs or a duty to defend; and

- ➤ There is no bad faith.

For the reasons discussed below and in Liberty's opening brief, Liberty's Rule 12 Motion should be granted.

A.  **Cameron's Arguments Based On The "Other Insurance Clause" Are Wrong.**

As a threshold matter, Cameron does not dispute that the Transocean indemnity obligation is "Other Insurance" under the Liberty Excess Policy. Cameron only disputes its

1

operation and suggests an unworkable procedure that allegedly renders it meaningless. Specifically, Cameron attempts to turn the burden of proof on its head, arguing that Liberty must prove that the "Other Insurance" condition of the Liberty Excess Policy has not been satisfied and further that Liberty has not met that burden. Cameron is wrong on both points.

    1.    **Cameron, Not Liberty, Bears The Burden To Prove Conditions Of Coverage, Including No Available "Other Insurance."**

Although Cameron cites two cases purportedly shifting the burden to the insurer on "Other Insurance" provisions, neither applies Texas law. Under Texas law, which applies here,[1] *the insured* bears the burden of proving that an excess policy attaches. The *insured* also must prove exhaustion of underlying insurance as a *condition precedent* to recovery against an excess carrier. *See, e.g., D.R. Horton, Inc. v. Am. Guar. & Liab. & Ins. Co.*, No. 11-039, 2012 WL 1893977, at *19 (N.D. Tex. 2012) (to establish second-level excess insurer's payment obligation, insured had burden to prove that underlying insurance and self-insured retention were exhausted); *Dresser Indus., Inc. v. Underwriters at Lloyd's, et al.*, 106 S.W.3d 767, 771 (Tex. App. 2003) ("[The insured] must prove the exhaustion of underlying insurance as a condition precedent to recovery against the excess carrier.").[2] That is true for "Other Insurance" as well, as a leading treatise confirms:

> When a policy is excess, whether because it is truly written to apply only above "Other Insurance" with lower limits or becomes excess by operation of an "Other Insurance" clause, part of the insured's burden of proof in establishing a claim for

---

[1] Texas law applies to this coverage dispute involving an insurance policy issued and delivered in Texas to a Texas insured and containing Texas endorsements. *See, e.g., Am. Elec. Power Co. v. Affiliated FM Ins. Co.*, 556 F.3d 282, 286 n.2 (5th Cir. 2009) ("Under the Louisiana choice-of-law regime, the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract."); *Simmons v. Liberty Mut. Fire Ins. Co.*, 420 Fed. Appx. 388, 390 (5th Cir. 2011).

[2] *See also Serv. Corp., Int'l v. Great Am. Ins. Co. of N.Y.*, No. 07-20313, 2008 WL 280900, at *5 (5th Cir. 2008) (excess coverage "not triggered" until underlying coverage exhausted).

> recovery from such insurance is the fact that the loss is such that the limits of the excess policy have been triggered.

COUCH ON INS., § 254:39. The Fifth Circuit agrees that "Other Insurance" may be a condition of coverage. *See RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858-61 (5th Cir. 2010).

Here, the Liberty Excess Policy unquestionably provides, as a condition of coverage, that the policy is *excess* of "Other Insurance" under *Condition F*:

> F. Other Insurance
> If "Other Insurance" applies to a "loss" that is also covered by this policy, this policy will apply excess of such "Other Insurance." Nothing herein will be construed to make this policy subject to the definitions, terms, conditions and exclusions of such "Other Insurance." However, this provision will not apply if the "Other Insurance" is specifically written to be excess of this policy.
> <u>"Other Insurance" includes any type of self-insurance, indemnification or other mechanism by which an Insured arranges for funding of legal liabilities.</u> (emphasis added).

Because the "Other Insurance" clause is a condition of coverage, under Texas law, Cameron, not Liberty, bears the burden of proof that the condition has been satisfied.

