## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO ON APRIL 20, 2010 | ) ) ) ) | MDL 2179<br><br>JUDGE BARBIER |
| | ) ) | SECTION "J" |
| Member case: Duong, et al. v. BP America Production Company, et al., 12-814 | ) ) ) | MAGISTRATE JUDGE WILKINSON<br><br>MAG. DIV. 2 |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING IMPLEMENTATION OF BP DEEPWATER HORIZON SETTLEMENT**

BP America Production Company and BP Exploration & Production Inc. (collectively, "BP Defendants") have moved this Court to stay proceedings pending implementation of the BP Deepwater Horizon Settlement.

In response, Plaintiffs do not dispute the meaning of the *actual terms* in the Economic and Property Damages Settlement Agreement. Indeed, Plaintiffs' opposition brief does not contain a single citation to the text of the settlement agreement at issue in this case. Instead, Plaintiffs devote the majority of their brief to arguing what the settlement agreement *should* state in order to satisfy Plaintiffs' view of constitutional standards. Thus, for example, Plaintiffs do not dispute:

- that under the terms of the settlement agreement, Named Plaintiffs and putative class members are members of the settlement class,

- that by operation of the terms of the release, Plaintiffs would be unable to pursue the claims of putative class members who accept the settlement,

- that under the terms of the settlement agreement, the scope of this case and whether it may proceed as a class action cannot be known until after settlement class members decide whether to opt-out, and

- that the terms of the agreement require Plaintiffs to opt-out of the settlement or lose their right to pursue their claims of race discrimination.

In lieu of addressing the actual terms of the settlement agreement, Plaintiffs advance only two arguments in opposition to the stay. Both are without merit. *First*, without relying on case law, Plaintiffs ask this Court to apply the standard that governs stays pending ongoing *litigation* in another court, rather than the standard that governs stays pending the *settlement* of another case. They offer no reason why this Court should do so. *Second*, Plaintiffs contend that the proposed settlement does not cover claims of racial discrimination, but they point to no language in the actual settlement agreement to support their position. Plaintiffs likewise fail to explain why they should be able to continue litigating this case, and thereby test the sufficiency of their claim, prior to the time they and putative class members are required to decide whether to exclude themselves from the class settlement.

Although Plaintiffs' opposition brief disputes the constitutional validity of the settlements, these arguments are not properly before this Court. To contest the settlement agreement, Plaintiffs may move to intervene in the settled case and object to the settlement, opt-out of the settlement to pursue individual claims, or fully brief a collateral attack. Plaintiffs may not, however, choose to do none of these things and then assert in an opposition to a motion to

2

stay that they have been deprived of their rights to due process. Plaintiffs' threatened collateral attack fails for the same reason. Yet even if this Court addresses the merits of a collateral attack, Plaintiffs' argument fails because it is based on nothing but speculation and it does not identify or apply the relevant rules to the case at hand.

Accordingly, BP Defendants request that this Court temporarily stay further proceedings and suspend all responsive pleading and answer deadlines in the above-captioned action, pending implementation of the BP Deepwater Horizon settlement.

## ARGUMENT

### I.  This Court Should Grant BP Defendants' Motion to Stay.

#### A.  Plaintiffs Encourage This Court To Apply The Wrong Standard.

Plaintiffs contend that this Court should apply the standard governing first-to-file cases (in which courts stay proceedings in favor of the first filed action) or abstention cases (in which courts stay federal proceedings in light of ongoing state actions).[1] In doing so, Plaintiffs encourage this Court to apply a standard that governs whether a court should grant a stay pending ongoing *litigation*, rather than the standard that governs whether a court should grant a stay pending the *settlement* of another case. Plaintiffs identify no court that has applied the litigation standard in the settlement context, nor do they offer any reason why this Court should abandon clear precedent. Instead, Plaintiffs simply assert that the cases cited by Defendants actually support Plaintiffs' position. This is incorrect. Each of the cases cited by Defendants determined whether the settlement in another case would *substantially affect* the case pending

