# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179 |
| | SECTION: J |
| This Document Relates to: | |
| All Cases | JUDGE BARBIER |
| | MAG. JUDGE SHUSHAN |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION TO VACATE ORDER AND REASONS**
[As to Motions to Dismiss the B1 Master Complaint]

Selmer M. Salvesen ("Plaintiff") respectfully requests that this Honorable Court vacate its Order and Reasons [As to Motions to Dismiss the B1 Master Complaint], Rec. Doc. 3830 dated August 26, 2011, for the following reasons.

**INTRODUCTION**

In order to efficiently manage MDL 2179, this Honorable Court consolidated and organized the various types of claims into several "pleading bundles" for the purpose of the filing of complaints, answers and any Rule 12 motions. (Case Management Order No. 1, Rec. Doc. 569).

The "B1" pleading bundle includes all claims for private or "non-governmental" economic loss and property damages." There are in excess of 100,000 individual claims encompassed within the "B1" pleading bundle. On December 15, 2010, in accordance with Case Management Order No.1, the Plaintiffs' Steering Committee ("PSC") filed a B1 Master Complaint. On January 12, 2011, the MDL 2179 Court issued PTO No. 25, in order to clarify

"the scope and effect" of the "B1" Master Complaint. The Court held that any individual plaintiff who is a named plaintiff in a case that falls within pleading bundle "B1" "is deemed to be a plaintiff in the "B1" Master Complaint." Also, "the allegations, claims, theories of recovery and/or prayers for relief contained within the pre-existing petition or complaint are deemed to be amended, restated, and superseded by the allegations, claims, theories of recovery, and/or prayers for relief in the respective "B1" Master Complaint(s) in which the Defendant is named." On February 9, 2011, the PSC filed a First Amended Master Complaint (Rec. Doc. 1128).

In the B1 First Amended Master Complaint, the PSC identifies a number of categories of claimants seeking various types of economic damages, including Commercial Fishermen Plaintiffs, Processing and Distributing Plaintiffs, Recreational Business Plaintiffs, Commercial Business Plaintiffs, Recreation Plaintiffs, Plant and Dock Worker Plaintiffs, Vessel of Opportunity ("VoO") Plaintiffs, Real Property Plaintiffs, Real Property/Tourism Plaintiffs, Banking/Retail Business Plaintiffs, Subsistence Plaintiffs, Moratorium Plaintiffs, and Dealer Claimants.

Rather than allege claims under the Oil Pollution Act of 1990 ("OPA") (which governs the MDL 2179 cases alleging economic loss due to the BP oil spill) and the Outer Continental Shelf Lands Act ("OCSLA") (which governs the MDL 2179 personal injury and wrongful death actions and borrows the law of the adjacent state as surrogate federal law), the PSC made the unfathomable decision to allege claims under a hodgepodge of statutes.

In the B1 First Amended Master Complaint, the PSC states, "The claims presented herein are admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil

Procedure. Plaintiffs hereby designate this case as an admiralty or maritime case, and request a non-jury trial, pursuant to Rule 9(h)."

Under general maritime law, the PSC alleges claims for negligence, gross negligence and willful misconduct, and strict liability for manufacturing and/or design defect. Under various state laws, the PSC alleges claims for nuisance, trespass, and fraudulent concealment. Under the Florida Pollutant Discharge Prevention and Control Act, Fla. Stat. § 376.011, et seq., PSC alleges a claim for strict liability. The PSC also seeks: (a) punitive damages under all claims; and (b) a declaration by the Court that the conduct of BP and its agents and representatives, including the Gulf Coast Claims Facility ("GCCF"), in obtaining releases and/or assignments of claims against other parties, persons, or entities is not an obligation of BP under OPA.

The PSC points out that the B1 Master Complaint "is submitted pursuant to this Court's Case Management Order No. 1 as: (1) an administrative device to serve the functions of efficiency and economy; and (2) to present certain common claims and common questions of fact and law for appropriate action by this Court, including class certification and trial, in the context of this multidistrict proceeding."

