UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | * * * * * * | MDL NO. 2179 SECTION J JUDGE BARBIER MAG. JUDGE SUSHAN |
| THIS DOCUMENT APPLIES TO: No. 12-311 | * * | **JURY TRIAL DEMANDED** |

*************************************************************************

## LIBERTY'S REPLY IN SUPPORT OF ITS RULE 12C MOTION

Liberty replies to Cameron's Response (R. Doc. 6697) to Liberty's Rule 12(c) Motion (R. Doc. 6438).

A.  **Cameron's Arguments Based On The "Other Insurance Clause" Are Wrong.**

Cameron does not dispute that the Transocean indemnity obligation is "Other Insurance" under the Policy. Cameron only disputes its operation, suggesting an unworkable procedure that renders it meaningless. Cameron is wrong. Cameron cites two cases purportedly shifting the burden to the insurer on "Other Insurance" provisions; neither applies Texas law. Under Texas law,[1] the insured bears the burden of proving an excess policy attaches, including exhaustion of underlying insurance as a condition precedent to coverage. *See, e.g., D.R. Horton, Inc. v. Am. Guar. & Liab. & Ins. Co.*, 2012 WL 1893977, at *19 (N.D. Tex. 2012) (to trigger second-level excess policy, insured must prove exhaustion of underlying and self-insured retention).[2] That is true for "Other Insurance" as well, as a leading treatise confirms:

> When a policy is excess, whether because it is truly written to apply only above "Other Insurance" with lower limits or becomes excess by operation of an "Other Insurance"

---

[1] *See Am. Elec. Power Co. v. Aff. FM Ins. Co.*, 556 F.3d 282, 286 n.2 (5th Cir. 2009) (law of state where insurance issued/executed governs interpretation).

[2] *Dresser Indus., Inc. v. Underwriters at Lloyd's, et al.*, 106 S.W.3d 767, 771 (Tex. App. 2003)

1

clause, part of the insured's burden of proof in establishing a claim for recovery from such insurance is the fact that the loss is such that the limits of the excess policy have been triggered.

COUCH ON INS., § 254:39. The Fifth Circuit agrees that "Other Insurance" may be a condition of coverage. *See RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858-61 (5th Cir. 2010). Here, the Liberty Excess Policy clearly provides it is *excess* of "Other Insurance" under **Condition F**: "If 'Other Insurance' applies to a 'loss' that is also covered by this policy, this policy will apply excess of such 'Other Insurance' . . . 'Other Insurance' includes any type of . . . indemnification or other mechanism by which an Insured arranges for funding of legal liabilities." Under Texas law, Cameron, not Liberty, bears the burden of proof that this condition has been satisfied.

In arguing to the contrary, Cameron chiefly relies on two cases: *Rhone-Poulenc, Inc. v. Int'l Ins. Co.*, 1996 WL 328011, at *3 (N.D. Ill. 1996), and *Ins. Co. of N. Am. v. Kayser-Roth*, 1999 WL 813661 (R.I. Super. Ct. 1999); neither applies Texas law. In *Rhone-Poulenc* (unpublished), the court considered whether environmental liability policies provided *concurrent primary coverage* with CGL for purposes of Rule 19, and not the burden of proof to trigger an excess policy. Moreover, the clause in *Rhone-Poulenc* required the "Other Insurance" to be "collectible;" a requirement not in the Liberty Policy. *Kayser-Roth* also involved different language interpreted under a different state's law. Applying Rhode Island law, the *Kayser-Roth* court interpreted a clause requiring "Other Insurance" to be "valid and collectible;" language not found in the Liberty Policy.[3] Thus, each is inapposite.

Cameron has not shown that the "Other Insurance" condition precedent has been satisfied, and regardless of the burden of proof, has made this condition impossible. Cameron's chief arguments on why the "Other Insurance" condition precedent does not prevent coverage

---

[3] *Raytheon Co. v. Cont'l. Co.*, 123 F. Supp. 2d 22 (D. Mass. 2000), also cited, involved "super escape clause" in primary policies that was an exclusion in some policies, and thus treated as an exclusion.

from attaching are (1) Transocean refused to honor its contractual obligations; and (2) Liberty's position that the policy must be enforced as written purportedly leads to absurd results. These complaints do not hold water.

