**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | : MDL NO. 2179<br>:<br>:<br>:<br>: SECTION: J |
| THIS DOCUMENT RELATES TO: | : |
| *ALL CASES IN PLEADING BUNDLE SECTION III.B(3)* | : JUDGE BARBIER<br>: MAG. JUDGE SHUSHAN |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MARINE SPILL RESPONSE CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON GROUNDS OF DERIVATIVE IMMUNITY AND PREEMPTION**

BLANK ROME LLP
ATTORNEYS FOR DEFENDANT
MARINE SPILL RESPONSE CORPORATION
ALAN M. WEIGEL
405 LEXINGTON AVENUE
THE CHRYSLER BUILDING
NEW YORK, NY  10174
(212) 885-5000

## **TABLE OF CONTENTS**

Page (s)

ADDITIONAL FACTS IN REPLY TO PSC'S ALLEGATIONS ................................................. 1

ARGUMENT ................................................................................................................................. 3

I. MSRC HAS DERIVATIVE IMMUNITY FROM THE CLAIMS IN THE B3 COMPLAINT ................................................................................................................. 3

    A. MSRC Did Not Exceed The Authority Validly Conferred On It By The Federal Government ............................................................................................ 3

    B. The Federal Government Controlled The Implementation Of Specifications For the Spill Response That Were Precise, Safe and Reasonable ........................................................................................................... 4

II. THE CLAIMS AGAINST MSRC IN THE B3 COMPLAINT ARE PREEMPTED .......... 6

    A. The Claims Against MSRC Are Barred By Conflict Preemption ...................... 6

    B. The Claims Against MSRC Are Barred By Field Preemption .......................... 7

III. THE PSC'S OPPOSITION DOES NOT RAISE ANY GENUINE ISSUE OF FACT MATERIAL TO MSRC'S ENTITLEMENT TO SUMMARY JUDGMENT ............................................................................................................................ 8

    A. The Allegations Concerning The Use Of Dispersants ...................................... 10

    B. The Allegations Concerning The Safety Of Clean-Up Workers ..................... 12

IV. THE COURT SHOULD STRIKE THE AFFIDAVITS AND DECLARATIONS FILED BY THE PSC AND DENY THE PSC'S REQUEST FOR FURTHER DISCOVERY ................................................................................................................. 13

CONCLUSION ............................................................................................................................ 14

CERTIFICATE OF SERVICE .................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..................................................................................................................9

*Caskey v. Man Roland, Inc.*,
  83 F.3d 418 (5th Cir. 1996) ....................................................................................................13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..................................................................................................................8

*Cermetek, Inc. v. Butler Avpak, Inc.*,
  573 F.2d 1370 (9th Cir. 1978) ................................................................................................10

*DIRECTV, Inc. v. Budden*,
  420 F.3d 521 (5th Cir. 2005) ..................................................................................................10

*Geiserman v. MacDonald*,
  893 F.2d 787 (5th Cir. 1990) ..................................................................................................13

*Gossett v. Du-Ra-Kel Corp.*,
  569 F.2d 869 (5th Cir. 1978) ....................................................................................................8

*Green v. Archer Daniels Midland*,
  No. 10-4481, 2012 U.S. Dist. LEXIS 3425 (E.D. La. Jan. 6, 2012).......................................14

*Howard v. Greenwood*,
  783 F.2d 1311 (5th Cir. 1986) ..................................................................................................9

*In re "Deepwater Horizon" Oil Spill*,
  808 F. Supp. 2d 943 (E.D. La. 2011)("B1 Order")..................................................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)..................................................................................................................9

*Ray v. Atlantic Richfield Co.*,
  435 U.S. 151 (1978)..................................................................................................................7

*Red Dot Bldgs. v. Jacobs Tech., Inc.*,
  No. 11-1142, 2012 U.S. Dist. LEXIS 78957 (E.D. La. June 7, 2012)....................................13

