UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "*DEEPWATER HORIZON*" in the GULF OF MEXICO, on APRIL 20, 2010 | : : : : : | MDL NO. 2179 SECTION: J |
| THIS DOCUMENT RELATES TO: | : : | |
| *ALL CASES IN PLEADING BUNDLE SECTION III.B(3)* | : : : | JUDGE BARBIER MAG. JUDGE SHUSHAN |

. . . . . . . . . . . . . . . . . . . . . .

**STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF
LANE AVIATION, INC'S MOTION FOR SUMMARY JUDGMENT
ON DERIVATIVE IMMUNITY AND PREEMPTION GROUNDS**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Lane Aviation, Inc. ("Lane Aviation") respectfully submits the following Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment on Derivative Immunity and Preemption Grounds to supplement [Doc 6597] and to supplement and to incorporate fully the Joint Statement of Undisputed Material Facts filed on behalf of the Clean-Up Responder Defendants which are specifically adopted and incorporated herein by reference pursuant to Rule 10 of the Federal Rules of Civil Procedure.

1. Lane Aviation is a family-owned and operated small business based in Richmond, Texas. Lane Aviation was founded in 1945 by WWII veteran Marine Pilot George Lane. Today, Lane Aviation is the oldest and one of the most successful dealers of the world's leading agricultural aircraft, the Air Tractor. Today's Air Tractor is a highly sophisticated, Turbo-Propellor, GPS equipped and remarkably safe aircraft. Grant Lane continues his father's legacy and was on scene during Lane Aviation's flight operations relevant to this lawsuit. *See*

Exhibit "A" - Declaration of Grant Lane in Support of Lane Aviation, Inc's Motion for Summary Judgment on Derivative Immunity and Preemption Grounds (hereinafter "Grant Lane Decl.") at ¶ 3.

2. On May 6, 2010, Lane Aviation entered into an "Agreement for Provision of Response Resources" ("Agreement") with National Response Corporation ("NRC"). *See* Exhibit "A" - Grant Lane Decl. at ¶ 4.

3. A true and correct copy of "Agreement for Provision of Response Resources" between Lane Aviation and NRC is attached as Exhibit "1" to the Declaration of Grant Lane. *See* Exhibit "A" - Grant Lane Decl. at ¶ 4.

4. NRC at all times relevant to this lawsuit was classified as an Oil Spill Removal Organization pursuant to the United States Coast Guard's Oil Spill Removal Organization program. *See* Exhibit "A" - Grant Lane Decl. at ¶ 5.

5. In its capacity as an emergency Oil Spill Removal Organization, NRC "provides personnel, equipment, supplies and other resources for responding to discharges of oil and hazardous substances from vessels and/or facilities and other emergency response situations, which resources NRC owns or procures by subcontract." *See* Exhibit "A" - Grant Lane Decl. at ¶ 5, and Exhibit "1" attached thereto — Agreement at p.2 ¶ 2(A).

6. The Agreement describes work to be performed under the National Contingency Plan ("NCP") at the direction of the federal government. See Exhibit "A" - Grant Lane Decl. at ¶ 5, and Exhibit "1" attached thereto — Agreement at ¶¶ 2.1, 3.5, and 4.1.

7. Pursuant to the Agreement, Lane Aviation agreed to maintain its aerial resources and make them available to NRC for deployment if called upon and authorized to respond to a discharge. *See* Exhibit "A" - Grant Lane Decl. at ¶ 6, and Exhibit "1" attached thereto —

Agreement at ¶¶ 1(D), 3.1, and 4.1.

8.  Around May 5, 2010, NRC and O'Brien's Response Management Inc. ("O'Brien's") contacted Lane Aviation to provide notice of the incident, advise of the potential for discharge, and to place Lane Aviation aerial resources on stand-by to assist in responding to the situation.  *See* Exhibit "A" - Grant Lane Decl. at ¶ 7.

9.  On May 18, 2010, the Federal On-Scene Coordinator ("FOSC"), the federal official designated to direct the *DEEPWATER HORIZON* oil spill response, authorized and instructed Lane Aviation to conduct a 204 gallon aerial application flight to apply EPA-approved dispersants to oil on the surface of federal waters in the Gulf of Mexico.  *See* Exhibit "A" - Grant Lane Decl. at ¶ 8.

10.  In accordance with such authorization and instruction, Pilot Aldo Leonardi, in aircraft N9002K, conducted Lane Aviation's first aerial dispersant flight from the Houma-Terrebonne Airport in Houma, Louisiana ("KHUM") for the *DEEP WATER HORIZON* oil spill response.  Said flight was accompanied by a spotter aircraft with United States Coast Guard and O'Brien's personnel on board.  *See* Exhibit "A" - Grant Lane Decl. at ¶ 8.

