

SUTHERLAND ASBILL & BRENNAN LLP

1001 Fannin, Suite 3700

Houston, Texas 77002

713.470.6100  Fax 713.654.1301

www.sutherland.com

**DAVID A. BAAY** DIRECT LINE: 713.470.6112
E-mail:david.baay@sutherland.com

July 2, 2012

The Honorable Sally Shushan
United States Magistrate Judge
U.S. District Court for the Eastern District of
Louisiana
500 Poydras Street, Room B-345
New Orleans, LA 70130

      Re:    MDL 2179:  Transocean's Schedule I Reply Brief Challenging BP's
                Combined Work Product and Attorney-Client Privilege Claims

Dear Judge Shushan:

      In compliance with this Court's order, Transocean and Halliburton submitted a joint list of twenty BP documents for *in camera* review (ten attorney-client privilege and ten work product).  The purpose of the *in camera* review process was to test the accuracy of BP's thousands of privilege claims over documents relevant to Phase II of this litigation.  Accordingly, *as a representative sample* of the many BP documents for which privilege designations appear suspect, Transocean selected sixteen documents for *in camera* inspection and Halliburton selected four.[1]  This does not mean that Transocean's challenges to BP's claims of privilege were winnowed down to only sixteen documents.  Based on the comments made in its response, BP incorrectly concluded that Transocean intended to challenge only sixteen documents.

      Despite its misunderstanding, BP agreed to produce eight, or 50%, of the documents Transocean designated for *in camera* review.   In light of BP's de-designation of these documents submitted for in camera review, Transocean respectfully requests that it be allowed to designate similar "replacement" documents for which Transocean's challenges remain unresolved.  Transocean also requests that BP apply to Transocean's remaining challenges the same criteria that it applied in releasing documents designated for *in camera* review to determine whether additional challenges may be resolved without the Court's guidance.

### I.    Attorney-Client Privilege

      Transocean is challenging BP's assertion of attorney-client privilege over log entries 26, 211, and 574,[2] as a representative sample of many others.  Transocean objects to these entries because (1) BP's own logs show that no attorneys were involved in the underlying communications and (2) the entries describe the communications as merely "reflecting" attorney advice.

---

[1] The sixteen documents Transocean designated for *in camera* review were discussed in detail in Transocean's Schedule I Opening Brief.

[2] Transocean also challenged Entries Nos. 6, 421, 426, 609 and 712, but BP subsequently agreed to release these documents.

    ATLANTA          AUSTIN          HOUSTON          NEW YORK          WASHINGTON DC

BP asserts that communications among non-attorneys are privileged "if created as part of a process of conveying or soliciting legal advice."  BP's Opp. to Transocean Br. at 4.

To be clear, however, the test for determining whether communications among non-attorney BP employees are privileged is whether they were made for the purpose of obtaining legal advice.  As the Fifth Circuit noted in a case that BP cites to support its assertion of privilege over non-attorney communications, *see* BP's Opp. to U.S. Br. at 5, such communications are only privileged if "made for the purpose of obtaining legal advice."  *Rush v. Columbus Mun. Sch. Dist.*, No. 99-60910, 2000 WL 1598021, at *2 (5th Cir. Sept. 28, 2000).  Indeed, Fifth Circuit law is clear: the privilege only protects communications when they are "made in confidence *for the purpose of obtaining legal advice* from [a] lawyer."  *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982) (emphasis added).  BP's own citations support this fundamental limitation.  *See, e.g.*, *Rush*, 2000 WL 1598021, at *2; *In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321, 331 (S.D.N.Y. 2003) (holding that communications between a client and a consultant were privileged "provided the purpose of the confidential communication was to obtain legal advice"); *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 219–20 (S.D.N.Y. 2001) (holding that client-consultant communications are privileged if "made for the purpose of facilitating the rendition of legal services").  BP does not cite a single authority that expands the attorney-client privilege to communications that were not prepared for the purpose of securing legal advice.

BP's descriptions—which generally state only that the document is a "[d]iscussion among client representatives reflecting attorney's legal advice regarding Deepwater Horizon incident"—make it impossible for Transocean to evaluate whether the communications were made for the purpose of obtaining legal advice, or merely "reflect" advice in some broader sense of that term.  For example, if opinions stated by a non-attorney happened to coincidentally mirror opinions given by an attorney but were not actually transmitting the attorney's advice, the non-attorney's communications would not be privileged.  Transocean therefore asks that the Court evaluate whether the documents submitted *in camera* establish on their face that that they are communications made for the purpose of obtaining legal advice.  If not, BP has failed to satisfy its burden of establishing that the privilege applies.

## II.     **Work Product Doctrine**

Transocean also challenges BP's assertion of work product protection over log entries 110, 195, 410, 686, and 1567,[3] as a representative sample of many others, on the ground that these documents were unlikely to have been prepared in anticipation of litigation.

Fifth Circuit precedent explicitly holds that documents were "prepared in anticipation of litigation" if "the primary motivating purpose behind the creation of the document was to aid in possible future litigation."  *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982)

---

[3] Transocean also challenged Entries Nos. 73, 146, and 2549, but BP subsequently agreed to release these documents.

(internal quotation marks omitted).  The Court should resist BP's invitation to depart from this established, binding precedent based on an isolated, unpublished decision from another district that provides no support for its propositions and has yet to be cited in a single decision.

BP also misses the mark in characterizing Transocean's position on work product claims over documents created between April 20, 2010 and July 16, 2010.  Far from asserting that "no one" at BP "could have done anything during those three months in anticipation of litigation," BP Resp. Br. to Transocean at 5, Transocean has focused on individuals with important roles in source control, reasoning that the primary purpose of documents created by or sent to these individuals during this time was more likely to aid in capping the well than to aid in future litigation.

Finally, BP fails in its attempt to incorporate by reference the "Privileged Workstream" argument from its response brief to the United States.  *See* BP Resp. Br. to U.S. at 9.  Regardless of whether BP successfully created such a workstream, all of the documents Transocean designated for *in camera* review were created by July 16, 2010, *before* the July 19, 2010 memorandum that established the allegedly privileged workstream.  *See id.*  Transocean remains focused on the period of time in which oil was still flowing and capping the well was of the utmost urgency, and this Court should be skeptical of claims that certain individuals, known to have important roles in source control efforts, were creating documents during this period with the *primary* purpose of aiding future litigation.

### III.     Conclusion

For the reasons set forth herein, Transocean respectfully requests that this Court inspect the BP documents corresponding to the *in camera* review spreadsheets and order BP to produce, or produce with redactions, all non-privileged documents and extrapolate across its privilege logs any ruling requiring such production.  Transocean also asks that it be permitted to designate eight additional BP documents for *in camera* review.

Sincerely,

 /s/ *David Baay*
David Baay