# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, | * <br> * MDL No. 2179 <br> * <br> * Section: J |
| This Pleading applies to: | * <br> * Judge Barbier <br> * |
| *MDL 2179 B1 Amended Master Complaint And All Cases In Pleading Bundle B1* | * Magistrate Judge Shushan <br> * <br> * |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## BP'S MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS BP DEALER CLAIMS

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL  60654
Telephone:  312-862-2000
Facsimile:  312-862-2200

Corey C. Watson
Kevin M. Askew
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, CA   90071
Telephone: 213-680-8400
Facsimile: 213-680-8500

Christopher Landau, P.C.
Jeffrey Bossert Clark
Aditya Bamzai
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, DC   20005
Telephone:  202-879-5000
Facsimile:  202-879-5200

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, LA   70139-5099
Telephone:  504-581-7979
Facsimile:  504-556-4108

C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC   20004-2401
Telephone:  202-662-5985
Facsimile:  202-662-6291

***Attorneys for BP Exploration & Production Inc., BP America Production Company, and BP p.l.c.***

July 11, 2012

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................................1

BACKGROUND ..............................................................................................................................3

      A.      BP Dealer Claims Under The Amended Master B1 Complaint ..............................3

      B.      BP Dealer Claims Under The Individual Complaints And Short-Form Joinders ......................................................................................................................4

      C.      The Court's Rulings ...................................................................................................5

LEGAL STANDARD......................................................................................................................6

ARGUMENT....................................................................................................................................6

I.      The BP Dealer Claims Fail As A Matter Of Law Under OPA. ..........................................7

II.     The BP Dealer Claims Also Fail As A Matter Of Law Under General Federal Maritime Law.................................................................................................................11

CONCLUSION...............................................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adkins v. Trans-Alaska Pipeline Liab. Fund*,
   101 F.3d 86 (9th Cir. 1996) ................................................................................................ 11

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) ............................................................................................................. 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................. 6

*Barr Labs., Inc. v. Quantum Pharmics, Inc.*,
   827 F. Supp. 111 (E.D.N.Y. 1993) .................................................................................... 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................. 6

*Benefiel v. Exxon Corp.*,
   959 F.2d 805 (9th Cir. 1992) ............................................................................................. 10

*CSX Transp., Inc. v. McBride*,
   131 S. Ct. 2630 (2011) ....................................................................................................... 10

*Exxon Co., U.S.A. v. Sofec, Inc.*,
   517 U.S. 830 (1996) ........................................................................................................... 10

*Holmes v. SIPC*,
   503 U.S. 258 (1992) ............................................................................................................. 9

*In re Bouchie*,
   324 F.3d 780 (5th Cir. 2003) (*per curiam*) ......................................................................... 8

*In re Oil Spill by the Oil Rig "Deepwater Horizon" In the Gulf of Mexico, On April 20, 2010*,
   731 F. Supp. 2d 1352 (J.P.M.L. 2010) ................................................................................ 3

*In re Taira Lynn Marine Ltd. No. 5, LLC,*,
   444 F.3d 371 (5th Cir. 2006) ......................................................................................... 9, 12

*Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*,
   1993 WL 155503 (N.D. Ill. 1993) ..................................................................................... 11

*Pacific Operators Offshore, LLP v. Valladolid*,
   132 S. Ct. 680 (2012) ......................................................................................................... 10

*Plotkin v. IP Axess Inc.*,
    407 F.3d 690 (5th Cir. 2005) ................................................................................................ 6

*Robins Dry Dock & Repair Co. v. Flint*,
    275 U.S. 303 (1927) .............................................................................................. 2, 5, 12

*Sekco Energy, Inc. v. M/V Margaret Chouest*,
    Civ. A. No. 92-0420, 1993 WL 322942 (E.D. La. Aug. 13, 1993) .......................................... 9

*State of La. ex rel. Guste v. M/V Testbank*,
    752 F.2d 1019 (5th Cir. 1985) (en banc) ................................................................................ 12

