# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, | * * * | MDL No. 2179 |
| | * | Section: J |
| This Pleading applies to: | * | |
| | * | Judge Barbier |
| | * | |
| *MDL 2179 B1 Amended Master Complaint And All Cases In Pleading Bundle B1* | * * * | Magistrate Judge Shushan |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## BP'S MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS RECREATION CLAIMS

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  312-862-2000
Facsimile:  312-862-2200

Christopher Landau, P.C.
Jeffrey Bossert Clark
Aditya Bamzai
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  202-879-5000
Facsimile:  202-879-5200

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone:  504-581-7979
Facsimile:  504-556-4108

C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone:  202-662-5985
Facsimile:  202-662-6291

*Attorneys for BP Exploration & Production Inc., BP America Production Company, and BP p.l.c.*

July 11, 2012

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................1

BACKGROUND ...........................................................................................................................3

    A.    Recreation Claims Under The Amended Master B1 Complaint ............................3

    B.    Recreation Claims Under The Individual Complaints And Short-Form Joinders...............................................................................................................4

    C.    The Court's Rulings ...............................................................................................7

LEGAL STANDARD....................................................................................................................7

ARGUMENT .................................................................................................................................8

I.    The Recreation Claims Fail As A Matter Of Law Under OPA. .........................................8

    A.    The Recreation Claims Do Not Involve "Injury To" Or "Destruction Of" "Real Or Personal Property" Under § 2702(b)(2)(B)..........................................................................................................9

        1.    The "Loss of Enjoyment" Claims ............................................................10

        2.    The "Loss of Deposit" Claims ..................................................................12

    B.    The Recreation Claims Do Not Involve "Loss Of Subsistence Use Of Natural Resources" Under § 2702(b)(2)(C). .....................................................13

    C.    The Recreation Claims Do Not Involve "Loss Of Profits" Or "Earning Capacity" Under § 2702(b)(2)(E)..........................................................15

II.    The Recreation Claims Also Fail As A Matter Of Law Under General Federal Maritime Law.....................................................................................................................15

    A.    The *Robins Dry Dock* Rule .................................................................................16

    B.    *The Conqueror* Rule ............................................................................................18

CONCLUSION.............................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................ 7

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................ 7

*Central State Transit & Leasing Corp. v. Jones Boat Yard, Inc.,*
  206 F.3d 1373 (11th Cir. 2000) ......................................................................... 18

*Dow Chem. Co. v. M/V Roberta Taylor,*
  815 F.2d 1037 (5th Cir. 1987) ........................................................................... 18

*Frichelle Ltd. v. Master Marine, Inc.,*
  99 F. Supp. 2d 1337 (S.D. Ala. 2000) ............................................................... 19

*Gladsky v. Sessa,*
  No. 06-3134, 2007 WL 2769494 (E.D.N.Y Sept. 21, 2007)................................ 19

*Gough v. Natural Gas Pipeline Co. of Am.,*
  996 F.2d 763 (5th Cir. 1993) ............................................................................. 17

*In re Belfry,*
  862 F.2d 661 (8th Cir. 1988) ............................................................................. 12

*In re Bouchie,*
  324 F.3d 780 (5th Cir. 2003) (*per curiam*) .......................................................... 9

*In re Clearsky Shipping Corp.,*
  No. 96-4099, 1998 WL 42884 (E.D. La. Jan. 30, 1998)....................................... 17

*In re Cleveland Tankers, Inc.,*
  791 F. Supp. 669 (E.D. Mich. 1992) .................................................................. 13

*In re Oil Spill by the Oil Rig "Deepwater Horizon" In the Gulf of Mexico, On April 20, 2010,*
  731 F. Supp. 2d 1352 (J.P.M.L. 2010) ................................................................. 3

*In re Palmer Johnson Savannah, Inc.,*
  1 F. Supp. 2d 1386 (S.D. Ga. 1997) ................................................................... 19

*In re Taira Lynn Marine Ltd. No. 5, LLC,*
  444 F.3d 371 (5th Cir. 2006)........................................................................ 12, 16

*Kelly v. Porter, Inc.,*
  687 F. Supp. 2d 632 (E.D. La. 2010) ................................................................. 18

*Oppen v. Aetna Ins. Co.*,
    485 F.2d 252 (9th Cir. 1973) ................................................................................ 19

*Parillo v. Comm. Union Ins. Co.*,
    85 F.3d 1245 (7th Cir. 1996) ................................................................................ 18

*Plotkin v. IP Axess Inc.*,
    407 F.3d 690 (5th Cir. 2005) .................................................................................. 8

*Ransom v. FIA Card Servs., N.A.*,
    131 S. Ct. 716 (2011) ............................................................................................. 9

*Robins Dry Dock & Repair Co. v. Flint*,
    275 U.S. 303 (1927) .......................................................................... 2, 7, 16, 17, 18

*Sekco Energy, Inc. v. M/V Margaret Chouest*,
    820 F. Supp. 1008 (E.D. La. 1993) ................................................................. 12, 13

*Shaughnessy v. PPG Indus,. Inc.*,
    795 F. Supp. 193 (W.D La. 1992) ......................................................................... 17

*Snavely v. Lang*,
    592 F.2d 296 (6th Cir. 1979) ........................................................................... 17, 18

*State of La. ex rel. Guste v. M/V Testbank*,
    752 F.2d 1019 (5th Cir. 1985) (*en banc*) ......................................................... 16, 17

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) .................................................................................. 7

*The Clarence*,
    3 W. Rob. 283 (1850) ........................................................................................... 18

