# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, | * * * | MDL No. 2179 |
| | * | Section: J |
| This Pleading applies to: | * * | Judge Barbier |
| | * | |
| *MDL 2179 B1 Amended Master Complaint And All Cases In Pleading Bundle B1* | * * * | Magistrate Judge Shushan |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## BP'S MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS STIGMA CLAIMS

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: 312-862-2000
Facsimile: 312-862-2200

Christopher Landau, P.C.
Jeffrey Bossert Clark
Aditya Bamzai
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
Telephone: 202-879-5000
Facsimile: 202-879-5200

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, LA 70139-5099
Telephone: 504-581-7979
Facsimile: 504-556-4108

C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone: 202-662-5985
Facsimile: 202-662-6291

*Attorneys for BP Exploration & Production Inc., BP America Production Company, and BP p.l.c.*

July 11, 2012

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................1

BACKGROUND ............................................................................................................................3

    A.     Stigma Claims Under The Amended Master B1 Complaint ...................................3

    B.     Stigma Claims Asserted By Short-Form Joinders ..................................................4

    C.     The Court's Rulings ................................................................................................5

LEGAL STANDARD....................................................................................................................6

ARGUMENT ................................................................................................................................6

I.     Stigma Claims Do Not Fall Within Any Of The Categories Of Damages
Recoverable By Private Plaintiffs Under OPA.................................................................6

    A.     The Stigma Claims Do Not Involve "Injury To" Or "Destruction
Of" "Real Or Personal Property" Under § 2702(b)(2)(B). ....................................7

    B.     The Stigma Claims Do Not Involve Loss Of Profits Or Earning
Capacity Under § 2702(b)(2)(E)..........................................................................10

II.    The Stigma Claims Also Fail As A Matter Of Law Under General Federal
Maritime Law..................................................................................................................12

CONCLUSION............................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Star Enter.*,
   51 F.3d 417 (4th Cir. 1995) ............................................................................................. 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................... 6

*Berry v. Armstrong Rubber Co.*,
   989 F.2d 822 (5th Cir. 1993) ......................................................................................... 8

*Cook v. Rockwell Int'l Corp.*,
   618 F.3d 1127 (10th Cir. 2010) ..................................................................................... 8

*Holmes v. SIPC*,
   503 U.S. 258 (1992) ..................................................................................................... 14

*In re Bouchie*,
   324 F.3d 780 (5th Cir. 2003) (*per curiam*) .................................................................. 7

*In re Exxon Valdez*,
   270 F.3d 1215 (9th Cir. 2001) ............................................................................... 13, 14

*In re Oil Spill by the Oil Rig "Deepwater Horizon" In the Gulf of Mexico, On April 20, 2010*,
   731 F. Supp. 2d 1352 (J.P.M.L. 2010) ......................................................................... 3

*In re Taira Lynn Marine Ltd. No. 5, LLC*,
   444 F.3d 371 (5th Cir. 2006) ............................................................................ 8, 11, 13

*Plotkin v. IP Axess Inc.*,
   407 F.3d 690 (5th Cir. 2005) ......................................................................................... 6

*Reliance Marine Ins. Co. v. New York & C. Mail S.S. Co.*,
   70 F. 262 (S.D.N.Y. 1895) .......................................................................................... 14

*Robins Dry Dock & Repair Co. v. Flint*,
   275 U.S. 303 (1927) ........................................................................................ 2, 5, 13, 14

*Sekco Energy, Inc. v. M/V Margaret Chouest*,
   820 F. Supp. 1008 (E.D. La. 1993) .............................................................................. 8

*Sekco Energy, Inc. v. M/V Margaret Chouest*,
   Civ. A. No. 92-0420, 1993 WL 322942 (E.D. La. Aug. 13, 1993) ............................ 11

*State of La. ex rel. Guste v. M/V Testbank*,
  752 F.2d 1019 (5th Cir. 1985) (*en banc*)...................................................................... 13

*Test Masters Educ. Servs., Inc. v. Singh*,
  428 F.3d 559 (5th Cir. 2005)................................................................................................. 6

