UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179<br><br>SECTION: J |
| THIS DOCUMENT RELATES TO:<br><br>*ALL CASES IN PLEADING BUNDLE SECTION III.B(3)* | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

**DECLARATION OF DONALD A. TOENSHOFF, JR. IN FURTHER SUPPORT OF MARINE SPILL RESPONSE CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF DERIVATIVE IMMUNITY AND PREEMPTION**

DONALD A. TOENSHOFF, JR., declares under penalty of perjury as follows:

1. I submit this declaration in further support of Marine Spill Response Corporation's ("MSRC") motion for an order of summary judgment dismissing with prejudice all claims asserted against MSRC in the First Amended B(3) Master Complaint and specifically to reply to the allegations raised by the affidavits and declarations filed in support of the Plaintiffs' Steering Committee's Omnibus Memorandum in Opposition to Defendants' Motions for Summary Judgment ("PSC's Opposition Memo"). I make this declaration based upon my personal knowledge and based upon documents which are under MSRC's custody and control, including documents prepared by the Unified Command during the spill response and subsequently produced by the United States and MSRC in this litigation.

2. I have read the declarations filed in support of the PSC's Opposition Memo prepared by Victor Anibal Carias, Terrence Carroll, Kirk Edwards, William Gill, Rendell Jackson, John Lide, Roy Mackie, and Brandon Scott alleging that these individuals were not provided with adequate personal protective equipment ("PPE") while participating in beach and/or coastal clean-up and/or laying and decontaminating booms.

3. During the DEEPWATER HORIZON response, MSRC had no role in supervising or directing any beach and/or coastal cleanup or near-shore booming or decontamination operations. MSRC's role was limited and involved contracting with subcontractors to provide labor and other services to assist in performing some of this work and processing invoices from these subcontractors. MSRC did not employ Messrs. Carias, Carroll, Edwards, Gill, Jackson, Lide, Mackie, or Scott. MSRC had no role or responsibility in training them, providing them with any equipment, including PPE, or directing or supervising their work.

4. I have read the declarations filed in support of the PSC's Opposition Memo prepared by Terry Joe Carter, Dwayne Hawkins-Lodge and Warren Jones alleging that these individuals observed aerial dispersant spraying within one-half mile off the shore or were personally sprayed with dispersants while working on the beach at Port Fourchon, Grand Isle and/or Elmer's Island.

5. The locations where Messrs. Carter, Hawkins-Lodge and Jones allege that they observed aerial dispersant spraying close to shore or were sprayed with dispersants while on the beach are all thirty or more miles west of the line at 089° 30.0' West longitude which divided the spray operations areas between aircraft operating from

2

Houma-Terrebonne Airport ("Houma") and Stennis International Airport ("Stennis"). During the DEEPWATER HORIZON response, no aircraft operating from Stennis were assigned to or conducted spray missions west of this dividing line. MSRC only was involved with aerial dispersant operations during the DEEPWATER HORIZON response originating from Stennis; it was not involved with operations originating from Houma.

6.   I have read the affidavits filed in support of the PSC's Opposition Memo prepared by Ronnie Anderson and John M. Wunstell, Jr. alleging that these individuals were sprayed with dispersants while working in the vicinity of In-Situ Burning ("ISB") operations and that spraying in their vicinity continued at night during the period May 22 through May 28, 2010.

7.   I have reviewed the Daily Aerial Dispersant Plans ("DADPs") for the period May 22 to May 28, 2010 which were prepared each day of the response and produced by the United States and MSRC in this litigation. During this period, the DADPs indicate that sunrise was no earlier than 0556 hours (5:56 a.m.) and sunset was no later than 1925 hours (7:25 p.m.).

8.   During the period May 22 to May 28, 2010, aerial dispersant spray missions were flown from Stennis by MSRC's aviation subcontractors, International Air Response ("IAR") and Dynamic Aviation Group ("Dynamic").

9.   The actual times of departure and return for all aerial dispersant sorties originating from Stennis airport are recorded in the DADPs. During the period May 22 to May 28, 2010, the DADPs indicate that no dispersant spray aircraft operated by IAR or Dynamic from Stennis took off before sunrise or landed after sunset.

810517.00025/7143373v.1

10. I have reviewed documents prepared by the Unified Command Controlled Burn Group produced by the United States in this litigation which indicate that no ISB operations took place on May 22, 2010.

11. Based on the Daily Incident Action Plans prepared by the Unified Command and produced by the United States in this litigation that I have reviewed, during the period May 23 to May 28, 2010, all ISB operations took place within the radius of 5 to 10 miles from the spill source.

12. Based on the DADPs and aerial dispersant flight records that I have reviewed, during the period May 23 to May 28, 2010, all aerial dispersant spray missions conducted by IAR and Dynamic were conducted greater than 11 nautical miles from the site of the spill.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Herndon, Virginia, on July 5, 2012.

DONALD A. TOENSHOFF, JR.

810517.00025/7143373v.1