UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | MDL NO. 2179<br><br>SECTION: J |
| THIS DOCUMENT RELATES TO:<br><br>*ALL CASES IN PLEADING BUNDLE SECTION III.B(3)* | JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |

### DECLARATION PURSUANT TO 28 U.S.C. §1746

Pursuant to 28 U.S.C. §1746, I, William N. Grantham, make the following declaration and were I to be called to testify as a witness I would testify as follows:

1.  My name is William N. Grantham and I am a person of the full age of majority and a resident of Mesa, Arizona. I make this Declaration based upon own first-hand knowledge as well as a review of the records of International Air Response, Inc.

2.  I am currently the Chief Executive Officer of International Air Response, Inc. At the time of the DEEPWATER HORIZON response efforts, I was the Chief Financial Officer of International Air Response, Inc.

3.  International Air Response, Inc. is an Arizona company with its principal place of business and base of operations at the Phoenix-Mesa Gateway Airport (KIWA), Mesa, Arizona.

4.  International Air Response, Inc. provides specialized aerial services and aircraft to government and private sector customers in the United States and internationally. International Air Response, Inc. owns, operates, leases, sells, and

maintains various types of utility and transport aircraft. International Air Response, Inc. offers various services, including aerial delivery; aerial dispersant; oil spill response; agricultural pest control; aerial research, development, test, and evaluation; military parachute training; transportation of oversized/specialized cargo; delivery of humanitarian aid to remote areas; and aerial firefighting services.

5. On September 1, 2006, IAR entered into a contract with Marine Spill Response Corporation entitled *Agreement for the Provision of Dispersant Services by and Between Marine Spill Response Corporation and International Air Response, Inc.*

6. In the hours following the explosion on the DEEPWATER HORIZON on April 20, 2010, Marine Spill Response Corporation contacted IAR for assistance pursuant to the above-referenced *Agreement for the Provision of Dispersant Services by and Between Marine Spill Response Corporation and International Air Response, Inc.*

7. On April 21, 2010, IAR's C-130A Hercules aircraft, registration number N117TG, departed with its crew from its Arizona base bound for the Stennis International Airport in Kiln, Mississippi.

8. During the DEEPWATER HORIZON response, I acted as International Air Response, Inc.'s on-scene director in Stennis, Mississippi, both overseeing and flying oil spill response and aerial dispersant missions throughout the Gulf of Mexico.

9. Throughout the DEEPWATER HORIZON response efforts, International Air Response, Inc. was subject to the ultimate authority and direction of the federal government as directed by the Unified Area Command. Under the Government's supervision and authorization, International Air Response, Inc.'s aircraft and personnel applied approved oil dispersants to the surface of the water in the Gulf of Mexico.

10. International Air Response, Inc.'s personnel did not participate in the aerial dispersant operations conducted out of the Houma-Terrebonne Airport.

11. Prior to cleanup operations each day and before any dispersant was sprayed, the Unified Command informed International Air Response, Inc. of the following: Government approval was required and obtained for all aerial dispersant operations and such authorization came exclusively from the Federal On-Scene Coordinator. Instructions with regard to where, when, how much, and how to apply dispersants were provided by the federal government. At all times, aerial dispersant operations were monitored by federal government agencies, including but not limited to the United States Coast Guard Special Monitoring of Applied Response Technologies teams, to ensure that the operations were conducted safely.

12. During the DEEPWATER HORIZON response International Air Response, Inc. was not involved with any sub-sea dispersant operations.

13. During the DEEPWATER HORIZON response International Air Response, Inc. was not involved with any *in situ* burning operations.

14. During the DEEPWATER HORIZON response International Air Response, Inc. was not involved with any skimming of oil operations.

15. During the DEEPWATER HORIZON response International Air Response, Inc. was not involved with any beach clean-up efforts.

16. During the DEEPWATER HORIZON response International Air Response, Inc. was not involved with decontaminating vessels.

17. At all times, International Air Response, Inc.'s employees participating in the DEEPWATER HORIZON response efforts followed the instructions relayed in the

Incident Action Plans, which contained detailed instructions concerning the authorized response activities that were to occur each day.

18. The Unified Area Command determined applicable safety equipment to use and International Air Response, Inc. complied with all such determinations throughout International Air Response's involvement in DEEPWATER HORIZON clean-up response.

19. Employees of International Air Response, Inc., participating in the DEEPWATER HORIZON spill response efforts, were subject to the ultimate authority and direction of the Federal On-Scene Coordinator, the Federal On-Scene Coordinator representatives and/or other federal officials.

20. At all times during the DEEPWATER HORIZON response, International Air Response, Inc.'s employees complied with all governmental directives and authorizations issued by the Government to International Air Response, Inc. relating to their functions and operations and those employees never exceeded those directives or authorizations.

I declare under the penalties of perjury under the laws of the United States of America that the statements made in this declaration are true and correct.

EXECUTED on the ___9th___ day of July 2012 at ___12:00___.

_____
WILLIAM N. GRANTHAM