UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 ] ] ] ] ] This Document Relates to: 2:12-cv-1045-CJB-JCW ] ] | | MDL No. 2179 SECTION: J Judge Barbier Mag. Judge Wilkinson |

**PLAINTIFF'S MEMORANDUM IN SUPPORT FOR CONDITIONAL
CERTIFICATION AND COURT-AUTHORIZED NOTICE**

## I. INTRODUCTION

The BP oil spill in 2010 was the largest accidental marine oil spill in the history of the petroleum industry. With thousands of square miles of ocean and hundreds of miles of shoreline contaminated or at risk, BP enlisted the largest spill management company in the U.S., O'Brien's Response Management, Inc. ("O'Brien's"). O'Brien's mobilized thousands of workers who cleaned and defended Gulf shorelines and waters. Of these thousands, O'Brien's hired several hundred employees directly to monitor, manage and track personnel, equipment and supplies involved in the spill response. These employees include Plaintiff Prejean and twenty-six other workers who filed consents to join this collective action under the Fair Labor Standards Act (FLSA). Prejean and these opt-in Plaintiffs (collectively, the "Spill Workers") typically worked twelve-hour shifts, seven days per week, and were paid a flat amount per day worked. Although they worked many hours in excess of forty per week, O'Brien's did not pay the Spill Workers overtime because O'Brien's labeled them as independent contractors, rather than employees. Prejean filed this action on his own behalf and others similarly situated to challenge O'Brien's illegal classification of the Spill Workers as independent contractors and recover unpaid overtime pay due under the FLSA. By this memorandum, Prejean asks the Court to

**Ex. 1**

conditionally certify this collective action and grant permission to notify similarly situated employees of this case so that they may decide for themselves whether to join the Spill Workers' attempt to recover their unpaid overtime wages.

The Spill Workers far exceed the "the lenient standard set for certifying collective actions." *See, Xavier v. Belfor USA Group, Inc.*, 585 F. Supp. 2d 873, 875 (E.D. La. 2008); *see also McKnight v. D. Houston, Inc.*, CIV.A. H-09-3345, 2010 WL 4806869, at *8 (S.D. Tex. Nov. 18, 2010) (noting the plaintiff's "light burden" at this stage). Through the declarations of twenty Spill Workers who worked in several locations in four states, O'Brien's own documents, and the well-pled allegations in Prejean's Original Complaint (Docket Entry No. 1), the Spill Workers demonstrate that: (1) O'Brien's denied them overtime under the same misclassification and compensation policy; and (2) other "similarly situated" Spill Workers desire to join this case and will benefit from a Court-authorized notice pursuant to 29 U.S.C. § 216(b).

## II.  THE PARTIES

### A.     O'Brien's

In the aftermath of BP's Deepwater Horizon oil spill (the "Horizon Spill") in April 2010, BP outsourced the massive cleanup efforts to various sub-contractors. One of these sub-contractors was O'Brien's. O'Brien's bills itself as "the recognized leader in emergency response management, particularly in oil spills," and claims it "responds to over 1000 events each year."[1]

### B.     Prejean.

Named Plaintiff Dennis Prejean is a former Spill Worker who worked for O'Brien's in Venice, Louisiana.  Ex. 5, ¶ 2. To date, an additional twenty-six Spill Workers who worked in

---

[1] *See* http://www.piersystem.com/go/doc/2783/578267/O-Brien-s-Statement-Regarding-Role-in-Gulf-Spill (Jul. 16, 2012).

several locations in Louisiana, Mississippi, Alabama and Florida, have filed consents to join this case.  *See* Exs. 5-19, ¶¶ 2-3; Docket Entry Nos. 4, 6593, 6658, 6675.

### III.  THE FACTS

#### A.     O'Brien's Classified Every Spill Worker as an Independent Contractor.

O'Brien's classified all Spill Workers as independent contractors, rather than employees. Exs. 5-18, ¶ 6, Exs. 19-21, ¶ 4, Exs. 22-23, ¶3, Ex. 24, ¶ 5.  Every Spill Worker signed an identical "Teaming Agreement" that refers to each Spill Worker as a "Contractor."  Exs. 5-13, 15, 17-18, ¶ 12; Ex. 19, ¶ 10, Ex. 23, ¶ 9.  Several examples of the Teaming Agreement are attached to the Spill Workers' Declarations.  *Id*.  O'Brien's admits it classified the Spill Workers as independent contractors prior to January 1, 2011, the date it reclassified them as employees. Docket Entry No. 6663, O'Brien's Answer, at p. 2, ¶ 4 & p. 5, Second Affirmative Defense.

