UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | ] ] ] ] ] | MDL No. 2179 SECTION: J Judge Barbier |
| This Document Relates to: 2:12-cv-1045-CJB-JCW | ] ] | Mag. Judge Wilkinson |

**SWORN DECLARATION OF EBBIE ROY THIGPEN**

Pursuant to 28 U. S. C. § 1746 Ebbie Roy Thigpen declares the following:

1. "My name is Ebbie Roy Thigpen. The facts contained in this declaration are within my personal knowledge and are true and correct.

2. I worked for O'Brien's Response Management, Inc. (O'Brien's) from June 23, 2010 to April, 2011. O'Brien's initially directed me to report to Mobile, Alabama. My duties were to assist O'Brien's in quality assurance. I visited work sites, local commands and beaches, monitoring beach cleanup practices and tracking efficiency in the cleanup response to BP's Deepwater Horizon oil spill in April 2010.

3. I observed cleanup crews on beaches from Florida to Mississippi and monitored the practices and procedures being employed at particular sites to determine whether better practices could be used or whether those particular practices should be employed at other sites.

4. My duties required me to observe the beach cleanup contractors, the equipment and supplies being used, the cleanup procedures and practices , and the material being removed from the beach.

5. My last position with O'Brien's was as the Alabama OSRO Manager. I worked in the Mobile command center, O'Brien's office and on the beaches. It was my job to help

-1-

**Ex. 17**

solve issues between command and the contractors. I attended daily meetings about what we picked up or deployed each day and what was being planned for the near future.

6. O'Brien's treated me as an independent contractor from the beginning of my employment until January 1, 2011, when O'Brien's reclassified me as an employee.

7. Many other workers worked for O'Brien's performing the same duties I performed and were also treated as independent contractors. I refer to these other workers as "Spill Workers."

8. Throughout my employment with O'Brien's, O'Brien's established my and the other Spill Workers' compensation, set our schedules, and directed our work through command staff on a daily basis.

**Hours Worked**

9. During my employment, the other Spill Workers and I typically worked seven days per week. I went 30 days before receiving a day off.

10. The other Spill Workers and I were regularly scheduled to work twelve hour shifts for O'Brien's. However, our actual shifts were sometimes longer than the regularly scheduled twelve hours.

11. Accordingly, the other Spill Workers and I routinely worked many hours in excess of forty in a week. Exhibit 1 is an example of one of my time sheets from August 1, 2010 to August 8, 2010. I worked twelve hours each of these days. *See* Exhibit 1.

**Pay**

12. When O'Brien's hired me and the other Spill Workers, we signed "Teaming Agreements" that state we would be paid by the day. My agreement with O'Brien's states I

would be paid "$500 per day." A true and correct copy of the agreement I signed with O'Brien's is attached as Exhibit 2.

13. Throughout my employment with O'Brien's, I was paid $500 per day. This amount did not increase if I worked more than my scheduled hours.

14. O'Brien's did not pay me or the other Spill Workers overtime compensation for hours we worked in excess of forty hours during the time O'Brien's classified us as independent contractors.

**Control**

15. O'Brien's had the authority to hire and fire me and other Spill Workers. I know this because Duane Miller, an O'Brien's employee, contacted me over the phone to ask if I was interested in working for O'Brien's. I was then contacted by another O'Brien's employee who essentially hired me over the phone. My O'Brien's teaming agreement was then emailed to me for signature and then I reported to Mobile for deployment.

16. When I was hired, my supervisor, Bud Klein, and other O'Brien's employees instructed me how to do my job.

17. O'Brien's supervised and controlled the performance of our work in all the locations to which I was assigned. For example, O'Brien's expected me to attend daily meetings with senior command staff including O'Brien's and BP personnel and federal, state and local officials. When there were problems on the beaches, I would go to my O'Brien's supervisor for help when necessary.

18. I submitted a weekly report to Klein. O'Brien's used these reports to monitor our work and help the command staff track the day's events and plan assignments for the following day or remainder of the week.

19. O'Brien's directed the information I was to track and how I was to report it. O'Brien's also provided instruction on how to fill out the report forms I completed. When my forms were not filled out properly, or there was some other problem with my work, Klein required me to make corrections according to his instructions.

20. O'Brien's required me and the other Spill Workers to scan our electronic badges in and out upon each entry and departure from work sites and boats. These badges said "O'Brien's" on them. We were required to wear them around our necks so they would always be visible to the guards at the facilities.

21. O'Brien's required me and the other Spill Workers to obtain approval for time off. It was approximately one month before I received a day off. Klein would have approved the time off requests.

22. O'Brien's required me and other Spill Workers to fill out time sheets reflecting hours worked.

23. O'Brien's required me and the other Spill Workers follow policies and procedures that dictated who we reported to in the chain of command, how we recorded and reported our time worked, how we behaved on job sites, what we were permitted to wear, how we performed our work, what expenses we were allowed to claim for reimbursement, how we handled documents, and that we submit to random drug and alcohol testing.

24. O'Brien's set my and other Spill Workers' working schedules on a weekly basis, which typically required minimum shifts of 12 hours or longer. We were not allowed to set our own schedules.

25. The Spill Workers and I were not allowed to hire employees to help us with our work.

26. O'Brien's prohibited me and the other Spill Workers from working with any other oil spill contractor while we were employed by O'Brien's and for one year after our employment. *See* Exhibit 2.

