UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: | Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179<br>SECTION: J |
| | This Document Relates to: 2:12-cv-1045-CJB-JCW | Judge Barbier<br>Mag. Judge Wilkinson |

## SWORN DECLARATION OF RALPH MARTINEZ

Pursuant to 28 U. S. C. § 1746 Ralph Martinez declares the following:

1. "My name is Ralph Martinez. The facts contained in this declaration are within my personal knowledge and are true and correct.

2. I worked for O'Brien's Response Management, Inc. (O'Brien's) from July 10, 2010 to October 10, 2010. O'Brien's assigned me to work as a night yard supervisor in Venice, Louisiana.

3. As a night yard supervisor, it was my job to inventory all equipment and supplies used in spill response. I kept a spreadsheet of all the items on site, all items that were deployed, and tracked where all items were going. I also kept an inventory of items stored at the VRV facility, which was a tent city for the responders.

4. O'Brien's always treated me as an independent contractor.

5. Many other workers worked for O'Brien's performing the same duties I performed and were also treated as independent contractors. I refer to these other workers as "Spill Workers."

6. Throughout my employment with O'Brien's, O'Brien's established my and the other Spill Workers' compensation, set our schedules, and directed our work on a daily basis.

-1-

Ex. 20

### Hours Worked

7. During my employment, the other Spill Workers and I typically worked seven days per week. I went weeks without a day off.

8. The other Spill Workers and I were regularly scheduled to work twelve hour shifts for O'Brien's. However, our actual shifts were often longer than the regularly scheduled twelve hours.

9. Accordingly, the other Spill Workers and I routinely worked many hours in excess of forty in a week.

### Pay

10. When O'Brien's hired me and the other Spill Workers, we signed "Teaming Agreements" that stated we would be paid by the day. My agreement with O'Brien's said I would be paid $500 per day.

11. Throughout my employment with O'Brien's, I was paid $500 per day. This amount did not increase if I worked more than my scheduled hours.

12. O'Brien's did not pay me or the other Spill Workers overtime compensation for hours we worked in excess of forty hours.

### Control

13. O'Brien's had the authority to hire and fire me and other Spill Workers. For example, John McKue, an O'Brien's employee, hired me over the phone shortly after I submitted my resume to O'Brien's. McKue told me to report for duty within a few days.

14. I received no training when I arrived. I was assigned to the Venice staging yard and John Sawicki was my supervisor. Sawicki set my schedule and assigned my job duties.

15. O'Brien's supervised and controlled the performance of our work in all the locations to which I was assigned. For example, I had mandatory daily meetings Sawicki. In these meetings, Sawicki gave me and other Spill Workers instructions regarding our daily tasks and job performance. When there were problems, I went to Sawicki for help.

16. O'Brien's directed the information I was to collect on the beach and the decontamination site and how I was to report it. O'Brien's also provided instruction on how to fill out the report forms I completed. When my forms were not filled out properly, or there was some other problem with my work, Sawicki required me to make corrections according to his instructions. This often meant I stayed a few hours beyond my work schedule until Sawicki was satisfied with my reports.

17. O'Brien's required me and the other Spill Workers to scan our electronic badges in and out upon each entry and departure from work sites and boats. These badges said "O'Brien's" on them. We were required wear our badges around our necks so they would always be visible to the guards at the facilities.

18. O'Brien's required me and the other Spill Workers to obtain approval for time off.

19. O'Brien's required me and other Spill Workers to fill out time sheets reflecting hours worked.

20. O'Brien's required me and the other Spill Workers follow policies and procedures that dictated who we reported to in the chain of command, how we recorded and reported our time worked, how we behaved on job sites, what we were permitted to wear, how we performed our work, what expenses we were allowed to claim for reimbursement, how we handled documents, and that we submit to random drug and alcohol testing.

21. O'Brien's set my and other Spill Workers' working schedules on a weekly basis, which typically required minimum shifts of 12 hours or longer. We were not allowed to set our own schedules.

22. The Spill Workers and I were not allowed to hire employees to help us with our work.

23. O'Brien's prohibited me and the other Spill Workers from working with any other oil spill contractor while we were employed by O'Brien's and for one year after our employment.

24. Either Sawicki or "Mac" McIntyre, also with O'Brien's, ordered my demobilization. In demobilization, my O'Brien's electronic access badge was deactivated. After being demobilized, I returned home because I no longer had work or lodging in Louisiana.

### Investment

25. The other Spill Workers and I made little or no investment in working for O'Brien's. For example, we were provided with all the equipment and tools we used, including ATVs, office facilities, printers, scanners, hard hats, safety vests, safety glasses and VHF radios. O'Brien's typically reimbursed us for travel expenses, lodging, cell phones and mileage.

### Special Skill or Expertise

26. O'Brien's did not require me and the other Spill Workers to possess specialized qualifications, skill or former training prior to hire in order to perform our job duties. I never had contact with O'Brien's before I was hired and I received no significant formal training after being hired. Instead, we learned how to perform our duties on the job

## Interest in a Collective Action

27. Based on my experience working with O'Brien's and my communications with other Spill Workers, I believe other spill workers are interested in joining a collective action to recover their unpaid overtime. When I heard about this case, I was interested in joining.

28. I declare under penalty of perjury that the foregoing is true and correct."

Signed on July 13th, 2012.

_____
Ralph Martinez