UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | ] ] ] ] ] | MDL No. 2179<br>SECTION: J<br>Judge Barbier |
| This Document Relates to: 2:12-cv-1045-CJB-JCW ] ] | | Mag. Judge Wilkinson |

**SWORN DECLARATION OF MORGAN CLARK**

Pursuant to 28 U. S. C. § 1746 Morgan Clark declares the following:

1. "My name is Morgan Clark. The facts contained in this declaration are within my personal knowledge and are true and correct.

2. I worked for O'Brien's Response Management, Inc. (O'Brien's) from June 1, 2010 to the end of May or early June 2011 and from September 2011 to the end of March 2012. I worked as a Shoreline Treatment Recommendation (STR) Manager in Port Fourchon and Grand Isle, Louisiana.

3. O'Brien's treated me as an independent contractor from the beginning of my employment until January 1, 2011, when O'Brien's reclassified me as an employee.

4. Many other workers worked for O'Brien's performing the same duties I performed and were also treated as independent contractors. I refer to these other workers as "Spill Workers."

5. Throughout my employment with O'Brien's, O'Brien's established my and the other Spill Workers' compensation, set our schedules, and directed our work on a daily basis.

**Hours Worked**

6. During my employment, the other Spill Workers and I typically worked seven days per week. I went months without a day off.

-1-

**Ex. 22**

7. The other Spill Workers and I were regularly scheduled to work twelve hour shifts for O'Brien's. However, our actual shifts were often longer than the regularly scheduled twelve hours.

8. Accordingly, the other Spill Workers and I routinely worked many hours in excess of forty in a week.

**Pay**

9. When O'Brien's hired me and the other Spill Workers, we signed "Teaming Agreements" that state we would be paid by the day. The agreement I signed when I was hired states I would be paid $500 per day.

10. I was paid $500 per day until I was reclassified as an employee. My pay did not increase if I worked more than my scheduled hours.

11. O'Brien's did not pay me or the other Spill Workers overtime compensation for hours we worked in excess of forty hours during the time O'Brien's classified us as independent contractors.

**Control**

12. O'Brien's had the authority to hire and fire me and other Spill Workers. For example, Scott Martin, an O'Brien's employee, hired me over the phone. He told me to report to work shortly after our phone conversation. When I arrived, O'Brien's provided me with hiring documents and employment policies.

13. I was supervised initially by Rodney Verret with O'Brien's. Verret trained and instructed me regarding my job duties.

14. O'Brien's supervised and controlled the performance of our work in all the locations to which I was assigned. For example, I had mandatory daily meetings and telephone

conferences with Verret. In these meetings and conferences, Verret gave me instructions regarding my daily tasks and job performance. When there were problems, I went to Verret for help.

15. In our daily meetings or telephone conferences, I was required to report what was happening on the beaches, how much oil we had recovered, how much boom we had used, what supplies were needed and the location of any oil we had found during helicopter flights.

16. Verret directed the information I was to report and how I was to report it. When there was any problem with my work, Verret required me to make corrections according to his instructions.

17. O'Brien's required me and the other Spill Workers to scan our electronic badges in and out upon each entry and departure from work sites and boats. These badges said "O'Brien's" on them. We were required to display them so they would always be visible to the guards at the facilities.

18. O'Brien's required me and the other Spill Workers to obtain approval for time off. I made these requests to Verret, who approved them.

19. O'Brien's required me and other Spill Workers to fill out time sheets reflecting hours worked.

20. O'Brien's required me and the other Spill Workers follow policies and procedures that dictated who we reported to in the chain of command, how we recorded and reported our time worked, how we behaved on job sites, what we were permitted to wear, how we performed our work, what expenses we were allowed to claim for reimbursement, how we handled documents, and that we submit to random drug and alcohol testing.

21. O'Brien's set my and other Spill Workers' working schedules on a weekly basis, which typically required minimum shifts of 12 hours or longer. We were not allowed to set our own schedules.

22. The Spill Workers and I were not allowed to hire employees to help us with our work. When I notified Verret that I needed some help, Verret moved an employee off of the beach who worked for a company called "Oil Mop" to help me.

23. O'Brien's prohibited me and the other Spill Workers from working with any other oil spill contractor while we were employed by O'Brien's and for one year after our employment.

24. Around December 2010, I received an email from Christine Royer that O'Brien's was going to reclassify us as employees, lower our day rate and pay overtime. Starting in January 2011, O'Brien's classified me as an employee.

25. I was "demobilized," or let go, in May or June 2011. In demobilization, my O'Brien's electronic access badge was deactivated. After being demobilized, I returned home because I no longer had work or lodging in Louisiana.

### Investment

26. The other Spill Workers and I made little or no investment in the cleanup operations. For example, all of our tools and equipment, including ATVs, offices, office equipment, personal protective equipment and other supplies were provided. O'Brien's typically reimbursed us for travel expenses, mileage and lodging.

### Special Skill or Expertise

27. O'Brien's did not require me and the other Spill Workers to possess specialized qualifications, skill or former training prior to hire in order to perform our job duties. I found out

about employment with O'Brien's through a friend. Based on his recommendation, I contacted O'Brien's. Scott Martin with O'Brien's called and hired me. I started working for O'Brien's almost immediately.

28. The other Spill Workers and I did not receive significant official or formal training to perform our jobs. With the exception of a one-hour training session that Verret sent me to that dealt with how to retrieve boom from marsh grass, I learned how to perform my duties on the job.

### Interest in a Collective Action

29. Based on my experience working with O'Brien's and my communications with other Spill Workers, I know other spill workers are interested in joining a collective action to recover their unpaid overtime.

30. I declare under penalty of perjury that the foregoing is true and correct."

Signed on July 10, 2012.

_____
Morgan Clark