

U.S. Department of Justice
Environment and Natural Resource Division

*P.O. Box 7611*
*Washington, DC 20044*
*202-514-0056*
*Scott.Cernich@usdoj.gov*

July 20, 2012

**BY ELECTRONIC MAIL**
The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana 70130

    Re:    MDL 2179: United States' Challenges to BP's Schedule I Privilege Claims; Order Regarding *In Camera* Inspection of BP's Claimed Privilege in Schedule I

Dear Judge Shushan:

    This letter responds to Robert Gasaway's July 19, 2012 letter to the Court seeking reconsideration of the Order Regarding *In Camera* Inspection of BP's Claimed Privilege in Schedule I (Rec. doc. 6904) ("Schedule I Privilege Order").  The United States submits this letter because BP's letter of late yesterday raised entirely new arguments (and new alleged facts) that were not included in its 19-page June 26, 2012 opposition to the United States' Schedule I privilege challenges (Rec. doc. 6810).  In its prior submission, BP devoted three single-spaced pages to arguing that it had properly asserted the attorney-client privilege over the challenged documents.  Now, after receiving what it believes is an unfavorable decision, BP presents the Court with new legal arguments, new legal citations, and new alleged facts in an attempt to change this Court's ruling.  In addition, for the first time, BP argues that it need not produce communications with third parties.  This should not be permitted, especially in light of BP's prior voluminous public and private submissions.  The United States responds to BP's new arguments below.

**The Attorney-Client Privilege is Strictly Construed**

    As this Court correctly recognized in its Schedule I Privilege Order, the attorney-client privilege ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.  *See* Schedule I Privilege Order at 2-3.

> Four elements are required to establish the existence of the attorney-client privilege: (1) a communication; (2) made between privileged persons; (3) in confidence; and (4) for the purpose of seeking, obtaining, or providing legal assistance to the client. Epstein at 65.  *Vioxx* finds five elements: (1) an attorney; (2) a client; (3) a communication; (4) confidentiality anticipated and preserved;

and (5) legal advice or assistance being the purpose of the communication. *Vioxx*, 501 F.Supp.2d at 795.

*Id*. at 4. Indeed, BP agrees that, "To be protected by attorney-client privilege, a document must embody communications made to attorneys solely for the purpose of seeking legal advice or received from counsel rendering such legal advice." *Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981)." *See* BP Parties' Mem. in Support of Their Motion to Compel Against Transocean (Aug. 22, 2011) (Rec. doc. 3788-1). All of the documents at issue here involve communications among non-attorneys. They do not satisfy these standards.

**Documents Prepared for Release to the Government are Not Privileged**

Documents prepared for release to the government, as well as drafts of those documents and communications regarding such drafts, are not protected by the attorney-client privilege. *See* Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, 254 (5th ed. 2007) (hereinafter "Epstein"); *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 414-15 (D. Md. 2005); *United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976) ("It is vital to a claim of privilege that the communication have been made and maintained in confidence. . . . Thus, courts have refused to apply the privilege to information that the client intends his attorney impart to others."). For example, "if the communication was made with the intention that the information be disclosed, courts have held that the requisite confidentiality was lacking ab initio." Epstein at 237.

Specifically, the attorney-client privilege does not apply to drafts of documents intended for public release, the information exchanged to aid in drafting such documents, or the emails containing such drafts and information. *See Neuberger*, 230 F.R.D. at 414; *see also United States v. (Under Seal)*, 748 F.2d 871, n.7 (4th Cir. 1984) (Explaining that, once a document is made public, "preliminary drafts of the document, and any attorney's notes containing material necessary to the preparation of the document [will not enjoy the privilege]. Copies of other documents, the contents of which were necessary to the preparation of the published document, will also lose the privilege."). Thus, the attorney-client privilege does not extend to draft documents or communications related to documents submitted to Congressman Markey, the National Commission, or the United States Coast Guard.

**Doc. No. 30** is a communication between non-attorneys exchanging information about flow rate reports for a document for public release. It is not attorney-client privileged. *See Neuberger*, 230 F.R.D. at 414; *(Under Seal)*, 748 F.2d 871, at n.7; Epstein at 254.

