# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C.  20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

July 22, 2012

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

                Re:    BP Correspondence re Privilege Issues

Dear Judge Shushan:

       I must confess that BP heard you on Friday when you said the Court was "ready to roll" with its new look at privilege issues in light of BP's supplemental letter sent in on Thursday, July 19, without need for reply briefing.  BP understands the time and effort you and Mike have put into these issues and your desire to bring them to conclusion.

       Still, we have heard you say, even more, that the Court's main goal is to get these issues "right."  With that in mind, one lesson of the current round of Court-approved re-review is, perhaps, that information is best exchanged immediately when it can be employed by the Court before the Court renders a decision.  Accordingly, BP respectfully submits this letter — in an effort to identify, clarify, and streamline the privilege issues that remain contested between BP and the United States.

       Notably, the United States does not argue in its July 19 submission that it previously challenged attorney-client privilege for the documents now at issue.  We note that, because the United States did not include the documents among its sample challenges, BP did not advance arguments to support its claims of attorney-client privilege until July 19.

       Oddly, however, and in tension with its recent admission, the United States attempts to turn the tables by suggesting that BP's recent letter might inappropriately have raised new arguments with respect to attorney-client privilege: "BP's letter of late yesterday raised entirely new arguments (and new alleged facts) that were not included in its 19-page June 26, 2012 opposition to the United States' Schedule I privilege challenges (Rec. doc. 6810)."  (U.S. Ltr. at 1.)

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 22, 2012
Page 2

But as the Court recognized in its July 14 Order, "[t]he attorney-client privilege is not at issue" for Document Nos. 26, 28, 30, 45, and 46.  The United States' suggestion that BP should have raised attorney-client privilege issues earlier — for attorney-client privilege claims not even "at issue" — is thus bold indeed.

In any event, the Court has indicated that these procedural preliminaries are water under the bridge, and it is ready to roll on to the merits.  Hence, with the Court's indulgence, BP will now reply to the United States' contentions (many of them made for the first time) appearing in its July 20 letter-brief.

**I.      Attorney-Client Privilege (Doc. Nos. 26, 30, 45, 46, 51, and 54).**

The United States raises two arguments in opposition to BP's attorney-client privilege claims on Document Nos. 26, 30, 45, 46, 51, and 54.  ***First***, the United States contends that "the attorney-client privilege does not apply to drafts of documents intended for public release, or to the information exchanged to aid in drafting such documents, or to the emails containing such drafts and information."  (U.S. Ltr. at 2.)  ***Second***, the United States suggests that, where BP attorneys had to deputize non-attorney BP employees to facilitate the collection of potentially responsive information, the use of non-attorney employees undermines the attorney-client privilege.  Both of these unlikely contentions are inconsistent with controlling law.

      **A.      The United States' Position Regarding Legal Advice On Documents Intended For Public Release Is Inconsistent With (1) The Overwhelming Majority Of The Case Law (Including Cases From The Eastern District Of Louisiana); And (2) The United States' Own Privilege Log.**

The United States asserts that "the attorney-client privilege does not apply to drafts of documents intended for public release, the information exchanged to aid in drafting such documents, or the emails containing such drafts and information."  *Id.*  This position is highly suspect on its face, for it is tantamount to saying any MDL party may request every other party's draft documents and underlying information so long as those draft documents and underlying information relate to briefing or other submissions to the Court.

As one would expect, the United States contention is at odds with overwhelming case authority (including from the Eastern District of Louisiana), as well as the United States' own privilege logs.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 22, 2012
Page 3

> **1. The United States' Position Is Inconsistent with Case Law, and Would, if Accepted, Create a Stark Division of Authority in the Eastern District of Louisiana.**

The United States' position was considered — and rejected — in *In re Vioxx Products Liability Litigation*, 501 F. Supp. 2d 789, 802-803 (E.D. La. 2007).

