UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL by the OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" in the | * | |
| GULF OF MEXICO, on APRIL 20, 2010 | * | CIVIL ACTION NO. 2:10-MD-02179 |
| | | SECTION:  J |
| | * | |
| THIS DOCUMENT RELATES TO: | * | JUDGE BARBIER |
| | | MAG. JUDGE SHUSHAN |

Applies to: All cases in B3 Pleading Bundle
*********************************************************************

**PLAINTIFF MALCOLM COCO'S SUPPLEMENTAL OPPOSITION TO  NALCO's MOTION FOR SUMMARY JUDGMENT**
(Pertaining to July 24, 2012 Order ordering filing of NALCO Exhibits "D" and "F")

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Malcolm Alphonse Coco, to supplement his Opposition (Doc # 6705; June 18, 2012) to NALCO's Motion For Summary Judgment. (# 6541; filed May 18, 2012).[1]

This Supplemental Opposition is  limited to discussion of Exbibits "D" and "F" to NALCO's Motion. Both were originally filed under seal, then refiled on July 18 (as #s 6928-1 and 6928-2) with partial readactions, and on July 24 this Court ordered (#8681) that the redacted  version be filed as unsealed exhibits.

These exhibits are NOT the applications to EPA for approval of Cerexit, despite anyhint NALCO may insinuate or intimate:

-Ex. "D" was NALCO's Application to EPA for approval of *Corexit 9500, heavily redacted*.

Ex. "F", the much  more important of these documents (<u>for what it omits</u> regarding the 9527, the version with the highly toxic *butoxyethylene*, contains  only a fleeting totally irrelevant mention of 9527/*butoxyethelene*

---

[1] Mr. Coco is the Plaintiff in <u>Malcolm Alphonse Coco, III v. BP, Nalco Company, et al.</u> (11-cv-946).

1

Although these exhibits both still contain redactions, they reveal the following information that shows that NALCO is not entitled to summary judgment:

1. NALCO, regarding both Exhibit "D" (its application to EPA for approval of Corexit 9500) and Exhibit "F" (its application to EPA foe approval of Corexit 9527, the verision with *butoxyethanol*)  <u>still</u> has not shown that it provided the EPA with all of the information  required under 40 C.F.R., Part 300 ("Environmental Protection Agency; National Oil And Hazardous Substances Pollution Contingency Plan"); Sections 915 ("Data Requirements")[2];

2. In none of these filings has  NALCO shown that it ever advised EPA of the severe kidney and liver damage that could be caused by *butoxyethanol;*

---

[2] NALCO still has not offered any proof that it complied with 915 (c), (d) and (e), which require:

(c) The submitter may assert that certain information in the technical product data submissions, including technical product data submissions for sorbents pursuant to § 300.915(g)(3), is confidential business information. EPA will handle such claims pursuant to the provisions in 40 CFR part 2, subpart B. Such information must be submitted separately from non-confidential information, clearly identified, and clearly marked "Confidential Business Information." If the submitter fails to make such a claim at the time of submittal, EPA may make the information available to the public without further notice;

(d) The submitter must notify EPA of any changes in the composition, formulation, or application of the dispersant, surface washing agent, surface collecting agent, bioremediation agent, or miscellaneous oil spill control agent. On the basis of this data, EPA may require retesting of the product if the change is  likely to affect the effectiveness or toxicity of the product; and

(e) The listing of a product on the NCP Product Schedule does not constitute approval of the product. To avoid possible misinterpretation or misrepresentation, any label, advertisement, or technical literature that refers to the placement of the product on the NCP Product Schedule must either reproduce in its entirety EPA's written statement that it will add the product to the NCP Product Schedule under §300.920(a)(2) or (b)(2), or include the disclaimer shown below. If the disclaimer is used, it must be conspicuous and must be fully reproduced. Failure to comply with these restrictions or any other improper attempt to demonstrate the approval of the product by any NRT or other U.S. Government agency shall constitute grounds for removing the product from the NCP Product Schedule.

3. Regarding Corexit 9500 (Exhibit "D"), the testing company NALCO used for its 1994 report to EPA was United Sates Testing Company, Inc. U.S. Testing has a lengthy history of involvement in presenting fraudulent test data to the federal government.[3]

4. Exhibit "F" is nothing more than brief follow-up letter to EPA. It does not remotely support NALCO's contention that it complied with the CFR requirements undersigned counsel has previously discissed., NALCO <u>STILL</u> has not shown its application to EPA for the Corext 9527/*butoxyethanol*, even a redacted version. Given one opportunity after another NALCO still has not shown that it even told EPA of the highly toxic dangers of 9527/butoxyethanol to humans.

