# Exhibit 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| IN RE: | OIL SPILL by the OIL RIG | § | MDL NO. 2179 |
| | "DEEPWATER HORIZON" | § | |
| | in the GULF OF MEXICO, | § | |
| | on APRIL 20, 2010 | § | SECTION: J |
| | | § | |
| This Document Relates To: ALL CASES | | § | |
| | | § | JUDGE BARBIER |
| | | § | MAG. JUDGE SHUSHAN |
| | | § | |
| | | § | |

**PLAINTIFFS' INTERROGATORIES, REQUESTS FOR
PRODUCTION, AND REQUESTS FOR ADMISSIONS TO BP EXPLORATION AND
PRODUCTION, INC.**

**NOW COME** Plaintiffs, State of Tamaulipas, Veracruz and Quintana Roo of the

Republic of Mexico, and, pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil

Procedure, serve the following requests upon BP Exploration and Production, Inc. and request

that responses be served upon Plaintiffs' Counsel on or before August 24, 2012.

**INSTRUCTIONS**

(a)    Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these
interrogatories, requests for admissions, and requests for production are continuing in nature so
that if, after answering, you acquire additional responsive knowledge or information or
determine that an answer you provided was false, incomplete, or misleading, Plaintiffs direct that
you serve supplemental or amended answers as soon as reasonably possible after acquiring such
additional knowledge or information.   Furthermore, documents or electronically stored
information ("ESI") prepared prior to or subsequent to the period covered by these
interrogatories, but which nonetheless relate or refer thereto, are to be included in your response.

(b)    As defined below, you are to produce all documents in your control.  Production
of documents shall be in conformance with all procedures and formats set forth by the MDL-
2179 Court.

(c)    Pursuant to Rule 34(b)(1)(c), all ESI responses to these discovery requests must
be produced in native file format, including embedded data or metadata associated with each
electronic file.   At a minimum, you shall include in your ESI production all metadata fields

recommended by the Electronic Discovery Reference Model ("EDRM") and hash values in the format set forth by the EDRM.  Furthermore, if any responsive ESI is not in a "reasonably usable form," you must notify Plaintiffs' Counsel immediately, in order to confer regarding any translation necessary to put the ESI in a reasonably usable form.  Any images of documents which exist in hard copy paper format shall be provided as single-page Tagged Image File Format ("TIFFs" or ".tiff format").  All images generated from hard copy paper documents shall be scanned as black and white images at 300 d.p.i. resolution and shall be saved and produced in a Group 4 compression single-page "TIFF" format and reflect, without visual degradation, the full and complete information contained on the original document. All images generated from native electronic documents with the exception of source code, dynamic web pages, and web content, shall be saved electronically (or "printed") in a Group 4 compression single-page "TIFF" image that reflects the full and complete information contained on the original document.  The parties shall produce a "load file" that is compatible with a commercially available document management software, such as Concordance, to accompany the images, which load file shall include information about where each document begins and ends to facilitate the use of the produced images through a document management or litigation support database system.

(d)      All produced documents shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto each image at a location that does not obliterate, conceal, or interfere with any information from the source document.  No other legend or stamp will be placed on the document image other than a confidentiality legend (where applicable) redactions (consistent with the Stipulated Protective Order in this matter, or any other protective orders agreed to in the future), and the Bates Number identified above.  The confidential legend shall be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document. With respect to the identification of files produced in their native format, the parties shall confer on an appropriate method for applying a unique identifier to each file produced.

(e)      Each page image file shall be named with the unique Bates Number of the page of document, followed by the extension ".TIF". In the event the Bates Number contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name.

(f)      If you refuse to respond to any of these interrogatories or requests for production based on a claim of privilege, pursuant to Federal Rule of Civil Procedure 26(b)(5), you must provide a "Privilege Log" setting forth, with specificity, a statement of the claim of privilege and all facts relied upon in support of that claim, including the parties involved, any dates involved, the relevant subject matter of the privileged material, any documents or ESI supporting the privileged information, including the dates, authors, recipients, title, and subject matter, and present location of any documents or ESI involved. In the case of attorney work product privilege, you must also identify the litigation for which the work product was prepared.

(g)      If you allege that any request is in any manner ambiguous, you are instructed to describe in detail the reasons for your allegations, including but not limited to, each interpretation to which you allege the specific request for discovery is subject.  Notwithstanding

any of the foregoing, you are instructed to respond, to the best of your ability, to the request for production and produce the documents requested.

(h)     If you or any of your attorneys, agents, or representatives at any time had possession or control of a document requested and that document has been lost, destroyed, or purged or is not presently in your possession, custody, or control, identify the document and describe the circumstances surrounding the loss, destruction, purge, or separation from your possession, custody, or control, indicating the dates that those circumstances occurred.

## DEFINITIONS

As used herein, the following terms are defined as follows:

(i)     "Deepwater Horizon" means, without limitation, the mobile offshore drilling unit (MODU) of that name involved in the drilling of the Macondo Well, or any component thereof, as well as any vessel, vehicle, aircraft, or other equipment used in connection with the process of drilling, developing, exploring for and/or producing oil and gas resources.

(j)     "Macondo Well" means the Macondo Prospect (Mississippi Canyon Block 252, abbreviated MC252) an oil and gas prospect in the Gulf of Mexico, off the coast of Louisiana. The prospect was the site of the Deepwater Horizon drilling rig explosion in April 20,EEZ 2010.

(k)     "Incident" refers to the explosion that occurred on the Deepwater Horizon on or around April 20, 2010.

(l)     "Oil spill" refers to all releases, leaks, or emanations of oil, hydrocarbons, gases, and/or other materials of any kind (regardless of their condition) that flowed into the Gulf of Mexico from the Macondo Well or the formation into which the Macondo Well was drilled at any time on or since April 20, 2010 including, but not limited to, any dispersants, chemicals, biological materials, or substances added to same by any means at any time and also includes, but is not limited to, any part(s) of said Oil spill.

(m)     "EEZ" relates to or refers to the Exclusive Economic Zone in the Gulf of Mexico.

(n)     "Plume" refers to any cloud, combination, gathering, concentration, mass, and/or collection of oil, hydrocarbons, gases, and/or other materials of any kind (regardless of their condition or altered state and regardless of whether on the surface or below the surface of the water or both and regardless of whether visible, microscopic, or otherwise) that originated (in whole or in part) from the Macondo Well or the formation into which the Macondo Well was drilled at any time on or since including, but not limited to, any such cloud, combination, gathering, concentration, mass, and/or collection containing or comprised of (in whole or in part) any of the following:

        i.        dispersants, chemicals, biological materials, or substances added to same by any means at any time;

        ii.       degraded oil, hydrocarbons, gasses, dispersants, or other materials;

iii.      droplets of oil, dispersants, hydrocarbons, gases, and/or other materials;

iv.      encapsulated oil, hydrocarbons, gases, and/or other materials or items;

v.      elements, components, and/or particles of oil, hydrocarbons, dispersants, gases, and/or other materials or items;

vi.      weathered oil, hydrocarbons, dispersants, gases, and/or other items added to them;

vii.      oil, hydrocarbons, gases, dispersants, and/or any item added to them, regardless of whether their components, elements, concentration, footprint, composition, or form was affected or changed by weather, sun, motion, time, currents, temperature, water, and/or any other factor(s);

viii.      Globules of oil, dispersants, hydrocarbons, and/or gases;

(o)     "Clean up" refers to any efforts by you to remove, dispense, clean, mitigate, minimize, collect, or eliminate any oil, hydrocarbons, gases, or other materials of any kind that have been released, leaked, or have emanated into the Gulf of Mexico from the Macondo Well since April 20, 2010.

(p)     "Relevant time period" refers to the time period from April 20, 2010 through the current date.

(q)     "Defendant," "you," "your," "your company" or "BP" refers to, without limitation, the interests of BP Exploration and Production, Inc. including relevant predecessors, successors, subsidiaries, departments, divisions or affiliates, and including, without limitation, any organization or entities in which BP has a ten percent (10%) or greater ownership interest, together with all current and former directors, officers, employees, agents, representatives, or persons acting, or purporting to act, on its behalf.

(r)     "Cameron" refers to, without limitation, the interests Cameron, Cameron International, Cameron International Corporation, Cooper Cameron Corporation, and any of its domestic or international predecessors in interest, successors in interest, subsidiaries, divisions, subdivisions, affiliates, and including, without limitation, any organization or entities in which Cameron has a ten percent (10%) or greater ownership interest, together with all current and former officers, directors, employees, representatives, independent contractors, consultants, attorneys or agents, whether present or former.

(s)     "Halliburton" refers to, without limitation, the interests of Halliburton, any entity names and any variations thereof of that entity, including Halliburton Energy Services, Inc., any predecessors, successors, parent organizations, subsidiaries, departments, divisions, affiliates,

and branches, any organization or entity which Halliburton manages, controls or subcontracts, and including, without limitation, any organization or entities in which Halliburton has a ten percent (10%) or greater ownership interest, together with all current and former directors, officers, employees, agents, representatives, attorneys, contractors, subcontractors, and persons acting or purporting to act on its behalf.

(t)      "Transocean" refers to, without limitation, Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc., as owners, managing owners, owner's pro-hac vice, and/or operators of the MODU Deepwater Horizon.

(u)      "Person" refers to, without limitation, any and every natural individual, each and every association, partnership, joint venture, corporation, professional corporation, trust and any and every other identifiable entity.

(v)      "Employee" refers to, without limitation, any current or former officer, director, executive, manager, secretary, staff member, messenger or other person who is or was employed or subcontracted by you.

(w)      "Investigation Team" refers to any internal investigation team utilized by you.

(x)      "Government" refers to, without limitation, any branch, department, or agency of federal or state government, including the United States Coast Guard, Minerals Management Service, Bureau of Ocean Energy Management, Office of Natural Resources Revenue, Environmental Protection Agency, Senate Committee on Energy and Natural Resources and House Committees on Energy and Commerce, Chemical Safety Board, the Department of the Interior, National Oceanic and Atmospheric Administration, Department of Energy, and Joint Investigation team, including any committee, subcommittee, or advisory committee thereof, together with all current or former officials, directors, staff members or other persons employed by the government, or purporting to act on its behalf.

(y)      "Communication" means any writing transmitted between persons or any oral conversation of any kind or character, including, by way of example and without limitation, personal conversations, telephone conversations, letters, meetings, memoranda, telegraphic, telex, computer and facsimile communications or transmittals of documents, ESI (as defined in section (cc)) and all documents concerning such writings or oral conversations. "Communication" as used herein specifically includes internal writings, oral conversations or meetings among the officers, board members, employees or other representatives of any defendant.

