IN RE: DEEPWATER HORIZON LITIGATION
MDL NO. 2179

| | |
|---|---|
| JAMES PARKERSON ROY | STEPHEN J. HERMAN |
| Domengeaux Wright Roy & Edwards LLC | Herman, Herman & Katz, LLC |
| 556 Jefferson St. Suite 500 | 820 O'Keefe Ave. |
| Lafayette, LA 70501 | New Orleans, LA 70113 |
| E-Mail: jimr@wrightroy.com | E-Mail: sherman@hhklawfirm.com |
| Telephone: (337) 233-3033 | Telephone: (504) 581-4892 |
| Direct: (337) 593-4190 | Direct: (504) 680-0554 |
| Fax: (337) 233-2796 | Fax: (504) 561-6024 |

July 25, 2012

*VIA* E-MAIL

The Honorable Sally Shushan
United States Magistrate Judge
500 Poydras Street, Room B345
New Orleans, Louisiana 70130
E-Mail: Sally_Shushan@laed.uscourts.gov

Re: Halliburton and State of Louisiana Requests for Settlement Discovery

Dear Judge Shushan:

Halliburton's request for class settlement related discovery, like its related Motion to Amend the Confidentiality Order to gain access to personal and confidential Settlement Program Claims Information, appears to conflate two completely separate and independent issues: On the one hand **(a)** whether the proposed settlement is fair, reasonable and adequate to the proposed class members; and, on the other hand **(b)** Halliburton's defense of *quantum* issues which might (or might not) be litigated in a subsequent proceeding.

To this point, there has been absolutely no discovery related to the question of damages. It wasn't part of Phase One.  It's not part of Phase Two.  It arguably wasn't even supposed to be a part of Phase Three.  For good reasons, the *only* discovery relating to individual plaintiffs (*i.e.* those individual plaintiffs who have actually filed suit in the MDL) has been the information required on the Plaintiff Profile Form.  The proposed class settlements should not alter this sensible and efficient discovery plan.

First of all, Halliburton is not in any way prejudiced by the assignment: The class can gain no greater rights than BP as against Halliburton by virtue of the assignment, and if the settlement fails, or the assignment were invalidated on some basis, the same rights and claims against Halliburton would revert back to BP.

With respect to potential punitive damage claims against Halliburton, Halliburton will have a full and fair opportunity to argue about the extent to which settlement payments provide (or do not provide) a basis for one or more punitive damage awards at the time such damage claims are actually litigated.  This question is premature at this time – as it has not been established that Halliburton even has potential exposure for punitive damages – and is not in any way relevant to the question of whether the proposed class settlement is fair, reasonable and adequate to the members of the class.

With respect to the State of Louisiana, CAFA merely provides for notice of the proposed settlement and its terms to the Attorney General.  It doesn't give the State or the Attorney General standing to conduct discovery or otherwise participate in the settlement approval process.  Presumably the Attorney General is free to comment on the fairness of the proposed settlement with respect to the citizens of Louisiana.  But the adequacy should be evident from the face of the Settlement Agreement.  Particularly given the State of Louisiana's active participation in both the MDL discovery process and its own NRD Assessment process, the Attorney General's Office should not need to take the deposition of class representatives or complex litigation experts in order to confirm that the Court Supervised Settlement Program is good for the people and the businesses of the State of Louisiana.

For these reasons, and for the reasons further outlined below, the requests by Halliburton and the State of Louisiana to depose class representatives and other experts in support of the proposed settlement (as well as Halliburton's related Motion to Amend Confidentiality Order) should be rejected.

