# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois 60654

Richard C. Godfrey, P.C.
To Call Writer Directly:
(312) 862-2391
richard.godfrey@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

July 25, 2012

**By E-mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

Re:   *MDL 2179: The Requests of Halliburton and the State of Louisiana for Depositions of Class Representatives and Settlement Experts*

Dear Judge Shushan:

BP submits this letter brief regarding Halliburton's and the State of Louisiana's requests to take the depositions of (1) all named class representatives and (2) any experts that BP or the PSC intend to rely upon in seeking final approval of the Economic and Property Damages Class Action Settlement and the Medical Benefits Class Action Settlement. As Judge Barbier already ruled in connection with Halliburton's initial request for settlement discovery, Halliburton is a non-settling defendant whose legal rights are not affected by the settlements. Therefore, Halliburton lacks standing to object to the settlements. That ruling is law of the case. As we explain below, the State of Louisiana also clearly lacks standing.

Putting standing aside, Judge Barbier has also already concluded — and Halliburton and the State of Louisiana have not challenged this conclusion — that the settlements were negotiated (1) with the benefit of an enormous discovery record; (2) at arms' length, free of fraud and collusion; and (3) in the wake of important legal rulings by the Court on the B1 and B3 bundles of claims. These rulings should also collectively prevent any attempt by Halliburton or the State of Louisiana to take discovery of the fairness of the settlements. Indeed, neither putative objector appealed from or objected to the Court's May 2, 2012 Orders preliminarily approving both settlements. And there is good reason for that — they have no valid basis to object. Finally, even if Halliburton or Louisiana were entitled to any discovery, which they are not, they have simply waited too long to request it.

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 25, 2012
Page 2

After preliminary approval, a settlement is presumptively reasonable and objecting class members bear the "heavy burden" of demonstrating that it is unreasonable. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 293 (W.D. Tex. 2007); *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000). When evaluated in light of this demanding standard of review, as well as the constitutional and case law rules discussed below, the demands for this far-reaching and unfocused discovery — made over ninety days after the settlements were presented to the Court, and over two months after they were preliminarily approved — do not come close to satisfying the legal standards even for limited tailored discovery, much less the extraordinarily unfocused discovery that Halliburton and Louisiana seek.

In sum, the request for discovery should be denied — it is invalid as a matter of law; it is improper under the authorities; and it is unfair to both classes' members.

I.  **Halliburton's and Louisiana's Discovery Requests Fail at the Threshold.**

To begin with, Halliburton and Louisiana fail certain threshold requirements that any litigant seeking relief from a court must establish.

A.  **Both Halliburton and Louisiana Lack Standing.**

Only class members have standing to object to, or seek discovery regarding, a settlement. Non-parties do not have standing and should play no role in the fairness hearing or proceedings leading up to it. *Feder v. Elec. Data Sys. Corp.*, 248 F. App'x 579, 580 (5th Cir. 2007) ("[O]nly class members have an interest in the settlement funds, and therefore only class members have standing to object to a settlement. Anyone else lacks the requisite proof of injury necessary to establish the 'irreducible minimum' of standing."); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 638 (5th Cir. 2012) ("Any class member has standing to object to a class settlement."); *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) (noting that "[t]he plain language of Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals."); 4 William B. Rubenstein, et al., *Newberg on Class Actions* § 11:55 (4th ed. 2002) ("[A]s a general rule, only class members have standing to object to a proposed settlement.").

1.  **Halliburton Lacks Standing.**

Halliburton lacks standing because it is not a class member and because its legal rights have not been affected by settlement agreements to which it is not a party. Put most simply, Halliburton's objections are premature, raised at the wrong hearing, and lodged against the wrong party. Even if Halliburton had a valid argument about (1) the validity of the assignment;[1]

---

[1] Any argument premising the need for discovery on the effect of the assignment falls particularly flat in the context of the Medical Benefits Class Action Settlement, which does not purport to assign BP's rights to the class.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 25, 2012
Page 3

(2) its potential exposure in contribution; or (3) its potential exposure to punitive damages, Halliburton will be free to challenge its liability at such point as some litigant seeks to prove its liability. None of the arguments that it seeks to develop now bears on the fairness, reasonableness, or adequacy of the settlement agreements.

