# KIRKLAND & ELLIS LLP
#### AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois  60654

Richard C. Godfrey, P.C.
To Call Writer Directly:                              (312) 862-2000                              Facsimile:
(312) 862-2391                                                                              (312) 862-2200
richard.godfrey@kirkland.com                      www.kirkland.com

August 2, 2012

**By E-mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

> Re:    MDL 2179: The Requests of Halliburton and the State of Louisiana for
> Depositions of Class Representatives and Settlement Experts

Dear Judge Shushan:

On July 25, BP submitted a letter brief explaining why Halliburton and Louisiana are not entitled to discovery regarding the fairness of the economic or medical settlements, as these parties (1) lack standing, (2) waited too long to seek discovery, and (3) do not satisfy the standards that would apply even if they had standing and had made timely requests.  On July 30, the Court received letters in opposition from these parties, as well as a letter from Transocean correctly observing—contrary to Halliburton's assertions—that the non-settling defendants' rights are not affected by the settlements.

Nothing contained in either Halliburton's or Louisiana's letter meaningfully challenges BP's analysis or circumvents the authorities cited.  Rather, as explained below, Halliburton rehashes a litany of points that Judge Barbier has already considered and rejected.  Louisiana, in turn, can only justify its demand for discovery by ignoring both the clear text of the Class Action Fairness Act and the copious information available in the public record.  Because the discovery sought is neither authorized nor appropriate, the Court should deny these parties' requests.

## I.    Both Halliburton and Louisiana Lack Standing to Challenge the Settlements.

In its opening submission, BP explained that (1) Judge Barbier had already concluded that only class members have standing to lodge objections; and (2) under clear precedent, this ruling is correct.  Nothing that Halliburton or Louisiana says in opposition changes the prior ruling or supplies the legal standing required to call for discovery.

Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai      Washington, D.C.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 2, 2012
Page 2

### A.      Halliburton Lacks Standing.

Halliburton concedes that "non-settling parties like HESI generally lack standing to challenge [a] settlement." Halliburton Letter, at 3. Halliburton nevertheless contends that these settlements are different because they affect its substantive legal rights. Halliburton is wrong.

1.      Judge Barbier Has Already Rejected Halliburton's Arguments.

Halliburton lists fifteen bullet points contending that it has suffered plain legal prejudice. *See* Halliburton Letter, at 7-9. Of these arguments, twelve were presented to Judge Barbier in Halliburton's preliminary objections (Rec. Doc. 6350) filed in April. *See* Appendix A. Judge Barbier concluded that none of these arguments showed plain legal prejudice. *See* Rec. Doc. 6418, at 17 & n.18 ("The objections of Halliburton Energy Services, Inc., a non-settling defendant, are unavailing . . . . It . . . ***does not appear that Halliburton has shown any other form of legal prejudice that would give it standing to object***.") (emphasis added).

Halliburton asks the Court to revisit this conclusion, arguing that law of the case *only* applies to appellate rulings. While law of the case does apply to appellate rulings, district courts also apply the doctrine to their own rulings. *See, e.g.*, *Arredondo v. Flores*, No. 05-191, 2007 WL 4563419, at *1 (S.D. Tex. Feb. 15, 2007); *Michalik v. Hermann*, No. 99-3496, 2002 WL 1870054, at *7-8 (E.D. La. Aug. 12, 2002). But even if law of the case required an appellate ruling, a district judge bears an appellate relationship to a magistrate judge (or the legal equivalent thereof); any appeal of this Court's ruling would be heard by Judge Barbier, who has made his views known. *See* Fed. R. Civ. P. 72(a); *see also Taylor v. Nat'l Grp. of Companies, Inc.*, 765 F. Supp. 411, 413 (N.D. Ohio 1990) (Carr, M.J.) (no authority "to reconsider the prior rulings of the district court judge"). Put simply, Halliburton asks Your Honor overrule Judge Barbier; if it disagreed with his ruling, it should have taken the matter up with him months ago.

