

U.S. Department of Justice
Environment and Natural Resource Division

*P.O. Box 7611*
*Washington, DC 20044*
*202-305-2775*
*Abigail.Andre@usdoj.gov*

July 26, 2012

**BY ELECTRONIC MAIL**
The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana 70130

      Re:    MDL 2179: United States' Privilege Challenges to Documents on BP's Macondo Tactical Response SharePoint Site

Dear Judge Shushan:

The United States requests that this Court order production of 75 of BP's allegedly privileged documents that were posted to the Macondo Tactical Response SharePoint Site ("Macondo Response SharePoint").  Because third parties—including Halliburton—had unfettered access to the Macondo Response SharePoint, documents on the site are neither attorney client privileged nor protected work product.  The Court should order the 75 documents to be produced.[1]

**Factual Background:  Third Parties – Including Halliburton – Had Unfettered Access to the Macondo Response SharePoint**

After losing control of the Macondo well on April 20, 2010, BP attempted to stop and quantify the flow of oil from the well.  BP used SharePoint sites to post, share, organize, and distribute documents related to its response efforts.  One in particular, the Macondo Tactical Response SharePoint Site ("Macondo Response SharePoint"), was used to share, store, and distribute information related to BP's Quantification and Source Control efforts.  BP posted a wide variety of documents to the Macondo Response SharePoint, including, for example, meeting notes, response plans, and PowerPoint presentations.  The Macondo Response SharePoint had 13 subgroups (*e.g.*, Static Kill, Relief Well Dynamic Kill, and Q4000

---

[1] Because the extrapolation process is ongoing, the United States does not address the effect of the Court's *Order Regarding in Camera Inspection of BP's Claimed Privilege in Schedule I* (July 13, 2012) (Rec. doc. 6904) (hereinafter "July 13 Order") on the Macondo Response SharePoint documents in this brief, but reserves its right to address this issue at a later time, if necessary.

1

Containment), with over 700 "permissions" (*i.e.*, ability to access the documents) granted to BP employees.

Significant for purposes of this analysis, BP granted 295 "permissions" to third party representatives, including engineering firms, public relations consultants, and computer specialists. Most importantly, BP granted access to the Macondo Response SharePoint to Halliburton, BP's adversary in the current action. Approximately 90 third party representatives—including Halliburton—were granted the right to access *all of the documents* on the Macondo Response SharePoint. *See* Email from J. Russell (BP) to A. André (U.S.) (July 17, 2012) (hereinafter "BP's July 17 Email") ("The members of the following three groups . . . had access to *all of the documents* on the Macondo Tactical Response SharePoint.") (emphasis added) (Attachment 1); *see also* United States' Macondo Tactical Response SharePoint Third Party User Table, Tab 2 (Attachment 2);[2] *see generally*, BP's Macondo Tactical Response SharePoint User and Permissions Data (Attachment 3).

In spite of Halliburton's unfettered access to all the Macondo Response SharePoint's documents, BP claims that 75 documents uploaded to the Macondo Response SharePoint are attorney client privileged and/or work product protected. *See* United States' Macondo Tactical Response SharePoint Document Table, (Attachment 4).[3] These 75 allegedly privileged documents were added to the Macondo Response SharePoint between April 22, 2010 and March 28, 2011. *See Id.* During that same time period, BP granted Halliburton and other third parties were granted unfettered access to the Macondo Response SharePoint and thus to all documents on the site. *E.g*., Macondo Response SharePoint user ID 2386, Wayne Courville (Halliburton), active 4/21/10–11/22/10; Macondo Response SharePoint user ID 2316, Bonsall Wilton (Clover Solutions), active 6/24/10–8/17/11.[4]

**The Documents on the Macondo Response SharePoint are not Attorney-Client Privileged because Confidentiality over them was Neither properly Established nor Properly Maintained.**

As this Court recently recognized, attorney client privilege is "an obstacle to the investigation of the truth [and]…ought to be strictly confined." *See* July 13 Order at 2 (quoting *United States v. Pipkins*, 528 F.2d 559, 562–63 (5th Cir. 1976)) (citations and internal quotations omitted). "Communications divulged to …outsiders can scarcely be considered confidential

---

[2] The User Table (Attachment 2) was created using BP's Macondo Tactical Response SharePoint Permissions and User Data (Attachment 3).

