**KIRKLAND & ELLIS LLP**
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

August 2, 2012

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

      Re:    MDL 2179 — United States' Privilege Challenges to Documents on BP's Macondo Tactical Response SharePoint Site

Dear Judge Shushan:

      The United States' motion regarding Macondo SharePoint documents seeks to hold BP to a different and higher standard than the one it would have applied to its own crisis-response-related documents.

      According to the United States, when it comes to documents pertaining to the United States' own crisis response to *Deepwater Horizon* oil spill, "[p]eople were getting the job done first and worrying about document maintenance second." Yet now the United States contends that BP should have prevented third parties that worked closely with BP on the response from having the right to access databases that also came to include one or more privileged documents — on pain of forfeiting the privilege over those documents.

      As a matter of basic fairness, no different or higher standard should apply to BP than to the United States. But, even if the standard were different, the outcome of this motion would be the same. Quite apart from the crisis background to the creation and use of the Macondo SharePoint, there is a clear legal distinction between instances where a third party has a "right" to access a database that also contains privileged documents, and instances where a third party actually accesses, familiarizes itself with, and learns the "gist" of, such privileged documents. Here, Halliburton neither accessed, nor reviewed, nor learned the gist of the documents at issue. Accordingly, there was no waiver of BP's privileges.

      As extensively discussed with the Court, BP will not address in this submission the United States' "not work product to begin with" argument for reasons set forth in a number of

Chicago     Hong Kong     London     Los Angeles     Munich     New York     Palo Alto     San Francisco     Shanghai

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 2, 2012
Page 2

emails and court conferences on July 31, 2012, August 1, 2012, and August 2, 2012. BP reserves the right to respond to those arguments should the Court request a response.

## I. THE UNITED STATES SEEKS TO HOLD BP TO A HIGHER STANDARD THAN IT APPLIES TO ITSELF.

As the Court knows, BP promptly cooperated with the United States Coast Guard's Unified Command that directed the oil spill response, devoting tens of thousands of personnel, massive amounts of equipment, and enormous financial resources to that effort. In the process, tens of millions of documents were generated by BP personnel and other participants in the spill response.

The United States has expressed its view of its own document maintenance responsibilities in connection with its own role in this massive spill response effort:

- "The U.S. asserted its first priority during the response was to stop the oil spill, and that quantifying the oil was the secondary concern, and *collecting documents was the third priority*, and the United States expects that there will be inevitable gaps because the United States was not focused on who was using which computer." United States statement on May 9, 2012 call with BP, as confirmed in BP email of May 11, 2012. (Exhibit A) (emphasis added).

- "The U.S. stated that some gaps in the production of U.S. emails are inevitable in this case because *human beings could not keep up with the amount of email they were getting* when dealing with one of the largest oil spills in history and staying up very late at night to do it." United States statement on May 3, 2012 call with the Court, as confirmed in email of same date sent by BP to the Court. (Exhibit B) (emphasis added).

- "People were getting the job done first and *worrying about document maintenance second*." United States statement on May 10, 2012 call with the Court (emphasis added).

- "These circumstances perfectly illustrate the *instruction that the United States provided to all individuals working on its behalf*: when your responsibilities in responding to the Deepwater Horizon explosion and unprecedented oil spill conflict with your obligation to preserve documents pursuant to a litigation hold, protect human health and safety and the environment first, and *worry about document

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 2, 2012
Page 3

> *preservation second.*"   June 25, 2012 Letter from United States (Exhibit C) (emphasis added).

In a July 16, 2010 memorandum, the Coast Guard stated:

> The inadvertent inclusion of documents containing confidential, privileged, or private information in the Central Archive, and *the disclosure of such documents or information during the process of compiling the Central Archive, shall not*, to the fullest extent available under applicable law, operate to *waive* or otherwise deprive the USCG, BP, or any other person or entity, of *any claim or right of confidentiality, legal privilege, or privacy concerning such documents*.   July 16, 2010 Memorandum from Admiral Zukunft to Unified Area Command Documentation Units, at 3 (Exhibit D).

Notwithstanding these statements, the United States now appears to propose a different set of rules for BP. Specifically, the United States claims that, even in connection with the response effort — where according to the United States tens of thousands of people were "dealing with one of the largest oil spills in history and staying up very late at night to do it" — no third party should have been permitted access to a SharePoint containing any of BP's privileged response documents, even if they too were helping with the spill response. For reasons explained below, no privilege has been waived in the first place. But even leaving the settled law aside, the United States' argument must be rejected: basic fairness demands that the same legal standard should apply to both BP's and the United States' documents.

