UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179<br><br>SECTION J |
| Applies to: *All Cases* | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

**ORDER**

**[Regarding the Privilege Challenges to Documents on BP's SharePoint Site]**

After the Macondo well blew out on April 20, 2010, BP sought to cap and contain the hydrocarbons. BP created the Macondo Tactical Response SharePoint Site to share, store and distribute information related to the post-April 20, 2010 effort. The site had 13 subgroups, for example Static Kill, with permission granted to many BP employees to access the site. BP granted permission to third party representatives, for example engineering firms and computer specialists, to access the site. It also granted permission to Halliburton, one of BP's adversaries in the MDL litigation, to access all of the documents on the site. Rec. doc. 7069.

The U.S. requests that BP be ordered to produce 75 documents from the site. BP produced 8 of the documents, leaving 67 documents in dispute. Rec. doc. 7070 at 4.[1] It is undisputed that the third parties who accessed any of the 67 documents were IT, administrative, information management personnel, plus one individual who worked on the legal hold. While Halliburton had access to the site, it did not access any of the 67 documents. Id. There is no evidence that any other BP adversary, including the U.S., was granted access to the site or the documents. Halliburton has

---

[1] On August 6, BP reported that it planned to release all but 27 of the 75 documents identified by the U.S., including 8 of the 10 sought for in camera submission. Because plans sometimes change, this order will refer to 67 documents as remaining at issue.

not submitted a brief in support of the request for production of the documents.

BP asserts that the 67 documents are protected from disclosure by the attorney-client privilege and/or work-product doctrine. The Court begins with consideration of whether there was waiver of work-product protection. If it was not waived, it is not necessary to consider whether there was waiver of the attorney-client privilege.

> The waiver of the attorney-client privilege for a communication does not automatically waive whatever work-product immunity that communication may also enjoy, as the two are independent and grounded on different policies. Waiver of the privilege should <u>always</u> be analyzed distinctly from waiver of work-product, since the privilege is that of the client and the work-product essentially protects the attorney's work and mental impressions from adversaries and third parties even when communicated to the client.

Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, A.B.A., Sec. of Lit. (5th Ed. 2007) ("Epstein"), at 1027 (emphasis added).

> Nonetheless, the cases approach uniformity in implying that work-product protection is not as easily waived as the attorney-client privilege. The privilege, it is said, is designed to protect confidentiality, so that any disclosure outside the magic circle is inconsistent with the privilege; by contrast, work-product protection is provided against "adversaries," so only disclosing material in a way inconsistent with keeping it from an adversary waives work-product protection. At least five circuits have adopted this rule in some form.

<u>U.S. v. MIT</u>, 129 F.3d 681, 687 (1st Cir. 1997) (citations and footnote omitted).

The issue is whether there was waiver as a result of the access granted to Halliburton. With work-product protection "[i]n most instances, courts have held that it is the fact of the disclosure that is determinative for purposes of waiver. . . ." Epstein at 1030. The U.S. argues that there was voluntary disclosure to Halliburton even if Halliburton did not access the documents because waiver occurs if work-product is treated in a manner that substantially increases the likelihood that an adversary will come into possession of the material.

BP contends that its expectation of confidentiality as to the 67 documents was reasonable. It states that "BP had a well-grounded expectation that, even if Halliburton had access to the file share, Halliburton would have neither the time nor the inclination during the response to snoop around the fileshare folders looking for privileged documents that had no bearing on Halliburton's work."  Rec. doc. 7070 at 8.

Where the work-product document was produced and the opposing counsel had not looked at the document, there is authority that a waiver did not occur.  Epstein at 1036 (citing United States v. Rigas, 281 F.Supp.2d 733, 742 (S.D.N.Y. 2003)).  In Rigas, the court found: (a) no carelessness in the production; and (b) none of the defense counsel reviewed the document, so the purpose of the work-product protection was not undermined.  As noted by the U.S., there also is authority that actual disclosure to an adversary need not necessarily have occurred in order for waiver to occur. It is often enough if a substantial risk of disclosure has been created.  Epstein at 1037 (Behnia v. Shapiro, 176 F.R.D. 277, 279 (N.D. Ill. 1997)).

Because the evidence demonstrates that Halliburton did not actually review the documents, the waiver issue will be considered under the principles for an inadvertent disclosure.

> Any inadvertent disclosure of work product should not ordinarily entail subject matter waiver.  Given the purposes that are served by the work product doctrine such a result would in ordinary circumstances be perfectly extraordinary and entirely punitive for no cognizable judicial purpose.

Epstein at 1037.  The work-product protection for the 67 documents was not waived when Halliburton was granted access to the SharePoint site.

Because the work-production protection was not waived for the 67 documents, it is not necessary to consider whether there was a waiver of the attorney-client privilege.  The issue of whether the documents were created in anticipation of litigation and lack work-product protection

3

will not be addressed. That shall be resolved through the extrapolation process.

The deadline for an appeal of this order is **Friday, August 17, 2012.**

New Orleans, Louisiana, this 8th day of August, 2012.

**SALLY SHUSHAN**
**United States Magistrate Judge**