IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * * * * * * | MDL NO. 2179 <br><br> SECTION J <br><br> HONORABLE CARL J. BARBIER <br><br> MAGISTRATE JUDGE SHUSHAN |
| Bon Secour Fisheries, Inc., et al., individually and on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BP Exploration & Production Inc.; BP America Production Company; BP p.l.c., <br><br> Defendants. | * * * * * * * * * * * * * * * * * | Civil Action No. 12-970 <br><br> SECTION: J <br><br> HONORABLE CARL J. BARBIER <br><br> MAGISTRATE JUDGE SHUSHAN |

DECLARATION OF JOSEPH F. RICE
RE: ATTORNEYS' FEES

I, JOSEPH F. RICE, respectfully declare, under penalty of perjury, that the following is true and correct to the best of my knowledge, information and belief:

1. I am licensed to practice law in the State of South Carolina and in the District of Columbia. I am admitted to appear before the United States Fifth Circuit Court of Appeals and the United States Supreme Court, among others.

2. I work with the law firm of Motley Rice LLC, and my principal office is located in Mount Pleasant, South Carolina. Over the course of my legal career I have been extensively involved in complex litigation starting in 1979 in the Asbestos litigation. Among some of the more significant cases I have been involved in are the Tobacco Litigation representing Attorneys General where I served as Lead Negotiator for the Settling States, groundbreaking asbestos cases of *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), and I served on the Asbestos Creditor's Committee and/or Trust Advisory Committee in the bankruptcy cases of asbestos defendants Armstrong World, Federal Mogul, Johns Manville, Celotex, Garlock, WR Grace, Babcock& Wilcox, US Gypsum, Owens Corning, Pittsburgh Corning. In most if not all of the bankruptcy committees my function was to be extensively involved in the resolution and negotiations. For further detail about my background please see the attached bio.

3. In the *Deepwater Horizon* litigation Plaintiffs' Steering Committee ("PSC") member Calvin F. Fayard, Jr. was appointed by Co-Liaison Counsel at the outset to explore and pursue potential settlement opportunities. Mr. Fayard, with the approval of Co-Liaison Counsel, enlisted my assistance in the exploration and development of potential settlement opportunities in the *Deepwater Horizon* litigation. From the Fall of 2010 through the current time I have been involved on a day-to-day basis with the preparations

for the settlement, settlement negotiations, and implementation of the Settlement Agreement.

The scope of this declaration is intended to focus on my involvement with the attorneys' fee negotiation. An additional declaration has been provided to the Court that deals with my involvement with the negotiations and the details of the negotiations themselves.

4. Prior to April 17, 2012 the only discussions the parties at the negotiating table had concerning attorneys' fees was to make it clear that the PSC/Class Counsel intended to file an appropriate attorneys' fees request for common benefit work on behalf of the Class, and that they would anticipate BP paying whatever attorneys' fees were approved by the Court over and above the payments to any claimant.

5. On April 17, 2012, the parties delivered to the Court, pursuant to its direction, a signed Settlement Agreement, complete with all Exhibits, except an attorneys' fee agreement. We then received confirmation of receipt, and authorization to commence a discussion of attorneys' fees, from the Court, which set a deadline of the morning of April 18, 2012, within which to complete discussions, execute, and file any attorneys' fee provision. Prior to April 17, there had been no substantive discussion of attorneys' fees.

6. Uniquely in these negotiations the parties had available at the time information about the scope of potential claims based on the short form joinders filed with the Court and the GCCF history. Moreover, BP had information about the substantial efforts of the PSC/Class Counsel, including the amount of time expended based upon the PSC's filings with the Court in connection with the "hold back" motion.

7. On behalf of the Plaintiff Steering Committee ("PSC") and proposed Class Counsel, Jim Roy, Steve Herman, Calvin Fayard, Duke Williams, and I attended the attorneys' fee meeting. On behalf of BP, they were represented by Jim Neath, Rick Godfrey, Mark Holstein, Jeff Lennard, and other personnel from their offices. It was understood that the parties present had full authority to complete the negotiations regarding attorneys' fees.

