**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | **MDL NO. 2179**<br><br>**SECTION J** |
| | * * | **HONORABLE CARL J. BARBIER** |
| | * * * * | **MAGISTRATE JUDGE SHUSHAN** |

| | | |
|---|---|---|
| Bon Secour Fisheries, Inc., et al., individually and on behalf of themselves and all others similarly situated, | * * * * * | **Civil Action No. 12-970**<br><br>**SECTION: J** |
| Plaintiffs, | * * * | **HONORABLE CARL J. BARBIER** |
| v. | * * * * * | **MAGISTRATE JUDGE SHUSHAN** |
| BP Exploration & Production Inc.; BP America Production Company; BP p.l.c., | * * * | |
| Defendants. | | |

DECLARATION OF JOSEPH F. RICE
RE: OVERALL SETTLEMENT NEGOTIATIONS

I, JOSEPH F. RICE, respectfully declare, under penalty of perjury, that the following is true and correct to the best of my knowledge, information and belief:

1. I am licensed to practice law in the State of South Carolina and in the District of Columbia.  I am admitted to appear before the United States Fifth Circuit Court of Appeals and the United States Supreme Court, among others.

2. I work with the law firm of Motley Rice LLC, and my principal office is located in Mount Pleasant, South Carolina.  Over the course of my legal career I have been extensively involved in complex litigation starting in 1979 in the Asbestos litigation. Among some of the more significant cases I have been involved in are the Tobacco Litigation representing Attorneys General where I served as Lead Negotiator for the Settling States, groundbreaking asbestos cases of  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), and I served on the Asbestos Creditor's Committee and/or Trust Advisory Committee in the bankruptcy cases of asbestos defendants Armstrong World, Federal Mogul, Johns Manville, Celotex, Garlock, WR Grace, Babcock& Wilcox, US Gypsum, Owens Corning, Pittsburgh Corning.  In most if not all of the bankruptcy committees my function was to be extensively involved in the resolution and negotiations.  For further detail about my background please see the attached bio.

3. In the *Deepwater Horizon* litigation Plaintiffs' Steering Committee ("PSC") member Calvin F. Fayard, Jr. was appointed by Co-Liaison Counsel at the outset to explore and pursue potential opportunities to resolve some or all of the litigation.  In the Fall of 2010 Mr. Fayard contacted me asking if I would work with him in exploring resolution for some or all of the BP MDL2179 litigation.  I accepted Mr. Fayard's invitation upon

approval of the PSC leadership and assurance that we would be acting on behalf of the entire PSC and began working with him.

4.  Over the course of the next 5 months Mr. Fayard and I set out to set the stage and prepare for negotiations.  We held numerous meetings and participated in numerous phone conferences with all involved in the massive litigation, including representatives of the party defendants, PSC members, private attorneys, public officials, GCCF leadership and staff, court representative, and others.  By way of example, we met with Special Master McGovern, Ken Feinberg and members of his GCCF staff, the leadership of the PSC, many of the PSC individual attorneys, we attended working sessions of the PSC Science subgroup, Damages subgroup, Trial Preparation subgroup, and general PSC working sessions and strategy meetings.  We met with and reviewed the case with the many expert witnesses including Science, Seafood, and Accounting experts.  We met with former executives with companies similar to BP.  We reviewed the pleadings that had been filed and Orders of the Court.  We met with Insurance Counsel working with the PSC to explore the defendants' available insurance, and we met with experts who had been retained by the GCCF to review the work they had done.  We reviewed the transcripts from the Senate Homeland Security and Government Affairs Subcommittee meetings, Coast Guard and other public records.

Throughout this period of preparation and investigation Mr. Fayard and I were focused on determining what the real needs of the claimants were and what their ability was to provide proof of their losses, what evidence had been generated and was available

concerning the extent of damage, the types and nature of damage, and all other items that were relevant to preparing for a resolution of the case.

5.   During the Spring of 2011 we began to solidify an approach to resolution that would comply with the instructions we had received from the PSC.  Our goal was to achieve a court supervised resolution that was claimant-friendly, transparent, neutral, fair, and provided effective communication with Claimants that would provide economic recovery for the Claimants in a timely fashion, giving due consideration to the rulings of the Court and the facts as we knew them.

6.   From the beginning of the process Mr. Fayard and I established the principle that we would negotiate this settlement by proceeding from the needs and requirements of each category of economic loss Claimant and develop tools within the settlement to best enable each Claimant to maximize their recovery by demonstrating their economic loss in ways that were most appropriate for the damage category.  We recognized that while there were common principles affecting all members of the economic class, the proof and recovery of damages was not a one-size-fits-all standard and we were intent to develop significant optionality for a claimant in proving not only causation but documenting their loss and calculating the compensation.

7.   During the Spring of 2011 we began to reach out to the various defendants and held preliminary meetings with their corporate representatives to explore the possibility of entering good faith settlement negotiations.  In addition to Mr. Fayard, Attorney Wanda Edwards was involved from Fayard & Honeycutt, and Fred Baker, John Baden, Lisa

Saltzburg, and Rebecca Deupree were involved from Motley Rice in doing the investigative work and early formation of a plan of resolution.  By June of 2011 we reached a general comfort level with BP's counsel that they were prepared to explore potential resolution.

Defendants other than BP were reluctant to engage in settlement discussions.  Thus we narrowed our focus to BP.

The major hurdle for Mr. Fayard and me in the beginning was to establish our credibility and our and the PSC's ability to deliver a unified settlement on behalf of the plaintiffs. Likewise, Mr. Fayard and I had a duty to confirm that we would be dealing with the appropriate representatives of BP.

8. To be certain we were dealing with the appropriate persons and had the attention of the top level management of BP Mr. Fayard and I traveled to London in early June to observe depositions and to meet with the representatives of BP.  During the June 2011 trip to London we met with Rupert Bondy, General Counsel of BP, Jim Neath, Head of Litigation Worldwide for BP, and attorneys with Kirkland & Ellis LLP.  Mr. Fayard and I wanted to be certain we were dealing with the appropriate representatives from BP and that they had the authority on behalf of the Board to enter good faith settlement discussions.  At the conclusion of the June  meetings we had the assurances from Mr. Bondy that BP was entering the negotiations in good faith to seek to reach a reasoned resolution and that while Mr. Neath had authority, any and all final agreements were subject to General Counsel and Board approval.

At those preliminary meetings we established a settlement class action as the most appropriate way to proceed in our discussions.

For the next month we worked in the United States with attorneys for BP to lay out the framework of a potential class action and to exchange underlying information on the history of the filings and information available about payments.

9. On June 29, 2011, Mr. Fayard and I returned to London where we again met with Mr. Bondy to make certain we were continuing to deal with the appropriate people and that they understood the concepts of the class action we were proposing.

10. In July of 2011 settlement negotiations began in earnest to develop the detailed framework which would ultimately lead to the class actions pending before the Court. Throughout the process we were cautious to avoid any negotiations that would create inner class allocation conflicts.

In the Summer of 2011 as the negotiations picked up their intensity we separated the discussion and the negotiating parties of the Economic Loss Class and the Medical Class.  The Medical Class negotiations were led initially by Fred Baker and Wanda Edwards.  They were subsequently joined by PSC members Robin Greenwald and Matt Lundy.  That core group, with assistance from their offices, became the lead negotiators for the Medical Class.  While PSC leadership, Mr. Fayard, and myself maintained constant communication with them to be certain that any common issues were being coordinated, the details of the Medical Class were negotiated by the separate group.

11. Early in the process we determined that once we separated the Economic Loss Claims from the Medical Claims, there would be no necessity to create cumbersome sub-classes within the Economic Loss Class since we were approaching the settlement on a Category by Category level with no economic cap.

12. From July of 2011 through the end of 2011 meetings were held several days each week at locations throughout the United States to continue to build the framework of the resolution.  During this process Mr. Fayard and I would bring different members of the PSC to meetings depending on the topic that was being discussed.  Persons who participated included by way of illustration but not limitation, Jim Roy, Steve Herman, Rhon Jones, John Tomlinson, Wanda Edwards, Caroline Fayard, Robin Greenwald, Elizabeth Cabraser, Matt Lundy, Phil Cossich, John Baden, and as needed other representatives from the Motley Rice law firm.  As the framework of the settlement began to solidify and the negotiations moved to a more intense level, the sessions were held principally in New Orleans.  Once we began meeting in New Orleans in late 2011 and early 2012, Magistrate Judge Shushan became extensively involved in overseeing and mediating the discussions.

13. Throughout the discussions we approached the resolution of claims on a category by category basis.  We looked at the types of losses that were incurred and we worked to negotiate a framework to establish the causation, the documentation requirements to prove the loss, and the compensation formula that would be applied to determine the amount of the loss.  The PSC never seriously entertained discussion about capping the recovery of any individual claimant or group of claimants prior to the Spring of 2012

when the Seafood Program was developed.  BP made it clear that they valued closure and therefore would pay a premium to Class Members in exchange for a class-wide release and would add additional benefits that were class-wide benefits.  Those benefits included among other things, the application of the Risk Transfer Premium, the Marketing Fund, the adoption of a claimant-friendly mandate directive for the Claims Administrator, splitting causes of actions, an administrative process completely funded by BP, and other items that appear in the Settlement Agreement.

14. During the negotiations the parties presented arguments involving the application of punitive damages, pre-judgment interest, consequential damages, nuisance damages, and other potential elements of recovery.  As a result of all of these arguments the parties developed the concept of the Risk Transfer Premium that was implemented to provide for known and unknown, present and future, risk and damages, including punitive damages, other than specific damages laid out in the compensation model.

15. Throughout the negotiation process Mr. Fayard and I continued to stay in constant communication with the leadership of the PSC and with the various attorneys working on the PSC.  We continued to be updated periodically by the Science Committee, Discovery Committee, Trial Committee, Damage Committee, and the Seafood Committee.  We continued to receive updated information from experts retained by the PSC, and review all relevant pleadings and key documents presented.

16. These negotiations were extremely contentious, tough, hard-fought, but done with respect to the victims, the parties, and the counsel involved.

During the negotiations we decided to limit the membership in the Class to individuals or entities that lived in, worked in, were offered and accepted work in, owned or leased real or personal property located within, performed their full-time services while physically present in, or owned or leased or worked on a vessel harbored or home ported in the Gulf Coast Areas at any time from the date of the Spill until we concluded the settlement negotiations.  This allowed us to maintain a cohesive group of Class Members who presented the common elements that could lead to a resolution.

17. By the Spring of 2012 we had reached agreement in principle on each of the Categories of damages and began to develop the entire Settlement Agreement as one document.

During this process we addressed the issues related to opt outs, exclusions, transition, administration, and ultimate drafting of the document.  Over the course of approximately two months the drafting took place with assistance from numerous members of the PSC and attorneys working on their staff.  We continued to consult with experts on these issues and continued to receive the able mediation assistance of Magistrate Judge Shushan.  On March 2, 2012, Mr. Fayard, Mr. Roy, Mr. Herman, and I made a presentation to all members of the PSC on the complete details of the settlement.  There had been previous meetings, but the purpose of this meeting was to get final sign-off from all members of the PSC on the Agreement In Principle. After several hours of presentation and discussion, Mr. Roy received verbal confirmation from each member of the PSC that they fully and completely supported entering into the Economic and Property Damage Class Action Settlement.  This was followed by a written vote confirming the same.

At the same meeting Robin Greenwald made a presentation concerning the Medical Class Action and again, Mr. Roy received complete verbal confirmation from all members of the PSC that they were fully supportive of the Medical Class Action, and this was followed by a written vote confirming the same.

18. After receiving unanimous approval from the PSC the PSC and the BP attorneys and corporate representatives worked together to reduce all agreements to the final Settlement Class Actions filed with the Court on April 18, 2012.

Signed under penalty of perjury, this __10th__ day of August, 2012, in Mount Pleasant, South Carolina.

JOSEPH F. RICE

# Joseph F. Rice

**FOUNDING MEMBER**



Motley Rice co-founding member Joe Rice is recognized as a skillful and innovative negotiator of complex litigation settlements. As lead private counsel for 26 jurisdictions, including numerous State Attorneys General, he played a central role in crafting the landmark Master Settlement Agreement, the largest civil settlement in U.S. history, in which the tobacco industry agreed to reimburse states for smoking-related health costs. Over the past two decades, Joe has also been recognized for his role in structuring some of the most significant resolutions of asbestos liabilities on behalf of victims injured by asbestos-related products.

