# Joint Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO.   2179 SECTION J |
| This document relates to all actions. | * * * | HONORABLE CARL J. BARBIER |
| | * * | MAGISTRATE JUDGE SHUSHAN |

---

| | | |
|---|---|---|
| Bon Secour Fisheries, Inc., et al., individually and on behalf of themselves and all others similarly situated, | * * * | Civil Action No. 12-970 SECTION J |
| Plaintiffs, | * | |
| v. | * * | HONORABLE CARL J. BARBIER |
| BP Exploration & Production, Inc.; BP America Production Company; BP P.L.C., | * * * | MAGISTRATE JUDGE SHUSHAN |
| Defendants | | |

---

# Declaration of John W. Perry, Jr.

## Assignment

On March 8, 2012, the Honorable Carl Barbier appointed me "to preside over the proposed settlement of the seafood program," which constitutes part of a larger proposed class settlement in this matter.   Docket No. 5998.   I am a partner in the firm of Perry, Atkinson, Balhoff, Mengis & Burns, L.L.C.   I am attaching my curriculum vitae as Exhibit A.   I asked my partner Daniel J. Balhoff to assist me in discharging my duties as the court-appointed neutral.   I have worked with Mr. Balhoff in similar capacities several times before.

## Investigation

Over the next two months, I attended meetings in New Orleans and Baton Rouge, with additional substantial time spent in telephone conferences.[1]   I coordinated my investigation with Mr. Balhoff, who took ultimate direction from me at all times.   During the course of the assignment, Mr. Balhoff and I also apprised Magistrate Judge Shushan of developments from time to time.

Mr. Balhoff and I met with:

- Lay persons (non-lawyers) representing and/or participating in the shrimp industry, the oyster industry, the finfish industry, and the crab industry.   Many of these industry representatives worked as harvesters, boat captains, oyster leaseholders, quota holders and/or vessel owners in their respective industries.

- Lawyers for persons engaged in each of these segments of the above-named industries including harvesters, boat captains, oyster leaseholders, quota holders and/or vessel owners.

- Members of the Plaintiffs' Steering Committee.

- Representatives and lawyers for BP.

- Experts who had been retained by the parties to the settlement.

I attended some, but not all, of these meetings.   Mr. Balhoff telephoned me to report on progress almost daily when I could not be physically present.

I followed up on the initial investigation with additional communications with many of the representatives listed above.   All of the persons involved were extremely cooperative and helpful.

In addition to the numerous meetings discussed above, I (with Mr. Balhoff's assistance) reviewed historical evidence concerning the performance of each sector of the seafood industry and the available data with respect to the impact of the spill, including:

- Materials and data from Congressional proceedings and from federal government agencies such as the U.S. Department of Commerce, including the National Marine Fisheries Service ("NMFS") of the National Oceanic and Atmospheric Administration ("NOAA").

- Materials and data prepared by and/or for state government agencies such as the

---

[1]     The Seafood Compensation Program was substantially complete on April 17, 2012.   Thereafter, I continued to make minor adjustments to the Seafood Compensation Program.   The final Seafood Compensation Program was filed with the Court on May 2, 2012.

Louisiana Department of Wildlife and Fisheries.

- Literature and studies concerning the fisheries in and around the Gulf of Mexico, including but not limited to Gulf States Marine Fisheries Commission ("GSMFC") reports.

- Materials and data relating to and/or developed by the Gulf Coast Claims Facility ("GCCF").

- The Agreement-In-Principle Regarding *Deepwater Horizon* Economic and Property Damages Settlement and relevant exhibits signed by the parties on March 2, 2012.

While I was not able to review all of the above material and attend all the meetings myself, Mr. Balhoff summarized the information he gathered and relayed it to me both regularly and thoroughly. I am satisfied that, with Mr. Balhoff's assistance, I was able to gather enough information to appropriately perform my duties.

## Methodology

After conducting the initial investigation, and after discussing the matter with Mr. Balhoff, I sought to develop a fair program, and ultimately a set of plans, by which to fairly allocate the Seafood Compensation Program Amount. The prospective class members that Mr. Balhoff and I interviewed conveyed that they wanted the funds to be distributed quickly, but they were even more vehement in their desire that the funds be distributed based upon a transparent and principled methodology.

In designing the Seafood Compensation Program, we were guided by the following principles:

- The Program should be transparent so that eligible class members can understand the required documentation and the compensation amounts that they will receive under the Program.

- The Program should have consistent guidelines that apply across all the common characteristics of species and claimants, while recognizing special characteristics arise within and among the species and among the claimants.

- The Program should be easy to administer.

- The Program should be as specific as possible to lessen the potential for inconsistent treatment of claimants.

- The Program should incorporate rules that take into account unique hardship exceptions.

- The Program, above all, should provide for fair and adequate compensation under the circumstances to each potential claimant affected by the spill and its aftermath.

## Conclusions

First, I endorse the Seafood Compensation Program that was submitted to the Court and believe, for the reasons stated above (and for the reasons implicit in the Seafood Compensation Program itself), it will provide fair, reasonable and adequate compensation to the Claimants under the circumstances. The Seafood Compensation Program adopts rules that address the volume of catch loss and the impact of cost, price and undocumented catch. The Seafood Compensation Program applies Risk Transfer Premiums ("RTPs") consistent with the overall Settlement Agreement.

