# Exhibit 7

# Frequently Asked Questions

- **SECTION 1 - GENERAL INFORMATION ABOUT THE GULF COAST CLAIMS FACILITY**
- **SECTION 2 - ATTORNEY REPRESENTATION**
- **SECTION 3 - CLOSING THE EMERGENCY ADVANCE PAYMENT PROGRAM**
- **SECTION 4 - INFORMATION ON QUICK PAYMENT FINAL CLAIMS**
- **SECTION 5 - INFORMATION ON FULL REVIEW FINAL PAYMENT CLAIMS**
- **SECTION 6 – INFORMATION ON INTERIM PAYMENT CLAIMS**
- **SECTION 7 - WHO MAY FILE A CLAIM**
- **SECTION 8 - HOW TO FILE A FULL REVIEW FINAL PAYMENT CLAIM OR AN INTERIM PAYMENT CLAIM**
- **SECTION 9 – INFORMATION ON PAYMENTS**
- **SECTION 10 – INFORMATION ON CLAIM TYPES**
- **SECTION 11 – INFORMATION ON SUBSISTENCE CLAIMS**
- **SECTION 12 – INFORMATION ON CASINO WORKER CLAIMS**
- **SECTION 13 – RELATIONSHIP BETWEEN THE GCCF AND MULTIDISTRICT LITIGATION ("MDL")**
- **SECTION 14 – APPEALS OF FINAL CLAIM DETERMINATIONS**
- **SECTION 15 – CLAIMANT BILL OF RIGHTS**

------

## SECTION 1 - GENERAL INFORMATION ABOUT THE GULF COAST CLAIMS FACILITY

### 1. What is the Gulf Coast Claims Facility?

After the Deepwater Horizon incident on April 20, 2010 (the "Spill"), BP was designated by the U.S. Coast Guard as a "responsible party" under the Oil Pollution Act of 1990 ("OPA"). Pursuant to OPA, BP as a responsible party was required to establish a procedure for the payment or settlement of claims for costs and damages

incurred as a result of the Spill. BP established such a procedure, but subsequently, on June 16, 2010, the White House issued a press release announcing that (1) BP would replace its claims facility with a new and different claims facility which is now called the Gulf Coast Claims Facility ("GCCF"), and (2) BP would establish a $20 billion escrow fund to fulfill its claims processing obligations under OPA. Kenneth R. Feinberg was selected to be the third-party administrator of the GCCF.

The GCCF accepts and where possible resolves claims of Individuals and Businesses for costs and damages incurred as a result of the Spill. In fulfilling these obligations, the GCCF and Mr. Feinberg as Claims Administrator are acting for and on behalf of BP in order to fulfill BP's statutory obligations as a responsible party under OPA; however, the GCCF and Mr. Feinberg exercise their own judgment with respect to the evaluation and payment of claims.

No one at the GCCF can give you personal legal advice or advise you regarding settlement of any claims, including whether to file a claim with the GCCF or the worth of any claim you may have. No one at the GCCF can represent you. You have the right to consult with an attorney of your choosing prior to accepting any settlement from the GCCF or signing a release of legal rights. If you wish to consult a lawyer you should do so. If you would like to consult with an attorney and you cannot afford one, free legal help is available for the GCCF Interim or Final Claims Process, through a network of nonprofit civil legal service organizations in Alabama, Florida, Louisiana, Mississippi and Texas. The free legal services program is being administered by the Mississippi Center for Justice, a nonprofit, public interest law firm, whose funding for this purpose will be provided by BP. See Section Two below for more information. The free legal services program will not be providing assistance for litigation or claims filed with the Coast Guard National Pollution Funds Center.

## 2. How is the GCCF different from the previous BP claims facility?

The GCCF and the Claims Administrator have been given the responsibility to make their own judgments regarding the evaluation and payment of claims, and in particular what, if anything, would be a fair and reasonable payment or offer of payment to a claimant. BP no longer makes those judgments.

## 3. I already submitted a claim to BP. What should I do?

If you have previously filed a claim with BP, all of the information you included in your claim to BP as well as the documents you submitted have been transferred to the GCCF. Although the GCCF now has the documents and information you submitted to BP, you must complete a GCCF Claim Form to apply for any payments from the

GCCF if you have not done so before now. You will be assigned a new GCCF Claimant Identification Number.

## 4. Can I still file a claim with BP?

No. As of August 23, 2010, all claims must be filed with the GCCF. The GCCF has replaced the BP claims process. Individuals and Businesses should no longer present claims to BP.

## 5. English is not my first language. Are there translation services available?

You can call the Toll Free Number 1-800-916-4893 and ask for assistance in another language. In addition, translators in the following languages are available at these Claims Site Offices:

1. **For Spanish:**

   Biloxi, MS
   Clearwater, FL
   Cut Off, LA
   Grand Isle, LA
   Gretna/Belle Chasse, LA
   Gulf Shores, AL
   Houma, LA
   Lafitte, LA
   Mobile, AL
   New Orleans East, LA
   Panama City Beach, FL
2. **For Vietnamese:**

   Biloxi, MS
   Cut Off, LA
   Gretna/Belle Chasse, LA
   Houma, LA
   Lafitte, LA
   Mobile, AL
   New Orleans East, LA
3. **For Khmer:**

   Gretna, LA

## 6. Who are the staff members who work in the Claims Site Offices?

Staff members at the Claims Site Offices include professionals and other community representatives. All staff members at the Claims Site Offices are subcontractors of the GCCF. BP provides the funding for the expenses of the administration of the GCCF, including compensation for GCCF subcontractors.

**7. What should I do if I have information about a potentially fraudulent claim?**

You should call the Department of Justice National Center for Disaster Fraud hotline number: 877-623-3423.

**8. What should I do if I move?**

If you move, you should contact us as soon as possible to ensure that you receive all communication and/or payments to which you are entitled. You must complete the GCCF Change of Address Request form, which is available for download by clicking here. As set forth in the Change of Address Request form, you must also provide proof of your change of address in order for the GCCF to process your request. The quickest way to reach us is by emailing your change of address request to info@gccf-claims.com. You may also fax your request to 1-866-682-1772, or mail your request to:

GULF COAST CLAIMS FACILITY
P.O. BOX 9658
Dublin, OH 43017-4958

(**back to top**)

**SECTION 2 - ATTORNEY REPRESENTATION**

**9. Do I need to hire a lawyer to help me with my claim?**

You do not have to hire a lawyer to submit a claim to the GCCF. You have the right to be represented by a lawyer of your choosing and to consult with that lawyer before accepting any settlement or signing a release of legal rights. If you are represented by a lawyer, the GCCF will communicate with your lawyer rather than directly with you.

The GCCF also provides access to free legal assistance that is independent of the claims process.

**10. I would like to have a lawyer represent me in the GCCF claims process, but I cannot afford one. Are there any free legal services available?**

Yes. Free legal help is available for the GCCF Interim or Final Claims Process, through a network of nonprofit civil legal service organizations in Alabama, Florida, Louisiana, Mississippi and Texas. The free legal services program is being administered by the Mississippi Center for Justice, a nonprofit, public interest law firm. The free legal services program will not be providing assistance for litigation or claims filed with the Coast Guard National Pollution Funds Center.

If you would like to request free legal assistance, you should contact the legal services organizations in your state.

