## BASILE J. UDDO
### ATTORNEY AT LAW

3445 N. CAUSEWAY BOULEVARD
SUITE 724
METAIRIE, LA 70002
(504) 834-1819
TELEFAX: (504) 832-7208
buddo@earthlink.net

NEW ORLEANS OFFICE:
FIRST BANK & TRUST TOWER
SUITE 1625
909 POYDRAS STREET
NEW ORLEANS, LA 70112

July 25, 2012

Steve Herman, Esq.
Herman, Herman & Katz, L.L.C.
820 O'Keefe Avenue
New Orleans, LA 70113-1116

**BY EMAIL ONLY**

RE: Wisner Trust and CNO Representation Conflict Analysis

Dear Mr. Herman:

You have asked me to provide a conflicts analysis and opinion with respect to whether a concurrent conflict would exist between your representation of the City of New Orleans ("City") and the Edward Wisner Donation ("Donation"), in connection with claims to be made on behalf of each entity against BP.[1]

The Donation is a land trust established some 100 years ago. The City holds the land in trust as trustee and is also a beneficiary. The Mayor serves as Trustee by virtue of his office. There are four other beneficiaries holding fractional interests. The Donation has an Advisory Committee ("Committee"), which is assigned certain duties under the Donation's governing documents.

Your firm was engaged by the City, pursuant to a public bid process, to represent the City in connection with BP claims. The Donation, through its Committee, engaged counsel for similar purpose. The City, through the Mayor as Trustee, has requested that your firm be added as co-counsel for the Donation.[2] The question has been raised as to whether this arrangement would raise any conflict issues with respect to the BP claims, and, if so, how those issues should be handled.

---

[1] I understand that your firm is working in connection with other firms in these matters. However, for convenience I am addressing this opinion to you.

[2] You also have co-counsel in your representation of the City through the active involvement of the City Attorney's Office. It is also clear that in each representation the client would be the entity—the City and/or the Donation—and not the Mayor or the beneficiaries, respectively. See LRPC, Rule 1.13 (a).

1

## ANALYSIS

Concerns about conflicts of interests in the practice of law are one of the oldest ethical issues addressed in the profession. Therefore, there is an abundance of historical analysis and evolution in the development of the modern ethical understanding of the conflict issue. The modern approach to analyzing conflict of interest matters deals directly with the assessment of whether the **risk** of adverse consequences rises to a level of being so likely that some action must be taken by the attorney.[3]

Modern conflict analysis does not presume or assume that any client-protective values are at risk simply because an attorney represents more than one client whose interests may, at some point, become divergent. Indeed, all of the modern analysis of conflicts of interests requires a careful consideration of whether any risks to these values are real, and to what extent they might actually impact the clients. The analysis requires a balancing act that weighs the risk of such harm against the degree of harm that might occur: if the risk of harm is minimal there is no ethical issue. Moreover, even if the risk of harm is high, if the degree of harm is minimal, the rules provide adequate accommodation for allowing the multiple representations to proceed despite the "conflict."

Of course, some conflicts are so fraught with risk, both in terms of how likely they are to occur and in terms of how much harm they would inflict, that they are prohibited *per se*. The clearest example is the prohibition against a lawyer representing the plaintiff and the defendant in the same litigation. However, beyond this rather extreme example, modern conflict analysis provides a great deal of flexibility in dealing with what might be characterized as "current client conflicts."

The best and most comprehensive expression of the modern analysis of conflicts appears in the *Restatement of the Law Governing Lawyers (Third)*, sec. 121, which reads:

> A conflict of interest is involved if there is a **substantial risk** that the lawyer's representation of the client **would be materially and adversely** affected by the lawyer's own interest or **by the lawyer's duties to another current client**, a former client, or a third person. (Emphasis added).

This approach has been incorporated into the Louisiana Rules of Professional Conduct ("LRPC"). Rule 1.7 deals directly with conflicts of interest among current clients. That rule reads in part:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. **A concurrent conflict of interest exists if:**

---

[3] Even when a concurrent conflict exists, Rule 1.7 (b) provides for clients to be able to consent to the conflict under most circumstances.

> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a **significant risk** that the representation of one or more clients **will be materially limited** by the lawyer's responsibilities to another client, a former client, or a third person, or by a personal interest of the lawyer.

