## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | § § § § | MDL NO. 2179 SECTION:  J |
| THIS DOCUMENT APPLIES TO: Bundle B1 Cases and Case No. 10-4573, *Tobatex, Inc. v. BP, plc.* | § § § § | JUDGE BARBIER MAGISTRATE SHUSHAN |

## REPLY IN SUPPORT OF DEFENDANTS HALLIBURTON ENERGY SERVICES, INC., TRANSOCEAN, AND M-I L.L.C.'S MOTION TO DISMISS BP DEALER CLAIMS

Defendants Halliburton Energy Services, Inc. ("HESI"), Transocean, and M-I L.L.C. ("M-I") respectfully submit this Reply in response to the BP Dealer Plaintiffs' Opposition[1] (the "Opposition") to Defendants' Motion to Dismiss[2] and respectfully show the Court as follows:

### INTRODUCTION

As set forth in Defendants' Motion to Dismiss and in this Court's August 26, 2011 Order and Reasons (Dkt. 3830) ("Order and Reasons"), the BP Dealers' claims arise from the April 20, 2010 *Deepwater Horizon* incident (the "Incident") and fall firmly within this Court's admiralty tort jurisdiction.  These claims are, therefore, governed by maritime law, not state law.  Further,

---

[1] The Plaintiffs' Steering Committee ("PSC") also filed an Opposition to Defendants' Motions to Dismiss, including HESI's Motion to Dismiss.  *See* Plaintiffs' Memorandum in Opposition to Defendants' Motions to Dismiss BP Dealer Claims (Dkt. 7096) (the "PSC Opposition").  In the PSC Opposition, the PSC concedes that "the claims against non-responsible parties [such as HESI, Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater, Inc., and M-I] are precluded by the *Robins Dry Dock* rule."  PSC Opposition at 20, Sec. V.  Thus, the PSC mounts no opposition to, and concedes the propriety of, the dismissal of HESI, Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater, Inc., and M-I from the BP Dealer Claims.  The BP Dealers maintain that other Transocean entities may be OPA responsible parties for the surface oil spill only. Opposition at 5, n. 3.  For purposes of this Reply, neither HESI nor M-I takes a position regarding whether Transocean is an OPA responsible party or regarding the distinction between surface versus sub-surface release.  In addition, for purposes of this Reply, Transocean notes that the PSC concedes that Transocean is a responsible party under OPA "only with respect to the diesel fuel emanating from the vessel" (Dkt. No. 7095, n.2), and the BP Dealers' complaint contains no allegation that they suffered damages resulting from diesel fuel emanating from the vessel.

[2] Defendants' Motion to Dismiss was filed on behalf of HESI, Transocean, and M-I.

claims for alleged shore-based damages are also governed by maritime law under the Admiralty Extension Act.

In the Opposition (Dkt. No. 7097), the BP Dealers assert that the "brand damage claims," as set forth in *Tobatex, Inc. v. BP, plc,* No. 10-4573 (the "Tobatex Complaint"), are not subject to admiralty jurisdiction and are properly brought under state law.  *See* Opposition at 18-19. Plaintiffs maintain that their common law claims are distinct from other claims asserted in the B1 Master Complaint (Dkt. 1128) and do not satisfy the "location" and "connection" requirements for admiralty jurisdiction as set forth by the United States Supreme Court in *Grubart* and *Sisson.* Based on this incorrect predicate, the BP Dealers conclude that general maritime law's economic loss rule, as set forth in *Robins Dry Dock*, cannot preclude their claims.

## SUMMARY OF REPLY ARGUMENTS

In its Order and Reasons, this Court dismissed the Bundle B1 Plaintiffs' state common law claims for private economic damages because maritime law applied to the exclusion of state law.  *See* Order and Reasons at 8, 18.  The BP Dealers fail to provide any meaningful distinction between their brand damage claims and the other land-based claims over which this Court asserted admiralty jurisdiction.   Indeed, the Court's interpretation of the "location" and "connection" tests as set forth in *Grubart* and *Sisson*, among other cases, applies with equal force to the BP Dealers' brand damage claims and confirms that these claims, like the other Bundle B1 claims for private economic loss, arise under admiralty jurisdiction.   Accordingly, maritime law—not state law—applies in this case.  Moreover, because maritime law applies, the economic loss rule, established in *Robins Dry Dock,* precludes recovery of economic damages absent physical injury to a proprietary interest.

