IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater  Horizon" in the Gulf of Mexico,  on April 20, 2010,  <br>This Pleading applies to:  <br>*MDL 2179 B1 Amended Master Complaint And All Cases In Pleading Bundle B1* | *  <br>*   MDL No. 2179  <br>*  <br>*   Section: J  <br>*  <br>*   Judge Barbier  <br>*  <br>*   Magistrate Judge Shushan  <br>*  <br>* |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BP'S REPLY IN SUPPORT OF
MOTION TO DISMISS STIGMA CLAIMS

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL   60654
Telephone:  312-862-2000
Facsimile:  312-862-2200

Christopher Landau, P.C.
Jeffrey Bossert Clark
Aditya Bamzai
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, DC   20005
Telephone:  202-879-5000
Facsimile:  202-879-5200

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, LA   70139-5099
Telephone:  504-581-7979
Facsimile:  504-556-4108

C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC   20004-2401
Telephone:  202-662-5985
Facsimile:  202-662-6291

*Attorneys for BP Exploration & Production Inc., BP America Production Company, and BP p.l.c.*

August 31, 2012

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................................1

ARGUMENT ..................................................................................................................................2

I. The Pure Stigma Claims Fail As A Matter Of Law Under OPA.........................................2

    A. The Pure Stigma Claims Fail As A Matter Of Law Under § 2702(b)(2)(B). ..................................................................................................2

    B. The Pure Stigma Claims Fail As A Matter Of Law Under § 2702(b)(2)(E). ..................................................................................................5

II. The Pure Stigma Claims Fail As A Matter Of Law Under Both Federal Maritime Law And State Law................................................................................8

CONCLUSION..............................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Star Enter.*,
  51 F.3d 417 (4th Cir. 1995) ................................................................................................. 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................... 10

*Benefiel v. Exxon Corp.*,
  959 F.2d 805 (9th Cir. 1992) ............................................................................................... 5

*Berry v. Armstrong Rubber Co.*,
  989 F.2d 822 (5th Cir. 1993) ............................................................................................... 5

*Cook v. Rockwell Int'l Corp.*,
  618 F.3d 1127 (10th Cir. 2010) ........................................................................................... 4

*Gabarick v. Laurin Mar. Inc.*,
  23 F. Supp. 2d 741 (E.D. La. 2009) ..................................................................................... 9

*In re Glacier Bay*,
  746 F. Supp. 1379 (D. Alaska 1990) ................................................................................... 5

*In re Taira Lynn Marine Ltd. No. 5, LLC*,
  444 F.3d 371 (5th Cir. 2006) ........................................................................................... 2, 4

*Sekco Energy, Inc. v. M/V Margaret Chouest*,
  820 F. Supp. 1008 (E.D. La. 1993) ........................................................................... 2, 3, 4, 8

*Sekco Energy, Inc. v. M/V Margaret Chouest*,
  No. 92-420, 1993 WL 322942 (E.D. La. Aug. 13, 1993) .................................................... 8

*Slaven v. BP America, Inc.*,
  786 F. Supp. 853 (C.D. Cal. 1992) ...................................................................................... 5

**Statutes, Regulations, and Rules**

33 C.F.R. § 136.215 ..................................................................................................................... 7

33 C.F.R. § 136.217 ..................................................................................................................... 7

33 C.F.R. § 136.217(a)(2) ............................................................................................................ 7

33 U.S.C. § 2702(b)(2)(B) ............................................................................................... 2, 3, 4, 5

33 U.S.C. § 2702(b)(2)(E) ........................................................................................... 2, 4, 5, 6, 7, 8

43 U.S.C. § 1653(c)(1) ................................................................................................................. 5

Fed. R. Civ. P. 12(b)(6).......................................................................................................... 10

**Other Authorities**

National Pollution Funds Center (NPFC),
   *Claimant's Guide:*
   *A Compliance Guide For Submitting Claims Under the Oil Pollution Act of 1990*
   (updated Nov. 2009)
   http://www.uscg.mil/npfc/docs/PDFs/urg/Ch6/NPFCClaimantGuide.pdf ................................. 8

