# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, | *<br>*   MDL No. 2179<br>*<br>*   Section: J |
| This Pleading applies to: | *<br>*   Judge Barbier<br>* |
| *MDL 2179 B1 Amended Master Complaint And All Cases In Pleading Bundle B1* | *   Magistrate Judge Shushan<br>*<br>* |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## BP'S REPLY IN SUPPORT OF
## MOTION TO DISMISS RECREATION CLAIMS

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone:  312-862-2000
Facsimile:  312-862-2200

Christopher Landau, P.C.
Jeffrey Bossert Clark
Aditya Bamzai
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  202-879-5000
Facsimile:  202-879-5200

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone:  504-581-7979
Facsimile:  504-556-4108

C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
Telephone:  202-662-5985
Facsimile:  202-662-6291

*Attorneys for BP Exploration & Production Inc., BP America Production Company, and BP p.l.c.*

August 31, 2012

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT..........................................................................................................................2

I.      The Recreation Claims Fail As A Matter Of Law Under OPA. .........................................2

II.     The Recreation Claims Fail As A Matter Of Law Under Both Federal Maritime Law And State Law.........................................................................................4

CONCLUSION......................................................................................................................7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................ 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................ 6

*Carbone v. Ursich*,
  209 F.2d 178 (9th Cir. 1954) ................................................................................................... 6

*Kelly v. Porter, Inc.*,
  687 F. Supp. 2d 632 (E.D. La. 2010) ...................................................................................... 6

*State of Louisiana ex rel. Guste v. M/V Testbank*,
  752 F.2d 1019 (5th Cir. 1985) (*en banc*) ................................................................................. 6

*The Conqueror*,
  166 U.S. 110 (1897) ................................................................................................................ 6

**Statutes, Regulations, and Rules**

33 C.F.R. § 136.233 ..................................................................................................................... 3

33 C.F.R. § 136.235 ..................................................................................................................... 3

33 U.S.C. § 2702(b)(2)(A) ........................................................................................................... 2

33 U.S.C. § 2702(b)(2)(B) ........................................................................................................... 2

33 U.S.C. § 2702(b)(2)(C) ........................................................................................................... 2

33 U.S.C. § 2702(b)(2)(E) ................................................................................................... 2, 3, 4

Fed. R. Civ. P. 12 ......................................................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 7

**Other Authorities**

National Pollution Funds Center,
  *Claimant's Guide:*
  *A Compliance Guide For Submitting Claims Under the Oil Pollution Act of 1990*
  (updated Nov. 2009),
  http://www.uscg.mil/npfc/docs/PDFs/urg/Ch6/NPFCClaimantGuide.pdf ............................... 3

Schoenbaum, Thomas, J.,
  *Admiralty & Maritime Law*  (rev. ed. 2011) .......................................................................... 7

## INTRODUCTION

Plaintiffs make no serious attempt to defend against dismissal of the Recreation Claims, *i.e.*, "claims by or on behalf of recreational fishermen, recreational divers, beachgoers, recreational boaters, etc., that they have suffered damages that include loss of enjoyment of life from the inability to use portions of the Gulf of Mexico *for recreation and amusement purposes*." 6/12/12 Order (Rec. Doc. 6657), at 1 (emphasis added; citing First Am. B1 Master Compl. (Rec. Doc. 1128) ¶¶ 158, 209(e)). The PSC's 5-page opposition brief says **nothing whatsoever** in defense of those Recreation Claims that do not involve any alleged economic loss. And, with respect to the Recreation Claims that do entail some alleged economic loss, plaintiffs simply assert in general terms, without any analysis of the language of OPA's specific damages provisions, that "BP is unquestionably liable under OPA to those who suffered monetary loss as a result of the oil spill." PSC Opp. (Rec. Doc. 7094), at 3.

The Recreation Claimants cannot avoid dismissal of their claims on the basis of such generalities divorced from OPA's text. As BP explained in its opening brief, OPA imposes strict but limited liability upon the party or parties responsible for an oil spill; contrary to plaintiffs' suggestion, the statute does not authorize damages for *any and all* economic losses allegedly caused by the spill. The problem for the Recreation Claimants is that nothing in OPA authorizes damages for lost recreational opportunities, regardless of whether those lost opportunities in turn resulted in economic losses. And because OPA provides the sole basis for recovery here, the Recreation Claimants' failure to state a claim under OPA means that the Recreation Claims must be dismissed as a matter of law.

