# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, | *  *  *  MDL No. 2179  *  *  Section: J |
| This Pleading applies to: | *  *  Judge Barbier  * |
| *MDL 2179 B1 Amended Master Complaint And All Cases In Pleading Bundle B1* | *  Magistrate Judge Shushan  *  * |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## BP'S REPLY IN SUPPORT OF
## MOTION TO DISMISS BP DEALER CLAIMS

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL  60654
Telephone:  312-862-2000
Facsimile:  312-862-2200

Corey C. Watson
Kevin M. Askew
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, CA  90071
Telephone: 213-680-8400
Facsimile: 213-680-8500

Christopher Landau, P.C.
Jeffrey Bossert Clark
Aditya Bamzai
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, DC  20005
Telephone:  202-879-5000
Facsimile:  202-879-5200

Don K. Haycraft (Bar #14361)
R. Keith Jarrett (Bar #16984)
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, LA  70139-5099
Telephone:  504-581-7979
Facsimile:  504-556-4108

C. "Mike" Brock
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
Telephone:  202-662-5985
Facsimile:  202-662-6291

*Attorneys for BP Exploration & Production Inc., BP America Production Company, and BP p.l.c.*

August 31, 2012

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT.........................................................................................................................2

I.       The BP Dealer Claims Fail As A Matter Of Law Under OPA............................................2

II.      The BP Dealer Claims Fail As A Matter Of Law Under General Federal Maritime Law. ..................................................................................................................................8

III.    The BP Dealer Claims Fail As A Matter Of Law Under State Law...................................9

CONCLUSION.....................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adkins v. Trans-Alaska Pipeline Liab. Fund*,
    101 F.3d 86 (9th Cir. 1996) ................................................................................................ 7

*Allen v. Wright*,
    468 U.S. 737 (1984) ........................................................................................................... 5

*Benefiel v. Exxon Corp.*,
    959 F.2d 805 (9th Cir. 1992) ............................................................................................. 7

*In re Taira Lynn Marine Ltd. No. 5, LLC*,
    444 F.3d 371 (5th Cir. 2006) ......................................................................................... 4, 6

*Phoenix of Broward, Inc. v. McDonald's Corp.*,
    489 F.3d 1156 (11th Cir. 2007) ......................................................................................... 5

*Robins Dry Dock & Repair Co. v. Flint*,
    275 U.S. 303 (1927) ........................................................................................................... 9

*Sekco Energy, Inc. v. M/V Margaret Chouest*,
    820 F. Supp. 1008 (E.D. La. 1993) ................................................................................... 4

**STATUTES, REGULATIONS, AND RULES**

33 U.S.C. § 2702(b)(2)(B) .................................................................................................... 3, 4

33 U.S.C. § 2702(b)(2)(E) ................................................................................................. 3, 5, 7

43 U.S.C. § 1332(2) ................................................................................................................ 10

43 U.S.C. § 1333(a)(1) ............................................................................................................ 10

43 U.S.C. § 1653(c)(1) .............................................................................................................. 7

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 10

## INTRODUCTION

The opposition briefs filed by the PSC and the *Tobatex* plaintiffs try to avoid dismissal of the BP Dealer Claims by changing the subject. This Court's order directing the parties to brief the legal validity of these Claims defines them as follows: "[C]laims by or on behalf of entities marketing BP-branded fuels that they have suffered damages, including loss of business, income, and profits, *as a result of the loss of value to the 'BP' brand or name*." 6/12/12 Order (Rec. Doc. 6657), at 1 (emphasis added; citing First Am. B1 Master Compl. (Rec. Doc. 1128) ¶¶ 209(m), 625; Compl. (Rec. Doc. 1) ¶¶ 35-36, *Tobatex, Inc. v. BP, plc*, No. 10-4573 (E.D. La. Dec. 16, 2010)). Such claims, as the Court's briefing order further explains, are based on alleged "'animosity, hatred and ill will *by the consuming public* toward the BP name and logo' allegedly caused by the oil spill and allegedly resulting in a 'decrease in purchases of motor fuel and other consumer products.'" *Id.* at 1-2 (emphasis added; quoting *Tobatex* Compl. ¶¶ 35-36). BP's motion to dismiss the BP Dealer Claims, accordingly, addressed *only* such claims of economic losses resulting from alleged consumer animosity toward the BP brand in the wake of the *Deepwater Horizon* incident, not any and all claims for economic losses by BP dealers.

