**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig | § | Civil Action No. 10-7777 |
| "Deepwater Horizon" in the Gulf | § | |
| of Mexico, on April 20, 2010 | § | No. 2179 |
| | § | SECTION J |
| Applies to: | § | |
| 12-968 and 120-970; cases within | § | JUDGE BARBIER |
| Pleading bundles B1 and B3 | § | MAGISTRATE SHUSHAN |

**OBJECTIONS REGARDING PROPOSED**
**ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT**

## TABLE OF CONTENTS

I.    SUMMARY OF OBJECTIONS …………………………………………… 2
    A.    Objectors Object To Certification Of The Settlement Class For The
        Following Reasons …………………………………………… 2
        1.  The Rule 23 (A)(2) Commonality Requirement Is Not Met ……. 2
        2.  The Rule 23 (A)(2) Typicality Requirement Is Not Met …………. 3
        3.  The Rule 23 (A)(4) Adequacy Requirement Is Not Met …………. 3
        4.  The Rule 23 (B)(3) Predominance Requirement Is Not Met ……. 4
        5.  The Rule 23 (B)(3) Superiority Requirement Is Not Me …………. 5
    B.    Objectors Object To The Settlement For The Following Reasons .. 5
    C.    Objectors Object To A Fee Award To Class Counsel For The
        Following Reasons …………………………………………… 6

II.   OBJECTORS …………………………………………………………… 7

III.  OBJECTIONS TO CERTIFICATION OF THE SETTLEMENT CLASSES . 8
    A.    The Rule 23 Requirements For Certification ………………………. 8
    B.    Lack of Commonality ……………………………………………… 9
        1.    Class Members Did Not Suffer The Same Injury …………… 11
        2.    There Are No Common Issues Related To Federal
             Maritime Claims ……………………………………………… 11
        3.    There Are No Common Issues Related To OPA Claims ……. 12
    C.    Lack of Typicality ………………………………………………… 14
    D.    Lack of Adequate Representation ………………………………… 15
        1.    Subgroups Within The Coastal Real Property Damage
             Group ………………………………………………………… 16
             a.    Oil Vs. No Oil On Property ……………………………… 17
             b.    Past Vs. Future Damages ……………………………… 17
             c.    Sellers Vs. Current Owners …………………………… 18
        2.    Separate Subclasses For Each Of The Damage
             Categories …………………………………………………… 18
        3.    Separate Subclasses For Class Members With And Without
             Federal Maritime Claims ……………………………………… 19
        4.    The Cy Pres Component of This Settlement Is Flawed
             And Cannot be Approved ……………………………………… 19
        5.    Class Counsel Were Inadequate Representatives Because
             They Put Their Own Interests Before The Interests Of The
             Class ………………………………………………………… 22
             a.    Making The Settlement Contingent On A Fee
                  Agreement ………………………………………… 22
             b.    Making A Separate Fee Agreement …………………… 22
    E.    Lack of Predominance ……………………………………………… 23
        1.    Common Facts Will Not Predominate ………………………… 23
        2.    A Finding Of Predominance Here Would Violate Numerous
             Fifth Circuit Cases …………………………………………… 24
        3.    Reliance On The Three-Phase Trial Is Misplaced …………. 26
    F.    Lack of Superiority ………………………………………………… 27

i

1. Congress Determined That The OPA Presentment Procedure Is The Superior Method For Resolving Oil Spill Claims ……………………………………………… 27
2. Certification Of Mass Torts Claims Is Not Superior …………. 28
3. Many Class Member Claims Are Not "Negative Value Suits" .28

IV. OBJECTIONS TO THE SETTLEMENT ……………………………………… 29
A. The Settlement Fails To Recognize The Difference Between Class Members Who Suffered Physical Damage To Their Property And Those That Did Not ………………………………………………… 30
B. Coastal Real Property Claim Payments Do Not Include Any Compensation For Punitive Damage Claims ……………………… 32
C. The Settlement Fails To Recognize The Difference Between Real Property Owners Who Continue To Own The Property And Those That Sold The Property After December 31, 2010 ………………… 34
D. The Basis For Determining Damages Is Arbitrary And Capricious . 35
E. The Compensation Provided By The Settlement For Coastal Real Property Claims Is Woefully Inadequate ……………………… 37
F. The Cy Pres Component Is Impermissible …………………………… 37
G. Leaving Money On The Table ………………………………………… 38
H. CAFA Notice ……………………………………………………………… 39

V. OBJECTIONS TO CLASS COUNSEL'S FEE ………………………………… 39
A. Class Counsel Did Not Timely File The Fee Request ……………… 40
B. The Fee Is Coming From The Class Members' Recoveries ………. 42
C. The Allegation Of Negotiating The Settlement And Fees Separately ………………………………………………………………… 43
D. If Any Fee Is Awarded, It Should Be Based On The Benefit Provided To Class Members …………………………………………………………44
E. The Payment Provisions For The Attorneys' Fees Improperly Circumvents The Safeguards Of Rule 23(H) And Creates A Conflict Between The Class And Their Attorneys Who Are Now Foreclosed From Collecting Any Fee Due To Their Disloyalty ……. 45
   a. Making The Settlement Contingent On A Fee Agreement ……. 46
   b. Making A Separate Fee Agreement ……………………………… 46
   c. Demanding Payment Before Final Approval Is Ludicrous ……. 47
   d. The "Quick-Pay" Provision Creates Another Conflict …………. 49
F. No justification for a $600 million fee ………………………………… 49
   1. Fee Analysis Relating To OPA-Claim-Only Class Members …. 50
   2. Analysis As It Relates To Federal Maritime Claims Class Members ………………………………………………………………… 52
G. Joinder in Other Objections ……………………………………………… 52

VI. CONCLUSION ……………………………………………………………………… 52

## TABLE OF AUTHORITIES

## CASES

Amchem Products, Inc. v. Windsor
521 U.S. 591, 614 (1997) ……………………………………….............. 8, 15, 17, 18

Bell Atlantic v. AT&T
339 F.3d 294 (5th Cir. 2003) ……………………………….......................... 26

Burrow v. Arce
997 S.W.2d 229, 243 (Tex. 1999) …………………………........................46

Castano v. Am. Tobacco Co.
84 F.3d 734, 746-47 (5th Cir. 1996) …………………………........................ 28, 29

Dennis v. Kellogg Co.
2012 WL 2870128 (9th Cir., July 13, 2012) …………………................... 20

Devlin v. Scardelletti
53 6 U.S. 1, 7 (2002) ………………………………………........................ 7

Ehrheart v. Verizon Wireless
609 F.3d 590, 593 (3rd Cir. 2010) ……………………..…………...................... 33

Exxon Shipping Co. v. Baker
128 S. Ct. 2605, 2633 (2008) …………………………………........................37

General Telephone Co. of the Southwest v. Falcon
102 S. Ct. 2364 (1982)  ………………………………..........……................... 9, 10

Hanlon v. Chrysler Corp.
150 F.3d 1011, 1026 (9th Cir. 1998) ……………………….…..................... 29

In re Mercury Interactive Corp. Securities Litigation
618 F.3d 988, 994-995 (9th Cir. 2010) …………………….................. 33, 41, 43, 53

In re Oil Spill by Oil Rig DEEPWATER HORIZON in Gulf of Mexico,
on April 20, 2010, MDL 2179
2012 WL 569388 (E.D. La. Feb. 22, 2012) ……………………................... 12, 13

In re Pet Food Products Liability Litigation
629 F.3d 333, 350 (3rd Cir. 2010) …………………………...................... 29, 37

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions
148 F.3d 283, 316 (3d Cir. 1998) ………………………….................... 29

In Re Wells Fargo Securities Litigation
991 F.Supp. 1193, 1194-95 (N.D. Cal. 1998) ………………….................. 20

iii

In re Wireless Telephone Federal Cost Recovery Fees Litigation
396 F.3d 922, 932 (8th Cir. 2005) ………………………….......................   33

*Johnson v. Colonial Pipeline Co.*
830 F.Supp. 309, 311 (E.D. Va. 1993) ………………………....................... 27

Johnson v. Georgia Highway Express, Inc.
488 F.2d 714 (5th Cir. 1974) ………………………………….....................   49

Klier v. Elf Atochem N. Am., Inc.
658 F.3d 468 (5th Cir. 2011) …………………………………………   4, 6, 19, 21, 38

Larson v. AT&T Mobility LLC
10-1285, 2012 WL 2478376 (3d Cir. June 29, 2012) …………............................16

Literary Works in Electronic Databases Copyright Litigation v. Thomson Corp.
654 F.3d 242, 245 (2nd Cir. 2011) ………………………………....................... 15, 16

*Madison v. Chalmette Ref., L.L.C.*
637 F.3d 551 (5th Cir. 2011) ……………………………….....................   24

M.D. ex rel. Stukenberg v. Perry
675 F.3d 832, 840 (5th Cir. 2012) ………………………….................... 3, 8, 10

*Nachshin v. AOL, Inc.*
663 F.3d at 1038 (2011)  ……………………………………….....................   21

*Nagareda, Class Certification in the Age of Aggregate Proof*
84 N.Y.U.L.Rev. 97, 131–132 (2009) ……………………….......................   9, 10

Ortiz v. Fibreboard Corp.
527 U.S. 815, 856, n. 31 (1999)  ……………………….......................... 15, 18

Phillips Petroleum Co. v. Shutts
472 U.S. 797, 812 (1985) ………………………………….....................   15

Rice v. Harken Exploration Co.
250 F.3d 264, 266 (5th Cir.2001) ……………………….......................... 12

Rodriguez v. W. Pub. Corp.
CV 05-3222 R (MCX) 2010 WL 682096 (C.D. Cal. Feb. 3, 2010)  ........................ 45

Six (6) Mexican Workers v. Arizona Citrus Growers
904 F.2d at 1308 (9th Cir. 1990) …………………….......................... 21

*Steering Comm. v. Exxon Mobil Corp.*
461 F.3d 598 (5th Cir. 2006) …………………………….......................   25

Turner v. Murphy Oil USA, Inc.
2007 WL 4208986, at *2 (E.D. La. Nov.21, 2007) …………….......................... 27

*U.L. Coleman Co., Ltd v. Bossier City-Parish Metro. Planning Comm'n,*
CIV.A. 08-2011, 2009 WL 497634 (W.D. La. Feb. 26, 2009) ……...................... 35

Wal-Mart v. Dukes
131 S. Ct. 2541 (2011) …………………………………….................. 2, 8-10, 11

