**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: OILS SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO ON April 20, 2010 | Civil Action No.: 10-7777 |
| | No. 2179<br>Section J |
| Applies to:<br>12-968 and 120-970<br>Cases within Pleading bundles<br>B1 and B3 | JUDGE BARBIER<br>MAGESTRATE SHUSHAN |

**OBJECTIONS TO  MEDICAL BENEFITS PORTION**
**OF PROPOSED CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

I.      SUMMARY OF OBJECTIONS ……………………………………….   2
        A.      The Rule 23 (a)(2) Commonality Requirement Is Not Met …………….   2
        B.      The Rule 23 (a)(3) Typicality Requirement Is Not Met …………………   2
        C.      The Rule 23 (a)(4) Adequacy Requirement Is Not Met …………………   3
        D.      The Rule 23 (b)(3) Predominance Requirement Is Not Met …………….   3
        E.      The Rule 23 (b)(3) Superiority Requirement Is Not Me …………………   3

II.     OBJECTORS OBJECT TO THE SETTLEMENT FOR THE FOLLOWING
        REASONS …………………………………………………………….   4

III.    OBJECTORS OBJECT TO A FEE AWARD TO CLASS COUNSEL FOR THE
        FOLLOWING REASONS ……………………………………………….   4

IV.     OBJECTORS …………………………………………………………….   5

V.      OBJECTIONS TO CERTIFICATION OF THE SETTLEMENT CLASSES .   6
        A.      The Rule 23 Requirements For Certification  ………………………..   6
        B.      Lack of Commonality  …………………………………………….   7
        C.      Typicality …………………………………………………………   8
        D.      Lack of Adequate Representation ……………………………………   8
                1.      Class Representatives and Class Counsel Were Disarmed ……….   10
                2.      Separate Subclasses With Separate Counsel Should Have Been
                        Created for Injured Class Members and Exposure-only
                        Class Members ……………………………………………   10
                3.      Separate Subclasses With Separate Counsel Should Have Been
                        Created for Past Exposure Class Members and Yet-To-Be
                        Exposed Class Members …………………………………….   11
        E.      Separate Class Representatives and Counsel Should Have Been
                Appointed to Represent the Class Members in the Separate Damage
                Categories  …………………………………………………….   13
        F.      Giving Away Class Member Money to Non-Class Members ………….   13
        G.      Class Counsel Were Inadequate Representatives Because They Put
                Their Own Interests Before The Interests of the Class …………………   13
                1.  Making The Settlement Contingent On A Fee Agreement ………….   14
                2.  Making A Separate Fee Agreement ……………………………….   14
        H.      Lack of Predominance ……………………………………………….   15
                1.      Issues Regarding Clean-Up Workers Will Not Predominate …….   15
                2.      The Requirements of Providing Specific Causation Prevents
                        A Predominance Finding  …………………………………….   16
                3.      A Finding of Predominance Would Violate Numerous
                        Fifth Circuit Cases …………………………………………….   17
        I.      Lack of Superiority ………………………………………………….   19
                1.  Certification of Mass Torts Claims Is Not Superior …………………   19
                2.  Many Class Member Claims Are Not "Negative Value Suits" ……….   19

VI.     OBJECTIONS TO THE SETTLEMENT ……………………………………   19
        1.  The Cy Pres Component of this Settlement is Flawed and Cannot be

        Approved ………………………………………………………………… 21

2.  The Amount of the Payments for Specified Physical Conditions is
Arbitrary and Capricious ……………………………………………… 23

3.  The Compensation Provided by the Settlement is Woefully Inadequate ……. 24

4.  The Settlement Agreement Waives All Claims for Certain Past
Exposures Without Any Compensation …………………………………… 25

5.  Class Members May not Bring a BACK-END LITIGATION OPTION
LAWSUIT for Damages Resulting from the Uncompensated-for
Past Expenses ………………………………………………………… 26

6.  Damages for the Uncompensated-for Past Exposures are Waived …………. 27

7.  Releasing Damage Claims for the Uncompensated-for Exposures
Is Not Fair, Reasonable or Adequate …………………………………… 27

8.  The Settlement Agreement Waives All Claims for Future Exposures
Without Providing Any Compensation  …………………………………… 28

9.  The Election of Remedies Provisions of the BACK-END LITIGATION
OPTION for LATER-MANIFESTED PHYSICAL CONDITIONS
Are Unfair and Unreasonable …………………………………………… 29

10. Leaving Money On the Table by Entering a Separate Fee Agreement ……… 30

11. Lack of Claims Appeal Process ………………………………………… 30

12. Violation of Rule 23 and Due Process by Allowing Class Counsel
To Decide Whether Material Modifications to the Settlement May
Be Made Without New Notice, Opt Rights, and Objection Rights …………. 32

VII.    OBJECTIONS TO CLASS COUNSEL'S FEE ………………………… 33

    1.    Class Counsel Did Not Timely File The Fee Request ………………. 33

    2.    The Fee Is Coming From The Class Members' Recoveries …………… 35

    3.    The Allegation Of Negotiating The Settlement And Fees
Separately ………………………………………………………… 36

    4.    Class Counsel Waived Any Fee by Being Disloyal to the Class ………… 37

    5.    Making the Settlement Contingent on a Fee Agreement ………………… 37

    6.    Making a Separate Fee Agreement ……………………………… 38

VIII.   CONCLUSION ………………………………………………… 39

# TABLE OF AUTHORITIES

## CASES

Acosta v. Trans Union, LLC
243 F.R.D. 377, 388 (C.D. Cal. 2007) ………………………………………………… 28

Amchem Products, Inc. v. Windsor
521 U.S. 591, 614 (1997) ………………………………………………............. 6, 8, 10, 11

Bell Atlantic v. AT&T
339 F.3d 294 (5th Cir. 2003) ……………………………………….......................    18

Brandner v. Abbott Laboratories, Inc.
CIV.A. 10-3242, 2012 WL 195540 (E.D. La. Jan. 23, 2012) ……………………………  16

Burrow v. Arce
997 S.W.2d 229, 243 (Tex. 1999) …………………………………........................    37

Castano v. Am. Tobacco Co.
84 F.3d 734, 746-47 (5th Cir. 1996) …………………………………......................   19

Crawford v. Equifax Payment Servs.
201 F.3d 877, 882 (7th Cir.2000) ………………………………………………………… 28

Dennis v. Kellogg Co.
2012 WL 2870128 (9th Cir., July 13, 2012) ……………………………..................... 22

Devlin v. Scardelletti
**536** U.S. 1, 7 (2002) …………………………………………….........................    5

Ehrheart v. Verizon Wireless
609 F.3d 590, 593 (3rd Cir. 2010) …………………….……….……….......................   33

Evans v. Jeff D.
475 U.S. 717, 726 (1986) …………………………………………………………………… 33

Exxon Shipping Co. v. Baker
128 S. Ct. 2605, 2633 (2008) …………………………………….......................    18

Hanlon v. Chrysler Corp.
150 F.3d 1011, 1026 (9th Cir. 1998) …………………………………….......................   20

In re Agent Orange Prod. Liab. Litig.
818 F.2d 179, 185 (2nd Cir.1987) ………………………………………………………… 31

In re Baycol Prods. Litig.
218 F.R.D. 197, 205 (D. Minn. 2003) …………………………………………………… 8

In re FEMA Trailer Formaldehyde Products Liab. Litig.
2008 WL 5423488 (E.D. La. 2008) …………………………………………………… 8

In re Gayle
189 B.R. 914, 916 (Bankr. S.D. Tex. 1995) ……………………………………………… 29

In re Mercury Interactive Corp. Securities Litigation
618 F.3d 988, 994-995 (9th Cir. 2010) ……………………………………................. 34, 36

In re Pet Food Products Liability Litigation
629 F.3d 333, 350 (3rd Cir. 2010) ……………………………….................... 20, 24, 28

In re Phenylpropanolamine (PPA) Prods. Liab. Litig.
208 F.R.D. 625, 631–32 (W.D.Wash.2002) ………………………………………………… 17

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions
148 F.3d 283, 316 (3d Cir. 1998) …………………………………….......................   20

In re Vioxx Products Liability Litigation
239 F.R.D. 450, 459–60 (MDL No. 1657 2006)  ………………………………………… 8, 17

In Re Wells Fargo Securities Litigation
991 F.Supp. 1193, 1194-95 (N.D. Cal. 1998) ……………………………......................... 21

Klier v. Elf Atochem N. Am., Inc.
658 F.3d 468 (5th Cir. 2011) ……………………………………………………  3, 4, 21-23

Larson v. AT&T Mobility LLC
10-1285, 2012 WL 2478376 (3d Cir. June 29, 2012) …………….........................   9

Literary Works in Electronic Databases Copyright Litigation v. Thomson Corp.
654 F.3d 242, 245 (2nd Cir. 2011) ……………………………………….................... 9

Madison v. Chalmette Ref., L.L.C.
637 F.3d 551 (5th Cir. 2011) …………………………………….........................   17

M.D. ex rel. Stukenberg v. Perry
675 F.3d 832, 840 (5th Cir. 2012) …………………………………….......................  6

Nachshin v. AOL, Inc.
663 F.3d at 1038 (2011) …………………………………….......................... 22

