

SCOTT C. BARNES
BRIAN H. BARR
M. ROBERT BLANCHARD
BRANDON L. BOGLE
VIRGINIA M. BUCHANAN
WILLIAM F. CASH III
RACHAEL R. GILMER
KRISTIAN KRASZEWSKI
KIMBERLY R. LAMBERT
FREDRIC G. LEVIN
MARTIN H. LEVIN

ROBERT M. LOEHR
KATHERINE McFARLAND
NEIL E. McWILLIAMS, JR.
Wm. JEMISON MIMS, JR.
CLAY MITCHELL
R. LARRY MORRIS
K. LEA MORRIS
PETER J. MOUGEY
DANIEL A. NIGH
TIMOTHY M. O'BRIEN
MIKE PAPANTONIO

ROBERT E. PRICE
MARK J. PROCTOR
TROY A. RAFFERTY
MATTHEW D. SCHULTZ
AMANDA R. SLEVINSKI
W. CAMERON STEPHENSON
LEO A. THOMAS
BRETT VIGODSKY
AARON L. WATSON

OF COUNSEL:
ROBERT F. KENNEDY, JR.
(LICENSED ONLY IN NEW YORK)

BEN W. GORDON, JR.

LEFFERTS L. MABIE, JR. (1925-1996)
D.L. MIDDLEBROOKS (1926-1997)
DAVID H. LEVIN (1928-2002)
STANLEY B. LEVIN (1938-2009)

August 29, 2012

**VIA ELECTRONIC MAIL**
The Honorable Sally Shushan
United States District Court
Eastern District of Lousiana
500 Poydras Street, Room B-345
New Orleans, Louisiana 70130

          Re:    MDL Phase 2 Discovery – Reply to BP's Response to the PSC's Request
                  for Reconsideration on Time Allocations

Dear Judge Shushan:

       The PSC provides this letter in reply to BP's letter in response to Requests for Reconsideration of Phase 2 Time Allocations.

       The PSC agrees that BP has a significant interest in the depositions of hybrid/source control witnesses designated by the United States. The PSC further agrees that BP should be allowed significant time in these depositions. However, the collective Plaintiffs (in this instance the PSC, Alabama and Louisiana) have an equivalent interest to BP in these depositions.

       As stated by BP, "**BP's interactions with the United States are far more complex and central to the resolution of Phase 2 issues** than those of the PSC, and those interactions clearly warrant the allocation of time ordered by the Court." (emphasis added). BP was a principal player in the above referenced "complex" interactions and thus has knowledge regarding them. Yet, BP argues the Court should deny Plaintiffs sufficient time to inquire or develop testimony pertaining to interactions which are "central to the resolution of Phase 2 issues" and in which Plaintiffs were not involved.

       Plaintiffs intend to inquire into both the internal discussions of the United States and the collaborative discussions between the US and BP. BP primarily argues it has an interest in the internal discussions. This makes sense as BP was involved in the collaborative discussions and has this knowledge. Plaintiffs were not involved in either of these discussions. As the PSC argued during the stipulation negotiations, the Plaintiffs must be allowed to inquire into, for example: 1) the information that was relied upon by BP and the United States in making decisions pertaining to source control; 2) the justifications and rationale for those decisions

(both internally and collaboratively); 3) US expectations for transparency from BP; 4) the reliance of the US upon BP for information and data; 5) the views of the United States as to the particular responsibilities of BP and the US in the response effort; 6) the views of the United States pertaining to BP's response plans in place prior to the Macondo blowout; 7) the basis for the approval of those plans, if any; 8) the accuracy of information relied upon in those plans; and 9) the US expectation pertaining to the purpose and effectiveness of those plans.

BP is attempting to develop evidence that the actions of the United States delayed BP's ability to cap the well and control the source and that Plaintiffs desire to decrease BP's time. Plaintiffs are not attempting to deprive BP of its ability to develop testimony or conduct discovery. Plaintiffs are simply attempting to ensure that parties with countervailing views and the burden of proof are given equal opportunity. The current time allotment setups a scenario that does not allow Plaintiffs time to develop the trial record. This will lead to a record that is not representative of the facts as it will not allow the Plaintiffs an equal opportunity to show that BP was actually directing the response and the United States was looking to BP to lead the response effort and to develop response plans.

A total of 315 minutes were allocated to BP and the Plaintiffs for United States Source Control Witnesses. BP was allotted 230 minutes and the Plaintiffs, collectively three parties, were allocated just 85 minutes. Proportionately, Plaintiffs (PSC, Alabama and Louisiana) have less than 30 minutes each for a US Source Control witness. The PSC believes a more equitable allocation would be for the Plaintiffs to be allocated 150 minutes (50 minutes each if divided equally) and BP to be allocated 165 minutes. Such an allocation would guarantee BP significantly more time than any other party, allow sufficient time for the PSC, Alabama and Louisiana to meaningfully examine US Hybrid/Source Control witnesses, and provide BP sufficient time to inquire and/or confirm any facts it wishes. Nearly all of the United States witnesses are currently set for two days so these time allocations will double in most depositions. BP cannot reasonably argue that it cannot establish whatever it wishes to establish in 330 minutes (5.5 hours) of deposition time.

Plaintiffs have an equivalent interest to BP pertaining to United States Source Control and Hybrid witnesses, and Plaintiffs should be given time representative of these interests.

Respectfully,

Brian H. Barr