# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C.  20005

Robert R. Gasaway
To Call Writer Directly:                    (202) 879-5000                              Facsimile:
(202) 879-5175                                                                      (202) 879-5200
robert.gasaway@kirkland.com              www.kirkland.com

August 23, 2012

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

> Re:    MDL 2179 — Final Resolution of Privilege Challenges, Extrapolation,
>        and Looking Ahead

Dear Judge Shushan:

We write to address several outstanding items related to Phase 2 privilege challenges and the related privilege-ruling extrapolation processes.

## I.      BP's Reply to the United States' Response to Schedule 4 Challenges

As an initial matter, BP submits a brief reply to the United States' response to BP's Schedule 4 privilege challenges.  (S. Himmelhoch Ltr. to Judge Shushan (Aug. 17, 2012); R. Gasaway Ltr. to Judge Shushan (Aug. 13, 2012).)

BP appreciates, of course, the United States' decision to drop its assertion of the attorney-client privilege over all three documents that BP submitted for *in camera* review as part of its Schedule 4 privilege challenges.  The avoidance of a contest through the acceptance of a concession is always a welcome turn of events.

That said, BP must disagree with the United States' unfathomable position that BP has forfeited its opportunity to challenge the deliberative process privilege for these three Schedule 4 documents — and indeed for all Schedule 4 documents — even though this Court process for addressing post-May 31 deliberative process privilege entries has not yet been defined, much less implemented.

*First*, the United States sells the challenge process short by downplaying the importance of its recent concession that its attorney-client privilege claims were not defensible.  (*See* S.

Chicago      Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 23, 2012
Page 2


Himmelhoch Ltr. to Judge Shushan (Aug. 17, 2012), at 1 (claiming the United States dropped its attorney-client privilege claims only in the interests of judicial economy, and because the documents are still protected by the deliberative process privilege).) The challenge and extrapolation process would be short-circuited if a party could simply agree to drop privilege assertions over challenged documents, and do nothing with other, similar challenged documents that may continue to be improperly withheld.

BP challenged the three United States Schedule 4 attorney-client privilege claims to establish the principle that communications among a number of individuals are not necessarily subject to the attorney-client privilege simply because one of individual happens to be an attorney. By withdrawing its claims of attorney-client privilege over these three documents, the United States agrees with BP to this extent, and this agreement materially affects any future extrapolation process. The United States should apply the principle established by its Schedule 4 concession to all similar challenged documents that may remain on its privilege logs.

For its part, BP has so extrapolated in identical situations. Where a party requested *in camera* review of a document, and BP agreed the document was not privileged, BP used best efforts to apply that agreement to the remainder of the Schedule 1, Schedule 3, and Sharepoint challenges. The United States has done the same in the context of DPP challenges — after agreeing that 100 out of the 100 documents for which BP requested an *in camera* review were not, in fact, privileged. (*See* Dkt No. 6212, at 1; Dkt No. 6228, at 2.)

Accordingly, the United States should continue to apply concessions to similar challenge documents remaining on its privilege logs — as the United States and BP have done in the past.

***Second***, as noted above, BP made and preserved deliberative process challenges over the three documents also challenged on attorney-client grounds plus 47 other Schedule 4 United States privilege log entries. (*See* Enclosure 1, R. Gasaway Ltr. to Judge Shushan (Aug. 13, 2012).) While the Court need do nothing at this point regarding these DPP challenges, BP notes that these challenges have been fully preserved for later resolution.

To recap, BP served the United States with Schedule 4 privilege challenges on August 6, 2012. In addition to the three attorney-client privilege challenges discussed above, BP challenged the United States' assertion of the deliberative process privilege for a subset of 50 Phase 2 DPP documents (the three for which the attorney-client privilege was challenged plus 47 others). BP's August 13, 2012 submission then expressly reserved BP's rights to maintain these 50 DPP challenges in the final privilege ruling extrapolation process. *Id.* at 2.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 23, 2012
Page 3

The United States well knows that the Court's Orders have addressed deliberative process privilege challenges separately from the various "Schedules" governing challenges to other types of privileges. Indeed, the procedure for addressing deliberative process privilege claims served after May 31 has not yet been established. The Court's May 31 Order expressly states that "For privilege logs served after May 31, 2012, … the U.S., BP and the Court shall confer on a schedule for the completion of Steps C, D, and E [the sampling, verification, and declaration process]." (Dkt No. 6604, at 3.) As of today, no such conversation has occurred; no such process has been put in place; and no process of this type has been implemented.

Accordingly, BP expects the United States to reevaluate all 50 of these Schedule 4 deliberative process privilege assertions in the final round of DPP privilege extrapolations — as contemplated in the Court's May 31 Order.

## II.   BP's Response to the United States' August 17, 2012 Letter

On August 17, 2012, the United States submitted a letter to the Court raising the following three issues: (i) the scope of the United States' May 21 privilege challenges; (ii) the United States' request to sample BP's privilege log; and (iii) the scope of BP's extrapolation. We respond to each issue in turn below.

### A.   Scope of the United States' May 21 Privilege Challenges

The first issue regarding which privileges the United States challenged has already been resolved. BP confirmed in its August 20, 2012 letter that the United States' May 21, 2012 Schedule 1 challenges applied to both attorney-client privilege and the work-product protection for documents where both were claimed — unlike the United States' June 16 requests for *in camera* inspection that specifically set forth one list of attorney-client privilege challenges and an entirely separate list of work-product protection challenges. Accordingly, the Court need do nothing as to this issue.

### B.   The United States' Motion for Reconsideration and Request for Further Challenges

The United States' August 17 letter next tries to induce the Court to reconsider its August 14, 2012 Order (Dkt. No. 7119). That Order held that the Court — not the United States — would choose a sample of 30 documents for purposes of verifying the accuracy of BP's application of the Court's privilege rulings.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 23, 2012
Page 4

Specifically, the United States' August 17 letter tries to induce the Court to tack on four additional requests for *in camera* review after the Court already ruled that it, not Parties, will select the sample and after the Court determined what that sample will be.

This most recent United States request to depart from the Court's established privilege challenge procedures is part of a continuing pattern. After the Court's July 13 Order, the United States insisted that its 81 Schedule 1 requests for *in camera* review addressed *both* BP's assertions of attorney-client privilege and work-product protection — despite the Court's express limit of 50 challenges per privilege asserted. Similarly, in its July 26, 2012 Sharepoint briefing, the United States challenged the initial privilege assertions for the relevant documents — even though that argument was advanced well after the May 21, 2012 deadline for bringing such challenges — and then insisted these untimely challenges were properly raised. So too here, the United States' August 17 letter clearly amounts to a motion for partial reconsideration of the Court's August 14 Order rejecting the United States' position on sampling. But the letter fails to state forthrightly this important fact.

Nevertheless, as is its custom, BP has made every effort to progress the adjudication of this case and in particular disputes over privilege challenges. Accordingly, BP has reviewed the privilege status of the four documents the United States spotlights. Two of these four documents (1453 and 2807) are clearly privileged and are addressed in the declaration from Tim Lockett provided with BP's submission to the Court as part of the sampling and verification process. A third document (3701) is also clearly privileged, and we anticipate addressing it with a declaration to be filed as soon as possible. The final entry (3871) BP agrees is not privileged, and BP will produce the document promptly. Again, BP's willingness to address these four entries, raised by way of an unacknowledged motion for reconsideration and outside of the Court's established procedures, is in no way an admission that such maneuvers are appropriate.

## C.     Scope of BP's Privilege Extrapolation

The third and final issue raised by the United States' August 17 letter both directly contradicts its own prior June 16 request and is perhaps its most sweeping challenge to date of the Court's established procedures. As to this contradictory reversal and sweeping motion for reconsideration, no accommodations are possible.

The first and final word on the appropriate scope of BP's extrapolation came from the United States itself. The United States' May 21, 2012 letter bringing its Schedule 1 challenges attached spreadsheets containing a total of 8,281 specific entries from BP's privilege logs. The letter stated, "Accordingly, the United States is challenging all of the documents on the enclosed

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 23, 2012
Page 5

lists (*a total of 8,281 entries* out of over 25,000 entries on BP's logs)." (*See* Enclosure 2, S. Cernich Ltr. to M. Nomellini (May 21, 2012), at 1 (emphasis added).)

In its following June 16, 2012 initial brief on Schedule 1 challenges, the United States described its "8,2[8]1 privilege challenges" and explained that its "list of documents for in camera review … is a sampling of those challenges." (Enclosure 3, S. Cernich Ltr. to Court (June 16, 2012), at 9.)  The United States then wrote, "The United States expects that BP will extrapolate the Court's ruling on these challenges to the remainder of the *challenged documents*." *Id.* at 10 (emphasis added).

As explained at the August 17 Working Group Conference, BP has done exactly as the United States requested.  BP extrapolated the Court's privilege rulings to date across every BP document for which a privilege challenge has been raised.  BP has thus extrapolated the Court's rulings across the more than 11,000 unique challenges brought by the United States, Louisiana, Halliburton, and Transocean — including all documents challenged under Schedule 1, under Schedule 3, or as part of the United States' Sharepoint challenges.

Unsatisfied with receiving exactly what it requested, the United States now asks the Court to order BP to extrapolate across *all* of BP's privilege log entries — even those entries that were never challenged by any party to the case.  The United States' sole rationale for this flimsy argument is the fact that the United States unsuccessfully challenged the sufficiency of the descriptions for *all* BP privilege log entries.

But the United States fails to mention that the Court rejected the United States' challenge to the sufficiency of BP's privilege log descriptions when the Court ruled, as a general matter, that BP's logs provided sufficient detail. (Dkt. No. 6352.)  To be sure, the Court made clear that the United States could challenge the sufficiency of detail in specific, identified entries on BP's logs.  *Id.* at 3.  But the United States has never once taken advantage of this opportunity; never once has it identified a specific privilege log entry that it believes is inadequate.  Nor has the Court revisited its April 25 ruling — or been asked to revisit that April 25, 2012 ruling — in the months since it has been issued.

