

**SUTHERLAND**

SUTHERLAND ASBILL & BRENNAN LLP
First City Tower
1001 Fannin, Suite 3700
Houston, TX 77002-6760
713.470.6100  Fax 713.654.1301
www.sutherland.com

CARTER L. WILLIAMS
DIRECT LINE: 713.470.6126
E-mail: carter.williams@sutherland.com

August 2, 2012

VIA EMAIL
The Honorable Sally Shushan
Mr. Michael O'Keefe
U.S. District Court
500 Poydras Street
New Orleans, LA  70130

Re:   *In re:*  Deepwater Horizon, MDL No. 2179

Dear Judge Shushan and Mike:

In advance of tomorrow's status conference, I write in response to the PSC's August 1, 2012 letter. Instead of addressing each of the issues raised in Transocean's July 20 response to the PSC's July 11 letter, the PSC letter presents a "representative analysis" of ten documents selected solely by the PSC and accompanied by the PSC's self-serving excerpts of those documents taken out of context. A truly representative sample of the documents in dispute would have included several that irrefutably add no new substantive information to the parties' understanding of the issues in this litigation, such as the following:

- TRN-MDL-03999531, a September 28, 2009 email from Larry McMahan to his assistant, Reyna Allen, in which Mr. McMahan requests only that Ms. Allen print a September 28, 2009 email from Steven Newman. Mr. Newman's email was produced in *seven email chains* on September 20, 2011, 10 days prior to Mr. Newman's September 30, 2011 deposition.

- TRN-MDL-04335057, an email discussion between Nick Jackson of Lloyd's and Adrian Rose of Transocean regarding the logistics of Mr. Jackson's travel to Houston.

- TRN-MDL-06079201, a July 29, 2008 email in which Mr. McMahan forwards a copy of Transocean's Health and Safety Manual to new hire David Buck, which has no separate relevance to MDL 2179 other than its attachment, Transocean's 428-page Health and Safety Policies and Procedures Manual (revised January 14, 2008), which was previously produced on September 2, 2011 (beginning bates TRN-MDL-02409220) and September 20, 2011 (beginning bates TRN-MDL-02736412).[1]

---

[1] The 470-page January 8, 2009 revision of this manual was produced on April 15, 2011 (beginning bates TRN-MDL-02912040).

- TRN-MDL-08048841, TRN-MDL-07822891, and TRN-MDL-07230768, which are email discussions regarding the BOP configurations of the *Development Driller II*, *Development Driller III*, and *Discoverer Enterprise* (rigs involved in post-incident Macondo source control efforts), and undeniably Phase II documents.

- TRN-MDL-05940661, James Kent's working copy of a spreadsheet tracking action items related to the 2008 *Deepwater Horizon* Marine Assurance Audit, an exact duplicate of which was produced on June 10, 2011, with beginning bates TRN-MDL-01007265.

In addition to failing to include any of the foregoing in its "representative analysis," the PSC has failed to demonstrate good cause to take additional depositions or add documents to its trial exhibit list as explained further below:

**Tabs 1, 2, 3, 7, 8, 9, and 10.** The allegedly "late produced" documents in Tabs 1, 2, 3, 7, 8, 9, and 10 are not responsive to or within the "ambit of" any PSC document request, no matter how broadly read. Although the PSC now appears to wish it had served a request for all documents related to Transocean's safety culture, it did not. The PSC must live with the requests it served, not those it wishes it had served.[2] The PSC has also misconstrued the substance of or taken portions of these documents out of context in an attempt to show relevance and/or admissibility.

- **Tab 1** (TRN-MDL-06099840 with attachment TRN-MDL-06099850). The PSC misconstrues the substance of these documents by quoting Bob Long as "writ[ing]" "People do not just die on our rigs, we kill them" in the PowerPoint of the February 11, 2008 E&TS Monthly HSE Meeting. Though these words do appear near the bottom of the page at TRN-MDL-06099845, there are no quotation marks and no indication, other than a prior bullet point stating "Bob Long's message," that Bob Long ever wrote or said these words. If he did, he apparently also praised Transocean for having a great year in 2007, encouraged the use of time outs for safety, and called on his colleagues to stay "pumped up" about safety. However, none of this multiple hearsay "reflects an acute recognition of the lack of safety onboard Transocean's rigs," "provides valuable and instructive insight into the depth of understanding of the serious organic and recurring systemic safety and operational problems endemic at Transocean," or "evidences the fact that...serious problems were recognized at the highest levels of management" as the PSC asserts.

