# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C.  20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

August 27, 2012

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Room B345
500 Poydras Street
New Orleans, LA  70130

Re:     MDL 2179 — BP's Response to Requests for Reconsideration of Phase 2 Time
Allocations

Dear Judge Shushan:

BP provides this letter in response to the several requests for reconsideration, amendment, or clarification of the Phase 2 Time Allocations for Rule 30(b)(6) deponents ordered by this Court on August 15, 2012. [Rec. doc., 7122].

These pending requests include:  (i) the reconsideration request submitted by the PSC and the States on August 16, 2012; (ii) Transocean's reconsideration request of August 22, 2012; (iii) Halliburton's similar request submitted August 22, 2012; and (iv) the United States' request for amendment or clarification of the Court's August 15 Order submitted on August 22, 2012. The multiple reconsideration requests oftentimes spotlight, unintentionally, the wisdom of the Court's original approach to Time Allocations.  As further explained below, the Court's August 15 Order should be re-affirmed.

**Reconsideration Request by PSC and States**

BP strongly opposes the request for increased time allotments with the United States' witnesses made by the PSC, on behalf of itself and the States.

The PSC contends that its time should be increased, while BP's should be decreased, because BP's "primary purpose" in these depositions is to develop a "trial record," apparently in contrast to "discovery."  Moreover, the principal reason that the PSC and States suggest that the Court should now *double* their allocated time for Source Control and Hybrid witnesses is because neither the PSC — nor the States — were involved in unspecified "meetings and

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 27, 2012
Page 2

discussions" relating to the spill response.   This contention is based on erroneous factual premises and is otherwise misleading.

*First*, although BP did work collaboratively with the United States throughout the spill, it does not follow that BP has knowledge of the United States' *internal* discussions resulting in directions to BP and other parties regarding various response efforts, the evaluation of the success or failure of those efforts, and the course of events leading to the ultimate sealing of the well.  For this very reason, BP and the United States have engaged in prolonged discussions (with the aid of the Court) on the scope and completeness of the United States' responses to written discovery requests relating to its actions during the spill response.

Nor, as the PSC suggests, is it somehow an improper use of deposition time to confirm a party's understanding of events by eliciting sworn testimony of corporate representative witnesses — thereby reducing the likelihood of contradictory evidence being presented at trial. Indeed, the PSC admits that it has "the same interest in developing the trial record" as BP.

*Second*, to the extent that the PSC contends that a party with access to the United States' actions related to Source Control issues requires less deposition time, the same is true of the States.  Organization charts from the Unified Area Command confirm the States' presence and participation  throughout  the  spill  response.  (*See*  Exhibit  1,  Unified  Area  Command Organizational Chart, at 2).  Alabama and Louisiana each designated representatives who served in the UAC.  The PSC has provided no support for its assertion that the States need twice their allocated deposition time because, despite their prominent overall role, these States did not participate in unspecified "meetings and discussions" held during the response.

Nor has the PSC backed up its assertion that the "States consistently and diligently pressed for Phase 2 source control discovery."  In fact, practically all the most relevant source control document discovery requests were propounded by BP; practically all of the most relevant follow-up to those requests has been undertaken by BP; and literally all 33 Rule 30(b)(6) source control deposition topics served on the United States were framed by BP.  Tellingly, the PSC and States do not say what information they have previously sought from the United States, or describe their apparently unsuccessful efforts to obtain it, or explain how additional deposition time is necessary to secure what they seek.  They instead try to deprive BP of deposition time it needs to follow up its now sixteen-month-long source control discovery effort *vis a vis* the United States.

BP for its part has been diligently pursuing discovery of the United States precisely because BP is the principal target of all the various source control claims being asserted by all the  various  parties  (much  as  BP  disputes  the  merits  of  those  claims  and  wishes  it  were

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 27, 2012
Page 3

otherwise).  Precisely because it is the principal source control target, BP deserves to be given adequate time to explore several points of contention with the United States.

BP will, for example, examine United States witnesses on public statements questioning BP's transparency in the course of the response to the Deepwater Horizon incident and resulting spill.  And BP will examine potential government delays in completing the scientific analyses undertaken to assure an effective shut-in of the Macondo 252 well.  The need to develop the record on these and other issues is all the more important given that certain United States witnesses (as the Court is aware) may not always have preserved relevant documents according to best practices.

