

**AMBER B. SHUSHAN**
DIRECT LINE: 713.470.6153
E-mail: amber.shushan@sutherland.com

SUTHERLAND ASBILL & BRENNAN LLP
First City Tower
1001 Fannin, Suite 3700
Houston, TX 77002-6760
713.470.6100  Fax 713.654.1301
www.sutherland.com

August 31, 2012

*VIA E-MAIL*

Honorable Sally Shushan
United States Magistrate Judge
Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, LA 70130

Re:   *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20,*
      *2010, MDL No. 2179* -- Claims by Mexican States

Dear Judge Shushan:

We write to bring your attention to several immediate issues affecting the status of the "targeted" discovery underway in the actions brought by the Mexican states of Veracruz, Quintana Roo, and Tamaulipas per the Court's Order of June 18, 2012. (Rec. doc. 6702). Yesterday, on August 30, 2012, the parties participated in a teleconference to discuss plaintiffs' document production deficiencies. During the teleconference, several issues were discussed raising concern regarding the path forward for this "targeted" discovery process. Additionally, defendants have more general concerns that, even with the limitations imposed by the Court, the discovery currently underway will still far exceed the scope of what was originally contemplated by the Court. We therefore request that the Court set a call as soon as possible to consider the issues set forth herein and whether certain modifications of the discovery schedule will help focus the parties' efforts and put the discovery back on a more manageable track.

First, fact witness depositions are delayed because defendants are hampered in their preparation efforts, and plaintiffs' witnesses are unavailable until September 19, 2012. Defense efforts are hindered because plaintiffs have not yet produced documents compliant with Pretrial Order No. 16. (Doc. No. 686). To date, defendants are unable to determine whether plaintiffs have produced documents requested by defendants, including the numerous documents listed in plaintiffs' initial disclosures. (*See* Ex. 1 (August 28, 2012 letter regarding production deficiencies and requesting a conference)).

Plaintiffs' most recent production is comprised of over 5,000 individual .tiff images. Unfortunately, analysis of the material as produced would require a herculean effort. The material was not accompanied by load files delineating document boundaries or identifying the production data. Thus, the 261 photographs within the production are unidentifiable. They have

Atlanta          Austin          Houston          New York          Washington DC

Judge Shushan
August 31, 2012
Page 2

no captions, dates, or locations. Additionally, the documents were disorganized, with Bates numbers failing to correspond sequentially with page numbered materials. The materials appear to have been shuffled before Bates numbers were applied. Moreover, many pages were poorly scanned and numerous documents appear incomplete. Further, over 75% of the material is in Spanish.

During the parties' August 30th teleconference, Mr. Serna assured defendants that they will receive a production compliant with Pretrial Order No. 16 no later than Saturday, September 1, 2012. Unfortunately, this "corrective" production will be too little, too late for defendants to assess the sufficiency of plaintiffs' production and adequately prepare for depositions to begin in early September.

Mr. Serna also informed defendants during the teleconference that plaintiffs' fact witnesses (who remain unidentified) are unable to begin depositions until September 19, 2012 due to the upcoming Mexican national holiday, and the Mexican states' preparations for upcoming "state of the union" addresses. He requested that defendants consent to a fifteen day extension of all the remaining deadlines set forth in the Court's Order of June 18, 2012. (Rec. doc. 6702). Although defendants do not oppose plaintiffs' request for an extension, defendants fear that this will not be the only extension required. Until defendants analyze plaintiffs' "corrective" production, and plaintiffs narrow their list of fact and expert witnesses as requested by the defendants and the Court, defendants are unable to assess how much additional time might be necessary for fact discovery.

Moreover, more time might also be needed for expert discovery. To date, plaintiffs have not identified their experts by name or specialty. Nevertheless, plaintiffs' written discovery responses reveal that expert discovery during this "targeted" discovery process will overlap with issues reserved for Phase 2 and 3 of MDL 2179. For example, issues of quantification, impact of dispersants, and chemical fingerprinting of source oil are raised by plaintiffs' discovery responses. (Ex. 2). These issues are scientifically and technically complex requiring several experts to address. Until defendants receive plaintiffs' expert reports, defendants will not know whether additional time is necessary to analyze the science allegedly supporting plaintiffs' claims. Nevertheless, defendants want to bring these issues to the Court's attention now.

Finally, the parties are unable to agree on a location for plaintiffs' witnesses' depositions. Because plaintiffs brought suit in the United States, and the action is pending in New Orleans, plaintiffs should present their witnesses for deposition in New Orleans.

According to Mr. Serna, plaintiffs' witness depositions should be taken in Mexico, or by videoconference, due to the fact that the majority of plaintiffs' witnesses cannot travel to the United States. Mr. Serna reported that plaintiffs selected nine fact witnesses to support their claims, seven of whom allegedly cannot travel to the United States. Additionally, plaintiffs selected six experts, one of whom allegedly cannot travel abroad. Of note, Mr. Serna reported that the individuals at issue have not attempted to obtain the necessary passports/visas required for U.S. travel because of the inconvenience and time required to obtain such documents.

Judge Shushan
August 31, 2012
Page 3


Defendants' counsel should not be required to travel to Mexico, particularly in light of reports of the recent violence there, or to be hampered in their cross-examination efforts by videoconference.  Plaintiffs brought suit in the United States and cannot now claim that their witnesses do not wish to be inconvenienced by obtaining the necessary paperwork to travel there.

In light of the foregoing, defendants respectfully ask the Court to set a call to discuss these and other issues that defendants submit may require additional modifications of the discovery schedule.

Sincerely,

Amber B. Shushan

cc:     Enrique G. Serna
        Steven Roberts
        Carter Williams
        Kerry Miller
        David Beck
        B.D. Daniel
        Geoff Gannaway
        Alan York
        Jenny Martinez
        Gavin Hill
        Bruce Bowman
        Andrew Langan
        Catherine Fitzpatrick
        Beth Larsen
        Steve Herman
        Jim Roy
        Scott Summy
        Brian Barr

# EXHIBIT 1



**DALLAS** HOUSTON

*Attorneys and Counselors*

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041

214.939.4400
800.662.8393
214.760.7332 Fax

GodwinRonquillo.com

JENNY L. MARTINEZ, SHAREHOLDER
DIRECT DIAL:     214.939.4620
DIRECT FAX:     214.527.3119
JMartinez@GodwinRonquillo.com

August 28, 2012

**VIA EMAIL** - *Enrique@serna-associates.com*

Enrique G. Serna, III
Serna & Associates
Serna Building
20985 IH-10 West
San Antonio TX 78527

Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, MDL 2179

Dear Mr. Serna:

This letter is a follow up to our July 27, 2012 letter regarding the deficiencies in the documents produced by Mexican States with their Rule 26 Initial Disclosures.  To date, we have not received a response.  The Mexican States' August 23, 2012 production has the same deficiencies, and based upon our attempted analysis of the documents, they are very unorganized and out of order.

As you know, PTO 16 requires documents that are not produced in their native form (such as emails and hard copy documents) to be produced as Bates-stamped, single-page TIFF images, with separate searchable OCR/extracted text files.  The documents are to be accompanied by metadata provided in load files compatible with commercially available document review software, such as Concordance.  For documents produced in their native form (*e.g.* PowerPoint and Excel files), parties must produce a Bates-stamped TIFF image indicating the native form of production, and the documents themselves must be produced with searchable text and any available metadata in the load files.  Please let us know, no later than August 31, 2012, whether the Mexican States intend to bring their documents into compliance with PTO No. 16.

In addition to the document production deficiencies, most of the documents appear to be in Spanish.  To satisfy their burden of proving a proprietary interest under Mexican law, the Mexican States must provide Judge Barbier with accurate translations of such law.  And, in order to conduct proper depositions of Plaintiffs' witnesses and otherwise prepare their defenses,

August 28, 2012
Page 2

Defendants need to know, in English, the textual bases for Plaintiffs' legal contentions.   An English translation of purportedly relevant Mexican law is highly relevant to the Mexican States' claims and Defendants are entitled to the same pursuant to Rule 26(b)(1).

It is unclear whether the Mexican States intend to provide an English translation. Accordingly, the Defendants would like to meet and confer with you about this issue <u>no later than August 30, 2012</u>, the current deadline to meet and confer about insufficient discovery.

