UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010<br><br>Applies to:<br><br>Bundle B1 Cases | §<br>§<br>§<br>§<br>§<br>§ | MDL NO. 2179<br>SECTION: J<br>JUDGE BARBIER<br>MAGISTRATE SHUSHAN |

**REPLY IN SUPPORT OF DEFENDANTS HALLIBURTON ENERGY SERVICES, INC., TRANSOCEAN, AND M-I L.L.C.'S MOTIONS TO DISMISS PLAINTIFFS' PURE STIGMA AND RECREATION CLAIMS**

Defendants Halliburton Energy Services, Inc. ("HESI"), Transocean, and M-I L.L.C. ("M-I") respectfully submit this Reply in Support of their Motion to Dismiss Plaintiffs' Pure Stigma Claims (Dkt. 6891) and Plaintiffs' Recreation Claims (Dkt. 6889) in Plaintiffs' First Amended Bundle B1 Master Complaint ("B1 Master Complaint") and show as follows:

**INTRODUCTION**

In response to Defendants' Motion to Dismiss Pure Stigma Claims (Dkt. 6891),[1] the PSC acknowledges that this Court's B1 Order and Reasons (Dkt. 3830) ("Order and Reasons"), dismissed Plaintiffs' state law claims and general maritime law claims that do not allege physical damage to a proprietary interest. (Dkt. 7095 at 2). It further concedes that "OPA provides the only potential cause of action for such claims" and that HESI, Transocean, and M-I are not liable for OPA damages specified in §§ 2702(b)(2)(B) or 2702(b)(2)(E). *Id.* at 2, n. 2. Likewise, in response to Defendants' Motion to Dismiss Recreation Claims (Dkt. 6889) (together the "Defendants' Motions to Dismiss"), the PSC does not dispute that the Recreation Claims against HESI, Transocean, and M-I should be dismissed. *See* (Dkt. 7094). Rather, the PSC contends only that the Recreation Claims could be compensable under OPA against BP. *See id.*

---

[1] The Motions to Dismiss Pure Stigma Claims (Dkt. 6891) and Recreation Claims (Dkt. 6889) were filed jointly by Defendants HESI, Transocean, and M-I.

1

Despite the PSC's positions on these issues, other Plaintiffs separately responded to HESI's Motions to Dismiss. (Dkt. 7099, the "Opposition"). In the Opposition, Plaintiffs assert positions inconsistent with those set forth in this Court's Order and Reasons. Defendants address the Opposition in this Reply.

The Plaintiffs' Pure Stigma and Recreation Claims arise from the *Deepwater Horizon* incident (the "Incident") and fall firmly within this Court's admiralty jurisdiction. They are therefore governed by maritime, not state law. Even claims for shore-based damages are governed by maritime law by virtue of the Admiralty Extension Act. *See* Order and Reasons at 8. Moreover, because they seek oil-spill related damages, such maritime claims are displaced by the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701-2720, *et seq.* ("OPA"), the federal statute that Congress intended to provide the exclusive federal remedy for oil-spill related damages.

## SUMMARY OF REPLY ARGUMENTS

In their Opposition, Plaintiffs assert numerous arguments against the viability of the economic loss rule and against its applicability to Pure Stigma and Recreation Claims. Specifically, Plaintiffs contend that the economic loss rule is inapplicable to certain of the Pure Stigma Claims because there is no admiralty jurisdiction over those claims. In support, Plaintiffs cite several Fifth Circuit cases, including *Sohyde* and *Kelly*, whose admiralty jurisdiction tests the United States Supreme Court expressly rejected in favor of the test adopted in *Grubart*. Under *Grubart*, admiralty jurisdiction attaches to this case. Further, the Admiralty Extension Act extends admiralty jurisdiction to cover injuries incurred on land but caused by a vessel in navigable waters. Accordingly, maritime law governs the claims in the B1 Master Complaint, and Plaintiffs have no state law claims.

2

Plaintiffs alternatively attempt to avoid the *Robins Dry Dock* rule by asserting that they have alleged intentional torts to which the rule does not apply. However, the B1 Master Complaint cannot be construed as bringing intentional tort claims against HESI, Transocean, or M-I and, therefore, the economic loss rule bars Plaintiffs' general maritime law claims for purely economic damages unaccompanied by physical injury to a proprietary interest.

Further, the Court should reject Plaintiffs' invitation to adopt and expand the commercial fisherman exception to the economic loss rule because the rationale for such an exception does not apply to recreational boaters, fishermen, divers and waterfront property owners. Moreover, Plaintiffs cite no case law or binding authority for their proposition that a 1986 CERCLA amendment overruled the economic loss rule. Courts, including this one, have continued to apply the economic loss rule in the years since that amendment.

