UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Settlement of the Economic and Property Damages Classes Oil Spill Litigation Related to the "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010 | * * * * * | MDL NO.  2179<br><br>JUDGE BARBIER<br>MAG. JUDGE SHUSHAN |
| Actions in B1 Pleading Bundle, and 12-970, Bon Secour Fisheries, Inc., et al v. BP Exploration & Production, Inc., et al (REF:  10-7777) | * * * * * | OMNIBUS OBJECTION TO DEEPWATER HORIZON SETTLEMENT AGREEMENT |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### CITY OF ST. PETE BEACH  AND THE CITY OF TREASURE ISLAND'S RESPONSE TO BRITISH PETROLEUM'S MEMORANDUM IN SUPPORT OF FINAL APPROVAL

City of St. Pete Beach and the City of Treasure Island, separate entities and political subdivisions of the State of Florida, on behalf of themselves, are not a party to the proposed Economic and Property Damages Settlement or the Medical Benefits Settlement (herein after sometimes "PSA").  City of St. Pete Beach and the City of Treasure Island have made a qualified and limited appearance in MDL 2179 with outstanding claims against BP.  They, therefore, have a great interest in BP's one-sided commentary on the factual and legal issues that may be tried against BP at the January 14, 2013 trial and how this Court responds to BP's arguments in its fairness ruling.

City of St. Pete Beach and the City of Treasure Island file this response for several reasons.  First, in the interests of the non-settling Plaintiffs, we respectfully ask this Court not to include any factual findings and to minimize any commentary on the factual evidence, regarding

BP's liability to the Plaintiffs for compensatory and/or punitive damages.  Second, we expressly reserve our right to rebut BP's factual and legal commentary at the appropriate time(s).

## BP'S SELF SERVING PLEADINGS

1.  *The Reed Factors:*  This Court is bound to apply the Reed Factors.  The Court must weigh the "probability of plaintiff's success on the merits" and their "range of possible recovery" as part of its fairness hearing, *Reed v Gen. Motors Corp.,* 703 F.2d 170 (5th Cir. 1983) and thus the settling parties' ability to comment on these factors.[1]  City of St. Pete Beach and the City of Treasure Island objects to BP's manipulations of these *Reed* factors, which favor minimizing the Plaintiffs' case, to try its case in motion papers to which BP claims that the non-settling Plaintiffs cannot object.

Citing these *Reed*  factors, BP claims that "[a]t any Limitation and Liability Trial, the record evidence—based upon the extensive pre-trial discovery and expert reports—would establish the following," Doc. 7114-1 at 57, and then tells its 18-page tale, backed by cherry-picked depo cuts and caselaw.  *Id.* at 57-76.  Class counsel understandably offers none of the overwhelming evidence against BP to balance the story.  *See* Doc. 7101-2 (Plaintiffs' memorandum in support).

City of St. Pete Beach and the City of Treasure Island rejects BP's self serving and conclusory version of what the law and facts "would establish."  *Id.*  BP is plainly wrong and utterly presumptuous in its assertion that "at any trial, BP would establish that its conduct did not

---

[1] See also *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S., 131 S. Ct. 2541, No. 10-277, slip op. 8 (2011)*; Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997);

constitute gross negligence or willful misconduct." *Id.* at 63.  This misstatement is at odds with the facts as developed by the extensive public record and law. [2]

2.     *BP's Punitive Conduct:*   Phase One evidence, as outlined in the United States' response to BP's Memo, will most likely establish that BP acted with gross negligence and/or with willful misconduct leading up to the blowout.  There is no need to repeat the position of the United States but City of St. Pete Beach and the City of Treasure Island respectfully adopts it as if set forth fully herein.

BP ignores the Plaintiffs' Phase Two punitive claims, for which discovery is still ongoing.  We anticipate that the evidence will establish that BP misrepresented due to gross negligence, BP was wholly unprepared to respond to the known risks of a subsea blowout. [3] We also intend to prove that BP misrepresented to the federal government and the public that the flow rate was 5,000 bpd, while having knowledge that the flow rate was *significantly* higher.  At the same time, BP proceeded with the "top kill" method, even though BP knew that (a) a top kill risked well integrity and thus further delay or permanent damage, (b) a top kill would be unsuccessful at 15,000 bpd or greater, and (c) the flow rate was far greater than 15,000 bpd.[4] BP's election of the risky top kill, which BP knew it knew full well was predestined to fail, amounted to willful misconduct that delayed the capping of the well by several weeks—weeks in which an additional 1+ million barrels of oil unnecessarily entered the Gulf.

---

[2] City of St. Pete Beach and the City of Treasure Island notes, but offers no further comment on, class counsel's failure to disagree with this and many other statements made by BP.

[3] BP has admitted that it spent $0 researching, testing, designing, building, or planning any of these source control methods for a subsea deepwater blowout before April 20, 1010: 2-ram capping stack, 3-ram capping stack, BOP-on- BOP, cofferdam, top hat, top kill, junk shot, and riser insertion tube tool.  *See* BP Parties' Responses and Objections to Plaintiffs' Requests for Admissions to the BP Defendants, served on Aug. 21, 2012.

