IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUSIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG DEEPWATER HORIZON IN THE GULF OF MEXICO, ON APRIL 20, 2010 | MDL No. 2179 |
| IN RE THE COMPLAINT AND PETITION OF TRITON ASSET LEASING GmbH, ET AL., IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY | Section: J<br><br>Judge: Barbier<br><br>Magistrate: Shushan |
| This Document Relates To:<br>   All Cases,<br>   12-970 (Bon Secour Fisheries, Inc., et al.<br>   v. BP Exploration & Production., et al.) | |

# MEMORANDUM IN SUPPORT OF
# GO FISH'S MOTION TO INTERVENE

## I. INTRODUCTION – WHO WE ARE

Gulf Organized Fisheries in Solidarity & Hope, Inc. (GO FISH), is an incorporated seafood industry coalition that formed in response to the unprecedented challenges faced by commercial fishermen of all fisheries as a consequence of the *Deepwater Horizon* oil spill. GO FISH's mission is to assure the fair treatment of all fishermen and supporting industries, the real restoration of damage to affected traditional fishing grounds, and the preservation of the Gulf Coast's resource-based culture and way of life.

GO FISH associational activities in relation to the *Deepwater Horizon* oil spill included work to improve the effectiveness of the MC252 response, to assure the participation of commercial fishermen in the BP Vessels of Opportunity (VOO) program, to pressure GCCF to improve its processing of interim and emergency payments, to reform GCCF's loss methodologies, and to press for OPA's

mandated subsistence payments.  GO FISH has provided resource impact, VOO, community and industry needs testimony before Congress, has met with Ken Feinberg on any number of occasions, and has conferred with BP and the Plaintiffs' Steering Committee (PSC) to give input on compensation methodologies whenever possible on request.[1]

GO FISH's mission is to represent its members in dealing with events like the Deepwater Horizon oil spill that affect fisheries and communities.  GO FISH and its members are extremely concerned about the structure of the capped Seafood Compensation Program Settlement Fund ("SCP") and whether it will be equitably distributed among all the fisheries affected.  While avoiding protracted litigation is laudable, the price of participation in this agreement is the release of past and future claims for fishing losses - with no reopener.  The members of GO FISH are increasingly alarmed at the size of their catches, which in many areas and for successive seasons are at or near historic lows.

Given these risks, GO FISH moves to intervene in this proceeding, to assure reasonable protection against realized and likely future losses, including our fishermen's reasonable worst case scenario - a prolonged biological impact.  "Intervention is the appropriate mechanism for nonparties to protect interests that may adversely be affected by a trial court's judgment. *In re Discovery Zone Securities Litig.,* 181 F.R.D. 582 (ED Ill 1998); *Feltzen v. Andreas,* 134 F.3d 873, 874 (7th Cir. 1998), *cert. granted in part,* 141 L. Ed. 2d 789, 119 S. Ct. 29 (1998)."  Federal Class Action Practice Manual, § 45.  The *Deepwater Horizon* Economic and Property Damage Settlement directly impacts GO FISH's organizational purpose, its members, and the purposes of its member organizations.

## II.  STANDARD FOR INTERVENTION

The standard for intervention as a matter of right is set forth in Fed. R. Civ. P. 24(a):

---

[1] Exhibit 1, Affidavit of Byron Encalade, ¶ 8-9.

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Thus under Fed. R. Civ. Proc. 24(a)(2), an applicant must meet four requirements: (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

Although these standards must be met, a number of federal courts have held that FRCP 24 "is construed broadly in favor of the applicants [for intervention]." E.g., Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1397 (9th Cir. 1995); Federal Savings & Loan Ins. Corp. v. Falls Chase Special Taxing Dist., 983 F.2d 211, 216 (11th Cir. 1993) (any doubt concerning propriety of intervention should be resolved in favor of proposed intervenors); Sierra Club v. Robertson, 960 F.2d 83, 86 (8th Cir. 1992) (same).

### III.  GO FISH'S INTERVENTION IS TIMELY

The Fifth Circuit applies "four factors by which to evaluate the timeliness of an intervention motion. They are: (1) the length of time applicants knew or should have known of their interest in the case; (2) prejudice to existing parties caused by applicants' delay; (3) prejudice to applicants if their motion is denied; and (4) any unusual circumstances." *League of United Latin American Citizens v. City of Boerne*, 659 F.3d 421, 433 (5th Cir. 2011), *citing Ruiz v. Estelle,* 161 F.3d 814, 827 (5th Cir. 1998).

