IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179 |
| | * | Section: J |
| Applies to: All Cases | * * | Honorable Carl Barbier |
| | * * | Magistrate Judge Shushan |

---

## MOBILE COUNTY'S RESPONSE TO BRITISH PETROLEUM'S MEMORANDUM IN SUPPORT OF FINAL APPROVAL[1]

Mobile County, a separate entity and political subdivision of the State of Alabama, on behalf of itself is not a party to the proposed Economic and Property Damages Settlement or the Medical Benefits Settlement (herein after sometimes "PSA"). Mobile County has made a qualified and limited appearance in MDL 2179 with outstanding claims against BP. It therefore has a great interest in BP's one-sided commentary on the factual and legal issues that may be tried against BP at the January 14, 2013 trial and how this Court responds to BP's arguments in its fairness ruling.

Mobile County files this response for several reasons. First, in the interests of the non-settling Plaintiffs, we respectfully ask this Court not to include any factual findings and to minimize any commentary on the factual evidence, regarding BP's liability to the Plaintiffs for

---

[1] Although this memorandum borrows freely from a similar memorandum filed by the State of Alabama, it differs in important areas of concern to Mobile County. The undersigned has informed Counsel for the Alabama AG of this Filing and he has not voiced any opposition.

compensatory and/or punitive damages. Second, we expressly reserve our right to rebut BP's factual and legal commentary at the appropriate time(s).

## BP'S SELF SERVING PLEADINGS

1.  *The Reed Factors:* This Court is bound to apply the *Reed* Factors and in doing so must weigh the "probability of plaintiff's success on the merits" and their "range of possible recovery" as part of its fairness hearing, *Reed v Gen. Motors Corp.,* 703 F.2d 170 (5th Cir. 1983) and thus the settling parties' ability to comment on these factors.[2] Mobile County objects to BP's manipulations of these *Reed* factors, which favor minimizing the Plaintiffs' case, to try its case in motion papers to which BP claims that the non-settling Plaintiffs cannot object.

Citing these *Reed* factors, BP claims that "[a]t any Limitation and Liability Trial, the record evidence—based upon the extensive pre-trial discovery and expert reports—would establish the following," Doc. 7114-1 at 57, and then tells its 18-page tale, backed by cherry-picked depo cuts and caselaw. *Id.* at 57-76. Class counsel understandably offers none of the overwhelming evidence against BP to balance the story. *See* Doc. 7101-2 (Plaintiffs' memorandum in support).

Mobile County rejects BP's self serving and conclusory version of what the law and facts "would establish." *Id.* BP is plainly wrong and utterly presumptuous in its assertion that "at any trial, BP would establish that its conduct did not constitute gross negligence or willful misconduct." *Id.* at 63. This misstatement is at odds with the facts as developed by the extensive public record and law.[3]

---

[2] See also *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. ___, 131 S. Ct. 2541, No. 10-277, slip op. 8 (2011)*; Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997);

[3] Mobile County notes, but offers no further comment on, class counsel's failure to disagree with this and many other statements made by BP.

2. *BP's Punitive Conduct:*   Phase One evidence, as outlined in the United States' response to BP's Memo, will most likely establish that BP acted with gross negligence and/or with willful misconduct leading up to the blowout.  There is no need to repeat the position of the United States but Mobile County respectfully adopts it as if set forth fully herein.

BP ignores the Plaintiffs' Phase Two punitive claims, for which discovery is still ongoing.  We anticipate that the evidence will establish that BP misrepresented due to gross negligence, BP was wholly unprepared to respond to the known risks of a subsea blowout. [4]We also intend to prove that BP misrepresented to the federal government and the public that the flow rate was 5,000 bpd, while having knowledge that the flow rate was *significantly* higher.  At the same time, BP proceeded with the "top kill" method, even though BP knew that (a) a top kill risked well integrity and thus further delay or permanent damage, (b) a top kill would be unsuccessful at 15,000 bpd or greater, and (c) the flow rate was far greater than 15,000 bpd.[5] BP's election of the risky top kill, which BP knew it knew full well was predestined to fail, amounted to willful misconduct that delayed the capping of the well by several weeks—weeks in which an additional 1+ million barrels of oil unnecessarily entered the Gulf.

3. It is not the purpose of this memorandum that the Court need agree with our vision of the case, at this point.  We simply ask that the Court not now "choose either side's opinion of what the law or evidence would establish.  *See Carson v. American Brands, Inc.*, 450

---

[4] BP has admitted that it spent $0 researching, testing, designing, building, or planning any of these source control methods for a subsea deepwater blowout before April 20, 1010: 2-ram capping stack, 3-ram capping stack, BOP-on- BOP, cofferdam, top hat, top kill, junk shot, and riser insertion tube tool.  *See* BP Parties' Responses and Objections to Plaintiffs' Requests for Admissions to the BP Defendants, served on Aug. 21, 2012.

