

**STATE OF MISSISSIPPI**

## JIM HOOD
**ATTORNEY GENERAL**

July 20, 2012

Joseph F. Rice, Esquire
Motley Rice
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Re:    Deepwater Horizon Economic Zone Classes – Proposed Economic Settlement

Dear Mr. Rice:

Thank you for meeting with the Mississippi counsel on Wednesday, June 27, 2012, in New Orleans, Louisiana.

This letter is being sent to you as both a member of the Plaintiffs Steering Committee that was significantly involved in the negotiations with BP and as Class Counsel.  At the conclusion of that meeting, it was agreed that we would send you a letter outlining our objections to certain economic zones in Mississippi.  You agreed to take this letter and meet with your counterparts at BP to discuss the issues raised herein.

## I. Parties Represented in This Letter

This letter is being submitted to you as a member of the Plaintiffs Steering Committee and Class Counsel on behalf of the State of Mississippi; Jackson County, Mississippi; Ocean Springs, Mississippi; Gautier, Mississippi; Moss Point, Mississippi; and Pascagoula, Mississippi.  The counsel copied are the attorneys of record for these various objectors.

## II. Requested Relief

This letter is being sent to you with the hopes that we can reshape the zones and not be forced to file a formal objection on these zone issues.  Specifically, the Master

EXHIBIT B

Settlement Agreement provides that Zone A in Mississippi extends from the Louisiana border to Halstead Road in Ocean Springs, Mississippi. The remainder of the Mississippi Gulf Coast is classified as a Zone C. We are requesting that Zone A be extended from Halstead Road and Hwy 90, Ocean Springs, Mississippi eastward to Pascagoula, Mississippi. We request Hwy 90 be the Northern boundary just as it is in Ocean Springs. We also request that the zone include portions of Moss Point, Mississippi to include the areas within a 2 mile radius of City Hall - which fronts the Escatawpa River. The distance from Halstead Road, Ocean Springs to Pascagoula is less than fifteen miles.

## III. Basis for Objections

### A.   Physical Impact of Deepwater Horizon Spill

During the late spring and summer of 2010, the Deepwater Horizon poured millions of gallons of oil into the Gulf of Mexico and the Mississippi Sound. The entities represented in this letter were not only threatened with oil on their beaches but did in fact receive oil on the beaches. Numerous inspections and studies were done throughout the oil spill documenting where oil reached land. Attached are maps which identify areas with "maximum oiling." It is clear from the inspection reports that the subject county and cities were designated as "max oiling" areas during the duration of the spill.

It is important to point out the treatment of these objectors as compared to all other public entities that were affected by the oil spill. In reviewing the various maps indicating where actual oiling occurred, these four cities and one county in Mississippi are the only areas in the entire Gulf of Mexico that actually received oil on their beaches but are not classified as a Zone A for economic purposes. However, areas in Florida which received no oil whatsoever (hundreds of miles of coastline) are, in fact, classified as Zone A.

The western boundary of these Zone C entities is Halstead Road in Ocean Springs, Mississippi. The same amount of oil landed on the beaches to the west of Halstead Road as they did to the east. To the east of the excluded entities the City of Bayou LaBatre is approximately fifteen miles away. Bayou LaBatre, Alabama sits on the same body of water, the Mississippi Sound, as these five governmental entities. Bayou LaBatre, Alabama is not classified as a "max oiling" beachfront area. However, Bayou LaBatre, Alabama is classified as Zone A for economic losses. As will be discussed infra, there is no basis for this disparate treatment when compared to the areas to the east and west.

EXHIBIT B

## IV. Characteristics of Excluded Area

To the east of Halstead Road in Ocean Springs, Mississippi, there are natural beaches and bayous throughout the entire area. Included in this area are numerous marinas, Shepard State Park and Shell Landing Golf Course (affiliated with a Biloxi casino). The eastern area of the excluded area includes industrial facilities such as Ingalls Huntington Shipyard and Chevron U.S.A.

To the south of all the excluded areas are Petit Bois Island, Sand Island, and Horn Island. These islands are owned by the National Park Service and are part of the National Seashore system. Although none of the islands are inhabited or have any business whatsoever, these islands were placed in Zone A for purposes of the economic settlement.

To the north of Pascagoula is the City of Moss Point, Mississippi. This area is surrounded by water and is home to several eco-tourism businesses as well as a marina, berthing deep water fishing vessels. The Pascagoula River, which is the largest unobstructed natural river in North America, runs through Moss Point, Mississippi, and empties into the Mississippi Sound in Pascagoula.

