IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG DEEPWATER HORIZON IN THE GULF OF MEXICO, ON APRIL 20, 2010 | * <br> * <br> * <br> *   MDL No. 2179 <br> * <br> *   Section: J <br> * <br> *   Judge: Barbier <br> * |
| This Document Relates To:   All Cases | *   Magistrate: Shushan <br> * |

**NOTICE OF OBJECTIONS TO PROPOSED DEEPWATER HORIZON ECONOMIC
AND PROPERTY DAMAGES SETTLEMENT**

COMES NOW the firm of Waltzer & Wiygul, PLLC, and as attorneys of record for the Economic and Property Damages Class Members listed in Exhibit 1 file this Statement of Objections to the proposed Deepwater Horizon Economic and Property Damages Settlement Agreement. The information required by the Court's May 2, 2012 Preliminary Approval Order is set forth below.

**I.  INTRODUCTION**

The names, addresses and telephone numbers of each of the class members on whose behalf these objections are filed are set out on Exhibit 1. Exhibit 2 consists of tax records establishing that each person or entity listed on Exhibit 1 is a class member.

These objections are filed on behalf of specified natural persons and entities who are included as members of the class as consequence of their ownership of real property within the states of Louisiana and Mississippi.

A summary of the class members' objections to the proposed settlement follows:

1

1.  The Compensation Framework for Coastal Real Property Claims (Rec. Doc. 6276, Exhibit 11A) (hereafter the "Coastal Property Settlement) arbitrarily discriminates among identically situated pieces of property.  In many cases parcels are not eligible for compensation when parcels on either side or immediately adjacent to them are eligible.  This appears to be in part the consequence of use of Geographical Information System data derived from certain government reports, commonly referred to as "SCAT" reports, to define the areas that would be eligible for compensation.  The GIS data used to define the parcels eligible is frequently inaccurate, which results in class members being arbitrarily excluded from the group of class members who will receive compensation.

2.  The proposed settlement is arbitrary with respect to whether particular parcels will be considered "oiled," and therefore eligible for a higher level of compensation under either the Coastal Property Settlement or the Compensation Framework for Wetlands Real Property Claims (Rec. Doc. 6276, Exhibit 12)(hereafter the "Wetlands Property Settlement").  Parcels are considered oiled only if the presence of oil has been reported in certain government agency-generated documents, including SCAT reports.  In the absence of such documents, properties cannot be proven to have been oiled without an independent report from a government agency or academic entity.  This is a far higher burden than a class member would face in court, and is fundamentally arbitrary.  The consequence is that properties with directly observed oiling are nonetheless treated as un-oiled for compensation purposes.

3. The proposed settlement arbitrarily excludes certain areas from treatment as Wetlands Property, relegating them to a lesser category of compensation.

## II. THE COASTAL PROPERTY SETTLEMENT ARBITRARILY EXCLUDES CLASS MEMBERS FROM THE GROUP ELIGIBLE FOR COMPENSATION

The area within which coastal property owners are eligible for compensation is defined as the blue shaded portions of the Claim Zone Map included as Appendix A to Exhibit 11A, and is referred to as the Coastal Real Property Claim Zone. The criteria used to define the Coastal Real Property Claim Zone are included in Appendix B.

Appendix B states that the blue line is areas assessed through the Shoreline Cleanup Assessment Technique ("SCAT") process. This so-called "SCAT line" appears to be similar, if not identical to the line found on the ERMA Gulf Response GIS mapping tool posted on the internet.[1] The SCAT technique is, broadly speaking, a qualitative technique used in oil spill response to determine the extent of oiling for response purposes. It consists of field observations by teams of response workers, which are then reported back, compiled and apparently input into a GIS system. The "SCAT line" is therefore only as accurate as the information which goes into it.

Appendix B also states that "areas not directly intersected by the SCAT line, but touching a portion of the coast on which the SCAT line is located, regardless of whether or not the presence of oil was reported on that portion of the SCAT Line, are included in the Coastal Real Property Claim Zone." Appendix B further states that "[w]here portions of the SCAT line showing the presence of oil terminated short of certain physical boundaries (such as waterways, bridges, or roads), parcels between the termination of the SCAT line and the particular physical boundary were included in the Coastal Real Property Claim Zone."

Appendix D to the Coastal Property Settlement further includes a series of maps reflecting the "Administrator's Database," said to indicate specific parcels which are eligible for

---

[1] http://gomex.erma.noaa.gov/erma.html#x=-90.07072&y=29.29179&z=11&layers=14957+14975+17770+16404+14291+14293+2725+15024

differing levels of compensation. This map is presumed to be the "best available evidence" of the parcels eligible for compensation.

If a parcel is not shown as eligible for compensation under the Appendix D map and the Administrator's Database, the parcel may only be added by (a) showing it was oiled pursuant to the SCAT process or another official assessment, or (b) documentation of the property in Coastal Real Property Claim Zone in the form of an official document such as a 2010 tax notice or a professional survey.

