**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater | * | MDL NO. 2179 |
| Horizon" in the Gulf of Mexico on | * | |
| April 20, 2010 | * | SECTION: J |
| | * | |
| This document relates to: | * | |
| | * | HONORABLE CARL J. BARBIER |
| 10-7777, 12-970 and 12-968 | * | |
| | * | MAGISTRATE JUDGE SHUSHAN |

---

<u>**STATE OF LOUISIANA'S *AMICUS CURIAE* MEMORANDUM IN OPPOSITION TO
MOTION FOR CERTIFICATION OF ECONOMIC AND PROPERTY DAMAGES
SETTLEMENT CLASS AND IN OPPOSITION TO MOTION
FOR CERTIFICATION OF MEDICAL BENEFITS SETTLEMENT CLASS**</u>

**NOW INTO COURT**, comes James D. "Buddy" Caldwell, Attorney General of the

State of Louisiana, as *amicus curiae* on behalf of the State of Louisiana ("Louisiana" or "State")

and its citizens, to oppose certification of the Economic and Property Damages Settlement Class

("E&PD Class") and the Medical Benefits Settlement Class ("MB Class"), the definitions of

which include thousands of Louisiana citizens for each class.

I.  <u>**INTRODUCTION**</u>

On April 16, 2012, in anticipation of filing a settlement agreement, the PSC[1] filed two

new complaints in MDL-2179: (1) Class Action Complaint for Private Economic Losses and

Property Damages, entitled *Bon Secour Fisheries, Inc., et al. v. BP Exploration & Production,*

*Inc., et al.*, No. 2:12-CV-00970 ("E&PD Complaint"),[2] which asserts claims for "economic loss

and property damages" on behalf of a class defined in the complaint, and (2) Medical Class

---

[1] Both complaints state that the respective suits are brought on behalf of Plaintiffs "by and through Interim Class Counsel and Proposed Class Counsel identified herein."
[2] The E&PD Complaint was amended on May 2, 2012. [Rec.Doc. 6412]

Action Complaint, entitled *Plaisance, et al. v. BP Exploration & Production, Inc., et al.*, No. 2:12-CV-00968 ("MB Complaint"), which asserts claims for "exposure-related personal injury and/or medical monitoring relief" on behalf of a defined class.  On April 18, 2012, the PSC and BP entered into an Economic and Property Damages Settlement Agreement ("E&PD Settlement") [Rec. Doc. 6276-1] and a Medical Benefits Class Action Settlement Agreement ("MB Settlement") [Rec. Doc. 6273-1][3], which were filed with the Court together with motions for preliminary approval of the settlements, certification of a settlement classes (as defined in the complaints), approval of a notice plan and for scheduling a final fairness hearing.

According to both complaints, jurisdiction is based on the Court's admiralty and maritime jurisdiction, (Art. III, Sec. 2), 28 U.S.C. §§ 1331 and 1333, and the Admiralty Extension Act.  The E&PD Complaint also alleged jurisdiction based on the Oil Pollution Act (OPA), 33 U.S.C. § 2717(b).  The complaints seek to certify opt-out classes under Fed. R. Civ. P. 23(b)(3)[4] as a vehicle for the effectuation of the recent settlements between the PSC and BP.

In the E&PD Complaint, there are fifteen named plaintiffs who seek qualification as settlement class representatives.  One plaintiff alleges that it is a seafood processing company that lost income; four allege that they are shrimpers or fishermen who lost income and suffered VoO[5] contract damages; one is an oyster farmer alleging damage to his oyster crop; one is a subsistence fisherman; one is a seafood restaurant; one is a marine tourism business; one is a charter fishing business; four are owners of real estate claiming property damage; and one is a real estate agency claiming lost business from a drop in vacation rentals.

---

[3] More specifically, the agreements were made between BP Exploration & Production, Inc. and BP America Production Company (BP) and the Economic Class Representatives (plaintiffs named in the new E&PD Complaint), on behalf of an Economic and Property Damages Settlement Class in the case of the E&PD Settlement and the Medical Benefits Class Representatives (plaintiffs named in the new MB Complaint), on behalf of a Medical Benefits Settlement Class in the case of the MB Settlement.

[4] Rule 23(b)(3) requires notice of a settlement be provided to the class and gives any class member the opportunity to opt out of the class and pursue his or her claim in an individual lawsuit.

[5] VoO refers to the Vessels of Opportunity program.

In the MB Class, there are eleven named plaintiffs.  Three of the plaintiffs, Camille Warren (AL), Christian Pizani (LA), and Janice Brown (FL), allege that they are residents on or near the shore and were exposed to oil and dispersant fumes. All of the other eight plaintiffs are response personnel who allege exposure to oil and dispersants as a result of their clean-up work in various capacities (5 in Louisiana, 1 in Mississippi, 1 in Alabama and 1 in Florida).

The only named defendants in either of the complaints are BP Exploration & Production, Inc., BP America Production Company, and BP plc.  Although Transocean and Halliburton parties are not named as defendants in the complaints, the complaints allege that "BP, Transocean and Halliburton are jointly, severally and/or solidarily liable under various principles of maritime and/or Federal tort law." The complaints purport to reserve all rights against Transocean and Halliburton, as well as any other claims not specifically made in the B1 Master Complaint for the E&PD Class and in the B3 Master Complaint for the MB Class.

The E&PD Complaint alleges that the class suffered economic and property damages from the Macondo well blowout and breach of contract from participation in BP's VoO program in response to the blowout.  The MB Complaint alleges exposure of the Class to crude oil and its components as a result of the Macondo well blowout and exposure to dispersants (Corexit, PES51, OMI-500) as a result of the response efforts.  In addition to ongoing symptoms, the MB Complaint alleges that the class "has been placed at risk of developing additional diseases over the decades."  Besides personal injury damages, the MB Complaint claims entitlement to medical monitoring for the MB Class.  Both complaints seek class-wide punitive damages for BP's willful and wanton misbehavior.

