# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | * | MDL NO. 2179 |
| "DEEPWATER HORIZON" | | |
| In the GULF OF MEXICO on | * | SECTION: J |
| April 20, 2010 | | |
| | * | JUDGE BARBIER |
| Applies to: *All Cases* | | |
| | * | MAG. JUDGE SHUSHAN |

▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪

### MEMORANDUM IN SUPPORT OF TRANSOCEAN'S OBJECTIONS TO AND MOTION TO REVIEW MAGISTRATE JUDGE SHUSHAN'S ORDER REGARDING THE PSC'S REQUEST FOR NEW PHASE ONE DEPOSITIONS [REC. DOC. 7268]

The PSC has requested and Judge Shushan has approved a second deposition for Transocean's Chief Executive Officer, Steven Newman. As the Court knows, a deposition of a company's chief executive officer imposes substantial burdens and should not be taken lightly. The PSC sought Mr. Newman's deposition here to question him about a handful of emails and attachments, most of which were not sent or received by Mr. Newman. The ones that were sent to or by him add little or nothing to documents that were produced before Mr. Newman's first deposition, and in most cases are not, in any event, responsive to any document request the PSC served before the deposition. These few documents are far too thin a reed to support forcing Transocean's Chief Executive Officer to submit to a second Phase I deposition.

## I. BACKGROUND

On July 11, 2012, the PSC requested that Transocean consent to amendment of the PSC's Phase I trial exhibit list and agree to produce or re-produce four witnesses, including the current and former Chief Executive Officers, for deposition based on 63 allegedly "late produced" documents. [Rec. Doc. 7234]. Transocean's response demonstrated that none of these

documents justified a request for deposition or re-deposition for at least one of the following reasons:  (1) the document was timely produced or presented no new substantive information; (2) the document was withheld subject to timely and appropriate objections that the PSC never challenged; or (3) the document is relevant, if at all, only to Phase II issues.  [Rec. Doc. 7260].

Following several meet-and-confers, the PSC and Transocean submitted additional letters regarding a sample set of ten documents selected by the PSC.  [Rec. Docs 7254 and 7242].  The PSC contended that the 10 "representative" documents demonstrated the need for the depositions and should have been produced in the normal course of Phase One production or in custodial file productions for Bob Long, Adrian Rose, Steven Newman, or Larry McMahan.  Mr. Rose, Mr. Newman, and Mr. McMahan were deposed in Phase I and questioned by PSC attorneys.  Only the State of Louisiana requested the deposition of Mr. Long, citing Long's participation in a 2009 Lloyd's evaluation of Transocean's safety processes and culture in its request.  Judge Shushan denied this request on April 4, 2011, finding it was "duplicative of the information that Transocean will provide through other witnesses including the Rose deposition and Transocean's Rule 30(b)(6) deposition."  [Rec. Doc. 1854 at 3].  Transocean's response to the PSC's August 1, 2012 letter demonstrated that 7 of the 10 sample documents (nos. 1, 2, 3 and 7-10) were not responsive to any PSC document request, two (nos. 4 and 6) presented no new substantive information, and one (no. 5) was relevant, if at all, to Phase II issues.

The parties further argued their positions during the August 17, 2012 Working Group Conference.  The PSC acknowledged that the sample set of 10 documents is inconsequential when viewed in the context of Phase I discovery:  "it's like comparing a BB to Jupiter.  There isn't much here."  [Ex. A at 10:2-3].  The PSC also confirmed that no one has alleged that Transocean hid the ball:  "We are not maintaining that the documents were produced late for any

reason other than it's just an overwhelming thing." *Id.* at 9:4-8.  Perhaps most significantly, the PSC revealed that its interest in re-deposing Transocean's senior executives is to build an anti-Transocean process safety case:  "Most of all of these documents really go to issues of process safety, systemic safety failures, those types of things, and a punitive damage claim, gross negligence claim." *Id.* at 10:10-13.  This in spite of never serving a request for production related to Transocean's safety culture despite ample opportunity to do so.

