IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, on April 20, 2010 | § § § § | MDL NO. 2179 SECTION J |
| THIS DOCUMENT RELATES TO: | § § | Judge Barrier |
| 4:12-cv-01989 | § | MAG. JUDGE SHUSHAN |

PLAINTIFF'S MEMORANDUM
IN SUPPORT OF THEIR MOTION TO REMAND

I.
NATURE AND STAGE OF THE PROCEEDINGS

Roy Wyatt Kemp was a Jones Act seamen assigned to the *Deepwater Horizon*.[1] Kemp died as a result of the explosion and fire aboard this vessel on April 20, 2012.[2]

Kemp is survived by his natural mother, Peggy.[3] Peggy Kemp asserted claims under the Jones Act and general maritime law against BP Exploration & Production Inc., BP America Inc., and BP Products North America Inc. (collectively "BP") and Halliburton Energy Services, Inc. ("Halliburton").[4] Peggy Kemp did not assert claims under the Outer Continental Shelf Lands Act ("OCSLA").[5]

Nevertheless, BP argues that OCSLA governs Kemp's claims and provides a basis for removal.[6] In this connection, BP argues that "this case is removable to this Court under the jurisdictional grant of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §1331, *et seq.*"[7] and "[t]his Court also has subject matter jurisdiction under 28 U.S.C. §1331. . . ."[8]

---

[1] Kemp's Original Petition and Request for Disclosure is attached as Exhibit 1, p. 3. All Exhibits attached hereto are incorporated herein by reference as if fully set forth.
[2] *Id.*
[3] *Id.* at 6.
[4] *Id.* at 1-7.
[5] *Id.* at 3-7.
[6] Civil Action No. 4:11-cv-2231, Pacer Document 1, Notice of Removal, p. 3.
[7] *Id.*

Halliburton consented to removal.[9]

Peggy Kemp timely files her Motion to Remand for consideration by this Court.

## II.
## QUESTION PRESENTED

Has BP discharged its burden in establishing removal jurisdiction?

## III.
## SUMMARY OF ARGUMENT

BP confuses removal jurisdiction with original jurisdiction. (Indeed the phrase "removal jurisdiction" is conspicuously absent from BP's Notice of Removal.) Under OCSLA, District Courts have original jurisdiction over claims that arise from events that occur on the Outer Continental Shelf ("OCS") and involve the exploration, development, or production of minerals on the OCS.[10] Although OCSLA may confer original jurisdiction over those claims, District Courts do no automatically have removal jurisdiction over them.[11] As the Fifth Circuit has observed, "OCSLA does not necessarily transform maritime claims falling within its jurisdictional grant into claims arising under federal law."[12] And it is axiomatic that maritime claims do not "arise under" federal law for purposes of removal jurisdiction.[13]

A respected practitioner in this area has observed, "This jurisdictional provision [of OCSLA] is broad and independent of the sections of the OCSLA selecting the applicable law. Nonetheless, the courts have struggled with their relationship between jurisdictional issues and choice of applicable law."[14] In *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, ("PLT"),

---

[8] *Id.* at 4.
[9] *Id.* at 7.
[10] *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 350 (5th Cir. 1999).
[11] *Nase v. Teco Energy, Inc.*, 347 F. Supp. 2d 313, 318 (E.D. La. 2004).
[12] *Hufnagel*, 182 F.3d at 350.
[13] *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 377-79 (1959) (discussing non-removability of saving-to-suitors claim on the ground that, because maritime claims do not arise under the laws or Constitution of the United States, they do not present federal questions).
[14] Kenneth G. Engerrand, *Primer of Remedies on the Outer Continental Shelf*, 4 LOY. MAR. L.J. 19, 25 (Spring

2

the Fifth Circuit articulated a three-part test to determine whether state law is adopted as surrogate federal law under OCSLA: "(1) The controversy must arise on a situs covered by OCSLA (i.e., the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state laws must not be inconsistent with Federal Law."[15] Under the *PLT* test, the first and second conditions are not met because the *Deepwater Horizon* was not a fixed or stationary platform, *i.e.*, an artificial structure permanently or temporarily attached to the subsoil seabed, and maritime law applies of its own force.

