

Wednesday, September 12, 2012

Hon. Sally Shushan
c/o Michael O'Keefe (mike_okeefe@laed.uscourts.gov)
United States Magistrate Judge
500 Poydras Street, Room B345
New Orleans, LA 70130

*Via Electronic Mail*

> Re:   In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010
> USDC, Eastern District of Louisiana, 2:10-md-02179
> Request for Limited Discovery re: Proposed Settlement and Putative Class Action

Dear Judge Shushan,

The undersigned counsel represents several thousand businesses and individuals who were injured as a result of the April 20, 2010 Deepwater Horizon Oil Spill. On September 7, 2012, we filed substantial Objections on behalf of 795 businesses to the Proposed Settlement. [D.E. 198, 2-10-cv-07777 – Special Objections Docket, *Consolidated Objections of 795 Unnamed Class Members to Deepwater Horizon Settlement Agreement*). A substantial number of these Objectors (and the undersigned's clients) are Toursim related entities -- especially hotels and hospitality based businesses.

On September 6, 2012, I wrote to Class Counsel seeking assistance in obtaining documents and other information regarding the proposed Settlement Agreement. **Ex. A** (September 6, 2012 Letter). Specifically, I requested information related to the large volume of information in the form of expert reports and declarations filed by Class Counsel and British Petroleum, respectively, on August 13, 2012. I have as of yet received neither documents, nor information, nor any response from Class Counsel.

With the fairness hearing rapidly approaching, I believe the information my clients seek can only be of use if ordered and obtained in an expedited fashion. For this reason, I am requesting your assistance and have filed a Motion for leave to conduct limited discovery. Indeed, there has, as of yet, been no discovery into issues related to the propriety of the putative class or the fairness of the proposed settlement. The April 13, 2012 filings by Class Counsel and BP contain significant assertions of fact and opinion that appear unsupported by evidence or in direct contradiction of it.



For example, Class Counsel and BP have put forth testimony that the Economic Loss Zones were constituted and drawn to reflect the fact that Tourism related properties, such as hotels, which are closer to the Gulf of Mexico suffered greater and longer lasting injuries from the Spill than further situated properties.  *See* D.E. 7114-14 at ¶ 26 (Landry Declaration).  In point of fact, however, the Economic Loss Zones are not consistently constituted based upon geographic proximity as many of my clients (including multiple Objectors) are not designated as Zone A or B despite the fact that they are located closer to the Gulf than certain Zone A or B class members.

Even more importantly, the very premise that geographic proximity to the Gulf equates to injury and warrants such disproportionate treatment of Class Members is erroneous.  In a report and study performed by forensic accountant hospitality industry specialist, Mr. Mark Newton, C.P.A., of HSNO Consulting, Mr. Newton found that the hotels in Zone A, which comprise a mere 12% of all hotels subject to the Settlement, recovered faster and to a degree that the remaining generally further situated hotels in Zones C and D – an overwhelming 85% of hotels subject to the Settlement -- did not recover.  [D.E. 198, *Consolidated Objections*, Ex. C at ¶ 21, Declaration of M. Newton]

Limited but focused discovery into areas of *ultimate* import to the fairness of the Settlement and the propriety of the class, such as this, is well warranted.

Mr. Newton and others have concluded that the effect of the onerous causation requirements to which only Zones C and D are subject is "to exclude most claims for hotels that, in my view, were clearly impacted by the spill much more than Zone A hotels were impacted."  [D.E. 198, *Consolidated Objections*, Ex. D at ¶ 9, Report of M. Newton].  It appears as though the terms of the Settlement were precisely crafted to exclude the overwhelming majority of those properties.  As noted in the *Consolidated Objections* [D.E. 198 at 4 "Improper Trading and Reliance on Confidential Information from the GCCF"], there are strong indications that BP relied upon confidential financial information that the Objectors turned over only to the Gulf Coast Claim Facility -- and only for its use -- in BP's crafting of terms, such as the causation requirements discussed above.  Any such use by BP was without Objectors permission, knowledge, or consent and would raise serious issues about the fairness of the Settlement.  Some limited but focused discovery into this area is warranted as well.

Generally, Objectors seek limited discovery of the following topics raised by the August 13, 2012 filings by BP and Class Counsel:

1. Information related to the explanation(s) for the economic, geographic, or other bases upon which each of the Economic Loss Zones was drawn, and the bases upon which the membership of named and unnamed class members was constituted.

2. Information that explains the support for, or advocacy by, the PSC or Class Counsel, for the termination and replacement of the Gulf Coast Claims Facility.



3. Information that explains the economic and numerical bases for the various tests used to determine whether "causation" has been satisfied or to calculate the amount of loss for any claimant.

4. Information related to the PSC's or Class Counsel's solicitation of input from attorneys who are not members of the PSC but who represent hotels about the proposed terms of the Settlement prior to February 26, 2012.

5. Information that reflects and explains the economic bases for the election and association of each of the Risk Transfer Premiums for the Economic Loss Zones.

6. Information pertaining to the propriety and amount of attorneys' fees in connection with the settlement.

7. Information about BP's (and Class Counsel's) access, usage, and reliance upon the records and information compiled by the GCCF.

The recent filings in Opposition to the Settlement by the United States of America, the State of Alabama, and the State of Louisiana, also sharpen the need for this discovery, because they cast further doubt upon the assertions and conclusions contained in the August 13, 2012 filings by BP and Class Counsel.

I incorporate by reference the Motion for Leave to Take Discovery, [D.E. 7368], and would appreciate the earliest opportunity to discuss these matters with you at your convenience.

> Regards,
> **FARRELL & PATEL, ATTORNEYS AT LAW**
>
> Wesley J. Farrell, Esq.  President

**FARRELL & PATEL, ATTORNEYS AT LAW** ● The Four Seasons Tower ●
1425 Brickell Ave, Suite 58C Miami, FL 33131 ● Office: 305-798-4177 ● Fax: 800-946-6711