# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | **MDL NO. 2179** |
| | * | **SECTION J** |
| | * | |
| **This document relates to all actions.** | * * * | **Honorable CARL J. BARBIER** |
| | * | **Magistrate Judge SHUSHAN** |
| | * | |

| | | |
|---|---|---|
| Bon Secour Fisheries, Inc., *et al.*, individually and on behalf of themselves and all others similarly situated, | * * * | **Civil Action No. 12-970** |
| | * | **SECTION J** |
| **Plaintiffs,** | * | |
| | * | |
| v. | * | **Honorable CARL J. BARBIER** |
| | * | |
| | * | |
| BP Exploration & Production Inc., *et al.*, | * | **Magistrate Judge SHUSHAN** |
| **Defendants.** | * | |

| | | |
|---|---|---|
| Kip Plaisance, *et al.*, individually and on behalf of the Medical Benefits Settlement Class, | * * * | **Civil Action No. 12-968** |
| | * | **SECTION J** |
| **Plaintiffs,** | * | |
| | * | |
| v. | * | **Honorable CARL J. BARBIER** |
| | * | |
| BP Exploration & Production Inc., *et al.*, | * | **Magistrate Judge SHUSHAN** |
| **Defendants.** | * | |
| | * | |

## BP PARTIES' RESPONSE AND OPPOSITION
## <u>TO CERTAIN OBJECTORS' DISCOVERY REQUESTS</u>

*COUNSEL FOR SUBMITTING PARTIES ARE LISTED AT END OF MEMORANDUM*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................3

I.    Prior To Reaching Settlement Agreements, The Parties Engaged In An Extraordinary Amount Of Discovery...................................................................3

II.    The Settlement Agreements Are The Product Of Extensive, Good-Faith, Arm's Length Settlement Negotiations.......................................................................4

III.    Objections And Discovery Requests. ..............................................................5

    A.    Objections .............................................................................................5

    B.    Discovery Requests ...............................................................................6

        1.    Smith Stag, LLC .......................................................................6

        2.    Farrell & Patel..........................................................................8

        3.    GO FISH .................................................................................9

        4.    Wolf Bay, LLC; MRI, LLC; And Dauphin Island Property Owners Association...................................................................10

ARGUMENT ...................................................................................................11

I.    Objectors' Discovery Requests Come Too Late...............................................11

II.    Objectors' Discovery Requests Are Overbroad And Unreasonable....................11

    A.    It Would Be Exceedingly Difficult, If Not Impossible, For The Parties To Complete The Requested Discovery Prior To The Fairness Hearing...................12

    B.    The Objectors Seeking Discovery Fail To Connect The Discovery They Seek To The Objections They Assert, Let Alone Tie The Requested Discovery Back To Objections They Have Standing to Advance. .......................13

III.    Objectors' Discovery Requests Are Unnecessary. ...........................................16

IV.    Objectors Have No Legal Right To The Discovery They Seek...........................20

CONCLUSION ...................................................................................................23

i

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Altier v. Worley Catastrophe Response, LLC*,
 Nos. 11-241, 11-242, 2012 WL 161824 (E.D. La. Jan. 18, 2012) ............................................ 5

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*,
 178 F.3d 350 (5th Cir. 1999) ...................................................................................................... 15

*Bano v. Union Carbide Corp.*,
 361 F.3d 696 (2d Cir. 2004) ....................................................................................................... 16

*Bok v. Ackerman*,
 309 F. Supp. 710 (E.D. Pa. 1970) ................................................................................... 11, 17, 22

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974) ....................................................................................................... 17

*Collins v. Sanderson Farms, Inc.*,
 568 F. Supp. 2d 714 (E.D. La. 2008) ......................................................................................... 20

*Cotton v. Hinton*,
 559 F.2d 1326 (5th Cir. 1977) ......................................................................................... 3, 17, 22

*Edwards v. City of Houston*,
 37 F.3d 1097 (5th Cir. 1994) ...................................................................................................... 21

*Glicken v. Bradford*,
 35 F.R.D. 144 (S.D.N.Y. 1964) .................................................................................................. 22

*Handschu v. Special Servs. Div.*,
 787 F.2d 828 (2d Cir. 1986) ....................................................................................................... 21

*Hunt v. Washington State Apple Advertising Commission*,
 432 U.S. 333 (1977) ............................................................................................................. 15, 16

*In re Cmty. Bank of N. Va.*,
 418 F.3d 277 (3d Cir. 2005) ....................................................................................................... 22

*In re Corrugated Container Antitrust Litig.*,
 643 F.2d 195 (5th Cir. 1981) ...................................................................................................... 21

*In re Domestic Air Transp. Antitrust Litig.*,
 144 F.R.D. 421 (N.D. Ga. 1992) ............................................................................................ 3, 21

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*,
 447 F. Supp. 2d 612 (E.D. La. 2006) ......................................................................................... 20

*In re Ford Motor Co. Bronco II Prods. Liab. Litig.*,
 MDL- 991, 1994 WL 593998 (E.D. La. Oct. 28, 1994) ............................................... 16, 17, 22

*In re Gen. Tire & Rubber Co. Sec. Litig.*,
 726 F.2d 1075 (6th Cir. 1984).................................................................................................. 3, 22

*In re Lease Oil Antitrust Litig. (No. II)*,
   186 F.R.D. 403 (S.D. Tex. 1999) ........................................................................ 19

*In re Vitamins Antitrust Class Actions*,
   215 F.3d 26 (D.C. Cir. 2000) ............................................................................... 19

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*,
   834 F.2d 677 (7th Cir. 1987) ............................................................................... 22

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
   418 F.3d 168 (2d Cir. 2005) ................................................................................ 16

*Mills v. Damson Oil Corp.*,
   931 F.2d 346 (5th Cir. 1991) ............................................................................... 21

*Neff v. VIA Metro. Transit Auth.*,
   179 F.R.D. 185 (W.D. Tex. 1998) ....................................................................... 20

*Paul Kadair, Inc. v. Sony Corp. of Am.*,
   694 F.2d 1017 (5th Cir. 1983) ............................................................................. 21

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ............................................................................. 21

*Plummer v. Chemical Bank*,
   668 F.2d 654 (2d Cir. 1982) ................................................................................ 21

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) ............................................................................... 21

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*,
   517 U.S. 544 (1996) ............................................................................................ 16

*Zerkle v. Cleveland-Cliffs Iron Co.*,
   52 F.R.D. 151 (S.D.N.Y. 1971) ........................................................................... 22

**INTRODUCTION**

Nearly five months ago, BP and the Plaintiffs' Steering Committee ("PSC") placed two comprehensive settlement agreements into the public record, filing them with this Court and requesting the Court give them preliminary approval, which the Court granted over four months ago. One month ago, the parties filed motions for final approval. The deadline for objections, after having been extended once, has passed, and the Court is scheduled to consider the parties' motions for final approval at the Final Fairness Hearing set for November 8, 2012.

