

820 O'Keefe Avenue
New Orleans, Louisiana
70113-1116

p: (504) 581-4892
f: (504) 561-6024
e: info@hhklawfirm.com
hhklawfirm.com

Harry Herman (1914-1987)
Russ M. Herman*
Maury A. Herman*
Steven J. Lane
Leonard A. Davis*
James C. Klick[1]
Stephen J. Herman
Brian D. Katz
Soren E. Gisleson
Joseph E. Cain

Jennifer J. Greene[2]
John S. Creevy
Jeremy S. Epstein[1]
Aaron Z. Ahlquist[3]
Craig M. Robinson
Carl A. Woods
Adam H. Weintraub[4]
Mikalia M. Kott[5]

Of Counsel:
Herbert A. Cade
Morton H. Katz*
Joseph A. Kott, MD, JD

This Firm and its Partners Are Also
Partners in Herman Gerel, LLP

* A Professional Law Corporation
[1] Also Admitted in Texas
[2] Also Admitted in Arkansas
[3] Also Admitted in Tennessee
[4] Also Admitted in New Jersey & Pennsylvania
[5] Also Admitted in Colorado

July 7, 2012

*VIA* E-MAIL

Clint Guidry
LOUISIANA SHRIMP ASSOCIATION
E-Mail: tclint@cox.net

    Re:  <u>In re: Deepwater Horizon Litigation</u>
           **MDL No. 2179**

Dear Clint,

    Someone provided me with your e-mail regarding the Go Fish meetings.

    I understand that the Settlement might not work for everyone, and it's good that people are closely evaluating their options.

    Towards that end, I thought it might be helpful to provide you with some information which may be helpful to people in making their decisions.

    First, I think it's important for people to understand that the existing Settlement Program is not just another stage in an ongoing process.   This is the last, best, final settlement offer from BP.   People can participate, or they can opt out.   But the Court does not have the power to change the settlement terms, and it is extremely unlikely that BP will put more money on the table, or that Perry will make any significant changes to the initial allocation formula.

    Second, I think it is important for people to understand that the Seafood Program, while subject to Court approval, does not rise or fall based on the number of opt outs.   There is no "blow provision" or "walk-away right" with respect to the Seafood Program.   Therefore, the couple of attorneys who have "threatened" to opt their clients out, (not necessarily because it's in the best interests of each of their clients, but perhaps because they are trying to gain some type of leverage), don't really know what they are doing.   The result of fishermen opting out is simply that the other fishermen who do participate in the Settlement Program will get more money.

Similarly, I understand that some attorneys have apparently spread a rumor that if people "hold out" then a "better deal" is coming in November.  I don't know where these attorneys claim to get their information.  Or what their long-term plan is, should a better deal not materialize.  When, for example, they expect to get individual trial dates.  Or how they expect to prove their cases in Court on behalf of clients who have little or no documentation.

But I do know, as someone who talks to BP's lead attorneys several times a week, that BP has consistently and repeatedly said, in no uncertain terms, that they will not change the deal, or negotiate "special deals" (or any deals) with opt outs.[1]

I can't predict the future with certainty, or make guarantees, but I suspect that people who believe that a better deal is coming are heading for a rude awakening.  I think they should expect to be prepared to prove their cases in a Court of law.  And that it may take some time (perhaps years) before they get a trial date.[2]

With respect to the Go Fish Objection, I understand that, from the individual fisherman's point of view, it all comes down to the bottom line.  But I do think it is likely important for people to understand that the framework was determined by an independent fact-finder, based on input from people such as yourself, Joel Waltzer, Gerry Nolting, and others, taking into account the known NOAA, DWF and other available data.  While you, or I, or Joel, or Jim Klick, or Joe Rice, or any one advocate likely would have designed the Program differently, the process itself was a fair and neutral process.

Moreover, while I understand that you guys had to put the filing together on a very short time-frame, the Objection did have a little bit of "fuzzy math" in it.  (For example, Go Fish compared a *vessel gross revenue* factor under the Settlement Agreement to an *individual lost profit* factor under the stated GCCF methodology.)

And, while the legal standards were admittedly low, the bottom line is that the Go Fish Objection to Preliminary Approval did not bring BP back to the negotiating table, and the Court granted Preliminary Approval of the Settlement.

Finally, I think it is important for people to realize that there is a lot of potential "head room" built into the Seafood Program.  In addition to the $400 million reserve (between the $1.9 target initial pay-out and the $2.3 billion total commitment), the $1.9 billion allocated for initial

---

[1] BP is, of course, required by OPA to maintain a claims process. But I predict that this claims process will provide the absolute minimum required under OPA (if that). I seriously doubt that anyone from the BP OPA process will be offering to compensate anyone for future damages, future risks, punitive damage exposure, or anything like an "RTP".

[2] This may, in the long run, be the best choice for some fishermen. I am not necessarily trying to discourage them. (I, personally, am in it for the long haul, and will continue to dedicate myself to the interests of all plaintiffs, as long as the Court continues to entrust me with the responsibility of co-liaison counsel.) I just want to try to make sure that people making this decision are fully informed.

payouts is a conservative number, which likely accounts for substantially more potential claimants than the number of fishermen who are reasonably expected to make claims.   In addition, there was over $700 million paid to commercial fishermen by the GCCF, which is not accounted for in the model.   And, as noted above, opt outs will create an even bigger reserve for those who participate.   Therefore, while we can't predict the future, or make any guarantees, it seems reasonable to expect that there could be a significant second payment out of the $2.3 billion fund, over and above the basic Expedited, Reduced Expedited and/or Historical Revenue Models.

      I hope that this information is helpful.   If there is anything else that we can do, please do not hesitate to call.

      Thanks, and,

                        Best wishes,

                        STEVE HERMAN

**"2.3 billion replaces the entire catch in affected areas of the Gulf of Mexico for seven years, buys a 15 year supply of fuel, ice and food for every affected vessel, and is 22 times the 2010 loss caused by the spill. Split fairly, the Seafood Program should be enough to protect fishermen even in the worst case situation, total fishery collapse."**

**– Joel Waltzer, March 19, 2012.**