

# SMITH STAG, LLC

One Canal Place | 365 Canal Street | Suite 2850 | New Orleans, Louisiana 70130
Phone 504 593 9600 | Fax 504 593 9601 | www.smithstag.com | mail@smithstag.com

Stuart H. Smith†
Michael G. Stag†

Lloyd S. Jolibois, Jr., Ph.D.
Amber E. Cisney
Catherine B. Cummins
Robert D. McMillin
Sean S. Cassidy±
Joanne M. Ryan

September 17, 2012

Of Counsel:
Barry J. Cooper, Jr.‡
Alan D. Alario, II

† Limited Liability Company
‡ Also Admitted in Texas
± Also Admitted in New Jersey

**VIA EMAIL:**

The Honorable Sally Shushan
United States Magistrate Judge
500 Poydras Street, Room B345
New Orleans, Louisiana 70130
E-Mail: Sally_Shushan@laed.uscourts.gov

Re:  *IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on April 20, 2010*
USDC, Eastern District of Louisiana, 2:10-md-02179
Our File Number: 203101
*Discovery Requests Related to the Economic and Property Damages and Medical Benefits Settlement In Re: Deepwater Horizon Litigation*

Dear Judge Shushan:

This correspondence is to respond to the September 14 letter to Your Honor from James Roy and Stephen Herman, and the response filed by BP (REC. DOC. 7411), regarding Plaintiffs'/Objectors' discovery requests related to the Economic and Property Damages Settlement and the Medical Benefits Settlement reached between the Plaintiffs' Steering Committee ("PSC") and BP. This correspondence is also to request that Your Honor allow Plaintiffs/Objectors to conduct a discovery conference with the PSC and BP before the Court.

The response of Messrs. Roy and Herman to the settlement discovery suggests throughout that Plaintiffs should simply "trust us and settle in the dark." This response is astounding. Your Honor surely needs no reminder – but clearly the PSC does – that the BP Oil Spill is the world's largest oil spill and the worst environmental disaster in the history of the United States. It devastated the Gulf Coast economy, destroyed century-old ways of life, toxically exposed many Gulf Coast communities and wreaked unrivalled environmental damage. Any potential settlement will set the future course for thousands

1

of regional businesses and the lives and health of hundreds of thousands of Americans. And, yet the PSC and BP assert that discovery regarding the very settlement that will effect so many, so deeply should be entirely denied because it is either too late or will delay the currently scheduled fairness hearing. Both assertions are untrue.

Discovery related to such large, impactful cases is typical.[1] The PSC and BP admit in their respective responses that courts allow settlement discovery "if it will help the court determine whether the settlement is fair, reasonable and adequate."[2] Courts have uniformly held that objectors play an important role in class action litigation since class actions bind parties not before the Court.[3] This fact mandates that due process considerations be given to any settlement and that objectors can aid the Court in its determination of whether a settlement is fair or needs adjustment. In this particular case the PSC are strangers to undersigned counsel's clients and the PSC's motivation for entering into this settlement has been questioned. For example, what consideration, or effect the six hundred million dollar fee had in the negotiations is subject to much speculation and suspicion.

## THE SETTLEMENT DISCOVERY IS TIMELY

Both the PSC and BP make much to do about the fact that the settlement document was filed five months ago, in support of their timeliness argument. They seek to brush over the fact that the agreement is extremely complex, and is still undergoing interpretation by the claims facility. Both claim that the record is gigantic and contains the necessary information for the Court to make a reasoned decision. However, the so called "voluminous information" upon which the PSC and BP rely and which was filed prior to August 13, 2012 relates to liability issues.

BP and Class Counsel, in coordinated fashion, filed extensive briefs and declarations supporting the settlement on or about August 13, 2012. This coordinated "Document Dump" for the first time laid out the factual and scientific underpinnings to the settlement. Until this moment in time, objectors had no idea how these parties intended to satisfy their burden of proving the fairness and adequacy of the settlement. The argument that objectors counsel should have conducted discovery while the agreement was being interpreted by the settlement facility, and before the disclosure of factual and scientific evidence supporting the settlement is ridiculous. [4]Such an argument

---

[1] *See, e.g., Georgine v. Amchem Prods., Inc.,* 157 F.R.D. 246, 260 n.9.("Objectors were given the opportunity to probe into facts surrounding the proposed settlement through depositions of relevant persons.... In all, thousands of pages of documents were produced and over thirty depositions took place during the discovery period."); *see also* Tidmarsh, *supra* note 951, at 5, 12 (finding that "[t]wo of the [five] cases (*Georgine* and *Ahearn*) permitted broad rights of discovery to objecting parties")

[2] PSC's September 14th correspondence to Judge Shushan, p. 8.

