```
 1                     UNITED STATES DISTRICT COURT

 2                     EASTERN DISTRICT OF LOUISIANA

 3
        *****************************************************************

 4
      IN RE:  OIL SPILL BY THE
 5    OIL RIG DEEPWATER HORIZON
      IN THE GULF OF MEXICO ON
 6    APRIL 20, 2010

 7                              CIVIL ACTION NO. 10-MD-2179 "J"
                                NEW ORLEANS, LOUISIANA
 8                              FRIDAY, SEPTEMBER 14, 2012, 9:00 A.M.

 9
      THIS DOCUMENT RELATES TO
10    ALL CASES

11      *****************************************************************

12
                   TRANSCRIPT OF MOTIONS PROCEEDINGS
13          HEARD BEFORE THE HONORABLE CARL J. BARBIER
                   UNITED STATES DISTRICT JUDGE
14


15
      APPEARANCES:
16


17
      FOR THE PLAINTIFFS'
18    LIAISON COUNSEL:        DOMENGEAUX WRIGHT ROY & EDWARDS
                              BY:  JAMES P. ROY, ESQUIRE
19                            P. O. BOX 3668
                              556 JEFFERSON STREET
20                            LAFAYETTE, LA  70502

21
                              HERMAN HERMAN & KATZ
22                            BY:  STEPHEN J. HERMAN, ESQUIRE
                              820 O'KEEFE AVENUE
23                            NEW ORLEANS, LA  70113

24

25
```

1    APPEARANCES CONTINUED:

2

3    FOR THE PLAINTIFFS:     BREIT DRESCHER IMPREVENTO & WALKER
                             BY:  JEFFREY A. BREIT, ESQUIRE
4                            1000 DOMINION TOWER
                             999 WATERSIDE DRIVE
5                            NORFOLK, VA  23510

6

7                            LEVIN PAPANTONIO THOMAS MITCHELL
                             RAFFERTY & PROCTOR
8                            BY:  BRIAN H. BARR, ESQUIRE
                             316 SOUTH BAYLEN STREET, SUITE 600
9                            PENSACOLA, FL  32502

10

11                           CUNNINGHAM BOUNDS
                             BY:  ROBERT T. CUNNINGHAM, ESQUIRE
12                           1601 DAUPHIN STREET
                             MOBILE, AL  36604
13

14

15                           LIEFF CABRASER HEIMANN & BERNSTEIN
                             BY:  ELIZABETH J. CABRASER, ESQUIRE
16                           275 BATTERY STREET, 29TH FLOOR
                             SAN FRANCISCO, CA  94111

17

18                           WATTS GUERRA CRAFT
                             BY:  MIKAL C. WATTS, ESQUIRE
19                                TONY PLETCHER, ESQUIRE
                             4 DOMINION DRIVE
20                           BUILDING 3, SUITE 100
                             SAN ANTONIO, TX  78257
21

22

23                           WEITZ & LUXENBERG
                             BY:  ROBIN L. GREENWALD, ESQUIRE
                             700 BROADWAY
24                           NEW YORK CITY, NY  10003

25

1    APPEARANCES CONTINUED:

2

3                              MORGAN & MORGAN
                             BY:  ALPHONSO M. ESPY, ESQUIRE
4                                 FRANK M. PETOSA, ESQUIRE
                             188 EAST CAPITOL STREET, SUITE 777
5                            JACKSON, MS  39201

6

7                              MARTÍNEZ, GONZALES, KALBAC & KANE
                             BY:  ERVIN A. GONZALEZ, ESQUIRE
8                            255 ALHAMBRA CIRCLE, PENTHOUSE
                             CORAL GABLES, FL  33134
9

10
                             COSSICH SUMICH PARSIOLA & TAYLOR
11                           BY:  PHILIP F. COSSICH, JR., ESQUIRE
                             8397 HIGHWAY 23, SUITE 100
12                           BELLE CHASSE, LA  70037

13

14                             DEGRAVELLES PALMINTIER HOLTHAUS & FRUGE
                             BY:  MICHAEL C. PALMINTIER, ESQUIRE
15                           618 MAIN STREET
                             BATON ROUGE, LA  70801
16

17
                             BEASLEY ALLEN CROW METHVIN
18                           PORTIS & MILES
                             BY:  RHON E. JONES, ESQUIRE
19                           POST OFFICE BOX 4160
                             MONTGOMERY, AL  36013
20

21
                             FAYARD & HONEYCUTT
22                           BY:  CALVIN C. FAYARD, JR., ESQUIRE
                             519 FLORIDA AVENUE SW
23                           DENHAM SPRINGS, LA 70726

24

25

```
 1   APPEARANCES CONTINUED:

 2

 3                        LEGER & SHAW
                         BY:  WALTER J. LEGER, JR., ESQUIRE
 4                       600 CARONDELET STREET, 9TH FLOOR
                         NEW ORLEANS, LA  7013
 5

 6
                         BARRIOS KINGSDORF & CASTEIX
 7                       BY:  DAWN M. BARRIOS, ESQUIRE
                         701 POYDRAS STREET, SUITE 3650
 8                       NEW ORLEANS LA 70139

 9

10                       MORRIS BART
                         BY:  MORRIS BART, ESQUIRE
11                            MEKEL S. ALVAREZ, ESQUIRE
                         909 POYDRAS STREET, SUITE 2000
12                       NEW ORLEANS, LA  70112

13

14                       MOTLEY RICE
                         BY:  JOSEPH D. RICE, ESQUIRE
15                       28 BRIDGESIDE BLVD.
                         MOUNT PLEASANT, SC 29464
16

17
                         LAW OFFICES OF DANIEL E. BECNEL, JR.
18                       BY:  DANIEL E. BECNEL, JR., ESQUIRE
                         106 W. SEVENTH STREET
19                       P. O. DRAWER H
                         RESERVE, LA 70084
20

21
     FOR STATE INTERESTS:  ALABAMA ATTORNEY GENERAL'S OFFICE
22                       BY:  COREY L. MAZE, ESQUIRE
                              WINFIELD J. SINCLAIR, ESQUIRE
23                       500 DEXTER AVENUE
                         MONTGOMERY, AL  36130
24

25
```

```
1   APPEARANCES CONTINUED:

2

3   FOR THE STATE OF
    LOUISIANA:              STATE OF LOUISIANA
4                           BY:  JAMES D.  CALDWELL, ATTORNEY GENERAL
                            POST OFFICE BOX 94005
5                           BATON ROUGE, LA  70804

6

7                           KANNER & WHITELEY
                            BY:  ALLAN KANNER, ESQUIRE
8                                DOUGLAS R. KRAUS, ESQUIRE
                            701 CAMP STREET
9                           NEW ORLEANS, LA  70130

10

11  FOR THE FEDERAL
    GOVERNMENT INTERESTS: U.S. DEPARTMENT OF JUSTICE
12                        TORTS BRANCH, CIVIL DIVISION
                          BY:  R. MICHAEL UNDERHILL, ESQUIRE
13                        450 GOLDEN GATE AVENUE
                          7TH FLOOR, ROOM 5395
14                        SAN FRANCISCO, CA  94102

15

16  FOR TRANSOCEAN HOLDINGS
    LLC, TRANSOCEAN
17  OFFSHORE DEEPWATER
    DRILLING INC., AND
18  TRANSOCEAN DEEPWATER
    INC.:                  FRILOT
19                         BY:  KERRY J. MILLER, ESQUIRE
                           ENERGY CENTRE, 36TH FLOOR
20                         1100 POYDRAS STREET
                           NEW ORLEANS, LA  70163
21

22                         SUTHERLAND ASBILL & BRENNAN
23                         BY:  STEVEN L. ROBERTS, ESQUIRE
                           1001 FANNIN STREET, SUITE 3700
24                         HOUSTON, TX  77002

25
```

```
 1    APPEARANCES CONTINUED:

 2

 3                            MUNGER TOLLES & OLSON
                             BY:  LUIS LI, ESQUIRE
 4                               MICHAEL R. DOYEN, ESQUIRE
                             355 SOUTH GRAND AVENUE, 35TH FLOOR
 5                           LOS ANGELES, CA  90071

 6

 7    FOR BP AMERICA INC.,
      BP AMERICA PRODUCTION
 8    COMPANY, BP COMPANY
      NORTH AMERICA INC.,
 9    BP CORPORATION NORTH
      AMERICA INC.,
10    BP EXPLORATION &
      PRODUCTION INC.,
11    BP HOLDINGS NORTH
      AMERICA LIMITED,
12    BP PRODUCTS NORTH
      AMERICA INC.:          LISKOW & LEWIS
13                           BY:  DON K. HAYCRAFT, ESQUIRE
                             ONE SHELL SQUARE
14                           701 POYDRAS STREET
                             SUITE 5000
15                           NEW ORLEANS, LA  70139

16

17                           KIRKLAND & ELLIS
                             BY:  J. ANDREW LANGAN, ESQUIRE
18                               RYAN S. BABIUCH, ESQUIRE
                             300 N. LASALLE
19                           CHICAGO, IL  60654

20

21                           KIRKLAND & ELLIS
                             BY:  ROBERT R. GASAWAY, ESQUIRE
22                               CHRISTOPHER LANDAU, ESQUIRE
                             655 FIFTEENTH STREET, N.W.
23                           WASHINGTON, DC  20005

24

25
```

```
 1    APPEARANCES CONTINUED:

 2

 3                              COVINGTON & BURLING
                               BY:  ROBERT C. "MIKE" BROCK, ESQUIRE
 4                              1201 PENNSYLVANIA AVENUE, NW
                               WASHINGTON, DC  20004
 5

 6
      FOR CAMERON INTERNATIONAL
 7    CORPORATION:              STONE PIGMAN WALTHER WITTMANN
                               BY:  CARMELITE M. BERTAUT, ESQUIRE
 8                              546 CARONDELET STREET
                               NEW ORLEANS, LA 70130
 9

10                              BECK REDDEN & SECREST
11                              BY:  KATHLEEN GALLAGHER, ESQUIRE
                               ONE HOUSTON CENTER
12                              1221 MCKINNEY STREET, SUITE 4500
                               HOUSTON, TX  77010
13

14
      FOR HALLIBURTON
15    ENERGY SERVICES,
      INC.:                     GODWIN RONQUILLO
16                              BY:  DONALD E. GODWIN, ESQUIRE
                                    JENNY L. MARTINEZ, ESQUIRE
17                                  BRUCE W. BOWMAN, JR., ESQUIRE
                               1201 ELM STREET, SUITE 1700
18                              DALLAS, TX  75270

19

20                              GODWIN RONQUILLO
                               BY:  R. ALAN YORK, ESQUIRE
21                              1331 LAMAR, SUITE 1665
                               HOUSTON, TX  77010
22

23

24

25
```

```
 1    APPEARANCES CONTINUED:

 2


 3    FOR ANADARKO
      PETROLEUM CORPORATION,
 4    ANADARKO E&P COMPANY
      LP:                     WEINER & RICHESON
 5                            BY:  ROBERT E. GUIDRY, ESQUIRE
                              1615 POYDRAS STREET, SUITE 1300
 6                            NEW ORLEANS, LA  70112

 7

 8                            BINGHAM MCCUTCHEN
                              BY:  KY E. KIRBY, ESQUIRE
 9                                 WARREN A. FITCH, ESQUIRE
                              2020 K STREET, NW
10                            WASHINGTON, DC  20006

11

12    FOR M-I L.L.C.:         MORGAN, LEWIS & BOCKIUS
                              BY:  DENISE SCOFIELD, ESQUIRE
13                            1000 LOUISIANA STREET, SUITE 4000
                              HOUSTON, TX  77002
14

15
      FOR TRANSOCEAN
16    EXCESS UNDERWRITERS:    PHELPS DUNBAR
                              BY:  EVANS M. MCLEOD, ESQUIRE
17                            CANAL PLACE
                              365 CANAL STREET, SUITE 2000
18                            NEW ORLEANS, LA  70130

19

20                            PHELPS DUNBAR
                              BY:  KYLE S. MORAN, ESQUIRE
21                            NORTHCOURT ONE
                              2304 19TH STREET, SUITE 300
22                            GULFPORT, MS  39501

23

24

25
```

09:53AM

```
 1    APPEARANCES CONTINUED:

 2

 3    FOR O'BRIEN'S RESPONSE
      MANAGEMENT, INC.,
 4    SEACOR HOLDINGS, INC.,
      SEACOR OFFSHORE LLC,
 5    SEACOR MARINE, LLC,
      SEACOR WORLDWIDE, INC.,
 6    SEACOR MARINE, INC.,
      SEACOR MARINE
 7    INTERNATIONAL, INC.,
      AND SIEMENS FINANCIAL,
 8    INC.:                    WEIL GOTSHAL & MANGES
                               BY:  MICHAEL J. LYLE, ESQUIRE
 9                             1300 I ST., NW, SUITE 900
                               WASHINGTON, DC  20005
10

11
                               WEIL GOTSHAL & MANGES
12                             BY:  THEODORE E. TSEKERIDES, ESQUIRE
                               767 FIFTH AVENUE
13                             NEW YORK, NY  10153

14

15    FOR TOBATEX AND
      MRM ENERGY:              BLEAU FOX
16                             BY:  THOMAS P. BLEAU, ESQUIRE
                               3575 CAHUENGA BOULEVARD, WEST SUITE 580
17                             LOS ANGELES, CA  90068

18

19    ALSO PRESENT:            [PLEASE SEE SIGN-IN SHEETS FILED IN THE
                               RECORD]
20

21

22    OFFICIAL COURT REPORTER:   CATHY PEPPER, CRR, RMR, CCR
                                 500 POYDRAS STREET, ROOM HB406
23                               NEW ORLEANS, LA  70130
                                 (504) 589-7779
24                               Cathy_Pepper@laed.uscourts.gov

25    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
      PRODUCED BY COMPUTER.
```

1                                    **I N D E X**

2

3        AGENDA ITEMS                                              PAGE

4

5        PURE STIGMA CLAIMS...................................   12

6        BP DEALER CLAIMS....................................   40

7        RECREATION CLAIMANTS................................   62

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                      **P-R-O-C-E-E-D-I-N-G-S**

3                   FRIDAY, SEPTEMBER 14, 2012

4                  M O R N I N G   S E S S I O N

5                     (COURT CALLED TO ORDER)

6

09:01AM    7

09:25AM    8          MR. LANDAU:  Good morning, Your Honor.

09:25AM    9          THE COURT:  Good morning.  We have, it looks like,

09:25AM   10   three sets of motions.  We have one dealing with the so-called

09:25AM   11   pure stigma claims -- this is the way we've designated these --

09:25AM   12   pure stigma claims, which the Court has described in its order

09:25AM   13   to set these matters for briefing and argument, the Court has

09:25AM   14   described pure stigma claims as being claims by or on behalf of

09:26AM   15   owners, lessors and lessees of real property that they have

09:26AM   16   suffered damages as a result from the taint of their property

09:26AM   17   caused by the oil spill, although no oil or other contaminant

09:26AM   18   physically touched the property.  Those are the so-called pure

09:26AM   19   stigma claims.

09:26AM   20          Then we have another category, which we've

09:26AM   21   designated or described as the BP dealer claims.  Those are

09:26AM   22   described in the Court's order as claims by or on behalf of

09:26AM   23   entities marketing BP-branded fuels that they have suffered

09:26AM   24   damages, including loss of business, income and profits, as a

09:26AM   25   result of the loss of value to the BP brand or name.

09:26AM 1          It's important to note there, because I believe

09:26AM 2   the initial opposition brief that I saw in conjunction with

09:26AM 3   that motion apparently misread BP's motion as asking the Court

09:26AM 4   to dismiss all claims by any BP dealer, and that is not what

09:27AM 5   the motion is directed to.  The motion only -- or the issue is

09:27AM 6   only dealing with the so-called diminution of brand, of brand

09:27AM 7   value.

09:27AM 8          Lastly, the last motions deal with the so-called

09:27AM 9   recreation claims, which the Court has described as claims by

09:27AM 10  or on behalf of recreational fisherman, recreational divers,

09:27AM 11  beach-goers, recreational boaters, etcetera, who allege that

09:27AM 12  they have suffered damages, including a loss of enjoyment of

09:27AM 13  life, from the inability to use portions of the Gulf of Mexico

09:27AM 14  for recreation and amusement purposes.

09:27AM 15         So, having said that, I would like to start, I

09:27AM 16  think, with the pure stigma claims.  You're going to argue all

09:27AM 17  three sets of these, Mr. Landau?

09:27AM 18         MR. LANDAU:  Yes, Your Honor.

09:27AM 19         THE COURT:  Go ahead and identify yourself for the

09:28AM 20  record.

09:28AM 21         MR. LANDAU:  Sure thing.

09:28AM 22         May it please the Court.  I'm Chris Landau, from

09:28AM 23  Kirkland & Ellis in Washington, DC.  I'm here this morning to

09:28AM 24  argue all three motions on behalf of BP.

09:28AM 25         With respect to the stigma claim, I would like to

09:28AM 1    reserve five minutes for rebuttal, if I could.

09:28AM 2            THE COURT:  Okay.

09:28AM 3            MR. LANDAU:  Before getting into the merits of the pure

09:28AM 4    stigma claims or the other claims, I just wanted to step back

09:28AM 5    for a second and address the reasoning behind these three

09:28AM 6    motions to dismiss.

09:28AM 7            As this Court is well aware, there is a proposed

09:28AM 8    settlement that covers many of the claims for private economic

09:28AM 9    loss and property damages arising out of the oil spill.

09:28AM 10           While that settlement is still being finalized,

09:28AM 11   and in the interest of streamlining the sprawling MDL

09:28AM 12   proceedings, BP proposed proceeding with motions to dismiss

09:28AM 13   certain claims that are, number one, outside the scope of the

09:28AM 14   settlement; and, number two, that we believe don't present any

09:29AM 15   substantial risk of interfering with the settlement.

09:29AM 16           This Court accepted that proposal, and that's why

09:29AM 17   we're here briefing these three motions.

09:29AM 18           But analyzing these motions, I think it's

09:29AM 19   important for everyone to bear in mind the underlying premise

09:29AM 20   of our request to bring these motions, which is that they can

09:29AM 21   resolved, we believe, without requiring this Court to really

09:29AM 22   get into some of the thorny legal questions that are critical

09:29AM 23   to the settlement itself.

09:29AM 24           So, again, our underlying belief here is that

09:29AM 25   these are motions that don't require the Court to do a lot of

09:29AM 1    the heavy lifting that may be required in other elements or

09:29AM 2    other parts of the case.

09:29AM 3            Again, we brought them to use this time while the

09:29AM 4    settlement is, you know, still undergoing all the procedures it

09:29AM 5    needs to undergo, in order to allow this Court to streamline

09:29AM 6    these proceedings, hopefully without doing a lot of

09:29AM 7    particularly heavy lifting.

09:29AM 8            So, certainly, if we're wrong on the fact that we

09:30AM 9    believe these don't really require the Court to decide any kind

09:30AM 10   of watershed issues under OPA or any other statute, the most

09:30AM 11   prudent course of action is probably just to table the motion

09:30AM 12   so they don't wind up certainly moving things backwards by

09:30AM 13   complicating the settlement.

09:30AM 14           That's not our intent.  Our intent, again, is to

09:30AM 15   try to assist in the prompt resolution of what's obviously a

09:30AM 16   very challenging and complicated set of cases in general.

09:30AM 17           THE COURT:  Let me ask you, Mr. Landau --

09:30AM 18           MR. LANDAU:  Sure.

09:30AM 19           THE COURT:  -- just, if you would, confirm what I said

09:30AM 20   is accurate.  I said that BP is not attempting by these motions

09:30AM 21   in any way to dismiss all claims by -- and I know I'm jumping

09:30AM 22   from one category to the next -- but by BP dealers?

09:30AM 23           MR. LANDAU:  You're absolutely correct, Your Honor.  I

09:30AM 24   think our response, really, with respect to all the motions is

09:30AM 25   largely definitional and largely goes back to your June 12th

09:30AM 1    order which set forth the briefing schedule.

09:31AM 2              I understand that the plaintiffs want to be very

09:31AM 3    careful not to have more dismissed than is called for in the

09:31AM 4    motions; but, I think, frankly, we targeted these motions

09:31AM 5    pretty discretely and narrowly as certain categories of claims,

09:31AM 6    again, that we thought wouldn't require a lot of heavy lifting

09:31AM 7    by this Court.

09:31AM 8         THE COURT:  So if there is a BP dealer, a BP station

09:31AM 9    and convenience store on the Gulf Coast of Mississippi, say,

09:31AM 10   right across the street from a Shell dealer, a similar station

09:31AM 11   and convenience store, I guess, whatever their claims are, BP

09:31AM 12   would not distinguish between those two in terms of their

09:31AM 13   economic claims under OPA as a result of the oil spill?

09:31AM 14        MR. LANDAU:  This motion, Your Honor, is not directed

09:31AM 15   at claims that arise out of a reduction of business as a result

09:31AM 16   of the decline in tourism to the Gulf.  The motion on the BP

09:32AM 17   dealer claims is directed at the so-called consumer animosity

09:32AM 18   claims that would be common to BP dealers, whether they are

09:32AM 19   located right on the Gulf Coast or whether they are located in

09:32AM 20   Topeka, Kansas.

09:32AM 21             So it's a very distinct subset of the whole range

09:32AM 22   of potential claims that a BP dealer might bring.  We still

09:32AM 23   have our issues with the kind of claim that Your Honor

09:32AM 24   described, but they are just not within the scope of this

09:32AM 25   particular motion.

09:32AM 1          This is a -- the BP dealer motion is quite

09:32AM 2    narrow, and that's true for the stigma claim, the pure stigma

09:32AM 3    claims as well.

09:32AM 4          THE COURT:  Well, when you say you still have the

09:32AM 5    issues with the other types of claims, what I'm trying to

09:32AM 6    understand, it may not be directly relevant to the motions here

09:32AM 7    today, but are you -- is BP taking the position that somehow,

09:32AM 8    putting aside the brand damage alleged -- the alleged brand

09:33AM 9    damage claims, is BP attempting in this litigation to

09:33AM 10   distinguish in any way between a BP station and a Shell or

09:33AM 11   Chevron or Exxon station?

09:33AM 12         MR. LANDAU:  We may be, Your Honor.  I'm not authorized

09:33AM 13   or prepared here today to give you a definitive answer on that.

09:33AM 14   There may be unique contractual defenses that we have vis-à-vis

09:33AM 15   the dealers.

09:33AM 16          For instance, I mean, I would think in a --

09:33AM 17   again, there just may be a different set of issues --

09:33AM 18         THE COURT:  But that's not alleged or part of these

09:33AM 19   motions?

09:33AM 20         MR. LANDAU:  Exactly, Your Honor.

09:33AM 21         THE COURT:  All right.  Go ahead.

09:33AM 22         MR. LANDAU:  Just one other preliminary note, if I

09:33AM 23   might.  As a result of this Court's ruling last fall on the

09:33AM 24   amended B1 master complaint, the Court established what we took

09:33AM 25   to be two legal baselines that we accepted as settled for

09:33AM 1   purposes of briefing these motions or bringing them in the

09:33AM 2   first place.

09:33AM 3              First, that any claims arising under state law in

09:33AM 4   this area are preempted by General Maritime Law; and, second,

09:34AM 5   that any claims arising under General Maritime Law are

09:34AM 6   foreclosed under the *Robins Dry Dock* rule unless the plaintiff

09:34AM 7   shows physical injury to property.

09:34AM 8              So, the upshot of those two rulings, for today's

09:34AM 9   purposes, is that the question on which we're focused is

09:34AM 10  whether plaintiffs can state a claim under OPA for these

09:34AM 11  rulings.

09:34AM 12             So some of the motions to dismiss -- not the

09:34AM 13  PSC's motion, but some of the responses in opposition to the

09:34AM 14  Motion to Dismiss tried to get into some other issues that we

09:34AM 15  regarded, for purposes of bringing this motion, as settled by

09:34AM 16  this Court's previous ruling.

09:34AM 17             So I just wanted to get that out there, that,

09:34AM 18  really, what we're focused on doing in these motions is

09:34AM 19  building upon the foundation that this Court laid in its order

09:34AM 20  last August saying, well, these claims -- this Court's already

09:34AM 21  decided you can't bring them under state law, you can't bring

09:34AM 22  them under General Maritime Law unless you can satisfy

09:35AM 23  *Robins Dry Dock*.  Now, this is kind of the third leg of the

09:35AM 24  stool to say, you can't bring them under OPA either.

09:35AM 25             So, with that said, the question then comes to

09:35AM 1    the pure stigma claims, can these claimants state a claim under

09:35AM 2    OPA.

09:35AM 3             Again, I think, kind of alluding to what

09:35AM 4    Your Honor and I were discussing just a moment ago, there is a

09:35AM 5    threshold definitional order -- or issue.

09:35AM 6             The pure stigma claims, as we define them for

09:35AM 7    purposes of this motion, are not claims involving any actual

09:35AM 8    realized economic loss.  These are claims where someone just

09:35AM 9    says, I had an unrealized loss in value of my property.  Didn't

09:35AM 10   sell the property.  But, you know, let's just say there was a

09:35AM 11   fluctuation in the value of the property as a result of the oil

09:35AM 12   spill; whether it's alleged to be permanent or temporary, the

09:35AM 13   key point is that the injury here is not a real economic loss

09:35AM 14   that the plaintiff actually has in his or her pocket.

09:36AM 15        THE COURT:  What if the allegation is that the property

09:36AM 16   value has been so diminished that I can't sell it?

09:36AM 17        MR. LANDAU:  Again, Your Honor, that is not -- that is

09:36AM 18   just a stigma claim that doesn't fit within the scope of OPA.

09:36AM 19             So I think -- again, I think the key, Your Honor,

09:36AM 20   is actually just to look at the language of OPA.

09:36AM 21             The plaintiffs are invoking two different

09:36AM 22   subsections, subsection 2702(b)(2)(B) and (b)(2)(E).  I think

09:36AM 23   this is kind of a critical overall point with respect to all of

09:36AM 24   these motions, Your Honor, that OPA doesn't purport to allow

09:36AM 25   recovery for any and all economic losses that someone might

09:36AM 1   allege.

09:36AM 2           OPA is a statute that establishes strict

09:36AM 3   liability, but it's limited liability.  It reflects an overall

09:36AM 4   Congressional compromise or bargain.

09:36AM 5           So it didn't take liability to the outer limits.

09:36AM 6   It's strict, but it's limited.  That's a critical point.

09:37AM 7           In fact, the structure of OPA really confirms

09:37AM 8   that.  If you look at the statute, it's got two parts.  It's

09:37AM 9   got subsection (a), which says, you know, a responsible party

09:37AM 10  is strictly liable for removal costs and damages specified in

09:37AM 11  subsection (b) that results from such incident.  So it's not

09:37AM 12  all damages; it's those that are specified in subsection (b).

09:37AM 13          Then we turn to subsection (b), and we see there

09:37AM 14  are six specific categories of damages.  Of those six

09:37AM 15  categories, there are three that are recoverable by private

09:37AM 16  parties.

09:37AM 17          Really, two of them are at issue in this pure

09:37AM 18  stigma motion.  One is real or personal property.  The other is

09:37AM 19  profits and earning capacity.  The stigma claimants allege that

09:37AM 20  both are in play here.

09:37AM 21          So the question, then, is with respect to (B),

09:37AM 22  which is talking real or personal property, says, "damages for

09:37AM 23  injury to, comma, or economic losses resulting from the

09:37AM 24  destruction of, comma, real or personal property, which shall

09:38AM 25  be recoverable by a claimant who owns or leases that property."

09:38AM 1          So the question is, how does someone who says

09:38AM 2     they have unrealized property -- loss of property value fit

09:38AM 3     within either of those categories.

09:38AM 4          I think the first question is -- or the first

09:38AM 5     point is to notice that the statute distinguishes on the one

09:38AM 6     hand between injury and economic losses.

09:38AM 7          The crux of the argument of the plaintiffs, as I

09:38AM 8     understand it, is that "injury to" should be read as economic

09:38AM 9     losses; but, as Judge Livaudais pointed out in the *Sekco* case,

09:38AM 10    when you look at these two things in juxtaposition, the statute

09:38AM 11    uses the word "economic losses."  It contrasts it with

09:38AM 12    "injury."

09:38AM 13         So, in this particular context, you can't

09:38AM 14    reasonably read injury to mean economic losses.  So we don't

09:38AM 15    have to kind of discuss as a metaphysical matter whether

09:38AM 16    economic losses may qualify as injury in the abstract because

09:38AM 17    we're talking about a specific statutory provision that

09:38AM 18    contrasts injury with economic losses.

09:39AM 19         So even if you assume that an unrealized loss of

09:39AM 20    property value could qualify as an economic loss in the first

09:39AM 21    place, which is a somewhat dubious proposition, this provision

09:39AM 22    authorizes only economic losses resulting from the destruction

09:39AM 23    of real or personal property.  An unrealized loss in value

09:39AM 24    clearly is not that.

