## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010**<br><br>**This Document Relates to:**<br><br>*All Cases*<br><br>(Including No. 10-2771) | **MDL No. 2179**<br><br>**SECTION: J**<br><br>**JUDGE BARBIER**<br><br>**MAGISTRATE SHUSHAN** |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO TRANSOCEAN'S MOTION FOR PROTECTIVE ORDER

On September 14, 2012, Transocean filed a Motion for Protective Order [Rec. Doc. 7412], arguing that an interrogatory and 188 requests for admission (RFAs) served by the Plaintiffs' Steering Committee (PSC) were improper.  The crux of Transocean's complaint is that the "PSC's requests . . . were served more than one year after the deadline for Phase I written discovery and are therefore untimely."  [*Id.* at 1.]  It is indeed true, as Transocean observes, that the PSC served the RFAs on August 28, 2012, over one year after the July 1, 2011 deadline for Phase I written discovery.  The PSC, however, had no choice but to serve the RFAs when it did; Transocean produced thousands of Phase I documents on or after January 12, 2012—well after both the July 2011 Phase I discovery deadline and the January 2012 deadline for filing trial exhibit lists in advance of the Phase I trial.  Transocean thus should not be heard to complain about the "untimeliness" of the RFAs; had it complied with its discovery responsibilities, there would be no need for the parties to engage in this very discussion.  (The RFAs and the

present Motion could have also been obviated by a formal stipulation by Transocean as to the admissibility of the late-produced documents in question; but TO refused.) Accordingly, for the reasons set forth below, the Court should deny Transocean's Motion for Protective Order.

I.      **Background**

Beginning in February 2012, the PSC undertook the review of thousands of documents Transocean produced on or after January 12, 2012—the deadline for filing Phase I trial exhibit lists.  [*See* Rec. Doc. 7234 at 1.]  This review continued for months and, on July 11, 2012, the PSC informed counsel for Transocean that it "repeatedly and consistently [has] discovered Transocean documents that should have been produced in advance of trial" but were not.  [*Id.*]  Many of these late-produced documents were relevant to the liability case against Transocean.  To rectify the prejudice caused by Transocean's untimely production, the PSC sought concurrence in a request to (1) depose or re-depose four Transocean witnesses, (2) stipulate to the authenticity and admissibility of 63 late-produced documents (out of thousands reviewed), and (3) amend the Phase I trial exhibit list accordingly.  [*See* Rec. Doc. 7234 at 1-2; Rec. Doc. 7268 at 1.] Transocean refused to concur in the request and the parties thereafter engaged in several weeks of meet and confer sessions.  Ultimately, the PSC narrowed the universe of documents for which it sought admission from 63 to 37.  [*See* Rec. Doc. 7268 at 1.]

Past this point, however, the parties could not agree.  The dispute therefore proceeded to Magistrate Judge Shushan for resolution.  On August 10, 2012, the PSC submitted ten documents, representative of the 37 total it sought for inclusion on the

2

exhibit list, for Judge Shushan's review.  In a hearing the following week, counsel for the PSC stated,

> We are prepared if we have to, and we probably will, to send out requests for admissions [on the ten representative documents] on Monday. . . .  I would make an oral request—we will file a written motion if we have to—that when they are served with a request for admissions that the 30 days provided under the Federal Rules be shortened to 15.  It shouldn't be a big problem.

[Rec. Doc. 7412-4 at 11.]  Opposing counsel did not respond to this particular statement. Nor did the Court rule on the request.

Ultimately, Transocean agreed to stipulate to the authenticity of each of the 37 late-produced documents, (though not admissibility). [Rec. Doc. 7268 at 1.]  In addition, Judge Shushan ruled that (1) the PSC was prejudiced by, *inter alia*, Transocean's untimely production of Documents 3, 4, 6, and 7,[1] and (2) Transocean Chief Executive Officer Steve Newman ("Newman") must appear for a second deposition.  [*Id.* at 5-6.] Judge Shushan did not rule upon the admissibility of any late-produced documents, stating, "The admissibility of the additional documents will be resolved by District Judge Barbier." [*Id.*]   Judge Barbier largely affirmed Judge Shushan's Order but limited Newman's deposition to a total of 120 minutes.[2] [*See* Rec. Doc. 7437.]  The admissibility of the late-produced documents, including those whose untimely production prejudiced the PSC, remains an open question.

---

[1] This Memorandum refers to the ten representative documents submitted for Judge Shushan's review as Document Numbers 1 through 10; these documents are described in detail in Judge Shushan's September 4, 2012 Order.  [*See* Rec. Doc. 7268.]
[2] Judge Barbier's Order limited the PSC's time to 60 minutes.  [Rec. Doc. 7437.]

