**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

In re:  **Oil Spill by the Oil Rig**
        **"Deepwater Horizon" in the Gulf**
        **of Mexico, on April 20, 2010**

**This Document Relates to:**

*All Cases*

(This Document also applies to No. 10-2771)

**MDL No. 2179**

**SECTION: J**

**JUDGE BARBIER**

**MAGISTRATE SHUSHAN**

**PLAINTIFFS'  REQUESTS FOR ADMISSION AND INTERROGATORY TO
TRANSOCEAN**

Plaintiffs, through Plaintiffs' Liaison Counsel and the Plaintiffs' Steering Committee and pursuant to Rules 26, 33, and 36 of the Federal Rules of Civil Procedure, serve the following Requests for Admission and Interrogatory upon Transocean Offshore Deepwater Drilling Inc., Transocean Holdings LLC, Transocean Deepwater Inc. and Triton Asset Leasing GMBH:

**TAB 1 - EXHIBIT 5**

1.      Admit that Exhibit 5 attached hereto is a true and accurate copy of the Transocean document with the Bates stamps TRN-MDL-06099840 through TRN-MDL-06099867.

2.      Admit that the Transocean document with the Bates stamps TRN-MDL-06099840 through TRN-MDL-06099867 is an email with an attachment that was sent at or near the time of the events recorded in the emails.

1

3.     Admit that the Transocean document with the Bates stamps TRN-MDL-06099840 through TRN-MDL-06099867 is an email with an attachment that was sent by a Transocean employee with personal knowledge of the events and/or information documented in the email.

4.     Admit that the Transocean document with the Bates stamps TRN-MDL-06099840 through TRN-MDL-06099867 is an email with an attachment that was sent and received in the course of a regular business activity of Transocean.

5.     Admit that Transocean had a policy or imposed a business duty on its employees to report or record the information documented in the email and attachment with the Bates stamps TRN-MDL-06099840 through TRN-MDL-06099867.

6.     Admit that at the time of the Transocean email and attachment with the Bates stamp TRN-MDL-06099840 through TRN-MDL-06099867, Transocean had a regular practice of sending and receiving emails that recorded the types of events and/or information documented in this email and attachment.

7.     Admit that the Transocean document with the Bates stamp TRN-MDL-06099840 through TRN-MDL-06099867 is an email with attachment, and that the email states its subject matter as "E&TS HSE Meeting Minutes February 2008" (TRN-MDL-06099840).

8.     Admit that on February 12, 2008, Pharr Smith was an employee of Transocean.

9.     Admit that on February 12, 1008, Pharr Smith sent an email to thirty-nine Transocean employees to which she attached the minutes of a February 2008 safety meeting.

10.    Admit that Larry McMahan and Adrian Rose were cc recipients of TRN-MDL-06099840, a February 12, 2008 email from Pharr Smith to various recipients.

11. Admit that the Transocean document with the Bates stamps TRN-MDL-06099841 through 06099867 is a power point presentation for a Transocean HSE meeting that took place in February 2008.

12. Admit that the attachment to Pharr Smith's February 12, 2008 email includes a section entitled "Mumbai Safety Vision – January 14-15, 2008."

13. Admit that within the section entitled "Mumbai Safety Vision – January 14-15, 2008" is a section entitled "Bob Long's message" (TRN-MDL-06099845).

14. Admit that on January 14-15, 2008, Bob Long was an employee of Transocean.

15. Admit that in the power point presentation for the Transocean HSE meeting that took place in February 2008, Bob Long states at TRN-MDL-06099845 that "people don't just die on our rigs – we kill them."

16. Admit that Transocean knew in 2008 that the deaths of individuals on its rigs were the direct result of Transocean's failure to follow its safety policies.

17. Admit that the attachment to Pharr Smith's February 12, 2008 email includes a section entitled "2007 Shipyard Upgrade Projects – HSE Challenges" (TRN-MDL-06099845 through 06099850).

18. Admit that Transocean recognized in 2008 that "with current shipyard work loads, the competency of both shipyard supervisors and the general work force has deteriorated" (TRN-MDL-06099850).

19. Admit that Transocean recognized in 2008 that the "absence of a 'safety culture' in shipyard operations is exacerbated by the influx of untrained new employees and subcontractors" (TRN-MDL-06099850).

20.     Admit that Transocean recognized in 2008 that the deterioration of the general work force and the absence of a safety culture leads directly to problems with compliance with the PTW system (TRN-MDL-06099850).

21.     Admit that Transocean recognized in 2008 that the deterioration of the general work force and the absence of a safety culture leads directly to problems with the quality of Transocean's risk assessments (TRN-MDL-06099850).

22.     Admit that Transocean recognized in 2008 that the deterioration of the general work force and the absence of a safety culture leads directly to problems with fire watches (TRN-MDL-06099850).

### TAB 2- EXHIBIT 10

23.     Admit that Exhibit 10 attached hereto is a true and accurate copy of the Transocean document with the Bates stamps TRN-MDL-05880590 through TRN-MDL-05880604.

24.     Admit that the Transocean document with the Bates stamp TRN-MDL-05880590 through TRN-MDL-05880604 is two emails and an attachment that were sent at or near the time of the events recorded in the emails.

25.     Admit that the Transocean document with the Bates stamp TRN-MDL-05880590 through TRN-MDL-05880604 is two emails and an attachment that were sent by Transocean employees with personal knowledge of the events and/or information documented in the emails.

26.     Admit that the Transocean document with the Bates stamp TRN-MDL-05880590 through TRN-MDL-05880604 is two emails and an attachment that were sent and received in the course of a regular business activity of Transocean.

27.　Admit that the Transocean had a policy or imposed a business duty on its employees to report or record the information documented in the emails and attachment with the Bates stamp TRN-MDL-05880590 through TRN-MDL-05880604.

28.　Admit that at the time of the Transocean emails and attachment with the Bates stamps TRN-MDL-05880590 through TRN-MDL-05880604, Transocean had a regular practice of sending and receiving emails that recorded the types of events and/or information documented in these emails.

29.　Admit that the Transocean document with the Bates stamp TRN-MDL-05880590 through TRN-MDL-05880604 is two emails and an attachment and that the subject matter of the emails is:  "Safety Vision Presentations."

30.　Admit that the Transocean document with the Bates stamp TRN-MDL-05880590 is a January 20, 2008 email exchange between Bill Sannan, Rob Saltiel, Paul King, and Mac Polhamus.

31.　Admit that Transocean document beginning with the Bates stamp TRN-MDL-05880591 is an AMU Safety Vision presentation dated January 14, 2008 relating to a meeting in Mumbai to review Transocean's 2007 occupational safety performance (e.g., dropped objects and hand and finger injuries) that was attached to the January 20, 2008 email exchange between Bill Sannan, Rob Saltiel, Paul King, and Mac Polhamus.

