# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179 |
| | Section J |
| This Document Relates To: *Knotty Girl Fishing L.L.C. v. Worley Catastrophe Services LLC and BP Exploration & Production Inc.*, No. 11-cv-00649 | Hon. Carl J. Barbier |
| | Magistrate Judge Shushan |

## BP'S OPPOSITION TO PLAINTIFF'S MOTION TO LIFT STAY

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
richard.godfrey@kirkland.com
andrew.langan@kirkland.com

Jeffrey Bossert Clark
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
jeffrey.clark@kirkland.com

Don K. Haycraft (Bar #14361)
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108
dkhaycraft@liskow.com

**TABLE OF CONTENTS**

*Page*

INTRODUCTION ..............................................................................................................................1

ARGUMENT ....................................................................................................................................3

I.       The Stay Was Appropriate When Imposed and Remains So. ............................................3

II.      This Court Rightly Decided Not to Make Cases Challenging GCCF Releases Part of the Recent Round of Post-Settlement Motions It Invited, Since Such Release Claims Are Not Ripe and Are Highly Fact-Bound. ............................................................7

CONCLUSION................................................................................................................................11

## INTRODUCTION

Plaintiffs, Knotty Girl Fishing, L.L.C., Tonya Y. Peterson and James Ray Peterson, filed their First Amended, Supplemental, and Restated Petition for Declaratory Judgment ("Petition" or "complaint") on February 16, 2011 in the 21st Judicial District Court, Tangipahoa Parish, Louisiana.  Rec. Doc. 1-2, *Knotty Girl Fishing L.L.C. v. Worley Catastrophe Servs. LLC and BP Exploration & Production Inc.*, No. 11-cv-649 (E.D. La. filed Mar. 23, 2011).  BP Exploration & Production Inc. ("BP") removed the case to federal court on March 23, 2011, where it joined hundreds of other cases arising out of the *Deepwater Horizon* oil spill in MDL 2179.

At the request of both the Plaintiff's Steering Committee and the Defense Liaison Counsel, this Court entered Pre-Trial Order 25 "to facilitate the efficient and effective management and prosecution of the coordinated actions."  Rec. Doc. No. 983 (issued Jan. 12, 2011) ("PTO 25").  Among PTO 25's measures to achieve that goal were the creation of several "pleading bundles" and the imposition of a stay of all of the underlying actions organized into those bundles — including Plaintiffs' Petition.  *See id.* ¶ 8.  Plaintiffs' preservation of their underlying tort claims concerning a claimed loss of fishing opportunities, *see id.* at ¶ 11, clearly makes their complaint part of the B1 Pleading Bundle.  *See also* Petition at Prayer (6) (seeking "a declaration of any other rights, title, and interests to which the plaintiffs may be entitled to under state law").  Pre-Trial Order 15 also controls here.  It provides that any motion that might be filed is "continued without date unless a motion is specifically excepted from the continuance by the Court."  Rec. Doc. No. 676 (issued Nov. 5, 2010).

Plaintiffs now ask this Court to lift these Orders as applied to its case and allow them to file a near-term remand motion clearing the way for a return to state court, if they can prevail on

their position resisting the existence of removal jurisdiction. *See* Motion to Lift Stay at 1 (Rec. Doc. 7381-1 (Sept. 12, 2012)).

It is critical to consider that removals premised on OCSLA jurisdiction are an important foundational principle of this MDL, dating back to this Court's early decision on the remand motions filed by the Parishes. *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 747 F. Supp. 2d 704 (E.D. La. 2010), *on appeal*, No. 12-30012 (5th Cir.). Citing the conclusions and reasoning in this decision, scores if not hundreds of follow-on cases since this Court handed down its October 6, 2010 decision have been removed to federal court by BP and other Defendants and ultimately directed to this MDL by the JPML. Now is not the time to consider revisiting that published opinion. Additionally, this Court's recent decision not to make such challenges to GCCF releases part of the motions briefing invited by the Court after granting preliminary approval of the two class settlements was correct and should not be reconsidered.

The effective stay of this case undoubtedly continues to (i) serve judicial economy; (ii) avoid the risk of inconsistent outcomes in various *Deepwater Horizon* cases removed under OCSLA jurisdiction and/or Shelf enclave jurisdiction that have already been or may in future be filed; and (iii) impose little or no prejudice on Plaintiffs because they readily admit in their own complaint that they signed a full release of claims in exchange for tens of thousands of dollars. Settlement contracts are presumed valid. *See, e.g., Hymel v. Eagle, Inc.*, 7 So. 2d 1249, 1257-58 (La. Ct. App. 2009). The Plaintiffs here merely seek to avoid the effects of the release (which are, of course, *aimed at preventing* further litigation) based on weak claims of "economic leverage" purportedly exercised over them by the Gulf Coast Claims Facility ("GCCF").

