UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179<br><br>SECTION J |
| Applies to: *All Cases* | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

### ORDER

**[Regarding Objectors' Requests for Discovery and GO FISH's Motion to Intervene]**

Beginning on September 10, 2012, some objectors filed requests for discovery regarding the economic class action settlement.[1]  Requests were filed by: (1) Stuart H. Smith of the Smith Stag, LLC law firm ("Smith Stagg") on behalf of objectors represented by him (Rec. doc. 7353); (2) Prashiela Enterprises, LLC and others ("Prashiela") (Rec. doc. 7368);[2] (3) The Gulf Organized Fisherman in Solidarity & Hope ("GO FISH") (Rec. doc. 7374); (4) Wolf Bay, LLC ("Wolf Bay") (Rec. docs. 7383 and 7389); and (5) MRI, LLC and Dauphin Island Property Owners Association (collectively "MRI") (Rec. doc. 7391).

On September 14, BP responded and objected to these requests for discovery.  Rec. doc. 7411.  The PSC also filed an opposition to the discovery.  Rec. doc. 7417.  Replies were filed by Wolf Bay (Rec. doc. 7415), Smith Stagg (Rec. doc. 7420), Prashiela (Rec. doc. 7422) and GO FISH (Rec. doc. 7449).

On September 18, 2012, Casey Spencer and Sea Farms, Inc. (collectively "Spencer"), filed

---

[1] A medical settlement was also confected.  The current requests for discovery relate only to the economic settlement.

[2] This pleading is captioned, "795 Objectors' Notice of Motion and Consolidated Expedited Motion for Leave to Take Discovery Regarding Evidence Produced August 13, 2012."

a request for discovery.  Rec. doc. 7432.  There were supplemental filings by Prashiela.  Rec. docs. 7393 and 7438.

## BACKGROUND

On October 19, 2010, the trial of liability, limitation, exoneration and fault allocation (Phase One) was set for February 27, 2012.  Rec. doc. 569.  Beginning in February 2011, the parties began taking depositions.  Rec. doc. 1393.  They took 311 depositions, approximately 90 million pages of documents were produced, and more than 80 expert reports were exchanged.  Rec. doc. 6418 at 3.  Pursuant to Pretrial Order No. 13, counsel for the movers had access to confidential documents produced by the parties provided they executed a certificate in the form attached to that order.  Rec. doc. 641.  Phase One deposition exhibits, excerpts and summaries also were available.

On February 26, 2012, the trial of Phase One was continued to March 5, 2012 to allow the parties to make further progress in their settlement discussions.  Rec. doc. 5887.  After the plaintiffs and BP reported agreement on the terms of a proposed class settlement, the trial of Phase One was adjourned.  Rec. doc. 5955.  It was reset for January 14, 2013.  Rec. doc. 6592.

On March 8, 2012, Patrick Juneau was appointed as Claims Administrator of the Transition Process and the proposed Court Supervised Claims Program.  Rec. doc. 5995.  Because it would facilitate the completion of the seafood component of the proposed settlement, John W. Perry, Jr., a neutral arbitrator, was appointed to preside over the finalization of remaining details and procedures for the settlement of the seafood component.  Rec. doc. 5998.

The PSC and BP moved for conditional certification of a class for settlement purposes, preliminary approval of the class action settlement, and the scheduling of a fairness hearing.  Rec. docs. 6266, 6267, 6269 and 6272.  On May 2, 2012, the Court conditionally certified the class and

gave preliminary approval to the settlement. Rec. docs. 6418.

On August 13, 2012, the PSC and BP filed their motions and evidence in support of the settlement. Rec. docs. 7104, 7110, 7112, 7114 and 7116. The deadline to file objections was September 7, 2012. Rec. doc. 7225. The opt-out period closes on November 1, 2012. Rec. doc. 7176.

## SMITH STAGG

In response to Smith Stagg's request for discovery, an order was issued stating that, "[a]ny response by Mr. Smith, including any proposed written discovery, shall be filed and served no later than noon on Monday, September 17, 2012. . . ." Rec. doc. 7366. Smith Stagg's response did not include the proposed written discovery. On September 11, it provided a list of fifteen points for which discovery was sought. Rec. doc. 7353 at 5-6. On September 17, it reiterated the same fifteen points. Rec. doc. 7420 at 5. It did not provide the proposed written discovery. Smith Stagg's request for discovery (Rec. doc. 7353) is denied for failure to comply with the Court's order.

