UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179 <br> SECTION J |
| Applies to: all cases 2:10-cv-01122 | * * * * | JUDGE CARL J. BARBIER <br> MAGISTRATE JUDGE SHUSHAN |

## MEMORANDUM IN SUPPORT OF MOTION TO EXTEND OPT-OUT DEADLINE

NOW COMES Triton Diving Services, LLC, Dauphin Island Property Owners Association, and Recreation Investments of Florida, Inc., on behalf of the Economic and Property Damages Class Members (hereinafter "Class Members") and files this Memorandum in Support of Motion to Extend Opt-Out Deadline:

### I. OVERVIEW

The current opt-out deadline is November 1, 2012. At present roughly 69,000 total claims have been filed with the Deepwater Horizon Claims Center ("DHCC"). [Ex. A, September 24, 2012, DHCC Public Statistics]. The Claims Administrator states in his September 5, 2012, Status Report that he has adopted the "ambitious goal of issuing by October 1, 2012, notices (whether eligible, incomplete or denied) on at least 30% of the approximately 45,000 claims . . . [pending] as of the date of this report." [Doc. 7282, p. 10 of 13].

According to the Department of Justice's Independent Evaluation of Gulf Coast Claims Facility ("DOJ Report"), the GCCF processed over one million claims in its one and one-half year tenure. Thus, at the present time the DHCC has received

about 7% of the claim volume processed by the GCCF. [Ex. B, June 5, 2012 DOJ Report at p. 9 of 89].

Simple arithmetic and logic dictate two salient points: (i) the DHCC has only received a very small fraction of the anticipated claim volume; and (ii) by even "ambitious" standards the DHCC will not complete processing even the relatively small amount of claims it has received by November 1, 2012.

Class Members respectfully submit that a "back-end" opt-out is necessary under these circumstances. In order for Class Members (and their attorneys) to make an informed decision on whether to opt-out they need to have a concrete offer (or denial) from the DHCC. Courts and commentators across the nation agree that a back-end opt-out is necessary under these circumstances: "Professor Coffee views the opt-out right as so significant that he recommends an additional, delayed opt-out right that begins after the approval of some class action settlements." Theodore Eisenberg, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 Vand. L. Rev. 1529, 1539 n. 37 (2004). The BP Defendants' own expert is therefore in favor of this concept under these circumstances.

Class Members respectfully request that the Court extend the opt-out deadline to thirty (30) days after Class Members receive "final[1]" written notice from the DHCC of a determination of final compensation award. This will allow Class Members to exercise their opt-out rights with adequate information to make an informed decision.

---

[1] "Final" meaning after the appeal deadlines contained in ¶ 6 of the Settlement Agreement expire.

## II. Class Members

Triton Diving Services, LLC ("Triton") is a Class Member that filed a Direct Filing Short-Form on April 19, 2011, and has also submitted a claim with the DHCC.

Dauphin Island Property Owners Association ("DIPOA") filed a lawsuit in the Southern District of Alabama (Mobile Division), Cause No. 2:12-cv-01122, which was transferred to this MDL on May 3, 2012. DIPOA's claim status is discussed in more detail below.

Recreation Investments of Florida, Inc. ("Recreation Investments") is a Class Member that submitted its DHCC on June 7, 2012. As of the date of this filing Recreation Investments has not received an offer from the DHCC despite 110 days having elapsed.

## III. Settlement Agreement Allows the Court to Extend Opt-Out Date

The *Deepwater Horizon* Economic and Property Damages Settlement Agreement (the "Settlement Agreement") states that the Court may extend the opt-out deadline:

> 8.2 **Opt-outs**
>
> 8.2.1 The Economic Class Action Settlement Notice shall provide instructions regarding the procedures that must be followed for Economic Class Members to exclude themselves ("Opt Out") from the Economic Class pursuant to Fed. R. Civ. P. 23(c)(2)(B). The Parties agree that, to validly exclude themselves from the Economic Class, Economic Class Members must submit a written request to Opt Out, which must be received by the Entity identified in the Class Notice Plan for that purpose, properly addressed, and postmarked no later than October 1, 2012, **or such later date as the Court orders in the Preliminary Approval Order** . . . .

[Doc. 6276-1, p. 67 of 117]. The Court has already extended the opt-out deadline, and has the authority and jurisdiction under the Settlement Agreement to extend this deadline further. [Doc. 7176].

