# BINGHAM

Warren Anthony Fitch
Direct Phone: +1.202.373.6695
Direct Fax: +1.202.373.6001
tony.fitch@bingham.com

September 27, 2012

**Via E-Mail**

The Honorable Sally Shushan
United States District Court for the
 Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, LA 70130

**Re: Phase Two Rule 30(b)(6) Deposition Notice to Anadarko**

Dear Judge Shushan:

I write in response to the United States' September 14, 2012 letter. In that letter, the United States questions the attestation in Anadarko's August 24, 2012 Declaration ("Declaration") that Anadarko does not possess information responsive to topics 1.c, 4.b., 4.c, 7, 8, 9, 10, 14, and 17 in the Phase Two Rule 30(b)(6) Notice of Deposition served on Anadarko on August 2, 2012. The United States thereupon requests that Anadarko designate and produce a corporate representative for testimony on those topics. The United States bases its accusation and corollary demand on the assertion that certain documents produced in discovery "undermine" Anadarko's attestation.

The United States' accusation is groundless. None of the documents identified in the letter "undermines" the accuracy of the Declaration, and none of those documents establishes or even suggests that Anadarko has knowledge or information responsive to the aforementioned topics. The United States' attempt to manufacture fault with Anadarko's Declaration is based on a misreading and mischaracterization of the documents, an imputation of knowledge to Anadarko employees where there is none, and an inaccurate, *post hoc* and misleading description of the scope of the topics at issue.

We provide hereinafter an item-by-item analysis of the topics and documents discussed in the United States' letter.

**A.   Topic 1.c.**

Topic 1.c seeks information related to "the manner and methodology, including computer models, used to assess" a variety of well kill attempts and methods used to kill the Macondo Well. The word "assess" is not defined; Anadarko reads it to mean "evaluate the decision to proceed" with each source control method. Otherwise, Topic 1.c would be duplicative of Topic 1.f (for which Anadarko has agreed to produce a witness),[1] requesting "[a]n explanation of and timeline for the steps involved in planning and/or implementing each attempt and/or

---

[1] Anadarko's Bob Quitzau is scheduled to be deposed on November 1, 2012.

Beijing
Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
2020 K Street NW
Washington, DC
20006-1806

T +1.202.373.6000
F +1.202.373.6001
bingham.com

The Honorable Sally Shushan
September 27, 2012
Page 2

Method, including both the design of any equipment and the steps involved in the Method." As discussed below, none of the documents relied upon by the United States suggests that Anadarko was involved in "evaluating decisions to proceed" with particular source control methods, or that Anadarko has knowledge of such methodologies beyond what it learned second-hand from BP and other parties.

- ANA-MDL2-000054970-75 [Attachment 3 to Letter]: This BP document, entitled "Evaluation of BHA [Bottom Hole Assembly] Component Failure Risk due to Hydraulic Load Encountered during Mud Losses at Target Well Intercept MC252 #3," lists Anadarko employee Bob Quitzau as a "Reviewer." Nothing indicates that Mr. Quitzau authored or contributed to its contents. At most, he reviewed it. *See* ANA-MDL2-000054972. The document does not show that Mr. Quitzau has knowledge of the "manner and methodologies" used "to assess" well kill attempts and methods used to kill the Macondo Well beyond what he may have learned from documents that BP or others created.

- ANA-MDL2-000054886-89 [Attachment 4 to Letter]: This e-mail chain among Anadarko employees has the subject "Macondo Update." Nothing suggests that Anadarko played any role in assessing whether to proceed with the well kill procedures discussed therein. This document shows only that Mr. Quitzau received information from others regarding potential well kill tactics, which he in turn reported to Anadarko personnel. For example, he states, "The capping stack team is continuing their plans. I have not heard much . . . ." *See* ANA-MDL2-000054887. The hearsay and hearsay-within-hearsay communicated in the e-mail does not show any Anadarko knowledge.

- ANA-MDL2-000032636-38 and ANA-MDL2-000032633-35 [Attachments 5 and 6 to Letter]: The first document—created by BP—is entitled "Well Kill - Timing" and was authored by an engineer at Wild Well Control. The second, a cover e-mail, lists Mr. Quitzau as a recipient of the first. These documents show that Mr. Quitzau received <u>BP</u> and <u>Wild Well Control</u> work product regarding well kill strategies. They do not show that Mr. Quitzau had knowledge regarding the assessment of these strategies beyond what was provided to him by BP and Wild Well Control.

- ANA-MDL2-000123457-63 [Attachment 7 to Letter]: This e-mail chain among Anadarko employees indicates that Anadarko personnel were present at various meetings and reported back to other Anadarko personnel on well control efforts. For example, in an April 29, 2010 e-mail, Steve Woelfel states, "I'll go to the 0600 Handover meeting in the morning and play it by ear on sticking around depending on what's going on and if we can help." *See* ANA-MDL2-000123461. This e-mail exchange speaks only to <u>BP's</u> obvious involvement with, and decision-making regarding, well kill efforts.

