

# SMITH STAG, LLC

One Canal Place | 365 Canal Street | Suite 2850 | New Orleans, Louisiana 70130
Phone 504 593 9600 | Fax 504 593 9601 | www.smithstag.com | mail@smithstag.com

Stuart H. Smith†
Michael G. Stag†

Catherine B. Cummins
Robert D. McMillin
Sean S. Cassidy⁼
John L. Fontenot
Merritt E. Cunningham°

Of Counsel:
Barry J. Cooper, Jr.‡

† Limited Liability Company
‡ Also Admitted in Texas
⁼ Also Admitted in New Jersey
° Also Admitted in Mississippi

September 10, 2012

Via E-mail:

Hon. Sally Shushan
c/o Michael O'Keefe (mike_okeefe@laed.uscourts.gov)
United States Magistrate Judge
500 Poydras Street, Room B345
New Orleans, LA 70130

  **Re:**  ***IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on April 20, 2010***
     USDC, Eastern District Of Louisiana, 2:10-md-02179
     Our File Number: 203101
     MDL 2179 Objectors request to conduct limited discovery regarding the Class Action Settlement.

Dear Judge Shushan:

  Undersigned counsel has filed numerous and significant objections to the proposed class action settlement in this matter. [REC. DOC. 167, 185, 189, and 202 of the Special Objections Docket, Civil Action No. 10-7777] Undersigned counsel along with co-counsel represent hundreds of plaintiff's/objectors in proceedings which have been recently either removed from State Court and/or transferred, over plaintiff's objection to this Court from Key West, Florida. [REC. DOC. 6653, 7296, and Civil Action Nos. 2:12-cv-00988-CJB-SS, 2:12-cv-01295-CJB-SS, 2:12-02048-CJB-SS, 2:12-cv-02155-CJB-SS, and 2:12-cv-00381-CJB-SS.] These plaintiffs/objectors include: (1) Fisherman; (2) Charter Captains; (3) Real Estate Developers; (4) Property Owners; (5) Hotels; (6) Counties; (7) Seafood Distributors; (8)Real Estate Professionals; (9) Oil and Gas industry; and (10) Toxic exposure victims, among others.

  In connection with the anticipated filing of these objections, undersigned counsel forwarded to counsel for both the class and British Petroleum correspondence requesting

1



to meet and confer regarding our limited and reasonable discovery requests. *See*, attached correspondence dated September 5, 2012 attached hereto as exhibit "A". When undersigned counsel received no response, a follow-up letter was sent on September 7 2012 again requesting a response. *See*, exhibit "B". On September 7, 2012, Richard Godfrey responded via e-mail to undersigned counsel's office manager, Judy Morris, as follows: "Dear Mr. Smith: we received your two letters, and objections, at the end of last week. We will review them, and get back with you later this week after our review. Rick"

With the impending hearing on the fairness of the settlement scheduled in November, this discovery must be conducted in an expedited fashion. It is for this reason that I am writing you this letter. Several factors have caused undersigned counsel to seek discovery at this time, to wit:

1) Filings of British Petroleum and class counsel in support of their motion(s) requesting Court approval of the settlement on or about August 13, 2012. These filings were voluminous and contained numerous declarations and other evidence submitted in support thereof. [REC. DOC. 7101, 7104, 7111, 7112, 7113, 7114, 7116] The self-serving statements contained in this "evidence" have not been subject to third party examination of the veracity and/or the scientific reliability of the "evidence".

2) The land fall of hurricane Isaac has changed the settlement landscape. According to the "evidence" submitted by BP in support of the settlement Risk Transfer Premium (RTP), significant future contamination from the oil spill was "unlikely". British Petroleum submitted declarations and other evidence to support this, now known to be, ridiculous proposition. Unfortunately, Isaac made land fall shortly after this "evidence" was filed and the storm has indisputably washed up significant amounts of hydrocarbons associated with the British Petroleum Deepwater Horizon disaster from the Atchafalaya basin to Apalachicola Florida. How Hurricane Isaac has affected or will affect the risk transfer premiums and/or reasonableness of the settlement are unknown to objectors without discovery.

