# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL No. 2179<br><br>SECTION "J" |
| Applies to:<br>*12-2019, Cutler v. BP, et al.* | * * * * * | JUDGE BARBIER<br><br>MAGISTRATE SHUSHAN |

## ORDER & REASONS

Before the Court are three motions concerning member case 12-2019, an action by Charles Cutler, *pro se*, against BP America Inc. ("BP"):

(1) Plaintiff Cutler's request for a stay, which the Court treats as a Motion for Stay of Proceedings (Rec. Doc. 7199)

(2) Plaintiff Cutler's "Objection to 'Notice of Removal of Civil Action,'" which the Court treats as a Motion for Remand (Rec. Doc. 7160)

(3) Defendant BP's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) (Rec. Doc. 7108)

Cutler's suit arises in the context of the April 20, 2010 blowout, explosion, and fire aboard the DEEPWATER HORIZON semi-submersible drilling rig as it was engaged in oil exploration on the Outer Continental Shelf, and the subsequent discharge of millions of gallons of oil into the Gulf of Mexico. Specifically, Cutler complains of an action BP did not take, but allegedly should have, in response to the oil spill.

Cutler's petition for relief alleges that BP's efforts to remediate the oil spill should have included "the Cutler Process," which purportedly "uses industrial size air compressors to pipe down air, which contains oxygen, to the deep ocean bottom where oxygen levels are low." (Pet. ¶ 7, C.A.

12-2019, Rec. Doc. 1-1)[1]  The petition explains that naturally-occurring microorganisms consumed some of the discharged hydrocarbons shortly after they entered the Gulf, approximately fifty miles offshore and thousands of feet below the water's surface.  He further explains that these microorganisms require oxygen, and the lack of oxygen inhibited greater consumption of hydrocarbons near the point of discharge.  Cutler alleges that the Cutler Process, if implemented, would have replenished oxygen near the point of discharge, enabling microorganisms to consume a greater amount of hydrocarbons before they spread inland.  Cutler claims that BP should have known the lack of oxygen inhibited microbial consumption, but he also admits that he never informed BP of the "Cutler Process" prior to filing his suit on April 8, 2011, nearly a year after the oil spill began.  (Pet. ¶ 16 & Ex. C)

Although Cutler frames his cause of action in terms of negligence, he also states that it is brought under "the whistle blower statute."  Cutler does not identify a specific statute, only that "'whistle blower statute' . . . [means] that the defendant should have known that the Deep Ocean re-oxygenation process would have greatly reduced the amount of oil and methane that caused the environmental damage."  *Id.* ¶ 6.  In his request for relief, Cutler seeks, *inter alia*, compensation for pointing out how BP should have responded to the oil spill; compensation for developing the Cutler Process; compensation to start a non-profit company that will develop and test the Cutler Process; and an injunction requiring BP to implement the Cutler Process on any deepwater drilling rigs it may have in the Gulf of Mexico.

Cutler filed his petition for relief in Louisiana's 25th Judicial District Court on April 8, 2011.

---

[1] Cutler provides this additional description: "On a small scale the Cutler Process is similar to a fish aquarium.  The bubbler in a fish aquarium supplies oxygen for the fish and/or microorganisms in the aquarium.  If the bubbler is turned off the fish show less activity, get sick and/or die." (Pet. ¶ 21)

On August 6, 2012, BP removed the case to this Court where it was consolidated with this Multidistrict Litigation ("MDL").  BP then filed its Rule 12(b)(6) motion to dismiss, the third motion listed above. The Court established a briefing schedule for this motion only.[2] (Rec. Doc. 7147)  Cutler filed an opposition to BP's motion (Rec. Doc. 7161) and also filed the above motions to stay and remand.  BP filed a short reply in support of its motion to dismiss.  (Rec. Doc. 7505)  After reviewing these filings, the Court has determined that it can resolve all three motions without oral argument or further briefing.

The Court first considers Cutler's motion for stay.  As noted above, Cutler is *pro se*.  On August 27, 2012, Cutler requested a stay while he attempted to find representation.  It appears that Cutler has never had counsel in this matter, and no counsel has enrolled for Cutler since he requested the stay.  The motion for stay (Rec. Doc. 7199) is **DENIED**.

The Court next considers Cutler's motion to remand.  Because this action was commenced in state court prior the January 6, 2012 effective date of the amendments to the removal statutes, the Court applies the law as it existed before these amendments.  *See* Federal Courts Jurisdiction & Venue Clarification Act of 2011, Title I, sec. 105, Pub. L. No. 112-63, 125 Stat. 758, 762 (2011). At issue is whether removal was timely, whether this Court is the proper venue for removal, and whether the action was removable.  BP bears the burden of demonstrating the propriety of removal. *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 152 (5th Cir. 1996).

In order to establish personal jurisdiction over a defendant, Louisiana requires in most civil actions that the defendant be served with a citation, attached to which is a certified copy of the

---

[2] Pursuant to Pretrial Order No. 15, all motions in this MDL are stayed and no responsive memoranda are due until set for submission by the Court.

3

petition. La. Code of Civ. P. arts. 6, 1201, 1202. Thus, for removal to be timely a notice of removal must be filed within thirty days of the defendant being served with the citation and the attached petition, as opposed to the date the petition was filed in state court. 28 U.S.C. § 1446(b) (2011); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999). It is undisputed that when BP removed this action on August 8, 2012, service had not occurred.[3] Accordingly, removal was timely.

