

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179<br><br>SECTION J |
| Applies to: *All Cases* | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

| REPORT BY THE CLAIMS ADMINISTRATOR OF THE DEEPWATER HORIZON ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT ON THE STATUS OF CLAIMS REVIEW ||||
|---|---|---|---|
| STATUS REPORT NO. | 3 | DATE | October 5, 2012 |



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig<br>          "Deepwater Horizon"  in the Gulf<br>          of Mexico, on April 20, 2012 | MDL NO. 2179<br><br>SECTION J |
| Applies to: *All Cases* | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

**REPORT BY THE CLAIMS ADMINISTRATOR OF THE DEEPWATER HORIZON
ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AGREEMENT ON THE
STATUS OF CLAIMS REVIEW**

**STATUS REPORT NO. 3, DATED OCTOBER 5, 2012**

The Claims Administrator of the Deepwater Horizon Economic and Property Settlement Agreement (the "Settlement Agreement") submits this Report to inform the Court of the current status of the implementation of the Settlement Agreement. The Claims Administrator will provide any other information in addition to this Report as requested by the Court.

    I.        S<small>TATUS OF THE</small> C<small>LAIMS</small> R<small>EVIEW</small> P<small>ROCESSES AND</small> C<small>LAIM</small> P<small>AYMENTS</small>

    A.  **Status of Forms.**

The Claims Administrator opened the Settlement Program with needed functions staffed and operating on June 4, 2012, just over 30 days after the Claims Administrator's appointment. We have received 70,527 Registration Forms and 64,615 submitted Claim Forms since the Program opened, as shown in the Claims Report attached as Appendix A.  Claimants have begun but not fully completed and submitted another 10,147 Claim Forms.   The Forms are available online, in hard copy, or at Claimant Assistance Centers located throughout the Gulf.  Of the total Claim Forms submitted, 10% of claimants filed in the Seafood Program, 33% filed Individual Economic Loss Claims (IEL), and 22% filed Business Economic Loss Claims (BEL).  *See* App.

A, Table 2. Over 13,000 of these Claim Forms were completed with the assistance of DWH staff at one of the nineteen Claimant Assistance Centers. *See* App. A, Table 3. The Claimant Assistance Centers also provide other forms, including Personal Representative Forms, Subsistence Interview Forms and Sworn Written Statements and Authorizations.

B. **Status of Claims Review.**

We completed our first reviews and issued our first outcome notices on July 15, 2012, and Payments on July 31, 2012. We have escalated the pace of reviews as reviewers become more adept at these new systems and as we expand the number of reviewers who are fully trained and are producing reliable results. Beginning the week of September 21, 2012, we reached an average of 2,000 claims reviews each week. To increase the number of reviews completed, we are continually hiring and training reviewers. We use an aggressive staffing policy designed to quickly elevate qualified claims reviewers and limit time and training on the less qualified new hires. As more reviewers are hired and current reviewers learn the system, the number of reviews will continue to increase.

As set out in Status Report No. 1, we adopted the ambitious goal of issuing by October 1, 2012, notices (whether eligible, incomplete or denied) on at least 30% of the approximately 45,000 claims (other than the Subsistence claims) that we had received as of the date of that Report (September 5, 2012). As of October 1, 2012, we issued 15,746 notices and met our goal of issuing notices on at least 30% of the claims we had received as of the date of Court Report No. 1. *See* Status of Notice Generation Targets and Pace of Reviews, attached as Appendix B. We plan to conclude the processing of all claims as rapidly as possible, while still trying to assure accurate outcomes. Sixty-three percent of all notices were Eligibility or Denial Notices.

C. **Status of Claim Payments.**

We issued our first payments to claimants on July 31, 2012. The report attached as Appendix C provides detail on the notices and payments issued to date. The non-Economic Loss claim types involve fewer documents and calculations, and thus have moved more quickly than the more complex steps required by the Settlement Agreement on the Economic Loss claim types. As of October 4, 2012, we have issued 7,144 Eligibility Notices with Payment Offers totaling over $422 million. As of that date, we also have made over $68.6 million in payments on 1,784 claims.

## II. INFORMATION TO CLAIMANTS ON CLAIMS REVIEW AND STATUS

We have worked to enhance and improve communications about the status of claims and reviews since the Settlement Program's launch on June 4, 2012. The Claims Administrator provides claimants and law firms with various mechanisms to communicate with them and inform them of the status of their claims in the Settlement Program.

