IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUSIANA

|  |  |
|---|---|
| IN RE: OIL SPILL BY THE OIL RIG DEEPWATER HORIZON IN THE GULF OF MEXICO, ON APRIL 20, 2010 | MDL No. 2179<br><br>Section:  J |
| This Document Relates To:<br>    All Cases,<br>    12-970 (Bon Secour Fisheries, Inc., et al.<br>    v. BP Exploration & Production., et al.) | Judge:  Barbier<br><br>Magistrate:  Shushan |

# MEMORANDUM IN SUPPORT OF GO FISH'S OBJECTIONS TO MAGISTRATE'S RECOMMENDATION

## I.  Introduction

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, Gulf Organized Fisheries In Solidarity and Hope, Inc. ("GO FISH") files objections to the Magistrate's Order denying GO FISH the right to intervene based on a lack of standing. [Rec. Doc. 7480, hereinafter "the Order".][1] The Magistrate Judge's order recommends denial of GO FISH's motion for leave to intervene based on a misapplication of the third prong for associational standing set forth in *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343 (1977). The Order also ignores the individual standing of the board members who separately joined in GO FISH's motion. No opposition to GO FISH's motion was filed, and it was not set for hearing as requested [Rec. Doc. 7314-2] and contemplated by Rule 72 and Pre-Trial Order No. 15 (2:10-md-02179, Rec. Doc. 676).[2] Instead, BP made a two paragraph reference

---

[1] GO FISH's motion to intervene is a dispositive motion within the meaning of Rule 72(b), so the Magistrate's order is understood to be a recommended disposition.

[2] The Order notes at footnote 4 the Clerk of Court's decision to docket GO FISH's Motion to Intervene in 10-7777. After reviewing Pre-trial Order No. 49 [Rec. Doc. 6616] again, undersigned counsel for GO FISH believes that these papers should not be filed in 10-7777. If undersigned counsel is in error, GO FISH requests that this objection be filed in whatever docket is correct and considered on the merits.

to standing in its opposition to GO FISH's request for limited discovery regarding the support for the proposed settlement agreement. [Rec. Doc. 7411 at 15-16.]

The Order rules on both the Motion for Discovery and the Motion to Intervene by adopting BP's conclusory argument, finding: "The relief sought for the underlying members of the fishing industry groups which comprise GO FISH is individualized monetary damage awards. The claims and relief asserted by GO FISH require the participation of individual members of the GO FISH fishing industry groups in the lawsuit and therefore GO FISH lacks standing to proceed." [Rec. Doc. 7480 at 9.] In support, the Order cites *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2nd Cir. 2004). [*Id.*] The *Bano* case involved an action for damages on behalf of associations' members and therefore is readily distinguishable.

The Order's finding that GO FISH is seeking individualized damage awards for its members is manifestly wrong. GO FISH seeks a legal ruling amending the class definition and establishing procedural due process; it does not seek any specific monetary award for any of its members. GO FISH can obtain judgment granting every request in its prayer without proof of any specific individual's damages. If GO FISH obtains relief a better, more legitimate, class structure and procedure will be in place, which will permit those with claims to present them in a fair and equitable system. In granting preliminary approval of the proposed partial settlement agreement, this Court has already noted that GO FISH "ostensibly meet[s] the standing requirement," and did not at that time indicate that it was necessary to consider the details of any individual's claim in considering GO FISH's industry-wide objections. [Rec. Doc. 6418 at 17.] GO FISH satisfies all three prongs of the *Hunt* test for associational standing to intervene, and, in any case GO FISH's board members individually have a right to intervene and carry out the limited discovery requested.

## II. Law Applicable To GO FISH's Motion To Intervene

### *A. Background Principles*

Several background principles underpin the analysis of a motion to intervene and the concept of associational standing. "When considering a motion to intervene, the court 'must accept as true the non-conclusory allegations in the motion." *Reich v. ABC/York-Estes Corp.,* 64 F.3d 316, 321 (7th Cir. 1995). In other words, the Court should not be concerned at this stage whether GO FISH's factual allegations will ultimately prove true or persuasive, but, assuming they are true, whether they support GO FISH's intervention. "A motion to intervene as a matter of right, moreover, should not be dismissed unless it appears to a certainty that the intervener is not entitled to relief under any set of facts which could be proved under the complaint." *Id.* (*citing Lake Investors Dev. Group v. Egidi Dev. Group,* 715 F.2d 1256, 1258 (7th Cir. 1983)).

