UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | ) ) ) ) ) | MDL NO: 2179<br><br>SECTION: J |
| Relates to: 2:10-cv-07777-CJB-SS | ) ) ) ) | Judge Barbier<br>Mag. Judge Shushan |

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTORS' MOTION
FOR RECONSIDERATION OF THE COURT'S ORDER
DENYNG OBJECTORS' REQUEST TO PRODUCE**

COMES NOW, the Objectors, Reynaldo Abreu, et. al., by and through undersigned counsel, and Pursuant to Fed. R. Civ. P. 37, hereby files this Memorandum of Law in support of their Motion for Reconsideration of the Court's Order Denying Objectors' Request To Produce:

**INTRODUCTION**

On October 3, 2012, the Objectors sent identical Requests To Produce to both Plaintiff, Kip Plaisance ("Plaisance"), as class representative, and to Defendant, BP Exploration & Production, Inc. ("BP"). The Objectors requested the following documents:

1. Redacted list of all Claimants listed in the BP Medical Encounters Database.

2. Any and all documentation that demonstrates the total number of Claimants in the BP Medical Encounters Database who complained of any conditions listed in the Specified Physical Conditions Matrix.

3. Any and all documentation that demonstrates the total number of Claimants contained in the BP Medical Encounters Database.

1

On October 4, 2012, BP responded to this request and stated that it believed that the Order issued by the court on September 25, 2012 [Regarding Objectors' Requests for Discovery and GO FISH's Motion to Intervene] would bar any request to proceed with the Objectors' proposed discovery. As a result, BP stated that it did not intend to respond to the request. Plaisance also denied the Objectors' request based on this order.[1]

On Oct. 12, 2012, the Objectors filed a Motion to Compel a Response by BP and Plaisance to their discovery requests. On October 15, 2012, BP contacted the Objectors and advised them that the Court had issued an order concerning the discovery requests at issue on October 9, 2012, which denied the objector's attempts to obtain the requested discovery and negated the need for a response by BP and Plaisance thereto. However, none of the counsel for the Objectors received notice of the Order. As such, the Motion to Compel was filed without knowledge that the court had already issued an order denying the right to discovery.

In the Court's September 25, 2012 Order ("Order"), cited by BP in its denial letter and the Court in its Order on October 9, 2012, the Court denied the Requests for Discovery (for a group of objectors to the Economic & Property Class Action Settlement, hereinafter referred to as "Economic Objectors") based on five reasons: (1) the discovery requests were not timely; (2) the discovery requests were overbroad; (3) the discovery requests were unnecessary; (4) the settlement agreement was negotiated in good faith; (5) an economic objector failed to comply with a court order. Rec.

---

[1] The Objectors are aware that both BP and Plaisance had thirty days to respond to the Requests To Produce pursuant to Fed. R. Civ. P. 34. Because they both stated that they would not produce the requested documents, Objectors proceeded to file their Motion to Compel so that the could mitigate the prejudice from the delay in the production of these documents. Moreover, neither party responded to each item individually as is required by Fed R. Civ. P. 34(b)(2)(B). The Objectors can only assume that each request was denied for the same reason. Thus, if the Court deems any of the requests to be appropriate, they should allow Objectors' Request to Produce stand for that specific item.

Doc. 7480.  (The Court also ruled that GO FISH, a Louisiana non-profit corporation could not intervene on behalf of Objectors.)

In the present matter, two of these reasons can be dispelled from the outset.  First, here, the Objectors are not operating under any court order requiring that proposed written discovery be filed before a certain date and time.  Thus, it cannot be said that the Objectors have failed to comply with a court order. Second, in the previous matter, the fact that the settlement was negotiated in good faith was only relevant to deny the discovery sought by the Economic Objectors on why the parties negotiated the terms that they did.  Rec. Doc 7480 at 7.  Here, the Objectors are not requesting any information surrounding the negotiation of the settlement.  Thus, it is immaterial whether or not the settlement was negotiated in good faith.

