UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | MDL NO.: |
| | * | SECTION:  J |
| This Document Pertains to 2:12-cv-009888 2:12-cv-01295-CJB-SS 2:12-cv-02155 2:10-md-02179-CJB-SS 2:12-cv-02048 Unfiled Medical Benefits Class Members Unfiled Economic and Property Damages Class Members | * * * * * * * * | |
| | * | JUDGE CARL J. BARBIER |
| | * | MAGISTRATE JUDGE SHUSHAN |
| ******************************************* | * | |

MEMORANDUM IN SUPPORT OF MOTION TO EXTEND
OPT OUT DEADLINE OF NOVEMBER 1, 2012

**NOW INTO COURT,** through undersigned counsel, come Economic and Property Damages Class Members and Medical Benefits Class Members listed in Exhibit 1 and who file this Memorandum in Support of Motion to Extend Opt-Out Deadline November 1, 2012, for the following reasons:

I. **Overview**

The proposed Medical and Property and Economic Damage Settlements in this case purport to attempt to resolve one of the largest and most complex cases in the history of the United States. The Preliminary Approval Order contains an ambitious and abbreviated schedule for, among other things, opt outs. The deadline to opt out set by this Court is November 1, 2012. This deadline provides insufficient time for all claims that have been filed with the Deepwater Horizon Claims Center to be processed. Further, there is no significant reason for the

maintenance of this deadline, because the deadline for filing claims under the Oil Pollution Act ("OPA") is not until April 2013. Given the importance of a meaningful opportunity to opt out, the circumstances of the claims process, the need for transparency and complete information prior to making a decision whether to opt out, and the lack of a significant reason to maintain the opt out deadline, the opt out deadline should be extended. An extension of the opt-out deadline affords more comprehensive evaluation of the settlement and likely enhances the prospect of the Settlement's inclusion of more settlers.

## II. Extending the Opt-Out Deadline satisfies due process concerns and is consistent with Rule 23.

A meaningful opportunity to opt-out of the Rule 23(b)(3) class – particularly a settlement class of the unprecedented size and scope of this one – is necessary to satisfy due process concerns. *Amchem Prods. v. Windsor*, 521 U.S. 591, 603 (1997).

Due process concerns are particularly relevant in a settlement class. Many courts have held that approval of settlements reached after class certification requires closer judicial scrutiny than approval of settlements reached after class certification won through the adversary process. *Amchem*, 521 U.S. at 620 (1997) (calling for "undiluted, even heightened attention" to class certification requirements in a settlement class context); *Coffee*, supra note 737 at 1367-82, 1461-65 (discussing incentives for collusion in settlement class actions and possible antidotes); *Manual for Complex Litigation*, 4th Ed., §21.612.

Courts and commentators similarly agree settlement class members must have adequate time to observe the terms and effect of the proposed settlement before deciding to exclude themselves. Theodore, Eisenberg, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1535 n.14 (2004); See,

e.g., *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1983) (commenting on the "higher degree of judicial scrutiny" implicated in a settlement class).

The United States Supreme Court's decision in *Amchem Prods. v. Windsor* is instructive 521 U.S. 591 (U.S.1997). The trial court in *Amchem* sought to certify a settlement class that would cover all individuals who had been exposed to asbestos but who had not filed a lawsuit. *Id.* at 603. The court-approved notice of this settlement class allowed class members to exclude themselves within a three-month opt-out period. *Id.* at 606. The trial court eventually overruled all objections, found the notice was adequate, and that final class certification was appropriate. *Id.* The Third Circuit reversed, noting (i) the class lacked commonality because class members were exposed in different ways, over different periods, for different amounts of time, and had different injuries; (ii) serious intra-class conflicts precluded adequacy of representation because the settlement purported to allocate the recovery amongst different kinds of claimants; and (iii) that these same intra-class conflicts ran afoul of Rule 23's typicality requirements. *Id.* The United States Supreme Court affirmed, and questioned whether effective notice could ever be given to "legions so unselfconscious and amorphous." *Id.* at 628. While the Supreme Court did not rule definitively on the notice issue, its comments indicate that it is unlikely the notice provisions contemplated in the Settlement Agreement would pass muster:

> Even if they fully appreciate the significance of class notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt-out.

