UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater § | | MDL NO. 2179 |
| Horizon" in the Gulf of Mexico, on § | | |
| April 20, 2010 § | | SECTION: J |
| § | | |
| This Document Relates to: § | | JUDGE BARBIER |
| § | | |
| All Cases § | | MAG. JUDGE SHUSHAN |
| (Including No. 10-2771) § | | |

*************************************************************************

**OBJECTION TO JOINT MOTION TO CLARIFY CURRENT HOLD-BACK ORDER CONCERNING REFUND OF TRANSITIION PAYMENTS**

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs who object to the Joint Motion to Clarify Current Hold-Back Order Concerning Refund of Transition Payments as set forth below.

Claimants, if they opt-out of the settlement and settle their case on their own or if the claimant is not covered by the settlement, then those claimants should not be assessed a common benefit fee and cost because they have not received a benefit from the PSC.

While, MDL courts have consistently cited the common fund doctrine as a basis for assessing common benefit fees in favor of attorneys who render legal services beneficial to all MDL plaintiffs. *E.g., *648 In re Genetically Modified Rice Litig.,* MDL No. 06–1811, 2010 WL 716190, at *4 (E.D.Mo. Feb. 24, 2010) (relying on common fund doctrine as an alternate basis to inherent managerial authority and concluding that "[b]oth sources of authority provide the same result"); *In re*

*Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.,* MDL No. 05–1708, 2008 WL 682174, at *4 (D.Minn. Mar. 7, 2008); *accord In re Zyprexa,* 594 F.3d at 128–30 (Kaplan, J., concurring), the fund is usually established to pay for work done by a PSC that benefitted the class of people making a recovery.

In this case there are three separate classes of claimants: 1. Claimants who participate in the settlement, 2. Opt-Outs, and 3. Claimants excluded from the settlement's class definition.  Counsel agrees that this court could assess the first group of claimants a common benefit fee.  However, group 2 and 3 have not received a benefit from the PSC.

Group 2 has decided that the settlement did not benefit them or was not in their best interest and elected to opt-out of the settlement, therefore; these claimants have not received a benefit from the PSC.  Group 2 must file an opt-out and either on their own or via their own attorney, file a presentment to the Defendants and negotiate their own settlement individually, if one is to be had.

Group 3 is not even covered by the settlement and could not participate even if choose to do so.  Group 3 has not received any benefit from the PSC as the PSC specifically agreed to exclude them from this settlement.

The main questions presented for Groups 2 and 3 is have they received a benefit from the PSC outside of the settlement.  The answer to this questions is no.  If one looks at the history of this litigation and the Oil Prevention Act (OPA), the liability of BP was established prior to a PSC being created by this Honorable Court.  If liability was already established then the only benefit to be gotten from

2

the PSC was a way to determine damage awards.  Here to, this was done prior to the PSC being created via the GCCF.  After the GCCF had been settling cases for about a year, the PSC announced it had entered into a settlement.  This settlement only benefits people who are part of the settlement class definition and elect to participate in the settlement.

In most MDLs, the PSC will produce a trial package, conduct Bell-Weather trials, hold informational meeting for attorney's and claimants, produce copies of expert reports, give extensive updates on the litigation to non-PSC attorneys.  In this case, none of those benefits have occurred.  The PSC has held a several meeting around the country to explain the settlement they reached with BP, but this only benefits the people who choose to participate in that settlement and the settlement has a provision for the Defendant to pay the common benefit fee to the PSC.

The PSC, has failed to hold informational meeting with the group they represent and are obligated to protect to inform these classes of people if Defendants are going to be dismissed or if the PSC believes pursuing certain defendants is not in the best interest of the MDL so claimants can decide if this wish to pursue these claims on their own.  One such example of this is the defendant, NALCO.  The public learned of the PSC's intention to dismiss NALCO from the bundled suits, not by the PSC telling us or giving fair warning, but by being served with a document where the PSC agreed to a dismissal without prejudice that this Court then converted to a Motion for Summary Judgment to determine if the dismissal should be with prejudice.  At the hearing on this issue,

3

the PSC admitted that they had not taken any depositions or conducted any discovery related to the issue of Corexit and the potential harm it could have caused the workers and beach-goers after it was distributed in historical proportions throughout the gulf coast.  Anyone making or intending to make a claim against Nalco for their personal injuries is actually hindered instead of benefited by the PSC's inaction on this subject.

      If one looks at the history of MDLs from MDLs such as MDL NO. 330, IN RE SWINE FLU IMMUNIZATION PRODUCTS LIABILITY LITIGATION, MDL NO. 926  IN RE **BREAST IMPLANT** PRODUCTS LIABILITY LITIGATION, MDL NO. 1014, IN RE **ORTHOPEDIC BONE SCREW** PRODUCTS LIABILITY LITIGATION, MDL NO. 1038, IN RE **NORPLANT** CONTRACEPTIVE PRODUCTS LIABILITY LITIGATION, MDL NO. 1148 IN RE **LATEX GLOVES** PRODUCTS LIABILITY LITIGATION, MDL NO. 1203 IN RE **DIET DRUGS** (PHENTERMINE/FENFLURAMINE/ DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION, MDL NO. 1348 IN RE **REZULIN** PRODUCTS LIABILITY LITIGATION, MDL NO. 1355 IN RE **PROPULSID** PRODUCTS LIABILITY LITIGATION, MDL NO. 1401 IN RE **SULZER ORTHOPEDICS** INC. HIP PROSTHESIS AND KNEE PROSTHESIS PRODUCTS LIABILITY LITIGATION, MDL NO. 1407 IN RE PHENYLPROPANOLAMINE **(PPA)** PRODUCTS LIABILITY LITIGATION, MDL NO. 1657 IN RE **VIOXX** PRODUCTS LIABILITY LITIGATION, MDL NO. 1699     IN RE **BEXTRA AND CELEBREX** LITIGATION, MDL NO. 1708 IN RE **GUIDANT** CORP.

IMPLANTABLE DEFIBRILLATORS PRODUCTS LIABILITY LITIGATION, and MDL NO. 1873 IN RE **FEMA TRAILER** FORMALDEHYDE LITIGATION; the PSC from these litigations also produced and shared with claimants, discovery packets, trial packages, and other work-product concerning the litigation so that claimants and their attorneys were up to date on the status of the litigation and strategies that were being implemented for the prosecution of the case. Due to these common benefits produced by the PSCs in the above referenced litigations, those PSCs were awarded a common benefit fee.

  The main difference is in this litigation, if you have or intend to opt-out of the settlement or were excluded by the settlement class definition, the Deepwater Horizon PSC has not taken actions or produced and shared a work product that is beneficial to those types of claimants.

  Plaintiffs pray that this Honorable Court will clarify its order so that claimants who are not part of this class settlement and settle their cases on their own, will not be beholden to a common benefit holdback.

Date: October 18, 2012  Respectfully submitted,

  BECNEL LAW FIRM LLC
  /s/Daniel E. Becnel Jr.
  Daniel E. Becnel Jr. (LA Bar No.2926)
  Salvadore Christina, Jr (LA Bar No. 27198)
  P. O. Drawer H
  Reserve, LA 70084
  (985) 536-1186
  (985) 536-6445 Fax
  dbecnel@becnellaw.com

## CERTIFICATE OF SERVICE

  I hereby certify that on October 18, 2012, I electronically filed the foregoing instrument with the Clerk of the Court by using the CM/ECF system, and provided notice by and through Lexis Nexis to all counsel of record.

                _/s/Daniel E. Becnel, Jr.