UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | § § § § | MDL NO. 2179 SECTION: J |
| This Document Relates to: | § § | JUDGE BARBIER |
| All Cases (Including No. 10-2771) | § § | MAG. JUDGE SHUSHAN |

**************************************************************************

<u>**OBJECTION TO JOINT MOTION TO CLARIFY CURRENT HOLD-BACK ORDER CONCERNING REFUND OF TRANSITIION PAYMENTS**</u>

**NOW INTO COURT**, through undersigned counsel, come opt-out Plaintiffs, Michael W. Harris, et al., and excluded-claim Plaintiffs, Washington County Kennel Club, Incorporated, et al., who object to the Joint Motion to Clarify Current Hold-Back Order Concerning Refund of Transition Payments as set forth below, and as grounds therefore state:

Claimants who opt out of the Settlement and settle their cases outside the Settlement, and claimants who are excluded from the Settlement should not be assessed common benefit fees and costs because they have not received a benefit from the PSC.

While MDL courts have consistently cited the common fund doctrine as a basis for assessing common benefit fees in favor of attorneys who render legal services beneficial to all MDL plaintiffs (*e.g. In re Genetically Modified Rice Litig., MDL No. 06–1811, 2010 WL 716190, at \*4 (E.D.Mo. Feb. 24, 2010)*, relying on the common fund doctrine as an alternate basis to inherent managerial authority and

concluding that "[b]oth sources of authority provide the same result"; *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.,* MDL No. 05–1708, 2008 WL 682174, at *4 (D.Minn. Mar. 7, 2008);*accord In re Zyprexa,* 594 F.3d at 128–30 (Kaplan, J., concurring)), the fund is usually established to pay for work done by a PSC that benefits the class of claimants obtaining a recovery.

In this case there are three separate classes of claimants: (1) claimants who participate in the settlement, (2) opt-outs, and (3) claimants excluded from the settlement's class definition. Counsel agree that this court could assess the first group of claimants a common benefit fee. However, groups 2 and 3 have not received a benefit from the PSC and should not be assessed common benefit fees or costs.

Group 2 (opt outs) consists of claimants who have decided the Settlement did not benefit them or was not in their best interest and have elected to opt out of the Settlement. These claimants have received no benefit from the PSC. Group 2 claimants must file an opt-out and, either *pro se* or through their own attorney, make a presentment to the Defendants and negotiate their own separate settlement if they can.

Group 3 (excluded claims) are claimants who have claims that are excluded from the Settlement and are ineligible to receive any benefits under the Settlement. Group 3 has not received any benefit from the PSC, as the PSC specifically agreed to exclude them from the Settlement.

The issue regarding Groups 2 and 3 is whether they have received any significant benefit outside of the Settlement from the PSC's efforts. The answer is "no". If one looks at the history of this litigation and the Oil Pollution Act of 1990 (OPA), the liability of BP was established prior to creation of the PSC. If liability was already established, the only benefit which could be provided by the PSC was a method to determine damage awards. This methodology was created by BP and the GCCF prior to and independent of the PSC. After BP and the GCCF had been settling cases for about a year, the PSC announced it had entered into a settlement. This settlement only benefits people who are part of the Settlement class definition and elect to participate in the Settlement.

In most MDLs, the PSC will produce a trial package, conduct bell-weather trials, hold informational meetings for attorney's and claimants, produce copies of expert reports, and give extensive updates on the litigation to non-PSC attorneys. In this case, none of those benefits have materialized. The PSC has held various meetings to explain the settlement it reached with BP, but this only benefits the people who choose to participate in that Settlement, and the Settlement has a provision for the Defendant to pay a common benefit fee to the PSC.

The PSC has failed to hold informational meetings with the groups they supposedly represent and are obligated to protect in order to inform these classes of claimants if certain defendants are going to be dismissed or if the PSC believes pursuing certain defendants is not in the best interest of the MDL so that claimants can decide if they wish to pursue these claims on their own. One such example is

the defendant, NALCO.  The public learned of the PSC's intention to dismiss NALCO from the bundled suits, not by any sort of notification by the PSC giving fair warning to affected parties, but by service of a document in which the PSC agreed to a dismissal of NALCO without prejudice that this Court then converted to a motion for summary judgment to determine if the dismissal should be with prejudice.  At the hearing on this issue, the PSC admitted that they had not taken any depositions or conducted any discovery related to the issue of Corexit and the potential harm it may cause the environment, including human and wildlife populations, after waters along the Gulf coast were carpet-bombed with approximately twenty million gallons of this toxic soup with secret ingredients.  Anyone making or intending to make a claim against NALCO for personal injury is actually hindered instead of benefited by the PSC's actions and inaction.

