IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig, "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * <br> * MDL no. 2179 <br> * <br> * CIVIL ACTION NO. 2:10-MD-02179 <br> * SECTION: J <br> * |
| THIS DOCUMENT RELATES TO: | * HONORABLE CARL BARBIER <br> * MAGISTRATE JUDGE SHUSHAN |
| *All Actions* | * |

### DECLARATION OF WILLIAM S. "CORKY" PERRET

1. My name is William S. "Corky" Perret, and I submit this declaration in response to the State of Louisiana's Memorandum in Response and in Opposition to BP's and PSC's Motions for Final Approval of Economic & Property Damages Class Settlement. I am responding primarily to the State of Louisiana's contention on page 9 of its brief attacking the expert basis for the Seafood Compensation Plan.

2. I have been involved in research, management and administration of marine fisheries in the Gulf of Mexico for over 45 years. I was formerly the Deputy Director of the Mississippi Department of Marine Resources, a post from which I retired in 2009. Prior to that and until 1996, I was Assistant Secretary of the Office of Fisheries in the Louisiana Department of Wildlife and Fisheries. I am currently a voting member and formerly the Vice Chairman of the Gulf of Mexico Fishery Management Council. I have also been awarded America's WETLAND Foundation's Lifetime Achievement Award following my service with the Mississippi DMR. I received my bachelor's and master's degrees from the University of Louisiana-Lafayette.

3. I was hired by Faegre & Benson LLP (now Faegre Baker Daniels LLP) in June 2011 to provide expertise, consulting, and analysis regarding the impacts of the BP oil spill on shrimp, crab, and fin fish. Since then, I have read academic articles on the impact of the spill, analyzed data collected from Faegre Baker Daniels' clients, and interviewed numerous fishermen and other seafood industry members in order to assess the impact of the spill on Gulf commercial fisheries.

4. I assisted Faegre Baker Daniels in connection with the GCCF process. I was part of Faegre Baker Daniels' expert team that made a presentation to Ken Feinberg on August 8, 2011 about seafood damages and our estimate of the long-term impacts from the Deepwater Horizon spill. I also co-authored with Jeff June, Robert Nickinovich, Ed Cake, Steve Hughes and Scott Goodman a paper entitled "Deepwater Horizon Oil Spill: Damage Assessment and Risk Analysis" that was submitted to the



GCCF on August 1, 2011. I understand that this report was later provided to both the PSC and BP. The paper provided an extensive analysis of the long-term damages of the oil spill and explained and applied our best estimate of the "multiplier" to shrimp, oyster, crab and (in a supplement submitted in October, 2011) finfish losses.

5. During the course of the *Deepwater Horizon* settlement negotiations, I provided the following information to Faegre Baker Daniels, which I understand was communicated to least the PSC and used in negotiating the settlement:

    a. My analysis and estimation of the suitability of data from the National Marine Fisheries Service (NMFS) for use in determining the overall shrimp production of the Gulf of Mexico. In an affidavit dated February 17, 2012 and provided by Faegre Baker Daniels to the PSC, I opined that NMFS's Annual Economic Survey data was an inadequate measure of the overall shrimp production of the Gulf of Mexico due to the fact that the surveys were sent to only 1/3 of the federally permitted boats and many fishers (including most Vietnamese-American shrimpers) did not respond to written surveys of the kind. The surveys are therefore only suitable for tracking trends – not for an estimate of the overall Gulf shrimp harvest.

    b. An academic paper that I identified and reviewed, entitled "Impact of the *Deepwater Horizon* well blowout on the economics of US Gulf fisheries," by U. Rashid Sumaila, et al. and published in the Canadian Journal of Fisheries & Aquatic Sciences. The study estimated the short term (7-year) economic impact of the Deepwater Horizon spill on the Gulf of Mexico commercial fisheries to be US $0.5-2.7 and US $.3-1.4 billion in revenues and profits, respectively.

    c. Information and data regarding the number potential claimants likely to participate in the settlement, including data about the number of licensed and active crab, shrimp, and oyster fishers.

6. I have reviewed the Seafood Compensation Plan (Exhibit 10 to the Settlement Agreement) and have the following opinions:

    a. The documentation requirements are fair and appropriate. The various benchmark periods and hardship options indicate to me that reasonable effort is being made to accommodate claimants. The documentation requirements accomplish the goal of separating legitimate commercial fishermen from "hobby" fishermen, while at the same time providing several options for proving revenue. This allows fishermen adequate flexibility. Obviously, there will be some claimants who do not have documentation of revenue, and they have the ability to opt out. But most experienced commercial fishermen will have documentation of revenue of the type required due to their past

      experience with government disaster grants and loans as well as tariff compensation.

b. There is inherent uncertainty regarding the future effects that the Deepwater Horizon spill will have on the Gulf of Mexico fisheries. It is uncertain whether the Deepwater Horizon disaster will cause the same types of long-term damages as previous spills. The settlement's multipliers, or Risk Transfer Premiums (RTPs), are a reasonable way of dealing with uncertain future impacts.

c. Another factor that must be considered, and is undoubtedly a huge factor in the eyes of fishermen, is that litigation over the spill could drag on for years, thus delaying full compensation for years. Most of the fishermen I know strongly prefer to be compensated at the front end, though knowing that they could possibly recover more after years of litigation.

d. In general, based on my extensive experience in the Gulf of Mexico fishing industry, knowledge of the effects that past disasters – both natural and oil-based – have had on various fishing industries, research and literature I have read on the biological and economic impact of the oil spill, as well as conversations with fishermen, I believe that the Seafood Compensation Plan provides fair and reasonable, but not generous, compensation for most Gulf of Mexico commercial fishermen affected by the Deepwater Horizon spill.

Signed under penalty of perjury, this 19th day of October, 2012, in Poplarville, Mississippi.

*[signature]*
William S. "Corky" Perret