1                   UNITED STATES DISTRICT COURT

2              WESTERN DISTRICT OF WASHINGTON AT SEATTLE
   ─────────────────────────────────────────────────────────
3
     MARK A. ARTHUR, CIRILO        )
4    MARTINEZ, PARI NAJAFI and     )
     HEATHER MCCUE on behalf of    )
5    themselves and all others     )   NO. C10-198JLR
     similarly situated,           )
6                                  )   SEATTLE, WASHINGTON
             Plaintiffs,           )   SEPTEMBER 14, 2012
7                                  )
     v.                            )
8                                  )
     SALLIE MAE, INC.,             )   <u>MOTION HEARING</u>
9                                  )
             Defendant.            )
10   ─────────────────────────────────────────────────────────

11              VERBATIM REPORT OF PROCEEDINGS
             BEFORE THE HONORABLE JAMES L. ROBART
12              UNITED STATES DISTRICT JUDGE
   ─────────────────────────────────────────────────────────
13   APPEARANCES:

14   For Plaintiffs:         MR. JONATHAN D. SELBIN
                             MS. BETH E. TERRELL
15                           MS. ALISON STOCKING
                             MR. MATTHEW R. WILSON
16

17   For Defendant:          MS. JULIA B. STRICKLAND
                             MS. LISA M. SIMONETTI
18                           MR. ERIC D. REICIN

19   For Intervenor          MR. DARRELL PALMER
     Judith Harper and       MR. BRIAN J. TRENZ
20   Objectors Sweeney
     and McBean:
21

22
     Reported by:            Kari McGrath, CCR, RMR, CRR
23                           Federal Court Reporter
                             206.370.8509
24                           kari_mcgrath@wawd.uscourts.gov

25

1        THE COURT:  Is it a regular practice in your law firm

2   to have someone engage in unauthorized practice of law by

3   signing pleadings in courts where they are not admitted?

4        MR. PALMER:  No, sir.

5        THE COURT:  All right.  You may be seated.  Thank

6   you.

7      The ruling of this court will be as follows:  Plaintiffs

8   move the court to revoke Darrell Palmer's pro hac vice

9   admission on the grounds that he made a false statement in

10  his pro hac vice application.

11     My colleague, Judge Coughenour, on August 17, 2012, denied

12  Mr. Palmer's pro hac vice application for the reason of

13  containing the same false statement and, secondly, because,

14  in part, Mr. Palmer blamed his assistant for the error.

15  Those of us who know Judge Coughenour well know that that

16  would never be a good idea.

17     Mr. Palmer represents that it was an innocent mistake on

18  his part in connection with his application in this matter,

19  and has submitted an amended application that corrects the

20  false statement.  He also takes full responsibility for the

21  error, while stating, quote, "Mr. Palmer's office made an

22  inadvertent error."

23     It is undisputed that Mr. Palmer made a false statement in

24  his pro hac vice application.  He declared under penalty of

25  perjury that he had, quote, "not been disbarred or formally

1    censured by a court of record or by a state bar association;

2    and there are no disciplinary proceedings against me," in the

3    record at Docket 97.

4        In fact, Mr. Palmer was temporarily suspended from the

5    Colorado Bar Association, the State Bar of Arizona, and the

6    State Bar of California as a result of a Colorado felony

7    conviction in the 1990s.

8        Pursuant to Western District of Washington Local

9    Rule 2(f)(3), an attorney may be subject to disciplinary

10   action for violation of the Standards of Professional

11   Conduct, including the Federal Rules of Civil Procedure.

12       Under Federal Rule of Civil Procedure 11, an attorney's

13   signature on a court filing certifies that to the best of the

14   person's knowledge, the facts presented in the documents have

15   evidentiary support, Federal Rule of Civil Procedure

16   11(b)(3).

17       Here, Mr. Palmer improperly certified and declared under

18   penalty of perjury that he did not have a disciplinary

19   history.  As such, he violated the Standards of Professional

20   Conduct set forth in the local rules and is subject to

21   disciplinary action.

