IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * * * * * * | MDL NO. 2179<br><br>SECTION: J<br><br><br>HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |
| Plaisance, *et al.*, individually and on behalf of the Medical Benefits Settlement Class,<br><br><br><br>Plaintiffs,<br><br>v.<br><br>BP Exploration & Production Inc., *et al.*,<br><br>Defendants. | * * * * * * * * * * * * * * * * | NO. 12-CV-968<br><br>SECTION: J<br><br><br>HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

**STATUS UPDATE FROM THE DEEPWATER HORIZON**
**MEDICAL BENEFITS SETTLEMENT CLAIMS ADMINISTRATOR**

The Deepwater Horizon Medical Benefits Settlement Claims Administrator[1] ("Claims Administrator") respectfully submits this status update pursuant to the Medical Benefits Class Action Settlement Agreement, as amended on May 1, 2012 ("Medical Settlement Agreement"), and as preliminarily approved by the Court on May 2, 2012.  This report updates claims data and activities since the last report submitted to the Court on August 13, 2012.  As detailed herein, the

---

[1]  Terms with initial capital letters used in this status update have the meanings ascribed to the fully capitalized rendering of such terms in the Medical Settlement Agreement, unless otherwise defined or set off by quotation marks herein.

Claims Administrator is fully prepared to implement the settlement upon final approval by the Court and satisfaction of the conditions set forth in the Medical Settlement Agreement.

## I. Comprehensive Overview

As described in detail below and in accordance with the terms of the Preliminary Approval and Certification Order and the terms of the Medical Settlement Agreement, the Claims Administrator has been successfully performing its duties, including completion of the following activities since the August 2012 status update:[2]

- Added additional personnel to assist with the execution of the responsibilities of the Claims Administrator;
- After completion of all Notice mailings, conducted follow up mailings for returned packets;
- Managed increased traffic on the Medical Settlement web portal;
- Processed an additional 3,539 inquiries to the Class Member call center;
- Communicated via letter with an additional 3,017 potential class members seeking their data from BP databases, seeking confirmation of residence in Zone A and/or B, submitting Proof of Claim Forms, or submitting Notices of Intent to Sue;
- Made a second distribution of funds to grantees of the Gulf Region Health Outreach Program ("Outreach Program");
- Selected prospective medical service providers ("providers") for the Periodic Medical Consultation Program, utilizing surveys conducted prior to the August 2012 status update;
- Communicated with and sent applications to providers identified as matches to the Periodic Medical Consultation Program's credentialing and selection criteria;

---

[2] Unless otherwise noted, all references to materials received or sent to date is as of close of business on Friday, October 19, 2012.

- Received completed applications from prospective providers and initiated procedures for determining whether the providers satisfy the qualifications under Sec. VII of the Medical Settlement Agreement;

- Identified possible mediators for Back-End Litigation Option mediations;

- Addressed Medicare Secondary Payer matters by providing the Centers for Medicare & Medicaid Services ("CMS") with relevant documentation, including a detailed summary of each of the settlement benefits, court documents, and other reference materials;

- Submitted to CMS a proposed global repayment methodology demonstrating how Medicare's interests would be satisfied through a global resolution program;

- Continued to define and memorialize in writing all aspects of the to-be-agreed-upon final process and/or repayment amounts that will serve as "payment in full" for, and "final satisfaction of," Medicare's recovery rights;

- Collected information regarding claims for minors and incompetents and provided this information to the Parties; and

- Assisted the Guardian Ad Litem in understanding the components of and processes for implementing the Medical Settlement Agreement.

## II.   Status on Staffing

The Claims Administrator has met hiring and training timelines in support of administering all benefits under the Medical Settlement Agreement. In the New Orleans claims service office, 22 professionals are supporting the "Class Member Services Center" ("Services Center") that serves as the "Call and Intake Center" for the Deepwater Horizon Medical Benefits Settlement. They are supported by over 250 claims processing professionals on staff at Garretson Resolution Group in Charlotte, North Carolina and Cincinnati, Ohio.

### III. Status of Notice Mailing

Notice mailing was completed June 28, 2012. Since the August 2012 status update, the Claims Administrator has sent an additional 1,748 Notice packets in an attempt to facilitate the delivery of returned packets and to respond to email and phone call requests for Notice packets.

