# Exhibit 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * * * * * * * | MDL NO. 2179<br><br>SECTION: J<br><br>HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |
| BON SECOUR FISHERIES, INC.; FORT MORGAN REALTY, INC.; LFBP #1 LLC d/b/a GW FINS; PANAMA CITY BEACH DOLPHIN TOURS & MORE, LLC, ZEKE'S CHARTER FLEET, LLC; WILLIAM SELLERS; KATHLEEN IRWIN; RONALD LUNDY; CORLI GALLO; LAKE EUGENIE LAND & DEVELOPMENT, INC.; HENRY HUTTO; BRAD FRILOUX; JERRY J. KEE; JOHN TESVICH; and MICHAEL GUIDRY, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>BP EXPLORATION & PRODUCTION INC.; BP AMERICA PRODUCTION COMPANY; BP P.L.C.,<br><br>                Defendants. | | CIVIL ACTION NO. 12-970<br><br>SECTION: J<br><br>JUDGE BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

1

## SUPPLEMENTAL DECLARATION OF PROFESSOR GEOFFREY P. MILLER

I, Geoffrey P. Miller, declare as follows:

1. I am the Stuyvesant P. Comfort Professor of Law at New York University located in New York, New York. I have previously submitted a declaration in the above-titled action in connection with the Economic and Property Damages Settlement Agreement (the "Agreement").

2. That declaration, dated August 10, 2012, stated that nothing in the objections I had reviewed affected my opinions. It also reserved the right to revise my opinions based on further review.

3. I have now had an opportunity to examine and analyze all of the objections to the Agreement that were filed after my August 10, 2012 declaration and by the amended objection deadline of September 7, 2012. A thorough review of these objections reveals no reason to alter my opinions.

4. In the interest of brevity, I will confine my comments to objections which are arguably pertinent to the views set forth in my previous declaration. I will therefore address the following topics: (a) the class definition; (b) negative value claims; (c) differences in settlement benefits; (d) differences among class members; (e) subclasses; and (f) objections to the scope of the class release.

### A. Class Definition

5. The State of Louisiana, as a purported *amicus curiae* (as I am aware that the Court has held that the State of Louisiana lacks standing to object to the settlement), takes issue with the class definition in the Agreement. Its arguments are unpersuasive.

6. Louisiana notes that the class definition in the Agreement is nine pages long. Nothing in class action law or practice, however, imposes any limit on the number of words

2

contained in a class definition. Indeed, as discussed in my previous declarations, the specificity of definition is a virtue of the present settlement – not a basis for objection. By defining the class with precision, the Agreement provides clear notice to potential claimants as to who is and who is not a member of the class, thus reducing the potential for disappointment and the risk of subsequent litigation over the criteria for inclusion, as well as over which individuals and businesses will be bound by the class release.

7. Louisiana argues that the Economic and Property Damages Settlement class definition is faulty because "one would have to prove that he fit one of the damage categories to qualify as a class member; that is, prove his damages." Contrary to Louisiana's suggestion, this is not an objectionable "fail-safe" class definition that qualifies a person for membership in terms of the ultimate liability determination at trial.[1]

8. The whole concept of a "fail-safe" class grew up in the litigation class context and has little relevance to a settlement class, such as the present action, where the defendant's liability need not be established by class members in order to receive benefits under the settlement. In any event, the class definition in the Economic and Property Damages Settlement is not of the fail-safe variety, as it does not require any plaintiff to establish BP's liability in order to qualify for inclusion in the class. Instead, the references to damages categories are simply a requirement that class members have a claim of the type that the settling parties have agreed to compromise. Here, where the settlement does not require class members to establish the settling defendants' liability on such claims in order to be included in the class, there is nothing objectionable about such a requirement.

---

[1] As, for example, a class defined as "all persons who have valid claims against the defendant" in connection with some alleged violation of law.

3

9. Contradicting the State of Louisiana's argument that this settlement involves a fail-safe class, is an objection by Cobb Real Estate, Inc., and several other objectors. They complain that, under the settlement, "[c]ertain plaintiffs do not have to prove elements required for other plaintiffs to succeed on their claims" and argue that a settlement "may not be used to expand a class definition to include persons who cannot state any claim whatsoever." (Cobb Real Estate, Inc., Obj. at 3-4.) Like Louisiana's objection, this argument lacks merit as well, as the parties' ability to compromise disputed claims does not cease with respect to claims to which the defendant believes it has a strong defense. *See Sullivan v. D.B. Invs., Inc.*, 667 F.3d 273, 305 (3d Cir. 2011) (*en banc*) (affirming approval of class settlement; "Rule 23(b)(3) does not . . . require individual class members to individually state a valid claim for relief."). Rather than casting doubt on the settlement, the resolution of such claims (particularly in an uncapped settlement such as this) is a testament to the generous compensation it provides.

