# Exhibit 14

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * * * * * * | MDL NO. 2179<br><br>SECTION J<br><br><br>HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

## SUPPLEMENTAL DECLARATION OF TRE' WHARTON

I, Edward Briggs Wharton III ("Tre' Wharton"), submit this declaration in support of the Joint Motion for Preliminary Approval of the Economic and Property Damages Settlement.  My declaration is based on personal knowledge and, if called to testify, I could testify to the matters set forth in this declaration.  I am providing this declaration in response to filings that have been made regarding the proposed Settlement.

*Background and Credentials*

1.  I attended college at Louisiana Tech University and earned a Bachelors of Science degree in wildlife conservation.  As part of my education, I studied plant taxonomy and wildlife ecology.  I have worked for over twenty-two years on wetland-related projects, primarily focusing on the Louisiana wetlands.  The types of wetland projects I have worked on include: wetland delineations and mapping, wetland mitigation, wetland assimilation feasibility assessment, wetland permitting, and wetland impact assessment, including evaluating the impacts of oil on wetlands.  I have worked with C-K Associates for approximately 11 years and I am currently the manager of C-K Associates' Ecological Team as well as a senior

project manager for biological and National Environmental Policy Act investigations.  For a more detailed explanation of my background, see ¶¶ 1-14 to my prior declaration and Exhibit A thereto, (Ex. 21 to MDL Doc. No. 7114).

### Materials Reviewed

2.  In addition to the materials described in my declaration filed August 13, 2012, I have considered all objections and other relevant filings pertaining to the property frameworks filed in response to BP Defendants' Motion for Final Approval of *Deepwater Horizon* Economic and Property Damages Settlement Agreement As Amended On May 2, 2012.[1] Included in the materials I reviewed are the declarations of Edwin W. Cake, Jr. (Doc. No. 167-19); Geoffrey C. Hazard, Jr. (Doc. No. 167-21; Ex. L to Doc. No. 183); James H. Kirby III (Doc. No. 167-18); Kenneth Edward Landrum, Ph.D. (Ex. 1 to Doc. No. 90); Brian D. Moore (Doc. No. 167-17); William R. Sawyer (Doc. No. 167-16); and Wilma Subra (Doc. No. 167-20).  Nothing in any of these materials changes my opinions, as set forth in my August 13, 2012 declaration.

3.  I have also reviewed documentation and data from post-Hurricane Isaac Rapid Assessments and follow-on standard surveys conducted by SCAT teams; articles about wetlands ecology; and SCAT weekly summaries.

### Post-Hurricane Isaac Site Evaluations

4.  I made a series of site visits to Louisiana wetlands by boat following Hurricane Isaac, on September 19, 20, and 21, 2012.  I re-visited the twenty-one sites I had surveyed in June 2012 and which I described in my original declaration of August 13, 2012.  During these site

---

[1]  Objections (and responses) to the *Deepwater Horizon* Economic and Property Damages Settlement Agreement As Amended On May 2, 2012 that were filed to the master docket for MDL 2179 (2:10-md-02179) were moved to a separate docket for objections, 2:10-cv-07777.  Unless otherwise indicated by "MDL Doc. No.," document numbers are to the objections docket.

visits, I got out of the boat at many of the sites to observe more closely; at others I pulled the boat up to the site. This boat tour was made during varying tide ranges that were for the most part either at falling tide or lower tide levels.

5.  I did observe impacts from Hurricane Isaac that were not related to oiling, mostly in the form of wind damage to vegetation and the apparent impacts of the prolonged inundation of salt water. These impacts resulted in a general browning of the leaves and in some instances an apparent loss of land. In addition, some of the vegetation was laid over, again an apparent result of the storm impacts.

6.  At one site, in Bay Batiste, I did observe sheen and light oiling on vegetation in the vicinity of a reported release of oil during or following Hurricane Isaac. I reviewed maps, site photographs, aerial photographs, and SCAT data following Hurricane Isaac that confirmed the release was not associated with the *Deepwater Horizon* spill. With the exception of this site, I did not observe any new oil.

