# Exhibit 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179<br><br>SECTION: J<br><br>HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |
| Plaisance, *et al.*, individually and on behalf of the Medical Benefits Settlement Class,<br><br>               Plaintiffs,<br>v.<br>BP Exploration & Production Inc., *et al.*,<br><br>               Defendants. | CIVIL ACTION NO. 12-CV-968<br><br>SECTION: J<br><br>HONORABLE CARL J. BARBIER<br><br>MAGISTRATE JUDGE SHUSHAN |

## SUPPLEMENTAL DECLARATION OF PROFESSOR GEOFFREY P. MILLER

I, Geoffrey P. Miller, declare as follows:

    1.    I am the Stuyvesant P. Comfort Professor of Law at New York University located in New York, New York. I have previously submitted a declaration in the above-titled action in connection with the Medical Benefits Class Action Settlement Agreement (the "Agreement").

1

2. That declaration, dated August 10, 2012, stated that nothing in the objections I had reviewed affected my opinions and conclusions. It also reserved the right to revise my opinions based on further review.

3. I have now had an opportunity to examine and analyze all of the objections to the Agreement that were filed after my August 10, 2012 declaration and by the amended objection deadline of September 7, 2012. A thorough review of these objections reveals no reason to alter my opinions.

4. In the interest of brevity, I will confine my comments to objections which are arguably pertinent to the views set forth in my previous declaration. I will address the following topics: (a) class definitions; (b) individualized damages; (c) differences in settlement benefits; (d) differences among class members; (e) objections to the typicality of class members; (f) objections to the adequacy of representation; and (g) objections to the scope of the release.

## Class Definitions

5. The State of Louisiana, as a purported *amicus curiae* (as I am aware that the Court has held that the State of Louisiana lacks standing to object to the settlement), takes issue with the class definition in the Agreement. These arguments are unpersuasive.

6. Louisiana criticizes the Medical Benefits Settlement Class definition on the ground that to be included in the class, certain persons (Zone A Residents) must have developed one or more specified physical conditions which arose out of exposure to substances in connection with the *Deepwater Horizon* Incident or the cleanup efforts that followed. Contrary

to Louisiana's suggestion, this is not an objectionable "fail-safe" class definition that qualifies a person for membership in terms of the ultimate liability determination at trial.[1]

7.  The whole concept of a "fail-safe" class grew up in the litigation class context and has little relevance to a settlement class, such as the present action, where the defendant's alleged liability need not be established by class members in order to receive compensation and benefits under the settlement. In any event the class definition in the medical settlement is not of the fail-safe variety. It does not require any plaintiff to establish BP's liability in order to qualify for inclusion in the class. Instead, the reference to a physical condition is simply the functional equivalent of a requirement, found in many class action settlements, that class members establish that they have suffered harm in order to qualify for relief. *See, e.g., Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012) (class definition is appropriate where "[t]he criteria referenced in the class definition are objective and are not necessarily determinative of the ultimate issue of liability"); *see also id.* at 538 (class definition that "included both those entitled to relief and those not" was proper and avoided problem of an impermissible "fail-safe" class); *Union Asset Management Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639-40 (5th Cir. 2012) (approving definition that included those who purchased common stock and were "damaged thereby"; this "language is routine in class definitions"), *pet. for cert. denied* (Oct. 1, 2012); *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597 (E.D. La. 2006) (court found appropriate a class definition that included a geographic area including individuals who were reasonably affected by the spill). There is nothing objectionable about such a requirement.

---

[1] As, for example, a class defined as "all persons who have valid claims against the defendant" in connection with some alleged violation of law.

