**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG § | | MDL-2179 |
| "DEEPWATER HORIZON" § | | |
| in the GULF OF MEXICO, on § | | |
| APRIL 20, 2010 § | | SECTION "J" |
| § | | |
| THIS DOCUMENT RELATES TO: § | | JUDGE BARBIER |
| § | | MAG. JUDGE SHUSHAN |
| *10-cv-3059 and 11-cv-0516* § | | |

*******************************************************************************

**MEMORANDUM IN SUPPORT OF MOTION REQUESTING
DISCOVERY AND TRIAL SETTING ON CERTAIN OF THE
STATE OF LOUISIANA'S 2010 ECONOMIC LOSS CLAIMS UNDER OPA**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, the State of Louisiana through James D. "Buddy" Caldwell, Louisiana Attorney General ("Louisiana" or "State"), who respectfully requests that this Honorable Court set a targeted discovery schedule and trial date for a subset of the State's presented claims for its 2010 economic losses under the Oil Pollution Act ("OPA"). The State also requests that these OPA claims proceed before a jury as provided for by the Seventh Amendment of the United States Constitution. To allow for the requested relief, the State requests that this Court specifically except this Motion from the continuance ordered in Pre-Trial Order No. 15. [Rec. Doc. 676]. For the reasons below, the State submits that this Motion should be granted.

**I.   INTRODUCTION**

In the first two-and-a-half years of this MDL, the District Court largely stayed all governmental claims. While the State has not been permitted to propound discovery, BP has, under the current paradigm, been permitted to propound extensive discovery upon the State at

great expense.[1] This has emboldened BP to the point that it is simply ignoring its legal obligations to pay interim claims under OPA. Because proceedings on damages resulting from the *Deepwater Horizon* oil spill are stayed, Louisiana essentially has no recourse through the legal process. Fundamental fairness requires that Louisiana be permitted to advance its claims. Obligating BP to resolve the economic loss damages suffered by Louisiana, a claim that the State has formally presented to BP, would provide significant assistance to the State and would facilitate moving important portions of this extensive litigation towards an end.

## II.   BACKGROUND

The State of Louisiana fully presented its claims for certain 2010 economic losses to BP in February of 2012, at which time it provided back-up documentation for such claims along with additional materials that BP requested.[2] BP cannot contest these facts about presentment. Following the State's presentment, BP failed to act within ninety days relative to each and every 2010 economic loss claim. Under OPA, these cases are thus ripe for judicial review.

Attorney General Caldwell made a verbal request for a trial on the State's 2010 economic loss claims in Chambers at the April 2012 Liaison Status Conference. The Court asked BP and the State to make simultaneous filings under seal regarding the State's request. The State and BP submitted their written responses to this Court on May 15, 2012. In July, Attorney General Caldwell requested that this Court permit targeted discovery on certain of the State's presented claims. General Caldwell and a number of other attendees of the July Liaison Conference believed that the Court instructed BP to cooperate in working out a discovery plan specific to the

---

[1] To date, the State has expended over $5 million in connection with Phase 1 and 2 discovery obligations, not including review for privilege and relevance.
[2] A large portion of this data is publicly available on the internet through the Louisiana Department of Revenue.

State's claims. When the State contacted BP, BP claimed the Court had said no such thing.[3] At the September 2012 Liaison Conference, where Louisiana re-urged the issue, the Court ultimately denied the State's request in light of BP's argument that post-2010, the State may have benefitted from the disaster, and after an analysis of the State's "net losses," Louisiana may owe BP money.[4]

BP's position is nowhere supported by the facts, case law or OPA, which only requires a claimant present a claim. OPA expressly provides for and requires that Responsible Parties under the Act move swiftly on asserted claims, even those for interim payments. If a claim is denied or not acted upon within ninety days, the claimant may sue.[5] A willful polluter may not re-write that claim or create an off-set. A claimant has no obligation to present claims for subsequent damages. BP's assertion that payment must wait until all future economic losses have been presented is simply incorrect. Further, nothing in the text of OPA provides for a calculation of net losses. Therefore, BP's arguments do not support the denial of the State's discovery request. Accordingly, the State's request for discovery and a trial date related to its 2010 economic loss claims should be granted.

