**KIRKLAND & ELLIS LLP**
AND AFFILIATED PARTNERSHIPS

300 North LaSalle Street
Chicago, Illinois  60654

J. Andrew Langan, P.C.
To Call Writer Directly:
(312) 862-2064
andrew.langan@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

October 26, 2012

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the
Eastern District of Louisiana
500 Poydras Street, Room B345
New Orleans, LA 70130

Re:   MDL 2179 -- Louisiana's Request for Discovery and Trial Setting on
Certain 2010 Economic Loss Claims Under OPA

Dear Judge Shushan:

This letter responds to Allan Kanner's October 25 letter, which incorrectly asserts that BP's opposition to Louisiana's attempt to split its economic loss claims is inconsistent with Judge Barbier's Order and Reasons As to the Motions to Dismiss the Complaints of the States of Alabama and Louisiana, Rec. Doc. 4578 (the "MTD Order").  Louisiana's letter ignores the plain language of OPA and misrepresents the orders of both Your Honor and Judge Barbier.

*First*, the Court's September 17 Working Group Order does in fact dispose of Louisiana's arguments.  As Mr. Kanner notes, on September 11, 2012 Louisiana sent a letter to Your Honor seeking discovery in connection with certain of Louisiana's 2010 economic loss claims. Louisiana's attempt to try only certain of its economic loss claims limited to 2010 would violate the plain language of OPA, which provides that a State may recover "[d]amages equal to the *net loss* of taxes, royalties, rents, fees, or net profit shares due to the injury, destruction, or loss of real property, personal property, or natural resources … ."  33 U.S.C.A. § 2702(b)(2)(D) (emphasis added).  BP has never taken the position before this Court that BP may be owed sums by the State of Louisiana under OPA.  BP has explained, in accord with the clear "net loss" language of OPA, that any determination of the State's economic losses must incorporate the revenues generated for the State by BP's expenditures relating to the spill.  My September 11 correspondence responded to Louisiana's letter by making this very point:

> As a result of OPA's explicit focus on the "net loss" of revenue, Louisiana cannot limit analysis to alleged losses in 2010 and not consider the subsequent state revenue gains in 2011, 2012, and beyond that result from the increased tax revenue generated by the very substantial payments made by BP through GCCF

Hong Kong    London    Los Angeles    Munich    New York    Palo Alto    San Francisco    Shanghai    Washington, D.C.

# KIRKLAND & ELLIS LLP

October 26, 2012
Page 2

> and the MDL settlement facility.  Accordingly, it would serve no purpose to seek discovery at this time on this incomplete portion of the State's alleged damage period.

(Sept. 11, 2012 Letter from A. Langan to Judge Shushan at 2.)

The Court's subsequent September 17, 2012 Working Group Conference Order resolved this dispute by holding that "[t]he request for the discovery is denied.  It is *claim splitting* and it is inconsistent with the schedule for the preparation and trial of Phase One and Phase Two." Rec. Doc. 7426 at 10 (emphasis added).  The Court's use of "claim splitting" presumably referred to the point that Louisiana could not split its claims into separate years to avoid OPA's limitation of State tax claims to the "net loss."  Louisiana did not seek reconsideration of or appeal from this Order.  The September 17 Order resolved the very issue (early OPA damages discovery for Louisiana) that the State's lengthy October 24 filing raises.  BP respectfully suggests that both the Court and the parties have far too much to do already in this complex litigation than have to revisit issues that were decided just weeks ago.

*Second*, Louisiana's assertion that Judge Barbier "reject[ed] BP's argument that the State's recovery is subject to a 'net loss' determination" finds no support in the actual language of Judge Barbier's orders.  (Oct. 25, 2012 Letter from A. Kanner to Judge Shushan at 2.)  Although Louisiana cites the MTD Order, that Order does not discuss OPA's "net loss" language, nor was the issue briefed by the parties.  Put simply, Judge Barbier did not rule on or interpret OPA's "net loss" language.

The language from the MTD Order that Louisiana quotes concerns presentment under OPA, and only presentment.  BP argued that Louisiana's claims should be dismissed for failure to allege presentment.  MTD Order at 17.  Louisiana asserted that it had presented some claims to BP, and also admitted that some of the claims in its complaint were premature because damages were not yet known.  *Id.* at 23.  As the language quoted in Louisiana's letter plainly states, Judge Barbier held only that the States would not be required to repeatedly amend their complaints to allege presentment when damages became known.  *Id.*  Nothing in the MTD Order suggests that Louisiana would be allowed to split its claims by category and time period to have piecemeal trials.  Thus, this Court's September 17 Working Group Order, rejecting Louisiana's proposed claims splitting, is fully consistent with Judge Barbier's rulings.

Moreover, Louisiana's position would rewrite the OPA statute passed by Congress.  Under well-established Supreme Court precedent, a court's duty is "to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001).  When the statute does not define a word, courts "look first to the word's ordinary meaning." *Schindler*

## KIRKLAND & ELLIS LLP

October 26, 2012
Page 3


*Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1891 (2011). For OPA, the ordinary meaning of "net loss" is the losses that remain after subtracting out any gains, which would include revenues from payments made by a responsible party to a State's residents. By contrast, Louisiana's interpretation would allow the State to ignore any gains and instead recover the State's gross loss. Moreover, OPA's language does not allow the State to cherry pick the time period and categories of revenues most favorable to the State. Yet Louisiana's interpretation would allow the State to decide the time period for which to claim losses, as well as the categories of revenues included in the economic loss calculation. Louisiana would rewrite 33 U.S.C.A. § 2702(b)(2)(D) so that a State could recover "[d]amages equal to the **gross loss** ~~net loss~~ of **the categories of** taxes, royalties, rents, fees, or net profit shares **chosen by the State and over a time period of the State's choosing** due to the injury, destruction, or loss of real property, personal property, or natural resources … ." (Louisiana's additions are in bold and underlined, its deletions are stuck out.) But that is not the statutory language Congress enacted. This Court should decline Louisiana's invitation to reverse Congress's judgment on the losses that can be recovered by a State under OPA.

*Third*, as the Court explained in the September 17, 2012 Working Group Conference Order, Louisiana's requests are inconsistent with Judge Barbier's carefully considered schedule for this massive MDL litigation. As is typical in litigation, Judge Barber's schedule requires that the Limitation Action trial and other major issues of fault and liability be decided before the amount of damages (quantum). What Louisiana seeks is to cut to the front of the line, ahead of the many individuals, private businesses, and other government entities that also want their claims resolved promptly. Granting Louisiana's request would disrupt the Court's orderly schedule that tries liability before damages and cause those other parties to wait while Louisiana's claims receive preferential treatment. The Court should affirm the rulings in its September 17, 2012 Working Group Conference Order and deny Louisiana's attempt to disrupt these proceedings for its own putative benefit.

Thank you for the Court's consideration.

Sincerely,

*[signature]*

J. Andrew Langan, P.C.


cc:    Defendant's Liaison Counsel
       Plaintiff's Liaison Counsel

## KIRKLAND & ELLIS LLP

October 26, 2012
Page 4

      States' Coordinating Counsel
      Mike Underhill