## OYSTER COMPENSATION PLAN

The Oyster Compensation Plan provides compensation to Oyster Leaseholders and Oyster Harvester Claimants. Oyster Harvesters eligible under the Oyster Compensation Plan are (i) Seafood Vessel Owners, (ii) Oyster Harvester lessees of Seafood Vessels, and (iii) Seafood Boat Captains. Oyster Leaseholders can submit Leaseholder Property Claims and/or Leaseholder Lost Income Claims. Oyster Harvesters can submit Harvester Lost Income Claims. A single Claimant can qualify as both an Oyster Leaseholder and an Oyster Harvester. Compensation plans for each of these claim types are set forth below.

In some instances, Oyster Leaseholders earn income solely from allowing another natural person or entity to harvest oysters from their oyster leaseholds. In other instances, Oyster Leaseholders may be combined such that they both own oyster leaseholds and harvest from those and other leaseholds. For purposes of the Oyster Compensation Plan, Claimants should submit claims reflecting both their harvesting and leaseholder claims together. A combined Oyster Leaseholder/Oyster Harvester is eligible for compensation as both an Oyster Leaseholder and an Oyster Harvester.

**Generally Applicable Provisions of the Oyster Compensation Plan:**

1. Eligible Claimants shall be comprised of Class Members (i) who do not fall within the exclusions to the Economic Loss and Property Class Definitions; (ii) who are Oyster Leaseholders or Oyster Harvesters; and (iii) who meet the following additional criteria.

2. An Oyster Leaseholder Claimants shall be an entity or individual with an oyster leasehold interest.

3. Oyster Leaseholder Claimants are eligible to receive compensation for leaseholds that are located within Zone A, B or C as reflected on the Oyster Leasehold Compensation Zone Map attached hereto, as Exhibit 1. Oyster Harvesters are eligible to receive compensation for oysters landed in the Gulf Coast Areas.

4. It is understood that in some instances, the Vessel Owner is also the Oyster Harvester; however, it may be the case that the Vessel Owner leased the vessel to an Oyster Harvester Vessel Lessee. In those instances where the vessel was leased during the time period of April 20, 2010 to December 31, 2010, the Vessel Owner and Oyster Harvester Vessel Lessee must file the vessel claim jointly in order to receive compensation prior to the **Bar Date**, and they shall share any Vessel Owner/Oyster Harvester Vessel Lessee compensation provided for in this Oyster Compensation Plan. If at the time of the **Bar Date** either the Vessel Owner or the Oyster Harvester Vessel Lessee has not filed a claim, the one that has filed the claim shall receive the full Vessel Owner/Oyster Harvester Vessel Lessee compensation for the vessel. The allocation of compensation between Vessel Owner and Oyster Harvester Vessel Lessee shall be determined as provided in Section 4. If the vessel was not leased to an Oyster Harvester Vessel Lessee during the time period of April 20, 2010 to December 31, 2010, the Vessel Owner is entitled to the full share of the Vessel Owner/ Oyster Harvester Vessel Lessee compensation.

25

029323

5.      It is understood that in some instances, the Vessel Owner or the Oyster Harvester Vessel Lessee is also the Boat Captain.  In those instances where the Vessel Owner and/or the Oyster Harvester Vessel Lessee were also the Boat Captain, the Claimant shall be eligible to receive the Boat Captain compensation under the Oyster Compensation Plan as set forth below.  If the Vessel Owner and/or Oyster Harvester Vessel Lessee employed a Boat Captain on the vessel and did not serve as a Boat Captain on that vessel, the hired Boat Captain is eligible for the Boat Captain compensation, not the Vessel Owner or Oyster Harvester Vessel Lessee.

6.      To establish eligibility to participate in the Oyster Compensation Plan, an Oyster Leaseholder Claimant must provide:

A.      Valid oyster lease entered into by Claimant that establishes, as of April 20, 2010, the Claimant as the lessee of the oyster leasehold, or a copy of the actual title for the leasehold. Claimants are required to provide documentation that their leasehold interest is in good standing, such as proof of renewal.

B.      Information sufficient to ascertain the geographic boundaries of the oyster leasehold, including the oyster lease ID number.

7.      To establish eligibility to participate in the Oyster Compensation Plan, a Vessel Owner Claimant must provide for each vessel for which the Claimant is seeking compensation:

A.      Proof of ownership of the vessel during the time period of April 20, 2010 to December 31, 2010.

B.      Proof that as of April 20, 2010 there was a government license (even if it had expired as of that date) that authorized that vessel to harvest and land oysters in the Gulf Coast Areas for the 2009 season or the 2010 season.

C.      The vessel name and any applicable federal and/or state vessel registration identification numbers.

D.      Proof that the vessel landed oysters in the Gulf Coast Areas in 2009 or 2010.  For example, this can be demonstrated using trip tickets (or equivalent documents such as dealer forms) or Federal or state tax returns.

E.      A sworn statement attesting as to whether or not the vessel was leased during the time period April 20, 2010 to December 31, 2010.  If the vessel was leased during this time period, the Vessel Owner must provide a copy of the lease agreement.

8.      To establish eligibility to participate in the Oyster Compensation Plan, an Oyster Harvester who leases a Seafood Vessel (Oyster Harvester Vessel Lessee) must provide for each vessel for which the Claimant is seeking compensation:

A.      Proof that during the time period of April 20, 2010 to December 31, 2010 the Claimant leased a vessel to be used for oyster harvesting.

26

029324

B.     Proof that as of April 20, 2010 there was a government license (even if it had expired as of that date) that authorized the vessel to harvest and land oysters in the Gulf Coast Areas for the 2009 season or the 2010 season.

C.     Proof that the vessel landed oysters in the Gulf Coast Areas in 2009 or 2010. For example, this can be demonstrated using trip tickets (or equivalent documents such as dealer forms) or Federal or State tax returns.

D.     A sworn statement attesting that the Claimant leased the vessel from the Vessel Owner during the time period of April 20, 2010 to December 31, 2010. The Oyster Harvester Vessel Lessee must also provide a copy of the lease agreement.

9.     Oyster Boat Captain Claimants must provide:

A.     Proof that as of April 20, 2010 the Boat Captain held a governmental license (even if it had expired before that date) authorizing the Claimant to operate as a Boat Captain and/or to commercially harvest and land oysters in the Gulf Coast Areas.

B.     Proof that Claimant landed oysters in the Gulf Coast Areas in 2009 or 2010. This can be demonstrated using trip tickets (or equivalent documents such as dealer forms) or federal or state tax returns.

10.     A Sworn Statement attesting whether or not the Claimant received any Seafood Spill-Related Payments. If the Claimant received Seafood Spill-Related Payments, the Claimant shall provide documents[7] sufficient to establish the timing, amount and source of Seafood Spill-Related Payments, including documents providing the claimant's BP/GCCF/Transition Facility Claim Number, if applicable, and any corresponding payments:

**Oyster Compensation Plan Methods Available:**

There are two types of claims available to Oyster Leaseholders:

- Leaseholder Interest Compensation

- Leaseholder Lost Income Compensation

There is one type of claim available to Oyster Harvesters:

- Historical Revenue Compensation

---

[7]   When documents are requested in the Seafood Compensation Program, Claimant may provide either legible copies or originals of the documents.

029325

A given Claimant may submit claims for more than one form of compensation, for example a combined Oyster Leaseholder/Oyster Harvester may submit claims for all three forms of compensation.

## Oyster Compensation Plan Definition:

The Benchmark Period for the Claimant is the combination of 2007, 2008 and 2009. All calculations of Benchmark Period revenues, costs or payments use the average of annual figures across 2007, 2008 and 2009. In the event that a Claimant entered the oyster industry after 2007, then the Benchmark Period will include all full years since the Claimant entered the oyster harvesting industry, so 2008-2009 or 2009. In the event the Claims Administrator determines that the Claimant (individual or vessel) did not participate at the same level of effort in oyster harvesting due to circumstances beyond the Claimant's control (such as illness, disability or major mechanical failure), the Claims Administrator may at his discretion allow the Claimant to exclude one or more years of the Benchmark Period.

## 1. Oyster Leaseholder Interest Compensation

Oyster Leaseholder Interest Compensation provides all eligible Oyster Leaseholders with compensation on a per acre basis for their leaseholds. Compensation shall be determined by the geographic location of the oyster leasehold as set forth below.

### 1.1 Eligibility for Oyster Leaseholder Property Claim

Eligible leaseholds are those located within Zone A, B or C as reflected on the Oyster Leasehold Compensation Zone Map.

### 1.2 Documentation Requirement for Oyster Leaseholder Interest Compensation

The Oyster Leaseholder must provide the documentation required under the Generally Applicable Provisions of the Oyster Compensation Plan.

### 1.3 Calculation of Oyster Leaseholder Interest Compensation

The Oyster Leaseholder Claimant shall receive compensation on a per acre basis based upon where the lease is located on the Oyster Leaseholder Compensation Zone Map. The per acre compensation amounts for each zone are as follows:

Zone A: $2,000

Zone B: $1,000

Zone C: $400

If a lease crosses two zones, compensation will be determined based on the number of acres of the lease in each zone. For example, if a lease covers 20 acres in Zone A and 30 acres in Zone B, then compensation will be calculated as: (20 acres * $2,000) + (30 acres * $1,000) = $70,000.

029326

The per acre payment is not subject to any RTP.

### 2. Oyster Leaseholder Lost Income Compensation

The Oyster Leaseholder Lost Income Compensation provides eligible Oyster Leaseholders with compensation for income earned through payments from another natural person or entity that harvests oysters on their leases. This Section 2 describes compensation for an Oyster Leaseholder that is not also an Oyster Vessel Owner/Oyster Harvester Vessel Lessee. If the Oyster Leaseholder is also a Vessel Owner/Oyster Harvester Vessel Lessee, the Oyster Leaseholder shall receive compensation for a combined Oyster Leaseholder and Vessel Owner/Oyster Harvester Vessel Lessee, as described in Section 3.5.

### 2.1    Eligibility Requirements for Oyster Leaseholder Lost Income Claims

Oyster Leaseholder Claimants who meet the eligibility requirements set forth in the applicable paragraphs of the "Generally Applicable Provisions of the Oyster Compensation Plan" and Section 1.1 above are eligible to receive Oyster Leaseholder Lost Income Claims Compensation.

