### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re: Oil Spill by the Oil Rig** *Deepwater Horizon* **in the Gulf Of Mexico, on April 20, 2010** **This document applies to: ALL CASES** | **MDL No. 2179** **SECTION: J** **JUDGE BARBIER** **MAGISTRATE SHUSHAN** |

### DEFENDANTS TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC., TRANSOCEAN HOLDINGS LLC, TRANSOCEAN DEEPWATER INC. AND TRITON ASSET LEASING GMBH 'S OPPOSITION TO ALL MOTIONS FOR ADVERSE INFERENCES AGAINST TRANSOCEAN

COME NOW Transocean Offshore Deepwater Drilling Inc., Transocean Holdings LLC, Transocean Deepwater Inc. and Triton Asset Leasing GmbH (collectively "Transocean"), by and through their undersigned counsel, and respectfully submit this Opposition to the various parties' motions to draw adverse inferences from the invocations of the Fifth Amendment privilege by Transocean employees Steve Bertone, Andrea Fleytas, Jimmy Harrell, Caleb Holloway, Curt Kuchta, Patrick Morgan, Micah Sandell, Alan Seraile, Wyman Wheeler, and Halliburton employee Christopher Haire, during each of their respective depositions. Transocean respectfully submits this Opposition in response to these motions, pursuant to the Court's Order regarding Briefing for Adverse Inference Motions (Rec. Doc. 7107).[1]

### I. INTRODUCTION

The Plaintiffs, the United States, BP, and Halliburton (the "parties") seek inferences against Transocean on the basis of Fifth Amendment invocations by non-party witnesses whom

---

[1] Transocean has previously submitted objections to the designated portions of depositions for Phase I. By filing this opposition to other parties' motions to draw adverse inferences, Transocean does not waive or give up any of those previously submitted objections.

Transocean has never designated to testify on its behalf.  These witnesses' interests are insufficiently aligned with Transocean's, and their refusals to testify do not support reliable inferences against the company.  Furthermore, the requested inferences lack evidentiary support, and a number of them are based on refusals to answer improperly broad, leading, or inadequately supported questions.

Adverse inferences may be drawn only on a question-by-question basis under narrow circumstances.  In its own limited requests for adverse inferences, Transocean has sought to ensure that these criteria are met.  The parties seeking adverse inferences against Transocean have not done so.  Rather, they seek to draw broad and unsupported inferences from various witnesses' refusals to answer questions.  The Court should deny the motions for adverse inferences against Transocean on the basis of these non-party witnesses' invocation of their Fifth Amendment rights.

## II.     GENERAL OBJECTIONS

A non-party witness's refusal to testify on Fifth Amendment grounds can serve as a basis for adverse inferences against an aligned party only in very limited circumstances.  In a civil trial, the finder of fact may draw adverse inferences against non-party witnesses who refuse to testify "in response to probative evidence against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).  However, a party is never *entitled* to an adverse inference from a witness's invocation of the Fifth Amendment—the inference is strictly permissive.  *See Daniels v. Pipefitters' Ass'n Local Union No. 597*, 983 F.2d 800, 802 (7th Cir. 1993).  The decision whether a particular inference is appropriate falls within the discretion of the district court. *FDIC v. Fidelity & Deposit Co.*, 45 F.3d 969, 977, 978 (5th Cir. 1995).  Ultimately, the "overarching concern" in assessing the appropriateness of an adverse inference is whether the inference "is trustworthy under all of the circumstances and will advance the search for the

truth." *LiButti v. United States*, 107 F.3d 110, 124 (2d Cir. 1997); (*accord* Rec. Doc. 7645-1 ("BP Mot.") at 2-3; Rec. Doc. 7644-1 ("HESI Mot.") at 2).

The parties' motions for adverse inferences are replete with attempts by deposing attorneys to extract extensive factual and legal conclusions about Transocean from non-party witnesses' invocation of their Fifth Amendment rights. These requests attempt to circumvent the need to support arguments with evidence, and should not be endorsed by the Court. Accordingly, Transocean makes the following general objections against the parties' requests for adverse inferences.

