IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179 |
| | SECTION J |
| This document relates to all actions. | HONORABLE CARL J. BARBIER |
| | MAGISTRATE JUDGE SHUSHAN |

### SUR-REPLY IN SUPPORT OF OBJECTIONS OF ECONOMIC AND PROPERTY DAMAGES SETTLEMENT CLASS MEMBERS STAN P. BAUDIN, TROY D. MORAIN, MORAIN & MURPHY, LLC, DANNY WRAY AND KRISTEN WRAY

NOW INTO COURT, through undersigned counsel, comes Economic and Property Damages ("EPD") Settlement Class Members, Stan P. Baudin, Troy D. Morain, Morain & Murphy, LLC, and Danny Wray and Kristen Wray who respectfully submit this Sur-Reply in Support of their Objections to the Proposed Economic and Property Damages Class Settlement to address arguments raised by the Plaintiffs in their Reply to the Objections. (Rec. Doc. 7727). For the reasons discussed below, the objections should be sustained.

I. **SUR-REPLY TO OBJECTION NUMBER ONE: MADE ON BEHALF OF STAN P. BAUDIN, TROY D. MORAIN, AND DANNY WRAY AND KRISTEN WRAY AND OTHER RESIDENTS AND REAL PROPERTY OWNERS OF GRAND ISLE, LOUISIANA:**

In response to the arguments previously raised in Objection Number One, the Plaintiffs argue, in a footnote, that the decision to place Grand Isle, Louisiana in the Coastal Framework, instead of the Wetlands Framework, turned primarily on the Plaintiffs' opinion that "the shoreline of Grand Isle…even though it is located in the State of Louisiana… is essentially

beach, as opposed to marsh." Plaintiffs' Reply, Pg. 39, fn. 134. Objectors show that this explanation simply does not make sense given that the Grand Terre Islands to the immediate northeast of Grand Isle, and Elmer's Island to the southwest, which look like Grand Isle in almost all respects, including having a beach on the Gulf side shoreline and having mainly marsh/wetlands on the bay side of the islands, are entirely designated as being in the "wetlands" zone under the EPD. One simply cannot square how two islands adjacent to each other, and which look almost identical to each other, can be placed in two different damage categories under the proposed settlement.

Based on the above, Objectors posit that the Court should sustain this Objection and find that the settlement is unfair and unreasonable. At the very least, all waterfront property (Gulf side and bay side) on Grand Isle, Louisiana should be included in the "wetlands" portion of the settlement, just like every other inch of coastal property in Louisiana.

Further, Plaintiffs fail to consider that Objectors' properties are not Gulf-side "beachfront" properties; but rather, are properties located on the bay side of Grand Isle. Very little "beach" exists on the bay side of Grand Isle, and, no "beach" exists on Objectors' waterfront properties - but that did not stop the oil from trespassing on Objectors' properties. At a minimum, a reasonable and fair settlement agreement would have allowed waterfront property owners on Grand Isle, with any documented presence of oil on their property, the same minimum amount that is being paid to wetlands owners in Louisiana with a documented presence of oil on their property, or a minimum of $122,500 under the settlement.

Objectors believe it is fundamentally unfair that a business in Shreveport, Louisiana or Oxford, Mississippi, or Birmingham, Alabama could potentially have a business economic loss claim worth hundreds of thousands of dollars under the settlement, while property owners on

Grand Isle, with actual documented oil on their property, would only be eligible for a few thousand dollars under the settlement. Objectors do not contest that others were damaged as a result of this disaster; however, in its current form, the settlement is unfair, unreasonable and inadequate because it allows for such discrepancies and results.

Contrary to the argument of Plaintiffs, the Objectors are not arguing about a conflict between themselves and other class members. Rather, Objectors are simply arguing that their properties should be treated the same as every other inch of coastal property in Louisiana, all of which is deemed "wetlands" for purposes of the EPD.

Finally, the Plaintiffs did not even address Objectors' additional arguments raised on behalf of Grand Isle residents and owners of properties on Grand Isle which are not waterfront. As noted, the Court should recognize that Grand Isle is a special case that should be treated and accounted for, and compensated separately under the EPD. Objectors suggested that one option for the Court to consider is finding that the settlement is unfair, unreasonable and inadequate for these reasons, but find that an amendment to the EPD such that it carves out a significant and designated portion of the settlement funds to be paid to Grand Isle property owners and residents per a formula to be determined by a Special Master and approved by the Court, may be more in line with a settlement that would be fair, reasonable and adequate. Under such a scenario, and assuming the settlement would be amended, eligible claimants would be confirmed Grand Isle property owners on the day before the initial explosion of the DWH, and residents of Grand Isle that can prove residence status for the entire year of 2010, or some other similar criteria to be determined by the Court.

This would be a fair, reasonable and adequate settlement for the residents and property owners of Grand Isle who, through no fault of their own, have suffered the most as a community

as a result of this tragic event. Objectors posit that no other community on the Gulf Coast can come close to matching the devastating impact this disaster had on their people, infrastructure and way of life. This should be recognized by the Court and the Settling Parties, and an amended settlement agreement should provide for a substantial portion of the EPD settlement fund to be earmarked for payment of these special claims. Instead, the EPD currently provides no compensation for these individuals and property owners.

