# Exhibit D

**EXHIBIT D - STEVE BERTONE**

> **Bertone No. 1:** BP ignored that Transocean failed to perform the necessary overdue maintenance on the *Deepwater Horizon*. (PSC Mot. Rec. Doc. 5873-6 at 7.)

**Response to Bertone No. 1:**

As a preliminary matter, the requested adverse inference sought by the PSC against BP is improper because Stephen Bertone is *not* a BP employee and his interests are *not* aligned with BP. Under the Court's order and the Second Circuit's *LiButti* factors, Mr. Bertone's refusal to testify cannot support an adverse inference against BP because: (1) there is no relationship between BP and Mr. Bertone, an employee of an adverse party; (2) BP has no control over Mr. Bertone; and (3) there is no compatibility of interests between BP and Mr. Bertone. (Rec. Doc. 5682 at 5 (*LiButti* factors "are useful in making the case-by-case evaluation required"); *LiButti v. United States*, 107 F.3d 110, 123-24 (2d Cir. 1997) (listing factors).) Mr. Bertone is a Transocean employee (and had been for twelve years at the time of the blowout) and his interests are aligned with Transocean. An example of the alignment of interests is demonstrated by Mr. Bertone's complaint in this litigation. Mr. Bertone sued BP and Halliburton, but he did not sue Transocean. (*See* TREX-04364.)

The requested inference is vague, not supported by the questioning and contrary to the evidence. The requested inference is not supported by the questioning. The questioning asks whether "BP was well aware of the many problems that the *Deepwater Horizon* was experiencing prior to April 20th, 2010." (Rec. Doc. 5873-6 at 7.) It does not ask Mr. Bertone to confirm the substance of the requested inference. In addition, the question was vague and overbroad because the term "problems" was unclear and undefined. The requested inference is also contradicted by the evidence. As noted in TREX-003405, [redacted] Therefore, any inference suggesting that BP "ignored" "overdue maintenance" on the *Deepwater Horizon* is incorrect. [redacted]

In addition, it was Transocean's responsibility to implement the follow-up requirements to the audit. (*See* TREX-004363, [redacted] TREX-003342, [redacted].) Accordingly, the *Deepwater Horizon* was not properly maintained because of the actions or inactions of Transocean. (*See, e.g.,* TREX-005297, 10/30/2009 Email from *Deepwater Horizon*, MaintSup (*Deepwater Horizon*) to P. Johnson, J. Kent, *et al.*, RE: Rig Down time, at TRN-INV-00695743 [redacted] "); TREX-001724, 5/27/2010 Statement of Douglas Harold Brown,

1

at 2 ("Because of the cuts in the number of engine room personnel, we were often days, weeks and even months behind in completing the necessary preventive maintenance (PM) requirements."); TREX-005619, 2/21/2010 Email from B. Trahan to J. Kent, RE: Horizon BOP leak, at TRN-MDL-00965751

**Bertone No. 2:** BP placed time and money over safety. (PSC Mot. Rec. Doc. 5873-6 at 7.)

**Response to Bertone No. 2:**

As a preliminary matter, the requested adverse inference sought by the PSC against BP is improper because Stephen Bertone is *not* a BP employee and his interests are *not* aligned with BP. Under the Court's order and the Second Circuit's *LiButti* factors, Mr. Bertone's refusal to testify cannot support an adverse inference against BP because: (1) there is no relationship between BP and Mr. Bertone, an employee of an adverse party; (2) BP has no control over Mr. Bertone; and (3) there is no compatibility of interests between BP and Mr. Bertone. (Rec. Doc. 5682 at 5 (*LiButti* factors "are useful in making the case-by-case evaluation required"); *LiButti v. United States*, 107 F.3d 110, 123-24 (2d Cir. 1997) (listing factors).) Mr. Bertone is a Transocean employee (and had been for twelve years at the time of the blowout) and his interests are aligned with Transocean. An example of the alignment of interests is demonstrated by Mr. Bertone's complaint in this litigation. Mr. Bertone sued BP and Halliburton, but he did not sue Transocean. (*See* TREX-04364.)

The requested inference is contrary to the testimony of other witnesses. Several Transocean rig crew members testified they felt no pressure to speed up operations on the *Deepwater Horizon*. (*See* 4/28/2011 M. Ezell Dep. at 489:23-490:1 ("Q. Okay. So let me ask it a different way: Did you ever feel any pressure to rush through drilling operations? A. No."); 11/8/2011 D. Barron Dep. at 30:5-8 ("Q: [D]id you get the feeling that this well just had to be drilled as quickly as possible no matter what? A. No, sir."); 5/18/2011 C. Breland Dep. at 84:16-22 ("Q. All right. Did you feel any pressure while you were on the DEEPWATER HORIZON to speed up operations because the well was behind schedule? . . . A. No."); 5/18/2011 C. Breland Dep. at 85:23-86:2 ("Q. Did you ever feel at anytime that you were being asked to cut corners? . . . A. No."); 7/14/2011 N. Watson Dep. at 107:25-108:15 (testifying that on April 20, 2010, he did not feel any pressure to speed up operations for any reason); 7/14/2011 C. Taylor Dep. at 157:11-15 ("Q. Did anybody from Transocean ever say to you, We're rushing this too much, we're not—we're doing this job too quickly, it's not being done right? A. No.").) In addition, the testimony demonstrates that BP did not place time and money over safety. (*See, e.g.*, 8/24/2011 D. Farr Dep. at 334:25-335:6 ("Q. Has anybody from the *Deepwater Horizon* drill rig, any Transocean employee ever said to you that they thought that any step that BP took put them at a high risk during the activities of April 19th and April 20th? A. No."); 7/14/2011 C. Taylor Dep. at 157:7-10 ("Q. Did anybody ever say that this—this well cannot be drilled safely, in words or substance? A. No.").) Moreover, the questions giving rise to the inference would have elicited an inadmissible response based on speculation, lack of foundation and hearsay if they had been answered. As Transocean's Maintenance Supervisor, Mr. Bertone had no involvement with BP's budget.