# Exhibit H

**EXHIBIT H - CATHLEENIA WILLIS**

**Willis No. 1:** BP determined the number of mud loggers on the *Deepwater Horizon* ("*Deepwater Horizon*".) (PSC Mot. Rec. Doc. 5873-8 at 7.)

**Response to Willis No. 1:**

As a preliminary matter, the requested adverse inference sought by the PSC against BP is improper because Ms. Willis is ***not*** a BP employee and her interests are ***not*** aligned with BP. Under the Court's order and the Second Circuit's *LiButti* factors, Ms. Willis's refusal to testify cannot support an adverse inference against BP because: (1) there is no relationship between BP and Ms. Willis, an employee of an adverse party; (2) BP has no control over Ms. Willis; and (3) there is no compatibility of interests between BP and Ms. Willis. (Rec. Doc. 5682 at 5 (*LiButti* factors "are useful in making the case-by-case evaluation required"); *LiButti v. United States*, 107 F.3d 110, 123-24 (2d Cir. 1997) (listing factors).) Ms. Willis is a Halliburton employee and her interests are aligned with Halliburton. An example of the alignment of interests is demonstrated by Ms. Willis's complaint against BP that disclaims any allegations against Halliburton. (MDL Dep. Ex. 3218-Willis ("Ms. Willis' claims are maintained against all Defendants except Halliburton.").)[4]

The requested inference is not appropriate given that the movant has not identified any record evidence, or otherwise laid the foundation, that the witness had personal knowledge sufficient to answer the question posed, and the questions giving rise to the inference would have elicited an inadmissible response based on speculation and lack of foundation if they had been answered.

Moreover, the requested inference is not supported by any corroborating evidence and is contrary to record evidence. ████████████████████████████████████████████████████████████████████████████████████████████ (07/29/2011 S. Clark Dep. at 14:10-15, 293:22-294:3.) Moreover, James Bement, the Vice President of Sperry Drilling, agreed Sperry-Sun would do everything in its power to make sure that it had the right number of personnel for safe operations. (09/20/2011 J. Bement Dep. at 7:24-8:7, 187:17-189:5.)

**Willis No. 2:** During the pre-tower meeting on April 20, 2010, Willis expressed reservations about pumping mud back to the DAMON BANKSTON during the displacement procedure which was to take place on April 20, 2010 (TREX-03203 at 3), because of the inability to monitor pit gains (TREX-03204 at 187.) (PSC Mot. Rec. Doc. 5873-8 at 7.)

---

[4] Ms. Willis's Complaint can be found at Rec. Doc. 1-2 in *Kritzer, et al. v. Transocean, Ltd., et al.* 10-cv-04427-CJB-SS (E.D. La.). Ms. Willis dismissed her claims last November, but the *Kritzer* action remains a member case in MDL 2179.

**Response to Willis No. 2:**

As a preliminary matter, the requested adverse inference sought by the PSC against BP is improper because Ms. Willis is *not* a BP employee and her interests are *not* aligned with BP. Under the Court's order and the Second Circuit's *LiButti* factors, Ms. Willis's refusal to testify cannot support an adverse inference against BP because: (1) there is no relationship between BP and Ms. Willis, an employee of an adverse party; (2) BP has no control over Ms. Willis; and (3) there is no compatibility of interests between BP and Ms. Willis. (Rec. Doc. 5682 at 5 (*LiButti* factors "are useful in making the case-by-case evaluation required"); *LiButti v. United States*, 107 F.3d 110, 123-24 (2d Cir. 1997) (listing factors).) Ms. Willis is a Halliburton employee and her interests are aligned with Halliburton. An example of the alignment of interests is demonstrated by Ms. Willis's complaint against BP that disclaims any allegations against Halliburton. (MDL Dep. Ex. 3218-Willis ("Ms. Willis' claims are maintained against all Defendants except Halliburton.").)[5]

The requested inference is not appropriate and contrary to record evidence. The requested inference is also vague and ambiguous by not specifying to whom Ms. Willis expressed her concerns during the pre-tower meeting. According to BP Internal Investigation Interview Notes cited by the PSC in support of this inference, Ms. Willis had communicated concern to the Transocean assistant driller but subsequently indicated that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (MDL Dep. Ex. 3203-Willis.)

While there is evidence Ms. Willis expressed concerns regarding offloading to the Damon Bankston to the Transocean assistant driller, there is no such evidence Ms. Willis expressed concerns to any BP personnel. (03/14/2011 J. Gisclair Dep. at 329:20-330:19 (indicating Ms. Willis spoke with Joseph Keith and to Transocean personnel regarding the offloading of mud to the Damon Bankston).)

Moreover, in support of this inference, the PSC cites to TREX-003204-Willis, an excerpt from the Chief Counsel's Report which was specifically excluded under FRE 404(b) and FRE 403 per the Court's 2/9/12 Order, Rec. Doc. 5635.

**Willis No. 3:** Joe Keith, the Sperry employee who was manning the opposite tower, also expressed concern about displacement to the BANKSTON. (PSC Mot. Rec. Doc. 5873-8 at 8-9.)

