

U.S. Department of Justice
Environmental Enforcement Section
Environment & Natural Resources Division

---

*P.O. Box 7611*
*601 D Street NW*
*Washington, DC 20044-7611*

*Telephone (202) 616-6537*

**VIA E-MAIL**

November 12, 2012

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the Eastern District of Louisiana
500 Poydras Street
New Orleans, LA 70130

RE: <u>BP's Renewed Request for Depositions of Third Party Contractors</u>

Dear Judge Shushan,

On October 26, 2012, the Court ordered BP to identify, by November 5, 2012, "the non-duplicative information required from" UCSB, Purdue, and Kelkar & Associates (Dkt. 7750). In its November 5 submission, BP did not identify any non-duplicative information, and indeed did not even attempt to identify unsuccessful efforts to gain the requested information from United States witnesses. *See* Letter Brief from Rob Gasaway to Honorable Sally Shushan, November 5, 2012. BP did not, and could not, make such a showing because the relevant United States 30(b)(6) witnesses answered the questions posed to them regarding the work of these Flow Rate Technical Group (FRTG) members. The United States' 30(b)(6) witness for the work performed by Professors Leifer and Wereley was Dr. Marcia McNutt. Dr. McNutt answered all of the questions posed to her by BP and others with respect to the work of the Plume team. The same is true of Don Maclay, the United States' 30(b)(6) witness for the work of Professor Kelkar. BP's request for additional depositions can be denied on the sole basis that it has failed to identify holes in the factual record or identify any non-duplicative information.

BP's stated reason for needing these depositions is that these persons may possess unique information related to their work. Yet BP has not even attempted to identify specific questions about their work that would require additional depositions. BP posits that the entities "undoubtedly" and "unquestionably" possess non-duplicative knowledge and documents; but such unsupported *ipse dixit* does not satisfy the Court's Order to "*identify*" nonduplicative information.

Each of the FRTG sub-teams produced comprehensive reports and appendices explaining the inputs and methodologies used by each sub-team.  To the extent these reports did not contain all of the assumptions or inputs used by the sub-teams, BP has had the opportunity to question knowledgeable United States witnesses to fill in those gaps.  If those witnesses had been unable to answer those questions, BP could have used the November 5, 2012 filing as an opportunity to show non-duplicative missing information.  BP's submission, however, is simply a recitation of its earlier request for broad discovery into the communications and thought processes of the three targeted professors.

BP further argues that there may be documents or communications that were in the sole possession of these professors and were never shared with the United States.  If such documents do exist (and BP has not identified any such documents), it is highly doubtful that they were material to the ultimate conclusions of the FRTG – otherwise, they would have been shared or discussed with other FRTG members.  In addition, the United States voluntarily collected relevant documents from all of the FRTG members, including these three professors, so any documents collected in this manner that were not shared with other FRTG members were still available to BP for use in its questioning of the United States witnesses.  It is possible that, with Professor Leifer's recollection, additional unique documents may be produced, as BP is now using a different search protocol than was used in the original collection.  The mere existence of additional documents, however, is largely irrelevant to the question of whether BP had sufficient opportunity to learn about the methodology, inputs, and basis for the conclusions of each of the FRTG sub-teams.  BP unquestionably had such an opportunity, and has not identified any gaps in the factual record regarding those conclusions.

In summary, BP has not demonstrated that it was unable to obtain deposition testimony regarding the work done by any of the FRTG members.  To the extent BP is seeking opinion testimony regarding work that these FRTG members did not perform, such a request can be denied under Rule 45(c)(3)(B)(ii) as an inappropriate attempt to obtain third party expert testimony.

Additionally, BP asserts that it should be permitted to take these depositions because it was previously permitted to take the deposition of Woods Hole Oceanographic Institute.  One significant distinction between the Woods Hole notice and these requests is that the Woods Hole deposition notice was circulated to the parties in a timely manner, and the United States was fully aware of BP's intent to depose Woods Hole when it negotiated the United States 30(b)(6) notice and began preparing its witnesses.  In contrast, these deposition notices were noticed late, after the United States 30(b)(6) notice had been served and the United States had begun preparing its witnesses.

The experience of Woods Hole, moreover, presents a cautionary tale with respect to the burdens placed on third parties by these subpoenas.  Woods Hole has announced to the scientific community, by way of a published article in the journal *Science*, that it felt "attacked" by BP's subpoena, and that such tactics "erode the ability of scientific research and academics to function properly."  (Attachment A).  Regardless of BP's motivation in seeking discovery, Woods Hole's reaction emphasizes that third parties do not have the same tools to defend themselves in

discovery as do litigants, and the perceived harm that such entities may feel as a result of the discovery process may be a significant disincentive to future participation in disaster response efforts. It is not a great stretch to imagine that, if another serious disaster like the Macondo blowout should occur in the future, outside experts might be more hesitant to assist in the response out of fear that they will be dragged into complex litigation (with all its attendant burdens). Given the substantial burden such outside parties may feel as a result of being brought in to the discovery process, additional depositions of FRTG members should only be permitted upon a specific showing of need. As demonstrated above, BP failed to make such a showing, and therefore its request should be denied.

In conclusion, because BP has not identified any non-duplicative information it was unable to obtain from the United States, it has not met its burden under the October 26, 2012 Order. The depositions should be prohibited on that basis alone. The depositions should also be prohibited on the basis that additional depositions of FRTG members can impose substantial burdens that may deter outside scientific experts from assisting the United States in future disaster response efforts.

Respectfully submitted,

*/s/ A. Nathaniel Chakeres*
A Nathaniel Chakeres
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
P.O. Box 7611
601 D Street NW
Washington, DC 20044
aristide.chakeres@usdoj.gov

CC: Liaison Counsel

Attachment A: Camilli et al., "When Scientific Research and Legal Practice Collide," 337 *Science* 1608 (Sept. 28, 2012).