**KIRKLAND & ELLIS LLP**
AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Robert R. Gasaway
To Call Writer Directly:
(202) 879-5175
robert.gasaway@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

November 14, 2012

**By Electronic Mail**

The Honorable Sally Shushan
United States District Court
Eastern District of Louisiana
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

Re:   MDL 2179 — Subpoenas to United States Contractors

Dear Judge Shushan:

BP writes in reply to the United States' November 12 letter in opposition to BP's November 5, 2012 identification of non-duplicative deposition information it seeks from three United States-affiliated entities — Kelkar & Associates, Purdue University, and the University of California, Santa Barbra ("UCSB") — that performed technical analysis as part of FRTG's Reservoir Modeling and Plume Teams.

In its October 26, 2012 Order, the Court provided the United States an "opportunity to demonstrate that the alleged holes in the factual record were filled with testimony from its representatives."  (Rec. Doc. 7750, at 3.)  But the United States' recent response fails to approach making such a showing, and indeed it could not possibly have done so.  The fact is that the information BP seeks from these entities is limited to each entity's own unique knowledge of work pertaining to quantifying the flow of hydrocarbons from the *Deepwater Horizon*.

**BP's Subpoenas Seek Non-Duplicative Information**

The United States fails to address the central premise of BP's November 5 letter; namely, that these third-party entities possess knowledge, created documents, and engaged in communications that were not shared with United States personnel and, in any event, could not possibly be as well understood by United States personnel as by those entities with first-hand knowledge of the relevant technical work.

The United States instead wrestles with a straw man, arguing that BP had an opportunity to question United States 30(b)(6) witnesses regarding the third-parties' conclusions.  But even

# KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
November 14, 2012
Page 2

assuming the United States' witnesses had been prepared to answer each and every question regarding the work of the Plume and Reservoir Teams (in fact, they were not) this does nothing to negate the fact that Kelkar & Associates, Purdue University, and UCSB must necessarily have unique information regarding their own work — work they themselves and not the United States performed.

Of course, BP need not provide the United States a detailed outline for each proposed deposition. The Court's October 26 Order requires only that BP "submit a letter brief indentifying the non-duplicative information required from the three entities." (Rec. Doc. 7750, at 2.) Consistent with the Court's Order and Federal Rule 30(b)(6), BP attached to its letter proposed subpoenas to each of the third parties, describing "with reasonable particularity the [non-duplicative] matters for examination." *See* Fed. R. Civ. P. 30(b)(6). Neither this Court's Order nor the federal rules require that BP furnish a draft deposition outline — nor has providing such detail been the practice of any party, including the United States, in any of the dozens of Rule 30(b)(6) subpoenas served in this case to date.

### BP Did Not Have "Sufficient Opportunity" to Question the United States Witnesses

In declining to grapple with BP's central point — that Kelkar & Associates, Purdue University, and UCSB each possess unique information that cannot realistically be conveyed to witnesses from a separate entity — the United States unconvincingly contends that BP "had sufficient opportunity" to learn about the conclusions of each FRTG sub-team from United States witnesses.

But this contention seriously overstates BP's ability to obtain this evidence from Dr. Marcia McNutt, the head of the FRTG, or from other United States Rule 30(b)(6) designees. As an initial matter, Dr. McNutt was designated to testify regarding no fewer than seven Rule 30(b)(6) topics. BP used all ten of its allotted deposition hours questioning Dr. McNutt on these several topics. And nowhere in its recent brief does the United States claim that BP wasted time in eliciting substantive testimony from this important witness.

For the United States now to characterize BP's opportunity to depose Dr. McNutt as "sufficient" for present purposes is, then, a stretch. Even if, as the United States contends, Dr. McNutt answered all questions posed to her, this is in no way material to whether — given BP's need to elicit Dr. McNutt's testimony on many subjects on which she possesses first-hand knowledge — depositions of the UCSB, Purdue University, and Kelkar & Associates would yield non-duplicative information regarding the work of the Plume or Reservoir Teams. The whole point is that even the very same questions posed to Dr. McNutt are likely to yield different

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
November 14, 2012
Page 3

or additional information if posed directly to the Plume and Reservoir Team entities who performed the ground-level analysis for those teams.

