# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LESTER ANSARDI,** | * | **CIVIL ACTION NO: _____** |
| **INDIVIDUALLY, AND ON BEHALF** | * | |
| **OF OTHERS SIMILARLY SITUATED** | * | |
| | * | |
| **VERSUS** | * | **SECTION:** |
| | * | |
| **UNITED STATES MARITIME** | * | |
| **SERVICE, INC** | * | |
| **UNITED STATES MARITIME** | * | **DIVISION:** |
| **SERVICE, LLC, AND** | * | |
| **UNITED STATES ENVIRONMENTAL** | * | |
| **SERVICES, LLC** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>NOTICE OF REMOVAL</u>

Pursuant to 28 U.S.C. §§1331, 1332, 1367, 1441, 1453 and 1446, 22 U.S.C. §2713, *et seq.*, and 43 U.S.C. §1331, *et. seq.*, defendants, United States Maritime Services, Inc. ("USMS") and United States Environmental Services, LLC ("USES")(collectively, "defendants"), hereby give notice and remove this case to the United States District Court for the Eastern District of Louisiana.

Defendants respectfully represent the following in accordance with the requirement of 28 U.S.C. §1446(a) for a "short and plain statement of the grounds for removal."

**<u>Background and Applicable Procedural Requirements.</u>**

1.     USES and USMS are named defendants in the matter styled *Lester Ansardi, et. al. v. United States Maritime Services, Inc. et. al.*, pending in the Civil District Court for the Parish of Orleans, Division "N," Section "8", and bearing docket number 11-11436 ("State Court

Action").[1]  A copy of the "Class Action Petition" filed in the State Court Action is attached to this Notice as Exhibit A.  ("Plaintiffs' Petition").

2.      Plaintiffs commenced this action by filing this lawsuit in the Parish of Orleans on October 27, 2011.

3.      USES and USMS were served with the Plaintiffs' Petition on November 9, 2011.

4.      This Notice of Removal is timely filed, as it is being filed within 30 days after receipt of the initial pleading setting forth the claims for relief within 30 days of service of process as required by 28 U.S.C. §1446(b).

**The Outer Continental Shelf Land Act Provides a Basis for Removal.**

5.      This case is removable to this Court under the jurisdictional grant set forth in the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §1331, *et. seq.*

6.      This case arises from the April 20, 2010, sinking of the Deepwater Horizon rig. Plaintiff allege that they "entered into contractual agreements with the Defendant companies for the purpose of providing use of Plaintiff's and the Class members' vessels during the aftermath of the BP oil spill."  Plaintiffs' Petition, ¶9.  Cases in federal court arising out of this incident had been transferred to Section "J." of this Court and consolidated as a part of a multi-district litigation, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, case number 10-MD- 2179.

7.      The jurisdictional grant under OCSLA provides that "district courts of the United States shall have jurisdiction of the cases and controversies arising out of, or in connection with (A) any operation conducted on the Outer Continental Shelf which involves exploration,

---

[1] Plaintiffs have also named, in error, United States Maritime Services, L.L.C., an entity that does not exist.

development, or production of minerals, of the subsoil and seabed of the Outer Continental Shelf, or which involves rights to such minerals." 43 U.S.C. §1349(b)(1).

8. OCSLA defines "minerals" as including "oil, gas, sulphur, giopressured– geothermal and associated resources." 43 U.S.C. §1331 (q). "Exploration" is the "process of searching for minerals, including… (2) any drilling;" "development" includes "those activities which take place following discovery of minerals in paying quantities, including geophysical activity, drilling, platform construction, and operation of all onshore support facilities, and which are for the purpose of ultimately producing the minerals discovered." 43 U.S.C. §1331(k), (l).

9. The State Court Action arises out of, and has a connection with, an operation that was conducted on the Outer Continental Shelf within the meaning of 43 U.S.C. §1331(a) and §1301(a), and that "involves exploration, development, or the production of minerals, of the subsoil and seabed of the Outer Continental Shelf, or which involves rights to such minerals." 43 U.S.C. §1349(b)(1).

10. Plaintiffs' Petition alleges facts that arise out of the Deepwater Horizon explosion an oil spill, which would not have occurred but for the operations of the Deepwater Horizon on the outer continental shelf. Plaintiffs' Petition, ¶¶9-11, 17-19.

11. More specifically, the spill occurred on the federal mineral lease held by BP and granted by the U.S. Minerals Management Service ("MMS") that allows BP to drill for oil and perform oil production related operations at the Macondo site in the Mississippi Canyon Block 252 section of the outer continental shelf in the Gulf of Mexico. That lease is situated wholly on submerged lands on the Outer Continental Shelf within the meaning of 43 U.S.C. §1331(a). The submerged lands covered by the lease lie seaward and outside of the area of lands beneath navigable waters as defined in 43 U.S.C. §1301. The lease covers submerged lands of which the

subsoil and seabed appertain to the United States, constitute a federal enclave, and are subject to federal jurisdiction and control.

12.     Judge Carl Barbier, who is presiding over the Deepwater Horizon multidistrict litigation in this Court, has declared in an Order that the federal courts have original jurisdiction over the litigation that arises out of the Deepwater Horizon incident pursuant to OCSLA's jurisdictional grants, regardless of whether allegations under OCSLA are specifically raised in the petition. *See* 43 U.S.C. § 1349(b)(1); *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* 10 –MD-2179, R.Doc. 470 "Order," p. 8.

13.     Plaintiffs' Petition alleges a cause of action for breach of contracts entered into with the Defendants for use of Plaintiffs' vessels as part of the BP Vessels of Opportunity ("VoO") program.   Plaintiffs' allege that they entered into "contractual agreements with Defendant companies for the purpose of providing use of the Plaintiff's and Class members' vessels during the ***aftermath of the BP oil spill***."  Plaintiffs' Petition, ¶ 9 (emphasis added). Plaintiffs' allege that pursuant to the terms of the Agreement, "Plaintiff's vessel was not to be used for any purpose, during the Charter Term, other than performance of the services defined in the Agreement."  Plaintiffs' Petition,  ¶ 15.  Plaintiffs state, "over the course of several months following commencement of the Agreement, Plaintiff complied with the terms of the Agreement, and Defendants hired Plaintiff and Plaintiff's vessel ***for use in an oil spill response.***"  Plaintiffs' Petition, ¶ 17 (emphasis added).  Plaintiffs claim that they and the putative Class members have suffered damages as a result of the Defendants failure to "adequately pay Plaintiff and the Class members the full amount due under the contractual agreements."  Plaintiffs' Petition, ¶ 10.

14.     Defendants, pursuant to a Master Services Agreement with BP, provided services in furtherance of the spill cleanup.  Pursuant to the Master Service Agreement with BP, BP is ultimately contractually liable to Defendants for any amounts Defendants may owe the putative class members under the Charter Agreement.

15.     The Charter Agreement at issue, an example of which is attached hereto as Exhibit B, makes clear that Plaintiffs' claims arise from and are inextricably connected to the Outer Continental Shelf operations, including the exploration, development, or production of oil in the Outer Continental Shelf subsoil and seabed. The Charter Agreement provides that:

- "The VESSEL shall be employed exclusively for CHARTERER'S use as a vessel of opportunity in the carriage of CHARTERER'S employees, contractors, business invitees, equipment and provisions and in the performance of various tasks *associated with oil spill response and containment efforts as directed by CHARTERER* (hereinafter referred to as SERVICES).  Such SERVICES shall include, but not be limited to, tending or deploying boom and skimming equipment, skimming operations, recovering oiled debris, collecting garbage, assistance with wildlife operations and towing equipment." Agreement Art.2.A.

- Plaintiff's vessel "will be performing certain services with respect to the attending or deploying boom and skimming equipment, skimming operations, recovering oil debris, collecting garbage, assistance with wildlife operations and towing equipment operation *in connection with the Deepwater Horizon incident*."  Agreement Ex. C.

16.     In sum, Plaintiffs' Petition alleges claims arising out of exploration and drilling operations on the Outer Continental Shelf and oil spill in the Gulf of Mexico – specifically, claims stemming from BP's federally required and directed cleanup efforts through the Vessels of Opportunity program. Had BP not been performing exploratory and drilling operations on the Outer Continental Shelf, Plaintiffs would have had no occasion to file the Petition at stake in this case, because the Vessels of Opportunity program itself would never have been established by the Unified Command and carried out pursuant to contracts with Vessels of Opportunity owners.

17.     Accordingly, this Court has jurisdiction over the underlying claims pursuant to 43 U.S.C.§1349(b)(1)(A), which by its terms grants, United States District Courts a broad span of jurisdiction to decide any action "arising out of, or in connection with" exploration and drilling operations on the Shelf.

**28 U.S.C. §1331 Provides an Independent Alternative Basis for Removal.**

18.     This court also has subject matter jurisdiction under 28 U.S.C. §1331, in that the claims asserted arise under a federal statute, namely, the Outer Continental Shelf Lands Act, 43 U.S.C. §1331, *et seq. See, e.g. Rodrigue v. Aetna Cas. & Surety Co,* 395 U.S. 352 (1969)(recognizing the original federal jurisdiction exercised pursuant to OCSLA); *Texico Exploration & Prod. v. AmClyde Engineered Products, Co., Inc.* 448 F.3d 760, 771 (5th Cir. 5/5/06)(same). Claims arising under federal law such as OCSLA are removable pursuant to §1331 without regard for the citizenship of the parties or the amount in controversy, and because claims involving federal enclaves like the Outer Continental shelf inherently arise under federal law. 28 U.S.C. §§1331, 1441(b).

19.     This matter is therefore removable under 28 U.S.C. §1441 in that it is a civil action over which the United States District Court for the Eastern District of Louisiana has original subject matter jurisdiction under 28 U.S.C. §1331 and 43 U.S.C. §1349.

**OPA Provides A Basis for Removal**

20.     In addition, Plaintiffs' claims arise out of an oil spill on federal property in international waters. These claims, and the damages sought by the Plaintiffs, clearly fall within the ambit of the Oil Pollution Act of 1990 ("OPA") – which constitutes "comprehensive legislation to address oil spill liability and compensation." *Gabarick v. Laurin Maritime (America) Inc,* 623 F.Supp.2d 741, 744 (E.D.La. 2009); 33 U.S.C. §§2701, *et. seq.* OPA is

intended to be the exclusive federal law governing oil spills. *South Port Marine, L.L.C. v. Gulf Oil Limited Partnership*, 234 F.3d 58, 65 (1ˢᵗ Cir. 2000). The provisions of OPA are mandatory and exclusive. *Gabarick*, 623 F.Supp.2d at 745. All claims for removal costs or damages covered by OPA must be brought under OPA. *Id.*, 33 U.S.C. §2713. Plaintiffs cannot avoid OPA by artful pleading. Original jurisdiction of claims within the reach of the OPA lies with the federal courts notwithstanding the citizenship of the parties are the amount in controversy. 33 U.S.C. §2717(b). Accordingly, removal is also proper pursuant to OPA.

**The Class Action Fairness Act Provides an Additional Basis for Removal**

21.    This Court has subject matter jurisdiction over all claims asserted against all Defendants, regardless of their citizenship, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332, §1441(a) and (b), and §1453. CAFA applies because this action is a purported class action in which the claims of the proposed class exceed the sum or value of $5,000,000.00, the putative class contains at least 100 class members, and a plaintiff is a citizen of a state different from a defendant. This action satisfies all of the requirements for federal jurisdiction.

22.    Plaintiffs define the proposed class as follows:

> All individuals and entities in Louisiana who contracted with United States Maritime Services, Inc., United States Maritime Services, LLC, or United States Environmental Services, LLC on or after April 2010 through a Master Vessel Charter Agreement allowing United States Maritime Services, Inc., United States Maritime Services, LLC, or United States Environmental Services, LLC, to hire their vessel for employment during an oil spill response.

Plaintiffs' Petition, ¶27. Plaintiffs further allege that the "persons and entities constituting the Class" … are ..."in excess of 500." Plaintiffs' Petition, ¶29(a). Thus, the proposed class far exceeds the 100 class requirement.

23.     In addition, based upon records of the Defendants, some of the proposed class members who contracted with the Defendants are citizens of states other than Louisiana. including, but not limited to. Mississippi and Alabama, thereby establishing that "any member of [the] class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §1332(2)(A).   Defendants are citizens of Louisiana.  Therefore, diversity exists between the Plaintiffs and Defendants.

24.     The amount in controversy requirement is easily satisfy here where the proposed class consists of all entities in Louisiana who contracted with the Defendants  "to hire their vessel for employment during an oil spill response."  Plaintiffs allege this class is in excess of 500 people and are seeking damages including payment for 'each day within the "Charter Term."'  By reference to Exhibit B of the Charter, the Charter hire is set forth.  From those rates, the number of vessels (in excess of 500) and the number of days each vessel was not deployed, the amount in controversy greatly exceeds the minimum amount in controversy.

