UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf of Mexico, on April 20, 2010 | MDL NO. 2179 |
| | SECTION: J |
| This document relates to: Case No. 2:11-CV-03180 | Honorable Carl J. Barbier |
| | Magistrate Judge Shushan |

**COMPLAINT IN INTERVENTION**

**INTRODUCTION**

1.      Plaintiffs-in-intervention are attorneys ("Intervening Attorneys") who were terminated without compensation by their clients ("Defendants-in-Intervention") after a settlement was reached in the *Deepwater Horizon* oil spill lawsuit.

2.      Defendants-in-Intervention retained Intervening Attorneys to represent them in the *Deepwater Horizon* oil spill matter and signed written contingent fee agreements (CFA). On behalf of Defendants-in-Intervention, Intervening Attorneys prepared and filed Gulf Coast Claims Facility (GCCF) claims, commissioned expert reports, filed direct actions in the Multi-District Litigation (MDL) in Case Number 2:11-CV-03180, negotiated with the Plaintiffs' Steering Committee (PSC) and BP for settlement, and calculated and documented the claims of Defendants-in-Intervention under the settlement agreement, among other legal work. When only administrative tasks related to obtaining payment from the *Deepwater Horizon* Claims Center remained to be completed, Defendants-in-Intervention dismissed Intervening Attorneys without cause.

1

EXHIBIT

A

**THE PARTIES**

3.        Plaintiffs-in-Intervention: Stephen S. Kreller of The Kreller Law Firm, William L. Roberts and Craig S. Coleman of Faegre Baker Daniels, LLP (formerly Faegre & Benson, LLP), and Duncan Lott and Casey L. Lott of Langston & Lott, PA (referred to collectively as "Intervening Attorneys").

4.        Defendants-in-Intervention are all United States citizens of the full age of majority and include the following individuals and entities (referred to collectively as "Defendants-in-Intervention"):

       a.   Robert H. Stanley(DWH ClaimantID 100000469);

       b.   Ethel E. ("Betsy") Stanley (DWH ClaimantID 100000469);

       c.   S & S Oyster House (DWH ClaimantID 100000469);

       d.   S & S Seafood (DWH ClaimantID 100000469);

       e.   Diem H. Pham (DWH ClaimantID 100000740);

       f.   Sen Van Ngo (DWH ClaimantID 100001090);

       g.   Kevin J. Diaz (DWH ClaimantID 100000609);

       h.   Dat Chung (GCCF Claim No. 1023737);

       i.   Bau Le (DWH ClaimantID 100000324);

       j.   Tuan Dang (DWH ClaimantID 100025374).

**JURISDICTION AND VENUE**

5.        This claim is being filed pursuant to Rule 24(c) of the Federal Rules of Civil Procedure.

6.        This Court has jurisdiction of this matter pursuant to Article III of the Constitution of the United States and 28 U.S.C. § 1367(a). Because the Court has jurisdiction

over the underlying MDL, it has supplemental jurisdiction over these related attorney compensation claims.

7.     The underlying MDL is venued in the Eastern District of Louisiana. Thus, venue of this action in this District is also proper.

## FACTUAL BACKGROUND

### A.  Legal Services Provided

8.     Intervening Attorneys provided the legal services described in this section to all Defendants-in-Intervention.

9.     Intervening Attorneys actively and aggressively pursued Defendants-in-Intervention's GCCF claims through Mr. Ken Feinberg and also aggressively pursued their claims in the MDL.

10.     Intervening Attorneys dedicated a team of attorneys to work with Defendants-in-Intervention on these claims. The attorneys personally investigated, documented, and handled their claims and have corresponded with them on an ongoing basis. Intervening Attorneys had client interviews and meetings with Defendants-in-Intervention to fully investigate and document their GCCF claims and MDL seafood claims.

11.     Intervening Attorneys collected and analyzed all necessary business records related to Defendants-in-Intervention's claims.

