**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179 |
| | * | SECTION J |
| This document relates to all actions. | * * * * * | |
| | * | Honorable CARL J. BARBIER |
| | * | |
| | * | Magistrate Judge SHUSHAN |
| | * | |

| | | |
|---|---|---|
| Bon Secour Fisheries, Inc., et al., individually and on behalf of themselves and all others similarly situated, | * * * * | Civil Action No. 12-970 |
| | * | SECTION J |
| Plaintiffs, | * * * | |
| v. | * * | Honorable CARL J. BARBIER |
| | * * | Magistrate Judge SHUSHAN |
| BP Exploration & Production Inc.; BP America Production Company; BP p.l.c., | * * * * | |
| Defendants. | * | |

**[PROPOSED] ORDER AND JUDGMENT GRANTING FINAL SETTLEMENT**
**APPROVAL AND CONFIRMING CERTIFICATION OF**
**THE SETTLEMENT CLASS**

1.     Based on its Findings of Fact and Conclusions of Law In Support Of Final Approval Of *Deepwater Horizon* Economic And Property Damages Settlement Agreement As Amended On May 2, 2012 issued this day, and for all the reasons set forth therein, the Court hereby grants final approval in its entirety, as fair, reasonable, and adequate, to the Economic and Property Damages Settlement Agreement As Amended On May 2, 2012, including all

Exhibits thereto (collectively the "Settlement Agreement," Rec. Doc. 6430, which is adopted and incorporated fully by reference herein) pursuant to Federal Rule of Civil Procedure 23(e). The Settlement Agreement provides ample remedies to the Economic Class and avoids protracted litigation, among numerous other advantages.

2.      The Court confirms the certification of the Economic Class as defined in Appendix A, for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(a)(1)-(4) and (b)(3). The Economic Class excludes under Federal Rule of Civil Procedure 23(b)(3) and 23(c)(3)(B) the persons listed in Appendix B,[1] who (a) signed and filed timely and proper exclusion requests (opt-outs) under the terms of the Settlement Agreement and this Court's applicable Orders on or before the November 1, 2012 deadline and under the procedures established by the Court, and (b) have not timely and properly revoked such exclusions. Those persons or entities not named on the Opt-Out List, or who revoke their exclusion under the procedures established by the Court, and who otherwise fall within the class definition are members of the Economic Class.

3.      The Court confirms the appointment of Economic Class Counsel, Lead Class Counsel, and the Class Representatives.

4.      The Court confirms the appointment of the Claims Administrator and Claims Administration Vendors.

5.      The Court confirms that the Settlement Trust fulfills the requirements for a qualified settlement fund under § 468B(d)(2) of the Internal Revenue Code and Treasury Regulation § 1.468B-1. The Court reconfirms the appointment of Patrick Juneau as Trustee and J. P. Morgan Trust Company of Delaware as Directed Trustee with limited authority as set forth

---

[1] The information to be set out at Exhibit B will be provided to the Court on November 21, 2012.

in the Trust Agreement.

6.      The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 *et seq.*), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.

7.      The Court finds that the Settlement Agreement, with respect to Class Members who are minors, lack capacity, or are incompetent, is fair, reasonable, and adequate.

8.      The Court finds that both the general classwide release ("Economic Class Release") contained in Section 10 of the Settlement Agreement and the Individual Release contained in Exhibit 26 to the Settlement Agreement are valid and enforceable and were the product of intense and detailed negotiations between the parties in light of prior experience by the parties in *Deepwater Horizon*-related litigation in this Court and other courts.

9.      This Settlement Agreement shall be the exclusive remedy for any and all Released Claims by or on behalf of the Economic Class, Plaintiffs or any and all Economic Class Members against any and all Released Parties, and the Economic Class, Plaintiffs and Economic Class Members shall not recover, directly or indirectly, any sums from any Released Parties for any Released Claims other than those received for the Released Claims under the terms of the Settlement Agreement.  Released Claims do not include the Expressly Reserved Claims set out in Appendix C.  As noted in paragraph 17, *infra*, the Court retains continuing and exclusive jurisdiction to interpret, implement, administer and enforce the Settlement Agreement, in accordance with its terms, and to implement and complete the claims administration and distribution process, in accordance with the Settlement Agreement, for the benefit of the Class.

