### iii.     Absent Class Members[33]

482.    As detailed below, the reaction of the absent class members to the Settlement Agreement has been overwhelmingly positive.

### (A)    The Number Of Objections Is Low.

483.    Under the Preliminary Approval Order, Class Members who wished to object to the Settlement Agreement were required to submit a written statement of the objection(s) and to include in this statement "written proof that the individual or entity is in fact an Economic Loss and Property Damage Class Member, such as proof of residency, ownership of property and the location thereof, and/or business operation and the location thereof" by August 31, 2012.  Rec. Doc. 6418 ¶ 38.

484.    Under the Preliminary Approval Order, failure to comply with its objection provisions waived and forfeited any and all of a putative objector's rights to object to the Proposed Settlement, forever foreclosing the objector from making any objection to the Proposed Settlement, and binding the objector by all the terms of the Proposed Settlement and by all proceedings, orders and judgments in this matter.  *Id.*[34]

485.    On August 31, 2012, the Court issued an Order extending the deadline for submitting written objections to the Proposed Settlement to September 7, 2012, due to the unforeseen circumstance of Hurricane Isaac.  *See* Rec. Doc. 7225.

---

[33] Pursuant to this Court's Order of November 9, 2012, *see* Rec. Doc. 7878, the parties have now made a joint filing, Rec. Doc. 8001, containing a breakdown of the final objection and opt-out numbers, which were still being tabulated as of November 19, 2012.  On November 26, 2012, the parties filed these replacement pages (141-147) updating the November 19, 2012, filing accordingly.

[34] The following objections were filed out of time.  Obj. Doc. 239; Obj. Doc. 240; Obj. Doc. 241; Obj. Doc. 242; Obj. Doc. 247; Obj. Doc. 250; Obj. Doc. 252; Obj. Doc. 253; Obj. Doc. 254; Obj. Doc. 255; Obj. Doc. 257; Obj. Doc. 258; Obj. Doc. 259; Obj. Doc. 261 (supplement to Obj. Doc. 117); Obj. Doc. 262; Obj. Doc. 264 (denied by Rec. Doc. 7897); Obj. Doc. 265 (supplement to Obj. Doc. 145).  The Court addresses these objections elsewhere only in the interest of completeness.

486. As of November 15, 2012, the total number of purported objections filed was 223 (not counting duplicate or supplemental filings by the same objectors). These objections were ostensibly filed on behalf of an alleged 13,786 objectors. *See* Rec. Doc. 8001.

487. The vast majority of the purported objectors — 13,382 out of 13,786, or 97% of the purported objectors — were included in "mass" objections filed by four sets of attorneys. Specifically, Brent Coon & Associates claimed to propound objections on behalf of 11,245 purported objectors. *See* Obj. Doc. 122. Farrell & Patel claimed to propound objections on behalf of 949 purported objectors. *See* Obj. Doc. 198; Rec. Doc. 7217. Smith Stagg LLC and its co-counsel claimed to propound objections on behalf of 644 purported objectors. *See* Obj. Doc. 167; Obj. Doc. 189. Arnold & Itkin claimed to propound objections on behalf of 544 purported objectors. *See* Obj. Doc. 209.

488. These same law firms also represent clients who have made claims under the Settlement Program. Indeed, some of their "objecting" clients have not only made claims, but received payments and signed releases of their claims against BP from either the Settlement Program or the GCCF. As of November 15, 2102: Brent Coon & Associates appears to represent 5,534 objectors who are also Settlement Program registrants, 56 of whom have signed releases and been paid a total of $9,095,810 by the Settlement Program, and 875 GCCF claimants who have signed releases and been paid of total of $18,941,463 by the GCCF. Farrell & Patel represents 481 Settlement Program registrants and 22 GCCF claimants who received $455,523 and signed releases of their claims against BP. Smith Stagg LLC and its co-counsel represent 281 objectors who are also Settlement Program registrants, 8 of whom have signed releases and been paid a total of $551,306 by the Settlement Program, and 51 GCCF claimants who have signed releases and been paid a total of $2,078,695 by the GCCF. Arnold & Itkin

142

represents 104 settlement registrants and 85 GCCF claimants who have signed releases and been paid a total of $1,687,861 by the GCCF. *See* Rec. Doc. 8001.

