GOODWIN | PROCTER

Dahlia S. Fetouh
617.570.1263
dfetouh@
goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

July 30, 2012

**VIA E-MAIL**

The Honorable Sally Shushan
United States Magistrate Judge
500 Poydras Street
Room B-34
New Orleans, LA 70130

Re: *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010* **(Docket No. MDL 2179); Subpoena Served on Woods Hole Oceanographic Institution**

Dear Judge Shushan:

Pursuant to the Court's order of May 8, 2012, and in conjunction with the Court's April 20, 2012 order, BP is responsible for Woods Hole Oceanographic Institution's ("WHOI") reasonable costs for complying with BP's subpoena. Order, at 2 (May 8, 2012) ("BP is responsible for WHOI's reasonable costs for complying with the subpoena."). In connection with that order, WHOI sent a letter to BP on July 2, 2012, providing detailed information on WHOI's costs incurred in complying with BP's subpoena and requesting payment from BP. In response, BP has disputed WHOI's reasonable costs, and BP and WHOI have been unable to resolve this dispute through the meet-and-confer process. WHOI therefore requests your assistance in resolving this disagreement. We look forward to addressing this issue during the conference call that the Court has scheduled for this Thursday, August 2, 2012.

In anticipation of this conversation, WHOI respectfully submits its request for payment of fees and costs incurred in responding to the subpoena. This accounting reflects WHOI's fees and costs incurred through June 1, 2012.

GOODWIN | PROCTER

| | |
|---|---|
| Attorneys' Fees | 214,410.60[1] |
| Costs | 12,268.42[2] |
| Woods Hole Oceanographic Institution Costs | 141,979.55 |
| Total | $368,658.57 |

These charges reflect the actual time and expense incurred by WHOI to comply with BP's detailed subpoena, which sought information related to complex scientific studies (*e.g.*, turbulent jet flow measurements with entrained water at a depth of nearly one mile below the surface). It was no light task to determine what documents, programs, and files WHOI needed to produce. Identification of the relevant and responsive computer programs, data sources, and methodologies of computational analysis required a careful exploration of the issues by WHOI's scientists, staff, and outside counsel. Properly preparing that information to ensure compliance with the subpoena was also complex and involved. As the three letters from BP asking questions regarding the productions and the multiple related court conferences demonstrate, this production involved much more than simply pulling a set of terms and turning over the flagged documents. *See* BP to WHOI (Apr. 13, 2012); BP to WHOI (Apr. 23, 2012); BP to WHOI (May 2, 2012); *see also* WHOI to BP (Apr. 20, 2012).

To provide further context, WHOI—in addition to the attached itemized detail—provides this categorical overview of the time spent complying with BP's subpoena:

- January 3, 2012 to February 1, 2012 (attachment, pp. 1–2): Planning the original production. This includes the costs associated with conferring with WHOI scientists to determine the scope of the subpoena and developing a plan for obtaining the necessary documents for production.

- February 1, 2012 to March 2, 2012 (attachment, pp. 2–4): Gathering and reviewing documents for the first production.

- March 2, 2012 to May 2, 2012 (attachment, pp. 4–10): Gathering and reviewing documents for the second production; conferring with the Court and opposing counsel as to the meaning of the documents produced and appropriate computer

---

[1] This figure reflects the professional discount that Goodwin Procter LLP ("Goodwin") gives to WHOI off of Goodwin's standard billing rates, and, naturally, is passed through to BP.

[2] This figure includes a $7,236.80 bill from the third-party vendor Goodwin used to collect documents from WHOI's system and process them for production. WHOI received this bill on July 26, 2012, and, as a such, it was not included in the request for payment originally submitted to BP on July 2, 2012.

GOODWIN | PROCTER

programs for accessing and utilizing the data, and explaining sources of data and documents; preparing for the third production.

- May 2, 2012 to June 1, 2012 (attachment, pp. 10–19): Complying with the Court's April 20, 2012 order, which resulted in the third and largest production that included relevant documents from WHOI covering the period from April 21, 2010 to March 11, 2011. This endeavor required working with technology specialists and hiring a number of contract attorneys to help review the population of potentially responsive documents. Again, this review was complicated by the fact that the complex scientific issues implicated in the review were not readily understood by the lay reader.

- WHOI's internal costs (attachment, p. 25) reflect the extensive time spent by WHOI employees preparing documents, answering questions, and searching records. This time was lost from grant writing, research, and other academic duties to the detriment of the scientists' professional and academic work.

All of the enclosed costs are reasonable and were necessarily incurred by the non-party WHOI in responding to BP's subpoena. As outside counsel, Goodwin endeavored to minimize fees and costs in this review wherever possible. For example, when WHOI was ordered to collect, review, and produce documents in response to the Court's April 20, 2012 order, Goodwin engaged contract attorneys to conduct the first-line review at substantially lower billing rates than Goodwin attorneys.

Moreover, to be clear, *no* fees or costs related to contesting the subpoena are included herein. WHOI incurred tens of thousands of dollars in fees and costs to enforce its objections to the subpoena. WHOI has absorbed those fees and costs and has not sought to pass them along to BP. Instead, WHOI has carefully reviewed its bills to ensure that it is seeking payment for only those costs incurred in connection with responding to the subpoena.

Finally, these costs—including the time spent by WHOI employees in responding to this subpoena—are of the type which courts have deemed reimbursable and reasonable when making fee awards. *See, e.g., Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 339 (N.D. Cal. 1995) (finding client's time spent producing documents compensable); *In re First Am. Corp.*, 184 F.R.D. 234, 241 (S.D.N.Y. 1998) ("A nonparty's legal fees, especially where the work benefits the requesting party, have been considered a cost of compliance reimbursable under Rule 45(c)(2)(B)."); *see also Wells Fargo Equip. Fin., Inc. v. Mid-South Servs., Inc.*, No. 10-2970-KDE-SS, 2012 WL 669288, at *2 (E.D. La. Feb. 6, 2012) (noting that the Fifth Circuit, in the context of a statutory fee award, has stated that "[a]ll reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone, are plainly recoverable . . . because they are part of the costs normally charged to a fee-paying client" (alterations in original) (quoting *Assoc. Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990)) (internal quotation marks omitted)).

GOODWIN | PROCTER

As such, pursuant to the Court's order dated May 8, 2012, and in conjunction with the order dated April 20, 2012, BP should be responsible for the total amount requested and WHOI requests the Court's assistance ensuring prompt payment is made.

We look forward to speaking with the Court about this matter.

Sincerely,

*Dahlia Fetouh/Dmm*

Dahlia S. Fetouh

DF

cc:   Robert Gasaway, Esq.
      Karen McCartan DeSantis, Esq.

Attachment (1)