# Fishman Haygood Phelps
# Walmsley Willis & Swanson, L.L.P.

201 St. Charles Avenue
46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252
Fax (504) 586-5250

*Loretta G. Mince*
*Partner*
(504) 586-5273 Direct
lmince@fishmanhaygood.com

November 19, 2012

File No. 2271-03

**VIA EMAIL:** Sally_Shushan@laed.uscourts.gov

The Honorable Sally Shushan
United State Magistrate Judge
United States Courthouse, Room B-345
Eastern District of Louisiana 70130
500 Poydras Street
New Orleans, La. 70130

Re:   In Re: Oil Spill by the Oil Rig "Deepwater Horizon"
      in the Gulf of Mexico on April 20, 2012
      USDC, Eastern District of Louisiana, MDL No. 2179 "J"

Dear Judge Shushan:

I write to supplement my letter of Thursday, November 15, 2012 in light of Mr. O'Rourke's response to that letter.

Wild Well Control, Inc. was previously deposed on July 12 and July 13, 2011 pursuant to Federal Rule 30(b)(6). In addition to producing a representative for a two-day deposition, Wild Well produced 53,487 documents, including e-mails to and from 36 Wild Well employees. Wild Well incurred (out-of-pocket) roughly $500,000 dollars on the prior document review and production, and the deposition. Although Mr. O'Rourke notes that the prior production did not include Pat Campbell's e-mails, Mr. Campbell was employed by Superior Energy (Wild Well's parent company), and as a result, his emails are not in Wild Well's custody or control. When the Department of Justice asked, in July 2012, that Mr. Campbell's emails be produced, Wild Well contacted Superior Energy and Superior Energy agreed to produce them.

Rule 30(a)(2) expressly provides that leave of court is required in order to take the deposition of a witness that has already been deposed in a matter. The purpose of this requirement is to ensure that witnesses are subjected to multiple depositions only in cases where exceptional circumstances warrant a second deposition.

512950v.2

Pre-Trial Order #27 also appears to specifically contemplate that witnesses will not be deposed twice. In particular, § IA of Pre-Trial Order #27 states:

> If a person possesses information related only to damages or to issues not relevant to the limitation trial, the person shall not be deposed during the fact deposition period. If a person possesses information relevant to the limitation trial issues as well as damages, the person may be deposed during the fact deposition period. In order to avoid requiring persons to be deposed twice the time allotted for the examination of witnesses is increased as provided herein.

Notwithstanding the foregoing, in January 2012, I was contacted by counsel for Anadarko about a second 30(b)(6) deposition of Wild Well. I responded that Wild Well objected to appearing for a second 30(b)(6) deposition.

Subsequently, I was contacted by Mr. Williamson of the PSC who, at the Court's request, was asked to discuss a possible resolution of Wild Well's objection. After several discussions, I reached an agreement with Mr. Williamson under which Wild Well would produce a witness for one day of additional testimony in exchange for an agreement that no further documents or testimony would be sought from Wild Well or its employees. The Court was previously informed of that agreement.

Now, in clear violation of the agreement, the Department of Justice asks the Court to order Wild Well to appear for a second deposition lasting two-days. Mr. O'Rourke concedes that Wild Well completed its entire production of 53,511 documents prior to the July 2011 30(b)(6) deposition of Wild Well. Mr. O'Rourke contends, however, that although Wild Well timely made its full production in advance of the deposition, the United States (and perhaps others) did not receive it from the PSC.

Respectfully, it is the duty of the litigants to ensure that they have the documents they need in advance of deposing a witness. And here, although the document production occurred in June and July **2011**, no one complained about Wild Well's production until July **2012**, a year after it was made.

In addition, it bears mention that the first deposition of Wild Well included extensive questioning regarding both Phase I and Phase II issues. For example, the terms "Top Kill," "Bottom Kill," and "Static Kill" appear in the transcript of Wild Well's first deposition 50 times (actually, 68 times if you include the witness's term for "static kill," namely "bullhead kill"). The term "capping stack" appears 55 times; "flow rate" appears 18 times; BOP appears 207 times; "cofferdam" (also "coffer dam") and "containment dome" appear 14 and 4 times, respectively.

For these reasons, Wild Well will not consent to a second deposition except under the terms of the agreement previously reached.

Respectfully,

*Lori Mince*
Lori Mince

LGM/ccm
cc:   Steven O'Rourke

3

512950v.2