## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010**<br><br>**This Document Relates to:**<br>*All Cases*<br><br>(This Document also applies to No. 10-2771) | **MDL No. 2179**<br><br>**SECTION: J**<br><br>**JUDGE BARBIER**<br><br>**MAGISTRATE SHUSHAN** |

### PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR ADVERSE INFERENCES FROM FIFTH AMENDMENT INVOCATIONS

Plaintiffs, by and through Co-Liaison Counsel and the Plaintiffs Steering Committee and pursuant to this Court's Order regarding Briefing for Adverse Inference Motions (Doc. 7107), respectfully submit this Reply to BP's Opposition to Motions for Adverse Inferences Based on Assertions of the Fifth Amendment (Doc. 7879); Transocean's Opposition to All Motions for Adverse Inferences Against Transocean (Doc. 7844); and HESI's Response to Motions Seeking Adverse Inferences Against HESI Based On Assertions of the Fifth Amendment (Doc. 7848).

### Background

On January 9, 2012, Defendants BP, Transocean, and HESI moved in limine to preclude or limit adverse inferences against them arising from the invocations of the Fifth Amendment by various witnesses during their depositions. (Docs. 5112, 5144, 5111.)  BP argued that this Court could not draw inferences against it from the invocation of the Fifth Amendment by Non-BP employees, but acknowledged that there are situations in which negative inferences may be drawn against it where its employees have invoked the

Fifth Amendment.  Transocean added that the Court could not draw adverse inferences against it as a result of its employees' invocation of the Fifth Amendment because those employees allegedly have an adverse relationship with Transocean.   HESI also asserted that the Court could not draw adverse inferences against it for invocations by non-HESI employees.   The PSC and the United States opposed the motions.  (Docs. 5259, 5237.)

By Order entered on February 14, 2012 (Doc. 5682), this Court denied Defendants' motions and held that it would evaluate each invocation on a case-by-case basis by considering the four factors set out in *Libutti v. United States*, 107 F.3d 110 (2d Cir. 1997), namely: (1) the nature of the relevant relationships between witness and party; (2) the degree of control of the party over the non-party witness; (3) the compatibility of the interests of the party and non-party witness in the outcome of the litigation; and (4) the role of the non-party witness in the litigation.

On February 24, 2012, the PSC moved for adverse inferences based on the Fifth Amendment invocations of thirteen witnesses.  (Doc. 5873.)   They are as follows:

| Exhibit No. | Name | Employer | Position | Inferences Against |
|---|---|---|---|---|
| 1 | Hafle, Mark | BP | Sr. Drilling Engineer | BP |
| 2 | Morel, Brian | BP | Drilling Engineer | BP HESI |
| 3 | Kaluza, Robert | BP | Well Site Leader | BP |
| 4 | Kutcha, Curt | Transocean | Master of Deepwater Horizon | Transocean |

| 5 | Harrell, Jimmy | Transocean | Offshore Installation Manager | Transocean BP |
| 6 | Bertone, Steve | Transocean | Chief Engineer/Maintenance Supervisor | Transocean BP |
| 7 | Haire, Christopher | HESI | Service Supervisor | HESI Transocean BP |
| 8 | Willis, Cathleenia | Sperry Sun | Mud Logger | HESI BP |
| 9 | Fleytas, Andrea | Transocean | Dynamic Positioning Officer | Transocean |
| 10 | Ingram, James | Transocean | Senior Materials Coordinator | BP |
| 11 | Holloway, Caleb | Transocean | Floor Hand | Transocean |
| 12 | Sandell, Micah | Transocean | Crane Operator | BP |
| 13 | Seraile, Alan | Transocean | Assistant Driller | Transocean |

In its motion, the PSC applied the *Libutti* factors to the Fifth Amendment invocations by each of the foregoing witnesses. Defendants BP, Transocean, and HESI have filed memoranda in opposition to the PSC's motion. The Court should reject Defendants' arguments in opposition to the PSC's motion for the reasons that follow.

