UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" in the GULF OF MEXICO, on APRIL 20, 2010 | § § § § § | MDL NO. 2179 SECTION: J JUDGE BARBIER MAGISTRATE SHUSHAN |
| Applies to: 2:10-cv-02771; 2:11-cv-00925 | | |

**DEFENDANTS HALLIBURTON ENERGY SERVICES, INC., TRANSOCEAN, AND M-I L.L.C.'S OPPOSITION TO THE SELLNO PLAINTIFFS' MOTION FOR NEW TRIAL, MOTION TO ALTER OR AMEND JUDGMENT, AND MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL OF JUDGMENT DISMISSING <u>PURE STIGMA CLAIMS AND RECREATION CLAIMS</u>**

Defendants Halliburton Energy Services, Inc. ("HESI"), Transocean,[1] and M-I L.L.C. ("M-I") respectfully submit this Opposition to the Sellno Plaintiffs' ("Plaintiffs") Motion for New Trial, Motion to Alter or Amend Judgment, and Motion For Certification of Interlocutory Appeal of Judgment Dismissing Pure Stigma Claims and Recreation Claims, and in support thereof respectfully show the Court as follows:

<u>INTRODUCTION AND PROCEDURAL HISTORY</u>

On June 12, 2012, the Court ordered Defendants to "file any motions and briefs regarding the legal viability (under OPA or any other legal theory) of the . . . Pure Stigma Claims . . . and Recreational Claims no later than July 11, 2012." (Dkt. No. 6657 at 2). HESI, Transocean, and M-I (collectively, "Defendants") moved to dismiss the Pure Stigma Claims (Dkt. No. 6891) and

---

[1] "Transocean" includes defendants, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc. ("Transocean"). The Complaint also identified Transocean Ltd. as a defendant. Transocean Ltd. filed a motion challenging personal jurisdiction and, therefore, does not join in the present motion.

1

the Recreation Claims.  *See* (Dkt. No. 6889).  The Sellno Plaintiffs filed an Opposition to the Motions to Dismiss the Pure Stigma and Recreation Claims.  *See* (Dkt. No. 7099).

Thereafter, on October 1, the Court issued its "Order & Reasons," granting the Motions to Dismiss the Pure Stigma and Recreation Claims.  (Dkt. No. 7526).  Among other things, the Court found that Plaintiffs had failed to allege facts to support an intentional tort claim that would remove their claims from the ambit of the *Robins Dry Dock* Rule.

On October 29, Plaintiffs filed their Motion for New Trial, Motion to Alter or Amend Judgment, and Motion for Certification of Interlocutory Appeal of Judgment (the "Motion").  (Dkt. No. 7770).  In the Motion, Plaintiffs request that the Court reconsider its judgment in dismissing the Pure Stigma and Recreation Claims pursuant to Federal Rule of Civil Procedure 59(a).  (*Id.*)  In the alternative, Plaintiffs move the Court to alter or amend its judgment dismissing those claims pursuant to Federal Rule of Civil Procedure 59(e) by certifying the judgment for appeal under Federal Rule of Civil Procedure 54(b).  Finally, Plaintiffs move the Court, again in the alternative, to certify the judgment for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  HESI, Transocean, and M-I respond herein pursuant to this Court's October 31 Order that responses to Plaintiffs' Motion be submitted on or before November 21, 2012.  (Dkt. No. 7791).

## SUMMARY OF OPPOSITION

Regardless of the procedural vehicle taken, Plaintiffs' Motion(s) should be denied.  Plaintiffs come before this Court asking it to set aside authority that has been the letter of the law for over eighty-five years because, in their eyes, *Robins Dry Dock* is not fair.  Plaintiffs fail to provide any legal authority other than a string cite of cases recognizing the impact of *Robins Dry*

2

*Dock* and its progeny. Plaintiffs fail to provide this Court with any authority where any court has invalidated this long-standing precedent on the basis of fairness.

Plaintiffs also ask this Court to equate allegations of negligence and willful misconduct to that of intentional conduct, but cite no binding authority. Admittedly, tortious conduct can give rise to claims of negligence and willful misconduct; but, willful misconduct is not necessarily the same as intentional conduct as the required scienter is often lacking. The Sellno Plaintiffs' allegations and those in the First Amended B1 Master Complaint detail potential claims for negligence, gross negligence, and even potentially willful misconduct. But neither Plaintiffs' claims, nor those in the First Amended B1 Master Complaint, invoke intentional misconduct on the part of HESI, Transocean, or M-I. Thus, *Robins Dry Dock* and its dispositive effect upon Plaintiffs' claims remains.

