## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * | **MDL NO. 2179** |
| | * | **SECTION J** |
| | * | |
| This document relates to all actions. | * * | |
| | * | |
| | * | **Honorable CARL J. BARBIER** |
| | * | |
| | * | **Magistrate Judge SHUSHAN** |
| | * | |

| | | |
|---|---|---|
| Bon Secour Fisheries, Inc., et al., individually and on behalf of themselves and all others similarly situated, | * * * | **Civil Action No. 12-970** |
| | * | **SECTION J** |
| | * | |
| Plaintiffs, | * * | |
| | * | |
| v. | * * | **Honorable CARL J. BARBIER** |
| | * | |
| | * | **Magistrate Judge SHUSHAN** |
| BP Exploration & Production Inc.; BP America Production Company; BP p.l.c., | * * | |
| | * | |
| Defendants. | * | |

### CLASS COUNSEL AND THE BP DEFENDANTS JOINT REPORT ON OBJECTIONS TO AND OPT-OUTS FROM THE *DEEPWATER HORIZON* ECONOMIC AND PROPERTY DAMAGES SETTLEMENT AS AMENDED ON MAY 2, 2012

*COUNSEL FOR THE SUBMITTING PARTIES ARE LISTED AT THE END OF THIS DOCUMENT*

## TABLE OF CONTENTS

INTRODUCTION...........................................................................................................1

I.     OBJECTIONS...................................................................................................3

     A.     The "Mass" Objections By Four Law Firms Are Fundamentally
              Flawed. ...................................................................................................4

     B.     The Vast Majority of Objections Also Fail on Other Grounds. ........7

     A.     Thousands of the Requests Are Invalid "Mass" Opt Outs Signed Only
              by Counsel...............................................................................................10

     B.     Mr. Coon Has Acknowledged that Most of His Opt Out Requests Are
              Invalid and Has Expressly Endorsed the Settlement – at Least for
              Some of His Clients. .............................................................................12

     C.     Several Requests Failed to Express an Intent to Opt Out...............15

     D.     Several Requests Were Untimely. .....................................................15

     E.     Several Requests Were Made By Persons or Entities Who Had
              Already Released BP...............................................................................16

     F.     Several Opt Outs Have Already Been Revoked and More Will Likely
              Be Revoked. ..........................................................................................16

CONCLUSION ...........................................................................................................17

Pursuant to the Court's Order of November 9, 2012 (Rec. Doc. 7878), Class Counsel and BP (together "the Parties") submit this joint report analyzing and providing the Court with details regarding the objections and opt-outs made in connection with the *Deepwater Horizon* Economic and Property Damages Settlement as Amended on May 2, 2012 (the "Settlement") (Rec. Doc. 6430).

## INTRODUCTION

Given the scope and high profile of the Settlement, the size of the class, and the extensiveness of the class notice program, the number of objections to – and the number of opt-outs from – the Settlement are both remarkably small.  This is strong evidence that the overwhelming majority of class members concur with the judgment of Class Counsel, BP, and leading experts in class action law that the Settlement is fair, reasonable, and adequate.  Only a fraction of the individuals and entities that filed purported objections submitted procedurally valid objections.  And only about half of those who attempted to opt out from the Settlement submitted valid opt-out requests.

Most of the purported objections and opt-outs suffer from a number of fatal flaws.  Some of these are procedural deficiencies.  Others reflect what would appear to be a concerted effort by certain counsel to sidestep the Court's requirements and submit thousands of facially invalid objections and opt-out requests, often in direct conflict with what the same counsel are advocating for on behalf of the very same clients.  This would appear to be an improper attempt to deny the benefits of the Settlement to the class in favor of the narrow interests of a would-be privileged subset of counsel and their clients.  But even if the objections and opt outs suffered from none of these flaws, they still would not warrant disapproval of the Settlement for the reasons discussed in the Parties' memoranda in support of their motion for final approval of the

Settlement (Rec. Docs. 7114 & 7731), during the November 8, 2012 Fairness Hearing, and in the

Parties' joint proposed findings of fact and conclusions of law (Rec. Doc. 7945).

The specific objection and opt-out data are set forth below. Those data demonstrate the

following:

– **Only 599 objectors have submitted procedurally valid objections.**

- Over 97% of the purported objectors made no individual objection to the Settlement. These several thousand "objectors" were simply names on lists attached to the objections filed by four sets of lawyers.

- Several objecting counsel – including those that filed "mass" objections advocating that the Court ***not*** approve the Settlement – also represent clients seeking compensation under the Settlement from the Court Supervised Settlement Program. Indeed, some of their "objecting" clients actually have been paid and have released all claims against BP. As BP asked at the Fairness Hearing:

  o "How does a lawyer object to his clients making claims, seeking to prevent them from making claims?" (11/8/12 Fairness Hearing 11/8/12 Tr. at 55:20-21.)

  o "He is trying to kill for some group of clients the very settlement that others of his clients are participating in. I leave Your Honor to determine the validity of such an approach." (*Id.* at 168.)

- The vast majority of supposed objectors failed to comply with Paragraph 38 of the Court's Preliminary Approval order requiring that objectors provide basic information to establish their standing and right to object to the Settlement. (Rec. Doc. 6418 ¶ 38.)

– **Only 13,123 individuals or entities have submitted procedurally valid opt-out requests.**

- Only about one-half of the purported opt-out submissions are in fact valid requests to opt out.

