UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG "DEEPWATER HORIZON" IN THE GULF OF MEXICO, ON APRIL 20, 2010 | § § § § | MDL NO. 2179<br>SECTION: J |
| THIS PLEADING APPLIES TO: ALL CASES | § § § § | JUDGE BARBIER<br>MAGISTRATE JUDGE SHUSHAN |

**MEMORANDUM IN SUPPORT OF TRANSOCEAN'S MOTION TO STRIKE**

The PSC's examination of Transocean's Phase II 30(b)(6) witness, Robert Turlak, focused almost exclusively on Phase I discovery issues. The examination was outside the scope of the notice and was contrary to Judge Barbier's September 18, 2012 Order. The PSC's conduct is all the more troubling because the PSC had the opportunity to depose - and indeed did depose - Mr. Turlak during Phase I. For these reasons, Transocean asks that the Court strike certain portions of Mr. Turlak's testimony (*see* attached chart) and to award attorneys' fees and costs for Transocean's time in defending Mr. Turlak against the PSC's examination and for preparing this motion.

**I.    ARGUMENT**

On September 18, 2012, Judge Barbier expressly stated what all the parties already understood to be the case – Phase I had ended and the Court did not intend to permit discovery to be further reopened. *See* Exhibit A. If any doubt remained at that point, Judge Barbier removed it with his order. The Court stated: ***"The Court advises counsel and the parties that it does not intend to permit discovery to be further reopened with respect to Phase I issues."*** Despite the clear guidance, the PSC's examination of Mr. Turlak ran afoul of the Court's order and sought discovery on the following Phase I issues:

- BOP Maintenance;

- Calculation of Maximum Anticipated Surface Pressure (MASP);

- BOP Suitability;

- Well Control Events;

- Performance Reviews;

- BOP batteries and solenoids;

- Diverting to the Mud Gas Separator;

- Operation of the EDS;

- Installation of Tandem Boosters;

- Crane Safety;

- Designation of Responsibility between the OIM and Master;

- AMF operation; and

- Shearing Calculations.

*See* Exhibit B; Chart Identifying the Testimony and Issues to be Stricken from PSC's examination.

All of these issues – on their face – fall outside the scope of any of Mr. Turlak's **42** Phase II topics on which he was prepared to offer testimony. *See* Transocean's deposition notice; attached as Exhibit C.

During the deposition, Transocean's counsel instructed Mr. Turlak not to answer questions related to Phase I issues. Transocean's objections were raised with Judge Shushan on the second day of the deposition during a telephonic hearing. Judge Shushan ruled that the PSC's examination could continue under Transocean's objections and that Transocean's objections would be preserved.

At this point in the pretrial proceedings, all counsel are keenly aware of the evidentiary differences between Phase I, II, and III.  Even a casual observer to the case would recognize and categorize the following questions as solely related to Phase I liability issues – and yet they were asked in Mr. Turlak's Phase II deposition:

> Q: When the Yellow Pod was reinstalled – and by the way, the Solenoid 103Y was changed in the Yellow Pod when it was pulled in early May, correct?
>
> Q: Do you have – do you know – do you now know whether Solenoid 103Y was wired correctly or not?
>
> Q: So you're saying Solenoid 103Y was not wired correctly on the Yellow Pod, correct?
>
> Q: At that point in time, did you know whether the AMF has been – was armed at the time of the disaster?
>
> Q: What is the policy of Transocean with respect to whether the AMF should have been armed or not?
>
> Q: Can you tell me the Chain of Command on the rig of who the Senior Subsea Engineer reports to?
>
> Q: So you don't know how many shear rams it had or the how the EDS system was set up or how the AMF was set up.  You don't have personal knowledge of that?
>
> Q: The AMF fed the blind shear rams, the EDS fed to the blind shear rams, and the high pressure blind shear function fed to the blind shear rams on the HORIZON, correct?
>
> Q: Have you ever heard of the term "Maximum Anticipated Surface Pressure"?
>
> Q: Does it have anything to do with the capacity of a blowout preventer?
>
> Q: Would – would MASP for a blowout preventer in 5,000 feet of water, would that affect the capability of the blowout preventer to shear and seal a well?
>
> Q: Do you agree with that sentiment, that miscalculation of MASP could cause the BOP, an emergency piece of equipment, to become underrated in an emergency?

