# EXHIBIT A

# DEEPWATER HORIZON
## CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| | **INSTRUCTIONS FOR COMPLETING THE FULL AND FINAL RELEASE, SETTLEMENT, AND COVENANT NOT TO SUE** |
|---|---|
| | This is an official communication from the Claims Administrator for the Deepwater Horizon Economic and Property Damages Settlement Program ("Settlement Program"). We processed your claim and determined that you qualify for a Settlement Payment ("Payment") for one or more of the claims you submitted. To receive your Payment, you must sign the attached Full and Final Release, Settlement, and Covenant Not to Sue ("Release") and return it to us. |
| **1.** | ***Release Cover Sheet.*** The Release Cover Sheet contains information you previously submitted. If any of the information on the Release Cover Sheet is incorrect or missing, correct or provide the missing information directly on the Release Cover Sheet and return it to us using one of the methods set out in Section 7 below. |
| **2.** | ***Required Signatures for Individual Claimants.*** You must sign this Release personally in three places—Page 3, Page 18, and Page 25. If you are married, your spouse must sign personally in each place as well. If you are signing as the personal representative, guardian, trustee or other authorized representative of an individual claimant, or if you are the bankruptcy Trustee for a claimant who is a party in an open bankruptcy proceeding, sign the claimant's name and your name in the claimant signature section. The signature must read "[claimant's name], by [your signature]." Also complete Section III of the Release Cover Sheet and submit to us the required documentation demonstrating your authority to sign on behalf of the claimant, if you have not already done so. |
| **3.** | ***Required Signatures for Business Claimants.*** Business Claimants must designate an authorized signatory who may sign on behalf of the business. The authorized signatory must sign in three places—Page 3, Page 18 and Page 25. If the business is a sole proprietorship and the sole proprietor is married, or if spouses jointly own a business and filed a claim for that business, both spouses must sign in each place as well. If you are signing as the trustee or authorized representative for a dissolved business or a business that is the current subject of an open bankruptcy proceeding, print the business's claimant's name and then sign your name in the claimant signature section. The signature must read "[business name], by [signer's name]." Also complete Section III of the Release Cover Sheet and submit the required documentation demonstrating your authority to sign on behalf of the claimant, if you have not already done so. |
| **4.** | ***Consult with your Attorney.*** The Release affects your legal rights, and by signing the Release you are giving up your right to sue BP and other parties. Read these Instructions and the Important Information section before signing this Release. If you are represented by an attorney in connection with your claim, consult with your attorney regarding the terms of the Release. |
| **5.** | ***Original Release Required.*** Return the original, signed Release to us. We cannot accept facsimiles, PDFs, or copies of a signed Release. You must return all 25 pages of the Release (the Cover Page through Attachment B) before we can pay your claim. |

# DEEPWATER HORIZON
## CLAIMS CENTER
#### ECONOMIC & PROPERTY DAMAGE CLAIMS

| | |
|---|---|
| | **INSTRUCTIONS FOR COMPLETING THE FULL AND FINAL RELEASE, SETTLEMENT, AND COVENANT NOT TO SUE** |
| **6.** | ***No Modifications and No Deletions.***  Do not strike through or otherwise try to alter any of the language in the Release, except for corrections to information that you make on the Release Cover Sheet.  If you alter the Release or fail to submit all 24 pages of the Release, we will not be able to pay your claim. No contractual agreement to settle your claim arises until we receive a properly signed Release. |
| **7.** | ***Additional Requirements for Claimants Electing Structured Settlements.***  If you are electing to receive a structured settlement for all or part of your Payment, then Attachment C to the Release must also be signed and submitted with your Release (Attachment C is available at www.deepwaterhorizoneconomicsettlement.com/structuredsettlement.php).  You must follow the instructions for submission of Attachment C on your Eligibility Notice.  If you fail to follow the instructions on your Eligibility Notice or fail to include Attachment C to the Release (including all required signatures, information and documentation), then you will not be eligible to receive a structured settlement. |
| **8.** | ***Submission of Original Signed Release.***  Submit the entire original signed Release and any required documentation in one of the following ways:<br><br>**By Mail:**<br>Deepwater Horizon Economic Claims Center<br>PO Box 1439<br>Hammond, LA 70404-1439<br><br>**By Overnight Delivery, Certified or Registered Mail**<br>Deepwater Horizon Economic Claims Center<br>c/o Claims Administrator<br>42548 Happy Woods Road<br>Hammond, LA 70403<br><br>**Visit a Claimant Assistance Center:**<br>You may take the signed Release to a Claimant Assistance Center.  Visit www.deepwaterhorizoneconomicsettlement.com for a list of Claimant Assistance Centers, or call 1-866-992-6174. |

# DEEPWATER HORIZON
## CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| RELEASE COVER SHEET |
|---|

## I. INDIVIDUAL CLAIMANT INFORMATION

| **Name:** | Last | First | Middle Initial |
|---|---|---|---|

| Social Security Number/ Individual Taxpayer Identification Number: | |
|---|---|

| **Spouse Name:** | Last | First | Middle Initial |
|---|---|---|---|

| Spouse Social Security Number/ Individual Taxpayer Identification Number: | |
|---|---|

## II. BUSINESS CLAIMANT INFORMATION

| **Name of Business:** | |
|---|---|

| Employer Identification Number/ Social Security Number: | |
|---|---|

| **Authorized Business Representative** | Last | First | Middle Initial |
|---|---|---|---|
| | Title | | |

| Authorized Business Representative Social Security Number/ Individual Taxpayer Identification Number: | |
|---|---|

| **Spouse Name:** | Last | First | Middle Initial |
|---|---|---|---|

| Spouse Social Security Number/ Individual Taxpayer Identification Number: | |
|---|---|

## III. INFORMATION ABOUT THE CLAIMANT REPRESENTATIVE

If the claimant is: (1) deceased; (2) a minor; or (3) incompetent and legally unable to sign for himself or herself, you must submit documentation to the Claims Administrator showing your authority to act on behalf of the claimant, if you have not already done so.  See Section 4 of the Registration Form Instructions Booklet for a description of the required documentation.

| **Representative Name:** | Last | First | Middle Initial |
|---|---|---|---|

| Representative Social Security Number/ Individual Taxpayer Identification Number: | |
|---|---|

| **The claimant is:** | ☐ Deceased   ☐ Incompetent   ☐ Declared Bankrupt (or currently<br>☐ A Minor   ☐ A Dissolved Business      undergoing Bankruptcy Proceedings) |
|---|---|
| **Source of your authority to act as representative for the claimant:** | ☐ Court Order   ☐ Power of Attorney   ☐ Letters of Administration<br>☐ Tutorship   ☐ Conservatorship   ☐ Guardianship   ☐ Other (specify): _____ |

## IV. PAYMENT INFORMATION

| **Claimant ID:** | | **Claim Type:** | |
|---|---|---|---|
| **Claim ID:** | | **Payment Amount:** | $ |

DEEPWATER HORIZON
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

**IMPORTANT INFORMATION ABOUT THE ATTACHED FULL AND FINAL RELEASE, SETTLEMENT, AND COVENANT NOT TO SUE**

*All claimants have the right to consult with an attorney of their own choosing prior to accepting any settlement payment or signing a release of legal rights. If you are represented by an attorney in connection with your claim, confer with your attorney before signing this document.*

The attached Full and Final Release, Settlement, and Covenant Not to Sue ("Individual Release") is a binding legal document. By signing this document, you are forever waiving and releasing all claims that you may have against BP or any other party in connection with the Deepwater Horizon Incident (as defined in the Individual Release) except for Expressly Reserved Claims (as defined in the Individual Release).

**By signing the attached Individual Release, you are forever giving up and discharging any rights that you may have for any costs, damages, causes of actions, claims, or other relief related to or arising from the Deepwater Horizon Incident except for Expressly Reserved Claims even if you are not currently aware of such costs or damages and even if such costs or damages arise in the future (i.e., additional oil impacts) or do not manifest themselves until the future.**

By signing the attached Individual Release, you acknowledge that you have read and understand the terms of the Individual Release, and that you execute the Individual Release voluntarily and without being pressured or influenced by, and without relying upon, any statement or representation made by any person acting on behalf of BP or any other released party.

The settlement payment you have been offered arises under the auspices of the federal District Court in New Orleans presiding over the multidistrict litigation titled *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (MDL No. 2179). A class action settlement has been proposed in that case, but the Court has not yet given final approval of that proposed settlement. If the Court does approve the proposed class action settlement, an appellate court could reverse the approval. In addition, it is possible that the terms of the proposed settlement may change in the future—for better or for worse—as a result of further legal proceedings. However, if you sign this Individual Release, none of those uncertain future events will affect you. **By signing this Individual Release you are forever waiving and releasing all claims that you may have against BP (except for Expressly Reserved Claims) in exchange for the compensation being provided**. In fact, even if the Court does not approve the proposed class action settlement agreement or the approval is reversed by an appellate court, you shall continue to be bound by this Individual Release.

For a Business Claimant, if the business is a sole proprietorship and you are the owner and you are married, or if the business is jointly owned by you and your spouse, both you and your spouse must sign the Individual Release. For an Individual Claimant, if you are married, both you and your spouse must sign the Individual Release. You and your spouse should not sign the Individual Release unless you both intend to release and give up all of your claims.

By signing below, you acknowledge that you have read and understand the information above.  You elect to accept the payment as a final settlement of all claims against any party in connection with the Deepwater Horizon Incident except for Expressly Reserved Claims.  You consent to the use and disclosure by the Claims Administrator and those assisting the Claims Administrator of any information that the Claims Administrator believes necessary and/or helpful to process your claim for compensation and payment and to any legitimate business purposes associated with administering the settlement facility.  Finally, you consent to the Claims Administrator providing documentation and information to Lead Class Counsel, BP, and the Court as provided for in the Settlement Agreement.

## ACKNOWLEDGMENT

I/We acknowledge that I/we have read and understand the information above. I/We consent to the claimant's election to accept the payment as a final settlement of all claims of claimant against any party in connection with the Deepwater Horizon Incident except for Expressly Reserved Claims.

