

U.S. Department of Justice
Environmental Enforcement Section
Environment & Natural Resources Division

*P.O. Box 7611*
*601 D Street NW*
*Washington, DC 20044-7611*                                  *Telephone (202) 616-6537*

**VIA E-MAIL**

December 6, 2012

The Honorable Sally Shushan
United States Magistrate Judge
United States District Court for the Eastern District of Louisiana
500 Poydras Street
New Orleans, LA 70130

RE: Anadarko's Request for Additional Deposition Time with Stewart Griffiths

Dear Judge Shushan,

I write in response to Anadarko's request for additional deposition time with Dr. Stewart Griffiths. The entirety of Anadarko's complaint is that the witness would not divulge, during a Rule 30(b)(6) deposition dedicated to a particular published paper, what information the witness learned in the course of performing attorney-directed consulting work that commenced *after* publication of the paper. Anadarko's position has no legal support, is contrary to the Court's prior rulings on this issue, and is inconsistent with the position Anadarko has taken in defending its own witnesses. Therefore, its request should be denied.

Dr. Griffiths was designated to testify as a 30(b)(6) witness for one portion of Topic 82 in the United States 30(b)(6) notice – specifically, the work *he* performed to analyze the rate of flow from the Macondo well (Attachment A, August 31, 2012 letter from Nat Chakeres to Judge Shushan and parties, listing "Griffiths paper" as the sole designation for Dr. Griffiths.)

Dr. Griffiths performed an independent analysis distinct from the analyses performed by other members of Sandia National Labs; thus, he was designated to testify as a 30(b)(6) witness as to only the work he performed. Dr. Griffiths testified that that work was substantially complete by December 2010, and he later published his results in a peer-reviewed journal. Dr. Griffiths fully answered every question relating to the work he performed during this period to the best of his ability.

During the deposition, the United States disclosed that Dr. Griffiths had been retained as a consultant and potential testifying expert.  He was retained April 10, 2012, after his work on the report was complete, and after he had retired from Sandia National Labs.

Anadarko has two core contentions, and both are erroneous.  The first is that Dr. Griffiths's current opinions should not be considered privileged.  It asserts no legal support for this position, because there is none – the opinions of litigation consultants, and potential testifying experts, are entitled to work product protection prior to the disclosure of expert reports.  Fed. R. Civ. P. 26(b)(4)(D); *see also Duncan v. Chevron USA, Inc.*, 2011 WL 245652 (E.D. La., June 16, 2011) (granting motion to quash subpoena of consulting expert).  The United States, furthermore, is under no obligation to disclose expert opinions through its witnesses prior to the deadline for its expert reports.  The Court agreed with this view when the parties disputed whether they could question Dr. Kris Ravi, who had been part of Halliburton's internal investigation, about Halliburton's current view on best practices:

> THE COURT: Well, it's a fine line, but I kind of look at it as **what do you believe in your capacity with Halliburton is the best practice. Is that opinion, or is that fact?**
> MR. GODWIN: Wouldn't that be -- it seems to me, if they start in on that, it's going to be an opinion. If they were asking him what did Halliburton do, what did you do, what are you aware Halliburton did, what policies, procedures, what do they have with respect to testing, what was the protocol regarding notifying the customer and those things, those are factual questions that I think he could speak to, even though he was not involved in Macondo. **But, in terms of asking his opinion about what do you think is the best practice or whatever, I wouldn't want to get off into opinion testimony until we, in fact, decide that he's going to be a testifying expert** because, as a fact witness, he would be talking about things that he has knowledge of, either firsthand or through hearsay, and I wouldn't have an issue with that.
> THE COURT: **Totally agree with that**, and he would not be questioned with regard to anything he did post-retention.
> MR. GODWIN: Okay.
> THE COURT: No, **I think that if you designate him as a testifying expert, that's when his deposition will be taken**. Okay.

