IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  Oil Spill by the Oil Rig     * | MDL No. 2179 |
| "Deepwater Horizon" in the     * | |
| Gulf of Mexico, on April 20, 2010   * | SECTION: J |
| * | |
| Applies to:  All Cases in Pleading    * | JUDGE BARBIER |
| Bundle B3     * | |
| * | MAGISTRATE SHUSHAN |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANT NALCO COMPANY'S OPPOSITION TO PLAINTIFF MALCOLM COCO'S MOTION TO RECONSIDER

In his Motion to Reconsider (Rec. Doc. 8075), Plaintiff Malcolm Coco argues that the Court should reverse the Order granting Nalco Company's ("Nalco's") Motion for Summary Judgment and allow him to conduct discovery regarding Corexit and its placement on the National Contingency Plan ("NCP"). "Reconsideration . . . is not to be lightly granted" and is "an extraordinary remedy that should be used sparingly." *Lightfoot v. Hartford Fire Ins. Co.*, Case No. 07-433, 2012 WL 711842, at *3 (E.D. La. Mar. 5, 2012). Indeed, such a motion should only be granted: (i) to correct a manifest error of law or fact; (ii) where the movant presents newly discovered evidence; (iii) to prevent manifest injustice; or (iv) where there is an intervening change in controlling law. *Id.* at *2 (holding standards that govern Rule 59(e) motions to amend or alter a final judgment apply to Rule 54(b) motion to reconsider partial grant of summary judgment). None of these justifications is present. The arguments on which Plaintiff Coco bases his motion are groundless and Nalco respectfully requests that the Court deny his motion.

*First*, Plaintiff Coco argues that the Court should not have relied on formal, voluntary stipulations from the United States – which were signed by the United States Department of Justice (the "Stipulations") – in holding that federal law preempts the claims asserted in the "B3" Master Complaint.  He asserts that the Court accepted the United States' Stipulations "due to the Plaintiffs' Steering Committee's ('PSC') decision not to conduct discovery regarding Nalco and the facts surrounding their chemical, Corexit, being placed on the National Contingency Plan schedule."  (Pl.'s Mem. in Supp. of Mot. to Reconsider at 1 (Rec. Doc. 8075-1.))  The Court's opinion says no such thing and Plaintiff Coco's assertion is contradicted by the plain language of the Court's Order.  The Court did not merely accept the Stipulations at face value, but concluded that the Stipulations were reliable based in part on the fact that "[t]he United States undertook significant efforts to review the documentary evidence available and canvass the relevant witnesses to assemble" the Stipulations.  (Order and Reasons at 7 (Rec. Doc. 8037.))  The Court also noted that throughout the course of this multidistrict litigation, the United States repeatedly admitted that the Federal On-Scene Coordinator ("FOSC") approved dispersant application during the oil spill response, and produced in discovery all relevant dispersant approval letters and Incident Action Plans.  (*Id*. at 8.)  Thus, the Stipulations were consistent with other record facts before the Court.  Further, the Court held that the record as a whole showed that Nalco or its predecessor complied with the NCP Product Schedule listing requirements, that the FOSC exercised ultimate decision-making authority over the use of dispersants, and that the FOSC authorized the application of dispersants throughout the spill response.  (*Id*. at 14-16, 29-32.)

*Second*, Plaintiff Coco's motion to reconsider the Court's Order so that he can pursue discovery flies in the face of the pre-trial orders governing this multidistrict litigation.  Early on in this proceeding, the Court ordered that a PSC should be appointed to "conduct and coordinate

the discovery stage of this litigation." (Pre-Trial Order No. 1 at 13 (Rec. Doc. 2.))  Specifically, the PSC was established to "[i]nitiate, coordinate, and conduct all pretrial discovery on behalf of plaintiffs in all actions which are consolidated with the instant multidistrict litigation" and "[c]onduct all discovery in a coordinated and consolidated manner on behalf and for the benefit of all plaintiffs." (Pre-Trial Order No. 8 at 3 (Rec. Doc. 506)).  In addition, Plaintiff Coco's assertion that the PSC did not conduct discovery related to Nalco and Corexit is wrong.  In November 2011, the parties agreed, at the suggestion of the Court, to conduct expedited discovery related to the preemption argument that Nalco and other defendants had raised in their original motions to dismiss the "B3" Master Complaint.  This special discovery plan and schedule were set by the Court and approved by the parties so the Court could address the application of federal preemption law to claims, like Plaintiff Coco's, that fall within the scope of the "B3" Master Complaint.  After the Court issued discovery orders to facilitate the development of facts related to preemption, the PSC served Nalco with document requests, interrogatories and notice of a Rule 30(b)(6) deposition.  Nalco responded, providing interrogatory responses, producing tens of thousands of pages of documents, and producing a Rule 30(b)(6) designee, who was deposed on these very issues in January 2012.

*Third*, the discovery Plaintiff Coco asserts he wishes to take is utterly irrelevant to his claims.  In his motion, Plaintiff Coco states that his complaint asserts claims "for the injuries he [allegedly] suffered while working as a clean-up worker." (*See* Pl.'s Mem. in Supp. at 2.)  He then explains that he wishes to conduct discovery regarding whether Nalco knew that Corexit allegedly causes oil to sink. (*Id*. at 3.)  Such discovery has no relevance whatsoever to Plaintiff Coco's personal injury claims, or to any of the claims asserted in the "B3" Master Complaint. (*See* First Amended Master Complaint in Accordance with PTO No. 11 [Case Management

3

Order No. 1] Section III.B.(3) ["B3 Bundle"] at 3 (Rec. Doc. 1805-1) (explaining "B3" Master Complaint asserts personal injury and medical monitoring claims.))  Thus, such discovery would have no chance of disturbing the Court's ruling that the personal injury and medical monitoring claims asserted against Nalco in the "B3" Master Complaint are preempted by the Clean Water Act and the NCP.

Plaintiff Coco has not come close to establishing any justification for the "extraordinary remedy" of reconsideration.  *Lightfoot*, 2012 WL 711842, at *3.  For all of these reasons, Nalco respectfully requests that the Court deny Plaintiff Coco's Motion to Reconsider.

Dated:  December 18, 2012          Respectfully submitted,

By: /s/ Thomas J. Heiden
Thomas J. Heiden (IL # 6281563)
(thomas.heiden@lw.com)
Mary Rose Alexander (IL # 6205313)
(mary.rose.alexander@lw.com)
LATHAM & WATKINS LLP
233 South Wacker Dr.
Suite 5800
Chicago, IL 60606-6401
Phone: (312) 876-7700
Facsimile: (312) 993-9767

*Attorneys for Nalco Company, Nalco Holdings LLC, Nalco Finance Holdings LLC and Nalco Holding Company*

**CERTIFICATE OF SERVICE**

     I hereby certify that the above and foregoing DEFENDANT NALCO COMPANY'S OPPOSITION TO PLAINTIFF MALCOLM COCO'S MOTION TO RECONSIDER has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on this 18th day of December, 2012.

> /s/ Thomas J. Heiden
> Thomas J. Heiden (IL # 6281563)
> (thomas.heiden@lw.com)
> Mary Rose Alexander (IL # 6205313)
> (mary.rose.alexander@lw.com)
> LATHAM & WATKINS LLP
> 233 South Wacker Dr.
> Suite 5800
> Chicago, IL 60606-6401
> Phone: (312) 876-7700
> Facsimile: (312) 993-9767
>
> *Attorneys for Nalco Company, Nalco Holdings LLC, Nalco Finance Holdings LLC and Nalco Holding Company*