**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re:  **Oil Spill by the Oil Rig** *Deepwater Horizon* **in the Gulf of Mexico, on April 20, 2010** | **MDL No. 2179** |
| | **SECTION: J** |
| **This document applies to:** *All Cases* | **JUDGE BARBIER** |
| | **MAGISTRATE SHUSHAN** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TRANSOCEAN'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS  AS TO PUNITIVE DAMAGES CLAIMS**

Transocean Offshore Deepwater Drilling Inc., Transocean Holdings LLC, Transocean Deepwater Inc., and Triton Asset Leasing GmbH (collectively "Transocean"), respectfully submits this Memorandum of Points and Authorities in Support of Transocean's Motion for Partial Judgment on the Pleadings as to Punitive Damages Claims.  For the reasons set forth below, the Court should grant Transocean's Motion for Partial Judgment on the Pleadings as to the plaintiffs' punitive damages claims.

**I.      INTRODUCTION**

On April 18, 2012, BP and the plaintiffs entered into an Economic and Property Damages Settlement Agreement and a Medical Benefits Settlement Agreement ("Settlement Agreements").[1]  (Rec. Doc. 6430, 6273.)  In addition to resolving numerous disputes between BP

---

[1] The Settlement Agreements are subject to final approval by this Court.  Transocean requests, pursuant to Federal Rule of Evidence 201(c)(2), that the Court take judicial notice of the Settlement Agreements.  *See In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 759 F. Supp. 2d 822, 828 (E.D. La. 2010) ("[A] court may take judicial notice of items in the record of

and the plaintiffs, the Settlement Agreements include provisions affecting Transocean.  Most notably, the Settlement Agreements extinguish the class members' compensatory damage claims against Transocean.  (*See* Economic And Property Damages Settlement Agreement, Rec. Doc. 6430, ¶ 4.4.10.3 ("Economic Class Members will agree that the Settlement Payments are made in full, complete, and total satisfaction of all of their compensatory damage claims against the TRANSOCEAN PARTIES . . . ."); Medical Benefits Settlement Agreement, Rec. Doc. 6273-1, ¶ XVII.A (plaintiffs agree that settlement benefits "constitute full, complete, and total satisfaction of all of their COMPENSATORY DAMAGES against the TRANSOCEAN PARTIES").)[2]  At the same time, however, the settlement class members purport to maintain their right to pursue punitive damage claims against Transocean.  (*See* Economic And Property Damages Settlement Agreement, Rec. Doc. 6430-1, ¶ 10.3 ("The Economic Class, Plaintiffs and Economic Class Members specifically reserve its and their rights for punitive and exemplary damages against Transocean . . . ."); Medical Benefits Settlement Agreement, Rec. Doc. 6273-1, ¶ II.LLLL (Medical benefits class "specifically reserve[s] . . . rights for punitive and exemplary damages against TRANSOCEAN").

There are three fundamental problems with plaintiffs' pursuit of punitive damage claims against Transocean.[3]  First, the settlement class members' punitive damage claims against

_____

the case, related cases, and matters of public record, in reviewing a motion to dismiss and/or motion for judgment on the pleadings.").

[2] Plaintiffs also agreed to give up any right to pursue indirectly any compensatory damages from Transocean.  Medical Benefits Settlement Agreement, Rec. Doc. 6273-1, ¶ XVII.B.2 (no right "to recover, through insurance, reinsurance, indemnification, contribution, subrogation, litigation, settlement, or otherwise any COMPENSATORY DAMAGES from the TRANSOCEAN PARTIES").

[3] Independent of these reasons, Transocean separately moved for judgment as to all punitive damage claims arising from the subsurface discharge of oil on the ground that, because it is not an OPA Responsible Party for subsurface discharge of oil, Transocean cannot be liable for damages arising from the subsurface discharge.

Transocean cannot survive their acknowledgement that the compensation they are receiving through the settlements fully satisfies their compensatory damage claims.  The law is clear that a plaintiff who has recovered no compensatory damages against a defendant may not recover punitive damages, and, due to the settlement, the class members now have no compensatory damages claim against Transocean.  Second, the amount BP will pay to settlement class members cannot be substituted for compensatory damages to support a claim for punitive damages against Transocean.  Using the Settlement Agreements in this manner would violate Transocean's rights under the Constitution and maritime law.  Third, even if plaintiffs could pursue punitive damages claims against Transocean, due process requires an individualized determination as to every individual claimant (whether he or she is a member of a settling class or not) to establish what, if any, damage that claimant might have suffered before a punitive award, if any, could be assessed.

Accordingly, for the reasons set forth below, the punitive damages claims against Transocean fail as a matter of law.  Transocean, therefore, moves, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings as to the plaintiffs' punitive damage claims.

