UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:  Oil Spill by the Oil Rig *Deepwater Horizon* in the Gulf of Mexico, on April 20, 2010 | MDL No. 2179 <br><br> SECTION: J |
| This document applies to: *All Cases* | JUDGE BARBIER <br><br> MAGISTRATE SHUSHAN |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TRANSOCEAN'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AS TO CLAIMS BASED ON SUBSURFACE DISCHARGE OF OIL

Transocean Offshore Deepwater Drilling Inc., Transocean Holdings LLC, Transocean Deepwater Inc., and Triton Asset Leasing GmbH (collectively "Transocean"), respectfully submits this Memorandum of Points and Authorities in Support of Transocean's Motion for Partial Judgment on the Pleadings as to Claims Based on Subsurface Discharge of Oil. For the reasons set forth below, the Court should grant Transocean's Motion for Partial Judgment on the Pleadings as to the plaintiffs' claims based on subsurface discharge of oil.

### INTRODUCTION

Private and state and local government plaintiffs have asserted claims against Transocean for compensatory and punitive damages for the subsurface discharge of oil from the Macondo well. BP and Anadarko also have asserted contribution claims against Transocean for subsurface discharge.[1] None of these claims for subsurface discharge of oil are viable; therefore,

---

[1] The BP-PSC settlement attempts to assign BP's contribution claims to the PSC. Transocean objects to the validity of the purported assignment of BP's claims to the "Economic Class" and

this Court should grant judgment in favor of Transocean on these claims.

First, Transocean is not liable for compensatory damages arising from the subsurface discharge of oil. This Court ruled that in Section 2704(b) of the Oil Pollution Act (OPA), 33 U.S.C. § 2704(b), Congress divided liability between mobile offshore drilling units (MODUs), like the *Deepwater Horizon*, and well leaseholders, like BP and Anadarko, assigning liability for discharge below the surface of the water to the Operator of the well (*e.g.*, BP and Anadarko) and liability for discharge on or above the surface of the water to the owner of the MODU (*e.g.*, Transocean). (Rec. Doc. 5809, at 5.) This Court also ruled that OPA displaces claims for compensatory damages under general maritime law asserted against Responsible Parties. (Rec. Doc. 3830, at 22.) Accordingly, because Transocean, as owner of the *Deepwater Horizon*, is an OPA Responsible Party, but is only liable under OPA for damages from discharge on or above the surface of the water, Transocean is not liable for compensatory damages for any subsurface discharge.

Second, plaintiffs cannot seek punitive damages from Transocean for subsurface discharge because Transocean is not liable for any compensatory damages for that discharge. This Court ruled that general maritime law punitive damage claims may *supplement* OPA compensatory damage claims. (*Id.* at 9.) But, punitive damages must be based on compensatory damages, and Transocean has no liability for subsurface discharge. A plaintiff cannot seek punitive damages from a defendant without compensatory damages liability. At a minimum, any punitive damages award in that context would violate the Supreme Court's instruction that maritime punitive damage awards not exceed a 1:1 ratio with compensatory damages. *Exxon v.*

---

to the ability of the "juridical entity" created by the settlement to pursue any claim against Transocean within the Limitation of Liability proceeding or any other proceeding. These objections are addressed in a separate motion, which would be rendered moot if the Court grants this motion.

*Baker*, 554 U.S. 471, 513 (2008). Any punitive damages award against Transocean for subsurface discharge would result in a ratio of infinity.

Third, a contribution claim under OPA cannot undo the division of liability Congress dictated in 33 U.S.C. § 2704(b) between drillers who own the MODUs and leaseholders. (Rec. Doc. 5809, at 7.) OPA permits contribution claims, 33 U.S.C. § 2709, but OPA's contribution provision works in concert with, not outside of, the liability limitations established elsewhere in the Act. Recognizing this connection, courts have held that one OPA Responsible Party cannot collect against another party in a contribution action under § 2709 an amount *greater than* the OPA liability limit that applies to that other party. *See Nat'l Shipping Co. of Saudi Arabia (NSCSA) v. Moran Mid-Atl. Corp.*, 924 F. Supp. 1436 (E.D. Va. 1996), *aff'd* 122 F.3d 1062 (4th Cir. 1997) (unpublished). Because Congress, in OPA, made MODU owners liable only for above-surface discharge, plaintiffs cannot use a contribution claim to circumvent that allocation of liability and to collect damages from Transocean for subsurface discharge.

