## IN THE CHANCERY COURT OF JACKSON COUNTY, MISSISSIPPI

FILED

LANGSTON & LOTT, P.A.                MAY 2 9 2012                **PLAINTIFF**

VS.                          TERRY MILLER, CLERK        CAUSE NO. _2012-1077-W4_
                           By _Shessa Piddell_

THE LAW FIRM OF SHANDON PHAN, PLLC;
SHANDON PHAN; and JOHN DOES 1-10                          **DEFENDANTS**

---

### COMPLAINT

---

**COMES NOW** the Plaintiff, Langston & Lott, P.A., by and through its attorneys of record, DENHAM LAW FIRM, PLLC, and files this Complaint against the Defendants for injunctive relief, a temporary restraining order pursuant to Rule 65(b) of the Mississippi Rules of Civil Procedure, and for damages; and in support thereof would show the following:

### INTRODUCTION

1.      In association with Faegre Baker Daniels, LLP ("Faegre"), Plaintiff Langston & Lott, P.A. ("Langston & Lott") represents hundreds of Mississippi shrimpers, oystermen, and commercial fishermen who have been impacted by the *Deepwater Horizon* disaster and the subsequent cleanup operation named the Vessels of Opportunity ("VoO") program.

2.      Langston & Lott agreed to represent these commercial fishermen pursuant to contingent-fee contracts calling for the clients to pay to their attorneys twenty-five percent (25%) of all recoveries from litigation related to the *Deepwater Horizon* disaster and/or the VoO program. Under the contract, clients are not obligated to pay costs and expenses.

3.      Relying on those contracts, Langston & Lott and Faegre have made extraordinary commitments of time and resources to secure a settlement benefiting commercial fishermen and VoO participants in the Multi-District Litigation venued in the Eastern District of Louisiana.

The commitment of these firms to the cause of their clients has been remarkable, including, for example:

- The firms have maintained, operated, and staffed a law office in Biloxi, Mississippi throughout the case, including a permanent staff of translators to assist Vietnamese-American fishers.

- The firms funded a team of preeminent marine biologists to prepare expert reports and damage methodologies supporting their clients' claims to long-term damages.

- Working with their clients and this team of experts, the firms have expended an enormous amount of time and money to develop individualized, unique damage claims for each client in an effort to maximize each client's recovery.

- The firms negotiated directly and exhaustively with the Gulf Coast Claims Facility ("GCCF"), Ken Feinberg, Plaintiff Steering Committee settlement negotiators, BP's counsel, and Special Master John Perry. The efforts of Langston & Lott and Faegre have been integral to achieving a settlement benefiting their clients, and the firms made every effort to ensure the settlement is structured to maximize recoveries for commercial fishermen and VoO participants.

- The Court-supervised Seafood Compensation Program will begin accepting claims under the settlement on June 4. Langston & Lott has worked feverishly to prepare settlement claims for all of its clients to ensure timely submission of claims.

2

4. Now, well past the eleventh hour, Defendants, the Law Firm of Shandon Phan, PLLC and Shandon Phan (collectively "Phan"), have conspired to profiteer by inducing Langston & Lott's clients to breach their contracts and sign with Phan for reduced contingent-fee contracts.

5. Phan's scheme brazenly and intentionally targets Langston & Lott's clients for solicitation. Having established contact with Langston & Lott's clients, Phan relies on defamatory false statements and outright lies about Faegre, Langston & Lott, and the settlement process to mislead clients. In addition to promising claims submission for a slightly reduced fee after all of the real work has been completed and the terms of the settlements have been negotiated, Phan falsely promises the clients that they will not be subject to a lien.

6. There is nothing honest about Phan's version of competition. Phan is attempting to make a quick profit from the hard work and exhaustive investments of Langston & Lott and Faegre in a scheme that relies on falsehoods, defamation, and systematic violation of the Mississippi Rules of Professional Conduct.

7. Phan's misconduct has created an emergency that threatens Langston & Lott with profound and irreparable harm. In addition to tarnishing Langston & Lott's good will and spreading misinformation likely to harm clients, Phan is encouraging clients to terminate their agreements with Langston & Lott. Accordingly, Langston & Lott brings this action for injunctive relief, defamation and tortious interference with contracts.

## PARTIES

8. Plaintiff Langston & Lott is a Mississippi professional association with its principal place of business in Booneville, Prentiss County, Mississippi.

3

9.     Defendant Law Firm of Shandon Phan, PLLC is operating a law office styled as the "Law Offices of Shandon Phan," and is also operating an office styled as the "BP Oil Spill Claims Service Center."   Defendant Law Firm of Shandon Phan PLLC may be served with process at 983 Howard Ave., Biloxi, MS 39530 or wherever it may be found.

10.    Defendant Shandon Phan is conducting and transacting business in Biloxi, Mississippi, by operating a law office styled as the "Law Offices of Shandon Phan," and by operating an office styled as the "BP Oil Spill Claims Service Center."   On information and belief, Shandon Phan currently resides in Harrison County, Mississippi and may be served with process at 983 Howard Ave., Biloxi, Mississippi or wherever he may be found.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action pursuant to Section 159 of the Mississippi Constitution.

12.    Venue is proper in this Court pursuant to Mississippi Code § 11-11-3 because substantial acts occurred in Jackson County that caused injury to Plaintiff herein, and which necessitate injunctive and equitable relief.

## FACTS

### Langston & Lott's Client Advocacy

13.    Langston & Lott and Faegre held their first fishermen meetings about the *Deepwater Horizon* spill in 2010.  In those meetings, it became apparent that many Mississippi shrimpers, oystermen, and fishermen were not represented by counsel and did not fully understand the litigation or claims process.

4

14. Recognizing the urgent need for active representation of commercial fishermen, Langston & Lott established an office in Biloxi, Mississippi on January 3, 2011. That office has been staffed with a team of lawyers and paralegals since that date. In addition, because many Mississippi shrimpers are Vietnamese Americans, Langston & Lott hired a team of translators to staff the office.

15. Langston & Lott represents all clients in this matter on a direct-action basis. As a result, each client signs an attorney-client contract and Langston & Lott interviews and regularly corresponds with each client, collects and assesses client documents, and prepares individualized damage analyses and claims for each client.

