## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL BY THE OIL RIG | § | MDL No. 2179 |
| "DEEPWATER HORIZON" IN THE | § | |
| GULF OF MEXICO, ON APRIL 20, 2010 | § | SECTION: J |
| | § | |
| THIS PLEADING APPLIES TO: | § | JUDGE BARBIER |
| ALL CASES | § | |
| | § | MAGISTRATE JUDGE SHUSHAN |

### MEMORANDUM IN SUPPORT OF TRANSOCEAN'S MOTION TO ADMIT THE EXPERT REPORTS OF JEFF WOLFE AS HIS DIRECT EXAMINATION OR ALTERNATIVELY, MOTION FOR CONTINUANCE

### I.      INTRODUCTION

On December 1, 2012, Lieutenant Commander Jeff Wolfe ("Mr. Wolfe"), Transocean's expert witness regarding the seaworthiness, marine safety systems, regulatory compliance, and safety condition of the *Deepwater Horizon*, as well as the competency and training of her bridge crew, tragically passed away after battling injuries he sustained from a serious vehicle crash.  In the wake of Mr. Wolfe's accident, Transocean has determined it cannot fully address the merits of its claims and defenses if it is unable to rely on Mr. Wolfe's expert testimony and opinions at trial.

Given these unfortunate circumstances, Transocean respectfully requests the Court admit Mr. Wolfe's expert reports into evidence as his direct testimony.  Alternatively, Transocean respectfully requests a continuance of the February 25, 2013 trial of liability, limitation, exoneration, and fault allocation to retain an alternate expert on the same subject matter, allowing sufficient time for the alternate expert to submit a report and prepare for trial.

## II.      FACTUAL BACKGROUND

In August of 2011, Transocean retained Mr. Wolfe as an expert witness regarding the seaworthiness, marine safety systems, regulatory compliance, and safety condition of the *Deepwater Horizon*, as well as the competency and training of her bridge crew.  In accordance with the Federal Rules of Civil Procedure and this Court's scheduling order, Mr. Wolfe served his initial, written expert report on all parties on September 23, 2011.  Mr. Wolfe also served a rebuttal expert report on November 7, 2011, that addressed statements from BP experts Andrew Mitchell and J.R. Batte and PSC expert Geoff Webster.

Mr. Wolfe's initial and rebuttal expert reports set forth the bases for his opinions about the seaworthiness, marine safety systems, regulatory compliance, and safety condition of the *Deepwater Horizon*, as well as the competency and training of her crew.  The reports complied with the requirements of Federal Rule of Civil Procedure 26, setting forth the data and other information Mr. Wolfe considered in forming his opinions and identifying Mr. Wolfe's qualifications and compensation.  Mr. Wolfe signed and submitted both reports under penalty of perjury.

All parties to the Phase I trial were given the opportunity to depose Mr. Wolfe on December 1, 2011.  Various parties allocated their time to BP, who cross-examined Mr. Wolfe for approximately six hours regarding the opinions he expressed in his reports.  Halliburton also cross-examined Mr. Wolfe.  The PSC, the United States Department of Justice, Cameron, Weatherford, Dril-Quip, M-I Swaco, and the State of Louisiana attended the deposition but elected not to conduct any examination.

Mr. Wolfe tragically passed away on December 1, 2012 as a result of injuries he received from a serious vehicle crash.  Mr. Wolfe's unexpected passing obviously means he will be unavailable to testify at trial.

## III.   ARGUMENT

### A.   The Court Has Broad Discretion to Admit Relevant, Probative Hearsay Evidence.

Under the Federal Rules of Evidence, courts are given broad discretion "[…] so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote development of evidence law, to the end of ascertaining the truth and securing a just determination."  *See* FED. R. EVID. 102.  The courts' discretion is discussed in the Committee Note to Fed. R. Evid. 104(a), which suggests that in certain situations "the judge should be empowered to hear any relevant evidence, such as affidavits or other reliable hearsay."  The Federal Rules explicitly give the courts broad discretion over admissibility under Fed. R. Evid. 104(a), which provides that "the court is not bound by evidence rules" when deciding preliminary questions of admissibility.

