**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010** | **MDL NO. 2179**<br><br>**SECTION J** |
| **Applies to:** ***All Cases*** | **JUDGE BARBIER**<br>**MAGISTRATE JUDGE SHUSHAN** |

**ORDER**

**[Regarding the Rule 30(b)(6) Deposition of BP (Rec. doc. 8143)]**

At the Working Group Conference on December 18, 2012, the U.S. and BP reported that issues remained concerning testimony of certain designees for the Rule 30(b)(6) deposition of BP. If the parties were unable to resolve the issues, the U.S. was required to submit a letter brief by December 21, 2012 with BP's letter of November 29 attached to it. Rec. doc. 8123. The Court agreed to review these before the January 4 deadline for BP's opposition. Having reviewed the letters, the undersigned has determined that further briefing is not required.

For three witnesses, Robert Sanders, Kevin Devers, and Ellen Williams, the U.S. contends that BP objected to questions which fell within the scope of the agreed topics for its Rule 30(b)(6) deposition and the witnesses were not prepared to answer questions covered by the topics. The U.S. requests that: (1) BP be required to produce knowledgeable fully prepared 30(b)(6) witnesses to respond to the topics; and (2) BP's objections be overruled and the answers provided by the witnesses deemed to be given in BP's corporate capacity. Rec. doc. 8143 at 11.

**1. Robert Sanders.**

Topic 12, as limited to the relief wells, is as follows:

> The use of any analysis, calculations, assumptions or modeling of the flow rate of hydrocarbons from the Macondo MC252 well undertaken by or on behalf of BP or

> the Unified Command in connection with the analysis, **consideration** or execution of . . . [Macondo Relief Well No. 1, and Macondo Relief Well No. 2].[1]

BP designated Sanders to testify to Topic 12 as limited.

The U.S. contends that: (1) Sanders acknowledged that the relief wells were intended to be used to effect a dynamic kill; (2) in order to perform a dynamic kill, BP needed to perform an estimate of the flow rate; (3) BP objected that questions concerning the flow rate calculations were beyond the scope of Topic 12; and (4) BP improperly refuses to provide 30(b)(6) testimony regarding the flow rate analyses relating to the planned dynamic kill using the relief wells.

BP responds that: (1) the purpose of a relief well is to create an entry point for performing a subsequent kill; (2) the Macondo relief wells were not actually used to conduct any dynamic kill operations because of the success of the static kill performed using the capping stack in August 2010; (3) questions concerning the use of analyses and modeling of relief wells are within the scope of Topic 12; and (4) questions concerning the analyses and modeling of potential subsequent dynamic kill operations are not within the scope of Topic 12.

BP's cabining of the questioning on Topic 12 is too narrow. It ignores the use of the word "consideration" in Topic 12. Questions concerning the analysis and modeling of potential dynamic kill operations are within the scope of Topic 12. BP's objections regarding the scope of Topic 12 is overruled.

[1] Emphasis added.

**2. <u>Kevin Devers</u>.**

Topic 12, as limited to the cofferdam, riser insertion tube tool ("RITT"), and top hat is as follows:

> The use of any analysis, calculations, assumptions or modeling of the flow rate of hydrocarbons from the Macondo MC252 well undertaken by or on behalf of BP or the Unified Command in connection with the analysis, consideration or execution of . . . [Cofferdam, RITT and Top Hat].

BP designated Devers to testify to Topic 12 as limited.

Devers testified that: (1) the RITT is a tool separate from the riser which is separate from the vessel; and (2) although the RITT, the riser and the vessel are connected, different teams worked on each component. The U.S. contends that BP objected to questions concerning who was in charge of the different teams as beyond the scope of Topic 12. It argues that BP's interpretation of Topic 12 cuts off the point of hydrocarbon capture, for example the RITT, from the rest of the components of a particular source control method.

BP responds that:

> [F]low rate was not a concern during the development of these three procedures because collection was limited by top-side processing capacity. . . . The United States therefore seeks testimony about a subject that Mr. Devers explained does not exist.

