OFFICIAL NEWSPAPER OF THE GOVERNMENT OF THE STATE OF QUINTANA ROO
Chetumal, Quintana Roo, April 25, 2003
ATTACHMENT 2A-1 DOCUMENT 246
TVQR

[...]

Page 2

DECREE by means of which the Administrative Deconcentrated Body named *Institute of Environmental Risk and Impact of the State of Quintana Roo*

[...]

## WHEREAS

The development of the nation and, particularly, of the State of Quintana Roo requires the harmonization of economic growth and the quality of the environment, as well as the preservation and restoration of ecological equilibrium, sustainable development and the protection of the environment.

That it is necessary to promote the participation, in all sectors, necessary to ensure the right to live in a proper environment, for the development, health and well being of the citizens of Quintana Roo.

That, in environmental matters, one of the most important attributes of the State, consists in the evaluation and resolution of the manifestations of environmental impact, conceived as the procedures by means of which the environmental aspect of any project is authorized, regardless of such project, activity or building´s nature, whether it is public or private, if such act may cause ecological unbalance, in order to be able to avoid or lessen such negative effects.

That, among the obligations imposed by the Political Constitution of the Free and Sovereign State of Quintana Roo, it is important to note there is an obligation to maintain the public management of this State in constant improvement, adapting it to the technical and human needs of the State.

That, currently, at the level of Public State Administration, the office which holds jurisdiction, in both infrastructure and public works, as well as in ecological matters, is the Ministry of Urban Development and the Environment, which places such Ministry in the difficult position of, on the one hand, coordinating the execution of public works projects and, on the other, evaluation and approving the environmental impact manifestations of such projects.

Due to the aforementioned, I hereby issue the following:

## DECREE

**Article First.-** The administrative Deconcentrated body named INSTITUTE OF ENVIRONMENTAL RISK AND IMPACT OF THE STATE OF QUINTANA ROO is hereby created and granted with full technical and functional autonomy, as such body will be coordinated by the Ministry of Urban Development and the Environment [...]

Website of the *Instituto Nacional de Ecologia* (National Institute of Ecology)
http://www2.ine.gob.mx/publicaciones/libros/398/vazquez.html
FEDERALISM IN ENVIRONMENTAL MATTERS
By: Aquilino Vazquez García
ATTACHMENT 2A-1 DOCUMENT 248
TVQR

The Political Constitution of the United Mexican States clearly delimitates the scopes of the various levels of government, which jointly make up the Federation and local orders. Therefore, it is the superior statute which grants the distribution of rights and authorities and jurisdictions which rule at the Federal and Local levels.

The Federal regime is characterized by the possibility of coexistence between two jurisdictions, which means that the governed people are subject to a double authority exercised within the scope of the corresponding rights and authorities; but, if on a Federal Regime the authorities have been reduced to the exercise of a few governmental rights and authorities, the Federation, notwithstanding the existence of the two jurisdictions, would only have value as a figurehead, of verbal appearance stripped of all content, if the general government only holds minimal rights and authorities, the autonomy of each federal entity would have such a narrow scope that, regardless of their constitutions, their union would not be an authentic federative bond.

Therefore, the efficacy of federalism itself, as a model for political life, is granted by the balance which, in the act of constitution, must be kept by the Federal and Local rights and authorities.

[...]

The Political Constitution of the United Mexican States establishes, along with explicit rights and authorities, certain rights and authorities which are classified as implicit, which are those that the Federal Legislative Powers may grant onto itself or to any of the other Federal powers as a necessary means to exercise one of its explicit rights and authorities.

Concurrent rights and authorities are those which may be exercised by the States as long as the Federation chooses not to do so, because it is the constitutional holder of such rights and authorities.

Environmental matters are not expressly referred to in the Constitution as reserved for the Federation. However, different aspects of it have been reserved for Federal jurisdiction and therefore, the States are unable to legislate over such matters.

There are certain rights and authorities for legislation over environmental matters which correspond exclusively to the Federal Congress, this means that the States are not able to legislate over such matters, however this does not impede, in such cases as when the Federation expressly authorizes it legally, that the States apply such Federal legislation. Consequently, a clear distinction must be made between the rights and authorities to legislate and the attributes in environmental matters as regards to administrative powers.

The Political Constitution of the United Mexican States, in section XXIX-G of article 73, establishes the distribution of jurisdictions in environmental matters, thereby charging the Federal Congress to incite administrative collaboration between the three levels of power in Mexico (Federal, State, Municipal).

Prevention and control of environmental emergencies and contingencies

This is a coordination of administrative actions, but it does not constitute concurrence of rights and authorities in environmental matters as held by the Federation as well as the States and Municipalities. For such purpose, the provisions established in environmental legislation, as refer to environmental emergencies, provide for a joint and coordinated participation of the three levels of government in the performance of all corresponding actions.

The foregoing is justified if we consider that, under the situations which arise from an environmental emergency or contingency, the most important response is to perform the actions and measures necessary to answer the problems which may arise at such time.

[...]

TVQR005762

Liability for Environmental Damage
Preliminary Considerations Regarding the Legal Regime of Liability for Environmental Damage in Mexico
By: José Juan González Márquez
(Mexican Attorney, professor of Economic Law at the Universidad Autonoma Metropolitana and consultant for UNEP-United Nations Environment Programme)
ATTACHMENT 2A-1 DOCUMENT 243, 244

[...]

### 3    Limitations on administrative sanctions as regards to the occurrence of environmental catastrophes

On November 19, 1984 Mexico experienced its first state of emergency caused by the handling of dangerous substances. On that day, in San Juan Ixhuatepec or San Juanico, a low income community in the State of Mexico, a series of seven chain explosions occurred, which devastated homes, the environment and lives in a five kilometer radius. The reason for such explosions was a security system failure in a gas storage plant that was owned by the Mexican Agency Petroleos Mexicanos.

The legal issue regarding this accident was not properly dealt with save for Mr. Salvador Hernandez, the leader of the Lazaro Cardenas independent workers movement who said to Proceso magazine: "we are puzzled by Beteta's (at the time Mr. Beteta was the Director General of Petroleos Mexicanos) statement issuing judgments before we can see an official accident report, more than anyone, he knows that PEMEX is, at least, jointly liable for the compensation of damages. There is a legal principle that determines such liability. Pemex is jointly liable. Beteta issued a legal judgment and ignored the provisions of Mexican positive law in order to try to avoid liability." (Proceso No. 220, 1984, November).

TVQR005763

LEGAL MAGAZINE
Mexican Bulletin of Comparative Law
http://www.juridicas.unam.mx/publica/rev/boletin/cont/123/art/art5.htm
WATER BASINS IN MEXICAN ENVIRONMENTAL LAW. INSTRUMENTS FOR THEIR INTEGRAL
MANAGEMENT.
By: Tania García López (Universidad Veracruzana)
ATTACHMENT 2A-1 DOCUMENT 236

[...]

## II. DISTRIBUTION OF JURISDICTION IN ENVIRONMENTAL MATTERS. THE PRINCIPLE OF CONCURRENCY.

The principle of concurrency between the three levels of government in environmental matters is established in the Constitution, after its amendment of 1987; Article 73, section XXIX-G establishes: "Congress shall be empowered to issue laws which shall establish concurrency between the Federal Government, the State Governments and the Municipalities, within the scope of their respective jurisdictions, as regards to matters of environmental protection and the preservation and restoration of ecological equilibrium".

The foregoing principle indicates that the scope of jurisdiction, in environmental matters, between the federal, state and municipal levels, is concurrent, as established in the General Law of Ecological Equilibrium and Protection of the Environment, as well as the corresponding federal laws which regulate specific aspects or sectors of the environment.

Articles 124 of the Constitution establishes the basic rule for the distribution of jurisdictions between the Federation and the States, as follows: "Any rights and authorities which are not expressly granted by this Constitution to Federal Functionaries are thereby reserved in favor of the States".

In Environmental matters, the solution adopted is the granting of powers to the Federation to regulate, through a legal framework or general statute, the distribution of jurisdictions or concurrent jurisdictions. As a result, concurrent jurisdictions can be defined as those "granted to the federal authorities but not prohibited to the States, which may, consequently, be enforced and regulated by the Federal Government as well as the States", and the Municipal authorities as well, considering that, in environmental matters, they have a large number of attributions.

As mentioned by Gonzalez Marquez[1], "in environmental matters there exists a concurrency of jurisdictions with limited borders. That is, when mentioning ´within the scope of their corresponding jurisdictions´, we can assume that each of the three levels of government holds different rights and authorities regarding such matters."

---

[1] González Márquez, José Juan y Montelongo Buenavista, Ivett, *Introduction to Mexican Environmental Law*, México, Universidad Autónoma Metropolitana, 1999, p. 79.

[...]

Additionally, the Law provides for the necessity of the existence of coordination, induction and concentration instruments between the authorities, as established in articles 11 and others of the General Law of Ecological Equilibrium and Protection of the Environment.

[...]

Pursuant with Constitutional Article 27, waters are considered to be public domain assets.

As mentioned by Lozano Cutanada[2]:

> A public domain asset is such before anything else *res extra commercium*, and any affectations thereto, with that essential objective, may pursue different ends; typically, to ensure the use of the public and its public distribution by means of a concession of the private use permits, to allow the performance of public services, to foment national riches..., to guarantee the controlled or balanced management and use of an essential resource or other similar ones.

[...]

A water basin is defined in the Statute of National Waters as:

> The unit of the territory, differentiated from other units, normally delimited by a water break or water division – the polygonal line made by the points of greatest elevation in such unit – where water can be found and where it is pooled or flowing towards a point of exit which may be the sea or an interior receiving body of water, through a hydrographic network of waterways which converge on a main one, or in the territory where waters form one autonomous unit, even when they do not discharge into the sea. In such spaces which are delimited by topographical features, the following resources co-exist: water, soil, flora, fauna, and other natural resources related thereto and with the environment. The hydrological water basin, along with all aquifers constitutes the unit for management of hydrological resources. Water basins are also made up by sub-basins and these last ones are made up of micro-basins.

[...]

The management of water in Mexico is performed through the National Water Commission (Conagua), which is a decentralized body of the Ministry of the Environment and Natural Resources, which, pursuant with what is established in the National Waters Act, is, in addition to being responsible in the management of national waters and inherent public assets, the supreme administrative authority in such matters.

[...]

---

[2] Lozano Cutanda, Blanca, *Administrative Environmental Law*, 5a. ed., Madrid, Dykinson, 2004, p.395.

There are 13 water basin bodies which fall within the scope of jurisdiction of the 13 administrative-hydrological regions. however, the substitution of regional management by basin is a question of form, considering that the territorial demarcations of both coincides, as well as their internal organization.

[..]

Currently, in México, each governmental office of the environmental sector presents a different cartography of the water basins, whether it is hydrological-adminsitrative, hydrological-forests, or ecological, which evidently complicates the consensus for the election of a sole territorial unit for the application of public policy, as well as complicates the sharing of information, thereby ensuring that the geo-spatial data may be comparable.

TVQR005766

History of the concept of Sustainable Development
By: Naina Pierri
ATTACHMENT 2A-1 DOCUMENT 233

http://www.ambiente.gov.ar/infotecaea/descargas/pierri01.pdf

[...]

The World Commission on Environment and Development (WCED) was created in 1983, in Session XXXVIII of the UN, by means of a resolution adopted by the General Assembly. Such Commission acted as an independent body, in the sense that its members worked individually and not as representatives of their governments. Their work resulted in a document known as *Our Common Future* (or *The Brundtland Report*) which, after being examined by the Board of Directors of the WCED, was considered and approved by the UN General Assembly, in 1987.

Brundtland supported the central idea that development and the environment cannot be separated: "The environment and development do not constitute separate challenges; they are inevitably linked together. Development is not maintained if the environmental resource base deteriorates; the environment cannot be protected if growth does not account for the consequences of environmental damage"

He also inverts the classic formula for the problem: he distances himself from eco-centralism, which views development as the cause of environmental deterioration, and he adopts a clear anthropocentric view, stating that we need to ensure that such deterioration limits development: "before, our greatest worries were focused on the effects of development over the environment. Today, we also need to focus on the way that environmental deterioration may impede or revert economical development. Through all areas, the deterioration of the environment is stunting the potential for development."

The appeal for sustainable development is a call to change strategies applied up to such time, both in matters relating to development policies as well as environmental matters. It is conceived as a drastic and needed change in order to maintain the final objective of social stability, something like changing the way a system works in order to maintain it: "The following decades will be vital. It is time to break away from the models used in the past. If we try to *maintain social and ecological stability* by means of the old strategies for development and environmental protection, instability will increase. *Security must be based on change*."

"Humanity is capable of using sustainable development practices, of guaranteeing the necessities of the present without compromising the capacity of future generations to support themselves."

Later, he establishes the links between poverty and the environment in a circular vision where poverty is both "the greatest cause and effect of global environmental problems." At such same time, he inverts responsibilities, making the poor just as, or even more, responsible for the environmental crisis than the rich:

TVQR005767

Damage to the environment was frequently considered to be the result of the growing demand for scarce resources as well as the pollution caused by the improvements in the quality of life of people who are relatively rich.   But poverty itself pollutes the environment, creating other types of environmental damages. In order to survive, the poor and hungry oftentimes destroy their own environment [...] The accrued effects of such processes reach the point of turning poverty itself into one of the greatest scourges of this world.

The consequence of such reasoning is the necessity for economic growth, both to decrease poverty as well as to promote investment in new technologies, in order to contain or revert environmental problems:

The satisfaction of essential needs depends, in part, of the achievement of full potential growth, and sustainable development clearly requires that there be economic growth in regions where such necessities are not being addressed. In such places where they are being addressed, economic growth is compatible, considering such growth must reflect the principles of sustainability and not the exploitation of certain people over others.

The measure of necessary growth was also explained as:

The growth rate may vary, but it is necessary at a minimum level to be able to cause some impact on absolute poverty. Considering all those countries [Third World], it seems improbable to address those objectives if the growth of income per capita were less than 3 per cent. Given the current population growth rates, a global growth would be necessary at least to 5 per cent per annum of national incomes for developing economies in Asia, as well as 5.5 per cent in Latin America and 6 per cent in Africa and west Asia.

However, he acknowledges that growth itself is not a guarantee of a decrease in poverty: "Growth on its own is not enough. A great production activity may coexist with disseminated poverty, and this constitutes a risk to the environment."

[...]

TVQR005768

INSTITUTO NACIONAL DE ECOLOGÍA (NATIONAL INSTITUTE OF ECOLOGY)
http://www2.ine.gob.mx/publicaciones/libros/395/vargas.html?id_pub=395
Mexican Legislation in Environmental Matters
By: José Manuel Vargas Hernandez
ATTACHMENT 2A-1 DOCUMENT 238
TVQR

[…]

Later, the *Official Federal Newspaper* published, on January 11, 1982, the Federal Environmental Protection Law, which delved further into environmental aspects as opposed to the preceding law, amplifying its horizons by specifically granting the punitive force of a regulation which allowed for the precedence of a social and public interest in the procurement of a clean and healthy environment.

The Constitutional basis of secondary norms which regulate human and social conduct before natural resources and ecosystems is found in Articles 25 sixth paragraph, 26, 27 third paragraph, 73 section XVI 4a, and section XXIX-G, as well as 115 and 124, which relate with the jurisdictional issues of State Governments and Municipalities, and their participation on environmental matters.

Article 25 paragraphs six of the Constitution sets forth the premises of care for the environment with the purpose of regulating the use of productive resources by the social and private sectors. This idea was included unto the Political Constitution by means of a decree published in the *Official Federal Newspaper* on February 3, 1983.

Pursuant with the foregoing, Article 26 of the Constitution establishes that, as a result of state intervention in the economy of the Nation: "The State shall organize a system of democratic planning for national development which must be solid, dynamic, permanent and equal as per the growth of the economy for independence and democratization of social, political and cultural fronts of the Nation". The purpose is to establish actions which are congruent with each other and, in that way, to properly exploit the sustainable resources of the country, thereby avoiding over-exploitation.

Article 27 of the Constitution establishes the idea of conservation of natural resources, as a totalitarian element focused on the protection of the environment. This ecological concept is introduced by means of a decree published in the *Official Federal Newspaper* on August 10, 1987.

The third basic point is that which has been set forth in Article 73 section XVI 4a of the Constitution, which mentions the idea of the prevention and control of environmental pollution, as an environmental concept within the scope of a general health concept, as per the jurisdiction of the Ministry of Health.

Fourth basis is the one mentioned by Article 73, section XXIX-G which was amended by such same decree as the one that amended Article 27, paragraph three, and both amendments constitute the constitutional ecological reform. Pursuant with such concept, Congress was granted the rights and

authorities needed to issue laws intended to establish concurrence of powers between the federal government, the governments of the states and the municipalities within the scope of their jurisdictions in matters relating to the protection of the environment and the restoration of ecological balance.

Starting from the establishment of the constitutional basis for the protection of the environment, we can observe how the Constitution distributes the rights and authorities in environmental matters between the federation, states and municipalities, even though this matter is more specifically attuned to the study of environmental management.

The principle of conservation of natural resources in general was incorporated into the Political Constitution of 1917, as relates to the profound change established therein regarding the system of property, and, more specifically, with the idea that social function of private property which was consecrated therein, in substitution of the, until such time, prevailing idea that private property was a traditional right.

Based on such premise the Constitution sets forth, in article 27 paragraph three, the fundamental idea that the Nation has, at all times, the right to impose any modalities over private property, as dictated by public interest, which means the principle of the social function of property was consecrated.

[...]

Continuing the environmental study of the Constitution, we find certain criteria for the protection of non renewable natural resources made up by minerals. Article 20 sets forth that any projects or works of exploration within natural protected areas may only be performed with direct approval of the authorities which govern such works; Article 39 further states that "in all activities of exploration, exploitation and benefit of minerals or substances, the miner concessionaires shall strive to protect the environment and care for the ecology, pursuant with legislation and regulations over such matters." Additionally, the right to perform such exploration works and/or exploitation shall be suspended when they "cause or may cause any damage to public interest" (Article 43, section II).

When referring to oil, such substance is governed by what is established in Article 27 of the Constitution, which states that the nation is entitled to hold direct domain over "oil and solid, liquid or gaseous hydrocarbons...", adding that "there will be no concessions or contracts, nor shall any such documents prevail, in due case, and the Nation shall perform the exploitation of such products, within the terms established by the corresponding regulatory laws."

Pursuant with Article 8 of the Regulatory Law on Oil, the Federal Executive power is entitles to establish oil reserve zones in real properties which merit such reservations, in order to ensure the country´s future supplies. The incorporation of such real properties to the reserves, as well as their divestiture, shall be enacted through a presidential decree, which must be made on appropriate technical reports.

TVQR005770

SEMARNAT (Ministry of the Environment and Natural Resources)
Technical and Statistical Collection
Regulation on Dangerous Residues in Mexico
By: Dr. Cristina Cortinas de Nava
http://www.paot.org.mx/centro/boletin/octubre/regulacion_respeligrosos_cortinas.pdf
ATTACHMENT 2A-1 DOCUMENT 239
TVQR

[...]

PROLOGUE

Dangerous residues which have corrosive, reactive, explosive, toxic, flammable and biological-infectious properties (*CRETIB* characteristics), have been subjected to environmental regulation in Mexico since 1988, the year when provisions for such effects were published in the General Law of Ecological Equilibrium and Protection for the Environment (*LGEEPA*), and its Regulations as per Dangerous Residues, as well as seven Ecological Technical Standards (today, Official Mexican Norms or *NOMs*).

Resulting from the foregoing, by October 2003, a new law was published, current regulations are based on such law – the General Law for the Prevention and Integral Management of Residues (*LGPGIR*), at the time, there were 15 years of positive and negative experiences regarding environmental matters, which grew into the amendments introduced to the *LGPGIR* and its Regulations, which were published in November 30, 2006.

TVQR005771

Zoning Analysis of Residues in Mexico
Regional Plan of Investments for the Environment and Health.
Pan-American Health Organization/World Health Organization
Study Series No. 10
Mexican Association for the Control of Solid Dangerous Residues- *AMCRESPAC*
General Direction of Solid Residues, Materials and Risks of the National Ecology Institute-
*INE/DGMR*
July 1996
http://www.bvsde.paho.org/eswww/fulltext/analisis/mexico/mexico.html

ATTACHMENT 2A-1 DOCUMENT 235, 245
TVQR

[...]

**Risk Activities**

Due to a lack of proper planning on industrial urban development during the last few decades, the environmental problems generated by high risk activities have been turning into one of the most important aspects which must be regulated by the corresponding authorities, considering that there have been at least 370 environmental accidents identified in such industry, specially chemistry and petrochemical, within the 1990-1993 period. In order to face this problem, the environmental authorities have developed various tools such as risk assessment studies and environmental audits, through the National Institute of Ecology (*INE*) and the Federal Environmental Protection Office (*PROFEPA*).

Risk assessment studies are focused on new projects and are integrated into the corresponding environmental impact evaluation procedures; environmental audits are applied to working companies, voluntarily, and are focused on physical and documental inspections of their facilities, in order to ensure the regulatory compliance with environmental pollution and risk prevention methods. As a result of such procedures, the necessity of presenting programs for the prevention of accidents has been established; such programs are approved by a committee made up by the Ministries of Health, Labor and Social Prevision, Commerce and Industrial Development, Energy and Governance.

[...]

**Environmental Aspects**

From an environmental point of view, material adverse impacts related to the management, treatment and confinement of dangerous materials and residues are most likely to appear on oil, mining, chemical, pharmaceutical, steel, cement, car manufacturing and paper industries. Most

severe impacts are identified in the oil and mining industries, which are carried out in virgin zones where the ecosystems have not been altered by agricultural, cattle and urban activities. Adverse environmental impacts, provoked by the aforementioned activities, have accumulated in many cases, thereby rendering impossible, at this time, to calculate the magnitude of their effects, therefore, we require the elaboration of detailed environmental diagnostics which should provide results as needed to enact corrective measures and compensations, if necessary.

The Mexican Government has diverse mechanisms intended to control and prevent adverse impacts produced by the mismanagement of dangerous materials and residues, some such programs are preventive in nature, such as the environmental impact manifesto and the risk assessment results; others, which are diagnostic in nature, such as environmental diagnostics, local environmental ordinances, and lastly, those which arise from verification and control protocols such as inspection visits and routine normative verification, as carried out by the *PROFEPA* within the scope of its jurisdiction or by the *CNA* authorities or State Water Commissions.