In arguing that Liberty bears the burden of proof, Cameron chiefly relies on two cases: *Rhone-Poulenc, Inc. v. Int'l Ins. Co.*, No. 94-3303, 1996 WL 328011, at *3 (N.D. Ill. 1996), and *Insurance Co. of N. Am. v. Kayser-Roth*, No. C.A. PC 92-5248, 1999 WL 813661 (R.I. Super. Ct. 1999).[3] As a threshold matter, neither case applies Texas law. Moreover, these cases are inapposite. In the unpublished decision in *Rhone-Poulenc*, the only issue before the court was whether environmental impairment liability policies provided *concurrent primary coverage* with commercial general liability policies issued to the same insured, such that the CGL insurers had to be joined under Rule 19. *Rhone-Poulenc* did not address the burden of proof to trigger

---

[3] R. Doc. 6697-2, at pp. 14-15.

3

coverage under an *excess* policy. Moreover, the "Other Insurance" clause in *Rhone-Poulenc* expressly required that the "Other Insurance" be "collectible;" Condition F of the Liberty Excess Policy does not contain this requirement. Like *Rhone-Poulenc*, the *Kayser-Roth* case involved different contract language interpreted under a different state's law. Specifically, the *Kayser-Roth* court applied Rhode Island law in interpreting an "Other Insurance" clause that the "Other Insurance" to be "valid and collectible." The Liberty Excess Policy does not contain this requirement.[4]

Because the "Other Insurance" clause is a condition of coverage, Cameron bears the burden of proof that this condition precedent to the attachment of the Liberty Excess Policy has been satisfied.

### 2. Cameron Has Not Pled Allegations To Satisfy Its Burden Of Proving No Available "Other Insurance."

Cameron has not shown that the "Other Insurance" *condition precedent* to coverage under the Liberty Excess Policy has been satisfied, and indeed, regardless of the burden of proof, Cameron's actions have made this condition precedent impossible. Cameron's chief arguments on why the "Other Insurance" condition precedent does not prevent coverage from attaching are (1) Cameron asked Transocean to honor its contractual indemnity obligation and Transocean refused; and (2) Liberty's contention that the policy must be enforced as written purportedly leads to absurd results. These complaints do not hold water.

---

[4] *Raytheon Co. v. Continental Cas. Co.*, 123 F. Supp. 2d 22 (D. Mass. 2000), also cited by Cameron, involved a "super escape clause" that was a separate exclusion in some policies; and thus the court treated the clause as an exclusion. *Raytheon* also involved primary policies and thus, the insured could adequately plead the existence of coverage without alleging exhaustion, a requirement to allege that excess coverage is triggered.

4

On the first point, Cameron's position would render the "Other Insurance" clause toothless, as demonstrated by Cameron's own actions. Although here Cameron tells the Court that Liberty should give up on the benefit of its bargain on the "Other Insurance" clause because Transocean disagreed on indemnity, Cameron told this Court in the BP Litigation that *"any fair reading* of the [Drilling Contract] will confirm" that Cameron is owed indemnity:

> [] BP argues that the language of the Drilling Contract does not support the indemnity asserted by Cameron. ***That is false, as any fair reading of the contract will confirm***.

Cameron Reply Brief at p. 2 (R. Doc. 4866) (emphasis added). Cameron further told this Court that because of its indemnity rights, "under no circumstances" would the risk of loss fall on Cameron:

> The risk of loss may fall on BP (which assumed that primary risk), or it may fall on Transocean (which may have forfeited its right to indemnity by its conduct). But ***under no circumstances may it fall on Cameron.*** Cameron is entitled to summary judgment.