---

[1] Plaintiffs cite the following cases for support: *Holder v. Holder*, 305 F.3d 854 (9th Cir. 2002) (abstention case); *Save Power v. Syntek Fin. Corp.*, 121 F.3d 947 (5th Cir. 1997) (first-to-file case); *Nakash v. Marciano*, 882 F.2d 1411 (9th Cir. 1989) (abstention case); *Sadid v. Idaho State Univ.*, 2012 WL 851502 (D. Idaho March 12, 2012) (abstention case); *Buckalaw v. Celanese Ltd.*, 2005 WL 2266619, at *3 (S.D. Tex. Sept. 16, 2005) (first-to-file case).

before the court.² Despite Plaintiffs' misleading parenthetical citations to the contrary, these courts' analyses were not limited to determining whether the claims were identical.

Plaintiffs' reliance upon *Landis*, a case decided by the U.S. Supreme Court in 1936, is misguided. In *Landis*, the Court stated that inherent in a court's power to control its docket is the power to stay proceedings. *Landis v. N. Amer.*, 299 U.S. 248, 254 (1936). After this landmark decision, courts routinely cited *Landis* for the proposition that courts have the discretion to stay a case pending ongoing litigation or the settlement of another case. *See e.g.*, *Fitzer v. Amer. Inst. of Baking, Inc.*, 2010 WL 1955974, at *2 (S.D. Ga. May 13, 2010); *In re RC2 Corp. Toy Lead Paint Prods. Liab. Litig.*, 2008 WL 548772, at *5 (N.D. Ill. 2008). Research reveals no case, however, in which a court has been confronted with a settlement—rather than ongoing litigation—and announced that "[o]nly in rare circumstances will a litigant in one case be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both," or that the moving party must "make out a clear case of hardship or inequity" if there is "even a fair possibility" that the stay will damage another party. (Opp'n. at 11.)

Yet even if this Court applied the standard advocated by Plaintiffs, the claims Plaintiffs assert are in fact encompassed within the settlement agreement. (Memo Supp. Mot. Stay at 6-

---

² *See Meints v. Regis Corp.*, 2010 WL 3058300, at *3 (S.D. Cal. Aug. 2, 2010) (granting a stay because a proposed settlement had "significant overlap" with the case before the court); *Resco Prods., Inc., v. Bosai Minerals Grp. Co., Ltd.*, 2010 WL 2331069, at *7 (W.D. Pa. June 4, 2010) (granting a stay because a settlement "may substantially affect this case or be dispositive of the issues"); *Fitzer v. Amer. Inst. of Baking, Inc.*, 2010 WL 1955974, at *2 (S.D. Ga. May 13, 2010) (granting a motion to stay because the settlement of a different case "may affect" the putative class and bear on the court's class certification decision); *Lindley v. Life Investors Ins. Co. of Amer.*, 2009 WL 3296498, at *3 (N.D. Ok. Oct. 9, 2009) (granting a stay because a settlement would have a "significant impact" on the case before the court); *In re RC2 Corp. Toy Lead Paint Prods. Liab. Litig.*, 2008 WL 548772, at *5 (N.D. Ill. Feb. 20, 2008) (staying the case because a settlement would have "a substantial effect" on some or all of the plaintiffs' claims); *Annunziato v. eMachines Inc.*, 2006 WL 5014567, at *5-6 (C.D. Cal. July 24, 2006) (staying a case because it was "similar" to a settled action); *Chartenar v. Provident Mut. Life Ins. Co.*, 2003 WL 22518526, at *2-3 (E.D. Pa. Oct. 22, 2003) (staying a case because a settlement would "have a substantial affect on it, if not dispose of" some or all of the claims); *Schwarz v. Prudential-Bache Securities, Inc.*, 1991 WL 137157, at *1 (E.D. Penn. July 19, 1991) (stating that it is "eminently proper" to stay a case when a different case may "substantially affect it or even be dispositive").