The B1 First Amended Master Complaint "Prayer for Relief" states in part:

"WHEREFORE, Plaintiffs and the Class and/or Subclass Members demand judgment against Defendants, jointly, severally, and solidarily, as follows:

(f) An order certifying the Class and/or Subclasses as set forth herein under the appropriate provisions of F.R.C.P. 23, appointing Plaintiffs as Class and/or Subclass Representatives, and appointing undersigned counsel as counsel for the Class and/or Subclasses for the purpose of determining the quantum or ratio of punitive damages to be assessed against each of the Defendants, to be paid ratably to Class and/or Subclass members who recover, through claims processes or litigation, actual damages and/or otherwise equitably utilized in accord with the societal purposes of punitive damages."

The PSC appears to be more interested in ensuring significant economy and efficiency in the judicial administration of the MDL 2179 court rather than in obtaining justice for the MDL 2179 plaintiffs. As noted above, in its B1 First Amended Master Complaint, the PSC alleges claims under general maritime law, not under OPA and OCSLA, thereby assisting this Honorable Court in expeditiously being able to:

> (a) Find, "The Deepwater Horizon was at all material times a vessel in navigation."
>
> (b) Find, "Admiralty jurisdiction is present because the alleged tort occurred upon navigable waters of the Gulf of Mexico, disrupted maritime commerce, and the operations of the vessel bore a substantial relationship to traditional maritime activity. With admiralty jurisdiction comes the application of substantive maritime law."
>
> (c) Find, "State law, both statutory and common, is preempted by maritime law, notwithstanding OPA's savings provisions. All claims brought under state law are dismissed."
>
> (d) Find, "General maritime law claims that do not allege physical damage to a proprietary interest are dismissed under the *Robins Dry Dock* rule, unless the claim falls into the commercial fishermen exception."
>
> (e) Find, "…. That nothing prohibits Defendants from settling claims for economic loss. While OPA does not specifically address the use of waivers and releases by Responsible Parties, the statute also does not clearly prohibit it. In fact, as the Court has recognized in this Order, one of the goals of OPA was to allow for speedy and efficient recovery by victims of an oil spill."

*In re Oil Spill by the Rig Deepwater Horizon in the Gulf of Mexico*, on April 20, 2010, - F. Supp. 2d -, 2011 WL 3805746 (Aug. 26, 2011 E.D. La.).

Since the PSC requests a non-jury trial pursuant to Rule 9(h) and alleges claims under general maritime law, rather than OPA and OCSLA, this Honorable Court has formulated a trial plan that dispenses with trial by jury and instead conducts a bench trial applying general maritime law.

Although this Honorable Court did not address the issue of class certification in its Order

-4-

dated August 26, 2011, Plaintiff Salvesen filed his "Motion in Opposition to Class Certification of Any Action in MDL 2179" on December 4, 2011 (Rec. Doc. 4798). *See* attached Exhibit A and Exhibit B. This motion is pending in this Honorable Court.

## LAW AND ARGUMENT

### A. The Lexecon Rule

The Supreme Court has held that a district court conducting pretrial proceedings pursuant to 28 U.S.C. §1407(a) has no authority to invoke 28 U.S.C. §1404(a) to assign a transferred case to itself for trial. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

In *Lexecon*, petitioners, a law and economics consulting firm and one of its principals (collectively, "Lexecon"), were defendants in a class action brought against Charles Keating and the American Continental Corporation in connection with the failure of Lincoln Savings and Loan. It and other actions arising out of that failure were transferred for pretrial proceedings to the District of Arizona under 28 U. S. C. §1407(a), which authorizes the Judicial Panel on Multidistrict Litigation to transfer civil actions with common issues of fact "to any district for coordinated or consolidated pretrial proceedings," but provides that the Panel "shall" remand any such action to the original district "at or before the conclusion of such pretrial proceedings." Before the pretrial proceedings ended, the plaintiffs and Lexecon reached a "resolution," and the claims against Lexecon were dismissed. Subsequently, Lexecon brought a diversity action in the Northern District of Illinois against respondent law firms (hereinafter Milberg and Cotchett), claiming several torts, including defamation, arising from the firms' conduct as counsel for the class action plaintiffs. Milberg and Cotchett moved for, and the Panel ordered, a §1407(a)

-5-

transfer to the District of Arizona. After the remaining parties to the Lincoln Savings litigation reached a final settlement, Lexecon moved the Arizona District Court to refer the case back to the Panel for remand to the Northern District of Illinois. The law firms filed a countermotion requesting the Arizona District Court to invoke §1404(a) to "transfer" the case to itself for trial. With only the defamation claim against Milberg remaining after a summary judgment ruling, the court assigned the case to itself for trial and denied Lexecon's motion to request the Panel to remand. The Ninth Circuit then denied Lexecon's petition for mandamus, refusing to vacate the self-assignment order and require remand because Lexecon would have the opportunity to obtain relief from the transfer order on direct appeal. After Milberg won a judgment on the defamation claim, Lexecon again appealed the transfer order. The Ninth Circuit affirmed on the ground that permitting the transferee court to assign a case to itself upon completion of its pretrial work was not only consistent with the statutory language but conducive to efficiency.