On the first point, Cameron's position renders the "Other Insurance" condition toothless, as Cameron's actions demonstrate. Although Cameron tells the Court Liberty should give up on the benefit of its bargain because Transocean disagrees on indemnity, Cameron told the Court in the BP Litigation that "any fair reading of the [Drilling Contract] will confirm" that Cameron is owed indemnity. (R. Doc. 4866 at p. 2). Cameron stated that "[h]olding [BP and Transocean] to the terms of their sophisticated bargains [to provide indemnity to Cameron] will assure proper allocation of the pollution risk." *Id.* These good faith assertions, grounded in the contract with Transocean, which itself was grounded in standard industry practice on allocation of pollution risk among sophisticated parties, demonstrate the claim for indemnity was alive and well. It is the ***existence*** of the indemnity right that triggers the condition, ***"whether or not recovery under this "Other Insurance" is actually sought"***:

> By it plain language, the triggering of Condition 8 ["Other Insurance" clause] requires only (1) the existence of "Other Insurance" insuring to [the insured's] benefit, and (2) overlapping coverage between that "Other Insurance" and [the policy at issue]. The means by which actual recovery might be achieved under the "Other Insurance" in question, whether by settlement agreement or by judgment, is irrelevant to Condition 8's applicability. The existence of "Other Insurance" that covers the same liability as the Environmental policies is what triggers the condition, whether or not recovery under this other insurance is actually sought.

*RSR Corp.*, 612 F.3d at 858. The deal with BP may have ended Cameron's pursuit of its indemnity rights; but it did not negate the fact that indemnity claim existed triggering Condition F and preventing coverage from attaching.

Indeed, when Cameron struck its deal with BP, Cameron did not abandon its indemnity right; Cameron bargained it away, and in Cameron's opinion, received a significant benefit

3

because of its indemnity claim.[4] *See* (R. Doc. 6287 at ¶ 45) (decision on indemnity motions could easily "result in substantially higher settlement demands on Cameron"); *id.* at ¶ 53 (release of indemnification claims "a crucial part of the settlement consideration that BP was seeking"). Cameron's bargain with BP ended Cameron's pursuit of indemnity, making it impossible to fulfill the condition precedent to trigger coverage.

Cameron's own arguments illustrate that its position is absurd. Cameron maintains that, when Other Insurance is at issue, the insurer should pay-up and then pursue indemnity. Liberty cannot do this because Cameron made it impossible when it bargained away its indemnity rights,[5] a point Cameron ignores. Factoring it in, Cameron is entitled to coverage ***only if*** the Court rewrites Liberty's policy removing Condition F, which it cannot do. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003) ("[W]e may neither rewrite the parties' contract nor add to its language.").

**B.      Cameron Extinguished Liberty's Policy Rights, Negating Coverage.**

In settling with BP, Cameron impaired Liberty's rights, negating coverage. Cameron does not distinguish or dispute Liberty's cited authorities on this point. Instead, Cameron obfuscates, arguing it did not release Liberty's subrogation rights by citing a single sentence from the agreement: "Notwithstanding any other provision of this Agreement, including paragraphs 4.2 and 4.3, Cameron is not releasing any subrogation or other rights of Liberty Insurance Underwriters Inc." (R. Doc. 6697-2 at p. 24). This purported reservation is hollow

---

[4]      Had Cameron's motion succeeded, that indemnity would inure to the benefit of Liberty under the Policy.

[5]      *See* (R. Doc. 6287 at ¶¶ 42-51).

4

lip-service. Liberty, a subrogated insurer, can only stand in Cameron's shoes, and Cameron undisputedly assigned to BP or released its "indemnification claims against Transocean under the Transocean Contracts." *Id.* Ex. 3 at ¶¶ 4-5. Cameron *released* the very indemnification rights to which Liberty would have been subrogated. By extinguishing Liberty's subrogation rights, Cameron "forfeits any claim for indemnity under the policy." *Foundation Reserve Ins. Co.*, 458 S.W.2d at 214, 216 (Tex. Civ. App., 1970, no pet.).

Equally misplaced is Cameron's reliance on an alleged promise not to raise its breach of policy consent requirements. Liberty never agreed to release of its subrogation rights. Any fair reading of the letter Cameron cites clearly advises Liberty's non-objection relates to the *amount* of the settlement. In the same letter, Liberty expressly objected to "the non-economic aspects of the proposed settlement" clarifying that "such action will jeopardize any coverage which Cameron might otherwise have under the LIU policy." Cameron also protests that it had to release its indemnification rights to settle, suggesting the release is excusable. Even if true, Cameron's release of those rights had implications under the Liberty Excess Policy; Cameron cannot unilaterally alter those terms. *See* (R. Doc. 6438-3 at pp. 17-18).