*Smoothie King Franchises, Inc. v. Southside Smoothie & Nutrition Center, Inc., et al.*,
  No. 11-2002, 2012 U.S. Dist. Lexis 67620 (E.D. La. May 15, 2012) ....................................10

810517.00025/7143555v.1

*St. Amant v. Benoit*,
    806 F.2d 1294 (5th Cir. 1987) ................................................................................................ 9

*Thomas v. Atmos Energy Corp.*,
    223 Fed. Appx. 369 (5th Cir. 2007) ...................................................................................... 10

*United States v. Locke*,
    529 U.S. 89 (2000) .................................................................................................................. 7

*Washington v. Wackenhut Corp.*,
    No. 08-3682, 2009 U.S. Dist. LEXIS 33717 (E.D. La. Apr. 22, 2009) .................................. 14

*Weg v. Macchiarola*,
    995 F.2d 15 (2d Cir. 1993) ...................................................................................................... 8

**STATUTES**

33 U.S.C. 1251, et seq. .................................................................................................................. 7

33 U.S.C. §1321 ............................................................................................................................. 8

33 U.S.C §2701, et seq. ................................................................................................................. 7

**OTHER AUTHORITIES**

40 C.F.R. Part 300 .......................................................................................................................... 8

Fed. R. Civ. P. 26(a) .................................................................................................................... 13

Fed. R. Civ. P. 37(c)(1) ................................................................................................................ 13

Fed. R. Civ. P. 56 .......................................................................................................................... 8

H. R. CONF. REP. NO. 101-653, 101 (1990) .................................................................................. 7

7National Oil and Hazardous Substances Pollution Contingency Plan, 59 Fed. Reg.
    47,384, 47,399-400 (Sept. 15, 1994) ...................................................................................... 8

810517.00025/7143555v.1

Marine Spill Response Corporation ("MSRC") respectfully submits this Reply Memorandum of Law in further support of its Motion for an order of summary judgment dismissing with prejudice all claims asserted against MSRC in the First Amended Master Complaint in Accordance with PTO No. 11 Section III.B(3) (Rec. Doc. 1812) (hereinafter the "B3 Complaint") on the grounds that MSRC has derivative immunity from such claims, or alternatively, that such claims are barred by the doctrine of preemption and specifically in reply to the Omnibus Memorandum in Opposition submitted by the Plaintiffs' Steering Committee ("PSC") (Rec. Doc. 6696) (hereinafter "PSC's Opp. Memo").  This Memorandum of Law supplements the Joint Reply Memorandum submitted by the Clean-Up Responder Defendants (which is hereby incorporated in its entirety by reference).

As set forth in the Joint Reply Memorandum and as supplemented below, the PSC has failed to raise any genuine issue of fact material to MSRC's entitlement to summary judgment on the grounds that MSRC has derivative immunity from the claims asserted against it in the B3 Complaint and/or that the B3 claims are preempted.  Accordingly, MSRC requests that the Court grant its motion and dismiss all remaining claims against it with prejudice.

## ADDITIONAL FACTS IN REPLY TO PSC'S ALLEGATIONS

During the DEEPWATER HORIZON response, MSRC had no role in directing or supervising any beach and/or coastal cleanup or near-shore booming or decontamination operations. (Declaration of Donald A. Toenshoff, Jr. dated July 5, 2012 ("Toenshoff Reply Decl.") ¶3.)  MSRC's role was limited and involved contracting with subcontractors to provide labor and other services to assist in performing some of this work and processing invoices from these subcontractors.  (*Id.*)  MSRC did not employ Messrs. Victor Anibal Carias, Terrence Carroll, Kirk Edwards, William Gill, Rendell Jackson, John Lide, Roy Mackie, or Brandon Scott.