11.  Lane Aviation subsequently made 21 additional aerial application flights as authorized and directed.  The last such flight made by Lane Aviation was on July 2, 2010.  *See* Exhibit "A" - Grant Lane Decl. at ¶ 9.

12.  On May 28, 2010, Lane Aviation was authorized and instructed to make its first reconnaissance - observation flight over the Gulf of Mexico to assist in gathering information and intelligence on the oil spill.  This and subsequent ("spotter") flights were authorized and instructed to be made by Lane Aviation to assist the decision making within *DEEPWATER HORIZON* Incident Command System ("ICS").  United States Coast Guard and other authorized

personnel from various other public and private entities accompanied Lane Aviation aircraft to participate in and observe every spotter flight conducted by Lane Aviation. *See* Exhibit "A" - Grant Lane Decl. at ¶ 10.

13. Lane Aviation subsequently made 82 additional spotter flights as authorized and directed. The last such spotter flight made by Lane Aviation was on July 17, 2012. *See* Exhibit "A" - Grant Lane Decl. at ¶ 11.

14. During the *DEEPWATER HORIZON* response efforts, Lane Aviation was subject to the ultimate direction and authority of the federal government, and all of Lane Aviation's response activities and flights were conducted and executed pursuant to the direction and authority of the federal government. *See* Exhibit "A" - Grant Lane Decl. at ¶ 12.

15. During the *DEEPWATER HORIZON* response efforts, the federal government called upon Lane Aviation to mobilize and deploy its equipment and personnel to assist with and execute specific aspects of the federal response plan requiring and warranting the use of such aerial resources, all as determined and directed by the FOSC and the FOSC's representatives ("FOSCRs") within Unified Area Command ("UAC") and or other elements of the ICS. *See* Exhibit "A" - Grant Lane Decl. at ¶ 13.

16. Lane Aviation's equipment and personnel were utilized and dispatched from operations conducted out of only one (1) of the five (5) incident command posts ("ICPs") established by the United States Coast Guard during the response. Lane Aviation's resources were consolidated under the leadership of the Houma Incident Command Post ("ICP Houma"), and all of Lane Aviation's *DEEPWATER HORIZON* response activities, spotter and aerial dispersant application flights, were conducted out of KHUM Airport as directed and authorized by the federal government. *See* Exhibit "A" - Grant Lane Decl. at ¶ 14.

17. All DEEPWATER HORIZON oil spill response aerial operations were managed by the Dispersant Group in the Operations Section of ICP Houma. The Dispersant Group at ICP Houma ran flight operations out of two airports, NASA's John C. Stennis Space Center in Mississippi ("KHSA") and the Houma-Terrebonne Airport in Houma, Louisiana ("KHUM"). Each airport had an assigned liaison to the Dispersant Group at ICP Houma so that ICP could communicate directives, share information, coordinate response activities and remain informed of all details concerning operations at both airports. *See* Exhibit "A" - Grant Lane Decl. at ¶ 15.

18. Lane Aviation was one of several aerial application operators working under the direction of ICP Houma Dispersant Group and stationed at the KHUM during the *DEEPWATER HORIZON* clean-up efforts. However, Lane Aviation did not participate in any operations, including aerial spotter and/or aerial dispersant flights, conducted out of KHSA. *See* Exhibit "A" - Grant Lane Decl. at ¶ 16.

19. Lane Aviation's DEEPWATER HORIZON clean-up response activities were limited to assigned aerial operations authorized, ordered, directed and ultimately controlled by the federal government, including (i) spotter/reconnaissance/observation flights; (ii) aerial application of EPA-approved dispersants to oil on the surface of federal waters of the Gulf of Mexico; and (iii) spotter flights supporting spray aircraft during aerial application of EPA approved dispersants to oil on the surface of federal waters of the Gulf of Mexico. *See* Exhibit "A" - Grant Lane Decl. at ¶ 17.

20. For each and every aerial dispersant flight conducted during the *DEEPWATER HORIZON* clean-up response, federal government approval was necessary and such authorization came exclusively from the FOSC. The federal government also provided specific instructions with regard to when, where, and how to apply dispersants, including in what quantities and under

what conditions. For each and every aerial dispersant flight conducted during the *DEEPWATER HORIZON* clean-up response, federal government officials and agencies, including the FOSC, the FOSCRs, those within the Dispersant Group, ICP Houma, UAC, and others such as the United States Coast Guard/NOAA/EPA SMART teams, monitored the operation in order to ensure that the government's response plans were being executed and conducted in a safe and effective manner. *See* Exhibit "A" - Grant Lane Decl. at ¶ 18.