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) ................................................................................................ 6

## STATUTES, REGULATIONS, AND RULES

28 U.S.C. § 1292(b) ................................................................................................................ 11

33 U.S.C. § 2701 *et seq.* .......................................................................................................... 1

33 U.S.C. § 2702(b)(2)(E) .............................................................................................. 2, 7, 8, 9

43 U.S.C. § 1653(c)(1) ............................................................................................................ 10

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 2, 13

## OTHER AUTHORITIES

Goldberg, John C.P.,
    *Liability for Economic Loss in Connection with the Deepwater Horizon Spill* (Nov. 22, 2010),
    available at http://nrs.harvard.edu/urn-3:HUL.InstRepos:4595438 .......................................... 8

Keeton, W., Dobbs, D., Keeton, R., & Owens, D.,
    *Prosser and Keeton on Law of Torts* (5th ed. 1984) ................................................................ 9

## INTRODUCTION AND SUMMARY OF ARGUMENT

In the wake of the *Deepwater Horizon* oil spill, defendant BP Exploration & Production Inc. ("BPXP") voluntarily assumed Responsible Party status under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.*, established the Gulf Coast Claims Facility, and began compensating individuals and businesses for economic injuries suffered as a result of the spill. In May 2012, this Court preliminarily approved a class-action settlement that resolves the vast majority of the economic loss claims at issue in this litigation against BPXP, BP America Production Company, and BP p.l.c. (collectively "BP"). *See* Rec. Doc. 6418.

The proposed settlement agreement, however, excludes numerous claims against BP that are not even arguably compensable under governing law. Among such claims are those filed by owners of service stations that sell BP-branded fuel anywhere in the country alleging that, following the *Deepwater Horizon* spill, some customers chose to purchase fuel elsewhere as a result of animosity towards BP. In its recent order calling for briefing on certain claims outside the scope of the proposed settlement, this Court described these so-called "BP Dealer Claims" as "claims by or on behalf of entities marketing BP-branded fuels that they have suffered damages, including loss of business, income, and profits, as a result of the loss of value to the 'BP' brand or name." Rec. Doc. 6657, at 1. Pursuant to that order, Defendants BPXP, BP America Production Company, and BP p.l.c. hereby move to dismiss these claims as a matter of law.

The Court already has held that federal law preempts state law and makes it "inapplicable to this case." Rec. Doc. 3830, at 18. Accordingly, the BP Dealer Claims must arise, if at all, under federal law. Although BP respectfully submits that OPA provides the exclusive source of federal law potentially applicable to economic loss claims against an OPA Responsible Party, this Court has rejected that submission, and held that OPA does not entirely displace such claims based on general federal maritime law. For purposes of this motion, that point is not dispositive,

because the BP Dealer Claims against BP fail as a matter of law under ***both*** OPA ***and*** general federal maritime law.

***First***, the BP Dealer Claims fail as a matter of law under the plain text of OPA. The statute does not authorize a private party to recover damages for every conceivable loss of profits that can be traced in any way to an oil spill. Rather, as relevant here, OPA allows private parties to recover ***only*** those lost profits "***due to the injury, destruction, or loss of real property, personal property, or natural resources***." 33 U.S.C. § 2702(b)(2)(E) (emphasis added). It follows that the statue does not allow private parties to recover lost profits due to ***other*** causes, such as consumer reactions to an oil spill. By specifying that private parties may only recover lost profits "due to" three enumerated categories of injury, the statute does not authorize private parties to recover lost profits due to other causes. Any contrary interpretation would suggest that Congress created ***limitless*** economic loss liability—a notion contrary to the statute's text and structure, as well as to numerous precedents interpreting both OPA and other analogous statutes.

***Second***, the BP Dealer Claims also fail as a matter of law under general federal maritime law. As the Fifth Circuit and this Court have consistently recognized, maritime law does not allow a plaintiff to recover purely economic damages absent physical injury to a proprietary interest. *See Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927). Because the BP Dealers do not allege any physical injury to a proprietary interest, they cannot recover under general federal maritime law.