*The Conqueror*,
    166 U.S. 110 (1897) ................................................................................ 2, 16, 18, 19

*Thomson v. United States*,
    266 F.2d 852 (4th Cir. 1959) ................................................................................ 19

*Yaffe v. Scarlett Place Residential Condo., Inc.*,
    No. 2775, 2012 WL 1998066 (Md. Ct. Spec. App. June 5, 2012) ........................... 13

*Zepsa Indus., Inc. v. Kimble*,
    No. 08-4, 2008 WL 4891115 (W.D.N.C. Nov. 11, 2008) ...................................... 19

**Statutes, Regulations, and Rules**

16 U.S.C. § 3113 .......................................................................................................... 13

28 U.S.C. § 1292(b) ..................................................................................................... 16

33 C.F.R. § 136.215(a)-(a)(1) ...................................................................................... 10

33 C.F.R. § 136.217(a) .................................................................................... 11

33 C.F.R. § 136.217(b) .................................................................................... 11

33 C.F.R. § 136.223(a) .................................................................................... 14

33 C.F.R. § 136.233(b) .................................................................................... 15

33 U.S.C. § 2701 *et seq.* ................................................................................... 1

33 U.S.C. § 2702(b)(2)(A) ............................................................................ 2, 8

33 U.S.C. § 2702(b)(2)(B) .................................................................... 2, 9, 10, 12

33 U.S.C. § 2702(b)(2)(C) ........................................................................ 2, 9, 13

33 U.S.C. § 2702(b)(2)(E) ........................................................................ 2, 9, 15

33 U.S.C. § 2706(d)(3) ...................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ............................................................................. 3, 7, 19

**Other Authorities**

National Pollution Funds Center,
   *Claimant's Guide:*
   *A Compliance Guide For Submitting Claims Under the Oil Pollution Act of 1990*
   (updated Nov. 2009),
   http://www.uscg.mil/npfc/docs/PDFs/urg/Ch6/NPFCClaimantGuide.pdf ........................ 11, 14

National Pollution Funds Center,
   *Deepwater Horizon Claimant FAQs,*
   *available at* http://www.uscg.mil/npfc/claims/DWH_faqs.asp ........................................... 11, 14

Schoenbaum, Thomas J.,
   *Admiralty & Maritime Law* (rev. ed. 2011) ........................................................... 19

*Webster's Ninth New Collegiate Dictionary* (1986) .................................................... 13

## INTRODUCTION AND SUMMARY OF ARGUMENT

In the wake of the *Deepwater Horizon* oil spill, defendant BP Exploration & Production Inc. ("BPXP") voluntarily assumed Responsible Party status under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.*, established the Gulf Coast Claims Facility, and began compensating individuals and businesses for economic injuries suffered as a result of the spill. In May 2012, this Court preliminarily approved a class-action settlement that resolves the vast majority of the economic-loss claims at issue in this litigation against BPXP, BP America Production Company, and BP p.l.c. (collectively "BP").  Rec. Doc. 6418.  Put simply, since the first days after the spill, BP has not backed away from its commitment to pay every legitimate claim for damages.

Notwithstanding BP's willingness to satisfy its legal obligations, it continues to face certain claims that are not compensable under ***any*** potentially applicable body of law.  This motion addresses one category of such claims—those alleging interference with recreational opportunities, *i.e.*, claims alleging that, as a result of the *Deepwater Horizon* spill, plaintiffs were unable to engage in the fishing, boating, diving, beachgoing, and other leisure activities that they enjoyed.  Such claims are described as "Recreation Claims" in this Court's recent order calling for motions and briefing on certain claims outside the scope of the proposed settlement, *see* Rec. Doc. 6657, and as claims brought by "Recreation Claimants" in the Amended B1 Master Complaint, *see* Rec. Doc. 1128 ¶¶ 28(e), 158.

This Court previously held that federal law preempts state law in this area, and renders it "inapplicable to this case."  Rec. Doc. 3830, at 18.  Accordingly, the Recreation Claims must arise, if at all, under federal law.  Although BP respectfully submits that OPA provides the exclusive source of federal law potentially applicable to economic loss claims against an OPA

Responsible Party, this Court has rejected that submission, and held that OPA does not entirely displace such claims based on general federal maritime law.  For purposes of this motion, that point is not dispositive, because the Recreation Claims against BP fail as a matter of law under **both** OPA **and** general federal maritime law.

*First*, the Recreation Claims fail as a matter of law under OPA.  That statute specifies three categories of damages that private parties may recover, *see* 33 U.S.C. §§ 2702(b)(2)(B), (C) , & (E) , and thereby precludes private parties from recovering **other** categories of damages. In particular, OPA allows private parties to recover only: (1) damages "for injury to, or economic losses resulting from destruction of, real or personal property" that they own or lease, *id.* § 2702(b)(2)(B);  (2) damages "for loss of subsistence use of natural resources," *id.* § 2702(b)(2)(C); and (3) damages "equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources," *id.* § 2702(b)(2)(E).  Because damages resulting from an alleged inability to pursue recreational activities do not fall within any of these three categories, they may not be recovered by private parties under OPA.  In essence, the Recreation Claimants are seeking damages for injury to natural resources, but the statute provides that such damages may be recovered, if at all, only by a public trustee.  *See id.*§ 2702(b)(2)(A).