**Statutes, Regulations, and Rules**

28 U.S.C. § 1292(b) ................................................................................................................... 13

33 C.F.R. § 136.217(b) ............................................................................................................... 9

33 C.F.R. § 136.233 ................................................................................................................... 11

33 U.S.C. § 2701 *et seq.*............................................................................................................ 1

33 U.S.C. § 2702(b)(2)(B) .......................................................................................... 2, 7, 8, 9, 10

33 U.S.C. § 2702(b)(2)(E) .......................................................................................... 2, 7, 10, 11, 12

Fed. R. Civ. P. 12(b)(6)............................................................................................................ 2, 6, 14

**Other Authorities**

Goldberg, John C.P.,
  *Liability for Economic Loss in Connection with the Deepwater Horizon Spill* (Nov. 22, 2010),
  available at http://nrs.harvard.edu/urn-3:HUL.InstRepos:4595438 ......................................... 12

National Pollution Funds Center,
  *Claimant's Guide:*
  *A Compliance Guide For Submitting Claims Under the Oil Pollution Act of 1990*
  (updated Nov. 2009),
  *available at* http://www.uscg.mil/npfc/docs/PDFs/urg/Ch6/NPFCClaimantGuide.pdf . 9, 11, 12

NPFC Determination on Claim N10036-0009 (Mar. 15, 2011),
  http://www.uscg.mil/npfc/docs/PDFs/Deepwater/Recon/
  DiminutionofPropteryValuesRECON_%20Denial.pdf .......................................................... 12

**INTRODUCTION AND SUMMARY OF ARGUMENT**

In the weeks that followed the sinking of the *Deepwater Horizon*, BP Exploration & Production Inc., BP America Production Company, and BP p.l.c. (collectively, "BP") deployed thousands of people and spent millions of dollars in an effort both to prevent any oil released by the rig and its appurtenances from reaching the shore and to remove any released oil that did in fact reach the shore as promptly and safely as possible.  In May 2012, this Court preliminarily approved a class-action settlement that will fully compensate those landowners whose property was physically touched, and thereby injured, by any oil released in the spill.  Rec. Doc. 6418.

While BP has been resolute in its efforts (1) to prevent any released oil from reaching Gulf shores; (2) to remove any released oil that did reach Gulf shores; and (3) to compensate owners of oiled land, BP nevertheless faces claims from property owners whose land was ***not*** touched by oil or otherwise affected in any concrete way by the *Deepwater Horizon* spill.  As described in this Court's recent order, "Stigma Claims" are "claims by or on behalf of owners, lessors, and lessees of real property that they have suffered damages resulting from the ***taint*** of their property caused by the oil spill, ***although no oil or other contaminant physically touched the property***."  Rec. Doc. 6657 at 1 (emphasis added).  In other words, these "Stigma Claimants" assert that because the *Deepwater Horizon* spill occurred in the general vicinity where their property is located, their property values are currently lower than they otherwise would have been but for the spill.

This Court previously held that federal law preempts state law in this area, and makes it "inapplicable to this case."  Rec. Doc. 3830, at 18.  Accordingly, the Stigma Claims must arise, if at all, under federal law.  Although BP respectfully submits that the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.*, provides the exclusive source of federal law potentially

applicable to economic loss claims against an OPA Responsible Party, this Court has rejected that submission, and held that OPA does not entirely displace such claims based on general federal maritime law.  For purposes of this motion, that point is not dispositive, because the Stigma Claims against BP fail as a matter of law under *both* OPA *and* general federal maritime law.

With respect to OPA, the Stigma Claims fall outside the scope of any of the particular categories of damages that may be recovered by private parties.  In particular, such Claims involve neither "injury to, or economic losses resulting from destruction of, real or personal property" owned or leased by the plaintiff, 33 U.S.C. § 2702(b)(2)(B), nor "the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources," *id.* § 2702(b)(2)(E).  Indeed, a diminution in property value is generally viewed as a measure of *damages* for some legally cognizable injury, not a legally cognizable injury in its own right.