#### B.     The Spill Workers Share a Common Employment Experience.

In addition to working under the same "independent contractor" label, the Spill Workers share a common employment experience with O'Brien's.  Their common experience covers all aspects of the relationship including hiring, job requirements, job duties, hours worked, pay, level of control or supervision by O'Brien's, level of investment in the cleanup operations and "demobilization," the process by which the Spill Workers were laid off.

##### 1.     *The Spill Workers Were Hired in a Similar Way by O'Brien's.*

Each Spill Worker was hired during a short phone conversation with an O'Brien's representative.  Exs. 5-18, ¶¶ 15-16; Exs. 19-21, ¶ 13; Exs. 22-23, ¶ 12; Ex. 24, ¶ 14.  In the call, O'Brien's directed the Spill Workers to report for duty within a few days.  *Id*. This call was usually the Spill Workers' first contact with the company upon submitting their resume after

receiving a tip from a friend or family member.  Exs. 5-15, 16-17, ¶ 30; Ex. 19, ¶ 26; Ex. 24, ¶ 14.

### 2. *O'Brien's Did Not Require Specialized Skills, Training or Experience.*

O'Brien's did not require the Spill Workers possess any specialized skills, experience or training prior to hire.  Exs. 5-18, ¶ 30; Exs. 19, ¶¶ 26-27.  The Spill Workers did not receive significant official or formal training after they were hired, either.  Exs. 5-18, ¶ 31; Exs. 19, 21-24, ¶ 27; Ex. 20, ¶ 26.  Instead, the Spill Workers learned to perform their duties on the job.  *Id*.

### 3. *The Spill Workers Performed Similar Jobs.*

The Horizon Spill required the mobilization of thousands of workers and all the equipment they used.  O'Brien's assigned the Spill Workers to monitor, manage or track the personnel and equipment involved in the cleanup operations and to report on the status of cleanup efforts.  Exs. 5-18, ¶¶ 2-5; Exs. 19-21, 23-24, ¶¶ 2-4; Ex. 22, ¶¶ 2, 15.

### 4. *The Spill Workers Worked Many Hours in Excess of Forty Each Week.*

The Spill Workers typically worked seven days per week, often going weeks or months without a day off.  Exs. 5-18, ¶¶ 9-11; Exs. 19-21, ¶¶ 7-9; Exs. 22-23, ¶¶ 6-8; Ex. 24, ¶ 8-10.  O'Brien's, not the Spill Workers, set the Spill Workers' schedules.  Exs. 5-18, ¶ 24; Exs. 19-24, ¶¶ 21-22.  The Spill Workers were typically scheduled for twelve-hour shifts.  Exs. 5-18, ¶¶ 9-11; Exs. 19-21, ¶¶ 7-9; Exs. 22-23, ¶¶ 6-8; Ex. 24, ¶¶ 8-10.  However, due to the demands of their work, the Spill Workers usually worked more than their scheduled hours.  *Id*.  O'Brien's required the Spill Workers fill out and submit time sheets.  Exs. 5-18, ¶ 22; Exs. 19-24, ¶¶ 19-20.  Several examples of these time sheets, attached to the Spill Workers' Declarations, demonstrate that the Spill Workers worked many overtime hours each week.  Exs. 5-18, ¶ 11; Ex. 19, ¶ 10; Ex. 23; ¶ 8.  Workweeks of eighty-four hours or more were typical.  *Id*.

### 5. *O'Brien's Paid the Spill Workers a Flat Day Rate with No Overtime Pay.*

O'Brien's Teaming Agreement set the Spill Workers' compensation in terms of a day rate that ranged from $350 to $600, with most Spill Workers set at $500.  Exs. 5-18, ¶¶ 12-13; Exs. 19-21, ¶¶ 10-11; Exs. 22-23, ¶¶ 6-8; Ex. 24, ¶¶ 8-10.  O'Brien's paid the Spill Workers their daily rate as a flat amount per day worked, with no additional compensation if the Spill Workers worked more than their scheduled hours.  *Id; see also* O'Brien's Answer, at p. 3, ¶ 11 ("O'Brien's typically paid Plaintiff approximately $500 for each day he provided services prior to January 1, 2011.").  Although the Spill Workers worked many overtime hours, O'Brien's did not pay them any additional pay for overtime hours until O'Brien's reclassified its workforce to employee status in January 2011.  Exs. 5-18, ¶ 14; Exs. 19-21, ¶ 12, Exs. 22-23, ¶ 11; Ex. 24, ¶ 13; *see also* O'Brien's Answer, at p. 4, ¶¶ 17-19 & p. 5, Second Affirmative Defense.