27. Around January 1, 2011, an O'Brien's employee from HR met with us and explained that O'Brien's was going to make us employees. From that point on, O'Brien's classified me as an employee.

28. Just before I was let go, or "demobilized," Duane Miller of O'Brien's told me that I was to report to demobilization. In demobilization, my O'Brien's electronic access badge was deactivated. After being demobilized, I returned home because I no longer had work or lodging in Mobile.

**Investment**

29. The other Spill Workers and I made little or no investment in working for O'Brien's. For example, O'Brien's typically reimbursed us for travel expenses and mileage. O'Brien's also provided facilities, including offices and lodging.

**Special Skill or Expertise**

30. O'Brien's did not require me and the other Spill Workers to possess specialized qualifications, skill or former training prior to hire in order to perform our job duties. I never had contact with O'Brien's before I was hired and I received no formal training after being hired. I found out about employment with O'Brien's through my friend, Duane Miller. Based on his recommendation, O'Brien's contacted me and after a short phone interview, offered me a job with O'Brien's. Less than a week later, I was working for O'Brien's in Mobile.

31. The other Spill Workers and I did not receive significant official or formal training to perform our jobs. Instead, we learned how to perform our duties on the job. For

example, I learned on the job how to fill out report forms and what information I was required to track about the cleanup equipment.

### Interest in a Collective Action

32. Based on my experience working with O'Brien's and my communications with other Spill Workers, I know other spill workers are interested in joining a collective action to recover their unpaid overtime.

33. I declare under penalty of perjury that the foregoing is true and correct."

Signed on July 17, 2012.

/s/ *Ebbie Roy Thigpen*

Ebbie Roy Thigpen



# BP RESPONSE TIME SHEET

**Name: Ebbie Thigpen**         **Billing Period:**   8/1/10-8/8/10

**Paykey Code: ZKRAUMD252**                **Response: Deepwater Horizon**

| Date | Start Time | End Time | Total Hours | Location/Activity |
|---|---|---|---|---|
| 8/1 | 6am | 6pm | 12 | Panama City/Contractor visits |
| 8/2 | 6am | 6pm | 12 | Panama City/Contractor visits |
| 8/3 | 7am | 7pm | 12 | Panama City contractor visits |
| 8/4 | 7am | 7pm | 12 | Port St Joe IC visit |
| 8/5 | 7am | 7pm | 12 | Panama City IC visit |
| 8/6 | 6am | 6pm | 12 | Mobile Command Center |
| 8/7 | 6am | 6pm | 12 | Mobile Command Center |
| 8/8 | 7am | 7pm | 12 | Panama City/ command Center |

Signature:                                      Date:

EXHIBIT 1

# RESPONSE MANAGEMENT
# TEAMING AGREEMENT

This Agreement is between **O'Brien's Response Management Inc.** (O'Brien'sRM) (referred to collectively as Company), and _Ebbie Thigpen_ (referred to as Contractor). In consideration of the mutual benefits derived herefrom, the parties, intending to be legally bound, covenant and agree as follows.

Company is principally engaged in the business of providing emergency preparedness and response management services to its clients. Company wishes to utilize Contractor to assist Company in providing these services, and Contractor agrees to support the Company, under the terms and conditions herein provided. Such services include, but are not limited to, staffing of Incident Command System positions at selected emergency events, conducting training courses, participating in and/or facilitating exercises and other similar consulting services as mutually agreed to by both parties. Contractor understands that Company is not obligated to request Contractor's services and Company understands that Contractor may refuse Company's request for services, if Contractor is not available.

Remuneration for services rendered as part of this Agreement will be at a rate of $ __TBD__ per hour/day for **consulting** plus reasonable out-of-pocket expenses, and/or $ _500.00_ per day for **responses** plus reasonable out of pocket expenses. Rates may be changed annually upon 30 days written notice. Contractor will invoice Company within 10 days of project completion and will include receipts for **all** expenses. Company will provide all billing to the client and distribute to Contractor upon receipt of fees and expenses from the client. Company will provide general liability insurance as required by the client and Contractor will provide workers compensation insurance for its employees. Contractor will be responsible for all wages, salaries and benefits of its employees.

Contractor agrees that any proprietary and confidential information that results from all work covered by this agreement will be held in strict confidence for at least five years beyond the termination of this Agreement and may not be used for any purpose other than fulfillment of Contractor's responsibilities. Contractor also agrees not to solicit or sell services substantially similar to that provided by Company to Company's clients for the term of this agreement and for a period of one year thereafter.

This Agreement is a continuing (evergreen) commitment with no set termination. It does not bind either party to a joint venture, partnership, or any other type of formal business entity. It also does not make either party an employee of the other. For the sake of good order, Contractor will keep Company apprised of information needed for maintaining Contractor's Statement of Qualifications. Either party may terminate this Agreement with at least 60 days prior written notice to the other party.

COMPANY:

By: _____

Name: _____

Title: _____

Company: O'Brien's Response Management Inc.

Date: _____

CONTRACTOR:

By: _Ebbie Thigpen_ (signature)

Name: _EBBIE THIGPEN_

Title: _____

Company: _____

Date: _6/22/10_