**Doc. No. 46** is a communication between non-attorneys exchanging factual information (flow rate estimates) for use in a document for public release. It is not attorney-client privileged. *See id*.

**Doc. No. 26** is a draft response to Congressman Markey's request prepared by David Rainey, a non-attorney. It is not attorney-client privileged. *See Neuberger*, 230 F.R.D. at 414; *(Under Seal)*, 748 F.2d 871, at n.7; Epstein at 133, 254.

**Doc. No. 28** includes an email between non-attorneys regarding review of a letter to Congress. The communication between non-attorneys and the draft response are not attorney-

client privileged.  *See Neuberger*, 230 F.R.D. at 414; *(Under Seal)*, 748 F.2d 871, at n.7; Epstein at 254.

**Doc. No. 45** is an email between non-attorneys seeking factual information regarding the diameter of openings of the leaks in and around the BOP for BP's response to Congress.  It is not attorney-client privileged.  *See id*.

**Doc. No. 51** is a draft presentation by Doug Suttles, a non-attorney, intended for presentation to the National Commission.  It is not attorney-client privileged.  *See* Epstein at 133, 254; Neuberger at 414; *(Under Seal)*, 748 F.2d 871, at n.7.

**Doc. No. 54** is a draft letter for public release regarding the Top Hat.  It is not attorney-client privileged.  *See Neuberger*, 230 F.R.D. at 414; *(Under Seal)*, 748 F.2d 871, at n.7; Epstein at 254.

**BP Has Not Demonstrated that Doc. No. 11 is protected by the Work Product Doctrine**

As the Court noted in its Schedule I Order, BP ***did not respond*** to the United States argument that BP should be required to produce documents that were communications with third parties.  Now, BP has taken the opportunity to brief the issue after the fact.  This should not be allowed.  If the Court chooses to entertain BP's late arguments, it is clear that BP still has not carried its burden to prove that the work product doctrine applies to Doc. No. 11.  Even given a second opportunity, BP has not articulated how the document in question is even work product to begin with.

The case law BP cites is inapposite.  In *PBC Mgt. v. Roberson*, the Court recognized that disclosure of work product to a third party "is *insufficient in itself* to waive the work product privilege," but found that the work product doctrine *did not protect any* of the materials at issue because they were not work product.  No. 10-798, 2010 WL 4553507, at *2 (E.D. La. Oct. 28, 2010) (emphasis added).  *PBC Mgt.* explains that a "document is only considered work product if it is primarily concerned with legal assistance," and "work-product protection only applies to materials prepared in anticipation of litigation which set "forth the attorney's theory of the case and his litigation strategy." *Id.* (internal citations omitted).  Based on the description BP provided, Doc. No. 11 is not work product.  Likewise, *Shields v. Sturm, Ruger & Co*. does not support BP's position.  864 F.2d 379 (5th Cir. 1989).  The *Shields* court held that compelled disclosure of a consulting expert's report by another court did not waive the work product protection in the instant proceeding, but also stated that "work product privilege *is* waived when the attorney requests the witness to disclose the information."  *Id*. at 383 (citing *Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1356 (5th Cir. 1983)).

According to BP's description, Doc. No. 11 is simply a request for information sent to, and a response from, a third party BP response contractor, Ole Rygg of Add Energy.  It is not work product but rather a request for information – factual information – regarding the response.  It does not contain the "mental impressions, conclusions, opinions, or legal theories of an

3

attorney," but simply is an inquiry regarding factual information by a non-attorney. *PBC Mgt.*, 2010 WL 4553507, at *2.  Accordingly, it is not protected by the work product doctrine.  *See id.*[1]

The United States appreciates the Court's consideration in this matter.

Respectfully submitted,

/s/ Scott M. Cernich
Scott M. Cernich

cc: Liaison & Coordinating Counsel
    Robert Gasaway

---

[1] To the extent the Court finds merit in any of BP's new arguments, the United States requests that the Court order BP to produce redacted versions of the documents so that the unprivileged underlying factual information may be discovered.

4