In *Vioxx*, the court ruled that, in the context of responding to warning notices from a Government regulator, the attorney-client privilege covers "(1) the attorney's drafts of those responses, (2) communications in which the attorney sought information from corporate employees in her efforts to prepare those drafts, and (3) the responsive comments solicited from the corporate employees on the drafts. Following the trigger of the warning letter, every communication to and from the attorney and among corporate employees that were primarily in furtherance of legal assistance on that matter were considered privileged, even if the initial draft of the response was prepared for the lawyer by a non-lawyer." *Id.* at 802-03 (footnotes omitted).

BP cited *Vioxx* and this very quotation in its earlier brief. Nonetheless, the United States fails to respond to *Vioxx*, and, indeed, fails to recognize that the overwhelming majority of courts have adopted the same analysis of attorney-client privilege over draft submissions.

As the Seventh Circuit has persuasively explained almost a quarter century ago,

> [The United States'] line of argument confuses expectations about the *documents* with expectations about the *communications*. Rare is the case in which attorney-client conversations do not lead to some public disclosure. The criminal defense lawyer gathers information and formulates strategy in preparation for a trial; since the trial is public, does it follow that the antecedent communications are unprivileged? A lawyer writes a brief to be filed with the court; does it follow that the drafts of the brief are available to the adversary? … None of the prosecutor's arguments suggests that Feldberg, Walters, and World Sports anticipated (or should have anticipated) the disclosure of their conversations.

*In re Feldberg*, 862 F.2d 622, 629 (7th Cir. 1988).

Unsurprisingly, the overwhelming weight of case authority is consistent with *In re Feldberg*, and *Vioxx*.[1] As these cases make clear, the scope of the attorney-client privilege

---

[1] *See also, e.g., In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037 (2d Cir. 1984) ("[A]lthough some of the documents appear to be drafts of communications the final version of which might eventually be sent to other persons, and as distributed would not be privileged, we see no basis in the record for inferring that AG did not

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 22, 2012
Page 4

depends on the expectation of confidentiality over the communication, not merely the expectation of confidentiality over a different document; namely, the final public document for which the communication sets the table. To hold otherwise would be to accept the untenable proposition that drafts of all briefing, civil complaints, leases, and contracts, as well as prospectuses, patent applications, letter briefs, and government reports would have no privilege protection after the client decided to file the final document. To do so, would strike at the heart of the privilege by making clients wary of being open and candid when responding to attorney drafting suggestions.

      Here, it is self-evident that both BP and its counsel expected only the final draft of the various documents to become public, not any edits, drafts, internal advice, and other communications with attorneys and their deputies along the way. The rule in this regard is no different for a draft letter, testimony, or submission, such as those the United Sates now challenges, than for drafts of briefing filed with this Court. To the extent that there was a lack of expectation of confidentiality and waiver, it is as to the final letter only, just as parties expect only the final copies of a filed brief to become public. Here, there are no final drafts in the documents now before the Court, and there are no documents before the Court over which BP and its lawyers had anything other than a completely legitimate expectation of continued confidentiality and privilege (particularly given the E.D. La. *Vioxx* decision in 2007).

---

intend that the drafts — which reflect its confidential requests for legal advice and were not distributed — to be confidential."); *Muncy v. City of Dallas*, No. 3:99-CV-2960-P, 2001 WL 1795591, at *3 (N.D. Tex. Nov. 13, 2001) ("[T]he attorney-client privilege applies to all information conveyed by clients to their attorneys for the purpose of drafting documents to be disclosed to third persons and all documents reflecting such information, to the extent that such information is not contained in the document published and is not otherwise disclosed to third persons."); *Alexander v. FBI*, 198 F.R.D. 306, 312 (D.D.C., 2000) ("Drafts of documents that are prepared with the assistance of counsel for release to a third party are protected under attorney-client privilege."); *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 474 (S.D.N.Y. 1996) ("A client may intend to direct or permit the release of the final version of a document while still intending that his communications with his attorney prior to the finalization of the document remain confidential."); *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94-C897, 1995 WL 557412, at *2 (N.D. Ill. 1995) (even where the final document was public, an attorney's drafts are privileged when they are created as part of confidential communications); *Grupo Sistemas Integrales de Telecomicacion S.A. de C.V. v. AT&T Communications Inc.,* No. 92 Civ. 7862, 1995 WL 102679, at *1 (S.D.N.Y. Mar. 5, 1995) ("The discussion of the 'draft' was a confidential attorney-client communication; even if a complaint had eventually been filed (which did not occur), that act would not have waived the attorney-client privilege as to drafts."); *Ziemack v. Centel Corp.*, No. 92 C 3551, 1995 WL 314526, at *4 (N.D. Ill. May 19, 1995) (extending the protection of the privilege to drafts of proxy statements); *Apex Mun. Fund v. N-Group Sec.*, 841 F. Supp. 1423, 1428 (S.D. Tex. 1993) ("[P]reliminary drafts of documents and communications made between attorney and client during the drafting process are privileged .... Only those parts of attorney-client documents that ultimately appear in published documents are outside the privilege."); *In re U.S. Healthcare Inc. Sec. Litig.*, No. 88-0559, 1989 WL 11068, at *2 (E.D. Pa. Feb. 7, 1989) ("[T]he only discoverable information is that which is contained in the publicly filed documents.").