---

[3] Although undersigned counsel has not conducted discovery of NACO, a quick review of the internet revealed numerous tricles and documents regarding U.S. Testing's history of defrauding EPA> Among them:

"The E.P.A. temporarily suspended United States Testing from getting new contracts in 1989 and 1990, saying the company had lied about test results, forged records and improperly disposed of hazardous samples". "*Doubts Remain AfterLab Loses Nuclear Contract*" *New York Times*, June 3, 1990. Avaialble at: http://www.nytimes.com/1990/06/03/us/doubts-remain-after-lab-loses-nuclear-contract.html?pagewanted=all&src=pm

"Back in 1991, United States Testing Company pleaded guilty to falsifying tests for the Environmental Protection Agency in the late '80s" *"An Industrial Testing Company Wtht A Shady Past".* Available at: http://hoboken411.com/archives/37625

"U.S. EPA suspeneded U.S. Testing from federal contracts, April 25, 1990. The notice of suspension alleges that the management of U.S. Testing "conspired, directed, carried out, and otherwise condoned a scheme to defraud the U.S. government…. The notice also alleges that this scheme "resulted in thesubmission of false, inaccurate, and unreliable test results and data…. U.S. Testing admitted wrongdoing and pleaded guilty to a felony on April 17, 1991. *("Hanford Special Exposure Cohort Petition Evaluation Report", U.S. National Institute for Occupational Safety and Health*; p. 18) (available at: www.cdc.gov/niosh/ocas/pdfs/abrwh/pres/hnfrd0511.pdf )

"On April 24, 1990, EPA Suspended U.S. Testing Inc., a major participant in EPA's Contract Laboratory Program….The Comnpalint initiated by Region X's Suspension and Disbarment Team alleged theat U.S> Testing's laboratories in Richland, WA and Hoboken, NJ submitted false and unreliable data to EPA…" (Available at: www.epa.gov/…/reports/accomplishments/oeca/fy90accomp-rpt.pdf ) ((Attached as Exhibit 1)

5. Also regarding Exhibit "F" (Corexit 9252/*butoxyethanol*) NALCO still has not revealed who "tested" it, as required by Section 915(a).[4]

6,7, and 8. Finally, along with Subsection "a"(above) of Section 915, other sections of 40 C.F.R. Sec. 300.915 that NALCO has not provided any proof of complying with include "c", "d", and "e":

> (c) The submitter may assert that certain information in the technical product data submissions, including technical product data submissions for sorbents pursuant to § 300.915(g)(3), is confidential business information. EPA will handle such claims pursuant to the provisions in 40 CFR part 2, subpart B. Such information must be submitted separately from non-confidential information, clearly identified, and clearly marked "Confidential Business Information." If the submitter fails to make such a claim at the time of submittal, EPA may make the information available to the public without further notice;
>
> (d) The submitter must notify EPA of any changes in the composition, formulation, or application of the dispersant, surface washing agent, surface collecting agent, bioremediation agent, or miscellaneous oil spill control agent. On the basis of this data, EPA may require retesting of the product if the change is likely to affect the effectiveness or toxicity of the product; and
>
> (e) The listing of a product on the NCP Product Schedule does not constitute approval of the product. To avoid possible misinterpretation or misrepresentation, any label, advertisement, or technical literature that refers to the placement of the product on the NCP Product Schedule must either reproduce in its entirety EPA's written statement that it will add the product to the NCP Product Schedule under § 300.920(a)(2) or (b)(2), or include the disclaimer shown below. If the disclaimer is used,

---

[4] Section 915(a) sates:

   *(12) The technical product data submission shall include the identity of the laboratory that performed the required tests, the qualifications of the laboratory staff, including professional biographical information for individuals responsible for any tests, and laboratory experience with similar tests. Laboratories performing toxicity tests for dispersant toxicity must demonstrate previous toxicity test experience in order for their results to be accepted. It is the responsibility of the submitter to select competent analytical laboratories based on the guidelines contained herein. EPA reserves the right to refuse to accept a submission of technical product data because of lack of qualification of the analytical laboratory, significant variance between submitted data and any laboratory confirmation performed by EPA, or other circumstances that would result in inadequate or inaccurate information on the dispersing agent.*

it must be conspicuous and must be fully reproduced. Failure to comply with these restrictions or any other improper attempt to demonstrate the approval of the product by any NRT or other U.S. Government agency shall constitute grounds for removing the product from the NCP Product Schedule.

**CONCLUSION:**

It is respectfully submitted that NALCO's Motion for Summary Judgment be denied.

    Respectfully submitted,

*/s/ Daniel E. Becnel, Jr.*
Daniel E. Becnel, Jr. (2926)
BECNEL LAW FIRM, LLC
106 W. SEVENTH ST.
P.O. DRAWER H
RESERVE, LA 70084
(985) 536-1186
dbecnel@becnellaw.com

Attorney for Plaintiff in:
*Malcolm Alphonse Coco v BP, NALCO et al.*
*(*11-cv-946)

CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this this 1st day of August, 2012.

    */s/ Daniel E. Becnel, Jr.*