(z)      "Statement" should be construed as any written or graphic statement signed or otherwise adopted or approved by the person making it, any stenographic, mechanical, electrical, or other recording or transcription thereof which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

(aa)    "Meeting" refers to, without limitation, any assembly, convocation, encounter or contemporaneous presence of two or more persons for any purpose, whether planned or scheduled in advance, including written exchanges through internet/web based chat, including AOL Instant Messenger$^{TM}$, or similar programs, electronic "bulletin board" programs, or internet/web based video chat, including Skype$^{TM}$, or similar programs.

(bb)    "Document" refers to, without limitation, the original and all non-identical copies of all writings, including any and all drafts, alterations and modifications, changes and amendments of any of the foregoing whether handwritten, typed, printed or otherwise produced in any format including, but not limited to, paper or ESI.  This definition also includes, without limitation, books, records, maps, charts, manuals, statements, minutes, letters, correspondence, memoranda, legal pleadings, calendars, diaries, travel records, lists, schedules, press releases, directives, agreements, contracts, print-outs, studies, reports, analyses, results of testing or experiments, summaries, records of telephone conversations, telegrams, notes, reports, compilations, notebooks, workpapers, satellite photographs, satellite images, graphs, graphics, transcripts, charts, blueprints, timelines, pamphlets, brochures, circulars, manuals, instructions, ledgers, drawings, sketches, photographs, videotapes, film and sound reproductions, computer discs (including but not limited to, CDs, CD-Rs, DVDs, DVD-Rest, floppy discs, hard discs and hard drives), flash drives, pen drives, thumb drives, programming instructions, sales, advertising and promotional literature, agreements or minutes of meetings, telephone conversations or other conversation or communication  in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, officers, directors, shareholders, employees, agents, representatives and attorneys.  This definition also includes non-printed matter such as voice records and reproductions, film impressions, photographs, videos, negatives, slides, microfilms, microfiches, e-mail, and other things that document or record ideas, words or impressions.  The term "document" further includes all punch cards, tapes, disks, or records used in electronic data processing, together with the programming instructions and other written materials necessary to understand or use such punch cards, tapes, disks or other recordings, and further includes ESI (as defined in section (ff)) data or data compilation in electronic or other form that can be printed through proper programming or decoding of the electronic or mechanical data storage facility, including metadata.

(cc)    "Electronically stored information" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting (of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital or other means.  ESI includes, by way of example only, computer programs (whether private, commercial, or work-in progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full email aliases (not merely "display names"), electronic calendars, IM logs, PBX logs, documents management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or fragment.  Electronically

stored information includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, EPROM, PROM RAM and ROM, on or in any other vehicle for digital data storage and transmittal.  The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

(dd)    **"**Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

(ee)    "Privilege log" should be construed as a listing of each document for which a privilege is claimed, which should include with specificity, the title of the document, the nature of the privilege or protection asserted, the author and date of the document, the identity of all intended recipients of the document, any documents or ESI supporting the privileged information, title and subject matter, present location of any documents or ESI involved, and a description of how you contend the alleged privilege or other protection applies. Any Privilege log that you submit must also comply with any Case Management Order entered in this case that governs Privilege Logs.

(ff)    "Control" refers to ownership, possession, or custody of the document, or the right to secure the document or copy thereof from any person or public and private entity having physical possession thereof.

(gg)    "Relating to," "Related to," "Referring to," "Regarding," "Concerning" or "With respect to" refers to, without limitation, the following concepts: discussing, evidencing, describing, referencing, mentioning, reflecting, concerning, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting or otherwise involving, in whole or in part.

(hh)    "Identify" when used in reference to a person means to state the person's:

(1) Full name;

(2) Social security number;

(3) Present or last known address;

(4) Office, home, cellular, and facsimile telephone numbers;

(5) Present or last known employment position, including the employer name; and

(6) Job description, title, responsibilities, and business affiliation for the relevant time period.

(ii)    "Identify" when used in reference to a document or ESI means to state:

(1) The type of document or ESI;

(2) Its date;

(3) Its author(s) and author(s) address(es), including every author involved, whether or not such person signed the document;

(4) Its subject matter or response;

(5) Its present location or custodian;

(6) Every person to whom such document or ESI, or any copy thereof, was given or sent;

(7) Every person known to you to have received the document or information, or to have learned the substance of its contents; and

(8) If any such document or ESI was, but is no longer, in your possession or subject to your control, state what disposition was made of it.

(jj)    "Identify" when used with respect to a communication other than a writing means to state:

(1) The full name of any person who was a party to the communication;

(2) The type of communication, e.g., telephone conversation, letter, telegram, teletype, telecopy, written memorandum, face-to-face conversation, or any other form ; and

(3) The full name of any persons participating therein, along with the date, duration, location(s) and the substance of the communication.

(kk)    "And" as well as "Or" should be construed either disjunctively or conjunctively so that each request is given its broadest possible application.  If, for example, a request calls for information about "A" or "B", you should produce all information about A and all information about B, as well as all information about collectively A and B.  In other words, both "and" and "or" should be read as "and/or".

(ll)    "Any" should be construed, when possible, to mean "any and all."

(mm)   "Including" is used to emphasize the type of information requested and should not be construed as limiting the interrogatory or requests for production in any way.  Including should be read as "including, but not limited to."

(nn)   "Each" should be construed to include the word "every," and "every" should be construed to include the word "each."

(oo)   A plural noun or pronoun should be construed as a singular noun, and a singular noun should be construed as a plural noun or pronoun, so that each request should be given its broadest possible application.

(pp)   The use of a verb in any tense should be construed to be the use of a verb in all other tenses so that each request should be given its broadest possible applications.

(qq)   Words of one gender shall be construed to include words of all genders so that each request in the request for production of documents shall be given its broadest possible application.

(rr)   Definitions provided herein apply to any grammatical variance of the term or phrase defined.

(ss)   The foregoing Definitions apply regardless of whether the word, term, or words are in quotation marks or not.

# INTERROGATORIES

**Interrogatory No. 1**

Identify any person or persons who observed, tracked, mapped, photographed, and/or recorded the movement, direction, and/or flow of the Oil Spill or any part of it during the relevant time period.

**Interrogatory No. 2**

Identify any person or persons who observed, tracked, mapped, photographed, and/or recorded the movement, direction, and/or flow of "plume" during the relevant time period.

**Interrogatory No. 3**

Identify and describe any Oil Spill within the Mexican EEZ during the relevant time period, providing the following information:

A.    the coordinates of same or if the coordinates are not available or unknown the approximate location of same;
B.    the date it was first observed or otherwise became known to you;
C.    the size of the Oil Spill;
D.    Identify all persons who observed, mapped, tracked, or witnessed the Oil Spill.

**Interrogatory No. 4**

Identify and describe any Plume within the Mexican EEZ during the relevant time period, providing the following information:

    A.    the coordinates of same or if the coordinates are not available or unknown the approximate location of same;

    B.    the date it was first observed or otherwise became known to you;

    C.    the size of the Plume;

    D.    Identify all persons who observed, mapped, tracked, or witnessed the Plume.

**Interrogatory No. 5**

Describe in detail the final destinations and/or locations of all portions of the Oil Spill and in so doing, provide the following information:

    A.    the coordinates of the locations or destinations of every portion of the Oil Spill or if the coordinates are not available or unknown the approximate location of same;

    B.    the date the final destinations or locations were first observed or otherwise became known to you;

    C.    the size of the Oil spill at each location or destination;

    D.    Identify all persons who observed, mapped, tracked, or witnessed the Oil Spill at the locations/destinations identified.

**Interrogatory No. 6**

Describe in detail the final destinations and/or locations of all portions of the plume and in so doing, provide the following information:

    A.    the coordinates of the locations or destinations of every portion of the plume or if the coordinates are not available or unknown the approximate location of same;

    B.    the date the final destinations or locations was first observed or otherwise became known to you;

    C.    the size of the plume at each location or destination;

    D.    Identify all persons who observed, mapped, tracked, or witnessed the plume at the locations/destinations identified.

**Interrogatory No. 7**

Please identify the persons responsible for observing, tracking, photographing, mapping, and/or recording the movement, flow, direction, location, and/or movement of the Oil Spill or any part of it.

**Interrogatory No. 8**

Please identify the persons responsible for observing, tracking, photographing, mapping, and/or recording the movement, flow, direction, location, and/or movement of any plume or any part of it.

**Interrogatory No. 9**

Describe any efforts or activities you undertook to prevent, impede, or delay the movement of the Oil Spill or any part of it toward the border of the Mexican Exclusive Economic Zone.

**Interrogatory No. 10**

Describe in detail any expedition, excursion, mission, effort, and/or activity to take, recover, or obtain (directly or indirectly) samples of water, dispersants, sediments, oil, residue, and/or remnants of the Oil Spill or any part of any plume in the Gulf of Mexico, and as to each, provide the following:

     A.     The purpose or function of the activity and a description of the activities;
     B.     Identify the person in charge of said activity;
     C.     The nature of the samples obtained;
     D.     The results, analysis, or conclusions regarding the samples;
     E.     The locations and depths where the samples were taken;
     F.     The dates the samples were taken.
     G.     Identify any laboratory or other person who conducted any analysis or tests on the samples.

**Interrogatory No. 11**

Describe in detail any expedition, excursion, mission, effort, and/or activity to take, recover, or obtain (directly or indirectly) samples of water, dispersants, sediments, oil, residue, and/or remnants of the Oil Spill or any part of any plume in the Mexican EEZ part of the Gulf of Mexico, and as to each, provide the following:

     A.     The purpose or function of the activity and a description of the activities;
     B.     Identify the person in charge of said activity;
     C.     The nature of the samples obtained;
     D.     The results, analysis, or conclusions regarding the samples;
     E.     The locations and depths where the samples were taken;
     F.     The dates the samples were taken.
     G.     Identify any laboratory or other person who conducted any analysis or tests on the samples.

**Interrogatory No. 12**

Describe in detail any expedition, excursion, mission, effort, and/or activity to take, recover, or obtain (directly or indirectly) samples of water, sand, dispersants, sediments, oil, residue, and/or remnants for traces of the Oil Spill or any plume on the beaches, coastlines, marshes, inlets, or other parts of the Republic of Mexico, the State of Tamaulipas, the State of Veracruz, and/or the State of Quintana Roo, and as to each, provide the following:

     A.     The purpose or function of the activity and a description of the activities;
     B.     Identify the person in charge of said activity;
     C.     The nature of the samples obtained;

D.      The results, analysis, or conclusions regarding the samples;
E.      The locations and depths where the samples were taken;
F.      The dates the samples were taken.
G.      Identify any laboratory or other person who conducted any analysis or tests on the samples.
H.