**Halliburton Has No Standing to Conduct Class Settlement Related Discovery**

Courts have recognized that, in the context of class settlements, non-settling parties generally have no standing to challenge the proposed settlement. *Transamerican Refining Corp. v. Dravo Corp.*, 952 F.2d 898, 900 (5th Cir. 1992); *Agretti v. ANR Freight Sys.*, 982 F.2d 242, 246 (7th Cir. 1992). As *Agretti* holds, "'non-settling defendants in a multiple defendant litigation context have no standing to object to the fairness or adequacy of the settlement by other defendants'" (quoting 2 Herbert B. Newberg, *Newberg on Class Actions*, § 11.54 (2d ed. 1985)).  The rationale behind this general rule is that the class settlement will not affect any substantive legal rights of non-settling parties. *Transamerican Refining Corp.*, 952 F.2d at 900.[1]

---

[1] In *Transamerican*, the Fifth Circuit dismissed non-settling parties' appeal from class action settlement approval for lack of standing.  Contrary to the appellants' claims, the settlement did not purport to strip them of rights to contribution or indemnity.  The same situation pertains here: Halliburton is not being stripped of existing contribution or indemnity rights by the settlement.  Halliburton is the beneficiary of this Court's earlier orders in Halliburton's favor on contractual indemnity from BP for certain third-party compensatory claims.  *See* Doc. 5493, *Order and Reasons* [as to Halliburton's and BP's Cross-Motion for Partial Summary Judgment Regarding Indemnity], filed 01/31/12.  Nothing in the settlement affects any aspect of this ruling.  Indeed, under the terms of the proposed settlements, all compensatory damage claims against Halliburton are being released.

The case law post-dating the Fifth Circuit's *Transamerican* decision remains patently clear: "non-settling parties generally have no standing to challenge the settlement." *In re Vioxx Prods. Liab. Litig.*, 388 Fed. Appx. 391, 395 (5th Cir. 2010) (citing published cases).[2]

An exception to the general rule may apply only if the settlement agreement strips non-settling parties of rights to contribution or indemnity, or in some other manner results in "plain legal prejudice" to a non-settling party. *Agretti*, 982 F.2d at 246-47.[3] Where non-settling parties seek to intervene in the class action settlement process, the burden of showing standing lies with those seeking to intervene in the process. *See Vioxx*, 388 Fed. Appx. at 395. Under the plain terms of the Settlement, this burden cannot be met.

The proposed settlements in this case would not strip Halliburton of its contribution or indemnity rights. Indeed, under the terms of the proposed settlements, all claims for compensatory damages against Halliburton will be released.

Halliburton has alleged, *via* email, that it has standing to conduct discovery on, and challenge, the pending settlement agreements because it has "contingent exposure to contribution claims presumably based upon settlement amounts, and . . . potential exposure for punitive damage claims (which presumably would also be tied to settlement amounts)."[4]

As Halliburton's substantive defenses to "gross fault" or rights to contribution or indemnity are not in any way altered by the proposed settlements, Halliburton must be referring to *quantum*. Clearly, this is not the type of "prejudice" that is contemplated, as no Court would entertain an objection by a non-settling party that a class settlement should be rejected on the basis that the settling defendant was paying "*too much*" to the class.

The cases speak of prejudice to the non-settling defendant's contribution or indemnity rights as to the settling parties; not the effects of a settlement on potential contribution or indemnity claims *against them*.

---

[2] In *Vioxx*, the Fifth Circuit applied class action settlement principles to a non-class "opt in" mass settlement to hold that non-settling parties had no standing to challenge the validity of the Master Settlement Agreement. 388 Fed. Appx. at 395.

[3] "Mere allegations of injury in fact or tactical disadvantage as a result of a settlement simply do not rise to the level of plain legal prejudice." *Agretti*, 982 F.2d at 247. The settlement must "strip[] non-settling parties of rights to contribution or indemnity, or otherwise constitute "plain legal prejudice" before a non-settling party may be permitted to intervene. *Vioxx*, 388 Fed. Appx. at 395, citing *Agretti*, 982 F.2d at 246-47; *see also, e.g., Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1160 (5th Cir. Tex. 1985) (recognizing general rule); *In re Beef Industry Antitrust Lit.*, 607 F.2d 167, 172–173 (5th Cir. Tex. 1979), *cert. denied*, 452 U.S. 905 (1981) (non-settling defendant that challenged procedures followed in settlement approval was "not prejudiced by the settlement and therefore [had] no standing to complain about the settlement"); *Newby v. Enron Corp.* 2008 U.S. Dist. LEXIS 48516, 17–18 (S.D. Tex. June 24, 2008) (recognizing general rule); *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1995 U.S. Dist. LEXIS 595, 11–12 (E.D. La. Jan. 10, 1995) (non-settling insurer lacks standing to object to settlement because subrogation rights are not "legal claims" until claims are paid; recognizing general rule); *Cowley v. Texas Snubbing Control*, 812 F. Supp. 1437, 1449–50 (S.D. Miss. 1992) (tort claimant has no right to object to or intervene in settlement between insured and insurer because, prior to tort claimant's securing judgment against either party, claimant has no "legal claim;" recognizing general rule).