      **a.**      **Halliburton Lacks Standing Under Binding Precedent.**

Because Halliburton is not a member of a settling class, it lacks standing to challenge the settlement agreements. Persons who are not members of the class are denied standing for the simple reason that they are not bound by the class settlement. *See, e.g., Piambino v. Bailey*, 610 F.2d 1306, 1327 (5th Cir. 1980) ("Rule 23(e) requires the trial judge to review any proposed settlement of a class action. The purpose of this salutary requirement is to protect the nonparty members of the class from unjust or unfair settlements ***affecting their rights***.") (emphasis added); *Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176-77 (5th Cir. 1975) ("The special prophylactic function that subdivision (e) of Rule 23 was designed for is to assure that any person ***whose rights would be affected*** by a dismissal or compromise has the opportunity to contest the proposed action.") (emphasis added and quotations omitted).

There is a narrow exception to this standing limitation where a non-settling defendant can demonstrate "plain legal prejudice." Such prejudice, however, does not exist here. Rather, "plain legal prejudice" only exists where a settlement [1] strips the non-settling defendant of a legal claim or cause of action, [2] interferes with a party's contract rights, or [3] strips a party of the ability to seek contribution or indemnification. *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1102-03 (10th Cir. 2001); *see also In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 172 (5th Cir. 1979); *Dunn v. Sears, Roebuck & Co.*, 639 F.2d 1171, 1173–74 (5th Cir. 1981); *Mayfield v. Barr*, 985 F.2d 1090, 1093 (D.C. Cir. 1993); 4 William B. Rubenstein, et al., *Newberg on Class Actions* § 11:55 (4th ed. 2002). Because the settlement agreements cause Halliburton none of these injuries, it may not claim and cannot establish plain legal prejudice.

      **b.**      **Halliburton's Lack of Standing Is the Law of the Case.**

Judge Barbier already has applied the binding legal precedent described above to rule that Halliburton lacks standing. On April 24, 2012, Halliburton filed a lengthy pleading with "preliminary objections" to the settlement agreements, which included a request for discovery. *See* Rec. Doc. 6350. This pleading ***included the same arguments that Halliburton asserts here as a basis for its discovery request***. In granting preliminary approval over Halliburton's objections, Judge Barbier held that because Halliburton is a non-settling defendant outside the plaintiff classes, and failed to show legal prejudice, it lacked standing.

> Generally, non-class members do not have standing to object to a class settlement. Individuals who are not class members because they are outside the definition of

**KIRKLAND & ELLIS LLP**

The Honorable Sally Shushan
July 25, 2012
Page 4

>the class or have opted out are on a different footing from class members. . . . Significantly, claims excluded from the proposed settlement are unaffected and preserved. The objections of Halliburton Energy Services, Inc., a non-settling defendant, are unavailing for similar reasons. . . .
>
>Nonsettling defendants also have standing to object if they can show some formal legal prejudice to them, apart from loss of contribution or indemnity rights. The terms of the proposed settlement do not appear to inhibit Halliburton's indemnification or contribution rights, particularly given that BP would assign most of the rights it may have for contribution or indemnity to the class members, who in turn, agree not to pursue compensatory claims or execute any judgments for compensatory damages that may be awarded. ***It also does not appear that Halliburton has shown any other form of legal prejudice that would give it standing to object.***

Economic Preliminary Approval Order (Rec. Doc. 6418) at 16-17 & n.2 (emphasis added; internal quotation marks and citations omitted).

Halliburton did not challenge this order, and it is now bound by this ruling as law of the case. *See U.S. v. Rhine*, 637 F.3d 525, 543 (5th Cir. 2011) ("[T]he law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case") (internal quotations omitted) (citing *Arizona v. California*, 460 U.S. 605, 618 (1983)); *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967). Halliburton identifies no new reason for abandoning the Court's conclusion that it lacks standing.

### 2. Louisiana Also Lacks Standing.

Louisiana — which, like Halliburton, is not a member of the settling classes and does not have legal rights affected by the settlement agreements — also lacks standing to object to or take discovery with respect to the fairness of the settlement agreements.

#### a. The Class Action Fairness Act Does Not Confer Standing.

Consistent with the well-established principle that Congress may not create standing where no cognizable injury exists, *see, e.g., United States v. Richardson*, 418 U.S. 166 (1974), the Class Action Fairness Act ("CAFA") does not create standing for a state attorney general to object to a settlement agreement. Rather, CAFA merely creates a procedural requirement that class action defendants ***notify*** appropriate state officials of certain class action settlements; it manifestly does not grant Attorneys General standing to object or demand discovery. In relevant part, the Act provides as follows:

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 25, 2012
Page 5

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement *shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement* . . . .