2.      Judge Barbier Properly Rejected Halliburton's Arguments.

None of Halliburton's bullet point assertions demonstrates plain legal prejudice:

***Assignment.*** Halliburton contends that the economic settlement prejudices it because final approval would imply that the assignment is valid under maritime law. But the parties do not ask the Court to rule on the validity of the assignment; they ask it to determine that a comprehensive settlement that includes the assignment among other forms of relief is fair, reasonable, and adequate. Halliburton's arguments concerning the assignment are simply not ripe; they can be resolved if and when they become necessary for the Court to resolve in litigation between plaintiffs and Halliburton. Transocean agrees. *See* Transocean Letter, at 1.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 2, 2012
Page 3

***Contribution and Punitive Damages.***  Many of Halliburton's arguments proceed from the incorrect assumption that BP has a responsibility to make it as simple as possible for Halliburton to defend against claims for contribution or punitive damages.  According to Halliburton, BP fails to assist Halliburton because (1) both settlements' causation presumptions are insufficiently strict; (2) the economic settlement is too generous in its treatment of presentment; (3) the economic settlement makes it impossible for Halliburton to assess the basis of payments, supposedly limiting its defenses in contribution actions; (4) the economic settlement bars Halliburton from reviewing claim forms, impacting its defenses in contribution actions; (5) both settlements toll the statute of limitations against BP, increasing Halliburton's potential liability in contribution; and (6) the economic settlement should not pay claims for pure economic loss.  In short, Halliburton seems to argue that BP must ensure that any BP settlement with the PSC and the classes benefits Halliburton in all respects and assists Halliburton in defending itself.

This argument depends upon Halliburton's "assum[ption] that BP and/or the PSC will eventually attempt to use the amounts paid under the Settlement Agreements as the basis for any contingent contribution claims, as well as the basis for assessing punitive damages."  Halliburton Letter, at 5.  Simultaneously, Halliburton resists conceding that the "Court's determination in the certification and fairness proceeding is ultimately binding on HESI."  *Id.* at 5.  An agreement between BP and the class is not binding on Halliburton; for that reason, any challenge concerning Halliburton's liability in a subsequent action is highly premature.  Yet Halliburton is trying to have it both ways—contending both that the Court's fairness findings should not bind it and that it has standing to seek discovery lest it be bound by unfavorable findings.

In reality, the Court's role is only to ensure that the settlement is "fair, reasonable, and adequate ***to class members***," *Klein v. O'Neal, Inc.*, No. 03-102, 2010 WL 234806, at *4 (N.D. Tex. Jan. 21, 2010) (emphasis added), not to the defendants (especially to non-settling defendants like Halliburton).  Because a settlement may be fair to the class even if it provides compensation beyond Halliburton's extraneous preferences as a non-settling tortfeasor, a finding that the settlement is fair has no necessary impact on Halliburton.  Approving the settlement leaves Halliburton with its prior defenses, such as they are.

***Restrictions on Settlement.***  Halliburton imagines that the settlements prejudice it by limiting the terms on which it may settle with the classes.  In reality, Halliburton may settle with the classes on any terms to which the classes agree.  Moreover, because a settlement requires a consensual bargain between two sides, Halliburton has no "right" to settle with the classes, and certainly not on any particular terms.  *See, e.g.*, *Bass v. Phonix Seadrill/78 Ltd.*, 749 F.2d 1154, 1164 (5th Cir. 1985) ("Bass . . . has an absolute right to refuse to settle and to submit his case to a trier of fact.  The fact that this agreement makes it factually less likely that Bass will settle with Crown Rig and Branham, in our view, does not justify setting it aside.").  What Halliburton

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 2, 2012
Page 4

really is complaining about is its desire to have a veto power over any BP settlement with the classes, but it has no such right. And as Your Honor knows, it "takes two to tango" and Halliburton has to date hardly been a willing dance partner with the PSC. Given Halliburton's refusal to participate in any settlement, an argument that would hold up payments to class members based on Halliburton's newly professed desire to settle rings particularly hollow.

***Availability of Witnesses.*** Halliburton complains that the economic settlement "limits the availability of witnesses and evidence from BP employees." Halliburton Letter, at 8. In support, Halliburton notes only that the economic settlement requires the class to use its best efforts to avoid calling BP employees as witnesses in subsequent litigation. Unlike in the authority cited by Halliburton, no one has promised to "not make . . . employees available to the remaining defendants." *See Dunn v. Sears, Roebuck & Co.*, 639 F.2d 1171, 1173 (5th Cir. Mar. 1981). Moreover, the Court still retains jurisdiction over BP and nothing in the settlement can avoid application of the Federal Rules of Civil Procedure and the case law on discovery.