[3] The United States' Macondo Tactical Response SharePoint Document Table (Attachment 4) was created using BP's Macondo Tactical Response SharePoint Permissions and User Data, Privilege Log, Document Log, (Attachments 3, 5, and 6, respectively), and BP's 64th Privilege Log.

[4] The date range of unfettered access by third parties could be even broader. The information BP provided the United States regarding user access to the Macondo Response SharePoint has significant gaps. These gaps leave open questions about when dozens of individuals affiliated with third parties, including Halliburton, had access to the Macondo Response SharePoint, and what kind of access they had. Unless and until BP fills the gaps in its data, it has failed to carry its burden to prove the validity of its privilege assertions, and all the documents on the Macondo Response SharePoint should be released. For a summary of missing user information, *see* United States' Macondo Tactical Response SharePoint Third Party User Table, Tab 3 (Attachment 2).

communications between attorney and client." *United States v. Cochran*, 546 F.2d 27, 29 (5th Cir. 1977).

Failure to establish confidentiality prevents the establishment of attorney client privilege *ab initio*. Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, 246 (5th ed. 2007) (hereinafter "Epstein"). Failure to maintain confidentiality constitutes a waiver of the privilege. *See, e.g.*, *In re Vioxx Prod. Liab. Litig.*, 501 F. Supp. 2d 789, 795 (E.D. La. 2007) (explaining that the attorney client privilege requires that "confidentiality [be] anticipated and preserved…."); *Pipkins*, 528 F.2d at 563 ("It is vital to a claim of privilege that the communication[s] have been made and maintained in confidence."). "One of the circumstances by which it is commonly apparent that the communication is not confidential is the presence of a third person who is not the agent of either client or attorney." 8 J. Wigmore, *Evidence* § 2311 (McNaughton rev. 1961) (citations omitted); *see also* Epstein at 233 (communications must be made "with no intention that it thereafter be revealed to third parties" to be attorney client privileged).

If there is no reasonable expectation that a communication is confidential when made, the attorney client privilege does not apply. *See United States v. Robinson*, 121 F.3d 971, 976 (5th Cir. 1997); Epstein at 235. For example, a client's expectation of confidentiality is unreasonable when the relevant attorney-client communication is likely to be made public through another channel. *Cobell v. Norton*, 377 F. Supp. 2d 4, 14 (D. D.C. 2005). In such cases, "denying that information the protection of the attorney-client privilege is in accordance with the purposes of the privilege." *Id.* (citing *Robinson*, 121 F.3d at 976) (internal quotations omitted).

The documents on the SharePoint Site are not attorney client privileged. BP-affiliated Macondo Response SharePoint users had no reasonable expectation of confidentiality over documents placed on the site because user lists, which included each user's employer, appeared on the site's home page. S*ee, e.g.*, BP-HZN-2179MDL03290478-BP-HZN-2179MDL03290504, at 03290497 (Attachment 7); *see also*, BP-HZN-2179MDL00335101 (Email from Bryan Ritchie (BP) to BP-affiliated Macondo Response SharePoint users to notify them that he had uploaded documents to the Macondo Response SharePoint) (Attachment 8); BP-HZN-2179MDL05871285 (Email from Rick Roberts, a technical support contractor, to BP-affiliated Macondo Response SharePoint users to notify them that he had uploaded documents to the Macondo Response SharePoint) (Attachment 9). Therefore, every time a BP-affiliated Macondo Response SharePoint user accessed the site, the user could see that Halliburton and other third parties also had access. As a result, Macondo Response SharePoint users had no reasonable expectation of confidentiality over the documents uploaded to the Macondo Response SharePoint, and attorney client privilege over such documents was never established or maintained.