### II.   THE UNITED STATES FAILS TO ESTABLISH WAIVER.

Apart from the fact that the United States asks the Court to hold BP to a standard that the United States is unwilling to accept for itself, the United States' argument must be rejected as a matter of law.

Third-party access to a database does not waive privilege, particularly where, as here, the third party does not actually access and learn the gist of the privileged documents. Rather, in order for there to be waiver, a third party must actually access those electronic documents and learn the gist of what they say. Merely hosting certain documents on a server, together with other, non-privileged documents being used by third-parties, is not enough.

The United States submission largely rests on the assertion that "*[m]ost importantly, BP granted access to the Macondo Response SharePoint to Halliburton*, BP's adversary in the

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 2, 2012
Page 4

current action.  Approximately 90 third party representatives — including Halliburton — were granted *the right to access* all of the documents on the Macondo Response Share Point." (Letter from A. André to Judge Shushan, at 2 (hereinafter "U.S. Letter Brief"), July 26, 2012) (emphasis added).

The United States' use of the phrase "*right to access*" is telling.  Here, Halliburton did not actually access *any* of the 67[1] privileged documents that are now at issue.  *See* Decl. of BP IT&S Electronic Discovery Manager Michael Reiley, Submitted Under Seal.  Indeed, the only third-parties who accessed any of the 67 documents at issue were IT, administrative, information management personnel, plus one individual who worked on the legal hold.  *See* Decl. of Reiley and Decl. of BP Employee Bill Kirton, Submitted Under Seal. (The United States refers to IT personnel in its brief as "computer specialists"; access to document databases by such personnel obviously does not give rise to waiver for the reasons discussed in Section II.E below.)

Undeterred, the United States argues that "courts have held that attorney client privilege is waived when clients voluntarily turn over privileged documents to third parties, *even when those third parties did not necessarily examine them*." (U.S. Letter Brief at 3) (emphasis in original).  The only two cases cited by the United States for that broad proposition — *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973), and *Jarvis, Inc. v. American Tel. and Tel. Co.*, 84 F.R.D. 286 (D. Colo. 1979) — are clearly distinguishable.

As an initial matter, both *Jarvis* and *Horowitz* involved hard copies of documents.  The United States cites no decision holding that a third-party's mere right to access an electronic database of documents waived privilege for all documents in the database, absent evidence that a third-party actually accessed the privileged documents.  BP respectfully requests that the Court decline the United States' invitation to create new law in this area.  Particularly in the case of file shares or share points, mere "right to access" does not legally suffice to establish waiver.  Instead, as discussed in Section C, something more is required:  that the third party learn the "gist" of the documents.  *See Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 63 (D.D.C. 1984) ('the mere fact that defendants had an opportunity to open a file drawer cannot constitute a 'disclosure' of privileged information"; other party must gain "gist" of document for waiver to occur).

Moreover, both *Jarvis* and *Horowitz* are distinguishable in other respects as well.  The two cases are discussed below.

---

[1] Of the 75 documents referenced by the United States, eight non-privileged documents have been produced at BP-HZN-2179MDL07279495 - BP-HZN-2179MDL07279774.  Halliburton did not access these documents either.

**KIRKLAND & ELLIS LLP**

The Honorable Sally Shushan
August 2, 2012
Page 5

      A.     <u>*Jarvis*</u>

In *Jarvis, Inc. v. AT&T Co.*, 84 F.R.D. 286 (D. Colo. 1979), a dated district court decision from a different circuit, Mr. Kirchoff, a non-attorney Vice-President of Mountain Bell, was asked to investigate "some 150 alleged incidents involving Mountain Bell and antitrust matters." *Id.* at 288. The *Jarvis* Court ruled that the communications between Mountain Bell's employees and Mr. Kirchoff concerning antitrust investigations were not privileged because he was not within the "control group"[2] at Mountain Bell. *Id.* at 291-92.

With respect to waiver, the *Jarvis* Court stated:

> The documents gathered in this case were not removed from Mountain Bell files. The documents, which were kept in the normal course of business, were merely copied; the originals can routinely be viewed *by Mountain Bell employees*. Thus, *we question the confidentiality* of the documents and the applicability of the privilege to those documents. *Id*. at 292.

Three aspects of this quotation are notable. *First*, the *Jarvis* Court did not discuss issues of disclosure to non-employee "third parties" (which is what the United States claims as the basis for waiver here), but only disclosure to "employees." It is common to give "employees" access to file shares and SharePoints. Indeed, that is the whole point of file shares and SharePoints. If it were the law that privileges are waived whenever an *employee* has access to a file share or SharePoints containing privileged documents, all parties — including the United States — would have to produce virtually all privileged documents on all file shares or SharePoints. *Jarvis* simply does not address the present situation involving non-employee third parties and file shares.