8. We convened at the Ritz Carlton Hotel boardroom and commenced discussions at 10:25 a.m. The initial presentation was made by Jim Roy and me. Jim Roy set forth the unique nature of the case, the magnitude of the dollars involved, the existence of two separate class actions and other matters.

9. I then presented the economic methodology the PSC was proposing for calculation of the fee. We proposed to use Super Mega Fund Fee Awards as identified on "Exhibit A." I began discussion about the developing judicial view that the increase in the size of the Settlement Fund warranted an increase in attorneys' fee percentage. We also discussed the continued requirements of Class Counsel, the highly unusual nature of this case in allowing Class members to be compensated during the pendency of the Court's consideration of the Settlement including any appeals that may be taken and the non-monetary benefits. The PSC made an initial demand regarding attorneys' fees and BP shortly thereafter made its official offer.

10. For the next six hours the parties went back and forth making arguments concerning the pros and cons of each others' position, looking at different ways to calculate the fees, with additional offers and demands made.

Case 2:10-md-02179-CJB-DPC   Document 7101-10   Filed 08/13/12   Page 5 of 10

11. The negotiations moved from the total amount of the fee plus costs, to a discussion of what amounts might be placed into an attorneys' fees Trust calculated upon payments made to class members prior to finality.

12. Judge Shushan monitored the negotiations.

13. Multiple one-on-one discussions were had. At approximately 1:00 a.m. on April 18th the parties agreed that BP would pay attorneys' fees of $75 million upon preliminary approval by the District Court, and (subject to a credit for that $75 million) 6% on all payments made by BP through the Court Supervised Settlement Program (including transition payments) with a cap of $480 million irrespective of final approval. In the event of final approval, and subject to court approval, BP would pay a total of $600 million in attorneys' fees. The parties mutually agreed to seek clarification of the Hold-Back Order to make it clear that no funds would be deducted or "held-back" out of any settlement payments or other benefits to Class Members in connection with the Medical Class Settlement and/or the Economic and Property Damages court supervised settlement program.

14. While the parties had agreed to the terms, the drafting of the provisions presented challenges in and of itself on wording, structure, the use of qualified settlement fund, and other details. Members of the PSC led by Steve Herman and Duke Williams worked throughout most of the night with representatives of BP to continue moving forward on a draft.

15. Ultimately, on the morning of the 18th the parties reached agreement on the wording of the attorneys' fees provisions that are contained within the Settlement Agreement.

Signed under penalty of perjury, this 10th day of August, 2012, in Mount Pleasant, South Carolina.

_____
JOSEPH F. RICE

| SUPER MEGA FUND FEE AWARDS[1] | | |
|---|---|---|
| Case | Fund Value | Percentage Award |
| *Newby v. Enron Corp.* (MDL No. 1448), 586 F. Supp. 2d 732 (S.D. Tex. 2008) | $7.227 billion | 9.52% |
| *In re Diet Drugs*, 554 F. Supp. 2d 442 (E.D. Pa. 2008)[2] | $6.44 billion | 6.75% |
| *WorldCom, Inc. Securities Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) | $6.133 billion | 5.5% |
| *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640 (E.D. La. 2010) | $4.85 billion | 6.5% |
| *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003) | $3.383 billion | 6.5% |
| *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 2007 U.S. Dist. LEXIS 95199, 2007 WL 4462593 (D.N.H. Dec. 19, 2007) | $3.3 billion | 14.5% |
| *AOL Time Warner*, 2006 U.S. Dist. LEXIS 78035, 2006 WL 3057232 (S.D.N.Y. 2006) | $2.65 billion | 5.9% |
| *Shaw v. Toshiba*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) | $1 to $1.1 billion | 15%[3] |
| *In re Prudential Sales Practices Litig.*, 106 F. Supp. 2d 721 (D.N.J. 2000) | $1.325 billion | 6.8% |
| *In re Royal Ahold N.V. Sec & ERISA Litig.*, 461 F.Supp. 2d 383 (D. Md. 2006) | $1.1 billion | 11.88% |
| *Allapattah Servs. v. Exxon Corp.*, 454 F.Supp. 2d 1185 (S.D. Fl 2006) | $1.075 billion | 33.33% |
| *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998) | $1.07 billion | 14% |