Joe has held leadership and negotiating roles involving the bankruptcies of several large organizations, including AWI, Federal Mogul, Johns Manville, Celotex, Garlock, W.R. Grace, Babcock & Wilcox, U.S. Gypsum, Owens Corning and Pittsburgh Corning. He remains a key player in developing and negotiating the structured settlements of asbestos manufacturers emerging from bankruptcy and has worked on numerous Trust Advisory Committees.

Currently, Joe directs the Motley Rice securities litigation team in securities fraud litigation, shareholder derivative cases and actions against proposed merger and acquisition transactions. He is sought after by investment funds for guidance on strategies to increase shareholder value and enhance corporate governance reforms and asset recovery through litigation. He also serves on the Plaintiffs' Steering Committee for the Deepwater Horizon oil spill MDL *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010. A*s a lead negotiator, he helped reach the two settlements with BP that were granted preliminary approval on May 2, 2012, one of which is the largest civil class action settlement in U.S. history.

Joe continues to negotiate on behalf of the firm's clients in anti-terrorism and human rights, environmental, drugs, devices and catastrophic injury cases. He held a crucial role in executing the strategic mediations and/or resolutions in more than 50 aviation liability and damages cases against multiple defendants on behalf of families of the victims of the 9/11 attacks who opted out of the Victim Compensation Fund. In addition to providing greater answers, accountability and recourse to victims' families, the resulting settlements shattered a settlement matrix developed and utilized for decades, and the litigation helped provide public access to evidence in an archive of selected discovery materials gathered in the litigation.

A frequent guest speaker, Joe has presented as numerous conferences and seminars nationwide, including the National Asbestos Litigation Conference, the National Conference on Public Employee Retirement Systems, the Public Funds Summit, Class Action Settlements: Approval, Distribution and Oversight Workshop and several asbestos bankruptcy and complex litigation conferences.

Described as one of the nation's "five most feared and respected plaintiffs' lawyers in corporate America" in a poll of defense counsel and legal scholars conducted by *Corporate Legal Times*, Joe was cited time after time as one of the toughest, sharpest and hardest-working litigators they have faced. As the article notes, "For all his talents as a shrewd negotiator ... Rice has earned most of his respect from playing fair and remaining humble." Joe was a 2012 recipient of the *SC Lawyers Weekly* Leadership in Law Award. In 2011, the University of South Carolina School of Law Alumni Association honored him with its platinum Compleat Lawyer Award, and he was highlighted in the 2011 and 2012 Litigation editions of *The Legal 500 United States* (mass tort and class action: plaintiff representation- toxic tort). The inaugural 2012 edition of *Benchmark Plaintiff, The Definitive Guide to America's Leading Plaintiff Firms & Attorneys* recognized Joe as a "Litigation Star" in its national rankings for mass torts/products liability, as well as its South Carolina rankings in environmental, mass tort and products liability. Recognized as an AV® rated attorney by Martindale-Hubbell®, he has been named to each annual edition of *The Best Lawyers in America*® since 2007 and was selected by his peers for inclusion in the 2012 edition for his work in mass tort litigation/class actions-plaintiffs. He has been included in every edition of *South Carolina Super Lawyers*® since 2008 and, in 2010, was named by The National Trial Lawyers as one of its *Top 100 Trial Lawyers*™ in South Carolina. *The American Lawyer* described Joe in 2006 as "one of the shrewdest businessmen practicing law."

In 1998, Joe received the President's Award of the National Association of Attorneys General. In 1999 and 2000, he served on the faculty at Duke University School of Law as a Senior Lecturing Fellow, and he has taught classes at the University of South Carolina School of Law, Duke University School of Law and Charleston School of Law on the art of negotiating. Joe serves his community through several organizations, including First Tee of Greater Charleston, the Center for Birds of Prey and the Dee Norton Lowcountry Children's Center, for which he co-chaired the inaugural Campaign for the Next Child. In 2010, MUSC Children's Hospital honored Joe with its Johnnie Dodds Award for his longtime support of its annual Bulls Bay Golf Challenge Fundraiser and continued work on behalf of our community's children. The University of South Carolina awarded Joe and his family with its 2011 Garnet Award for their passion for and devotion to Gamecock athletics. Joe was also awarded the 2011 Tom Fazio Service to Golf Award in recognition of his efforts to help promote the SC Junior Golf Association Programs.

He is a member of the American Association for Justice, American Bar Association, American Inns of Court, South Carolina Association for Justice and the American Constitution Society for Law and Policy.

*\* The Best Lawyers in America® 2012 (Copyright 2011 by Woodward/White, Inc., of Aiken, S.C.)*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO. 2179 |
| | * | SECTION J |
| | * | |
| | * | |
| | * | HONORABLE CARL J. BARBIER |
| | * | |
| | * | MAGISTRATE JUDGE SHUSHAN |
| | * | |
| | * | |

| | | |
|---|---|---|
| Bon Secour Fisheries, Inc., et al., individually and on behalf of themselves and all others similarly situated, | * * * | Civil Action No. 12-970 |
| | * | SECTION: J |
| | * | |
| Plaintiffs, | * | |
| | * | HONORABLE CARL J. BARBIER |
| | * | |
| v. | * | MAGISTRATE JUDGE SHUSHAN |
| | * | |
| | * | |
| | * | |
| BP Exploration & Production Inc.; BP America Production Company; BP p.l.c., | * * | |
| | * | |
| Defendants. | | |

## DECLARATION OF JOSEPH F. RICE
## RE:  SEAFOOD PROGRAM

I, JOSEPH F. RICE, respectfully declare, under penalty of perjury, that the following is true and correct to the best of my knowledge, information and belief:

1. I am licensed to practice law in the State of South Carolina and in the District of Columbia. I am admitted to appear before the United States Court of Appeals for the Fifth Circuit and the United States Supreme Court, among others.

2. I work with the law firm of Motley Rice LLC, and my principal office is located in Mount Pleasant, South Carolina. Over the course of my legal career I have been extensively involved in complex litigation starting in 1979 in the Asbestos litigation. Among some of the more significant cases I have been involved in are the Tobacco Litigation representing Attorneys General where I served as Lead Negotiator for the Settling States, and the groundbreaking asbestos cases of *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999). I served on the Asbestos Creditor's Committee and/or Trust Advisory Committee in the bankruptcy cases of asbestos defendants Armstrong World, Federal Mogul, Johns Manville, Celotex, Garlock, WR Grace, Babcock& Wilcox, US Gypsum, Owens Corning, and Pittsburgh Corning. In most if not all of the bankruptcy committees my function was to be extensively involved in the resolution and negotiations. For further detail about my background please see the attached bio.

3. In the *Deepwater Horizon* litigation Plaintiffs' Steering Committee ("PSC") member Calvin F. Fayard, Jr. was appointed by Co-Liaison Counsel at the outset to explore and pursue potential settlement opportunities. In the Fall of 2010 Mr. Fayard contacted me about the potential to work with him in exploring a resolution for some or all of the BP MDL2179 litigation. I accepted Mr. Fayard's invitation upon approval of the PSC

leadership and assurance that we would be acting on behalf of the entire PSC and began working with him.

4. In developing the standards and application of the rules to be applied in Seafood we began by reviewing all of the available data concerning the history of revenue production from the seafood harvesting in the Gulf of Mexico, including but not limited to materials and data from Congressional proceedings and from federal government agencies such as the U.S. Department of Commerce, including the National Marine Fisheries Service ("NMFS") of the National Oceanic and Atmospheric Administration ("NOAA"), materials and data prepared by and/or for state government agencies such as the Louisiana Department of Wildlife and Fisheries, literature and studies concerning the fisheries in and around the Gulf of Mexico, including but not limited to Gulf States Marine Fisheries Commission ("GSMFC") reports, materials and data relating to and/or developed by the GCCF.  In doing so we reached a general comfort level with the historical revenue derived from the study of the NOAA data.  When I use the terms "Seafood" or "Seafood Harvesting Claimants" I mean the seafood industries and businesses and individuals ultimately included in the Seafood Compensation Program. These are commercial fishermen, boat captains, vessel owners and lessees, oyster leaseholders, IFQ holders and seafood crew.  The industries included are shrimp, oyster, finfish, blue crab and other seafood with the exception of menhaden.

5. In negotiations with BP we initially made demands that followed a categorization similar to the Business Economic Loss models.  However during these negotiations it became

apparent that the parties saw the future risk of injury on the harvesting of Seafood dramatically different and had different approaches to developing model methodologies. After weeks of negotiations back and forth on potential resolutions, we were presented with the opportunity to negotiate a guaranteed lump sum payment of a fixed amount of money to this category of claimants.  Upon fully analyzing the implications of that fund, we determined that fund would provide much greater compensation to the claimants than they would be able to establish using the Federal Rules of Evidence, the Court's rulings, and the application of OPA and maritime law.  After consulting with all members of the Plaintiffs' Steering Committee involved in representing Seafood Harvesting Claimants, representatives of the Seafood Harvesting industries that would be eligible for compensation from the fund, and experts, we agreed to establish a $2.3 billion guaranteed payment by BP to Seafood Harvesting Claimants, including the vessels, the Boat Captains, and the Deckhands.  This fund would require BP to remain responsible for a to-be-agreed-to percentage of persons that might opt-out of the Class and those opt-outs, if they occurred, would not reduce the fund.  In addition, the fund would be paid regardless of the number of persons who participated in the Class Action.

6. The total $2.3 billion Seafood Compensation Program Amount will be unaffected by Opt Outs up to: (1) 15% of all potential claimants with claims under Category III of the Seafood Crew Compensation Plan, and/or (2) 17.5% of all potential claimants with claims under the Shrimp Compensation Plan, Oyster Compensation Plan, Finfish Compensation Plan, Blue Crab/Other Seafood Compensation Plan and Categories I and II of the Seafood Crew Compensation Plan. In the event that these percentages are

exceeded, BP will get a credit for what the additional Opt Outs would have received under the Seafood Compensation Program, as determined by the Court-appointed neutral.

7. In evaluating the appropriateness of the compensation fund we determined that with a $2.3 billion fund the historical average gross dollars paid into the harvest of Seafood throughout the Gulf of Mexico, including application of half of the Seafood landed in the State of Texas, could be paid would be roughly five times the historical average gross dollars in revenue generated by Seafood harvesting in the areas of the Gulf of Mexico covered by the Program.  In addition, we focused on all available data concerning the percentage of revenue and harvest lost as recorded by the state reporting agencies and the federal reporting agencies for 2010 and subsequently for 2011.  We requested and received from the GCCF general information concerning the volume of Seafood related claims paid by the GCCF, and confirmation that in excess of $700 million had been paid in the claims which from the information available appeared to meet the definitions within our Seafood Compensation Program.

8. The amount of compensation for a Claimant is determined by applying the terms of the applicable provisions of the Seafood Program.  Any prior payments made to the Claimant by the GCCF or BP for the same loss are then deducted prior to the Seafood Program paying the Claimant.  If it is ultimately determined that $350 million (approximately 50% of the previous payments made by the GCCF) were for claims that are now being compensated by the Class, then that $350 million would be part of the total economic recovery for these Seafood Harvesting Claimants under the Program.  So the total

economic recovery paid to the Class Claimants participating in the Settlement Program would be $2.65 billion.

9. Once the parties reached agreement on the establishment of the $2.3 billion Seafood Compensation Fund, the PSC asked the Court to appoint a neutral party to oversee the allocation of the Seafood Fund. The Court appointed John Perry as a neutral to establish the allocation model. From the date of Mr. Perry's appointment until the time of the preliminary hearing the parties worked with Mr. Perry and his law partner, Mr. Balhoff, to provide all information requested and all data available to allow them to determine a reasoned allocation of the Seafood compensation amount.

Signed under penalty of perjury, this __16__ day of August, 2012, in Mount Pleasant, South Carolina.

_____
JOSEPH F. RICE

# Joseph F. Rice

**FOUNDING MEMBER**



Motley Rice co-founding member Joe Rice is recognized as a skillful and innovative negotiator of complex litigation settlements. As lead private counsel for 26 jurisdictions, including numerous State Attorneys General, he played a central role in crafting the landmark Master Settlement Agreement, the largest civil settlement in U.S. history, in which the tobacco industry agreed to reimburse states for smoking-related health costs. Over the past two decades, Joe has also been recognized for his role in structuring some of the most significant resolutions of asbestos liabilities on behalf of victims injured by asbestos-related products.