Second, and independent of the first conclusion, based on available data that Mr. Balhoff and I (along with the settling parties) reviewed and evaluated, it is conservatively projected that initial payments (those that will constitute fair, reasonable and adequate compensation) under the Seafood Compensation Program will total approximately $1.9 billion. This estimation is conservative (i.e., it probably is a larger number than that which will be paid out in the initial distribution) for the following reasons:

- The estimate does not take into account a reduction of the potential total compensation amount for payments previously made to Class Members by the GCCF. The GCCF reported over $700 million payments in Seafood claims and undoubtedly some of this amount will result in a dollar-for-dollar reduction in payments to those claimants from the Seafood Compensation Program.

- The estimate assumes that all Seafood Compensation Program businesses and non-Category III seafood crew class members claims will be compensated from the $2.3 billion Seafood Compensation Program Amount. Under the settlement, BP is responsible for paying up to 17.5% of opt-outs from such claimant categories outside of the Seafood Compensation Program; so payments to such persons, while reducing the number of Seafood Compensation Program claimants, will not reduce the $2.3 billion Seafood Compensation Program Amount.

- The estimates assumes that all of the Seafood Compensation Program Category III seafood crew class members will be compensated from the $2.3 billion Seafood Compensation Program Amount. Under the settlement, BP is responsible for paying up to 15% of opt-outs from this claimant category outside of the Seafood Compensation Program, so payments to such individuals likewise reduce the number of Seafood Compensation Program claimants but do not reduce the $2.3 billion Seafood Compensation Program Amount.

Based on these conservative elements of the projection, the Seafood Compensation Program may

well pay less than $1.9 billion in the first distribution, which would result in a second distribution to be made under the Seafood Compensation Program in an amount in excess of $400 million. The balance will be distributed consistent with the distribution methodology described in the Seafood Compensation Program (Docket No. 6430-22, Exhibit 10, p.3).


_____
JOHN W. PERRY, JR.


_____
DATE

 **John W. Perry, Jr.**  |  *perry@pabmb.com*  |  **(225)767-7730**

John Perry is a partner in the Baton Rouge office of Perry, Atkinson, Balhoff, Mengis and Burns and a founding principal of Perry Dampf Dispute Solutions. He has been conducting mediations for over 17 years and is one of the most active mediators and arbitrators in the south. His mediation practice has included thousands of successfully completed mediations for legal and commercial clients. John is recognized as a leading authority on the process and application of alternative dispute resolution. His experience as a mediator has covered a wide array of multi-party, complex legal and commercial issues. John also served as Judge Pro Tempore of the 19th Judicial Court by appointment from the Louisiana Supreme Court. As a principal in Perry Dampf Dispute Solutions, John is responsible for the selection and training of the mediator panel.

**Alternative Dispute Resolution Experience**

• Served as mediator, arbitrator and/or Special Master in thousands of cases since 1995

• Over 34 years of practice in personal injury (plaintiff and defense), insurance, professional and products liability

**Professional Licenses**

Admitted to the Bar: Louisiana, 1979; U.S. District Court: Eastern, Middle, and Western Districts of Louisiana; U.S. Court of Appeals, Fifth Circuit

**Memberships, Honors, Professional Associations**

Federal Bar Association • American Bar Association • Louisiana State Bar Association, Bar Admissions Committee • Baton Rouge Bar Association • Louisiana Association of Defense Counsel, Board of Directors • Louisiana Trial Lawyers Association, previously served on Board of Governors • Defense Research Institute • Dean Henry George McMahon Inn of Court, Master • American College of Civil Trial Mediators, Fellow • American College of Trial Lawyers, Fellow • American Board of Trial Advocates, Associate • Graduated Magna Cum Laude from Nicholls State University Undergraduate • Phi Kappa Phi Honor Society • Wall Street Journal Award for Outstanding Senior in College of Business Administration • Nicholls State University Hall of Fame • All Gulf South Conference Academic Team and Basketball Team Captain • Graduated Top 15% of class from LSU Law • Moot Court Board • LSU Law School Hall of Fame • AV rating from Martindale-Hubbell for legal ability and adherence to professional standards of ethics • Academy of Court Appointed Masters • Louisiana Super Lawyers in the area of Alternative Dispute Resolution, 2007-2011



EXHIBIT

tabbies

A

**Education**

Nicholls State University (BA – 1976); Louisiana State University Law School (JD – 1978)

**Areas of ADR Experience**

Automobile Accidents, Banking, Bankruptcy, Business Disputes, Class Action, Corporate Disputes, Commercial Disputes, Contract (Other Than Consumer, Construction, and Employment), Domestic Disputes, Dramshop Liability, Family Law Issues, Franchise, Health Care, Insurance, Labor Disputes, Lease, Malpractice, Maritime/Jones Act/OCSLA, Personal Injury, Premises Liability, Property Damage, Securities Law, Successions, Tax, Toxic Tort, Defective Products, Lemon Law, Products Liability, Rescission of Sales, Warranty Issues, Construction Disputes, Defective Premises, Liens, New Home Warranty Act, Warranty Issues, Affirmative Action, Discrimination, Employee Disputes, Retaliation, Unemployment Compensation, Workers' Compensation/LHWCA, Wrongful Discharge

**CLE and Teaching**

LSU Law School Adjunct Professor • LADC Annual Trial Academy, Faculty • LSU Law Center Trial Academy, Faculty • Lectured at LSU, Louisiana Association of Defense Counsel, State Bar Association, and Local Bar Association Seminars