The contact information for each state is:

**Alabama**     866-456-4995, press 6
*Services provided by Legal Services Alabama*

**Florida**     855-299-1337
*Services provided by Legal Services of North Florida and North Florida Center for Equal Justice*

**Louisiana**    504-355-0970 if you are in Orleans or Jefferson Parish. Outside those areas, call 800-310-7029. Or, e-mail your name, telephone number and a brief description of the help you are seeking to:oil.spill.info@laciviljustice.org.
*Services provided by Louisiana Civil Justice Center, Louisiana Justice Institute, Moving Forward Gulf Coast, The Pro Bono Project of New Orleans, and Southeast Louisiana Legal Services*

**Mississippi**    888-725-5423
*Services provided by Mississippi Center for Justice, Mississippi Center for Legal Services and Mississippi Volunteer Lawyers Project*

**Texas**     800-733-8394
*Services provided by Lone Star Legal Aid*

You can also request free legal help by sending an email to LegalAssistance@GCCF-Claims.com or calling the toll-free number 1-800-916-4893 and asking for the Legal Services Escalation Team.

**11. Who is the Mississippi Center for Justice?**

The Mississippi Center for Justice is a nonprofit, public interest law firm committed to advancing racial and economic justice. Supported and staffed by attorneys, community leaders and volunteers, the Center develops and pursues strategies to combat discrimination and poverty statewide. To provide the claims assistance, the Center contracts with eleven other nonprofit legal services organizations in the five Gulf States.

**12. How are the free legal services from the Mississippi Center for Justice being paid?**

The funding for this program comes from BP. However, the Mississippi Center for Justice and the nonprofit civil legal service organizations providing the free legal help have no other connection to BP or GCCF. The funding does not affect the advice that a lawyer at any of the legal services organizations gives a claimant. Neither GCCF nor BP will interfere with the independent, professional judgment of any of the legal services attorneys.

**13. I am represented by a lawyer and I want to file a claim. What should I do?**

If you are currently represented by a lawyer in connection with any claim you believe you may have against BP, you should not submit a claim until you have conferred with your lawyer about the decision to submit it and about your answers to its questions. If you then choose to submit a claim, you should have your lawyer submit the claim for you. The claim form requests contact information for your lawyer. After receipt of such contact information we will respond directly to him or her.

(**back to top**)

**SECTION 3 - CLOSING THE EMERGENCY ADVANCE PAYMENT PROGRAM**

**14. Can I still apply for an Emergency Advance Payment?**

No. From August 23, 2010, through November 23, 2010, Claimants could submit claims to the GCCF for Emergency Advance Payments to receive emergency relief for damages caused by the Spill. The deadline to file a claim for an Emergency Advance Payment passed on November 23, 2010. It is too late now to apply for an Emergency Advance Payment. Claimants who suffered losses or injuries as a result of the Spill can now apply for a Final Payment or an Interim Payment.

**15. What if I applied for an Emergency Advance Payment and have not heard about the outcome of that claim?**

If you have not heard about the final outcome on your EAP claim, you will hear soon. The GCCF is finishing the evaluation of all the EAP claims soon.

**16. What if I applied for an Emergency Advance Payment after the November 23, 2010 deadline?**

Such a claim is late and will not be processed. If you want to seek any benefits now from the GCCF, you must apply for a Full Review Final Payment or an Interim Payment.

**17. What types of payments are available now?**

A Claimant who has been paid an Emergency Advance Payment has the option to receive a Quick Payment from the GCCF of $5,000 for Individual Claimants and $25,000 for Business Claimants without having to submit any more documents or undergoing any more claims review.

Any Claimant who suffered losses or injuries as a result of the Spill can now apply for:

1. A Full Review Final Payment Claim, to be paid, if eligible, for all past losses caused by the Spill and all future losses caused by the Spill.
2. An Interim Payment Claim, for all past losses caused by the Spill.

(**back to top**)

**SECTION 4 - INFORMATION ON QUICK PAYMENT FINAL CLAIMS**

**18. What is a Quick Payment Final Claim?**

A Quick Payment Final Claim is the opportunity for a Claimant who has been paid an Emergency Advance Payment by the GCCF to sign a Release and within 14 days be paid $5,000 if an Individual Claimant or $25,000 if a Business Claimant without having to submit any more documents or go through any more claims review.

In addition, a Claimant found eligible for an Interim Payment, even though never paid an Emergency Advance Payment, will also have the opportunity to accept a Quick Payment.

**19. Who is eligible for a Quick Payment?**

A Claimant who has been paid an Emergency Advance Payment from the GCCF for any claim type (other than loss of subsistence), can receive a Quick Payment. In addition, a Claimant found eligible for an Interim Payment for any claim type (other than loss of subsistence), will also have the opportunity to accept a Quick Payment.

**20. What if my Emergency Advance Payment claim has not been finished?**

The GCCF will finish the review of all Emergency Advance Payment claims and will notify all Claimants of the outcome on their claims. If you are found eligible and get paid an Emergency Advance Payment, you have the opportunity to submit a Quick Payment Claim.

**21. What if I was paid by BP but have not been paid by the GCCF?**

You are not eligible for a Quick Payment. You can receive a Quick Payment only if you were paid an Emergency Advance Payment by the GCCF or an Interim Payment by the GCCF.

**22. How do I apply for a Quick Payment?**

You have to fill out, sign and send back to the GCCF a Quick Payment Claim Form. You must also sign the Release and Covenant Not to Sue. You should not elect the Quick Payment Final Claim process unless you are willing to accept the fixed payment of $5,000 for individuals and $25,000 for businesses and to sign a full release of liability.

### 23. How do I get a Quick Payment Claim Form?

If you have been paid an Emergency Advance Payment, the GCCF will mail you a packet containing the Quick Payment Claim Form and the Release and Covenant Not to Sue that must be signed to receive a Quick Payment. The GCCF will pre-fill the Quick Payment Claim Form with your name and address. If you have been paid an Emergency Advance Payment, you may download the Quick Payment Claim Form and the Release and Covenant Not to Sue from the GCCF website or you may also go to a Claims Site Office and have the Quick Payment Claim Form and the Release and Covenant Not to Sue printed for you.

If your address has changed since your Emergency Advance Payment was paid, be sure that the GCCF has your correct current mailing address.

If you do not receive that packet from the GCCF in the mail, you may call the GCCF Toll Free Number 1-800-916-4893 or email us at info@gccf-claims.com to ask that the packet be sent to you.

### 24. Do I have to submit any more documents on my damages to be paid a Quick Payment?

No. All you have to do is send in a signed Quick Payment Claim Form and Release and Covenant Not to Sue. You do not have to submit any more documents on your losses or damages.

### 25. Do I have to sign a Release to be paid a Quick Payment?

Yes. The Quick Payment Final Claim option requires you to release and waive any claims that you have or may have in the future against BP and all other potentially responsible parties with regard to the Spill or to submit any claim for payment to the National Pollution Funds Center, the Coast Guard office responsible for evaluating and approving Oil Pollution Act claims, or in court. The Quick Payment Claim Form contains important information to read before signing the Release and Covenant Not to Sue. You have the right to consult with an attorney of your choosing before accepting any settlement or signing a release of legal rights.

### 26. Who has to sign the Quick Payment Claim Form and the Release?

Individual Claimants must personally sign the Quick Payment Claim Form and the Release and Covenant Not to Sue. If the Individual Claimant is married, the Claimant's spouse also must sign the Release and Covenant Not to Sue. If an Individual Claimant is deceased, is a legal minor under the law of the state or

jurisdiction where the Claimant lives, or is not legally competent to sign, the Claimant's authorized legal representative must sign. That representative must also submit a copy of the document issued by a court or other official that appointed the representative to act on behalf of the Claimant, or must sign an Affidavit required by the GCCF to show authority to act. See Section VII of the Gulf Coast Claims Facility Required Documents for what is required to prove the authority to act.

The authorized officer or other representative of a Business Claimant must personally sign the Quick Payment Claim Form and the Release and Covenant Not to Sue. If the business is a sole proprietorship owned by a married individual, or if the business is jointly owned by a married couple, the individual's spouse also must sign the Quick Payment Claim Form and the Release and Covenant Not to Sue.