As you can see, aside from direct adversity cases, this rule emphasizes the risk of harm approach by specifically articulating that not all conflicts raise concerns, but only those that present a **"significant risk"** that the representation of one or more clients would be **"materially limited"** by the conflict. This approach has been commented on extensively by the leading commentators in the field of legal ethics who conclude that this risk-of-harm analysis focuses on "the **likelihood** that the quality of the representation or the client-lawyer relationship **will** suffer ill effects" as a result of the conflict. G. Hazard and W. Hodes, *The Law of Lawyering*, sec. 8.11, (3rd ed.) (emphasis in original).

The risk of harm analysis requires a realistic judgment as to what constitutes the substantial risk referred to in the rule. The *Restatement* defines substantial risk as "**significant and plausible**," "**more than a mere possibility of adverse effect**." See *Restatement of the Law Governing Lawyer (Third)*, sec. 121, comment (c) (emphasis added). Therefore, it is clear that the LRPC do not prohibit the mere concurrent representation of multiple parties from the same occurrence whose interests *might* become divergent. Indeed, the rule would only consider such multiple representations to be concurrent conflicts when a significant risk of material limitation **actually** exists.

Consequently, a legitimate, conscientious analysis of the question presented would weigh whether or not there is a substantial risk of a material limitation on your representation of the Donation as a result of your concurrent representation of other claimants, including the City, against BP. It seems clear that Rule 1.7 (a) (2) would support the conclusion that no concurrent conflict exists. Making this determination as a "reasonable lawyer based upon facts and circumstances that he knew, or should have known, at the time of undertaking or continuing a representation," there is no reason to believe that these concurrent representations pose any conflict that would rise to the level of requiring consent. See *Restatement* at sec. 121, comment (c).

I am aware that an employee of the Donation, though not the Trustee, has received a somewhat contrary informal, non-binding advisory opinion from the LSBA Ethics Advisory Service ("Advisory Opinion"). However, it is my opinion that the Advisory Opinion is too general in analysis, and too limited in its factual basis, to support a conclusion that there is a concurrent conflict. The core "factual" analysis of the Advisory Opinion is devoid of facts and based upon hypothetical assumptions fueled by a bold and somewhat useless "fact" stated in the question.

The question posed by Ms. Norman has only one statement that might be considered a relevant "fact." She states: "[The City's] claims are very different than the claims of the Donation." There is no support for this conclusion anywhere in Ms. Norman's inquiry. Apparently relying on this naked assertion, the Advisory Opinion says:

3

> We believe, under Rule 1.7, counsel for the trustee *may* have a potential concurrent conflict of interest, as his or her responsibilities to the city/trustee *may* compete with the interest of the trust and its beneficiaries (emphasis added).[4]

At best, this statement is nothing more than a truism: every multiple representation **may** have a **potential** conflict and the lawyer's responsibilities **may compete** among clients. Indeed, the Advisory Opinion is careful to say "[t]his of course depends on the specific facts." There is the rub. There are no specific facts in Ms. Norman's inquiry, so there can be no factual analysis in the Advisory Opinion. Accordingly, the Advisory Opinion is nothing more than a caution to engage in the kind of specific factual analysis discussed above.

## CONCLUSION

It is my opinion that there is no concurrent conflict. Even if the claims of the City are "very different" from the claims of the Donation, differing claims are meaningless unless they create the *significant risk of material limitation* discussed in the rule. Representing multiple clients in the common goal of recovery against BP simply does not rise to the level of a concurrent conflict without some specific, clearly articulated facts that are not evident in the facts and documents presented to me, or as presented by Ms. Norman's question to the Ethics Advisory Service.[5]

Finally, because there is no concurrent conflict, there is no need to obtain client consent to the representations. See LRPC, Rule 1.7 (b).[6]

I hope that you find this analysis helpful. If you have any questions, please do not hesitate to contact me.

Sincerely,

Basile J. Uddo

BJU/np

---

[4] The Advisory Opinion seemed to conflate the "trustee" with the "trust" and, based upon the "potential" conflicts gleaned from "the limited account of the facts presented," the Advisory Opinion concluded a concurrent conflict exists.

[5] Perhaps such a conflict might exist if the Donation opted to participate in the BP settlement, as they would be allowed to do, and lawyers representing the Donation were required to oppose the settlement on behalf of other clients, while participating in the settlement on behalf of the Donation.

[6] Virtually all representations, especially multiple representations, have the *possibility* that conflicts might occur over the course of the representation. In all such instances, including this one, if that occurs, the conflict issue can be revisited and addressed appropriately.