Finally, and perhaps most importantly, the BP Dealers concede that they do not have an OPA claim against non-responsible parties under OPA, such as HESI, Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater, Inc., and M-I.  Opposition at 5 n.3; *see also* PSC Opposition at 20.[3]  Thus, the BP Dealers have no cognizable claims against these Defendants and their asserted claims should be dismissed.

## ARGUMENT

I.    **FEDERAL MARITIME LAW APPLIES TO PLAINTIFFS' CLAIMS TO THE EXCLUSION OF STATE LAW.**

A.    **Under The Supreme Court's Analysis In *Grubart* And *Sisson*, Admiralty Law Applies To The BP Dealer Claims.**

The BP Dealers contend that their brand damage claims do not fall within the reach of admiralty jurisdiction and that state law, not general maritime law, governs.  Opposition at 3-4, 16.  The BP Dealers are correct that their claims cannot arise under both state law and admiralty law, as admiralty jurisdiction normally ousts state law from its own application.  *See E. River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 864 (1986).  However, the nature of the Incident from which the BP Dealers' claims arise demonstrates that any alleged brand damage claims, though guised as state law claims, are governed by maritime law.

The Supreme Court's decision in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.* provides the Court with the proper analytical framework to determine the applicability of admiralty jurisdiction and substantive maritime law.  *See* 513 U.S. 527 (1995).  Applying *Grubart*, the brand damage claims clearly arise under admiralty jurisdiction.

In *Grubart*, the Supreme Court reiterated the current test for admiralty tort jurisdiction, stating that "a party seeking to invoke federal admiralty jurisdiction . . . over a tort claim must

---

[3] Plaintiffs in *Tobatex* do not assert any claims against Defendant M-I, but the PSC acknowledges that M-I is not an OPA responsible party.

satisfy conditions of both [i] location and [ii] connection with maritime activity." *Id.* at 534.  To satisfy the location test, the Court must determine only "whether the tort occurred on navigable water *or whether injury suffered on land was caused by a vessel on navigable water*." *Id.* (emphasis added).

In the Opposition, the BP Dealers focus on the first clause of *Grubart's* location test, inquiring only whether the tort occurred on navigable water.  Opposition at 15-16.  In support, Plaintiffs cite *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453 (5th Cir. 1999).  *Id.*  However, the BP Dealers fail to note that the Fifth Circuit in *Egorov* only concluded that the location test was not met because it determined that "the damage was not caused by the vessel or her appurtenances."  *Egorov,* 183 F.3d at 456-57.  Here, the BP Dealers' claims fall squarely within the category of alleged injuries suffered on land and *caused by* a vessel on navigable water.  As this Court concluded (Order and Reasons at 4-7), and as the BP Dealers concede (Opposition at 16), the *Deepwater Horizon* was a "vessel" on navigable water.

Moreover, the BP Dealers' factual allegations demonstrate that their alleged injuries were caused by the blowout and oil spill emanating from the *Deepwater Horizon.*  In the Tobatex Complaint, the BP Dealers allege that this matter "is a class action . . . to recover damages suffered by Plaintiffs and the Class Members as a result of the oil spill that resulted from the explosion and fire aboard, and subsequent sinking of the oil rig Deepwater Horizon[.]"  Tobatex Complaint at ¶ 1.  The BP Dealers define their proposed class as

> [a]ll persons and entities who own or operate service stations in the United States under the name and logo of BP and who have sustained any legally cognizable loss and/or damages as a result of the April 20, 2010 fire and explosion which occurred aboard the Deepwater Horizon drilling rig, the oil spill resulting therefrom, and the conduct of Defendants[.]