## INTRODUCTION

The briefs in opposition to BP's motion to dismiss the Pure Stigma Claims seek to obscure the key question presented: may the owners, lessors, or lessees of real property sue for an alleged diminution of that property's value resulting from the oil spill where the property has been neither (1) touched by oil nor (2) sold?  The answer to that question is no.  This Court has defined the "Pure Stigma Claims" as "claims by or on behalf of owners, lessors, and lessees of real property that they have suffered damages resulting from the *taint* of their property caused by the oil spill, although no oil or other contaminant physically touched the property."  6/12/12 Order (Rec. Doc. 6657), at 1 (emphasis added).  The Pure Stigma Claimants assert that they may recover damages for an unrealized diminution in the value of real property not touched by oil from the spill.  As BP explained in its motion to dismiss, such claims fail as a matter of law, and plaintiffs say nothing in their opposition briefs to avoid that straightforward conclusion.

Rather, in their opposition briefs, both the Plaintiffs' Steering Committee (PSC) and the plaintiffs in *Sellno v. BP Exploration & Prod. Inc.*, No. 11-925 (E.D. La.), try to shift the focus to issues beyond the scope of the Court's briefing order and BP's motion to dismiss.  The *Sellno* plaintiffs, for example, insist that some property owners "personally witnessed oil on their property, and additional forensic evidence is expected to substantiate their claims," notwithstanding "certain unreliable sources" indicating otherwise.  *Sellno* Pls. Opp. (Rec. Doc. 7099), at 2.  By definition, however, claims alleging that particular property was touched by oil are not "Pure Stigma Claims," and hence beyond the scope of this motion.  Similarly, both the PSC and the *Sellno* plaintiffs invite this Court to address claims by individuals who have sold their property and allege that they actually realized a loss.  Again, such claims of realized loss are not "Pure Stigma Claims," and hence beyond the scope of this motion.  This motion seeks to

streamline these sprawling MDL proceedings by targeting claims seeking damages for unrealized loss of property value that are not remotely cognizable under any source of law.

## ARGUMENT

Both the PSC and the *Sellno* plaintiffs insist that the Pure Stigma Claims are cognizable under both § 2702(b)(2)(B) and § 2702(b)(2)(E) of OPA.  In addition, the *Sellno* plaintiffs argue that the Pure Stigma Claims are cognizable under federal maritime law and state common law.  Each of these arguments is unavailing, and each is addressed in turn below.

**I.     The Pure Stigma Claims Fail As A Matter Of Law Under OPA.**

**A.     The Pure Stigma Claims Fail As A Matter Of Law Under § 2702(b)(2)(B).**

As BP explained in its motion to dismiss, § 2702(b)(2)(B) of OPA by its plain terms requires plaintiffs to establish "injury to, or economic losses resulting from destruction of, real or personal property." 33 U.S.C. § 2702(b)(2)(B).  Because the Pure Stigma Claims do not involve "economic losses resulting from ***destruction*** of" any property, such claims must involve "injury" to property to fall within the scope of that provision.  But they do not, for the simple reason that "injury" in this context means ***physical*** injury, *see, e.g.*, *In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 382 (5th Cir. 2006); *Sekco Energy, Inc. v. M/V Margaret Chouest*, 820 F. Supp. 1008, 1015 (E.D. La. 1993), and the Pure Stigma Claims by definition do not involve any such injury.

Plaintiffs' various responses to that straightforward point lack merit.

***First***, plaintiffs allege that "physical contact with discharged oil is not required" to establish an "injury" to property within the meaning of § 2702(b)(2)(B), and that "Congress could easily have inserted a physical-contact element into this statutory cause of action," but did not.  PSC Opp. (Rec. Doc. 7095), at 4.  That argument misses the point.  This Court is not being

asked to construe the word "injury" in the abstract, or to determine as a metaphysical matter whether an "injury" can entail purely economic losses. Rather, this Court is being asked to construe the word "injury" in the specific context of § 2702(b)(2)(B), where Congress juxtaposed "injury" to property with "economic losses resulting from destruction of" property. In this context, the word "injury" must involve physical injury, as opposed to purely economic losses, or else the provision would be rendered nonsensical. If plaintiffs were correct, then § 2702(b)(2)(B) would allow recovery for economic losses to property *and* economic losses resulting from the "destruction" of property, which would render the latter authorization superfluous. Indeed, the provision underscores that Congress knew how to distinguish between "injury" to property and "economic losses," and therefore obviously intended "injury" to mean something other than "economic loss." Congress could have written § 2702(b)(2)(B) to encompass all forms of economic loss, but did not do so. As written, the provision allows a plaintiff to recover "economic losses" *only* insofar as they result from the "destruction" of real or personal property. This Court has no warrant to depart from the statute's plain language.[1]