## ARGUMENT

**I.     The Recreation Claims Fail As A Matter Of Law Under OPA.**

As BP explained in its opening brief, the Recreation Claims fall into two categories: (1) the "Loss of Enjoyment" Claims, which simply allege that the oil spill deprived plaintiffs of recreational opportunities that they enjoy, and (2) the "Loss of Deposit" Claims, which allege that the oil spill not only deprived plaintiffs of recreational opportunities that they enjoy but also resulted in the loss of non-refundable monetary deposits made in anticipation of these enjoyable activities.  *See* BP Mem. (Rec. Doc. 6894-1), at 10-13 (distinguishing "Loss of Enjoyment Claims" from "Loss of Deposit" Claims).

Plaintiffs make no effort whatsoever to defend against dismissal of the "Loss of Enjoyment" Claims under OPA.  That is not surprising: as BP noted in its opening brief, such Claims do not remotely fit within any category of damages that may be recovered by private parties under OPA.  *See* BP Mem. 10-11.  If anything, such Claims represent an unwarranted attempt by private parties to recover damages under OPA for injuries to natural resources, which may be recovered only by public trustees.  *See* 33 U.S.C. § 2702(b)(2)(A).

Plaintiffs thus devote their efforts entirely to defending against dismissal of the "Loss of Deposit" Claims.  *See* PSC Opp. 2-5.  But, as BP explained in its opening brief, such Claims do not fall within any of OPA's three provisions authorizing private parties to recover damages, Sections 2702(b)(2)(B), (C), and (E).  In response, plaintiffs make no effort whatsoever to defend the "Loss of Deposit" Claims under either Sections 2702(b)(2)(B) or (C).  To the contrary, they argue ***only*** that such Claims may proceed under Section 2702(b)(2)(E), which authorizes "any claimant" to recover damages for "'the loss of profits or impairment of earning capacity due to

2

the injury, destruction, or loss of real property, personal property, or natural resources.'" PSC Opp. 2 (quoting 33 U.S.C. § 2702(b)(2)(E)).

In particular, plaintiffs argue that, to recover under this provision, they need not own the property or resources in question. *See* PSC Opp. 2. That argument misses the point. Regardless of whether plaintiffs owned the property or resources in question, they can only recover damages under Section 2702(b)(2)(E) for a "loss of profits" or an "impairment of earning capacity." Plaintiffs make no effort to explain how a lost deposit resulting from the cancellation of anticipated recreational opportunities qualifies as a "loss of profits" or an "impairment of earning capacity." By definition, plaintiffs were not anticipating any "profits" or "earning[s]" from their recreational activities, and a monetary deposit made in anticipation of such activities was an ***expense*** to them, not a ***profit*** or an ***earning***. The relevant Coast Guard regulations only confirm the point by requiring claimants to identify losses to their "income," "profits," or "earnings." *See* 33 C.F.R. §§ 136.233, 136.235; *see generally* National Pollution Funds Center, *Claimant's Guide: A Compliance Guide For Submitting Claims Under the Oil Pollution Act of 1990* (updated Nov. 2009), at 10, http://www.uscg.mil/npfc/docs/PDFs/urg/Ch6/NPFCClaimantGuide.pdf.

Plaintiffs do not dispute any of the foregoing, and make no attempt to square their claims with the plain language of the statute. Rather, they simply insist without elaboration that OPA covers "the claims of plaintiffs who suffered actual economic loss as a consequence of the oil spill," including "[p]laintiffs … who lost deposits on temporary housing or leisure activities." PSC Opp. 2. In support of these general statements, they cite similarly general statements from the legislative history and case law for the proposition that OPA authorizes private parties to recover damages for economic losses. But none of these authorities suggests that OPA

3

authorizes private parties to recover damages for *any and all* economic losses.  To the contrary, the statute sets forth *specific* categories of damages that may be recovered, and economic losses resulting from the inability to engage in anticipated recreational activities are not among them.