Plaintiffs, however, try to shift the focus away from the BP Dealer Claims as defined by this Court and addressed in BP's motion to dismiss. Instead, they focus on claims "that BP Dealers in the Gulf and Southeastern States lost revenue *as a direct result of the decline in tourism* caused by the damage of the oil spill." PSC Opp. (Rec. Doc. 7096), at 8 (emphasis added). They then argue that this motion requires the Court to resolve far-reaching legal issues relating to economic-loss claims by businesses throughout the Gulf area; as plaintiffs put it, "a hypothetical BP gas station located on Gulf Shores Parkway in Fort Morgan, Alabama should be treated no differently with respect to economic losses due to declines in tourism than a hypothetical Shell station located right across the street." *Id.* at 16; *see also id.* at 12 (asserting

that "claims by BP gas stations in, say, Venice, Louisiana, or Gulf Shores, Alabama, or Destin, Florida" are no different than claims by "other service stations and convenience stores along the Gulf Coast"). The short answer to that argument is that this motion does not encompass claims for tourism-related economic losses. To the contrary, as noted above, both the Court's briefing order and BP's motion to dismiss apply only to claims of economic loss by BP dealers ***based on alleged consumer animosity toward the BP brand*** in the wake of the oil spill. Dismissal of such claims does not depend on where the BP dealer is located. If consumer-animosity claims are not legally tenable, then dismissal of such claims is equally warranted for a BP dealer in Fort Morgan, Alabama, or Bozeman, Montana. Thus, it is simply not true, as the PSC asserts, that "[t]his Court is not dealing here with consumer choices as to where to buy gasoline in Montana—at a BP or a Shell station." *Id.* at 9. That is ***precisely*** what this Court is dealing with here. And because such claims based on alleged consumer animosity fail as a matter of law, regardless of whether the plaintiff is "the BP jobber in Alaska, the BP wholesaler in Georgia, the BP service station in Biloxi, [or] the BP dealer in Tampa," PSC Opp. 2, this Court should grant BP's motion to dismiss the BP Dealer Claims.

**ARGUMENT**

Once the scope of the BP Dealer Claims at issue here is properly understood, most of plaintiffs' arguments in opposition to the motion to dismiss fall away. As a matter of law, claims by BP dealers based on consumer animosity toward the BP brand fail under (1) OPA, (2) general federal maritime law, and (3) state common law. Each of these sources of law is discussed in turn below.

**I.     The BP Dealer Claims Fail As A Matter Of Law Under OPA.**

As BP explained in its motion to dismiss, the only category of OPA damages that could even "conceivably apply to the BP Dealer Claims" is the provision allowing private parties to

2

recover "[d]amages equal to the loss of profits or impairment of earning capacity *due to* the injury, destruction, or loss of real property, personal property, or natural resources."  BP Mem. (Rec. Doc. 6893-1), at 7 (emphasis added; quoting 33 U.S.C. § 2702(b)(2)(E)).  Remarkably, plaintiffs do not even defend the BP Dealer Claims (as defined by this Court) under that provision.  Rather, they defend those Claims *only* under the different OPA provision authorizing damages "'for injury to, or economic losses resulting from destruction of real or personal property, which shall be recoverable by a claimant who owns or leases that property.'"  PSC Opp. 11-12 (quoting 33 U.S.C. § 2702(b)(2)(B)).  (Plaintiffs rely on § 2702(b)(2)(E) only with respect to claims for economic losses allegedly resulting from a decline in tourism in the Gulf area and the Southeastern United States, *see id.* at 8-10, which—as explained above—are not the subject of this motion.)