## CODES AND STATUTES

### UNITED STATES CODES:

28 U.S.C. § 1715 (b)      …………………………………….................. 39
28 U.S.C. § 1715 (d)      …………………………………….................. 39
33 U.S.C. § 2702 (b)(1)   …………………………………….................. 13
33 U.S.C. § 2702 (b)(2)   …………………………………….................. 13
33 U.S.C. § 2709          …………………………………….................. 28
33 U.S.C. § 2710          …………………………………….................. 28
33 U.S.C. § 2713          …………………………………….................. 27, 28
33 U.S.C. § 2713(c)(2)    …………………………………….................. 27
33 U.S.C. § 2714          …………………………………….................. 27

### FEDERAL RULES OF CIVIL PROCEDURE:

Rule 23                                 ……………………………………............ 8, 24, 48
Rule 23, 2003 Advisory Committee Notes   ………......…….................. 40
Rule 23 (a)                             ……………………………….................. 8
Rule 23 (a)(2)                          ……………………………….................. 2, 9, 10
Rule 23 (a)(3)                          ……………………………….................. 3, 14, 10
Rule 23 (a)(4)                          ……………………………….................. 3, 15, 16
Rule 23 (b)                             ……………………………….................. 8
Rule 23 (b)(3)                          ……………………………….................. 4, 5, 8, 9, 23, 25, 27
Rule 23(b)(3) advisory committee's note  ……………………………….......... 25
Rule 23 (e)                             ……………………………….................. 2, 37
Rule 23 (e)(2)                          ……………………………….................. 29
Rule 23 (e)(5)                          ……………………………….................. 7
Rule 23 (h)                             ……………………………….................. 40, 41, 43
Rule 23 (h)(1)                          ……………………………….................. 41, 47
Rule 52(a)                              ……………………………….................. 40
Rule 54(d)(2)                           ……………………………….................. 40, 41, 47

## OTHER AUTHORITY

Class Action Fairness Act of 2005 ……………………………….................. 39

Oil Pollution Act ("OPA") ………     3, 5, 7, 10, 12, 14, 17, 19, 23-25, 27, 28, 36, 44, 50-52

## TREATISES

5 Moore's Federal Practice § 23.124[4] (Matthew Bender 3d Ed. 2009) ................. 41
Managing Class Action Litigation: A Pocket Guide For Judges, Second Edition
(Federal Judicial Center 2009) ………………………………….................. 30

Manual For Complex Litigation 4th …………………...................... 15, 16, 23, 29, 44, 47

**I.**

**SUMMARY OF OBJECTIONS**

Class members, James H. Kirby III, Mike and Patricia Sturdivan, and Susan Forsyth (together, "Objectors"), object to certification of the Settlement Class, the proposed Settlement, and Class Counsel's fee request.

My name is James H. Kirby III. I am a member of the class. I reside at 630 Fairway Avenue, NE in Ft. Walton Beach, FL 32547. I resided at that address at all relevant times herein and was physically present. Proof of residency attached Ex. A.

Ours names are Mike and Patricia Sturdivant. We are members of the class. We reside at 221 Ventana Blvd in Santa Rosa Beach, FL 32459. We resided at that address at all relevant times herein and we were physically present. We also suffered physical injury from dispersants and hydrocarbons. Proof of residency attached Ex. B.

My name is Susan Forsyth. I am a member of the class. I reside at 1703 1 Beach Club Dr., Miramar Beach, FL 32550. I was physically present on the property continuously from 20 June – 20 August, 2010 as well as other times during the relevant period. In addition, I suffered physical injury as a result of exposure to hydrocarbons and dispersants. Proof of residency attached Ex. C.

**A. Objectors Object To Certification Of The Settlement Class For The Following Reasons:**

    **1. The Rule 23 (a)(2) Commonality Requirement Is Not Met**

        a. Class members have not "suffered the same injury," as required by *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011).  As the settlement itself

establishes, class members have suffered a wide variety of different injuries.

b. The Oil Pollution Act ("OPA") is a strict liability statute.  Federal Maritime Claims are not.  Commonality is not present because a large portion of the class has only an OPA claim.  To make matters worse, the focus of the three-phase trial was fault, negligence, and punitive damages – only issues in maritime claims.

c. There are no common questions regarding an OPA strict liability claim that "will *resolve* an issue that *is central to the validity* of each one of the [class member's] claims in one stroke," as required by *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012).  The only issue for the OPA-claim-only class members is the amount of damages, if any, they suffered.  Those are individual questions.

**2.  The Rule 23 (a)(3) Typicality Requirement Is Not Met**

a. Not a single class representative has a federal maritime claim – or corresponding claim for punitive damages – for damage to real property.  As OPA-only claimants, the class representative real property owners are not typical of class members, like Objectors, who have federal maritime claims for damage to their real property, which is the only way to recover punitive damages.

**3.  The Rule 23 (a)(4) Adequacy Requirement Is Not Met**

a. Within the Coastal Real Property Claim category, separate class representatives and counsel should have been appointed to represent the different interests between the following subgroups: (1) those with past

physical presence of oil on their property should have been separately represented from those with only economic damages, (2) those with past damages of any kind should have been separately represented from those with only the threat of future physical or economic damages, and (3) those who sold their property after the December 31, 2010 cutoff date for Real Property Sales Claims should have been separately represented from those who face the threat of future damages because they still own the property. *See, eg.*

b. Separate class representatives and counsel should have been appointed to represent the class members in the separate damage categories.

c. Separate class representatives and counsel should have been appointed to represent the class members with and without federal maritime claims.

d. Class Counsel and the class representatives were inadequate because they agreed to give away to third parties the class members' settlement money in violation of *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468 (5th Cir. 2011).

e. Class Counsel were inadequate representatives because they put their own interests before the interests of the class by (1) making the Settlement Agreement contingent on their obtaining a "clear sailing" fee agreement from BP, and (2) separating the negotiation of the Settlement Agreement and fee agreement, a process that benefits Class Counsel to the detriment of class members.

**4. The Rule 23 (b)(3) Predominance Requirement Is Not Met**

a. Since commonality is not met, predominance is not met.

b. Since OPA is a strict liability statute and most class members only have OPA claims – eliminating any issues regarding fault, negligence, and punitive damages – individual damage issues will predominate.

c. Under Fifth Circuit precedent, predominance for this mass tort case is not met.

d. The three-phase trial set by the court would not apply to the bulk of class members who have only OPA claims, showing that common issues do not predominate.

5. **The Rule 23 (b)(3) Superiority Requirement Is Not Met**

a. The court is bound by the congressional determination that the OPA presentment requirement, rather than litigation, is the superior procedure to resolving oil spill claims.

b. Certification of mass tort claims is not superior to individual adjudication.

c. Many class member claims are not "negative-value suits," so certification is not appropriate.

**B. Objectors Object To The Settlement For The Following Reasons:**

1. The Settlement fails to recognize the difference between class members who suffered physical damage to their property and those that did not.  For instance, Coastal Real Property claimants who suffered physical damage to their property may bring a maritime claim for punitive damages; owners who did not suffer physical damage to their property may not.  There is a substantial and material difference between their claims.  Yet, the settlement provides the same Risk Transfer Premium to both.

2. The settlement does not compensate Coastal Real Property claimants who suffered physical damage to their property for their punitive damages claims.

3. The Settlement fails to recognize the difference between real property owners who continue to own the property and those that sold the property after December 31, 2010.  Current owners face the real threat of substantial damages from the oil and dispersants that remain in the Gulf.  Those class members who sold their property do not.  The Settlement fails to take that material difference into account.

4. The basis for determining damages, particularly for Coastal Real Property claims, is arbitrary and capricious.

5. The compensation provided by the Settlement for Coastal Real Property claims is woefully inadequate.

6. The *cy pres* component of the Settlement has not been fully disclosed and further violates the rule set out in *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468 (5th Cir. 2011).

7. The structure of the Settlement and fee agreement impermissibly provide that any part of the fee request that is not awarded will revert to BP, not the class.

8. BP may not have fully complied with the CAFA notice requirements.

## C. Objectors Object To A Fee Award To Class Counsel For The Following Reasons:

1. Class Counsel did not timely file the fee request.

2. Class Counsel has the burden to prove that the settlement benefits class members above and beyond what claimants received under the Gulf Coast Claims Facility ('GCCF") in the absence of the settlement.  Their failure to

show that the settlement brought any benefits that class members would not have received in the absence of a settlement bars any fee recovery.

3. Class Counsel waived the right to a fee because of serious conflicts and a "clear and serious" disloyalty to the class.

4. The *Johnson* factors do not support the fee request.  The large percentage of the work performed was on the federal maritime claims, not OPA claims. Since most class members had only OPA claims, the fee should be substantially reduced.  And the absence of any recovery on the punitive damage claims bars any fee for work on the federal maritime claims.

## II.

## OBJECTORS

Objectors are members of the Economic and Property Damages Settlement Class.  Objector owned real property as described above and suffered damage to that real property when oil and/or dispersants from the Spill landed on the property.

Objectors have standing to raise the objections herein:

Any class member may object to the proposal if it requires court approval under this subdivision (e) … .

FED. R. CIV. P. 23 (e)(5); see also, *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002).

The undersigned counsel for Objectors (1) provides this Notice of Appearance as to Objectors, (2) provides this Notice of Intent to Appear at the Fairness Hearing on behalf of Objectors, (3) notifies the Court that Counsel is not a member of the Court's bar but will seek admission under the Local Rules.

**III.**

**OBJECTIONS TO CERTIFICATION OF THE SETTLEMENT CLASSES**

**A.  The Rule 23 Requirements For Certification**

The settling parties must satisfy all Rule 23 (a) requirements, as well as one of the subdivisions of Rule 23 (b).  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012).  The parties seeking certification of the Settlement Class bear the burden of proof as to all certification requirements.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."); *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d at 837.

Rule 23 (a) requires proof of the following:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23 (a).  The settling parties seek certification under Rule 23(b)(3), so they must additionally show the following:

> [T]he questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23 (b)(3).

The settling parties have not met their burden of proof under either FED. R. CIV. P. 23 (a) or 23 (b)(3).

## B. Lack of Commonality

Rule 23 (a)(2) requires that there be "questions of law or fact common to the class." Two recent cases have rejected the very arguments made by the proponents of certification of the Settlement Class. The Supreme Court in *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011) explained the commonality requirement:

> **Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury,"** *Falcon, supra,* at 157, 102 S. Ct. 2364. This does not mean merely that they have all suffered a violation of the same provision of law. … That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id.* at 2551 (emphasis added). Quoting from *Nagareda*, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 131–132 (2009), the Court explained:

> "What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the

> potential to impede the generation of common answers." *Nagareda*, *supra*,
> at 132.

131 S. Ct. at 2551.  Similarly, the Fifth Circuit has held that commonality is not a mere

formality, but a substantive requirement that imposes a significant hurdle to certification:

> Rule 23(a)(2) requires that all of the class member's claims depend on a
> common issue of law or fact whose resolution "will *resolve* an issue that *is*
> *central to the validity* of each one of the [class member's] claims in one
> stroke."