Ortiz v. Fibreboard Corp.
527 U.S. 815, 856, n. 31 (1999) ……………………………........................ 8, 10, 11

Phillips Petroleum Co. v. Shutts
472 U.S. 797, 812 (1985) ……………………………….........................   8

Reynolds v. Beneficial Nat. Bank
288 F.3d 277 (7th Cir. 2002) ……………………………………………………………………  28

Rodriguez v. W. Pub. Corp.
CV 05-3222 R (MCX) 2010 WL 682096 (C.D. Cal. Feb. 3, 2010) …..……………............ 37

Six (6) Mexican Workers v. Arizona Citrus Growers
904 F.2d at 1308 (9th Cir. 1990) ……………………………............................  22

Smith v. Sprint Communications Co.
387 F.3d 612, 614 (7th Cir.2004) ……………………………………………………  10, 31

*Steering Comm. v. Exxon Mobil Corp.*
461 F.3d 598 (5th Cir. 2006) ……………………………………............................  18

Wal-Mart v. Dukes
131 S. Ct. 2541 (2011) ………………………………………………….................... 2, 6, 7

## STATUTES

**FEDERAL RULES OF CIVIL PROCEDURE:**

Rule 23                    ………………………………………….............  4, 6, 17, 32, 33
Rule 23 (a)                ……………………………………………….................... 6, 7, 10
Rule 23 (a)(2) …………………………………………………….......................  2
Rule 23 (a)(3) …………………………………………………….................  2, 8
Rule 23 (a)(4) ……………………………………………………................  3, 8
Rule 23 (b)                ………………………………………………………  6
Rule 23 (b)(3) ……………………………………………………........ 3, 6, 7, 15, 17-19
Rule 23 (e)                …………………………………………….................... 24, 27, 33
Rule 23 (e)(2) …………………………………………………………........  19
Rule 23 (e)(5) ……………………………………………………........  5
Rule 23 (h)                …………………………………………….................... 34, 35, 37
Rule 23 (h)(1) ……………………………………………………….......................  35
Rule 52(a)                ………………………………………………….................  34
Rule 54(d)(2)            …………………………………………………........ 34, 35

## OTHER AUTHORITY

Longshore and Harbor Workers' Compensation Act …………………….............................  30

## TREATISES

5 Moore's Federal Practice § 23.124[4] (Matthew Bender 3d Ed. 2009) ….....……...........  35
Managing Class Action Litigation: A Pocket Guide For Judges, Second Edition
(Federal Judicial Center 2009) ………………………………………….......................... 20, 28
Manual For Complex Litigation 4th  ……………………………................... 8, 9, 14, 20, 28, 38

## OTHER WRITTEN MATERIAL

*Findings of Persistency of Polycyclic Aromatic Hydrocarbons in Residual Tar Product Sourced from Crude Oil Released during the Deepwater Horizon MC252 Spill of National Significance*, dated April 14, 2012 …………………………   25

## I.  SUMMARY OF OBJECTIONS

Class members Mike and Patricia Sturdivant, Susan Forsyth, and James H. Kirby IV (together, "Objectors"), object to certification of the Settlement Class, the proposed Settlement, and Class Counsel's fee request for the following reasons:

Our names are Mike and Patricia Sturdivant. We are members of the class. We reside at 221 Ventana Blvd in Santa Rosa Beach, FL 32459. We resided at that address at all relevant times herein and we were physically present. We also suffered physical injury from dispersants and hydrocarbons. Residency Proof Ex A

My name is Susan Forsyth. I am a member of the class. I reside at 1703 1 Beach Club Dr., Miramar Beach, FL 32550. I was physically present on the property continuously from 20 June – 20 August, 2010 as well as other times during the relevant period. In addition, I suffered physical injury as a result of exposure to hydrocarbons and dispersants. Residency Proof Ex B

My name is James H. Kirby IV. I am a member of the class. I reside at 630 Fairway Avenue, NE in Ft. Walton Beach, FL 32547. I resided at that address at all relevant times herein and was physically present. At the time of the spill I was attached to Coast Guard, Unit MSU in Port Arthur, Texas. Later, I was attached to ICP in Mobile, Alabama and served in Panama City, Florida. Residency Proof Ex C.

### A.  The Rule 23 (a)(2) commonality requirement is not met

a.  The Class members have not "suffered the same injury," as required by *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011).

### B.  The Rule 23 (a)(3) typicality requirement is not met

a.  The typicality requirement is not met. Factual variations as to each class member spawn individual issues relating to injury and causation. There is therefore no typicality.

**C. The Rule 23 (a)(4) adequacy requirement is not met**

    a.  The class representatives and Class Counsel were inadequate because they were disarmed.  Since they were unable to use the threat of a litigation class to press for a better offer, they were *per se* inadequate representatives of the class.

    b.  Separate subclasses with separate counsel should have been created for injured class members and exposure-only class members.

    c.  Separate subclasses with separate counsel should have been created for past-exposure class members and yet-to-be exposed class members.

    d.  Separate class representatives and counsel should have been appointed to represent the class members in the separate damage categories.

    e.  Class Counsel and the class representatives were inadequate because they agreed to give away to third parties the class members' settlement money in violation of *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468 (5th Cir. 2011).

    f.  Class Counsel were inadequate representatives because they put their own interests before the interests of the class by (1) making the Settlement Agreement contingent on their obtaining a "clear sailing" fee agreement from BP, and (2) separating the negotiation of the Settlement Agreement and fee agreement, a process that benefits Class Counsel to the detriment of class members.

**D. The Rule 23 (b)(3) predominance requirement is not met**

    a.  Since commonality is not met, predominance is not met.

    b.  At least as to Clean-Up Workers, individual damage issues will predominate.

    c.  Under Fifth Circuit precedent, predominance for this mass tort case is not met.

**E. The Rule 23 (b)(3) superiority requirement is not met**

    a.  Certification of mass injury claims is not superior to individual adjudication.

b.   Many class member claims are not "negative value suits."

## II.   OBJECTORS OBJECT TO THE SETTLEMENT FOR THE FOLLOWING REASONS:

1. The *cy pres* component of the settlement violates the rule set out in *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468 (5th Cir. 2011).

2. The amount of the payments for Specified Physical Conditions is arbitrary and capricious.

3. The compensation provided by the settlement is woefully inadequate.

4. The Settlement Agreement waives all claims for certain past exposures without any compensation and no opportunity to file a BACK-END LITIGATION claim.

5. The Settlement Agreement waives all claims for future exposures without providing any compensation.

6. The election of remedies provisions of the BACK-END LITIGATION OPTION for LATER-MANIFESTED PHYSICAL CONDITIONS are unfair and unreasonable.

7. The structure of the settlement and fee agreement impermissibly provide that any part of the fee request that is not awarded will revert to BP, not the class.

8. The appeal process for claims constitutes a denial of due process because it provides that the decision of the Claims Administrator on benefits is final.

9. The Settlement Agreement violates Rule 23 and due process by allowing Class Counsel to permit material changes to the Settlement Agreement without further notice to the class, an opportunity to opt out, or an opportunity to object.

## III.   OBJECTORS OBJECT TO A FEE AWARD TO CLASS COUNSEL FOR THE FOLLOWING REASONS:

1.   Class Counsel did not timely file the fee request.

2. Class Counsel waived the right to a fee when engaged in "clear and serious" disloyalty to the class.

## IV.   OBJECTORS

Objectors Mike and Patricia Sturdviant are members of the Medical Benefits Settlement Class. Mike and Patricia Sturdviant are natural persons whom resided in the United States as of April 16, 2012 and  resided in Zone A for some time on each of at least sixty days between April 20, 2010, and September 30, 2010 ("Zone A Resident"), and developed one or more Specified Physical Conditions between April 20, 2010, and September 30, 2010.

Objector Susan Forsyth is a member of the Medical Benefits Settlement Class. Susan Forsyth is a natural person who resided in the United States as of April 16, 2012 and  resided in Zone A for some time on each of at least sixty days between April 20, 2010, and September 30, 2010 ("Zone A Resident"), and developed one or more Specified Physical Conditions between April 20, 2010, and September 30, 2010.

Objector James H. Kirby IV  is a member of the Medical Benefits Settlement Class. James H. Kirby IV is a natural person who resided in the United States as of April 16, 2012 and was a clean up worker between April 20, 2010, and April 16, 2012, and developed one or more Specified Physical Conditions.

Objectors have standing to raise the objections herein:

Any class member may object to the proposal if it requires court approval under this subdivision (e) …

FED. R. CIV. P. 23 (e)(5);  see also, *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002).

The undersigned counsel for Objectors (1) provides this Notice of Appearance as to Objectors, (2) provides this Notice of Intent to Appear at the Fairness Hearing on behalf of Objectors, (3) will seek admission under the Local Rules.

## V.   OBJECTIONS TO CERTIFICATION OF THE SETTLEMENT CLASSES

### A.  The Rule 23 requirements for certification

The settling parties must satisfy all Rule 23 (a) requirements, as well as one of the subdivisions of Rule 23 (b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). The parties seeking certification of the settlement class bear the burden of proof as to all certification requirements. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."); *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d at 837.