Most importantly, after the Court's April 25 ruling, the United States did not challenge the level of detail for any specific entries on BP's logs — in either its May 21 challenge letter or in its June 16 initial brief to the Court. (*See* Enclosures 2 and 3.)  Nor was there any suggestion in the Court's July 13 and July 30 Orders, (Dkt. Nos. 6904, 7012), that the Court was revisiting its April 25 ruling on its own *sua sponte* initiative and now requiring BP to completely redo all of its privilege logs — logs the PSC managed to challenge extensively throughout Phase 1.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 23, 2012
Page 6


Accordingly, there is no level-of-detail ruling for BP to extrapolate, because there is no level-of-detail issue on which the United States has prevailed.

What the United States did prevail on is certain substantive challenges to BP's substantive privilege assertions. And what BP has extrapolated is those substantive rulings on which the United States prevailed. And what BP has extrapolated these rulings *to* is all BP privilege log entries that have been subjected to a substantive challenge by any party. In particular, BP has extrapolated the Court's rulings to the set of more than 11,000 documents for which substantive privilege challenges were preserved by the United States, Halliburton, and Transocean.

The simple fact is that the United States challenged 8,281 entries, not to "provide[] a useful basis for focusing the challenge process," as the United States' revisionist August 17 letter now contends, but to comply with the court-ordered process for bringing substantive privilege challenges. By contrast, the "useful basis for focusing the challenge process" was provided not by the set of over 11,000 entries challenged by the parties, but by the set of 81 documents that the United States selected for *in camera* review in connection with those thousands upon thousands of challenges. The United States current flimsy argument has no explanation for the function served by its 8,281-entry list of privilege challenges or the United States' express request for BP to extrapolate against those specific challenges.

To be sure, the United States attempts to buttress its alleged level-of-detail challenges (challenges that it never brought under the Court's April 25 ruling) into a substantive challenge to the privilege asserted. The United States attempts to do so by misleadingly comparing the substantive challenges it did not bring to BP's challenge of every deliberative process privilege entry on the United States' logs.

But, as noted above, the Court's procedural orders have always (rightly) treated deliberative process privilege challenges differently from other challenges. In contrast to other challenges, the deliberative process privilege (i) may be asserted only by the United States; (ii) must always by supported by an agency declaration; and (iii) has been mistakenly invoked (by the United States) more than 95 percent of the time as to tens of thousands of documents.

Moreover, even as to the over-used deliberative process privilege, BP did not simply ask the United States to provide declarations for the remaining approximately 80,000 DPP documents still on the United States' logs at that time. Rather, BP requested that the United States continue applying to its remaining Phase 2 entries the (still unstated) principles from the United States' decision to release 100 out of 100 requests for *in camera* review *and* to provide

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 23, 2012
Page 7

declarations for any entries the United States chose not to produce during this process. (Enclosure 4, R. Gasaway Ltr. to S. Himmelhoch, at 1-4 (May 21, 2012).)

In sum, the United States has never brought an analogous challenge, or any challenge, to the privileges claimed in any BP privilege log entry beyond the 8,281 challenges brought during Schedule 1, the 10 challenges brought in Schedule 3, and the United States' Sharepoint challenges. The United States brought specific challenges to specific entries on BP's privilege logs, and as the United States requested, BP has extrapolated the Court's rulings to these challenged documents.

If this Court's procedures are to be even minimally respected, BP has no obligation to do more than what the United States expressly requested in its June 16 letter brief. BP will not expand the scope of these already extensive challenges by extrapolating the Court's rulings to BP privilege log entries that were never challenged, either as to substance or even as to their level of descriptive detail.

## III.    Deliberative Process Privilege Next Steps

The Court has asked about BP's five challenges to DPP documents that the United States previously designated as related to Later Phases, but now designates as related to Phase 2. Again, the Court need do nothing now regarding these five documents.

The way forward on these five documents is bound up with the larger question of how to address deliberative process privilege entries on United States logs served after May 31, 2012. (See Dkt No. 6604, at 3.)  BP notes that the process governing this extrapolation should be defined very soon by the Court in consultation with the parties.

Until then, the United States should complete its deliberative process privilege extrapolations — Steps A and B from the Court's May 31 Order — as described below.

As a preliminary matter, BP unambiguously challenged all deliberative process privilege entries related to Phase 2 appearing on the United States' privilege logs by specifically requesting that the United States extend its then-extrapolation to the remaining Phase 2 entries on its logs. (Enclosure 4, at 1-4.)  Additionally, all of the remaining entries were facially insufficient, because all came unaccompanied by supporting declarations. *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 882 (5th Cir. 1981).

Of the approximately 90,000 documents the United States initially withheld under the deliberative process privilege, the United States has since identified, from its privilege logs

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 23, 2012
Page 8

served through May 31, 2012 (logs 1 through 45), approximately 37,382 deliberative process privilege entries related to Phase 2 issues, and by BP's count, the United States has released or been ordered to produce 35,948 — approximately 96 percent — of those 37,382 documents.

Conversely, by BP's count 1,434 deliberative process entries related to Phase 2 issues remain on the United States' logs 1 through 45.  (These are:  (i) the list of 129 entries provided as Attachment 3 to the United States' May 15, 2012 DPP submission to the Court; (ii) the 1,307 entries that appear on Attachment 3 to the United States' July 20, 2012 DPP submission to the Court; (iii) minus the two documents the Court ruled on August 7, 2012, are not privileged, (Dkt. No. 7056, at 5, 7).)

In addition to these 1,434 entries drawn from United States' privilege logs 1 through 45, BP also, as noted above, has challenged a 50 document subset of Phase 2 DPP documents on the United States' Schedule 4 logs — in addition to the five now Phase 2 DPP documents from the Later Phases challenges.

To these challenged documents still on its privilege logs, the United States should apply the following three extrapolation principles:  (i) the Court's ruling that two documents for which the United States had claimed the privilege were not properly subject to the privilege (see Dkt. No. 7056, at 5 and 7); (ii) the United States' decision to release 7 DPP documents before those rulings were issued (see S. Himmelhoch Email to M. O'Keefe (Aug. 6, 2012)); and (iii) the principles inherent in the United States' decision to release 100 out of BP's initial round of 100 requests for in camera inspection and those reflected in the Court's June 11 Order, (see Dkt. No. 6228, at 2; Dkt. No. 6650).

Assuming that the United States agrees to an extrapolation in this fashion (subject to appropriate supervision and verification by the Court), BP would of course similarly agree to extrapolate — to the challenged entries still on BP's privilege logs — BP's recent decision not to assert privilege over six documents in the Court's verification sample, plus any rulings by the Court that remaining sample documents are not privileged.

The Court's question during Friday's Working Group Conference about the five DPP documents from the Later Phases challenges must be answered against this backdrop.  The United States has now confirmed it continues to assert the DPP over these five documents. These documents should therefore be included in the process the Court and parties establish for verifying the United States' DPP claims made after May 31, as contemplated in the Court's order of that date.  In the meantime, the United States should conclude its DPP extrapolation.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 23, 2012
Page 9

\*       \*       \*

BP respectfully suggests that the United States, BP, and the Court discuss the next steps needed to wrap up the privilege challenge process at the next Tuesday morning or Thursday morning written discovery conference.

Respectfully Submitted,

Robert R. Gasaway

Enclosures

cc (via electronic mail):

United States' MDL Counsel
Plaintiffs' Liaison Counsel
Defense Liaison Counsel
Joel M. Gross
Allison B. Rumsey

# Enclosure 1

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C.  20005

Robert R. Gasaway
To Call Writer Directly:                              (202) 879-5000                                    Facsimile:
(202) 879-5175                                                                                        (202) 879-5200
robert.gasaway@kirkland.com                    www.kirkland.com

August 13, 2012

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Room B345
500 Poydras Street
New Orleans, LA  70130

        Re:      MDL No. 2179 — BP's Schedule IV Challenges to the United States'
                  Privilege Logs

Dear Judge Shushan:

BP respectfully submits this initial brief and list of documents as its challenges to privileges asserted by the United States in connection with United States privilege logs served between June 22, 2012 and July 31, 2012; that is, the United States' logs subject to Schedule IV privilege challenges.

## BACKGROUND

On August 6, 2012, BP served Schedule IV challenges to 50 documents on the United States' Schedule IV privilege logs. The United States asserted the deliberative process privilege over all 50 challenged privilege log entries, and it asserted the attorney-client privilege over three of the 50 challenged entries.

At the working group conference on August 10, 2012, and in subsequent follow-up communications, the United States stood on all of its existing claims of privilege for the Schedule IV documents challenged by BP.  (S. Himmelhoch Ltr to R. Gasaway (Aug. 10, 2012).)

Accordingly, BP submits its Schedule IV challenges to the Court (Exhibit A).  As you will see, to economize on briefing and the effort required by the Court, BP focuses in this submission on three documents over which the United States asserts the attorney-client privilege.

Chicago      Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 13, 2012
Page 2

## ANALYSIS

BP challenges the United States' assertion of the attorney-client privilege over three emails, and BP reserves its rights with respect to the United States' assertions of the deliberative process privilege.

**Attorney-Client Privilege**.  The United States claims that each of the three emails at issue is protected by the attorney-client privilege because they reflect a communication with counsel for the purposes of obtaining legal advice.

But it appears to BP that, out of the many recipients of these email messages, only one recipient is listed by the United States as an attorney.

BP therefore respectfully asks the Court to determine whether these emails are protected by the attorney-client privilege because they are being sent "for the purpose of seeking, obtaining, or providing legal assistance to the client."  Order, July 13, 2012 (Rec. Doc. 6904). Specifically, BP seeks *in camera* inspection of, and attorney-client privilege determinations regarding, the documents listed on Exhibit A to this letter.

With respect to these three documents, BP is challenging only the attorney-client privilege, as opposed to the deliberative process privilege, at the present time.