- **Tab 2** (TRN-MDL-05880590 with attachment TRN-MDL-05880591). Once again, the PSC takes multiple hearsay out of context in an attempt to conjure up a process safety issue. According to the PSC, Bob Long's apparent statement that he "may not

---

[2] There is no doubt that the PSC knew how to write such a request as it served several on BP.

live long enough to see incident free operations" "illustrates concrete issues within Transocean's safety culture leading up to the spill." Taken in context, the slide from the January 14, 2008 AMU Safety Vision presentation, calls for Transocean to "speed up [its] progress toward [its] safety vision" of "operations conducted in an incident free workplace – all the time, everywhere" and sets a 2008 goal of achieving "the next safety breakthrough." There is nothing else on the page, let alone any "concrete issues" within Transocean's safety culture. Moreover, as explained in our July 20 letter, the entire presentation relates to a meeting to review Transocean's 2007 occupational safety performance (e.g., dropped objects and hand and finger injuries). It does not relate to process safety or well control.

- **Tab 3** (TRN-MDL-06416911-06416112). The PSC draws a number of conclusions not supported by the face of the May 31, 2008 email discussion between Jimmy Moore and Chris Knight, such as that it was "apparent by the attitude of Moore and…evidenced by the blowout," that "the audit requested by Chris Knight was likely not taken seriously in order to correct employee's understandings of HSE policies and programs onboard the Deepwater Horizon" and that "Transocean management personnel…effectively brush[ed] off concerns regarding *fundamental* safety issues on the Deepwater Horizon and other drilling assets in the Transocean fleet of vessels." As the PSC is aware (as is obvious from, *inter alia*, the dispute about the documents in Tab 6), Transocean commissioned a company- and division-wide review of its safety management system by Lloyd's Register. That review included rig-by-rig audits of the understanding of Transocean's HSE policies and procedures. A March 14, 2010 presentation from Lloyd's (TREX-00932 on the PSC's exhibit list) confirms that *Deepwater Horizon* personnel understood Transocean's HSE policies. Specifically, Lloyds identified "use of THINK plan" as a strength, and explained "[b]oth the THINK and START processes were generally perceived as valuable tools to manage safety on the rig. There was an excellent understanding of the THINK Planning hierarchy – the best we've seen."

- **Tab 7** (TRN-MDL-05762567). The PSC argues that this September 15, 2009 email exchange between Steven Newman and Larry McMahan "illustrates issues with Transocean's operational and safety culture at the top of the food chain," and "gives insight into Transocean's internal issues pre-spill." To the contrary, it reflects Mr. McMahan's passion for safety and Transocean's leadership's commitment to safe operations and constant improvement. Regardless, it is not necessary for the PSC to add it to its trial exhibit list. Mr. McMahan is a Transocean will call witness and the PSC may use this document for impeachment if necessary.

- **Tab 8** (TRN-MDL-06570746 with attachment 06570798-06570813). The PSC argues that this email and attached PowerPoint, related to subsea downtime, are "highly relevant to issues regarding process safety, systemic safety failings, and claims of gross negligence and punitive damages" and present "*critical* information relating to specific causes and observations made by key Transocean personnel

regarding Worldwide Subsea Downtime within Transocean. There is one BOP at issue in this case and we see no reason to waste the Court's time at trial with documents that discuss worldwide reduction of subsea downtime and precede the Macondo incident by nearly five years.

- **Tab 9** (TRN-MDL-05467036). The PSC asserts that the email exchange between Shell and Transocean regarding *Arctic 1* operations in Brazil is a "very critical process safety document given the fact that a shut-down was forced to occur due to serious issues on the *Artic 1*." As noted above, the PSC did not serve Transocean a "safety culture" request and should not be granted a redo. Moreover, to the extent that the PSC seeks to use this document as a "prior bad act," the document should be excluded under Judge Barbier's ruling regarding Texas City—Transocean's operations on another class of rig in another part of the world in a different environment for a different operator are at least as unrelated to Macondo as Grangemouth, Texas City, and Prudhoe Bay.