*Finally*, the PSC admits that it "has the majority of proof it requires on Phase 2 issues," but curiously suggests that it needs twice as much deposition time as allocated just in case "BP, or any other party, attempts to *alter* the record with, in essence, trial testimony" (emphasis added).  The PSC makes no attempt to explain this vague contention, or why it needs twice as much time as allocated to account for what is clearly a speculative contingency.  Nor is the claim consistent with the PSC's resistance to the effort to narrow disputed issues through the stipulation process or with the March 16, 2012, colloquy between Mr. Barr and the Court, which we have extensively excerpted for the Court's convenience.  (*See* Exhibit 2, Transcript of Working Group Status Conference Proceedings, March 16, 2012, at 11:2-12:17).

In sum, BP's interactions with the United States are far more complex and central to the resolution of Phase 2 issues than those of the PSC, and those interactions clearly warrant the allocation of time ordered by the Court. Were its reconsideration motion granted, the PSC would impair the effective conduct of discovery by BP.  Accordingly, BP asks the Court to reject the PSC's reconsideration request.

### Transocean's Reconsideration Request

Transocean requests that its time to examine quantification witnesses be increased from 30 to 45 minutes, with the time coming out of BP's allocation for US witnesses, and out of the Plaintiffs' time with BP witnesses.  BP objects to the request that its allocated time be decreased for Transocean's benefit.

Transocean contends that it needs additional time "to investigate whether BP and the United States were aware of or should have been aware of flow rate estimates that they knew or should have known exceeded rates at which their chosen source control strategies . . . could have succeeded."  In other words, Transocean wants to see if BP and the US undertook a source control effort that either of them knew or should have known, on the basis of a flow rate

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 27, 2012
Page 4

estimate, was doomed to fail. Transocean further suggests that its allocated time should be increased because no other party has "an interest in uncovering such evidence."

Transocean's suggestion that the PSC, the States, and the United States are all indifferent to whether the United States approved source control efforts that BP knew or should have known were doomed to fail is implausible, to say the least. Moreover, Transocean offers no reason to believe that its interest in the subject — even on the highly implausible assumption that no other party is equally interested in it — cannot be exhausted within the time provided with respect to any particular witness on any particular quantification topic.

Undoubtedly, a great part of the deposition testimony to be proffered by United States Rule 30(b)(6) witnesses will bear at best tangentially on this newly professed concern of Transocean's. To the extent a particular witness is testifying on a topic of particular interest to Transocean, Transocean may seek to increase its allotment for that witness. But there is no basis to grant Transocean's request for an overall increase to its allotment for all United States witnesses.

### Halliburton's Reconsideration Request

Although Halliburton maintains that it has *no* exposure to liability for Phase 2 issues, Halliburton again requests additional deposition time allocations, because "BP and Transocean have also made contribution/indemnification claims against Halliburton."

The existence of these indemnity claims provides no basis for any increase in Halliburton's allocated deposition time. Halliburton does not suggest that the interests of BP and Transocean in defending the Phase 2 liability claims against them are somehow diminished because those parties have asserted indemnity claims against Halliburton. Nor does Halliburton attempt to explain how its examination could develop evidence that was uniquely relevant to indemnity issues, as opposed to the underlying liability issues.

While Halliburton has not requested that its additional time be taken from any BP examination, BP would object to any decrease in its time allocation for the reasons stated above.

### Request for Amendments or Clarifications by the United States

The United States requests three clarifications or amendments to the Court's August 15 Order Re Allocation of Examination Time for Phase Two Depositions. BP's position as to each of these requests is stated below.

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
August 27, 2012
Page 5


*First*, BP agrees that the party first examining a witness should be allowed to reserve time for the end of the deposition.

*Second*, given DNV's initial work for the US and its subsequent work paid for by BP and conducted under this Court's auspices, BP would agree, solely for purposes of its Phase 2 Rule 30(b)(6) deposition time allocation, that DNV may be classed as a Hybrid/Independent witness.

*Third*, BP also agrees with the United States' proposal that Hybrid/Independent witnesses deposition time be allocated on the same schedule as Order 7150, applying to Mr. Vargo's deposition.