Please contact me at your earliest convenience to arrange a meet and confer.

Sincerely yours,

Jenny L. Martinez

# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010. | § § § § § | **MDL No. 2179** **SECTION "J"** |
| **This Document Relates to:** | § § | **JUDGE BARBIER** |
| 10-4239 10-4240 10-4241 | § § § § | **MAGISTRATE SHUSHAN** |

### PLAINTIFFS' OBJECTIONS AND ANSWERS TO DEFENDANTS' TARGETED DISCOVERY REQUESTS

**NOW COME,** the Mexican States of Quintana Roo, Veracruz and Tamaulipas (herein "Plaintiffs") through their counsel Enrique G. Serna, and, pursuant to Rules 26, 33 and 34 of the Federal Rules of Civil Procedure, hereby submit the following responses and objections to Defendants' Targeted Discovery Requests to the Mexican States of Veracruz, Tamaulipas and Quintana Roo, Republic of Mexico.

### PLAINTIFFS' OBJECTIONS TO
### EACH AND EVERY INTERROGATORY AND REQUEST FOR PRODUCTION:

1.      In addition to any objection stated below to a particular interrogatory or request for production, Plaintiffs object to each and every interrogatory and request for production to the extent that it would require Plaintiffs to provide information, reference or identify documents, produce documents or other matters which any other Plaintiff or Plaintiffs have already produced or disclosed herein, which is available from public sources, which any other party herein has already produced or disclosed, and/or which Defendants have already produced and/or disclosed.

The foregoing objections are based on the grounds that Defendants' interrogatories are duplicative, redundant, vexatious, and overly broad and burdensome.

2.      Plaintiffs object to each and every one of these interrogatories and requests for production to the extent that they seek information and/or documents in the possession of any individual, entity, governmental agency, business, and/or any other party, (other than Plaintiffs) on the following separate and independent grounds:

A.      This information is equally and easily available to Defendants as it is to Plaintiffs.

B.      Plaintiffs have no control over or access to this information and, therefore, Defendants' interrogatories and requests for production are an improper discovery request under the Federal Rules of Civil Procedure.

3.      Plaintiffs object to all of these interrogatories, requests for production, and the instructions accompanying them inasmuch as they impose burdens of supplementation, burdens of answering and/or the scope of answers, and other requirements which are not applicable to interrogatories or requests to produce under the Federal Rules of Civil Procedure and as such, these instructions and the accompanying interrogatories and request for production to which they purport to apply are in contravention of the Federal Rules of Civil Procedure and constitute improper discovery requests not authorized by said rules.

4.      Plaintiffs object to the interrogatories and requests for production to the extent they seek documents, items, things, matters, and information that are already in the possession of Defendants or equally available from sources other than Plaintiffs, including publically available sources.

5.      Plaintiffs object to the requests for production and the interrogatories to the extent they call for information, seek discovery, or attempt to impose any obligations beyond those

permitted by the Federal Rules of Civil Procedure and/or the previous Orders of this Court, including those addressing the limitations applicable to "targeted" discovery.

6.      Plaintiffs object to Defendants' interrogatories and requests for production to the extent they call for information and/or documents, records, items, and things that are not within Plaintiffs' custody, possession, or control. All responses herein are made on behalf of Plaintiffs only and are limited to information, documents, records, items, and things that are within Plaintiffs' custody, possession, or control.

7.      Plaintiffs object to the interrogatories and requests for production to the extent they are unduly burdensome, duplicative, premature, oppressive and/or overbroad, including, without limitation, as to subject matter and/or time period, and where compliance with specific requests would be unreasonably difficult as well as prohibitively expensive or time-consuming.

8.      Plaintiffs object to the interrogatories and request for production to the extent they are not limited to information, documents, matters, or things relevant to any party's claims or defenses, or to the extent they seek discover of information or documents not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence.

9.      Plaintiffs object to the definition of "document" in Paragraph 6 of Defendants' Targeted Discovery Requests to the Mexican States of Quintana Roo, Tamaulipas, and Veracruz inasmuch as said definition purports to include types of documents related to damages and other matters outside the scope of the targeted discovery (*e.g.*, "financial statements; balance sheets; profit and loss statements; statement of earnings; statements of net worth; credit reports; statements of operations; audit reports; financial summaries; statements of lists of assets; . . . cancelled checks; check stubs;" and other such matters on the grounds that the information and documents requested thereby are not relevant to the claims and defenses of the parties at this

stage, they are not calculated to lead to the discovery of admissible evidence, and they exceed the scope of the "targeted discovery" pursuant to the Court's orders.

10.     Plaintiffs object to the definition of " relating to" and/or "related to" in Paragraph 10 of Defendants' Targeted Discovery Requests to the Mexican States of Quintana Roo, Tamaulipas, and Veracruz insofar as it attempts to incorporate ". . . alludes to, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified." The foregoing terms are so vague, ambiguous, overbroad, and amorphous that they are unintelligible and, therefore, preclude Plaintiffs from reasonably ascertaining their meaning.

11.     Plaintiffs object to these requests for production and interrogatories to the extent they seek information, documents and materials protected from discovery by the attorney-client privilege inasmuch as they seek discovery of post-April 20, 2010 information, documents, and other matters which constitute and/or contain legal advice, legal opinions, legal conclusions, legal recommendations, and legal analysis by Plaintiffs' attorneys and other information which also constitutes and/or contains privileged confidential communications among Plaintiffs' attorneys; and/or between Plaintiffs' attorney(s) and Plaintiffs and/or their officials, representatives, managers, or employees which were made for the purpose of providing and facilitating the rendition of professional legal services to Plaintiffs. Therefore, such information and matters are protected by the attorney-client privilege.

### ASSERTION OF CLAIM OF ATTORNEY-CLIENT PRIVILEGE AS TO INFORMATION RESPONSIVE TO THESE REQUESTS FOR PRODUCTION AND INTERROGATORIES.

12.     Plaintiffs hereby supplement their objection and also assert their claim that the attorney-client privilege protects from discovery the information, records and materials sought by these requests. Plaintiffs assert that these requests and interrogatories seek post April 20, 2010

documents, records, information and other matters protected from discovery by the attorney-client privilege inasmuch as they seek discovery of documents, records, information and other matters which constitute and/or contain legal advice, legal opinions, legal conclusions, legal recommendations, and legal analysis by Plaintiffs' attorneys and other information, records and materials which also constitute and/or contain confidential privileged communications among Plaintiffs' attorneys; and/or between Plaintiffs' attorney(s) and Plaintiffs and/or their officials, representatives, or employees which were made for the purpose of providing and facilitating the rendition of professional legal services to Plaintiffs. Therefore, such information and matters are protected by the attorney-client privilege.

13.     Post-April 20, 2010 information, documents, and materials responsive to this request are being withheld under a claim of attorney-client privilege.  The matters, records, documents, and information being withheld constitute and reflect confidential communications among Plaintiffs' attorneys and/or between Plaintiffs' attorneys and Plaintiffs' officials, representatives, employees, and managers that were made by:

a)     Plaintiffs' officials, representatives, employees, and managers to Plaintiffs' attorneys in order to provide information to said attorneys for the purpose of obtaining and facilitating the rendition of professional legal services to Plaintiffs;

b)     Plaintiffs' attorneys to Plaintiffs and/or their officials, employees, managers, or representatives for the purpose of providing and facilitating the rendition of professional legal services to Plaintiffs and/or which constitute and/or contain legal advice, legal opinions, legal conclusions, legal assessments, recommendations, thought processes, legal recommendations, and legal analysis by Plaintiffs' attorneys;

       c)       Communications among and between Plaintiffs' attorneys containing legal advice and legal analysis and recommendations related to this litigation.

The confidential matters being withheld under this privilege include attorney notes, e-mails, faxes, communications and other matters reflecting meetings, communications, and conversations among Plaintiffs' attorneys and/or between Plaintiffs' attorneys and Plaintiffs' representatives, managers, and other personnel about the initiation, progress, approach, and development of this litigation, including legal advice and recommendations regarding same, information conveyed to Plaintiffs' attorneys for purposes of assessing the allegations against Defendants; and other matters concerning Defendants' asserted defenses.