Plaintiffs' argument that they can bring a CERCLA claim against HESI, Transocean, and M-I, notwithstanding CERCLA's exclusion of petroleum from its list of hazardous substances, must likewise be rejected because Plaintiffs have not asserted a CERCLA claim against any Defendant in this case. In any event, the B1 Master Complaint allegations do not support a finding that Defendants HESI and/or M-I meet CERCLA's definition of liable owners and operators.

In addition, because there are no state law claims to "save," OPA's state law savings clause is unavailing to Plaintiffs and the Court should reject their argument to the contrary. OPA provides the sole remedy for the damages they allege, if any remedy is available at all.

Finally, because Plaintiffs have not asserted cognizable claims for compensatory damages, as a matter of law they cannot recover punitive damages.

# ARGUMENT

## I.  PLAINTIFFS HAVE NO OPA CLAIM AGAINST HESI, TRANSOCEAN, OR M-I.

Plaintiffs contend in their Opposition that OPA provides a remedy for their Pure Stigma Claims without identifying the Defendant(s) against whom they assert OPA claims. Opposition at 7-10. Plaintiffs fail to acknowledge that the B1 Master Complaint does not include an OPA claim against HESI or M-I. *Compare id.* with B1 Master Complaint at ¶¶ 678-690. The PSC has acknowledged that HESI and M-I are not liable under OPA because they are not OPA responsible parties. *See* Dkt. 7095 at n 2. And Transocean cannot be liable for Plaintiffs' alleged economic damages under OPA because, as the PSC concedes, it is only an OPA responsible party with respect to the diesel fuel that spilled from the *Deepwater Horizon* itself.[2] Dkt. 7095 n.2. Accordingly, to the extent Plaintiffs claim direct OPA responsibility against HESI, Transocean, and M-I, the Court should reject those claims.

## II.  FEDERAL MARITIME LAW GOVERNS PLAINTIFFS' CLAIMS.

### A.  Maritime Law, Not State Law, Governs Plaintiffs' Pure Stigma and Recreation Claims.

In an attempt to avoid application of general maritime law's economic loss rule, Plaintiffs contend their claims are not subject to admiralty jurisdiction. More specifically, Plaintiffs argue that the B1 Master Complaint allegations do not satisfy admiralty jurisdiction's "connection" test set forth in *Exec. Jet Aviation v. City of Cleveland,* 409 U.S. 249 (1972). Opposition at 20-21.[3] Plaintiffs propose application of a four-factor test to determine the existence of the substantial

---

[2] For purposes of this Reply, neither HESI nor M-I takes a position regarding whether Transocean is an OPA responsible party or regarding the distinction between surface versus sub-surface release.

[3] The PSC designated the B1 Master Complaint as "an admiralty or maritime case as provided in Rule 9(h)(1) of the Federal Rules of Civil Procedure[.]" B1 Master Complaint at 46. The PSC further conceded that, in general, "with admiralty jurisdiction comes the application of substantive admiralty law." Opposition at 25 (quoting *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 865 (1986)).

4

maritime relationship required to invoke admiralty jurisdiction. Opposition at 20-21 (citing *Kelly v. Smith,* 485 F.2d 520, 525 (5th Cir. 1973). However, the Supreme Court in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 545-46 (1995) specifically rejected an invitation to employ the *Kelly* four-factor test. This Court should likewise decline to analyze the existence of a maritime nexus through the lens of the abrogated *Kelly* four-factor test.

Rather, this Court should reaffirm the two-part *Grubart* connection test which this Court properly applied in its Order and Reasons. Under this analysis, a court must first "'assess the general features of the type of incident involved' to determine whether the incident has 'a potentially disruptive impact on maritime commerce.'" *Grubart,* 513 U.S. at 534 (quoting *Sisson v. Ruby,* 497 U.S. 358, 364, n. 2 (1990) (citations omitted)). Second, "a court must determine whether the 'general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Id.* (citing *Sisson,* 497 U.S. at 364, 365, and n.2). This Court correctly found that "there is no question that the explosion and resulting spill caused a disruption of maritime commerce" and that "the operations of the DEEPWATER HORIZON bore a substantial relationship to traditional maritime activity." Order and Reasons at 8 (citing *Theriot v. Bay Drilling Corp.,* 783 F.2d 527, 538-39 (5th Cir. 1986)). Accordingly, the Court should decline Plaintiffs' invitation to employ a jurisdictional test that the Supreme Court explicitly rejected.