[4] In fact, we anticipate that the evidence will establish that the contractors performing the Top Kill told BP that the flow rate was at least 30,000 bpd, and BP approved the use of the 30,000 bpd assumption in preparing for the top kill.  BP still ordered the Top Kill to proceed—without telling its contractors that the task had no chance of success above 15,000 bpd, thereby risking the health, safety and myriad lives and the well's integrity with no benefit.

3.     It is not the purpose of this memorandum that the Court need agree with our vision of the case, at this point. We simply ask that the Court not now "choose either side's opinion of what the law or evidence would establish. *See Carson v. American Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981) (internal citation omitted) ("[c]ourts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement, [t]hey do not decide the merits of the case or resolve unsettled legal questions").

We submit that the Court can accommodate *Reed's* strictures while minimizing its commentary on the factual case against BP based on its fiduciary role. As BP correctly notes, the Court's fiduciary duty here is to the class, *see* Doc. 7114-1 at 56, and the Court judges the likelihood of success and potential recovery to ensure that the class is not receiving *too little* in relation to the strength of its case against BP.

Commenting on the factual strength of the Plaintiffs' compensatory case against BP is unnecessary here, as the settlement requires BP to pay individual class members the entirety of their provable damages. No class Plaintiff could try this case and get more than 100% of his or her actual damages from BP, regardless of how weak or strong BP's defenses are. This fact alone renders it unnecessary for the Court to comment on any of BP's factual and legal arguments regarding its co-defendants' conduct, superseding causes, and/or divisible liability. *See id.* at 57-63.

As for punitive damages, there are ways to comply with *Reed* while minimizing commentary on the factual evidence, and certainly without adopting or favorably reciting BP's version of the facts. We agree, as BP notes, that the viability of punitive damage claims under maritime law is an issue of first impression in this circuit, and that issue is subject to appellate

review.  *See* Doc. 7114-1 at 67-68.  It is unnecessary to comment on the magnitude because BP essentially concedes these issues by including in the proposed settlement agreement "RTP payments" that serve as a "surrogate" for punitive damages, among other things. *Id.* at 68: *see also* Doc. 6276-33 (RTP chart).

All cases in which factual allegations must be proved to a heightened standard such as "gross negligence" or "willful misconduct" involve a risk of failing to meet that standard.  The risk is heightened when the Court of Appeals has not definitively ruled whether the class' punitive damage claim is viable, even if gross negligence or willful misconduct is proved.  As a result, the Court need not favorably recount BP's factual defense to establish that the class' receipt of the RTP's as a surrogate for punitive damages is fair and reasonable.  The Court's factual commentary should come only after the non-settling Plaintiffs have presented their case at the January 14, 2013 trial.

## RESERVATION OF RIGHTS

By filing this response, or by omitting any particular subject from the response, and without waiver of its limited and qualified appearance, City of St. Pete Beach and the City of Treasure Island does not waive their rights to object to or otherwise oppose any statement or argument made by BP in any document related to the proposed settlements.

BP contends that the states (and necessarily/arguably the governmental subdivisions thereof) lack standing to object to the PSA because they are not a party to the settlements.  *See* July 25, 2012 Letter from Richard C. Godfrey to Judge Shushan at 4-6.  If BP is correct, it follows that BP should be prevented from asserting that the failure to respond to any arguments BP makes during the settlement process equals waiver or abandonment, or that any statement or

ruling made by this Court regarding the settlement becomes law of the case and/or binds City of St. Pete Beach and the City of Treasure Island.

## CONCLUSION

In the interests of the non-settling claimants, City of St. Pete Beach and the City of Treasure Island respectfully requests this Court not to include any factual findings, and to minimize any commentary on the factual evidence, regarding BP's liability to the putative class for compensatory and/or punitive damages. City of St. Pete Beach and the City of Treasure Island also reserves their rights to oppose any factual or legal arguments made by BP in relation to the proposed settlements at the appropriate time.

Respectfully submitted,

THE PENTON LAW FIRM
209 HOPPEN PLACE
BOGALUSA, LA  70427
PHONE     :     (985) 732-5651
FAX       :     (985)735-5579
E-MAIL    :     fedcourtmail@rgplaw.com


s/ Ronnie G. Penton_____
Ronnie G. Penton (#10462)
Counsel for Claimant, City of St. Pete Beach and
the City of Treasure Island, Florida

## CERTIFICATE OF SERVICE

I hereby certify that service of the above and foregoing pleading was accomplished through Lexis Nexis File & Serve, in accordance with Pretrial Order No. 12, and by Notice of Electronic Filing for parties and counsel who are Filing Users and that service was accomplished on any party or counsel who is not a Filing User in accordance with the Federal Rules and Local Rules of this Honorable Court on this date.

September 7, 2012.

                                                s/Ronnie G. Penton
                                                Ronnie G. Penton