In this case GO FISH's interest in the case arises out of the proposed class action settlement, which received preliminary approval in April 2012. Since that time GO FISH has, as set out below, held

community meetings, gathered information, and analyzed the proposed settlement.  Based on this inquiry, GO FISH concluded that intervention is necessary to properly present its members' interests.

The timing of this intervention is intended to respect the schedule set by the Court for the fairness hearing on the proposed settlement.  This application for intervention is filed prior to the September 7, 2012 date for filing objections to the proposed settlement, and two months prior to the November 8, 2012 class action fairness hearing.  There is no prejudice to the existing parties from granting this motion, and GO FISH and its members would be prejudiced in their ability to present their concerns if this motion is denied.

## II.    GO FISH HAS AN INTEREST THAT IS OR MAY BE ADVERSELY AFFECTED, AND THE DISPOSITION OF THIS ACTION MAY IMPAIR THAT INTEREST

Under Fifth Circuit precedent, "a would-be intervenor must establish that he has [standing under Article III of the U.S. Constitution] if, inter alia, he is not seeking any relief that is 'also being sought by at least one subsisting party with standing to do so.'" *League of United Latin American Citizens v. City of Boerne*, 659 F.3d 421, 428 (5th Cir. 2011), *citing Ruiz v. Estelle,* 161 F.3d 814, 830 (5th Cir. 1998).  While GO FISH believes that other members of the class may seek the same reforms to the settlement that GO FISH is seeking, it is also clear that GO FISH has the Article III standing to intervene and pursue this matter in its own right and on behalf of its members.

An association such as GO FISH has standing to bring suit on behalf of its members when (1) its members would otherwise have standing under Article III to sue in their own right, (2) the interests at stake are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).   In order for an individual to have standing to sue under Article III of the Constitution, the individual must show 1) he has suffered an "injury in fact," 2) the injury is "fairly traceable to the challenged action of the defendant," and 3) it is likely that the "injury will be

redressed by a favorable decision." *Friends of the Earth v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180-81 (2000).

GO FISH founding member organizations are all non-profit fishing industry and community groups with members directly affected by the BP spill and the proposed settlement. Each group provides a single board member who all join in this intervention; together they act collectively as the GO FISH board of directors and officers:

Clint Guidry is the President of the Louisiana Shrimp Association and the Vice-Chair of the Louisiana Shrimp Task Force. Mr. Guidry acts as the chairman of GO FISH's board.

Tracy Kuhns is the executive director of Louisiana Bayoukeeper. Ms. Kuhns acts as the president of GO FISH.

Thiện Dương Nguyễn is the president of the Southeast Asian Fisherfolk Association (SEAFA). Mr. Nguyễn acts as the vice-president of GO FISH.

Mike Roberts is the president of the Association of Family Fishermen. Mr. Roberts acts as the secretary of GO FISH.

Byron Encalade is the president of the Louisiana Oystermen's Association, a member of the Louisiana Oyster Task Force, and a member of the Governor's Oyster Advisory Board. Mr. Encalade acts as the treasurer of GO FISH.

Theresa Dardar is a representative of the tribal council of the Pointe-Au-Chien Indian Tribe. Ms. Dardar acts as a board member of GO FISH.

George Barasich is the President of the United Commercial Fishermen's Association and a member of the Louisiana Shrimp Task Force.  Mr. Barasich acts as a board member of GO FISH.[2]

As Mr. Barisich's declaration establishes, each of the individuals who sit on GO FISH's board are fishermen and women who come from fishing families. They fish in the state and federal waters of the

---

[2] Exhibit 1, Affidavit of George Barisich, at ¶ 6.

Gulf Coast which were affected by the Deepwater Horizon oil spill. They are all class members with a concrete interest in the fairness of the Proposed Settlement, particularly in the Seafood Compensation Program made part of that settlement. The founding groups of GO FISH also collectively represent more than 1,800 fishing community members in Louisiana alone. These members participate in the majority of the fisheries, occupations, and property rights classes covered by the Seafood Compensation Program.[3]

Thus, GO FISH's individual board members and the members of GO FISH's organizational members have clearly suffered an identifiable injury in fact, which is traceable to the conduct complained of in this suit, and would be remedied by the relief sought in this suit.  This establishes that each of these fishing community members has standing to intervene in his or her own right. The interests at stake in these individual's claims are germane to, indeed they constitute, GO FISH's purpose.[4]  The complaint GO FISH makes and the relief GO FISH requests relate to the definition of the proposed class, the adequacy of the SCP, and to due process safeguards in the second distribution of the SCP.  No individual member is required to participate with respect to these overarching issues, which are within the organizational mission of GO FISH.   Therefore, GO FISH satisfies the elements of associational standing dictated by *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