[5]In fact, we anticipate that the evidence will establish that the contractors performing the Top Kill told BP that the flow rate was at least 30,000 bpd, and BP approved the use of the 30,000 bpd assumption in preparing for the top kill.  BP still ordered the Top Kill to proceed—without telling its contractors that the task had no chance of success above 15,000 bpd, thereby risking the health, safety and myriad lives and the well's integrity with no benefit.

U.S. 79, 88 n.14 (1981) (internal citation omitted) ("[c]ourts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement, [t]hey do not decide the merits of the case or resolve unsettled legal questions").

We submit that the Court can accommodate *Reed's* strictures while minimizing its commentary on the factual case against BP based on its fiduciary role.  As BP correctly notes, the Court's fiduciary duty here is to the class, *see* Doc. 7114-1 at 56, and the Court judges the likelihood of success and potential recovery to ensure that the class is not receiving *too little* in relation to the strength of its case against BP.

Commenting on the factual strength of the Plaintiffs' compensatory case against BP is unnecessary here, as the settlement requires BP to pay individual class members the entirety of their provable damages.  No class Plaintiff could try this case and get more than 100% of his or her actual damages from BP, regardless of how weak or strong BP's defenses are.  This fact alone renders it unnecessary for the Court to comment on any of BP's factual and legal arguments regarding its co-defendants' conduct, superseding causes, and/or divisible liability. *See id.* at 57-63.

As for punitive damages, there are ways to comply with *Reed* while minimizing commentary on the factual evidence, and certainly without adopting or favorably reciting BP's version of the facts.  We agree, as BP notes, that the viability of punitive damage claims under maritime law is an issue of first impression in this circuit, and that issue is subject to appellate review.  *See* Doc. 7114-1 at 67-68.  In fact, in Mobile County's complaint it timely preserved both state law and federal claims including but not limited to punitive damages.  It is unnecessary to comment on the magnitude because BP essentially concedes these issues by

including in the proposed settlement agreement "RTP payments" that serve as a "surrogate" for punitive damages, among other things. *Id.* at 68: *see also* Doc. 6276-33 (RTP chart).

All cases in which factual allegations must be proved to a heightened standard such as "gross negligence" or "willful misconduct" involve a risk of failing to meet that standard. The risk is heightened when the Court of Appeals has not definitively ruled whether the class' punitive damage claim is viable, even if gross negligence or willful misconduct is proved. As a result, the Court need not favorably recount BP's factual defense to establish that the class' receipt of the RTP's as a surrogate for punitive damages is fair and reasonable.

## RESERVATION OF RIGHTS

By filing this response, or by omitting any particular subject from the response, and without waiver of its limited and qualified appearance Mobile County does not waive its right to object to or otherwise oppose any statement or argument made by BP in any document related to the proposed settlements.

BP contends that the states (and necessarily/arguably the governmental subdivisions thereof) lack standing to object to the PSA because they are not a party to the settlements. *See* July 25, 2012 Letter from Richard C. Godfrey to Judge Shushan at 4-6. If BP is correct, it follows that BP should be prevented from asserting that the failure to respond to any arguments BP makes during the settlement process equals waiver or abandonment, or that any statement or ruling made by this Court regarding the settlement becomes law of the case and/or binds Mobile County.

## CONCLUSION

In the interests of the non-settling claimants, Mobile County respectfully requests this

Court not to include any factual findings, and to minimize any commentary on the factual evidence, regarding BP's liability to the putative class for compensatory and/or punitive damages. Mobile County also reserves its right to oppose any factual or legal arguments made by BP in relation to the proposed settlements at the appropriate time.

Respectfully submitted,

_/s/_____
**Frederick T. Kuykendall, III**
Federal Bar No.: KUYF4462
KUYKENDALL & ASSOCIATES, LLC
2013 1st Avenue North, Suite 450
Birmingham, AL 35203
Phone: (205) 453-0060
Fax: (205) 453-0042
**ONE OF THE ATTORNEYS FOR MOBILE COUNTY**

_/s/_____
**James C. Johnston**
Federal Bar No.:JOHNJ1330
JOHNSTON DRUHAN LLP
PO Box 154
Mobile, AL 36601
Phone: (251) 432-0738
Fax: (251) 432-4874
**ONE OF THE ATTORNEYS FOR MOBILE COUNTY**

_/s/_____
**Robert C. Riley**
Federal Bar No.: RILER8310
RILEY & JACKSON, P.C.
1744 Oxmoor Road
Birmingham, AL 35209
Phone: (205) 879-5000
Fax: (205) 879-5901
**ONE OF THE ATTORNEYS FOR MOBILE COUNTY**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing, Mobile County's Response to British Petroleum's Memorandum in Support of Final Approval, has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on September 7, 2012.

_/s/_____
**Frederick T. Kuykendall, III**