## V. Businesses Affected by Oil Spill

### A. Eastern Ocean Springs/Unincorporated Coastal Areas of Jackson County and Gautier, Mississippi

This entire area is dominated by water related activities that were adversely affected by the oil spill. From boat repair shops to golf courses surrounded by water, this area is dependent upon both locals and tourists using the facilities. Unlike many other Zone A communities, this area, along with the other cities, experienced numerous days with the smell of petroleum so thick in the air no-one ventured outside. Instead of enjoying the salt air on the golf course one would feel like they were teeing off inside a refinery.

Gautier, Mississippi's boundary to the east is the West Pascagoula River. There are numerous marinas, bait shops, and restaurants located along this waterway.

Many of the boat owners and slip rentals from Mary Walker Marina as well as numerous fish camps in Gautier, adjacent to the Pascagoula River, are owned and frequented by residents from North/Central Mississippi or elsewhere. None of them came to the area for recreation or fishing in the months and year after the oil spill.

EXHIBIT B

### B.    Pascagoula

Pascagoula, Mississippi is home to thousands of recreational fishing vessels as well as a significant commercial shrimp and fin fish industry.  It goes without saying that these industries were totally shut down in 2010.  Not only is there a shrimping fleet but there are also several processors.  The largest processor in the area, which had been in existence for approximately 70 years, closed after the oil spill.  This facility has not reopened.

As alluded to earlier, there was max oiling on the Pascagoula shoreline up and down Beach Boulevard and including "The Point."  The Point is an area frequented by both locals and tourists as it is on high ground and there are views of both the Pascagoula River, the Gulf of Mexico, Ingalls Shipyard, and the Greenwood Island. There are numerous boat launches at this location as well,  and it is the entry point of the Pascagoula River which is the corridor for many commercial and recreational activities in both Pascagoula, Gautier, and Moss Point. As you travel east on Beach Boulevard there is Beach Park which plays host to numerous events including weddings and fireworks.  Beach Park also has  a popular fishing pier.  Much of this was also not able to be used to its fullest extent after the oil spill and was avoided in part due to workers cleaning oil on the shoreline.  At the far east of Beach Boulevard is the Yacht Club which has hosted sailing regattas and tennis tournaments for years.  Those events were also significantly reduced or nonexistent in the summer of 2010.  All of these are general examples of events that, when added up, created a significant strain on the local economies.

### C. Moss Point

Moss Point, Mississippi is home to numerous marinas and commercial fishing industries.  A significant employer in Moss Point, Omega Protein, is home to approximately 20 Menhaden boats with over 250 employees.  Following the oil spill, the entire industry moved to Texas.  Located in downtown Moss Point, is a 50 slip marina that berthed numerous boats including many boats that are considered offshore sport fishing boats.  Following the oil spill, this marina filed bankruptcy. Moss Point was also home to one of the larger boat dealers on the Mississippi Gulf Coast, Empress Marine & Audio.  Following the oil spill, Empress went out of business.

We are aware that Omega Protein apparently resolved its claims as a result of the oil spill, however the repercussions felt by these local entities certainly is not resolved, as those employees picked up and moved elsewhere to continue  working. They no longer contributed to the local economy.

The barrier islands (Horn and Petit Bois) are undeveloped and uninhabited.  The

## EXHIBIT B

water and sand on these islands equal, or exceed, those of the more popular tourist destinations to the east.  Salt water activities, whether swimming, fishing or simply boating, is the number one recreational activity of the residents of these communities.  In 2010 the State of Mississippi issued approximately 25,000 salt water fishing permits to residents of these affected areas.  Late spring and summer of 2010, these activities ceased.  Commercial shrimping was closed, salt water fishing was closed, and the beaches on the barrier islands were blockaded by oil booms.  The islands and adjacent waters were monitored, both by sea and air, to prevent anyone from attempting to use these resources.  The water, the islands, and the coastal beaches were oiled by the Deepwater Horizon spill.  Yet, these areas have been classified as Zone C.

## VI. Claims Asserted

The citizens of the entities presenting this objection are well aware that the loss of use of natural resources is not a claim to be made by these entities or its citizens.  Those claims reside solely with the NRDA Trustees.  The damage to the beaches, whether on the mainland or on the islands, is also not a claim for these citizens as these areas are owned by either the local, state or federal government. (This is also the same with regard to all the beaches in Alabama and Florida).  We do claim the economic losses resulted by the absolute closure of the recreational and commercial use of the Mississippi Sound and Gulf of Mexico in 2010.