It is not possible to know exactly why the Claim Zone looks like it does on the maps in the settlement without access to the underlying SCAT documentation. However, it is clear that the configuration of the Claim Zone arbitrarily excludes coastal real property owners from compensation, when identically situated owners are compensated.

This is illustrated by the property owned by class member Ethelyn Joachim at 1216 Iola Road, Ocean Springs, Mississippi. Ms. Joachim's property is located on Fort Bayou adjacent to Biloxi Bay, as indicated on the map below:



The Coastal Real Property Claim Zone Map apparently shows the blue line following the shoreline of Fort Bayou at this property, as shown below:



However, the Appendix D map showing eligibility according to the Administrator's Database shows Ms. Joachim's property as ineligible:



When Ms. Joachim's property is entered into the Settlement Administrator's online tool for determining eligibility for compensation, the property is also shown as ineligible. The arbitrary nature of eligibility for compensation under the settlement documents is demonstrated by the apparent contradiction in the maps, but also by the fact that, as apparent in the map above, parcels immediately adjacent to Ms. Joachim, and no differently situated than her parcel, are eligible for compensation.  There are numerous other class members in situations similar to that of Ms. Joachim.  This can be readily seen simply by comparing the Coastal Property Claim Zone Map with the map showing the eligible properties in the Administrator's database.  Properties directly adjacent to one another receive different results.

While the Settlement indicates that a property may be included in the Coastal Property Compensation Zone if a class member presents an appropriate government document or survey,

since it is unclear exactly how the Zone is configured, it is unclear what the class member can or should present.

Further, in some areas the Claim Zone simply stops in the middle of eligible properties. An example of this is the property owned by Class Member Greg Williams in the Eagle Point area of Ocean Springs, indicated in red on the map below.



As can be seen in the map excerpt below, the line simply stops one or two residences from Mr. Williams's property. The effect of the oil spill on Mr. Williams and his property was no different than its effect on his neighbors, who are being compensated.



The bottom line here is that similarly situated class members receive treatment that is just about as disparate as it can get: some of them are compensated, and some are not. There is no

7

reason that is expressed for this disparate treatment. For this reason the Coastal Real Property Settlement in its present form is objectionable and should not be approved, and the class representatives' representation of the class members is inadequate.

### III. THE WETLANDS PROPERTY SETTLEMENT ARBITRARILY EXCLUDES AND DISCRIMINATES BETWEEN SIMILARLY SITUATED PROPERTIES

The area covered by the Wetlands Property Settlement is specifically defined in the agreement and in essence is confined to coastal wetlands in Louisiana. Further, even within Louisiana certain areas, specifically areas on and adjacent to Grand Isle, are excluded from eligibility. This can be seen in the excerpt of Exhibit 12, Appendix A, in which Grand Isle and adjacent areas are excluded from the blue area:



Class member Zor, Inc. is a property owner in this area, and is excluded from the Coastal Wetlands Settlement. Zor's property can be seen below:

8



Zor's property is located on the north side of Cheniere Caminada, between Caminada Bay and Bay St. Honore., bordering Bay St. Honore. It is wetlands by nature. Yet rather than being eligible for the Wetlands Property Settlement, which carries payments amounting to tens and even hundreds of thousands of dollars, this property is relegated to a class which carries far less in compensation. It may be noted that wetlands owners in Mississippi and Alabama are in a similar situation. Such a compensation scheme is inherently arbitrary and the settlement should be reformed to correct this inequity.

### IV.  THE WETLANDS PROPERTY SETTLEMENT IMPOSES BURDENS GREATER THAN THOSE WHICH LITIGANTS WOULD FACE IN COURT

Like the Coastal Property Settlement, the Wetlands Property Settlement requires that any change to a classification carrying higher compensation – ie from unoiled to oiled – be supported by a government document or independent academic study. The Manual for Complex Litigation (4th) counsels that the courts should be wary of situations where a settlement imposes "such strict eligibility conditions or cumbersome claims procedures that many members will be unlikely to claim benefits, particularly if the settlement provides that the unclaimed portions of the fund will revert to the defendants." *Id.* § 21.61, p. 311. In a court proceeding, a party could show that its

9

property received oil from the oil spill in a number of ways, including the common sense proposition that if oil suddenly showed up during the oil spill in a place it had never been before, that oil was likely from the Deepwater Horizon incident.

Class members living in the Rigolets Estates area near Lake Pontchartrain are in this situation. These properties are indicated on the SCAT maps as being in an unoiled area, but in fact property owners observed oil, and there were independent media reports of oil in the area. The declaration of Letitia Basilio, attached as Exhibit 3, notes that her property is shown as unoiled, but she includes a photo of response workers clearing oil from her property. Property owners in Ms. Basilio's position should not be relegated to a lesser category of compensation due to unreasonably strict requirements for proving that their property was oiled. The Settlement should also be reformed to permit other reasonable evidence to be used to show that property was in fact oiled.