**A.** *Class Allegations:*

Each complaint describes a single class with no sub-classes.  In the E&PD Complaint, the E&PD Class is made up of individuals and entities in the following geographic areas who were at any time between April 20, 2010, and April 16, 2012:

a) Individuals who worked in, owned or leased property in, or owned, leased or worked on a vessel home ported in Louisiana, Mississippi, Alabama, and certain counties in Texas and Florida; or

b) Entities doing business in the Gulf Coast Areas or Specified Gulf Waters (terms defined in the settlement agreement).

In order to qualify as a class member, the above-described individuals and entities must have suffered damages in one or more of the following Damage Categories:

a) Seafood Compensation Program: commercial fishermen, seafood crew, seafood vessel owners, and oyster leaseholders for economic damages from fishing, processing, or selling seafood;

b) Economic Damage Category: Loss of income, earnings or profits suffered by Natural Persons or Entities as a result of the Deepwater Horizon Incident, subject to certain exclusions (Exhibits 16-19);

c) Subsistence Damage Category: individuals who fish, hunt, etc. to feed themselves and family;

d) VoO Charter Payment Category: damages suffered by individuals or entities who participated in BP's VoO program and executed a "VoO Master Vessel Charter Agreement" with BP or any of its subcontractors, and completed the initial VoO training program;

e) Vessel Physical Damage Category: physical damage sustained by "an eligible claimant's eligible vessel" due to the Deepwater Horizon incident or response cleanup operations;

f) Coastal Real Property Damage Category:  damages alleged by a "Coastal Real Property Claimant" that meet the requirements of the "Coastal Real Property Claim Framework";

g) Wetlands Real Property Damage Category:  damages alleged by a "Wetlands Real Property Claimant" that meet the requirements of the "Wetlands Real Property Claim Framework"; and

h) Real Property Sales Damage Category:  damages alleged by a "Real Property Sales Claimant" that meet the requirements of the "Real Property Sales Framework."

Excluded from the E&PD Class are opt outs, employees of BP and other defendants in the MDL, judges and court staff, Financial Institutions, Funds, Financial Trusts, Gaming businesses, Insurance Entities, Oil & Gas Industry, Defense Contractors, Real Estate Developers, any Entity "selling or marketing BP-branded fuel," Governmental Organizations, any person or

entity who signed a complete release with GCCF (but they can still make a VoO claim), and any person releasing bodily injury claims only.

The proposed MB Class is limited to residents of the U.S. who as of April 16, 2012:

a) Worked as "Clean-Up Workers" at any time between April 20, 2010, and April 16, 2012;
b) Resided in Zone A (Gulf Coast beachfront areas inland to ½ mile) for some time on each of at least sixty days between April 20, 2010, and September 30, 2010 and developed one or more specified physical conditions between April 20, 2010, and September 30, 2010; or
c) Resided in Zone B (Gulf Coast wetlands areas up to 1 mile inland) for some time on each of at least sixty days between April 20, 2010, and December 31, 2010.

Excluded from the MB Class are BP employees, judges and court staff, individuals aboard the *Deepwater Horizon* on April 20, individuals who released their claims against BP, and Zone A or B residents who worked for at least five years as petroleum tank cleaners, or in the storage or handling of petroleum products, naturally occurring radioactive materials ("NORM"), or tar distillation.

**B.  *Preliminary Approval Order:***

Class action settlement approval is a two-stage process.  First, the court determines whether "probable cause" exists for class certification and fairness of the settlement at a preliminary approval hearing. MANUAL FOR COMPLEX LITIGATION 4th § 21.632 (2005).  In a preliminary approval order, the court directs notice to the class, an opportunity to opt out, and sets a final fairness hearing.  Second, the court conducts a final fairness hearing, where evidence is taken and opponents may be heard, to decide whether to finally certify a settlement class and to grant final approval to the settlement.  On May 2, 2012, this Court issued an order giving preliminary approval to both the E&PD Settlement and the MB Settlement, ordered the distribution of notice and scheduled a final fairness hearing for November 8, 2012. [Rec. Doc. 6419]

## II.   <u>LAW AND ANALYSIS</u>

### A. *Rule 23 Requirements:*

The standards for certifying a class for settlement purposes are the same as for certifying a class for litigation purposes, with the single exception that the court need not inquire whether the case, if tried, would present intractable management problems. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).   But, as the Supreme Court stated in *Amchem*, "other specifications of the Rule – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention in the settlement context." *Id*. at 620.

A court's desire to efficiently dispose of a complicated mass tort settlement through the class certification process is not sufficient justification for ignoring the requirements of Rule 23. "Federal courts, in any case, lack authority to substitute for Rule 23's certification criteria a standard never adopted – that if a settlement is 'fair', then certification is proper." *Id*. at 622.

Because of the important due process concerns inherent in the certification decision, a rigorous analysis of Rule 23's prerequisites is mandated. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Unger v. Amedisys, Inc.*, 401 F.3d 316, 320-321 (5th Cir. 2005).   Additionally, the party seeking certification bears the burden of establishing that each of the requirements of Rule 23 has been met. *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003); *O'Sullivan v. Countrywide Home Loans, Inc*. 319 F.3d 732, 737-738 (5th Cir. 2003).

To satisfy this burden, the Plaintiffs must establish that all of the requirements of Rule 23(a) have been met, namely that:

1) The class is so numerous that joinder of all members is impracticable;
2) There are questions of law or fact common to the class;
3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4)  The representative parties will fairly and adequately protect the interests of the class.