On September 4, 2012, Judge Shushan issued an order [Rec. Doc. 7268] granting the PSC's request to re-depose Transocean's Chief Executive Officer, Steven Newman. Specifically, Judge Shushan concluded that "[t]here is prejudice to the PSC with respect to Document Nos. 4 and 6. There is also some prejudice to the PSC with Document No. 3. Transocean shall produce Steve Newman for an examination on these documents." [Rec. Doc. 7268].  Judge Shushan also held that the "PSC may examine Newman on Document No. 7 with the exchange between McMahan and Newman," and it "may also examine Newman on other of the 37 documents which the parties believe are at issue as a result of extrapolation of the holdings of this order to the remaining documents." *Id.*  The entirety of the Order's analysis of the referenced documents and concomitant prejudice is as follows:

- **Document No. 3**.

  TRN-MDL-06416911-064169112 is an email exchange between Jimmy Moore and Chris Knight which is specific to the Deepwater Horizon.  Transocean responds by referring to a Lloyd's Register safety audit completed on March 14, 2010 (TREX-00932 on the PSC exhibit list).  It urges that the Lloyd's audit confirms that the Deepwater Horizon crew understood the safety policies and in particular the THINK plan and the START processes.  There is some prejudice to the PSC in not having seen this document previously. It is not clear what the PSC gains by additional questioning of Long, Rose and Newman, as they were not copied on the exchange. The PSC does not state who it would question about the document.  If its intent is to question McMahan, then the request for a deposition is moot as McMahan will testify at trial.

- **Document No. 4**.

  TRN-MDL-04937152-53 is an email exchange. While it starts out concerned with injuries to hands and fingers, the discussion shifts to a DWH test of the BOP. There is prejudice to the PSC in not having seen this document previously. It should be able to question someone about it.

- **Document No. 6**.

  These emails relate to Transocean's launch of an evaluation of the safety culture. Long, Newman and Rose are authors and/or copied on some of these. Transocean contends that the final announcement was produced and used in the PSC's examination. Document No. 6 includes:

  > TRN-MDL-04335663 with attachment 04334665
  > TRN-MDL-04335669 with attachment 04335670
  > TRN-MDL-04335704 with attachment 04335708
  > TRN-MDL-04335711 with attachment 04335713
  > TRN-MDL-04335057

  There is prejudice to the PSC. If Transocean produced the final announcement, it should have produced the drafts and email exchanges pertaining to the final announcement.

- **Document No. 7**.

  TRN-MDL-05762567 is an email exchange between McMahan and Steve Newman. The key email is authored by McMahan. He will testify live at the trial. A deposition is not needed for this document.

[Rec. Doc. 7268].

The Order does not address the fact that documents 3, 4 and 7 were not requested by the PSC or returned by the search parameters negotiated with the PSC or the fact that Document 6 presents no new substantive information. Transocean respectfully disagrees with Judge Shushan's conclusions.

## II. ARGUMENT

Federal Rule of Civil Procedure 30 requires leave of court to re-depose a witness where, as here, the parties have not stipulated to the deposition. FED. R. CIV. P. 30(a)(2)(B). Courts

should grant leave consistent with Rule 26(b)(2), which requires courts to limit discovery in the following circumstances:  (i) where the requested discovery is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) where the party seeking discovery has had ample opportunity to obtain the information sought; or (iii) where the burden or expense of the proposed discovery outweighs the likely benefit.  FED. R. CIV. P. 26(b)(2)(C); *Karr v. Four Seasons Mar., Ltd.*, CIV.A.02-3413, 2004 WL 797728, at *6 (E.D. La. Apr. 12, 2004); 7 MOORE'S FEDERAL Practice §30.05[1][c], at 30-30 (Matthew Bender 3d ed., rev. 2001) ("Courts generally disfavor second depositions.").  Because these circumstances are present here, Judge Shushan's Order is clearly erroneous and contrary to law.[1]

### A.      The Burden of the Proposed Discovery Outweighs Any Likely Benefit

The burden a second deposition would impose on Mr. Newman and Transocean far outweighs whatever minimal benefit might arise from questioning Mr. Newman about documents that he has never seen or which provide no new substantive information.  Courts have consistently recognized that preparing for and submitting to deposition imposes burdens on busy corporate executives, particularly Chief Executive Officers.  *See e.g.*, *Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94, 102 (S.D.N.Y. 1997) (expressing the court's awareness "of the burdens which appearing for a deposition can impose upon a senior corporate executive"); *Wertheim Schroder & Co., Inc. v. Avon Products, Inc.*, No. 91 Civ. 2287, 1995 WL 6259, at *2 (S.D.N.Y. Jan. 9, 1995) ("permitting unfettered discovery of corporate executives would threaten disruption