The test for deciding whether maritime law governs a tort claim is whether the incident has both a "maritime situs and a connection to a traditional maritime activity."[16] The maritime situs or location test is easily met here. The *Deepwater Horizon* was a sophisticated semi-submersible drilling rig floating on the waters of the Gulf of Mexico at the time of the explosion and was not attached to the seabed of the OCS with anchors or an anchoring system.[17] The Fifth Circuit has long held that a semi-submersible drilling rig is a "vessel," as a matter of law.[18] So too is the traditional maritime activity test easily satisfied. "Oil and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce."[19] Moreover, in an en banc decision, the Fifth Circuit recognized that offshore drilling incidents give rise to maritime tort

---

2005).
[15] *Union Texas Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990).
[16] *Hufnagel*, 182 F.3d at 351-52 (applying test set forth in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)).
[17] As a result, OCSLA situs requirement is not met. *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 784 (5th Cir. 2009) (en banc), *cert. denied*, 130 S. Ct. 3386, 177 L. Ed. 2d 302 (2010) ("In a tort action, if the tort occurs on navigable water instead of a fixed platform (or other structure attached to the seabed), the OCSLA situs requirement is not met.").
[18] *Solana v. GSF Dev. Driller I*, 587 F.3d 266, 267-68 (5th Cir. 2009) (reviewing salvors' action, *in rem*, against semi-submersible drilling rig); *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 n.5 (5th Cir. 1986) (finding a semi-submersible drilling rig to be "indisputably a vessel").
[19] *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538-39 (5th Cir 1986).

3

claims.[20] As a result, the maritime law governs Kemp's claims because, as a matter of law, OCSLA cannot replace the maritime law.[21]

Based on this authority, as discussed more fully below, removal was improper, and remand is required.

## IV.
## FACTUAL BACKGROUND AND EVIDENCE

Kemp was a floorhand assigned to the *Deepwater Horizon* and was, therefore, a Jones Act seaman.[22] Kemp died as a result of the explosion and fire aboard this vessel on April 20, 2010.[23]

In the wake of this casualty, Transocean Offshore Deepwater Drilling, Inc. and its affiliated companies (collectively "Transocean"), owners and operators of the *Deepwater Horizon*, filed a limitation of liability proceeding in the Southern District of Texas, Houston Division.[24] In its Original Complaint, Transocean represented that the *Deepwater Horizon* was a vessel.[25]

During the subsequent joint investigation conducted by the United States Coast Guard and the Minerals Management Service, Curt Kuchta, the *Deepwater Horizon*'s captain, testified that in his opinion, the *Deepwater Horizon* was a vessel before it sank.[26] Captain Kuchta agreed that when the *Deepwater Horizon* was "latched up" to the wellhead, it was still under way, *i.e.,*

---

[20] *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1119 (5th Cir. 1995) (en banc).
[21] *Hugnagel*, 182 F.3d at 350 ("Because OCSLA does not displace general maritime law, substantive maritime law continues to govern where both OCSLA and general maritime law could apply.").
[22] BP does not deny that Kemp was a Jones Act seamen. Civil Action No. 4:11-cv-2231, Pacer Document 1, Notice of Removal, p. 5. Instead BP notes that "Transocean is not a defendant in the State Court Action . . . ." *Id.* Of course, the injunction entered in Transocean's limitation proceeding prohibited Kemp from prosecuting her claims against Transocean in this case. As explained later in this Memorandum, there is a disputed question of fact as to whether Kemp was BP's borrowed servant because of the control exercised by BP over drilling operations.
[23] Exhibit 1, p. 3.
[24] See *In re Triton Asset Leasing GmbH, et al.*, No. 4:10-cv-01721.
[25] *Id.* at Pacer Document 1, pgs. 2-4.
[26] See Excerpts from the Transcript of the Testimony Given in the Joint United States Coast Guard/Minerals Management Service Investigation attached as Exhibit 2, p. 206, and incorporated herein by reference.

4

"not at anchor or made fast to shore or ground."[27] Jimmy Harrell, the Offshore Installation Manager aboard the *Deepwater Horizon*, testified that the drilling system was not an anchoring system.[28] Thus, at the time of the explosion, the *Deepwater Horizon* was not attached to the seabed of the OCS with anchors or an anchoring system.

Both BP and Halliburton are Texas citizens. BP has its principal place of business in the United States at 501 Westlake Park Boulevard, Houston, Texas 77079.[29] Halliburton's website shows that its American corporate offices are located at 3000 North Sam Houston Parkway East, Houston, Texas 77032.[30] Approximately a year ago, Transocean filed its Response to Motions to Transfer before the JPML.[31] Advocating that the lawsuits be consolidated in the Southern District of Texas, Houston Division, Transocean wrote that "Houston is the corporate headquarters of the operating subsidiaries of the four major defendants in the oil spill litigation—BP, Halliburton, Cameron, and Transocean—and it is those defendants' employees, documents, and evidence that will be the focus of the MDL proceedings.[32]

## V.
## AUTHORITY AND ANALYSIS

Pursuant to 28 U.S.C. § 1447(c), Kemp moves the Court to remand this case to the 334th Judicial District Court of Harris County, Texas.