Notwithstanding the substantial amount of time that has passed since the settlement agreements were filed with the Court and preliminarily approved, the short amount of time remaining before the fairness hearing, and the voluminous information available in the public record, a handful of lawyers representing objectors to the settlements now seek extensive discovery on the merits of the parties' claims and defenses and the negotiations of the settlement agreements. There have been five such filings to date, by (i) a group represented by Smith Stag, LLC; (ii) a group represented by Farrell & Patel; (iii) GO FISH, a recently formed coalition of various seafood and other groups; (iv) a wetlands objector, Wolf Bay, LLC; and (v) two additional wetlands objectors, MRI, LLC, and Dauphin Island Property Owners Association.[1] All of these requests come too late, and the Court properly could, and should, exercise its discretion to deny them on this basis alone.

The objectors' requests — while couched amid promises that they are "limited" in scope or "tailored" to specific concerns — are overbroad and impractical, a fact that underscores that their true purpose is not to seek any purportedly necessary information, but to scuttle or delay the settlements. For example, there are requests for depositions of unspecified witnesses whose

---

[1] *See* Rec. Doc. 7353 ("Smith Req."); Rec. Doc. 7368 ("Farrell Req."); Rec. Doc. 7374 ("GO FISH Req."); Rec. Doc. 7383 ("Wolf Bay Req."); Rec. Doc. 7391 ("MRI Req.").

testimony "might lead to relevant evidence," production of the "enormous discovery record in this case," depositions of BP and class counsel, unspecified discovery based on the "many questions" raised by the filings of the United States and others related to the settlements, and most sweepingly "all documents and data bearing on the structure and fairness of the settlement." Collectively, the thrust of the pending motions is without doubt an attempt by a handful of attorneys to litigate against the settlements as if the parties were preparing for a trial on the merits — one not even aimed at assessing the basic fairness of the settlements but at reconstructing their entire evolution so that something to complain about might emerge.

The requested discovery is simply unnecessary to support either the objectors' purported objections or inform the Court's analysis of the fairness, reasonableness, and adequacy of the settlement agreements. The parties reached agreement to settle these cases after two years of hard-fought, contentious litigation, during which time millions of pages of discovery were produced and hundreds of witnesses were deposed. In addition to their discovery efforts, the parties negotiated against the backdrop of numerous government investigations. The vague innuendo by some objectors that there was collusion in this process withers when exposed to the sunlight of the facts, which are known first-hand to the Court given Magistrate Judge Shushan's involvement as a neutral mediator. Moreover, in seeking final approval of the settlement agreements, the parties offered several dozen expert declarations for the Court's consideration. By comparison to nearly any class action settlement, the record before the Court in this case is extraordinarily robust. None of the information sought by the objectors — who waited to seek the Court's permission to conduct discovery *until after* the deadline to file objections had passed — will materially inform or advance (1) the arguments made in the objections they have filed,

(2) their decisions whether or not to participate in the settlements, or (3) the Court's consideration of the pending motions for final approval.

Finally, the objectors have no legal right to the discovery they seek.  There is no "absolute right" to conduct discovery or present evidence simply because a person is a class member.  *In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 424 (N.D. Ga. 1992).  In evaluating settlements for approval, the fundamental question is whether the Court has sufficient facts before it to intelligently approve or disapprove the settlement.  *See In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n.6 (6th Cir. 1984).  Only discovery demonstrably necessary to this inquiry is appropriate.  As explained below, the Court has broad discretion to permit or deny objector discovery requests.  *See Cotton v. Hinton*, 559 F.2d 1326, 1333 (5th Cir. 1977).

BP requests that the Court enter an order denying the objectors' requests and precluding further discovery motions at this late date.

## BACKGROUND

As demonstrated in the numerous filings by BP and the PSC over the past several months in support of the parties' settlements, there is an extensive and unprecedented record of information showing here that the proposed settlements are the hard-won product of vigorous arms-length negotiations that included the involvement and supervision of the Court.  Properly understood, the objectors seek less to buttress this record than to distract the Court's attention from it.

## I.    Prior To Reaching Settlement Agreements, The Parties Engaged In An Extraordinary Amount Of Discovery.

As the Court noted in its Preliminary Approval Orders on May 2, 2012 (Rec. Doc. 6418; Rec. Doc. 6419), the discovery in this case has been substantial.  "[T]he parties have engaged in

extensive discovery and motion practice, including taking 311 depositions, producing approximately 90 million pages of documents, and exchanging more than 80 expert reports . . . ." Rec. Doc. 6418 at 3; Rec. Doc. 6419 at 3.  Those numbers have only increased as Phase II discovery has gotten underway in earnest.  For over a year now, any plaintiff's attorney who executed Appendix A to Pre-Trial Order No. 13 (Rec. Doc. 641) has had ready access from the PSC to all deposition exhibits.

The parties also had the benefit of numerous governmental and other public investigations, as well as other data sources reflecting class members' damages, such as statements made on short form joinders ("SFJs") and information drawn from the records of the Gulf Coast Claims Facility ("GCCF").  As a result of this extensive discovery, and with the benefit of information developed through the SFJs and the GCCF, the parties arrived at the eve of the Limitation and Liability trial scheduled and structured by Amended Pretrial Order 41 (Rec. Doc. 4083) completely apprised of the operative facts as well as the potential risks and benefits of trial.  These facts favorably posture this case in comparison to numerous approved class action settlements where the state of the record had been considerably less well-developed.