[3] *See,* Manuel for Complex Litigation, Fourth Edition § 21.643 (2009).

[4] The fact that the claims administrator is still not sure how to interpret the settlement agreement is telling. If a sophisticated attorney claims administrator is not sure how to implement the settlement, how could a member of the public be expected to do the same. (See September 10 Update on DWH Settlement Program in which the claims administrator discussed the possibility of relaxing or altering some of the documentation requirements attached as Exhibit A).

would have resulted in two separate rounds of discovery — one round of discovery before the "document dump" of August 13, 2012 and one after. It is illogical to suggest that objectors should engage in piecemeal discovery prior to the moment when the parties with the burden of proof have laid all of their cards on the table. The proverbial cards were not all laid on the table until mid August right before Isaac's landfall. Objectors feel certain that the Court would reach the same conclusion upon a cursory inspection of the voluminous fact and expert witness declarations which were filed in mid-August by the parties wishing the Court to engage in a rush to judgment. Most telling about the response by BP and the PSC is they do not contest many of the contentions contained in my letter of September 10, 2012. The following are just some of the points which were not denied and/or explained, and remain completely un-rebutted, in the papers filed by BP and the PSC:

> a) The filings of British Petroleum and class counsel in support of their motion(s) requesting Court approval of the settlement on or about August 13, 2012 were voluminous and contained numerous declarations and other evidence submitted in support thereof. [REC. DOC. 7101, 7104, 7111, 7112, 7113, 7114, 7116] The self-serving statements contained in this "evidence" have not been subject to third party examination of the veracity and/or the scientific reliability of the "evidence";
> b) The land fall of hurricane Isaac has changed the settlement landscape. According to the "evidence" submitted by BP in support of the settlement Risk Transfer Premium (RTP), significant future contamination from the oil spill was "unlikely". How Hurricane Isaac has affected or will affect the risk transfer premiums and/or reasonableness of the settlement are unknown to objectors without discovery;
> c) The United States further alleges that a multi-year, multi-million-dollar assessment of damage to natural resources caused by the Deepwater Horizon shows what it calls "*indications of harm*" to the environment along the Gulf Coast. It notes -- in a stark rebuttal of BP's claims of a major recovery in the Gulf ecology -- that "*while it is true that many resources are in a better condition than at the height of the spill, -- after all, they are no longer slathered in layers of BP's oil -- it is also true that they continue to suffer significant harm...*"
> d) The papers filed by BP and the PSC in support of the settlement are misleading. [REC.DOC. 7345 at pg 4]
> e) There has been no discovery on the question of damages. [REC.DOC. 7345 at pg 11]
> f) The evidence submitted on economic and environmental damages by BP and the PSC consist of one-sided declarations of BP's hired experts. No unbiased evidence of actual losses has been presented to the Court. [REC.DOC. 7345 at pg 11]
> g) Undersigned counsel is unable to identify any evidence in the record that addresses or allows for a systematic and scientifically credible analysis of th unusual size, shape, or geographic locations of the Economic Loss Zones.
> h) The lack of scientific or other basis for interclass conflict between the following groups : wetland/property owners east and west of the Louisiana and

3

Mississippi lines, sport fishers, crabbers and long liner fishers as compared to other classes within the seafood compensation program, etc.;

The discovery requested by objectors is timely considering the arguments above. The requests were transmitted to BP and the PSC only 15 working days after electronic filing of the "document dump", if the days the Courthouse was closed from Isaac are not considered. A little more than a week ago, the United States and the Attorney Generals of Louisiana and Alabama filed objections that raise serious questions as to the fairness and adequacy of the settlement. These filings introduced evidence as to whether settlement negotiations were at arm's length. Hurricane Isaac also recently showed that the damage from the oil spill is continuing in nature. BP oil is washing up on beaches to this day. The settlement discovery seeks documents and information which would explain why the PSC is advocating that claimants forego interim payments (as the settlement requires) in light of this continuing damage from the spill. BP provided its experts' opinions on the spill damage in support of the settlement, but where are the PSC's experts? Is the public expected to rely solely on the same company that not only caused this preventable disaster, but also continually misrepresented its scope? Given the recent filings, the complexity and length of the settlement agreement, as well as the diverse and numerous claims addressed, the timing of the discovery is reasonable.