09:39AM 25         Again, looking at the --

09:39AM 1          THE COURT:  So if they sold the property after the oil

09:39AM 2     spill and were able to prove that they sold it at a greatly

09:39AM 3     reduced price than what it was worth before the oil spill, they

09:39AM 4     might have a claim?

09:39AM 5          MR. LANDAU:  Well, I don't think they would have a

09:39AM 6     claim under this provision, Your Honor.  I think they might

09:39AM 7     have a claim under subsection (b)(2)(E), which is profits and

09:39AM 8     earning capacity.

09:39AM 9               Again, I think it's useful structurally to just

09:39AM 10    look at the way the statute is set up.  It's set up that real

09:39AM 11    or personal property is subsection (b)(2)(B), and then profits

09:40AM 12    and earning capacity is (b)(2)(E).

09:40AM 13              I think this kind of a claim that's really about

09:40AM 14    the loss of money is much more naturally read as an (E) claim,

09:40AM 15    not a subsection (B) claim.

09:40AM 16              Again, Judge, just to clarify, the best use, and

09:40AM 17    I think the use that's most consistent with the Fifth Circuit's

09:40AM 18    precedent in *TAIRA LYNN*, and certainly Judge Livaudais's

09:40AM 19    decision in *Sekco*, is the injury in (B), injury to property

09:40AM 20    means physical injury to property.

09:40AM 21              So I think the more -- frankly, the stronger

09:40AM 22    argument for them on this one -- and we don't think it's

09:40AM 23    successful even if it's somewhat stronger than the (B)

09:40AM 24    argument -- is the E argument, because (E) really is called

09:40AM 25    profits and earning capacity.  That one authorizes damages

09:40AM 1    equal to the loss of profits or impairment of earning capacity

09:40AM 2    due to the injury, destruction or loss of real property,

09:40AM 3    personal property or natural resources, which shall be

09:40AM 4    recovered by any claimant.

09:40AM 5         The question is can you fit in loss of profits

09:40AM 6    there.  Where you haven't sold a particular house, I don't see

09:41AM 7    how you can possibly say you have lost any profits.

09:41AM 8         THE COURT:  So, again, your motion doesn't target -- in

09:41AM 9    this motion, at least, it doesn't target the folks who have

09:41AM 10   sold and allege that they have lost money as a result of the

09:41AM 11   destruction of the water or beaches or something in the

09:41AM 12   vicinity?

09:41AM 13        MR. LANDAU:  That's correct, Your Honor.

09:41AM 14        I should note parenthetically here that the

09:41AM 15   settlement does include a provision that across the board would

09:41AM 16   grant a 12.5 percent of sale price benefit to those who sold

09:41AM 17   property within a particular defined area, within a particular

09:41AM 18   defined period of time.

09:41AM 19        The fact that it's within the settlement doesn't

09:41AM 20   necessarily mean that it's within the scope of OPA, obviously.

09:41AM 21   That's a different issue.  But, certainly, I wanted to point

09:41AM 22   that out, that there is a provision in the settlement that

09:42AM 23   would cover that.

09:42AM 24        We're talking here about folks that did not sell

09:42AM 25   their property.  It's almost -- it's hard to see how this could

09:42AM 1   be workable because, frankly, the value of property goes up and

09:42AM 2   down all the time for a million reasons, some of which may have

09:42AM 3   to do with a particular event, some of which may not.

09:42AM 4          I mean, I think anyone who has been around for

09:42AM 5   the last decade knows that housing prices have fluctuated

09:42AM 6   wildly in this time, and it would set the Court on an

09:42AM 7   unsustainable course if it were trying to get into unrealized

09:42AM 8   property value loss.

09:42AM 9          Again, I think, more fundamentally, that's not

09:42AM 10  what OPA was about.  OPA drew certain lines with respect to

09:42AM 11  what kind of damages are recoverable in the wake of an oil

09:42AM 12  spill.  We're going just way beyond those lines if we're

09:42AM 13  talking about unrealized property losses.

09:42AM 14         So, I think that's -- again, I think it's just

09:43AM 15  critical to start where Your Honor started, which is to say

09:43AM 16  these are pure stigma claims, where the only claim is the

09:43AM 17  alleged stigma as a result of being in the general vicinity of

09:43AM 18  the Gulf, but it's an unrealized property value, this loss of

09:43AM 19  property value.

09:43AM 20         This motion is not directed -- again, just to

09:43AM 21  confirm and clarify the point Your Honor just made -- this

09:43AM 22  motion is not directed at anyone who actually sold and alleges

09:43AM 23  an actual loss of property value.

09:43AM 24     THE COURT:  All right.  What I would like to do is take

09:43AM 25  these motions separately.

09:43AM  1          MR. LANDAU:  Sure.

09:43AM  2          THE COURT:  Let's hear from the opponents on the pure

09:43AM  3   stigma claims.  Who is going to argue that?

09:43AM  4          MR. JONES:  I will, Your Honor.

09:43AM  5          MR. HERMAN:  Mr. Jones.

09:43AM  6          MR. JONES:  Good morning, Your Honor.  Rhon Jones on

09:43AM  7   behalf of the PSC.

09:43AM  8          THE COURT:  Good morning.

09:43AM  9          MR. JONES:  I would like to make two rather broad

09:43AM 10   points and then fall into some smaller ones.

09:43AM 11          To begin with, we have, in my mind, unprecedented

09:44AM 12   facts in this particular case due to the size and the location

09:44AM 13   of the spill.  If you will look at two raw points, one being

09:44AM 14   OPA's aim, clearly OPA was meant to put an end to the

09:44AM 15   *Robins Dry Dock* physical touching; it was meant to be a broad

09:44AM 16   remedial law; and, it was meant to ensure full compensation for

09:44AM 17   all economic damages in a uniform way.

09:44AM 18          So we're very much, in OPA, away from the

09:44AM 19   physical touching issues that we have with *Robins Dry Dock*.

09:44AM 20          The second major point I would like to make is

09:44AM 21   that --

09:44AM 22          THE COURT:  Well, that's true for some of the types of

09:44AM 23   claims, but not necessarily for all claims.

09:44AM 24          MR. JONES:  Not necessarily, Your Honor, but I think we

09:44AM 25   will pass Rule 12 muster under (B) or (E) here easily.

09:44AM  1        That leads to the second point I wanted to make,

09:44AM  2   the second broad point.  BP's motion, quite simply, is

09:44AM  3   premature.  A Rule 12 motion on this issue, it's just too early

09:45AM  4   to say there's not any set of the facts on which any plaintiff

09:45AM  5   could prove any complaint that leads to relief.  It's simply

09:45AM  6   too soon.

09:45AM  7        THE COURT:  Give me your best set of facts that you can

09:45AM  8   hypothesize.

09:45AM  9        MR. JONES:  Well, I can think of several.

09:45AM 10        You could have -- in different states, you have

09:45AM 11   different ownership lines as far as high tide and low tide.

09:45AM 12   You could have somebody who is as close as 10, 20 feet, have

09:45AM 13   oil 10, 20 feet away from their property line.  You could have

09:45AM 14   somebody several miles away.

09:45AM 15        In my opinion, someone who is 10, 20, 30 feet is

09:45AM 16   a totally different issue than someone who is several miles.

09:45AM 17        You could have the recurring issue that we've

09:45AM 18   recently had with Isaac, with tar balls and things that come up

09:45AM 19   even after the fact, so that it's not a one-time, necessarily,

09:45AM 20   event, but you have a recurring problem.

09:45AM 21        You also have -- the SCAT map is replete with

09:46AM 22   instances where there will be a designation of oiled, then not

09:46AM 23   oiled, then oiled, then not oiled.  You know, it's not

09:46AM 24   necessarily consistent --

09:46AM 25        THE COURT:  I want to be clear what you're saying.  Are

09:46AM 1   you saying that it's possible that some people who don't know

09:46AM 2   there is oil on their property now may have oil when the next

09:46AM 3   storm comes up; is that your argument?

09:46AM 4          Or is it just that the oil may be so close that

09:46AM 5   it'd just as well be on their property?

09:46AM 6          MR. JONES:  Really, neither, Your Honor.  I'm saying

09:46AM 7   that if the oil comes up at different times, and if the oil is

09:46AM 8   close but not to their property line, then that's very -- it's

09:46AM 9   very close, it's proximate to their property, but it's not on

09:46AM 10  it.

09:46AM 11         Someone could be --

09:46AM 12         THE COURT:  If I were to negligently destroy your

09:46AM 13  neighbor's house and cause blight next to you, would you have a

09:46AM 14  tort claim against me?

09:46AM 15         MR. JONES:  I don't know.  I don't think those are our

09:46AM 16  facts.  I think that in this situation where --

09:47AM 17         THE COURT:  Well, obviously, those aren't the facts,

09:47AM 18  but -- what I'm posing is a hypothetical -- but I'm trying to

09:47AM 19  understand your logic or theory.  If it's close, it's good

09:47AM 20  enough, even if it's not on your property?

09:47AM 21         MR. JONES:  Well, I guess my larger point is, at the

09:47AM 22  Rule 12 stage, that's precisely why their motion is premature.

09:47AM 23  There are not enough facts developed to know how many different

09:47AM 24  situations there could be.

09:47AM 25         I guess the only point I was trying to make is

09:47AM 1    that someone could have oil very close to their property, but

09:47AM 2    not on it, and yet it still --

09:47AM 3         THE COURT:  Well, that motion would draw a bright line,

09:47AM 4    I guess, somewhat similar to *Robins Dry Dock*, that for pure

09:47AM 5    stigma claims, you either had oil on your property or you

09:47AM 6    didn't.

09:47AM 7         MR. JONES:  Understood.

09:47AM 8         THE COURT:  Again, we're talking about unrealized

09:47AM 9    alleged losses, where people have not sold the property.

09:47AM 10   That's what their motion is.  So how does that fit in with your

09:48AM 11   argument that this is premature?

09:48AM 12        MR. JONES:  Well, I think it's --

09:48AM 13        THE COURT:  In other words, their motion, if they are

09:48AM 14   right legally, it doesn't matter -- it doesn't matter how close

09:48AM 15   it is to your property or what the exact particular facts are

09:48AM 16   if it's not -- it didn't destroy your property or damage your

09:48AM 17   property.

09:48AM 18        MR. JONES:  Well, at a minimum, Your Honor, I would say

09:48AM 19   it's at least a Rule 56 question; but, that question leads me

09:48AM 20   to another point I wanted to make.

09:48AM 21        This motion reminds me very much of BP's approach

09:48AM 22   under Rule 12(b) to the VoO and to the moratorium cases.

09:48AM 23        You will recall, they argued that the VoO cases

09:48AM 24   needed to be dismissed on Rule 12 because they were out in the

09:48AM 25   program.  It wasn't the spill that caused the damage.

09:48AM 1    With moratorium, they argued that the moratorium

09:48AM 2 was an intervening or superseding cause; really, arguing that

09:48AM 3 proximate cause was the requirement under OPA, when it was

09:48AM 4 actually due to or resulting from.

09:49AM 5   THE COURT:  Talk about the words of this statute.

09:49AM 6    You agree that the only two possible avenues of

09:49AM 7 relief for these pure stigma claims would be under 2702(b)(2)

09:49AM 8 and subsections (B) or (E), right?  Those are the only two

09:49AM 9 possible claims where these stigma claims could fall under; am

09:49AM 10 I correct on that?

09:49AM 11   MR. JONES:  Yes, sir.

09:49AM 12   THE COURT:  Talk to me about the exact particular words

09:49AM 13 of these two sections and how they would allow a claim for the

09:49AM 14 pure stigma claims as we've described them.

09:49AM 15    You have property that has not been itself

09:49AM 16 destroyed or touched by oil, but its value has allegedly been

09:49AM 17 diminished, just generally, because of the oil spill in the

09:50AM 18 vicinity or what have you; and, the property -- the alleged

09:50AM 19 loss, the damage has not yet been realized because it's not

09:50AM 20 been sold.

09:50AM 21    So, potentially, somebody could make a claim this

09:50AM 22 year that my property is only worth two-thirds of what it was

09:50AM 23 worth before the oil spill, or half, and they make a claim.

09:50AM 24    Then, next year or -- they may have no intention

09:50AM 25 of selling the property, and in a few years it may be worth as

09:50AM 1    much or more than it was worth before.

09:50AM 2                   Just as a practical matter, how do you envision

09:50AM 3    all of that working?

09:50AM 4         MR. JONES:  Well, I guess, first of all, I would say if

09:50AM 5    that were the case, then Rule 56, not Rule 12, or the trial

09:50AM 6    would take care of that, not a Rule 12 motion.

09:50AM 7                   You could, for instance, Your Honor, have someone

09:50AM 8    who didn't just suffer a drop in property value.  Perhaps, they

09:50AM 9    were going to refinance.  Perhaps, they were using equity from

09:50AM 10   their home for some financing.  If the diminution dropped, then

09:51AM 11   they certainly have a problem now, as opposed to later.

09:51AM 12                  As to your question regarding (B) and (E), to me,

09:51AM 13   I read -- and I think BP reads (B) the same way we do in that

09:51AM 14   they agree the language itself says, quite simply, injury to

09:51AM 15   real property.  That's all that's required.  There is a comma

09:51AM 16   there, and in their brief, they agree that injury to real

09:51AM 17   property is what we're looking at.

09:51AM 18                  What they are attempting to do, in my mind, is

09:51AM 19   graft upon the word "physical" and add that to it, when it

09:51AM 20   simply doesn't exist.

09:51AM 21        THE COURT:  Do you have any cases that interpret that

09:51AM 22   statute that way?

09:51AM 23        MR. JONES:  No, sir, I don't have.

09:51AM 24        THE COURT:  There are not a lot on it, but the few I

09:51AM 25   have seen, they view it the other way, that it does require

09:51AM 1    physical damage.

09:51AM 2           MR. JONES:  Well, I would respectfully disagree --

09:51AM 3           THE COURT:  In other words, they interpret injury or

09:51AM 4    destruction meaning physical damage to the property.

09:51AM 5           MR. JONES:  I would respectfully disagree on those

09:51AM 6    points for these reasons.  If you look at the --

09:51AM 7           THE COURT:  You disagree with what I just said, or you

09:51AM 8    disagree with the cases?

09:51AM 9           MR. JONES:  With the cases.

09:52AM 10          THE COURT:  Oh, okay.

09:52AM 11          MR. JONES:  Yes, sir.  We do need to be clear there.

09:52AM 12          THE COURT:  Okay.

09:52AM 13          MR. JONES:  Yes, sir.

09:52AM 14              In fact, I disagree with BP's interpretation of

09:52AM 15   the cases, more specifically.

09:52AM 16              If you look at *Sekco*, it was two or three years

09:52AM 17   after OPA had passed.  It was a drill platform.  There was no

09:52AM 18   real property loss of value claim made there.  That was a

09:52AM 19   business interruption loss of revenue claim, which, in my mind,

09:52AM 20   was always proper in that particular case for (E).

09:52AM 21              The discussion about (B), frankly, it is dicta.

09:52AM 22   That issue, that claim was not even before the Court as to the

09:52AM 23   value of property.

09:52AM 24              If you'll look at *TAIRA LYNN*, which they also

09:52AM 25   cited, and they cite it for the same proposition, Your Honor,

09:52AM 1    that case is even worse.  That wasn't a discharge of oil into

09:52AM 2    water; that was a gaseous discharge into air.

09:52AM 3           We can probably argue about exactly what the

09:53AM 4    Court said at the end of that case; but, you can read it, that

09:53AM 5    the Court said a discharge of gaseous matter into the air is

09:53AM 6    not even an OPA case.  It doesn't even qualify.

09:53AM 7           They go on to say some things, assuming arguendo;

09:53AM 8    but, in my opinion, they have no more authority than I have to

09:53AM 9    say that physical injury was required.

09:53AM 10          I just heard them say, please look at the

09:53AM 11   language of OPA.  We 100 percent agree with that.  (B)(2)(B),

09:53AM 12   with a comma, simply requires injury to real property, not

09:53AM 13   physical injury.  Injury is not defined.  The word "physical"

09:53AM 14   is not in the statute.

09:53AM 15          We've cited lots of case law, which I'm sure

09:53AM 16   Your Honor is aware, that talks about reading the statute as it

09:53AM 17   exists and not adding words into it.  Our position is that

09:53AM 18   (b)(2)(B) absolutely supports our position because injury to

09:53AM 19   real property is all that is required.

09:53AM 20          If they want to argue about what may happen later

09:54AM 21   or what may happen under a particular circumstance, I would

09:54AM 22   respectfully say that is a Rule 56 or a trial issue.

09:54AM 23          If you'll look at the cases that they did cite,

09:54AM 24   even though I think they're distinguishable, not one of them

09:54AM 25   has a Rule 12 context.  They all have Rule 56 or an appeal of

09:54AM 1   it actually going to trial.

09:54AM 2   So I feel strong -- again, one of our broad

09:54AM 3   themes is OPA is remedial; and, two, it's simply premature.

09:54AM 4   Three, I think that (b)(2)(B) and (b)(2)(E) support our claim.

09:54AM 5   Again, back to where I was, this reminds me of

09:54AM 6   when they attempted to insert proximate cause into the

09:54AM 7   moratorium claims.  Your Honor, very correctly in my view, said

09:54AM 8   that those are highly fact specific, and 12(b)(6) must not be

09:55AM 9   granted in that context.

09:55AM 10   To me, the questions that you've posed today are

09:55AM 11   very good questions, and they underscore the fact that if you

09:55AM 12   have a loss of property value because of oil that is near your

09:55AM 13   property, that is, indeed, a highly factual analysis that is

09:55AM 14   not capable of being decided at the Rule 12 stage.

09:55AM 15   Your Honor, under (E), I think that the same

09:55AM 16   thing applies.  It does say loss of profits or impairment of

09:55AM 17   earning capacity, but, again, to me, the key phrase is --

09:55AM 18   THE COURT:  But have you lost any profits?  Certainly,

09:55AM 19   impairment of earning capacity doesn't apply here.

09:55AM 20   MR. JONES:  Well, I would argue that earning capacity

09:55AM 21   is commonly considered in property appraisals.  There may be a

09:55AM 22   situation when someone had the capacity for earning from the

09:55AM 23   property.

09:55AM 24   Again, underscoring the point that on a fact

09:56AM 25   specific basis, perhaps they have a point; but, on a blanket

09:56AM 1    Rule 12 motion for every single claimant or plaintiff who may

09:56AM 2    make that claim, I don't think they do.

09:56AM 3         THE COURT:  You haven't lost any profits, have you,

09:56AM 4    unless and until you sell it and realize a loss, right?

09:56AM 5         MR. JONES:  Well, you're correct in one sense,

09:56AM 6    Your Honor, but that also brings up another point.  Even BP is

09:56AM 7    conceding, I think, via the settlement, that if you have a

09:56AM 8    non-oiled piece of property, and you do sell it at a depressed

09:56AM 9    price, then you can be compensated.  I understand that --

09:56AM 10        THE COURT:  But this motion doesn't go to those types

09:56AM 11   of things.

09:56AM 12        MR. JONES:  Well, you're correct, but I would argue --

09:56AM 13        THE COURT:  There is a difference in accounting.  If I

09:56AM 14   own a stock, and the stock goes down one day and goes up the

09:56AM 15   next day or goes back down, you know, people panic when they

09:56AM 16   look at their -- particularly recently -- well, until recently,

09:56AM 17   I guess -- they're not panicking too much anymore, the stock

09:56AM 18   market is doing better -- but people panicked in 2008 and 2009,

09:57AM 19   when the stock market tanked and went down from, what,

09:57AM 20   13,000 to 6500.  They said, well, look at all the money --

09:57AM 21   well, unless you sell, you haven't lost anything.  I mean, it

09:57AM 22   looks like you've lost on paper, but you haven't realized a

09:57AM 23   loss unless and until you sell.

09:57AM 24             It's sort of the same thing with real estate.  I

09:57AM 25   mean, the value of property may be down, but you haven't

09:57AM 1    necessarily lost anything.

09:57AM 2        MR. JONES:  Your Honor, my point would be twofold on

09:57AM 3    that.  One is, if you allow compensation, as the settlement

09:57AM 4    does, as BP has conceded, for a non-oiled property that sells

09:57AM 5    after the spill, if you take that as a given, which it is, then

09:57AM 6    why does one property owner who sold and another who perhaps

09:57AM 7    could not sell because the diminishment was so great, how is

09:57AM 8    that uniform under the remedial purpose of OPA if one neighbor

09:57AM 9    can qualify for compensation and another cannot?

09:57AM 10       THE COURT:  Well, I think the answer to that is that's

09:57AM 11   what the settlement provides for, but we're talking about what

09:58AM 12   does the law provide for now.

09:58AM 13       MR. JONES:  My second point, Your Honor, would be, very

09:58AM 14   respectfully, that these are all good points, I just don't

09:58AM 15   think they're Rule 12 points.

09:58AM 16       Someone may be in a situation where their

09:58AM 17   property may continue to deadline, I don't know.  I guess

09:58AM 18   that's my whole point.  We won't know until we're at a

09:58AM 19   Rule 56 or even, perhaps, a trial status.

09:58AM 20       I would close, Your Honor, by saying that if --

09:58AM 21   well, I'll close by saying two things.  I think that under

09:58AM 22   Rule 12, the B1 master complaint as it relates to these

09:58AM 23   so-called stigma claims, the allegations have been pled

09:58AM 24   sufficiently to pass Rule 12.  I think that's really the only

09:58AM 25   question that has to be answered today.

09:58AM 1          Finally, Your Honor, I would say that there is

09:58AM 2    not going to be any chaos or problem with these claims going

09:58AM 3    forward.  The claims that are for coastal or near coastal,

09:58AM 4    whatever it may be --

09:58AM 5          THE COURT:  Do you acknowledge these types of claims

09:59AM 6    would only be coastal properties, so to speak?

09:59AM 7          MR. JONES:  Well, I don't know that I could anticipate

09:59AM 8    every fact pattern that may come up.

09:59AM 9          THE COURT:  Well, could somebody in Kalamazoo,

09:59AM 10   Michigan, say, my property value was diminished because of the

09:59AM 11   BP oil spill?

09:59AM 12         MR. JONES:  I do not think they could.  I think

09:59AM 13   Your Honor is correct --

09:59AM 14         THE COURT:  How about somebody in Monroe?

09:59AM 15         MR. JONES:  I would think that it would be coastal or

09:59AM 16   very close to it; although, I certainly can't anticipate every

09:59AM 17   fact situation that may pass Rule 12 muster.

09:59AM 18              Thank you.

09:59AM 19         THE COURT:  Thank you, Mr. Jones.

09:59AM 20              Do you want to take a couple of minutes in

09:59AM 21   rebuttal, Mr. Landau?

09:59AM 22         MR. LANDAU:  Yes, Your Honor, very briefly.  I think I

09:59AM 23   won't need my full five minutes.

09:59AM 24         THE COURT:  Why don't you respond.  What's your reply?

09:59AM 25   If Mr. Jones is right, if you look at the language of

09:59AM 1    subsection (B), it does not have the word "physical" in there.

09:59AM 2         MR. LANDAU:  You're absolutely right, Your Honor; but,

10:00AM 3    one of the important principles of statutory construction is

10:00AM 4    that we don't look at words in the abstract.  We look at words

10:00AM 5    in their context, and we look at the structure of a statute.

10:00AM 6         What this statute does is it juxtaposes injury to

10:00AM 7    with economic losses resulting from the destruction.  So it

10:00AM 8    talks about a particular kind of economic loss.  It doesn't use

10:00AM 9    the word -- it uses the word "injury" different than economic

10:00AM 10   loss.

10:00AM 11        The statute -- it would be strange -- under

10:00AM 12   Mr. Jones's reading of this, he would be saying, economic

10:00AM 13   losses, presumably all economic losses, comma, or economic

10:00AM 14   losses resulting from the destruction of real or personal

10:00AM 15   property.  So it would be kind of odd, and the limitation of

10:00AM 16   economic losses to destruction would be kind of meaningless if

10:00AM 17   you interpret an injury as meaning economic losses.

10:00AM 18        I think that's exactly what Judge Livaudais

10:00AM 19   concluded in the *Sekco* case.  So I didn't hear anything from

10:00AM 20   Mr. Jones really challenging the reasoning of that on

10:01AM 21   structural grounds.

10:01AM 22        Just very briefly, then, Your Honor, when

10:01AM 23   Mr. Jones first got up here, he said, "Well" -- I think this

10:01AM 24   really goes to the heart of his motions -- he said, "OPA is a

10:01AM 25   broad remedial law that grants all economic damages."

10:01AM 1          Again, I just think, as some of Your Honor's

10:01AM 2     questions underscored, that's just not the statute we're

10:01AM 3     confronted with.  It doesn't do that.  It actually says,

10:01AM 4     "damages specified in subsection (B)," and then subsection (B)

10:01AM 5     goes through some detail, six categories of damages.

10:01AM 6          So we can't really stand here today and be

10:01AM 7     talking in the abstract about a statute that's not the statute

10:01AM 8     that we're actually construing.  We have specific language, and

10:01AM 9     Congress drew lines.  Again, strict but limited liability.

10:01AM 10         Then, Mr. Jones's second point was that this is

10:01AM 11    somehow premature; but, I think that kind of misunderstands the

10:01AM 12    nature of these motions and, really, the whole MDL process.

10:02AM 13         What we are doing here is we're moving to dismiss

10:02AM 14    structurally the amended -- the claims that are brought by the

10:02AM 15    PSC on behalf of any number of individual plaintiffs in the

10:02AM 16    amended B1 master complaint.

10:02AM 17         What we're asking for is a ruling of law that

10:02AM 18    claims for pure stigma damages for property that weren't

10:02AM 19    touched by oil or for unrealized economic losses are

10:02AM 20    categorically not recoverable.

10:02AM 21         THE COURT:  Is it your position that the only way in

10:02AM 22    which a loss, an economic loss is realized, is when the

10:02AM 23    property is sold?

10:02AM 24         MR. LANDAU:  Yes, Your Honor, because the statute --

10:02AM 25    again, we just have to go back to --

10:02AM 1         THE COURT:  What about Mr. Jones's -- I think he

10:02AM 2    alluded to an example of someone who alleges that their

10:02AM 3    property value was diminished because of the oil spill, they

10:02AM 4    fall into this pure stigma category; and, because of that, they

10:03AM 5    couldn't refinance or couldn't secure a loan or something like

10:03AM 6    that, and they sustained an economic loss?

10:03AM 7         MR. LANDAU:  Right, but the statute doesn't say all

10:03AM 8    economic losses.  It says, "loss of profits or impairment of

10:03AM 9    earning capacity."  Under that situation, when you have

10:03AM 10   neither --

10:03AM 11        THE COURT:  No, I'm looking at (B), not (E).

10:03AM 12        MR. LANDAU:  Right.  Well, I'm sorry.  Then, with

10:03AM 13   respect to (B), it's economic losses resulting from the

10:03AM 14   destruction of real or personal property.

10:03AM 15             So the economic losses, I don't believe that the

10:03AM 16   plaintiffs are even alleging that the real or personal property

10:03AM 17   was destroyed.  I think by definition in a pure stigma claim,

10:03AM 18   it wasn't; that there was just an intangible loss of unrealized

10:03AM 19   value.

10:03AM 20             So the question then goes to the word "injury,"

10:03AM 21   and are you going to interpret the word "injury" to include any

10:03AM 22   and all kinds of economic losses.

10:03AM 23             You know, frankly, there is an issue as to

10:03AM 24   whether or not personal property within the meaning of (B) can

10:03AM 25   even be deemed to encompass money at all, because, if you look

structurally again at the statute, (B) -- even though money can

be deemed to be personal property in some sense --

THE COURT:  So what you're saying is you believe that

(B) is designed to compensate the owner or lessee of the

property for the damage to the property itself?

MR. LANDAU:  Yes.  Yes.

THE COURT:  As opposed to (E), which is obviously

broader in the sense that it obviously allows people who don't

even own or lease the property necessarily --

MR. LANDAU:  Absolutely, like a fisherman.

THE COURT:  -- as it does with *Robins Dry Dock*, to, in

some cases, claim loss of profits or earning capacity.

MR. LANDAU:  Yes.

When you just look at this structurally and try

to make sense of these six categories and keep them from

collapsing into each other and overlapping, (B) is about harm

to the property, and (E) is about monetary losses, economic

losses.

So I think the stigma claims fall most naturally

into (E) -- if they were going to fall anywhere, they would

fall most naturally to (E).  But, again, (E) isn't all economic

losses; it's loss of profits and impairment of earning

capacity.  An unrealized loss of value of the sort you might

have with a house or a stock does not fall within either of

those categories.

10:05AM 1            THE COURT:  Thank you very much.

10:05AM 2            MR. LANDAU:  Thank you, Your Honor.

10:05AM 3            THE COURT:  Let's move on to the motions to dismiss the

10:05AM 4      BP dealer claims.