On August 28, 2012, the PSC served 188 RFAs and an interrogatory upon Transocean.[3]   Each of the RFAs concerns one of Document Numbers 1 through 10. Because the Court has not yet ruled upon the admissibility of the documents, and because it has limited the PSC's ability to depose or re-depose Transocean witnesses on the documents, this discovery is an appropriate means by which to lay the foundation necessary to admit the documents at trial.

## II.    Argument

Rule 26(c)(1) of the Federal Rules of Civil Procedure provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  The party seeking a protective order must establish that good cause exists for the entry of the order by making a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); *United States v. Garrett*, 571 F.2d 1323 n.3 (5th Cir. 1978).

To lay the evidentiary foundation necessary to admit Document Numbers 1 through 10, the PSC served a total of 188 RFAs.  The RFAs were served before Transocean agreed to stipulate to the authenticity of these documents.  In its Motion for Protective Order, Transocean correctly observes that approximately 70 RFAs focus upon the documents' authenticity. [Rec. Doc. 7412-1 at 5.]  Because Transocean has now stipulated to the authenticity of the late-produced documents, however, the PSC acknowledges that any RFA directed toward questions of authenticity is no longer necessary.  Thus, the PSC agrees to withdraw the following RFAs: 1, 7, 9-13, 15, 17, 23,

---

[3] The RFAs and interrogatory are attached as an exhibit to this Memorandum.

29-35, 39, 46-47, 49, 51-52, 59-60, 62, 64, 66-72, 76-102, 104, 110, 111, 113, 122, 136, 143-144, 146-151, 157, 161, 169, 173, 176-177, and 183.   The remaining RFAs are appropriate and, indeed, necessary under this Court's orders.

For the reasons that follow, the Court should accordingly deny Transocean's Motion for Protective Order.

### A.      The Remaining RFAs Are Appropriate And Necessary

Document Numbers 1 through 10 largely consist of email correspondence among Transocean employees.   This Court has set forth specific foundational prerequisites necessary to admit a defendant's email correspondence into evidence, to wit: (1) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (2) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (3) making the record was a regular practice of that activity; (4) all these conditions are shown by the testimony of the custodian or another qualified witness; and (5) neither the source of the information nor the method or circumstances of preparation indicate a lack of trustworthiness.  [Rec. Doc. 5143 at 5 n.3.]  Numerous RFAs were propounded that speak directly to the requirements set forth above.

For example, RFAs concerning Document 7,[4] an email exchange between Newman and Transocean employee Larry McMahan, include the following:

- RFA 123: "Admit that the Transocean document with Bates stamp TRN-MDL-05762567 is an exchange of emails that were sent at or near the time of the events recorded in the emails.

---

[4] Judge Shushan ruled that the PSC was prejudiced by the untimely production of Document 7.  [Rec. Doc. 7268 at 5-6.]

- RFA 124:  "Admit that the Transocean document with the Bates stamp TRN-MDL 05762567 is exchange [sic] of emails that were sent by Transocean employees with personal knowledge of the events and/or information documented in the emails.

- RFA 125:  "Admit that the Transocean documents with the Bates stamp TRN-MDL-05762567 is an exchange of emails that were sent and received in the course of a regular business activity of Transocean.

- RFA 126:  "Admit that Transocean had a policy or imposed a business duty on its employees to report or record the information documented in the emails with the Bates stamp TRN-MDL-05762567.

- RFA 127:  "Admit that at the time of the Transocean emails with the Bates stamp TRN-MDL-05762567, Transocean had a regular practice of sending and receiving emails that recorded the types of events and/or information documented in these emails.

These requests, and others like them, relate directly to the requirements imposed by the Court for the admissibility of email correspondence.[5]  Furthermore, because Transocean produced these documents late, and opposed the PSC's request for additional depositions, the PSC *has no other means* by which to satisfy the Court's evidentiary requirements. The Court should not reward Transocean's untimeliness by depriving the PSC of this relatively unintrusive means of discovery.

The remaining requests impose relatively little burden, may be answered easily, and seek basic foundation for the late-produced documents.[6]  Furthermore, each of the ten representative documents is relevant to Transocean's systemic process safety lapses leading up to the April 20, 2010 *Deepwater Horizon* Incident and/or makes it more

---

[5] Other RFAs that relate directly to the requirements necessary to admit email correspondence include: 2-6, 24-28, 40-45, 53-58, 73-75, 105-109, 123-127, 137-142, 145, 152-156, and 178-182.