32.　Admit that on January 17, 2008, Rob Saltiel, Senior Vice President of Transocean's North & South America Business Unit, sent an email to Bill Sannan, a Transocean employee in Houston, in which he requested that Sannan send him a copy of Sannan's presentation during the meeting in Mumbai.

33.    Admit that in response to Rob Saltiel's January 17, 2008 email, Bill Sannan sent Saltiel the AMU Safety Presentation 08 that Sannan presented in the meeting in Mumbai on January 14, 2008.

34.    Admit that the Transocean document with the Bates stamp numbers TRN-MDL-05880591 through TRN-MDL-05880604 is the AMU Safety Vision power point presentation presented by Sannan in Mumbai on January 14, 2008.

35.    Admit that in the AMU Safety Vision power point presentation presented in Mumbai on January 14, 2008, there is a 2007 quote from Bob Long that states that "at the current rate of safety improvement, I may not live long enough to see incident free operations!" (TRN-MDL-05880594).

36.    Admit that in 2007, Transocean employee Bob Long was dissatisfied with Transocean's rate of safety improvement (TRN-MDL-05880594).

37.    Admit that in 2007, Transocean employees were dissatisfied with Transocean's rate of safety improvement.

38.    Admit that in 2007, Transocean was aware of its employee's dissatisfaction with the rate of  improvement of its safety program.

**TAB 3 - EXHIBIT 28**

39.    Admit that Exhibit 28 attached hereto is a true and accurate copy of the Transocean document with the Bates stamps TRN-MDL-06416911 through TRN-MDL-06416912.

40.    Admit that the Transocean document with the Bates stamps TRN-MDL-06416911 through TRN-MDL-06416912 is an exchange of emails that were sent at or near the time of the events recorded in the emails.

41.    Admit that the Transocean document with the Bates stamps TRN-MDL-06416911 through TRN-MDL-06416912 is an exchange of emails that were sent and received by Transocean employees with personal knowledge of the events and/or information documented in the emails.

42.    Admit that the Transocean document with the Bates stamps TRN-MDL-06416911 through TRN-MDL-06416912 is an exchange of emails were sent and received in the course of a regular business activity of Transocean.

43.    Admit that the e-mail exchange with the Bates stamps TRN-MDL-06416911 through TRN-MDL-06416912 was correspondence between and among Transocean employees conducted in the regular course of business.

44.    Admit that the Transocean had a policy or imposed a business duty on its employees to report or record the information documented in the exchange of emails with the Bates stamps TRN-MDL-06416911 through TRN-MDL-06416912.

45.    Admit that at the time of the exchange of Transocean emails with the Bates stamps TRN-MDL-06416911 through TRN-MDL-06416912, Transocean had a regular practice of sending and receiving emails that recorded the types of events and/or information documented in these emails.

46.    Admit that the Transocean document with the Bates stamps TRN-MDL-06416911 through TRN-MDL-06416912 is an e-mail exchange with the subject matter: "Using the Management System."

47.    Admit that the email exchange with the Bates stamps TRN-MDL-06416911 through TRN-MDL-06416912 began with an email dated May 30, 2008 from Chris Knight II, a Transocean Senior HSE Advisor, to Jimmy Moore, an employee of Transocean.

7

48.  Admit that in his May 30, 2008 email to Jimmy Moore, Chris Knight II expressed his concern as to the lack of implementation of the safety processes THINK and TSTP on the Deepwater Horizon. (TRN-MDL-06416912).

49.  Admit that Jimmy Moore responded to the email from Chris Knight II on May 30, 2008, and asked Chris Knight II "how many other guys [Knight thought] misunderstood the process" (TRN-MDL-06416911).

50.  Admit that in response to Jimmy Moore's question in his May 30, 2008 email, Chris Knight II responded by email on May 31, 2008 that his recent visit to the Deepwater Horizon to conduct an investigation into flooding indicated that the safety processes were not being implemented to the extent necessary {TRN-MDL-06416911).

51.  Admit that in response to Chris Knight II's email of May 31, 2008, Jimmy Moore stated, "I assure you these issues are fleetwide" (TRN-MDL-06416911).

**TAB 4**

52.  Admit that TRN-MDL-04937152 attached hereto is a true and accurate copy of the Transocean document with the Bates stamps TRN-MDL-04937152 through TRN-MDL-04937153 and TRN-MDL-01856805.

53.  Admit that the Transocean document with the Bates stamps TRN-MDL-04937152 through TRN-MDL-04937153 and TRN-MDL-01856805 is an exchange of emails that were sent at or near the time of the events recorded in the emails.

54.  Admit that the Transocean document with the Bates stamps TRN-MDL-04937152 through TRN-MDL-04937153 and TRN-MDL-01856805 is an exchange of emails that

were sent by Transocean employees with personal knowledge of the events and/or information documented in the emails.

55.   Admit that the Transocean document with the Bates stamps TRN-MDL-04937152 through TRN-MDL-04937153 and TRN-MDL-01856805 is an exchange of emails were sent and received in the course of a regular business activity of Transocean.

56.   Admit that the e-mail exchange with the Bates stamps TRN-MDL-04937152 through TRN-MDL-04937153 and TRN-MDL-01856805 was correspondence between and among Transocean employees conducted in the regular course of Transocean's business.

57.   Admit that Transocean had a policy or imposed a business duty on its employees to report or record the information documented in the exchange of emails with the Bates stamps TRN-MDL-04937152 through TRN-MDL-04937153 and TRN-MDL-01856805.

58.   Admit that at the time of the exchange of Transocean emails with the Bates stamps TRN-MDL-04937152 through TRN-MDL-04937153 and TRN-MDL-01856805, Transocean had a regular practice of sending and receiving emails that recorded the types of events and/or information documented in these emails.

59.   Admit that the Transocean document with the Bates stamps TRN-MDL-04937152 through TRN-MDL-04937153 and TRN-MDL-01856805 is an e-mail exchange with the subject matter: "Hand and Finger Injuries."

60.   Admit that the Transocean document with the Bates stamps TRN-MDL-04937152 through TRN-MDL-04937153 and TRN-MDL-01856805 began with an email dated February 9, 2010 (9:38 p.m.) from Bill Sannan, General Manager – North America for Transocean Offshore Deepwater Drilling Inc. (TRN-MDL-04937153 and TRN-MDL-01856805) to a number of Transocean employees, including Jess Richards, Scott

McKaig, and Ramsey Richards concerning recordable incidents, and specifically, finger injuries, in 2010.