Lastly, note as a supporting factor counseling against lifting the stays, two of the jurisdictional removal issues at issue here are currently before the Fifth Circuit in the Louisiana Parishes' appeal. *See* Exhibit 1 (excerpts of BP's opposition brief). That appeal is now fully briefed, coincidentally, as of today September 24, 2012. *See* Order, *In re Deepwater Horizon*, No. 12-30012, Doc. # 00511979096 (5th Cir. Sept. 7, 2012) (Exhibit 2). It serves judicial economy to await the resolution of any issues concerning *Deepwater Horizon* removals based on the Outer Continental Shelf Lands Act ("OCSLA") and/or federal-enclave jurisdiction until after the Fifth Circuit holds oral argument (if any) and issues its decision. *See* Exhibit 1 at 21-35 (OCSLA jurisdiction), 35-39 (enclave jurisdiction); *compare* Notice of Removal, *Knotty Girl Fishing L.L.C. v. Worley Catastrophe Servs. LLC and BP Exploration & Production Inc.*, No. 11-cv-649 (E.D. La. filed Mar. 23, 2011) at ¶¶ 21-22, 25-27 (OCSLA jurisdiction) and ¶ 27 (enclave jurisdiction) (attached as Exhibit 3).

Plaintiffs' motion to lift the stay should be denied.

## ARGUMENT

### I.     The Stay Was Appropriate When Imposed and Remains So.

This Court imposed the stay in PTO 25 "to facilitate the efficient and effective management and prosecution of the coordinated actions." Rec. Doc. No. 983. Nothing has occurred to diminish the importance of those goals or to repudiate the means this Court has chosen to implement them. To the contrary, the complementary stays in PTO 15 and 25 continue to allow the Court and the parties to resolve numerous cases without focusing on whichever litigant is making the loudest demand for attention at any given moment. For the same reasons the stay was initially appropriate, it remains appropriate now.

District Courts hold "the general discretionary power . . . to stay proceedings in the interest of justice and in control of their dockets." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d

3

541, 544-45 (5th Cir. 1983). *See also Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936) (explaining that "the power to stay proceedings is incidental to the power inherent in every court"). The question of whether stays are appropriate to allow multidistrict litigation to unfold in an orderly fashion has surfaced several times in cases connected with the *Deepwater Horizon* incident. Some of those cases have addressed the issue of whether questions of removal jurisdiction should be stayed (and resolved by this Court) or instead resolved immediately (by a different federal district court). As has been noted in two such cases, "[t]hree factors are generally relevant to a stay [in this context]: (1) potential prejudice to the nonmovant; (2) hardship and inequity to the movant if the action is not stayed; and (3) the judicial resources to be saved by avoiding duplicative litigation if the cases are consolidated." *Curtis v. BP Am., Inc.*, 808 F. Supp. 2d 976, 979 (S.D. Tex 2011); *see also Meinhart v. Halliburton Energy Servs., Inc.*, No. H-11-0073, 2011 WL 1463600 at *7 (S.D. Tex. Apr. 4, 2011). BP's positions concerning the entry of and adherence to the stays granted in these cases have repeatedly prevailed.[1]

Although *Curtis* and *Meinhart* focused on a stay pending transfer to this MDL, the stay standards are universal features of basic equity and thus are equally applicable to the question of whether a case now in this Court should remain stayed until the Court devises a plan for effectively sequencing and otherwise managing the issues Plaintiffs seek to litigate. Each of the three classic equitable factors weigh in favor of a continued stay in Plaintiffs' case.

*First*, the Plaintiffs seeking to lift the stay here have already received a sizable payout by the GCCF — *$66,400*. *See* Plaintiffs' Petition at ¶ 23 (conceding the reception of $41,400 in

---

[1] Numerous courts around the Gulf and elsewhere have readily granted stays in *Deepwater Horizon* litigation. As just a few examples, see, e.g.*, Vath, et al. v. BP plc, et al.*, No. 2:10-cv-01273, (E.D. La. May 25, 2010); *Trung M Le, et al. v. BP Exploration and Prod. Inc., et al.*, No. 4:11-cv-01397 (S.D. Tex., Apr. 25, 2011); *Schouest, et al. v. BP Prods. N. Am. Inc., et al.*, No. 6:10-cv-00727 (W.D. La., June 2, 2010); *Ward, et al. v. BP plc, et al.*, No. 4:10-cv-00157 (N.D. Fla., May 13, 2010); *Trieu, et al. v. BP Exploration & Prod., Inc., et al.*, No. 1:10-cv-00177 (S.D. Miss. June 6, 2010); *Divine Fish House, Inc., et al. v. BP plc, et al.*, No. 2:10-cv-01461 (D.S.C. Aug. 13, 2010).