## PRASHIELA, WOLF BAY, MRI AND SPENCER

The motions of Prashiela, Wolf Bay, MRI and Spencer (collectively referred to as "Objectors") are virtually identical. Rec. docs. 7368, 7383, 7389, 7391 and 7432. They contend that: (1) much of the evidence submitted on August 13 in support of the motions for final approval of the settlement was not published or otherwise available prior thereto; (2) communications between the PSC and BP relating to the propriety of the proposed settlement were not shared with counsel for Objectors; (3) the PSC and BP did not produce any of the evidence on which their experts' opinions are based; (4) it is impossible for the Objectors to evaluate the proposed settlement without "limited discovery;" (5) the Court has discretion to grant their requests for "limited

discovery;" (6) the Phase One and Phase Two discovery concerns only the issue of liability; and (7) the rationale and bases for the terms of the settlement cannot be found in the record. Prashiela adds that its discovery is required because the Economic Loss Zones are arbitrary and capricious. Rec. doc. 7368 at 5. It also urges that its interests are strong because its motion is brought on behalf of 795 objectors, including hospitality industry claimants. Id. at 7. MRI contends that there is a conflict in the PSC's participation in the settlement and the January 14, 2013 trial, where gross negligence is an issue. Rec. doc. 7391 at 6.

### A.   **Objectors Have No Absolute Right to Discovery**.

There is no "absolute right" to conduct discovery or present evidence simply because a person is a class member. In re Domestic Air Transp. Antitrust Litig., 144 F.R.D. 421, 424 (N.D. Ga. 1992). In evaluating settlements for approval, the fundamental question is whether the Court has sufficient facts before it to approve or disapprove the settlement. In re Gen. Tire & Rubber Co. Sec. Litig., 726 F.2d 1075, 1084 n.6 (6th Cir. 1984). The Court has broad discretion to permit or deny objector discovery requests. Cotton v. Hinton, 559 F.2d 1326, 1333 (5th Cir. 1977).

### B.   **Objectors' Requests for Discovery Are Not Timely**.

The terms of the settlement agreement were filed on April 18, 2012. BP and the PSC filed "voluminous evidence," into the record in support of final approval more than a month ago. Rec. Doc. 7358 at 3. Based on the delay from announcement of the settlement terms, the Objectors were not diligent in requesting discovery and there is no excuse for the delay.

### C.   **Objectors' Discovery Requests Are Overbroad**.

While the Objectors state that they seek only "limited discovery," the discovery sought is overbroad. Prashiela has requested "[a]ll documents that explain or relate to the economic,

geographic, or other bases upon which each of the Economic Loss Zones was drawn," "[a]ll documents that refer or relate to the economic modeling or algorithms the Settlement employs," and "[a]ll documents that reflect your or any member of the PSC's or Class Counsel's solicitation of input from attorneys who are not members of the PSC but who represent hotels about the proposed terms of the Settlement prior to February 26, 2012." Rec. doc. 7438 (Exhibit 1). If the Objectors' overbroad requests for discovery were granted, the discovery could not be completed before the November 8 fairness hearing.

**D.     Objectors' Discovery Requests Are Unnecessary.**

In Newby v. Enron, Corp., 394 F.3d 296 (5th Cir. 2004), the Fifth Circuit held that "formal discovery is not necessary as long as (1) the interests of the class are not prejudiced by the settlement negotiations and (2) there are substantial factual bases on which to premise settlement." Id. at 306. The "critical question" to determine whether independent discovery by objectors is necessary is whether the Court has "sufficient facts before it to intelligently consider the proposed settlement." In re Ford Motor Co. Bronco II Prods. Liab. Litig., 1994 WL 593998 at *3 (E.D. La. Oct. 28, 1994). Where significant documentation has already been produced and testimony taken, "independent discovery should generally not be allowed." In re Ford Motor Co. Bronco II, 1994 WL 593998 at *3.[3]

The Court's task is to consider the record that appears before it to determine if, on the basis of that record, it may make the findings necessary to certify the settlement class and determine that the settlement agreement is fair, reasonable, and adequate under Rule 23. It is not the role of the

---

[3] In Cotton, the settlement was approved despite very little formal discovery and an undeveloped record in the case. 559 F.2d at 1332.

Objectors to renegotiate the agreement, nor determine whether the class would receive more compensation in contested litigation.  None of the Objectors demonstrate how their discovery is required to enable them to support their objections, to decide whether to remain in the settlement class, or to aid the Court.  The Objectors' discovery is unnecessary because it is not relevant to the Court's review.

The settlement compensates each and every class member according to frameworks that are transparent and which were filed nearly five months ago.  Any class member seeking to determine his compensation may simply read the settlement agreements and determine how his circumstances fit into the frameworks.  There is no reason that any objector needs to know the estimated size of the class, because the settlement is uncapped for the majority of claimants.  An objector does not need to know the total amount of losses of the class when the settlement agreement provides for the payment of all compensatory damages.  The Court may determine that the settlement agreement is fair, reasonable, and adequate without this information.

Since April 18, the Objectors were able to review the settlement agreement, analyze the benefits under the agreement, evaluate the strengths and weaknesses of their own claims and determine whether they are better off participating in the settlement or opting out.  By opting out, those who are not satisfied with the settlement's provisions escape their binding effect, and thus are free to pursue their claims and seek the relief they desire.  In re Vitamins Antitrust Class Actions, 215 F.3d 26, 28-29 (D.C. Cir. 2000).

The bottom line is that the proposed discovery will neither materially advance the objectors' objections nor assist the Court's consideration of the fairness, reasonableness, and adequacy of the settlement agreement.