Class Members who do not opt-out are irrevocably bound by the Settlement Agreement, and are permanently and forever barred from filing any Released Claim against any Released Parties. [¶ 8.2.4, Doc. 6276-1, p. 69 of 117]. The Settlement Agreement does allow Class Members to revoke her or its opt-out up until three (3) days prior to the fairness hearing, which relates to a deadline of November 5, 2012. [¶ 8.2.5, Doc. 6276-1, p. 69 of 117]. Thereafter, Class Members must obtain the BP Parties consent (in their sole and unilateral discretion) in order to revoke an opt-out. Thus, the opt-out date is November 1, 2012, and the revocation deadline is November 5, 2012. This renders the revocation deadline essentially irrelevant for the notice problems raised in the Motion.

It is not an exaggeration to say that 99% of Class Members will have received absolutely no information regarding the amount of their settlement (or if they will even receive an offer) when the current opt-out deadline expires. It is probable that thousands of Class Members will receive nothing through the DHCC, and will have forever lost their opportunity to litigate their claims due to not receiving their denials before the opt-out deadline.

This situation is tailor-made for a back-end opt-out. Moving the opt-out deadline back will allow Class Members to intelligently exercise their exclusion rights under the Settlement Agreement. As shown below, failure to adopt this common-sense solution imperils the Settlement Agreement.

4

## IV. Argument & Authority

**A.     A Back-end Opt-Out is Consistent with Rule 23.**

A meaningful opportunity to opt-out of a Rule 23(b)(3) class – particularly a settlement class of the unprecedented size and scope of this one – is necessary to satisfy due process concerns. *Amchem Prods. v. Windsor*, 521 U.S. 591, 603 (1997).

Due process concerns are particularly relevant in a settlement class. Many courts have held that approval of settlement classes requires closer judicial scrutiny than approval of settlements reached after class certification won through the adversary process. *Amchem*, 521 U.S. at 620 (1997) (calling for "undiluted, even heightened, attention" to class certification requirements in a settlement class context); *Coffee, supra* note 737, at 1367-82, 1461-65 (discussing incentives for collusion in settlement class actions and possible antidotes); *Manual for Complex Litigation*, 4th Ed., §21.612.

Courts and commentators similarly agree settlement class members must have adequate time to observe the terms and effect of the proposed settlement before deciding to exclude themselves. Theodore Eisenberg, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1535 n. 14 (2004); *See, e.g., Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982)(commenting on the "higher degree of judicial scrutiny" implicated in a settlement class).

The United States Supreme Court's decision in *Amchem Prods. v. Windsor* is instructive. 521 U.S. 591 (U.S. 1997). The trial court in *Amchem* sought to certify a settlement class that would cover all individuals who had been exposed to asbestos

5

but who had not filed a lawsuit. *Id.* at 603. The court-approved notice of this settlement class allowed class members to exclude themselves within a three-month opt-out period. *Id.* at 606. The trial court eventually overruled all objections, found the notice was adequate, and that final class certification was appropriate. *Id.* The Third Circuit reversed, noting: (i) the class lacked commonality because class members were exposed in different ways, over different periods, for different amounts of time, and had different injuries; (ii) serious intra-class conflicts precluded adequacy of representation because the settlement purported to allocate the recovery amongst different kinds of claimants; and (iii) that these same intra-class conflicts ran afoul of Rule 23's typicality requirements. *Id.* The United States Supreme Court affirmed, and questioned whether effective notice could ever be given to "legions so unselfconscious and amorphous." *Id.* at 628. While the Supreme Court did not rule definitively on the notice issue, its comments indicate that it is unlikely the notice provisions contemplated in the Settlement Agreement would pass muster:

> Even if they fully appreciate the significance of class notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt-out.

*Id.* This case is similar inasmuch as many Class Members are currently unaware they have a compensable claim.[2] The Manual for Complex Litigation recognizes that notice infirmities of this magnitude raise constitutional and due process issues. *Manual for Complex Litigation (Fourth)*, § 21.62.

---

[2] Whether a Class Member has a compensable claim depends on the application of many complex variables, including: (i) geographic location; (ii) financial performance; and (iii) application of hundreds of formulas with literally tens of thousands of permutations under the Settlement Agreement.

6

It may be theoretically possible to argue that Class Members have had an adequate time to review and digest the 1,027 pages of the Settlement Agreement. However, there can be no credible argument that Class Members have been provided any information on the amount of money they will actually receive through the DHCC.