- ANA-MDL-000258528 and ANA-MDL-000258677 [Attachments 8 and 9 to Letter]: The first document lists Mr. Quitzau as an "attendee" of a meeting organized by Wild Well Control discussing well kill efforts, and the second indicates that Mr. Quitzau accepted the invitation. This suggests only that Mr. Quitzau may have learned of "the work done" by others with respect to well kill efforts by other parties, not that he had personal knowledge of the "manner or methodologies" used to assess them. *See* ANA-MDL-000258528.

Bingham McCutchen LLP
bingham.com

The Honorable Sally Shushan
September 27, 2012
Page 3

**B.    Topics 7, 8, and 14.**

Topics 7 and 8 of the Notice seek information regarding the "manner" and "methodology" that Anadarko, Anadarko's contractors, or any other entity working on Anadarko's behalf used to measure pressures and temperatures associated with the Macondo Well at various time periods. Topic 14 seeks information pertaining to "[a]ll attempts by Anadarko, Anadarko's contractors and/or any other entity working under the direction of Anadarko" to measure such temperatures and pressures (emphasis added). All three of these topics ask only about efforts undertaken by Anadarko. The United States mischaracterizes the scope of these three deposition topics, charging that Anadarko "claims not to have any information related to efforts to predict, estimate, characterize or measure temperatures or pressures . . . ." Anadarko never made such a claim. None of the United States' documents indicates that Anadarko measured temperatures or pressures (beyond the deposition already provided regarding that portion of Topic 7 concerning reservoir pressures only). As discussed more fully below, because the deposition topics pertain only to work performed by Anadarko, none of the documents relied upon by the United States supports its request for a 30(b)(6) deposition on these topics.

- ANA-MDL2-000122842-51 [Attachment 10 to Letter]: The United States cites this e-mail exchange among Anadarko personnel in support of its allegation that Anadarko possesses information about pressure readings, but the e-mail chain does not indicate that Anadarko measured pressures. Mr. Quitzau's statement that "[w]e are now getting stack pressures - 3600 - 3800 psi depending on who you listen to" contradicts any suggestion that Anadarko, as opposed to some other party, took pressure measurements. See ANA-MDL2-000122845 (emphasis added). Because Topics 7 and 14 request information only with respect to pressure measurements taken by Anadarko, the United States' citation of this document to support a 30(b)(6) deposition is inapposite.

- ANA-MDL2-000001404-19 [Attachment 11 to Letter]: This is a BP document containing various pressure readings. It does not indicate that Anadarko itself undertook pressure measurement work.

- ANA-MDL2-000123638 [Attachment 12 to Letter]: This e-mail from Mr. Quitzau to other Anadarko personnel states that "BOP pressures declined over the job." It does not indicate that Mr. Quitzau measured these pressures.

- ANA-MDL2-000123457-63 [Attachment 7 to Letter]: In this e-mail chain among Anadarko personnel, Anadarko's Steve Woelfel speculates, "there might not be much pressure being exerted at this leak pt." See ANA-MDL2-000123459. Again, this quote affords no support for the United States' proposition that Anadarko measured pressures.

- ANA-MDL2-000122779-86 and Excerpts from Deposition of Richard Vargo [Attachments 13 and 14 to Letter]: The first document, an e-mail from Halliburton's Richard Vargo to Mr. Quitzau, forwards a document containing temperature plots. The United States alleges that Mr. Vargo discussed this document during his deposition and "explain[ed] that Mr. Quitzau . . . asked to see the temperature analysis . . . ." Letter at 3. By the United States'

The Honorable Sally Shushan
September 27, 2012
Page 4

own description, Mr. Quitzau received temperature information from another party, and did not do the analysis himself.

**C.   Topics 4.b, 4.c, 9, and 10.**

Topics 4.b, 4.c, and 9 of the Notice seek information only on efforts made by Anadarko to estimate discharge and flow rate at various time periods. None of the United States' documents suggests that Anadarko played any role in these calculations. Topic 10 asks about "[t]he use" of any flow rate work "undertaken by or on behalf of Anadarko or the Unified Command" in connection with Source Control efforts. As discussed below, the documents relied upon by the United States do not show that Anadarko did any such work, or made any use of such work.

- ANA-MDL2-000054897-900 [Attachment 15 to Letter]: The United States cites this document, an e-mail from BP's Stephen Wilson to Mr. Quitzau, for the proposition that BP sent information regarding flow rates to Anadarko. Anadarko's receipt of flow rate information generated entirely by BP does not indicate that Anadarko performed the flow rate calculations or made use of those performed by BP.