3) The filings related to the settlement by the United States of America, the State of Alabama, and the State of Louisiana cast serious doubt upon the basic factual underpinnings of the settlement as relied upon by British Petroleum and class counsel. These filings relate directly to fairness and reasonableness of the settlement. The United States in its pre Isaac brief, state clearly that "BP's cherry picked assertions of robust recovery are at best premature judgments on the health of the overall Gulf ecosystem." [REC. DOC. 7229-2 at pg. 30] The United States further alleges that a multi-year, multi-million-dollar assessment of damage to natural resources caused by the Deepwater Horizon shows what it calls "*indications of harm*" to the environment along the Gulf Coast. It notes -- in a stark rebuttal of BP's claims of a major recovery in the Gulf ecology -- that "*while it is true that many resources are in a better condition than at the height of the spill, -- after all, they are no longer slathered in layers of BP's oil -- it is also true that they continue to suffer significant harm...*"

According to the United States of America:

"*  Dolphins in Barataria Bay, Louisiana, are showing signs of severe ill health."

"*  Certain deep-sea corrals have been identified as dead or dying, and populations of plankton-eating fish that reside on certain corrals are significantly decreased."

"*  Heavy marsh oiling that could cause negative impacts to marsh vegetation for decades to come." [Rec. Doc 7229-2 at pg. 4]

"Just as BP attempted to have the public, Congress and others focus only on what happened on the rig or in other offshore offices of its contractors, the BP engineers and executives who drafted these and other documents were the people who actually exercised the direct authority and control over nearly every aspect of what ultimately went wrong with the rig on April 20th. The behavior, words and actions of these BP executives would not be tolerated in a middling sized company manufacturing dry goods for sale in a suburban mall. Yet they were condoned in a corporation engaged in an activity in which no less a witness than Tony Heyward [the former CEO] himself described comparable to exploring outer space." [Rec. Doc 7229-2 at pg. 12]

According to the State of Alabama:

"We also intend to prove that BP represented to the federal government and the public that the flow rate was 5,000 bpf (barrels per day), while having knowledge that the flow rate was significantly higher. At the same time, BP proceeded with the "top kill" method, even though BP knew that a) a top kill risked well integrity and thus further delay or permanent damage b) a top kill would be unsuccessful at 15,000 bpd or greater and c) the flow rate was far greater than 15,000 bpd. We intend to prove that BP's ordering of the risky top kill, which BP knew was predestined to fail, amounted to willful misconduct which delayed the capping of the well by several weeks -- weeks in which an additional 1+million barrels of oil unnecessarily entered the Gulf." [REC. DOC. 7223 at pg. 3]

According to the State of Louisiana:

1) The settlement is "unfair to all class members". [REC.DOC. 7345 at pg 27]

2) The papers filed by BP and the PSC in support of the settlement are misleading. [REC.DOC. 7345 at pg 4]

3) The settlement is based on errors and misrepresentations by BP which are unrebutted by the PSC. [REC.DOC. 7345 at pgs. 4, 11]

4) There is no explanation as to why the settlement claim system is any better than Ken Feinberg's Gulf Coast Claims Facility (GCCF). In fact, the settlement calls

3

for clients to accept or reject the final settlement without the option of receiving interim payments as required by Federal Law. [REC.DOC. 7345 at pgs. 24-26]

5) The settlement and the claims process is an attempt by BP, without opposition from the PSC, to use duress to extract final releases from the victims in violation of the Oil Pollution Act. [REC.DOC. 7345 at pg. 26]

6) The PSC has not contested BP's and its experts "*baseless opinions*" offered in support of the settlement. [REC.DOC. 7345 at pg 8]

7) There is a real "*question as to whether the negotiations between the parties truly occurred at arms' length*". [REC.DOC. 7345 at pg 8]

8) There has been no discovery on the question of damages. [REC.DOC. 7345 at pg 11]

9) The evidence submitted on economic and environmental damages by BP and the PSC consist of one-sided declarations of BP's hired experts. No unbiased evidence of actual losses has been presented to the Court. [REC.DOC. 7345 at pg 11]

10) The settlement unfairly transfers the risks of future losses from BP to the victims even though BP legally remains forever responsible. [REC.DOC. 7345 at pg. 23]

The Louisiana filing also joins federal and Alabama lawyers in pointing out "the unsupported and grossly misleading statements and declarations filed by BP," which went largely uncontested by class counsel:

*"Remarkably for a company that touts its response efforts, BP has still not removed all of the associated boom equipment, including the thousands of boom anchors that were abandoned in Louisiana's waterways. Not only does BP oil remain uncontrolled in the nearshore Louisiana ecosystem, but BP is executing one of the worst oil responses in history."* [REC.DOC. 7345 at pg 6]

*"Over two years after the spill commenced (and even before Hurricane Isaac), oil continues to wash up on our beaches from submerged tar mats, oil captured in nearshore sediments continue to foul our beaches, and at least four of our fisheries remain closed due to the continued concentration of oil in the Gulf."* [REC.DOC. 7345 at pgs. 6-7]