The Court also finds that it is a proper removal venue, because Louisiana's 25th Judicial District (Plaquemines Parish) is within the geographic bounds of the Eastern District of Louisiana. *See* 28 U.S.C. §§ 1441(a), 1446(a) (2011).

The last removal issue concerns 28 U.S.C. 1441 (2011), which states in pertinent part:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. . . .

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States, shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. 1441 (2011). Subsection (a) asks whether there is original federal jurisdiction over the action. BP's notice of removal asserts that there is jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA") and federal question jurisdiction under 28 U.S.C. § 1331. Cutler argues only that the case should be remanded because some of the issues concerning his suit are based in

---

[3] BP declines to move to dismiss for insufficient service under Rule 12(b)(5). (BP Memo. in Supp. p.1 n.1, Rec. Doc. 7108-1)

4

Louisiana.

> OCSLA's jurisdictional statute states:
>
> [T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals . . . .

43 U.S.C. § 1349(b)(1)(A). The Court has previously found in a similar context that OCSLA jurisdiction is present. (Order of Oct. 6, 2010 pp.6-8, Rec. Doc. 470) The Court holds for the same reasons that OCSLA jurisdiction is present over Cutler's action. *See also Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.2d 340, 349-50 (5th Cir. 1999) (applying a broad "but for" test to determine whether a cause of action gives rise to OCSLA jurisdiction and finding jurisdiction present even though plaintiff's petition did not plead OCSLA *eo nomine*). Because there is original federal jurisdiction under OCSLA, Subsection (a) of the removal statute is satisfied.

With respect to Subsection (b), if Cutler's action arises under the Constitution, treaties or laws of the United States, then, under the first sentence of (b), the action is removable without regard to the citizenship or residence of the parties. *See id.* at 351 (stating that where there is OCSLA jurisdiction over a non-maritime claim, removal is appropriate without regard to citizenship). Under the second sentence of (b), if there is some other basis of federal jurisdiction over Cutler's action, then it is removable so long as none of the defendants properly joined and served is a citizen of the State where the action was brought, i.e. Louisiana. *See Tenn. Gas Pipeline*, 87 F.3d at 156; Order of Oct. 6, 2010, p.9-10, Rec. Doc. 470. Because BP is not a citizen of Louisiana, it does not matter whether removal is founded on either the first or second sentence of Subsection (b); in both instances removal would be proper.

5

For these reasons, the Court finds removal was proper. The motion to remand (Rec. Doc. 7160) is **DENIED**. The Court further notes that, assuming there are no issues with the amount in controversy, diversity jurisdiction appears to provide another basis of removal, although BP has not asserted it.

Finally, the Court considers BP's motion to dismiss under Rule 12(b)(6). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted). Thus,

> a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 678 (quotations and citations omitted).

As mentioned, Cutler appears to assert two theories of recovery: negligence and an unidentified "whistle blower statute." A cause of action in negligence requires that the defendant breach a duty and that this breach caused damage to the plaintiff. Cutler admits that he never informed BP of the "Cutler Process" ("Plaintiff was unable to submit 'Cutler Process' because he couldn't get on line or to a phone. Defendant should have put a mailing address for Whistle Blowers to contact defendant." Pet. Ex. C). Furthermore, the sketches of the "Cutler Process" attached to the petition (Pet. Ex. A) combined with Cutler's statement that he intends to use any sums recovered from BP to test the "Cutler Process" (Pet. ¶ 24 & p.4 ¶ (B)), indicates to the Court that, at the time Cutler filed his suit almost a year after the spill began, the "Cutler Process" had not progressed beyond the theoretical phase. Thus, even if the Court assumes that a lack of oxygen inhibited early

microbial consumption of hydrocarbons and that replenishing oxygen ultimately would have resulted in less damage to coastal areas by oil, and further assuming that BP knew or should have known such information before or during the discharge; Cutler's petition still fails to plead factual content that would allow the Court to draw the reasonable inference that the law imposed upon BP a duty to specifically implement "the Cutler Process." In the absence of a duty, there could be no breach by BP. Cutler's claimed damages raise additional issues that the Court need not discuss. For these reasons, Cutler fails to state a cause of action for negligence under any law known to this Court.

Cutler's "whistle blower" claim fails for identical reasons. The Court also notes that Louisiana's Whistleblower statute, La. R.S. § 23:967, assuming this is the statute under which Cutler purports to bring his claim, is designed to protect an employee from his or her employer's reprisal when the employee in good faith advises the employer of a legal violation. *See* La. R.S. § 23:967(A) ("An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law . . . ."). Cutler does not assert that he is a current or former employee of BP.

For these reasons, the petition fails to state a claim for which relief may be granted. The motion to dismiss (Rec. Doc. 7108) is **GRANTED**. Because it does not appear that the defects in Cutler's Petition can be cured by amending the petition, the Court will dismiss this case with prejudice.

For the reasons set forth above,

      **IT IS ORDERED** that Cutler's motion for stay (Rec. Doc. 7199) and motion for remand (Rec. Doc. 7160) are **DENIED** and BP's motion to dismiss (Rec. Doc. 7108) is **GRANTED.**

      **FURTHER ORDERED** that member case 12-2019, *Cutler v. BP*, is **DISMISSED WITH PREJUDICE**.

      New Orleans, Louisiana, this 4th day of October, 2012.

                                                                        United States District Judge

The Clerk of Court is directed to mail a copy of this Order to Plaintiff Charles Cutler.