A. **Communications with the Settlement Program.**

We have implemented a network of communication methods to allow claimants or law firms to contact someone with the Settlement Program with questions or to check on the status of their claims. These have all been in place since the launce of the Settlement Program on June 4, 2012.

1. **Direct Contact with the CCC and the CACs.** Unrepresented claimants and law firms can call the Claimant Communications Center ("CCC") or visit one of the Claimant Assistance Centers ("CACs") for updates on their claims. Trained DWH personnel at the CCC or the CACs can look up claimant's statuses using the Results Search feature on the DWH Claims Review Portal and answer questions about the status of their claims such as "Where is my claim in the review process?" and "Did you receive my Claim Forms?"

2. **Designated Law Firm Contacts**. We have assigned every law firm a DWH Firm Contact. The Firm Contact's role is to develop a rapport with their law firms and

become the "go to" person for answering specific questions about claimant statuses, questions about documentary proof and eligibility for specific claim types, and other questions or issues that they are experiencing with the Settlement Program or the DWH Portal. If the Firm Contact does not know the answer to a specific question or solution to a problem, we have an internal email distribution list of experts on each phase of the review system (identity verification, payment, Releases, specific claim types, etc.) so that the Firm Contact can receive prompt and accurate answers to the question or issue. We are working closely with the Firm Contacts to ensure they are proactive with their designated law firms by sharing new enhancements to the DWH Portal and directing them to the DHECC Alerts on new features or information about the Settlement Program that we post on the DWH Portal. If requested, we also assign Claims Preparation Companies or Accounting Support Groups a Firm Contact to answer general questions about the Settlement Program. We do not share specific claimant information with Claims Preparation Companies or Accountants unless we have on file an authorization form signed by the claimant that allows us to communicate with that entity. Claims Preparation Companies and Accountants do not have access to the DWH Portal.

3. **Email Questions Box.** In addition to personal contact through the CCC or the CACs, claimants or law firms can submit questions to the Email Questions box (questions@dhecc.com). We have a team that monitors this inbox and responds to the questions posed. If the team member does not know the answer to a specific question, we utilize the same internal email distribution list of experts on each phase of the review system so that we can answer the question or promptly address the identified problem.

B. <u>Online Portals</u>.

We designed the secure DWH Attorney and Pro Se Portals to be an interactive tool for claimants and law firms to have real time access to claimant statuses and official Notices from the Settlement Program. Unrepresented claimants can access only their personal claims using the secure Pro Se Portal. Law Firms have robust search features to locate their client inventory by name, DWH ID number, SSN/EIN or Notice status. Here is a summary of the currently existing methods that a claimant or law firm may use to check status on the Portal:

1. **News and Developments Feature on Portal.** Since the launch of the Settlement Program on June 4, 2012, we have maintained the News and Developments tab on the Portals to notify claimants and law firms about updates and improvements to the Settlement Program. We post DHECC Alerts and updates on enhancements

4

to the Portals to keep users apprised of new Portal features, SWSs or forms and to explain any policy issues such as the Identity Verification Process.

2. **Statuses at the Claimant and Claim Level.** The Attorney and Pro Se Portals provides claimants and law firms the ability to check their status at both the claimant level (most helpful for law firms with multiple clients) and at the claim level. Law firms can use the Specific Search or Search All feature to locate a particular claimant or all of their claimants who are participating in the Settlement Program. After a law firm locates a specific claimant, the Claimant ID hyperlink will take them to the Claimant Details screen to view all documents affiliated with the claimant, file new Claim Forms or SWSs, and check the status of submitted Claim Forms or those begun on the Portal but not yet submitted.

   The Notice Search feature on the Portal allows law firms to locate all claimants with a particular type of Notice or any type of Notice. The Search Results allow the law firm to sort the results by any of the column headings to find a particular claimant or type of Notice. The Search Results screen provides the applicable deadline, if any, to respond to a posted Notice. Once a law firm locates the claimant with a specific Notice, the Claimant ID hyperlink will take them to a Claim Types details screen to view all claims affiliated with the claimant and the status of any posted Notices. Law firms can view a posted Notice at any time and generate multiple copies for their clients and files if necessary.