Regarding associational standing, the Supreme Court has made clear that the third prong of the *Hunt* test is a prudential consideration for the courts, not a constitutional requirement. *International Union, United Auto., Aerospace and Agr. Implement Workers of America v. Brock,* 477 U.S. 274 (1986)(hereinafter *Brock*). As the Supreme Court put it in another case, *United Food and Commercial Worker's Union Local 751 v. Brown Group, Inc.* 517 U.S. 544 (1996), "[t]he third prong [of *Hunt*] is best seen as focusing on matters of administrative convenience and efficiency, not on elements of a case or controversy." *Id.* at 557. In weighing whether it is prudent to allow an association to pursue damages claims on behalf of individual members,[3] the Court in *Brock* laid out for lower courts the significant value of associational standing:

> The Secretary's presentation, however, fails to recognize the special features, advantageous both to the individuals represented and to the judicial system as a whole, that distinguish suits by associations on behalf of their members from class actions. While a class action creates an ad hoc union of injured plaintiffs who may be linked only by their common

---
[3] The considerations in *Brock* provides even stronger support for GO FISH's intervention, which does not pursue damages claims on behalf of individual members.

> claims, an association suing to vindicate the interests of its members can draw upon a pre-existing reservoir of expertise and capital. "Besides financial resources, organizations often have specialized expertise and research resources relating to the subject matter of the lawsuit that individual plaintiffs lack." These resources can assist both courts and plaintiffs. As one court observed of an association's role in pending litigation: "[T]he interest and expertise of this plaintiff, when exerted on behalf of its directly affected members, assure 'that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult ... questions.' "
>
> In addition, the doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others. "The only practical judicial policy when people pool their capital, their interests, or their activities under a name and form that will identify collective interests, often is to permit the association or corporation in a single case to vindicate the interests of all." The very forces that cause individuals to band together in an association will thus provide some guarantee that the association will work to promote their interests.

*Brock*, 477 U.S. at 289-290.

The Supreme Court's discussion in *Brock* sets forth very well the benefits in terms of administrative efficiency and convenience, both to the Court and to the fishing membership, of GO FISH's participation in this litigation. Because GO FISH is not pursuing a damages claim on behalf of any of its members, its participation offers all of the benefits of association and none of the concerns of individualized damage requirements.

### B. Law Related To Hunt's Third Requirement for Associational Standing

As the Order points out, *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977) provides the universally relied upon requirements for establishing associational standing. An association has standing to bring suit on behalf of its members when (1) its members would otherwise have standing under Article III to sue in their own right, (2) the interests at stake are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

The Order looks solely to the third prong in rejecting GO FISH's standing to intervene on behalf of its members. In doing so, the Order misconstrues the claims and relief GO FISH actually seeks and

instead assumes that because individual members of GO FISH may ultimately claim compensation through the settlement program, their individual intervention into the class action is required. The Order's factual assumption is incorrect, and its conclusion is contrary to the law.

As the first prong of the *Hunt* test makes clear, associational standing always hinges on injury to individual members. Such individual injury within the membership is a prerequisite, not a bar. Very often, the interest is monetary. *Hunt* itself involved a claim by a Washington State advertising commission that certain regulations in North Carolina would improperly cause damage and expense to its members. In ascertaining that the amount in controversy for individual growers was sufficient for federal jurisdiction, the Supreme Court notes in some detail that the individual members are suffering monetary damages because of the regulations. *Hunt*, 432 U.S. at 346-48. Associational standing was appropriate, however, because the commission in *Hunt* was seeking to change the regulations causing damage to its members, not to recover those damages for them.

In fact, the attempt to redress injury to individual members is the norm in associational standing cases. "'(W)hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.'" *Hunt*, 432 U.S. at 343 (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)). GO FISH's request to amend certain class definitions and procedures is "a request for 'some other form of prospective relief'" and substantially the same as the relief sought in *Hunt*. If granted, that relief will hopefully inure to the benefit of GO FISH's members, and to the fishing industry at large. The fact that individual members of GO FISH have a financial

interest in the outcome of the relief requested bolsters GO FISH's right to intervene, rather than undermines it.