It should also be noted that the Economic Objectors were objecting to the proposed Economic and Property Class Action Settlement ("Economic Settlement").  The Court specifically notes in its Order that the order relates only to requests for discovery made pursuant to the proposed Economic Settlement. Rec. Doc.7480 at 1.  Here, the Objectors are objecting to the proposed Medical Benefits Class Action Settlement ("Medical Settlement").

Notwithstanding the inapplicability of the previous Order because it falls under a different settlement agreement, Objectors' Request to Produce in the present instance can be distinguished from the previous request(s), because the present Request to Produce is narrowly tailored, pertinent to the Court's determination of whether the settlement is fair, and has been filed only weeks after the facts of this case were first discovered by Objectors' counsel.

**DISCUSSION**

Although there is no absolute right to conduct discovery or obtain evidence simply because a person is a class member, the Court may, in its discretion, limit the discovery or presentation of evidence to that which may assist it in determining the fairness and adequacy of the settlement. *In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 424 (N.D. Ga. 1992). In exercising this discretion, the fundamental question is whether the district judge has sufficient facts before him to intelligently approve or disapprove the settlement. *In Re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n.6 (6th Cir. 1984). The Court has broad discretion to permit or deny objector discovery requests. *Cotton v. Hinton*, 559 F.2d 1326, 1333 (5th Cir. 1977).

**A. Objectors' Requests Are Timely**

In the Order, the Court noted that the discovery requests filed by the Economic Objectors on or around September 10, 2012, were not timely. Rec. Doc. 7480 at 4. The Court specifically noted that the terms of the settlement agreement were filed April 18, 2012, and they proffered no excuse for the delay. *Id.* There are great distinctions between the present Objectors and the Economic Objectors. The Economic Objectors were overwhelmingly businesses along the Gulf Coast who were objecting to the proposed Economic Settlement. It is likely that these businesses kept a keen eye on the litigation leading up to the proposed Economic Settlement and that they had the tools, resources, and confidence to seek a remedy in the legal system. These businesses solicited attorneys shortly after the Gulf Oil Spill in order to present their economic claims. Thus, it is reasonable for the Court to look at the five month delay between the propounding of the settlement terms and the requests for discovery as untimely.

On the other hand, the present Objectors are indigent Hispanic migrant workers who were only alerted of the terms of the proposed Medical Settlement (or even its existence) when they

received documents in the mail. Prior to June 27, 2012, counsel for Objectors had no knowledge of the full terms of the proposed Medical Settlement. On that date, four clients came to counsel's office with the settlement packet they had received in the mail. Upon review, counsel began investigating these claims.

As the investigation developed, counsel noticed that despite many of its clients having the conditions complained of in the Specified Physical Conditions Matrix ("Matrix"),[2] many could not recover unless they were found to be in the BP Medical Encounters Database ("Medical Database"). At this time, counsel filed its Objection. Around the same time, counsel was advised by the Claims Administrator that the claimants could each individually submit paperwork to learn if they were contained in the Medical Database. Counsel then had each client submit the requisite paperwork. The documentation received in response (several weeks later) contained no information regarding the Medical Database–it merely stated whether or not the claimant was contained in *any* BP database. Counsel then contacted the Claims Administrator, who advised Counsel that this was the only information that would be provided. At this time, counsel propounded the Requests To Produce, which seeks information regarding the Medical Database.

As a result, neither the Objectors themselves nor counsel for the Objectors has been lacking diligence in this matter. If anything, any delay in the discovery request was due to counsel's reliance on the Claims Administrator's misrepresentation that information contained in the Medical Database could be discovered through a simple inquiry. As a result, discovery should not be denied due to untimeliness.

---

[2] It should be noted that many clients also suffered chronic conditions not listed in the BP Medical Encounters Database.

**B. Objectors Requests are Narrowly Tailored and Not Overbroad**

The second reason give by the Court in its Order is that the requests propounded by the Economic Objectors to the economic settlement were overbroad. *Id.* at 4-5. The Economic Objectors requested the following types of documents (in addition to *many* others):

1. All documents that explain or relate to the economic, geographic, or other bases upon which each of the Economic Loss Zones was drawn.