*Id.* This case is similar inasmuch as many Class Members are currently unaware they have a compensable claim.[1] The Manual for Complex Litigation recognizes that notice infirmities of

---

[1] Whether a Class Member has a compensable claim depends on the application of many complex variables, including: (i) geographic location; (ii) financial performance; and (iii) application of hundreds of formulas with literally tens of thousands of permutations under the Settlement Agreement.

3

this magnitude raise constitutional and due process issues. *Manual for Complex Litigation (Fourth)*, § 21.62.

It may be theoretically possible to argue that Class Members have had an adequate time to review and digest the 1,027 pages of the Settlement Agreement. However, there can be no credible argument that Class Members have been provided any information on the amount of money they will actually receive through the DHCC.

This fundamental lack of information poses serious threats to the adequacy of the notice. The Settlement Agreement's multiplicities of formulas, definitions, exclusions, and other criteria make it functionally impossible for a Class Member to know the most important information: how much money will he or she receive in exchange for surrendering their rights to litigate? Until Class Members receive a concrete offer (or denial) from the DHCC, they have not received adequate notice. These same issues were addressed by the Supreme Court in *Amchem*.

Opt-out rights are the central rationale for providing notice in (b)(3) cases. *Eisen v. Carlyle & Jacquelin*, 417 U.S. 156, 176 (1974). If, in a settlement class, the notice does not provide information sufficient to allow a class member to make an informed decision about whether to opt-out, the court may reject the proposal in toto. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) (rejecting a class action settlement, in part, because certain class members had not received notice adequate to provide them with information needed to make informed opt-out decision).

Extending the opt-out period an additional two months could cure the notice problems. The DHCC process is ongoing and some claimants are accepting offers. In light of this progress, a close opt-out date really fails to serve any useful purpose. In contrast, extending the opt-out

period could afford many claimants the opportunity to receive an offer and make a determination regarding that offer.

### III. The Settlement Agreement allows the Court to extend the opt-out deadline.

The Deepwater Horizon Economic and Property Damages Settlement Agreement states that the Court may extend the opt-out deadline:

> **8.2 Opt-Outs**
>
> 8.2.1 The Economic Class Action Settlement Notice shall provide instructions regarding the procedures that must be followed for Economic Class Members to exclude themselves ("Opt Out") from the Economic Class pursuant to Fed. R. Civ. P. 23(c)(2)(B). The Parties agree that, to validly exclude themselves from the Economic Class, Economic Class members must submit a written request to Opt-Out, which must be received by the Entity identified in the Class Notice Plan for that purpose, properly addressed, and postmarked no later than October 1, 2012, or such later date as the Court orders in the Preliminary Approval Order . . .

[Doc. 6276-1, p. 67 of 117]. The Court has already extended the opt-out deadline, and has the authority and jurisdiction under the Settlement Agreement to extend this deadline further. [Doc. 7176].

Class Members who do not opt-out are irrevocably bound by the Settlement Agreement, and are permanently and forever barred from filing any Released Claim against any Released Parties. [¶ 8.2.5, Doc. 6276-1, p. 69 of 117]. Thereafter, Class Members must obtain the BP parties consent (in their sole and unilateral discretion) in order to revoke an opt-out. Thus, the opt-out date is November 1, 2012, and the revocation deadline is November 5, 2012. This renders the revocation deadline essentially irrelevant for the notice problems raised in the Motion.

It is not an exaggeration to say that 99% of Class Members will have received absolutely no information regarding the amount of their settlement (or if they will even receive an offer)

when the current opt-out deadline expires. It is probable that thousands of Class Members will receive nothing through the DHCC, and will have forever lost their opportunity to litigate their claims due to not receiving their denials before the opt-out deadline.