If one looks at the history of MDLs (e.g.  MDL NO. 330, IN RE SWINE FLU IMMUNIZATION PRODUCTS LIABILITY LITIGATION; MDL NO. 926, IN RE **BREAST IMPLANT** PRODUCTS LIABILITY LITIGATION; MDL NO. 1014, IN RE **ORTHOPEDIC BONE SCREW** PRODUCTS LIABILITYLITIGATION; MDL NO. 1038, IN RE **NORPLANT** CONTRACEPTIVE PRODUCTS LIABILITY LITIGATION; MDL NO. 1148 IN RE **LATEX GLOVES** PRODUCTS LIABILITY LITIGATION; MDL NO. 1203 IN RE **DIET DRUGS** [PHENTERMINE/ FENFLURAMINE/ DEXFENFLURAMINE] PRODUCTS LIABILITY LITIGATION; MDL NO. 1348, IN RE **REZULIN** PRODUCTS LIABILITY LITIGATION; MDL NO. 1355, IN RE **PROPULSID** PRODUCTS LIABILITY

LITIGATION; MDL NO. 1401, IN RE **SULZER ORTHOPEDICS** INC. HIP PROSTHESIS AND KNEE PROSTHESIS PRODUCTS LIABILITY LITIGATION; MDL NO. 1407, IN RE PHENYLPROPANOLAMINE **(PPA)** PRODUCTS LIABILITY LITIGATION; MDL NO. 1657, IN RE **VIOXX** PRODUCTS LIABILITY LITIGATION; MDL NO. 1699, IN RE **BEXTRA AND CELEBREX** LITIGATION; MDL NO. 1708, IN RE **GUIDANT** CORP. IMPLANTABLE DEFIBRILLATORS PRODUCTS LIABILITY LITIGATION; and MDL NO. 1873, IN RE **FEMA TRAILER** FORMALDEHYDE LITIGATION), the PSC in those litigations also produced and shared with claimants discovery packets, trial packages, and other work-product concerning the litigation so that claimants and their attorneys were up to date on the status of the litigation and strategies that were being implemented for the prosecution of the case. Because of the common benefits produced by the PSCs in the above-referenced MDLs, those PSCs were awarded a common benefit fee.

  The main difference between the referenced MDLs and the present one is that if a claimant has opted out or intends to opt-out of the Deepwater Horizon Settlement or is excluded from the Settlement class definition, the Deepwater Horizon PSC has not taken any significant action or produced any shared work product that is beneficial to such a claimant.

  Plaintiffs pray that this Honorable Court will clarify its order so that claimants who are not part of the Deepwater Horizon Class Settlement and who

5

settle their claims outside the Settlement will not be taxed with an inequitable, unearned, and unjustified common benefit holdback.

Date:  October 18, 2012

        Respectfully submitted,

        Professor P. Tim Howard
        Howard & Associates,
        Attorneys at Law, P.A.
        8511 Bull Headley Road, Suite 405
        Tallahassee, Florida 32312
        (850) 298-4455 - telephone
        (850) 216-2537 - facsimile
        Florida Bar No. 655325
        ptim@aol.com

        Douglas S. Lyons
        Lyons and Farrar, P.A.
        325 North Calhoun Street
        Tallahassee, Florida 32301
        (850) 222-8811 - telephone
        (850) 222-5583 - facsimile
        Florida Bar No. 128277
        doug.lyons@lyonsandfarrar.com

        Samuel T. Adams
        Post Office Box 191
        460 Grace Avenue
        Panama City, Florida 32402-0191
        (850) 785-3469 - telephone
        (850) 640-1562 - facsimile
        Florida Bar No. 160184
        tom@samueltadams.com

by:   /s/ Samuel T. Adams

## CERTIFICATE OF SERVICE

      I hereby certify that on October 18, 2012, I electronically filed the foregoing instrument with the Clerk of the Court by using the CM/ECF system, and provided notice by and through Lexis Nexis to all counsel of record.

                                                            /s/ Samuel T. Adams