22       Mr. Palmer attempts to mitigate his error by

23   distinguishing the cases cited by plaintiff, explaining that

24   he was temporarily disbarred for conduct unrelated to the

25   practice of law, asserting that he meets the standards for

1  pro hac vice application in this district, taking

2  responsibility for his error, contending that his work

3  substantially benefitted the class, and maintaining that

4  plaintiffs have bad motives for bringing this action.

5      I have not conducted an independent investigation into the

6  Colorado Bar Association action, or Colorado conviction, and

7  I don't know if it was a disbarment or a suspension.  But

8  everyone seems to describe it as either one or the other of

9  those.

10         MR. PALMER:  So the record is clear, it was a

11  suspension, Your Honor.

12         THE COURT:  Please don't interrupt me, sir.  You are

13  in enough trouble already.

14      This misses the point that it is a civil rule violation

15  under Rule 11, not Mr. Palmer's suspension, that is at issue

16  in this matter.  I really don't want to know about the facts

17  of the underlying proceeding.  We will assume, since

18  Mr. Palmer is an officer of the court, that it was an

19  inadvertent problem.

20      However, in this matter, the conduct is unacceptable.

21  Mr. Palmer was alerted to the problem when his pro hac vice

22  application in Judge Coughenour's case was challenged.  That

23  was on October 10, 2012 (sic).  Mr. Palmer did not

24  immediately raise and seek to correct the same mistake in

25  this case.  In fact, plaintiffs waited ten days before filing

1    their motion to give Mr. Palmer time to raise and correct the

2    issue.

3         Mr. Palmer did not file an amended pro hac vice

4    application until August 27, 2012, a full 17 days after being

5    notified of the problem.  This does not demonstrate candor

6    with the court or that he took seriously the fact that he

7    made a false statement under oath.

8         Additionally, Mr. Palmer has apparently submitted false

9    pro hac vice applications in at least three other cases.  As

10   a final note, the false statement in the pro hac vice

11   application is not the only misrepresentation Mr. Palmer has

12   made to this court.  It is impossible to reconcile a

13   declaration submitted to this court under penalty of perjury,

14   dated May 17, 2012, with the court record.  And Mr. Palmer

15   has now acknowledged that it is incorrect.  That serves as

16   the basis for his fee application in this matter.

17        As will be further discussed today, Mr. Palmer made

18   several other misrepresentations in his motions for

19   attorneys' fees.  These misrepresentations confirm my

20   conclusion that the court sanction Mr. Palmer by revoking his

21   admission in this case.  Therefore, Docket 251 is granted,

22   and Mr. Palmer's pro hac vice is revoked.

23        Let me then take up next the question of the motion for

24   attorneys' fees by Judith Harper.

25        I'm not having argument, counsel.  I'm ruling from the

1    class members.  Furthermore, class counsel, not Ms. Harper's

2    counsel, negotiated the additional $4.65 million in the fund,

3    and are therefore responsible for that added benefit.

4        Ms. Harper's counsels' contention that they added a

5    substantial benefit to the class by identifying the fact that

6    "charged-off" members are not provided monetary relief and

7    identifying the issue that the settlement included all

8    released parties is unavailing.  The court rejected

9    Ms. Harper's objection regarding the "charged-off" class

10   members, and there is no indication that any change between

11   the original settlement and the amended settlement relating

12   to the released parties added any benefit to the class.

13       Further, Ms. Harper's counsel makes yet another

14   misrepresentation when they asserted that the court

15   instructed the parties to revise the revocation request form

16   in accordance with counsel's suggestion.  The court did no

17   such thing.  See the court's order of January 10, 2012, at

18   page 20.

19       The only benefit that Ms. Harper's counsel provided to the

20   class was pointing out that the original settlement did not

21   provide a monetary benefit to class members who were 180 days

22   or more delinquent but who had since paid off their debt.

23   This was a suggestion adopted by the parties in the amended

24   settlement, and it has provided a benefit to those class

25   members who are now able to receive a cash award.

1   Nevertheless, there is insufficient evidence in the record

2   for the court to conclude that this suggestion resulted in a

3   substantial benefit to the class so as to warrant attorneys'

4   fees.  For example, there is no evidence regarding how many

5   class members will benefit from this change.  As such, it

6   does not warrant any award of attorneys' fees and costs.