### IV. Status of the Medical Settlements Web Portal

A web portal was launched on May 7, 2012. Approximately thirty thousand unique visitors have accessed the site a total of 45,503 times since its inception. Over one third of all visits to the site are from people in Florida and Louisiana. The top three topics visited on the website are: 1. Court Documents, 2. Alerts, and 3. Maps.

### V. Status of New Orleans Class Member Services Call Center

In April 2012, the Claims Administrator opened the Service Center in New Orleans, which handles call center and certain claim intake activities. The Claims Administrator currently has 18 "Class Member Service Representatives" ("CSRs") in New Orleans. Since the last update, the Service Center has received an additional 3,539 calls, for a total of 13,304 calls since its inception. The average length of a call is 6:15 minutes. The average time a caller waits to speak with a CSR is 14 seconds.

### VI. Status of New Orleans Class Member Services Claims Intake and Reporting

The New Orleans Service Center also has "Intake Specialists" and "Data Entry Analysts" who process claims. These professionals are responsible for processing all materials mailed from potential Medical Benefits Settlement Class Members ("Class Members") to the Claims Administrator. Since the August 2012 status update, the New Orleans Service Center has received an additional:

- 1,473 Proof of Claim Forms; and
- 91 (potential) Opt-Out requests.

This brings the total number received to:
- 3,868 Proof of Claim Forms;[3]
- 153 (potential) Opt-Outs.

### VII.   Status of Zone Determinations

Under the terms of the Medical Settlement Agreement, Zone A and Zone B are defined geographic locations along the Gulf Coast.  Since the August 2012 status update, the Claims Administrator has provided an additional 225 written responses to requests for Zone Determination, bringing the total number to 1,950.

### VIII.   Status of Gulf Region Health Outreach Program

The Outreach Program has been established in accordance with the Medical Settlement Agreement to expand capacity for, and access to, high quality, sustainable, community-based healthcare services, including primary care, behavioral and mental health care, and environmental medicine, in Gulf Coast communities in Louisiana, Mississippi, Alabama, and the Florida Panhandle.  The Claims Administrator previously entered into and executed a Grant Agreement with each grantee of the Outreach Program.

The Claims Administrator undertook the following additional activities since the August 2012 status update:

---

[3]  Proof of Claim Forms have been submitted by 4 individuals who have submitted objections to the Medical Settlement Agreement.  Three law firms who submitted objections to the Medical Settlement Agreement have submitted at least a total of 30 Proof of Claim Forms:  Nexsen Pruet, LLC and/or Douglas M. Schmidt, APLC have submitted at least 26 Proof of Claim Forms, and Lindsay & Andrews, P.A. have submitted at least 4 Proof of Claim Forms.

- The second distribution of funds ("Distribution Two") was disbursed to each grantee within 90 days of Distribution One on August 21, 2012;[4]
- Project leaders and associated project managers met in person on August 14, 2012, to review the creation and implementation of evaluation and assessment tools for use by each grantee;
- Each grantee submitted its second quarterly report with an updated budget prior to the Outreach Program Coordinating Committee ("Coordinating Committee") meeting held on September 21, 2012;
- The Coordinating Committee and associated project managers conducted a second quarterly in person meeting on October 3, 2012, to receive written status reports, evaluate Outreach Program project ("Outreach Project") implementation, confirm that benchmarks are being met, and enhance cooperation among Outreach Projects;
- The Claims Administrator continually updates and maintains the Outreach Program grantee extranet, a web portal which includes communication resources, a repository for common assessment instruments, and a repository for common evaluation instruments;
- The Claims Administrator continues to facilitate bi-weekly teleconference calls with Outreach Project leaders to review Outreach Project plans and activities and support collaboration among grantees and the Coordinating Committee;
- In accordance with Sec. IX.H of the Medical Settlement Agreement, the Claims Administrator continues to implement and update a publicly accessible, text-searchable, indexed, online electronic Gulf Region Health Outreach Program Library (a public website) comprised of Library Materials, which include but are

---

[4] The total amount of Distribution Two was $15,949,082.00 to the following grantees: Louisiana State University Health and Sciences Center and Dr. Howard J. Osofsky; University of South Alabama and Dr. Jennifer Langhinrichsen-Rohling; University of West Florida and Dr. Glenn Rohrer; University of Southern Mississippi and Dr. Timothy Rehner; Louisiana Public Health Institute and Dr. Eric Baumgartner; Administrators of the Tulane Educational Fund (d/b/a/ School of Public Health and Tropical Medicine and Dr. Maureen Lichtveld); and University of South Alabama and Dr. J. Steven Picou.