## B. Negative Value Claims

10. Another objection (asserted by objectors James H. Kirby, *et al.*; Samir Petro, *et al.*; James Saunders, *et al.*; and Hunter Armour, *et al.*) is that the class should not be certified because, given the large aggregate damages, the claims of class members are not "negative value" claims that are uneconomic to litigate on an individual basis. The aggregate size of the settlements, however, is not the measure of whether a particular claim has a negative value. Instead, the issue is the value of the claims on an individual rather than an aggregate basis. In that respect, class members' individual claims fall within a wide range of value. For example, I am advised that a number of very large award determinations (in excess of $1 million) have been made by the Court Supervised Settlement Program, and that BP has elected not to appeal them. At the same time, as set forth in my previous declarations, it is obvious that many class

4

members' claims are small in dollar terms, and thus that the class action procedure allows these parties to obtain a remedy in court which would not otherwise be available – an important consideration bearing on the superiority of a class action versus other available means for resolving the controversy.

### C. Differences in Settlement Benefits

11.     Several objectors (including the State of Louisiana; DCA LLC, *et al.*; and Cobb Real Estate LLC, *et al.*) complain that the recovery schedules contemplated in the settlements are arbitrary and capricious, in that they draw significant distinctions among class members who are similarly or nearly similarly situated.  This objection misconstrues the nature of class action settlements.

12.     Class action settlements inevitably make categorical distinctions among class members whose claims differ along qualitative dimensions.  Lines must be drawn if a settlement is to be allocated on a workable and fair basis.  A class action settlement is not objectionable merely because it draws lines, as long as the distinctions made reflect an informed effort to allocate settlement benefits across class members in reasonable proportion to their damages and the strength of their claims.  *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343 (S.D.N.Y. 2005) ("Settlement proceeds may be allocated according to the strengths and weaknesses of the various claims possessed by Class Members.") (citing *In re Holocaust Victim Assets Litig.*, 413 F.3d 183, 186 (2d Cir. 2001)); *Phemister v. Harcourt Brace Jovanovich, Inc.*, No. 77-39, 1984 WL 21981, at *7 (N.D. Ill. Sept. 14, 1984) (finding a proposed distribution fair and reasonable where different class members had claims of different strength).

13.     Nothing in the objections I have reviewed provides any reason to doubt the conclusion expressed in my initial declaration that the relief contemplated in the proposed settlement is allocated across class members in a reasonable, unbiased, and well-informed basis.

### D. Differences Among Class Members

14.     Some objectors (James H. Kirby, *et al.*; Samir Petro, *et al.*; James Saunders, *et al.*) assert that the settlement cannot stand in light of differences in class members' legal claims.[2] This argument misfires because it relies on an unrealistic and inaccurate conception of the class action settlement process.

15.     Many class actions involve class members with different legal claims, legal claims of different strength, or claims requiring different evidence or different levels of proof. As long as the case presents sufficient commonality of law or fact, the settlement reflects a rational distribution of benefits across class members, and there are no fundamental conflicts among class members, a settlement agreement is not improper merely because some class members have claims that differ in some manner from the claims of other class members. *See, e.g., Sullivan v. D.B. Invs., Inc.*, 667 F.3d 273, 305 (3d Cir. 2011) (*en banc*) (affirming approval of class settlement; "Rule 23(b)(3) does not . . . require individual class members to individually state a valid claim for relief" and the "question is not what valid claims can plaintiffs assert; rather, it is simply whether common issues of fact or law predominate."); *cf. Kohen v. Pac. Inv. Mgmt. Co., LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (Posner, J.) ("[A] class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable because at the outset of the class many of the members of the class may be unknown or, if they are known, still the facts bearing on their claims may be unknown.").

---

[2] For example, some class members have claims under the Oil Pollution Act ("OPA") whereas others have no claims under the OPA, but rely instead on principles of general maritime law.