7.  Even at sites with vegetation impacted by wind, saltwater damage, or prolonged inundation from Hurricane Isaac, I observed signs of vegetation recovery in the form of new shoots.

8.  Nothing I have observed post-Hurricane Isaac changes my August 13, 2012 opinions about the health and recovery of wetlands vegetation from the *Deepwater Horizon* spill.

9.  In addition, my post-Hurricane Isaac field observations and review of SCAT data lead me to conclude that characterizing post-Hurricane Isaac oiling as "heavy," "widespread," "region-wide," or as "a striking repeat of conditions found in August 2010," Sawyer Decl. ¶ 47 (Doc. No. 167-16), is exaggerated and inaccurate.

10. SCAT data reported October 6, 2012, shows that out of about 2,845 miles of marsh surveyed in Louisiana, 3.6% had any level of oil reported, with over 96% of those oiled areas

3

categorized as light, very light, or trace oiling.  Of all the miles of marsh surveyed in Louisiana, 0.1% remained as heavy or moderate oiling.

*Responses to Filings Made in Regard to the Economic and Property Damages Settlement*

11. One filing argues that I largely base my opinions on personal observations.  This is inaccurate.  As I described in my original declaration, I have reviewed the extensive and comprehensive data from the cooperatively conducted SCAT surveys and data from cooperative studies conducted under the NRDA, including Coastal Wetland Vegetation Assessment (CWVA) data, Shoreline/Vegetation NRD Pre-Assessment Data Collection Plan data, and Shoreline/Vegetation NRDA Rapid Shoreline Oiling Survey data, as well as relevant articles.  My site visits and personal observations confirm what these data show.

12. Some filings have cited Lin and Mendelssohn (2012) and/or Mendelssohn et al. (2012) regarding impacts to the wetlands associated with the *Deepwater Horizon* spill.  I have read these studies.  It is important to note that the Lin and Mendelssohn (2012) study was conducted approximately 7 months after MC252 oil made landfall on the Louisiana coast and focused on the Bay Jimmy area — "one of the most severely oiled coastal marsh regions." Qianxin Lin and Irving A. Mendelssohn, *Impacts and Recovery of the* Deepwater Horizon *Oil Spill on Vegetation Structure and Function of Coastal Salt Marshes in the Northern Gulf of Mexico*, ENVTL. SCI. & TECH., February 27, 2012, at B.  Heavy oiling impacted only small areas of the Louisiana marshes: at the maximum level of oiling, SCAT reported 3% of the approximately 2,845 miles of Louisiana marsh shoreline surveyed as having heavy oil.  The October 6, 2012 reports from SCAT indicate that 0.05% of the marsh miles surveyed remain as heavily oiled.  Also, importantly, Lin and Mendelssohn found that the spill primarily impacted only the fringe areas of these coastal salt marshes — that is, they found that the oil did not penetrate into the interior wetlands.  *Id.* at E.

4

13. Since the time of that study — based on SCAT, the NRDA CWVA study, personal observations, and peer-reviewed literature — there has been a continuing, demonstrated reduction in oiling classification and the marsh vegetation has undergone continuous recovery in most areas. Lin and Mendelssohn also describe vegetation recovery in some oiled areas, specifically in moderately oiled areas. *Id.* at F. My observations included site visits to twenty-one sites approximately two years after MC 252 oil made landfall. This includes areas classified as heavily oiled, including the location in Bay Jimmy for which one filing attached photographs. Some of the areas I visited are in the same region as the heavily oiled study sites Lin and Mendelssohn observed 7 months after landfall. As described in my original declaration and depicted in the photographs attached thereto, vegetation recovery is evident.