3

### Individualized Damages

8.      Some objectors (Halliburton and Sturdivant) assert that this case may not be certified, even for settlement purposes, given allegedly large differences in individual class member damages claims. However, virtually all class actions present some differences among class members on the issue of damages. The need to ascertain individual damages does not, in itself, defeat the requirement that the common issues predominate over the individual issues; otherwise virtually no class action could be certified. *See, e.g., In re Dell Inc.*, No. A-06-CA-726-SS, 2010 WL 2371834, at *3 (W.D.Tex. June 11, 2010), *aff'd, Union Asset Management Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012), *pet. for cert. denied* (Oct. 1, 2012) (approving class settlement and rejecting objector's argument that need for individualized damages determinations defeated class certification: "One objector argues the last clause of this definition is too imprecise, and will essentially require a mini-trial to determine whether each potential class member was damaged. However, the fact some claims may require some individualized analysis is not fatal to commonality"); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624-25 (5th Cir. 1999) (class members' common claims for negligence under the Jones Act and for operating an unseaworthy vessel, and "the common issues pertaining to these theories of liability—i.e., the class members' status as Jones Act seamen, the negligence of [the defendant], and the unseaworthiness of the [vessel]" were "independently sufficient to establish commonality"; because the commonality requirement was satisfied, it was "irrelevant whether the class members uniformly allege damages from second-hand smoke."); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 678 F.3d 409, 419 (6th Cir. 2012) ("[T]here need only be one question common to the class[,]" . . . and "[n]o matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of

4

liability tried as a class action.") (quoting *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)); *Allapattah Servs, Inc.. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) ("[N]umerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate.").

9. Even litigation classes are often certified even though it will be necessary, in a settlement or at trial, to ascertain the damages of each individual class member. *See Mullen*, 186 F.3d at 624-25; *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 678 F.3d at 421. In the context of a settlement class – such as the present one – the inquiry into predominance is simplified still further because there is a clear and comprehensive Specified Physical Conditions Matrix that employs objective standards to determine individual recoveries. This Matrix clearly demonstrates that individualized issues of damages do not predominate over the common issues being resolved by the settlement.

## Differences in Settlement Benefits

10. Several objectors (Smith Stag, Becnel, Sturdivant) complain that the recoveries under the Matrix are arbitrary and capricious, in that they draw allegedly significant distinctions among class members who are similarly or nearly similarly situated. This objection misconstrues the nature of class action settlements.

11. Class action settlements inevitably make categorical distinctions among class members whose claims differ along qualitative dimensions. Lines must be drawn if a settlement is to be allocated on a workable and fair basis. A class action settlement is not objectionable merely because it draws lines, as long as the distinctions made reflect an informed effort to allocate settlement benefits across class members in reasonable proportion to their damages and the strength of their claims. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343

5

(S.D.N.Y. 2005) ("Settlement proceeds may be allocated according to the strengths and weaknesses of the various claims possessed by Class Members.") (citing *In re Holocaust Victim Assets Litig.*, 413 F.3d 183, 186 (2d Cir. 2001)); *Phemister v. Harcourt Brace Jovanovich, Inc.*, No. 77-39, 1984 WL 21981, at *7 (N.D. Ill. Sept. 14, 1984) (finding a proposed distribution fair and reasonable where different class members had claims of different strength). Here, for purposes of compensation, the medical settlement draws lines based on the availability of proof, an individual's status as a cleanup worker or resident, and whether the claimant has an acute or chronic physical condition. These are precisely the types of distinctions that are appropriate in a class settlement.

12. Nothing in the objections I have reviewed provides any reason to doubt the conclusion expressed in my initial declaration that the relief contemplated in the proposed settlements is allocated across class members on a reasonable, unbiased, and well-informed basis.

### Differences Among Class Members

13. Some objectors (Halliburton, the State of Louisiana, and Sturdivant) assert that the settlement cannot stand in light of differences in class members' legal claims. This argument misfires because it relies on an unrealistic and inaccurate conception of the class action settlement process.