## III.   ARGUMENT

The State's primary goal is to be made whole sooner rather than later, while minimizing any undue burden on the Court. A firm trial date for a subset of the State's lost revenue damages would greatly assist this process. The State believes that the results of a narrowly focused two-

---

[3] *See* Letter from Andrew Langan, counsel for BP, to Magistrate Judge Shushan (Sept. 11, 2012) (Exhibit 1).
[4] Attached hereto is BP's letter to the City of Gulfport asserting that the company is not obligated to pay for future losses. BP cannot have it both ways. More important, if BP is owed money for helping Louisiana with this avoidable disaster, it should want to move swiftly to protect its shareholders' interests. Letter from Geir Robinson, Vice president of Claims, BP Gulf Coast Restoration Organization, to Michael Liu, City of Gulfport (Dec. 13, 2011) (Exhibit 2); *see also* Letter from Andrew Langan, counsel for BP, to Magistrate Judge Shushan (Sept. 11, 2012) (attempting to explain BP's "net loss" theory) (Exhibit 1).
[5] 33 U.S.C. §2713(c).

3

week test case would aid the parties in resolving the remainder of their differences and advance the overall goals of this MDL. This trial would also provide guidance to other state and local governments, as well as other parties, on a variety of OPA issues within this MDL, such as presentment, deepwater drilling suspension defenses, and other legal issues.[6]

### A. A Trial Setting on Certain 2010 Economic Losses is Essential for the Economic Health of the State.

The State's 2010 economic losses resulting from the *Deepwater Horizon* oil spill are substantial. The State's approximately 2010 lost revenue claim exceeds $1 billion and includes the following categories of loss:

- Income (Corporate & Individual) Tax
- Sales Tax
- Corporate Franchise Tax
- Mineral Royalties & Severance Tax
- OCS Oil & Gas Revenues
- Rentals, Bonus & Override Royalties
- Tobacco Tax
- Fiduciary Tax

- Gasoline & Inspection Fees
- Special Fuels & Inspections Fees
- High Alcoholic Content (Liquor)
- Low Alcoholic Content (Beer)
- Inspection & Supervision Fee
- LA Stadium of Expositions District
- NOLA Exhibit Hall Authority
- Slots at the Track

All of these losses are evident from the publically available records of the Louisiana Department of Revenue, except gaming monies, which are handled by the Louisiana Department of Public Safety. Because over 94% of the State's 2010 revenue losses fall into just four categories, Louisiana recommends that the test case focus on those four categories in order to limit and streamline needed discovery as well as save trial time.[7] The four categories, each amounting to hundreds of millions of dollars, are: (1) income (corporate and individual) and

---

[6] The State of Louisiana's Trial Plan *In Camera* Submission (filed 4/25/12) proposed an OPA economic loss test case. That proposal has been narrowed further in the current Motion to shorten the trial and limit associated discovery. The State's natural resource damages are not included in the proposed test case.

[7] Gaming revenue losses are not among the top four categories of economic losses, but could be added if the Court also wanted a test case on gaming. Additionally, increased costs of services for certain agencies in 2010 were also provided in the State's presented claim but are not included in the State's proposed 2010 lost revenue trial.

4

franchise taxes; (2) mineral royalties and severance tax; (3) sales tax;[8] and (4) Outer Continental Shelf ("OCS") oil and gas revenues, which include future 8(g)/GOMESA[9] royalties, *i.e.*, the direct effect of future 8(g)/GOMESA lost revenue.[10] As indicated, State oil and gas revenue losses that followed the *Deepwater Horizon* disaster, and continued during the deepwater drilling suspension, were also included in the State's 2010 claim as presented.[11] This lost revenue stream is very important to the State's ability to provide essential public services.