### 2.2    Documentation Requirements for Oyster Leaseholder Lost Income Claims

To receive Oyster Leaseholder Lost Income Compensation, a Claimant must provide:

A.    Tax returns, financial statements or business documents establishing revenue earned by the Claimant during the Benchmark Period from another natural person or entity that harvests oysters on their leaseholds located in Zones A, B or C, as reflected on the Oyster Leasehold Compensation Zone Map.

B.    Contracts or agreements between the Oyster Leaseholder and another natural person or entity that harvests oysters from their leaseholds located in Zones A, B or C, as reflected on the Oyster Leasehold Compensation Zone Map.

In addition, if available, it is requested that the Claimant also provide the following documents, to assist the Claims Administrator:

A.    A list of all Oyster Harvesters who harvested oysters on Claimant's leasehold(s) during 2007 through 2009.

### 2.3    Calculation of Oyster Leaseholder Lost Income Compensation

For all Oyster Leaseholder Claimants, the Oyster Leaseholder Lost Income Compensation is calculated as follows:

A.    Calculate Benchmark Revenue as the average annual revenue earned by the Claimant during the Benchmark Period from other natural people or entities that harvest oysters on the Claimant's leaseholds that are located in Zones A, B or C, as reflected on the Oyster Leasehold Compensation Zone Map.

29

# X. INFORMATION ON SPECIFIC SETTLEMENT DAMAGE CATEGORIES

**180. What is the scope of the Seafood Compensation Program with respect to Oyster Leaseholders? Are "private leases" included in the settlement class and Compensation Program?**

The Class is defined to include all Oyster Leaseholders, whether the lease establishes the Claimant as the lessee of an oyster leasehold for which the state is the lessor ("state-issued lease") or the lessee of an oyster leasehold for which a private landowner is the lessor ("private lease"). However, while private leases are included in the Settlement Class, certain private leases may not be eligible to receive payment under the Seafood Compensation Program, and thus those oyster leaseholders will have their associated Oyster Leaseholder Interest claims in connection with such private leases Expressly Reserved.

To be eligible for compensation under the Seafood Compensation Program, a Oyster Leaseholder Claimants seeking recovery for oyster leaseholds in Louisiana, Florida, Mississippi, and Texas must be the lessee of an oyster lease (whether "state-issued" or "private") for which the State has issued an oyster lease ID number. In Alabama, where the state does not issue oyster lease ID numbers for oyster leases, then Claimants who are lessees of oyster leases (whether "state-issued" or "private") are eligible for compensation from the Seafood Compensation Program.

Thus, if a claiming Oyster Leaseholder seeks compensation for a lease in Louisiana, Florida, Mississippi or Texas that did not have a State-issued lease oyster ID number for the year 2010, then the Claimant remains in the Class and may be eligible for compensation under other aspects of the Seafood Compensation Program, (e.g., Oyster Harvester Lost Income Compensation, compensation under a different Seafood Compensation Program category such as the Shrimp Compensation Plan or Finfish Compensation Plan, or Oyster Leaseholder Interest claims for oyster leases in Louisiana, Florida, Mississippi or Texas that do have a State-issued lease ID number); however, that Claimant's Oyster Leaseholder Interest claims and Oyster Leaseholder Lost Income claims arising out of any Louisiana, Florida, Mississippi or Texas oyster lease without a State-issued lease ID number are Expressly Reserved Claims under the Settlement Agreement, such that they are neither compensated in nor released by the

Economic Loss and Property Damages Settlement or the Individual Release.
(Last updated October 17, 2012)

Lease # **L-O-0005**

# SURFACE LEASE

THIS LEASE entered into as of the **April 1, 2009** between THE LOUISIANA LAND AND EXPLORATION COMPANY, a Maryland corporation, whose address for purposes of this lease is Post Office Box 7097, Louisiana 70361 (herein called "Lessor"), and **TERRANCE SHELLEY**, whose address for purposes of this lease is **605 EAST FIRST STREET, BELLE CHASSE, LA 70037** (herein called "Lessee").

**W I T N E S S E T H**

1.  In consideration of the rental herein provided and the obligations assumed by Lessee herein, but subject to the conditions hereinafter set forth, Lessor does hereby lease and let unto Lessee, for a term beginning on the effective date hereof and terminating one (1) year from such date, for the sole and only purpose of harvesting wild oysters from the surface of the following described property, which Lessee acknowledges to be owned by Lessor, to-wit:

> TRACT 1 - A CERTAIN TRACT OF LAND CONTAINING APPROXIMATELY 2,330 ACRES MORE OR LESS AS BEING SITUATED IN LEEVILLE, LOUISIANA AND BEING COMPRISED OF PORTIONS OF SECTIONS 26, 27, 28, 33 & 34, TOWNSHIP 21 SOUTH – RANGE 22 EAST AND SECTIONS 3, 4 & 5, TOWNSHIP 22 SOUTH – RANGE 22 EAST, LAFOURCHE PARISH, LOUISIANA.

> TRACT 2 - A CERTAIN TRACT OF LAND CONTAINING APPROXIMATELY 1,990 ACRES MORE OR LESS AS BEING SITUATED SOUTHEAST OF LEEVILLE, LOUISIANA AND BEING COMPRISED OF PORTIONS OF SECTIONS 1 & 12 TOWNSHIP 22 SOUTH – RANGE 22 EAST AND SECTIONS 6, 7 & 18, TOWNSHIP 22 SOUTH – RANGE 23 EAST, LAFOURCHE PARISH, LOUISIANA.

**LAFOURCHE** Parish, Louisiana all as more fully shown outlined in red on the plat attached hereto.

2.  Upon the execution hereof, Lessee has paid Lessor, as rent for the one year term hereof, the sum of **$ 4,250.00** . Lessee shall have the option to renew this lease from year to year, for a maximum period not to exceed a total of **FIVE** year(s) from the effective date hereof, upon the same terms and conditions and for the same rental hereinabove set forth unless Lessor shall have notified Lessee, at least ten days prior to the expiration of the then current term, of amended terms and conditions, including an increase or decrease in rental, in which event the option to renew shall be upon the then current terms and conditions, including rental, as so amended by said notice. If Lessor has not received the renewal rent prior to the expiration of the then current term, Lessee shall be deemed to have elected not to renew this lease for the succeeding year, and this lease will immediately and automatically terminate.

3.  This lease is granted by Lessor and accepted by Lessee subject to all of the further terms and conditions which appear on the reverse hereof, all of which are hereby made part of this agreement to the same extent and with the same effect as if same had been copied in full in this paragraph.

IN WITNESS WHEREOF this instrument is executed in multiple originals in the presence of the undersigned witnesses.

WITNESSES: (As to Lessor's Execution)

_Frank E. Ellender_

_Baird P. McElroy_

THE LOUISIANA LAND AND EXPLORATION COMPANY

By _Kermit J. Coulon, Jr._

_TERRANCE SHELLEY_ _____ Lessee

_____ Lessee

WITNESSES: (As to all Lessee's Execution)

Sign: _____
Print Name: _Frank E. Ellender_

Sign: _____
Print Name: _Baird P. McElroy_

STATE OF _Louisiana_

PARISH OF _Terrebonne_

Before me, on this **9** day of _March_ , 2009, personally came and appeared **TERRANCE SHELLEY**, who being by me duly sworn did depose and say that he signed the above and foregoing instrument as his free act and deed for the purposes therein set forth in the presence of the above subscribing witnesses.

_Barbara Chauvin_
Notary Public   I.D. _9139_

other TERMS AND CONDITIONS to which the lease appearing on the reverse hereof is subject:

4. All of the rights granted Lessee in this agreement are solely for the benefit of Lessee and Lessee's guest and invitees, and Lessee shall be and remain entirely responsible for such guests and invitees and all actions by any of them; provided, however, that Lessee shall not permit any person to exercise any of such rights or even to go upon the leased premises unless such person is accompanied on the leased premises at all times by a party named as Lessee or a member of such Lessee's immediate family (which shall consist of only Lessee's spouse, parents and children), or unless such person holds written authorization from Lessor; and Lessee shall conduct no commercial operations on the leased premises nor make any charge for the exercise of any of the privileges herein granted.

5. Lessee may maintain existing ditches and ponds on the leased premises and any existing buildings and facilities owned or placed on the leased premises by Lessee, but, except as may otherwise be provided herein, Lessee shall not construct any additional buildings, levees, dams, fences, or other structures or facilities on the leased premises, nor dredge or dig any additional canals, ditches or ponds thereon, nor otherwise change or alter the leased premises in any manner without first submitting plans and specifications therefor to Lessor and obtaining Lessor's prior written consent thereto. Lessee shall not use or permit the use of air boats or marsh buggies upon the leased premises without the prior written consent of Lessor; nor shall Lessee create any nuisance or disturbance on the leased premises.

6. Lessee accepts the leased premises and all canals and waterways leading thereto in their present conditions. Lessee further agrees that it will, during the term hereof and thereafter, pay Lessor for and indemnify and hold Lessor harmless against any and all loss, damage, liability, cost or expense, including fines, penalties and reasonable attorneys' fees, on account of injuries to or death of persons, damage to property of any kind, pollution or other damage to the environment or the violation of any law, rule or regulation, arising wholly or partially out of or in connection with or resulting from the use of the leased premises or the canals and waterways leading thereto by Lessee or its guest, invitees or visitors, or the exercise of any of the rights granted herein or any action hereunder, or the breach of any provision of the lease, irrespective of any negligence, strict or absolute liability or fault of Lessor; and, in the event of any suit or other proceeding against Lessor on account thereof, Lessee shall, at Lessor's request, appear and defend same, and Lessee shall pay any assessment or judgment which may be rendered against Lessor therein.

7. Lessee shall obey and comply with all applicable laws and regulations, shall occupy the leased premises as a prudent caretaker and tenant, shall maintain same at all times in a presentable condition without litter or unsightly debris, shall maintain possession thereof for Lessor, and shall use the leased premises in such a manner as not to interfere with other hunters, trappers or other parties operating thereon or on adjacent property with authorization from Lessor.