### A.  The Court Should Not Draw Adverse Inferences in the Absence of Corroborating Evidence

The Supreme Court has approved adverse inferences from a party witness's refusal to testify only "in response to probative evidence offered against them." *Baxter*, 425 U.S. at 318-19. This language indicates that an adverse inference, on its own, cannot serve as the basis for adverse factual findings or conclusions. Thus, in the absence of other probative and admissible evidence corroborating a requested inference, the parties should not be permitted to rely on their requested inferences alone. The Plaintiffs disregard the requirement of corroborative evidence altogether—neither their motion nor its accompanying exhibits identify probative evidence that would support an adverse inference from a witness's silence. BP makes a nominal effort to show that its requested inferences are supported by evidence by including footnotes that supply unorganized lists of exhibits. (*See, e.g.*, BP Mot. at 9-10 n.4, 15-16 n.5, 24 n.6, 27 n.7, 28-29 n.8, 36-37 n.9, 43-44 n.10, 50 n.11, 56 n.12.) And Halliburton purports to comply with this requirement by citing deposition exhibits in addition to the relevant deposition testimony. (*See generally* HESI Mot. at 2-12.) But none of the parties demonstrate with adequate specificity that

the witnesses invoked their Fifth Amendment rights "in response to" corroborating evidence.  In the absence of such evidence, the Court should not draw inferences against Transocean.

> **B.     The Court Should Not Draw Adverse Inferences From the Fifth Amendment Invocations of Employees Whose Interests Are Not Aligned With Transocean**

When evaluating the appropriateness of an adverse inference from a non-party witness's invocation of the Fifth Amendment privilege, courts consider (1) the nature of the relationship between the party and the witness, (2) the degree of control of the party over the non-party, (3) the compatibility of the interests of the party and non-party in the outcome of the litigation, and (4) the role of the non-party witness in the litigation.  *LiButti*, 107 F.3d at 123-24.  The "nature of the relationship" between the witness and the party is "the most significant circumstance" for purposes of this inquiry.  *Id.* at 123; *accord In re Handy & Harman Ref. Group, Inc.*, 266 B.R. 32, 35 (Bankr. D. Conn. 2001).  The Fifth Circuit has recognized, in particular, that "a non-party who stands in no special relationship to the party at the time of trial may purposefully invoke the privilege solely to discredit the party.  The classic example would be a disgruntled former employee who invokes the privilege to hurt his former employer."  *FDIC v. Fidelity & Deposit Co.*, 45 F.3d 969, 978 (5th Cir. 1995).

No party seeking an adverse inference against Transocean has demonstrated that any of the Transocean employees who invoked their Fifth Amendment rights had interests sufficiently aligned with Transocean to support any adverse inference.  A number of the employees were formally adverse to Transocean, having filed lawsuits arising from the blowout, and others had retained counsel and pursued settlements without initiating formal litigation.[2]  These witnesses

---

[2] Stephen Bertone, Andrea Fleytas, Patrick Morgan, Micah Sandell, Alan Seraile, and Wyman Wheeler filed bodily injury lawsuits relating to the blowout and settled their claims.  Jimmy Harrell, Caleb Hollway and Curt Kuchta did not formally file suit, but settled their claims for bodily injury.  All parties were represented by separate counsel throughout the MDL.

- 4 -

adversarial relationship with Transocean undermines the probative value (against Transocean) of their refusals to testify. *Cf. United States v. Philip Morris USA Inc.*, No. 99-2496(GK), 2004 WL 5916865, at *1 (D.D.C. July 23, 2004) (excluding a former employee's Fifth Amendment invocation on the grounds that he was "hostile and adverse" to his employer and that the employer "had no control" over him). One witness, Christopher Haire, from whose testimony the Plaintiffs seek inferences against Transocean (Rec. Doc. 5873-7 at 10-13), is an employee of Halliburton and thus plainly has no connection to Transocean. And some, if not all, of these witnesses face potential personal liability in civil or criminal proceedings under theories that would require them to adopt positions adverse to Transocean's interests. These considerations preclude any inference against Transocean based on these witnesses' refusals to testify.