## II. SUR-REPLY TO OBJECTION NUMBER TWO: MADE ON BEHALF OF MORAIN & MURPHY, LLC:

The Plaintiffs argue in their Reply that "the fallacy central to all complaints about the drawing of the Economic Zones is the (false) assumption (or assertion) of a 'conflict' between the members of the different zones," and that "the class members in Zone A were never 'competing' with the class members in Zone D." Plaintiffs' Reply, p. 36. The Plaintiffs further argue that "the Economic Loss Zones are a general reflection of the geographical areas, and business types within those areas (*i.e.* related principally to tourism and seafood), most likely to have been affected by the spill – as determined through arms-length negotiations," and that "given the uncapped nature of the Proposed Settlement, there is no antagonism between members of the Settlement Class." Plaintiffs' Reply, p. 38.

Contrary to the argument of Plaintiffs, Objector Morain & Murphy, LLC, did not suggest that members of the Class in different Zones had a conflict with one another or that they were competing with one another, but rather, that the placement of the lines for the Zones was unfair and unreasonable for many of the class members, including Objector, which results in unfair and unreasonable settlement benefit outcomes. Objector is not complaining about "inconsistencies or anomalies in particular circumstances," but rather, is suggesting that the Business Economic Loss portion of the settlement, including its Zones and Maps, unfairly and unreasonably attempts

to draw lines where lines cannot be fairly and reasonably be drawn. Although, admittedly, lines must be drawn in a case like this, Objector posits that the Settling Parties should have erred on the side of inclusion and expansion.

As argued by Objector, the Economic Business Loss Zones designated for the State of Louisiana, shown on Exhibit 1A of the EPD, unfairly and unreasonably place the cities of Lake Charles, Lafayette, Baton Rouge, and much of the city of New Orleans and surrounding areas, in Zones C or D. The maps associated with the Economic Loss Zones clearly show that these areas were "carved out" of the immediate surrounding areas which are designated as Zones A or B.

Objector posed the questions: How could the Settling Parties reasonably and fairly determine that any business on Interstate 10 in Port Allen, Louisiana was damaged more because of the event and was entitled to be in Zone B, than a similar business located two miles further east on Interstate 10 in Baton Rouge, Louisiana, which is included in Zone C? Is it fair and reasonable that a few miles on a map dictates the level of damage and compensation a business may be entitled to under this settlement? The Plaintiffs did little to respond to these queries other than to suggest that "the Economic Loss Zones are a general reflection of the geographical areas, and business types within those areas (*i.e.* related principally to tourism and seafood), most likely to have been affected by the spill – as determined through arms-length negotiations."

Objector also showed that the current designated Economic Business Loss Zones allow for some businesses to be in Zone C, although they are closer to the oil spill and coastline than some businesses placed in Zone B. Query: Is this a potential "inconsistency or anomaly," as suggested the Plaintiffs, or does this reflect an unfair and unreasonable exercise in line drawing for the class members? Given that potentially thousands of class member claims are affected by this decision, it can hardly be described as "inconsistencies or anomalies."

And, the results of the line-drawing under the current settlement are clear. Indeed, under the Economic Business Loss section of the EPD, although the example businesses would have to meet the same causation requirements, the business in Zone B would be entitled to a RTP of 1.25, while a similar business in Zone C would only be entitled to a RTP of .25. This difference in RTP results in businesses in Zone B receiving 55% more for their claims than businesses in Zone C. Yet, the individuals and businesses in these areas were affected by the event as much as, or in some cases, even more than individuals and businesses located in Zones A and B. Objector's law practice is located on Perkins Road in Baton Rouge, which is currently in Zone C; thus, his potential claim is significantly less than a similar business located in Zone B just a few miles away.

There is no justifiable reason for any individual or business located in a parish through which Interstate 10 and/or Interstate 12 traverses in Louisiana, or in an area south thereof, to not be included in Zone B for purposes of economic business losses under the settlement, unless already located in Zone A, and therefore, the settlement is unfair, unreasonable and inadequate for these businesses. This requested change is fair and reasonable and will lessen the discriminatory effects and impacts that the economic loss settlement currently has on individuals and businesses that are located in these mainly metropolitan areas of Louisiana.

### III. **RELIEF REQUESTED**

All Objectors herein pray that the Court consider and sustain their applicable Objections and order that the EPD Settlement Agreement be amended to include the relief sought as outlined above.

Respectfully submitted,

*/s/ Stan P. Baudin*
Stan P. Baudin – LSBA #22937
PENDLEY, BAUDIN & COFFIN, LLP
24110 Eden Street
Plaquemine, LA 70764
(225) 687-6396

Troy D. Morain – LSBA #19070
MORAIN & MURPHY, LLC
6717 Perkins Road
Baton Rouge, LA 70808
(225) 767-7151

Kristen Wray – LSBA #26148
337 Anchor Drive
Grand Isle, LA 70358
(225) 921-8459

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing was served upon the following parties via the Court's CM/ECF electronic filing system this 7th day of November, 2012.

*Stan P. Baudin*
Stan P. Baudin