---

[5] Ms. Willis's Complaint can be found at Rec. Doc. 1-2 in *Kritzer, et al. v. Transocean, Ltd., et al.* 10-cv-04427-CJB-SS (E.D. La.). Ms. Willis dismissed her claims last November, but the *Kritzer* action remains a member case in MDL 2179.

**Response to Willis No. 3:**

As a preliminary matter, the requested adverse inference sought by the PSC against BP is improper because Ms. Willis is *not* a BP employee and her interests are *not* aligned with BP. Under the Court's order and the Second Circuit's *LiButti* factors, Ms. Willis's refusal to testify cannot support an adverse inference against BP because: (1) there is no relationship between BP and Ms. Willis, an employee of an adverse party; (2) BP has no control over Ms. Willis; and (3) there is no compatibility of interests between BP and Ms. Willis.  (Rec. Doc. 5682 at 5 (*LiButti* factors "are useful in making the case-by-case evaluation required"); *LiButti v. United States*, 107 F.3d 110, 123-24 (2d Cir. 1997) (listing factors).)  Ms. Willis is a Halliburton employee and her interests are aligned with Halliburton. An example of the alignment of interests is demonstrated by Ms. Willis's complaint against BP that disclaims any allegations against Halliburton. (MDL Dep. Ex. 3218-Willis ("Ms. Willis' claims are maintained against all Defendants except Halliburton.").)[6]

The requested inference is not appropriate. Mr. Keith's deposition was taken on March 28, 2011, and all parties had an opportunity to fully question him on that date. Mr. Keith is also scheduled to testify at the upcoming Phase I Trial, making an adverse inference regarding his personal knowledge, actions and statements unnecessary and inappropriate.

Moreover, the requested inference is not supported by any corroborating evidence and in fact, is contrary to record evidence established in this case*. Deepwater Horizon* mudlogger Joseph Keith specifically indicated during his deposition that the activities taking place on April 20, 2010 did not impact his ability to consistently and accurately monitor the well. (03/28/2011 J. Keith Dep. at 59:2-21, 118:1-10.)  Mr. Keith testified he was able to continuously and accurately monitor pit volumes and transfers and that he wrote down every time transfers occurred in ledger books.  (*Id.*, at 57:6-23, 63:17-64:8, 227:7-13, 228:17-229:6, 274:14-19, 275:24-276:3.)  Mr. Keith also admitted he never spoke with any employee from BP, including the well site leaders, on April 20, 2010.  (*Id.*, at 54:22-25, 226:16-227:6.)

Mr. Keith was questioned at his deposition regarding the interview notes of Ms. Willis, MDL Dep. Ex. 3203-Willis, which the PSC references in the cited deposition questions in support of this inference. Mr. Keith made clear he had no concerns regarding his ability to accurately and continuously monitor the well data, including mud, and was not concerned about displacement to the BANKSTON (03/28/2011 J. Keith Dep. at 95:17-96:11; *see also id.* at 225:24-226:15):

> Q. Now, you are aware that Cathleenia Willis has said that when she met with you before your tour started that you were upset with where they were moving the mud in this displacement procedure?
> A. I was not upset, no.
> Q. Okay. Were you unhappy?
> A. No.

---

[6] Ms. Willis's Complaint can be found at Rec. Doc. 1-2 in *Kritzer, et al. v. Transocean, Ltd., et al.* 10-cv-04427-CJB-SS (E.D. La.). Ms. Willis dismissed her claims last November, but the *Kritzer* action remains a member case in MDL 2179.

>    Q. Were you concerned?
>    A. No.
>    Q. No concerns whatsoever?
>    A. It had no effect on my job.
>    Q. Why didn't it have an effect on your job?
>    A. Because I was still able to monitor all my parameters.

>    **Willis No. 4:**  BP, nevertheless, approved the displacement. (PSC Mot. Rec. Doc. 5873-8 at 9.)

**Response to Willis No. 4:**

As a preliminary matter, the requested adverse inference sought by the PSC against BP is improper because Ms. Willis is ***not*** a BP employee and her interests are ***not*** aligned with BP. Under the Court's order and the Second Circuit's *LiButti* factors, Ms. Willis's refusal to testify cannot support an adverse inference against BP because: (1) there is no relationship between BP and Ms. Willis, an employee of an adverse party; (2) BP has no control over Ms. Willis; and (3) there is no compatibility of interests between BP and Ms. Willis. (Rec. Doc. 5682 at 5 (*LiButti* factors "are useful in making the case-by-case evaluation required"); *LiButti v. United States*, 107 F.3d 110, 123-24 (2d Cir. 1997) (listing factors).)  Ms. Willis is a Halliburton employee and her interests are aligned with Halliburton. An example of the alignment of interests is demonstrated by Ms. Willis's complaint against BP that disclaims any allegations against Halliburton. (MDL Dep. Ex. 3218-Willis ("Ms. Willis' claims are maintained against all Defendants except Halliburton.").)[7]

The requested inference is not appropriate given that the movant has not identified any record evidence, or otherwise laid the foundation, that the witness had personal knowledge sufficient to answer the question posed, and the questions giving rise to the inference would have elicited an inadmissible response, based on speculation and lack of foundation, if they had been answered. Moreover, the requested inference is too broad and does not reflect record evidence established in this case regarding the other parties' involvement with the displacement procedure and process.