If more were needed, however, it is to be learned from the mouths of the United States' own witnesses. These witnesses confirm what the United States is now at pains to contest — namely, that BP needs to talk directly to the United States' contractors in order to understand their work. For instance, Dr. Antonio Possolo, the United States' Rule 30(b)(6) designee for uncertainty topics, testified that he relied on the uncertainty assessments conducted by individual Plume Team members and asked only "minimally sufficient questions" to conduct his own uncertainty analysis. (*See* Ex. A, Possolo Dep. 66:10-67:21.) Dr. Possolo declined to testify regarding the uncertainty assessments of individual Plume Team members, saying that BP would need to speak to them directly. (*See, e.g.*, *id.* at 107:5-17.)

Likewise, the United States' designee on topics related to FRTG Reservoir Team work — Don Maclay — failed to answer a number of direct questions regarding the work of Kelkar & Associates. Many of Mr. Maclay's answers regarding Kelkar & Associates' work were in important respects, "I don't know," and Mr. Maclay admitted he did not critically analyze Kelkar & Associates' work. (Ex. B, Maclay Dep. 437:8-22; *see id.* at 557:11-558:14.) Indeed, Mr. Maclay could not answer basic questions about, for example, Kelkar & Associates' analysis of Macondo's rock properties, the possible pressure support from an aquifer, or modeling of various restrictions in the flow path. Exhibit C provides a dozen examples of instances where Mr. Maclay was unprepared to provide meaningful testimony about the work of Kelkar & Associates.

To be sure, the United States would emphasize that it "voluntarily collected" some documents from FRTG members. But it is unclear how these insufficient efforts serve to advance the United States' position here. As the Court is well aware, the United States' productions from its FRTG contractors were far from complete or systematic; hence, the need for Court-approved document subpoenas and, subsequently, the need for this Court, the Court's Special Master, and BP to make extensive efforts following up those subpoenas.

For example, the United States' efforts led to a grand total of 23 documents being produced from Kelkar & Associates. Pursuant to BP's document subpoena, by contrast, Kelkar & Associates produced over 1,200 documents — more than 50 times what the United States was able to procure. With regard to Purdue and UCSB, the United States produced only 314 and 273 documents, respectively. Pursuant to subpoena, however, these entities have since produced (pursuant to search terms that remain unknown to BP) more than 300,000 documents (including text and images), exclusive of the potentially thousands more UCSB email communications that remain outstanding.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
November 14, 2012
Page 4

      Moreover, this Court hardly needs reminding that BP is working hard still today (with the Court's intervention and now further assistance from its Special Master) just to obtain the first emails from UCSB. It appears quite possible that tens of thousands of new, relevant UCSB documents ultimately will be produced. And although the United States would contend that "the mere existence of additional documents ... is largely irrelevant," the whole point is that, precisely because BP has not had the chance to review these thousands of as-yet-unproduced documents, BP could not possibly have adequately questioned United Sates witnesses about their contents. All questions about these new documents are by definition, non-duplicative.

      At the end of the day, the United States' inability to provide sufficient document discovery for FRTG team members nicely illustrates how, through no fault of its own, the United States is simply not capable of providing full discovery of any kind on their behalf. The only way to obtain such discovery is from its source, by going directly to those entities themselves.

### United States' Residual Arguments Are Unavailing

      Little need be said about the United States' attempts to revisit foreclosed arguments about timeliness and the burdensomeness of subpoenas for third parties. Those arguments have been thoroughly considered and definitively rejected. (*See* Rec Doc. 6808 (June 27, 2012 Order); Rec. Doc. 7750 (Oct. 26, 2012 Order).) Moreover, the arguments are further belied by the realities of third-party discovery in Phase 2 of this case — most of which has been conducted at the United States' behest and all of which has been permitted notwithstanding that it imposes some inconveniences on the third parties who must comply. Indeed, as the Court reviews this United States submission, counsel for the United States will be on campus at Cambridge University in England, taking the deposition of a third-party entity that contracted with BP to provide analysis of a type similar in many respects to the analyses provided to the United States by Kelkar & Associates, Purdue University, and the UCSB.

## KIRKLAND & ELLIS LLP

The Honorable Sally Shushan
November 14, 2012
Page 5

\* \* \* \* \*

      As the Rule 30(b)(6) deposition period draws to a close, BP should be allowed to obtain testimony directly relevant to questions that the United States' witnesses cannot possibly answer. BP respectfully requests that the Court approve in their entirety BP's proposed deposition subpoenas for Kelkar & Associates, Purdue University, and UCSB.

      Respectfully submitted,

      Robert R. Gasaway

Exhibits

cc (via electronic mail):

United States' MDL Counsel
Plaintiffs' Liaison Counsel
Defense Liaison Counsel
Joel M. Gross
Allison B. Rumsey