25.     Further, because this is a class action, Louisiana law provides that attorneys' fees are to be attributed to the named Plaintiff's claim and included in determining the amount in controversy.  LSA-C.C.P. art. 595; *St. Paul Reins Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)(noting that attorneys fees and penalties are included in determining jurisdictional amount when party could be liable for same under state law); *In re Abbott Labs*, 51 F.3d 524, 526-527 (5th Cir. 1995)(holding that combination of attorneys fees allowed by class action statute, and claims by plaintiffs satisfied jurisdictional amount). Adding each Plaintiffs' alleged damages and attorneys' fees, the amount in controversy easily exceeds $5,000,000.00. Accordingly, this suit satisfies CAFA's amount in controversy requirement and this Court has jurisdiction under CAFA.

**Venue is Proper in this Court.**

25.     Venue is proper in this Court pursuant to 28 U.S.C. §1446(a), as the District Court for the Eastern District of Louisiana is the district within which the State Court Action is pending.

**Effectuation of Removal.**

27.     Defendants hereby remove this matter to the United States District Court for the Eastern District of Louisiana.

28.     By filing this Notice of Removal all Defendants expressly consent to the removal.

29.     The jurisdictional allegations of this Notice were true at the time the State Court Action was commenced and remain true as of the date of filing of this Notice of Removal.

30.     Defendants reserve the right to submit additional evidence and assert supplemental grounds in support of removal as appropriate in future circumstances.

31.     By virtue of this Notice of Removal, Defendants do not waive their rights to assert any claims, defenses, or other motions permitted under the Federal Rules of Civil Procedure.

32.     Undersigned counsel certifies that a Notice of Filing Notice of Removal, will be promptly filed with the Civil District Court for the Parish of Orleans, State of Louisiana. (Attached as Exhibit C)  Also, pursuant to 28 U.S.C. §1446(d), Defendants are providing written notice of the filing of this Notice of Removal to all adverse parties.  (Attached as Exhibit D).

33.     A copy of the record of the State Court Proceedings is attached as Exhibit E.

**WHEREFORE**, Defendants, United States Maritime Services, Inc. and United States Environmental Services, LLC, hereby remove this action to the United States District Court for the Eastern District of Louisiana.

Respectfully submitted:

**BALDWIN HASPEL BURKE & MAYER, L.L.C.**

/s/ Lance J. Arnold
**LANCE J. ARNOLD (Bar #18768)**
**JENA W. SMITH (Bar #25255)**
Energy Centre – 36th Floor
1100 Poydras Street
New Orleans, LA 70163
Telephone: (504) 569-2900
Fax: (504) 569-2099
*Counsel for United States Maritime Services, Inc. and*
*United States Environmental Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of November, 2011, a copy of the Notice of Removal was served on all parties or counsel of record via email or by placing a copy of same in the United States mail, postage paid and properly addressed.

/s/ Lance J. Arnold

505366

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Lester Ansardi, Individually and on Behalf of All Others Similarly Situated

## DEFENDANTS
United States Maritime Services, Inc. and United States Environmental Services, LLC

(b) County of Residence of First Listed Plaintiff  **USA**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  **USA**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
See Attached List

Attorneys (If Known)
Lance J. Arnold and Jena W. Smith, Baldwin Haspel Burke & Mayer, 1100 Poydras St., Ste 3600, New Orleans, LA 70163, (504) 569-2900

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☒ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
OCSLA (43 U.S.C. 1349); OPA (33 U.S.C. 2701), CAFA 28 U.S.C. Secs.1332, 1441 & 1453
Brief description of cause:
Claims for Charter Hire for Vessels of Opportunity

## VII. REQUESTED IN COMPLAINT:
☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ in excess of $5,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE Carl J. Barbier
DOCKET NUMBER MDL 2179

DATE
11/22/2011

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**<u>Plaintiffs' Counsel of Record</u>**

Christopher L. Coffin
Pendely, Baudin & Coffin, L.L.P.
24110 Eden Street
Post Office Drawer 71
Plaquemine, Louisiana 70765

Gary E. Mason
Mason, LLP
1625 Massachusetts Ave., NW
Suite 605
Washington, D.C. 20036

Kevin L. Goldberg
Goldberg, Finnegan & Mester, LLC
1010 Wayne Ave.
Suite 950
Silver Spring, Maryland  20910

Dan A. Robin, Jr.
2203 Pakenham Dr.
Chalmette, Louisiana 70043

**CIVIL DICTRICT COURT**

**PARISH OF ORLEANS**

**STATE OF LOUISIANA**

SUIT NO._____

11-11436 N-8

FILED

'11 OCT 27 A 11: 23

CIVIL DISTRICT COURT

LESTER ANSARDI,
INDIVIDUALLY, AND ON BEHALF
OF ALL OTHERS SIMILARLY SITUATED

           **PLAINTIFF**

**VERSUS**

UNITED STATES
MARITIME SERVICES, INC.,
UNITED STATES
MARITIME SERVICES, LLC, and
UNITED STATES ENVIRONMENTAL
SERVICES, LLC
           **DEFENDANTS**

**DIVISION:** N-8

---

## CLASS ACTION PETITION

    Plaintiff, Lester Ansardi (hereinafter "Plaintiff), brings this action individually, and on behalf of the Class of persons defined below, against Defendants, United States Maritime Services Inc., United States Maritime Services, LLC, and United States Environmental Services, LLC. Plaintiff alleges the following on information and belief, formed after a reasonable inquiry under the circumstances.

### PARTIES

    1.    Plaintiff Lester Ansardi was at all times material hereto a resident of St. Bernard Parish, State of Louisiana. Plaintiff has suffered injury in fact as a result of Defendants' conduct.

    2.    Defendant United States Maritime Services, Inc., is a domestic business licensed to do business in the State of Louisiana. Its principle place of business is in New Orleans, Orleans Parish, Louisiana.

    3.    Defendant United States Maritime Services, LLC is a domestic business operating in the State of Louisiana. Its principle place of business is in New Orleans, Orleans Parish, Louisiana.

    4.    Defendant United States Environmental Services, LLC is a domestic business licensed to do business in the State of Louisiana. Its principle place of business is in New Orleans, Orleans Parish, Louisiana.

    5.    Upon information and belief, United States Maritime Services, Inc., and United States Maritime Services, LLC are one and the same business. No registration exists with the Louisiana

**EXHIBIT**

**A**

Secretary of State for United States Maritime Services, LLC. However, United States Maritime Services, LLC entered into agreements with the Plaintiff and putative Class members.

6. Upon information and belief, United States Environmental Services, LLC operates as the same business as United States Maritime Services, Inc. with identical ownership, but is registered as a separate entity.

7. Venue is proper within this district in that Defendants are Louisiana operated businesses, Defendants conducted business in Louisiana and in this district, the vessel at issue was located in Louisiana, the damages were incurred within Louisiana, and the Agreement at issue includes a choice of law provision indicating that any litigation arising out of or relating to the Agreement may be brought in a court of competent jurisdiction in New Orleans, Louisiana.

## FACTUAL ALLEGATIONS

8. Defendant companies are engaged to do business in the State of Louisiana.

9. . Plaintiff and the putative Class members entered into contractual agreements with the Defendant companies for the purpose of providing use of Plaintiff's and the Class members' vessels during the aftermath of the BP oil spill.

10. Defendant companies breached the term of the agreements with Plaintiff and the putative Class by failing to adequately pay Plaintiff and the Class members the full amount due under the contractual agreements.

11. On June 10, 2010, Defendants entered into a Master Vessel Charter Agreement (the "Agreement") with Plaintiff Lester Ansardi. The Agreement is designated as Agreement B0367988.1.

12. Pursuant to the terms and conditions of Plaintiff's Agreement, the term of the Agreement (defined as the "Charter Term") commenced on the date of the departure of the Plaintiff's vessel from a mutually agreed location of delivery.

13. Pursuant to the terms and conditions of the Agreement, the termination of the Charter Term is determined by the time the Plaintiff's vessel is secure in its moorings at the original point of delivery after final decontamination after an oil spill response.

14. Pursuant to the terms and conditions of the Agreement, Plaintiff's vessel was to be available for Defendants' disposal twenty-four (24) hours per day within the Charter Term.

15. Pursuant to the terms and conditions of the Agreement, Plaintiff's vessel was not to be used for any purpose, during the Charter Term, other than performance of services defined in the Agreement.

16. Defendants were obligated to pay specified amounts, vessel pay and Captain's pay to Plaintiff for each "day" within the Charter Term, based on the provisions in the Agreement and its attached exhibits.

17. Over the course of several months following commencement of the Agreement, Plaintiff complied with the terms of the Agreement, and Defendants hired Plaintiff and Plaintiff's vessel for use in an oil spill response.

18. Plaintiff's vessel received a verification of final decontamination from the United States Coast Guard on November 2, 2010.

19. On November 29, 2010, Defendants entered into a Notice of Termination of Charter with Plaintiff Lester Ansardi.

20. Defendants failed to pay Plaintiff, as provided for in the Agreement, for each "day" within the Charter Term.

21. Pursuant to the terms and conditions of Plaintiff's Agreement, Defendants were required to pay Plaintiff for each day within the Charter Term, with such Charter Term not being terminated until the Plaintiff's vessel was secure in its moorings at the original point of delivery AND after final decontamination.

22. Despite its obligation, Defendants incorrectly paid Plaintiff based only on the actual number of days that Plaintiff's vessel was in physical use, and not for each day during the Charter Term.

23. In failing to pay Plaintiff and the putative Class members in accordance with the Agreement, to include the per diem pay per vessel and per diem pay for Captain's wages, Defendants breached their contract with the Plaintiff and the members of the Class in a common and uniform manner, and instituted a policy of not paying the full amounts due Plaintiff and the Class.

24. Upon information and belief, Defendants followed a standard and regular practice of paying Plaintiff and Class members based only on the actual number of days that Plaintiff's and Class members' vessels were in physical use, and not for each day during the time within which the Charter Term was in effect.

25. As a result of Defendants' actions, Plaintiff and the members of the Class received less amounts than they were entitled, and Defendants experienced higher profits at the expense of the Plaintiff and the members of the Class.

26. Defendants are estopped from arguing an interpretation of the Charter Term that is different from the language in the Agreement.

## CLASS REPRESENTATION ALLEGATIONS

27.    Plaintiff is entitled to have this case maintained as a class action, pursuant to Louisiana Code of Civil Procedure, Article 591, *et seq.*  The proposed class is defined at this time, but is subject to modification as additional facts are obtained in discovery, as follows:

> All individuals and entities in Louisiana who contracted with United States Maritime Services, Inc., United States Maritime Services, LLC, or United States Environmental Services, LLC on or after April 2010 through a Master Vessel Charter Agreement allowing United States Maritime Services, Inc., United States Maritime Services, LLC, or United States Environmental Services, LLC, to hire their vessel for employment during an oil spill response.

28.    Excluded from the Class are the Defendants, their owners, officers, directors, subsidiaries, and any person or other entity related to, affiliated with, or employed by Defendants.

29.    Plaintiff is entitled to have this cause of action maintained as a class action, pursuant to Louisiana Code of Civil Procedure article 591, *et seq.*, for the following non-exclusive reasons:

(a)    The persons and entities constituting the Class are so numerous, in excess of 500, that individual joinder of all parties is impracticable;

(b)    The named plaintiff is representative of the plaintiff Class members and is so situated to provide adequate representation for the unnamed plaintiff Class members;

(c)    Plaintiff's claims are similar in nature and typical of the claims of each Class member. The claim of the named representative Plaintiff is typical of the claims of the Class members that he represents, in that they were not fully appraised of their rights and entitlements regarding the Defendants' obligation to provide Plaintiff and the Class members with amounts equal to the terms set forth in the Agreement;

(d)    The great majority of the unnamed plaintiff Class members have no substantial interest in individually controlling the prosecution of their separate actions;

(e)    There are common questions and issues of law and fact involved in this matter which predominate over questions affecting individual Class members;

(f)    Any defenses or theories of resistance to liability set forth by the Defendants would be applicable to all claims presented by members of the plaintiff Class; and,

(g)    The prosecution of separate actions by individual plaintiff Class members will create a serious risk of inconsistent or varying adjudication which may prejudicially affect the claims of the other Class members and subsequent litigation.

30.    The class action is a superior procedural vehicle for this litigation because the primary objective of the class action, economies of time, effort and expense, will be achieved and the class action may be more easily managed than some other procedural vehicle considering the opportunity to afford reasonable notice of significant phases of the litigation.

31.    The claims or defenses of the representative parties are typical of the claims or defenses applicable to the Class.

32.    Plaintiff has retained counsel who are competent in the prosecution of this type of litigation.

33.    There are common questions of law and fact that predominate over any questions affecting only individual Class members.   Said common questions include, but are not limited to, the following:

(a)    Whether Defendants have systematically refused and/or failed to pay the proper amounts due under the agreements entered by Plaintiff and the putative Class members;

(b)    Whether the Agreement provides that Plaintiff was to be paid for each day within the Charter Term;

(c)    Whether the Agreement unambiguously provides that Plaintiff's vessel and Captain's pay shall be based on actual number of days between the date of departure of the vessel until the date of termination of the "Charter Term," rather than the actual number of days that Plaintiff's vessel was in physical use;

(d)    Whether the Agreement unambiguously provides that the Plaintiff's vessel shall be available at Defendants' disposal for operation twenty-four (24) hours per day throughout the Charter Term.