12.     Intervening Attorneys hired experts, including National Resource Consultants, whose marine biologists testified in the Exxon Valdez litigation and have assessed biological and market damages caused by multiple oil spills. Intervening Attorneys also hired Corky Perret, a forty-year veteran of the Mississippi Department of Marine Resources and an expert on Gulf fisheries. The expert team prepared multiple reports presenting damage models designed to compensate commercial fishing businesses, like those of Defendants-in-Intervention, for the full

range of biological and market impacts caused by the oil spills. The damage models quantified ongoing and likely future damages through the use of risk multipliers. Intervening Attorneys paid for these experts and the reports.

13.     Intervening Attorneys met with Mr. Feinberg and GCCF multiple times in Washington, D.C. to negotiate with GCCF on behalf of Defendants-in-Intervention. This included a meeting in which Intervening Attorneys flew experts to Washington, D.C. to present their findings, including their expert reports and damage models, to Mr. Feinberg and GCCF. The efforts of Intervening Attorneys resulted in significant revisions to GCCF's methodologies for seafood related claims.

14.     Intervening Attorneys prepared fully documented and detailed claims to GCCF for Defendants-in-Intervention. Those claims included extensive analysis of biological damages and lost revenues caused by the oil spill, and were supported by expert reports including reports from one of the leading experts from the Exxon Valdez litigation. Intervening Attorneys paid for these experts and the reports.

15.     In conjunction with the hired experts, Intervening Attorneys developed damage methodologies including the use of damage multipliers and reimbursement for property damage. These methodologies and concepts have been incorporated into the Seafood Compensation Program and are integral to the compensation that Defendants-in-Intervention will receive under the Settlement Agreement's formulas.

16.     Intervening Attorneys represented Defendants-in-Intervention in the *In Re Deepwater Horizon* litigation on a direct action basis.

17.     The GCCF claims and supporting documentation Intervening Attorney submitted for Defendants-in-Intervention are now being used by the Seafood Compensation Program to calculate their compensation.

18.     Intervening Attorneys extensively participated in settlement negotiations with the PSC and BP regarding compensation for seafood related claims.

19.     Additionally, Intervening Attorneys extensively participated in mediations with Special Master John W. Perry, Jr. and Dan J. Balhoff regarding the formulas and compensation available under the Seafood Compensation program.

20.     Since filing of the settlement agreement, Intervening Attorneys have documented the claims of Defendants-in-Intervention to ensure collection of all information necessary to obtain compensation under the Seafood Compensation Program. Intervening Attorneys calculated their claims under the settlement.

21.     In addition to group meetings with clients, Intervening Attorneys consulted with Defendants-in-Intervention individually to review the settlement terms and explain how much money they will receive under the settlement.

22.     On May 2, 2012, the Court granted preliminary approval of the settlement, including the Seafood Compensation program. (Rec. Doc. No. 6418.) Between May 18, 2012 and August 14, 2012, Defendants-in-Intervention notified Intervening Attorneys of their desire to dismiss the attorneys without cause.

23.     Intervening Attorneys have done everything necessary to obtain settlements for Defendants-in-Intervention. At this point, the only thing left to be done on behalf of these former clients is to fill out online forms with the information Intervening Attorneys have collected, generated, and reviewed.

**B.  Representation Agreements with Defendants-in-Intervention**

24.      On February 15, 2011, Robert and Betsy Stanley d/b/a S & S Oyster House and/or S & S Seafood (hereinafter referred to collectively as S & S Oyster House) retained Intervening Attorneys to represent their claims with the GCCF at a cost included contingency fee of 18 percent. On December 15, 2011, S & S Oyster House retained Intervening Attorneys to represent it in the multi-district litigation at a cost included contingency fee of 25 percent. The fee arrangement with S & S Oyster House would remain at 25 percent even if it elected to opt-out of participation in the Seafood Compensation Program. On or about June 13, 2012, following the Preliminary Approval Order of the Economic and Property Damages Settlement (Rec. Doc. No. 6418) of this Honorable Court, Intervening Attorneys received notification from S & S Oyster House that it was terminating representation by the attorneys.