The Court does this for the purpose of satisfying the requirements of *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994), concerning the obligation of a Court entering a settlement agreement to speak clearly when it wishes to retain jurisdiction.

10.     Subject to paragraph 9, *supra*, in consideration of the benefits provided under this Agreement, all Released Claims by or on behalf of the Economic Class, Plaintiffs, or any and all Economic Class Members against any and all Released Parties are dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).  The proper terms of this dismissal include the retention of jurisdiction contained in paragraph 17, *infra*, and this is included for purposes of compliance with the Supreme Court's *Kokkonen* decision.  This Order does not release or dismiss the Expressly Reserved Claims set out in Appendix C.

11.     Subject to paragraph 9, *supra*, the Court orders the dismissal with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) of all "Related Claims" pending in the Court, and without further costs, including claims for interest, penalties, costs, and attorneys' fees.  "Related Claims" are given the same meaning for this purpose as in Section 38.119 of the Settlement Agreement:  "Related Claims shall mean all claims brought by Economic Class Members against any of the Released Parties that are covered by the Release and which are pending in the Court …."

12.     Subject to paragraph 9, *supra*, the Court orders all Economic Class Members with Related Claims pending in any federal or state court, forum, or tribunal other than this Court to dismiss with prejudice such Related Claims pursuant to Federal Rule of Civil Procedure 41(a)(2), and without further costs, including claims for interest, penalties, costs, and attorneys' fees.  *See supra* ¶ 11 (citing Settlement Agreement Section 38.119).

13.     Subject to paragraph 9, *supra*, the Court permanently bars and enjoins each

Economic Class Member from commencing, filing, initiating, asserting, instituting, maintaining, consenting to and/or prosecuting any judicial, arbitral, or regulatory action against the Released Parties with respect to the Released Claims.

14.     Subject to paragraph 9, *supra*, if the Economic Class, Plaintiffs, or any Economic Class Member commences, files, initiates, or institutes any new action or other proceeding for any Released Claims against the Released Parties in any federal or state court, arbitration tribunal, or administrative or other forum, such action or other proceeding shall be dismissed with prejudice and at the cost of (a) the Economic Class if the Economic Class brings such action or proceeding, or (b) the Plaintiffs and/or Economic Class Members who bring such action or proceeding, provided, however, that before any costs may be assessed, counsel for such Economic Class Member, or, if not represented, such Economic Class Member shall be given reasonable notice and an opportunity voluntarily to dismiss such new action or proceeding with prejudice.  Furthermore, if any Released Party brings any legal action before any Court or arbitration, regulatory agency, or other tribunal to enforce its rights under the Settlement Agreement, such Released Party shall be entitled to recover any and all related costs and expenses (including attorneys' fees) from (a) the Economic Class if the Economic Class brings such action, or (b) the Plaintiffs and/or Economic Class Members who bring such action in violation or breach of their obligations under Section 10 of the Settlement Agreement.

15.     The Court orders the Parties to the Settlement Agreement, including all Economic Class Members, to comply with the Assignment and Protections provisions of Section 11 and Exhibit 21 of the Settlement Agreement.

16.     Subject to paragraph 9, *supra*, the Court dismisses the Action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) without further costs, including claims for

interest, penalties, costs, and attorneys' fees, except that a future petition for common benefit fees may be filed by Class Counsel in accord with Exhibit 27 to the Settlement Agreement, which this Court will act upon when filed.  The "Action" is given the same meaning for this purpose as in Section 38.2 of the Settlement Agreement:  "Action shall mean the Complaint filed in *Bon Secour Fisheries, Inc. v. BP* on or about April 16, 2012, Civil Action No. 12-970, and any amendments thereto."

17.     The Court expressly incorporates the terms of the Settlement Agreement in this Order and further orders that the Court retains continuing and exclusive jurisdiction over the Parties, the Economic Class Members, the Court Supervised Settlement Program and the Settlement Agreement, to interpret, implement, administer and enforce the Settlement Agreement, in accordance with its terms.

18.     The Court also retains continuing jurisdiction over (1) the "qualified settlement fund," as defined in Section 468B(d)(2) of the Internal Revenue Code of 1986, as amended, and Treasury Regulation Section 1.468B–1, created under the Settlement Agreement; (2) the Settlement Trust; (3) the Trustee; and (4) the Directed Trustee.