489.    The simultaneous representation of objectors and claimants in the Settlement Program is not limited to the firms that filed "mass" objections. As of November 15, 2012, law firms that have filed objections represent some 6,458 registrants in the Settlement Program. *See* Rec. Doc. 8001; *see also infra* ¶ 516.

490.    Of the 13,786 purported objectors, 2,016 clearly lack standing to object, either because their submission demonstrated they are not members of the class (77 purported objectors); because of their status as a non-settling defendant, governmental entity, or association (17 purported objectors); or, because they have opted-out of the Settlement (1,928 purported objectors). *See* Rec. Doc. 8001; *see also infra* ¶¶ 591-605.

491.    Additionally, 12,970 — over 94% — of the total number of purported objectors failed to comply with the requirements of the Preliminary Approval Order in that they failed to provide written proof of class membership and, therefore, forfeited and waived their objections. *See* Rec. Doc. 8001.

492.    Of the total number of purported objectors, only 599 objectors made objections that were timely, were not made on behalf of persons or entities without standing to object, were not mooted by an opt out, and provided some evidence of membership in the Settlement Class, and had not previously signed releases in favor of BP. *See* Rec. Doc. 8001.

493.    The total number of valid objectors is 599. That number is: (i) no more than 0.55% of the total number of Short Form Joinders; (ii) just 0.1% of the number of persons who filed claims with the GCCF, which covered fewer claims and claimants; (iii) just 0.05% of the 1.1 million potential class members who received direct mail notice of the Settlement; and (iv) a

small a fraction of the class size, which includes the Gulf Coast businesses and residents specified in the Class Definition. However measured, the number of objectors is a fraction of the percentages routinely recognized in the case law as evidence that a settlement should be approved. *See infra* ¶ 512.

### (B) The Number Of Opt-Outs Is Low.

494. The number of opt-outs to the Settlement Agreement was extremely low. Although the Settlement Agreement gave BP "the absolute and unconditional right, before the date of the Final Approval Hearing, solely at their option, to terminate this Agreement in the event the number of potential Economic Class Members who have filed valid and timely requests for exclusion (Opt Out) exceeds a number agreed to by the Parties and to be filed with the Court in a sealed envelope," Settlement Agreement ¶ 21.3.6, the number of opt-outs did not approach the number agreed upon or even anticipated by the parties. *See* Nov. 8 Fairness Hr'g Tr. at 62:16 (Mr. Godfrey: "We didn't reach the numbers.").[35]

495. Under the Preliminary Approval Order, Class Members who wished to opt out of the Settlement Class were required to send a written exclusion request as specified in the Class Notice to the Settlement Program Exclusions Department by October 1, 2012. *See* Rec. Doc. 6418 at 40.

496. On August 27, 2012, the Court issued an Order extending the deadline for submitting written exclusion requests to November 1, 2012. *See* Rec. Doc. 7176.

---

[35] Moreover, Halliburton's argument that there was an impropriety in the parties' filing of the opt-out threshold under seal, *see* Rec. Doc. 91 at 16, fails on the merits. *See, e.g.*, *In re Red Hat, Inc. Sec. Litig.*, No. 04-473, 2010 WL 2710517, at *5-6 (E.D.N.C. June 11, 2010); *In re Remeron End-Payor Antitrust Litig.*, No. 02-2007, 2005 WL 2230314, at *18 (D.N.J. Sept. 13, 2005); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 253 (D. Del. 2002). And even putting aside Halliburton's lack of standing, because the termination right was not exercised in light of the very low numbers of actual opt outs, the issue is now moot.

497. On November 21, 2012, in accordance with Paragraph 41 of the Preliminary Approval Order, *see* Rec. Doc. 6418 at 40, and the Court's Order of November 9, 2012, Rec. Doc. 7878, the parties submitted a list of all timely and valid requests for exclusion from the Settlement Class. *See* Rec. Doc. 8001.