## LEGAL STANDARD

The Fifth Amendment "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976). Evidence that a non-party has invoked the Fifth Amendment is not barred by the Constitution. *FDIC v. Fidelity & Deposit Co. of Maryland,* 45 F.3d 969, 977 (5th Cir. 1995). "Such evidence is admissible if it is relevant and not otherwise prohibited by the

rules of evidence. " *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.,* No. 04-0997, 2006 U.S. Dist. LEXIS 8723 (E.D. La. Mar. 6, 2006) (citing *FDIC, supra*).

Further, as this Court recognized in its February 14, 2012 Order (Doc. 5682), the Court may draw adverse inferences against parties based on the invocation of the privilege by non-parties. *FDIC,* 45 F.3d at 977 (civil jury can draw a negative inference against party from non-party's invocation of Fifth Amendment); *RAD Services, Inc. v. Aetna Casualty & Surety Co.,* 808 F.2d 271, 275 (3d Cir. 1986) ("policies underlying the privilege . . . allow evidence of a non-party's refusal to testify"); *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 521 (8th Cir. 1984) ("The policies supporting the Fifth Amendment apply with even less force when a non-party witness testifies in a civil proceeding and thus, the Amendment should not work to preclude an adverse inference in this situation."). "A non-party's silence in a civil proceeding implicates Fifth Amendment concerns to an even lesser degree." *RAD Services, Inc.*, 808 F.2d at 275 (citing *Rosebud Sioux Tribe*, 733 F.2d at 521).[1]

"In general, the decision as to whether to admit a person's invocation of the Fifth Amendment into evidence is committed to the discretion of the district court." *Hinojosa v. Butler,* 547 F.3d 285, 291-292 (5th Cir. 2008) (quoting *FDIC,* 45 F.3d at 977); *Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 210 (5th Cir.1983)).

---

[1] In *RAD Services*, a company sued its insurer to recover costs incurred in disposing of hazardous waste materials. The insurer disavowed coverage, asserting that the company violated the law by intentionally dumping the hazardous materials. *Id.* at 272. At trial, the insurer read to the jury deposition transcripts of a company official and a managing employee, in which the deponents invoked their Fifth Amendment rights; it was not clear, however, whether the invoking witnesses were still employed by the company. *Id.* at 273-274. The court instructed the jury that it could infer that the witnesses would have answered the insurer's questions adversely to the company. The Eighth Circuit affirmed, noting that even if the witnesses were no longer employed by the company, the court could draw negative inferences from their invocations. *Id.* at 276-277.

4

## ARGUMENT

**I.   The Court Is Not Required To Examine The Validity Of The Witnesses'
Invocations Before Applying the *Libutti* Factors; Even If It Were Required To
Do So, The Invocations At Issue Are Valid Under The Fifth Amendment.**

### A.   The Court Need Not, At This Stage, Engage In An Inquiry As To The Validity Of The Invocations.

Although not raised in its motion in limine, BP now argues that before the Court
engages in its case-by-case analysis using the *Libutti* factors, it must "undertake a
threshold two-step inquiry," which includes consideration of whether there were valid
bases for the witness' invocation and whether the requested inferences comply with the
Federal Rules of Evidence.  (Doc. 7879, p. 6.)[2]   BP cites *U.S. ex rel. DRC, Inc. v. Custer
Battles, LLC*, 415 F. Supp. 2d 628 (E.D. Va. 2006) in support of its argument.   To be
precise, the *Custer Battles* court did not hold that the Court must determine the validity of
an invocation before the *Libutti* factors may be considered.   Instead, the *Custer Battles*
court stated that this two-step inquiry should be undertaken to determine whether an
adverse inference instruction is appropriate in a particular case.   Moreover, the Court in
*Custer Battles* stated that the validity of an invocation is normally addressed separately in
a motion to compel the witness's testimony.

The Fifth Circuit cases that BP cites do not further its argument. *United States v.
Redhead*, 194 Fed. App'x 234, 236 (5th Cir. 2006) and *Steinbrecher v. C.I.R.*, 712 F.2d
195, 197 (5th Cir. 1983) address only the validity of invocations and not the drawing of

---

[2] Transocean also challenges various inferences on the ground that they are not
adverse to the witnesses invoking them.  It cites no authority for its argument.  (Doc.
7844, pp. 8-9.)

adverse inferences. Thus, contrary to BP's argument, these cases do not create a "backdrop" for the consideration of whether adverse inferences should be imposed where they are not likely to inculpate the witness.