Finally, Plaintiffs, relying upon the Oil Pollution Act of 1990, argue that this Court erred in dismissing Pure Stigma claims. Defendants have not been designated as OPA responsible parties, thus Defendants take no position on any OPA claims Plaintiffs may or may not have.

## ARGUMENT

**I. PLAINTIFFS FAIL TO SHOW ANY BASIS FOR RECONSIDERATION OF THE COURT'S ORDER.**

Plaintiffs' Motion first seeks relief under Federal Rule of Civil Procedure 59(a), which provides that a court "may, on motion, grant a new trial on all or some of the issues . . . after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." FED. R. CIV. P. 59(a)(1)(B). Of course, the Court held no trial on Plaintiffs' claims. Rather, it granted motions to dismiss the Pure Stigma and Recreation Claims. In this

3

context, Rule 59(a) does not apply.[2] If anything, the motion may be considered under Rule 59(e) as a motion to alter or amend judgment (although, of course, the order does not enter any final judgment). *See Patin v. Allied Signal, Inc.*, 77 F.3d 782, 785 n. 1 (5th Cir. 1996) (reconsideration motion was "styled as a motion for new trial, pursuant to Fed. R. Civ. P. 59(a), but was correctly analyzed and decided in the district court as a Rule 59(e) motion to reconsider entry of summary judgment"); *Madere v. Brunswick Corp.*, Civil Action No. 08-3655, 2008 WL 4534094, at *1 (E.D. La. Oct. 7, 2008) (Rule 59(a) motion following order granting motion to remand treated as Rule 59(e) motion because there had been no trial); *cf. Bass v. U.S. Dep't of Agriculture*, 211 F.3d 959, 962 (5th Cir. 2000) (stating that Federal Rules of Civil Procedure do not recognize any motion for reconsideration but that a motion to reconsider when timely may be treated as a Rule 59(e) motion to alter or amend judgment).

The Federal Rules of Civil Procedure provide that any party may file a motion to alter or amend a judgment within twenty-eight business days after its entry. *See* FED. R. CIV. P. 59. Under Rule 59, a district court enjoys considerable discretion in granting or denying such a motion. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990); *First Commonwealth Corp. v. Hibernia Nat. Bank of New Orleans*, 891 F. Supp. 290 (E.D. La. 1995), *amended* 896 F. Supp. 634 (E.D. La. 1995), *affirmed* 85 F.3d 622 (5th Cir 1996) (table).

There are certain grounds upon which a Court may grant a Rule 59 motion for reconsideration or to alter or amend the judgment, for example: (1) intervening change in the controlling law has occurred; (2) evidence not previously available becomes available; or (3) it is necessary to correct clear error of law or to prevent manifest injustice. *Database Am., Inc. v.*

---

[2] Even if Rule 59(a) did apply, which it does not, Plaintiffs fail to meet the standard necessary for a new trial. In order to be entitled to a new trial, Plaintiffs must show that "the verdict is against the great weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed." *Seidman v. American Airlines, Inc.,* 923 F.2d 1134, 1140 (5th Cir. 1991). Plaintiffs have failed to make this showing.

4

*Bellsouth Advertising & Pub. Corp.*, 825 F. Supp. 1216 (D. N.J. 1993).  Furthermore, Courts in this district hold that a moving party must satisfy at least one of the following criteria to prevail on a Rule 59(e) motion: (1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; and (4) the motion is justified by an intervening change in the controlling law. *Craig v. U.S. Postal Serv.*, 2002 U.S. Dist. LEXIS 19684 (E.D. La. 2002); *see also Fidelity & Deposit Co. of Md. v. Omni Bank*, 1999 U.S. Dist. LEXIS 16649 at *3 (E.D. La. 1999); *Jupiter v. BellSouth Telecomms., Inc.*, 1999 U.S. Dist. LEXIS 15567 at *1 (E.D. La. 1999); *Burma Navigation Corp. v. M/ V Reliant Seahorse*, 1998 U.S. Dist. LEXIS 17786 at *1 (E.D. La. 1998).