- Almost half of the opt-out requests were submitted by just a few law firms. Brent Coon & Associates accounted for almost 45% of all submissions.

- The vast majority of these "mass" opt-out requests were not signed by the party seeking to opt out, but instead were signed only by counsel, and are thus invalid requests to opt out. *See* Court's Preliminary Approval Order.

(Rec. Doc. 6418 ¶ 39.)  Mr. Coon, for example, filed some 7,925 invalid requests that were stamped with his "signature" as opposed to the required signature of his alleged clients – all contrary to this Court's Preliminary Approval Order.

- Several other opt-out requests are invalid for other procedural reasons, including a failure to comply with the Court's (extended) deadline for submitting opt-out requests and/or a failure to express a clear intent to opt out.

- Many purported opt-out requests are from at least 1,552 individuals and entities *who have already been paid and signed releases* under the Settlement Program and/or the GCCF.

- Finally, a significant number of the otherwise valid opt-outs have revoked their requests to be excluded from the Settlement Class, and more are likely to do so up until the December 15, 2012 deadline for opt-out revocations.

## I.     OBJECTIONS

The number of objection filings was small.  As of November 15, 2012, the total number was 223 (not counting duplicate or supplemental filings by the same objectors).  A list of these filings is attached as Exhibit A.[1]  As discussed in the parties' opening and reply briefs filed in support of their motion for final approval of the Settlement, and in their joint proposed findings of fact and conclusions of law (Rec. Docs. 7114, 7731 & 7945) – which addressed the substance of all objections, notwithstanding their procedural flaws – none of the objection filings advanced persuasive reasons for not approving the Settlement.

Objections were ostensibly filed on behalf of an alleged 13,786 objectors.  A list showing each objector is attached at Exhibit B.  This number, however, does not represent the number of valid objectors.  To the contrary, most of the objections are invalid for several reasons.  The maximum number of objectors with procedurally valid objections is no more than 599.

---

[1] Attached as Exhibit 1 is the Declaration of Jeffrey W. Hanhan which further describes Exhibits B through M. Attached as Exhibit 2 is the Declaration of Jennifer M. Keough, which further describes Exhibits N through T.

3

**A.      The "Mass" Objections By Four Law Firms Are Fundamentally Flawed.**

The vast majority of the purported objectors are simply names on long lists attached to the objection filings made by four law firms:

- Brent Coon & Associates claimed to propound objections on behalf of 11,245 purported objectors.  (Obj. 122.);

- Farrell & Patel claimed to propound objections on behalf of 949 purported objectors.  (Obj. 198; Rec. Doc. 7217.);

- Smith Stag LLC and its co-counsel claimed to propound objections on behalf of 644 purported objectors.  (Obj. 167; Obj. 189.); and

- Arnold & Itkin LLP claimed to propound objections on behalf of 544 purported objectors.  (Obj. 209.)

In total, 97% of the purported objectors – 13,382 out of 13,786 – were included in these "mass" objector filings.  *See* Exhibit B (listing objectors and their counsel).

It seems unlikely that these mass objections are the product of a good-faith investigation of the fairness of the proposed settlement with respect to the interests of each of more than 13,000 individual potential Class Members.  Moreover, at the same time as these four law firms filed these mass objections are urging the Court to reject the proposed Settlement, they are advocating the claims of other clients – and in many cases the ***same clients*** on whose behalf they have filed objections – seeking compensation under and pursuant to the Settlement.  Indeed, not only have hundreds of the mass objectors made claims under the Settlement, but many have received payments from the Settlement Program and signed releases of their claims against BP.  Still others have been paid by the GCCF and likewise have released their claims against BP.

As of November 15, 2102, the attorneys who filed the "mass" objections to the Settlement ostensibly did so on behalf of many persons and entities simultaneously making claims under the Settlement and/or who have released their claims against BP.

4

- **Brent Coon & Associates** – on the face of the papers this firm has filed or submitted – claims to represent:

  o   5,534 objectors who are also registered to submit claims under the Settlement Program;

  o   56 objectors who have signed Settlement Program releases and have been paid a total of  $9,095,810 by the Settlement Program; and

  o   875 objectors who were GCCF claimants who signed GCCF releases and were paid a total of $18,941,463 by the GCCF.

  *See* Exhibit C (listing detail on these clients).

- **Farrell & Patel apparently represents:**

  o   481 objectors who registered to submit claims under the Settlement Program; and

  o   22 objectors who were GCCF claimants who signed GCCF releases and were paid a total of $455,523 by the GCCF.

  *See* Exhibit D (listing detail on these clients).

- **Smith Stag LLC and its co-counsel apparently represent:**

  o   281 objectors who are also registered to submit claims under the Settlement Program;

  o   8 objectors who have signed Settlement Program releases and have been paid a total of  $551,306 by the Settlement Program; and

  o   51 objectors who were GCCF claimants who signed GCCF releases and were paid a total of $2,078,695 by the GCCF.

  *See* Exhibit E (listing detail on these clients).

- **Arnold & Itkin LLP apparently represents:**

  o   104 objectors who are also registered to submit claims under the Settlement Program; and

  o   85 objectors who were GCCF claimants who signed GCCF releases and were paid a total of $1,687,861 by the GCCF.

  *See* Exhibit F (listing detail on these clients).