Indeed, each of these topics was covered during Mr. Turlak's Phase I deposition, taken on September 28, 2011:

3

> Q: Would a – a full function test include testing of the AMF system?
>
> Q: And do you know whether it would include functioning or testing of the Control Pod batteries?
>
> Q: And based on your description that you did give, do you know whether it's – whether a full function test would include functioning of the shear rams with the use of the solenoid valve?
>
> Q: Do you have an understanding of how a function test to close the blind shear rams would be performed on the rig?
>
> Q: Have you ever performed a function test on the solenoids used in the Cameron Control Pods?

The PSC apparently intends to argue that it can question a Phase II witness on any Phase I topic or document so long as it asks whether that topic or document was considered by Transocean in its "Emergency Response Plan". As follows are a few illustrative examples:

> Q. Did anyone in Transocean, after Mr. Polhammus wrote this E-mail on June 1st, 2008 [relating to?], use this information to update, modify, change, or revise their Emergency Response Planning?
>
> Q: Was that [also a reference to an email discussing crane training] given any consideration when Transocean was thinking about what its Emergency Response Plan should be for a blowout?
>
> Q: Did you ever take into account that every emergency BOP actuation went to one single component when you were thinking about your Emergency Response Plan?
>
> Q: Did the capacity of the BOP ever get considered by Transocean when Transocean was deciding what sort of Emergency Response Plan it would have on the Macondo Well?

The PSC cannot plausibly argue that the questioning of Mr. Turlak on Phase I issues was reasonably calculated to lead to the discovery of admissible evidence on any Phase II issue. The only Phase Two 30(b)(6) topic relevant to the PSC's phrase "Emergency Response Planning" is Topic 27, which covers "[a]ll Transocean planning, preparations, discussions, evaluations and/or

4

training with regard to a "worst Case Scenario" well control / hydrocarbon discharge event, or an uncontrolled release of hydrocarbons subsea into the Gulf of Mexico prior to April 20, 2010." But there is no plausible link between that topic and the PSC's Phase I questions, such as "Do you have - do you know - do you now know whether Solenoid 103Y was wired correctly or not?" Rather, the Court can only conclude that the PSC is attempting to redirect its Phase I evidentiary efforts against Transocean now that the PSC has settled with BP. Whatever the interest and direction of the PSC, its actions contravene the Order of this Court.

**II.   CONCLUSION**

Transocean has always resisted involvement of the Court in discovery disputes. But the PSC's attempt to pursue Phase I discovery in Phase II depositions, if left unchecked, would prejudice the other parties and could require a slew of new Phase I discovery. The PSC's approach is fundamentally unfair for the parties who have obeyed the Court's prohibition on reopening Phase I discovery in the more than 50 Phase II 30(b)(6) depositions that have occurred to date. The Court and Judge Barbier have made clear that the time for Phase I discovery has passed and that it will not permit – under any circumstances – the parties to reopen discovery with respect to Phase I issues. The PSC's conduct in Mr. Turlak's deposition violates Judge Barbier's Order and took advantage of this Court's allowance (during the deposition) for the PSC to cover what the PSC represented would be Phase II issues. As is made clear from the testimony highlighted for exclusion, the PSC blatantly pursued Phase I discovery in a Phase II deposition and their attempts to mask those questions in the guise of questions about "Emergency Response Plans" is an obvious obfuscation.

As such, Transocean requests that the offered testimony be stricken and that the PSC be made to pay Transocean's attorney fees and costs associated with preparing and presenting Mr. Turlak and for filing its Motion to Strike.

5

Respectfully submitted,

/s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Kent C. Sullivan (Texas, No. 19487300)
David A. Baay (Texas, No. 24027050)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Email: steven.roberts@sutherland.com,
rachel.clingman@sutherland.com,
kent.sullivan@sutherland.com,
david.baay@sutherland.com

By:   /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com
Facsimile: (713) 654-1301

/s/*Luis Li*
Luis Li (California, No. 156081)
Grant A. Davis-Denny (California, No. 229335)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: Grant.Davis-Denny@mto.com, luis.li@mto.com

*Counsel for Transocean*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on November 28, 2012.

/s/ Kerry J. Miller