_____    _____

Signature of Claimant                                                                          Date

_____    _____

Signature of Claimant's Spouse                                                        Date

**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

## FULL AND FINAL RELEASE, SETTLEMENT, AND COVENANT NOT TO SUE

1. **Definitions.** For purposes of this **Individual Release**, the following definitions shall apply, and in the case of defined nouns, the singular shall include the plural and vice versa:

   (a) "**Affiliate**" means with respect to any **Natural Person** or **Entity**, any other **Natural Person** or **Entity** that directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, such **Natural Person** or **Entity**.

   (b) "**Assigned Claims**" means the claims defined in Exhibit 21 to the **Settlement Agreement**.

   (c) "**Bodily Injury Claims**" means claims and damages, including lost wages, for or resulting from personal injury, latent injury, future injury, progression of existing injury, damage, disease, death, fear of disease or injury or death, mental or physical pain or suffering, or emotional or mental harm, anguish or loss of enjoyment of life, including any claim for mental health injury, arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**.

   (d) "**BP**" means BP Exploration & Production Inc., BP America Production Company, BP America Inc., BP Company North America Inc., BP Corporation North America Inc., BP Corporation North America Inc. Savings Plan Investment Oversight Committee, BP Energy Company, BP Exploration (Alaska) Inc., BP Global Special Products (America) Inc., BP Holdings North America Limited, BP p.l.c., BP Products North America Inc., and each of their respective direct or indirect parents, subsidiaries and subsidiary undertakings (as those terms are defined in the U.K. Companies Act 2006), **Affiliates**, divisions, and business units.

   (e) "**Claim**" means any demand or request for compensation (other than **Bodily Injury Claims** or **Expressly Reserved Claims**), together with any properly completed forms and accompanying required documentation, submitted by a **Claimant** to the **Settlement Program**.

   (f) "**Claimant**" means any **Natural Person** or **Entity** that submits a **Claim** to the **Settlement Program** seeking compensation as a member of the **Economic Class**.

   (g) "**Claims Administrator**" is the person Court-appointed in the **MDL Action** to administrator this **Settlement Program** and that person's agents.

   (h) "**Coastal Real Property**" means property in the **Coastal Real Property Claim Zone**.

   (i) "**Coastal Real Property Claim Framework**" means that process described in the document captioned Coastal Real Property Claim Framework, attached as Exhibit 11A to the **Settlement Agreement**.

   (j) "**Coastal Real Property Claim Zone**" means the areas identified on the Coastal Real

Property Compensation Zone Map included with the **Coastal Real Property Claim Framework**.

(k)     "**Coastal Real Property Damage**" means a loss to **Real Property** claimed to have been suffered by a **Coastal Real Property** owner or lessee in the **Coastal Real Property Claim Zone** allegedly arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident** that is separate from **Seafood Compensation Program**, **Economic Damage**, **Real Property Sales Damage**, **Wetlands Real Property Damage**, **VoO Charter Payment**, **Vessel Physical Damage** and **Subsistence Damage**, and is more fully described in Exhibit 11A to the **Settlement Agreement**.

(l)     "**Compensatory Damages**" means any and all forms of damages, known or unknown, intended to or having the effect of satisfying, compensating, or reimbursing **Claimant**'s claims for actual economic or pecuniary costs, expenses, damages, liability, or other losses or injuries arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**, regardless of what such damages are designated, called or labeled. **Compensatory Damages** do not include and may not be interpreted to have any overlap with punitive, exemplary, multiple, or non-compensatory damages. **Bodily Injury Claims** (including wrongful death) are not included in **Compensatory Damages**. Claims of **BP** shareholders in any derivative or direct action solely in their capacity as **BP** shareholders are not included in **Compensatory Damages**. **BP** and **Claimant** acknowledge and agree that the term **Compensatory Damages** as defined and used herein does not limit the amounts to be used for the calculation of punitive or other non-compensatory damages in any current or future litigation pursued by **Claimant**. Nothing herein shall be deemed to limit **Claimant's** rights to pursue Moratoria Losses or other claims expressly reserved against BP under Section 3 of the **Settlement Agreement**.

(m)     "**Damages**" means all forms of damages defined as broadly as possible without exception, including losses, costs, expenses, taxes, requests, royalties, rents, fees, profits, profit shares, earning capacity, loss of subsistence, damages to real or personal property, diminution in property value, punitive damages, exemplary damages, multiple damages, non-compensatory damages, **Compensatory Damages**, economic damages, injuries, liens, remedies, debts, claims, causes of action, or liabilities.

(n)     "**Deepwater Horizon Economic Litigation**" means all **Claims** brought by **Claimant** or any **Economic Class Member** for damage covered by the **Seafood Compensation Program**, **Coastal Real Property Damage**, **Economic Damage**, **Real Property Sales Damage**, **Subsistence Damage**, **VoO Charter Payment**, **Vessel Physical Damage** or **Wetlands Real Property Damage** allegedly arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**, in the **MDL Action**.

(o) "**Deepwater Horizon Incident**" means the events, actions, inactions and omissions leading up to and including: (i) the blowout of the **MC252 Well**; (ii) the explosions and fire on board the *Deepwater Horizon* on or about April 20, 2010; (iii) the sinking of the *Deepwater Horizon* on or about April 22, 2010; (iv) the release of oil, other hydrocarbons and other substances from the MC252 Well and/or the *Deepwater Horizon* and its appurtenances; (v) the efforts to contain the **MC252 Well**; (vi) **Response Activities**, including the **VoO Program**; (vii) the operation of the **GCCF**; and (viii) **BP** public statements relating to all of the foregoing.

(p) "**DHOST**" means the Deepwater Horizon Oil Spill Trust, which is the irrevocable common law trust established under Delaware law in accordance with the trust agreement titled "Deepwater Horizon Oil Spill Trust" dated August 6, 2010, and entered into among BP Exploration & Production Inc.; John S. Martin, Jr. and Kent D. Syverud, as individual trustees; and Citigroup Trust- Delaware, N.A., as corporate trustee.

(q) "**Economic Class**" means the Economic and Property Damages Settlement Class.

(r) "**Economic Damage**" means loss of profits, income, and/or earnings arising in the **Gulf Coast Areas** or **Specified Gulf Waters** allegedly arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**; provided, however, that **Economic Damage** does not include: (1) loss of profits or earnings, or damages for injury relating to **Real Property** or personal property that constitutes any part of the **Seafood Compensation Program**, **Coastal Real Property Damage**, **Real Property Sales Damage**, **Wetlands Real Property Damage**, **Vessel Physical Damage**; (2) **VoO Charter Payment**; or (3) damages for loss of **Subsistence** use of natural resources, which constitutes **Subsistence Damage**.

(s) "**Entity**" means an organization or entity, other than a **Governmental Organization**, operating or having operated for profit or not-for-profit, including a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture or an unincorporated association of any kind or description.

(t) "**Expressly Reserved Claims**" means the following **Claims** that are not recognized or released under this **Individual Release**, and are reserved to **Claimant**: (1) **Bodily Injury Claims**; (2) claims of **BP** shareholders in any derivative or direct action solely in their capacity as **BP** shareholders; (3) claims of **Natural Persons** and **Entities** for **Moratoria Losses**; (4) claims relating to menhaden (or "pogy") fishing, processing, selling, catching, or harvesting; (5) claims for **Economic Damage** suffered by **Entities** or employees (to the extent they allege **Economic Damage** based on their employment by such an **Entity** during the **Class Period**) in the Banking, Gaming, Financial, Insurance, Oil and Gas, Real Estate Development, and Defense Contractor Industries, and entities selling or marketing BP-branded fuel, including jobbers and branded retailers, as defined in the **Settlement Agreement**; (6) claims for punitive or exemplary damages against **Halliburton** and

**Transocean** subject to the provisions of Section 11 of the **Settlement Agreement**; and (7) the rights of the **Claimant** to recover additional benefits from the **Economic Class** secured by virtue of the efforts of the **Economic Class** to pursue **Assigned Claims**, again subject to the provisions of Section 11 of the **Settlement Agreement**.

(u)   "**Finfish**" means fish other than shellfish and octopuses.

(v)   "**Game**" includes nutria, mink , otters, raccoons, muskrats, alligators, and other wildlife.

(w)   "**GCCF**" means the Gulf Coast Claims Facility.

(x)   "**Governmental Organization**" means: (a) the government of the United States of America; (b) any state or local government; (c) any agency, branch, commission, department, or unit of the government of the United States of America or of any state or local government; or (d) any **Affiliate** of, or any business or organization of any type that is owned in whole or in part to the extent of at least 51% by the government of the United States of America or any state or local government, or any of their agencies, branches, commissions, departments, or units.

(y)   "**Gulf Coast Areas**" means the States of Louisiana, Mississippi, and Alabama; the counties of Chambers, Galveston, Jefferson and Orange in the State of Texas; and the counties of Bay, Calhoun, Charlotte, Citrus, Collier, Dixie, Escambia, Franklin, Gadsden, Gulf, Hernando, Hillsborough, Holmes, Jackson, Jefferson, Lee, Leon, Levy, Liberty, Manatee, Monroe, Okaloosa, Pasco, Pinellas, Santa Rosa, Sarasota, Taylor, Wakulla, Walton and Washington in the State of Florida, including all adjacent Gulf waters, bays, estuaries, straits, and other tidal or brackish waters within the States of Louisiana, Mississippi, Alabama or those described counties of Texas or Florida.

(z)   "**Halliburton**" means Halliburton Energy Services, Inc. and all and any of its **Affiliates**, other than any **Natural Person** or **Entity** that is also an **Affiliate** of any of the **Released Parties** as of April 16, 2012.

(aa)  "**Halliburton Parties**" shall mean **Halliburton** (including all persons, entities, subsidiaries, divisions and business units comprised thereby); each of **Halliburton**'s respective past, present and future directors, officers, employees, general or limited partners, members, joint venturers, and shareholders, and past, present and future spouses, heirs, beneficiaries, estates, executors, administrators, personal representatives, attorneys, agents, trustees, insurers, reinsurers, predecessors, successors, indemnitees, assigns, **Affiliates**; any natural, legal or juridical person or entity acting on behalf of or having liability in respect of **Halliburton**, in their respective capacities as such; and the federal Oil Spill Liability Trust Fund and any state or local fund, and each of their respective **Affiliates** including their officers, directors, shareholders, employees, and agents.