(Attachment D, July 8, 2011 Working Group Conference Transcript, Docket #3325, 66:21–67:22) (emphasis added).

Other parties, most notably Anadarko itself, have taken similar positions with respect to attorney-directed investigative work.  Anadarko instructed one Phase I witness, Darrell Hollek, multiple times not to testify about information learned and conclusions reached during an attorney-directed investigation (Attachment E).  BP instructed Dr. Ellen Williams not to answer questions regarding the basis for a statement BP made in a submission to the President's Oil Spill Commission (Attachment B).  Dr. Andy Woods of the BP Institute was instructed not to testify about work performed after he became retained by BP on October 15, 2010 (Attachment C).

This consistency is unremarkable because it is plainly proper to instruct witnesses not to testify about matters protected by the work product doctrine.

Anadarko's second contention is that Dr. Griffiths was unable to sort out in his mind which information he reviewed on a privileged basis and which information he reviewed in preparing his report. This contention is also incorrect – Dr. Griffiths was fully able to answer every question about his report, the work contained in it, and the data he relied upon in drafting it.

The *only* questions Anadarko complains Dr. Griffiths did not answer, or did not answer completely, related to work he performed or information he reviewed after he was retained by the United States Department of Justice in April of 2012. Anadarko complains that Dr. Griffiths would not answer questions about his "present view" on a pressure gauge offset, or if he "still believes" he used the right offset, or if he "still believes" he used appropriate discharge coefficients in his model. These questions were clearly aimed at eliciting his current opinions, which are protected. As demonstrated in the excerpts provided by Anadarko, Dr. Griffiths was instructed not to answer certain questions that required him to disclose opinions that he has formed as a result of reviewing privileged materials. The excerpts also make clear that he was instructed to answer questions if he could do so without disclosing privileged information. At several points he stated that he was not sure he could answer without divulging privileged information. After conferring with counsel, he gave responsive answers that did not divulge privileged information. This reflects nothing more than appropriate caution on the part of a witness who does not want to inadvertently reveal privileged information. Dr. Andy Woods from the BP Institute, a BP consultant, was similarly unsure of whether he could answer certain questions during his deposition, and requested similar guidance from counsel prior to answering (Attachment C).

Anadarko has suffered no prejudice, and certainly no prejudice that would entitle it to two extra hours of questioning of Dr. Griffiths (which is over quadruple the time Anadarko was allocated for the witness in the first place). If Dr. Griffiths submits an expert report, the parties will have the full opportunity to ask him about his opinions in his expert deposition, just like every other expert. They will also be provided with a full list of materials relied upon by Dr. Griffiths in forming his opinions. If Dr. Griffiths does not submit an expert report, Anadarko will have been deprived <u>solely</u> of the opportunity to ask Dr. Griffiths what he learned in the course of his work as a consultant to the Department of Justice, which is something it is not be entitled to have absent a showing of extraordinary circumstances under Fed. R. Civ. P. 26(b)(4)(D). Dr. Griffiths's work on behalf of the Department of Justice is plainly entitled to work product protection based on the Court's prior rulings, and Anadarko cannot seriously argue to the contrary. Therefore, Anadarko's request should be denied.

Respectfully submitted,

*/s/ A. Nathaniel Chakeres*
A Nathaniel Chakeres
Trial Attorney

3

Environmental Enforcement Section
Environment & Natural Resources Division
P.O. Box 7611
601 D Street NW
Washington, DC 20044
aristide.chakeres@usdoj.gov

CC: Liaison Counsel

Attachments:

Attachment A: August 31, 2012 Letter from Nat Chakeres listing 30(b)(6) designations
Attachment B: Excerpt from the Deposition of Dr. Ellen Williams
Attachment C: Excerpt from the Deposition of Dr. Andy Woods
Attachment D: Excerpt from the July 8, 2011 Working Group Conference Transcript
Attachment E: Excerpt from the Deposition of Darrell Hollek