## II.    <u>STANDARD OF REVIEW</u>

Courts "evaluate a motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim."  *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010).  Such a motion must be granted "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)).

III.   **ARGUMENT**

    A.    **The Settling Class Members' Punitive Damage Claims Fail Because They Agreed Not to Seek a Compensatory Damages Award from Transocean**

The settling class members' agreement not to seek compensatory damages from Transocean extinguishes their claims for punitive damages. It is well established that punitive damages are not separate and distinct from compensatory damages but, in fact, are part of a single claim. *E.g.*, *Sulzer Carbomedics, Inc. v. Oregon Cardio-Devices, Inc.*, 257 F.3d 449, 461 & n.9 (5th Cir. 2001) ("an award of punitive damages is not a separate cause of action"); *Ariz. State Carpenters Pension Trust Fund v. Miller*, 938 F.2d 1038, 1040 (9th Cir. 1991) (punitive damages claim is not "separate and distinct" from underlying compensatory damages claim); *Sussex Drug Prods. v. Kanasco, Ltd.*, 920 F.2d 1150, 1155 (3d Cir. 1990) (same).

Accordingly, because "[p]unitive damages are given as an enhancement of compensatory damages, . . . in most jurisdictions, [they] are not recoverable in the absence of a properly pleaded and proven cause of action for actual damages." *Alcorn County, Miss. v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1170 (5th Cir. 1984), *abrogated on unrelated grounds by United States v. Cooper*, 135 F.3d 960, 963 (5th Cir. 1998). Courts of this District have rejected the maritime and federal law punitive damage claims of plaintiffs who, like those here, do not have a viable claim for compensatory damages. For instance, when the mother of a drowned seaman sought punitive damages against his employer under general maritime law, the court dismissed her claim because "she has shown no evidence of actual damages." *Neal v. Barisich, Inc.*, 707 F. Supp. 862, 873 (E.D. La. 1989) (recognizing that "it is generally held that punitive damages are not recoverable unless the plaintiff recovers for actual damages as well") Likewise, the plaintiff in a case brought under 42 U.S.C. § 1983, to whom the court awarded nominal damages of one dollar, was not entitled to punitive damages because "recovery of punitive damages must

necessarily turn on the recovery of compensatory damages." *Richard v. City of Harahan*, 6 F. Supp. 2d 565, 576 (E.D. La. 1998) (quotation marks omitted). *See also Parr v. Nolty J. Theriot, Inc.*, No. 89-3295, 1990 WL 66380, at *3 (E.D. La. May 16, 1990) (citing as one of the "traditional limits on the right to recover punitive damages" under general maritime law that "the plaintiff may not recover punitive damages absent a recovery for compensatory damages").

The Fifth Circuit has come to similar results in numerous cases involving state law. Applying Texas law in a fraud case, the court reversed a punitive damage award "because no actual damages resulting from [defendant's] alleged misrepresentation . . . were requested or awarded." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 417 (5th Cir. 2009). The Fifth Circuit applied Mississippi law to the same effect in *Alcorn County*, holding that, "choosing as it did to make no claim for actual damages . . . , the county had no claim for punitive damages." 731 F.2d at 1170; *see also Lanier v. Sallas*, 777 F.2d 321, 325 (5th Cir. 1985) ("A cause of action for punitive damages is not, however, separate and distinct from the underlying claim for compensatory damages. Texas, like the majority of states, limits punitive damages to cases in which actual compensatory damages are found."); *Vidrine v. Enger*, 752 F.2d 107, 110 (5th Cir. 1984) ("We find it sufficient to hold that, absent actual damages arising from a legally cognizable cause of action, Mississippi would not allow punitive damages. Exemplary or punitive damages are additional to compensatory damages. . . . There being no actual damages, there can be no addition.").[4]

Even when a plaintiff *has* suffered actual damages, if it has been fully compensated for those damages by one defendant, it may not bring a stand-alone claim for punitive damages

---

[4] The Fifth Circuit has upheld punitive damage awards in the absence of compensatory damages in one setting: civil rights cases in which the plaintiff has established a constitutional violation. *See, e.g.*, *La. ACORN Fair Housing v. LeBlanc*, 211 F.3d 298, 302–03 (5th Cir. 2000). That exception to the general rule plainly does not apply here.

against another defendant.  For example, in *Thrall Car Manufacturing Co. v. Lindquist*, 495 N.E.2d 1132, 1133-34 (Ill. App. Ct. 1986), the plaintiff sued three defendants for compensatory and punitive damages.  After winning summary judgment against one defendant for the full amount of damages it sought in its complaint, the plaintiff attempted to maintain its action for punitive damages against the other two defendants.  *Id.* at 1136.  For reasons that apply with equal force here, the appellate court held that it could not: "[P]unitive damages are in addition to compensatory damages and cannot be allowed unless actual damage is shown.  Plaintiff was fully compensated for its actual damages and no others are alleged; the claims against [the remaining defendants] are thus only for punitive damages and cannot stand."  *Id.*; *cf. Virgilio v. City of New York*, 407 F.3d 105, 117–18 (2d Cir. 2005) (plaintiffs who waived right to sue for compensatory damages by agreeing to participate in compensation fund could not maintain action for punitive damages because, under New York law, "once the compensatory claim was satisfied, the parasitic claim for punitive damages was also  extinguished").