Accordingly, this Court should grant judgment in favor of Transocean on plaintiffs' claims for compensatory and punitive damages for subsurface discharge and on claims for contribution arising from the subsurface discharge of oil.

## **BACKGROUND**

In a series of rulings, this Court narrowed and defined the universe of viable claims in this case.

First, this Court ruled in its order on the motions to dismiss the B1 Master Complaint that OPA displaced compensatory damage claims against Responsible Parties, as defined in 33 U.S.C. § 2701(32), such that all claims for damages against a Responsible Party must comply with OPA. (Rec. Doc. 3830 [B1 Order], at 26.) In the same ruling, this Court found that OPA

did not displace general maritime law claims against parties that are not OPA Responsible Parties. (*Id.*)  This Court further found that OPA does not displace punitive damages claims, ruling that plaintiffs "who would have been able to bring [punitive damages] claims prior to OPA's enactment" (*i.e.*, those who "suffered physical damage to their property as well as commercial fisherman") could assert such claims "against Responsible and non-Responsible Parties." (*Id.* at 20, 27.)

Second, on February 22, 2012, this Court ruled on various parties' cross motions for partial summary judgment that BP and Anadarko, as leaseholders, are OPA Responsible Parties for discharge below the surface of the water. (Rec. Doc. 5809 [Feb. 22 Order], at 8, 14–15.) One or more Transocean entities own, operate, or demise charter the *Deepwater Horizon*, establishing them Responsible Parties for discharge on or above the surface of the water.[2] 33 U.S.C. §§ 2701(32)(A), 2704(b).  This Court ruled, however, that because the *Deepwater Horizon* was a MODU being used as an offshore facility at the time of the spill, Transocean is *not* a Responsible Party for discharge below the surface of the water and thus is not liable for damages arising from subsurface discharge. (Rec. Doc. 5809, at 14–15.)[3]

This Court recognized that this division of liability is not only compelled by the plain text of OPA, but is also consistent with the legislative history of OPA and commentators' understanding of the statute. (*Id.* at 9.)  This Court also observed that "using the water's surface

---

[2] The February 22 Order concluded that there was a factual dispute "as to whether any oil discharged on or above the surface of the water between the time of the blowout and when the riser broke." (Rec. Doc. 5809, at 2 n.4.) Accordingly, Transocean's OPA liability for above-surface discharge, if any, has not been resolved.

[3] This Court did not rule whether Transocean could be liable for *removal costs* under OPA, 33 U.S.C. § 2704(c)(3), for subsurface discharge, noting that the removal costs section of OPA places liability not on the "responsible party" but rather on the "owner or operator" of the offshore facility, and that this Court has not resolved whether Transocean qualifies as an "operator" of the facility. (Rec. Doc. 5809, at 11 (quoting 33 U.S.C. § 2704(c)(3)).)

4

as a means of apportioning liability . . . is logical" when a MODU, like the *Deepwater Horizon*, is used as an offshore facility. (*Id.*)  The Court recognized that "OPA is rooted in economic theory—the parties benefitting the most from oil production and transportation are exposed to the greatest liability." (*Id.* at 10.)  This manifests in the limits of liability under OPA, for example, where smaller vessels have lower limits than large oil tankers. (*Id.*)  The same principle applies "when it comes to the massive profits that may be made from an offshore facility." (*Id.*)  Placing liability for the massive discharge that may occur from a well on the leaseholder, and not the MODU owner, this Court recognized, is entirely consistent with this structure and the theory on which it rests. (*Id.* at n.12.)