16. Langston & Lott and Faegre heavily invested in the GCCF claims process. The firms engaged in an exhaustive document-collection effort to collect all documents supporting each client's claim for long-term damages. The firms built a database, intranet website, and web portals to organize, maintain, and produce client documents. The firms had multiple meetings with most clients to ensure complete documentation of claims.

17. The firms retained a team of experts to develop and support damage methodologies for their clients. This team included Natural Resource Consultants, whose marine biologists testified in the *Exxon Valdez* trial and have assessed biological and market damages caused by multiple oil spills. The firms hired Corky Perret, a 40-year veteran of the Mississippi Department of Marine Resources and an expert on Gulf fisheries. The team also included oyster and fin-fish biologists.

18. Langston & Lott's team of experts made multiple visits to the Gulf to meet with and interview clients. The expert team prepared multiple reports presenting damage models

5

designed to compensate shrimpers, oystermen, crabbers, and commercial fishermen for the full range of biological and market impacts inevitably caused by oil spills.   In addition to past impacts, these damage models quantified ongoing and likely future damages through the use of risk multipliers.   Langston & Lott has presented these expert reports and damage models to GCCF, BP, and the Plaintiff Steering Committee, while actively using the analysis and reports in settlement negotiations with all of these parties.

19.     Plaintiff and Faegre have together invested millions of dollars in time and have advanced more than $2 million in costs on behalf of their clients.

20.     Langston & Lott and Faegre prepared extensive GCCF claims for their clients, supported by full documentation, individualized damages analysis, and narratives based on each client's personal history and circumstances.   The firms had multiple face-to-face negotiating sessions with Ken Feinberg in Washington, DC on behalf of their clients, including a meeting with the full team of experts.

21.     As a direct result of the efforts of Langston & Lott and Faegre, GCCF changed its methodology for compensating shrimp fishers.   This has resulted in many of their clients receiving substantially larger offers and payments from GCCF and the Transition Fund.

22.     Many clients retained Langston & Lott and Faegre regarding claims for unpaid standby time owed to participants in the VoO program.   The firms held multiple negotiating sessions with counsel for BP, and, when settlement negotiations broke down, the firms sued BP and its VoO contractors in the Multi-District Litigation venued in New Orleans, Louisiana ("MDL").   Again, that suit was a direct action that named each client as a party and asserted individualized claims on behalf of each client.

6

23.     Langston & Lott and Faegre have been heavily involved in the global settlement negotiations in the MDL.  In addition to presenting expert reports, damage models, and data from their client database, the firms negotiated directly with BP and the Plaintiff Steering Committee to ensure that the settlement provides acceptable compensation for commercial fishermen.  Their efforts were critical to obtaining compensation for VoO standby time and the settlement funds that are now available to commercial fishermen.

24.     When the Court appointed Special Master John Perry to finalize allocation rules for the Seafood Compensation Program, Faegre and Langston & Lott negotiated directly with Mr. Perry in an effort to ensure fair rules for fishing and VoO compensation.  At Mr. Perry's request, the firms provided their client database to him.   The firms extensively advocated adoption of their damage models to Mr. Perry.

25.     The global settlement was filed with the Court in the MDL on April 18, 2012.  It includes compensation for VoO standby time and establishes the Seafood Compensation Program, a $2.3 billion fund for commercial fishermen with rules of allocation for shrimpers, oystermen, and other commercial fishermen.  Langston & Lott and Faegre filed a motion to amend compensation formulas for shrimpers.  After amendment of the shrimp rules, the Court granted preliminary approval of the settlement and Seafood Compensation Program.

26.     The Seafood Compensation Program will begin accepting settlement claims on June 4, 2012.  To ensure timely submission of claims, Langston & Lott and Faegre have been calculating settlement values and preparing claims for their clients.  This effort includes ensuring documentation required by the Seafood Compensation Program, meeting with clients to obtain necessary statements, and obtaining client authorization to submit claims.

27.     The Seafood Compensation Program will be using documents and information submitted by claimants through the GCCF process.  As a result, much of the work necessary to calculate settlement amounts and obtain payment under the settlement has already been done by Langston & Lott and Faegre for their clients.

28.     For Langston & Lott's clients, all that remains is submission of the claims to the settlement fund.

**Phan's Misconduct**

29.     Phan graduated from the University of Baltimore School of Law in 2009.  On information and belief, he has no litigation experience of any kind, nor has he represented any client in any court anywhere.

30.     On information and belief, Phan did not solicit or represent any commercial fishermen until after preliminary approval of the Seafood Compensation Program.

31.     Seeing an opportunity to capitalize on a settlement achieved by others, Phan has opened an office in Biloxi, Mississippi in the last several days that he calls the "BP Oil Spill Claims Service Center."

32.     On information and belief, Phan has affiliated himself with "Asian Americans for Change," a purported non-profit group whose Director is Phan's sister-in-law.  Asian Americans for Change has provided Phan with the names and contact information of Vietnamese-American fishermen, who Phan knows to be clients of Langston & Lott.

33.     Acting as Phan's agent or representative, Asian Americans for Change has initiated phone calls to Langston & Lott clients for the purpose of soliciting them to breach their contracts with Langston & Lott and Faegre on behalf of Phan.  On information and belief, Phan

has conspired with Asian Americans for Change, using the organization and its representatives as proxies, to contact Langston & Lott clients on his behalf for the same purpose.  Phan has actively pursued meetings with Langston & Lott clients, with full knowledge of Langston & Lott's representation of these clients.

34.    On information and belief, Phan and Asian Americans for Change are collaborating in a scheme to profit from inducing as many Langston & Lott clients as possible to obtain legal representation from Phan immediately prior to payments being made from the Seafood Compensation Program.

35.    In meetings with Langston & Lott's clients, Phan encourages the clients to terminate their relationship with Langston & Lott.  Phan informs clients that he will submit claims to the Seafood Compensation Program for a smaller contingency fee than the 25 percent fee provided for in the clients' contracts with Langston & Lott and Faegre.  He offers to help prepare termination forms for clients to deliver to Langston & Lott, while falsely informing clients that the forms ensure that clients will not be subject to liens by Langston & Lott and Faegre.