The purpose of the hearsay rule is to ensure that statements allowed into evidence are reliable.  *See Idaho v. Wright*, 497 U.S. 805 (1990).  But, the hearsay rule assumes that potential problems with hearsay statements may be solved with cross-examination or other factors that demonstrate that the statement is reliable.  *Id.*  "'[The hearsay test] may in a given instance be superfluous; it may be sufficiently clear, in that instance, that the statement offered is free enough from the risk of inaccuracy and untrustworthiness, so that the test of cross-examination would be a work of supererogation.'"  *Id.* (quoting 5 J. Wigmore on Evidence, § 1420 (J. Chadbourn rev. 1974)).  Courts, therefore, should admit hearsay statements where other factors demonstrate that the statement "bears the 'indicia of reliability' necessary 'to afford the trier of fact a satisfactory basis for evaluating the truth […].]"  *United States v. Deeb*, 13 F.3d 1532, 1537 (11th Cir. 1994) (quoting *Ohio v. Roberts*, 448 U.S. 56, 65-66 (1980)).

### B.   Mr. Wolfe's Expert Reports are Admissible.

Two exceptions to the hearsay rule apply to Mr. Wolfe's expert reports.  Mr. Wolfe's reports may be admissible under Fed. R. Evid. 804(b)(1), the "former testimony" exception, and Mr. Wolfe's expert reports may also be admissible under Fed. R. Evid. 807, the "residual" exception to the hearsay rule.

      1.    <u>Mr. Wolfe's Expert Reports are Admissible as Former Testimony.</u>

Mr. Wolfe's written expert reports are admissible under the "former testimony" exception of 804(b).  According to Fed. R. Evid. Rule 804(b)(1), where the declarant is unavailable, former testimony is not excluded by the hearsay rule, if the testimony:

> **(A)** was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
>
> **(B)** is now offered against a party who had — or, in a civil case, whose predecessor in interest had — an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

This rule favoring the admissibility of deposition testimony is even stronger where the evidence is intended to preserve a witness's testimony for trial.  *See Gill v. Westinghouse Elec. Corp.*, 714 F.2d 1105, 1107 (11th Cir. 1983) (approving admission of pretrial deposition testimony of deceased expert because "pretrial depositions are not only intended as a means of discovery, but also serve to preserve relevant testimony that might otherwise be unavailable for trial").

Here, the parties were put on notice that Mr. Wolfe's expert reports would be treated as his direct testimony at trial.[1]  Moreover, opposing parties had more than two months to review Mr. Wolfe's reports and were allotted a full-day of cross-examination to develop the opinions contained in his reports.  Due to the unique circumstances surrounding Mr. Wolfe's sudden unavailability, Mr. Wolfe's expert reports should be treated as former testimony where (1) his

---

[1] *See* Rec. Doc. 5719, Order [Working Group Conference on Friday, February 10, 2012] at 4 ([…] because of Judge Barbier's intention to by-pass direct examination with introduction of the expert's report […]").

reports were submitted under penalty of perjury, (2) the parties were on notice and understood his reports would be treated as direct testimony at trial, and (3) opposing parties were given the opportunity to develop and cross examine the opinions in Mr. Wolfe's report.

> 2. Mr. Wolfe's Expert Reports are Admissible under the Residual Hearsay Exception.

Mr. Wolfe's written reports are also admissible under Fed. R. Evid. 807, the "Residual Exception" to the hearsay rule. Courts have specifically recognized that expert reports may be admissible since they may comply with the requirements Fed. R. Evid. 807. *See, e.g.*, *Blue Cross and Blue Shield United of Wisconsin v. Marshfield Clinic*, 152 F.3d 588, 595 (7th Cir. 1998) ("conceivably [expert] reports could come into evidence directly under the catch-all exception to the hearsay rule, FED. R. EVID. 807" instead of requiring the proffering party to subpoena and present the witness live at trial). The residual hearsay exception of Federal Rule of Evidence 807 provides:

> **(a) In General.** Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
>
> > **(1)** the statement has equivalent circumstantial guarantees of trustworthiness;
> >
> > **(2)** it is offered as evidence of a material fact;
> >
> > **(3)** it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> >
> > **(4)** admitting it will best serve the purposes of these rules and the interests of justice.
>
> **(b) Notice.** The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its

particulars, including the declarant's name and address, so
that the party has a fair opportunity to meet it.