Rec. doc. 8144 at 6. The U.S. describes the Devers' deposition testimony cited by BP as self-serving. Rec. doc. 8143 at 5.

It is not clear whether Devers is testifying that the team working on the RITT did not use flow rate estimates in its design or whether flow rate estimates were not used by the person(s) in charge of the teams working on the RITT, the riser and the vessel.

BP shall provide a witness who can testify regarding the following:

> The use of any analysis, calculations, assumptions or modeling of the flow rate of hydrocarbons from the Macondo MC252 well undertaken by or on behalf of BP or the Unified Command in connection with the analysis, consideration or execution of: (a) the RITT, the riser connected to it and the vessel connected to the riser; (b) the Cofferdam and anything like the riser and vessel associated with the RITT; and (c) the Top Hat and anything like the riser and vessel associated with the RITT.

**3. Ellen Williams.**

The first issue raised by the U.S. concerns Topic 4, for which Williams was designated to testify regarding "flow rate (observational)." The U.S. contends that Williams was not able to testify concerning an analysis prepared by Trevor Hill of a flow rate estimate prepared by Professor Steve Wereley based on observational techniques. Hill's deposition is set for January 14 and 15 in London. His testimony at the deposition regarding his analysis of Wereley's flow rate estimate shall be deemed to be on behalf of BP. The U.S. and BP shall meet and confer on whether any additional examination time is required for Hill's deposition. If they cannot agree, they shall report to the Court.

The second issue raised by the U.S. relates to Topic 16. The U.S. contends that it is implausible that BP has no information that falls within the scope of the topic. BP states that no pre-July 17 work was included in the October 21, 2010 submission to the National Oil Spill Commission. Rec. doc. 8144 at 9. No further response is required by BP.

The third issue concerns the first two parts of Topic 9.

> Your efforts (including all communications, modeling, calculations and analysis) undertaken or used in connection with: the flow rate estimate of 1,000 bopd announced by Admiral Landry on April 24, 2010; the flow rate estimate of 5,000 bopd announced by Admiral Landry on April 28, 2010. . . .[2]

[2] Four other flow rate estimates are referred to in the topic. For example, the fifth is identified as "the flow rate estimate announced by the FRTG on or about June 15, 2010 (according to National Commission Staff Working Paper #3)."

The U.S. contends that there is an issue about whether communications dated after April 24 or April 28 are within the scope of the topic. "BP's position was and is that work undertaken after a given announcement may have been within the scope of Topic 9 as long as the work was done *in connection with* the announcement." Rec. doc. 8144 at 7(emphasis in original). BP contends that if Topic 9 is not so limited, then Topic 9 will consume Topic 4.[3]

There is overlap between Topic 9 and Topic 4. BP's contention that Topic 9 is limited to communications, modeling and analysis undertaken in connection with the announcement of the estimate is too narrow. The U.S. reports that Dr. Williams was unable to answer questions regarding BP's response to Congressman Markey, dated May 24, 2010, regarding the flow rate estimate of 5000 barrels per day. This was a communication undertaken in connection with the flow rate estimate of 5,000 bopd announced by Admiral Landry on April 28, 2010. BP is required to provide testimony on Topic 9 as described herein.

---

[3] Topic 4 is:

The manner and/or methodology that BP, BP's contractors and/or any other entity working under BP's direction, used to predict, estimate, characterize and/or measure the daily amount of hydrocarbons flowing from the Macondo Well from:

a. April 20, 2010 through July 15, 2010;

b. July 16, 2010 through September 19, 2010; and

c. September 20, 2010 through the present,

Including the results of such efforts, the identity of the individuals and groups who undertook such efforts, and a description of the data, observations and assumptions on which such efforts were based.

**4. Conclusion.**

As promptly as possible, BP and the U.S. shall meet-and-confer on the implementation of this order and the scheduling of the required deposition testimony. The deadline for an appeal of this order is **Tuesday, January 8, 2013.**

New Orleans, Louisiana, this 2nd day of January, 2013.

**SALLY SHUSHAN**
**United States Magistrate Judge**