[...]

Problems detected in environmental matters include:

- Disassociation between the areas which evaluate environmental impact and those that evaluate risk,  significant gaps of information and knowledge have been identified between the authorities which regulate such areas and professional technicians working for private industry;
- Lack of clarity in procedures of environmental impact as per dangerous materials and residue and the jurisdictions of the authorities, at all levels, responsible for such matters;
- Lack of definite criteria, from an environmental risk point of view, for the management, transport, storage, treatment and disposal of dangerous residues.

[...]

**2.6 Legal Aspects**

Issues referring to solid residues in municipalities, as well as dangerous residues and chemical substances are contemplated by various areas of public administration at a federal level. That is, they do not correspond to a single administrative office and their regulations are established in various and diverse laws, regulations and complementary legal instruments. Such issues are contemplated in the environmental sector to which the Direction for Residues, Materials and Risks corresponds; however, such issues may also be governed in the urban development, health, communications and transports, commerce and industrial development, and labor.

[...]

In such manner, we face a problem related to the jurisdiction between the three levels of government, federal, state and municipal: according to Article 124 of the Political Constitution of the United Mexican States "The rights and authorities which are not expressly granted by this constitution to federal officers are reserved for the States". Under such principle, which is

TVQR005773

considered the basis for Mexican Federalism, the distribution of jurisdictions must be governed between the three levels of government.

[...]

For example, as related to the management of solid residues in municipalities, article 115 section III of the Federal Constitution establishes that the municipalities are obligated to perform clean up services to the public, thereby implicitly empowering State legislatures to regulate such services. Under this system and considering that environmental concurrency which is referred to in article 73 section XXIX-G of the Constitution, we must understand that the State Legislatures themselves shall be duly entitled to regulate the performance of such services, even under environmental protection criteria; however, the reality is different, considering that, since the General Law of Ecological Equilibrium and the Protection of the Environment was issued, federal authorities appointed themselves as the party holding jurisdiction not only for the management of a determined type of residues (those which are considered dangerous) but also to regulate, in its technical aspects, the performance of such services (specifically, the selection of sites for the establishment of sanitary landfills and their operation). Even more so, considering that the federal authorities hold jurisdiction, pursuant with the Federal Law Over Metrology and Standardization, over the vigilance of compliance with the Official Mexican Norms which are issued, it turns out that the jurisdictional authority (The Federal Office for the Protection of the Environment) is responsible for the vigilance of the parties providing such services (the municipalities).

[...]

It is important to add that the content of the legal provisions applicable to this sector is far from reality as per the environmental situation: on the one hand, we have organic legal provisions which are outside the scope of the authorities involved and, on the other, there are multiple provisions that, not being duly based on a cost-benefit analysis, turn out to be impossible to be practically complied with.

[...]

The lack of legal provisions that allow for a damages or reparation claims to the environment and health is patent. This concept, which is employed by environmental authorities, has not yet been regulated within the Mexican legal system because it is considered to be a part of civil legislation. However, it seems necessary to consider a form of application of such concept within the framework of environmental and health legislation under certain sanctions, guaranteeing the participation of the perpetrator of environmental damages as well as the authority holding jurisdiction, under economic liability, backed up by fiscal credit of the party producing such damages to the environment and/or public health.

[...]

Regarding legal regulations pertaining to social intervention in the environmental sector, such regulations have, as their principal figure the charges which may be filed by society itself pursuant with the General Law of Ecological Equilibrium and Protection for the Environment. Such charges are nothing but the regulation in environmental matters of the Right of Petition set forth in Article 8 of the Political Constitution of the United Mexican States which, in practice, is constituted as the

TVQR005774

IMPACT OF OIL ACTIVITIES ON HUMAN HEALTH AND THE ENVIRONMENT
http://www.mexicotoxico.org.mx/sites/default/files/pdf/documentos/impacto_del_petroleo.pdf
By: Marisa Jacott, Jose Manuel Arias, Hugo Ireta Guzman, Azucena Franco
2011
ATTACHMENT 2A-1 DOCUMENT 224, 241
TVQR

[...]

Oil Industry

The exploration, perforation, refining and transformation of oil provokes marine (Marine pollution refers to the "introduction, directly or indirectly, of substances to the sea (including estuaries) which produces damages to the live resources and endangers human health, alters marine activities –including fishing activities – and reduces recreational value and the quality of seawater" Alfonso V. Botello, UNAM) and land pollution. Such activities produce losses in biological diversity, and the ecosystems which serve to balance the ecological system, an alteration to the physical and chemical state of land and air, and the degradation of water quality. If we speak of systematic oil spills from marine or land sources, the pollution may be severe or chronic, when dealing with large oil spills.

[...]

The main components of oil are hydrocarbons (hydrogen and carbon). There are other elements in oil which show up in smaller quantities, such as sulfur, nitrogen, oxygen, vanadium, nickel, iron, aluminum and copper, depending on the type of crude oil and the region it hails from.

The most widely known hydrocarbon is benzene.

[...]

Thesis I.40.A.569.A
FOURTH COLLEGIATE TRIBUNAL IN ADMINISTRATIVE MATTERS OF THE FIRST CIRCUIT
Federal Judicial Weekly Gazette
XXV, MARCH, 2007
Ninth Period
Page 1665
Isolated Thesis (Administrative)
ATTACHMENT 2A-1 DOCUMENT 230
TVQR

THE RIGHT TO AN ENVIRONMENT WHICH IS ADEQUATE FOR DEVELOPMENT AND WELLBEING. ASPECTS OF DEVELOPMENT.

The right to a proper environment for the development and wellbeing of people as a fundamental right and individual guarantee is consecrated in article 4, fifth paragraph, of the Political Constitution of the United Mexican States, and is developed in two aspects: a) in the power to require and the duty to respect erga omnes the preservation of the sustainability of the environment, which implicates no affectations or damages to the environment (horizontal efficiency of fundamental rights); and b) in the correlative obligation of the authorities to oversee, conserve and guarantee that all pertinent regulations are enforced (vertical efficiency).

[...]

Thesis XX.2o.61A
SECOND COLLEGIATE TRIBUNAL OF THE TWENTIETH CIRCUIT
Federal Judicial Weekly Gazette
XXXIV, JULY, 2011
Ninth Period
Page 2257
Isolated Thesis (Constitutional)
ATTACHMENT 2A-1 DOCUMENT 228
TVQR

MINISTRY OF THE ENVIRONMENT, HOUSING AND NATURAL HISTORY OF THE STATE OF CHIAPAS. HOLDS JURISDICTION TO ISSUE AN ORDER WHEREBY IT MAY VERIFY THE EXPLORATION, EXTRACTION AND EXPLOITATION OF PETROUS MATERIALS DIFFERENT FROM A MINERAL, AS WELL AS TO EVALUATE AND ESTABLISH ENVIRONMENTAL IMPACT WHICH MAY BE GENERATED BY THE CONSTRUCTION OF ROADS NEEDED TO TRAVEL TO A STORAGE AND PROCESSING PLANT.

Considering articles 27, fourth paragraph, and 73, section XXIX-G, of the Political Constitution of the United Mexican States; 2, 4, section II, and 5, section IV, of the Mining Law; 4, 5, sections X and XIV, and 7, sections X and XVI, of the General Law of Ecological Equilibrium and Protection of the Environment; and 7, sections XVII and XVIII, of the Environmental Law of the State of Chiapas, we have noticed that the Nation is entitled to the direct dominion of all minerals or substances found in underground veins, masses, deposits or layers and which constitute deposits which nature is different from real properties, such as minerals from which one can extract metals and metalloids used in industry; whereas, the parts relating to the extraction easements of such minerals which are not reserved for the Federation and which constitute natural deposits which are similar to the components of real properties, such as petrous materials (rocks) or products which arise therefrom that may only be used for the construction or ornamentation of works, correspond to local authorities, and that there is a concurrent authority both for the Federation as well as the States and Municipalities in the matters regarding the protection of the environment and the preservation and restoration of ecological balance.   Consequently, the Ministry of the Environment, Housing and Natural History of the State of Chiapas holds jurisdiction as needed to issue an order to verify the exploration, exploitation, and extraction of the petrous material different from a mineral, as well as to evaluate the environmental impact which may be generated by the construction of roads needed to travel to a storage and processing plant.

TVQR005778

Thesis P/J. 38/2011 (9a.)
Plenary Session
Federal Judicial Weekly Gazette
Book I, October, 2011, Tome I
Tenth Period
Page 228
Isolated Thesis (Constitutional)
ATTACHMENT 2A-1 DOCUMENT 227
TVQR

CONCURRENT AUTHORITIES AS REGARDS TO HUMAN SETTLEMENTS AND THE PROTECTION OF THE ENVIRONMENT AND THE PRESERVATION AND RESTORATION OF ECOLOGICAL BALANCE. THE PROGRAMS OF MUNICIPAL URBAN DEVELOPMENT MUST BE CONGRUENT WITH FEDERAL AND LOCAL ECOLOGICAL ORDINANCES.

Both the matters of human settlements as well as the protection of the environment and the preservation and restoration of ecological balance are constitutionally concurrent and their provisions are developed through general laws, that is, all three levels of government intervene therein. Thus, the General Law of Human Settlements has the purpose of establishing the norms pursuant to which the States and the Municipalities participate in the regulation and governance of human settlements; additionally, they establish the norms under which such levels of government shall hold jurisdiction, within their respective scopes, in the territorial zoning of human settlements and the sustainable development of population centers. As per the purpose of the General Law of Ecological Equilibrium and Protection of the Environment, it is to ensure the sustainable development and to establish the bases for the concurrence of all three levels of government in order to preserve and restore ecological equilibrium, as well as to protect the environment in the territory of the country. In that sense, when the plans for urban development of the municipalities overlap over areas considered in federal or local ecological zoning plans, we may consider as a fact that the Municipalities have the authority to formulate, approve and manage zoning and municipal urban development plans, as well as to authorize, control and oversee the use of such land within the scope of their jurisdiction, even to intervene in acts of planning, zoning, regulating, controlling, overseeing and promoting the territorial zoning of human settlements and the urban development of the population centers in the state, it is also true that the Municipal Urban Development Plans must be congruent with Local and Federal Ecologic Ordinances, considering we must not lose sight that the Municipalities do not have an exclusive and definitive authority in the matters of human settlements and the protection of the environment, considering both are constitutionally concurrent in nature, therefore, these types of municipal faculties must be understood to be subject to the guidelines and legal requirements established in federal and state laws, and never to be within the exclusive jurisdiction of a Municipality, with no possibility of being congruent with the planning made in both other levels of government.

Thesis P/J. 15/2012 (9a.)
Plenary Session
Federal Judicial Weekly Gazette
Book X, July, 2012, Tome I
Tenth Period
Page 346
Jurisprudence (Constitutional)
ATTACHMENT 2A-1 DOCUMENT 229
TVQR

PROTECTION OF THE ENVIRONMENT AND PRESERVATION AND RESTORATION OF ECOLOGICAL BALANCE. THE GOVERNMENTS AT A FEDERAL, STATE AND MUNICIPAL LEVEL HAVE CONCURRENT RIGHTS AND AUTHORITIES IN ENVIRONMENTAL MATTERS, PURSUANT WITH THE TERMS OF THE GENERAL LAW ISSUED BY THE FEDERAL LEGISLATIVE BODY.

Article 73, section XXIX-G of the Political Constitution of the United Mexican States empowers Mexican Congress to issue laws that establish concurrence between Federal State, and Municipal Governments, within the scope of their respective jurisdictions, in all matters pertaining to the protection of the environment and the preservation and restoration of ecological balance, such regime for concurrency shall be subject to the general law issued by the federal legislative body, wherein, among other issues, the jurisdictions corresponding to each level shall be distributed. In that manner, the Federation has a power of direction in environmental matters what is manifested, primarily, in the capacity to issue laws which distribute jurisdiction between the three levels of government and define, in any case, the kind of relationships for coordination and collaboration which must be established.

TVQR005780

Thesis P/J. 18/2011 (9a.)
Plenary Session
Federal Judicial Weekly Gazette
XXXIV, August, 2011
Ninth Period
Page 885
Jurisprudence (Constitutional)
ATTACHMENT 2A-1 DOCUMENT 231
TVQR

**HUMAN SETTLEMENTS. ARTICLE 52 OF THE URBAN DEVELOPMENT LAW OF THE STATE OF NUEVO LEON, ANALYZED WITHIN THE CONTEXT OF CONCURRENT CONSTITUTIONAL AUTHORITIES IN SUCH MATTERS, IS CONSTITUTIONAL.**

Compliance with the requirement for congruence established in the foregoing precept, prior to the publication of the corresponding program and its filing in the Public Registry of Property, derives from the obligations established in various sections of article 51 of the aforementioned Law, where the necessity of congruence and not contravention of the municipal plans and programs is clear, as regards to the determinations of state and federal law on such matters. This situation, when analyzed in the context of concurrent authorities and rights which are mentioned in various sections of section V of article 115 of the Political Constitution of the United Mexican States, allows for the conclusion that the actions pertaining to the creation, approval and management of municipal urban development plans, set forth in part a), section V of the aforementioned constitutional article, must be understood to be subject to the guidelines and requirements established in federal and state laws on the subject matter, and never within the sole scope of jurisdiction of the Municipality, with no possibility of matching it to the planning done on the other two levels of government, the foregoing must not be construed to mean that the Municipality is subject to the whim of the decisions made by the State, considering such decisions could potentially be arbitrary if they have no control from the performance of the body which must make them, such as the Ministry of Sustainable Development of the State Government, considering such arbitrary decisions must be limited and controlled by means of a congruency report to be issued by such same Ministry once it has reviewed and verified that the municipal plans and programs are congruent between the different levels of planning, such report must in all cases include the motives and reasons for which local government will decide on the congruence, or lack thereof, of the plans and programs submitted by the municipality, clearly and expressly justifying the recommendations that it considers pertinent in case of finding discrepancies.

[...]

Ministry of the Environment and Natural Resources
NATIONAL STRATEGY FOR ECOLOGICAL ZONING OF BEACHES AND COASTS
http://www.semarnat.gob.mx/temas/ordenamientoecologico/Documents/documentos%20orden
amiento/estrategia_nacional_oe_mares_costas.pdf
ATTACHMENT 2A-1 DOCUMENT 242
TVQR

[…]

Page 15

4. STRATEGIES IN INSTRUMENTS:

Achieving interaction and integrity in Oceans and Coasts.

The Territorial Ecological Regulation (ETR) is an essential instrument in order to focus towards sustainable development because it encourages the structural changes which could definitely influence the economical and social conducts, as well as the proper maintenance of goods and services obtained from natural capital.

[…]

TVQR005782

Ministry of the Environment, Government of the State of Veracruz
http://www.veracruz.gob.mx/medioambiente/sedema/atribuciones-de-la-sedema/
Veracruz, Mexico
ATTACHMENT 2A-1 DOCUMENT 137
TVQR002953, TVQR002954

RIGHTS AND AUTHORITIES OF THE MINISTRY OF THE ENVIRONMENT (SEDEMA) STATUTE NUMBER 58 ORGANIC OF THE EXECUTIVE POWER OF THE STATE OF VERACRUZ.

Article 27. The Ministry of the Environment is the agency responsible for the coordination of all ecological equilibrium policies for the preservation and restoration, global warming and environmental protection in the State.

ARTICLE 28.

The Secretary of the Environment, according to the distribution of powers established in its interior regulation, has the following rights and authorities:

I. Develop, lead, implement and evaluate the state policy on ecological balance, forestry, environmental protection and climate change;

II. Issue administrative provisions for ecological balance, forestry, environment and climate change matters, within the scope of its jurisdiction;

III. Deal with issues regarding the preservation, conservation and restoration of ecological balance, forestry and environmental protection, as well as implement environmental policy instruments in accordance with the laws, rules and any other applicable provisions, in the area of jurisdiction;

IV. Encourage the compliance of environmental law in coordination and contribution with those authorities responsible of implementing plans, programs and projects in the promotion and maintenance of ecological balance, forestry and environmental protection within the scope of its jurisdiction;

V. Participate in the formulation of plans, programs, and state and municipal projects, evaluating its coherence to the regulatory framework applicable to the ecological balance, forestry, environmental protection, environmental risks and climate change;

VI. To promote, establish, implement and coordinate any actions in order to prevent and control as appropriate, water, air and soil pollution, as well as the registration and monitoring of pollutants; within the scope of its jurisdiction

[...]

TVQR005783

Mexican Congress
General Law of Ecological Balance and Environmental Protection
ATTACHMENT 2A-1 DOCUMENT 6
TVQR00 1259, TVQR001261- TVQR001263

Article 169.- [...]
Within five business days after the expiration of the period granted to the offender in order to remedy such deficiencies or irregularities, such person shall express, in detail, through written notice, to the ordering authority, that such measures ordered according to the terms established therein have been complied with.

In the case of second or subsequent inspection carried out in order to verify such compliance according to the requirement or requirements mentioned above, and in case it is evidenced, through the record issued in such inspection, that such measures thereon had not been complied with, the competent authority may impose a fine, in addition to the sanction or sanctions applicable through Article 171 herein, which must not exceed the maximum limits thereunder.

[...]

Article 170.-  Whenever there is an imminent risk of serious ecological imbalance, or damage to natural resources or their deterioration, or any events wherein pollution could have a dangerous impact on ecosystems, its components, or public heath, the Ministry may order any or some of the following security measures:

[...]

Article 171.- [...]

[...]

If, after the expiration of the deadline given by the authority in order to remedy any offences, such offence or offences still exist, fines may be imposed for each day passing in which due compliance of such command has not been accomplished, in such case, fines must not exceed the maximum amount established in Section I herein.

[...]

Article  167.- When appropriate, upon receipt of the inspection report, the ordering authority shall require in written notice, by personal service or certified mail, the person concerned in order to take immediate corrective measures or emergency measures, in a determined period of time, in order to duly abide every applicable legal provisions, as well as any permits, licenses, authorizations or concessions. The authority must establish therein, that such person shall have a term of fifteen days in order allege and evidence before the authority whatever he/she deems appropriate.

[...]

Article 169.- The authority must determine in the resolution concerned, the measures or the additional measures needed in such case, which must be carried out in order to correct deficiencies or irregularities, the period of time granted to the offender in order to duly comply with such resolution and the sanctions imposed according to any applicable provisions.

[...]

TVQR005785

UN PROGRAM FOR THE ENVIRONMENT
http://www.pnuma.org/
Regional Office Latin America
Foundation of Environmental Law in Latin America
By: Raul Brañes
http://web.pnuma.org/gobernanza/cd/Biblioteca/Derecho%20ambiental/19%20La%20fundaci%F
3n%20del%20derecho%20ambiental%20en%20Am%E9rica%20Latina.pdf
ATTACHMENT 2A-1 DOCUMENT 237
TVQR

Page 19

[...]

The fact is that, over the last years, the intervention of Judicial Courts in legal-environmental conflicts has been mostly related to the constitutional resources established for the protection of fundamental rights, which explains the reasons for which our countries still find many difficulties regarding the protection of class-action rights through our legal systems.

However, the truth is that the access to environmental justice, through the using of exceptional constitutional resources which are meant to be of a preventive nature, cannot be considered as the exact solution for every problem arisen from such access. We urge to give environmental justice access, as a whole, to everyone affected, without letting the constitutional principles and the creativity of jurisprudence solve these problems.

[...]

TVQR005786

20minutos.es
Spain, June 6th 2008.
http://www.20minutos.es/noticia/386788/0/oceanos/muertos/vertederos/
The seabed is being transformed into lifeless "dumps", according to WWF
ATTACHMENT 2A-1 DOCUMENT 226
TVQR

[...]

There are approximately 200,000 square kilometers of dead seabed, almost four times more than 13 years ago, according to a report presented by the World Wide Fund this Friday in Hamburg with respect to the Ocean World Day next Sunday.

"We are using oceans as waste dumps and we are taking away its air to breathe. Over fishing, global warming and lack of oxygen are the principal threats to the seas", declared Jochen Lamp, author of such report.

The sea with the greatest "dead" area is the Baltic Sea with a total area of 42,000 squared kilometers, and up to 90,000 kilometers in the worst crisis scenario; but so there are large suffocated areas of seabed in the Gulf of México, the Black Sea, and the Adriatic basically due to the pesticides spilled in such bodies of water.

Suffocation arrives through the rivers which transport to the oceans, great amounts of phosphorus and nitrates. These fertilizers propel the beginning of marine flora and seaweeds growth, but they end up causing the organism's extinction and the lacking of oxygen. Fish die or end up migrating towards other regions.

Sea hyper-fertilization
"The Baltic Sea was a clear-water sea before. Today the water is blurry and over-fertilized, regardless of every effort spent in saving it. Therefore, the cleaning of seas must become the priority of every coastal government", Lamp said, who continued saying that the Baltic Sea has four times more phosphorus and nitrogen than a hundred years ago.

The consequences of suffocation in the seas is dramatic, not only from an ecological point of view, but from an economical one too, and the reason is that suffocation ends up fishing activities and therefore, the sustenance of many people, WWF added, who required the European Union to suspend the subventions to conventional agriculture in order to stop the hyper-fertilization in the seas.

TVQR005787

UNIVERSIDAD NACIONAL DE CUYO
Mendoza, Argentina, 1991
http://www.cricyt.edu.ar/enciclopedia/terminos/ContamPetr.htm
Pollution by the Oil Industry
ATTACHMENT 2A-1 DOCUMENT 225
TVQR

Oil pollution is produced when petroleum is accidentally or intentionally liberated in the environment, producing direct and indirect adverse effects in human mankind and in the environment.

Oil pollution is present in each and every activity related to hydrocarbon exploitation and transportation, which produce gradual wearing in the environment in an inevitable way. It directly affects the ground, water, air, fauna and flora.

Effects over the ground: the well-occupied zones, batteries, beaches, drain pools, ducts and (camineras) networks compromise a large superficial space of land which ends up degraded.

The reason for this to happen is the land weeding and smoothing and the movement and operation of heavy equipment. Additionally, oil spills and wastes alter the original substrate in which vegetable species are usually implanted, leaving therefore, unusable grounds for years.