*Id.* (emphasis added). Indeed, Cameron pointed out that "[h]olding [BP and Transocean] to the terms of their sophisticated bargains [to provide indemnity to Cameron] will assure proper allocation of the pollution risk":

> BP continues to disavow and evade its full responsibility for subsurface pollution from the Macondo well. Just as BP tried to rewrite Transocean's insurance obligations under the Drilling Contract, BP now tries to rewrite its indemnity obligations under the same contract. Just as this Court rejected BP's arguments about the insurance provisions, Doc. 4588, it should reject BP's arguments about its indemnity obligations and Cameron's related indemnity rights. ***BP owes indemnity to Transocean for pollution and related liabilities under the Drilling Contract, and Transocean, in turn, owes Cameron the full benefit of that indemnity. Holding these parties to the terms of their sophisticated bargains will assure proper allocation of the pollution risk.***

*Id.* at p. 1 (emphasis added). These good faith assertions by Cameron, grounded on the indemnity provisions of its contract with Transocean, which itself was grounded in standard industry practice on allocation of pollution risk among sophisticated parties, demonstrate that the claim

5

for indemnity was alive and well. As the Fifth Circuit has held, it is the *existence* of the indemnity right, "Other Insurance," that triggers the condition, *"whether or not recovery under this "Other Insurance" is actually sought"*:

> By it plain language, the triggering of Condition 8 ["Other Insurance" clause] requires only (1) the existence of "Other Insurance" insuring to [the insured's] benefit, and (2) overlapping coverage between that "Other Insurance" and [the policy at issue]. The means by which actual recovery might be achieved under the "Other Insurance" in question, whether by settlement agreement or by judgment, is irrelevant to Condition 8's applicability. The existence of "Other Insurance" that covers the same liability as the Environmental policies is what triggers the condition, whether or not recovery under this other insurance is actually sought.

*RSR Corp.*, 612 F.3d at 858. Cameron's deal with BP may have ended Cameron's own pursuit of its indemnity rights; but as *RSR Corp.* confirms, the settlement does not negate the fact that the indemnity right existed triggering Condition F and preventing coverage from attaching.

Indeed, when Cameron struck its deal with BP, Cameron did not abandon its right to indemnity. Cameron bargained it away, and in Cameron's own opinion, *received a significant benefit because of its claim to indemnity*. *See, e.g.*, Am. Cmplt. at ¶ 45 (R. Doc. 6287) (alleging a decision by the Court on indemnity motions "could easily . . . result in substantially higher settlement demands on Cameron"); *id.* at ¶ 51 ("BP made the release of [the indemnity claim] part of its settlement expressly because BP might ultimately be responsible to Transocean, dollar for dollar, for the very same indemnification claim."); *id.* at ¶ 53 ("Cameron's release of its indemnification claims was [] *a crucial part of the settlement consideration* that BP was seeking as a part of the settlement" because BP might ultimately be responsible for the indemnification claim) (emphasis added). Had Cameron been successful on its motion, even Cameron would concede, that indemnity would inure to the benefit of Liberty under the terms of the policy. It is

the bargain with BP – struck willingly by Cameron—that ended Cameron's pursuit of indemnity against Transocean and made it impossible for Cameron to fulfill the condition precedent to trigger coverage under the Liberty Excess Policy.

In fact, Cameron's own arguments in its opposition memorandum illustrate that Cameron's position is absurd, not as Cameron claims, Liberty's. Cameron maintains that the proper way for an "Other Insurance" provision to operate is for the insurer to first pay-up and then pursue indemnity against the "other insurer." Opp. at p. 13 (R. Doc. 6697-2). This, Liberty cannot do because Cameron made it impossible by giving up any right it had to pursue an indemnity claim. *See* Am. Cmplt. at ¶¶ 42-51 (R. Doc. 6287). Cameron conveniently ignores this salient point. Factoring this point in, as the Court must, the only way to reach the conclusion that Cameron is entitled to coverage is to rewrite Liberty's policy to remove Condition F in violation of the cardinal rule of contract interpretation. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003) ("[W]e may neither rewrite the parties' contract nor add to its language.").

In short, Cameron had a claim for indemnity against Transocean; coverage under the Liberty Excess Policy only attaches in excess of such indemnity rights; Cameron bargained away its claim for indemnity; and by doing so, Cameron has made fulfillment of the condition precedent to coverage under the Liberty Excess Policy impossible. There is no coverage, and there can be no coverage.