4

14.)  For the reasons explained below, if Plaintiffs wish to dispute this, they may object to the settlement, opt-out of the settlement, or collaterally attack it; in the meantime, this Court should temporarily stay proceedings in this case.

> **B.     Plaintiffs' Reliance Upon The Complaints Filed In The BP Deepwater Horizon Action Is Misplaced.**

Plaintiffs maintain that their claim of racial discrimination is "wholly different" than those encompassed within the settlement agreement. (Opp'n at 4.) For support, they state—without providing any citations to the record—that (1) the Master Complaint and the First Amended Complaint only sought damages under the Oil Pollution Act of 1990 and other related maritime tort law, (2) the Vessels of Opportunity lawsuit was filed only under a breach of contract theory, and (3) because these complaints never mention "race discrimination," this theory of liability is not encompassed within the settlement agreement. An examination of the record, however, does not support Plaintiffs' argument.

The Master Complaint was filed on behalf of "[a]ll individuals and entities residing or owning property in the United States who claim economic losses, or damages to their occupations, business and/or property as a result of the April 20, 2010 explosions and fire aboard, and sinking of, the Deepwater Horizon, and the resulting Spill." (Master Compl. at 127.) Nothing in this definition excludes from the settlement class individuals who complain of racial discrimination in connection with the VoO Program. Likewise, Plaintiffs' contention that the Master Complaint and First Amended Complaint only sought damages under the Oil Pollution Act and maritime tort law is incorrect, as the complaints make clear that they seek damages under many theories of liability under state and federal law. (*See e.g.*, Rec. Doc. 1812 at 50-60; Master Compl. at 157-160.)

Additionally, although Plaintiffs repeatedly note the lack of the words "race discrimination" in the Master Complaint, the Amended Master Complaint, and the Vessel of Opportunity Complaint (*i.e.*, the Master Complaint in Accordance with PTO No. 11 [Case Management Order No. 1] Section III.B(3) ["B3 Bundle"], Rec. Doc. 1812), these pleadings were broadly drafted in order to reflect the allegations and legal theories asserted by hundreds of thousands of individuals.  The focus of this Court's inquiry thus should not be on any individual complaint, but rather on the terms of the settlement agreement.

Tellingly, Plaintiffs never dispute the *actual terms* of the settlement agreement.  For example, Plaintiffs do not dispute that under the terms of the agreement, they are members of the settlement class.  Nor do Plaintiffs dispute that the terms of the release bar them from pursuing the claims of putative class members who accept the settlement.  In fact, Plaintiffs' opposition brief does not contain a single citation to the text of the settlement agreement at issue in this case.  This is a fatal flaw because it is the terms of the settlement agreement—not the terms of the complaints or the validity of the settlement agreement—that necessitate a temporary stay in this case.

      **C.**    **A Stay Is Appropriate To Maintain The Status Quo Pending The Settlement Opt-Out Date.**

Plaintiffs never dispute that, according to the terms of the settlement agreement, Plaintiffs must opt-out of the settlement or lose their right to pursue their claims of race discrimination. They also do not dispute that they should not be given the opportunity to litigate this case and thereby test the sufficiency of their complaint prior to the time they and putative class members are required to decide whether to exclude themselves from the class settlement.  (Memo. Supp. Mot. Stay at 14-15.)  Because Plaintiffs have failed to respond to this argument, Defendants will not reiterate it here.

6

## II. Although Inappropriately Raised In Their Opposition, Plaintiffs' Arguments Regarding The Validity Of The Settlement Agreement Are Meritless.