Justice Souter, in delivering the opinion of the Court, explained 28 U. S. C. §1407(a) authorizes the Judicial Panel on Multidistrict Litigation to transfer civil actions with common issues of fact "to any district for coordinated or consolidated pretrial proceedings," but imposes a duty on the Panel to remand any such action to the original district "at or before the conclusion of such pretrial proceedings." "Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated." 28 U.S.C. §1407(a). The issue here is whether a district court conducting such "pretrial proceedings" may invoke 28 U.S.C. §1404(a) to assign a transferred case to itself for trial. We hold it has no such authority.

Justice Souter pointed out that the Panel's instruction comes in terms of the mandatory

-6-

"shall," which normally creates an obligation impervious to judicial discretion. *Anderson* v. *Yungkau*, 329 U. S. 482, 485 (1947). In the absence of any indication that there might be circumstances in which a transferred case would be neither "terminated" nor subject to the remand obligation, then, the statutory instruction stands flatly at odds with reading the phrase "coordinated or consolidated pretrial proceedings" so broadly as to reach its literal limits, allowing a transferee court's self-assignment to trump the provision imposing the Panel's remand duty. If we do our job of reading the statute whole, we have to give effect to this plain command, see *Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U. S. 469, 476 (1992), even if doing that will reverse the longstanding practice under the statute and the rule, see *Metropolitan Stevedore Co.* v. *Rambo* (1995)("'Age is no antidote to clear inconsistency with a statute."(quoting *Brown* v. *Gardner*, 513 U. S 115, 122 (1994))).

In *Lexecon*, Milberg proffers an argument for overlooking the tension between a broad reading of a court's pretrial authority and the Panel's remand obligation. Milberg relies on a subtle reading of the provision of §1407(a) limiting the Panel's remand obligation to cases not "previously terminated" during the pretrial period. To be sure, this exception to the Panel's remand obligation indicates that the Panel is not meant to issue ceremonial remand orders in cases already concluded by summary judgment, say, or dismissal. But according to Milberg, the imperative to remand is also inapplicable to cases self-assigned under §1404, because the self-assignment "terminates" the case insofar as its venue depends on §1407. When the §1407 character of the action disappears, Milberg argues, the strictures of §1407 fall away as well, relieving the Panel of any further duty in the case. The trouble with this creative argument, though, is that the statute manifests no such subtlety. Section 1407(a) speaks not in terms of

-7-

imbuing transferred actions with some new and distinctive venue character, but simply in terms of "civil actions" or "actions." It says that such an action, not its acquired personality, must be terminated before the Panel is excused from ordering remand. The language is straightforward, and with a straightforward application ready to hand, statutory interpretation has no business getting metaphysical.

Moreover, the Supreme Court found that neither the statute's language nor legislative history can unsettle §1407's straightforward language imposing the Panel's responsibility to remand, which bars recognizing any self-assignment power in a transferee court and consequently entails the invalidity of the Panel's Rule 14(b).

If it has anything to say to us here, the legislative history tends to confirm that self-assignment is beyond the scope of the transferee court's authority. Justice Souter noted that the same House Report that spoke of the continued vitality of §1404 in §1407 cases also said this:

> *"The proposed statute affects only the pretrial stages in multidistrict litigation. It would not affect the place of trial in any case or exclude the possibility of transfer under other Federal statutes.....The subsection requires that transferred cases be remanded to the originating district at the close of coordinated pretrial proceedings. The bill does not, therefore, include the trial of cases in the consolidated proceedings."* H. R. Rep. No.1130, 90th Cong., 2d Sess., p. 4 (1968) (Emphasis added)