Finally, Cameron misleadingly chides Liberty for not raising the "Other Insurance" issue until after settlement negotiations with BP had begun. The assertion is irrelevant to the dispositive issue and disingenuous. Cameron admits that "Other Insurance" clauses control the order in which multiple sources of insurance attach or are called on to pay.[6] Unless and until the BP settlement began to materialize and payment of an amount within Liberty's position became

---

[6] *See id.* at p. 13.

an issue, Liberty's "Other Insurance" clause had no relevance to Cameron's claim.

C.  **Liberty Is Entitled To Dismissal Of Cameron's Bad Faith Claims.**

Nothing in Cameron's responses changes the fact that Cameron has not pled a viable claim for bad faith under any state's law. *First,* Cameron errantly contends it sufficiently pleaded a cause of action under the Texas Insurance Code Chapter 541. Cameron could not be more wrong. Under the Texas Insurance Code, for there to be bad faith, liability must be "reasonably clear,"[7] which cannot be established here as a matter of law as the Liberty Excess Policy is excess to any "indemnification" and the amount and extent of indemnity flowing from Transocean to Cameron undisputably has not been determined.[8] Cameron's claim under Section 542 also must be dismissed because Section 542 only applies to first-party insurance claims, and not the third-party claim at issue here. *See* (R. Doc. 6438-3 at p. 28).

*Second,* because Texas law applies, the Louisiana statutory claims are absurd and independently, do not apply on their face. Cameron argues Liberty's failure to fund the settlement could trigger liability under La. Rev. Stat. 22:1892 (A)(2), but cites no supporting authority. By its terms, A(2) solely requires insurers to "pay the amount of any third party property damage claim . . . within thirty days after written agreement of settlement of the claim from any third party claimant." *Id.* This provision, which must be strictly construed,[9] governs only third-party claimant's rights, and *not* Cameron's first-party claim. Also, the statute does not

---

[7] *See* Tex.Ins.Code 541.060(A)(2)(B); *Aranda v. Ins. Co. of N. Am.,* 748 S.W.2d 210, 213 (Tex. 1988).

[8] Stated another way, how can Liberty be in bad faith in claiming Cameron had a right to indemnity when Cameron itself had pending a motion against Transocean vigorously claiming the same?

[9] *See, Jackson v. State Farm Fire & Cas. Co.,* 2010 WL 724108 at 3 (E.D. La. Feb. 22, 2010),*Id.* ([Louisiana's] bad faith statutes are penal in nature and should be strictly construed).

apply absent a settlement agreement between a third-party claimant and the insurer. *See Woodruff v. State Farm Ins. Co.*, 767 So. 2d 785 (La. App. 4 Cir. 2000) (third-party claimant must allege settlement agreement with insurer for claim under 1892(A)(2)). Liberty is not party to a settlement agreement with a third-party; (A)(2) is inapplicable.

Nor does (A)(1) apply. (A)(1) "does not squarely cover" an insured's claim that its insurer failed to settle third-party liability claims against it. *Louque v. Allstate Ins. Co.*, 314 F.3d 776, 780 (5th Cir. 2002). "[I]instead" the statute penalizes only the insurer's failure to pay "a claim *due the insured* 'within thirty days after receipt of satisfactory proofs of loss,'" *i.e.*, a first-party claim.[10] *Id.* at 781. Not surprisingly, Cameron failed to identify a single reported decision holding (A)(1) applies to an insured's claim that an insurer failed to settle a third-party claim. Even if 1892(A) could apply, Cameron cannot show Liberty received "satisfactory proof of loss," i.e. sufficient information to "fully apprise the insurer of the insured's claim."[11] *McDill v. Utica Mut. Ins. Co.*, 475 So. 2d 1085, 1089 (La. 1985). Cameron contends Liberty received the required proof because Liberty was "integrally involved in the claim and was sent a copy of the Settlement Agreement immediately after it was executed."[12] Cameron does not dispute, nor could it, that Liberty did not receive information concerning the amount of the indemnity Transocean owed to Cameron, as the issue was unresolved. Without this information, Liberty could not possibly assess the amount of covered loss and thus was not "fully apprised"

---

[10] Liberty admits section 1892 affords limited rights to both first- and third-party claimants, as stated in *Louque*. But Cameron's claims do not fall within those limited rights

[11] *See also Armstrong v. Safeway Ins. Co.*, 47 So. 3d 63 (La. App. 3rd Cir. 2010).

[12] (R. Doc. 6697-2, at p. 27).