MSRC had no role or responsibility in training them, providing them with any equipment, including personal protective equipment, or directing or supervising their work. (*Id.*)

During the DEEPWATER HORIZON response, aerial dispersant operations areas were ultimately divided into two zones to ensure there was no interference or confusion related to spray operations between aircraft operating from Houma-Terrebonne Airport and Stennis International Airport ("Stennis"). No Stennis aircraft were assigned to or conducted spray missions west of the dividing line at 089° 30.0' West longitude. (*Id.* at ¶5.) The locations where Messrs. Terry Joe Carter, Dwayne Hawkins-Lodge and Warren Jones allege that they observed aerial dispersant spraying within one-half mile off the shore or were personally sprayed with dispersants while working on the beach at Port Fourchon, Grand Isle and/or Elmer's Island are all thirty or more miles west of the dividing line at 089° 30.0' West longitude. (*Id.*)

During the period May 22 through May 28, 2010, Messrs. Ronnie Anderson and John M. Wunstell, Jr. allege they were sprayed with dispersants while working in the vicinity of In-Situ Burning ("ISB") operations and that spraying in their vicinity continued at night. During this period, aerial dispersant spray missions were flown from Stennis by MSRC's aviation subcontractors, International Air Response ("IAR") and Dynamic Aviation Group ("Dynamic"). (*Id.* at 8.) During this period, no spray aircraft operated by IAR or Dynamic from Stennis took off before sunrise or landed after sunset. (*Id.* at ¶9.) During the period May 23 through May 28, 2010, all ISB operations took place within the radius of 5 to 10 miles from the spill source.[1] During this period, all aerial dispersant spray missions conducted by IAR or Dynamic were conducted greater than 11 nautical miles from the site of the spill. (*Id.* at ¶ 12.)

---

[1] No ISB operations took place on May 22, 2010. (Toenshoff Reply Decl. at ¶10.)

**ARGUMENT**

MSRC incorporates by reference the legal arguments set forth in the Joint Reply Memorandum submitted by the Clean-Up Responder Defendants, as well as the general application of those arguments to the claims against the Clean-Up Responder Defendants in the B3 Complaint. MSRC sets out below its specific arguments as to why the PSC has failed to raise a genuine issue of fact material to MSRC's arguments that it is entitled to derivative immunity, or in the alternative, that the B3 claims against MSRC are preempted, entitling MSRC to the entry of an order of summary judgment dismissing the B3 claims with prejudice.

**I.     MSRC HAS DERIVATIVE IMMUNITY FROM THE CLAIMS IN THE B3 COMPLAINT**

The PSC's arguments that derivative immunity is not available to MSRC as a matter of law (PSC's Opp. Memo at 2) ignore this Court's holding in its Order and Reasons As to Motions to Dismiss the B3 Master Complaint (Rec. Doc. 4159)("B3 Order"). As the Court has already held, even in the absence of a direct contractual relationship between MSRC and the government, MSRC is entitled to derivative governmental immunity if the Federal government authorized MSRC's actions and MSRC did not exceed the scope of that authority. (B3 Order at 9, 14.)

**A.     MSRC Did Not Exceed The Authority Validly Conferred On It By The Federal Government**

The PSC concedes that "the government maintained ultimate decision-making authority over any response activity." (PSC's Opp. Memo at 2.) Moreover, the PSC does not contest the fact that throughout the DEEPWATER HORIZON spill response, MSRC was "subject to the ultimate authority and direction of the federal government." (*See* PSC's Local Rule 56.2 Counter-Statement of Facts (Rec. Doc. 6696-1)("PSC's Rule 56.2 Statement") at 10, responding

3

to MSRC's Rule 56.1 Statement of Undisputed Material Facts (Rec. Doc. 6547-3)("MSRC's Rule 56.1 SUMF") at ¶6.)  Accordingly, there is no dispute that MSRC and its employees and its sub-contractors performed the actions that are the subject of the B3 Complaint pursuant to the authorization, direction, and ultimate control of federal government officials.