21. At all times, Lane Aviation, its pilots and all other employees participating in the DEEPWATER HORIZON response efforts followed approved directives, instructions and action plans issued from the FOSC and/or the FOSCRs at UAC or ICP Houma and set forth in Incident Action Plans which detailed the authorized response activities to be executed each day. *See* Exhibit "A" - Grant Lane Decl. at ¶ 19.

22. Lane Aviation and its employees participating in the *DEEPWATER HORIZON* response efforts took no action independent of the federal government, outside of its assigned role in the federal ICS and/or beyond the scope of federal authorization. *See* Exhibit "A" - Grant Lane Decl. at ¶ 20.

23. At no time during the DEEPWATER HORIZON response efforts was Lane Aviation involved with any sub-sea dispersant operations. *See* Exhibit "A" - Grant Lane Decl. at ¶ 21.

24. At no time during the DEEPWATER HORIZON response efforts was Lane Aviation involved with any surface application of dispersants from vessels. *See* Exhibit "A" - Grant Lane Decl. at ¶ 22.

25. At no time during the DEEPWATER HORIZON response efforts was Lane Aviation involved with shoreline clean-up operations. *See* Exhibit "A" - Grant Lane Decl. at ¶

23.

26.     At no time during the DEEPWATER HORIZON response efforts was Lane Aviation involved with any in situ burning operations.     *See* Exhibit "A" - Grant Lane Decl. at ¶ 24.

27.     At no time during the DEEPWATER HORIZON response efforts was Lane Aviation involved with any aerial dispersant operations which may have been conducted in the territorial waters of any State and/or in federal waters less than at least three (3) nautical miles off the shoreline of any State.   *See* Exhibit "A" - Grant Lane Decl. at ¶ 25.

28.     At no time during the DEEPWATER HORIZON response efforts was Lane Aviation involved with any aerial dispersant operations which may have been conducted in federal waters off the coast of Texas, Mississippi, Alabama or Florida.   *See* Exhibit "A" - Grant Lane Decl. at ¶ 26.

29.     At no time during the DEEPWATER HORIZON response efforts was Lane Aviation involved with the engagement, training and/or supervision of any "VoO Plaintiffs," "Decontamination Plaintiffs" and/or "Onshore Plaintiffs" defined in Plaintiffs' First Amended Master Complaint in Accordance with PTO No. 11 Section III.B(3) (Rec. Doc. 1812) (the "B3 Bundle Master Complaint"), and did not participate in any determinations made by the UAC with respect to the use of respirators and/or other personal protective equipment by these or any other classification of plaintiffs.   *See* Exhibit "A" - Grant Lane Decl. at ¶ 27.

30.     At all times during the DEEPWATER HORIZON response efforts, determinations regarding the use of dispersants were made by the FOSC, and Lane Aviation complied with all such determinations.   *See* Exhibit "A" - Grant Lane Decl. at ¶ 28.

31.     At all times during the DEEPWATER HORIZON response efforts,

determinations regarding the type of dispersants to be applied were made by the FOSC, the FOSCRs, and/or other federal officials, and Lane Aviation complied with all such determinations.  See Exhibit "A" - Grant Lane Decl. at ¶ 29.

32. At all times, Lane Aviation, its pilots and its other employees participating in the DEEPWATER HORIZON response efforts were subject to and worked at the direction of and under the authority of the FOSC, the FOSCRs, and/or other federal officials.  See Exhibit "A" - Grant Lane Decl. at ¶ 30.

33. At all times during the DEEPWATER HORIZON response efforts, Lane Aviation, its pilots and its other employees acted at the direction of the United States pursuant to authority validly conferred by federal officials within ICS faithfully obeyed directives given and within the scope of such authority to execute the will of the federal government.  See Exhibit "A" - Grant Lane Decl. at ¶ 31.

RESPECTFULLY SUBMITTED

LAW OFFICE OF GEORGE E. CROW

/s/ George E. Crow
George E. Crow
TSBN 05151900
P.O. Box 30
Katy, TX  77492
For Overnight Physical Delivery use
1519 Miller Avenue
Katy, TX 77493
Telephone:  (281) 391-9275
Email:  georgecrow@earthlink.net

ATTORNEY FOR DEFENDANT LANE AVIATION, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Statement of Undisputed Material Facts in Support of Lane Aviation, Inc.'s Motion for Summary Judgment on Derivative Immunity and Preemption Grounds has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this July 5, 2012.

/s/ George E. Crow