Accordingly, because the BP Dealer Claims are not cognizable under either OPA or general federal maritime law, they must be dismissed for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

### A.     BP Dealer Claims Under The Amended Master B1 Complaint

This case arises out of the April 20, 2010 blowout of the Macondo oil well, followed by an explosion, fire, and eventual loss of the *Deepwater Horizon* mobile offshore drilling unit, which resulted in an oil spill off the Gulf Coast.  On August 10, 2010, the Judicial Panel on Multidistrict Litigation established this MDL proceeding.  *See In re Oil Spill by the Oil Rig "Deepwater Horizon" In the Gulf of Mexico, On April 20, 2010*, 731 F. Supp. 2d 1352 (J.P.M.L. 2010).

On December 16, 2010, two service station owners from Georgia who operate under the BP brand filed a complaint in this Court styled *Tobatex, Inc. v. BP, p.l.c.*, No. 10-4573.  The *Tobatex* plaintiffs, who purport to represent a nationwide class of owners or operators of BP service stations, allege that the *Deepwater Horizon* spill resulted in consumer animosity toward the BP brand, which in turn led to lost profits for service stations selling BP-branded fuel:

> The conduct of Defendants ... in failing to have in place necessary and appropriate safeguards to avoid this type of disaster, in causing the disaster and in failing to take prompt and effective measures to mitigate the effect of the disaster has resulted in and continues to result in widespread and foreseeable ***animosity, hatred, ill will, verbal and physical threats directed against and a decrease in purchases of motor fuel and other consumer products and services, loss of income, profits and goodwill sustained by independent service stations throughout the United States,*** including Plaintiffs, which sell motor fuel products under the BP name and logo, to their damage.

No. 10-4573, Rec. Doc. 1 ¶ 1 (emphasis added); *see also id.* ¶ 48 (alleging that BP Dealer Plaintiffs "have lost, are losing, and will likely continue to lose customers due to animosity towards the BP name and logo").

On October 19, 2010, this Court entered an order creating various pleading bundles.  *See* Pretrial Order No. 11 (Rec. Doc. 569), at 2-5.  Among those bundles is the so-called B1 Bundle, which applies to claims for non-governmental economic loss and property damage.  *See id.* at 3.

The Plaintiffs' Steering Committee filed a Master B1 Complaint (Rec. Doc. 879) on December 15, 2010.

On January 12, 2011, the Court issued Pre-trial Order No. 25, which clarified that "[a]ny individual plaintiff who is a named plaintiff in a case that falls within Pleading Bundle B1 [including the *Tobatex* plaintiffs] is deemed to be a plaintiff in the applicable Master Complaint(s)." Rec. Doc. 983 ¶ 4. The Court also ordered that "[f]or the procedural and administrative purpose of … responding to the complaints in Pleading Bundles B1 … the allegations, claims, theories of recovery and/or prayers for relief contained within the pre-existing petition or complaint are deemed to be amended, restated, and superseded by the allegations, claims, theories of recovery, and/or prayers for relief in the respective Master Complaint(s)." *Id.* ¶ 5.

Plaintiffs filed the First Amended B1 Master Complaint on February 9, 2011. Rec. Doc. 1128. Echoing the *Tobatex* allegations, that Complaint brings claims on behalf of "dealers and service stations and the employees thereof who have suffered damages, including loss of business, loss of income and lost profits, as a result of the Spill[.]" Am. Master B1 Compl. ¶ 209m; *see also id*. ¶ 625 (alleging that BP Dealer Plaintiffs have suffered "loss of business, loss of income and lost profits, and inconvenience due to the decrease in business resulting from the Spill"). The BP Dealer Plaintiffs assert maritime law claims for negligence, gross negligence, and willful misconduct; a claim under OPA; and a state-law claim for fraudulent concealment. *See id.* ¶¶ 569-636, 678-90, 712-31.