*Second*, the Recreation Claims also fail as a matter of law under general federal maritime law.  As this Court has previously recognized, with certain limited exceptions not applicable here, a cognizable maritime claim requires "physical damage to a proprietary interest."  *See* Rec. Doc. 3830, at 19 (quoting *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927)).  In addition, federal maritime law separately prohibits compensation for lost recreational opportunities.  *See The Conqueror*, 166 U.S. 110, 133 (1897).  Because the Recreation Claims

fail under both of these venerable doctrines, they are not cognizable under general federal maritime law.

Accordingly, the Recreation Claims are not cognizable under either OPA or general federal maritime law, and must be dismissed for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

### A.      Recreation Claims Under The Amended Master B1 Complaint

This case arises out of the April 20, 2010 blowout of the Macondo oil well, followed by an explosion, fire, and eventual loss of the *Deepwater Horizon* mobile offshore drilling unit, which resulted in an oil spill off the Gulf Coast.  After the Judicial Panel on Multidistrict Litigation established this MDL proceeding, *see In re Oil Spill by the Oil Rig "Deepwater Horizon" In the Gulf of Mexico, On April 20, 2010*, 731 F. Supp. 2d 1352 (J.P.M.L. 2010), this Court entered an order creating various pleading bundles.  *See* Pretrial Order No. 11 (Rec. Doc. 569).  Among those bundles is the so-called B1 Bundle, which applies to claims for non-governmental economic loss and property damage.  *See id.* at 3.  The Plaintiffs' Steering Committee filed a Master B1 Complaint on December 15, 2010 (Rec. Doc. 879), and an Amended Master B1 Complaint on February 9, 2011 (Rec. Doc. 1128).

As amended, the Master B1 Complaint purports to bring claims on behalf of, among others, a group of "recreational sport fishermen, recreational divers, beachgoers, and recreational boaters," a group it labeled the "Recreation Claimants." *Id.* ¶ 28(e).  According to the amended B1 complaint,

> As a direct and proximate result of the Petitioners' negligence, the Recreation
> Claimants have suffered damages including, *inter alia*, loss of deposits for
> vacation rentals, loss of enjoyment of life from the inability to use the Gulf of
> Mexico for recreation and amusement purposes.

3

*Id.* ¶ 158.

Under this rubric, BP understands the Amended Master B1 Complaint to advance two distinct types of Recreation Claims: (1) "Loss of Enjoyment" claims, which allege a loss of enjoyment from the plaintiffs' inability to engage in preferred recreational activities, and (2) "Loss of Deposit" claims, which allege that plaintiffs wasted money spent in preparation for such recreational activities.  As explained below, neither type of claim is legally compensable, and hence this Court should dismiss the Recreation Claims in their entirety.

**B.      Recreation Claims Under The Individual Complaints And Short-Form Joinders**

In addition to the Amended Master B1 Complaint, numerous individual complaints consolidated into this MDL proceeding assert Recreation Claims.  *See, e.g.*, *Staley v. Cameron Int'l Corp.*, No. 10-181, Rec. Doc. 1, ¶ 20 (S.D. Miss.) (purporting to bring claims on behalf of a class of Mississippi residents "that are certified divers ... [and] have suffered damages in the form of loss of enjoyment of life due to the inability to dive or any legally cognizable loss"); *Daniels v. Cameron Int'l Corp.*, No. 10-182, Rec. Doc. 1, ¶ 20 (S.D. Miss.) (purporting to bring claims on behalf of a class of Mississippi residents who "have suffered damages in the form of loss of enjoyment of life due to the inability to fish"); *Kunstler v. BP, P.L.C.*, No. 10-1345, Rec. Doc. 1, ¶ 19 (E.D. La.) (purporting to bring claims on behalf of a class of Louisiana residents "who have sustained a cognizable loss or deprivation of their rights to engage in recreational fishing, trawling, crabbing, and/or oystering activities in the saltwaters of the State of Louisiana").

Moreover, consistent with the Court's orders, thousands of individuals have filed short-form joinders bringing Recreation Claims and thereby opting into the Amended B1 Master Complaint.  As of this filing, BP estimates that more than fourteen thousand plaintiffs have filed

4

short-form joinders that include Recreation Claims, and nearly eight hundred plaintiffs have filed

short-form joinders that bring exclusively Recreation Claims.  While it is impractical to list every

short-form joinder that includes Recreation Claims, the following table represents a sampling of

short-form joinders that present Recreation Claims, quoting the Claimants' allegations verbatim:

| Claimant | Allegation |
| --- | --- |
| Carl Martens | Mr. Carl Martens was deprived of the use of his watercraft as a result of the spill. |
| Robert Burgess | Claimant is a recreational boater and sport fisherman who relies solely on the clear and open waters of the Gulf of Mexico.  During the oil spill and in the months afterwards, Claimant was unable to use the newly purchased recreational and sport fishing vessel for its intended purpose. |
| Josie Bourgeois | Not Able to do Recreational Sports Fishing |
| Emily Wisniewski | Emily Wisniewski owns a 2009 19 foot Tahoe QSI recreational boat stored at Fort Morgan Marina in Fort Morgan, Alabama 36542.  Due to the presence of oil in the Gulf of Mexico and Mobile Bay, boat traffic was restricted and waters were closed.  Ms. Wisniewski was denied use of her boat for seven weeks (June 7, 2010 to July 26, 2010) due to the oil spill.  During this period, she paid for the upkeep and maintenance of the boat. |
| David Howell | Do to the oil spill we did not get to shrimp, fish, crab, we also had to cancel an bass tournament out of the east pearl due to the east pearl boat launch being closed. This is our 11th year holding bass tournaments out of the east pearl |
| Michael Smith | ALWAY ENJOYED THE SEA AND BAYS, FISHING & CRABING. I HAVE A BOAT I'm PAYING FOR AND CAN'T USE. I PAY $305.00 MONTH I COULDN'T USE IT FROM APRIL TIL DEC. |
| Edmond Underwood | My wife, Julie, and I booked a reservation for a condominium in Destin Florida for a week in July of last year through Gulf Sands West. In conjunction therewith, we sent our check number 4925 dated 4/9/2010 in the amount of $500 to secure the reservation. Regretfully, we cancelled our reservation due to the oil spill and were told by the person that booked the reservation (Janice) that we would get our deposit six to eight weeks after the actual reservation date had passed. In a follow up conversation, Janice advised that Gulf Sands West had, in fact, been compensated for its losses, so our reimbursement would be no problem.  We are now informed that Janice no longer works with Gulf Sands West and have attempted to secure our reimbursement from another employee, Courtney. |
| Carol Cooper | I am a Plaquemine Parish resident for over 50 years, I was a camp owner for over 20 years, I enjoyed recreational fishing from myrtle |