With respect to general federal maritime law, the Court has already held that, with certain limited exceptions not applicable here, the venerable rule of *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927), bars claims for losses absent physical injury to a proprietary interest. *See* Rec. Doc. 3830, at 19.  The Stigma Claims, by definition, seek damages where oil did *not* touch the property, which involve *no* physical injury to a proprietary interest and thus fail as a matter of law under *Robins Dry Dock*.

Accordingly, the Stigma Claims are not cognizable under either OPA or general federal maritime law, and must be dismissed for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).

# BACKGROUND

## A.    Stigma Claims Under The Amended Master B1 Complaint

This case arises out of the April 20, 2010 blowout of the Macondo oil well, followed by an explosion, fire, and eventual loss of the *Deepwater Horizon* mobile offshore drilling unit, which resulted in an oil spill off the Gulf Coast.   After the Judicial Panel on Multidistrict Litigation established this MDL proceeding, *see In re Oil Spill by the Oil Rig "Deepwater Horizon" In the Gulf of Mexico, On April 20, 2010*, 731 F. Supp. 2d 1352 (J.P.M.L. 2010), this Court entered an order creating various pleading bundles.  *See* Pretrial Order No. 11 (Rec. Doc. 569), at 2-5.  Among those bundles is the so-called B1 Bundle, which applies to claims for non-governmental economic loss and property damage.  *See id.* at 3.  The Plaintiffs' Steering Committee filed a Master B1 Complaint on December 15, 2010 (Rec. Doc. 879), and an Amended Master B1 Complaint on February 9, 2011 (Rec. Doc. 1128).

As amended, the Master B1 Complaint purports to bring claims on behalf of, among others, a group of "[o]wners, lessors, and lessees of real property alleged to be damaged, harmed, or impacted, physically or economically," a group it calls the "Real Property Claimants," *id.* ¶ 28(h), as well as a group of "[h]otel owners and operators, vacation rental owners and agents, and all those who earn their living from the tourism industry," a group it calls the "Real Property/Tourism Claimants."  *Id.* ¶ 28(i).  In the section asserting only "Claims Under General Maritime Law," the Amended Master B1 Complaint alleges:

> 621.  As a direct and proximate result of the Defendants' acts and/or omissions, the Real Property Plaintiffs have suffered, *inter alia*, damage to their property, diminution of value and/or loss of use of their property, ***stigma damages resulting from the taint of their property caused by the Spill***, some have been forced to evacuate their homes, and they have been otherwise injured.
>
> 622.  As a direct and proximate result of the Defendants' acts and/or omissions, the Real Property/Tourism Plaintiffs have suffered, *inter alia*, damage to their

3

property, diminution in value and/or loss of use of their property, ***stigma damages resulting from the taint of their property caused by the Spill***, and loss of income and inconvenience resulting from the decrease in tourism due to the pollution of the Gulf resulting from the Spill ….

*Id.* ¶¶ 621-22 (emphasis added); *see also id.* ¶ 698 (asserting stigma claims under state law).

### B.    Stigma Claims Asserted By Short-Form Joinders

Consistent with the short-form joinder system created by this Court, thousands of persons have filed short-form joinders that appear to include Stigma Claims—an estimate is not available because such Claims are not broken out separately on the short-form joinders.   While it is impractical to list every short-form joinder that includes Stigma Claims, the following table represents a sampling of short-form joinders that present such Claims, quoting the Claimants' allegations verbatim:

| Claimant | Allegation |
|---|---|
| Linda Hall | Mrs. Linda Hall ("Plaintiff") owns a condominium unit at the Phoenix VIII located at 27008 Perdido Beach Blvd., in Orange Beach, Alabama (residential).  Plaintiff has experienced a diminution on the value of her property because of the oil spill.  No known physical damage at this time. |
| Jeremiah Henderson | Jeremiah Henderson (Plaintiff) owns a lot at Lake Draper in Walton on the value of his property because of the oil spill.  No know physical damage at this time. |
| Vera Lee | Ms. Lee owns a timeshare in Gulf Shores, Alabama.  As a direct result of the Spill, the value of this timeshare at 632 Gulf Shores Parkway, Gulf Shores, Alabama has significantly decreased.  Currently, the highest offer for an "Escape! To Orange Beach" timeshare resale is only $7,000.   Prior to the Spill, these timeshares were offered at $13,970. |
| Bruce Bourne | I Am The Owner/Lessee of Lot # 2 Santa Rosa Villas Estates on Calle Marbella, Santa Rosa Island.  This is a Residential Beachfront Lot Held for Investment and Resale. I Am Concerned That The Oil Spill Has Resulted In A Decline In The Value of The Property and that A Sale will Result In a Loss, Even Though There was no Physical Damage to The Property. |
| Samuel Agee | decrease in property value of approx $30,000 |
| Jason Corban | As a result of the spill, claimant's property has lost value. |
| Philip Reid | My claim is for loss of value of my residence at 27375 E. Beach Blvd. in Orange Beach, Al.  No damage occurred to the property as a result |

| | |
|---|---|
| | of the spill.  I had my property appraised in December 2005 @ $975,000. Another appraisal in December 2010 resulted in $470,000. |
| Barbara Dorchak | Mrs. Dorchak owns a condominium that live in at the gulf coast.  As a direct result of the Spill, tar balls, chemicals and foul odors permeated the beaches causing property values to deteriorate.  Consequently, the value of her property was affected by the spill.  She seeks to recover those damages. |

## C.    The Court's Rulings

On August 26, 2011, the Court resolved various motions filed by the defendants to dismiss the Amended Master B1 Complaint.  *See* Rec. Doc. 3830.  Most significantly for present purposes, the Court ruled that state law in this area is entirely preempted by federal law.  *See id.* at 18.  Although the Court held that OPA does not entirely displace general federal maritime law against BP, it further held that, to the extent that maritime-law remedies supplement OPA remedies, traditional common-law limitations on maritime-law remedies (such as the *Robins Dry Dock* rule) remain in effect and limit recovery.  *See id.* at 24-26.

On June 12, 2012, the Court authorized the filing of additional motions focusing on certain remaining claims outside the scope of the proposed settlement agreement.  *See* Rec. Doc. 6657.  Specifically, the Court authorized a motion to dismiss "Stigma Claims," which the Court described as "claims by or on behalf of owners, lessors, and lessees of real property that they have suffered damages resulting from the taint of their property caused by the oil spill, although no oil or other contaminant physically touched the property."  *Id.* at 1.  The class of Stigma Claims that the Court described is narrower than the class of claims purportedly brought by the "Real Property Claimants" and "Real Property/Tourism Claimants" identified in the Amended Master B1 Complaint.  Under that Complaint, those Claimants included ***both*** persons who alleged that their property actually was touched by oil ***and*** persons who alleged a loss of income due to a decrease in tourism or other business caused by the spill.  *See* Rec. Doc. 1128 ¶¶ 28(h)-

5

(i), 621-22.  Pursuant to the Court's order, this motion to dismiss focuses only on "pure" Stigma

Claims, *i.e.* claims alleging a reduction in property value absent any physical touching by oil.

## LEGAL STANDARD

In resolving a motion to dismiss a complaint for failure to state a claim on which relief

can be granted under Rule 12(b)(6), a court must accept as true a complaint's well-pleaded

factual allegations.  *See, e.g.*, *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th

Cir. 2005).  The term "well-pleaded" is critical: a court need not, and may not, accept any factual

allegation, but only those that state "a plausible entitlement to relief."  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 559 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face.") (internal quotation omitted).  Thus, a

complaint "that offers labels and conclusions or a formulaic recitation of the elements of a cause

action will not do," *id.* (internal quotation omitted): a court need not accept "conclusory

allegations, unwarranted factual inferences, or legal conclusions," *Plotkin v. IP Axess Inc.*, 407

F.3d 690, 696 (5th Cir. 2005).