### 6. *O'Brien's Directed and Supervised the Spill Workers.*

In addition to setting their compensation and schedules, O'Brien's directed the performance of the Spill Workers' duties on a daily basis.  Exs. 5-18, ¶ 8; Exs. 19-21, ¶ 6; Exs. 22-23, ¶ 5; Ex. 24, ¶ 7.  The Spill Workers met or telephone-conferenced on a daily basis with their supervisors to deliver their daily reports and receive their tasks and instructions.  Exs. 5-18, ¶¶ 16-18; Exs. 19-24, ¶¶ 13-17.  When there were problems the Spill Workers could not fix on their own, they went to their supervisors for help.  *Id*.  When there were problems with their work, the Spill Workers were required to make corrections according to their supervisor's instructions.  Exs. 5-18, ¶ 19; Exs. 19-24, ¶¶ 16-17.

### 7. *The Spill Workers Did Not Risk Their Own Investments in Capital.*

The Spill Workers were provided all the materials and equipment they used on the job, including: office equipment, personal protective gear, two-way radios, computers, tools, ATVs

and boats.  Exs. 5-18, ¶ 29; Exs. 19-24, ¶¶ 25-26.  O'Brien's usually reimbursed the Spill Workers for their travel expenses, including mileage and lodging and sometimes reimbursed them for cell phone use.  *Id.*  The Spill Workers were also provided office facilities and lodging if they were not working within driving distance of their homes.  *Id.*

### 8. *O'Brien's Controlled the Conditions of the Spill Workers' Employment.*

O'Brien's had the authority to hire and fire the Spill Workers and exercised that authority.  Exs. 5-18, ¶ 15; Exs. 19-21, ¶ 13; Exs. 22-23, ¶ 12; Ex. 24, ¶ 15.  O'Brien's required the Spill Workers obtain permission to take time off.  Exs. 5-18, ¶ 21; Exs. 19-24, ¶¶ 18-19. O'Brien's controlled and monitored the Spill Workers' entry to and departure from job sites through the use of electronic badges.  Exs. 5-18, ¶ 20; Exs. 19-24, ¶¶ 17-18.

O'Brien's required the Spill Workers follow policies and procedures that dictated who they reported to in the chain of command, how they recorded and reported their time worked, how they behaved on job sites, what they were permitted to wear, how they performed their work, what expenses they were allowed to claim for reimbursement, how they handled documents, and that they submit to random drug and alcohol testing.  Exs. 5-18, ¶ 23, Exs. 19-24, ¶¶ 20-21.  O'Brien's did not allow the Spill Workers to hire their own employees.  Exs. 5-18, ¶ 25, Exs. 19-24, ¶¶ 22-23.  O'Brien's Teaming Agreements prohibited the Spill Workers from working for other oil spill companies while employed by O'Brien's and for one year afterwards. Exs. 5-18, ¶ 26, Exs. 19-24, ¶¶ 23-24.

O'Brien's ordered the Spill Workers' "demobilization."  Exs. 5-18, ¶¶ 27-28; Exs. 19-24, ¶¶ 24-25.  When the Spill Workers were demobilized, their electronic access badges were deactivated and O'Brien's no longer permitted them to work.  *Id.*

# IV.  THE COURT SHOULD AUTHORIZE
# NOTICE TO POTENTIAL CLASS MEMBERS

### A. Court-Authorized Notice Is Fair, Efficient, and Advances Public Policy Goals.

Early Court-authorized notice is essential to FLSA enforcement.  The FLSA authorizes private parties to sue and recover damages, 29 U.S.C. § 201, *et seq.*, and to bring collective actions "on behalf of themselves and other employees similarly situated," 29 U.S.C. § 216(b).  In furtherance of the FLSA's "broad remedial purpose," courts have the authority to notify potential opt-in plaintiffs of their chance to join an existing action early in the proceeding.  *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 169 (1989); *Xavier v. Belfor USA Group, Inc.*, 585 F. Supp. 2d 873, 876 (E.D. La. 2008).  Courts in the Fifth Circuit use a "lenient standard [that] typically results in 'conditional certification' of a representative class." *Kuperman v. ICF Int'l*, CIV.A. 08-565, 2008 WL 4809167, at *5 (E.D. La. Nov. 3, 2008) (citing *Mooney v. Aramco Srvcs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995), *overruled on other grounds, Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)).