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 22, 2012
Page 5

Without mentioning the significant authority cited above (or the E.D. La. authority from *Vioxx*), the United States relies on a pair of cases constituting an unpersuasive minority view. (*See* U.S. Ltr. at 2 (*citing Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 414-15 (D. Md. 2005); U*nited States v. (Under Seal)*, 748 F.2d 871, n.7 (4th Cir. 1984), *vacated as moot on other grounds*, 757 F.2d 600 (4th Cir. 1985)).) Unsurprisingly, most courts reject the analysis of these cases, reasoning that it would destroy privilege protection in a large percentage of instances where legal assistance is rendered.

Given the force of this logic, it is unsurprising that the Fourth Circuit itself has limited *Under Seal*—one of the few authorities cited by the United States—to those situations where the client actually "intended his *communications with Counsel* to be published." *In re Grand Jury Subpoena*, 341 F.3d 331, 336 (4th Cir. 2003) (emphasis added) (holding that just because a client "may have answered a question [in a public form] in a particular way on the advice of his attorney does not subject the underlying attorney-client communications to disclosure"); *see id.* ("The underlying *communications* between Counsel and Appellant regarding his submission of Form I-485 are privileged, regardless of the fact that those communications may have assisted him in answering questions in a public document. Adopting the Government's reasoning would lead to the untenable result that any attorney-client communications relating to the preparation of publicly filed legal documents — such as court pleadings — would be unprotected."); *see also* 10 C. WRIGHT & A. MILLER, 24 *Fed. Practice & Procedure* § 5484 & nn. 267-69 (praising cases like *In re Grand Jury Subpoena* for drawing the "correct distinctions" and criticizing cases like *Under Seal* for "overlook[ing] the fundamental distinction upon which the privilege rests"). The United States cites *Under Seal* without even noting the Fourth Circuit's subsequent case law in *In re Grand Jury Subpoena* that significantly limits the case and brings it more into alignment with settled principles of attorney-client privilege.

The United States' reliance on *United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976), is similarly misguided. There, a criminal defendant sought to assert attorney-client privilege over handwriting specimens that he gave to his expert, as well as his expert's analysis of those specimens. *See id.* at 562. The Fifth Circuit unsurprisingly held that "[o]ne's style of handwriting is not an intrinsically confidential attribute," especially since defendant "himself had voluntarily disclosed his handwriting style to the government before he was ever interviewed by" the expert. *Id.* at 563. Treatises recognize that *Pipkins* stands for this straightforward proposition. *See, e.g.*, WRIGHT & MILLER § 5484 n.96 (citing *Pipkins* as holding that "handwriting exemplars given to attorney not privileged"); *The New Wigmore: A Treatise on Evidence* § 6.7.1 (citing *Pipkins* for proposition that "attorney may provide the authenticating testimony [for handwriting] without breaching any confidence" if the "attorney is not being asked to disclose the content of any such communications"); 1 *McCormick on Evidence* § 89 n.11 (citing *Pipkins* for the proposition that "identification of physical characteristics readily

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 22, 2012
Page 6

observable by anyone not within privilege"). *Pipkins* does not stand for the sweeping proposition that the contents of drafts of briefs or other public documents are not attorney-client privileged, as is readily confirmed by Judge Fallon's *Vioxx* rulings, which reach the opposite conclusion without even citing *Pipkins*.