**Interrogatory No. 13**

Describe in detail, any definition of "plume" that you have utilized or utilize and further compare and describe how it differs from the definition to be utilized in these discovery requests that is set forth in subparagraph (n) of the Definitions, above.

**Interrogatory No. 14**

Please identify any person you have interviewed or from whom a statement was taken regarding the location, movement, composition, flow, and/or direction of the Oil Spill and/or any plume and/or any parts thereof during the relevant time period.

**Interrogatory No. 15**

Please identify any person who has taken or is in possession of any photographs, video recordings, or audio recordings that relate to the location, movement, composition, flow, and/or direction of the Oil Spill and/or any plume and/or any parts thereof during the relevant time period during the relevant time period.

**Interrogatory No.16**

As to any document or communication which has not been produced because it has been destroyed, lost, or is no longer in your possession, please identify the document and also state when and why the document was destroyed, lost, or is no longer in your possession.

**Interrogatory No. 17**

Please state whether you, anyone in your employ, or anyone acting on your behalf in connection with the events leading up to and the incident has consulted or retained any person deemed to be an expert in their field.  If so, please identify any experts.

**Interrogatory No. 18**

Please identify and describe any exhibits you may use in support of your defense.

**Interrogatory No. 19**

Please state whether or not your response to any request for admission served on you herein is an unqualified admission.  If not, for any response that is not an unqualified admission:
(a)      State the number of the Request for Admission;

(b)     State any facts upon which you base your response;
(c)     Identify any persons who have knowledge of those facts; and
(d)     Identify any documents and other tangible things that support your response and
        identify the person who has any document or thing

## Interrogatory No.20

If you claim or contend that any agent, employee, official, officer, representative, or any other person acting on behalf of any of the Plaintiffs herein has made any written or oral admission or declaration against self-interest, provide the following information as to each alleged admission or declaration against self-interest:

(a)     Identify the person who made such admission or declaration;
(b)     The date the alleged admission or declaration was made;
(c)     Describe the location, site, and circumstances under which the alleged admission
        or declaration was made;
(d)     Describe the person(s) to whom such admission or declaration against self-interest
        was made;
(e)     The circumstances and manner in which you learned or became aware of same.

## Request for Production No. 1

Please provide all documents that relate to the fate and transport of the Oil Spill and/or the plume.

## Request for Production No.2

Please produce all documents that relate to the National Oceanographic Atmospheric Agency's tracking, recording, and/or mapping of the Oil Spill and/or any plume.

## Interrogatory No. 21

Please describe in detail the reasons for any belief or contention you may have that the Oil Spill and/or any plume did not enter the coastal waters of the States of Tamaulipas, Veracruz, and/or Quintana Roo.

## Interrogatory No. 22

Please describe in detail any currents, weather conditions, winds, or any other factors that you contend kept the Oil Spill and/or any plume from entering the Mexican Exclusive Economic Zone.

## Interrogatory No. 23

Please describe in detail the migratory patterns of fish, turtles, tuna, red snapper, macarel, dolphins, sharks, plankton, pelicans, birds, and any other animal species known to live in the

Gulf of Mexico, and state whether their migratory patterns take them into Mexican Territorial Waters and/or the Mexican Exclusive Economic Zone.

**Interrogatory No. 24**

Please describe in detail the reasons known to you that led National Oceanic and Atmospheric Administration to announce the closure of fishing in portions of the Gulf of Mexico on June 2, 2010 at 6:00 p.m. Eastern Time.

**Interrogatory No. 25**

Please describe in detail the fate and/or transport of the plume and/or Oil Spill the scientists from the Woods Hole Oceanographic Institution (WHOI) detected and characterized as being at least 22 miles long and more than 3,000 feet below the surface of the Gulf of Mexico.

**Request for Production No. 3**

Please produce any images, maps, videos, pictures, satellite images, studies, reports, compilations, books, analysis, lab tests, results, samples, charts, graphs, documents, or tangible information, related to the direction, movement, location, and/or flow of the Oil Spill and/or the plume.

**Request For Production No. 4**

Please produce any images, maps, videos, pictures, satellite images, studies, reports, compilations, books, analysis, lab tests, results, samples, charts, graphs, documents, tangible information, or tracking information related to or concerning blue fin or yellow fin tuna in the Gulf of Mexico during the relevant period, including but not limited to, any documents or information related to:
      A.      the migratory patterns of blue fin and yellow fin tuna;
      B.      the locations of any breeding or feeding areas within the Mexican EEZ;
      C.      the number of blue fin or yellow fin deaths in the Gulf of Mexico after the Oil Spill;
      D.      the location of known blue fin or yellow fin deaths in the Gulf of Mexico;

**Interrogatory No. 26**

Identify all persons who created, prepared, or participated in any studies or reports of blue fin or yellow fin tuna in the Gulf of Mexico during the relevant period.

**Request For Production No. 5**

Please produce any images, maps, videos, pictures, satellite images, studies, reports, compilations, books, analysis, lab tests, results, samples, charts, graphs, documents, tangible information, or tracking information related to or concerning Kemp Ridley Turtles in the Gulf of

Mexico during the relevant period, including but not limited to, any documents or information related to:

    A.    the migratory patterns of Kemp Ridley Turtles;

    B.    the locations of any breeding or feeding areas within the Mexican EEZ;

    C.    the number of Kemp Ridley Turtle deaths in the Gulf of Mexico after the Oil Spill;

    D.    the location of known Kemp Ridley Turtles deaths in the Gulf of Mexico;

**Interrogatory No. 27**

Identify all persons who created, prepared, or participated in any studies or reports of Kemp Ridley Turtles in the Gulf of Mexico during the relevant period.

**Request For Production No. 6**

Please produce any images, maps, videos, pictures, satellite images, studies, reports, compilations, books, analysis, lab tests, results, samples, charts, graphs, documents, tangible information, or tracking information related to or concerning shrimp (white, brown, and pink) in the Gulf of Mexico during the relevant period, including but not limited to, any documents or information related to:

    A.    the migratory patterns of shrimp (white, brown, and pink);

    B.    the locations of any breeding or feeding areas within the Mexican EEZ;

    C.    the number of shrimp (white, brown, and pink) deaths in the Gulf of Mexico after the Oil Spill;

    D.    the location of known shrimp (white, brown, and pink) deaths in the Gulf of Mexico;

**Interrogatory No. 28**

Identify all persons who created, prepared, or participated in any studies or reports of shrimp (white, brown, and pink) in the Gulf of Mexico during the relevant period.

**Interrogatory No. 29**

State whether the attached Exhibit 1 is currently an accurate and reliable method, analysis, fingerprint and/or test for determining whether any oil, oil residue, hydrocarbon, elements of hydrocarbons and/or oil originated or came from (in whole or in part) from the Macondo well.

**Interrogatory No. 30**

If your answer to the foregoing interrogatory is "no" or qualified, conditioned, or contingent on any factors or other matters, please provide the following information:

    (a)    describe in detail the reasons, rationale, for your answer and any qualifications, conditions, contingencies, or other factors for your answer;

    (b)    describe in detail any variances, alternate methods or criteria, or changes in the footprint which you would currently utilize for determining whether any oil, oil

residue, hydrocarbon, elements of hydrocarbons and/or oil originated or came from (in whole or in part) from the Macondo well.

**Interrogatory No. 31**

Please describe in detail all analyses, "fingerprints," protocols, tests, criteria, calculations, quantification of elements or components, assessment of elements or components, and/or experiments you consider or believe to be sound, accurate, and reliable to determine or ascertain whether any oil, oil residue, hydrocarbon, elements of hydrocarbons and/or oil originated or came from (in whole or in part) from the Macondo well. If the foregoing would change or otherwise vary based on factors, contingencies, or other criteria (e.g., time, sun, weather, water, dispersants, etc.) state precisely how each factor, contingency, or other criteria would change or vary the analyses, "fingerprint," protocols, tests, criteria, calculations, quantification of elements or components, assessment of elements or components, and/or experiments.

**Interrogatory No. 32**

Please describe in detail all analyses, "fingerprints," protocols, tests, criteria, calculations, quantification of elements or components, assessment of elements or components, and/or experiments you consider or believe to be sound, accurate, and reliable to determine or ascertain in May, 2010 whether any oil, oil residue, hydrocarbon, elements of hydrocarbons and/or oil originated or came from (in whole or in part) from the Macondo well. If the foregoing would change or otherwise vary based on factors, contingencies, or other criteria (e.g., time, sun, weather, water, dispersants, etc.) state precisely how each factor, contingency, or other criteria would change or vary the analyses, "fingerprint," protocols, tests, criteria, calculations, quantification of elements or components, assessment of elements or components, and/or experiments.

**Interrogatory No. 33**

For each three month period subsequent to April 20, 2010, please describe in detail all analyses, "fingerprints," protocols, tests, criteria, calculations, quantification of elements or components, assessment of elements or components, and/or experiments you consider or believe to be sound, accurate, and reliable to determine or ascertain whether any oil, oil residue, hydrocarbon, elements of hydrocarbons and/or oil originated or came from (in whole or in part) from the Macondo well. If the foregoing would change or otherwise vary based on factors, contingencies, or other criteria (e.g., time, sun, weather, water, dispersants, etc.) state precisely how each factor, contingency, or other criteria would change or vary the analyses, "fingerprint," protocols, tests, criteria, calculations, quantification of elements or components, assessment of elements or components, and/or experiments.

**Interrogatory No. 34**

State whether the attached Exhibit 1 is currently an accurate and reliable method, analysis, and/or test for determining whether any plume or components of any plume originated or came from (in whole or in part) from the Macondo well or were added to the Oil Spill.

**Interrogatory No. 35**

If your answer to the foregoing interrogatory is "no" or  qualified, conditioned, or contingent on any factors or other matters, please provide the following information:

(a)      describe in detail the reasons, rationale, for your answer and any qualifications, conditions, contingencies, or other factors for your answer;

(b)      describe in detail any variances, alternate methods or criteria, or changes in the footprint which you would currently utilize for determining whether any oil, oil residue, hydrocarbon, elements of hydrocarbons and/or oil originated or came from (in whole or in part) from the Macondo well.