[4] *See, e.g.*, email of Donald Godwin, July 19, 2012, 11:16 a.m., to the Court and counsel re "Halliburton's Requests for Settlement-related Participation/Access to Personal Information/Discovery."

Moreover, nothing in the settlement changes the facts that will be adduced, or the legal questions that will be decided, in the Limitation Trial. Halliburton has fully participated in all of the extensive discovery conducted with respect to that trial, at which the matter of its fault will be determined. Nothing the class representatives or settlement experts could say in deposition has any effect on the factual and legal determinations to be made by this Court in connection with that trial.

While the economic settlement class stands to receive an assignment of certain of BP's still-viable claims against Halliburton, such assignment does not change the factual and legal considerations upon which Halliburton's exposure to those claims would ultimately be determined. Nor does the economic settlement class's receipt by assignment of BP's punitive damages claims against third parties, or its continued ability to seek punitive damages of its own, result from or involve any change to Halliburton's degree of liability or exposure to such damages. Halliburton's exposure to punitive damages depends upon prospective determinations of its own conduct and fault under prevailing punitive damages criteria, none of which the settlement purports to alter or predetermine.

**The State of Louisiana Has No Standing to Conduct Class Settlement Related Discovery**

The Fifth Circuit has determined that a state has no standing to contest a class action settlement that does not involve the resolution or dismissal of its own claims. *Paterson v. Texas Western Union Financial Services, Inc.*, 308 F.3d 448 (5th Cir. 2002). In *Paterson*, the Fifth Circuit considered the jurisdictional question of a state's standing to object to a settlement. There, Texas had sought to intervene, arguing that it had an interest in the disposition of unclaimed settlement monies attributable to Texas class members. Texas wished to argue that these be turned over to the state pursuant to its statutes regulating abandoned property, rather than reverting to settling defendant Western Union as the settlement agreement provided. But, held the Fifth Circuit, "we can ascertain no legal claim that the State has standing to make. The 'irreducible constitutional minimum of standing' is composed of three elements, the first of which is that 'the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Paterson*, 308 F.3d at 451, quoting *United States v. Hayes*, 515 U.S. 737, 743 (1995) and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1993).

The Fifth Circuit in *Paterson* also rejected the State of Texas' argument that it represented the interest of Texas class members, observing, "we know of no authority that would give it standing in a representative capacity. 'Even when the plaintiff is alleged injury sufficient to meet the case or controversy requirement, this Court has held that the plaintiff generally must assert his own rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Paterson*, 308 F.3d at 451, quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975). As *Paterson* also observed, the class members are represented by class representatives, not by the state in which they reside, and the class representatives must meet the applicable adequacy requirements of Rule 23 in the evaluation and determination of the court, not in the opinion of the state. *Id.* Here, the Court may, in the exercise of its authority and discretion, conduct such investigation and examination of the class representatives and class experts as it deems necessary and useful to inform its own, independent determination of fairness, adequacy, and reasonableness. It does not, and should not, rely on third parties to do so.

Counsel for Louisiana suggests the Class Action Fairness Act of 2005 ("CAFA") now places some "responsibility" on the Attorney General to conduct discovery for purposes of

making an objection (if any).  To be sure, Congress did decide that certain federal and state officials should be provided with notice of proposed class action settlements, and the codified notice provision, 28 U.S.C. §1715, provides extensive detail with respect to the contents and timing of such notice, a responsibility it places upon settling defendants. *See* 28 U.S.C. § 1715(b).  Tellingly, however, Congress did *not* expressly provide for comment, objection, or intervention, much less discovery of experts or class representatives.  Indeed, it appears that Congress did not intend, by this or any other provision of CAFA, to confer standing (or responsibility) on such officials for purposes of objection.  The statute itself makes this clear:

> **(f) Rule of construction**—Nothing in this section shall be construed to expand the authority of, or impose any obligations, duties, or responsibilities upon, Federal or State officials.