28 U.S.C. 1715(b) (emphasis added). This procedural statute simply requires notification; it says nothing that could be construed as creating a substantive right of standing that a state official would not otherwise possess. To the contrary, the statute is explicit on this point: "Nothing in this section shall be construed to expand the authority of . . . State officials." *Id.* § 1715(f); *see also* S. Rep. No. 109-14, at 35, *reprinted in* 2005 U.S.C.C.A.N. at 32 ("The state and federal officials are not required to take any affirmative action once they receive the proposed settlement according to new section 28 U.S.C. 1715(f); *nor does this section expand their current authority in any respect*.") (emphasis added); Letter from Fifteen State Attorneys General to Senators Bill Frist & Harry Reid (Feb. 7, 2005), *reprinted in* 151 Cong. Rec. H644-45 (daily ed. Feb. 16, 2005) (protesting — without effecting a change to the statute — that the notification provision "lacks meaning" because it does not confer substantive rights on the Attorneys General). In short, Louisiana cannot seek from the Court a form of relief that the Attorneys General failed to obtain from Congress.

### b. Louisiana Asserts No Injury Conferring Standing.

Any other basis for asserting standing that Louisiana might identify fails. Significantly, Louisiana cannot invoke the *parens patriae* doctrine to assert the rights of its residents. As the Supreme Court has explained, "to have [*parens patriae*] standing the State must assert an injury to what has been characterized as a 'quasi-sovereign' interest." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*, 458 U.S. 592, 600-01 (1982). While "a State may, for a variety of reasons, attempt to pursue the interests of a private party, and pursue those interests only for the sake of the real party in interest . . . *Interests of private parties are obviously not in themselves sovereign interests*, and they do not become such simply by virtue of the State's aiding in their achievement. In such situations, the State is no more than a nominal party." *Id.* at 602 (emphasis added). At bottom, "the State *must articulate an interest apart from the interests of particular private parties*." *Id.* at 607 (emphasis added).

The State itself has not suffered any actual or imminent injury being addressed in these settlements, and its argument that it represents the interests of Louisiana class members is not legally sufficient to grant it standing. *Paterson v. Texas*, 308 F.3d 448, 451 (5th Cir. 2002) (overruling Texas' Attorney General's objections to a class action settlement for lack of standing). The State cannot rest its claims "on the legal rights or interests of third parties." *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Class members are represented by class

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 25, 2012
Page 6

representatives, not the State. *Id.* Moreover, the classes have their own court-appointed counsel, which again is not the Attorney General of the State of Louisiana.

The State also argues that it has an interest in the medical settlement because of potential liens it could assert for medical services provided to claimants. Yet the State's interest is entirely speculative, as it has failed to demonstrate that it has any lien on future compensation paid to claimants, much less that the relevant agreement fails to protect any rights it has in this regard. In fact, the medical settlement is actually designed to provide for the resolution of any potential liens the state may have. *See* Rec. Doc. 6427-1 at 178-87. Further, as discussed above, this interest does not rise to the level of legal prejudice, as the settlement does not extinguish a cause of action that Louisiana could otherwise assert, interfere with its contract rights, or strip it of a claim for contribution or indemnity.

    **B.**    **Even if They Could Show Standing, Halliburton's and Louisiana's Requests for Discovery Come Too Late and Are Strategically Timed.**

Halliburton's "preliminary objections," which included a request for discovery, were rejected by Judge Barbier for lack of standing in the Economic Preliminary Approval Order on May 2, 2012. Well over ***two months*** passed before Halliburton and Louisiana made their current requests. This two-month delay can only be seen as an inappropriate tactic to burden the settling parties and an attempt to hold back and delay the settlements.