***Opt-Out Threshold.*** Halliburton complains that it has "no access to information regarding individuals or entities that opt-out," and that it therefore cannot determine if the prerequisites for class certification are satisfied. Halliburton Letter, at 8. Halliburton appears to complain about the filing under seal of the threshold of opt-outs that would give BP permission to terminate the economic agreement. The complaint fails because it is circular: Halliburton only needs to know if the Rule 23 requirements are satisfied if class certification affects its legal rights, which it will not. *See* Transocean Letter, at 2 ("[T]here is no motion pending before the Court to certify a class for purposes of pursuing any claims against Transocean or Halliburton."). As a non-class member, Halliburton has no stake in the opt-out issue—and therefore no standing.[1]

***Back-End Litigation.*** Halliburton complains that under the medical agreement, BP's fault need not be proven in back-end litigation. *See* Halliburton Letter, at 9. The obvious response is that BP's fault need not be proven because BP will pay all established damages; thus, its fault is irrelevant. *Cf.* Fed. R. Evid. 401(b) (to be relevant, a fact must be "of consequence in determining the action"). And once again, Halliburton is not a member of the medical class and will not participate in any back-end litigation that the medical benefits agreement contemplates.

***Third-Party Beneficiary.*** Finally, Halliburton complains that medical settlement prejudices it because it does not make Halliburton a third-party beneficiary, "foreclose[ing]

---

[1] Moreover, there is nothing improper in the parties' choice to file the opt-out threshold under seal. *See, e.g.*, *In re Red Hat, Inc. Sec. Litig.*, No. 04-473, 2010 WL 2710517, at *5-6 (E.D.N.C. June 11, 2010); *In re Remeron End-Payor Antitrust Litig.*, No. 02-2007, 2005 WL 2230314, at *18 (D.N.J. Sept. 13, 2005); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 253 (D. Del. 2002).

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 2, 2012
Page 5

HESI's standing to enforce provisions of the Agreement that benefit HESI."  Halliburton Letter, at 9.  Far from stripping Halliburton of a claim or defense, this provision provides that Halliburton does not receive any ***new rights*** as a result of a settlement to which it does not contribute a penny.  There is nothing "duplicitous," *see id.* at 9 n.4, in BP's negotiation of a settlement agreement that leaves non-participating parties in their status quo state.  Halliburton could have settled with the PSC had it been willing.  It was not and did not.  That was its choice.  But Halliburton should not be allowed to block BP from reaching the settlement it did.

      **B.**      **Louisiana Also Lacks Standing.**

      Louisiana also lacks standing; its arguments to the contrary fall flat.

      1.      Louisiana Lacks Standing Under the Class Action Fairness Act.

      Louisiana contends that it has standing under the Class Action Fairness Act ("CAFA") because BP has not complied with the statute's notice provision, 28 U.S.C. § 1715.  Specifically, Louisiana complains that BP has failed to disclose (1) the Seafood Program Opt Out Terms, and (2) a list of medical class members and their States of residence.  Contrary to Louisiana's contention, the parties have clearly disclosed the Seafood Program Opt-Out Terms.  *See* Economic & Property Damage Claims, Frequently Asked Questions ¶ 144, http://www.deepwaterhorizoneconomicsettlement.com/faq.php.[2]  As for the list of members of the medical class from Louisiana, CAFA only requires a defendant to disclose this information "if feasible."  28 U.S.C. 1715(b)(7)(A).  While BP has provided certain lists of response workers to the claims administrator, BP does not have a complete and accurate list of Louisiana class members, as no such list exists.  Rather, each list that BP has provided to the claims administrator (1) is incomplete, (2) overlaps with the other lists, and (3) is both over- and underinclusive.  BP's lists also do not indicate how many zone A residents have a "specified physical condition," which is a condition precedent for being a class member.  Thus, while certain lists were provided to the claims administrator because they have limited value for identifying possible claimants, it is currently infeasible for BP to provide, by State, an accurate list of all class members.  For that reason, BP has provided "a reasonable estimate of the number of class members residing in each State and the estimated proportionate share of the claims of such members to the entire settlement," as CAFA permits.  *See id.* § 1715(b)(7)(B).[3]  To proceed otherwise would risk dispersing information to the public domain that could confuse potential

---

[2] Even if the parties had not disclosed this information, as noted above, courts routinely permit class action settlements in which certain information is filed under seal, even in the wake of CAFA.  *See supra* note 1.