Even if attorney client privilege had been properly established over Macondo Response SharePoint documents before upload, such privileges were waived once uploaded because Halliburton and other third parties had access to all the site's documents. *See* BP's July 17 Email. The *possibility* of access to privileged documents by third parties has often been considered a waiver of the attorney client privilege. Epstein at 427. Based on the proposition that clients and attorneys must take sufficient precautions to protect their confidential communications, courts have held that attorney client privilege is waived when clients voluntarily turn over privileged documents to third parties, *even when those third parties did not necessarily examine them*. *See id.* at 427–428 (emphasis added); *In re Horowitz*, 482 F.2d 72, 81

(2d Cir. 1973) (holding that the failure to take action to protect the privileged documents waived the privilege); *Jarvis, Inc. v. American Tel. & Tel. Co.*, 84 F.R.D. 286 (D. Colo. 1979) (finding privileges over documents waived because third parties had routine access to them).

As noted above, allegedly-privileged documents were added to the Macondo Response SharePoint between April 22, 2010 and March 28, 2011, *see* United States' Macondo Tactical Response SharePoint Document Table, (Attachment 4), and third parties were granted unfettered access to the Macondo Response SharePoint during that time period. *See* United States' Macondo Response SharePoint Third Party User Table (Attachment 2). Thus, none of the documents on BP's Macondo Response SharePoint privilege log are attorney client privileged.

The United States requests that this Court order the release of any documents on the Macondo Response SharePoint over which BP has claimed attorney client privilege.[5]

**The Documents on the Macondo Tactical Response Site are not Protected Work Product because they were Disclosed to Halliburton, BP's Adversary.**

Work product protection is waived when protected documents are disclosed to adversarial parties or a substantial risk of disclosure is created. Epstein at 1037; *see also In re Hardwood P-G, Inc.*, 403 B.R. 445, 463 (Bankr. W.D. Tex. 2009) ("[C]ourts find that a party has waived a work product protection 'if work-product is disclosed to adversaries.'") (internal citation omitted). "Because the protection is designed to protect an attorney's trial preparation and mental processes from discovery at the behest of an adversary, clearly voluntary disclosure to an adversary would almost invariably be seen as total waiver." Epstein at 1034; *see also In re Hardwood* 403 B.R. at 463; *Behnia v. Shapiro*, 176 F.R.D. 277, 279 (N.D. Ill. 1997); *cf. Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989).

To the extent that documents on the Macondo Response SharePoint were created in anticipation of litigation at all, work product protection over Macondo Response SharePoint documents has been waived as a result of BP's *voluntary* disclosure to Halliburton, BP's adversary. This is true even if Halliburton did not access all the documents BP now claims as protected because "waiver occurs if work-product is treated in a manner that substantially increases the likelihood that an adversary will come into possession of the material." *In re Hardwood* 403 B.R. at 463 (internal quotations omitted); Epstein at 1037 ("Actual disclosure to an adversary need not necessarily have occurred for a waiver to occur. It is often enough if a substantial risk of disclosure has been created."). BP voluntarily uploaded the 75 documents to a site to which Halliburton had free access. Based on the time frame during which Halliburton had unfettered access to the Macondo Response SharePoint (4/21/10–11/22/10),[6] the United States

---

[5] Of course, waiver of attorney client privilege can also result in subject matter waiver, which requires that communications on the same subject matter also be produced. *See* July 13 Order at 12 ("Where disclosure of attorney-client communication is purposeful, generally all documents on the same subject matter will and should be ordered disclosed lest the disclosing party manipulate the disclosure unfairly to its own advantage." (*citing* Epstein at 1116)). If the Court orders production of the 75 documents at issue in this letter, the United States will review them and request extrapolating the subject matter waiver to other documents, as appropriate.

[6] *See supra*, footnote 4, regarding the time frame during which Halliburton had access to Macondo Response SharePoint documents.

4

requests that the Court order that any claimed work product protection on the 75 withheld documents has been waived, and that those documents be produced.