*Second*, and relatedly, the documents at issue in Jarvis were maintained in hard copy, not on a file share. *Id*.

*Third*, the *Jarvis* Court "questioned the confidentiality" of the documents in the first instance. *Id*. It did not hold that there was no confidentiality or waiver, nor did it need to in light of the three other bases for its privilege ruling.

---

[2]    The *Jarvis* Court cited 10th Circuit law in support of application of the control group test, as well as *United States v. Upjohn Co.*, 600 F.2d 1223 (6th Cir. 1979). But the Sixth Circuit's decision in *Upjohn* was reversed by the United States Supreme Court, which rejected the control group test. *See Upjohn Co. v. United States*, 449 U.S. 383 (1981).

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 2, 2012
Page 6

    **B.**    ***Horowitz***

In *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973), a married couple, the Kassers, provided hard copy documents to their accountant. As an initial matter, the *Horowitz* Court stated that "[t]he record concerning Horowitz' use of the files containing communications between the Kassers and lawyers is meager." *Id.* at 80. An admittedly "meager" record from a Second Circuit case is not a good basis for the United States' invitation to create new law as the first decision to hold that the mere "right" of a third party to access a file share waives attorney-client privilege.

According to the meager record in *Horowitz*, the files of hard copy documents provided to the accountant included attorney-client communications. As people often do with stacks of hard copy documents, Horowitz the accountant "thumbed through" the hard copy stacks:

> Horowitz first testified that "If the file was labeled 'Legal', I had no occasion to look at it," although there may have been times when Kasser showed him a letter from a lawyer. *Later, he conceded that he "may have thumbed through them" or "glanced at them", and may have "seen what they said."* He claimed, however, that he would read the legal files "[o]nly if there was some specific reason for me to search for something or Kasser had told me that there was a legal opinion on it, and that was rare," since usually he would communicate directly with the attorneys when a legal problem arose.

*Id.* at 80-81 (emphasis added).

Unlike with hard copy documents, a person cannot "thumb through" documents on a file share. If a person wants to view somebody else's privileged document on a file share, he or she has to make an affirmative decision to click on the document and open it. As set forth in Mr. Reiley's declaration, Halliburton did not do that.

*Horowitz* also states:

> This leaves for decision the applicability of the attorney-client privilege to files possibly containing communications that were initially within that privilege, to which Horowitz had unrestricted access at the Lorraine Avenue office, but which he apparently never viewed
>
> . . .

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 2, 2012
Page 7

> It is apparent that Horowitz had the authority to look at any of the legal communications, many of which appear to deal with the tax and financial matters with which he was particularly concerned, if he thought that he might find something relevant to his preparation of Kasser's tax returns or other reports or his management of Kasser's finances during the latter's absence. Under the circumstances of this case, the confidentiality of communications between Kasser and his attorneys had come to an end.

*Id.* at 81-82.  Unlike the married couple's personal accountant in *Horowitz,* Halliburton was not provided documents by BP with an express "authority to look at any of [BP's] legal communications" because of the privileged documents' bearing on work Halliburton had been hired to perform.  *Id.* at 82.  *Horowitz* thus has no relevance to this case.

      **C.**      <u>**Halliburton Never "Got the Gist" of BP's Documents**</u>

As discussed above, *Jarvis* and *Horowitz* do not involve electronic document storage, and Halliburton did not in fact access the relevant documents.  That should be the beginning and the end of this dispute.

In fact, however, the United States is yet another step removed from establishing waiver.  A third party must get the "gist" in order for there to be waiver.  *See, e.g., The Navajo Nation v. Peabody Holding Co., Inc.*, 255 F.R.D. 37, 48 (D.D.C. 2009) ("A document will be considered disclosed by a plaintiff when the defendant has *learned the 'gist'* of the documents' contents.") (emphasis added); *In re United Mine Workers of Am. Emp. Benefit Plans*, 156 F.R.D. 507, 513 n.9 (D.D.C. 1994) ("A privileged document is deemed 'disclosed' when a party has *learned the 'gist'* of the document's contents.") (emphasis added); *Prebilt Corp. v. Preway, Inc.*, Not Reported in F.Supp., 1988 WL 99713, at *3 (E.D. Pa. Sept. 23 1988) ("[A]n important factor in considering whether to compel production is whether the party reviewing the document has *learned the "gist"* of the document's contents.") (emphasis added); *Eagle-Picher Indus., Inc. v. U.S.*, 11 Cl.Ct. 452, 461 (Cl. Ct. 1987) ("it has been held that *disclosing the 'gist'* of a document or a 'significant part' of a privileged communication  constitute disclosure that may waive the protection.") (internal citations omitted and emphasis added); *Chubb Integrated Systems Ltd. v. Nat'l Bank of Washington,* 103 F.R.D. 52, 63 (D.D.C. 1984) ("Few cases have discussed the degree of disclosure necessary to constitute a waiver. . . . We will deem a document "disclosed" where defendant has *learned the 'gist'* of the document's contents.") (emphasis added).  In order to get the "gist" of what was in a privileged document on a file share, Halliburton would have had to access that privileged document first.  Thus, the United States is two steps away from establishing waiver here:  (1) actual access; and (2) getting the "gist."