---

[1] This chart updates *Diet Drugs* "super-mega-fund settlements" chart, at 553 F. Supp. 2d 442, 486-487, which was in turn derived from Prof. Coffee's 2/14/2002 *Diet Drugs* Declaration. It includes the *Diet Drugs* decision itself, and other recent awards, such as *Enron*. A more detailed analysis appears in the accompanying *Klonoff Declaration.*

[2] *Diet Drugs* was a combined fee from two sources: 1) a common benefit holdback, originally set at 9%/6% and later reduced to 6%/4% (lower percentage assessed against state court litigants who did some of their own discovery), and a $429 million class counsel fee, which was paid by settling defendant on top of the claimants' recoveries. *See Diet Drugs*, 582 F.3d 524, 532-533.

[3] The *Shaw v Toshiba* 15% fee was paid in addition to class benefits.

- 2 -

| SUPER MEGA FUND FEE AWARDS[1] | | |
|---|---|---|
| Case | Fund Value | Percentage Award |
| *In re Sulzer Hip Prosthesis Liab. Litig.*, 268 F.Supp. 2d 907 (N.D. Ohio 2003) | $1.045 billion | 4.8% |
| *Naef v. Masonite Corp.* (and related cases) (Alabama state court 2008) | $1+ billion | 15%[4] |
| *In re AT&T Mobility Wireless Data Services Sales Tax Litig.*, 792 F. Supp. 2d 1028 (N.D. Ill. 2011) | ≈$1 billion | 20% |
| Average | $2.52 billion | 11.73% |

---

[4] The *Naef v. Masonite* class settlement provided that defendants would pay class counsel an amount equivalent to 15% of actual claims made during the life of the 10-year claims settlement program, with an initial down payment of $50 million in attorneys' fees and costs. The settlement program ultimately generated $1+ billion in claims. The *Masonite* fee was negotiated after the substantive terms of the settlement were completed, under the supervision of a court-appointed mediator. No class counsel fees or costs were deducted from class members' recoveries.

# Joseph F. Rice
**FOUNDING MEMBER**



Motley Rice co-founding member Joe Rice is recognized as a skillful and innovative negotiator of complex litigation settlements. As lead private counsel for 26 jurisdictions, including numerous State Attorneys General, he played a central role in crafting the landmark Master Settlement Agreement, the largest civil settlement in U.S. history, in which the tobacco industry agreed to reimburse states for smoking-related health costs. Over the past two decades, Joe has also been recognized for his role in structuring some of the most significant resolutions of asbestos liabilities on behalf of victims injured by asbestos-related products.

Joe has held leadership and negotiating roles involving the bankruptcies of several large organizations, including AWI, Federal Mogul, Johns Manville, Celotex, Garlock, W.R. Grace, Babcock & Wilcox, U.S. Gypsum, Owens Corning and Pittsburgh Corning. He remains a key player in developing and negotiating the structured settlements of asbestos manufacturers emerging from bankruptcy and has worked on numerous Trust Advisory Committees.

Currently, Joe directs the Motley Rice securities litigation team in securities fraud litigation, shareholder derivative cases and actions against proposed merger and acquisition transactions. He is sought after by investment funds for guidance on strategies to increase shareholder value and enhance corporate governance reforms and asset recovery through litigation. He also serves on the Plaintiffs' Steering Committee for the Deepwater Horizon oil spill MDL *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010. A*s a lead negotiator, he helped reach the two settlements with BP that were granted preliminary approval on May 2, 2012, one of which is the largest civil class action settlement in U.S. history.