Joe has held leadership and negotiating roles involving the bankruptcies of several large organizations, including AWI, Federal Mogul, Johns Manville, Celotex, Garlock, W.R. Grace, Babcock & Wilcox, U.S. Gypsum, Owens Corning and Pittsburgh Corning. He remains a key player in developing and negotiating the structured settlements of asbestos manufacturers emerging from bankruptcy and has worked on numerous Trust Advisory Committees.

Currently, Joe directs the Motley Rice securities litigation team in securities fraud litigation, shareholder derivative cases and actions against proposed merger and acquisition transactions. He is sought after by investment funds for guidance on strategies to increase shareholder value and enhance corporate governance reforms and asset recovery through litigation. He also serves on the Plaintiffs' Steering Committee for the Deepwater Horizon oil spill MDL *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010. A*s a lead negotiator, he helped reach the two settlements with BP that were granted preliminary approval on May 2, 2012, one of which is the largest civil class action settlement in U.S. history.

Joe continues to negotiate on behalf of the firm's clients in anti-terrorism and human rights, environmental, drugs, devices and catastrophic injury cases. He held a crucial role in executing the strategic mediations and/or resolutions in more than 50 aviation liability and damages cases against multiple defendants on behalf of families of the victims of the 9/11 attacks who opted out of the Victim Compensation Fund. In addition to providing greater answers, accountability and recourse to victims' families, the resulting settlements shattered a settlement matrix developed and utilized for decades, and the litigation helped provide public access to evidence in an archive of selected discovery materials gathered in the litigation.

A frequent guest speaker, Joe has presented as numerous conferences and seminars nationwide, including the National Asbestos Litigation Conference, the National Conference on Public Employee Retirement Systems, the Public Funds Summit, Class Action Settlements: Approval, Distribution and Oversight Workshop and several asbestos bankruptcy and complex litigation conferences.

Described as one of the nation's "five most feared and respected plaintiffs' lawyers in corporate America" in a poll of defense counsel and legal scholars conducted by *Corporate Legal Times*, Joe was cited time after time as one of the toughest, sharpest and hardest-working litigators they have faced. As the article notes, "For all his talents as a shrewd negotiator ... Rice has earned most of his respect from playing fair and remaining humble." Joe was a 2012 recipient of the *SC Lawyers Weekly* Leadership in Law Award. In 2011, the University of South Carolina School of Law Alumni Association honored him with its platinum Compleat Lawyer Award, and he was highlighted in the 2011 and 2012 Litigation editions of *The Legal 500 United States* (mass tort and class action: plaintiff representation- toxic tort). The inaugural 2012 edition of *Benchmark Plaintiff, The Definitive Guide to America's Leading Plaintiff Firms & Attorneys* recognized Joe as a "Litigation Star" in its national rankings for mass torts/products liability, as well as its South Carolina rankings in environmental, mass tort and products liability. Recognized as an AV® rated attorney by Martindale-Hubbell®, he has been named to each annual edition of *The Best Lawyers in America*® since 2007 and was selected by his peers for inclusion in the 2012 edition for his work in mass tort litigation/class actions-plaintiffs. He has been included in every edition of *South Carolina Super Lawyers*® since 2008 and, in 2010, was named by The National Trial Lawyers as one of its *Top 100 Trial Lawyers*™ in South Carolina. *The American Lawyer* described Joe in 2006 as "one of the shrewdest businessmen practicing law."

In 1998, Joe received the President's Award of the National Association of Attorneys General. In 1999 and 2000, he served on the faculty at Duke University School of Law as a Senior Lecturing Fellow, and he has taught classes at the University of South Carolina School of Law, Duke University School of Law and Charleston School of Law on the art of negotiating. Joe serves his community through several organizations, including First Tee of Greater Charleston, the Center for Birds of Prey and the Dee Norton Lowcountry Children's Center, for which he co-chaired the inaugural Campaign for the Next Child. In 2010, MUSC Children's Hospital honored Joe with its Johnnie Dodds Award for his longtime support of its annual Bulls Bay Golf Challenge Fundraiser and continued work on behalf of our community's children. The University of South Carolina awarded Joe and his family with its 2011 Garnet Award for their passion for and devotion to Gamecock athletics. Joe was also awarded the 2011 Tom Fazio Service to Golf Award in recognition of his efforts to help promote the SC Junior Golf Association Programs.

He is a member of the American Association for Justice, American Bar Association, American Inns of Court, South Carolina Association for Justice and the American Constitution Society for Law and Policy.

*\* The Best Lawyers in America® 2012 (Copyright 2011 by Woodward/White, Inc., of Aiken, S.C.)*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * * * * * * | MDL NO. 2179<br><br>SECTION J<br><br><br>HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

| | | |
|---|---|---|
| Bon Secour Fisheries, Inc., et al., individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br><br>BP Exploration & Production Inc.; BP America Production Company; BP p.l.c.,<br><br>Defendants. | * * * * * * * * * * * * * * * * | Civil Action No. 12-970<br><br>SECTION: J<br><br>HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

## DECLARATION OF JOSEPH F. RICE
## RE:  ATTORNEYS' FEES

I, JOSEPH F. RICE, respectfully declare, under penalty of perjury, that the following is true and correct to the best of my knowledge, information and belief:

1.  I am licensed to practice law in the State of South Carolina and in the District of
    Columbia.  I am admitted to appear before the United States Fifth Circuit Court of
    Appeals and the United States Supreme Court, among others.

2.  I work with the law firm of Motley Rice LLC, and my principal office is located in
    Mount Pleasant, South Carolina.  Over the course of my legal career I have been
    extensively involved in complex litigation starting in 1979 in the Asbestos litigation.
    Among some of the more significant cases I have been involved in are the Tobacco
    Litigation representing Attorneys General where I served as Lead Negotiator for the
    Settling States, groundbreaking asbestos cases of  *Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), and I served
    on the Asbestos Creditor's Committee and/or Trust Advisory Committee in the
    bankruptcy cases of asbestos defendants Armstrong World, Federal Mogul, Johns
    Manville, Celotex, Garlock, WR Grace, Babcock& Wilcox, US Gypsum, Owens
    Corning, Pittsburgh Corning.  In most if not all of the bankruptcy committees my
    function was to be extensively involved in the resolution and negotiations.  For further
    detail about my background please see the attached bio.

3.  In the *Deepwater Horizon* litigation Plaintiffs' Steering Committee ("PSC") member
    Calvin F. Fayard, Jr. was appointed by Co-Liaison Counsel at the outset to explore and
    pursue potential settlement opportunities.  Mr. Fayard, with the approval of Co-Liaison
    Counsel, enlisted my assistance in the exploration and development of potential
    settlement opportunities in the *Deepwater Horizon* litigation.  From the Fall of 2010
    through the current time I have been involved on a day-to-day basis with the preparations

for the settlement, settlement negotiations, and implementation of the Settlement Agreement.

The scope of this declaration is intended to focus on my involvement with the attorneys' fee negotiation.  An additional declaration has been provided to the Court that deals with my involvement with the negotiations and the details of the negotiations themselves.

4.  Prior to April 17, 2012 the only discussions the parties at the negotiating table had concerning attorneys' fees was to make it clear that the PSC/Class Counsel intended to file an appropriate attorneys' fees request for common benefit work on behalf of the Class, and that they would anticipate BP paying whatever attorneys' fees were approved by the Court over and above the payments to any claimant.

5.  On April 17, 2012, the parties delivered to the Court, pursuant to its direction, a signed Settlement Agreement, complete with all Exhibits, except an attorneys' fee agreement. We then received confirmation of receipt, and authorization to commence a discussion of attorneys' fees, from the Court, which set a deadline of the morning of April 18, 2012, within which to complete discussions, execute, and file any attorneys' fee provision. Prior to April 17, there had been no substantive discussion of attorneys' fees.

6.  Uniquely in these negotiations the parties had available at the time information about the scope of potential claims based on the short form joinders filed with the Court and the GCCF history.  Moreover, BP had information about the substantial efforts of the PSC/Class Counsel, including the amount of time expended based upon the PSC's filings with the Court in connection with the "hold back" motion.

7. On behalf of the Plaintiff Steering Committee ("PSC") and proposed Class Counsel, Jim Roy, Steve Herman, Calvin Fayard, Duke Williams, and I attended the attorneys' fee meeting. On behalf of BP, they were represented by Jim Neath, Rick Godfrey, Mark Holstein, Jeff Lennard, and other personnel from their offices. It was understood that the parties present had full authority to complete the negotiations regarding attorneys' fees.

8. We convened at the Ritz Carlton Hotel boardroom and commenced discussions at 10:25 a.m. The initial presentation was made by Jim Roy and me. Jim Roy set forth the unique nature of the case, the magnitude of the dollars involved, the existence of two separate class actions and other matters.

9. I then presented the economic methodology the PSC was proposing for calculation of the fee. We proposed to use Super Mega Fund Fee Awards as identified on "Exhibit A." I began discussion about the developing judicial view that the increase in the size of the Settlement Fund warranted an increase in attorneys' fee percentage. We also discussed the continued requirements of Class Counsel, the highly unusual nature of this case in allowing Class members to be compensated during the pendency of the Court's consideration of the Settlement including any appeals that may be taken and the non-monetary benefits. The PSC made an initial demand regarding attorneys' fees and BP shortly thereafter made its official offer.

10. For the next six hours the parties went back and forth making arguments concerning the pros and cons of each others' position, looking at different ways to calculate the fees, with additional offers and demands made.

11. The negotiations moved from the total amount of the fee plus costs, to a discussion of what amounts might be placed into an attorneys' fees Trust calculated upon payments made to class members prior to finality.

12. Judge Shushan monitored the negotiations.

13. Multiple one-on-one discussions were had.  At approximately 1:00 a.m. on April 18th the parties agreed that BP would pay attorneys' fees of $75 million upon preliminary approval by the District Court, and (subject to a credit for that $75 million) 6% on all payments made by BP through the Court Supervised Settlement Program (including transition payments) with a cap of $480 million irrespective of final approval.  In the event of final approval, and subject to court approval, BP would pay a total of $600 million in attorneys' fees.  The parties mutually agreed to seek clarification of the Hold-Back Order to make it clear that no funds would be deducted or "held-back" out of any settlement payments or other benefits to Class Members in connection with the Medical Class Settlement and/or the Economic and Property Damages court supervised settlement program.

14. While the parties had agreed to the terms, the drafting of the provisions presented challenges in and of itself on wording, structure, the use of qualified settlement fund, and other details.  Members of the PSC led by Steve Herman and Duke Williams worked throughout most of the night with representatives of BP to continue moving forward on a draft.

15. Ultimately, on the morning of the 18th the parties reached agreement on the wording of the attorneys' fees provisions that are contained within the Settlement Agreement.

Signed under penalty of perjury, this **10**th day of August, 2012, in Mount Pleasant, South Carolina.

_____
JOSEPH F. RICE

| SUPER MEGA FUND FEE AWARDS[1] | | |
|---|---|---|
| **Case** | **Fund Value** | **Percentage Award** |
| *Newby v. Enron Corp.*  (MDL No. 1448), 586 F. Supp. 2d 732 (S.D. Tex. 2008) | $7.227 billion | 9.52% |
| *In re Diet Drugs*, 554 F. Supp. 2d 442 (E.D. Pa. 2008)[2] | $6.44 billion | 6.75% |
| *WorldCom, Inc. Securities Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) | $6.133 billion | 5.5% |
| *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640 (E.D. La. 2010) | $4.85 billion | 6.5% |
| *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003) | $3.383 billion | 6.5% |
| *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 2007 U.S. Dist. LEXIS 95199, 2007 WL 4462593 (D.N.H. Dec. 19, 2007) | $3.3 billion | 14.5% |
| *AOL Time Warner*, 2006 U.S. Dist. LEXIS 78035, 2006 WL 3057232 (S.D.N.Y. 2006) | $2.65 billion | 5.9% |
| *Shaw v. Toshiba*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) | $1 to $1.1 billion | 15%[3] |
| *In re Prudential Sales Practices Litig.*, 106 F. Supp. 2d 721 (D.N.J. 2000) | $1.325 billion | 6.8% |
| *In re Royal Ahold N.V. Sec & ERISA Litig.*, 461 F.Supp. 2d 383 (D. Md. 2006) | $1.1 billion | 11.88% |
| *Allapattah Servs. v. Exxon Corp.*, 454 F.Supp. 2d 1185 (S.D. Fl 2006) | $1.075 billion | 33.33% |
| *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998) | $1.07 billion | 14% |

---

[1] This chart updates *Diet Drugs* "super-mega-fund settlements" chart, at 553 F. Supp. 2d 442, 486-487, which was in turn derived from Prof. Coffee's 2/14/2002 *Diet Drugs* Declaration. It includes the *Diet Drugs* decision itself, and other recent awards, such as *Enron*.  A more detailed analysis appears in the accompanying *Klonoff Declaration.*

[2] *Diet Drugs* was a combined fee from two sources:  1) a common benefit holdback, originally set at 9%/6% and later reduced to 6%/4% (lower percentage assessed against state court litigants who did some of their own discovery), and a $429 million class counsel fee, which was paid by settling defendant on top of the claimants' recoveries. *See Diet Drugs*, 582 F.3d 524, 532-533.