**27. I want to file my own claim for my own damages. In order for my spouse to receive a payment for his or her Quick Payment Final Claim, I have to sign the Release. Am I releasing my right to file my own separate claim for my own damages?**

No. Your signature on the Release applies to your spouse's claim (or to the claim of a business owned by your spouse or a business jointly owned by you and your spouse), not to a separate claim you might have.

**28. Can I change anything in the Release?**

No. If you mark through or strike out anything in the Release and Covenant Not to Sue, or you add any language to it, the GCCF cannot accept it and cannot pay you a Quick Payment.

**29. How long will it take for me to get a Quick Payment?**

The GCCF will send you your payment within 14 days after the GCCF receives your properly completed Quick Payment Claim Form and properly signed Release and Covenant Not to Sue.

**30. How long do I have to apply for a Quick Payment?**

If you have received an Emergency Advance Payment or an Interim Payment, you may submit a Quick Payment Final Claim at any time before the close of the GCCF Program on August 22, 2013.

**31. Will any deductions be taken out of my Quick Payment before it is sent to me?**

Your $5,000 Individual Quick Payment or $25,000 Business Quick Payment will not be reduced for any prior payments to you by BP or by the GCCF, or by any amounts you have received from unemployment compensation or any insurance or other program. The only deductions that will be made from a Quick Payment will be for any legally authorized liens, garnishments or other attachments against you that the GCCF has received.

## 32. Where will my Quick Payment be sent?

The GCCF will send Quick Payments by a check mailed to you. You will indicate in the Quick Payment Claim Form where your check is to be sent.

(**back to top**)

## SECTION 5 - INFORMATION ON FULL REVIEW FINAL PAYMENT CLAIMS

## 33. If I am not eligible for a Quick Payment or decide not to choose the Quick Payment option, what kind of payments can I seek now from the GCCF?

Any Claimant who suffered losses or injuries as a result of the Spill can now apply to the GCCF for:

1. A Full Review Final Payment Claim, to be paid, if eligible, for all past losses caused by the Spill and all future losses caused by the Spill.
2. An Interim Payment Claim, to be paid once a quarter, if eligible, for all past losses caused by the Spill. A Claimant found eligible for an Interim Payment will also have the opportunity to accept a Quick Payment or a Final Payment instead.

## 34. What is a Full Review Final Payment?

If you do not choose or are not eligible for the Quick Payment Final Claim option, you may elect to submit a Full Review Final Payment Claim to receive a lump sum single payment for all documented losses and damages, both past and future, caused to you by the Spill.

**35. Who can apply for a Full Review Final Payment?**

Any Claimant who suffered losses or injuries as a result of the Spill can now apply for a Full Review Final Payment Claim, to be paid, if eligible, for all past losses caused by the Spill and all future losses caused by the Spill. You can still submit a Full Review Final Payment Claim even if: (a) you received payments from BP or from the GCCF on an Emergency Advance Payment Claim; (b) you submitted an Emergency Advance Payment Claim that was denied (other than as an excluded Government, Oil Rig Moratorium claim or a claim for property damage that occurred during the Vessels of Opportunity Program); or (c) you have not previously asserted a claim to BP or to the GCCF.

**36. What types of claims can I submit on a Full Review Final Payment Claim?**

If you suffered damages or injuries caused by the Spill and are eligible to apply for a Full Review Final Payment, you can submit a Full Review Final Payment Claim for the same types of claims for which Claimants could seek Emergency Advance Payments: Removal and Clean Up Costs, Damage to Real or Personal Property, Lost Earnings or Profits, Loss of Subsistence Use of Natural Resources (Individuals only), or Physical Injury or Death (Individuals only).

**37. How do I apply for a Full Review Final Payment?**

You have to fill out, sign and send back to the GCCF a Full Review Final Payment Claim Form, along with documents to support your claim if you have not previously submitted those documents. If you previously submitted an Emergency Advance Payment Claim to the GCCF, the GCCF will mail you a packet containing the Full Review Final Payment Claim Form. If you do not get that packet, see Section 8 – How to File a Full Review Final Payment Claim or an Interim Payment Claim for the steps on how to get the Full Review Final Payment Claim Form and how to submit it to the GCCF.

**38. I have already submitted a Final Claim Form. Do I have to submit a new one?**

No. You do not need to submit a new Full Review Final Payment Claim Form, though you can do so if you would like to change anything about your claim. You should review the Gulf Coast Claims Facility Document Requirements and you should submit any and all required documents that you have not previously submitted. You do not need to resubmit documentation or information that you have already submitted.

**39. What kind of losses will be paid on a Full Review Final Payment Claim?**

A Full Review Final Payment will include all past losses or injuries caused to you by the Spill and any future losses or injuries you may incur, if any, as a result of the Spill. The Full Review Final Payment Claim evaluation and determination will include a review of the calculation of any previous Emergency Advance Payments. If appropriate, the GCCF will adjust the calculation and include any additional compensation due as part of the Final Payment Offer.

**40. Do I have to submit documents to be paid a Full Review Final Payment?**

Yes. To be considered for a Full Review Final Payment, you must submit documents that prove the losses or injuries you claim you suffered as a result of the Spill. A Full Review Final Payment Claim requires complete substantiation and documentation of all damages sustained in the past. You may choose to provide documents that support amounts claimed as future damages as a result of the Spill, including documents demonstrating the manner in which such future damages have been calculated, the period of time for which they are claimed, and any expert reports or other analyses on which the calculation is based. The GCCF will perform a complete analysis of all existing and newly submitted documentation to compute, determine and pay all past and future damages. The GCCF will rely upon any documentation you submit and analyses and documentation provided to the GCCF by experts retained by the GCCF to determine the damages, if any. See the Gulf Coast Claims Facility Document Requirements list for details on the documents required for each Claim Type you can assert on a Full Review Final Payment Claim. If you previously submitted documents to the GCCF, you do not have to send them in again, but you must make sure that you have submitted everything required by the Gulf Coast Claims Facility Document Requirements list and you must submit any new documents for any time period not covered by what you previously submitted.

**41. What if my claim is missing any documents needed to prove my Full Review Final Payment Claim?**

The GCCF will perform a complete analysis of all existing and newly submitted documentation to compute, determine and pay all past and future damages. If the GCCF does not have all the documents from you needed to be able to evaluate your claim, the GCCF will send you a deficiency notice telling you what is missing and giving you a period of time to submit those documents.

**42. How will future damages be determined on a Full Review Final Payment Claim?**

Claimants who submit a Full Review Final Payment Claim may submit documents that support amounts claimed as future damages as a result of the Spill, including documents demonstrating the manner in which such future damages have been calculated, the period of time for which they are claimed, and any expert reports or other analyses on which the calculation is based. The GCCF will rely upon any documentation you submit and analyses and documentation provided to the GCCF by experts retained by the GCCF to determine the damages, if any, payable to you as future damages for losses or injuries caused by the Spill.

**43. The Full Review Final Payment Claim information says that the claim includes any claim for future damages. How far into the future can I claim damages?**

Your Full Review Final Payment Claim includes ALL of your future damages, if any. If you have any documentation or information regarding any future damages you may incur due to the Spill you should include all of this documentation and information. In order to receive a payment of your Full Review Final Payment Claim you will have to sign a Release that releases all of your past and future damages in exchange for a liquidated amount.

**44. Will any deductions be taken out of my Full Review Final Payment?**

Yes. The following amounts will be deducted from your Full Review Final Payment.