*Id.* at ¶ 14.[4]  By admitting that their purported claims arise from the explosion and fire aboard the *Deepwater Horizon*, the BP Dealers have satisfied the *Grubart* "location" test.

The second step of the *Grubart* jurisdiction analysis focuses upon "connection with maritime activity" which raises two corresponding inquiries.  First, the Court must "assess the general features of the type of incident involved . . . to determine whether the incident has a potentially disruptive impact on maritime commerce." *Grubart*, 513 U.S. at 534 (quotations and citations omitted).  The *Grubart* Court stressed that this inquiry focuses "not on the specific facts at hand but on whether the '*general features*' of the incident were 'likely to disrupt commercial activity.'" *Id.* at 538 (citations omitted).  Applying these principles, the *Grubart* Court found that the general features of that case—namely "damage by a vessel in navigable water to an underwater structure"—plainly constituted "the kind of incident that has a potentially disruptive impact on maritime commerce." *Id.* (citations omitted).

Likewise, the central facts upon which the BP Dealers rely are also potentially disruptive of commercial maritime activity.  The BP Dealers allege that Defendants were negligent in their operation of and activities aboard a vessel, the *Deepwater Horizon*,[5] and seek economic damages arising from alleged harm from an Incident in the Gulf of Mexico,[6] a body of water "teeming with maritime activity." *Broughton Offshore Drilling, Inc. v. S. Cent. Mach., Inc.*, 911 F.2d 1050, 1052 n.1 (5th Cir. 1990).  Accordingly, this first connection test prong is satisfied.

---

[4] The text of the Tobatex Complaint belies the BP Dealers' assertion that the "bulk" of their allegations of Defendants' misconduct occurred on dry land.  *See* Tobatex Complaint at 16.  This is especially true with respect to HESI, Transocean, and M-I.  The BP Dealers make no specific allegations of any actions taken by these Defendants "on dry land" in the Tobatex Complaint or in their Opposition, in which they purport to "more accurately set forth their claims." Tobatex Complaint at 10, n.6.

[5] *See, e.g.*, Tobatex Complaint ¶¶ 22-27.

[6] *See, e.g., id.* ¶¶ 31-33, 35 (describing the impact of the oil spill on the Gulf of Mexico).

1972558 v4-24010/0002 PLEADINGS

Under the second connection analysis inquiry, the Court determines "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 539. Thus, the analysis focuses on the general nature of the incident. For example, in *Grubart*, the Supreme Court described the general character of the relevant activity as "repair or maintenance work on a navigable waterway performed from a vessel." *Id.* at 540. The Court further noted that "[n]avigation of boats in navigable waters clearly falls within the substantial [maritime] relationship[.]" *Id.* Likewise, here, the general character of Incident could be described as *oil and gas well drilling from a vessel on a navigable waterway*. *See* Tobatex Complaint ¶¶ 1; 22; 24-27; 30; 42(a)-(b), (e)-(g), (n)-(o). Moreover, the BP Dealers allege that such activities proximately caused the Incident and their alleged damages. *Id.* at ¶¶ 22, 27, 33, 39, 43, 45, 48. The Fifth Circuit has held that "oil and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce." *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538-39 (5th Cir. 1986). Accordingly, the second prong of the connection test is established, and admiralty jurisdiction governs the BP Dealers' claims.

The cases the BP Dealers cite in support of their argument that the connection test is not satisfied are unavailing. In *O'Dwyer v. Eustis Eng'g Co., Inc.,* the Fifth Circuit inquired into the nature of the defendant's activities in determining whether the second prong of the connection test was met. 324 Fed. Appx. at 377. The *O'Dwyer C*ourt found that the defendant's improvement of a drainage and flood-prevention canal did not implicate maritime law's traditional concerns with "navigation or water-based commerce." *Id.* at 372, 380.