*Second*, plaintiffs cannot avoid the case law supporting this common-sense interpretation of § 2702(b)(2)(B). As the PSC concedes, a court within this district has interpreted that provision precisely as BP proposes. *See* PSC Opp. 6 (citing *Sekco*, 820 F. Supp. at 1015). The PSC, however, asserts that *Sekco*'s determination that the plaintiff there could not recover under § 2702(b)(2)(B) "is *dictum*" because the court also held that the plaintiff might be able to recover

---

[1] It is telling that plaintiffs misquote the relevant statutory language in the very heading of their brief addressing it. *See* PSC Opp. 3 ("Section 2702(b)(2)(B) of OPA Creates a Statutory Claim for 'Economic Losses' to 'Real Property' Without Requiring Physical Contact.") (bolding omitted). As noted in the text, § 2702(b)(2)(B) does *not* allow plaintiffs to recover damages for "economic losses" to "real property" as a general matter. Rather, the provision allows plaintiffs to recover damages for "economic losses" to "real property" *only* to the extent that they allege and prove "destruction" of the property.

under a ***different*** section of OPA, § 2702(b)(2)(E).  PSC Opp. 7.  That assertion is incorrect. *Dictum* consists of judicial reasoning that does not affect a court's bottom line.  The *Sekco* court's interpretation of § 2702(b)(2)(B) ***did*** affect its bottom line—the court granted defendants summary judgment with respect to claims arising under that provision.  The fact that the court allowed claims to proceed under ***another*** provision does not render that reasoning *dictum*.

Nor can plaintiffs distinguish the Fifth Circuit's decision in *Taira Lynn*.  As the Fifth Circuit explained in that case, "[i]n order to recover under § 2702(b)(2)(B) a plaintiff must show that her property was damaged as a result of a release or threatened release of oil," and the plaintiffs in that case (who alleged purely economic losses) "are not entitled to recover under § 2702(b)(2)(B)" because they "have not raised an issue of fact as to whether the gaseous cargo caused damage to their property." 444 F.3d at 382.  Accordingly, the Fifth Circuit reversed the district court's denial of the defendants' motion for summary judgment with respect to plaintiffs' claims under § 2702(b)(2)(B).  *Taira Lynn* thus underscores that plaintiffs cannot recover for purely economic losses under § 2702(b)(2)(B) in the absence of physical damage to, or the destruction of, their property.

***Third***, plaintiffs fail to distinguish the cases cited by BP construing analogous statutory provisions to require physical injury.  Plaintiffs try to distinguish *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127 (10th Cir. 2010), on the ground that the statute at issue there used the term "damage" instead of "injury." *See* PSC Opp. 8.  But, if anything, the word "damage" is more, not less, expansive than the word "injury."  And the Tenth Circuit drew no distinction between "damage" and "injury," holding that "[d]iminution of value … cannot establish the fact of ***injury*** or ***damage***." 618 F.3d at 1141 n.12; *see also Taira Lynn*, 444 F.3d at 382 (using the term "damage" as a synonym for "injury" in § 2702(b)(2)(B)).  That point applies here too: a

diminution in property value represents a measure of *damages* for a legally cognizable injury, but is not a legally cognizable injury in its own right. *See also Adams v. Star Enter.*, 51 F.3d 417, 425 (4th Cir. 1995); *Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 829 (5th Cir. 1993). Plaintiffs identify nothing in § 2702(b)(2)(B) to suggest that Congress intended to depart from this general background rule.