Nor is it true that the validity of the Recreation Claims depends on "differing factual scenarios."  PSC Opp. 3.  As ostensible examples, plaintiffs identify "recreational fishermen who sell their catch" or "recreational fishermen who engage in commercial fishing."  PSC Opp. 3-4.  But these examples do not involve Recreation Claims at all.  By definition, claims for compensation by fishermen who "sell their catch" or "engage in commercial fishing" are not Recreation Claims.  A commercial fisherman who is unable to sell his catch presumably can state claims for "loss of profits" and/or "impairment of earning capacity," 33 U.S.C. § 2702(b)(2)(E), and thus stands in a totally different position under the statute than a recreational fisherman who is merely unable to engage in an enjoyable activity.  Because claims seeking damages for loss of recreational opportunities are categorically beyond OPA's scope, no "development of the factual circumstances underlying Plaintiffs' claims," PSC Opp. 3, is necessary for this Court to dismiss the Recreation Claims as a matter of law.

## II.   The Recreation Claims Fail As A Matter Of Law Under Both Federal Maritime Law And State Law.

The PSC expressly agrees with BP that "OPA provides the *only* potential cause of action" for the Recreation Claims, because "[t]his Court has dismissed state-law claims (as 'preempted by maritime law') as well as general maritime law claims 'that do not allege physical damage to a proprietary interest.'"  PSC Stigma Opp. (Rec. Doc. 7095), at 2 (emphasis added; quoting B1 Order (Rec. Doc. 3830), at 38).  The *Sellno* plaintiffs, however, now seek to re-litigate these issues, arguing that they should be allowed to pursue the Recreation Claims under both federal maritime law and state common law.  Their arguments are unavailing.

4

As an initial matter, this Court need not and should not entertain these arguments in the first place.  The *Sellno* plaintiffs' brief represents nothing more than a disguised and improper attempt to seek reconsideration of this Court's previous rulings.  The orderly adjudication of this sprawling MDL proceeding requires adherence to the procedural framework established by this Court.  Under that framework, the Court authorized the PSC, among other things, to "oppose when necessary any motions submitted by the defendant."  PTO #8 (Rec. Doc. 506), at 3. Individual plaintiffs are supposed to operate through the PSC, not to submit individual briefs whenever they are so inclined.  To the extent that individual plaintiffs and the PSC may not see eye-to-eye on a particular issue, individual plaintiffs may file a separate brief *only* if they "include a certificate of non-support" by the PSC.  PTO #11 (Rec. Doc. 569), at 13.  The *Sellno* plaintiffs' brief includes no such certificate, and no indication that those plaintiffs raised their grievances or coordinated their filing with the PSC.

In any event, the *Sellno* plaintiffs' arguments fail on the merits.  They first contend that the *Robins Dry Dock* rule of federal maritime law does not apply to intentional torts.  *See Sellno* Pls. Opp. (Rec. Doc. 7099), at 10-11.  But the Recreation Claims sound in negligence, which is not an intentional tort.  *See* First Am. B1 Master Compl. ¶ 618.  And while the *Sellno* complaint contains dozens of references to defendants' "intentional" acts, it does not indicate what those acts are.  Indeed, paragraph 44 of that complaint makes clear that the claims sound in negligence. *See* Compl. (Rec. Doc. 1) ¶ 44, *Sellno v. BP Exploration & Prod., Inc.*, No. 2:11-cv-00925 (E.D. La. Apr. 20, 2011).  Needless to say, unadorned assertions of intentional conduct are insufficient to defeat a Rule 12 motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (citation omitted; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