While plaintiffs are obviously free to invoke whatever provision of OPA they choose, their reliance on § 2702(b)(2)(B) to defend their "consumer animosity" claims is manifestly unavailing.  According to plaintiffs, "[t]he BP dealer claimants (irrespective of their geographic locations) have … alleged economic losses caused by injury to the BP Brand cognizable under subsection 2702(b)(2)(B)."  PSC Opp. 11.  The plain language of § 2702(b)(2)(B), however, does not authorize damages for any and all alleged "economic losses."  Rather, as noted above, that provision authorizes *only* damages for "injury to, or economic losses resulting from destruction of, real or personal property" by a claimant "who owns or leases that property."  Plaintiffs make no effort to identify the requisite "injury to" "real or personal property" that they own or lease, much less "economic losses resulting from destruction of" such property.

Presumably, from their description of their claims, plaintiffs are invoking "the BP Brand" as the relevant property.  PSC Opp. 11.  Even assuming *arguendo* that the dealers' intangible

3

contractual right to use the BP brand qualifies as "personal property" that they are deemed to "lease" within the meaning of that provision—a proposition that plaintiffs do not support— claims of economic losses resulting from consumer animosity toward a brand do not involve "injury to, or economic losses resulting from destruction of" the brand. As BP has explained in greater detail in its motions to dismiss the "recreation" and "pure stigma" claims, the word "injury" in this context can only be construed sensibly to mean *physical* injury.

By its plain terms, after all, § 2702(b)(2)(B) juxtaposes "injury" to real or personal property with "economic losses resulting from destruction of" such property. Thus, "economic losses" are recoverable under this provision only if the relevant real or personal property is *destroyed*. If "injury" in this context meant "economic losses," that limitation would be meaningless, because "economic losses to … real or personal property" would swallow up "economic losses resulting from the destruction of" such property. Congress knew perfectly well how to use the term "economic losses" when it wanted to refer to economic losses, and it obviously did not mean to refer to "economic losses" when it used the different term "injury" in the very same sentence. *See, e.g.*, *Sekco Energy, Inc. v. M/V Margaret Chouest*, 820 F. Supp. 1008, 1015 (E.D. La. 1993) ("The Court reads 'injury' [in § 2702(b)(2)(B)] to mean physical injury; 'injury' does not encompass economic loss because where Congress intended recovery for 'loss,' it specifically used that word."); *see also In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 382 (5th Cir. 2006) (holding that "claimants who suffered no physical damage to a proprietary interest" but sought to "recover for their economic losses as a result of a maritime allision" could not sue under § 2702(b)(2)(B)). Because plaintiffs fail to indentify any real or personal property that they owned or leased that was injured or destroyed by the *Deepwater Horizon* incident, the BP Dealer Claims fail as a matter of law under § 2702(b)(2)(B).

4

Although plaintiffs do not rely on § 2702(b)(2)(E) to defend their "consumer animosity" claims, they devote much of their brief to arguing that the standard for legal causation under that provision "is substantially less than common law proximate cause." PSC Opp. 6 (bolding omitted). While plaintiffs are emphatic in asserting that the term "due to" in § 2702(b)(2)(E) does *not* refer to common-law proximate cause, *id.* at 6-7, they never explain exactly what the term *does* refer to. At times, they suggest that the alleged "lost profits" must have been "foreseeable." *Id.* at 8, 10. At other times, they appear to endorse a "substantial factor" causation test, without explaining how or why such a test would apply. *Id.* at 12.