*M.D. ex rel. Stukenberg v. Perry*, 675 F.3d at 840 (emphasis by the Fifth Circuit).  The

Fifth Circuit reversed the district court's certification order there because "the district

court failed to consider or explain how the determination of those questions would

'resolve an issue that is central to the validity of each one of the [individual class

member's] claims in one stroke.'"  *Id.* at 841.

The Court in its preliminary approval order found that the following questions of

fact were common:

> Common factual issues include (1) BP's share of liability compared to
> other defendants, (2) the facts of BP's conduct in designing the well, and
> (3) the facts of BP's conduct in seeking to control and contain the spill.

(Doc. 6418, p. 27.)  Those questions are *not* common to the class.  All three apply to a

federal maritime claim, but not an OPA claim.  The Court further found that:

> Common legal issues arising under federal law include (1) preemption
> questions regarding the Outer Continental Shelf Lands Act, the Clean
> Water Act, and federal maritime law; (2) statutory construction issues
> under each of these statutes, including the standard of causation that
> applies under the Oil Pollution Act, and (3) questions under federal
> maritime law, including the standard under which punitive damages are
> available.

*Id.*  The first and third items relate only to federal maritime claims and do not affect OPA

claims.  The second item does not constitute a common question.

### 1. Class Members Did Not Suffer The Same Injury

As the Supreme Court made abundantly clear in *Wal-Mart*, commonality is not met if the class members did not suffer *the same injury.*

Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury."

*Wal-Mart v. Dukes*, 131 S. Ct. at 2551.  The Settlement Agreement shows that the class members did *not* suffer the same injury; indeed they suffered remarkably different injuries:

- Coastal Real Property damages
- Wetlands Real Property damages
- Real Property Sales damages
- Personal Property damages
- Seafood (Commercial Fishing) damages
- Vessels of Opportunity damages
- Economic damages
- Loss of Subsistence damages

Some class members suffered damage to real property, some suffered damage to personal property, some suffered damages to earning capacity, some suffered damages to profits, and on and on.  Ironically, the very name of the Settlement Class – the "Economic **and** Property Damages Settlement Class" – establishes that class members suffered different injuries.  This case presents the antithesis of a case where the class members suffered "the same injury."

Thus, commonality is not met and the court should not certify the Settlement Class.

### 2. There Are No Common Issues Related To Federal Maritime Claims

As the Court has already ruled, those class members who did not suffer physical damage to a proprietary interest (unless the claim falls into the commercial fishermen exception) have no federal maritime claim (Doc. 3830, p. 38).  Based on information

and belief, the large majority of class members will not have federal maritime claims and will have only OPA claims.  Indeed, as shown below, the only two class representatives with Coastal Real Property Damage claims do not appear to have a federal maritime claim.  Regardless of the portion of the class that only have OPA claims, any question of fact or law related only to the federal maritime claim cannot be a common question.  Those questions are not common to the OPA-claim-only class members.

### 3.  There Are No Common Issues Related To OPA Claims

While all class members have an OPA claim, there is no common question, the answer to which "will *resolve* an issue that *is central to the validity* of each one of the [class member's] claims in one stroke."  OPA is a strict liability statute.  *Rice v. Harken Exploration Co.,* 250 F.3d 264, 266 (5th Cir.2001)("The OPA imposes strict liability on parties responsible for the discharge of oil"); *In re Oil Spill by Oil Rig DEEPWATER HORIZON in Gulf of Mexico, on April 20, 2010,* MDL 2179, 2012 WL 569388 (E.D. La. Feb. 22, 2012)("Under OPA, 'responsible parties' are strictly liable for removal costs and damages resulting from the discharge of oil).  Thus, the factual issues related to BP's negligence are not "central to the validity" of any class member's OPA claim.  None of the factual issues cited by the court in its preliminary approval order apply to the OPA claim.  The only potential common issues under an OPA claim are uncontested so cannot serve as the basis for commonality because they have already been "resolved" without the necessity of certification.

Nor is there a common issue of law for all class members.  The only question of law related to an OPA claim listed in the court's preliminary approval order is "the standard of causation that applies under the Oil Pollution Act."  That finding wholly fails to satisfy the Fifth Circuit's "rigorous analysis" requirement and fails to explain how such

a determination would resolve "in one stroke" an issue central to the validity of each class member's claim.

And regarding "the standard of causation that applies under the Oil Pollution Act," that is not a common question of law.  There is no showing that there is an issue regarding causation for all class members.  For some, like real property owners whose property was physically polluted by the oil, there is no issue regarding the standard for causation – BP is undeniably liable under OPA.

More importantly, both OPA and the settlement establish beyond argument that there can be no single causation "standard" for all class members; there would need to be multiple standards of liability based on the type of damages suffered.  First, OPA provides for the recovery by class members of several different types of damages.  It provides for the recovery of removal costs.  33 U.S.C. § 2702 (b)(1); *see also, In re Oil Spill by Oil Rig DEEPWATER HORIZON the Gulf of Mexico, on April 20, 2010*, MDL 2179, 2011 WL 5520295 (E.D. La. Nov. 14, 2011)(holding that private claimants are entitled to recover removal costs).  It also provides for the recovery of damages: (B) Real or personal property; (C) Subsistence use; and (E) Profits and earning capacity. 33 U.S.C. § 2702 (b)(2). The standard of causation for each category of damages would necessarily differ.  For instance, the standard for proving causation of damages for real and personal property will necessarily be very different from the standard for proving subsistence use, which will necessarily be very different from the standard for proving causation on earning capacity damages.  Moreover, the standard for causation for proving removal costs under 33 U.S.C. § 2702 (b)(1) will necessarily be very different from the standard for proving damages under 33 U.S.C. § 2702 (b)(2).  Thus, a class

action could not possibly provide a single answer regarding the standard for causation that would apply to all class members.

Second, the Settlement Agreement itself shows that there is no common question of law regarding the standard of causation for an OPA claim. The Settlement Agreement distinguishes between several types of damages claims, as indicated above. The "standard" in the settlement for proving causation for each of these types of claims varies substantially, without any common overlap. A comparison of the respective exhibits to the Settlement Agreement for each of these damages categories shows that there is nothing even remotely "common" about the standard of causation for the different types of claims.

### C. Lack of Typicality

FED. R. CIV. P. 23 (a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." According to the Complaint, Document 1 in 2:12-cv-00970-CJB-SS, (MDL Doc. 6412), William Sellers and Kathleen Irwin appear to be the only class representatives with Coastal Real Property Damage claims. However, their claims do not satisfy the typicality requirement.

According to the Complaint, neither suffered physical damage to a proprietary interest. (Complaint, Doc. 1, p. 9) ("The Oil Spill caused oiling of the waters and beaches **visible and accessible** from Mr. Sellers' [and Ms. Irwin's] property")(emphasis added). Since there was no physical damage to a proprietary interest, neither has a federal maritime claim (Doc. 3830, p. 38). Indeed, it appears that not a single class representative has a federal maritime claim for damages to real property. And only the federal maritime claim provides the potential for a punitive damages award. Thus, the

claims of the class representatives are not typical of the claims of the class members who have federal maritime claims for physical damage to real property and the potential for punitive damages.

### D. Lack Of Adequate Representation

FED. R. CIV. P. 23 (a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Due process requires the same. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)("the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members"). This requirement applies to both the class representatives and class counsel. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856, n. 31 (1999).

Adequate representation requires "structural assurance of fair and adequate representation for the diverse groups and individuals affected." *Amchem Products, Inc. v. Windsor*, 521 U.S. at 627. As the MANUAL FOR COMPLEX LITIGATION 4th explains, the critical element of adequate representation is that the class representatives and Class Counsel fairly and adequately represent the interests of all subgroups within the class:

> Divergent interests must be taken into account and fairly accommodated before the parties negotiate a final settlement. Consider whether the counsel who have negotiated the settlement have fairly represented the interests of *all* class members.

MANUAL FOR COMPLEX LITIGATION 4th § 21.612, p. 314 (emphasis added). If significant differences in interests exist between different groups within the class, the certification must create subclasses, with separate representatives and class counsel for each subclass. *Id.* § 21.23, p. 272; s*ee also*, *Literary Works in Electronic Databases Copyright Litigation v. Thomson Corp.,* 654 F.3d 242, 245 (2nd Cir. 2011)("Only the creation of subclasses, and the advocacy of an attorney representing each subclass,

can ensure that the interests of that particular subgroup are in fact adequately represented.").

Conflicts are not necessary for a lack of adequacy:

the inquiry has two purposes: "to determine [1] that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, ... and [2] that there is no conflict between the individual's claims and those asserted on behalf of the class."

*Larson v. AT&T Mobility LLC*, 10-1285, 2012 WL 2478376 (3d Cir. June 29, 2012). Thus, even in the absence of a conflict between the two subgroups, subclasses are still required if the class representative does not have the ability or incentive to represent the claims of other class members.

For many reasons, the adequacy requirement is not met here.

### 1.   Subgroups Within The Coastal Real Property Damage Group

There are at least three critical Coastal Real Property Damage subgroup distinctions for which there should have been separate subclasses: (1) those with past physical presence of oil on their property, as opposed to those with only economic damages, (2) those with past physical or economic damages, as opposed to those with only the threat of future physical or economic damages, and (3) those who sold their property after the December 31, 2010, cutoff date for Real Property Sales Claims, as opposed to those that did not and face the threat of future damages.  The failure to provide the structural assurance of subclasses to separately represent the various interests violates FED. R. CIV. P. 23 (a)(4) and prohibits certification of the Settlement Class.  *Literary Works,* 654 F.3d at 245 ("Only the creation of subclasses, and the advocacy of an attorney representing each subclass, can ensure that the interests of that particular subgroup are in fact adequately represented.").

### a.  Oil vs. No Oil On Property

As indicated above, not a single class representative has a federal maritime claim for Coastal Real Property Damage because none had oil on their real property. The threat of punitive damages under a federal maritime claim, a threat that does not exist under OPA, is a critical and necessary component for adequately representing real property owners whose property was physically damaged by the spill.  Since no class representative was able to assert that claim, the class representatives were not adequate as a matter of law.

To be adequate, the class representatives must suffer "the same injury as the class members."  *Amchem Products, Inc. v. Windsor*, 521 U.S. at 625-26.  Here no class member suffered the injury of oil or dispersants on real property in which they held a proprietary interest.  There should have been separate class representatives and class counsel for (1) Coastal Real Property Damage class members *with* physical oil damage to their property and (2) Coastal Real Property Damage class members *without* physical oil damage to their property.  Thus, as a matter of law the class representatives are inadequate and the court should deny certification.