Rule 23 (a) requires proof of the following:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23 (a). The settling parties seek certification under Rule 23(b)(3), so they must additionally show the following:

[T]he questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23 (b)(3).

The settling parties have not met their burden of proof under either Fed. R. Civ. P. 23 (a) or 23 (b)(3).

## B. Lack of commonality

Rule 23 (a)(2) requires that there be "questions of law or fact common to the class." As the Supreme Court made abundantly clear in *Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011), commonality is not met if the class members did not suffer *the same injury*.

Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury."

*Wal-Mart v. Dukes*, 131 S. Ct. at 2551. The Settlement Agreement shows that the class members did not suffer the same injury because it treats many different injuries separately:

- Vision conditions and symptoms;

- Upper airway/respiratory conditions and symptoms;

- Ear, nose and throat conditions and symptoms;

- Skin conditions and symptoms;

- Neurophysiological/neurological/odor-related conditions and symptoms;

- Gastrointestinal or stomach conditions and symptoms; and

- Heat-related conditions

Most importantly, *some class members have not (yet) suffered any injury at all*. For instance, both the Clean-Up Worker subgroup and the Zone B resident subgroup include class members who have been exposed to the oil and dispersants but have not yet manifested an injury. Only the Zone A residents must have "developed one or more SPECIFIED PHYSICAL

CONDITIONS between April 20, 2010, and September 30, 2010" to be in the class.  Thus, class members have **not** suffered the same injury, the commonality requirement is not met, and the Court should not certify the Settlement Class.

## C.  Typicality

Rule 23 (a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Because factual variations as to each class member spawn individual issues relating to injury and causation as to each individual, the class representatives' claims are not typical of the class.  *In re FEMA Trailer Formaldehyde Products Liab. Litig.*, 2008 WL 5423488 (E.D. La. 2008); *In re Vioxx Products Liability Litigation,* 239 F.R.D. 450, 459–60 (MDL No. 1657 2006); *In re Baycol Prods. Litig*., 218 F.R.D. 197, 205 (D. Minn. 2003).

## D.  Lack of adequate representation

FED. R. CIV. P. 23 (a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Due process requires the same.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)("the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members").  This requirement applies to both the class representatives and class counsel.  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856, n. 31 (1999).

Adequate representation requires "structural assurance of fair and adequate representation for the diverse groups and individuals affected."  *Amchem Products, Inc. v. Windsor*, 521 U.S. at 627.  As the MANUAL FOR COMPLEX LITIGATION 4th notes, the critical element of adequate representation is that the class representatives and Class Counsel fairly and adequately represent the interests of all subgroups within the class:

> Divergent interests must be taken into account and fairly accommodated before the parties negotiate a final settlement. Consider whether the counsel who have

negotiated the settlement have fairly represented the interests of _all_ class members.

MANUAL FOR COMPLEX LITIGATION 4th § 21.612, p. 314 (emphasis added).  If significant differences in interests exist between different groups within the class, the certification must create subclasses, with separate representatives and class counsel for each subclass.  *Id*. §21.23, p. 272; s*ee also*, *Literary Works in Electronic Databases Copyright Litigation v. Thomson Corp.*, 654 F.3d 242, 245 (2nd Cir. 2011)("Only the creation of subclasses, and the advocacy of an attorney representing each subclass, can ensure that the interests of that particular subgroup are in fact adequately represented.").

Although there are conflicts in this case, conflicts are not necessary for a lack of adequacy:

> the inquiry has two purposes: "to determine [1] that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, ... and [2] that there is no conflict between the individual's claims and those asserted on behalf of the class."

*Larson v. AT & T Mobility LLC*, 10-1285, 2012 WL 2478376 (3d Cir. June 29, 2012).  Thus, even in the absence of a conflict between the two subgroups, subclasses are still required if the class representative does not have the ability or incentive to represent the claims of other class members.

The Settlement Class defines three types of class members:  (1) individuals who worked as Clean-Up Workers at any time between April 20, 2010, and April 16, 2012, (2) individuals who resided in Zone A [specified Gulf Coast beachfront areas] for some time on each of at least sixty days between April 20, 2010, and September 30, 2010 ("Zone A Resident"), and developed one or more Specified Physical Conditions between April 20, 2010, and September 30, 2010; and (3) individuals who resided in Zone B [specified Gulf Coast wetlands areas] for some time on each of at least sixty days between April 20, 2010, and December 31, 2010 ("Zone B

OBJECTIONS REGARDING PROPOSED MEDICAL BENEFITS                                                        9
CLASS ACTION SETTLEMENT.

Resident").  Group 2 consists solely of injured class members, but Groups 1 and 3 consist of injured class members, exposure-only class members, and class members that have not (yet) been injured or exposed to the oil or dispersants.

For many reasons, the adequacy requirement is not met here.

**1.  Class representatives and Class Counsel were disarmed**

The class representatives and Class Counsel were inadequate because they were disarmed:  they were unable to use the threat of a litigation class.  As the Supreme Court has noted, the Rule 23 (a) requirements, including adequacy of representation, must still be met for a settlement class because:

> Class counsel confined to settlement negotiations could not use the threat of litigation to press for a better offer, and the court would face a bargain proffered for its approval without benefit of adversarial investigation.

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 593 (1997).  Or, as the Seventh Circuit explained:

> The nationwide class plaintiffs thus entered negotiations in what the *Amchem* court describes as a "disarmed" state, unable to "use the threat of litigation to press for a better offer," *Amchem*, 521 U.S. at 621, 117 S.Ct. 2231-not a good position from which to represent the interests of parties that do wield such a threat.

*Smith v. Sprint Communications Co.,* 387 F.3d 612, 614 (7th Cir.2004).  The representative parties here were disarmed because they could not certify a mass tort litigation class for the claims asserted in this case.  They were inadequate representatives of absent class members because they "could not use the threat of litigation to press for a better offer."

**2.  Separate subclasses with separate counsel should have been created for injured class members and exposure-only class members**

As the Supreme Court found in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) and *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), subgroups must be created with separate counsel for injured and exposure-only class members.  To ensure adequate

representation, the fee for the counsel representing each subgroup must be tied to the recovery solely of that subgroup.

The new Medical Class Complaint admits that some class members have suffered injuries, but some have not:

> Plaintiffs, and the Class described below, have suffered **and/or** will suffer injuries and damages

Docket No. 2:12-cv-00968, Complaint Doc. 1, p. 23 (emphasis added).  Indeed, the class definition makes clear that some class members are exposure-only:

> MEDICAL BENEFITS SETTLEMENT CLASS shall mean all NATURAL PERSONS who resided in the United States as of April 16, 2012, and who: 1) Worked as CLEAN-UP WORKERS at any time between April 20, 2010, and April 16, 2012; or 2) Resided in ZONE A for some time on each of at least sixty days between April 20, 2010, and September 30, 2010 ("ZONE A RESIDENT"), **and developed one or more SPECIFIED PHYSICAL CONDITIONS between April 20, 2010, and September 30, 2010**; or 3) Resided in ZONE B for some time on each of at least sixty days between April 20, 2010, and December 31, 2010 ("ZONE B RESIDENT").

Settlement Agreement, Doc. 6273-1, p. 5, § I.A. (emphasis added).  Notably only the Zone A Residents must have developed a specified physical condition to be a class member.  Clean-Up workers and Zone B residents who were exposed to the oil or dispersants, but have not developed a specified physical condition, are in the class.

Thus, just like in *Ortiz* and *Amchem*, there should have been separate subclasses, each with their own counsel whose fee was tied directly to the amount obtained for that subclass, for those with and without past injuries.  The failure to provide that structural assurance prohibits class certification.

### 3. Separate subclasses with separate counsel should have been created for past-exposure class members and yet-to-be exposed class members

Plaintiffs' Motion to Certify the Settlement Class is based on a demonstrably false premise:

Moreover, because the Class is tightly confined and **limited to allegations of past exposure** during a finite time period, all Class members can be effectively notified and make an informed decision about whether to opt out of the Class. **All alleged exposures at issue have occurred in the past** and were the result of a widely publicized catastrophe. Plaintiffs thus should be on notice whether they have been exposed to oil and/or dispersants as part of the *Deepwater Horizon* Incident.

Doc. 6272-1 p. 17 (emphasis added).  First, the Class is *not* "limited to allegations of past exposure."  There is no requirement that Clean-Up Workers or class members in Zone B were exposed to the oil in the past.  Moreover, BP and the Plaintiffs themselves admit that not all Clean-Up Workers were exposed to the oil in the past:

[A]ll Clean-Up Workers receive higher payments than Residents under the Specified Physical Conditions Matrix because Clean-Up Workers **typically** were in closer proximity to the oil and/or dispersants"

Doc. 6267-1 p. 18 (emphasis added).  Response Activities did not necessarily mean a worker was exposed to the oil or dispersants.

Second, **class members may be exposed to the oil and dispersants in the future**.  The oil and dispersants now offshore in the Gulf can at any time be carried to the shoreline by certain severe weather, contaminating or re-contaminating the shoreline and compelling new and independent clean-up efforts to remediate the contamination or re-contamination.  Also, as explained below, the oil and dispersants still exist on the beaches throughout the Gulf Coast.