**Deliberative Process Privilege**.  With respect to the deliberative process privilege, BP believes the operative principles for de-privileging United States documents have been established by the United States' withdrawal on April 11, 2012, of its deliberative process privilege claims with respect to all 100 of the first 100 documents challenged by BP (Rec. Doc. 6212); by the United States' subsequent de-privileging of approximately 36,060 documents (out of a total of approximately 37,175 Phase 2-related documents) over which deliberative process privilege had initially been claimed by the United States; and by the Court's Orders of June 11 and August 7, 2012, (Rec. Docs. 6650, 6873).

Against this backdrop, and in light of the many other issues requiring the attention of the Court and parties, BP does not request further examination of deliberative process privilege at this time.  BP reserves the right to challenge the United States' assertion of the deliberative process privilege over Schedule IV documents, or future schedules, as appropriate.

BP recognizes that, if it is successful in its challenges to attorney-client privilege as to these three documents, the three documents will not be produced, given that the deliberative process privilege continues to be asserted by the United States. Accordingly, BP hereby notifies

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 13, 2012
Page 3

the Court pursuant to the Court's recent request for clarity with respect to the scope of which privileges are and are not subject to challenge for specific documents.

\* \* \* \* \*

As the Court is aware, BP continues to seek to minimize the effort required of the Court and United States counsel in connection with privilege challenges.  Accordingly, BP requests at this time *in camera* inspection of only three documents withheld under claims (inter alia) of the attorney-client privilege in connection with BP's Schedule IV privilege challenges.

Sincerely,

Robert R. Gasaway

Attachment

cc (via electronic mail):

United States' MDL Counsel
Plaintiffs' Liaison Counsel
Defense Liaison Counsel
Joel M. Gross
Allison B. Rumsey

# EXHIBIT A

BP's Schedule IV Attorney-Client Privilege Challenges to the United States' Privilege Logs

| First Bates | Last Bates | Document Date | Privileges | Phase | Author | Recipients | Attorney | Description | Basis | Family | Redacted | Log |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HSE012-019676 | HSE012-019680 | 20100718 | AC; DP | P2 | Allen, Thad W. ADM, DHS | Chu, Steven, DOE; Gautier, Peter W. CAPT, DHS; O'Connor, Rod, DOE; Neffenger, Peter V. RDML, DHS; Cook, Kevin S. RADM, DHS; Nash, Roy A. RDML, DHS; Zichal, Heather R., EOP; Hunter, Tom, DOE; Hubble, Solange O., DHS; Nauta, David, DHS; Zukunft, Paul RADM, DHS; Bowman, Russell E. LCDR, DHS; Lederer, Calvin, DHS | Lederer, Calvin, DHS | Interagency email chain discussing proposed NIC directive to BP | Internal pre-decisional and deliberative discussion of proposed directive to BP related to response actions and communication with counsel for purposes of obtaining legal advice | HSE012-019676-HSE012-019680 | N/A | Log 46 |
| HSE012-019682 | HSE012-019683 | 20100718 | AC; DP | P2 | Allen, Thad, DHS | Gautier, Peter W. CAPT, DHS; O'Connor, Rod, DOE; Chu, Steven, DOE; Neffenger, Peter V. RDML, DHS; Cook, Kevin S. RADM, DHS; Nash, Roy A. RDML, DHS; Zichal, Heather R., EOP; Hunter, Tom, DOE; Hubble, Solange O., DHS; Nauta, David, DHS; Zukunft, Paul RADM, DHS; Bowman, Russell E. LCDR, DHS; Lederer, Calvin, DHS | Lederer, Calvin, DHS | Email re Revised Proposed Text for NIC Order to BP | Internal pre-decisional and deliberative discussion of proposed directive to BP related to response actions and communication with counsel for purposes of obtaining legal advice | HSE012-019682-HSE012-019683 | N/A | Log 46 |
| HSE012-037553 | HSE012-037578 | 20100628 | AC; DP | P2 | Hubble, Solange O., DHS | Allen, Thad W. ADM, DHS; Aguin, Wayne CDR, DHS; Pond, Robert, DHS; Greene, Lawrence CDR, DHS; Emerick, Thomas CDR, DHS; Grawe, William, DHS; Stumm, Francis, DHS; Neffenger, Peter RADM, DHS; Zukunft, Paul RADM, DHS; Nash, Roy RADM, DHS; Landry, Mary RADM, DHS; Watson, James RADM, DHS; Salerno, Brian RADM, DHS; Novotny, Jeffrey CAPT, DHS; Kieffer, Kevin CAPT, DHS; Kinyon, Juliette, DHS; Bennett, Craig, DHS; Rhinehart, Kerstin CDR, DHS; Poulin, Steven CAPT, DHS; Laferriere, Roger CAPT, DHS; Gautier, Peter CAPT, DHS; Rooke, Connie M. CDR, DHS; McCleary, Stephen CAPT, DHS; Lederer, Calvin, DHS | Lederer, Calvin, DHS | Draft National Incident Commander's ReportA | Internal pre-decisional and deliberative discussion of policy issues related to policy changes for future oil spill response actions and communication with counsel for purposes of obtaining legal review and advice | HSE012-037552-HSE012-037580 | N/A | Log 46 |

# Enclosure 2



**U.S. Department of Justice**

Environment and Natural Resource Division

*P.O. Box 761*
*Washington, DC 20044*
*202-514-0056*
*Scott.Cernich@usdoj.gov*

May 21, 2012

**BY ELECTRONIC MAIL**

Mark J. Nomellini
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
mnomellini@kirkland.com

      Re:    MDL 2179: US Challeges to BP Privilege Claims

Dear Mark:

      I enclose two spreadsheets containing the United States' challenges to BP's privilege logs served before May 1, 2012.  The first spreadsheet lists documents from "BP's Good Faith Identification of Quantification Entries on Privilege Logs Served Before May 1, 2012" ("BP Quantification List").  The second spreadsheet contains the documents from BP privilege logs Nos. 1 through 76 that the United States believes are Quantification-related but are not included on the BP Quantification List ("Non-BP Quantification List").[1]  The Non-BP Quantification List contains 1,012 documents, a select subset from BP's 76 privilege logs.  In many cases, BP excluded from the BP Quantification List documents in the same "Privilege Bates Family Range" as documents on the BP Quantification List; the United States has included many of those documents on the Non-BP Quantification List of privilege challenges.

      As described in Thomas Benson's April 18, 2012 letter, BP's logs do not provide sufficient information to determine whether the claimed privilege is applicable thus making it impossible for the United States to determine which documents merit challenge, let alone prioritize its challenges.  Accordingly, the United States is challenging all of the documents on the enclosed lists (a total of 8,281 entries out of over 25,000 entries on BP's logs).  At this time,

---

[1] Even if BP in good faith considers these documents unrelated to quantification, as we have previously discussed, the line between quantification and other relevant areas of inquiry is fuzzy at best.  Documents that BP considers unrelated to quantification may yield information that helps calculate flow rates.  Moreover, all of the documents on the United States challenge lists post-date the spill and so are extremely likely to be relevant to either quantification or source control.

we are not challenging any entries dated after January 31, 2011 since that was the agreed cutoff date for production of documents.  As the United States is relying on the dates provided by BP in its logs, we reserve the right to challenge BP's privilege claims on such documents if we discover that any of the documents dated after January 31, 2011 were, in fact, created prior to that date.

We make the attached challenges after an extensive review of the available, but limited, information in BP's logs.  We note that BP has claimed attorney-client privilege or attorney work product (and usually both) on all of the challenged documents.

|  | Attorney-Client Only | Work Product Only | Both |
|---|---|---|---|
| BP Quantification List | 1,489 | 4 | 5,776 |
| Non-BP Quantification List | 271 | 0 | 741 |

However, in reviewing the logs, it is clear that many of these documents cannot properly be considered privileged and many others are unlikely to be privileged.  For example, BP's logs claim privilege for documents shared with third parties (including the United States), and appear to include numerous documents conveying factual information and/or related to the response rather than purely legal matters.  We discuss these issues further below.

The vast majority of the documents withheld as attorney-client privileged are communications between non-attorneys.  Such non-attorney communications are only protected by the privilege in rare circumstances.  In order for non-attorney communications to be protected by the attorney-client privilege, the communication must be made or the document prepared for the *primary* purpose of seeking legal advice.  BP documents where the primary purpose was not seeking legal advice are not privileged and must be produced.  Work product protection only applies to those BP documents where the primary motivating purpose behind the creation of the documents was to aid in possible future litigation.  BP documents created for other reasons, *e.g.*, attempting to stop the flow of oil from the Macondo well, are not entitled to work product protection. We anticipate that the primary purpose of many of the documents on BP's logs was the design and implementation of the response, rather than potential future litigation.  Certainly, we would expect that BP's focus was first and foremost on the response before the well was shut-in.

As explained in our prior correspondence, we do not believe that many of the listed documents can properly be considered privileged.  In correspondence and meetings last fall, we noted that BP's flow work could not be considered privileged to the extent it involved factual analysis or was primarily motivated by the response rather than potential future litigation.  As late as October 2010, BP publicly declared that flow rate is "crucial to understanding the environmental impact, shaping appropriate remediation plans, and assessing the legal consequences of the event…all parties involved share a common goal of arriving at a reliable and accurate flow estimate.  Therefore, BP requests that…there be open, constructive, and collaborative scientific discussion about these issues."[2]  Despite the obvious relevance of flow

---

[2] BP's Preliminary Response to the Flow Rate and Volume Estimates Contained in Staff Working Paper No. 3, Correspondence to the National Oil Spill Commission, Oct. 21, 2010.

rate calculation work to the response and restoration of the Gulf, BP still is claiming that thousands of documents neither written nor received by attorneys are protected attorney-client communications and attorney work product, including documents going back to the earliest days of the spill.  To the extent they address factual issues, the documents cannot be privileged.  *See, e.g., In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982).  We remind you that BP has already argued to the Court that technical analyses estimating the flow from the well are factual in nature.  As one of the company's cited cases explains: "Furthermore, because the only purpose of the study was to 'identify' and 'quantify,' the Court is hard-pressed to view it as anything but purely factual material which, therefore, is not privileged."  *Mobil Oil Corp. v. Department of Energy*, 520 F.Supp. 414, 417 (N.D.N.Y. 1981) (cited by BP at Doc. #6148 at 9).  On this point we agree: BP's efforts to "quantify" the flow of oil are "factual material" that cannot be protected by the attorney-client privilege or work product doctrine. Work performed in order to kill the well or participate in a collaborative scientific process to estimate flow cannot also be protected as attorney work product.