- **Tab 10** (TRN-MDL-05877809). The PSC argues that this June 19, 2009 email discussion between Arnaud Bobillier, Jimmy Moore and Walter Cabucio (cc: Rob Saltiel and Adrian Rose) regarding Transocean's process for distributing lessons learned "illustrates the issues endemic to Transocean's fractured safety culture, systemic and process safety deficiencies." Whatever scant relevance this document has quickly fades in comparison to the more relevant issue with respect to Transocean's process safety culture – whether the *Deepwater Horizon* crew understood the HSE policies and procedures. Fortunately, TREX-00932 provides a clear answer, "There was an excellent understanding of the THINK Planning hierarchy – the best we've seen."

**Tabs 4 and 6.** The allegedly "late produced" documents in Tabs 4 and 6 present no new substantive information and the PSC has not demonstrated good cause to add them to its exhibit list.

- **Tab 4** (TRN-MDL-04937152). The PSC acknowledges that the portion of this email discussion involving personnel in the *Deepwater Horizon*'s reporting chain—Bill Sannan (then-NAM division manager) and Paul Johnson (then-Rig Manager)—was produced more than a year ago. Nevertheless, the PSC complains that it did not initially receive what amounts to email banter from personnel unrelated to the rig, which the PSC apparently seeks to introduce (notwithstanding insurmountable hearsay issues) to prove (1) "it is common practice for Transocean employees to pass blame onto subcontractors and others when major issues occur on Transocean rigs" and (2) the existence of "systemic process safety failures." This email chain is not admissible for the purpose that the PSC seeks to use it and has no place on a trial exhibit list.

- **Tab 6** (Lloyd's documents). With respect to the email chains requesting comments on drafts of the announcement of the Lloyd's review (beginning bates TRN-MDL-

04335663, TRN-MDL-04335669, TRN-MDL-04335704, TRN-MDL-04335711) and the attached draft announcements (beginning bates TRN-MDL-04335665, TRN-MDL-04335708, TRN-MDL-04335713, TRN-MDL-04335670), the PSC argument appears to rest on two issues – (1) Bob Long did not prefer the phrase "exhaustive review" to describe Lloyd's work and (2) Adrian Rose may have preferred "100 days" to "4 months" to describe the length of time in which four fatalities had occurred. The final announcement, which was initially produced *twice* on September 1, 2011 (with beginning bates TRN-MDL-02361427 and TRN-MDL-02380852), includes the phrases "thoroughly review" and "less than four months," respectively. We struggle to see the difference or the relevance.

**Tab 5.** The allegedly "late produced" documents in Tab 5 (TRN-MDL-05757944, TRN-MDL-05758177) – Larry McMahan's post-incident notebooks – are in fact timely produced *Phase II* documents notwithstanding the PSC's descriptions, which invite a serious misinterpretation. In particular, the PSC erroneously concludes that the following statements convey that Mr. McMahan was aware, before the incident, of the results of the negative pressure tests, and BP's decisions not to run a cement bond log and to use an LCM pill as spacer: "on TRN-MDL-05757956 Mr. McMahan makes notations regarding the two pressure tests that took place on the *Deepwater Horizon* and also writes that there was no plan for Cement Bond Log Tests"; and "on TRN-MDL-05758205…Mr. McMahan makes a notation to "investigate [the] 1000 BBL LCM pill that was pumped during riser sweep…so that it could be swept overboard legally as opposed to shipping it back to shore $. The LCM pill could not legally be pumped directly overboard. Weight—viscosity?" Fortunately, even a cursory review of the cited pages clears up any misinterpretation – Mr. McMahan's notes reflect his review of Congressional hearings in the aftermath of the incident and his own thoughts of issues worth investigating, not any pre-incident knowledge – the top of TRN-MDL-05757956 contains the note "C-SPAN 1st Senate Hearing, along with the names of U.S. Senators Jeff Bingaman and Lisa Murkowski. The top right corner of TRN-MDL-05758205 contains the names of Steven Bertone and Wyman Wheeler, with the notation that Wheeler is "unable to testify."

Respectfully submitted,

Carter L. Williams

cc: Duke Williams, Esq.
Anthony Irpino, Esq.
MDL 2179 Liaison Counsel
Federal & State Interests Coordinators
Brad Brian, Esq.
Rachel Clingman, Esq.
Allen Katz, Esq.
Kerry Miller, Esq.
Steve Roberts, Esq.