Sincerely,

Robert R. Gasaway


Attachments

cc (via electronic mail):

United States' MDL Counsel
Plaintiffs' Liaison Counsel
Defense Liaison Counsel

# EXHIBIT 1



## AC207 – Organization & IAP Work Flow

Incident:  MC252                              Period 25:  15 May 0600 – 16 May 0600

**Unified Area Command (UAC)**

(Robert, LA)

Work Plan

Approval

IAP

IAP

IAP

**Unified Incident Command**

(Houma, LA)

**Unified Incident Command**

(Mobile, AL)

**Unified Incident Command**

(St. Petersburg, FL)

IAP Data To
Houma Planning
Section

**Source Control Section**

(Houston, TX)

1



Incident: MC252 — **AC207 – Organization Chart (Day)** Period 25: 15 May 0600 – 15 May 1800

**NRT** - - - - - - - - - - **NIC**   National Policy/Legal/Environmental/Economic Issues

Alignment & Consultation

**RRT**

**Unified Area Command (UAC)**
USCG – RADM M. Landry          MMS –  L. Herbst
BP – Doug Suttles               TO  – Adrian Rose
State of LA – D. Bradshaw        State of FL – M. Drew
State of AL – J. Haywood

**Key Agency Representatives**
DOI – Lori Faeth
DOC – TBD
EPA – Sam Coleman

**Executive Assistant**
BP – J. Wallace
USCG – CAPT P. Little

**Liaison Officer**
USCG – LTJG Sumner
BP – Phil Cochran

**Safety Officer**
BP – Kim Bucek

**Aide de Camp**
BP – L. Erwin

**D8 Chaplain**
USCG – CDR T. White

**Deputy Area Commander**
USCG – RADM Jim Watson          MMS – M. Saucier
USCG – CAPT J. Hanzlik – Pollution Response    BP – Dave Rainey
BP – Richard Morrison            TOI – Larry McMahan

**External Affairs**
BP – Dean Scott
USCG – CAPT Labrec

**Legal Officer**
BP – Vic Aguiluz
USCG – CDR J. Nolan (on Call)

**Deputy AC for Processes**
BP – Roy Lambden
USCG – CAPT T. Hooper

**Security Officer**
BP – Chris Curtis

**DoD**
NORTHCOM – TBD

**Air Liaison**
USCG – CDR Hamblet

**Strategic Planning Section**
BP – Peter Miller
USCG –Jim Elliott (Deputy)
NOAA – TBD
MMS - TBD

**Strategic Logistics/Fin/Admin**
USCG – SES S. Palmer

**Planning Section**
BP – Jeff Wedgwood (Chief)
USCG – CDR J. Higgins (Deputy)

Continued on page 3

**Logistics Section**
BP – John Huston (Chief)
USCG – CDR D. Dorazio (Deputy)

Continued on page 3

**Finance Section**
BP – Dave Vining (Chief)
USCG – SKC  Stearns

Continued on page 3

**2**

| Incident: MC252 | **AC207 – Organization Chart (Day)** Period 25: 15 May 0600 – 15 May 1800 |
|---|---|

Continued from page 2

**Strategic Planning Section**
BP – Peter Miller
USCG –CDR J. Elliott (Deputy)
NOAA – TBD
MMS - TBD

**Planning Section**
BP – Jeff Wedgwood (Chief)
USCG – CDR J. Higgins (Deputy)
USCG – J. Stephens (Deputy)

**Logistics Section**
BP – John Huston (Chief)
USCG – CDR D. Dorazio (Deputy)

**Finance Section**
BP – Dave Vining (Chief)
USCG – SKC Stearns

**Technical Specialist**
**Pollution**
USCG – Matt Weekly
NGA Geo-Spatial Imaging – Mark Linslow
USN SUPSALV – Capt. Keenan

**Well Source Control**
BP – Terry Jordan

**Rig Salvage**
TOI

**Situation Unit**
BP – Lynette Avery (Leader)
USCG – LT C. Kerr (Deputy)

**Display Processor**
BP – Bryan Ferguson

**Comms/ IT Support Unit**
BP – Derek Anthony (Leader)
USCG – CDR Brahm (Deputy)

**Cost Documentation**
USCG – J. Gorgone

**Procurement**
USCG – R. Midkiff
USCG – M. Elsy

**Facilities Unit**
BP – Carl Yeager (Leader)
BP – 9 Contractors

**Documentation Unit**
BP – Dolores Silva (Leader)
USCG – YN1 A. Gibson (Deputy)

**Environmental Unit**
NOAA – Kate Clark
NOAA – George Graettinger
NOAA – Steven Lehman SSC
EPA – Jim Staves
BP – Larry Malnor