14.      Plaintiffs hereby incorporate by reference, *verbatim,* all of the foregoing objections in each of its objections set forth below to the particular interrogatories and request for production.

## PLAINTIFFS' SPECIFIC RESPONSES AND OBJECTIONS TO REQUEST FOR PRODUCTION

1. All documents exchanged between and communications between you and any employee, staff member or other person working for, with or on behalf of the United States government referring or relating to the movement or potential movement of both surface or sub-surface oil and/or dispersants following the *Deepwater Horizon* Incident and/or alleged presence of oil in Mexican waters and/or your territorial boundaries originating from the Incident.

**OBJECTIONS:**  Plaintiffs object on the following separate and independent grounds:

Plaintiffs object to this Request for Production on the grounds that it is so vague and ambiguous that it precludes Plaintiffs from ascertaining what information it is being asked to produce because of its use of the term "other person working for, with, or on behalf of the United States." The foregoing phrase is vague and ambiguous since it does not give any guidance or definition as to who may or may not be working for, with, or on

behalf of the U.S., thus requiring Plaintiffs to engage in speculation and conjecture as to whether anyone is employed or working in such capacity.

**RESPONSE:** Subject to the foregoing objections and without waiver of same, the following answer is provided:

Documents responsive to this request are included in documents produced in *United States v. BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17, "19 Sea Turtle" labeled as Contents: NOAA Production Documents, including Images, Text, Narratives, and Load Files.

Please also See TVQR 00001 – 005136

2. All documents exchanged between and communications between you and any official or entity of the federal government of Mexico referring or relating to the movement or potential movement of both surface and sub-surface oil and/or dispersants following the *Deepwater Horizon* Incident and/or the alleged presence of oil in Mexican waters and/or your territorial boundaries originating from the Incident.

**OBJECTIONS:** Plaintiffs object on the following separate and independent grounds:

1. Plaintiffs object to this Request for Production on the grounds that it is so vague and ambiguous that it precludes Plaintiffs from ascertaining what information they are being asked to produce because of its use of the following terms: "any official or entity." The foregoing terms are vague and ambiguous since there are no definitions, limitations, or specifications as to their intended meaning. Furthermore, the terms "alleged presence of oil" are so broad and all-encompassing as to possibly include almost any substance. Therefore, the vagueness and ambiguity of this request requires Plaintiffs to engage in speculation and conjecture as to the meaning of this request.

**RESPONSE:** Subject to the foregoing objections and without waiver of same, the following answer is provided:

Documents responsive to this request are contained in documents produced in *United States v. BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17, "19 Sea Turtle" labeled as Contents: NOAA Production Documents, including Images, Text, Narratives, and Load Files.

Please also See TVQR 00001 – 005136.

3.  All documents exchanged between and communications between you and any member of the media or press or any person or entity affiliated with any media publication, including, but not limited to, any reporter, investigator, journalist, author, or publisher, referring or relating to the movement or potential movement of both surface and sub-surface oil and/or dispersants following the *Deepwater Horizon* Incident and/or the alleged presence of oil in Mexican waters and/or your territorial boundaries originating from the Incident.

   **RESPONSE:** Subject to the foregoing objection and without waiver of same, Plaintiffs respond as follows:

Documents responsive to this request are included in *United States v. BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17, "19 Sea Turtle" labeled as Contents: NOAA Production Documents, including Images, Text, Narratives, and Load Files.

Please also See TVQR 00001 – 005136.

4.  All documents relating to any releases after April 20, 2010, of oil into Mexican territorial waters leading into the Gulf of Mexico or any releases into Mexican waters and/or your territorial boundaries or by any Mexican state-owned entity, including but not limited to PEMEX.

**OBJECTIONS:**  Plaintiffs object on the following separate and independent grounds:

1.      Plaintiffs object to this Request for Production on the grounds that it is so vague and ambiguous that it precludes Plaintiffs from ascertaining what information it is being asked to produce because of its use of the term "any releases after April 20, 2010, of oil…" The foregoing term is vague and ambiguous since it does not define or limit the amount, characteristics, type, location, or nature of the release of oil which it references, thus requiring Plaintiffs to engage in speculation and conjecture as to the meaning of this request.

2.      Since this Request for Production uses the term "any releases after April 20, 2010, of oil…", without any specification or limitation as to the nature, amount, characteristics, type, or location, it is overly broad, burdensome requiring the overly burdensome expenditures of time and resources.

3.      The linguistic and grammatical structure of this Request for Production is inartful and convoluted, creating ambiguity, vagueness, and confusion as to what information it seeks, thus rendering it unintelligible and precluding Plaintiffs from ascertaining its intent and the information it seeks. By way of example, it is not reasonably ascertainable whether by using the words "release" it is referring to the release of oil from the Macondo well after April 20, 2010 which migrated into Mexican waters, Mexican territorial waters, state waters, *etc.* or whether it seeks information regarding "releases" from other sources.

**RESPONSE:** Subject to the foregoing objections and without waiver of same, the following answer is provided:

Plaintiffs refer Defendants' to all documents produced in *United States v. BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17, "19 Sea Turtle" labeled as Contents: NOAA Production Documents, including Images, Text, Narratives, and Load Files.

Please also See TVQR 00001 – 005136.

5.   All documents exchanged between and communications between you and any other party in MDL No. 2179, referring or relating to the movement or potential movement of both surface or sub-surface oil and/or dispersants following the *Deepwater Horizon* Incident and/or the alleged presence of oil in Mexican waters and/or your territorial boundaries originating from the Incident.

**OBJECTIONS:**  Plaintiffs object on the following separate and independent grounds:

1.      Plaintiffs hereby supplement their objection and also assert their claim that the attorney-client privilege protects from discovery the information, records and materials sought by these requests. Plaintiffs assert that these requests and interrogatories seek post April 20, 2010 documents, records, information and other matters protected from discovery by the attorney-client privilege inasmuch as they seek discovery of documents, records, information and other matters which constitute and/or contain legal advice, legal opinions, legal conclusions, legal recommendations, and legal analysis by Plaintiffs' attorneys and other information, records and materials which also constitute and/or contain confidential privileged communications among Plaintiffs' attorneys; and/or between Plaintiffs' attorney(s) and Plaintiffs and/or their officials, representatives, or employees which were made for the purpose of providing and facilitating the rendition of professional legal services to Plaintiffs. Therefore, such information and matters are protected by the attorney-client privilege.

2.      Post-April 20, 2010 information, documents, and materials responsive to this request are being withheld under a claim of attorney-client privilege.  The matters, records, documents, and information being withheld constitute and reflect confidential communications among Plaintiffs' attorneys and/or between Plaintiffs' attorneys and Plaintiffs' officials, representatives, employees, and managers that were made by:

a)      Plaintiffs' officials, representatives, employees, and managers to Plaintiffs' attorneys in order to provide information to said attorneys for the purpose of obtaining and facilitating the rendition of professional legal services to Plaintiffs;

b)      Plaintiffs' attorneys to Plaintiffs and/or their officials, employees, managers, or representatives for the purpose of providing and facilitating the rendition of professional legal services to Plaintiffs and/or which constitute and/or contain legal advice, legal opinions, legal conclusions, legal assessments, recommendations, thought processes, legal recommendations, and legal analysis by Plaintiffs' attorneys;

c)      Communications among and between Plaintiffs' attorneys containing legal advice and legal analysis and recommendations related to this litigation.

The confidential matters being withheld under this privilege include attorney notes, e-mails, faxes, communications and other matters reflecting meetings, communications, and conversations among Plaintiffs' attorneys and/or between Plaintiffs' attorneys and Plaintiffs' representatives, managers, and other personnel about the initiation, progress, approach, and development of this litigation, including legal advice and recommendations regarding same, information conveyed to Plaintiffs' attorneys for purposes of assessing the allegations against Defendants; and other matters concerning Defendants' asserted defenses.

**RESPONSE:** Subject to the foregoing objections and without waiver of same, the following answer is provided:

Documents responsive to this request are included in the documents produced in *United States v. BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17, "19 Sea Turtle" labeled as Contents: NOAA Production Documents, including Images, Text, Narratives, and Load Files.

Please also See TVQR 00001 – 005136.