> **B.     The Admiralty Extension Act Extends Admiralty Jurisdiction To Plaintiffs' Pure Stigma Claims.**

In the Opposition, Plaintiffs argue that maritime law does not govern the Pure Stigma Claims because the losses alleged were incurred on land, not on navigable water. Opposition at 19. Without citing any supporting case law, Plaintiffs contend that the Admiralty Extension Act

5

only extends admiralty jurisdiction to land-based injuries if those injuries involve harm to a person or physical injury to property. *Id.* at 19-20.

Relevant and binding case law belies Plaintiffs' argument. In *State of Louisiana v. M/V TESTBANK,* 752 F.2d 1019, 1020, 1031 (5th Cir. 1985), the Fifth Circuit found that the Admiralty Extension Act vested it with admiralty jurisdiction over economic damage claims arising out of a collision between a bulk carrier and a container ship in the Mississippi river. Like Plaintiffs here, many of the plaintiffs in *M/V TESTBANK*, including wholesale and retail seafood enterprises, seafood restaurants, and tackle and bait shops, alleged land-based damages resulting from the collision. *Id.* at 1020-21. Likewise, in *Dunham-Price Grp., L.L.C. v. Port Aggregates, Inc.,* 2006 U.S. Dist LEXIS 55285 (W.D. La. July 26, 2006), the court cited the Admiralty Extension Act as a basis of its admiralty jurisdiction over economic damage claims arising from interference with the plaintiff's shore-based docking facility. Thus, the Admiralty Extension Act is not restricted as Plaintiffs argue. Instead, it provides a basis for admiralty jurisdiction over the Pure Stigma and Recreation Claims, and maritime law applies to these claims to the exclusion of state law. *E. River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 865 (1986) (noting that "with admiralty jurisdiction comes the application of substantive admiralty law").

### C. OPA's Savings Clause Cannot Preserve a Non-Existent State Law Claim.

In a one-sentence argument, Plaintiffs assert, without citation to authority, that this "Court recognized in the B1 Order [that] the OPA preserves state law claims." Opposition at 22. In fact, the Court specifically rejected that contention. Order and Reasons at 14-15 ("Plaintiffs' contention that OPA's savings provisions preserves its state-law claims is also unavailing"). Moreover, the Court found that "state law is inapplicable to this case." *Id.* at 18. Accordingly,

6

the Court should reject Plaintiffs' argument that their non-existent state law claims are somehow preserved by operation of OPA's savings clause.

### D. Maritime Law's Economic Loss Rule Precludes Plaintiffs' Pure Stigma and Recreation Claims.

Maritime law's economic loss rule was first recognized in *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927) and followed in the Fifth Circuit by *State ex rel Guste v. M/V TESTBANK,* 752 F.2d 1019 (5th Cir. 1985) (*en banc*). The rule provides that maritime law does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit. *See In re Taira Lynn Marine Ltd. No. 5, LLC,* 444 F.3d 371, 377 (5th Cir. 2006); *see also Reserve Mooring, Inc. v. Am. Commercial Barge Line, LLC*, 251 F.3d 1069, 1072 (5th Cir. 2001) ("[P]hysical injury to a proprietary interest is a prerequisite to recovery of economic damage in cases of unintentional maritime tort."). In an attempt to avoid operation of the economic loss rule, Plaintiffs contend that they have pleaded intentional torts in the B1 Master Complaint.[4] Specifically, Plaintiffs maintain that the allegations of willful misconduct in the B1 Master Complaint amount to an allegation of an intentional tort. This contention is contrary to the Supreme Court's guidance that "intentional torts . . ., as distinguished from negligent or reckless torts, generally require that the actor intend the *consequences* of an act, not simply the act itself." *Staub v. Proctor Hosp.,* 131 S. Ct. 1180, 1191 (2011). The B1 Master Complaint contains no allegation that any Defendant intended the consequences that resulted from the blowout and oil spill. *See* B1 Master Complaint at ¶¶ 628-636 (describing a claim for

---

[4] Plaintiffs cite a complaint filed separately in this Court, No. 11-925. This Court's briefing order (Dkt. 6657) (the "Order") relates exclusively to the B1 Master Complaint claims, with the possible exception of *Tobatex, Inc. v. BP, plc* (Case No. 10-4573), which the Court mentions specifically in the Order. This Reply does not address the allegations in Case No. 11-925. Defendants do not waive any arguments they may have in favor of dismissing those claims in the future.