We further note that GO FISH's own organizational interests are implicated in this action, and GO FISH has its own identifiable injury in that it has devoted its time and resources to attempting to understand and improve the SCP.   GO FISH has actively participated in reviewing the proposed class action settlement. On March 3, 2012, the  PSC and BP announced that an "Agreement-in-Principle" had been reached to resolve private economic loss claims. Details still needed to be worked out however, particularly with the Seafood Compensation Program. On March 8, 2012, the Court appointed John

---

[3]  Exhibit 1, Declaration ofByron Encalade, at ¶ 7.
[4] Exhibit 1, Declaration of Byron Encalade, at ¶ 14.

Perry as a "neutral" to oversee finalizing the distributive terms contained in the Seafood Compensation Program (hereinafter "SCP"). GO FISH members met with BP, the PSC and Mr. Perry with his partner Dan Balhoff and provided information regarding industry practice and the SCP.[5]

On April 16, 2012, the PSC filed a new class action complaint to serve as the vehicle for the Proposed Settlement. (Rec. Doc. 6252). Two out of the four SCP participants then named as class representatives in that Complaint are GO FISH members: Maurice Phillips and Phuong Nguyen.[6] Although representations had been made to GO FISH about the structure and compensation that could be expected from the finalized agreement, at the time the class action was filed the details of the Proposed Settlement had not been released. When the agreement was finalized and released, proposed class representatives Phillips and Nguyen could not agree that the Proposed Settlement was fair.[7]

On April 18, 2012, the PSC and BP filed the Proposed Settlement, and moved for an order certifying a settlement class, class representatives, and class counsel. (Rec. Docs. 6276 and 6269). The Court ordered that the hearing on the motion for preliminary approval would be held seven days later, on April 25, 2012. In this limited time frame, GO FISH did its best to review and understand the pleadings and the roughly 1000-page proposed settlement agreement. The agreement as filed appeared significantly different than what had been represented as the "agreement-in-principle." [8]

On April 25, 2012, GO FISH filed Comments and Objections regarding the Proposed Settlement (Rec. Doc. 6353), and the Court held a hearing regarding the propriety of preliminary approval. On April 30, 2012, representatives of GO FISH met with representatives of BP, the PSC, and Mr. Perry to attempt to work through GO FISH's concerns. For six hours, all sides learned from one another. As a

---

[5] Exhibit 1, Declaration of Byron Encalade, at ¶ 12.
[6] Maurice Phillips is a member of Louisiana Oystermen's Association. Phuong Nguyen is a member and Secretary of SEAFA.
[7] Exhibit 1, Declaration of Byron Encalade, at ¶ 13.
[8] Exhibit 1, Declaration of Byron Encalade, at ¶ 10.

result of this meeting, at least three important changes were made to the SCP.[9] However, major concerns which could have been resolved by BP remained unchanged.

The class action complaint was amended on May 2, 2012, removing GO FISH's members as representative plaintiffs. (Rec. Doc. 6412). The Proposed Settlement was also amended to include the changes resulting from the aforementioned April 30 GO FISH meeting. (Rec. Doc. 6414). This Honorable Court granted preliminary approval. (Rec. Doc. 6418).

We also note that is in in the interests of efficient administration to allow GO FISH to present information on the interests of these members. As of September 4, 2012, the Deepwater Horizon Economic & Property Damage Claims Center (DHECC) reports that 5,802 claim forms have been submitted in the Seafood Compensation Program from claimants across the entire Gulf Coast. Given that many seafood claimants submit multiple claim forms within the program,[10] the voice of GO FISH's membership on the issues raised by the proposed settlement is significant and should be given serious consideration.

### IV.   GO FISH'S INTERESTS ARE NOT ADEQUATELY REPRESENTED BY THE EXISTING PARTIES

The burden on the applicant to show the inadequacy of representation "is minimal and the applicant need only show that the representation of his interests 'may be inadequate.'"*Berkeley Electric Coop. v. Mt. Pleasant*, 302 S.C. 186, 191, 394 S.E.2d. 712, 715 (1990) citing *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 92 S.Ct. 630 (1972). GO FISH's interests are not adequately represented in this matter by the existing parties, because based on the information available to it GO FISH wishes to advocate for changes to improve the SCP in the proposed class settlement.