We fully recognize that some of the examples presented in this letter may receive Zone A treatment under the Seafood Program.  However, all of the affected businesses that did not sell goods to the seafood distribution entities, such as grocery stores and gas stations, do not receive Zone A treatment.  These indirect (seafood) businesses are intricately interwoven in the coastal seafood economy, and they should be classified the same, i.e., Zone A.  Recreationally, the boaters, fishermen and tourist who did not come to the area, did not spend any money in the area during that time.  Their absence affected businesses throughout the entire region.  Even locals, if not using their boats, did not purchase fuel, food, gear, etc. for these activities.

There is very little difference as to whether a local resident or a tourist comes to an area to enjoy the outdoor activities.  If a tourist fails to come to, for example, Orange Beach, Alabama, then that city, and the businesses located therein, do not receive those monies that would have been spent by that tourist.  With regard to the subject areas in Mississippi, the only difference is those individuals in Mississippi may not have been renting a hotel or condominium room.  Other than this, all monies lost would be the same.  Again, just as in Alabama and Florida, the "trickle down" effect occurred in Mississippi.  If a person is not buying a boat, buying gas for his boat, buying boating supplies, insurance, etc., then that money is lost not only to the

Exhibit B

immediate seller but also to those with whom seller does business.  When 250 employees of a Menhaden factory leave the area not only is
each employees income lost but all the businesses which supply these facilities have also suffered a loss.  The loss is compounded as it continues down the line.  When shrimpers cannot leave port - they do not pay their deck hands, they do not purchase fuel,  do not rent dock space, do not sell their products, do not buy food and supplies, etc.  Without exception, each of those entities that supply this industry are adversely affected and all entities that cater to the suppliers are adversely affected as well.

With regard to the commercial fishing fleet, a comparable situation occurred in Bayou LaBatre, Alabama.  The shrimping fleet in Pascagoula, Mississippi, is very similar to that in Bayou LaBatre, Alabama.  When the shrimping fleet was closed down in Bayou LaBatre, Alabama the city, and businesses located therein were adversely affected.  This was obviously acknowledged by BP and the PSC as Bayou LaBatre has been designated as a Zone A under the proposed economic settlement. (It cannot be in Zone A because of tourism as there is only one motel in Bayou LaBatre and there is no tourism).  Yet, Pascagoula, located approximately fifteen miles west of Bayou LaBatre, was placed in Zone C.

## VII. Gulf Coast Claims Facility

No explanation is needed for what the GCCF is and what it did.  Although there was certainly a significant amount of justified criticism as to the operations of the  GCCF it is generally accepted that the amount of payments that were made, to  specific areas, was a strong indicator of the economic damage caused.

In Mississippi, only Harrison County received more monies in payments from the GCCF than Jackson County.  Throughout the entire Gulf South Region, there are breakdowns of payments made per county.  There are numerous counties that have been classified as Zone A that received significantly less in payments than the businesses and individuals in Jackson County, Mississippi.  In the well publicized audit of the GCCF certain errors were found.  What was not found was widespread fraud in any particular county and certainly not in Jackson County, Mississippi.  It stretches the imagination as to how it was determined that this approximately fifteen mile area of the Mississippi Gulf Coast did not receive economic damages from the Deepwater Horizon and yet all the other areas without oil did.  Even the areas that were heavily oiled received less in payments than the businesses and individuals in Jackson County, Mississippi.  These other areas, both oiled and non oiled, were classified as Zone A.  The approximate fifteen mile stretch of Mississippi was classified as Zone C.

**VIII. Why it Matters**

    **A.**    **Causation**

As you are obviously aware, there is no causation requirement for Zone A.  In  Zone C, causation requirements are strenuous and require a profit level in 2011 above that of 2010. The Zone C "rebound" requirement may work well for businesses in areas that were not affected by actual oiling of the beaches and surrounding islands. The formula assumes that in 2011 everything was back to normal.  Again, for areas that did not actually receive oil that may be a valid assumption.  However, for areas that received "max oiling" that is not the case.  We are not  back to normal.  Water related businesses have gone out of business and marinas have gone bankrupt. Seafood processors have gone out of business and the view of our part of the country is still stained in many people's mind.  (For example, see the ads that continue to run, nationally, promoting the safety of Gulf seafood INCLUDING Mississippi seafood).