DATED on this 7th day of September 2012.

                                                                                      Respectfully submitted,

/s/ Robert Wiygul
ROBERT WIYGUL (#17411)
JOEL R. WALTZER (#19268)
CLAY GARSIDE (#29873)
Waltzer & Wiygul, LLP
1011 Iberville Drive
Ocean Springs, MS 39564
Telephone: (228) 872-1125
Facsimile: (228) 872-1128

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Objections have been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of August, 2012.

      I further certify that the above and foregoing Plaintiffs' Objections were sent by U.S. first-class mail to: **Economic Lead Class Counsel:** James Parkerson Roy, Esquire, Attention: Deepwater Horizon E&PD Settlement, Domegeaux Wright Roy & Edwards, 556 Jefferson Street, Suite 500, Post Office Box 3668, Lafayette, LA 70501; Stephen J. Herman, Esquire, Attention: Deepwater Horizon E&PB Settlement, Herman Herman Katz & Cotlar LLP, 820 O'Keefe Avenue, New Orleans, LA 70113; **Defendants' Counsel:** Richard C. Godfrey, P.C., Attention: Deepwater Horizon E&PD Settlement, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654, on this 7th day of September 2012.

      /s/ Joel Waltzer

# EXHIBIT "A"

| Class Member | Phone Number | Coastal/Wetlands Property Address |
|---|---|---|
| Joachim, Ethelyn | 228-875-2334 | 1216 Iola Road<br>Ocean Springs, MS 39564 |
| Garringer, James | 228-875-5453 | 13613 Fairway Drive<br>Ocean Springs, MS 39564 |
| Sekul, Sherman | 228-326-4650 | 5629 Shore Drive<br>Ocean Springs, MS 39564 |
| Williams, Gregory | 228-875-8415 | 10725 Eagle Nest Road<br>Ocean Springs, MS 39564 |
| Zor, Inc. | 504-400-5302 | P.O. Box 11332<br>New Orleans, LA 70181 |
| Arbo, Craig | 985-710-0857 | 228 Marlin Drive<br>Slidell, LA 70461 |
| Attaway, Ronald | 985-643-1808 | 224 Marlin Drive<br>Slidell, LA 70461 |
| Baillio, Letitia | 504-884-6636 | 236 Marlin Drive<br>Slidell, LA 70461 |
| Bertucci, Pamela | 504-909-1773 | 227 Marlin Drive<br>Slidell, LA 70461 |
| Blanchard, Timothy S. | 504-382-2456 | 240 Marlin Drive<br>Slidell, LA 70461 |
| Carrone, Ronald | 504-494-4910 | 126 Marlin Drive<br>Slidell, LA 70461 |
| Dargis, George D. | 985-966-7362 | 108 Herring Drive<br>Slidell, LA 70461 |
| Daspit, James E., Jr. | 985-710-9094 | 244 Marlin Drive<br>Slidell, LA 70461 |
| Duplessis, Andrew J., Jr. | 504-210-7246 | 112 Marlin Drive<br>Slidell, LA 70461 |

| | | |
|---|---|---|
| Falgout, Robert | 985-640-4257 | 220 Marlin Drive<br>Slidell, LA 70461 |
| Gonzalez, Alejandro | 985-960-3838 | 214 Marlin Drive<br>Slidell, LA 70461 |
| Maxwell, Barbara | 504-813-5798 | 234 Marlin Drive<br>Slidell, LA 70461 |
| Nagim, Ernest J., Jr. | 985-789-1123 | 226 Marlin Drive<br>Slidell, LA 70461 |
| Pittman, Jerret M. | 985-960-2448 | 52 Treasure Isle<br>Slidell, LA 70461 |
| Steilberg, Beryl F. | 504-458-6409 | 107 Herring Drive<br>Slidell, LA 70461 |
| Veade, Danell S. | 985-502-5763 | 106 Herring Drive<br>Slidell, LA 70461 |
| Watkins, Jo | 985-640-7964 | 212 Marlin Drive<br>Slidell, LA 70461 |
| Watson, Steven | 985-774-4518 | 222 Marlin Drive<br>Slidell, LA 70461 |
| Mondello, Michael R. | 985-290-5615 | 110 Herring Drive<br>Slidell, LA 70461 |
| Gordon, Christopher J. | 504-891-3180 | 113 Herring Drive<br>Slidell, LA 70461 |
| Parks, Lester J., Jr. | 985-718-9101 | 128 Marlin Drive<br>Slidell, LA 70461 |
| Richard, Michel | 504-416-4985 | 246 Marlin Drive<br>Slidell, LA 70461 |
| Richard, Chelsea | 504-464-6242 | 246 Marlin Drive<br>Slidell, LA 70461 |