These four criteria go by the familiar shorthand names of numerosity, commonality, typicality and adequacy of representation, respectively.

In addition, in this case, the requirements of Rule 23(b)(3) must also be met.  These are (1) predominance, *i.e.*, questions of fact or law common to the class predominate over questions affecting only individual members, and (2) superiority, *i.e.*, class action procedure is superior to other methods for fairly and efficiently adjudicating the controversy.  Finally, or perhaps primarily, the class must be adequately defined and clearly ascertainable. *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970).

### B.  *Ascertainable Class Definition:*

The Manual for Complex Litigation (Fourth) explains the necessity for a precise, objective class definition:

> Defining the class is of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the "best notice practicable" in a Rule 23(b)(3) action. The definition must be precise, objective, and presently ascertainable.

> The order defining the class should avoid subjective standards for inclusion in the class (e.g. a plaintiff's state of mind) or terms that depend on resolution of the merits (e.g. persons who were discriminated against.)

MANUAL FOR COMPLEX LITIGATION 4th § 21.222 (2005).  The Fifth Circuit has echoed this requirement in *Debremaecker,* stating that "[i]t is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."

In *Barasich v. Shell Pipeline Co.*, 2008 WL 6468611, at *2 (E.D.La., Barbier, J.)[6], this honorable Court held that a proposed class was not ascertainable when it was defined as "all commercial oystermen whose oyster leases were contaminated by oil discharge during Hurricane

---

[6] All unreported cases referenced herein are attached as global Exhibit A.

Katrina due to the negligence of defendants."  This Court held that the class definition was inadequate because "the determination of whether an individual is a member of the proposed class (or sub-class) cannot be determined without inquiring into the merits of each person's claim." *Id.*

 "The inquiry is whether 'it is administratively feasible for the court to determine whether a particular individual is a member,'" *McGuire v. Int'l Paper Co.,* 1994 WL 261360, at *3 (S.D.Miss.1994) (quoting 7A Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE CIVIL 2D § 1760, at 121 (1986)), which "requires that the class be defined 'in objective terms that are capable of present ascertainment.'" *Id.; see also In re: Vioxx Prods. Liab. Litig.*, 2008 WL 4681368, at *9, (E.D.La., Fallon, J.); *Bauer v. Dean Morris, LLP*, 2011 WL 3924963, at *3 (E.D.La., Duval, J.)  Here, one would have to prove that he fit one of the damage categories to qualify as a class member; that is, prove his damages.  A class cannot be defined in terms of the merits of the case as is being attempted by the settlements currently before this Court.

For purposes of the E&PD Settlement, the class definition is <u>nine pages long</u>.  It is a single massive class with no sub-classes, which purports to include fishermen, shrimpers, crabbers, oystermen, boat owners, restaurant owners, home owners, beach condo owners, VoO boat charterers, sellers of real estate, and anyone who allegedly suffered "loss of income, earnings or profits as a result of the Deepwater Horizon Incident" who happened to be in a defined Gulf Coast Area during a specific time frame.  Inclusion in class membership requires a person or entity to have suffered one or more specific categories of damages.  While summarized in the main body of the E&PD Settlement, persons or entities would have to examine the fifteen exhibits to the Agreement, consisting of hundreds of pages, to determine if they qualify as class members.  This class definition is extremely convoluted and fails the *DeBremaecker* test.

Similarly, with respect to the MB Settlement, one of the categories of class members included in the class definition is all natural persons who:

> Resided in Zone A for some time on each of at least sixty days between April 20, 2010, and September 30, 2010 ("Zone A resident"), and who developed one or more Specified Physical Conditions, which are set forth in the Specified Physical Condition Matrix attached to the Medical Settlement, between April 20, 2010, and September 30, 2010.

"Specified Physical Condition," in turn, is defined in the MB Settlement Agreement as acute or chronic conditions that <u>arose out of</u> a class member's "<u>exposure to</u> oil, other hydrocarbons, or other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants, and/or decontaminants used in connection with the RESPONSE ACTIVITIES, <u>and that first manifested or was exacerbated</u> within the timeframes set forth in Exhibit 8." (emphasis added)

In order to qualify as a Zone A medical class member pursuant to the above definitions, one must show not only that he/she lived in that zone during the relevant timeframe, but that he/she "developed" one or more specified symptoms during that same timeframe, which were caused by exposure to oil from Macondo, and/or dispersants from the response efforts.  In other words, one must prove his case to qualify as a Zone A class member, a requirement that makes the class definition inadequate and therefore uncertifiable on its face.  *See Barasich*, 2008 WL 6468611 (E.D.La. 2008).

The MB Class definition also excludes from the Class Zone A and B Residents, people who worked for a five-year period before April 20, 2010 in one of five "capacities" centered around the handling and storage of oil, petroleum products, tar and naturally occurring radioactive materials ("NORM").   This exclusion describes, for example, the "storage, transportation, distribution or dispensing of gasoline, diesel, jet fuel, kerosene, motor fuels, or

other hydrocarbon-based fuels at any bulk storage facility (not including gas stations or gas station convenience stores), bulk plant, or bulk terminal facility that stores hydrocarbons or petrochemicals."   It is unclear whether, for example, that definition includes the office staff (secretaries, office managers, sales personnel, etc.)  who worked at a bulk terminal facility or whether it includes a clerk at a convenience store that sells cans of motor oil.   The term "capacity" is simply too vague to determine if one is excluded from the class, especially as it concerns the "storage, transportation, distribution or dispensing" of petroleum products.