---

[1] The Court highlighted the need to avoid duplicative depositions in Pre-Trial Order 17 (PTO 17) on November 16, 2010, which sets forth the Governing Deposition Guidelines for this litigation.  Section K of PTO 17, entitled "Avoidance of Duplicative Depositions," expressly states, "As a general rule, no witness should be deposed more than once in this proceeding unless the subject matter of the proposed second deposition was declared off limits by the Court during the first deposition or upon a showing of good cause by the party seeking the second deposition." [Rec. Doc. 740 at 9].

of their businesses" (quotation omitted)).  Moreover, even apart from burdening a busy Chief Executive Officer, courts have repeatedly recognized that "repeat depositions are disfavored" because of the burdens they impose.  *Lobb v. United Air Lines, Inc.*, No. 92-15846, 1993 WL 259470, at *1 (9th Cir. 1993) (quoting *Graebner v. James River Corp.*, 130 F.R.D. 440, 441 (N.D. Cal. 1989)); *see also, e.g.*, *Graebner*, 130 F.R.D. at 441-42 (denying request for second deposition where party seeking repeat deposition claimed first deposition was a "settlement deposition" and that it subsequently was seeking a "trial deposition"); 7 MOORE'S FEDERAL Practice §30.05[1][c], at 30-30 (Matthew Bender 3d ed., rev. 2001) ("Courts generally disfavor second depositions.").

In the face of the significant burden a second deposition would impose on Mr. Newman, it is difficult to ascertain what, if any, benefit the PSC might obtain.  To begin with, two of the documents (nos. 3 and 4) on which Judge Shushan's Order permits the PSC to re-depose Mr. Newman are email chains on which he is not copied and of which he presumably knows nothing. Nor would there be any real benefit in questioning Mr. Newman on Document 6, which is a compilation of documents related to "Transocean's launch of an evaluation of [its] safety culture."  [Rec. Doc. 7268 at 4].  Mr. Newman has already been questioned on this subject:

> Q. In 2009 Transocean embarked on an evaluation of its safety processes and its safety culture, correct?
>
> A. In the latter part of 2009 we brought in Lloyd's Register to conduct an evaluation of our safety management system, our company management system, and our safety culture.

[Newman Depo. 267:12-19].

> Q. (BY MR. REGAN) Okay. Transocean, in evaluating its culture, concluded that a large number of the serious incidents that it had in 2009 were attributed to a failure by Transocean to follow its core company policies, procedures, and processes, correct?

A. In -- in 2009 I -- I remember a lot of conversations about the -- certainly, the fatalities that occurred in 2009, and the substance of -- substance of those conversations being the learnings from the investigations into those particular incidents…and what we could do about that.

Q. And one of the outcomes of the investigations of those incidents was that there had been a failure to follow core company policies, procedures, and processes, correct?

A. As I said, the fatalities and the investigations into those fatalities identified situations where our people had -- had failed to implement elements of our safety management system that had subsequently resulted in the fatalities.

*Id.* at 270:3-25, 271:2-7.

In addition, the PSC had documents related to the launch of the Lloyd's review prior to Mr. Newman's original deposition.  Judge Shushan, however, found prejudice to the PSC because they did not have the "drafts and email exchanges pertaining to the final announcement."  [Rec. Doc. 7268 at 4].  It is difficult to imagine any benefit from questioning Mr. Newman on these documents, which are largely non-substantive and duplicative.  Of the nine documents comprising Document 6, four are email strings that merely request comments on drafts of the announcement of the Lloyd's review (beginning bates TRN-MDL-04335663, TRN-MDL-04335669, TRN-MDL-04335704, TRN-MDL-04335711) and four are the attached draft announcements (beginning bates TRN-MDL-04335665, TRN-MDL-04335708, TRN-MDL-04335713, TRN-MDL-04335670).  The email strings merely request comments on draft announcements and the PSC has identified only two issues with the draft announcements—(1) Bob Long did not prefer the phrase "exhaustive evaluation" to describe Lloyd's work and (2) Adrian Rose may have preferred "100 days" to "4 months" to describe the length of time in which four fatalities had occurred.  The final announcement, which was produced *twice* on September 1, 2011 (with beginning bates TRN-MDL-02361427 and TRN-MDL-02380852), includes the phrases "thoroughly review" and "less than four months," respectively.  These minor differences, neither