### A. Some Basic Principles

Federal jurisdiction is limited.[33] Federal courts "possess only that power authorized by

---

[27] *Id.* at 150-51, 155, and 206-07.
[28] *Id.* at 4-5 and 133.
[29] See BP's website at http://www.bp.com/sectiongenericarticle.do?categoryId=9021231&contentId=7039279.
[30] See Halliburton's website at www.halliburton.com.
[31] In re Oil Spill by the Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, 2:10-md-02179-CJB-SS, Pacer Document 119.
[32] *Id.* at 10.
[33] See *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (Scalia, J., dissenting) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

5

[the] Constitution and statute, which is not to be expanded by judicial decree."[34] The Court should begin with the presumption that a case lies outside its limited jurisdiction.[35] The burden of establishing removal jurisdiction rests on the party seeking the federal forum.[36] The removal statute "is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns."[37] "Any doubt as to the district court's jurisdiction must be resolved in favor of remand."[38]

### B. These Jones Act Cases Are Not Removable

Kemp was a floorhand assigned to the *Deepwater Horizon* and was, therefore, a Jones Act seaman.[39] When a plaintiff sues under the Jones Act, the defendant generally cannot remove the case to federal court.[40] BP does not deny that Kemp was a Jones Act seaman.[41] Instead BP observes that Kemp did not name Transocean as a defendant in the state court action.[42] Of course, the injunction entered in Transocean's limitation proceeding prohibited Kemp from prosecuting her claims against Transocean in state court. In addition, BP argues that Kemp fraudulently pleaded the Jones Act claim because BP did not employ Kemp.[43]

Kemp has pleaded that he was a seaman employed by the operator of the *Deepwater Horizon* or BP.[44] In this way, Kemp has invoked the borrowed servant doctrine which "is the functional rule that places the risk of a worker's injury on his actual rather than his nominal employer. It permits the injured worker to recover from the company that was actually directing

---

[34] *Id.* (quoting *Kokkonen* 511 U.S. at 377).
[35] *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).
[36] *Black v. Xpress Global Sys., Inc.*, Civil Action No. H-09-2912, 2009 U.S. Dist. LEXIS 107000, at *5 (S.D. Tex. November 12, 2009).
[37] *Frank v. Bear Sterns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997).
[38] *Black*, 2009 U.S. Dist. LEXIS 107000, at *5 (citing *Bosky v. Kroger Tex., L.P.*, 288 F.3d 208, 211 (5th Cir 2002)).
[39] Exhibit 1, p. 3.
[40] *Holmes v. Atl. Sounding Co.*, 437 F.3d 441, 445 (5th Cir. 2006).
[41] Civil Action No. 4:11-cv-2231, Pacer Document 1, Notice of Removal, p. 5.
[42] *Id.*
[43] *Id.* at 5-6.
[44] Exhibit 1, p. 3.

6

his work."[45] Roy Kemp is deceased. But Wyman W. Wheeler, a member of the drilling crew aboard the *Deepwater Horizon* on April 20, 2010, has provided an affidavit that shows BP exercised control over operations on the drill floor aboard the *Deepwater Horizon*.[46]

During Wheeler's time on the *Deepwater Horizon*, especially during the days and hours immediately preceding the explosion and fire that occurred on April 20, 2010, BP employees actually exercised control over the operation while he worked on and around the drill floor. Wheeler regularly carried out orders that BP issued. BP exercised its control over the drilling operations through its company men. BP's company men were on the drill floor every day to watch operations and told the Transocean workers, like Roy Wyatt Kemp, exactly what they wanted done. In this connection, the company men made frequent visits to the rig floor.[47]

Consistent with BP's control over the work on the drill floor and the drilling operation, BP controlled the decisions, among other things, on the following: (1) how much casing to run; (2) how much cement to pump and the mud to displace it with; (3) how many centralizers to use (fewer than originally planned); (4) where to use saltwater instead of drilling mud; (5) use of nitrogen cement job; and (6) not to run cement bond log. The work Kemp was performing on the *Deepwater Horizon* was BP's work, *i.e.*, in furtherance of the accomplishment of BP's goal to develop the Macondo 252 well.[48] A removing party must show there is no reasonable possibility of establishing a Jones Act claim on the merits.[49] BP has failed discharge its burden because BP's Affiant, Kimberly Booth, was not working aboard the *Deepwater Horizon* in the days and hours immediately preceding the explosion. In contrast, Wheeler was. His affidavit