Moreover, the record in this case also includes what the Court has described as "voluminous evidence," Rec. Doc. 7358 at 3, that BP and the PSC filed into the record to support their motions for final approval.  This evidence included dozens of reports from various subject matter experts.  These expert declarations provide additional material for the Court and class members to consider in evaluating the fairness, reasonableness, and adequacy of the settlements.

## II.   The Settlement Agreements Are The Product Of Extensive, Good-Faith, Arm's Length Settlement Negotiations.

The Settlement Agreements reached by the parties were not only informed by reams of discovery materials — they were also negotiated in good faith and at arm's length over many

4

months.  All told, the parties engaged in more than 145 days of face-to-face meetings, as well as numerous phone calls and WebEx conferences.  *See* Rec. Doc. 6418 at 3.  The negotiations were extensive, highly contested, conducted with substantial oversight both from within and among various constituencies on each side of the table, and with the natural checks and balances attendant on any endeavor involving multiple parties and numerous teams of lawyers.  As a result of these negotiations, the parties arrived at an agreement that everyone involved agreed was a reasonable compromise, "a yielding of the highest hopes in exchange for certainty and resolution."  *Altier v. Worley Catastrophe Response, LLC*, Nos. 11-241, 11-242, 2012 WL 161824, at *14 (E.D. La. Jan. 18, 2012) (quotation omitted).

Given the experience of the attorneys, the length and intensity of the settlement discussions, the fairness of the resulting settlement agreements, and the involvement of this Court, there can be no question about the arms-length nature of the settlement negotiations.

## III.   Objections And Discovery Requests.

### A.   Objections

Relatively few potential claimants have filed objections.  To date, accounting for several duplicate filings on the docket, approximately 210 objections to the Economic and Property Damages Settlement Agreement and only about 20 objections to the Medical Benefits Class Action Settlement Agreement have been filed.  Excluding the objections filed by seven lawyers on behalf of certain purported class members, the total number of individual objectors is fewer than 500, many of whom are not even class members and whose "objections" do not contest the fairness or reasonableness of the settlements, but instead express a desire ***to participate in*** the settlements.  *See, e.g.*, Obj. Doc. 34; Obj. Doc. 35; Obj. Doc. 37; Obj. Doc. 40; Obj. Doc. 42; Obj. Doc. 45; Obj. Doc. 53; Obj. Doc. 55.

### B.     Discovery Requests

The pending requests for discovery come almost five months after the parties filed their motions for preliminary approval, over four months since preliminary approval was granted, more than three full weeks after the parties filed their motions for final approval, ***and after the Court's initial deadline for filing objections to the settlements had elapsed (and, at best, a few days before the extended deadline)***.[2]

### 1.     Smith Stag, LLC

Stuart Smith of Smith Stag, LLC first raised the issue of discovery by letter to counsel for BP and the classes dated Wednesday, September 5, 2012.  In his letter, Mr. Smith referred to "filings by both BP and Class Counsel on or about August 13, 2012, the recent impact of Hurricane Isaac and the pleadings just filed by the United States" to contend that discovery was necessary.  Smith Req. at 9-10  Specifically, Mr. Smith indicated that he was seeking (1) "[d]epositions of the class representatives," (2) "[d]epositions of the experts and/or fact witnesses whose declarations have been filed into the record in support of the settlement," (3) "[t]he production of documents which are reasonably calculated to lead to the discovery of admissible evidence related to settlement issues," (4) "[r]esponses to interrogatories which are reasonably calculated to lead to the discovery of admissible evidence related to settlement issues," and (5) "[s]uch other depositions of BP and class counsel which are reasonably calculated to lead to the discovery of admissible evidence related to settlement issues."  *Id.* at 10.

Two days later, Mr. Smith filed four Statements of Objections to the settlement agreements on behalf of 776 purported clients.  These objections contend there are a number of

---

[2] According to BP's preliminary research, the law firms seeking discovery and arguing that the Court cannot or should not approve the settlement on the current record represent clients that have filed more than 1,500 claims with the Settlement Facility.

disputed issues of fact that must be resolved in order to determine whether BP was grossly negligent and whether BP's conduct caused the spill, and that Mr. Smith should be allowed to take discovery on these allegedly unanswered questions in order for his clients and the Court to evaluate the settlement.  *See* Obj. Doc. 167; Obj. Doc. 185; Obj. Doc. 189; Obj. Doc. 202.  Mr. Smith has not filed any other objection that even attempts to explain — let alone actually justifies — any of his discovery requests.

After counsel for BP and the class did not immediately respond to Mr. Smith's September 5 letter, Mr. Smith wrote to counsel again on September 7, 2012, and to the Court on September 10, 2012.[3]  Mr. Smith again attempted to justify his requests by referencing filings of other parties regarding the settlement, principally those of Alabama, Louisiana, and the United States.[4]

In his letter to the Court, Mr. Smith made clear that the discovery he seeks includes information regarding the following topics — just a few among a total of ***fifteen topics*** overall:

- "The unusual size, shape, or geographic locations of the Economic Loss Zones . . . ."

- "The election of less favorable formulas and more onerous documentary requirements for determining compensation than those used by the Gulf Coast Claims Facility . . . ."

---

[3] As the Court has recognized, Mr. Smith did "not provide[] the settling party sufficient opportunity to review his request and respond."  Rec. Doc. 7366 at 1.