Another issue before Your Honor is whether absent class members who have exercised their right to object to the settlement have the right to cross examine and take appropriate discovery of purported evidence filed into the record only two weeks before objections were due and over four months after the hearing seeking preliminary approval? I respectfully submit that the answer to this question should be yes. This is particularly important where, as here, the Court has indicated that no live testimony will be received at the fairness hearing and the Court intends to rely on the evidence on record that has not been cross-examined or subjected to Daubert standards.

## THE SETTLEMENT DISCOVERY IS NARROWLY TAYLORED TO INQUIRE INTO THE FAIRNESS OF THE SETTLEMENT

Despite the concession that settlement discovery is permitted by law, the PSC and BP argue for the absolute denial of discovery. They both ask the Court to rely solely on their unsupported allegations to deny discovery. Both these parties have significant reasons to avoid any discovery that could upset the apple cart. BP faces unlimited liability far into the future, and the PSC the potential loss of $600,000,000. They allege that because they say the settlement is fair and based on evidence, that this is a fact. Serious allegations of misconduct have been made against these entities. The United States, Alabama and the Louisiana Attorney General have accused these parties of misleading the public. They specifically allege that BP, with the apparent cooperation of Class Counsel, has made grossly misleading statements and declarations to this Court and the public. The Louisiana Attorney General has specifically accused these parties of filing erroneous and misleading papers with this Court. It is further alleged by Louisiana that BP, with the assent of Class Counsel, is using duress to extract final releases from innocent victims. In light of these extremely serious allegations, it is no wonder that these

4

parties will do or say anything to avoid shedding light on their misbehavior. If true, the conduct would be sanctionable and there would be serious ethical violations, and a perception of impropriety with regard to the entire proceedings. In light of the fact that adequacy of representation is a crucial issue in this matter these allegations deserve investigation.

BP and Class Counsel both refuse to admit that any of the discovery requests have merit. The PSC proclaims the settlement discovery seeks the "kitchen sink," but fails to address the specifics of the requests. It fails to offer any explanation why they believe each of the 15 discovery requests are overbroad. The PSC response simply ignores the relevance of the information sought in discovery.

The 15 requests for discovery are specifically tailored to help this Court determine whether settlement is fair, reasonable and adequate. For example, as outlined in my September 9th, 2012 letter to Your Honor, objectors/plaintiffs seek discovery related to the following:

1. The rationale behind the Economic Loss Zones;
2. The basis for more onerous document requirements and less favorable formulas under the settlement as compared to the GCCF's document requirements and methodologies;
3. The threshold percentage amounts required to show causation under the various methodologies;
4. The total expected class size;
5. The total amount of losses of the putative class as a result of the Oil Spill;
6. The expert testimony or information underlying the Settlement's conclusion that economic recovery for injured class members began on December 31, 2010;
7. The time for Gulf related businesses and property owners to recover from the stigma associated with the Oil Spill for tourism or other purposes;
8. The significance of variable expenses for the hospitality industry ;
9. The total number of business type class members, such as hotels, fisherman, etc.;
10. The total number of businesses that will not be entitled to any form of compensation under the settlement;
11. The extent of stigma and other damages suffered by real property owners;
12. The scientific or other basis for interclass conflict between the following groups: wetland /property owners east and west of the Louisiana and Mississippi lines, sport fishers, crabbers and long liner fishers as compared to other classes within the seafood compensation program, etc.;
13. The typicality of class representatives claims to the claims of the class;
14. The content of the alleged massive discovery efforts which have yet to be publically released;
15. The extent to which BP, and not the PSC, had full and complete access to the entire range of economic, industry specific and geographic data it needed to precisely craft settlement terms that would minimize its liability while maximizing its cost savings.

The PSC and BP provide no explanation as why discovery as requested in my letter to counsel dated September 7th or any of the foregoing is overly broad. Instead, it relies upon the settlement agreements and material from Phase I Discovery as somehow providing a justification to prohibit discovery. The PSC's and BP's reliance is misplaced. The settlement agreements and the Phase I Discovery do not shed light on the above-listed discovery topics. Messrs. Roy and Herman utterly fail to identify exactly where this information may be found in the public record if it exists there. In truth, they cannot do so. The discovery sought by Plaintiffs/Objectors is not in the public record. It is in the private files of the PSC and BP. The PSC boasts about the "transparency" of the settlement and yet withholds their records related to the fairness of the settlement. Discovery should be allowed to verify the fairness of this settlement. If discovery is not had, a dark cloud of suspicion will forever loom over this settlement.