10:05AM 5            MR. LANDAU:  Absolutely.

10:05AM 6            THE COURT:  Mr. Landau.

10:05AM 7            MR. LANDAU:  Yes, and I think we discussed some of this

10:05AM 8      earlier, Your Honor.  I think a lot of the dispute here is more

10:05AM 9      definitional than anything.

10:05AM 10           Again, just to reiterate, this motion does not

10:05AM 11     encompass that the BP dealer who -- you know, which was a block

10:05AM 12     away from the Gulf, let's say, and there is a Shell dealer down

10:05AM 13     the street, and is bringing a claim for loss of revenues as a

10:05AM 14     result of a decline in tourism.

10:05AM 15           So we want to be very clear that the scope of

10:05AM 16     this -- maybe the word "BP dealer" -- the phrase "BP dealer

10:06AM 17     claims," if you just look at it in the abstract, may be overly

10:06AM 18     broad.  These really are BP dealer consumer animosity claims.

10:06AM 19           THE COURT:  Well, I assume that part of the -- and I

10:06AM 20     have to confess, when I first saw this motion category, I

10:06AM 21     assumed, too, that BP was asking to dismiss all claims by any

10:06AM 22     BP dealer anywhere in the country.

10:06AM 23           For example, the settlement, not necessarily that

10:06AM 24     that's controlling on what we're doing here, but I believe the

10:06AM 25     settlement excludes any BP dealer, regardless of the type of

10:06AM 1   claim they are attempting to make.  Am I right about that?

10:06AM 2          MR. LANDAU:  That's true, Your Honor.

10:06AM 3          THE COURT:  Yes.

10:06AM 4          MR. LANDAU:  But certainly we're not saying that the BP

10:06AM 5   dealers -- if Your Honor were to grant this motion, let me make

10:06AM 6   very clear, we are not saying that the BP dealers would be

10:06AM 7   categorically wrought from bringing any claims.  Our motion is

10:06AM 8   really --

10:06AM 9          THE COURT:  They would -- if I grant your motion, the

10:06AM 10  result would be that the BP dealers could not pursue claims for

10:07AM 11  pure stigma or diminution of their brand value; but, it

10:07AM 12  wouldn't necessarily prevent them from bringing other claims

10:07AM 13  for loss of profits or so forth, loss of income relating to the

10:07AM 14  spill if they otherwise qualified, just as a Shell or Chevron

10:07AM 15  dealer?

10:07AM 16         MR. LANDAU:  That's absolutely correct.

10:07AM 17             The animosity claims, the consumer animosity

10:07AM 18  claims are obviously much more sweeping in scope.  They would

10:07AM 19  encompass claims by BP dealers not just in this area, but also

10:07AM 20  ones in Topeka, Kansas, or in Montana.  It's a much broader

10:07AM 21  type of claim, and it's the claim that -- again, the amended

10:07AM 22  B1 master complaint is somewhat ambiguous on this score.  It

10:07AM 23  just says, you know, BP claim -- any and all claims by

10:07AM 24  BP dealers.  It doesn't necessarily specify consumer animosity

10:08AM 25  claims.  It's certainly broad enough to encompass those kinds

10:08AM 1    of claims, but there certainly are --

10:08AM 2            THE COURT:  I think the Tobatex --

10:08AM 3            MR. LANDAU:  Yes.

10:08AM 4            THE COURT:  -- complaint expressly sets forth the

10:08AM 5    so-called consumer animosity stigma claims.

10:08AM 6            MR. LANDAU:  Right.  Tobatex is the poster child for

10:08AM 7    what a consumer animosity claim really looks like.  Again,

10:08AM 8    that's a service station in the Metro Atlanta area.  So,

10:08AM 9    obviously, they face a very different set of circumstances than

10:08AM 10   a BP dealer who is right here on the Gulf.

10:08AM 11           Again, so I think with this --

10:08AM 12           THE COURT:  What about the BP dealer in Atlanta who

10:08AM 13   alleges, in addition to or separate from the consumer animosity

10:08AM 14   claim, what if he alleges, look, I'm right on the Interstate --

10:08AM 15   what's the highway coming right down from Atlanta down to the

10:08AM 16   Gulf Coast -- but I know that there are a heck of a lot of

10:08AM 17   people who drive from Tennessee and Georgia and north Alabama,

10:08AM 18   everywhere, down to the Gulf Coast of Florida and Alabama to

10:08AM 19   vacation; and, what if he says, I'm right on a major freeway

10:09AM 20   exit coming down directly to the Gulf Coast, I'm not on the

10:09AM 21   Gulf Coast but I'm there, would your motion knock him out, too?

10:09AM 22           MR. LANDAU:  No, Your Honor.  This motion is -- again,

10:09AM 23   just going back to -- this is the language of your June 12th

10:09AM 24   order -- "BP dealer claims by dealers who have suffered

10:09AM 25   damages, including loss of business income and profits as a

10:09AM 1    result of the loss of value to the BP brand or name."  That's

10:09AM 2    the part we consider critical.

10:09AM 3        THE COURT:  So the types of claims I just mentioned

10:09AM 4    would be for another day, so to speak?

10:09AM 5        MR. LANDAU:  Absolutely, Your Honor, yes.

10:09AM 6        THE COURT:  In other words, they wouldn't be

10:09AM 7    dismissed -- if I granted your motion, they are not part of the

10:09AM 8    settlement, they are not included in the settlement, but they

10:09AM 9    would still be able to pursue their claims in court?

10:10AM 10       MR. LANDAU:  Yes, Your Honor.  Yes, Your Honor.

10:10AM 11       THE COURT:  All right.

10:10AM 12       MR. LANDAU:  So, once you cross that bridge, the

10:10AM 13   question then comes back to which section of OPA can a consumer

10:10AM 14   animosity claim be brought under.

10:10AM 15            The PSC motion -- or opposition to our motion

10:10AM 16   only invokes subsection (b)(2)(B) for this.  I think it's a --

10:10AM 17   this is quite a telling point because the PSC opposition brief

10:10AM 18   says, we're not sure exactly what BP is moving to dismiss.  To

10:10AM 19   the extent it's moving to dismiss even loss of tourism claims,

10:10AM 20   they make an argument under (b)(2)(E); but, with respect to

10:10AM 21   consumer animosity claims, the PSC's motion is limited to

10:10AM 22   (b)(2)(B).  So we get back into the same discussion that we

10:10AM 23   were just having about what the meaning is of (b)(2)(B).

10:11AM 24       THE COURT:  So we're back to the fundamental issue

10:11AM 25   there or question there is whether that requires physical

10:11AM 1    damage to your property?

10:11AM 2         MR. LANDAU:  That's correct, Your Honor.  I think

10:11AM 3    that's a relatively narrow -- or it's a dispute we've already

10:11AM 4    covered.

10:11AM 5         THE COURT:  Right.

10:11AM 6         MR. LANDAU:  Again, I understand that to be the only

10:11AM 7    basis that the PSC has brought on this motion.

10:11AM 8              The Tobatex plaintiffs -- and we'll hear from

10:11AM 9    them in a moment, I suppose -- really bring kind of a different

10:11AM 10   challenge to our motion, which is a more foundational

10:11AM 11   challenge, which says that they should be able to pursue state

10:11AM 12   law claims in the area.

10:11AM 13             Our response to that point is that this Court

10:11AM 14   crossed that bridge already last year in its August 26th order.

10:11AM 15   Again, the very premise of this motion is building on that

10:11AM 16   motion, and what they are really trying to do is seek

10:12AM 17   reconsideration of that motion in a procedurally improper way.

10:12AM 18        THE COURT:  Well, yes, except that they make the

10:12AM 19   argument that their case is different, their type of case is

10:12AM 20   different.

10:12AM 21        MR. LANDAU:  There may be a time and a place to decide

10:12AM 22   that issue; but, I guess my point is, we understood these

10:12AM 23   motions at this point in time really to be kind of broad,

10:12AM 24   structural legal rulings, and that this is not the time or the

10:12AM 25   place in which Your Honor will take the broad rulings it made

10:12AM 1   in motions on the broad categories of claims brought by the PSC

10:12AM 2   and apply them to individual cases, that that's for something

10:12AM 3   down the road.  That we are simply saying --

10:12AM 4        THE COURT:  Well, what I meant by that is, as I

10:12AM 5   appreciate it, the Tobatex claimants allege something beyond or

10:13AM 6   different from what the PSC itself has alleged in conjunction

10:13AM 7   with this motion; and, that is, that even though I previously

10:13AM 8   held, obviously, that the *Deepwater Horizon* was a vessel and

10:13AM 9   that admiralty jurisdiction and maritime law apply, that the

10:13AM 10  type of case they are alleging is something that occurred on

10:13AM 11  dry land, and it's somehow different, and they should be

10:13AM 12  allowed to allege state law claims.  That's as I appreciate

10:13AM 13  their argument.

10:13AM 14       MR. LANDAU:  Right.  Right.

10:13AM 15            I guess what I was suggesting, Your Honor, is I

10:13AM 16  respect that argument, but it seems to me that our motion is --

10:13AM 17  there will be a time and a place for them -- not only them, but

10:13AM 18  for the many thousands of individual claimants whose claims in

10:13AM 19  the aggregate are represented by the PSC, to argue why this

10:13AM 20  Court's general rulings with regard to the amended complaint

10:14AM 21  brought by the PSC should not apply to their particular cases

10:14AM 22  for any number of reasons.  This kind of goes back to the point

10:14AM 23  that Mr. Jones just made.

10:14AM 24       THE COURT:  Their particular cases are right out front

10:14AM 25  of us now.  I don't know how that's going to happen.  For

10:14AM   1   example, if I say that admiralty law applies, as I've said

10:14AM   2   previously in the B1 order, and that, therefore,

10:14AM   3   *Robins Dry Dock* applies, then that eliminates any -- and that

10:14AM   4   that preempts state law and that *Robins Dry Dock* preempts any

10:14AM   5   claim unless you have physical damage to your property, then

10:14AM   6   that would mean their only recourse could be one of these OPA

10:14AM   7   provisions, correct?

10:14AM   8        MR. LANDAU:  Right.  So these motions are really

10:14AM   9   targeted at that, at saying, there is no OPA claim here.

10:14AM  10   Again, it seems to me what they are really doing --

10:15AM  11        THE COURT:  If I understand you -- excuse me, if I

10:15AM  12   understand what you're saying, then, or suggesting, is that

10:15AM  13   they could later challenge whether my B1 order applied to the

10:15AM  14   Tobatex complaint?

10:15AM  15        MR. LANDAU:  Yes, Your Honor.  I guess I understood,

10:15AM  16   kind of structurally, the way this was proceeding after the

10:15AM  17   series of pretrial orders, that the PSC amended master

10:15AM  18   complaint was kind of deemed to represent everybody; but, that

10:15AM  19   at some point, there would be some kind of a process for people

10:15AM  20   to say, no, I really don't fall within that.

10:15AM  21        You know, maybe this is one of those gray zones

10:15AM  22   in terms of the way this big MDL is working; but, with respect,

10:15AM  23   I guess, if, indeed, Your Honor is saying, my legal ruling on

10:15AM  24   state law may not apply to everybody, that may have

10:15AM  25   implications for the settlement, I suppose, if -- I think one

10:16AM  1   of the understandings of the settlement was, frankly, that

10:16AM  2   there were no state law claims in this MDL as a result of that

10:16AM  3   ruling.

10:16AM  4          So I think we're starting to get into more

10:16AM  5   treacherous waters there that we certainly were not believing

10:16AM  6   that we were getting into.  In bringing those motions to

10:16AM  7   dismiss, we were taking it for granted or as a premise of these

10:16AM  8   motions that the state law claims were out, and thought that,

10:16AM  9   you know, maybe at some point in the future, there would be a

10:16AM 10   procedure for individual plaintiffs to say, gee, you know,

10:16AM 11   given my unique set of facts, this particular ruling or that

10:16AM 12   particular ruling shouldn't apply to me.

10:16AM 13          THE COURT:  So your argument here today on this motion

10:16AM 14   is essentially that the arguments relating to state law and

10:16AM 15   admiralty law have been settled by the B1 ruling; and, now,

10:17AM 16   you're focusing on whether they have a claim under OPA?

10:17AM 17          MR. LANDAU:  That's precisely correct, Your Honor.

10:17AM 18          THE COURT:  For the same reasons that the pure stigma

10:17AM 19   claimants have no claim, you don't believe these folks have any

10:17AM 20   claim?

10:17AM 21          MR. LANDAU:  That's right, Your Honor.

10:17AM 22          THE COURT:  All right.  Thank you.

10:17AM 23          MR. LANDAU:  Thank you.

10:17AM 24          THE COURT:  All right.  Who's going to argue for the

10:17AM 25   PSC?

10:17AM 1         MR. ROY:  I will, Your Honor.

10:17AM 2           Jim Roy for the PSC.

10:17AM 3           Your Honor, let me just reiterate so we can be

10:17AM 4  absolutely clear in our understanding.  As we appreciate it,

10:17AM 5  Chris, on behalf of BP, made it very clear that their Rule 12

10:17AM 6  motion is limited only here in scope today to these animosity

10:17AM 7  damages or brand damages, and it's not intended to try to limit

10:17AM 8  a BP dealer's OPA claim that may otherwise exist for economic

10:17AM 9  loss.

10:17AM 10        THE COURT:  That's exactly correct.  That's based on

10:18AM 11  the Court's order of June 12th, which is Record Document 6657,

10:18AM 12  it says expressly that the so-called -- even though we just

10:18AM 13  labeled them, which is probably overly broad descriptions, just

10:18AM 14  BP dealer claims, we described those as being, "the claims by

10:18AM 15  or on behalf of entities marketing BP-branded fuels that have

10:18AM 16  suffered damages, including loss of business income and

10:18AM 17  profits, as a result of the loss of value to the BP brand or

10:18AM 18  name."

10:18AM 19        MR. ROY:  Understood.

10:18AM 20        THE COURT:  That's what we're talking about.

10:18AM 21        MR. ROY:  Somewhere in the briefing --

10:18AM 22        THE COURT:  That got lost.

10:18AM 23        MR. ROY:  -- different roads were taken.

10:18AM 24         But, for purposes of focusing the argument today,

10:18AM 25  I will be brief, Your Honor, and I'll cede whatever unused time

10:18AM 1   to Tom Bleau, who represents the Tobatex plaintiff, with your

10:18AM 2   permission.

10:18AM 3            THE COURT:  Okay.

10:18AM 4            MR. ROY:  But in this same vein, in other words, it's

10:19AM 5   for another day, we would respectfully submit, for the Court to

10:19AM 6   make determinations, for example, what is the geographical

10:19AM 7   limit, if any, of these BP dealers with their OPA causation

10:19AM 8   that may or may not exist down the road.

10:19AM 9            So focusing strictly on the brand, we've briefed

10:19AM 10  and stand by the brief and have little to add to the brief.  We

10:19AM 11  do believe that the brand, through the contractual franchise

10:19AM 12  agreement and other contractual agreements the dealers have

10:19AM 13  with BP, that there is a property right that is involved and

10:19AM 14  has been damaged.

10:19AM 15           THE COURT:  This is not a contract claim, though,

10:19AM 16  that's being alleged.  I haven't sensed that there is any type

10:19AM 17  of contract claim.  It's a tort claim.

10:19AM 18           MR. ROY:  Exactly.  But the point I'm trying to make

10:19AM 19  and we make in our briefing, Your Honor, is that the

10:20AM 20  relationship between the BP dealers and BP is one of contract.

10:20AM 21           It's not the *Robins Dry Dock* sort of thing where

10:20AM 22  there is no economic relationship between the tortfeasor and

10:20AM 23  the victim.  In this case, there is a very intimate contractual

10:20AM 24  relationship that otherwise exists.

10:20AM 25           They are not strangers to each other.  That's the

10:20AM 1   only point.  It's not a casual or a random relationship that a

10:20AM 2   tort has brought together the victim and the bad actor, if you

10:20AM 3   will.

10:20AM 4            But, regardless, we've briefed this.  We've

10:20AM 5   addressed it.  We believe that --

10:20AM 6        THE COURT:  I know you say, and I've said in the past,

10:20AM 7   that it's going to be difficult in some situations to draw a

10:20AM 8   line.

10:21AM 9            I think, from prior arguments in this Court, it's

10:21AM 10  pretty much been conceded that OPA causation may be beyond or

10:21AM 11  something less demanding than proximate cause, but it can't be

10:21AM 12  simply but-for causation because there can be no end to but-for

10:21AM 13  causation.  I mean, that could carry around the world for

10:21AM 14  several times.

10:21AM 15           So, I guess, BP has dealers all over the

10:21AM 16  United States, for sure.  Do they have BP dealers -- they sell

10:21AM 17  gas in the UK, I imagine, too, right?  Mr. Langan?  Does

10:21AM 18  anybody know?

10:21AM 19       MR. LANGAN:  Very much so, Your Honor.

10:21AM 20       THE COURT:  So my question is do BP dealers in the UK

10:21AM 21  have a claim under OPA?

10:21AM 22       MR. ROY:  That cannot be answered, we believe, today in

10:22AM 23  the Rule 12 context, Your Honor.  We believe --

10:22AM 24       THE COURT:  Well, if we are just talking about the

10:22AM 25  brand damage --

10:22AM 1        MR. ROY:  I understand.

10:22AM 2        THE COURT:  -- it seems like if the brand is damaged,

10:22AM 3   and if there is a viable claim for that under OPA, there would

10:22AM 4   be no geographical limit on that, would there?

10:22AM 5        MR. ROY:  Well, there may very well be, Your Honor.

10:22AM 6        THE COURT:  How would that be?

10:22AM 7        MR. ROY:  Well, you said on August 26th in your

10:22AM 8   B1 Rule 12 ruling, you said --

10:22AM 9        THE COURT:  I wish you all would quit reminding me of

10:22AM 10  what I said.

10:22AM 11       MR. ROY:  I know, but the temptation is just too great.

10:22AM 12            But what you did say was, "The Court need not

10:22AM 13  define causation under OPA.  It's necessarily a highly factual

10:22AM 14  analysis at this stage of the pleadings."  All right.

10:22AM 15            What was true then is true today.  For the very

10:22AM 16  same reason, the PSC has advocated and entered a discussion on

10:23AM 17  the need for test cases, vis-à-vis moratorium claims and OPA

10:23AM 18  causation.  We would urge the same is true when you're dealing

10:23AM 19  with BP dealers because, to the extent they may have a brand

10:23AM 20  damage claim, the brand damage claim is inexplicably

10:23AM 21  intertwined with the OPA claim that they are not trying to

10:23AM 22  strike today, and that is the one for economic damage.

10:23AM 23            But here is why they may be inextricably

10:23AM 24  intertwined.  They may be inextricably intertwined because they

10:23AM 25  both result in a lower bottom line in realtime on an ongoing

basis.

That's the big difference between these type of claims and the simple property stigma claim.  I'm not suggesting there is not a property stigma claim validity.  I'm just saying it's a difference.  There is not a real time difference in the amount of cash in the cash register in those claims necessarily, whereas, in these, there is.

We submit that it's a factually intensive determination.  We believe, based upon the briefing and the evidence we have submitted, for example, that BP dealers on the arteries to the Gulf will present a certain fact pattern that may, in the eyes of the Court, be different than the fact pattern of --

THE COURT:  Let me see if I understand what you're saying.  Are you inferring or suggesting that perhaps it could be a situation where there could be a geographical limitation on only dealers, perhaps, who have an otherwise viable OPA claim for the, like, loss of tourists passing by their Interstate gas station buying gas, that those people, perhaps, would be allowed also to have a stigma claim because, as you say, they are intertwined; whereas, the dealer in Kalamazoo, Michigan, or in the UK would not?  Is that what I'm understanding?

MR. ROY:  I'm saying that's a possibility.  I'm not advocating today to the Court that that distinction can or

10:25AM 1    should be drawn today; but, I can certainly recognize how the

10:25AM 2    Court, in light of its prior pronouncements, might, at some

10:25AM 3    point in time, want to make that distinction.

10:25AM 4            I don't know which way you would rule; but, if

10:25AM 5    you're going to evaluate them separately, presumably, based on

10:26AM 6    prior pronouncements, you would be doing it in the context of a

10:26AM 7    full flesh-out of the facts.

10:26AM 8            That's, I think, where I am on behalf of the PSC,

10:26AM 9    is to ask Your Honor to please defer the ruling, deny the

10:26AM 10   Rule 12 on these animosity causes of action.  Let's wait, and

10:26AM 11   let's flesh them out with individual test cases, where when you

10:26AM 12   make your ruling, whether you take a test case with someone

10:26AM 13   from Atlanta, a BP station from Gulf Shores, Alabama, or the

10:26AM 14   proverbial Goldberg, Boise, Idaho, however and whatever those

10:26AM 15   test cases are, when you make your ruling, two things happen:

10:26AM 16   One, you have got a full factual record on all three; and,

10:26AM 17   secondly, the universe of other potential plaintiffs have a

10:26AM 18   real record to look at to be instructive on.

10:26AM 19           THE COURT:  Thank you.

10:26AM 20           MR. ROY:  Thank you.

10:26AM 21           THE COURT:  All right.  Tobatex.  You have five

10:27AM 22   minutes, sir, okay?

10:27AM 23           MR. BLEAU:  May it please the Court.  Tom Bleau for the

10:27AM 24   plaintiffs, Tobatex and MRM Energy.

10:27AM 25           There are approximately 13,000 branded BP dealers

10:27AM 1    in the United States.  These dealers are -- their relationship

10:27AM 2    with BP is governed by these long-term franchise agreements

10:27AM 3    and license agreements.

10:27AM 4         THE COURT:  Again, I want to make sure I understand.

10:27AM 5    Your clients are not alleging any type of contract claims in

10:27AM 6    this litigation, right?

10:27AM 7         MR. BLEAU:  Pure negligence, Your Honor, and that's

10:27AM 8    what I want to revisit.

10:27AM 9              Plaintiffs seek to amend the complaint to

10:27AM 10   reassert the state claim, and we ask the Court to take a second

10:27AM 11   look at the maritime preemption because of --

10:27AM 12        THE COURT:  Why should I do that?  I mean, I can't be

10:27AM 13   reconsidering every ruling I made in this litigation.  We'll

10:27AM 14   never get anywhere.

10:27AM 15        MR. BLEAU:  I understand, Your Honor, but the

10:27AM 16   B1 complaint never addressed the BP dealers' complaints, the

10:27AM 17   relationship, the uniqueness.

10:27AM 18             The BP dealers --

10:27AM 19        THE COURT:  What makes it unique or different than

10:27AM 20   large numbers of other B1 plaintiffs?

10:27AM 21        MR. BLEAU:  Because BP owes BP dealers who are under

10:28AM 22   long-term franchise agreements a duty to protect the brand and

10:28AM 23   the goodwill of the brand.

10:28AM 24             Now, we're alleging not only did the oil spill

10:28AM 25   cause them these losses, but, in addition, their negligence in

10:28AM 1   the crisis management, which happened on dry land, the missteps

10:28AM 2   in the press, the fraud to consumers, that's what caused this

10:28AM 3   animosity.

10:28AM 4          THE COURT:  You realize that probably every other

10:28AM 5   claimant in this litigation is making similar claims, as I

10:28AM 6   appreciate it?  That's going to be part of Phase II and

10:28AM 7   Phase III, or whatever number of phases we get into.

10:28AM 8                In other words, we're going to litigate not only

10:28AM 9   what led up to and caused the blowout, the explosion, the fire,

10:28AM 10  the capsizing of the rig, but their management of the spill

10:28AM 11  afterwards and containment efforts and all of that.

10:28AM 12               So I still don't see how your case is different

10:29AM 13  from all these other cases.

10:29AM 14         MR. BLEAU:  Because they owed the BP dealers a duty.

10:29AM 15  They breached the duty.

10:29AM 16         THE COURT:  Well, but that's a basic requirement of

10:29AM 17  proving a tort claim.  You have to prove there is a duty and a

10:29AM 18  breach.  So how does that distinguish your case from anybody

10:29AM 19  else's?

10:29AM 20         MR. BLEAU:  Because I don't think BP owes someone

10:29AM 21  living in a home five miles from the coast a duty to protect

10:29AM 22  the image on their home.

10:29AM 23               We're talking about the image at these branded

10:29AM 24  stations.  We can't just take the sign down.

10:29AM 25         THE COURT:  I'm saying how does that distinguish your

10:29AM 1    claim from every other B1 claimant who is alleging economic

10:29AM 2    damages from the oil spill?

10:29AM 3              BP, presumably or allegedly, owed them a duty not

10:29AM 4    to damage them, and it's alleged that they did breach that

10:29AM 5    duty, so how is your claim different?

10:29AM 6         MR. BLEAU:  Because the BP dealers are subject to

10:29AM 7    BP-branded deed restrictions.  My client could not take down a

10:29AM 8    BP sign and put up a Chevron sign or a Shell sign.  They are

10:29AM 9    locked in for 20 years.  That makes this unique, Your Honor.

10:30AM 10             Similar to the *Egorov* case that we cited here,

10:30AM 11   just because the impetus, or the initial chain in the events,

10:30AM 12   was the oil spill, their conduct on dry land should not be

10:30AM 13   preempted by maritime law.  What we're saying is angry

10:30AM 14   consumers are not superseding, intervening causes; rather, this

10:30AM 15   is a direct and foreseeable result of the mismanagement of the

10:30AM 16   management, and it resulted in harm to the BP-branded dealers.

10:30AM 17             I can assure you, over -- all 13,000 dealers in

10:30AM 18   the United States -- and we're not seeking to represent a class

10:30AM 19   in the UK or Canada -- suffered lost profits.

10:30AM 20        THE COURT:  Would BP dealers in other countries have

10:30AM 21   the same claim?

10:30AM 22        MR. BLEAU:  No, I don't think so.

10:30AM 23        THE COURT:  Why not?

10:30AM 24        MR. BLEAU:  I think because this is strictly a

10:30AM 25   U.S. issue.  I think the BP dealers are operating under

10:30AM 1    Petroleum Marketing Practices Act, PMPA, franchise agreements

10:30AM 2    and franchise relationships.

10:31AM 3         I think, yes, there has to be a limit; but, to

10:31AM 4    say that some BP dealers might get compensated, whereas other

10:31AM 5    dealers only a few miles away will not, I don't think that's

10:31AM 6    fair.  I think the dealers should have a remedy under state law

10:31AM 7    because there was negligence on dry land here, and I ask the

10:31AM 8    Court to please revisit --

10:31AM 9         THE COURT:  There is case law, not in this context

10:31AM 10   exactly, but in the maritime and offshore setting, for example,

10:31AM 11   there is case law that if a company, for example -- it's

10:31AM 12   alleged in this case, for example, that BP made many decisions

10:31AM 13   on land that caused or resulted in what happened 50 miles out

10:31AM 14   in the Gulf.  That doesn't make this case a land-based case.  I

10:31AM 15   mean, that's pretty clear under case law.

10:31AM 16        In other words, a vessel owner can make a

10:31AM 17   decision, and they often do make decisions on land that affect

10:32AM 18   the operations of that vessel and cause a casualty or damage at

10:32AM 19   sea.

10:32AM 20        The fact that the decision was made on land

10:32AM 21   doesn't convert that to a land-based claim.  That seems to be

10:32AM 22   similar to what you're arguing here.

10:32AM 23        MR. BLEAU:  I agree with you to an extent; but, my

10:32AM 24   point is, after the crisis started, their negligence in

10:32AM 25   handling the crisis management on dry land is a concurrent

10:32AM 1    cause of the plaintiffs' losses here, and that's because BP

10:32AM 2    breached the duty to protect the brand.

10:32AM 3              We're not saying compensate everyone in the whole

10:32AM 4    world.  We're just saying the BP dealers who actually suffered

10:32AM 5    lost profits, just protect them under the state law case, and

10:32AM 6    let us amend our complaint and move on.

10:32AM 7         THE COURT:  Would you respond to the question I posed

10:32AM 8    to Mr. Roy about do you see a line to distinguish where a line

10:32AM 9    could be drawn as to which BP dealers in the United States

10:33AM 10   should be able to pursue or might be able to pursue a brand

10:33AM 11   damage claim, less than everybody in the United States?

10:33AM 12        MR. BLEAU:  Maybe under the OPA claim; but, under the

10:33AM 13   state law claim that we ask you to allow us to proceed on, no.

10:33AM 14   The 13,000 BP dealers who suffered lost profits should be

10:33AM 15   allowed to pursue their claims.

10:33AM 16        THE COURT:  Thank you very much, Mr. Bleau.

10:33AM 17              Mr. Landau, you have a couple of minutes.

10:33AM 18        MR. LANDAU:  Thank you, Your Honor.  I'll just be very

10:33AM 19   brief on this.

10:33AM 20              First, I think your discussion with Mr. Roy

10:33AM 21   really got into the key of our Motion to Dismiss under

10:33AM 22   subsection (b)(2)(E), which is that the OPA causation issue,

10:33AM 23   obviously, as a general matter, that is a very significant

10:33AM 24   issue in this proceeding and has serious implications for the

10:33AM 25   settlement.