[6] For example, RFAs 8, 14, 63, 115, 158-159, and 184-185 solicit admissions regarding the employment status of individuals named in each respective Document.  [*See, e.g.*, Ex. A ¶ 63 ("Admit that on February 10, 2010, Julian Soles was employed by Transocean in the position of Manager, Corporate Planning.").]

probable that Transocean was grossly negligent for that tortious event.[7]  The RFAs are, quite simply, the least onerous means by which to discover this highly relevant information.  Transocean has not demonstrated good cause sufficient to justify a protective order under Rule 26.

### B.  The PSC's Requests For Admission Should Not Be Deemed Untimely And Were Not Served Without Leave Of Court

Transocean argues that it is entitled to a protective order because the PSC's RFAs were served beyond the deadline for completion of Phase I written discovery.  This argument is specious, of course, since the documents in question were not available to the PSC before the July 31, 2011 discovery deadline.  The ten documents at issue are among those that Transocean should have produced in advance of trial, but instead produced on or after January 12, 2012.  [Rec. Doc. 7232 at 1.]  Since the delay in propounding these requests was occasioned by Transocean's late production of documents, Transocean's timeliness argument should be rejected outright.

The Court should also reject Transocean's assertion that the PSC failed to obtain leave of court before filing its RFAs.  Before the PSC served the subject requests, the Court and Transocean were aware that the requests were forthcoming.  During the August 17, 2012 hearing, counsel for the PSC informed the Court that it would likely serve requests for admission the Monday following the hearing.  [Rec. Doc. 7412-4 at 11.]

---

[7] Transocean argues that 26 RFAs relate to TRN-MDL-05467036 [Document 9], an email exchange concerning "serious incidents" Transocean experienced on a rig called *Artic-1*, working in Brazil.  Although Judge Shushan ruled that this document's untimely production did not provide a basis for additional Phase I Transocean depositions, she did not rule that the document was irrelevant under the Federal Rules.  [*See* Rec. Doc. 7268 at 5.]  Because Transocean's process safety lapses speak directly to its gross negligence, the PSC should be permitted to establish the foundation necessary to admit Document 9.

This was, in effect, an informal request for leave. Transocean raised no objection, and it certainly cannot claim that the requests came as a surprise.

Because the service of these requests after the discovery deadline was caused by Transocean's late production of documents, the PSC respectfully requests, in the interest of expediency, that the Court permit the service of these requests despite the lack of a formal request for leave to serve them.  If the Court is not so inclined, the PSC hereby respectfully requests leave to serve the requests.  Upon the granting of leave, the PSC will re-serve the RFAs.

### C.     The Requests Are Not Unduly Burdensome

Transocean contends that the "sheer volume" of the RFAs, together with the PSC's interrogatory seeking the basis for Transocean's denials and qualified admissions, renders them oppressive and burdensome. [Rec. Doc. 7412-1, p. 4.]  Transocean fails again to meet its burden of demonstrating good cause for the entry of a protective order.

Neither the Federal Rules of Civil Procedure nor the local rules of this Court sets a presumptive limit on the number of requests for admission that may be propounded by a party.  Although Rule 33(a)(1) and this Court's Pretrial Order No. 11 set limits on the number of interrogatories the parties may serve, Rule 36 does not place, and this Court has not prescribed, a limit on the number of requests for admission.

The decision whether to limit the number of requests for admission is left to the discretion of the court, Fed. R. Civ. P. 26(b)(2)(A), and is often based on the size and complexity of the case, and a determination as to whether the individual requests are simple and straightforward, *see United States ex rel. Minge v. TECT Aero., Inc*., No. 07-1212, 2012 U.S. Dist. LEXIS 64129, *10-15 (D. Kan. May 8, 2012) (denying protective

order where plaintiff served 2,826 requests for admission because the case was "very complicated and fact intensive"); *Layne Christensen Co. v. Purolite Co*., No. 09-2381-JWL-GLR, 2011 U.S. Dist. LEXIS 6737, *19-21 (D. Kan. Jan. 25, 2011) (finding that 277 requests for admission to one party and 329 requests to another party were not unduly burdensome in light of the complexity of the case); *Synthes (U.S.A.) v. Globus Med., Inc*., No. 04-1235, 2006 U.S. Dist. LEXIS 87151, *5 (E.D. Pa. Nov. 29, 2006) (denying motion for protective order where plaintiff had served a total of 622 requests for admission, because the requests were "simple and straightforward recitations of fact which can be readily admitted or denied….").[8]

Given the complexity of the issues and the volume of documents that have been produced in this case, Transocean cannot demonstrate that the service of requests for admission is unduly burdensome.[9]   The requests address only ten documents, and each request is direct and uncomplicated.  Transocean should be able to respond to them in short order.  Accordingly, a protective order is not warranted.