61.    Admit that in his February 9, 2010 (9:38 p.m.) email (TRN-MDL-04937153 and TRN-MDL-01856805), Bill Sannan expressed concern that in the first six weeks of 2010, Transocean had suffered five recordable incidents, all of which were "hand finger injuries," and requested that each Rig Manager contact his rig the following day and "personally ask what is being done to prevent hand finger injuries.  We are obviously not doing enough!"

62.    Admit that on February 10, 2010 at 3:08 p.m., Jess Richards forwarded Bill Sannan's February 9, 2010 (9:38 p.m.) email with the Bates stamps TRN-MDL-04937153 and TRN-MDL-01856805 to Scott McKaig, Ramsey Richards, and Julian Soles, with the message, "[o]ur performance sucks.  I may never get another bonus as long as I'm working here" (TRN-MDL-04937153).

63.    Admit that on February 10, 2010, Julian Soles was employed by Transocean in the position of Manager, Corporate Planning.

64.    Admit that on February 10, 2010 at 12:36 p.m., Julian Soles responded to Jess Richards' February 10, 2010  (3:08 p.m.) email with the Bates stamp TRN-MDL-04937153, stating, "[m]ore good insight from the honey monster …. When is he going to visit the rigs to see what's happening and provide some meaningful direction.  That performance sucks, I think you're right that we'll never see a bonus again" (TRN-MDL-04937152).

65.    Admit that in his February 10, 2010 (12:36 p.m.) email (TRN-MDL-04937152), Julian Soles' reference to the "honey monster' was intended to mean Bill Sannan.

66.    Admit that on February 10, 2010 at 8:42 a.m., Scott McKaig responded to Julian Soles'
       February 10, 2010 (12:36 p.m.) email, stating, "SAM has had 6 recordables in 6 weeks
       and we have less rigs and less man hours....We also have 4 of the 6 Petrobras rigs not
       working just now[.] The Driller is 3 months late coming out of shipyard, the navigator
       doesn't have enough working thrusters left and has to go in for emergency shipyard, the
       F100 is on BOP downtime and the 710 had an EDS yesterday.   Premier drilling
       company....yeah right!!"  (TRN-MDL-04937152).

67.    Admit that on February 10, 2010 at 8:50 a.m., Jess Richards responded to Scott McKaig's
       February 10, 2010 (8:42 a.m.) email, stating, "Chris Ness is probably sitting in a coffee
       shop, reading the news paper, and tossing around whether he plays golf today or just
       takes a nap.  In spite of how difficult this decision process may be, I'm sure he is feeling
       pretty good right now"  (TRN-MDL-04937152).

68.    Admit that on February 10, 2010 at 8:50 a.m., Jess Richards responded to Scott McKaig's
       February 10, 2010 (8:42 a.m.) email, stating, "[o]h yeah, I forgot to mention that the
       DWH tested their lower annular without closing the test ram and blew up their 22" casing
       last night?  I'm sure we will find some way to blame it on the cementer"  (TRN-MDL-
       04937152).

69.    Admit that on February 10, 2010 at 6:28 p.m., Ramsey Richards responded to Jess
       Richards' February 10, 2010 (8:50 a.m.) email, stating, "[l]ooks like the cement plug on
       the casing blew up.  So perhaps it will be easier to blame the cementer now.  But the Sub
       Sea Engineer looks like he is taking the fall!"  (TRN-MDL-04937152).

70.     Admit that on February 10, 2010 at 8:40 p.m., Scott McKaig responded to Ramsey Richards' February 10, 2010 (6:28 p.m.) email, stating, "[w]e'll find that subsea engineer on the Spirit in a few months."

### TAB 5 - EXHIBIT 12

71.     Admit that Exhibit 12 attached hereto is a true and accurate copy of the Transocean document with the Bates stamps TRN-MDL-05758177 through TRN-MDL-05758409.

72.     Admit that the Transocean document with the Bates stamps TRN-MDL-05758177 through TRN-MDL-05758409 is a true and accurate copy of Larry McMahan's Day-Timer (Notebook Edition) for the period from July through December 2010.

73.     Admit that the entries in Larry McMahan's Day-Timer for the period from July through December 2010 (TRN-MDL-05758177 through TRN-MDL-05758409) were made by Larry McMahan.

74.     Admit that the entries in the Transocean document with the Bates stamps TRN-MDL-05758177 through TRN-MDL-05758409 were made by Larry McMahan while he was employed by Transocean.

75.     Admit that Larry McMahan's Day-Timer for the period from July through December 2010 (TRN-MDL-05758177 through TRN-MDL 05758409) was kept in the course of a regular business activity of Transocean.

76.     Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entry for July 18, 2010 (TRN-MDL-05758205): "Investigate - 1000 bbl LCM pill that was pumped during riser sweep - pill was pumped

12

so that it could be swept overboard legally as opposed to shipping it back to shore $. The LCM pill could not legally be pumped directly overboard. Weight - viscosity?"

77.    Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entry for July 29, 2010 (TRN-MDL-05758217):  "Paul - overdue maintenance. *Does a gas/vent in action not meet class?"

78.    Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entry in the August Notes and Memo page preceding the daily pages for August 2010 (TRN-MDL-05758222): "*Simrad Kongsberg - gas alarm - has no action - no sensors should have been inhibited. Outputs common would have been overwritten [sic].  MOC - override was handed over each shift change."

79.    Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entry in the August Notes and Memo page preceding the daily pages for August 2010 (TRN-MDL-05758222): "Gas - audible alarms x2 on bridge - 1 flame detection on 2 heat sensors would trigger overridden".

80.    Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entry in the August Notes and Memo page preceding the daily pages for August 2010 (TRN-MDL-05758222):   "Alarms actuated during ModuSpec/Rig Condition Assessment. MMS tested loss of purge alarm".

81.    Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entry in the August Notes and Memo page preceding the daily pages for August 2010 (TRN-MDL-05758222): "Gas alarm does not trigger ESD".

82.     Admit that in his Day-Timer for the period from July through December 2010, Larry

McMahan made the following entry in the August Notes and Memo page preceding the

daily pages for August 2010 (TRN-MDL-05758222):

> *Simrad Kongsberg - gas alarm - has no action - no sensors should have
> been inhibited. Outputs common would have been overwritten [sic].
> MOC - override was handed over each shift change.
> Gas - audible alarms x2 on bridge - 1 flame detection on 2 heat sensors
> would trigger overridden
> Alarms actuated during ModuSpec/Rig Condition Assessment. MMS
> tested loss of purge alarm.
> Gas alarm does not trigger ESD.
> *Gas Alarms - how do we manage these alarms on our vessels? Ent. Class
> - explosive level alarms"
> "1. Schematic w/ all sensors
> 2. Draw down to F&G only
> Location of all panels & monitors - SSS, matrix, acoustic
> Photos of panels to list out
> Units of gas - sensors listed
> Operators ability to communicate - PA system, emergency all
> Where can ESD be activated from (ESD)
> Outputs common - what is available & what is not available - C&E
> Sounds of alarms
> Recently list of inspection - MMS – ModuSpec
> Word search manuals of operation

83.     Admit that in his Day-Timer for the period from July through December 2010, Larry

McMahan made the following entry for August 19, 2010 (TRN-MDL-05758243):

"'Asset side really let you down' - disappointment - DT - procedures not being followed.