4

interim payments *without a release even being sought by the GCCF* and a $25,000 final payment that they received in exchange for signing a release). Moreover, Plaintiffs claim injury from the closure of fishing areas. *See id.* at ¶ 11. But virtually all state and federal fishing areas were open *as early as the end of November 2010*, nearly two years ago. *See* Declaration of L. Kelly, Ph.D., at ¶ 17 (Rec. Doc. 7114-13) (Aug. 13, 2012).[2] The only interest the Plaintiffs seek to vindicate are weak claims that they succumbed to "economic leverage" — claims that facially seem quite implausible since they were paid *more* by the GCCF *without releases* ($41,400) than they were paid in connection with accepting a release ($25,000). In the overall equitable balance, the Plaintiffs here are poorly situated in relative terms to press for a decision on remand issues as compared to other plaintiffs who received no GCCF payouts. The tort harm they complain of (closed fishing areas) and the economic duress they complain prevented a full tort recovery thereon has long ended and they were concededly paid $66,400 in compensation for impacts on them during 2010. At best, they face the minimal delay associated with waiting for the appeal resolution and its application to this case in order to try to recover anything they could show they were owed *over* $66,400, even assuming they could ever surmount the high hurdle of convincing the Court to set aside a release they voluntarily signed.[3] The voluntary nature of the

---

[2] Dr. Kelly merely summarizes matters concerning the reopened fishing areas that are readily capable of judicial notice. At the Court's request, BP can supply a full array of judicially noticeable materials on reopened fishing areas but BP believes the relevant judicially noticeable facts are already well known to the Court and thus BP does not seek to burden the Court by filing a host of exhibits unnecessarily.

[3] Any delay here will be minimal since two of the relevant jurisdictional issues will soon be addressed by the Fifth Circuit in the Parish appeals. The delay is not one of "indefinite duration." *Daigle v. DRC Emergency Servs., LLC*, No. 11-2499, 2012 WL 2871252, at *1 (E.D. La. July 12, 2012). The incorrect position the Plaintiffs take here that OCSLA jurisdiction and enclave jurisdiction do not support removal of their case is being ably presented to the Fifth Circuit by the Parish Appellants and their supporting *amici*. There is no reason to render a decision that may need to be altered depending on what the Fifth Circuit decides in that appeal. Furthermore, as Magistrate Judge Wilkinson has recognized in this litigation as a general matter, BP and the other defendants in MDL 2179 have "worked diligently in the pending MDL," as is reflected in the settlement of numerous of the economic loss cases. *Id.* at *2. BP did not initiate the relevant appeal, let alone was that appeal initiated for reasons of delay. Any plaintiff before this Court would be hard-pressed to point to anything

release is apparent from the document's face.  *See* Petition Exhibit A at 2 ("By signing the attached Release, you acknowledge that you have read and understand the terms of the Release, and that *you execute the release voluntarily and without being pressured or influenced by, and without relying upon, any statement or representation made by any person acting on behalf of BP or any other released party*." (emphasis added)).

*Second*, the potential prejudice to BP is significant here.  Certain other plaintiffs in this MDL also seek to challenge the GCCF releases.  Moreover, the Plaintiffs here have conceded that their cases arise out of the *Deepwater Horizon* spill on the Shelf.  *See* Plaintiffs' Petition, Exhibit A ("forever waiving and releasing all claims that you may have against BP [other than securities claims] *in connection with the April 20, 2010 blowout of the Macondo Well, the sinking of Transocean's Deepwater Horizon Drilling Rig, and the subsequent oil spill in the Gulf of Mexico . . . .*" (emphasis added)); *see also Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir .2011) (in reviewing complaints, proper to consider "attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (quotation omitted)).  Were this Court to decide that such *Deepwater Horizon* spill cases should be resolved in state court, but the Fifth Circuit were to affirm the existence of OCSLA and/or enclave jurisdiction in the pending appeal over cases arising out of this spill, BP would needlessly be at risk of losing the substantial benefit of such an appellate ruling as applied to this case.