E.     **The Settlement Agreement is the Product of Arms-Length Negotiations**.

The Settlement Agreement was negotiated in good faith and at arm's length over many months. All told, BP and the PSC engaged in more than 145 days of face-to-face meetings. Rec. Doc. 6418 at 3. The negotiations were extensive and highly contested. In the final months the negotiations were conducted under the supervision of the undersigned as Court mediator. Because the settlement agreement was reached through arm's length negotiations, information sought by the movers on why the parties negotiated the terms that they did is unnecessary. See Manual for Complex Litigation (4th), p. 328 ("A court should not allow discovery into the settlement-negotiation process unless the objector makes a preliminary showing of collusion or other improper behavior.").

\* \* \*

For these reasons, the motions of Prashiela, Wolf Bay, MRI and Spencer for discovery (Rec. docs. 7368, 7383, 7389, 7391 and 7432) are denied. Assuming that Smith Stag's request for discovery was timely, it would be denied for the same reasons.

## GO FISH

GO FISH is a Louisiana corporation. Its founding member organizations are non-profit fishing industry and community groups with members directly affected by the BP spill and the proposed settlement. Rec. doc. 7314 at 5. On September 7, 2012, it filed a motion for leave to intervene as of right under Fed. R. Civ. P. 24(a) and, in the alternative, under Rule 24(b). Rec. doc. 7314.[4] In its proposed answer to the amended class action complaint for private economic losses

---

[4] The Clerk noted that the motion should have been filed in 10-7777, where it is docketed as Rec. doc. 217. The motion was not set for submission.

and property damages, it sought to: (a) amend the class definition to create a separate class for those claimants participating in the Seafood Compensation Program ("Program") and subclasses within the Program; (b) appoint counsel to represent each of the subclasses; and (c) appoint a special master to make findings on the competing claims of the subclasses which would be used to determine the second distribution under the Program. Rec. doc. 7314 (Exhibit 3, Prayer for Relief).

GO FISH contends that it possesses standing under Article III of the Constitution to intervene. Rec. doc. 7314 at 4. In Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 97 S.Ct. 2434 (1977), the Supreme Court stated:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Id. at 343.[5] GO FISH urges that it satisfies the Hunt requirements. It contends that no individual member is required to participate with respect to the issues raised by it. Rec. doc. 7314 at 6.

On September 11, GO FISH filed its motion for scheduling order to conduct limited discovery. Rec. doc. 7374. BP opposes the discovery motion and challenges GO FISH on the standing issue. It urges that GO FISH cannot satisfy the third element of the Hunt test requiring it to demonstrate that individual member participation is not required. Rec. doc. 7411 at 15-16. GO

---

[5] In United Food and Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 545-546, 116 S.Ct. 1529 (1996), the Supreme Court described the issue as whether in the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, Congress intended to abrogate the third part of the Hunt test to permit a union to sue for damages running to its workers. In Association for Community Organizations for Reform Now v. Fowler, 178 F.3d 350, 365 (5th Cir. 1999), the Fifth Circuit employed the three-part test articulated in Hunt to determine whether the plaintiff had standing to bring certain claims as a representative of its members. In Vieux Carre Property Owners, Residents and Associates, Inc. v. Hotel Royal, L.L.C., 55 So.3d 1, 2-3 (La.App. 4 Cir. 2010), Louisiana employed the three-part Hunt test.

FISH replies that "BP's objection is at best a technical one, and should not be allowed to head off necessary inquiry into the factual underpinnings of this critical settlement." Rec. doc. 7449 at 7.

The issue is whether the claims asserted by GO FISH or the relief requested by it require the participation of the members of the fishing industry groups who were directly affected by the BP spill. The third part of the Hunt test is not satisfied merely because GO FISH's prayer for relief is described in terms relating to the creation of subclasses within the Program in aid of resolving their competing claims. If the fact and extent of the injury that gives rise to the relief sought by the organization requires individualized proof, then the organization lacks standing. Bano v. Union Carbide Corp., 361 F.3d 696, 714 (2nd Cir. 2004). The relief sought for the underlying members of the fishing industry groups which comprise GO FISH is individualized monetary damage awards. The claims and relief asserted by GO FISH require the participation of individual members of the GO FISH fishing industry groups in the lawsuit and therefore GO FISH lacks standing to proceed. Its motion for leave to intervene must be denied. Since it cannot intervene, its request for discovery must be denied. Assuming it could intervene, GO FISH's discovery would be denied for the same reasons the Objectors' discovery was denied.

IT IS ORDERED that:

1. The requests by Smith Stagg (Rec. doc. 7353), Prashiela (Rec. doc. 7368), Wolf Bay (Rec. docs. 7383 and 7389), MRI (Rec. doc. 7391) and Spencer (Rec. doc. 7432) are DENIED.

2. The motion of GO FISH for leave to intervene (Rec. doc. 7314) is DENIED and its request for discovery (Rec. doc. 7374) is DENIED.

New Orleans, Louisiana, this 25th day of September, 2012.

**SALLY SHUSHAN**
**United States Magistrate Judge**