This fundamental lack of information poses serious threats to the adequacy of the notice. The Settlement Agreements multiplicities of formulas, definitions, exclusions, and other criteria make it functionally impossible for a Class Member to know the most important information: how much money will he or she receive in exchange for surrendering their rights to litigate? Until Class Members receive a concrete offer (or denial) from the DHCC, they have not received adequate notice. These same issues were addressed by the Supreme Court in *Amchem*.

Opt-out rights are the central rationale for providing notice in (b)(3) cases. *Eisen v. Carlyle & Jacquelin*, 417 U.S. 156, 176 (1974). If, in a settlement class, the notice does not provide information sufficient to allow a class member to make an informed decision about whether to opt-out, the court may reject the proposal in toto. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) (rejecting a class action settlement, in part, because certain class members had not received notice adequate to provide them with information needed to make informed opt-out decision).

A back-end opt-out would cure these notice concerns. Class Members who are unsure of their compensation rights under the Settlement Agreement can submit a claim and obtain individual, particularized information about their

7

benefits. If they find those benefits unsatisfactory, they can then exercise their right to exempt themselves from the Settlement Agreement.

B.  **The Current Opt-Out is A Faustian Election.**

As a concrete example of how the absence of a back-end opt-out prejudices Class Members, the undersigned offer the example of DIPOA.[3] DIOPA owns approximately two hundred (200) acres of real property as well as claims to littoral submerged lands on Dauphin Island, Alabama. A large amount of the acreage is unimproved marshland and wetlands located directly on the Gulf of Mexico. These lands have importance for water quality, flood control, shoreline protection, and recreation. They serve as nurseries for numerous species, waterfowl, and a host of resident and migratory species. They also have cultural and ecological significance to the residents and visitors of Dauphin Island.

The nature of DIPOA's claims illustrates the inflexibility of the current opt-out clause. In addition to being a property loss claimant, DIPOA is also an economic loss Class Member entitled to damages arising out of its loss of income from, among other things, rental commercial space and concessions from club operations. Because the Settlement Agreement does not allow for filing of a partial claim (e.g. where DIPOA could file is economic loss claim but litigate its property loss claim), and does not have a back-end opt out option, DIPOA is forced to make a Faustian election and forego filing its economic loss claim (a liquidated loss which it desperately needs to survive) until there is an answer to the pending objections—or

---

[3] DIPOA has objected to the Settlement Agreement on a variety of grounds. [*See*, CV-2010-7777, at Doc. 144].

8

the establishment of a back-end opt out right—so as not to claim split, which the Settlement Agreement forbids. Of note, this false election may well prejudice, and will complicate, its opt-out rights as they currently exist under the Settlement Agreement. However, if the Court establishes a back-end opt out right, DIPOA will have all of the relevant information to make a well-informed decision. In short, the establishment of a back-end opt out right will eliminate the Faustian Election for DIPOA and similarly situated class members.

This dilemma presents a real hardship, intended or not, that didn't exist in the GCCF or OPA, both of which allow for partial/interim claims. To penalize DIPOA by starving it out while it waits or is forced to opt-out because it cannot know whether or not it will receive just and fair compensation for its coastal wetlands loss is not fair, nor is it reasonable. This choice, in effect, penalizes them for being in the class.

Recreation Investment's situation also illustrates the necessity of a back-end opt-out. Recreation Investments filed its DHCC claim on June 7, 2012, or 110 days ago. It has yet to receive an offer, despite having previously negotiated extensively with Ken Feinberg and the GCCF. Recreation Investments currently lacks adequate information to make an informed decision on whether to exclude itself from the Settlement Agreement.

Triton is a shallow-water drilling contractor that sustained significant losses as a result of the spill. Its claim with the GCCF was denied, and Triton submitted its claim to DHCC on June 19, 2012. DHCC did not designate Triton's claim as "in claims review" until September 25, 2012. It is unknown how long the review process will

9

take. As such, Triton lacks sufficient information to make an informed decision whether to opt out of the settlement agreement.

### C.   A Back-end Opt-Out Will Help Disprove Theories of Collusion.

Providing Class Members with a meaningful opportunity to opt-out after they receive their DHCC final offer will have several laudable effects. Courts have found that opt-out rights reduce the need for intense scrutiny of class counsel, or the class representatives, as dissatisfied class members can simply "vote with their feet." *See, e.g., Abby v. City of Detroit*, 218 F.R.D. 544, 548 (E.D. Mich. 2003). Conversely, the lack of a meaningful opportunity to opt-out may result in a more stringent review by the appellate courts. Eisenberg, 57 VAND. L. REV. at 1537 (2004).