- ANA-MDL2-000123457-63 [Attachment 7 to Letter]: The United States quotes a passage from this e-mail chain among Anadarko personnel indicating that "Transocean . . . came up [with an] idea" that, if successful, "would allow us to determine pressure in stack to get a handle on differentials which should allow better estimation of flow rates . . . ." *See* Letter at 4 (emphasis added). This document undercuts rather than supports the United States' assertion that Anadarko performed or made use of flow rate modeling; it was Transocean's idea that would facilitate flow rate modeling performed by others.

- ANA-MDL2-000032636-38 and ANA-MDL2-000032633-35 [Attachments 5 and 6 to Letter]: As noted previously, this is a BP document that was forwarded to Mr. Quitzau. The document does not indicate that Anadarko participated in flow rate modeling.

- ANA-MDL-000021762-64 [Attachment 16 to Letter]: The United States cites this document for the proposition that Anadarko's Mike Beattie planned to recommend the use of a "Boomvang flowline" because it would "facilitate the highest flowrate." This document is unrelated to flow rate from the Macondo Well and instead involves Anadarko's offer of equipment and pipe to facilitate flow to the Q4000 vessel, rather than into the Gulf. Indeed, had the United States cited complete sentences, rather than just excerpts, it would be clear that the flow rate reference refers to characteristics of the pipe, and not the well itself. *See* ANA-MDL-000021762 ("This pipe has the largest internal diameter and will facilitate the highest flow rate"). This document therefore does not support any notion that Anadarko measured flow rates.

- ANA-MDL2-000001057-62 [Attachment 17 to Letter]: The United States quotes a single sentence from this document, an e-mail from Mr. Quitzau, stating "We didn't talk about this water zone in the discussion this morning with Mike Mason's group since we were only discussing flowing hydrocarbons." *See* Letter at 4. This document suggests only that

The Honorable Sally Shushan
September 27, 2012
Page 5

Mr. Quitzau participated in a meeting in which flowing hydrocarbons was a topic, not that Anadarko estimated or used them.

**D.     Topic 17.**

Topic 17 seeks information about calculations and modeling associated with <u>Anadarko's</u> efforts to calculate or model shut-in wellhead pressures. Again, this topic is specific to Anadarko's activities, and none of the United States' documents indicate that <u>Anadarko</u> measured shut-in wellhead pressures.

- ANA-MDL2-000122842-51 [Attachment 10]: This e-mail from Mr. Quitzau to various Anadarko personnel reports a shut-in pressure reading. *See* ANA-MDL2-000122845. It does not indicate that Anadarko calculated, modeled, or estimated shut-in pressures.

- ANA-MDL2-000001057-62 [Attachment 17 to Letter]: The sentence from this document quoted by the United States directly undercuts its proposition that Anadarko participated in modeling or calculating shut-in pressures. Mr. Quitzau states that he "learn[ed] the latest thoughts on the maximum shut in pressure from the hydrocarbon zones and the potential build up rate when shut in" at a meeting, and that "[t]his was very helpful." *See* ANA-MDL2-000001059. Mr. Quitzau clearly received this information from someone else.

\* \* \* \* \*

In sum, no good cause exists to discredit the Declaration and require Anadarko to produce a 30(b)(6) witness for the contested topics in the Notice. Those topics seek evidence of <u>Anadarko's</u> activities, but the asserted documents indicate only that BP and other parties provided information about <u>their operations</u> to Anadarko. These documents do nothing to indicate that Anadarko had involvement in or personal knowledge of any of the operations conducted by others. The United States' attempt to leap from evidence of Anadarko's <u>access to information</u> to Anadarko's <u>personal knowledge</u> of or <u>involvement</u> in those operations mirrors the rejected theory that Anadarko should be liable based on its access to information about well operations. *See* B1 Order [Rec. Doc. 3830] at 28-29; Order on Anadarko Motion *in Limine* [Rec. Doc. 5836] at 1 ("Evidence of Anadarko's knowledge of or access to information about Macondo Well design and/or operations is irrelevant to any issue . . . ."). The United States is foreclosed by the law of the case from trying to resuscitate this spurious theory that Judge Barbier has cogently rejected.

This Court has held that "Anadarko is not required to produce a witness who will testify that it has no information responsive to the topics." *See* Rec. Doc. 6816 at 1. Nothing in the United States' documents changes the fact that an Anadarko 30(b)(6) witness would testify under oath that Anadarko has no knowledge pertaining to these topics. The United States' request for additional, totally pointless, and wasteful testimony borders on the abusive and should be rejected.

Thank you for your consideration of this submission.

The Honorable Sally Shushan
September 27, 2012
Page 6

Respectfully submitted,

*[signature]*

Warren Anthony Fitch

cc: Liaison and Coordinating Counsel
    Ky E. Kirby, Esq.