The Louisiana filing also notes that BP's "*most egregious misrepresentation*" are its claims of a robust recovery. It notes that researchers are continuing to study a "*vast array of injuries*" from the spill. It states that visible oil tar balls and tar mats are recovered weekly in Louisiana, and that 220 miles of its coastal "response miles" are still oiled. Perhaps that shouldn't be so shocking since, as the filing also notes, the amount of BP oil in the gulf is the equivalent of 20 Exxon Valdez. [REC.DOC. 7345 at pg 12]

4

We have also become aware of the Court's finding that Halliburton, and the State of Louisiana do not have standing to either object to the settlement or conduct discovery. [REC. DOC 7038] Therefore, it is incumbent upon objectors with standing, such as my clients, to do so.

It is important for the Court to note that undersigned counsel has not been actively involved in these proceedings since his cases have only been recently removed to this Court from State Court and/or transferred to this Court over objection by the MDL panel from Key West, Florida. [REC. DOC. 6653, 7296, and Civil Action Nos. 2:12-cv-00988-CJB-SS, 2:12-cv-01295-CJB-SS, 2:12-02048-CJB-SS, 2:12-cv-02155-CJB-SS, and 2:12-cv-00381-CJB-SS.] The receipt of the above information filed into the record by extremely competent counsel who have been involved in all aspects of these proceedings is extremely disturbing and leads to numerous questions that can only be answered through formal discovery. Also mitigating in favor of limited discovery is the fact that at no point prior to August 13, had any documents or other information disclosed between BP class counsel been shared with undersigned counsel or the public generally. Furthermore, much of the underlying evidence, which is purported to support the opinions, conclusions, and statements of fact contained in the papers filed on or about August 13 by British Petroleum and class counsel, for the most part have not been published or otherwise made available to the general public; nor, subject to peer review. At no point in time prior to entering into the settlement agreement did members of the PSC solicit opinions or information from undersigned attorneys, or their clients.

Undersigned counsel is unable to identify any evidence in the record that addresses or allows for a systematic and scientifically credible analysis of the following:

1) The unusual size, shape, or geographic locations of the Economic Loss Zones. The Settlement Agreement creates a series of oddly shaped, disproportionately sized, irrational, and scientifically unsupported areas known as "Economic Loss Zones" ranging from "Zone A" through "Zone D" to categorize the terms according to which Class Members may seek recovery. As discussed in the Objections themselves, the zones, though appearing in principle, to be a fair and systematic procedure for allocating the distribution of resources, are in fact discriminatory. The economic loss zones preclude a substantial number of claimants due to the increasingly onerous causation requirements as you progress from Zone A to Zone D.

2) The election of less favorable formulas and more onerous documentary requirements for determining compensation than those used by the Gulf Coast Claims Facility (GCCF) to the detriment of the Objectors;

3) The threshold percentage amounts required to show causation under the various methodologies;

4) The total expected size of the class;

5) The total amount of losses of the putative class as a result of the Oil Spill;

6) The expert testimony or information underlying the Settlement's conclusion that economic recovery for injured class members began on December 31, 2010;

7) The time for Gulf related businesses and property owners to recover from the stigma associated with the Oil Spill for tourism or other purposes;

8) The significance of variable expenses for the hospitality industry;

9) The total number of business type class members such as Hotels, fisherman, etc.;

10) The total number of businesses that will not be entitled to any form of compensation under the Settlement;

11) The extent of stigma and other damages suffered by real property owners;

12) The scientific or other basis for interclass conflict between the following groups: wetland/property owners east and west of the Louisiana and Mississippi lines, sport fishers, crabbers and long liner fishers as compared to other classes within the seafood compensation program, etc.;

13) The typicality of class representatives claims to the claims of the class;

14) The content of the alleged massive discovery efforts which have yet to be publically released;

15) The extent to which BP, and not the PSC, had full and complete access to the entire range of economic, industry specific and geographic data it needed to precisely craft settlement terms that would minimize its liability while maximizing its cost savings. It is apparent from the terms of the Settlement that many of its features may have been deliberately crafted by BP, based upon the superior knowledge and information they had obtained from the records, data, and experience of the GCCF;

The Court must evaluate this settlement to determine if it is fair to the absent class members. See, *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 225 (5th Cir.1981) ("The reason the court is called on to review a settlement is to protect the rights of the many absent class members who were not involved in the negotiations leading to settlement.") Without pre-fairness hearing discovery in this case this mandate would be impossible.