   If a Notice contemplates a response (*i.e.*, acceptance of an offer, file for Reconsideration of a denied or payable claim, submit responses to an Incompleteness Notice, file an Appeal, etc.), the DWH Portal allows both law firms and pro se claimants to make these selections online and submit supporting documentation. Each Notice has a specific webpage on the DWH Portal that explains in detail the available options specific to that particular type of Notice and allows claimants or law firms to make the appropriate response. This reduces hard copy submissions in response to a Notice and allows responses such as requests for Reconsideration or Appeal to immediately enter the necessary review queues for the selected action.

3. **Reporting Menu.** We developed a Reporting menu so that law firms can generate reports at any time from the Portal. The Reporting tab on the Portal has similar capabilities to that which the CA personnel have on their version of the Portal. It allows law firms to generate real-time reports on certain segments of their inventory, to identify claimants with unsigned Claim Forms, posted Notices, no Registration Forms submitted, pending deadlines, posted payments, etc. These interactive reports can be downloaded to Excel and will help law firms with recordkeeping and daily claimant management. This feature was made available on the Attorney Portals on August 31, 2012.

4. **Law Firm Status Reports.** We developed the Law Firm Status Report to provide a summary of all submissions by the law firm. It includes the following

5

tables: (1) status of claimants with signed and unsigned Registration Forms and Claim Forms; (2) all submitted claims by claim type; (3) claims processing statuses for all submitted claims; and (4) all posted Notices. As of August 31, 2012, law firms were able to generate this report at any time using the Reporting menu on the Portal.

5. **Pending Deadlines Report.** We developed a Pending Deadlines report for the Portal to identify all posted Notices with no response. As responses are provided through the Portal, deadlines will fall off the report, which will provide law firms with a "to do" list for their claimant inventory. As of September 19, 2012, law firms have been able to generate this report using the Reporting menu on the Portal.

6. **Payment Details Report.** We developed a Payment Details report for the Portal to identify all payments a claimant received including payments from BP, the Real Estate Recovery Fund, the GCCF and in the Deepwater Horizon Economic and Property Damages Settlement. As of September 19, 2012, law firms have been able to generate this report using the Reporting menu on the Portal.

We continuously evaluate the functionality of the portal interfaces to update them and enhance their operation.

    C. **Email Notifications.**

When we post new Notices to the Portal, we send an email alert to registered users of the Portal notifying them of new Notices available for viewing. We also send reminder email notices if Claim Forms remain unsigned for more than ten days or if Portal users have not viewed posted Notices within ten days. In addition to the ten-day reminder emails for unviewed Notices, we also send email reminders to all DWH Portal users if a Notice remains unviewed after 20 and 30 days. We enhanced the email alerts on August 30, 2012, to include the identity of the specific claimants who have had new Notices posted by providing the claimant name, DWH Identification Number, and the Claim number.

    D. **Check My Claim Status Feature on DWH Public Website.**

We introduced the "Check My Status" feature on the DWH public website on August 31, 2012, to allow claimants who do not use the DWH Portal to check the status of their claims.

6

This feature permits represented claimants who do not have access to the Portal and those who have elected not to use the Portal to determine their claim status. We provide a basic snapshot of the status of any claims, but this feature does not allow users to open any Notices or respond to any deadlines as that functionality is reserved for the Portal.

Claimants can access the Check My Status hyperlink on the DWH Public website. When a claimant clicks the Check My Status hyperlink it will bring up a basic search screen that requires entry of the full DWH Claimant ID and the last four digits on the SSN or EIN. To prevent unauthorized access and fraud by programs designed to determine the last four digits of a SSN or EIN, we included a security feature that forces the user to type a random set of numbers and characters into the search screen. This security feature protects a claimant's identity and personal information. We track the IP address of users who constantly attempt to access claimant information and get error messages in case we need to investigate potential fraud. After a claimant enters valid information in the Search menu, the program displays a claimant's status and the current processing stages of any asserted claims. We do not display the claimant's name or address for security purposes. We remind users of the Check My Status application that they must use the Portal to view any Notices or respond to any pending deadlines.

### III. POLICY DECISIONS BY THE CLAIMS ADMINISTRATOR AFFECTING THE CLAIMS PROCESS

After extensive discussions with the Parties and the Court, the Claims Administrator adopted significant revisions to policies governing the document requirements set forth in the Settlement Agreement to expedite the claims process. See Status Report No. 2 that the Claims Administrator filed on September 24, 2012, for detail on these policy changes. In addition, the Claims Administrator, after further discussions with the Parties, has adopted the following policies.