In *Brock*, *supra*, the Court clearly set forth the premise that the likelihood that members will make individual damages claims based on an association's legal action does run afoul of *Hunt's* third requirement. Just like the Magistrate in this case, the Court of Appeals in *Brock* had denied associational standing to the UAW "because those UAW members 'who had suffered an alleged injury had done so in varying amounts requiring individualized proof,' the relief sought here could not be obtained unless 'each individual claimant was a party plaintiff.'" *Brock*, 477 U.S. at 287 (quoting appellate decision below).  In reversing, the Supreme Court held: "the Court of Appeals misconstrued the nature of petitioners' claims. Neither these claims nor the relief sought required the District Court to consider the individual circumstances of any aggrieved UAW member. The suit raises a pure question of law: whether the Secretary properly interpreted the Trade Act's TRA eligibility provisions. And the relief requested, and granted by the District Court, leaves any questions regarding the eligibility of individual TRA claimants to the state authorities given jurisdiction over such questions by 19 U.S.C. § 2311(d)." *Id*. at 287-88 (citation omitted). In the same way, GO FISH's claims and requested relief raise a question of law, whether represented subclasses and a sufficient procedure for advocating the best case of each subclass are necessary and beneficial in regards to the capped Seafood Compensation Fund. *See* Memorandum In Support of Motion to Intervene [Rec. Doc. 7314-1]; GO FISH Objections [Rec. Doc. 7344]. Whether any individual member is eligible for compensation and the amount of that compensation, is left to the claims facility established by the settlement agreement.

The Fifth Circuit recently took up *Hunt's* third prong in *Association of American Physicians & Surgeons, Inc. v. Texas Medical Bd.*, 627 F.3d 547 (5th Cir. 2010). The case concerned claims that the Texas Medical Board engaged in abusive practices that caused damage to physicians who were members

of AAPS. Necessarily, the AAPS cited and relied upon stories of many individual instances of abusive practices and conduct to support its claim of systemic unconstitutional behavior. The district court dismissed the complaint based upon the third prong of *Hunt* because "AAPS's allegations about anonymous complaints, conflicts of interest, arbitrary administrative rulings, breaches of privacy, and retaliation cannot be sustained without the extensive participation of individual members and therefore render associational standing improper." *Id.* at 551.  The Fifth Circuit reversed, finding that even though individual members would be required to participate in order to establish systemic violations, such participation could be accomplished with "a small but significant sample of physicians." *Id.* at 553.[4] "Because AAPS also seeks only equitable relief from these alleged violations, both the claims and relief appear to support judicially efficient management if associational standing is granted." GO FISH's motion to intervene falls solidly within the reasoning of the Fifth Circuit's ruling in *AAPS*. Although certain factual predicates are necessary to inform the Court of the need and benefit of the relief requested, there is no need to resolve any individual's claim for compensation to reform the current conflicts and inadequacy in class representation.

### III.  Analysis

As an initial matter, the individual board members of GO FISH and organizational member Pointe Au Chien Indian Tribe have all joined in the intervention with the corporation. [Rec. Doc. 7314-1 at 5.] As the sworn statements establish, they are class members who have attested that their interests are not being adequately represented by the named class representatives. Their individual standing and right to intervene was not addressed in the Order.[5] Regardless of the arguments about associational standing, the individuals have a right to intervene to protect their own interests. It is well established that only one

---

[4] *See also Pennsylvania Psychiatric Society v. Green Spring Health Services*, 280 F.3d 278, 285-87 (3rd Cir. 2002)(reviewing cases in which associational standing was established even though limited participation by members would be required).
[5] If in the press of time counsel failed to properly list the individuals in the prayer for relief, undersigned asks that that not be held against these individual objectors. However, as seen in the affidavits, those parties clearly object.  It is respectfully requested that the Court not stand on technical deficiencies.

intervenor needs to establish standing to allow the action to proceed. *Watt v. Energy Action Education Foundation,* 454 U.S. 151, 160 (1981); *Bowen v. Kendrick*, 487 U.S. 589, 620 n. 15 (1988).

However, for all of the reasons laid out by the Supreme Court in the *Brock* quote above, the participation of GO FISH as an association is preferable to the participation of the individual board members and other claimants. The widely recognized industry groups that form GO FISH have been serving the fishing community for decades. Legislative bodies and regulatory agencies rely on GO FISH member groups in times of disaster and involve them in almost all issues affecting their respective fisheries. GO FISH's member groups have resources and expertise that will "assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult ... questions." *See Brock, infra*. GO FISH also speaks to those excluded from the settlement by GCCF releases, the impacts of which are highly relevant to the impact on the industry as a whole. Finally, for reasons of resources and unity, GO FISH's member groups have decided to proceed together and are exercising constitutionally protected rights of association on critical matters of public importance.