2. All documents that refer or relate to the economic modeling or algorithms the Settlement employs.

3. All documents that reflect you or any member of the PSC's or Class Counsel's solicitation of input from attorneys who are not members of the PSC but who represent hotels about the proposed terms of the Settlement prior to February 26, 2012.

*Id* at 4-5.

Here, no such discovery requests are made. The Objectors are merely asking for (1) a redacted list of all people contained in the Medical Database; (2) any documentation that demonstrates the total number of people in the Medical Database; (3) any documentation that demonstrates the total number of people in the Medical Database that have complained of conditions explicated in the Matrix. Simply put, the Objectors are requesting a small (and redacted) print-out of the information contained in the database. This is likely stored on a computer and would likely take no more than ten minutes to produce. If this is overly burdensome, any documentation that lists or describes the number of people contained in the database (preferably with conditions complained of) is also suitable to the Objectors. Surely such documentation could be found immediately.

Objectors are not "fishing" here. They are not asking BP to gather any documents or information that it does not already have on hand and readily accessible. Objectors are not asking

6

for any explanations of how the Database was formulated (in contrast to the Economic Objectors' request for explanations on how the Economic Loss Zones were drawn). Objectors are not asking for information regarding the negotiation of the settlement itself. Objectors want reliable and documented numerical or statistical information regarding the Medical Database–information that has been repeatedly (and perhaps purposefully) withheld from them.

In determining that the discovery requests were overbroad for the Economic Objectors, the Court was concerned with whether the discovery could be completed by the Fairness Hearing, which was set for November 8, 2012. *Id.* at 5. Here, if the discovery requests were granted, the documents could likely be produced within the hour.

## C. Objectors' Discovery Requests Are Necessary

The critical question in determining whether independent discovery by objectors is necessary is whether the Court has "sufficient facts before it to intelligently consider the proposed settlement." *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1994 WL 593998 at *3 (E.D. La. Oct. 28, 1994). The Court's task is to consider the record before it to determine whether the settlement agreement is fair, reasonable, and adequate–not to renegotiate the agreement. Rec. Doc. 7480 at 5.

In its Order, the Court found that the Economic Objectors' discovery was unnecessary because it is not relevant to the Court's review. *Id.* at 6. It notes that it is unnecessary to know the size of the class or the total amount of losses for the claimants, because the proposed Economic Settlement is uncapped for the majority of claimants and provides for the payment of all compensatory damages. *Id.* The same cannot be said for the proposed Medical Settlement.

Unlike the proposed Economic Settlement, which provides payment for all compensatory damages, payment is not provided for all medical bills under the proposed Medical Settlement. Further, even though the Medical Settlement is uncapped, in order to determine whether or not the

Medical Settlement is fair, it is essential that information surrounding the Medical Database is known. If there aren't a substantial number of claimants contained in this database, an overwhelming majority of claimants with either acute or chronic conditions will be unable to recover in any meaningful way.

The material objections center on the fact that the settlement does not come close to providing adequate recovery for many, if not most, of those currently suffering medical conditions arising out of their clean-up work in the Gulf. Because the Medical Settlement does not pay for medical bills, many of the class members who are currently suffering from chronic conditions are not able to get diagnosed for these conditions. Unless someone has the financial resources to seek medical care on their own, they will not be able to recover for chronic conditions unless they are contained in the Medical Database. Thus, for the Court to know whether or not sufficient recovery will be made available many (if not most) of the members of the class, it needs to know the information contained in the requested documents.

The present Objectors are all indigent Hispanic migrant workers who cannot afford to seek medical attention on their own and are archetypal of those who cannot get diagnosed for their conditions.[3] Under the Settlement Matrix, the Objectors' only hope to meaningfully recover is through the Medical Database.