### IV.     The Court may extend the opt-out period for "good cause".

Under Federal Rule of Civil Procedure 6(b): "When an act may or must be done within a specified time, the court may, for good cause, extend the time with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires." Fed. R. Civ. Proc. 6(b)(1)(A) (2012). The standard of "good cause" for an extension of time prior to the deadline is a low burden for the moving party to meet. In fact, some courts have taken the position that if a request for an extension is made before the expiration of a deadline, additional time should be granted "almost as a matter of course." *Casey v. Quality Restaurants & Concepts*, 1:10CV309-NBB-DAS, 2012 WL 3261367 (N.D. Miss. Aug. 8, 2012). In contrast, the burden on a party seeking additional time once the time period has expired must meet a heightened showing of excusable neglect under Federal Rule of Civil Procedure 6(b)(1)(B). *Silvercreek Mgmt., Inc. v. Banc of Am. Sec., LLC*, 534 F.3d 469, 472 (5th Cir. 2008).

In the present case, the opt-out period is insufficient for the Claimants to review the proposed settlements and make an informed decision whether to opt-out. While the proposed settlements were announced in February 2012, the actual terms were not revealed to absent class members, their counsel, and the general public until late April 2012. Preliminary approval of the settlement agreements was not rendered until May 2, 2012. As this Court is well aware, the proposed settlements in this case are colossal, with both the Economic Loss and Property and the Medical Settlements and exhibits exceeding 400 pages each. The very length of the settlement agreements alone should justify additional time for review prior to the expiration of the opt-out

6

period. The size, however, is not the only obstacle to speedy and complete review prior to making this important decision. The settlements and opt-out provisions are highly technical, unusually complicated, and vague.

For example, under the settlement agreement, entities that are described as providing support services to the oil and gas industry must answer the following question: "In 2009, did your business provide significant services, goods, and/or supplies to businesses in the offshore oil and gas industry in the Gulf of Mexico?" The term "significant services" is not defined in the settlement agreement. This is telling in an agreement that contains numerous pages of defined terms. BP and the named class members have established a system for eligibility for status as a member that depends on an undefined term "significant." Claimants cannot adequately evaluate whether to remain a class member or opt out of the Agreement or even, in fact, evaluate whether they can recover under the Agreement without some guidance on this important term. In effect, the CSSP has nearly unlimited discretion in determining what is "significant" and in excluding potential class members from recovery. The very nature of these settlements and opt out provisions is such that Claimants and their counsel should be granted additional time to thoroughly review them prior to making a decision on whether to opt out. Further, the opt-out deadline should be extended until sufficient time is allowed for claimants to understand how their claims will be treated by the Claims Center. As such, the opt-out period should be enlarged.

In addition to the substance of the settlements, Claimants and their counsel are also faced with a number of other obstacles that warrant enlargement of the opt-out period. Many Claimants are seeking resolution of their claims through the Deepwater Horizon Claims Center ("Claims Center"), which was not opened until June 2012, leaving less than four months for hundreds of

thousands of claims to be processed before the opt out deadline. Claimants cannot make reasoned decisions and their counsel cannot properly advise them on opting out prior to the receipt of final compensation offers from the Claims Center. Since the Claims Center opened in June, Claimants and their counsel have been working tirelessly to file claims in the hopes that Claimants will receive a final compensation offer in advance of the objection and opt out deadlines set by the Court. Undersigned counsel and co-counsel have collectively filed approximately 843 claims with the DHCC. Of that amount, a mere 83 have received compensation offers. The majority of undersigned counsel's clients will not receive compensation offers in advance of the November 1 opt-out deadline. Those clients will be forced to make the difficult decision of whether to remain in the settlement with an uncertain outcome or to opt-out and face yet another claims process with the BP Claims facility or the await a trial date on this Honorable Court's crowded docket.

The process of filing these claims has been and continues to be difficult and lengthy. Claimants are initially met with long claim forms and a lengthy registration process before claims can even be filed. Additionally, there are new and extensive documentation requirements that further delay the claims process. In addition to the foregoing, the zone mapping technology to determine eligibility was not immediately available, and there have been a number of technical issues with the settlement website. The circumstances created by the Claims Center have forced Claimants and their attorneys to expend significant efforts on the claims process. Many of the claims that have been properly filed, some as early as June, have still not reached the point of a final compensation offer from the Claims Center. Furthermore, many of the claims that have been filed are not even under review at this point and may not be reviewed until after the Fairness Hearing scheduled for November 8, 2012. Without final compensation offers,

Claimants and their counsel cannot make reasoned decisions on the best course of action and cannot adequately assess whether opting out is the appropriate step prior to the November 1, 2012, deadline.