7        There are additional factors, counsel, against awarding

8   attorneys' fees and costs to Ms. Harper's counsel.  First of

9   all, many of their motions since the motion to intervene have

10  been rejected by the court, suggesting that the actions were

11  to disrupt and delay, which is consistent with the fact that

12  Mr. Palmer is a, and I'll use the phrase "professional" not

13  in any favorable sense, objector.  I believe that he has

14  previously been labeled that by one of my colleagues.

15       Second, counsel has made at least three misrepresentations

16  to the court in their motions for attorneys' fees, in

17  addition to the false statement on the pro hac vice

18  application.

19       Finally, the motion for attorneys' fees, a very

20  significant document, is signed by Kira Rubel, who represents

21  to the court that she is admitted pro hac vice, in addition

22  to Mr. Palmer, who now says that he wasn't there.  Ms. Ruble

23  has not been admitted pro hac vice.  Therefore this is

24  another misrepresentation.

25       Finally, even if the court deems it appropriate to make

THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7              UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
8                      AT SEATTLE

9    ALYSON HERFERT, et al.,                    CASE NO. C11-1301-JCC

10                                              ORDER DENYING APPLICATION
                         Plaintiffs,            OF CLAIMANT'S COUNSEL
11                                              DARRELL PALMER TO APPEAR
            v.                                  PRO HAC VICE
12
     CRAYOLA, LLC,
13
                         Defendant.
14

15         The application of Claimant's counsel, Darrell Palmer, to appear pro hac vice (Dkt. No.

16   59, as amended (Dkt. Nos. 72, 73)) is denied for failure to appear at a prior hearing and for

17   material nondisclosures in his application. Mr. Palmer falsely declared under penalty of perjury

18   that he had not been disbarred or formally censured by a court of record or by a state bar

19   association. (Dkt. No. 59). In fact, Mr. Palmer was temporarily suspended from the Colorado Bar

20   Association, the State Bar of Arizona, and the State Bar of California as a result of a Colorado

21   felony conviction. Mr. Palmer has submitted a letter to the Court attributing his failure to

22   disclose these suspensions to an oversight on the part of his assistant. Any professional should

23   know better than to blame his assistant for such a serious misstatement in a document containing

24   his own signature. The Court relies on an attorney's signature as his personal attestation that the

25   information submitted is true and complete. It was Mr. Palmer's responsibility, and his alone, to

26   ensure the accuracy of his application.

ORDER DENYING APPLICATION OF
CLAIMANT'S COUNSEL DARRELL PALMER
TO APPEAR PRO HAC VICE
PAGE - 1

For the foregoing reasons, the application of Claimant's Counsel, Darrell Palmer, to appear pro hac vice is DENIED, and the portion of the Court's August 10th order (Dkt. No. 71) requiring Mr. Palmer to appear in person before the Court on August 21st is VACATED.

DATED this 17th day of August 2012.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER DENYING APPLICATION OF
CLAIMANT'S COUNSEL DARRELL PALMER
TO APPEAR PRO HAC VICE
PAGE - 2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

In re: Uponor, Inc., F1807 Plumbing     **MEMORANDUM OPINION**
Fittings Products Liability Litigation     **AND ORDER**
                                                    Court File No. 11-MD-2247 ADM/JJK

This Order Relates to all Actions

---

Shawn M. Raiter, Esq., Larson King, LLP, St. Paul, MN; Robert K. Shelquist, Esq., Lockridge, Grindal, Nauen, PLLP, Minneapolis, MN; Charles J. LaDuca, Esq., Cuneo, Gilbert & LaDuca, LLP, Washington, D.C.; Michael McShane, Esq., Audet & Partners, LLP, San Francisco, CA; David Black, Esq., Perkins Coie, LLP, Denver, CO; J. Gordon Rudd, Jr., Esq., Zimmerman Reed, PLLP, Minneapolis, MN; Christopher L. Coffin, Esq., Pendley, Baudin & Coffin, L.L.P., New Orleans, LA; and David M. Birka White, Esq., Birka-White Law Offices, Danville, CA, on behalf of Plaintiffs.