- not limited to documents and electronically stored information that relate to (a) oil, hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, (b) the dispersants used in the Response Activities, and (c) the Response Activities; and
- The Claims Administrator has now received Library Materials from BP, as well as from certain governmental agencies pursuant to request by applicable Freedom of Information Act laws.  The Claims Administrator shall publish such Library Materials to the Gulf Region Health Outreach Program Library.

The following activities will be undertaken in the near term in accordance with the Medical Settlement Agreement:

- The Claims Administrator will finalize the development of software associated with the Gulf Region Health Outreach Program Library and implement, maintain, and update annually this public web site.
- The Claims Administrator will continue to collect Library Materials from BP and other sources, and upon receipt, the Claims Administrator shall publish such Library Materials to the Gulf Region Health Outreach Program Library; and
- By May 1, 2013, the Claims Administrator will conduct its annual financial audit of each of the Outreach Project grantees and report the results of such audits to Medical Benefits Class Counsel ("Class Counsel") and BP.

## IX. Status of the Specified Physical Conditions Program

Since the last update, the following activities relating to the Specified Physical Conditions program have been undertaken in accordance with the Medical Settlement Agreement:

- Pursuant to Sec. V.C, the Claims Administrator has assigned claim numbers to and provided written notification of receipt of Proof of Claim Forms for an additional 1,564 submitted Proof of Claim Forms, for a total of 3,798 who have received Proof of Claim Forms notification;

- Correspondence relative to deficient Opt Out requests has been and continues to be sent to individuals who submit requests to Opt Out that do not contain the information and documentation set forth in Paragraph 29 of the Order Preliminary Approving the Medical Benefits Class Action Settlement (Rec. Doc. 6419) and Sec. XI.E of the Medical Settlement Agreement;
- Guidelines for qualification for financial hardship have been developed and incorporated into the claims review process;
- Procedures for classifying and managing claim deficiencies and omissions are being developed and incorporated into the claim review process;
- Procedures for informing claimants that they have omitted required information in their declaration are being developed and incorporated into the claims review process;[5]
- Procedures for addressing minor, incompetent and deceased Class Member claims have been developed and incorporated into the claim review process;
- Routine claims processing correspondence has been developed; and
- Claims review and processing procedures have been completed.

## X. Status of the Periodic Medical Consultation Program

The Periodic Medical Consultation Program will provide Medical Benefits Class Members with the opportunity to obtain periodic medical consultation visits. The following activities relating to the Periodic Medical Consultation Program have been undertaken in accordance with the Medical Settlement Agreement since the August 2012 status update:

- The Claims Administrator has selected prospective providers, taking into account each provider's location, capabilities to deliver the services under the Periodic Medical Consultation Program, accreditations, and other qualifications as required by Sec. VII of the Medical Settlement Agreement. The prospective network

---

[5] Class counsel and counsel for BP informed the Claims Administrator that he is authorized to inform claimants who submit declarations, pursuant to the Specified Physical Conditions Matrix, without the required information (1) that their declarations are incomplete; (2) the category of information that is missing from the declaration; and (3) the date by which they must submit a completed declaration.

providers are located within Zone A, Zone B, and other areas with expected high concentrations of Clean-Up Workers in Alabama, Florida, Louisiana, Mississippi, and Texas;

- To initiate the provider enrollment process, the Claims Administrator received approval from BP's Counsel and Class Counsel to (1) use the "Periodic Medical Consultation Provider Application" as a condition of being considered for participation in the Periodic Medical Consultation Program, and (2) the template "Provider Services Agreement," which must be executed by the provider and Claims Administrator, and approved by BP's Counsel and Class Counsel;

- The Claims Administrator has initiated the provider enrollment process by communicating with, and sending applications to, providers identified as meeting the Periodic Medical Consultation Program's credentialing and selection criteria.