6

16. Halliburton, similarly, asserts that factual as well as legal differences among class members' claims preclude certification of this case. In a 206-page declaration employing a battery of economic and statistical analyses, its proposed expert identifies a vast array of purported differences among class members. Based in part on this report, Halliburton argues that the settlement class constitutes a "super-class" of persons and entities with widely varying circumstances, claims, interests, and injuries. As an initial matter, Halliburton simply lacks any standing to advance this objection. As this Court made clear in its May 2, 2012 Preliminary Approval Order, Halliburton has not shown any form of legal prejudice that would give it standing to object as a nonsettling defendant. (Rec. Doc. 6418 at 17, n.18).

17. But Halliburton's objection also lacks substance. In any class action it is possible, if one takes a deep enough dive, to identify a myriad of differences among class members. At some level of detail, all claims display individual characteristics. But federal class action law does not call on the court to examine a settlement with a scanning electron microscope, nor does the presence of particular differences within the class negate the presence of overarching commonality across it. Thus, the appropriate perspective is a middle range in which the court is sensitive to individual differences, but also careful not to miss the forest of commonality for the trees of individual variation. The very detail and intricacy displayed in Halliburton's expert report reveals its weakness: If class action settlements can be defeated by expert analyses of this sort, such settlements would almost never be approved in the presence of a sufficiently well-financed objector with an interest in unearthing the individual characteristics within any class.

### E. Subclasses

18. Several objectors (including Halliburton) complain that the class representatives are insufficiently representative of the class or of certain subparts of the class and that subclasses are necessary. These objections are ill-founded.

19. There are no subclasses in this case. The Economic and Property Damages Settlement provides relief for a single, unitary class. It is true that the representative plaintiffs are not identical. Their differences, however, benefitted the class by helping to ensure that a wide range of interests were taken into consideration at the bargaining table – just as the diverse membership of the Plaintiffs' Steering Committee helped to ensure that the compromise ultimately achieved fairly represented the interests of all class members. Moreover, every named plaintiff represented the class as a whole. Nothing in the objections I have reviewed provides any basis to conclude that the specific characteristics of the representative plaintiffs had any prejudicial effect on the fairness of the settlement vis-à-vis other class members.

20. Likewise, there is no merit to the argument that separate class members should have been appointed to represent each and every conceivable sub-group in the class, including, for example, members in separate damages categories; members with and without general maritime claims; members who experienced physical impact of oil on their premises versus members who experienced only economic loss; and so on. Virtually every class action involves class members who are differently situated in a myriad of discrete ways. If sub-classing and separate representation were required for all such interests, class action litigation would be all but impossible.

8

### F. Release of Claims

21.     Several objectors complain that the settlement releases claims against BP without compensation in return (purported examples are claims for punitive damages). This objection misunderstands the nature and purposes of class action settlements. Class action settlements serve the socially valuable objective of achieving a definitive end to the litigation. To accomplish this goal of global peace, it is necessary and appropriate that the release cover a range of claims that were or could have been brought. *See, e.g., DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 311 (W.D. Tex. 2007); *In re OCA, Inc. Sec. & Deriv. Litig.*, No. 05-2165, 2008 WL 4681369, at *13 (E.D. La. Oct. 17, 2008). Indeed, it is even permissible to release claims that could not have been brought in the court where the settlement is filed. *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 386-87 (1996).

22.     Finally, there is no requirement that the settling parties specifically identify all the claims that are being released, as long as the general scope of the release is set forth with sufficient clarity (as is the case here). And there is certainly no requirement that the parties allocate the settlement consideration on a claim-by-claim basis. It would be both unworkable and unwise to demand that the parties specifically identify which element of the settlement consideration is attributable to the release of which released claim.

### Concluding Remarks

23.     Settlements are compromises, and it is in the nature of compromise that both parties accept an outcome that neither may have hoped for at the outset. It is, accordingly, not surprising that some plaintiffs may wish that BP had paid more compensation or offered greater benefits to class members. But the disappointed expectations of class members are not a basis for rejecting this settlement. Rather, the issue before the Court is whether the proposed settlement is fair, adequate and reasonable to the class given the facts and circumstances of the case.

24.     The objections I have reviewed draw on an unrealistic concept of class action settlements and have no foundation in law or practice. Accordingly, for the reasons set forth above, nothing in the objections I have reviewed provides any basis to alter the opinions previously expressed regarding the beneficial attributes of the Economic and Property Damages Settlement.

I declare under penalty of perjury that the foregoing analysis and opinions are true and correct.

Respectfully submitted,

*[signature]*

Geoffrey P. Miller
October 19, 2012