14. Literature also supports my opinions about the resilience of wetlands since the *Deepwater Horizon* spill. For instance, DeLaune and Wright, in *Projected Impact of Deepwater Horizon Oil Spill on U.S. Gulf Coast Wetlands*, state, "The long-term effects of the oil spill on marsh vegetation and the wetland ecosystem, as demonstrated by this review of the literature, are minimal and should wane through time due to the resiliency of these wetland ecosystems." 75 SOIL SCI. SOC. AM. J., 1602, 1611 (2011). Similar to my observations, DeLaune and Wright note that "oil-impacted vegetation is regenerating, with new shoots appearing in areas of heavily oiled marshes." In addition, a study cited in a filing by one commenter on the Settlement documented "full recovery of marsh plant cover occurring sometime between October 2011 and January 2012," at oiled sites surveyed in Louisiana, Brian R. Silliman, et al., *Degradation and Resilience in Louisiana Salt Marshes after the BP—Deepwater* Horizon *Oil Spill*, PROC. NAT'L ACAD. SCI. U.S. AM., June 25, 2012, at 3.

15. There are objections that coastal wetlands outside Louisiana (*i.e.*, parcels on shoreline with an Environmental Sensitivity Index ("ESI") of 10 as determined by the National Oceanic and Atmospheric Administration) should be included in the Wetlands Real Property Framework, instead of the Coastal Real Property Framework. *See, e.g.*, Doc. No. 183.

16. Based on my experience and the relevant scientific literature, there are several key differences between the Louisiana coastal wetlands, and coastal wetland areas in Mississippi, Alabama, and Florida.[2] First, the Louisiana coastal wetlands impacted by the *Deepwater Horizon* spill are predominantly open to large bays and the Gulf of Mexico and lack the protective and stabilizing features of nearby and more prominent barrier islands found in other Gulf States. Second, the Louisiana coastal wetlands differ in general from coastal wetland areas in other Gulf States in soil composition and geomorphology. Third, there are differences in dominant vegetation species composition between the Louisiana coastal

---

[2] *See generally* LEONARD M. BAHR, JR. ET AL., ECOLOGICAL CHARACTERIZATION OF THE MISSISSIPPI DELTAIC PLAIN REGION: A NARRATIVE WITH MANAGEMENT RECOMMENDATIONS (U.S. Fish & Wildlife Serv., FWS/OBS-82/69, 1983); THE ECOLOGY OF BARATARIA BASIN, LOUISIANA: AN ESTUARINE PROFILE (William H. Conner & John W. Day, Jr. eds., U.S. Fish & Wildlife Serv., Biological Report 85(7.13), 1987); JAMES G. GOSSELINK, THE ECOLOGY OF DELTA MARSHES OF COASTAL LOUISIANA: A COMMUNITY PROFILE (U.S. Fish & Wildlife Serv., FWS/OBS-84/09, 1984); ROBERT J. LIVINGSTON, THE ECOLOGY OF THE APALACHICOLA BAY SYSTEM: AN ESTUARINE PROFILE (U.S. Fish & Wildlife Serv., FWS/OBS-82/05, 1984); JUDY P. STOUT, THE ECOLOGY OF IRREGULARLY FLOODED SALT MARSHES OF THE NORTHEASTERN GULF OF MEXICO: A COMMUNITY PROFILE (U.S. Fish & Wildlife Serv., Biological Report 85(7.1), 1984); U.S. FISH & WILDLIFE SERV., FWS/OBS-78/08, THE CHENIER PLAIN ECOSYSTEM: AN ECOLOGICAL CHARACTERIZATION (1979); Robert H. Baumann et al., *Mississippi Deltaic Wetland Survival: Sedimentation Versus Coastal Submergence*, 224 SCI. 1093 (1984); Louis D. Britsch & Joseph B. Dunbar, *Land Loss Rates: Louisiana Coastal Plain*, 9 J. COASTAL RES. 324 (1993); Mark E. Boyer, *The Effect of Long-Term Marsh Management on Land-Loss Rates in Coastal Louisiana*, 21 ENVTL. MGMT. 97 (1997); John W. Day, Jr. et al., *The Mississippi Delta: System Functioning, Environmental Impacts and Sustainable Management*, *in* ENVIRONMENTAL ANALYSIS OF THE GULF OF MEXICO 533 (Kim Withers & Marion Nipper eds., 2004); John W. Day, Jr. et al., *Pattern and Process of Land Loss in the Mississippi Delta: A Spatial and Temporal Analysis of Wetland Habitat Change*, 23 ESTUARIES & COASTS 425 (2000); R.D. DeLaune et al., *Peat Collapse, Ponding and Wetland Loss in a Rapidly Submerging Coastal Marsh*, 10 J. COASTAL RES. 1021 (1994); D. Elaine Evers et al., *Wetland Loss Dynamics in Southwestern Barataria Basin, Louisiana (USA), 1945-1985*, 2 WETLANDS ECOLOGY & MGMT. 103 (1992); Robert A. Morton et al., *Causes of Hot-Spot Wetland Loss in the Mississippi Delta Plain*, 10 ENVTL. GEOSCIENCES 71 (2003); J.A. Nyman et al., *Wetland Soil Formation in the Rapidly Subsiding Mississippi River Deltaic Plain: Mineral and Organic Matter Relationships*, 31 ESTUARINE, COASTAL & SHELF SCI. 57 (1990); Shea Penland & John R. Suter, *The Geomorphology of the Mississippi River Chenier Plain*, 90 MARINE GEOLOGY 231 (1990); Shea Penland et al., *Transgressive Depositional Systems of the Mississippi Delta Plain: A Model for Barrier Shoreline and Shelf Sand Development*, 58 J. SEDIMENTARY PETROLOGY 932 (1988).