14. Many class actions involve class members with different legal claims, legal claims of different strength, or claims requiring different evidence or different levels of proof. As long as the case presents sufficient commonality of law or fact, the settlement reflects a rational distribution of benefits across class members, and there are no fundamental conflicts among class members, a settlement agreement is not improper merely because some class

members have claims that differ in some manner from the claims of other class members. *See, e.g., Mullen,* 186 F.3d at 620, 624-25; *Sullivan v. D.B. Invs., Inc.,* 667 F.3d 273, 305 (3d Cir. 2011) (*en banc*) (affirming approval of class settlement; "Rule 23(b)(3) does not . . . require individual class members to individually state a valid claim for relief" and the "question is not what valid claims can plaintiffs assert; rather, it is simply whether common issues of fact or law predominate."); *cf. Kohen v. Pac. Inv. Mgmt. Co., LLC.,* 571 F.3d 672, 677 (7th Cir. 2009) (Posner, J.) ("[A] class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable because at the outset of the class many of the members of the class may be unknown or, if they are known, still the facts bearing on their claims may be unknown.").

15. Halliburton, similarly, asserts that factual as well as legal differences among class members' claims preclude certification of this case.[2] In a 61-page declaration employing a battery of economic and medical statistical analyses, its purported expert (an economist and financial analyst) identifies a vast array of alleged differences among class members. Based in part on this report, Halliburton argues that the case lacks the commonality and predominance required for certification as a class action.

16. Halliburton's objection lacks substance. In any class action it is possible, if one takes a deep enough dive, to identify a myriad of differences among class members. At some level of detail, all claims display individual characteristics. But federal class action law does not call on the court to examine a settlement with a scanning electron microscope. The appropriate perspective is a middle range in which the court is sensitive to individual differences but also careful not to miss the forest of commonality in the trees of individual variation. The very detail

---

[2] The Court has already ruled that Halliburton lacks standing to object since it is not a member of the settlement class. *See* Rec. Doc. 7038 at 2 (concluding that the proposed settlements "will in no way affect any procedural or substantive rights of Halliburton").

and intricacy displayed in Halliburton's expert report reveals its weakness: if class action settlements can be defeated by expert analyses of this sort, such settlements would almost never be approved in the presence of a sufficiently well-financed objector.

### Class Representatives

17. Several objectors (Halliburton, the State of Louisiana, and Sturdivant) complain that the class representatives are insufficiently representative of the class or of certain subparts of the class. These objections are ill founded.

18. There are no subclasses in this case. The medical settlement provides relief for a single, unitary class. It is true that the representative plaintiffs are not identical. But any differences were potentially beneficial as a way of helping to ensure that a wide range of interests were taken into consideration at the bargaining table — just as the diverse membership in the Plaintiffs' Steering Committee helped ensure that the compromise ultimately achieved fairly represented the interests of all class members. Moreover, every named plaintiff represented the class as a whole. Nothing in the objections I have reviewed provides any basis to conclude that the specific characteristics of the representative plaintiffs had a prejudicial effect on the fairness of the settlement vis-à-vis other class members.

19. Likewise, there is no merit to the argument that separate class members should have been appointed to represent each and every conceivable sub-group in the class, including, for example, members in each acute and chronic Specified Physical Condition category; members who may have been exposed only to oil and those who may have been exposed to a mixture of oil and dispersants; cleanup workers and coastal or wetlands residents; and so on. Virtually every class action involves class members who are somewhat differently situated in a

myriad of discrete ways. If sub-classing and separate representation were required for all such interests, class action litigation would be all but impossible.

### Adequacy of Representation

20. Certain objectors reframe their objections to the class representatives in the guise of a challenge to the adequacy of representation. These arguments also fail to persuade, and for the same reason. Differences among class representatives, to the extent they exist at all, do not destroy adequacy of representation unless they reflect a disabling conflict of interest or result in an intrinsic incapacity to provide fair representation for the class as a whole. *See, e.g., Mullen*, 186 F.3d at 625-26 ("Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests."); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 347 (3d Cir. 2010) ("The fact that the settlement fund allocates a larger percentage of the settlement to class members with [higher value claims] does not demonstrate a conflict between groups. Instead, the different allocations reflect the relative value of the different claims."); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1146 (8th Cir. 1999) ("If the objectors mean to maintain that a conflict of interest requiring subdivision is created when some class members receive more than other class members in a settlement, we think that the argument is untenable. It seems to us that almost every settlement will involve different awards for various class members."). Nothing in the objections I have reviewed provides any reason to believe that the class representatives fell short in these respects.