The State's requested trial on the quantum of damages for these economic loss claims is narrow and would not involve onerous proceedings. For example, proceedings regarding BP's status as a responsible party under OPA and/or the relative contributions, if any, of other legally responsible parties would not be necessary to determine the appropriate quantum of damages, because BP has stipulated to strict, joint and several liability under OPA and waived OPA's limits to liability.[12] Because the benefit to resolving this portion of the State's economic loss claims significantly outweighs the burden that would be placed on this Court, the State's request for a limited trial should be granted.

### B. A Trial on the State's 2010 Economic Losses will Serve as a Useful Test Case for Various OPA-Related Issues.
#### i. OPA Jury Trial Issue To Be Resolved

Louisiana has requested that its 2010 economic loss claims be tried in front of a jury as is provided for by the Seventh Amendment of the U.S. Constitution. In an earlier opinion, this

---

[8] The State's damage figures accounts for only the State's loss of sales tax. Louisiana Parishes and potentially other local governmental entities may also claim sales tax losses in varying amounts.

[9] "GOMESA" refers to the Gulf of Mexico Energy Security Act of 2006, Pub. Law 109-432, which in part provides for a revenue-sharing mechanism on certain oil and gas activity on the Outer Continental Shelf with the Gulf States as well as the Land & Water Conservation Fund for coastal restoration projects.

[10] The lost oil and gas revenue sharing calculations for 8(g) and GOMESA, unlike the other revenue losses from 2010, extend into the future under the formula used to calculate these losses.

[11] The State's calculations of direct losses that followed the imposition of the deepwater drilling suspension included projections through 2017. The additional, indirect losses suffered as a result of the suspension of drilling activity have not yet been presented to BP and are not the subject of this request.

[12] *See* Ex-Parte Agreed Motion Re: Applicability of Limit of Liability Under Oil Pollution Act of 1990 to BP Exploration & Production Inc. (And its Affiliates) (12/23/10) [Rec. Doc. 922].

Court held that OPA displaced general maritime law claims against Responsible Parties, as defined by that Act.  Order & Reasons [As to Motions to Dismiss Complaints of Alabama & Louisiana] (11/14/11) [Rec. Doc. 4578].  The claims sought to be tried here are strictly OPA claims against a Responsible Party.  Admiralty law is not implicated, and the State demanded a jury trial on its OPA damages claims in its Complaint.  Because OPA does not expressly provide for jury trials, the Court must look to the Seventh Amendment to determine whether an OPA damages claim is triable to a jury.  The Seventh Amendment preserves the right to a jury trial "as it existed at the time of the ratification of the amendment in 1791." *United States v. Viking Res. Inc.*, 607 F.Supp.2d 808, 828 (citing *Curtis v. Loether*, 415 U.S. 189 (1974)).

Applying the pre-ratification test, several courts have held that natural resource damages under OPA and penalty claims pursuant to the Clean Water Act are triable to a jury. *See, e.g., id.* at 830-833; *In re Acushnet River & New Bedford Harbor: Proceedings re Alleged PCB Pollution*, 712 F.Supp. 994, 1001-1004 (D.Mass. 1989).  The Court of Appeals for the First Circuit has held that a jury trial is required in an OPA claim for "extensive property damage, lost profits, and 'other economic losses' including loss of goodwill and business stress." *S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58 (1st Cir. 2000).

Here, the State is seeking actual monetary damages. The Supreme Court has long held that suits for monetary relief are legal in nature and are triable to a jury. *See Curtis v. Loether*, 415 U.S. 189 (1974); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 40-44 (1989); *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352-355 (1998).  For these reasons, the State is entitled to a jury trial on its economic loss claims.  This finding would also assist other parties entitled to the same in future proceedings, saving this Court valuable time and resources.