8. This lease is granted subject to all existing surface leases, mineral leases, servitudes, rights of way, permits and other contracts of whatsoever kind, whether recorded or unrecorded, affecting the leased premises, and Lessor reserves the full use and enjoyment and the right to grant to others the full use and enjoyment of the property leased herein, both surface and subsurface, for any and all purposes except those granted and to the extent granted herein. Without limiting the foregoing, Lessor reserves the right to explore, drill and mine for, and produce, remove, treat, store and transport any and all minerals and other natural resources; to hunt, fish, trap, farm, graze, dredge, fill, reclaim and improve said property; and to construct canals, roads, ditches, ponds, levees, dams, fences, buildings, pipelines, telephone and power lines, and other structures, facilities and improvements. All of the rights herein reserved by Lessor may be exercised to the fullest extent, without notice to Lessee and without Lessee's consent, it being understood, and Lessee hereby agrees and declares, that the rights herein granted Lessee are and shall be subject to any use (other than for the purposes and to the extent granted herein) to which Lessor, or those now or hereafter holding under Lessor, may have made or may in the future make of either surface or subsurface of said property, and neither Lessor nor any party now or hereafter holding under Lessor shall have any liability to Lessee on account of any such use.

9. This lease is granted without any warranty by or recourse on Lessor whatsoever, not even for the return of the consideration. Lessor does not warrant the possession of said property as against trespassers or poachers nor will Lessor be required to undertake any action or proceeding to maintain Lessee in possession of said property. Lessee shall, however, upon obtaining the prior written consent of Lessor, have the right, as Lessee and in Lessee's name, to proceed against trespassers or poachers and to eject them by legal means, all such proceedings to be at the sole cost and expense of Lessee and without liability to Lessor. Lessee shall furnish Lessor copies of all pleadings, documents and correspondence concerning such proceedings, and in the event any party to such proceedings contests the title or possession of Lessor, Lessee shall notify Lessor immediately. Nothing herein contained, however, shall be construed as prohibiting or preventing Lessor from instituting or defending, in its own name, all such actions and other proceedings as it may desire or deem to be to its best interest, against trespassers, poachers or other parties; and in the event of any such proceedings, Lessee shall not be deemed a necessary or indispensable party, either as plaintiff or defendant, it being understood, however, that any benefit (other than any money judgments) derived from any such proceedings or actions shall inure to Lessee hereunder insofar as concerns the rights and privileges granted Lessee herein.

10. Either party hereto may, with or without cause, cancel this lease at any time by giving ten (10) days written notice to the other party; provided, however, that should Lessor cancel this lease without cause, then Lessor shall refund to Lessee a pro rata portion of the rental received for the then current term based on the unexpired portion of said term. In the event of the death of any party named as a Lessee herein, this lease shall terminate immediately as to such party. The breach of any of the terms, conditions or provisions of this lease by Lessee shall be cause for immediate cancellation thereof, said cancellation to be effective immediately upon Lessor's giving Lessee written notice thereof. Upon cancellation or termination of this lease, all of the Lessee's rights hereunder shall cease, and Lessee shall, within thirty (30) days of which the same and all contents thereof in whole or in part, at the option of Lessor, and without further action of either party, including the payment of any consideration to Lessee therefor, either shall become the property of Lessor, together with all other improvements on the leased premises, or Lessor may cause the same to be removed or destroyed as Lessor may deem desirable; and Lessee shall reimburse Lessor for the cost of any such removal or destruction as well as the cost of restoring the premises. The waiver of a breach of any of the terms or conditions of this lease shall be limited to the act or acts constituting such breach, and shall never be construed as being a continuing or permanent waiver of any of such terms or conditions or as a waiver of any other terms and conditions hereof, all of which shall be and remain in full force and effect notwithstanding any such waiver.

11. This lease shall supersede and replace any other surface lease between Lessor and any of the parties named as Lessee covering the leased premises for the same purposes, and such other lease shall be deemed cancelled by virtue of the execution of this lease.

12. Lessee shall not assign, sublease, transfer or encumber this lease or any rights therein in whole or in part.

13. If more than one party is named as Lessee herein, the party herein first named as Lessee is hereby irrevocably constituted and appointed by all other parties named Lessee to be their lawful agent and attorney in fact for the purposes of carrying out all of the terms and conditions of this lease, but for this lease only, including but without limitation, for the purposes of receiving and giving all notices hereunder and for service of process concerning all matters arising hereunder. Any notice or other communication required or permitted under the terms and provisions hereof shall be sent to the parties hereto at the addresses hereinabove first set forth, and such notice or communication shall be deemed to have been received by the addressee upon deposit of same in the United States mail, postpaid.

14. "Lessee acknowledges that any claim for injury or damage to oysters while growing on, or to, the leased premises is the exclusive property of Lessor."

15. Lessor reserves the right to revise the boundaries of said lease and shall notify lessee of said revisions.

16. Lessee assumes all responsibility for knowledge of, and shall refrain from any harvesting of oysters on any state oyster leases granted within the boundaries of this lease.

17. Lessee shall not enter into or upon said leased premises one (1) week prior, thru one (1) week post waterfowl hunting season including any split of said season.



OYSTER LEASE L-O-0005
TRACT # 1
(2,260)            APPROX. 2,330 ACS.



OYSTER LEASE L-O-0005
TRACT # 2

APPROX. 1,990 ACS.



T 20 S – R 28 E

TRACT 1 – 410 AC.
TRACT 2 – 766 AC.
TRACT 3 – (–41 AC.)
TRACT 4 – 19 AC.
TRACT 5 – 18 AC.
TOTAL ACRES = 1,174 AC.

**NOTES:**

1. COORDINATES REFER TO THE LOUISIANA STATE PLANE COORDINATE SYSTEM, NAD 1983, SOUTH ZONE.
2. THIS SURVEY WAS DONE UNDER MY DIRECT SUPERVISION AND THE MEASUREMENTS AND OTHER DATA INDICATED ARE CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.
3. THIS SURVEY PLAT DOES NOT REPRESENT A PROPERTY BOUNDARY SURVEY AND IS INTENDED FOR OYSTER LEASE PURPOSES ONLY AND IS LOCATED ENTIRELY WITHIN PROPERTY OWNED BY THE LOUISIANA LAND AND EXPLORATION COMPANY. THIS OYSTER LEASE HAS NOT BEEN MONUMENTED ON THE GROUND.
4. THIS SURVEY PLAT DOES NOT PURPORT TO SHOW THE LOCATION OF ANY EXISTING SERVITUDES, EASEMENTS, AND/OR RIGHT-OF-WAY WHICH MAY AFFECT SAID LEASE.
5. TOPOGRAPHY PLOTTED FROM U.S.G.S. QUADRANGLE "PORT SULPHUR, LA." 1993.
6. ALL ADJACENT OYSTER LEASE INFORMATION WAS SUPPLIED BY THE LA. WILDLIFE AND FISHERIES OYSTER DIVISION.

SHEET 1 OF 3

Scale: 1" = _____ 2000'

REVISED: DECEMBER 1, 1998

# OYSTER LEASE SURVEY

I certify that I surveyed on this day _____JULY , 15_____ , 1998, for the lessee _____TERRY SHELLY_____

_____ the boundaries and limits of his oyster lease located within a portion of the

land owned by _____THE LOUISIANA LAND & EXPLORATION CO._____ for Oyster Harvesting purposes,

containing _____1,174_____ SUPERFICIAL ACRES, situated _____JUST EAST OF GRAND BAYOU AND_____

_____NORTH OF BASTIAN BAY_____ in sections _17,25,26,27,28,37,&38_ T. _20_ S., R. _28_ E.

and in section _____1_____ T. _21_ S., R. _27_ E.

in the parish of _PLAQUEMINES_ Louisiana, and bounded as shown above.

Book _____ Page _____

LL&E Lease No. _____P-O-0002_____

APP'L No. _____

LEASE No. _____

Quad 33

Jeff D. DeBlieux, IV
Professional Land Surveyor
Louisiana Lic. No. 4689

STATE OF LOUISIANA
JEFF D. DeBLIEUX, IV
REG. No. 4689
REGISTERED
PROFESSIONAL
LAND SURVEYOR

**LL&E**

THE LOUISIANA LAND & EXPLORATION CO.
BURLINGTON RESOURCES
P.O. BOX 7097
HOUMA , LA. 70361-7097

LESS AND EXCEPT

| TRACT 2 | | | TRACT 3 | | | TRACT 4 | | |
|---|---|---|---|---|---|---|---|---|
| Point | X = | Y = | Point | X = | Y = | Point | X = | Y = |
| | | | P.O.B. | | | P.O.B. | | |

*(Coordinate data tables for Tract 2, Tract 3, Tract 4 and Tract 5 — numeric values illegible.)*

TRACT 5

| Point | X = | Y = |
|---|---|---|
| P.O.B. | | |

NOTES:

1. COORDINATES REFER TO THE LOUISIANA STATE PLANE COORDINATE SYSTEM, NAD 1983, SOUTH ZONE.

SHEET 3 OF 3

Scale: 1" = ___N/A___

REVISED: DECEMBER 1, 1998

# OYSTER LEASE SURVEY

I certify that I surveyed on this day ___JULY , 15___ , 1998, for the lessee ___TERRY SHELLY___

_____ the boundaries and limits of his oyster lease located within a portion of the

land owned by ___THE LOUISIANA LAND & EXPLORATION CO.___ for Oyster Harvesting purposes,

containing ___1,174___ SUPERFICIAL ACRES, situated ___JUST EAST OF GRAND BAYOU AND___

___NORTH OF BASTIAN BAY___ in sections ___17,25,26,27,28,37,&38___ T. 20 S., R. 28 E.

and in section _____ T. 21 S., R. 27 E.

in the parish of ___PLAQUEMINES___ louisiana, and bounded as shown above.