### III.  OBJECTIONS TO SPECIFIC INFERENCES SOUGHT BY THE PARTIES

Even if the parties clear the initial hurdle and demonstrate that the witnesses who invoked the Fifth Amendment have interests sufficiently aligned with Transocean, they must show, for each specific adverse inference, that the requested inference is corroborated by independent evidence and that the witness refused to answer a proper question. Accordingly, in addition to its general objection about the witnesses' lack of alignment with Transocean, Transocean also objects to the parties' specific requests for inferences. Because the parties collectively seek a large volume of adverse inferences against Transocean, and because these requests share many defects, Transocean will first describe the various types of objections it has to the inferences sought by other parties. Then, in the Appendix, Transocean designates particular objections to the specific inferences and supporting testimony set forth by each party.

### A. The Propriety of an Adverse Inference Should Be Decided on a Question-by-Question Basis

Even when an adverse inference may be drawn from a non-party witness's invocation of the Fifth Amendment, the finder of fact must still determine whether the inference is permissible under the rules of evidence. *See Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 210 (5th Cir. 1983). Transocean objects to the parties' requests for inferences for a broad variety of reasons explained in detail below and set forth as to each particular requested inference in the Appendix.

#### 1. No Adverse Inference May Be Drawn from a Witness's Refusal to Answer a Question that Falls Outside the Witness's Personal Knowledge

Transocean objects to inferences sought from a witness's refusal to answer a question in the absence of evidence that the witness had personal knowledge about the subject matter addressed by the question. A fact witness may only testify about a subject "if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Accordingly, "any adverse inference drawn from [a witness's] testimonial silence requires finding that [the witness] had personal knowledge of the subject about which he refuses to testify." *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 415 F. Supp. 2d 628, 634 (E.D. Va. 2006).

The parties seek inferences against Transocean that violate these principles in a number of ways. *First*, the parties request inferences from questions without first establishing that the witness has personal knowledge of the question's subject matter. For example, BP asks the Court to infer that "Transocean did not detect the kick, and thus failed to rapidly shut in the well when it started to flow" from Allen Seraile's refusal to answer the question, "On April 20th there was no early kick detection by the people hired by TO to monitor the well, right?" BP Mot. at 43. But BP does not include any contextual indication that Seraile would be aware of any and all

kick detection by Transocean employees, and the question itself does not limit the scope of Seraile's hypothetical response to information within his personal knowledge. Seraile's non-answer simply does not provide any evidence one way or another about Transocean crew members' kick detection activities on April 20, 2010.

*Second*, the parties seek inferences from witnesses' refusal to answer questions that sought an opinion about subject matter that would be appropriately explored by an expert. For example, BP asked Steve Bertone, "A rig saver is a safety device that shuts off ventilation of air into the engine and thus a potential ignition source; is that correct?" BP Mot. at 33. BP does not establish that Bertone is qualified to answer this question, and such testimony would normally be excluded at trial. *See* Fed. R. Evid. 701 (excluding testimony "based on scientific, technical, or other specialized knowledge").

*Third*, in several depositions, a witness was asked compound questions, parts of which the witness might arguably have had foundation to answer, but other parts of which the witness would not. For example, BP asked Steve Bertone the question, "TO understood *and* you understood in April of 2010 that maintenance and repair of equipment was important to assure that the Transocean crew could monitor for well control events, close in the well during an influx of hydrocarbon, and prevent a fire and explosion on the rig; correct?" (BP Mot. at 29 (emphasis added).) Though Bertone has personal knowledge of what *he* subjectively understood, BP did not (and cannot) establish his personal knowledge of what Transocean knew as a company. The inference BP seeks to draw from this question, that "Transocean knew that maintenance and repair of equipment was important to assure that Transocean's rig crew could monitor for well control events, close in the well during an influx of hydrocarbons, and prevent a fire and explosion on the rig," is an impermissible one. *Id.*

Transocean objects to the parties' requests for inferences to the extent they rely on witnesses' refusal to respond to questions that were improper in the ways described above. In the list of specific objections in the Appendix, Transocean indicates that it is objecting to an inference for this reason with the word "Foundation." If Transocean's objection is based on the fact that the question or inference covers subject matter appropriately suited for an expert, Transocean uses the phrase "Foundation (Expert)."