The displacement procedure, TREX-003196, was drafted by the MI-Swaco mud engineer, Leo Lindner.  (TREX-003196; 09/14/2011 L. Lindner Dep. at 233:25-234:3.)  Mr. Lindner indicated coming up with the displacement procedure is "part of . . . M-I's job . . . the Displacement Procedure is within our purview."   (09/14/2011 L. Lindner Dep. at 234:16-235:24, 236:13-21.)  Mr. Lindner calculated the pump strokes needed for each step of the displacement, including calculating the volume to pump to land the spacer above the BOP. (*Id.* at 144:1-9; 09/15/2011 L. Lindner Dep. at 622:5-24.)  Mr. Lindner also reviewed the entire displacement procedure with BP, Transocean, and Sperry-Sun personnel at the pre-job meeting

---

[7]  Ms. Willis's Complaint can be found at Rec. Doc. 1-2 in *Kritzer, et al. v. Transocean, Ltd., et al.* 10-cv-04427-CJB-SS (E.D. La.).  Ms. Willis dismissed her claims last November, but the *Kritzer* action remains a member case in MDL 2179.

on the afternoon of April 20, 2010 and was comfortable everyone understood the activity. (09/14/2011 L. Lindner Dep. at 253:2-255:16, 343:11-346:21; TREX-000326.) There is no evidence anyone raised concerns about accuracy of the pump stroke calculations, the order of the steps, or the actual operations proposed. (*Id.*) In addition, the Transocean toolpusher on tour during the displacement, Wyman Wheeler, indicated the displacement figures were also calculated by all of the Transocean rig crew: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (TREX-007532 at TRN-INV-00004994.)

**Willis No. 5:** Due to the displacement, Willis did not know when they were taking returns, and was essentially flying blind in terms of monitoring the well. This impeded the ability to detect a kick. (PSC Mot. Rec. Doc. 5873-8 at 9-10.)

**Response to Willis No. 5:**

As a preliminary matter, the requested adverse inference sought by the PSC against BP is improper because Ms. Willis is ***not*** a BP employee and her interests are ***not*** aligned with BP. Under the Court's order and the Second Circuit's *LiButti* factors, Ms. Willis's refusal to testify cannot support an adverse inference against BP because: (1) there is no relationship between BP and Ms. Willis, an employee of an adverse party; (2) BP has no control over Ms. Willis; and (3) there is no compatibility of interests between BP and Ms. Willis. (Rec. Doc. 5682 at 5 (*LiButti* factors "are useful in making the case-by-case evaluation required"); *LiButti v. United States*, 107 F.3d 110, 123-24 (2d Cir. 1997) (listing factors).) Ms. Willis is a Halliburton employee and her interests are aligned with Halliburton. An example of the alignment of interests is demonstrated by Ms. Willis's complaint against BP that disclaims any allegations against Halliburton. (MDL Dep. Ex. 3218-Willis ("Ms. Willis' claims are maintained against all Defendants except Halliburton.").)[8]

The requested inference is not appropriate. The requested inference is not supported by any corroborating evidence and, in fact, is contrary to record evidence established in this case.

Ms. Willis had communicated concern to the Transocean assistant driller but subsequently indicated that "the AD called every time they completed a step on the programme . . . During the displacement she recorded everything she could, she watched the strokes and everything went to plan." (TREX-001427.) In addition, *Deepwater Horizon* mudlogger Joseph Keith indicated the activities taking place on April 20, 2010 did not impact his ability to consistently and accurately monitor the well. (03/28/2011 J. Keith Dep. at 59:2-21, 118:1-10.) Specifically, Mr. Keith testified he was able to continuously and accurately monitor pit volumes and transfers and that he wrote down every time transfers occurred in ledger books. (*Id.*, at 57:6-23, 63:17-64:8, 227:7-13, 228:17-229:6, 274:14-19, 275:24-276:3.) Mr. Keith made clear he had no concerns regarding his ability to accurately and continuously monitor the well data, including mud, and was not concerned about displacement to the BANKSTON (*Id.* at

---

[8] Ms. Willis's Complaint can be found at Rec. Doc. 1-2 in *Kritzer, et al. v. Transocean, Ltd., et al.* 10-cv-04427-CJB-SS (E.D. La.). Ms. Willis dismissed her claims last November, but the *Kritzer* action remains a member case in MDL 2179.

95:17-96:11, 225:24-226:15.) A service coordinator for Sperry SDL product service line testified that monitoring pit volumes while offloading mud was manageable and that the monitoring of flow in and flow out should not be affected. (08/02/2011 K. Kronenberger Dep. at 118:8-22.)