(e)    Whether the Agreement unambiguously provides that the Plaintiff's vessel shall not be used for any purpose other than performance of services defined under the Agreement during the Charter Term.

(f)    Whether Defendants' unilateral interpretation of the Agreement, upon which Plaintiff's pay was based, is contrary to Defendants' contractual obligations and implied duties of good faith and fair dealing;

(g)    Whether the Plaintiff and the Class are entitled to restitution and/or damages for amounts wrongfully denied to them;

(h)    Whether Class members are entitled to a declaratory judgment, holding as a matter of law and contract, that Plaintiff's pay for use of his vessel and for performance as a Captain of the vessel shall be made for each day within the entire Charter Term, as opposed to the amounts paid to said Plaintiff and Class;

(i)    Whether Plaintiff and the Class members are entitled to reasonable attorney fees, court costs and reasonable expenses associated with the filing of this litigation.

34.    Because of the size of some of the individual Class member's claims, few Class members could afford to seek legal action for the wrongs complained of herein.

35.    Notice may be given by a combination of mailed and published notice, and such notice is properly paid for by Defendants.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

36.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

37.    Plaintiff's Agreement, as presented by Defendants, states within its terms and conditions that Defendants are required to pay certain amounts to Plaintiff, based on the number of days within the Charter Term.

38.    Plaintiff satisfied his obligations under the Agreement by making his vessel available, twenty-four (24) hours per day, to Defendants, and by not using his vessel for any purpose other than performance of services for Defendants during the Charter Term.

39.    By failing to pay Plaintiff and the putative Class members for each day within the Charter Term, Defendants breached their Agreement with the Plaintiff and breached the Agreements of the members of the Class.

40.    As a result of Defendants' breach of its contracts, Plaintiff and the members of the Class have suffered damages, and continue to suffer substantial damages, entitling them to an award of damages, costs, interest and attorneys' fees as permitted by applicable law.

## SECOND CAUSE OF ACTION

### (Declaratory and Injunctive Relief)

41.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

42. Plaintiff and the members of the Class aver that they are entitled to: (1) declaratory relief holding that the language in the Agreements requires Defendants to pay Plaintiff and the Class members for each day within the "Charter Term," as compared to amounts paid by Defendants for only actual days the vessels were in physical use; (2) injunctive relief ordering that Defendants cease committing the wrongful acts complained of herein; and, (3) restitution to Plaintiff and the Class members who received less than the amount of pay to which they were properly entitled as a result of Defendants' incorrect interpretation of their own Agreements.

## DEMAND FOR JURY TRIAL

Plaintiff prays for a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Lester Ansardi, prays that Defendants, United States Maritime Services, Inc., United States Maritime Services, LLC, and United States Environmental Services, LLC, be served with a copy of this Class Action Petition and be cited to appear and answer same, and after all legal delays and due proceedings had, that there be judgment entered herein as follows:

1. That this case be certified as a class action with Plaintiff serving as the class representative and Plaintiff's counsel being named as Class Counsel;

2. That Plaintiff and members of the Class be awarded restitution and/or monetary damages as afforded by law, and where applicable;

4. That Plaintiff and the members of the Class be awarded: (1) declaratory relief holding that the language in the Agreements requires Defendants to pay Plaintiff and the Class members for each day within the "Charter Term," as compared to amounts paid by Defendants for only actual days the vessels were in physical use; (2) injunctive relief ordering that Defendants cease committing the wrongful acts complained of herein; and, (3) restitution to Plaintiff and the Class members who received less than the amount of actual pay to which they were properly entitled as a result of Defendants' incorrect interpretation of their own Agreements;

5. That Plaintiff and the Class be awarded the costs incurred in bringing this action, together with reasonable attorneys' fees and expenses, including expert fees and interest; and,

6. For all other legal and equitable relief as the case may permit, and a trial by jury on all issues.

Respectfully submitted,

PENDLEY, BAUDIN & COFFIN, L.L.P.

Christopher L. Coffin, La. Bar Roll 27902
Patrick W. Pendley, La. Bar Roll 10421
Stan P. Baudin, La. Bar Roll 22937
Nicholas R. Rockforte, La. Bar Roll 31305
Elena P. Branzaru, La. Bar Roll 31061
24110 Eden Street

Post Office Drawer 71
Plaquemine, Louisiana 70765
Telephone: (225) 687-6396
Facsimile: (225) 687-6398
Email: ccoffin@pbclawfirm.com

Gary E. Mason
Donna F. Solen
Mason LLP
1625 Massachusetts Ave., NW, Ste 605
Washington, D.C. 20036
Telephone: (202) 429-2290
Email: gmason@masonlawdc.com
Email: dsolen@masonlawdc.com

Kevin L Goldberg
Goldberg, Finnegan & Mester, LLC
1010 Wayne Ave. Suite 950
Silver Spring, MD 20910
Telephone: (301) 589-2999 x102
Facsimile: 301-589-2644
Email: kgoldberg@gfmlawllc.com

Dan A. Robin, Jr., La. Bar No. 24628
2203 Pakenham Drive
Chalmette, La 70043
Telephone: 504-279-5177
Facsimile: 504-279-5375
Email: dan@frjustice.com

*Attorneys for Plaintiff and the Putative Class*

PLEASE SERVE:

**UNITED STATES MARITIME SERVICES, INC.**
Agent for Service of Process:
BARRY J. THIBODEAUX
365 CANAL STREET, SUITE 2500
NEW ORLEANS, LA 70130

**UNITED STATES MARITIME SERVICES, LLC,**
Agent for Service of Process:
BARRY J. THIBODEAUX
365 CANAL STREET, SUITE 2500
NEW ORLEANS, LA 70130

**UNITED STATES ENVIRONMENTAL SERVICES, LLC**
Agent for Service of Process:
BARRY J. THIBODEAUX
365 CANAL STREET, SUITE 2500
NEW ORLEANS, LA 70130

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA.

## MASTER VESSEL CHARTER AGREEMENT

This Master Vessel Charter Agreement (hereinafter referred to as CHARTER) is made effective as of JUNE 6, 2010, 2010 by and between United States Maritime Services, LLC (hereinafter referred to as CHARTERER), and _____ hereafter referred to as VESSEL OWNER).

### ARTICLE 1.    TERM OF CHARTER

A. Subject to the availability (as mutually agreed upon between CHARTERER and VESSEL OWNER) of the vessel described in Exhibit "A" (hereinafter referred to as VESSEL), VESSEL OWNER agrees to let and CHARTERER agrees to hire the VESSEL from time to time as may be requested by CHARTERER. VESSEL OWNER shall deliver or otherwise make available the VESSEL to CHARTERER and place the VESSEL at CHARTERER'S disposal at a mutually agreed location,. The term of the CHARTER shall commence on the date of the departure of the Vessel from the mutually agreed location of delivery into the service of Charterer, and shall be referred to as the "CHARTER TERM." CHARTERER may terminate the CHARTER at any time and the CHARTER TERM will terminate as set out in Paragraph B of this Article 1.

B. The VESSEL shall be delivered at the commencement of the CHARTER TERM, fully tanked with fuel, hydraulic fluid, lubricated, manned, provisioned and ready in all respects to perform SERVICES as required by this CHARTER. The VESSEL shall be redelivered to VESSEL OWNER at the close of each CHARTER TERM to the original point of delivery by CHARTERER, as determined by off-hire dispatch notification, unless VESSEL OWNER elects not to return directly to the point of dispatch, in which case, the CHARTER TERM shall cease immediately upon such election.

### ARTICLE 2.    EMPLOYMENT AND SERVICES OF VESSEL

A. During each CHARTER TERM, the VESSEL shall be employed exclusively for CHARTERER'S use as a vessel of opportunity in the carriage of CHARTERER'S employees, contractors, business invitees, equipment and provisions and in the performance of various tasks associated with oil spill response and containment efforts as directed by CHARTERER (hereinafter referred to as SERVICES). Such SERVICES shall include, but not be limited to, tending or deploying boom and skimming equipment, skimming operations, recovering oiled debris, collecting garbage, assistance with wildlife operations and towing equipment. BP, in cooperation with OSHA and the U.S. Coast Guard, has developed a training and safety program ("HORIZON Response Program" or "HRP") for VESSELS and VESSEL crews engaged in oil spill response activities under this CHARTER. The HRP was approved by OSHA on May 7, 2010 and received approval from the U.S. Coast Guard on May 8, 2010. Per OSHA and U.S. Coast Guard directives, the HRP is subject to·continuous improvement processes. As of May 10, 2010, BP will ensure that all VESSEL crews engaged in oil spill response activities (1) receive all necessary training for such activities as per the HRP, (2) receive all necessary credentials for such activities as per the HRP, and (3) receive all necessary protective equipment for such activities as per the HRP. The VESSEL shall be available and at CHARTERER's disposal for operation twenty-four (24) hours per day. The VESSEL shall not be used for any purpose other than performance of SERVICES during the CHARTER TERM.

B. The whole reach of the VESSEL's deck and accommodation spaces shall be at CHARTERER's disposal, reserving only proper and sufficient space for VESSEL OWNER's crew.

### ARTICLE 3.    PERFORMANCE OF VOYAGES

During the employment under this CHARTER, the VESSEL OWNER or its designated master shall perform all voyages without delay. VESSEL OWNER or its designated master shall load, stow, and trim the VESSEL. The decision to proceed on a trip in the face of adverse or changing weather or sea conditions shall be the sole decision of the VESSEL OWNER or the designated master.

**EXHIBIT**

**B**

{B0367988.1}1

## ARTICLE 4. OPERATION IN COMPLIANCE WITH LAW

A. VESSEL OWNER warrants (i) that it has the right to CHARTER the VESSEL to CHARTERER, (ii) that the VESSEL is entitled to perform the SERVICES under all applicable law (including having all endorsements on its documentation that may be required to perform the SERVICES in accordance with applicable law) and (iii) that the same is free of all encumbrances which might disturb CHARTERER'S full right to SERVICES described in this CHARTER. The VESSEL OWNER shall exercise due diligence to deliver and maintain the VESSEL in a seaworthy condition. The VESSEL must display a current United States Coast Guard Safety Examination decal, unless otherwise approved by the CHARTERER. The VESSEL shall be operated, manned and maintained by VESSEL OWNER at all times during the term of this CHARTER in accordance with all applicable state and federal laws, rules and regulations, including (but not limited to) life saving requirements. The VESSEL OWNER warrants to exercise good faith in the performance of each and every obligation under this CHARTER.

B. VESSEL OWNER shall be responsible for paying any civil, criminal, or administrative fines, citations, or penalties that VESSEL OWNER may incur as a result of VESSEL OWNER'S violation of any laws, rules, or regulations during the term of this CHARTER.

C. VESSEL OWNER shall indemnify and hold CHARTERER harmless from any liability for personal injury, death, or property damage attributable to VESSEL OWNER'S intentional misconduct constituting a violation of state or federal criminal law.

## ARTICLE 5. DESCRIPTION OF VESSEL

The VESSEL and its capabilities and capacities are described in Exhibit "A". VESSEL OWNER warrants, in good faith, the accuracy of all information set forth in Exhibit "A" and that the VESSEL has the capabilities and capacities as set forth in Exhibit "A" and that it shall be seaworthy (Fit for Purpose) at the time of delivery to CHARTERER.

## ARTICLE 6. MANNING REQUIREMENTS

A. VESSEL OWNER shall at all times man the VESSEL with a sufficient number of competent and properly licensed crew and/or deckhands trained and experienced in the operation of the VESSEL in the waters in which the VESSEL is to operate under this CHARTER. The specific number of crew shall be two (2) crew members (captain and one crew) for vessels under 41 feet in length, and three (3) crew members (captain and 2 crew) for vessels 41 feet or greater in length, unless otherwise approved by CHARTERER. VESSEL OWNER shall cause the crew of the VESSEL to carry out their duties with due care and workmanship and the utmost dispatch and diligence. VESSEL OWNER shall be responsible for properly receiving and stowing all cargo, including maintenance of the proper trim and draft of the VESSEL. Cargo loading and unloading operations shall be under the supervision and control of VESSEL OWNER. VESSEL OWNER and crew shall operate the VESSEL in such a way as to not cause unreasonable risk or avoidable damage to any personnel or cargo. Through notification to the Fishing Vessel Administrator and upon advance approval by CHARTERER, VESSEL OWNER may provide additional crew members.

B. VESSEL OWNER warrants that the crew to be provided by VESSEL OWNER shall meet legal manning requirements in accordance with all applicable law for uses and purposes of the VESSEL required hereunder and as more particularly stated in ARTICLE 2 - EMPLOYMENT AND SERVICES OF VESSEL. The VESSEL'S crew shall be joint employees of CHARTERER and VESSEL OWNER. CHARTERER shall pay crew wages, however, VESSEL OWNER shall hold CHARTERER harmless for any claims for fringe benefits and taxes.