25.      On March 2, 2011, Diem H. Pham retained Intervening Attorneys to represent her claims with the GCCF at a cost included contingency fee of 18 percent. On December 12, 2011, Ms. Pham retained Intervening Attorneys to represent her in the multi-district litigation at a cost included contingency fee of 25 percent. The fee arrangement with Ms. Pham would remain at 25 percent even if she elected to opt-out of participation in the Seafood Compensation Program. On or about August 14, 2012, following the Preliminary Approval Order of the Economic and Property Damages Settlement (Rec. Doc. No. 6418) of this Honorable Court, Intervening Attorneys received notification from Ms. Pham that she was terminating representation by the attorneys.

26.      On April 18, 2011, Sen Van Ngo retained Intervening Attorneys to represent his claims with the GCCF at a cost included contingency fee of 18 percent. On December 8, 2011, Mr. Ngo retained Intervening Attorneys to represent him in the multi-district litigation at a cost

included contingency fee of 25 percent. The fee arrangement with Mr. Ngo would remain at 25 percent even if he elected to opt-out of participation in the Seafood Compensation Program. On or about June 22, 2012, following the Preliminary Approval Order of the Economic and Property Damages Settlement (Rec. Doc. No. 6418) of this Honorable Court, Intervening Attorneys received a letter dated June 8, 2012 from Mr. Ngo stating that he was terminating representation by the attorneys.

27.    On April 26, 2011, Kevin J. Diaz retained Intervening Attorneys to represent his claims with the GCCF at a cost included contingency fee of 18 percent. On December 15, 2011, Mr. Diaz retained Intervening Attorneys to represent him in the multi-district litigation at a cost included contingency fee of 25 percent. The fee arrangement with Mr. Diaz would remain at 25 percent even if he elected to opt-out of participation in the Seafood Compensation Program. On or about June 29, 2012, following the Preliminary Approval Order of the Economic and Property Damages Settlement (Rec. Doc. No. 6418) of this Honorable Court, Intervening Attorneys received notification from Mr. Ngo that he was terminating representation by the attorneys.

28.    On May 5, 2011, Dat Chung retained Intervening Attorneys to represent his claims with the GCCF at a cost included contingency fee of 18 percent. On December 8, 2011, Mr. Chung retained Intervening Attorneys to represent him in the multi-district litigation at a cost included contingency fee of 25 percent. The fee arrangement with Mr. Chung would remain at 25 percent even if he elected to opt-out of participation in the Seafood Compensation Program. On or about May 22, 2012, following the Preliminary Approval Order of the Economic and Property Damages Settlement (Rec. Doc. No. 6418) of this Honorable Court, Intervening Attorneys received notification from Mr. Chung that he was terminating representation by the attorneys.

29.     On June 6, 2011, Bau Le retained Intervening Attorneys to represent his claims with the GCCF at a cost included contingency fee of 18 percent. On December 16, 2011, Mr. Le retained Intervening Attorneys to represent him in the multi-district litigation at a cost included contingency fee of 25 percent. The fee arrangement with Mr. Le would remain at 25 percent even if he elected to opt-out of participation in the Seafood Compensation Program. On or about July 19, 2012, following the Preliminary Approval Order of the Economic and Property Damages Settlement (Rec. Doc. No. 6418) of this Honorable Court, Intervening Attorneys received notification from Mr. Le that he was terminating representation by the attorneys.

30.     On September 29, 2011, Tuan Dang retained Intervening Attorneys to represent his claims with the GCCF at a cost included contingency fee of 18 percent. On December 5, 2011, Mr. Dang retained Intervening Attorneys to represent him in the multi-district litigation at a cost included contingency fee of 25 percent. The fee arrangement with Mr. Dang would remain at 25 percent even if he elected to opt-out of participation in the Seafood Compensation Program. On or about May 18, 2012, following the Preliminary Approval Order of the Economic and Property Damages Settlement (Rec. Doc. No. 6418) of this Honorable Court, Intervening Attorneys received notification from Mr. Dang that he was terminating representation by the attorneys.

## COUNT I
## BREACH OF CONTRACT

31.     Intervening Attorneys incorporate all preceding paragraphs as if fully set forth herein.

32.     Defendants-in-Intervention and Intervening Attorneys entered into written CFAs. By the terms of those contracts, Defendants-in-Intervention were obligated to pay Intervening Attorneys a percentage of any amount recovered by Defendants-in-Intervention.