19.     The Court has considered and framed this Order in light of Federal Rule of Civil Procedure 65(d).  The incorporation of the terms of the Settlement Agreement into this Order are for the purpose of approving and establishing the remedies available to Economic Class Members.  Those remedies are optional and not mandatory for Economic Class Members (and the Settlement Agreement also restrains no actions by Economic Class Members).  Hence, this Order fully complies with Federal Rule of Civil Procedure 65(d)(1)(C).

New Orleans, Louisiana, this ___ day of _____, 2012.

_____
UNITED STATES DISTRICT JUDGE

6

## APPENDIX A:  CLASS DEFINITION

(a)  Class Definition

Economic and Property Damages Settlement Class shall mean the NATURAL PERSONS and ENTITIES defined in this Section 1, subject to the EXCLUSIONS in Section 2 below.  If a person or entity is included within the geographical descriptions in Section 1.1 or Section 1.2, and their claims meet the descriptions of one or more of the Damage Categories described in Section 1.3, that person or entity is a member of the Economic and Property Damages Settlement Class, unless the person or entity is excluded under Section 2:

1.1.    Individuals.  Unless otherwise specified, all Natural Persons residing in the United States who, at any time between April 20, 2010 and April 16, 2012, lived in, worked in, were offered and accepted work in, owned or leased real or personal property located within, or owned or leased or worked on a vessel harbored or HOME PORTED in the States of Louisiana, Mississippi, or Alabama, the counties of Chambers, Galveston, Jefferson and Orange in the State of Texas, or the counties of Bay, Calhoun, Charlotte, Citrus, Collier, Dixie, Escambia, Franklin, Gadsden, Gulf, Hernando, Hillsborough, Holmes, Jackson, Jefferson, Lee, Leon, Levy, Liberty, Manatee, Monroe, Okaloosa, Pasco, Pinellas, Santa Rosa, Sarasota, Taylor, Wakulla, Walton and Washington in the State of Florida, including all adjacent Gulf waters, bays, estuaries, straits, and other tidal or brackish waters within the States of Louisiana, Mississippi, Alabama, or those described counties of Texas or Florida (the "GULF COAST AREAS") (Exhibit 22), or the U.S. waters of the Gulf of Mexico and all adjacent bays, estuaries, straits, and other tidal or brackish waters within the Gulf Coast Areas, as specifically shown and described in Exhibit 23 ("SPECIFIED GULF WATERS"), or worked on a vessel in Specified Gulf Waters after April 20, 2009.  With respect to SEAFOOD CREW  Claims, persons must have worked on a vessel that landed SEAFOOD in the Gulf Coast Areas after April 20, 2009.

and

1.2.    Entities.  All Entities doing business or operating in the Gulf Coast Areas or Specified Gulf Waters that:

1.2.1.  at any time from April 20, 2010 to April 16, 2012, owned, operated, or leased a physical facility in the Gulf Coast Areas or Specified Gulf Waters and (A) sold products in the Gulf Coast Areas or Specified Gulf Waters (1) directly to CONSUMERS or END USERS of those products or (2) to another Entity that sold those products directly to Consumers or End Users of those products, or (B) regularly purchased Seafood harvested from Specified Gulf Waters in order to produce goods for resale;

A-1

1.2.2.  are service businesses with one or more full-time employees (including owner-operators) who performed their full-time services while physically present in the Gulf Coast Areas or Specified Gulf Waters at any time from April 20, 2010 to April 16, 2012; or

1.2.3.  owned, operated, or leased a vessel that (1) was Home Ported in the Gulf Coast Areas at any time from April 20, 2010 to April 16, 2012, or (2) landed Seafood in the Gulf Coast Areas at any time from April 20, 2009 to April 16, 2012; or

1.2.4.  owned or leased REAL PROPERTY in the Gulf Coast Areas at any time from April 20, 2010 to April 16, 2012;

1.3.  Individuals and Entities who meet the geographical descriptions of Sections 1.1 or 1.2 above are included in the Economic Class only if their Claims meet the descriptions of one or more of the Damage Categories described below.