498. The Preliminary Approval Order also provided that Class Members could revoke their decision to opt out of the Settlement Class by November 5, 2012. On November 16, 2012, the Court issued an Order extending the deadline for revocations to December 15, 2012, provided that any Class Member submitting an opt-out revocation after November 5, 2012 withdraws any pending objection, and waives any and all current or future objections, to approval of the Settlement. *See* Rec. Doc. 7928.

499. As of November 15, 2012, a total of 13,123 timely and procedurally valid opt out requests have been submitted by potential Class Members. *See* Rec. Doc. 8001.

500. The Exclusions Department of the Settlement Program has received a total of 25,866 opt-out submissions. *See* Rec. Doc. 8001.

501. Two-thousand one-hundred and seventeen of these submissions were from individuals or entities who had already submitted correspondence to the Exclusions Department. These duplicative submissions were either repetitive or intended to clarify intent or correct deficiencies in an original request. Accounting for duplicate submissions, the Exclusions Department received correspondence from a total of 23,749 unique individuals and/or entities.

502. Nearly half of the purported opt out submissions received failed to comply with the requirements of the Preliminary Approval Order and the Class Notice, and thus are not valid opt out requests.

503. Of the total 23,749 individuals and entities who submitted correspondence, 126 sent submissions that did not contain a request to be excluded from the Settlement Class, and thus their submissions are not valid opt out requests. *See* Rec. Doc. 8001.

504. In order to help ensure that Class Members would not be excluded from the Settlement Class without their express, written consent, the Court required opt out requests to be signed by the Class Member wishing to be excluded from the Settlement Class. Opt out requests signed by an attorney are not valid. These requirements are routine and routinely enforced. *See infra* ¶ 618.

505. A substantial number of the opt out requests, 9,460, are invalid because they were not signed by the individual or entity purportedly wishing to be excluded from the Settlement Class. The vast majority of these invalid opt out requests, 9,296, were signed by counsel purporting to act on behalf of the purported Class Members. *See* Rec. Doc. 8001.

506. In particular, Brent Coon & Associates submitted 7,925 requests containing the computer-generated signature of Brent Coon without any signature of the person or entity Mr. Coon sought to exclude from the Settlement Class. In total, some four law firms submitted 9,179 invalid requests containing only an attorney signature

507. In addition, of the total number of purported opt out requests received, 83 were submitted after the November 1, 2012 deadline, and are thus invalid. *See* Rec. Doc. 8001.

508. At least 1,552 of the purported opt out requests were made by individuals or entities that are not members of the Settlement Class because they had previously released their claims against BP. *See* Rec. Doc. 8001.

509. In many cases, it is not possible to determine based on the information submitted by potential Class Members in connection with their opt out requests whether the individual or

146

entity is, in fact, a member of the Settlement Class, either because of a prior release or for some other reason.  Thus an unknown portion of the total number of timely and valid requests to opt out of the Settlement Class were likely submitted by individual or entities that are not members of the Settlement Class and such requests are thus of no practical or legal effect.

510.    There are also indications that a significant percentage of the remaining purported opt out requests that comply with the procedural requirements in the Preliminary Approval Order and Class Notice were from individuals or entities that provided an address that is not within any of the class zones, thus raising the question of whether they are from class members.  *See* Rec. Doc. 8001.

511.    Many of those who opted out have decided to re-enter the class, in order to receive the benefits of the Settlement.  As of November 15 2012, 321 revocations of opt out requests have been received.  *See* Rec. Doc. 8001.  Some of these revocations were directed at revoking opt out requests that were not valid.  In response to the wishes of those wishing to revoke their opt-outs, the Court has extended the deadline for revocations to December 15, 2012.  *See* Rec. Doc. 7928.

### (C)    The Low Numbers Of Objections And Opt-Outs Are Evidence Of The Settlement's Fairness.

512.    The low objections and opt-out rates are evidence of the Settlement's fairness.  Courts, including the Fifth Circuit, have approved settlements with far higher objection rates.