"There is no explicit requirement that the court rule on the validity of a witness' unchallenged invocation of the privilege merely because a party to the litigation asks the Court to draw an adverse inference from it." *Mishkin v. Ensminger (In re Adler, Coleman Clearing Corp.)*, 1998 Bankr. LEXIS 1925, *20-22 (Bankr. S.D.N.Y. Apr. 17, 1998) (denying a motion exclude a witness's Fifth Amendment invocation because the movants never challenged the invocations and never sought to compel the witness's testimony). Having never challenged the Fifth Amendment invocations, Defendants should not be heard now, for the first time, to argue that the invocations were not self-incriminating.

### B.    The Invocations Are Valid.

Even if the Court were required to inquire as to the validity of every invocation before applying the *Libutti* factors, the standard for validity is a low one. "A valid assertion of the privilege requires only the existence of a plausible possibility that the person might be prosecuted…" *Custer Battles,* 415 F. Supp. 2d at 633 (citing *United States v. Sharp*, 920 F.2d 1167, 1170 (4th Cir. 1990) (holding that the 5th Amendment privilege against self-incrimination may be applied in a civil trial "not only to evidence which may directly support a criminal conviction, but to 'information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution.'")); *see Hoffman v. United States*, 341 U.S. 479, 486 (1951) (witness may

refuse to answer questions that might "furnish a link in the chain of evidence" that could lead to prosecution); *Allstate Ins. Co. v. Plambeck*, No. 12-175, 2012 U.S. Dist. LEXIS 63649, *15 (E.D. La. May 4, 2012) (Knowles, J.) (noting that "the criminal charges do not have to actually be pending, but a party may invoke the privilege if she has reasonable grounds to believe that her response 'would support a conviction or furnish a link in the chain of [circumstantial] evidence needed to prosecute the claimant for a crime'") (quoting *Zicarelli v. N. J. State Comm'n of Investigation*, 406 U.S. 472, 478 (1972)).

The invocations that BP claims are invalid rise well above this low threshold.  For instance, BP argues that the invocation by James Ingram, a Transocean employee, was invalid in response to the question "You'd agree with me, wouldn't you….that BP made numerous cost-saving decisions that increased the chance of a well blowout without running any formal risk assessment, isn't that true?"  (Doc. 5873-10, pp. 3-4.)  It is certainly plausible that Ingram, in his position as a senior materials coordinator for Transocean, faced the possibility of criminal prosecution if he was aware of cost-saving measures taken by BP that increased the possibility of a blowout, yet he did nothing about it.  The same is true of the inference against BP based on HESI's Cathleenia Willis' invocation in response to the question "Isn't it true that BP decided how many mud loggers Sperry would have on the Deepwater Horizon at one time?"  (Doc. 5873-8, p. 7.)  It is plausible that a response could have incriminated Willis if she were aware of this and failed to request additional mud loggers before the blowout occurred.

The same is true with respect to Transocean's objections to the inferences that Transocean claims were "not adverse" to the invoking witnesses.  Transocean cites all of

the inferences the PSC seeks from invocations by Christopher Haire (HESI's Service Supervisor), Andrea Fleytas (Transcoean's Dynamic Positioning Officer), Caleb Holloway (Transcoean's Floor Hand), and Allen Seraile (Transocean's Assistant Driller), as being "not adverse."   A review of the inferences in question reveals the weaknesses in Transocean's position.  As for Haire, the inference that "although Haire considered the first two negative tests unsuccessful, BP and Transocean reported the tests as successful" (Doc. 5873-7), is certainly adverse to Haire in that it demonstrates his awareness of the failure of the cement job and his failure to do anything to correct it.  Likewise, the inference that "Transocean knew that the negative pressure tests were unsuccessful" (Doc. 5873-7) is adverse to Haire because it demonstrates that he was aware that Transocean knew of the failure of the negative tests, and that Transocean did not act to correct the problem.  This incriminates Haire because it raises the question of why Haire did not act when he was aware of the grossly negligent decisions being made during the period of time leading up to the blowout.