Plaintiffs have failed to show that the Court committed a manifest error of fact or law, or that an altered or amended Order is necessary in order to prevent manifest injustice.[3]

>    **A.    Plaintiffs Failed to Provide Any Legal Authority Supporting the Expansion of the Intentional Tort Exception to *Robins Dry Dock* to Reckless Acts or Willful Misconduct.**

In rather strained logic, Plaintiffs argue that this Court committed prejudicial error[4] by finding that neither the Sellno Plaintiffs nor the Amended B1 Master Complaint "'plausibly allege facts that would take the Pure Stigma Claims outside the *Robins Dry Dock* Rule.'" (Dkt. No. 7770-1 at 6 (quoting Dkt. No. 7526 at 6)).  Plaintiffs further argue that a series of reckless

---

[3] Plaintiffs bring forward no new evidence nor previously unavailable evidence in support of their Motion.  Moreover, while Plaintiffs do argue for a change in existing law, namely overturning *Robins Dry Dock* (*see infra*), Plaintiffs do not argue that their Motion is justified by an intervening change of law.

[4] Defendants note that after setting out the applicable legal standards under the Federal Rules of Civil Procedure, Plaintiffs fail to argue that the various alleged errors this Court committed rise to the level of "prejudicial error."  Nor do Plaintiffs argue that the Court's judgment "is against the clear weight of the evidence or would result in a miscarriage of justice."  Rather, Plaintiffs merely argue that this Court erred.

5

acts, even if each act individually is unintentional, can give rise to an inference of intentional tortious conduct, thus negating application of the *Robins Dry Dock* Rule.  *See* (Dkt. No. at 7-9).

In support of this argument, Plaintiffs rely almost exclusively on inapposite cases construing federal statutes, criminal laws,[5] and provisions of the Warsaw Convention.[6]  *See* (Dkt. No. 7770 at 6-9).  Plaintiffs emphasize the District of Columbia District Court decision in *Water Quality Ins. Syndicate v. United States*, 522 F. Supp. 2d 220 (D.D.C. 2007), a case Plaintiffs call "directly analogous."  (Dkt. No. 7770-1 at 7).  Yet, a review of the *Water Quality* decision reveals that it has little relevance in this proceeding.

*Water Quality* concerned a judicial review of the U.S. Coast Guard National Pollution Funds Center's denial of Water Quality Insurance Syndicate's ("WQIS") claim for reimbursement, uncompensated damages, and removal costs under OPA.  *Water Quality*, 522 F. Supp. 2d at 223.  Central in *Water Quality*, was the applicability of the defense of willful misconduct under OPA.  *See Water Quality*, 522 F. Supp. 2d at 230.

WQIS had insured the MORRIS J. BERMAN, a tank barge owned by New England Marine Services.  During a routine tow of the MORRIS J. BERMAN from San Juan, Puerto Rico to Antigua, the vessel became stranded on a reef and spilled 798,000 gallons of fuel oil onto the beach and in the surrounding waters.  *Id*.  While WQIS was not designated as an OPA "responsible party," it had executed a Certificate of Financial Responsibility, thus making WQIS a "guarantor" under OPA.  Following the incident, New England Marine Services was convicted of knowingly violating federal law.  *Id*. at 224.  After paying monies to the National Pollution Funds Center ("NPFC") as guarantor for New England Marine Services, WQIS then submitted a

---

[5] *See Bryan v. United States*, 524 U.S. 184 (1998) (discussing whether ignorance of provisions in the Firearms Owners' Protection Act is an excuse for a violation of that criminal statute).

[6] *See Bayer Corp. v. British Airways,* 210 F.3d 236 (D.D.C. 2000); *Saba v. Compagnie Nationale Air France*, 78 F.3d 664 (D.D.C. 1996); *In re Tug OCEAN PRINCE*, 584 F.2d 1151 (2d Cir. 1978).

6

claim against the Fund for monies previously paid to NPFC on behalf of New England Marine and monies paid directly to contractors for oil removal expenses. *Id*. WQIS's claim was denied. *Id*.

On administrative appeal to the District Court for the District of Columbia, the trial court examined the concept of willful misconduct under OPA and its predecessor statute, (*see id*. at 229) and willful misconduct under the Warsaw Convention, (*see id*. at 230); but, the Court did not hold that willful misconduct necessarily gives rise to intentional misconduct. Rather, the Court held that tortious acts of the OPA responsible party, including knowingly sending an unseaworthy vessel to sea, taken in the aggregate, constitute reckless disregard and willful misconduct. *Id*. at 230.