The simultaneous representation of objectors and claimants in the Settlement Program is not limited to the four firms that filed "mass" objections. As of November 15, 2012, law firms that have filed objections (including the "mass" objector law firms) represent some 6,458 individuals and entities registered to submit claims under the Settlement Program. *See* Exhibit G (listing all Settlement Program registrants objecting to the Settlement and their counsel).

This same problem infects the objections filed by the attorneys that argued against the Settlement at the November 8, 2012 Fairness Hearing. Stuart Smith, of Smith Stag LLC, as noted above, represents objectors who apparently both wish to see the Settlement approved but also not approved. Indeed, when asked by the Court at oral argument whether he really wanted the Court to not approve the settlement or opt his clients out of the Settlement, he responded, "No, sir." (11/8/12 Tr. at 115-16.) Ms. Curtis, from the Sher Garner firm, also spoke. Her firm represents ten objectors (*see* Objs. 88, 95, 97, 98, 99, 100, 146, 177 & 181), four of whom have registered with the Settlement Program (*see* Exhibit G), and the objector who figured as the centerpiece of her argument – Mr. Kornman, of whose property pictures were shown to the Court – was not even a member of the Settlement Class. (11/8/12 Tr. at 123-24).

It raises a substantial question as to the validity of all of the mass objections when the same lawyers can, on the one hand, advocate for payments under the proposed Settlement for clients, but, on the other hand, simultaneously urge the Court to reject the proposed settlement, ***often on behalf of the very same clients***. The Parties submit that this raises the question of a potential conflict of interest, and a basis on which the Court could question or possibly reject the objections filed by the mass-objector counsel and other attorneys who are playing both sides of the motion pending before the Court.[2]

---

[2] *Compare In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3rd Cir. 1984) (disqualifying counsel from representing an objector after withdrawing representation from a party that agreed to the class settlement), *and In re*

**B.      The Vast Majority of Objections Also Fail on Other Grounds.**

Even setting aside the propriety of the mass objections and the issues raised by counsel both objecting to and advocating for the Settlement, very few of the 13,786 purported objectors complied with this Court's Preliminary Approval Order and its requirements for submitting proper objections to the proposed Settlement.  Once all the deficiencies are taken into account, there are at most only 599 procedurally valid objectors.

As an initial matter, 15 objectors failed to submit their objections by the deadline imposed by the Court, which was first established as August 31, 2012 (Rec. Doc. 6418 ¶ 38), and later was extended to September 7, 2012, in light of Hurricane Isaac.  (Rec. Doc. 7225.)  *See* Exhibit H (listing all untimely objections).

In addition, 2,016 of the purported objectors clearly lack standing to object for a variety of reasons discernable from their objection filings:

- Several objectors' submissions demonstrate they are not members of the class (77 purported objectors) because, for example, they complain of exclusion from the Settlement Class.  *See* Exhibit I (listing non-class member objectors).[3]

---

*Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552, 557 (S.D. Ohio 2005) ("Counsel cannot represent different classes of plaintiffs with conflicting claims who are seeking recovery from a common pool of assets."), *with* Mem. & Pretrial Order No. 1417, *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litig.*, 2000 WL 1342491, at *2 (E.D. Pa. Sept. 1, 2000) (denying motion to disqualify certain objectors' counsel for representing objectors and non-opted out class members because mere failure to opt out does not mean they are "necessarily . . . proponents of the settlement").  *See also* Order Disqualifying Bailey Pinney Firm, *Moreno v. Autozone, Inc.*, 2007 WL 4287517, at *3-4 (N.D. Cal. Dec. 6, 2007) (finding that the simultaneous representation of settlement objectors and settlement claimants constituted a disqualifiable conflict of interest); NEWBERG ON CLASS ACTIONS § 15:25 (4th ed.) (while not necessarily a conflict, class counsel may be excluded in the case of simultaneous representation of opt outs for "a showing of actual prejudice to either class members or individual parties"); ABA Section on Litig., Ethical Guidelines for Settlement Negotiations at 30 (Aug. 2002), *available at* http://www.americanbar.org ("An attorney also should not continue to represent different groups of class members if the interests of members of one group become adverse to the interests of members of another.  An attorney cannot represent and be an advocate for subclasses with opposing interests, and may not be able to represent class members supporting a settlement while also representing individuals who are objecting to it.").

[3] *See Feder v. Elec. Data Sys. Corp.*, 248 F. App'x. 579, 580 (5th Cir. 2007) (per curiam) ("Because Urbanik did not prove his membership in the class, he lacks standing to object."); *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) ("Beginning from the unassailable premise that settlements are to be encouraged, it follows that to routinely allow non-class members to inject their concerns via objection at the settlement stage would tend to frustrate this

- Other objectors lack standing because of their status as a non-settling defendant, governmental entity, or association (17 purported objectors). *See* Exhibit J (listing objectors who lack standing on these grounds).[4]

- Still other objectors actually have opted-out of the proposed settlement (1,928 purported objectors). *See* Exhibit K (listing objectors who have opted out of the Settlement).[5]

By far the most prevalent deficiency, however, is that 12,970 (over 94%) of the purported objectors – and, not surprisingly, almost all of the mass objectors – did not comply with this Court's Preliminary Approval Order. Under Paragraph 38 of the Preliminary Approval Order, Class Members who wished to object to the proposed settlement were required to submit a written statement of the objection(s) and to include in their written statement "written proof that the individual or entity is in fact an Economic Loss and Property Damage Class Member, such as proof of residency, ownership of property and the location thereof, and/or business operation and the location thereof." (Rec. Doc. 6418 ¶ 38.) Objectors that failed to comply with the Court's Preliminary Approval Order have – by the express terms of the Order itself – waived and forfeited any and all of their rights to object to the Settlement, forever foreclosing them from

---

goal."); NEWBERG ON CLASS ACTIONS § 11:55 (4th ed.) ("[A]s a general rule only class members have standing to object to a proposed settlement.").