(bb)  "**Incompetent Claimant**" means a **Natural Person** who lacks the capacity to enter into a contract on his or her behalf at the time this **Individual Release** is executed, in

accordance with the state laws of that person's domicile as applied to adult capacity issues, whether through power of attorney agency documents, guardianship, conservatorship, tutorship, or otherwise.

(cc) "**Individual Release**" means this Full and Final Release, Settlement, and Covenant Not to Sue.

(dd) "**MC252 Well**" means the exploratory well named "Macondo" that was being drilled by the Transocean *Marianas* and *Deepwater Horizon* rigs in Mississippi Canyon, Block 252 on the outer continental shelf in the Gulf of Mexico, approximately 130 miles southeast of New Orleans, Louisiana.

(ee) "**MDL Action**" means the federal multidistrict litigation pending before the United States District Court for the Eastern District of Louisiana, titled, *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, on April 20, 2010 (MDL No. 2179).

(ff) "**Minor Claimant**" means a **Natural Person** whose age is below that of the majority rule for the State in which the minor resides at the time this **Individual Release** is executed.

(gg) "**Moratoria Loss**" means any loss whatsoever caused by or resulting from federal regulatory action or inaction directed at offshore oil industry activity — including shallow water and deepwater activity — that occurred after May 28, 2010, including the federal moratoria on offshore permitting and drilling activities imposed on May 28, 2010 and July 12, 2010 and new or revised safety rules, regulations, inspections, or permitting practices.

(hh) "**Natural Person**" means a human being, and includes the estate of a human being who died on or after April 20, 2010.  For purposes of this **Individual Release**, a **Natural Person** that is the estate of a human being who died on or after April 20, 2010, a **Minor Claimant** or **Incompetent Claimant**, shall be deemed to act through his, her or its Representative.

(ii) "**OPA**" means the Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et seq.*

(jj) "**Other Party**" means every person, entity, or party other than the **Released Parties**.

(kk) "**Other Released Parties**" means **Released Parties** other than **BP**.

(ll) "**Real Property**" means land, including improvements thereon, and property of any nature appurtenant or affixed thereto.

(mm) "**Real Property Sales Compensation Zone**" shall be defined as **Residential Parcels** identified in the **Real Property Compensation Zone Map**.

(nn) "**Real Property Compensation Zone Map**" means the map(s) attached as Exhibit 13B to the **Settlement Agreement**.

(oo) "**Real Property Sales Damage**" means damages for realized damage on the sale of **Residential Parcels** arising out of, due to, resulting from, or relating in any way to, directly

or indirectly, the **Deepwater Horizon Incident**.

(pp)   "**Released Claims**" means all claims arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**, including any and all actions, claims, costs, expenses, taxes, rents, fees, profit shares, liens, remedies, debts, demands, liabilities, obligations, or promises of any kind or nature whatsoever, in both law or in equity, past or present, whether known or unknown, including claims for any and all **Unknown Claims** or damages, future injuries, damages or losses not currently known, but which may later develop, provided they arise out of, are due to, result from, or relate in any way to, directly or indirectly, the **Deepwater Horizon Incident**, and regardless of the legal or equitable theory, arising under any source of law whether international, federal, state, or local, and regardless of whether pursuant to statutory law, codal law, adjudication, quasi-adjudication, regulation, or ordinance, including common law, maritime or admiralty, statutory and non-statutory attorneys' fees, breach of contract, breach of any covenant of good faith and/or fair dealing, fraud, misrepresentation, fraudulent concealment, deception, consumer fraud, antitrust, defamation, tortious interference with contract or business expectations, loss of business expectations or opportunities, loss of employment or earning capacity, diminution of property value, violation of the federal Racketeer Influenced and Corrupt Organizations Act or any similar state law, violations of any consumer protection act, punitive damages, exemplary damages, multiple damages, non-compensatory damages, **Compensatory Damages**, pain and suffering, interest, injunctive relief, declaratory judgment, costs, deceptive practices, unfair business practices, regulation, strict liability, negligence, gross negligence, willful misconduct, nuisance, trespass, fraudulent concealment, statutory violations, including **OPA** or other statutory claims, unfair business practices, breach of fiduciary duty, and all other theories whether existing now or arising in the future, arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**.  **Released Claims** shall not include **Expressly Reserved Claims**.

(qq)   "**Released Parties**," for purposes of the **Released Claims**, means:  (i) **BP** (including all persons, entities, subsidiaries, divisions and business units comprised thereby); together with (ii) **DHOST**; (iii) the persons, entities, divisions, and business units listed on Attachment A; (iv) each of **BP**'s and the **Other Released Parties**' respective past, present and future directors, officers, employees, general or limited partners, members, joint venturers, and shareholders, and their past, present and future spouses, heirs, beneficiaries, estates, executors, administrators, personal representatives, attorneys, agents, trustees, insurers, reinsurers, predecessors, successors, indemnitees, assigns; (v) any natural, legal or juridical person or **Entity** acting on behalf of or having liability in respect of **BP** or the **Other Released Parties**, in their respective capacities as such; and (vi) the federal Oil Spill Liability Trust Fund and any state or local fund, and, as to i-vi above, each of their respective **Affiliates** including their **Affiliates**' officers, directors, shareholders, employees, and agents.

**Released Parties** will also include any vessels owned or chartered by any **Released Party** (except for the *Deepwater Horizon* itself).  Notwithstanding anything herein to the contrary, in no event shall any of the following be deemed to be a **Released Party**: **Transocean** or **Halliburton**.  **Claimant** specifically reserves its rights for punitive and exemplary damages against **Transocean** and **Halliburton** subject to the provisions of Paragraph 11 of the **Settlement Agreement**.  Furthermore, nothing herein shall impair the rights of the **Claimant** to recover additional benefits from the **Economic Class** secured by virtue of the efforts of the **Economic Class** to pursue **Assigned Claims**, again subject to the provisions of Paragraph 11 of the **Settlement Agreement**.

(rr)  "**Residential Parcels**" means those parcels within the **Real Property Sales Compensation Zone** for which the county where the parcel is located has designated the parcel as a residential classification.

(ss)  "**Response Activities**" means the clean up, remediation efforts, and all other responsive actions (including the use and handling of dispersants) relating to the releases of oil, other hydrocarbons and other pollutants from the MC252 Well and/or the *Deepwater Horizon* and its appurtenances and the **Deepwater Horizon Incident**.

(tt)  "**Seafood**" means fish and shellfish, including shrimp, oysters, crab, and **Finfish**, caught in the **Specified Gulf Waters**.  **Seafood** shall exclude menhaden.

(uu)  "**Seafood Compensation Program**" means the program defined in Section 5.2 of the **Settlement Agreement**.

(vv)  "**Settlement Agreement**" means the Economic and Property Damages Settlement Agreement.

(ww)  "**Settlement Program**" means the *Deepwater Horizon* Court Supervised Settlement Program created pursuant to the **Settlement Agreement**.

(xx)  "**Settlement Trust**" means the Deepwater Horizon Economic and Property Damages Trust created pursuant to the **Settlement Agreement**.

(yy)   "**Specified Gulf Waters**" means the U.S. waters of the Gulf of Mexico and all adjacent bays, estuaries, straits, and other tidal or brackish waters within the Gulf Coast Areas, as specifically shown and described in Exhibit 23 to the **Settlement Agreement**.

(zz)  "**Subsistence**" means fishing or hunting to harvest, catch, barter, consume or trade Gulf of Mexico natural resources (including **Seafood** and **Game**), in a traditional or customary manner, to sustain basic personal or family dietary, economic security, shelter, tool, or clothing needs.

(aaa)  "**Subsistence Damage**" means a loss of value of **Subsistence** use of natural resources alleged to arise out of, result from or relate in any way to, directly or indirectly, the **Deepwater Horizon Incident**.

**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

(bbb) "**Transocean**" means Transocean Ltd., Transocean, Inc., Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, Triton Asset Leasing GmbH and all and any of their **Affiliates**, other than any **Natural Person** or **Entity** that is also an **Affiliate** of any of the **Released Parties**.

(ccc) "**Transocean Parties**" means **Transocean** (including all persons, entities, subsidiaries, divisions and business units comprised thereby); each of **Transocean**'s respective past, present and future directors, officers, employees, general or limited partners, members, joint venturers, and shareholders, and past, present and future spouses, heirs, beneficiaries, estates, executors, administrators, personal representatives, attorneys, agents, trustees, insurers, reinsurers, predecessors, successors, indemnitees, assigns, **Affiliates**; any natural, legal or juridical person or entity acting on behalf of or having liability in respect of **Transocean**, in their respective capacities as such; and the federal Oil Spill Liability Trust Fund and any state or local fund, and each of their respective **Affiliates** including their officers, directors, shareholders, employees, and agents.

(ddd) "**Unknown Claims**" and damages or not currently known claims and damages (whether or not capitalized) means all past, present, and future claims and damages arising out of facts, including new facts or facts found hereafter to be other than or different from the facts now believed to be true, arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident** covered by this **Individual Release** that **Claimant** does not, in whole or in part, know or suspect to exist and which, if known by them, might have affected their decision to provide such **Individual Release**, including all claims arising out of new facts or facts found hereafter to be other than or different from the facts now believed to be true.

(eee) "**Vessel Physical Damage**" means physical damage that was sustained by an eligible **Claimant's** eligible vessel due to or resulting from the **Deepwater Horizon Incident** or the Deepwater Horizon Incident response cleanup operations, including the **VoO Program**, that were consistent with the National Contingency Plan or specifically ordered by the Federal On-Scene Coordinator or delegates thereof.

(fff) "**VoO Charter Payment**" means a loss alleged by a **VoO Charter Payment Claimant** for any payment or compensation related to participation in the **VoO Program** that satisfies the requirements set forth in Section 5.5 of the **Settlement Agreement**.

(ggg) "**VoO Charter Payment Claimant**" means an **Economic Class** Member claiming to have suffered a **VoO Charter Payment** loss.

(hhh) "**VoO Master Vessel Charter Agreement**" means the standard agreements utilized by **BP** and its agents or subcontractors to charter the vessels available for work or service in connection with the **VoO Program**.

(iii) "**VoO Program**" means the program through which vessel owners performed work for

BP or BP's authorized agents pursuant to the terms of the **VoO Master Vessel Charter Agreement**.