Here, the settling class members have been compensated fully for their actual damages by BP and expressly agreed not to seek recovery of any compensatory damages from Transocean. Plaintiffs made the choice to agree that their compensatory damages are fully satisfied in order to settle their claims and obtain significant compensation from BP.  Indeed, the settlement will pay most class members a "risk transfer premium" designed to compensate them for punitive damages, among other things.  (Plaintiffs' Memorandum in Support of Final Approval of Economic and Property Damages Class Settlement (Rec. Doc. 7101–2, at ii, 12, 35.).)  Having chosen to forego the chance to seek compensatory damages against Transocean, plaintiffs cannot now proceed against Transocean on a stand-alone punitive damages claim.  Indeed, to permit plaintiffs to split their punitive damages claim from the compensatory damages claim, as they

seek to do, runs counter to the basic rule against splitting claims.  *See Hogue v. Royse City, Tex.*, 939 F.2d 1249, 1255 (5th Cir. 1991) (discussing well established rule against claim splitting). Accordingly, this Court should grant judgment on the pleadings in favor of Transocean as to the settling class members' punitive damage claims.

      **B.**      **The Settlement Agreement Cannot Be Used as the Basis for Punitive Damages against Transocean.**

      The settling class members cannot save their punitive damage claims by relying on the compensation paid to them by BP through the Settlement Agreements as a basis for a punitive damages claim against Transocean.  Using the Settlement Agreements as the basis for a punitive damages award against Transocean would violate Transocean's rights under the Constitution and maritime law.

      "The Due Process Clause . . . prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).  Punitive damage awards fall within this prohibition if they are not reasonably related to compensatory damages.  *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580 (1996) ("The principle that exemplary damages must bear a 'reasonable relationship' to compensatory damages has a long pedigree."); *Poullard v. Turner*, 298 F.3d 421, 423 (5th Cir. 2002) ("It is a well-established principle that punitive damages must bear a 'reasonable relationship' to compensatory damages.").  Although the Supreme Court has "decline[d] . . . to impose a bright-line ratio which a punitive damages award cannot exceed" without running afoul of the Constitution, it has held that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."  *State Farm*, 538 U.S. at 425.  After an extensive survey of maritime law punitive damage awards and considering this constitutional standard, the Supreme Court has held that a "1:1 ratio" between

actual and punitive damages "is a fair *upper* limit" for maritime law cases.  *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 513 (2008) (emphasis added).

Given that both the Constitution and maritime law require the trier of fact to consider the amount of compensatory damages awarded when evaluating the reasonableness of any punitive damage award, a defendant against whom punitive damages are sought must, as a matter of due process, have the opportunity to contest its responsibility for compensatory damages.  The Constitution does not allow a party to be subject to liability without ever having been heard on the matter.  *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (Due Process Clause mandates that "individuals whose property interests are at stake are entitled to notice and an opportunity to be heard" (internal quotation marks omitted)); *LaChance v. Erickson*, 522 U.S. 262, 266 (1998) ("The core of due process is the right to notice and a meaningful opportunity to be heard."); *Freeman v. City of Dallas*, 242 F.3d 642, 666 (5th Cir. 2001) ("Due Process . . . requires that individuals must receive notice and an opportunity to be heard before the government deprives them of property.").

If the Court were to use the amount for which BP has settled with the plaintiffs as the "compensatory damages" comparator for purposes of deriving an appropriate amount of punitive damages against Transocean, it would allow the settlement process—conducted outside of the courtroom through negotiations between BP and the plaintiffs and to which Transocean was not a party—to supplant Transocean's constitutional entitlement to legal process.  There is no basis in law or logic for using an amount for which a third party, BP, has decided to compensate the plaintiffs as a basis for any award of punitive damages against Transocean.  *See Local Number 93 v. City of Cleveland*, 478 U.S. 501, 529–30 (1986) ("Of course, parties who choose to resolve

litigation through settlement . . . may not impose duties or obligations on a third party, without that party's agreement.").