Following these rulings, BP settled with the PSC.[4]  (Rec. Doc. 6276, 6430.)  As the Court is aware, the PSC has acknowledged "full, complete, and total satisfaction" of its compensatory damage claims against Transocean (and Halliburton) and has agreed not to pursue any additional compensatory damages. (Rec. Doc. 6430–39, ¶¶ 1.1.1, 1.1.2.2; *see* Rec. Doc. 6430, ¶ 4.4.10.3.)  The PSC purports to reserve claims for punitive or exemplary damages against Transocean (and Halliburton). (Rec. Doc. 6430–39, ¶ 1.1.3.6.)  BP also purports to assign to the "Economic Class" (as a "juridical entity" and not to individual class members), a number of claims against Transocean and Halliburton, including with certain exceptions BP's claims to "indemnity, subrogation, or contribution for claims paid by BP and/or GCCF" before entry of the preliminary

---

[4] The settlement agreements are subject to final approval by this Court. Transocean requests, pursuant to Federal Rule of Evidence 201(c)(2), that the Court take judicial notice of the settlement agreement. *See In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 759 F. Supp. 2d 822, 828 (E.D. La. 2010) ("[A] court may take judicial notice of items in the record of the case, related cases, and matters of public record, in reviewing a motion to dismiss and/or motion for judgment on the pleadings.").

5

approval order, and all claims to "pursue reimbursement of Settlement Payment(s) under theories of indemnification, contribution, subrogation, or other theories of recovery." (Rec. Doc. 6430-39, ¶¶ 1.1.3, 1.1.3.4, 1.1.3.5.)

## STANDARD OF REVIEW

Courts "evaluate a motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). Such a motion must be granted "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)).

## ARGUMENT

### I. Transocean Is Not Liable for Compensatory Damages for Subsurface Discharge

This Court's February 22 Order recognized the clear division of liability between drilling contractors, like Transocean, that own MODUs and leaseholders, like BP, that stand to gain enormous profits from a successful well. The MODU owner is the Responsible Party for any discharge on or above the surface of the water; the leaseholder is the Responsible Party for subsurface discharge. (Rec. Doc. 5809, at 8-10.) This Court also held that OPA displaces general maritime law compensatory damage claims against Responsible Parties, like Transocean and BP. (Rec. Doc. 3830, at 22.) The result of these two rulings is that Transocean, as the owner of the *Deepwater Horizon*, is not liable for compensatory damages for subsurface discharge because OPA assigns that liability to the leaseholder.[5]

---

[5] This motion does not seek a ruling on Transocean's potential liability for above-surface discharge. (Rec. Doc. 5809, at 2 n.4 (finding that there is a factual dispute as to whether any oil

6

As this Court has recognized, Congress included a special provision in OPA, 33 U.S.C. § 2704(b), to allocate responsibility for an oil spill when a MODU is used as an offshore facility (*i.e.*, when it is being used in drilling operations). Section 2704(b), titled "Division of liability for mobile offshore drilling units," provides first that a MODU is treated as a tank vessel (and thus subject to liability limits applicable to tank vessels) for purposes of discharge on or above the surface of the water:

> For purposes of determining the responsible party and applying this Act . . . a mobile offshore drilling unit which is being used as an offshore facility is deemed to be a tank vessel with respect to the discharge . . . of oil *on or above the surface of the water*.

33 U.S.C. § 2704(b)(1) (emphasis added). The second part of § 2704(b) provides that "to the extent removal costs or damages" for any discharge on or above the surface of the water exceed the limits set out for a tank vessel in § 2704(a)(1), the MODU "is deemed to be an offshore facility." 33 U.S.C. § 2704(b)(2). OPA, however, designates "the lessee or permittee" of the drilling site as the Responsible Party for liability of an offshore facility. 33 U.S.C. § 2701(32)(C). In other words, when a MODU is in use in drilling operations, the MODU's owner (the drilling contractor) is responsible for discharge on or above the surface of the water within the limits established for tank vessels; all excess liability, including all liability for discharge *below the surface*, is the responsibility of the leaseholder of the drilling site—here, BP and Anadarko. (Rec. Doc. 5809, at 8–15.) Accordingly, Transocean's OPA liability is limited to above-surface discharge; it is not liable for damages from subsurface discharge.

The private and state and local government parties seeking compensatory damages against Transocean cannot avoid these limits by seeking compensatory damages outside of OPA.