36.    Phan further seeks to interfere with Langston & Lott's client relationships through false and defamatory statements.  For example, Phan has told clients that Langston & Lott's settlement calculations are not based on the settlement numbers that have been negotiated in the MDL and that Langston & Lott is "making up" settlement offers for clients.  He has told clients that Langston & Lott does not have a relationship with BP, so it will take longer for Langston & Lott to obtain payments under the settlement.  He has falsely told clients that Langston & Lott has not properly and adequately represented its clients.  These statements are false and

defamatory, and made with the intent to interfere with Langston & Lott's relationship with its clients and to induce the clients to turn their claims over to Phan.

37.     Phan also misled Langston & Lott's clients about the settlement process.  For instance, he falsely informed clients that they can settle their claims for VoO standby time without signing a release of all claims.  Failing to explain that the Seafood Compensation Program is run by Patrick Juneau and the Brown Greer firm applying rules fixed by the court, Phan has also led clients to believe that clients can receive more money faster through his purported relationship with BP.

38.     Phan's misconduct flaunts the Mississippi Code of Professional Responsibility. Among other rules, his conduct violates Rules 7.1; 7.3; 7.4(d); 8.4(a),(c)-(d) in many ways, including the following:

   ▪ In violation of Rule 7.1(a), Phan has made misleading communications about himself and his services, including misrepresentations about his connections to BP and his ability to expedite the court-supervised Seafood Compensation Program payments.  In violation of Rule 7.1(b), he has created unjustified expectations about the results that he can provide for Langston & Lott clients, including but not limited to, representations that he can get their claims paid more quickly and that clients can terminate Langston & Lott's representation without later being subject to a potential lien.  In violation of Rule 7.1(d), he has intentionally compared his services with those of Langston & Lott in ways that cannot be factually substantiated.

- In violation of Rule 7.3(a), Phan contacted prospective clients, either directly or through Asian Americans for Change, in-person and via telephone to solicit their business, even though he, upon information and belief, has no family, close personal, or prior professional relationship with most or all of those prospective clients.

- In violation of Rule 7.4(d), Phan has provided information to prospective clients that is directly or potentially false and misleading regarding his ability to secure payments more quickly than Plaintiff can.

- In violation of Rule 8.4(a), (c)-(d), Phan has committed professional misconduct by violating the foregoing rules of professional conduct; engaging in conduct involving dishonesty, fraud, deceit or misrepresentation during their solicitation of Langston & Lott's clients; and engaging in conduct that is prejudicial to the administration of justice.

39.     Phan's actions as alleged herein have interfered with Langston & Lott's relationships with its clients and threatens to irreparably harm Langston & Lott by disrupting or terminating its attorney-client relationships with potentially hundreds of clients, and by damaging the professional reputation and standing of Langston & Lott.

40.     Phan's actions as alleged herein also threaten to cause irreparable harm to many more of Langston & Lott's clients.  For example, Phan has falsely told Langston & Lott's clients that they can terminate their contracts with Langston & Lott and Faegre and achieve a larger net recovery because they will only have to pay Phan a smaller percentage of their settlement value. In fact, under Mississippi law the clients could be obliged to pay Langston & Lott and Faegre the

twenty-five percent fee provided for in their contracts, and any fee claimed by Phan would be in addition to that amount. Thus, clients who breach their contracts in reliance on Phan's misrepresentations will be irreparably harmed.

## CAUSES OF ACTION

## COUNT I: TEMPORARY RESTRAINING ORDER

41.   Plaintiff realleges the foregoing paragraphs as though restated fully herein.

42.   Plaintiff will suffer immediate and irreparable harm if this Court does not grant injunctive relief preventing Defendants from continuing the tortious conduct as alleged herein.

43.   Furthermore, Plaintiff is likely to prevail on the merits of its claims, and granting injunctive relief in this matter is in the public interest.

44.   Temporary injunctive relief should be granted immediately, with or without notice, because Defendants' tortious conduct is continuing, and because irreparable harm is being suffered by Plaintiff on an ongoing and daily basis. Further, immediate and irreparable injury, loss or damage will result to the Plaintiff before process can be issued and served and the adverse party or his attorney can be heard in opposition.

45.   Plaintiff hereby requests that the Court hold an emergency hearing pursuant to Miss. R. Civ. P. 65(b) and, thereafter, enter a Temporary Restraining Order enjoining the Defendants from:

- Soliciting, advising, or otherwise dealing with any clients represented by Langston & Lott and/or Faegre, or attempting in any way to interfere with, or induce the breach or termination of, clients' relationships with Langston & Lott and/or Faegre.

- Making false statements about Langston & Lott and/or Faegre, including but not limited to the false statements alleged herein.

If the Court declines to enter such an order, the Plaintiff will suffer immediate or irreparable injury, loss and damage before the adverse parties or their attorney can be heard in opposition. However, the undersigned has contacted the Defendants and informed them of the undersigned's intention to seek the entry of a Temporary Restraining Order on this date.

## COUNT II:  INJUNCTIVE RELIEF

46.    Plaintiff realleges the foregoing paragraphs as though restated fully herein.

47.    Defendants have engaged in a pattern of wrongful conduct which will continue unless permanently enjoined by this Court and for which Plaintiff has no adequate remedy at law.

48.    For the reasons stated herein, Plaintiff is entitled to a permanent injunction to prevent the occurrence of future damages.

## COUNT III:  DEFAMATION

49.    Plaintiff realleges the foregoing paragraphs as though restated fully herein.

50.    Defendants have made false and defamatory statements concerning Plaintiff, more specifically set forth above.

51.    The above referenced statements are false and the Defendants knew them to be false.

52.    All of the above-referenced defamatory statements were unprivileged communications to a third party and were further made with malice and in bad faith.

13

53.     As a direct and proximate result of the above-referenced statements, the Plaintiff has suffered irreparable damage to its reputation and business relationships.  Therefore, Plaintiff is entitled to both money damages and an order enjoining Phan from making further false and defamatory statements about Langston & Lott and/or Faegre.

## COUNT IV:  TORTIOUS INTERFERENCE WITH CONTRACT

54.     Plaintiff realleges the foregoing paragraphs as though restated fully herein.

55.     Langston & Lott has contractual relationships with its clients for legal work related to the Deepwater Horizon disaster and the VoO program.