Where a declarant becomes unavailable, courts may turn to Fed. R. Evid. 807 to admit relevant, probative evidence when hearsay rules would otherwise exclude it.  For instance, in *Televisa, S.A. De C.V., et al. v. Univision Communications, Inc.*, 635 F.Supp.2d 1106, the court found that the expert's report was admissible under the residual hearsay exception where the expert withdrew due to a conflict of interest.

Using similar analysis, the Ninth Circuit found that a district court erred by not admitting videotaped statements of witnesses who were not available to testify at trial.  In *United States v. Sanchez-Lima*, 161 F.3d 545, 548 (9th Cir. 1998), the Ninth Circuit found that the video-taped statements met all the requirements for admission under Federal Rule of Evidence 807.  The court reviewed the particular guarantees of trustworthiness of the hearsay statements, which were satisfied where the declarants were under oath and subject to the penalty of perjury, the statements did not contradict any previous statements, and the adverse party against whom the statements were offered had an opportunity to develop the testimony of these witnesses before they became unavailable.  *Id.* at 547.  The court also noted that the adverse party had notice and the option to participate in the videotaped statements.  *Id.* at 547-48.  Because the statements satisfied all the criteria of Fed. R. Evid. 807, the court found that the district court erred in excluding the evidence.

Here, Mr. Wolfe's expert reports have equivalent circumstantial guarantees of trustworthiness; are offered as evidence of material facts; are more probative than any other evidence Transocean can obtain through reasonable efforts; and admitting the reports will best serve the purposes of the Federal Rules of Evidence and the interests of justice.  In addition, opposing parties will have already been given notice that the expert reports were intended to be

used as direct testimony at trial.[2]  Moreover, between now and February 25, 2013, opposing parties will have sufficient notice to prepare for the fact that Mr. Wolfe's testimony will be used as his direct testimony at trial and that he will be unavailable at trial.

First, Mr. Wolfe's statements in his expert report have equivalent circumstantial guarantees of trustworthiness.  Mr. Wolfe signed his expert reports with an understanding that he was submitting the report under penalty of perjury.  Mr. Wolfe swore the same oath he would swear if he were able to testify at trial.   *See Dartez v. Fibreboard Corp.*, 765 F.2d 456, 462-63 (5th Cir. 1985) (sworn testimony at adversarial proceeding presents "equivalent guarantees of trustworthiness"); *Furtado v. Bishop*, 604 F.2d 80, 91 (1st Cir. 1979) (deceased attorney's affidavit admissible under residual exception because attorney appreciative of oath's significance).  Moreover, Mr. Wolfe and other experts had notice from the Court that their expert reports would be used as their direct testimony at trial.[3]

Second, Mr. Wolfe's opinions are crucial elements of Transocean's case at trial.  Mr. Wolfe's reports and expected trial testimony covered various key issues such as the regulatory compliance of the vessel, the competence of the crew, and Transocean's dedication to safety. These are important issues for Transocean that only Mr. Wolfe was prepared to address at trial. Because of Mr. Wolfe's unique expertise in assessing drilling rigs, assessing crew competence, and assessing drilling company safety culture, Transocean is currently unable to obtain other evidence that would be probative of these issues (unless Transocean is alternatively permitted to retain an alternate expert). So, if Mr. Wolfe's reports are inadmissible, Transocean will be denied the opportunity to present expert opinion evidence relating to material facts and issues at trial.

---

[2] *See* Rec. Doc. 5719, Order [Working Group Conference on Friday, February 10, 2012] at 4 ([…] because of Judge Barbier's intention to by-pass direct examination with introduction of the expert's report […]").
[3] *See* Rec. Doc. 5719, Order [Working Group Conference on Friday, February 10, 2012] at 4 ([…] because of Judge Barbier's intention to by-pass direct examination with introduction of the expert's report […]").

Finally, given the suddenness of Mr. Wolfe's death, admitting Mr. Wolfe's expert reports would serve the interests of justice where Transocean is without recourse if the reports are excluded. Meanwhile, the other parties had notice that expert reports would be used as direct testimony at trial and had an opportunity to cross examine Mr. Wolfe during a full-day deposition.

Accordingly, Mr. Wolfe's expert reports meet the requirements of the Residual Hearsay Exception and may be admissible at trial.