TVQR005788

CONGRESS OF THE STATE OF TAMAULIPAS
Cd. Victoria, Tamaulipas, June 3rd 2008
Code for the Sustainable Development of the State of Tamaulipas
ATTACHMENT 2A-1 DOCUMENT 240
TVQR

[...]

Article 3.

The aims of this Code are to set the foundations in order to:

I.   Guarantee the right to live in an adequate environment for the health, well-being and development of every person;
II.  Formulate and supervise the compliance of the environmental, natural resources and sustainable development policy programs and instruments, in order to preserve and protect the development of flora, fauna and renewable natural resources, and regulate the exploitation of all together;
III. Regulate and promote the compliance of state administrative and legal provisions on the matter of the environment, regarding the protection and integral management of wastes, protected natural areas and wild life;
IV.  Guarantee and regulate the adoption of efficient and immediate measures and carry out all necessary actions in order to impede environmental degradation in case of the existence of any grave or irreversible damage risk, or an emergency where a continued and grave affection could happen to the environment;
V.   Formulate, implement, evaluate, supervise and modify the programs for ecological planning in the territory of the state;
VI.  Regulate and promote the treatment, storage,  transportation and elimination of solid wastes, and the treatment and final disposal of pollutants;
VII. Protect, conserve, preserve and regulate the sustainable exploitation of protected natural areas and state parks;

[...]

Article 8.

It is considered as social interest:

I.   The formulation and implementation of declarations of state protected-natural-areas and zones for ecological protection in population centers, including management and restoration plans, according to the provisions set forth in the General Law;
II.  The refusal, granting, reversal o canceling of any licenses, permissions, or concessions regarding activities or building works pretended to be carried out in or could affect the State;
III. The refusal, granting, reversal o canceling of any licenses, permissions, or concessions regarding open sky, underground stone, any ground  works or activities, as well as the protection, conservation and restoration of ground security at the end of any extracting period;

TVQR005789

IV.     [...]
V.      Regarding pollution, any emergency measures which authorities should take in case of
        acts of God or force majeure; and
VI.     Emergency actions in order to contain health risks caused by any kind of pollution.

TVQR005790

OFFICIAL NEWSPAPER of the State of Tamaulipas
Cd. Victoria, Tamaulipas, January 15th 2008
http://docs.mexico.justia.com.s3.amazonaws.com/estatales/tamaulipas/ley-del-notariado-para-el-estado-de-tamaulipas.pdf
ATTACHMENT 2A-1 DOCUMENT 247
TVQR

DECREE whereby articles 20, first paragraph; 23; 24 section XXX; 27 sections X, XIII and XXII; 28 sections III, XVIII, and XXI; 29 sections IX, XI, XXVIII; the name of Section X of the Third Chapter; 33 first paragraph sections II, VII, X, XXIII, XXVI and XXXIII; 34 sections XXVIII and XXIX and 35 sections XV and XVI are amended; 19 bis, 28 sections XXII and XXIII; 29 section XXIX;  34 section XXX, 35 section XVII, Section XIV of the Third Chapter and 36 bis are added; and 33 sections XXIX, XXX and XXI are repealed of the Organic Law for the Public Administration of the State of Tamaulipas.

Section XIV, Environmental Agency for the Sustainable Development

Article 36 Bis.
Additionally to any other responsibility set forth in other applicable laws, the  Environmental Agency for the Sustainable Development is in charge of the following matters:

[...]

III. Apply and supervise the compliance of all environmental, natural resources and sustainable development policy programs and instruments according to State Regulation;

[...]

V.  Agree with the Federal, other Entities and State Municipal Governments, the jointly and coordinated execution of all actions for protection, conservation and improvement of the environment and natural resources for the sustainable development.

[...]

VIII. To adopt measures and to carry out any necessary actions, within the scope of its jurisdiction, when there is an imminent risk of irreversible and grave damage to the environment, or where there is an environmental emergency that creates a continued and grave damage to the environment, and such situations affect the natural resources or biodiversity of State territories; regardless of whether such activities or works correspond to the jurisdiction or interest or other authorities, provided such activities or works present an imminent risk to public health; due to the foregoing, this Ministry shall act immediately, without prejudice of coordination with the Health Ministry and the exercise of its duties;

National Institute of Ecology (Instituto Nacional de Ecología)
Mexico City, November 15, 2007.
ATTACHMENT 2A-1 DOCUMENT 232
TVQR
http://www2.ine.gob.mx/publicaciones/libros/395/vargas.html?id_pub=395

Development of Environmental Law in Mexico

[...]

The concern of the international community regarding the deterioration of the environment was reflected in the United Nations, whom adopted the international answers to environmental problems, and after the Conferences of Paris 1968, London 1970 and the meetings of New York, Prague and Geneva in 1971, the Conference of Stockholm took place in 1972.  As a result of this Conference, specialized organizations were created with which the United Nations Environment Program (UNEP) was institutionalized, headquartered in Nairobi, Kenya, and the Environment World Day was established. Related to the UNEP, the United Nations has also created an International Center for Environmental Studies (CIFCA) for Hispanic countries. In the Summit of Rio de Janeiro (1992), the agenda 21 was approved which pleads for conducting changes in the development of economic activities, the corresponding Declaration of Rio, the Provisions on forests, and the Agreements regarding Global Warming and biodiversity.

[...]

UNIVERSIDAD AUTONOMA DE MEXICO
VIRTUAL LIBRARY
MEXICO
Political Constitution of the United Mexican States Commented, 5th Edition
file:///F:/DOCUMENTOS%20ADICIONALES%20EXPERT%20REPORT/Constituci%C3%B3n%20Pol%C3
%ADtica%20de%20los%20Estados%20Unidos%20Mexicanos%20comentada,%205a_%20ed.htm
ATTACHMENT 2A-1 DOCUMENT 250

Article 23 Comment by Jesus Rodriguez y Rodriguez

Article 23. No criminal trial shall have more than three stages. No one can be tried for the same crime, whether he was acquitted or convicted. The practice of acquitting for lack of evidence is prohibited.

COMMENT: This constitutional provision establishes different prohibitions which represent other fundamental rights granted to any defendant in the attribution of a crime.

The purpose is that any defendant, presumed responsible for committing a crime, can be tried in a reasonable period of time, only once and definitely; establishing such legal status in a definite judgment, whether he is convicted or acquitted, the first part of such constitutional principle prohibits, in the first place, more than three legal processes for a single criminal trial. In other words, there cannot be more than three legal rulings or judgments in any criminal trial on the basis of the same crime, which is defined as the obligation to pronounce permanent sentence in the third stage, which until it becomes a final judgment, it shall not be revisable or challengeable through a fourth legal stage.

Secondly, and for the same purpose as the foregoing, the next phrase of such constitutional norm, prohibits the possibility of judging a defendant twice on the basis of the same crime. Such prohibition, which represents the constitutional establishment of the *non bis in idem* principle, only operates as long as such defendant has been tried whether convicted or acquitted through a final and unchallengeable judgment, or, in other words, through a ruling against which no legal resource is available.

Finally, the last part of such provision in our fundamental law, prohibits the unfair practice of acquitting the instance, which consists of maintaining a legal process open for an indefinitely period of time, due to the lack of evidence or insufficient elements in order to convict or acquit. Precisely here is where the universal principle acknowledged as presumption of innocence finds its application, according to which, one is to be considered innocent until proven guilty, and that if reasonable doubt remains, the accused is to be acquitted.

As it is well-known, in Mexican law, such principle of presumption of innocence has only been specifically recognized in the Constitutional Decree of the Freedom of the Mexican America, which was ratified in Apatzingan on October 22nd, 1814, whereby in its 30th article establishes that every citizen was to be considered innocent until proven guilty.

Regarding the foregoing, it is worth mentioning that, in the present time, our country's situation is not only opposite to the presumption of innocence principle, but also in complete contradiction

TVQR005793

with its internal regulation, whether constitutional or complementary, as well as many provisions established in other international legislation which our government has dully ratified.

Furthermore, regarding the contradiction on the internal regulation, considering article 19th of the Mexican Constitution, particularly the part which establishes that during the preliminary investigation stage, the data obtained from such process shall be sufficient in order to attribute probable responsibility to the defendant; as well as the Criminal Procedures Code for the Federal District, whereby, no defendant shall be convicted unless the crime attributed has been proven (article 247, first paragraph), and that whomever asserts on any fact is required to prove it (article 248, first sentence), it is worth noticing that, the first paragraph of article 9th of the Criminal Procedures Code for the Federal District, whereby a legal presumption *juris tantum* of bath faith is set forth by determining that willful misconduct is presumed, unless rebutting evidence, as well as the second sentence of the aforementioned article 248, whereby one who denies is as well obligated to prove, when his denying is opposite to a legal presumption;  represent not only an exception to such general principle which governs evidence matter and a shifting of the burden of proof in detriment of the defendant, but also a violation to the aforementioned constitutional law.

Regarding the contradiction of the provisions set forth in international instruments, such situation opposes to what it is established in article 14th , section 2, of the International Covenant on Civil and Political Rights adopted in December 16th 1966 by the General Assembly of the United Nations, which has been valid since March 23rd 1876 and ratified by Mexico on the March 24th 1981; as well as article 8, section 2, of the American Convention on Human Rights or Covenant of San Jose de Costa Rica, dated of November 22nd 1969, which is valid since July 18th 1978 and ratified by our country on March 25th 1981. These international instruments are part of our internal legal system, according to what it is established in article 133rd of our Constitution.

[...]

PANAMERICAN HEALTH ORGANIZATION, WORLD HEALTH ORGANIZATION, NATIONAL INSTITUTE
OF ECOLOGY
JULY 1996
ZONING ANALYSIS FOR SOLID WASTE IN MEXICO
http://www.bvsde.paho.org/eswww/fulltext/analisis/mexico/mexico.html#6.2

[...]

SECTION 6.2. LEGAL ASPECTS

- Constitutional omission regarding the right to live in a healthy and ecologically equilibrated environment, which every habitant in the Mexican territory has;
- Constitutional controversy regarding the competencies distribution system between the federal, state, and municipal governments;
- Lack of legal complementary provisions regarding the sector of- municipal solid wastes, hazardous substances, chemical substances and environmental risk-;
- Incomplete legislation regarding the sector subject;
- Legal vagueness regarding the sector components;
- Legal ambiguity regarding the scope of jurisdiction of administrative authorities involved in such sector;
- Lack of legal methods through which reparation of environmental and health damages may be claimed to the sector authorities;
- Incongruous contents in laws and statues regarding current economic, social and cultural situations;
- Abuse regarding the issuance and application of complimentary and administrative provisions, in order to regulate conducts which have not been foreseen in sector's laws;
- Application of regulatory methods which lack of legal support;
- Legal centralization of rights and authorities apart from the competencies distribution system set forth in the Mexican Constitution;
- Ambiguous legal expressions and content, regarding the authority agencies' rights and authorities as well as regarding to the private citizen's duties;
- Regulatory legal framework which does not consider  the multiple international commitments assumed by our government;
- Lacking of a integral legal system of the sector;

From the foregoing observations, the following consequences are deduced:

- Lack of coordination for the achievement of common goals between the different governmental agencies;
- Lack of coordination between involved agencies pertaining to the three levels of government;
- Institutional insufficiency in order to achieve the objectives established during the development planning regarding the matters of the sector;
- Few social participation in order to attend the matters regarding the sector;
- Impunity in benefit of those transgressors of the sector's legislation;
- Confusion or ignorance regarding the jurisdictional scope of involved authorities in the sector, among others of similar importance.

TVQR005795

OFFICIAL NEWSPAPER
Wednesday, February 6, 2002
EXECUTIVE BRANCH
SECRETARY OF STATE
DECREE whereby diverse provisions of the Federal Criminal Code and the Federal Code of Criminal
Procedures are amended and added to
ATTACHMENT 2A-1 DOCUMENT 234
TVQR

[...]

TWENTY FIFTH TITLE
Crimes against the Environment and Environmental Management

CHAPTER ONE technological and dangerous activities

Article 414

A penalty of one to nine years in prison and a fine equivalent of three hundred up to three
thousand minimum wages shall be imposed to any person who unlawfully or without taking the
necessary security or preventive measures, carries out activities regarding the production, storage,
trade, import and export, transportation, neglect, waste , download, orders or approves, or
performs any other activity with hazardous substances due to their corrosive, reactive, explosive,
toxic, flammable, radioactive or of similar effects,  which could cause damage to natural resources,
flora, to the fauna, ecosystems, water quality, soil, groundwater or the environment.

The same penalty shall apply to anyone who illegally performs any activity with the foregoing
substances, or substances which could deplete the ozone layer and cause a dangerous risk to
natural resources, flora, fauna, the ecosystems, water quality and the environment.

In the event that such activities are carried out in a protected area, the prison sentence shall be
increased by up to three years and the economic penalty, to a fine equivalent up to one thousand
minimum wages, except for the activities regarding substances which could deplete the ozone
layer.

In case the aforementioned activities are carried out in urban areas with used oils or substances
which deplete the ozone layer in amounts which do not exceed 200 liters, or with hazardous
wastes due to its biological-infectious characteristics, the sentence applied shall be the half of the
sentence established herein, except for the case in which repeated behavior with smaller
quantities than those determined when they exceed such amount.

Article 415

A penalty of one to nine years in prison and a fine equivalent of three hundred up to three
thousand minimum wages shall be imposed to whomever, without taking previously preventive or
safety measures:

I.      Authorizes or orders, emits, dismisses, discharges into the atmosphere, gases, smoke, dust or pollutants which could cause damage to natural resources, fauna, flora, ecosystems or the environment, provided that such emissions come from stationary sources under federal jurisdiction, as established in the General Law of Ecological Balance and Environmental Protection, or

II.     Generates emissions of noise, vibration, heat or light, from sources of federal jurisdiction under the laws outlined in the previous section, that cause damage to natural resources, flora, fauna, ecosystems or atmosphere.

The same penalties shall apply to anyone who illegally performs the foregoing activities, causing risk to natural resources, flora, fauna, ecosystems or the environment.

In the event that such activities describes herein, are carried out in a protected area, the prison sentence shall be increased by up to three years and the economic penalty fine equivalent to up to one thousand minimum wages.

Article 416

A penalty of one to nine years in prison and a fine equivalent of three hundred up to three thousand minimum wages, to whom illegally authorizes or orders, discharges, deposits, or infiltrates; chemical or biochemical fluids, wastes or pollutants in the soils, undeground, marine waters, rivers, basins, vessels or other water deposits or streams of federal jurisdiction, causing a dangerous risk or damage to natural resources, flora, fauna, water quality, ecosystems or the environment.

When such waters are deposited, flow into or toward a protected area, the prison sentence shall rise up to three years and the economic penalty of a fine equivalent to up to one thousand minimum wages.

CHAPTER TWO biodiversity

Article 417

A penalty of one to nine years in prison and a fine equivalent of three hundred up to three thousand minimum wages shall be imposed, to whomever brings into country, or traffics with federal resources, wild flora or fauna whether alive or dead, their products or derivatives, which are, have or have suffered, a contagious disease, which causes or may cause the spread of such contagious disease to the flora, fauna, federal resources or ecosystems.

Section 418

A penalty of six months to nine years in prison and a fine equivalent of one hundred up to three thousand minimum wages, provided that the following activities are not carried out in urban areas, to whom illegally:

I. Removes or destroys natural vegetation;

II. Cuts, tears apart, tear down or cuts any trees, or

III. Changes the forest land use.

Imprisonment should be increased by up to three years and the economic penalty fine up to one thousand minimum wages, in case such behaviors mentioned herein affect a protected area.

Article 419

Whoever unlawfully transports, trades, collects, stores or processes round wood, chips, charcoal, or any other timber federal resource, or soil from forests in excess of four cubic meters or the equivalent  in lumber wood, shall be imposed a penalty of one to nine years in prison and a fine equivalent of three hundred up to three thousand minimum wages. The same penalty shall apply even in the case the amount is less than four cubic meters, when due to repeated behaviors as a whole, reach such amount.

The foregoing sentence shall be increased to three years in prison and a fine equivalent of up to a thousand minimum wages, when the timber resources come from a protected area.

Article 420

A penalty of one to nine years in prison and a fine equivalent of three hundred up to three thousand minimum wages shall be imposed to whomever illegally:

I. Captures, harms or kills any turtle or marine mammal, or collects or stores in any way their products or by-products;

II. Captures, transforms, collects, transports or damages any aquatic banned species;

III. Hunts, fishes, or captures, fishing or trapping in any prohibited way, any wildlife species, or jeopardizes the biological viability of any wild population or species;

IV. Performs any activity for the purpose of trafficking, or captures, possesses, transports, collects, brings into the country or extracts thereof, any products or by-products and any other genetic resources, pertaining to any banned land or aquatic flora or fauna specie, considered endemic, threatened, endangered, subject to special protection or regulated by any international treaty to which Mexico is a party thereto, or

V. Damages any of the foregoing species of land or aquatic flora or fauna.

Additionally, a penalty of up to three years in prison and a fine equivalent to up to one thousand minimum wages, shall be imposed when the conduct described herein is performed in or affects a protected area, or if carried out for commercial purposes.

Article 420 Bis.

A penalty of two to ten years in prison and a fine equivalent to three hundred up to three thousand minimum wages, to whomever illegally:

TVQR005798

I. Damages, dries out or fills wetlands, mangroves, lagoons, marshes or swamps;

II. Damages reefs;

III. Brings in or releases in the natural medium, any specimen of exotic flora or fauna to harm an ecosystem, or hinder, alter or affect native and migratory species in the natural cycles of reproduction or migration, or

IV. Starts a fire in a forest, jungle, natural vegetation or forest land, which could damage natural elements, flora, fauna, ecosystems or the environment.

Additionally, a penalty of up to two years in prison and a fine equivalent to up to one thousand minimum wages shall be imposed when the conduct described herein is carried in or affects a protected area, or the author or participant in such crime, under Section IV, performs such conduct for a financial gain or profit.

CHAPTER THREE bio-security

Article 420 Ter.

A penalty of one to nine years in prison and a fine equivalent of three hundred up to three thousand minimum wages shall be imposed, to whomever imports, exports, trades, transports, stores or releases into the environment, a genetically modified organism which adversely alters or may alter the components, structure and functioning of natural ecosystems.

For the purposes of this Article, a genetically modified organism means any organism which has a new combination of genetic material as a result of the application of biotechnology, including those derived from genetic engineering techniques.

CHAPTER FOUR
Crimes in environmental management

Article 420 Quater.

A penalty of one to four years in prison and a fine equivalent of three hundred up to three thousand minimum wages shall be imposed, to whomever:

I. Orders, authorizes, consents or in any other way any hazardous waste which could have a corrosive, reactive, explosive, toxic, flammable, radioactive or infectious biological characteristic, to a non-permitted destination for receiving, storing, disposing or leaving such wasted;

II. Falsely declare in records, logs or any other document simulating the performance of the obligations under federal environmental regulations;

III. Destroys, alters or conceals information, records, reports or any other documents required to maintain or archive facts in accordance with federal environmental regulations;

IV. While performing auditory services as technical, specialist or expert or specialist in environmental impact, forestry, wildlife, fisheries or other environmental issues, lies about the truth causing damage to natural resources, flora, to fauna, ecosystems, water quality or the environment, or

V. Does not perform or complies the technical or remedial security measures to prevent environmental harm or risk, imposed by administrative or judicial authority

The offenses under this Chapter shall be pursued by the Federal Agency of Environmental Protection.

CHAPTER FIVE Provisions Common to Environmental Crimes

Section 421

Additionally to the foregoing and aforementioned Chapters, any of the following security measures shall be imposed:

I. Carry out all necessary actions to restore the conditions of the natural elements to their previous conditions;

II. The suspension, modification or demolition of buildings, works or activities, as appropriate, which gave rise to the respective environmental crime;

III. The reinstatement of the natural elements, species of fauna or flora wildlife, to its original habitat, provided such return does not  threat the ecological balance or hinders reproduction or migration of species;

IV. The return of materials or hazardous wastes or species of threatened or endangered species, to the country of origin, considering the provisions of international treaties and conventions to which Mexico is a party thereto or

V. When such defendant is a public server, such person shall be disqualified for a period of time equivalent to his sentence, which will start counting at the time the sentenced prison has been accomplished.

Communitarian work established in Article 24 herein, shall consist of activities related to environmental protection or restoration of natural resources.

For the purposes herein, the court shall ask the competent federal agency or institution of higher education and scientific research, to issue the corresponding expert report.

The competent authority shall provide the public prosecutor or the judge, the expert reports required as per of prosecutions regarding the offenses referred to herein.

Provided the defendant voluntarily repairs the damage, the corresponding penalties for the committed crimes, shall be decreased in one half of the minimum and maximum parameters referred to herein.

TVQR005800

Article 422

In case of environmental offenses, author or participant on such crime, is a guarantor regarding the protected resources, the prison sentence shall be increased for up to three years.

Article 423

No penalty shall be imposed regarding the first paragraph of Article 418,  and the transportation of firewood or dead wood referred to in Article 419 thereunder, provided the defendant is a farmer and carries out such activities for the purposes of using or domestically consuming such products within his community.

[...]

TVQR005801

CONSTITUTION OF THE FREE AND SOVEREIGN STATE OF QUINTANA ROO
ATTACHMENT 2A-1 DOCUMENT 77
TVQR002103, TVQR002140, TVQR002144-TVQR2145

[...]

**ARTICLE 1**
Quintana Roo is a free State as its members determine the organization, function and objectives of its community, and it is sovereign because all powers which are exercised in it arise from the collective will of such community, exclusively in the domestic level, as well as in its participation at the national level.

**ARTICLE 2**
According to the federal pact stipulated in the General Constitution of the Republic, Quintana Roo is an integral part of the Federation which forms the United Mexican States.

**ARTICLE 3**
The state of Quintana Roo hereby reserves the sovereign exercise of all powers that are not expressly granted to Federal or Municipal Governments.

**ARTICLE 4**
State sovereignty resides essentially and originally in the people of Quintana Roo, who exercise it through the powers that be in terms of this Fundamental Law.

**ARTICLE 5**
The state of Quintana Roo hereby adopts the form of a republican government, representative and popular. All power emanates from the people and is instituted for their benefit.