**B.     Cameron's Extinguishment Of Liberty's Policy Rights Is Improper And Negates Coverage.**

In settling with BP, Cameron impaired Liberty's valuable rights under the insurance policy, thereby negating coverage. In its opposition, Cameron does not attempt to dispute or distinguish Liberty's cited authorities on this point, because it cannot. Cameron instead disingenuously tries to obfuscate the issue, arguing that it did not release Liberty's subrogation rights because the settlement contains the following single sentence: "Notwithstanding any other provision of this Agreement, including paragraphs 4.2 and 4.3, Cameron is not releasing any subrogation or other rights of Liberty Insurance Underwriters Inc.". *See* Opp. at p. 24 (R. Doc. 6697-2). This purported reservation of Liberty's rights is hollow lip-service. As a subrogated insurer, Liberty can only stand in the shoes of Cameron on a claim for indemnity. And Cameron undisputedly assigned to BP or released its "indemnification claims against Transocean under the Transocean Contracts." Exh. 3 to Opp. at Par. 4-5 (R. Doc. 6697-2). Therefore, Cameron ***released*** the very indemnification rights to which Liberty would have been subrogated. By extinguishing Liberty's subrogation rights, Cameron "forfeits any claim for indemnity under the policy." *Foundation Reserve Ins. Co.*, 458 S.W.2d at 214, 216 (Tex. Civ. App., 1970, no pet.).

Equally misplaced is Cameron's reliance on an alleged promise not to raise Cameron's breach of the Liberty Excess Policy's consent requirements. Regardless of whether Liberty agreed it would not assert a violation of the consent requirement, Liberty never agreed to any release of its indemnification subrogation rights. Any fair reading of the letter upon which Cameron relies clearly advises that Liberty's non-objection relates to the ***amount*** of the settlement. Cameron conveniently omits that in the same letter, Liberty expressly objected to

8

"the non-economic aspects of the proposed settlement" clarifying that "such action will jeopardize any coverage which Cameron might otherwise have under the LIU policy."[5]

Cameron also protests that it had to release its indemnification from Transocean to settle, suggesting the release is somehow excusable. Am. Cmplt. at ¶¶ 42-51 (R. Doc. 6287). Even accepting this as true does not change the fact that Cameron's release of those rights had implications under the plain terms of the Liberty Excess Policy; Cameron cannot unilaterally alter those terms. *See e.g.*, Liberty's Memo. at pp. 17-18 (R. Doc. 6438-3). Not surprisingly, Cameron has cited no authority allowing it to do so.

Finally, Cameron's response misleadingly chides Liberty for not raising the "Other Insurance" issue until "after settlement negotiations with BP commenced, some eighteen months after Cameron gave Liberty notice of its claim." Opp. at pp. 9, 28 (R. Doc. 6697-2). The assertion is irrelevant to the dispositive issue and disingenuous. Cameron admits that "Other Insurance" clauses control the order in which multiple sources of insurance attach or are called on to pay. *See id.* at p. 13. Unless and until the Cameron-BP settlement began to materialize and payment of an amount within Liberty's position became an issue, Liberty's "Other Insurance" clause had no relevance to Cameron's claim.

---

[5]  Liberty agrees that the Court should not consider evidence beyond the pleadings on this Rule 12 motion. Liberty raises the letter solely to clarify its mischaracterization by Cameron.

C.  **Liberty Is Entitled To Dismissal Of Cameron's Bad Faith Claims Under Texas and Louisiana Law.**

Nothing in Cameron's responses changes the fact that Cameron has not pled a viable claim for bad faith under any state's law.