Although Plaintiffs devote much of their opposition to the constitutional validity of the settlement agreement, rather than the meaning of the terms in the settlement agreement, this issue is not properly before this Court and was not sufficiently briefed by Plaintiffs. To dispute the validity of a settlement agreement, Plaintiffs may move to intervene and object to the settlement, opt-out of the settlement and pursue their own claims, or collaterally attack the settlement agreement. *Guthrie v. Evans*, 815 F.2d 626, 628 (11th Cir. 1987); *Walker v. City of Mesquite*, 858 F.2d 1071, 1073-74 (5th Cir. 1988) (adopting the holding and reasoning of *Guthrie*). Plaintiffs cite no legal support upholding the validity of their approach—which is to not pursue any of the above recognized avenues, but to instead assert in an opposition to a motion to stay that this Court should rule on the validity of the settlement agreement.

Additionally, even if this Court does *not* stay this action, Plaintiffs must still—if they are serious about their arguments—object to the settlement, collaterally attack it, or opt-out of it. Plaintiffs' contention that denying the motion to stay would somehow save judicial resources is thus without merit.

Nevertheless, even though Plaintiffs' arguments have not been properly raised or briefed, Plaintiffs' concerns about the validity and scope of the settlement only highlight the need for a temporary stay in this case because the scope of this case, and whether it may even proceed as a class action, will remain unknown until this Court rules on any properly-asserted objections to the settlement agreement.

### A. Plaintiffs' Due Process Argument Cannot Succeed.

By exercising their right to object to the settlement, opt-out of the settlement, or collaterally attack the settlement, Plaintiffs would be exercising the very due process rights they

claim to have been deprived of.  *See e.g., In re Mohsen*, 358 Fed. Appx. 951, 953 (9th Cir. 2009) (holding that a party who objects to a settlement has exercised his right to due process); *Richard v. Hoeschst Celansese Chem. Grp., Inc.*, 355 F.3d 345, 351 (5th Cir. 2003) (explaining that the opt-out procedure guarantees due process); *Woolen v. Surtran Taxicabs, Inc.*, 684 F.2d 324 (5th Cir. 1982) (explaining that plaintiffs may assert due process arguments in a collateral attack, although intervening and objecting to the settlement would prevent plaintiffs from needing to do so).  Since this Court is currently accepting objections and decisions to opt-out of the settlement agreement, Plaintiffs' opportunity to be heard is in fact ripe.  *See e.g.*, *In re Celera Corp. Derivative Litig.*, 2011 WL 2039399, at *2 (N.D. Cal. May 25, 2011) (holding that shareholders were not prevented from pursuing their claims because they could still object to the terms of a settlement); *In re Loranzepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 363, 365 (D. D.C. 2001) (holding that plaintiffs could not pursue discovery in a separate litigation because they could still object to the settlement or opt-out of it).

Plaintiffs' due process argument also lacks merit because, instead of relying upon case law, Plaintiffs' argument rests upon accusatory and inflammatory rhetoric.  Defendants cannot respond to this challenge because Plaintiffs have neither identified the rules governing their argument nor how these rules operate in their favor.  Suffice it to say that Defendants are not "attempting to use the Settlement Agreement to release themselves from every claim they can imagine," nor are Defendants arguing that "any lawsuit asserted against BP that include[s] the words oil spill and gulf coast" are barred by the settlement.  (Opp'n at 9.)

### B. Plaintiffs' Collateral Attack Cannot Succeed.

Plaintiffs state that they might decide to collaterally attack the settlement agreement on two grounds: adequacy of representation and failure to provide notice.  After outlining broad rules governing these two issues, Plaintiffs conclude that their future collateral attack would be

successful because (1) Defendants "have not provided any evidence that the negotiating parties to the Settlement Agreement considered, or even knew about a possible discrimination claim," and (2) the Master Complaint never mentioned race discrimination. (Opp'n at 11.) Plaintiffs' collateral attack cannot prevail on these arguments.

First, Defendants have not submitted any evidence to rebut Plaintiffs' collateral attack because Plaintiffs have never collaterally attacked the settlement agreement. Second, for the reasons explained above, the Master Complaint's failure to mention "race discrimination" does not support Plaintiffs' argument that their claims are not encompassed within the settlement agreement. Finally, although Plaintiffs contend that it is "unlikely" that the settling parties knew about Plaintiffs' race discrimination claim, this is mere speculation and cannot support a collateral attack. *See e.g.*, *Parks v. U.S.*, 208 F. Supp. 889, 891 (N.D. Ill. 2002) ("Mere speculation is insufficient to prevail on collateral attack."). Even so, the fact that this case was consolidated into the multidistrict litigation tends to prove that the settling parties *were* aware of these allegations.