The comments of the bill's sponsors further suggest that application of 28 U.S.C. §1407 would not affect the place of trial. See, *e.g.,* Multidistrict Litigation: Hearings on S. 3815 and S. 159 before the Subcommittee on Improvements in Judicial Machinery of the Senate Comm. On the Judiciary, 90th Cong., 1st Sess. Pt. 2, p. 110 (1967) (Sen. Tydings) ("[W]hen the deposition and discovery is completed, then the original litigation is remanded to the transferor district for trial"). *Both the House and the Senate Reports stated that Congress would have to*

Case 2:10-md-02179-CJB-DPC   Document 6831-3   Filed 07/02/12   Page 10 of 17
Case 2:10-md-02179-CJB-SS   Document 6186-1   Filed 04/08/12   Page 9 of 16

*amend the statute if it determined that multidistrict litigation cases should be consolidated for trial.* S. Rep. No. 454, 90th Cong., 1st Sess., p. 5 (1967). (Emphasis added)

Justice Souter concluded by stating, "In sum, none of the arguments raised can unsettle the straightforward language imposing the Panel's responsibility to remand, which bars recognizing any self-assignment power in a transferee court and consequently entails the invalidity of the Panel's Rule 14(b). *See* 28 U. S. C. §1407(f). Milberg may or may not be correct that permitting transferee courts to make self-assignments would be more desirable than preserving a plaintiff's choice of venue (to the degree that §1407(a) does so), but the proper venue for resolving that issue remains the floor of Congress."

The fact that §1407's strict remand requirement creates an interest too substantial to be left without a remedy is attested by a congressional judgment that no discretion is to be left to a court faced with an objection to a statutory violation. The §1407 mandate would lose all meaning if a party who continuously objected to an uncorrected categorical violation of the mandate could obtain no relief at the end of the day.

Writing in dissent for the Ninth Circuit, Judge Alex Kozinski presaged the Supreme Court's ruling by characterizing self-transfer as "a remarkable power grab by federal judges," because the practice exceeded the authority Congress granted to transferee judges. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach (In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.)*, 102 F.3d 1524, 1540 (9th Cir. 1996)(Kozinski, J., dissenting) (arguing that "the language itself [of 1407] is clear as sunlight"), rev'd, 118 S. Ct. 956 (1998). In addition, Judge Kozinski had observed that nearly 30 years of congressional silence on the issue of self-transfer merited little deference since Congress exercises little oversight in the M.D.L. area. *See*

*Lexecon*, 102 F.3d at 1549 (Kozinski, J., dissenting)(contrasting this area with Congress' "vigorous oversight" of tax laws, where congressional silence could properly be considered ratification).

**B.     The "Conundrum"**

The Honorable John G. Heyburn II, Chair of the Judicial Panel on Multidistrict Litigation ("Panel"), addressed the *Lexecon* decision in his article, "A View From the Panel: Part of the Solution," 82 *Tulane L. Rev.* 2225 (2008). The following is an excerpt from Judge Heyburn's article.

"A continuing unresolved controversy over the Panel's history has concerned the power of transferee judges to retain transferred actions for trial. For nearly thirty years, numerous transferee judges tried such actions after first transferring the actions to themselves under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406 - a practice expressly recognized in then operative Panel Rule 14(b), which provided that "'[e]ach transferred action that has not been terminated in the transferee district court shall be remanded by the Panel to the transferor district for trial, unless ordered transferred by the transferee judge to the transferee or other district under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406.'" *See, e.g., Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 32-33 (1998) (quoting Panel Rule 14(b)). This further transfer was necessary, of course, because *§ 1407 authorizes transfer for pretrial proceedings only. See* 28 U.S.C. § 1407(a) (2000). *Id.* at 2233 n.47. (Emphasis added)

In 1998, however, the Supreme Court held that transferee courts lack such self-transfer authority, concluding that the practice was at odds with § 1407(a). See *Lexecon*, 523 U.S. at 36

(stating that "self-assignment" by a transferee court "conclusively thwarts the Panel's capacity to obey the unconditional command of § 1407(a)."). In response to the *Lexecon* decision and at the Panel's recommendation, the Judicial Conference of the United States immediately urged Congress to enact a statutory fix, and has continued to advocate such a change, as has the Panel. Indeed, two past Panel chairs, Judge Hodges in 2006 and Judge Nangle in 1999, testified before Congress and, echoing the views of many experienced transferee judges, strongly urged that § 1407 be amended to fix the situation that *Lexecon* created. Despite these best efforts, Congress appears unlikely to act on our request at this time. *Id.* at 2234 n.47.