7

concerning its potential liability, and the statutory payment obligation was not triggered.[13]

**D.     Liberty Is Entitled To Dismissal Of Cameron's Claim Regarding Defense Costs.**

In opposition, Cameron admits Liberty has no duty to defend, but attempts to create an artificial distinction between an insurer's duty to defend and a duty to pay defense expenses. Liberty is not liable for defense costs under the clear terms of the Policy. As discussed in Liberty's Motion, the plain policy language supplants the defense provisions in the underlying policy and limits Liberty's defense and payment obligations under the policy. The Liberty Excess Policy does not provide for payment of defense costs, a fact Cameron ignores. Specifically, the term "loss" does not include defense costs; the policy states Liberty will pay on behalf of the Insured "loss" that results from an occurrence during the "policy period." "Loss" is defined in the policy as "those sums which the insured is legally obligated to pay as damages, after making proper deductions for all recoveries and salvage." (R. Doc. 6438-4, Ex. A at ¶ IV). Cameron's attorney fees are not "damages" and therefore not "loss" under the Policy.

Moreover, the Liberty policy expressly addresses defense costs and provides that Liberty has no obligation to pay them. The Policy states "[w]e will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for "loss" under this policy. If we exercise such right, we will do so at our expense." *Id.* at ¶ III(B). Cameron's admission that any common law duty of defense is supplanted by the terms of the Liberty Policy, which ends the analysis: The Policy outlines Liberty's duties related to defense of Cameron and clearly sets

---

[13]     Cameron admits the "Other Insurance" coverage dispute is relevant to whether Liberty's conduct was arbitrary and capricious. It also is relevant to the satisfactory proof of loss issue.

forth that no duty to defend or pay defense costs exists.

E.   **Cameron's Claims Should Be Dismissed Pursuant To Rule 12.**

Finally, contrary to Cameron's claim, the issues raised in Liberty's motion can be resolved on a Rule 12 motion.[14]  *See, e.g., Lawrence v. Slidell Welding Srv., Inc.,* 2011 WL 63875 (E.D. La., 2011) (judgment on pleadings that "employment exclusion" negated coverage and duty to defend).  Nor are facts beyond the pleadings necessary to resolve this coverage dispute.  Interpretation of an insurance policy is a question of law; everything necessary to decide this question of law (the policy, the settlement agreement, and the allegations) is properly before the Court.  *See Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000) (court may consider pleadings and documents referred to in complaint central to claims). Attempting to muddy the waters, Cameron attaches (1) letters from *other insurers* regarding the settlement and (2) an unsubstantiated declaration that Cameron *intended* the Liberty Excess Policy to be follow form without exception.  Neither creates a fact issue. What governs are the terms of the contract between Liberty and Cameron, not comments of other insurers seeking to put pressure on Liberty to settle for their own business reasons or the subjective intent of the insured.  *See, e.g., Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W. 2d 517, 521 (Tex. 1995).  As the Fifth Circuit explained, the goal in interpreting an insurance contract "is to ascertain and to give effect to the intent of the parties as expressed in the instrument" and "by considering the policy as a whole and interpreting the policy terms according to their plain and

---

14    *See also Guidry v. Am. Public Life Ins. Co.*, 512 F.3d 177 (5th Cir. 2007).

ordinary meaning." *Serv. Corp. Int'l v. Great Am. Ins. Co. of N.Y.*, 2008 WL 280900, at *2 (5th Cir. 2008).

The Liberty Excess Policy, by its plain and unambiguous terms, has not attached to Cameron's settlement. No amount of creative pleading can overcome these facts.[15] This Court should grant Liberty's Rule 12 motion.

Respectfully submitted,

/s/ Judy Y. Barrasso

| | |
|---|---|
| Christopher W. Martin, Federal I.D. 13515 | Judy Y. Barrasso, 2814 |
| Gary L. Pate, Federal I.D. 29713 | Celeste, Coco-Ewing, 25002 |
| MARTIN, DISIERE, JEFFERSON | BARRASSO USDIN KUPPERMAN |
| & WISDOM, L.L.P. | FREEMAN & SARVER, L.L.C. |
| 808 Travis, Suite 1800 | 909 Poydras Street, 24th Floor |
| Houston, Texas 77002 | New Orleans, Louisiana 70112 |
| 713/632-1700 (Telephone) | 504/589-9700 (Telephone) |
| 713/222-0101 (Facsimile) | 504/589-9701 (Facsimile) |

**Attorneys for Liberty Insurance Underwriters, Inc.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing Reply has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 3rd day of July, 2012.

/s/ Judy Y. Barrasso

---

[15] Cameron cannot further plead without leave, which it has not sought. The pleadings are indeed "closed." Alternatively, Liberty's motion properly falls under Rule 12(b)(6).