As explained more fully below, the affidavits, declarations and other exhibits submitted by the PSC do not raise a genuine issue of material fact that at any time during the DEEPWATER HORIZON response MSRC or any of its employees or sub-contractors failed to comply with any governmental directives and authorizations relating to their functions and operations, or that at any time MSRC or any of its employees or sub-contractors exceeded those directives and authorizations.  Thus, MSRC is entitled to share in the federal government's broad immunity for all oil spill response actions taken under the Clean Water Act ("CWA"). Accordingly, the Court should enter an order granting summary judgment to MSRC and dismissing all remaining claims against MSRC in the B3 Complaint with prejudice.

      **B.**      **The Federal Government Controlled The Implementation Of Specifications For the Spill Response That Were Precise, Safe and Reasonable**

The PSC does not dispute that the federal government would enjoy discretionary function immunity for its actions in responding to the DEEPWATER HORIZON spill under the Federal Tort Claims Act ("FTCA").  Rather, the PSC argues that MSRC and the other Clean-up Responder Defendants are not entitled, as a matter of law, to share in that immunity.  But the PSC's arguments ignore and fail to refute any of the case law discussed in the Clean-up Responders Joint Memorandum in support of their motions for summary judgment.  (*See* Rec. Doc. 6545 at 32 – 35.)

Moreover, the PSC does not dispute that the Federal government approved reasonably precise specifications for the DEEPWATER HORIZON spill response through the National

4

Contingency Plan ("NCP") and daily Incident Action Plans ("IAPs"), which included daily authorization for the use of Corexit dispersants on the surface of the water in the Gulf of Mexico in a total maximum authorized volume and precise restrictions concerning the location, time and manner for the applications of dispersants.  (*See* PSC's Rule 56.2 Statement at 4 - 7.)  The PSC also does not dispute that MSRC had no role in: (1) preparing the NCP or the daily IAPs; (2) the decision to use Corexit; or (3) establishing the amount, location, time or manner for the application of dispersants, nor did MSRC have discretion in interpreting any of the FOSC's dispersant directions or restrictions.  (*Id.* at 10.)

It also is undisputed that the Federal government supervised and controlled the implementation of its specifications and restrictions by requiring spotter aircraft to accompany each aerial dispersant spray mission to report the results of its monitoring to the Unified Area Command and the Federal On-Scene Coordinator ("FOSC"), and by having the FOSC's representatives and other federal officials present in the various Incident Command Posts to monitor the execution of the detailed instructions contained in the daily IAPs.  (*Id.* at 12.)

The PSC has presented no genuine issue of material fact that MSRC was aware of or should have notified the government of any information, not known to the government, that any actions to implement the government's directions or instructions could result in unsafe or unreasonable conditions.  In fact, the PSC does not dispute that the Corexit dispersants used for the DEEPWATER HORIZON spill response were placed on the NCP Product Schedule after the federal government reviewed their chemical composition and toxicity data and concluded that each dispersant could be safely and effectively used to respond to oil spills, nor does the PSC dispute that testing conducted during and after the use of dispersants confirmed the safety of the use of Corexit.  (*Id.* at 3.)  Thus, MSRC is entitled to share in the federal government's

5

discretionary immunity for all oil spill response actions taken under the CWA. Accordingly, the Court should enter an order granting summary judgment to MSRC dismissing all remaining claims against MSRC in the B3 Complaint with prejudice.