### B. BP Dealer Claims Under The Individual Complaints And Short-Form Joinders

In addition to the Amended Master B1 Complaint and the *Tobatex* Complaint, BP is aware of one individual complaint consolidated into this MDL proceeding that asserts a BP

4

Dealer Claim. *See S. Trout, Inc. v. BP America Production Co.*, No. 12-00094 (S.D. Miss. Mar. 29, 2012). The *Trout* complaint alleges that plaintiff "lost business, revenue and income due to the branding of its gas station." *Id.* ¶ IX.

In addition, consistent with the Court's orders, at least two individuals have filed short-form joinders bringing BP Dealer Claims and thereby opting into the Amended B1 Master Complaint. The table below quotes these Claimants' allegations verbatim:

| Claimant | Allegation |
|---|---|
| Elias Ibrahim | In 2009 BP converted nearly 250 Getty fuel stations in the New England area to the BP brand. All remaining Getty fuel stations remained Getty branded, however, each station purchased its fuel from BP. The oil spill in the Gulf of Mexico received world-wide attention. As a protest against BP and all things associated with BP thousands of drivers chose not to fill their vehicles at BP or BP associated fuel/service stations. As a result, my business saw a dramatic decline in Profits from which it has yet to recover. |
| Kayyal Abdel | I operate a BP service station in a Gulf Coast community. As a result of the Deepwater Horizon Spill, business dropped off significantly. Gasoline sales, service orders and sales, and retail sales all declined. Less money was spent by my customers that also suffered economic losses as a result of the spill, and business declined as a result of customers who either boycotted or otherwise decided to not use BP stations because of the stigma related to the spill. |

### C. The Court's Rulings

On August 26, 2011, this Court resolved various motions filed by the defendants to dismiss the Amended B1 Master Complaint. *See* Rec. Doc. 3830. Most significantly for present purposes, the Court ruled that state law in this area is entirely preempted by federal law. *See id.* at 18. Although the Court held that OPA does not entirely displace general federal maritime law claims against BP, it further held that, to the extent that maritime-law remedies supplement OPA remedies, traditional common-law limitations on maritime-law remedies (such as the *Robins Dry Dock* rule) remain in effect and limit recovery. *See id.* at 24-26.

5

On June 12, 2012, the Court authorized the filing of additional motions focusing on certain remaining claims that fall outside the scope of the proposed settlement agreement. *See* Rec. Doc. 6657. Those claims include the "BP Dealer Claims," described in the Court's order as "claims by or on behalf of entities marketing BP-branded fuels that they have suffered damages, including loss of business, income, and profits, as a result of the loss of value to the 'BP' brand or name." *Id.* at 1. Pursuant to that Order, BP files this motion to dismiss.

## LEGAL STANDARD

In resolving a motion to dismiss a complaint for failure to state a claim on which relief can be granted under Rule 12(b)(6), a court must accept as true a complaint's well-pleaded factual allegations. *See, e.g.*, *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005). The term "well-pleaded" is critical: a court need not, and may not, accept any factual allegation, but only those that state "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 559 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotation omitted). Thus, a complaint "that offers labels and conclusions or a formulaic recitation of the elements of a cause action will not do," *id.* (internal quotation omitted): a court need not accept "conclusory allegations, unwarranted factual inferences, or legal conclusions," *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

## ARGUMENT

The BP Dealer Claims fail as a matter of law under both OPA and general federal maritime law. Each of these sources of law is discussed in turn below.

I.      **The BP Dealer Claims Fail As A Matter Of Law Under OPA.**

The BP Dealers cannot assert claims under OPA for the simple reason that none of their alleged economic losses were suffered "*due to* the injury, destruction, or loss of real property, personal property, or natural resources." 33 U.S.C. § 2702(b)(2)(E) (emphasis added).