| | |
|---|---|
| | grove to Venice, la for all of these years. |
| Michael Dauzat | Avid fisher and beachgoer.  Fears eating seafood |
| Brett Connolly | Rec fisher and boater |
| Steven Hurst | I live in Southeast Louisiana. I am a recreational beachgoer that is unable to attend to beach because of fear of contamination.  Also, due to possible contamination of seafood. I am in fear of eating any type of seafood afraid of catching an illness |
| Blake Arata | Claimant is a recreational boat owner and licensed fisherman who lost the use of the coastal waters of Louisiana as a result of the contamination. |
| Andrew Rudon | Mr. Rudon is a recreational fisherman.  However, as a result of the BP oil spill, he is now unable to fish.  He typically fishes out of Venice, but now is being turned back.  He is having to fish from the land, and is unable to use his two boats. |
| James Kall | I have been A dedicated fisherman All of my life.  As A recreation, it is my only hobby.  I fish Grande Isle, Fourchon, Venice, Port Sulphur. Normally I eat some type of fish 2 to 3 days A week.  Following the spill most of my familiar fishing grounds were closed.  Not only did it cause me to change my diet, it Also deprived me of numerous hours of quality time. |
| Ryan Thibodeaux | In the past prior to April 20th. I fished about 4 days per month. My normal fishing location were Madison Bay/Lake Bare and Pointe Illegible most of these are as were closed due to the Oil Spill.  My loss was not being able to do any recreational fishing which of enjoy. |
| Darlean Wright | We spend our summers at the beach and on the water.  We camp and fish and enjoy all the bounty that is available to living on the Gulf Coast.  We have not been able to have this experience in the past year due to the Deep Horizon explosion and subsequent spill. |
| Houston Fortner | Claimant is a recreational scuba diver.  As a result of the untold damage to the Gulf of Mexico's marine environment and the unprecedented beach closures and restrictions caused by the oil spill, claimant has been unable to scuba dive off the Mississippi and Louisiana Gulf Coast.  It is unclear when, or if, the Gulf's pristine waters will recover from the invasion of millions of gallons of oil and dispersants. |

The foregoing table shows that some short-form joinder plaintiffs have advanced "Loss of Enjoyment" Claims, others have advanced "Loss of Deposit" Claims, and some have advanced both types of Recreation Claims.

### C.    The Court's Rulings

On August 26, 2011, this Court resolved various motions filed by the defendants to dismiss the Amended B1 Master Complaint.  *See* Rec. Doc. 3830.  Most significantly for present purposes, the Court ruled that state law in this area is entirely preempted by federal law.  *See id.* at 18.  Although the Court held that OPA does not entirely displace general federal maritime law claims against BP, it further held that, to the extent that maritime-law remedies supplement OPA remedies, traditional common-law limitations on maritime-law remedies (such as the *Robins Dry Dock* rule) remain in effect and limit recovery.  *See id.* at 24-26.

On June 12, 2012, the Court authorized the filing of additional motions focusing on certain remaining claims that fall outside the scope of the proposed settlement agreement.  *See* Rec. Doc. 6657.  Pursuant to that Order, BP files this motion to dismiss.

## LEGAL STANDARD

In resolving a motion to dismiss a complaint for failure to state a claim on which relief can be granted under Rule 12(b)(6), a court must accept as true a complaint's well-pleaded factual allegations.  *See, e.g.*, *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).  The term "well-pleaded" is critical: a court need not, and may not, accept any factual allegation, but only those that state "a plausible entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotation omitted).  Thus, a complaint "that offers labels and conclusions or a formulaic recitation of the elements of a cause action will not do," *id.* (internal quotation omitted): a court need not accept "conclusory

allegations, unwarranted factual inferences, or legal conclusions," *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

## ARGUMENT

The Recreation Claims—including both "Loss of Deposit" claims and "Loss of Enjoyment" claims—fail as a matter of law under both OPA and general federal maritime law. Each of these sources of law is discussed in turn below.