## ARGUMENT

The Stigma Claims fail as a matter of law under both OPA and general federal maritime

law.  Each of these sources of law is discussed in turn below.

## I.     Stigma Claims Do Not Fall Within Any Of The Categories Of Damages Recoverable By Private Plaintiffs Under OPA.

OPA sets forth an exclusive list of six categories of damages that may be recovered under

the statute, *see* 33 U.S.C. § 2702(b)(2)(A)-(F), thereby indicating (as this Court has already

determined) that no other forms of damages may be recovered under the statute, *see* Rec. Doc.

3830, at 26 (noting that, because "OPA does not mention punitive damages ... punitive damages

are not available under OPA"); *see also In re Bouchie*, 324 F.3d 780, 784 (5th Cir. 2003) (*per curiam*) ("Under the *expressio unius* maxim, the decision to include three ... factors but not the others must be construed to prohibit the extra-statutory consideration of those other factors."). Of those six categories of damages, only three may be recovered by private plaintiffs—and only two of those three could even conceivably apply to Stigma Claims:

- damages for "injury to, or economic losses resulting from destruction of, real or personal property," owned or leased by the plaintiff, 33 U.S.C. § 2702(b)(2)(B); and

- damages "equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources," *id*. § 2702(b)(2)(E).

As explained below, neither of these provisions authorizes the Stigma Claims at issue here.

### A.     The Stigma Claims Do Not Involve "Injury To" Or "Destruction Of" "Real Or Personal Property" Under § 2702(b)(2)(B).

Section 2702(b)(2)(B) provides that claims for "[d]amages for injury to, or economic losses resulting from destruction of, real or personal property, … shall be recoverable by a claimant who owns or leases that property."  33 U.S.C. § 2702(b)(2)(B).  In order to recover under that provision, thus, a plaintiff must show (1) that an oil spill has caused "injury to" or "destruction of" "real or personal property," and (2) that he "owns or leases that property."  *Id.* The Stigma Claims do not satisfy these statutory requirements as a matter of law.

The crux of the Stigma Claims is that, as a result of the oil spill, properties owned by certain plaintiffs lost value even though they were never touched by oil, merely by virtue of association with the spill.  The short answer to that claim is that, as a matter of law, an alleged decline in property value, unaccompanied by any physical injury to, or destruction of, real or personal property, is not compensable under § 2702(b)(2)(B).  *See, e.g.*, *Sekco Energy, Inc. v.*

*M/V Margaret Chouest*, 820 F. Supp. 1008, 1015 (E.D. La. 1993) ("The Court reads 'injury' to mean physical injury; 'injury' does not encompass economic loss because where Congress intended recovery for 'loss,' it specifically used that word."); *see also In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 382 (5th Cir. 2006) (claims that involve only economic losses, not physical damage, not cognizable under § 2702(b)(2)(B)).  A diminution in property value may establish the ***damages*** recoverable as a result of a physical injury but does not, standing alone, state a legally cognizable ***injury*** in the first place.  As the Tenth Circuit recently explained in an analogous statutory context:

> Diminution of value … cannot establish the fact of injury or damage.  Otherwise, reduced value stemming from factors unrelated to any actual property injury, such as unfounded public fear regarding the effects of minor radiation exposure, could establish 'damage to property' and 'loss of use of property.'  Public perception and the stigma it may attach to the property in question can drastically affect property values, regardless of the presence or absence of any actual injury or health risk.

*Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1141 n.12 (10th Cir. 2010); *see also Adams v. Star Enter.*, 51 F.3d 417, 425 (4th Cir. 1995) (landowners could not recover stigma damages under state law without showing physical impact on owner's property or physical injury); *Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 829 (5th Cir. 1993) (landowners could not recover stigma action under state law without showing physical injury to the land).

Moreover, the plain language of § 2702(b)(2)(B) allows a private plaintiff to recover "economic losses" ***only*** insofar as they result from the "destruction" of real or personal property.  The statute thereby underscores that a private plaintiff may not generally recover any and all "economic losses" resulting from an oil spill.  In and of itself, an "economic loss"—no matter how severe—cannot qualify as the antecedent "destruction" that the statute requires.