Collective actions provide workers an opportunity to "lower individual costs to vindicate rights by pooling resources," and enable the "efficient resolution in one proceeding of common issues of law and fact . . . ." *Hoffmann-La Roche,* 493 U.S. at 170. The alternative, a multitude of virtually identical individual suits, would burden courts unnecessarily and risk inconsistent judgments on claims arising from the same events and brought under the same laws.

### B. Expeditious Notice Is Particularly Vital to Preserving The Spill Workers' Rights.

Workers must receive timely notice because the FLSA's intended benefits "depend on employees receiving accurate and timely notice concerning the pendency of the collective action." *Kaluom v. Stolt Offshore, Inc.*, 474 F. Supp. 2d 866, 870 (S.D. Tex. 2007).  In a

collective action, the action is "commenced" in the case of an opt-in plaintiff on the date a written consent is filed.  *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 803 (E.D. La. 2007) (citing 29 U.S.C. § 256(b); *Atkins v. General Motors Corp.*, 701 F.2d 1124, 1130 n.5 (5th Cir. 1983)).  Therefore, time is of the essence, because the Spill Workers ' claims are diminished or extinguished every day.  Timely notice will curtail their continued erosion, and is particularly important to the FLSA's "broad remedial purpose." *West v. Lowes Homes Centers, Inc.*, CIV. 6:09-1310, 2010 WL 5582941, at *9 (W.D. La. Dec. 16, 2010) *report and recommendation adopted by* 2011 WL 126908 (W.D. La. Jan. 14, 2011).

### C. The Spill Workers Significantly Exceed the Low Burden for Conditional Certification.

In the Fifth Circuit, the "typical" method for administering collective actions is the "two-step" approach.  *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008); *Lang v. DirecTV, Inc.,* 735 F. Supp. 2d 421, 434-435 (E.D. La. 2010).  At the initial stage of the two-step approach, "[a] plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons may exist."  *Kuperman*, 2008 WL 4809167, at *6 (*quoting Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793*,* 798) (E.D. La. 2007)).  "The 'similarly situated' standard at this stage is *lenient,* plaintiff's burden is not heavy, the evidence needed is minimal and the existence of some variations between potential claimants is *not* determinative of lack of similarity."  *Camp v. Progressive Corp.*, CIV.A. 01-2680, 2002 WL 31496661, at *4 (E.D. La. Nov. 8, 2002) (emphasis in original).  To determine whether the potential group of employees is "similarly situated," the lenient standard requires only substantial allegations that potential members "were together the victims of a single decision, policy, or plan...."  *Xavier v. Belfor USA Group, Inc.*, 585 F. Supp. 2d 873, 877 (E.D. La. 2008) (*quoting Mooney*, 54 F.3d at 1214, n.8).

Extensive discovery is not necessary at the initial stage.[2] In lieu of discovery, courts rely upon the allegations set forth in the complaint and in employee declarations.  *See Kuperman*, 2008 WL 4809167, at *8 (E.D. La. Nov. 3, 2008) ("the decision to certify a collective action at the preliminary notice stage is usually based only on the pleadings and any affidavits that make substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.") (internal citations omitted); *see also Fernandes da Silva v. M2/Royal Const. of Louisiana, LLC*, CIV.A.08-4021, 2009 WL 3565949, at *3 (E.D. La. Oct. 29, 2009) (at the initial "notice stage" of the two-step approach, the court's determination is usually based "only on the pleadings and any affidavits which have been submitted.").[3]  Accordingly, the factual showing required by plaintiff at this stage is a modest one: "[a]t the notice stage, 'courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan'" in violation of the law.  *Mooney*, 54 F.3d at 1214, n.8 (*quoting Hoffmann-La Roche*, 118 F.R.D. at 407); *see also Fernandes*, 2009 WL 3565949, at *4.  Here, the Spill Workers have provided more than enough support for conditional certification in the form of the well-pled allegations in their Complaint, twenty comprehensive declarations, and several documents from O'Brien's attached to the Spill Workers' declarations.

---

[2] *McKnight*, 2010 WL 4806869, at *6 ("Ordinarily, at this stage, the parties have presented only affidavits and have often conducted no discovery."); *Sandoz v. Cingular Wireless, LLC*, CIV.A. 07-1308, 2010 WL 2232634, at *9, n.13 (W.D. La. May 28, 2010) ("Because there is no class discovery in an FLSA representative action at the notice stage . . . a more lenient standard is applied.").