The United States also repeatedly cites Edna Selan Epstein's *The Attorney-Client Privilege and the Work-Product Doctrine* (5th ed. 2007) ("Epstein").  But Epstein merely says that if documents are "prepared with the intention that they be forwarded to the government," then they are not confidential and so cannot be protected by either "attorney-client privilege" or the "work-product doctrine."  *See, e.g.*, *id.* at 254-55; *see also id.* at 237.  That principle, of course, is entirely consistent with *Vioxx*, and does not support the United States' much more sweeping argument that *confidential* draft documents are also not privileged.  To the contrary, Epstein *rejects* the United States' argument by acknowledging that "'drafts of communications'" *can* be privileged, *id.* at 255 (quoting *Grand Jury Subpoena Duces Tecum*, 731 F.2d at 1037); *see also id.* at 256 ("Even the release of a final report does not waive the privilege for prior drafts that may include confidential client communications.") (citing *Kidder*, 168 F.R.D. at 474 ).  In other words, Epstein not only does not support the United States' argument, it supports the Eastern District's (and BP's) view of the law.

### 2.    The United States' Position Is Inconsistent with its Own Privilege Log.

The United States' position — that the attorney-client privilege does not apply to "drafts of documents intended for public release, the information exchanged to aid in drafting such documents, or the emails containing such drafts and information" — is also inconsistent with its own privilege log.  The United States naturally has claimed attorney-client privilege for many documents related to public disclosures.  Here are just a few examples of many:

- Email re Latest Version; Internal communication transmitting and discussing communication with counsel for purposes of obtaining legal advice regarding proposed testimony before Congress (IES009-013024)
- Email re MMS to Develop Own Comments for House T&amp;I [sic] Request; Internal pre-decisional discussion of draft response to congressional inquiry (IIG015-034391, redacted text)
- Discussion of Reporters Questions and answer (IGS648-014139)
- Email re Inquiry from Wall Street Journal (IGS606-033570)
- Email re Draft Allen Directive to BP for Review (DSE001-015887)
- Email re Guidance to BP (LAL134-000548)
- Email re SENSITIVE Draft language from Nodal Team re Data sources; Internal communications between attorneys and USGS staff regarding final FRTG report

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 22, 2012
Page 7

for purposes of providing legal advice and in anticipation of litigation. (IGS635-020352)

To be clear, "drafts of documents intended for public release, the information exchanged to aid in drafting such documents, or the emails containing such drafts and information," can in fact be privileged for the reasons explained above. Both BP's and the United States' privilege logs therefore reflect this legal reality. But if the Court were to rule otherwise, all parties to this MDL, including the United States, would then be required to produce these materials.

### 3. The United States' Redaction Suggestion Is Both Inconsistent with the Law and with the United States' Privilege Log.

The United States also suggests that BP be required to "redact" attorney-client privileged documents. Such redaction is not justified because the documents are privileged, as discussed above.

But if any such redaction rule were to be applied, it too would require the redaction of many documents appearing on the United States' and other parties' privilege logs that constitute "drafts of documents intended for public release, the information exchanged to aid in drafting such documents, or the emails containing such drafts and information."

### B. Communications By BP Employees Assisting BP Attorneys Are Protected By Attorney-Client Privilege.

The United States next suggests that, where BP attorneys had to deputize non-attorney BP employees (such as Jeffrey Morgheim) to facilitate the collection of potentially responsive information, the use of non-attorney employees undermines the attorney-client privilege. (U.S. Ltr. at 2-3.)

The United States does not cite any authority in support of its position, nor could it as caselaw is uniformly to the contrary. *See United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961); *Gucci America, Inc., v. Guess?, Inc.*, 271 F.R.D. 58, 70-74 (S.D.N.Y. 2010); *Ferko v. National Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 134 (E.D. Tex. 2003). Again, the United States' privilege log likewise contains numerous entries involving non-attorneys.