**Interrogatory No. 36**

Please describe in detail all analyses, "fingerprints," protocols, tests, criteria, calculations, quantification of elements or components, assessment of elements or components, and/or experiments you consider or believe to be sound, accurate, and reliable to determine or ascertain whether any plume or components of any plume originated or came from (in whole or in part) from the Macondo well or were added to the Oil Spill. If the foregoing would change or otherwise vary based on factors, contingencies, or other criteria (e.g., time, sun, weather, water, dispersants, etc.) state precisely how each factor, contingency, or other criteria would change or vary the analyses, "fingerprint," protocols, tests, criteria, calculations, quantification of elements or components, assessment of elements or components, and/or experiments.

**Interrogatory No. 37**

Please describe in detail all analyses, "fingerprints," protocols, tests, criteria, calculations, quantification of elements or components, assessment of elements or components, and/or experiments you consider or believe to be sound, accurate, and reliable to determine or ascertain in May, 2010 whether any plume or components of any plume originated or came from (in whole or in part) from the Macondo well or were added to the Oil Spill. If the foregoing would change or otherwise vary based on factors, contingencies, or other criteria (e.g., time, sun, weather, water, dispersants, etc.) state precisely how each factor, contingency, or other criteria would change or vary the analyses, "fingerprint," protocols, tests, criteria, calculations, quantification of elements or components, assessment of elements or components, and/or experiments.

**Interrogatory No. 38**

For each three month period subsequent to April 20, 2010, please describe in detail all analyses, "fingerprints," protocols, tests, criteria, calculations, quantification of elements or components, assessment of elements or components, and/or experiments you consider or believe to be sound, accurate, and reliable to determine or ascertain whether any plume or components of any plume originated or came from (in whole or in part) from the Macondo well or were added to the Oil Spill. If the foregoing would change or otherwise vary based on factors, contingencies, or other criteria (e.g., time, sun, weather, water, dispersants, etc.) state precisely how each factor, contingency, or other criteria would change or vary the analyses, "fingerprint," protocols, tests,

criteria, calculations, quantification of elements or components, assessment of elements or components, and/or experiments.

**Interrogatory No. 39**

State the velocity and direction of subsurface waters at a depth of between 200 meters and 2000 meters in the Northwestern Gulf of Mexico (i.e., off the coasts of Texas, Tamaulipas, Northern Veracruz). If your answer would change or otherwise vary based on factors, contingencies, or other criteria, describe each factor that would qualify or change your answer and state how it would impact your answer.

**Interrogatory No. 40**

Please describe in detail the biodegradation rate of spilled Macondo oil in wintertime.

**Interrogatory No. 41**

Please describe in detail the biodegradation rate of spilled Macondo oil in summertime.

**Interrogatory No. 42**

Please describe in detail the total amount of the oil and gas leaked or spilled from the Macondo Well during the relevant time period, explaining the method of calculating same. In providing said description, explain in detail any differences in the amounts calculated by the U.S. Government and Woods Hole Oceanographic Institute.

**Interrogatory No. 43**

Describe in detail the potential pathways of dispersion of soluble and non-soluble hydrocarbons fractions into the waters beyond the immediate water column of the wellhead zone of the spill for both surface and subsurface waters.

**Interrogatory No. 44**

Please identify and describe in detail any subsurface oil plumes that have been detected between 1,000 and 2,000 meters in depth and with respect to each, state:

    A.    whether those plumes were transported by deep circulation into the Southwest or Northwest sector of the Gulf of Mexico;

    B.    the areas into which the plumes migrated and/or traveled;

    C.    The final destination and/or location of any said plumes.

**Interrogatory No. 45**

Please identify in detail any studies, reports, analysis, and/or tests related to the dissolved oxygen (DO) zone above the mixed layer of the Northern Gulf of Mexico resulting from or related to the methane and non-methane oil fractions that emanated from the water column of the Macondo well head during the spill.

**Interrogatory No. 46**

Please describe in detail the most likely biodegradation rates for the different oil fractions (gas, aromatic and aliphatic) that emanated from the water column of the Macondo wellhead during the spill.

**Interrogatory No. 47**

Please describe in detail the estimated weathering rate of the hydrocarbon mixture from the Macondo's oil well, providing and explaining any variances caused by any factors or contingencies.

**Request for Production No. 7**

Please produce any studies, tests, reports, analysis, or results related to the superficial and sub-superficial injection of dispersants into the area around the Macondo Well head and water column at the level of the well leak.

**Interrogatory No. 48**

State whether the injection of dispersant into the area around the Macondo Well head and water column at the level of the well leak produced flocculated materials during the oil spill. If so, describe the quantities and amounts of said flocculated materials.

**Interrogatory No. 49**

Please describe the toxicity level of such dispersant by products (Corexit, formulations of Corexit, or any other) used in an attempt to contain the oil spill and describe any effect it had upon the planktonic and benthic food webs of the Gulf of Mexico marine ecosystem.

**Request for Production No. 8**

Please produce any 3-D numerical modeling related to the trajectories and evolution of the different oil plumes that emanated from the water column at the well head in mid and long-term scales: superficial and sub-superficial.

**Request for Production No. 9**

Provide any calculations and documents related to the trapping of oil slicks or any part of the oil spill or plumes by the Eddy Franklin in the Gulf of Mexico.

**Request for Production No. 10**

Please produce any documents, calculations, and/or data related to the transport and deposition of oil mineral aggregates (OMA) in deep-water sediments of the Gulf of Mexico.

**Interrogatory No. 50**

Describe in detail the optimal environmental conditions for the use of oil dispersants such as Corexit or Corexit formulations in the Gulf of Mexico's waters in terms of water temperature, availability of sunlight, depth, and any other applicable factor.

**Interrogatory No. 51**

Describe and state the total quantity of Corexit and/or Corexit formulation dispersants used in the Gulf of Mexico as a result of the Deepwater Horizon oil spill.  Also, provide the amount of Corexit and/or Corexit formulations applied directly on the riser pipe, wellhead, or water column at the depths of approximately 1100 meters to 1300 meters.

**Interrogatory No. 52**

Describe the manner and means by which you attempted to control the dosage of Corexit or Corexit formulations dispersants applied to the riser pipe, well head, or water column in deep waters of the Gulf of Mexico between April 20, 2010 and July 15, 2010.

**Interrogatory No. 53**

Describe in detail any efforts or activities related to monitoring and reporting on the environmental conditions at the surface point of the oil spill, including whether you monitored and reported on such same conditions in the areas where you deployed Corexit formulation dispersants underwater.

**Request for Production No. 11**

Produce any documents, data, and/or studies related to any efforts or activities related to monitoring and reporting on the environmental conditions at the surface point of the oil spill, including the monitoring and reporting on such same conditions in the areas where you deployed Corexit formulation dispersants underwater.

**Interrogatory No. 54**

Describe in detail the environmental conditions under which Corexit 9500 or any other Corexit formulation used during the oil spill is effective to treat an oil spill in the Gulf of Mexico.

**Interrogatory No. 55**

Describe in detail the environmental impact to flora and fauna of the Gulf of Mexico in the next five and ten years as a result of the Deepwater Horizon oil spill and/or any plume.

**Interrogatory No. 56**

Describe the patterns of the currents in the surface of the Gulf of Mexico from the surface to the bottom of the Gulf in the Macondo Canyon 252 area off the Coast of Louisiana and Alabama.

**Interrogatory No. 57**

Describe and state the exact volume of seawater that was contaminated by the combined effects of the oil spill and the use of dispersants.

**Request for Production No. 12**

Please produce any and all documents relating to, reflecting, evidencing, and/or recording the observation, tracking, mapping, photographing, and/or recording of the Oil Spill or any part of it during the relevant time period.

**Request for Production No. 13**

Please produce any and all documents relating to, reflecting, evidencing, and/or recording the observation, tracking, mapping, photographing, and/or recording of any plume during the relevant time period.

**Request for Production No. 14**

Please produce any communications and documents relating to any Oil Spill in the Mexican EEZ.

**Request for Production No. 15**

Please produce any communications and documents relating to any plume in the Mexican EEZ.

**Request for Production No. 16**

Please produce any communications during the relevant time period regarding, referencing, related to, and/or in connection with the actual or projected direction, location, flow or movement of the Oil Spill or any part of it.

**Request for Production No. 17**

Please produce any communications during the relevant time period regarding, referencing, related to, and/or in connection with the actual or projected direction, location, flow or movement of any plume.

**Request for Production No. 18**

Produce all documents, maps, communications, and records relating to the final destinations and/or locations of all portions of the Oil Spill, including, but not limited to, those that relate to any of the following:

      A.      the coordinates of the locations or destinations of every portion of the Oil Spill or if the coordinates are not available or unknown the approximate location of same;

      B.      the date the final destinations or locations was first observed or otherwise became known to you;

      C.      the size of the Oil spill at each location or destination;

      D.      the identify all persons who observed, mapped, tracked, or witnessed the Oil Spill at the locations/destinations identified.

**Request for Production No. 19**

Produce all documents, maps, communications, and records relating to the final destinations and/or locations of all portions of the plume, including, but not limited to, those that relate to any of the following:

      A.      the coordinates of the locations or destinations of every portion of the plume or if the coordinates are not available or unknown the approximate location of same;

      B.      the date the final destinations or locations was first observed or otherwise became known to you;

      C.      the size of the plume at each location or destination;

      D.      the identify all persons who observed, mapped, tracked, or witnessed the plume at the locations/destinations identified.

**Request for Production No. 20**

Please produce any document relating to any efforts or activities you undertook to prevent, impede, or delay the movement of the Oil Spill or any part of it toward the border of the Mexican Exclusive Economic Zone.

**Request for Production No. 21**

Please produce any documents relating to any calculations or estimates of the amount of oil spilled in the Gulf of Mexico.

**Request for Production No. 22**

Please produce any documents relating to any calculations or estimates of the amount of oil that crossed into the Mexican EEZ in the Gulf of Mexico.

**Request for Production No. 23**

Please produce any documents relating to the ecological, health, or environmental impacts of any substance used as a dispersant(s), e.g., Corexit or Corexit formulations.

**Request for Production No. 24**

Please produce any documents relating to the budget for any economic damages, costs, losses, expenses, or injuries resulting from the incident, including any economic or physical damages, costs, losses, expenses, or injuries suffered or to be suffered by Mexican State governments, and wildlife and any steps taken by you to mitigate any such damages, costs, losses, expenses, or injuries through advertising or other means.

**Request for Production No. 25**

Please produce any documents that relate to any interviews or statements regarding the location, movement, composition, flow, and/or direction of the Oil Spill and/or any plume and/or any parts thereof during the relevant time period.