28 U.S.C. § 1715(f).[5]

Louisiana is neither a settlement class member, a non-settling defendant, nor a party to the class actions through which the settlement is being implemented.  The settlement does not purport to resolve or dismiss any of Louisiana's own claims; only the personal claims of settlement class members are affected, resolved, dismissed, or bound by the settlement.

More importantly, the lives of Louisiana's citizens, and the Louisiana economy, stand to benefit greatly by the proceeds of the settlement, both in terms of money recovered by the citizens of Louisiana as class members, and the multiple millions of dollars that will flow into the State's economy to promote tourism and seafood, and to provide community-based health programs, through other provisions of the settlements.

Like Halliburton, Louisiana is an indirect beneficiary of the class settlement.  Neither can demonstrate any "plain legal prejudice" that would entitle or justify the discovery they seek.

**Even Assuming *Arguendo* Some Standing, Neither Halliburton Nor the State of Louisiana (Nor Any Party) Has the Right to the Requested Discovery Absent Some Showing of "Fraud" or "Collusion" (Which Doesn't Exist)**

The Federal Judicial Center's *Manual for Complex Litigation*, *Fourth* (Federal Judicial Center 2004) summarizes and recommends the best practices that have evolved over decades of federal judicial experience with the conduct of the class action settlement approval process through which proposed class action settlements are judicially evaluated for fairness, reasonableness, and adequacy under Fed. R. Civ. P. 23(e).  Even with respect to class members with standing, such participation only rarely extends to the conduct of formal discovery such as depositions.  That is because the purpose and function of the approval process is to enable the court to reach an independent, informed and reasoned decision on the fairness, adequacy, and reasonableness of the settlement.  Objectors with standing may be heard with respect to such issues, typically *via* briefs and argument at the formal fairness hearing, but courts have consistently declined the invitation to transform the settlement approval process into its own litigation.  Accordingly, they limit discovery to what is essential "to aid the court in reaching an independent determination of fairness." *MCL* 4th, § 21.643 n. 990, quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24, 26 (D.D.C. 2001):  "Class members who object to a

---

[5] "The notice requirement allows federal and state defendants the opportunity to respond to class notice as they deem appropriate, but it does not expand the authority of these officials and does not impose any obligations, duties or responsibilities on them." *Federal Class Action Deskbook* (2011 Ed.) § 6.03[4].

class action settlement do not have an absolute right to discovery; the court may in its discretion allow discovery if it will help the court determine whether the settlement is fair, reasonable, and adequate." To assist courts in making the determination as to whether to allow discovery (assuming those who request it have standing to object), the *MCL* 4th articulates these overarching principles:

> Discovery should be minimal and conditioned on a showing of need, because it will delay settlement, introduce uncertainty, and might be undertaken primarily to justify an award of attorney fees to the objector's counsel. A court should monitor postsettlement discovery by objectors and limit it to providing objectors with information central to the fairness of the proposed settlement. *A court should not allow discovery into the settlement-negotiation process unless the objector makes a preliminary showing of collusion or other improper behavior.*[6]

The Fifth Circuit, in *Newby v. Enron, Corp.*, 394 F.3d 296, 306 (5th Cir. 2004), endorsed this prevalent view, holding that "formal discovery is not necessary as long as (1) the interests of the class are not prejudiced by the settlement negotiations and (2) there are substantial factual bases on which to premise settlement." *Id*. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("Formal discovery [is not] a necessary ticket to the bargaining table"); *see also Vollmer v. Publishers Clearing House,* 248 F.3d 698, 708 (7th Cir. 2001) ("The temptation to convert a settlement hearing into a full trial on the merits must be resisted"); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24, 27–28 (D.D.C. 2001) (citing with approval cases limiting objector discovery to cases where objectors make showing of collusion; nevertheless permitting limited discovery of documents of which parties already had possession, ensuring negligible delay); *Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780–81 (6th Cir. Ohio 1996) (affirming district court's refusal to allow discovery regarding attorney fee agreements); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 4 (1st Cir. 1999) (holding objector discovery of side agreements is limited only to situations where there is evidence of fraud); *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 684–85 (7th Cir. 1987) (Posner, J.) (holding discovery of settlement negotiations is proper only where the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive); *In re Lupron Mktg. & Sales Practices Litig.*, 2005 U.S. Dist. LEXIS 4039, 6–7 (D. Mass. Mar. 16, 2005) ("In exceptional cases, circumstantial evidence may demonstrate collusion between class counsel and defendants to a degree sufficient to warrant discovery into settlement negotiations").