Moreover, the purpose of seeking discovery is to buttress a legal claim, defense, or objection that a litigant already possesses, not to embark on a fishing expedition to determine whether a litigant might develop a claim, defense, or objection. *See Mills v. Damson Oil Corp.*, 931 F.2d 346, 350-51 (5th Cir. 1991); *see also* § II.B.1, *infra*. Fishing expeditions are frequently conjoined with delay tactics. *See Paul Kadair, Inc. v. Sony Corp. of Am.*, 694 F.2d 1017, 1032 (5th Cir. 1983) (refusing to allow litigant, for purposes of delay, "to go fishing with the hope of fortuitously discovering some unknown and unsuspected evidence"). Here, the State does not know whether it even has an objection — but wants to engage in discovery to make that determination. Halliburton, on the other hand, claims to have an objection, but one which it lacks standing to make and which, in any event, is both invalid and unripe.

Here, Halliburton and Louisiana's delay is a self-inflicted wound that prevents those parties from being able to assure the Court that they could feasibly complete the far-ranging discovery they request in the time available, consistent with the fairness hearing and briefing schedule already established by the Court. During the Court's discovery conference on July 20, 2012, Halliburton and Louisiana indicated that they wish to depose class representatives and the PSC's and BP's experts prior to the Court's objection deadline of August 31, 2012. Given the tardiness of the request, briefing on the discovery requests (even as expedited by the Court) will not be finished until August 2, 2012. Even if the Court ruled the very next day, little time would

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 25, 2012
Page 7

be left to complete the many depositions that Halliburton and Louisiana are requesting. Thus, it is difficult to believe that Halliburton and Louisiana, who are well aware of this schedule, are not seeking to deliberately delay final review of the settlements. Accordingly, the joint discovery requests would unduly burden the parties if granted. The Court should disallow them.

### II.  Halliburton's and Louisiana's Requests Seek Improper Class Settlement Discovery.

Putting aside the threshold problems of standing and delay, the discovery requests suffer from a number of additional problems. Even if Halliburton or Louisiana did have standing, they would have no right to take discovery. Even for class members, there is no "absolute right" to conduct discovery of a proposed class settlement. *In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 424 (N.D. Ga. 1992). Rather, courts have consistently held that those who object to a class action settlement have neither a vested "entitle[ment] to discovery," *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n.6 (6th Cir. 1984), nor an automatic privilege "to question and debate every provision of the proposed compromise." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Rather, "[t]he temptation to convert a settlement hearing into a full trial on the merits must be resisted." *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 1994 WL 593998, at *3 (E.D. La. Oct. 28, 1994) (quoting *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987)).

### A.  Halliburton's and Louisiana's Requests Fail Basic Class Discovery Requirements.

In evaluating settlements for approval, the fundamental question is whether the Court has sufficient facts before it to intelligently approve or disapprove the settlement. *In re Gen. Tire & Rubber*, 726 F.2d at 1084 n.6. This determination is based on whether the settlement's terms are fair, reasonable, and adequate. *Cotton*, 559 F.2d at 1330. Only discovery demonstrably necessary to this inquiry is appropriate. Where this information already exists in the record (as it does here), indulging objectors' requests would only "unduly burden the parties" during the finalization of the proposed settlement, and thus must not be permitted. *In re Ford Motor Co. Bronco II*, 1994 WL 593998, at *3.

Given the failure of Halliburton and Louisiana to identify what information they seek through discovery, case law instructs that the Court should be extremely skeptical as to their motives which clearly do not arise from "'any legitimate concern to protect the class.'" *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *6 (E.D. Mich. Aug. 2, 2010) (denying non-settling defendants' request for discovery) (citing *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 172 (5th Cir. 1979)). Halliburton offers no explanation of what facts it hopes to develop, or how the issues it wishes to explore are related to the discovery it seeks. Louisiana offers the bare assertion that it has an interest based on potential liens on medical payments, but similarly fails to identify what facts it hopes to develop on this issue or why discovery is necessary given that

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 25, 2012
Page 8

detailed provisions for the resolution of liens are set forth on the face of the agreement. *Cf., e.g., In re Ford Motor Co. Bronco II*, 1994 WL 593998, at *4 (rejecting discovery requests where objector failed to show "specifically what information they need from settling plaintiffs and defendant and how that information will assist the Court in its determination of the fairness of the proposed settlement."). This alone is reason enough to deny their requests. Out of an abundance of caution, however, BP explains below why Halliburton and Louisiana are entitled neither to discovery on the merits nor with respect to the parties' settlement negotiations.