[3] Even if Louisiana were correct that BP had failed to comply with CAFA, that would not justify the wide-ranging discovery that the State now seeks; it would only justify noting the alleged noncompliance and ordering it corrected.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 2, 2012
Page 6

class members.

Relatedly, Louisiana cites portions of legislative history suggesting that when a State believes a settlement is inadequate, it may "voice concerns" or "get involved." Louisiana Letter, at 6. BP does not dispute that it may do so, including by communicating with parties, counseling citizens, etc. What it may not do is use a statute requiring mere notification as a platform to demand discovery in federal court. On this point, the statute is clear: "Nothing in this section shall be construed to expand the authority of . . . State officials." 28 U.S.C. § 1715(f).

    2.      Louisiana Does Not Have a Proprietary Interest in the Settlements.

Louisiana suggests that it has an interest in the settlements because if the settlements are inadequate, it may need to pay unemployment benefits to its citizens. *See* Louisiana Letter, at 5. This argument proves too much, as it would effectively confer standing on a State whenever its citizens consider settlement of any litigation. Unsurprisingly, this is not the law. *See, e.g., Iowa ex rel. Miller v. Block*, 771 F.2d 347, 353 (8th Cir. 1985) (no standing where the State claimed that "agriculture production will suffer, which will dislocate agriculturally-based industries, forcing unemployment up and state tax revenues down"); *People ex rel. Hartigan v. Cheney*, 726 F. Supp. 219, 225 (C.D. Ill. 1989) ("Assuming, *arguendo*, that these injuries will occur, the harm will fall on the taxpayers and citizens of Illinois and not on the state *qua* state.").

    3.      Louisiana Does Not Have a Quasi-Sovereign Interest in the Settlements.

Finally, Louisiana contends that it has a quasi-sovereign interest in protecting the health and well-being of its citizens. Here, however, Louisiana simply challenges the amount of monetary benefits granted to civil litigants in a voluntarily negotiated settlement. As the case upon which it relies makes clear, this cannot create *parens patriae* standing. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*, 458 U.S. 592, 602 (1982) ("Interests of private parties are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement."); *accord, e.g., Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 425-26 (5th Cir. 2008). Moreover, any supposed need for the State to represent its citizens is belied by the fact that the class members are represented by the class representatives, as well as by able class counsel. *See Paterson v. Texas*, 308 F.3d 448, 451 (5th Cir. 2002). As in *Paterson*, this Court has concluded that the class representatives will adequately represent the class. *See* Rec. Doc. 6418, at 27-28; Rec. Doc. 6419, at 17.

## II.    Halliburton's and Louisiana's Discovery Requests Come Suspiciously Late.

Although Halliburton and Louisiana waited three months after the filing of the settlements to make their current discovery requests, each argues that it did not wait too long.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 2, 2012
Page 7

According to Halliburton, it requested discovery in its April preliminary objections.  *See* Halliburton Letter, at 11.  While Halliburton correctly observes that it could not have appealed Judge Barbier's denial of its discovery request under 28 U.S.C. § 1291, Halliburton made no effort to seek reconsideration or otherwise raise the discovery issue until over two months later. And while Halliburton complains that it could not seek discovery of BP's experts because BP has not disclosed them, there is no excuse for Halliburton's failure to request depositions of the class representatives.  (Halliburton's current filing also confirms, of course, that it could have requested advance permission to depose BP's experts without referring to them by name.)

Louisiana fares worse, as it has never sought discovery or even objected to the settlements.  It nevertheless contends that its tardiness has caused no prejudice. Yet even if it were possible for the parties to depose the two dozen class representatives (as well as various experts) between today and the August 31 objections deadline, the failure to request discovery at a reasonable point suggests tactical litigation motives, which should not be countenanced.[4]

## III. Neither Louisiana Nor Halliburton Has Satisfied the Demanding Standard That Applies to Parties Who Have Standing and Timely Request Discovery.

In its initial submission, BP explained that neither Halliburton nor Louisiana is entitled to discovery regarding (1) settlement negotiations, or (2) the merits.   In their oppositions, Halliburton and Louisiana concede that they are not seeking discovery with respect to negotiations.  *See* Halliburton Letter, at 13; Louisiana Letter, at 8.  Because a fairness hearing is not a trial on the merits, *see* BP Letter, at 7, 14-15, and for the reasons explained below, the parties remain unable to show entitlement to the discovery that they do seek.