**In the Alternative, the Documents on the Macondo Response Site are not Protected Work Product because They were Not Created in Anticipation of Litigation.**

As an alternative, if the Court does not order production of all documents on the Macondo Response SharePoint over which BP claims work product protection, then the United States asks the Court to perform a limited *in camera* review of the ten documents identified with an "X" in column A of the United States' Macondo Tactical Response SharePoint Document Table (Attachment 4). Such a review will show that the documents were not work product in the first place.[7]

The Court recently recognized that "[w]here the primary purpose for preparing a document is not litigation but some other business purpose, work product protection is not accorded." July 13 Order at 8 (citing Epstein at 868). Thus, if a document would have been prepared regardless of whether litigation was anticipated, work product protection does not apply. Epstein at 855; *see also Naquin v. Unocal Corp.*, No. 01-3124, 2002 WL 1837838, at *7 (E.D. La. Aug. 12, 2002) ("If a party or attorney prepares a document in the ordinary course of business, it will not be protected from discovery….") (alteration in original) (internal quotations omitted); *Aiken v. Tex. Farm Bureau Mut. Ins. Co.*, 151 F.R.D. 621, 623 n.2 (E.D. Tex. 1993) ("The touchstone of inquiry seems to be whether the prior disclosure had been made to a present adversary: if not, the privilege survives."). Many of the documents on the Macondo Response SharePoint were never shielded under work product protection because they would have been created for the response regardless of potential litigation. For example, BP's Macondo Response SharePoint Privilege Log entries include the following documents that appear to be response related: *Vessel Demobilization- Collection Guidelines* (PRIV-BP-HZN-2179MDL00009412), *Enterprise-Q4000* (PRIV-BP-HZN-2179MDL00010248), and *MC252-1 Contingency Recover BOPs with DP inside Rev* (PRIV-BP-HZN-2179MDL00010876).[8] These documents are not work product and should be released.

---

[7] Nine are stand alone documents that should be produced. Based on the Court's ruling, BP should extrapolate, *e.g.,* to release all documents on BP's Macondo Response SharePoint privilege log created in response to the spill. One of the *in camera* documents is an example of a Relief Well Team Progress PowerPoint (30 of which were logged). If the court finds that the Relief Well Team Progress PowerPoint is not privileged or protected, the United States requests that BP extrapolate that ruling to the other documents with similar or identical names.

[8] Note that, according to BP's Macondo Response SharePoint productions, these documents were not uploaded by members of BP's Flow Rate Technical Team; they were uploaded by non-BP employees. *See* United States' Macondo Tactical Response SharePoint Document Table (Attachment 4). Note also that the "Created By" date in these logs is not indicative of when the underlying document was written. Some posted after July 18, 2010 may have been written beforehand.

5

## CONCLUSION

BP has not adequately supported its claims of attorney client privilege or work product protection over the 75 Macondo Response SharePoint documents. The United States requests that all of those documents be released.

        Respectfully submitted,

        */s/ Abigail E. André*
        Abigail E. André

cc:    Liaison & Coordinating Counsel
       Robert Gasaway

## LIST OF ATTACHMENTS

<u>Attachment #</u>     <u>Description</u>

1. July 11 Email from J. Russell (BP) to A. André (US)

2. United States' Macondo Tactical Response SharePoint Third Party User Table, created using BP's submissions, provided in .pdf and native formats

3. BP's Macondo Tactical Response SharePoint Permissions and User Data, as submitted to the United States via email on July 10, 2012

4. United States' Macondo Tactical Response SharePoint Document Table, created using BP's submissions, provided in .pdf and native formats

5. BP's Macondo Tactical Response SharePoint Privilege Log, as submitted to the United States via email on July 5, 2012

6. BP's Macondo Tactical Response SharePoint Document Log, as submitted to the United States via email on June 29, 2012

7. Macondo Tactical Response SharePoint Home Page (BP-HZN-2179MDL03290478)*

8. B. Ritchie (BP) Macondo Tactical Response SharePoint Email (BP-HZN-2179MDL00335101)*

9. R. Roberts (Frontline Group) Macondo Tactical Response SharePoint Email (BP-HZN-2179MDL05871285)*

\* Marked as confidential by BP