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 2, 2012
Page 8

In short, even if BP were held to a different, higher standard in connection with protecting the confidentiality of privileged documents during the conditions of the spill response, the Court would still have to (i) go beyond the authorities cited by the United States in finding waiver based on placement of documents on a file-sharing system; (ii) conclude that Halliburton actually viewed the documents; and (iii) conclude that Halliburton learned the "gist" of the documents. The fact that Halliburton had an electronic right to access documents in the context of the response does not suffice.

### D. BP's Expectation of Confidentiality Was Reasonable

BP's expectation of confidentiality as to the 67 privileged documents was reasonable. BP had a well-grounded expectation that, even if Halliburton had access the file share, Halliburton would have neither the time nor the inclination during the response to snoop around the fileshare folders looking for privileged documents that had no bearing on Halliburton's work. The reasonableness of BP's expectation in this regard is strongly confirmed by the fact that we now know that Halliburton, in fact, did not access any of the privileged documents.

### E. Access By IT, Information Management, and Administrative Personnel Is Not Waiver

Finally, the United States asserts that BP's documents were accessed by "computer specialists" retained by BP. (U.S. Letter Brief at 2). Here, the only third parties who accessed any of the 67 documents at issue were IT, information management,[3] and administrative personnel, and one individual who worked on legal holds. (*See* Declarations of Mike Reiley and Bill Kirton, Submitted Under Seal)  (If the Court is interested in receiving any additional information about the IT, information management personnel mentioned in the Reiley and Kirton declarations, BP would be pleased to submit such information *in camera* and at any level of detail the Court requests.)  Access by third-party information consultants does not create waiver. If it did, nearly every party in this litigation likely would have unknowingly waived privileges as to every file share, SharePoint, document production database, and email system that third-party contractors or vendors help to create and maintain. It would be revolutionary indeed if parties were now to be told that third-party information consultants must be completely walled off from privileged documents on pain of forfeiting the privilege.

---

[3] Information management personnel do things such as electronically organizing documents and creating file shares and share points.

**KIRKLAND & ELLIS LLP**

The Honorable Sally Shushan
August 2, 2012
Page 9

### III. THE UNITED STATES' OTHER COMPLAINTS ARE MERITLESS

The United States also complains, in a footnote, that "[t]he information BP provided the United States regarding user access to the Macondo Response SharePoint has significant gaps." (U.S. Letter Brief at 2 n.4). But on July 12, 2012, the United States informed the Court that, in response to United States requests for BP access data from the Macondo SharePoint, "*BP has produced the documents the United States requested*." July 12, 2012 email from S. Himmelhoch to Judge Shushan (emphasis added).

If the United States sought more information from BP, it should have asked before filing its motion, instead of stating in its pre-filing submissions that "BP has produced the documents the United States requested," followed by a statement in a footnote of its motion that there are "gaps." In any event, the data that BP has voluntarily provided for the Macondo SharePoint is extensive and a significant effort was involved in compiling it; it is more complete than the data that the United States provided for the Sandia SharePoint — and more than enough for the Court to decide this motion.

\*   \*   \*   \*   \*

For reasons set forth above, the United States' waiver arguments lack merit.

Sincerely,

Robert R. Gasaway

Attachment

cc (via electronic mail):

Sarah D. Himmelhoch
Steve O'Rourke
Scott M. Cernich
Robin L. Hanger
Thomas A. Benson
Bethany Engel

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 2, 2012
Page 10


Aristide Chakeres
Abigail Andre
Donald E. Godwin
David A. Baay
Joel M. Gross
Allison B. Rumsey
Plaintiffs' Liaison Counsel
Defense Liaison Counsel (dsc2179@liskow.com)