Joe continues to negotiate on behalf of the firm's clients in anti-terrorism and human rights, environmental, drugs, devices and catastrophic injury cases. He held a crucial role in executing the strategic mediations and/or resolutions in more than 50 aviation liability and damages cases against multiple defendants on behalf of families of the victims of the 9/11 attacks who opted out of the Victim Compensation Fund. In addition to providing greater answers, accountability and recourse to victims' families, the resulting settlements shattered a settlement matrix developed and utilized for decades, and the litigation helped provide public access to evidence in an archive of selected discovery materials gathered in the litigation.

A frequent guest speaker, Joe has presented as numerous conferences and seminars nationwide, including the National Asbestos Litigation Conference, the National Conference on Public Employee Retirement Systems, the Public Funds Summit, Class Action Settlements: Approval, Distribution and Oversight Workshop and several asbestos bankruptcy and complex litigation conferences.

Described as one of the nation's "five most feared and respected plaintiffs' lawyers in corporate America" in a poll of defense counsel and legal scholars conducted by *Corporate Legal Times*, Joe was cited time after time as one of the toughest, sharpest and hardest-working litigators they have faced. As the article notes, "For all his talents as a shrewd negotiator ... Rice has earned most of his respect from playing fair and remaining humble." Joe was a 2012 recipient of the *SC Lawyers Weekly* Leadership in Law Award. In 2011, the University of South Carolina School of Law Alumni Association honored him with its platinum Compleat Lawyer Award, and he was highlighted in the 2011 and 2012 Litigation editions of *The Legal 500 United States* (mass tort and class action: plaintiff representation- toxic tort). The inaugural 2012 edition of *Benchmark Plaintiff, The Definitive Guide to America's Leading Plaintiff Firms & Attorneys* recognized Joe as a "Litigation Star" in its national rankings for mass torts/products liability, as well as its South Carolina rankings in environmental, mass tort and products liability. Recognized as an AV® rated attorney by Martindale-Hubbell®, he has been named to each annual edition of *The Best Lawyers in America*® since 2007 and was selected by his peers for inclusion in the 2012 edition for his work in mass tort litigation/class actions-plaintiffs. He has been included in every edition of *South Carolina Super Lawyers*® since 2008 and, in 2010, was named by The National Trial Lawyers as one of its *Top 100 Trial Lawyers*™ in South Carolina. *The American Lawyer* described Joe in 2006 as "one of the shrewdest businessmen practicing law."

In 1998, Joe received the President's Award of the National Association of Attorneys General. In 1999 and 2000, he served on the faculty at Duke University School of Law as a Senior Lecturing Fellow, and he has taught classes at the University of South Carolina School of Law, Duke University School of Law and Charleston School of Law on the art of negotiating. Joe serves his community through several organizations, including First Tee of Greater Charleston, the Center for Birds of Prey and the Dee Norton Lowcountry Children's Center, for which he co-chaired the inaugural Campaign for the Next Child. In 2010, MUSC Children's Hospital honored Joe with its Johnnie Dodds Award for his longtime support of its annual Bulls Bay Golf Challenge Fundraiser and continued work on behalf of our community's children. The University of South Carolina awarded Joe and his family with its 2011 Garnet Award for their passion for and devotion to Gamecock athletics. Joe was also awarded the 2011 Tom Fazio Service to Golf Award in recognition of his efforts to help promote the SC Junior Golf Association Programs.

He is a member of the American Association for Justice, American Bar Association, American Inns of Court, South Carolina Association for Justice and the American Constitution Society for Law and Policy.

*\* The Best Lawyers in America® 2012 (Copyright 2011 by Woodward/White, Inc., of Aiken, S.C.)*