[3] The *Shaw v Toshiba* 15% fee was paid in addition to class benefits.

1048327.1

"EXHIBIT A"

| SUPER MEGA FUND FEE AWARDS[1] | | |
|---|---|---|
| **Case** | **Fund Value** | **Percentage Award** |
| *In re Sulzer Hip Prosthesis Liab. Litig.*, 268 F.Supp. 2d 907 (N.D. Ohio 2003) | $1.045 billion | 4.8% |
| *Naef v. Masonite Corp.* (and related cases) (Alabama state court 2008) | $1+ billion | 15%[4] |
| *In re AT&T Mobility Wireless Data Services Sales Tax Litig.*, 792 F. Supp. 2d 1028 (N.D. Ill. 2011) | ≈$1 billion | 20% |
| Average | $2.52 billion | 11.73% |

---

[4] The *Naef v. Masonite* class settlement provided that defendants would pay class counsel an amount equivalent to 15% of actual claims made during the life of the 10-year claims settlement program, with an initial down payment of $50 million in attorneys' fees and costs. The settlement program ultimately generated $1+ billion in claims. The *Masonite* fee was negotiated after the substantive terms of the settlement were completed, under the supervision of a court-appointed mediator. No class counsel fees or costs were deducted from class members' recoveries.

1048327.1

"EXHIBIT A"

# Joseph F. Rice
**FOUNDING MEMBER**



Motley Rice co-founding member Joe Rice is recognized as a skillful and innovative negotiator of complex litigation settlements. As lead private counsel for 26 jurisdictions, including numerous State Attorneys General, he played a central role in crafting the landmark Master Settlement Agreement, the largest civil settlement in U.S. history, in which the tobacco industry agreed to reimburse states for smoking-related health costs. Over the past two decades, Joe has also been recognized for his role in structuring some of the most significant resolutions of asbestos liabilities on behalf of victims injured by asbestos-related products.

Joe has held leadership and negotiating roles involving the bankruptcies of several large organizations, including AWI, Federal Mogul, Johns Manville, Celotex, Garlock, W.R. Grace, Babcock & Wilcox, U.S. Gypsum, Owens Corning and Pittsburgh Corning. He remains a key player in developing and negotiating the structured settlements of asbestos manufacturers emerging from bankruptcy and has worked on numerous Trust Advisory Committees.

Currently, Joe directs the Motley Rice securities litigation team in securities fraud litigation, shareholder derivative cases and actions against proposed merger and acquisition transactions. He is sought after by investment funds for guidance on strategies to increase shareholder value and enhance corporate governance reforms and asset recovery through litigation. He also serves on the Plaintiffs' Steering Committee for the Deepwater Horizon oil spill MDL *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010. A*s a lead negotiator, he helped reach the two settlements with BP that were granted preliminary approval on May 2, 2012, one of which is the largest civil class action settlement in U.S. history.

Joe continues to negotiate on behalf of the firm's clients in anti-terrorism and human rights, environmental, drugs, devices and catastrophic injury cases. He held a crucial role in executing the strategic mediations and/or resolutions in more than 50 aviation liability and damages cases against multiple defendants on behalf of families of the victims of the 9/11 attacks who opted out of the Victim Compensation Fund. In addition to providing greater answers, accountability and recourse to victims' families, the resulting settlements shattered a settlement matrix developed and utilized for decades, and the litigation helped provide public access to evidence in an archive of selected discovery materials gathered in the litigation.

A frequent guest speaker, Joe has presented as numerous conferences and seminars nationwide, including the National Asbestos Litigation Conference, the National Conference on Public Employee Retirement Systems, the Public Funds Summit, Class Action Settlements: Approval, Distribution and Oversight Workshop and several asbestos bankruptcy and complex litigation conferences.

Described as one of the nation's "five most feared and respected plaintiffs' lawyers in corporate America" in a poll of defense counsel and legal scholars conducted by *Corporate Legal Times*, Joe was cited time after time as one of the toughest, sharpest and hardest-working litigators they have faced. As the article notes, "For all his talents as a shrewd negotiator ... Rice has earned most of his respect from playing fair and remaining humble." Joe was a 2012 recipient of the *SC Lawyers Weekly* Leadership in Law Award. In 2011, the University of South Carolina School of Law Alumni Association honored him with its platinum Compleat Lawyer Award, and he was highlighted in the 2011 and 2012 Litigation editions of *The Legal 500 United States* (mass tort and class action: plaintiff representation- toxic tort). The inaugural 2012 edition of *Benchmark Plaintiff, The Definitive Guide to America's Leading Plaintiff Firms & Attorneys* recognized Joe as a "Litigation Star" in its national rankings for mass torts/products liability, as well as its South Carolina rankings in environmental, mass tort and products liability. Recognized as an AV® rated attorney by Martindale-Hubbell®, he has been named to each annual edition of *The Best Lawyers in America*® since 2007 and was selected by his peers for inclusion in the 2012 edition for his work in mass tort litigation/class actions-plaintiffs. He has been included in every edition of *South Carolina Super Lawyers*® since 2008 and, in 2010, was named by The National Trial Lawyers as one of its *Top 100 Trial Lawyers*™ in South Carolina. *The American Lawyer* described Joe in 2006 as "one of the shrewdest businessmen practicing law."

In 1998, Joe received the President's Award of the National Association of Attorneys General. In 1999 and 2000, he served on the faculty at Duke University School of Law as a Senior Lecturing Fellow, and he has taught classes at the University of South Carolina School of Law, Duke University School of Law and Charleston School of Law on the art of negotiating. Joe serves his community through several organizations, including First Tee of Greater Charleston, the Center for Birds of Prey and the Dee Norton Lowcountry Children's Center, for which he co-chaired the inaugural Campaign for the Next Child. In 2010, MUSC Children's Hospital honored Joe with its Johnnie Dodds Award for his longtime support of its annual Bulls Bay Golf Challenge Fundraiser and continued work on behalf of our community's children. The University of South Carolina awarded Joe and his family with its 2011 Garnet Award for their passion for and devotion to Gamecock athletics. Joe was also awarded the 2011 Tom Fazio Service to Golf Award in recognition of his efforts to help promote the SC Junior Golf Association Programs.

He is a member of the American Association for Justice, American Bar Association, American Inns of Court, South Carolina Association for Justice and the American Constitution Society for Law and Policy.

*\* The Best Lawyers in America® 2012 (Copyright 2011 by Woodward/White, Inc., of Aiken, S.C.)*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | **MDL No. 2179**<br><br>**SECTION: J** |
| Relates to:  *Claims in the "B1" Bundle* | **HONORABLE CARL J. BARBIER**<br><br>**MAGISTRATE JUDGE SHUSHAN** |

| | |
|---|---|
| BON SECOUR FISHERIES, INC., FORT MORGAN REALTY, INC.; LFBP #1, LLC d/b/a GW FINS; PANAMA CITY BEACH DOLPHIN TOURS & MORE, LLC; ZEKE'S CHARTER FLEET, LLC; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; LAKE EUGENIE LAND & DEVELOPMENT, INC.; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE; JOHN TESVICH; and MICHAEL GUIDRY, on behalf of themselves and all others similarly situated, | **No. 12-970**<br><br>**SECTION: J**<br><br>**HONORABLE CARL J. BARBIER**<br><br>**MAGISTRATE JUDGE SHUSHAN** |
| Plaintiffs, | |
| v. | |
| BP EXPLORATION & PRODUCTION INC.; BP AMERICA PRODUCTION COMPANY; BP P.L.C., | |
| Defendants. | |

# DECLARATION OF BON SECOUR FISHERIES, INC
# IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
# THE ECONOMIC & PROPERTY DAMAGES SETTLEMENT

I, Christopher L. Nelson, declare as follows:

1.     I am over the age of 18 years and I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

2.     I am an authorized representative of Bon Secour Fisheries, Inc. ("Bon Secour"), which is a business and a representative plaintiff in this case.

3.     Bon Secour submits this declaration in support of Plaintiffs' Motion for Final Approval of the Economic & Property Damages Settlement (the "Economic Settlement").

4.     Through its attorneys and Economic Class Counsel, Bon Secour brought claims on behalf of the Economic & Property Damages Class.

5.     Bon Secour is informed and believes that it is an Economic Class Member because it is a business operating in Bon Secour, Alabama, and Bon Secour's claim meets the description of the Business Economic Loss Damage Category for a Primary Seafood Processor – Commercial Wholesale or Retail Dealer A, as described in the Settlement Agreement.

6.     Bon Secour has consulted with and been informed by its attorneys and Economic Class Counsel regarding the Economic Settlement and its claims in the Economic Settlement. Bon Secour has also generally made its authorized representatives, including me, available to its attorneys and Economic Class Counsel, whether via telephone, e-mail, or in person, throughout the time period that Bon Secour has served as a class representative, and Bon Secour will continue to do so for as long as this case remains active.

7.     As class representative, Bon Secour has actively followed and participated in this Economic Settlement, including reviewing the Preliminary Approval Order, the underlying briefs in support of Preliminary Approval, the Economic Class Complaint, the Economic Settlement

Agreement, and the Detailed Economic Class Notice, as well as the online resources regarding the Settlement, such as the Settlement Program website and the Court's Oil Spill MDL site.

8.      Bon Secour is also actively participating in the Economic Settlement by filing a Business Economic Loss claim in the Deepwater Horizon Court-Supervised Settlement Program ("Settlement Program").  As of the date of this declaration, Bon Secour has filed its claim as a Primary Seafood Processor – Commercial Wholesale or Retail Dealer A and is awaiting a determination.

9.      Bon Secour is generally familiar with the terms of the Economic Settlement.  Bon Secour recognizes that the Economic Settlement is a negotiated compromise between the parties and that Economic Class Members will receive relief only for eligible claims that are included in the Economic Settlement.  Bon Secour thinks the Economic Settlement provides real and fair relief for the economic loss and property damage claims of the Economic Class Members who were harmed by the Deepwater Horizon Incident; Bon Secour also thinks that the Settlement Program provides Economic Class Members with a fair and transparent claims process under the Court's control and protection.  For these reasons, Bon Secour supports the Economic Settlement without reservation.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in _Bon Secour, AL_, on August _7_, 2012.

Christopher L. Nelson
*Authorized Representative for Bon Secour Fisheries,*
*Inc.*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179 |
| | SECTION: J |
| Relates to:  *Claims in the "B1" Bundle* | HONORABLE CARL J. BARBIER |
| | MAGISTRATE JUDGE SHUSHAN |

| | |
|---|---|
| BON SECOUR FISHERIES, INC., FORT MORGAN REALTY, INC.; LFBP #1, LLC d/b/a GW FINS; PANAMA CITY BEACH DOLPHIN TOURS & MORE, LLC; ZEKE'S CHARTER FLEET, LLC; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; LAKE EUGENIE LAND & DEVELOPMENT, INC.; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE; JOHN TESVICH; and MICHAEL GUIDRY, on behalf of themselves and all others similarly situated, | No. 12-970 |
| | SECTION: J |
| | HONORABLE CARL J. BARBIER |
| | MAGISTRATE JUDGE SHUSHAN |
| Plaintiffs, | |
| v. | |
| BP EXPLORATION & PRODUCTION INC.; BP AMERICA PRODUCTION COMPANY; BP P.L.C., | |
| Defendants. | |

# DECLARATION OF BRAD FRILOUX IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE ECONOMIC & PROPERTY DAMAGES SETTLEMENT

I, Brad Friloux, declare as follows:

1.    I am over the age of 18 years and I have personal knowledge of the facts set forth in this Declaration and could testify competently to them if called upon to do so.