1. Any prior payments to you by BP, by the Coast Guard, or by the GCCF for losses due to the Spill.
2. If you make a claim for Lost Individual Earnings, any amounts you have received from unemployment compensation, as severance pay or any other employment benefit since the Spill.
3. On any Lost Income claim from an Individual Claimant or a Business Claimant, amounts you have received since the Spill from any insurance or other program as replacement income.
4. Payments from insurance for the losses on injuries for which you seek benefits on Removal and Clean Up Costs, Damage to Real or Personal Property, Loss of Subsistence Use of Natural Resources, or Physical Injury or Death.
5. Amounts needed to pay any liens, garnishments or other attachments against you that the GCCF has received.

However, amounts you have received from charities will not be deducted from your Full Review Final Payment.

**45. If I qualify, how will I get the offer on my Full Review Final Payment Claim?**

Your Final Payment Offer will be an offer of a lump sum amount for all past and future damages based upon specific documentation received and expert analysis of future damages. You will have an opportunity to discuss your Final Payment Offer with a member of the GCCF Senior Evaluation Team and/or a member of the Accounting Team. This Final Payment Offer will be valid for 30 days. If you have not accepted this Final Payment Offer during the 30-day period, the GCCF will re-evaluate any later submission or request for a Final Payment Offer you may make to reflect additional information and less uncertainty, regarding your damages.

## 46. Do I have to sign a Release to be paid a Full Review Final Payment?

Yes. To be paid on a Full Review Final Payment Claim, you will have to release and waive any claims that you have or may have in the future against BP and all other potentially responsible parties with regard to the Spill or to submit any claim for payment to the National Pollution Funds Center, the Coast Guard office responsible for evaluating and approving Oil Pollution Act claims, or in court. The Full Review Final Payment Claim Form contains a sample of that Release and Covenant Not to Sue. If you qualify for a Full Review Final Payment, the GCCF will send you a Final Payment Offer based on the GCCF's review and evaluation of the Full Review Final Payment Claim, along with a Release and Covenant Not to Sue for you to sign if you accept the Final Payment Offer. If you accept the Final Payment Offer, you must sign the Release and Covenant Not to Sue and return it to the GCCF. A separate Release will be required for Claimants who have received a Final Payment Offer for claims for physical injury or death. You have the right to consult with an attorney of your choosing before accepting any settlement or signing a release of legal rights.

## 47. Who has to sign the Release on a Full Review Final Payment Claim?

Individual Claimants must personally sign the Release and Covenant Not to Sue. If the Individual Claimant is married, the Claimant's spouse also must sign the Release and Covenant Not to Sue. If an Individual Claimant is deceased, is a legal minor under the law of the state or jurisdiction where the Claimant lives, or is not legally competent to sign, the Claimant's authorized legal representative must sign. That representative must also submit a copy of the document issued by a court or other official that appointed the representative to act on behalf of the Claimant. If such documents have not been issued, the representative must sign an Affidavit required by the GCCF to show authority to act. See Section VII of the Gulf Coast Claims Facility Required Documents for what is required to prove the authority to act.

The authorized officer or other representative of a Business Claimant must personally sign the Release and Covenant Not to Sue. If the business is a sole proprietorship

owned by a married individual, or if the business is jointly owned by a married couple, the individual's spouse also must sign the Release and Covenant Not to Sue.

**48. I want to file my own claim based on my own damages. In order for my spouse to receive payment for his/her Full Review Final Claim I have to sign the Release. Am I releasing my right to file my own separate claim based on my own damages?**

No. Your signature on the Release applies to your spouse's claim (or to the claim of a business owned by your spouse or a business jointly owned by you and your spouse), not to a separate claim you might have.

**49. Can I change anything in the Release?**

No. If you mark through or strike out anything in the Release and Covenant Not to Sue, or you add any language to it, the GCCF cannot accept it and cannot pay you a Final Payment.

**50. How long will it take for me to get a Full Review Final Payment?**

The GCCF will fully evaluate and determine your Full Review Final Payment Claim within 90 days after receipt of your substantiated claim. You will be notified of the amount of the Final Payment Offer or of any missing documents that are necessary to be able to evaluate the claim within this 90-day period. Claimants who previously submitted a Final Claim will have their claim reviewed on a priority basis.

**51. How long do I have to apply for a Full Review Final Payment?**

You may submit a Full Review Final Payment Claim at any time prior to the close of the GCCF Program on August 22, 2013 (even if you have previously submitted and received an Emergency Advance Payment or an Interim Payment). You may accept only one Final Payment.

**52. Where will my Full Review Final Payment be sent?**

The GCCF will send Final Payments by a check mailed to you. You will indicate in the Full Review Final Payment Claim Form where your check is to be sent.

**53. What can I do if I disagree with the GCCF's decision on my claim?**

For all claims other than those for physical injury, if you disagree with the GCCF's decision on your claim, or if the GCCF has not acted on your claim within 90 days of

the date the claim was presented under the OPA to BP or to the GCCF, you may submit the claim to the National Pollution Funds Center ("NPFC"), the Coast Guard office responsible for evaluating and approving OPA claims or as an alternative you may file a claim in court, including in the multidistrict litigation pending before the United States District Court for the Eastern District of Louisiana, titled, In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, MDL No. 2179. The multidistrict litigation is a consolidated grouping of federal law suits arising out of the Spill. If you are represented by an attorney, confer with your attorney about your options. General information on the procedure for filing a claim with the NPFC may be obtained from the Director of the National Pollution Funds Center, NPFC MS 7100, U.S. Coast Guard, 4200 Wilson Blvd., Suite 1000, Arlington, VA 20598-7100, (800) 280-7118, or from the NPFC website at www.uscg.mil/npfc/claims. Information regarding the multidistrict litigation may be obtained from the court's website at www.laed.uscourts.gov. A claim for physical injury is not a claim under OPA and therefore cannot be submitted to the NPFC.

(**back to top**)

## SECTION 6 – INFORMATION ON INTERIM PAYMENT CLAIMS

### 54. What is an Interim Payment Claim?

An Interim Payment Claim is a claim only for documented past damages caused by the Spill. An Interim Payment is not an Emergency Advance Payment.

### 55. How do I apply for an Interim Payment?

You have to fill out, sign and send back to the GCCF an Interim Payment Claim Form, along with documents to support your claim if you have not previously submitted those documents. If you previously submitted an Emergency Advance Payment Claim to the GCCF, the GCCF will mail you a packet containing the Interim Payment Claim Form. If you do not get that packet, see Section 8 – How to File a Full Review Final Payment Claim or an Interim Payment Claim for the steps on how to get the Full Review Final Payment Claim Form and how to submit it to the GCCF.

**56. I have already submitted a Final Claim. Can I now submit an Interim Claim?**

If you have already submitted to the GCCF a Claim Form in which you asserted a Final Payment Claim and now would like to switch and seek an Interim Payment instead, you must submit an Interim Payment Claim Form to the GCCF and check the appropriate box on the first page of the Claim Form stating that you previously filed a Final Claim Form and now wish to file an Interim Payment Claim. You cannot seek or receive an Interim Payment unless you have submitted an Interim Payment Claim Form to the GCCF.

**57. What kind of claims can I make on an Interim Payment Claim?**

If you suffered damages or injuries caused by the Spill and are eligible to apply for a Full Review Final Payment, you can submit an Interim Payment Claim for the same types of claims for which Claimants could seek Emergency Advance Payments: Removal and Clean Up Costs, Damage to Real or Personal Property, Lost Earnings or Profits, Loss of Subsistence Use of Natural Resources (Individuals only), or Physical Injury or Death (Individuals only).