Similarly, in *Gulf Coast Shell & Aggregate LP v. Newlin,* 623 F.3d 235, 240 (5th Cir. 2010), the court again focused on "the activity giving rise to the incident," which in that case was a transfer of title to an oyster dredge. The court held that the title transfer did "not bear a

substantial relationship to maritime activity" and therefore torts arising from that activity did not provide a basis for admiralty jurisdiction. *Id.* The present case is plainly distinguishable from both *O'Dwyer* and *Gulf Coast Shell* in that Defendants' alleged activities from which this case arose, namely oil and gas well exploration and drilling from a vessel on a navigable waterway, bear a substantial relationship to maritime activity and implicate maritime law's concerns with navigation and maritime commerce.

Furthermore, the admiralty jurisdiction test set forth in *Grubart* is unaffected by the fact that the BP Dealers' alleged injuries are land-based. First, the BP Dealers' asserted damages—predicated on allegations of harm occurring in the Gulf of Mexico—are themselves intensely maritime. Second, even assuming the BP Dealers demonstrate direct injury on land, admiralty jurisdiction over those claims would still apply maritime law in lieu of substantive state law by virtue of the Admiralty Extension Act.[7] 46 U.S.C. § 30101 ("The admiralty and maritime jurisdiction . . . extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land."); *see also In re Exxon Valdez,* 767 F. Supp. 1509, 1512 (D. Alaska 1991) (if the oil spill from the *Exxon Valdez* is the proximate cause of shore-based damages, plaintiffs' claims will be subject to admiralty jurisdiction by operation of the Admiralty Extension Act). As the Supreme Court has explained, "[t]he purpose of the [Admiralty Extension Act] was to end concern over the sometimes confusing line between land and water, by investing admiralty with jurisdiction over 'all cases' where the injury was caused by a ship or other vessel on navigable water, even if such injury occurred on land." *Grubart*, 513 U.S. at 532; *see also Kamani v. Port of Houston Auth.*, 702 F.2d 612, 613 (5th Cir. 1983) (maritime jurisdiction applied because the seaman was

---

[7] *See supra,* p. 7. The Admiralty Extension Act, which was codified at 46 U.S.C. § 740, has now been recodified at 46 U.S.C. § 30101.

injured while working on a vessel in navigable waters although his injury was caused by a land-based crane).

Accordingly, admiralty jurisdiction attaches to any brand damage claims the BP Dealers may have arising out of the Incident. Such claims are fundamentally maritime in nature and, therefore, arise under maritime law, not state law.

**B.    The BP Dealers' Attempt To Amend Their Pleadings Does Not Remove Their Claims From The Reach Of This Court's Admiralty Jurisdiction.**

The BP Dealers acknowledge this Court's holding that admiralty jurisdiction attaches to the claims asserted in the B1 Master Complaint, including the "Dealer Claimants." Opposition at 9. Nonetheless, they contend that their brand claims are somehow distinct from the nuisance, trespass, and fraudulent concealment state common law claims asserted in the B1 Master Complaint,[8] and that this distinction removes them from the coverage of admiralty jurisdiction. *Id.*[9]

However, in describing their brand damage claims, the BP Dealers fail to identify any meaningful difference between their claims and other claims in the B1 Master Complaint. Many of the claimants in the B1 Master Complaint were, like the BP Dealers, predominantly land-

---

[8] The BP Dealers ignore that in determining the applicability of admiralty law to the state common law claims asserted in the B1 Master Complaint, this Court, justifiably, did not find it necessary to analyze each claim individually. Rather, the Court applied "[t]he test for whether admiralty jurisdiction exists in tort cases[.]" Order and Reasons at 7. The fact that those claims happened to be nuisance, trespass, and fraudulent concealment causes of action was not determinative in the Court's finding that admiralty jurisdiction governs the state common law claims asserted in the B1 Master Complaint.