Plaintiffs err by relying on two cases involving the Trans-Alaska Pipeline Authorization Act (TAPAA), 43 U.S.C. § 1653(c)(1), to support their interpretation of "injury" under § 2702(b)(2)(B) of OPA. *See* PSC Opp. 9-10 (citing *Slaven v. BP America, Inc.*, 786 F. Supp. 853 (C.D. Cal. 1992), and *In re Glacier Bay*, 746 F. Supp. 1379 (D. Alaska 1990)). Although cases interpreting TAPAA may be instructive in interpreting OPA where the text of the two statutes is similar, *see* BP Reply in Support of Mot. to Dismiss BP Dealer Claims at 6-7 & n.1, the relevant language of the statutes differs on this issue. TAPAA (unlike OPA) does not juxtapose "injury" to property with "economic losses resulting from destruction of" property. Indeed, the statutory provision at issue in *Slaven* and *Glacier Bay* permitted recovery for "all damages," not merely "injury to property" or "damage to property," 43 U.S.C. § 1653(c)(1), and both *Slaven* and *Glacier Bay* based their analysis on that specific statutory language, *see* 786 F. Supp. at 858; 784 F. Supp. at 1384-85. In any event, it is not even clear that the *dicta* on which plaintiffs rely remains good law in light of *Benefiel v. Exxon Corp.*, 959 F.2d 805 (9th Cir. 1992), in which the Ninth Circuit subsequently held that "we are confident that Congress in enacting TAPAA did not intend to abrogate all principles of proximate cause." *Id.* at 807.

### B. The Pure Stigma Claims Fail As A Matter Of Law Under § 2702(b)(2)(E).

The Pure Stigma Claims also fail as a matter of law under § 2702(b)(2)(E) of OPA, which authorizes "any claimant" to recover damages for "the loss of profits or impairment of

earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources." 33 U.S.C. § 2702(b)(2)(E).  As BP explained in its motion to dismiss, claims for unrealized diminution of real property value involve neither a "loss of profits" nor "impairment of earning capacity."  Congress could have authorized damages for diminished property value, but did not, consistent with its goal of imposing strict but limited liability under OPA.

Again, plaintiffs' various responses to that straightforward point fail as a matter of law.

***First***, plaintiffs assert that "BP argues that property owners are different from business owners because their asset (land) does not have 'earning capacity' or 'profits.'"  PSC Opp. 12.  But BP's opening brief advanced no such argument—which may explain why plaintiffs neither cite nor quote that brief.  Rather, BP simply made the common-sense point that an unrealized diminution in property value does not qualify, as a matter of law, as a "loss of profits" or "impairment of earning capacity."  By definition, before real property is sold, there can be no "profits" to be lost.[2]  And an unrealized diminution of property value does not impair "earning capacity"—with the possible exception of a claimant who earns a living selling property, in which case he would not be bringing a Pure Stigma Claim, but rather a lost earnings claim.

***Second***, plaintiffs observe that courts have "allow[ed] business owners to establish lost profits and impairment of earnings 'capacity,'" and argue that "[p]roperty holders should not be held to a higher standard."  PSC Br. 12.  But courts have allowed business owners to pursue

---

[2] Whether a homeowner who actually sold a home for a loss (unlike a Pure Stigma Claimant) could pursue a claim for "lost profits" under § 2702(b)(2)(E) is an issue beyond the scope of this briefing.  It is worth noting, in this regard, that the proposed Settlement Agreement now pending before this Court provides compensation for persons who sold real property in a designated "Real Property Sales Compensation Zone" between April 21, 2010 and December 31, 2010.  *See* Agreement (Rec. Doc. 6430-1) ¶ 5.9.2; Preliminary Approval Order (Rec. Doc. 6418), at 9.

claims under § 2702(b)(2)(E) not *because* they are "business owners," but because they have adequately alleged "lost profits" and/or "impairment of earning capacity" resulting from an oil spill.  Claims by commercial fishermen whose incomes are diminished by an oil spill are the paradigmatic example.  The PSC thus misses the point by arguing that it would be "illogical" to allow "[a] seasonal lessor of a beachfront home" to recover under § 2702(b)(2)(E) but deny recovery to "her next-door neighbor who lives in, but does not rent out her home."  PSC Opp. 13; *see also id.* (asserting that it would be "incongruous" to allow "the homeowner who sold her home for a depressed price after the spill" to recover under § 2702(b)(2)(E) but deny recovery to "her next-door neighbor who, for whatever reason did not (or could not) sell her home").  There is nothing "illogical" or "incongruous" about these results: they simply reflect Congress' decision to limit damages under that provision to "lost profits" and "impairment of earning capacity."  Needless to say, it is not the function of a court to replace the statute that Congress wrote with a more expansive one.