In addition, the *Sellno* plaintiffs ask this Court to "expand" the so-called "commercial fisherman exception" to the *Robins Dry Dock* rule "to include recreational boaters, fishermen, divers, and waterfront property owners." *Sellno* Pls. Opp. 12. That request is baseless. The policy considerations that have led some courts to recognize such an exception have no application in the context of recreational users of natural resources. *See, e.g.*, *Carbone v. Ursich*, 209 F.2d 178, 182 (9th Cir. 1954) ("This long recognized rule is no doubt a manifestation of the familiar principle that seamen are the favorites of admiralty and their **economic** interests entitled to the fullest possible legal protection.") (emphasis added). Not surprisingly, thus, the Fifth Circuit has applied the *Robins Dry Dock* rule to recreational claims. *See State of Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1021 (5th Cir. 1985) (*en banc*). Indeed, if anything, federal maritime law is particularly **hostile** to claims of lost recreational opportunities. *See The Conqueror*, 166 U.S. 110, 133-34 (1897). The *Sellno* plaintiffs simply err by asserting that *The Conqueror* did not involve recreational claims. *Compare Sellno* Pls. Opp. 14 n.10 ("That case … involved recovery of lost profits or repairs for a **commercial** vessel.") (emphasis in original) *with The Conqueror*, 166 U.S. at 133-34 ("The Conqueror, however, did not belong to the class of vessels which are engaged in commercial pursuits, or are ordinarily let to hire. There is doubtless a class of pleasure boats that are let for excursions, and become a source of pecuniary profit to their owners; but The Conqueror did not belong to that class."); *see also Kelly v. Porter, Inc.*, 687 F. Supp. 2d 632, 637 (E.D. La. 2010) ("[U]nder federal maritime law loss of use of a private pleasure boat is not a compensable item of damage.") (alteration and internal quotation

6

mark omitted); 2 Thomas J. Schoenbaum, *Admiralty & Maritime Law* § 14-6 n.32 (rev. ed. 2011) ("There is no compensation for loss of use of a pleasure boat.")

The *Sellno* plaintiffs also contend that *Robins Dry Dock* was overruled by 1986 amendments to the Superfund statute. As this Court explained in its B1 Order, however, "[t]he Fifth Circuit has continuously reaffirmed the straightforward application of the *Robins Dry Dock* rule." B1 Order 19 (citing three Fifth Circuit cases that post-date these amendments). And the PSC agrees that *Robins Dry Dock* retains force. *See* PSC Dealer Opp. (Rec. Doc. 7096), at 7.

Finally, the *Sellno* plaintiffs contend that state law may apply to their claims. Yet this issue has also been resolved by the B1 Order's maritime-law preemption holding. *See* B1 Order 18 (holding that federal law preempts state law in this area, and renders it "inapplicable to this case"). If the *Sellno* plaintiffs disagreed with the B1 Order, they should have asked the PSC to take the matter up with the Court then or otherwise moved for reconsideration. They did not. At this stage of this MDL proceeding, an opposition brief to BP's motion to dismiss a narrow band of claims outside the scope of the Settlement Agreements is the wrong place to advance such a sweeping claim.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Recreation Claims for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

August 31, 2012                                         Respectfully submitted,

Richard C. Godfrey, P.C.                                */s/ Don K. Haycraft*
J. Andrew Langan, P.C.                                  Don K. Haycraft (Bar #14361)
Wendy L. Bloom                                          R. Keith Jarrett (Bar #16984)
Kirkland & Ellis LLP                                    Liskow & Lewis
300 North LaSalle Street                                701 Poydras Street, Suite 5000
Chicago, IL 60654                                       New Orleans, Louisiana 70139-5099
Telephone:  312-862-2000                                Telephone:  504-581-7979
Facsimile:  312-862-2200                                Facsimile:  504-556-4108

Christopher Landau, P.C.                                C. "Mike" Brock
Jeffrey Bossert Clark                                   Covington & Burling LLP
Aditya Bamzai                                           1201 Pennsylvania Avenue, NW
Kirkland & Ellis LLP                                    Washington, DC 20004-2401
655 Fifteenth Street, N.W.                              Telephone:  202-662-5985
Washington, D.C. 20005                                  Facsimile:  202-662-6291
Telephone:  202-879-5000
Facsimile:  202-879-5200

*Attorneys for BP Exploration & Production Inc., BP America Production Company, and BP p.l.c.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 31st day of August 2012.

                                              */s/ Don K. Haycraft*
                                              Don K. Haycraft