This Court, however, need not decide any of these far-reaching causation issues to resolve this motion. Under *any* potentially applicable standard of legal causation, alleged profits lost by BP Dealers due to independent consumer decisions regarding which service station to patronize are not profits lost due to the oil spill. These independent decisions of third parties, who may select a service station for any reason or no reason at all, break any causal chain between the *Deepwater Horizon* incident and the BP dealers' alleged lost profits as a matter of law. *See, e.g.*, *Allen v. Wright*, 468 U.S. 737, 759 (1984) (holding at the motion-to-dismiss stage that plaintiffs lack Article III standing where the alleged chain of causation "involves numerous third parties" whose "independent decisions" collectively have a "significant effect" on plaintiffs' injuries); *Phoenix of Broward, Inc. v. McDonald's Corp.*, 489 F.3d 1156, 1169 (11th Cir. 2007) (holding at the motion-to-dismiss stage that Burger King lacked statutory standing to bring false-advertising claim against McDonald's in part because independent choices of third parties about where to eat rendered causal chain "tenuous, to say the least").

Indeed, if a BP dealer in Gulf Shores, Alabama, or Bozeman, Montana, could sue BP for lost profits resulting from consumer animosity toward the BP brand in the wake of the oil spill,

5

then there would be effectively *no legal limitation whatsoever* on OPA causation, and BP would be subject to liability for any and all "lost profits" that could be attributed as a *factual* ("but for") matter to the oil spill. A claim by a BP dealer in Atlanta for lost profits as a result of consumer animosity (like the claims advanced by the *Tobatex* plaintiffs) is no different in kind from a claim by a napkin manufacturer in Atlanta for lost profits as a result of reduced demand for napkins by a seafood restaurant in New York City. OPA, however, did not establish such a scheme of potentially infinite liability; to the contrary, OPA established a regime of strict but limited liability. *See, e.g.*, *Taira Lynn*, 444 F.3d at 382-83. Lines must be drawn, and wherever the precise causal line is drawn, the BP Dealer Claims are nowhere near that line. Plaintiffs have identified *no* case in which OPA has been construed to extend causation so far to claims without *any* geographical nexus to the region affected by an oil spill, and the proposed settlement here does not remotely encompass any such claims. Thus, this Court can easily dismiss the BP Dealer Claims for lack of causation without any concern about treading too close to the scope of the proposed settlement.

Plaintiffs insist, however, that this Court should find OPA's causal nexus satisfied because "the BP Defendants have a contractual branding relationship with the BP dealers." PSC Opp. 12. But that argument misses the point: this motion is not directed at contract claims. Precisely because BP and its dealers have an ongoing business relationship, BP dealers can seek to redress their grievances with BP in the context of that relationship. Indeed, as plaintiffs themselves recognize, BP has offered its dealers rebates in the wake of the *Deepwater Horizon* incident, *see* PSC Opp. 18-20—not as a matter of legal obligation but as a matter of good business sense. The business relationship between an oil company and its dealers is simply beyond the scope of the zone of interests protected by OPA. *Cf. Benefiel v. Exxon Corp.*, 959

6

F.2d 805, 807 (9th Cir. 1992) (holding that plaintiffs could not hold Exxon liable under the Trans-Alaska Pipeline Authorization Act (TAPAA), 43 U.S.C. § 1653(c)(1), for rising gas prices in the wake of the *Exxon Valdez* oil spill because plaintiffs' alleged economic injury "fall[s] outside the zone of dangers against which Congress intended to protect when it passed TAPAA"); *Adkins v. Trans-Alaska Pipeline Liab. Fund*, 101 F.3d 86, 89 (9th Cir. 1996) (holding that TAPAA does not allow lost-profits claims by "businesses who suffered losses because the impact of the oil spill on their customers caused patronage to decline," and by businesses "located outside of the geographic limits of the oil spill," because the alleged damages were "too remote because of the presence of intervening causes, such as … ***the independent decisions of prospective customers***") (emphasis added).[1]