### b.  Past vs. Future Damages

The Settlement Agreement waives both current and future Coastal Real Property damages.  Some real property owner class members were unlucky and suffered damages after the spill, (physical or economic damage); others were lucky and avoided any physical or economic damage *this time*.  Yet, as the parties recognize, the oil and dispersants are currently located offshore in the Gulf and can at any time be carried to the shoreline, contaminating and causing damage to real property owner class members who have not been previously damaged.  Real property owner class members

with past damages and those with only potential future damages should have been separately represented.  *See*, *Amchem Products, Inc. v. Windsor,* and *Ortiz v. Fibreboard Corp.*  Because they were not separately represented here, the class representatives were inadequate and the court should deny certification.

### c.  Sellers vs. Current Owners

The Settlement Agreement provides for certain for Real Property Sales Claims for class members who sold their real property before December 31, 2010.  Those class members who sold their real property after that date would be limited to a Coastal Real Property Damages claim.  However, those class members who sold their real property after December 31, 2010, do not face the threat of future damages from the spill.  Those class members who continue to own their real property *do* face the threat of future damages from the spill.  Those two groups should have been separately represented. *See*, *Amchem Products, Inc. v. Windsor,* and *Ortiz v. Fibreboard Corp (supra).* Because they were not separately represented here, the class representatives were inadequate and the court should deny certification.

### 2.  Separate Subclasses For Each Of The Damage Categories

The Settlement separates out several categories of damage: Seafood Compensation, Vessels of Opportunity Charter Payment, Economic Damage, Coastal Real Property Damage, Loss of Subsistence, Wetlands Real Property Damage, Vessel Physical Damage, Real Property Sales Damage.  Class members in each of these groups suffered different injuries and should have been placed in different subclasses, with separate class representatives and class counsel.  Even if the PSC "assigned" separate attorneys to represent the interests of these different subgroups, *those attorneys' interests were not tied to the recovery of those subgroups,* so there was no

structural assurance of adequate representation.  Those attorneys share in the overall $600 million fee, so their interest was in getting any settlement, not necessarily the best settlement for the class members to which they were "assigned."

### 3. Separate Subclasses For Class Members With And Without Federal Maritime Claims

Putting aside the need for subclasses within the Coastal Real Property claim subgroup, the class as a whole should have been divided into subclasses to reflect those class members with OPA-only claims and those with OPA and federal maritime claims.

First, class members with federal maritime claims are entitled to punitive damages, but OPA-only class members are not.  The threat of punitive damages under a federal maritime claim, a threat that does not exist under OPA, is a critical and necessary component for adequately representing class members whose property was physically damaged by the spill.  The court should have created separate subclasses with separate counsel for the two groups.

Second, as shown below, the very large majority of the time spent by the PSC was on the federal maritime claims.  Class members with OPA-only claims were inadequately represented because their recovery was reduced to compensate counsel for an attorney fee that is based on time and labor expended on the federal maritime claim.

### 4. The *Cy* Pres Component Of This Settlement Is Flawed And Cannot Be Approved.

The *cy pres* component of the Settlement violates the rule set out in *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468 (5th Cir. 2011) which states that the purpose behind this doctrine is to distribute unclaimed funds. "[I]n such a case, the unclaimed

funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." Id. at 473.

The doctrine of *cy pres* originated in the law of wills and trusts and allowed courts to redirect money from trusts and testamentary gifts that would otherwise fail for legal reasons. *In Re Wells Fargo Securities Litigation*, 991 F.Supp. 1193, 1194-95 (N.D. Cal. 1998). However, a court cannot direct excess funds to any seemingly worthwhile recipient. Instead, the funds must be used in such a way that best serve the original intent of the settlor or testator. Id. at 1195. This idea was translated for use in the context of class actions when "(1) no parties have equitable interests in the residue or (2) distribution to such parties would be impractical." Id. Courts have warned, "a court must be careful to direct the residue to an entity that will indirectly serve the interests of class members or "others similarly situated, e.g. future class members who engage in future transactions of the type involved in the class litigation." Id. at 1195.

This proposed settlement fails under this doctrine. As evidenced by the non-revertible fund of millions of dollars, distribution to the class is not impractical. Furthermore, the only relationship between this lawsuit and donations of these funds to other entities is the source of the donation. This proposed distribution is an abuse of the cy pres doctrine and inadequately compensates the injured party – the class.

The Ninth Circuit recently had cause to review the application of the *cy pres* doctrine in *Dennis v. Kellogg Co.,* 2012 WL 2870128 (9th Cir., July 13, 2012.) In its opinion, the Ninth Circuit warned against the dangers of the improper use of the *cy pres* doctrine:

Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary. To avoid the "many nascent dangers to the fairness of the distribution process," we require that there be "a driving nexus between the plaintiff class and the cy pres beneficiaries." *Nachshin*, 663 F.3d at 1038. A *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members," Id. at 1039, and must not benefit a group "too remote from the plaintiff class," *Six Mexican Workers*, 904 F.2d at 1308. Thus, in addition to asking "whether the class settlement, taken as a whole, is fair, reasonable, and adequate to all concerned," we must also determine "whether the distribution of the approved class settlement complies with our standards governing cy pres awards." Nachshin, 663 F.3d at 1040 (internal quotation marks omitted).
Id. at *4.

The Ninth Circuit made clear that the *cy pres* donation must be closely tied to the interests of the class members.  This Circuit agrees with the Ninth Circuit's close review of *cy pres* settlements.  The *Klier* court reasoned that its caution regarding the *cy pres* doctrine is because "a class settlement generates property interests. Each class member has a constitutionally recognized property right in the claim or cause of action that the class action resolves. The settlement-fund proceeds, having been generated by the value of the class members' claims, belong solely to the class members."  Klier 658 F.3d at 474. The Because the settlement must either stand or fall based on the entirety of the settlement provisions, counsel's failure to disclose the intended *cy pres* beneficiaries is fatal to the settlement.  Class members' right to review and comment on the cy pres recipients is no less than their right to review and comment on any other portion of the proposed settlement such as attorney fees or distribution.  The final approval hearing must be continued until such time as there has been full disclosure to the class regarding these proposed distributions.

### 5.  Class Counsel Were Inadequate Representatives Because They Put Their Own Interests Before The Interests Of The Class

Class Counsel were inadequate representatives of the class because they placed their own interests before the class members' interests.

#### a.  Making The Settlement Contingent On A Fee Agreement

The Settlement Agreement provides that:

> As a material term and condition precedent to a Settlement Agreement, the BP Parties and the PSC must reach agreement regarding the amount of attorneys' fees and costs for the common benefits to the putative Economic Class.

(Doc. 6276-1, p. 78.)  Class Counsel was willing to destroy the entire settlement that supposedly benefits the class if Class Counsel did not get a "clear sailing" agreement for fees for themselves.  By making the settlement contingent on an agreement for their fees, Class Counsel put their own interests before the interests of the class.  The inclusion of that provision in the settlement establishes that Class Counsel were not adequate representatives of the class.

#### b.  Making A Separate Fee Agreement

Class Counsel was faced with two choices in negotiating a fee:  (1) negotiate a combined settlement/fee agreement, with the fee coming from the settlement amount ("combined agreement option"), or (2) negotiate a separate settlement and fee agreement ("separate agreements option").  The "combined agreement option" (one $8.4 billion agreement) is in the best interests of the class members because it assures the maximum recovery for the class (without any "holdback" by the Defendant for the separate fee agreement) *and* it provides that that if the court awards less than the requested amount to Class Counsel, that money "reverts" to the class, not the Defendant.  The "separate agreements option" (a $7.8 billion settlement agreement and

a separate $600 million fee agreement) is in the best interests of Class Counsel, because they eliminate the argument – and the court's concern – that their fee will reduce the class recovery (although in fact, as shown below, the separate agreements option does in fact reduce the class recovery).

Class Counsel's decision to go with the "separate agreements option" was a breach of their duty to the class members.  As the MANUAL FOR COMPLEX LITIGATION 4th § 21.7 explains:

> if negotiations are to be conducted in stages, counsel must scrupulously avoid making concessions affecting the class for personal advantage.

MANUAL FOR COMPLEX LITIGATION 4th § 21.7, p. 335.  Yet, that is exactly what Class Counsel did here – they made a concession affecting the class (making the settlement contingent on their fee agreement) for their personal advantage.  By selecting the "separate agreements option," Class Counsel placed their own interests before those of the class.  Thus, they were not adequate representatives of the class.

### E. Lack of Predominance

FED. R. CIV. P. 23 (b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Objectors incorporate all of their foregoing arguments regarding commonality as additional reasons that predominance is not met.  Even if commonality were met here, and it was not, individual issues will clearly predominate.

#### 1. Common Facts Will Not Predominate

Upon information and belief a very large majority of class members only have an OPA claim and do not have a viable federal maritime claim.  That is, most class members did not suffer physical damage to a proprietary interest.  For instance, the only

two class representatives with real property claims only have an OPA claim.  As the court has previously ruled, they therefore lack a federal maritime claim (Doc. 3830, p. 38).  Thus, issues related to fault, negligence, and punitive damages under federal maritime law are wholly irrelevant to most class members' claims.

The only remaining claim, the OPA claim, is a strict liability statute.  In passing OPA, Congress eliminated the need for the resolution of common issues by creating strict liability.  The only issues to be tried for OPA claims would be (1) whether each claimant suffered physical or economic damages as a result of the spill, and (2) the amount of those damages.  Those are individual questions.  Indeed, the parties have not identified a single issue that would be resolved at the trial of the OPA claims other than individualized damage issues.  But even if the parties could identify such an issue, it is undeniable that the individualized damage issues of (1) whether each claimant suffered physical or economic damages as a result of the spill, and (2) the amount of those damages, would predominate.  Indeed Congress intended those to be the only contested issues when it passed OPA with a strict liability standard.

## 2. A Finding Of Predominance Here Would Violate Numerous Fifth Circuit Cases

Many Fifth Circuit cases prohibit a finding of predominance in this case.  *Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551 (5th Cir. 2011) is on point.  There the district court certified a class of persons exposed to petroleum coke dust from a single release by a refinery.  The Fifth Circuit reversed the district court's certification order, noting its continued reliance on a note to Rule 23:

> A "mass accident" resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, affecting the individuals in different ways. In these

> circumstances an action conducted nominally as a class action would
> degenerate in practice into multiple lawsuits separately tried.