Subgroups should have been created with separate counsel for past-exposure class members and yet-to-be exposed class members.  To ensure adequate representation, the fee for the counsel representing each subgroup must be tied to the recovery solely of that subgroup.  The failure to provide that structural assurance prohibits class certification.

/ / /

OBJECTIONS REGARDING PROPOSED MEDICAL BENEFITS                    12
CLASS ACTION SETTLEMENT.

**E. Separate class representatives and counsel should have been appointed to represent the class members in the separate damage categories**

Proof of causation and damages for the many different injury groups will differ, as the Settlement Agreement itself shows.  The class should have been divided into subclasses to reflect those class members with different injury claims:

- Vision conditions and symptoms;

- Upper airway/respiratory conditions and symptoms;

- Ear, nose and throat conditions and symptoms;

- Skin conditions and symptoms;

- Neurophysiological/neurological/odor-related conditions and symptoms;

- Gastrointestinal or stomach conditions and symptoms; and

- Heat-related conditions

The failure to do so prevents certification.

**F. Giving away class member money to non-class members**

As described more fully below, the class representatives and Class Counsel breached their duty to the absent class members by including a *cy pres* payment in the Settlement Agreement.  The *cy pres* payment will be made to non-class members.  Since those funds could have been paid directly to class members, *cy pres* was inappropriate in this case.  By breaching their duty to protect for class members the funds BP was willing to pay to settle, the class representatives and Class Counsel were inadequate representatives.

**G. Class Counsel were inadequate representatives because they put their own interests before the interests of the class**

Class Counsel were inadequate representatives of the class when they placed their own interests before the class members' interests.

### 1.  Making the settlement contingent on a fee agreement

The Settlement Agreement provides that:

> As a material term and condition precedent to this MEDICAL SETTLEMENT AGREEMENT, BP and the PSC must reach agreement regarding the amount of attorneys' fees and costs for the common benefits to the putative MEDICAL BENEFITS SETTLEMENT CLASS, which will be subject to final determination and approval by the COURT.

Doc. 6273-1, p. 120.  Class Counsel was willing to destroy the entire settlement that supposedly benefits the class if Class Counsel did not get a "clear sailing" agreement for fees for themselves. By making the settlement contingent on an agreement for their fees, Class Counsel showed that they put their own interests before the interests of the class.  The inclusion of that provision in the settlement establishes that Class Counsel were not adequate representatives of the class.

### 2.  Making a separate fee agreement

Class Counsel was faced with two choices in negotiating a fee:  (1) negotiate a combined settlement/fee agreement, with the fee coming from the settlement amount ("combined agreement option"), or (2) negotiate a separate settlement and fee agreement ("separate agreements option").   The "combined agreement option" is in the best interests of the class members because it assures the maximum recovery for the class (without any "holdback" by the Defendant to reach the separate fee agreement) *and* it provides that that if the court awards less than the requested amount to Class Counsel, that money "reverts" to the class, not the Defendant. The "separate agreements option" is in the best interests of Class Counsel, because they eliminate the argument – and the court's concern – that their fee will reduce the class recovery (although in fact, as shown below, it does).  As the MANUAL explains:

> if negotiations are to be conducted in stages, counsel must scrupulously avoid making concessions affecting the class for personal advantage.

MANUAL FOR COMPLEX LITIGATION 4th § 21.7, p. 335.  Yet, that is exactly what Class Counsel did here – they made a concession affecting the class (making the settlement contingent on their

fee agreement) for their personal advantage.  By selecting the "separate agreements option," Class Counsel placed their own interests before those of the class.  Thus, they were not adequate representatives of the class.

## H.  Lack of predominance

FED. R. CIV. P. 23 (b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Objectors incorporate all of their foregoing arguments regarding commonality as additional reasons that predominance is not met.  Even if commonality were met here, which is not the case, individual issues will clearly predominate.

### 1.  Issues regarding Clean-Up Workers will not predominate

The claims of Clean-Up Workers are not based on the spill at all; those claims arose from the fact that BP sent them to clean up the oil:

> Clean-Up Workers, as defined in Paragraph 85, were hired by BP and other BP clean-up and response contractors to clean up beaches, marshes, wetlands and other onshore areas.

Case 2:12-cv-00968, Doc. 1, p. 21.  Regardless of the fault for the spill, the Clean-Up Workers' claims against BP do not change.  For instance, neither of the two issues set for trial in the Second Amended Pretrial Order No. 41, Doc. 6592, apply to Clean-Up Workers.

> **Phase One ["Incident" Phase]** of the Trial will address issues arising out of the conduct of various parties allegedly relevant to the loss of well control at the Macondo Well, the ensuing fire and explosion on the MODU DEEPWATER HORIZON on April 20, 2010, and the sinking of the MODU DEEPWATER HORIZON on April 22, 2010, and the initiation of the release of oil from the Macondo Well or DEEPWATER HORIZON during those time periods (collectively, the "Incident"). …

> **Phase Two ["Source Control" and "Quantification" Phase]** of the Trial will address Source Control and Quantification of Discharge issues. "Source Control" issues shall consist of issues pertaining to the conduct or omissions of BP, Transocean, or other relevant parties regarding stopping the release of hydrocarbons stemming from the Incident from April 22, 2010 through

approximately September 19, 2010 (including the alleged failure by BP and Transocean to prepare for a blow-out and spill prior to April 20, 2010).

*Id.* p. 2-3.  The outcome of those two trials will not affect the claims of Clean-Up Workers because BP's fault as to them is for sending them to clean up beaches, marshes, wetlands and other onshore areas.

The Complaint itself establishes the individual nature of causation issues.  For instance, the Complaint alleged:

> BP's aerial spray planes negligently and/or intentionally sprayed chemical dispersants on the water despite the presence of boats and their crews in the vicinity of the spraying.

Docket No. 2:12-cv-00968, Complaint Doc. 1, p. 21.  Which boats?  Which crews?  Which Clean-Up Workers were affected?  These are all individual issues that would clearly predominate.  Another example:

> [M]any Clean-Up Workers were not outfitted with respirators or equivalent safety devices.  Some attempted to use respirators while working, but BP prevented them from doing so and threatened them with loss of their clean-up jobs if they did not abide by the instruction.

*Id.* p. 21-22.  Which Clean-Up Workers were not outfitted with respirators or equivalent safety devices?  Which attempted to use respirators while working, but BP prevented them from doing so and threatened them with loss of their clean-up jobs if they did not abide by the instruction?  These individual issues, not to mention the individual damages issues, clearly predominate.

### 2.  The requirement of proving specific causation prevents a predominance finding

The maritime cause of action would require proof of medical causation, which has two components: general causation, which establishes that a substance has the capability of causing the injury or disorder in humans, and specific causation, which focuses upon whether the substance caused a particular injury to a particular individual.  *Brandner v. Abbott Laboratories,*

*Inc.*, CIV.A. 10-3242, 2012 WL 195540 (E.D. La. Jan. 23, 2012).  In a mass tort case like this, specific causation predominates:

> The Court need not determine predominance with respect to general causation, because proving specific causation would require a determination of "an individual's family and medical history; age; gender; diet; ... the timing of ingestion of the product; ... whether that individual suffered an injury, when the injury occurred, the type of injury suffered, and the number of occurrences of injury; the likelihood of injury; and/or the foundation as to whether a justifiable fear of injury exists." *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D.La.2006)(citing *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 208 F.R.D. 625, 631–32 (W.D.Wash.2002)). This highly individualized inquiry leads the Court to conclude that issues common to the class do not predominate.

*Id.*  Similarly here, the highly individualized inquiry mandates a finding that predominance does not exist.

### 3.  A finding of predominance would violate numerous Fifth Circuit cases

Numerous Fifth Circuit cases prohibit a finding of predominance in this mass tort injury case.  *Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551 (5th Cir. 2011) is on point.  There the district court certified a class of persons exposed to petroleum coke dust from a single release by a refinery.  The Fifth Circuit reversed the district court's certification order, noting its continued reliance on a note to Rule 23:

> A "mass accident" resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried.

*Id.* at 556 (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's note.).  That is the case here:  a "mass accident" that resulted in injuries to numerous persons.  Thus, even if there were common issues of fault, negligence, and punitive damages, certification would not be appropriate.

Similarly, in *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006) the Fifth Circuit rejected certification of a class of individuals allegedly exposed to smoke from a fire at a chemical plant.  As the court noted:

> The cause of action as a whole must satisfy Rule 23(b)(3)'s predominance requirement.

*Id*. at 601.  The court rejected certification because:

> The district court heard from experts who opined that the primary issues left to be resolved would turn on location, exposure, dose, susceptibility to illness, nature of symptoms, type and cost of medical treatment, and subsequent impact of illnesses on individuals. Moreover, in addition to the personal injury claims, separate types of proof would be necessary for the property damage, devaluation, and business loss claims. The district court observed that each plaintiff's claims will be highly individualized with respect to proximate causation, including individual issues of exposure, susceptibility to illness, and types of physical injuries. As a result, the district court found that "individual issues surrounding exposure, dose, health effects, and damages will dominate at the trial." The district court concluded that "one set of operative facts would not establish liability and that the end result would be a series of individual mini-trials which the predominance requirement is intended to prevent."