BP has asserted privilege over 51 documents (47 on the BP Quantification List, 4 on the Non-BP Quantification List) described by BP as "Operational Data."  BP simply has no basis to withhold data as privileged.[3]  The Merriam-Webster Dictionary defines "data" as "***factual information*** (as measurements or statistics) used a basis for reasoning, discussion, or calculation" (emphasis added).  "data." *Merriam-Webster.com*, 2012. Web. 21 May 2012.  Facts cannot be withheld as privileged.  Similarly, BP has asserted privilege over a total of 239 documents described by BP in its privilege logs as "Engineering Drawings/Schematics," "Manuals/SOPs," or "Photo/Video/Image."  Such documents also are factual in nature and are not protected by either the attorney-client privilege or the work-product doctrine.

BP also has asserted the attorney-client privilege and/or attorney work-product protection over a wide variety of communications with, or documents authored by, third-parties, including, without limitation, United States employees and contractors, Transocean, John Wright of Boots and Coots, General Electric, Florida State Professor Ian MacDonald, National Response Corp., Southwest Research Institute, Western Geco, Worldwide Oilfield Machine, Inc., Weatherford Laboratories, ExxonMobil, INTEC Engineering, NALCO, Welaptega Marine, Woods Hole Oceanographic Institute, and Liquid Robotics.  BP must produce all such documents immediately and should identify all non-BP employees on its privilege logs and explain the basis for claiming privilege over communications with, or documents prepared by, those individuals or entities.  Other categories of documents on BP's logs raise similar concerns.  For example, BP has asserted that five (5) "Regulatory Filings" are protected by the attorney-client privilege or the attorney work product doctrine.  Since "Regulatory Filings" are filed with regulatory bodies, the United States cannot understand the basis for BP's privilege claim on those filings.

---

[3]  The very term "Operational Data" suggests that the information was compiled for the purposes of response operations, rather than litigation.

As to the other entries on BP's privilege logs, the United States does not have enough information to specifically assess the propriety of BP's privilege claims given the cryptic descriptions.  We look forward to scheduling a time to meet and confer with you on these issues.

Very truly yours,

/s/ Scott M. Cernich

Scott M. Cernich

Enclosures

cc:     (via email)

Liaison and Coordinating Counsel
Robert R. Gasaway
Michael A. Petrino
R. Michael Underhill
Steve O'Rourke
Sarah D. Himmelhoch
Robin L. Hanger
Thomas A. Benson
Bethany Engel
Aristide Chakeres
Abigail Andre

# Enclosure 3



**U.S. Department of Justice**
Environment and Natural Resource Division

*P.O. Box 7611*
*Washington, DC 20044*
*202-514-0056*
*Scott.Cernich@usdoj.gov*

June 16, 2012

**BY ELECTRONIC MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
Eastern District of Louisiana
Hale Boggs Federal Building
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

  Re: MDL 2179: United States' Challenges to BP Privilege Claims

Dear Judge Shushan:

  BP relies on overbroad and improper assertions of the attorney-client privilege and work product doctrine to hide critical information from the United States, other parties in this case, and the public, including flow rate estimates and calculations dating from the earliest days of the spill through the final killing of BP's well on September 19, 2010.  The information and calculations BP seeks to withhold are critical to: 1) quantify the oil discharged from the Macondo well to properly assess damage to the Gulf ecosystem and assess a civil penalty, 2) determine whether BP's actions in responding to the well were sufficient and appropriate, 3) and establish whether the flow rate estimates and calculations BP provided to the United States were accurate and consistent with BP's internal work.  The credibility of BP's flow rate estimates are at issue in this case.  The fact that many of these documents may be embarrassing or contradict BP's public statements regarding flow rate and source control efforts does not entitle BP to hide them under the cloak of privilege.[1]

  BP seeks to withhold hundreds of documents created *before* the Macondo well was killed that were authored by core members of BP's response team, such as: Flow Engineers Trevor Hill, Farah Saidi, and Tim Lockett; Reservoir Engineer Robert Merrill; Science Lead David

---

[1] The State of Louisiana and the United States have coordinated efforts to submit this combined brief.  The State of Louisiana has informed the United States that it is joining in and adopting this brief as it did with the United States' initial challenges.

Rainey; and Vice-President ("VP") of Engineering for Exploration and Production ("E&P") Paul Tooms.  Those documents include, according to BP's descriptions, "Operational Data," "Engin. Drawings/Schematics," "Spreadsheets," and "Reports."  In seeking discovery of the United States' documents, BP has vigorously argued to this Court that efforts to quantify the flow of oil are factual and are not privileged.  This also applies to BP's efforts.

While the Macondo well was shut in with the Capping Stack on July 15, 2010, the well was not killed until September 19, 2010.  Even after July 15, 2010, flow rate remained a critical issue in assessing well integrity, *i.e.*, whether shutting in the well would result in an underground blowout that would be all but impossible to stop.  It appears that BP is contending that the very BP engineers responsible for trying to stop the flow from the Macondo well were concurrently engaged in litigation-related Quantification work *during the spill*.  The idea that "attorney work product related to flow rate" generated before the well was sealed did not also inform the response is dubious.[2]  As courts have found in similar circumstances, it is impossible for a person to build a mental firewall between discoverable information and privileged information on the same topic.  *See Michelson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, No. 83 CIV. 8898 (MEL), 1989 WL 31514, at *4 (S.D.N.Y. Mar. 28, 1989) (expert "cannot possibly create separate spaces within his memory" for public information and for privileged information).  BP engineers putting all their efforts to killing the well cannot be imagined to have built such a firewall.[3]

Accordingly, the Court should subject BP technical documents and discussions dated prior to September 19, 2010 to heightened scrutiny with a special emphasis on documents created prior to July 19, 2010.[4]

BP has (1) failed to meet its burden of proving that the documents listed on its privilege logs are protected by the attorney-client privilege or the attorney work product doctrine, (2) improperly withheld third-party communications and factual information, and (3) waived attorney-client privilege and work product protection for communications and documents related to its public statements regarding flow rate.  Further, the United States can demonstrate that it has substantial need for certain documents over which BP has asserted qualified work product protection.

## 1.  BP Has Failed to Demonstrate that its Attorney-Client Privilege Claims are Valid

BP bears the burden of proving each and every element of the attorney-client privilege. *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997), *cert. denied*, 522 U.S. 1065 (1998); *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982), *cert. denied*, 466 U.S. 944 (1984).  The elements of the attorney-client privilege are: (1) the asserted holder of the

---

[2] BP told the United States that BP's counsel-directed workstream on flow rate was "formally constituted in an email distribution dated July 19, 2010," although this date is two months prior to the final well kill and during the well integrity test.  *See* Attachment B, Letter from Rob Gasaway to Steve O'Rourke, *et al.*  (Oct. 17, 2011).

[3] *See, e.g.*, Attachment N, BP-HZN-2179MDL04791976-978 (redacted Doug Suttles hand written notes from April 30, 2010) and BP-HZN-2179MDL05034128 (redacted BP email regarding discussions with National Labs personnel (Tatro, Tieszen, Havstad) on well shut-in).  Both documents are included on the United States' *In Camera* List.  *See* Attachment A.

[4] *See id.*

privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.  *Gabarick v. Laurin Mar. (America), Inc.*, No. 08-4007, 2011 WL 2838226, *4 (E.D. La. July 15, 2011) (quoting *In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir.1975)).

In the case of corporate communications among non-attorneys, this Court has limited the applicability of the attorney-client privilege to those situations where "it was clear that legal advice previously obtained was being circulated to those within the corporate structure who needed the advice in order to fulfill their corporate responsibilities" or where attorney communications were forwarded "for the purpose of acquiring more information upon which more informed legal advice or assistance could be rendered."  *In re Vioxx Prod. Liab. Litig.*, 501 F. Supp. 2d 789, 811-12 (E.D. La. 2007).  All of BP's attorney-client privilege claims – over 4,000 entries in BP's latest response to privilege challenges – involve communications among *non-attorneys* as Pretrial Order ("PTO") No. 14 (Rec. doc. 655) did not require logs of communications with counsel.  Discussions among BP employees or with media consultants regarding BP, United States Government, or independent flow rate estimates are not even remotely related to communication of legal advice and are not shielded by the privilege.  The bald assertions contained in BP's privilege logs do not establish the privilege.  BP has not met its burden.

Further, BP has claimed the attorney-client privilege for hundreds of documents that are factual in nature – described by BP as "Engin. Drawings/Schematics," "Photo/Video/Image," or "Spreadsheet."  The attorney-client privilege does not apply to BP's factual documents.  The Supreme Court, in *Upjohn Co. v. U.S.*, held that the attorney-client privilege does not prevent discovery of underlying facts.  449 U.S. 383, 395 (1981).  BP also asserts privilege over 20 documents on the United States' challenge list described by BP as "Operational Data."[5] Webster's Ninth New Collegiate Dictionary defines "data" as "*factual information* (as measurements or statistics) used as a basis for reasoning, discussion, or calculation" (emphasis added).  BP simply has no basis to withhold such facts or data as privileged.  In fact, Paragraph 4 of PTO No. 14 (Rec. doc. 655) requires the parties to redact documents and produce facts where possible.