**Critical Resource Unit**
BP – Jackie Mutschler (Leader)
BP – Mark Skelton (Deputy)
USCG – S Knutson

**Ground Support Unit**
BP

**Personnel Resource Unit**
USCG – LT Kitlinkski (Leader)
USCG – YNC Stock

**Resource Unit**
BP - Bonnie Myers (Leader)
USCG- BMI Jones

**Demobilization Unit**
Maria Estrada-Stockton
USCG – D. Porter (Leader)
USCG – MSTCS G. Dennis (Deputy)

**Supply Unit**
BP – TBD (Leader)
USCG – LT CDR Saunders

**Check-In / Status**
BP – Contractors

**Marine Transportation System Recovery Unit**
USCG – Dr. Madeleine McNamara

**3**

## AC207 – Organization Chart (Night)

**Incident:  MC252**                        **Period 25:   15 May 1800 – 16 May 0600**



**Unified Area Command (UAC)**
USCG –  RADM M. Landry          MMS –  Mr. M Saucier
BP –  Doug Suttles                     TO –  Adrian Rose

**External Affairs**
USCG – LT CDR R Wyman

**Legal Specialist**
BP – Vic Aguiluz (on Call)
USCG – CDR J. Nolan (on Call)

**Government Affairs**
USCG - LCDR Ben-Iesau

**Deputy Area Commander**
BP- Jim Plutt
USCG – CDR Paul Dittman

**Planning Section**
BP – Jim Plutt (Chief)
USCG – CDR Clayborn

**Logistics Section**
BP – John Huston (Chief)
USCG – LT Lacy

**Technical Specialist**
BP – Terry Jordan
**Well Source Control**

**Situation Unit**
BP – Francis Rollins (Leader)
USCG – LT A. Campbell

**Comms/ IT Support Unit**
BP – Jesse Graham (Leader)
Harry Masson
Rene Hale
USCG – OSC Coffman

**Facilities Unit**
BP –  Duane Lee (Leader)
BP – Eric Nelson (Deputy)

**Resource Unit**
USCG- CWO Thomas McKee
TRG – Barrett Horner
USCG – BMC Beck

**Documentation Unit**
BP – Renate Daws Until 10:00

**4**

# EXHIBIT 2

```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA
 2

 3     ****************************************************************

 4     IN RE:  OIL SPILL BY THE
       OIL RIG DEEPWATER HORIZON
 5     IN THE GULF OF MEXICO ON
       APRIL 20, 2010
 6
                                    CIVIL ACTION NO. 10-MD-2179 "J"
 7                                  NEW ORLEANS, LOUISIANA
                                    FRIDAY, MARCH 16, 2012, 9:30 A.M.
 8

 9     THIS DOCUMENT RELATES TO
       ALL ACTIONS
10

11     ****************************************************************

12         TRANSCRIPT OF WORKING GROUP STATUS CONFERENCE PROCEEDINGS
                HEARD BEFORE THE HONORABLE SALLY SHUSHAN
13                  UNITED STATES MAGISTRATE JUDGE

14


15     APPEARANCES:

16


17     FOR THE PLAINTIFFS:    IRPINO LAW FIRM
                              BY:  ANTHONY IRPINO, ESQUIRE
18                            2216 MAGAZINE STREET
                              NEW ORLEANS, LA  70130
19

20                            WILLIAMSON & RUSNAK
                              BY:  JIMMY WILLIAMSON, ESQUIRE
21                            4310 YOAKUM BOULEVARD
                              HOUSTON, TX  77006
22

23                            LEVIN PAPANTONIO THOMAS MITCHELL
                              RAFFERTY & PROCTOR
24                            BY:  BRIAN H. BARR, ESQUIRE
                              316 SOUTH BAYLEN STREET, SUITE 600
25                            PENSACOLA, FL  32502
```