6. All documents relating  to any baseline [pre-Incident] status information regarding animal (and plant) species composition, species distribution and movements, populations size, population trends, productivity (hatching success, breeding success), juvenile and adult survivorship (natural mortality), for all marine life, including turtles cetaceans, marine organisms (phytoplankton, zooplankton), benthic organisms, pelagic organisms, marine mammals, seabirds, all fish species (fish counts, 'reef check", including commercial, non-commercial and recreational fish species), habitat conditions, species compositions, species diversity, species abundance, and associates habitats including, but not limited to sea grasses, mangrove, coral reefs and marine habitats (including standardized monitoring schemes such as 'Reef Check', 'Atlantic and Gulf Rapid Reef Assessment' [AGRRA] , 'Caribbean Coastal Marine Productivity Program' [CARICOMP], and the Mesoamerican barrier Reef System – Synoptic Monitoring Program [MBRS SMP] schemes), sandy beaches, rocky shorelines, intertidal, near-shore, sea-bottom substrate/sediment, and all habitants, including open water, allegedly exposed to Macondo well oil within Mexican waters and/or your territorial boundaries for the period January 1, 2006, through and including June 1, 2012.

**RESPONSE**:    Documents responsive to this request are included in the documents produced in *United States v. BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17, "19 Sea Turtle" labeled as Contents: NOAA Production Documents, including Images, Text, Narratives, and Load Files.

Please also See TVQR 00001 - 005136

7. All documents concerning or relating to sampling of environmental (including water, water column, sediment, air, and shoreline) media and/or wildlife conducted or planned within the Mexican waters and/or your territorial boundaries, including but not limited to data collected, resulting reports, analysis plans, work plans, and quality assurance plans.

   **RESPONSE:** Documents responsive to this request are included in the documents produced in *United States v. BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17, "19 Sea Turtle" labeled as Contents: NOAA Production Documents, including Images, Text, Narratives, and Load Files.

   Please also See TVQR 00001 - 005136

8. All documents related to public presentations, interviews, and publications made by you or any response workers employed by you in relation to response activities undertaken in response to the *Deepwater Horizon* Incident.

   **RESPONSE:** Documents responsive to this request are included in the documents produced in *United States v. BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17, "19 Sea Turtle" labeled as Contents: NOAA Production Documents, including Images, Text, Narratives, and Load Files.

   Please also See TVQR 00001 - 005136

9. All documents related to any oil fingerprinting or identification methods used to analyze tar balls and other oil residues collected in Mexican waters and/or your territorial boundaries, including but not limited to data, work plans, procedures, chain of custody,, sampling and analysis plans, and quality assurance plans associated with these fingerprinting methods.

   **RESPONSE:** Documents responsive to this request are included in the documents produced in *United States v. BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced In Response to BP's 1st Request for Production,

Volumes 01-10, 11, 12, 14, 15 16, 17, "19 Sea Turtle" labeled as Contents: NOAA

Production Documents, including Images, Text, Narratives, and Load Files.

Please also See TVQR 00001 – 005136.

10. All oil trajectory, forecasts, including but not limited to any forecasts developed by or on behalf of you or other Mexican governmental organizations.

**OBJECTIONS:**   Plaintiffs object on the following separate and independent grounds:

Plaintiffs object on the grounds that the information requested is of an "expert" nature and, therefore, Plaintiffs will provide said information through the testimony and reports of their experts.

**RESPONSE:** Subject to the foregoing objections and without waiver of same, the following answer is provided:

Plaintiffs refer Defendants' to All Documents Produced in *United States v. BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17, "19 Sea Turtle" labeled as Contents: NOAA Production Documents, including Images, Text, Narratives, and Load Files.

Please also See TVQR 00001 – 005136.

11. All documents related to historic, chronic or acute oiling incidents in Mexican waters and/or your territorial boundaries, including releases from point-source and non-point-sources, and the release of other hazardous chemicals and pollutants between January 1, 2006, through and including June 1, 2012.

**OBJECTIONS:**   Plaintiffs object on the following separate and independent grounds:

1.      Plaintiffs object to this Request for Production on the grounds that it is so vague and ambiguous that it precludes Plaintiffs from ascertaining what information it is being asked to produce because of its use of the following terms: "historic," "chronic," "acute

oiling incidents" "hazardous chemicals" and/or "pollutants." The foregoing terms are vague and ambiguous since there are no definitions, limitations, or specifications as to their intended meaning or any limitation as to the amount, characteristics, type, location, or nature of any of the foregoing. Furthermore, the terms "hazardous chemicals" and "pollutants" are so broad and all-encompassing as to possibly include almost any substance. Therefore, the vagueness and ambiguity of this request requires Plaintiffs to engage in speculation and conjecture as to the meaning of this request.

2.      Since this Request for Production uses the terms "historic," "chronic," "acute oiling incidents" "hazardous chemicals" and/or "pollutants" without any definitions, limitations, or specifications as to their intended meaning and without any limitation as to the amount, characteristics, type, location, or nature of any of the foregoing and, also, since the terms "hazardous chemicals" and "pollutants" are so broad and all-encompassing as to possibly include almost any substance, this request is over broad and seeks information that is not relevant or material to the claims and defenses in this suit and which is not reasonably calculated to lead to the discovery of admissible evidence.

3.      Since this Request for Production uses the terms "historic," "chronic," "acute oiling incidents" "hazardous chemicals" and/or "pollutants" without any definitions, limitations, or specifications as to their intended meaning and without any limitation as to the amount, characteristics, type, location, or nature of any of the foregoing and, also, since the terms "hazardous chemicals" and "pollutants" are so broad and all-encompassing as to possibly include almost any substance, this request is overly broad, burdensome requiring the overly burdensome expenditures of time and resources.

**RESPONSE:** Subject to the foregoing objections and without waiver of same, the following answer is provided:

Plaintiffs refer Defendants to all documents produced in *United States v. BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17, "19 Sea Turtle" labeled as Contents: NOAA Production Documents, including Images, Text, Narratives, and Load Files.

Please also See TVQR 00001 – 005136.

12. All documents related to oil trajectory models employed to forecast, hindcast, simulate or mathematically model an oil trajectory pathway related to any oiling incident disclosed in response to Request No. 10 herein, including, but not limited to, all model formulae, inputs, data assumptions, Global Information System (GIS) layers, decay functions, temperature-depths assumptions or obtained data, data sources, extrapolation or interpolation methods, model iterations, simulation exercise results, statistical confidence limits, sensitivity analyses, uncertainty assumptions and considerations, and all documents used to inform the scientific basis upon which your oil trajectory modeling is based.

**OBJECTIONS:**   Plaintiffs object on the following separate and independent grounds:

Plaintiffs object on the grounds that the information requested is of an "expert" nature and, therefore, Plaintiffs will provide said information through the testimony and reports of their experts.

**RESPONSE:** Subject to the foregoing objections and without waiver of same, the following answer is provided:

Plaintiffs refer Defendants' to all documents produced in *United States v. BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17, "19

Sea Turtle" labeled as Contents: NOAA Production Documents, including Images, Text, Narratives, and Load Files.

Please also See TVQR 00001 – 005136.

13. Documents describing the interaction between you and other Mexican government entities, Mexican private entities, Mexican State-owned entities, BP, US federal or US state agencies, or United States private entities related to activities undertaken in response to the *Deepwater Horizon* Incident, the location of oil, the potential for movement in oil, and similar issues.

**OBJECTIONS:**  Plaintiffs object on the following separate and independent grounds:

1.     Plaintiffs object on the grounds of attorney client privilege and also assert their claim that the attorney-client privilege protects from discovery the information, records and materials sought by these requests. Plaintiffs assert that these requests and interrogatories seek post April 20, 2010 documents, records, information and other matters protected from discovery by the attorney-client privilege inasmuch as they seek discovery of documents, records, information and other matters which constitute and/or contain legal advice, legal opinions, legal conclusions, legal recommendations, and legal analysis by Plaintiffs' attorneys and other information, records and materials which also constitute and/or contain confidential privileged communications among Plaintiffs' attorneys; and/or between Plaintiffs' attorney(s) and Plaintiffs and/or their officials, representatives, or employees which were made for the purpose of providing and facilitating the rendition of professional legal services to Plaintiffs. Therefore, such information and matters are protected by the attorney-client privilege.