7

"Gross Negligence and Willful Misconduct").  Accordingly, Plaintiffs' attempt to avoid the economic loss rule by claiming an exception for intentional torts should be rejected.

Likewise, Plaintiffs cite no controlling authority for their "suggest[ion]" that a 1986 amendment to CERCLA, codified at 42 U.S.C. § 9607(h), abrogates the economic loss rule. Opposition at 15-17.  Moreover, the Fifth Circuit has consistently continued to apply the economic loss rule in the 26 years since that amendment was enacted.  *See Matheisen v. M/V Obelix,* 817 F.2d 345, 346-47 (5th Cir. 1987) (affirming a district court ruling on the basis of the economic loss rule); *Catalyst Old River Hydroelectric Ltd. v. Ingram Barge Co.,* 639 F.3d 207, 210 (5th Cir. 2011) (confirming that "[i]t is well settled under the general maritime law that there can be no recovery for economic loss absent physical damage to or an invasion of a proprietary interest").  Thus, binding precedent establishes the viability of the economic loss rule and its application to Plaintiffs' Pure Stigma and Recreation Claims, and this Court should reject Plaintiffs' suggestion that CERCLA implicitly overruled a well-developed line of Supreme Court precedent directly applicable to the present situation.

Moreover, the CERCLA amendment upon which Plaintiffs rely fails to offer them any protection because Plaintiffs have not alleged a CERCLA claim against any defendant.[5]  And even if Plaintiffs made CERCLA claims, the plain text of § 9607(h) shows that such claims would apply only to "[t]he owner or operator of a vessel."  42 U.S.C. § 9607(h) ("The owner or operator of a vessel shall be liable in accordance with this section . . . .").  As neither HESI nor M-I was an owner or operator of the *Deepwater Horizon*, § 9607(h) is inapplicable to HESI and

---

[5] *See* Omnibus Mem. of Law in Opp. to Defs.' Mots. to Dismiss Bundle B1 First Amended Master Compl., Cross-Claim, and Third-Party Compl., ECF. 1821 at 75 (Mar. 30. 2011) ("Plaintiffs, of course, have asserted no claims under CERCLA in their Amended B1 Master Complaint with respect to property damages and economic losses arising from the *Deepwater Horizon* blow out and resulting Spill.").

M-I and cannot form the basis of any potential CERCLA claim.  Thus, the Court should reject Plaintiffs' contention that they may have a CERCLA claim against HESI or M-I.

In their final effort to avoid dismissal of their claims, Plaintiffs ask this Court to create an exception to the economic loss rule for "recreational boaters, fishermen, divers, and waterfront property owners." Opposition at 12.  Plaintiffs correctly assert that some courts have recognized an exception to the economic loss rule for commercial fishermen. Opposition at 12 (citing *La. v. M/V TESTBANK,* 524 F.Supp. 1170, 1173 (E.D. La. 1981).  In *M/V TESTBANK,* this Court provided that "in those instances where plaintiff fishermen have established a course of business conduct which makes commercial use of a public right with which the defendant interferes, pecuniary losses may be recoverable."[6] *Id.* at 1173.  Assuming the viability of the commercial fisherman exception, the rationale for the exception is plainly inapplicable to fishermen, boaters, and divers who use the Gulf of Mexico for *recreational* purposes and to waterfront property owners.  *See Union Oil Co. v. Oppen,* 501 F.2d 558, 570 (9th Cir. 1974) (recognizing the claims of commercial fishermen as "pecuniary loss of a particular and special nature" and specifically declining to "open the door to claims that may be asserted by those, other than commercial fishermen, whose economic or personal affairs were discommoded by the oil spill").  Even the cases that recognize the commercial fishermen exception have strictly circumscribed the exception's scope such that those cases provide no support for Plaintiffs' proposed expansion.

The economic loss rule therefore operates to preclude Plaintiffs' general maritime Pure Stigma and Recreation Claims because those claims seek purely economic damages in the absence of any allegations of physical injury to a proprietary interest.  This Court should dismiss those claims against HESI, Transocean, and M-I.

---

[6] The Fifth Circuit has never recognized this exception.  *See M/V TESTBANK*, 752 F.2d at 1027.