---

[9] Shrimpers, crabbers, and finfishermen are now allowed to drop a non-representative year from their benchmark; commercial fishermen's claims for subsistence use of a portion of their catch were saved; and the second distribution money from the fund could potentially be based on considerations other than a strict pro rata share.

[10] For example, a fisherman who owns and captains a boat and who has trip tickets showing landings of shrimp, crab, and finfish at various times during the years of 2007 through 2009 would file six claims in the program: owner/shrimp, owner/crab, owner/finfish, captain/shrimp, captain/crab, and captain/finfish.

The existing parties to the matter, specifically class counsel and the defendants, support the proposed settlement as written.  The specific aspects of the settlement which GO FISH believes must be improved to provide an adequate and equitable result are detailed below.

      A.      <u>Fishermen Report Major Concerns Regarding Impacts to Fisheries</u>

Following preliminary approval of the proposed class settlement, GO FISH sought and received input and questions regarding the SCP agreement from the fishing community.  During the month of July, GO FISH held twelve townhall type forums across the Gulf Coast. GO FISH heard from many hundreds of Seafood Program class members and onshore fishing related businesses during this time. GO FISH received and collected literally thousands of questions and concerns from fishing community class members. The questions were expressed in different words and different ways, but throughout a set of basic underlying concerns emerged.

On August 4, 2012, GO FISH held a Gulf-wide fishing community conference presenting legal, scientific, and basin impact information to seven or eight hundred fishermen and family members.  At the conference, the men and women of our coastal fishing communities relayed their concern over the grave state of the fisheries and with the SCP as proposed, while at the same time expressing desperation about the consequences of not accepting the offer.  Specifically, many fishermen reported that their catch since the oil spill has been drastically reduced.

      B.      <u>Significant Underlying Information on the SCP is not Available</u>

Based on the input from the fishing community, GO FISH desires to present specific evidence relevant to the fairness of the SCP and to seek relief regarding common issues of fact and law.  The Agreement in Principle promised significantly better returns than the agreement as filed.  Variables that could play a large role in the second distribution from the SCP fund are not known to the fishing community.  The largest of these variables include the number of GCCF releases obtained from

fishermen, the value of the claims covered by those releases, and the number of acres of private water bottoms that have been leased for oyster harvesting, which will be included in the SCP. The "fairness" *vel non* of the Seafood Compensation Program rests in part on facts not yet known or not yet revealed by the parties to the agreement.

Further, the future risk of significant sustained loss appears more likely today than at any time since the spill, particularly in light of the past two seasons. Fishermen indicate catch is moving in the wrong direction in the worst hit areas.[11] Losses are migrating outward from highly contaminated basins to neighboring basins as a result of increased fishing pressure. Jobs are being lost and more competition is now evident for the remaining positions. Information concerning the potential for future losses is not being presented by the other parties, and therefore GO FISH's interests are not adequately represented.

C. <u>GO FISH Wishes to Present Information on the In adequacy of the Loss Formulas in the SCP</u>

GO FISH intervenes to propose solutions to the problems contained in the calculation formulas of the SCP. For example, the SCP proposes that fishermen's compensation for potential future losses will be reduced by a "loss percentage," and contain specific fisheries "expense ratios." Applying these factors as found in the agreement necessarily assumes that fishermen are using less effort and expense when they catch less seafood. This is not what is happening, in fact fishermen have to spend the same amount or even more to catch the same amount.[12] The real losses (as opposed to the assumed losses contained in the agreement) are thus magnified by the cost structures of these small businesses and the fact that fishermen are still trying their hardest to fish. The assumed "loss percentages" found in the SCP formulas in fact act as a *cap on recovery* and are not found elsewhere in the settlement, where claimants are entitled to show real losses.

---

[11] Exhibit 1, Declaration of Byron Encalade, at ¶ 9.
[12] Exhibit 1, Declaration of Byron Encalade, at ¶ 10-11.

What's more, many GO FISH members signed releases and are now excluded. Excluded claims diminish the recovery of fishing communities and the entire fishing industry which GO FISH collectively represents, even as those who remain get a larger recovery. The complete recovery of the entire industry, including for those who signed releases, is a interest specific to GO FISH and not necessarily joined by individual members of the SCP class.

This is information that is not being presented by any of the present parties to the action and supports GO FISH's request for the intervention.

D.  Distribution of Funds Within the SCP

GO FISH is also extremely concerned about the distribution of funds under the formulae in the proposed settlement. Based on what GO FISH is hearing from its members, the distribution is not correlated with which fishermen were in the fishing grounds that were hit the hardest and who have the most risk for the future.