Despite this, the settlement agreement places a requirement on the majority of Jackson County businesses to show that their business significantly rebounded in 2011.  For most businesses that is a hurdle they cannot overcome. Presumably, the reason there is no "causation" and "rebound" requirement for Zone A is that the effects of the oil spill were ongoing in 2011.  Although that is probably absolutely correct, no one has demonstrated how this part of Mississippi is different than the other parts of the Gulf Coast that were adversely affected by the oil spill.  What are the facts that lead to the conclusion that Bayou LaBatre was still adversely affected in 2011 by the oil spill and Pascagoula was not?  How is Biloxi still affected in 2011 but the majority of Ocean Springs not?  How did the entire Florida Keys, which received no oil whatsoever, negatively affected in 2011 but we were not? There is no data to support these conclusions.

**IX. The Multiplier**

Zone A gets a minimum multiplier of 2 and a multiplier of 2.5 if it is tourism related. Zone C gets a multiplier of 1 and a multiplier of 1.5 if it is tourism related.  It is presumed that this multiplier is to compensate for the loss of future business because of the lingering effects of the oil spill.  As questioned in the paragraph above, where is the data that supports that this small area of Mississippi is different from the other areas on the Coast that are designated Zone A.

Finally, it must be pointed out that the oil spill is not over for our businesses and citizens.  The barrier islands received significant amounts of oil following the recent tropical depression in June 2012.  It is widely reported that there are oil mats

throughout the Mississippi Sound.  No one has stated that our Gulf beaches and Mississippi Sound beaches are free of oil.  Yet, following the rationale of the causation and multiplier, this area had completely recovered from the oil spill by the end of 2010.

## X. Unfair Treatment

The unfairness of differential treatment for identical businesses within a thirty mile radius is apparent under the current settlement (all businesses located on the Gulf Coast).  Three grocery stores provide an example.  One is located in Bayou LaBatre, Alabama, one in Pascagoula, and one in West Ocean Springs.  The grocery store in Pascagoula is located within fifteen miles of both the store in Bayou LaBatre and in West Ocean Springs.  In 2010, each saw a loss of $200,000.00 as a result of the oil spill.  In 2011, as the effects linger, each improved their business but still had a $190,000.00 loss.   Under the current classifications, the amounts that will be received under the settlement agreement are as follows:

(a) Bayou LaBatre Grocery Store: $600,000.00;
(b) West Ocean Springs Grocery Store: $600,000.00
(c) Pascagoula Grocery Store: $0

A number of businesses could be substituted for the grocery store and the results would be the same.  This is an outcome without any objective facts to set forth why this portion of Jackson County was treated differently than everywhere else.

## XI. Conclusion

Attached are photographs which were taken of Pascagoula Beach during the cleanup.  Yet Pascagoula, and its surrounding neighbors have been placed at a tremendous disadvantage with regard to claims for economic damages.  Each received the same oil, the same water, the same type industries yet this area is treated differently.

We ask that this approximately fifteen mile stretch of Mississippi be reconsidered and placed into Economic Zone A.  The facts do not justify this disparate treatment.

As discussed, it is hoped that a reasonable agreement can be reached without the need to file an objection with regard to same.  We believe that these areas were clearly treated disparately compared to other areas.  The purpose of the hearing in November is to determine if the settlement is "fair" to the class members. It would seem the disparate treatment implies unfairness.

EXHIBIT B

The August 31, 2012 deadline to file formal objections to the settlement is quickly approaching.  If these issues cannot be resolved with the PSC/Class Counsel/BP I would appreciate your letting me know enough in advance that I will have sufficient time to prepare an appropriate objection in U. S. District Court.

Thank you very much for your assistance and consideration of this matter.  If it would help, I am able make an in person presentation to the PSC and BP.

Sincerely yours,

Jim Hood
Attorney General

enc.

cc:    Michael Moore
       Special Assistant Attorney General
       State of Mississippi

       Jonathan Compretta
       Special Assistant Attorney General
       State of Mississippi

       Robert W. Wilkinson
       Attorney for the Cities of
       Gautier, Ocean Springs, Moss
       Point and Pascagoula, Mississippi
       and Jackson County, Mississippi

       Nathan A. Bosio
       Attorney for the Cities of
       Gautier, Ocean Springs, Moss
       Point and Pascagoula, Mississippi
       and Jackson County, Mississippi

       Amy Lassitter St. Pe'
       Attorney for the Cities of
       Gautier, Ocean Springs, Moss
       Point and Pascagoula, Mississippi
       and Jackson County, Mississippi

       Rick Kuykendall
       Attorney for the Cities of
       Gautier, Ocean Springs, Moss
       Point and Pascagoula, Mississippi
       and Jackson County, Mississippi