**C.  *Rule 23(a)(1) Numerosity:***

To demonstrate numerosity, Plaintiffs must establish that joinder is impracticable through "some evidence or reasonable estimate of the number of purported class members." *Pederson v. La. State Univ.* 213 F.3d 858, 868 (5th Cir. 2000).   Although the precise number of class members need not be known, given the vast breadth and reach of the class definition for both the E&PD Class and the MB Class, the numerosity criterion is most likely met under these circumstances.

**D.  *Rule 23(a)(2) Commonality:***

This rule requires that there be issues of law or fact common to the class. "That language is easy to misread, since 'any competently crafted class complaint literally raises common questions.'…Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)

In the amended E&PD Complaint, Plaintiffs rely heavily on the contention that the factual bases of Defendants' conduct are common to all class members." [Rec. Doc. 6412, ¶310]. Plaintiffs go on to list "a series of significant factual questions with common answers" such as "Whether Defendants negligently, outrageously, willfully, wantonly, and/or recklessly caused

and/or contributed to the Deepwater Horizon Incident."  In its most recent brief,[7] the PSC has added new "common issues": (1) "the common and strict liability imposed for the benefit of all class members under the Oil Pollution Act", (2) "factual issues regarding the underlying causes of the explosion and spill with respect to the assigned and reserved third-party claims", and (3) "legal interpretation of causation under OPA."  None of these issues resolves any part of the claims of each and every class member in the E&PD Class in one stroke.

1.  *BP's Negligence in causing the blowout:*

The cause of the blowout is irrelevant to two major categories of claims in the E&PD Settlement:  Economic Damage Compensation (Settlement Agreement § 5.3) and VoO Charter Payments (Settlement Agreement § 5.5).

In this Court's "Order and Reasons as to Motions to Dismiss the B1 Master Complaint" [Rec.Doc. 3830, at 24-25], all of the general maritime claims for economic damage barred by *Robins Dry Dock* were dismissed.  Thus, any economic damages sought in this lawsuit by those claimants would be compensated <u>exclusively</u> by OPA, a strict liability statute.  One of the settling defendants, BP Exploration & Production, Inc., has been designated as a Responsible Party under OPA; this defendant has admitted liability under OPA and has waived the $75 million cap on damages.  Therefore, negligence, whether ordinary or willful and wanton, is not an issue at all, much less a common one as to E&PD class members.

Likewise, VoO class members base their claims on breach of contract to clean up oil <u>after</u> the spill; therefore, the cause of the spill is irrelevant to the determination of BP's liability and the amount of damages necessary to compensate these class members.  Although VoO claimants may be entitled to punitive damages under general maritime law, the willfulness and wantonness

---

[7] Plaintiffs' Memorandum in Support of Final Approval of Economic and Property Damages Class Settlement" [Rec.Doc. 7171-2, at 40-41].

of BP's behavior is measured in its administration of the charter parties, not in its activities before entering into the VoO charter agreements.

2.   ***Common and strict liability under OPA:***

This question was answered long before this E&PD Class was filed and the E&PD Settlement reached.  Again, BP Exploration & Production, Inc. is a Responsible Party under OPA, has admitted liability and has waived the $75 million cap on damages.  There are no OPA liability issues in the E&PD Class.

3.   ***Factual issues regarding reserved and third-party claims:***

These issues have nothing to do with the issues in the E&PD class action.  The only parties sued in this class action are BP entities.  Whether the PSC reserved or acquired claims in the E&PD Settlement does not create issues in the lawsuit.  The E&PD Class sought to be certified here is derived from the E&PD Complaint, not the E&PD Settlement.  All defendants in this lawsuit have settled and are being completely released.

4.   ***Legal interpretation of causation under OPA:***

The E&PD Complaint alleges breach of contract under general maritime law.[8]  The legal interpretation of causation under OPA has no bearing on the legal and factual issues involved in the VoO breach of contract claims.

The dictate of the Supreme Court in *Wal-Mart v. Dukes* makes clear that mere recitation of an issue of violation of law by the same defendant is not enough to satisfy commonality.  "What matters to class certification…is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceedings to generate common *answers* apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential

---

[8]  Amended Class Action Complaint for Private Economic Losses and Property Damages [Rec.Doc. 6412 at 123-124].

to impede the generation of common answers." *Wal-Mart v. Dukes*, 131 S.Ct. 2541, 2551 (2011). Whether BP was negligent in causing the Macondo blowout, or whether it failed to timely control the oil spill, is meaningless if BP is strictly liable under OPA (an issue already determined), for economic damages of the E&PD Class, or, in spite of OPA, whether it has breached charter agreements entered into after the Macondo blowout.

In their MB Complaint, and in their memorandum in support of class certification for the MB Settlement [Rec. Doc. 6272-1], Plaintiffs again rely heavily on the contention that "BP's liability for the *Deepwater Horizon* explosion and the subsequent release of oil" are the core common issues for class certification. *Id.* ¶93. Plaintiffs go on to list seven alleged common legal and factual issues in ¶94 of the MB Complaint:

> a. the facts surrounding the explosion and fire onboard the Deepwater Horizon that eventually caused the vessel to sink, and the release of oil and other substances from the Macondo well and/or the Deepwater Horizon and its appurtenances;
>
> b. whether BP owed a duty to Class members in the operation of the Deepwater Horizon and Macondo well;
>
> c. the facts concerning the types of injuries caused by exposure to oil and/or dispersants;
>
> d. whether BP owed a duty of care to Class members in the use of dispersants and/or other hazardous chemicals and  other efforts to respond to the Oil Spill;
>
> e. whether BP recklessly, willfully and/or wantonly failed to ensure that adequate safeguards, protocols, procedures and resources would be readily available to prevent and/or mitigate the effects of an uncontrolled oil spill into the waters of the Gulf of Mexico and to prevent injuring Plaintiffs;
>
> f. whether BP breached duties of care to Class members by causing and/or allowing the Oil Spill to occur and remain ongoing for months through its actions and omissions in conducting Response Activities; and
>
> g. whether BP recklessly, willfully and/or wantonly failed to utilize reasonably safe dispersant chemicals  in its attempt to respond to the Oil Spill, and thereby exacerbated the pollution of the Gulf of Mexico and injury to Plaintiffs.