of which appears to have been suggested by Mr. Newman, are insufficient to justify another deposition.  The remaining email in Document 6 (TRN-MDL-04335057) is even less substantive, involving a discussion between Nick Jackson of Lloyd's and Adrian Rose of Transocean of the logistics of Mr. Jackson's travel to Houston.  Any minimal benefit to be gained from re-questioning Mr. Newman on the launch of the Lloyd's review is far outweighed by the significant burdens a second deposition would impose on Transocean's chief executive.

**B.     The PSC Has Had Ample Opportunity to Obtain Information Related to Transocean's Safety Culture**

Where, as here, the requesting party has "had ample opportunity by discovery to obtain the information now being sought" and has had the opportunity to question the witness or other witnesses about the subject matter, the motion to re-depose the witness should be denied. *Lowery v. Noble Drilling Corp.*, CIV. A. 96-3968, 1997 WL 675328, at *2 (E.D. La. Oct. 29, 1997) (where the party "has had ample opportunity by discovery previously conducted in the action to obtain the information it now seeks, … the motion to depose [the witness] for a second time should be denied").  The PSC not only deposed top Transocean executives, including Mr. Newman, Mr. Rose, and Mr. McMahan in his capacity as a corporate representative for Transocean, it also served voluminous discovery requests on Transocean, including more than 150 document requests in Phase I alone.  Nothing prevented the PSC from seeking any information within the scope of the Federal Rules that it wanted to obtain in advance of Mr. Newman's deposition.

The PSC apparently seeks to re-depose Mr. Newman to develop an anti-Transocean process safety case that it either chose not to or neglected to develop during Phase I discovery. The PSC has argued, for example, that Document 7 (TRN-MDL-05762567), a September 15, 2009 email exchange between Steven Newman and Larry McMahan "illustrates issues with

Transocean's operational and safety culture at the top of the food chain," and "gives insight into Transocean's internal issues pre-spill."  [Rec. Doc. 7254 at Tab 7].  The PSC, and now Judge Shushan, have ignored that neither this document nor Document 3 is responsive to any PSC document request and neither was located through any of the search parameters negotiated with the PSC.  Documents produced after a deposition that are not responsive to a party's request for production cannot serve as the basis for a second deposition.  *See Lowery*, 1997 WL 675328, at *1 ("there is no indication that the diary was responsive to a Rule 34 request for production submitted by defendant to plaintiff before the deposition").

The PSC's inability to depose Mr. Newman with respect to Documents 3 and 7 was caused by its own failure to seek such information prior to the deposition.  This lack of diligence should not be a basis to obtain a second deposition.  *See Byers v. Navarro County*, 3:09-CV-1792-D, 2011 WL 4367773, at *3,4 (N.D. Tex. Sept. 19, 2011) ("Byers' inability to meaningfully depose the witnesses was caused, at least partially, by her own failure to diligently prosecute the case.") (*citing Martin v. Fid. Nat'l Title Ins. Co.,* 2011 WL 3349843, at *4 (E.D. La. Aug. 3, 2011) (permitting redeposition of the plaintiffs because defendants' inability to meaningfully depose plaintiffs was caused by plaintiffs' own discovery failures, and the defendants were diligent in their discovery.)).  Nothing prevented the PSC from including a request for all documents related to Transocean's "safety culture."  The closest it came is RFP 112, which sought "Documents that relate to or concern any reviews or analyses of your safety management system, safety culture, safety climate, or employee training and qualifications since January 1, 2009, including any reviews or analyses conducted by Lloyd's Register, ModuSpec, or any affiliated companies."  No matter how broadly this request is read, Document 3, which is

dated May 31, 2008, falls outside the date range of the request, and its production cannot be said to be late or prejudicial.