---

[45] *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 178 (5th Cir. 1981) (citing *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224-26 (5th Cir. 1975)).
[46] *See* Exhibit 3. This affidavit was originally filed in *Nyoka Curtis, et al. v. BP Exploration & Production, Inc., et al.*, Civil Action No. 4:11-cv-2231, United States District Court for the Southern District of Texas, Houston Division.
[47] Exhibit 3 supports the facts discussed in this paragraph.
[48] *Id.*
[49] *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993).

proves that there is a reasonable possibility that Kemp can establish a Jones Act claim on the merits. Therefore, BP's removal was improper, and remand is appropriate.

### C. Maritime Law, Not OCSLA, Governs Kemp's Claims

It is axiomatic that maritime claims do not "arise under" federal law for purposes of federal removal jurisdiction.[50] In *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, the Fifth Circuit articulated a three-part test to determine whether state law is adopted as surrogate federal law under OCSLA: "(1) The controversy must arise on a situs covered by OCSLA (*i.e.*, the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal Law."[51] Under the *PLT* test, the first and second conditions are not met because the *Deepwater Horizon* was not a fixed or stationary platform, *i.e.*, an artificial structure permanently or temporarily attached to the subsoil seabed, and the maritime law applies of its own force.

#### 1. The Test for Maritime Tort Jurisdiction

The test for deciding whether maritime law governs a tort claim is whether the incident has both a "maritime situs and a connection to a traditional maritime activity."[52] Applying the situs or location test, a court "must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water."[53] The connection test raises two issues. First, a court "must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime

---

[50] *Romero*, 358 U.S. at 377-79 (discussing non-removability of saving-to-suitors claim on the ground that, because maritime claims do not arise under the laws or Constitution of the United States, they do not present federal questions).
[51] *PLT*, 895 F.2d at 1047.
[52] *Hufnagel*, 182 F.3d at 351-52 (applying test set forth in *Grubart*, 513 U.S. at 534).
[53] *Grubart*, 513 U.S. at 534 (citing former 46 U.S.C. §740).

8

commerce."[54] Second, a court "must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity."[55] The key inquiry is whether the alleged tortious activity is "so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand."[56]

### 2. Kemp's Claims Have a Maritime Location Because The *Deepwater Horizon* Was a Vessel on Navigable Waters

The *Deepwater Horizon* was a sophisticated semi-submersible drilling rig with state-of-the-art navigation and propulsion systems (technically referred to as a "Mobile Offshore Drilling Unit Dynamically Positioned Vessel (MODU-DPV)" that was floating on the waters of the Gulf of Mexico at the time of explosion. The Fifth Circuit has long held that a semi-submersible drilling rig is a "vessel," as a matter of law.[57]

Transocean, in its capacity as owners and operators of the *Deepwater Horizon*, filed a limitation of liability proceeding in the Southern District of Texas, Houston Division.[58] In its Original Complaint, Transocean represented that the *Deepwater Horizon* was a vessel.[59]

During the subsequent joint investigation conducted by the United States Coast Guard and the Minerals Management Service,[60] Curt Kuchta, the *Deepwater Horizon's* captain, testified that in his opinion, the *Deepwater Horizon* was a vessel before it sank.[61] Captain Kutcha agreed

---

[54] *Id.* (internal quotations and citations omitted).
[55] *Id.* (internal quotations omitted).
[56] *Id.* at 539-40.
[57] *Solana*, 587 F.3d at 267-68 (reviewing salvors' action, *in rem*, against semi-submersible drilling rig); *Fontenot*, 791 F.2d at 1214 n.5 (finding a semi-submersible drilling rig to be "indisputably a vessel").
[58] See *In re Triton Asset Leasing GmbH, et al.*, Civil Action No. 4:10-cv-01721.
[59] *Id.* at Pacer Document 1, pgs. 2-4.
[60] One District Court has recently observed that the Minerals Management Service was renamed the Bureau of Ocean Energy Management, Regulation, and Enforcement as of June 21, 2010. *Abbott v. BP Exploration and Prod. Inc.*, 781 F. Supp. 2d 453, 457n. 3 (S.D. Tex. March 15, 2011). Because the *Deepwater Horizon* investigation was launched before June 10, 2010, Kemp will refer to the agency as the Minerals Management Service.
[61] *See* Exhibit 2, p. 206.