[4] Mr. Smith fails to recognize that the filings cited in his letter (save for the referenced objection from the State of Louisiana, which this Court has already determined does not have standing to object) are not objections to the settlement agreements and explicitly make no comment as to their fairness or reasonableness.  Mr. Smith's contention that these filings "cast serious doubt upon the basic factual underpinnings of the settlement," Smith Req. at 2, is patently incorrect.  It has been clear for at least two years that all plaintiffs in this case — including the PSC, the States, and the United States — would seek to prove BP's gross negligence at any trial.  As BP explained in its brief in support of final approval, BP does not believe that the evidence in this case will support such a finding.  *See* Rec. Doc. 7114-1 at 57-64.  That other parties to this litigation disagree with BP's position in no way counsels against approval of the settlement, for the very purpose of a settlement is to resolve claims ***even though the parties disagree.***  BP's August 13 filings include a sizable discussion that only scratches the surface of the extensive legal and factual risks to plaintiffs should litigation continue.  The Smith filing makes no mention of these risks let alone undertakes any serious attempt to grapple with them.

- "The total expected size of the class."

- "The total amount of losses of the putative class as a result of the Oil Spill."

- "The time for Gulf related businesses and property owners to recover from the stigma associated with the Oil Spill . . . ."

- "The typicality of class representatives['] claims to the claims of the class."

Smith Req. at 5-6.

### 2.     Farrell & Patel

The second discovery request received by the parties was a September 5, 2012 letter from Wesley Farrell of Farrell & Patel.  The Firm wrote to class counsel on September 5, 2012, requesting **twelve categories of documents**, including "[a]ll documents that explain or relate to the economic, geographic, or other bases upon which each of the Economic Loss Zones was drawn," "[a]ll documents that refer or relate to the support for, or advocacy by, you or any member of the PSC or Class Counsel," and "[a]ll documents that reflect your or any member of the PSC's or Class Counsel's solicitation of input from attorneys who are not members of the PSC but who represent" class members.  Ex. A at 2.

Following its letter to class counsel, Farrell filed an objection on September 7, 2012, on behalf of "Unnamed Class Members."  *See* Obj. Doc. 198.  In this objection, Mr. Farrell requested discovery on various topics that are unrelated to the items previously requested in his September 5, 2012 letter.  Further, Mr. Farrell's requests are based on numerous unsupported allegations, including that the settlement is "precisely crafted to exclude substantial numbers of claimants based upon peculiar characteristics that BP could only have learned from the GCCF," and that the PSC used SFJs as a means to "swell the ranks" and to subject more claims to

attorney's fees.  *Id.*  Mr. Farrell's allegations, however, are not accompanied by even a shred of evidence to support them.

On September 11, 2012, Farrell & Patel filed a letter request for discovery with the Court.  *See* Farrell Req.  According to the request, "[t]here has been no discovery of documents or information pertaining to class certification or the propriety or fairness of the proposed Settlement Agreement."  *Id.* at 2.  While claiming that it "is impossible for the Objectors and those similarly situated claimants whom the undersigned counsel represents to meaningfully evaluate the terms of the Settlement, their alternatives to Settlement, such as opting-out, or the fairness of the process according to which the Settlement was created or will be approved," *id.* at 3, the letter does not make entirely clear what precise information Farrell & Patel is seeking.  At most, the requests suggest a desire to take discovery regarding (1) "whether and [to] what extent BP [et al.] relied upon crucial and confidential financial information that the Objectors turned over to the Gulf Coast Claims Facility"; "what the total value of the Settlement Agreement is" and "how many hotels are subject to its terms"; and "what BP's expected liability under the Settlement [a]mounts to."  *Id.* at 4.

### 3.    GO FISH

GO FISH filed a request for discovery with the Court on September 11, 2012.  According to GO FISH, "the number and value of fishing claims released through the GCCF, the number and value of oyster leaseholder property claims made on leases issued by private entities/waterbottom owners, and the number and value of interim payments made under OPA90 all profoundly impact the fairness of the allocation and the adequacy of the capped SCP fund."  GO FISH Req. at 2.  GO FISH further desires to "explore whether the class representatives selected by the parties will adequately protect their interests should the class be certified."  *Id.* at 3.  GO FISH focuses its discovery requests on the Seafood Compensation Program that was

designed and approved by the court-appointed neutral John W. Perry, but never explains how that discovery would show that the court-appointed neutral did not design a program that fairly, adequately, and reasonably compensates all claimants.

> **4.     Wolf Bay, LLC; MRI, LLC; And Dauphin Island Property Owners Association.**

Wolf Bay, LLC, filed a request for discovery on September 12, 2012.  Identifying itself as the "owner of a large tract of designated wetlands in Alabama who experienced oil intrusion onto the shoreline and marshes of their property," Wolf Bay complains that it is ***not located*** within the Wetlands Real Property Claim Zone.  Wolf Bay Req. at 2.  (By conceding that it does not fall within the Wetlands Real Property framework, Wolf Bay fails to make clear that it is a member of the class with standing to object.)  While claiming to request "focused and limited discovery into certain topics and issues raised in the filings made by BP and Class Counsel on August 13, 2012," *id.* at 4, Wolf Bay does not clearly explain what information it is seeking or how that information could possibly be relevant to the fairness of the settlements.  Moreover, the Wolf Bay request (filed one day after the Farrell request) suspiciously copies the verbiage and selfsame arguments made in the Farrell request, including lapsing at various times into assertions about what multiple objectors purportedly need, even though Wolf Bay avers at the outset that it represents the interests of a single objector.  And Mr. Kuykendall, representing MRI and the Dauphin Island Association, simply copied the Wolf Bay filing wholesale and submitted it on his clients' behalf the following day.  *See* MRI Req.

The timing and pace of these filings reveal that a ruling on the timeliness of discovery requests is critical, lest such requests continue to trickle in by others anxious to pile on to the current group of already late requests.  As the MRI filing demonstrates, it is doubtful there is more original thought among the objector bar that remains to be conveyed.

## ARGUMENT

**I.     Objectors' Discovery Requests Come Too Late.**

There is no excuse for the objectors' failure to request discovery until this late date.  The terms of the settlement agreements have appeared in the public record since April 18, 2012, and both BP and the PSC filed "voluminous evidence," Rec. Doc. 7358 at 3, into the record in support of final approval more than a month ago.  That the objectors requesting discovery have delayed their requests until this exceedingly late date must be seen for what it is:  either a remarkable lack of diligence or an inappropriate attempt to burden the settling parties and delay the settlements.  The Court should not permit such tactics.  *See, e.g., Bok v. Ackerman*, 309 F. Supp. 710, 715 (E.D. Pa. 1970) (faulting objecting counsel for lacking "that diligence of purpose which I would require at the eleventh hour plus to hold up a multimillion dollar settlement, arrived at only after arduous and painful arms-length negotiation").