## THE FILING OF CLAIMS DOES NOT MAKE THE SETTLEMENT FAIR AND ADEQUATE

The PSC asserts that settlement discovery should be denied because Plaintiffs/Objectors have filed claims with the Deepwater Horizon Claims Center on behalf of some clients. The PSC argues, again without any legal support, that filing a claim with the DHCC demonstrates that a claimant is satisfied by the settlement. However, many clients filed claims with the DHCC due to the opt-out deadline. There is no way to know exactly what a claimant will be offered under the terms of the settlement without filing a claim. As the settlement administrator's most recent status report demonstrates, even the claims center is uncertain as to the claims process (See September 10 Update on DWH Settlement Program in which the claims administrator discussed the possibility of relaxing or altering some of the documentation requirements attached as Exhibit A). For many claimants, a change in documentation requirements could be the difference between whether a claim is denied or paid. They have filed in the hope that they will have a monetary offer to consider before the November 1 deadline to opt-out of the settlement. Further, some claimants have no intention of settling under the terms of the settlement, but must file with the DHCC to make presentment under the Oil Pollution Act.[5] And, some clients have filed with the new settlement center only to be frustrated with delays, additional document and informational requirements and no final offer of compensation. Most certainly, the PSC should not count these claimants as satisfied by the settlement by any means. Finally, some of my clients will be satisfied by the settlement and they have filed claims with the DHCC, while others will not be adequately compensated and they have not filed a claim with the DHCC. Just because some of the clients will be satisfied with the settlement compensation does not mean that these settlements are necessarily fair and adequate to the absent class members. In short, the filing of claims on behalf of some clients has absolutely no bearing on whether settlement discovery should be permitted.

---

[5] *See* Deepwater Horizon Economic and Property Damages Settlement Agreement As Amended on May 2, 2012, Section 7.3.2 [DOC 6430-1].

6

## THE INTERESTS OF MY CLIENTS IS MY MOTIVE FOR SETTLEMENT DISCOVERY

Rather than address the information sought in the settlement discovery, the PSC responds with personal criticism. Not only is this unprofessional, but it is untruthful and distracts from real and important issues. The PSC states that my assertion that I have not been actively involved in proceedings in the MDL is "disingenuous." While I did appear before this Court in the early months when the disaster was unfolding and while I did hire experts to gather significant scientific data that is likely to be used to the benefit of many, I am not a member of the PSC, I did not have cases pending before this Court until recently, and have not performed common benefit work at the direction of the PSC. After *George Barasich v. BP PLC, et al.* was voluntarily dismissed, and I was not appointed to the PSC, my law firm made the decision to focus on private claims of the individual and business clients who we represent. I have not been actively involved in the work of the PSC. Messrs. Roy and Herman know this is true.

Messrs. Roy and Herman claim that my request for discovery "is nothing more than publicity-seeking chest-beating by attorneys." Not only is this an absurd suggestion, unprofessional for officers of the court, and sheer vitriol, but it shows total disregard for a lawyer's duty to his client. As the PSC repeatedly acknowledges in their correspondence to Your Honor, my firm represents numerous clients with an interest in this settlement and my first obligation is to represent their interests. They want an explanation for, among other things, the zone determinations, the additional documentation requirements, the basis of the settlement's causational requirements, and the reasoning behind the loss calculations. They want an explanation as to why they should bind themselves to a settlement in which the claims administrator's most recent update reports that nearly half of the reviewed claims to date have been denied or issued incomplete notices, the document requirements are still uncertain and unresolved, and in which only 5,773 (of the approximately 56,633 claims submitted) have been reviewed with the Opt-Out deadline only a month and a half away. The discovery aims to provide that to my clients.

## SETTLEMNT DISCOVERY DOES NOT REQUIRE A SHOWING OF COLLUSION AND, EVEN IF IT WERE REQUIRED, THERE IS EVIDENCE OF COLLUSION

The PSC claims that preliminary evidence of collusion is required for settlement discovery. This is an inaccurate statement of the law. The showing of collusion is only required for discovery related to settlement negotiations. As the Manual for Complex Litigation explains:

> It is important to distinguish between objector's discovery into the merits of the claims and defenses in relationship to the fairness, reasonableness, and adequacy of the proposed settlement, and discovery into the settlement negotiations, which courts have refused to permit absent

7

evidence of collusion.[6]

Therefore, the requirement for a preliminary showing of collusion cannot be a basis to deny all settlement discovery.