10:34AM 1          We think that it's possible for Your Honor to

10:34AM 2     decide this motion without making any rulings on OPA causation

10:34AM 3     that would interfere with the process of finalizing the

10:34AM 4     settlement because I think there is no way that you can say

10:34AM 5     that whatever the standard of OPA causation, these claims by BP

10:34AM 6     dealers based on consumer animosity could survive under

10:34AM 7     anything other than a but-for factual causation standard.

10:34AM 8          THE COURT:  So you acknowledge or agree that if I ruled

10:34AM 9     in your favor on this motion or these motions, it would not

10:34AM 10    create any precedent for other types of claims where we may

10:34AM 11    have to and will have to get into how far does the OPA

10:35AM 12    causation extend?

10:35AM 13         MR. LANDAU:  Yes, Your Honor.

10:35AM 14         THE COURT:  Including claims, as has been mentioned

10:35AM 15    earlier, moratorium claims and -- what was the other --

10:35AM 16    VoO claims?

10:35AM 17         MR. LANDAU:  I think the only precedent that you would

10:35AM 18    establish in these claims is that it's not but-for causation

10:35AM 19    because I don't see how these particular kind of claims, based

10:35AM 20    on consumer animosity -- it's Joe Smith's decision as he's

10:35AM 21    driving to Kalamazoo to go to the Shell station rather than the

10:35AM 22    BP station down the block -- that is so far removed from the

10:35AM 23    oil spill as to really be, in our view, nothing more than

10:35AM 24    but-for causation.

10:35AM 25              There have been some issues about what the

10:35AM 1    appropriate standard is, and we recognize the sensitivity of

10:35AM 2    the issue.  That's why we thought we could bring this motion

10:35AM 3    safely without getting into the danger zone or the zone of real

10:35AM 4    substantial controversy.

10:35AM 5         Let me just clarify one thing, Your Honor, that

10:35AM 6    Your Honor said in the B1 motion that the parties -- BP

10:36AM 7    concedes that it's not proximate cause, and the plaintiffs

10:36AM 8    concede it's not but-for.

10:36AM 9         BP, in that context -- and I invite Your Honor to

10:36AM 10   go back to look at the transcript on this -- just said the

10:36AM 11   Court didn't need to reach the issue of proximate cause, but we

10:36AM 12   do take issue -- we do not concede, and let me just make that

10:36AM 13   clear for the record, that it's not proximate cause.

10:36AM 14        Again, as we said there, and as we're saying

10:36AM 15   here, we're simply saying Your Honor does not need to reach

10:36AM 16   that issue to decide, particularly this motion --

10:36AM 17        THE COURT:  I'm going to go back and read that, now

10:36AM 18   that you said that, because I thought that's what Mr. Langan

10:36AM 19   said; but, we'll see.  We'll see what he said.

10:36AM 20        MR. LANDAU:  Mr. Langan turned to me quite

10:36AM 21   vociferously --

10:36AM 22        MR. LANGAN:  Your Honor, I'm quite confident on this

10:36AM 23   one.  Thank you.

10:36AM 24        THE COURT:  Okay.

10:36AM 25        MR. LANDAU:  So, again, I believe we're correct on

10:36AM  1    that, Your Honor, and that this is the nothing but but-for.

10:36AM  2            We submitted in our motion some cases where

10:36AM  3    courts have decided these kind of cases, you know, just saying,

10:36AM  4    look, whatever the standard is, this is on the wrong side of

10:36AM  5    that standard.

10:36AM  6            Just briefly then, with respect to Tobatex, I

10:36AM  7    think there is really two specific answers.  One is procedural,

10:37AM  8    again, that, to the extent that they're challenging the

10:37AM  9    preemption ruling from last year, that this is not the time or

10:37AM 10    the place to do that.

10:37AM 11            Second, again, I think, substantively, I think

10:37AM 12    some of Your Honor's questions pointed out that, really, you

10:37AM 13    can't distinguish the Tobatex claims because they're simply

10:37AM 14    saying, well, you know, we're not just challenging the fire in

10:37AM 15    the Gulf, we're challenging decisions that were made on dry

10:37AM 16    land before or after the fire.  But it's all part of the same

10:37AM 17    overall course of conduct that's somehow inextricable.

10:37AM 18            If you were to try to pull out that thread, with

10:37AM 19    all respect, I think there is a serious danger that the entire

10:37AM 20    fabric would come undone for all the claims in the settlement,

10:37AM 21    because I suppose -- or a lot of them, because I suppose

10:37AM 22    everybody could say, well, gee, yeah, we're not just

10:37AM 23    challenging the fire, we're challenging X and Y decisions.

10:37AM 24            I think, in essence, Tobatex's argument is that

10:37AM 25    they shouldn't be in this MDL, which is, targeted In Re:  Oil

10:38AM 1    Spill.  It's not targeted In Re: -- it's not In Re:  All bad

10:38AM 2    things that BP has ever done MDL.

10:38AM 3              So in a sense, their beef, I think, is, in a

10:38AM 4    sense, being included in this one; but, once they're in here --

10:38AM 5              THE COURT:  Maybe I should send them to Judge Ellison.

10:38AM 6              MR. LANDAU:  Well, I'm just saying, like, once they are

10:38AM 7    in here, it seems to me, that kind of by itself crosses the

10:38AM 8    line that would warrant this Court's ruling saying that there's

10:38AM 9    enough of a nexus to the sea.  So I think that's it for the BP

10:38AM 10   dealer claims.

10:38AM 11             THE COURT:  All right.  Thank you.

10:38AM 12             We're right on schedule.  I scheduled 20 minutes

10:38AM 13   total, 10 minutes each side, for the recreation claimants.

10:38AM 14             MR. LANDAU:  Sure thing, Your Honor.

10:38AM 15             With respect to recreation claims, they fall into

10:38AM 16   two categories.  I'll call the first one the loss of enjoyment

10:38AM 17   claims, where people are just saying, I love to go fishing,

10:38AM 18   and, as a result of the oil spill, I couldn't go fishing.  I

10:38AM 19   couldn't engage in enjoyable recreational activities.  That's

10:38AM 20   kind of subcategory one of recreation claims.

10:39AM 21             Then there is a second category, which is not

10:39AM 22   only do I enjoy fishing, or I enjoy going to the beach, but I

10:39AM 23   actually made a deposit to guarantee, let's say, a hotel room

10:39AM 24   or a boat, and I have some economic loss that results from my

10:39AM 25   inability to engage in the recreational activities.

10:39AM  1           So, again, just analytically, I want to separate

10:39AM  2      both of these two claims.

10:39AM  3           With respect to the first claim, the loss of

10:39AM  4      enjoyment claims, as we read the PSC's opposition brief, we

10:39AM  5      don't see them making any effort at all to explain how those

10:39AM  6      kinds of claims fit in any of the six categories of OPA.  I

10:39AM  7      think if you look at them, they really don't.

10:39AM  8           I mean, again, it's not -- OPA doesn't say, any

10:39AM  9      or all costs and damages, including psychic damages and

10:39AM 10      sadness, is something that is recoverable under OPA.  Again,

10:39AM 11      strict but limited liability.

10:40AM 12           So then we go to the six categories of damages.

10:40AM 13      Again, the PSC --

10:40AM 14           THE COURT:  Remind me, what section do they allege is

10:40AM 15      applicable to these claims?

10:40AM 16           MR. LANDAU:  They actually don't allege any section for

10:40AM 17      the loss of enjoyment claims.  So I actually think that that's

10:40AM 18      almost conceded by omission in their motion.

10:40AM 19           Again, we're on the loss of enjoyment side of it.

10:40AM 20      Their motion -- it's only a five-page opposition, and it

10:40AM 21      focuses exclusively on the loss of deposit claims.

10:40AM 22           THE COURT:  In other words, I put a deposit down on a

10:40AM 23      condo in Gulf Shores, and then the oil spill occurred, and I

10:40AM 24      had to cancel, and I lost my deposit.

10:40AM 25           MR. LANDAU:  Correct, Your Honor.

10:40AM 1          As I understand that, that's the only subspecies

10:40AM 2   of recreation claim that they are actually defending under OPA.

10:40AM 3   We'll hear from the PSC, and maybe I'm wrong on that; and,

10:40AM 4   then, in rebuttal, I'll come back.  But, as I read their

10:40AM 5   opposition brief, they kind of seeded the field on what's

10:41AM 6   called the pure recreation or loss of enjoyment claims.

10:41AM 7          So turning to the loss of deposit claims, they

10:41AM 8   defend those entirely under subsection (b)(2)(E) of OPA, which

10:41AM 9   we've obviously been discussing at some length this morning

10:41AM 10  already.  So the question then is, is it a loss of profits or

10:41AM 11  impairment of earning capacity.  With all respect, it's

10:41AM 12  neither.

10:41AM 13         A nonrefundable deposit that you put down, in

10:41AM 14  your hypothetical on a condo, is an expense to the person

10:41AM 15  making the deposit.  It's not a profit or an earning to that

10:41AM 16  person.

10:41AM 17         So, again, I think, here, we find ourselves in

10:41AM 18  the situation where the plaintiffs are making a very general

10:41AM 19  overall argument that OPA allows for damages for all economic

10:41AM 20  losses that can be traced in some way or that result in the

10:41AM 21  wake of an oil spill.

10:41AM 22         Our basic submission to Your Honor this morning

10:41AM 23  is, no, that's not what the statute says.  The statute is quite

10:42AM 24  specific.  You have a subsection (A) that sends you to a

10:42AM 25  subsection (B) which enumerates specific categories of damages.

10:42AM  1          Again, with all respect, we don't see how a lost

10:42AM  2     deposit can be deemed either a loss of profits or an impairment

10:42AM  3     of earning capacity.  So it's a fairly simple statutory

10:42AM  4     argument, Your Honor.

10:42AM  5          THE COURT:  Thank you, Mr. Landau.

10:42AM  6          MR. LANDAU:  Thank you.

10:42AM  7          THE COURT:  Who is going to argue for the PSC?

10:42AM  8          MS. CABRASER:  Good morning, Your Honor.

10:42AM  9     Elizabeth Cabraser for the PSC responding to BP's motion.

10:42AM 10          THE COURT:  What section do you believe these types of

10:42AM 11     claims fall under, under OPA?  Because I think you admit in

10:42AM 12     your brief that, pursuant to the Court's previous rulings,

10:42AM 13     these claims are only viable under OPA.

10:42AM 14          MS. CABRASER:  That's essentially correct, Your Honor,

10:43AM 15     and we're going under (b)(2)(E) of OPA.

10:43AM 16          THE COURT:  (b)(2)(E).

10:43AM 17          MS. CABRASER:  Right.  Our concern with BP's motion was

10:43AM 18     primarily that it seemed to go wide of the Court's earlier

10:43AM 19     order and reasons.

10:43AM 20          So we're not rearguing the Court's earlier order

10:43AM 21     and reasons.  I think those are arguments reserved for another

10:43AM 22     time in another courtroom.  But we were concerned because, the

10:43AM 23     way we read the BP motion, BP was going broader, and was going

10:43AM 24     beyond the pure recreation claims in terms of the psychic

10:43AM 25     damages resulting from loss of enjoyment, to try to

10:43AM 1    inadvertently, I think, capture economic losses which we think

10:43AM 2    are preserved.

10:43AM 3         THE COURT:  So does that mean that you're conceding

10:43AM 4    that the pure loss of enjoyment claim type recreation claim is

10:43AM 5    not viable under OPA?

10:43AM 6         MS. CABRASER:  Your Honor, I think there are arguments

10:43AM 7    to extend and expand under federal common-law the reach of OPA

10:44AM 8    to that; but, we took a shot at that, Your Honor has ruled.

10:44AM 9    We're not asking for a reconsideration of that in this context.

10:44AM 10             What we're focusing on is preserving beyond a

10:44AM 11   Rule 12 attempt at dismissal the economic loss components of

10:44AM 12   claims that also might coincidentally have a recreational

10:44AM 13   feature.

10:44AM 14        THE COURT:  Give me an example of one other than the

10:44AM 15   one -- I threw out the example of someone puts a deposit on a

10:44AM 16   condominium or a hotel and then can't go because of the oil

10:44AM 17   spill --

10:44AM 18        MS. CABRASER:  Right.  That's --

10:44AM 19        THE COURT:  -- or decides not to go because of the oil

10:44AM 20   spill.  What other sorts of example might be there where

10:44AM 21   somebody might qualify as having either loss of profits or

10:44AM 22   impairment of earning capacity.

10:44AM 23        MS. CABRASER:  Recreational fishermen who also sell the

10:44AM 24   catch -- sell the fish that they catch, who can't go fish, who

10:44AM 25   can't do that, that has an economic component.

10:45AM 1           I think several of the examples of the short

10:45AM 2  form --

10:45AM 3       THE COURT:  Can a recreational fisherman legally sell

10:45AM 4  their catch?  I thought you had to be a commercial fisherman.

10:45AM 5  It's illegal for a restaurant or anybody to buy.

10:45AM 6           I remember several restaurant owners around here

10:45AM 7  being arrested a few years ago for buying fish at the back door

10:45AM 8  from Joe Blow down the street who went fishing.  I don't think

10:45AM 9  that's legal.

10:45AM 10      MS. CABRASER:  Your Honor, there may be circumstances

10:45AM 11  in which it is not legal; there may be circumstances in which

10:45AM 12  it is.

10:45AM 13           We were also concerned by the bleed-over into the

10:45AM 14  subsistence claims, which obviously should not be at issue and,

10:45AM 15  in fact, were part of the settlement.

10:45AM 16           Our point -- it's the same point that Mr. Roy and

10:45AM 17  Mr. Jones both ably made -- we don't believe that the economic

10:45AM 18  components of claims that may also have a recreational

10:45AM 19  component can be dismissed on a Rule 12 basis using

10:45AM 20  hypotheticals.  We think they need to be fleshed out with the

10:46AM 21  facts.

10:46AM 22           We think the examples of the short form joinders

10:46AM 23  that BP selected and listed in its motion at pages 5 and 6

10:46AM 24  illustrate our point.  Some of them are pure recreational loss

10:46AM 25  of enjoyment claims.  A monetary value is not asserted.  They

10:46AM 1    are not easily translated into money.

10:46AM 2               In fact, those are the type of claims that

10:46AM 3    MasterCard would call priceless, and the law has difficulty

10:46AM 4    translating those at this point in time into OPA.

10:46AM 5               But other claims do have monetary components.

10:46AM 6    People that bought vessels that could not use them and were

10:46AM 7    making payments on them in the meantime and were paying for

10:46AM 8    upkeep and maintenance of those vessels in the meantime.  There

10:46AM 9    are least two of those claims that BP selected.

10:46AM 10              Then, of course, they selected a lost deposit, a

10:46AM 11   lost $500 deposit, which, of course, is an out-of-pocket loss.

10:47AM 12   Obviously, a claimant might be able to pursue that claim

10:47AM 13   against the hotel or the charter fishing company; but, we think

10:47AM 14   at this point they shouldn't be foreclosed categorically from

10:47AM 15   also seeking to recover it from BP under OPA.

10:47AM 16              I think the facts of those cases will tell.  We

10:47AM 17   think this is a test case matter rather than a Rule 12 matter.

10:47AM 18              Let me illustrate the point with what I think is

10:47AM 19   a great example.  BP uses the venerable Supreme Court decision

10:47AM 20   of *THE CONQUERER* as the centerpiece of their motion.

10:47AM 21   *THE CONQUERER*, they say, is the root of the rule that the law

10:47AM 22   is hostile to recreational claims.

10:47AM 23              I think a reading of *THE CONQUERER* shows that

10:47AM 24   what the law is hostile to were the claims of the 19th Century

10:47AM 25   millionaire who bought a huge pleasure yacht, registered it in

10:48AM 1   England to avoid American taxes, sailed it to New York harbor,

10:48AM 2   got it registered as an American vessel; and, when it was

10:48AM 3   seized by the tax collector for tonnage taxes, successfully

10:48AM 4   argued at a trial that it was a pleasure vessel, had no

10:48AM 5   commercial use, was registered as a pleasure yacht overseas,

10:48AM 6   and got the tax money back.

10:48AM 7           But that wasn't enough for

10:48AM 8   Mr. Frederick Vanderbilt.  He then sued the tax collector for

10:48AM 9   damages, which he had been charged when the tax collector had

10:48AM 10  to hire a captain, four crewmen and a night watchman to protect

10:48AM 11  the boat while it was in detention.

10:48AM 12          The interesting point I'm trying to make is that

10:48AM 13  after that trial and after the Supreme Court took a look at the

10:48AM 14  clear view that if you have a pleasure vessel, you're not going

10:48AM 15  to get lost commercial use for it, Mr. Vanderbilt got to keep

10:48AM 16  his damages, the same sorts of damages that some of these short

10:49AM 17  form joinder claimants are making for much smaller vessels for

10:49AM 18  payments that they had to make to maintain their boats, to make

10:49AM 19  payments for upkeep, that they couldn't use.

10:49AM 20          They weren't trying to use their boats for

10:49AM 21  commercial use.  They might have been -- if that's the loss of

10:49AM 22  enjoyment, they're not asking for recovery for that; but, they

10:49AM 23  are asking for the economic loss component here.  We think

10:49AM 24  that's covered under OPA (b)(2)(E), and we think, at the very

10:49AM 25  least, the facts ought to be adduced in these cases, at least

10:49AM 1   in some test cases, for further guidance, rather than trying to

10:49AM 2   create bright line rules that go beyond what this Court did in

10:49AM 3   its order and reasons.

10:49AM 4        THE COURT:  All right.  Thank you very much.

10:49AM 5        Mr. Landau.

10:49AM 6        MR. LANDAU:  Thank you, Your Honor.  I'll be very

10:49AM 7   brief.

10:49AM 8        I don't think Ms. Cabraser said anything to

10:49AM 9   answer the fundamental question, which of these six categories

10:50AM 10  of OPA authorizes either of these two categories of recreation

10:50AM 11  claims, the pure loss of enjoyment claims or the loss of

10:50AM 12  deposit claims.

10:50AM 13        She didn't analyze the words of the statute

10:50AM 14  which, under (b)(2)(E), say loss of profits or impairment of

10:50AM 15  earning capacity, and particularly didn't explain how either a

10:50AM 16  psychic loss or even a loss of a deposit could qualify as a

10:50AM 17  loss of profits to the person making the deposit or an

10:50AM 18  impairment of that person's earning capacity.

10:50AM 19        Again, I think it goes down to the basic

10:50AM 20  submission, OPA does not purport to cover any and all

10:50AM 21  categories of alleged economic loss.  It enumerates specific

10:50AM 22  ones, and the question is, are we within any of the specific

10:50AM 23  ones.

10:50AM 24        THE COURT:  You're not trying to eliminate the

10:50AM 25  subsistence claims, for example, are you?

10:50AM 1          MR. LANDAU:  Well, I think the plaintiffs have -- we

10:50AM 2     don't think that a -- the subsistence claims, they are not

10:50AM 3     within the scope of this motion.

10:51AM 4          THE COURT:  That's section (c).

10:51AM 5          MR. LANDAU:  Right.

10:51AM 6          THE COURT:  She expressed some concern that your motion

10:51AM 7     is overly broad, and it might impact the subsistence claims,

10:51AM 8     which, in fact, are part of the settlement, as I recall.

10:51AM 9          MR. LANDAU:  We are not, Your Honor.  We are not.

10:51AM 10         Again, by definition here, we've got to keep

10:51AM 11    going back to the language of the June 12th order ordering

10:51AM 12    briefing on this.  It talks about recreation claims.

10:51AM 13    Recreation is something different than subsistence.

10:51AM 14         So, again, I think the PSC's arguments here are

10:51AM 15    trying to get out of this on definitional grounds, and they are

10:51AM 16    talking about recreational fisherman who sell their fish, I

10:51AM 17    mean, putting aside whether that is legal or illegal.  Then

10:51AM 18    they are trying to basically just say, they are no longer

10:51AM 19    recreational fisherman if they are engaged in trying to sell

10:51AM 20    their fish, even if they may go to jail for trying to do that.

10:51AM 21         By definition, we're not talking about

10:51AM 22    recreation.  What we're trying to do is categorically say, for

10:51AM 23    those people who are just recreational people, those kind of

10:52AM 24    claims are not recognizable under OPA.

10:52AM 25         THE COURT:  So if someone hypothetically could show

10:52AM 1    that maybe they're not a licensed commercial fisherman, but

10:52AM 2    they occasionally fish and sell fish, putting aside whether

10:52AM 3    it's legal or not at this point, they wouldn't necessarily be

10:52AM 4    precluded from attempting to pursue that type of claim down the

10:52AM 5    line in the litigation?  It wouldn't be part of the settlement,

10:52AM 6    as I appreciate it, but it wouldn't necessary be totally

10:52AM 7    precluded by granting your motion?

10:52AM 8            MR. LANDAU:  That's correct, Your Honor.  It's a

10:52AM 9    definitional issue, and we're talking about pure recreational

10:52AM 10   people.

10:52AM 11           THE COURT:  Thank you.

10:52AM 12           MR. LANDAU:  Thank you, Your Honor.

10:52AM 13           THE COURT:  All right.  I'm going to take these under

10:52AM 14   advisement.  We'll issue written orders in due course.

10:52AM 15               Thank everyone, again, for your continued

10:52AM 16   cooperation, civility.

10:52AM 17               Thanks to Transocean for hosting our laser

10:52AM 18   scanning conference yesterday.  I learned more about laser

10:53AM 19   scanning than I ever thought I needed to know; but, it was very

10:53AM 20   interesting.

10:53AM 21               So, everyone, have a good weekend, and we'll see

10:53AM 22   everyone, I guess, next month.

23               (WHEREUPON, at 10:53 a.m., the proceedings were

24   concluded.)

25                           *    *    *

1

2                            REPORTER'S CERTIFICATE

3

4            I, Cathy Pepper, Certified Realtime Reporter, Registered

5    Merit Reporter, Certified Court Reporter of the State of

6    Louisiana, Official Court Reporter for the United States

7    District Court, Eastern District of Louisiana, do hereby

8    certify that the foregoing is a true and correct transcript to

9    the best of my ability and understanding from the record of the

10   proceedings in the above-entitled and numbered matter.

11

12

13                          *s/Cathy Pepper*

14                          Cathy Pepper, CRR, RMR, CCR
                            Certified Realtime Reporter
15                          Registered Merit Reporter
                            Official Court Reporter
16                          United States District Court
                            Cathy_Pepper@laed.uscourts.gov
17

11:44AM
18

19

20

21

22

23

24

25

## $

**$500** [1] - 68:11

## 1

**10** [4] - 25:12, 25:13, 25:15, 62:13
**10-MD-2179** [1] - 1:7
**100** [3] - 2:20, 3:11, 31:11
**1000** [2] - 2:4, 8:13
**10003** [1] - 2:24
**1001** [1] - 5:23
**10153** [1] - 9:13
**106** [1] - 4:18
**10:53** [1] - 72:23
**1100** [1] - 5:20
**12** [21] - 10:5, 24:25, 25:3, 26:22, 27:24, 29:5, 29:6, 31:25, 32:14, 33:1, 34:15, 34:22, 34:24, 35:17, 48:5, 50:23, 51:8, 53:10, 66:11, 67:19, 68:17
**12(b** [1] - 27:22
**12(b)(6** [1] - 32:8
**12.5** [1] - 22:16
**1201** [2] - 7:4, 7:17
**1221** [1] - 7:12
**12th** [4] - 14:25, 42:23, 48:11, 71:11
**13,000** [4] - 33:20, 53:25, 56:17, 58:14
**1300** [2] - 8:5, 9:9
**1331** [1] - 7:21
**14** [2] - 1:8, 11:3
**1601** [1] - 2:12
**1615** [1] - 8:5
**1665** [1] - 7:21
**1700** [1] - 7:17
**188** [1] - 3:4
**19TH** [1] - 8:21
**19th** [1] - 68:24

## 2

**20** [6] - 1:6, 25:12, 25:13, 25:15, 56:9, 62:12
**2000** [2] - 4:11, 8:17
**20004** [1] - 7:4
**20005** [2] - 6:23, 9:9
**20006** [1] - 8:10
**2008** [1] - 33:18
**2009** [1] - 33:18

**2010** [1] - 1:6
**2012** [2] - 1:8, 11:3
**2020** [1] - 8:9
**23** [1] - 3:11
**2304** [1] - 8:21
**23510** [1] - 2:5
**255** [1] - 3:8
**26th** [2] - 44:14, 51:7
**2702(b)(2** [1] - 28:7
**2702(b)(2)(B** [1] - 18:22
**275** [1] - 2:15
**28** [1] - 4:15
**29464** [1] - 4:15
**29TH** [1] - 2:15

## 3

**3** [1] - 2:20
**30** [1] - 25:15
**300** [2] - 6:18, 8:21
**316** [1] - 2:8
**32502** [1] - 2:9
**33134** [1] - 3:8
**355** [1] - 6:4
**3575** [1] - 9:16
**35TH** [1] - 6:4
**36013** [1] - 3:19
**36130** [1] - 4:23
**365** [1] - 8:17
**3650** [1] - 4:7
**36604** [1] - 2:12
**3668** [1] - 1:19
**36TH** [1] - 5:19
**3700** [1] - 5:23
**39201** [1] - 3:5
**39501** [1] - 8:22

## 4

**4** [1] - 2:19
**40** [1] - 10:6
**4000** [1] - 8:13
**4160** [1] - 3:19
**450** [1] - 5:13
**4500** [1] - 7:12

## 5

**5** [1] - 67:23
**50** [1] - 57:13
**500** [2] - 4:23, 9:22
**5000** [1] - 6:14
**504** [1] - 9:23
**519** [1] - 3:22
**5395** [1] - 5:13
**546** [1] - 7:8

**556** [1] - 1:19
**56** [5] - 27:19, 29:5, 31:22, 31:25, 34:19
**580** [1] - 9:16
**589-7779** [1] - 9:23

## 6

**6** [1] - 67:23
**600** [2] - 2:8, 4:4
**60654** [1] - 6:19
**618** [1] - 3:15
**62** [1] - 10:7
**6500** [1] - 33:20
**655** [1] - 6:22
**6657** [1] - 48:11

## 7

**700** [1] - 2:23
**70037** [1] - 3:12
**70084** [1] - 4:19
**701** [3] - 4:7, 5:8, 6:14
**70112** [2] - 4:12, 8:6
**70113** [1] - 1:23
**7013** [1] - 4:4
**70130** [4] - 5:9, 7:8, 8:18, 9:23
**70139** [2] - 4:8, 6:15
**70163** [1] - 5:20
**70502** [1] - 1:20
**70726** [1] - 3:23
**70801** [1] - 3:15
**70804** [1] - 5:5
**75270** [1] - 7:18
**767** [1] - 9:12
**77002** [2] - 5:24, 8:13
**77010** [2] - 7:12, 7:21
**777** [1] - 3:4
**78257** [1] - 2:20
**7TH** [1] - 5:13

## 8

**820** [1] - 1:22
**8397** [1] - 3:11

## 9

**900** [1] - 9:9
**90068** [1] - 9:17
**90071** [1] - 6:5
**909** [1] - 4:11
**94005** [1] - 5:4
**94102** [1] - 5:14
**94111** [1] - 2:16
**999** [1] - 2:4

**9:00** [1] - 1:8
**9TH** [1] - 4:4

## A

**a.m** [1] - 72:23
**A.M** [1] - 1:8
**ability** [1] - 73:9
**able** [6] - 21:2, 43:9, 44:11, 58:10, 68:12
**ably** [1] - 67:17
**above-entitled** [1] - 73:10
**absolutely** [8] - 14:23, 31:18, 36:2, 39:10, 40:5, 41:16, 43:5, 48:4
**abstract** [4] - 20:16, 36:4, 37:7, 40:17
**accepted** [2] - 13:16, 16:25
**accounting** [1] - 33:12
**accurate** [1] - 14:20
**acknowledge** [2] - 35:5, 59:8
**Act** [1] - 57:1
**ACTION** [1] - 1:7
**action** [2] - 14:11, 53:10
**activities** [2] - 62:19, 62:25
**actor** [1] - 50:2
**actual** [2] - 18:7, 23:23
**add** [2] - 29:19, 49:10
**adding** [1] - 31:17
**addition** [2] - 42:13, 54:25
**address** [1] - 13:5
**addressed** [2] - 50:5, 54:16
**adduced** [1] - 69:25
**admiralty** [3] - 45:9, 46:1, 47:15
**admit** [1] - 65:11
**advisement** [1] - 72:14
**advocated** [1] - 51:16
**advocating** [1] - 52:25
**affect** [1] - 57:17
**afterwards** [1] - 55:11
**AGENDA** [1] - 10:3
**aggregate** [1] - 45:19
**ago** [2] - 18:4, 67:7
**agree** [6] - 28:6, 29:14, 29:16, 31:11, 57:23, 59:8
**agreement** [1] - 49:12
**agreements** [5] - 49:12, 54:2, 54:3,