Finally, Transocean claims that it is entitled to protection from responding to the PSC's August 28 interrogatory because it is "improper" to ask a party to identify facts, witnesses, and documents related to all of the RFAs in one interrogatory.  [Rec. Doc. 7412-1, p. 4-5.]  Transocean does not argue that the interrogatory should be treated as

---

[8] The cases Transcoean cites lend little support to its argument. In *Joseph L. v. Conn. Dep't of Children & Families*, 225 F.R.D. 400, 403 (D. Conn. 2005), the Court granted a protective order because very few of the requests were relevant; its decision was not based solely on the sheer number of requests.  The Court in *Robinson v. Stanley*, No. 06 C 5158, 2009 U.S. Dist. LEXIS 93971 (N.D. Ill. Oct. 8, 2009), did not specify the number of requests served, so its value as support for Transocean's "sheer volume" argument is minimal at best.

[9] Further, the PSC has agreed to withdraw the requests that speak to the authenticity of the documents.

separate interrogatories; it merely asserts that it is entitled to protection from answering it because it is improper and "runs afoul" of the Federal Rules.  [*Id.*]

Interrogatories that seek discovery of the basis for a party's denials or qualified admissions in response to requests for admission are used routinely in federal practice. *See Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 446 (C.D. Cal. 1998) (noting that "[i]t is not unusual for a party to serve a set of requests for admissions accompanied by a set of interrogatories, and for the set of interrogatories to include one or more interrogatories seeking disclosure of the basis for each response to any request for admission which was not admitted without qualification"); *Estate of Manship v. United States,* 232 F.R.D. 552, 557 (M.D. La. 2005) (noting that an interrogatory seeking the basis for the denial of several requests for admission may be viewed as a single interrogatory when each of the requests concerns the same subject area).  Here, there are only ten documents at issue and, therefore, only ten subject areas.  Transocean will only need to respond to the interrogatory if it denies a request or offers a qualified admission.  Since the requests, for the most part, simply recapture the language used and events described in the ten documents, the number of denials and qualified admissions are likely to be few. Transocean cannot, therefore, demonstrate that answering the interrogatory will subject it to an undue burden.

**III.   Conclusion**

For the reasons set forth above, the PSC respectfully requests that the Court deny Transocean's Motion for Protective Order.

Dated:  September 24th, 2012

Respectfully submitted,

___/s/   Stephen J. Herman___
**Stephen J. Herman**, La. Bar No. 23129
**HERMAN HERMAN & KATZ LLP**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax. No. (504) 569-6024
Email: sherman@hhklawfirm.com
*Plaintiffs Liaison Counsel*

___/s/ James Parkerson Roy___
**James Parkerson Roy**, La. Bar No.11511
**DOMENGEAUX WRIGHT ROY & EDWARDS LLC**
556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233-3033
Fax No. (337) 233-2796
E-Mail: jimr@wrightroy.com
*Plaintiffs Liaison Counsel*

### PLAINTIFFS' STEERING COMMITTEE

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office:  (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office:  (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
TAYLOR

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY  10003
Office:  (212) 558-5802
Telefax: (212) 344-5461
E-Mail:  rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office:  (334) 269-2343
Telefax: (334) 954-7555
E-Mail:  rhon.jones@beasleyallen.com

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH,
LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street

8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Office: (504) 394-9000
Telefax: (504) 394-9110
E-Mail: pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL 36660
Office: (251) 471-6191
Telefax: (251) 479-1031
E-Mail: rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail: mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA 70726
Office: (225) 664-4193
Telefax: (225) 664-6925
E-Mail: calvinfayard@fayardlaw.

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail: ervin@colson.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290

Baton Rouge, LA 70801-1910
Office: (225) 344-3735
Telefax: (225) 344-0522
E-Mail: mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA 70130
Office: (504) 588-1500
Telefax: (504) 588-1514
E-Mail: sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Office: (214) 521-3605
Telefax: (214) 599-1172
E-Mail: ssummy@baronbudd.com

Mikal C. Watts
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail: mcwatts@wgclawfirm.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

E-Mail: jrice@motleyrice.com

## CERTIFICATE OF SERVICE

We hereby certify that the above and foregoing Memorandum will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 24th day of September, 2012.

    /s/ Stephen J. Herman and James Parkerson Roy