Solenoid tracking does not exist."

84.     Admit that in his Day-Timer for the period from July through December 2010, Larry

McMahan made the following entry for August 26, 2010 (TRN-MDL-05758251):

"LC&E Compliance - 2010 bonus 96.3% payout."

85.     Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entry for August 27, 2010 (TRN-MDL-05758252): "Marshall Islands - who is the language of CFR 250 written for? What is industry standard? Is there a presidence [sic] set within industry."

86.     Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entries for August 30, 2010 (TRN-MDL-05758256): "Lloyds report is contained" and  "Compliant to regulations?"

87.     Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entry for September 2, 2010 (TRN-MDL-05758261): "QHSE Steering Committee Mtg. - *Outstanding alerts & maintenance issues - safety/operational critical, quarterly meeting update from DMDs or GMS in quarterly HSE call."

88.     Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entries for September 2, 2010 (TRN-MDL-05758261):

> Pitch the baggage - look in the mirror
> +Clear R/R - everybody cannot do everything
> +Move from a frustrated lethargic org
> +Empower people to do their jobs
> +Reingauge [sic] Transocean as a clear leader
> +Honestly address HR issues - Pull our heads from the sand  +Address P&A.

89.     Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entry for September 3, 2010 (TRN-MDL-05758262):

> Spicey [sic] comments -
> People - right around the RT.
> Training/bed space
> HR issues

Manuals - not perfect - intent

90.  Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entry for October 1, 2010 (TRN-MDL-05758298): "*Change the admarality [sic] report - $$ vs resolution of issues" "Elephants in the Room! GSF Merger = TO Takeover - Fear Culture!"

91.  Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entry for October 20, 2010 (TRN-MDL-05758320): "*Risk* - Watch out for legal costs!! Claim of 20 mm to underwriters."

92.  Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entry for October 27, 2010 (TRN-MDL-05758328): "BOP reliability - shearing capacity" under the heading "Post Macondo – Long Term."

93.  Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entry for November 2, 2010 (TRN-MDL-05758337): "Macondo - Incident - Negative pressure test."

94.  Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entries for November 3, 2010 concerning the "Presidential Commission" (TRN-MDL-05758338):

        Kick detection
        Regulations
        Bromwicit
        David Troquet
        Negative test
        Float - BOP barriers? TOI WC Man.
        Why did we not catch the kick?
        Human factors?
        Fire/exp –
        Should have diverted overboard!!

16

Dec. 2009 711 - High vigilance - WHY?
When did we get this info from the UK?
Shoe track failure
Cement failure
CBL
Theme of presentation –
Multiple indicators vigilance should have higher!
Neg. PSI test should have been repeated.
Managerial side –
'No New News!'
About 15% accountability on Transocean
BP made comment - Prez Comm is going light on Transocean Legal –
USCG Hearings - Dec.
Industry - IADC mtg. - Safety Case

95.   Admit that in his Day-Timer for the period from July through December 2010, Larry
      McMahan made the following entry for November 16, 2010 (TRN-MDL-05758350):
      "Excessive BOP DT - Inconsistent Performance - Customer Relations Deteriorating -
      People Challenges."

96.   Admit that in his Day-Timer for the period from July through December 2010, Larry
      McMahan made the following entry for November 16, 2010 (TRN-MDL-05758350):
      "We heard some therapeutic whining which is fine - we have some unfinished work to do
      on people!!"

97.   Admit that in his Day-Timer for the period from July through December 2010, Larry
      McMahan made the following entry for November 16, 2010 (TRN-MDL-05758350):
      "What was most encouraging to me was the brief discussions about inspirational
      leadership & the statement to the group - 'what are WE going to do - to make a
      difference?'"

98.    Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entry for December 6, 2010 (TRN-MDL-05758380): "Update of Macondo [.] Internal investigation - BOP report NOT included."

99.    Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entry for December 10, 2010 (TRN-MDL-05758384): "Too much financial planning."

100.   Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entry for December 10, 2010 (TRN-MDL-05758350): "'Stop the loss' What does it take? 'Where is the urgency?' When customer is losing $?? Accountability & authority required. Our observation is there is a lot of grey in our organization."

101.   Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entry for December 13, 2010 (TRN-MDL-05758388): "Negative Test - US Gov does not understand why rig crew is not culpable."

102.   Admit that in his Day-Timer for the period from July through December 2010, Larry McMahan made the following entries for December 15, 2010 (TRN-MDL-05758390):

> Mark - EG - poor skills/attitude
> Harry - concern no influence over quality of people
> M - safety culture - 11 people hurt, 127 – NPT
> H - concerned about maintenance"
> Overdue maintenance
> SAFETY CULTURE

103.   Admit that the entries in Larry McMahan's Day-Timer for December 15, 2010 (TRN-MDL-05758390), were notes from a Subsea meeting that took place on December 15, 2010.

## TAB 6 - EXHIBIT 21 (A THROUGH J)

104.   Admit that Exhibits 21-A through 21-J attached hereto are true and accurate copies of the Transocean documents with the Bates stamps TRN-MDL-04012244 through TRN-MDL-04335057; TRN-MDL-04335062 through TRN-MDL-04335672; TRN-MDL-04335704 through TRN-MDL-04335710; TRN-MDL-04335663 through TRN-MDL-0433567; and TRN-MDL-04335711 through TRN-MDL-04335716.

105.   Admit that the Transocean documents with the Bates stamps TRN-MDL-04012244 through TRN-MDL-04335057; TRN-MDL-04335062 through TRN-MDL-04335672; TRN-MDL-04335704 through TRN-MDL-04335710; TRN-MDL-04335663 through TRN-MDL-0433567; and TRN-MDL-04335711 through TRN-MDL-04335716 are an exchange of emails that were sent at or near the time of the events recorded in the emails.

106.   Admit that the Transocean documents with the Bates stamps TRN-MDL-04012244 through TRN-MDL-04335057; TRN-MDL-04335062 through TRN-MDL-04335672; TRN-MDL-04335704 through TRN-MDL-04335710; TRN-MDL-04335663 through TRN-MDL-0433567; and TRN-MDL-04335711 through TRN-MDL-04335716 are an exchange of emails that were sent by Transocean employees with personal knowledge of the events and/or information documented in the emails.