*Third*, judicial resources are obviously conserved if this Court awaits making a decision on the Plaintiffs' request to be permitted to file a remand motion since doing so would implicate jurisdictional issues presently before the Fifth Circuit.  Additionally, the Fifth Circuit's scarce

---

in this MDL's record showing BP to be engaged in delay tactics.  Especially for an MDL this large and complex, the issues are being resolved very briskly.

6

appellate resources are themselves now committed to resolving certain relevant questions of OCSLA and enclave jurisdiction.

**II.     This Court Rightly Decided Not to Make Cases Challenging GCCF Releases Part of the Recent Round of Post-Settlement Motions It Invited, Since Such Release Claims Are Not Ripe and Are Highly Fact-Bound.**

An additional reason that delay is harmless in this case is that Plaintiffs' remand arguments are not ripe. The validity of a GCCF release is not in question until a releasing plaintiff files a lawsuit *on its substantive claims* and BP or another defendant raises the release as a defense. *See, e.g.,* Fed. R. Civ. P. 8(c)(1) (release is an affirmative defense); *Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 Fed. Appx. 306, 308 (5th Cir. 2011) (per curiam) (release of federal claims are affirmative defenses); *Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 480 (5th Cir. 2002) (same as to Louisiana law claims); *Delgaicco v. State Farm Mut. Auto. Ins. Co.*, No. 104-cv-652, 2007 WL 108307, at *1 (S.D. Miss. Jan. 9, 2007) ("[U]ntil a claim or affirmative defense of fraud is asserted by [the defendant], [plaintiff's] request for judgment as a matter of law on the issue of fraud is not ripe for adjudication."). Accordingly, Plaintiffs lack standing to challenge the release in their current posture, even using the mechanism of an action for declaratory judgment. *BroadStar Wind Sys. Group Ltd. Liab. Co. v. Stephens*, 459 Fed. App'x 351, 356 (5th Cir. 2012) ("Standing to seek declaratory judgment is subject to these same requirements." (referencing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992))). This Court appears to share this conclusion, since it opted to set only limited groups of claims for resolution in its exercise of case-management discretion following the preliminary approval of the two class action settlements. *See* Status Conference Report (Rec. Doc. 7410) (noting oral argument held before the Court on motions to dismiss (1) pure stigma claims, (2) BP dealer claims, and (3) recreation claims).

7

Importantly, this issue of ripeness is directly connected to the issues of removal jurisdiction the Plaintiffs seek to tee up. If the Plaintiffs had proceeded properly by simply filing their tort claims against BP seeking damages in some amount, recognizing that the $66,400 they have already been paid would be offset against any such award they might show entitlement to, then the existence of removal jurisdiction would have been undeniable. The Plaintiffs have already pleaded clearly enough that they suffered damages because the *Deepwater Horizon* spill in their view led to closures of fishing areas they used. But if the Plaintiffs had proceeded properly to assert such claims directly, they would have had to spend most of their complaint fleshing out such claims instead of elaborating on unripe claims relevant to BP's anticipated defense that such tort claims had already been released during the GCCF process. With the focus on the initially ripe issue of the Plaintiffs' tort claims, the existence of 43 U.S.C. § 1349(b)(1) OCSLA jurisdiction would have been incontrovertible. Only a premature focus on the facts surrounding BP's GCCF release defense in the complaint make the removal questions seem even slightly more unusual in the *Knotty Girl* case as Plaintiffs attempted to plead it. There is no reason to reward such efforts at misdirection in pleading, undertaken in order to circumvent the ripeness barrier the Plaintiffs' declaratory judgment action faces, with the prize of lifting of case-management stays that have served the Court well, including in its planning for and design of the Limitation and Liability trial now set for next year.

The Plaintiffs face a further problem. They "initiated this action pursuant to state law only." Petition at 1. Had they formulated their complaint to bring their primary claims instead of jumping prematurely to the issue that they are trying to circumvent a release of their claims, they would have been faced with the problem that this Court ruled in its B1 and follow-on

8

Bundle C decisions that there are no viable state-law claims here on account of preemption.[4] To bring a viable suit they may have advanced claims under the Oil Pollution Act (which BP continues to maintain exclusively controls economic loss claims of this nature whatever governing law plaintiffs attempt to plead) but in that case there would be no dispute that their claims were removable under 28 U.S.C. § 1331. Instead, because the GCCF releases are governed by state law, they sought to plead their claims as asking for a declaratory judgment that the signed release is invalid. That choice avoided a preemption defense but runs headlong into the serious ripeness barrier described above to this suit as currently framed.