Several commentators, including John Coffee – the BP Defendants' primary expert – advocate that a back-end opt-out is fundamentally necessary under these facts:

> In this light, the simplest means of assuring the right to exit would be to delay the opt-out deadline until after at least the approval of the proposed settlement. Otherwise, by placing the opt-out deadline first, counsel is in a position to impose a settlement upon the class that may be unsatisfactory to it. Defendants have every reason to join this conspiracy, and even the trial court has an incentive to acquiesce in any tactic that minimizes opt-outs because opt-outs pose a serious problem for the court and may even require it to try the same case on an individual basis that it had just seemingly settled on a class basis.

John C. Coffee, Jr., *Class Action Accountability: Reconciling Exit, Voice, and Loyalty in Representative Litigation*, 100 COLUM. L. REV. 370, 420 (2000).

As advocated by Coffee, providing Class Members with a meaningful opportunity to opt-out will help mitigate against even the appearance of collusion. Indeed, it is hard to see why either Class Counsel or Defendants would object to a

back-end opt-out, as if anything it will simply encourage more Class Members to pursue their rights with the DHCC (as opposed to opting-out purely as a matter of protecting legal rights).

**D.   A Back-end Opt-Out Will Not Affect or Interfere with Administration of the Settlement Agreement.**

As indicated above, the Court has the explicit authority to alter the opt-out deadline without amending the Settlement Agreement. The Court has already recognized its authority to unilaterally extend the opt-out deadline without necessity of amending the Settlement Agreement in its August 27, 2012 Order Extending the Opt-Out Deadline. [Doc. 7176].

While this Order referenced a "one-time" extension, nothing in the Settlement Agreement indicates that the Court's authority to alter this deadline terminated after the first extension. Indeed, such a limitation would ostensibly run afoul of Rule 23(e).

**E.   Alternative Relief**

In the alternative, class members have moved the Court to extend the opt-out deadline until a later date. Having presented the overall question to liaison counsel and received a response (see Exhibit A to the Motion to Extend) indicating that it has no objection to an extension of the same, class members request that the opt-out deadline be extended, without prejudice, until and including April 20, 2013. Class members say that such an extension is consistent with due process considerations and FRCP 23.

11

V. CONCLUSION

Therefore, Class Members respectfully request the Court enter an order extending the Settlement Agreement's opt-out deadline to thirty days after the Class Members respectfully request that the Court extend the opt-out deadline to thirty (30) days after Class Members receive a final determination letter from the DHCC (after the appeal deadlines contained in ¶ 6 of the Settlement Agreement expire).

Class Members respectfully request that the Motion be set for the October 19, 2012, status conference.

Dated: September 27, 2012

                              Respectfully submitted,

By:    /s/James M. Garner
        JAMES M. GARNER (# 19589)
        PETER L. HILBERT, JR. (#6875)
        MARTHA Y. CURTIS (#20446)
        KEVIN M. MCGLONE (#28145)
        Sher Garner Cahill Richter Klein & Hilbert
        909 Poydras Street, 27th Floor
        New Orleans, Louisiana 70112
        504-299-2100
        Fax: 504-299-2300
        E-mail: jgarner@shergarner.com

**COUNSEL FOR TRITON DIVING SERVICES, LLC**

By:    /s/ Frederick T. Kuykendall, III
        FREDERICK THURMAN KUYKENDALL, III
        Kuykendall & Associates, LLC
        2013 1st Avenue North, Suite 450
        Birmingham, AL 35203
        205-453-0060
        Fax: 205-453-0042
        Email: ftkuykendall@yahoo.com

**COUNSEL FOR DAUPHIN ISLAND PROPERTY OWNERS ASSOCIATION**

By:    /s/ Edwin A. Easterby
EDWIN ARMISTEAD "ARMI" EASTERBY
Williams Kherkher Hart Boundas LLP
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
713-230-2200
Fax: 713-643-6226
Email: aeasterby@williamskherkher.com

**ATTORNEY FOR RECREATION INVESTMENTS OF FLORIDA, INC.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing Motion to Extend Opt-Out Deadline has been served on All Counsel by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 27th day of September 2012.

/s/ James M. Garner
James M. Garner