A review of the case law indicates that discovery should be allowed in a case like this but limited. Discovery is necessary to allow the Court to reach "an informed, just and reasoned decision." *Glicken v. Bradford*, 35 F.R.D. 144, 148 (S.D.N.Y. 1964); *Cohen v. Young*, 127 F.2d 721, 724 (6th Cir. 1942); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 157 (S.D.N.Y. 1971); *Bok v. Ackerman*, 309 F. Supp. 710 (E.D. Pa. 1970); *Mars Steel Corp. v. Continental Illinois Nat. Bank and Trust Co. of Chicago*, 834 F.2d 677 (7th Cir. 1987) (discovery by settlement objector should be limited). The Objectors are entitled to discovery, within the discretion of the Court. *See In re Cmty. Bank of N. Va.*, 418 F.3d 277, 316 (3d Cir. 2005); *Greenfield v. Villager Indus., Inc.*, 483 F.2d 824, 833 (3d Cir. 1973) (noting that "an objector at a [fairness] hearing is entitled to an opportunity to develop a record in support of his contentions by means of cross-examination"); *Freebird, Inc. v. Cimarex Energy Co.*, 46 Kan. App. 2d 631, 264 P.3d 500, 506 (2011) (noting that because the time given to file objections is usually short, "the objector may need to secure evidence through independent discovery and presentation of witnesses at the settlement hearing").

We would like to discuss these matters with Your Honor at your earliest convenience.

Respectfully Yours,

Stuart H Smith

SHS/BJC
Attachments (2)

c.c.   Plaintiffs' Liaison Counsel:
       Stephen Herman Sherman@hhkc.com
       James P. Roy jimr@wrightroy.com
       Plaintiffs' Steering Committee:
       Brian H. Barr bbarr@levinlaw.com
       Jeffrey A. Breit jbreit@bdbmail.com
       Elizabeth J. Cabraser ecabraser@lchb.com
       Philip F. Cossich, Jr. pcossich@cossichlaw.com
       Robert T. Cunningham rtc@cunninghambounds.com
       Calvin C. Fayard, Jr. calvinfayard@fayardlaw.com
       Robin L. Greenwald rgreenwald@weitzlux.com
       Ervin A. Gonzalez Ervin@colson.com
       Rhon E. Jones rhon.jones@beasleyallen.com
       Matthew E. Lundy mlundy@lundylawllp.com
       Michael C. Palmintier mpalmintier@dphf-law.com
       Joseph D. Rice jrice@motleyrice.com
       Paul M. Sterbcow sterbcow@lksalaw.com
       Scott Summy ssummy@baronbudd.com

Mikal C. Watts mcwatts@wgclawfirm.com
Conrad S. P. "Duke" Williams duke@williamslawgroup.org
Defense Liaison Counsel
David J. Beck dbeck@brsfirm.com
Donald E. Godwin dgodwin@godwinronquillo.com
Don K. Haycraft dkhaycraft@liskow.com
Ky E. Kirby ky.kirby@bingham.com
Deborah D. Kuchler dkuchler@kuchlerpolk.com
J. Andrew Langan andrew.langan@kirkland.com
Michael J. Lyle michael.lyle@weil.com
Kerry J. Miller kmiller@frilot.com
Phillip A. Wittman pwittmann@stonepigman.com
Richard C. Godfrey, P.C. richard.godfrey@kirkland.com



# SMITH STAG, LLC

One Canal Place | 365 Canal Street | Suite 2850 | New Orleans, Louisiana 70130
Phone 504 593 9600 | Fax 504 593 9601 | www.smithstag.com | mail@smithstag.com

Stuart H. Smith†
Michael G. Stag†

Catherine B. Cummins
Robert D. McMillin
Sean S. Cassidy⁼
John L. Fontenot
Merritt E. Cunningham°

Of Counsel:
Barry J. Cooper, Jr.‡

† Limited Liability Company
‡ Also Admitted in Texas
⁼ Also Admitted in New Jersey
° Also Admitted in Mississippi

September 5, 2012

**VIA FACSIMILE, EMAIL &US MAIL:**

James Parkerson Roy, Esquire
Attention: Deepwater Horizon E&PD
Benefits Settlement
Domegeaux Wright Roy & Edwards
556 Jefferson Street, Suite 500
Post Office Box 3668
Lafayette, LA 70501
jimr@wrightroy.com
(337) 278-7892

Stephen J. Herman, Esquire
Attention: Deepwater Horizon E&PD
Benefits Settlement
Herman Herman Katz & Cotlar LLP
820 O'Keefe Avenue
New Orleans, LA 70113
sherman@hhkc.com
(504) 561-6024