A. **Prior Spill-Related Payments to Seafood Program Claimants**.

With regard to the requirement under the Seafood Program concerning submission of a sworn written statement establishing the amount of any prior Spill-related payments to the claimant, the Claims Administrator will consider the data transferred to the Claims Administrator by the Gulf Coast Claims Facility as the equivalent of the required sworn statement and will not require submission of additional documents on this issue, unless the Claims Administrator in his discretion determines a need for an additional statement and/or documents to resolve questions presented by a particular claim.

B. **Sworn Written Statement of Causation for Individual Economic Loss Claimants**.

At this time, the Claims Administrator has determined that he must continue to require Individual Economic Loss claimants as to whom causation is not presumed to supply an Employer Sworn Written Statement from the claimant's employer attributing the claimant's loss of income during the Compensation Period to the DWH Spill. The Settlement Agreement mandates that such claimants submit this Statement.

C. **Total Income of Individual Periodic Vendor or Festival Vendor Claimants**.

At this time, the Claims Administrator has determined that he must continue to require Individual Periodic Vendor and Festival Vendor claimants to submit documents showing the claimant's total income in 2009 and 2010. Such documents are mandatory under the Settlement Agreement.

D. **Sworn Statement on the Absence of Tax Information Documents or Pay Period Earnings Documentation**.

To facilitate the processing of Individual Economic Loss claims, the Claims Administrator determined that the requirements in Exhibit 8A that claimants submit sworn statements regarding the absence of Tax Returns or Pay Period Earnings Documentation do not

8

aid in the process of properly evaluating Business Economic Loss claims and thus are not necessary to process Claim Forms under the applicable Claims Processes.  However, the Claims Administrator interprets the language of Exhibit 8A of the Settlement Agreement to be mandatory in this regard, as BP has contended, requiring the claimant to produce either the missing records or the sworn statement, absent mutual agreement of the Parties to the contrary or unless and until the Court directs otherwise.  The Claims Administrator also had considered the efficacy of issuing a potential eligibility notice to claimants with these document deficiencies announcing the compensation available on the claim if the claimant submitted the required documents and such documents then established eligibility, rather than issues incomplete notices that solely direct claimants to submit the missing documents or the sworn statement concerning their absence.  BP has taken the position that the Claims Administrator has no discretion to issue potential eligibility notices and instead must have all required documents on file before advising claimants of the compensation potentially payable on a claim.  The Claims Administrator has determined not to alter its processes at this time to issue potential eligibility notices and instead will continue to issue incomplete notices to claimants with these missing documents.

     E.  **Specific Dollar Amount in the Individual Release.**

The Claims Administrator determined that replacing the specific dollar amount recited in Section 2 of the Individual Release with a general statement of consideration would enhance the efficiency of the administration of claims under the Settlement Agreement and would reduce the confusion experienced by claimants with more than one claim who are asked to sign a Release stating a payable amount based on only one claim.  BP has opposed this change to the Release. The Claims Administrator interprets the language of Section 4.4.10.2 to mandate the use of the Release "set forth in Exhibit 26," which requires the insertion in Section 2 of a dollar amount,

9

absent mutual agreement of the Parties to the contrary or unless and until the Court directs otherwise.

F. **Joint Ownership Issues on Seafood Program Claims**.

In any instance where the Claims Information on a particular Seafood Program claim indicates more than one owner or lessee of a vessel or oyster leasehold, or more than one owner of an IFQ, and the Claims Information available on the claim does not permit the Claims Administrator to determine with reasonable certainty the percentage of the claimant's ownership or lease interest, the Claims Administrator will require the claimant to submit a Sworn Written Statement indicating the percentage of the claimant's ownership or lease interest. The Claims Administrator will award such claimant, if otherwise eligible, a corresponding percentage of the compensation payable as to such vessel, oyster leasehold or IFQ.

## IV. CONCLUSION

We offer this Report to ensure that the Court is informed of the status of the Program to date. If the Court would find additional information helpful, we stand ready to provide it at the Court's convenience.

    /s/ Patrick A. Juneau
PATRICK A. JUNEAU
CLAIMS ADMINISTRATOR

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/EDF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 5th day of October 2012.

                                          /s/ Patrick M. Juneau
                                          Claims Administrator

11