GO FISH seeks class wide relief of systemic problems with the proposed class certification as it relates to Seafood Compensation Program participants and seafood related industries. The Magistrate's Order acknowledges that the relief GO FISH seeks is "to: (a) amend the class definition to create a separate class for those claimants participating in the Seafood Compensation Program ("Program") and subclasses within the Program; (b) appoint counsel to represent each of the subclasses; and (c) appoint a special master to make findings on the competing claims of the subclasses which would be used to determine the second distribution under the Program. Rec. doc. 7314 (Exhibit 3, Prayer for Relief)." [Rec. Doc. 7480 at 8.] However, after acknowledging GO FISH's prayer for relief, the Order disregards

it and assumes that individual claimants must resolve their compensation claims as part of the relief requested. This was erroneous.

Class action litigation is fundamentally a representative standing vehicle, like associational litigation. If the law were as described in the Order, then neither GO FISH nor the Representative Parties named in the lawsuit would have standing to act on behalf of the class, each member of which must ultimately prove his, her, or its own eligibility and damages. However, that is not the stage of the proceedings class certification concerns. The Court can certify the PSC/BP proposed class without knowing a single unnamed claimant's basis for recovery. If the Court grants the relief requested in the class complaint, not a single person will recover a dollar by that act.

GO FISH seeks class wide relief in exactly the same manner as the class representatives. The failure to create subclasses within the capped Seafood Compensation Program is fatal to the monumental proposed settlement of private damages claims. GO FISH seeks to amend the class structure and institute the procedural safeguards that are mandatory for a class action to be certified. GO FISH is not seeking to intervene in order to recover damages or compensation for any member. GO FISH seeks to save this settlement by correcting serious flaws in the way it is structured, which speaks to the Court's plenary authority to modify the class definition. The Court has no need or cause to determine whether X or Y claimant is eligible for compensation or what that compensation should be.

Let it be clear also that GO FISH does not seek to represent any fishery, location, or claimant group against another. GO FISH seeks that those various competing interests be represented through Court-approved subclass representative plaintiffs and counsel within the class action vehicle already proposed. Eventually, if GO FISH obtains the relief it requests, those representative plaintiffs and counsel will put forward the best case for each subclass to inform the neutral's determination of the

second distribution of Seafood Compensation Funds. Only then, after GO FISH's participation in intervention is fully resolved, will the details of individuals' claims be pertinent.

## IV.  Conclusion

First, the Order's assumption that the Court must consider the individual monetary claims of GO FISH's members in order to resolve the class issues raised by GO FISH's intervention is incorrect. Second, even if a "small but significant sample" of individual participation were required, that does not prevent associational standing to raise class issues.  Third, the individual board members of GO FISH have standing and joined in the intervention to prevent any possibility that standing would be an issue. Wherefore, GO FISH objects to the Magistrate's Order of September 25, 2012 [Rec. Doc. 7480] denying GO FISH's Motion to Intervene [Rec. Doc. 7314], and requests that after *de novo* review the Court grant GO FISH leave to intervene as of right and permit the limited discovery requested.

Respectfully Submitted:

| /s/ Joel Waltzer | /s/ Robert Wiygul | /s/ Clay Garside |
|---|---|---|
| Joel Waltzer (LA #19268) | Robert Wiygul (LA #17411) | Clay Garside (LA Bar # 29873) |
| 3715 Westbank Expwy, Ste. 13 | 1011 Iberville Drive | 14399 Chef Menteur Hwy, Ste D |
| Harvey, LA  70058 | Ocean Springs, MS 39564 | New Orleans, LA 70129 |
| Office:  (504) 340-6300 | Office: (228) 872-1125 | Office: (504) 254-4400 |
| Fax:     (504) 340-6330 | Fax:    (228) 872-1128 | Fax:    (504) 254-1112 |
| joel@waltzerlaw.com | robert@waltzerlaw.com | clay@waltzerlaw.com |

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing motion has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 9th day of October, 2012.

/s/ Clay Garside