If the numbers contained in the Medical Database are insignificant, then this settlement basically forecloses any real recovery for the Objectors and for the overwhelming majority of the class as a whole. Surely it cannot be said that a settlement which offers thirteen-hundred dollars is

---

[3] It should be noted that counsel's clientele in this matter is growing exponentially and is composed almost exclusively of indigent Hispanic migrant workers. As a result, the statements made about these indigent Hispanic migrant workers are likely applicable to an overwhelming number insular Hispanics who do not presently have the access to the courts.

sufficient to cover chronic conditions of the kind listed in the Matrix (in addition to chronic conditions that are not recoverable pursuant to the Matrix). Yet, if the numbers of claimants in the Medical Database is insignificant, it is no exaggeration to state than tens of thousands of clean-up workers will recover virtually nothing for the conditions of which they have suffered and will continue to suffer.

As a result, the information sought is essential to determining if the Medical Settlement is fair, reasonable, and adequate. The only real recovery for many, if not most, of those who are suffering from chronic conditions is through the Medical Database. Because medical bills are not compensated, many will not be able to get diagnosed with their conditions. As a result, the Medical Database essentially operates as a cap, turning what is considered an uncapped settlement into a quasi-capped settlement.

Thus, in order to know whether the settlement is fair, reasonable, and adequate the Court must have some knowledge of the facts surrounding the Medical Database. The Court must know how many people are in this database, and how many of these complained of the conditions listed in the Matrix. This is pertinent because many of the Objectors have suffered from acute conditions that are not listed in the Matrix. As a result, it is important to obtain some information about Medical Database to determine if many of these additional chronic conditions were pervasive among those contained in the Medical Database and should therefore have been covered by the proposed Medical Settlement. Without this information, it is only a guess as to whether the settlement agreement actually covers the conditions listed in the Matrix and whether recovery is made available for the vast majority of claimants.

Without this information, the Objectors are greatly prejudiced at the Fairness Hearing, because they will not have essential information that is both pertinent to their objections and goes

to the heart of fairness of the Medical Settlement itself. Given how easily this material can be provided there is no reason why the Court should not exercise its discretion to make this information available. As has been demonstrated, this Request to Produce is not an attempt to rewrite the Medical Settlement, but merely to determine whether this settlement actually provides real recovery for the class it purports to make whole.

WHEREFORE, the Objectors respectfully request that this Court reconsider its order dated October 9, 2012, and permit Objectors' to conduct discovery in regards to the service of their Request to Produce and further order that the Plaintiff and the Defendant respond to the discovery in a timely matter, along with any additional relief this Court deems just and proper.

Respectfully Submitted,

Jeremy D. Friedman, Esq.
The Downs Law Group, PA
3250 Mary Street, Suite 307
Coconut Grove, FL 33133
(305) 444-8226
Attorney for Claimants

___/s/ Jeremy Friedman___
Jeremy D. Friedman
Florida Bar # 134643

| | |
|---|---|
| Marx Sterbcow, Esq.<br>The Sterbcow Law Group<br>1734 Prytania St<br>New Orleans, LA 70130<br>(504) 723-2184<br>Louisiana Bar # | Jason Melancon, Esq.<br>Melancon & Rimes<br>8706 Jefferson Hwy, Ste A<br>Baton Rouge, LA 70809<br>(225) 303-0455<br>Louisiana Bar # |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the above and foregoing Notice of Appearance has been electronically filed with Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send notice of electronic filing to all parties of record on or about the date as set forth above.

I HEREBY CERTIFY that the above was sent via U.S. Mail to: Medical Lead Class Counsel: James Parkerson Roy, Esq., Attention: Deepwater Horizon Medical Benefits Settlement, Domegeaux Wright Roy & Edwards, 556 Jefferson St., Suite 500, Post Office Box 3668, Lafayette, LA 70501; Stephen J. Herman, Esq., Attention: Deepwater Horizon Medical Benefits Settlement, Herman Herman Katz & Cotlar LLP, 820 O'Keefe Avenue, New Orleans, LA 70113; Defendants' Counsel: Richard C. Godfrey, P.C. Attention: Deepwater Horizon Medical Benefits Settlement Kirkland & Ellis, LLP, 300 North LaSalle St. Chicago Il., 60654 as of the date as set forth above.