Finally, there is no significant reason to deny the enlargement of the opt-out period. Medical claims under OPA have a three year statute of limitations. This means that these claims can be filed through April 2013, approximately six months after the opt-out deadline in this case. Given this fact and the circumstances addressed above, an extension of the opt-out deadline is warranted.

The nature and complexity of the settlements, the circumstances causing delay in the claims process, and the necessity for thorough and complete review by Claimants and their counsel, justify an extension of the time period to opt-out of the proposed settlements in this case. Absent additional time, Claimants will not have a meaningful opportunity to make a decision on whether to opt out. Thus, the deadline to opt-out of the proposed settlements in this case should be extended.

### V.   Extending the opt-out deadline has multiple benefits.

Providing Class Members with a meaningful opportunity to opt-out after they receive their DHCC final offer will be several laudable effects. Courts have found that opt-out rights reduce the need for intense scrutiny of class counsel, or the class representatives, as dissatisfied class members can simply "vote with their feet." *See, e.g., Abby v. City of Detroit,* 218 F.R.D. 544 (E.D. Mich. 2003). Conversely, the lack of a meaningful opportunity to opt-out may result in a more stringent review by the appellate courts. Eisenberg, 57 Vand. L. Rev. at 1537 (2004).

Several commentators, including John Coffee – the BP Defendants' primary expert-advocate that a back-end opt-out is fundamentally necessary under these facts:

> In this light, the simplest means of assuring the right to exist would be to delay the opt-out deadline until after at least the approval of the proposed settlement. Otherwise, by placing the opt-out deadline first, counsel is in a position to impose a settlement upon the class that may be unsatisfactory to it. Defendants have every reason to join this conspiracy, and even the trial court has an incentive to acquiesce in any tactic that minimizes opt-outs because opt-outs pose a serious problem for the court and may even require it to try the same case on an individual basis that it had just seemingly settled on a class basis.

John C. Coffee, Jr., *Class Action Accountability: Reconciling Exit, Voice, and Loyalty in Representative Litigation*, 100 Colum. L. Rev. 370, 420 (2000).

As advocated by Coffee, providing Class Member with a meaningful opt-out opportunity will help mitigate against even the appearance of collusion. Indeed, it is difficult to understand why Class Counsel or Defendants would object to an enlarged opt-out period, as this would encourage more Class Members to pursue their claims with the DHCC (as opposed to opting-out purely as a matter of protecting legal rights).

### VI. The Court can create Opt-Out Provisions that maintain fundamental fairness.

The uncertain nature of the settlement agreement and lengthy delays experienced thus far in receiving settlement offers from the Deepwater Horizon Economic Claims Center make it impossible for claimants to fully decide whether they should remain in the settlement class or opt-out. It is a matter of fundamental fairness to all claimants that they are afforded a full understanding of their potential to recover under the settlement to decide whether to opt-out. Therefore, claimants suggest that the opt-out deadline be extended an additional two months.

**WHEREFORE,** Claimants respectfully request that, for the foregoing reasons, this Court issue an Order enlarging the period to opt-out of the proposed settlements in this case.

Respectfully submitted.

SMITH STAG, L.L.C.

By: /s/   Stuart H. Smith

Stuart H. Smith, Esquire
ssmith@smithstag.com
SMITH STAG, L.L.C.
One Canal Place, Suite 2850
365 Canal Street
New Orleans, Louisiana  70130
(504) 593-9600 telephone
(504) 593-9601 facsimile

and

Robert J. McKee, Esquire
Florida Bar Number:  972614
rmckee@krupnicklaw.com
12 Southeast Seventh Street, Suite 801
Fort Lauderdale, Florida  33301-3426
954-763-8181 telephone
954-763-8292 facsimile

*Attorneys for Economic and Property Damages Class Members and Medical Benefits Class Members*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Memorandum to Extend the Opt-Out Deadline of November 1, 2012 has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 17th day of October, 2012