Bradley D. Fisher, Esq., Fisher Bren & Sheridan LLP, Minneapolis, MN; Emily Picone Hennen, Esq., Daniel W. Berglund, Esq., Howard L. Lieber, Esq., John R. Schleiter, Esq., and Lindsay E. Dansdill, Esq., Grotefeld, Hoffman, Schleiter, Gordon & Ochoa, LLP, Chicago, IL, and Minneapolis, MN; and Joshua P. Haid, Esq., Fisher Kannaris, PC, Chicago, IL, on behalf of Defendants.

Chad R. Felstul, Esq., Pemberton, Sorlie, Rufer & Kershner, PLLP, Fergus Falls, MN; and Kenneth S. Kasdan, Esq., Michael D. Turner, Esq., and Michael James White, Esq., Kasdan Simonds Webber & Vaughan LLP, Irvine, CA, and Phoenix, AZ, on behalf of Objectors Oscar Ortega, Toney Abbott, Bonnie Abbott, Alberto Aguilar, Irma Aguilar, Steven A. Archangel, Alejandro Camarena, Monica Camarena, Evelyn Candido, Luis Carillo, John Parrett, Jaime Cubides, Marta Cubides, Verna Culp, Louise Ellis, Rosario Lopez, Monica McCulloch, Daniel Saenz, Angel Morales, Cassandra Smith, Micaela Negrete, Luis Zapata, Todd O'Neal, Sylvia O'Neal, Roberto Perez, Henry Pimentel, Gerardo Rivera, Gregorio Sanchez, Marisol Sanchez, Laura Spindola, Wilber Torres, Kenneth Wright, Debra Wright, Raul Zelaya, Jose Zul, and Lucila Zul.

Objectors Paul Palmer and Jeffrey Palmer, pro se.

---

## I. INTRODUCTION

On August 28, 2012, the undersigned United States District Judge heard oral argument on the Settlement Class's Motion to Require Objectors to File Rule 7 Appeal Bond [Docket No. 112]. For the reasons set forth below, the Motion to Require an Appeal Bond is granted.

## II. BACKGROUND

On June 29, 2012, this Court issued a Final Approval Order [Docket No. 96] of a settlement in this underlying multidistrict litigation ("MDL") case concerning brass plumbing fittings sold throughout the country by Radiant Technology, Inc. ("RTI") and Uponor, Inc. ("Uponor") (collectively, the "RTI Defendants"). The approved Settlement Agreement provided substantial benefits for class members, as well as attorneys' fees, costs, and expenses to be paid separately from the fund available for distribution to class members. Aff. of Shawn Raiter in Supp. of Mot. for Final Approval [Docket No. 86] ("Raiter Final Approval Aff.") Ex. A. ("Settlement Agreement") ¶ 85. The Settlement Class includes the owners of an estimated 30,000 homes containing the RTI plumbing system. See Raiter Final Approval Aff. ¶¶ 3–6. The costs of repair or replacement could range from $4,000 to $100,000 per structure. Id.

After the settlement was reached and the approval and notice process begun, the Ortega Objectors[1] and the Palmer Objectors[2] sought to intervene and objected to the Settlement Agreement. On June 19, 2012, this Court issued an Order denying Plaintiff-Intervenor Ortega's Motion to Intervene [Docket No. 15], his Motion for Protective Order [Docket No. 24], and his Motion to Decertify Class [Docket No. 28]. See June 19, 2012 Order [Docket No. 80]. The

---

[1]The "Ortega Objectors" include the following thirty-six California homeowners: Oscar Ortega, Toney Abbott, Bonnie Abbott, Alberto Aguilar, Irma Aguilar, Steven A. Archangel, Alejandro Camarena, Monica Camarena, Evelyn Candido, Luis Carillo, John Parrett, Jaime Cubides, Marta Cubides, Verna Culp, Louise Ellis, Rosario Lopez, Monica McCulloch, Daniel Saenz, Angel Morales, Cassandra Smith, Micaela Negrete, Luis Zapata, Todd O'Neal, Sylvia O'Neal, Roberto Perez, Henry Pimentel, Gerardo Rivera, Gregorio Sanchez, Marisol Sanchez, Laura Spindola, Wilber Torres, Kenneth Wright, Debra Wright, Raul Zelaya, Jose Zul, and Lucila Zul.