- The Claims Administrator finalized the operating procedures to be followed for selecting, credentialing, and enrolling providers;

- The Claims Administrator established the operating procedures for reviewing the credentials and performance of each provider on an annual basis, as required by Sec. VII of the Medical Settlement Agreement;

- The Claims Administrator has received completed applications from prospective providers and is completing the process of credentialing, which includes determining whether the providers satisfy the qualifications under Sec. VII of the Medical Settlement Agreement, as applications are received;

- The Claims Administrator developed the processes and controls for claims adjudication, including how to handle provider bills for services, if any, that are not covered under the scope of the Periodic Medical Consultation Program;

- Pursuant to Sec. VII of the Medical Settlement Agreement, the Claims Administrator has developed a web portal to facilitate the process of scheduling medical consultation visits for Class Members; and

- The Claims Administrator drafted provider and Class Member correspondence, including an introduction to the Periodic Medical Consultation Program, annual benefits statement, explanation of benefits, written scheduling confirmations, and

reminders and other correspondence that will be utilized throughout the terms of the Periodic Medical Consultation Program.

The following activities will be undertaken in the near term in accordance with the Medical Settlement Agreement:

- As the Claims Administrator completes the credentialing and selection processes, providers that satisfy the program's criteria will be submitted to BP and Class Counsel for approval to be enrolled into the Periodic Medical Consultation Program and render services to Class Members;
- After the Claims Administrator receives BP's and Class Counsel's approval, the Claims Administrator will enter into a written contract with each provider and complete the provider enrollment process; and
- The Claims Administrator will complete development and implementation of the claims adjudication processes to enable timely and accurate payment of provider bills, and the Medical Benefits Class Member portal to facilitate online scheduling of appointments with providers.

## XI.   Status on Reporting

Pursuant to Sec. XXI.K of the Medical Settlement Agreement, the Claims Administrator is required to provide reports to the Parties reflecting the settlement status. As detailed in Sec. VI of this report, the following activities have been undertaken in accordance with the Medical Settlement Agreement:

- Weekly reports on Claims submission and Opt Outs received have continued to be provided to the Parties since the August 2012 status update; and
- Weekly calls with the Parties have continued to take place to assess the validity and potential class status of individuals who have submitted Opt Out requests.

Upon occurrence of the Effective Date, the Claims Administrator shall initiate monthly and annual reports pursuant to Sec. XXI.K(2-3) of the Medical Settlement Agreement.

## XII.     Status of Medicare Secondary Payer and Medicaid Compliance

The Medical Settlement Agreement requires the Claims Administrator to identify and resolve reimbursement claims or "liens" of governmental health plans, among others, that have provided injury-related care to Class Members who are eligible to receive benefits under the settlement.  To this end, the Claims Administrator is to effectuate a written agreement with CMS prior to the occurrence of the Effective Date that, among other things, (1) establishes repayment amounts or lien cap amounts for Specified Physical Conditions or an alternative conditional payment resolution mechanism, and (2) establishes reporting processes recognized by CMS as satisfying relevant reporting obligations.

A preliminary Global Modeling Agreement was reached with CMS on July 12, 2012, pursuant to which the Claims Administrator agrees to pursue a potential "global resolution" approach whereby the Claims Administrator will be responsible for identifying which Class Members who are determined to qualify for compensation for a Specified Physical Condition are Medicare beneficiaries, and resolving CMS' Medicare Secondary Payer ("MSP") recovery claims with respect to Fee for Service Medicare Part A and Part B items and services.  This global resolution approach will allow CMS and the Claims Administrator to resolve a large volume of MSP recovery claims based on values in relation to injury-specific categories.  It is anticipated that the amount to be paid to CMS as payment in full, and full and final satisfaction, of Medicare's interests with respect to the Released Claims for any particular Class Member will be derived as follows: i) an expert medical panel will determine the medically-accepted national standard of care for the treatment and management of each Specified Physical Condition; ii) the Claims Administrator's billing and coding professionals will determine the routine Medicare-covered costs associated with such standard of care for each Specified Physical Condition;

iii) the Claims Administrator will determine which Class Members receiving compensation for each Specified Physical Condition are Medicare-entitled; and iv) the Medicare-entitled Class Member's specific repayment amount will be calculated based on the timing of his or her entitlement to Medicare Program benefits (*i.e.*, before or after the occurrence of the Class Member's Specified Physical Condition), as well as Medicare-covered costs associated with the standard of care for the Class Member's Specified Physical Condition (as determined above). The Claims Administrator is working closely with CMS to reach final agreement as to the specific repayment amounts applicable to each Specified Physical Condition, and agreement that, with respect to Released Claims, the aggregate or "global" sum of all these specific repayment amounts shall satisfy all of Medicare's interests for Fee-for-Service Medicare Part A and Part B items and services furnished to those Medicare-entitled Class Member receiving compensation.