wetlands and coastal wetland areas in other northern Gulf States.  Fourth, the subsidence rate

is greater than coastal wetland areas in other Gulf States, specifically in the Mississippi

Deltaic Plain.  This results in some coastal wetlands within Louisiana experiencing a higher

degree and duration of flooding compared to coastal wetlands in other Gulf States.  Fifth, the

Louisiana coastal wetlands are predominantly characterized as large Deltaic or Chenier

plains as opposed to the smaller delta formations and coastal plain fringe wetlands that are

predominantly found east of Louisiana.

17. I am also familiar with Grand Isle, and unlike Louisiana's remaining barrier islands, Grand

   Isle is predominantly dedicated to residential, tourism, industrial, and commercial use.

18. The reported oiling in Louisiana coastal wetlands was more extensive than oiling reported in

   the coastal wetlands of other Gulf States.  Based on SCAT maximum oiling data and ESI

   codes in the SCAT database, Louisiana coastal wetlands account for approximately 84 miles

   of heavily oiled coastal wetlands shoreline — 99.9% of all coastal wetlands shoreline where

   heavy oiling was observed after the spill.  In contrast, not a single coastal wetland property in

   Florida was ever observed by SCAT as oiled.  There was no heavy oiling observed by SCAT

   in any Alabama coastal wetlands shoreline, and only .07 miles of coastal wetlands shoreline

   were observed as heavily oiled in Mississippi.  Approximately 465 miles of Louisiana coastal

   wetlands shoreline were oiled according to SCAT observations, compared to approximately

   24 miles of coastal wetlands shoreline in all other Gulf States combined.

19. In my opinion, the differences described herein provide a reasonable basis for distinguishing

   between Louisiana wetlands in the Wetlands Framework and coastal wetlands in the Coastal

   Framework.

20. In contrast to what has been stated in some of the filings regarding the Settlement, I have not been asked to evaluate natural resource damages to the wetlands. Rather, I have evaluated the Compensation Framework for Wetland Real Property Claims in light of what we know today and what we can expect in the future about the state of the wetland areas outlined in the Wetlands Real Property Claim Zone map. From extensive data review and observations, I have assessed the Wetlands Framework in the context of the private claims from eligible class members that would be made under that framework. From that standpoint, I believe, as I stated in my original declaration, that the Compensation Framework for Wetlands Real Property Claims is fair and adequate.

21. My opinions have not changed regarding the status of the wetlands since my August 13, 2012 declaration. In fact, they are further supported by the additional observations I have made and additional data I have reviewed. Although there were impacts from the spill to the wetlands, wetland vegetation in areas that were impacted continues to recover.

I declare under penalty of perjury that the foregoing is a true and correct statement of my opinions and analysis.

Date:  October 21, 2012

Edward Briggs Wharton III

8