21. Moreover, the adequacy of class counsel is a crucial consideration as regards adequacy of representation. As noted in my previous declaration, the Plaintiffs' Steering Committee comprises some of the most experienced plaintiffs' class action attorneys in the

United States. Nothing in the objections I have reviewed provides any reason to doubt that these attorneys provided excellent representation to both the class as a whole and to all relevant interests within it.

## Release of Claims

22. Several objectors (Sturdivant, Smith Stag, Becnel, Nexsen Pruet, Brown) complain that the settlement releases claims against BP without compensation in return (purported examples are claims for punitive damages or alleged "past" exposures that are not covered by the Specific Physical Conditions Matrix). This objection misunderstands the nature and purposes of class action settlements. Class action settlements serve the socially valuable objective of achieving a definitive end to the litigation. To accomplish this goal of global peace, it is necessary and appropriate that the release cover a range of claims that were or could have been brought. *See, e.g., DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 311 (W.D. Tex. 2007); *In re OCA, Inc. Sec. & Deriv. Litig.*, No.05-2165, 2008 WL 4681369, at *13 (E.D. La. Oct. 17, 2008). Indeed, it is even permissible to release claims that could not have been brought in the court where the settlement is filed. *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 386-87 (1996).

23. Finally, there is no requirement that the settling parties specifically identify all the claims that are being released, as long as the general scope of the release is set forth with sufficient clarity (as is the case here). And there is certainly no requirement that the parties allocate the settlement consideration on a claim-by-claim basis. It would be both unworkable and unwise to demand that the parties specifically identify which element of the settlement consideration is attributable to the release of which released claim.

24. Similarly, the spouses of some objectors complain that the Settlement Agreement should compensate them for their loss-of-consortium claims. As with others outside the Class, these spouses have no standing to object to the Settlement. Furthermore, the settling parties did not agree to include such claims, and thus these objections are merely an inappropriate attempt to negotiate different terms than those to which the parties agreed. The Settlement does not release spouses' consortium claims, and hence those claims remain governed by applicable law.

25. The Sturdivant Objectors argue that the Back-End Litigation Option's election-of-remedy provision is unfair because a claimant loses any claim for future-manifested injuries under the Back-End Litigation Option if he or she files a claim for those injuries, even if unsuccessful, under workers' compensation law or the Longshore and Harbor Workers' Compensation Act. But like all the provisions in the Agreement, both sides were entitled to compromise this issue. In particular, BP agreed that in a Back-End Litigation Option Lawsuit, it will not assert any defense based on exclusivity of remedies under workers' compensation law or the Longshore and Harbor Workers' Compensation Act. In exchange, the Class Members may not attempt to litigate later-manifested claims under both the workers' compensation laws and the Back-End Litigation Option.

## Concluding Remarks

26. Settlements are compromises, and it is in the nature of compromise that both parties accept an outcome that neither may have hoped for at the outset. It is, accordingly, not surprising that some plaintiffs may wish that BP had paid more compensation or offered greater benefits to class members. But the disappointed expectations of some class members are not a basis for rejecting the medical settlement. Rather, the issue before the Court is whether the

proposed settlement is fair, adequate and reasonable to the class given the facts and circumstances of the case.

27. The objections I have reviewed draw on an unrealistic concept of class action settlements and have no foundation in law or practice. Accordingly, for the reasons set forth above, nothing in the objections I have reviewed provides any basis to alter the opinions previously expressed regarding the beneficial attributes of the Medical Benefits Class Action Settlement.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

*[signature]*

Geoffrey P. Miller
October 22, 2012