### ii. Presentment Issues to Be Tried

In its Order and Reasons [As to the Motions to Dismiss Complaints of Alabama and Louisiana], [Rec. Doc. 4578, pp. 23-24], the Court held that Louisiana sufficiently alleged presentment under OPA. This Court further held that the States need not repeatedly amend their complaints to specifically express the circumstances of each presentment subsequent to the filing of the initial complaint. *Id.* These rulings, however, did not resolve the issue of what constitutes proper presentment under OPA. To the extent this remains at issue on the State's claims, the issue could be resolved in the course of the State's 2010 economic loss test case.

### iii. BP's Offset Defense Should be Rejected

In its Answer to the State's complaint, BP raised a number of non-OPA affirmative defenses related to set-offs and reductions in liability:

> Thirteenth Defense: To the extent that the BP Parties are found liable to Plaintiff for any damages, the BP Parties are entitled to a set-off or other equitable reduction in liability for any compensation paid by the BP Parties or other parties or entities.
>
> Twenty-Fourth Defense: To the extent the BP Parties are found liable to Plaintiff for any damages or injuries, the BP Parties are entitled to have any reward or recovery mitigated or reduced accordingly by any prior payment to and/or release of liability from Plaintiff who received finds through the BP claims process and/or the GCCF. Furthermore, any settled claims accompanied by releases of rights against the BP Parties may no longer be maintained.[13]

In view of these asserted defenses, the State expects BP to seek an offset or credit regarding any potential increased employment, services and purchase of goods that occurred in connection with BP's various response and clean-up efforts. BP must defend the legal basis for this contention and produce facts in support.

---

[13] BP Parties' Answer to the State of Louisiana's First Amended Complaint (12/14/11) [Rec. Doc. 4907].

Similarly, BP may argue that it is entitled to an offset or credit associated with GCCF payments to individuals and businesses that may be taxable and potential payments to any claimants that may be paid as a result of the private-party settlement reached with BP earlier this year. Whether BP is entitled to such a defense is an issue that can be tried in the context of the State's proposed test case.

    iv. **BP's Defense That the Federal Deepwater Drilling Suspension was An Intervening And Superseding Cause Should be Rejected**

The State's 2010 revenue losses that are the subject of this request include categories of damages that BP will likely allege were caused by the federal drilling suspension and did not result from the *Deepwater Horizon* oil spill. However, many of Louisiana's losses in revenue associated with oil and gas activities began *before* the formal federal deepwater drilling suspension was announced. Many Gulf exploration and drilling activities, including shallow water drilling, as well as service ports, were shut down by the spill and associated response activities, separate from any deepwater drilling suspension. BP will nevertheless attempt to argue that some of the State's economic losses are barred by the deepwater drilling suspension. What technically falls into this category and whether BP's position is legally viable is an issue that can be tried in the context of the State's 2010 economic loss test case.[14]

BP previously argued that any loss of revenue it believes is a result of the deepwater drilling suspension is not a damage for which it has liability.[15] Further, BP raised the following affirmative defenses relating to causation issues in connection with the drilling suspension:

---

[14] BP itself, along with the industry in general, ceased offshore drilling and exploration operations during the *Deepwater Horizon* spill and response both before and after the federal drilling suspension. As the largest operator in the Gulf, BP's actions and decisions in connection with its own operations will be an important element to the resolution of this asserted defense.

[15] One example of such a dispute is the halt of drilling that occurred in the shallow waters of the Gulf of Mexico following the *Deepwater Horizon* spill, but prior to the imposition of the federal deepwater drilling suspension. This happened largely due to the redirection of available resources to assist in the response and cleanup efforts. This