Book _____ Page _____

LL&E Lease No. ___P-0-0002___

APP'L No. _____

LEASE No. _____

Quad 33

Jeff D. DeBlieux, IV
Professional Land Surveyor
Louisiana Lic. No. 4689

STATE OF LOUISIANA
JEFF D. DeBLIEUX, IV
REG. No. 4689
REGISTERED
PROFESSIONAL
LAND SURVEYOR

LL&E

THE LOUISIANA LAND & EXPLORATION CO.
BURLINGTON RESOURCES
P.O. BOX 7097
HOUMA , LA. 70361-7097

## OYSTER LEASE SURVEY

|   | TRACT 1 | | | TRACT 2 | | | TRACT 2 | |
|---|---|---|---|---|---|---|---|---|
| Point | X = | Y = | Point | X = | Y = | Point | X = | Y = |

*(Coordinate data tables for Tract 1 and Tract 2 — numerous point rows with X and Y state-plane coordinates. Left column begins at P.O.B. Point 1 through Point 77; middle column P.O.B. Point 1 through Point 73; right column Point 74 through Point 148.)*

SHEET 2 OF 3

Scale: 1" = ___N/A___

REVISED: DECEMBER 1, 1998

NOTES:
1. COORDINATES REFER TO THE LOUISIANA STATE PLANE COORDINATE SYSTEM, NAD 1983, SOUTH ZONE.

I certify that I surveyed on this day ___JULY, 15___, 1998, for the lessee ___TERRY SHELLY___ _____ the boundaries and limits of his oyster lease located within a portion of the land owned by ___THE LOUISIANA LAND & EXPLORATION CO.___ for Oyster Harvesting purposes, containing ___1,174___ SUPERFICIAL ACRES, situated ___JUST EAST OF GRAND BAYOU AND___ ___NORTH OF BASTIAN BAY___ in sections ___17,25,26,27,28,37,&38___ T. 20 S., R. 28 E. and in section ___1___ T. 21 S., R. 27 E. in the parish of ___PLAQUEMINES___ Louisiana, and bounded as shown above.

Book _____ Page _____

LL&E Lease No. ___P-O-0002___

APP'L No. _____

LEASE No. _____

Quad 33

Jeff D. DeBlieux, IV
Professional Land Surveyor
Louisiana Lic. No. 4689

(SEAL: STATE OF LOUISIANA / JEFF D. DeBLIEUX, IV / REG. No. 4689 / REGISTERED PROFESSIONAL LAND SURVEYOR)

LL&E
THE LOUISIANA LAND & EXPLORATION CO.
BURLINGTON RESOURCES
P.O. BOX 7097
HOUMA , LA. 70361-7097

ACAD DRAWING: S:\PUBLIC\ENGINEERING\oyster_maps\Oysterxy2.dwg

Lease # <u>P-O-0002</u>

# SURFACE LEASE

THIS LEASE entered into as of the **April 1, 2009** between THE LOUISIANA LAND AND EXPLORATION COMPANY, a Maryland corporation, authorized to and doing business in the State of Louisiana, whose address for purposes of this lease is Post Office Box 7097, Louisiana 70361 (herein called "Lessor"), and **TERRANCE SHELLEY**, whose address for purposes of this lease is **605 EAST FIRST STREET, BELLE CHASSE, LA 70037** (herein called "Lessee").

**WITNESSETH**

1.  In consideration of the rental herein provided and the obligations assumed by Lessee herein, but subject to the conditions hereinafter set forth, Lessor does hereby lease and let unto Lessee, for a term beginning on the effective date hereof and terminating one (1) year from such date, for the sole and only purpose of harvesting wild oysters from the surface of the following described property, which Lessee acknowledges to be owned by Lessor, to-wit:

A CERTAIN TRACT OF LAND CONTAINING APPROXIMATELY 1,174 ACRES MORE OR LESS AS BEING SITUATED NORTH OF BASTIAN BAY AND EAST OF GRAND BAYOU IN SECTIONS 17, 25, 26, 27, 28, 37 AND 38, TOWNSHIP 21 SOUTH - RANGE 28 EAST, AND SECTIONS 1, TOWNSHIP 21 SOUTH - RANGE 27 EAST,

**PLAQUEMINES** Parish, Louisiana all as more fully shown outlined in red on the plat attached hereto.

2.  Upon the execution hereof, Lessee has paid Lessor, as rent for the one year term hereof, the sum of **$ 1,174.00** . Lessee shall have the option to renew this lease from year to year, for a maximum period not to exceed a total of **FIVE** year(s) from the effective date hereof, upon the same terms and conditions and for the same rental hereinabove set forth unless Lessor shall have notified Lessee, at least ten days prior to the expiration of the then current term, of amended terms and conditions, including an increase or decrease in rental, in which event the option to renew shall be upon the then current terms and conditions, including rental, as so amended by said notice. If Lessor has not received the renewal rent prior to the expiration of the then current term, Lessee shall be deemed to have elected not to renew this lease for the succeeding year, and this lease will immediately and automatically terminate.

3.  This lease is granted by Lessor and accepted by Lessee subject to all of the further terms and conditions which appear on the reverse hereof, all of which are hereby made part of this agreement to the same extent and with the same effect as if same had been copied in full in this paragraph.

IN WITNESS WHEREOF this instrument is executed in multiple originals in the presence of the undersigned witnesses.

WITNESSES: (As to Lessor's Execution)

Frank E. Ellender

Baird P. McElroy

WITNESSES: (As to all Lessee Execution)

Sign: _____
Print Name: Frank E. Ellender

Sign: _____
Print Name: Baird P. McElroy

THE LOUISIANA LAND AND EXPLORATION COMPANY

By _____
Kermit J. Coulon, Jr.

_____
TERRANCE SHELLEY          Lessee

_____          Lessee

STATE OF Louisiana

PARISH OF Terrebonne

Before me, on this 9 day of March , 2009, personally came and appeared **TERRANCE SHELLEY**, who being by me duly sworn did depose and say that he signed the above and foregoing instrument as his free act and deed for the purposes therein set forth in the presence of the above subscribing witnesses.

Barbara Chauvin
Notary Public    I.D. 9139

FURTHER TERMS AND CONDITIONS to which the lease appearing on the reverse hereof is subject:

4.      All of the rights granted Lessee in this agreement are solely for the benefit of Lessee and Lessee's guest and invitees, and Lessee shall be and remain entirely responsible for such guests and invitees and all actions by any of them; provided, however, that Lessee shall not permit any person to exercise any of such rights or even to go upon the leased premises unless such person is accompanied or the leased premises at all times by a party named as Lessee or a member of such Lessee's immediate family (which shall consist of only Lessee's spouse, parents and children), or unless such person holds written authorization from Lessor; and Lessee shall conduct no commercial operations on the leased premises nor make any charge for the exercise of any of the privileges herein granted.

5.      Lessee may maintain existing ditches and ponds on the leased premises and any existing buildings and facilities owned or placed on the leased premises by Lessee, but, except as may otherwise be provided herein, Lessee shall not construct any additional buildings, levees, dams, fences, or other structures or facilities on the leased premises, nor dredge or dig any additional canals, ditches or ponds thereon, nor otherwise change or alter the leased premises in any manner without first submitting plans and specifications therefor to Lessor and obtaining Lessor's prior written consent thereto. Lessee shall not use or permit the use of air boats or marsh buggies upon the leased premises without the prior written consent of Lessor; nor shall Lessee create any nuisance or disturbance on the leased premises.

6.      Lessee accepts the leased premises and all canals and waterways leading thereto in their present conditions. Lessee further agrees that it will, during the term hereof and thereafter, pay Lessor for and indemnify and hold Lessor harmless against any and all loss, damage, liability, cost or expense, including fines, penalties and reasonable attorneys' fees, on account of injuries to or death of persons, damage to property of any kind, pollution or other damage to the environment or the violation of any law, rule or regulation, arising wholly or partially out of or in connection with or resulting from the use of the leased premises or the canals and waterways leading thereto by Lessee or its guest, invitees or visitors, or the exercise of any of the rights granted herein or any action hereunder, or the breach of any provision of the lease, irrespective of any negligence, strict or absolute liability or fault of Lessor; and, in the event of any suit or other proceeding against Lessor on account thereof, Lessee shall, at Lessor's request, appear and defend same, and Lessee shall pay any assessment or judgment which may be rendered against Lessor therein.

7.      Lessee shall obey and comply with all applicable laws and regulations, shall occupy the leased premises as a prudent caretaker and tenant, shall maintain same at all times in a presentable condition without litter or unsightly debris, shall maintain possession thereof for Lessor, and shall use the leased premises in such a manner as not to interfere with other hunters, trappers or other parties operating thereon or on adjacent property with authorization from Lessor.

8.      This lease is granted subject to all existing surface leases, mineral leases, servitudes, rights of way, permits and other contracts of whatsoever kind, whether recorded or unrecorded, affecting the leased premises, and Lessor reserves the full use and enjoyment and the right to grant to others the full use and enjoyment of the property leased herein, both surface and subsurface, for any and all purposes except those granted and to the extent granted herein. Without limiting the foregoing, Lessor reserves the right to explore, drill and mine for, and produce, remove, treat, store and transport any and all minerals and other natural resources; to hunt, fish, trap, farm, graze, dredge, fill, reclaim and improve said property; and to construct canals, roads, ditches, ponds, levees, dams, fences, buildings, pipelines, telephone and power lines, and other structures, facilities and improvements. All of the rights herein reserved by Lessor may be exercised to the fullest extent, without notice to Lessee and without Lessee's consent, it being understood, and Lessee hereby agrees and declares, that the rights herein granted Lessee are and shall be subject to any use (other than for the purposes and to the extent granted herein) to which Lessor, or those now or hereafter holding under Lessor, may have made or may in the future make of either surface or subsurface of said property, and neither Lessor nor any party now or hereafter holding under Lessor shall have any liability to Lessee on account of any such use.

9.      This lease is granted without any warranty by or recourse on Lessor whatsoever, not even for the return of the consideration. Lessor does not warrant the possession of said property as against trespassers or poachers nor will Lessor be required to undertake any action or proceeding to maintain Lessee in possession of said property. Lessee shall, however, upon obtaining the prior written consent of Lessor, have the right, as Lessee and in Lessee's name, to proceed against trespassers or poachers and to eject them by legal means, all such proceedings to be at the sole cost and expense of Lessee and without liability to Lessor. Lessee shall furnish Lessor copies of all pleadings, documents and correspondence concerning such proceedings, and in the event any party to such proceedings contests the title or possession of Lessor, Lessee shall notify Lessor immediately. Nothing herein contained, however, shall be construed as prohibiting or preventing Lessor from instituting or defending, in its own name, all such actions and other proceedings as it may desire or deem to be to its best interest, against trespassers, poachers or other parties; and in the event of any such proceedings, Lessee shall not be deemed a necessary or indispensable party, either as plaintiff or defendant, it being understood, however, that any benefit (other than any money judgments) derived from any such proceedings or actions shall inure to Lessee hereunder insofar as concerns the rights and privileges granted Lessee herein.