### 2. No Adverse Inference May Be Drawn from a Witness's Refusal to Answer a Question that Impermissibly Asks for an Opinion

Transocean objects to inferences sought by the parties from unanswered questions that impermissibly call for opinion testimony. Opinion testimony by a lay witness is only permitted if it is "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and is "not based on scientific, technical or other specialized knowledge within the scope." Fed. R. Evid. 701. The parties seek inferences from questions that seek lay opinions without establishing that it meets these evidentiary requirements. For example, BP asks the Court to infer that "Transocean failed to maintain a sufficient amount of manpower to maintain and repair the *Deepwater Horizon*" from Bertone's refusal to answer the question, "Transocean had insufficient manpower on the Deepwater Horizon on April 2010 to carry out these safety critical repair and maintenance functions, correct?" But BP does not explain why the initial question, which clearly seeks Bertone's opinions on the sufficiency of Transocean's staffing policies, meets Rule 701's requirements.

In the Appendix, Transocean notes objections on this ground with the phrase "Opinion."

### 3. If an Inference Is Drawn from a Witness's Refusal to Answer a Question, the Inference Must Be Adverse to the Witness

Transocean objects to inferences sought by the parties that, while adverse to Transocean (or beneficial to BP or some other party), are not adverse to the party who invoked the Fifth

Amendment (and are, in some cases, exculpatory).  The adverse inference to be drawn must incriminate the witness invoking the privilege.  The Parties' respective motions blindly articulate the inference that is most unfavorable for Transocean, without explaining why the same inference would actually incriminate the witness.   For example, BP asks the Court to draw the inference that "Capt. Kuchta did not receive any EDS training from Transocean" from Kuchta's refusal to answer the question "Isn't it true that Transocean never trained you to perform EDS?" (BP Mot. at 27).  But BP's proposed inference is not adverse to Kuchta.  From the individual's perspective, being well trained, but failing to act is more incriminating than failing to act because he or she was untrained.  *See* 33 U.S.C. 1319(c)(2) (imposing criminal penalties for knowing violations of the Clean Water Act).  In other words, the inference BP seeks is not adverse to Kuchta, the party who invoked the privilege.

In some cases, BP requests inferences that are *exculpatory* to the invoking witness, because they also exculpate BP.  For example, BP asks the Court to infer that "[Jimmy] Harrell did not feel any pressure from BP to speed up the well" from his refusal to answer the question, "Isn't it true, sir, that you felt that as OIM aboard DEEPWATER HORIZON on the evening of April the 20th, you no—you felt not pressure to hurry from BP?"  (BP Mot. at 22.)  But this inference is hardly adverse to Harrell—indeed, an admission that Harrell responded to pressure from BP would arguably be more likely to incriminate Harrell individually, while a statement that Harrell did not respond to any pressure from BP is exculpatory.

Transocean therefore objects to each requested inference to the extent that the inference is not adverse to the witness invoking the Fifth Amendment.  In the Appendix, Transocean will note objections on this ground with the phrase "Not Adverse."

### 4. No Adverse Inference May Be Drawn from a Witness's Refusal to Answer a Vague or Ambiguous Question

Transocean objects to all requested adverse inferences from a witness's refusal to answer a vague or ambiguous question. Responses to vague or ambiguous questions have limited, if any, probative value, and are an inappropriate basis for any kind of meaningful factual conclusion. *See* Fed. R. Evid. 401, 403. For example, Stephen Bertone was asked, "And you and Transocean understood that BP was relying on [Transocean's] expertise in drilling the Macondo well and recognizing hydrocarbon gas in the wellbore and closing in the well, correct?" (BP Mot. at 36.) BP asks the Court to conclude that "Transocean understood that BP was relying on Transocean's expertise in drilling the Macondo Well" from Bertone's refusal to answer this question. *Id.* But the question does not indicate when and how BP relied on any claimed expertise, or what specific decisions or actions "relied" on Transocean's expertise—indeed, the question appears to be an attempt by BP to avoid offering actual facts that indicate reliance by BP.