**ARTICLE 7.   RADIO COMMUNICATIONS**

VESSEL OWNER shall have, as a minimum, the following radio equipment in a functional and working condition at all times on VESSEL: one (1) VHF marine radio, and may maintain one (1) HF SSB marine radio. Except when outside of communication range, VESSEL OWNER may be required to maintain constant communications on an hourly basis with the assigned Group Supervisor (GS) and/or CHARTERER designated dispatcher by monitoring the VHF marine radio and providing VESSEL'S position as directed by FCP and/or dispatcher. If VESSEL OWNER fails to comply with the provisions of this Article, CHARTERER may terminate this CHARTER upon twenty-four (24) hours written notice.

**ARTICLE 8.   VESSEL PROVISIONS**

VESSEL OWNER shall provide and pay for any other supplies necessary for the VESSEL'S mechanical functioning, except as provided in Exhibit "B". VESSEL OWNER shall provide and pay for all expenses necessary for the maintenance of the crew including, but not limited to, provisions (except as otherwise provided by CHARTERER as described in this ARTICLE), commissary, water, laundry and any necessary lodging. At the start of any CHARTER TERM, VESSEL OWNER shall provide a minimum of three (3) days of such provisions required for the maintenance of the crew. After three (3) days, during an actual oil spill, CHARTERER shall provision the VESSEL for the remainder of each CHARTER TERM. The fixed rate per day set forth in Exhibit "B" shall be increased (as stated in Exhibit "B") per day per the most recent published rate schedule for every meal provided to a CHARTERER employee or business invitee while aboard the VESSEL.

**ARTICLE 9.   MAINTENANCE OF VESSEL**

VESSEL OWNER shall maintain the VESSEL'S hull and machinery in a seaworthy condition (Surveyor designation of "Fit for Purpose"). CHARTERER shall provide or otherwise reimburse VESSEL OWNER'S actual cost of hull and gear cleaning and decontamination if VESSEL requires such cleaning as a direct result of SERVICES under this CHARTER.

**ARTICLE 10.   HIRE**

A. CHARTERER will pay VESSEL OWNER for each CHARTER TERM or SERVICES satisfactorily performed and accepted by the CHARTERER in accordance with Exhibit "B". Any amendment or modification of this CHARTER must be in writing and duly executed by both parties in order to be binding. Provided, however, that CHARTERER shall be entitled at any time during the term of this CHARTER to revise Exhibit "B", by submitting or making available for viewing to VESSEL OWNER, a new Exhibit "B".

B. CHARTERER shall pay Hire for the VESSEL and the SERVICES to be provided by the VESSEL OWNER, for each CHARTER TERM in accordance with the following provisions. For the purposes of ARTICLE 10 - HIRE, a day shall be deemed to be any portion of a twenty-four (24) hour period beginning at 12:00 midnight and ending at 11:59 pm. For the purposes of vessel length, all vessels will be rated on the generally accepted term of L.O.A., (Length Over All).

1. For a CHARTER TERM during an actual oil spill, the fixed rate per foot of vessel length (as stated in Exhibit "B") per day plus a day rate.

2. For a CHARTER TERM during an oil spill drill including but not limited to the requirement for deployment of boom a fixed rate per foot of VESSEL length (as stated in Exhibit "B") per day plus a day rate.

3. For any CHARTER TERM described in ARTICLE 10, Paragraph A, in the event VESSEL OWNER may be requested to provide a skiff in addition to the VESSEL when approved in advance by CHARTERER'S through notification to the FVA. For the purpose of payment, the skiff length shall be based on the L.O.A. of the skiff provided.

4. Training may consist of any of the following:

   a. Classroom training will be defined and approved in advance by the CHARTERER. A fixed rate per crew member in attendance, per day, will be paid to the VESSEL OWNER . During periods such as classroom training, Workers Compensation Insurance will be provided. The VESSEL shall not be considered under HIRE for insurance purposes, therefore insurance shall not be provided during these times.

5. Compensation for CHARTERER requested additional crew members will be paid to the VESSEL OWNER.

6. CHARTERER may request that the VESSEL OWNER perform SERVICES within the capabilities of the VESSEL not identified above. SERVICES are to be performed by VESSEL OWNER only upon a receipt of a written WORK ORDER signed by the CHARTERER, except that a verbal order will suffice in an emergency; such verbal order to be confirmed by written WORK ORDER after issuance of the verbal order. Compensation will be negotiated for each specific WORK ORDER. No payment will be made for SERVICES or items not authorized by a written WORK ORDER.

C. Only with CHARTERER'S prior written approval, CHARTERER shall reimburse VESSEL OWNER'S reasonable costs incurred and paid for by VESSEL OWNER and designated crew for travel, meals and lodging when attending CHARTERER provided or approved training or meetings unless otherwise provided by CHARTERER. Reimbursable costs will be stated in Exhibit "B".

D. The termination of the CHARTE TERM (termination of dispatch) is determined by the time the VESSEL is secure in its moorings at the original point of delivery during drills and exercises, and secure at its mooring after final decontamination after an oil spill response (which process shall be promptly undertaken without delay). If termination is by VESSEL OWNER, termination of dispatch shall be as mutually agreed by CHARTERER'S Group Supervisor and VESSEL OWNER. VESSEL OWNER must ensure FVA is notified of release time.

E. VESSEL OWNER shall be compensated at the end of the CHARTER TERM, and if the CHARTER TERM is longer than fourteen (14) days then invoices may be submitted every fourteen (14) days. The VESSEL OWNER shall provide all necessary information to the appropriate Fishing Vessel Administrator, who shall in turn submit an invoice to CHARTERER. Payment of all sums due shall be made within fifteen (15) days of receipt of an invoice by CHARTERER.

## ARTICLE 11.   PORT FEES, MOORAGE, TAXES

A. CHARTERER shall pay for all port fees and moorage that may be incurred as a direct result of this CHARTER while the VESSEL is away from its home port. VESSEL OWNER shall pay all taxes incidental to use of the VESSEL.

B. The VESSEL shall be loaded and unloaded at any dock, berth, or place that CHARTERER may direct, as approved by VESSEL OWNER, which approval shall not be unreasonably withheld. VESSEL OWNER shall assist CHARTERER in locating and selecting the docks and landings suitable to accomplish the safe loading and unloading of passengers and cargo.

## ARTICLE 12.   BREAKDOWN: DEFICIENCY OF CREWING OR STORES

A. In the event of any loss of time, not due to fault of CHARTERER, on account of: dry-docking or other necessary measures to maintain the efficiency of the VESSEL; deficiency of crewing or stores; breakdown of machinery, gear or equipment, damage to hull; collision; breach of orders; neglect of duty of master, officer or crew; strike or other labor stoppages of master, officers or crew; refusal to sail; stranding; fire; difficulties to the VESSEL'S flag, ownership or previous ports of call; requisition of title or use of the VESSEL; failure to comply with rules, regulations or laws of ports of call; interference by authorities; detention of VESSEL or master or officers; or any other similar accident or event whatsoever either hindering or preventing the full working of the VESSEL, then no HIRE is to be paid for any time loss

until the VESSEL is again in sufficient state to fully resume SERVICES and, has regained a position equivalent to the position occupied at the time just prior to the accident or occurrence.

B. In the case of the VESSEL taken off-HIRE while on a voyage by reason of an accident or occurrence described in 12A above, the hire shall be suspended from the time of the accident or occurrence until the VESSEL is again in the same position as before the accident or occurrence and the VESSEL returns to an equivalent position or a substitute voyage directed by CHARTERER.

C. During the period of off-HIRE all reimbursable items identified in ARTICLE 10 - HIRE and ARTICLE 11 - PORT FEES, MOORAGE, TAXES that would otherwise be for CHARTERER'S account under this CHARTER shall be for the VESSEL OWNER'S account.

D. It is understood that the VESSEL shall use due diligence to comply with all applicable federal, state and local environmental protection and safety laws, regulations, and stipulations when performing SERVICES in effect at all ports within the trading limits. If the VESSEL is found not to comply with any such rule, regulation or law, VESSEL OWNER shall take immediate measures to comply, and all expenses incurred as a result of such failure to comply shall be for VESSEL OWNER'S account under the off-HIRE provisions of ARTICLE 12.

E. If the VESSEL is lost or becomes a constructive total loss, HIRE shall cease at 11:59 PM of the day of VESSEL loss or constructive total loss. If the VESSEL is missing, HIRE shall be suspended as of 11:59 PM on the day when the VESSEL was last heard from and until the VESSEL'S safety has been established, unless loss of contact is deemed to have occurred through no fault of VESSEL OWNER.

F. Any HIRE paid for in advance is to be adjusted by refund or deduction from future payments for any off-HIRE or suspension during the period for which payment was made.

G. If the VESSEL is off-HIRE for a period of time exceeding twenty-four (24) hours for any of the events referred to in ARTICLE 12, CHARTERER may terminate this CHARTER at its sole option if VESSEL OWNER is not making best efforts to return to a safe harbor.

## ARTICLE 13.   INSURANCE

A. VESSEL OWNER confirms that it will maintain in place any insurance policies it is carrying as of the date immediately prior to entering into this CHARTER or that it routinely carries for its usual operations

B. The insurance coverage referred to in Paragraph A above shall remain in effect during the CHARTER TERM, when the VESSEL is on HIRE for training as directed by CHARTERER, or the VESSEL is on HIRE for oil spill response. The time of coverage shall be from dispatch until termination of dispatch by either the VESSEL OWNER or CHARTERER.

C. Insurance coverage may be activated for VESSELS that choose to travel to a remote site the day prior to an exercise or drill with prior approval by the CHARTERER. The VESSEL will only be considered on-HIRE for the purpose of insurance and will not receive any compensation.

D. In the event of any happening that may result in a claim against the coverage afforded in Paragraph A, prompt notice thereof shall be given to the party first aware of such claim in order to afford both parties an immediate opportunity to investigate the facts and circumstances giving rise to the potential claim.

E. The parties understand and agree that the insurance coverage summarized in Paragraph A is more particularly described in the insurance policies, the terms, conditions and exclusions of which shall control..

Note: Copies of the insurance policies summarized in Paragraph A are available upon request.

F. VESSEL OWNER warrants that during the term of this CHARTER that as to the insurance described in

Paragraph A of this Clause 13, it shall:

1. Pay all premiums to keep such insurance policies in full force and effect on the terms and conditions more particularly described in such policies.

2. Will not modify, amend or otherwise agree to any reduction in coverage afforded under the policies.

G. If VESSEL OWNER has a claim against CHARTERER or has Notice of any claim(s) for which CHARTERER is or could be accountable:

1. VESSEL OWNER will exercise good faith and prudent management of all claims, including third party claims, and will not defend or settle third-party claims without CHARTERER'S knowledge and prior written consent.

H. In the event VESSEL OWNER's cost for insurance as provided for hereunder is, by virtue of the SERVICES being provided hereunder, in excess of that normally paid by VESSEL OWNER for its standard coverage, then CHARTERER agrees to pay the cost over and above that normally incurred by VESSEL OWNER for its standard coverage. VESSEL OWNER shall advise CHARTERER of such excess cost before incurring same and shall document the amount of such cost it is claiming for. Nothing herein shall prevent CHARTERER from taking out insurance for any risks it may deem appropriate but nothing herein shall require CHARTERER to do so.

## ARTICLE 14. SALVAGE

All derelicts and salvage shall be for VESSEL OWNER'S and CHARTERER'S equal benefit, after deducting VESSEL OWNER'S and CHARTERER'S expenses and crew portion.

## ARTICLE 15. CHARTER NOT A DEMISE

Nothing stated in this CHARTER is to be construed as demise of the VESSEL to CHARTERER. VESSEL OWNER shall at all times remain responsible for the navigation of the VESSEL, acts of pilots, tug vessels, crew, and all other similar matters as if trading for its own account.

## ARTICLE 16. CHARTERER'S USE OF VESSEL

During the CHARTER TERM the VESSEL OWNER shall not make any other use of the VESSEL without CHARTERER's prior authorization. In addition, the VESSEL OWNER shall not allow on board the VESSEL any non-crew member who would interfere with the VESSEL OWNER'S performance of SERVICES under this CHARTER. If the VESSEL OWNER allows on board the VESSEL any persons who are not crew members, or CHARTERER employees, or business invitees, the VESSEL OWNER shall be solely responsible for any liability for any injury to or death to any such person attributable to that person's presence on board the VESSEL. In no event shall CHARTERER be liable for any expenses resulting from the injury to or death of any such person allowed on board without CHARTERER'S prior authorization.

## ARTICLE 17. VESSEL OWNER IS INDEPENDENT

Except as set forth in Article 6B:

A. VESSEL OWNER and its employees and any approved Subcontractors and their employees are independent contractors and are not employees, partners, or joint ventures with CHARTERER or any other entity. VESSEL OWNER and Subcontractors and their respective employees will not represent CHARTERER in performance of SERVICES under this CHARTER, or engage in any conduct that would imply that VESSEL OWNER and Subcontractors and their respective employees are other than independent contractors.