33.     At all relevant times, Intervening Attorneys complied with the terms of the CFAs and have fully and substantially performed their contractual obligations.

34.     Defendants-in-Intervention have failed to pay Intervening Attorneys the contracted for contingent fee for legal services rendered. Nor have Intervening Attorneys collected any fees directly from the *Deepwater Horizon* Claims Center.

35.     Defendants-in-Intervention have breached their contracts with Intervening Attorneys.

36.     As a result of Defendants-in-Intervention's breach of the CFAs, Intervening Attorneys have suffered damages.

## COUNT II
## QUANTUM MERUIT OR EQUITABLE RELIEF

37.     Intervening Attorneys incorporate all preceding paragraphs as if fully set forth herein.

38.     Defendants-in-Intervention and Intervening Attorneys had a written contract for legal services. There was an express understanding between Defendants-in-Intervention and Intervening Attorneys that payment of a fee was dependent upon and would come from any recovery for Defendants-in-Intervention.

39.     Intervening Attorneys performed copious amounts of valuable legal work on behalf of Defendants-in-Intervention, as explained in paragraphs 8-24 *supra*, resulting in a settlement.

40.    In an attempt to avoid paying Intervening Attorneys' fee, Defendants-in-Intervention terminated Intervening Attorneys after the settlement was reached and all work, other than minor administrative tasks, was complete. Any further work on Defendants-in-Intervention's claims must rely on the information collected and work already performed by Intervening Attorneys.

41.    Defendants-in-Intervention were provided timely notice by letter of Intervening Attorneys claims.

42.    Intervening Attorneys have suffered damages and are entitled to recover the full 25 percent  provided for in their contingency fee agreements, which is the reasonable value of the services rendered.

**WHEREFORE**, Intervening Attorneys, Stephen S. Kreller of The Kreller Law Firm, William L. Roberts, and Craig S. Coleman of Faegre Baker Daniels LLP (formerly Faegre & Benson LLP), and Duncan Lott and Casey L. Lott of Langston & Lott, PA, pray that a copy of this Complaint in Intervention be served upon Defendants-in-Intervention herein; that they be duly cited to appear and answer the same and that, after all legal delays and due proceedings had, there be judgment herein in favor of Intervening Attorneys, Stephen S. Kreller of The Kreller Law Firm, William L. Roberts, and Craig S. Coleman of Faegre Baker Daniels LLP (formerly Faegre & Benson LLP), and Duncan Lott and Casey L. Lott of Langston & Lott, PA, for all costs incurred by Intervening Attorneys in connection with the legal services rendered on behalf of the Defendants-in-Intervention, and for legal fees incurred by Intervening Attorneys in representing Defendants-in-Intervention, for the contingency fee as stated in the retainer agreement with Intervening Attorneys, which represents a reasonable value of Intervening Attorneys' services, together with legal interest thereon from date of judicial demand until paid, for all costs of these

proceedings and for any other fees as directed by the court, and for all general and equitable relief.

Dated: November 15, 2012

RESPECTFULLY SUBMITTED:

BY: /s/ *Stephen S. Kreller*_____

THE KRELLER LAW FIRM
Stephen S. Kreller (LA # 28440)
757 St. Charles Avenue, Suite 301
New Orleans, LA  70130
Telephone:  504-484-3488
Facsimile:  504-294-6091
Email:  ssk@krellerlaw.com

FAEGRE BAKER DANIELS, LLP

William L. Roberts (admitted pro hac vice)
Craig S. Coleman (admitted pro hac vice )
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402
Telephone:  612-766-7000
Facsimile:  612-766-1600

LANGSTON & LOTT, P.A.

Duncan Lott (admitted pro hac vice)
Casey L. Lott (admitted pro hac vice)
100 South Main Street
Booneville, MS  38829
Telephone:  662-728-9733
Facsimile:  662-728-1992

**ATTORNEYS FOR PLAINTIFFS IN INTERVENTION**