1.3.1.  The following are summaries of the Damage Categories, which are fully described in the attached Exhibits 1A-15:

1.3.1.1.  Seafood Compensation Program.  Damages suffered by a COMMERCIAL FISHERMAN, Seafood Crew, or SEAFOOD VESSEL OWNER that owned, operated, leased or worked on a vessel that (1) was Home Ported in the Gulf Coast Areas at any time from April 20, 2010 to April 16, 2012, or (2) Landed Seafood in the Gulf Coast Areas at any time from April 20, 2009 to April 16, 2012; and damages suffered by, inter alia, OYSTER LEASEHOLDERS and IFQ Owners. (Exhibit 10).  Claims for Economic Damage arising from the fishing, processing, selling, catching, or harvesting of menhaden (or "pogy") fish are excluded from the Seafood Compensation Program and other Economic Damage Claims under this Agreement.

1.3.1.2.  Economic Damage Category.  Loss of income, earnings or profits suffered by Natural Persons or Entities as a result of the DEEPWATER HORIZON INCIDENT, subject to certain Exclusions. (Exhibits 16-19)

1.3.1.3.  Subsistence Damage Category.  Damages suffered by Natural Persons who fish or hunt to harvest, catch, barter, consume or trade Gulf of Mexico natural resources, including Seafood and GAME, in a traditional or customary manner, to sustain their basic or family dietary, economic security, shelter, tool or clothing needs, and who relied upon Subsistence resources that were diminished or restricted in the geographic region used by the CLAIMANT due to or resulting from the Deepwater Horizon Incident. (Exhibit 9)

A-2

1.3.1.4.   VoO Charter Payment Category.   Damages suffered by Natural Persons or Entities who registered to participate in BP's Vessels of Opportunity ("VoO") program and executed a VoO MASTER VESSEL CHARTER AGREEMENT with BP, Lawson, USMS, USES, DRC, or any other BP subcontractor as CHARTERER, and completed the initial VoO training program.

1.3.1.5.   Vessel Physical Damage Category.   Physical damage that was sustained by an eligible Claimant's eligible vessel due to or resulting from the Deepwater Horizon Incident or the Deepwater Horizon Incident response cleanup operations, including the Vessels of Opportunity Program.   (Exhibit 14)

1.3.1.6.   Coastal Real Property Damage Category.   Damages alleged by a Coastal Real Property Claimant that meet the requirements set forth in the Coastal Real Property Claim Framework.

1.3.1.7.   Wetlands Real Property Damage Category.   Damages alleged by a Wetlands Real Property Damage Claimant that meet the requirements set forth in the Wetlands Real Property Claim Framework.

1.3.1.8.   Real Property Sales Damage Category.   Damages alleged by a Real Property Sales Claimant that meet the requirements set forth in the Real Property Sales Framework.

1.3.1.9.   Individuals/Employees in Otherwise Excluded Oil and Gas, Gaming, Banking, Insurance, Funds, Defense Contractors, Developers Industries, and any Entity selling or marketing BP-branded fuel (including jobbers and branded dealers):   As more fully described in Exhibit 16 and Section 5.10 below, individuals and employees of businesses and employers in these otherwise excluded industries described in Section 2 may submit Claims for Economic Damage outside of these excluded industries, and may pursue all other recovery permitted under other aspects of the Settlement.

1.3.1.10.   Individuals/Employees in Support Services to Oil and Gas Industry:   As more fully described in Exhibit 16 and Section 5.10 below, individuals and employees of businesses/employers in the SUPPORT SERVICES TO OIL AND GAS INDUSTRY, described in Exhibit 16 may submit Claims for Economic Damage incurred as a result of their employment in the Support Services to Oil and Gas Industry for (i) non-moratoria business interruption from Support Services to Oil and Gas Industry activities and (ii) non oil and gas industry Economic Damages due to or resulting from the Deepwater Horizon Incident, except for moratoria claims.   As is also more fully described in Exhibit 16, these individuals and employees may also

pursue Claims for other Economic Damage outside the Support Service to Oil and Gas Industry, and may pursue all other recovery permitted under other aspects of the Settlement.

1.3.1.11.   Businesses/Employers in Otherwise Excluded Gaming, Banking, Insurance, Funds, Defense Contractors and Developers Industries:  As more fully described in Exhibit 16 and Section 5.10 below, businesses and employers in these otherwise excluded industries described in Section 2 may submit Claims only for Coastal Real Property Damage and Wetlands Real Property Damage, but are not entitled to recover under any other aspect of the Settlement.