As for the inferences to be drawn from Fleytas' invocations (Doc. 5873-9), evidence as to the lack of training of members of Transocean's bridge crew and their lack of familiarity with safety shut-offs is adverse to her in that it shows her failure to seek out information and training concerning the shut-offs that could have prevented the explosion.  Likewise, the inferences sought from the invocations by Holloway and Seraile concerning the failures of the drill crew are adverse to these witnesses because they evidence the failure on the part of these witnesses to act in light of their knowledge of the drill crew's grossly negligent conduct.  (Doc. 5873-11; 5873-13.)  Their responses would furnish a link in the chain of evidence needed to prosecute them for a crime.

Finally, the recent indictment of Robert Kaluza, BP's Well Site Leader, is proof positive of the validity of these witnesses' concerns.   Kaluza is among the witnesses who invoked the Fifth Amendment during their depositions, and he has now been charged with seaman's manslaughter and felony gross negligence. All of the Fifth Amendment witnesses faced the same peril in their positions.   Indeed, the threat of prosecution is arguably worse in the cases of Hafle, Morel, Harrell, Kuchta, Haire and Fleytas.   The invocations by these witnesses were therefore valid, and the inferences to be drawn from them are adverse to their interests.

Accordingly, even if the Court is required to determine whether the inferences sought are adverse or based on incriminating invocations before applying the *Libutti* factors, BP and Transocean fail to demonstrate that there is no plausible possibility that responses to the questions posed would lead to prosecution for a crime.

## II.  The Inferences Sought Comply With The Rules Of Evidence.

The PSC agrees that the inferences it seeks must, like any other evidence, comply with the Federal Rules of Evidence, as Defendants all assert.   BP has failed to demonstrate, however, that any of the requested inferences circumvent the rules.    It raises the example of HESI's Christopher Haire, who was asked as follows:

> And I'll ask you, sir, looking at that which purports to be a model of the cement slurry that was pumped around the Macondo 252 #1 production casing, can you tell us, sir, if those densities of fluids indicate to you a very strong likelihood of the displacement leading to the inversion of fluids, i.e., the lighter fluids exchanging place with the heavier fluids and that anyone knowing the densities of the fluids, their intended placement in the job would know that this cement job would fail?

(Doc. 5873-7, p. 8 (Haire Dep., p. 55:24-25 through 55:1-14.))  BP argues that this question lacks foundation because it asks a HESI employee to speculate as to BP's

"awareness." On the contrary, the question does not ask about BP's awareness; instead, it merely asks whether a person knowing the densities of the fluids would know that the job would fail. This invocation is listed in the PSC's motion along with other invocations by Haire concerning the information provided to BP as to the failure of the negative pressure testing, BP's expectation that the cement job would fail, and its anticipation that it would be necessary to perform a squeeze job. (5873-7, pp. 8-9 (Haire Dep., pp. 99:18-25; 100:01-25; 101:01-07; 102:11-16; 162:25; 163:01-09; 164:01-25; 165:03-05).) Haire's invocations in response to these questions properly support an adverse inference that BP knew that the cement job might fail.

Likewise, the question to BP employee Brian Morel concerning the email in which Morel's wife refers to Macondo as a "nightmare well" and the follow-up question in which he is asked whether he believed that Macondo was a nightmare is not objectionable as hearsay. (Doc. 5873-2, pp. 3-4.) The document itself is admissible as an admission, and the questions concerning it (and Morel's invocations in response) are likewise admissible.