Despite Plaintiffs' argument otherwise, *Water Quality* did not hold that willful conduct gives rise to intentional tort, the relevant inquiry here for determining if the narrow exception to the *Robins Dry Dock* Rule for intentional torts applies. Nor did the *Water Quality* court address expanding the scope of the intentional tort exception of the *Robins Dry Dock* Rule to negligent acts rising to the level of reckless disregard or willful misconduct. In fact, the *Water Quality* decision, like each of the cases Plaintiffs cite, did not even address the *Robins Dry Dock* Rule.

Admittedly, tortious conduct <u>may</u> give rise to claims of both intentional conduct and willful misconduct. But merely because two claims may arise from the same underlying conduct does not equate willful misconduct to intentional conduct, especially in instances concerning the *Robins Dry Dock* Rule, a long-standing rule with very specific and limited exceptions. Reviewing the other authorities Plaintiffs cite, this Court will find that none is binding, none addresses the scope and nuances of the *Robins Dry Dock* Rule, and none examines the nature of intentional torts under general maritime law—the relevant inquiry in the present case.

7

Apparently recognizing the weakness in their argument, Plaintiffs next contend that their Complaint and the B1 Amended Master Complaint, (Dkt. No. 1128), include sufficient allegations and intentional tort claims, thereby removing those claims from the ambit of the *Robins Dry Dock* Rule.  (Dkt. No. 7770 at 9-11).  In support of this argument, Plaintiffs rely upon the Federal Rule of Civil Procedure notice pleading standard and acknowledge that the pleading rules require that they "plead enough facts to state a claim to relief that is plausible on its face."  (Dkt. No. 7770 at 11 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

Even based upon the liberal pleading standard, Plaintiffs still failed to allege an intentional tort against Defendants.  While Plaintiffs' Motion focuses upon their allegations against BP, a review of both the Sellno Complaint and the B1 First Amended Master Complaint reveals a number of factual allegations against HESI, Transocean, and M-I, none of which even hints at intentional or willful conduct.  Specifically, the Sellno Plaintiffs allege that HESI breached its duties by:

> A. Failing to exercise reasonable care in conducting its cementing, testing, analysis and monitoring of the *Deepwater Horizon'*s well;
>
> B. Failing to use a full bottoms up circulation of mud between the running of the casing and the and the (*sic*) beginning of the cement job in violation of industry standards; failing to require comprehensive lab testing to ensure the density of the cement, and failing to heed the ominous results of the negative pressure testing, which indicated that the cement job was defective;
>
> C.  Cancelling or acquiescing in the cancellation of the cement bond log test that would have determined the integrity of the cement job;
>
> D.  Failing to deploy, or acquiescing in the decision not to deploy, the casing hanger lockdown sleeve to prevent the wellhead seal from being blown out by pressure from below;
>
> E. *Other acts of negligence to be shown at the trial of this matter.*

(Sellno Compl. at ¶ 55 (emphasis added)).  Plaintiffs make similar allegations against Transocean and M-I.  (*Id*. at ¶ 48) (Transocean); (*Id*. at ¶ 59) (M-I).[7]  Perhaps recognizing the complete lack of allegations necessary to support an intentional tort claim, Plaintiffs point out in their Motion that they only provide "[e]xamples of evidence demonstrating BP's intentional conduct" in the Motion. (Dkt. No. 7770 at 10).  Plaintiffs failed to identify any allegations giving rise to an intentional tort claim against HESI, Transocean, or M-I.  Accordingly, Plaintiffs have failed to demonstrate any prejudicial error or a miscarriage of justice.  Plaintiffs' Motion for New Trial should be denied.

> **B.     Regardless of its Age, the Force, Effect and Soundness of *Robins Dry Dock* Remains.**

Plaintiffs next argue that this Court committed prejudicial error by applying *Robins Dry Dock*, maintaining that the 85-year-old *Robins Dry Dock* Rule is antiquated and should not be applied to bar the Pure Stigma and the Recreation claims. (Dkt. No. 7770 at 12-16).  In essence, Plaintiffs contend that jurisprudence has not kept pace with the magnitude of the damages that can be generated by an environmental disaster like the *Deepwater Horizon* Incident. (Dkt. No. 12).  Plaintiffs propose overturning *Robins Dry Dock* in favor of holding defendants liable for all foreseeable damages—effectively turning the rationale and public policy behind *Robins Dry Dock* on its head. (Dkt. No. 7770 at 14-16).  In support of this proposition, Plaintiffs contend that "the federal courts in this circuit and others have increasingly recognized the inequitable nature of this rule." (*Id. at* 13).