[4] *See Transamerican Refining Corp. v. Dravo Corp.*, 952 F.2d 898, 900 (5th Cir. 1992) (holding that non-settling defendants lack standing); *Agretti v. ANR Freight Sys.*, 982 F.2d 242, 246 (7th Cir. 1992) ("We agree with the district court that [non-settling defendant] does not have standing to object to the settlement, either in district court or on appellate review of the settlement."); *In re Vioxx Prods. Liab. Litig.*, 388 F. App'x 391, 395 (5th Cir. 2010) ("This court has recognized that, in the context of class settlements, non-settling parties generally have no standing to challenge the settlement."); *see also Iowa ex rel. Miller v. Block*, 771 F.2d 347, 353 (8th Cir. 1985) (no standing where State claimed that "agriculture production will suffer, which will dislocate agriculturally-based industries, forcing unemployment up and state tax revenues down"); *People ex rel. Hartigan v. Cheney*, 726 F. Supp. 219, 225 (C.D. Ill. 1989) ("Assuming, *arguendo*, that these injuries will occur, the harm will fall on the taxpayers and citizens of Illinois and not on the state *qua* state."); (Rec. Doc. 7747, *aff'g* Rec. Doc. 7480 (finding no organization may represent its members where the underlying form of relief at issue is money damages)).

[5] *See, e.g.*, *Price v. Housing Auth. of New Orleans*, No. 07-9741, 2008 WL 4449971, at *1 (E.D. La. 2008) ("Although he was one of the original class representatives in the lawsuit, he 'opted out' of the settlement and had no standing to object to its terms."); *Mayfield v. Barr*, 985 F.2d 1090, 1093 (D.C. Cir. 1993) (finding that class members who opted out lacked standing because by opting out, they "escaped the binding effect of the class settlement"); *Newberg on Class Actions* § 13:69 ("Named plaintiffs who opt out of a settlement have no standing to object to the settlement.").

making any objection to the Settlement, and binding them to the terms of the Settlement and orders and judgments in this matter.  (*Id.*)

These 12,970 purported objectors have forfeited and waived their objections.  *See* Exhibit L (listing the objectors who failed to comply with this requirement).  *See Little v. Shell Exploration & Prod. Co.*, 690 F.3d 282, 285 (5th Cir. 2012) (Constitutional standing mandates three elements:  "(1) an injury in fact, (2) that the injury *is fairly traceable to the challenged conduct*, and (3) that a victory in litigation will likely redress the injury.") (emphasis added); *see also Hosein v. Gonzales*, 452 F.3d 401, 404 (5th Cir. 2006) (per curiam) (meeting each of the three requirements is each *objector's* own inescapable and individualized burden).  This flaw also permeated the filings of the objecting counsel who appeared at the Fairness Hearing as well. Thus, fifty of Mr. Smith's clients, nine (out of ten) of Ms. Curtis's clients, and twenty-five (out of thirty) of Mr. Waltzer's clients failed to provide written proof of class membership and thus did not comply with the Court's Preliminary Approval Order.  *See* Exhibit L.

Several of the purported objectors failed to file procedurally valid objections for two or more of the reasons detailed above.  After carefully examining all the various filings, and measuring those filings against the Court's Order and the law, of the total number of purported objectors, only 599 made procedurally valid objections – *i.e.*, an objection that was timely, not made on behalf of a person or entity without standing to object, was not mooted by an opt out, which provided some evidence of membership in the Settlement Class, and where the objector had not previously signed a release in favor of BP.  *See* Exhibit M (listing the procedurally valid objectors).

## II.      OPT OUTS

The number of valid requests to opt out is likewise very small for a settlement of this size and scope.   As of November 15, 2012, a maximum of only 13,123 timely and valid opt out requests have been submitted by potential Class Members.   *See* Exhibit N (listing the procedurally valid opt outs).

Like the purported objections, a substantial portion of the purported "opt out" requests submitted suffer from a number of fatal defects and are not valid.   The Exclusions Department of the Settlement Program received a total of 25,866 submissions.   Ex. 2 ¶ 3.   Some of the submissions received, 2,117 in number, were duplicate submissions concerning the same potential class member, and thus did not represent any additional opt out requests. Ex. 2 ¶ 4.   As a result, there were 23,749 unique individuals and entities whose submissions were further reviewed to determine whether their requests to opt out were valid.   *See* Exhibit O (listing all non-duplicative submissions).

Nearly half of these submissions, however, failed to comply with the requirements of the Preliminary Approval Order, and thus are not valid requests to opt out of the Settlement Class, for one or more of the following reasons.