(jjj)  "**Wetlands Real Property Claim Framework**" means the rules described in the document captioned Wetlands Real Property Claim Framework, attached to the **Settlement Agreement** as Exhibits 12A-12B.

(kkk)  "**Wetlands Real Property Claimant**" means an **Economic Class** Member claiming to have suffered **Wetlands Real Property Damage**.

(lll)  "**Wetlands Real Property Damage**" means a loss alleged by a **Wetlands Real Property Claimant** that satisfies the requirements set forth in the **Wetlands Real Property Claim Framework**.

2.  **Release.**  In consideration of (i) payment in the amount of **[insert $$]** (which payment shall be distributed from the **Settlement Trust** through the Court-appointed **Claims Administrator** and the **Settlement Program** and, if **Claimant** is electing to receive a structured settlement, all or a portion of which shall be distributed in accordance with the terms set forth on Attachment C to this **Individual Release**), (ii) previous payments for **Claims** referenced and released herein, and (iii) the right to receive additional Settlement Payment(s) for any additional Claims, if any, pursuant to the terms of Section 4.4.8 of the Settlement Agreement (if **Claimant** is electing to receive a structured settlement, all or a portion of which shall be distributed in accordance with the terms set forth on Attachment C to this **Release**), which **Claimant** accepts as sufficient and adequate consideration for any and all **Released Claims**, **Claimant**, on behalf of **Claimant** and **Claimant's** heirs, beneficiaries, estates, executors, administrators, personal representatives, agents, trustees, insurers, reinsurers, subsidiaries, corporate parents, predecessors, successors, indemnitors, subrogees, assigns, and any natural, legal or juridical person or entity entitled to assert any claim on behalf of or in respect of any **Claimant**, hereby releases and forever discharges with prejudice, and covenants not to sue, the **Released Parties** for any and all **Released Claims**; provided, however, that this **Individual Release** does not apply to, and the term **Released Claims** does not include, **Expressly Reserved Claims**.  In the event a **Released Party** is sold or otherwise transferred to or purchases or otherwise acquires, or enters into a partnership or joint venture with, a **Natural Person** or **Entity** that is not otherwise a **Released Party** immediately prior to giving effect to such transaction, then the non-**Released Party** shall as a result of such transaction obtain a benefit under this **Individual Release** only with respect to any liability of the **Released Party** that it, or any such partnership or joint venture, has acquired or assumed or otherwise become liable for, and not in its own right.

3.  **Release Is Comprehensive.**  **Claimant** agrees and acknowledges that the consideration granted in Paragraph 2 above constitutes full, complete, and total satisfaction of all of the **Released Claims** against the **Released Parties**.  In addition, **Claimant** agrees and acknowledges that the consideration granted in Paragraph 2 above also constitutes full, complete, and total satisfaction of all of **Claimant's Compensatory Damage Claims** against the **Transocean Parties** and the

**Halliburton Parties**.

4.  **Non-General Release.** **Claimant** expressly waives and releases with prejudice, and shall be deemed to have waived and released with prejudice, any and all rights that it may have under any law, codal law, statute, regulation, adjudication, quasi-adjudication, decision, administrative decision, or common law principle that would otherwise limit the effect of the **Individual Release** to those claims or matters actually known or suspected to exist at the time of execution of the **Individual Release**. California law is not applicable to this **Individual Release**, but purely for illustrative purposes the **Released Claims** include, but are not limited to the release of claims provided for in Section 1542 of the California Civil Code, which provides as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

5.  **Contribution, Subrogation, Indemnity.** This **Individual Release** is not intended to prevent **BP** from exercising its rights of contribution, subrogation, or indemnity under **OPA** or any other law, including its rights of assignment regarding **Assigned Claims** as set forth in Exhibit 21 to the **Settlement Agreement**. **BP** is hereby subrogated to any and all rights that the **Economic Class** Members, or any of them, may have had or have arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident** under **OPA**. All such rights of **BP** to contribution, indemnity, and subrogation, and **BP**'s subrogation to the rights of **Economic Class** Members, are subject to the provisions regarding **Assigned Claims** in Exhibit 21 to the **Settlement Agreement**.

6.  **Consideration.** **Claimant** agrees that this **Individual Release** is entered into in consideration of the agreements, promises, and mutual covenants set forth in this **Individual Release** and for such other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged.

7.  **No Further Action.** **Claimant** agrees not to file federal or state judicial or administrative proceedings concerning cleanup, removal, spill response or remediation of **Coastal Real Property Damages** and **Wetlands Real Property Damages**, or the underlying **Real Property**, as a means to seek the redress of **Released Claims**.

8.  **Dismissal of All Claims.**

    a.  In consideration of the benefits provided under this **Individual Release**, all **Released Claims** by or on behalf of **Claimant** against any and all **Released Parties** shall be dismissed with prejudice in any lawsuit in which the **Claimant** is a party.

    b.  This **Individual Release** shall be the exclusive remedy for any and all **Released Claims** by or on behalf of **Claimant** against any and all **Released Parties**, and **Claimant** shall not recover, directly or indirectly, any sums from any **Released Parties** for any **Released Claims** other than those received for the **Released Claims** under the terms of this **Individual Release**.

c.   **Claimant** agrees that **Claimant**, and all other **Natural Persons** and **Entities** claiming by, through, or on behalf of **Claimant** will be forever barred and enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any judicial, arbitral, or regulatory action against the **Released Parties** with respect to the **Released Claims**.

d.   If **Claimant** commences, files, initiates, or institutes any new action or other proceeding for any **Released Claims** against the **Released Parties** in any federal or state court, arbitration tribunal, or administrative or other forum, such action or other proceeding shall be dismissed with prejudice and at **Claimant**'s cost; provided, however, before any costs may be assessed, counsel for such **Claimant**, or, if not represented, such **Claimant** shall be given reasonable notice and an opportunity voluntarily to dismiss such new action or proceeding with prejudice. Furthermore, if **Claimant** brings any legal action before any Court, arbitration panel, regulatory agency, or other tribunal to enforce its rights under this **Individual Release**, such **Released Party** shall be entitled to recover any and all related costs and expenses (including attorneys' fees) from any **Claimant** in violation or breach of its obligations under this **Individual Release**.

9.   **No Admission of Liability or Wrongdoing by BP.**   The Paragraph 2 payment to **Claimant** is made without any admission of liability or wrongdoing by **BP** or any other **Released Party** and is made purely by way of compromise and settlement.

10.   **Claimant Warranty.**   **Claimant** represents and warrants that **Claimant** or **Claimant's** undersigned representative in the case of a business e n t i t y  has authority to execute this **Individual Release** on behalf of **Claimant**.

11.   **Additional Protections for Released Parties.**   **Claimant** promises, agrees, acknowledges, represents, warrants, and covenants as follows:

a.   **No Assignment of Claims.** **Claimant** shall not assign or reassign, or attempt to assign or reassign, to any person or entity other than **BP** any rights or claims arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**.  Any such assignment or reassignment, or attempt to assign or reassign, to any **Natural Person** or **Entity** other than **BP** any rights or claims arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident** shall be void, invalid, and of no force and effect.

b.   **No Recovery of Additional Compensatory Damages.**   **Claimant** shall not accept or attempt to recover, through insurance, reinsurance, indemnification, contribution, subrogation, litigation, settlement, or otherwise, any **Compensatory Damages** from the **Transocean Parties** and/or the **Halliburton Parties**. Nothing in this Paragraph 11(b) shall impair or impact **Claimant**'s rights to pursue **Transocean** and **Halliburton** for exemplary and punitive damages individually or through the **Economic Class**.

c.   **Non-Execution and Non-Collection for Compensatory Damages**.   In the event that **Claimant** is or becomes the beneficiary of any judgment, decision, award, or settlement arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**, **Claimant** shall not accept, execute on, attempt to collect, or otherwise seek recovery of any **Compensatory Damages** from the **Transocean Parties** and/or the **Halliburton Parties**.   Nothing in this Paragraph 11(c) shall impair or impact **Claimant's** rights to pursue **Transocean** and **Halliburton** for exemplary and punitive damages individually or through the Economic Class.

d.   **Conditional Collection of Damages**.   In the event that **Claimant** is or becomes the beneficiary of any judgment, decision, award, or settlement arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**, including from **Assigned Claims** and/or **Expressly Reserved Claims**, **Claimant** shall not accept, execute on, attempt to collect, or otherwise seek recovery of any **Damages**, to the extent that any **Other Party** is seeking or may seek to recover such **Damages** from any **Released Party**, whether through indemnity, contribution, subrogation, assignment, or any other theory of recovery, by contract, pursuant to applicable law or regulation, or otherwise, directly or indirectly.   **Claimant** may, however, accept, execute on, attempt to collect, or otherwise seek recovery of **Damages** if and when a court or tribunal of competent jurisdiction has finally determined that **Other Parties** cannot recover such **Damages**, whether through indemnity, contribution, subrogation, assignment or any other theory of recovery, by contract, pursuant to applicable law or regulation, or otherwise, directly or indirectly, from any **Released Party**.   For purposes of this Paragraph 11(d), "finally determined" shall mean the conclusion of any applicable appeals or other rights to seek review by certiorari or otherwise, or the lapse of any and all such rights, or the lapse of any and all applicable limitations or repose periods.

e.   **Conditions on Future Settlements.**   **Claimant** may settle or compromise any rights, demands, or claims with the **Transocean Parties**, the **Halliburton Parties**, and/or any **Other Parties** arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**, if, but only if, the **Transocean Parties**, the **Halliburton Parties**, and/or such **Other Party**, as the case may be, agrees as part of that settlement or compromise to a full and final release of, dismissal of, and covenant not to sue for any and all rights to recover, directly or indirectly, from the **Released Parties** (whether through indemnity, contribution, subrogation, assignment or any other theory of recovery, by contract, pursuant to applicable law or regulation, or otherwise) for any **Damages** or other relief or consideration provided under or relating to such settlement or compromise (whether the settlement is of a class, of individual claims, or otherwise), including from **Expressly Reserved Claims**, and further represents and warrants that it has not assigned and will not assign any rights to recover for such **Damages** or other relief or consideration (whether through indemnity, contribution, subrogation, or otherwise).   As part of this

commitment and without limitation, **Claimant** shall not settle or compromise with the **Transocean Parties**, the **Halliburton Parties**, and/or any **Other Parties** on terms that might allow any insurers, reinsurers, or indemnitors thereof to claim against any **Released Parties** for indemnification, subrogation, contribution, assignment or under any other theory of recovery. **Claimant** agrees that, before any such settlement or compromise is executed, **BP** shall have the right to approve language in any such settlement or compromise memorializing the representation and warranty set forth in this Paragraph 11(e), which approval shall not be unreasonably withheld.