Moreover, the amount for which BP and the plaintiffs have settled represents far more than mere compensation.  In particular, it contains a Risk Transfer Premium that accounts for factors beyond any actual damage suffered by the plaintiffs.  (*See* Economic and Property Damages Settlement Agreement, Rec. Doc. 6276-1, ¶ 38.124 (risk transfer premium includes, *inter alia*, "claims for punitive damages").)  As Dr. Henry Fishkind explained in his declaration in support of BP's motion for final approval of the Settlement Agreement:

> Incorporating a Risk Transfer Premium (RTP) in the Economic Damage Claim Frameworks and Seafood Compensation Plan is an economically sound method for taking into account any risk of future loss, any risk of oil returning, liquidation of legal disputes about punitive damages, and other factors it is designed to address.  With the RTP, a Claimant is paid a multiple of his or her compensation period losses on top of those actual compensation period losses.

(Rec. Doc. 7114-5, at 10 ¶ 33.)  Accordingly, the settlement cannot be the basis for punitive damages against Transocean for the additional reasons that it represents a "multiple" of each plaintiff's "actual compensation period losses."

**C.    Alternatively, Even If Any Plaintiffs Could Pursue Punitive Damages Claims, Those Plaintiffs Would Be Required to Prove Their Compensatory Damages Individually Before Any Punitive Damages Could Be Assessed**

In the alternative, even if there were plaintiffs who could pursue punitive damage claims, not only would it be improper to use payments under the Settlement Agreements as basis for punitive damages, it would violate due process to award punitive damages without individualized determinations of compensatory damages as to each claimant.

There are some 100,000 individual claimants before the Court, and no certified class.[5] Each of these claims raises individualized issues of causation and actual damages.  As set forth above, because punitive damages are limited under maritime law to no more than a 1:1 ratio with compensatory damages, *Exxon Shipping*, 554 U.S. at 513, and also subject to constitutional limitations based on the ratio to compensatory damages, *State Farm*, 538 U.S. at 416, punitive damages cannot be assessed without valuing individual plaintiffs' compensatory damages claims.  Transocean has a due process right to have such a determination of compensatory damages made on a case-by-case basis.  Indeed, the Fifth Circuit has rejected attempts to short circuit compensatory damage determinations that depend on individual issues of causation and damages through mechanisms such as selected test cases.  *See In re Fibreboard Corp.*, 893 F.2d 706, 709–12 (5th Cir. 1990) (granting writ of mandamus and vacating trial plan that called for compensatory damages claims in 3,031 consolidated asbestos cases to be tried based on a sample of representative cases).  Accordingly, to the extent any plaintiffs have any right to pursue punitive damages claims against Transocean, those claims cannot be determined without an individual determinations of those plaintiffs' right to compensatory damages from Transocean.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Transocean's motion for judgment on the pleadings as to the plaintiffs' punitive damage claims.

DATED: December 18, 2012                    Respectfully submitted,

By:   s/ Brad D. Brian                              By:   s/ Steven L. Roberts
Brad D. Brian                                            Steven L. Roberts

---

[5] Indeed, the class action claims are not permitted in the limitation of liability action.  *In re Lloyd's Leasing Ltd. v. Bates*, 902 F.2d 368, 370 (5th Cir. 1990) (class action may not be brought or maintained in a limitation proceeding).

Michael R. Doyen
Daniel B. Levin
MUNGER TOLLES & OLSON LLP
355 So. Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel:  (213) 683-9100
Fax:  (213) 683-5180
Email: brad.brian@mto.com
         michael.doyen@mto.com
         daniel.levin@mto.com


By:   s/  Edwin G. Preis
Edwin G. Preis, Jr.
PREIS & ROY PLC
Versailles Blvd., Suite 400
Lafayette, LA 70501
(337) 237-6062
   and
601 Poydras Street, Suite 1700
New Orleans, LA 70130
(504) 581-6062

Rachel Giesber Clingman
Sean D. Jordan
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Tel:  (713) 470-6100
Fax:  (713) 354-1301
Email:  steven.roberts@sutherland.com,
         rachel.clingman@sutherland.com
         sean.jordan@sutherland.com


By:   s/ Kerry J. Miller
Kerry J. Miller
FRILOT, LLC
110 Poydras St., Suite 3700
New Orleans, LA 70163
Tel:  (504) 599-8194
Fax:  (504) 599-8154
Email: kmiller@frilot.com

John M. Elsley
ROYSTON, RAYZOR, VICKERY & WILLIAMS LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
(713) 224-8380


*Counsel for Defendants Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC,* and *Triton Asset Leasing GmbH.*

## CERTIFICATE OF SERVICE

   The undersigned hereby certifies that on this 18th day of December, 2012, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants.


         /s/  Kerry J. Miller