---

discharged on or above the surface of the water).) Nor does it seek a ruling on Transocean's potential liability for removal costs under 33 U.S.C. § 2704(c)(3), another issue unresolved in the B1 Order.

7

This Court held that OPA displaces general maritime law compensatory damage claims against Responsible Parties. (Rec. Doc. 3830, at 25–26.)[6] Although this Court held that plaintiffs may seek compensatory damages under general maritime law against non-Responsible Parties (*id.*), that ruling does not create an avenue for claims against Transocean because Transocean is indisputably a Responsible Party.

The law is clear that when Congress speaks directly to a question previously governed by federal common law, it displaces preexisting common law. *City of Milwaukee v. Illinois*, 451 U.S. 304, 325 (1981) (recognizing that "invocation of federal common law . . . in the face of congressional legislation supplanting it is peculiarly inappropriate in areas as complex as water pollution control"); *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 21–22 (1981) (CWA displaces federal common law of nuisance in ocean pollution). Indeed, in the area of maritime law, "once Congress addresses a subject . . . the task of the federal courts is to interpret and apply statutory law, not to create common law." *Nw. Airlines Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 95 n.34 (1981). Congress here spoke directly to the allocation of liability between two types of Responsible Parties—the owner of the MODU and the leaseholder of the well—and allocated liability for above-surface discharge to the former and for subsurface discharge to the latter. 33 U.S.C. § 2704(b).

Permitting a general maritime law compensatory damages claims against a MODU owner like Transocean despite Congress's division of liability in § 2704(b) would be incompatible with OPA. As the Supreme Court held, when Congress "speak[s] directly to a question, the courts are not free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless." *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978) (Court would not supplement

---

[6] To the extent any party seeks damages under state law, those claims are preempted. (Rec. Doc. 3830, at 8-18.)

8

remedies available under Death on the High Seas Act (DOHSA) to allow a claim for loss of society, despite the existence of such a claim under general maritime law in territorial waters not covered by DOHSA).  Congress's decision to designate Transocean as a Responsible Party, but limit its liability to above-surface discharge, is no different than Congress's decision to impose monetary liability caps on Responsible Parties.  In either case, allowing a plaintiff to seek compensatory damages under general maritime law in excess of those limits would contravene Congress's intent.  (*See* Rec. Doc. 3830, at 26 ("To allow a general maritime claim against the Responsible Party would serve to frustrate and circumvent the remedial scheme in OPA.")); *see also* Order and Reasons, Rec. Doc. 8037, at 26 (claims should not be allowed that would "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress").)  Accordingly, this Court should grant judgment in favor of Transocean on all claims for compensatory damages for subsurface discharge.

## II. Transocean Cannot Be Liable for Punitive Damages for Subsurface Discharge

Judgment also should be granted in favor of Transocean on all claims for punitive damages under general maritime law.  This Court determined that OPA does not preclude punitive damage claims against a Responsible Party insofar as such claims would have been cognizable under general maritime law.  (Rec. Doc. 3830, at 26–27.)[7]  But, punitive damage claims cannot proceed where a party is *not liable* for compensatory damages.  Accordingly, because Transocean is not liable for compensatory damages for subsurface discharge, it cannot be liable for punitive damages based on subsurface discharge.

Both the Fifth Circuit and courts in this district have recognized that punitive damages

---

[7] Transocean objects to this ruling, but the Court need not revisit the ruling for purposes of this motion.

are not recoverable in the absence of compensatory damages. *Alcorn County, Miss. v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1170 (5th Cir. 1984) ("Punitive damages are given as an enhancement of compensatory damages, . . . [therefore] in most jurisdictions, [they] are not recoverable in the absence of a properly pleaded and proven cause of action for actual damages."), *abrogated on unrelated grounds by United States v. Cooper*, 135 F.3d 960, 963 (5th Cir. 1998); *Neal v. Barisich, Inc.*, 707 F. Supp. 862, 873 (E.D. La. 1989) ("[I]t is generally held that punitive damages are not recoverable unless the plaintiff recovers for actual damages as well."); *see also Sulzer Carbomedics, Inc. v. Oregon Cardio-Devices, Inc.*, 257 F.3d 449, 460–61 & n.9 (5th Cir. 2001) ("an award of punitive damages is not a separate cause of action" from an award of compensatory damages).