56.     At all relevant times, Defendants have had knowledge of the contracts and the relationships that existed between Langston & Lott and its clients.

57.     Defendants have knowingly, intentionally, and wrongfully induced Langston & Lott's clients to terminate and/or breach their contracts with it, thereby tortiously interfering with Langston & Lott's contractual relationships.

58.     Defendants' knowing, intentional and wrongful acts were calculated to cause damage to Langston & Lott.

59.     Phan has no legitimate justification for inducing clients to terminate and/or breach their contracts with Langston & Lott.  To the contrary, Phan has relied on defamation and lies to induce termination and/or breach.

60.     As a direct and proximate cause of the foregoing, Langston & Lott has sustained damages as a result of Phan's tortious interference with its contracts with clients, including loss of goodwill.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests that the Court:

(1)     Hold an emergency hearing pursuant to Miss. R. Civ. P. 65(b) and, thereafter, enter a Temporary Restraining Order enjoining the Defendants from:

- Soliciting, advising, or otherwise dealing with any clients represented by Langston & Lott and/or Faegre, or attempting in any way to interfere with, or induce the breach or termination of, clients' relationships with Langston & Lott and/or Faegre.

- Making false statements about Langston & Lott and/or Faegre, including but not limited to the false statements alleged herein.

(2)     Issue a permanent order enjoining the Defendants from:

- Soliciting, advising, or otherwise dealing with any clients represented by Langston & Lott and/or Faegre, or attempting in any way to interfere with, or induce the breach or termination of, clients' relationships with Langston & Lott and/or Faegre.

- Making false statements about Langston & Lott and/or Faegre, including but not limited to the false statements alleged herein.

(3)     Enter judgment against Defendants, jointly and severally, for all damages proximately caused by their wrongful actions.

(4)     Order Defendants to reimburse Langston & Lott for all costs and attorneys' fees incurred in connection with this action.

Further, Plaintiff prays for such other general or specific relief that this Court may find appropriate under the premises.

On this, the _29_ day of May, 2012.

Respectfully submitted,

LANGSTON & LOTT, P.A.
By: CASEY L. LOTT, Member

BY: **DENHAM LAW FIRM, PLLC**

KRISTOPHER W. CARTER
MS Bar No. 101963

KRISTOPHER W. CARTER, ESQ.
**DENHAM LAW FIRM, PLLC**
424 Washington Avenue
Ocean Springs, MS 39564
Telephone: (228) 284-0573
Facsimile: (228) 875-4553

**IN THE CHANCERY COURT OF JACKSON COUNTY, MISSISSIPPI**

LANGSTON & LOTT, P.A.                                                      PLAINTIFF

VS.                                                         CAUSE NO. 2012-1077-NH

FOXWORTH LAW OFFICE, LLC;
JOHN A. FOXWORTH, JR.; THE LAW
FIRM OF SHANDON PHAN, PLLC;
SHANDON PHAN; and JOHN DOES 1-10                          DEFENDANTS

---

**AFFIDAVIT OF GERARD M. NOLTING**

---

STATE OF MINNESOTA    )
                      ) ss.
COUNTY OF HENNEPIN    )

GERARD M. NOLTING, being first duly sworn, hereby deposes and states:

1.      I am a partner with the law firm of Faegre Baker Daniels LLP ("Faegre"). I have

been licensed to practice law in the states of Minnesota and Wisconsin since 1980. In

association with Langston & Lott, P.A. ("Langston & Lott"), I represent hundreds of clients in

connection with the *Deepwater Horizon* oil spill. The facts described below are based on my

own personal knowledge and belief. I submit this affidavit in connection with Plaintiff Langston

& Lott, P.A.'s motion for a temporary restraining order in the above-captioned matter.

2.      I have spent much of my legal career handling oil spill litigation. I was a member

of the trial team in the Exxon Valdez litigation and represented more than 2200 commercial

salmon and herring fishers. I was also a member of the BP Glacier Bay trial team and

represented more than 800 commercial salmon fishers in that case.

3.      In October of 2010, I was contacted by Thao Vu of the Vietnamese Fisherfolks

Association of Mississippi and asked to hold a meeting for the Association in Biloxi to answer

questions about the BP Deepwater Horizon litigation. At that time, I was not involved in the Deepwater Horizon litigation. I came to Biloxi in October and December of 2010 and held meetings about the Deepwater Horizon case and the Gulf Coast Claims Facility ("GCCF"), which had been set up to pay claims arising from the Deepwater Horizon spill.

4.      Based on my meetings in Biloxi and the encouragement of local fishers, I associated my law firm with Langston & Lott of Booneville, Mississippi and we opened an office in Biloxi around January 3, 2011 in order to represent fishers and others claimants from the Deepwater Horizon spill. I knew Casey Lott and consider him to be an outstanding attorney with impeccable integrity. Since January of 2011, our firms have had a full-time office in Biloxi staffed with attorneys, Vietnamese translators, and clerks.

5.      Langston & Lott and Faegre represent our oil spill clients on a contingent-fee basis. Because of this arrangement, each client enters into an attorney-client contract under which the client agrees to pay his or her attorneys 25% of all recoveries from the *Deepwater Horizon* litigation and/or the Vessels of Opportunity ("VoO") program. We do not charge our clients any costs. To my knowledge, we are the only firms not charging clients costs in connection with the Deepwater Horizon case.

6.      Langston & Lott and Faegre's representation of their clients is on a direct action basis. We meet with all of our clients and work up their claims individually. We have met most all of our clients on numerous occasions over the last year and engaged in an extensive document collection to ensure that we have appropriate documentation to support each client's claims.

7.      To manage the information of our many clients, Langston & Lott and Faegre have developed a client database as well as several internet tools to allow the firms to organize and produce client documents as necessary.

8. Faegre, in association with Langston & Lott, has hired biologists, accountants, and scientists to support and help prepare our clients' claims, including Corky Perret of the Mississippi Department of Marine Resources. These experts traveled to the Gulf to interview our clients. The experts have also generated a number of reports which have been presented to the Gulf Coast Claims Facility, BP, and the Plaintiff Steering Committee. Several of the damage models and damage approaches are being used in the Seafood Compensation Program of the BP Deepwater Horizon Global Settlement.