**C.     Alternatively, Transocean Seeks a Continuance to Retain an Alternate Expert, Allowing Adequate Time for the Preparation and Filing of an Alternate Expert Report.**

If the Court does not admit Mr. Wolfe's Expert Reports, Transocean respectfully requests a continuance to seek out and retain an alternate expert on the same subject matter and for adequate time for the alternate expert to prepare and file his report. The sudden and unexpected death of Mr. Wolfe is a circumstance beyond Transocean's control. Transocean hopes to resolve the issue and determine the best course of action for the Court and all parties involved. But, if Mr. Wolfe's reports are excluded, Transocean will be prejudiced without Mr. Wolfe's unique and essential expert testimony, which is essential to its defenses and claims at trial. Moreover, Mr. Wolfe's expert testimony cannot be easily or quickly replicated. Similar testimony can only be developed through a similarly qualified expert, which will take time to find. Even then, such an expert will require sufficient time to learn and analyze the voluminous facts of this case and develop meaningful expert opinions. Given that Mr. Wolfe had been prepared to offer his opinions at trial after more than a year of review and preparation, Transocean respectfully requests that the Court grant a continuance for at least six months, which would be the minimum time required to prepare a suitable alternate expert for trial. If Transocean is not afforded an opportunity to retain an alternate expert or the time necessary to secure an equivalent report on

this subject matter, Transocean will be unduly prejudiced in the presentation of its claims and defenses.  In addition, the Court will be disadvantaged as it evaluates key facts regarding the seaworthiness, marine safety systems, regulatory compliance, and safety condition of the *Deepwater Horizon*.  The Court would hear the case on less than full merits since a key party's positions would be absent, and justice would not be served.  Accordingly, if the Court rules that Mr. Wolfe's expert reports are excluded, Transocean alternatively requests a continuance of at least six months to retain and prepare a suitable expert for trial.

## IV.    CONCLUSION

For the foregoing reasons, Transocean respectfully requests: (1) Mr. Wolfe's direct testimony, which the Court has ruled must be submitted through declaration, will be submitted by tendering his expert reports dated September 23, 2011 and November 7, 2011; and (2) all other parties' cross-examination will be submitted through the December 1, 2011 deposition that the parties conducted of Mr. Wolfe on the above reports, which are marked as exhibits in his deposition.

Alternatively, Transocean requests a continuance to retain an alternate expert and for such adequate time for the expert to develop a report and prepare for trial.

Wherefore, Transocean urges that its Motion to Admit the Expert Reports of Jeff Wolfe as His Direct Examination or Alternatively, Motion for Continuance be GRANTED for the reasons set forth in this supporting Memorandum.

DATED:  December 23, 2012                    Respectfully submitted,


By:  _s/ Brad D. Brian_                      By:  _s/ Steven L. Roberts_
Brad D. Brian                                Steven L. Roberts
Michael R. Doyen                             Rachel Giesber Clingman
Daniel B. Levin                              Sean D. Jordan
MUNGER TOLLES & OLSON LLP                     SUTHERLAND ASBILL & BRENNAN LLP

355 So. Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel:  (213) 683-9100
Fax:  (213) 683-5180
Email:  brad.brian@mto.com
          michael.doyen@mto.com
          daniel.levin@mto.com


By:    s/  Edwin G. Preis
Edwin G. Preis, Jr.
PREIS & ROY PLC
Versailles Blvd., Suite 400
Lafayette, LA 70501
(337) 237-6062
    *and*
601 Poydras Street, Suite 1700
New Orleans, LA 70130
(504) 581-6062

1001 Fannin Street, Suite 3700
Houston, Texas 77002
Tel:  (713) 470-6100
Fax:  (713) 354-1301
Email:  steven.roberts@sutherland.com,
          rachel.clingman@sutherland.com
          sean.jordan@sutherland.com


By:    s/ Kerry J. Miller
Kerry J. Miller
FRILOT, LLC
110 Poydras St., Suite 3700
New Orleans, LA 70163
Tel:  (504) 599-8194
Fax:  (504) 599-8154
Email: kmiller@frilot.com


John M. Elsley
ROYSTON, RAYZOR, VICKERY & WILLIAMS LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
(713) 224-8380


**Counsel for Defendants Transocean Offshore Deepwater Drilling Inc., Transocean Deepwater Inc., Transocean Holdings LLC, and Triton Asset Leasing GmbH.**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, on December 23, 2012.

/s/ Kerry J. Miller