[...]

**ARTICLE 78**
Executive power is exercised by one person named: "Governor of the State of Quintana Roo."

[...]

**ARTICLE 90**
The powers of the Governor include:

[...]

XII. - Enact emergency measures as may be considered necessary for the defense of the wellbeing and Public Health of the State, and exercise the powers that the Constitution of the United Mexican States and the General Health Law will grant to the State Government

[...]

**ARTICLE 92**

ORGANIC LAW FOR THE PUBLIC ADMINISTRATION OF THE STATE OF QUINTANA ROO
ATTACHMENT 2A-1 DOCUMENT 76
TVQR002064, TVQR002066, TVQR002067, TVQR002074, TVQR2075-TVQR2076, TVQR002089-
TVQR002090

**ARTICLE 1.-** This Law has the purpose of establishing and regulating the organization and function of the Central and Decentralized of the State of Quintana Roo. Additionally, to assign the rights and authorities and obligations for the performance of business at an administrative level between the different units of State Public Administration.

[...]

**ARTICLE 3.-** For the dispatch of the matters which correspond to the Executive Power, the Governor of the State shall be assisted by the ministries and entities which are mentioned in this Law and all applicable legal provisions.

[...]

**ARTICLE 16.-** The Governor of the State, pursuant with what is established in the Federal and State Constitutions, and other legal provisions arising thereof, shall be able to contract and enter into agreements with the Federal Executive Branch, other federal entities and the municipalities of the State for the performance of public services, the management of taxes and levies, the execution of building projects and works or the performance of any other purpose for the collective good.

The Governor of the State shall assign the ministries of the State Public Administration that shall coordinate with the ministries and entities at a Federal Level as well as its municipalities.

[...]

**ARTICLE 19.-** For the performance, study and planning of the matters which correspond to the various branches of State Public Administration, the following ministries shall support the holder of the Executive Power:

I.- Secretary of State;
II.- Ministry of Regional Planning and Development;
III.- Ministry of the Treasury;
IV.- Ministry of Urban Development;
V.- Ministry of Economic Development;
VI. Ministry of Rural, Indigenous and Agricultural Development;
VII. Ministry of Education;
VIII. Ministry of Culture;
IX. Ministry of Health;
X. Ministry of Tourism;
XI. Ministry of the Comptroller,
XII. Bureau of Administration;
XIII. State Justice Procurement Office;
XIV. Ministry of Infrastructure and Transport;
XV. Ministry of Public Safety;

XVI. Ministry of Labor and Social Wellbeing;
XVII. Ministry of Ecology and the Environment; and
XVIII. Ministry of Social Development.

[...]

ARTICLE 33.- The Ministry of the Treasury is charged with the performance of the following:

[...]

VIII. To collect taxes, fees, products and easements which correspond to the State, additionally, to receive, manage and direct, pursuant with legal provisions and the instructions of the State Executive Branch, the contributions, subsidies and federal and municipal fund transfers, according to the terms of the agreements entered into;

[...]

IX. To ensure exact compliance with fiscal laws and provisions; determine fiscal credits and to impose sanctions corresponding to violations of tributary provisions;

[..]

XX. To enter into any coordination agreements regarding tax matters with the Federation, the Municipalities and other States of the Republic and to ensure compliance thereof;

[...]

ARTICLE 34.- The Ministry of Ecology and the Environment is charged with the performance of the following matters:

I. To propose, agree on and coordinate any actions and measures necessary for the protection of the environment with the purpose of preserving, restoring and fortifying ecological balance and to reduce the environmental fragility of the State´s ecosystems, in coordination with the Federal Government, the ministries and entities of the State Executive Branch and the municipal governments, pursuant with the distribution of existing jurisdictions;

II. To promote, certify and implement programs for full compliance with environmental laws and normativity and to apply protection, restoration and sustainable exploitation criteria for all natural resources and to prevent and reduce atmospheric environmental pollution;

[...]

X. To cooperate with the competent authorities in the vigilance and conservation of water currents, rivers, lakes and lagoons of state jurisdiction and to protect all other bodies of water;

[...]

TVQR005805

XIII. To regulate and promote, in collaboration with federal, state and municipal authorities, the protection and preservation of the wild flora and fauna in the state, pursuant with all applicable legal provisions;

[...]

XIV. To apply all resolutions in ecological matters and over natural resources as may be established in all applicable legal provisions, and to intervene, in coordination with all Agencies holding jurisdiction, in the establishing and raising of forest, hunting and fishing closures;

[...]

XV. To promote and perform studies and research of a technological and scientific character, which must contribute and promote the knowledge of all ecosystems and the environment of the State;

[...]

ARTICLE 39.- The Ministry of Tourism is charged with the following:

[...]

II. To create, act on, conduct, promote and evaluate all programs and actions regarding the development of tourism in the State, based on all applicable state and federal laws and the norms and guidelines that may be determined by State Government. Additionally, to carry out studies and feasibility programs for tourism investments; the foregoing must be performed jointly with the State Planning System of the State;

[...]

VIII. To perform the studies necessary to reasonably exploit, for tourism purposes, the natural and cultural resources of the State, ensuring a perspective inn favor of ecological balance and sustainable economic development;

TVQR005806

POLITICAL CONSTITUTION OF THE UNITED MEXICAN STATES
ATTACHMENT 2A-1 DOCUMENT 1
TVQR000936-TVQR000941, TVQR000947, TVQR000953, TVQR000964, TVQR000994, TVQR000997-
TVQR000998, TVQR001001

[...]

**Article 27.** Ownership of lands and waters within the boundaries of national land territory is vested originally in the Nation, which has had and has, the right to transmit title thereof to private persons, thereby constituting private property.

No expropriations of private property shall be made but for public convenience and necessity, and subject to payment of indemnification.

The Nation shall at all time have the right to impose on private property such restrictions as the public interest may demand, as well as to regulate, for social benefit, the utilization of those natural resources which are susceptible of appropriation, in order to make an equitable distribution of public wealth, to conserve them, to achieve a balanced development of the country and to improve the living conditions of rural and urban population. Consequently, measures shall be issued to order human settlements and to establish adequate provisions, uses, reserves and allocations of lands, waters and forests, to carry out public works and to plan and regulate the creation, maintenance, improvement and growth of population centers; to preserve and restore environmental balance; to divide large landed estates; to provide, under the terms set forth by the Law, the collective exploitation and organization of the *ejidos* and communal population centers; to develop small rural property; to promote agriculture, cattle breading, forestry and other economic activities in rural environments, and to prevent the destruction of natural resources and damages that property may suffer to the detriment of society.

The Nation has full ownership over all natural resources of the continental shelf and the seabed and subsoil of the submarine areas of the islands; over all minerals or substances in veins, layers, masses or ore pockets, constituting deposits which nature is different from the components of the earth, such as the minerals from which metals and metalloids to be used in industry are extracted; beds of precious stones, rock salt and deposits of salts formed by sea water; the products derived from rock decomposition, when their exploit requires underground work; minerals or organic deposits susceptible to be utilized as fertilizers; solid mineral fuels; petroleum and all solid, liquid or gaseous hydrocarbons; and the space located over national land territory, in the extension and under the terms established by International Law.

The Nation has full ownership over the waters of territorial sea in the extension and under the terms set forth by International Law; over internal waters; waters of lagoons and estuaries permanently or intermittently connecting with the sea; those of natural inland lakes which are directly connected with streams constantly flowing; river waters and their direct and indirect tributaries, from the site of the riverbed where the first permanent, intermittent or torrential waters start to flow, to their mouth in the sea, lakes, lagoons or estuaries owned by the nation; those of constant or intermittent streams and their direct or indirect tributaries, whenever their beds along all the length of its way or in a portion thereof serve as a boundary line of national land territory or between two States, or when they flow from one State to another or cross the Republic's boundary line; those of lakes, lagoons or estuaries whose beds, zones or streams are

TVQR005807

crossed by boundary lines dividing one or more States or between the Republic and a neighboring country, or when the stream shoreline serves as a boundary between two States or between the Republic and a neighboring country; those of springs flowing from beaches, maritime areas, streams, basins, river beds, banks of lakes, lagoons or estuaries owned by the Nation, and the ones extracted from mines; and the streams, beds, or banks of lakes and interior streams in the extensions established by the Law. Underground waters may be freely extracted by artificial works and may be appropriated by the owner of the land, but whenever the public interest should so require it, or whenever other uses are affected, the President of the Republic may regulate its extraction and use and may even establish banned zones, and the same may be done regarding other waters of national ownership. Any other waters not included in the foregoing listing shall be considered as an integral part of the land through which they flow or where their deposits are located, but should they be located in two or more lots, the use of such waters shall be considered of public convenience and subject to provisions issued by the States.

In the cases established in the two paragraphs hereinbefore, the Nation's dominion is inalienable and not subject to the statute of limitation and the exploitation, use or enjoyment of the resources in question by private persons or by companies incorporated in accordance with Mexican laws, may not be undertaken save by means of concessions granted by the President of the Republic and in accordance with the rules and conditions set forth by the Laws. Legal provisions regarding the exploitation and works in respect to minerals and substances referred in paragraph fourth, shall govern the performance and verification of such exploitation activities and works carried out or that should be carried out, from its effective date, regardless of the date the concessions were granted. Failure to comply therewith shall cause the cancellation of the concessions. The Federal Government has the right to establish and suppress national reserves and the corresponding declarations shall be made by the President of the Republic in the cases and under the conditions provided by the Law. In the case of petroleum and solid, liquid or gaseous hydrocarbons, or of radioactive minerals, neither concessions nor contracts shall be granted, nor shall the ones previously granted, if any, survive, and the Nation shall carry out the exploitation of such products under the terms set forth in the respective Law. It pertains exclusively to the Nation to produce, conduct, transform, distribute and supply electric power to provide a public service. In this matter no concessions shall be granted to private persons, and the Nation shall apply the goods and natural resources required to serve such purpose.

The use of nuclear fuels to generate nuclear energy and the regulation of its applications for other purposes pertains to the Nation too. Nuclear energy may only be applied to peaceful use.
Within an exclusive economic zone, situated outside the territorial sea and adjacent thereof, the Nation exercises the sovereign rights and jurisdiction set forth in the laws enacted by Congress.

The exclusive economic zone shall extend to two hundred nautical miles from the baselines from which the territorial sea is measured. In cases where said extension should produce a superposition over the exclusive economic zones of other countries, the boundaries of the respective zones shall be established as needed, through agreements with such countries.

The legal capacity to acquire domain over the Nation's lands and waters shall be governed by the following provisions:

TVQR005808

I. Only Mexicans by birth or naturalization and Mexican companies have the right to acquire domain over lands, waters and their appurtenances or to obtain mining or water exploitation concessions. The State may grant the same right to foreigners, provided they agree before the Ministry of Foreign Affairs to consider themselves as nationals in respect to such property and not to invoke the protection of their governments in reference to said property, under penalty, in case of defaulting the agreement, of forfeiting in benefit of the Nation, the property acquired by virtue thereof. In no case may foreigners acquire direct domain over lands and waters in a zone of one hundred kilometers along the international borders and fifty kilometers along the shore.

The State, according to domestic public interest and to reciprocity principles and at the discretion of the Ministry of Foreign Affairs, may authorize foreign States to acquire, at the site where Federal Powers permanently reside, private ownership over the real estate needed for the direct service of their embassies or delegations.

II. Religious associations created in accordance with the terms provided in Article 130 and its Law, shall have legal capacity to acquire, possess or manage exclusively, such property which is essential for their purpose, subject to the requirements and restrictions set forth by the Law.

III. Public and private charitable institutions, whose object is to aid the needy, to carry out scientific research, to spread education, or to provide mutual aid to their members, or any other lawful purpose, may not acquire other real estate property than that which is essential to fulfill their object, and which is immediately or directly devoted thereto, subject to the provisions of the Law.

IV. Corporations may own rural lands but only in the extension necessary to fulfill their object. In no case may such class of companies hold in ownership lands dedicated to agriculture, cattle breading, or forestry activities, in an extension greater than the respective equivalent to twenty five times the limits specified in section XV of this Article. The Law shall determine the capital structure and minimum number of partners of these corporations so that the lands owned by them do not exceed, in relation to each partner, the limits of small rural property. In this case all individual stock ownership corresponding to rural lands shall be cumulative for computation purposes. Likewise, the Law shall establish the requirements for the participation of foreigners in said corporations. The Law shall establish the means for registry and control required to comply with the provisions of this section.

V. Banks duly authorized, in accordance with the laws of credit institutions, can have capital imposed over urban and rural properties as provided under said laws, but they may not hold in property as owners or in management, any more real estate than that which is entirely necessary to fulfill their direct object.

VI. The Federal District and the States, as well as the Municipalities of the Republic, shall have full legal capacity to acquire and possess all the real estate required for public services. The laws of Federation and of the States, within their respective jurisdictions, shall establish the cases in which public convenience and necessity require the taking of private property and in accordance with said laws, an administrative authority shall issue the corresponding statement. The price fixed as indemnification for the expropriated property shall be based on its registered value, as it appears in the records of the cadastral bureau or tax collection office, regardless of whether such value was reported by the owner, or tacitly accepted by him, for having paid his taxes according to such

TVQR005809

base. Only the increased or decreased value of said private property due to any improvements or to any deterioration occurring after the tax appraisal base was set, shall be the portion of its value subject to the assessment of experts and to judicial resolution. The same provision shall apply to any objects which value is not fixed in tax collection offices.

The exercise of actions corresponding to the Nation by virtue of this Article's provisions shall be enforced by judicial proceedings. During said proceedings and by order of the corresponding courts, which shall be issued within a maximum term of one month, administrative authorities shall occupy, manage, auction or sell the lands or waters in question along with their appurtenances. In no case may such said actions be undone by the same authorities who performed them, before a final judgment on the case is issued.

VII. The legal capacity of *ejido* and communal population centers is recognized and their ownership over the land is protected, whether for human settlements as well as for productive activities.

The Law shall protect the integrity of the lands of native indigenous groups. The Law, considering the respect due to, and the need to strengthen the community life of, *ejidos* and communal population centers, shall protect the land for human settlements and shall regulate the uses of the lands, forests and waters used by the community and the implementation of the promotional actions required to improve the quality of life of their inhabitants.

The Law shall regulate the exercise of *comuneros* rights over their land and of each *ejidatario* over his parcel, respecting their will to adopt the conditions which best suit them to profit from the use of their productive resources. The Law shall likewise establish the procedures whereby *ejidatarios* and *comuneros* may associate among themselves or with the State or with third parties, and grant the use of their lands; and in the case of *ejidatarios*, the procedure to transfer their parcel rights to members of their rural settlement.

It shall also set forth the qualifications and procedures whereby the assembly of the *ejido* shall grant the *ejidatario* private rights over his parceled land. In cases of transfer of parceled lands, the rights of first refusal set forth by the Law shall be respected. Within a same rural settlement, no *ejidatario* may hold title over more land than the equivalent of five percent of the total land belonging to the *ejido*. In any case, title over land in favor of one sole *ejidatario* must adjust to the restrictions set forth in section XV.

The general assembly is the supreme authority of the *ejido* or communal population center, and it shall be organized and in charge of such duties as the Law establishes. The *comisariado ejidal* or *comisariado de bienes comunales* is a body democratically elected according to the terms provided by the Law. It is representing the population settlement and the one responsible to carry out the resolutions issued by the general assembly.

Restitution of lands, forests and waters to rural settlements shall be done according to the terms provided in the Law.

VIII. The following actions are decreed null and void:

a) All transfers of lands, waters and woodlands belonging to towns, villages, settlements or communities, made by political chiefs, State governors, or by any other State or local authority in

TVQR005810

contravention to the provisions set forth in the Law of June 25 of 1856, and any other relative laws and provisions;

b) All concessions, arrangements or sales of lands, waters and woodlands, made by the Ministry of Promotion or by the Ministry of the Treasury, or by any other federal authority from the first day of December of 1876 to this date, under which *ejidos*, lots for distribution to rural communities, or lands of any other kind belonging to towns, villages, hamlets or communities, and rural settlements, shall have been invaded and unlawfully occupied;

c) All survey and demarcation procedures, transactions, transfers or auctions performed during the period referred under the foregoing section, by companies, judges or any other State or federal authorities, under which lands, waters and woodlands of *ejidos*, lands for common distribution, or lands of any other kind belonging to rural settlements, shall have been invaded or unlawfully occupied.

The only lands excepted from the nullity hereinbefore set forth are those which title deeds were executed in the land distributions made in accordance with the Law of June 25 of 1856 and in respect to which a person, under his own name, has held possession as owner for over ten years, provided the area does not exceed fifty hectares.

IX. The division or distribution made with an appearance of legitimacy among neighbors of a rural settlement and in which there was error or vice, may be annulled at the request of three fourths of the neighbors who are in possession of one fourth of the lands which were subject to the partition, or of one fourth of such neighbors, should they possess three fourths of the land.

X. (Repealed).

XI. (Repealed).

XII. (Repealed).

XIII. (Repealed).

XIV. (Repealed).

XV. Extensive land holdings are prohibited in the United Mexican States. Small rural property is the land which area does not exceed one hundred hectares of irrigated or wetland prime soil, or its equivalent in other classes of soil, per individual.

For purposes of equivalence, one hectare of irrigated soil shall be equivalent to two of seasonal soil, to four of good quality pastureland and to eight of forest, woodland or pastureland in arid soil lots.

Rural private property is the lot which area does not exceed one hundred and fifty hectares per person when the ground is dedicated to cotton cultivation if the lands are irrigated; and lots of three hundred hectares when dedicated to cultivating banana, sugar cane, coffee, henequen, rubber, palm oil, wine grapes, olives, quinine, vanilla, cacao, *agave*, prickly pear tree or fruit trees.

TVQR005811

Private property for grazing is land which shall not exceed an area necessary to maintain up to five hundred heads of large livestock or its equivalent in small livestock, per person, in accordance with the terms set forth by the Law, and subject to the foraging capacity of the soil.

When by reason of works of irrigation, drainage or any other works done by the owners or possessors of a rural private property, the quality of the soil shall have been improved, the land will still be considered small rural property, even if it exceeds, by virtue of the improvements made, the maximum limits set forth in this section, provided that the requirements established by the Law are met.

Whenever improvements are made to the soil of small grazing property whereupon such soil is dedicated to agricultural uses, the area so utilized may not exceed, as the case may be, the limits referred under paragraphs second and third of this section in respect to the quality of said lands before the improvement.

XVI. (Repealed).

XVII. The Congress of the Union and the States Legislatures, in their respective jurisdictions, shall enact laws establishing the procedures to partition and transfer the land extensions which exceed the limits set forth under sections IV and XV of this Article.

The surplus land shall be partitioned and sold by its owner within a term of one year from the date of the corresponding notice. If at the end of such term the surplus land has not been transferred, it shall be sold by public auction.

In equal conditions, any pre-emptive rights set forth in the Law shall be respected.
Local laws shall organize the family estate, establishing the properties and goods which must compose it, under the grounds that it shall be inalienable and not subject to any attachments or liens.

XVIII. All contracts and concessions executed by previous governments, from the year of 1876 to date, which have resulted in hoarding of lands, waters and natural resources of the Nation, under one sole person or company are declared subject to review, and the President of the

Republic is empowered to declare any of them null and void whenever they imply a serious prejudice to public interest;

XIX. On the grounds of this Constitution, the State shall support legal counseling for peasants and shall establish the measures required to provide agrarian justice in a prompt and honest manner, aiming to guarantee legal certainty in respect to the land tenure of *ejidos*, communal population centers and small rural property.

All issues pending or arising between two or more population settlements by cause of *ejido* and communal land boundaries, whatever their origin, are under federal jurisdiction; as well as any issues related to land tenure of *ejidos* and communal population centers. For this purposes, and in general, for ministering agrarian justice, the Law shall establish tribunals vested with autonomy and full jurisdiction, composed by Magistrates proposed by the President of the Republic and appointed by the Senate or, in the adjournments thereof, by the Permanent Commission.

TVQR005812

The Law shall establish an agency to act as counsel for peasants in matters of agrarian justice, and

XX. The State shall promote the conditions to attain a comprehensive rural development, aimed at creating jobs and guaranteeing the welfare of the peasant population and their participation and integration to national development, and it shall foster agricultural, cattle raising and forestry activities for optimal uses of the land through infrastructure works, raw materials, credits, training services and technical assistance. The State shall likewise issue legislation to plan and organize agricultural and cattle production, and the industrialization and marketing thereof, considering these as activities of public interest.

[...]

**Article 40.** It is the will of the Mexican people to constitute a representative, democratic and federal Republic composed of States, free and sovereign in all matters concerning their internal affairs; but united in a federation established according to the principles of this fundamental law.

[...]

**Article 42.** National territory is composed by:

I. The territory of all the portions of land which make up the Federation;

II. The territory of all islands, including the reefs and keys in adjacent seas;

III. The territory of the islands of Guadalupe and Revillagigedo located in the Pacific Ocean;

IV. The continental shelf and the seabed and subsoil of the submarine areas of the islands, keys and reefs;

V. The waters of the territorial seas in the extension and under the terms established by International Law and domestic maritime laws;

VI. The air space located above national land territory, in the extension and with the particularities established by International Law.

[...]

**Article 43.** The Federation is made up by the States of Aguascalientes, Baja California, Baja California Sur, Campeche, Coahuila, Colima, Chiapas, Chihuahua, Durango, Guanajuato, Guerrero, Hidalgo, Jalisco, México, Michoacán, Morelos, Nayarit, Nuevo León, Oaxaca, Puebla, Querétaro, Quintana Roo, San Luis Potosí, Sinaloa, Sonora, Tabasco, Tamaulipas, Tlaxcala, Veracruz, Yucatán, Zacatecas and the Federal District.

[...]

**Article 48.** The islands, keys and reefs of adjacent seas belonging to national land territory, the continental shelf, the sea beds of the islands, keys and reefs, the territorial seas, inland marine

TVQR005813

waters, and the space over national land territory, shall depend directly from the Government of the Federation, with the exception of those islands over which the States have up to the present, exercised their jurisdiction.

**Article 73.** Congress shall have the following powers:

[...]

XXIX-G. To enact laws establishing the concurrence of the Federal Government, the States and the municipalities, within their respective jurisdictions, on matters concerning environmental protection and preservation and restoration of ecological balance;

[...]