1.  **The Texas Bad Faith Claims Should Be Dismissed.**

Cameron errantly contends that it has sufficiently pled a cause of action for bad faith under the Texas Insurance Code Chapter 541. Cameron could not be more wrong. Under the Texas Insurance Code, for there to be bad faith, liability must be "reasonably clear."[6] That standard cannot be established here as a matter of law, where the Liberty Excess Policy is excess to any "indemnification" and the amount and extent of indemnity flowing from Transocean to Cameron undisputably has not been determined. Stated another way, how can Liberty have acted in bad faith in claiming Cameron had a right to indemnity when Cameron itself had pending a motion against Transocean in the Oil Spill MDL vigorously claiming the same? Further, Cameron should be judicially estopped from attempting to have it both ways and taking diametrically opposite positions before this Court on the viability of its right to indemnification from Transocean. Cameron's claim under Section 542 also must be dismissed because Section 542 only applies to first-party insurance claims. Liberty Memo. at p. 28 (R. Doc. 6438-3). Cameron's claim here is a third-party claim.

2.  **The Louisiana Bad Faith Claims Should Be Dismissed.**

Because Texas law applies, this statutory Louisiana claim is absurd; but independently, Cameron's claims under La. Rev. Stat. 22:1892 must be dismissed because this statute does not

---

[6] See Tex. Ins. Code art. 541.060(A)(2)(B); *see also Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1988).

10

apply on its face to Cameron's allegations. Cameron argues that Liberty's failure to fund the settlement could trigger liability under subsection 1892(A)(2) but cites no authority supporting its argument. By its terms, this provision solely requires insurers to "pay the amount of any third party property damage claim . . . within thirty days after written agreement of settlement of the claim from any third party claimant." La. Rev. Stat. 22:1892(A)(2). On its face, this provision, which must be strictly construed, *see, e.g., Jackson v. State Farm Fire & Cas. Co.*, 2010 WL 724108 at 3 (E.D. La. Feb. 22, 2010),[7] governs only a third-party claimant's rights against an insurer, and *not* the rights of a first-party claimant like Cameron, the named insured under the policy. Moreover, the statute does not apply absent a settlement agreement between the third-party claimant and the insurer. *See, e.g., Woodruff v. State Farm Ins. Co.*, 767 So. 2d 785 (La. App. 4 Cir. 2000) (third-party claimant could not assert claim against liability insurer under section 1892(A)(2) absent allegation that insurer had reached an agreement with claimant). Here, Cameron has not alleged that Liberty is party to a settlement agreement with a third-party, and indeed it is not, and thus section (A)(2) is inapplicable.

Nor does section 1892(A)(1) apply to Cameron's allegations that Liberty failed to settle the BP claim. The Fifth Circuit specifically has observed that subsection (A)(1) "does not squarely cover" an insured's claim that its insurer failed to settle third-party liability claims against it. *Louque v. Allstate Ins. Co.*, 314 F.3d 776, 780 (5th Cir. 2002). Citing the plain statutory language, the Fifth Circuit noted that the statute penalizes "instead" only the insurer's

---

[7] *Id.* ([Louisiana's] bad faith statutes are penal in nature and should be strictly construed); *see also Theriot v. Midland Risk Ins. Co.*, 95-2895 (La. 5/20/97), 694 So. 2d 184, 187 ("[W]hen the legislature specifically enumerates a series of things, the legislature's omission of other items, which could have been easily included in the statute, is deemed intentional")

11

failure to pay "a claim due the insured 'within thirty days after receipt of satisfactory proofs of loss,'" *i.e.*, a first-party claim.[8] *Id.* at 781. Cameron has failed to identify a single reported decision in which the statute was held to apply to an insured's claim that an insurer failed to settle a third-party claim. Absent any such authority, the Court must narrowly construe this penal statute and hold that it does not apply to Cameron's claim that Liberty failed to contribute to the BP settlement.