Similarly, although Plaintiffs contend that the settlement notice is inadequate, they fail to explain how it was inadequate. Defendants are thus unable to respond to Plaintiffs' contention that the notice failed to satisfy the broad reasonableness standards imposed by due process.

Finally, this Court stated in its preliminary approval of the settlement agreement that "The Court approves of the form and content of the Economic Loss and Property Damage Class Notice . . . as satisfying the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e)(1) and due process," and that "the Class Representatives . . . will fairly and adequately protect the interest of the Class . . . and are represented by qualified counsel who are competent to represent the Class and prosecute this litigation." Preliminary Approval Order as to the

Proposed Economic and Property Damages Action Settlement, 2:10-md-02179-CJB-SS, at 28, 37 (May 2, 2012). Plaintiffs have not demonstrated why this Court's pronouncement is in fact incorrect.

### C. Public Policy Does Not Favor Plaintiffs.

Plaintiffs contend that the Civil Rights Act of 1866 intended to "punish rac[ially] discriminatory practices" and that Defendants "obviously want the general release under the MDL Settlement agreement to cover the Plaintiffs['] race discrimination claim, and hope that every single Plaintiff signs the Settlement Agreement . . . [so that] in public, Defendants['] alleged discriminatory acts are hidden or minimized." (Opp'n at 13.) First, Plaintiffs provide no citation for the contention that the Act is intended to *punish* violators. Second, Defendants vehemently deny that they engaged in racial discrimination or that they entered into a settlement agreement to conceal discriminatory practices, rather than to economically resolve a complex dispute. Once again, Plaintiffs have failed to provide any citation to support their inflammatory remark to the contrary.

Without identifying any particular policy behind the Civil Rights Act of 1866, Plaintiffs also assert that a stay is inappropriate because (1) a stay would impose a financial burden on Plaintiffs, and (2) if this Court grants the motion to stay, Plaintiffs will be forced to either opt into the settlement and lose the right to litigate their discrimination claim or opt-out of the settlement and pursue their own claims after the stay is lifted. (Opp'n at 11.)

Despite Plaintiffs' rote assertion of financial burden, they identify no way in which a temporary stay would in fact cause financial hardship. Additionally, regardless of the stay, Plaintiffs must either opt-out of the settlement or be bound by its terms. *Deepwater Horizon* Economic and Property Damages Settlement Agreement as Amended on May 2, 2012, at 65-67. The fact that Plaintiffs cannot opt into the settlement and also pursue their individual claims is

not a hardship; indeed, it is a permissible choice that settling parties routinely face. *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 222 (5th Cir. 1981) (explaining that plaintiffs cannot benefit from a settlement agreement and simultaneously retain their right to pursue individual claims because plaintiffs are not "entitled to the bird in the hand while pursuing the flock in the bush").

## CONCLUSION

For the reasons explained above and more thoroughly in BP Defendants' memorandum in support of their motion to stay, this Court should temporarily stay these proceedings pending implementation of the Economic Damages Settlement Agreement.

Dated: July 2, 2012							Respectfully submitted,

/s/ Don Haycraft_____
Don Haycraft (Bar #14361)
LISKOW & LEWIS
701 Poydras St., Suite 5000
New Orleans, LA  70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108
dkhaycraft@liskow.com

Sallie G. Smylie, P.C.
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL  60654
sallie.smylie@kirkland.com

*Attorneys for BP Exploration and Production Inc. and BP America Production Co.*

11

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice in accordance with the procedures established in MDL 2179, on this 2nd day of July, 2012.

      /s/  Don Haycraft_____