To be sure, the *Lexecon* imperative does create severe inefficiencies in some cases as the transferor judge must re-familiarize himself or herself with the remanded action (perhaps many months after it was transferred out of the district under § 1407). However, efficiency is not the only touchstone of justice. A substantial body of opinion and a respect for jurisdictional principles suggest that a plaintiff ordinarily has a right to a trial in the forum of his or her choosing. *See, e.g., Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) (noting that a plaintiff ordinarily should not be denied the advantages of his chosen jurisdiction). Aggregation of cases for the purpose of facilitating settlement is a byproduct of § 1407, but is not its central statutory purpose. *See In re Patenaude*, 210 F.3d 135, 144 (3d Cir. 2000). *Id.*

Transferee judges are nothing if not resourceful where necessity dictates and several appropriate strategies are available by which the Lexecon conundrum may be avoided. For example, provided the plaintiff is amenable and venue lies in the transferee district, the action could be refiled there. See MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.132, at 224 (2004). The parties could also agree to waive objections to venue. *See In re Carbon Dioxide*

-11-

*Indus. Antitrust Litig.*, 229 F.3d 1321, 1325-26 (11th Cir. 2000). Alternatively, the transferee court could try a "bellwether" case that was originally filed in the transferee district, the result of which may promote settlement of the transferred actions in the MDL. See MANUAL FOR COMPLEX LITIGATION (FOURTH), supra, § 20.132, at 224; *See* also *In re Air Crash Near Cali, Colom. on Dec. 20, 1995*, Case No. 1:96-MD-01125-KMM (S.D. Fla. Jan. 12, 2000) (noting that plaintiffs in certain transferred actions had agreed to be bound by the results of a consolidated liability trial in the transferee court). Another option, suggested in the *Lexecon* opinion itself, is for the transferor court to transfer the action back to the transferee court under § 1404(a). *Lexecon*, 523 U.S. at 39 n.2; *See* also *Kenwin Shops, Inc. v. Bank of La.*, No. 97 Civ. 907 (LLM), 1999 WL 294800, at *1 (S.D.N.Y. May 11, 1999) (transferring an action remanded under § 1407 to the transferee court under § 1404). Still another option would be for the transferee judge to follow the action to the transferor court after obtaining an intracircuit or intercircuit assignment. See MANUAL FOR COMPLEX LITIGATION (FOURTH), supra, § 20.132, at 224; *See* also *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1341-42 (Fed. Cir. 2007) (stating that an MDL judge from the United States District Court for the Northern District of Georgia, sitting by designation, presided over the trial of a remanded action in the United States District Court for the Northern District of Texas)." *Id.*

## C.     MDL 2179

The *Lexecon* decision applies to MDL 2179. This transferee court, which is conducting pretrial proceedings pursuant to 28 U.S.C. §1407(a), has no authority to invoke 28 U.S.C. §1404(a) to assign a transferred case to itself for trial.

On August 10, 2010, the United States Judicial Panel on Multidistrict Litigation ("JPML") issued its Transfer Order (Rec. Doc. 1) wherein it clearly states:

> "IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A and pending outside the Eastern District of Louisiana are transferred to the Eastern District of Louisiana and, with the consent of that court, assigned to the Honorable Carl J. Barbier *for coordinated or consolidated pretrial proceedings* with the actions pending in that district and listed on Schedule A." (Emphasis added)

Merely three examples of how this Honorable Court overreached its authority in issuing its Order and Reasons [As to Motions to Dismiss the B1 Master Complaint], Rec. Doc. 3830 dated August 26, 2011, are by ruling:

> (a) "State law, both statutory and common, is preempted by maritime law, notwithstanding OPA's savings provisions. All claims brought under state law are dismissed."

> (b) "General maritime law claims that do not allege physical damage to a proprietary interest are dismissed under the *Robins Dry Dock* rule, unless the claim falls into the commercial fishermen exception."

> (c) "…. that nothing prohibits Defendants from settling claims for economic loss. While OPA does not specifically address the use of waivers and releases by Responsible Parties, the statute also does not clearly prohibit it. In fact, as the Court has recognized in this Order, one of the goals of OPA was to allow for speedy and efficient recovery by victims of an oil spill."