## II. THE CLAIMS AGAINST MSRC IN THE B3 COMPLAINT ARE PREEMPTED

As this Court has already held in its B3 Order, preemption is a plausible defense to the claims asserted against MSRC in the B3 Complaint. (B3 Order at 15.) Indeed, the Court held that MSRC would be able to "avail [itself] of preemption if [it] show[s] that the complained-of activity fell within the scope of the CWA/NCP." (*Id.*)

### A. The Claims Against MSRC Are Barred By Conflict Preemption

The PSC has not refuted either the impossibility of MSRC complying with both state and federal statutes and regulations governing the response to the spill, or how Plaintiffs' claims create obstacles that run counter to the national interest established by Congress in promoting an effective and efficient federal response to oil spills. The PSC has not offered any evidence that in responding to the DEEPWATER HORIZON oil spill it would have been possible for MSRC to have complied with state and maritime law without violating the CWA and the NCP, which MSRC was compelled by federal law to obey. Nor has the PSC offered evidence showing that the B3 Complaint's state and maritime claims against MSRC do not stand as an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in promoting an effective and efficient federal response to significant oil spills. Accordingly, in the alternative to finding that MSRC shares in the federal government's immunity under the CWA or the FTCA, the Court should enter an order granting summary judgment to MSRC dismissing all remaining claims against MSRC in the B3 Complaint with prejudice on the grounds that such claims are barred by the doctrine of conflict preemption.

6

### B.     The Claims Against MSRC Are Barred By Field Preemption

The PSC's opposition to MSRC's field preemption arguments (PSC's Opposition Memo at 35 – 36) is misplaced. In its Order resolving the motions to dismiss the B1 Bundle, the Court held that preemption did not apply to "liability for oil spills." *In re "Deepwater Horizon" Oil Spill*, 808 F. Supp. 2d 943, 961 (E.D. La. 2011)("B1 Order"). The B3 Complaint, however, does not make any liability claims, either directly or indirectly against MSRC for the oil spill itself. Rather, the claims are limited to claims related to exposure to the oil or dispersants or negligence in the conduct of the response to the spill. Thus, the B1 Order is not the law of the case in respect of the B3 claims against MSRC, and the savings clauses related to liability in the Oil Pollution Act ("OPA"), 33 U.S.C. § 2718, do not preserve Plaintiffs' claims from pre-emption.

As the Supreme Court confirmed in *United States v. Locke*, 529 U.S. 89 (2000), the OPA savings clauses are limited to regulations governing liability and compensation for oil pollution, and do not extend to other types of rules not found in Title I of OPA (33 U.S.C §2701, et seq.) in which there is field preemption. *Id.* at 105 – 116 (*citing Ray v. Atlantic Richfield Co.*, 435 U.S. 151 (1978) and H. R. CONF. REP. NO. 101-653, 101, p. 122 (1990)). Here, the regulations governing the procedures for responding to oil spills are not part of Title I to OPA. Thus, the OPA savings clauses are inapplicable to Plaintiffs' B3 claims, which are brought under the CWA. Additionally, by the plain language of the statute, 33 U.S.C. § 2718, the savings clauses only apply to Chapter 40 of Title 33 (the OPA) and not to Chapter 26 (33 U.S.C. 1251, et seq.) (the CWA) containing the oil spill response rules. In other words, Plaintiffs cannot bring a claim under the CWA and then rely on the OPA savings clauses to preserve that claim.

The savings clauses in the Clean Water Act ("CWA"), 33 U.S.C. § 1321(o), are similarly inapplicable to the claims against MSRC. This section of the CWA applies to discharges and

removal actives by the responsible party, not by entities such as MSRC who respond to oil spills. *Cf.* National Oil and Hazardous Substances Pollution Contingency Plan, 59 Fed. Reg. 47,384, 47,399-400 (Sept. 15, 1994) (rejecting "view that a state could initiate more stringent measures than the [F]OSC when the latter is directing the response" and explaining that the FOSC "has specific legal authority to guide the activities of all parties responding to a discharge, and all actions would have to be authorized or approved by the [F]OSC") (codified at 40 C.F.R. Part 300).  This is particularly applicable to the DEEPWATER HORIZON because the Coast Guard was required to direct all federal, state and private actions because the discharge was of such a size and character as to be a substantial threat to the public health and welfare of the United States.  33 U.S.C. §1321(c)(2).  Accordingly, in the alternative to finding that MSRC shares in the federal government's immunity under the CWA or the FTCA, the Court should enter an order granting summary judgment to MSRC dismissing all remaining claims against MSRC in the B3 Complaint with prejudice on the grounds that such claims are barred by the doctrine of field pre-emption.