OPA enumerates six categories of damages that may be recovered under the statute, *see* 33 U.S.C. § 2702(b)(2)(A)-(F), and, by doing so, excludes recovery of any other kinds of damages. *See* Rec. Doc. 3830, at 26 (recognizing that, because "OPA does not mention punitive damages ... punitive damages are not available under OPA"). Of the six categories of damages permitted by OPA, only three may be recovered by private plaintiffs—and of those three, only the damages specified under § 2702(b)(2)(E) could conceivably apply to the BP Dealer Claims. That provision allows private parties to recover "[d]amages equal to the loss of profits or impairment of earning capacity *due to* the injury, destruction, or loss of real property, personal property, or natural resources." 33 U.S.C. § 2702(b)(2)(E) (emphasis added).

The BP Dealers cannot satisfy this requirement as a matter of law. The crux of their argument is that the *Deepwater Horizon* oil spill created "animosity" toward BP, which prompted customers to avoid purchasing fuel from BP dealers across the country. The economic losses alleged by the BP Dealers, thus, are "due to" choices made by individual consumers about where to purchase fuel, not "the injury, destruction, or loss of real property, personal property, or natural resources." *Id.* The BP Dealers do not allege that the oil spill injured, destroyed, or caused the loss of their real or personal property. Indeed, by definition, the BP Dealer Claims involve no linkage to the oil spill other than the alleged animosity toward BP engendered by the spill. But even assuming that the BP Dealers could establish that any such animosity caused consumers not to purchase BP-branded fuel—a tall order given the hundreds of thousands of actual or potential transactions at issue—losses due to such animosity are not losses due to "the

7

injury, destruction, or loss of real property, personal property, or natural resources." The plain text of the statute, its structure, and precedent supports this common-sense conclusion.

***First***, the statute specifically enumerates three discrete categories of property that must be injured, destroyed, or lost in order for private parties to meet the minimum threshold for recovering economic losses—"real property, personal property, or natural resources." 33 U.S.C. § 2702(b)(2)(E) ("Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of [i] ***real property,*** [ii] ***personal property, or*** [iii] ***natural resources***, which shall be recoverable by any claimant."). By its terms, that enumeration of three specific categories of injury underscores that Congress did not intend for private parties to recover damages for ***any and all*** injuries, no matter how attenuated or speculative, that somehow could be traced to the oil spill. *See* John C.P. Goldberg, *Liability for Economic Loss in Connection with the Deepwater Horizon Spill* (Nov. 22, 2010), at 3, available at http://nrs.harvard.edu/urn-3:HUL.InstRepos:4595438 ("This statutory language [of OPA Section 2702(b)(2)(E)] is best understood to allow recovery only by those economic loss claimants who can prove that they have suffered economic loss because a spill has damaged, destroyed or otherwise rendered physically unavailable to them property or resources that they have a right to put to commercial use."); *see generally In re Bouchie*, 324 F.3d 780, 784 (5th Cir. 2003) (*per curiam*) ("Under the *expressio unius* maxim, the decision to include three … factors but not the others must be construed to prohibit the extra-statutory consideration of those other factors."). If Congress had wanted to allow private parties to recover profits lost "due to" consumer reaction to an oil spill, it could and would have authorized such damages among the specific categories of damages enumerated in the statute.

*Second*, the Fifth Circuit has endorsed this common-sense interpretation of the phrase "due to" in §2702(b)(2)(E). *See In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 382 (5th Cir. 2006). In that case, a tugboat and tow hit a bridge resulting in a discharge of gaseous cargo. *Id.* at 375. Police evacuated the area around the bridge, and businesses sued for damages resulting from the evacuation. Certain businesses sought lost revenues from halting their operations to evacuate; a manufacturer sought damages for product ruined when it prematurely terminated operations to evacuate; and a seafood distributor sought damage for seafood spoiled because officials cut off electricity during the evacuation. *See id.* at 375-77, 380-82. The Fifth Circuit held that "Claimants have not raised an issue of fact as to whether their economic losses are ***due to*** damage to property resulting from the discharge of the gas. Therefore, Claimants cannot recover under OPA[.]" *Id.* at 383 (emphasis added); *see also Sekco Energy, Inc. v. M/V Margaret Chouest*, Civ. A. No. 92-0420, 1993 WL 322942, at *4-6 (E.D. La. Aug. 13, 1993) (holding that plaintiff could not recover under § 2702(b)(2)(E) where lost oil production revenues due to government shutdown of oil platform, not antecedent oil spill). As these cases indicate, OPA requires more than just a bare assertion that claimed economic losses are somehow connected to an oil spill—such losses must be "due to the injury, destruction, or loss of real property, personal property, or natural resources," 33 U.S.C. § 2702(b)(2)(E), not some subsequent factor, such as a government action or a consumer choice.