## I.     The Recreation Claims Fail As A Matter Of Law Under OPA.

Both the text and structure of OPA, as well as precedent interpreting its provisions, underscore that the statute does not authorize Recreation Claims by private parties.  Such claims seek damages not for any physical injury to private property resulting from an oil spill, but rather for alleged harm stemming from private parties' inability to enjoy natural resources held in common by the public.   In essence, thus, such claims are simply recast claims for natural resource damages.  And OPA provides that such claims may be pursued, if at all, only by public trustees.  *See* 33 U.S.C. § 2702(b)(2)(A) ("Damages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damage, which shall be recoverable *by a United States trustee, a State trustee, an Indian tribe trustee, or a foreign trustee*.") (emphasis added).  Allowing *private* plaintiffs to recover damages flowing from injury to *public* resources would thwart the statutory scheme, especially given that OPA forbids "double recovery ... for natural resource damages."  33 U.S.C. § 2706(d)(3).[1]

---

[1]   As this Court is well aware, the natural resource trustees have vigorously pursued compensation for injury to natural resources in the Gulf, including damages for lost recreational use.  No fewer than *fifteen* agencies associated with *five* States and the Federal Government are exercising their rights, as trustees, to seek such damages on behalf of the public.  Substantial—indeed, unprecedented—effort has been expended to assess as accurately as possible the extent of injuries to natural resources in the Gulf, including studies designed specifically to evaluate the full range of recreational use of such natural resources such as boating and boat-based fishing,

In construing OPA, like any other statute, a court must start with the plain text of the statute itself.  *See, e.g.*, *Ransom v. FIA Card Servs., N.A.*, 131 S. Ct. 716, 723-24 (2011).  OPA sets forth an exclusive list of six categories of recoverable damages, *see* 33 U.S.C. § 2702(b)(2)(A)-(E), thereby precluding the recovery of other categories of damages.  *See, e.g.*, Rec. Doc. 3830, at 26 (noting that, because "OPA does not mention punitive damages ... punitive damages are not available under OPA"); *In re Bouchie*, 324 F.3d 780, 784 (5th Cir. 2003) (*per curiam*) ("Under the *expressio unius* maxim, the decision to include three ... factors but not the others must be construed to prohibit the extra-statutory consideration of those other factors.").  Of the six categories of recoverable damages under OPA, only three may be recovered by private parties:

- damages for "injury to, or economic losses resulting from destruction of, real or personal property" owned or leased by the plaintiff, 33 U.S.C. § 2702(b)(2)(B);

- damages for "loss of subsistence use of natural resources," *id.* § 2702(b)(2)(C); and

- damages for "the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources," *id.* § 2702(b)(2)(E).

As explained below, none of these provisions authorizes the Recreation Claims at issue here.

### A.    The Recreation Claims Do Not Involve "Injury To" Or "Destruction Of" "Real Or Personal Property" Under § 2702(b)(2)(B).

Section 2702(b)(2)(B) provides that claims for "[d]amages for injury to, or economic losses resulting from destruction of, real or personal property, … shall be recoverable by a claimant who owns or leases that property."  33 U.S.C. § 2702(b)(2)(B).  In order to recover

shoreline fishing, beach usage, and other shoreline use.  All told, BP has funded this effort at a cost of over $600 million.

under that provision, thus, a plaintiff must show (1) that an oil spill has caused "injury to" or "destruction of" "real or personal property," and (2) that he owns or leases that property. Neither the "Loss of Enjoyment" claims nor the "Loss of Deposit" claims satisfy these statutory requirements as a matter of law.

### 1.    The "Loss of Enjoyment" Claims

The crux of the "Loss of Enjoyment" claims is that, as a result of the oil spill, certain Recreation Claimants could not engage in recreational activities that they enjoyed (*e.g.*, fishing, diving, boating, or beachgoing). Such claims do not involve "injury to" or "destruction of" "real or personal property" owned or leased by the Recreation Claimants within the meaning of § 2702(b)(2)(B). No jurisdiction of which BP is aware treats an interest in recreation as a ***property*** interest capable of being "own[ed] or leas[ed]," much less "injured" or "destroyed." *See* 33 C.F.R. § 136.215(a)-(a)(1) ("[A] claimant must establish ... [a]n ownership or leasehold interest in the property."). The fact that the Recreation Claimants may have been unable to ***enjoy*** real or personal property (*e.g.*, a boat or vacation home) does not mean that the underlying property itself was injured or destroyed—the psychic enjoyment is distinct from the physical property. That does not mean, of course, that those Recreation Claimants who owned real or personal property injured or destroyed by the oil spill cannot recover; to the contrary, claims for such injury or destruction are squarely within the scope of the proposed settlement. Rather, it means only that Recreation Claimants who allege a loss of enjoyment ***separate and distinct from*** injury to, or destruction of, their real or personal property cannot recover damages for such lost enjoyment under this provision.

This interpretation of OPA is confirmed by interpretive materials published by the U.S. Coast Guard, which is responsible for administering the Oil Spill Liability Trust Fund

10

established by the statute. Those materials specify that purely psychic injuries, like lost enjoyment from lost recreational opportunities, are not compensable under OPA:

> FAQ-11:      Will the NPFC pay me for my physical[,] bodily, ***emotional or mental injuries***?
>
> A:           The NPFC will not pay for personal injury ***losses because they are not damages covered by OPA.***

*See* National Pollution Funds Center, *Deepwater Horizon Claimant FAQs* ("*NPFC FAQs*") ¶ 11, *available at* http://www.uscg.mil/npfc/claims/DWH_faqs.asp (emphasis added); *see also* National Pollution Funds Center, *Claimant's Guide: A Compliance Guide For Submitting Claims Under the Oil Pollution Act of 1990* (updated Nov. 2009) (*NPFC Claimant's Guide*), at 9, http://www.uscg.mil/npfc/docs/PDFs/urg/Ch6/NPFCClaimantGuide.pdf (offering the following example of a claim that properly alleges damage for injury to personal property: "You own a recreational boat or waterfront property ***that was oiled by an OPA incident***").