This interpretation is only confirmed by regulations issued by the U.S. Coast Guard, which is responsible for administering the Oil Spill Liability Trust Fund established under the statute.  Under the regulations,

> Compensation for economic loss resulting from the ***destruction of real or personal property*** may be allowed in ***an amount equal to the reasonable costs actually incurred for use of substitute commercial property or, if substitute commercial property was not reasonably available, in an amount equal to the net economic loss which resulted from not having use of the property.***  When substitute commercial property was reasonably available, but not used, allowable compensation for loss of use is limited to the cost of the substitute commercial property, or the property lost, whichever is less.  ***Compensation for loss of use of noncommercial property is not allowable***.

33 C.F.R. § 136.217(b) (emphasis added).  This framework cannot be applied to Stigma Claims, where no commercial property has been destroyed and no substitute commercial property can be identified.  Indeed, because "injury" in this context requires proof of physical damage, the Coast Guard encourages claimants to submit "[m]aps or legal documents showing the location of the property ***within the spill area***," as well as "[c]opies of bills paid for ***repair of damage*** or two estimates showing activities and costs to ***repair the damage***."  National Pollution Funds Center, *Claimant's Guide: A Compliance Guide For Submitting Claims Under the Oil Pollution Act of 1990* (updated Nov. 2009) ("*NPFC Claimant's Guide*"), at 9, http://www.uscg.mil/npfc/ docs/PDFs/urg/Ch6/NPFCClaimantGuide.pdf (emphasis added); *see also id.* (offering the following example of a claim that properly alleges damage for injury to personal property: "You own a recreational boat or waterfront property ***that was oiled by an OPA incident***").

Because the plain language of § 2702(b)(2)(B) does not support them, the Stigma Claimants resort to ***misquoting*** that provision to try to shoehorn their Claims within its scope. According to the Amended Master B1 Complaint:

> As a result of the Spill, Plaintiffs are entitled to damages pursuant to Section 2702(b)(2)(B), which provides for recovery of damages to real or personal

> property, including "[D]amages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property, ***including the diminution in the value of their property***."

Am. Master B1 Compl. (Rec. Doc. 1128) ¶ 686 (emphasis added).  Although the highlighted language purports to be a direct quote of the statute, it appears nowhere in the relevant provision (or, for that matter, in any other provision of OPA or any other provision of the United States Code or the Code of Federal Regulations).  The Stigma Claimants apparently realize that, as actually written, § 2702(b)(2)(B) does not authorize their claims.

> **B.      The Stigma Claims Do Not Involve Loss Of Profits Or Earning Capacity Under § 2702(b)(2)(E).**

Nor can the Stigma Claimants recover "[d]amages equal to the ***loss of profits or impairment of earning capacity*** due to the injury, destruction, or loss of real property, personal property, or natural resources."   33 U.S.C. § 2702(b)(2)(E) (emphasis added).  The Stigma Claimants do not seek compensation for loss of "profits" or "earning capacity"; rather, they seek compensation for a reduction in the value of their property.

Once again, the relevant Coast Guard regulations only confirm the point.  Consistent with the fundamentally commercial nature of profits and earnings, the NPFC requires proof of the following elements, in addition to property damage, for recovery to be available:

> (b) That the claimant's income was reduced as a consequence of injury to, destruction of, or loss of the property or natural resources, and the amount of that reduction.

> (c) The amount of the claimant's profits or earnings in comparable periods and during the period when the claimed loss or impairment was suffered, as established by income tax returns, financial statements, and similar documents. In addition, comparative figures for profits or earnings for the same or similar activities outside of the area affected by the incident also must be established.

> (d) Whether alternative employment or business was available and undertaken and, if so, the amount of income received. All income that a claimant received as

a result of the incident must be clearly indicated and any saved overhead and other normal expenses not incurred as a result of the incident must be established.