[3] *See, e.g., Smith v. Offshore Specialty Fabricators Inc.*, CIV.A. 09-2985, 2009 WL 2046159 (E.D. La. July 13, 2009) (authorizing notice on the basis of four affidavits which allege the same violation of the FLSA from the same policy); *Melson v. Directech Sw., Inc.*, CIV.A. 07-1087, 2008 WL 2598988 (E.D. La. June 25, 2008) (granting conditional certification based on declarations from named plaintiffs and opt-in plaintiffs); *Bernal v. Vankar Enterprises, Inc.*, SA-07-CA-695-XR, 2008 WL 791963 (W.D. Tex. Mar. 24, 2008) (pleadings and affidavit from one opt-in); *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007) (pleadings, affidavits from seven named plaintiffs and three opt-ins); *Hayes v. Laroy Thomas, Inc.*, 5:05CV227, 2006 WL 1004991 (E.D. Tex. Apr. 18, 2006) (pleadings and declarations of four named plaintiffs).

### D. Conditional Certification Is Not A Decision on the Merits.

Courts do not weigh the merits of the underlying claims in determining whether a plaintiff is similarly situated to potential plaintiffs. *See, e.g., McKnight*, 2010 WL 4806869, at *8 ("At this early stage, in a motion for conditional certification, it is not appropriate to require the plaintiff to produce evidence sufficient to survive summary judgment or to otherwise test the merits beyond the light burden of production to show potential class members are similarly situated."); *Ali v. Sugarland Petroleum*, CIV.A. 4:09-CV-0170, 2009 WL 5173508, at *4 (S.D. Tex. Dec. 22, 2009) ("The Court's only task at the notice stage is to determine whether plaintiff is similarly situated to potential class members.) Moreover, where, as here, plaintiff has demonstrated that they were collectively the "victims" of a "single widespread decision, policy or plan" -- the decision to classify them as independent contractors -- variations in job duties will not defeat conditional certification. *See, e.g., Smith v. Offshore Specialty Fabricators Inc.*, 2009 U.S. Dist. LEXIS 67386 (E.D. La. July 10, 2009) (certifying nationwide class on the basis of evidence provided by six plaintiffs and noting that "collective action certification is not precluded by the fact that putative plaintiffs performed various jobs in differing departments and locations," and that "the law is plain that that [fact] does not undermine the 'similarly situated' requirement.")  *See also, Kuperman*, 2008 WL 4809167, at *6 (citing *Lima*, 493 F. Supp. 2d at 798) ("[T]he threshold for a notice-stage § 216(b) certification is not absolutely identical job tasks, but *similarity* of the plaintiff's overall employment situations") (emphasis in original); *Donohue v. Francis Servs., Inc.*, CIV.A. 04-170, 2004 WL 1161366, at *2 (E.D. La. May 24, 2004) ("the law is plain that that [fact] does not undermine the 'similarly situated' requirement.").  At the second stage of certification, armed with full discovery, the district court may reassess the certification decision.  *See, e.g.*, *Williams v. Bally's La., Inc.*, CIV.A. 05-5020,

2006 WL 1235904, at *2 (E.D. La. May 5, 2006) (*quoting Donohue*, 2004 WL 1161366, at *2 (E.D. La. May 24, 2004)).

### 1. *The Spill Workers Are Similarly Situated With Respect to Their FLSA Claim.*

The Spill Workers exceed the "lenient standard" that they are similarly situated with respect to their FLSA overtime claims. All the Spill Workers were classified as independent contractors and received a day rate amount for twelve hours of work or more per day, worked more than forty hours per week, and received no overtime pay. This policy applied to all the Spill Workers in the same way. Nothing more is necessary. *See Whitworth v. Chiles Offshore Corp.*, CIV. A. 92-1504, 1992 WL 235907, at *1 (E.D. La. Sept. 2, 1992) ("A court may deny a plaintiff's right to proceed collectively *only* if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice") (emphasis added); *Donohue*, 2004 WL 1161366, at *1 (same); *see also Albanil v. Coast 2 Coast, Inc.*, 2008 U.S. Dist. LEXIS 93035 at *6 (S.D. Tex. Nov. 17, 2008) (Plaintiff's pleadings and declarations, stating that they did in fact work more than forty hours per week, [coupled with Defendant's admission that they did not pay overtime] are enough to provide the minimal factual showing required at the notice stage.). Whether the policy is illegal is a question for another day. *See McKnight*, 2010 WL 4806869, at *5 ("Neither stage of [conditional] certification is an opportunity for the court to assess the merits of the claim by deciding factual disputes or making credibility determinations.") (citing *Lynch v. United Svcs. Auto. Ass'n,* 491 F.Supp.2d 357, 368 (S.D.N.Y. 2007) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.")).