## II. Attorney Work Product (Doc. No. 11)

The United States raises two arguments with respect to Doc. No. 11: (1) although the United States does not dispute that work-product protection was not waived with respect to Doc. No. 11, the United States contends that BP did not previously address the waiver argument; and

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 22, 2012
Page 8

(2) the United States contends that Doc. No. 11 did not constitute work product to begin with. Both positions are incorrect.

### A.     BP Did Previously Address The Waiver Argument.

The United States incorrectly asserts that:

> BP *did not respond* to the United States argument that BP should be required to produce documents that were communications with third parties. Now, BP has taken the opportunity to brief the issue after the fact. (U.S. Ltr. at 3.)

The United States argument is demonstrably incorrect. In its June 26, 2012 brief, BP stated:

> [T]he scope of the attorney work product is not altered merely because a third party may have been involved in the creation of a document. "[M]ore than once, the Fifth Circuit has held that the mere voluntary disclosure of work-product to a third person is insufficient in itself to waive the work product privilege." *PBC Mgmt., Inc. v. Roberson*, No. 10-798, 2010 WL 4553507, at *2 n.2 (E.D. La. Oct. 28, 2010) (citing *In re Grand Jury Proceedings*, 43 F.3d 966, 970 (5th Cir. 1994); and *Shields*, 864 F.2d at 382).

(BP Resp. Br. (June 26, 2012) at 8.)

Notably, while the United States contends (incorrectly) that BP did not previously make the waiver argument, it does not dispute that BP's waiver argument is correct. Here again, this is not surprising, given that the United States faces the same waiver issues, and the Court found that the United States has not waived its claims of work-product protection for certain communications with third-party members of the FRTG plume team (not all of whom, to BP's knowledge, were then retained as experts). *See, e.g.*, Dkt. No. 6905, at 2 (discussing NOA023-001598).

### B.     Document No. 11 Is Work Product.

Although it contests waiver, the United States also argues in its July 20 submission — for the first time — that Document No. 11 was not work product "to begin with."

But as the Court can easily confirm, Document No. 11 is a request for information for the "Flow Rate Team." The Court has already ruled that the Flow Rate Team was an attorney-directed project that began on July 18, 2010, and that it was an "attorney-client privileged investigation" entitled to work-product protection. (Dkt. No. 6904, at 14-24.) Again, the fact

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 22, 2012
Page 9

that a non-attorney was deputized by attorneys to assist in providing information to the Flow Rate Team does not change the analysis. *See* authorities cited *supra* at 7.

### C. Redaction of Document No. 11 Is Not Appropriate.

Finally, the United States requests that the Court order "BP to produce redacted versions of the documents so that the unprivileged underlying factual information may be discovered." (U.S. Ltr. at 3.)

Document No. 11 does not consist of facts but a request for a specific type of data as part of Flow Rate Team work that the Court has already ruled is privileged. The Court ruled that Document No. 15, which relates to a similar type of request, is work product in its entirety. In any event, even assuming that Document No. 11 consisted of facts and not a request for data, an attorney's compilation of documents is not discoverable absent a showing that the underlying facts themselves could not be obtained without undue hardship in discovery, a showing that the United States does not even try to make here. *See In re International Systems and Controls Corp. Securities Litigation*, 693 F.2d 1235, 1241 (5th Cir. 1982) (party's compilation of non-privileged documents for litigation was work product).

In closing, BP again asks the Court's indulgence for this submission. We hope this letter has clarified these issues (and prevented any need for yet another round of re-review). We would of course be pleased to answer any questions the Court may have about this letter.

Sincerely,

Robert R. Gasaway

cc (via electronic mail):

| | |
|---|---|
| R. Michael Underhill | A. Nathaniel Chakeres |
| Steve O'Rourke | Abigail Andre |
| Sarah D. Himmelhoch | Joel M. Gross |
| Scott M. Cernich | Allison B. Rumsey |
| Robin L. Hanger | Plaintiffs' Liaison Counsel |
| Thomas A. Benson | Defense Liaison Counsel (dsc2179@liskow.com) |
| Bethany Engel | |