**Request for Production No. 26**

Please produce any photographs, video recordings, or audio recordings that relate to the location, movement, composition, flow, and/or direction of the Oil Spill and/or any plume and/or any parts thereof during the relevant time period, along with any documents or communications that reference or refer to any photographs, video recordings or audio recordings that relate to the location, movement, composition, flow, and/or direction of the Oil Spill and/or any plume and/or any parts thereof.

**Request for Production No. 27**

Please produce copies of any assessments of damages associated with the oil spill, including injuries to coastal areas in the State of Tamaulipas, the State of Veracruz, the State of Quintana Roo, and/or any part of the Republic of Mexico.

**Request for Production No. 28**

Please produce copies of any assessments of damages associated with the oil spill, including injuries to coastal areas in the State of Tamaulipas, the State of Veracruz, the State of Quintana Roo, and/or any part of the Mexican EEZ in the Gulf of Mexico.

**Request for Production No. 29**

Please produce any documents, assessments, or testing showing the potential risks to marine life in the Gulf of Mexico, including, but not limited to, the coastal areas in the State of Tamaulipas, the State of Veracruz, the State of Quintana Roo, and/or any part of the Mexican EEZ in the Gulf of Mexico.

**Request for Production No. 30**

Please produce any documents or communications relating to any plan or procedures to implement if an oil spill from the Macondo Well went toward or into the Mexican EEZ.

**Request for Production No. 31**

Please produce copies of any documents or communications with any representative, official, employee, agent, committee, agency, or person acting on behalf of the Republic of Mexico related to the Oil Spill and/or any plume or parts thereof.

**Request for Production No. 32**

Please produce any documents regarding gifts, trips, prizes, meals paid, given or made to any representatives, officials, employees, agents, or other persons acting on behalf of the Republic of Mexico regarding the oil spill.

**Request for Production No. 33**

Please produce any documents or communications regarding any joint defense agreement entered into with any person relating to the incident, or any oil spill, clean up, control efforts, or mitigation efforts growing out of the incident.

**Request for Production No. 34**

Please produce any documents or communications to or from you and the following persons, firms, corporations, political subdivisions, government agencies and entities that relate to the location, size, direction, movement, and/or flow of the Oil Spill and/or any plume:

(a)     Halliburton;
(b)     Transocean;
(c)     Cameron International;
(d)     United States Coast Guard;
(e)     Department of Interior;
(f)     Department of Energy;
(g)     Environmental Protection Agency;
(h)     Chemical Safety Board;
(i)     House Committee on Energy and Finance;
(j)     Senate Committee on Natural Resources and Energy; and
(k)     BP

**Request for Production No. 35**

Please produce a current curriculum vitae of any expert retained by you, any report offered in connection with this incident against the Mexican States, and any materials used by the expert to render such report.

**Request for Production No. 36**

Please produce any documents or communications regarding the potential economic impact to tourism along the coast of Mexico, as a result of the oil spill.

**Request for Production No. 37**

Please produce any documents or communications regarding the potential economic impact to fish, wild birds, wild quadrupeds, and other wildlife and aquatic life.

**Request for Production No. 38**

Please produce any statement or document relating to any admission or declaration against self-interest made by any agent, employee, official, officer, representative, or any other person acting on behalf of any of the Mexican States.

**Request for Production No. 39**

Please produce any documents relating to any written or transcribed communication between you and the Mexican Federal Government, including any official, cabinet member, director of any organization, staff, or anyone working in the Office of the President, the Mexican Foreign Relations Secretary, the Mexican Ecological Institute, or any Federal Agency of the Republic of Mexico

**Request for Production No. 40**

Please produce any documents relating to any written or transcribed communication between you and any Mexican State Government, including any official, director of any organization, staff, or anyone working in the Office of the Governor of any State, or any State Agency of the State of Tamaulipas, Veracruz, Quintana Roo, or any other which lies on the Gulf of Mexico.

**Request for Production No. 41**

Please produce include any and all images, maps, videos, pictures, satellite images, studies, reports, compilations, books, analysis, lab tests, results, samples, charts, graphs, documents, or tangible information in your possession related to the Oil Plume under water, as described by the Woods Hole Oceanographic Institution into the currents of the Gulf of Mexico.

**Request for Production No. 42**

Please produce any and all documents in the possession of Defendants that relate to or are known by Defendants of samples taken by Penn State University biologist Charles Fisher and the National Science Foundation, from the coral beds about 7 miles (11 kilometers) southwest of the Macondo Well, located at a depth of about 4,300 feet, which were found to match the chemical fingerprint of the oil from the Macondo well.

**Request for Production No. 43**

Please produce any and all images, maps, videos, pictures, satellite images, studies, reports, compilations, books, analysis, lab tests, results, samples, charts, graphs, documents, or tangible information in the possession of Defendants from NASA Regarding the fate and transport of oil from the Macondo Well.

**Request for Production No. 44**

Please produce any and all images, maps, videos, pictures, satellite images, studies, reports, compilations, books, analysis, lab tests, results, samples, charts, graphs, documents, or tangible information in the possession of Defendants from U.S. Oil Spill Commission Regarding the fate and transport of oil from the Macondo Well to the Mexican EEZ.

**Request for Production No. 45**

Please produce any and all images, maps, videos, pictures, satellite images, studies, reports, compilations, books, analysis, lab tests, results, samples, charts, graphs, documents, or tangible information in the possession of Defendants from U.S. Fish and Wildlife Service regarding the fate and transport of oil from the Macondo Well to the Mexican EEZ.

**Request for Production No. 46**

Please produce any and all images, maps, videos, pictures, satellite images, studies, reports, compilations, books, analysis, lab tests, results, samples, charts, graphs, documents, or tangible information in the possession of Defendants which identify a Deep Plume of Oil coming out of the Macondo Well before the well was capped July 15, 2010.

**Request for Production No. 47**

Please produce any and all images, maps, videos, pictures, satellite images, studies, reports, compilations, books, analysis, lab tests, results, samples, charts, graphs, documents, or tangible information in the possession of Defendants which identify any Dead Zones in the body of water identified as the Gulf of Mexico, which may arise from a Deep Plume of Oil coming out of the Macondo Well before the well was capped July 15, 2010.

**Request for Production No. 48**

Please produce any and all images, maps, videos, pictures, satellite images, studies, reports, compilations, books, analysis, lab tests, results, samples, charts, graphs, documents, or tangible information in the possession of Defendants which correlate with what Scientists at the Woods Hole Oceanographic Institution (WHOI) detected and characterized as a plume of hydrocarbons that is at least 22 miles long and more than 3,000 feet below the surface of the Gulf of Mexico, and has been identified as a residue of the BP Deepwater Horizon oil spill.

**Request for Production No. 49**

Please produce any and all images, maps, videos, pictures, satellite images, studies, reports, compilations, books, analysis, lab tests, results, samples, charts, graphs, documents, or tangible information in the possession of Defendants which identify the number of deaths, effect on species, or change in migration patterns of the endangered species Kemp's Ridley turtles after the Macondo Well Oil Spill and to the present day.

**Request for Production No. 50**

Please produce any and all images, maps, videos, pictures, satellite images, studies, reports, compilations, books, analysis, lab tests, results, samples, charts, graphs, documents, or tangible information in the possession of Defendants which identify the number of deaths, effect on species, or change in migration patterns of the endangered species Kemp's Ridley turtles after the Macondo Well Oil Spill and to the present day, as it pertains to studies from the Padre Island National Seashore.

**Request for Production No. 51**

Please produce any and all images, maps, videos, pictures, satellite images, studies, reports, compilations, books, analysis, lab tests, results, samples, charts, graphs, documents, or tangible information in the possession of Defendants as it pertains to the MEXUSGULF & MEXUSGULF ANNEX which is the Agreement of Cooperation between the United States of America and the Mexican United States about the contamination of the marine means for spills of hydrocarbons and other noxious substances of 1980.

**Request for Production No. 52**

Please produce any and all images, maps, videos, pictures, satellite images, studies, reports, compilations, books, analysis, lab tests, results, samples, charts, graphs, documents, or tangible information in the possession of Defendants as it pertains to the Environmental Assessment For Emergency Action to Prohibit Fishing in Waters in the Southwestern United States in Response to the Deepwater Horizon MC252 Oil Spill.

**Request for Production No. 53**

Please produce any and all images, maps, videos, pictures, satellite images, studies, reports, compilations, books, analysis, lab tests, results, samples, charts, graphs, documents, or tangible information in the possession of Defendants as it pertains to the Macondo Well Oil Spill and any trajectory projections done by Defendants based on ensemble drifter analyses.

**Request for Production No. 54**

Please produce any and all images, maps, videos, pictures, satellite images, studies, reports, compilations, books, analysis, lab tests, results, samples, charts, graphs, documents, or tangible information in the possession of Defendants as it pertains to the Macondo Well Oil Spill and any effect on oil trajectory as a result of Hurricane Alex.

**Request For Production No. 55**

Please provide all documents, publications, reports, studies, and scientific publications that relate to or form the basis for your answer regarding the velocity and direction of subsurface waters at a depth of between 200 meters and 1000 meters in the Northwestern Gulf of Mexico.

**Request for Production No. 56**

Please provide all documents, all documents, publications, reports, studies, and scientific publications that relate to or form the basis for your answer regarding the biodegradation rate of spilled Macondo oil in wintertime.

**Request for Production No. 57**

Please provide all documents, all documents, publications, reports, studies, and scientific publications that relate to or form the basis for your answer regarding the biodegradation rate of spilled Macondo oil in summertime.

**Request for Production No. 58**

Please produce any and all sediment, water, soil, species, flora, or fauna samples related to any underwater plume material.

**Request for Production No. 59**

Please produce any and all documents, images, satellite images, photographs, water samples, and sediment samples, that show, evidence, demonstrate, or reflect that Macondo 252 oil did not reach the Eddy Franklin Loop current in the Gulf of Mexico in the summer of 2010.

**Request for Production No. 60**

 Please produce any and all documents, studies, reports, and other materials that you assert establishes with a degree of scientific certainty that Macondo 252 Deepwater Horizon oil did not reach the coastlines from the states of Tamaulipas, Quintana Roo, and/or Veracruz in the Republic of Mexico.

**Request for Production No. 61**

Produce any and all documents that related to the rate that carbon isotope 13 will be biodegraded into lesser carbon composites from oil spilled from Macondo.

**Request for Production No. 62**

Please produce any and all documents that suggest, show, and demonstrate that the Gulf of Mexico currents shift to a counterclockwise move in the months of September through March in any given year.