In *Newby*, standing was not an issue: "a subset of members" of the settlement class objected to a proposed settlement with one of the defendants. They took issue with the settlement's fairness, reasonableness, and adequacy; specifically, its size, the fraction of the settlement devoted to expenses, the propriety of expense bills, the deferral of payment to class members, and the broad release terms. *Newby*, 394 F.3d at 301. The *Newby* trial court's decision to deny discovery, and to approve the settlement, was affirmed because it did what courts in the Fifth Circuit have been directed to do: It "faithfully applied a six-factor test in determining the appropriateness of the proposed settlement," using the familiar *Reed* factors to evaluate and approve it. 394 F.3d at 301. The objectors, "on the other hand, continue[d] to engage in what we can only describe as a maddening pattern of over-generalization and selective narration." *Id.* Among other arguments on appeal, the objectors raised the district court's

---

[6] *MCL* 4th, § 21.643, citing *Bowling v. Pfizer*, 143 F.R.D. 141, 153 and n. 10 (S.D. Ohio 1992) (emphasis supplied).

refusal to "permit them to conduct discovery relating to the conduct of the negotiations and the settlement terms to determine whether their interests and those of other class members have been adequately represented."  394 F.3d at 306, n.16.  Specifically, the objectors requested discovery to explore the potential for securing a larger and broader judgment, and "the possibility of collusion."  394 F.3d at 306.  The Fifth Circuit held that the "district court did not abuse its discretion in refusing to order discovery on both fronts."  *Id.*

In so doing, Judge Smith, writing for a unanimous panel, reaffirmed earlier Fifth Circuit precedent in rejecting "precisely the proposition the . . . objectors propound:  that 'the settlement process is necessarily inadequate unless informed by the process of discovery.'"  394 F.3d at 306.  "Generally speaking, a settlement should stand or fall on the adequacy of its terms."  *Id.*

Here, as in *Newby*, there has been "massive analysis of the circumstances surrounding Defendants' potential liability."  *Id.*  Here, as in *Newby*, an allegation of collusion "has never, at any point in the record, been advanced with the slightest factual substantiation."  394 F.3d at 307.  Here, as in *Newby*, the settlement negotiations included Court-ordered mediation.  *Id.*

This Court has embarked on a settlement approval process identical to that the Fifth Circuit applauded in *Newby*:  It has conducted a preliminary settlement approval hearing, and will hold a separate fairness hearing in November.  Only thereafter will it issue findings of fact and conclusions of law concerning the final approval of the settlement.  The record will contain, the applicable complaints, opinions of counsel and experts, objections, responses, briefs, and hearing transcripts.  *See* 394 F.3d at 307.  In *Newby*, the Fifth Circuit found the "proposition that the district court made its findings based on a malnourished record borders on being frivolous or even absurd."  394 F.3d at 307.  Here, a similarly fulsome record has been and will be developed, without the necessity of the additional expense, delay, and distraction of depositions of class representatives by third parties whose legal rights are not prejudiced by the settlement and have no standing to oppose it.

Finally, the above-cited cases make clear that there must be a nexus between the discovery sought and a type of information the Court is lacking.  Broad-based discovery will rarely, if ever, be permitted, and discovery regarding irrelevant subjects should never be permitted. *See, e.g., Newby*; *MCL 4th, § 21.643*.

As always, Plaintiffs appreciate the Court's time and consideration in this matter.

Respectfully submitted,

JAMES PARKERSON ROY
STEPHEN J. HERMAN
*Plaintiffs' Liaison Counsel*

cc: Donald Godwin, Esq.
    Allan Kanner, Esq.
    LIAISON AND COORDINATING COUNSEL