### 1. No Discovery Should Be Granted on the Merits.

In determining whether to permit discovery by class members into the merits of a case, the Court should consider the nature and amount of previous discovery, whether or not there is a reasonable basis for the requests, and the number and interests of objectors, *In re Ford Motor Co. Bronco II*, 1994 WL 593998, at *3, keeping in mind that even requests from class members to a proposed settlement should only be permitted if relevant to the Court's determination of whether the settlement is fair, reasonable, and adequate. *Id.* at *5.

#### a. Previous Discovery Has Been Extensive and Comprehensive.

As the court noted in its Preliminary Approval Orders on May 2, 2012 (Rec. Doc. 6418; Rec. Doc. 6419), the discovery in this case has been substantial. "[T]he parties have engaged in extensive discovery and motion practice, including taking 311 depositions, producing approximately 90 million pages of documents, and exchanging more than 80 expert reports . . . ." Rec. Doc. 6418 at 3; Rec. Doc. 6419 at 3. The "critical question" to determine whether independent discovery by objectors is necessary is whether the Court has "sufficient facts before it to intelligently consider the proposed settlement." *In re Ford Motor Co. Bronco II*, 1994 WL 593998, at *3. Here, the Court has been actively involved in this litigation from the start, is well-versed in the facts and issues, and has a comprehensive record before it. Given the voluminous record, independent discovery by objectors would be unnecessarily "duplicative of the [previous] efforts." *Id.* Indeed, courts routinely approve settlements in cases where significantly less formal discovery has been conducted. *See Cotton*, 559 F.2d at 1332 (settlement was approved despite "very little formal discovery" and "no voluminous record" in the case). Where, as here, significant (in fact massive) documentation has already been produced, interrogatories answered, and testimony taken, "independent discovery should generally not be allowed." *In re Ford Motor Co. Bronco II*, 1994 WL 593998, at *3.

In addition, the settlement negotiations were overseen by the Magistrate Judge. Your Honor was heavily involved. There is absolutely no validity or necessity for the generic and blanket demands for discovery that Halliburton and the State of Louisiana have put forth.

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 25, 2012
Page 9

        **b.**      **There Is No Reasonable Basis for Halliburton and Louisiana's Discovery Requests.**

      Halliburton and Louisiana have failed to present "cogent factual objections" to the settlements, and have made no showing that the Court lacks information needed to determine if the settlements are fair and reasonable. *In re Ford Motor Co. Bronco II*, 1994 WL 593998, at *4. They have also failed to show "specifically what information they need from settling plaintiffs and defendant and how that information will assist the Court in its determination of the fairness of the proposed settlement." *Id.* To the contrary, it is plain that the purpose of these discovery requests is not to bring to light any unknown information on the claims in this case or the settlement of claims, but rather to delay and/or "hold up" the settlements, burdening the parties.

      Indeed, Halliburton's interest in pursuing discovery is particularly inappropriate, as one of its main goals is apparently to demonstrate that the settlements are *too* generous to the classes. *Cf. Manual for Complex Litigation*, Fourth § 21.643 (observing that some objections "are made for improper purposes, and benefit only the objectors and their attorneys," and that a "challenge for the judge is to distinguish between meritorious objections and those advanced for improper purposes"). In this respect, Halliburton's interests are directly antagonistic to those of the classes, and its objections and discovery requests are improper. *See infra* § II.C.2. In considering whether to authorize this discovery, the Court should bear in mind that it acts as a fiduciary with respect to protecting the classes. *DeHoyos*, 240 F.R.D. at 286 ("[T]he court acts 'as a fiduciary who must serve as a guardian of the rights of absent class members'") (citing *Garza v. Sporting Goods Properties, Inc.*, 1996 WL 56247, at *11 (W.D. Tex. Feb. 6, 1996)); *see also Strong v. BellSouth Telecomm., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998) (the court's role is as guardian of the interests of class members). Improper and unnecessary discovery and baseless objections can damage the classes by delaying settlement implementation, or preventing settlement altogether. Thus, when evaluating requests for discovery and the procedures for settlement approval, courts typically look with disfavor upon those who seek to use discovery and other pre-trial processes for the purpose of interfering with implementation of the class settlement, for they can injure the class and deprive it of its rights in the process. *See In re Beef Indus. Antitrust Litig.*, 607 F.2d at 172 (denying non-settling defendants' appeal and determining that their objections were not "raised from any legitimate concern to protect the classes") (citing *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654-55 (D.D.C. 1979)).