### A. Class Members' Individual Damages

Both Halliburton and Louisiana desire discovery with regard to the damages of individual class members.  *See* Halliburton Letter, at 12; Louisiana Letter, at 7.   This discovery is inappropriate for four reasons.  First, with the exception of the Seafood Compensation Program, the parties have not agreed to a limited fund.  Because the settlements pay class members for all proven injuries, Halliburton and Louisiana may simply read the settlement agreements to determine the amount that any hypothetical claimant will be compensated.  Second, as to the Seafood Compensation Program, on its face and as discussed at the Preliminary Approval hearing, the settlement is more than generous and the key economic data about the industry are

---

[4] Louisiana suggests that no deadlines would need to be adjourned for it to take discovery, as it can complete all discovery before the November 8 fairness hearing.  *See* Louisiana Letter, at 9-10.  Louisiana, however, cannot have it both ways; the State would need to either (1) conduct all discovery before August 31, allowing it to submit an objection by the objections deadline, or (2) seek permission to file an out-of-time objection.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 2, 2012
Page 8

publicly known and available.[5]  Third, Halliburton and Louisiana propose to take the depositions of the class representatives and experts supporting the settlement.  At best, the class representatives could testify about their own amount of damages; it is doubtful that experts could specify the dollar value of damages suffered by particular class members.  Fourth, the unfocused discovery sought is in search of an objection—not in support of one already made.  That, too, is improper.

### B.      Proof of Individual Causation

Halliburton seeks discovery with respect to individual causation—the extent to which any individual's damages were caused by the spill.  *See* Halliburton Letter, at 12.  In light of its concerns about contribution and punitive damages, Halliburton clearly wishes to ensure that the causation presumptions are ***not too generous*** to the class members.  As discussed below, this discovery is inappropriate because it ***aims to reduce*** the class's recovery.  Moreover, as discussed above, there is no legal defect in a settlement that is too generous to the class.

### C.      Long-Term Impact of the Oil Spill

Louisiana seeks discovery as to the "long-term impact of the oil spill."  Louisiana Letter, at 7.  Apparently, Louisiana imagines that the Fairness Hearing is a wide-ranging hearing at which the Court would reach final determinations as to the extent to which the Gulf has recovered and is recovering.  Putting aside both (1) the fact that Louisiana and its natural resource trustees have ample information about the health of its wetlands and waters, and (2) the extensive information on this topic in the public domain, authority counsels that the Court should "not determine contested issues of fact that underlie the dispute."  *United States v. Oregon*, 913 F.2d 576, 582 (9th Cir. 1990); *accord Officers for Justice v. Civil Service Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).  While BP and the PSC disagree about the extent to which the Gulf is recovering, the goal now is not to resolve this disagreement.  Rather, the point is that in the face of disagreement on nearly every significant issue, BP and the PSC reached a settlement that they agree represents a reasonable resolution of the dispute.

### D.      Justification for Particular Settlement Terms

While disclaiming any interest in discovery regarding the settlement negotiations,

---

[5] While the Seafood Compensation Program is capped at $2.3 billion, the PSC has informed the Court that "from Galveston all the way around to Key West . . . for 2007 through 2009," the average annual revenue (not profit) of the industry is $476 million.  *See* Tr. of Apr. 25, 2012 Fairness Hearing at 37:25-38:14 (Mr. Rice).  Moreover, the development of the Program through a court-appointed neutral further guarantees its fairness.  Neither Halliburton nor Louisiana identifies ***any*** reason to suppose that the $2.3 billion figure is inadequate.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 2, 2012
Page 9

Louisiana simultaneously seeks discovery aimed at determining why the parties negotiated certain terms, including the value of the various RTPs, the claims deadlines, the $2.3 billion cap for the Seafood Compensation Program, and the list of qualifying conditions and treatments[6] in the medical settlement.  *See* Louisiana Letter, at 2, 9.  As BP has previously explained, however, courts have consistently held that those who object to a class action settlement have neither a vested "entitle[ment] to discovery," *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n.6 (6th Cir. 1984), nor an automatic privilege "to question and debate every provision of the proposed compromise."  *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