2.    I submit this declaration in support of Plaintiffs' Motion for Final Approval of the Economic & Property Damages Settlement (the "Economic Settlement").

3.    I am an individual and a representative plaintiff in this case.  Through Economic Class Counsel, I brought claims on behalf of the Economic & Property Damages Class.

4.    I am informed and believe that I am an Economic Class Member because I am a Natural Person residing in Luling, Louisiana, and my claims meet the descriptions of the Seafood Program, Vessels of Opportunity ("VoO") Charter Payment, and Subsistence Damage Categories described in the Settlement Agreement.

5.    I have consulted with and been informed by Economic Class Counsel regarding the Economic Settlement and my claims in the Economic Settlement.  I have also generally made myself available to Economic Class Counsel, whether via telephone, e-mail, or in person, throughout the time period that I have served as a class representative, and I will continue to do so for as long as this case remains active.

6.    As class representative, I have actively followed and participated in this Economic Settlement, including reviewing the Preliminary Approval Order, the underlying briefs in support of Preliminary Approval, the Economic Class Complaint, the Economic Settlement Agreement, and the Detailed Economic Class Notice, as well as the online resources regarding the Settlement, such as the Settlement Program website and the Court's Oil Spill MDL site.

7.    I have also actively participated in the Economic Settlement by filing Seafood Program, Vessels of Opportunity ("VoO") Charter Payment, and Subsistence claims in the

Deepwater Horizon Court-Supervised Settlement Program ("Settlement Program").  As of the date of this Declaration, one of my claims has been processed by the Settlement Program with payment pending; the others are filed and awaiting review.

8.      I have helped inform and assist other seafood compensation claimants with regards to the Settlement in and around the St. Charles Parish area.

9.      I am generally familiar with the terms of the Economic Settlement.  I recognize that the Economic Settlement is a negotiated compromise between the parties and that Economic Class Members will receive relief only for eligible claims that are included in the Economic Settlement.  I think the Economic Settlement provides real and fair relief for the economic loss and property damage claims of the Economic Class Members who were harmed by the Deepwater Horizon Incident; I also think that the Settlement Program provides Economic Class Members with a fair and transparent claims process under the Court's control and protection. For these reasons, I support the Economic Settlement without reservation.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in _Luling_, on August _1_, 2012.

_____
Brad Friloux

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | **MDL No. 2179**<br><br>**SECTION: J** |
| Relates to:  *Claims in the "B1" Bundle* | **HONORABLE CARL J. BARBIER**<br><br>**MAGISTRATE JUDGE SHUSHAN** |

| | |
|---|---|
| BON SECOUR FISHERIES, INC., FORT MORGAN REALTY, INC.; LFBP #1, LLC d/b/a GW FINS; PANAMA CITY BEACH DOLPHIN TOURS & MORE, LLC; ZEKE'S CHARTER FLEET, LLC; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; LAKE EUGENIE LAND & DEVELOPMENT, INC.; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE; JOHN TESVICH; and MICHAEL GUIDRY, on behalf of themselves and all others similarly situated, | **No. 12-970**<br><br>**SECTION: J**<br><br>**HONORABLE CARL J. BARBIER**<br><br>**MAGISTRATE JUDGE SHUSHAN** |
| Plaintiffs, | |
| v. | |
| BP EXPLORATION & PRODUCTION INC.; BP AMERICA PRODUCTION COMPANY; BP P.L.C., | |
| Defendants. | |

## DECLARATION OF CORLISS GALLO IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE ECONOMIC & PROPERTY DAMAGES SETTLEMENT

I, Corliss Gallo, declare as follows:

1.      I am over the age of 18 years and I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

2.      I submit this declaration in support of Plaintiffs' Motion for Final Approval of the Economic & Property Damages Settlement (the "Economic Settlement").

3.      I am an individual and a representative plaintiff in this case.  Through my attorneys and Economic Class Counsel, I brought claims on behalf of the Economic & Property Damages Class.

4.      I am informed and believe that I am an Economic Class Member because I am a Natural Person residing in New Orleans, Louisiana, and my claims meet the descriptions of the Wetlands Real Property and Business Economic Loss Damage Categories described in the Settlement Agreement.

5.      I have consulted with and been informed by my attorneys and Economic Class Counsel regarding the Economic Settlement and my claims in the Economic Settlement.  I have also generally made myself available to my attorneys and Economic Class Counsel, whether via telephone, e-mail, or in person, throughout the time period that I have served as a class representative, and I will continue to do so for as long as this case remains active.

6.      As class representative, I have actively followed and participated in this Economic Settlement, including reviewing the Preliminary Approval Order, the underlying briefs in support of Preliminary Approval, the Economic Class Complaint, the Economic Settlement Agreement, and the Detailed Economic Class Notice, as well as the online resources regarding the Settlement, such as the Settlement Program website and the Court's Oil Spill MDL site.

7.      I have also actively participated in the Economic Settlement by filing claims for Wetlands Real Property Damage and Business Economic Loss in the Deepwater Horizon Court-Supervised Settlement Program ("Settlement Program").  As of the date of this declaration, both of my claims are filed and awaiting review.

8.      I am generally familiar with the terms of the Economic Settlement.  I recognize that the Economic Settlement is a negotiated compromise between the parties and that Economic Class Members will receive relief only for eligible claims that are included in the Economic Settlement.  I think the Economic Settlement provides real and fair relief for the economic loss and property damage claims of the Economic Class Members who were harmed by the Deepwater Horizon Incident; I also think that the Settlement Program provides Economic Class Members with a fair and transparent claims process under the Court's control and protection. For these reasons, I support the Economic Settlement without reservation.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in New Orleans on Aug 6 , 2012.

Sworn to, and subscribed
before me, this ___6TH___ day
of ___August___, 2012

_____
Corliss Gallo

SCOTT R. SIMMONS
Notary Public
La. Bar Roll No. 233_
My Commission Expires at M_

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 <br><br> Relates to: *Claims in the "B1" Bundle* | MDL No. 2179 <br><br> SECTION: J <br><br> HONORABLE CARL J. BARBIER <br><br> MAGISTRATE JUDGE SHUSHAN |
| BON SECOUR FISHERIES, INC.; FORT MORGAN REALTY, INC.; LFBP #1, LLC d/b/a GW FINS; PANAMA CITY BEACH DOLPHIN TOURS & MORE, LLC; ZEKE'S CHARTER FLEET, LLC; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; LAKE EUGENIE LAND & DEVELOPMENT, INC.; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE; JOHN TESVICH; and MICHAEL GUIDRY, on behalf of themselves and all others similarly situated, <br><br>        Plaintiffs, <br> v. <br><br> BP EXPLORATION & PRODUCTION INC.; BP AMERICA PRODUCTION COMPANY; BP P.L.C., <br><br>        Defendants. | No. 12-970 <br><br> SECTION: J <br><br> HONORABLE CARL J. BARBIER <br><br> MAGISTRATE JUDGE SHUSHAN |

## DECLARATION OF FORT MORGAN REALTY, INC., IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE ECONOMIC & PROPERTY DAMAGES SETTLEMENT

I, Greg B. Miller, declare as follows:

1.     I am over the age of 18 years and I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

2.     I am an authorized representative of Fort Morgan Realty, Inc. ("Fort Morgan Realty"), which is a business and a representative plaintiff in this case.

3.     Fort Morgan Realty submits this declaration in support of Plaintiffs' Motion for Final Approval of the Economic & Property Damages Settlement (the "Economic Settlement").

4.     Through its attorneys and Economic Class Counsel, Fort Morgan Realty brought claims on behalf of the Economic & Property Damages Class.

5.     Fort Morgan Realty is informed and believes that it is an Economic Class Member because it is a business operating in Gulf Shores, Baldwin County, Alabama, and Fort Morgan Realty's claim meets the description of the Business Economic Loss Damage Category described in the Settlement Agreement.

6.     Fort Morgan Realty has consulted with and been informed by its attorneys and Economic Class Counsel regarding the Economic Settlement and its claims in the Economic Settlement.  Fort Morgan Realty has also generally made its authorized representatives, including myself, available to its attorneys and Economic Class Counsel, whether via telephone, e-mail, or in person, throughout the time period that Fort Morgan Realty has served as a class representative, and Fort Morgan Realty will continue to do so for as long as this case remains active.

7.     As class representative, Fort Morgan Realty has actively followed and participated in this Economic Settlement.  I am generally familiar with the Economic Class

Complaint, the Economic Settlement Agreement, and the Detailed Economic Class Notice, as well as the online resources regarding the Settlement.

8.     Fort Morgan Realty is also actively participating in the Economic Settlement by filing a Business Economic Loss claim in the Deepwater Horizon Court-Supervised Settlement Program ("Settlement Program").  As of the date of this declaration, Fort Morgan Realty is calculating its claim amount and anticipates filing its claim within the next few days or weeks.

9.     Fort Morgan Realty is generally familiar with the terms of the Economic Settlement.  Fort Morgan Realty recognizes that the Economic Settlement is a negotiated compromise between the parties and that Economic Class Members will receive relief only for eligible claims that are included in the Economic Settlement.  Fort Morgan Realty thinks the Economic Settlement provides real and fair relief for the economic loss and property damage claims of the Economic Class Members who were harmed by the Deepwater Horizon Incident; Fort Morgan Realty also thinks that the Settlement Program provides Economic Class Members with a fair and transparent claims process under the Court's control and protection.  For these reasons, Fort Morgan Realty supports the Economic Settlement without reservation.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in *Mobile, AL*, on August *9*, 2012.

Greg B. Miller
*Authorized Representative for Fort Morgan Realty, Inc.*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010

Relates to:  *Claims in the "B1" Bundle*

MDL No. 2179

SECTION: J

HONORABLE CARL J. BARBIER

MAGISTRATE JUDGE SHUSHAN

---

BON SECOUR FISHERIES, INC., FORT MORGAN REALTY, INC.; LFBP #1, LLC d/b/a GW FINS; PANAMA CITY BEACH DOLPHIN TOURS & MORE, LLC; ZEKE'S CHARTER FLEET, LLC; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; LAKE EUGENIE LAND & DEVELOPMENT, INC.; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE; JOHN TESVICH; and MICHAEL GUIDRY, on behalf of themselves and all others similarly situated,

        Plaintiffs,

v.

BP EXPLORATION & PRODUCTION INC.; BP AMERICA PRODUCTION COMPANY; BP P.L.C.,

        Defendants.

No. 12-970

SECTION: J

HONORABLE CARL J. BARBIER

MAGISTRATE JUDGE SHUSHAN

---

## DECLARATION OF LFBP #1, LLC d/b/a GW FINS IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE ECONOMIC & PROPERTY DAMAGES SETTLEMENT

I, Gary Wollerman, declare as follows:

1.     I am over the age of 18 years and I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

2.     I am an authorized representative of LFBP #1, LLC d/b/a GW Fins ("GW Fins"), which is a business and a representative plaintiff in this case.

3.     GW Fins submits this declaration in support of Plaintiffs' Motion for Final Approval of the Economic & Property Damages Settlement (the "Economic Settlement").

4.     Through its attorneys and Economic Class Counsel, GW Fins brought claims on behalf of the Economic & Property Damages Class.

5.     GW Fins is informed and believes that it is an Economic Class Member because GW Fins is a business operating in the French Quarter, New Orleans, Louisiana, and GW Fins' claim meets the description of the Business Economic Loss Damage Category described in the Settlement Agreement.

6.     GW Fins has consulted with and been informed by its attorneys and Economic Class Counsel regarding the Economic Settlement and its claims in the Economic Settlement. GW Fins has also generally made its authorized representatives, including me, available to its attorneys and Economic Class Counsel, whether via telephone, e-mail, or in person, throughout the time period that GW Fins has served as a class representative, and GW Fins will continue to do so for as long as this case remains active.

7.     As class representative, GW Fins has actively followed and participated in this Economic Settlement, including reviewing the Preliminary Approval Order, the underlying briefs in support of Preliminary Approval, the Economic Class Complaint, the Economic Settlement

Agreement, and the Detailed Economic Class Notice, as well as the online resources regarding the Settlement, such as the Settlement Program website and the Court's Oil Spill MDL site.

8.     GW Fins has also actively participated in the Economic Settlement by filing a Business Economic Loss claim in the Deepwater Horizon Court-Supervised Settlement Program ("Settlement Program"). As of the date of this declaration, GW Fins' claim is filed and awaiting review.