**58. What kind of losses will be paid on an Interim Payment Claim?**

An Interim Payment will cover only past losses caused by the Spill. An Interim Payment will not compensate you for future losses or damages. For future losses or damages to be evaluated and paid, you must submit a Full Review Final Payment Claim. If you have submitted an Interim Payment Claim, you may submit a subsequent Full Review Final Payment Claim. If appropriate, the GCCF will adjust the calculation of a previously paid Emergency Advance Payment and include any additional compensation as part of the Interim Payment.

**59. How often can I apply for an Interim Payment?**

You may submit an Interim Payment Claim only once each quarter of each calendar year throughout the duration of the GCCF Claims Program which concludes on August 22, 2013, or until the submission of either a Quick Payment Final Claim or a Full Review Final Payment Claim. The first quarter begins now and concludes on March 31, 2011. Subsequent quarters will be April 1 through June 30, July 1 through September 30, and October 1 through December 31 of each year.

**60. I have a financial situation that does not allow me to wait until the next quarter to file my next Interim Claim. What can I do?**

If you have a financial situation that requires immediate action and you cannot wait until the next quarter to file your next Interim Claim, you should file your next Interim Claim with the GCCF and explain your financial situation.

**61. What period of time is covered by an Interim Payment Claim?**

Evaluation of your Interim Payment Claim consists of a review of your losses measured over the period that begins with the Spill and concludes at the end of the month for which you have provided the most recent actual financial data ("Loss Measurement Period").

**62. Do I have to submit documents to be paid an Interim Payment?**

Yes. You must provide supporting documentation to demonstrate all past losses and damages sustained as a result of the Spill. The Gulf Coast Claims Facility Document Requirements accompanying the Claim Form identify the supporting documents required for each type of claim. If you previously submitted a claim with supporting documentation, you do not need to resubmit that documentation. However, you must supplement and update your documentation already on file with the GCCF to include the applicable Loss Measurement Period. If you have not previously submitted a claim, you must provide complete substantiation and documentation to support your claim for losses and damages. If you qualify, your Interim Payment will include payments only for the losses that the documents you have submitted prove. For example, if you submit a claim for past Lost Earnings or Profits and do not submit the records to show income during any week or period since the Spill, you will not be paid any damages for that period.

**63. What if my claim is missing any documents needed to prove my Interim Payment Claim?**

If you fail to submit the required documents to prove your losses or injuries, you will not be paid for them in an Interim Payment. *The GCCF will not send any deficiency notices to you to notify you of any documents missing from your file.* Instead, your losses will be determined solely on the basis of the documents you have submitted.

**64. Will any deductions be taken out of my Interim Payment?**

Yes. The same deductions that apply to a Full Review Final Payment Claim apply to an Interim Payment Claim:

1. Any prior payments to you by BP, the GCCF, or the Coast Guard will be deducted from your Interim Payment.

2. If you make a claim for Lost Individual Earnings, any amounts you have received from unemployment compensation, as severance pay or any other employment benefit since the Spill, will be counted as income to you since the Spill and will reduce any award for past earnings losses.

3. On any Lost Income claim from an Individual Claimant or a Business Claimant, amounts you have received since the Spill from any insurance or other program as replacement income will be deducted from your Interim Payment.

4. Payments from insurance for the losses on injuries for which you seek benefits on Removal and Clean Up Costs, Damage to Real or Personal Property, Loss of Subsistence Use of Natural Resources, or Physical Injury or Death will be deducted from Interim Payment.

5. Amounts to pay any legally authorized liens, garnishments or other attachments against you that the GCCF has received will be deducted from your Interim Payment.

However, amounts you have received from charities will not be deducted from your Interim Payment.

## 65. Do I have to sign a Release to be paid an Interim Payment?

No. To receive an Interim Payment, you will not be required to execute a Release or waive any rights to assert additional claims, to submit an individual legal action, or to participate in other legal actions associated with the Spill.

## 66. How long will it take for me to get an Interim Payment?

Within 90 days of receipt of a substantiated claim for an Interim Payment, the GCCF will evaluate and review the submitted documentation. The GCCF will mail you notice of your eligibility and calculated amount for payment of your Interim Payment Claim.

## 67. If I qualify for an Interim Payment, can I decide to be paid a Quick Payment?

Yes. You can accept a Quick Payment any time after you have been found eligible for or have been paid an Interim Payment.

## 68. If I am paid an Interim Payment, can I still submit a Full Review Final Payment Claim?

Yes. You can submit a Full Review Final Payment Claim at any time until the Program closes.

### 69. If I qualify for an Interim Payment, will I receive a Final Payment Offer?

You will receive notice of your eligibility and calculated amount for payment of your Interim Payment Claim. At the same time, if the documents you have submitted permit the GCCF to do so, the GCCF also will provide you with the GCCF's current valuation and Final Payment Offer for your claim; you will have the option to continue with the Interim Payment Claim process or to accept the GCCF's Final Payment Offer.

### 70. If I receive both an Interim Payment Offer and a Final Payment Offer and decide to accept the Interim Payment, is there a chance that my Final Payment Offer could go down?

Yes. If you make a subsequent claim for a Final Payment, the GCCF's valuation and Final Payment Offer for your claim may change at a later date to reflect additional information and less uncertainty regarding damages.

### 71. How long do I have to apply for an Interim Payment?

You may submit an Interim Payment Claim at any time prior to the close of the GCCF Program on August 22, 2013.

### 72. Where will my Interim Payment be sent?

The GCCF will send Interim Payments by a check mailed to you. You will indicate in the Interim Payment Claim Form where your check is to be sent.

### 73. Will the awards be subject to Federal estate or Federal income tax?

The GCCF will report payments made annually to federal and state taxing authorities, using a Form 1099 or state form equivalent. The GCCF will send you a copy of that form, but cannot give you tax advice regarding any payment issued to you. For additional information from the Internal Revenue Service concerning reporting payments from the GCCF, click here. However, you should consult your own tax advisor to determine the impact of any payment you receive from the GCCF on your individual tax situation.

(**back to top**)

## SECTION 7 - WHO MAY FILE A CLAIM

### 74. Who is an Eligible Claimant?

Individuals and Businesses that have incurred damages as a result of the Spill may submit a claim to the GCCF for Removal and Clean Up Costs, Damage to Real or Personal Property, Lost Earnings or Profits, Loss of Subsistence Use of Natural Resources, or Physical Injury or Death.

### 75. Do I have to live in the Gulf region to make a claim?

No. You do not have to live in the Gulf region to file a claim for costs and damages incurred as a result of the oil discharges from the Spill. However, the GCCF will only pay for harm or damage that is proximately caused by the Spill.

### 76. Do I have to be a United States citizen or have proof of legal residency to be eligible to receive payment from the GCCF?

No, you do not need to be a United States citizen or submit proof of legal residency to be eligible to receive a payment under the GCCF eligibility criteria.

(**back to top**)

## SECTION 8 - HOW TO FILE A FULL REVIEW FINAL PAYMENT CLAIM OR AN INTERIM PAYMENT CLAIM

### 77. If I did not receive one in the mail from the GCCF, how do I get the Claim Form I need?

You can obtain and submit a Claim Form and supporting documentation in any one of the following ways:

1. ***Through the Website:*** You can complete a Claim Form on this website by clicking on the appropriate online filing tab on the left side of the Home Page. The online instructions will tell you how to complete the correct Claim Form and how to submit the form and the supporting documents online. You can also download a Claim Form or request that a Claim Form be mailed to you by clicking on the tab, "File a Paper Interim or Full Review Final Claim Form."

2. ***By Visiting a GCCF Claims Site Office:*** You can complete a Claim Form and submit documents in person at one of the GCCF Claims Site Offices, where a Claims Evaluator will help you fill out the form. You may obtain a list of the GCCF Claims Site Offices near you by clicking here.