[9] To support their argument that the brand claims are distinct from other state common law claims in the B1 Master Complaint, the BP Dealers attempt to amend their pleading to add allegations of Defendants' conduct that was carried out on shore, and not on board the *Deepwater Horizon*. Opposition at 10-11, 10 n.6. Setting aside the obvious fact that the Court has not granted leave for the BP Dealers to amend their claims, the purported amendment is nonetheless unavailing. The BP Dealers enumerate several allegations of BP's conduct (Opposition at 12-14), but with respect to the other defendants, allege only that those defendants' "finger pointing" somehow contributed to the alleged injuries to BP's brand and logo and, consequently, to the BP Dealers' alleged damages. Opposition at 14. These new allegations do nothing to alter this Court's jurisdictional and substantive law analysis.

8

based entities who alleged economic damages as a result of the oil spill.[10]  Most tellingly, the BP Dealers fail to explain how their alleged claims and damages differ in substance from those of the Dealer Claimants in the B1 Master Complaint.  B1 Master Complaint at ¶ 209(m) (the Dealer Claimants:  "Automobile and boat businesses, dealers and service stations and the employees thereof who have suffered damages, including loss of business, loss of income and lost profits, as a result of the Spill").  This Court found admiralty jurisdiction applicable to each of these kinds of claims and claimants and the BP Dealers have failed to identify any basis for treating their claims differently.  Therefore, maritime law, not state law, applies to their claims.

## II. BECAUSE THEY DO NOT ALLEGE PHYSICAL DAMAGE TO A PROPRIETARY INTEREST, THE BP DEALERS' CLAIMS AGAINST DEFENDANTS ARE BARRED BY THE ECONOMIC LOSS RULE.[11]

In the Opposition, the BP Dealers do not dispute that if maritime law governs their claims, then the economic loss rule bars those claims.  Maritime law's economic loss rule precludes recovery of purely economic claims absent physical injury to a proprietary interest.  *In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 377 (5th Cir. 2006); *see also Reserve Mooring, Inc. v. Am. Commercial Barge Line, LLC*, 251 F.3d 1069, 1072 (5th Cir. 2001) ("[P]hysical injury to a proprietary interest is a prerequisite to recovery of economic damage in cases of unintentional maritime tort.")

Accordingly, because the BP Dealers do not allege and cannot demonstrate physical damage to a proprietary interest, their economic damages claims against Defendants should be

---

[10] *See* B1 Master Complaint at ¶¶ 209(d) (the Commercial Business Plaintiffs, which include  "real estate agents and supply companies"); 209(i) (the Real Property/Tourism Plaintiffs:  "hotel owners and operators, vacation rental owners and agents, and all those who earn their living from the tourism industry"); 209(j) (the Banking/Retail Business Plaintiffs: "Banks, financial institutions, and retail business that suffered losses as a result of the Spill").

[11] The BP Dealers acknowledge that they cannot assert an OPA claim against non-responsible parties and concede that their OPA claims against these Defendants should be dismissed.  Opposition at 5 n.3.

dismissed.  *See* Order and Reasons at 24-25 (ruling that claimants who allege economic loss claims without alleging physical injury to their property or other proprietary interest "would not have had a viable cause of action and would be precluded from any recovery by virtue of *Robins Dry Dock*.").

## <u>CONCLUSION</u>

For the reasons set forth above and in Defendants' Memorandum in Support of their Motion to Dismiss, admiralty jurisdiction attaches to the BP Dealers' claims.  Maritime law's economic loss rule bars recovery for the BP Dealers' claims for purely economic damages absent physical injury to a proprietary interest.  Accordingly, the BP Dealers have failed to plead viable claims against HESI, Transocean, and M-I as a matter of law.  Pursuant to  Rule 12(b)(6), the Court, therefore, should dismiss the BP Dealers' claims against these Defendants in their entirety.