*Third*, plaintiffs challenge BP's reliance on a Coast Guard regulation specifying that claimants cannot recover under § 2702(b)(2)(E) for unrealized diminution in property value, and declare that the regulation "specifically contemplates compensation for diminution in value." PSC Opp. 14-15 (purporting to cite 33 C.F.R. § 136.215, but actually citing 33 C.F.R. § 136.217).  The regulation, however, provides that "[t]he *amount of compensation* allowable for damaged property" may be calculated using "[t]he difference between value of the property before and after the damage." 33 C.F.R. § 136.217(a)(2) (emphasis added).  The regulation thus underscores BP's point that a diminution in property value may be an appropriate measure of *damages* for "damaged property," but is not itself a cognizable form of *injury*.  Plaintiffs' argument only confirms that they are conflating the concept of "injury" with the appropriate

7

method of calculating damages once an injury is established.  Plaintiffs do not, and cannot, deny that the Coast Guard does not authorize damages under § 2702(b)(2)(E) for an unrealized diminution in property value.  *See, e.g.*, National Pollution Funds Center (NPFC), *Claimant's Guide: A Compliance Guide For Submitting Claims Under the Oil Pollution Act of 1990* (updated Nov. 2009), at 9, http://www.uscg.mil/npfc/docs/PDFs/urg/Ch6/ NPFCClaimantGuide.pdf (requiring a claimant to show "[h]ow you lost money from the damage to the property"); NPFC Determination on Claim No. N10036-0009, at 3 (concluding that a compensable economic loss occurs "only if the Claimant had realized *an actual financial loss* by selling the subject properties"), *available at* http://www.uscg.mil/npfc/docs/PDFs/Deepwater/ Recon/DiminutionofPropteryValuesRECON_%20Denial.pdf (emphasis added).

*Fourth*, plaintiffs argue that a Pure Stigma Claimant "who may incur *future* lost profits on a sale still has a [present] viable cause of action" under § 2702(b)(2)(E).  *Sellno* Pls.' Opp. 9 (emphasis added); *see also id.* ("Many of the Plaintiffs *may*—and very *likely* will—sustain a loss of profit …") (emphasis added).  That argument is nothing more than a semantic game.  As noted above, a plaintiff cannot have any "profits"—much less any lost profits—before making a sale. Plaintiffs' reliance on *Sekco*, *see id.*, for this proposition is misplaced: the plaintiff there alleged that it was forced to shut down its business because of an oil spill, so the court deemed the complaint to allege a "loss of profits" within the meaning of § 2702(b)(2)(E)—although notably the court ruled *against* the plaintiff on that claim for lack of causation, *see Sekco Energy, Inc. v. M/V Margaret Chouest*, No. 92-420, 1993 WL 322942, at *6 (E.D. La. Aug. 13, 1993).

**II.     The Pure Stigma Claims Fail As A Matter Of Law Under Both Federal Maritime Law And State Law.**

The PSC expressly agrees with BP that "OPA provides the *only* potential cause of action" for the Pure Stigma Claims, because "[t]his Court has dismissed state-law claims (as 'preempted

8

by maritime law') as well as general maritime law claims 'that do not allege physical damage to a proprietary interest.'"  PSC Opp. 2 (emphasis added; quoting B1 Order (Rec. Doc. 3830), at 38); *see also id.* at 10 ("'[T]he plain language of the statute indicates its mandatory and exclusive nature with respect to its covered damages.'") (quoting *Gabarick v. Laurin Mar. Inc.*, 623 F. Supp. 2d 741, 746 (E.D. La. 2009)).  The *Sellno* plaintiffs, however, now seek to re-litigate these issues, arguing that they should be allowed to pursue the Pure Stigma Claims under both federal maritime law and state common law.  Their arguments are baseless.