Plaintiffs similarly miss the point by insisting that OPA allows for the recovery of "purely economic damages" for "purely economic losses." PSC Br. 4, 6 (internal quotation omitted). That argument is vastly overbroad: the statute specifically authorizes damages for *some*, but not *all*, economic losses. Thus, there is no question that the statute authorizes economic-loss damages for a fisherman who cannot earn a living for some period of time as the result of an oil spill. *See* 33 U.S.C. § 2702(b)(2)(E). But that does not mean that the statute authorizes *any and all* claims for economic losses that allegedly would not have occurred "but

---

[1] Plaintiffs try to distinguish *Benefiel* and *Adkins* on the ground that they involve "TAPAA and not OPA." PSC Br. 10; *see also id.* at 12. That point is true, but irrelevant. Contrary to plaintiffs' assertion, BP has never asserted that these TAPAA cases are "dispositive" here. *Id.* at 10. Rather, these cases illustrate the common-sense point that Congress typically does not authorize liability to its outermost factual limits, and did not authorize liability to its outermost factual limits in TAPAA, an oil-spill statute analogous in material respects to OPA. (Indeed, in their brief in opposition to BP's motion to dismiss the Pure Stigma Claims, plaintiffs themselves characterize TAPAA as a "closely analogous" statute. *See* PSC Stigma Opp. (Rec. Doc. 7095), at 9.) The TAPAA cases simply underscore that the intervening decisions of independent third parties (like consumer decisions about where to buy gas) generally break an alleged causal chain. Plaintiffs identify nothing in OPA to suggest that Congress sought to deviate from these general background rules.

for" an oil spill, no matter how attenuated the causal link. Where, as here, the alleged causal chain depends on the independent choices of thousands of individual third-party consumers across the Nation, plaintiffs cannot establish OPA causation as a matter of law.

Plaintiffs accuse BP of improperly asking this Court to resolve "triable issues of fact" in the context of a motion to dismiss. PSC Opp. 13. In particular, they assert, "[p]roposing that the cause of the BP Dealers' economic losses were [*sic*] due to the choices of individual consumers amounts to introducing alleged facts not in the pleadings." *Id.* This assertion is mystifying. By definition, as noted above, the BP Dealer Claims at issue here are limited to claims based on alleged consumer animosity toward the BP brand in the wake of the *Deepwater Horizon* incident. Such alleged animosity, in other words, is the very **premise** of these claims. **BP** is not alleging such consumer animosity; **plaintiffs** are. BP's point is simply that, even taking the plaintiffs at their word that such animosity exists (or existed), and resulted in lost profits for BP dealers, such alleged lost profits may not be recovered under OPA as a matter of law. It is telling that, despite plaintiffs' insistence that "[t]his issue presents factual questions which can only be fully examined after discovery has revealed pertinent evidence," *id.*, they fail to identify any such "factual questions." Plaintiffs cannot defeat a motion to dismiss as a matter of law by simply alluding to unspecified and legally irrelevant factual issues. Because the BP Dealer Claims fail as a matter of law under OPA, this Court should dismiss those claims.

## II. The BP Dealer Claims Fail As A Matter Of Law Under General Federal Maritime Law.

This Court has already determined that the claims in the B1 Pleading Bundle, including the BP Dealer Claims, fail under general federal maritime law to the extent they do not involve any physical injury. *See* B1 Order (Rec. Doc. 3830), at 24-25. Because the BP Dealer Claims do not involve any such injury, they fall within the scope of that ruling, and plaintiffs wisely

8

concede this point.  *See* PSC Opp. 20 (citing *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927)).

**III.**   **The BP Dealer Claims Fail As A Matter Of Law Under State Law.**

Similarly, this Court has already determined that the claims in the B1 Pleading Bundle, including the BP Dealer Claims, are governed exclusively by federal law, and thus any claims purporting to arise under state law necessarily fail as a matter of law.  *See* B1 Order, at 18 (holding that state law is "inapplicable to this case").  Thus, as BP explained in its motion to dismiss, "[t]he BP Dealer Claims must arise, if at all, under federal law."  BP Mem. 1.  The PSC does not contest this point, but the *Tobatex* plaintiffs do.  *See Tobatex* Pls. Opp. (Rec. Doc. 7097), at 8-17.