*Id.* at 556 (quoting FED. R. CIV. P. 23(b)(3) advisory committee's note.).  That is the case here:  a "mass accident" that resulted in damages to numerous persons. Thus, even if there were common issues of fault, negligence, and punitive damages, (and those issues are not common), certification would not be appropriate.  *But as to OPA claims there are no such common issues, so the argument for certification is even weaker here.*  Although the court there noted that "class treatment on the common issue of liability may indeed be appropriate," *id.* at 557, that would not apply to an OPA claim because the statute provides for strict liability.  Thus, there is no need for a liability trial on the OPA claim and the liability issue will not predominate.

Similarly, in *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006) the Fifth Circuit rejected certification of a class of individuals allegedly exposed to smoke from a fire at a chemical plant.  As the court noted:

> The cause of action as a whole must satisfy Rule 23(b)(3)'s predominance
> requirement.

*Id.* at 601.  The court rejected certification because:

> The district court heard from experts who opined that the primary issues
> left to be resolved would turn on location, exposure, dose, susceptibility to
> illness, nature of symptoms, type and cost of medical treatment, and
> subsequent impact of illnesses on individuals. Moreover, in addition to the
> personal injury claims, separate types of proof would be necessary for the
> property damage, devaluation, and business loss claims. The district court
> observed that each plaintiff's claims will be highly individualized with
> respect to proximate causation, including individual issues of exposure,
> susceptibility to illness, and types of physical injuries. As a result, the
> district court found that "individual issues surrounding exposure, dose,
> health effects, and damages will dominate at the trial." The district court
> concluded that "one set of operative facts would not establish liability and
> that the end result would be a series of individual mini-trials which the
> predominance requirement is intended to prevent."

*Id.* at 602.  Importantly there, "It is clear from the record that the damages claims in this case are not subject to any sort of formulaic calculation."  Similarly here damages claims are individualized and not subject to any sort of formulaic calculation, other than an artificial formula devised by Class Counsel as a way of obtaining a $600 million pay day.

In *Bell Atlantic v. AT&T*, 339 F.3d 294 (5th Cir. 2003), the court denied certification because the "individualized nature of damages inquiry prevented certification" and rejected the type of formula used in the settlement here.  To avoid the predominance of individual damages issues, the Plaintiffs sought to calculate damages based on the formula determined by their experts, just as the Plaintiffs seek to do here. The Fifth Circuit rejected that strategy: "we are not convinced that this proposed damages calculus represents an adequate approximation of any single class member's damages, let alone a just and reasonable estimate of the damages of every class member included in the two putative classes."  *Id.* at 304.  Similarly in this case, the fact that Plaintiffs' "experts" have come up with damages formula does not satisfy the predominance requirement.  The settlement proponents have failed to meet their burden to prove that the "proposed damages calculus represents an adequate approximation of any single class member's damages, let alone a just and reasonable estimate of the damages of every class member."

### 3.  Reliance On The Three-Phase Trial Is Misplaced

The court's preliminary approval order argues that predominance is met because the court "designed a phased trial structure in which the first *three* phases were allocated to the resolution of common issues, *see* Pretrial Order 41, as amended (Rec. Doc. 4083)."  (Doc. 6418, p. 28) (emphasis by the court).  But the trial contemplated by

Pretrial Order 41, including all three phases, dealt *solely* with fault issues that are wholly irrelevant to OPA claims.  Those issues are limited to federal maritime claims.  Thus, for the large majority of class members who do not have federal maritime claims, Pretrial Order 41 does not support predominance.  Indeed, it shows that **non-common** issues concerning federal maritime claims, issues that are irrelevant to class members who only have OPA claims, will predominate.

### F.  Lack of Superiority

FED. R. CIV. P. 23 (b)(3) requires a finding "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The superiority requirement is not met here.

### 1.  Congress Determined That The OPA Presentment Procedure Is The Superior Method For Resolving Oil Spill Claims

One of the primary congressional purposes in passing OPA was to create a procedure for settling claims that avoided the need for litigation.  OPA requires the responsible party to create and publish a presentment procedure and requires claimants to follow that procedure.  33 U.S.C. §§ 2713, 2714.  Congress promulgated those sections because it determined that the presentment method set out therein was superior to litigation of oil spill claims:

> [T]he purpose of OPA's claim presentation requirement is to enable the parties to negotiate, if possible, a settlement of potential claims resulting from an oil spill **without having to resort to litigation**. The settlement is to be in the form of "payment within 90 days after the date upon which the claim was presented." 33 U.S.C. § 2713(c)(2).

*Johnson v. Colonial Pipeline Co.*, 830 F.Supp. 309, 311 (E.D. Va. 1993)(emphasis added).  Judge Fallon agrees.  *Turner v. Murphy Oil USA, Inc.,* 2007 WL 4208986, at *2

(E.D. La. Nov.21, 2007)("The purpose of the OPA notice requirement is to promote settlement and avoid litigation.").

This court has previously reached the same conclusion in this case:

Another obvious purpose of OPA was to set up a scheme by which a "Responsible Party" (typically the vessel or facility owner) was designated and made strictly liable (in most instances) for clean up costs and resulting economic damages. The intent is to encourage settlement and **reduce the need for litigation**. Claimants present their claims to the Responsible Party, who pays the claims and is then allowed to seek contribution from other allegedly liable parties. 33 U.S.C. §§ 2709, 2710, 2713.

(Doc. 3830, p. 21) (emphasis added).

A finding that the settlement of OPA claims through a class action settlement is superior to the presentment procedure would require this Court to override Congress. That is, Congress determined that the presentment procedure is superior to other available methods for fairly and efficiently adjudicating an oil spill controversy, so Congress necessarily found that the presentment procedure was superior to the class action procedure.  The settlement proponents ask this Court to contradict the will of Congress.

### 2.  Certification Of Mass Torts Claims Is Not Superior

The Fifth Circuit has held that certification of mass tort litigation is disfavored. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 746-47 (5th Cir. 1996).  For the reasons set out in that case, the court should find that certification is not superior.

### 3.  Many Class Member Claims Are Not "Negative Value Suits"

Many class member claims are not "negative value suits," as evidenced by the tens of thousands of individual suits already filed.  As such, certification is not a superior method to resolve the claims:

> The most compelling rationale for finding superiority in a class action-the existence of a negative value suit-is missing in this case.

*Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996).  That rationale is also missing in this case.

## IV.

## OBJECTIONS TO THE SETTLEMENT

The court should not certify the Settlement Class, and if it denies certification, it need not reach the issue of whether to approve the Settlement Agreement.  However, if the court overrules Objector's objections to class certification, the court should disapprove the Settlement Agreement.

The court may only approve the settlement if it is fair, reasonable, and adequate. FED. R. CIV. P. 23 (e)(2).  The settling parties bear the burden of proof on that matter:

> At the fairness hearing, the proponents of the settlement must show that the proposed settlement is 'fair, reasonable, and adequate.'

MANUAL FOR COMPLEX LITIGATION 4th, § 21.634, p. 322 (citing to *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998)).  Because the settlement here occurred before certification of a litigation class, the court must require the proponents to meet a higher standard of fairness:

> We ask district courts to apply an even more rigorous, "heightened standard" in cases "where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously."  We have explained that this "heightened standard is designed to ensure that class counsel has demonstrated sustained advocacy throughout the course of the proceedings and has protected the interests of all class members."

*In re Pet Food Products Liability Litigation*, 629 F.3d 333, 350 (3rd Cir. 2010) (citations omitted); *see also, Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Finally, the proponents of the settlement here must overcome a presumption of unfairness. The Settlement Agreement contains a "clear sailing" agreement wherein BP agrees not to challenge Class Counsel's fees. It also provides that if any portion of the alleged $7.8 billion value of settlement of the settlement is not claimed, that money "reverts" to BP. The Federal Judicial Center has determined that such a settlement agreement is a "hot button indicator" of an unfair settlement:

> The addition of a "clear sailing" agreement (i.e., a stipulation that attorney fees based on the inflated settlement figure will not be contested) to an agreement with a reversion clause adds decibels to the alarms set off by the reversion clause. Some courts treat the combination as creating a presumption of unfairness.

> A reversion clause creates perverse incentives for a defendant to impose restrictive eligibility conditions and for class counsel and defendants to use the artificially inflated settlement amount as a basis for attorney fees.

Barbara J. Rothstein & Thomas E. Willging, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, SECOND EDITION, (Federal Judicial Center 2009), at 17-18.

With that background, the court should disapprove the settlement for the following reasons.

## A. The Settlement Fails To Recognize The Difference Between Class Members Who Suffered Physical Damage To Their Property And Those That Did Not

As the court has previously determined, class members who suffered physical damage to their property have federal maritime claims and may recover punitive damages against BP, but class members who suffered only economic damages do not have a federal maritime claim and may not recover punitive damages (Doc. 3830, p. 38). The "Risk Transfer Premium" (RTP) factor allegedly compensates class members for punitive damage claims:

> RTP (risk transfer premium) shall mean the amount paid to a Claimant for any and all alleged damage, including potential future injuries, damages or

losses not currently known, which may later manifest themselves or develop, arising out of, due to, resulting from, or relating in any way to the Deepwater Horizon Incident, and any other type or category of damages claimed, **including claims for punitive damages**.

Settlement Agreement (Doc. 6276-1, p. 107, ¶ 38.124) (emphasis added). Given that

(1) some class members are entitled to punitive damages, while others are not, and (2)

the RTP is intended to compensate for punitive damage claims, one would expect that,

all other things being equal, a class member who suffered physical damage to their

property would have a higher RTP than those that did not.

Inexplicably, the Settlement fails on that account. For instance, the Coastal Real

Property Compensation Framework creates two similarly situated categories, A1 and

B1. The categories are in all things equal with one exception: A1 claimants had physical

damage to their real property and B1 claimants did not:

Compensation Category A1 shall consist of Eligible Parcels satisfying the following two criteria: (i) **the presence of oil was reported** on the Eligible Parcel by the Deepwater Horizon Unified Command Shoreline Cleanup Assessment Teams (SCAT) or a Pre-Assessment conducted as part of Phase 1 of the Natural Resources Damages Assessment process ("NRD Pre- Assessment") and (ii) the Eligible Parcel includes, or is situated upon, a shoreline for which no portion of the shoreline has a primary Environmental Sensitivity Index ("ESI") classification of 10A (salt and brackish (coastal marshes)), 10B (freshwater marshes), 10C (freshwater swamps) or 10D (scrub-shrub wetlands (includes mangroves)) as determined by the National Oceanic and Atmospheric Administration ("NOAA") …

Compensation Category B1 shall consist of Eligible Parcels satisfying the following two criteria: (i) **no presence of oil was reported** on the Eligible Parcel by SCAT or an NRD Pre-Assessment and (ii) the Eligible Parcel includes or is situated upon a shoreline for which no portion of the shoreline has an ESI classification of 10A (salt and brackish (coastal marshes)), 10B (freshwater marshes), 10C (freshwater swamps) or 10D (scrub-shrub wetlands (includes mangroves)) as determined by the NOAA.