*Id*. at 602.  Importantly there, "It is clear from the record that the damages claims in this case are not subject to any sort of formulaic calculation."   Similarly here damages claims are individualized and not subject to any sort of formulaic calculation other than an artificial formula devised by Class Counsel as a way of obtaining a $600 million pay day.

In *Bell Atlantic v. AT&T*, 339 F.3d 294 (5th Cir. 2003), the court denied certification because the "individualized nature of damages inquiry prevented certification" and rejected the type of formulae used in the settlement here.  To avoid the predominance of individual damages issues, the Plaintiffs sought to calculate damages based on the formulae determined by their experts, just as the Plaintiffs seek to do here.  The Fifth Circuit rejected that strategy: "we are not convinced that this proposed damages calculus represents an adequate approximation of any single class member's damages, let alone a just and reasonable estimate of the damages of every class member included in the two putative classes."  *Id*. at 304.  Similarly in this case, the fact

that Plaintiffs' "experts" have come up with damages formulae does not satisfy the predominance requirement.

### I. Lack of superiority

FED. R. CIV. P. 23 (b)(3) requires "that at a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The superiority requirement is not met here.

#### 1. Certification of mass torts claims is not superior

The Fifth Circuit has held that certification of mass tort litigation is disfavored. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 746-47 (5th Cir. 1996). For the reasons set out in that case, the court should find that certification is not superior.

#### 2. Many class member claims are not "negative value suits"

Many class member claims are not "negative value suits," as evidenced by the number of suits already filed. As such, certification is not a superior method to resolve the claims:

> The most compelling rationale for finding superiority in a class action-the existence of a negative value suit-is missing in this case.

*Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996). That rationale is also missing in this case.

## VI.   OBJECTIONS TO THE SETTLEMENT

The court should not certify the Settlement Class, and if it denies certification, it need not reach the issue of whether to approve the Settlement Agreement. However, if the court overrules Objector's objections to class certification, the court should disapprove the Settlement Agreement.

The court may only approve the settlement if it is fair, reasonable, and adequate. FED. R. CIV. P. 23 (e)(2). The settling parties bear the burden of proof on that matter:

> At the fairness hearing, the proponents of the settlement must show that the
> proposed settlement is 'fair, reasonable, and adequate.'

MANUAL FOR COMPLEX LITIGATION 4ᵗʰ, §21.634, p. 322 (citing to *In re Prudential Ins. Co. Am.*

*Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998)).  Because the settlement

here occurred before certification of a litigation class, the court must require the proponents to

meet a higher standard of fairness:

> We ask district courts to apply an even more rigorous, "heightened standard" in
> cases "where settlement negotiations precede class certification, and approval for
> settlement and certification are sought simultaneously."  We have explained that
> this "heightened standard is designed to ensure that class counsel has
> demonstrated sustained advocacy throughout the course of the proceedings and
> has protected the interests of all class members."

*In re Pet Food Products Liability Litigation*, 629 F.3d 333, 350 (3ʳᵈ Cir. 2010) (citations

omitted); *see also, Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9ᵗʰ Cir. 1998).

Finally, the proponents of the settlement here must overcome a presumption of

unfairness.  The Settlement Agreement contains a "clear sailing" agreement wherein BP agrees

not to challenge Class Counsel's fees.  It also provides that if any portion of the alleged value of

settlement of the settlement is not claimed, that money "reverts" to BP.  The Federal Judicial

Center has determined that such a settlement agreement is a "hot button indicator" of an unfair

settlement:

> The addition of a "clear sailing" agreement (i.e., a stipulation that attorney fees
> based on the inflated settlement figure will not be contested) to an agreement with
> a reversion clause adds decibels to the alarms set off by the reversion clause.
> Some courts treat the combination as creating a presumption of unfairness.
>
> A reversion clause creates perverse incentives for a defendant to impose
> restrictive eligibility conditions and for class counsel and defendants to use the
> artificially inflated settlement amount as a basis for attorney fees.

Barbara J. Rothstein & Thomas E. Willging, MANAGING CLASS ACTION LITIGATION: A POCKET

GUIDE FOR JUDGES, SECOND EDITION, (Federal Judicial Center 2009), at 17-18.

With that background, the court should disapprove the settlement for the following reasons.

**1. The *cy* pres component of this settlement is flawed and cannot be approved.**

The cy pres component of the Settlement violates the rule set out in *Klier v. Elf Atochem N. Am., Inc*., 658 F.3d 468 (5th Cir. 2011) which states that the purpose behind this doctrine is to distribute unclaimed funds. "[I]n such a case, the unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." Id. at 473.

The doctrine of cy pres originated in the law of wills and trusts and allowed courts to redirect money from trusts and testamentary gifts that would otherwise fail for legal reasons. *In Re Wells Fargo Securities Litigation*, 991 F.Supp. 1193, 1194-95 (N.D. Cal. 1998). However, a court cannot direct excess funds to any seemingly worthwhile recipient. Instead, the funds must be used in such a way that best serve the original intent of the settlor or testator. Id. at 1195. This idea was translated for use in the context of class actions when "(1) no parties have equitable interests in the residue or (2) distribution to such parties would be impractical." Id. Courts have warned, "a court must be careful to direct the residue to an entity that will indirectly serve the interests of class members or "others similarly situated, e.g. future class members who engage in future transactions of the type involved in the class litigation." Id. at 1195.

This proposed settlement fails under this doctrine. As evidenced by the non-revertible fund of millions of dollars, distribution to the class is not impractical. Furthermore, the only relationship between this lawsuit and donations of these funds to other entities is the source of the donation. This proposed distribution is an abuse of the cy pres doctrine and inadequately compensates the injured party – the class.

The Ninth Circuit recently had cause to review the application of the cy pres doctrine in *Dennis v. Kellogg Co.*, 2012 WL 2870128 (9th Cir., July 13, 2012.) In its opinion, the Ninth Circuit warned against the dangers of the improper use of the cy pres doctrine:

> Not just any worthy recipient can qualify as an appropriate cy pres beneficiary. To avoid the "many nascent dangers to the fairness of the distribution process," we require that there be "a driving nexus between the plaintiff class and the cy pres beneficiaries." *Nachshin*, 663 F.3d at 1038. A cy pres award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members," Id. at 1039, and must not benefit a group "too remote from the plaintiff class," *Six Mexican Workers*, 904 F.2d at 1308. Thus, in addition to asking "whether the class settlement, taken as a whole, is fair, reasonable, and adequate to all concerned," we must also determine "whether the distribution of the approved class settlement complies with our standards governing cy pres awards." *Nachshin*, 663 F.3d at 1040 (internal quotation marks omitted).
> Id. at *4.

The Ninth Circuit made clear that the cy pres donation must be closely tied to the interests of the class members. This Circuit agrees with the Ninth Circuit's close review of cy pres settlements. The *Klier* court reasoned that its caution regarding the cy pres doctrine is because "a class settlement generates property interests. Each class member has a constitutionally recognized property right in the claim or cause of action that the class action resolves. The settlement-fund proceeds, having been generated by the value of the class members' claims, belong solely to the class members." *Klier* 658 F.3d at 474. The Because the settlement must either stand or fall based on the entirety of the settlement provisions, counsel's failure to disclose the intended cy pres beneficiaries is fatal to the settlement. Class members' right to review and comment on the cy pres recipients is no less than their right to review and comment on any other portion of the proposed settlement such as attorney fees or distribution. The final approval hearing must be continued until such time as there has been full disclosure to the class regarding these proposed distributions.

**2. The amount of the payments for Specified Physical Conditions is arbitrary and capricious**

A one-size-fits-all formula for determining Specified Physical Conditions damage payments for each type of injury is not fair, reasonable, or adequate. The value of each claim, even for the same type of injury, will vary based on a multitude of factors, including the severity of the symptoms, length of the condition, type and cost of medical treatment, and the subsequent impact of the illness. The Settlement Agreement fails to take those variances into account.

For example, two otherwise similarly-situated class members with the same injury receive the same payment even if one suffered from the condition for twice as long as the other. As another example, two otherwise similarly-situated class members with the same injury receive the same payment regardless of the severity of the symptoms. If one was so sick he or she had to miss work, but the other only suffered mild symptoms and was able to go to work, they still receive the same payment under the Settlement Agreement.

The claim payment formulae do not in any way reflect the actual cost of medical treatment. Two otherwise similarly-situated class members with different medical bills receive the same payment under the Settlement Agreement. For instance, if the circumstances for only one of two otherwise similarly-situated class members required an MRI, those two class members would receive the same payment despite the fact that only one had to pay for an MRI.

Another example is the discrimination in payments between Clean-Up Workers and Residents. Despite having the same injury, Clean-Up Workers receive higher payments than Residents:

> **all** Clean-Up Workers receive higher payments than Residents under the Specified Physical Conditions Matrix because Clean-Up Workers **typically** were in closer proximity to the oil and/or dispersants

Doc. 6267-1, p. 18 (emphasis added). That discrimination is arbitrary and capricious for several reasons. First, the difference in claim payments for past injuries should be based on the

difference in severity of the injuries suffered, not the amount of exposure.  Regardless of how close two class members were to the oil, all other things being equal they should be paid the same amount for the same injury.  Second, even if injury payments should be based on proximity to the oil or dispersants, the Settlement Agreements fails to reflect that (erroneous) standard. Some Residents were in closer proximity to the oil and/or dispersants than some Clean-Up Workers, yet those Residents receive substantially less than the Clean-Up Workers.  Residents that can show closer proximity should be able to receive the higher payments.