As BP already argued to the Court – technical analyses estimating the flow from the well are factual in nature.  Neither the attorney-client privilege nor the work product doctrine protects them unless they qualify for protection pursuant to Federal Rule of Civil Procedure 26(b)(4).  *See United States v. Edwards*, 39 F. Supp.2d 716, 736 (M.D. La. 1999) ("Pre-existing facts that underlie the client's confidential communications, whether oral or written, are not privileged simply because the client disclosed them to an attorney for the purpose of obtaining legal services"); *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982).

---

[5] The very term "Operational Data" suggests that the information was compiled for the purposes of response operations, rather than litigation.

Indeed, this Court held that damages calculations – even when made at the request of counsel – are *not privileged but are factual information*. *Lenihan v. Stewart Enterp., Inc.*, No. 01-2895, 2002 WL 31001842, at *3 (E.D. La. 2002) (emphasis added). The United States responded to BP's deliberative process challenges by releasing thousands of documents. It is fundamentally unfair for BP to turn around now and claim that its own factual materials are privileged.[6]

## 2. BP has Failed to Prove that Litigation was the Primary Motivating Purpose for the Documents BP Claims are Work Product

For each document that BP seeks to shield from disclosure under the work product rule, BP bears the burden to show that the document was prepared in anticipation of litigation. *See Poseidon Oil Pipeline Co., L.L.C. v. Transocean Sedco Forex, Inc.*, Nos. 00-760, 00-2154, 2001 WL 1360434, at *3 (E.D. La. Oct. 30, 2001) (citing *Guzzino v. Felterman*, 174 F.R.D. 59, 63 (W.D. La. 1997); *St. James Stevedoring Co. v. Femco Mach. Co.*, 173 F.R.D. 431, 432 (E.D. La. 1997). The doctrine, however, does not extend to the underlying facts relevant to the litigation. *See, generally*, *Upjohn*, 449 U.S. at 395-96; *see also Southern Scrap Material Co., v. Fleming*, No. 01-2554, 2003 WL 21474516, at *15-20 (E.D. La. Jul. 18, 2003) (ordering production of factual data including sampling data, maps of sampling locations, lab results, survey results, data charts, photographs, and videos).

The Fifth Circuit applies a restrictive "primary purpose" test – a document is prepared in anticipation of litigation only when "the primary motivating purpose behind the creation of the document [i]s to aid in possible future litigation." *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir.1981). The doctrine excludes "materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation." *Poseidon Oil*, 2001 WL 1360434, at *3 (quoting *United States v. El Paso Co.*, 682 F.3d at 542).

BP has not demonstrated that the flow rate materials at issue in the United States' privilege challengers were prepared primarily for the purposes of litigation. These documents were created at a time when BP, as a responsible party, was obligated to undertake response actions such as calculating or estimating flow rates,[7] calculating shut-in well head pressure, and attempting to determine whether the burst disks in the casing had failed. Indeed, BP's own "Regional Oil Spill Response Plan" for the Gulf of Mexico required BP to calculate spill volume and provides that determining size and volume of the spill is "critical to initiating and sustaining an effective response."[8] BP expert and response contractor ADD Energy testified during its 30(b)(6) deposition that its standard practice is to calculate flow rates in order to design a kill operation to stop the flow.[9] In other words, while everyone knew litigation was a likelihood, the purpose of these calculations was not primarily for litigation but, rather, primarily to stop BP's well from spewing more oil into the Gulf.

---

[6] *See* United States' Letter Brief on Phase 2 Deliberative Process Privilege Claims (May 15, 2012) (Rec. doc. 6618). The United States recognized that the deliberative process privilege is a qualified privilege than can be overcome in certain circumstances. BP argues that the United States is comparing "apples to oranges," but the case law makes clear that factual information cannot be withheld under attorney client or work product privilege.
[7] It is standard practice for the responsible party in an oil spill to provide discharge volume estimates to the United States Coast Guard or other responsible federal agency.
[8] *See* Attachment C, Deposition Exh. 769, "BP Regional Oil Response Plan – Gulf of Mexico," Sec. 1, p. 2.
[9] *See* Attachment D, 30(b)(6) Deposition of ADD Energy, June 23, 2011 (308:11-309:6).

Since the vast majority of the documents at issue relate to BP's "response to the spill, the clean-up efforts, the preparation of regulatory responses and reports, and numerous other activities whose primary purpose was business in nature and not necessarily in anticipation of litigation … the documents are not protected and should be produced." *See Barker v. Kinder Morgan South-East Terminals, L.L.C.*, No. 2:07cv48-KS-MTP, 2007 WL 4333843 (S.D. Miss. Dec. 6, 2007) (ordering production of documents relating to discharge of petroleum) (citing *El Paso Co.*, 682 F.2d at 542). In many cases, this Court has ruled that documents created in the course of investigating an accident are not protected by the work-product doctrine. *See, e.g., Poseidon Oil*, 2001 WL 1360434, at *3; *Holton v. S&W Marine, Inc.*, No. 00-1427, 2000 WL 1693667 (E.D. La. Nov. 9, 2000). Surely, documents created in response to an ongoing incident must be produced. Similarly, in *Lenihan*, this Court found that the work product doctrine did not protect factual information – including damage calculations, in part, because there were "nonlitigation purposes for such material." 2002 WL 31001842, at *6.

### 3.   The Parties have a Substantial Need for BP's Data and Flow Rate Calculations During the Response

The work product doctrine is not a privilege but a qualified immunity, which permits discovery of work product when another party has "a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(B). The other parties in this case need the relevant facts and data for the Macondo blowout. BP owned and operated the well. No one has more information about the well than BP. All of the raw data underlying the United States Flow Rate Technical Group/DOE Science Team's ("FRTG/DOE") work was provided by BP.

On October 21, 2010, BP submitted its Comment to the National Oil Spill Commission ("BP Flow Rate Comment") critiquing United States government flow estimates as well as estimates of independent researchers.[10] That Flow Rate Comment states BP's belief that the accuracy of the data underlying the FRTG/DOE work is relevant to the quantification inquiry.[11] Accordingly, (1) if BP has information that the data it provided to the United States to calculate flow is inaccurate or unreliable, BP should disclose it; and (2) if BP has data that it used but did not share with the United States, that fact is relevant because it goes to culpability and an informed resolution of the claims.

The parties in this case have a substantial need for BP's factual materials and data, such as "Operational Data," "Engin. Drawings/Schematics," and "Spreadsheets" because the material cannot be obtained by other means. *See In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d at 1240. The parties are unable to recreate or otherwise obtain the data collections and materials BP seeks to shield without undue hardship. *See, e.g., Smith v. Texaco*, 186 F.R.D. 354, 357-58 (E.D. Tex. 1999). This information is not amenable to discovery by deposition.

Further, to the extent BP is claiming work product protection over the documents containing its internal flow rate calculations during the spill, they "are essential to the

---

[10] *See* Attachment E, BP Flow Rate Comment (BP-HZN-2179MDL06148979). BP's Flow Rate Comment contains numerous attacks on the data relied upon by the FRTG and DOE Science Team. This is surprising, because the FRTG/DOE relied entirely upon BP for their data.

[11] *See id.*, at 1.

preparation and prosecution of the [Parties'] case and are not available from any other source." *Adams v. Teck Cominco Alaska, Inc.*, 232 F.R.D. 341, 346 (D. Alaska 2005) (ordering production of defendant's internal compilation of Clean Water Act permit violations). BP's credibility regarding flow rates are at issue in this case. BP's flow rate calculations are critical to the parties because those internal documents may contradict BP's statements to the public or the United States. *See id.* In fact, BP's own witnesses have given conflicting testimony on BP's flow rate calculations at the time the capping stack was placed on the well. Richard Lynch, who led BP's Macondo source control efforts, testified that BP calculated a flow rate of 56,000 barrels per day – a flow rate he testified he had no reason to doubt because "it was a pretty straight calculation,"[12] but Paul Tooms, BP's VP of E&P and leader of BP's Flow Assessment Technical Team, testified that the rate calculated at shut-in was "35- to 40- something-thousand barrels per day."[13] Further, on July 6, 2010, BP executive Doug Suttles, BP's top representative in the Unified Area Command, submitted a letter to the U.S. Coast Guard seeking approval for dispersant application assuming a 53,000 barrel per day flow rate, but Mr. Suttles testified that he could not recall the basis for that number.[14] These inconsistencies and lack of recollection demonstrate the parties' substantial need for BP's technical documents related to flow rate. *See Eckstein Marine Serv. Inc. v. Crescent Marine Towing, Inc.,* No. 98-1467, 1998 WL 850523, at *1 (E.D. La. Dec. 8, 1998) ("Plaintiff may demonstrate undue hardship if witness cannot recall the events in question or is unavailable").

### 4.  BP Must Produce Communications with Third Parties

BP also has asserted the attorney-client privilege and/or work product protection over a wide variety of communications with, or documents authored by, third-parties, including, without limitation, United States employees and contractors, Wild Well Control, Ole Rygg of ADD Energy, General Electric, Florida State Professor Ian MacDonald, Worldwide Oilfield Machine, Inc., Weatherford Laboratories, ExxonMobil, INTEC Engineering, Welaptega Marine, and Liquid Robotics. BP should produce all such documents immediately, identify all non-BP employees on its privilege logs, and explain the basis for claiming privilege over communications with, or documents prepared by, those individuals or entities. For example, BP has asserted privilege over communications with employees of the National Oceanic and Atmospheric Administration and Sandia National Laboratories.[15]

Other categories of documents on BP's logs raise similar concerns. For example, BP has asserted that "Regulatory Filings" are protected by the attorney-client privilege or the work product doctrine. Since "Regulatory Filings" are presumably filed with regulatory bodies, the United States cannot understand the basis for BP's privilege claim on such documents.[16]

---

[12] *See* Attachment F, Deposition of Richard Lynch, May 19, 2011 (371:15-372:21).

[13] *See* Attachment G, Deposition of Paul Tooms, June 16, 2011 (238:18-240:12).