09:20AM

1                    I N D E X

2

3    AGENDA ITEMS                                PAGE

4

5    PRESERVATION OF THE CAPPING STACK/OWNERSHIP ISSUE......  8

6    CAPTAIN ENGLEBERT'S INVOICE FOR MARCH.................  10

7    WHAT WE THINK PHASE TWO IS GOING TO LOOK LIKE.........  10

8    CAPTAIN ENGLEBERT REPORTS ON THE HALLIBURTON COMPUTER   24

9    PROTOCOL.............................................

10   DOCUMENT PRODUCTION BY THE UNITED STATES AND THE        25

11   COAST GUARD AND PRIVILEGE ISSUES, ETCETERA............

12   WOODS HOLE...........................................  29

13   SUSPEND FOR THE TIME BEING THE APRIL DEPOSITIONS.......  31

14   STRUCTURING THE 30(B)(6) PROCESS.....................  32

15   30(B)(6) NOTICE TO BP................................  32

16   30(B)(6) TOPICS FOR THE UNITED STATES' WITNESSES.......  39

17   THIRD-PARTY 30(B)(6).................................  40

18   NATIONAL MARINE FISHERIES SERVICE....................  43

19   EVERY SATURDAY IS GOING TO BE E-MAIL FREE............  44

20

21

22

23

24

25

09:34AM  1   something, and I have no idea what, but --

09:34AM  2        THE COURT:  For the phone participants, we're looking at

09:34AM  3   Brian's baby boy, who looks shocked.   Cute.

09:34AM  4        All right.  So let's get an update, Brian, if any.

09:34AM  5        MR. BARR:  Well, we went back this weekend and did a lot

09:34AM  6   of work trying to determine what evidence we already have and

09:34AM  7   where we are.

09:34AM  8        After doing that, what I'll say is, after fully

09:34AM  9   analyzing the evidence obtained by the PSC during the course of

09:34AM 10   discovery to this point in the litigation, the PSC believes and

09:34AM 11   has concluded that it has obtained most, if not all, of the proof

09:34AM 12   necessary relevant to Phase Two issues.

09:34AM 13        We're continuing to examine, of course, the

09:34AM 14   evidence obtained to this point, and will inform the Court in the

09:35AM 15   unlikely event the PSC believes it requires time during the

09:35AM 16   upcoming Phase Two depositions.

09:35AM 17        Particularly, on quantification, while, perhaps,

09:35AM 18   you know, this issue is relevant to issues or claims of other

09:35AM 19   parties, the amount of oil released from the Macondo well, the

09:35AM 20   PSC does not believe, does not have a direct impact on the claims

09:35AM 21   brought by plaintiffs in the master complaints prepared by the

09:35AM 22   PSC.

09:35AM 23        THE COURT:  That's very clarifying.  Terrific.

09:35AM 24        Does anybody have questions or want to chime in on

09:35AM 25   what they think about Phase Two as it's affected as we go

12

09:35AM 1    forward.

09:35AM 2                   I can see, Andy, that the answer would be yes.

09:35AM 3         MR. LANGAN:  What about source control and the PSC?

09:35AM 4         THE COURT:  Yes, source control.  Okay.  I've heard

09:36AM 5    Phase Two is what I've heard.

09:36AM 6         MR. BARR:  Well, I can address that a little further.

09:36AM 7         THE COURT:  Yes, sure.

09:36AM 8         MR. BARR:  We believe, as shown by the Court's most

09:36AM 9    recent overlap order, much of the Phase One discovery already

09:36AM 10   conducted is overlapped in the Phase Two issues, in that most of

09:36AM 11   the defense witnesses with primary authority over the source

09:36AM 12   control efforts were deposed in Phase One.

09:36AM 13                  As a result of this discovery, the PSC has already

09:36AM 14   obtained virtually all or all of the proof it feels is necessary

09:36AM 15   regarding source control.  We will inform the Court of any time

09:36AM 16   we believe it requires on any specific Phase Two depositions, if

09:36AM 17   the need for such time becomes necessary.

09:36AM 18        THE COURT:  Andy, does that answer your question?

09:36AM 19        MR. LANGAN:  It's very helpful, Your Honor.

09:36AM 20        THE COURT:  Good.  Okay.

09:36AM 21        MR. LANGAN:  So it just reinforces what I was trying to

09:36AM 22   say over the phone last week, which is we think it looks very

09:36AM 23   different.

09:36AM 24        THE COURT:  Which is why you decided to come back to

09:36AM 25   court this week.