2.     Post-April 20, 2010 information, documents, and materials responsive to this request are being withheld under a claim of attorney-client privilege.  The matters, records, documents, and information being withheld constitute and reflect confidential

communications among Plaintiffs' attorneys and/or between Plaintiffs' attorneys and Plaintiffs' officials, representatives, employees, and managers that were made by:

a)      Plaintiffs' officials, representatives, employees, and managers to Plaintiffs' attorneys in order to provide information to said attorneys for the purpose of obtaining and facilitating the rendition of professional legal services to Plaintiffs;

b)      Plaintiffs' attorneys to Plaintiffs and/or their officials, employees, managers, or representatives for the purpose of providing and facilitating the rendition of professional legal services to Plaintiffs and/or which constitute and/or contain legal advice, legal opinions, legal conclusions, legal assessments, recommendations, thought processes, legal recommendations, and legal analysis by Plaintiffs' attorneys;

c)      Communications among and between Plaintiffs' attorneys containing legal advice and legal analysis and recommendations related to this litigation.

The confidential matters being withheld under this privilege include attorney notes, e-mails, faxes, communications and other matters reflecting meetings, communications, and conversations among Plaintiffs' attorneys and/or between Plaintiffs' attorneys and Plaintiffs' representatives, managers, and other personnel about the initiation, progress, approach, and development of this litigation, including legal advice and recommendations regarding same, information conveyed to Plaintiffs' attorneys for purposes of assessing the allegations against Defendants; and other matters concerning Defendants' asserted defenses.

**RESPONSE:** Subject to the foregoing objections and without waiver of same, the following answer is provided:

Plaintiffs refer Defendants' to all documents produced in *United States v. BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17, "19 Sea Turtle" labeled as Contents: NOAA Production Documents, including Images, Text, Narratives, and Load Files.

Please also See TVQR 00001 -

14. All documents related to any investigation conducted by you, performed on your behalf, or reviewed or relied on by you into alleged physical damage caused to your proprietary interests in your Complaint including, but not limited to, alleged damage to waters, estuaries, seabed, marine life, wildlife, plants, beaches, shorelines, coastlines, marshlands, and any other natural and economic resources. This includes, but is not limited to:

> (a) All documents related to toxicity thresholds, exposure time, dose-response information, toxicological effects levels, toxicity models, toxicity model assumptions and data inputs, toxicity mortality thresholds, immunotoxicological models and analyses, exposure assumptions, laboratory test results, biochemistry results, animal necropsy procedures and findings, veterinarian reports, chemical analyses, tests or observations.
> (b) All documents related to stochastic, statistical, or deterministic models and their assumptions, input values, uncertainty analyses related to a food-web analysis, resilience assumptions, including a conceptual-site model, the strength of food-web interactions and associations, and qualitative analysis, and computer simulations, ecological impact models, fate and exposure models or analyses, and population models for marine life to include but not limited to, turtles, phytoplankton, zooplankton, corals, all fish species, seabirds, cetaceans, marine mammals, and pelagic and coastal life forms within Mexican waters and/or your territorial boundaries.

**RESPONSE:** Subject to the foregoing objections and without waiver of same, the following answer is provided:

Plaintiffs refer to all documents produced in *United States v. BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17, "19 Sea Turtle" labeled as

Contents: NOAA Production Documents, including Images, Text, Narratives, and Load Files.

Please also See TVQR 00001 – 005136.

Plaintiffs will supplement through testimony and reports of experts.

15. All documents related to any claims of physical damage to your putative proprietary interests that are not alleged in your Complaint but that you intend to allege in the current proceedings including, but not limited to, alleged damage to waters, estuaries, seabed, marine life, wildlife, plants, beaches, shorelines, coastlines, marshlands, and any other natural and economic resources. This includes, but is not limited to:

    (a) All documents related to toxicity thresholds, exposure time, dose-response information, toxicological effects levels, toxicity models, toxicity model assumptions and data inputs, toxicity mortality thresholds, immunotoxicological models and analyses, exposure assumptions, laboratory test results, biochemistry results, animal necropsy procedures and findings, veterinarian reports, chemical analyses, tests or observations.

    (b) All documents related to stochastic, statistical, or deterministic models and their assumptions, input values, uncertainty analyses related to a food-web analysis, resilience assumptions, including a conceptual-site model, the strength of food-web interactions and associations, and qualitative analysis, and computer simulations, ecological impact models, fate and exposure models or analyses, and population models for marine life to include but not limited to, turtles, phytoplankton, zooplankton, corals, all fish species, seabirds, cetaceans, marine mammals, and pelagic and coastal life forms within Mexican waters and/or your territorial boundaries.

**RESPONSE:** Plaintiffs refer Defendants' to all documents produced in *United States v. BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced In Response to BP's 1ST Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17, "19 Sea Turtle" labeled as Contents: NOAA Production Documents, including Images, Text, Narratives, and Load Files.

Please also See TVQR 00001 – 005136.

Additionally Plaintiffs will supplement this response through their experts' reports and testimony.

16. All documents exchanged between and communications between you and the National Autonomous University of Mexico, the Metropolitan Autonomous University, the national Polytechnic Institute, the Center for Research and Advanced Studies of the National Polytechnic Institute, the State Autonomous University of Tamaulipas and/or the Mexican Institute of Ecology referring or relating to the movement or potential movement of oil following the *Deepwater Horizon* Incident and/or the alleged presence of oil in Mexican waters and/or your territorial boundaries originating from the *Deepwater Horizon* Incident.

**RESPONSE:** Documents responsive to this request are included in *United States v. BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17, "19 Sea Turtle" labeled as Contents: NOAA Production Documents, including Images, Text, Narratives, and Load Files.

Please also See TVQR 00001 – 005136.

17. All documents disclosed or reference in your Rule 26 initial disclosures.

Plaintiffs refer Defendants' to all documents produced in *United States v. BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17, "19 Sea Turtle" labeled as Contents: NOAA Production Documents, including Images, Text, Narratives, and Load Files.

Please also See TVQR 00001 – 005136.

18. All documents that you may use or seek to introduce into evidence or as exhibits in any proceeding, hearing, or deposition related to this targeted discovery.

**RESPONSE:** Plaintiffs refer Defendants' to all documents produced in *United States v. BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17,

"19 Sea Turtle" labeled as Contents: NOAA Production Documents, including Images,

Text, Narratives, and Load Files.

Please also See TVQR 00001 – 005136; Documents produced or disclosed by

Defendants'.

19. All documents that relate to any expert testimony or opinion, or have been considered by any expert witness that may testify on your behalf in any proceeding, hearing, or deposition related to this targeted discovery.

**RESPONSE:** Plaintiffs refer Defendants' to all documents produced in *United States v.*

*BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced

In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17,

"19 Sea Turtle" labeled as Contents: NOAA Production Documents, including Images,

Text, Narratives, and Load Files.

Please also See TVQR 00001 – 005136. Documents produced or disclosed by

Defendants'.

20. All documents which relate to the anticipated testimony of any person that you may call as a witness in any proceeding, hearing, or deposition related to this targeted discovery.

**RESPONSE:** Plaintiffs refer Defendants' to all documents produced in *United States v.*

*BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced

In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17,

"19 Sea Turtle" labeled as Contents: NOAA Production Documents, including Images,

Text, Narratives, and Load Files.

Please also See TVQR 00001 – 005136.

21. All documents identified in your responses to the Interrogatories below.

**RESPONSE:** Plaintiffs refer Defendants' to all documents produced in *United States v.*

*BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced

In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17,

"19 Sea Turtle" labeled as Contents: NOAA Production Documents, including Images,

Text, Narratives, and Load Files.

Please also See TVQR 00001 – 005136.

22. All documents that you consulted in responding to the Interrogatories below and/or that
provide support for your response to the Interrogatories.

**RESPONSE:** Plaintiffs refer Defendants' to all documents produced in *United States v.*

*BP Exploration*, Case No. 2:10-CV-04536-CJB-SS, including those documents produced

In Response to BP's 1st Request for Production, Volumes 01-10, 11, 12, 14, 15 16, 17,

"19 Sea Turtle" labeled as Contents: NOAA Production Documents, including Images,

Text, Narratives, and Load Files.