### E. Plaintiffs Cannot Recover Punitive Damages.

OPA provides Plaintiffs' sole remedy, if any exists, for the purely economic damages that form the basis of Plaintiffs' claims. Such a claim must be brought against an OPA responsible party.[7] HESI, Transocean, and M-I are not liable under OPA for Plaintiffs' alleged economic damages. *See supra* Part I. Because Plaintiffs have no OPA claims against these Defendants, Plaintiffs cannot maintain a claim for punitive damages because, as the court noted in *S. Port Marine v. Gulf Oil Ltd P'ship,* 234 F.3d 58, 64 (1st Cir. 2000), Plaintiffs' assertion of punitive damages "must relate to some separate cause of action which permits recovery of punitive damages." In other words, "a claim for punitive damages is not by itself an independent tort." *Allen v. R & H Oil and Gas Co.,* 63 F.3d 1326, 1333 (5th Cir. 1995). Accordingly, this Court should reject Plaintiffs' claim for punitive damages against HESI, Transocean, and M-I.

## CONCLUSION

For the reasons set forth above and in Defendants' Memoranda in Support of their Motions to Dismiss the Pure Stigma and Recreation Claims, Plaintiffs have failed to plead viable claims as a matter of law. Pursuant to Rule 12(b)(6), the Court, therefore, should dismiss Plaintiffs' claims against HESI, Transocean, and M-I in their entirety.

Dated: August 31, 2012

---

[7] *See* 33 U.S.C. §§ 2701(32) (defining "responsible party" of "vessels" and "offshore facilities") and 2702 (describing the liability of "responsible parties").

Respectfully submitted,

**GODWIN RONQUILLO PC**

**By:** /s/ *Donald E. Godwin*
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
DGodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
BBowman@GodwinRonquillo.com
Jenny L. Martinez
State Bar No. 24013109
JMartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
FHartley@GodwinRonquillo.com
Gavin E. Hill
State Bar No.  00796756
GHill@GodwinRonquillo.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

and

R. Alan York
State Bar No. 22167500
AYork@GodwinRonquillo.com
Misty Hataway-Coné
State Bar No.  24032277
MCone@GodwinRonquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone:  713.595.8300
Facsimile:  713.425.7594

**ATTORNEYS FOR DEFENDANT HALLIBURTON ENERGY SERVICES, INC.**

11

Respectfully submitted,

By: /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
E-:mail: steven.roberts@sutherland.com,
Rachel.clingman@sutherland.com

-and-

By: /s/ Edwin G. Preis, Jr.
Edward G. Preis, Jr. (Louisiana, No. 10703)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com

**Of Counsel:**

John M. Elsley (Texas, No. 0591950
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-9380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

**ATTORNEYS FOR DEFENDANTS TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC., TRANSOCEAN DEEPWATER INC., TRITON ASSET LEASING GmbH, AND TRANSOCEAN HOLDINGS LLC**

By: /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com

-and-

By: /s/ Brad D. Brian
Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 54933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com,
allen.katz@moto.com

**ATTORNEYS FOR DEFENDANTS TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC., TRANSOCEAN DEEPWATER INC., TRITON ASSET LEASING GmbH, AND TRANSOCEAN HOLDINGS LLC**

12

1973927 v4-24010/0002 PLEADINGS

Respectfully submitted,

| | |
|---|---|
| **OF COUNSEL:**<br>MORGAN, LEWIS & BOCKIUS LLP | MORGAN, LEWIS & BOCKIUS LLP |
| Derek E. Leon<br>dleon@morganlewis.com<br>Texas Bar No. 24002463<br>5300 Wachovia Financial Center<br>200 South Biscayne Boulevard<br>Miami, Florida  33131<br>Telephone:  (305) 415-3000<br>Facsimile:  (305) 415-3001 | By: /s/ Hugh E. Tanner<br>     Hugh E. Tanner<br>     htanner@morganlewis.com<br>     Texas Bar No. 19637400<br>     1000 Louisiana, Suite 4000<br>     Houston, Texas  77002<br>     Telephone:  (713) 890-5000<br>     Facsimile:  (713) 890-5001 |
| Denise Scofield<br>dscofield@morganlewis.com<br>Texas Bar No. 00784934<br>1000 Louisiana, Suite 4000<br>Houston, Texas  77002<br>Telephone:  (713) 890-5000<br>Facsimile:  (713) 890-5001 | **ATTORNEYS FOR DEFENDANT<br>M-I L.L.C.** |
| **ATTORNEYS FOR DEFENDANT<br>M-I L.L.C.** | |

1973927 v4-24010/0002 PLEADINGS

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply in Support of Defendants' Motion to Dismiss Pure Stigma and Recreation Claims has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this 31st day of August, 2012.

/s/ Donald E. Godwin
Donald E. Godwin