A primary justification for the premise that $2.3 billion is an adequate sum is the observation that this "would be roughly five times the historical average gross dollars in revenue generated by Seafood harvesting in the areas of the Gulf of Mexico covered by the Program." However, this comparison does not take into account that a part of the $2.3 billion fund will go to pay property damage claims to oyster leases. In fact GO FISH estimates that if the SCP's "second round" distribution (*i.e.* the money left over and distributed after all eligible claims are initially paid) is paid in the same proportions as the first round distribution, anywhere from $1.3 to $1.5 billion dollars will go to pay property damage claims to oyster leases and will not be used to replace gross fishing revenue at all. The remaining $1 billion to $800 million dollars will be the total amounts allocated to all fishermen combined, including shrimp, oyster, crab, and finfish harvesters.

This essential fact is ignored by the affiants and economists who vouch for the fairness of the plan in the exhibits attached to the parties' Memoranda in Support.[13]  Granting intervention to GO FISH will enable a full discussion of these issues, which are not adequately presented by the existing parties.  And, importantly, the discussion and the solutions proposed by GO FISH can be accomplished within the four corners of the Proposed Settlement Agreement, as it was amended following Go FISH's April 30 meeting with representatives of BP, the PSC, and the court-appointed neutral.

E.  GO FISH's Interest is in Improving the SCP

The purpose of this intervention is to find working solutions to the challenges posed by the SCP.  GO FISH believes that the SCP can work for fishermen.  One mechanism would be through the "second round" distribution.  As a result of the meeting between GO FISH, BP and the PSC, BP and the PSC amended the SCP to revisit the distribution of the SCP funds in the second distribution should the need arise.  GO FISH analysis indicates that around half of the SCP Fund will remain after the first distribution.  Therefore the second distribution should be enough to correct the inequities in the first distribution, while remaining within the terms of the Proposed Settlement Agreement. For the SCP amendments to be given effect, GO FISH must be able to advocate for a process to consider adjustments to a strict pro rata second distribution, one that assures the ethical, legal, and fair treatment of all SCP claimants.

GO FISH seeks party status to urge court supervised mechanisms that will assure a fair and transparent decision regarding the second distribution, including fishery-specific and perhaps

---

[13] *See, e.g.,* Affidavit of Joe Rice (Rec. Doc. 7101-9 at ¶¶ 5, 7) ([Regarding the Agreement-in-Principle] "[W]e agreed to establish a $2.3 billion guaranteed payment by BP to Seafood Harvesting Claimants, including the vessels, the Boat Captains, and the Deckhands." "In evaluating the appropriateness of the compensation fund we determined that with a $2.3 billion fund the historical average gross dollars paid into the harvest of Seafood throughout the Gulf of Mexico, including application of half of the Seafood landed in the State of Texas, could be paid would be roughly five times the historical average gross dollars in revenue generated by Seafood harvesting in the areas of the Gulf of Mexico covered by the Program.)
Affidavit of Henry Fishkind (Rec. Doc. 7114-5 at ¶119, 120)("[T]he $2.3 Program is almost five times the total revenue the industry generated on average between 2007-2009.").

geographically-specific advocates, submission of evidence before a court appointed master or neutral, and findings of fact to support decisions.

## IV.     CONCLUSION

For all the reasons set out above, granting GO FISH's motion to intervene helps assure the heightened scrutiny of capped settlements as required by law and the adequate consideration of the facts that attend the release of significant rights. It is a valuable step toward assuring the fairness that would warrant final approval of the Proposed Settlement. For these reasons GO FISH should be allowed to intervene as of right under F.R.C.P. 24(a)(2). In the alternative, GO FISH requests that the Court grant permissive intervention under F.R.C.P. 24(b).

Respectfully Submitted:

/s/ Clay Garside
Clay Garside (LA #29873)
14399 Chef Menteur Hwy., Ste. D
New Orleans, LA  70129
Office:  (504) 254-4400
Fax:     (504) 254-1112
clay@waltzerlaw.com

Robert Wiygul (LA #17411)
1011 Iberville Drive
Ocean Springs, MS 39564
Office: (228) 872-1125
Fax:     (228) 872-1128
robert@waltzerlaw.com

/s/ Joel Waltzer
Joel Waltzer (LA #19268)
3715 Westbank Expressway, Ste. 13
Harvey, LA  70058
Office:  (504) 340-6300
Fax:     (504) 340-6330
joel@waltzerlaw.com
  *Counsel for Proposed Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing motion has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 7th day of September, 2012.

/s/ Joel Waltzer