Four of the foregoing issues (a, b, e and f) relate to liability for the oil spill, and two issues (d and g) relate to liability for the use of dispersants.   As the MB Complaint sets out two distinct fact patterns for BP's liability for exposure to oil MD Complaint ¶¶ 24 – 40, and dispersants, MB Complaint ¶¶ 41 – 67, proof of liability for one does not amount to proof of liability for the other.   As these separate fact patterns concern liability for exposure of the MB Class to different contaminants, either one or both of which Plaintiffs may show was the causative element for the personal injuries of any one class member, the commonality criterion is not met.   Whether BP was negligent in causing the Macondo blowout is irrelevant to BP's failure to protect people from exposure to dispersants.

In light of *Wal-Mart*, the Fifth Circuit effectively overruled its long line of low-threshold commonality decisions in the recent case of *M.D. ex rel. Stukenberg v. Perry*, ---F.3d---, 2012 WL 974878 (5th Cir. Mar. 23, 2012).   In *Perry*, the District Court certified a class action before the *Wal-Mart* decision was rendered by the Supreme Court, finding commonality was met by relying on *James v. City of Dallas*, 254 F.3d 551 (5th Cir. 2001); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999); *Forbush v. J.C. Penney Co*., 994 F.2d 1101 (5th Cir. 1993); and *Doiron v. Conseco Health Ins. Co*. 279 Fed. Appx. 313 (5th Cir. 2008). The Fifth Circuit heard the appeal after *Wal-Mart* and, without specifically overruling those cases, found the District Court erred in its low-threshold commonality decision.   According to the *Perry* court, under *Wal-Mart* Rule 23(a)(2) "requires that all of the class member's claims depend on a common issue of law or fact whose resolution 'will *resolve* an issue that is *central to the validity* of each one of the [class member's] claims in one stroke.'"   *Perry*, 2012 WL 974878, at *6.   As discussed above, there is no common issue of fact or law that resolves any part of the claims of each and every class member in either the E&PD Class or the MB Class in one stroke.

14

### E.  *Rule 23(a)(3) Typicality*

"The typicality requirement 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent.'" *Martin v. Home Depot U.S.A., Inc*. 225 F.R.D. 198, 201 (W.D. Tex. 2004) (quoting *Lightbourn v. Cnty of El Paso, Tex*., 118 F.3d 421, 426 (5th Cir. 1997)).  The plaintiffs' claims are typical of those of the class if they arise from the same event or course of conduct that gives rise to the claims of the class.  *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001).  Rule 23(a)(3) requires that the claims of the class representatives share the same essential characteristics as those of the class. *See In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 460 (E.D. La. 2006).  An examination of the claims of the proposed class representatives indicates that the typicality criterion is not met here.

The Plaintiffs' incorrectly assert that "the entire Class shares the same foundational theories of liability under federal statutory and general maritime law, arising out of the same event and BP's conduct prior to and following the explosion and oil spill," [Rec. Doc. 6269-1, at 12] [Rec. Doc. 6272-1, at 14].  In truth, the proposed E&PD Class representatives are shrimp and fishing boat owners/captains, restaurateurs, beach condo owners, marshland owners, and rental companies.  Some have general maritime law tort claims, some have strict liability OPA claims, and some have breach of contract claims.  Proof of liability, causation and damages among these diverse groups is far from uniform and is even less so for the thousands of E&PD class members they seek to represent.

Similarly, for purposes of the MB Class, while the blowout of the Macondo well might be considered a single event, the widespread use of dispersants over several months certainly would not.  As discussed in the Commonality section, above, Plaintiffs' MB Complaint describes

two discrete sets of facts resulting in the release of oil and the release of dispersants.  The MB Complaint particularly alleges that for two months following the blowout, BP "covered approximately 291 square miles of the Gulf with dispersant," primarily with airborne sorties flying out of three different states.  MB Complaint ¶¶59, 66.  The Complaint further describes how BP defied the EPA by continuing to use dispersants when instructed not to do so.

The MB Complaint's description of the eleven proposed class representatives' claims highlights the disparity of the types and duration of exposure to chemicals.  Eight plaintiffs were Clean-up Workers and three were Residents along the Gulf Coast.   Among the Clean-up Workers, some worked on VoO boats in different states, some worked on land collecting tar balls, and one was a Louisiana National Guardsman called up to build barriers along the coast of Louisiana.  The duration of their exposure varied: one for two months, one for ten days, one for six weeks, one for four months, one for one month, and one for one day.  Two workers did not allege any duration of exposure.  The symptoms of the Clean-up Workers varied as well: several reported vomiting and nausea, some reported skin rashes, some reported respiratory problems, one reported eye problems and one reported only heat stroke.[9]

Among the three Resident class representatives on the MB Complaint, one reported respiratory problems while walking on the beach in Alabama in May 2010[10], one Florida resident reported noticing "a distinct odor in the air that did not exist prior to the spill" but did not report symptoms until July 2010, and a Louisiana resident reported exposure to "oil fume odors" during the summer of 2010.  As noted by the State in its request that this Court allow for discovery into certain issues related to the settlements, recently (in the context of oral argument for the PSC's

---

[9] The MB Settlement Agreement excludes all non-exposure traumatic bodily injuries except heat stroke in Clean-up Workers.  How heat stroke to a Clean-up Worker wearing a moon suit walking on a Gulf Coast beach in June can be proximately caused by the oil spill is legally questionable.