### C.     Re-Deposing Mr. Newman on Transocean's Safety Culture Would be Unreasonably Cumulative or Duplicative

The law is clear that when a party had an opportunity to question a witness on a document at a first deposition, "permitting [the party] to depose [the witness] again would be unreasonably cumulative or duplicative." *Lowery*, 1997 WL 675328, at *2 (defendant received plaintiff's diary during the deposition and the defendant had opportunity to question the plaintiff regarding the content of the diary at that time). As noted above, Mr. Newman was questioned at his first deposition on the initiation of the Lloyd's review. And there is no dispute that the PSC had the final announcement, which was initially produced *twice* on September 1, 2011 (with beginning bates TRN-MDL-02361427 and TRN-MDL-02380852), prior to Mr. Newman's September 30, 2011 deposition.[2] The PSC had the opportunity to, but did not ask Mr. Newman any questions about the announcement during his deposition. The fact that Transocean has now produced some drafts and emails that preceded the final announcement does not justify a second deposition.

## II.  CONCLUSION

For the foregoing reasons, Transocean respectfully requests that this Court review and reverse the Magistrate Judge's Order entered September 4, 2012 Regarding the PSC's Request for New Phase One Depositions [Rec. Doc. 7268] to the extent that it concludes that there is prejudice to the PSC with respect to Documents No. 3, 4, 6, and 7 and orders Transocean to produce its Chief Executive Officer, Steven Newman, for further deposition.

---

[2] The initiation of the Lloyd's review was also detailed in the Fall 2009 edition of Transocean's *Beacon Magazine*, which was designated as an exhibit to the October 27, 2011 deposition of Barry Braniff, and is TREX-5777 on the PSC's Trial Exhibit List.

Respectfully submitted this 10th day of September, 2012,

By: ___/s/ Steven L. Roberts_____     By: ____/s/ Kerry J. Miller_____
Steven L. Roberts (Texas, No. 17019300)     Kerry J. Miller (Louisiana, No. 24562)
Rachel Giesber Clingman (Texas,              Frilot L.L.C.
No. 00784125)                                1100 Poydras Street, Suite 3700
Sutherland Asbill & Brennan LLP              New Orleans, Louisiana  70163
1001 Fannin Street, Suite 3700               Telephone:  (504) 599-8169
Houston, Texas  77002                        Facsimile:  (504) 599-8154
Telephone:  (713) 470-6100                   Email:  kmiller@frilot.com
Facsimile:  (713) 654-1301
Email:  steven.roberts@sutherland.com,
Rachel.clingman@sutherland.com


                    -and-                                      -and-

By: ___/s/ Edwin G. Preis, Jr._____     By: ____/s/ Brad D. Brian_____
Edward G. Preis, Jr. (Louisiana, No. 10703)   Brad D. Brian (California, No. 79001)
Preis & Roy PLC                               Allen M. Katz (California, No. 54933)
102 Versailles Boulevard, Suite 400           Munger Tolles & Olson LLP
Lafayette, Louisiana  70501                   355 South Grand Avenue, 35th Floor
Telephone:  (337) 237-6062                     Los Angeles, California  90071
Facsimile:  (337) 237-9129                     Telephone:  (213) 683-9100

601 Poydras Street, Suite 1700                Facsimile:  (213) 683-5180, (213) 683-4018
New Orleans, Louisiana  70130                  Email: brad.brian@mto.com,
Telephone:  (504) 581-6062                      allen.katz@moto.com
Facsimile:  (504) 522-9129
Email:  egp@preisroy.com


**Of Counsel:**
John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas  77002
Telephone:  (713) 224-9380
Facsimile:  (713) 225-9945
Email:  john.elsley@roystonlaw.com


**ATTORNEYS FOR DEFENDANTS
TRANSOCEAN OFFSHORE
DEEPWATER DRILLING INC.,
TRANSOCEAN DEEPWATER INC.,**

**TRITON ASSET LEASING GmbH, AND
TRANSOCEAN HOLDINGS LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 10, 2012, I electronically filed the foregoing with the Court's CM/ECF system and service on all counsel of record by using the LexisNexis File & Serve, in accordance with Pretrial Order No. 12 which will send a notice of filing to all counsel accepting electronic notice

　/s/ Kerry J. Miller　　　　　　　　
　Kerry J. Miller