that when the *Deepwater Horizon* was "latched up" to the wellhead, it was still under way, *i.e.*, "not at anchor or made fast to shore or ground."[62] Jimmy Harrell, the Offshore Installation Manager aboard the *Deepwater Horizon*, testified that the drilling system was not an anchoring system. Thus, at the time of the explosion, the *Deepwater Horizon* was not attached to the seabed of the OCS with anchors or an anchoring system.[63]

Accordingly, the Court should conclude that the *Deepwater Horizon* was a vessel on navigable water, and therefore, the maritime situs or location prong of the test for maritime tort jurisdiction is met. In addition, the Court should conclude that the OCSLA situs requirement is not met because the tort occurred on navigable waters instead of a fixed platform or other structure attached to the seabed of the OCS.[64]

### 3. Kemp's Connection to a Traditional Maritime Activity

There is no dispute that the crew of the *Deepwater Horizon* was performing drilling and completion operations at the time of the explosion. This event and its aftermath resulted in a well publicized "disruptive impact on maritime commerce." In *Coats v. Penrod Drilling*, the plaintiff suffered a severe knee injury when the jack-up rig's bullplug failed during a pressure test conducted while the vessel was sitting in navigable waters.[65] On these facts, the en banc Fifth Circuit found that a "potentially disruptive impact on maritime commerce" existed.[66] Based on *Coats*, the Court should find that the death and injuries resulting from the explosion aboard the *Deepwater Horizon* satisfy the "disruptive impact" issue.

The "activity traditionally subject to admiralty law" issue is easily satisfied because "[o]il

---

[62] *Id.* at 150-51, 155 and 206-07.
[63] *Id.* at 4-5 and 133.
[64] *Grand Isle*, 589 F.3d at 784.
[65] *Coats*, 61 F.3d at 1117.
[66] *Id.* at 1119.

and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce."[67] Moreover, the en banc Fifth Circuit in *Coats* observed that "[p]roviding compensation for shipboard injuries is a traditional function of the admiralty laws."[68] Kemp has brought suit for compensation for her son's death suffered aboard the *Deepwater Horizon*. Accordingly, the Court should conclude that "activity traditionally subject to admiralty law" is met, and Kemp has alleged a maritime tort.[69]

## VI.
## CONCLUSION

Based on the foregoing authority and analysis, Peggy Kemp, Individually, and in her capacity as the Surviving Natural Mother of Roy Wyatt Kemp, Deceased, respectfully request that the Court remand this case to the 334th Judicial District Court of Harris County, Texas.

Respectfully submitted,

**STEVENSON & MURRAY**

By: *John W. Stevenson, Jr.*
    **JOHN W. STEVENSON, JR.**
    Attorney-In-Charge
    Texas Bar No. 01159820
    **JOHN C. SCHWAMBACH, JR.**
    Texas Bar No. 19196050
    Weslayan Tower, Suite 750
    24 Greenway Plaza
    Houston, Texas 77046-2416
    (713) 622-3223
    (713) 622-3224 (fax)

    Counsel for Peggy Kemp, Individually and as
    Surviving Natural Mother of Roy Wyatt Kemp,
    Deceased

---

[67] *Theriot*, 783 F.2d at 538-39.
[68] *Coats*, 61 F.3d at 1119.
[69] *Strong v. B.P. Exploration & Prod., Inc.*, 440 F.3d 665, 669 (5th Cir. 2006) (wireline worker injured aboard a lift boat on OCS held to have alleged maritime tort for failure to provide a safe place to work).

11

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that that the above and foregoing *Plaintiff's Memorandum In Support of Motion to Remand* has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this 11th day of September, 2012.

*John W. Stevenson, Jr.*
**JOHN W. STEVENSON, JR.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's Motion to Remand has been forwarded to all known counsel of record pursuant to the Federal Rules of Civil Procedure on this 11th day of September, 2012.

Mr. Thomas W. Taylor
**ANDREWS KURTH LLP**
600 Travis Street, Suite 4200
Houston, Texas 77002

Mr. Richard C. Godfrey, P.C.
Mr. J. Andrew Langan, P.C.
**KIRKLAND & ELLIS LLP**
300 North LaSalle Street
Chicago, Illinois 60654

Mr. Taylor Townsend
**KELLY & TOWNSEND, LLC**
137 Saint Dennis Street
Natchitoches, Louisiana 71457

Jeffrey Bossert Clark
**KIRKLAND & ELLIS**
655 Fifteenth Street, N.W.
Washington, DC 2005

*John W. Stevenson, Jr.*
**JOHN W. STEVENSON, JR.**