**II.     Objectors' Discovery Requests Are Overbroad And Unreasonable.**

Each of the parties requesting discovery pays lip service to the notion that it is requesting only limited, narrow discovery.  *See, e.g.*, Smith Req. at 1 (requesting "limited and focused discovery"); Farrell Req. at 1-2 (requesting "limited and focused discovery on the critical information pertaining to the fairness of the Deepwater Horizon Settlement Agreement and the putative class"); Wolf Bay Req. at 1 (same); GO FISH Req. at 1 (requesting "limited discovery regarding class certification and the Seafood Compensation program").

In reality, however, the discovery that these parties request is anything but narrow.  Smith Stag proposes to depose all class representatives and experts who filed declarations supporting the settlement, as well as any other witnesses whose depositions ***might lead to relevant evidence***; demands all documents and data bearing on the structure and fairness of the settlement; and seeks to propound interrogatories that ***might lead to*** relevant information.  Smith Req. at 10.

11

Similarly, Farrell & Patel have requested "[a]ll documents that explain or relate to the economic, geographic, or other bases upon which each of the Economic Loss Zones was drawn," "[a]ll documents that refer or relate to the economic modeling or algorithms the Settlement employs," and "[a]ll documents that reflect your or any member of the PSC's or Class Counsel's solicitation of input from attorneys who are not members of the PSC but who represent hotels about the proposed terms of the Settlement prior to February 26, 2012." Ex. A at 3.  As for GO FISH, it desires information regarding "the number and value of fishing claims released through the GCCF, the number and value of oyster leaseholder property claims made on leases issued by private entities/waterbottom owners, and the number and value of interim payments made under OPA90." GO FISH Req. at 2.

Finally, in what amounts to the capstone, Wolf Bay apparently seeks, with majestic generality, "documents or information pertaining to class certification [and] the propriety [and] fairness of the proposed Settlement Agreement." Wolf Bay Req. at 2.  Far from being narrow or tailored, these are expansive, wide-ranging requests unmoored to any particular objections, let alone to particular objections rooted back to particular objectors with standing.  That alone is proof enough that these requests do not represent a good-faith attempt to secure information necessary to inform the Court's approval decision or client opt-out decisions.  Accordingly, it is well within the Court's discretion to deny these requests.

### A. It Would Be Exceedingly Difficult, If Not Impossible, For The Parties To Complete The Requested Discovery Prior To The Fairness Hearing.

Given the wide-ranging discovery the objecting parties seek, it is not realistic to suppose that this discovery could be completed and provide the objectors, the parties, or the Court, with any resulting information without delaying and expanding the scope of the November 8 fairness hearing.  The requested written and document discovery alone would take months.  Depositions

of class representatives, experts, and counsel concerning the economic loss settlement would easily consume several additional weeks.  Presumably there would be no point to these efforts without scheduling a new round of objection, responses, and briefing on whatever aspects of the settlements the objectors chose to criticize after reviewing the product of such discovery.  And, if objectors have their way, the fairness hearing would be transformed into a mini-trial on the merits of MDL 2179 as a whole as well as on the merits of the settlements.  The parties who have requested this discovery surely know this is unrealistic and, more to the point, unnecessary and not proper under the governing legal standards for adjudicating settlement fairness.  That they have nonetheless chosen to request such expansive discovery with only weeks remaining before the fairness hearing is strong evidence of improper motive.

> **B.**      **The Objectors Seeking Discovery Fail To Connect The Discovery They Seek To The Objections They Assert, Let Alone Tie The Requested Discovery Back To Objections They Have Standing to Advance.**

The point of seeking discovery is to buttress a legal claim, defense, or objection that a *litigant already possesses*, not to embark on a fishing expedition to determine whether a litigant might develop a claim, defense, or objection.  But none of the requests for discovery addressed in this brief successfully ties requests for information to a particular objection or attempts to show that the alleged objectors have standing to make such objections, as opposed to attempting to show the bare fact of membership in the class (if even that is attempted).  This underscores that these objectors are using the objection process as a smokescreen for delay and for holding the settlements hostage — to the detriment, it must be noted, of many of their own clients.

Smith Stag alludes to the number of objections it has filed on behalf of its various clients before requesting a staggeringly broad degree of depositions and documents.  But nowhere in its discovery requests does Smith Stag explain why the specific discovery is necessary to resolve the specific objections that its clients have alleged.  It is neither BP's nor the Court's job to connect

the dots on their behalf.  Smith Stag also seeks to base its requests for discovery on the filings of the United States, the State of Alabama and the State of Louisiana, suggesting that they all relate directly to the fairness and reasonableness of the settlement.  Yet both the United States and the State of Alabama explicitly disclaim any intent to comment on the fairness of the settlement agreements, and the Court has already concluded that the State of Louisiana lacks the necessary standing to object.  *See* Rec. Doc. 7038.  All the filings submitted by Louisiana, Alabama, and the United States show, at most, is a good-faith disagreement about the extent of BP's liability — a dispute that the parties are entirely free to resolve by settlement.  If cases could only settle when there was universal agreement about all the facts, no cases would ever settle.

Farrell & Patel similarly cites to the three broad objections that it has filed on behalf of several hundred putative objectors.  But just as Smith Stag, Farrell & Patel utterly fails to tie its discovery requests to objections that it has filed, even assuming such claimed objectors possess standing.  What information does Farrell & Patel need to flesh out an objection being brought on behalf of a specific claimant?  It is once again neither BP's nor the Court's responsibility to answer this question.   Objectors are seeking full-on, trial-level macro- and micro-discovery based on generalized grievances rooted only in vaguely asserted class membership.  Yet they are not entitled to anything approaching the plethora of discovery they seek.