In fact, most of the requested discovery does not seek discovery of settlement negotiations. For example, the number of class members and the number of businesses included in the class has nothing to do with settlement negotiations. Also, the basis for the geographic zones of the settlement, the scientific basis for interclass conflicts and the typicality of class representatives are all outside settlement negotiations. A careful review of the settlement discovery shows that it has largely nothing to do with settlement negotiations.

Additionally, if this Court requires a showing of collusion for discovery to be had, objections raised by certain claimants suggest that collusion likely occurred between BP and the PSC. For example, objections filed by Kip Plaisance of Plaisance's Tidewater Charters. This objection appears to present the following factual allegations: (1) Mr. Plaisance asserts that the Economic and Property Damages Settlement was negotiated and that he was "interviewed" as a potential class representative to the settlement after the settlement was negotiated; and (2) Mr. Plaisance's interview related to class representation was conducted in the presence of a "BP representative". Mr. Plaisance was also misled by class counsel as to the terms of the VOO settlement. (REC. DOC. 20 filed in 2:10 cv. 07777). The foregoing allegations, assuming they are true, tend towards proving that the negotiations for the Economic and Property Damages Settlement were not at arm's length, and not directed by the class representatives. Instead, these allegations point to a settlement driven by lawyer interests aided by collusion between BP and Class Counsel. According to Mr. Plaisance, he was "interviewed" by BP and class counsel before the settlement documents were drawn up. The settlement that he agreed to as a VOO class representative was later changed without his authority causing him to withdraw as a class representative on the VOO claims. Mr. Plaisance, however, remains the class representative for the medical benefits class. (REC. DOC. 7111-8) This fact raises significantly more questions about collusion regarding the medical benefits class. The Plaisance objection, when viewed in light of the declaration in support of the medical benefits class raises serious questions about the issues of who is directing the litigation and the adequacy of the class representatives. Mr. Plaisance's allegations call for the allowance of discovery in an effort to clear up this matter.

## CONCLUSION

Objectors respectfully ask that Your Honor allow the requested settlement discovery. A careful review of the PSC and BP's opposition to discovery shows an absence of any substantive reasons to deny discovery. They object entirely to the discovery, without any detailed discussion as to why they should not answer the specific inquiries about the settlement. Before bringing this request to Your Honor, the PSC ignored my request to confer about the discovery to determine whether it could be

---

[6] *See* Manual for Complex Litigation (4th) § 22.924.

conducted in an efficient and reasonable manner. This is a multi-billion dollar settlement of the largest environmental disaster to strike the United States of America. The PSC and BP tell my clients and this Court "trust us." However, the more than 130,000 claimants deserve a closer look into the settlement. Perhaps in the end the settlement will be deemed fair and adequate. Regardless of the final result, the businesses and citizens who will be impacted by the settlement should not be expected to settle in the dark. The world is watching.

Respectfully Yours,

Stuart H Smith

SHS/clc
Attachments (1)

c.c.    Plaintiffs' Liaison Counsel:
Stephen Herman Sherman@hhkc.com
James P. Roy jimr@wrightroy.com
Plaintiffs' Steering Committee:
Brian H. Barr bbarr@levinlaw.com
Jeffrey A. Breit jbreit@bdbmail.com
Elizabeth J. Cabraser ecabraser@lchb.com
Philip F. Cossich, Jr. pcossich@cossichlaw.com
Robert T. Cunningham rtc@cunninghambounds.com
Calvin C. Fayard, Jr. calvinfayard@fayardlaw.com
Robin L. Greenwald rgreenwald@weitzlux.com
Ervin A. Gonzalez Ervin@colson.com
Rhon E. Jones rhon.jones@beasleyallen.com
Matthew E. Lundy mlundy@lundylawllp.com
Michael C. Palmintier mpalmintier@dphf-law.com
Joseph D. Rice jrice@motleyrice.com
Paul M. Sterbcow sterbcow@lksalaw.com
Scott Summy ssummy@baronbudd.com
Mikal C. Watts mcwatts@wgclawfirm.com
Conrad S. P. "Duke" Williams duke@williamslawgroup.org
Defense Liaison Counsel
David J. Beck dbeck@brsfirm.com
Donald E. Godwin dgodwin@godwinronquillo.com
Don K. Haycraft dkhaycraft@liskow.com
Ky E. Kirby ky.kirby@bingham.com
Deborah D. Kuchler dkuchler@kuchlerpolk.com
J. Andrew Langan andrew.langan@kirkland.com
Michael J. Lyle michael.lyle@weil.com