54:22, 57:1
**ahead** [2] - 12:19, 16:21
**aim** [1] - 24:14
**air** [2] - 31:2, 31:5
**AL** [3] - 2:12, 3:19, 4:23
**Alabama** [3] - 42:17, 42:18, 53:13
**ALABAMA** [1] - 4:21
**ALAN** [1] - 7:20
**ALHAMBRA** [1] - 3:8
**ALL** [1] - 1:10
**ALLAN** [1] - 5:7
**allegation** [1] - 18:15
**allegations** [1] - 34:23
**allege** [8] - 12:11, 19:1, 19:19, 22:10, 45:5, 45:12, 63:14, 63:16
**alleged** [12] - 16:8, 16:18, 18:12, 23:17, 27:9, 28:18, 45:6, 49:16, 56:4, 57:12, 70:21
**allegedly** [2] - 28:16, 56:3
**alleges** [4] - 23:22, 38:2, 42:13, 42:14
**alleging** [5] - 38:16, 45:10, 54:5, 54:24, 56:1
**ALLEN** [1] - 3:17
**allow** [5] - 14:5, 18:24, 28:13, 34:3, 58:13
**allowed** [3] - 45:12, 52:20, 58:15
**allows** [2] - 39:8, 64:19
**alluded** [1] - 38:2
**alluding** [1] - 18:3
**almost** [2] - 22:25, 63:18
**ALPHONSO** [1] - 3:3
**ALSO** [1] - 9:19
**ALVAREZ** [1] - 4:11
**ambiguous** [1] - 41:22
**amend** [2] - 54:9, 58:6
**amended** [6] - 16:24, 37:14, 37:16, 41:21, 45:20, 46:17
**AMERICA** [6] - 6:7, 6:7, 6:8, 6:9, 6:11, 6:12
**American** [2] - 69:1, 69:2
**amount** [1] - 52:6
**amusement** [1] - 12:14
**ANADARKO** [2] - 8:3,

8:4
**analysis** [2] - 32:13, 51:14
**analytically** [1] - 63:1
**analyze** [1] - 70:13
**analyzing** [1] - 13:18
**AND** [3] - 5:17, 9:7, 9:15
**ANDREW** [1] - 6:17
**ANGELES** [2] - 6:5, 9:17
**angry** [1] - 56:13
**animosity** [15] - 15:17, 40:18, 41:17, 41:24, 42:5, 42:7, 42:13, 43:14, 43:21, 48:6, 53:10, 55:3, 59:6, 59:20
**answer** [3] - 16:13, 34:10, 70:9
**answered** [2] - 34:25, 50:22
**answers** [1] - 61:7
**anticipate** [2] - 35:7, 35:16
**ANTONIO** [1] - 2:20
**appeal** [1] - 31:25
**APPEARANCES** [9] - 1:15, 2:1, 3:1, 4:1, 5:1, 6:1, 7:1, 8:1, 9:1
**applicable** [1] - 63:15
**applied** [1] - 46:13
**applies** [3] - 32:16, 46:1, 46:3
**apply** [6] - 32:19, 45:2, 45:9, 45:21, 46:24, 47:12
**appraisals** [1] - 32:21
**appreciate** [5] - 45:5, 45:12, 48:4, 55:6, 72:6
**approach** [1] - 27:21
**appropriate** [1] - 60:1
**APRIL** [1] - 1:6
**area** [5] - 17:4, 22:17, 41:19, 42:8, 44:12
**argue** [10] - 12:16, 12:24, 24:3, 31:3, 31:20, 32:20, 33:12, 45:19, 47:24, 65:7
**argued** [3] - 27:23, 28:1, 69:4
**arguendo** [1] - 31:7
**arguing** [2] - 28:2, 57:22
**argument** [16] - 11:13, 20:7, 21:22, 21:24, 26:3, 27:11, 43:20, 44:19, 45:13, 45:16, 47:13, 48:24, 61:24,

64:19, 65:4
**arguments** [5] - 47:14, 50:9, 65:21, 66:6, 71:14
**arise** [1] - 15:15
**arising** [3] - 13:9, 17:3, 17:5
**arrested** [1] - 67:7
**arteries** [1] - 52:11
**ASBILL** [1] - 5:22
**aside** [3] - 16:8, 71:17, 72:2
**asserted** [1] - 67:25
**assist** [1] - 14:15
**assume** [2] - 20:19, 40:19
**assumed** [1] - 40:21
**assuming** [1] - 31:7
**assure** [1] - 56:17
**Atlanta** [4] - 42:8, 42:12, 42:15, 53:13
**attempt** [1] - 66:11
**attempted** [1] - 32:6
**attempting** [5] - 14:20, 16:9, 29:18, 41:1, 72:4
**ATTORNEY** [2] - 4:21, 5:4
**August** [3] - 17:20, 44:14, 51:7
**authority** [1] - 31:8
**authorized** [1] - 16:12
**authorizes** [3] - 20:22, 21:25, 70:10
**AVENUE** [7] - 1:22, 3:22, 4:23, 5:13, 6:4, 7:4, 9:12
**avenues** [1] - 28:6
**avoid** [1] - 69:1
**aware** [2] - 13:7, 31:16

## B

**b)** [1] - 19:12
**b)(2)(B** [5] - 21:11, 31:11, 31:18, 32:4, 43:16
**b)(2)(B)** [2] - 43:22, 43:23
**b)(2)(E** [8] - 21:7, 32:4, 43:20, 58:22, 64:8, 65:15, 69:24, 70:14
**b)(2)(E)** [3] - 18:22, 21:12, 65:16
**B1** [12] - 16:24, 34:22, 37:16, 41:22, 46:2, 46:13, 47:15, 51:8, 54:16, 54:20, 56:1, 60:6

**BABIUCH** [1] - 6:18
**backwards** [1] - 14:12
**bad** [2] - 50:2, 62:1
**balls** [1] - 25:18
**BARBIER** [1] - 1:13
**bargain** [1] - 19:4
**BARR** [1] - 2:8
**BARRIOS** [2] - 4:6, 4:7
**BART** [2] - 4:10, 4:10
**based** [7] - 48:10, 52:9, 53:5, 57:14, 57:21, 59:6, 59:19
**baselines** [1] - 16:25
**basic** [3] - 55:16, 64:22, 70:19
**basis** [4] - 32:25, 44:7, 52:1, 67:19
**BATON** [2] - 3:15, 5:5
**BATTERY** [1] - 2:15
**BAYLEN** [1] - 2:8
**beach** [2] - 12:11, 62:22
**beach-goers** [1] - 12:11
**beaches** [1] - 22:11
**bear** [1] - 13:19
**BEASLEY** [1] - 3:17
**BECK** [1] - 7:10
**BECNEL** [2] - 4:17, 4:18
**beef** [1] - 62:3
**BEFORE** [1] - 1:13
**begin** [1] - 24:11
**behalf** [9] - 11:14, 11:22, 12:10, 12:24, 24:7, 37:15, 48:5, 48:15, 53:8
**behind** [1] - 13:5
**belief** [1] - 13:24
**BELLE** [1] - 3:12
**benefit** [1] - 22:16
**BERNSTEIN** [1] - 2:14
**BERTAUT** [1] - 7:7
**best** [3] - 21:16, 25:7, 73:9
**better** [1] - 33:18
**between** [6] - 15:12, 16:10, 20:6, 49:20, 49:22, 52:2
**beyond** [6] - 23:12, 45:5, 50:10, 65:24, 66:10, 70:2
**big** [2] - 46:22, 52:2
**BINGHAM** [1] - 8:8
**blanket** [1] - 32:25
**BLEAU** [13] - 9:15, 9:16, 53:23, 54:7, 54:15, 54:21, 55:14,

55:20, 56:6, 56:22, 56:24, 57:23, 58:12
**Bleau** [3] - 49:1, 53:23, 58:16
**bleed** [1] - 67:13
**bleed-over** [1] - 67:13
**blight** [1] - 26:13
**block** [2] - 40:11, 59:22
**Blow** [1] - 67:8
**blowout** [1] - 55:9
**BLVD** [1] - 4:15
**board** [1] - 22:15
**boat** [2] - 62:24, 69:11
**boaters** [1] - 12:11
**boats** [2] - 69:18, 69:20
**BOCKIUS** [1] - 8:12
**Boise** [1] - 53:14
**bottom** [1] - 51:25
**bought** [2] - 68:6, 68:25
**BOULEVARD** [1] - 9:16
**BOUNDS** [1] - 2:11
**BOWMAN** [1] - 7:17
**BOX** [3] - 1:19, 3:19, 5:4
**BP** [97] - 6:7, 6:7, 6:8, 6:9, 6:10, 6:11, 6:12, 10:6, 11:21, 11:23, 11:25, 12:4, 12:24, 13:12, 14:20, 14:22, 15:8, 15:11, 15:16, 15:18, 15:22, 16:1, 16:7, 16:9, 16:10, 29:13, 33:6, 34:4, 35:11, 40:4, 40:11, 40:16, 40:18, 40:21, 40:22, 40:25, 41:4, 41:6, 41:10, 41:19, 41:23, 41:24, 42:10, 42:12, 42:24, 43:1, 43:18, 48:5, 48:8, 48:14, 48:15, 48:17, 49:7, 49:13, 49:20, 50:15, 50:16, 50:20, 51:19, 52:10, 53:13, 53:25, 54:2, 54:16, 54:18, 54:21, 55:14, 55:20, 56:3, 56:6, 56:7, 56:8, 56:16, 56:20, 56:25, 57:4, 57:12, 58:1, 58:4, 58:9, 58:14, 59:5, 59:22, 60:6, 60:9, 62:2, 62:9, 65:23, 67:23, 68:9, 68:15, 68:19
**BP's** [6] - 12:3, 25:2,

27:21, 30:14, 65:9, 65:17
**BP-branded** [4] - 11:23, 48:15, 56:7, 56:16
**BRANCH** [1] - 5:12
**brand** [19] - 11:25, 12:6, 16:8, 41:11, 43:1, 48:7, 48:17, 49:9, 49:11, 50:25, 51:2, 51:19, 51:20, 54:22, 54:23, 58:2, 58:10
**branded** [6] - 11:23, 48:15, 53:25, 55:23, 56:7, 56:16
**breach** [2] - 55:18, 56:4
**breached** [2] - 55:15, 58:2
**BREIT** [2] - 2:3, 2:3
**BRENNAN** [1] - 5:22
**BRIAN** [1] - 2:8
**bridge** [2] - 43:12, 44:14
**BRIDGESIDE** [1] - 4:15
**brief** [11] - 12:2, 29:16, 43:17, 48:25, 49:10, 58:19, 63:4, 64:5, 65:12, 70:7
**briefed** [2] - 49:9, 50:4
**briefing** [8] - 11:13, 13:17, 15:1, 17:1, 48:21, 49:19, 52:9, 71:12
**briefly** [3] - 35:22, 36:22, 61:6
**bright** [2] - 27:3, 70:2
**bring** [7] - 13:20, 15:22, 17:21, 17:24, 44:9, 60:2
**bringing** [6] - 17:1, 17:15, 40:13, 41:7, 41:12, 47:6
**brings** [1] - 33:6
**broad** [12] - 24:9, 24:15, 25:2, 32:2, 36:25, 40:18, 41:25, 44:23, 44:25, 45:1, 48:13, 71:7
**broader** [3] - 39:8, 41:20, 65:23
**BROADWAY** [1] - 2:23
**BROCK** [1] - 7:3
**brought** [7] - 14:3, 37:14, 43:14, 44:7, 45:1, 45:21, 50:2
**BRUCE** [1] - 7:17
**BUILDING** [1] - 2:20

**building** [2] - 17:19, 44:15
**BURLING** [1] - 7:3
**business** [5] - 11:24, 15:15, 30:19, 42:25, 48:16
**but-for** [7] - 50:12, 59:7, 59:18, 59:24, 60:8, 61:1
**buy** [1] - 67:5
**buying** [2] - 52:19, 67:7
**BY** [45] - 1:4, 1:18, 1:22, 2:3, 2:8, 2:11, 2:15, 2:18, 2:23, 3:3, 3:7, 3:11, 3:14, 3:18, 3:22, 4:3, 4:7, 4:10, 4:14, 4:18, 4:22, 5:4, 5:7, 5:12, 5:19, 5:23, 6:3, 6:13, 6:17, 6:21, 7:3, 7:7, 7:11, 7:16, 7:20, 8:5, 8:8, 8:12, 8:16, 8:20, 9:8, 9:12, 9:16, 9:25, 9:25

**C**

**c)** [1] - 71:4
**CA** [4] - 2:16, 5:14, 6:5, 9:17
**Cabraser** [2] - 65:9, 70:8
**CABRASER** [9] - 2:14, 2:15, 65:8, 65:14, 65:17, 66:6, 66:18, 66:23, 67:10
**CAHUENGA** [1] - 9:16
**CALDWELL** [1] - 5:4
**CALLED** [1] - 11:5
**CALVIN** [1] - 3:22
**CAMERON** [1] - 7:6
**CAMP** [1] - 5:8
**Canada** [1] - 56:19
**CANAL** [2] - 8:17, 8:17
**cancel** [1] - 63:24
**cannot** [2] - 34:9, 50:22
**capable** [1] - 32:14
**capacity** [7] - 19:19, 21:8, 21:12, 21:25, 22:1, 32:17, 32:19, 32:20, 32:22, 38:9, 39:12, 39:23, 64:11, 65:3, 66:22, 70:15, 70:18
**CAPITOL** [1] - 3:4
**capsizing** [1] - 55:10
**captain** [1] - 69:10
**capture** [1] - 66:1

**care** [1] - 29:6
**careful** [1] - 15:3
**CARL** [1] - 1:13
**CARMELITE** [1] - 7:7
**CARONDELET** [2] - 4:4, 7:8
**carry** [1] - 50:13
**case** [26] - 14:2, 20:9, 24:12, 29:5, 30:20, 31:1, 31:4, 31:6, 31:15, 36:19, 44:19, 45:10, 49:23, 53:12, 55:12, 55:18, 56:10, 57:9, 57:11, 57:12, 57:14, 57:15, 58:5, 68:17
**cases** [21] - 14:16, 27:22, 27:23, 29:21, 30:8, 30:9, 30:15, 31:23, 39:12, 45:2, 45:21, 45:24, 51:17, 53:11, 53:15, 55:13, 61:2, 61:3, 68:16, 69:25, 70:1
**CASES** [1] - 1:10
**cash** [2] - 52:6
**CASTEIX** [1] - 4:6
**casual** [1] - 50:1
**casualty** [1] - 57:18
**catch** [3] - 66:24, 67:4
**categorically** [4] - 37:20, 41:7, 68:14, 71:22
**categories** [15] - 15:5, 19:14, 19:15, 20:3, 37:5, 39:15, 39:25, 45:1, 62:16, 63:6, 63:12, 64:25, 70:9, 70:10, 70:21
**category** [5] - 11:20, 14:22, 38:4, 40:20, 62:21
**Cathy** [2] - 73:4, 73:14
**CATHY** [1] - 9:22
**Cathy_Pepper@laed .uscourts.gov** [1] - 73:16
**cathy_Pepper@laed. uscourts.gov** [1] - 9:24
**causation** [13] - 49:7, 50:10, 50:12, 50:13, 51:13, 51:18, 58:22, 59:2, 59:5, 59:7, 59:12, 59:18, 59:24
**caused** [5] - 11:17, 27:25, 55:2, 55:9, 57:13
**causes** [2] - 53:10, 56:14

**CCR** [2] - 9:22, 73:14
**cede** [1] - 48:25
**CENTER** [1] - 7:11
**centerpiece** [1] - 68:20
**CENTRE** [1] - 5:19
**Century** [1] - 68:24
**certain** [4] - 13:13, 15:5, 23:10, 52:11
**certainly** [12] - 14:8, 14:12, 21:18, 22:21, 29:11, 32:18, 35:16, 41:4, 41:25, 42:1, 47:5, 53:1
**CERTIFICATE** [1] - 73:2
**Certified** [3] - 73:4, 73:5, 73:14
**certify** [1] - 73:8
**chain** [1] - 56:11
**challenge** [3] - 44:10, 44:11, 46:13
**challenging** [7] - 14:16, 36:20, 61:8, 61:14, 61:15, 61:23
**chaos** [1] - 35:2
**charged** [1] - 69:9
**charter** [1] - 68:13
**CHASSE** [1] - 3:12
**Chevron** [3] - 16:11, 41:14, 56:8
**CHICAGO** [1] - 6:19
**child** [1] - 42:6
**Chris** [2] - 12:22, 48:5
**CHRISTOPHER** [1] - 6:22
**CIRCLE** [1] - 3:8
**Circuit's** [1] - 21:17
**circumstance** [1] - 31:21
**circumstances** [3] - 42:9, 67:10, 67:11
**cite** [2] - 30:25, 31:23
**cited** [3] - 30:25, 31:15, 56:10
**CITY** [1] - 2:24
**CIVIL** [2] - 1:7, 5:12
**civility** [1] - 72:16
**claim** [65] - 12:25, 15:23, 16:2, 17:10, 18:1, 18:18, 21:4, 21:6, 21:7, 21:13, 21:14, 21:15, 23:16, 26:14, 28:13, 28:21, 28:23, 30:18, 30:19, 30:22, 32:4, 33:2, 38:17, 39:12, 40:13, 41:1, 41:21, 41:23, 42:7, 42:14, 43:14, 46:5, 46:9, 47:16,

47:19, 47:20, 48:8, 49:15, 49:17, 50:21, 51:3, 51:20, 51:21, 52:3, 52:4, 52:18, 52:20, 54:10, 55:17, 56:1, 56:5, 56:21, 57:21, 58:11, 58:12, 58:13, 63:3, 64:2, 66:4, 68:12, 72:4
**claimant** [6] - 19:25, 22:4, 33:1, 55:5, 56:1, 68:12
**claimants** [7] - 18:1, 19:19, 45:5, 45:18, 47:19, 62:13, 69:17
**CLAIMANTS..............
................** [1] - 10:7
**claims** [124] - 11:11, 11:12, 11:14, 11:19, 11:21, 11:22, 12:4, 12:9, 12:16, 13:4, 13:8, 13:13, 14:21, 15:5, 15:11, 15:13, 15:15, 15:17, 15:18, 15:22, 16:3, 16:5, 16:9, 17:3, 17:5, 17:20, 18:1, 18:6, 18:7, 18:8, 23:16, 24:3, 24:23, 27:5, 28:7, 28:9, 28:14, 32:7, 34:23, 35:2, 35:3, 35:5, 37:14, 37:18, 39:19, 40:4, 40:17, 40:18, 40:21, 41:7, 41:10, 41:12, 41:17, 41:18, 41:19, 41:23, 41:25, 42:1, 42:5, 42:24, 43:3, 43:9, 43:19, 43:21, 44:12, 45:1, 45:12, 45:18, 47:2, 47:8, 48:14, 51:17, 52:3, 52:7, 54:5, 55:5, 58:15, 59:5, 59:10, 59:14, 59:15, 59:16, 59:18, 59:19, 61:13, 61:20, 62:10, 62:15, 62:17, 62:20, 63:2, 63:4, 63:6, 63:15, 63:17, 63:21, 64:6, 64:7, 65:11, 65:13, 65:24, 66:12, 67:14, 67:18, 67:25, 68:2, 68:5, 68:9, 68:22, 68:24, 70:11, 70:12, 70:25, 71:2, 71:7, 71:12, 71:24
**CLAIMS.....................
............** [1] - 10:5
**CLAIMS.....................

.............** [1] - 10:6
**clarify** [3] - 21:16, 23:21, 60:5
**class** [1] - 56:18
**clear** [9] - 25:25, 30:11, 40:15, 41:6, 48:4, 48:5, 57:15, 60:13, 69:14
**clearly** [2] - 20:24, 24:14
**client** [1] - 56:7
**clients** [1] - 54:5
**close** [10] - 25:12, 26:4, 26:8, 26:9, 26:19, 27:1, 27:14, 34:20, 34:21, 35:16
**Coast** [6] - 15:9, 15:19, 42:16, 42:18, 42:20, 42:21
**coast** [1] - 55:21
**coastal** [2] - 35:3, 35:6, 35:15
**coincidentally** [1] - 66:12
**collapsing** [1] - 39:16
**collector** [3] - 69:3, 69:8, 69:9
**coming** [2] - 42:15, 42:20
**comma** [5] - 19:23, 19:24, 29:15, 31:12, 36:13
**commercial** [5] - 67:4, 69:5, 69:15, 69:21, 72:1
**common** [2] - 15:18, 66:7
**common-law** [1] - 66:7
**commonly** [1] - 32:21
**COMPANY** [3] - 6:8, 8:4
**company** [2] - 57:11, 68:13
**compensate** [2] - 39:4, 58:3
**compensated** [2] - 33:9, 57:4
**compensation** [3] - 24:16, 34:3, 34:9
**complaint** [12] - 16:24, 25:5, 34:22, 37:16, 41:22, 42:4, 45:20, 46:14, 46:18, 54:9, 54:16, 58:6
**complaints** [1] - 54:16
**complicated** [1] - 14:16
**complicating** [1] - 14:13

component [3] - 66:25, 67:19, 69:23
components [3] - 66:11, 67:18, 68:5
compromise [1] - 19:4
COMPUTER [1] - 9:25
concede [2] - 60:8, 60:12
conceded [3] - 34:4, 50:10, 63:18
concedes [1] - 60:7
conceding [2] - 33:7, 66:3
concern [2] - 65:17, 71:6
concerned [2] - 65:22, 67:13
concluded [2] - 36:19, 72:24
concurrent [1] - 57:25
condo [2] - 63:23, 64:14
condominium [1] - 66:16
conduct [2] - 56:12, 61:17
conference [1] - 72:18
confess [1] - 40:20
confident [1] - 60:22
confirm [2] - 14:19, 23:21
confirms [1] - 19:7
confronted [1] - 37:3
Congress [1] - 37:9
Congressional [1] - 19:4
conjunction [2] - 12:2, 45:6
CONQUERER [3] - 68:20, 68:21, 68:23
consider [1] - 43:2
considered [1] - 32:21
consistent [2] - 21:17, 25:24
construction [1] - 36:3
construing [1] - 37:8
consumer [11] - 15:17, 40:18, 41:17, 41:24, 42:5, 42:7, 42:13, 43:13, 43:21, 59:6, 59:20
consumers [2] - 55:2, 56:14
containment [1] - 55:11
contaminant [1] - 11:17
context [9] - 20:13, 31:25, 32:9, 36:5,

50:23, 53:6, 57:9, 60:9, 66:9
continue [1] - 34:17
continued [1] - 72:15
CONTINUED [8] - 2:1, 3:1, 4:1, 5:1, 6:1, 7:1, 8:1, 9:1
contract [4] - 49:15, 49:17, 49:20, 54:5
contractual [4] - 16:14, 49:11, 49:12, 49:23
contrasts [2] - 20:11, 20:18
controlling [1] - 40:24
controversy [1] - 60:4
convenience [2] - 15:9, 15:11
convert [1] - 57:21
cooperation [1] - 72:16
CORAL [1] - 3:8
COREY [1] - 4:22
CORPORATION [3] - 6:9, 7:7, 8:3
correct [16] - 14:23, 22:13, 28:10, 33:5, 33:12, 35:13, 41:16, 44:2, 46:7, 47:17, 48:10, 60:25, 63:25, 65:14, 72:8, 73:8
correctly [1] - 32:7
COSSICH [2] - 3:10, 3:11
costs [2] - 19:10, 63:9
COUNSEL [1] - 1:18
countries [1] - 56:20
country [1] - 40:22
couple [2] - 35:20, 58:17
course [6] - 14:11, 23:7, 61:17, 68:10, 68:11, 72:14
COURT [120] - 1:1, 9:22, 11:5, 11:9, 12:19, 13:2, 14:17, 14:19, 15:8, 16:4, 14:19, 15:8, 16:4, 21:1, 22:8, 23:24, 24:2, 24:8, 24:22, 25:7, 25:25, 26:12, 26:17, 27:3, 27:8, 27:13, 28:5, 28:12, 29:21, 29:24, 30:3, 30:7, 30:10, 30:12, 32:18, 33:3, 33:10, 33:13, 34:10, 35:5, 35:9, 35:14, 35:19, 35:24, 37:21, 38:1, 38:11, 39:3, 39:7,

39:11, 40:1, 40:3, 40:6, 40:19, 41:3, 41:9, 42:2, 42:4, 42:12, 43:3, 43:6, 43:11, 43:24, 44:5, 44:18, 45:4, 45:24, 46:11, 47:13, 47:18, 47:22, 47:24, 48:10, 48:20, 48:22, 49:3, 49:15, 50:6, 50:20, 50:24, 51:2, 51:6, 51:9, 52:14, 53:19, 53:21, 54:4, 54:12, 54:19, 55:4, 55:16, 55:25, 56:20, 56:23, 57:9, 58:7, 58:16, 59:8, 59:14, 60:17, 60:24, 62:5, 62:11, 63:14, 63:22, 65:5, 65:7, 65:10, 65:16, 66:3, 66:14, 66:19, 67:3, 70:4, 70:24, 71:4, 71:6, 71:25, 72:11, 72:13
court [1] - 43:9
Court [37] - 11:12, 11:13, 12:3, 12:9, 12:22, 13:7, 13:16, 13:21, 13:25, 14:5, 14:9, 15:7, 16:24, 17:19, 23:6, 30:22, 31:4, 31:5, 44:13, 49:5, 50:9, 51:12, 52:12, 52:25, 53:2, 53:23, 54:10, 57:8, 60:11, 68:19, 69:13, 70:2, 73:5, 73:6, 73:7, 73:15, 73:16
Court's [10] - 11:22, 16:23, 17:16, 17:20, 45:20, 48:11, 62:8, 65:12, 65:18, 65:20
courtroom [1] - 65:22
courts [1] - 61:3
cover [2] - 22:23, 70:20
covered [2] - 44:4, 69:24
covers [1] - 13:8
COVINGTON [1] - 7:3
CRAFT [1] - 2:18
create [2] - 59:10, 70:2
crewmen [1] - 69:10
crisis [3] - 55:1, 57:24, 57:25
critical [5] - 13:22, 18:23, 19:6, 23:15, 43:2
cross [1] - 43:12
crossed [1] - 44:14

crosses [1] - 62:7
CROW [1] - 3:17
CRR [2] - 9:22, 73:14
crux [1] - 20:7
CUNNINGHAM [2] - 2:11, 2:11

**D**

DALLAS [1] - 7:18
damage [17] - 16:8, 16:9, 27:16, 27:25, 28:19, 30:1, 30:4, 39:5, 44:1, 46:5, 50:25, 51:20, 51:22, 56:4, 57:18, 58:11
damaged [2] - 49:14, 51:2
damages [29] - 11:16, 11:24, 12:12, 13:9, 19:10, 19:12, 19:14, 19:22, 21:25, 23:11, 24:17, 36:25, 37:4, 37:5, 37:18, 42:25, 48:7, 48:16, 56:2, 63:9, 63:12, 64:19, 64:25, 65:25, 69:9, 69:16
danger [2] - 60:3, 61:19
DANIEL [2] - 4:17, 4:18
DAUPHIN [1] - 2:12
DAWN [1] - 4:7
DC [5] - 6:23, 7:4, 8:10, 9:9, 12:23
deadline [1] - 34:17
deal [1] - 12:8
DEALER [1] - 10:6
dealer [22] - 11:21, 12:4, 15:8, 15:10, 15:17, 15:22, 16:1, 40:4, 40:11, 40:12, 40:16, 40:18, 40:22, 40:25, 41:15, 42:10, 42:12, 42:24, 48:14, 52:21, 62:10
dealer's [1] - 48:8
dealers [35] - 14:22, 15:18, 16:15, 41:5, 41:6, 41:10, 41:19, 41:24, 42:24, 49:7, 49:12, 49:20, 50:15, 50:16, 50:20, 51:19, 52:10, 52:17, 53:25, 54:1, 54:18, 54:21, 55:14, 56:6, 56:16, 56:17, 56:20, 56:25, 57:4, 57:5, 57:6,