107.   Admit that the Transocean documents with the Bates stamps TRN-MDL-04012244 through TRN-MDL-04335057; TRN-MDL-04335062 through TRN-MDL-04335672; TRN-MDL-04335704 through TRN-MDL-04335710; TRN-MDL-04335663 through TRN-MDL-0433567; and TRN-MDL-04335711 through TRN-MDL-04335716 are an exchange of emails that were sent and received in the course of a regular business activity of Transocean.

108.    Admit that the Transocean documents with the Bates stamps TRN-MDL-04012244 through TRN-MDL-04335057; TRN-MDL-04335062 through TRN-MDL-04335672; TRN-MDL-04335704 through TRN-MDL-04335710; TRN-MDL-04335663 through TRN-MDL-0433567; and TRN-MDL-04335711 through TRN-MDL-04335716 are an exchange of emails that were sent pursuant to a business duty by Transocean personnel.

109.    Admit that the Transocean documents with the Bates stamps TRN-MDL-04012244 through TRN-MDL-04335057; TRN-MDL-04335062 through TRN-MDL-04335672; TRN-MDL-04335704 through TRN-MDL-04335710; TRN-MDL-04335663 through TRN-MDL-0433567; and TRN-MDL-04335711 through TRN-MDL-04335716 are an exchange of emails that represent Transocean's regular practice of sending and receiving emails that record the types of events and/or information documented in these emails.

110.    Admit that the Transocean documents with the Bates stamps TRN-MDL-04012244 through TRN-MDL-04335057; TRN-MDL-04335062 through TRN-MDL-04335672; TRN-MDL-04335704 through TRN-MDL-04335710; TRN-MDL-04335663 through TRN-MDL-0433567; and TRN-MDL-04335711 through TRN-MDL-04335716 are an exchange of emails with the subject matter "RE: FIRST NEWS BULLETIN: A message from Bob Long and Steve Newman."

111.    Admit that Transocean document TRN-MDL-04012244 through TRN-MDL-04012245 is a exchange of emails from Larry McMahan forwarding a corporate wide email to Randy Atwood with a subject matter of "First New Bulletin: A Message from Bob Long and Steve Newman".

112.    Admit that Transocean employee Larry McMahan, at TRN-MDL-04012244 through TRN-MDL-04012245, characterized the corporation wide email bulletin with subject

matter "RE: FIRST NEWS BULLETIN: A message from Bob Long and Steve Newman" as "an independent look at how we operate as a company, system, training, communication, execution."

113.   Admit that the Transocean document with the Bates stamp TRN-MDL-04012244 through TRN-MDL-04335057; TRN-MDL-04335062 through TRN-MDL-04335672; TRN-MDL-04335704 through TRN-MDL-04335710; TRN-MDL-04335663 through TRN-MDL-0433567; and TRN-MDL-04335711 through TRN-MDL-04335716 are an exchange of emails that include an email from Transocean Operations Manager Randy Atwood to Larry McMahan that states that he hoped someone "from 'real operations' is involved in reviewing the data/reports and has the collective ears of this group so some common sense can also be mixed in the recipe."

114.   Admit that the Transocean document with the Bates stamp TRN-MDL-04012244 through TRN-MDL-04335057; TRN-MDL-04335062 through TRN-MDL-04335672; TRN-MDL-04335704 through TRN-MDL-04335710; TRN-MDL-04335663 through TRN-MDL-0433567; and TRN-MDL-04335711 through TRN-MDL-04335716 are an exchange of emails that regard a system wide review that followed four fatalities of Transocean employees who died while working on four different Transocean drilling rigs.

115.   Admit that Bob Long and Steve Newman were the CEO and President, respectively, at the time of sending the system wide announcement on October 21, 2009.

116.   Admit that the Transocean documents with the Bates stamps TRN-MDL-04012244 through TRN-MDL-04335057; TRN-MDL-04335062 through TRN-MDL-04335672; TRN-MDL-04335704 through TRN-MDL-04335710; TRN-MDL-04335663 through

TRN-MDL-0433567; and TRN-MDL-04335711 through TRN-MDL-04335716 are an exchange of emails wherein Bob Long and Steve Newman believed that the fatalities should have been prevented, and that "we clearly are not executing our safety processes as well as we once thought."

117.   Admit that the Transocean documents with the Bates stamps TRN-MDL-04012244 through TRN-MDL-04335057; TRN-MDL-04335062 through TRN-MDL-04335672; TRN-MDL-04335704 through TRN-MDL-04335710; TRN-MDL-04335663 through TRN-MDL-0433567; and TRN-MDL-04335711 through TRN-MDL-04335716 are an exchange of emails with the subject matter "RE: FIRST NEWS BULLETIN: A message from Bob Long and Steve Newman" wherein Bob Long and Steve Newman believed it was vital to learn from the subject fatalities so that no one else is injured or killed.

118.   Admit that eleven Transocean workers were killed on April 20, 2010.

119.   Admit that the Transocean documents with the Bates stamps TRN-MDL-04012244 through TRN-MDL-04335057; TRN-MDL-04335062 through TRN-MDL-04335672; TRN-MDL-04335704 through TRN-MDL-04335710; TRN-MDL-04335663 through TRN-MDL-0433567; and TRN-MDL-04335711 through TRN-MDL-04335716 are an exchange of emails wherein Bob Long and Steve Newman announced that Lloyd's Register, a leading risk management organization, would assist Transocean in assessing their safety policies and procedures, as well as their safety culture.

120.   Admit that the Transocean documents with the Bates stamps TRN-MDL-04012244 through TRN-MDL-04335057; TRN-MDL-04335062 through TRN-MDL-04335672; TRN-MDL-04335704 through TRN-MDL-04335710; TRN-MDL-04335663 through TRN-MDL-0433567; and TRN-MDL-04335711 through TRN-MDL-04335716 are an

exchange of emails with the subject matter "RE: FIRST NEWS BULLETIN: A message from Bob Long and Steve Newman" included Bob Long's comments and suggestions for edits of the proposed announcement regarding the safety review being conducted by Lloyd's Register on behalf of Transocean and contains Long's concerns that the announcement seems to indicate a major overhaul of our system and policies rather than trying to determine what is wrong and why we cannot seem to operate safely, which Long believes will not be well received by Transocean employees.

121.   Admit that Bob Long, as evidenced at Transocean document TRN-MDL-04335704 through TRN-MDL-04335705, was opposed to including the four month time period for the fatalities.


### TAB 7- EXHIBIT 9

122.   Admit that Exhibit 9 attached hereto is a true and accurate copy of the Transocean document with the Bates stamp TRN-MDL-05762567.

123.   Admit that the Transocean document with the Bates stamp TRN-MDL- 05762567 is an exchange of emails that were sent at or near the time of the events recorded in the emails.

124.   Admit that the Transocean document with the Bates stamp TRN-MDL-05762567 is exchange of emails that were sent by Transocean employees with personal knowledge of the events and/or information documented in the emails.