Moreover, putting aside BP's legal defenses including insisting on the enforcement of a fully integrated settlement contract, cases implicating GCCF releases said to be procured by duress are inherently fact-bound and thus are a type of case better sequenced for later resolution. For instances, questions like the following could be relevant: What did the GCCF allegedly tell claimants that purportedly created duress? Did plaintiffs signing releases read them and their clear statement that claimants were under no obligation to sign the release if they wished to litigate instead? If the release was not read, why not? Etc. Accordingly, the Court was exceptionally prudent in not prioritizing the resolution of GCCF release cases given all of the other cases and legal issues arising in MDL 2179 competing for its attention. For this reason as well, the motion to lift the stay should be denied.

Additionally, Plaintiffs' remand argument is facially frivolous. In their Motion, Plaintiffs state that they "can demonstrate to this Court that subject matter jurisdiction is lacking under both 28 U.S.C. §§ 1331 and 1332." Mot. 3. This statement harbors several errors. *First*, only

---

[4]  *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL 2179, 2011 WL 5520295 (E.D. La. Nov. 14, 2011); *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 808 F. Supp. 2d 943 (E.D. La. 2011).

the former provision was *a basis* (and not even the primary one) for removal. *See generally* Exhibit 3. *Second*, Plaintiffs fail to mention the *primary* basis for removal — OCSLA. That statute contains a broad jurisdictional provision that confers jurisdiction here. *Id.* ¶¶ 25-27. As explained in the Notice of Removal, OCSLA provides that "district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf . . . ." 43 U.S.C. § 1349(b)(1). Plaintiffs admit that their alleged injuries and the settlement agreement negotiated through the GCCF arise out of and in connection with the *Deepwater Horizon*'s operations at the Macondo well. Pet. ¶¶ 8-11. Yet in their current Motion, they ask for a hearing on remand without addressing OCSLA or disclosing that the GCCF was created as part of the process of BP satisfying its obligations as a responsible party under yet another federal statute, the Oil Pollution Act of 1990 ("OPA").[5]

Finally, in granting preliminary approval to the two class action settlements, this Court itself has recognized that review of the releases negotiated against the backdrop of the OPA causes of action are inherently part of resolving cases based on the underlying tort claims. For this reason, the Court retained jurisdiction over the enforcement of the classwide releases and the individual releases. *See* Economic and Property Damages Settlement Agreement as Amended, Sections 10, 15.1.13, and Exhibit 26 at ¶ 17. The GCCF releases negotiated against OPA's backdrop are no different and obviously directly tie to the process established under federal law by BP following in the wake of an agreement with the White House. *See* Order (Rec. Doc.

---

[5] In another recent case challenging the GCCF's procedures and implicating both OCSLA and OPA, the Southern District of Texas exercised federal jurisdiction and ultimately granted BP's motion for summary judgment. *Johnson v. BP Exploration & Production, Inc., et al.*, No. 4:12-cv-989 (S.D. Tex. July 19, 2012). That court saw jurisdiction as self-evident.

1098) at 14 (Feb. 2, 2011) (the GCCF is "acting for and on behalf of BP in fulfilling its statutory obligations as the 'responsible party' under the Oil Pollution Act of 1990") (note that this ruling does not negate the independence of GCCF claims *decisions*, which BP could appeal only in limited circumstances).

Given the numerous federal questions that run through this case, Plaintiffs suffer no harm by remaining in federal court. Hastening to reach the Plaintiffs' flawed and unmeritorious remand arguments provides an unworthy cause for carving exceptions to PTO 15 or 25.

## CONCLUSION

Because the stays contained in PTO 15 and 25 continue to serve the important overarching structural purposes for which they were established, Plaintiffs' motion to lift those stays solely for their own benefit should be denied.

Date: September 24, 2012                             Respectfully submitted,

Richard C. Godfrey, P.C.                             /s/ Don K. Haycraft
J. Andrew Langan, P.C.                               Don K. Haycraft (Bar #14361)
KIRKLAND & ELLIS LLP                                 LISKOW & LEWIS
300 North LaSalle Street                             701 Poydras Street, Suite 5000
Chicago, IL 60654                                    New Orleans, LA 70139-5099
Telephone: (312) 862-2000                            Telephone: (504) 581-7979
Facsimile: (312) 862-2200                            Facsimile: (504) 556-4108
richard.godfrey@kirkland.com                         dkhaycraft@liskow.com
andrew.langan@kirkland.com

Jeffrey Bossert Clark
Dominic E. Draye
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
jeffrey.clark@kirkland.com

*Attorneys for BP Defendants*

11

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of September 2012.

/s/ Don K. Haycraft
Don K. Haycraft