Richard C. Godfrey, P.C.
Attention: Deepwater Horizon E&PD
Benefits Settlement
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
richard.godfrey@kirkland.com
(312) 862-2200

Don K. Haycraft, Esquire
Liskow & Lewis
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
dkhaycraft@liskow.com
(504) 556-4108

Re: *IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on April 20, 2010*
USDC, Eastern District Of Louisiana, 2:10-md-02179
Our File Number: 203101

Gentleman,

We are writing this letter to advise you that we will be filing significant objections to the class action settlement in this matter. In light of the filings by both BP and Class Counsel on or about August 13, 2012, the recent impact of Hurricane Isaac and the pleadings just filed by the United States, we believe limited discovery is necessary on



behalf of our clients. Since we know from your public statements that you seek clarity and transparency in connection with this matter, we seek a conference with you to amicably discuss this issue. If we are unable to resolve these issues amicably, it is our intent to file a motion with the Court for permission to conduct limited discovery on an expedited basis as permitted by the case law. We would like to resolve as many of these issues as possible before we bring this matter before the Court. In connection with our objections we would like the following:

1) Depositions of the class representatives;

2) Depositions of the experts and/or fact witnesses whose declarations have been filed into the record in support of the settlement, including the production of all information required to be produced by experts under the Federal Rules of Civil Procedure. This includes, but is not limited to, all materials reviewed by the expert and all treatises which support the expert's opinion;

3) The production of documents which are reasonably calculated to lead to the discovery of admissible evidence related to settlement issues; including but not limited to the "enormous discovery record" in this case, documents produced by the United States related to its response to the spill, and any other data or information which you believe support the structure and fairness of the settlement;

4) Responses to Interrogatories which are reasonably calculated to lead to the discovery of admissible evidence related to settlement issues; including but not limited to, identification of witnesses and exhibits which may be used at any hearing on the proposed settlement.

5) Such other depositions of BP and class counsel which are reasonably calculated to lead to the discovery of admissible evidence related to settlement issues.

      Please let us know whether you will agree to some limited discovery and whether you believe a discovery conference would be beneficial. We would like a conference early next week.

Sincerely,

SMITH STAG, LLC

Stuart H. Smith

SHS/drt
cc via email only
    Kevin Malone
    Robert McKee
    Michael Stag



# SMITH STAG, LLC

One Canal Place | 365 Canal Street | Suite 2850 | New Orleans, Louisiana 70130
Phone 504 593 9600 | Fax 504 593 9601 | www.smithstag.com | mail@smithstag.com

Stuart H. Smith†
Michael G. Stag†

Catherine B. Cummins
Robert D. McMillin
Sean S. Cassidy⁼
John L. Fontenot
Merritt E. Cunningham°

Of Counsel:
Barry J. Cooper, Jr.‡

† Limited Liability Company
‡ Also Admitted in Texas
⁼ Also Admitted in New Jersey
° Also Admitted in Mississippi

September 7, 2012

**VIA FACSIMILE, EMAIL &US MAIL:**

James Parkerson Roy, Esquire
Attention: Deepwater Horizon E&PD
Benefits Settlement
Domegeaux Wright Roy & Edwards
556 Jefferson Street, Suite 500
Post Office Box 3668
Lafayette, LA 70501
jimr@wrightroy.com
(337) 232-8213

Richard C. Godfrey, P.C.
Attention: Deepwater Horizon E&PD
Benefits Settlement
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
richard.godfrey@kirkland.com
(312) 862-2200

Stephen J. Herman, Esquire
Attention: Deepwater Horizon E&PD
Benefits Settlement
Herman Herman Katz & Cotlar LLP
820 O'Keefe Avenue
New Orleans, LA 70113
sherman@hhkc.com
(504) 561-6024

Don K. Haycraft, Esquire
Liskow & Lewis
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
dkhaycraft@liskow.com
(504) 556-4108

Re:   *IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the*
      *GULF OF MEXICO, on April 20, 2010*
      USDC, Eastern District Of Louisiana, 2:10-md-02179
      Our File Number: 203101

Gentleman:

I have not received any response to my communication to you dated September 5, 2012 regarding the Deep Water Horizon Settlement.

I expected more professional courtesy. If you do not intend to respond please so



advise. Otherwise please provide a date and time early next week for a discovery conference.

Sincerely,

SMITH STAG, LLC

Stuart H. Smith

SHS/drt
cc via email only
    Kevin Malone
    Robert McKee
    Michael Stag

Case 2:10-md-02179-CJB-SS   Document 7353   Filed 09/11/12   Page 12 of 12