[2]The "Palmer Objectors" are two Texas homeowners, Paul and Jeffrey Palmer.

2

Palmer Objectors also filed an objection to the Settlement Agreement, but in the Final Approval Order this Court determined that they were "clearly not class members here" because the pipe fittings they owned were not the pipe fittings involved in the Settlement Agreement. Final Approval Order 6 n.4. The Ortega Objectors also objected to the Final Approval Order, and their objections were specifically addressed and overruled. Id. at 18–21.

On July 19, 2012, the Ortega Objectors filed a Notice of Appeal to the United States Court of Appeals for the Eighth Circuit [Docket No. 100] ("Ortega Objectors' Notice of Appeal"), and on August 2, the Palmer Objectors did the same. See Palmer Objectors' Notice of Appeal [Docket No. 106]. On August 13, 2012, the Settlement Class filed its Motion to Require an Appeal Bond.

### III. DISCUSSION

The Settlement Class seeks three categories of bond costs from the Objectors: (1) the direct costs related to the appeal; (2) the cost caused by the delay; and (3) the cost of potentially republishing notice to the class. Although an appeal typically divests a district court of jurisdiction over a case, the court retains jurisdiction to impose a cost bond for appeal. See Venen v. Sweet, 758 F.2d 117, 121 n.2 (3d Cir. 1985). Rule 7 of the Federal Rules of Appellate Procedure permits a district court to require an appellant to file a bond in the "amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7.

The purpose of an appellate cost bond is the protection of appellees' rights by "provid[ing] some level of security to Lead Plaintiffs who have no assurances that Appellants have the ability to pay costs and fees associated with opposing their appeals." In re Ins. Brokerage Antitrust Litig., Civ. No. 04-5184, 2007 WL 1963063, at *2 (D. N.J. July 2, 2007)

(quotation omitted).  The district court has discretion to craft a bond indicative of the expected outcome on appeal.  Adsani v. Miller, 139 F.3d 67, 79 (2d Cir. 1998).  Appeal bonds are often required on appeals of class action settlements or attorneys' fee awards because the appeal effectively stays the entry of final judgment, the claims process, and payment to all class members.  Id.; Allapattah Servs., Inc. v. Exxon Corp., No. 91-0986, 2006 WL 1132371, at *18 (S.D. Fla. Apr. 7, 2006).  However, appeal bonds must not create "an impermissible barrier to appeal."  Adsani, 139 F.3d at 79.

Courts consider several factors in determining whether a Rule 7 bond is necessary, including: (1) the appellant's financial ability to post a bond; (2) the risk of nonpayment of appellee's costs if the appeal is unsuccessful; (3) the merits of the appeal; and (4) bad faith or vexatious conduct on the part of the appellants.  See Berry v. Deutsche Bank Trust Co. Americas, 632 F. Supp. 2d 300, 307 (S.D. N.Y. 2009).  Within its discretion, the court may make objectors jointly and severally liable for the bond payment.  See, e.g., In re. Ins. Brokerage Antitrust Litig., 2007 WL 1963063, at *3.

The Court finds a cost bond appropriate in this case because all of the enumerated factors weigh in favor of its imposition.  Although no financial documents were submitted, the Ortega Objectors state they "do not pose a payment risk" while the Palmer Objectors aver they are unable to post a bond in excess of $1,000.  Mem. of Ortega Objectors in Opp'n to Motion to Require an Appeal Bond [Docket No. 122] 5; Response of Palmer Objectors in Opp'n to Pls.' Request for Imposition of Appeal Bond [Docket No. 124] 4 ("Palmer Objectors' Response").  Therefore, the risk of nonpayment of appellees' costs if the appeal is unsuccessful is high.  Additionally, the cost bond will be shared by the two groups of objectors, a total of thirty-eight

4

individuals, which alleviates the financial burden and increases the ability of the individual

objectors to post the bond.