To this end, the Claims Administrator has provided CMS with relevant documentation, including a detailed summary of each of the settlement benefits, Court documents, and other reference materials. Additionally, the Claims Administrator has provided CMS with a proposed global repayment methodology demonstrating how Medicare's interests would be satisfied. While CMS is reviewing these materials, the Claims Administrator remains engaged in this process by responding to CMS' inquiries and providing requested information to CMS. In accordance with the Medical Settlement Agreement, the Claims Administrator is continuing to define and memorialize in writing all aspects of the to-be-agreed-upon final process and/or repayment amounts that will serve as payment in full, and full and final satisfaction, of Medicare's recovery rights. The Claims Administrator fully expects to obtain a finalized agreement with CMS that sets forth a specific dollar amount per compensated Specified Physical Condition that CMS will consider payment in full, and full and final satisfaction, of Medicare's

interests under the MSP laws relating to compensation to Medicare-entitled Class Members for Released Claims under the Settlement Agreement.

The process adopted in the Medical Settlement Agreement is the "state of the art" in resolution of MSP recovery claims and has been successfully utilized in such matters as the *Vioxx Product Liability Litigation*, MDL 1657-L (Eastern District Louisiana), and the class action settlement in *In re: OxyContin Product Liability Litigation*, Civil Action Number 02-CP-18-1756 (Court of Common Pleas, County of Dorchester, State of South Carolina). Courts have also taken judicial notice of the benefit of global resolution of Medicare's interests in settlement proceeds. For instance, Senior Judge Jack Weinstein reported regarding the Claims Administrator's work in the *Zyprexa* litigation, MDL 1596 (E.D.N.Y.), "[t]he settlement techniques utilized in the instant litigation may provide a model for handling Medicare and Medicaid in future mass actions on a uniform, national basis." *In re Zyprexa Products Liability Litigation*, 451 F.Supp.2d 458, 461 (E.D.N.Y. 2006). Such procedures have, in fact, become the model as the global resolution process has been utilized in connection with nearly every major MDL settlement program across the country.[6]

A global resolution program also provides many benefits to Class Members, including:

1. *Avoids Delays in Distributions.* By participating in a global resolution, tailored to each unique Specified Physical Condition category as described above, Class Members avoid the considerable delays normally associated with gathering medical claims histories from Medicare, and then reviewing such claims to identify often considerable unrelated claims. They would also avoid the enormous time delays associated with thousands of Class Members attempting to

---

[6] A complete list of all cases in which a global resolution program has been utilized is attached hereto as Exhibit A.

13

satisfy and discharge such obligations contemporaneously. Further, the global resolution approach anticipated by the Medical Settlement Agreement avoids the requirement that the Claims Administrator hold back a Medicare-entitled Class Member's entire award until the agency's claim is evaluated and satisfied in full.

2. *Satisfaction of All Reporting Requirements.* By participating in this global resolution program, Class Members would satisfy all requirements of the MSP statute and its accompanying regulations to open a tort recovery record with Medicare and to individually resolve associated repayment obligations.[7] Further, such participation would satisfy reporting obligations for responsible reporting entities under Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007.[8]

3. *Satisfaction of All Reimbursement Obligations.* While the final agreement with CMS has not been concluded, it is fully anticipated that by participating in this global resolution program, Class Members would obtain full and final satisfaction of any and all MSP reimbursement obligations resulting from Medicare Program (Traditional Fee-for-Service Part A and B) payments for medical items and services in connection with injuries that are released under the Medical Settlement Agreement from the first date of alleged exposure through the date of settlement. This uniform process meets the obligations set forth in the Settlement Agreement,

---

[7] 42 U.S.C. §1395y(b)(2); 42 C.F.R. § 411.22, 42 C.F.R. § 411.23, 42 C.F.R. § 411.24(g).