> Fifth Defense: Any alleged negligence by the BP Parties, which the BP Parties specifically deny, was not the proximate cause of Plaintiff's alleged damages and there is no causal connection between the acts complained of and the damages and injuries alleged. Similarly, BP denies the applicable causal test or tests established by the Oil Pollution Act can be met by the Plaintiff.
>
> Sixth Defense: Plaintiff's alleged damages or injuries, if any, were caused or contributed to by acts and/or omissions that constitute independent, intervening and/or superseding causes for which the BP Parties are not legally responsible, and which preclude the finding of liability against the BP Parties.
>
> Seventh Defense: In accordance with the *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830 (1996), one or more superseding and/or intervening causes preclude any findings of liability on the part of the BP Parties.
>
> Twenty-Second Defense: The BP Parties cannot be held liable for any damages resulting from actions taken pursuant to federal, state, or local government control, direction, delegation, or authorization. Similarly, the BP Parties may not be held liable for damages resulting from the actions of any BP Parties exacerbated by federal, state, or local government actions.[16]

Accordingly, the State anticipates that BP will argue that what it terms "moratorium losses" did not result from the spill. The State's counter argument is that drilling activity stopped with the spill and response efforts, not the federally imposed deepwater drilling suspension. Further, a moratorium was a foreseeable result of the *Deepwater Horizon* incident. Resolving the "moratorium" issues in a test case will be helpful not only to the State and BP, but also to private parties' (excluded from the proposed BP-PSC settlement), as well as certain local governments that are also entitled to recovery under GOMESA.

---

standstill continues, to some extent, to this day, despite the fact that the federal drilling suspension covered only deepwater drilling. Whether revenue losses associated with shallow water exploration and drilling would be the subject of BP's asserted defense is a factual and legal issue that will fall in the State's proposed 2010 economic loss trial.

[16] BP Parties' Answer to the State of Louisiana's First Amended Complaint (12/14/11) [Rec. Doc. 4907].

### C. Discovery Necessary to Try the State's 2010 Presented Economic Loss Claims is Limited

Formal discovery has not occurred in connection with the State's economic losses. However, extensive pre-trial discovery will not be needed in this instance given both the narrow nature of the claims and associated data involved in the assessment of damages as well as the fact that the parties have previously exchanged the bulk of such data.[17] In addition, in order to streamline its proposal, Louisiana has unilaterally cut out twenty-plus categories of losses (about 6% of the total 2010 economic losses) without prejudice and removed claims for increased costs of services from its proposed test case without prejudice to save time. Louisiana has reserved its rights to make claims for these excluded economic losses in a future trial, if necessary.[18]

As noted, much of the State's information is publicly available. More important, one of the hallmarks of this MDL has been the focused (or phased) discovery approach. For example, under Magistrate Shushan's guidance, a list of almost 800 Phase 1 witnesses was trimmed to approximately 300. The Court has also allowed limited discovery to proceed regarding the propriety of the claims of the Mexican States.[19] In addition, BP has consistently advocated for focused and non-burdensome discovery.[20] As such, the State believes a similar approach allowing focused discovery on these claims would be effective.

As presently advised, the State will want discovery related to: (1) the methodologies used by BP or its agents to evaluate or pay claims; (2) information on how BP handled governmental

---

[17] BP certainly has the legal team to handle this issue in conjunction with its other obligations and without frustrating any other case management issues. For example, in its initial Pre-Trial Order in MDL 2179, the Court made clear that "[p]ending . . . further orders of this Court, no further discovery shall be initiated." PTO 1, ¶ 8 (Rec. Doc. 2) (emphasis added). Since that time, the Court has reaffirmed that general stay of discovery by expressly authorizing discovery only on particular matters, such as Phase 1 discovery on casualty and spill liability and limitation issues. *See* PTO 11, at 7-11 (Rec. Doc. 569).

[18] 33 U.S.C. §2705(a) (providing for interim and partial claims/payments).

[19] Order [Regarding Discovery Deadlines] (6/18/12) [Rec. Doc. 6702].