10.     Either party hereto may, with or without cause, cancel this lease at any time by giving ten (10) days written notice to the other party; provided, however, that should Lessor cancel this lease without cause, then Lessor shall refund to Lessee a pro rata portion of the rental received for the then current term based on the unexpired portion of said term. In the event of the death of any party named as a Lessee herein, this lease shall terminate immediately as to such party. The breach of any of the terms, conditions or provisions of this lease by Lessee shall be cause for immediate cancellation thereof, said cancellation to be effective immediately upon Lessor's giving Lessee written notice thereof. Upon cancellation or termination of this lease, all of the Lessee's rights hereunder shall cease, and Lessee shall, within thirty (30) days thereafter, remove any and all buildings, structures, facilities and other property placed or owned by Lessee upon the leased premises, in default of which the same and all contents thereof in whole or in part, at the option of Lessor, and without further action of either party, including the payment of any consideration to Lessee therefor, either shall become the property of Lessor, together with all other improvements on the leased premises, or Lessor may cause the same to be removed or destroyed as Lessor may deem desirable; and Lessee shall reimburse Lessor for the cost of any such removal or destruction as well as the cost of restoring the premises. The waiver of a breach of any of the terms or conditions of this lease shall be limited to the act or acts constituting such breach, and shall never be construed as being a continuing or permanent waiver of any of such terms or conditions or as a waiver of any other terms and conditions hereof, all of which shall be and remain in full force and effect notwithstanding any such waiver.

11.     This lease shall supersede and replace any other surface lease between Lessor and any of the parties named as Lessee covering the leased premises for the same purposes, and such other lease shall be deemed cancelled by virtue of the execution of this lease.

12.     Lessee shall not assign, sublease, transfer or encumber this lease or any rights therein in whole or in part.

13.     If more than one party is named as Lessee herein, the party herein first named as Lessee is hereby irrevocably constituted and appointed by all other parties named Lessee to be their lawful agent and attorney in fact for the purposes of carrying out all of the terms and conditions of this lease, but for this lease only, including but without limitation, for the purposes of receiving and giving all notices hereunder and for service of process concerning all matters arising hereunder. Any notice or other communication required or permitted under the terms and provisions hereof shall be sent to the parties hereto at the addresses hereinabove first set forth, and such notice or communication shall be deemed to have been received by the addressee upon deposit of same in the United States mail, postpaid.

14.     "Lessee acknowledges that any claim for injury or damage to oysters while growing on, or to, the leased premises is the exclusive property of Lessor."

15.     Lessor reserves the right to revise the boundaries of said lease and shall notify lessee of said revisions.

16.     Lessee assumes all responsibility for knowledge of, and shall refrain from any harvesting of oysters on any state oyster leases granted within the boundaries of this lease.

17.     Lessee shall not enter into or upon said leased premises one (1) week prior, thru one (1) week post waterfowl hunting season including any split of said season.

Lease # **P-O-0003**

# SURFACE LEASE

THIS LEASE entered into as of the **April 1, 2009** between THE LOUISIANA LAND AND EXPLORATION COMPANY, a Maryland corporation, authorized to and doing business in the State of Louisiana, whose address for purposes of this lease is Post Office Box 7097, Louisiana 70361 (herein called "Lessor"), and **TERRANCE SHELLEY**, whose address for purposes of this lease is **605 EAST FIRST STREET, BELLE CHASSE, LA 70037** (herein called "Lessee").

**W I T N E S S E T H**

    1.  In consideration of the rental herein provided and the obligations assumed by Lessee herein, but subject to the conditions hereinafter set forth, Lessor does hereby lease and let unto Lessee, for a term beginning on the effective date hereof and terminating one (1) year from such date, for the sole and only purpose of harvesting wild oysters from the following described property, which Lessee acknowledges to be owned by Lessor, to-wit:

    A CERTAIN TRACT OF LAND CONTAINING APPROXIMATELY 1,802 ACRES MORE OR LESS AS BEING SITUATED WEST OF GRAND BAYOU AND SOUTHEAST OF THE FREEPORT SULPHUR COMPANY CANAL IN SECTIONS 22, 23, 25, 26, 27, 28, 34, 35 AND 36, TOWNSHIP 19 SOUTH - RANGE 28 EAST, AND SECTIONS 1, TWONSHIP 21 SOUTH - RANGE 27 EAST, PLAQUEMINES PARISH, LOUISIANA.

**PLAQUEMINES** Parish, Louisiana all as more fully shown outlined in red on the plat attached hereto.

    2.  Upon the execution hereof, Lessee has paid Lessor, as rent for the one year term hereof, the sum of **$ 1,802.00** . Lessee shall have the option to renew this lease from year to year, for a maximum period not to exceed a total of **FIVE** year(s) from the effective date hereof, upon the same terms and conditions and for the same rental hereinabove set forth unless Lessor shall have notified Lessee, at least ten days prior to the expiration of the then current term, of amended terms and conditions, including an increase or decrease in rental, in which event the option to renew shall be upon the then current terms and conditions, including rental, as so amended by said notice. If Lessor has not received the renewal rent prior to the expiration of the then current term, Lessee shall be deemed to have elected not to renew this lease for the succeeding year, and this lease will immediately and automatically terminate.

    3.  This lease is granted by Lessor and accepted by Lessee subject to all of the further terms and conditions which appear on the reverse hereof, all of which are hereby made part of this agreement to the same extent and with the same effect as if same been copied in full in this paragraph.

IN WITNESS WHEREOF this instrument is executed in multiple originals in the presence of the undersigned witnesses.

WITNESSES: (As to Lessor's Execution)

Frank E. Ellender

Baird P. McElroy

WITNESSES: (As to all Lessee's Execution)

Sign:

Print Name: Frank E. Ellender

Sign:

Print Name: Baird P. McElroy

THE LOUISIANA LAND AND EXPLORATION COMPANY

By _____
    Kermit J. Coulon, Jr.

_____
TERRANCE SHELLEY        Lessee

_____
                                Lessee

STATE OF Louisiana

PARISH OF Terrebonne

    Before me, on this 9 day of March , 2009, personally came and appeared **TERRANCE SHELLEY**, who being by me duly sworn did depose and say that he signed the above and foregoing instrument as his free act and deed for the purposes therein set forth in the presence of the above subscribing witnesses.

Barbara Chauvin
Notary Public  I.D. 9139

FURTHER TERMS AND CONDITIONS to which the lease appearing on the reverse hereof is subject:

4.      All of the rights granted Lessee in this agreement are solely for the benefit of Lessee and Lessee's guest and invitees, and Lessee shall be and remain entirely responsible for such guests and invitees and all actions by any of them; provided, however, that Lessee shall not permit any person to exercise any of such rights or even to go upon the leased premises unless such person is accompanied on the leased premises at all times by a party named as Lessee or a member of such Lessee's immediate family (which shall consist of only Lessee's spouse, parents and children), or unless such person holds written authorization from Lessor; and Lessee shall conduct no commercial operations on the leased premises nor make any charge for the exercise of any of the privileges herein granted.

5.      Lessee may maintain existing ditches and ponds on the leased premises and any existing buildings and facilities owned or placed on the leased premises by Lessee, but, except as may otherwise be provided herein, Lessee shall not construct any additional buildings, levees, dams, fences, or other structures or facilities on the leased premises, nor dredge or dig any additional canals, ditches or ponds thereon, nor otherwise change or alter the leased premises in any manner without first submitting plans and specifications therefor to Lessor and obtaining Lessor's prior written consent thereto. Lessee shall not use or permit the use of air boats or marsh buggies upon the leased premises without the prior written consent of Lessor; nor shall Lessee create any nuisance or disturbance on the leased premises.

6.   .   Lessee accepts the leased premises and all canals and waterways leading thereto in their present conditions. Lessee further agrees that it will, during the term hereof and thereafter, pay Lessor for and indemnify and hold Lessor harmless against any and all loss, damage, liability, cost or expense, including fines, penalties and reasonable attorneys' fees, on account of injuries to or death of persons, damage to property of any kind, pollution or other damage to the environment or the violation of any law, rule or regulation, arising wholly or partially out of or in connection with or resulting from the use of the leased premises or the canals and waterways leading thereto by Lesssee or its guest, invitees or visitors, or the exercise of any of the rights granted herein or any action hereunder, or the breach of any provision of the lease, irrespective of any negligence, strict or absolute liability or fault of Lessor; and, in the event of any suit or other proceeding against Lessor on account thereof, Lessee shall, at Lessor's request, appear and defend same, and Lessee shall pay any assessment or judgment which may be rendered against Lessor therein.

7.      Lessee shall obey and comply with all applicable laws and regulations, shall occupy the leased premises as a prudent caretaker and tenant, shall maintain same at all times in a presentable condition without litter or unsightly debris, shall maintain possession thereof for Lessor, and shall use the leased premises in such a manner as not to interfere with other hunters, trappers or other parties operating thereon or on adjacent property with authorization from Lessor.

8.      This lease is granted subject to all existing surface leases, mineral leases, servitudes, rights of way, permits and other contracts of whatsoever kind, whether recorded or unrecorded, affecting the leased premises, and Lessor reserves the full use and enjoyment and the right to grant to others the full use and enjoyment of the property leased herein, both surface and subsurface, for any and all purposes except those granted and to the extent granted herein. Without limiting the foregoing, Lessor reserves the right to explore, drill and mine for, and produce, remove, treat, store and transport any and all minerals and other natural resources; to hunt, fish, trap, farm, graze, dredge, fill, reclaim and improve said property; and to construct canals, roads, ditches, ponds, levees, dams, fences, buildings, pipelines, telephone and power lines, and other structures, facilities and improvements. All of the rights herein reserved by Lessor may be exercised to the fullest extent, without notice to Lessee and without Lessee's consent, it being understood, and Lessee hereby agrees and declares, that the rights herein granted Lessee are and shall be subject to any use (other than for the purposes and to the extent granted herein) to which Lessor, or those now or hereafter holding under Lessor, may have made or may in the future make of either surface or subsurface of said property, and neither Lessor nor any party now or hereafter holding under Lessor shall have any liability to Lessee on account of any such use.