Transocean therefore objects to each requested inference to the extent that the inference is based on a witness's refusal to answer a vague or ambiguous question. In the Appendix, Transocean will note objections on this ground with the term "Vague."

### 5. If an Inference Is Drawn from a Witness's Refusal to Answer a Question, the Inference Must Validly Follow from the Question

Transocean objects to all requested adverse inferences to the extent that the inference sought does not validly follow from the witness's refusal to answer a particular question. In their respective motions, BP, Halliburton, and the PSC request a number of inferences that are clearly broader than any answer the witness might have provided had he or she not declined to testify. In these cases, the Fifth Amendment invocations should not be admitted because they do not tend to "make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401.

For example, BP asked Jimmy Harrell the question, "Isn't it true that you did not drill the crew in EDS sequencing?" (BP Mot. at 21.) Assuming this question was proper, and assuming Harrell to have answered "yes," that would only establish that Harrell had not *personally* drilled the crew in EDS sequencing. BP seeks a much broader, unsupported inference—that "[t]he Transocean rig crew on the *Deepwater Horizon* had not been drilled on EDSing." *Id.* A single crew member's testimony about to what extent he individually trained Transocean employees is not probative of Transocean's company-wide training system. And any probative value from the Fifth Amendment invocation would be minimal, also making it unsuitable for introduction at trial. *See* Fed. R. Evid. 403.[3]

Transocean therefore objects to every inference that does not validly follow from the question asked. In the Appendix, Transocean will designate objections on this ground with the phrase "Invalid Inference."

### 6. No Adverse Inference May Be Drawn in Violation of 46 U.S. § 6308

This Court has already concluded that testimony before the Joint Investigation Team is inadmissible at trial under 46 U.S.C. § 6308(a). (Rec. Doc. 5448.) Halliburton's motion seeks a number of adverse inferences from witnesses' refusals to answer questions about this earlier testimony. The parties should not be permitted to smuggle this testimony in through the guise of an adverse inference. In the Appendix, Transocean will indicate objections on this ground with "JIT."

---

[3] In its own requests for adverse inferences, Transocean has sought only an inference that the witness would have answered the question "yes" or "no" or in some similar manner. Transocean has not sought to characterize the question and inferred response, as the other parties have done, to make the resulting inference more favorable than the underlying question could support.

## IV. CONCLUSION

For the foregoing reasons and based on the specific objections set forth in the Appendix, the Court should DENY the parties' respective motions for adverse inferences to the extent that they seek such inferences against Transocean.

Dated: November 5, 2012

Respectfully submitted,

By: s/ Brad D. Brian
Brad D. Brian
Michael R. Doyen
Allen M. Katz
Daniel B. Levin
MUNGER TOLLES & OLSON LLP
355 So. Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel: (213) 683-9100
Fax: (213) 683-5180
Email: brad.brian@mto.com
  michael.doyen@mto.com
  allen.katz@mto.com
  daniel.levin@mto.com

By: s/ Edwin G. Preis
Edwin G. Preis, Jr.
PREIS & ROY PLC
Versailles Blvd., Suite 400
Lafeyette, LA 70501
(337) 237-6062
  and
601 Poydras Street, Suite 1700
New Orleans, LA 70130
(504) 581-6062

By: s/ Steven L. Roberts
Steven L. Roberts
Rachel Giesber Clingman
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Tel: (713) 470-6100
Fax: (713) 354-1301
Email: steven.roberts@sutherland.com,
  rachel.clingman@sutherland.com

By: s/ Kerry J. Miller
Kerry J. Miller
FRILOT, LLC
110 Poydras St., Suite 3700
New Orleans, LA 70163
Tel: (504) 599-8194
Fax: (504) 599-8154
Email: kmiller@frilot.com

John M. Elsley
ROYSTON, RAYZOR, VICKERY & WILLIAMS LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
(713) 224-8380

*Counsel for Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC,* and *Triton Asset Leasing GmbH.*

Case 2:10-md-02179-CJB-DPC   Document 7844   Filed 11/05/12   Page 13 of 13