B. VESSEL OWNER is responsible for the manner, means and methods of performing SERVICES under this CHARTER.

C. VESSEL OWNER shall pay all federal and state taxes, contributions and/or assessments associated with the performance of SERVICES, including, but not limited to, income taxes and self-employment taxes, and shall be responsible for providing its own employee benefit plans.

D. VESSEL OWNER acknowledges and understands that as an independent contractor, VESSEL OWNER and its employees and Subcontractors and their employees are not eligible for any employee benefits under any plans maintained by CHARTERER, including, but not limited to, the CHARTERER Savings and Investment Plan, Pension Plan, Sick Pay Plan, Long Term Disability Insurance Plan, Voluntary Personal Accident Insurance Plan, Severance Plan, Group Life Insurance Plan, Dental Plan, Occupational Death Plan, Business Travel Plan and Medical Plan.

E. VESSEL OWNER will indemnify, defend and hold CHARTERER and its respective employees and agents harmless from and against any and all claims, demands, actions, losses, expenses and/or liabilities resulting from or related to:

1. Any claim, demand, and/or determination that VESSEL OWNER, its employees and/or Subcontractors and their employees are not independent contractors in connection with the performance of SERVICES under this CHARTER, including, but not limited to, any claims or liabilities for regular or overtime wages, salaries, taxes, contributions, and/or assessments; and/or

2. Any claim, demand, and/or determination that VESSEL OWNER, its employees and/or Subcontractors and their employees are entitled to benefits in connection with the performances of SERVICES under this CHARTER under any employee benefit plans maintained by CHARTERER; and/or

3. Any claim, demand, and/or determination that VESSEL OWNER'S employees or Subcontractors' employees are entitled to additional compensation or benefits as a result of VESSEL OWNER'S employment policies and practices; and/or

4. Any claim, demand, and/or determination that VESSEL OWNER'S employees or Subcontractors' employees are entitled to additional compensation or benefits, of whatever kind or character, or damages, of whatever kind or character, based on whole or in part upon theories that they are direct, dual, loaned, borrowed, and/or co- employees of CHARTERER, in addition to being employees of VESSEL OWNER or Subcontractor.

5. Should VESSEL OWNER or Subcontractor assume the defense of CHARTERER pursuant to Paragraph E, CHARTERER shall also be entitled to separate defense and representation of its interests through counsel acceptable to CHARTERER.

**ARTICLE 18.**    **NOTICES**

All notices and communications from VESSEL OWNER to CHARTERER and from CHARTERER to VESSEL OWNER shall be addressed as follows:

CHARTERER

United States Maritime Services, LLC
365 Canal Street
Suite 2500
New Orleans, Louisiana 70130

**VESSEL OWNER**

Company Name: ███████████

Address: ████████████████

████████████████

Attn: ████████████

Telephone: ████████████

Facsimile: ████████████

Email: _____

## ARTICLE 19.   CHOICE OF LAW AND FORUM

The rights and obligations of the Parties to this CHARTER including all matters of construction, validity and performance, shall in all respects be governed and enforced in accordance with the general maritime laws of the United States.  In the event, but only in the event, the maritime laws of the United States do not apply, the laws of the State of Louisiana shall govern.  Any litigation arising out of or relating to the CHARTER may be brought in a court of competent jurisdiction in New Orleans, Louisiana or Houston, Texas.

## ARTICLE 20.   AUDIT AND TERMINATION

At any time during the term of this CHARTER, CHARTERER shall have the right to audit logs, books, payrolls, and records relating to any of the services performed hereunder.  In addition to any other right of termination herein, VESSEL OWNER may terminate this CHARTER or any company listed in Exhibit "A" at any time for any reason whatsoever by giving the said party twenty-four (24) hours advance written notice of such termination, and any company listed in Exhibit "A" may terminate its obligations upon (24) hours advance written notice to CHARTERER.

## ARTICLE 21.   ASSIGNMENT/SUBCONTRACTING

A.  VESSEL OWNER will not assign any of its rights or delegate any of its obligations under this CHARTER without prior written approval from CHARTERER.  CHARTERER'S approval of any assignment, subcontract or delegation will not relieve VESSEL OWNER of any responsibility under this CHARTER.

B.  VESSEL OWNER shall not assign any rights or delegate any obligations hereunder without CHARTERER'S prior written approval, which shall not be unreasonably withheld. Any such unauthorized assignment shall be void. CHARTERER may assign this CHARTER to third parties specifically including any of its respective affiliates or a response action contractor.

## ARTICLE 22.   WAIVER

If CHARTERER fails to enforce any right or remedy available under this CHARTER, that failure will not be construed as a waiver of any right or remedy.  A waiver of any claim, demand, right or remedy based on the breach of any provision of this CHARTER will not be construed as a waiver of any other claim, demand, right or remedy based on a subsequent breach of the same or any other provision.

## ARTICLE 23.   SEVERABILITY

If any part, term or provision of this CHARTER is determined by a court of competent jurisdiction to be unlawful or unenforceable, the validity and enforceability of the remaining parts, terms and provisions will not be affected.

## ARTICLE 24. ENTIRE AGREEMENT; SUCCESSORS

A. This CHARTER includes Exhibits A, B, and C attached hereto and constitutes the entire agreement between the Parties with respect to this CHARTER. This CHARTER cancels and supersedes all prior negotiations, representations or agreements, both written and oral, including any proposals submitted by VESSEL OWNER. The Parties have not been induced by any representation, statements or agreements other than those expressed in this CHARTER. No changes, alterations, or modifications to this CHARTER will be effective unless made in writing and signed by both Parties.

B. This CHARTER will benefit and bind the successors, representatives and assignees of both Parties.

## ARTICLE 25. PRIORITY OF TERMS

In the event of any conflict or inconsistency between the various parts of this CHARTER, the Articles will take precedence over all other parts of this CHARTER, including any Exhibits, Attachments and Addenda, unless specifically stated otherwise.

THE PARTIES HAVE EXECUTED THIS CHARTER, in duplicate originals, by their respective authorized representatives, as of the date first written above.



VESSEL OWNER/NAME: _____

CHARTERER : UNITED STATES MARITIME SERVICES, INC.

By: _____     _____ (Date)     By: _____     _____ (Date)
(Signature)

(Print or Type Name)     (Print or Type Name)

(Print or Type Title)     (Print or Type Title)

## EXHIBIT A

## VESSEL INFORMATION

**A.** **General Information**

Vessel Name: ████████████████

FVA Port: ████████████

Parish ██████████████

Call Sign: _____

USCG Decal No.: _____

Expiration Date: _____

ADF&G No.: ████ _____

AK/Doc No.: ████ _____

Vessel Type: ████████ _____

Vessel Length: ██████ _____

Berth Capacity: █████ _____

Manning Requirement: _____

**B.** **VESSEL OWNER Contact Information**

Company Name: ████████████████

Contact Name: ████████████████

Email Address: ████████████████████ ████████████

Mailing Address: █████████████████████████████████

Physical Address: ████████████

Home Phone: ██████████████████

Cell Phone: ███████████████████

Facsimile Phone: _____

**C.** **Vessel Survey/Insurance Information**

Date of Survey: _____

Insured? (Yes/No) _____

D. **Vessel Engine Information**

Make: �â– ▮▮▮▮▮▮▮▮▮▮▮▮_____

Model: _____

Total HP: ___▮▮▮▮▮▮▮_____

Number of Engines: ___▮▮▮▮_____

Drive Type: ___▮▮▮▮▮▮▮▮▮_____

Fuel Capacity: ___▮▮▮▮_____

Burn Rate (GPH___▮▮▮▮_____

Fuel Type: ___▮▮▮▮▮▮▮_____

Aux. Engine? (Yes/No) ___▮▮▮▮_____

Aux. HP: _____

Aux. Fuel Type: _____

E. **Skiff Information**

Type: ___▮▮▮▮▮▮▮▮▮▮_____

Length: ___▮▮▮▮_____

HP: ___▮▮▮▮_____

Fuel Type: ___▮▮▮▮▮▮▮▮_____

F. **Comments**

_____
_____
_____
_____
_____
_____
_____
_____

**EXHIBIT B**

**COMPENSATION PROVISIONS/PUBLISHED RATE SCHEDULE**

## PARAGRAPH 1 - COMPENSATION

As full and complete compensation to VESSEL OWNER for SERVICES satisfactorily performed and for assuming obligations hereunder, CHARTERER, for and on behalf of OWNERS, will pay VESSEL OWNER on the basis of the fixed rates (FIXED RATES), set forth below in PARAGRAPH 2 - FIXED RATES, and will reimburse VESSEL OWNER for the costs of specific items set forth below in PARAGRAPH 3 - REIMBURSABLE COSTS. CHARTERER shall be entitled at any time during the term of this CHARTER to revise EXHIBIT "B" – COMPENSATION PROVISIONS/PUBLISHED RATE SCHEDULE, by submitting or making available for viewing to VESSEL OWNER, a new EXHIBIT "B" – COMPENSATION PROVISIONS/PUBLISHED RATE SCHEDULE.

## PARAGRAPH 2 - FIXED RATES

VESSEL OWNER's FIXED RATES (hereinafter FIXED RATES) are agreed to be VESSEL OWNER's sole, complete, and exclusive compensation for performing and completing SERVICES under CHARTER, except as noted in PARAGRAPH 3 - REIMBURSABLE COSTS below, including, without limitation, all management, labor, supervision, salaries, wages, taxes of all kinds, insurance premiums, contributions, equipment, equipment maintenance, materials (not provided by CHARTERER), support facilities, transportation (if not provided by CHARTERER), tools, overhead and profit. FIXED RATES are not subject to renegotiation or retroactive adjustments based on actual experience and are not subject to escalation.

FIXED RATES FOR SERVICES:

| SERVICES | FIXED RATES |
|---|---|

A. Vessel Services:

    1. Actual Spill Response:
       As defined in ARTICLE 10 - HIRE, Paragraph B1

| | |
|---|---|
| Vessel > 65' | $3000/24 hour day |
| Vessels > 45' – 65' | $2000/24 hour day |
| Vessels >30' - 45' | $1500/24 hour day |
| Vessels less than 30' | $1200/24 hour day |

       Plus:
       Specialized equipment required by BP reimbursable at cost +10%
       PPEs will be provided by CHARTERER

B. Crew Services:

    1. Actual Spill Response, Classroom Training, Table Top Activities, or Meetings:
       As defined in ARTICLE 10 – HIRE, Paragraph B5    $200.00/ /
                                                       crewmember

    2. Meals for provided by Vessel Owner

## PARAGRAPH 3 - REIMBURSABLE COSTS

A. CHARTERER shall provide or otherwise compensate VESSEL OWNER at the current commercially available rate per HP/100 x 3 x Hrs. dispatched x current fuel rate for diesel, gas and auxiliary fuels (as specified in EXHIBIT A - CHARTER VESSEL INFORMATION) or fraction thereof while VESSEL is on HIRE for the cost of all the fuel, hydraulic oil and lube oil. CHARTERER's CONTRACT

REPRESENTATIVE may make adjustments to formula as warranted.

<u>NOTE:</u>  Current rate of all commercially available fuel as of the dispatch off-HIRE date in the VESSEL's home port.

B.  In addition to payment of FIXED RATES as set forth above, VESSEL OWNER shall be reimbursed for the following actual costs incurred and paid by VESSEL OWNER.  Said costs in 1 and 2 below shall be those net costs incurred and paid by VESSEL OWNER and shall be invoiced to CHARTERER at net cost.

1.  When approved in advance by CHARTERER's CONTRACT REPRESENTATIVE reasonable and actual airline travel while on travel away from VESSEL OWNER's home port shall be tourist/economy class unless otherwise approved in writing in advance by CHARTERER's CONTRACT REPRESENTATIVE.

2.  When approved in advance by CHARTERER's CONTRACT REPRESENTATIVE, vehicle rental while on travel status away from VESSEL OWNER's home port shall be mid-size or smaller unless approved in writing in advance by CHARTERER's CONTRACT REPRESENTATIVE.

**EXHIBIT C**
**AGREEMENT REGARDING PROPRIETARY AND CONFIDENTIAL INFORMATION**

WHEREAS, _____ (hereinafter referred to as CHARTERER) and_____ (hereinafter referred to as VESSEL OWNER) have entered into CONTRACT _____ (hereinafter referred to as CHARTER) effective as of ___ _____ whereunder VESSEL OWNER, its subcontractors, and their respective employees will be performing certain services with respect to the tending or deploying boom and skimming equipment, skimming operations, recovering oiled debris, collecting garbage, assistance with wildlife operations and towing equipment operation in connection with the Deepwater Horizon Incident (hereinafter referred to as OIL SPILL RESPONSE AND CONTAINMENT) and VESSEL OWNER, its subcontractors, and their respective employees are being paid by OWNERS, either directly or indirectly, for their services thereunder; and

WHEREAS, it is the desire of CHARTERER and OWNERS to secure the benefit of, protect and maintain as confidential all technology and information developed or disclosed in connection with OIL SPILL RESPONSE AND CONTAINMENT;

NOW THEREFORE, the undersigned hereby agree that:

1.  This Agreement shall be governed by and construed in accordance with the laws of the State of Louisiana. Any litigation arising out of or relating to the CHARTER may be brought in a court of competent jurisdiction in New Orleans, Louisiana or Houston, Texas.