1.3.1.12.   Businesses/Employers in Support Services to Oil and Gas Industry:  As more fully described in Exhibit 16 and Section 5.10 below, businesses and employers in the "Support Services to Oil and Gas Industry," described in Exhibit 16, may submit Claims for (i) non-moratoria business interruption from Support Services to Oil and Gas Industry activities and (ii) non-oil and gas industry Economic Damages arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident, except for moratoria claims, and may pursue all other recovery permitted under other aspects of the Settlement.

(b)   Exclusions from the Economic and Property Damages Settlement Class Definition

2.1.   Notwithstanding the above, the following individuals and Entities, including any and all of their past and present predecessors, successors, personal representatives, agents, trustees, insurers, reinsurers, indemnitors, subrogees, assigns, and any other Natural Person, legal or juridical person or Entity entitled to assert any Claim on behalf of or in respect of any such individual or Entity in their respective capacities as such are excluded from the Economic Class.

2.2.   Excluded Individuals or Entities:

2.2.1.   Any Economic Class Member who or which timely elects to be excluded from the Economic Class under the deadlines and procedures to be set forth in the ECONOMIC AND PROPERTY DAMAGES SETTLEMENT CLASS ACTION SETTLEMENT NOTICE.

2.2.2.   Defendants in MDL 2179, and individuals who are current employees, or who were employees during the CLASS PERIOD, of BP or other defendants in MDL 2179.

2.2.3.   The Court, including any sitting judges on the United States District Court for the Eastern District of Louisiana, their law clerks serving during the pendency of the MDL, and members of any such judge's or current law clerk's immediate family.

2.2.4.   The following exclusions are based on the substantive nature of the business, not the legal or juridical form of that business.  Any of the following types of Entity, or any Natural Person to the extent he or she alleges Economic Damage based on their employment by such an Entity, during the Class Period are excluded:

2.2.4.1.   Financial Institutions as identified in the NAICS codes listed on Exhibit 18, which include, by way of example, commercial banks; savings institutions; credit card issuers; credit insurers; factors or other sales finance entities; financial or investment advisers or portfolio managers; fund managers; investment banking entities; lending institutions; real estate mortgage or lending entities; brokers or dealers of securities, commodities, commodity contracts or loans; securities or commodities exchanges; entities serving as custodians, fiduciaries or trustees of securities or other financial assets; or entities engaged in other financial transaction intermediation, processing, reserve or clearinghouse activities, provided, that the following shall not be excluded solely pursuant to this Section 2.2.4.1 unless they are subject to a different exclusion:  stand-alone ATMs, credit unions, pawn shops, businesses engaged predominantly in making payday loans or paycheck advances and businesses that sell goods and services and offer financing on these purchases to their customers.

2.2.4.2.   Funds, Financial Trusts, and Other Financial Vehicles, as identified in the NAICS codes listed on Exhibit 18, after giving effect to the bracketed exceptions contained in NAICS Codes 525920 and 523991, which include by way of example, public-open end investment funds; investment funds; real estate investment trusts; REMICS; mutual funds; money market funds; derivatives; health and welfare funds; insurance funds; pension funds; financial trusts; and special purpose financial vehicles provided, that successions, estates, testamentary trusts, trusts of Natural Persons, bankruptcy estates, limited liability companies, corporations, Sub-Chapter "S" corporations, partnerships, limited partnerships, joint ventures, and any other businesses or juridical Entities, shall not be excluded pursuant to this Section 2.2.4.2 solely by reason of their form of legal or juridical structure or organization, except to the extent they are excluded pursuant to another exclusion in Section 2.2 of this Agreement.

2.2.4.3.   Gaming, as identified in the NAICS codes listed on Exhibit 18, which includes, by way of example,  casinos; casino hotels; off-track betting parlors; racetracks and other gambling establishments provided, that the following shall not be excluded solely pursuant to this Section 2.2.4.3 unless they are subject to a

different exclusion: (a) bingo parlors, and (b) video gaming at bars, bingo parlors, hotels, off-track betting parlors, racetracks, restaurants and truck stops.

2.2.4.4. Insurance Entities, as identified in the NAICS codes listed on Exhibit 18, which include, by way of example, insurance carriers issuing disability, health, life, medical, property and casualty, title or other insurance; reinsurers; insurance agencies and brokerages; underwriting agencies or organizations; claims adjusters and processors; third-party insurance or fund administrators; or other insurance-related businesses.