III.   **Defendants Distort The Corroboration Requirement; Even If Admissibility Were Dependent Upon Corroboration, The PSC's Motion Contains Sufficient Corroboration.**

    A.   **An Adverse Judgment Cannot Be Based Solely On Uncorroborated Adverse Inferences.**

Defendants contend that there can be no adverse inference on any point for which corroborating evidence does not exist. The authorities they cite, however, do not support this sweeping assertion. Transocean stretches the language in *Baxter* that adverse inferences are permitted based on invocations "in responses to probative evidence offered against" it to mean that the Court must examine every inference to determine if there is

corroborative evidence to support it.  The *Baxter* decision, however, did not address the issue of corroboration.[3]  BP's argument is similarly flawed, as the cases it cites do not endorse such a requirement.  Instead, they support the proposition that an adverse *judgment* cannot be based solely on an uncorroborated adverse inference.  *Curtis v. M&S Petroleum, Inc.,* 174 F.3d 661, 675 (5th Cir. 1999) (stating that "the adverse inference from a party's refusal to answer questions [is] not enough to create and issue of fact to avoid summary judgment); *FDIC,* 45 F.3d at 978 (jury instructed that it "was not to find liability absent evidence corroborating" the adverse inference.").  BP's reliance on *Kontos v. Kontos*, 968 F. Supp. 400, 408-409 (S.D. Ind. 1997) on this issue is also misplaced.  There, the court stated that, "we do not think that the resulting adverse inference would be a sufficient basis upon which a reasonable jury could conclude that Defendant was involved in her husband's murder," and "although inferences based on the assertion of the privilege are permissible, *the entry of judgment* based *only* on the invocation of the privilege and 'without regard to other evidence' exceeds constitutional bounds.'" *Id.* at 408-409 (emphasis added; citations omitted).  Again, the court was concerned only with whether the invocation of the privilege, by itself, could form the basis of a judgment.

HESI relies on *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 119 (5th Cir. 1990) to support is assertion that corroboration is required; however, in that case the

---

[3] Although Transocean presents a general argument on the need for corroboration, it does not cite any authority beyond *Baxter* or identify any particular inference that lacks corroborative evidence to support it.  Instead, it states, erroneously, that Plaintiffs have disregarded the requirement of corroborative evidence altogether. (Doc. 7844, p. 3.)  Although not required for purposes of admissibility under Fifth Circuit law, the PSC's motion contains multiple references to corroborative exhibits, as addressed below.

Court held only that an adverse inference flowing from a witness's refusal to answer questions propounded to her in her deposition was insufficient to create an issue of material fact *precluding summary judgment*.   And the Court in *United States v. Stelmokas*, 100 F.3d 302, 311 (3d Cir.1996), also cited by HESI, held that there was a plethora of independent evidence to support the inferences that the district court drew, so it did not find the requested inferences inadmissible.

The PSC agrees that the Court should consider the adverse inferences together with all other evidence and that judgment cannot be entered against Defendants based solely on uncorroborated adverse inferences.  It disagrees, however, that every inference must be corroborated by other evidence to be admissible under Fifth Circuit law.

**B.     Even If The Court Were Required To Determine Corroboration On An Inference-by-Inference Basis, the PSC's Motion Provides Sufficient Corroboration For The Inferences Sought.**

Even if corroboration is required for admissibility, the PSC has included citations to many exhibits that corroborate the inferences it asks the Court to draw.  *See* Doc. 5873 (Morel (TREX-04507; TREX-04058; TREX-01396; TREX-00978); Kaluza (TREX-003568; TREX-00569); Willis (TREX-03203; TREX-03204)).  If required, the PSC will provide additional corroboration for the remaining inferences.

HESI complaints that the documents that BP, PSC and the United States cite "do not constitute corroborating testimony sufficient to support adverse inferences against HESI." (Doc. 7848, p. 5.)  As for the PSC, HESI cites TREX-003652, which is an email from Haire to Vincent Tabler dated June 10, 2010 concerning the negative pressure tests. The PSC cites TREX-003652 in support of the inferences that arise from Haire's invocations.  In the email, Haire states "I have read some report that stated that the two

negative tests we did were considered successful?   I stated that I found them to be unsuccessful and I was checking to see if maybe you know why Transocean and BP were calling them successful?"  (TREX-003652.)  Contrary to HESI's assertion, it is not an "inferential leap" from this document to the inference that Haire (1) knew the "cement job might fail"; (2) knew that the "first two negative pressure tests were unsuccessful" because he was "responsible for monitoring the two negative tests performed"; and (3) "knew the dangers of the well continuing to flow while conducting the negative pressure test, but did not inform others that the well was flowing or that the well had to be shut in."  (Doc. 5873-7, pp. 1-5.)  The exhibit, along with testimony from other witnesses, corroborates these inferences.