---

[7] The First Amended B1 Master Complaint contains similar allegations.  *See* (Dkt. No. 1128 at ¶¶ 590, 633-36) (Transocean); (*Id*. at ¶¶ 591, 599, 634) (HESI); (*Id*. at ¶¶ 602, 635)(M-I).  Yet, it is important to note that the PSC did not argue, in opposing dismissal of the Pure Stigma and Recreation Claims, that it had alleged intentional torts.  (Dkt. Nos. 7094, 7095).

9

However, none of the cases Plaintiffs cite supports overturning *Robins Dry Dock*.[8]  At most, they acknowledge that "in a perfectly just world" there would be redress for all injuries. *Holt Hauling & Warehousing Sys., Inc. v. M/V Ming Joy*, 614 F. Supp. 890, 895 (E.D. Pa. 1985). Reality, though, dictates that

> compensating everyone who suffers some economic disadvantage from an accident would require both a staggering commitment of judicial resources – as courts struggle to determine the connection between the accident and each claimant's monetary loss – and a consequent risk of increasingly arbitrary, ad hoc decision-making at the margins.

*Id.*  Like the *M/V Ming Joy* court, the Fifth Circuit has concluded that "without this limitation, foreseeability loses much of its ability to function as a rule of law."  *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1021 (5th Cir. 1985).

Plaintiffs also ignore that courts continue to rely consistently on *Robins Dry Dock* as a "pragmatic restriction on the doctrine of foreseeability[.]"  *M/V TESTBANK*, 752 F.2d at 1021. In fact, in *M/V TESTBANK*, the Fifth Circuit in an *en banc* review heightened its commitment to the *Robins Dry Dock* Rule.  *Id.* at 1021; *see also id.* at 1032  ("In conclusion, having reexamined the history and central purpose of the doctrine of *Robins Dry Dock* as developed in this circuit, we remain committed to its teaching.").  The Fifth Circuit concluded that this "pragmatic limitation on the doctrine of foreseeability" is "both workable and useful."  *Id.* at 1032.

Just last year, the Fifth Circuit reiterated its commitment to *Robins Dry Dock,* when it noted that "[i]t is well settled under the general maritime law that there can be no recovery for

---

[8] Plaintiffs' citation to *Holt Hauling & Warehousing Sys., Inc. v. M/V Ming Joy*, 614 F. Supp. 890 (E.D. Pa. 1985) as "criticizing the *Robins Dry Dock* rule as resting on pragmatic concerns that have been cast aside in other areas of tort law" (Dkt. No. 7770 at 13) is particularly misleading, as that language is taken from a parenthetical related to a law review article cited in *M/V Ming Joy*.  In fact, the *M/V/ Ming Joy* court termed the *Robins Dry Dock* Rule a "prudent limitation on tort recovery" that "remains good law almost six decades after Justice Holmes rendered his decision" before applying it.  *M/V Ming Joy*, 614 F. Supp. 890 at 896.

economic loss absent physical damage to or an invasion of a proprietary interest." *Catalyst Old River Hydroelectric Ltd. P'ship v. Ingram Barge Co.*, 639 F.3d 207, 210 (5th Cir. 2011). Accordingly, Plaintiffs have not established that there is either prejudicial error or a miscarriage of justice in the Court's application of the *Robins Dry Dock* Rule to dismiss their claims. Plaintiffs' Motion should be denied.

### C. Defendants Take No Position on Plaintiffs' Purported OPA Claims.

Plaintiffs further urge that the Court erred in finding that the Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et seq.* ("OPA"), does not cover claims for unrealized diminution of property value. (Dkt. No. 7770 at 16-19). Defendants have not been designated as OPA responsible parties;[9] thus, Defendants take no position on any OPA claims Plaintiffs may or may not have.