### A.      Thousands of the Requests Are Invalid "Mass" Opt Outs Signed Only by Counsel.

In order to help ensure that Class Members would be excluded from the Settlement Class only with their express, written and informed consent, the Court in its Preliminary Approval Order, expressly required opt out requests to be signed by the Class Member wishing to be excluded by the Settlement Class.   (Rec. Doc. 6418 ¶ 39.)   Opt out requests signed by an attorney are not valid. Yet 9,460 of the submissions are invalid because they were not signed by the individual or entity purportedly wishing to be excluded from the Settlement Class.   The vast

majority of these submissions, 9,296, were signed only by counsel purporting to act on behalf of purported Class Members.  And most of these "signatures" were not even done by counsel personally; instead, they were applied using what appears to be a rubber stamp of the lawyer's signature, which begs the question of whether even counsel – let alone the clients – executed these submissions with due consideration to each submission and each client's facts, circumstances, and interests.  *See* Exhibit P (listing all requests lacking proper signatures).  This clear requirement that class members must individually sign their opt-out requests is supported by widespread legal authority.[6]

---

[6] *See, e.g.*, *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 355 (6th Cir. 2009) ("Given the real risk that the attorney-signed opt-out forms did not reflect the wishes of class members, the district court appropriately exercised its power by requiring individually signed opt-out forms (and rejecting the attorney-signed forms)."); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2012 WL 92498, at *15 (E.D. La. Jan. 10, 2012) (Fallon, J.) ("The opt-out notice must be signed by the individual Class Member."); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL 1958, 2012 WL 5055810, at *9 (D. Minn. Oct. 18, 2012) (requiring *both* claimants and counsel (where individual counsel existed) to sign the opt-out form:  "The completed letter or opt-out form must be signed by the potential Settlement Class member having a legal interest in the property being opted out, even if represented by counsel.  If the Settlement Class member has entered into a written or oral agreement to be represented by counsel, the opt-out form must also be signed by the attorney."); *De Leon v. Bank of Am., N.A. (USA)*, 2012 WL 2568142, at *20 (M.D. Fla. Apr. 20, 2012) ("Exclusion requests must . . . be personally signed by the member of the Settlement Class who seeks to opt out . . . ."); *Olson v. Citibank (N.Y.)*, 2012 WL 1231787, at *2 (D. Minn. Apr. 12, 2012) ("For a Class Member's Opt–Out to be valid, it must . . . be signed by all borrowers on the Account . . . ."); *Turner v. Storm8, LLC*, 2010 WL 3037275, at * 2 (N.D. Cal. July 30, 2010) ("The Request to Opt Out must be signed by the Settlement Class Member . . . ."); *Russell v. United States*, 2010 WL 1691634, at *3 (N.D. Cal. Apr. 23, 2010) ("To opt out of the pending *Briggs* settlement, a class member had to have sent a letter to class counsel requesting exclusion from the settlement, (2) the letter had to have been signed by the class member . . . .");; *In re Ready-Mixed Concrete Antitrust Litig.*, 2007 WL 3334787, at *3 (S.D. Ind. Nov. 8, 2007) ("A request for exclusion from the Class must . . . be signed by the person or on behalf of the entity requesting exclusion . . . ."); *In re Dow Corning Corp.*, 2007 WL 1028644, at *1-2 (E.D. Mich. Mar. 31, 2007) ("The Settlement Facility sent Mr. Novak a letter dated January 11, 2005 stating, '[t]he election to opt-out was not signed by the Claimant as required by Annex A Settlement Facility Fund Distribution Agreement . . . .'  The plain and ordinary meaning of the word 'must' as set forth in Annex A of the Plan requiring Claimants to affirmatively elect to litigate and to sign the Participation Form is unambiguous.  As noted above, the word 'must' means the requirement is mandatory and is not discretionary . . . .  The Settlement Facility's determination in a January 11, 2005 letter to Mr. Novak that Ms. Novak's Claim would remain in the Settlement Program was not in error."); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 1579 (W.D. Wash. 2004) ("Each Class Member wishing to exercise an Opt–Out Right must submit a written letter, signed by the Class Member . . . ."); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 2003 WL 23162343, at *1 (E.D. Pa. Dec. 3, 2003) ("This opt-out right must be exercised individually, and a class member must personally sign the notice, not the class member's attorney."); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 2002 WL 31472781, at *21 (N.D. Ohio June 19, 2002) ("Each Class Member wishing to exercise an Opt–Out Right must submit a written letter, signed by the Class Member . . . ."); *Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478, 501 n.43 (E.D. Pa. 1995) ("I have concluded on two prior occasions that it is improper for counsel to file an opt-out form on behalf of their present or future clients.").

As with the objections, most of these invalid requests for exclusion were the product of "mass" filings by a few law firms.  In particular, there were four law firms that accounted for 99% – 9,179 – of the purported requests signed only by attorneys.  Thus:

- Brent Coon & Associates submitted 7,925 requests that contain what appear to be a rubber-stamped signature of Brent Coon without any signature of the person or entity Mr. Coon sought to exclude from the Settlement Class;

- The Mills Law Firm submitted 541 invalid requests containing only an attorney signature;

- Daniziger & De Lano, LLP submitted 528 invalid requests containing only an attorney signature; and

- Fibich, Hampton, Leebron, Briggs & Josephson LLP submitted 185 invalid requests containing either only an attorney signature or no signature at all.  100% of the Fibich firm's submissions were invalid for lack of a client signature.

*See* Exhibit P (listing all attorney-signed requests filed by these firms).  All of these requests to opt out of the Settlement are invalid.

**B.    Mr. Coon Has Acknowledged that Most of His Opt Out Requests Are Invalid and Has Expressly Endorsed the Settlement – at Least for Some of His Clients.**

Mr. Coon's approach to opt-outs warrants particular attention.  He has singlehandedly managed to demonstrate that the vast majority of the purported objectors to the settlement and attempted opt-outs provide no principled basis on which to reject this Settlement.