f.   **Indemnity to Released Parties.**   Notwithstanding any provision in this **Individual Release** to the contrary, if any **Other Party** recovers or seeks to recover from any **Released Party** (under any theory of recovery, including indemnity, contribution, or subrogation, and including from **Assigned Claims** and/or **Expressly Reserved Claims**) any **Damages** either (a) paid to **Claimant**, or (b) by, through, under, or on account of **Claimant**; then **Claimant** shall indemnify (not defend) the **Released Parties**, but only to the extent of the consideration received in Paragraph 2 above (by way of example, if **Claimant** has received $100.00 pursuant to Paragraph 2 above, its indemnity obligation would be capped at this amount). This indemnity obligation owed by **Claimant** includes any and all claims made or other actions taken by that **Claimant** in breach of this **Individual Release**.

g.   **Notice Regarding Indemnity.**   **Claimant** expressly acknowledges that, to the fullest extent allowed by law, the indemnity obligations contained in Paragraph 11(f) above apply to claims against **Released Parties** predicated on negligence, gross negligence, willful misconduct, strict liability, intentional torts, liability based on contractual indemnity, and any and all other theories of liability, and any and all awards of attorneys' fees or other costs or expenses. **Claimant** acknowledges that this indemnity is for conduct occurring before the date of this **Individual Release** and therefore is not affected by public policies or other law prohibiting agreements to indemnify in advance of certain conduct. **CLAIMANT ACKNOWLEDGES THAT THIS PARAGRAPH 11(g) COMPLIES WITH ANY REQUIREMENT TO EXPRESSLY STATE THAT LIABILITY FOR SUCH CLAIMS IS INDEMNIFIED AND THAT THIS PARAGRAPH 11(g) IS CONSPICUOUS AND AFFORDS FAIR AND ADEQUATE NOTICE**.

12.  **Claimant Signature Requirements.** **Claimant** must personally sign the **Individual Release**, rather than through an attorney or otherwise. An electronic signature is insufficient. In addition to signing and accepting the overall **Individual Release** immediately below, **Claimant** agrees to separately sign and vouch for the accuracy of the certifications contained in Attachment B.

13.  **Spouse's Signature.** If the **Claimant** has a living spouse, the **Claimant**'s spouse must also personally sign below. An electronic signature is insufficient. The **Claimant** and his or her spouse should not sign the **Individual Release** unless they both intend to release all **Released Claims**.

14. **Choice of Law.**  Notwithstanding the law applicable to the underlying claims, which is a disputed issue not resolved by this **Individual Release**, this **Individual Release** and all questions with respect to the construction and enforcement thereof and the rights and liabilities hereto shall be interpreted in accord with General Maritime Law, as well as in a manner intended to comply with **OPA**.

15. **Superseding Nature of Agreement.**  This **Individual Release** constitutes the final, complete, and exclusive agreement and understanding between **BP** and **Claimant** and supersedes any and all other agreements, written or oral, between **BP** and **Claimant** with respect to such subject matter of this **Individual Release** in settlement of **Claims** arising out of or related to the **Deepwater Horizon Incident**.

16. **Continuing Effectiveness of Agreement.**  This **Individual Release** shall remain effective regardless of any appeals or court decisions relating in any way to the liability of the **Released Parties** in any current or future litigation.  **THIS INDIVIDUAL RELEASE SHALL ALSO REMAIN EFFECTIVE REGARDLESS OF WHETHER THE SETTLEMENT AGREEMENT RESOLVING THE CLAIMS OF THE ECONOMIC CLASS IS APPROVED.**

17. **Choice of Federal Forum and Waiver of State Forums.**  Any and all disputes, cases, or controversies concerning this **Individual Release**, including without limitation disputes concerning the interpretation or enforceability of this **Individual Release**, shall be filed only in the United States District Court for the Eastern District of Louisiana, accompanied by a legal request made on behalf of any complainant party (whether one of the **Released Parties** or the **Claimant**) for such dispute to be made part of the **MDL Action** if the **MDL Action** has not yet been terminated.  No actions to enforce this **Individual Release** shall be filed in any state court, arbitration tribunal, or administrative agency and **Claimant** represents and warrants that it shall not file such an action in any state court, arbitration tribunal, or administrative agency.  **Claimant** agrees not to contest the existence of federal jurisdiction in the **MDL Action** or the United States District Court for the Eastern District of Louisiana.

18. **Reservation of Rights.**  Notwithstanding the above and foregoing **Individual Release**, **Claimant** hereby reserves: (i) the right to additional settlement payments for any additional **Claims**, if any, pursuant to the terms of Section 4.4.8 of the **Settlement Agreement**; (ii) any and all rights or claims to which **Claimant** may be entitled for additional distributions from and funds held in reserve or trust (including, but not limited to, the **Seafood Compensation Program**, **Assigned Claims** and/or Transocean Personnel Insurance Proceeds) according to the terms of the **Settlement Agreement**; and (iii) **Expressly Reserved Claims**.

19. **Claimant's Responsibility for Attorneys' Fees.**  To the extent that **Claimant** has retained or engaged a private attorney to represent him or her or it in connection with the **Deepwater Horizon Incident**, **Claimant** acknowledges and agrees that he or she or it, and not the **BP Parties**, is solely responsible for any attorneys' fees or costs owed to such attorney by the **Claimant**.

20. **No Tax Advice.** No opinion regarding the tax consequences of this **Individual Release** (including the consideration granted in Paragraph 2 above) to **Claimant** is being given or will be given by the **Released Parties**, nor is any representation or warranty in this regard made by virtue of this **Individual Release**. **Claimant** must consult his, her or its own tax advisors regarding the tax consequences of the **Individual Release** (including the consideration granted in Paragraph 2 above) and any tax reporting obligations **Claimant** may have with respect thereto. **Claimant's** tax obligations, and the determination thereof, are his, her, or its sole responsibility, and it is understood that the tax consequences may vary depending on **Claimant's** particular circumstances. The **Released Parties** shall have no liability or responsibility whatsoever for any such tax consequences resulting from payments under this **Individual Release**. To the extent required by law, payments made from the **Settlement Trust** under this **Individual Release** will be reported to the appropriate authorities.

| SIGNATURES |
|---|

| | | |
|---|---|---|
| _____ | _____ | _____ |
| **Claimant's** Name | **Claimant's** Signature (and Title, if Business Entity Claimant) | Date |
| _____ | _____ | _____ |
| **Claimant's** Spouse's Name, if applicable | **Claimant's** Spouse's Signature, if applicable | Date |

# DEEPWATER HORIZON
## CLAIMS CENTER
### ECONOMIC & PROPERTY DAMAGE CLAIMS

| ATTACHMENT A: LISTING RELEASED PARTIES |
|---|

Abdon Callais Offshore, Inc.
Admiral Robert J Papp Jr.
Admiral Thad Allen
Admiral Towing, LLC
Aerotek, Inc.
Airborne Support, Inc.
Airborne Support International, Inc.
Alford Safety Services Inc.
Alford Services Inc.
Ameri-Force, Inc.
Ameri-Force Craft Services, Inc.
American Pollution Control Corporation
Anadarko Petroleum Company
Anadarko Petroleum Corporation
Anadarko E&P Company LP
Apex Environmental Services, LLC
Art Catering, Inc.
Ashland Services, LLC
B&B Environmental Services, Inc.
Belle Chasse Marine Transportation, Inc.
BJ Services Company, USA
Blue Marlin Services of Acadiana, LLC
Bobby Lynn's Marina, Inc.
BP America Inc.
BP America Production Company
BP Company North America Inc.
BP Corporation North America Inc.
BP Energy Company
BP Exploration (Alaska) Inc.
BP Global Special Products (Americas) Inc.
BP Holdings North America Limited
BP Exploration & Production Inc.
BP p.l.c.
BP Products North America Inc.
BP International Ltd.
BP Corporation North America Inc. Savings Plan Investment Oversight Committee
Brett Cocales
Brian Morel
Cabildo Services, LLC
Cabildo Staffing, LLC
Cahaba Disaster Recovery LLC
Cal Dive International, Inc.
Cameron Corporation
Cameron International Corporation
Cameron International Corporation f/k/a Cooper Cameron Corporation

Cameron International Corporation d/b/a/ Cameron Systems Corporation
Center for Toxicology and Environmental Health L.L.C.
Chill Boats L.L.C.
Chouest Shorebase Services, LLC
Clean Harbors, Inc.
Clean Tank LLC
Clean Tank Inc.
Core Industries, Inc.
Core 4 Kebawk, LLC
Crossmar, Inc.
Crowder/Gulf Joint Venture
Crowder Gulf Disaster Recovery
Danos and Curole Marine Contractors, LLC
Danos & Curole Staffing, L.L.C.
David Sims
Deepwater Horizon Oil Spill Trust
Diamond Offshore Company
DOF Subsea USA, Inc.
Don J. Vidrine
DRC Emergency Services, LLC
DRC Marine, LLC
DRC Recovery Services, LLC
Dril-Quip, Inc.
Dynamic Aviation Group, Inc.
Eastern Research Group, Inc.
Environmental Standards, Inc.
Environmental Safety & Health Consulting Services
Environmental Safety & Health  Environmental Services
ES&H, Inc.
ESIS, Inc.
Exponent, Inc.
Faucheaux Brothers Airboat Services, Inc.
Global Diving & Salvage, Inc.
Global Employment Services, Inc.
Global Fabrication, LLC
Global Marine International, Inc.
Graham Gulf Inc.
Grand Isle Shipyard Inc.
Gregg Walz
Guilbeau Marine, Inc.
Guilbeau Boat Rentals, LLC
Gulfmark Offshore, Inc.
Gulf Offshore Logistics, LLC
Gulf Offshore Logistics International, LLC
Gulf Services Industrial, LLC
HEPACO, Inc.
Hilcorp Energy Company
Hyundai Heavy Industries Co. Ltd, Inc.
Hyundai Motor Company
I-Transit Response, L.L.C