Indeed, permitting recovery of punitive damages under general maritime law against Transocean for subsurface discharge—when Transocean has no OPA liability—could not be squared with the Supreme Court's decision in *Exxon v. Baker*, 554 U.S. 471 (2008). *Baker* held that, as a matter of federal common law, a 1:1 ratio of punitive to compensatory damages "is a fair *upper limit*" in maritime cases, though the ratio very well could be less. *Id.* at 513 (emphasis added). Indeed, the *Baker* opinion makes clear that the ratio generally is well below the 1:1 limit. *Id.* at 497–98 & n.14. But permitting any punitive award against Transocean for subsurface discharge would result in a ratio of *infinity*. Simply put, punitive damages cannot be awarded against Transocean for subsurface discharge when Congress has assigned compensatory liability for that discharge to other parties.

Nor could punitive damages be supported on a theory that Transocean is liable for compensatory damages for subsurface discharge under general maritime law. As set forth above, as a Responsible Party, Transocean has no liability under general maritime law for compensatory

damages. Moreover, imposing punitive damages against Transocean for subsurface discharge would be incompatible with this Court's reasoning in the B1 Order. In finding that a general maritime punitive damages claim could supplement an OPA compensatory damages claim against a Responsible Party, this Court concluded that punitive damages were not incompatible with OPA because the finding of gross negligence that would support punitive damages would also support additional compensatory damages recovery under OPA: "[I]mposition of punitive damages under general maritime law would not circumvent OPA's limitation of liability" this Court reasoned, because "the behavior that would give rise to punitive damages under general maritime law—gross negligence—would also break OPA's limits of liability." (Rec. Doc. 3830, at 27.) But, imposition of punitive damages when Congress has concluded there is no OPA compensatory liability *would* circumvent OPA's liability limits by allowing for recovery of punitive damages when OPA has assigned no liability for compensatory damages. Accordingly, there is no basis to impose compensatory damages liability for subsurface discharge under general maritime law against Transocean to support a punitive damages claim.

### III. Transocean Cannot Be Liable for Contribution Claims for Damage Caused by Subsurface Discharge

Although this Court already recognized that OPA divides above- and below-surface liability between MODU owners and leaseholders, Anadarko and the PSC (asserting BP's claims) ask this Court to undo this clear division of liability by pursuing *contribution* claims against Transocean for damages arising from the subsurface discharge of oil. Neither the text, structure, nor purpose of OPA permit a contribution claim to recover damages for subsurface discharge.[8]

---

[8] The Court has not ruled whether Transocean is directly liable for removal costs under 33

OPA's contribution provision, 33 U.S.C. § 2709, does not upset Congress's allocation of liability between MODU owners and oil-well Operators. The contribution provision provides:

> A person may bring a civil action for contribution against any other person who is liable or potentially liable under this Act or another law.

33 U.S.C. § 2709. This provision works in concert with the liability limitations established elsewhere in OPA. In *National Shipping Co. of Saudi Arabia (NSCSA) v. Moran Mid-Atlantic Corp.*, 924 F. Supp. 1436 (E.D. Va. 1996), *aff'd* 122 F.3d 1062 (4th Cir. 1997) (unpublished), the court considered the interplay between OPA's liability caps and its contribution provision. In *NSCSA*, a tugboat owned by Moran collided with an NSCSA oil tanker, spilling oil into a Virginia river. *Id.* at 1440–42. NSCSA was deemed the OPA Responsible Party and paid damages and removal costs under the Act. *Id.* at 1446. It then sued Moran for contribution under OPA § 2709, asserting claims under general maritime and state law. *Id.* The court reasoned that because NSCSA's liability arose under OPA (and not state law or general maritime law), "NSCSA may not go beyond the law which defined its own liability, and which provides it with a remedy [for contribution]," by suing under state law or general maritime law outside of OPA. *Id.* at 1449. Focusing on OPA's contribution provision, the court recognized that the provision allows for contribution claims under OPA "or another law," 33 U.S.C. § 2709, and the court ruled that Moran was liable to NSCSA for contribution under "'another law,' *i.e.*, general maritime law." *NSCSA*, 924 F. Supp. at 1449. The court went on to hold, however, that because Moran's contribution liability arose under OPA, it was subject to OPA's liability caps in § 2704, which limit liability for vessels based on their gross tonnage. *Id.* ("Because Moran is liable to NSCSA through section 2709 of OPA, Moran's liability is limited to $500,000 under section

---

U.S.C. § 2704(c)(3). *See supra* n.4. Accordingly, this motion does not seek a ruling on contributory liability for removal costs.