9. Over the course of the last seventeen months, my firm has spent more than $2 million in costs for translators, experts, office space, and travel. Langston & Lott and Faegre have also invested approximately $10 million of lawyer, clerk and paralegal time in the Deepwater Horizon case.

10. Our initial representation of our clients involved preparing and submitting claims to the GCCF in an attempt to get our clients paid fairly and quickly. To do this, Faegre and Langston & Lott prepared individualized claims for their clients and had meetings with Ken Feinberg in Washington D.C. Although some of our clients received larger offers and payments as a result of our efforts, the majority of our clients received inadequate offers or no offers from the GCCF, and we joined the Multidistrict Litigation ("MDL") in December of 2011.

11. Since December of 2011, we have been actively involved with the global settlement discussions in the Deepwater Horizon litigation. In particular, we have met and communicated with the Plaintiff Steering Committee in the MDL, BP attorneys and Special Master John Perry on numerous occasions to present the results of our experts' analyses and information from our client database upon his request. Faegre and Langston & Lott negotiated

3

with Mr. Perry regarding the compensation formulas that would be used for fishing compensation and compensation under the VoO program.

12. On May 2, 2012, Federal Judge Carl Barbier granted preliminary approval of the global settlement and $2.3 billion Seafood Compensation Program, following an amendment of the shrimp rules after Faegre and Langston & Lott filed a motion to amend the shrimp compensation rules. As part of the settlement, a "Court-Supervised Settlement Fund" has been established and it will begin accepting claims on Monday, June 4, 2012. The Seafood Compensation Program includes specific eligibility requirements and formulas for calculating losses for shrimpers, crabbers, fin fishers and oystermen. The program will use documents and information that claimants submitted through the GCCF process.

13. In anticipation of the opening of this Fund, we have met with more than two hundred of our clients to assess their eligibility for the Seafood Compensation Program, and to calculate their damage awards under the formulas.

14. Our firms have obtained a global settlement for our clients, and the settlement has received preliminary approval. Faegre and Langston & Lott have done all of the work necessary for our clients to be compensated. The only remaining task is to electronically submit our clients' completed claims to the settlement fund.

15. Sometime during the last two weeks, I heard of an attorney named Shandon Phan who was soliciting our clients and making misrepresentations and defamatory statements about Mr. Lott and our law firms. In particular, I heard reports that Mr. Phan said that we were charging our clients too much, were generally uninvolved in the settlement process, and not capable of processing all of our clients' claims.

4

16.     The biographical statement on his firm's website indicates that he has been practicing law for a little over two years, having graduated from law school in 2009.

17.     I sent Mr. Phan a cease and desist letter on May 22, 2012, a true and correct copy of which is attached hereto as **Exhibit A**. Mr. Phan refused to cease and desist in an email response that I received on May 23. A true and correct copy of his email is attached hereto as **Exhibit B**.

18.     I sent a second cease and desist letter on May 24, a true and correct copy of which is attached hereto as **Exhibit C**. And Mr. Phan again refused to agree to stop his improper conduct in an email, a true and correct copy of which is attached hereto as **Exhibit D**.

19.     During the last two weeks, I also began receiving reports that an attorney named John Foxworth from Gulfport, Mississippi was soliciting our clients, and making similar misrepresentations and defamatory statements about Faegre and the Langston & Lott law firm to those that Mr. Phan was making.

20.     On or around May 24, one of the translators working with Langston & Lott and Faegre call a flyer from Mr. Phan to my attention. The flyer was in Vietnamese only but he translated one of the lines to read in effect, "whether you have a lawyer or not, our firm is the best option." A true and correct copy of the flyer is attached hereto as **Exhibit E**.

21.     I believe that the actions and statements of Mr. Phan and Mr. Foxworth are causing irreparable harm to Mr. Lott and our law firms. We have had at least seven clients terminate us in the last ten days. Several of these clients have used a termination form I believe was generated by either Mr. Phan or Mr. Foxworth.

22.     I believe that Mr. Phan and Mr. Foxworth have caused, and will continue to cause irreparable harm, based on their improper conduct. False attacks on our firms' reputations less

than one week before the Court-Supervised Claims Fund opens are very difficult to mitigate and

will have a continuing affect on our reputations and good will in the future.

Gerard M. Nolting

Subscribed and sworn to before me
this 28th day of May, 2012.

KATHY ELIZABETH OLMSCHIED
Notary Public
Minnesota
My Commission Expires January 31, 2016

6

FaegreBD.com

# FAEGRE BAKER
# DANIELS

USA ▾ UK ▾ CHINA

**Gerard M. Nolting**
+1 612 766 8328
gerry.nolting@FaegreBD.com

**Faegre Baker Daniels LLP**
2200 Wells Fargo Center ▾ 90 South Seventh Street
Minneapolis ▾ Minnesota 55402-3901
Phone +1 612 766 7000
Fax +1 612 766 1600

May 22, 2012

**VIA EMAIL**
shandonphanlaw@gmail.com

Shandon Phan
The Law Firm of Shandon Phan, PLLC
7389 Lee Highway
Suite 103
Falls Church, VA  22042

Dear Mr. Phan:

In partnership with Langston & Lott, P.A. and The Kreller Law Firm, we represent hundreds of clients in connection with the *Deepwater Horizon* disaster.  It has come to our attention that you have improperly interfered with our client relationships.  This letter notifies you to immediately cease and desist this misconduct, and this demand applies to any lawyer or firm with whom you have affiliated.

We have confirmed that you knowingly met with our clients with the purpose of undermining our client relationships.  You have publicly and privately made factually incorrect statements about our firms and our work regarding the *Deepwater Horizon* litigation.  You have induced clients to terminate their relationships with us.  You also appear to be practicing law in Mississippi without a license.

This conduct may violate the Mississippi Rules of Professional Responsibility.  Moreover, your actions and statements constitute defamation and tortious interference with contract, exposing you and your firm to compensatory and punitive liability.  We will pursue all available remedies against you, your firm, and anyone with whom you have affiliated if you do not immediately cease this misconduct.

Additionally, we have made extraordinary investments on our clients' behalf to achieve the settlement with BP.  Under all applicable state laws and the terms of our contracts with our clients, we have fully performed the contract and are entitled to the full amount of our contractual fee.  In addition to vigorously pursuing all available legal and ethical actions against you and your firm, we will impose a lien on any settlement you submit on behalf of any of our current or former clients and will seek recovery of all fees and costs.