**Article 115.** The States shall adopt for their internal government, the popular representative and republican form of government, having as the basis of their territorial division and political and administrative organization the Free Municipality, in accordance to the following principles:

[...]

V. Municipalities, under the terms provided by their respective Federal and States laws, shall have the powers to:

i) To enter into agreements to administrate and guard federal zones.

[...]

**Article 116.** The States' government Power is divided for its exercise into Executive, Legislative and Judicial. Two or more of these Branches may not be united in one single person or entity, nor shall the Legislative Branch be vested in one single individual. The Branches of the States shall be organized in accordance with the Constitution of each of them, subject to the following provisions:

[...]

VII. The Federation and the States, subject to the Law, may celebrate agreements where a State takes upon itself the exercise of certain functions of the Federation, such as the undertaking and performance of works and the rendering of public services, whenever social and economic development so require it. The States shall be empowered to celebrate said agreements with their Municipalities so that the latter may assume the provision of public services or the exercise of the functions referred under the preceding paragraph.

POLITICAL CONSTITUTION OF THE FREE AND SOVEREIGN STATE OF TAMAULIPAS
ATTACHMENT 2A-1 DOCUMENT 2
TVQR000

**ARTICLE 1**

The state of Tamaulipas is free, sovereign and independent in its government and internal administration, but is tied to the branches of government as part of the United Mexican States, in all that the Constitution expressly sets forth Mexican and laws derived from it.

[...]

**ARTICLE 77**

Executive power is vested in a citizen to be known as the "Governor of the Free and Sovereign State of Tamaulipas", who will be directly elected every six years, in the terms established by electoral law .

[...]

**ARTICLE 91**

The powers and duties of the Governor are:

[...]

XXIX. – To represent the State Government in all acts inherent in his position. This representation may  be delegated or granted to third parties in the broadest terms, to that effect, as may be established by law.

[...]

ORGANIC LAW FOR THE PUBLIC ADMINISTRATION OF THE STATE OF TAMAULIPAS
ATTACHMENT 2A-1 DOCUMENT 3
TVQR00

**ARTICLE 1**
1. The provisions of this law are public and are intended to regulate the organization and functioning of the public administration of the State of Tamaulipas, which is comprised of the central public administration and all decentralized entities.

2. The central public administration consists of the Attorney General, the Ministries, and other departments and administrative units of control, coordination, advice or consultation, whatever their names.

3. Public administration consists of decentralized public agencies, state-owned enterprises and public trusts, whatever their names.

**ARTICLE 2**
1. Executive power is exercised by the Governor of the State, who shall have the powers indicated in the Constitution of the United Mexican States, the State Constitution, this law and other legal provisions.

2. The Executive Branch may delegate their representation by Governmental Agreement in favor of the public servants of the State deems appropriate. Also, for cases that require it, matters outside the State or to grant a proxy to persons not having the character of state public servants, may be granted that in the most comprehensive estimate the Executive, by proxy.

**ARTICLE 3**
In exercising its powers and for the handling of matters pertaining to the executive branch of the state, the Governor will have the ministries established by the State Constitution, this Law, all corresponding decrees and other legal provisions.

[...]

**ARTICLE 7**
1. The Governor of the State may enter into agreements with the Federal Government, with other states and with the municipalities of the state, as well as with individuals and associations of social and private sectors, for the provision of public services, the execution of works or the performance of any other purpose for the collective benefit.

2. The State Executive Branch will decide which agencies of the state public administration should be coordinated with the departments and agencies of the federal public administration, as well as local authorities, to comply with any of the purposes referred to in the preceding paragraph.

[...]

**ARTICLE 9**

The Executive Branch of the State, through the office of public affairs, will decide in case of doubt, any question of the jurisdiction of the agencies referred to in this law.

[...]

**ARTICLE 10**

1. The Governor will sign regulations, decrees, circulars, orders and other provisions necessary for the performance of his constitutional and legal functions.

2. All such provisions shall be signed by the Secretary General of the Government, without such signature such provisions shall not become legally effective, as well as the head of the agency to the appropriate area of the issued determination.

3. The decrees which issue  laws, decrees or agreements issued by the State Congress shall only require the endorsement of the Secretary General of Government.

[...]

**ARTICLE 21**

1. The titleholders of the Ministries will be fully authorized to represent the local executive branch in the issues which they are entitled to under this law.

2. They can also certify copies of documents involving them or that are recorded in the ministry files and relate to the exercise of its powers.

[...]

**ARTICLE 23**

1. For the study, planning and delivery of the affairs of the various branches of the public service in the state, the Governor shall have the following ministries:

I. Secretary General of the Government;
II. Ministry of Finance;
III. Ministry of Administration;
IV. Ministry of Economic Development and Tourism;
V. Secretary of Labor;
VI. Ministry of Rural Development;
VII. Ministry of Social Development;
VIII. Ministry of Education;
IX. Ministry of Health;
X. Ministry of Urban Development and the Environment;
XI. Department of Public Works;
XII. Ministry of Public Security;
XIII. Attorney General, and
XIV. Government Comptroller.

TVQR005817

2. As well as other agencies for coordination, planning and consulting which may be determined by other legal provisions or the Governor himself.

## ARTICLE 24

The Secretary General of the Government, in addition to the powers specifically assigned to it by the State Constitution and current legislation, for such office, are the following:

[....]

VIII. To participate in the development of regulations, decrees, circulars and any other provision of law whose issuance corresponds to the jurisdiction of the Governor of the State;

XXXIV. To conduct studies, research and programs on methods, systems, equipment and devices needed for the prevention and control of disasters, accidents or calamities, and to operate the timely performance of services necessary for civil protection;

XXXV. To drive and implement policies and programs of state government intended to protect citizens and coordinate, in terms of the relevant law, the exercise of the powers of the State Executive Branch corresponding to this area, in relation to the Federal Entities, other states and municipalities;

XXXVI. Establish mechanisms for coordination with the competent authorities in the prevention and care of emergencies caused by natural phenomena;

## ARTICLE 25

The Ministry of Finance, in addition to the functions assigned to it by existing legislation, is granted the following authorities and obligations:

[....]

IV. Collecting and administering taxes, fees, special assessments, products and uses the state as well as those arising from the conclusion of agreements with the Federation and municipalities, as well as giving the necessary administrative measures to this purposes;

XXII. Authorized to make payments from the budget of expenses, and any others under the applicable laws, agreements, contracts and other legal provisions made;

XXV. To execute agreements regarding its powers entered into by the State Government with the Federal Government, with the municipalities of the state, and with other states; and to exercise the powers arising therefrom, and

XXVI. Any others indicated in the law, regulations and other legal provisions, as well as assigned by the Governor of the State.

## ARTICLE 26

To the Minister of Administration, in addition to the powers conferred by applicable law, the office is responsible for the following matters:

[....]

XVII. To provide general services for clean up, monitoring, maintenance as well as preventive and corrective maintenance of real and personal property of the departments and agencies of the state government;

**ARTICLE 27**

The Ministry of Economic Development and Tourism, as well as all powers conferred by applicable law, shall be responsible for the following matters:

I. To develop and implement plans and programs for the promotion and development of industrial, commercial, and tourism services;

II. To coordinate, promote and organize the actions and interaction of federal and state resources with producers, entrepreneurs, workers and consumers;

[....]

IX. To carry out technical studies to determine the creation of industrial parks, commercial and supply centers, to promote overall economic development of the State;

X. To promote participation schemes or public and private investment, domestic or foreign, in infrastructure projects awarded under the concession system and to participate in coordination with the Department of Public Works, in the building of networks on roads, highways, waterways, roads railways, seaports, international bridges and crossings;

XIII. To participate and promote jointly with the Ministries of Finance and Public Works, at the national and international level, financing plans and implementation of infrastructure and services necessary for the economic development of the State;

XV. To disseminate information concerning industrial, commercial, air, sea, service, transport and infrastructure in general, to promote and encourage the establishment of industries and related companies;

XVIII. To promote and maintain, under the terms of the treaties, conventions and agreements, coordination with the departments and agencies of the federal and state civil service, with social sector agencies and private enterprise, domestic or foreign, linked economic activities in order to promote competition within their joint integration programs that stimulate economic development of the State;

XXII. To promote coordination with the Ministry of Urban Development and the Environment, in order to install programs for environmental protection and confinement of solid waste and waste water, promoting the sustainable development of the industrial, commercial and tourism industries in the state;

[....]

TVQR005819

XXX. To promote a supportive financial system to the productive sectors of Tamaulipas;

XXXII. To coordinate, within its jurisdiction, the operation of the funds and trust funds established by the Executive Branch with the federal and municipal governments, and the private and social sectors;

XXXIV. To promote, in coordination with the municipalities of the state, all areas of tourism development;

XXXVII. To authorize prices and rates of tourism services, under the terms established by the laws and regulations, and to monitor its proper implementation;

XLIV. To participate, within the scope of its jurisdiction, with the Ministry of Urban Development and the Environment in the creation, implementation, inspection and supervision of the legal order, projects and programs for the conservation and sustainable use of natural protected areas of corresponding to the state;

XLV. To develop, promote and drive the strategies, objectives and rules of natural tourism and hunting tourism, in coordination with the Ministry of Urban Development and the Environment, in order to achieve the optimal use of resources, maintaining essential environmental processes and propelling the conservation of natural resources and biodiversity, and

XLVII. All others indicated in the law, regulations and other legal provisions, as well as assigned by the Governor of the State in relation to such office.

## ARTICLE 29

The Ministry of Rural Development, in addition to the powers conferred by applicable law, the office is responsible for the following matters:

I. To develop and implement programs for the promotion and development of agricultural, livestock, forestry, fisheries and aquaculture programs;

II. To coordinate, promote and organize the integration of actions and investment of federal and state resources for producers and consumers;

III. To promote and strengthen the participation of producers with the agencies responsible for the implementation of programs and activities aimed at sustainable development of the agricultural, livestock, forestry, fisheries and aquaculture sectors;

[....]

IX. Monitoring the preservation of natural resources crops, livestock, forestry and fishery in the State, in coordination with the Ministry of Urban Development and the Environment, under the terms of the existing provisions;

XI. Establish, in coordination with the State Water Commission of Tamaulipas, policies, strategies, objectives and standards for the proper operation of programs related to the use and supply of

water for agricultural purposes, livestock, forestry and aquaculture, as well as goods inherent to the Federation has transferred or transferred to the State;

XII. Promote and support the industrialization and commercialization of agricultural products, livestock, forestry, fisheries and aquaculture generated in the State, in coordination with the Ministry of Economic Development and Tourism;

XVI. To promote a system to certify the origin and quality of agricultural products, livestock, forestry, fisheries and aquaculture of the State;

XVII. To organize and promote related services to the agricultural, livestock, forestry, fisheries and aquaculture sectors, considering the availability of natural resources and products generated in each region and prevailing market conditions;

XXI. To promote and contribute, in coordination with the Ministry of Urban Development and the Environment, the conservation of <u>marine life</u> and freshwater aquaculture and to promote their development;

XXII. Exercise, in coordination with the appropriate state agencies and entities, the functions assumed by the State under coordination agreements entered into with the Federal or State Councils in hydraulics, agriculture, livestock, forestry, fisheries and aquaculture, as per the terms established therein;

XXIII. To collaborate with the Federal Government on the integration and review of the National Register of Fishing and in coordination with the State Water Commission of Tamaulipas, the Registry of Granted Water Rights and the Registries of Members of the Irrigation Districts;

**ARTICLE 33**
The Ministry of Urban Development and the Environment, along with the powers assigned by current legislation, holds office over the following matters:

[....]

II. To apply the legal and administrative provisions relating to state land planning, urban development, human settlements, housing, environment, wildlife, forestry, protected areas, waste, natural resources and sustainable development, to ensure compliance, and to propose to the State Executive Branch any reforms it deems appropriate;

[....]

VIII. To run or coordinate, as appropriate, concerted actions by the executive with the public, social and private coordination and develop partnerships with these and technical assistance with, entities and agencies to support the plans and programs of urban development, housing , urbanization, environment and sustainable development;

[....]

X. To implement and monitor compliance with the policy instruments and programs of environmental, natural resources and sustainable development established in the laws of the State;

XI. To enter into agreements with the Federal Government, the governments of other states and municipalities of the state, for the joint and coordinated actions needed for the protection, conservation and improvement of the environment and natural resources for sustainable development;

XII. To propose, implement and monitor the development and implementation of plans and programs for the preservation and development of flora, fauna and renewable natural resources and to regulate their reasonable exploitation, in coordination with the Ministries of Economic Development and Tourism as well as Rural Development, and the Federation and municipalities;

XIII. To take action and to enact all necessary actions, within the scope of its jurisdiction, where there are threats of serious or irreversible damage to the environment or when there are any environmental emergencies where there is a severe and continuing involvement thereto and which affect natural resources or biodiversity in state territory, even in case of activities or works that are within the scope of jurisdiction of other authorities, if they pose an imminent risk to public health, and, to that effect, to act immediately, with no detriment to coordination with the Ministry of Health, to make use of its powers;

[....]

XXIII. To promote and encourage research on the environment and sustainable development;

XXVI. To formulate guidelines for the development of studies to quantify environmental damage caused by works and anthropogenic activities, to report on the environmental impact studies submitted by the heads of such works and activities allegedly causing such damage, as well as to apply sanctions and require environmental compensation measures as appropriate;

XXVIII. To initiate any appropriate action within the scope of its jurisdiction, with the competent authorities, when aware of acts or omissions that constitute violations of criminal law or administrative and procedural law, being entitled to participate therein by providing reports and opinions, taking tests and initiating any processes needed for such effects;

[....]

XXXI. To develop and exercise all powers in connection with any environmental agreements and conventions entered into with the Federation;

[....]

XXXVIII. To establish and implement administrative penalties for violations of environmental regulations and, if necessary, to grant compensation for works or actions for the environmental collective benefit;

TVQR005822

XXXIX. To receive, investigate and address or, where appropriate, to channel to the competent authorities, any complaints of non-compliance with environmental regulations, applying security measures and imposing sanctions that are within its jurisdiction under the terms of the applicable legal provisions;

[...]

TVQR005823

CONSTITUTION OF THE SOVEREIGN STATE OF VERACRUZ
ATTACHMENT 2A-1 DOCUMENT 136
TVQR002886, TVQR002891, TVQR002904-TVQR002906

**ARTICLE 1**
The state of Veracruz de Ignacio de la Llave is an integral part of the Mexican federation, free and autonomous in its administration and internal governance.

[...]

**ARTICLE 17**
The authority of the State is popular, representative and democratic, and its exercise is divided into Legislative, Executive and Judicial branches. The official capital and seat of power of the state is the town of Xalapa-Enríquez.

[...]

**ARTICLE 49**
The powers of the Governor:

XVII. To enter into, as a representative of the State Government and in compliance with the provisions of the law, agreements and contracts with the various branches of government, at a federal, state or municipal level,  with decentralized entities and with individuals or corporations, whether public or private;

**ARTICLE 50**
The Executive Branch, for the dispatch of business within its jurisdiction, shall have the centralized and decentralized agencies established by law, with the powers and organization to be determined thereby.

The law establishes the general basis for creating institutions of decentralized governance and executive intervention in its operation, and the relationships between those entities and the Executive Branch, or between them and the bodies of the central public administration.

[...]

The heads of the ministries and agencies of government may, with the written approval of the Executive, enter into agreements and contracts within the scope of their jurisdiction.

TVQR005824

ORGANIC LAW FOR THE EXECUTIVE BRANCH OF THE STATE OF VERACRUZ
ATTACHMENT 2A-1 DOCUMENT 137
TVQR002929, TVQR002930, TVQR002932, TVQR002933 TVQR002934, TVQR002936, TVQR002941,
TVQR002943, TVQR002949, TVQR002953- TVQR002961

**ARTICLE 1**
This Act shall be generally observed for the government of the State of Veracruz-Llave and aims to
establish the foundations of the organization and operation of centralized agencies and
decentralized agencies into which it is divided.

[...]

**ARTICLE 4**
The State Civil Service shall conduct its activities in accordance with the policies, priorities and
constraints, as needed to achieve the objectives and goals of the Development Plan and Veracruz
government programs, set forth by the Governor directly or through its agencies and entities,
which is subject to state planning and budgeting, using a reasonable criteria and fiscal discipline,
as well as accounting, evaluation, periodic reporting, internal audit and management control
available through the laws on the matter.

[...]

**ARTICLE 9**
For the study, planning, resolution and dispatch of business of the various branches of the central
public administration, the Executive branch will have the following ministries:

I. Department of Government;
II. Ministry of Public Safety;
III. Ministry of Finance and Planning;
IV. Ministry of Education;
V. Ministry of Labor, Productivity and Social Prevision;
VI. Ministry of Economic Development and Ports;
VII. Ministry of Regional Development;
VIII. Ministry of Social Development;
VIII. Ministry of the Environment;
IX. Ministry of Agricultural Development, Rural and Fisheries;
X. Ministry of Health;
XI. Ministry of Tourism, Culture and Cinematography;
XIa. Ministry of Civil Protection;
XII. Comptroller General;
XIII. Attorney General;
XIV. Social Media and Communications.

The units have equal rank and preeminence among them no one, except for the provisions of the
State Constitution on the Government Ministry.

**ARTICLE 12**

The heads of the centralized ministries (agencies) have the following common attributes:

[...]

III. Formulate, within its jurisdiction, bills, decrees, regulations, agreements and conventions, which forwarded for approval to the State Governor, through the Secretary of State, for the purpose, as appropriate, of the provisions of Articles 34, section III, paragraph III 49 and 50 first and second paragraphs, of the State Constitution and 8 section II of this Act;

[...]

V. Perform, in appropriate cases, coordinating with federal authorities in other states or municipalities of the state;

VI. Subscribe documents relating to the exercise of its powers and those who are identified by their respective delegation or by substitution;

VII. Celebrate, as provided by Article 8 section VII of this law, agreements and conventions within the scope of its jurisdiction, written permission of the Governor;

[...]

**ARTICLE 18**

The duties of the Secretary of Government, according to the division of powers established by its rules, the following: V. Propose to the Governor of the draft laws, decrees, regulations, agreements and orders on matters within the jurisdiction of the Ministry and its industry;

**ARTICLE 19**

The Ministry of Finance and Planning is the agency responsible for coordinating the financial and tax administration of the Treasury, and to project, with the participation of the agencies of public administration, planning, programming and budgeting of the State under the the applicable laws and regulations, under the Democratic Planning System, and for maintaining administrative control of human and material resources of the State Civil Service.

**ARTICLE 20**

The duties of the Secretary of Finance and Planning, under the division of powers laid down in the Rules of Procedure, the following:

[...]

IV. Design, implement and update a program of public spending, in line with the objectives and needs of the public administration, advising and supporting the agencies to integrate their specific programs;

[...]

TVQR005826

VI. Monitor compliance with laws, regulations and other provisions of a fiscal nature, applicable in the State;

[...]

XLII. Advise the Governor of the State in the development of the agreements entered into with the Federal and Municipal, or other states, in terms of planning, programming, monitoring and evaluation of the development of the State;

**ARTICLE 23**
The Ministry of Economic Development and Port is the agency responsible for coordinating industrial development policy, trade and port of the entity, as well as to monitor the implementation and enforcement of laws in these matters.

**ARTICLE 24**
The duties of the Secretary of Economic Development and Port, according to the division of powers established by its rules, the following:
V. Promoting and encouraging in terms of the laws of matter, investment, joint ventures and installation of suitable companies to the State of Veracruz, generating sources of employment;

[...]

**ARTICLE 27**
The Ministry of Environment is the agency responsible for coordinating policies for the preservation and restoration of ecological balance, forestry, climate change and environmental protection in the State.

**ARTICLE 28.**
The duties of the Secretary of the Environment, under the division of powers established by its rules, the following:

I. Develop, lead, implement and evaluate the state policy on ecological balance, forestry, environmental protection and climate change;

III. Address issues relating to the preservation, conservation and restoration of ecological balance, forestry and environmental protection, and to implement environmental policy instruments in accordance with the laws, rules and other applicable provisions, in the area of jurisdiction;

IV. To promote compliance with the laws on environment and forestry coadyuvancia with bodies responsible for implementing the plans, programs and projects in the promotion and maintenance of ecological balance, forestry and environmental protection in the field of competition;

VI. To promote, establish, implement and coordinate actions to prevent and control as appropriate, within the framework of its jurisdiction, water pollution, air and soil, as well as the registration and monitoring of pollutants;

VII. Participate in the design of programs that promote or facilitate the monitoring, regulation and environmental audits in the field of state competition;

TVQR005827

XII. Regular, promote and monitor sustainable use and the prevention and control of pollution and, where appropriate, water sanitation state jurisdiction and national waters which are assigned to the State in the area of responsibility;

XV. Collaborate in emergency response and environmental contingencies in terms of their functions, and propose to the State Executive Branch adopting the necessary measures for the prevention and control of potential adverse effects on the ecological environment;

XIX. Coordinate with authorities implementing programs and measures for the preservation of natural resources, prevention of pollution, the order and cleanliness of the beaches, environmental improvement activities and tourist facilities, and the implementation companies in the same sector, subject to a system of sustainability indicators;

XXVI. Celebrate all types of contracts and agreements to facilitate the performance of their duties;

**ARTICLE 29**
The Ministry of Agricultural Development, Rural and Fisheries is the agency responsible for coordinating public policies for agricultural, livestock and fisheries in the state.