Finally, even if subsection 1892(A) could apply, Cameron's claim fails because it cannot show that Liberty received "satisfactory proof of loss," which requires that the insurer receive sufficient information to "*fully* apprise the insurer of the insured's claim."[9] *McDill v. Utica Mut. Ins. Co.*, 475 So. 2d 1085, 1089 (La. 1985). Cameron contends that Liberty received the required proof merely because Liberty was "integrally involved in the claim and was sent a copy of the Settlement Agreement immediately after it was executed." Opp. at p. 27 (R. Doc. 6697-2). Cameron does not dispute, nor could it, that Liberty did not receive information concerning the amount of the indemnity Transocean owed to Cameron, as the issue was unresolved. Without this information, Liberty could not possibly assess the amount of covered loss and thus was not "fully apprised" concerning its potential liability. Therefore, Liberty was not provided "satisfactory proof of loss" and the statutory payment obligation was not triggered.[10]

---

[8] Contrary to Cameron's suggestion, Liberty does not dispute that section 1892 affords limited rights to both first- and third-party claimants, as stated in *Louque*. It does not follow, however, that Cameron's claim against Liberty falls within the limited scope of such rights.

[9] *See also Armstrong v. Safeway Ins. Co.*, 47 So. 3d 63 (La. App. 3rd Cir. 2010).

[10] Cameron claims that the coverage dispute relating to application of the "other insurance" provision is relevant "[a]t most" to whether Liberty's conduct was arbitrary and capricious and not to whether Liberty received satisfactory proof of loss. Liberty agrees that the "other insurance" issue is highly relevant in determining whether its actions were "arbitrary and capricious." However, Cameron cites no authority suggesting that the provision is not also relevant to the "satisfactory proof of loss" issued.

### D. Liberty Is Entitled To Dismissal Of Cameron's Claim Regarding Defense Costs.

Liberty owes Cameron no duty of defense or costs of defense; the Liberty Excess Policy is clear on this issue. Cameron *actually admits* that Liberty has no duty to defend, but attempts to create an artificial distinction between an insurer's duty to defend and an insurer's duty to pay an insured's defense expenses.

But Liberty is not liable for defense costs pursuant to the clear and unambiguous terms of the Excess Policy. As discussed in Liberty's Motion, the plain language of the policy supplants the defense provisions language in the underlying policy and limits Liberty's defense and payment obligations under the policy. The Liberty Excess Policy does not provide for payment of defense costs, a fact Cameron ignores. Specifically, the term "loss" does not include defense costs. The policy states that Liberty will pay on behalf of the Insured "loss" that results from an occurrence during the "policy period." "Loss" is defined in the policy as "those sums which the insured is legally obligated to pay as damages, after making proper deductions for all recoveries and salvage." Exh. A to Liberty's Memo., at ¶ IV (Definitions) (R. Doc. 6438-4). Cameron's attorney fees are not "damages", therefore, "loss" under the Liberty excess Policy does not include defense costs.

Second, the Liberty policy expressly addresses defense costs and provides that Liberty has no obligation to pay them. With respect to defense costs, the Policy states "[w]e will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us

13

for "loss" under this policy. If we exercise such right, we will do so at our expense." *Id.* at ¶ III(B).

Cameron rightly admits that any common law duty of defense is supplanted and exclusively governed by the terms and conditions of the Liberty Policy. That admission is the end of the analysis. The Liberty Excess Policy outlines Liberty's duties related to the defense of Cameron and clearly sets forth that no duty to defend or pay defense costs exists.

E.     **Cameron's Claims Should Be Dismissed Pursuant To Rule 12.**

Finally, Cameron suggests the insurance coverage issues raised in Liberty's motion cannot be resolved on a Rule 12 motion; Cameron is wrong. Numerous courts, including courts in this District, have resolved insurance coverage cases at the pleadings stage.[11] *See, e.g., Lawrence v. Slidell Welding Srv., Inc.,* 2011 WL 63875 (E.D. La., 2011) (judgment on pleadings that "employment exclusion" negated coverage and duty to defend). Just recently, for example, Judge Eldon Fallon granted judgment on the pleadings deciding whether claims for property damage arising from Chinese Drywall were covered under a variety of homeowner policies. *See In re Chinese Mfred. Drywall Prod. Liab. Litig.,* 759 F. Supp. 2d 822 (E.D. La. 2011).