Moreover, the MDL 2179 court fails the "Heyburn Test." As noted above, Judge Heyburn points out that five appropriate strategies are available by which the Lexecon conundrum may be avoided:

> (a) Provided the plaintiff is amenable and venue lies in the transferee district, the action could be refiled there.

> (b) The parties could also agree to waive objections to venue.

> (c) Alternatively, the transferee court could try a "Bellwether" case that was originally filed in the transferee district, the result of which may promote settlement of the transferred actions in the MDL.

(d) Another option, suggested in the *Lexecon* opinion itself, is for the transferor court to transfer the action back to the transferee court under § 1404(a).

(e) Still another option would be for the transferee judge to follow the action to the transferor court after obtaining an intracircuit or intercircuit assignment.

The MDL 2179 court has failed to avail itself of any of these "appropriate" strategies. A Bellwether trial is sui generis; a "walks like a duck, quacks like a duck, it must be a duck" analysis cannot be used. Judge Barbier cannot try the cases transferred for "pretrial proceedings." Judge Barbier certainly cannot try all of the plaintiffs' claims in the aggregate in this proceeding. Nor can the *Lexecon* decision be circumvented by the device of permitting claimants to file "short-form joinders" injecting themselves into the limitation action. Accordingly, Judge Barbier, at the request of the PSC, formulated a non-jury trial plan which does not seek to adjudicate all the plaintiffs' claims in the aggregate. Instead, it plans a non-jury trial of "issues" related to "allocation of fault" in the abstract. This novel proposal is still defective, as a trial of "issues" would try parts of actions that under *Lexecon* the MDL judge must not try and would amount to a class action in a limitations proceeding contrary to Rule 23. Moreover, the Fifth Circuit has held that class actions are not permitted in limitation proceedings. *Lloyds Leasing Ltd. v. Bates,* 902 F.2d 368 (5th Cir. 1990). Indeed, such a trial resembles an unsanctioned class action in almost everything but name. It does not remotely resemble a "Bellwether" trial.

Although Judge Barbier and the PSC refer to the MDL 2179 court's "broad discretionary authority," a "special-procedure" should not be crafted where a mandatory procedure already exists. It is important to remember that the very MDL procedures Judge Barbier and the PSC wish to circumvent were specifically enacted to reduce costs and promote judicial economy. Allowing the MDL 2179 trial plan would be inconsistent with the clear statutory mandate of the

-14-

multidistrict litigation enabling statute, 28 U.S.C. § 1407(a), and the Supreme Court's holding in *Lexecon*. While the need to promote efficiency in litigation is real, it cannot be accomplished by overriding the applicable provisions set forth by Congress. *In re: FEMA Trailer Formaldehyde Products Liability Litigation*, 2009 WL 2390668 (United States District Court, E.D. Louisiana). The Supreme Court has made it very clear that considerations of finality, efficiency and economy do not justify defiance of the congressional condition that a district court conducting pretrial proceedings pursuant to 28 U.S.C. §1407(a) has no authority to invoke 28 U.S.C. §1404(a) to assign a transferred case to itself for trial; such an action shall be remanded to the transferor court for trial.

Judge Heyburn describes the *Lexecon* decision as a "conundrum" which may be avoided by "resourceful" transferee judges. Plaintiff respectfully disagrees. The *Lexecon* decision is not a conundrum. It is not an obstacle which judicial discretion may circumvent in the name of judicial efficiency/economy or political expediency. It is the law.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court vacate its Order and Reasons [As to Motions to Dismiss the B1 Master Complaint], Doc. No. 3038 dated August 26, 2011.

DATED: April 8, 2012

Respectfully submitted,

/s/ **Brian J. Donovan**
Brian J. Donovan
Attorney for Plaintiff
Florida Bar No. 143900
3102 Seaway Court, Suite 304
Tampa, FL 33629
Tel: (352)328-7469
BrianJDonovan@verizon.net

-15-

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 8th day of April, 2012.

/s/ Brian J. Donovan
Brian J. Donovan
Attorney for Plaintiff
Florida Bar No. 143900
3102 Seaway Court, Suite 304
Tampa, FL 33629
Tel: (352)328-7469
BrianJDonovan@verizon.net