### III.  THE PSC'S OPPOSITION DOES NOT RAISE ANY GENUINE ISSUE OF FACT MATERIAL TO MSRC'S ENTITLEMENT TO SUMMARY JUDGMENT

Once MSRC satisfied its initial burden of demonstrating the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), to avoid summary judgment, the PSC must proffer evidence demonstrating that a trial is required because a disputed issue of fact exists.  *Weg v. Macchiarola*, 995 F.2d 15, 18 (2d Cir. 1993).  Thus, the PSC must produce specific facts showing a genuine issue for trial, not mere general allegations. Fed. R. Civ. P. 56(c); *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978).  "Barebones allegations," *Howard v. Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986), or "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986),

8

are insufficient to withstand summary judgment. Rather, the PSC must present "concrete evidence from which a reasonable juror could return a verdict in [its] favor," not evidence that is "merely colorable, conclusory, or speculative." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The "mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). Rather, the Court must substantively evaluate the evidence offered by MSRC and the PSC to determine whether the evidence raises a "genuine issue of material fact." *Anderson* at 247-248. A fact question is "material" if it involves "disputes over facts that might affect the outcome of the suit under the governing law." *Id.* at 248. Factual disputes that are irrelevant or unnecessary "will not be counted." *Id.* The material fact dispute is "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

The PSC's Opposition to MSRC's Motion fails to raise a single genuine issue of material fact that would preclude the Court from granting summary judgment on the grounds of immunity and/or preemption. The thirteen affidavits and declarations submitted in support of the PSC's Omnibus Opposition do not name MSRC, its employees or sub-contractors. They make no factual allegations that MSRC, its employees or sub-contractors failed in any way to comply with any governmental directives and authorizations relating to their functions and operations, or that at any time MSRC or any of its employees or sub-contractors exceeded those directives and authorizations. Rather, the affidavits and declarations are nothing more than unsupported speculative assertions of wrongdoing, most of which implicate activity that MSRC had absolutely no involvement with. In some cases, the affidavits are based on what the individual was told, rather than on his personal knowledge. *See Thomas v. Atmos Energy Corp.*, 223 Fed.

9

Appx. 369, 375 (5th Cir. 2007)("Those facts alleged on 'understanding,' like those based on 'belief' or on 'information and belief,' are not sufficient to create a genuine issue of fact.")(*quoting Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir. 1978)). Further, none of the affidavits and declarations assert specific facts concerning when, where, or how any wrongful activity took place, or even who was responsible for that activity.  *See Smoothie King Franchises, Inc. v. Southside Smoothie & Nutrition Center, Inc., et al.*, No. 11-2002, 2012 U.S. Dist. Lexis 67620, *40 (E.D. La. May 15, 2012)(citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005)("self-serving affidavit, without more, will not defeat a motion for summary judgment").

### A.     The Allegations Concerning The Use Of Dispersants

The declarations filed in support of the PSC's Opposition Memo prepared by Terry Joe Carter, Dwayne Hawkins-Lodge and Warren Jones allege that these individuals observed aerial dispersant spraying within one-half mile of the shore or were personally sprayed with dispersants while working on the beach at Port Fourchon, Grand Isle and/or Elmer's Island.  (Rec. Docs. 6696-18, -21, -23.)   None of these declarations allege that MSRC or its sub-contractors conducted this aerial dispersant spraying.  There can be no dispute, however, that the locations where Messrs. Carter, Hawkins-Lodge and Jones allege that they observed aerial dispersant spraying or were sprayed with dispersants themselves are all thirty or more miles west of the line at 089° 30.0' West longitude which divided the spray operations areas between Houma and Stennis aircraft. (Toenshoff Reply Decl. ¶5.)