*Third*, the Supreme Court has repeatedly held that other federal statutes should not be interpreted (as the PSC suggests) to create "infinite liability" for allegations of wrongful conduct. *See, e.g.*, *Holmes v. SIPC*, 503 U.S. 258, 266 n.10 (1992) (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Law of Torts* § 41, p. 264 (5th ed. 1984)); *cf. Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458-60 (2006) (rejecting the "attenuated connection

9

between Ideal's injury and the Anzas' injurious conduct"). Though the statutory language interpreted differs somewhat from case to case, the Court has constantly explained that judges "have no warrant" to submit cases to a jury that do not make "common sense." *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2643-44 (2011); *see also id.* at 2642 (explaining that "courts and legislatures appropriately place limits on the chain of causation that may support recovery on any particular claim" to "prevent 'infinite liability'") (plurality opinion); *Pacific Operators Offshore, LLP v. Valladolid*, 132 S. Ct. 680, 691 (2012) (explaining that to show injuries compensable under the Outer Continental Shelf Lands Act a plaintiff must "establish a significant causal link between the injury that he suffered and his employer's on-OCS operations conducted for the purpose of extracting natural resources from the OCS"). Indeed, these cases accord with the background principle of maritime law that a superseding cause interrupts the alleged chain of events and thereby precludes the recovery of damages from an allegedly prior tortfeasor. *See, e.g.*, *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830 (1996).

Lower court cases are to the same effect. For example, in *Benefiel v. Exxon Corp.*, 959 F.2d 805 (9th Cir. 1992), the Ninth Circuit held that plaintiffs could not recover damages under the Trans-Alaska Pipeline Authorization Act ("TAPAA"), 43 U.S.C. § 1653(c)(1), from climbing retail gas prices allegedly resulting from the *Exxon Valdez* spill. The court explained that "Congress envisioned damages arising out of the ***physical effects*** of oil discharges. The remote and derivative damages of the type claimed by plaintiffs here fall outside the zone of dangers against which Congress intended to protect when it passed TAPAA." *Benefiel*, 959 F.2d at 807 (emphasis added). As the Ninth Circuit explained, the oil "spill itself did not directly cause any injury" to plaintiffs but instead "triggered a series of intervening events" that caused the alleged damages. *Id.*; *see also Adkins v. Trans-Alaska Pipeline Liab. Fund*, 101 F.3d 86, 89 (9th Cir.

10

1996) (holding that TAPAA did not allow claims by "businesses who suffered losses because the impact of the oil spill on their customers caused patronage to decline," and claims by businesses "located outside of the geographic limits of the oil spill," because the alleged damages were "too remote because of the presence of intervening causes, such as … ***the independent decisions of prospective customers***") (emphasis added); *Barr Labs., Inc. v. Quantum Pharmics, Inc.*, 827 F. Supp. 111, 116 (E.D.N.Y. 1993) (holding that plaintiffs could not recover under RICO where alleged losses were not caused directly by statutory violations, but where they "depend[ed] on the intervening actions of the FDA and Quantum's customers. ... Quantum's customers could choose to purchase Quantum's products or to purchase any other manufacturer's generic drugs."); *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 1993 WL 155503, *3 (N.D. Ill. 1993) (holding that plaintiffs could not recover under RICO where "only the intervening customer's choices connect IIT's alleged violation to ITAS' injury").[1]

## II. The BP Dealer Claims Also Fail As A Matter Of Law Under General Federal Maritime Law.

As the Court is aware, BP has argued that OPA entirely displaces claims under general federal maritime law that seek to recover economic losses from an OPA Responsible Party, *see* Rec. Doc. 1440-1, at 13-17, and has sought certification of an interlocutory appeal under 28 U.S.C. § 1292(b) on this issue, *see* Rec. Doc. 4291. BP respectfully disagrees with the Court's prior holding on this issue as well as its decision not to grant BP's interlocutory appeal motion on this point.