Indeed, Coast Guard regulations governing the calculation of damages under this provision establish a framework that simply does not fit recreation claims. *See* 33 C.F.R. § 136.217(a) (setting compensation for damaged property as the lesser of (1) "[a]ctual or estimated net cost of repairs necessary to restore the property to substantially the same condition which existed immediately before the damage"; (2) "[t]he difference between value of the property before and after the damage"; or (3) "[t]he replacement value"); *see also id.* § 136.217(b) (setting forth a method for calculating damages that applies by its terms only to situations where a "destruction of real or personal property" involves "commercial property"). By their terms, then, the forms of compensation set forth in the regulation cannot apply to Recreation Claims, which do not identify any property that has been damaged or that could be repaired or replaced.

### 2.     The "Loss of Deposit" Claims

The crux of the "Loss of Deposit" claims is that, as a result of the oil spill, certain Recreation Claimants wasted monetary deposits for vacation rentals or other money spent preparing for recreational activities, such as boat taxes.  Once again, such claims do not involve "injury to" or "destruction of" "real or personal property" owned or leased by the Recreation Claimants within the meaning of § 2702(b)(2)(B).  Even though a monetary payment may qualify as "property" in some legal contexts, it does not qualify as "property" under that OPA provision because is it not capable of being "injured" or "destroyed" by oil pollution.  *See, e.g.*, *Sekco Energy, Inc. v. M/V Margaret Chouest*, 820 F. Supp. 1008, 1015 (E.D. La. 1993) ("The Court reads 'injury' to mean physical injury; 'injury' does not encompass economic loss because where Congress intended recovery for 'loss,' it specifically used that word."); *In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 382 (5th Cir. 2006) (claims that involve only economic losses, not physical damage, not cognizable under § 2702(b)(2)(B)).

In addition, even if monetary payments could qualify as "property" in this context, those payments—once made—ceased to be the property of the plaintiffs, and instead become the property of the payee.  *See, e.g.*, *In re Belfry*, 862 F.2d 661, 662 (8th Cir. 1988) ("Payment of a contract price in exchange for the recipient to undertake an obligation of future performance transfers ownership of the money to the recipient.").  The Recreation Claimants parted with such payments in advance of, and entirely separate from, the oil spill.  Because the statute is written in the present tense (a claimant who "owns or leases th[e] property" can recover damages for its injury or destruction), it does not allow the Recreation Claimants to pursue damages for property (their deposits) that they ***previously*** owned but paid to someone else.  The Recreation Claimants' payment of their deposits, in short, had absolutely nothing to do with the spill or any alleged

wrongdoing by BP.  That point only underscores that any injury that they suffered as a result of the oil spill was not the payment of the deposits, but their subsequent inability to enjoy the recreation that they anticipated in connection with those payments.  *See, e.g., Yaffe v. Scarlett Place Residential Condo., Inc.*, No. 2775, 2012 WL 1998066, at *10 (Md. Ct. Spec. App. June 5, 2012) (loss of use of property not measured by charges that "would have been incurred [by the plaintiff] absent any wrongful conduct" by the defendant).  In this regard, the "Loss of Deposit" claims are no different than the "Loss of Enjoyment" claims.

   B.      **The Recreation Claims Do Not Involve "Loss Of Subsistence Use Of Natural Resources" Under § 2702(b)(2)(C).**

   Nor can the Recreation Claimants shoehorn their claims into § 2702(b)(2)(C), which authorizes the recovery of "[d]amages for loss of ***subsistence use*** of natural resources, … by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources."  33 U.S.C. § 2702(b)(2)(C) (emphasis added).  Although OPA does not define the term "subsistence," its meaning is crystal clear as a matter of plain English: "subsistence" means "the minimum (as of food and shelter) necessary to support life ... a source or means of obtaining the necessities of life."  *Webster's Ninth New Collegiate Dictionary* 1176 (1986); *see also Sekco*, 820 F. Supp. at 1015 ("Plaintiff did not make 'subsistence use' of natural resources.  Such use 'relates to use of a natural resource, such as water, to obtain the minimum necessities for life.'") (quoting *In re Cleveland Tankers, Inc.*, 791 F. Supp. 669, 678 n.7 (E.D. Mich. 1992)); *cf.* 16 U.S.C. § 3113 (defining "subsistence uses" to mean "the customary and traditional uses by rural Alaska residents of wild, renewable resources for direct personal or family consumption as food, shelter, fuel, clothing, tools, or transportation; for the making and selling of handicraft articles out of nonedible byproducts of fish and wildlife

resources taken for personal or family consumption; for barter, or sharing for personal or family consumption; and for customary trade").

By definition, recreation is not subsistence; if it were, then it would cease to be recreation.  None of the Recreation Claimants alleges facts showing that he or she relied on fishing, boating, diving, or beachgoing in order to survive.  Whether a Recreation Claimant consumes fish caught during recreational fishing is immaterial; such fishing is not a "subsistence" activity.  As the Coast Guard's interpretive materials explain:

> FAQ-14:      I occasionally fish or gather shellfish for sport or recreation.  My family eats what I catch.  I was unable to fish or gather shellfish because of the oil spill.  Do I have a claim NPFC might pay?
>
> A:            NPFC would ***not*** pay a claim to an individual that occasionally fishes for sport or recreation.