33 C.F.R. § 136.233(b)-(d).  As proof of these elements, the NPFC suggests submitting a "[s]tatement on how the spill caused a loss in income," an "[a]ffidavit from your employer on the impact on your work or income due to the spill," "[c]opies of pay stubs, receipts, etc., from before, during, and after the spill," and "[s]igned copies of income tax returns and schedules for at least two years prior to [the] spill." *NPFC Claimant's Guide*, at 10.  The Stigma Claimants can satisfy none of these elements.  They have not pleaded (and, by definition, cannot plead) that their "profits" or "income" have been reduced by the loss of property value.

And even if the Stigma Claimants could establish lost profits or earning capacity, such a loss is not "***due to*** the injury, destruction, or loss of real property, personal property, or natural resources."   33 U.S.C. § 2702(b)(2)(E) (emphasis added).  Rather, any such loss is due to consumer choices regarding real estate that are separate and distinct from "the injury, destruction, or loss of real property, personal property, or natural resources." *Id.*  If Congress had wanted to allow private parties to recover profits lost "due to" consumer reaction to an oil spill, it could and would have authorized such damages among the specific categories of damages enumerated in the statute.  By its terms, that enumeration of three specific categories of injury underscores that Congress did not intend for private parties to recover damages for ***any and all*** injuries, no matter how attenuated or speculative, that can be traced in any way to an oil spill.  *See*, *e.g.*, *Taira Lynn*, 444 F.3d at 383 ("Claimants have not raised an issue of fact as to whether their economic losses are ***due to*** damage to property resulting from the discharge of the gas.  Therefore, Claimants cannot recover under OPA[.]") (emphasis added); *see also Sekco Energy, Inc. v. M/V Margaret Chouest*, Civ. A. No. 92-0420, 1993 WL 322942, at *4-6 (E.D. La. Aug. 13, 1993) (holding that plaintiff could not recover under § 2702(b)(2)(E) where lost oil

11

production revenues due to government shutdown of oil platform, not antecedent oil spill); John C.P. Goldberg, *Liability for Economic Loss in Connection with the Deepwater Horizon Spill* (Nov. 22, 2010), at 3, available at http://nrs.harvard.edu/urn-3:HUL.InstRepos:4595438 ("This statutory language [of OPA Section 2702(b)(2)(E)] is best understood to allow recovery only by those economic loss claimants who can prove that they have suffered economic loss because a spill has damaged, destroyed or otherwise rendered physically unavailable to them property or resources that they have a right to put to commercial use.").

Not surprisingly, thus, the Coast Guard has refused to provide OPA compensation to persons claiming damages from stigma injuries to real property as purportedly shown by property value appraisals. *See, e.g.*, NPFC Determination on Claim N10036-0009, at 4 (Mar. 15, 2011), http://www.uscg.mil/npfc/docs/PDFs/Deepwater/Recon/DiminutionofPropteryValues RECON_%20Denial.pdf ("Although claimant asserts that the appraisals accurately measure the taxable value of the (3) subject properties due to the oil spill, this is not the 'injury, destruction or loss of real property, personal property or natural resource' contemplated by the statute and regulations. In this case his property was not injured, destroyed or lost due to the oil spill nor was his property injured, destroyed or lost due to damage to the natural resource."). Consistent with this interpretation of the statute, the *NPFC Claimant's Guide*, as noted above, provides that the Coast Guard will accept as proof of loss only documents that can establish a loss of ***income***, not a mere reduction in appraised value, which can be a transitory phenomenon.

## II.    The Stigma Claims Also Fail As A Matter Of Law Under General Federal Maritime Law.

As the Court is aware, BP has argued that OPA entirely displaces claims under general federal maritime law that seek to recover economic losses from an OPA Responsible Party, *see* Rec. Doc. 1440-1, at 13-17, and has sought certification of an interlocutory appeal under 28

U.S.C. § 1292(b) on this issue, *see* Rec. Doc. 4291.  BP respectfully disagrees with the Court's prior holding on this issue as well as its decision not to grant BP's interlocutory appeal motion on this point.