> 2.  *The Spill Workers Are Similarly Situated With Respect to Their Independent Contractor Classification.*

The O'Brien's answer in this case, the Spill Workers' testimony and the Teaming Agreements all demonstrate O'Brien's universal treatment of the Spill Workers as independent contractors. Blanket classification decisions like this one are well suited for collective adjudication and are routinely granted. *See, e.g., Botello v. COI Telecom, L.L.C.*, No. SA-10-CV-305-XR, 2010 WL 5464824 (W.D. Tex. Dec. 30, 2010) (certifying FLSA collective of workers alleging misclassification as independent contractors); and *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F.Supp.2d 793, 798–99 (E.D. La. 2007) (conditionally certifying class of manual laborers alleging they were not paid proper overtime wages due to a company-wide policy of misclassifying them as independent contractors).[4] This Court recently certified a similar case involving TRG, another BP Contractor. *See Brewer, et al., v. BP P.L.C., et al.*, No. 2:11-cv-401-JCW (E.D. La. filed Feb. 17, 2011). The standard defense argument – that no two workers are alike and the Court must undertake an individualized, person-by-person analysis to resolve the case – is undermined here by the fact that O'Brien's classified all the Spill Workers in one fell swoop, without examining each of their actual job duties. As a result, all the Spill

---

[4] *See also In re Penthouse Executive Club Comp. Litig.*, 10 CIV. 1145 NRB, 2010 WL 4340255, at *3-4 (S.D.N.Y. Oct. 27, 2010) (conditionally certifying class of current and former dancers who were misclassified as independent contractors); *McCaffrey v. Mortgage Sources, Corp.,* No. 08-2660-KHV, 2009 WL 2778085, at **4-5 (D. Kan. Aug. 27, 2009) (conditional certification granted to loan officers alleging misclassification as independent contractors); *Labrie v. UPS Supply Chain Solutions, Inc.,* No. C08-3182 PJH, 2009 WL 723599, at *5 (N.D. Cal. Mar. 18, 2009) (conditional certification granted to U.P.S. drivers alleging misclassification as independent contractors); *Gayle v. Harry's Nurses Registry, Inc.*, No. 07 Civ. 4672 (CPS)(MDG), 2009 WL 605790, at **9-10 (E.D.N.Y. Mar. 9, 2009) (conditionally certifying class of nurses challenging classification as independent contractors); *Houston v. U.R.S. Corp.,* 591 F.Supp.2d 827, 833-34 (E.D. Va. 2008) (conditional certification granted to housing inspectors alleging misclassification as independent contractors); *Quinteros v. Sparkle Cleaning, Inc.*, 532 F.Supp.2d 762, 772 (D. Md. 2008) (conditionally certifying class of janitorial workers who were classified as independent contractors and not paid overtime); *Montoya v. S.C.C.P. Painting Contractors, Inc.*, Civ. No. CCB-07-455, 2008 WL 554114 (D. Md. Feb. 26, 2008) (conditional certification for house painters alleging lack of overtime pay due to misclassification); *Lemus v. Burnham Painting & Drywall Corp.*, No. 2:06 Civ. 01158, 2007 WL 1875539, at **4-5 (D. Nev. June 25, 2007) (same); *Westfall v. Kendle Intern., CPU, LLC*, Civ. No. 1:05-cv-00118, 2007 WL 486606, at * 8-9 (N.D. W.Va. Feb. 15, 2007) (same); *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 198 (S.D.N.Y. 2006) (conditional certification of class of carpet installation mechanics challenging independent contractor classification).

Workers' claims are based on a "single decision, policy, or plan," *Xavier*, 585 F.Supp.2d 873, 877 (E.D. La. 2008); *Mooney*, 54 F.3d at 1214 n. 8 (5th Cir. 1995) (*quoting Sperling I*, 118 F.R.D. at 407), namely that O'Brien's unlawfully misclassified the Spill Workers as independent contractors in violation of the FLSA in an effort to avoid paying them overtime. Any differences among the Spill Workers' duties were clearly not "material" to O'Brien's determination of whether the job is properly classified as an independent contractor. *Prater v. Commerce Equities Mgmt. Co., Inc.*, CIV.A. H-07-2349, 2007 WL 4146714, at *6 (S.D. Tex. Nov. 19, 2007) (finding variations in class members' job duties not material).