**Request for Production No. 63**

Please produce any documents showing, demonstrating, or establishing that the plume of oil created from the Macondo 252 Deepwater Horizon accident did not reach the Sigsbee Deep in the Gulf of Mexico located in the Mexican Exclusive Economic Zone.

**Request for Production No. 64**

Please produce any water, sediment, coral, species, plankton, zooplankton samples you have from South Padre Island, Texas or the southern edge of the North Laguna Madre that show that no Macondo oil reached such geographical locations.

**Request for Production No. 65**

Produce any and all sediment samples that you obtained from the coastlines of the states of Tamaulipas, Veracruz or Quintana Roo, Mexico or from the Mexican Exclusive Economic Mexican Zone of the Gulf of Mexico as a result of the oil spill.

**Request for Production No. 66**

Produce any and all naval permits you obtained that authorized you to obtain sediment samples of the coast of Tamaulipas, Veracruz, or Quintana Roo, Mexico.

**Request for Production No. 67**

Produce any and all laws, publications, codes, or concessions that you assert or contend demonstrates that the states of Tamaulipas, Veracruz, or Quintana Roo do not have a proprietary interest in the waters of the Mexican Exclusive Economic Zone of the Gulf of Mexico.

**Request for Production No. 68**

Please produce any and all documents related to whether the states of Tamaulipas, Veracruz, and Quintana Roo, Mexico have a proprietary interest in the waters of the Exclusive Economic Zone of the Gulf of Mexico.

**Request for Production No. 69**

Produce any documents that relate to whether the Mexican states have "justiciable" claims in this action.

**Request for Production No. 70**

Produce any documents demonstrating, showing, or reflecting that the Mexican states of Tamaulipas, Veracruz, and Quintana Roo do not have a physical impact to a proprietary interest as a result of the Deepwater Horizon accident of April 20, 2010.

**Request for Production No. 71**

Produce any and all water tests, sediment tests that manifest, demonstrate, or show that no superficial oil from the Macondo 252 riser pipe or water column reached the border between the US exclusive economic zone and the Mexican exclusive economic zone.

**Request for Production No. 72**

Produce any and all evidence that you have now that shows that the governors of the states of Tamaulipas, Veracruz, and Quintana Roo cannot pursuant to their respective state's constitution act, protect, defend, restore, reforest their shorelines in the event of a catastrophic accident such as the sinking of the Deepwater Horizon on April 20, 2010.

**Request for Production No. 73**

Produce any and all copies of Mexico's official daily gazette that shows or demonstrates or concludes that the Mexican states of Tamaulipas, Veracruz, or Quintana Roo do not have control of their shorelines of the Mexican exclusive economic zone of the Gulf of Mexico.

**Request for Production No. 74**

Produce any and all contracts, engagement letters, memorandums of understanding, agreements, emails, or any other writings that relate to your retaining or attempting to retain any Mexican scientists to conduct water, sediment, or specimen oceanographic cruises in the Mexican exclusive economic zone of the Gulf of Mexico between April 20, 2010 and the present.

**Interrogatory No. 58**

Identify any and all officials, representatives, or politicians in the Republic of Mexico that you have contacted regarding the potential litigation of the Republic of Mexico against British Petroleum and other Defendants after April 20, 2010.

**Request for Production No. 75**

Produce any and all documents, reports, and studies related to the short-term ecological impact to the Gulf of Mexico as a result of the April 20, 2010 spill.

**Request for Production No. 76**

Produce any and all documents, reports, and studies related to the medium term ecological impact to the Gulf of Mexico as a result of the April 20, 2010 spill.

**Request for Production No. 77**

Produce any and all documents, reports, and studies related to the long-term ecological impact to the Gulf of Mexico as a result of the April 20, 2010 spill.

**Request for Production No. 78**

Produce any and all documents, reports, and studies related to any medium and long term (15-30 year studies) that show that a spill of this magnitude and reach will not have an ecological negative impact on the waters, flora, and fauna of the Gulf of Mexico as a result of the Deepwater Horizon accident of April 20, 2010.

**Request for Production No. 79**

Produce any and all charts, maps, studies, GPS positions, or publications that show the migration paths of birds in the Gulf of Mexico (including in and through the US EEZ and Mexican EEZ).

**Request for Production No. 80**

Produce any and all documents and evidence that you have in your control, custody, or possession that shows that the state of Tamaulipas "La Pesca" development project was canceled for any other reason other than the Deepwater Macondo 252 Deepwater Horizon accident of April 20, 2010.

**Request for Production No. 81**

Produce all the plankton samples you obtained after April 20, 2010 in the Mexican exclusive economic zone as part of your monitoring and restoring the Gulf campaign.

**Request for Production No. 82**

Please produce any and all evidence you have that shows or demonstrates the biodegradation for encapsulated oil injected at 1,600 meters through a robotic arm at a riser pipe or water column with similar pressures as the Macondo 252 accident site.

**Interrogatory No. 59**

Name the new organic bacteria found in the Mexican exclusive economic zone associated with excessive death rates of fish and similar fauna during the red tide periods in the coasts of Tamaulipas and Veracruz in the Mexican exclusive economic zone.

**Request for Production No. 83**

Please produce any and all documents and evidence showing that Macondo superficial oil as transported by the Eddy Franklin Loop Current did not reach the Island of Holbox near the state of Quintana Roo Republic of Mexico.

**Request for Production No. 84**

Please produce any and all documents and evidence showing that Macondo superficial oil as transported by the Eddy Franklin Loop Current did not reach the Island of Contoy in the state of Quintana Roo, Republic of Mexico.

**Request for Production No. 85**

Please produce any and all documents and evidence showing that Macondo superficial oil transported by the Eddy Franklin Loop Current did not reach the Island of Isla de Mujeres in the state of Quintana Roo, Republic of Mexico.

# REQUESTS FOR ADMISSIONS

**Request for Admission No. 1**

Please admit or deny that the name of the body of water in which the Macondo Well was drilled, *i.e.*, "The Gulf of Mexico" suggests, indicates, or otherwise connotes that there are Mexican interests and/or rights in and to the gulf.

**Request for Admission No. 2**

Please admit or deny that the name of the body of water in which the Macondo Well was drilled, *i.e.*, "The Gulf of Mexico" suggests, indicates, or otherwise connotes that the Republic of Mexico borders or is adjacent to the gulf.

**Request for Admission No. 3**

Please admit or deny the oil spill from the Macondo Well has reached the Gulf Waters off Brownsville, Texas.

**Request for Admission No. 4**

Please admit or deny the oil spill from the Macondo Well has reached the shores of the State of Tamaulipas, Mexico.

**Request for Admission No. 5**

Please admit or deny the oil spill from the Macondo Well has reached the shores of the State of Veracruz, Mexico.

**Request for Admission No. 6**

Please admit or deny the oil spill from the Macondo Well has reached the shores of the State of Quintana Roo, Mexico.

**Request for Admission No. 7**

Please admit or deny former BP, P.L.C. Chief Executive Officer, Tony Hayward, was quoted in substance saying on or about May 14, 2010, "The Gulf of Mexico is a very big ocean.  The amount of volume or oil and dispersant we are putting into it is tiny in relation to the total water volume."

**Request for Admission No. 8**

Please admit or deny former BP, P.L.C. Chief Executive Officer, Tony Hayward, was quoted in substance saying on or about June 17, 2010, "This is a tragedy: people lost their lives; others were injured; and the Gulf Coast environment and communities are suffering. This is unacceptable, I understand that, and let me be very clear: I fully grasp the terrible reality of the situation."

**Request for Admission No. 9**

Please admit or deny you utilized Corexit or formulations of Corexit dispersant in the Deepwater Horizon Oil Spill when other non-toxic dispersants were available.

**Request for Admission No. 10**

Please admit or deny the amount of oil released from the oil spill is unknown.

**Request for Admission No. 11**

Please admit or deny the amount of oil remaining in the Gulf of Mexico, released by the oil spill, is unknown.

**Request for Admission No. 12**

Please admit or deny that you do not know the final destination or location of <u>all</u> of the Oil Spill.

**Request for Admission No. 13**

Please admit or deny that you do not know the final destination or location of the plume.

**Request for Admission No. 14**

Please admit or deny that the plume or a portion of the plume crossed into the Mexican EEZ in the Gulf of Mexico.

**Request for Admission No. 15**

Please admit or deny that the plume or a portion of the Oil Spill crossed into the Mexican EEZ in the Gulf of Mexico.

**Request for Admission No. 16**

Please admit or deny that the plume or a portion of the plume is currently located in the Mexican EEZ in the Gulf of Mexico.

**Request for Admission No. 17**

Please admit or deny that the Oil Spill or a portion of the Oil Spill is currently located in the Mexican EEZ in the Gulf of Mexico.

**Request for Admission No. 18**

Please admit or deny that you cannot account for or explain what happened to all of the Oil Spilled.

**Request for Admission No. 19.**

Please admit or deny that you cannot account for or explain what happened to all of the plume.

**Request for Admission No. 20.**

Please admit or deny that portions of the Oil Spill moved westward from the Macondo Well.

**Request for Admission No. 21.**

Please admit or deny that portions of the Oil Spill moved southwest from the Macondo Well.

**Request for Admission No. 22**

Please admit or deny that portions of the plume moved westward from the Macondo Well.

**Request for Admission No. 23**

Please admit or deny that portions of the plume moved southwestward from the Macondo Well.

**Request for Admission No. 24**

Please admit or deny that the original or initial plume divided or broke off into different plumes.

**Request for Admission No. 25**

Please admit or deny that the original or initial Oil Spill divided or broke off into different segments or parts.

**Request for Admission No. 26**

Please admit or deny that a part of the Oil Spill or a portion of it traveled into the area of the Gulf of Mexico that is known as Eddy Franklin.

### Request for Admission No. 27

Please admit or deny that a part of the plume or a portion of it traveled into the area of the Gulf of Mexico that is known as Eddy Franklin.

### Request for Admissions No. 28

Please admit or deny that you have actual or constructive possession of satellite images, photos, records, and documents related to the Oil Spill in the Mexican EEZ.

### Request for Admissions No. 23

Please admit or deny that you have actual or constructive possession of satellite images, photos, records, and documents related to the plume in the Mexican EEZ.

### Request for Admissions No. 24

Please admit or deny that you have actual or constructive possession of satellite images, photos, records, and documents related to the Oil Spill and/or plume off the coast of the State of Tamaulipas.

### Request for Admissions No. 25

Please admit or deny that you have actual or constructive possession of satellite images, photos, records, and documents related to the Oil Spill and/or plume off the coast of the State of Veracruz.