        **c.**      **Neither Halliburton Nor Louisiana Represents the Interests of the Settling Classes.**

      Class counsel (the PSC) represents the classes. Class counsel are well known and respected, and highly experienced in class action litigation. The gist of the discovery requested, however, is that Halliburton and Louisiana apparently believe that the PSC is not capable of

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 25, 2012
Page 10

representing, or did not adequately represent, the classes and their rights. For if that is not the reason for the discovery requests, then there is no other valid basis for either Halliburton or Louisiana to advance. Because the PSC is more than capable of representing the classes (a fact demonstrated by its successful negotiation of settlements that will award billions of dollars to the classes), this is reason alone to reject Halliburton's and Louisiana's discovery requests.

In addition, one relevant, albeit not controlling, factor in assessing the propriety of settlement discovery is the number of objectors. *Cotton*, 559 F.2d at 1331. Currently, despite the enormous size of the classes, relatively few objections have been submitted. (A significant number of these objections are from objectors who, like Halliburton and Louisiana, do not fall into either class, many of whom are individuals or businesses complaining they wish they had been included in the settlements.) No objectors other than Halliburton and Louisiana (the latter of which has not formally objected at this point) have requested discovery, indicating that their interests are not aligned with the classes and they seek only to burden the settling parties.

As to the State of Louisiana, its position is not that of an objector; it simply claims it requires discovery to evaluate potential liens on medical settlement payments and determine whether the rights of its citizens are being protected adequately. But the former has nothing to do with whether the settlements are fair, reasonable, and adequate, and the latter is the job of class counsel — not the State of Louisiana. Put simply, if class counsel believe that the settlements are fair, reasonable, and adequate, as they do, upon what basis does Louisiana claim to seek discovery to second guess, validate, or invalidate the work and opinions of class counsel? Further, Louisiana's own agencies, not BP or Plaintiffs, already have the best information about amounts actually paid, services rendered, and the existence and/or amounts of liens that could be asserted by the State of Louisiana against putative class members.

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 25, 2012
Page 11

### 2. No Discovery Should Be Granted Into the Negotiation History.

The law is clear: Objectors are not entitled to discovery concerning settlement negotiations absent independent evidence of collusion or wrong-doing. *See, e.g., In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 210 n.23 (5th Cir. 1981); *In re Ford Motor Co. Bronco II*, 1994 WL 593998, at *4; *In re Domestic Air*, 144 F.R.D. at 424; *Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1046 (2d Cir. 1992); *Mars Steel Corp.*, 834 F.2d at 684; *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124-25 (7th Cir. 1979); *White v. Nat'l Football League*, 822 F. Supp. 1389, 1429 (D. Minn. 1993); *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 146 (S.D. Ohio 1992); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24, 28 (D.D.C. 2001); *Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *6 (N.D. Cal. Feb. 7, 2008). Mere allegations of wrongdoing are not sufficient; discovery is only permissible where the moving party "lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive." *Mars Steel Corp.*, 834 F.2d at 684.

In this case, Judge Barbier already has concluded that the settlement agreements he preliminarily approved were negotiated free of fraud and collusion:

> Over the course of these many months, the Parties' counsel, assisted and informed by experts and colleagues with specialized knowledge of various aspects of the litigation and the array of claims categories, engaged in numerous and ongoing settlement discussions and negotiation sessions, both in person and via telephone conference. These activities were conducted by the authorized representatives (including, for the Plaintiffs, Plaintiffs' Co-Liaison/Interim Class Counsel and many members of the Court-appointed PSC) and proceeded without disrupting, delaying, or detracting from the Parties' thorough trial preparations, under the brisk and systematic trial preparation schedule set and maintained by this Court. During these lengthy settlement negotiations, which commenced in February 2011 and continued for more than one year, the Parties negotiated the detailed, complex, and carefully thought-out claims categories and benefits of this settlement. Likewise, the Parties negotiated the precise language and terms of the Proposed Settlement and Exhibits; the proposed administrative and transition orders; the claims forms and procedures to enable Class members to make claims under the settlement without delay; and the comprehensive Notice Plan to provide notice of the settlement, the approval process, and the dates, deadlines, and options that are important to the Class.