Because discovery is the exception, not the norm, before seeking discovery Louisiana must make a showing that the terms of the agreements are not fair, reasonable, and adequate. Even where tailored, limited discovery is allowed, it must be in aid of an objection, not to search for one.  Louisiana, which has never even objected to the agreements, instead asks the Court to presume that the settlement is unreasonable until proven otherwise, standing the presumption in favor of reasonableness on its head.  *See, e.g.*, *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008); *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619 (E.D. La. 2006).  Because Louisiana identifies no reason to suppose that the settlements' terms are unfair to class members, it may not use discovery as a fishing expedition:  the purpose of discovery is to buttress a legal claim, defense, or objection that a litigant already possesses, not to determine whether a litigant might develop one in the future.  *See Mills v. Damson Oil Corp.*, 931 F.2d 346, 350-51 (5th Cir. 1991). Louisiana also seeks discovery regarding the ***meaning*** of the medical agreement, such as asking if claimants must forego economic claims to participate in the economic settlement.  As the medical settlement discloses on its face, the answer is "no."  Medical Agreement § XVI.G.

## E.   Class Certification

Finally, both Halliburton and Louisiana seek discovery regarding class certification.  *See* Louisiana Letter, at 7; Halliburton Letter, at 13-14.  The law is clear, however, that a class certification hearing, like a fairness hearing, is not a trial on the merits.  *See, e.g.*, *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005); Halliburton Letter, at 13 (noting that discovery may be necessary "where the affidavits, declarations, and arguments or representations of counsel ***do not provide sufficient reliable information***") (emphasis added).  Neither Halliburton nor Louisiana makes a convincing argument that extensive class discovery is needed in this case—particularly by parties against whom the classes are not bringing claims.  As explained

---

[6] As the medical agreement discloses on its face, it pays for medical care reasonably necessary to treat those conditions that could potentially be caused by sufficient levels and duration of exposure to oil or dispersant.  *See* Medical Agreement Ex. 8.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 2, 2012
Page 10

above, neither Louisiana nor Halliburton has standing to challenge certification of classes that are not being certified against them.  But make no mistake:  by raising the question, both risk impairing the settlement benefits and compensation being paid to injured persons and businesses.

## IV.   Halliburton's Position Is Hostile to the Settling Classes.

In its opening letter, BP explained that Halliburton should be denied discovery, as its interests are directly contrary to those of the classes.  *See* BP Letter, at 9.  In response, Halliburton suggests that it is not seeking to reduce the classes' recovery, but simply "wants nothing more than to ensure that its rights are protected to the fullest extent of the law." Halliburton Letter, at 11.  But Halliburton's tactics are transparent, not reassuring.  Stripped of rhetoric, Halliburton's letter makes overwhelmingly clear that it wishes to challenge the classes, and hence the settlements *in toto*, and also to reduce the classes' recovery to protect its own narrow interests.  As a fiduciary to the classes, the court should reject Halliburton's request for what it is.  *See, e.g.*, *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. 2007).

*      *      *

The discovery requested by Louisiana and Halliburton should be denied.

Respectfully submitted,

Richard C. Godfrey, P.C.

RCG/cpl

cc (via email):

Plaintiffs Liaison Counsel
Defense Liaison Counsel
Mike Underhill
Corey Maze
Allan Kanner
Henry Dart
Douglas R. Kraus

# Appendix A

## Arguments Regarding Economic Agreement

| Halliburton New Bullet No. | Issue | Halliburton Prelim. Objections Page # (Rec. Doc. 6350) |
|---|---|---|
| 1 | Validity of assignment to PSC | 8 |
| 2 | Generous causation presumptions | 6 |
| 3 | Failure to require presentment | 6-7 |
| 4 | Availability of BP witnesses | -- |
| 5 | Limitation on ability to settle with PSC | 9 |
| 6 | Impossibility of assessing basis of awards | 6, 9 |
| 7 | Inability of Halliburton to access claims forms | 10 |
| 8 | Lack of information about opt-outs | 5 |
| 9 | Tolling of statutes of limitation | 10 |
| 10 | Failure to assert *Robins Dry Dock* defense | 5 |

## Arguments Regarding Medical Agreement

| Halliburton New Bullet No. | Issue | Halliburton Prelim. Objections Page # (Rec. Doc. 6350) |
|---|---|---|
| 11 | Generous causation presumptions | 6 |
| 12 | Absence of proof against BP in back-end litigation | -- |
| 13 | Limitation on ability to settle with the PSC | 9 |
| 14 | Tolling of statutes of limitations | 10 |
| 15 | Failure to make Halliburton a third-party beneficiary | -- |