9.     GW Fins is generally familiar with the terms of the Economic Settlement. GW Fins recognizes that the Economic Settlement is a negotiated compromise between the parties and that Economic Class Members will receive relief only for eligible claims that are included in the Economic Settlement. GW Fins thinks the Economic Settlement provides real and fair relief for the economic loss and property damage claims of the Economic Class Members who were harmed by the Deepwater Horizon Incident; GW Fins also thinks that the Settlement Program provides Economic Class Members with a fair and transparent claims process under the Court's control and protection. For these reasons, GW Fins supports the Economic Settlement without reservation.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in New Orleans, Louisiana, on July 26 2012.

Gary Wollerman
*Authorized Representative for LFBP #1, LLC d/b/a GW Fins*

-3-

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179<br><br>SECTION: J |
| Relates to:  *Claims in the "B1" Bundle* | HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

| | |
|---|---|
| BON SECOUR FISHERIES, INC., FORT MORGAN REALTY, INC.; LFBP #1, LLC d/b/a GW FINS; PANAMA CITY BEACH DOLPHIN TOURS & MORE, LLC; ZEKE'S CHARTER FLEET, LLC; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; LAKE EUGENIE LAND & DEVELOPMENT, INC.; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE; JOHN TESVICH; and MICHAEL GUIDRY, on behalf of themselves and all others similarly situated, | No. 12-970<br><br>SECTION: J<br><br>HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |
|        Plaintiffs, | |
| v. | |
| BP EXPLORATION & PRODUCTION INC.; BP AMERICA PRODUCTION COMPANY; BP P.L.C., | |
|        Defendants. | |

## DECLARATION OF HENRY HUTTO IN SUPPORT
## OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
## <u>THE ECONOMIC & PROPERTY DAMAGES SETTLEMENT</u>

I, Henry Hutto, declare as follows:

1.      I am over the age of 18 years and I have personal knowledge of the facts set forth in this Declaration and could testify competently to them if called upon to do so.

2.      I submit this declaration in support of Plaintiffs' Motion for Final Approval of the Economic & Property Damages Settlement (the "Economic Settlement").

3.      I am an individual and a representative plaintiff in this case.  Through Economic Class Counsel, I brought claims on behalf of the Economic & Property Damages Class.

4.      I am informed and believe that I am an Economic Class Member because I am a Natural Person residing in Buras, Louisiana, and my claims meet the descriptions of the Seafood Program, Vessels of Opportunity ("VoO") Charter Payment, Vessel Physical Damage, and Subsistence Damage Categories described in the Settlement Agreement.

5.      I have consulted with and been informed by Economic Class Counsel regarding the Economic Settlement and my claims in the Economic Settlement.  I have also generally made myself available to Economic Class Counsel, whether via telephone, e-mail, or in person, throughout the time period that I have served as a class representative, and I will continue to do so for as long as this case remains active.

6.      As class representative, I have actively followed and participated in this Economic Settlement, including reviewing the Preliminary Approval Order, the underlying briefs in support of Preliminary Approval, the Economic Class Complaint, the Economic Settlement Agreement, and the Detailed Economic Class Notice, as well as the online resources regarding the Settlement, such as the Settlement Program website and the Court's Oil Spill MDL site.

7.      I have also actively participated in the Economic Settlement by filing Seafood Program, Vessels of Opportunity ("VoO") Charter Payment, Vessel Physical Damage, and

Subsistence claims in the Deepwater Horizon Court-Supervised Settlement Program ("Settlement Program"). As of the date of this Declaration, one of my claims has been processed by the Settlement Program with payment pending; the others are filed and awaiting review.

8.      I am generally familiar with the terms of the Economic Settlement. I recognize that the Economic Settlement is a negotiated compromise between the parties and that Economic Class Members will receive relief only for eligible claims that are included in the Economic Settlement. I think the Economic Settlement provides real and fair relief for the economic loss and property damage claims of the Economic Class Members who were harmed by the Deepwater Horizon Incident; I also think that the Settlement Program provides Economic Class Members with a fair and transparent claims process under the Court's control and protection.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in New Orleans, on August 9th, 2012.

Henry Hutto

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

In Re:  Oil Spill by the Oil Rig "Deepwater
Horizon" in the Gulf of Mexico, on April
20, 2010

Relates to:  *Claims in the "B1" Bundle*

MDL No. 2179

SECTION: J

HONORABLE CARL J. BARBIER

MAGISTRATE JUDGE SHUSHAN

---

BON SECOUR FISHERIES, INC., FORT
MORGAN REALTY, INC.; LFBP #1, LLC
d/b/a GW FINS; PANAMA CITY BEACH
DOLPHIN TOURS & MORE, LLC;
ZEKE'S CHARTER FLEET, LLC;
WILLIAM SELLERS; KATHLEEN
IRWIN; RONALD LUNDY; CORLISS
GALLO; LAKE EUGENIE LAND &
DEVELOPMENT, INC.; HENRY HUTTO;
BRAD FRILOUX; JERRY J. KEE; JOHN
TESVICH; and MICHAEL GUIDRY, on
behalf of themselves and all others similarly
situated,

   Plaintiffs,

v.

BP EXPLORATION & PRODUCTION
INC.; BP AMERICA PRODUCTION
COMPANY; BP P.L.C.,

   Defendants.

No. 12-970

SECTION: J

HONORABLE CARL J. BARBIER

MAGISTRATE JUDGE SHUSHAN

---

## DECLARATION OF KATHLEEN IRWIN IN SUPPORT
## OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
## THE ECONOMIC & PROPERTY DAMAGES SETTLEMENT

I, Kathleen Irwin, declare as follows:

1.     I am over the age of 18 years and I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

2.     I submit this declaration in support of Plaintiffs' Motion for Final Approval of the Economic & Property Damages Settlement (the "Economic Settlement").

3.     I am an individual and a representative plaintiff in this case.  Through my attorneys and Economic Class Counsel, I brought claims on behalf of the Economic & Property Damages Class.

4.     I am informed and believe that I am an Economic Class Member because I am a Natural Person residing in Destin, Okaloosa County, Florida, and my claims meet the description of the Costal Real Property Damage Category described in the Settlement Agreement.

5.     I have consulted with and been informed by my attorneys and Economic Class Counsel regarding the Economic Settlement and my claims in the Economic Settlement. I have also generally made myself available to my attorneys and Economic Class Counsel, whether via telephone, e-mail, or in person, throughout the time period that I have served as a class representative, and I will continue to do so for as long as this case remains active.

6.     As class representative, I have actively followed and participated in this Economic Settlement, including reviewing the Preliminary Approval Order, the underlying briefs in support of Preliminary Approval, the Economic Class Complaint, the Economic Settlement Agreement, and the Detailed Economic Class Notice, as well as the online resources regarding the Settlement, such as the Settlement Program website and the Court's Oil Spill MDL site.

7.      I am also actively participating in the Economic Settlement by filing a Coastal Real Property Claim in the Deepwater Horizon Court-Supervised Settlement Program ("Settlement Program").  As of the date of this declaration, my claim is being calculated and I expect to file it within the next few weeks.

8.      I am generally familiar with the terms of the Economic Settlement.  I recognize that the Economic Settlement is a negotiated compromise between the parties and that Economic Class Members will receive relief only for eligible claims that are included in the Economic Settlement.  I think the Economic Settlement provides real and fair relief for the economic loss and property damage claims of the Economic Class Members who were harmed by the Deepwater Horizon Incident; I also think that the Settlement Program provides Economic Class Members with a fair and transparent claims process under the Court's control and protection. For these reasons, I support the Economic Settlement without reservation.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in _Destin_, on ~~July~~ _Aug_ _10_, 2012.

_Kathleen Irwin_
Kathleen Irwin

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | **MDL No. 2179** |
| | **SECTION: J** |
| Relates to: *Claims in the "B1" Bundle* | **HONORABLE CARL J. BARBIER** |
| | **MAGISTRATE JUDGE SHUSHAN** |

| | |
|---|---|
| BON SECOUR FISHERIES, INC., FORT MORGAN REALTY, INC.; LFBP #1, LLC d/b/a GW FINS; PANAMA CITY BEACH DOLPHIN TOURS & MORE, LLC; ZEKE'S CHARTER FLEET, LLC; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; LAKE EUGENIE LAND & DEVELOPMENT, INC.; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE; JOHN TESVICH; and MICHAEL GUIDRY, on behalf of themselves and all others similarly situated, | **No. 12-970** |
| | **SECTION: J** |
| | **HONORABLE CARL J. BARBIER** |
| | **MAGISTRATE JUDGE SHUSHAN** |
| Plaintiffs, | |
| v. | |
| BP EXPLORATION & PRODUCTION INC.; BP AMERICA PRODUCTION COMPANY; BP P.L.C., | |
| Defendants. | |

## DECLARATION OF JERRY J. KEE IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE ECONOMIC & PROPERTY DAMAGES SETTLEMENT

I, Jerry J. Kee, declare as follows:

1.     I am over the age of 18 years and I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

2.     I submit this declaration in support of Plaintiffs' Motion for Final Approval of the Economic & Property Damages Settlement (the "Economic Settlement").

3.     I am an individual and a representative plaintiff in this case.   Through my attorneys and Economic Class Counsel, I brought claims on behalf of the Economic & Property Damages Class.

4.     I am informed and believe that I am an Economic Class Member because I am a Natural Person residing in the State of Alabama, and my claim(s) meet the description of the Seafood Compensation Program Shrimp, Finfish and Blue Crab Categories described in the Settlement Agreement.

5.     I have consulted with and been informed by my attorneys and Economic Class Counsel regarding the Economic Settlement and my claim(s) in the Economic Settlement. I have also generally made myself available to my attorneys and Economic Class Counsel, whether via telephone, e-mail, or in person, throughout the time period that I have served as a class representative, and I will continue to do so for as long as this case remains active.

6.     As class representative, I have actively followed and participated in this Economic Settlement, including reviewing the Preliminary Approval Order, the underlying briefs in support of Preliminary Approval, the Economic Class Complaint, the Economic Settlement Agreement, and the Detailed Economic Class Notice, as well as the online resources regarding the Settlement, such as the Settlement Program website and the Court's Oil Spill MDL site.

7.      I am also actively participating in the Economic Settlement by filing Seafood Compensation Shrimp, Finfish and Blue Crab Claims in the Deepwater Horizon Court-Supervised Settlement Program ("Settlement Program").  As of the date of this declaration, my claim has been filed and is awaiting review.

8.      I am generally familiar with the terms of the Economic Settlement.  I recognize that the Economic Settlement is a negotiated compromise between the parties and that Economic Class Members will receive relief only for eligible claims that are included in the Economic Settlement.  I think the Economic Settlement provides real and fair relief for the economic loss and property damage claims of the Economic Class Members who were harmed by the Deepwater Horizon Incident; I also think that the Settlement Program provides Economic Class Members with a fair and transparent claims process under the Court's control and protection. For these reasons, I support the Economic Settlement without reservation.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in _____, on August 7, 2012.

_____
Jerry Kee

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

In Re:  Oil Spill by the Oil Rig "Deepwater
Horizon" in the Gulf of Mexico, on April
20, 2010


Relates to: *Claims in the "B1" Bundle*

MDL No. 2179

SECTION: J


HONORABLE CARL J. BARBIER

MAGISTRATE JUDGE SHUSHAN

---

BON SECOUR FISHERIES, INC., FORT
MORGAN REALTY, INC.; LFBP #1, LLC
d/b/a GW FINS; PANAMA CITY BEACH
DOLPHIN TOURS & MORE, LLC;
ZEKE'S CHARTER FLEET, LLC;
WILLIAM SELLERS; KATHLEEN
IRWIN; RONALD LUNDY; CORLISS
GALLO; LAKE EUGENIE LAND &
DEVELOPMENT, INC.; HENRY HUTTO;
BRAD FRILOUX; JERRY J. KEE; JOHN
TESVICH; and MICHAEL GUIDRY, on
behalf of themselves and all others similarly
situated,

        Plaintiffs,

v.

BP EXPLORATION & PRODUCTION
INC.; BP AMERICA PRODUCTION
COMPANY; BP P.L.C.,

        Defendants.