3. ***By Telephone:*** You can get a Claim Form by calling the GCCF toll free number, 1-800-916-4893. TTY: 1-866-682-1758. Staff members are available to take your call at this number from 9:00 a.m. to 6:00 p.m. (Eastern Time), Monday through Friday. You will be asked for your name and address. The GCCF will mail you a Claim Form for you to fill out and sign.

## 78. Are Claim Forms available in other languages?

Yes. Claim Forms are available in Spanish, Vietnamese and Khmer. To access these Claim Forms, visit: www.GulfCoastClaimsFacility.com. For additional assistance call the Toll Free Number 1-800-916-4893.

## 79. Where do I submit the Claim Form when complete?

You can submit your Claim Form and supporting documents in one of these ways:

1. ***By Regular Mail:***

   Gulf Coast Claims Facility
   Kenneth R. Feinberg, Administrator
   P.O. Box 9658
   Dublin, OH 43017-4958

2. ***By Overnight, Certified or Registered Mail:***

   Gulf Coast Claims Facility
   Kenneth R. Feinberg, Administrator
   5151 Blazer Pkwy.
   Suite A
   Dublin, OH 43017

3. ***By Fax:*** You can fax your completed Claim Form and documents to the GCCF at 1-866-682-1772. However, a signed Release cannot be submitted by Fax. We must receive an original signed copy of a Release.

4. ***By Email:*** You can scan your completed Claim Form and documents and email PDF files to the GCCF at info@gccf-claims.com. However, a signed Release cannot be submitted by email. We must receive an original signed copy of a Release.

## 80. Does it cost anything to file a claim?

No. There is no fee for filing a claim with the GCCF.

## 81. Can I submit photographs or videos in support of my claim?

Yes. You can submit photographs and videos in support of your claim.

## 82. What if I need more space to write on the Claim Form?

If you need additional space for one or more of the sections in the Claim Form, photocopy the section before completing it and make as many copies as you need. You must attach these copies to your Claim Form. Include your name, address and Claimant Identification Number on all pages you submit. If you do not have a Claimant Identification Number, include your Social Security Number or Employer Identification Number on all pages you submit.

## 83. How will I know that the GCCF has received my claim?

You will receive a confirmation from the GCCF that will confirm your claim submission and tell you the unique 7-digit Claimant Identification Number that is assigned to your claim. The GCCF will enter for processing all submitted Claim Forms, regardless of the method of submission, into the GCCF central database.

## 84. How do I submit supplemental information for a claim I already filed?

Make sure you provide your Claimant Identification Number along with any supplemental information you submit. You may submit supplemental information in the following ways:

1. ***By Visiting a GCCF Claims Site Office:*** You can submit supplemental information to a Claims Evaluator at any of the GCCF Claims Site Offices. You may obtain a list of the GCCF Claims Site Offices near you by clicking here.

2. ***By Regular Mail:*** You may submit supplemental information by U.S. Mail to the following address:

   Gulf Coast Claims Facility
   Kenneth R. Feinberg, Administrator
   P.O. Box 9658
   Dublin, OH 43017-4958

3. ***By Overnight, Certified or Registered Mail:*** You may submit supplemental information by Overnight, Certified or Registered Mail to the following address:

   Gulf Coast Claims Facility
   Kenneth R. Feinberg, Administrator
   5151 Blazer Pkwy.
   Suite A
   Dublin, OH 43017

4. ***By Fax:*** You may fax supplemental information to 1-866-682-1772.

5. ***By Email:*** You may submit supplemental information in a PDF file to the GCCF at info@gccf-claims.com.

## 85. Can someone else talk to the GCCF about my claim?

Yes, as follows:

1. **If you are represented by a lawyer.** If you are represented by a lawyer, the GCCF will communicate with your lawyer rather than directly with you. You should identify your lawyer on the Claim Form.

2. **If you have an Authorized Legal Representative.** An Authorized Legal Representative is a person who is authorized to act for a deceased person who was affected by the Spill, or for a person affected by the Spill who is unable to act for himself or herself. The Authorized Legal Representative must submit to the GCCF a copy of the paperwork that shows the authority to act on behalf of a person affected by the Spill, such as a power of attorney, an order appointing a guardian, letters testamentary or letters of administration for an estate.

## 86. Can I recover from the GCCF the expenses I incurred for getting an accountant to estimate the damages for my claim?

Yes. You can recover the reasonable costs you incurred for having a professional assess your damages. This will include reasonable fees you paid to an accountant to estimate your damages.

The GCCF will also pay the reasonable costs incurred by the claimant in assessing the damages claimed on any claim receiving a damages payment. Please click here to view the GCCF Policy on Claim Preparation and Assessment Fees.

**87. Are the fees attorneys can charge limited by law or the GCCF?**

Attorneys' fees are not limited by the GCCF. If you want to know whether there any are restrictions on attorneys' fees in your jurisdiction, contact a local bar association.

**88. I received a call from an individual from Guidepost who explained that he was assisting GCCF in confirming information submitted in my Claim Form. Who is Guidepost and what is its role in the claims process?**

Guidepost has been retained by the GCCF to assist GCCF in auditing and monitoring claims. Guidepost may be calling claimants or other parties to ask for confirmation of information or documentation submitted by a claimant. Any information received by Guidepost is subject to the same privacy policy that applies to other information submitted to the GCCF.

(**back to top**)

## SECTION 9 – INFORMATION ON PAYMENTS

**89. What is the 6% Court ordered holdback?**

A consolidated grouping of all federal law suits arising out of the Spill is pending before the United States District Court for the Eastern District of Louisiana. This litigation is referred to as the "multidistrict litigation" and is titled, In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, MDL No. 2179. The Court on December 28, 2011 ordered the GCCF to withhold 6% of any and all amounts determined to be paid to eligible GCCF claimants and to deposit these amounts into a Court supervised Escrow Account. The purpose of the Escrow Account is to establish a fund from which common benefit litigation fees and expenses may be paid to the Plaintiff Steering Committee and other lead or liaison

plaintiff counsel if and as awarded by the Court, at an appropriate time, pursuant to procedures to be determined by future order of the Court.

## 90. Will my payment be subject to the 6% Court Ordered Holdback?

The Court ordered 6% hold-back will be applied to all interim, final and quick pay payments (and payments for claim preparation and assessment fees) made to all claimants who were not issued a payment determination letter from the GCCF dated on or before December 30, 2011.

The 6% hold-back will be applied to all Quick Pay Claims received that are postmarked after December 30, 2011.

The 6% hold-back does not apply to settlement payment offers (interim or final) made to claimants with a determination letter dated on or before December 30, 2011.

## 91. Can I receive payment at the Claims Site Office?

No. Payments will be issued through one central payment distribution center and will be sent to Claimants through the United States Postal Service's First Class mail.

## 92. Can I receive my payment through direct deposit?

No. You may not elect to receive your payment as a wire transfer directly to your bank account. The GCCF will no longer honor existing claimant requests for a wire in the Method of Payment section of the claim form, nor will the GCCF honor requests to reissue checks or convert check payments to a wire. Similarly, the GCCF will no longer honor requests to change wire instructions that were previously provided (for example, if the claimant has changed banks). Instead, the GCCF will send a check to the claimant, at the address we have on file, or in the case of reissued checks, the GCCF will stop payment on the check that was previously sent out and then mail out a new check.

There is only one circumstance under which wire payments will be issued. If a claimant is represented by an attorney, the GCCF *will honor* wire instructions provided on the claim form, a written request by the representing attorney to reissue a check as a wire payment, to convert the claimant's method of payment from a check to a wire, or to change wire instructions, *if* the wire is to be made to the escrow or IOLTA (trust) account of the representing attorney's law firm.