Respectfully submitted,

**GODWIN RONQUILLO PC**

**By:**  /s/  *Donald E. Godwin*
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
DGodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
BBowman@GodwinRonquillo.com
Jenny L. Martinez
State Bar No. 24013109
JMartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
FHartley@GodwinRonquillo.com
Gavin E. Hill
State Bar No.  00796756
GHill@GodwinRonquillo.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332
and
R. Alan York
State Bar No. 22167500
AYork@GodwinRonquillo.com
Misty Hataway-Coné
State Bar No.  24032277
MCone@GodwinRonquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone:  713.595.8300
Facsimile:  713.425.7594

**ATTORNEYS FOR DEFENDANT
HALLIBURTON ENERGY SERVICES,
INC.**

1972558 v4-24010/0002 PLEADINGS

Respectfully submitted,

By:    /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas,
No. 00784125)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas  77002
Telephone:  (713) 470-6100
Facsimile:  (713) 654-1301
E-:mail:  steven.roberts@sutherland.com,
Rachel.clingman@sutherland.com

-and-

By:    /s/ Edwin G. Preis, Jr.
Edward G. Preis, Jr. (Louisiana, No. 10703)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana  70501
Telephone:  (337) 237-6062
Facsimile:  (337) 237-9129

601 Poydras Street, Suite 1700
New Orleans, Louisiana  70130
Telephone:  (504) 581-6062
Facsimile:  (504) 522-9129
Email:  egp@preisroy.com

**Of Counsel:**

John M. Elsley (Texas, No. 0591950)
Royston, Razyor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas  77002
Telephone:  (713) 224-9380
Facsimile:  (713) 225-9945
Email:  john.elsley@roystonlaw.com

**ATTORNEYS FOR DEFENDANTS
TRANSOCEAN OFFSHORE
DEEPWATER DRILLING INC.,
TRANSOCEAN DEEPWATER INC.,
TRITON ASSET LEASING GmbH, AND
TRANSOCEAN HOLDINGS LLC**

By:    /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana  70163
Telephone:  (504) 599-8169
Facsimile:  (504) 599-8154
Email:  kmiller@frilot.com

-and-

By:    /s/ Brad D. Brian
Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 54933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California  90071
Telephone:  (213) 683-9100
Facsimile:  (213) 683-5180, (213) 683-4018
Email:  brad.brian@mto.com,
allen.katz@moto.com

**ATTORNEYS FOR DEFENDANTS
TRANSOCEAN OFFSHORE
DEEPWATER DRILLING INC.,
TRANSOCEAN DEEPWATER INC.,
TRITON ASSET LEASING GmbH, AND
TRANSOCEAN HOLDINGS LLC**

12

Respectfully submitted,

**OF COUNSEL:**                                    MORGAN, LEWIS & BOCKIUS LLP
MORGAN, LEWIS & BOCKIUS LLP

Derek E. Leon                                      By: /s/ Hugh E. Tanner
dleon@morganlewis.com                                  Hugh E. Tanner
Texas Bar No. 24002463                                 htanner@morganlewis.com
5300 Wachovia Financial Center                         Texas Bar No. 19637400
200 South Biscayne Boulevard                           1000 Louisiana, Suite 4000
Miami, Florida  33131                                  Houston, Texas  77002
Telephone:  (305) 415-3000                             Telephone:  (713) 890-5000
Facsimile:  (305) 415-3001                             Facsimile:  (713) 890-5001

Denise Scofield
dscofield@morganlewis.com                          **ATTORNEYS FOR DEFENDANT**
Texas Bar No. 00784934                             **M-I L.L.C.**
1000 Louisiana, Suite 4000
Houston, Texas  77002
Telephone:  (713) 890-5000
Facsimile:  (713) 890-5001

**ATTORNEYS FOR DEFENDANT**
**M-I L.L.C.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Reply in Support of Defendants' Motion to

Dismiss BP Dealer Claims has been served on All Counsel by electronically uploading the same

to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was

electronically filed with the Clerk of the Court of the United States District Court for the Eastern

District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing

in accordance with the procedure established in MDL 2179, on this 31st day of August, 2012.

                                                   /s/ Donald E. Godwin
                                                   Donald E. Godwin

13