As an initial matter, this Court need not and should not entertain these arguments in the first place.  The *Sellno* plaintiffs' brief represents nothing more than a disguised and improper attempt to seek reconsideration of this Court's previous rulings.  The orderly adjudication of these sprawling MDL proceedings requires adherence to the procedural framework established by this Court.  Under that framework, the Court authorized the PSC, among other things, to "oppose when necessary any motions submitted by the defendant."  PTO #8 (Rec. Doc. 506), at 3.  Individual plaintiffs are supposed to operate through the PSC, not to submit individual briefs whenever they are so inclined.  To the extent that individual plaintiffs and the PSC may not see eye-to-eye on a particular issue, individual plaintiffs may file a separate brief ***only*** if they "include a certificate of non-support" by the PSC.  PTO #11 (Rec. Doc. 569), at 13.  The *Sellno* plaintiffs' brief includes no such certificate, and no indication that those plaintiffs raised their grievances or coordinated their filing with the PSC.

In any event, the *Sellno* plaintiffs' arguments fail on the merits.  They first contend that the *Robins Dry Dock* rule of federal maritime law does not apply to intentional torts.  *See Sellno* Pls.' Opp. 10.  But the Pure Stigma Claims sound in negligence, which is not an intentional tort. *See* First Am. B1 Master Compl. ¶ 621.  And while the *Sellno* complaint contains dozens of

9

references to defendants' "intentional" acts, it does not indicate what those acts are. Indeed, paragraph 44 of that complaint makes clear that the claims sound in negligence. *See* Compl. (Rec. Doc. 1) ¶ 44, *Sellno v. BP Exploration & Prod., Inc.*, No. 2:11-cv-00925 (E.D. La. Apr. 20, 2011). Needless to say, unadorned assertions of intentional conduct are insufficient to defeat a Rule 12 motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotation omitted).

In addition, the *Sellno* plaintiffs contend that *Robins Dry Dock* was overruled by 1986 amendments to the Superfund statute. As this Court explained in its B1 Order, however, "[t]he Fifth Circuit has continuously reaffirmed the straightforward application of the *Robins Dry Dock* rule." B1 Order 19 (citing three Fifth Circuit cases that post-date these amendments). And the PSC agrees that *Robins Dry Dock* retains force. *See* PSC Dealer Opp. (Rec. Doc. 7096), at 7.

Finally, the *Sellno* plaintiffs contend that state law may apply to their claims. But this issue also has been resolved by the B1 Order. *See* B1 Order 18 (holding that federal law preempts state law in this area, and renders it "inapplicable to this case"). If the *Sellno* plaintiffs disagreed with the B1 Order, they should have asked the PSC to take the matter up with the Court then or otherwise moved for reconsideration. They did not. At this late stage of this MDL litigation, an opposition brief to BP's motion to dismiss a narrow band of claims outside the scope of the Settlement Agreements is the wrong place to advance such a sweeping claim.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Pure Stigma Claims for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

August 31, 2012                                      Respectfully submitted,

Richard C. Godfrey, P.C.                             */s/ Don K. Haycraft*
J. Andrew Langan, P.C.                               Don K. Haycraft (Bar #14361)
Wendy L. Bloom                                       R. Keith Jarrett (Bar #16984)
Kirkland & Ellis LLP                                 Liskow & Lewis
300 North LaSalle Street                             701 Poydras Street, Suite 5000
Chicago, IL 60654                                    New Orleans, Louisiana 70139-5099
Telephone: 312-862-2000                              Telephone: 504-581-7979
Facsimile: 312-862-2200                              Facsimile: 504-556-4108

Christopher Landau, P.C.
Jeffrey Bossert Clark                                C. "Mike" Brock
Aditya Bamzai                                        Covington & Burling LLP
Kirkland & Ellis LLP                                 1201 Pennsylvania Avenue, NW
655 Fifteenth Street, N.W.                           Washington, DC 20004-2401
Washington, D.C. 20005                               Telephone: 202-662-5985
Telephone: 202-879-5000                              Facsimile: 202-662-6291
Facsimile: 202-879-5200

*Attorneys for BP Exploration & Production Inc., BP America Production Company, and BP p.l.c.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 31st day of August 2012.

           */s/ Don K. Haycraft*
           Don K. Haycraft