This Court need not and should not consider this argument.  The *Tobatex* plaintiffs' brief represents nothing more than a disguised and improper request for reconsideration of this Court's previous preemption ruling.  The orderly adjudication of this sprawling MDL proceeding requires adherence to the procedural framework established by this Court.  Under that framework, the Court authorized the PSC, among other things, to "oppose when necessary any motions submitted by the defendant."  PTO #8 (Rec. Doc. 506), at 3.  Individual plaintiffs are supposed to operate through the PSC, not to submit individual briefs whenever they are so inclined.  To the extent that individual plaintiffs and the PSC may not see eye-to-eye on a particular issue, individual plaintiffs may file a separate brief *only* if they "include a certificate of non-support" by the PSC.  PTO #11 (Rec. Doc. 569), at 13.  The *Tobatex* plaintiffs' brief includes no such certificate, and no indication that those plaintiffs raised their grievances or coordinated their filing with the PSC.

It is no accident that the PSC has declined to advance the state-law argument now advanced by the *Tobatex* plaintiffs. The PSC vigorously *made* that very argument at an earlier

9

stage of this litigation, and this Court, in a comprehensive opinion rendered a full *year* ago, squarely addressed and rejected it.  *See* B1 Order, at 8-18.  As this Court explained, "this case does not concern conduct within state borders," but instead concerns conduct that occurred in "the Outer Continental Shelf—an area of 'exclusive federal jurisdiction'—on waters deemed to be the 'high seas.'"  *Id.* at 12 (quoting 43 U.S.C. §§ 1332(2), 1333(a)(1)).  Accordingly, claims that seek to attach legal liability to such conduct are governed exclusively by federal law.  *See id.* at 18.

The *Tobatex* plaintiffs fail to identify any valid basis for this Court to reconsider that decision.  And given that they did not seek reconsideration of that decision within the time period set forth by the rules, it is too late for them to seek reconsideration now.  This litigation would never end if one or more individual plaintiffs could simply bypass the PSC and file briefs seeking to rehash issues that already have been carefully and conclusively resolved.  Accordingly, the BP Dealer Claims also fail under state law and must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the BP Dealer Claims for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

August 31, 2012                                    Respectfully submitted,

Richard C. Godfrey, P.C.                           */s/ Don K. Haycraft*
J. Andrew Langan, P.C.                             Don K. Haycraft (Bar #14361)
Wendy L. Bloom                                     R. Keith Jarrett (Bar #16984)
Kirkland & Ellis LLP                               Liskow & Lewis
300 North LaSalle Street                           701 Poydras Street, Suite 5000
Chicago, IL   60654                                New Orleans, LA   70139-5099
Telephone:  312-862-2000                           Telephone:  504-581-7979
Facsimile:  312-862-2200                           Facsimile:  504-556-4108

Corey C. Watson                                    C. "Mike" Brock
Kevin M. Askew                                     Covington & Burling LLP
Kirkland & Ellis LLP                               1201 Pennsylvania Avenue, NW
333 South Hope Street                              Washington, DC   20004-2401
Los Angeles, CA   90071                            Telephone:  202-662-5985
Telephone: 213-680-8400                            Facsimile:  202-662-6291
Facsimile: 213-680-8500

Christopher Landau, P.C.
Jeffrey Bossert Clark
Aditya Bamzai
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, DC   20005
Telephone:  202-879-5000
Facsimile:  202-879-5200

***Attorneys for BP Exploration & Production Inc., BP America Production Company, and BP p.l.c.***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 31st day of August 2012.


                                                     */s/ Don K. Haycraft*
                                                     Don K. Haycraft