Settlement Agreement, Ex. 11A, page 2 (emphasis added).  The only difference between the two is that the presence of oil was reported for A1 properties, but not on B1 properties.  Thus, A1 property owners would be entitled to punitive damages, but B1 property owners would not.

*Yet, the RTP for A1 and B1 claimants is exactly the same: 2.5.*  *Id.* p. 7. Thus, the Settlement Agreement fails to reflect the critical different between A1 and B1 claimants.  The same failure applies to the difference between A2 and B2 Coastal Real Property claims.

### B. Coastal Real Property Claim Payments Do *Not* Include Any Compensation For Punitive Damage Claims

The settlement proponents have a dilemma.  If, on the one hand, the RTP for B1 and B2 Coastal Real Property claimants *does* include a payment for punitive damages claims, then the class representatives violated their duty to the class.  Class representatives Sellers and Irwin, as shown above, do not have a claim for punitive damages because they did not suffer physical damage to their property.  So if the RTP of 2.5 does include a payment for punitive damages, settlement money that they were not entitled to, then they improperly negotiated to benefit themselves by assigning a portion of the settlement fund to themselves when they were not entitled to that recovery.

On the other hand, if the RTP of 2.5 for Coastal Real Property claims *does not* include a payment for punitive damages claims, then the settlement proponents face a host of problems.  First, the representation to the court that the RTP includes an "amount paid to a Claimant for … claims for punitive damages," would be false. Second, the class representatives would have violated their duty to the class because

they would have waived the punitive damages claims against BP for no compensation whatsoever.  Third, the failure to obtain any punitive damage payments would mean that Class Counsel would not be entitled to any fee for its work on the federal maritime claims, as explained in more detail below.

On information and belief the RTP for Coastal Real Property claimants does *not* include any compensation for the punitive damage claims.  Certainly the settlement does not include payments for punitive damage claims to B1 and B2 Coastal Real Property claimants, because they did not have a viable punitive damages claim.  Surely the class representatives did not attempt to enrich themselves by applying settlement funds to themselves (that is, B1 and B2 claimants) when they had no viable claim for punitive damages.

The court owes a fiduciary duty to protect the interests of the class members.  *In re Wireless Telephone Federal Cost Recovery Fees Litigation,* 396 F.3d 922, 932 (8th Cir. 2005); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3rd Cir. 2010)("Under Rule 23(e), a district court acts as a fiduciary, guarding the claims and rights of the absent class members.").  That duty is particularly important when it comes to protecting the class settlement fund:

> As a fiduciary for the class, the district court must "act with 'a jealous regard to the rights of those who are interested in the fund'..."

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994-995 (9th Cir. 2010).  Thus, the court could not approve a settlement that pays a portion of the settlement fund to claimants without a viable claim.

It is, therefore, apparent that **the RTP does not, in fact, include a punitive damages component for Coastal Real Property Claims**.  The RTP for A1 and A2

coastal real property claims is the same as the RTP for B1 and B2 coastal real property claims, 2.5.  Since the RTP for B1 and B2 claims contains no payment for punitive damage claims, and since the RTP for A1 and A2 claims is the same as for B1 and B2 claims, A1 and A2 claims necessarily do not include any payment for punitive damage claims.  It stands to reason, then, that there is no punitive damage payment in the settlement for **any** coastal real property claims.

### C. The Settlement Fails To Recognize The Difference Between Real Property Owners Who Continue To Own The Property And Those That Sold The Property After December 31, 2010.

The RTP is also intended to compensate for potential future damages:

> RTP (risk transfer premium) shall mean the amount paid to a Claimant for any and all alleged damage, **including potential future injuries, damages or losses not currently known, which may later manifest themselves or develop,** arising out of, due to, resulting from, or relating in any way to the Deepwater Horizon Incident, and any other type or category of damages claimed, including claims for punitive damages.

Settlement Agreement (Doc. 6276-1, p. 107, ¶ 38.124) (emphasis added).

The risk of future damages is enormous.  BP dispersed the crude oil through, among other things, use of Corexit® brand chemical dispersants, and such dispersants, combined with the crude oil, formed a compound (the "Compound") that sank below the surface of the Gulf into the water column and, in some instance, onto the seabed.  Such dispersants are reportedly toxic to certain species of bacteria known to biodegrade crude oil, slowing such biodegradation and extending the term of the environmental threat posed by the crude oil.  All or parts of the Compound now offshore in the Gulf can at any time be carried to the shoreline by certain severe weather, contaminating or re-contaminating the shoreline and compelling new and independent clean-up efforts to remediate the contamination or re-contamination.

Class members who sold their real property after December 31, 2010, are not subject to the risk of future damages; class members who continue to own their real property are subject to the risk of future damages.  Thus, class members who continue to own their real property should receive a higher RTP than class members who have sold their property.

**Yet, the RTP for current owners and sellers is exactly the same:  2.5.**  *Id.* p. 7.  Thus, the Settlement Agreement fails to reflect the critical difference between class members who continue to own their real property and those who sold their real property after December 31, 2010.

### D.  The Basis For Determining Damages Is Arbitrary And Capricious

Every piece of real estate is unique.  *U.L. Coleman Co., Ltd v. Bossier City-Parish Metro. Planning Comm'n*, CIV.A. 08-2011, 2009 WL 497634 (W.D. La. Feb. 26, 2009).  A one-size-fits-all formula for determining damages to real property is not fair, reasonable, or adequate.  The amount of damage to a property depends on a myriad of factors, including the amount of oil, the location of the oil, the location of the property, and many other factors, including the unique nature of each piece of real estate.  For instance, consider A and B, two similarly situated Coastal Real Property Compensation Category A1 properties with 1000 feet of beach each and the same appraised value.  Oil covered the entire beach of A, but only a tiny portion of B in a remote area of the property that is rarely frequented.  The difference in damages suffered by those two otherwise similarly-situated properties is clearly exponential.  **Yet the Settlement Agreement provides the same payment to each.**

Use of the appraised value is arbitrary for other reasons.  Consider C and D, two Compensation Category A1 real property claimants with parcels next to each other,

both with exactly 1000 feet of beach each, and both with oil covering the entire beach. However, C's parcel contains 10 acres (beach front plus behind the beach) while D's parcel contains 100 acres.  Thus, the appraised value of C's parcel is substantially less than the appraised value of D's parcel.  The damage to both is exactly the same, yet the claim formula using the appraised value of the entire parcel would result in a substantially higher claim payment to D than to C.

In addition, there is no showing that taxing authority property appraisals accurately reflect the market value of the property.  There is no showing the appraisers in different jurisdictions use the same methodologies.  There is no showing that the appraised values are 18% too low across the board.  There is simply no showing whatsoever that basing damages on 1.18% of the appraised value of each parcel is anything but arbitrary and capricious.

There is no showing as to why residential real property owners suffered a minimum damage, but commercial real estate owners did not.  Yet the Settlement Agreement provides for a minimum recovery for residential real property owners, but not for commercial real property owners (Doc. 6276-23 p. 6-7).

Similar examples of the arbitrary and capricious nature of the settlement payments abound.  If a formula for damages were appropriate, federal maritime law and OPA would provide such a formula.  They do not provide such a formula for damages precisely because damages are individualized and any formula would be arbitrary and capricious.  The formula used to pay claims in the settlement are arbitrary and capricious and the court should therefore reject the settlement.

### E.  The Compensation Provided By The Settlement For Coastal Real Property Claims Is Woefully Inadequate

Ultimately the Coastal Real Property Compensation Amounts, even with the RTP, are inadequate to compensate class members for the damages they suffered.  A court abuses its discretion if it approves a class action settlement that does not provide adequate consideration for the release of the class member claims:

> Under Rule 23(e), trial judges bear the important responsibility of protecting absent class members, "which is executed by the court's assuring that the settlement represents adequate compensation for the release of the class claims."

*In re Pet Food Products Liability Litigation*, 629 F.3d 333, 349 (3rd Cir. 2010).  OPA is a strict liability statute and there is no basis for negotiating for anything less than 100% of each class members' damages.  Given BP's conduct, there is also no basis for negotiating anything less than punitive damages of 100% of compensatory damages for those class members with federal maritime claims.  *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605, 2633 (2008).  The settlement proponents have not met their burden of proof that the settlement payments are fair, reasonable, and adequate.

### F.  The *Cy Pres* Component Is Impermissible

The Settlement Agreement allocates $57 million of the money BP was willing to spend to settle the case to the "Gulf Tourism and Seafood Promotional Fund," all of which will be paid to **non-class members.**  Settlement Agreement (Doc. 6276-1, p. 51).  "The purpose of the $57 million Promotional Fund is to promote tourism and the seafood industry in Gulf Coast areas impacted by the Deepwater Horizon Incident."  *Id*.

This payment is a *cy pres* award and inappropriate in this class action because payments can be made directly to the class members.  As the Fifth Circuit recently explained:

> [A] class settlement generates property interests. Each class member has a constitutionally recognized property right in the claim or cause of action that the class action resolves. The settlement-fund proceeds, having been generated by the value of the class members' claims, belong solely to the class members.

*Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011)(footnotes omitted).

Thus:

> Because the settlement funds are the property of the class, a *cy pres* distribution to a third party of unclaimed settlement funds is permissible "only when it is not feasible to make further distributions to class members." Where it is still logistically feasible and economically viable to make additional pro rata distributions to class members, the district court should do so, except where an additional distribution would provide a windfall to class members with liquidated-damages claims that were 100 percent satisfied by the initial distribution.

*Id.* at 475 (footnotes omitted).  In this case, "it is still logistically feasible and economically viable to make additional pro rata distributions to class members," and "class members [do not have] liquidated-damages claims that were 100 percent satisfied by the initial distribution."  Thus, the court may not approve the Settlement Agreement because it contains an impermissible *cy pres* provision.

### G. Leaving Money On The Table

By negotiating for a separate payment of attorneys' fees, Class Counsel left money on the table.  Under the "combined agreement option," with the fee coming from the $8.4 billion settlement amount rather than from a separate fee agreement, the benefits to the class would have been $600 million richer.  Any portion of the $600 million not awarded in fees that BP was willing to pay to settle the case would be paid to the class, not BP.  Instead, Class Counsel reached separate settlement and fee agreements, meaning that the difference between the fee award and the $600 million

will revert to BP.  That is money that BP was willing to pay to settle the case, so should have gone to class members, not BP.