Yet another example of the arbitrary and capricious nature of the claim payment formulae is the complete lack of consideration regarding damages for loss of support, services, consortium, companionship, society, or affection, or damage to familial relations.  Claims payments are the same whether the claimant suffered those damages or not, that is, whether the class member is married or single, lives with a family or alone, or otherwise has any evidence of proof of such claims.

### 3.   The compensation provided by the settlement is woefully inadequate

Ultimately the payments for Specified Physical Conditions are inadequate to compensate class members for the damages they suffered.  A court abuses its discretion if it approves a class action settlement that does not provide adequate consideration for the release of the class member claims:

> Under Rule 23(e), trial judges bear the important responsibility of protecting absent class members, "which is executed by the court's assuring that the settlement represents adequate compensation for the release of the class claims."

*In re Pet Food Products Liability Litigation*, 629 F.3d 333, 349 (3rd Cir. 2010).  The settlement proponents have not met their burden of proof that the settlement payments are fair, reasonable, and adequate.

**4.   The Settlement Agreement waives all claims for certain past exposures without any compensation**

BP dispersed the crude oil through, among other things, use of Corexit® brand and other chemical dispersants, and such dispersants, combined with the crude oil, formed a compound (the "Compound") that sank below the surface of the Gulf into the water column and, in some instance, onto the seabed.  *See generally,* Complaint, Case 2:12-cv-00968, Doc. 1, p. 17-20.  At present, the Compound exists along certain stretches of the shoreline between Waveland, Mississippi and Cape San Blas, Florida in the form of oil-coated sand grains and residual tar (e.g., tar balls and tar mats); and such contamination or recontamination is in some instances visible to the eye, and in other instances it requires a lab test to verify the presence and concentration of the Compound.  Persons who come in contact with the Compound in the surf or sand may absorb a portion of the Compound into their skin and track the balance into neighboring commercial and residential properties, contaminating or re-contaminating same. Marine life that comes in contact with the Compound in the water column may ingest or absorb a portion of the Compound into their skin. To make  matters worse, contaminant concentrations were found that are " immediately dangerous to life and health."

*See Findings of Persistency of Polycyclic Aromatic Hydrocarbons in Residual Tar Product Sourced from Crude Oil Released during the Deepwater Horizon MC252 Spill of National Significance*, dated April 14, 2012, Kirby, James. Many class members will have suffered exposures during the following important periods (together "the uncompensated-for past exposures") that are not included in any of the settlement benefits but are included in the waiver:

After September 30, 2010, for ZONE A RESIDENTS.

After December 31, 2010, for ZONE B RESIDENTS.

After April 16, 2012, for CLEAN-UP WORKERS.

***The Settlement Agreement waives all claims for the uncompensated-for past exposures without the right to bring a BACK-END LITIGATION claim for the injuries.***  This egregious oversight alone renders the settlement unfair, unreasonable, and inadequate.

### 5. Class members may not bring a BACK-END LITIGATION OPTION LAWSUIT for damages resulting from the uncompensated-for past exposures

The Settlement Agreement does provide the right to bring a BACK-END LITIGATION OPTION LAWSUIT under certain circumstances for a LATER-MANIFESTED PHYSICAL CONDITION:

> A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER may file a BACK-END LITIGATION OPTION LAWSUIT against a BACK-END LITIGATION OPTION DEFENDANT for a LATER-MANIFESTED PHYSICAL CONDITION in accordance with the terms of this Section VIII.G.

Settlement Agreement, Doc. 6273-1, p. 62-63, § VIII.G.  That right is limited to a suit for a "LATER-MANIFESTED PHYSICAL CONDITION," which would not include a condition caused by an uncovered past exposure:

> LATER-MANIFESTED PHYSICAL CONDITION shall mean a physical condition that is first diagnosed in a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER after April 16, 2012, and which is claimed to have resulted from such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S exposure to oil, other hydrocarbons, or other substances released from the MC252 WELL and/or the Deepwater Horizon and its appurtenances, and/or exposure to dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, **where such exposure occurred on or prior to September 30, 2010, for ZONE A RESIDENTS; on or prior to December 31, 2010, for ZONE B RESIDENTS; and on or prior to April 16, 2012, for CLEAN-UP WORKERS**.

Settlement Agreement, Doc. 6273-1, p. 17, Definition VV (emphasis added).  Thus, a BACK-END LITIGATION OPTION LAWSUIT for damages resulting from an exposure that occurs after the following dates is not permitted:

After September 30, 2010, for ZONE A RESIDENTS

After December 31, 2010, for ZONE B RESIDENTS

After April 16, 2012, for CLEAN-UP WORKERS

Many class members have already been exposed outside the coverage period by simply walking on the beach.  They are prohibited by the Settlement Agreement from bringing a BACK-END LITIGATION OPTION claim for any injuries that result from that exposure.

### 6.   Damages for the uncompensated-for past exposures are waived

While the Settlement neither compensates class members for the uncompensated-for past exposures, nor provides a back-end litigation option, it does waive all claims for damages resulting from the uncompensated-for past exposures.  The waiver includes:

> Increased risk, possibility, or fear of suffering in the future from any disease, injury, illness, emotional or mental harm, condition, or death, in whole or in part arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT unless arising out of and pertaining to a LATER-MANIFESTED PHYSICAL CONDITION;

Settlement Agreement, Doc. 6273-1, p. 103, § XVI.A.3.  The uncompensated-for past exposures increase the "risk, possibility, or fear of suffering in the future from any disease, injury, illness, emotional or mental harm, condition, or death, in whole or in part arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the *DEEPWATER HORIZON* INCIDENT," but are **not** arising out of and pertaining to a LATER-MANIFESTED PHYSICAL CONDITION because the exposure date is not within the period permitted for a LATER-MANIFESTED PHYSICAL CONDITION.  Thus, those claims are waived despite that absence of any compensation for those claims.

### 7.   Releasing damage claims for the uncompensated-for past exposures is not fair, reasonable, or adequate

As the fiduciary for the class, the court may not approve a settlement that lacks adequate compensation for the release of the class members' claims:

> Under Rule 23(e), trial judges bear the important responsibility of protecting absent class members, "which is executed by the court's assuring that the settlement represents adequate compensation for the release of the class claims."

OBJECTIONS REGARDING PROPOSED MEDICAL BENEFITS
CLASS ACTION SETTLEMENT.                                                                                                          27

*In re Pet Food Products Liability Litigation*, 629 F.3d 333, 349 (3rd Cir. 2010).  The Federal Judiciary Center's MANUAL FOR COMPLEX LITIGATION 4th, cites the failure to provide compensation for the release of a claim as a recurring abuse in class action litigation:

> There are a number of recurring potential abuses in class action litigation that judges should be wary of as they review proposed settlements:  …  releasing claims of parties who received no compensation in the settlement … .

MANUAL FOR COMPLEX LITIGATION 4th § 21.61, p 310-311.  Similarly, the Federal Judicial Center has identified that very outcome as a "hot button indicator" of an unfair settlement:

> At times parties have attempted to release a damages remedy without making any correlative payment to class members … .

Barbara J. Rothstein & Thomas E. Willging, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, SECOND EDITION, (Federal Judicial Center 2009), at 20.

The court should follow the lead of other courts and reject the settlement for failing to provide adequate compensation for the release of claims related to the uncompensated-for past exposures.  *See, e.g.*, *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277 (7th Cir. 2002); *Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 882 (7th Cir.2000); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 388 (C.D. Cal. 2007)(rejecting as a basis for releasing a claim without adequate compensation the fact that class members could have opted out).

8. **The Settlement Agreement waives all claims for future exposures without providing any compensation**

The oil and dispersants are still located in the Gulf.  *See generally,* Complaint, Case 2:12-cv-00968, Doc. 1, p. 17-20.  Such dispersants are reportedly toxic to certain species of bacteria known to biodegrade crude oil, slowing such biodegradation and extending the term of the environmental threat posed by the crude oil.  All or parts of the Compound now offshore in the Gulf can at any time be carried to the shoreline by certain severe weather, contaminating or re-contaminating the shoreline and compelling new and independent clean-up efforts to remediate

the contamination or re-contamination.  Thus, class members face two critical risks of future exposure:  they may be exposed to the oil and dispersants by walking on the beach and they may be exposed to the oil and dispersants in the event of severe weather.  As indicated above, there is no compensation in the Settlement Agreement for exposures:

> After September 30, 2010, for ZONE A RESIDENTS.
>
> After December 31, 2010, for ZONE B RESIDENTS.
>
> After April 16, 2012, for CLEAN-UP WORKERS.

***Yet the Settlement Agreement waives all of these claims without the right to bring a back-end litigation for future exposures.***  Settlement Agreement, Doc. 6273-1, p. 103, § XVI.A.3.  The failure to provide adequate compensation for future exposure claims renders the Settlement Agreement unfair, unreasonable, and inadequate.