[14] *See* Attachment H, Deposition of Doug Suttles, May 19, 2011 (460:15-464:2); *see also* Attachment I, Doug Suttles July Letters to Adm. Watson, USCG, Deposition Exh. 2420.

[15] *See* BP Privilege Log Entries PRIV-BP-HZN-2179MDL00012906 and PRIV-BP-HZN-2179MDL00017038.

[16] BP has also potentially waived privileges over documents uploaded to its Macondo Tactical Response SharePoint by sharing access to the site with third parties. *See, e.g.* BP-HZN-2179MDL05114726 (email granting WildWell Control employees access to a BP SharePoint); BP-HZN-2179MDL04479719 (printout from the Macondo Tactical Response SharePoint including a list of users, some of whom work for third parties). Discussions between the

**5. Independent of the Failures of BP's Attorney-Client Privilege and Work Product Claims, BP Has Waived Attorney-Client Privilege and Work Product Protection for Communications and Documents Related to Certain Submissions to the United States Government and the Public**

BP submitted its October 2010 Flow Rate Comment to the Oil Spill Commission and directly to the Department of Justice. That Comment, publicly available on the Oil Spill Commission's website, requested "that the information provided [in the Comment] be shared with the many technical personnel interested in this topic and that there be open, constructive, and collaborative scientific discussion about these issues."[17] BP did not intend to shield its flow rate investigation behind a veil of privilege. To the contrary, BP asserted the need for experts analyzing flow to "have both (i) access to all relevant data and information, and (ii) the time to analyze that data and information, to consult and collaborate with their colleagues in the scientific community, and to develop a well-founded, strongly defensible estimate of the flow rate."[18]

In discovery thus far, BP has asserted work product protection over its internal analysis of the flow rate, and refused to allow deponents to answer questions about this investigation on the grounds that it was directed by counsel.[19] At the same time, however, BP has sought the assistance of this Court to ensure that it received the factual basis for the United States estimates as well as for estimates conducted by non-parties to this litigation, including wholly independent researchers. Now, BP refuses to share its own information. BP cannot have it both ways.

BP engineering technical authority Paul Tooms testified that the Comment was prepared by members of BP's internal "Flow Assessment Team,"[20] of which he is the leader,[21] but BP contends that the work of the Flow Assessment Team is protected work product because the work was conducted at the direction of counsel in anticipation of litigation.[22] BP Counsel refused to allow Mr. Tooms to testify regarding the BP Flow Paper, including the underlying calculations, during his deposition last June.[23]

Qualified work product protection requires a subjective intent of confidentiality because the doctrine is designed to protect "a lawyer's need for a sphere of privacy in preparing a lawsuit." *United States v. El Paso Co.*, 682 F.2d at 542. The Fifth Circuit standard is strict. Internal documents, even those created at the direction of a lawyer, are not protected unless the "***primary motivating force***" behind their creation was to aid in future litigation. *Id.* (emphasis added). Materials that a party pledges to disseminate to the public are not entitled to such protection. *See id.*

---

United States and BP on this topic have been productive, but the United States reserves its right to raise objections to privileges asserted over documents included in the Macondo Tactical Response SharePoint at a later date.
[17] *See* Attachment E, BP Flow Rate Comment, at 2–3.
[18] *Id.* at 9.
[19] *See, e.g.,* Attachment G, Deposition of Paul Tooms, June 16, 2011 (237:21–238:1, 267:3–13, 273:22–281:9, 289:11–290:8), June 17, 2011, (336:21–346:15, 358:4–11, 360:4–25).
[20] *See id.* (266:18–267:13).
[21] *See id.* (231:3–10).
[22] *See id.* (232:22–233:18).
[23] *See id.*

Further, even if BP initially intended that the Flow Assessment Team work be confidential, BP waived both the attorney-client privilege and work product protection by sharing that work with its adversary and the public.  *See Kintera, Inc. v. Conivio, Inc.,* 219 F.R.D. 503 (S.D. Ca. 2003) (disclosure on business's public web site of particular facts and specific reference to competitor's former employees' signed written affidavits waived work product protection); *Krenning v. Hunter Health Clinic*, 166 F.R.D. 33, 35 (D. Kan. 1996) (party's voluntary disclosure of portions of a privileged document in a press release and newspaper article served to waive attorney client and work product privileges); *see also* 8 C.A. Wright, A.R. Miller, & R.L. Marcus, *Federal Practice & Procedure*, § 2016.4 (3d. ed. 2010) (disclosure of privileged material to a nonparty outside the discovery context "justify discovery of formerly privileged materials by current litigants unless the disclosure was itself privileged"); Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, 1048 (5th ed. 2007) ("Any general public disclosure in contexts such as Internet websites or newspaper advertisements where such announcements have a commercial or competitive purpose will effect a waiver of otherwise work-product-protected materials."); *Id*. at 1053 ("Voluntary disclosure [of work product] to a government agency to effect a goal by the disclosing party . . . generally constitutes waiver.").  As early as July 20, 2010, BP was planning to share its flow rate work in presentations to BP's "core universities," including materials prepared by Trevor Hill, a member of BP's Flow Assessment Team.[24]

Here, BP has issued what amounts to a 10-page press release disclosing technical flow rate work conducted by BP engineers and scientists.  BP cannot strategically show its hand, whether for public relations or litigation purposes, and then seek to hide the underlying materials even if BP contends that those materials were prepared in anticipation of litigation.  *See In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 306-07 (6th Cir. 2002) ("Even more than attorney-client privilege waiver, waiver of the protections afforded by the work product doctrine is a tactical litigation decision.  Attorney and client both know the material in question was prepared in anticipation of litigation; the subsequent decision on whether or not to 'show your hand' is quintessential litigation strategy.  Like attorney-client privilege, there is no reason to transform the work product doctrine into another 'brush on the attorney's palette,' used as a sword rather than a shield"). [25]

It is also worth noting that in the days leading up to submission of BP's Flow Comment, BP Flow Engineer Trevor Hill, under direction from BP in-house and outside counsel, inquired directly to Sandia National Laboratories scientist Arthur Ratzel regarding issues explicitly raised in BP's comment:

May I ask if you have now seen inside the bottom of the Horizon BOP stack?  I am interested in knowing what you found and also whether your are conducting

---

[24] *See* Attachment O, BP-HZN-2179MDL06149010 (July-August Email Correspondence between Trevor Hill and Steve Shaw).

[25] To be clear, the United States herein does not contend a general waiver for all of BP's quantification-related documents, *e.g.*, we are not currently contending that BP has waived privilege on expert work performed after BP's Flow Comment was released.  Rather, we contend that BP has waived privilege for the work underlying these specific submissions to the United States.

any experimental investigation of the two phase and K factor uncertainties in the July 15 capping stack tests.[26]

Also in October 2010, Mr. Hill was engaging in technical discussions with Dr. Timothy Crone of Columbia University (whom BP sought to depose as an individual and 30(b)(6) witness) regarding Mr. Crone's flow rate research, again orchestrated by counsel.[27]

Likewise, BP has waived any privilege or protection over documents and communications related to a memo prepared by BP executive David Rainey titled "Mississippi Canyon #252 Flow Rate Calculations" and submitted to Admiral Thad Allen, USCG (Ret.) and Admiral Mary Landry, USCG (Ret.) on May 19, 2010.[28]  Rainey testified that he prepared the memo in response to a request from BP counsel and that BP counsel reviewed and edited the memo, and that the memo was "a summary of a lot of work [he] was aware of that was going on around flow rate and worst case discharge potential."[29]   In addition to comments from BP attorneys, BP Chief Operating Officer Doug Suttles also contributed to the memo.[30]  BP demonstrated that it had no intent to keep the work confidential and has waived any protection for the work, calculations, communications, estimates, etc. that contributed to or related to preparation of Rainey's memo when it shared the flow rate calculations with the United States. Accordingly, to the extent BP is claiming attorney-client privilege or work product protection over such documents and communications, BP's claims must fail.

### 6.  The United States *In Camera* List

As the Court is aware, BP bristled at the United States 8,271 privilege challenges, but as a result of those challenges, *less than half* of the documents challenged by the United States remain on BP's Phase 2 privilege logs.  BP validated the United States' challenges by releasing 2,480 previously privileged documents, and changing the privilege determination from "Priv Withhold" to "Priv Redact," or editing the redaction for 40 other documents (over 30% of the documents challenged by the United States).[31]

The United States' list of documents for in camera review is included as Attachment A. This list is a sampling as per the Court's order and is not intended to limit in any way the scope

---

[26] *See* Attachment J, October e-mail correspondence between Trevor Hill and Arthur Ratzel and between Trevor Hill and BP counsel (BP-HZN-2179MDL07110896-898, BP-HZN-2179MDL07204190-191, BP-HZN-2179MDL07164626-629).

[27] *See* Attachment K, October e-mail correspondence between Trevor Hill and Timothy Crone and between Trevor Hill and BP counsel (BP-HZN-2179MDL07110896-898, BP-HZN-2179MDL07204190-192, BP-HZN-2179MDL07164626-629).  BP informed the United States on Friday June 15, 2012 that it does not intend to serve a subpoena on Columbia University "at this time."

[28] *See* Attachment L, May 19, 2010 Submission by Doug Suttles to Adm. Mary Landry and Adm. Thad Allen, Deposition Exh. 3218.

[29] *See* Attachment M, Deposition of David Rainey, June 2, 2011 (181:25 – 185:15).

[30] *See id.* (183:8-10).

[31] BP removed another 285 documents from its privilege log on May 20, 2011, the day before the United States' privilege challenges were due.  BP also reclassified 1,434 documents as relating to "Other Phases" despite the fact that most of them appeared on BP's Good Faith Quantification list, and labeled over 100 documents prepared by Trevor Hill and Farah Saidi (BP Flow Engineers whom were members of BP's Flow Assessment Team), between July and October 2010 as "Non-Responsive."  The United States understands that challenges to those determinations are on an alternate schedule and reserves its right to challenge them.

of the United States' challenges to BP's privilege claims.  The United States expects that BP will extrapolate the Court's ruling on these challenges to the remainder of the challenged documents. We appreciate the Court's willingness to undertake this review.