Please also See TVQR 00001 – 005136.

## SPECIFIC RESPONSES AND OBJECTIONS TO
## INTERROGATORIES

1. Identify with specificity the proprietary interests that you allege were physically damaged
due to the *Deepwater Horizon* Incident and how and when such alleged damage occurred.

**OBJECTIONS:** Plaintiffs object on the following separate and independent grounds:

1.      Plaintiffs object to this interrogatory to the extent that it seeks information of an

"expert" nature and/or which is within the knowledge and expertise of Plaintiffs' experts.

Said information will be provided through its experts and/or expert reports.

2.      Plaintiffs further object to this interrogatory on the grounds that it is unreasonably

burdensome, purporting to require Plaintiffs to marshall forward all of their evidence and

present all of their evidence in their response rather than at the trial of this matter.

**ANSWER:**    Subject to the foregoing objections and without waiver of same, Plaintiffs

respond as follows:

Plaintiffs have dominion over and own, control, manage, maintain, tax, economically

exploit and develop, restore and conduct reparations, regulate, use, and police their

shores, waterways, lagoons, bays, water ways, estuaries,  beaches, reefs, sea beds, and

waters extending into and comprising the Mexican Exclusive Economic Zone, including,

but not limited to, the marine life, fish, fauna, flora, amphibians including (all turtle

species), birds, mammals, wildlife, plankton, ichtplankton, zooplankton and all plankton

species, micro-organisms, and living species that inhabit, feed, reproduce, traverse, and

are otherwise found in the foregoing areas, locations, and geological features.

The government, residents, citizens, businesses, visitors, and others within the Plaintiff

states use, own, maintain, enjoy, develop, and economically exploit the natural resources,

fish, marine life, and areas (land and water) in the Mexican EEZ, the state territorial

waters, and other areas and sites along the coast of the states. Many businesses and

political subdivisions have been granted proprietary interests to develop, manage, lease,

own, control, repair, restore and enjoy the coastal areas. The legal instruments and

documents granting to the Plaintiff states, their businesses, residents, and citizens,

proprietary interests are listed and disclosed in Attachment 2-A of Plaintiffs' initial Rule

26 Disclosures.   Furthermore, for the legal basis, rights, and obligations see answer to

Interrogatory number #5.

Please see Articles 27, 40, 42, 43, 48, 73 Section XXIX-G, 115 Section V, Sub Section i, 116, Section VII, and 27 of the Political Constitution of the United Mexican States (the "Mexican Constitution"), Articles 120, 121, and 127 of the General Law of National Assets, Federal Law of Ecological Equilibrium and Protection of the Environment, articles 11 sections I through IX and 12 sections I through X, plus all of the coordination agreements, covenants, published laws, codified laws and decrees mentioned in Attachment 2-A of the Rule 26 initial Disclosures filed previously and other legal instruments mentioned. The interplay and interrelationship of the provisions and articles of the Mexican Constitution, statutes, concessions, agreements, coordination agreements, decrees, public published laws and public codified laws and other legal instruments giving rise to the described and State's Proprietary Interests will be provided through Plaintiff's legal experts.

Beginning on or about June 2010 and continuing thereafter (see by way of example ROFFS satellite images, summaries, and analysis, as well as NOAA's charts, graphs, analysis, pictures, videos, satellite images), superficial oil and dispersants from the Macondo well drifted into the areas over which Plaintiffs have dominion and which they own, control, manage, maintain, tax activities, economically exploit, develop, regulate, repair and use.

Beginning on or about October of  2010 and continuing thereafter, the plumes and dispersants from the Macondo well drifted into the areas over which Plaintiffs have dominion and which they own, control, manage, maintain, tax activities, repair, economically exploit, develop, regulate, and use.

Defendants' oil, dispersants, and plumes contaminated and physically damaged Plaintiffs' Proprietary Interests.  By way of example, Defendants' oil, dispersants and plumes, polluted, and physically damaged the quality of the waters and other above-referenced areas, causing great injury and physically damage to the fish, quality of the sea waters, marine life, turtles, dolphins, tuna, shrimp, oysters, plankton, flora, fauna, sediments, beaches, sands, lagoons, bays, estuaries and such physical damage which will continue long into the future.

Tar balls and weathered oil originating at the Macondo well washed ashore on the beaches of the Plaintiff Mexican states impacting and physically damaging Quintana Roo first and then Tamaulipas and Veracruz.

As a result of the oil spill, dispersants and plumes in the waters of the Mexican States, in June 2010 a bio-toxin was created and this bio-toxin has physically damaged and injured shallow water marine life in Tamaulipas and Veracruz.  By way of example, the aforesaid bio-toxin swept along the coasts of Tamaulipas and Veracruz and worked its way into the bio-systems including oyster beds located in the "Morales Lagoon" of La Pesca, Soto la Marina, Tamaulipas, the "Laguna Brasil" and "Laguna Rio Carrizales" in Altamira, Tamaulipas.  Such biotoxin is named Okadic Acid, which in the presence of a red tide, is produced by the Dinoflagellate Dinophysis sp.  This microorganism had never been seen in the Coasts of Tamaulipas and Veracruz in the past and it is directly caused by excess organic material from the Deepwater Horizon Oil Spill. The combined toxin and red tide contaminated and physically damaged the waters along the coast as well as the marine life, flora and fauna of Tamaulipas and Veracruz.

The entire Tamaulipas and Veracruz sea turtle population suffered tremendous losses, *i.e.* they were physically injured and they died.  As a particular example, the Ridley Marine Sea Turtle suffered a tremendous reduction in hatchings and returns, being killed by Defendants' oil and plumes.  In addition, more than 40 turtles that were tagged and followed by GPS that originate and start their journey from Rancho Nuevo, Tamaulipas were all killed or disappeared in the Louisiana and Alabama Coasts during the summer of 2010 as a result of the Macondo oil spill.  All of this has been confirmed by the NOAA and USA production in MDL-2179.

More specific answers on other aspects of the flora and fauna and affected species of the coastal areas, Mexican EEZ and Gulf of Mexico will be supplemented through upcoming fact and expert depositions.

2.  Describe how decisions regarding sampling of environmental media and wildlife were made, including but not limited to how and why decisions were made to begin and cease any sampling; how and why decisions were made to conduct or not conduct sampling in any particular location; how and why decisions on which wildlife types to sample were made; who was involved in the decisions concerning sampling; whether any pre-*Deepwater Horizon* Incident sampling strategies were used; and whether any procedures or protocols regarding sampling were drafted, developed, and/or implemented.

**OBJECTION**:

1.     Plaintiffs object on grounds of attorney client privilege and also assert their claim that the attorney-client privilege protects from discovery the information, records and materials sought by these requests. Plaintiffs assert that these requests and interrogatories seek post April 20, 2010 documents, records, information and other matters protected from discovery by the attorney-client privilege inasmuch as they seek discovery of documents, records, information and other matters which constitute and/or contain legal advice, legal opinions, legal conclusions, legal recommendations, and legal analysis by

Plaintiffs' attorneys and other information, records and materials which also constitute and/or contain confidential privileged communications among Plaintiffs' attorneys; and/or between Plaintiffs' attorney(s) and Plaintiffs and/or their officials, representatives, or employees which were made for the purpose of providing and facilitating the rendition of professional legal services to Plaintiffs. Therefore, such information and matters are protected by the attorney-client privilege.

2.      Post-April 20, 2010 information, documents, and materials responsive to this request are being withheld under a claim of attorney-client privilege.   The matters, records, documents, and information being withheld constitute and reflect confidential communications among Plaintiffs' attorneys and/or between Plaintiffs' attorneys and Plaintiffs' officials, representatives, employees, and managers that were made by:

a)      Plaintiffs' officials, representatives, employees, and managers to Plaintiffs' attorneys in order to provide information to said attorneys for the purpose of obtaining and facilitating the rendition of professional legal services to Plaintiffs;

b)      Plaintiffs' attorneys to Plaintiffs and/or their officials, employees, managers, or representatives for the purpose of providing and facilitating the rendition of professional legal services to Plaintiffs and/or which constitute and/or contain legal advice, legal opinions, legal conclusions, legal assessments, recommendations, thought processes, legal recommendations, and legal analysis by Plaintiffs' attorneys;

c)      Communications among and between Plaintiffs' attorneys containing legal advice and legal analysis and recommendations related to this litigation.