[10] Camille Warren, a resident of Gulf Shores, AL, also alleged that around this same time "a truck and equipment used for beach clean-up was parked nearby her home."

Motion to Dismiss certain plaintiff cleanup workers claims against Responder-Defendants) counsel for the PSC acknowledged that the substance of the claims was somewhat unknown, largely individualized and unsuitable for aggregate treatment in a bundled Complaint.[11]   It is issues like these which call into question the propriety of class treatment for such claims, even in a settlement context.

Exposure of Residents appears from the MB Complaint to be exclusively from toxic fumes from the Gulf, while the Clean-up Workers seem to have had more direct contact, by standing in oily water, retrieving oil-soaked boom, and picking up tar balls on the beach.  Factual differences between Residents' exposure and BP's liability for Clean-up Workers' exposure are more pronounced as it concerns dispersants.   It is alleged that "BP's aerial spray planes negligently and/or intentionally sprayed chemical dispersants on the water despite the presence of boats and their crews in the vicinity of the spraying."   MB Complaint ¶69.   The MB

---

[11]

> [W]e had discussions at length about whether to include the responder defendants. . . . There were people who really did not think it belonged in the bundle complaint; and, they were right, and I was wrong. . . . [T]he reason we shouldn't have put them in the bundle is, in discovery, it is impossible for us, as a Plaintiffs' Steering Committee, to respond to the individualized nature of an individual who is on a beach and who gets sprayed.  There is no way to do that.  We don't represent all hundred thousand cleanup workers.  Many of them are unrepresented and many of them are represented by lawyers who we don't know.
>
> ***
>
> [W]e found ourselves faced with discovery that was asking about individual people's exposure to individual cleanup company's acts that were outside of the orders and which they were doing. . . . We don't represent them. . . . So our settlement with BP, again, if Your Honor grants class certification, our settlement in large measure resolves a lot of the concerns they have of litigation a case that they shouldn't be in because all cleanup workers are class members; so, unless they opt out, they will be part of the class, and all of the defendants will be released by operation of the release and the settlement.

Status Conf. (7/13/12) Tr. 109:24-111:5 & 114:14-116:14 (R. Greenwald, PSC).

Complaint goes on to allege that "many Clean-up Workers were not outfitted with respirators or equivalent safety devices. Some attempted to use respirators while working, but BP prevented them from doing so and threatened them with loss of their clean-up jobs if they did not abide by the instruction." MB Complaint ¶70.  Plaintiffs' allegations that "many" Clean-up Workers were not outfitted with respirators indicates that some were equipped with them.  The MB Complaint does not indicate whether or not any of the eight Clean-up Worker plaintiffs wore respirators, or were prevented by BP from using them.  Nevertheless, issues relating specifically to Clean-up Workers are certainly not typical of the claims of Residents and vice versa.

The MB Complaint also implies that not all class members have experienced exposure symptoms when it states that "[p]laintiffs, like many members of the Class, have already manifested injuries and illnesses associated with exposure to chemicals in the environment resulting from the Oil Spill."  MB Complaint ¶76 (emphasis added).  The highlighted phrase indicates not all members of the MB Class have manifested symptoms of exposure.  The class definition itself emphasizes this disparity. The definition of Zone A residents requires the resident to have experienced specified physical symptoms of exposure no later than September 30, 2010, while Zone B residents and Clean-up Workers are not required to have had any symptoms in order to be included in the MB Class.  Also excluded from the MB Class are Zone A and B Residents who worked for a five-year period before April 20, 2010 in one of five specific jobs centered around the handling and storage of oil, petroleum products, tar and NORM.  The Clean-up Worker category does not contain such an exclusion.

As indicated above, the claims of the proposed MB Class representatives are so varied that proof of their claims will be dominated by individual issues.  "[C]ourts have found that typicality is *not* satisfied where plaintiffs' claims and defenses will be dominated by individual

evidence." *Welch v. Atlas Roofing Corp.*, 2007 WL 3245444, at *3 (E.D.La. 2007); *see also In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 460; *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.,* 2008 WL 5423488, at *7-9 (E.D.La. 2008).  "Although the test for typicality, like commonality, is not demanding and does not require identicality, too many meaningful differences across the plaintiff class can preclude certification." *In re Welding Fume Prods. Liab. Litig.,* 245 F.R.D. 279, 303 (N.D.Ohio 2007).

### F.  *Rule 23(a)(4) Adequate Representation:*

The purpose of this requirement is to ensure that the class representatives fairly and adequately protect the interests of the class.  This is done in two ways: (1) by showing that class counsel is qualified, experienced and able to conduct the litigation in the interests of the class; and (2) by showing that the class representatives have no substantial interests antagonistic with the class and that they share the desire to prosecute the action vigorously.  The adequacy of representation requires an investigation into "the zeal and competence of the representative's counsel," and the "willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of the absentees." *Berger v. Compaq Computer Corp*. 257 F.3d 475, 479-480 (5th Cir. 2001).

Class counsel are qualified and experienced in class action litigation.  Nevertheless, as the Court stated in *In the Matter of American Commercial Lines, LLC*, 2002 WL 1066743, at *9 (E.D. La. 2002):

> Class action lawsuits are intended to serve as a vehicle for capable and committed advocates to pursue the goals of the class members through counsel, not for capable, committed counsel to pursue their own goals through those class members.

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. Inc. v. Windsor*, 521 U.S.