GO FISH suggests that it needs discovery to ensure that there is sufficient money available in the Seafood Compensation Program and that the class representatives are adequate.  GO FISH asked for various pieces of information regarding the total number and value of GCCF releases from seafood related businesses.   While GO FISH's formal discovery requests are perfunctorily couched as necessary for its constituents to analyze the fairness of the Seafood Compensation Program, GO FISH has claimed that it has demonstrated and "proved beyond

doubt" the claims made in its objections.  Rec. Doc. 7374-1 at 2.  If such statements are true, it is hard to understand how discovery would aid its analysis or further its objections.  Instead, it appears GO FISH is using its discovery requests as an attempt to force settlement renegotiation and forestall the approval of a fair, reasonable, and adequate settlement.  The authorities wisely hold that requests posed for the meritless purpose of causing delay or attempting to force renegotiation are not permitted.

Finally, Wolf Bay, LLC and the other wetlands objectors complain that their property is excluded from the Wetlands Real Property Claim Zone.  Even assuming these entities have standing (a proposition that is far from clear from its submission), Wolf Bay does not explain why the discovery it seeks will support its objection or permit it to make an informed decision about whether to remain in the settlement class.  Instead, Wolf Bay simply parrots language from the Farrell & Patel discovery request on behalf of a different set of clients.

The standing issue is critical, particularly with respect to GO FISH, since it is not itself a member of either class, but is proceeding supposedly on a representative basis as to fishermen who are somehow derivatively associated with the organization.  GO FISH makes no attempt to demonstrate that it can meet the test for organizational standing set out by the Supreme Court in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977); namely, that "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 365 (5th Cir. 1999).[5]

---

[5] Even assuming the first two elements of the *Hunt* test could be met, GO FISH simply cannot satisfy the element requiring it to show that individual member participation is not required.  The relevant form of legal relief sought

The essence of GO FISH's discovery claim is that at least some of its affiliate groups' members belong to the economic loss class and therefore GO FISH is entitled to seek discovery on any issue that could lead to improving a distribution to such an affiliate of its organization.[6] That is not the law.  Instead, the individual fishermen must themselves come forward to explain (a) why they are class members; (b) what objection or opt-out decision they face; and (c) how targeted discovery on some issue would provide necessary information material to the objection or opt-out decision.  GO FISH has not done that, and it is too late to do so now given that the objection deadline has passed.

## III.   Objectors' Discovery Requests Are Unnecessary.

In determining whether or not to permit discovery by objectors into the merits of a case, the Court may consider the nature and amount of previous discovery, whether or not there is a reasonable basis for the requests, and the number and interests of objectors, *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, MDL- 991, 1994 WL 593998, at *3 (E.D. La. Oct. 28, 1994), keeping in mind that all requests from objectors to a proposed settlement should only be

---

here for the underlying fishermen affiliates of GO FISH's member organizations are individualized money damages awards.  But such claims are the archetypal form of relief that flunks the third requirement of *Hunt*.  "[Individual] participation would be required in an action for damages to an association's members, thus suggesting that an association's action for damages running solely to its members would be barred for want of the association's standing to sue."  *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 546 (1996).  "The need for an individualized inquiry [concerning damages] would defeat the association's standing, because a plaintiff normally lacks associational standing to sue on behalf of its members where 'the fact and extent of injury would require individualized proof.' *Bano* [*v. Union Carbide Corp.*], 361 F.3d [696, 714 (2d Cir. 2004)] … ('We know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members.')."  *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 174 (2d Cir. 2005) (Sotomayor, J.).

[6] GO FISH has an even more fundamental problem in seeking discovery — it does not itself appear to have individual fishing or business members.  Rather it is a meta-organization — a coalition of associations that themselves have underlying individual and business members.  As such, it is **two levels** removed from actual claimants.  *See* GO FISH, http://gofishcoalition.com/  (last visited Sept. 14, 2012) ("GO FISH (Gulf Organized Fisheries in Solidarity & Hope) is a **coalition** of **member organizations** across the Gulf Coast ….") (emphasis added).

permitted if relevant to the Court's determination of whether the settlement is fair, adequate, and reasonable.  *Id.*

The "critical question" to determine whether independent discovery by objectors is necessary is whether the Court has "sufficient facts before it to intelligently consider the proposed settlement."  *Id*.  Here, the Court has been actively involved in this litigation from the start, is well-versed in the facts and issues, and has a comprehensive record before it.  Given the voluminous record, independent discovery by objectors would be unnecessarily "duplicative of the [previous] efforts."  *Id*.  Indeed, courts routinely approve settlements in cases where significantly less formal discovery has been conducted.  *See Cotton*, 559 F.2d at 1332 (settlement was approved despite "very little formal discovery" and "no voluminous record" in the case).  Where, as here, significant (in fact massive) documentation has already been produced, interrogatories answered, and testimony taken, "independent discovery should generally not be allowed."  *In re Ford Motor Co. Bronco II*, 1994 WL 593998, at *3; *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res.*, 209 F.3d 43 (2d. Cir. 2000).  Indeed, the Court here sits in a similar position to that in *Bok*, a case cited by Mr. Smith.  *See* 309 F. Supp. at 715.  In *Bok*, the Court noted in response to an objector's request for discovery, "as I determine whether to approve the proposed settlement I have before me far more than the recommendations of the attorneys of record.  The one-year course of litigation has produced in the form of pleadings, conferences, and hearings a rather complete picture of the matters at issue and how they are sought to be compromised."  *Id*.  Given the nearly two-and-a-half year history of this litigation, the Court sits in a similar and indeed better-informed position.

The settlement compensates each and every class member according to frameworks that are exceedingly transparent and have been filed in the public record for nearly five months.  Any class member seeking to determine his compensation may simply read the settlement agreements and determine how his circumstances fit into the frameworks.   For that reason, there is no conceivable reason that any objector would need to know, as Mr. Smith requests, the estimated size of the class, given that the settlement is uncapped for the vast majority of claimants.  It is equally unclear why a claimant needs to know the total amount of losses of the class when the settlement agreement provides for the payment of all compensatory damages, or needs to know (to take an example relevant to the majority of Farrell & Patel's clients) the total number of hotels in the class when the settlement makes all injured hotels whole (or more than whole) regardless of how many exist.  The Court may determine that the settlement agreement is fair, reasonable, and adequate — and each class member may make an informed decision regarding his choice to either remain in or opt-out of the class — without this information.