Kerry J. Miller kmiller@frilot.com
Phillip A. Wittman pwittmann@stonepigman.com
Richard C. Godfrey, P.C. richard.godfrey@kirkland.com
Michael O'Keefe mike_okeefe@laed.uscourts.gov

# Cate Cummins

| | |
|---|---|
| **From:** | noreply@one.dhecc.com |
| **Sent:** | Monday, September 10, 2012 2:12 PM |
| **To:** | Cate Cummins |
| **Subject:** | Update on DWH Settlement Program |
| **Importance:** | High |

The DWH Economic Settlement Program is well underway in its review of claims submitted to date. In a report filed last week with the Court, the Claims Administrator announced that the Program had completed reviews and had issued 3,398 Notices of Eligibility, 831 Incompleteness Notices, and 1,544 Denial Notices. The volume of claims being reviewed increases every day, as more and more reviewers are trained to evaluate and decide the claims under the Settlement Agreement. To see a copy of the Court report, go to www.deepwaterhorizoneconomicsettlement.com, click on the Reporting tab, and then click on the report labeled "Claims Administrator's Status Report No. 1 (September 5, 2012)."

As we review claims, we are finding that many of them are missing documents that the Settlement Agreement requires. In an effort to make more claims eligible for payment, we explored with BP and Class Counsel relaxing some of the requirements. As a result of that effort, we were able to relax some of the requirements; however, for the rest, we will have to abide by and implement the negotiated terms of the Settlement Agreement, as written. For these, we will be issuing Incompleteness Notices to ask for the required information.

The Program is committed to assisting claimants and law firms through this process. The Incompleteness Notice will contain helpful tips on how you may be able to obtain a missing document. We are also working with each of the Gulf states to see whether they have licensing or other databases that we could access to obtain copies of certain missing documents for claimants. Our law firm contacts and Claimant Assistance Centers are available to answer questions and to help. Although we will continue our efforts, it will usually be faster for you to obtain and send in the documents because you will either already have them in your possession, or may be able to get them from a public source more readily than we can.

You may find the list of all required documents in the Instruction Booklets, which are available online. To find these Instruction Booklets, go to www.deepwaterhorizoneconomicsettlement.com. Click on the Claim Form tab, find the type of claim you wish to file, and then click on the link called "Instructions" for that claim type. The following documents are those that are missing most often, based on the reviews we have completed so far:

1. **Seafood Compensation Program:** Documents or the SWS-1 that allocate revenues by vessel, landing location and catch type.

2. **Business Economic Loss Claims:**
   (a) Business licenses;
   (b) Annual profit and loss statements;
   (c) Full monthly profit and loss statements with revenue and expenses; and
   (d) 2011 Federal Tax Returns.

3. **Coastal Real Property:**
   (a) 2010 Tax Assessment;
   (b) Copy of the Deed for the Parcel; and
   (c) Clerk of Court report OR Registrar of Lands report OR Professional Land Survey.



1

4. **Real Property Sales:**
   (a) Copy of a signed Purchase Contract before April 21, 2010;
   (b) Copy of a signed Purchase Contract after April 21, 2010, lowering the sales price;
   (c) Proof of ownership on April 21, 2010; and
   (d) Proof of ownership at the time of the sale.

5. **VoO Charter Payment:**
   (a) Proof that the claimant signed an MCVA;
   (b) Proof of Working Status; and
   (c) Proof of completion of initial VoO Training.

6. **Vessel Physical Damage:**
   (a) Vessel title and registration; and
   (b) Proof of costs incurred to repair or replace the vessel.

This list is not exhaustive, but it provides a sampling of the commonly missing documents. You may want to review the claim or claims you have already submitted to make sure that you have provided these documents and any others required by the Settlement Agreement and explained in the Instruction Booklets.

At any time during this process, please let us know if you have any questions. Thank you.

This communication (including any attachments) is intended for the use of the intended recipient(s) only and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.