58:4, 58:9, 58:14, 59:6
dealers' [1] - 54:16
dealing [3] - 11:10, 12:6, 51:18
decade [1] - 23:5
decide [4] - 14:9, 44:21, 59:2, 60:16
decided [3] - 17:21, 32:14, 61:3
decides [1] - 66:19
decision [5] - 21:19, 57:17, 57:20, 59:20, 68:19
decisions [4] - 57:12, 57:17, 61:15, 61:23
decline [2] - 15:16, 40:14
deed [1] - 56:7
deemed [4] - 38:25, 39:2, 46:18, 65:2
DEEPWATER [3] - 1:5, 5:17, 5:18
Deepwater [1] - 45:8
defend [1] - 64:8
defending [1] - 64:2
defenses [1] - 16:14
defer [1] - 53:9
define [2] - 18:6, 51:13
defined [3] - 22:17, 22:18, 31:13
definition [3] - 38:17, 71:10, 71:21
definitional [5] - 14:25, 18:5, 40:9, 71:15, 72:9
definitive [1] - 16:13
DEGRAVELLES [1] - 3:14
demanding [1] - 50:11
DENHAM [1] - 3:23
DENISE [1] - 8:12
deny [1] - 53:9
DEPARTMENT [1] - 5:11
deposit [14] - 62:23, 63:21, 63:22, 63:24, 64:7, 64:13, 64:15, 65:2, 66:15, 68:10, 68:11, 70:12, 70:16, 70:17
depressed [1] - 33:8
described [8] - 11:12, 11:14, 11:21, 11:22, 12:9, 15:24, 28:14, 48:14
descriptions [1] - 48:13
designated [2] -

11:11, 11:21
**designation** [1] - 25:22
**designed** [1] - 39:4
**destroy** [2] - 26:12, 27:16
**destroyed** [2] - 28:16, 38:17
**destruction** [9] - 19:24, 20:22, 22:2, 22:11, 30:4, 36:7, 36:14, 36:16, 38:14
**detail** [1] - 37:5
**detention** [1] - 69:11
**determination** [1] - 52:9
**determinations** [1] - 49:6
**developed** [1] - 26:23
**DEXTER** [1] - 4:23
**dicta** [1] - 30:21
**difference** [4] - 33:13, 52:2, 52:5, 52:6
**different** [21] - 16:17, 18:21, 22:21, 25:10, 25:11, 25:16, 26:7, 26:23, 36:9, 42:9, 44:9, 44:19, 44:20, 45:6, 45:11, 48:23, 52:12, 54:19, 55:12, 56:5, 71:13
**difficult** [1] - 50:7
**difficulty** [1] - 68:3
**diminished** [4] - 18:16, 28:17, 35:10, 38:3
**diminishment** [1] - 34:7
**diminution** [3] - 12:6, 29:10, 41:11
**direct** [1] - 56:15
**directed** [5] - 12:5, 15:14, 15:17, 23:20, 23:22
**directly** [2] - 16:6, 42:20
**disagree** [5] - 30:2, 30:5, 30:7, 30:8, 30:14
**discharge** [3] - 31:1, 31:2, 31:5
**discretely** [1] - 15:5
**discuss** [1] - 20:15
**discussed** [1] - 40:7
**discussing** [2] - 18:4, 64:9
**discussion** [4] - 30:21, 43:22, 51:16, 58:20
**dismiss** [11] - 12:4,

13:6, 13:12, 14:21, 17:12, 37:13, 40:3, 40:21, 43:18, 43:19, 47:7
**Dismiss** [2] - 17:14, 58:21
**dismissal** [1] - 66:11
**dismissed** [4] - 15:3, 27:24, 43:7, 67:19
**dispute** [2] - 40:8, 44:3
**distinct** [1] - 15:21
**distinction** [2] - 52:25, 53:3
**distinguish** [6] - 15:12, 16:10, 55:18, 55:25, 58:8, 61:13
**distinguishable** [1] - 31:24
**distinguishes** [1] - 20:5
**District** [3] - 73:7, 73:16
**DISTRICT** [3] - 1:1, 1:2, 1:13
**divers** [1] - 12:10
**DIVISION** [1] - 5:12
**Dock** [9] - 17:6, 17:23, 24:15, 24:19, 27:4, 39:11, 46:3, 46:4, 49:21
**Document** [1] - 48:11
**DOCUMENT** [1] - 1:9
**DOMENGEAUX** [1] - 1:18
**DOMINION** [2] - 2:4, 2:19
**DON** [1] - 6:13
**DONALD** [1] - 7:16
**done** [1] - 62:2
**door** [1] - 67:7
**DOUGLAS** [1] - 5:8
**down** [20] - 23:2, 33:14, 33:15, 33:19, 33:25, 40:12, 42:15, 42:18, 42:20, 45:3, 49:8, 55:24, 56:7, 59:22, 63:22, 64:13, 67:8, 70:19, 72:4
**DOYEN** [1] - 6:4
**draw** [2] - 27:3, 50:7
**DRAWER** [1] - 4:19
**drawn** [2] - 53:1, 58:9
**DRESCHER** [1] - 2:3
**drew** [2] - 23:10, 37:9
**drill** [1] - 30:17
**DRILLING** [1] - 5:17
**DRIVE** [2] - 2:4, 2:19
**drive** [1] - 42:17
**driving** [1] - 59:21

**drop** [1] - 29:8
**dropped** [1] - 29:10
**dry** [6] - 45:11, 55:1, 56:12, 57:7, 57:25, 61:15
**Dry** [9] - 17:6, 17:23, 24:15, 24:19, 27:4, 39:11, 46:3, 46:4, 49:21
**dubious** [1] - 20:21
**due** [4] - 22:2, 24:12, 28:4, 72:14
**DUNBAR** [2] - 8:16, 8:20
**duty** [8] - 54:22, 55:14, 55:15, 55:17, 55:21, 56:3, 56:5, 58:2

### E

**E&P** [1] - 8:4
**E)** [3] - 30:20, 38:11, 39:21
**early** [1] - 25:3
**earning** [18] - 19:19, 21:8, 21:12, 21:25, 22:1, 32:17, 32:19, 32:20, 32:22, 38:9, 39:12, 39:22, 64:11, 64:15, 65:3, 66:22, 70:15, 70:18
**easily** [2] - 24:25, 68:1
**EAST** [1] - 3:4
**EASTERN** [1] - 1:2
**Eastern** [1] - 73:7
**economic** [45] - 13:8, 15:13, 18:8, 18:13, 18:25, 19:23, 20:6, 20:8, 20:11, 20:14, 20:16, 20:18, 20:20, 20:22, 24:17, 36:7, 36:8, 36:9, 36:12, 36:13, 36:16, 36:17, 36:25, 37:19, 37:22, 38:6, 38:8, 38:13, 38:15, 38:22, 39:17, 39:21, 48:8, 49:22, 51:22, 56:1, 62:24, 64:19, 66:1, 66:11, 66:25, 67:17, 69:23, 70:21
**EDWARDS** [1] - 1:18
**effort** [1] - 63:5
**efforts** [1] - 55:11
**Egorov** [1] - 56:10
**either** [8] - 17:24, 20:3, 27:5, 39:24, 65:2, 66:21, 70:10, 70:15

**elements** [1] - 14:1
**eliminate** [1] - 70:24
**eliminates** [1] - 46:3
**ELIZABETH** [1] - 2:15
**Elizabeth** [1] - 65:9
**Ellis** [1] - 12:23
**ELLIS** [2] - 6:17, 6:21
**Ellison** [1] - 62:5
**ELM** [1] - 7:17
**encompass** [4] - 38:25, 40:11, 41:19, 41:25
**end** [3] - 24:14, 31:4, 50:12
**Energy** [1] - 53:24
**ENERGY** [3] - 5:19, 7:15, 9:15
**engage** [2] - 62:19, 62:25
**engaged** [1] - 71:19
**England** [1] - 69:1
**enjoy** [2] - 62:22
**enjoyable** [1] - 62:19
**enjoyment** [11] - 12:12, 62:16, 63:4, 63:17, 63:19, 64:6, 65:25, 66:4, 67:25, 69:22, 70:11
**ensure** [1] - 24:16
**entered** [1] - 51:16
**entire** [1] - 61:19
**entirely** [1] - 64:8
**entities** [2] - 11:23, 48:15
**entitled** [1] - 73:10
**enumerates** [2] - 64:25, 70:21
**envision** [1] - 29:2
**equal** [1] - 22:1
**equity** [1] - 29:9
**ERVIN** [1] - 3:7
**ESPY** [1] - 3:3
**ESQUIRE** [52] - 1:18, 1:22, 2:3, 2:8, 2:11, 2:15, 2:18, 2:19, 2:23, 3:3, 3:4, 3:7, 3:11, 3:14, 3:18, 3:22, 4:3, 4:7, 4:10, 4:11, 4:14, 4:18, 4:22, 4:22, 5:7, 5:8, 5:12, 5:19, 5:23, 6:3, 6:4, 6:13, 6:17, 6:18, 6:21, 6:22, 7:3, 7:7, 7:11, 7:16, 7:16, 7:17, 7:20, 8:5, 8:8, 8:9, 8:12, 8:16, 8:20, 9:8, 9:12, 9:16
**essence** [1] - 61:24
**essentially** [2] - 47:14, 65:14

**establish** [1] - 59:18
**established** [1] - 16:24
**establishes** [1] - 19:2
**estate** [1] - 33:24
**etcetera** [1] - 12:11
**evaluate** [1] - 53:5
**EVANS** [1] - 8:16
**event** [2] - 23:3, 25:20
**events** [1] - 56:11
**everywhere** [1] - 42:18
**evidence** [1] - 52:10
**exact** [2] - 27:15, 28:12
**exactly** [7] - 16:20, 31:3, 36:18, 43:18, 48:10, 49:18, 57:10
**example** [13] - 38:2, 40:23, 46:1, 49:6, 52:10, 57:10, 57:11, 57:12, 66:14, 66:15, 66:20, 68:19, 70:25
**examples** [2] - 67:1, 67:22
**except** [1] - 44:18
**EXCESS** [1] - 8:16
**excludes** [1] - 40:25
**exclusively** [1] - 63:21
**excuse** [1] - 46:11
**exist** [3] - 29:20, 48:8, 49:8
**exists** [2] - 31:17, 49:24
**exit** [1] - 42:20
**expand** [1] - 66:7
**expense** [1] - 64:14
**explain** [2] - 63:5, 70:15
**EXPLORATION** [1] - 6:10
**explosion** [1] - 55:9
**expressed** [1] - 71:6
**expressly** [2] - 42:4, 48:12
**extend** [2] - 59:12, 66:7
**extent** [4] - 43:19, 51:19, 57:23, 61:8
**Exxon** [1] - 16:11
**eyes** [1] - 52:12

### F

**fabric** [1] - 61:20
**face** [1] - 42:9
**fact** [16] - 14:8, 19:7, 22:19, 25:19, 30:14, 32:8, 32:11, 32:24,

35:8, 35:17, 52:11, 52:12, 57:20, 67:15, 68:2, 71:8

**facts** [12] - 24:12, 25:4, 25:7, 26:16, 26:17, 26:23, 27:15, 47:11, 53:7, 67:21, 68:16, 69:25

**factual** [4] - 32:13, 51:13, 53:16, 59:7

**factually** [1] - 52:8

**fair** [1] - 57:6

**fairly** [1] - 65:3

**fall** [11] - 16:23, 24:10, 28:9, 38:4, 39:19, 39:20, 39:21, 39:24, 46:20, 62:15, 65:11

**FANNIN** [1] - 5:23

**far** [3] - 25:11, 59:11, 59:22

**favor** [1] - 59:9

**FAYARD** [2] - 3:21, 3:22

**feature** [1] - 66:13

**FEDERAL** [1] - 5:11

**federal** [1] - 66:7

**feet** [3] - 25:12, 25:13, 25:15

**few** [4] - 28:25, 29:24, 57:5, 67:7

**field** [1] - 64:5

**FIFTEENTH** [1] - 6:22

**Fifth** [1] - 21:17

**FIFTH** [1] - 9:12

**FILED** [1] - 9:19

**finalized** [1] - 13:10

**finalizing** [1] - 59:3

**finally** [1] - 35:1

**FINANCIAL** [1] - 9:7

**financing** [1] - 29:10

**fire** [4] - 55:9, 61:14, 61:16, 61:23

**first** [11] - 17:2, 17:3, 20:4, 20:20, 29:4, 36:23, 40:20, 58:20, 62:16, 63:3

**fish** [7] - 66:24, 67:7, 71:16, 71:20, 72:2

**fisherman** [7] - 12:10, 39:10, 67:3, 67:4, 71:16, 71:19, 72:1

**fishermen** [1] - 66:23

**fishing** [5] - 62:17, 62:18, 62:22, 67:8, 68:13

**fit** [5] - 18:18, 20:2, 22:5, 27:10, 63:6

**FITCH** [1] - 8:9

**five** [5] - 13:1, 35:23, 53:21, 55:21, 63:20

**five-page** [1] - 63:20

**FL** [2] - 2:9, 3:8

**flesh** [2] - 53:7, 53:11

**flesh-out** [1] - 53:7

**fleshed** [1] - 67:20

**FLOOR** [5] - 2:15, 4:4, 5:13, 5:19, 6:4

**Florida** [1] - 42:18

**FLORIDA** [1] - 3:22

**fluctuated** [1] - 23:5

**fluctuation** [1] - 18:11

**focused** [2] - 17:9, 17:18

**focuses** [1] - 63:21

**focusing** [4] - 47:16, 48:24, 49:9, 66:10

**folks** [3] - 22:9, 22:24, 47:19

**FOR** [14] - 1:17, 2:3, 4:21, 5:3, 5:11, 5:16, 6:7, 7:6, 7:14, 8:3, 8:12, 8:15, 9:3, 9:15

**foreclosed** [2] - 17:6, 68:14

**foregoing** [1] - 73:8

**foreseeable** [1] - 56:15

**form** [3] - 67:2, 67:22, 69:17

**forth** [3] - 15:1, 41:13, 42:4

**forward** [1] - 35:3

**foundation** [1] - 17:19

**foundational** [1] - 44:10

**four** [1] - 69:10

**FOX** [1] - 9:15

**franchise** [5] - 49:11, 54:2, 54:22, 57:1, 57:2

**FRANCISCO** [2] - 2:16, 5:14

**FRANK** [1] - 3:4

**frankly** [6] - 15:4, 21:21, 23:1, 30:21, 38:23, 47:1

**fraud** [1] - 55:2

**Frederick** [1] - 69:8

**freeway** [1] - 42:19

**FRIDAY** [2] - 1:8, 11:3

**FRILOT** [1] - 5:18

**front** [1] - 45:24

**FRUGE** [1] - 3:14

**fuels** [2] - 11:23, 48:15

**full** [4] - 24:16, 35:23, 53:7, 53:16

**fundamental** [2] - 43:24, 70:9

**fundamentally** [1] - 23:9

**future** [1] - 47:9

# G

**GABLES** [1] - 3:8

**GALLAGHER** [1] - 7:11

**gas** [3] - 50:17, 52:19

**GASAWAY** [1] - 6:21

**gaseous** [2] - 31:2, 31:5

**GATE** [1] - 5:13

**gee** [2] - 47:10, 61:22

**General** [3] - 17:4, 17:5, 17:22

**general** [5] - 14:16, 23:17, 45:20, 58:23, 64:18

**GENERAL** [1] - 5:4

**GENERAL'S** [1] - 4:21

**generally** [1] - 28:17

**geographical** [3] - 49:6, 51:4, 52:16

**Georgia** [1] - 42:17

**given** [2] - 34:5, 47:11

**GODWIN** [3] - 7:15, 7:16, 7:20

**goers** [1] - 12:11

**Goldberg** [1] - 53:14

**GOLDEN** [1] - 5:13

**GONZALES** [1] - 3:7

**GONZALEZ** [1] - 3:7

**goodwill** [1] - 54:23

**GOTSHAL** [2] - 9:8, 9:11

**governed** [1] - 54:2

**GOVERNMENT** [1] - 5:11

**graft** [1] - 29:19

**GRAND** [1] - 6:4

**grant** [3] - 22:16, 41:5, 41:9

**granted** [3] - 32:9, 43:7, 47:7

**granting** [1] - 72:7

**grants** [1] - 36:25

**gray** [1] - 46:21

**great** [3] - 34:7, 51:11, 68:19

**greatly** [1] - 21:2

**GREENWALD** [1] - 2:23

**grounds** [2] - 36:21, 71:15

**guarantee** [1] - 62:23

**GUERRA** [1] - 2:18

**guess** [13] - 15:11, 26:21, 26:25, 27:4, 29:4, 33:17, 34:17,

44:22, 45:15, 46:15, 46:23, 50:15, 72:22

**guidance** [1] - 70:1

**GUIDRY** [1] - 8:5

**Gulf** [16] - 12:13, 15:9, 15:16, 15:19, 23:18, 40:12, 42:10, 42:16, 42:18, 42:20, 42:21, 52:11, 53:13, 57:14, 61:15, 63:23

**GULF** [1] - 1:5

**GULFPORT** [1] - 8:22

# H

**half** [1] - 28:23

**HALLIBURTON** [1] - 7:14

**hand** [1] - 20:6

**handling** [1] - 57:25

**harbor** [1] - 69:1

**hard** [1] - 22:25

**harm** [2] - 39:16, 56:16

**HAYCRAFT** [1] - 6:13

**HB406** [1] - 9:22

**hear** [4] - 24:2, 36:19, 44:8, 64:3

**heard** [1] - 31:10

**HEARD** [1] - 1:13

**heart** [1] - 36:24

**heavy** [3] - 14:1, 14:7, 15:6

**heck** [1] - 42:16

**HEIMANN** [1] - 2:14

**held** [1] - 45:8

**hereby** [1] - 73:7

**HERMAN** [4] - 1:21, 1:22, 24:5

**high** [1] - 25:11

**highly** [3] - 32:8, 32:13, 51:13

**HIGHWAY** [1] - 3:11

**highway** [1] - 42:15

**hire** [1] - 69:10

**HOLDINGS** [3] - 5:16, 6:11, 9:4

**HOLTHAUS** [1] - 3:14

**home** [3] - 29:10, 55:21, 55:22

**HONEYCUTT** [1] - 3:21

**Honor** [83] - 11:8, 12:18, 14:23, 15:14, 15:23, 16:12, 16:20, 18:4, 18:17, 18:19, 18:24, 21:6, 22:13, 23:15, 23:21, 24:4, 24:6, 24:24, 26:6,

27:18, 29:7, 30:25, 31:16, 32:7, 32:15, 33:6, 34:2, 34:13, 34:20, 35:1, 35:13, 35:22, 36:2, 36:22, 37:24, 40:2, 40:8, 41:2, 41:5, 42:22, 43:5, 43:10, 44:2, 44:25, 45:15, 46:15, 46:23, 47:17, 47:21, 48:1, 48:3, 48:25, 49:19, 50:19, 50:23, 51:5, 53:9, 54:7, 54:15, 56:9, 58:18, 59:1, 59:13, 60:5, 60:6, 60:9, 60:15, 60:22, 61:1, 62:14, 63:25, 64:22, 65:4, 65:8, 65:14, 66:6, 66:8, 67:10, 70:6, 71:9, 72:8, 72:12

**Honor's** [2] - 37:1, 61:12

**HONORABLE** [1] - 1:13

**hopefully** [1] - 14:6

**Horizon** [1] - 45:8

**HORIZON** [1] - 1:5

**hostile** [2] - 68:22, 68:24

**hosting** [1] - 72:17

**hotel** [3] - 62:23, 66:16, 68:13

**house** [3] - 22:6, 26:13, 39:24

**housing** [1] - 23:5

**HOUSTON** [5] - 5:24, 7:11, 7:12, 7:21, 8:13

**huge** [1] - 68:25

**hypothesize** [1] - 25:8

**hypothetical** [2] - 26:18, 64:14

**hypothetically** [1] - 71:25

**hypotheticals** [1] - 67:20

# I

**Idaho** [1] - 53:14

**identify** [1] - 12:19

**II** [1] - 55:6

**III** [1] - 55:7

**IL** [1] - 6:19

**illegal** [2] - 67:5, 71:17

**illustrate** [1] - 67:24, 68:18

**image** [2] - 55:22,

55:23
**imagine** [1] - 50:17
**impact** [1] - 71:7
**impairment** [10] -
22:1, 32:16, 32:19,
38:8, 39:22, 64:11,
65:2, 66:22, 70:14,
70:18
**impetus** [1] - 56:11
**implications** [2] -
46:25, 58:24
**important** [3] - 12:1,
13:19, 36:3
**IMPREVENTO** [1] -
2:3
**improper** [1] - 44:17
**IN** [4] - 1:4, 1:5, 9:19
**inability** [2] - 12:13,
62:25
**inadvertently** [1] -
66:1
**INC** [14] - 5:17, 5:18,
6:7, 6:8, 6:9, 6:10,
6:12, 7:15, 9:3, 9:4,
9:5, 9:6, 9:7, 9:8
**incident** [1] - 19:11
**include** [2] - 22:15,
38:21
**included** [2] - 43:8,
62:4
**including** [6] - 11:24,
12:12, 42:25, 48:16,
59:14, 63:9
**income** [4] - 11:24,
41:13, 42:25, 48:16
**indeed** [2] - 32:13,
46:23
**individual** [5] - 37:15,
45:2, 45:18, 47:10,
53:11
**inexplicably** [1] -
51:20
**inextricable** [1] -
61:17
**inextricably** [2] -
51:23, 51:24
**inferring** [1] - 52:15
**initial** [2] - 12:2, 56:11
**injury** [26] - 17:7,
18:13, 19:23, 20:6,
20:8, 20:12, 20:14,
20:16, 20:18, 21:19,
21:20, 22:2, 29:14,
29:16, 30:3, 31:9,
31:12, 31:13, 31:18,
36:6, 36:9, 36:17,
38:20, 38:21
**insert** [1] - 32:6
**instance** [2] - 16:16,
29:7

**instances** [1] - 25:22
**instructive** [1] - 53:18
**intangible** [1] - 38:18
**intended** [1] - 48:7
**intensive** [1] - 52:8
**intent** [2] - 14:14
**intention** [1] - 28:24
**interest** [1] - 13:11
**interesting** [2] - 69:12,
72:20
**INTERESTS** [2] - 4:21,
5:11
**interfere** [1] - 59:3
**interfering** [1] - 13:15
**INTERNATIONAL** [2] -
7:6, 9:7
**interpret** [4] - 29:21,
30:3, 36:17, 38:21
**interpretation** [1] -
30:14
**interruption** [1] -
30:19
**Interstate** [2] - 42:14,
52:19
**intertwined** [4] -
51:21, 51:24, 52:21
**intervening** [1] - 28:2,
56:14
**intimate** [1] - 49:23
**invite** [1] - 60:9
**invokes** [1] - 43:16
**invoking** [1] - 18:21
**involved** [1] - 49:13
**involving** [1] - 18:7
**Isaac** [1] - 25:18
**issue** [22] - 12:5, 18:5,
19:17, 22:21, 25:3,
25:16, 25:17, 30:22,
31:22, 38:23, 43:24,
44:22, 56:25, 58:22,
58:24, 60:2, 60:11,
60:12, 60:16, 67:14,
72:9, 72:14
**issues** [7] - 14:10,
15:23, 16:5, 16:17,
17:14, 24:19, 59:25
**it'd** [1] - 26:5
**ITEMS** [1] - 10:3
**itself** [6] - 13:23,
28:15, 29:14, 39:5,
45:6, 62:7

**J**

**JACKSON** [1] - 3:5
**jail** [1] - 71:20
**JAMES** [2] - 1:18, 5:4
**JEFFERSON** [1] -
1:19

**JEFFREY** [1] - 2:3
**JENNY** [1] - 7:16
**Jim** [1] - 48:2
**Joe** [2] - 59:20, 67:8
**joinder** [1] - 69:17
**joinders** [1] - 67:22
**Jones** [8] - 24:5, 24:6,
35:19, 35:25, 36:20,
36:23, 45:23, 67:17
**JONES** [28] - 3:18,
24:4, 24:6, 24:9,
24:24, 25:9, 26:6,
26:15, 26:21, 27:7,
27:12, 27:18, 28:11,
29:4, 29:23, 30:2,
30:5, 30:9, 30:11,
30:13, 32:20, 33:5,
33:12, 34:2, 34:13,
35:7, 35:12, 35:15
**Jones's** [3] - 36:12,
37:10, 38:1
**JOSEPH** [1] - 4:14
**JR** [8] - 3:11, 3:22,
4:3, 4:17, 4:18, 7:17
**JUDGE** [1] - 1:13
**Judge** [5] - 20:9,
21:16, 21:18, 36:18,
62:5
**jumping** [1] - 14:21
**June** [4] - 14:25,
42:23, 48:11, 71:11
**jurisdiction** [1] - 45:9
**JUSTICE** [1] - 5:11
**juxtaposes** [1] - 36:6
**juxtaposition** [1] -
20:10

**K**

**Kalamazoo** [3] - 35:9,
52:21, 59:21
**KALBAC** [1] - 3:7
**KANE** [1] - 3:7
**KANNER** [2] - 5:7, 5:7
**Kansas** [2] - 15:20,
41:20
**KATHLEEN** [1] - 7:11
**KATZ** [1] - 1:21
**keep** [3] - 39:15,
69:15, 71:10
**KERRY** [1] - 5:19
**key** [4] - 18:13, 18:19,
32:17, 58:21
**kind** [24] - 14:9, 15:23,
17:23, 18:3, 18:23,
20:15, 21:13, 23:11,
36:8, 36:15, 36:16,
37:11, 44:9, 44:23,
45:22, 46:16, 46:18,

46:19, 59:19, 61:3,
62:7, 62:20, 64:5,
71:23
**kinds** [3] - 38:22,
41:25, 63:6
**KINGSDORF** [1] - 4:6
**KIRBY** [1] - 8:8
**Kirkland** [1] - 12:23
**KIRKLAND** [2] - 6:17,
6:21
**knock** [1] - 42:21
**knows** [1] - 23:5
**KRAUS** [1] - 5:8
**KY** [1] - 8:8
**KYLE** [1] - 8:20

**L**

**L.L.C** [1] - 8:12
**LA** [17] - 1:20, 1:23,
3:12, 3:15, 3:23, 4:4,
4:8, 4:12, 4:19, 5:5,
5:9, 5:20, 6:15, 7:8,
8:6, 8:18, 9:23
**labeled** [1] - 48:13
**LAFAYETTE** [1] - 1:20
**laid** [1] - 17:19
**LAMAR** [1] - 7:21
**land** [11] - 45:11, 55:1,
56:12, 57:7, 57:13,
57:14, 57:17, 57:20,
57:21, 57:25, 61:16
**land-based** [2] -
57:14, 57:21
**landau** [4] - 12:17,
14:17, 35:21, 65:5
**LANDAU** [60] - 6:22,
11:8, 12:18, 12:21,
13:3, 14:18, 14:23,
15:14, 16:12, 16:20,
16:22, 18:17, 21:5,
22:13, 24:1, 35:22,
36:2, 37:24, 38:7,
38:12, 39:6, 39:10,
39:13, 40:2, 40:5,
40:7, 41:2, 41:4,
41:16, 42:3, 42:6,
42:22, 43:5, 43:10,
43:12, 44:2, 44:6,
44:21, 45:14, 46:8,
46:15, 47:17, 47:21,
47:23, 58:18, 59:13,
59:17, 60:20, 60:25,
62:6, 62:14, 63:16,
63:25, 65:6, 70:6,
71:1, 71:5, 71:9,
72:8, 72:12
**Landau** [4] - 12:22,
40:6, 58:17, 70:5

**Langan** [3] - 50:17,
60:18, 60:20
**LANGAN** [3] - 6:17,
50:19, 60:22
**language** [7] - 18:20,
29:14, 31:11, 35:25,
37:8, 42:23, 71:11
**large** [1] - 54:20
**largely** [1] - 14:25
**larger** [1] - 26:21
**LASALLE** [1] - 6:18
**laser** [2] - 72:17, 72:18
**last** [6] - 12:8, 16:23,
17:20, 23:5, 44:14,
61:9
**lastly** [1] - 12:8
**law** [28] - 17:3, 17:21,
24:16, 31:15, 34:12,
36:25, 37:17, 44:12,
45:9, 45:12, 46:1,
46:4, 46:24, 47:2,
47:8, 47:14, 47:15,
56:13, 57:6, 57:9,
57:11, 57:15, 58:5,
58:13, 66:7, 68:3,
68:21, 68:24
**LAW** [1] - 4:17
**Law** [3] - 17:4, 17:5,
17:22
**leads** [3] - 25:1, 25:5,
27:19
**learned** [1] - 72:18
**lease** [1] - 39:9
**leases** [1] - 19:25
**least** [5] - 22:9, 27:19,
68:9, 69:25
**led** [1] - 55:9
**leg** [1] - 17:23
**legal** [8] - 13:22,
16:25, 44:24, 46:23,
67:9, 67:11, 71:17,
72:3
**legally** [1] - 27:14,
67:3
**LEGER** [2] - 4:3, 4:3
**length** [1] - 64:9
**less** [2] - 50:11, 58:11
**lessee** [1] - 39:4
**lessees** [1] - 11:15
**lessors** [1] - 11:15
**LEVIN** [1] - 2:7
**LEWIS** [2] - 6:12, 8:12
**LI** [1] - 6:3
**liability** [5] - 19:3,
19:5, 37:9, 63:11
**liable** [1] - 19:10
**LIAISON** [1] - 1:18
**license** [1] - 54:3
**licensed** [1] - 72:1
**LIEFF** [1] - 2:14