125.   Admit that the Transocean documents with the Bates stamp TRN-MDL-05762567 is an exchange of emails that were sent and received in the course of a regular business activity of Transocean.

126.   Admit that Transocean had a policy or imposed a business duty on its employees to report or record the information documented in the emails with the Bates stamp TRN-MDL-05762567.

127.   Admit that at the time of the Transocean emails with the Bates stamp TRN-MDL-05762567, Transocean had a regular practice of sending and receiving emails that recorded the types of events and/or information documented in these emails.

128.   Admit that the Transocean document with the Bates stamp TRN-MDL-05762567 is an email exchange between Larry McMahan and Steven Newman on September 11, 2009 that state their subject matter as "Feeling Discouraged?   DON'T BE!" (TRN-MDL-05762567).

129.   Admit that the email exchange between Larry McMahan and Steven Newman on September 11, 2009 began with Larry Newman's email expressing concern over the lack of commitment to safety by Transocean Managing Directors (TRN-MDL-05762567).

130.   Admit that in his September 11, 2009 email to Steven Newman, Larry McMahan stated that although he obtained his MBA from a Cracker Jack box, it is just as good as most that were displayed during a telephone conference with Transocean Managing Directors concerning safety the previous day (TRN-MDL-05762567).

131.   Admit that in his September 11, 2009 email to Steven Newman, Larry McMahan expressed his concern that during a telephone conference with Managing Directors on September 10, 2009, he heard many reasons to justify Transocean's failures, and few ideas or suggestions about how to implement changes to Transocean's safety culture (TRN-MDL-05762567).

132.   Admit that in his September 11, 2009 email to Steven Newman, Larry McMahan expressed his concern that during a telephone conference with Managing Directors on September 10, 2009, Transocean's Managing Directors failed to demonstrate leadership and a pro-active attitude toward change in Transocean's safety culture (TRN-MDL-05762567).

133.   Admit that in his September 11, 2009 email to Steven Newman, Larry McMahan expressed his concern that if field division leadership did not have the passion to fight in favor of an "attitude towards change", Transocean would fail in its efforts to implement change (TRN-MDL-05762567).

134.   Admit that in his September 11, 2009 email in response to Larry McMahan's September 10, 2009 email, Steven Newman expressed his agreement with Larry McMahan's assessment of Transocean's Managing Directors' lack of commitment to safety (TRN-MDL-05762567).

135.   Admit that in his September 11, 2009 email in response to Larry McMahan's September 10, 2009 email, Steven Newman agreed with Larry McMahan's assessment that Transocean needed more "passion" and "active involvement" on the part of its Managing Directors

**TAB 8 - EXHIBIT 27**

136.   Admit that Exhibit 27 attached hereto is a true and accurate copy of the Transocean document with the Bates stamps TRN-MDL-06570746 through TRN-MDL-06570813.

137.   Admit that the Transocean document with the Bates stamp TRN-MDL-06570746 is an email that was sent at or near the time of the events recorded in the emails.

138.   Admit that the Transocean document with the Bates stamp TRN-MDL-06570746 is an email that was sent by a Transocean employee, Marc A. Cleaver, with personal knowledge of the events and/or information documented in the email.

139.   Admit that the Transocean document with the Bates stamp TRN-MDL-06570746 is an email that was sent and received in the course of a regular business activity of Transocean.

140.   Admit that the e-mail with the Bates stamp TRN-MDL-06570746 was correspondence from a Transocean employee, Marc A. Carter, to other Transocean employees, David Mullen, Ron Allen, and Simon Watson.

141.   Admit that the Transocean had a policy or imposed a business duty on its employees to report or record the information documented in the email with the Bates stamp TRN-MDL-06570746.

142.   Admit that at the time of the Transocean email with the Bates stamp TRN-MDL-06570746, Transocean had a regular practice of sending and receiving emails that recorded the types of events and/or information documented in this email.

143.   Admit that the Transocean document with the Bates stamp TRN-MDL-06570746 is an e-mail sent on May 8, 2005 from Marc A. Cleaver, a Transocean employee, to other Transocean employees, with the subject matter: "Reducing Unplanned Operational Events."

144.   Admit that Transocean employee Marc A. Cleaver attached to his email dated May 8, 2005 (TRN-MDL-06570746) a Transocean document entitled "Reducing Unplanned Operational Events" (TRN-MDL-06570747 through TRN-MDL-06570813).

145. Admit that the Transocean document entitled "Reducing Unplanned Operational Events" (TRN-MDL-06570747 through TRN-MDL-06570813) was created and kept by Transocean as a part of its regular business activities.

146. Admit that the document with the Bates stamps TRN-MDL-06570747 through 06570813 is a Transocean document entitled "Reducing Unplanned Operational Events" (TRN-MDL-06570747 through TRN-MDL-06570813).

147. Admit under the section entitled "Observations", the Transocean document entitled "Reducing Unplanned Operational Events" states as follows:  "Key Subsea and TD/PH Systems have inherent design weaknesses making them susceptible to failure.  Equipment is not robust and lacks redundancy."  (TRN-MDL-06570810).

148. Admit under the section entitled "Observations", the Transocean document entitled "Reducing Unplanned Operational Events" states as follows:  "Rig Teams Often Driven to Defer Maintenance to reach Budget Objectives"  (TRN-MDL-06570810).

149. Admit under the section entitled "Observations", the Transocean document entitled "Reducing Unplanned Operational Events" states that the shortage of experienced and skilled personnel looking after critical equipment like Subsea "will become more acute in 3-5 years as experiences exit the industry"  (TRN-MDL-06570811).

150.  (TRN-MDL-065762567).

## TAB 9 - EXHIBIT 13

151. Admit that Exhibit 13 attached hereto is a true and accurate copy of the Transocean document with the Bates stamps TRN-MDL-05467036 through TRN-MDL-05467038.

152. Admit that the Transocean document with the Bates stamps TRN-MDL-05467036 through TRN-MDL-05467038 is an exchange of emails that were sent at or near the time of the events recorded in the emails.

153. Admit that the Transocean document with the Bates stamps TRN-MDL-05467036 through TRN-MDL-05467038 is an exchange of emails that were sent or received by Transocean employees with personal knowledge of the events and/or information documented in the emails.

154. Admit that the Transocean document with the Bates stamps TRN-MDL-05467036 through TRN-MDL-05467038 is an exchange of emails that were sent and/or received in the course of a regular business activity of Transocean.

155. Admit that the Transocean had a policy or imposed a business duty on its employees to report or record the information documented in the email exchange with the Bates stamps TRN-MDL-05467036 through TRN-MDL-05467038.