Regarding the strength of appellants' position, the Court finds the bases for their appeals

to be very weak. "A district court, familiar with the contours of the case appealed, has the

discretion to impose a bond which reflects its determination of the likely outcome of the appeal."

Adsani, 139 F.3d at 79 (citing Skolnick v. Harlow, 820 F.2d 13, 15 (1st Cir. 1987)). The Palmer

Objectors have not yet specified the issues which they will raise on appeal, and whether they

have standing to object without having the fitting at issue in their home is doubtful. The Ortega

Objectors are appealing issues which this Court has already entertained and found wanting: the

timeliness of their intervention, class certification, and the adequacy of the class representatives.

See Ortega Objectors' Notice of Appeal 3–6. None of these issues are likely to succeed on

appeal, and this factor weighs strongly in favor of imposing a bond.

As to the fourth factor in determining a cost bond, the Court finds that the Palmer

Objectors have evidenced bad faith and vexatious conduct. Most critically, the Palmer Objectors

are not class members. As the Court has noted in a previous order, the photograph of the

allegedly faulty pipe fitting in the Palmer residences reveals that their pipe fittings are HLPEX

systems, a pipe fitting not involved in this litigation. See Final Approval Order 6 n.4; see also

Palmers' Objections [Docket No. 73] Ex. A. Moreover, the Palmer Objectors appear to be

represented by an attorney who has not entered an appearance in this case and who is believed to

be a serial objector to other class-action settlements. Raiter Supp. Aff. Relating to Palmer

Objectors [Docket No. 125] ¶ 3. This attorney, Darrell Palmer, paid the appellate filing fee on

behalf of the Palmer Objectors, and the documents filed on their behalf bear his California

mailing address rather than the Texas addresses of the Palmer Objectors.  Id. ¶¶ 3–6.  Further, the Palmer Objectors' Response indicates the involvement of Darrell Palmer or some other attorney.  Although the Palmer Objectors profess to be pro se, their memoranda stated that "**Counsel** for appellants has never ever seen a cost bill exceeding $1,000 for a record of this size, in any district."  Palmer Objectors' Response 3 (emphasis added).  The Palmer Objectors' objections and subsequent appeal appear little more than dilatory tactics of questionable motivation.  While the Ortega Objectors have not evidenced any bad faith conduct, both objectors' arguments are without merit.  Given the Palmers Objectors' bad faith conduct, in addition to the other three factors, this Court finds that a bond is warranted to cover the costs of appeal pursuant to Rule 7.

### A.  Direct Appeal Costs

The Settlement Class seeks a $25,000 bond in costs related to the Objectors' appeals.  Costs that may be taxed in an appeal bond include the costs of preparing and transmitting the record, the costs of obtaining necessary transcripts, printing costs, and other copying costs.  In re Ins. Brokerage Antitrust Litig., 2007 WL 1963063, at *2.  Courts routinely approve bonds for appeal-related costs of $25,000.  See id. at 2–3; In re Diet Drugs (Phentermine, Fenfluramine, Dexenfluramine) Prods. Liab. Litig., Civ.A. 99-20593, 2000 WL 1665134, at *4–5 (E.D. Pa. Nov. 6, 2000).

The Settlement Class estimates that the costs on appeal will be at least $25,000.  The Ortega Objectors generally agree.  The Palmer Objectors, on the other hand, contend that the Settlement Class has failed to provide evidence regarding allowable costs and, therefore, that this Court should not impose any appeal bond to cover costs.  The Settlement Class bases its estimate

of appeal-related costs on several factors, including the appearance of twenty-four law firms as counsel in this litigation, the filing of two separate appeals, and the size of the MDL and underlying dockets.  See Raiter Aff. in Support of Mem. in Support of Settlement Class's Motion to Require Objectors to File Rule 7 Appeal Bond [Docket No. 115] ("Raiter Rule 7 Aff.") ¶¶ 3–4.  The Court finds that a $25,000 bond for costs related to the appeals is reasonable.