[8] 42 U.S.C. §1395y(b)(8) (requiring Responsible Reporting Entities (including liability insurance and self-insurance plans) to report to Medicare when they are involved in certain liability settlements, judgments, awards or other payments involving a Medicare-entitled beneficiary). For current reporting thresholds, *see also* Centers for Medicare & Medicaid Services, *MMSEA Section 111 Medicare Secondary Payer Mandatory Reporting Liability Insurance (Including Self-Insurance), No-Fault Insurance, and Workers; Compensation User Guide, Chapter III, Policy Guidance*, Section 6.4.3.1, pp. 30-31, Version 3.4, July 3, 2012.

as well as Class Member's legal obligation to protect Medicare's interest in any settlement payments.

4. *Ensures Medicare Coverage in the Future.* Regardless of the extent to which Class Members have relied on Medicare coverage in the past, this global resolution process would ensure that Medicare will not deny Class Members' coverage for any future medical expenses they might incur in connection with their alleged injuries at a later date for failure to satisfy his or her Medicare reimbursement obligation related to the settlement.

With regard to state Medicaid Programs, the Claims Administrator will verify directly with the Gulf States' Medicaid agencies which Class Members are, or have been, Medicaid beneficiaries in the respective Gulf States pursuant to the terms of the Medical Settlement Agreement to determine whether any state Medicaid agency made payments for injury-related medical items, services and/or prescription drugs. The Claim Administrator also will examine Proof of Claim Forms to identify Medicaid agencies outside the Gulf Region that may have reimbursement interests. For those Class Members verified as Medicaid beneficiaries, the Claims Administrator will secure medical payment claims histories from each appropriate Medicaid agency and audit each Class Member's claims history to help ensure that only those medical expenses associated the Class Member's compensable Specified Physical Condition are included in the final reimbursement or "lien" amount. If Class Members are current or past recipients of such Medicaid coverage, this formalized process ensures that Medicaid's reimbursement interest for injury-related care has been met. The process also ensures that those Class Members will not be denied future Medicaid benefits due to failure to resolve Medicaid's statutory rights to recover.

The Claims Administrator will continue to update the Court throughout the settlement process.

Respectfully submitted,

_____
Matthew L. Garretson, Esq.
Garretson Resolution Group, Inc.
Medical Benefits Settlement Claims Administrator

October 22, 2012

# EXHIBIT "A"

# **Cases in Which a Medicare Global Resolution Program**

# **Has Been Utilized**

- *In re: Avandia* Marketing, Sales Practices, and Product Liability Litigation, MDL Docket Number 1871 (United States District Court, Eastern District of Pennsylvania);

- *In re: Medtronic*, Inc. Sprint Fidelis Leads Products Liability Litigation, MDL Docket Number 1905 (United States District Court, District of Minnesota);

- *In re: Digitek* Products Liability Litigation, MDL Docket Number 1968, (United States District Court, Southern District of West Virginia);

- *In re: Seroquel* Products Liability Litigation, MDL Docket Number 1769 (United States District Court, Middle District of Florida);

- *In re: Prempro* Products Liability Litigation, MDL Docket Number 1507 (United States District Court, Eastern District of Arkansas);

- *In re: Vioxx* Products Liability Litigation, MDL Docket Number 1657 (United States District Court, Eastern District of Louisiana);

- *In re: Guidant* Corp. Implantable Defibrillators Products Liability Litigation, MDL Docket Number 1708 (United States District Court, District of Minnesota);

- *In re: Medtronic*, Inc. Implantable Defibrillators Products Liability Litigation, MDL Docket Number 1726, (United States District Court, District of Minnesota);

- *In re: OxyContin* Litigation, Civil Action Number 02-CP-18-1756 (Court of Common Pleas, County of Dorchester, State of South Carolina);

- *In re: Rezulin* Products Liability Litigation, MDL Docket Number 1348 (United States District Court, Southern District of New York);

- *In re: Gadolinium* Based Contrast Agents Products Liability Litigation, MDL Docket Number 1909 (United States District Court, Northern District of Ohio, Eastern Division);

- *In re: Bextra and Celebrex* Products Liability Litigation, MDL Docket Number 1699 (United States District Court, Northern District of California);

- *In re: Bausch & Lomb, Inc*, Contact Lens Solution Products Liability Litigation, MDL Docket Number 1785 (United States District Court, District of South Carolina);

- *In re: Ortho Evra* Products Liability Litigation, MDL Docket Number 1742 (United States District Court, Northern District of Ohio, Eastern Division); and

- *In re: Zyprexa* Products Liability Litigation, MDL Docket Number 1596 (United States District Court, Eastern District of New York).