[20] *See, e.g.,* Status Conf. Tr. 27:9-19, Oct. 14, 2011 [Rec. Doc. 4303] (A. Langan, counsel for BP, discussing limitations of phased discovery).

claims; (3) GCCF data; (4) BP tax returns and associated information; (5) any internal documents relating to the management of claims (*e.g.*, not paying partial claims in an effort to drive final government settlements); and (6) BP's actual continued drilling and production efforts, if any, in the Gulf of Mexico following the *Deepwater Horizon* oil spill, and its contributions and/or comments on the deepwater drilling suspension.[21]

If the offset defense is not dismissed as a legal matter, the State will also need discovery to challenge BP's public assertion that it has spent over $22 billion to fund response operations, clean-up and claims.[22] BP will argue that any Louisiana damages caused by the spill are offset by the economic activity associated with the legally required response. The State of Louisiana disputes this proposition, and legal guidance from the Court is likely necessary to further advance the State's damages claims. Louisiana believes that its 2010 economic losses can usefully serve the MDL as a test case.

## IV. CONCLUSION

For the foregoing reasons, the State of Louisiana respectfully requests that this Court except this Motion from the continuance ordered on Pre-Trial Order 15 and enter an order setting a date for a jury trial on certain of the State's 2010 economic loss claims under OPA and allowing for limited discovery associated with those claims.

---

[21] The State proposes that the parties arrange for a meet and confer to discuss the details of the discovery issues related to an economic loss test trial to provide for a focused process moving forward.

[22] *See* Bernard Looney, BP Executive Vice-President, *BP Working to Prevent Another Deepwater Horizon*, HOUSTON CHRON. (4/30/12) (noting that "[BP's] first order of business has been keeping our commitment to help economic and environmental restoration efforts in the Gulf Coast region").

11

Dated this 24th day of October, 2012.

Respectfully submitted,

| | |
|---|---|
| JAMES D. "BUDDY" CALDWELL<br>LOUISIANA ATTORNEY GENERAL<br><br>James Trey Phillips<br>First Assistant Attorney General<br>Megan K. Terrell<br>Assistant Attorney General<br>Section Chief –Environmental<br>State of Louisiana<br>P.O. Box 94005<br>Baton Rouge, LA 70804-9005<br>Telephone: (225) 326-6708 | KANNER & WHITELEY, LLC<br><br>/s/ Allan Kanner<br>Allan Kanner<br>Elizabeth B. Petersen<br>David A. Pote<br>Douglas R. Kraus<br>Allison M. Shipp<br>701 Camp Street<br>New Orleans, LA 70130<br>Telephone: (504) 524-5777<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** |
| HENRY DART,<br>ATTORNEYS AT LAW P.C.<br><br>/s/ Henry T. Dart<br>Henry T. Dart<br>Grady J. Flattmann<br>510 N. Jefferson St.<br>Covington, LA 70433<br>Telephone: (985) 809-8093<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** | USRY, WEEKS, &<br>MATTHEWS, APLC<br><br>/s/ T. Allen Usry<br>T. Allen Usry<br>1615 Poydras St.<br>Suite 12<br>New Orleans, LA 70112<br>Telephone: (504) 592-4641<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** |
| SHOWS, CALI, BERTHELOT &<br>WALSH, LLP<br><br>/s/ E. Wade Shows<br>E. Wade Shows<br>628 St. Louis Street<br>Baton Rouge, LA 70802<br>Telephone: (225) 346-1461<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** | MARTEN LAW, PLLC<br><br>/s/ Bradley M. Marten<br>Bradley M. Marten<br>Linda R. Larson<br>1191 Second Avenue<br>Suite 2200<br>Seattle, WA 98101<br>(206) 292-2600<br>**Special Counsel for Plaintiff**<br>**Attorney General, State of Louisiana** |

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Motion Requesting Discovery and Trial on Certain of the State of Louisiana's 2010 Economic Loss Claims Under OPA has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 24th day of October, 2012.

                                                Kanner & Whiteley, L.L.C.

                                                _/s/ Allan Kanner_____
                                                Allan Kanner
                                                a.kanner@kanner-law.com