9.      This lease is granted without any warranty by or recourse on Lessor whatsoever, not even for the return of the consideration. Lessor does not warrant the possession of said property as against trespassers or poachers nor will Lessor be required to undertake any action or proceeding to maintain Lessee in possession of said property. Lessee shall, however, upon obtaining the prior written consent of Lessor, have the right, as Lessee and in Lessee's name, to proceed against trespassers or poachers and to eject them by legal means, all such proceedings to be at the sole cost and expense of Lessee and without liability to Lessor. Lessee shall furnish Lessor copies of all pleadings, documents and correspondence concerning such proceedings, and in the event any party to such proceedings contests the title or possession of Lessor, Lessee shall notify Lessor immediately. Nothing herein contained, however, shall be construed as prohibiting or preventing Lessor from instituting or defending, in its own name, all such actions and other proceedings as it may desire or deem to be to its best interest, against trespassers, poachers or other parties; and in the event of any such proceedings, Lessee shall not be deemed a necessary or indispensable party, either as plaintiff or defendant, it being understood, however, that any benefit (other than any money judgments) derived from any such proceedings or actions shall inure to Lessee hereunder insofar as concerns the rights and privileges granted Lessee herein.

10.      Either party hereto may, with or without cause, cancel this lease at any time by giving ten (10) days written notice to the other party; provided, however, that should Lessor cancel this lease without cause, then Lessor shall refund to Lessee a pro rata portion of the rental received for the then current term based on the unexpired portion of said term. In the event of the death of any party named as a Lessee shall be cause for immediate cancellation thereof, said cancellation to be effective immediately upon Lessor's giving Lessee written notice thereof. Upon cancellation or termination of this lease, all of the Lessee's rights hereunder shall cease, and Lessee shall, within thirty (30) days thereafter, remove any and all buildings, structures, facilities and other property placed or owned by Lessee upon the leased premises, in default of which the same and all contents thereof in whole or in part, at the option of Lessor, and without further action of either party, including the payment of any consideration to Lessee therefor, either shall become the property of Lessor, together with all other improvements on the leased premises, or Lessor may cause the same to be removed or destroyed as Lessor may deem desirable; and Lessee shall reimburse Lessor for the cost of any such removal or destruction as well as the cost of restoring the premises. The waiver of a breach of any of the terms or conditions of this lease shall be limited to the act or acts constituting such breach, and shall never be construed as being a continuing or permanent waiver of any of such terms or conditions or as a waiver of any other terms and conditions hereof, all of which shall be and remain in full force and effect notwithstanding any such waiver.

11.      This lease shall supersede and replace any other surface lease between Lessor and any of the parties named as Lessee covering the leased premises for the same purposes, and such other lease shall be deemed cancelled by virtue of the execution of this lease.

12.      Lessee shall not assign, sublease, transfer or encumber this lease or any rights therein in whole or in part.

13.      If more than one party is named as Lessee herein, the party herein first named as Lessee is hereby irrevocably constituted and appointed by all other parties named Lessee to be their lawful agent and attorney in fact for the purposes of carrying out all of the terms and conditions of this lease, but for this lease only, including but without limitation, for the purposes of receiving and giving all notices hereunder and for service of process concerning all matters arising hereunder. Any notice or other communication required or permitted under the terms and provisions hereof shall be sent to the parties hereto at the addresses hereinabove first set forth, and such notice or communication shall be deemed to have been received by the addressee upon deposit of same in the United States mail, postpaid.

14.      "Lessee acknowledges that any claim for injury or damage to oysters while growing on, or to, the leased premises is the exclusive property of Lessor."

15.      Lessor reserves the right to revise the boundaries of said lease and shall notify lessee of said revisions.

16.      Lessee assumes all responsibility for knowledge of, and shall refrain from any harvesting of oysters on any state oyster leases granted within the boundaries of this lease.

17.      Lessee shall not enter into or upon said leased premises one (1) week prior, thru one (1) week post waterfowl hunting season including any split of said season.

| Point | X = | Y = | Point | X = | Y = | Point | X = |
|---|---|---|---|---|---|---|---|
| P.O.B. 1 | 3802899.8567 | 342983.5674 | 81 | 3796911.2660 | 344747.8123 | 161 | 3799847.62 |
| 2 | 3802899.8567 | 342983.5674 | 82 | 3796654.4691 | 344751.5433 | 162 | 3799784.91 |
| 3 | 3802337.1524 | 343471.3567 | 83 | 3796527.2125 | 343975.1370 | 163 | 3799287.44 |
| 4 | 3801834.8418 | 343451.3905 | 84 | 3794997.2455 | 344251.0380 | 164 | 3800033.45 |
| 5 | 3801567.4521 | 343653.1545 | 85 | 3794663.1620 | 344036.0831 | 165 | 3800321.25 |
| 6 | 3801213.3251 | 344330.0479 | 86 | 3793982.5372 | 344370.3798 | 166 | 3800445.56 |
| 7 | 3800660.5319 | 344655.2646 | 87 | 3793654.2340 | 344055.4016 | 167 | 3800543.26 |
| 8 | 3800927.6590 | 344870.1589 | 88 | 3795087.5571 | 343030.7165 | 168 | 3800747.31 |
| 9 | 3801407.1241 | 344463.3534 | 89 | 3795744.4206 | 343181.5373 | 169 | 3800560.54 |
| 10 | 3801763.3877 | 343903.1380 | 90 | 3795098.7316 | 343501.3590 | 170 | 3801127.85 |
| 11 | 3801957.4402 | 343745.0414 | 91 | 3794715.4297 | 343552.5150 | 171 | 3801367.72 |
| 12 | 3802094.0034 | 343707.4973 | 92 | 3794226.0421 | 342237.4556 | 172 | 3801532.55 |
| 13 | 3802469.9101 | 342711.0554 | 93 | 3794111.1945 | 342193.6594 | 173 | 3801814.43 |
| 14 | 3802704.2215 | 343475.4015 | 94 | 3794066.3353 | 342039.9478 | 174 | 3801797.41 |
| 15 | 3802940.5550 | 344483.3555 | 95 | 3794462.9353 | 341592.5104 | 175 | 3801532.17 |
| 16 | 3802991.6049 | 344710.0054 | 96 | 3794791.4797 | 341584.8295 | 176 | 3802802.75 |
| 17 | 3802053.0195 | 344583.5197 | 97 | 3794680.2596 | 341215.5123 | 177 | 3802298.00 |
| 18 | 3802781.2557 | 345097.9013 | 98 | 3794563.9943 | 341230.7109 | 178 | 3802345.13 |
| 19 | 3802360.0553 | 345363.5458 | 99 | 3794514.8455 | 340967.5548 | 179 | 3800752.14 |
| 20 | 3802125.0653 | 345452.0543 | 100 | 3794360.2496 | 340890.9094 | 180 | 3803369.81 |
| 21 | 3801932.5817 | 345590.0290 | 101 | 3793961.9117 | 341407.0537 | 181 | 3803555.66 |
| 22 | 3801562.2734 | 345756.4006 | 102 | 3793975.8135 | 341392.1697 | 182 | 3802723.53 |
| 23 | 3801476.0443 | 345341.5045 | 103 | 3793529.9146 | 341387.0090 | 183 | 3804007.49 |
| 24 | 3801369.0543 | 345921.4649 | 104 | 3793015.2854 | 341618.0870 | 184 | 3804034.44 |
| 25 | 3800950.7206 | 345270.0680 | 105 | 3792398.5375 | 341303.9093 | 185 | 3804177.07 |
| 26 | 3800485.3770 | 346882.2045 | 106 | 3792845.4401 | 341355.4794 | 186 | 3804421.90 |
| 27 | 3800301.9295 | 346712.5857 | 107 | 3792264.5480 | 341184.1590 | 187 | 3804500.48 |
| 28 | 3800047.3205 | 346096.1253 | 108 | 3793451.4114 | 341060.3307 | 188 | 3804653.37 |
| 29 | 3799963.9963 | 347012.5817 | 109 | 3792661.1408 | 340976.7151 | 189 | 3803291.53 |
| 30 | 3799589.6935 | 347285.0683 | 110 | 3792908.6790 | 340888.6540 | 190 | 3803531.32 |
| 31 | 3799345.6658 | 347534.0628 | 111 | 3792962.6209 | 340606.8557 | 191 | 3803465.32 |
| 32 | 3799206.7493 | 347791.1741 | 112 | 3793176.6200 | 340736.5848 | 192 | 3803458.70 |
| 33 | 3799018.6302 | 348302.0144 | 113 | 3793231.0076 | 340632.4350 | 193 | 3803455.70 |
| 34 | 3799915.9462 | 348491.2400 | 114 | 3793485.3261 | 340476.1404 | 194 | 3803170.08 |
| 35 | 3799745.3372 | 348526.7593 | 115 | 3793452.4423 | 340311.4953 | 195 | 3802905.90 |
| 36 | 3799527.9643 | 349103.1127 | 116 | 3793572.8766 | 339800.4308 | 196 | 3802653.00 |
| 37 | 3799827.0597 | 349243.4300 | 117 | 3793597.3363 | 339031.5703 | 197 | 3802471.38 |
| 38 | 3799052.2725 | 348319.3335 | 118 | 3793251.5043 | 339512.2165 | 198 | 3802634.48 |
| 39 | 3797764.2115 | 349404.4795 | 119 | 3793750.5679 | 339576.0445 | 199 | 3802047.64 |
| 40 | 3797296.1977 | 349437.5523 | 120 | 3793961.7583 | 339548.7165 | 200 | 3801887.78 |
| 41 | 3797693.3606 | 349415.7774 | 121 | 3793879.5954 | 339461.7964 | 201 | 3801525.44 |
| 42 | 3797119.1670 | 349553.5578 | 122 | 3793906.1329 | 339459.4450 | 202 | 3801432.33 |
| 43 | 3797125.9353 | 349537.5505 | 123 | 3794340.0779 | 339683.1720 | 203 | 3801310.02 |
| 44 | 3797048.5793 | 349605.0293 | 124 | 3794406.5124 | 339475.0573 | 204 | 3801057.10 |
| 45 | 3796651.9427 | 349411.2250 | 125 | 3794530.6120 | 339453.5403 | 205 | 3800653.45 |
| 46 | 3796784.5691 | 349290.6167 | 126 | 3794732.9873 | 339530.8557 | 206 | 3800792.21 |
| 47 | 3796552.5139 | 349580.2709 | 127 | 3794677.3211 | 339531.1451 | 207 | 3800006.00 |
| 48 | 3796506.8675 | 348666.2069 | 128 | 3795151.4715 | 339725.6160 | 208 | 3800508.90 |
| 49 | 3796608.5643 | 349577.5503 | 129 | 3795383.3423 | 339653.4803 | 209 | 3800096.33 |
| 50 | 3796590.5643 | 343577.5472 | 130 | 3795409.4424 | 339643.7507 | 210 | 3800023.98 |
| 51 | 3796515.0562 | 343541.1002 | 131 | 3795605.5985 | 339091.5571 | 211 | 3800062.27 |
| 52 | 3796826.0190 | 349707.5503 | 132 | 3795670.0106 | 339995.1497 | 212 | 3800053.21 |
| 53 | 3797485.1976 | 349656.2415 | 133 | 3796312.5099 | 339620.4850 | 213 | 3800071.00 |
| 54 | 3796755.0070 | 347700.1111 | 134 | 3796713.3169 | 339567.5585 | 214 | 3800011.34 |
| 55 | 3796341.0721 | 349002.5500 | 135 | 3797933.0463 | 339814.5197 | 215 | 3800339.50 |
| 56 | 3796041.0651 | 340455.6675 | 136 | 3797130.3953 | 339632.9301 | 216 | 3800455.46 |
| 57 | 3796233.5192 | 340642.4221 | 137 | 3797045.5665 | 339445.2100 | 217 | 3800653.09 |
| 58 | 3796368.5449 | 349315.5194 | 138 | 3797073.7667 | 339157.0490 | 218 | 3800311.27 |
| 59 | 3796504.5555 | 340620.4570 | 139 | 3797103.2962 | 339000.4118 | 219 | 3801051.10 |
| 60 | 3796665.8352 | 340019.5721 | 140 | 3796812.0516 | 338995.5433 | 220 | 3801235.86 |
| 61 | 3796863.1760 | 347806.8558 | 141 | 3797131.8969 | 338856.8383 | 221 | 3801342.99 |
| 62 | 3795021.2943 | 347345.5002 | 142 | 3797042.5317 | 338912.6456 | 222 | 3801532.15 |
| 63 | 3794955.5298 | 347246.2717 | 143 | 3796675.2139 | 338433.7341 | 223 | 3801461.55 |
| 64 | 3794715.0595 | 346925.8502 | 144 | 3796645.0750 | 338365.3237 | 224 | 3802290.00 |
| 65 | 3794562.9465 | 346542.2253 | 145 | 3796755.2165 | 338185.1589 | 225 | 3802157.70 |
| 66 | 3795779.3070 | 345565.3500 | 146 | 3796754.6523 | 338070.3245 | 226 | 3802496.78 |
| 67 | 3793590.7897 | 345735.7846 | 147 | 3796936.2165 | 337940.1606 | 227 | 3802654.05 |
| 68 | 3793140.7392 | 346239.9407 | 148 | 3796867.8544 | 337978.2559 | 228 | 3800664.49 |
| 69 | 3793316.3350 | 344496.7597 | 149 | 3797330.2830 | 337770.7625 | 229 | 3809917.38 |
| 70 | 3792957.5636 | 344466.0244 | 150 | 3797336.7100 | 338212.3290 | 230 | 3803061.70 |
| 71 | 3792241.3909 | 344531.3690 | 151 | 3797722.3750 | 338507.3549 | 231 | 3803082.95 |
| 72 | 3792411.1174 | 344296.3605 | 152 | 3797950.5290 | 338504.9057 | 232 | 3803034.46 |
| 73 | 3792562.3530 | 344374.9070 | 153 | 3795905.3794 | 338050.5319 | 233 | 3803035.29 |
| 74 | 3792974.7691 | 344422.9872 | 154 | 3795302.1555 | 335370.3947 | 234 | 3803686.94 |
| 75 | 3792545.2447 | 340047.7036 | 155 | 3798456.6175 | 338793.4042 | 235 | 3803511.79 |
| 76 | 3792450.9518 | 344960.0398 | 156 | 3796752.7032 | 338836.4592 | 236 | 3802775.74 |
| 77 | 3795737.3836 | 345527.5441 | 157 | 3796995.5096 | 338693.1290 | 237 | 3802757.35 |
| 78 | 3795724.6781 | 345559.5503 | 158 | 3799166.8427 | 338592.2725 | 238 | 3802751.53 |
| 79 | 3795905.7395 | 345480.3172 | 159 | 3799353.3029 | 338656.6327 | 239 | 3803731.38 |
| 80 | 3796963.9263 | 344307.6670 | 160 | 3799537.6261 | 338632.6569 | 240 | 3803681.27 |
| | | | | | | 241 | 3803856.84 |