2.  The obligations of the undersigned and the rights of CHARTERER and OWNERS under this Agreement are continuing obligations and rights, and the termination or expiration of CHARTER shall not terminate such obligations and rights.

3.  It will not perform services for others during the life of CHARTER which might conflict with the work to be performed in connection with the aforesaid SERVICES; otherwise, consistent with the terms hereof, the undersigned is free to perform services for others.

4.  All Data, patent applications and patents arising out of performance of SERVICES under CHARTER or relating to OIL SPILL RESPONSE AND CONTAINMENT are the property of OWNERS and the undersigned will take all necessary steps to secure OWNERS' rights and title thereto.

5.  It will promptly disclose in writing to CHARTERER all inventions, discoveries, or improvements which are conceived or made by it, solely or jointly, which arise out of or relate to the performance of SERVICES under the CHARTER or to the Data defined above. It further agrees to assign and, on request by CHARTERER or OWNERS, will assign to CHARTERER's or OWNERS' designee(s) all such inventions, discoveries, and improvements, and all applications for patent and patents which may result therefrom, and cooperate with CHARTERER or OWNERS and their designee(s) in the preparation and execution of all papers required to secure Letters Patent thereon.

6.  It will not use Data for any purpose other than as required by CHARTERER for the purpose of performing SERVICES under CHARTER without the prior written permission of CHARTERER.

The undersigned has signed this Agreement as of the date written below.

By_____          _____
(Signature)                                 (Date)

_____             _____
(Print or Type Name)                        (Print or Type Name)



| | UNITED STATES MARITIME SERVICES | Section #: x.xx.xx |
|---|---|---|
| UNITED STATES SERVICES GROUP | POLICY AND PROCEDURE | Eff. Date: 06/01/2010 |
| | ST BERNARD FISHING VESSEL RESPONSE FLEET | Revision: 02 |
| | Charter Addendum and Policies | |

# ADDENDUM TO MASTER VESSEL CHARTER AGREEMENT

**COMMON SENSE RULES:**

PLEASE REMEMBER IN ALL OF YOUR ACTIVITIES, THAT GOVERNMENT AGENCIES, CONTRACTORS, THE PUBLIC AND THE NATIONAL AND INTERNATIONAL PRESS ARE WATCHING EVERYTHING THAT OCCURS IN THE EFFORTS TO CLEAN UP AND MINIMIZE THE EFFECTS OF THE SPILL. WE, AS YOU, WANT TO PRESENT THE BEST POSSIBLE IMAGE OF THE PEOPLE OF ST. BERNARD PARISH AND THE STATE OF LOUISIANA. AS SUCH, CERTAIN BEHAVIORS THAT MAY BE ACCEPTABLE ON A WORKING FISHING VESSEL MAY NOT SEND THE RIGHT MESSAGE TO THE INTERNATIONAL AUDIENCE FOLLOWING THIS TRAGEDY.

Certain common sense rules need to be followed. These rules include the safe operation of the vessels; not carelessly creating additional damage to other vessels and third-party property such as docks and staging areas; avoiding negative comments particularly to the press; compliance with training and safety instructions (including wearing all appropriate personal protective equipment even though it may be hot and uncomfortable); following the drug and alcohol policies; following the directions of United States Maritime Services supervisors; and reporting to staging areas on time and ready to go to work. If you have any questions please consult a United States Maritime Services representative for an answer. You are advised that if you violate any of these rules or engage in any conduct that places the program in a bad light you may be immediately terminated and not allowed to participate in the program.

**UNINSPECTED COMMERCIAL FISHING INDUSTRY VESSELS SAFETY.**

The United States Coast Guard is the authoritative body with respect to safety requirements aboard commercial vessels;

**Each vessel chartered must have the following minimum safety features including but not limited to:**

1. readily accessible fire extinguishers capable of promptly and effectively extinguishing a flammable or combustible liquid fuel fire;
2. at least one readily accessible life preserver or other lifesaving device for each individual on board in types required by the USCG;
3. an efficient flame arrestor, backfire trap, or other similar device on the carburetors of each inboard engine which uses gasoline as fuel;
4. the means to properly and efficiently ventilate enclosed spaces, including engine and fuel tank compartments, so as to remove explosive or flammable gases;
5. visual distress signals;

**GENERAL POLICIES**

All Vessel Owners are expected to comply with all federal and state employment and benefit laws.

**ACCIDENTS / INJURY**



| | UNITED STATES MARITIME SERVICES | Section #: x.xx.xx |
|---|---|---|
| UNITED STATES SERVICES GROUP | POLICY AND PROCEDURE | Eff. Date: 06/01/2010 |
| | ST BERNARD FISHING VESSEL RESPONSE FLEET | Revision: 02 |
| | Charter Addendum and Policies | |

Should an accident or injury occur while on the job, you are required to report the incident to a supervisor and/or a health and safety officer as soon as possible and complete an incident report.

## PAYMENT

Notwithstanding anything in the Master Charter to the contrary, wages will be paid by check from U.S. Maritime Services directly to each captain and crew member and a Form 1099 will be prepared by U.S. Maritime Services in the amount of the wages paid. Captains and crew are responsible for all taxes due on their wages.

Charter Hire will be paid to Vessel Owners in accordance with the Master Charter Exhibit B and summarized below:

| Vessel Length | Rate |
|---|---|
| >65' | $3000./24 hr day |
| >45' -65' | $2000./24 hr day |
| >30 -45' | $1500./24 hr day |
| Less than 30' | $1200/24 hr day |

Personnel:

| Captains | $360,/day |
|---|---|
| Crew | $200,/day |

Vessels under 41' deploying boom shall have a captain plus 2 crew.

Vessels 41' and over deploying boom shall have a captain and a minimum of 3 crew.

Charterer may authorize on appropriate vessels a maximum of a captain and 4 crew.

1. The cutoff for payments will be on Wednesdays for payments to be made the following Friday. For example:

Team A ends Wednesday June 9th , payment will be Friday, June 18th
Team B ends Sunday June 13th , payment will be Friday, June 25th
Team C ends Thursday June 17th, payment will be Friday, July 2nd

2. Payments are to be made by check, and may be picked up at a designated location between certain hours every Friday.   U.S. Maritime is arranging for payments to be made in the following additional forms / conditions:

1. By check to be picked up at a designated location on Fridays between certain hours.
2. To a pre-designated appointee, with a signed authorization form.
3. By check via mail to a pre-designated address.
4. By ACH with a pre-designated ACH form.



| | UNITED STATES MARITIME SERVICES | Section #: x.xx.xx |
| | POLICY AND PROCEDURE | Eff. Date: 06/01/2010 |
| UNITED STATES SERVICES GROUP | ST BERNARD FISHING VESSEL RESPONSE FLEET | Revision: 02 |
| | Charter Addendum and Policies | |

**TESTING**

All captains and crew are required to pass pre and post employment drug and alcohol tests as well as pre employment medical exams. Further details are available from representatives of United Stated Maritime Services,

**DRUG FREE WORK PLACE**
U.S. Maritime is a contractor to the chemical industry and takes affirmative action to achieve and maintain a work place that is free from illegal drugs and alcohol. In order to achieve these goals the Company adheres to the following testing practices:

. Pre-Placement
. Post Accident
. Reasonable Cause
. Random

A condition of participating in the Fishing Vessel Program is to adhere to these guidelines for testing and abide by our policies.

**SAFE OPERATIONS**
Safe Operations are a very important concern of the Company. It is for this reason that safety is included as one of the U.S. Maritimes Values. All operations shall be performed in a safe manner. You are required to report any unsafe conditions or practice.

**ACCIDENTS / INJURY**
Should an accident or injury occur while on the job, you are required to report the incident to a supervisor and/or a health and safety officer as soon as possible and complete an incident report. Work place injuries are covered by Company-provided Worker's Compensation coverage.

**UNACCEPTABLE ACTIVITIES**

Generally speaking, we expect each person to act in a mature and responsible way at all times. If you have any questions concerning any work or safety rule, or any of the unacceptable activities listed below, please see your supervisor for an explanation.

Note that the following list of unacceptable activities does not include all types of conduct that can result in disciplinary action, up to and including termination. Nothing in this list alters the at-will nature of your participation in the Fishing Vessel Response Program; either you or U.S. Management may terminate the relationship with or without reason, and in the absence of any violation of these rules.

1. Violation of any company rule; any action that is detrimental to U.S. Maritime's efforts to operate safely and efficiently.

2. Violation of security or safety rules or failure to observe safety rules or U.S Maritimes safety practices; failure to wear required safety equipment.

3. Negligence or any careless action which endangers the life or safety of another person.



| | **UNITED STATES MARITIME SERVICES** | Section #: x.xx.xx |
|---|---|---|
| | **POLICY AND PROCEDURE** | Eff. Date: 06/01/2010 |
| UNITED STATES SERVICES GROUP | St Bernard Fishing Vessel Response Fleet | Revision: 02 |
| | Charter Addendum and Policies | |

4. Being intoxicated or under the influence of a controlled substance while at work; use, possession or sale of a controlled substance in any quantity while on company premises, except medications prescribed by a physician for you which do not impair work performance.

5. Unauthorized possession of dangerous or illegal firearms, weapons or explosives on company property or while on duty.

6. Engaging in criminal conduct or acts of violence, or making threats of violence towards anyone while working in the program or on the work site; fighting or provoking a fight on the work site, or negligent damage of property.

7. Insubordination or refusing to obey instructions properly issued by a supervisor or safety officer pertaining to your work..

8. Threatening, intimidating or coercing fellow workers on or off the work site at any time, for any purpose.

9. Engaging in an act of sabotage; negligently causing the destruction or damage of property.

10. Theft or unauthorized possession of the property of others; unauthorized possession or removal of any property of others, including documents, from the premises without prior permission from supervisors; unauthorized use of the equipment or property of others for personal reasons; using the property or equipment for profit.

11. Dishonesty; falsification or misrepresentation on any document requested or other work records; lying about any issue; falsifying reasons for a leave of absence or other data requested by U.S. Maritime.

12. Spreading malicious gossip and or rumors; engaging in behavior which creates discord and lack of harmony; interfering with another worker on the job; restricting work output or encouraging others to do the same.

13. Immoral conduct or indecency on the work site.

14. Excessive absence or lateness.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 11-11436                                           DIVISION "N-8 "

LESTER ANSARDI, INDIVIDUALLY, AND
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

versus

UNITED STATES MARITIME SERVICES, INC.
UNITED STATES MARITIME SERVICES, LLA, AND
UNITED STATES ENVIRONMENTAL SERVICES, LLC

FILED: _____        _____
                                              DEPUTY CLERK

### NOTICE OF FILING NOTICE OF REMOVAL

NOW INTO COURT, through undersigned counsel, come United States Maritime

Services, Inc. and United States Environmental Services, LLC, defendants herein, which hereby

notify this Honorable Court that, on November 22, 2011, a Notice of Removal of this action

from the Civil District Court for the Parish of Orleans, State of Louisiana, was filed with the

United States District Court for the Eastern District of Louisiana.

Respectfully submitted,

BALDWIN HASPEL BURKE & MAYER, L.L.C.

_____
LANCE J. ARNOLD (Bar #18768)
JENA W. SMITH (Bar #25255)
Energy Centre – 36th Floor
1100 Poydras Street
New Orleans, LA 70163
Telephone: (504) 569-2900
Fax: (504) 569-2099
*Counsel for United States Maritime Services, Inc.*
*and United States Environmental Services, LLC*

### CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of November, 2011, a copy of the Notice of Filing
Notice of Removal was served on all parties or counsel of record via email or by placing a copy
of same in the United States mail, postage paid and properly addressed.

_____



EXHIBIT
C

505367

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LESTER ANSARDI, INDIVIDUALLY | * | CIVIL ACTION NO.: _____ |
| AND ON BEHALF OF ALL OTHERS | * | |
| SIMILARLY SITUATED | * | |
| | * | |
| VERSUS | * | JUDGE: |
| | * | |
| UNITED STATES MARITIME | * | |
| SERVICES, INC., UNITED STATES | * | |
| MARITIME SERVICES, LLC AND | * | MAGISTRATE: |
| UNITED STATES ENVIRONMENTAL | * | |
| SERVICES, LLC | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

## NOTICE TO PARTIES OF REMOVAL

TO:  **Plaintiff and the Putative Class Through:**

Christopher L. Coffin
Pendely, Baudin & Coffin, L.L.P.
24110 Eden Street
Post Office Drawer 71
Plaquemine, Louisiana 70765

Gary E. Mason
Mason, LLP
1625 Massachusetts Ave., NW
Suite 605
Washington, D.C. 20036

Kevin L. Goldberg
Goldberg, Finnegan & Mester, LLC
1010 Wayne Ave.
Suite 950
Silver Spring, Maryland  20910

Dan A. Robin, Jr.
2203 Pakenham Dr.
Chalmette, Louisiana 70043

Please take notice that on the 22nd day of November, 2011 United States Maritime

Services, Inc. and United States Environmental Services, L.L.C. filed a Notice of Removal as

required by law for removal of the captioned case from the Civil District Court for the Parish of



EXHIBIT
D

Orleans, State of Louisiana, to the United States District Court for the Eastern District of Louisiana.