2.2.4.5. Oil and Gas Industry, as identified in the NAICS codes listed on Exhibit 17, which includes by way of example, firms engaged in: extracting crude petroleum, natural gas or other hydrocarbons; drilling wells; preparing, maintaining or constructing petroleum or natural gas well-sites or other mineral extraction sites; mining; maintaining or constructing petroleum or natural gas pipeline or distribution facilities; pipeline distribution of crude petroleum, refined petroleum, oil or natural gas; petroleum or natural gas refining or other mineral refining and/or manufacturing; manufacturing petroleum lubricating oil and grease, petrochemical products, or other petroleum and coal products or chemical products derived from extracted minerals; merchant wholesaling of construction and mining (except oil well) machinery and equipment; wholesale distribution of oil well machinery, equipment and supplies; wholesale distribution of petroleum, petroleum products, other extracted minerals, chemical products produced from extracted or refined minerals, petroleum bulk stations and terminals, petroleum and petroleum products merchant wholesalers.

2.2.4.6. Defense Contractors/Subcontractors, including firms which derive in excess of at least 50% of their annual revenue from contracts with the United States Department of Defense and Individuals whose employer qualifies as a Defense Contractor.

2.2.4.7. Real Estate Developers, including any Natural Person or Entity that develops commercial, residential or industrial properties. This includes, but is not limited to, any Entity developing an entire subdivision (as defined by the law of the state in which the parcel is located) of Real Property, including condominiums with multiple residential units and/or a residential subdivision with contiguous home sites and homes, provided, however, that Real Estate Developers shall be eligible to assert Coastal Real Property Claims under Section 5.7 and Real Property Sales Damage Claims under Section 5.9

A-6

2.2.4.8.   Any Entity selling or marketing BP-branded fuel, including jobbers and branded dealers.

2.2.5.   GOVERNMENTAL ORGANIZATIONS, as defined in this Agreement, provided that Native American tribal Entities may consent to participate in the Settlement as to otherwise eligible Claims.

2.2.6.   Any Natural Person or Entity who or that made a claim to the GCCF, was paid and executed a GCCF RELEASE AND COVENANT NOT TO SUE, provided, however, that the execution of a GCCF Release and Covenant Not to Sue shall not prevent a Natural Person or Entity from making a VoO Charter Payment Claim or a Vessel Damage Claim, nor shall a release covering only bodily injury prevent a Natural Person from making Claims

## APPENDIX B:  LIST OF OPT OUTS

[INFORMATION FOR THIS APPENDIX WILL BE FILED UNDER SEAL
ON NOVEMBER 21, 2012.]

## APPENDIX C:  EXPRESSLY RESERVED CLAIMS

The following Claims are not recognized or released under the Agreement, and are reserved to the Economic Class Members:

3.1.   **BODILY INJURY CLAIMS**, which are excluded from the Economic Class, but certain of which may be asserted in the Medical Benefits Class Action Settlement referenced herein.

3.2.   Claims of BP shareholders in any derivative or direct action solely in their capacity as a BP shareholder.

3.3.   Claims of Natural Persons and Entities for **MORATORIA LOSSES.**

3.4.   Claims relating to menhaden (or "pogy") fishing, processing, selling, catching, or harvesting.

3.5.   Claims for Economic Damage suffered by Entities or employees (to the extent they allege Economic Damage based on their employment by such Entity during the Class Period) in the Banking, Gaming, Financial, Insurance, Oil and Gas, Real Estate Development, Defense Contractor Industries, and Entities selling or marketing BP-branded fuel (including jobbers and branded dealers) as defined in Section 2.2.

3.6.   Claims of the Economic Class, Plaintiffs, and Economic Class Members for punitive damages against **HALLIBURTON** and **TRANSOCEAN** are reserved.

3.7.   The Economic Class, Plaintiffs and Economic Class Members, but only through the Economic Class, specifically reserve its and their rights to assert the Assigned Claims against Transocean and Halliburton subject to Exhibit 21.

In addition, Oyster Leaseholder Interest claims and Oyster Leaseholder Lost Income claims arising out of any Louisiana, Florida, Mississippi or Texas oyster lease without a State-issued lease ID number are not recognized or released under the Agreement, and are reserved to the Economic Class Members.[2]

---

[2] *See* Deepwater Horizon Claims Center, Economic & Property Damage Claims, Frequently Asked Questions ¶ 180, https://cert.gardencitygroup.com/dwh/fs/faq?.dilloginType=faqs.