HESI's argument that the HESI/Sperry Drilling Services marketing brochure (TREX-3200) does not support the inference that it was Cathleenia Willis' role on the Deepwater Horizon to provide a "first line of defense" (Doc. 5873-8, p. 2) should also be rejected.[4]   The exhibit states that, "providing the *first line of defense*, SDL specialists monitor the drilling conditions to identify and communicate any hazardous or unusual conditions and ensure the surface equipment is operating correctly."  (Doc. 5873-8, p. 2) (emphasis added).  Accordingly, the exhibit specifically supports the requested adverse inference that Willis' role was to provide a "first line of defense."   That there may be other evidence that contradicts this inference does not render it inadmissible.  Instead, the Court will consider all the evidence and determine the preponderant weight to which it is entitled.

---

[4] Notably, in its motion *in limine*, HESI did not contest the drawing of adverse inferences against it from any of Willis' invocations.  (Doc. 5144.)

HESI also asserts that TREX-01396 does not support the inference that HESI did not allow enough time to test the final slurry.  TREX-01396 is an email from Morel to Hafle in which Morel complains that HESI's Jesse Gagliano was not "cutting it anymore" and that Gagliano had waited until the last minute to have lab testing performed on the slurry, which did not allow enough time for Morel to "tweak the slurry."  (TREX-01396.) Contrary to HESI's argument, this exhibit specifically supports the inference requested; indeed, the requested inference is in essence a quotation of Morel's own words.

## IV. The Inferences Sought Are Trustworthy And Will Advance The Search For The Truth.

In its February 14, 2012 Order (Doc. 5682), the Court refused to impose a bright-line rule that the invocation of the Fifth Amendment privilege by non-employees – or employees with interests adverse to their employers – cannot give rise to an adverse inference.  Addressing this issue in its Order, the Court stated as follows:

> In *FDIC*, the Fifth Circuit found no need for a special relationship between the witness and the party against whom the adverse inference was sought. It quoted the following from *RAD Services Inc. v. Aetna Casualty & Surety Co.*, 808 F. 2d 271, 275 (3rd Cir. 1986):
>
> First, a witness truly bent on incriminating [a party] would likely offer damaging testimony directly, instead of hoping for an adverse inference from a Fifth Amendment invocation. Second, the trial judge could test the propriety of an invocation to ensure against irrelevant claims of privilege. Third, counsel may argue to the jury concerning the weight which it should afford the invocation and any inferences therefrom.
>
> 45 F.3d at 978. *This responds to the thrust of the movers' arguments concerning non-employees*.

(Doc. 5682, p. 4) (emphasis added).  The Court has thus signaled that the nature of the employment relationship (or lack thereof) between the invoking witness and the party against whom the inference is directed is not sufficient, by itself, to form the basis of an

objection to the drawing of an adverse inference.  A witness's invocation will not be deemed untrustworthy based solely on that relationship.  Instead, the Court will address each invocation on a case-by-case basis under *Libutti* and the Federal Rules of Evidence.

Given the Court's refusal to reject summarily all inferences against the parties based on the testimony of witnesses not in their employ, Defendants cannot base any objection to the PSC's inferences on the lack of an employment relationship.   Despite this, BP still contends that, because it has no "control" over witnesses that it does not employ, the Court should not draw inferences against it based on their invocations. HESI also complains that it had no "control" over BP employee Brian Morel and that his invocations should not, therefore, be used to support any inference against HESI in light of the post-blowout claims between HESI and BP.  (Doc. 7848, p. 11.)  This argument was specifically rejected in *N.H. Ins. Co. v. Blue Water Off Shore LLC*, No. 07-0754-WMS-M, 2009, 2009 U.S. Dist. LEXIS 24223  (S.D. Ala., March 23, 2009).