## II. PLAINTIFFS HAVE FAILED TO MEET THE REQUIREMENTS OF 28 U.S.C. § 1292(B) TO JUSTIFY CERTIFYING THE JUDGMENT FOR INTERLOCUTORY APPEAL, AND THERE IS NO REASON TO ENTER PARTIAL JUDGMENT UNDER RULE 54(B).

Finally, Plaintiffs seek alternative relief in the form of a certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Such requests are granted when the court finds that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]"  28 U.S.C. § 1292(b).

---

[9] While Transocean was designated a "responsible party" by the Coast Guard, this Court has held that Transocean is a responsible party under OPA only with respect to the discharge from the vessel on or above the surface. *See* (Dkt. No. 5809). Transocean is not a "responsible party" with respect to the subsurface discharge of oil from the Macondo well. *Id*. The Court held that since the *Deepwater Horizon* was being used as "an offshore facility . . . then the responsible party is the lessee (the responsible party for an offshore facility)." *Id*. at 6-7. For purposes of this Opposition, neither HESI nor M-I takes a position regarding whether Transocean is an OPA responsible party or regarding the distinction between surface versus sub-surface release.

11

Plaintiffs contend that there is substantial ground for a difference of opinion as to the application of *Robins Dry Dock* and *The Conqueror*[10] common law doctrines to the Pure Stigma and Recreation Claims. (Dkt. No. 7770 at 22-23). Interestingly, after criticizing the Court's reliance upon *Robins Dry Dock*, Plaintiffs next argue, albeit alternatively, that there is substantial ground for difference of opinion between the 85-year-old *Robins Dry Dock* and the 115-year-old decision in *The Conqueror*. However, there is no basis to dispute the applicability of these rules to the claims at issue. *Robins Dry Dock* remains controlling law and Plaintiffs fail to identify any authority suggesting that there is a substantial ground for a difference of opinion between *Robins Dry Dock* and *The Conqueror*. Courts, including binding authority from the Fifth Circuit, continue to consistently rely on *Robins Dry Dock*. *See, e.g.*, *Catalyst Old River Hydroelectric Ltd. P'ship v. Ingram Barge Co.*, 639 F.3d 207, 210 (5th Cir. 2011); *Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1021 (5th Cir. 1985).

Plaintiffs also make conclusory statements and do not provide any authority supporting the argument that there is substantial ground for difference of opinion in the application of common law doctrines to the MDL claims. Contrary to their assertion, Plaintiffs provide no basis or authority to substantiate the claim that the 1986 amendment to CERCLA somehow abrogates the *Robins Dry Dock* Rule. Nor have Plaintiffs properly supported their suggestion of expanding the commercial fisherman or intentional tort exceptions to the *Robins Dry Dock* Rule. As Defendants have demonstrated, the *Robins Dry Dock* Rule is a long-standing and binding rule

---

[10] Plaintiffs do not discuss *The Conqueror*, 166 U.S. 110 (1897), in the Motion, but that case has long stood for the proposition that general maritime law does not provide compensation for the loss of the use of a recreational boat. *See Kelly v. Porter, Inc.*, 687 F. Supp. 2d 632, 637 (E.D. La. 2010) (noting that "under federal maritime law loss of use of private pleasure boat is not a compensable item of damage"); *Snavely v. Lang*, 592 F.2d 296, 298 (6th Cir. 1979) (noting that "under federal maritime law demurrage is not an allowable item of damage for loss of use of a private pleasure craft").

in this Circuit, and Plaintiffs have not cited to a single case directly supporting expansion of its limited and specific exceptions.

In addition to failing to demonstrate a difference of opinion regarding the *Robins Dry Dock* Rule, Plaintiffs fall short of showing that an immediate appeal of this Court's judgment will materially advance the ultimate termination of this litigation.  Accordingly, there are no grounds for an immediate appeal, as the Court's order does not meet each of the requirements of 28 U.S.C. § 1292(b).  For these reasons, Plaintiffs' request for certification of an interlocutory appeal should be denied.

Plaintiffs alternatively request that the Court enter partial judgment under Rule 54(b) to allow an immediate appeal in order "to prevent manifest injustice."  (Dkt. No. 7770 at 20-21). But there is no basis to enter partial judgment.  The dismissal of the Pure Stigma and Recreation claims is just one of many orders this Court has entered in the course of the litigation and there is nothing to distinguish it from the numerous other interlocutory orders the Court has issued relating to specific claims without certifying partial judgments to permit interlocutory appeals.