Mr. Coon first claimed to have "about 15,000 cases" and that he was "qualifying a number of them for the two class proposals," hence endorsing the Settlement for at least some of his clients.  Ex. 3 at 3 (8/6/12 E-mail string).  As noted above, over 5,500 of his clients have been registered to make claims and receive payments from the Settlement Program.  *See* Exhibit C.

But Mr. Coon then filed a mass objection that he claimed was submitted on behalf of "in excess of 13,000 clients" (Rec. Doc. 7224-1 at 7), but which in fact attached a list that contained

– once duplicates were removed – only 11,245 purported clients – ***including the 5,500 registered Settlement Program participants***.  (Rec. Doc. 7224-2.)  Contrary to Paragraph 38 of this Court's Preliminary Approval Order, however, he provided no written proof of class membership whatsoever for ***any*** of these purported objectors.

Not content with simultaneously seeking payments under the Settlement Program and objecting to the Settlement, Mr. Coon then attempted to opt out some 8,861 persons and entities from the Settlement by sending a letter and a list of names to the Exclusions Department of the Settlement Program in which he variously purported to "opt out" the listed clients while simultaneously "reserv[ing] their rights" to participate in the Settlement, and to "protest, object, and appeal" further proceedings with regard to the Settlement.  Ex. 4 at 1-2 (10/31/12 Letter and Attachments).  He also admitted in his letter than many of his clients had not signed their opt-out requests as required by the Court's Order, claiming his clients were "difficult to reach" and that the requirement of a client signature was "onerous and unnecessary."  *Id.* at 3.  Mr. Coon also acknowledged that his "clients" may well submit forms themselves, or that other counsel might do so, and that there might be more "last minute" requests – all of which he promised to sort out in further filings, presumably after the Court's deadline has passed.  *Id.*

After the dust settled, it was revealed that Mr. Coon has sponsored a total of 10,821 opt-out requests, but only 2,440 of those requests were signed by the individual or entity seeking exclusion, and that otherwise were not invalid on any other basis or subsequently revoked.  *See* Exhibits N & O, *supra*.

Confused by Mr. Coon's simultaneous efforts to make claims, object, and opt out – often on behalf of the same clients – Class Counsel contacted Mr. Coon asking him to clarify his position, and seeking to clarify if he was "opting out" all his objectors.  Ex. 5 at 3-4 (11/5/12 E-

mail string).  Mr. Coon replied by confirming that the names on his opt out list "pretty much match the list of objectors."  *Id.* at 2.  In response, Class Counsel noted that this would moot his objections.  *Id.* at 2.  Mr. Coon then answered by endorsing the very Settlement he was both objecting to and opting-out from:  "Don't get me wrong.  ***I agree that this class proposal is good for some clients, even without any changes***.  Even now we have encouraged some clients to stay the course …."  *Id.* at 1 (emphasis added).  He then went on to acknowledge his failure to comply with the Court's Preliminary Approval Order, and did nothing to resolve the confusion – much less what would appear to be a conflict of interest:

> First, we have people who have chosen to stay in the class, some with, and some without, our recommendations.  That group I presume retains standing.  Second, there are several thousand of our clients who did not file an individual hand signed original opt out form.  I understand the present court orders are to ignore any of them that were not filed in original and hand signed format.  If that is the case, then I have all of those still in the objector status.  That list was also provided to you all last week and I can send it again. Meantime, I will start culling our caseload to more specifically identify those in the first category, still in the class with no opt out filed individually or by our firm.  *Id.*

Mr. Coon's position then took an even more unusual turn when, on November 16, 2012 – eight days after the Fairness Hearing – his firm issued a statement (discussing the Black Elk Energy rig fire) in which his firm touted the benefits of the *Deepwater Horizon* Settlement and claimed to take credit for it:

> [Brent Coon & Associates ("BCA")] now represents over 12,000 people who were injured aboard the 2010 Deepwater Horizon rig explosion or who suffered economic losses as a result of the ensuing oil spill in the Gulf of Mexico.  BCA serves as the head of several key discovery committees for the Plaintiffs' Steering Committee and ***[BCA] played an instrumental role in helping create a $7.8 billion settlement program to compensate many residents along the Gulf Coast who suffered losses as a result of the spill.***  Ex. 6 (emphasis added).[7]

---

[7] Class Counsel note that, while Mr. Coon initially volunteered to act as one of several Co-Coordinators of a limited Work Group that was thought to potentially benefit from his claimed experience in the Texas City litigation, Mr. Coon did not ever take a deposition, prepare an expert or otherwise contribute to the *Deepwater Horizon* discovery effort in any meaningful way.  Nor was Mr. Coon consulted or in any way relied upon with respect to the negotiation or development of the Settlement Agreement.

14

The record is clear in one respect:  Mr. Coon has no definitive position with regard to this Settlement.  He has simultaneously claimed to be responsible for it, objected to it, opted-out of it, and endorsed it.  His objections should be overruled on this basis alone.  Most of his opt-out requests are invalid because they are not in compliance with the Court's Order.  And, as he suggests, the bottom line is that the Settlement is good for various of his clients and the Class.