International Air Response, Inc.
Island Ventures II, LLC
JMN Specialties, Inc.
JNB Operating LLC
John Guide
K & K Marine, LLC
LaBorde Marine Services, LLC
Lane Aviation
Lawson Environmental Service LLC
Lawson Environmental Service & Response Company
Lee Lambert
Lord Edmund John Browne
Lynden Air Cargo, LLC
Lynden, Inc.
Maco of Louisiana, LLC
Maco Services, Inc.
Marine Spill Response Corporation
Mark Bly
Mark Hafle
M-I L.L.C.
M-I Drilling Fluids L.L.C.
M-I Swaco
Miller Environmental Group, Inc.
Mitchell Marine
Mitsui & Co. (USA), Inc.
Mitsui & Co. Ltd.
Mitsui Oil Exploration Co. Ltd.
ModuSpec USA, Inc.
Monica Ann LLC
Moran Environmental Recovery, LLC
MOEX Offshore 2007 LLC
MOEX USA Corporation
M/V Monica Ann
M/V Pat Tilman
M/V Damon B. Bankston
M/V Max Chouest
M/V Ocean Interventions
M/V C. Express
M/V Capt. David
M/V Joe Griffin
M/V Mr. Sidney
M/V Hilda Lab
M/V Premier Explorer
M/V Sailfish
M/V Seacor Washington
M/V Emerald Coast
M/V Admiral Lee
M/V Seacor Vanguard

M/V Whuppa Snappa
Nalco Energy Services, LP
Nalco Holding Company
Nalco Finance Holdings LLC
Nalco Finance Holdings Inc.
Nalco Holdings LLC
Nalco Company
National Response Corporation
Nature's Way Marine, LLC
Nautical Ventures, LLC
Nautical Solutions, LLC
O'Brien's Response Management, Inc
Ocean Runner, Inc.
Ocean Therapy Solutions, LLC
Oceaneering International, Inc.
Odyssea Marine, Inc.
Offshore Cleaning Systems L.L.C.
Offshore Service Vessels, LLC
Offshore Inland Marine & Oilfield Services, Inc.
Oil Recovery Company, Inc. of Alabama
Oilfield Marine Contractors, LLC
Parsons Commercial Services Inc.
Parsons Services Company
Parsons Facility Services Company
Parsons Corporation
Patriot Environmental Services Incorporated
Peneton Company
Perennial Contractors, LLC
Peneton Corporation
Production Services Network U.S., Inc.
Quality Container, Inc.
Quality Energy Services, Inc.
Ranger Offshore, Inc.
Reel Pipe, LLC
Resolve Marine Services, Inc.
Robert Kaluza
Ronald W. Sepulvado
Schlumberger, Ltd.
Seacor Holdings Inc.
Seacor Marine, LLC
Seacor Marine, Inc.
Seacor Marine International, Inc.
Seacor Offshore LLC
Seacor Worldwide, Inc.
Sealion Shipping LTD
Sea Support Services, L.L.C.
Sea Tow of South Miss, Inc.
Seafairer Boat, LLC
Shamrock Management LLC et al.
Shoreline Services, LLC

Siemens Financial, Inc.
Shoreline Construction, LLC
Smith Marine, Inc.
Southern Cat, Inc.
Southern Environmental of Louisiana, LLC
Stallion Offshore Quarters, Inc.
Subsea 7 LLC
Tamara's Group, LLC
Team Labor Force, LLC
Technical Marine Maintenance Services, L.L.C.
The Modern Group, Ltd.
The Modern Group GP-SUB, Inc.
The O'Brien Group, LLC
The Response Group, Inc.
Tiburon Divers, Inc.
Tidewater, Inc.
Tidewater Marine LLC
Tiger Rentals, Ltd.
Tiger Safety, LLC
Toisa Limited
Total Safety U.S., Inc.
Twenty Grand Offshore, LLC
Twenty Grand Marine Service, LLC
Twenty Grand Offshore Inc.
USES/Construct Corps
United States Environmental Services, LLC
United States Maritime Services, Inc.
Viscardi Industrial Services, LLC
Weatherford International Ltd.
Weatherford U.S. L.P.
Wood Group Production Services, Inc.
Worley Catastrophe Services, LLC
Worley Catastrophe Response, LLC

## ATTACHMENT B: CERTIFICATIONS

**Claimant** hereby signs to, attests to, and vouches for the accuracy of the certification below:

I certify that I understand and acknowledge that, (subject to my right to additional Settlement Payments, if any, pursuant to Section 4.4.8 of the Settlement Agreement), I am forever giving up with prejudice and discharging, without any right of legal recourse whatsoever, any and all rights I have or may have to the **Released Claims** against the **Released Parties**. I acknowledge that by having executed the **Individual Release** and signing below neither I nor the entity I represent has been pressured or influenced by, or is relying on any statement or representation made by any person acting on behalf of **BP** or any other **Released Party**. I certify that I understand that I have the right to consult with an attorney of my choosing before signing this **Individual Release**.

## CERTIFICATION FOR BUSINESS OR PROPERTY CLAIMS

I certify that either:

(1)   I have not made an insurance claim or received any insurance proceeds for any business or property **Claim** arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**; **OR**

(2)   If I have made or do make an insurance claim and/or receive or have received insurance proceeds for any business or property claim arising out of, due to, resulting from, or relating in any way to, directly or indirectly the **Deepwater Horizon Incident**, I will indemnify **BP** for any liability it incurs for a subrogation claim made against **BP** arising out of:

(a)   such insurance proceeds, provided that the subrogation claim is brought by an entity seeking payment of insurance proceeds to me for any business or property claim arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**; and

(b)   the amount that I indemnify **BP** shall not exceed the amount of insurance proceeds that I received for the business or property claim at issue.

**CLAIMANT ACKNOWLEDGES THAT THIS CERTIFICATION COMPLIES WITH ANY REQUIREMENT TO EXPRESSLY STATE THAT LIABILITY FOR SUCH CLAIMS IS INDEMNIFIED AND THAT THIS CERTIFICATION IS CONSPICUOUS AND AFFORDS FAIR AND ADEQUATE NOTICE.**

**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

## CERTIFICATION FOR INDIVIDUAL CLAIMS

I certify that either:

(1)   I have not made a claim for unemployment insurance benefits arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**; **OR**

(2)   If I have made or do make a claim for unemployment insurance benefits arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**, I will indemnify **BP** for any liability and defense costs it incurs for a subrogation **Claim** made against **BP** arising out of such insurance proceeds provided that the subrogation **Claim** is brought by an entity seeking payment of insurance proceeds to me for any business or property **Claim** arising out, due to, resulting from, or relating in any way to, directly or indirectly, the **Deepwater Horizon Incident**; and the amount that I indemnify BP shall not exceed the amount of insurance proceeds that I received for the unemployment insurance benefits **Claim** at issue.

**CLAIMANT ACKNOWLEDGES THAT THIS CERTIFICATION COMPLIES WITH ANY REQUIREMENT TO EXPRESSLY STATE THAT LIABILITY FOR SUCH CLAIMS IS INDEMNIFIED AND THAT THIS CERTIFICATION IS CONSPICUOUS AND AFFORDS FAIR AND ADEQUATE NOTICE.**

## SIGNATURES

_____          _____          _____

**Claimant's** Name                                    **Claimant's** Signature (and Title                    Date
                                                              if Business Entity Claimant)

_____          _____          _____

**Claimant's** Spouse's Name,                     **Claimant's** Spouse's Signature,                    Date
    if applicable                                             if applicable

# EXHIBIT B

# DEEPWATER HORIZON
# CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

| ATTACHMENT C: STRUCTURED SETTLEMENT OPTION |
| --- |

**To be eligible to receive Periodic Payments under the Structured Settlement Option, Claimant must complete and sign this Attachment C, which contains terms specific to the election of the Structured Settlement Option and requires Claimant to supply certain information and documentation regarding the Structured Settlement Option.**

**To receive Periodic Payments through the Structured Settlement Option, you must fully complete Part I below. IF YOU DO NOT SUBMIT THIS ATTACHMENT C WHEN SPECIFIED ON YOUR ELIGIBILITY NOTICE, OR IF YOU DO NOT FULLY COMPLETE PART I BELOW, YOU WILL ONLY BE ELIGIBLE TO RECEIVE THE AWARD AMOUNT AS A LUMP SUM PAYMENT.**

**Do not complete Part II below -- this will be completed by the Settlement Trustee, provided that all requirements of the Structured Settlement Option have been satisfied.**

| PART I: CLAIMANT STRUCTURED SETTLEMENT TERMS, CERTIFICATIONS, INFORMATION AND DOCUMENTATION |
| --- |

1. **Definitions.** For purposes of this Attachment C to the **Individual Release**, the following additional definitions shall apply, and in the case of defined nouns, the singular shall include the plural and vice versa:

   a. "**Annuity Issuer**" means, in the context of the **Structured Settlement Option**, the insurance company issuing the annuity or funding agreement purchased by the **Assignee** to fund the **Periodic Payments**. The **Annuity Issuer** and the **Assignee** may be related entities.

   b. "**Assignee**" means, in the context of the **Structured Settlement Option**, the party assigned the obligation of making **Periodic Payments** to the **Claimant** by the **Settlement Trustee**. The **Assignee** funds this obligation through purchase of an annuity or funding agreement from an **Annuity Issuer**, which is an insurance company which may be related to the **Assignee**.

   c. "**Award Amount**" means the amount listed as the "Award Amount" on the Eligibility Notice sent to **Claimant** as an official communication from the **Claims Administrator** for the **Settlement Program**.

   d. "**Directed Trustee**" means the directed trustee of the **Settlement Trust**.

   e. "**Periodic Payments**" means, in the context of the **Structured Settlement Option**, the payments made to a **Claimant** over time instead of in a lump sum, such **Periodic Payments** to be funded by the **Structured Settlement Amount**.

   f. "**Released Claims**" shall, in addition to the definition set forth in the **Individual Release**, include, and the release and covenant not to sue described in Paragraph 2 of the **Individual Release** applies to, all claims arising out of, due to, resulting from, or relating in any way to,