2704(a), so long as no exception to limitation applies.").

Affirming that decision, the Fourth Circuit observed that OPA prevented NSCSA from using state law to collect damages in excess of OPA's liability cap, reasoning that OPA broadly limits the liability of parties and that those caps "would be rendered meaningless" if a Responsible Party could recoup its OPA liability through state law outside of OPA. *NSCSA*, 122 F.3d at *4 (unpublished); *see also Mid-Valley Pipeline Co. v. S.J. Louis Constr., Inc.*, 847 F. Supp. 2d 982, 992 (E.D. Ky. 2012) (permitting OPA Responsible Party to bring contribution claim against third party whose equipment punctured an oil pipeline, where the OPA liability limits were the same for both parties and thus the contribution action "will not negate any provision of the OPA").

This common-sense reading of OPA is well supported by OPA's text, particularly as it relates to liability for MODUs. Section 2704(b)(1), which sets forth the liability limits for MODUs, applies "[f]or purposes of determining the responsible party *and applying this Act*." (Emphasis added.) In other words, § 2704(b)(1) cannot be limited simply to determining the Responsible Party, but carry no force when it comes to contribution actions under § 2709. The plain language of § 2704(b) clearly provides that the liability divisions apply to the entire Act—including the contribution provision, § 2709. Indeed, were § 2704 read to address only which party should be deemed the Responsible Party, the second clause of the statute—"for purposes of . . . applying this Act"—would be rendered surplusage. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks omitted)); *Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 472 (1997) ("legislative enactments should not be

13

construed to render their provisions mere surplusage"). Moreover, the fact that Congress titled § 2704(b) "Division of liability for mobile offshore drilling units," confirms that Congress intended the provision to allocate liability between MODU owners and well Operators, not just to determining the Responsible Party in the first instance. *E.g.*, *Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) ("[S]tatutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute.") (internal quotation marks omitted).

This Court need not conclude an OPA Responsible Party could *never* seek damages from a third party in excess of the § 2704 liability limits. As *NSCSA* recognized, if a Responsible Party has a claim arising *outside* of OPA, that claim would not be subject to the OPA caps. *NSCSA*, 924 F. Supp. at 1449. However, because this Court already ruled that state law claims are preempted and that OPA displaces general maritime law claims for compensatory damages, any contribution claim against Transocean plainly arises through § 2709, not independently under state or general maritime law. (*See, e.g.*, Rec. Doc. 2074, at 26 [BP's contribution claims under OPA and general maritime law for damages resulting from spill]; Rec. Doc. 2075, at 25 [BP's contribution claim under § 2709 relating to United States' OPA claim against BP]; Rec. Doc. 338, at 44–45 [Anadarko's contribution claim under § 2709 and general maritime law].)

Applying the liability caps in § 2704 to contribution actions under § 2709 is also consistent with the third-party liability provisions set forth in § 2702(d). Section 2702(d)(1)(A) provides that when a Responsible Party establishes that a discharge was solely caused by a third party (who is not in contractual relationship with the Responsible Party), liability shifts to the third party. This third-party liability provision goes on to provide that "[i]f the act or omission of a third party that causes an incident occurs in connection with a vessel or facility owned or