Exhibit A

Page 2                                                                May 22, 2012

Please contact me immediately if you have any questions regarding this letter.

Regards,

Gerard M. Nolting, Esq.

GMN/pjw

cc:    William Roberts, Esq.
       Craig Coleman, Esq.
       Casey Lott, Esq.
       Stephen Kreller, Esq.

fb.us.8612849.01

From: The Law Firm Of Shandon Phan, PLLC [mailto:shandonphanlaw@gmail.com]
Sent: Wednesday, May 23, 2012 11:44 AM
To: Walton, Patricia (Patti) J.
Cc: Nolting, Gerard M.; Coleman, Craig S.; Roberts, William L.; ssk@krellerlaw.com;
clott@langstonlott.com
Subject: Re: Deepwater Horizon litigation

Mr. Nolting,

I am not having access to my computer now but I wanted to get back to you and the serious
complaint you made sooner than later.

First, all the accusations you and your group are making against me in the first three
paragraphs of your letter are factually FALSE and defamatory in nature. Your firm may lose a
substantial number of clients recently due to the active solicitation of a few firms and non-
attorney groups out there and they may have done those things you said but you seem to
exercise insufficient care and erroneous judgment in targeting me as the cause of your losing
clients. I have many people contacting me about helping them with their claims but have not
directly solicited any clients, or met with any clients represented by your firm to engage in
representation discussion until today. I have explained this firmly and clearly with your
local co-counsel Mr. Casey Lott when he called me on my cell phone yesterday but he was
clearly upset and not willing to engage in a productive manner. Your letter continued that
same accusatory and threatening tone and it does not reflect well on your firm and legal
group. I have previously viewed you as a credible legal group but due care in investigating
your internal affairs and exercising respect and civility to fellow attorneys seem to be
lacking in this situation.

Second, while I understand the competitive nature of getting and keeping clients in this
massive Oil Spill case and the fact that attorneys are naturally upset about losing their
clients to others, I would respect you more if you, in reaching out to me, be respectful and
considerate about discussing the issue. Abusive and threatening language and baseless
accusations do not sit well with anyone.

Third, my firm partners with some of the most respected firms leading the MDL and with my
track record working in the community, I am confident of our own unique qualifications as the
best solution package out there for our undeserved clients. I do not need and have not talked
ill about any firms/attorneys out there, whether they are local or out of state. I have had
clients signing up with certain entities out there, thinking that they are getting my
services. The charge leveraged at me by Mr. Lott that I had dismissed your qualification as
being an " out of state firm" is amusingly the same attack line used by local folks against
me. I have made similar co-counsel arrangement like what you formed among yourselves in order
to serve my clients and community so it is not making any sense that if I ever decide to
criticize or complain about your firm, that would never be a credible one. You are barking up
the wrong tree, and if you stop being condescending and threatening with your communications,
we can have a respectful and productive dialogue thru which I will gladly address your
specific concerns and HELP you get the accurate facts and the responsible parties who engaged
your clients.

Fourth, once your accusations are proven false, I expect a full apology for the offensive and
defamatory nature of your oral and written communications. If they affected my practice and
reputation in any way, I will also have to take appropriate actions to protect my name and
interests and seek damages.

Exhibit B

Sincerely,

Shandon

Sent from my iPhone

On May 22, 2012, at 4:45 PM, "Walton, Patricia (Patti) J." <patricia.walton@FaegreBD.com> wrote:

> Please see attached correspondence.
> <[Untitled].pdf>

FaegreBD.com

# FAEGRE BAKER DANIELS

USA ▾ UK ▾ CHINA

**Gerard M. Nolting**
+1 612 766 8328
gerry.nolting@FaegreBD.com

**Faegre Baker Daniels LLP**
2200 Wells Fargo Center ▾ 90 South Seventh Street
Minneapolis ▾ Minnesota 55402-3901
**Phone +1 612 766 7000**
**Fax +1 612 766 1600**

May 24, 2012

**VIA EMAIL**
shandonphanlaw@gmail.com

Shandon Phan
The Law Firm of Shandon Phan, PLLC
7389 Lee Highway
Suite 103
Falls Church, VA  22042

Dear Mr. Phan:

We have continuing reports about your ongoing misconduct, false statements, and attempts to unethically and tortiously interfere with our client relationships.  For example, your statements that you can get quicker settlement payments because your affiliated firms have access to BP is false and misleading.  Mr. Juneau and his Court-Supervised Fund are making the settlement payments, not BP.  And contrary to other falsehoods you have told our clients, we have been dealing directly with BP, along with the Brown Greer Law Firm and Special Master.  Another example of your defamatory statements is that Faegre "makes up the numbers."  Rest assured, Mr. Phan, our numbers are straight out of the Seafood Compensation Program.

What makes your conduct even more actionable is your statement and offer to draft letters for our clients to terminate their relationship with us, while telling them that they would have no obligations to us under their contingent fee agreements. That is textbook tortious interference with our client relationships and blatantly misrepresents the law regarding attorney liens. We have been cataloguing all of your actionable statements and will take all appropriate actions against you and your affiliates including seeking compensatory and punitive damages. You may wish to consult with an ethics attorney before your Sunday meeting and before making any further such false statements.

Exhibit C

Page 2                                          May 24, 2012

Regards,

Gerard M. Nolting, Esq.

GMN/pjw.

cc:     William Roberts, Esq.
        Craig Coleman, Esq.
        Casey Lott, Esq.
        Stephen Kreller, Esq.

fb.us.8628294.01

**From:** Shandon Phan Law Firm [mailto:shandonphanlaw@gmail.com]
**Sent:** Thursday, May 24, 2012 9:18 PM
**To:** Walton, Patricia (Patti) J.
**Cc:** Nolting, Gerard M.; Coleman, Craig S.; Roberts, William L.; clott@langstonlott.com; ssk@krellerlaw.com
**Subject:** RE: Letter to S. Phan, 24 May 2012

Mr. Nolting,

Your documentation has never been reliable or accurate. The harassment needs to cease.