**ARTICLE 30**
The duties of the Secretary of Agricultural Development, Rural and Fisheries, according to the distribution of jurisdiction laid down in the Rules of Procedure, the following:

IV. Perform actions coordination with federal, state or municipal, in order that producers have with sufficiency, quality and timeliness, with production inputs;

IX. Participate, in accordance with the applicable provisions in the use of water resources of the entity in the case of lakes, rivers and other water bodies, policies and programs are defined and implemented in coordination with the Ministries of Social Development and Environment Environment;

XIII. To promote the creation of organizations and mechanisms to control marketing by producers of inputs and agricultural and fisheries products, and promote the marketing and production of crops and with international demand;

XV. Encourage the creation, organization and development of industries related to agricultural production, fruit and fish that is generated in the Bank, in coordination with the Ministry of Economic Development and Port;

XVI. To promote and support basic and applied research related to agricultural problems, fruit, water and state fisheries and promote the dissemination and adoption of technologies and systems generated, increase production and productivity of the field;

XVII. To promote agricultural education, fruit, fish, hydropower, by creating experimental fields, schools and training centers and demonstration, as well as coordinate with the schools in this area established in the State;

XLII. To promote the development of fishing communities and acuacultoras;

TVQR005828

XLIV. Provide technical assistance to fishermen and aquaculturists;

XLV. Encourage the creation of joint fisheries production, associations, cooperatives, unions of fishermen and fish farmers, and providing technical support, and encourage the establishment of societies seafood consumption, and seek funding;
XLVI. To promote industrialization of fishery products and the establishment of packing houses and cold, providing technical advice and of agency;

XLVII. Participate within the scope of its jurisdiction, in the preservation of fisheries resources;

XLVIII. To assist the Federal Government in the integration and review of the National Register of Fishing;

XLIX. Contribute with federal and local authorities, to promote fish production;
L. Promote and support the development of fisheries infrastructure and the rational exploitation and consumption of fishery resources;

**ARTICLE 32** *BIS.*
The Ministry of Tourism, Culture and Cinematography is the agency responsible for coordinating and implementing public policies and programs for development and promotion of tourism in the entity; promote and encourage the dissemination of culture and artistic expression, conservation and increasing the cultural, historical and artistic heritage of Veracruz as well as standardizing and guiding policies and programs in the systematisation, compilation of monitoring and public government information.

**ARTICLE 32** *TER.*
The powers of the Minister of Tourism, Culture and Cinematography, under the division of powers established by its rules, the following:

III. Develop feasibility studies and investment programs which enable tourism promotion and development, joint ventures and installation companies in the sector, favoring the creation of jobs;

IX. Ensure the conservation and protection of natural and cultural environment in the areas of tourism development in the State, acting in coordination with the competent authorities of other orders of government in these matters, particularly the Ministry of Environment, as well as promote tourism and culture cultural tourism;

TVQR005829

FEDERAL COORDINATION LAW ON FISCAL MATTERS
ATTACHMENT 2A-1 DOCUMENT 13
TVQR001314, TVQR001326, TVQR001331- TVQR001332

ARTICLE 1

This law aims to coordinate the tax system with the Federation of States, Municipalities and the Federal District, set the corresponding participation in public finances by federal revenues; distribute among them those holdings set rules for administrative cooperation between the various tax authorities; establish agencies in fiscal coordination and provide the basis for the organization and operation

When used in this Act the term "entities", it will apply to the states and the Federal District

The Ministry of Finance held agreement with entities applying join the National System of Fiscal Coordination established by this Act such entities participate in total federal taxes and other revenues to bring this Act by distributing the funds that are established in the same.

[...]

ARTICLE 10

Entities wishing to join the National System of Fiscal Coordination for receipt of entries that set this Act, it shall be by agreement concluded with the Ministry of Finance and Public Credit, which shall be authorized or approved by the legislature. Also, with the permission of the legislature may terminate the agreement.

[...]

ARTICLE 13

The Federal Government, through the Ministry of Finance and Public Credit, and the governments of the entities which have acceded to the National System of Fiscal Coordination, coordination may reach agreements on the administration of federal revenues, which include functions Federal Tax, collection, inspection and administration, to be exercised by the tax authorities of the Entities or the municipalities where so expressly agreed.

The agreements referred to this article will specify the income concerned, shall exercise the powers and limitations of the same. These agreements will be published in the Official Journal of the Institution and in the Official Journal of the Federation, and shall have effect from the dates in the agreement itself establish or, failing that, from the day following the publication in the Official Journal of the Federation.

The Federation or the Bank may terminate part or all of the agreements referred to this provision, termination and will be published under subrule effects.

The agreements referred to in this rule shall be set to receive perceptions Entities or their municipalities, tax administration activities they perform.

Article amended, Official Journal of the Federation on December 31, 2000)
ARTICLE 14

The tax authorities of the entities that are attached to the National System of Fiscal Coordination and its municipalities, if any, will be considered, in the exercise of the powers referred to the respective agreements or as federal tax authorities. Against all acts performed when acting in accordance with this provision, shall only resources and means of defense established by the federal law.

The Ministry of Finance will retain the power to determine the entities and their municipalities the general criteria of interpretation and application of tax provisions and administrative rules that indicate cooperation agreements and agreements.

TVQR005831

FEDERAL LAW OF ECOLOGICAL EQUILIBRIUM AND PROTECTION OF THE ENVIRONMENT
SEE DISCLOSURE LIST 2-A1 6
TVQR001185, TVQR001186, TVQR001190, TVQR001192, TVQR001193, TVQR001195- TVQR001198

ARTICLE 1

This Law regulates the provisions of the Constitution of the United Mexican States relating to the preservation and restoration of ecological balance, as well as environmental protection in the country and the areas in which the country has His sovereignty and jurisdiction provisions are public and social interest and are intended to encourage sustainable development and establish the basis for:

I.- To guarantee the right of everyone to live in an environment adequate for their health and welfare;

[...]

III. - The preservation, restoration and enhancement of the environment;

[...]

VIII. - The exercise of the powers on the environment corresponds to the Federation, States, Federal District and municipalities, under the principle of competition under Article 73 fraction XXIX - G of the Constitution;

[...]

X. - The establishment of coordination mechanisms, induction and coordination between authorities, between them and the social and private sectors as well as individuals and groups with social, environmental, and

[...]

ARTICLE 4

The Federation, States, Federal District and municipalities exercise their powers in the preservation and restoration of ecological balance and environmental protection in accordance with the distribution of powers laid down in this Law and other legal

The distribution of responsibility for regulating the sustainable use, protection and conservation of forest resources and soil, will be determined by the General Law for Sustainable Forest Development.

[...]

ARTICLE 7

The States are entitled, in accordance with the provisions of this Act and local laws on the subject, to hold the following powers:

[...]

II. - The application of environmental policy instruments under local laws on the matter, and the preservation and restoration of ecological balance and environmental protection is made on goods and areas of state jurisdiction in matters not expressly assigned to the Federation;

[...]

VIII.- La regulación del aprovechamiento sustentable y la prevención y control de la contaminación de las aguas de jurisdicción estatal; así como de las aguas nacionales que tengan asignadas;

[...]

XII. - Participation in environmental emergencies and contingencies, subject to the policies and programs of civil protection established for that purpose;

[...]

XVII. - The exercise of the functions in the preservation of ecological balance and environmental protection should transfer the Federation, as provided in Article 11 of this law;

[...]

XXII. - The care of other matters related to the preservation of ecological balance and environmental protection granted this Act or other regulations thereunder that are not expressly granted to the Federation

ARTICLE 11

The Federation, through the Ministry, may enter into agreements or arrangements for coordination, in order that the governments of Mexico and the States, with the involvement, if any, of its municipalities, assume the following powers, in within its territorial jurisdiction:

I. The management and monitoring of protected areas under federal jurisdiction, as provided in the respective management program and other provisions of this ordinance;

II. Control of hazardous waste considered a low hazard under the provisions of this ordinance;

III. The environmental impact assessment of the works or activities referred to in Article 28 of this Act and, where applicable, the issuance of the appropriate permits, except for works or activities:

a) Construction of water and roads general communication, pipelines, and pipelines carboducts,

b) Petroleum, petrochemical, cement, steel and electrical

c) Exploration, exploitation and processing of minerals and substances reserved to the Federation under the terms of the Mining Laws and Implementing Article 27 of the Constitution in the nuclear,

d) Facilities for treatment, containment or removal of hazardous waste and radioactive waste

e) Forest operations in tropical forests and species difficult to regenerate,

f) Changes in land use of forest areas and in jungles and arid,

g) Real estate developments that affect coastal ecosystems,

h) Works and activities in wetlands, mangroves, lagoons, rivers, lakes and estuaries connected with the sea and its shores or federal areas, and

i) Works in protected natural areas of jurisdiction of the Federation and activities which by their nature can cause serious ecological imbalances, as well as activities that endanger the ecosystem.

IV. The protection and preservation of soil, flora and fauna, land and forest resources;

V. Control actions for the protection, preservation and restoration of ecological balance and environmental protection in the Federal Maritime Zone and in the federal water bodies considered                                                                                     national

VI. The prevention and control of pollution of the atmosphere from stationary and mobile sources of   federal   jurisdiction   and,   where   appropriate,   issuance   of   authorizations;

VII. The prevention and control of environmental pollution caused by noise, vibration, heat, light, electromagnetic radiation and harmful odors ecological balance and the environment from stationary and mobile sources under federal jurisdiction and, where appropriate, to issue relevant authorizations;

VIII. Conducting operational actions designed to meet the purposes specified in this order, or

IX. Inspection and enforcement of this Act and other provisions derived therefrom

Such powers shall be exercised in accordance with this Act and other applicable federal regulations, as well as those arising thereof

Against acts emitting Federal District governments or States and, where appropriate, of its municipalities, in exercise of the powers to assume under this provision with respect to individuals, and resources shall defenses under Chapter V of Title VI of this Act.

ARTICLE 12
For purposes of the preceding article, the coordination agreements or arrangements entered into by the Federation, through the Ministry, with the governments of Mexico and the States, with the involvement,   if   any,   of   its   municipalities,   must   be   subject   to   the   following   bases:

TVQR005834

I. Be held at the request of a state, when it has the necessary resources, trained personnel, material and financial resources, and the specific institutional structure for the development of the powers and assume that such effects requires federal authority . These requirements depend on the type of agreement or arrangement to sign and abilities will be evaluated in conjunction with the Ministry.

The requirements established by the Ministry and evaluations conducted to determine the capabilities of the federal entity, to be published in the Official Journal of the Federation and in the official gazette or newspaper of the respective state, prior to the conclusion of the agreements or coordination;

II. Accurately establish its purpose and the materials and powers to be assumed and must be consistent with the objectives of the instruments of national development planning and national environmental policy;

III. Determine the participation and responsibility that corresponds to each of the parties and the goods and resources provided by them, specifying their intended and direction. Also specify what kind of colleges can take immediately to sign the agreement or arrangement and which shaped back.

IV. Establish the organ or organs that carry out actions resulting from agreements or coordination arrangements, including assessment, as well as the schedule of activities to be performed;

V. Define reporting mechanisms that are required, so that the signatory parties to ensure compliance with its object;

VI. Specify the term of the instrument, its forms of modification and termination and, if applicable, the number and duration of its extensions;

VII. Contain the technical annexes necessary to detail the commitments;

VIII. Other provisions that the parties consider necessary for the proper performance of the contract or agreement of coordination;

IX. For purposes in granting licenses or permits in environmental impact corresponding to Distrito Federal, State, or where applicable, the municipalities, should follow the same procedures set forth in Section V of this Act, in addition to the establish the laws and regulations applicable local;

X. In the case of the Conventions on Environmental Impact Assessments, the procedures established entities shall be as stipulated in the Regulations under this ordinance Responsible Environmental Impact Assessment, and be authorized by the Ministry and published in the Official Federal Official Gazette and in the official newspaper or the respective state, prior to the entry into force of the agreement or coordination agreement

Corresponds to the Ministry to assess the fulfillment of the commitments made in the coordination agreements or arrangements referred to this article.

The coordination agreements or arrangements referred to in this Article, as amended, and its

termination agreement, to be published in the Official Journal of the Federation and in the official gazette or newspaper of the respective state.

ARTICLE 14 BIS.
The environmental authorities of the Federation and the states will form a body which meets regularly to coordinate their efforts in environmental, analyze and exchange views on the actions and programs in the field, assess and monitor the same and agree actions and make appropriate recommendations, particularly in regard to the objectives and principles set out in Articles first and fifteenth of this Act

TVQR005836

FEDERAL LAW OF NATIONAL WATERS
ATTACHMENT 2A-1 DOCUMENT 251
TVQR00

ARTICLE 5

For compliance and enforcement of this Act, the Federal Executive Branch:

I. To promote the coordination of actions with state governments and municipalities, without affecting its powers in the field and in the scope of their respective powers. The coordination of the planning, implementation and administration of the shares of water resources management by watershed or hydrologic region will be through the Watershed Council, within which converge the three levels of government, and commitments involved and assume the users, individuals and organizations in society, in accordance with the provisions of thisAct and its regulations;

II. Encourage the participation of water users and individuals in the conduct and management of works and water services, and

III. Favor the decentralization of the management of water resources under the existing legal framework.

FEDERAL LAW ON FEES CHARGED FOR THE USE OF NATIONAL ASSETS
ATTACHMENT 2A-1 DOCUMENT 89
TVQR002415- TVQR002416, TVQR002477-TVQR002480

[...]

ARTICLE 194-D

For services that are specified below, shall be paid for the right, subject to the following fees:

I. - For the reception, study of the application and, where appropriate, issuance of permits, licenses, concessions, agreements destination, divestitures, renewals of licenses or permits, transfer of rights or authorization of changes to the conditions and bases concession or permission for the use, enjoyment or use of the beaches, the Federal Maritime Zone and the land reclaimed from the sea or any sea water tank, the right will be paid according to the following fee $ 1972.65

The above provision applies to permanent establishments. In the specific case of permits for fixed or semi-fixed positions and the traders who do not have permanent establishment will pay 50% share of the right referred to in the first paragraph of this fraction.

II. - On the field verification of survey submitted by the applicant for use or enjoyment of the beaches, the Federal Maritime Zone, the reclaimed land, or any other deposit is formed by marine waters:

Surface Range

(Square meters) lower upper limits fixed fee additional fee over the lower limit m2

0.01 500.00 $ 1,356.98 $ 0.0000

500.01 1,000.00 $ 1,356.98 $ 3.3895

1,000.01 2,500.00 $ 3,257.49 $ 2.5310

2,500.01 5,000.00 $ 7,515.18 $ 1.3702

5,000.01 10,000.00 $ 11,358.27 $ 0.8729

10,000.01 15,000.00 $ 16,256.04 $ 0.6711

15,000.01 20,000.00 $ 20,024.35 $ 0.5852

20,000.01 25,000.00 $ 23,308.86 $ 0.5062

25,000.01 50,000.00 $ 26,151.33 $ 0.4202

50,000.01 100,000.00 $ 37,960.36 $ 0.2323

TVQR005838

100,000.01 150,000.00 $ 51,047.45 $ 0.1758

150,000.01 $ 60,946.82 $ Henceforth 0.1175

From the lower limit, the additional m2 assigned the corresponding factor to reach the lower limit of the next rank.

III. For the assignment of the concession for private $ 4430.93

IV. (Repealed).

When the beaches, the Federal Maritime Zone, land reclaimed from the sea or any other deposit is formed by sea water is used for agriculture, livestock, aquaculture or fishing quotas set forth in this Article shall be reduced by 80%.

This right will be paid regardless of which corresponds to the use or enjoyment of the beaches, the Federal Maritime Zone, land reclaimed from the sea or any other deposit is formed by maritime waters under title II of this Act.

[...]

ARTICLE 232

They are required to pay the duty by the use, possession or use of property, individuals and entities that use, enjoy or exploit public property of the Federation in ports, terminals, and port facilities, the federal maritime zone, levees, channels, vessels, areas of streams, reservoirs and other national ownership of public property other than those mentioned in other chapters of this title, as you noted below:

I. - The annual 7.5% of the property value or *permisionado* concession including land, water areas occupied, works and facilities, if any.

In the case of domestic goods fall under Articles 113 and 114 of the National Water Act, other than those specified in sections IV and V of this Article, paid annually per square meter of surface, the next installment $ 25,393

II. - The 3.5% annual property value or *permisionado* concession, when intended for protection and decoration, not made constructs and owns licensee or permit holder, owner or lessee of the property adjacent to it.

III. - The 2% of the property value or *permisionado* concession when the property is made farming.

For the purposes of sections I, II and III above, the value of the property is determined according to an appraisal issued by the Commission of National Property Appraisals, which will be updated annually in terms of the provisions of Article 17-A of the Federal Tax Code.

TVQR005839

Every five years or less will be a new appraisal, if the term of the license or permit exceeds the mentioned period. This assessment should be considered only as originally leased out property, not including improvements and additions, incurred during the grant or permission.

IV. - From $ 0.0400 per square meter per year, when the use or enjoyment consists in carrying out agricultural activities or livestock, in the case of domestic goods fall under Articles 113 and 114 of the National Water Act

V. - $ 2.5753 per square meter per year, when the use or enjoyment consists in carrying out protection and beautification activities, not made constructs and owns licensee or permit holder, owner or lessee of the property adjacent to it, for those domestic goods falling under articles 113 and 114 of the National Water Act

VI. - From $ 2.5816 per square meter per year when the use or enjoyment consists in carrying out fishing activities.

VII. - From $ 0.1017 per square meter per year, when the use or enjoyment consists in carrying out aquaculture activities.

VIII. - For telecommunication facilities:

a). - In confined spaces, for every square meter or fraction, $ 590.47 monthly

b.) - In open spaces, monthly:

1. - For each antenna installed $ 284.06

2. - For each tower installed $ 590.47

c.) - By using the right of way of roads, railways and bridges under federal jurisdiction with facilities wiring ducts or public telecommunications networks, annually, per mile or fraction $ 427.99

IX. - For the spaces within federally owned properties that do not exceed 30 m2, where modules are installed or vending goods or services, pay per square meter or fraction thereof, per month $ 238.46

The right referred to this fraction, will be made in advance through semiannual interim payments by the 17th of January and July of the year in question.

The right of exercise minus the semiannual interim payments will be paid by declaration to be presented to the authorized offices within two months of the end of the same year.

X. - On the tank dry or cremated human remains in a niche built on federal property temples or their appurtenances, for each deposit $ 691.64

The fees outlined in sections III and IV foregoing shall apply only if the activity referred to in each case constitutes the main licensee or permit holder. In any case, taxpayers may choose to pay as provided in Section I of this article.

For purposes of this article, not be obliged to pay rights case of the following cases:

a). The individuals and companies that are required to pay the use referred to in Article 37 of the Ports Act;

b). Individuals or companies contracted by Federal Government agencies or their decentralized agencies to perform services such as storage, maintenance, security, cleaning or gardening to be performed inside the buildings and spaces that require accommodation equipment, fixtures and various people stay for occupied spaces in such property;

c). Contractor companies and financial leasing companies running works within the buildings concerned by the Federal Government, for those properties.

d). Credit institutions which provide the Federal Government agencies, banking consultation, deposit and withdrawal of amounts of accounts personnel working in those buildings, using the ATM service, the space occupied by these ATMs buildings in the Federal Government or its agencies decentralized.

e). Attendants Federal Treasury referred to in section III of Article 5 of the Law of the Treasury of the Federation, which provide the service of collecting federal tax cases, the space occupied by such subsidiary within the buildings Federation or decentralized bodies of the Federal Government, and by the installed equipment within the buildings identified

XI. By the use or enjoyment of poles, towers or pipelines, or similar property, owned decentralized public agencies, for the installation of telecommunications network cabling, annually:

a). For each pole, tower or similar goods is used, for each cable installed: $ 61.88

b). For every product, for every kilometer or mile fraction is used, each cable installed: $ 680.73

c). For each record that is used, for each cable installed: $ 43.32

For purposes of this fraction, the term cable installed to the unit composed of steel suspension cable, coaxial cable and / or fiber optic and its accessories.

The collection is obtained for the right referred to this fraction, will go entirely to the decentralized public agency that owns the poles, towers, ducts, registers or similar goods in question. For purposes of calculating the whole law and referred to this fraction shall apply the provisions of Article 4 of this Law

[...]

TVQR005841

FEDERAL PLANNING LAW
ATTACHMENT 2A-1 DOCUMENT 252
TVQR00

ARTICLE 32

Once approved the Plan and programs, will be mandatory for agencies of the Federal Government, in the scope of their respective powers.

Under the applicable legal provisions, the obligation of the Plan and the programs will be extended to decentralized agencies. To this end, the heads of the agencies, in the exercise of its powers over the sector coordinators to them by the law, to provide the pertinent organs of government and administration of the institutions themselves.

The implementation of the Plan and the programs may be entered in accordance with this law, with representations of social groups or individuals concerned.

Through the exercise of the powers conferred by law, the Federal Executive induce the actions of individuals and, in general, the whole population, in order to promote the achievement of the objectives and priorities of the Plan and programs.

The coordination of the implementation of the Plan and the programs should be offered to the state governments through the respective agreements.

ARTICLE 34

For purposes of the preceding article, the Federal Executive may agree with the governments of the states.

I. Your participation in national planning through the submission of proposals they deem appropriate;

II. Coordination procedures between federal, state and municipal governments to promote comprehensive development planning for each state and municipalities, and they are consistent with national planning and to promote the participation of the various sectors of society in planning activities;

III. The methodological guidelines for conducting planning activities in its area of jurisdiction;

IV. The development of regional programs referred to in section III of Article 14 of this law, and

V. The implementation of actions to be undertaken in each state, and that are pertinent to both levels of government, considering the share corresponding to the municipalities concerned and sectors of society.

TVQR005842

To this end the Ministry of Finance will propose procedures pursuant to which they agree the implementation of these actions, taking into account the criteria that indicate the industry coordinating units, according to their powers.


ARTICLE 35

At the conclusion of the agreements referred to this chapter, the Federal Executive define participation of organs of public administration centralized in the federal act, in planning activities that carry the respective governments of the entities.


[...]