Nor are there facts beyond the pleadings necessary to resolve this coverage dispute. Interpretation of an insurance policy is a question of law. *See Indian Harbor Ins. Co. v. Bestcomp, Inc.,* 452 Fed. Appx. 560 (5th Cir. 2011). Everything necessary to decide this question of law – *i.e.* the policy, the settlement agreement, and the allegations – is properly

---

[11]   *See also Guidry v. Am. Public Life Ins. Co.,* 512 F.3d 177 (5th Cir. 2007) (coverage under a health insurance policy); *Chauvin v. State Farm Fire & Cas. Co.,* 495 F.3d 232 (5th Cir. 2007) (application of Valued Policy Law statute to homeowner's policies); *Gabarick v. Laurin Maritime (Am.), Inc.,* 650 F.3d 545, (5th Cir. 2011) (coverage under maritime liability policy).

before the Court in Liberty's Rule 12 (c) motion. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (court may consider both pleadings and documents attached to motion that are referred to in the plaintiff's complaint and are central to plaintiffs' claims).

Attempting to muddy the waters, Cameron opposition attaches (1) letters from *other insurers* regarding the settlement and (2) an unsubstantiated declaration that Cameron *intended* the Liberty Excess Policy to be completely follow form without exception. Neither of these items creates a fact issue for purposes of this motion. What governs here are the terms of the contract between Liberty and Cameron, and not the comments of other insurers who were seeking to put pressure on Liberty to settle for their own business reasons or the subjective intent of the insured. *See, e.g., Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W. 2d 517, 521 (Tex. 1995). The exhibits are unauthenticated hearsay and irrelevant to the sole issue before the Court in Liberty's motion for judgment on the pleadings.[12] As the Fifth Circuit explained, the goal of the court in interpreting an insurance contract "is to ascertain and to give effect to the intent of the parties *as expressed in the instrument*" and "by considering *the policy* as a whole and interpreting *the policy terms* according to their plain and ordinary meaning." *Serv. Corp. Int'l v. Great Am. Ins. Co. of N.Y.*, No. 07-21313, 2008 WL 280900, at *2 (5th Cir. 2008) (emphasis added and internal quotes omitted).

As demonstrated above and in Liberty's opening brief, the Liberty Excess Policy, by its plain and unambiguous terms, has not attached to Cameron's settlement. On the face of Cameron's Amended Complaint, Cameron has not stated any valid claim for relief, either

---

[12] Liberty objects to each exhibit attached to Cameron's response, with exception to the Liberty Excess Policy, as inadmissible parole evidence, hearsay, and lacking relevance to this contract dispute.

15

contractual or extra-contractual, as the Liberty Policy has not attached to the BP-Cameron settlement. No amount of creative pleading can overcome these facts.[13] This Court should grant Liberty's Rule 12 motion.

Respectfully submitted,

/s/ Judy Y. Barrasso
Judy Y. Barrasso, 2814
Celeste, Coco-Ewing, 25002
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
504/589-9700 (Telephone)
504/589-9701 (Facsimile)

Christopher W. Martin, Federal I.D. 13515
Gary L. Pate, Federal I.D. 29713
MARTIN, DISIERE, JEFFERSON
  & WISDOM, L.L.P.
808 Travis, Suite 1800
Houston, Texas 77002
713/632-1700 (Telephone)
713/222-0101 (Facsimile)

**Attorneys for Liberty Insurance Underwriters, Inc.**

---

[13] A Rule 12(c) motion tests the pleadings. Cameron cannot further plead without seeking leave to amend its already-amended Complaint. Cameron has not sought such leave, and an Answer for Liberty will not cure Cameron's pleadings deficiencies. Thus, the pleadings are indeed "closed." Alternatively, Liberty's motion properly falls under Rule 12(b)(6).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing Reply has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 29th day of June, 2012.

/s/ Judy Y. Barrasso