The PSC does not dispute that during the DEEPWATER HORIZON response, dispersant spray aircraft were operated by MSRC's sub-contractors IAR and Dynamic at MSRC's facility at

10

Stennis.[2]  (*See* MSRC's Rule 56.1 SUMF at ¶7 - 8 and PSC's Rule 56.2 Statement at 10.)  The PSC also does not dispute that during the DEEPWATER HORIZON response, the dispersant operations area was ultimately divided into zones to ensure there was no interference or confusion related to spray missions between Houma and Stennis aircraft and that Stennis aircraft were only assigned to spray missions east of the dividing line at 089° 30.0' West longitude. (MSRC's Rule 56.1 SUMF at ¶14.)  Thus, Messrs. Carter, Hawkins-Lodge and Jones did not observe aircraft flying from Stennis and operated by MSRC's contractors.  Accordingly, the declarations of Messrs. Carter, Hawkins-Lodge and Jones do not raise any genuine issues of material fact that would preclude the Court from granting MSRC summary judgment on the grounds of immunity and/or preemption.

The affidavits filed in support of the PSC's Opposition Memo prepared by Ronnie Anderson and John M. Wunstell, Jr. allege that one of these individuals was sprayed with dispersants while working in the vicinity of In-Situ Burning ("ISB") operations and that spraying in their vicinity continued at night during the period May 22 through May 28, 2010.  (Rec. Docs. 6696-15, -27.)  Neither of these affidavits alleges that MSRC or its sub-contractors conducted this aerial dispersant spraying.

There can be no dispute, however, that based on the contemporaneously recorded times of departure and return for all aerial dispersant sorties originating from Stennis operated by MSRC's sub-contractors, during the period May 22 to May 28, 2010, no dispersant spray aircraft operating from the Stennis took off before sunrise (which was no earlier than 5:56 a.m.) or landed after sunset (which was no later than 7:25 p.m.).  (*See* Toenshoff Reply Decl. at ¶7.)  There also can be no dispute that based on documents prepared by the Unified Command during

---

[2] Aircraft belonging to Lynden Air Cargo; Oil Spill Response, Limited; and the U.S. Air Force Reserve 910th Airlift Wing/757th Airlift Squadron, parties not under contract to MSRC, also were assigned to Stennis for aerial dispersant operations.  (MSRC's Rule 56.1 SUMF at ¶8.)

11

the period May 23 to May 28, all ISB operations took place within the radius of 5 to 10 miles from the spill source. Based on contemporaneously prepared aerial dispersant flight records, during the same period, all aerial dispersant sorties originating from Stennis operated by MSRC's sub-contractors were conducted greater than 11 nm of the spill site. Accordingly, the affidavits of Messrs. Anderson and Wunstell do not raise any genuine issues of material fact that would preclude the Court from granting MSRC summary judgment on the grounds of immunity and/or preemption.

B.  **The Allegations Concerning The Safety Of Clean-Up Workers**

The declarations filed in support of the PSC's Opposition Memo prepared by Victor Anibal Carias, Terrence Carroll, Kirk Edwards, William Gill, Rendell Jackson, John Lide, Roy Mackie, and Brandon Scott allege that these individuals were not provided with adequate personal protective equipment ("PPE") while participating in beach and/or coastal clean-up and/or laying and decontaminating booms. (Rec. Docs. 6696-16, -17, -19, -20, -22, -24, -25, -26.) The PSC does not dispute, however, that during the DEEPWATER HORIZON response, MSRC had no role in directing or supervising any beach and/or coastal cleanup or near-shore booming or decontamination operations. (*See* MSRC's Rule 56.1 SUMF at ¶32 and PSC's Rule 56.2 Statement at 10.)