---

[1] Indeed, even the PSC's consulting expert in this case, Professor David Robertson, who generally advocates an aggressive interpretation of OPA, agrees that claims like the BP Dealer Claims should be dismissed. *See* David W. Robertson, *The Oil Pollution Act's Provisions on Damages for Economic Loss*, 30 Miss. C. L. Rev. 157, 172-73 (2011) ("*G* owns a gas station in Boise, Idaho that sells Oil Co.-brand gasoline. Although G owns and operates the station as an independent franchise, his station becomes the target of a boycott by a local environmental group demanding greater corporate accountability. G claims lost income resulting from the boycott. ... It seems unlikely that the existence of 'injury, destruction, or loss' of resources or property played any causal role in producing these damages. [T]he boycott ... would probably have occurred as a result of the reputational effects of the spill, regardless of whether the spill had actually produced any 'injury, destruction, or loss' of anything physical").

Even assuming, however, that OPA does not entirely displace BP Dealer Claims brought under general federal maritime law, the Court has already ruled that claimants who have not alleged physical injury to their proprietary interest—like the BP Dealer Plaintiffs—do not have a valid cause of action under federal maritime law "and would be precluded from recovery by virtue of *Robins Dry Dock*." Rec. Doc. 3830, at 24-25. As the Court explained in its B1 Order, the background rule of *Robins Dry Dock* (with one exception not relevant here) prohibits recovery under federal maritime law except where the plaintiff can establish a physical injury to a proprietary interest. *See* 275 U.S. at 309; *see also, e.g.*, *Taira Lynn*, 444 F.3d at 377 ("It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit."); *State of La. ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1020 (5th Cir. 1985) (*en banc*) ("We are asked to abandon physical damage to a proprietary interest as a prerequisite to recovery for economic loss in cases of unintentional maritime tort. We decline the invitation."); Rec. Doc. 3830, at 19 (explaining that *Robins Dry Dock* bars "claims for purely economic losses unaccompanied by physical damage to a proprietary interest").

Consistent with *Robins Dry Dock*, the Court has already ordered the dismissal of general federal maritime law claims that do not allege physical injury to a proprietary interest. *See* Rec. Doc. 3830, at 24-25 ("The B1 Master Complaint alleges economic loss claims on behalf of various categories of claimants, many of whom have not alleged physical injury to their property or other proprietary interest …. Accordingly, claims under general maritime law asserted by such claimants are not plausible and must be dismissed."). Applying that holding here, this Court should similarly dismiss the BP Dealer Claims.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the BP Dealer Claims for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

July 11, 2012

Respectfully submitted,

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL   60654
Telephone:  312-862-2000
Facsimile:  312-862-2200

Corey C. Watson
Kevin M. Askew
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, CA   90071
Telephone: 213-680-8400
Facsimile: 213-680-8500

Christopher Landau, P.C.
Jeffrey Bossert Clark
Aditya Bamzai
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, DC   20005
Telephone:  202-879-5000
Facsimile:  202-879-5200

*/s/ Don K. Haycraft*
Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, LA   70139-5099
Telephone:  504-581-7979
Facsimile:  504-556-4108

C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC   20004-2401
Telephone:  202-662-5985
Facsimile:  202-662-6291

***Attorneys for BP Exploration & Production Inc., BP America Production Company, and BP p.l.c.***

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 11th day of July, 2012.

      */s/ Don K. Haycraft*
      Don K. Haycraft