*NPFC FAQs* ¶ 14 (emphasis added); *see also NPFC Claimant's Guide*, at 14 ("[D]amages for loss of subsistence use of natural resources means damages resulting from the injury, destruction, or loss of natural resources used by the claimant to obtain food, shelter, clothing, medicine, or other ***minimum necessities of life***.") (emphasis added).  Indeed, in order to recover "subsistence" damages under OPA, the Recreation Claimants would need to demonstrate that there was no other means of subsistence available to them.  *See* 33 C.F.R. § 136.223(a) ("The amount of compensation allowable is the reasonable replacement cost of the subsistence loss suffered by the claimant if, during the period of time for which the loss of subsistence is claimed, there was no alternative source or means of subsistence available.").  The Recreation Claimants have not pleaded any facts remotely sufficient to satisfy this demanding standard.

14

C.     **The Recreation Claims Do Not Involve "Loss Of Profits" Or "Earning Capacity" Under § 2702(b)(2)(E).**

Finally, the Recreation Claimants cannot recover "[d]amages equal to the ***loss of profits or impairment of earning capacity*** due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any plaintiff."  33 U.S.C. § 2702(b)(2)(E) (emphasis added).  Even assuming that this provision relaxes the background requirement that claimants own the property or natural resources on which they base their claims, the Recreation Claimants do not seek compensation for either "loss of profits" or "impairment of earning capacity" under any plausible definition of those terms.  Rather, they seek compensation for their inability to enjoy the Gulf in the manner of their choosing.  Because the Recreation Claimants cannot establish that their "***income*** was reduced as a consequence of injury to, destruction of, or loss of the property or natural resources, and the amount of that reduction," 33 C.F.R. § 136.233(b), they cannot state a claim under § 2702(b)(2)(E).

Once again, the Coast Guard supports this reading of the statute by repeatedly denying "Loss of Deposit" claims claiming "lost profits" arising out of the *Deepwater Horizon* incident. *See* NPFC Decision on Claim No. N10036-0342, *available at* http://www.uscg.mil/npfc/ docs/PDFs/Deepwater/Recon/AirlineCancelationFeesRECON_Denial.pdf; *see also* NPFC Decision on Claim No. N10036-0082, http://www.uscg.mil/npfc/docs/PDFs/Deepwater/Vacation CancelationCosts_Denial.pdf.

II.     **The Recreation Claims Also Fail As A Matter Of Law Under General Federal Maritime Law.**

As the Court is aware, BP has argued that OPA entirely displaces claims under general federal maritime law that seek to recover economic losses from an OPA Responsible Party, *see* Rec. Doc. 1440-1, at 13-17, and has sought certification of an interlocutory appeal under 28

U.S.C. § 1292(b) on this issue, *see* Rec. Doc. 4291.  BP respectfully disagrees with the Court's prior holding on this issue as well as its decision not to grant BP's interlocutory appeal motion on this point.

Even assuming, however, that OPA does not entirely displace Recreation Claims brought under general federal maritime law, such claims nevertheless fail as a result of two separate but related federal common-law doctrines.  ***First***, as this Court has already explained, maritime claims are compensable under the venerable *Robins Dry Dock* rule only if they allege physical injury to a proprietary interest.  ***Second***, such claims are not compensable under the even more venerable rule of *The Conqueror* to the extent they seek recovery for lost recreational opportunities.  The Recreation Claims at issue here fail in light of both venerable rules.

## A.    The *Robins Dry Dock* Rule

The Recreation Claims are not cognizable under general federal maritime law, first and foremost, because they fail under the background *Robins Dry Dock* rule, which prohibits recovery unless the plaintiff can establish a physical injury to a proprietary interest.  *See* 275 U.S. at 309; *see also, e.g.*, *Taira Lynn*, 444 F.3d at 377 ("It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit."); *State of La. ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1020 (5th Cir. 1985) (*en banc*) ("We are asked to abandon physical damage to a proprietary interest as a prerequisite to recovery for economic loss in cases of unintentional maritime tort.  We decline the invitation."); B1 Order (Rec. Doc. 3830) at 19 (explaining that *Robins Dry Dock* rule bars "claims for purely economic losses unaccompanied by physical damage to a proprietary interest").  The *Robins Dry Dock* rule also extends to non-economic, emotional injuries.  *See Gough v. Natural Gas Pipeline Co. of Am.*, 996 F.2d 763, 765 (5th Cir.

1993) ("Beyond question, purely emotional injuries will be compensated when maritime plaintiffs satisfy the physical injury or impact rule.  Either a physical injury or physical impact has traditionally been required.") (internal quotation and citation omitted).

Of particular relevance here, the *Robins Dry Dock* rule bars claims for recreational fishing, as recreational fishers have not suffered physical injury to a proprietary interest.  *See Testbank*, 752 F.2d at 1036-37 ("[T]he district court dismissed the claims of ... ***recreational fishermen***.  … Now a majority of our Court en banc has affirmed that determination.") (emphasis added; citations omitted); *In re Clearsky Shipping Corp.*, No. 96-4099, 1998 WL 42884, at *3 (E.D. La. Jan. 30, 1998) (describing *Testbank*); *Shaughnessy v. PPG Indus,. Inc.*, 795 F. Supp. 193, 195 (W.D La. 1992) (same); *see also, e.g.*, *Snavely v. Lang*, 592 F.2d 296, 299-300 (6th Cir. 1979) ("[The plaintiff's] main concern was that because of the loss of use of the boat, his family did not develop an appreciation of boating.  There can be no recovery for a loss of this sort.  While the Court is sympathetic to any loss of time spent together by a family, an award of damage for such a loss opens the courts to imagination and speculation in evaluation of damages.").