Even assuming, however, that OPA does not displace Stigma Claims brought under general federal maritime law, such claims nevertheless fail as a matter of law.  As this Court has recognized, general federal maritime law does not allow claims for economic losses in the absence of physical injury to a proprietary interest.  *See* B1 Order (Rec. Doc. 3830) at 19 (citing *Robins Dry Dock* ); *see also Taira Lynn*, 444 F.3d at 377 ("It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit."); *State of La. ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1020 (5th Cir. 1985) (*en banc*) ("We are asked to abandon physical damage to a proprietary interest as a prerequisite to recovery for economic loss in cases of unintentional maritime tort.  We decline the invitation.").  Indeed, this Court has already applied *Robins Dry Dock* to dismiss general federal maritime law claims that do not allege physical injury to a proprietary interest.  *See* B1 Order (Rec. Doc. 3830) at 24-25 ("The B1 Master Complaint alleges economic loss claims on behalf of various categories of claimants, many of whom have not alleged physical injury to their property or other proprietary interest. … [C]laims under general maritime law asserted by such claimants are not plausible and must be dismissed.").

By definition, of course, Stigma Claims allege no physical interference with a proprietary interest and therefore fail under general federal maritime law. *See, e.g., In re Exxon Valdez*, 270 F.3d 1215, 1253 (9th Cir. 2001) (holding that "[s]ummary judgment was appropriately granted against ... persons claiming 'stigma' damages" under the physical injury rule incorporated in *Robins Dry Dock*); *Reliance Marine Ins. Co. v. New York & C. Mail S.S. Co.*, 70 F. 262, 266

(S.D.N.Y. 1895) (rejecting a claim for "damage by 'stigma' i.e., damage to the reputation of bales not physically injured, because other bales of the same consignment were injured"). Accordingly, to the extent that general maritime law applies, it also provides no basis for the Stigma Claims.

Finally, even beyond the rule of *Robins Dry Dock*, courts have held that stigma claims are too causally remote to support recovery under general maritime law.  For while it may be true that "[i]n a philosophical sense, the consequences of an act go forward to eternity," "any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would set society on edge and fill the courts with endless litigation."  *Holmes v. SIPC*, 503 U.S. 258, 266 n.10 (1992) (internal quotations omitted).  Thus, the Ninth Circuit has had no trouble concluding that "[s]ummary judgment was appropriately granted against ... persons claiming 'stigma' damages," as "[e]ven without *Robins Dry Dock*, these groups' damages were too remote."  *Exxon Valdez*, 270 F.3d at 1253.

## CONCLUSION

For these reasons, the Court should dismiss the Stigma Claims for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

July 11, 2012                                  Respectfully submitted,


Richard C. Godfrey, P.C.                       */s/ Don K. Haycraft*
J. Andrew Langan, P.C.                         Don K. Haycraft (Bar #14361)
Wendy L. Bloom                                 R. Keith Jarrett (Bar #16984)
Kirkland & Ellis LLP                           Liskow & Lewis
300 North LaSalle Street                       701 Poydras Street, Suite 5000
Chicago, IL 60654                              New Orleans, Louisiana 70139-5099
Telephone:  312-862-2000                       Telephone:  504-581-7979
Facsimile:  312-862-2200                       Facsimile:  504-556-4108

Christopher Landau, P.C.
Jeffrey Bossert Clark                          C. "Mike" Brock
Aditya Bamzai                                  Covington & Burling LLP
Kirkland & Ellis LLP                           1201 Pennsylvania Avenue, NW
655 Fifteenth Street, N.W.                     Washington, DC 20004-2401
Washington, D.C. 20005                         Telephone:  202-662-5985
Telephone:  202-879-5000                       Facsimile:  202-662-6291
Facsimile:  202-879-5200


*Attorneys for BP Exploration & Production Inc., BP America Production Company, and BP p.l.c.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 11th day of July, 2012.

*/s/ Don K. Haycraft*
Don K. Haycraft