It would be "disingenuous" for O'Brien's, "on the one hand, to collectively and generally decide that all [the Spill Workers] are [independent contractors] . . ., while on the other hand, claiming that plaintiff cannot proceed collectively to challenge" the classification. *Nerland v. Caribou Coffee Co., Inc.*, 564 F. Supp. 2d 1010, 1024 (D. Minn. 2007) (certifying class of managers challenging classification as exempt under the FLSA and Rule 23). After having uniformly classified all the Spill Workers as independent contractors without performing individualized inquiries, O'Brien's cannot now claim that the Court must do so to determine whether the Spill Workers are similarly situated with respect to their claims. In other words, if O'Brien's can make this determination on a collective basis, so can this Court.

In any event, courts do not require that the job duties be identical. *Kuperman*, 2008 WL 4809167, at *6 (citing *Lima*, 493 F. Supp. 2d at 798) ("[T]he threshold for a notice-stage § 216(b) certification is not absolutely identical job tasks, but *similarity* of the plaintiff's overall employment situations") (emphasis in original)); *Donohue,* 2004 WL 1161366, at *2 (E.D. La. 2004) ("collective action certification is not precluded by the fact that putative plaintiffs performed various jobs in differing departments and locations," and "the law is plain that that

[fact] does not undermine the 'similarly situated' requirement."); *see also Foraker v. Highpoint Southwest, Servs., L.P.,* No. H-06-1856, 2006 WL 2585047, at *4 (S.D. Tex. Sept.7, 2006) ("While undoubtedly the [plaintiff's] duties vary to some degree from day-to-day and possibly from location to location ... [t]he fact that on different days customers may have questions for a [plaintiff employee] does not change the thrust of the job duties described...."). "Similarly situated" does not mean identically situated. *Basco v. Wal-Mart Stores, Inc.*, 2004 U.S. Dist. LEXIS 12441, at *15 (E.D. La. July 2, 2004); *Crain v. Helmerich & Payne Int'l Drilling Co.,* 1992 U.S. Dist. LEXIS 5367, at *4-5 (E.D. La. April 17, 1992). Thus, "[s]light differences in job duties or functions do not run afoul of the similarly situated requirement." *Tolentino v. C & J Spec-Rent Servs., Inc.*, 716 F. Supp. 2d 642, 651-522 (S.D. Tex. 2010). Named Plaintiffs need only show that their positions are similar, not identical, to potential class members. *Villarreal v. St. Luke's Episcopal Hosp.*, 10-CV-247, 2010 WL 4604453, at *12 (S.D. Tex. Nov. 3, 2010) (internal quotations and citation omitted). In this case, Prejean has amply shown that the Spill Workers were all assigned the duty to assist O'Brien's in tracking oil spill response personnel or equipment that were used in the Horizon Spill on or about April 20, 2010.

### 3. *The Spill Workers Are Similarly Situated With Respect to O'Brien's Exemption Defenses.*

In its answer, O'Brien's claims the Spill Workers were exempt under the executive, administrative and/or highly paid professional exemptions to the FLSA. Docket Entry No. 6663 at p. 6, Seventh, Eighth and Ninth Affirmative Defenses. These exemptions all require, *inter alia*, that the employee be "paid on a salary basis." 29 C.F.R §§ 541.100, 200, 601; *Belt v. Emcare, Inc.*, 444 F.3d 403, 407 (5th Cir. 2006). Failure to meet any aspect of the salary basis requirements conclusively precludes application of these exemptions. *Id*. This is true even if the employees otherwise perform exempt duties or earn high wages. *Belt*, 444 F.3d at 416 (non-

salaried Physician Assistants and Nurse Practitioners are non-exempt as a matter of law even though it is "beyond question that [they] assume many of the traditional duties of doctors."); *Usery v. Associated Drugs, Inc.*, 538 F.2d 1191, 1193-94 (5th Cir. 1976) (pharmacists are non-exempt as a matter of law when not paid on a salary basis.); *Prakash v. Savi Technologies, Inc.*, C10-1845RSL, 2011 WL 2414349,*4  (W.D. Wash. June 10, 2011) (technical support worker earning $120,000 per year not exempt because not paid on a salary basis).