### Request for Admissions No. 26

Please admit or deny that you have actual or constructive possession of satellite images, photos, records, and documents related to the Oil Spill and/or plume off the coast of the State of Quintana Roo.

### Request for Admissions No. 27

Please admit or deny that you have actual or constructive possession of satellite images, photos, records, and documents related to the Oil Spill and/or plume off the coast of South Padre Island, near Port Isabel, Texas.

### Request for Admissions No. 28

Please admit or deny that you have actual or constructive possession of satellite images, photos, records, and documents related to the Oil Spill and/or plume off the coast of Corpus Christi, Texas.

**Request for Admission No. 29**

Please admit or deny the oil slick from the oil spill has migrated hundreds of miles.

**Request for Admission No. 30**

Please admit or deny the oil spill and/or plume reached the shores of the State of Texas.

**Request for Admission No. 31**

Please admit or deny the oil spill and/or plume reached the waters off the coast of Texas.

**Request for Admission No. 32**

Please admit or deny the oil spill reached the Gulf Waters off Brownsville, Texas.

**Request for Admission No. 33**

Please admit or deny the oil spill reached the shores of the State of Veracruz, Mexico.

**Request for Admission No. 34**

Please admit or deny the oil spill reached the shores of the State of Tamaulipas, Mexico.

**Request for Admissions No. 35**

Please admit or deny the oil spill reached the shores of the State of Quintana Roo, Mexico.

**Request for Admission No. 36**

Please admit or deny a plume reached the Gulf Waters off of Brownsville, Texas.

**Request for Admission No. 37**

Please admit or deny a plume reached the shores of the State of Tamaulipas, Mexico.

**Request for Admission No. 38**

Please admit or deny a plume reached the shores of the State of Veracruz, Mexico.

**Request for Admission No. 39**

Please admit or deny a plume reached the shores of the State of Quintana Roo, Mexico.

**Request for Admission No. 40**

Please admit or deny the effects of oil with dispersants upon larva shrimp are unknown.

**Request for Admission No. 41**

Please admit or deny the long term impact of the oil spill on the commercial fisheries is presently unknown.

**Request for Admission No. 42**

Please admit or deny the incident was proximately caused by your gross negligence.

**Request for Admission No. 43**

Please admit or deny the incident was proximately caused by your willful misconduct.

**Request for Admission No. 44**

Please admit or deny the oil spill that resulted from the incident killed Kemp Ridley turtles

**Request for Admission No. 45**

Please admit or deny the oil spill that resulted from the incident impacted the marine ecosystem of the Gulf of Mexico.

**Request for Admission No. 46**

Please admit or deny the oil spill that resulted from the incident impacted the marine ecosystems of the Kemp Ridley Turtles in the Gulf of Mexico.

**Request for Admission No. 47**

Please admit or deny whether the endangered Kemp Ridley Turtles are known to migrate between Mexican Territorial Waters and U.S. Territorial Waters.

**Request for Admission No. 48**

Please admit or deny whether the endangered Kemp Ridley Turtles are known to have habitats and nesting grounds in the State of Tamaulipas.

**Request for Admission No. 49**

Please admit or deny whether the endangered Kemp Ridley Turtles are known to have habitats and nesting grounds in the State of Texas.

**Request for Admission No. 50**

Please admit or deny the oil spill that resulted from the incident impacted the migration patterns of marine species in the Gulf of Mexico.

**Request for Admission No. 51**

Please admit or deny the oil spill that resulted from the incident killed fish species in the Gulf of Mexico.

**Request for Admission No. 52**

Please admit or deny the oil spill that resulted from the incident killed brown pelicans known to be part of the marine ecosystem of the Gulf of Mexico.

**Request for Admission No. 53**

Please admit or deny the oil spill that resulted from the incident killed dolphins known to be part of the marine ecosystem of the Gulf of Mexico.

**Request for Admission No. 54**

Please admit or deny the oil spill that resulted from the incident killed shrimp known to be part of the marine ecosystem of the Gulf of Mexico.

**Request for Admission No. 55**

Please admit or deny the oil spill that resulted from the incident had a negative impact on the commercial fishing industry of the Gulf of Mexico in 2010.

**Request for Admission No. 56**

Please admit or deny the oil spill that resulted from the incident had a negative impact on the commercial fishing industry of the Gulf of Mexico in 2011.

**Request for Admission No. 57**

Please admit or deny the oil spill that resulted from the incident had a negative impact on the commercial shrimping industry of the Gulf of Mexico in 2010.

**Request for Admission No. 58**

Please admit or deny the oil spill that resulted from the incident had a negative impact on the commercial shrimping industry of the Gulf of Mexico in 2011.

**Request for Admission No. 59**

Please admit or deny that fish species of the Gulf of Mexico, to this day are being found with traces of oil from the oil spill that resulted from the incident.

**Request for Admission No. 60**

Please admit or deny whether there exists a physical barrier in the Gulf of Mexico between what is known as U.S. Territorial Waters and Mexican Territorial Waters or the Mexican Exclusive Economic Zone.

**Request for Admission No. 61**

Please admit or deny whether there exists a physical barrier in the Gulf of Mexico between what is known as U.S. Territorial Waters and Mexican Territorial Waters or the Mexican Exclusive Economic Zone that could have prevented Macondo Oil from crossing into Mexican Territorial Waters.

**Request for Admission No. 62**

Please admit or deny that the attached Exhibit 1 is the "fingerprint" you would utilize to identify if any samples of oil or hydrocarbons originated from the Oil Spill.

**Request for Admission No. 63**

Admit or Deny that during the time of the spill you knew the exact pattern of the underwater currents in or around the area of the spill. If you Admit or Deny the question what are those patterns and what instrumentality did you use to monitor such currents.

**Request for Admission No. 64**

Admit or Deny that you caused damages to all species of sea turtles  that travel across the Gulf of Mexico as a result of the Deepwater Horizon oil spill.

**Request for Admission No. 65**

Admit or Deny that sea turtles in the Gulf of Mexico have a migration pattern across the coasts of the Gulf of Mexico and that they mainly beach themselves in Rancho Nuevo, Tamaulipas in order to lay their eggs.

**Request for Admission No. 66**

Admit or Deny that the use of Corexit or Corexit formulation dispersants that were applied to the riser pipe in deep Gulf waters (as deep as 1500 meters or more) created a plume which was trapped by the typical currents at the bottom of the Gulf of Mexico.

**Request for Admission No. 67**

Admit or Deny that the currents at the bottom of the Gulf of Mexico, in or around the zone where the spill occurred, predominantly travel from East to West at a speed of 4 to 10 cm/s?

**Request for Admission No. 68**

Admit or Deny that the currents in the Gulf of Mexico were the Deepwater Horizon oil spill occurred carried the plume discovered by WHOI Scientists in June of 2010 to Mexican EEZ territorial waters.

**Request for Admission No. 69**

Admit or Deny that the plume which was created as a result of the application of dispersants and the speed of expulsion of the oil at the point of the spill was trapped by the currents at the bottom of the Gulf and only a small fraction of the spilled oil actually made it to the surface.

**Request for Admission No. 70**

Admit or Deny that part of the oil that made it to the Gulf surface was channeled towards the eddies formed by the Eddy Franklin and has traveled on a westerly course ending up on the shores of Texas, Tamaulipas and Veracruz.

**Request for Admission No. 71**

Admit or Deny that the floatability of the oil at the spill site was nullified by the emulsion or plume which was created by reason of the pressures at the point of exit and the effects caused by the Corexit dispersants.

**Request for Admission No. 72**

Admit or Deny that the plume of oil was transported to Mexican territorial waters until it landed in the continental shelf off the coasts of Tamaulipas and Veracruz and covered a wide swath of sediment in such zones with Macondo oil.

**Request for Admission No. 73**

Admit or Deny that the natural biodegradation process of oil is nullified by the absence of sunlight.

**Request for Admission No. 74**

Admit or Deny that sunlight penetrates the surface of Gulf of Mexico waters down to 200 meters at the most.

**Request for Admission No. 75**

Admit or Deny that after 200 meters, sunlight intensity is nullified and therefore the biodegradation of oil does not occur at such depths.

**Request for Admission No. 76**

Admit or Deny that Corexit 9500 or Corexit formulations will not disperse oil in the absence of sunlight in the Gulf of Mexico.

**Request for Admission No. 77**

Admit or Deny that temperatures below 10 degrees Celsius increase the viscosity of oil and such increased viscosity inhibits the efficiency of the Corexit or Corexit formulations dispersants.

**Request for Admission No. 78**

Admit or Deny that the chemical composition of the oils obtained in the Gulf of Mexico are distinguishable from one another through chemical analysis.

**Request for Admission No. 79**

Please admit that Kemp's Ridley Sea Turtles inhabit the Gulf of Mexico.

**Request for Admission No. 80**

Please admit that Leatherback Sea Turtles inhabit the Gulf of Mexico.

**Request for Admission No. 81**

Please admit that Loggerhead Sea Turtles inhabit the Gulf of Mexico.

**Request for Admission No. 82**

Please admit that Green Sea Turtles inhabit the Gulf of Mexico.

**Request for Admission No. 83**

Please admit that Hawksbill Sea Turtles inhabit Gulf of Mexico.

**Request for Admission No. 84**

Please admit that Tuna Fish Species inhabit the Gulf of Mexico.

**Request for Admission No. 85**

Please admit that there are native birds such as pelicans, anhinga's, frigate birds, egrets, herons, spoonbills, ibis, and mallard ducks living in or around the habitats of the Gulf of Mexico.

**Request for Admission No. 86**

Please admit there are bottlenose dolphins in the Gulf of Mexico.

**Request for Admission No. 87**

Please admit there are saddle-backed dolphins in the Gulf of Mexico.

**Request for Admission No. 88**

Please admit there are striped dolphins in the Gulf of Mexico.

**Request for Admission No. 89**

Please admit there are spinner dolphins in the Gulf of Mexico.

**Request for Admission No. 90**

Please admit or deny a March 2012 NOAA Report described "unprecedented" harm to dolphins in the area of the 2010 spill, a vast stretch of the Gulf south of the Louisiana, Mississippi, and Alabama coasts and the Florida panhandle.

**Request for Admission No. 91**

Please admit or deny a March 2012 NOAA Report described "unprecedented" harm to dolphins in the area of the 2010 spill, and that the carcasses of 675 dolphins were recovered in the region between February 2010 and February 2012.

**Request for Admission No. 92**

Please admit or deny you had publicly acknowledged you would pay "all legitimate claims" related to the incident.