Rec. Doc. 6418 at 30; *see also id.* at 18 (noting the "Court's observation of the conduct of counsel for the parties in . . . negotiating at arm's length a proposed settlement with the participation of Magistrate Judge Shushan"); *id.* at 31 ("The comprehensive system of claims frameworks . . . is the product of many months of intensive negotiation . . . .").

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 25, 2012
Page 12

As with Judge Barbier's conclusion that Halliburton lacks standing, neither Halliburton nor Louisiana has made any effort to challenge the Court's conclusion that the settlement agreements were negotiated at arms' length, free of collusion and wrongdoing, much less submitted "independent evidence" as the law requires. *In re Corrugated Container Antitrust Litig.*, 643 F.2d at 210 n.23. They are simply not entitled to any discovery with respect to the settlement negotiations. And if they want to assert collusion, for starters, they should be forced — as the authorities require — to make a prima facie showing with evidence on the record. They have not even attempted to do so.

**B.  Objector Discovery Must Be Reasonably Calculated to Lead to Information That Would Redress the Purported Injury of the Objector.**

Even if the Court did grant Halliburton or Louisiana discovery, that discovery would need to be sharply curtailed and surgically tailored. There is no basis whatsoever for permitting the open-ended, limitless discovery that these would-be objectors apparently seek.

**1.  Settlement Discovery Cannot Be a Fishing Expedition.**

The settlement agreements and notices on their face provide sufficient basis for class members to decide whether to object to, opt-out of, or remain in the classes and submit claims for compensation. *See Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007) (if notice fairly describes terms of settlement, objectors may decide whether settlement is fair). An objecting party is not entitled to engage in discovery as a fishing expedition, as that turns a class settlement process into a pre-trial discovery morass and a trial on the merits, defeating the purpose of the settlement. *See Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 625-26 (S.D. Cal. 2005) (denying objectors discovery on the grounds that it was not necessary for objectors to meaningfully participate in the final approval hearing, they were able to frame their objections fully and extensively without discovery, and there was a sufficient record before the court); *Malchman v. Davis*, 588 F. Supp. 1047, 1061 (S.D.N.Y. 1984) (denying discovery where "the court has sufficient materials already before it to evaluate the settlement and fee application, and where the objectors have failed to make cogent factual objections which indicate the need for discovery").

Against the backdrop of clear notices and a massive discovery record, neither Halliburton nor Louisiana has established either a general or a particularized need for any discovery. Moreover, under the authorities, even if they could establish a basis for discovery, the discovery authorized would necessarily have to be narrowly and surgically tailored to the information that they suggest or imply is missing from the public record. Indeed, for example, even if Halliburton were correct and there were serious legal issues with respect to the validity of the assignment, Halliburton fails to explain how taking discovery from the class representatives or experts supporting the economic settlement would shed any light on this purely legal question.

KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 25, 2012
Page 13

Halliburton and Louisiana appear to argue that if they can identify any interest whatsoever in the settlements, then they should be permitted to take any discovery they want.

This is simply not the law. Rather, when courts allow class members to take limited, tailored discovery, it is only after the party seeking it has established that the Court lacks sufficient facts to determine whether the settlement is fair, reasonable, and adequate. *Cf. In re Ford Motor Co. Bronco II*, 1994 WL 593998, at *3. Given the comprehensive record before the court, neither Halliburton nor Louisiana can establish that the Court lacks evidence to determine whether to approve the settlements. *See Geier v. Alexander*, 801 F.2d 799, 809 (6th Cir. 1986) (criticizing objectors for believing they "are entitled to stop the settlement in its tracks, without demonstrating any factual basis for their objections and to force the parties to expend large amounts of time, money and effort to answer their rhetorical questions, notwithstanding the copious discovery available from years of prior litigation and extensive pre-trial proceedings").

### 2. The Discovery Halliburton and Louisiana Seek Does Not Relate to Their Claimed Injury.

Halliburton and Louisiana request depositions, without limitation, of all class representatives and settlement experts, yet they fail to explain how they can logically obtain information relating to their objections from these deponents. The reason for this is simple — they cannot tie their discovery to their purported injuries. And, in the State's case, it does not even assert a claimed injury. Instead, it wants to engage in discovery to see whether it can find one.

#### a. Class Representatives and Experts Have No Reasonably Discoverable Information as to Halliburton's or Louisiana's Objections.