No. 12-970

SECTION: J


HONORABLE CARL J. BARBIER

MAGISTRATE JUDGE SHUSHAN

---

## DECLARATION OF JOHN TESVICH IN SUPPORT
## OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
## THE ECONOMIC & PROPERTY DAMAGES SETTLEMENT

I, John Tesvich, declare as follows:

1.      I am over the age of 18 years and I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

2.      I submit this declaration in support of Plaintiffs' Motion for Final Approval of the Economic & Property Damages Settlement (the "Economic Settlement").

3.      I am an individual and a representative plaintiff in this case.  Through my attorneys and Economic Class Counsel, I brought claims on behalf of the Economic & Property Damages Class.

4.      I am informed and believe that I am an Economic Class Member because I am a Natural Person residing in the State of Louisiana, and my claim(s) meet the description of the Seafood Compensation Program Oyster Leaseholder Category described in the Settlement Agreement.

5.      I have consulted with and been informed by my attorneys and Economic Class Counsel regarding the Economic Settlement and my claim(s) in the Economic Settlement. I have also generally made myself available to my attorneys and Economic Class Counsel, whether via telephone, e-mail, or in person, throughout the time period that I have served as a class representative, and I will continue to do so for as long as this case remains active.

6.      As class representative, I have actively followed and participated in this Economic Settlement, including reviewing the Preliminary Approval Order, the underlying briefs in support of Preliminary Approval, the Economic Class Complaint, the Economic Settlement Agreement, and the Detailed Economic Class Notice, as well as the online resources regarding the Settlement, such as the Settlement Program website and the Court's Oil Spill MDL site.

7.      I am also actively participating in the Economic Settlement by filing a Seafood Compensation Oyster Leaseholder Claim in the Deepwater Horizon Court-Supervised Settlement Program ("Settlement Program").  As of the date of this declaration, my claim has been filed and is awaiting review.

8.      I am generally familiar with the terms of the Economic Settlement.  I recognize that the Economic Settlement is a negotiated compromise between the parties and that Economic Class Members will receive relief only for eligible claims that are included in the Economic Settlement.  I think the Economic Settlement provides real and fair relief for the economic loss and property damage claims of the Economic Class Members who were harmed by the Deepwater Horizon Incident; I also think that the Settlement Program provides Economic Class Members with a fair and transparent claims process under the Court's control and protection. For these reasons, I support the Economic Settlement without reservation.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in _Belle Chasse_ on July _31_, 2012.

_____
John Tesvich

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179 |
| | SECTION: J |
| Relates to: *Claims in the "B1" Bundle* | |
| | **HONORABLE CARL J. BARBIER** |
| | **MAGISTRATE JUDGE SHUSHAN** |

| | |
|---|---|
| BON SECOUR FISHERIES, INC., FORT MORGAN REALTY, INC.; LFBP #1, LLC d/b/a GW FINS; PANAMA CITY BEACH DOLPHIN TOURS & MORE, LLC; ZEKE'S CHARTER FLEET, LLC; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; LAKE EUGENIE LAND & DEVELOPMENT, INC.; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE; JOHN TESVICH; and MICHAEL GUIDRY, on behalf of themselves and all others similarly situated, | No. 12-970 |
| | SECTION: J |
| | **HONORABLE CARL J. BARBIER** |
| | **MAGISTRATE JUDGE SHUSHAN** |
| Plaintiffs, | |
| v. | |
| BP EXPLORATION & PRODUCTION INC.; BP AMERICA PRODUCTION COMPANY; BP P.L.C., | |
| Defendants. | |

## DECLARATION OF LAKE EUGENIE LAND & DEVELOPMENT, INC. IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE ECONOMIC & PROPERTY DAMAGES SETTLEMENT

I, William Rudolf, declare as follows:

1.      I am over the age of 18 years and I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

2.      I am an authorized representative of Lake Eugenie Land & Development, Inc. ("Lake Eugenie"), which is a business and a representative plaintiff in this case.

3.      Lake Eugenie submits this declaration in support of Plaintiffs' Motion for Final Approval of the Economic & Property Damages Settlement (the "Economic Settlement").

4.      Through its attorneys and Economic Class Counsel, Lake Eugenie brought claims on behalf of the Economic & Property Damages Class.

5.      I am informed and believe that Lake Eugenie is an Economic Class Member because Lake Eugenie is a business that owned real property in St. Bernard Parish, Louisiana, during the time period April 20, 2010 to April 16, 2012, and Lake Eugenie's claim meets the description of the Wetlands Real Property Damage Category described in the Settlement Agreement.

6.      Lake Eugenie has consulted with and been informed by its attorneys and Economic Class Counsel regarding the Economic Settlement and its claims in the Economic Settlement.  Lake Eugenie has also generally made its authorized representatives, including me, available to Economic Class Counsel, whether via telephone, e-mail, or in person, throughout the time period that Lake Eugenie has served as a class representative, and Lake Eugenie will continue to do so for as long as this case remains active.

7.      As class representative, Lake Eugenie has actively followed and participated in this Economic Settlement, including reviewing the Preliminary Approval Order, the underlying briefs in support of Preliminary Approval, the Economic Class Complaint, the Economic

Settlement Agreement, and the Detailed Economic Class Notice, as well as the online resources regarding the Settlement, such as the Settlement Program website and the Court's Oil Spill MDL site.  Further, Lake Eugenie provided input into the terms of the Economic Settlement by collecting and providing information of oiling on its property.  Lake Eugenie employees took pictures and GPS coordinates of oiling on its property and entered into Site Access Agreements to allow federal response teams onto its property to look for oil.   Furthermore, Lake Eugenie and its attorneys met with BP attorneys and representatives several times to exchange information about the oil on its property and to negotiate the terms of the Economic Settlement with regard to wetlands claims.

8.      Lake Eugenie has also actively participated in the Economic Settlement by filing a Wetlands Real Property Damage claim in the Deepwater Horizon Court-Supervised Settlement Program ("Settlement Program").  As of the date of this Declaration, Lake Eugenie's claim is filed and awaiting review.

9.      Lake Eugenie and its attorneys have been active in helping to inform/assist others/community re the Settlement by informing other wetlands property owners about the terms of the wetlands settlement and how owners of wetland property are to be compensated per the settlement agreement.

10.      Lake Eugenie is generally familiar with the terms of the Economic Settlement. Lake Eugenie recognizes that the Economic Settlement is a negotiated compromise between the parties and that Economic Class Members will receive relief only for eligible claims that are included in the Economic Settlement.  Lake Eugenie thinks the Economic Settlement provides real and fair relief for the economic loss and property damage claims of the Economic Class Members who were harmed by the Deepwater Horizon Incident; Lake Eugenie also thinks that

the Settlement Program provides Economic Class Members with a fair and transparent claims process under the Court's control and protection.  For these reasons, Lake Eugenie supports the Economic Settlement without reservation.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in _Metairie_ , on July 9, 2012.

William Rudolf
*Authorized Representative for Lake Eugenie Land & Development, Inc.*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>Relates to: *Claims in the "B1" Bundle* | MDL No. 2179<br><br>**SECTION: J**<br><br>**HONORABLE CARL J. BARBIER**<br><br>**MAGISTRATE JUDGE SHUSHAN** |
| BON SECOUR FISHERIES, INC., FORT MORGAN REALTY, INC.; LFBP #1, LLC d/b/a GW FINS; PANAMA CITY BEACH DOLPHIN TOURS & MORE, LLC; ZEKE'S CHARTER FLEET, LLC; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; LAKE EUGENIE LAND & DEVELOPMENT, INC.; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE; JOHN TESVICH; and MICHAEL GUIDRY, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>BP EXPLORATION & PRODUCTION INC.; BP AMERICA PRODUCTION COMPANY; BP P.L.C.,<br><br>       Defendants. | No. 12-970<br><br>SECTION: J<br><br>HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

## DECLARATION OF RONALD LUNDY IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE ECONOMIC & PROPERTY DAMAGES SETTLEMENT

I, Ronald Lundy, declare as follows:

1.      I am over the age of 18 years and I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

2.      I submit this declaration in support of Plaintiffs' Motion for Final Approval of the Economic & Property Damages Settlement (the "Economic Settlement").

3.      I am an individual and a representative plaintiff in this case. Through my attorneys and Economic Class Counsel, I brought claims on behalf of the Economic & Property Damages Class.

4.      I am informed and believe that I am an Economic Class Member because I am a Natural Person residing in Gulfport, Mississippi, and my claim meets the descriptions of the Subsistence Damage Category described in the Settlement Agreement.

5.      I have consulted with and been informed by my attorneys and Economic Class Counsel regarding the Economic Settlement and my claims in the Economic Settlement. I have also generally made myself available to my attorneys and Economic Class Counsel, whether via telephone, e-mail, or in person, throughout the time period that I have served as a class representative, and I will continue to do so for as long as this case remains active.

6.      As class representative, I have actively followed and participated in this Economic Settlement, including reviewing the Preliminary Approval Order, the underlying briefs in support of Preliminary Approval, the Economic Class Complaint, the Economic Settlement Agreement, and the Detailed Economic Class Notice, as well as the online resources regarding the Settlement, such as the Settlement Program website and the Court's Oil Spill MDL site.

7.      I have also actively participated in the Economic Settlement by filing a claim for Subsistence Damage in the Deepwater Horizon Court-Supervised Settlement Program

-2-

("Settlement Program"). As of the date of this declaration, my claim is filed and awaiting review.

8.     I am generally familiar with the terms of the Economic Settlement. I recognize that the Economic Settlement is a negotiated compromise between the parties and that Economic Class Members will receive relief only for eligible claims that are included in the Economic Settlement. I think the Economic Settlement provides real and fair relief for the economic loss and property damage claims of the Economic Class Members who were harmed by the Deepwater Horizon Incident, through a fair and transparent claims process under the Court's control and protection. I also think that the Settlement Program is a thoughtfully developed system that was designed with real efforts to understand the interests and realities of Subsistence claimants. For these reasons, I support the Economic Settlement.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in $B./0x_i$, $MS$, on August $8$, 2012.

Ronald a Lundy
Ronald Lundy

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179 |
| | SECTION: J |
| Relates to:  *Claims in the "B1" Bundle* | |
| | **HONORABLE CARL J. BARBIER** |
| | **MAGISTRATE JUDGE SHUSHAN** |

| | |
|---|---|
| BON SECOUR FISHERIES, INC., FORT MORGAN REALTY, INC.; LFBP #1, LLC d/b/a GW FINS; PANAMA CITY BEACH DOLPHIN TOURS & MORE, LLC; ZEKE'S CHARTER FLEET, LLC; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; LAKE EUGENIE LAND & DEVELOPMENT, INC.; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE; JOHN TESVICH; and MICHAEL GUIDRY, on behalf of themselves and all others similarly situated, | No. 12-970 |
| | SECTION: J |
| | **HONORABLE CARL J. BARBIER** |
| | **MAGISTRATE JUDGE SHUSHAN** |
| Plaintiffs, | |
| v. | |
| BP EXPLORATION & PRODUCTION INC.; BP AMERICA PRODUCTION COMPANY; BP P.L.C., | |
| Defendants. | |

# DECLARATION OF MICHAEL GUIDRY IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE ECONOMIC & PROPERTY DAMAGES SETTLEMENT

I, Michael Guidry, declare as follows:

1.     I am over the age of 18 years and I have personal knowledge of the facts set forth in this Declaration and could testify competently to them if called upon to do so.

2.     I submit this declaration in support of Plaintiffs' Motion for Final Approval of the Economic & Property Damages Settlement (the "Economic Settlement").

3.     I am an individual and a representative plaintiff in this case. Through Economic Class Counsel, I brought claims on behalf of the Economic & Property Damages Class.

4.     I am informed and believe that I am an Economic Class Member because I am a Natural Person residing in Galliano, Louisiana, and my claims meet the descriptions of the Seafood Program, Vessels of Opportunity ("VoO") Charter Payment, Vessel Physical Damage, and Subsistence Damage Categories described in the Settlement Agreement.

5.     I have consulted with and been informed by Economic Class Counsel regarding the Economic Settlement and my claims in the Economic Settlement. I have also generally made myself available to Economic Class Counsel, whether via telephone, e-mail, or in person, throughout the time period that I have served as a class representative, and I will continue to do so for as long as this case remains active.

6.     As class representative, I have actively followed and participated in this Economic Settlement, including reviewing the Preliminary Approval Order, the underlying briefs in support of Preliminary Approval, the Economic Class Complaint, the Economic Settlement Agreement, and the Detailed Economic Class Notice, as well as the online resources regarding the Settlement, such as the Settlement Program website and the Court's Oil Spill MDL site.