## 93. In what ways can I elect to receive payment?

You can elect to receive payment by check. If you are represented by an attorney, the attorney may elect to receive wire payments to his or her escrow or IOLTA (trust) account, as set forth above.

## 94. Can payments be made through direct deposit to foreign banks?

No.

## 95. Can direct deposit payments be made to money market or brokerage accounts?

No.

## 96. If I elect to receive my payment by check, how will it be sent to me?

Your payment will be sent through the United States Postal Service's First Class mail.

## 97. Where will I be able to cash my check?

If you do not have your own bank account, the GCCF has made arrangements with Whitney National Bank for check-cashing services. Whitney National Bank has branches located throughout the affected region. If you are an Individual and not a Business, and you do not have your own bank account, you may go to any branch of Whitney National Bank and cash up to $5,000 of your payment in one day. (No fee will be charged by Whitney National Bank for this service.)

Please note that on June 4th, 2011, Hancock Holding Company acquired Whitney Holding Corporation. As a result of the merger, Hancock Holding Company is now the parent company of two banks: Hancock Bank, headquartered in Gulfport, Mississippi and Whitney Bank, headquartered in New Orleans, Louisiana. Gulf Coast Claims Facility checks for the Deepwater Horizon oil spill can be cashed Whitney Bank locations in Texas, Louisiana, Alabama and Florida, as well as Hancock Bank locations along Mississippi's Gulf Coast. As of September 16, 2011, Mississippi Hancock Bank branches will accept Whitney National Bank checks. Please click here for location information to find the Whitney Bank or Hancock Bank location that is most convenient for you.

(**back to top**)

## SECTION 10 – INFORMATION ON CLAIM TYPES

**98. For what Claim Types will the GCCF provide compensation?**

The GCCF will provide compensation to qualifying Claimants for the following Claim Types:

1. Removal and Clean Up Costs;
2. Damages to Real or Personal Property;
3. Lost Earnings or Profits;
4. Loss of Subsistence Use of Natural Resources;
5. Physical Injury or Death.

**99. What are Removal and Clean Up Costs?**

Removal and Clean Up costs are costs that result from actions you took to prevent, minimize, mitigate or clean up damages or anticipated damages from the Spill.

**100. What is Real Property?**

Real Property is land and buildings, houses, or objects affixed or attached to the land.

**101. What are damages to Real Property?**

Damages include any physical injury or damage to the Real Property.

**102. What is Personal Property?**

Personal Property is equipment, boats, cars, furniture, or objects not affixed or attached to the land and any property not considered real property.

**103. What are damages to Personal Property?**

Damages include any physical injury or damage to the Personal Property.

**104. What are Lost Earnings?**

Lost Earnings occur when you experience a loss of or reduction in your ability to earn wages or income because of the Spill. If you were unable to engage in your normal

job because of the Spill or made less money than usual because of the Spill, you may have experienced Lost Earnings.

## 105. What are Lost Profits?

Lost Profits are loss of income or profits by a Business. If your Business experienced a temporary or permanent loss or reduction in profits due to the Spill, you can make a claim for Lost Profits. Your Business may also have experienced Lost Profits if it was forced to operate under different conditions than those that existed prior to the Spill.

## 106. What is Loss of Subsistence Use of a Natural Resource?

Loss of Subsistence Use of a Natural Resource is when an Individual or Business can no longer use a natural resource to obtain food, shelter, clothing, medicine or other minimum necessities of life because the natural resource has been injured, destroyed or lost because of the Spill. For example, an Individual who uses fish or other wildlife for food but can no longer do so because of the Spill may file a Loss of Subsistence Use claim.

## 107. What is a Physical Injury?

A physical injury is an injury to the body proximately caused by the Spill or the explosion and fire associated with the Deepwater Horizon incident, or by the cleanup of the Spill. An injury that relates to emotional or mental health is not a physical injury and is not an eligible claim.

(**back to top**)

## SECTION 11 – INFORMATION ON SUBSISTENCE CLAIMS

## 108. Is the GCCF paying claims for loss of subsistence?

Yes. The GCCF pays subsistence claims to claimants who can demonstrate reliance on natural resources that were affected by the Spill to obtain food, shelter, clothing, medicine or other minimum necessities of life. This includes commercial fishermen

who hold back a portion of their catch for subsistence use as well as some non-commercial fishermen.

### 109. Are recreational fisherman eligible for loss of subsistence?

No. Those who fish for sport or claim loss of use or enjoyment are not eligible subsistence claimants. Subsistence is defined as necessary to support life.

### 110. What documentation is required for a subsistence claim?

Claimants should provide photographs, affidavits, witness statements, or other documents identifying the affected natural resource used by the claimant before the Spill and proving that the claimant used and relied upon that resource for the claimant's subsistence, and copies of receipts or other verifications of expenditures to replace the natural resources previously relied upon for subsistence.

### 111. How are subsistence losses calculated by the GCCF?

Subsistence claims are processed by specialized teams working out of the local site offices in each of the states. These teams employ field interviews and verifications and refer to available consumption studies when evaluating claims. The measure of the loss is generally based on average 2010 pre-spill retail and/or wholesale values for the lost catch. Lost catch used for Personal/Family Consumption is valued at average pre-Spill 2010 retail values. Lost catch used for Bartering/Community Distribution is valued at average pre-Spill 2010 wholesale values.

(**back to top**)

## SECTION 12 – INFORMATION ON CASINO WORKER CLAIMS

### 112. Are casino workers eligible for lost earnings due to the Spill?

Yes. Casino workers who can document losses due to the Oil Spill will be compensated by the GCCF.

**113. What documentation is required to calculate lost earnings for casino workers?**

The GCCF requires casino workers to provide complete financial records documenting all wages earned at the casino in 2008, 2009 and 2010. You may satisfy this requirement by providing year-end tax documents, complete payroll records from 1/1/2008 through 12/31/2010, or a letter from your employer stating your annual earnings or explaining any missing periods in your records. If the GCCF does not have all the documents from you needed to be able to evaluate your claim, the GCCF will send you a deficiency notice telling you what is missing and giving you a period of time to submit those documents.

**114. How are 2010 earnings projected for casino workers?**

The GCCF projects 2010 earnings by calculating your average annual wages earned at the casino in 2008 and 2009.

**115. How are 2010 losses calculated for casino workers?**

The GCCF calculates 2010 losses that occurred after the Oil Spill. The GCCF calculates your May through December 2010 Projected Earnings by averaging your 2008 and 2009 annual earnings and then multiplying that average by 66.67% to apportion for the eight months of potential earnings after the Spill (May–December). The GCCF then subtracts your May through December 2010 actual earnings from this projection to determine your total 2010 losses.

(**back to top**)

**SECTION 13 – RELATIONSHIP BETWEEN THE GCCF AND MULTIDISTRICT LITIGATION ("MDL")**

**116. I have submitted a Short Form in MDL 2179 in the United States District Court for the Eastern District of Louisiana. Does filing the Short Form mean that I cannot proceed with my claim in the GCCF?**

No. The federal lawsuit is separate from the claims process in the GCCF. You may pursue your claim with the GCCF even if you have filed the Short Form in the MDL proceedings.

**117. If I accept a Final Claim Offer or a Quick Pay from the GCCF and sign a release, will that affect my claim in the MDL proceedings against BP and the other defendants?**

Yes. If you accept a Final Claim Offer or Quick Pay and sign a release, you will release and waive any claims that you have or may have in the future against BP and all other potentially responsible parties with regard to the Spill or to submit any claim for payment to the National Pollution Funds Center, the Coast Guard office responsible for evaluating and approving Oil Pollution Act claims, or in Court.