### H.  CAFA Notice

Objectors have been unable to determine whether Defendants have complied with the Class Action Fairness Act of 2005:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement **shall** serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement …

28 U.S.C. § 1715 (b).  Since many beachfront properties are owned by residents from throughout the United States, the statute likely required notice of the Settlement to all state Attorneys General.  Unless there is proof that BP complied with that requirement, the court may not enter a final judgment:

> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b).

28 U.S.C. § 1715 (d).

## V.

## OBJECTIONS TO CLASS COUNSEL'S FEE

The court should not certify the Settlement Class, and if it does certify, it should disapprove the Settlement Agreement.  If the court grants Objectors' objections to either certification or the Settlement Agreement, then it would not need to reach the issue of Class Counsel's fee request.  However, if the court certifies the Settlement Class and approves the Settlement Agreement, the court should deny Class Counsel's fee request.

## A. Class Counsel Did Not Timely File The Fee Request

Class Counsel's fee *motion* must be filed in a timely manner, well before the

objection deadline:

> In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:
>
> (1) A claim for an award must be made **by motion** under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. **Notice of the motion must be** served on all parties and, for motions by class counsel, **directed to class members in a reasonable manner**.
>
> (2) A class member, or a party from whom payment is sought, may object to the motion.
>
> (3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52 (a).

FED. R. CIV. P. 23 (h)(emphasis added).  The *fee motion*, not just the notice of the

amount of the fees requested, must be filed in a timely manner to give class members

adequate time to review the fee motion before the objection deadline:

> The plain text of the rule requires that any class member be allowed an opportunity to object to the fee "motion" itself, not merely to the preliminary notice that such a motion will be filed.

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 993-994 (9th Cir.

2010). Class members must be given sufficient time to review the motion and

supporting documentation:

> The Advisory Committee Notes to the 2003 amendments to Rule 23(h) further support this reading of the rule. They elaborate that "[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion." Fed. R. Civ. P. 23, 2003 Advisory Committee Notes, ¶ 68. The Advisory Committee Notes further contemplate that, in appropriate cases, the court will permit an "objector discovery relevant to the objections." *Id.* ¶ 69. Clearly, the rule's drafters envisioned a process much more thorough than what occurred in this case.

*Id.* at 994.  The failure to provide adequate time to review the fee motion constitutes a

denial of due process:

> When the district court sets a schedule that denies the class an adequate
> opportunity to review and prepare objections to class counsel's completed
> fee motion, it fails to fulfill its fiduciary responsibilities to the class.

*Id.* at 995.  The Ninth Circuit relied on commentators in reaching this "logical"

interpretation of the rule:

> Commentators also agree with this logical interpretation of the rule. For
> example, Moore's Federal Practice counsels that "[a]ny objection deadline
> set by the court should provide the eligible parties with an adequate
> opportunity to review all of the materials that may have been submitted in
> support of the motion and, in an appropriate case, conduct discovery
> concerning the fees request." 5 Moore's Federal Practice § 23.124[4]
> (Matthew Bender 3d ed. 2009). Allowing class members an opportunity
> thoroughly to examine counsel's fee motion, inquire into the bases for
> various charges and ensure that they are adequately documented and
> supported is essential for the protection of the rights of class members. It
> also ensures that the district court, acting as a fiduciary for the class, is
> presented with adequate, and adequately-tested, information to evaluate
> the reasonableness of a proposed fee. *Id.*

The objection deadline in this case is August 31, 2012.  As of the filing of these

objections, Class Counsel have not filed their fee motion.   Respectfully, the court erred

in failing to require in the preliminary approval order, or any order, that Class Counsel

file the fee motion sufficiently in advance of the objection deadline to permit class

members to review and analyze the motion before the objection deadline.  *See*, FED. R.

CIV. P. 23 (h)(1)("A claim for an award must be made by motion under Rule 54(d)(2),

subject to the provisions of this subdivision (h), **at a time the court sets**.").  In addition,

the court erred by setting the objection deadline before the actual filing of the fee

motion:

> We hold that the district court abused its discretion when it erred as a
> matter of law by misapplying Rule 23(h) in setting the objection deadline
> for class members on a date before the deadline for lead counsel to file

their fee motion. Moreover, the practice borders on a denial of due process because it deprives objecting class members of a full and fair opportunity to contest class counsel's fee motion.

*Id.* at 993.

### B. The Fee *Is* Coming From The Class Members' Recoveries

Based on the settlement proponent's representations, the court concluded that:

the provision that any Class Counsel fees and costs awarded by the Court will not be deducted from Class Members' recoveries or their private attorneys' fees, but will be paid by BP in addition to other class benefits.

(Doc. 6418, p. 32.)  In reality, of course, the $600 million *was* deducted from Class Member's recoveries.  BP was willing to pay a total of $8.4 billion to settle, consisting of (1) the $7.8 billion in alleged payments set out in the Settlement Agreement, plus (2) $600 million.  With a "combined agreement option," with the fee coming from the settlement amount rather than from a separate fee agreement, BP would have agreed to more generous payments to class members in the settlement – totaling $8.4 billion in estimated benefits rather than $7.8 billion.  But once Class Counsel insisted on bifurcating the agreements, BP logically reduced the payments provided for in the settlement by the amount they needed to reserve for paying Class Counsel.  While only BP knows the exact amount of the reduction, it was clearly in the neighborhood of $600 million since BP agreed to pay that amount in fees.  *In fact, since the $600 million fee agreement was allegedly made in less than a day of negotiations, BP likely expected to pay more and quickly agreed to the lower amount.*  Thus, it is reasonable to presume that BP reduced the settlement benefits by even more than $600 million.

When Class Counsel made the self-interest decision to negotiate the settlement and fee issue separately, which thereby reduced the amount available to pay class member claims, they became an adversary to the class:

> During the fee-setting stage of common fund class action suits such as this one, "[p]laintiffs' counsel, otherwise a fiduciary for the class, ... become[s] a claimant against the fund created for the benefit of the class." This shift puts plaintiffs' counsel's understandable interest in getting paid the most for its work representing the class at odds with the class' interest in securing the largest possible recovery for its members. Because "the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." As a fiduciary for the class, the district court must "act with 'a jealous regard to the rights of those who are interested in the fund' in determining what a proper fee award is."

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994-995 (9th Cir. 2010)(citations omitted).  The facade of separating the negotiations regarding the settlement and the fee does not change the fact that Class Counsel was a claimant to the funds BP was willing to pay to settle the case, and was a claimant adverse to class members.

## C.  The Allegation Of Negotiating The Settlement And Fees Separately

The proponents claim that the negotiations over the fees did not begin until after the date of the Settlement Agreement:

> The Parties have not had any fees discussion to date, and **will not have such a discussion until the Court has first authorized such discussions**.

Settlement Agreement (Doc. 6276-1, p. 78-79) (emphasis added).  It is unclear whether the court authorized the discussions, and if it did, when it did.  In the attorney fee agreement Exhibit to the Settlement, the parties claimed that:

> Interim Class Counsel under the Economic Agreement and the Medical Settlement Agreement and BP's Counsel commenced negotiations on common benefit and/or Rule 23(h) attorneys' fees and costs on April 17, 2012, only after such Interim Class Counsel and BP's Counsel reached agreement on all of the material terms of the Economic Agreement and the Medical Settlement Agreement **and delivered that information to the Court**.

(Doc. 6276-46, Exhibit 27 p. 1) (emphasis added).  That agreement is dated April 18.

So the parties would have the court believe that they began, finished, obtained PSC

approval, and obtained BP corporate approval of a **$600 million deal** in less than a day.

That story is highly suspect.  Objectors request that the court permit discovery of

the settling parties to test the veracity of those claims.  Objectors hereby request that

the court stay the fairness hearing and provide objectors with 90 days to conduct

discovery regarding the negotiations over attorneys' fees.

### D.  If Any Fee Is Awarded, It Should Be Based On The Benefit Provided To Class Members

Class Counsel failed to satisfy their burden that it conferred a benefit on the

class, or the amount of that benefit:

> Compensating counsel for the actual benefits conferred on the class
> members is the basis for awarding attorney fees. The "fundamental focus
> is the result actually achieved for class members." That approach is
> premised on finding a tangible benefit actually obtained by the class
> members.

MANUAL FOR COMPLEX LITIGATION 4th § 21.71.  The "benefit" must exceed what the class

would have received under the GCCF procedure in the absence of the settlement:

> Adequacy of the settlement involves a comparison of the relief granted
> relative to what class members might have obtained without using the
> class action process.

*Id.* § 21.62.  The alleged $ 7.8 billion value of the settlement is not the true value of the

benefit actually obtained for the class members.  OPA is a strict liability statute, and

class members need only prove a loss and the amount thereof to recover.  Under the

settlement, they must still do so.

Most importantly, Class Counsel failed to meet their burden of quantifying the

alleged benefits of the settlement over the existing GCCF procedure.  Prior to the

settlement, BP set up the GCCF to settle claims, and the GCCF has paid out over $7 billion in claims to individuals and businesses.  *See:* http://www.bp.com/sectiongenericarticle.do?categoryId=9036580&contentId=7067577 (accessed July 19, 2012).  There is no evidence that GCCF would have stopped paying out on claims up to, or even in excess of, the alleged amounts to be paid out under the settlement.  Class Counsel have the burden to prove that they conferred a benefit on the class, and they have failed to meet that burden as to whether, and how much, the settlement benefits class members over the amounts class members would have received under the GCCF procedure in the absence of the settlement.

Nor have Class Counsel shown a difference between what claimants receive under the settlement and what opt-outs are receiving under BP's substitute for the GCCF.  Since class members who opt out of the settlement are, by definition, not covered by the settlement, a comparison between the claims payments to opt outs and what the opt outs would have received under the settlement would be instructive as to whether the settlement provided any benefit to class members.  For instance, if opt outs are receiving the same, or more, in payments then they would have received under the settlement, then the settlement has not provided any benefits for the class.  Class Counsel has failed to meet its burden to present the evidence comparing settlement payments and opt out payments.

**E.  The Payment Provisions for the Attorneys' Fees Improperly Circumvents the Safeguards of Rule 23(h) and Creates a Conflict Between the Class and Their Attorneys who are Now Foreclosed from Collecting any Fee due to their Disloyalty**

When Class Counsel breaches its duty of loyalty to the class, it waives any right to a fee for its services.  *Rodriguez v. W. Pub. Corp.*, CV 05-3222 R (MCX), 2010 WL

682096 (C.D. Cal. Feb. 3, 2010);  *see also, Burrow v. Arce*, 997 S.W.2d 229, 243 (Tex. 1999).  Class Counsel breached its duty to the class in several ways.

### a.  Making The Settlement Contingent On A Fee Agreement

The Settlement Agreement provides that:

> As a material term and condition precedent to a Settlement Agreement, the BP Parties and the PSC must reach agreement regarding the amount of attorneys' fees and costs for the common benefits to the putative Economic Class.