### 9. The election of remedies provisions of the BACK-END LITIGATION OPTION for LATER-MANIFESTED PHYSICAL CONDITIONS are unfair and unreasonable

The BACK-END LITIGATION OPTION for LATER-MANIFESTED PHYSICAL CONDITIONS contains an election of remedies provision.  Settlement Agreement, Doc. 6273-1, p. 56 – 57, § VIII.B.  Election of remedies does not apply unless the claimant <u>recovers</u> on the inconsistent remedy:

> There is no election, that is, no inconsistency in choices when one first pursues a right or remedy which proves unfounded and then pursues one that is allowed.

*In re Gayle*, 189 B.R. 914, 916 (Bankr. S.D. Tex. 1995).

The Settlement Agreement provides that a claimant waives a BACK-END LITIGATION claim by merely filing a workers compensation claim, even if it is unsuccessful:

> A MEDICAL BENEFITS SETTLEMENT CLASS MEMBER who has **filed a claim** for benefits under workers' compensation law or the Longshore and Harbor Workers' Compensation Act for a particular LATER-MANIFESTED PHYSICAL CONDITION may not seek compensation for that LATER-MANIFESTED PHYSICAL CONDITION through this BACK-END LITIGATION OPTION.

OBJECTIONS REGARDING PROPOSED MEDICAL BENEFITS
CLASS ACTION SETTLEMENT.                                                                29

Settlement Agreement, Doc. 6273-1, p. 57, § VIII.B (emphasis added).  Thus, if a class member were to file a claim under workers' compensation law or the Longshore and Harbor Workers' Compensation Act for a particular LATER-MANIFESTED PHYSICAL CONDITION, but that claim is denied because it is determined that the physical condition was caused by BP, the class member would not be able to then file a BACK-END LITIGATION claim against BP.  That provision is unfair and unreasonable.

### 10. Leaving money on the table by entering a separate fee agreement

By negotiating for a separate payment of attorneys' fees, Class Counsel left money on the table.  Under the "combined agreement option," with the fee coming from the settlement amount rather than from a separate fee agreement, the benefits to the class would have been $600 million richer.  Any portion of the $600 million not awarded in fees that BP was willing to pay to settle the case would be paid to the class, not BP.  Instead, Class Counsel reached separate settlement and fee agreements, meaning that the difference between the fee award and the $600 million will revert to BP.  That is money that BP was willing to pay to settle the case, so should have gone to class members, not BP.

### 11. Lack of claims appeal process

The Settlement Agreement provides that the Claims Administrator has the final say on claims:

> The CLAIMS ADMINISTRATOR'S determination as to whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER (i) **has qualified for compensation** for a SPECIFIED PHYSICAL CONDITION under this MEDICAL SETTLEMENT AGREEMENT and the amount of compensation for which he or she qualifies and/or (ii) **has qualified to participate in the PERIODIC MEDICAL CONSULTATION PROGRAM** shall be **final and not appealable**, unless a one-time review is requested in accordance with Section V.M.

Settlement Agreement, Doc. 6273-1, p. 38, § V.L. (emphasis added).  The "one-time review" is extremely limited in scope and not to the court:

OBJECTIONS REGARDING PROPOSED MEDICAL BENEFITS
CLASS ACTION SETTLEMENT.

> If the CLAIMS ADMINISTRATOR denies a MEDICAL BENEFITS
> SETTLEMENT CLASS MEMBER'S **claim for compensation** for a SPECIFIED
> PHYSICAL CONDITION or for **participation in the PERIODIC MEDICAL
> CONSULTATION PROGRAM**, the MEDICAL BENEFITS SETTLEMENT
> CLASS MEMBER may request a one-time review **by a designated employee of
> the CLAIMS ADMINISTRATOR** whose qualifications shall be agreed upon by
> MEDICAL BENEFITS CLASS COUNSEL and BP'S COUNSEL and shall not
> be otherwise engaged in the evaluation or determination of any claims under this
> MEDICAL BENEFITS CLASS ACTION SETTLEMENT. … The reviewer may
> only overturn the denial of a claim for compensation for a SPECIFIED
> PHYSICAL CONDITION or for participation in the PERIODIC MEDICAL
> CONSULTATION PROGRAM where he or she finds that **such denial was
> based on a clearly erroneous factual determination** by the CLAIMS
> ADMINISTRATOR.

Settlement Agreement, Doc. 6273-1, p. 38, § V.M. (emphasis added).  There is no right of appeal

to the court of a (1) claim for compensation or (2) for participation in the PERIODIC MEDICAL

CONSULTATION PROGRAM. Although the Claims Administrator's decision on class

membership is appealable to the court, § V.N, the decision that matters – whether the class

member is entitled to any benefits for the waiver of his or her rights – is not appealable.

Appointing a third party like the Claims Administrator to make the final determination on

claims, without affording class members the right to appeal the decision to the court, would deny

class members' due process rights.  *Smith v. Sprint Communications Co.,* 387 F.3d 612, 614 (7th

Cir.2004)(overturning a class action settlement that provided that law professors would make

determinations regarding claims); *In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 179, 185 (2nd

Cir.1987) (disallowing the administration of class funds by independent foundation without

judicial oversight: "while a district court is permitted broad supervisory authority over the

distribution of a class settlement, … there is no principle of law authorizing such a broad

delegation of judicial authority to private parties. We perceive no assurance that the 'self-

governing and self-perpetuating' board of directors of the class assistance foundation, or any

other such body that might be devised by the court, will possess the independent, disinterested

judgment required to allocate limited funds to benefit the class as a whole").

OBJECTIONS REGARDING PROPOSED MEDICAL BENEFITS
CLASS ACTION SETTLEMENT.

31

**12. Violation of Rule 23 and due process by allowing Class Counsel to decide whether material modifications to the settlement may be made without new notice, opt rights, and objection rights**

Rule 23 and due process require new notice, opt out rights, and objection rights if a Settlement Agreement is materially changed. The Settlement Agreement gives Class Counsel the right to approve material changes to the Settlement Agreement without notice to class members, without providing class members with a new opportunity to opt out, and without giving class members an opportunity to object to the material change. The Settlement Agreement first provides:

> This MEDICAL SETTLEMENT AGREEMENT shall, at the written election of MEDICAL BENEFITS CLASS COUNSEL, terminate and become null and void, and shall have no further effect, in the event that the COURT has ordered a material modification of any of the terms of this MEDICAL SETTLEMENT AGREEMENT.

Settlement Agreement, Doc. 6273-1 p. 98. Thus, if the court orders a material modification that reduces the benefits payable to Class Members, or unfairly advantages some class members, Class Counsel would have the power to permit the change, without any notice, opt out rights, or objection rights to class members. And, of course, Class Counsel would have a tremendous financial incentive to sell class members down the river and allow the modification, because they would otherwise jeopardize their fee.

Similarly, the Settlement Agreement also permits Class Counsel to allow the elimination of material terms:

> If any material provision of this MEDICAL SETTLEMENT AGREEMENT, including but not limited to the RELEASE in Section XVI, shall for any reason be held in whole or in part to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this MEDICAL SETTLEMENT AGREEMENT if BP and MEDICAL BENEFITS CLASS COUNSEL elect in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this MEDICAL SETTLEMENT AGREEMENT.

Settlement Agreement, Doc. 6273-1 p. 98-99. Again, Class Counsel is given the opportunity to allow a material change to the Settlement Agreement without notice, opt-out rights, or objection rights to class members.

Not only do these provisions violate Rule 23 and due process, but they are not fair, reasonable, or adequate because they permit the elimination of material benefits to class members. As the Supreme Court has held:

> Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed.

*Evans v. Jeff D.*, 475 U.S. 717, 726 (1986); *see also, Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011)("the court cannot modify the bargained-for terms of the settlement agreement"). The Settlement Agreement impermissibly allows the Court to change the deal by "declaring" certain portions to be "invalid, illegal or unenforceable" – and force class members "to accept a settlement to which they have not agreed." This elimination of class members' rights is achieved without notice, opt-out rights, or objection rights. Thus, the court should disapprove the Settlement Agreement.

## VII.   OBJECTIONS TO CLASS COUNSEL'S FEE

The court should not certify the Settlement Class, and if it does certify, it should disapprove the Settlement Agreement. If the court grants Objectors' objections to either certification or the Settlement Agreement, then it would not need to reach the issue of Class Counsel's fee request. However, if the court certifies the Settlement Class and approves the Settlement Agreement, the court should deny Class Counsel's fee request.

### 1.   Class Counsel did not timely file the fee request

Class Counsel's fee *motion* must be filed in a timely manner, well before the objection deadline:

> In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:
>
> (1) A claim for an award must be made **by motion** under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. **Notice of the motion must be** served on all parties and, for motions by class counsel, **directed to class members in a reasonable manner**.
>
> (2) A class member, or a party from whom payment is sought, may object to the motion.
>
> (3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52 (a).

FED. R. CIV. P. 23 (h)(emphasis added).  The *fee motion*, not just the notice of the amount of the fees requested, must be filed in a timely manner to give class members adequate time to review the fee motion before the objection deadline:

> The plain text of the rule requires that any class member be allowed an opportunity to object to the fee "motion" itself, not merely to the preliminary notice that such a motion will be filed.