### 7.  Conclusion

BP performed secret calculations of flow rate.  It trumpeted the results, but has steadfastly refused to provide the details of how its estimates were calculated. Meanwhile, at BP's urging, every other entity that made flow estimates – party and non-party alike – has produced the basis of those estimates.  BP should not be allowed to live by this double standard.  The estimates are critical to this phase of the case.  Either BP's secret calculations will confirm what the company said publicly during the spill – or they will not.  If BP's internal calculations showed higher flow rates than what the company told the public and the United States in the midst of an environmental disaster, the parties have a right to know.  The public has a right to know.

Respectfully submitted,

/s/ Scott M. Cernich
Scott M. Cernich

cc:     Liaison & Coordinating Counsel
        Robert Gasaway

# Attachment A

# Enclosure 4

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:                    (202) 879-5000                    Facsimile:
(202) 879-5175                                                                (202) 879-5200
robert.gasaway@kirkland.com            www.kirkland.com

May 21, 2012

**By Electronic Mail**

Sarah D. Himmelhoch
Environment & Natural Resources Division
U.S. Department of Justice
RFK Main Building
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530

Re:    BP's Schedule I Challenges to the United States' Privilege Logs

Dear Sarah:

Pursuant to the Court's May 11 Order (Dkt. No. 6510), BP brings the following Schedule I challenges to the United States' privilege logs.

As you will see, we have described groups of privilege log entries in some cases, and in those cases we have not yet identified every last entry that falls within the challenged category. Instead, we have listed entries that we believe fairly represent the larger group of entries, subject to further meet-and-confer discussions and briefing before the Court.  We reserve the right during the "REV" process — as defined in the May 11 Order — to apply any agreement or other resolution regarding specific entries or categories of entries described below to additional entries appearing in the United States' privilege logs.

BP's challenge lists are located in the three attached spreadsheets, with tabs organizing the entries either by the collection of entries from which the listed challenges arise or by the type of challenge brought.

- BP Challenges to DPP Entries on US Privilege Logs,
- BP Challenges to AC-WP Entries on US Privilege Logs, and
- BP Technical Challenges to US Privilege Logs.

## I.    Deliberative Process Privilege

On May 15, as part of the "13,800 Entries" challenge process, the United States reported that it would declassify and produce 6,403 documents (98 percent) of the approximately 6,522

Chicago      Hong Kong      London      Los Angeles      Munich      New York      Palo Alto      San Francisco      Shanghai

# KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
May 21, 2012
Page 2


documents that the United States determined were relevant to Phase 2 and withheld solely under a claim of the deliberative process privilege.

The principles inherent in the United States' decision to withdraw its privilege claims over these 6,403 documents — in combination with the Court's Order requiring declarations for any remaining assertions — apply equally to the thousands of other deliberative process privilege entries on its privilege logs.

The United States' broad reconsideration of its deliberative process privilege assertions, together with the declarations submitted to justify the remaining assertions of the deliberative process privilege, further underscore that "[t]he purpose of this procedural requirement is to insure that subordinate officials do not lightly or mistakenly invoke the government's privilege in circumstances not warranting its application." *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 882 (5th Cir. 1981).

Now, the United States must comply with this procedural requirement by submitting declarations for all remaining assertions of the deliberative process privilege.

## A.      List of Quantification Entries

On May 11, 2012, the United States (like BP) provided its good-faith identification of all Quantification entries on its privilege logs.  The United States' list contains 5,215 newly identified entries related to Quantification — entries that were not among the "13,800 Entries" referred to in the Court's May 11, 2012, Order.  Of these newly identified entries, 5,027 entries assert a claim of the deliberative process privilege, and 4,828 solely assert the deliberative process privilege.  BP challenges all of these 5,027 Quantification entries withheld under a claim of the deliberative process privilege.

The Court clearly contemplated that, by now, the United States should have already identified all Quantification documents over which it had asserted the deliberative process privilege. *See* April 12, 2012 Order ("The U.S. reviewed the spreadsheet and confirmed that it contains *all of the Quantification documents* over which it has asserted the deliberative process privilege." (Dkt. No. 6228, at 1-2) (emphasis added)).  Nonetheless, we now know that the United States' deliberative process privilege extrapolation was underinclusive by some 5,027 documents.  In other words, by May 15, the United States should have provided (but failed to provide) either the document or a declaration for these 5,027 later-identified Quantification deliberative process privilege entries.  To correct this omission from its May 15 submission, the United States should provide the documents or declarations for these 5,027 documents by May 31, 2012.

# KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
May 21, 2012
Page 3

**B.      Remaining Phase 2 and Later-Phase Entries on the United States'
         Consolidated Log**

On April 19, 2012, BP received the United States' consolidated privilege log containing all prior entries, with revisions, from the United States' privilege logs up to that date.  From this list, we removed the "13,800 Entries" and the entries provided with the United States' Quantification list.  The entries that remain on the resulting consolidated log include entries related to Phase 1 issues, Phase 2 issues, and issues relevant to later trial phases.

BP challenges the United States' assertion of deliberative process privilege over all of these entries with the exception of Phase 1 entries for which such challenges would be untimely.

We note in this connection that the United States reviewed both Quantification and Source Control entries during its deliberative process privilege review of the "13,800 Entries." Accordingly, the United States should now conduct a similar deliberative process privilege review focused on the additional Source Control and other non-Phase 1 entries that are not among the "13,800 Entries" — just as it should continue its review for the newly identified 5,027 deliberative process Quantification entries.

Significantly, the United States recently removed from the "13,800 Entries" many entries with similar descriptions to those remaining on its consolidated logs.  For example, on May 15, the United States released entries with the description "Email re Draft BP Directive."  *See, e.g.*, DSE003-022332, IES009-004587, and SNL095-019005.  Hence, entries remaining on the United States' consolidated logs bearing the same or similar description are likely candidates for future revision.  *See, e.g.*, HCG160-005577, DSE001-005450, DSE001-006990.

The United States likewise released from the "13,800 Entries" documents related to specific Source Control procedures.  For example, on May 15, the United States released many documents related to Top Kill.  *See, e.g.*, IES009-014283 ("Email re Top Kill Decision"), IGS040-16007 ("Email re Top Kill Rollout"), IGS678-017415 ("Email re Summary of Top Kill decision and Plan B").  Hence, documents that remain on the United States' consolidated logs bearing this same or similar description would appear to be likely candidates for production. *See, e.g.*, HCG331-002573 ("Email re Top Kill"), N1A014-000631 ("Email re Discussion on Top Kill and Other Options to Stop Spill"), HCG205-016822 ("Email re Top Kill Rollout").

Additionally, the United States' penalty case is based, in part, on criticizing BP's actions in connection with the United States' own combined efforts with BP and other parties to cap and contain the oil being released from the Macondo Well.  Yet the United States has withheld

# KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
May 21, 2012
Page 4

documents that go to the heart of factual questions about the United States' own actions during the response and its contemporaneous views of BP's response efforts.

Against this backdrop, BP's previous explanation for why discovery of withheld materials related to Quantification is appropriate, applies with equal force to Source Control and other documents over which the United States continues to assert a deliberative process privilege:

> The role of the United States as plaintiff in this case is a highly significant factor favoring disclosure of the challenged documents. This is not the usual deliberative process case where a party challenges a government action or seeks documents under the Freedom of Information Act, and the United States tries to prevent its decisional process from being swept into the prying eyes of the public under circumstances it played no role in bringing about.

> Here, quite to the contrary, it is the United States that has brought this case, seeking large monetary penalties against BP.  In cases such as this one where the United States plays such an active role "courts have severely restricted the use of the privilege by government agencies that are seeking affirmative judicial relief." *United States v. Ernstoff*, 183 F.R.D. 148, 153 (D.N.J. 1998).  That is because "'[w]hen the government seeks affirmative relief, it is fundamentally unfair to allow it to evade discovery of materials that a private plaintiff would have to turn over.'" *Id*. (quoting *FDIC v. Hatziyannis*, 180 F.R.D. 292, 293 (D. Md. 1998)); *see also EEOC v. California Psychiatric Transitions*, 258 F.R.D. 391, 398 (E.D. Cal. 2009) (same); *EEOC v. Citizens Bank & Trust Co.*, 117 F.R.D. 366 (D. Md. 1987) (same); *McMillan v. United States (In re APCO Liquidating Trust)*, 420 B.R. 648, 654-655 (Bankr. M.D. La. 2009) (same); *EEOC v. Greater Metroplex Interiors, Inc.*, No. 3-08-CV-1362-P, 2009 WL 412934 at *2 (N.D. Tex. Feb. 17, 2009) (Kaplan, M.J.) (same).

> (BP Br. on DPP (Dkt. No. 6148), at 11-12.)

Because the United States declined to add further identification steps to the privilege challenge process, BP has not been able to locate all entries that represent deliberative process privilege entries other than Phase 1 entries for which such challenges would be untimely. Nonetheless, BP challenges all entries falling into these categories as they appear on the United States' consolidated logs.

# KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
May 21, 2012
Page 5


### C.      2,458 Documents Withheld on May 15

As part of its May 15 submission, the United States also claimed that it continued to assert the deliberative process privilege over 2,458 documents that relate to later phases of the litigation.  But for these entries, the United States did not provide any corresponding declarations.

The plain text of the April 12, 2012 Order required the United States to review the list provided by BP and "submit declarations for all documents for which it maintains its claim of privilege." (Dkt. No. 6228, at 2.)  These declarations were due on May 15.

The United States should provide declarations to justify withholding these 2,458 documents, or it should produce all of these documents by May 31, 2012.