The confidential matters being withheld under this privilege include attorney notes, e-mails, faxes, communications and other matters reflecting meetings, communications,

and conversations among Plaintiffs' attorneys and/or between Plaintiffs' attorneys and Plaintiffs' representatives, managers, and other personnel about the initiation, progress, approach, and development of this litigation, including legal advice and recommendations regarding same, information conveyed to Plaintiffs' attorneys for purposes of assessing the allegations against Defendants; and other matters concerning Defendants' asserted defenses.

**ANSWER:**

The Governors of the States of Tamaulipas, Veracruz and Quintana Roo on or about early May 2010 and after reviewing NOAA and U.S. Coast Guard Reports and offshore oil projections assumed their constitutional and legal responsibilities and each created a Monitoring State Committee to follow, monitor, prepare, spend, police and oversee the advance of the Macondo oil spill into their territorial waters and shorelines. Particularly the State of Tamaulipas concurrently with the Republic of Mexico initiated the first phase of the MEXUS Plan and contacted their United States Coast Guard Counterparts.

Concurrently with the States the Mexican Federal Government immediately set up a Long Term Monitoring Plan in the Gulf of Mexico and the Mexican EEZ with the leading research institutions in the Gulf of Mexico (GOM), a general monitoring plan of the prevailing oceanographic conditions in the Mexican Exclusive Economic Zone (EEZ). The plan consisted in generating the Base Line Data Bank encompassing physical, chemical, biological, and geological oceanographic variables.

In order to organize the sampling effort in the Gulf Of Mexico Mexican EEZ, three research institutions assumed the responsibility of developing standard sampling procedures and protocols to ensure quality assurance and quality control in all the

29

operations conducted in three main sectors of the Mexican EEZ of the Gulf of Mexico: NW (Tamaulipas – northern Veracruz), Central Gulf (Deep Basin), and adjacent Yucatán Peninsula. Theses sub-regions were selected based on theoretical predictive dispersion models of hydrocarbon particles. The models indicated the most likely areas that Macondo's oil spill would impact.

The initial steps leading to the design of the general monitoring plan gave considerable weight to the recent knowledge on the oceanic surface and subsurface circulation in the Gulf of Mexico during different climatic conditions (northern winter storms – winter – summer). Currents patterns – directions and velocities- were considered in the sampling network proposed for the three referred sectors in the Gulf of Mexico.

The original monitoring plan implemented by the States and concurrently the Mexican Government contemplates a minimum of a 5 year duration with the purpose of detecting environmental changes affecting the ecosystem health of the Mexican EEZ of the Gulf of Mexico, during the oil spill, and after a long term period.

This response will be supplemented through the testimony and reports of Plaintiffs' experts.

3. Describe any oil fingerprinting or identification methods used to analyze tar balls and other oil residues collected in Mexican waters and/or your territorial boundaries and provide work plans, procedures, sampling and analysis plans, quality assurance plans, etc. associated with these fingerprinting methods.

**ANSWER:**

The $\delta^{13}C$ fingerprint of sediments and biota is obtained with the aid of a Mass Spectrometer Finnigan Delta Plus XL dual coupled to an elemental analyzer Flash 1112EA with an interphase Conflo III and an auto-analyzer A200S.

All stable isotope analyses ($\delta^{13}C$ & $\delta^{15}N$) are conducted at the Stable Isotope Laboratory of the Institute of Geology or independent laboratories and research facilities. The facilities are certified institutions in terms of quality assurance and quality controls by the IAEA. In addition the Mexican States have access to the following fingerprinting methods:

1) Aleksey Milkov and Changrui Gong presented the criteria used by British Petroleum to distinguish oil released from the Deepwater Horizon blowout from other sources of hydrocarbon contaminants in the Gulf of Mexico at the 2010 SETAC Meeting in Portland, Oregon. Based on their analysis 12 authentic un-weathered and 21 weathered MC-252 samples and application to 670 samples of oil collected following the incident. Plaintiffs through Joint Prosecution Confidential Agreement and MDL-2179 Protective Orders were given BP's fingerprint analysis. Furthermore, Plaintiff's have the MDL-2179 PSC's fingerprint analysis expert methods.

2) Advanced Chemical Fingerprinting and oil spill identification and natural resource damage assessments. Paul D. Bohem, Gregory S. Douglas, John S. Brown, Arthur D. Little, Inc., Acorn Park, Cambridge, Massachusetts.

3) Fingerprinting Criteria used or adopted by Plaintiff's Experts.

4) Fingerprinting Criteria used by Texas A&M Harte Research Institute.

5) Fingerprinting Criteria used by Woods Hole Oceanographic Institute.

This response will be supplemented through the testimony and reports of Plaintiffs' experts.

4. Describe the extent and nature of any interaction between you and other Mexican government entities, Mexican private entities, BP, United States federal or state agencies,

or United States private entities concerning the location of *Deepwater Horizon*-related oil, potential for movement of oil, and similar issues.

**ANSWER:**

Plaintiffs and representatives of the Republic of Mexico met in Mexico City on November 29, 2010.  The Republic of Mexico and the Plaintiffs agreed to cooperate with one another regarding the Deepwater Horizon Oil Spill, agreed to each pursue their independent causes of action against any party as a result of the Deepwater Horizon Oil Spill and further agreed to cooperate and share information.

The States of Tamaulipas as a party to the "MEXUS GOLF" attended the Conference held on Padre Island, Texas on April 25-26, 2012 with representatives from the Republic of Mexico.

Plaintiffs served a Subpoena to the United States of America on July 2012 requesting all of NOAA's documents regarding the Deepwater Horizon Oil Spill. Such responses have been identified in Requests for Production of Documents and have already been produced to all Defense Counsel in MDL-2179.

5. Identify any provision of the Mexican Constitution or of any statute, regulation, rule, or similar text that you contend supports the conclusion that you have a proprietary interest in any waters or natural resources touched by oil from the *Deepwater Horizon* Incident, and provide an accurate translation of same as well as an accurate translation of article 27 of the Mexican Constitution.

**OBJECTIONS:** Plaintiffs object on the following separate and independent grounds:

1)      Plaintiffs object to the request that Plaintiffs "provide an accurate translation" of the statutes, regulations, rules, and or similar texts inasmuch as this is an improper discovery request under the Federal Rules of Civil Procedure;

2)      Plaintiffs further object to the request that Plaintiffs "provide an accurate translation" of the statutes, regulations, rules, and or similar texts on the grounds that the

request that Plaintiffs translate the multitudinous documents is unduly burdensome and overly broad, requiring the overly burdensome expenditures of time, translating expenses, and resources.

3)      Plaintiffs further object to the request that Plaintiffs "provide an accurate translation" of the statutes, regulations, rules, and or similar texts on the grounds that Defendants are equally able to obtain translations of the documents and the burden and expense of Defendants doing so would be no greater on Defendants than it would be on Plaintiffs.

**ANSWER:** Subject to the foregoing objections and without waiver of same, Plaintiffs answer as follows:

Please see Articles 27, 40, 42, 43, 48, 73 Section XXIX-G, 115 Section V, Sub Section i, 116, Section VII, and 27 of the Political Constitution of the United Mexican States (the "Mexican Constitution"), Articles 120, 121, and 127 of the General Law of National Assets, Federal Law of Ecological Equilibrium and Protection of the Environment, articles 11 sections I through IX and 12 sections I through X, plus all of the coordination agreements, covenants, published laws, codified laws, decrees, and other legal instruments referenced in Attachment 2-A of the Plaintiffs' Rule 26 initial Disclosures filed previously, copies of which have been produced in the Mexican States Discovery Responses. The interplay, significance, and interrelationship of the provisions and articles of the Mexican Constitution, statutes, concessions, agreements, coordination agreements, decrees, public published laws and public codified laws and other legal instruments giving rise to the described and State's Proprietary Interests will be provided through

Plaintiff's legal experts. An English version of the Constitution of the Republic of Mexico has been produced in the Mexican States' Discovery Responses.