591, 625 (1997).   "The adequacy requirement contemplates the absence of antagonistic or conflicting interests, and a sharing of interests between class representatives and absentees."   *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.,* 2008 WL 5423488, at *9,   (E.D. La., Englehardt, J.)   This requirement "overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members."   *In re Am. Med. Sys., Inc.* 75 F.3d 1069, 1083 (6th Cir. 1996); *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 460 (E.D. La. 2006); *Alexander v. City of Gretna*, 2009 WL 3160164 (E.D. La. 2009). As discussed in the Commonality and Typicality sections above, because the factual and legal differences among the class members' claims are so varied and great, the class representatives cannot meet the adequacy test.   *See Amchem*, 521 U.S. at 625;   *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.,* 2008 WL 5423488, at *11.

In the E&PD Class, one group of class members is not represented at all, much to their disadvantage.   The Seafood Compensation Program is established to pay four distinct categories of claimants: boat owners, boat captains, seafood crew and oyster lessees, with four distinct (and unreasonably unequal) Risk Transfer Premiums (RTPs) for each category of claimant.   The only plaintiff/class representatives of the Seafood Compensation Program are boat owners, boat captains and oyster lessees, not seafood crew.   The inadequacy of that representation is reflected in the RTPs for each category, boat owners (8.50), boat captains (7.25), oyster lessees (8.75), while seafood crew are only provided with an RTP of 2.50, even though they all face the same risk to the destruction of their livelihood: collapse of the fisheries.

Because of the extreme differences in methods of compensation across the E&PD Class, representation by all of the named class representatives cannot be assured.   For example, the agreement to place a cap on only the Seafood Compensation Program and to impose

unreasonably strict claim deadlines unlike any other category of damages in the E&PD settlement remains inadequately explained. Because there are no subclasses with independent representatives and counsel, the differing interests among the E&PD Class members are not aligned and thus the Court should ensure that potential prejudice to certain categories of class members does not result.

The MB Class evidences similar conflicts, the primary one being the fact that all of the MB Class Plaintiff/representatives allege they have actually suffered personal injury from their exposure, as compared with all of those class members who have not. While the definition of Zone A Resident class members includes only those who have suffered personal injuries, the definitions of Zone B Residents and Clean-up Worker class members do not have such restrictions. There are no "typical" class representatives protecting the interests of the many exposed but asymptomatic MB Class members.

Additionally, the class representatives in the MB Class appear to have created a significant conflict of interest by waiving valuable claims for a sizeable number of class members. All Clean-up Workers who worked aboard vessels, and who were injured by exposure to oil and dispersants, are Jones Act seamen who have substantial rights under that legislation. These claims are not made in the MB Complaint, yet are released in favor of BP and all vessel owners who qualify as Jones Act employers in the accompanying settlement documents. A class representative "is inadequate when he abandons particular remedies to the detriment of the class." *Welch v. Atlas Roofing Corporation*, 2007 WL 3245444, at *4 (E.D. La. 2007) (citing *States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 277 (C.D. Cal. 2002) and *Ardoin v. Stine Lumber Co*., 220 F.R.D. 459, 466 (W.D. La. 2004)).

These were the precise defects that the Supreme Court found fatal with the attempted massive asbestos class settlement in *Amchem*:

> As the Third Circuit pointed out, named parties with diverse medical conditions sought to act on behalf of a single giant class rather than on behalf of discrete subclasses.  In significant respects, the interests of those within the single class are not aligned.
>
> …
>
> The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected.  Although the named parties alleged a range of complaints, each served generally as representative for the whole, not for a separate constituency.

*Amchem*, 521 U.S. at 626-627.

### G.  *Rule 23(b)(3) Predominance:*

Class certification under Rule 23(b)(3) requires the Court to determine that common questions predominate over individualized ones.  This inquiry tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003). The predominance standard is "far more demanding" than the commonality requirement. *Unger v. Amedisys Inc*. 401 F.3d 316, 320 (5th Cir. 2005); *Bell Atlantic,* 339 F.3d at 301-302.  The Fifth Circuit has made it clear that deciding whether common issues predominate requires an understanding of the relevant claims, defenses, facts and substantive law presented in the case. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996).

The fact that the Plaintiffs in both cases seek to certify classes for the purpose of settlement does not permit the Court to give short shrift to the requirements of Rule 23(b)(3).   In fact, as the Supreme Court stated in *Amchem*, class certifications "demand undiluted, even heightened, attention in the settlement context." *Amchem*, 521 U.S. at 620.  The predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a

genuine controversy, questions that preexist any settlement." *Id*. at 623.  In other words, the fact of settlement or the terms of a settlement agreement alone cannot create the class cohesion necessary to satisfy Rule 23(b)(3).

Plaintiffs contend that "(d)efendants' conduct presents predominant factual questions." They assert these cases involve a single-event, single-location well blowout and take the position that proof of BP's liability for causing this event alone satisfies predominance.[12]    For this OPA-based E&PD class action, liability is not an issue at all.  BP has been designated as a Responsible Party, and has stipulated to waive the cap on OPA damages.  The only issues in the E&PD case are causation and quantum of damages, and these are many and varied.

Furthermore, the single incident predominant liability argument was precisely the one raised by the Plaintiffs in *Steering Committee v. Exxon Mobil Corp*., 461 F.3d 598 (5th Cir. 2006).  *Steering Committee* involved an explosion and fire at the Exxon refinery in Baton Rouge which burned for three days, resulting in a toxic smoke cloud exposing thousands of residents. Despite the singularity and short duration of the event, the Fifth Circuit affirmed the trial court's denial of class certification on lack of predominance alone.  The Fifth Circuit found that personal injuries arising from toxic chemical exposure are particularly unsuited to class certification, because each class member's claim "will be highly individualized with respect to proximate causation, including individual issues of exposure, susceptibility to illness, and types of physical injuries." *Id*. at p. 602.  *See also Amchem,* 521 U.S. at 624.