In many cases, the objectors seek information geared towards determining why the parties negotiated the terms that they did.   But as discussed above, the PSC vigorously represented the classes throughout the protracted negotiations to obtain for class members the best settlement possible.  Objectors do not seek to clarify the favorable terms obtained by the PSC in order to aid the Court's inquiry into the settlements' fairness, but seek solely to undermine the proposed compensation.  The parties have provided ample evidence through their final approval briefs and supporting materials to support the fairness, reasonableness, and adequacy of the settlements' provisions.   Any further discovery as to the bases of these provisions would only be duplicative and unduly burdensome at this date.

In the event that a class member dislikes a settlement provision, discovery into that provision will not result in the provision's modification.  If a class member is unsatisfied with an applicable settlement, he or she has the right to choose whether to remain a class member.  *See In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 440 (S.D. Tex. 1999).  By opting out, those who are unhappy with the settlements' provisions escape their binding effect, and thus are free to pursue their claims and seek the relief they desire.  *See In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 28-29 (D.C. Cir. 2000).

The bottom line is that the proposed discovery will neither materially advance the objectors' objections nor assist the Court's consideration of the fairness, reasonableness, and adequacy of the settlement agreements.  On the one hand, the objectors claim that they need discovery to determine whether to formulate objections.  This objective is belied by the simple fact that the objections deadline has already passed and the objectors have made their objections.  On the other hand, these objectors claim that they are seeking discovery for the benefit of the Court; in other words, the Court requires certain information, and the objectors have appointed themselves as the judicial agents to ferret it out on the Court's behalf.  This objective is belied by the fact that the Court has already found that it is well-informed and has established a fairness hearing structure that confirms that very conclusion.  *See* Rec. Doc. 7358.

As of September 11, 2012, the Court noted that it had reviewed all final approval briefs as to both settlements as well as all objections.  *See id.* at 2.  In light of that existing and impressive knowledge base, the Court has found the following: (1) live testimony at the hearing is not required; (2) arguments of counsel should be the hearing's focus, premised on the documents already in the record; (3) only class members who have complied with the objections deadlines will be heard from; (4) "the Court presently intends to limit oral presentations by

individual objectors (or their counsel, as applicable) to not more than 3 minutes each"; (5) the Court anticipates a need to avoid duplication, cumulativeness, and retracing ground covered in written objections or the hearing could become unmanageable; and (6) only those with standing will be allowed to participate. *Id.* at 2-5. These are not the findings of a Court that believes itself to be suffering from an acute information deficit about the fairness of the settlement frameworks carefully negotiated between the parties, as judged against the litigation risks to plaintiffs.

Objectors fundamentally misapprehend the task before the Court and the role of objector counsel. The Court's task is to consider the record that appears before it to determine if, on the basis of that record, it may make the findings necessary to certify the settlement classes and determine that the settlement agreements are fair, reasonable, and adequate under Rule 23. It is not the role of the objectors (or of the Court) to renegotiate the agreement, nor determine whether the class would receive more compensation in contested litigation, so long as the implicit judgments by Class Counsel of the legal and factual risks faced if the case proceeds to trial are within the realm of the reasonable. For that reason, discovery is not warranted to conduct a fishing expedition unconnected to any cogent objection, let alone where, as here, it is not closely tethered back to objections particular objectors have legal standing to advance.

## IV.    Objectors Have No Legal Right To The Discovery They Seek.

The settlement agreements are presumptively fair, reasonable, and adequate, and the burden is on the objecting parties to demonstrate that they are not and why they are not. *See, e.g.*, *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 722 (E.D. La. 2008); *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619 (E.D. La. 2006); *Neff v. VIA Metro. Transit Auth.*, 179 F.R.D. 185, 208 (W.D. Tex. 1998). In order to justify any right to even limited discovery, objectors bear the burden of

making a preliminary showing that the terms of the agreements are ***not*** fair, reasonable, and adequate. Discovery is only appropriate in aid of a valid objection, not to search for one. *See Mills v. Damson Oil Corp.*, 931 F.2d 346, 350-51 (5th Cir. 1991); *Paul Kadair, Inc. v. Sony Corp. of Am.*, 694 F.2d 1017, 1032 (5th Cir. 1983) (refusing to allow litigant, for purposes of delay, "to go fishing with the hope of fortuitously discovering some unknown and unsuspected evidence").

The uniform rule is that a fairness hearing is not and must not be conducted as a trial on the merits. *See, e.g.*, *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 641 (5th Cir. 2012) ("Objectors have a right to be heard, but a fairness hearing is not a full trial proceeding") (footnote omitted); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999) ("[T]he purpose of a settlement is to avoid the expense and delay of a trial . . . ."); *Edwards v. City of Houston*, 37 F.3d 1097, 1119 (5th Cir. 1994) ("Neither intervenors nor objectors are entitled to hold consent decrees hostage and require a full-blown trial in lieu of a fairness hearing"); *Handschu v. Special Servs. Div.*, 787 F.2d 828, 834 (2d Cir. 1986) ("The district court correctly concluded that it would be inconsistent with the salutary purposes of settlement to conduct a full trial in order to avoid one"); *Plummer v. Chemical Bank*, 668 F.2d 654, 659 (2d Cir. 1982) (observing that "we do not expect district judges to convert settlement hearings into trials on the merits"); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981) (explaining that the evaluation of a settlement "is not and cannot involve a trial on the merits"). Consistent with that principle, class members do not have an "absolute right" to conduct discovery or present evidence. *In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 424 (N.D. Ga. 1992).[7]

---

[7] The cases cited by Mr. Smith are not to the contrary. Indeed, the string citation that he includes in his letter to the Court only confirms that discovery is not warranted in this case. The cases cited do not stand for Mr. Smith's

Indeed, courts have consistently and clearly held that class members who object to a class action settlement have neither a vested "entitle[ment] to discovery," *Gen. Tire & Rubber*, 726 F.2d at 1084 n.6, nor an automatic privilege "to question and debate every provision of the proposed compromise." *Cotton*, 559 F.2d at 1331. In accordance with the purpose of the Court's inquiry once a settlement agreement has been reached, "[t]he temptation to convert a settlement hearing into a full trial on the merits," which is exactly what objectors seek to do now, "must be resisted." *In re Ford Motor Co. Bronco II*, 1994 WL 593998, at *3 (quoting *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 834 F.2d 677, 684 (7th Cir. 1987)).