**life** [1] - 12:13
**lifting** [3] - 14:1, 14:7, 15:6
**light** [1] - 53:2
**limit** [4] - 48:7, 49:7, 51:4, 57:3
**limitation** [2] - 36:15, 52:16
**limited** [6] - 19:3, 19:6, 37:9, 43:21, 48:6, 63:11
**LIMITED** [1] - 6:11
**limits** [1] - 19:5
**line** [10] - 25:13, 26:8, 27:3, 50:8, 51:25, 58:8, 62:8, 70:2, 72:5
**lines** [4] - 23:10, 23:12, 25:11, 37:9
**LISKOW** [1] - 6:12
**listed** [1] - 67:23
**litigate** [1] - 55:8
**litigation** [5] - 16:9, 54:6, 54:13, 55:5, 72:5
**Livaudais** [2] - 20:9, 36:18
**Livaudais's** [1] - 21:18
**living** [1] - 55:21
**LLC** [3] - 5:16, 9:4, 9:5
**loan** [1] - 38:5
**located** [2] - 15:19
**location** [1] - 24:12
**locked** [1] - 56:9
**logic** [1] - 26:19
**long-term** [2] - 54:2, 54:22
**look** [26] - 18:20, 19:8, 20:10, 21:10, 24:13, 30:6, 30:16, 30:24, 31:10, 31:23, 33:16, 33:20, 35:25, 36:4, 36:5, 38:25, 39:14, 40:17, 42:14, 53:18, 54:11, 60:10, 61:4, 63:7, 69:13
**looking** [3] - 20:25, 29:17, 38:11
**looks** [3] - 11:9, 33:22, 42:7
**LOS** [2] - 6:5, 9:17
**loss** [70] - 11:24, 11:25, 12:12, 13:9, 18:8, 18:9, 18:13, 20:2, 20:19, 20:20, 20:23, 21:14, 22:1, 22:2, 22:5, 23:8, 23:18, 23:23, 28:19, 30:18, 30:19, 32:12, 32:16, 33:4, 33:23,

36:8, 36:10, 37:22, 38:6, 38:8, 38:18, 39:12, 39:22, 39:23, 40:13, 41:13, 42:25, 43:1, 43:19, 48:9, 48:16, 48:17, 52:18, 62:16, 62:24, 63:3, 63:17, 63:19, 63:21, 64:6, 64:7, 64:10, 65:2, 65:25, 66:4, 66:11, 66:21, 67:24, 68:11, 69:21, 69:23, 70:11, 70:14, 70:16, 70:17, 70:21
**losses** [29] - 18:25, 19:23, 20:6, 20:9, 20:11, 20:14, 20:16, 20:18, 20:22, 23:13, 27:9, 36:7, 36:13, 36:14, 36:16, 36:17, 37:19, 38:8, 38:13, 38:15, 38:22, 39:17, 39:18, 39:22, 54:25, 58:1, 64:20, 66:1
**lost** [16] - 22:7, 22:10, 32:18, 33:3, 33:21, 33:22, 34:1, 48:22, 56:19, 58:5, 58:14, 63:24, 65:1, 68:10, 68:11, 69:15
**Louisiana** [2] - 73:6, 73:7
**LOUISIANA** [5] - 1:2, 1:7, 5:3, 8:13
**love** [1] - 62:17
**low** [1] - 25:11
**lower** [1] - 51:25
**LP** [1] - 8:4
**LUIS** [1] - 6:3
**LUXENBERG** [1] - 2:22
**LYLE** [1] - 9:8
**LYNN** [2] - 21:18, 30:24**

## M

**MAIN** [1] - 3:15
**maintain** [1] - 69:18
**maintenance** [1] - 68:8
**major** [4] - 24:20, 42:19
**MANAGEMENT** [1] - 9:3
**management** [4] - 55:1, 55:10, 56:16, 57:25
**MANGES** [2] - 9:8,

9:11
**map** [1] - 25:21
**MARINE** [3] - 9:5, 9:6, 9:6
**Maritime** [3] - 17:4, 17:5, 17:22
**maritime** [4] - 45:9, 54:11, 56:13, 57:10
**market** [2] - 33:18, 33:19
**marketing** [2] - 11:23, 48:15
**Marketing** [1] - 57:1
**MARTINEZ** [1] - 7:16
**MARTÍNEZ** [1] - 3:7
**master** [5] - 16:24, 34:22, 37:16, 41:22, 46:17
**MasterCard** [1] - 68:3
**matter** [9] - 20:15, 27:14, 29:2, 31:5, 58:23, 68:17, 73:10
**matters** [1] - 11:13
**MAZE** [1] - 4:22
**MCCUTCHEN** [1] - 8:8
**MCKINNEY** [1] - 7:12
**MCLEOD** [1] - 8:16
**MDL** [6] - 13:11, 37:12, 46:22, 47:2, 61:25, 62:2
**mean** [13] - 16:16, 20:14, 22:20, 23:4, 33:21, 33:25, 46:6, 50:13, 54:12, 57:15, 63:8, 66:3, 71:17
**meaning** [4] - 30:4, 36:17, 38:24, 43:23
**meaningless** [1] - 36:16
**means** [1] - 21:20
**meant** [4] - 24:14, 24:15, 24:16, 45:4
**meantime** [2] - 68:7, 68:8
**MECHANICAL** [1] - 9:25
**MEKEL** [1] - 4:11
**mentioned** [2] - 43:3, 59:14
**Merit** [2] - 73:5, 73:15
**merits** [1] - 13:3
**metaphysical** [1] - 20:15
**METHVIN** [1] - 3:17
**Metro** [1] - 42:8
**Mexico** [1] - 12:13
**MEXICO** [1] - 1:5
**MI** [1] - 8:12
**MICHAEL** [4] - 3:14, 5:12, 6:4, 9:8

**Michigan** [2] - 35:10, 52:22
**might** [15] - 15:22, 16:23, 18:25, 21:4, 21:6, 39:23, 53:2, 57:4, 58:10, 66:12, 66:20, 66:21, 68:12, 69:21, 71:7
**MIKAL** [1] - 2:18
**MILES** [1] - 3:18
**miles** [5] - 25:14, 25:16, 55:21, 57:5, 57:13
**MILLER** [1] - 5:19
**million** [1] - 23:2
**millionaire** [1] - 68:25
**mind** [4] - 13:19, 24:11, 29:18, 30:19
**minimum** [1] - 27:18
**minutes** [7] - 13:1, 35:20, 35:23, 53:22, 58:17, 62:12, 62:13
**mismanagement** [1] - 56:15
**misread** [1] - 12:3
**Mississippi** [1] - 15:9
**missteps** [1] - 55:1
**misunderstands** [1] - 37:11
**MITCHELL** [1] - 2:7
**MOBILE** [1] - 2:12
**moment** [2] - 18:4, 44:9
**monetary** [3] - 39:17, 67:25, 68:5
**money** [7] - 21:14, 22:10, 33:20, 38:25, 39:1, 68:1, 69:6
**Monroe** [1] - 35:14
**Montana** [1] - 41:20
**MONTGOMERY** [2] - 3:19, 4:23
**month** [1] - 72:22
**MORAN** [1] - 8:20
**moratorium** [6] - 27:22, 28:1, 32:7, 51:17, 59:15
**MORGAN** [3] - 3:3, 8:12
**morning** [8] - 11:8, 11:9, 12:23, 24:6, 24:8, 64:9, 64:22, 65:8
**MORRIS** [2] - 4:10, 4:10
**most** [4] - 14:10, 21:17, 39:19, 39:21
**Motion** [2] - 17:14, 58:21
**motion** [63] - 12:3,

12:5, 14:11, 15:14, 15:16, 15:25, 16:1, 17:13, 17:15, 18:7, 19:18, 22:8, 22:9, 23:20, 23:22, 25:2, 25:3, 26:22, 27:3, 27:10, 27:13, 27:21, 29:6, 33:1, 33:10, 40:10, 40:20, 41:5, 41:7, 41:9, 42:21, 42:22, 43:7, 43:15, 43:21, 44:7, 44:10, 44:15, 44:16, 44:17, 45:7, 45:16, 47:13, 48:6, 59:2, 59:9, 60:2, 60:6, 60:16, 61:2, 63:18, 63:20, 65:9, 65:17, 65:23, 67:23, 68:20, 71:3, 71:6, 72:7
**MOTIONS** [1] - 1:12
**motions** [29] - 11:10, 12:8, 12:24, 13:6, 13:12, 13:17, 13:18, 13:20, 13:25, 14:20, 14:24, 15:4, 16:6, 16:19, 17:1, 17:12, 17:18, 18:24, 23:25, 36:24, 37:12, 40:3, 44:23, 45:1, 46:8, 47:6, 47:8, 59:9
**MOTLEY** [1] - 4:14
**MOUNT** [1] - 4:15
**move** [2] - 40:3, 58:6
**moving** [4] - 14:12, 37:13, 43:18, 43:19
**MR** [113] - 11:8, 12:18, 12:21, 13:3, 14:18, 14:23, 15:14, 16:12, 16:20, 16:22, 18:17, 21:5, 22:13, 24:1, 24:4, 24:5, 24:6, 24:9, 24:24, 25:9, 26:6, 26:15, 26:21, 27:7, 27:12, 27:18, 28:11, 29:4, 29:23, 30:2, 30:5, 30:9, 30:11, 30:13, 32:20, 33:5, 33:12, 34:2, 34:13, 35:7, 35:12, 35:15, 35:22, 36:2, 37:24, 38:7, 38:12, 39:6, 39:10, 39:13, 40:2, 40:5, 40:7, 41:2, 41:4, 41:16, 42:3, 42:6, 42:22, 43:5, 43:10, 43:12, 44:2, 44:6, 44:21, 45:14, 46:8, 46:15, 47:17, 47:21, 47:23,

9

48:1, 48:19, 48:21, 48:23, 49:4, 49:18, 50:19, 50:22, 51:1, 51:5, 51:7, 51:11, 52:24, 53:20, 53:23, 54:7, 54:15, 54:21, 55:14, 55:20, 56:6, 56:22, 56:24, 57:23, 58:12, 58:18, 59:13, 59:17, 60:20, 60:22, 60:25, 62:6, 62:14, 63:16, 63:25, 65:6, 70:6, 71:1, 71:5, 71:9, 72:8, 72:12
**MRM** [2] - 9:15, 53:24
**MS** [9] - 3:5, 8:22, 65:8, 65:14, 65:17, 66:6, 66:18, 66:23, 67:10
**MUNGER** [1] - 6:3
**must** [1] - 32:8
**muster** [2] - 24:25, 35:17

## N

**N.W** [1] - 6:22
**name** [3] - 11:25, 43:1, 48:18
**narrow** [2] - 16:2, 44:3
**narrowly** [1] - 15:5
**natural** [1] - 22:3
**naturally** [3] - 21:14, 39:19, 39:21
**nature** [1] - 37:12
**near** [2] - 32:12, 35:3
**necessarily** [13] - 22:20, 24:23, 24:24, 25:19, 25:24, 34:1, 39:9, 40:23, 41:12, 41:24, 51:13, 52:7, 72:3
**necessary** [1] - 72:6
**need** [7] - 30:11, 35:23, 51:12, 51:17, 60:11, 60:15, 67:20
**needed** [2] - 27:24, 72:19
**needs** [1] - 14:5
**negligence** [4] - 54:7, 54:25, 57:7, 57:24
**negligently** [1] - 26:12
**neighbor** [1] - 34:8
**neighbor's** [1] - 26:13
**never** [2] - 54:14, 54:16
**NEW** [14] - 1:7, 1:23, 2:24, 4:4, 4:8, 4:12, 5:9, 5:20, 6:15, 7:8,

8:6, 8:18, 9:13, 9:23
**New** [1] - 69:1
**next** [6] - 14:22, 26:2, 26:13, 28:24, 33:15, 72:22
**nexus** [1] - 62:9
**night** [1] - 69:10
**NO** [1] - 1:7
**non** [2] - 33:8, 34:4
**non-oiled** [2] - 33:8, 34:4
**nonrefundable** [1] - 64:13
**NORFOLK** [1] - 2:5
**north** [1] - 42:17
**NORTH** [4] - 6:8, 6:9, 6:11, 6:12
**NORTHCOURT** [1] - 8:21
**note** [3] - 12:1, 16:22, 22:14
**nothing** [2] - 59:23, 61:1
**notice** [1] - 20:5
**number** [5] - 13:13, 13:14, 37:15, 45:22, 55:7
**numbered** [1] - 73:10
**numbers** [1] - 54:20
**NW** [3] - 7:4, 8:9, 9:9
**NY** [2] - 2:24, 9:13

## O

**O'BRIEN'S** [1] - 9:3
**O'KEEFE** [1] - 1:22
**obviously** [12] - 14:15, 22:20, 26:17, 39:7, 39:8, 41:18, 42:9, 45:8, 58:23, 64:9, 67:14, 68:12
**occasionally** [1] - 72:2
**occurred** [2] - 45:10, 63:23
**odd** [1] - 36:15
**OF** [7] - 1:2, 1:5, 1:12, 4:17, 5:3, 5:3, 5:11
**OFFICE** [3] - 3:19, 4:21, 5:4
**OFFICES** [1] - 4:17
**Official** [2] - 73:6, 73:15
**OFFICIAL** [1] - 9:22
**OFFSHORE** [2] - 5:17, 9:4
**offshore** [1] - 57:10
**often** [1] - 57:17
**OIL** [2] - 1:4, 1:5
**oil** [33] - 11:17, 13:9,

15:13, 18:11, 21:1, 21:3, 23:11, 25:13, 26:2, 26:4, 26:7, 27:1, 27:5, 28:16, 28:17, 28:23, 31:1, 32:12, 35:11, 37:19, 38:3, 54:24, 56:2, 56:12, 59:23, 62:18, 63:23, 64:21, 66:16, 66:19
**Oil** [1] - 61:25
**oiled** [6] - 25:22, 25:23, 33:8, 34:4
**OLSON** [1] - 6:3
**omission** [1] - 63:18
**ON** [1] - 1:5
**once** [3] - 43:12, 62:4, 62:6
**ONE** [3] - 6:13, 7:11, 8:21
**one** [32] - 11:10, 13:13, 14:22, 16:22, 19:18, 20:5, 21:22, 21:25, 24:13, 25:19, 31:24, 32:2, 33:5, 33:14, 34:3, 34:6, 34:8, 36:3, 46:6, 46:21, 46:25, 49:20, 51:22, 53:16, 60:5, 60:23, 61:7, 62:4, 62:16, 62:20, 66:14, 66:15
**one-time** [1] - 25:19
**ones** [4] - 24:10, 41:20, 70:22, 70:23
**ongoing** [1] - 51:25
**OPA** [57] - 14:10, 15:13, 17:10, 17:24, 18:2, 18:18, 18:20, 18:24, 19:2, 19:7, 22:20, 23:10, 24:14, 24:18, 28:3, 30:17, 31:6, 31:11, 32:3, 34:8, 36:24, 43:13, 46:6, 46:9, 47:16, 48:8, 49:7, 50:10, 50:21, 51:3, 51:13, 51:17, 51:21, 52:17, 58:12, 58:22, 59:2, 59:5, 59:11, 63:6, 63:8, 63:10, 64:2, 64:8, 64:19, 65:11, 65:13, 65:15, 66:5, 66:7, 68:4, 68:15, 69:24, 70:10, 70:20, 71:24
**OPA's** [1] - 24:14
**operating** [1] - 56:25
**operations** [1] - 57:18
**opinion** [2] - 25:15,

31:8
**opponents** [1] - 24:2
**opposed** [2] - 29:11, 39:7
**opposition** [7] - 12:2, 17:13, 43:15, 43:17, 63:4, 63:20, 64:5
**ORDER** [1] - 11:5
**order** [15] - 11:12, 11:22, 14:5, 15:1, 17:19, 18:5, 42:24, 44:14, 46:2, 46:13, 48:11, 65:19, 65:20, 70:3, 71:11
**ordering** [1] - 71:11
**orders** [2] - 46:17, 72:14
**ORLEANS** [12] - 1:7, 1:23, 4:4, 4:8, 4:12, 5:9, 5:20, 6:15, 7:8, 8:6, 8:18, 9:23
**otherwise** [4] - 41:14, 48:8, 49:24, 52:17
**ought** [1] - 69:25
**ourselves** [1] - 64:17
**out-of-pocket** [1] - 68:11
**outer** [1] - 19:5
**outside** [1] - 13:13
**overall** [4] - 18:23, 19:3, 61:17, 64:19
**overlapping** [1] - 39:16
**overly** [1] - 40:17, 48:13, 71:7
**overseas** [1] - 69:5
**owed** [2] - 55:14, 56:3
**owes** [1] - 54:21, 55:20
**own** [2] - 33:14, 39:9
**owner** [3] - 34:6, 39:4, 57:16
**owners** [2] - 11:15, 67:6
**ownership** [1] - 25:11
**owns** [1] - 19:25

## P

**page** [1] - 63:20
**PAGE** [1] - 10:3
**pages** [1] - 67:23
**PALMINTIER** [2] - 3:14, 3:14
**panic** [1] - 33:15
**panicked** [1] - 33:18
**panicking** [1] - 33:17
**PAPANTONIO** [1] - 2:7

**paper** [1] - 33:22
**parenthetically** [1] - 22:14
**PARSIOLA** [1] - 3:10
**part** [9] - 16:18, 40:19, 43:2, 43:7, 55:6, 61:16, 67:15, 71:8, 72:5
**particular** [17] - 15:25, 20:13, 22:6, 22:17, 23:3, 24:12, 27:15, 28:12, 30:20, 31:21, 36:8, 45:21, 45:24, 47:11, 47:12, 59:19
**particularly** [4] - 14:7, 33:16, 60:16, 70:15
**parties** [2] - 19:16, 60:6
**parts** [2] - 14:2, 19:8
**party** [1] - 19:9
**pass** [3] - 24:25, 34:24, 35:17
**passed** [1] - 30:17
**passing** [1] - 52:18
**past** [1] - 50:6
**pattern** [3] - 35:8, 52:11, 52:13
**paying** [1] - 68:7
**payments** [3] - 68:7, 69:18, 69:19
**PENNSYLVANIA** [1] - 7:4
**PENSACOLA** [1] - 2:9
**PENTHOUSE** [1] - 3:8
**people** [13] - 26:1, 27:9, 33:15, 33:18, 39:8, 42:17, 46:19, 52:19, 62:17, 68:6, 71:23, 72:10
**PEPPER** [1] - 9:22
**Pepper** [2] - 73:4, 73:13, 73:14
**percent** [2] - 22:16, 31:11
**perhaps** [8] - 29:8, 29:9, 32:25, 34:6, 34:19, 52:15, 52:17, 52:19
**period** [1] - 22:18
**permanent** [1] - 18:12
**permission** [1] - 49:2
**person** [3] - 64:14, 64:16, 70:17
**person's** [1] - 70:18
**personal** [11] - 19:18, 19:22, 19:24, 20:23, 21:11, 22:3, 36:14, 38:14, 38:16, 38:24, 39:2
**PETOSA** [1] - 3:4

**Petroleum** [1] - 57:1
**PETROLEUM** [1] - 8:3
**Phase** [2] - 55:6, 55:7
**phases** [1] - 55:7
**PHELPS** [2] - 8:16, 8:20
**PHILIP** [1] - 3:11
**phrase** [2] - 32:17, 40:16
**physical** [13] - 17:7, 21:20, 24:15, 24:19, 29:19, 30:1, 30:4, 31:9, 31:13, 36:1, 43:25, 46:5
**physically** [1] - 11:18
**piece** [1] - 33:8
**PIGMAN** [1] - 7:7
**place** [6] - 17:2, 20:21, 44:21, 44:25, 45:17, 61:10
**PLACE** [1] - 8:17
**plaintiff** [5] - 17:6, 18:14, 25:4, 33:1, 49:1
**PLAINTIFFS** [1] - 2:3
**plaintiffs** [15] - 15:2, 17:10, 18:21, 20:7, 37:15, 38:16, 44:8, 47:10, 53:17, 53:24, 54:9, 54:20, 60:7, 64:18, 71:1
**PLAINTIFFS'** [1] - 1:17
**plaintiffs'** [1] - 58:1
**platform** [1] - 30:17
**play** [1] - 19:20
**pleadings** [1] - 51:14
**PLEASANT** [1] - 4:15
**PLEASE** [1] - 9:19
**pleasure** [4] - 68:25, 69:4, 69:5, 69:14
**pled** [1] - 34:23
**PLETCHER** [1] - 2:19
**PMPA** [1] - 57:1
**pocket** [2] - 18:14, 68:11
**point** [38] - 18:13, 18:23, 19:6, 20:5, 22:21, 23:21, 24:20, 25:1, 25:2, 26:21, 26:25, 27:20, 32:24, 32:25, 33:6, 34:2, 34:13, 34:18, 37:10, 43:17, 44:13, 44:22, 44:23, 45:22, 46:19, 47:9, 49:18, 50:1, 53:3, 57:24, 67:16, 67:24, 68:4, 68:14, 68:18, 69:12, 72:3
**pointed** [2] - 20:9,
61:12
**points** [5] - 24:10, 24:13, 30:6, 34:14, 34:15
**portions** [1] - 12:13
**PORTIS** [1] - 3:18
**posed** [2] - 32:10, 58:7
**posing** [1] - 26:18
**position** [4] - 16:7, 31:17, 31:18, 37:21
**possibility** [1] - 52:24
**possible** [4] - 26:1, 28:6, 28:9, 59:1
**possibly** [1] - 22:7
**POST** [2] - 3:19, 5:4
**poster** [1] - 42:6
**potential** [2] - 15:22, 53:17
**potentially** [1] - 28:21
**POYDRAS** [6] - 4:7, 4:11, 5:20, 6:14, 8:5, 9:22
**practical** [1] - 29:2
**Practices** [1] - 57:1
**precedent** [3] - 21:18, 59:10, 59:17
**precisely** [2] - 26:22, 47:17
**precluded** [2] - 72:4, 72:7
**preempted** [2] - 17:4, 56:13
**preemption** [2] - 54:11, 61:9
**preempts** [2] - 46:4
**preliminary** [1] - 16:22
**premature** [5] - 25:3, 26:22, 27:11, 32:3, 37:11
**premise** [3] - 13:19, 44:15, 47:7
**prepared** [1] - 16:13
**present** [2] - 13:14, 52:11
**PRESENT** [1] - 9:19
**preserved** [1] - 66:2
**preserving** [1] - 66:10
**press** [1] - 55:2
**presumably** [3] - 36:13, 53:5, 56:3
**pretrial** [1] - 46:17
**pretty** [3] - 15:5, 50:10, 57:15
**prevent** [1] - 41:12
**previous** [2] - 17:16, 65:12
**previously** [2] - 45:7, 46:2
**price** [3] - 21:3, 22:16,
33:9
**priceless** [1] - 68:3
**prices** [1] - 23:5
**primarily** [1] - 65:18
**principles** [1] - 36:3
**private** [2] - 13:8, 19:15
**problem** [3] - 25:20, 29:11, 35:2
**procedural** [1] - 61:7
**procedurally** [1] - 44:17
**procedure** [1] - 47:10
**procedures** [1] - 14:4
**proceed** [1] - 58:13
**proceeding** [3] - 13:12, 46:16, 58:24
**PROCEEDINGS** [3] - 1:12, 9:25, 11:2
**proceedings** [4] - 13:12, 14:6, 72:23, 73:10
**process** [3] - 37:12, 46:19, 59:3
**PROCTOR** [1] - 2:7
**PRODUCED** [1] - 9:25
**PRODUCTION** [2] - 6:7, 6:10
**PRODUCTS** [1] - 6:12
**profit** [1] - 64:15
**profits** [25] - 11:24, 19:19, 21:7, 21:11, 21:25, 22:1, 22:5, 22:7, 32:16, 32:18, 33:3, 38:8, 39:12, 39:22, 41:13, 42:25, 48:17, 56:19, 58:5, 58:14, 64:10, 65:2, 66:21, 70:14, 70:17
**program** [1] - 27:25
**prompt** [1] - 14:15
**pronouncements** [2] - 53:2, 53:6
**proper** [1] - 30:20
**properties** [1] - 35:6
**property** [82] - 11:15, 11:16, 11:18, 13:9, 17:7, 18:9, 18:10, 18:11, 18:15, 19:18, 19:22, 19:24, 19:25, 20:2, 20:20, 20:23, 21:1, 21:11, 21:19, 21:20, 22:2, 22:3, 22:17, 22:25, 23:1, 23:8, 23:13, 23:18, 23:19, 23:23, 25:13, 26:2, 26:5, 26:8, 26:9, 26:20, 27:1, 27:5, 27:9, 27:15, 27:16, 27:17, 28:15,
28:18, 28:22, 28:25, 29:8, 29:15, 29:17, 30:4, 30:18, 30:23, 31:12, 31:19, 32:12, 32:13, 32:21, 32:23, 33:8, 33:25, 34:4, 34:6, 34:17, 35:10, 36:15, 37:18, 37:23, 38:3, 38:14, 38:16, 38:24, 39:2, 39:5, 39:9, 39:17, 44:1, 46:5, 49:13, 52:3, 52:4
**proposal** [1] - 13:16
**proposed** [2] - 13:7, 13:12
**proposition** [2] - 20:21, 30:25
**protect** [5] - 54:22, 55:21, 58:2, 58:5, 69:10
**prove** [3] - 21:2, 25:5, 55:17
**proverbial** [1] - 53:14
**provide** [1] - 34:12
**provides** [1] - 34:11
**proving** [1] - 55:17
**provision** [5] - 20:17, 20:21, 21:6, 22:15, 22:22
**provisions** [1] - 46:7
**proximate** [7] - 26:9, 28:3, 32:6, 50:11, 60:7, 60:11, 60:13
**prudent** [1] - 14:11
**PSC** [18] - 24:7, 37:15, 43:15, 43:17, 44:7, 45:1, 45:6, 45:19, 45:21, 46:17, 47:25, 48:2, 51:16, 53:8, 63:13, 64:3, 65:7, 65:9
**PSC's** [4] - 17:13, 43:21, 63:4, 71:14
**psychic** [3] - 63:9, 65:24, 70:16
**pull** [1] - 61:18
**PURE** [1] - 10:5
**pure** [27] - 11:11, 11:12, 11:14, 11:18, 12:16, 13:3, 16:2, 18:1, 18:6, 19:17, 23:16, 24:2, 27:4, 28:7, 28:14, 37:18, 38:4, 38:17, 41:11, 47:18, 54:7, 64:6, 65:24, 66:4, 67:24, 70:11, 72:9
**purport** [2] - 18:24, 70:20
**purpose** [1] - 34:8
**purposes** [6] - 12:14, 17:1, 17:9, 17:15, 18:7, 48:24
**pursuant** [1] - 65:12
**pursue** [8] - 41:10, 43:9, 44:11, 58:10, 58:15, 68:12, 72:4
**put** [4] - 24:14, 56:8, 63:22, 64:13
**puts** [1] - 66:15
**putting** [3] - 16:8, 71:17, 72:2

## Q

**qualified** [1] - 41:14
**qualify** [6] - 20:16, 20:20, 31:6, 34:9, 66:21, 70:16
**questions** [5] - 13:22, 32:10, 32:11, 37:2, 61:12
**quit** [1] - 51:9
**quite** [7] - 16:1, 25:2, 29:14, 43:17, 60:20, 60:22, 64:23

## R

**RAFFERTY** [1] - 2:7
**random** [1] - 50:1
**range** [1] - 15:21
**rather** [5] - 24:9, 56:14, 59:21, 68:17, 70:1
**raw** [1] - 24:13
**RE** [1] - 1:4
**Re** [3] - 61:25, 62:1, 60:15, 66:7
**reach** [3] - 60:11, 60:15, 66:7
**read** [9] - 20:8, 20:14, 21:14, 29:13, 31:4, 60:17, 63:4, 64:4, 65:23
**reading** [3] - 31:16, 36:12, 68:23
**reads** [1] - 29:13
**real** [20] - 11:15, 18:13, 19:18, 19:22, 19:24, 20:23, 21:10, 22:2, 29:15, 29:16, 30:18, 31:12, 31:19, 33:24, 36:14, 38:14, 38:16, 52:5, 53:18, 60:3
**realize** [2] - 33:4, 55:4
**realized** [4] - 18:8, 28:19, 33:22, 37:22