156. Admit that at the time of the series of emails with the Bates stamps TRN-MDL-05467036 through TRN-MDL-05467038, Transocean had a regular practice of sending and receiving emails that recorded the types of events and/or information documented in these emails.

157. Admit that the Transocean document with the Bates stamps TRN-MDL-05467036 through TRN-MDL-05467038 is an exchange of e-mails with the subject matter: "Arctic 1 HSE status."

158. Admit that on March 31, 2010 through April 9, 2010, Arnaud Bobillier was employed by Transocean in Geneva.

159. Admit that on March 31, 2010 through April 9, 2010, Guilherme Coelho was an employee of Transocean in Brazil.

160. Admit that on March 31, 2010, Martin Vos, a Vice President-Deepwater Wells for Shell International Exploration and Production, Inc., sent an email to Arnaud Bobillier and Guilherme Coelho in which he expressed his "serious concern" with the HSE status on the Arctic 1 in Brazil (TRN-MDL-05467037).

161. Admit that Arnaud Bobillier and Guilherme Coelho received the March 31, 2010 email from Martin Vos with the Bates stamp TRN-MDL-05467037.

162. Admit that the Transocean document with the Bates stamp TRN-MDL-05467036 is an April 9, 2010 email exchange between Shell and Transocean regarding Arctic 1 operations in Brazil.

163. Admit that Transocean was aware on March 31, 2010 of serious problems with safety on the Arctic 1 in Brazil (TRN-MDL-05467037).

164. Admit that in 2009, Martin Vos wrote to Steve Newman concerning High Potential Incidents in the Arctic, and this resulted in serious changes and no more LTs, but there had since been an increase in incidents and HIPOS again in 2010 (TRN-MDL-05467037).

165. Admit that in his March 31, 2010 email, Martin Vos expressed his concern over systemic problems with onshore management in Brazil (TRN-MDL-05467037).

166. Admit that in his March 31, 2010 email, Martin Vos informed Arnaud Bobillier and Guilherme Coelho that an investigation revealed that the problems with noncompliance with MSE management system on the Arctic 1 were endemic and that the problems had

been accepted by Transocean leadership offshore and onshore over a long time (TRN-MDL-05467037).

167.  Admit that in his March 31, 2010 email, Martin Vos informed Arnaud Bobillier and Guilherme Coelho that the maintenance system (RMS) of the Arctic 1 could be and was monitored offsite, and that "if this is correct head office must have allowed critical maintenance issue to pass the deadlines, in some instances by two years" (TRN-MDL-05467037).

168.  Admit that in his March 31, 2010 email, Martin Vos provided Arnaud Bobillier and Guilherme Coelho with the opinion from the Shell Well Delivery Manager in Brazil that "it is obvious that the offshore team are trying to keep the rig running as much as they can but so far they have not been able to catch up with outstanding critical actions in parallel to their day to day operational duties (TRN-MDL-05467037).

169.  Admit that in his March 31, 2010 email, Martin Vos informed Arnaud Bobillier and Guilherme Coelho that "Transocean's ability to provide spare parts and equipment to [the Arctic 1] has been an issue for a long time and is now chronic" (TRN-MDL-05467037).

170.  Admit that, as stated in Martin Vos' email dated March 31, 2010 to Arnaud Bobillier and Guilherme Coelho, the investigation of a high potential dropped object incident in November 2009 on the Arctic 1 revealed that the installation of a retention lanyard was made mandatory in an advisory issued in November 2008, but that the recommended kit, ordered in February 2009, did not arrive until October of 2009 and was never installed until after the November 2009 incident (TRN-MDL-05467037).

171.  Admit that, as stated in Martin Vos' email dated March 31, 2010 to Arnaud Bobillier and Guilherme Coelho, there were symptoms of lack of trust as to Transocean leadership's commitment to safety (TRN-MDL-05467037).

172.  Admit that, as stated in Martin Vos' email dated March 31, 2010 to Arnaud Bobillier and Guilherme Coelho, it was the opinion of the Shell Well Delivery Manager in Brazil that Transocean crews "try to deliver what they think their leadership want from them to 'keep things going at all cost'" (TRN-MDL-05467037).

173.  Admit that in his March 31, 2010 email to Arnaud Bobillier and Guilherme Coelho, Martin Vos provided the Brazil Shell Well Delivery Manager's opinion that it was obvious that the number of issues they were dealing with were "extraordinary and will require extraordinary interventions" (TRN-MDL-05467037).

174.  Admit that in his March 31, 2010 email to Arnaud Bobillier and Guilherme Coelho, Martin Vos recommended suspension of operations on Arctic 1 for a "good number of days to complete all safety critical outstanding tasks with no further delays and restore the integrity of safety critical systems before we proceed with normal operations" (TRN-MDL-05467037).

175.  Admit that on March 31, 2010, Arnaud Bobillier responded to Martin Vos' email, and stated his agreement with a shut-down of the Arctic 1, with the main objective to provide time to resolve the outstanding issue and bridge the gap between onshore and offshore management (TRN-MDL-05467036).

176.  Admit that in his March 31, 2010 email to Martin Vos, Arnaud Bobillier stated that he would "carefully look at the issues that could likely exist at the division level and/or fleet wide (as opposed to being Arctic 1 specific)" (TRN-MDL-05467036).

**TAB 10 - EXHIBIT 8**

177. Admit that Exhibit 8 attached hereto is a true and accurate copy of the Transocean document with the Bates stamps TRN-MDL-05877808 through TRN-MDL-05877809.

178. Admit that the Transocean documents with the Bates stamps TRN-MDL-05877808 through TRN-MDL-05877809 are two emails that were sent at or near the time of the events recorded in the emails.

179. Admit that the Transocean documents with the Bates stamps TRN-MDL-05877808 through TRN-MDL-05877809 are two emails that were sent by Transocean employees with personal knowledge of the events and/or information documented in the emails.

180. Admit that the Transocean documents with the Bates stamps TRN-MDL-05877808 through TRN-MDL-05877809 are two emails that were sent and received in the course of a regular business activity of Transocean.

181. Admit that Transocean had a policy or imposed a business duty on its employees to report or record the information documented in the emails with the Bates stamps TRN-MDL-05877808 through TRN-MDL-05877809.

182. Admit that at the time of the Transocean emails with the Bates stamps TRN-MDL-05877808 through TRN-MDL-05877809, Transocean had a regular practice of sending and receiving emails that recorded the types of events and/or information documented in these emails.

183. Admit that the Transocean documents with the Bates stamps TRN-MDL-05877808 through TRN-MDL-05877809 are two emails with the subject matter: "How to keep the learnings of previous alerts?" (TRN-MDL-06153690).

184.    Admit that on June 19, 2009, Arnaud Bobiller was an employee of Transocean in Geneva.

185.    Admit that on June 19, 2009, Jimmy Moore, Walter Cabucio, Rob Saltiel, and Adrian Rose were employees of Transocean in Houston.