Although the Palmer Objectors argue that costs incurred by the Settlement Class in defending this appeal are de minimus and less than $1,000, this figure is woefully understated and inadequate to protect the rights of the Settlement Class.  For instance, the Palmer Objectors argue that the record will likely not exceed 100 pages, but they base this estimate on providing only "excerpts from the motion for preliminary settlement, motion for final settlement, Appellants' objection, transcript from final hearing, and Appellants' notice of appeal."  Palmer Objectors' Response 2.  The Palmer Objectors also fail to account for the provision of copies to the twenty-three other law firms involved.  For this reason, the Palmer Objectors' proposed amount is insufficient to protect Plaintiffs, and the $25,000 bond amount requested by the Settlement Class is an appropriate bond amount.

### B. Costs Caused by Delay

In addition to costs related to the appeal, the Settlement Class also seeks a bond for costs caused by delay of implementing the settlement.  Specifically, the parties to the Settlement Agreement hired a claims administrator to handle incoming claims, and because an appeal will likely not be resolved for approximately twelve months, the parties expect the claims administrator to charge an extra $20,000 for additional administrative functions during the delay.  See Raiter Rule 7 Aff. ¶ 6.  The Objectors protest that the delay caused by the appeal will not

increase class member inquiries or claims, that any delay was anticipated and therefore not causally related to the appeal, and that they have no obligation to ensure the availability of the judgment.

Costs incurred as a result of delay of a settlement caused by an appeal are recoverable under Rule 7. An appeal bond is a "guarantee that the appellee can recover from the appellant the damages caused by the delay incident to the appeal." In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 124, 128 (S.D. N.Y. 1999) (quoting Morgan Guaranty Trust Co. of N.Y. v. Republic of Palau, 702 F. Supp. 60, 65 (S.D. N.Y. 1988)). Numerous courts have awarded costs incurred by delays caused by objectors' appeals in a class action settlement. See In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. at 128 (awarding a bond for "damages resulting from the delay and/or disruption of settlement administration caused by [an] appeal in the amount of $50,000"); In re Checking Account Overdraft Litig., No. 1.09-MD-2036, 2012 WL 456691 (S.D. Fla. Feb. 14, 2012) (ordering a bond in excess of $616,000 because the appeal "prevent[ed] distribution of the Settlement proceeds as ordered by this Court's Final Judgment"); In re Cardizem CD Antitrust Litig., 391 F.3d 812, 818 (6th Cir. 2004) (affirming the trial court's imposition of an appeal bond including $123,429 in incremental administration costs because the appeal had "the practical effect of prejudicing the other injured parties by increasing transaction costs and delaying disbursement of settlement funds"); In re Compact Disc Minimum Advertised Price Antitrust Litig., No. MDL 1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003) (awarding a $35,000 bond, an amount which included fees for settlement administration and the cost of tracking down class members who moved during the appeals period).

Courts treat with particular disapproval the objections and appeals of "professional

objectors," whose objections amount to a "tax that has no benefit to anyone other than to the objectors" but serves to "tie up the execution of [a] Settlement and further delay payment to the members of the Settlement Class . . . ." In re Checking Account Overdraft Litig., 2012 WL 456691, at *2.

The $20,000 bond requested by the Settlement Class for costs incurred by delay are reasonable and necessary. The costs of additional administration should be shouldered by the Objectors, particularly given the tenuous nature of their arguments. The Ortega Objectors cite several cases for their assertion that a bond is inappropriate for any delay, but those cases are inapposite. They cite language from a Pennsylvania case which states that a supersedeas bond is inappropriate because "an objector has no obligation to ensure the availability of the judgment; the defendants, and not the objector, are charged with implementing the settlement." In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig., 695 F. Supp. 2d 157, 162 (E.D. Pa. 2010). The court in that case, however, was analyzing the propriety of a supersedeas bond to effect a stay. No stay is involved here. Further unlike In re Am. Investors, the bond requested in this case is a Rule 7 bond rather than a Rule 62 supersedeas bond which makes the quoted language inapplicable. The purpose of a Rule 7 bond is not to ensure the availability of the judgment but rather to protect the Settlement Class from additional costs imposed by the appeals.