NOTES:
1. COORDINATES REFER TO THE LOUISIANA STATE PLANE COORDINATE SYSTEM, NAD 1983, SOUTH ZONE.

SHEET

Scale: 1" =

REVISED: DEC

NOV

# OYSTER LEASE SURVEY

I certify that I surveyed on this day _____JULY , 15_____ , 1998, for the lessee ____TERR

_____ the boundaries and limits of his oyster lease located within a  ]

land owned by _____THE LOUISIANA LAND & EXPLORATION CO._____ for Oyster Harves

containing ____1,802____ SUPERFICIAL ACRES, situated ____JUST WEST OF GRAND BAYOU AN

OF THE FREEPORT SULPHUR CO. CANAL  in sections  22,23,25,26,27,28,34,35,&36



T 19 S – R 27 E

*LL&E*
*OYSTER LEASE CONTAINS*
*1,802 ACS.*

NOTES:

1. COORDINATES REFER TO THE LOUISIANA STATE PLANE COORDINATE SYSTEM,
   NAD 1983, SOUTH ZONE.
2. THIS SURVEY WAS DONE UNDER MY DIRECT SUPERVISION AND THE MEASUREMENTS AND
   OTHER DATA INDICATED ARE CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.
3. THIS SURVEY PLAT DOES NOT REPRESENT A PROPERTY BOUNDARY SURVEY AND IS
   INTENDED FOR OYSTER LEASE PURPOSES ONLY AND IS LOCATED ENTIRELY WITHIN
   PROPERTY OWNED BY THE LOUISIANA LAND AND EXPLORATION COMPANY. THIS OYSTER
   LEASE HAS NOT BEEN MONUMENTED ON THE GROUND.
4. THIS SURVEY PLAT DOES NOT PURPORT TO SHOW THE LOCATION OF ANY EXISTING
   SERVITUDES, EASEMENTS, AND/OR RIGHT-OF-WAY WHICH MAY AFFECT SAID LEASE.
5. TOPOGRAPHY PLOTTED FROM U.S.G.S. QUADRANGLE "PORT SULPHUR, LA." 1993.
6. ALL ADJACENT OYSTER LEASE INFORMATION WAS SUPPLIED BY THE LA. WILDLIFE
   AND FISHERIES OYSTER DIVISION.

SHEET

Scale: 1"

REVISED: DE
NO

# *OYSTER  LEASE  SURVEY*

I certify that I surveyed on this day ____ *JULY , 15* ____ , 1998, for the lessee ___ *TER*

_____ the boundaries and limits of his oyster lease located within a

land owned by ____ *THE LOUISIANA LAND & EXPLORATION CO.* ____ for Oyster Harves

containing ___ *1,802* ___ SUPERFICIAL ACRES, situated ___ *JUST WEST OF GRAND BAYOU A*

OF THE FREEPORT SULPHUR CO. CANAL ___ in sections *22,23,25,26,27,28,34,35,&36* ___ T. *19*

# SURFACE LEASE

THIS LEASE entered into as of the **April 1, 2008** between THE LOUISIANA LAND AND EXPLORATION COMPANY, a Maryland corporation, whose address for purposes of this lease is Post Office Box 7097, Louisiana 70361 (herein called "Lessor"), and TERRANCE **SHELLEY**, whose address for purposes of this lease is **605 EAST FIRST STREET, BELLE CHASSE, LA 70037** (herein called "Lessee").

## WITNESSETH

1.  In consideration of the rental herein provided and the obligations assumed by Lessee herein, but subject to the conditions hereinafter set forth, Lessor does hereby lease and let unto Lessee, for a term beginning on the effective date hereof and terminating one (1) year from such date, for the sole and only purpose of harvesting wild oysters from the surface of the following described property, which Lessee acknowledges to be owned by Lessor, to-wit:

> TWO CERTAIN TRACTS OF LAND CONTAINING APPROXIMATELY 1330 ACRES MORE OR LESS, BEING SITUATED IN THE VICINITY OF BAYOU ST. DENIS, BAYOU DUPONT, WILKINSON CANAL AND BARATARIA BAY, LOCATED IN SECTIONS 13, 14, 23, 24, 25 AND 36, TOWNSHIP 18 SOUTH-RANGE 24 EAST, SECTION 1, TOWNSHIP 19 SOUTH-RANGE 24 EAST, SECTIONS 5 AND 6, TOWNSHIP 19 SOUTH-RANGE 25 EAST, JEFFERSON AND PLAQUEMINES PARISHES, LOUISIANA. ALL AS MORE FULLY SHOWN OUTLINED IN RED ON THE PLAT MARKED EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

2.  Upon the execution hereof, Lessee has paid Lessor, as rent for the one year term hereof, the sum of **$ 1,330.00** . Lessee shall have the option to renew this lease from year to year, for a maximum period not to exceed a total of **FIVE** year(s) from the effective date hereof, upon the same terms and conditions and for the same rental hereinabove set forth unless Lessor shall have notified Lessee, at least ten days prior to the expiration of the then current term, of amended terms and conditions, including an increase or decrease in rental, in which event the option to renew shall be upon the then current terms and conditions, including rental, as so amended by said notice. If Lessor has not received the renewal rent prior to the expiration of the then current term, Lessee shall be deemed to have elected not to renew this lease for the succeeding year, and this lease will immediately and automatically terminate.