Respectfully submitted,

**BALDWIN HASPEL BURKE & MAYER, L.L.C.**

/s/ Lance J. Arnold
**LANCE J. ARNOLD (Bar #18768)**
**JENA W. SMITH (Bar #25255)**
Energy Centre – 36th Floor
1100 Poydras Street
New Orleans, LA 70163
Telephone: (504) 569-2900
Fax: (504) 569-2099
*Counsel for United States Maritime Services, Inc.*
*and United States Environmental Services, L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2011, a copy o9f the foregoing Notice to Parties of Removal was filed electronically with the clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by electronic mail or by placing same in the United States mail, properly addressed and postage prepaid, this 22nd day of November, 2011.

/s/ Lance J. Arnold

505569

2



AMOUNT RECEIVED $3,478.00
CHANGE DUE $.00



**CIVIL DICTRICT COURT**

**PARISH OF ORLEANS**

**STATE OF LOUISIANA**

==================================
Check #2768 Amt. $3,478.00

LESTER ANSARDI,
INDIVIDUALLY, AND ON BEHALF
OF ALL OTHERS SIMILARLY SITUATED

SUIT NO. 2011-11436

**PLAINTIFF**

**SECTION 8**

**VERSUS**

# DIV. N

UNITED STATES
MARITIME SERVICES, INC.,
UNITED STATES
MARITIME SERVICES, LLC, and
UNITED STATES ENVIRONMENTAL
SERVICES, LLC

FILED

2011 OCT 27 A 11: 20

CIVIL DISTRICT COURT

**DEFENDANTS**

**DIVISION** DALE N. ATKINS

CLERK, CIVIL DISTRICT COURT

11-4-11

402 CIVIL COURTS BUILDING

**CLASS ACTION PETITION** 421 LOYOLA AVENUE - ROOM 402

NEW ORLEANS, LA 70112

Plaintiff, Lester Ansardi (hereinafter "Plaintiff"), brings this action individually, and on behalf of
504-592-9100

the Class of persons defined below, against Defendants, United States Maritime Services Inc., United

States Maritime Services, LLC, and United States Environmental Services, LLC. Plaintiff alleges the
DATE: 10/31/2011 at 09:21

following on information and belief, formed after a reasonable inquiry under the circumstances.

**PARTIES**
RECEIPT#: 303798

1.       Plaintiff Lester Ansardi was at all times material hereto a resident of St. Bernard Parish,        PRICE      PAID      BAL

State of Louisiana.  Plaintiff has suffered injury in fact as a result of Defendants' conduct.

CLASS ACTION

2.       Defendant United States Maritime Services, Inc., is a domestic business licensed to do
$ 2641.00 $  2641.00 $   0.00

business in the State of Louisiana.  Its principle place of business is in New Orleans, Orleans Parish,
$  22.00 $   22.00 $   0.00

Louisiana.
INDIGENT LEGAL FEE

3.       Defendant United States Maritime Services, LLC is a domestic business operating in the $   0.00

State of Louisiana.  Its principle place of business is in New Orleans, Orleans Parish, Louisiana.
BUILDING FUND FEE
$  25.00 $   25.00 $   0.00

4.       Defendant United States Environmental Services, LLC is a domestic business licensed to
$ 780.00 $  780.00 $   0.00

do business in the State of Louisiana.  Its principle place of business is in New Orleans, Orleans Parish,
==================================

Louisiana.
TOTAL PAID CASE # 201111436:   $3478.00

5.       Upon information and belief, United States Maritime Services, Inc., and United States

Maritime Services, LLC are one and the same business. No registration exists with the Louisiana

**EXHIBIT**

**E**

DEPUTY CLERK 11-4-11

(WILLIAM STROMBOE)



Secretary of State for United States Maritime Services, LLC. However, United States Maritime Services, LLC entered into agreements with the Plaintiff and putative Class members.

6. Upon information and belief, United States Environmental Services, LLC operates as the same business as United States Maritime Services, Inc. with identical ownership, but is registered as a separate entity.

7. Venue is proper within this district in that Defendants are Louisiana operated businesses, Defendants conducted business in Louisiana and in this district, the vessel at issue was located in Louisiana, the damages were incurred within Louisiana, and the Agreement at issue includes a choice of law provision indicating that any litigation arising out of or relating to the Agreement may be brought in a court of competent jurisdiction in New Orleans, Louisiana.

## FACTUAL ALLEGATIONS

8. Defendant companies are engaged to do business in the State of Louisiana.

9. Plaintiff and the putative Class members entered into contractual agreements with the Defendant companies for the purpose of providing use of Plaintiff's and the Class members' vessels during the aftermath of the BP oil spill.

10. Defendant companies breached the term of the agreements with Plaintiff and the putative Class by failing to adequately pay Plaintiff and the Class members the full amount due under the contractual agreements.

11. On June 10, 2010, Defendants entered into a Master Vessel Charter Agreement (the "Agreement") with Plaintiff Lester Ansardi. The Agreement is designated as Agreement B0367988.1.

12. Pursuant to the terms and conditions of Plaintiff's Agreement, the term of the Agreement (defined as the "Charter Term") commenced on the date of the departure of the Plaintiff's vessel from a mutually agreed location of delivery.

13. Pursuant to the terms and conditions of the Agreement, the termination of the Charter Term is determined by the time the Plaintiff's vessel is secure in its moorings at the original point of delivery after final decontamination after an oil spill response.

14. Pursuant to the terms and conditions of the Agreement, Plaintiff's vessel was to be available for Defendants' disposal twenty-four (24) hours per day within the Charter Term.

15. Pursuant to the terms and conditions of the Agreement, Plaintiff's vessel was not to be used for any purpose, during the Charter Term, other than performance of services defined in the Agreement.

16. Defendants were obligated to pay specified amounts, vessel pay and Captain's pay to Plaintiff for each "day" within the Charter Term, based on the provisions in the Agreement and its attached exhibits.

17. Over the course of several months following commencement of the Agreement, Plaintiff complied with the terms of the Agreement, and Defendants hired Plaintiff and Plaintiff's vessel for use in an oil spill response.

18. Plaintiff's vessel received a verification of final decontamination from the United States Coast Guard on November 2, 2010.

19. On November 29, 2010, Defendants entered into a Notice of Termination of Charter with Plaintiff Lester Ansardi.

20. Defendants failed to pay Plaintiff, as provided for in the Agreement, for each "day" within the Charter Term.

21. Pursuant to the terms and conditions of Plaintiff's Agreement, Defendants were required to pay Plaintiff for each day within the Charter Term, with such Charter Term not being terminated until the Plaintiff's vessel was secure in its moorings at the original point of delivery AND after final decontamination.

22. Despite its obligation, Defendants incorrectly paid Plaintiff based only on the actual number of days that Plaintiff's vessel was in physical use, and not for each day during the Charter Term.

23. In failing to pay Plaintiff and the putative Class members in accordance with the Agreement, to include the per diem pay per vessel and per diem pay for Captain's wages, Defendants breached their contract with the Plaintiff and the members of the Class in a common and uniform manner, and instituted a policy of not paying the full amounts due Plaintiff and the Class.

24. Upon information and belief, Defendants followed a standard and regular practice of paying Plaintiff and Class members based only on the actual number of days that Plaintiff's and Class members' vessels were in physical use, and not for each day during the time within which the Charter Term was in effect.

25. As a result of Defendants' actions, Plaintiff and the members of the Class received less amounts than they were entitled, and Defendants experienced higher profits at the expense of the Plaintiff and the members of the Class.

26. Defendants are estopped from arguing an interpretation of the Charter Term that is different from the language in the Agreement.

## CLASS REPRESENTATION ALLEGATIONS

27. Plaintiff is entitled to have this case maintained as a class action, pursuant to Louisiana Code of Civil Procedure, Article 591, *et seq.* The proposed class is defined at this time, but is subject to modification as additional facts are obtained in discovery, as follows:

> All individuals and entities in Louisiana who contracted with United States Maritime Services, Inc., United States Maritime Services, LLC, or United States Environmental Services, LLC on or after April 2010 through a Master Vessel Charter Agreement allowing United States Maritime Services, Inc., United States Maritime Services, LLC, or United States Environmental Services, LLC, to hire their vessel for employment during an oil spill response.

28. Excluded from the Class are the Defendants, their owners, officers, directors, subsidiaries, and any person or other entity related to, affiliated with, or employed by Defendants.

29. Plaintiff is entitled to have this cause of action maintained as a class action, pursuant to Louisiana Code of Civil Procedure article 591, *et seq.*, for the following non-exclusive reasons:

(a) The persons and entities constituting the Class are so numerous, in excess of 500, that individual joinder of all parties is impracticable;

(b) The named plaintiff is representative of the plaintiff Class members and is so situated to provide adequate representation for the unnamed plaintiff Class members;

(c) Plaintiff's claims are similar in nature and typical of the claims of each Class member. The claim of the named representative Plaintiff is typical of the claims of the Class members that he represents, in that they were not fully appraised of their rights and entitlements regarding the Defendants' obligation to provide Plaintiff and the Class members with amounts equal to the terms set forth in the Agreement;

(d) The great majority of the unnamed plaintiff Class members have no substantial interest in individually controlling the prosecution of their separate actions;

(e) There are common questions and issues of law and fact involved in this matter which predominate over questions affecting individual Class members;

(f) Any defenses or theories of resistance to liability set forth by the Defendants would be applicable to all claims presented by members of the plaintiff Class; and,

(g) The prosecution of separate actions by individual plaintiff Class members will create a serious risk of inconsistent or varying adjudication which may prejudicially affect the claims of the other Class members and subsequent litigation.

30. The class action is a superior procedural vehicle for this litigation because the primary objective of the class action, economies of time, effort and expense, will be achieved and the class action may be more easily managed than some other procedural vehicle considering the opportunity to afford reasonable notice of significant phases of the litigation.

31. The claims or defenses of the representative parties are typical of the claims or defenses applicable to the Class.

32. Plaintiff has retained counsel who are competent in the prosecution of this type of litigation.

33. There are common questions of law and fact that predominate over any questions affecting only individual Class members. Said common questions include, but are not limited to, the following:

   (a) Whether Defendants have systematically refused and/or failed to pay the proper amounts due under the agreements entered by Plaintiff and the putative Class members;

   (b) Whether the Agreement provides that Plaintiff was to be paid for each day within the Charter Term;

   (c) Whether the Agreement unambiguously provides that Plaintiff's vessel and Captain's pay shall be based on actual number of days between the date of departure of the vessel until the date of termination of the "Charter Term," rather than the actual number of days that Plaintiff's vessel was in physical use;

   (d) Whether the Agreement unambiguously provides that the Plaintiff's vessel shall be available at Defendants' disposal for operation twenty-four (24) hours per day throughout the Charter Term.

   (e) Whether the Agreement unambiguously provides that the Plaintiff's vessel shall not be used for any purpose other than performance of services defined under the Agreement during the Charter Term.

   (f) Whether Defendants' unilateral interpretation of the Agreement, upon which Plaintiff's pay was based, is contrary to Defendants' contractual obligations and implied duties of good faith and fair dealing;

   (g) Whether the Plaintiff and the Class are entitled to restitution and/or damages for amounts wrongfully denied to them;

(h)    Whether Class members are entitled to a declaratory judgment, holding as a matter of law and contract, that Plaintiff's pay for use of his vessel and for performance as a Captain of the vessel shall be made for each day within the entire Charter Term, as opposed to the amounts paid to said Plaintiff and Class;

(i)    Whether Plaintiff and the Class members are entitled to reasonable attorney fees, court costs and reasonable expenses associated with the filing of this litigation.

34.    Because of the size of some of the individual Class member's claims, few Class members could afford to seek legal action for the wrongs complained of herein.

35.    Notice may be given by a combination of mailed and published notice, and such notice is properly paid for by Defendants.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

36.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

37.    Plaintiff's Agreement, as presented by Defendants, states within its terms and conditions that Defendants are required to pay certain amounts to Plaintiff, based on the number of days within the Charter Term.

38.    Plaintiff satisfied his obligations under the Agreement by making his vessel available, twenty-four (24) hours per day, to Defendants, and by not using his vessel for any purpose other than performance of services for Defendants during the Charter Term.