In *Blue Water*, the court admitted adverse inferences drawn against the defendant by its former employee who had subjected both the defendant and the employee to liability by allegedly operating the defendant's vessel while intoxicated.  The court found that the defendant "mistakenly interpret[ed] the second factor [in *Libutti*, that being the degree of control of the party over the non-party witness,"] as directed to the party's post-event ability to control the witness's conduct and testimony."  *Blue Water, supra* at *8. "On the contrary, this factor addresses the degree of control the party has vested in the non-party witness in regard to the key facts and general subject matter of the litigation' and approximates the analysis for admission of a party opponent under Federal Rule of Evidence 801(d)(2)."  *Id.*  In *Blue Water*, the general subject matter of the litigation was

the master's operation of the vessel while intoxicated and the former employer vested in the master the responsibility to operate the vessel and to do so liquor-free. *Id. See Brinks v. City of New York*, 717 F.2d 700, 710 (2d Cir. 1983) (affirming admission of adverse inferences against plaintiff drawn from invocations of plaintiff's former employers who had been terminated for stealing parking meter revenues). Likewise, here, Transocean and HESI participated with BP in the operation of the Macondo well; they all acted through their employees and agents during the operations at issue. The invocations by these employees relating to the well operations at the time they occurred are therefore relevant and admissible.

The Court's decision in *FDIC* also undermines Defendants' argument that their employees' invocations of the Fifth Amendment cannot be used against it. Transocean argues that most of the current or former Transocean employees who have invoked the Fifth Amendment do not have a sufficient "alignment of interest" with Transocean to warrant the drawing of an adverse inference against it. But a lack of proof of continued loyalty cannot, alone, exclude the invocation. As the *RAD Services* Court held and the Fifth Circuit confirmed in *FDIC*, if a witness is truly bent on incriminating a party, he or she is more likely to offer testimony directly to damage the party than to do so via a Fifth Amendment invocation. *RAD Services,* 808 F.2d at 276. And, as the *RAD Services* Court also stated, a rule disallowing a former employee's invocation would permit employers to avoid negative inferences by simply discharging their employees. Nothing favors keeping a former agent's claim of privilege from the factfinder. *Id*.

Transocean has not demonstrated that any of its current or former employees are "bent" on incriminating it. Given the possibility of criminal prosecution, it is in the

interest of the Transocean invoking witnesses that Transocean *not* be incriminated for anything resulting from their actions.   In addition, Transocean has paid for at least some of the Transocean witnesses' attorneys, which the *FDIC* Court found to be demonstrative of a witness's loyalty to his former employer.  *FDIC*, 45 F.3d at 978 (quoting Heidt, *The Conjurer's Circle--The Fifth Amendment Privilege in Civil Cases*, 91 YALE L.J. 1062, 1119-20 n. 214 (1982)).  Accordingly, Defendants' assertion that it cannot be subjected to adverse inferences resulting from the invocations of its employees, former or current, should be rejected.[5]

On this point, BP relies on *Emerson v. Wembley United States, Inc.*, 433 F. Supp. 2d 1200, 1212 (D. Colo. 2006).  In *Emerson,* an employment discrimination case, the plaintiff sought adverse inferences from invocations taken by an individual who had been in a business relationship with her employer.   The deponent had invoked the privilege in response to virtually every question asked.   Unlike the PSC, the adverse inferences the plaintiff sought were "massive in scope."  *Id.*  She sought an inference in her favor on every question that the deponent refused to answer.   Here, out of hundreds of pages of deposition testimony in which the Fifth Amendment was invoked, the PSC limited its adverse inferences to relevant, probative invocations that meet the requirements of the Federal Rules.  Accordingly, BP's reliance on *Emerson* is misplaced.

Defendants point only to the lack of employment relationships and ongoing litigation to support their claims that the inferences the PSC seeks are not trustworthy. The Court has already held that the admissibility of inferences is not dependent upon an

---

[5] Transocean's reliance on *United States v. Philip Morris USA Inc.,* 2004 WL 5916856 (D.D.C. July 23, 2004) is misplaced, as the Court there provided no facts concerning the relationship between the witness and the party.

employment relationship between the invoking witness and the party against whom the inference is directed.   Defendants cannot demonstrate that any lack of control or alignment of interests warrants the refusal of the inferences sought.   Thus, the Court should grant the PSC's motion and overrule Defendants' objections as to the trustworthiness of the invocations.