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' Motion for New Trial, Motion to Alter or Amend Judgment, and Motion for Certification of Interlocutory Appeal and grant Defendants any and all further relief to which this Court deems appropriate and necessary.

Dated:  November 21, 2012

Respectfully submitted,

**GODWIN LEWIS PC**

**By:** /s/ *Donald E. Godwin*
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
DGodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
BBowman@GodwinRonquillo.com
Jenny L. Martinez
State Bar No. 24013109
JMartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
FHartley@GodwinRonquillo.com
Gavin E. Hill
State Bar No. 00796756
GHill@GodwinRonquillo.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

and

R. Alan York
State Bar No. 22167500
AYork@GodwinRonquillo.com
Misty Hataway-Coné
State Bar No. 24032277
MCone@GodwinRonquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

**ATTORNEYS FOR DEFENDANT HALLIBURTON ENERGY SERVICES, INC.**

Respectfully submitted,

By: /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas  77002
Telephone:  (713) 470-6100
Facsimile:  (713) 654-1301
E-:mail:  steven.roberts@sutherland.com,
Rachel.clingman@sutherland.com

-and-

By: /s/ Edwin G. Preis, Jr.
Edward G. Preis, Jr. (Louisiana, No. 10703)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana  70501
Telephone:  (337) 237-6062
Facsimile:  (337) 237-9129

601 Poydras Street, Suite 1700
New Orleans, Louisiana  70130
Telephone:  (504) 581-6062
Facsimile:  (504) 522-9129
Email:  egp@preisroy.com

**Of Counsel:**
John M. Elsley (Texas, No. 0591950
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas  77002
Telephone:  (713) 224-9380
Facsimile:  (713) 225-9945
Email:  john.elsley@roystonlaw.com

**ATTORNEYS FOR DEFENDANTS TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC., TRANSOCEAN DEEPWATER INC., TRITON ASSET LEASING GmbH, AND TRANSOCEAN HOLDINGS LLC**

By: /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana  70163
Telephone:  (504) 599-8169
Facsimile:  (504) 599-8154
Email:  kmiller@frilot.com

-and-

By: /s/ Brad D. Brian
Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 54933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California  90071
Telephone:  (213) 683-9100
Facsimile:  (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com,
allen.katz@moto.com

**ATTORNEYS FOR DEFENDANTS TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC.,  TRANSOCEAN DEEPWATER INC., TRITON ASSET LEASING GmbH, AND TRANSOCEAN HOLDINGS LLC**

Respectfully submitted,

| | |
|---|---|
| **OF COUNSEL:**<br>MORGAN, LEWIS & BOCKIUS LLP | MORGAN, LEWIS & BOCKIUS LLP |
| Derek E. Leon<br>dleon@morganlewis.com<br>Texas Bar No. 24002463<br>5300 Wachovia Financial Center<br>200 South Biscayne Boulevard<br>Miami, Florida  33131<br>Telephone:  (305) 415-3000<br>Facsimile:  (305) 415-3001 | By: /s/ Hugh E. Tanner<br>        Hugh E. Tanner<br>        htanner@morganlewis.com<br>        Texas Bar No. 19637400<br>        1000 Louisiana, Suite 4000<br>        Houston, Texas  77002<br>        Telephone:  (713) 890-5000<br>        Facsimile:  (713) 890-5001 |
| Denise Scofield<br>dscofield@morganlewis.com<br>Texas Bar No. 00784934<br>1000 Louisiana, Suite 4000<br>Houston, Texas  77002<br>Telephone:  (713) 890-5000<br>Facsimile:  (713) 890-5001 | **ATTORNEYS FOR DEFENDANT<br>M-I L.L.C.** |
| **ATTORNEYS FOR DEFENDANT<br>M-I L.L.C.** | |

2036004 v4-24010/0002 PLEADINGS

**CERTIFICATE OF SERVICE**

     I hereby certify that the above and foregoing Opposition to Plaintiffs' Motion For New Trial, Motion to Alter or Amend Judgment, and Motion for Certification of Interlocutory Appeal has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedure established in MDL 2179, on this 21st day of November, 2012.

                                                          /s/ Donald E. Godwin
                                                          Donald E. Godwin

2036004 v4-24010/0002 PLEADINGS