## C.   Several Requests Failed to Express an Intent to Opt Out.

Of the 23,749 non-duplicative submissions received from unique individuals and entities, 126 did not contain an expression of intent to be excluded from the Settlement Class.  *See* Exhibit Q (listing all requests that failed to request exclusion).  *Holmes v. CSX Transp.*, 1999 WL 447087, at *3 (E.D. La. June, 24, 1999) ("Rule 23(c)(2) does not specify how a class member is to request exclusion from the class. The Fifth Circuit has held that some communication of the member's intent must be received by the court prior to the entry of judgment.") (citing *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088 (5th Cir. 1977)). Several of these 126 submissions requested assistance with claims processing or concerned other issues.

## D.   Several Requests Were Untimely.

Eighty-three purported opt-out requests were untimely and therefore invalid.  Seventy-nine of these requests were postmarked after the November 1, 2012 opt-out deadline.  An additional four bore no legible postmark at all but were presumed to be postmarked after November 1, 2012, because they were not received until after November 6, 2012.[8]  Exhibit R (listing all late requests). *Silvercreek Mgmt., Inc. v. Bank of America Sec. LLC*, 534 F.3d 469, 473 (5th Cir. 2008) (district court did not have to extend opt-out date to accommodate party who

---

[8] Opt-out submissions that lacked a legible postmark but were received by November 6, 2012, were deemed to be timely.

had missed it); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liability*, 92 Fed. Appx. 890, 895 (3d Cir. 2004) (district court was correct to enjoin litigating a settled claim because "the fact remains that [plaintiff] failed to file the initial opt-out form by the March 30, 2000 deadline").

**E.      Several Requests Were Made By Persons or Entities Who Had Already Released BP.**

At least 1,552 of the submissions were made by individuals or entities that had previously released their claims against BP.  *See* Exhibit S (listing all requests by prior releasers of BP). (*See* Rec. Doc. 7615 (denying motions to nullify GCCF releases)); *see also Hartley v. Stamford Towers, Ltd. Partnership*, 1994 WL 463497, at *6 (9th Cir. Aug. 26, 1994) ("When an individual is properly noticed as a class member, chooses not to opt out of the class, and accepts the settlement payment, she must abide by the complete terms and spirit of the release of claims contained in the judgment.").  Some of these individuals and entities have been paid and signed releases under the GCCF process, and thus are identifiable non-class members.  Others released their claims in the CSSP process and therefore cannot opt out from a process they have already voluntarily entered and completed.  *See* Settlement Agreement § 4.4.8.

**F.      Several Opt Outs Have Already Been Revoked and More Will Likely Be Revoked.**

As of November 15, 2012, 321 written revocations of opt out requests have been received, some of which may have been to revoke opt out requests that were not valid in the first place.  *See* Exhibit T (listing all such revocations).  This number of revocations will no doubt increase as additional revocations are received before the newly extended deadline for revocations of December 15, 2012.  (*See* Rec. Doc. 7928 (Nov. 16, 2012 Order extending the revocation deadline.))

* * *

16

Based upon the record and taking account of the various factors discussed above, the Settlement Program has received a total of only 13,123 opt-out requests from potential Class Members as of November 15, 2012, that comply with the Court's requirements for requesting exclusion from the Settlement Class.  *See* Exhibit N

Note that the "true" number of valid opt outs is necessarily lower.  Why?  Because in many cases it is not possible to determine based on the information submitted by potential Class Members in connection with their opt-out requests whether the individual or entity is, in fact, a member of the Settlement Class, either because of a prior release or due to some other reason, such as an industry exclusion, geographic exclusion, or not meeting one or more of the other criteria for membership in the Settlement Class.  Thus an unknown portion of the total number of timely and valid requests to opt out of the Settlement Class were likely submitted by individuals or entities that are not members of the Settlement Class and are of no practical or legal effect, thus further reducing the actual number of fully valid opt-out requests.[9]

## CONCLUSION

The few procedurally valid objections to, and requests to opt-out of, the Settlement are powerful evidence of its fairness, reasonableness, and adequacy.  Accordingly, the Court should approve the proposed Settlement.

---

[9] Based on preliminary work by counsel it appears that over 20% of the individuals and entities that submitted timely and valid opt outs provided addresses that are outside of any class zone, suggesting the likelihood that many of these may not be class members.

November 21, 2012                          Respectfully submitted,

  _/s/ Stephen J. Herman_                      _/s/ James Parkerson Roy_

Stephen J. Herman, La. Bar No. 23129      James Parkerson Roy, La. Bar No. 11511
HERMAN HERMAN KATZ & COTLAR               DOMENGEAUX WRIGHT ROY & EDWARDS
LLP                                       LLC
820 O'Keefe Avenue                        556 Jefferson Street, Suite 500
New Orleans, Louisiana 70113              Lafayette, Louisiana 70501
Telephone: (504) 581-4892                 Telephone: (337) 233-3033
Fax No. (504) 569-6024                    Fax No. (337) 233-2796

Lead Economic and Property Damages        Lead Economic and Property Damages
Class Counsel                             Class Counsel

### *ECONOMIC AND PROPERTY DAMAGES CLASS COUNSEL*
_____

Joseph F. Rice                            Conrad S.P. "Duke" Williams
MOTLEY RICE LLC                           WILLIAMS LAW GROUP
28 Bridgeside Blvd.                       435 Corporate Drive, Suite 101
Mount Pleasant, SC 29464                  Maison Grand Caillou
Office:  (843) 216-9159                   Houma, LA 70360
Telefax: (843) 216-9290                   Office:  (985) 876-7595
                                          Telefax: (985) 876-7594