Claimant ID:
Claim ID:

directly or indirectly, the **Structured Settlement Option**, including, but not limited to, any claims that the **Assignee** has not paid **Claimant** some or all of the **Periodic Payments** due to **Claimant**, any claims related to any action or inaction of the **Directed Trustee**, the **Settlement Trustee**, the **Settlement Trust** or the other **Released Parties**, and any claims regarding the tax, financial or other consequences of selecting the **Structured Settlement Option** to **Claimant**.

g.  "**Released Parties**" shall, in addition to the definition set forth in the **Individual Release**, include the **Settlement Trust**, the **Settlement Trustee** and the **Directed Trustee**.

h.  "**Settlement Trustee**" means the trustee of the **Settlement Trust**.  The **Settlement Trustee** also serves as the **Claims Administrator**, and any references to the **Settlement Trustee** shall be deemed to include the **Claims Administrator** acting in his capacity as the **Settlement Trustee**.

i.  "**Structured Settlement Amount**" means the portion of the **Award Amount** paid to the **Assignee** by the **Settlement Trustee** on behalf of the **Settlement Trust** pursuant to a **Structured Settlement Option** elected by a **Claimant**.

j.  "**Structured Settlement Option**" means an option pursuant to which the **Settlement Trustee**, on behalf of the **Settlement Trust**, agrees to make **Periodic Payments** to a **Claimant**, conditioned upon the **Settlement Trustee** assigning such obligation to make the **Periodic Payments** to the **Assignee**; upon assignment and payment of the **Structured Settlement Amount** by the **Settlement Trustee** to the **Assignee**, the **Assignee** assumes all liability for the **Periodic Payments** and the **Settlement Trustee**, the **Settlement Trust** and the other **Released Parties** are released from any liability for the **Periodic Payments**; the **Assignee** then provides for payment of such **Periodic Payments** through purchase of an annuity or funding agreement from an **Annuity Issuer**.  If a **Claimant** does not elect a **Structured Settlement Option**, or for any portion of the **Award Amount** for which the **Claimant** does not elect a **Structured Settlement Option**, the **Claimant** will receive a lump sum payment directly from the **Settlement Trust** through the Court-appointed **Claims Administrator** and the **Settlement Program**.

2.  **Structured Settlement Option.**  **Claimant** is timely submitting this Attachment C to the **Individual Release** to irrevocably elect the **Structured Settlement Option** to receive all or a portion of its payment over time in the form of **Periodic Payments** instead of in a lump sum. **Claimant** is required to provide certain information and documentation regarding the **Structured Settlement Option** on this Attachment C; if **Claimant** does not provide complete and accurate information and documentation as required on this Attachment C, **Claimant's** election of the **Structured Settlement Option** will be deemed void and **Claimant** will receive a lump sum payment directly from the **Settlement Trust** through the Court-appointed **Claims Administrator** and the **Settlement Program**.  With respect to the **Structured Settlement Option**:

a.  Selection by **Claimant** of the **Structured Settlement Option** shall not increase the payment obligation referred to in Paragraph 2 of the **Individual Release** (with any fees or expenses of the structured settlement broker, **Assignee** or **Annuity Issuer** to be payable from the **Structured Settlement Amount**).

Claimant ID:
Claim ID:

b. The **Assignee** is the sole party to whom the **Settlement Trustee** or the **Settlement Trust** owes the obligation to pay the **Structured Settlement Amount** for all purposes including specifically Section 1.461-1(g)(1)(ii) of the Treasury Regulations (Title 26, Code of Federal Regulations). The payment of the **Structured Settlement Amount** by the **Settlement Trust** to the **Assignee** shall fulfill all obligations that any **Released Parties** (including the **Settlement Trustee** and the **Settlement Trust**) have to **Claimant** under the **Settlement** with respect to the **Structured Settlement Amount** or **Claimant's** election of the **Structured Settlement Option**, including any **Periodic Payments** thereunder. **Claimant** shall have no claim with respect to the **Periodic Payments** or any other benefits with respect to **Claimant's** election of the **Structured Settlement Option** against any **Released Parties**, including the **Settlement Trustee** and the **Settlement Trust**.

c. Upon assignment and payment of the **Structured Settlement Amount** by the **Settlement Trustee** to the **Assignee**, **Claimant** irrevocably gives up any right, under any circumstances, to seek from the **Settlement Trustee**, the **Settlement Trust** or the other **Released Parties**: (1) any further payments with regard to **Claimant's Structured Settlement Option** or **Structured Settlement Amount**, including in any circumstances where, for any reason, **Claimant** fails to receive all the future **Periodic Payments**, (2) any further payments with respect to any action of the **Settlement Trustee**, the **Settlement Trust** or the other **Released Parties**, related to the **Structured Settlement Option**, as well as (3) any further payments regarding any tax, financial or other consequences of the **Structured Settlement Option**.

d. **Claimant** has sole responsibility for the tax, financial, and other consequences of the **Structured Settlement Option** to **Claimant**, including the decision to elect the **Structured Settlement Option**, and shall have no claim against the **Settlement Trustee**, the **Settlement Trust** or the other **Released Parties** in the event that **Claimant** fails, for any reason, to obtain the tax, financial or other benefits he, she or it expected to achieve from the **Structured Settlement Option**. No opinion regarding the tax consequences of this **Structured Settlement Option** to **Claimant** has been given or will be given by the **Released Parties**, nor is any representation or warranty in this regard made by virtue of the **Individual Release** (including this Attachment C). **Claimant** must consult his, her or its own tax advisors regarding the tax consequences of the **Structured Settlement Option** and any tax reporting obligations they may have with respect thereto. **Claimant's** tax obligations, and the determination thereof, are his, her, or its sole responsibility, and it is understood that the tax consequences may vary depending on **Claimant's** particular circumstances. The **Released Parties** shall have no liability or responsibility whatsoever for any such tax consequences resulting from payments under the **Structured Settlement Option**. To the extent required by law, payments made from the **Settlement Trust** under the **Individual Release** (including this Attachment C) will be reported to the appropriate authorities.

e. **Claimant** has consulted with a Court-approved structured settlement broker. **Claimant** has sole responsibility for the selection of the Court-approved structured settlement broker used to assist in connection the **Structured Settlement Option**, as well as selection of the **Assignee** and the **Annuity Issuer**; therefore, the **Settlement Trustee**, the **Settlement Trust** and the other **Released Parties** do not endorse, and shall have no liability to **Claimant** resulting from the selection of such structured settlement broker, **Assignee** or **Annuity Issuer** or from the actions

Claimant ID:
Claim ID:

of such structured settlement broker, **Assignee** or **Annuity Issuer**. **Claimant** has received full disclosure from the structured settlement broker regarding the offshore status of the **Assignee** and the **Annuity Issuer**, as applicable.

f.  **Claimant** understands and agrees that the **Settlement Trustee** will not pay the **Structured Settlement Amount** to the **Assignee** until such time as all required documents associated with the **Structured Settlement Option** have been fully executed (including execution of this Attachment C by the **Settlement Trustee** on behalf of the **Settlement Trust** in Part II and execution of the structured settlement assignment and release form by **Claimant** and **Assignee**), and all such documents must be consistent with, and contain no language inconsistent with, this **Individual Release**, including, without limitation, the provisions of this Attachment C.

g.  **Claimant** must personally sign this Attachment C to the **Individual Release**, rather than through an attorney or otherwise. An electronic signature is insufficient. In addition to signing, attesting to and vouching for the accuracy of the certifications in this Attachment C to the **Individual Release**, **Claimant** agrees to provide required information and documents regarding the **Structured Settlement Option**.

h.  The **Structured Settlement Option** does not affect the **Claimant's** obligation to pay any attorneys' fees or satisfy any potential attorney-fee liens described in Paragraph 19 of the **Individual Release**.

3.  **Claimant** hereby signs to, attests to and vouches for the completeness and accuracy of the certification, information and documentation below:

a.  I elect the **Structured Settlement Option** for all, or a portion of, the total payment obligation referred to in Paragraph 2 of the **Individual Release**, listed as the **Structured Settlement Amount** below, through my timely submission of this Attachment C to the **Individual Release**, and understand that I will receive any remaining portion of the **Award Amount** in the form of a lump sum directly from the **Settlement Trust** through the Court-appointed **Claims Administrator** and the **Settlement Program**.

b.  Upon submission of this Attachment C to the **Individual Release**, my election of the **Structured Settlement Option** is irrevocable.

c.  I understand that this **Structured Settlement Option**, including any **Periodic Payments** thereunder, is subject to the terms of the **Individual Release**, including without limitation the provisions of this Attachment C to the **Individual Release**.

d.  I have included all requested information and documentation referenced below in this Part I, and all such information and documentation is complete and accurate.

e.  I understand that the **Settlement Trustee** shall not pay the **Structured Settlement Amount** to the **Assignee** until such time as the **Individual Release** and this Attachment C to the **Individual Release** are fully executed (including execution of this Attachment C by the **Settlement Trustee** on behalf of the **Settlement Trust** in Part II and execution of the structured settlement

Claimant ID:
Claim ID:

assignment and release form by **Claimant** and **Assignee**), and all required documents associated with the **Structured Settlement Option** contain no language inconsistent with the **Individual Release** and this Attachment C to the **Individual Release**. I further understand that, if I do not fully execute this Attachment C, then I will only be eligible to receive my **Award Amount** as a lump sum payment directly from the **Settlement Trust** through the Court-appointed **Claims Administrator** and the **Settlement Program**.

f.   I understand that, assuming that all requirements of this **Structured Settlement Option** have been satisfied:

(1).  The **Settlement Trustee,** on behalf of the **Settlement Trust**, shall assign all liability for the **Periodic Payments** to the **Assignee** by entering into a structured settlement assignment and release with the **Assignee** identified on this Attachment C;

(2).  The **Assignee** shall fund its liability to make the **Periodic Payments** through purchase of an annuity or funding agreement from the **Annuity Issuer** identified on this Attachment C;

(3).  The **Assignee**, or a trust established by the **Assignee**, as applicable, shall be the sole owner of the funding agreement or annuity purchased from the **Annuity Issuer** to fund the **Assignee's** liability to make the **Periodic Payments** and shall have all rights of ownership;