14

operated by the third party, the liability of the third party shall be subject to the limits provided in section 2704 of this title as applied with respect to the vessel or facility." 33 U.S.C. § 2702(d)(2)(A).[9] Although § 2709—which addresses joint-fault third-party liability and third parties who are in contractual relationships with Responsible Parties—does not contain a similar cross reference to § 2704, one leading treatise has advocated that the § 2704 liability caps should nonetheless apply to third parties whose liability is established under § 2709, observing: "A construction which creates OPA limits for a sole-cause third party but none for a joint-fault third party is both illogical and unfair." 3 BENEDICT ON ADMIRALTY, Ch. IX, § 112(a)(6). Indeed, if a small vessel collides with a large tanker causing an oil spill, it defies logic to think Congress could have intended the liability limit for the small vessel to apply if the small vessel was the sole cause of the accident, but for the small vessel to face liability up to the much higher limit for a tanker if the vessel was only a partial cause.[10]

Allowing an OPA § 2709 contribution claim to proceed under general maritime law outside of the liability limitations in § 2704(b) would also run afoul of this Court's ruling, and rulings of other courts, that OPA displaces general maritime law compensatory damage

---

[9] In other cases, when the third party does not own or operate any facility or vessel, the sole-cause third party's liability is limited to whatever liability caps would have applied to the Responsible Party. 33 U.S.C. § 2702(d)(2)(B).

[10] One district court has found that the liability limitations in § 2702(d) are limited to third parties who do not have a contractual relationship with Responsible Party, and, contrary to *NSCSA*, that there is no cap on a contribution claim under § 2709 against a contractual third party. *See In re Alex C Corp.*, 2003 WL 203078, at *6-*11 (D. Mass. Jan. 30, 2003); *In re Alex C. Corp.*, 2010 WL 4292328, at *11-*14 (D. Mass. Nov. 1, 2010). The Massachusetts court, however, considered only whether § 2702(d) applied to contractual third parties; it did not consider the language in § 2704 itself that instructs that the liability caps in that section apply "for purposes of . . . applying this Act"; nor did it reconcile the anomaly that arises from its interpretation when third parties who are subject to § 2702(d) (i.e., those who do not have a contractual relationship with the Responsible Party) are only a partial cause of the spill. Under the *Alex C.* court's view, such a third party's liability would be capped by § 2704 if it were the sole cause, but uncapped if it were merely a partial cause.

15

remedies.[11]  (*See* Rec. Doc. 3830, at 8–26); *see also, e.g.*, *S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58 (1st Cir. 2000); *Gabarick v. Laurin Mar. (Am.) Inc.*, 623 F. Supp. 2d 741, 747 (E.D. La. 2009).  BP's and Andarko's liability for compensatory damages—for which they seek contribution—arises only under OPA.  As the *NSCSA* court correctly concluded, the contribution claim should likewise be governed OPA.  *NSCSA*, 924 F. Supp. at 1449.[12]

Finally, reading § 2709 in concert with § 2704 is also consistent with the underlying purpose of OPA.  This Court and others have recognized that OPA is grounded in economic theory.  (Rec. Doc.  5809 [Feb. 22 Order] at 10); *see NSCSA*, 924 F. Supp. at 1447 n.6.)  The liability caps Congress imposed in 33 U.S.C. § 2704, "place[ ] the greatest exposure upon those who are in a position to obtain the most benefit from maritime commerce."  *NSCSA*, 924 F. Supp. at 1447 n.6.  Congress's allocation of liability for offshore drilling follows this same economic principle: the leaseholder or permittee that stands to gain the "massive profits that may be made from an offshore facility," is subject to unlimited liability for removal costs and up to $75 million for other damages (absent some conduct that would remove the cap altogether), and the drilling contractor that owns the MODU, but will not share in the profits from the well, has

---

[11] Any other general maritime remedy outside of OPA, such as equitable indemnity, is likewise displaced.  Indeed, the Fifth Circuit has recognized that contribution and indemnity derive from the same equitable principles.  *See Adkinson v. Int'l Harvester Co.*, 975 F.2d 208, 213 (5th Cir. 1992) (collecting decisions that have "described contribution and indemnity as deriving from principles of equity").  Thus, any equitable indemnity claim should be treated as equivalent to a contribution claim.  Both could arise only under OPA § 2709 and would be subject to the same liability OPA liability caps.