Sincerely,

*Shandon*

Shandon C. Phan, Esq.
Principal Attorney, The Law Firm of Shandon Phan, PLLC
*The Counsel You Trust.*

7389 Lee Highway, Suite 103
Falls Church, VA 22042
Phone: (202) 415-3366
Fax: (888) 908-7309

Web: www.shandonphan.com | www.winmyclaims.com
Email: shandonphanlaw@gmail.com



*** *This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting the original message and any copies thereof from your computer.*

**From:** Walton, Patricia (Patti) J. [mailto:patricia.walton@FaegreBD.com]
**Sent:** Thursday, May 24, 2012 5:18 PM
**To:** 'shandonphanlaw@gmail.com'
**Cc:** Nolting, Gerard M.; Coleman, Craig S.; Roberts, William L.; 'clott@langstonlott.com'; 'ssk@krellerlaw.com'
**Subject:** Letter to S. Phan, 24 May 2012

1

Exhibit D

## Qúy Vị Là Chủ Tàu, Thuyền Trưởng, Chủ Tiệm

### Bị Thiệt Hại Bởi Vụ Dầu Tràn?

### HÃY LIÊN LẠC NGAY VỚI CHÚNG TÔI.

# Trung Tâm Pháp Lý Bồi Thường Tràn Dầu

### Phục Vụ Thân Chủ Khắp 5 tiểu bang AL, LA, MS, FL và TX

### Văn Phòng Chính: 983 Howard Avenue, Biloxi, MS

**Biloxi, MS: (228) 206-8581     Mobile, AL: (251) 272-9597     Pensacola, FL: (850) 462-3759**

Email: boithuongtrandau@gmail.com | winmyclaims@gmail.com

**Điều hành bởi Tố Hợp Luật Sư Shandon Phan Quốc Cường hợp tác với hai hãng luật danh
tiếng dẫn đầu vụ kiện BP:  Levin Papantonio và Cunningham Bounds**



Tham Khảo Miễn Phí | Luật sư nói tiếng Việt

(202) 415-3366

### Luật sư Phan Quốc Cường

- Tiến Sĩ Luật Khoa, J.D.
- Bình luận gia Đài SBTN từ Washington, DC
- Chủ Tịch Phòng Thương Mại Toàn Quốc Mỹ-Việt, Cựu thành viên Hội Đồng Quản Trị Luật Sư Đoàn Mỹ-Việt vùng Washington, DC
- Kinh nghiệm pháp lý tại Tòa Án Di Trú Liên Bang, Lực Lượng Phòng Vệ Duyên Hải, và Văn Phòng Công Tố Viên Liên Bang

www.boithuongtrandau.com (tiếng Việt) | www.vietusalaw.com (tiếng Anh)

**EXHIBIT E**

# Thân Mời Qúy Vị Chủ Tàu, Thuyền Trưởng và Deckhands

## Tham Dự Buổi Họp Thông Tin Cộng Đồng

## Tại Trung Tâm Pháp Lý Bồi Thường Tràn Dầu

### 983 Howard Avenue, Biloxi, MS

### Mọi Chi Tiết Xin Liên Lạc:  228-206-8581 hay 202-415-3366

 

### ***Tìm Hiểu Về Chương Trình Bồi Thường Mới ***

### Time: 5:00pm – 6:00 pm, Chủ Nhật,  27 tháng 5, 2012

### Dù có luật sư hay không, Trung Tâm sẽ là giải pháp tốt nhất cho qúy vị.

1st Flyer

Qúy Vị Là Chủ Tàu, Thuyền Trưởng, Chủ Tiệm
(You Are Boat Owner, Captain, Business Owner)

Bị Thiệt Hại Bởi Vụ Tràn Dầu?
(Was Damaged By Oil Spill?)

Hãy Liên Lạc Ngay Với Chúng Tôi.
(Contact Us Immediately)
Trung Tâm Pháp Lý Bồi Thường Tràn Dầu
(Oil Spill Payment Legal Center)

Phục Vụ Thân Chủ Khắp 5 tiểu bang AL, LA, MS, FL và TX
(Serving Clients in 5 states AL, LA, MS, FL and TX)

Văn Phòng Chính: 983 Howard Avenue, Biloxi, MS
(Main Office: 983 Howard Avenue, Biloxi, MS)

Điều hành bởi Tổ Hợp Luật Sư Shandon Phan Quốc Cường hợp tác với hai hãng
luật danh tiếng dẫn đầu vụ kiện BP: Levin Papantonio và Cunningham Bounds

(Operating by Law Firm Shandon Phan Quốc Cường partner with two famous law
firms leading BP litigation: Levin Papantonio and Cunningham Bounds)

Tham Khảo Miễn Phí / Luật sư nói tiếng Việt
(Free Consultation / Vietnamese-speaking lawyer)

Luật sư Phan Quốc Cường
(Lawyer Phan Quoc Cuong)

Tiến Sĩ Luật Khoa, J.D.
(Jurist Doctorate, J.D.)

Bình luận gia Đài STBN từ Washington, DC
(STBN radio commentator from Washington, DC)

Chủ Tịch Phòng Thương Mại Toàn Quốc Mỹ Việt, Cựu thành viên Hội Đồng Quản Trị Luật Sư Đoàn Mỹ Việt vùng Washington, DC
(President of American Chamber of Commerce National Vietnam, former member Board of Vietnam the American Law Division Washington, DC)

Kinh nghiệm pháp lý tại Tòa Án Di Trú Liên Bang, Lực Lượng Phòng Vệ Duyên Hải, và Văn Phòng Công Tố Viên Liên Bang.
(Legal experience in the Federal Court Immigration, Coast Guard, and the Office of the Federal Prosecutor)

2nd Flyer

Thân Mời Quý Vị Chủ Tàu, Thuyền Trưởng, và Deckhands
(Invite Boat Owners, Captains, and Deckhands)

Tham Dự Buổi Họp Thống Tin Cộng Đồng
(Attending Public Information Meeting)

Tại Trung Tâm Pháp Lý Bồi Thường Tràn Dầu
(Legal Center Oil Spill Compensation)
Mọi Chi Tiết Xin Liên Lạc: 228-206-8581 hay 202-415-3366
(For further information Contact: 228-206-8581 or 202-415-3366)