TVQR005843

GENERAL LAW OF NATIONAL ASSETS
ATTACHMENT 2A-1 DOCUMENT 4
TVQR001103, TVQR001104, TVQR001107- TVQR001109, TVQR001113, TVQR001115,
TVQR001121, TVQR001149, TVQR001150, TVQR001151


ARTICLE 1

This Act is public and general interest and is intended to establish: I. - Assets that are the heritage of the Nation;

II. - The regime of public domain assets of the Federation and of the properties of the decentralized agencies of federal character;

III. - The division of responsibilities among agencies administering property;

IV. - The basis for the integration and operation of the Federal Property Management System and Decentralized agencies and Real Estate Information System and Federal Decentralized agencies, including the operation of the Public Registry of the Federal Property;

V. - The rules for procurement, qualification, management, control, monitoring and disposal of federal property and the property of the entities, other than those regulated by special laws;

VI. - The basis for the regulation of the movable property of the entities, and

VII. - The regulations to regulate the conduct of assessments on domestic goods.

ARTICLE 2

For the purposes of this Act, the term:

I. - Dependencies: those that the Organic Law of Federal Public Administration determined as such including, where appropriate, its decentralized organs II. - Dependencies property managers: the Ministry and the Ministries of the Interior, Environment and Natural Resources , Communications and Transport, Education, and agrarian reform, same as, in relation to the properties federal jurisdiction, shall exercise the powers that this Law and other laws give them the dependencies that are intended for service are not considered federal property as dependencies property managers;

III. - Entities: decentralized agencies such character that determines the Organic Law of Federal Public Administration; IV. - Federation: the order of government in terms of this Act exercised their powers in respect of domestic goods through the legislative, executive or judicial; V. - Public institutions: the organs of the Legislative and Judicial Federation, the Federal District and the states, the departments and agencies of the Federal government, the Federal District Government, state and city, the Attorney General of the Republic, the administrative units of the Presidency of the Republic, and institutions of federal or local autonomy granted by the Constitution of the United Mexican States or the State constitutions;

VI. - Organizations served: public institutions with their service for federal property;

VII. - Federal Property: the land with or without buildings of the Federation, as well as those practicing in the possession, control or business administration degree. Not be considered federal property such lands or buildings owned by third parties under any legal act owns, controls or manages the Federation;

VIII. - Federal Buildings owned and decentralized means all federal buildings and those owned entities, and

IX. - Ministry: the Ministry of Public Service.

ARTICLE 7

Common assets are:

I. - The airspace over the national territory, with the extent and conditions established by international law;

II. - The inland marine waters, according to the Federal Law of the Sea, III. - The territorial sea width set by the Federal Law of the Sea, IV. - The sea beaches, understood as parts of land by virtue tide covers and uncovers the water from the higher limits to the limits of reflux greater annual flow;

V. - The Federal Maritime Zone;

VI. - Ports, bays, harbors and inlets;

VII. - The docks, piers, jetties, piers and other works of the ports, they are for public use;

VIII. - The stream channels and vessels of lakes, lagoons and estuaries of national ownership;

IX. - The banks and federal areas of streams;

X. - dams, levees and vessels, canals, dikes and ditches, built for irrigation, navigation and other uses of public utility, with its zones of protection and rights of way, or banks to the extent that, in each case , set the appropriate unit in the field, in accordance with applicable laws;

XI. - Roads, highways, bridges and railways which are means of communication, with its ancillary services and other integral parts established in federal law of matter;

XII. - The archaeological monuments considered property under the law of the matter;

XIII. - The squares, boulevards and public parks which construction or maintenance is the responsibility of the Federal Government and the buildings erected by the Federal Government in public places for ornament or convenience of those who visit, and

XIV. - Other assets commonly considered by other laws governing national assets.

TVQR005845

ARTICLE 8

All citizens of the Republic can use common assets without restrictions other than those provided by laws and administrative regulations.

For special uses on common assets, requires concession, authorization or permit granted with the conditions and requirements established by law.

ARTICLE 10

Only federal courts have jurisdiction to hear civil, commercial, criminal or administrative, as well as non-contentious legal proceedings that relate to the property subject to the public domain of the Federation, even when disputes relate to rights use thereon.

ARTICLE 16

The concessions, permits and authorizations on goods subject to the public domain of the Federation not create real rights, granted in the administration simply and without prejudice to third parties, the right to make use, exploitation or farms, according to the rules and conditions established by law and the title of the concession, permission or authorization.

ARTICLE 17

The concessions on goods direct control of the nation whose authorization authorizes the sixth paragraph of Article 27 of the Constitution of the United Mexican States, shall be governed by the provisions of the respective regulatory laws.

The Federal Executive may refuse to grant in the following cases:

I. - If the applicant does not meet the requirements of those laws;

II. - If the grant is created grabbing contrary to their interests;

III. - If you decide to undertake, through the Federation or entities, direct exploitation of the resources in question;

IV. - If the goods in question are scheduled to create national reserves;

V. - When affecting national security, or

VI. - If there is a probable cause of public interest.

ARTICLE 29

They correspond to the Ministry, in addition to the powers conferred upon the previous article, the following:

TVQR005846

IV. - Declare, when this is necessary that a specific property is subject to the rules of the Federation public domain, to be included in some of the provisions of this Act;

V. - Issuing the Administrative Agreement target federal property, except sea beaches, the Federal Maritime Zone and reclaimed land;

ARTICLE 30

The Ministry of Education will be responsible for owning, monitor, maintain, manage and control the federal estate considered as archaeological monuments under the law of matter, as well as areas of archaeological monuments.

The federal estate considered as archaeological monuments under the law of matter, not be subject to any license, permit or authorization.

In areas of archaeological monuments, the Ministry of Education through the National Institute of Anthropology and History may only grant permits or authorizations for conducting civic and cultural activities, as provided by the Regulations to that effect is issued, long as it does not affect the integrity, structure and cultural dignity of those areas and monuments, nor contravenes common usage.

When considered federal property archaeological, historical or artistic under the law of matter or the corresponding declaration, are within the federal maritime zone of the reclaimed land, protected natural areas or any other on which, in accordance with applicable laws, applicable to the Ministry of Environment and Natural Resources to exercise its powers, both agencies should jointly establish coordination mechanisms as appropriate.

ARTICLE 49

To meet requests for federal estate agencies, the Attorney General's Office, the administrative units of the Presidency of the Republic and of the entities, the Ministry shall:

VII. - Allocate to dependence, the Attorney General of the Republic, the administrative units of the presidency or the entity concerned federal property available for the intended use.

ARTICLE 120

The Federal Government, through the Ministry of Environment and Natural Resources, promote sustainable use and development of federal maritime and land reclaimed land to the sea. To this end, the agency, previously, in coordination with other matters that under the act must establish the standards and policies, considering the plans and programs of urban development, environmental planning, meeting the requirements of navigation and maritime trade, the country's defense, the boost to fishing and aquaculture, and the promotion of tourism and recreational activities.

The Federal Government, through the Ministry of Environment and Natural Resources may enter into agreements or arrangements with the aim of coordinating the state governments and municipalities, where appropriate, manage, maintain and monitor these assets. Such powers shall

TVQR005847

be exercised in accordance with this Act and other federal regulations and local laws, as well as those that derive from the same  Against acts that produce the state governments and, where appropriate, its municipalities, in exercise of the powers to assume under this provision with respect to individuals, shall resources and means of defense provided for in the Act Federal Administrative Procedure

ARTICLE 121

For purposes of the preceding article, the coordination agreements or arrangements entered into by the Federation, through the Ministry of Environment and Natural Resources, the state governments, with the involvement, if any, of its municipalities, must subject to the following rules:

I. - There will be a proposal by the Federal Executive or the request of a state, when it considers that it has the necessary resources, trained personnel, material and financial resources, and the specific institutional structure for the development of the powers assume;

II. - Establish precisely its purpose, and substances and powers to be assumed and must be consistent with the objectives of the instruments of national development planning and national environmental policy;

III. - Determine the participation and responsibility that corresponds to each of the parties and the goods and resources provided by them, specifying the destination and direction;

IV. - Establish the organ or organs that carry out actions resulting from agreements or coordination arrangements, including assessment, as well as the schedule of activities to be performed;

V. - Define reporting mechanisms that are required, so that the signatory parties to ensure compliance with its object;
VI. - Shall specify the term of the instrument, its forms of modification and termination and, if applicable, the number and duration of its extensions;

VII. - Contain, where appropriate, the technical annexes to detail necessary commitments, and

VIII. - Other stipulations that the parties consider necessary for the proper fulfillment of the agreement or coordination agreement.  Responsibility of the Ministry of Environment and Natural Resources to assess compliance with the commitments made in the coordination agreements or arrangements referred to this article.  This evaluation will be made quarterly, the result must be published in the Gazette of the Unit. In case of default, the Unit may terminate such agreements in advance.

The coordination agreements or arrangements referred to in this Article, as amended, and its termination agreement, to be published in the Official Journal of the Federation and in the official gazette or newspaper of the respective state.

TVQR005848

ARTICLE 127

Licensees and permittees to seize and exploit the Federal Maritime Zone, royalties paid, in accordance with applicable tax laws.

TVQR005849

STATUTE FOR THE USE AND ENJOYMENT OF THE TERRITORIAL SEA, NAVIGABLE WATERWAYS, BEACHES, THE FEDERAL MARITIME-LAND ZONE AND LANDS RECLAIMED FROM THE SEA
ATTACHMENT 2A-1 DOCUMENT 5
TVQR001167, TVQR001170- TVQR001171

ARTICLE 5
The beaches, the Federal Maritime Zone and reclaimed land, or any other deposits forming in marine waters are public property of the Federation, and as inalienable and not change their legal status, are not subject to action claiming possession or permanent or temporary.

Corresponds to the Ministry own, manage, control and monitor the assets referred to this article, except for those that are located within the port, or used as shipyards, docks, docks for ship repair workshops, wharves, and other facilities referred to the Law of Navigation and Maritime Commerce in these cases the competition is for the Ministry of Communications and Transportation.

ARTICLE 22
The Ministry through the relevant agreement, devoted to the service of the departments and agencies of the federal government, the state or local governments, the federal maritime areas of land or land reclaimed from the sea or any other deposit maritime waters requiring use, profit or explode.

The departments or agencies of the Federal Government or state governments or municipalities, in the fulfillment of public purposes charge requiring service are intended for areas of federal maritime or land reclaimed land deposit or other maritime waters, must submit a written request to the Secretary, stating the area required and the use, development or exploitation to be them, attaching sketches of the same location, as well as projects and plans works to be executed and other requirements under the laws and regulations are necessary.

ARTICLE 23
The agencies of the federal government, or state governments or municipalities that meet the requirements of the Act and the Regulations shall have priority over individuals to use, profit or exploit the Federal Maritime Zone, land reclaimed container or other maritime waters.

When the areas required for public purposes or with permits are concessioned, estimate from the Secretary of the causes adduced by the applicants, may issue a declaration of rescue or revoke the permit, as provided by law.

GENERAL LAW FOR SUSTAINABLE FISHING AND AQUACULTURE
ATTACHMENT 2A-1 DOCUMENT 253
TVQR00

ARTICLE 6

The Federation, the States, the Federal District and the municipalities exercise their powers on fisheries and sustainable aquaculture in accordance with the distribution of powers laid down in this Law and other legal provisions.

ARTICLE 8

The Ministry is entitled to exercise the following powers:

I. Regulate, promote and manage the utilization of fisheries resources and aquaculture;

II. Propose, develop, coordinate and implement the national policy of sustainable fisheries and aquaculture as well as plans and programs derived from it;

III. Establish the administrative and control measures to be subject to fishing and aquaculture;

IV. Set allowable catch volumes;

V. Issue the decrees to establish and modify or delete and set times and closed areas;

VI. Set minimum size or weight of the susceptible species capture;

VII. Issue rules for the use, handling, storage and transfer of fisheries and aquaculture resources in terms of the Federal Law on Metrology and Standardization; VIII. To promote and implement actions aimed at harmonizing the approval and with other countries in terms of health, safety and quality of aquatic species;

IX. Evidence the legal origin of the products and by fishing and aquaculture;

X. Agreements and technical cooperation programs in the field of fisheries and aquaculture and propose positions related to these matters that are submitted by the Government of the United Mexican States in various international forums and organizations, in coordination with the Ministry of Foreign Affairs;

XI. To decide on the issuance of licenses and permits in fisheries and aquaculture, in terms of this Act, its regulations and official standards derived from it;

XII. Set methods and measures for the conservation of fishery resources and the repopulation of fishing areas in coordination with the competent authority as well as Regulate refuge areas to protect aquatic species that require it, and set the times and areas closed;

XIII. Propose to the Federal Executive the budget for the fisheries and aquaculture industry, which must include at least the following programs: strengthening the supply chain, fisheries management, organization and training, research and infrastructure;

XIV. Regulate and fix the instrument cluster, gear, equipment, methods, personnel and fishing techniques;

XV. Enabling and promoting fisheries and aquaculture activities and the development of those involved in such activities;

XVI. Coordinate and supervise the operation of the management and control programs fisheries and aquaculture;

XVII. Determine the capture and culture areas, inland and beach fronts, to collect players and the times and volumes shall be subject to the collection;

XVIII. Approve, issue and publish the National Fisheries and Aquaculture National Charter, and updates;

XIX. Set with the participation where appropriate, to other appropriate agencies of the Federal Government, nurseries, farms, seasons and closed areas;

XX. Participate in determining levels of incidence and recognition of free zones and low prevalence of disease and pest fishing and aquaculture;

XXI. Proposing the establishment and regulation of landing sites and storage for fishing and aquaculture operations and promote the competent authorities the location thereof;

XXII. Propose, coordinate and implement the general policy of inspection and surveillance in fisheries and aquaculture, with the participation corresponding to other agencies of the Federal Government;

XXIII. Request and check the accreditation of the legal origin of the products and fishery and aquaculture products, and monitor inventory control during closed seasons;

XXIV. Encourage and promote the production, manufacturing, procurement, marketing, quality, competitiveness and export of fishery and aquaculture products, in all material respects, in coordination with the competent authorities;

XXV. Propose and coordinate national policy of competitiveness of fishery and aquaculture products on the international market;

XXVI. To promote the establishment of aquaculture areas, and the construction of aquaculture production units;

TVQR005852

XXVII. To promote the organization and job training fisheries and aquaculture and providing consultancy services and training to fisheries and aquaculture organizations upon request;

XXVIII. To promote and support research, innovation and technological development of fisheries and aquaculture, as well as strengthening the technological capabilities of the national industry;

XXIX. Coordination with INAPESCA as decentralized public agency responsible for the scientific and technological research in the fisheries and aquaculture national

Fraction amended by the Decree are amended Articles 4, 8 and 29 of the General Law of Sustainable Fisheries and Aquaculture, published in the Official Journal of the Federation on June 7, 2012

XXX. Establish and operate the National Fisheries and Aquaculture Information and National Register of Fisheries and Aquaculture, and keep them updated on an ongoing basis in accordance with applicable laws;

XXXI. Set bases coordination with the departments and agencies of the Federal Government and agreements of concerted action with the productive sectors for the implementation of programs and projects to promote and develop the fisheries and aquaculture activities;

XXXII. Enter into agreements or arrangements for coordination and collaboration with the governments of the states, in terms of this Act;

XXXIII. To promote, in coordination with the appropriate bodies of the public administration, the consumption of seafood and aquaculture;

XXXIV. To promote the inclusion of investment projects in public works portfolio investment programs and projects of the Federal Government, through consultation and collaboration with the three levels of government and fisheries and aquaculture producers;

XXXV. To promote the active participation of communities and producers in the administration and management of fisheries and aquaculture resources, through the National Council of Fisheries and Aquaculture;

XXXVI. Determine, with the participation of research institutions, productive sectors and State Councils of Fisheries and Aquaculture, species restocking areas;

XXXVII. Issue guidelines and carry out the operation of the Mexican Fund for Fisheries and Aquaculture Development;

XXXVIII. Perform inspection and enforcement of this Act, its regulations, official standards and other provisions deriving therefrom;

XXXIX. Determine violations and impose appropriate administrative sanctions for breach or violation of the orders referred to in this Act, and

XL. Other than expressly attributed this Act, its regulations, official standards, and other applicable provisions.

ARTICLE 9

In accordance with the provisions of the Organic Law of Federal Public Administration, SEMARNAT will coordinate with the Ministry to carry out the objectives of this Act, in the preservation, restoration of ecological balance and environmental protection, particularly in the following aspects: I. In protected areas, according to the declaration of establishment or management program, issue-based recommendations, informed and motivated, permits and concessions on fisheries and aquaculture that are intended to provide, and the volumes of bycatch;

II. In the framework of its jurisdiction to carry out the inspection and surveillance of fishing and aquaculture activities and coordinate with the Ministry or Department of the Navy, in accordance with applicable laws;

III. Encourage, promote areas of protection, restoration, rehabilitation and preservation of coastal ecosystems and inland lagunarios, under the terms established in the General Law of Ecological Balance and Environmental Protection;

[...]

IV. To participate in the formulation of the draft National Fisheries Chart, under the terms established in this Act and other applicable; yV. Enact measures to protect the turtles, marine mammals and aquatic species subject to special protection status and determine with the participation of the Ministry and other relevant units. Also establish closures, brownouts, concerning these species.

ARTICLE 10

In accordance with the provisions of the Organic Law of Federal Public Administration, the Department of the Navy, to fulfill the objectives of this Act, in coordination with the Ministry, held: I. Surveillance in the Mexican marine zones and perform required inspections to verify compliance with the provisions on fisheries, in accordance with national legislation and international treaties to which Mexico is a party;

II. The lifting of the inspection if the inspection result of irregularities detected on administrative or criminal or both, it is made available to the competent authority together with the boats, equipment, vehicles, gear, and products related to them where appropriate, as provided in this Act, the Regulations and other applicable provisions, III. Support activities or cooperate where appropriate, the Attorney General, to investigate effects of illegal fishing in Mexican maritime zones, and

IV. Other established other provisions that relate directly to fishing activities.

CHAPTER II coordination

ARTICLE 11

To achieve the objectives of this Act, the Secretary may enter into agreements or coordination agreements with the governments of the states, in order that they, with the participation, if any, of its municipalities, assume the following functions:

I. The administration of permits for sports and recreational fishing;

II. The sustainable management of species that are sessile in estuarine and lagoon systems in territorial waters off its coast, as determined previously in the National Fisheries and Aquaculture in the National Charter;

III. The fisheries management bodies of water that serve two federal limit, or passing from one to another, which also include the inspection and monitoring;

IV. The land and the health of aquaculture developments;

V. Conducting operational actions designed to meet the purposes specified in this order, or

VI. Inspection and enforcement of this Act and other provisions derived therefrom

ARTICLE 12

The coordination and agreements it signs the Federation, through the Ministry, with the governments of the states, with the participation, if any, of its municipalities and the Federal District shall be subject to the following:

I. Set your subject accurately, materials and powers to be assumed, which should be consistent with the national policy of sustainable fisheries and aquaculture;

II. Establish responsibilities and participation of each of the parties, property and resources contributed by each, their destination and method of administration;

III. Be held at the request of one state if it guarantees that features trained human resources and institutional structure to address specific functions assume in accordance with the financial resources to be transferred to fulfill the responsibilities;

IV. Establish the organ or organs that carry out actions resulting from agreements or arrangements for coordination and define the appropriate reporting procedures to ensure compliance with the objectives and

TVQR005855

V. Define the term of the instrument, its forms of modification and termination and, if applicable, the duration of its extensions.

The coordination and agreements, and any amendments thereto, shall be published in the Official Journal of the Federation and the official journal of the respective local government.

CHAPTER III Of the concurrence

ARTICLE 13

Correspond to the governments of the States, in the framework of its jurisdiction in accordance with the provisions of this Act and to establish local laws on the subject, the following powers: I. Design and implement policies, instruments and programs for fisheries and aquaculture State, in accordance with the National Policy Sustainable Fisheries and Aquaculture, linking with national, sectors and regional, as well as their respective National Development Plan ;

II. Develop local policy and practice inspection and monitoring fisheries and aquaculture under the specific agreement signed with the Ministry on these matters and to participate in accordance with the agreements and agreements concluded with the Federation in the prevention and fight against illegal, and in the formulation and evaluation of the Comprehensive Inspection and Surveillance to Combat Illegal;

III. Enter into agreements or arrangements for coordination and collaboration with the federal government on fisheries and aquaculture;

IV. Participate with the competent agencies of the Federal Government in the development of management plans and official rules in accordance with the Federal Law on Metrology and Standardization and other applicable provisions, V. Integrate the State Board of Fisheries and Aquaculture to promote the active participation of communities and producers in the administration and management of fisheries and aquaculture resources and participate in the operation of the Mexican Fund for Fisheries and Aquaculture Development;

VI. To establish, operate and update the State Information System Fisheries and Aquaculture and participate in the integration of the National Fisheries and Aquaculture Information in accordance with applicable laws, as well as integrate and operate the fisheries and aquaculture statistical system state and provide local statistical information to the appropriate federal authorities to update the National Fisheries and Aquaculture National Charter;

VII. To establish, operate and update the Register of Fishing and Aquaculture with public and participate in the integration of the National Register of Fishing and Aquaculture, in accordance with applicable laws;

VIII. To promote and support the construction, improvement and equipping of boats and fishing gear, and the establishment and operation of appropriate financing schemes for the development of fisheries and aquaculture;

IX. Participate in the formulation and implementation of programs for fisheries management and aquaculture;

TVQR005856

X. To promote applied research and technological innovation of fisheries and aquaculture;

XI. To promote the consumption of a greater variety of fishery and aquaculture products;

XII. The application of aquaculture policy instruments, under local laws on the subject, and in matters not specifically assigned to the Federation;

XIII. Coordinate with the Federation, municipalities and other states, land for aquaculture developments;

XIV. To promote public participation mechanisms of the producers in the management and conservation of fisheries and aquaculture resources in accordance with this Act and other federal and local legal provisions applicable; XV. In continental freshwater bodies referred to the fifth paragraph of Article 27 of the Constitution of the United Mexican States, except for inland waters that cover two or more states, the passing from one to another, and transboundary subject to federal jurisdiction:

a) Managing fisheries and aquaculture activities carried out in areas and property within its jurisdiction;

b) Issue, according to their respective legislation, the necessary authorizations;

c) Order, encourage and promote the development of fisheries and aquaculture;

d) Participate with the competent agencies of the Federal Government in determining aquatic species subject to special protection, threatened or endangered;

e) Determine, in accordance with the technical and natural areas capture, cultivation and harvesting;

f) Establish nurseries, nurseries, aquatic reserves and closed areas and seasons, and

g) Participate with the competent agencies of the Federal Government in the official standards development and management plans relating to comprehensive and sustainable exploitation of fisheries resources and aquaculture;

XVI. The exercise of their functions transferred the Federation, as provided by this Act, and

XVII. Others that are not expressly granted to the Federation.

ARTICLE 14

Correspond to the municipalities in the area of its jurisdiction and in accordance with the provisions of this Act and to establish local laws on the subject, the following powers: I. Design and implement policies and programs for municipal fisheries and aquaculture, linking with national, state and regional;

II. Participate in the integration of the State System of Fisheries and Aquaculture Information and State Register of Fisheries and Aquaculture;

III. To promote mechanisms for public participation in the management and conservation of fisheries resources and aquaculture;

IV. Suggest through the State Board of Fisheries and Aquaculture, methods and measures for the conservation of fishery resources and the repopulation of fishing areas;

V. Participate in the formulation of programs for fisheries management and aquaculture;

VI. In coordination with the state government, participate in aquatic health actions, in terms of this Act and local legislation; VII. Promote and encourage aquaculture, in harmony with environmental preservation and conservation of biodiversity, and

VIII. Participate, in accordance with the agreements and agreements concluded with the competent authorities in the inspection and supervision in its jurisdiction.