MSRC did not employ Messrs. Carias, Carroll, Edwards, Gill, Jackson, Lide, Mackie, or Scott. (Toenshoff Reply Decl. at ¶3.) MSRC also had no role or responsibility in training them, providing them with any equipment, including PPE, or directing or supervising their work. (*Id.*) In fact, MSRC is not mentioned at all in any of their declarations. Accordingly, the declarations of Messrs. Carias, Carroll, Edwards, Gill, Jackson, Lide, Mackie, and Scott do not raise any genuine issues of material fact that would preclude the Court from granting MSRC summary

judgment on the grounds of immunity and/or preemption.

## IV. THE COURT SHOULD STRIKE THE AFFIDAVITS AND DECLARATIONS FILED BY THE PSC AND DENY THE PSC'S REQUEST FOR FURTHER DISCOVERY

MSRC incorporates by reference the facts and legal arguments set forth in the Joint Reply Memorandum, at note 6 and Point III, and respectfully submits that the Court should strike all thirteen of the declarations and affidavits submitted by the PSC and deny the PSC's request to reopen the limited B3 discovery. The PSC failed to conduct its discovery before the expiration of the Court's ordered deadline. As this Court has held, the failure to meet a court-ordered deadline is "no trifling matter." *Red Dot Bldgs. v. Jacobs Tech., Inc.*, No. 11-1142, 2012 U.S. Dist. LEXIS 78957, *9-15 (E.D. La. June 7, 2012). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Exclusion of the evidence is mandatory and automatic unless the party demonstrates substantial justification or harmlessness. *See Caskey v. Man Roland, Inc.*, 83 F.3d 418 (5th Cir. 1996) (district court abused its discretion in failing to invoke mandatory exclusion sanction of Rule 37(c)(1)). Exclusion also is appropriate under Rule 16(b), which authorizes district courts to control and expedite the pretrial discovery process through a scheduling order, and which grants "broad discretion to preserve the integrity and purpose of the pretrial order," including by means of exclusion of evidence. *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (citations omitted).

The PSC has failed to offer any showing that the failure to disclose the evidence presented by these thirteen witnesses prior to offering their declarations and affidavits in opposition to MSRC's summary judgment motion was either "substantially justified" or

"harmless." As discussed in the Joint Reply Memorandum, the PSC both intentionally concealed responsive information and made a deliberate decision not to conduct the discovery it now claims it needs. These are more than adequate grounds to strike the thirteen affidavits and deny the PSC's request for additional discovery. *See Green v. Archer Daniels Midland*, No. 10-4481, 2012 U.S. Dist. LEXIS 3425, *8-9 (E.D. La. Jan. 6, 2012)(Africk)(good cause not shown where counsel admitted lack of diligence and court found granting continuance would unnecessarily delay trial and prejudice defendant); *Washington v. Wackenhut Corp.*, No. 08-3682, 2009 U.S. Dist. LEXIS 33717, *4-5 (E.D. La. Apr. 22, 2009)(Sushan)(additional discovery denied where plaintiff demonstrated complete lack of diligence, had not demonstrated any excuse for delay and had not demonstrated good cause for modification of discovery deadline).

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Joint Reply Memorandum submitted by the Clean-Up Responder Defendants, MSRC respectfully requests that the Court enter an order granting summary judgment dismissing the remaining claims against it in the B3 Complaint with prejudice.

Dated:        July 6, 2012

                                          Respectfully submitted,
                                          **BLANK ROME LLP**

                    By    /s/ Alan M. Weigel
                           Alan M. Weigel, Esq.
                           Attorneys for Marine Spill Response Corporation
                           The Chrysler Building
                           405 Lexington Avenue
                           New York, NY 10174
                           Telephone: 212-885-5000
                           Facsimile: 917-332-3836
                           E-mail: aweigel@blankrome.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Reply Memorandum of Law in Support of Marine Spill Response Corporation's Motion for Summary Judgment on Grounds of Derivative Immunity and Preemption has been served on All Counsel by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 6th day of July 2012.

                                             By:    */s/ Alan M. Weigel*