Consistent with *Robins Dry Dock*, the Court has already ordered the dismissal of general federal maritime law claims that do not allege physical injury to a proprietary interest.  *See* B1 Order (Rec. Doc. 3830) at 24-25 ("The B1 Master Complaint alleges economic loss claims on behalf of various categories of claimants, many of whom have not alleged physical injury to their property or other proprietary interest. ...   Accordingly, claims under general maritime law asserted by such claimants are not plausible and must be dismissed.").  Applying that holding here, this Court should similarly dismiss the Recreation Claims.

17

### B.     *The Conqueror* **Rule**

Separate and apart from the *Robins Dry Dock* rule, another maritime-law doctrine bars recovery for Recreation Claims.   The Supreme Court's 1897 decision in *The Conqueror* establishes that a loss of the recreational use of a vessel cannot give rise to damages under general federal maritime law.  *See* 166 U.S. at 133.  As the Court explained, "the loss of profits or of the use of a vessel pending repairs or other detention, arising from a collision, or other maritime tort, and commonly spoken of as demurrage, is a proper element of damage."  *Id.* at 125.  Critically, however, demurrage "will only be allowed **when profits have actually been, or may be reasonably supposed to have been, lost**, and the amount of such profits is proven with reasonable certainty."  *Id.* (emphasis added).  Put differently,

> It is not the mere fact that a vessel is detained that entitles the owner to demurrage.  There must be a pecuniary loss, or at least, a reasonable certainty of pecuniary loss, **and not a mere inconvenience arising from an inability to use the vessel for the purposes of pleasure**, or, as was said by Doctor Lushington in *The Clarence*, 3 W. Rob. [283,] 286 [1850]:  "There must be actual loss and reasonable proof of the amount."  In other words, there must be a loss of profits in its commercial sense.  In all the cases in which we have allowed demurrage the vessel has been engaged, or was capable of being engaged, in a profitable commerce, and the amount allowed was determined either by the charter value of such vessel, or by her actual earnings at about the time of the collision.

*Id.* at 133 (emphasis added).

In the 115 years that have elapsed since *The Conqueror* was decided, courts have repeatedly relied upon it for the proposition that "[u]nder federal maritime law loss of a private pleasure boat is not a compensable item of damage."  *Kelly v. Porter, Inc.*, 687 F. Supp. 2d 632, 637 (E.D. La. 2010) (internal quotation and alterations omitted); *see also Central State Transit & Leasing Corp. v. Jones Boat Yard, Inc.*, 206 F.3d 1373, 1376 (11th Cir. 2000); *Parillo v. Comm. Union Ins. Co.*, 85 F.3d 1245, 1250 (7th Cir. 1996); *Dow Chem. Co. v. M/V Roberta Taylor*, 815 F.2d 1037, 1042 (5th Cir. 1987); *Snavely*, 592 F.2d at 298; *Oppen v. Aetna Ins. Co.*, 485 F.2d

252, 257 (9th Cir. 1973); *Thomson v. United States*, 266 F.2d 852, 856 (4th Cir. 1959); *Zepsa*

*Indus., Inc. v. Kimble*, No. 08-4, 2008 WL 4891115, at *4 (W.D.N.C. Nov. 11, 2008); *Gladsky v.*

*Sessa*, No. 06-3134, 2007 WL 2769494, at *6 (E.D.N.Y Sept. 21, 2007); *Frichelle Ltd. v. Master*

*Marine, Inc.*, 99 F. Supp. 2d 1337, 1347 (S.D. Ala. 2000); *In re Palmer Johnson Savannah, Inc.*,

1 F. Supp. 2d 1386, 1389-90 (S.D. Ga. 1997); 2 Thomas J. Schoenbaum, *Admiralty & Maritime*

*Law* § 14-6 n.32 (rev. ed. 2011) ("There is no compensation for loss of use of a pleasure boat.").

Accordingly, because the Recreation Claims allege either inability to use a boat for

pleasure or analogous interference with non-commercial recreational expectations, these claims

fail as a matter of law to state a claim under general federal maritime law under *The Conqueror*.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Recreation Claims for failure to

state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

July 11, 2012                                    Respectfully submitted,

Richard C. Godfrey, P.C.                         */s/ Don K. Haycraft*
J. Andrew Langan, P.C.                           Don K. Haycraft (Bar #14361)
Wendy L. Bloom                                   R. Keith Jarrett (Bar #16984)
Kirkland & Ellis LLP                             Liskow & Lewis
300 North LaSalle Street                         701 Poydras Street, Suite 5000
Chicago, IL 60654                                New Orleans, Louisiana 70139-5099
Telephone:  312-862-2000                         Telephone:  504-581-7979
Facsimile:  312-862-2200                         Facsimile:  504-556-4108

Christopher Landau, P.C.                          C. "Mike" Brock
Jeffrey Bossert Clark                             Covington & Burling LLP
Aditya Bamzai                                     1201 Pennsylvania Avenue, NW
Kirkland & Ellis LLP                             Washington, DC 20004-2401
655 Fifteenth Street, N.W.                       Telephone:  202-662-5985
Washington, D.C. 20005                           Facsimile:  202-662-6291
Telephone:  202-879-5000
Facsimile:  202-879-5200

*Attorneys for BP Exploration & Production Inc., BP America Production Company, and BP p.l.c.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 11th day of July, 2012.


*/s/ Don K. Haycraft*
Don K. Haycraft