"Paid on a salary basis" means the employee regularly receives a predetermined weekly amount of compensation each pay period that cannot be reduced because of variations in the quality or quantity of the employee's work.  *Belt*, 444 F.3d at n. 9; 29 C.P.R. § 541.602(a). Employees who are paid a day-rate without a guaranteed weekly minimum are not paid on a salary basis.  29 C.F.R. § 541.604(b); *Dufrene v. Browning-Ferris, Inc.*, 207 F.3d 264, 268 (5th Cir. 2000) (distinguishing between a salary and a day-rate); *Cunningham v. Faerber's Bee Window, Inc.*, 1:04CV500-LJM-VSS, 2005 WL 1123634, at *3 (S.D. Ind. Apr. 19, 2005) (an employee who is "paid per day of work … does not fit the definition of a salaried employee.").

The standard defense argument that the exemption analysis depends on individualized inquiries into the employees' job duties, does not apply here because the Spill Workers were not paid on a salary basis.  Instead, every Spill Worker was paid a flat amount per day worked. Accordingly, the Spill Workers are similarly situated with respect to whether they are paid on a salary basis.

### 4. *The Spill Workers Demonstrate Others Are Interested in Participating in this Lawsuit.*

The Spill Workers demonstrate other similarly situated employees are interested in participating in this lawsuit if they knew of the opportunity to do so.  Since Prejean filed his Complaint, twenty-six additional Spill Workers have filed their consent forms. Moreover, the

Spill Workers support this memorandum with twenty declarations in which the Spill Workers assert that based upon their personal communications with co-workers that other Spill Workers similarly situated to Prejean, would join this case if they knew about it.  Exs. 5-18, ¶ 32; Exs. 19, 24, ¶ 28; Ex. 20, ¶ 27; Exs. 21-23; ¶ 28.  Cases routinely grant notice on substantially lesser showings of interest.  *See*, *e.g., Castillo v. Hernandez*, 2010 U.S. Dist. LEXIS 118457, #12-14 (W.D. Tex. Nov. 4, 2010) (authorizing notice on basis of 7 declarations asserting that other similarly situated employees would be interested in joining and stating that court has done so on basis of statements by just two employees); *Cantu v. Vitol, Inc.,* 2009 U.S Dist. LEXIS 118325, *15-16 (S.D. Tex. Dec. 21, 2009) citing *Felix de Asencio v. Tyson Foods Co.*, 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001) (pleadings and four declarations from putative class members sufficient); *Gonzalez v. Ridgewood Landscaping, Inc.*, 2010 U.S. Dist. LEXIS 45245, *16-17 (S.D. Tex. May 10, 2010) (evidence of interest sufficient where 3 of 300 potential employees expressed in declarations that others would be interested in joining) and *McKnight v. D. Houston, Inc.,* 2010 U.S. Dist. LEXIS 122357, *31-32 (S.D. Tex. Nov. 18, 2010) (certifying notices to classes on the assertion by only one employee that others similarly situated would be interested in joining).

> **D.     The Court Should Approve Plaintiff's Proposed Notice**

Plaintiff requests that the Court authorize them to send the proposed notice and consent to join form to all O'Brien's Deepwater Horizon oil spill response workers who were classified as independent contractors, paid a day-rate and worked over forty hours in at least one workweek without receiving overtime pay, and performed duties related to tracking oil spill response personnel, and/or otherwise assisted in managing and/or tracking the resources used in the

response ("Potential Opt-In Plaintiffs").  Plaintiff's proposed notice is "timely, accurate, and informative." *Hoffmann-La Roche*, 493 U.S. at 172.

## V.  CONCLUSION

For the foregoing reasons, Prejean respectfully requests this Court conditionally certify this case as a collective action; order Defendant to produce a computer-readable data file containing all Potential Opt-In Plaintiffs' names, last-known mailing addresses, last-known email addresses, last-known telephone numbers, Social Security numbers, work locations, and dates of employment; and authorize the issuance of Prejean's proposed notice with the attached consent-to-join form to all Potential Opt-In Plaintiffs.  Prejean request an opt-in period of sixty days.

Date: 7/18/2012                                      Respectfully submitted,

**BRUCKNER BURCH PLLC**

   **/s/ David I. Moulton**
By: _____
       David I. Moulton
       Texas State Bar No. 24051093
8 Greenway Plaza, Suite 1500
Houston, Texas  77046
(713) 877-8788 - Telephone
(713) 877-8065 - Facsimile
dmoulton@brucknerburch.com