**Request for Admission No. 93**

Please admit or deny you have yet to fully define "legitimate claim."

**Request for Admission No. 94**

Please admit or deny that in MDL NO. 2179 and the filing on 5/2/2011 called "Report on "Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill" the Framework Agreement includes a commitment by BP to set aside $1 billion from the $20 billion *Deepwater Horizon* Oil Spill Trust to commence restoration projects in the Gulf of Mexico and the Gulf Coast states that would begin to restore natural resources, even while the

administrative and scientific efforts continue to investigate the full nature and scope of such damages.

**Request for Admission No. 95**

Please admit or deny that in MDL NO. 2179 and the filing on 5/2/2011 called "Report on "Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill", the Framework Agreement requires BP to set aside $1 billion from the Deepwater Horizon Oil Spill Trust to be used solely for early restoration projects.

**Request for Admission No. 96**

Please admit or deny that in MDL NO. 2179 and the filing on 5/2/2011 called "Report on "Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill", the Framework Agreement includes in its early restoration projects, areas belonging to the Mexican EEZ.

**Request for Admission No. 97**

Please admit or deny that in MDL NO. 2179 and the filing on 5/2/2011 called "Report on "Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill", the Framework Agreement includes in its early restoration projects, areas belonging to the State of Tamaulipas, Republic of Mexico.

**Request for Admission No. 98**

Please admit or deny that in MDL NO. 2179 and the filing on 5/2/2011 called "Report on "Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill", the Framework Agreement includes in its early restoration projects, areas belonging to the State of Veracruz, Republic of Mexico.

**Request for Admission No. 99**

Please admit or deny that in MDL NO. 2179 and the filing on 5/2/2011 called "Report on "Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill", the Framework Agreement includes in its early restoration projects, areas belonging to the State of Quintana Roo, Republic of Mexico.

**Request for Admission No. 100**

Please admit or deny that in MDL NO. 2179 and the filing on 5/2/2011 called "Report on "Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill", The Framework Agreement is a cooperative and positive response to the Oil Spill that the parties intend to help mitigate the potential impact of the spill on the environment and achieve important, meaningful restoration of natural resources in the Gulf of Mexico.

**Request for Admission No. 101**

Please admit or deny that in MDL NO. 2179 and the filing on 5/2/2011 called "Report on "Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill", The Framework provides the opportunity for great benefits to the natural resources of the Gulf of Mexico sooner than would otherwise happen.

## Request for Admission No. 102

Please admit or deny that in MDL NO. 2179 and the filing on 5/2/2011 called "Report on "Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill", the States of Mississippi, Florida, and Texas have not filed any civil actions relating to the Oil Spill to date but are participating Trustees in the Framework Agreement.

## Request for Admission No. 103

Please admit or deny that in MDL NO. 2179 and the filing on 5/2/2011 called "Report on "Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill", the Framework Agreement in No. 17 states "Early restoration project funding may include the reasonable costs of oversight, monitoring, and any agreed upon contingencies for the given project".

## Request for Admission No. 104

Please admit or deny that in MDL NO. 2179 and the filing on 5/2/2011 called "Report on "Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill", the State of Texas has received funding from the Framework Agreement.

## Request for Admission No. 105

Please admit or deny that in MDL NO. 2179 and the filing on 5/2/2011 called "Report on "Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill", the State of Texas has received over $5 Million Dollars in funding from the Framework Agreement fund to implement projects within their border.

## Request for Admission No. 106

Please admit or deny that in MDL NO. 2179 and the filing on 5/2/2011 called "Report on "Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill", the State of Texas will be allowed to use $100 million of the early restoration fund to implement projects within their border.

## Request for Admission No. 107

Please admit or deny that in MDL NO. 2179 and the filing on 5/2/2011 called "Report on "Framework for Early Restoration Addressing Injuries Resulting from the Deepwater Horizon Oil Spill", the State of Texas has received over $10 Million Dollars in funding from the Framework Agreement fund to implement projects within their border.

**Request for Admission No. 108**

Admit or deny that NOAA images between June 4, 2010 through July 18, 2010 show superficial oil crossing into the Mexican Exclusive Economic Zone in the Gulf of Mexico.

**Request for Admission No. 109**

Admit or deny that Mexico's Exclusive Economic Zone is larger in size than the United States Economic Zone or Cuba's Economic Zone, as it pertains to the Gulf of Mexico

**Request for Admission No. 110**

Admit or deny that Woods Hole Oceanographic Institute discovered an underwater plume of oil from the Macondo Well, traveling west-southwest at 4 miles per hour on or about June 5, 2010.

**Request for Admission No. 111**

Admit or deny that you have no evidence indicating that the plumes of oil discovered by Woods Hole Oceanographic Institute and coming from the Macondo Well have been biodegraded.

**Request for Admission No. 112**

Admit or deny that BP never deployed a research submarine to independently research the size or reach of any underwater plume or plumes that were created at over 1,200 meters by the collapse and accident of the Deepwater Horizon after April 20, 2010.

**Request for Admission No. 113**

Admit or deny that you have no evidence that can refute the underwater oil plume discovery by Dr. Richard Camilli from Woods Hole Oceanographic Institute who conducted a study aboard the Sentry submarine in June of 2010.

**Request for Admission No. 114**

Admit or deny that 26% of all superficial or sub-superficial oil is still unaccounted for according to the last published report from the Environmental Protection Agency of the United States of America.

**Request for Admission No. 115**

Admit or deny that according to Woods Hole Oceanographic Institute scientists, more than 36% of Macondo 252 Deepwater Horizon oil is still unaccounted for.

**Request for Admission No. 116**

Admit or deny that you have no evidence that can refute Woods Hole Oceanographic Institute scientists, who state that more than 36% of Macondo 252 Deepwater Horizon oil is still unaccounted for.

**Request for Admission No. 117**

Admit or deny that it takes an average of 20.6 years for the waters of the Gulf of Mexico to fully recycle between 5 and 1,600 meters deep.

**Request for Admission No. 118**

Admit or deny that the Eddy Franklin Loop Current exists in the Gulf of Mexico

**Request for Admission No. 119**

Admit or deny that the temperature of the water of the Gulf of Mexico at 1,600 meters deep is approximately 4 degrees Celsius.

**Request for Admission No. 120**

Admit or deny that below 200 meters in the Gulf of Mexico waters the average temperature is 9 degrees Celsius.

**Request for Admissions No.121**

Admit or deny that despite the fact that you believe that Macondo 252 oil did not reach the shorelines of South Padre Island, Texas, you granted the state of Texas 100 million dollars as a result of an initial restoration campaign.

**Request for Admissions No. 122**

Admit or deny that in your restoral Gulf of Mexico project document you acknowledge that you damaged the ecosystem of the Gulf of Mexico without identifying specific coasts or boundaries.

**Request for Admissions No. 123**

Admit or deny that Macondo's oil and byproducts created a new organic bacteria that killed thousands of fish specimens during the red tide period in Texas, Tamaulipas and Veracruz in the year of 2010 and 2011.

**Request for Admissions No. 124**

Admit or deny that NOAA fishery closure maps published between May 29, 2010 to July 15, 2010 show fishery closure boundaries through and up to the Mexican exclusive economic zone.

**Request for Admissions No. 125**

Admit or deny that the April 20, 2010 Deepwater Horizon accident is the most catastrophic oil spill in the history of the world.

**Request for Admissions No. 126**

Admit or deny that after April 20, 2010 you never navigated into the Mexican exclusive economic zone to conduct water or sediment samples to measure the impact of superficial or sub superficial oil from the Macondo 252 Deepwater Horizon accident.

**Request for Admissions No. 127**

Admit or deny that you have not conducted any oceanographic/monitoring cruises to measure the impact of Macondo oil in the Mexican exclusive economic zone after April 20, 2010. If you deny such admission, identify the name, address, telephone number, and biographical information of all the scientists that participated in such expeditions.

**Request for Admissions No. 128**

Admit or deny that the Macondo 252 Deepwater Horizon accident damaged out the nesting grounds for white "peneid" shrimp in the waters of the Gulf of Mexico.

**Request for Admissions No. 129**

Admit or deny that the plume reached the waters of South Padre Island, Texas.

**Request for Admissions No. 130**

Admit or deny that the state of Tamaulipas, Mexico has a proprietary interest in its shores, waters, and flora and fauna of the Gulf of Mexico Mexican exclusive economic zone.

**Request for Admissions No. 131**

Admit or deny that the state of Veracruz, Mexico has a proprietary interest in its shores, waters, and flora and fauna of the Gulf of Mexico Mexican exclusive economic zone.

**Request for Admissions No. 132**

Admit or deny that the state of Quintana Roo, Mexico has a proprietary interest in its shores, waters, and flora and fauna of the Gulf of Mexico Mexican exclusive economic zone.

**Request for Admission No. 133**

Admit or deny that NOAA images between June 4, 2010 and July 18, 2010 show superficial oil and oil projections crossing into the Mexican Exclusive Economic zone in the Gulf of Mexico.

**Request for Admission No. 134**

Admit or deny that superficial oil from the Macondo wellhead went farther than 200 nautical miles south and southwest from the site of the Deepwater Horizon accident.

**Request for Admission No. 135**

Admit or deny that a plume or several plumes were created between June 5, 2010 and July 25, 2010 at around 1,200 meters near the Macondo accident site.

**Request for Admission No. 136**

Admit or deny that Woods Hole Oceanographic Institute's scientists using the Sentry submarine discovered an underwater oil plume traveling west southwest at 4 nautical miles per day.

**Request for Admission No. 137**

Admit or deny that the plume reached the coasts of the state of Tamaulipas and Veracruz by February 2, 2011.

**Request for Admissions No. 138**

Admit that you do not know the biodegradation rate of Louisiana light crude after encapsulation from the exposure to Corexit or Corexit formulations at 1,600 meters deep.

Respectfully Submitted,

**SERNA & ASSOCIATES PLLC**

By:

**/s/ Enrique G. Serna**
**Enrique G. Serna, Esq.**
SBOT 00789617
20985 IH 10 West
Serna Building
San Antonio, Texas 78257
(210) 2280095 – Telephone
(210) 2280839 – Facsimile

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading, **PLAINTIFFS'** **INTERROGATORIES,REQUESTS FOR PRODUCTION, AND REQUESTS FOR** **ADMISSIONS TO BP EXPLORATION AND PRODUCTION, INC.**, has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No.12, and with the procedures established in MDL 2179, this the 26th day of July 2012.

<u>/s/ Enrique G. Serna</u>