Halliburton objects regarding the validity of the assignment, its potential exposure in contribution, and its potential exposure to punitive damages, yet it fails to explain how deposing settlement experts, let alone class representatives, will aid it in furthering these legal objections — or a further leap still — how the discovery it seeks will aid the Court in determining whether the settlements are fair, reasonable, and adequate. To the contrary, the settlement agreements are fair on their face, and any objecting class members are surely able to present their own objections to the settlements absent Halliburton's assistance.

Louisiana requests discovery to ascertain whether the settlements are fair and adequate for the citizens of Louisiana, and whether the proposed classes meet the certification requirements of Rule 23. However, Louisiana makes no effort to explain what information it hopes to procure from the class representatives or experts that would allow it to make that determination. Further Louisiana's only identified interest, apart from its failed attempt to assert

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 25, 2012
Page 14

the rights of others, lies in its lien claims on potential medical settlement payments. However, it fails again to explain how the depositions of experts, let alone class representatives, will aid it in furthering this interest or the Court's determination.

> **b.**  **Discovery Into Consultations Between Class Representatives and Class Counsel Regarding Assigned Rights or Punitive Damage Claims Against Halliburton Would Inherently Seek Privileged Information.**

"The attorney-client privilege is the oldest of the privileges for confidential communications known to common law." *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). Allowing Halliburton to engage in depositions of class representatives, or to inquire into how the economic class might wield its assigned rights or choose to pursue reserved punitive damages claims, would only serve to jeopardize the class members' attorney-client privilege.

> **C.**  **Discovery Cannot Be Used as a Sword That Would Harm the Overall Interest of the Classes' Actual Members.**

> **1.**  **Objectors Cannot Use Discovery to Pursue a Trial on the Merits.**

A class fairness hearing is not a trial on the merits. It should not be conducted as such, and parties should not be allowed to proceed as such. *See In re Corrugated Container*, 643 F.2d at 212 (evaluation of a settlement "is not and cannot involve a trial on the merits"); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 228 F.R.D. 541, 553 (S.D. Tex. 2005) (evaluation of a settlement cannot involve a trial on the merits "because the policy of encouraging settlements is effected by 'the very uncertainty of the outcome of the litigation and the avoidance of wasteful litigation and expense.'") (citing *In re Corrugated Container*, 643 F.2d at 212). Halliburton seeks to upend these well-settled principles out of a twin desire to limit the recovery available to the classes and to delay implementation of the settlement agreements. Louisiana, on the other hand, seeks to pursue discovery to determine whether it even wishes to make an objection. The Court should reject these misguided efforts, which run contrary to the shared interest of the classes' actual members.

> **2.**  **Discovery Cannot Be Sought by an Objector in Furtherance of a Reduction of the Proposed Recovery for the Classes.**

Courts often receive objections from class members who seek to *expand* their recovery under the settlement based on what other class members are recovering. *See Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Phemister v. Harcourt Brace Jovanovich, Inc.*, 1984 WL 21981, at *6-7 (N.D. Ill. Sept. 14, 1984). However, Halliburton does not object in order to expand class members' recovery or that of some subset of class members. Instead,

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
July 25, 2012
Page 15

Halliburton seeks to *diminish* the classes' recoveries in an effort to protect its own parochial interests as a non-settling tortfeasor. As a fiduciary to the classes, this Court should reject Halliburton's attempt to act in a manner so contrary to the classes' collective interests.

\* \* \*

Judge Barbier already has concluded that (1) Halliburton lacks standing to object to the settlement agreements; (2) the settlement agreements were negotiated with the benefit of an enormous discovery record; and (3) the settlement agreements were negotiated at arms' length, free of collusion and wrongdoing. Additionally, Halliburton's and Louisiana's requests come too late and cannot realistically be pursued without inflicting an undue burden upon the settling parties. Halliburton and Louisiana make no effort to challenge any of Judge Barbier's conclusions (let alone offer legal reasoning that could support a change in course). Additionally, their perfunctory request for discovery is contrary to the authorities and would fail to inform the Court concerning the fairness of the proposed settlements. Such discovery would, however, run a serious risk of injuring the classes. Accordingly, the Court should deny the request.

Respectfully submitted,

Richard C. Godfrey, P.C.

RCG/cpl

cc (via email):

Plaintiffs Liaison Counsel
Defense Liaison Counsel
Mike Underhill
Corey Maze
Allan Kanner
Henry Dart
Douglas R. Kraus