7.     I have also actively participated in the Economic Settlement by filing Seafood Program, Vessels of Opportunity ("VoO") Charter Payment, Vessel Physical Damage, and

Subsistence claims in the Deepwater Horizon Court-Supervised Settlement Program ("Settlement Program"). As of the date of this Declaration, one of my claims has been processed by the Settlement Program with payment pending; the others are filed and awaiting review.

8.      I have helped inform and assist other seafood compensation claimants with regards to the Settlement in and around the Lafourche Parish area.

9.      I am generally familiar with the terms of the Economic Settlement. I recognize that the Economic Settlement is a negotiated compromise between the parties and that Economic Class Members will receive relief only for eligible claims that are included in the Economic Settlement. I think the Economic Settlement provides real and fair relief for the economic loss and property damage claims of the Economic Class Members who were harmed by the Deepwater Horizon Incident; I also think that the Settlement Program provides Economic Class Members with a fair and transparent claims process under the Court's control and protection. For these reasons, I support the Economic Settlement without reservation.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in Galliano, LA. , on August 6th, 2012.

_Michael Guidry_

Michael Guidry

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179 |
| | SECTION: J |
| Relates to:  *Claims in the "B1" Bundle* | HONORABLE CARL J. BARBIER |
| | MAGISTRATE JUDGE SHUSHAN |

| | |
|---|---|
| BON SECOUR FISHERIES, INC., FORT MORGAN REALTY, INC.; LFBP #1, LLC d/b/a GW FINS; PANAMA CITY BEACH DOLPHIN TOURS & MORE, LLC; ZEKE'S CHARTER FLEET, LLC; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; LAKE EUGENIE LAND & DEVELOPMENT, INC.; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE; JOHN TESVICH; and MICHAEL GUIDRY, on behalf of themselves and all others similarly situated, | No. 12-970 |
| | SECTION: J |
| | HONORABLE CARL J. BARBIER |
| | MAGISTRATE JUDGE SHUSHAN |
| Plaintiffs, | |
| v. | |
| BP EXPLORATION & PRODUCTION INC.; BP AMERICA PRODUCTION COMPANY; BP P.L.C., | |
| Defendants. | |

# DECLARATION OF PANAMA CITY BEACH DOLPHIN TOURS & MORE, LLC IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE ECONOMIC & PROPERTY DAMAGES SETTLEMENT

I, Joseph Dane Taylor, declare as follows:

1.      I am over the age of 18 years and I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

2.      I am an authorized representative of Panama City Beach Dolphin Tours & More, LLC ("PCB Dolphin"), which is a business and a representative plaintiff in this case.

3.      PCB Dolphin submits this declaration in support of Plaintiffs' Motion for Final Approval of the Economic & Property Damages Settlement (the "Economic Settlement").

4.      Through its attorneys and Economic Class Counsel, PCB Dolphin brought claims on behalf of the Economic & Property Damages Class.

5.      PCB Dolphin is informed and believes that it is an Economic Class Member because it is a business operating in Panama City Beach, Bay County, Florida, and PCB Dolphin's claim meets the description of the Business Economic Loss Damage Category and VoO Charter Payment Category described in the Settlement Agreement.

6.      PCB Dolphin has consulted with and been informed by its attorneys and Economic Class Counsel regarding the Economic Settlement and its claims in the Economic Settlement.  PCB Dolphin has also generally made its authorized representatives, including me, available to its attorneys and Economic Class Counsel, whether via telephone, e-mail, or in person, throughout the time period that PCB Dolphin has served as a class representative, and PCB Dolphin will continue to do so for as long as this case remains active.

7.      As class representative, PCB Dolphin has actively followed and participated in this Economic Settlement, including reviewing the Preliminary Approval Order, the underlying briefs in support of Preliminary Approval, the Economic Class Complaint, the Economic Settlement Agreement, and the Detailed Economic Class Notice, as well as the online resources

regarding the Settlement, such as the Settlement Program website and the Court's Oil Spill MDL site.

8.      PCB Dolphin is also actively participating in the Economic Settlement by filing a Business Economic Loss claim and a VoO Charter Payment Claim in the Deepwater Horizon Court-Supervised Settlement Program ("Settlement Program").  As of the date of this declaration, PCB Dolphin has submitted its VoO Charter Payment Claim and is calculating its Business Economic Loss claim amount and anticipates filing its claim within the next few days or weeks.

9.      PCB Dolphin is generally familiar with the terms of the Economic Settlement. PCB Dolphin recognizes that the Economic Settlement is a negotiated compromise between the parties and that Economic Class Members will receive relief only for eligible claims that are included in the Economic Settlement.  PCB Dolphin thinks the Economic Settlement provides real and fair relief for the economic loss and property damage claims of the Economic Class Members who were harmed by the Deepwater Horizon Incident; PCB Dolphin also thinks that the Settlement Program provides Economic Class Members with a fair and transparent claims process under the Court's control and protection.  For these reasons, PCB Dolphin supports the Economic Settlement without reservation.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in _Panama City_, on August _7_, 2012.

Joseph Dane Taylor
*Authorized Representative for Panama City Beach*
*Dolphin Tours & More, LLC*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010<br><br>Relates to:  *Claims in the "B1" Bundle* | MDL No. 2179<br><br>SECTION: J<br><br>HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |
| BON SECOUR FISHERIES, INC., FORT MORGAN REALTY, INC.; LFBP #1, LLC d/b/a GW FINS; PANAMA CITY BEACH DOLPHIN TOURS & MORE, LLC; ZEKE'S CHARTER FLEET, LLC; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; LAKE EUGENIE LAND & DEVELOPMENT, INC.; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE; JOHN TESVICH; and MICHAEL GUIDRY, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>v.<br><br>BP EXPLORATION & PRODUCTION INC.; BP AMERICA PRODUCTION COMPANY; BP P.L.C.,<br><br>        Defendants. | No. 12-970<br><br>SECTION: J<br><br>HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

## DECLARATION OF WILLIAM SELLERS IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE ECONOMIC & PROPERTY DAMAGES SETTLEMENT

I, William Sellers, declare as follows:

1.     I am over the age of 18 years and I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

2.     I submit this declaration in support of Plaintiffs' Motion for Final Approval of the Economic & Property Damages Settlement (the "Economic Settlement").

3.     I am an individual and a representative plaintiff in this case.  Through my attorneys and Economic Class Counsel, I brought claims on behalf of the Economic & Property Damages Class.

4.     I am informed and believe that I am an Economic Class Member because I am a Natural Person residing in Montgomery County, Alabama, and my claims meet the descriptions of the Business Economic Loss, Costal Real Property, and Real Property Sales Damage Categories described in the Settlement Agreement.

5.     I have consulted with and been informed by my attorneys and Economic Class Counsel regarding the Economic Settlement and my claims in the Economic Settlement. I have also generally made myself available to my attorneys and Economic Class Counsel, whether via telephone, e-mail, or in person, throughout the time period that I have served as a class representative, and I will continue to do so for as long as this case remains active.

6.     As class representative, I have actively followed and participated in this Economic Settlement, including reviewing the Preliminary Approval Order, the underlying briefs in support of Preliminary Approval, the Economic Class Complaint, the Economic Settlement Agreement, and the Detailed Economic Class Notice, as well as the online resources regarding the Settlement, such as the Settlement Program website and the Court's Oil Spill MDL site.

7.      I am also actively participating in the Economic Settlement by filing Business Economic Loss, Coastal Real Property, and Real Property Sales Loss claims in the Deepwater Horizon Court-Supervised Settlement Program ("Settlement Program").  As of the date of this declaration, my claims are being calculated and I expect to file them within the next few days or weeks.

8.      I am generally familiar with the terms of the Economic Settlement.  I recognize that the Economic Settlement is a negotiated compromise between the parties and that Economic Class Members will receive relief only for eligible claims that are included in the Economic Settlement.  I think the Economic Settlement provides real and fair relief for the economic loss and property damage claims of the Economic Class Members who were harmed by the Deepwater Horizon Incident; I also think that the Settlement Program provides Economic Class Members with a fair and transparent claims process under the Court's control and protection. For these reasons, I support the Economic Settlement without reservation.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in _PERSON_, on August 3, 2012.

William Sellers

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | **MDL No. 2179**<br><br>**SECTION: J** |
| Relates to: *Claims in the "B1" Bundle* | **HONORABLE CARL J. BARBIER**<br><br>**MAGISTRATE JUDGE SHUSHAN** |

| | |
|---|---|
| BON SECOUR FISHERIES, INC., FORT MORGAN REALTY, INC.; LFBP #1, LLC d/b/a GW FINS; PANAMA CITY BEACH DOLPHIN TOURS & MORE, LLC; ZEKE'S CHARTER FLEET, LLC; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLISS GALLO; LAKE EUGENIE LAND & DEVELOPMENT, INC.; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE; JOHN TESVICH; and MICHAEL GUIDRY, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br>v.<br><br>BP EXPLORATION & PRODUCTION INC.; BP AMERICA PRODUCTION COMPANY; BP P.L.C.,<br><br>       Defendants. | **No. 12-970**<br><br>**SECTION: J**<br><br>**HONORABLE CARL J. BARBIER**<br><br>**MAGISTRATE JUDGE SHUSHAN** |

### DECLARATION OF ZEKE'S CHARTER FLEET, LLC IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF <u>THE ECONOMIC & PROPERTY DAMAGES SETTLEMENT</u>

I, David Stewart, declare as follows:

1.      I am over the age of 18 years and I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

2.      I am an authorized representative of Zeke's Charter Fleet, LLC ("Zeke's Charter Fleet"), which is a business and a representative plaintiff in this case.

3.      Zeke's Charter Fleet submits this declaration in support of Plaintiffs' Motion for Final Approval of the Economic & Property Damages Settlement (the "Economic Settlement").

4.      Through its attorneys and Economic Class Counsel, Zeke's Charter Fleet brought claims on behalf of the Economic & Property Damages Class.

5.      Zeke's Charter Fleet is informed and believes that it is an Economic Class Member because it is a business operating in Orange Beach, Baldwin County, Alabama, and Zeke's Charter Fleet claims meet the description of the Business Economic Loss Damage Category and the VoO Charter Payment Category described in the Settlement Agreement.

6.      Zeke's Charter Fleet has consulted with and been informed by its attorneys and Economic Class Counsel regarding the Economic Settlement and its claims in the Economic Settlement.  Zeke's Charter Fleet has also generally made its authorized representatives, including me, available to its attorneys and Economic Class Counsel, whether via telephone, e-mail, or in person, throughout the time period that Zeke's Charter Fleet has served as a class representative, and Zeke's Charter Fleet will continue to do so for as long as this case remains active.

7.      As class representative, Zeke's Charter Fleet has actively followed and participated in this Economic Settlement, has been provided with copies of the pertinent court documents including the Preliminary Approval Order, the underlying briefs in support of

Preliminary Approval, the Economic Class Complaint, the Economic Settlement Agreement, and the Detailed Economic Class Notice, as well as the online resources regarding the Settlement, such as the Settlement Program website and the Court's Oil Spill MDL site, has corresponded with counsel regarding the settlement, and is generally aware of the contents of the settlement documents.

8.      Zeke's Charter Fleet is also actively participating in the Economic Settlement by filing a Business Economic Loss claim and a VoO Charter Payment claim in the Deepwater Horizon Court-Supervised Settlement Program ("Settlement Program").  As of the date of this declaration, Zeke's Charter Fleet is calculating its claim amounts and anticipates filing its claims within the next few days or weeks.

9.      Zeke's Charter Fleet is generally familiar with the terms of the Economic Settlement.  Zeke's Charter Fleet recognizes that the Economic Settlement is a negotiated compromise between the parties and that Economic Class Members will receive relief only for eligible claims that are included in the Economic Settlement.  Zeke's Charter Fleet thinks the Economic Settlement provides real and fair relief for the economic loss and property damage claims of the Economic Class Members who were harmed by the Deepwater Horizon Incident; Zeke's Charter Fleet also thinks that the Settlement Program provides Economic Class Members with a fair and transparent claims process under the Court's control and protection.  For these reasons, Zeke's Charter Fleet supports the Economic Settlement.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed in _____ on August 10th, 2012.

_____
David Stewart
*Authorized Representative for Zeke's Charter Fleet, LLC*