(**back to top**)

## SECTION 14 – APPEALS OF FINAL CLAIM DETERMINATIONS

**118. What are the requirements for a claimant to file an appeal with the GCCF?**

In order to file an appeal with the GCCF, your Final Claim determination (including any Emergency, Interim or Final Payment made by BP or the GCCF) must exceed $250,000.

In addition, in certain specific cases the Claims Administrator may grant a right of appeal if he concludes either: (1) the claim determination presents an issue of first impression under the Oil Pollution Act; or (2) the claim determination is inconsistent with prior legal precedent under OPA and the claim is likely to be representative of a larger category of claims to be considered by the GCCF.

**119. How do I file an appeal with the GCCF?**

All appeals must be presented to the GCCF in writing either by hard copy or in electronic form. If you want to file an appeal you should download a form by clicking here, and submit the form in one of three ways: (1) by electronic mail to info@gccf-claims.com; (2) with the assistance of GCCF representatives at a Claims

Site Office; or (3) by mailing a hard copy of the form via U.S. Mail to the GCCF intake center in Dublin, OH. Each appeal must include a Statement of Issues explaining the basis of your appeal and relief requested.

## 120. When can I file an appeal with the GCCF?

Your Determination Letter contains a date of issue. The deadline to file an appeal is 14 days from the date of issue on your Determination Letter. Your appeal will be timely if filed electronically or in person at a Claims Site Office by the deadline. If you file the appeal in hard copy, it will be timely if the appeal is post-marked or received by the deadline.

## 121. May I request a Re-Review of my Final Claim and how does that affect my appeal?

All claimants are entitled to request a Re-Review of a Final Claim. The GCCF has determined that when a claimant has filed a request for Re-Review of a Final Claim, the fourteen (14) day deadline for filing an appeal will run from the date of notification of the GCCF's determination of the Re-Review. If a claimant does not file a request for a Re-Review of a Final Claim, the fourteen (14) day deadline for filing an appeal will run from the date of notification of the GCCF's Final Determination.

## 122. Can BP appeal my Final Claim Determination?

Yes, BP may appeal a Final Claim Determination of the GCCF if a total monetary award (including any Emergency, Interim or Final Payment made by BP or the GCCF) is in excess of $500,000.

In addition, in certain specific cases the Claims Administrator may grant a right of appeal if he concludes either: (1) the claim determination presents an issue of first impression under the Oil Pollution Act; or (2) the claim determination is inconsistent with prior legal precedent under OPA and the claim is likely to be representative of a larger category of claims to be considered by the GCCF.

## 123. Will I be notified if BP files an appeal of my claim determination?

Yes, the GCCF will inform you if BP files an appeal. You will receive a letter notifying you of BP's decision to appeal and explaining your rights in the appeal process.

## 124. Who decides the appeals?

All appeals will be decided by a three person, impartial Panel of Appeals Judges.

## 125. Will my claim file be disclosed if I file an appeal?

Yes. If you decide to appeal your claim, you will need to approve disclosure of your claim file to both BP and the assigned Panel of Appeals Judges. For any claim that is appealed by BP, the Claims Administrator will release only such information from the claim file as is necessary for BP to evaluate the decision and a decision by the Panel of Appeals Judges.

## 126. Who selects the Panel of Appeals Judges?

The Claims Administrator appointed Jack M. Weiss of Louisiana as the Appointing Authority to select the appeals judges who will hear limited appeals from claims decisions made by the GCCF. Mr. Weiss has served since 2007 as Chancellor of the Louisiana State University Paul M. Hebert Law Center in Baton Rouge.

## 127. Who did Mr. Weiss select as the GCCF Appeals Judges?

Mr. Weiss has appointed GCCF Appeals Judges for each of the four states (Alabama, Florida, Louisiana, and Mississippi) from which a large majority of claims have arisen for alleged costs and damages incurred as a result of the Spill. Each GCCF Appeals Judge appointed is a distinguished member of the legal community and either a current resident of the state from which he or she is appointed or has a substantial professional, academic, or personal connection to that state.

## 128. Can I submit my claim to the Coast Guard or file a suit in court while I am waiting for my appeals decision?

No. Once an appeal begins, you may not submit a claim to the Coast Guard, or file a claim in court, until the appeal is either decided or withdrawn.

## 129. Will I be notified of the appeals decision?

Yes, you will receive a Post-Appeal Final Claim determination. The Post-Appeal Final Claim determination shall be valid for 90 days, during which time you may accept the determination, sign the Release and Covenant Not to Sue and receive the GCCF payment approved by the three Judge Panel. If you choose not to accept the Post-Appeal Final Claim determination, you may submit your claim to the National Pollution Funds Center ("NPFC"), the Coast Guard office responsible for evaluating and approving OPA claims or as an alternative you may file a claim in court, including in the multidistrict litigation pending before the United States District Court

for the Eastern District of Louisiana, titled, <u>In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010</u>, MDL No. 2179. The multidistrict litigation is a consolidated grouping of federal law suits arising out of the Spill. General information on the procedure for filing a claim with the NPFC may be obtained from the Director of the National Pollution Funds Center, NPFC MS 7100, U.S. Coast Guard, 4200 Wilson Blvd., Suite 1000, Arlington, VA 20598-7100, (800) 280-7118, or from the NPFC website at www.uscg.mil/npfc/claims. Information regarding the multidistrict litigation may be obtained from the court's website at www.laed.uscourts.gov. A claim for physical injury is not a claim under OPA and therefore cannot be submitted to the NPFC.

### 130. Is the appeal decision final?

Any decision of the Panel of Appeals Judges shall be deemed final as to BP only. If you do not agree with the decision of the Panel of Appeals Judges, you may reject the GCCF determination and submit your claim to the NPFC or you may file a claim in court.

(**back to top**)

## SECTION 15 – CLAIMANT BILL OF RIGHTS

### 131. You have the right to equal treatment.

You have the right to be treated with respect, dignity, and fairness, without regard to your race, color, sexual orientation, national origin, religion, gender, or disability.

### 132. You have the right to equal access to the claims process.

If you have a disability, the Gulf Coast Claims Facility ("GCCF") will make reasonable accommodations in order for you to access the services of the GCCF.

If you have difficulty communicating in English, the GCCF will provide translation services for you to communicate about the claims process with the GCCF.

If you have difficulty reading or writing, the GCCF will endeavor to explain all documents and forms in a plain and simple manner, and assist you in filing a claim form.

## 133. You have the right to privacy.

Your submitted personal information will be kept secure by the GCCF and will only be used and disclosed for legitimate purposes in connection with administering the GCCF.

## 134. You have the right to information about your claim.

You can meet with a member of the GCCF staff to ask any questions you have about the claims process. Once you have filed a claim with the GCCF, you have the right to check the status of that claim by calling the toll-free number (1-800-916-4893 (TTY 1-866-682-1758)), visiting the GCCF's internet site, www.GulfCoastClaimsFacility.com, or visiting a GCCF office in person. (A list of site offices is available by phone or on-line.)

## 135. You have the right to a fair review and determination of your claim.

The GCCF Claims Evaluator will consider all properly submitted evidence that you provide to prove your loss.

## 136. You have the right to a timely claim decision.

The GCCF will issue a timely determination of your claim. If the GCCF needs additional information in order to decide your claim, the GCCF will notify you in a timely manner of the request for additional information.

## 137. You have the right to timely payment.

If you qualify for a payment, you will be paid promptly.

## 138. You have the right to ethical treatment.

All representatives of the GCCF will act ethically and in good faith.

## 139. You have the right to be represented by an attorney of your choosing.

You have the right to be represented by an attorney of your choosing and to consult with that attorney before accepting any settlement or signing a release of legal rights.

([back to top](#))