(Doc. 6276-1, p. 78.)  Class Counsel was willing to destroy the entire settlement that supposedly benefits the class if Class Counsel did not get a "clear sailing" agreement for fees for themselves.  By making the settlement contingent on an agreement for their fees, Class Counsel showed that they put their own interests before the interests of the class.  The inclusion of that provision in the settlement constituted a "clear and serious" violation of Class Counsel's duty to the class.  Thus, Class Counsel has forfeited its right to a fee.

### b.  Making A Separate Fee Agreement

Class Counsel was faced with two choices in negotiating a fee:  (1) negotiate a combined settlement/fee agreement, with the fee coming from the settlement amount ("combined agreement option"), or (2) negotiate a separate settlement and fee agreement ("separate agreements option").  The "combined agreement option" is in the best interests of the class members because it assures the maximum recovery for the class (without any "holdback" by the Defendant to reach the separate fee agreement) *and* it provides that that if the court awards less than the requested amount to Class Counsel, that money "reverts" to the class, not the Defendant.  The "separate agreements option" is in the best interests of Class Counsel, because they eliminate the

argument – and the court's concern – that their fee will reduce the class recovery (although in fact, as shown above, it does).  As the MANUAL explains:

> if negotiations are to be conducted in stages, counsel must scrupulously avoid making concessions affecting the class for personal advantage.

MANUAL FOR COMPLEX LITIGATION 4th § 21.7, p. 335.

Yet, that is exactly what Class Counsel did here – they made a concession affecting the class (making the settlement contingent on their fee agreement) for their personal advantage.  By selecting the "separate agreements option," Class Counsel placed their own interests before those of the class.  Class Counsel's decision to place their own interests before the class members' interests in that way constituted a "clear and serious" violation of Class Counsel's duty to the class.  Thus, Class Counsel has forfeited its right to a fee.

### c.    Demanding Payment Before Final Approval is Ludicrous

The unapproved attorney fee agreement provides for payments of 6% of all settlement claims made prior to the final fairness hearing.  Fed. R. Civ. Proc. 23(h), subpart (1) provides, "[a] claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."  Class action procedural law requires that attorneys' fees be requested by way of motion, approved by the Court, and then paid to counsel – in that order.  Class counsel has cleverly circumvented this requirement.

According to paragraph 4 of Exhibit 27 to the economic and property damage settlement agreement, class counsel were paid their attorneys' fees as early as the approval of the preliminary settlement motion. (Doc. 6276, ex. 27.)  Ignoring all

safeguards and Congressional mandates, Subsection (a) states that class counsel will be paid $75 million within 30 days of approval of the preliminary settlement.   The following subsections provide for additional payments made on a quarterly basis. Subsection (b) of paragraph 4 provides that the "BP Parties shall irrevocably pay into the Common Benefit Fee and Costs Fund an amount equal to 6% (six percent)" of the aggregate settlement payments paid under the Economic Settlement, payable 15 days after the end of each calendar quarter.  (Stlmt Agmt., Ex. 27, ¶4(b)).  Subsection (c) provides the same language with respect to payments made under the medical agreement.   And in what can only be called a new benchmark for class counsel arrogance, subsection (d) of paragraph 4 provides that class counsel may be paid up to $480,000,000 in advance of the final fairness hearing and any approval of the fee award.

Claims are already being made against the common fund, as claims were 'permitted' (by the terms of the settlement) to be made upon preliminary approval of the settlement, with execution of an individual release.  (Notice,  ¶ ---.)  The early payment of claims is not, in itself, a strict violation of Rule 23, but the payment of fees prior to a motion or final approval by the Court certainly is.  Class counsel has managed to circumvent the Rule 23 requirement that the Court approve any attorneys' fee request made in conjunction with the settlement of a class action.  This is a clear violation of the Rules and to approve such a provision would likewise be a new standard for an abuse of discretion.

/ / /

### d.    The "Quick-Pay" Provision Creates another Conflict.

A "quick pay" provision is a settlement term which provides for a specified, shortened time-frame within which class counsel will be paid their attorneys' fees, regardless of whether an appeal is pending.  This settlement agreement has such a provision at Exhibit 27, paragraph 4(e), which permits class counsel to be paid within 30 days of this Court's final approval order, regardless of whether the settlement is appealed or not.

The inherent issue with this quick pay provision lies in class counsels' fiduciary duty which they owe to the class.  When attorneys negotiate a quick-pay provision for themselves, it is a clear indication that they are putting their own interests ahead of their clients.  The attorneys demand payment for an uncertain result, while their clients wait out the appeal.  They are de-incentivized to vigorously pursue resolution of the appeal because they have already been paid.  Further, to the extent the court of appeals finds the attorneys' fee award to be excessive, what real remedy is available to the class to share in moneys perhaps long since spent by their attorneys.  Are the attorneys insured?  Will they post a bond to secure their clients' funds?  The quick-pay provision must be rejected and all attorney fees must be paid after the clients or in conjunction with the class disbursements.

## F.  No Justification For A $600 Million Fee

The Fifth Circuit requires that fees be set using the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  Although the burden of proof is on Class Counsel, and Objectors have not been given adequate time to review the fee request, several factors point to a fee substantially lower than $600

million.  Importantly, the court should consider the fee as it applies separately to OPA-claim-only class members and class members with federal maritime claims.

### 1. Fee Analysis Relating To OPA-Claim-Only Class Members

For OPA-claim-only class members, very little of the time and labor spent applies to their claims.  OPA is a strict liability statute, so none of the discovery, motion practice, or trial preparation related to fault, negligence, punitive damages, or federal maritime claims applies to those class members.  Objectors anticipate that the very large majority of the time spent by Class Counsel – probably over 90% – is unrelated to OPA claims. Moreover, it is Class Counsel's duty to segregate out the time spent on the separate claims.  Only a very small fee, if any, should be awarded for OPA claims:

- *The time and labor required*.  Class Counsel has the burden to provide this information, and should be required to segregate all OPA-related work and work on federal maritime claims.  If they fail to segregate, no fee should be awarded.  If they do segregate, Objectors anticipate that the time and labor required for OPA claims was relatively small.

- *The novelty and difficulty of the issues*.  For OPA claims, for which there is strict liability, there is nothing novel or difficult.  This factor would justify a reduction of the lodestar.

- *The skill required to perform the legal services properly*.  For OPA claims, for which there is strict liability, very little skill is required.  This factor would justify a reduction of the lodestar.

- *The preclusion of other employment*.  Given the little time needed for OPA claims, this factor would justify a reduction of the lodestar.

- *The customary fee*.  The customary fee for a strict liability statutory claim like an OPA claim is not at the exorbitant levels that the PSC charge.  This factor would justify a reduction of the lodestar.

- *Whether the fee is fixed or contingent*.  The fee is contingent, but with strict liability, there was little risk.  This factor would justify a reduction of the lodestar.

- *Time limitations imposed by the client or the circumstances*. Given the little time needed for OPA claims, this factor would justify a reduction of the lodestar.

- *The amount involved and the results obtained*.  As shown above, Class Counsel have not shown that they obtained any results for Class Members that Class Members would not have received under the GCCF.  Unless Class Counsel provides the necessary proof, this factor would eliminate any fee award.

- *The experience, reputation, and ability of the attorneys*.  Objectors concur that the experience, reputation and ability of the PSC attorneys is exceptional.  However, such a level is not necessary for a strict liability statutory claim like an OPA claim, so no upward multiplier should be used for this factor.

- *The undesirability of the case*.  A strict liability statutory claim like an OPA claim is a highly desirable case.  This factor would justify a reduction of the lodestar.

- *The nature and length of the professional relationship with the client*.  This factor is neutral and should not affect the lodestar up or down.

- *Awards in similar cases.* A "similar" case would be one in which the Defendant had already willingly paid billions of dollars of claims when the settlement was reached. Objectors have not located any such similar cases.

## 2. Analysis As It Relates To Federal Maritime Claim Class Members

Unlike the OPA-claim-only class members, Class Counsel's time and efforts regarding discovery, motion practice, or trial preparation related to fault, negligence, punitive damages, or federal maritime claims generally applies to class members with federal maritime claims. However, as the Coastal Real Property Claim example above shows, the RTP, which is supposed to include payment for the punitive damages claims, in fact does not do so. Federal maritime claimants were already able to recover their compensatory damages under OPA. The only additional benefit of the federal maritime claim – and all of Class Counsel's efforts regarding discovery, motion practice, or trial preparation related to fault, negligence, punitive damages, or federal maritime claims – was to recover punitive damages. *But since Class Counsel did not obtain any punitive damage benefit in the settlement, they are not entitled to a fee for work associated with that work.*

## G. Joinder in Other Objections

This Objector joins in all other well-founded and meritorious objections filed in this matter.

## VI.

## CONCLUSION

For the foregoing reasons and all others presented at oral argument, this Objector respectfully requests that the Court sustain his objections and grant the following relief:

A.      Upon proper hearing, sustain these Objections;

B.      Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement;

C.      Order class counsel to submit a fee application pursuant to the Ninth Circuit's In re Mercury guidelines, schedule a second objection deadline, and a second fairness hearing to adjudicate the fee issue;

D.      Award an incentive fee to this Objector for their service in improving the fairness of the settlement, as well as awarding an attorneys' fee to their attorney.

Dated: August 31, 2012                    LAW OFFICES OF DARRELL PALMER PC


By: /s/ Joseph Darrell Palmer_____
         Joseph Darrell Palmer

Joseph Darrell Palmer
Law Offices of Darrell Palmer PC
603 N. Highway 101, Suite A
Solana Beach, CA 92075
Phone: (858) 792-5600
Fax: (858) 792-5655
Email: darrell.palmer@palmerlegalteam.com

Attorney for Objectors
James H. Kirby III, Mike and Patricia Sturdivan,
and Susan Forsyth

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2012, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the USDC CM/ECF system.

Service on participants in the case who are registered CM/ECF users will be accomplished by the USDC CM/ECF system.

I further certify that the foregoing document was also served by First-Class Mail, postage prepaid, to the following participants:

James Parkerson Roy
Attn: Deepwater Horizon E&PD Settlement
Domengeaux Wright Roy & Edwards
556 Jefferson St., Suite 500
P.O. Box 3668
Lafayette, LA 70501

Stephen J. Herman
Attn: Deepwater Horizon E&PD Settlement
Herman Herman Katz & Cotlar LLP
820 O'Keefe Avenue
New Orleans, LA 70113

Richard C. Godfrey, P.C.
Attn: Deepwater Horizon E&PD Settlement
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654


/s/ Joseph Darrell Palmer
Joseph Darrell Palmer
Attorney for Objectors