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 993-994 (9th Cir. 2010).

Class members must be given sufficient time to review the motion and supporting documentation:

> The Advisory Committee Notes to the 2003 amendments to Rule 23(h) further support this reading of the rule. They elaborate that "[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion." Fed. R. Civ. P. 23, 2003 Advisory Committee Notes, ¶ 68. The Advisory Committee Notes further contemplate that, in appropriate cases, the court will permit an "objector discovery relevant to the objections." *Id.* ¶ 69. Clearly, the rule's drafters envisioned a process much more thorough than what occurred in this case.

*Id.* at 994.  The failure to provide adequate time to review the fee motion constitutes a denial of due process:

> When the district court sets a schedule that denies the class an adequate opportunity to review and prepare objections to class counsel's completed fee motion, it fails to fulfill its fiduciary responsibilities to the class.

*Id.* at 995.  The Ninth Circuit relied on commentators in reaching this "logical" interpretation of the rule:

> Commentators also agree with this logical interpretation of the rule. For example, Moore's Federal Practice counsels that "[a]ny objection deadline set by the court should provide the eligible parties with an adequate opportunity to review all of the materials that may have been submitted in support of the motion and, in an appropriate case, conduct discovery concerning the fees request." 5 Moore's Federal Practice § 23.124[4] (Matthew Bender 3d ed. 2009). Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members. It also ensures that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee.

*Id.*

The objection deadline in this case is August 31, 2012.   As of the filing of these objections, 8/30/2012 Class Counsel have not filed their fee motion. Respectfully, the court erred in failing to require in the preliminary approval order, or any order, that Class Counsel file the fee motion sufficiently in advance of the objection deadline to permit class members to review and analyze the motion before the objection deadline.  *See*, FED. R. CIV. P. 23 (h)(1)("A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), **at a time the court sets**.").  In addition, the court erred by setting the objection deadline before the actual filing of the fee motion:

> We hold that the district court abused its discretion when it erred as a matter of law by misapplying Rule 23(h) in setting the objection deadline for class members on a date before the deadline for lead counsel to file their fee motion. Moreover, the practice borders on a denial of due process because it deprives objecting class members of a full and fair opportunity to contest class counsel's fee motion.

*Id.* at 993.

## 2.  The fee *is* coming from the Class Members' recoveries

Plaintiffs' claim that the attorney fee agreement "will not reduce payments or benefits to the Class."  Doc. 6267-1, p. 13. In reality, of course, the $600 million *was* deducted from Class

Member's recoveries.  With a "combined agreement option," with the fee coming from the settlement amount rather than from a separate fee agreement, BP would have agreed to more generous payments to class members in the settlement.  But once Class Counsel insisted on bifurcating the agreements, BP logically reduced the payments provided for in the settlement by the amount they needed to reserve for paying Class Counsel.

When Class Counsel made the self-interest decision to negotiate the settlement and fee issue separately, which thereby reduced the amount available to pay class member claims, they became an adversary to the class:

> During the fee-setting stage of common fund class action suits such as this one, "[p]laintiffs' counsel, otherwise a fiduciary for the class, ... become[s] a claimant against the fund created for the benefit of the class." This shift puts plaintiffs' counsel's understandable interest in getting paid the most for its work representing the class at odds with the class' interest in securing the largest possible recovery for its members. Because "the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." As a fiduciary for the class, the district court must "act with 'a jealous regard to the rights of those who are interested in the fund' in determining what a proper fee award is."

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994-995 (9th Cir. 2010)(citations omitted).  The façade of separating the negotiations regarding the settlement and the fee does not change the fact that Class Counsel was a claimant to the funds BP was willing to pay to settle the case, and was a claimant adverse to class members.

### 3.  The allegation of negotiating the settlement and fees separately

The proponents claim that the negotiations over the fees did not begin until after the date of the Settlement Agreement:

> The Parties have not had any fees discussion to date, and **will not have such a discussion until the Court has first authorized such discussions**.

Settlement Agreement, Doc. 6273-1, p. 120 (emphasis added).  In the attorney fee agreement Exhibit to the Settlement, the parties claimed that:

> Interim Class Counsel under the Economic Agreement and the Medical
> Settlement Agreement and BP's Counsel commenced negotiations on common
> benefit and/or Rule 23(h) attorneys' fees and costs on April 17, 2012, only after
> such Interim Class Counsel and BP's Counsel reached agreement on all of the
> material terms of the Economic Agreement and the Medical Settlement
> Agreement **and delivered that information to the Court**.

Doc. 6273-21, Exhibit 19 p. 1 (emphasis added).  That agreement is dated April 18.  So the

parties would have the court believe that they began, finished, obtained PSC approval, and

obtained BP corporate approval of a **$600 million deal** in less than a day.

That story is simply not believable.  Objectors request that the court permit discovery of

the settling parties to test the veracity of those claims.  They hereby request that the court stay

the fairness hearing and provide objectors with 90 days to conduct discovery regarding the

negotiations over attorneys' fees.

### 4.  Class Counsel waived any fee by being disloyal to the class

When Class Counsel breaches its duty of loyalty to the class, it waives any right to a fee

for its services.  *Rodriguez v. W. Pub. Corp.*, CV 05-3222 R (MCX), 2010 WL 682096 (C.D.

Cal. Feb. 3, 2010);  *see also, Burrow v. Arce*, 997 S.W.2d 229, 243 (Tex. 1999).  Class Counsel

breached its duty to the class in several ways.

### 5.  Making the settlement contingent on a fee agreement

The Settlement Agreement provides that:

> As a material term and condition precedent to this MEDICAL SETTLEMENT
> AGREEMENT, BP and the PSC must reach agreement regarding the amount of
> attorneys' fees and costs for the common benefits to the putative MEDICAL
> BENEFITS SETTLEMENT CLASS, which will be subject to final determination
> and approval by the COURT.

Doc. 6273-1, p. 120.  Class Counsel was willing to destroy the entire settlement that supposedly

benefits the class if Class Counsel did not get a "clear sailing" agreement for fees for themselves.

By making the settlement contingent on an agreement for their fees, Class Counsel showed that

they put their own interests before the interests of the class.  The inclusion of that provision in

the settlement constituted a "clear and serious" violation of Class Counsel's duty to the class. Thus, Class Counsel has forfeited its right to a fee.

### 6. Making a separate fee agreement

Class Counsel was faced with two choices in negotiating a fee: (1) negotiate a combined settlement/fee agreement, with the fee coming from the settlement amount ("combined agreement option"), or (2) negotiate a separate settlement and fee agreement ("separate agreements option"). The "combined agreement option" is in the best interests of the class members because it assures the maximum recovery for the class (without any "holdback" by the Defendant to reach the separate fee agreement) *and* it provides that that if the court awards less than the requested amount to Class Counsel, that money "reverts" to the class, not the Defendant. The "separate agreements option" is in the best interests of Class Counsel, because they eliminate the argument – and the court's concern – that their fee will reduce the class recovery (although in fact, as shown above, it does). As the MANUAL explains:

> if negotiations are to be conducted in stages, counsel must scrupulously avoid making concessions affecting the class for personal advantage.

MANUAL FOR COMPLEX LITIGATION 4th § 21.7, p. 335.

Yet, that is exactly what Class Counsel did here – they made a concession affecting the class (making the settlement contingent on their fee agreement) for their personal advantage. By selecting the "separate agreements option," Class Counsel placed their own interests before those of the class. Class Counsel's decision to place their own interests before the class members' interests in that way constituted a "clear and serious" violation of Class Counsel's duty to the class. Thus, Class Counsel has forfeited its right to a fee.

/ / /

## VIII.   CONCLUSION

Objectors pray that the Court (1) deny certification of the Settlement Class, (2) disapprove the Class Settlements, (3) deny Class Counsel's Motion for Attorneys' Fees, and (4) grant Objectors such other and further relief as to which Objectors may be entitled.

Respectfully Submitted,


By: /s/ Joseph Darrell Palmer_____
        Joseph Darrell Palmer
        Law Offices of Darrell Palmer PC
        603 N. Highway 101, Suite A
        Solana Beach, CA 92075
        Phone: (858) 792-5600
        Fax: (858) 792- 5655
        Darrell.palmer@palmerlegalteam.com

        Attorney for Objectors
        Mike and Patricia Sturdivant, Susan Forsyth,
        and James H. Kirby IV

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2012, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the USDC CM/ECF system.

Service on participants in the case who are registered CM/ECF users will be accomplished by the USDC CM/ECF system.

I further certify that the foregoing document was also served by First-Class Mail, postage prepaid, to the following participants:

James Parkerson Roy
Attn: Deepwater Horizon E&PD Settlement
Domengeaux Wright Roy & Edwards
556 Jefferson St., Suite 500
P.O. Box 3668
Lafayette, LA  70501

Stephen J. Herman
Attn: Deepwater Horizon E&PD Settlement
Herman Herman Katz & Cotlar LLP
820 O'Keefe Avenue
New Orleans, LA  70113

Richard C. Godfrey, P.C.
Attn: Deepwater Horizon E&PD Settlement
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL  60654

/s/ Joseph Darrell Palmer
Joseph Darrell Palmer
Attorney for Objectors