### D.      "Zantaz" Log

As part of Schedule I, the Court included "any new Phase One entries on privilege logs served by any party on April 20, 2012 or thereafter."  (Dkt. No. 6510 at n. 1.)  Because the United States served the privilege log that corresponds to the Zantaz production on April 31, 2012, this log of mostly Phase 1 entries is subject to Schedule 1.

This Zantaz log contains 3,472 entries asserting a claim of the deliberative process privilege.  BP recognizes that this largely pre-incident collection of privilege log entries contains some material that can be withheld under legitimate claims of privilege, such as draft regulations.

This very large number of deliberative process privilege entries on this log, combined with our experience with the United States' deliberative process privilege assertions in other contexts, likely reflects a significant over-application of this privilege.

BP therefore challenges all of the entries listed on the United States' Zantaz log that are not related to (1) draft regulations, (2) budgetary matters, or (3) responses to Congressional inquiries.

## II.      Attorney-Client Privilege and Work Product Doctrine

BP has located entries that appear facially insufficient to assess the validity of either attorney-client privilege or work-product protection.  For example, one entry asserts work-product protection over a communication with Steve Wereley of Purdue University, with the description "Email re In light of Your popularity…."  *See* N8P004-000180.  Another entry

# KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
May 21, 2012
Page 6

claims the document described as "Email re Heads Up: Oil Flow Rate QUESTIONS" is protected by attorney-client privilege and lists the attorney as "EPA." *See* EEQ035-000151.

BP's second enclosed spreadsheet entitled *BP Challenges to AC-WP Entries on US Privilege Logs* lists entries BP finds may be facially insufficient to assess these claims of privilege. This spreadsheet contains worksheets corresponding to the group of entries from which the challenges arise.

## III.   Further Technical Issues with Entries

As with any large document production, some entries on the United States' privilege logs contain apparent errors. The errors described below appear to be technical, not substantive, but in order for BP and other parties to assess the validity of the privilege claims to which they relate, the United States should address the issues described below irrespective of the Phase to which the underlying document is relevant.

In order to aid this corrective process, these errors have been listed on BP's third spreadsheet, *BP Technical Challenges to US Privilege Logs*, which is divided into three tabs corresponding to the following three categories.

***Entries involving BP personnel and other non-contractor third parties.*** The United States has included on its privilege logs some entries involving BP personnel and some entries involving third parties that very likely were not United States contractors, for example Justin Gillis of the *New York Times*.

***Entries with no privilege claimed or an unidentified privilege***. The United States has included some entries on its logs where it has not listed the privilege claimed or it has used an abbreviation for a privilege it has not previously identified to BP. *See* Attachment 1, S. Himmelhoch Email to R. Gasaway (Nov. 14, 2011).

***Entries with other blanks***. We have located several entries that lack one or more of the following — an author, a recipient, or a basis for withholding. These entries appear to be incomplete and should now be enhanced so that all parties can evaluate the validity of the United States' decision to withhold these documents.

## KIRKLAND & ELLIS LLP

Sarah D. Himmelhoch, Esq.
May 21, 2012
Page 7

\*     \*     \*

BP looks forward to meeting and conferring with the United States to address BP's challenges by Monday, May 28, 2012, and no later than the briefing deadline of June 4, 2012.

Sincerely,

Robert R. Gasaway

Attachment and Spreadsheets

cc (via electronic mail):

R. Michael Underhill
Steven O'Rourke
Scott M. Cernich
A. Nathaniel Chakeres
Bethany Engel
Tom Benson
Plaintiffs' Liaison Counsel
Defense Liaison Counsel (dsc2179@liskow.com)

# Attachment 1

**From:**             Gasaway, Robert R.
**Subject:**       FW: Deepwater Horizon:  Response to Veteran's Day Missive

---

**From:** Himmelhoch, Sarah (ENRD) [mailto:Sarah.Himmelhoch@usdoj.gov]
**Sent:** Monday, November 14, 2011 11:13 AM
**To:** Gasaway, Robert R.
**Cc:** Nomellini, Mark J.; Eisert, Joseph A.; Pixton, Allan; Mariani, Tom (ENRD); Mike.Underhill@usdoj.gov; O'Rourke, Steve (ENRD); Mike.Underhill@usdoj.gov; Frost, Peter (CIV); Flynn, Stephen (CIV)
**Subject:** Deepwater Horizon: Response to Veteran's Day Missive

ROB –

I write in response to your latest letter regarding Phase I discovery, raising new issues never before identified by BP to the United States.  I will try to respond as thoroughly as possible given BP's deadline of tomorrow for Motions to Compel relating to Phase I.

**Privilege Logs**  -- The United States will be supplementing its privilege logs on November 30, 2011 as part of its compliance with Docket No. 4364.  I believe these supplements will provide all the information necessary to justify the privilege (or result in the production of the documents and removal of the documents from the privilege log).  Accordingly, the United States will agree to extend BP'! s deadline for motions to compel with respect to the November 30, 2011 privilege log until December 30, 2011.  In the meantime, here is an explanation of the privilege codes you identified:

DP – Deliberative Process Privilege
LE – Law Enforcement Privilege
JT – Joint Investigation Team materials protected by § 6308
PA, PII – Privacy Act/Personally Identifying Information (note these entries will be removed based upon BP's advice that redactions necessary to comply with the Privacy Act need not be logged)
NR – Not relevant (note these documents should not have been on the logs, as they are not relevant or responsive to the discovery requests)

Interrogatory Responses  -- BP raises for the first time its contention that the United States' interrogatory responses are insufficient.

Interrogatory 2 – Interrogatory 2 seeks the identity of "every United States officer, employee or other person associated with the United States . . . who participated in any review, inspection, evaluation, approval, or disapproval of any submission relating to the Transocean's Deepwater Horizon rig."  BP contends that the United States' response to Interrogatory 2 is insufficient because it does not identify the responsive documents.  Such a claim is inaccurate. The United States has identified for BP the responses to document requests which contain the responsive information and has provided BP with the very search terms used to obtain those documents.  BP is in the! same position as the United States to conduct those searches and identify the responsive documents.  Moreover, BP conducted a Rule 30(b)(6) deposition seeking "Participation in the inspection, audit, evaluation of, or any rig-visits on Transocean's *Deepwater Horizon* rig, including the blow-out preventer on the *Deepwater Horizon* ."  BP has conducted that Rule 30(b)(6) and any deficiencies in the United States' interrogatory responses on the same topic could and should have been addressed before or during that deposition.  At this time, the United States relies upon its responses to this interrogatory.

Interrogatory 21 – BP's interrogatory on this request is very broad – seeking the identification of "each person who has or may have knowledge or information relating to the al! legations in the United States' Complaint." In response to such a broad discovery request, it is both proportional and appropriate for the United States to provide a broad response to BP that identifies the categories of documents that contain information about people who "may have knowledge" of "information relating to" the allegations in the United States' Complaint. The United States relies upon its response to this Interrogatory.

Interrogatories 6-8 – You are correct that these responses contain a typographical error. The cross-reference in response to these interrogatories is to our response to Interrogatory 5.

Interrogatories 3, 4, and 16 – I direct you to the United States' Third Response to BP's First Set of Discovery Requests ser ved June 20, 2011, Lexis Nexi No. 38249297, which contains a response to each of these interrogatories.

**Custodians** -- BP accuses the United States of continuing "metadata issues" related to individuals who are "unidentifiable custodians."

I fail to believe that some of these individuals are "unidentifiable." For instance, among those listed on the "unidentified custodians" are Rory R. Davis, Alan Huffman, Richard Heenan, and Glen Benge, experts designated to testify on behalf of the United States. Given that the United States was required to produce his "considered" and "relied" upon documents by dates certain, it is far from inappropriate for these names to appear as a custodian on files produced by the United State! s. Similarly, Greg Garrison has been identified to BP and even deposed by the parties.

Further, some of the individuals on your list are individuals for whom custodial productions were made as part of response to the Rule 30(b)(6) notices served on the United States. These individuals included Steve Bertone, Miles Randall Ezell, and Christopher Ryan Haire. Another one of the "unidentified custodians" is Steve Sutton, one of the United States' Rule 30(b)(6) designees, and therefore an individual known to BP.

In addition, some of the individuals are simply people who were not identified on our custodian list but when the National Laboratories conducted their inquiries and searches were identified as custodians of responsive information. These individuals include Charlie Brandt, Terry Jor! dan, David Keese, George Richards, William Rogers, Mehrdad Shahnam, Erik Shuster, Katrina Waters. Similarly, several of the DOI custodians are individuals identified as having responsive information after the custodian list was finalized.

With respect to the remaining custodians, we have reviewed all custodians contained in the corrected load files being prepared pursuant to Docket No. 4364 and taken steps to ensure that the individuals identified are in fact actual custodians and not collecting agents. We ask BP to wait until the corrected load files have been produced in accordance with the agreed upon schedule, review that list of custodians, and determine if there are truly individuals whose identity is unfamiliar. If you identify any such individuals, we can discuss those individuals at that time.

**! Autonomy-Zantaz Archive** -- BP demands that the United States begin "immediately collecting from the Zantaz Archive" for all already agreed-upon custodians. The simple numbers may or may not be accurate and are not the end of the story in any case. The question is whether the marginal utility of these "additional documents" is significant enough to warrant the expense and delay associated with production of these emails. Moreover, we note that de-duplication between Zantaz and Outlook has proven difficult for us because of anomalies in the date fields and, therefore, we cannot rely on the numbers you cite without additional information. For all these reasons, we decline to do commence searches in the Zantaz archive without significant additional information. We request that BP provide any report it received from its consultant and all communications with its consultant so that we can determine the accuracy of the analysis. Further, we ask that the consultant provide the United States with a copy of .psts and Zantaz folders containing the responsive emails LESS privilege hits, so that we can be sure the parties are all speaking about the same categories of documents. We will agr! ee to extend BP's deadline for a motion to compel with respect to this issue until December 15, 2011 to allow the parties time to discuss this issue.

Sarah D. Himmelhoch
Senior Litigation Counsel for E-Discovery
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
202-514-0180 (phone)