6. Identify and describe any definitions of the terms "Mexican waters" and "territorial boundaries" that you have relied upon to respond to the Defendants' Targeted Discovery Requests including identification of all legal authority contributing to such definitions.

**ANSWER:**

As used by Plaintiffs in answering these discovery requests, "Mexican waters" and "territorial boundaries" include, but are not limited to the boundaries delineated in the *Treaty on Maritime Boundaries between the United Mexican States and the United States of America* (as amended and supplemented) which delineates the Mexican and United States Exclusive Economic Zone of the Gulf of Mexico and extends inland to each of the Plaintiff's coasts and shores. The terms also include the beaches along the coasts of the States, bays, inlets, estuaries, lagoons, marshes and other water areas.

The interplay and interrelationship of the provisions and articles of the Mexican Constitution, statutes, concessions, agreements, decrees, public published laws and public codified laws and other legal instruments giving rise to the described and State's Proprietary Interests will be provided through Plaintiff's legal experts.

Attachment "2A" in Plaintiff's Initial Disclosures Identifies any and all documents responsive to this interrogatory and Plaintiff's Request for Production contains all of the documents responsive to this Interrogatory.

7. Describe any oil fingerprinting or identification methods supporting the conclusion that any of the oil observed in the Mexican waters and/or your territorial boundaries includes naturally occurring crude oil and/or crude oil from oil spills not originating from the *Deepwater Horizon* Incident.

**OBJECTIONS:** Plaintiffs object to this interrogatory on the following separate and independent grounds:

34

1.      Plaintiffs object to this interrogatory to the extent that it seeks information of an "expert" nature and/or which is within the knowledge and expertise of Plaintiffs' experts. Said information will be provided through its experts and/or expert reports.

2.      The linguistic and grammatical structure of this Interrogatory is inartful and convoluted, creating ambiguity, vagueness, and confusion as to what information it seeks, thus rendering it unintelligible and precluding Plaintiffs from ascertaining its intent and the information it seeks.

3.      Plaintiffs object to this Interrogatory on the grounds that it is so vague and ambiguous that it precludes Plaintiffs from ascertaining what information it is being asked to answer because of its use of the term "any of the oil" without any description or limitation as to the person observing "the oil," circumstances of the observation, and/or the amount, characteristics, type, location, or nature of the "oil" that was observed.

4.      Plaintiffs object on the grounds that this interrogatory erroneously assumes that there is any support for any conclusion that any of the oil observed in Mexican waters and/or territorial boundaries includes naturally occurring crude oil or from oil spills not originating from the Deepwater Horizon incident.

**ANSWER:**

Subject to the foregoing objections and without waiver of same Plaintiffs answer as follows:  See answer to Interrogatory Number 3.

8.  If you deny any of the following Requests for Admission, please identify the facts and opinion upon which you relied in providing such answer.

**ANSWER:**

Please see the specific responses to each of the Requests for Admissions.

### SPECIFIC OBJECTIONS AND RESPONSES TO

35

## REQUESTS FOR ADMISSION

1. Admit that without fingerprinting or other similar testing methods, it is not possible to identify whether or not any particular oil observed in Mexican waters and/or your territorial boundaries originated from the *Deepwater Horizon* Incident.

   **OBJECTIONS:**  Plaintiffs object on the following separate and independent grounds:

   Plaintiffs object to this Request for Admission on the grounds that it is so vague and ambiguous that it precludes Plaintiffs from ascertaining what information it is being asked to admit or deny because of its use of the term "any particular oil observed" without any description or limitation as to the person observing "the oil," circumstances of the observation, and/or the amount, characteristics, type, location, or nature of the "oil" that was observed.

   **ANSWER:**

   Denied.   Whether or not any particular oil originated from the Deepwater Horizon incident can also be determined through various other means of tracking from the source to destinations such as satellite imagery, spectrographic imagery, surface and sub-surface modeling, visual sightings, hydrodynamic modeling, forecasts and or physical observations, analyzing contaminated fauna and flora, and/or other means.

2. Admit that any oil observed in the Mexican waters and/or your territorial boundaries post-April 20, 2010, may include naturally occurring crude oil and/or crude oil not originating from the *Deepwater Horizon* Incident.

   **OBJECTIONS:**  Plaintiffs object on the following separate and independent grounds:

   Plaintiffs object to this Request for Admission on the grounds that it is so vague and ambiguous that it precludes Plaintiffs from ascertaining what information it is being asked to admit or deny because of its use of the term "any oil observed" without any description or limitation as to the person observing "the oil," circumstances of the

36

observation, and/or the amount, characteristics, type, location, or nature of the "oil" that was observed.

**ANSWER:**

Denied.  Although Plaintiffs admit that there are natural seepages of oil in the Mexican EEZ of the Gulf of Mexico and there were isolated, regional limited oil discharges from Pemex in 2011 and 2012, the oil observations and damages upon which Plaintiffs rely herein do not include oil, dispersants or plumes from any other than Deepwater Horizon Macondo Oil Spill.



## <u>VERIFICATION</u>

I, ____ Salvador Treviño Garza a representative from the State of Tamaulipas, having undertaken a reasonable inquiry under the circumstances into the process by which the foregoing responses to interrogatories were compiled, hereby certify, under penalty of perjury, that, to the best of my knowledge, information, and belief, the foregoing responses to interrogatories accurately reflect the information available to the State of Tamaulipas as specified therein.

Signature: _____

Name:

Date:

STATE OF TEXAS            §

COUNTY OF BEXAR         §

Sworn and ascribed to before me
This 24th of August, 2012


NOTARY PUBLIC



NORMA L. KEAMMERER
Notary Public, State of Texas
My Commission Expires
December 14, 2013

Secretaría de Desarrollo Urbano y Medio Ambiente
Centro Gubernamental de OficinasParque Bicentenario piso 16
Prolongación Boulevard Praxedis Balboa y Libramiento Naciones Unidas
C.P. 87083 Cd. Victoria, Tam.
seduma@tamaulipas.gob.mx
Tel. (834) 1078291 Fax 1078285

Página 1

## VERIFICATION

I, Raul Omar Gonzales Castilla a representative from the State of Quintana Roo, having undertaken a reasonable inquiry under the circumstances into the process by which the foregoing responses to interrogatories were compiled, hereby certify, under penalty of perjury, that, to the best of my knowledge, information, and belief, the foregoing responses to interrogatories accurately reflect the information available to the State of Quintana Roo as specified therein.

Signature: _Pulse_

Name: Raul Omar Gonzáles Castilla

Date: 24th / August / 2012

STATE OF TEXAS            §

COUNTY OF BEXAR           §

Sworn and ascribed to before me
This 24th of August, 2012

_Norma L. Keammerer_
NOTARY PUBLIC



NORMA L. KEAMMERER
Notary Public, State of Texas
My Commission Expires
December 14, 2013

## VERIFICATION

I, Salvador Mikel Rivera a representative from the State of Veracruz, having undertaken a reasonable inquiry under the circumstances into the process by which the foregoing responses to interrogatories were compiled, hereby certify, under penalty of perjury, that, to the best of my knowledge, information, and belief, the foregoing responses to interrogatories accurately reflect the information available to the State of Veracruz as specified therein.

Signature:

Name: Salvador Mikel Rivera

Date: 24 of August, 2012

STATE OF TEXAS            §

COUNTY OF BEXAR        §

Sworn and ascribed to before me
This 24th of August, 2012

NOTARY PUBLIC

NORMA L. KEAMMERER
Notary Public, State of Texas
My Commission Expires
December 14, 2013

Dated:  August 24, 2012

Respectfully Submitted,

**SERNA & ASSOCIATES PLLC**

By:

**/s/ Enrique G. Serna**
**Enrique G. Serna, Esq.**
SBOT 00789617
20985 IH 10 West
Serna Building
San Antonio, Texas 78257
(210) 2280095 – Telephone
(210) 2280839 – Facsimile

## CERTIFICATE OF SERVICE

I hereby Certify that the above and foregoing pleading **PLAINTIFFS' OBJECTIONS AND ANSWERS TO DEFENDANTS TARGETED DISCOVERY REQUESTS**, has been served on All Counsel by e-mail and by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No.12, in accordance with the procedures established in MDL 2179, this the 24 day of August, 2012.

/s/ Enrique G. Serna
Enrique G. Serna