### H.  *Rule 23(b)(3) Superiority:*

Proponents of class certification must demonstrate that class action procedure "is superior to other available methods for fairly and efficiently adjudicating the controversy." *Madison v. Chalmette Refining L.L.C*., 637 F.3d 551, 555 (5th Cir. 2011).  Superiority in this

---

[12] [Rec. Doc. 6269-1, p. 25]

case must be measured against the backdrop of these proceedings, including the operation of the GCCF for two years before the E&PD Settlement was confected.   BP is a Responsible Party and waived the cap under OPA.

The three applicable considerations set forth in Rule 23(b)(3) all militate against finding the superiority of the pending proposed class actions.  All relevant litigation has already been consolidated into this MDL and has been actively pursued by the parties and managed by the Court.  Had the proposed settlements not been reached, the Phase I trial would have been well underway.  More importantly, if approved these settlements will not make the case go away. The settlements specifically reserve all remaining B1 claims not encompassed by the settlement agreements, assign certain of BP's rights against other parties to the plaintiffs, and reserve punitive damage claims against the Transocean and Halliburton defendants.  Moreover, the MB Settlement does not even resolve all settled claims on a class-wide basis.  For example, an asymptomatic class member's entitlement to participate in the Periodic Medical Consulting Program is subject to a determination by the Claims Administrator.    In other words, the settlement merely substitutes the decisions of a Claims Administrator for the Court in determining whether that person is entitled to medical monitoring.  For the claims remaining after the settlements, the Phase I trial will proceed as planned (albeit with the parties' positions re-aligned).   No significant judicial efficiency will be realized by certifying these settlement classes.

## I.  *Rule 23(e) Fairness of the Settlement:*

It is important to note at the outset that a litigation class was never certified in this case and no class certification discovery has ever been conducted.  The fact that these class actions were filed for the purpose of settlement warrants more scrutiny, not less.  As the Supreme Court

stated in *Amchem*, "[t]he safeguards provided by the Rule 23(a) and (b) class-qualifying criteria…serve to inhibit appraisals of the chancellor's foot kind--class certifications dependent upon the court's gestalt judgment or overarching impression of the settlement's fairness." 521 U.S. at 621.  The fairness inquiry must therefore come <u>after</u> class certification, not before as a justification for certification.

**III.**   **CONCLUSION**

Plaintiffs are seeking to certify two classes in brand new suits filed for the sole purpose of implementing class settlements.  After *Amchem*, certification of these class actions is to be closely scrutinized by the Court.   Here, none of the criteria of Rules 23(a) and 23(b)(3) have been met, with the possible exception of numerosity.

However enticing it may be to achieve global resolution of this massive case, it can only be done as a class action if all of the Rule 23 criteria have been strictly followed.  As the Supreme Court said in *Amchem*, "The text of a rule thus proposed and reviewed limits judicial inventiveness.  Courts are not free to amend a rule outside the process Congress ordered, a process properly tuned to the instruction that rules of procedure 'shall not abridge…any substantive right.' § 2072(b)." 521 U.S. at 620.   As discussed above, this proposed class succumbs to the same fate as the *Amchem* asbestos class.  It is the State's obligation as *parens patriae* to protect the interests of its citizens by making sure that the Rules designed to protect each individual citizen of the State are followed.  In these cases, Rule 23 has not been satisfied.

Dated this day of 7th September, 2012.


Respectfully submitted,

JAMES D. "BUDDY" CALDWELL
LOUISIANA ATTORNEY GENERAL

James Trey Phillips
First Assistant Attorney General
Megan K. Terrell
Assistant Attorney General
Section Chief –Environmental
State of Louisiana
P.O. Box 94005
Baton Rouge, LA 70804-9005
Telephone: (225) 326-6708


HENRY DART,
ATTORNEYS AT LAW P.C.

/s/ Henry T. Dart
Henry T. Dart
Grady J. Flattmann
510 N. Jefferson St.
Covington, LA 70433
Telephone: (985) 809-8093
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**


SHOWS, CALI, BERTHELOT &
WALSH, LLP

/s/ E. Wade Shows
E. Wade Shows
628 St. Louis Street
Baton Rouge, LA 70802
Telephone: (225) 346-1461
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**


KANNER & WHITELEY, LLC

 /s/ Allan Kanner
Allan Kanner
Elizabeth B. Petersen
David A. Pote
Douglas R. Kraus
Allison M. Shipp
701 Camp Street
New Orleans, LA 70130
Telephone: (504) 524-5777
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**


USRY, WEEKS, &
MATTHEWS, APLC

/s/ T. Allen Usry
T. Allen Usry
1615 Poydras St.
Suite 12
New Orleans, LA 70112
Telephone: (504) 592-4641
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**


MARTEN LAW, PLLC

/s/ Bradley M. Marten
Bradley M. Marten
Linda R. Larson
1191 Second Avenue
Suite 2200
Seattle, WA 98101
(206) 292-2600
**Special Counsel for Plaintiff**
**Attorney General, State of Louisiana**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing State Of Louisiana's *Amicus Curiae* Memorandum In Opposition To Motion for Certification Of Economic and Property Damages Settlement Class And In Opposition To Motion For Certification Of Medical Benefits Settlement Class has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 7th day of September, 2012.

Kanner & Whiteley, L.L.C.

 /s/ Allan Kanner
 Allan Kanner
 a.kanner@kanner-law.com