As always, the appropriate scope of discovery rests within the sound discretion of the trial judge. *Cotton*, 559 F.2d at 1333. In evaluating settlements for approval, the fundamental question is whether ***the Court*** has sufficient facts before it to intelligently approve or disapprove the settlement. *Gen. Tire & Rubber*, 726 F.2d at 1084 n.6. Only discovery demonstrably necessary to this inquiry might be appropriate. Where sufficient information already exists in the record (as it unquestionably does here), or objectors seek an inquiry into tangential issues, indulging their requests would only "unduly burden the parties" and "cause unnecessary delay" in the finalization of the proposed settlement, and thus must not be allowed. *In re Ford Motor Co. Bronco II*, 1994 WL 593998, at *3.

---

proposition that discovery is necessary to allow this Court to reach an informed, just, and reasonable decision. Rather, at most, these cases support the proposition that "it is within the Court's discretion **to limit the proceedings to whatever is necessary** to aid it in reaching an informed, just and reasoned decision." *Glicken v. Bradford*, 35 F.R.D. 144, 148 (S.D.N.Y. 1964) (emphasis added). Indeed, discovery was ***denied*** in almost all of the cited cases. *See In re Cmty. Bank of N. Va.*, 418 F.3d 277, 316 (3d Cir. 2005) (denying discovery and holding that as a general matter, objectors do not have an absolute right to discovery); *Bok*, 309 F. Supp. at 715 (refusing to grant discovery where attorney did not evidence the "diligence of purpose which I would require at the eleventh hour plus to hold up a multimillion dollar settlement, arrived at only after arduous and painful arms-length negotiation."); *Glicken*, 35 F.R.D. at 148. In *Zerkle v. Cleveland-Cliffs Iron Co.*, the court refused to grant the objector discovery where "he ha[d] done nothing to inform himself of the merits or even to ask questions" until the eleventh hour. 52 F.R.D. 151, 157 (S.D.N.Y. 1971). The court held that under those circumstances the objector's "present suggestion of possible lack of adversarial scrutiny seem[ed] unjustified and adventitious." *Id.* Mr. Smith's last-minute discovery requests are no different.

Objectors have not seriously called into question the fairness, reasonableness, and adequacy of the class settlements, and none of the discovery they request is necessary for the Court to confirm the presumption that the settlements are fair, reasonable, and adequate.  Indeed, none of the requests filed even attempts to grapple with or fairly assess and balance ***the risks to plaintiffs*** if litigation were to continue in comparison to the settlements.

Accordingly, and for the reasons described below, it is entirely appropriate for the Court to exercise its discretion to deny these eleventh-hour and overbroad requests.

## **<u>CONCLUSION</u>**

The Court should deny any requests for discovery by Objectors.  The requests have come too late and utterly fail to propose narrowly tailored discovery in good faith that would inform or advance either the objectors' ability to participate in or opt-out of the settlements or aid the Court in making its decision on the settling parties' pending motions for approval of the settlements.  In light of the limited time remaining prior to the fairness hearing, and for the reasons explained above, BP respectfully submits that the Court should also enter an order providing that absent a substantial showing of good cause, future discovery requests will be summarily denied.

September 14, 2012                    Respectfully submitted,


                                     */s/ Richard C. Godfrey, P.C.*_____

James J. Neath                       Richard C. Godfrey, P.C.
Mark Holstein                        J. Andrew Langan, P.C.
BP AMERICA INC.                      Timothy A. Duffy, P.C.
501 Westlake Park Boulevard          Wendy L. Bloom
Houston, TX  77079                   Andrew B. Bloomer, P.C.
Telephone:  (281) 366-2000           KIRKLAND & ELLIS LLP
Telefax:  (312) 862-2200             300 North LaSalle Street
                                     Chicago, IL 60654
Daniel A. Cantor                     Telephone:  (312) 862-2000
Andrew T. Karron                     Telefax:  (312) 862-2200
James P. Joseph
Ethan P. Greene                      Jeffrey Bossert Clark
ARNOLD & PORTER LLP                  Steven A. Myers
555 Twelfth Street, NW               KIRKLAND & ELLIS LLP
Washington, DC 20004                 655 Fifteenth Street, N.W.
Telephone:  (202) 942-5000           Washington, D.C. 20005
Telefax:  (202) 942-5999             Telephone:  (202) 879-5000
                                     Telefax:  (202) 879-5200

Jeffrey Lennard
Keith Moskowitz                      */s/ Don K. Haycraft*_____
SNR DENTON                           Don K. Haycraft (Bar #14361)
233 South Wacker Drive               R. Keith Jarrett (Bar #16984)
Suite 7800                           LISKOW & LEWIS
Chicago, IL  60606                   701 Poydras Street, Suite 5000
Telephone:  (312) 876-8000           New Orleans, Louisiana 70139
Telefax:  (312) 876-7934             Telephone:  (504) 581-7979
                                     Telefax:  (504) 556-4108

Ellen K. Reisman
ARNOLD & PORTER LLP                  Robert C. "Mike" Brock
777 South Figueroa Street            COVINGTON & BURLING LLP
Los Angeles, CA 90017-5844           1201 Pennsylvania Avenue, NW
                                     Washington, DC 20004
                                     Telephone:  (202) 662-5985
                                     Telefax:  (202) 662-6291

*OF COUNSEL*


       **ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.
           AND BP AMERICA PRODUCTION COMPANY**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 14th day of September, 2012.

<u>/s/  Don K. Haycraft</u>