**really** [29] - 13:21, 14:9, 14:24, 17:18, 19:7, 19:17, 21:13, 21:24, 26:6, 28:2, 34:24, 36:20, 36:24, 37:6, 37:12, 40:18, 41:8, 42:7, 44:9, 44:16, 44:23, 46:8, 46:10, 46:20, 58:21, 59:23, 61:7, 61:12, 63:7
**realtime** [1] - 51:25
**Realtime** [2] - 73:4, 73:14
**rearguing** [1] - 65:20
**reason** [1] - 51:16
**reasonably** [1] - 20:14
**reasoning** [2] - 13:5, 36:20
**reasons** [7] - 23:2, 30:6, 45:22, 47:18, 65:19, 65:21, 70:3
**reassert** [1] - 54:10
**rebuttal** [3] - 13:1, 35:21, 64:4
**recently** [3] - 25:18, 33:16
**recognizable** [1] - 71:24
**recognize** [2] - 53:1, 60:1
**reconsideration** [2] - 44:17, 66:9
**reconsidering** [1] - 54:13
**RECORD** [1] - 9:19
**record** [5] - 12:20, 53:16, 53:18, 60:13, 73:9
**Record** [1] - 48:11
**RECORDED** [1] - 9:25
**recourse** [1] - 46:6
**recover** [1] - 68:15
**recoverable** [5] - 19:15, 19:25, 23:11, 37:20, 63:10
**recovered** [1] - 22:4
**recovery** [2] - 18:25, 69:22
**RECREATION** [1] - 10:7
**recreation** [13] - 12:9, 12:14, 62:13, 62:15, 62:20, 64:2, 64:6, 65:24, 66:4, 70:10, 71:12, 71:13, 71:22
**recreational** [15] - 12:10, 12:11, 62:19, 62:25, 66:12, 66:23, 67:3, 67:18, 67:24,

68:22, 71:16, 71:19, 71:23, 72:9
**recurring** [2] - 25:17, 25:20
**REDDEN** [1] - 7:10
**reduced** [1] - 21:3
**reduction** [1] - 15:15
**refinance** [2] - 29:9, 38:5
**reflects** [1] - 19:3
**regard** [1] - 45:20
**regarded** [1] - 17:15
**regarding** [1] - 29:12
**regardless** [2] - 40:25, 50:4
**register** [1] - 52:6
**registered** [4] - 68:25, 69:2, 69:5, 73:15
**Registered** [1] - 73:4
**reiterate** [2] - 40:10, 48:3
**relates** [1] - 34:22
**RELATES** [1] - 1:9
**relating** [2] - 41:13, 47:14
**relationship** [6] - 49:20, 49:22, 49:24, 50:1, 54:1, 54:17
**relationships** [1] - 57:2
**relatively** [1] - 44:3
**relevant** [1] - 16:6
**relief** [2] - 25:5, 28:7
**remedial** [4] - 24:16, 32:3, 34:8, 36:25
**remedy** [1] - 57:6
**remember** [1] - 67:6
**remind** [1] - 63:14
**reminding** [1] - 51:9
**reminds** [2] - 27:21, 32:5
**removal** [1] - 19:10
**removed** [1] - 59:22
**replete** [1] - 25:21
**reply** [1] - 35:24
**Reporter** [7] - 73:4, 73:5, 73:6, 73:14, 73:15, 73:15
**REPORTER** [1] - 9:22
**REPORTER'S** [1] - 73:2
**represent** [2] - 46:18, 56:18
**represented** [1] - 45:19
**represents** [1] - 49:1
**request** [1] - 13:20
**require** [4] - 13:25, 14:9, 15:6, 29:25

**required** [4] - 14:1, 29:15, 31:9, 31:19
**requirement** [2] - 28:3, 55:16
**requires** [2] - 31:12, 43:25
**requiring** [1] - 13:21
**RESERVE** [1] - 4:19
**reserve** [1] - 13:1
**reserved** [1] - 65:21
**resolution** [1] - 14:15
**resolved** [1] - 13:21
**resources** [1] - 22:3
**respect** [15] - 12:25, 14:24, 18:23, 19:21, 23:10, 38:13, 43:20, 45:16, 46:22, 61:6, 61:19, 62:15, 63:3, 64:11, 65:1
**respectfully** [5] - 30:2, 30:5, 31:22, 34:14, 49:5
**respond** [2] - 35:24, 58:7
**responding** [1] - 65:9
**RESPONSE** [1] - 9:17
**response** [2] - 14:24, 44:13
**responses** [1] - 17:13
**responsible** [1] - 19:9
**restaurant** [2] - 67:5, 67:6
**restrictions** [1] - 56:7
**result** [17] - 11:16, 11:25, 15:13, 15:15, 16:23, 18:11, 22:10, 23:17, 40:14, 41:10, 43:1, 47:2, 48:17, 51:25, 56:15, 62:18, 64:20
**resulted** [2] - 56:16, 57:13
**resulting** [7] - 19:23, 20:22, 28:4, 36:7, 36:14, 38:13, 65:25
**results** [2] - 19:11, 62:24
**revenue** [1] - 30:19
**revenues** [1] - 40:13
**revisit** [2] - 54:8, 57:8
**RHON** [1] - 3:18
**Rhon** [1] - 24:6
**RICE** [2] - 4:14, 4:14
**RICHESON** [1] - 8:4
**RIG** [1] - 1:5
**rig** [1] - 55:10
**risk** [1] - 13:15
**RMR** [2] - 9:22, 73:14
**road** [2] - 45:3, 49:8
**roads** [1] - 48:23

**ROBERT** [4] - 2:11, 6:21, 7:3, 8:5
**ROBERTS** [1] - 5:23
**ROBIN** [1] - 2:23
**Robins** [9] - 17:6, 17:23, 24:15, 24:19, 27:4, 39:11, 46:3, 46:4, 49:21
**RONQUILLO** [2] - 7:15, 7:20
**room** [1] - 62:23
**ROOM** [2] - 5:13, 9:22
**root** [1] - 68:21
**ROUGE** [2] - 3:15, 5:5
**Roy** [4] - 48:2, 58:8, 58:20, 67:16
**ROY** [15] - 1:18, 1:18, 48:1, 48:19, 48:21, 48:23, 49:4, 49:18, 50:22, 51:1, 51:5, 51:7, 51:11, 52:24, 53:20
**rule** [3] - 17:6, 53:4, 68:21
**Rule** [26] - 24:25, 25:3, 26:22, 27:19, 27:22, 27:24, 29:5, 29:6, 31:22, 31:25, 32:14, 33:1, 34:15, 34:19, 34:22, 34:24, 35:17, 48:5, 50:23, 51:8, 53:10, 66:11, 67:19, 68:17
**ruled** [2] - 59:8, 66:8
**rules** [1] - 70:2
**ruling** [15] - 16:23, 17:16, 37:17, 46:23, 47:3, 47:11, 47:12, 47:15, 51:8, 53:9, 53:12, 53:15, 54:13, 61:9, 62:8
**rulings** [7] - 17:8, 17:11, 44:24, 44:25, 45:20, 59:2, 65:12
**RYAN** [1] - 6:18

**S**

**s/Cathy** [1] - 73:13
**sadness** [1] - 63:10
**safely** [1] - 60:3
**sailed** [1] - 69:1
**sale** [1] - 22:16
**SAN** [3] - 2:16, 2:20, 5:14
**satisfy** [1] - 17:22
**saw** [2] - 12:2, 40:20
**SC** [1] - 4:15
**scanning** [2] - 72:18,

72:19
**SCAT** [1] - 25:21
**schedule** [2] - 15:1, 62:12
**scheduled** [1] - 62:12
**SCOFIELD** [1] - 8:12
**scope** [8] - 13:13, 15:24, 18:18, 22:20, 40:15, 41:18, 48:6, 71:3
**score** [1] - 41:22
**sea** [2] - 57:19, 62:9
**SEACOR** [6] - 9:4, 9:4, 9:5, 9:5, 9:6, 9:6
**second** [10] - 13:5, 17:4, 24:20, 25:1, 25:2, 34:13, 37:10, 54:10, 61:11, 62:21
**secondly** [1] - 53:17
**SECREST** [1] - 7:10
**section** [5] - 43:13, 63:14, 63:16, 65:10, 71:4
**sections** [1] - 28:13
**secure** [1] - 38:5
**SEE** [1] - 9:19
**see** [12] - 19:13, 22:6, 22:25, 52:14, 55:12, 58:8, 59:19, 60:19, 63:5, 65:1, 72:21
**seeded** [1] - 64:5
**seek** [2] - 44:16, 54:9
**seeking** [2] - 56:18, 68:15
**seized** [1] - 69:3
**Sekco** [4] - 20:9, 21:19, 30:16, 36:19
**selected** [3] - 67:23, 68:9, 68:10
**sell** [15] - 18:10, 18:16, 22:24, 33:4, 33:8, 33:21, 33:23, 34:7, 50:16, 66:23, 66:24, 67:3, 71:16, 71:19, 72:2
**selling** [1] - 28:25
**sells** [1] - 34:4
**send** [1] - 62:5
**sends** [1] - 64:24
**sense** [6] - 33:5, 39:2, 39:8, 39:15, 62:3, 62:4
**sensed** [1] - 49:16
**sensitivity** [1] - 60:1
**separate** [2] - 42:13, 63:1
**separately** [2] - 23:25, 53:5
**SEPTEMBER** [2] - 1:8, 11:3

**series** [1] - 46:17
**serious** [2] - 58:24, 61:19
**service** [1] - 42:8
**SERVICES** [1] - 7:15
**set** [11] - 11:13, 14:16, 15:1, 16:17, 21:10, 23:6, 25:4, 25:7, 42:9, 47:11
**sets** [3] - 11:10, 12:17, 42:4
**setting** [1] - 57:10
**settled** [3] - 16:25, 17:15, 47:15
**settlement** [25] - 13:8, 13:10, 13:14, 13:15, 13:23, 14:4, 14:13, 22:15, 22:19, 22:22, 33:7, 34:3, 34:11, 40:23, 40:25, 43:8, 46:25, 47:1, 58:25, 59:4, 61:20, 67:15, 71:8, 72:5
**SEVENTH** [1] - 4:18
**several** [6] - 25:9, 25:14, 25:16, 50:14, 67:1, 67:6
**shall** [2] - 19:24, 22:3
**SHAW** [1] - 4:3
**SHEETS** [1] - 9:19
**SHELL** [1] - 6:13
**Shell** [6] - 15:10, 16:10, 40:12, 41:14, 56:8, 59:21
**Shores** [2] - 53:13, 63:23
**short** [3] - 67:1, 67:22, 69:16
**shot** [1] - 66:8
**show** [1] - 71:25
**shows** [2] - 17:7, 68:23
**side** [3] - 61:4, 62:13, 63:19
**SIEMENS** [1] - 9:7
**sign** [4] - 55:24, 56:8
**SIGN** [1] - 9:19
**SIGN-IN** [1] - 9:19
**significant** [1] - 58:23
**similar** [5] - 15:10, 27:4, 55:5, 56:10, 57:22
**simple** [2] - 52:3, 65:3
**simply** [10] - 25:2, 25:5, 29:14, 29:20, 31:12, 32:3, 45:3, 50:12, 60:15, 61:13
**SINCLAIR** [1] - 4:22
**single** [1] - 33:1
**situation** [7] - 26:16,

32:22, 34:16, 35:17, 38:9, 52:16, 64:18
**situations** [2] - 26:24, 50:7
**six** [7] - 19:14, 37:5, 39:15, 63:6, 63:12, 70:9
**size** [1] - 24:12
**smaller** [2] - 24:10, 69:17
**Smith's** [1] - 59:20
**so-called** [8] - 11:10, 11:18, 12:6, 12:8, 15:17, 34:23, 42:5, 48:12
**sold** [10] - 21:1, 21:2, 22:6, 22:10, 22:16, 23:22, 27:9, 28:20, 34:6, 37:23
**someone** [15] - 18:8, 18:25, 20:1, 25:15, 25:16, 26:11, 27:1, 29:7, 32:22, 34:16, 38:2, 53:12, 55:20, 66:15, 71:25
**somewhat** [4] - 20:21, 21:23, 27:4, 41:22
**somewhere** [1] - 48:21
**soon** [1] - 25:6
**sorry** [1] - 38:12
**sort** [3] - 33:24, 39:23, 49:21
**sorts** [2] - 66:20, 69:16
**SOUTH** [2] - 2:8, 6:4
**specific** [10] - 19:14, 20:17, 32:8, 32:25, 37:8, 61:7, 64:24, 64:25, 70:21, 70:22
**specifically** [1] - 30:15
**specified** [3] - 19:10, 19:12, 37:4
**specify** [1] - 41:24
**spill** [25] - 11:17, 13:9, 15:13, 18:12, 21:2, 21:3, 23:12, 24:13, 27:25, 28:17, 28:23, 34:5, 35:11, 38:3, 41:14, 54:24, 55:10, 56:2, 56:12, 59:23, 62:18, 63:23, 64:21, 66:17, 66:20
**SPILL** [1] - 1:4
**Spill** [1] - 62:1
**sprawling** [1] - 13:11
**SPRINGS** [1] - 3:23
**SQUARE** [1] - 6:13
**ST** [1] - 9:9
**stage** [3] - 26:22,

32:14, 51:14
**stand** [2] - 37:6, 49:10
**standard** [5] - 59:5, 59:7, 60:1, 61:4, 61:5
**start** [2] - 12:15, 23:15
**started** [2] - 23:15, 57:24
**starting** [1] - 47:4
**STATE** [3] - 4:21, 5:3, 5:3
**State** [1] - 73:5
**state** [15] - 17:3, 17:10, 17:21, 18:1, 44:11, 45:12, 46:4, 46:24, 47:2, 47:8, 47:14, 54:10, 57:6, 58:5, 58:13
**STATES** [2] - 1:1, 1:13
**States** [7] - 50:16, 54:1, 56:18, 58:9, 58:11, 73:6, 73:16
**states** [1] - 25:10
**station** [9] - 15:8, 15:10, 16:10, 16:11, 42:8, 52:19, 53:13, 59:21, 59:22
**stations** [1] - 55:24
**status** [1] - 34:19
**statute** [22] - 14:10, 19:2, 19:8, 20:5, 20:10, 21:10, 28:5, 29:22, 31:14, 31:16, 36:5, 36:6, 36:11, 37:2, 37:7, 37:24, 38:7, 39:1, 64:23, 70:13
**statutory** [3] - 20:17, 36:3, 65:3
**STENOGRAPHY** [1] - 9:25
**step** [1] - 13:4
**STEPHEN** [1] - 1:22
**STEVEN** [1] - 5:23
**STIGMA** [1] - 10:5
**stigma** [32] - 11:11, 11:12, 11:14, 11:19, 12:16, 12:25, 13:4, 16:2, 18:1, 18:6, 18:18, 19:18, 19:19, 23:16, 23:17, 24:3, 27:5, 28:7, 28:9, 28:14, 34:23, 37:18, 38:4, 38:17, 39:19, 41:11, 42:5, 47:18, 52:3, 52:4, 52:20
**still** [7] - 13:10, 14:4, 15:22, 16:4, 27:2, 43:9, 55:12
**stock** [5] - 33:14,

33:17, 33:19, 39:24
**STONE** [1] - 7:7
**stool** [1] - 17:24
**store** [2] - 15:9, 15:11
**storm** [1] - 26:3
**strange** [1] - 36:11
**strangers** [1] - 49:25
**streamline** [1] - 14:5
**streamlining** [1] - 13:11
**STREET** [24] - 1:19, 2:8, 2:12, 2:15, 3:4, 3:15, 4:4, 4:7, 4:11, 4:18, 5:8, 5:20, 5:23, 6:14, 6:22, 7:8, 7:12, 7:17, 8:5, 8:9, 8:13, 8:17, 8:21, 9:22
**street** [3] - 15:10, 40:13, 67:8
**strict** [4] - 19:2, 19:6, 37:9, 63:11
**strictly** [3] - 19:10, 49:9, 56:24
**strike** [1] - 51:22
**strong** [1] - 32:2
**stronger** [2] - 21:21, 21:23
**structural** [2] - 36:21, 44:24
**structurally** [5] - 21:9, 37:14, 39:1, 39:14, 46:16
**structure** [2] - 19:7, 36:5
**subcategory** [1] - 62:20
**subject** [1] - 56:6
**submission** [2] - 64:22, 70:20
**submit** [2] - 49:5, 52:8
**submitted** [2] - 52:10, 61:2
**subsection** [16] - 18:22, 19:9, 19:11, 19:12, 19:13, 21:7, 21:11, 21:15, 36:1, 37:4, 43:16, 58:22, 64:8, 64:24, 64:25
**subsections** [2] - 18:22, 28:8
**subset** [1] - 15:21
**subsistence** [5] - 67:14, 70:25, 71:2, 71:7, 71:13
**subspecies** [1] - 64:1
**substantial** [2] - 13:15, 60:4
**substantively** [1] - 61:11
**successful** [1] - 21:23

**successfully** [1] - 69:3
**sued** [1] - 69:8
**suffer** [1] - 29:8
**suffered** [8] - 11:16, 11:23, 12:12, 42:24, 48:16, 56:19, 58:4, 58:14
**sufficiently** [1] - 34:24
**suggesting** [4] - 45:15, 46:12, 52:4, 52:15
**SUITE** [17] - 2:8, 2:20, 3:4, 3:11, 4:7, 4:11, 5:23, 6:14, 7:12, 7:17, 7:21, 8:5, 8:13, 8:17, 8:21, 9:9, 9:16
**SUMICH** [1] - 3:10
**superseding** [2] - 28:2, 56:14
**support** [1] - 32:4
**supports** [1] - 31:18
**suppose** [4] - 44:9, 46:25, 61:21
**Supreme** [2] - 68:19, 69:13
**survive** [1] - 59:6
**sustained** [1] - 38:6
**SUTHERLAND** [1] - 5:22
**SW** [1] - 3:22
**sweeping** [1] - 41:18

**T**

**table** [1] - 14:11
**taint** [1] - 11:16
**TAIRA** [2] - 21:18, 30:24
**talks** [3] - 31:16, 36:8, 71:12
**tanked** [1] - 33:19
**tar** [1] - 25:18
**target** [2] - 22:8, 22:9
**targeted** [4] - 15:4, 46:9, 61:25, 62:1
**tax** [4] - 69:3, 69:6, 69:8, 69:9
**taxes** [2] - 69:1, 69:3
**TAYLOR** [1] - 3:10
**temporary** [1] - 18:12
**temptation** [1] - 51:11
**Tennessee** [1] - 42:17
**term** [2] - 54:2, 54:22
**terms** [3] - 15:12, 46:22, 65:24
**test** [6] - 51:17, 53:11, 53:12, 53:15, 68:17, 70:1
**THE** [128] - 1:4, 1:5,

1:13, 1:17, 2:3, 5:3, 5:11, 9:19, 11:9, 12:19, 13:2, 14:17, 14:19, 15:8, 16:4, 16:18, 16:21, 18:15, 21:1, 22:8, 23:24, 24:2, 24:8, 24:22, 25:7, 25:25, 26:12, 26:17, 27:3, 27:8, 27:13, 28:5, 28:12, 29:21, 29:24, 30:3, 30:7, 30:10, 30:12, 32:18, 33:3, 33:10, 33:13, 34:10, 35:5, 35:9, 35:14, 35:19, 35:24, 37:21, 38:1, 38:11, 39:3, 39:7, 39:11, 40:1, 40:3, 40:6, 40:19, 41:3, 41:9, 42:2, 42:4, 42:12, 43:3, 43:6, 43:11, 43:24, 44:5, 44:18, 45:4, 45:24, 46:11, 47:13, 47:18, 47:22, 47:24, 48:10, 48:20, 48:22, 49:3, 49:15, 50:6, 50:20, 50:24, 51:2, 51:6, 51:9, 52:14, 53:19, 53:21, 54:4, 54:12, 54:19, 55:4, 55:16, 55:25, 56:20, 56:23, 57:9, 58:7, 58:16, 59:8, 59:14, 60:17, 60:24, 62:5, 62:11, 63:14, 63:22, 65:5, 65:7, 65:10, 65:16, 66:3, 66:14, 66:19, 67:3, 68:20, 68:21, 68:23, 70:4, 70:24, 71:4, 71:6, 71:25, 72:11, 72:13
**themes** [1] - 32:3
**THEODORE** [1] - 9:12
**theory** [1] - 26:19
**therefore** [1] - 46:2
**third** [1] - 17:23
**thirds** [1] - 28:22
**THIS** [1] - 1:9
**THOMAS** [2] - 2:7, 9:16
**thorny** [1] - 13:22
**thousands** [1] - 45:18
**thread** [1] - 61:18
**three** [9] - 11:10, 12:17, 12:24, 13:5, 13:17, 19:15, 30:16, 32:4, 53:16
**threshold** [1] - 18:5
**threw** [1] - 66:15

**tide** [2] - 25:11
**TO** [2] - 1:9, 11:5
**TOBATEX** [1] - 9:15
**Tobatex** [10] - 42:2, 42:6, 44:8, 45:5, 46:14, 49:1, 53:21, 53:24, 61:6, 61:13
**Tobatex's** [1] - 61:24
**today** [13] - 16:7, 16:13, 32:10, 34:25, 37:6, 47:13, 48:6, 48:24, 50:22, 51:15, 51:22, 52:25, 53:1
**today's** [1] - 17:8
**together** [1] - 50:2
**TOLLES** [1] - 6:3
**Tom** [2] - 49:1, 53:23
**tonnage** [1] - 69:3
**TONY** [1] - 2:19
**took** [3] - 16:24, 66:8, 69:13
**Topeka** [2] - 15:20, 41:20
**tort** [4] - 26:14, 49:17, 50:2, 55:17
**tortfeasor** [1] - 49:22
**TORTS** [1] - 5:12
**total** [1] - 62:13
**totally** [2] - 25:16, 72:6
**touched** [3] - 11:18, 28:16, 37:19
**touching** [2] - 24:15, 24:19
**tourism** [3] - 15:16, 40:14, 43:19
**tourists** [1] - 52:18
**TOWER** [1] - 2:4
**traced** [1] - 64:20
**TRANSCRIPT** [2] - 1:12, 9:25
**transcript** [2] - 60:10, 73:8
**translated** [1] - 68:1
**translating** [1] - 68:4
**TRANSOCEAN** [4] - 5:16, 5:16, 5:18, 8:15
**Transocean** [1] - 72:17
**treacherous** [1] - 47:5
**trial** [6] - 29:5, 31:22, 32:1, 34:19, 69:4, 69:13
**tried** [1] - 17:14
**true** [7] - 16:2, 24:22, 41:2, 51:15, 51:18, 73:8
**try** [5] - 14:15, 39:14, 48:7, 61:18, 65:25
**trying** [16] - 16:5, 23:7,

26:18, 26:25, 44:16, 49:18, 51:21, 69:12, 69:20, 70:1, 70:24, 71:15, 71:18, 71:19, 71:20, 71:22
**TSEKERIDES** [1] - 9:12
**turn** [1] - 19:13
**turned** [1] - 60:20
**turning** [1] - 64:7
**two** [23] - 13:14, 15:12, 16:25, 17:8, 18:21, 19:8, 19:17, 20:10, 24:9, 24:13, 28:6, 28:8, 28:13, 28:22, 30:16, 32:3, 34:21, 53:15, 61:7, 62:16, 63:2, 68:9, 70:10
**two-thirds** [1] - 28:22
**twofold** [1] - 34:2
**TX** [6] - 2:20, 5:24, 7:12, 7:18, 7:21, 8:13
**type** [10] - 40:25, 41:21, 44:19, 45:10, 49:16, 52:2, 54:5, 66:4, 68:2, 72:4
**types** [7] - 16:5, 24:22, 33:10, 35:5, 43:3, 59:10, 65:10

## U

**U.S** [2] - 5:11, 56:25
**UK** [4] - 50:17, 50:20, 52:22, 56:19
**under** [52] - 14:10, 15:13, 17:3, 17:5, 17:6, 17:10, 17:21, 17:22, 17:24, 18:1, 21:6, 21:7, 24:25, 27:22, 28:3, 28:7, 28:9, 31:21, 32:15, 34:8, 34:21, 36:11, 38:9, 43:14, 43:20, 47:16, 50:21, 51:3, 51:13, 54:21, 56:25, 57:6, 57:15, 58:5, 58:12, 58:21, 59:6, 63:10, 64:2, 64:8, 65:11, 65:13, 65:15, 66:5, 66:7, 68:15, 69:24, 70:14, 71:24, 72:13
**undergo** [1] - 14:5
**undergoing** [1] - 14:4
**UNDERHILL** [1] - 5:12
**underlying** [2] - 13:19,

13:24
**underscore** [1] - 32:11
**underscored** [1] - 37:2
**underscoring** [1] - 32:24
**understandings** [1] - 47:1
**understood** [4] - 27:7, 44:22, 46:15, 48:19
**UNDERWRITERS** [1] - 8:16
**undone** [1] - 61:20
**uniform** [2] - 24:17, 34:8
**unique** [4] - 16:14, 47:11, 54:19, 56:9
**uniqueness** [1] - 54:17
**United** [7] - 50:16, 54:1, 56:18, 58:9, 58:11, 73:6, 73:16
**UNITED** [2] - 1:1, 1:13
**universe** [1] - 53:17
**unless** [6] - 17:6, 17:22, 33:4, 33:21, 33:23, 46:5
**unprecedented** [1] - 24:11
**unrealized** [11] - 18:9, 20:2, 20:19, 20:23, 23:7, 23:13, 23:18, 27:8, 37:19, 38:18, 39:23
**unsustainable** [1] - 23:7
**unused** [1] - 48:25
**up** [13] - 14:12, 21:10, 23:1, 25:18, 26:3, 26:7, 33:6, 33:14, 35:8, 36:23, 55:9, 56:8
**upkeep** [2] - 68:8, 69:19
**upshot** [1] - 17:8
**urge** [1] - 51:18
**useful** [1] - 21:9
**uses** [3] - 20:11, 36:9, 68:19

## V

**VA** [1] - 2:5
**vacation** [1] - 42:19
**validity** [1] - 52:4
**value** [27] - 11:25, 12:7, 18:9, 18:11, 18:16, 20:2, 20:20, 20:23, 23:1, 23:8,

23:18, 23:19, 23:23, 28:16, 29:8, 30:18, 30:23, 32:12, 33:25, 35:10, 38:3, 38:19, 39:23, 41:11, 43:1, 48:17, 67:25
**Vanderbilt** [2] - 69:8, 69:15
**vein** [1] - 49:4
**venerable** [1] - 68:19
**vessel** [6] - 45:8, 57:16, 57:18, 69:2, 69:4, 69:14
**vessels** [2] - 68:6, 68:8, 69:17
**via** [1] - 33:7
**viable** [4] - 51:3, 52:17, 65:13, 66:5
**vicinity** [3] - 22:12, 23:17, 28:18
**victim** [2] - 49:23, 50:2
**view** [4] - 29:25, 32:7, 59:23, 69:14
**vis-à-vis** [2] - 16:14, 51:17
**vociferously** [1] - 60:21
**VoO** [3] - 27:22, 27:23, 59:16

## W

**wait** [1] - 53:10
**wake** [2] - 23:11, 64:21
**WALKER** [1] - 2:3
**WALTER** [1] - 4:3
**WALTHER** [1] - 7:7
**warrant** [1] - 62:8
**WARREN** [1] - 8:9
**Washington** [1] - 12:23
**WASHINGTON** [4] - 6:23, 7:4, 8:10, 9:9
**watchman** [1] - 69:10
**water** [2] - 22:11, 31:2
**waters** [1] - 47:5
**watershed** [1] - 14:10
**WATERSIDE** [1] - 2:4
**WATTS** [2] - 2:18, 2:18
**weekend** [1] - 72:21
**WEIL** [2] - 9:8, 9:11
**WEINER** [1] - 8:4
**WEITZ** [1] - 2:22
**WEST** [1] - 9:16
**whereas** [3] - 52:7, 52:21, 57:4
**WHEREUPON** [1] -

72:23
**WHITELEY** [1] - 5:7
**whole** [4] - 15:21,
  34:18, 37:12, 58:3
**wide** [1] - 65:18
**wildly** [1] - 23:6
**wind** [1] - 14:12
**WINFIELD** [1] - 4:22
**wish** [1] - 51:9
**WITTMANN** [1] - 7:7
**word** [9] - 20:11,
  29:19, 31:13, 36:1,
  36:9, 38:20, 38:21,
  40:16
**words** [13] - 27:13,
  28:5, 28:12, 30:3,
  31:17, 36:4, 43:6,
  49:4, 55:8, 57:16,
  63:22, 70:13
**workable** [1] - 23:1
**world** [2] - 50:13, 58:4
**WORLDWIDE** [1] - 9:5
**worse** [1] - 31:1
**worth** [5] - 21:3,
  28:22, 28:23, 28:25,
  29:1
**WRIGHT** [1] - 1:18
**written** [1] - 72:14
**wrought** [1] - 41:7

**Y**

**yacht** [2] - 68:25, 69:5
**year** [4] - 28:22, 28:24,
  44:14, 61:9
**years** [4] - 28:25,
  30:16, 56:9, 67:7
**yesterday** [1] - 72:18
**YORK** [3] - 2:24, 7:20,
  9:13
**York** [1] - 69:1
**yourself** [1] - 12:19

**Z**

**zone** [2] - 60:3
**zones** [1] - 46:21

**"**

**"MIKE"** [1] - 7:3