186.    Admit that on June 19, 2009, Arnaud Bobillier sent an email to Jimmy Moore and Walter Cabucio concerning a man overboard incident that occurred in Transocean's Caspian operations a few days before the June 19, 2009 email.

187.    Admit that in his June 19, 2009 email to Jimmy Moore and Walter Cabucio, Arnaud Bobillier expressed concern that they could not link critical TSTP's to alerts covering incidents or accidents that had occurred in the past.

188.    Admit that Walter Calbucio responded to Arnaud Bobillier's June 19, 2009 email on June 19, 2009, and stated that communication related to events and incidents via Alerts was not the problem, but that the problem lied in the actual follow-up and implementation of the lessons learned to affect a change in performance.

## INTERROGATORY

1.   If your response to any of the foregoing Requests for Admissions is anything other than an unqualified admission: (a) identify with particularity all facts that support your qualified admission or denial of each such Request for Admission; (b) identify all witnesses with knowledge of any facts that support your qualified admission or denial of each such Request for Admission; and (c) identify all documents that support your qualified admission or denial of each such Request for Admission.

This <u>28th</u> day of August, 2012.


    <u>/s/   Stephen J. Herman</u>                      <u>/s/ James Parkerson Roy</u>
**Stephen J. Herman**, La. Bar No. 23129        **James Parkerson Roy**, La. Bar No.11511
**HERMAN HERMAN KATZ & COTLAR LLP**     **DOMENGEAUX WRIGHT ROY & EDWARDS LLC**

820 O'Keefe Avenue                        556 Jefferson Street, Suite 500
New Orleans, Louisiana 70113           Lafayette, Louisiana 70501
Telephone: (504) 581-4892              Telephone: (337) 233-3033
Fax No. (504) 569-6024                  Fax No. (337) 233-2796
E-Mail: sherman@hhkc.com            E-Mail: jimr@wrightroy.com
*Plaintiffs Liaison Counsel*               *Plaintiffs Liaison Counsel*


### PLAINTIFFS' STEERING COMMITTEE

Brian H. Barr                        Robin L. Greenwald

LEVIN, PAPANTONIO, THOMAS, MITCHELL,  WEITZ & LUXENBERG, PC
ECHSNER & PROCTOR, PA

316 South Baylen St., Suite 600          700 Broadway

Pensacola, FL 32502-5996             New York, NY  10003

Office:  (850) 435-7045                Office:  (212) 558-5802

Telefax: (850) 436-6187               Telefax: (212) 344-5461

E-Mail: bbarr@levinlaw.com           E-Mail:  rgreenwald@weitzlux.com



Jeffrey A. Breit                       Rhon E. Jones

BREIT DRESCHER & IMPREVENTO      BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P. C.

Towne Pavilion Center II             218 Commerce St., P.O. Box 4160

600 22nd Street, Suite 402            Montgomery, AL 36104

Virginia Beach, Virginia 23451        Office:  (334) 269-2343

Office:  (757) 670-3888             Telefax: (334) 954-7555

Telefax: (757) 670-3895            E-Mail:  rhon.jones@beasleyallen.com

E-Mail: jbreit@bdbmail.com

Elizabeth J. Cabraser

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP

275 Battery Street, 29th Floor

San Francisco, CA  94111-3339

Office:  (415) 956-1000

Telefax: (415) 956-1008

E-Mail:  ecabraser@lchb.com


Philip F. Cossich, Jr.

COSSICH, SUMICH, PARSIOLA & TAYLOR

8397 Highway 23, Suite 100

Belle Chasse, LA  70037

Office:  (504) 394-9000

Telefax: (504) 394-9110

E-Mail:  pcossich@cossichlaw.com


Robert T. Cunningham

CUNNINGHAM BOUNDS, LLC

1601 Dauphin Street, P. O. Box 66705

Mobile, AL  36660

Office:  (251) 471-6191

Telefax: (251) 479-1031

E-Mail:  rtc@cunninghambounds.com

Matthew E. Lundy

LUNDY, LUNDY, SOILEAU & SOUTH, LLP

501 Broad Street

Lake Charles, LA  70601

Office:  (337) 439-0707

Telefax: (337) 439-1029

E-Mail:  mlundy@lundylawllp.com


Michael C. Palmintier

deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'

618 Main Street

Baton Rouge, LA  70801-1910

Office:  (225) 344-3735

Telefax: (225) 344-0522

E-Mail:  mpalmintier@dphf-law.com


Paul M. Sterbcow

LEWIS, KULLMAN, STERBCOW &
ABRAMSON

601 Poydras Street, Suite 2615

New Orleans, LA  70130

Office:  (504) 588-1500

Telefax:  (504) 588-1514

E-Mail:  sterbcow@lksalaw.com

Alphonso Michael "Mike" Espy

MORGAN & MORGAN, P.A.

188 East Capitol Street, Suite 777

Jackson, MS 39201

Office: (601) 949-3388

Telefax: (601) 949-3399

E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.

FAYARD & HONEYCUTT

519 Florida Avenue, SW

Denham Springs, LA  70726

Office:  (225) 664-4193

Telefax: (225) 664-6925

E-Mail:  calvinfayard@fayardlaw.

Ervin A. Gonzalez

COLSON HICKS EIDSON

255 Alhambra Circle, Penthouse

Coral Gables, FL 33134

Office: (305) 476-7400

Telefax: (305) 476-7444

E-Mail:  ervin@colson.com

Scott Summy

BARON & BUDD, P.C.

3102 Oak Lawn Avenue, Suite 1100

Dallas, TX  75219

Office:  (214) 521-3605

Telefax: (214) 599-1172

E-Mail:  ssummy@baronbudd.com

Mikal C. Watts

WATTS GUERRA CRAFT, LLP

Four Dominion Drive, Building 3, Suite 100

San Antonio, TX 78257

Office: (210) 447-0500

Telefax: (210) 447-0501

E-Mail:  mcwatts@wgclawfirm.com

Conrad S.P. "Duke" Williams

WILLIAMS LAW GROUP

435 Corporate Drive, Suite 101

Maison Grand Caillou

Houma, Louisiana 70360

Office: (985) 876-7595

Fax No. (985) 876-7594

E-Mail: duke@williamslawgroup.org

Joseph F. Rice

MOTLEY RICE LLC

28 Bridgeside Blvd.

Mount Pleasant, SC 29464

Office: (843) 216-9159

Fax No. (843) 216-9290

E-Mail: jrice@motleyrice.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above and foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with PRE-TRIAL ORDER NO. 12, this 28th day of August, 2012.

_____
/s/ Stephen J. Herman and James Parkerson Roy