The Ortega Objectors other argument is similarly flawed. They contend that because an appeal was anticipated by the parties to the Settlement Agreement, no bond is required. The Ortega Objectors cite Vaughn v. Am. Honda Motor Co., Inc., 507 F.3d 295 (5th Cir. 2007), where a bond request was denied in part because the settlement agreement did not include a provision for payment of prejudgment interest and because the settlement was not effective until

all appeals were concluded.  Id. at 299.  The bond to which the Ortega Objectors object,

however, is a bond for administrative costs incurred by delay, not a bond for prejudgment

interest.  While the Settlement Agreement states that the settlement does not become effective

until after all appeals, see Settlement Agreement ¶ 125, this does not resolve the question of

which party should bear the additional cost caused by the delay of an unsuccessful appeal.  The

Vaughn case, therefore, is inapposite, and a bond for the costs of delay is appropriate in these

circumstances.

### C.  Costs Caused by Additional Class Notice

The Settlement Class also requests a $500,000 bond to cover the costs of any additional

class notice that may be required due to the delay caused by the appeal.  The Ortega Objectors

contend that no further notice is currently required, and it is highly unlikely that it will be

required in the future.  The Palmer Objectors do not specifically address this element of the

requested bond, although they aver that "they cannot post a bond in the amount of $500,000" but

"could post a bond in the amount of $1,000."  Palmer Objectors' Response 4.

A bond in the amount of $125,000 in this case is sufficient to ensure that appellees' rights

are protected.  This amount reflects that the appeal will result in a significant delay of the claims

process and ultimate payment to class members.  Courts have approved much higher Rule 7

bonds in the class settlement context.  See, e.g., Allapattah, 2006 WL 1132371, at *18 (imposing

a bond in the amount of $13.5 million because of the "highly detrimental impact of an appeal of

the settlement agreement as to the entire class"); In re Checking Account Overdraft Litig., 2012

WL 456691, at *3 (imposing a $616,000 bond because of the delay caused by an appeal).  The

Court finds that additional class notice may be required due to the delay occasioned by the

appeal, and that a bond of $125,000 is sufficient to protect the appellees.  Because the initial class notice program cost nearly $1 million, it is reasonable to discern that an additional notice would likely cost significantly more than $125,000.  See Raiter Rule 7 Aff. ¶¶ 7–9.  For these reasons, the Court finds that $125,000 is adequate and necessary to protect the appellees on these potential costs.

### D.  Bond Not a Barrier to Appeal

The total bond amount of $170,000 does not impose an insurmountable barrier to appeal for appellants.  Rule 7 bonds are not intended to be used as a means of discouraging appeals, even appeals which lack merit.  See, e.g., Clark v. Universal Builders, Inc., 501 F.2d 324, 341 (7th Cir. 1974) ("[A]ny attempt by a court at preventing an appeal is unwarranted and cannot be tolerated."); In re Diet Drugs, 2000 WL 1665134, at *6 (reducing bond amount because an excessive bond "would effectively squelch the right to appeal for many if not all of [the objectors]"); cf. Lindsey v. Normet, 405 U.S. 56, 77–79 (1972) (holding that bonds are not to be used as a barrier to appeal).

No evidence has been proffered by either the Ortega Objectors or the Palmer Objectors as to any financial hardship, and the Court finds that $170,000 shared between thirty-eight individuals — approximately $4,470 per individual — is not a barrier to appeal.

### IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

> 1.  The Settlement Class's Motion to Require Objectors to File Rule 7 Appeal Bond [Docket No. 112] is **GRANTED**;

11

Case 2:10-md-02179-CJB-DPC Document 7723-11 Filed 10/22/12 Page 21 of 21

2. The Palmer Objectors and Ortega Objectors are required to post a bond in the total amount of $170,000, which is comprised of:

    a. $25,000 for the direct costs of the appeal;

    b. $20,000 for the administrative costs of the delay caused by the appeal;

    c. $125,000 for the cost of additional class notice;

3. The Palmer Objectors and Ortega Objectors are jointly and severally liable for the full amount of the bond; and

4. The Palmer Objectors and the Ortega Objectors shall file, within ten (10) days of the date of this Order, proof that they have secured the bonds directed by this Order and shall further file the original bonds with the Clerk of Court.

BY THE COURT:

_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  September 11, 2012.