3.  This lease is granted by Lessor and accepted by Lessee subject to all of the further terms and conditions which appear on the reverse hereof, all of which are hereby made part of this agreement to the same extent and with the same effect as if same had been copied in full in this paragraph.

IN WITNESS WHEREOF this instrument is executed in multiple originals in the presence of the undersigned witnesses.

WITNESSES: (As to Lessor's Execution)

THE LOUISIANA LAND AND EXPLORATION COMPANY

Barbara C Chauvin

By _____
Kermit J. Coulon, Jr.

WITNESSES: (As to all Lessee Execution)

x Stephanie B Reeves
**Stephanie B. Reeves**

x Robin F. Bono
**Robin F. Bono**

TERRANCE SHELLEY                                    Lessee

_____  Lessee

_____  Lessee

_____  Lessee

STATE OF **LOUISIANA**

PARISH OF **PLAQUEMINES**

Before me, on this 23 day of May , 2008 , personally came and appeared TERRANCE SHELLEY, who being by me duly sworn did depose and say that he signed the above and foregoing instrument as his free act and deed for the purposes therein set forth in the presence of the above subscribing witnesses.

**Corey E. Dunbar**
Notary Public, Parish of Plaquemines, State of Louisiana
My Commission is issued for life
Bar No. 30144

_____
Notary Public

THIS DOCUMENT WAS NOT PREPARED OR EXAMINED BY THE NOTARY NAMED ABOVE AND THE NOTARY ATTESTS ONLY TO THE SIGNATURES OF THE PARTIES HEREIN.

*Notary only insofar Terrance Shelley is concerned*

FURTHER TERMS AND CONDITIONS to which the lease appearing on the reverse hereof is subject:

4.    All of the rights granted Lessee in this agreement are solely for the benefit of the Lessee and Lessee's guest and invitees, and Lessee shall be and remain entirely responsible for such guests and invitees and all actions by any of them; provided, however, that Lessee shall not permit any person to exercise any of such rights or even to go upon the leased premises unless such person is accompanied on the leased premises at all times by a party named as Lessee or a member of such Lessee's immediate family (which shall consist of only Lessee's spouse, parents and children), or unless such person holds written authorization from Lessor; and Lessee shall conduct no commercial operations on the leased premises nor make any charge for the exercise of any of the privileges herein granted.

5.    Lessee may maintain existing ditches and ponds on the leased premises and any existing buildings and facilities owned or placed on the leased premises by Lessee, but, except as may otherwise be provided herein, Lessee shall not construct any additional buildings, levees, dams, fences, or other structures or facilities on the leased premises, nor dredge or dig any additional canals, ditches or ponds thereon, nor otherwise change or alter the leased premises in any manner without first submitting plans and specifications therefor to Lessor and obtaining Lessor's prior written consent thereto. Lessee shall not use or permit the use of air boats or marsh buggies upon the leased premises without the prior written consent of Lessor; nor shall Lessee create any nuisance or disturbance on the leased premises.

6.    Lessee accepts the leased premises and all canals and waterways leading thereto in their present conditions. Lessee further agrees that it will, during the term hereof and thereafter, pay Lessor for and indemnify and hold Lessor harmless against any and all loss, damage, liability, cost or expense, including fines, penalties and reasonable attorneys' fees, on account of injuries to or death of persons, damage to property of any kind, pollution or other damage to the environment or the violation of any law, rule or regulation, arising wholly or partially out of or in connection with or resulting from the use of the leased premises or the canals and waterways leading thereto by Lessee or its guest, invitees or visitors, or the exercise of any of the rights granted herein or any action hereunder, or the breach of any provision of the lease, irrespective of any negligence, strict or absolute liability or fault of Lessor; and, in the event of any suit or other proceeding against Lessor on account thereof, Lessee shall, at Lessor's request, appear and defend same, and Lessee shall pay any assessment or judgment which may be rendered against Lessor therein.

7.    Lessee shall obey and comply with all applicable laws and regulations, shall occupy the leased premises as a prudent caretaker and tenant, shall maintain same at all times in a presentable condition without litter or unsightly debris, shall maintain possession thereof for Lessor, and shall use the leased premises in such a manner as not to interfere with other hunters, trappers or other parties operating thereon or on adjacent property with authorization from Lessor.

8.    This lease is granted subject to all existing surface leases, mineral leases, servitudes, rights of way, permits and other contracts of whatsoever kind, whether recorded or unrecorded, affecting the leased premises, and Lessor reserves the full use and enjoyment and the right to grant to others the full use and enjoyment of the property leased herein, both surface and subsurface, for any and all purposes except those granted and to the extent granted herein. Without limiting the foregoing, Lessor reserves the right to explore, drill and mine for, and produce, remove, treat, store and transport any and all minerals and other natural resources; to hunt, fish, trap, farm, graze, dredge, fill, reclaim and improve said property; and to construct canals, roads, ditches, ponds, levees, dams, fences, buildings, pipelines, telephone and power lines, and other structures, facilities and improvements. All of the rights herein reserved by Lessor may be exercised to the fullest extent, without notice to Lessee and without Lessee's consent, it being understood, and Lessee hereby agrees and declares, that the rights herein granted Lessee are and shall be subject to any use (other than for the purposes and to the extent granted herein) to which Lessor, or those now or hereafter holding under Lessor, may have made or may in the future make of either surface or subsurface of said property, and neither Lessor nor any party now or hereafter holding under Lessor shall have any liability to Lessee on account of any such use.

9.    This lease is granted without any warranty by or recourse on Lessor whatsoever, not even for the return of the consideration. Lessor does not warrant the possession of said property as against trespassers or poachers nor will Lessor be required to undertake any action or proceeding to maintain Lessee in possession of said property. Lessee shall, however, upon obtaining the prior written consent of Lessor, have the right, as Lessee and in Lessee's name, to proceed against trespassers or poachers and to eject them by legal means, all such proceedings to be at the sole cost and expense of Lessee and without liability to Lessor. Lessee shall furnish Lessor copies of all pleadings, documents and correspondence concerning such proceedings, and in the event any party to such proceedings contests the title or possession of Lessor, Lessee shall notify Lessor immediately. Nothing herein contained, however, shall be construed as prohibiting or preventing Lessor from instituting or defending, in its own name, all such actions and other proceedings as it may desire or deem to be to its best interest, against trespassers, poachers or other parties; and in the event of any such proceedings, Lessee shall not be deemed a necessary or indispensable party, either as plaintiff or defendant, it being understood, however, that any benefit (other than any money judgments) derived from any such proceedings or actions shall inure to Lessee hereunder insofar as concerns the rights and privileges granted Lessee herein.

10.    Either party hereto may, with or without cause, cancel this lease at any time by giving ten (10) days written notice to the other party; provided, however, that should Lessor cancel this lease without cause, then Lessor shall refund to Lessee a pro rata portion of the rental received for the then current term based on the unexpired portion of said term. In the event of the death of any party named as a Lessee herein, this lease shall terminate immediately as to such party. The breach of any of the terms, conditions or provisions of this lease by Lessee shall be cause for immediate cancellation thereof, said cancellation to be effective immediately upon Lessor's giving Lessee written notice thereof. Upon cancellation or termination of this lease, all of the Lessee's rights hereunder shall cease, and Lessee shall, within thirty (30) days thereafter, remove any and all buildings, structures, facilities and other property placed or owned by Lessee upon the leased premises, in default of which the same and all contents thereof in whole or in part, at the option of Lessor, and without further action of either party, including the payment of any consideration to Lessee therefor, either shall become the property of Lessor, together with all other improvements on the leased premises, or Lessor may cause the same to be removed or destroyed as Lessor may deem desirable; and Lessee shall reimburse Lessor for the cost of any such removal or destruction as well as the cost of restoring the premises. The waiver of a breach of any of the terms or conditions of this lease shall be limited to the act or acts constituting such breach, and shall never be construed as being a continuing or permanent waiver of any of such terms or conditions or as a waiver of any other terms and conditions hereof, all of which shall be and remain in full force and effect notwithstanding any such waiver.

11.    This lease shall supersede and replace any other surface lease between Lessor and any of the parties named as Lessee, covering the leased premises for the same purposes, and such other lease shall be deemed cancelled by virtue of the execution of this lease.

12.    Lessee shall not assign, sublease, transfer or encumber this lease or any rights therein in whole or in part.

13.    If more than one party is named as Lessee herein, the party herein first named as Lessee is hereby irrevocably constituted and appointed by all other parties named Lessee to be their lawful agent and attorney in fact for the purposes of carrying out all of the terms and conditions of this lease, but for this lease only, including but without limitation, for the purposes of receiving and giving all notices hereunder and for service of process concerning all matters arising hereunder. Any notice or other communication required or permitted under the terms and provisions hereof shall be sent to the parties hereto at the addresses hereinabove first set forth, and such notice or communication shall be deemed to have been received by the addressee upon deposit of same in the United States mail, postpaid.

14.    "Lessee acknowledges that any claim for injury or damage to oysters while growing on, or to, the leased premises is the exclusive property of Lessor."

15.    Lessor reserves the right to revise the boundaries of said lease and shall notify lessee of said revisions.

16.    Lessee assumes all responsibility for knowledge of, and shall refrain from any harvesting of oysters on any state oyster leases granted within the boundaries of this lease.

17.    Lessee shall not enter into or upon said leased premises one (1) week prior, thru one (1) week post waterfowl hunting season including any split of said season.



# EXHIBIT "A"
## OYSTER LEASE P-O-009
### TO
### TERRY SHELLEY
Approx. 1,330 Acs.
May 14, 2008



LOUISIANA LAND AND
EXPLORATION CO.