39.    By failing to pay Plaintiff and the putative Class members for each day within the Charter Term, Defendants breached their Agreement with the Plaintiff and breached the Agreements of the members of the Class.

40.    As a result of Defendants' breach of its contracts, Plaintiff and the members of the Class have suffered damages, and continue to suffer substantial damages, entitling them to an award of damages, costs, interest and attorneys' fees as permitted by applicable law.

## SECOND CAUSE OF ACTION

### (Declaratory and Injunctive Relief)

41.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

42.     Plaintiff and the members of the Class aver that they are entitled to: (1) declaratory relief holding that the language in the Agreements requires Defendants to pay Plaintiff and the Class members for each day within the "Charter Term," as compared to amounts paid by Defendants for only actual days the vessels were in physical use; (2) injunctive relief ordering that Defendants cease committing the wrongful acts complained of herein; and, (3) restitution to Plaintiff and the Class members who received less than the amount of pay to which they were properly entitled as a result of Defendants' incorrect interpretation of their own Agreements.

## DEMAND FOR JURY TRIAL

Plaintiff prays for a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Lester Ansardi, prays that Defendants, United States Maritime Services, Inc., United States Maritime Services, LLC, and United States Environmental Services, LLC, be served with a copy of this Class Action Petition and be cited to appear and answer same, and after all legal delays and due proceedings had, that there be judgment entered herein as follows:

1.     That this case be certified as a class action with Plaintiff serving as the class representative and Plaintiff's counsel being named as Class Counsel;

2.     That Plaintiff and members of the Class be awarded restitution and/or monetary damages as afforded by law, and where applicable;

4.     That Plaintiff and the members of the Class be awarded: (1) declaratory relief holding that the language in the Agreements requires Defendants to pay Plaintiff and the Class members for each day within the "Charter Term," as compared to amounts paid by Defendants for only actual days the vessels were in physical use; (2) injunctive relief ordering that Defendants cease committing the wrongful acts complained of herein; and, (3) restitution to Plaintiff and the Class members who received less than the amount of actual pay to which they were properly entitled as a result of Defendants' incorrect interpretation of their own Agreements;

5.     That Plaintiff and the Class be awarded the costs incurred in bringing this action, together with reasonable attorneys' fees and expenses, including expert fees and interest; and,

6.     For all other legal and equitable relief as the case may permit, and a trial by jury on all issues.

Respectfully submitted,

PENDLEY, BAUDIN & COFFIN, L.L.P.

Christopher L. Coffin, La. Bar Roll 27902
Patrick W. Pendley, La. Bar Roll 10421
Stan P. Baudin, La. Bar Roll 22937
Nicholas R. Rockforte, La. Bar Roll 31305
Elena P. Branzaru, La. Bar Roll 31061
24110 Eden Street



Post Office Drawer 71
Plaquemine, Louisiana 70765
Telephone: (225) 687-6396
Facsimile: (225) 687-6398
Email: ccoffin@pbclawfirm.com

Gary E. Mason
Donna F. Solen
Mason LLP
1625 Massachusetts Ave., NW, Ste 605
Washington, D.C. 20036
Telephone: (202) 429-2290
Email: gmason@masonlawdc.com
Email: dsolen@masonlawdc.com

Kevin I. Goldberg
Goldberg, Finnegan & Mester, LLC
1010 Wayne Ave. Suite 950
Silver Spring, MD 20910
Telephone: (301) 589-2999 x102
Facsimile: 301-589-2644
Email: kgoldberg@gfmlawllc.com

Dan A. Robin, Jr., La. Bar No. 24628
2203 Pakenham Drive
Chalmette, La 70043
Telephone: 504-279-5177
Facsimile: 504-279-5375
Email: dan@frjustice.com

*Attorneys for Plaintiff and the Putative Class*


**PLEASE SERVE:**

**UNITED STATES MARITIME SERVICES, INC.**
**Agent for Service of Process:**
**BARRY J. THIBODEAUX**
**365 CANAL STREET, SUITE 2500**
**NEW ORLEANS, LA 70130**

**UNITED STATES MARITIME SERVICES, LLC,**
**Agent for Service of Process:**
**BARRY J. THIBODEAUX**
**365 CANAL STREET, SUITE 2500**
**NEW ORLEANS, LA 70130**

**UNITED STATES ENVIRONMENTAL SERVICES, LLC**
**Agent for Service of Process:**
**BARRY J. THIBODEAUX**
**365 CANAL STREET, SUITE 2500**
**NEW ORLEANS, LA 70130**

## PENDLEY, BAUDIN & COFFIN, L.L.P

# PBC

— ATTORNEYS AT LAW —

Patrick W. Pendley
Stan P. Baudin
Christopher L. Coffin*†

Pamela Pendley Baudin
Nicholas R. Rockforte
*Also admitted in Georgia
†Registered nurse

Of Counsel:
Allen M. Edwards

October 27, 2011

**VIA U.S. MAIL**
Attn: Karin Legohn
Head Cashier
Orleans Parish Clerk of Court
421 Loyola Ave, Suite 402
New Orleans, LA 70112

      Re:    Ansardi, et al. v. United States Maritime Services, Inc., et al.
              Docket No. 2011-11436

Dear Ms. Legohn

    Enclosed herewith please find a check in the amount of $3,478.00 to cover the cost of filing our class action petition in the above referenced case. Thank you for your help with this matter.

    If you have any questions or concerns, please feel free to contact me at any time.

                        Very truly yours,

                        Christopher L. Coffin

Enclosure

Post Office Drawer 71 • 24110 Eden Street • Plaquemine, LA 70765-0071
Telephone: (225) 687-6396 • Telecopier: (225) 687-6398
www.pbclawfirm.com

ATTORNEY'S NAME: Coffin, Christopher 27902
AND ADDRESS: P O Drawer 71, 24110 Eden St
Plaquemine LA 70765-9154

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO: 2011 – 11436 1 DIVISION: N SECTION: 8

ANSARDI, LESTER ETAL versus UNITED STATES MARITIME SERVICES, INC. ETAL

RECEIVED 2011 NOV A 9 02

## CITATION

TO: UNITED STATES MARITIME SERVICES, INC.
THROUGH: AGENT FOR SERVICE OF PROCESS
BARRY J. THIBODEAUX
365 CANAL STREET, SUITE 2500
NEW ORLEANS LA

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the petition
CLASS ACTION

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default

**ADDITIONAL INFORMATION**

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561- 8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through the New Orleans Legal Assistance Corp. You may call them at 800-624-4771 or 504-525-4431.

*********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE*********

IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA November 4, 2011 .

Clerk's Office, Room 402, Civil Courts
421 Loyola Avenue
New Orleans, LA

DALE N. ATKINS, Clerk of
The Civil District Court
for the Parish of Orleans
State of LA

by _____
Deputy Clerk

---

**SHERIFF'S RETURN**
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this 9th day of November 2011 served a copy of the w/i petition CLASS ACTION | On this _____ day of _____ served a copy of the w/i petition CLASS ACTION |
| On UNITED STATES MARITIME SERVICES, INC. | On UNITED STATES MARITIME SERVICES, INC. |
| THROUGH: AGENT FOR SERVICE OF PROCESS | THROUGH: AGENT FOR SERVICE OF PROCESS |

KATE MELIS (LEGAL DEPT)
Returned same day
No. 300
Deputy Sheriff of _____
Mileage: $ _____
/ ENTERED /
PAPER
SERIAL NO. 01 9801 DEPUTY

by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM / HER the said _____ UNITED STATES MARITIME SERVICES, INC.

being absent from the domicile at time of said service.
Returned same day
No. _____
Deputy Sheriff of _____

VERIFIED
Merlin M. Jackson
Deputy Clerk

11/15/11



ATTORNEY'S NAME: Coffin, Christopher  27902
AND ADDRESS:     P O Drawer 71,  24110 Eden St
                 Plaquemine    LA 70765-9154

### CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA

NO:    2011 – 11436      2          DIVISION: N          SECTION: 8

ANSARDI, LESTER   ETAL versus UNITED STATES MARITIME SERVICES, INC. ETAL

### CITATION

**TO:** UNITED STATES ENVIRONMENTAL SERVICES, LLC
THROUGH: FOR SERVICE OF PROCESS
BARRY J THIBODEAUX
365 CANAL STREET, SUITE 2500
NEW ORLEANS                          LA

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the petition
CLASS ACTION
_____
a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk
of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the
service hereof under penalty of default

### ADDITIONAL INFORMATION

Legal assistance is advisable.  If you want a lawyer and can't find one, you may call the New Orleans
Lawyer Referral Service at 504-561- 8828.  This Referral Service operates in conjunction with the
New Orleans Bar Association.  If you qualify, you may be entitled to free legal assistance through the
New Orleans Legal Assistance Corp. You may call them at 800-624-4771 or 504-525-4431.

*********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE*********

IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for
the Parish of Orleans, State of LA   November 4, 2011    .

Clerk's Office,  Room 402, Civil Courts          DALE N. ATKINS,  Clerk of
421 Loyola Avenue                                The Civil District Court
New Orleans,  LA                                 for the Parish of Orleans
                                                 State of  LA
                                                 by _____
                                                            **Deputy Clerk**

_____
### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this  9th  day of  Novem ber 2011 | On this _____ day of _____ |
| 250  served a copy of the w/i petition | _____ served a copy of the w/i petition |
| CLASS ACTION | CLASS ACTION |

On                                          On
  UNITED STATES ENVIRONMENTAL SERVICES, LLC    UNITED STATES ENVIRONMENTAL SERVICES, LLC

THROUGH: FOR SERVICE OF PROCESS          THROUGH: FOR SERVICE OF PROCESS

Kate Mills (Legal Dept.)                 by leaving same at the dwelling house, or usual place of
                                         abode, in the hands of _____
Returned same day                        a person of suitable age and discretion residing therein as
_____  No. 30           a member of the domiciliary establishment, whose name
Deputy Sheriff of _____           and other facts connected with this service I learned by
                                         interrogating  HIM / HER the said _____
Mileage: $ _____          UNITED STATES ENVIRONMENTAL SERVICES, LLC

____ / ENTERED / ____                    being absent from the domicile at time of said service.
2  PAPER   9801      RETURN              Returned  same day
_____                                        No.
SERIAL NO.   DEPUTY   PARISH              Deputy Sheriff of _____



VERIFIED
Merlin M. Jackson
Deputy Clerk   11/16/11

ATTORNEY'S NAME: Coffin, Christopher 27902
AND ADDRESS:     P O Drawer 71, 24110 Eden St
                 Plaquemine LA 70765-9154

### CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA

NO:    2011 — 11436    3    DIVISION: N    SECTION: 8

ANSARDI, LESTER    ETAL versus UNITED STATES MARITIME SERVICES, INC.    ETAL

### CITATION

TO: UNITED STATES MARITIME SERVICES, LLC
THROUGH: AGENT FOR SERVICE OF PROCESS
BARRY J THIBODEAUX
365 CANAL STREET, SUITE 2500
NEW ORLEANS                                    LA

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the petition
CLASS ACTION

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk
of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the
service hereof under penalty of default

### ADDITIONAL INFORMATION

Legal assistance is advisable.  If you want a lawyer and can't find one, you may call the New Orleans
Lawyer Referral Service at 504-561- 8828.  This Referral Service operates in conjunction with the
New Orleans Bar Association.  If you qualify, you may be entitled to free legal assistance through the
New Orleans Legal Assistance Corp. You may call them at 800-624-4771 or 504-525-4431.

**\*\*\*\*\*\*\*\*\*COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE\*\*\*\*\*\*\*\*\***

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for
the Parish of Orleans, State of LA**    November 4, 2011    .

Clerk's Office, Room 402, Civil Courts
421 Loyola Avenue
New Orleans, LA

DALE N. ATKINS, Clerk of
The Civil District Court
for the Parish of Orleans
State of  LA
by
Deputy Clerk

---

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this ___ day of NOVEMBER 2011 | On this ___ day of ___ |
| ___ served a copy of the w/i petition | ___ served a copy of the w/i petition |
| CLASS ACTION | CLASS ACTION |
| On | On |
| UNITED STATES MARITIME SERVICES, LLC | UNITED STATES MARITIME SERVICES, LLC |
| THROUGH: AGENT FOR SERVICE OF PROCESS | THROUGH: AGENT FOR SERVICE OF PROCESS |

KATE Mills (Legal Dept)
Returned  same  day
No. 300
Deputy Sheriff of ___
Mileage: $ ___
___ / ENTERED / ___
3    PAPER    , 9801    RETURN
SERIAL NO.    DEPUTY    PARISH

by leaving same at the dwelling house, or usual place of
abode, in the hands of ___
a person of suitable age and discretion residing therein as
a member of the domiciliary establishment, whose name
and other facts connected with this service I learned by
interrogating  HIM  /  HER  the said ___
UNITED STATES MARITIME SERVICES, LLC

being absent from the domicile at time of said service.
Returned  same  day
No. ___
Deputy Sheriff of ___

### VERIFIED

Merlin M. Jackson
Deputy Clerk