## V. The Court Should Defer Its Ruling On Adverse Inferences Until The End Of Phase I After The Court Has Heard All Of The Evidence.

The PSC agrees with HESI's recommendation that the Court defer its ruling on adverse inferences until it has heard all of the evidence to be presented in Phase One. Defendants' objections, including the objections based on lack of corroboration, validity, and violation of the Federal Rules of Evidence, may be more thoroughly addressed after the Court has heard and presided over all of the Phase One evidence.   Thus, while the PSC has addressed the general arguments and examples that BP raises in its Memorandum, it has not addressed every specific argument raised in the exhibits attached to BP's Memorandum.   Until all of the Phase One evidence has been presented, a thorough consideration of all of the objections is not possible.

### Conclusion

For the foregoing reasons, the PSC respectfully requests that this Court grant its motion for adverse inferences.

Dated: <u>November 21, 2012</u>

Respectfully submitted,

<u>   /s/   Stephen J. Herman   </u>
**Stephen J. Herman**, La. Bar No. 23129
**HERMAN HERMAN & KATZ LLC**

820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 581-4892
Fax No. (504) 569-6024
E-Mail: sherman@hhkc.com
*Plaintiffs Liaison Counsel*

<u>   /s/ James Parkerson Roy   </u>
**James Parkerson Roy**, La. Bar No.11511
**DOMENGEAUX WRIGHT ROY & EDWARDS LLC**

556 Jefferson Street, Suite 500
Lafayette, Louisiana 70501
Telephone: (337) 233-3033
Fax No. (337) 233-2796
E-Mail: jimr@wrightroy.com
*Plaintiffs Liaison Counsel*

### PLAINTIFFS' STEERING COMMITTEE

Brian H. Barr
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, ECHSNER & PROCTOR, PA
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996
Office:  (850) 435-7045
Telefax: (850) 436-6187
E-Mail: bbarr@levinlaw.com

Jeffrey A. Breit
BREIT DRESCHER & IMPREVENTO
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451
Office:  (757) 670-3888
Telefax: (757) 670-3895
E-Mail: jbreit@bdbmail.com

Robin L. Greenwald
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY  10003
Office:  (212) 558-5802
Telefax: (212) 344-5461
E-Mail: rgreenwald@weitzlux.com

Rhon E. Jones
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P. C.
218 Commerce St., P.O. Box 4160
Montgomery, AL 36104
Office:  (334) 269-2343
Telefax: (334) 954-7555
E-Mail: rhon.jones@beasleyallen.com

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008
E-Mail:  ecabraser@lchb.com

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110
E-Mail:  pcossich@cossichlaw.com

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031
E-Mail:  rtc@cunninghambounds.com

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399
E-Mail:  mike@mikespy.com

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925
E-Mail:  calvinfayard@fayardlaw.

Ervin A. Gonzalez
COLSON HICKS EIDSON

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH,
LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029
E-Mail:  mlundy@lundylawllp.com

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGE'
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522
E-Mail:  mpalmintier@dphf-law.com

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514
E-Mail:  sterbcow@lksalaw.com

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172
E-Mail:  ssummy@baronbudd.com

Mikal C. Watts
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501
E-Mail:  mcwatts@wgclawfirm.com

255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444
E-Mail: ervin@colson.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Office: (843) 216-9159
Fax No. (843) 216-9290
E-Mail: jrice@motleyrice.com

Conrad S.P. "Duke" Williams
WILLIAMS LAW GROUP
435 Corporate Drive, Suite 101
Maison Grand Caillou
Houma, Louisiana 70360
Office: (985) 876-7595
Fax No. (985) 876-7594
E-Mail: duke@williamslawgroup.org

## CERTIFICATE OF SERVICE

We hereby certify that the above and foregoing Memorandum will be served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing will be electronically filed with the Clerk of Court of the United States District for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, this 21st day of November, 2012.

  /s/ Stephen J. Herman and James Parkerson Roy