Brian H. Barr                             Robin L. Greenwald
LEVIN, PAPANTONIO, THOMAS,                WEITZ & LUXENBERG, PC
MITCHELL, ECHSNER & PROCTOR, PA           700 Broadway
316 South Baylen St., Suite 600           New York, NY  10003
Pensacola, FL 32502-5996                  Office:  (212) 558-5802
Office:  (850) 435-7045                   Telefax: (212) 344-5461
Telefax: (850) 436-6187

Jeffrey A. Breit                          Rhon E. Jones
BREIT DRESCHER IMPREVENTO &               BEASLEY, ALLEN, CROW, METHVIN,
WALKER, P.C.                              PORTIS & MILES, P. C.
999 Waterside Drive, Suite 1000           218 Commerce St., P.O. Box 4160
Norfolk, VA 23510                         Montgomery, AL 36104
Office:  (757) 670-3888                   Office:  (334) 269-2343
Telefax: (757) 670-3895                   Telefax: (334) 954-7555

18

Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Office:  (415) 956-1000
Telefax: (415) 956-1008

Philip F. Cossich, Jr.
COSSICH, SUMICH, PARSIOLA &
TAYLOR
8397 Highway 23, Suite 100
Belle Chasse, LA  70037
Office:  (504) 394-9000
Telefax: (504) 394-9110

Robert T. Cunningham
CUNNINGHAM BOUNDS, LLC
1601 Dauphin Street, P. O. Box 66705
Mobile, AL  36660
Office:  (251) 471-6191
Telefax: (251) 479-1031

Alphonso Michael "Mike" Espy
MORGAN & MORGAN, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Office: (601) 949-3388
Telefax: (601) 949-3399

Calvin C. Fayard, Jr.
FAYARD & HONEYCUTT
519 Florida Avenue, SW
Denham Springs, LA  70726
Office:  (225) 664-4193
Telefax: (225) 664-6925

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Office: (305) 476-7400
Telefax: (305) 476-7444

Matthew E. Lundy
LUNDY, LUNDY, SOILEAU & SOUTH,
LLP
501 Broad Street
Lake Charles, LA  70601
Office:  (337) 439-0707
Telefax: (337) 439-1029

Michael C. Palmintier
deGRAVELLES, PALMINTIER,
HOLTHAUS & FRUGÉ
618 Main Street
Baton Rouge, LA  70801-1910
Office:  (225) 344-3735
Telefax: (225) 344-0522

Paul M. Sterbcow
LEWIS, KULLMAN, STERBCOW &
ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA  70130
Office:  (504) 588-1500
Telefax:  (504) 588-1514

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
Office:  (214) 521-3605
Telefax: (214) 599-1172

Mikal C. Watts (PSC)
WATTS GUERRA CRAFT, LLP
Four Dominion Drive, Building 3, Suite 100
San Antonio, TX 78257
Office: (210) 447-0500
Telefax: (210) 447-0501

19

| | |
|---|---|
| | _/s/ Richard C. Godfrey, P.C_ |
| James J. Neath | Richard C. Godfrey, P.C. |
| Mark Holstein | J. Andrew Langan, P.C. |
| BP AMERICA INC. | Wendy L. Bloom |
| 501 Westlake Park Boulevard | Andrew B. Bloomer, P.C. |
| Houston, TX  77079 | Timothy A. Duffy, P.C. |
| Telephone:  (281) 366-2000 | R. Chris Heck |
| Telefax:  (312) 862-2200 | Christopher J. Esbrook |
| | KIRKLAND & ELLIS LLP |
| Daniel A. Cantor | 300 North LaSalle Street |
| Andrew T. Karron | Chicago, IL 60654 |
| Ellen K. Reisman | Telephone:  (312) 862-2000 |
| Matthew J. Douglas | Telefax:  (312) 862-2200 |
| ARNOLD & PORTER LLP | |
| 555 Twelfth Street, NW | Jeffrey Bossert Clark |
| Washington, DC 20004 | Steven A. Myers |
| Telephone:  (202) 942-5000 | KIRKLAND & ELLIS LLP |
| Telefax:  (202) 942-5999 | 655 Fifteenth Street, N.W. |
| | Washington, D.C. 20005 |
| Jeffrey Lennard | Telephone:  (202) 879-5000 |
| Keith Moskowitz | Telefax:  (202) 879-5200 |
| SNR DENTON | |
| 233 South Wacker Drive | _/s/ Don K. Haycraft_ |
| Suite 7800 | Don K. Haycraft (Bar #14361) |
| Chicago, IL  60606 | R. Keith Jarrett (Bar #16984) |
| Telephone:  (312) 876-8000 | LISKOW & LEWIS |
| Telefax:  (312) 876-7934 | 701 Poydras Street, Suite 5000 |
| | New Orleans, Louisiana 70139 |
| **_OF COUNSEL_** | Telephone:  (504) 581-7979 |
| | Telefax:  (504) 556-4108 |
| | |
| | Robert C. "Mike" Brock |
| | COVINGTON & BURLING LLP |
| | 1201 Pennsylvania Avenue, NW |
| | Washington, DC 20004 |
| | Telephone:  (202) 662-5985 |
| | Telefax:  (202) 662-6291 |

**_ATTORNEYS FOR BP EXPLORATION & PRODUCTION INC.
AND BP AMERICA PRODUCTION COMPANY_**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing pleading has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 21st day of November 2012.

<u>/s/ Don K. Haycraft</u>
Don K. Haycraft