(4).  The **Assignee**, or the trust established by the **Assignee**, may have **Annuity Issuer** mail payments directly to **Claimant**. **Claimant** shall be responsible for maintaining a current mailing address with the **Assignee**. The obligation of the **Assignee** to make each **Periodic Payment** shall be fully discharged upon the mailing of a valid check or electronic funds transfer in the amount of such **Periodic Payment** on or before the due date to the last address on record for **Claimant** with the **Assignee**;

(5).  Any **Periodic Payment** made after the death of **Claimant** shall be made to such person or entity as shall be designated in writing by **Claimant** to the **Assignee**. If no such person or entity is so designated by **Claimant**, such payments shall be made to the estate of **Claimant**;

(6).  The **Annuity Issuer** shall issue a guarantee of the **Assignee's** liability to make the **Periodic Payments** to **Claimant** or **Claimant's** beneficiary, which **Periodic Payment** liability is assumed by the **Assignee** through the structured settlement assignment and release; and

(7).  **Periodic Payments** cannot be accelerated, deferred, increased or decreased by **Claimant**, nor shall **Claimant** have the power to sell or mortgage or encumber same, or any part thereof, nor anticipate the same, or any part hereof, by assignment or otherwise.

g.   I was notified of my right to consult with an attorney of my choosing regarding the **Structured Settlement Option** before completing this Attachment C, and of the requirement that I consult with a Court-approved structured settlement broker regarding structured settlements.

h.   The contact information for the Court-approved structured settlement broker I have consulted with

Claimant ID:
Claim ID:

**DEEPWATER HORIZON**
CLAIMS CENTER
ECONOMIC & PROPERTY DAMAGE CLAIMS

is listed below (A list of Court-approved structured settlement brokers is available at www.deepwaterhorizoneconomicsettlement.com/structuredsettlement.php).  This Court-approved structured settlement broker assisted me in completing this Attachment C, and verified that all required information and documentation have been included.  I authorize this Court-approved structured settlement broker, the **Settlement Trustee**, the Court-appointed **Claims Administrator** and the **Settlement Program** to use and disclose any information among them as is deemed necessary and/or helpful to process my election of the **Structured Settlement Option** and to any legitimate business purposes associated with administering the settlement facility.

i.   The Court-approved structured settlement broker provided me with a certification that the **Annuity Issuer** identified on this Attachment C is an "A+ XV and above" established insurance company, and disclosed to me the offshore status of the **Assignee** and the **Annuity Issuer**, as applicable.

j.   The information regarding my structured settlement is as follows:

<u>Funding of Structured Settlement</u>

1.  Total Award Amount:  $_____

2.  Structured Settlement Amount that will be used to fund your Periodic Payments as part of the Structured Settlement Option:  $_____

3.  Amount that you elect to receive now in a lump sum:  $_____

**N.B.  The amount listed on Line 1 should equal the total of the amounts listed on Lines 2 and 3 (Line 1 = Line 2 + Line 3).**

<u>Court-approved Structured Settlement Broker</u>:

_____
*Contact Name*

_____
*Structured Settlement Broker Entity*

_____
*Address Line 1*

_____
*Address Line 2*

_____
*Email/phone/fax*

Claimant ID:
Claim ID:

Assignee:

_____
*Contact Name*

_____
*Entity Name*

_____
*Address Line 1*

_____
*Address Line 2*

_____
*Email/phone/fax*

_____
*Wiring Instructions*

Annuity Issuer:

_____
*Contact Name*

_____
*Entity Name*

_____
*Address Line 1*

_____
*Address Line 2*

_____
*Email/phone/fax*

Periodic Payment Schedule:

Payment Amount          Payment Date

**Structured settlement assignment and release form, already executed by Claimant and Assignee, must be attached hereto.**

Claimant ID:
Claim ID:

| **SIGNATURES** |
|---|

_____     _____     _____

**Claimant's** Name                 **Claimant's** Signature (and Title,     Date
                                           if Business Entity Claimant)

_____     _____     _____

**Claimant's** Spouse's Name,        **Claimant's** Spouse's Signature,    Date
   if applicable                           if applicable

| **PART II:  SETTLEMENT TRUSTEE ACCEPTANCE OF STRUCTURED SETTLEMENT** |
|---|

The **Settlement Trustee** agrees, on behalf of the **Settlement Trust**, to make the **Periodic Payments** listed in Part I above to or on behalf of **Claimant**, conditioned upon the **Settlement Trustee** assigning such obligation to make the **Periodic Payments** to the **Assignee**.  With respect to the **Periodic Payments**, the sole obligation of the **Settlement Trustee**, on behalf of the **Settlement Trust**, shall be to pay the **Structured Settlement Amount** to the **Assignee** as consideration of the **Assignee's** assumption of the entire obligation to make the Periodic Payments described in Part I above.  Upon execution of this Part II, the **Settlement Trustee**, on behalf of the **Settlement Trust**, shall assign the **Settlement Trust's** obligation to make the **Periodic Payments** by executing the structured settlement assignment and release form attached hereto (provided that such assignment and release form must already be executed by both **Claimant** and **Assignee**).

**The Settlement Trustee's acceptance of Claimant's Structured Settlement Option is subject to the terms of the Individual Release, including, without limitation, the provisions of this Attachment C to the Individual Release.**

**Trustee of Settlement Trust**
Patrick Juneau

By:_____       _____
   Patrick Juneau                        Date

Claimant ID:
Claim ID:

# EXHIBIT C

# NON-QUALIFIED ASSIGNMENT AND RELEASE

"Claimant": _____

"Assignor": *Deepwater Horizon* Economic and Property Damages Settlement Trust

"Assignee" : Allstate International Assignments Ltd.

"Issuer": Allstate Life Insurance Company

"Effective Date": Date of the transfer of the Structured Settlement Amount (listed on Attachment C to the Individual Release) by Assignor to Assignee

This Non-Qualified Assignment and Release Agreement (the "Agreement") is made and entered into as of the Effective Date by and among the undersigned parties with reference to the following:

1. Claimant has executed an Individual Release (including the election of the Structured Settlement Option pursuant to Attachment C thereto), dated_____ (the "Release") under which, in accordance with and subject to the terms of such Release:

    a. Assignor is obligated to make certain periodic payments listed on Addendum No. 1 hereto (the "Periodic Payments") to Claimant in accordance with the terms of the Release,

    b. Claimant is entitled to receive such Periodic Payments;

2. The parties desire to effect an assumption of the Assignor's Periodic Payment liability by the Assignee and a full and complete discharge of Assignor with respect to such Periodic Payment liability.

THEREFORE, the parties agree as follows:

1. Assignee hereby agrees to pay Claimant the Periodic Payments.

    a. The liability to pay the Periodic Payments shall be a liability of the Assignee alone, and specifically not of the Assignor.

    b. The Assignee shall fund its liability to make Periodic Payments by purchasing a funding agreement issued by the Issuer. All rights of ownership and control of such funding agreement shall be and remain vested in the Assignee exclusively.

    c. The Assignee may have the Issuer send payment under any funding agreement purchased hereunder directly to the payee(s) specified in Addendum No. 1. Such direction of payments shall be solely for the Assignee's convenience and shall not provide the Claimant or any payee with any rights of ownership or control over the funding agreement, or against the Issuer.

      d.  Claimant has no rights against the Assignee greater than those of a general creditor. Assignee is not required to and will not set aside specific assets to secure the Periodic Payments.

      e.  None of the Periodic Payments may be accelerated, deferred, increased or decreased and may not be anticipated, sold, assigned or encumbered. Any attempts to do so will be void.

2.  Assignor is hereby completely and irrevocably released and discharged from any liability to Claimant with respect to the Periodic Payments. Claimant shall look only to the Assignee for the Periodic Payments and shall have no claim against Assignor with respect to the Periodic Payments, regardless of any insolvency or bankruptcy of the Assignee or the Issuer or otherwise.  The sole liability of the Assignor with respect to the Periodic Payments shall be a liability to make the Payment to the Assignee as described in Section 4 of this Agreement, so that the Assignee is hereby the sole person to whom liability is owed with respect to the Periodic Payments, within the meaning of U.S Treasury Regulation § 1.461-4(g)(1)(ii).

3.  Assignor hereby assigns the liability to make the Periodic Payments to the Assignee and the Assignee hereby assumes the Assignor's liability to make the Periodic Payments.

      a.  The  Assignee's liability to make the Periodic Payments is no greater than that of the Assignor immediately preceding this Agreement.

      b.  Assignee is not required to and will not set aside specific assets to secure the Periodic Payments.

4.  Assignor hereby agrees to pay the Assignee such good and valuable consideration as is described on Attachment C to the Release as the Structured Settlement Amount ("Payment"). By virtue of the Payment and the Assignee's assumption of the liability to make the Periodic Payments, the Assignor is released and discharged from any further liability to the Assignee or the Claimant with respect to the Periodic Payments.

5.  In the event that the Release is declared terminated by a court of law with proper jurisdiction, this Agreement shall terminate; upon termination of this Agreement, (a) the Assignee, the Assignor, the Trustee and Directed Trustee of the *Deepwater Horizon* Economic and Property Damages Settlement Trust, and BP (which, for purposes of this Agreement, shall have the same meaning as under the Release) shall have no liability to make the Periodic Payments to the Claimant, and (b) Claimant irrevocably gives up any right, under any circumstances, to seek the Periodic Payments from the Assignee, the Assignor, the Trustee and Directed Trustee of the *Deepwater Horizon* Economic and Property Damages Settlement Trust, or BP.  The Assignee shall then assign ownership of any funding agreement purchased hereunder to the Assignor or, if the Assignor has been terminated, to BP Exploration & Production Inc.

6.  This Agreement shall be binding upon the respective representatives, heirs, successors and assigns of the Claimant, the Assignor, and the Assignee and upon any person or entity that may assert any right hereunder or to any of the Periodic Payments.

**Assignor: _Deepwater Horizon_**
**_Economic and Property Damages_**
**_Settlement Trust_**

By: _____

Title:  Trustee

**Assignee: Allstate International**
**Assignments Ltd.**

By: _____

Title:

**Claimant:**

By: _____

Title:

**Addendum No. 1**
**Description of Periodic Payments**

Payee: *(Claimant)*

*(Insert benefit schedule)*

**Initials**

Assignor: _____

Assignee: _____

Claimant: _____