[12] To the extent any contribution claim arises solely under general maritime law and is not subject to OPA's liability caps, Transocean's liability would be limited under the Limitation Act of 1851 ("Limitation Act").  OPA generally displaces the Limitation Act for claims that arise under OPA.  33 U.S.C. § 2702(a) ("Notwithstanding any other provision or rule of law . . . each responsible party . . . is liable for the removal costs and damages."); *see Metlife Capital Corp. v. M/V Emily S.*, 132 F.3d 818, 819 (1st Cir. 1997).  But, if a contribution claim arises under general maritime law *outside* of OPA, which is the only way it could avoid the liability caps in § 2704, then the Limitation Act applies.

16

less exposure. (Rec. Doc. 5809, at 7–11; 33 U.S.C. § 2704(a)–(b).) There is no evidence that Congress intended to undo this rational system by allowing contribution claims to upset the carefully crafted liability allocations.

Moreover, the leaseholder is not without recourse against a drilling contractor. OPA expressly permits indemnification agreements, 33 U.S.C. § 2710, and, in fact, BP and Transocean have such an agreement. As this Court found, that agreement, consistent with industry practice, assigned liability for all subsurface discharge to BP, including the obligation to indemnify Transocean notwithstanding grossly negligent conduct. (Rec Doc. 5446, at 5–19.) The indemnification agreement, in fact, reflects the same allocation of liability for above- and below-surface liability for damages as OPA does in § 2704(b)).[13] An operator that wanted to alter that practice, however, would be free under OPA to try to negotiate with a drilling contractor for indemnification.[14]

Congress assigned liability to Transocean for above-surface discharge and to BP and Anadarko for subsurface discharge. BP's contribution claim (now purportedly assigned to the PSC) cannot undo this congressional allocation of liability. Accordingly, judgment should be granted in favor of Transocean on the claims for contribution arising from the subsurface discharge.

---

[13] The indemnity provisions of the drilling contract accordingly serve as a backstop to Congress's allocation of liability for damages in OPA. The indemnification agreement will also cover any Transocean liability that might be established for removal costs arising from subsurface discharge if the Court were to find that Transocean was an "operator" of the Macondo Well offshore facility.

[14] Of course, it is unlikely that any drilling contractor would agree to such an economically irrational arrangement, in which the party with no economic stake in the well agrees to indemnify the party that stands to gain all the economic upside from a successful well. It is precisely the unreasonable nature of such an arrangement that underscores why Congress did not intend to allow a leaseholder to seek uncapped contribution from a contractor under OPA.

## **CONCLUSION**

For the reasons set forth above, this Court should grant partial judgment on the pleadings in favor of Transocean on the claims for compensatory and punitive damages and for contribution for damages arising from the subsurface discharge of oil.

DATED: December 18, 2012            Respectfully submitted,

By:   s/ Brad D. Brian
Brad D. Brian
Michael R. Doyen
Daniel B. Levin
MUNGER TOLLES & OLSON LLP
355 So. Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel: (213) 683-9100
Fax: (213) 683-5180
Email: brad.brian@mto.com
      michael.doyen@mto.com
      daniel.levin@mto.com

By:   s/ Steven L. Roberts
Steven L. Roberts
Rachel Giesber Clingman
Sean D. Jordan
SUTHERLAND ASBILL & BRENNAN LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Tel: (713) 470-6100
Fax: (713) 354-1301
Email: steven.roberts@sutherland.com,
      rachel.clingman@sutherland.com
      sean.jordan@sutherland.com

By:   s/ Edwin G. Preis
Edwin G. Preis, Jr.
PREIS & ROY PLC
Versailles Blvd., Suite 400
Lafayette, LA 70501
(337) 237-6062
  and
601 Poydras Street, Suite 1700
New Orleans, LA 70130
(504) 581-6062

By:   s/ Kerry J. Miller
Kerry J. Miller
FRILOT, LLC
110 Poydras St., Suite 3700
New Orleans, LA 70163
Tel: (504) 599-8194
Fax: (504) 599-8154
Email: kmiller@frilot.com

John M. Elsley
ROYSTON, RAYZOR, VICKERY & WILLIAMS LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
(713) 224-8380

*Counsel for Appellees Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC,* and *Triton Asset Leasing GmbH.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 18th day of December, 2012, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

                                                      /s/  Kerry J. Miller