*** Tìm Hiểu Về Chương Trình Bồi Thường Mới ***
(***Learning About The New Compensation Program***)

Dù Có Luật Sư Hay Không, Trung Tâm sẽ là giải pháp tốt nhất cho quý vị
(Whether you have an attorney or not, the Center will be the best solution for you)

**IN THE CHANCERY COURT OF JACKSON COUNTY, MISSISSIPPI**

LANGSTON & LOTT, P.A.                                               PLAINTIFF

VS.                                        CAUSE NO. 2012-1077-NN

FOXWORTH LAW OFFICE, LLC;
JOHN A. FOXWORTH, JR.; THE LAW
FIRM OF SHANDON PHAN, PLLC;
SHANDON PHAN; and JOHN DOES 1-10                             DEFENDANTS

---

### AFFIDAVIT OF HOAI NGUYEN

---

STATE OF MISSISSIPPI     )
                         ) ss.
COUNTY OF JACKSON        )

I, Hoai Nguyen, being first duly sworn, depose and state as follows:

1.      I am a longtime commercial shrimper and resident of Biloxi, Mississippi.  My

family and I own and operate a 66 foot shrimp boat.

2.      On February 4, 2011, I retained the law firms of Faegre Baker Daniels, LLP and

Langston & Lott, P.A. to represent my claims against BP and other responsible parties arising

from the Deepwater Horizon spill.

3.      On May 24, 2012, I visited Mr. Shandon Phan in his office in Biloxi, MS to

inquire about his services.

4.      At the outset of meeting, we informed Mr. Phan that I had retained

Faegre/Langston, but that I was interested in hearing what he could do for me.  Mr. Phan was

happy to meet with me and informed us that I had a legal right to terminate Faegre/Langston at

any time.  Throughout the meeting, Mr. Phan stressed that I was not bound to remain with

Faegre/Langston and that he would help me take the necessary steps to terminate them.

1

5.      Mr. Phan explained in detail that a client can either terminate his attorney "for cause", in which case the former attorney would be without recourse to collect his fees, or "without cause." He told me that I would have good cause to terminate Faegre/Langston if I thought their fees were too high; they were taking too long to process my claims; or if they were not adequately communicating with me. Without asking about the facts of our particular cases, or how much Faegre/Langston had done for us, Mr. Phan assured me, I could terminate them "for cause." In fact, Mr. Phan told me that he would help me draft the necessary paperwork to ensure that I would have no obligation to pay Faegre/Langston for their services.

6.      Mr. Phan also mentioned that he was drafting a pamphlet explaining to the Vietnamese community how to effectively terminate their attorneys and how to do it in a way that precluded the former attorneys from asserting a claim for their fees.

7.      To encourage me to terminate Faegre/Langston, Mr. Phan told me that he was teamed up with two firms that were on the Plaintiffs' Steering Committee in the Multidistrict Litigation and that they were far more involved in the settlement than Faegre/Langston. He explained that these firms were the ones primarily responsible for administering the settlement fund and that he could guarantee me that I would get paid within two weeks of the fund opening. He also said that I could get paid money from the Vessels of Opportunity separately from my lost income claims. Mr. Phan contrasted Faegre/Langston by saying they were not involved in the Multidistrict litigation and that they could not get claims processed as quickly as he could.

8.      Mr. Phan also mentioned that some of his in-laws had left Faegre and were now his clients.

9.      Mr. Phan concluded the meeting by encouraging me to terminate Faegre/Langston.

2

_____
Hoai Nguyen

Subscribed and sworn to before me
this **29** day of May, 2012..

_____
Notary Public
fb.us.86367l4.02

STATE OF MISSISSIPPI
PATRICIA USRY
NOTARY PUBLIC
ID No. 85626
Commission Expires
June 3, 2015
JACKSON COUNTY

3

## IN THE CHANCERY COURT OF JACKSON COUNTY, MISSISSIPPI

LANGSTON & LOTT, P.A.                                                          PLAINTIFF

VS.                                                    CAUSE NO. 2012-1077-NH

FOXWORTH LAW OFFICE, LLC;
JOHN A. FOXWORTH, JR.; THE LAW
FIRM OF SHANDON PHAN, PLLC;
SHANDON PHAN; and JOHN DOES 1-10                                   DEFENDANTS

---

### AFFIDAVIT OF BRENDA TRUONG

---

STATE OF MISSISSIPPI      )
                          ) ss.
COUNTY OF JACKSON         )


I, Brenda Truong, being first duly sworn, depose and state as follows:

1.      I am a longtime commercial shrimper and resident of Bay St. Louis, Mississippi. For the last five years, I have owned and operated the f/v Miss Mai, a 38 foot shrimp boat, with my husband and family.

2.      On July 1, 2011, I retained the law firms of Faegre Baker Daniels, LLP and Langston & Lott, P.A. to represent my claims against BP and other responsible parties arising from the Deepwater Horizon spill. Since hiring my attorneys, I have at all times been happy with their representation and have made no inquiries into other firms.

3.      Around March of this year, the Asian-Americans for Change (AAC) had a fundraising raffle in Pascagoula, MS. I entered the raffle by providing my name, phone number, and GCCF number. Apparently using this information, the AAC contacted me on May 25, 2012,

1

at around 10:30am to inform me that it was now working with Attorney Shandon Phan and that together they were opening a claims processing center in Biloxi, MS. The representative invited me to the grand opening on Saturday May 26th and to a recruiting meeting that I understood to be hosted by attorney Shandon Phan on Sunday May 27th. She also mentioned that I could discuss my claim with an attorney at either meeting.

4.      During the call, it was clear that the AAC representative knew I was represented by an attorney and that she was nonetheless trying to solicit my business on behalf of Mr. Phan. The representative told me that Mr. Phan was willing to work at a significantly cheaper rate than my current attorneys, and that he would get my claims done faster. She also mentioned several Faegre Baker Daniels/Langston & Lott clients by name who she claimed had hired Mr. Phan, or were considering hiring Mr. Phan.

5.      I considered this an inappropriate use of my personal information, and I did not appreciate being called and solicited to in this manner.

Brenda Truong

Subscribed and sworn to before me
this 28 day of May, 2012.

Notary Public
fb.us.8636510.01

2