ARTICLE 15

The Conference of the States, in accordance with their respective Constitutions and the Federal District Legislative Assembly, issued the necessary legal provisions to regulate matters within its jurisdiction under this Act Municipalities, in turn, dictate the sides of police and good government, regulations, circulars and administrative provisions that apply to it in their respective constituencies, are met forecasts of this sort.

In exercising its powers, the States, the Federal District and the municipalities shall observe the provisions of this Law and those derived from it

TVQR005858

REGULATIONS ON THE FEDERAL NAVIGATION LAW
ATTACHMENT 2A-1 DOCUMENT 254
TVQR00

[...]

Article 65
In order to practice inland water transport or coastal shipping, vessels transporting dangerous goods whether in bulk or lump, or whereas such goods in cargo could pollute the environment in case such vessel could break down, must comply with the applicable legal provisions and Mexican official regulations.

[...]

REGULATION FOR THE FEDERAL HEALTH LAW ON THE MATTER OF INTERNATIONAL HEALTH
ATTACHMENT 2A-1 DOCUMENT 255
TVQR00

[...]

"Every person has the right to the protection of their health. The Law shall set forth the rules and conditions to access health services and shall establish the concurrence of the Federation, the Federal District and the States in matters of general public health, as provided in section XVI of Article 73 of this Constitution";

[...]

Whereas, the distribution of competencies on the matter of general healthiness, between the Federation and the States, represents a vigorous advance towards the de-centralization of health services and strengthens the Federal Mexican State;

[...]

STATUE OF THE FEDERAL LAW FOR ECOLOGICAL EQUILIBRIUM AND PROTECTION TO THE ENVIRONMENT ON THE MATTER OF NATURAL PROTECTED AREAS
ATTACHMENT 2A-1 DOCUMENT 256
TVQR00

[...]

Article 2
The application of this Statute corresponds to the Federal Executive through the Ministry of the Environment, Natural Resources and Fishing, without prejudice of the responsibilities corresponding to other Federal Executive departments, to the States, to the Federal District or to the Municipalities, according to the applicable legal provisions in its respective jurisdictional scope.

[...]

Article 5
For the administration of the natural protected area, the following must be adopted:

I.- Guidelines, institutional mechanisms, programs, policies and activities for the purpose of:

   a)   The conservation, preservation, protection and restoration of ecosystems;
   b)   The sustainable use and exploitation of natural resources;
   c)   Inspection and vigilance;

II.- Any measures required to finance its operations;
III.- Any instruments in order to promote the coordination between the different levels of government, as well as the harmonization of activities with the social, private and public sectors;
IV.- Actions in order to promote the training and education of the support technical personnel.

Article 6
The Ministry shall administer the natural protected areas and, in the case of national parks established in Mexican marine zones, such Ministry shall coordinate with the Marine Ministry. When the respective managing programs are established, the latter will be able to grant the Government of the States, the Federal District and Municipalities, as well as to the common lands-*ejidos,* agrarian communities, native towns, social and business groups and organizations, universities, education and research centers, as well as any other interested person or entity, signing for such purposes the coordination agreements or the settlement covenants according to the provisions set forth in Chapter VI herein.

[...]

STATUE OF THE FEDERAL LAW FOR ECOLOGICAL EQUILIBRIUM AND PROTECTION TO THE
ENVIRONMENT ON THE MATTER OF REGULATION AND ENVIRONMENTAL AUDITING
ATTACHMENT 2A-1 DOCUMENT 257
TVQR00

[...]

Article 4
The Office shall promote the granting of Coordination Agreements with other departments and
the Federal, State and Municipal Governments, in the scope of its respective jurisdiction, in order
to impulse Environmental Auditing and Self-regulation processes, as well as to recognize the
Certificate emitted by the Office.

[...]

Article 18
The Action Plan is a document which must include:

    I.       [...]
          a.  [...]
          b.  The remedial measures, which must be applied to equipment, activities,
               processes, programs, procedures, practices, vehicles or any other business
               systems, for the purposes of controlling environmental pollution or restoring,
               recovering, remediation, compensation or mitigation of damages to the
               environment or natural resources.

STATUE OF THE FEDERAL LAW FOR ECOLOGICAL EQUILIBRIUM AND PROTECTION TO THE
ENVIRONMENT FOR THE MATTER OF EVALUATING ENVIRONMENTAL IMPACT
ATTACHMENT 2A-1 DOCUMENT 258
TVQR00

[…]

Article 23
The corresponding authorities of the States, Federal District or Municipalities, may present to the
Ministry, plans and partial programs regarding urban development and ecological regulation,
whereby the activities established in article 5th herein are foreseen, in order that the latter
evaluates the environmental impact of such activities or works and resolves for such purposes.

The foregoing evaluation shall be executed through an environmental impact declaration on its
regional mode, elaborated regarding the complete or part of the works or activities foreseen in
such plans or programs. Such declaration shall be presented by local or municipal authorities.

[…]

TVQR005863

STATUE OF THE FEDERAL LAW FOR ECOLOGICAL EQUILIBRIUM AND PROTECTION TO THE ENVIRONMENT ON THE MATTER ECOLOGICAL REGULATION
ATTACHMENT 2A-1 DOCUMENT 259
TVQR00

Article 1
The purpose of this Statue is to regulate the provisions set forth in the Federal Law for Ecological Equilibrium and Protection to the Environment on the matter of ecological regulation regarding Federal jurisdiction, as well as to set the principles which must guide the Federal Government's actions on the following matters.

[...]

IX. The signing of agreements for the purposes of executing joint actions on the matter of ecological regulation with the State Governments, its municipalities or the Federal District and its departments;

X. The arrangement to execute the projects regarding the ecological regulation process with any persons, organization, private or social entities and groups;

[...]

Article 6
The ecological regulation shall be executed as a planning process to promote:

I. Creation and instrumentation of coordination mechanisms between the departments and entities of the Federal Public Administration as well as the Government of the States, Municipalities or the Federal Districts and its departments;

[...]

Article 47
The Ministry shall submit to a public consult process, with the concurrence of local governments according to the provisions set forth in the respective agreements, the final product of the regional ecology regulation project and characterization according to the following principles:

I. The execution of planning workshops in order to promote social participation;
II. The publish of a notice whereby the place in which in the information established herein will be able to be consulted, as well as the term and procedures established in order to receive proposals and proceed according to the provisions set forth in article 27th herein. The notice shall be published in the official media of the State and Federal District, of the corresponding area according to the corresponding agreements.

TVQR005864

STATUE OF THE FEDERAL LAW FOR ECOLOGICAL EQUILIBRIUM AND PROTECTION TO THE
ENVIRONMENT FOR THE MATTER OF CONTROL AND PREVENTION OF ATMOSPHERIC POLLUTION
ATTACHMENT 2A-1 DOCUMENT 260
TVQR00

[...]

Article 5

The application of this Statute corresponds to the Federal Executive through the Ministry of the
Environment, Natural Resources and Fishing, without prejudice of the responsibilities
corresponding to other Federal Executive departments, to the States, to the Federal District or to
the Municipalities, according to the applicable legal provisions in its respective jurisdictional scope.

The authorities of the Federal District, States and Municipalities, may participate may assist the
Federation, in order to apply the provisions set forth herein to attend federal competency
matters, according to the provisions established in the corresponding coordination instruments.

[...]

TVQR005865

SPECIFIC AGREEMENT FOR THE ADOPTION OF DUTIES REGARDING WILDLIFE ENTERED INTO BY THE FEDERAL EXECUTIVE BRANCH, THROUGH THE MINISTRY OF THE ENVIRONMENT AND NATURAL RESOURCES, AND THE STATE OF TAMAULIPAS
ATTACHMENT 2A-1 DOCUMENT 14
TVQR001386

[...]

The Political Constitution of the United Mexican States establishes, in article 4, that every person has a right to an environment which is adequate for such person's wellbeing and development. Additionally, pursuant to what is established in article 73 section XXI-G of such Constitution, the principle of concurrence between the States, as members of the federation, is regulated so that they may actively take part in the protection, preservation and restoration of natural resources.

(...)

That an inescapable imperative in our country is to address the demands and expectative of each of the different social sectors by means of a decision which best serves to resolve each type of necessity.

[...]

Whereas, the process of decentralization driven by SEMARNAT has the purpose among others, of increasing the efficacy of environmental management and allowing of a wider and jointly responsible participation between the three levels of government, in order to contribute to the consolidation of a true federalism in Mexico.

Whereas, the federal government through the SEMARNAT has initiated a program for institutional development on environmental matters which has the purpose of fortifying at a basic level of institutional development all federal States in the country so that they may be better equipped to handle priority problems and opportunities in environmental matters as well as for natural resources.

[...]

Whereas, the institution of Federalism that the Federal Government has chosen to implement is intended to fortify the political, legal and economic capacities and authorities of State and Municipal governments.

[...]

AGREEMENT BY MEANS OF WHICH THE SURFACE OF 801,408.43 SQUARE METERS, MADE UP BY 684,366.65 SQUARE METERS OF THE FEDERAL COASTAL ZONE AND 117,042.18 SQUARE METERS OF LAND RECLAIMED FROM THE SEA, IS DESTINED TO THE SERVICE OF THE GOVERNMENT OF TAMAULIPAS, SUCH LAND BEING FOUND IN LA PESCA, MUNICIPALITY OF SOTO LA MARINA, STATE OF TAMAULIPAS, SO IT MAY BE USED FOR THE PURPOSE OF ESTABLISHING A PUBLIC BEACH TO BE ENJOYED BY NATIONAL AND INTERNATIONAL TOURISTS
ATTACHMENT 2A-1 DOCUMENT 53
TVQR001938

Whereas, within the public domain assets owned by the Federation there is a land lot measuring 801,408.83 m2 made up by 684,366.65m2 of federal maritime land zone and 117,402.18 m2 of land reclaimed from the sea located in the town of La Pesca, Municipality of Soto la Marina State of Tamaulipas which is dully identified in plans no. SCZFP-01 Dated October 2006 drafted by the government of the State of Tamaulipas reviewed by the Office of the federal maritime land zone and coastal environments which are located in file 1484-tamps-2006 of the archives of such office which description, technical and topographic is mentioned in article 1 of this agreement.

Whereas, on November 8th 2006 the government of the State of Tamaulipas requested that the aforementioned land be destined to its service with the purpose of using it as a public beach for the use and enjoyment of national and international tourists.

[...]

Article 1 The land lot measuring 801,408.83 m2 made up by 684,366.65m2 of federal maritime land zone and 117,402.18 m2 of land reclaimed from the sea located in the town of La Pesca, Municipality of Soto la Marina State of Tamaulipas is hereby destined for the service of the Government of the State of Tamaulipas.

[...]

TVQR005867

COORDINATION AGREEMENT ENTERED INTO BY THE MINISTRY OF THE ENVIRONMENT, NATURAL RESOURCES AND FISHING, THE STATE OF QUINTANA ROO AND THE MUNICIPALITIES OF COZUMEL, FELIPE CARRILLO PUERTO, ISLA MUJERES, OTHÓN P. BLANCO, BENITO JUÁREZ, LÁZARO CÁRDENAS Y SOLIDARIDAD, FOR THE SUSTAINABLE UTILIZATION, ENJOYMENT AND TAXATION OF THE BEACHES, FEDERAL MARITIME-LAND ZONE, AND LAND RECLAIMED FROM THE SEA, AT THE COASTAL MUNICIPALITIES OF THE STATE OF QUINTANA ROO
ATTACHMENT 2A-1 DOCUMENT 78
TVQR002194 – TVQR002196

[...]

Additionally, in order to ensure through our policy of federalism that proper acknowledgment is given to the autonomy of political communities and proper respect is given to the scope of jurisdiction held by each of the levels of government, and with the purpose of articulating, articulating, effectively and harmonically, the sovereignty of the States and the liberty of the Municipalities with the Constitutional authority of the Federal Government.

III. The special program for sustainable enjoyment of the beaches, federal maritime land zone and land reclaimed from the sea 1996-2000 sets forth among its principal objectives the establishment of an integral management of such beaches, federal maritime land zone and land reclaimed from the sea in order to ensure a sustainable enjoyment of our coastal natural resources and the right of all Mexicans to enjoy them, thereby cooperating with the planning and zoning of all coastal townships, encouraging investments and ensuring efficient administration.

[...]

V. The federal law on fees which is currently in effect, establishes that in any cases where federal entities and municipalities have entered into an Administrative Collaboration Agreement in Federal Tax Matters with the Ministry of the Treasury and Public Credit, any income obtained through the collection of fees for the use, enjoyment or exploitation of real properties located within the federal maritime land zone, may be destined to monitoring, management, upkeep, preservation and cleanup of such zone, as well as for the performance of any services required therein.

[...]

5. To fortify the institutional authority of State and Municipal Governments in matters of regulations in the federal maritime land zone and lands reclaimed from the sea with the purpose of ensuring a proper and correct collaboration of the operational management functions and control of the beaches, federal maritime land zone and land reclaimed from the sea.

[...]

SEVENTH For proper compliancy of the objectives established herein, the State must:

[...]

TVQR005868

COORDINATION AGREEMENT ENTERED INTO BY THE MINISTRY OF THE ENVIRONMENT, NATURAL RESOURCES AND FISHING, THE STATE OF VERACUZ-LLAVE AND THE MUNICIPALITIES OF VERACRUZ, TUXPAN, COATZACOALCOS, BOCA DEL RÍO, TECOLUTLA, ALVARADO, ACTOPAN, URSULO GALVÁN, TAMIAHUA, CAZONES DE HERRERA, TAMPICO ALTO, CATEMACO, SAN ANDRÉS TUXTLA, VEGA DE ALATORRE, ALTO LUCERO, NAUTLA, AGUA DULCE, PAPANTLA, OZULUAMA, LA ANTIGUA, LERDO DE TEJADA, ANGEL R. CABADA, TATAHUICAPAN, MECAYAPAN, PAJAPÁN, TAMALÍN, TANTIMA, MEDELLÍN, PÁNUCO, PUEBLO VIEJO AND MARTÍNEZ DE LA TORRE, FOR THE SUSTAINABLE UTILIZATION, ENJOYMENT AND TAXATION OF THE BEACHES, FEDERAL MARITIME-LAND ZONE, AND LAND RECLAIMED FROM THE SEA, AT THE COASTAL MUNICIPALITIES OF THE STATE OF VERACUZ
ATTACHMENT 2A-1 DOCUMENT 138
TVQR002981 – TVQR002983

[...]

Additionally, in order to ensure through our policy of federalism that proper acknowledgment is given to the autonomy of political communities and proper respect is given to the scope of jurisdiction held by each of the levels of government, and with the purpose of articulating, articulating, effectively and harmonically, the sovereignty of the States and the liberty of the Municipalities with the Constitutional authority of the Federal Government.

III. The special program for sustainable enjoyment of the beaches, federal maritime land zone and land reclaimed from the sea 1996-2000 sets forth among its principal objectives the establishment of an integral management of such beaches, federal maritime land zone and land reclaimed from the sea in order to ensure a sustainable enjoyment of our coastal natural resources and the right of all Mexicans to enjoy them, thereby cooperating with the planning and zoning of all coastal townships, encouraging investments and guaranteeing efficient administration.

[...]

V. The federal law on fees which is currently in effect, establishes that in any cases where federal entities and municipalities have entered into an Administrative Collaboration Agreement in Federal Tax Matters with the Ministry of the Treasury and Public Credit, any income obtained through the collection of fees for the use, enjoyment or exploitation of real properties located within the federal maritime land zone, may be destined to monitoring, management, upkeep, preservation and cleanup of such zone, as well as for the performance of any services required therein.

[...]

5. To fortify the institutional authority of State and Municipal Governments in matters of regulations in the federal maritime land zone and lands reclaimed from the sea with the purpose of ensuring a proper and correct collaboration of the operational management functions and control of the beaches, federal maritime land zone and land reclaimed from the sea.

[...]

SEVENTH For proper compliancy of the objectives established herein, the State must:

TVQR005870

[...]

II. Channel its own resources in order to finance all operational actions of the programs for sustainable development of the federal maritime land zone within its territory.

[...]

TVQR005871

COORDINATION AGREEMENT ENTERED INTO BY THE MINISTRY OF THE ENVIRONMENT, NATURAL RESOURCES AND FISHING, THE STATE OF TAMAULIPAS AND THE MUNICIPALITIES OF MATAMOROS, SAN FERNANDO, SOTO LA MARINA, ALDAMA, ALTAMIRA AND CIUDAD MADERO, FOR THE SUSTAINABLE UTILIZATION, ENJOYMENT AND TAXATION OF THE BEACHES, FEDERAL MARITIME-LAND ZONE, AND LAND RECLAIMED FROM THE SEA, IN THE COASTAL MUNICIPALITIES OF SUCH STATE
ATTACHMENT 2A-1 DOCUMENT 54
TVQR001983 – TVQR001986

[...]

Additionally, in order to ensure through our policy of federalism that proper acknowledgment is given to the autonomy of political communities and proper respect is given to the scope of jurisdiction held by each of the levels of government, and with the purpose of articulating, articulating, effectively and harmonically, the sovereignty of the States and the liberty of the Municipalities with the Constitutional authority of the Federal Government.

III. The special program for sustainable enjoyment of the beaches, federal maritime land zone and land reclaimed from the sea 1996-2000 sets forth among its principal objectives the establishment of an integral management of such beaches, federal maritime land zone and land reclaimed from the sea in order to ensure a sustainable enjoyment of our coastal natural resources and the right of all Mexicans to enjoy them, thereby cooperating with the planning and zoning of all coastal townships, encouraging investments and ensuring efficient administration.

[...]

V. The federal law on fees which is currently in effect, establishes that in any cases where federal entities and municipalities have entered into an Administrative Collaboration Agreement in Federal Tax Matters with the Ministry of the Treasury and Public Credit, any income obtained through the collection of fees for the use, enjoyment or exploitation of real properties located within the federal maritime land zone, may be destined to monitoring, management, upkeep, preservation and cleanup of such zone, as well as for the performance of any services required therein.

[...]

5. To fortify the institutional authority of State and Municipal Governments in matters of regulations in the federal maritime land zone and lands reclaimed from the sea with the purpose of ensuring a proper and correct collaboration of the operational management functions and control of the beaches, federal maritime land zone and land reclaimed from the sea.

[...]

SEVENTH For proper compliancy of the objectives established herein, the State must:

[...]

6. To cooperate in all matters regarding control and vigilance performed by the SEMARNAP in the beaches, federal maritime land zone and land reclaimed from the sea providing any assistance whatsoever as may be required.

[...]

II. Channel its own resources in order to finance all operational actions of the programs for sustainable development of the federal maritime land zone within its territory.

TVQR005873

RESOLUTION WHEREBY A SURFACE OF 5,082.01 M2 MADE UP OF 1,843.26M2 OF FEDERAL MARITIME-LAND ZONE AND 3,238.78 M2 OF LAND RECLAIMED FROM THE SEA, IS DESTINED AT THE SERVICE OF THE STATE GOVERNMENT OF VERACRUZ, LOCATED AT THE MUNICIPALITY OF NAUTLA, STATE OF VERACRUZ
ATTACHMENT 2A-1 DOCUMENT 143
TVQR003017 – TVQR003018

[...]

Article 1 The surface of 5,082.01 m2 made up by 1,843.26 m2 of federal maritime land zone and 3,238.78 m2 of land reclaimed from the sea located in the town of Raudal, Municipality of Nautla, State of Veracruz, is hereby granted to the service of the government of the State of Veracruz through the Ministry of the Environment so that they may be used as a turtle camp with the following technical and topographic description.

[...]

RESOLUTION WHEREBY A SURFACE OF 5,089.25 M2 OF FEDERAL MARITIME-LAND ZONE LOCATED IN SM-86, MZ 02, PLOTS 08 AND 07, CANCUN, IS DESTINED AT THE SERVICE OF THE MUNICIPALITY OF BENITO JUAREZ, STATE OF QUINTANA ROO, FOR PUBLIC BEACH
ATTACHMENT 2A-1 DOCUMENT 93
TVQR002776 – TVQR002777

[...]

Article 1. The surface of 5,089.25 m2 of federal maritime land zone located in SM-86 MZ 02, Lot 08 and 07, Colonia Zona Hotelera, Playa del Niño, Localidad de Cancun, Municipio de Benito Juarez, Estado de Quintana Roo, is destined to the Service of the Municipality of Benito Juarez, to be generally used as a public beach, with the following technical-topographical description:

[...]

TVQR005875

RESOLUTION WHEREBY A SURFACE OF 12,701.22 SQUARE METERS OF FEDERAL MARITIME-LAND ZONE AND LAND RECLAIMED FROM THE SEA, LOCATED IN CIRCUNVALACIÓN AEROPUERTO NÚMERO 245, MUNICIPALITY OF ISLA MUJERES, STATE OF QUINTANA ROO, IS DESTINED AT THE SERVICE OF THE MUNICIPALITY OF SOLIDARIDAD, FOR THE PURPOSE OF USING SUCH ZONE FOR THE PROTECTION OF MARINE TURTLES
ATTACHMENT 2A-1 DOCUMENT 96
TVQR002783

[...]

ARTICLE FIRST. The surface of 12,701.22 m2 of federal maritime land zone and land reclaimed from the sea located in Av. Circunvalacion Aeropuerto No. 245, Municipio de Isla Mujeres, Estado de Quintana Roo, is hereby granted to the service of the government of the Munipality of Isla Mujeres, in the State of Veracruz, so that they it may be used to protect the marine turtles.

[...]