

# EXPERT REPORT

Julio César Cruz Chavira, MBA, LLM, PhD.

jccchmx@gmail.com

1

## I.     Statement of Qualifications

a.   I am a Mexican citizen, of legal age, with domicile in the City of Monterrey, Nuevo Leon, Mexico, and have been a licensed attorney since 1995; I have been a legal scholar and professor as well as a consultant in environmental law for the Government of the State of Nuevo Leon and the Municipalities of such state, I have worked as a Legal Officer for environmental corporations, coordinated and led a legal research project focused on legal aspects of sustainable development and served as a Judge in the Municipal Office of Public Safety of the Municipality of Chihuahua.

b.   I received my law degree, with honors, from the Universidad Autonoma de Chihuahua (Autonomous University of Chihuahua) in 1995, presenting a thesis titled: "Challenges for Mexican professionals before the North American Free Trade Agreement", since then, I have been duly licensed to practice as an attorney.

c.   I received my Master's Degree in Administration (MBA) in 1998, from the Escuela de Graduados de Administración y Dirección de Empresas (EGADE Business School, ITESM).

d.   In 1999 and 2001 I studied to receive a Ph.D. from Tulane University in New Orleans, specializing in International Commercial Law.

e.   I also received a Master´s Degree in International Commercial Law from the EGADE Business School in 2002, with the thesis: "Transboundary Movement of Hazardous Wastes Under the Basel Convention".

f.   In 2012 I received my Doctorate in Humanistic Studies specializing on Ethics from the Instituto Tecnologico y de Estudios Superiores de Monterrey (ITESM), with the thesis: "Ethical Responsibilities in the enforcement of environmental law. A victim´s perspective".

g.   I have been admitted as a member of the Nuevo Leon chapter of the Mexican College of Lawyers and Bar Association, serving in the Environmental Law Committee from 2004 to 2006.

h.   Have participated in and obtained diplomas for several seminars and certification courses, including:

-   "Implementing the ISO-140001 Norm for companies" 1996, Center of Environmental Quality, ITESM, Monterrey
-   "Water Quality Certification Course" 1996, Center of Environmental Quality,

ITESM, Monterrey

- "Latest Developments in Environmental Legislation" 1997, Center of Environmental Quality, ITESM, Monterrey
- "Environmental Quality Diploma Course" 1998, Center of Environmental Quality, ITESM, Monterrey
- "Legal Course on policies and a free trade agreement between Mexico and the European Union" 2000, Tulane Center for European Union Law, Brussels and Luxembourg
- "Course on Sustainable Development" 2003, ITESM, Monterrey
- "Chornos, from personal values to corporate action", 2004, ITESM, Monterrey
- "Negotiating Environmental Agreements"2004, ITESM/MIT, Monterrey
- "Ethics and Human Rights" 2005, ITESM, Monterrey
- "Valorization of biodiversity from an ecological, evolution and ethical point of view" 2005, ITESM, Monterrey
- "Diploma on Environmental Law" 2009, ITESM/PROFEPA, Monterrey

i.   I have taught Environmental Law courses at the ITESM, Mexico´s most prestigious University, since 1999.

j.   I have worked and coordinated the performance of "pro bono" legal services at BUFETEC, a free legal firm operated by law students at the ITESM Law School that also provides legal counseling for those who can't afford an attorney in the Monterrey Metropolitan area.

k.   From 2004 to 2006 I worked as a legal consultant of environmental law for the City of Monterrey, N.L.

l.   From 2004 to 2009 I worked as a legal consultant of environmental law for the Government of the State of Nuevo Leon.

m.   I worked at the legal department of the company Promotora Ambiental (PASA) Industrial Group Corporate GEN dedicated to the collection of non-hazardous industrial solid waste.

n.   From 1998 to 1999 I worked in the Legal Inter-American Trade Center (JURICI) at the ITESM, in the research and advisory project called "Legal Action for Sustainable Development."

o.   I worked as an environmental law researcher at the Environmental Quality Center from June 1996 to December 1998.

Considering the foregoing, based on my legal expertise, training, education, and experience,

I am fully qualified to provide the expert legal opinions on Mexican Law with a focus on Environmental Matters, and contained in this report, supporting such opinions with my professional experience of over 17 years, and over 16 years spent in different ways to environmental law.

## EXPERT´S OPINION

**The Mexican States of Tamaulipas, Veracruz, and Quintana Roo have the standing, capacity, right, and duty to pursue compensation and damages for the consequences of the Deepwater Horizon Oil Spill on April 20, 2010. The States of Tamaulipas, Veracruz, and Quintana Roo hold proprietary interests over the natural resources, flora and fauna, estuaries, beaches, mudflats, swamps, waters, and other such features in and along their coastlines, as well as a duty and obligation to ensure the preservation and abatement of environmental pollution over all such features.**

### I.    General characteristics of Mexican Law

The Government of the Mexican Republic is organized into one federal, democratic, and representative republic, made up by 31 free and sovereign States and one Federal District, all joined together into one federation: the United Mexican States, which are governed by three powers: legislative, executive and judiciary.

A Federal State is such that is constituted through an agreement between several free and sovereign states, located within a territory, having as purpose the creation of a new state entity which is superior to such states in order for it to harmonize the existence of all such individual states and, at the same time, to provide them with a greater ability of defense, without taking their freedom or canceling their original individuality, namely, a Federal State is created by virtue of the states granting it attributions originally corresponding to such states with the purpose of creating a superior and sovereign state which represents them abroad and achieves political, social, and economic harmony within its territory; the foregoing without stripping the states of their autonomy.[1]

The fundamental characteristics of a federal state are:[2]
a)   A Constitution which creates two delegated and subordinated orders which are coordinated between each other.
   b)   A distribution of the political power through a precise scheme of division of powers.
   c)   The states have autonomy and grant themselves their own fundamental law for their internal regime.
   d)   There is a coexistence of legal norms of national validity and legal norms of local validity.

---

[1] BASAURI OCHOA, Federico. Mexican Federalism *(El Federalismo Mexicano)*. For more information, please consult the original source at:  <http://documents.idsupra.com/aa4a582d-362a-4f8d-9723-10c6dafe009d.pdf. >
[2] *Op. Cit.* BASAURI OCHOA.<http://documents.idsupra.com/aa4a582d-362a-4f8d-9723-10c6dafe009d.pdf>

4

    e)   In virtue of the nature of the federal agreement, states intervene in the constitution reform process.

    f)   It is granted with full legal capacity in the international field, allowing the federal state to act as a sovereign political unit before other States.

    For example, the Political Constitution of the Free and Sovereign State of Veracruz-Llave, Chapter II, On Human Rights, (Amended, G.O. January 29th, 2007), states in its Article 4th that, men and women are subject to the same rights and obligations under the law.[3]

    Addressing our matter, the eighth paragraph of the foregoing article states that: the authorities of the State, in their corresponding sphere of authorities, has the duty to generate the necessary conditions for the persons to enjoy the rights provided in this Constitution; as well as to protect such reserved to the people of Veracruz through the trial of human rights protection. The violation thereof shall result in the corresponding sanction and, if applicable, repairing the damage, pursuant to the law.[4]

    As fundamental part of the attributions of the States, we find Article 8 (Amended, G.O. August 3rd, 2012) which clearly provides that the State residents are entitled to live and grow in a healthy, ecologically balanced and sustainable environment, for their welfare and human development.[5]

    **As if valid arguments to justify a true right by the federative state and their attributions were missing, the second paragraph of the same article 8th provides that the state authorities shall develop plans and programs destined to preserve, rationally use, and improve natural resources, the flora and fauna located in its territory, including estuaries, beaches, mudflats, swamps, and other such features, as well as preservation and abatement of environmental pollution. Also, they shall carry out prevention, adaptation and mitigation actions against the effects of climate change.[6]**

    Also, the population is "empowered" by granting them duties such as those provided in the third paragraph: persons shall be equally liable in the preservation, restoration, and equilibrium of the environment, as well as of the prevention, adaptation, and mitigation actions against the effects of climate change having, for such purpose, the ability to exercise class actions before the competent authority, in order for the latter to address the corresponding issue in this matter.[7]

    Therefore, there are norms of national validity, issued by the central legislative body, and norms of local validity, issued by the legislative body of each State in which the territory is divided. For the application of the former, there are central governmental bodies,

---

[3] For more information, please consult the original source at:
http://www.ordenjuridico.gob.mx/Documentos/Estatal/Veracruz/wo21745.pdf
[4] Op. Cit. <http://www.ordenjuridico.gob.mx/Documentos/Estatal/Veracruz/wo21745.pdf>
[5] Op. Cit. <http://www.ordenjuridico.gob.mx/Documentos/Estatal/Veracruz/wo21745.pdf>
[6] Op. Cit. <http://www.ordenjuridico.gob.mx/Documentos/Estatal/Veracruz/wo21745.pdf>
[7] Op. Cit. <http://www.ordenjuridico.gob.mx/Documentos/Estatal/Veracruz/wo21745.pdf>

Dr. Julio César Cruz Chavira, MBA, LLM, PhD.          E-mail jccchmx@gmail.com

with jurisdiction in the entire country, and for the application of the latter, local governmental bodies.

In Mexico, we find that if we examine other constitutional articles such as 73, 117, 118 and 130 we can observe that there are authorities which are broad exceptions to the general rule established in article 124 and, legal scholars such as Jorge Carpizo states in its criteria to classify the attributions of the federation and the states, there are:

a) Authorities attributed to the federation
b) Authorities attributed to the states
c) Authorities prohibited to the federation
d) Authorities prohibited to the states
e) Coincident authorities
f) Coexistent authorities
g) Auxiliary authorities
h) Authorities arising from jurisprudence

The States of Veracruz, Quintana Roo and Tamaulipas have implemented procedures and have committed resources, methodology and processes which are necessary to properly asses, restore, and protect the environment in the case at hand "Deepwater Horizon Oil Spill" since April 20, 2010.

From the wide range of characters distinguishing the Mexican environmental laws from others, the following may be stated:

- It is very difficult or impossible to set the Environmental Law down in a code, therefore it is established through numerous Federal, State and Local laws and regulations.[8]
- Environmental rights have economic interests even though it is difficult to calculate their monetary value or to be subject of appropriation.

Article 4th, paragraph fifth of the Political Constitution of the United Mexican States, supplemented on June 28th, 1998, recognizes the subjective right of every individual to a proper environment for their development and welfare. Also, the preservation and restoration of the ecological balance and the environment protection in the national environment is directly regulated in the constitution, given the relevance of this matter.

In a federal State, it is indispensable to establish the competence at the federal or state levels. Therefore, there is an overlap of governmental structures: one being the Federation and the other its member States, which are interrelated between each other and which coincide in their duties and functions.[9]

The federal Constitution which coexists with the constitutions of the member States, having as a result a double jurisdiction and, therefore, there shall be a distribution of

[8] CABRERA ACEVEDO, Lucio "The Right to a safe environment" ("*El Derecho a un medio ambiente adecuado*"). I. Environment and development. Fragment from the book "The Constitution and the environment" ("*La Constitución y el Medio Ambiente*") (Section 4), pages 5-7
[9] *Op. Cit.* BASAURI OCHOA. <http://documents.jdsupra.com/aa4a582d-362a-4f8d-9723-10c6dafc009d.pdf> p. 9

Dr. Julio César Cruz Chavira, MBA, LLM, PhD          E-mail jccchmx@gmail.com

6

competences among both government levels to have an internal harmony among all the member States and, also, to set a territorial unity of nationality and for it to be a sovereign entity outside of the Mexican territory.[10]

Political Constitution of the United Mexican States defines the field of action of each of them in its article 124 which provides the general principle and states that: "The authorities not expressly granted by this Constitution to the federal officers, are reserved to the States"[11]

Felipe Tena Ramirez, while referring to concurrent authorities, states that:[12]

*"The authorities that may be exercised by the States as long as they are not exercised by the federation*, constitutional holder thereof, are called in the American law as concurrent authorities. For example, the States were able to exercise the authority to legislate in bankruptcy matters, and in fact they did, since the Union failed to exercise thereof; when the latter decided to enforce its right, issuing the corresponding law, all the laws issued by the States regarding bankruptcy matters were automatically revoked and their authority to legislate in such matter was terminated."(...)

## A.  Risk activities

**Even though the Mexican Constitution establishes that the authorities held at a federal level are concurrent and therefore may be applied and enforced by the States, many times, due to the lack of resources necessary for the prevention, cleanup and restoration of environmentally harmful accidents, the States end up doing the work of the Federation itself, due to the harmful nature and negative impact of such accidents the States must act before receiving clearance to do so from federal authorities, considering that the laws of each State require that it protect its environment and citizens at all costs and regardless of jurisdictional matters.**

The Constitution defines the scope of the jurisdictions between the Federation and States through a rule stating that the authorities not reserved to the Federation, are reserved to the States.[13]

## B.  Environmental aspects

Mexican legislation provides for cooperation and concurrency between the Federal and State levels of government, however, most of the time, the States end up doing the federation's job.

---

[10] *Op. Cit.* BASAURI OCHOA. <http://documents.jdsupra.com/aa4a582d-362a-4f8d-9723-10c6dafc009d.pdf> p. 9
[11] *Op. Cit.* BASAURI OCHOA. <http://documents.jdsupra.com/aa4a582d-362a-4f8d-9723-10c6dafc009d.pdf> p. 10
[12]     For     further     information,     please     see     the     original     source     of     this     information: <http://sncedj.ijf.cjf.gob.mx/Doctos/DerechoConstitucional/DerechoConstitucional/Docs/Eval18Preg4.pdf>   Note: This information has been taken from its original source with the sole purpose of showing argumentatively the existence of the concurrence principle. Reference has not been made to the original author of this information given that the site from which this information was obtained, failed to provide further data.
[13] Legal framework of the environmental local regulation.
<http://www.juridicas.unam.mx/publica/librev/rev/gac/cont/39/pr/pr4.pdf>

Dr. Julio César Cruz Chavira, MBA, LLM, PhD          E-mail jccchmx@gmail.com

Considering the foregoing, during and after the Deepwater Horizon oil spill, there was a material impact on the environment which became evident, therefore, the States must and have acted in order to restore and preserve the wellbeing of its citizens, resources, assets, and wildlife; The States were forced to act ipso-facto in order to comply with their duty to protect the health of their citizens and environment.

## II.  Concurrence and Co-responsibility

As previously provided, the constitutional reform establishes to proceed to the decentralization in environment protection and preservation matters as well as in matters of restoring ecological balance through a concurrent system between the Federation, States and Municipalities. [14]

The concurrence system proposed by the General Law of Ecologic Balance and Environment Protection comes from two fundamental norms.

The first one is the transfer of authority to regulate and manage from the federation to the states. The second one is the need to transfer such authority to the States and their Municipalities, for decentralization.[15]

In this way, the law provides the decentralization in favor of the States and Municipalities the faculty to prevent and control the pollution of the atmosphere; to participate in the prevention and control of water pollution; to create ecological reserves of State and Municipal interest and to establish and apply the sanctions[16].

Notwithstanding the foregoing, the law provides that the authorities reserved to the Federation may be subject of coordination agreements between the States and Municipalities, which opens the way to expand, gradually, its participation in the ecologic policies.[17]

In Article 29 of the General Law of Ecological Balance and Environmental Protection (LGEEPA) the States are authorized to act on contingencies such as the Deepwater Horizon oil spill.

Pursuant to constitutional Article 73 Section XXIX-G, the authority of congress to issue laws providing the concurrence of the Federal, State and Municipal Governments in environmental protection and preservation and restoration of ecological balance matters is provided.[18]

---

[14] Legal framework of the environmental local regulation.
<http://www.juridicas.unam.mx/publica/librev/rev/gac/cont/39/pr/pr4.pdf> pp. 27
[15] Legal framework of the environmental local regulation.
<http://www.juridicas.unam.mx/publica/librev/rev/gac/cont/39/pr/pr4.pdf> pages. 27-28
[16] Legal framework of the environmental local regulation.
<http://www.juridicas.unam.mx/publica/librev/rev/gac/cont/39/pr/pr4.pdf> page. 28
[17] Legal framework of the environmental local regulation.
<http://www.juridicas.unam.mx/publica/librev/rev/gac/cont/39/pr/pr4.pdf> page. 28
[18] *Op. Cit.* SORIANO NUNCIO, Angelina. FLORES MATA, Amira and MARTINEZ HERNANDEZ, Laura.

Under this concurrence principle, the States of Tamaulipas, Veracruz and Quintana Roo hold the authority and capacity needed to act before international courts demanding the compensation for the damages caused to them by the Deepwater Horizon oil spill, since the interests that such States are trying to protect do not contradict the authorities of the Federation. On the contrary, the States are trying to preserve and protect the environment as well as to achieve the public good of their population.

In this particular case of the Deepwater Horizon Oil Spill, the Federation convened a meeting in November of 2010, with the purpose of "coordinating the legal actions which may take place arising from the oil spill that occurred in the Gulf of Mexico"[19]. The Federation explored their own set of damages, and invited the States to share the evidence against the responsible parties, but reiterated and reinforced, that the States were able to pursue any actions necessary to recover their own damages and compensation through this litigation. The Republic recognized and acknowledged that by November 2010, the States of Tamaulipas, Veracruz, and Quintana Roo, had already filed their claims against Defendants.

Another prime example is the direct participation of both the State of Veracruz and Mexico´s Federal Ministry of the Environment and Natural Resources in the International Forum: Sustainable Management of the Gulf of Mexico Living Marine Resources, which took place in February 2011 and was held in the State of Veracruz, among the active participants were: the SEMARNAT, SAGARPA, WWF, CONANP, NOAA, CONAPESCA, GEF, UNIDO, the Universidad Veracruzana (University of Veracruz), the Acuario de Veracruz (Veracruz Aquarium) and the Government of the State of Veracruz[20] As we can see in the attached Agenda, the State of Veracruz, and other entities thereof, had a recognized and independent direct participation in this international event, in addition to the Mexican Federal Government and its environmental agencies.

Also, article 7 section XVIII related to article 11 states that through the Ministry of Environment and Natural Resources (Secretaría del Medio Ambiente y Recursos Naturales) (SEMARNAT, for its acronym in Spanish) the federation may execute coordination agreements or contracts authorizing the State to act through actions to protect, preserve, and restore the ecological balance and environmental protection in the federal maritime terrestrial zone, as well as in the federal zone of water bodies considered as nationals.[21]

Under these arguments and legal grounds, I conclude that the States have the right to demand compensation for the damages caused by the responsible parties of the Deepwater Horizon Oil Spill.

Under the current system and regulations, although Mexican legislation provides for cooperation and concurrency between the Federal and State levels of government, however,

---

[19] See Attachment A for the original document and its translation to English.
[20] See Attachment B for the Agenda of such International Event.
[21] Op. Cit. SORIANO NUNCIO, Angelina. FLORES MATA, Amira and MARTINEZ HERNANDEZ, Laura.

most of the time, the States end up doing the federation's job, as they have the legal right to do.

## C.  Legal aspects

The Plenary Session of the Supreme Court of the Nation, through jurisprudence P./J. 142/2001, with title "*Concurrent authorities in the Mexican legal system. General characteristics*" considered that the concurrent authorities in the Mexican legal system mean that the States, even the Federal District, the Municipalities and the Federation, may act regarding the same matter. The following matters are listed as examples of these authorities in the foregoing jurisprudence:[22]

- Education,
- Sanitation,
- Human settlements,
- Public security,
- Environmental,
- Civil protection, and
- Sports

Currently, there is much overlap between the different sectors with authority to address environmental matters, at all three levels of government, and, in practice, whomever is "closest" to the contingency ends up performing the actions necessary for the study, restoration and cleanup activities needed in order to safeguard the environment and health of the public.

The distribution of powers between jurisdictions of the Federal, State and Municipal government is addressed in Article 124 of the Constitution of the United Mexican States:

"*Any powers not expressly granted by this Constitution to federal officials are understood to be reserved in favor of the States*"

Under this principle, which is considered the basis for Mexican federalism, the government of the distribution of authorities between the three levels of government is established. However, Article 73 Section XXIX-G of such Law sets forth:

"*XXIX-G the Constitution itself establishes the authority of the Congress of the Union to enact laws to establish the responsibility of the Federal, State and Municipal governments in regard to matters related to environmental protection*".

---

[22] *Op. Cit.* <http://sneedi.ijf.cjf.gob.mx/Doctos/DerechoConstitucional/DerechoConstitucional/Docs/Eval18Preg4.pdf> pp. 3-5

A brief analysis should be made on the conception and analysis of this legal principle which is contained in Article 27, third paragraph, in relation to Article 73 Section XXIX-G of the Constitution.

- States that consider it a <u>federal power</u>: State of Mexico. (4.35%)
- States that consider it a <u>concurrent power among the federation and the states</u>: Oaxaca, Michoacán, **Tamaulipas**, Puebla, Querétaro. (21.74%)
- States that consider it a <u>concurrent power among the Federation, the States and the Municipalities</u>: Chihuahua, **Quintana Roo**, Guanajuato, Chiapas, Campeche, Morelos, Jalisco, Aguascalientes, Guerrero, Yucatán, Tlaxcala, Baja California, Zacatecas, **Veracruz**, Nayarit. (69.57%)[23]
- After analyzing these perceptions, it is evident that the majority of the States understand that, in fact, these authorities are understood to be a **concurrent power**.

## E.  Distribution of Authorities

The Constitutional basis of secondary regulations that govern human and social conduct with respect to natural resources and ecosystems are found in Articles 25 sixth paragraph, 26, 27 third paragraph, 73 Section XVI4a and Section XXIX-G, as well as 115 and 124 which relate to the powers of Governments of the States and Municipalities, and their participation in environmental issues.[24]

## D.  Expressed and implied powers [25]

Since the establishment of the constitutional basis for the protection of the environment as a whole, it can be observed how the Constitution distributes powers in this area among the Federation, the States and Municipalities in their respective authorities, although this issue relates more specifically to the study of environmental management.

In addition to the aforementioned, the Constitution, in Article 27, eighth paragraph provides that:

*"The Nation holds on an exclusive economic zone located outside the territorial sea and adjacent to it, the sovereignty rights and jurisdictions determined by the laws of Congress. The exclusive economic zone shall extend to two hundred nautical miles, measured from the baseline from which the territorial sea is measured. In cases where such extension causes an overlap with the exclusive economic zones of other States, the determination of the respective areas will be carried out to the extent that is necessary, through agreement with these States".*

---

[23] Summary of the protocol of the analysis of the constitutional powers of the three government branches. <http://www.indetec.gob.mx/cnh/Propuestas/96A.htm>.
[24] *Op. Cit.* VARGAS HERNÁNDEZ, José Manuel. Mexican environmental legislation *(La legislación mexicana en materia ambiental)*. <http://www2.ine.gob.mx/publicaciones/libros/398/vargas.html
[25] *Op. Cit.* < http://2010.colmex.mx/16tomos/XIII.pdf> p. 457-459.

11

The United Nations Convention on the Law of the Sea defines the exclusive economic zone as an area located beyond and adjacent to the territorial sea; subject to the specific legal regime established in the provisions of the Convention; with respect to the situation that corresponds to the rights and the jurisdiction of the coastal States, and the rights and freedoms of the other States, the coastal State has sovereign rights for purpose of exploring and exploiting, conserving and managing the natural resources, whether living and non-living, of the waters superjacent to the seabed and of the seabed and its subsoil, and with regard to other activities for the economic exploitation and exploration of the zone, such as the production of energy from the water currents, and winds.[26]

Given that Mexico has an approximate extension of ten thousand linear kilometers in its coasts surrounding its territory, an exclusive economic zone of three million square kilometers corresponds to it, kilometers that are duly recognized by the Convention previously mentioned and pursuant to constitutional article 27.

As a result of the amendments to Articles 27 and 73 of the Constitution, a new legislation called General Law of Ecological Balance and Environmental Protection (LGEEPA) was introduced and published in *the Official Gazette of the Federation* on January 28th, 1988 and amended on December 13th, 1996. In the preamble of this reform the following purposes stand out:[27]

- Establish an orderly decentralization process, progressive and effective for the management, enforcement and environmental monitoring in favor of local authorities.

- Expand legal margins of public participation in environmental management, through mechanisms such as citizen complaints, access to environmental information and the possibility to legally contest acts that harm the environment in contravention of current regulations.

- Reduce the margins of discretionary authority, in order to expand the legal security of citizens regarding environmental matters.

Article 25th, first paragraph:

*"The State is responsible for leading the development of the Nation to ensure it is integral and sustainable,*

Sixth paragraph:

*"Under the criteria of social equity and productivity, it will support and stimulate companies of the private and social sectors of the economy, subjecting them to the rules dictated by the public interest and use, for the overall benefit of the productive resources, ensuring their conservation and the environment".*

---

[26] Otras normas nacionalistas en el artículo 27 constitucional. Para ver la procedencia de esta información, consultar la fuete original de la cual fue extraída esta información original. < http://politicaderecho.blogspot.mx/2011/02/otras-normas-nacionalistas-en-el.html>

[27] *Op. Cit.* VARGAS HERNÁNDEZ, José Manuel. Mexican environmental legislation *(La legislación mexicana en materia ambiental).* <http://www2.ine.gob.mx/publicaciones/libros/398/vargas.html

Article 27th, first paragraph:

*"The ownership of lands and waters within the boundaries of the national territory correspond originally to the Nation, which has had and has the right to transfer their domain to individuals, constituting private property".*

Article 73: Congress has the power to:

*Section XXIX-G: "To enact laws to establish the responsibility of the Federal, State and Municipal Governments regarding their respective authorities in terms of environmental protection and preservation and restoration of the ecological balance."*

Article 115th, Section V:

*"The Municipalities, in terms of Federal and State laws, are entitled to: paragraph g) Participate in the creation and management of areas of ecological reserves and the development and implementation of management programs in this area".*

And mentions that the respective laws will define the terms and conditions for access to health services, where undeniably there is concurrence between the Federation and the State in health matters.[28]

This provision is directly related to the Environment, considered as a key factor. One of the first damages generated by the lack of a safe Environment is directly to the health of human beings, and if the Environment is not taken care of, and the State does not protect it – of the damages it can suffer-, there is the risk of losing chains of life, which would deteriorate, not only the health problem of individuals as such, but the health of social groups and of humanity in general.

As noted by Lozano Cutanda:

The public domain goods are, above all, *res extra commercium (from the Latin "a thing outside commerce")*, and its affectation, which has this essential purpose, may pursue different purposes: typically, ensuring public use and public distribution through private concessions, facilitating provision of a public service, stimulate the growth of national wealth…, guaranteeing the controlled and balanced management and use of an essential resource or others along the same lines.[29]

---

[28] Brañes, Raúl, (2000), Mexican Environmental Law manual *(Manual de Derecho Ambiental Mexicano)*, Mexican Foundation for Environmental Education *(Fundación Mexicana para la Educación Ambiental)*, Economic Culture Fund *(Fondo de Cultura Económica)*, México, Pages. 83-105.

[29]GARCÍA LÓPEZ, Tania. River basins in Mexican environmental law. Instruments for integrated management. *(Las cuencas en el derecho ambiental mexicano. Instrumentos para su gestión integral)*. For more information, please consult the original source at: <http://www.juridicas.unam.mx/publica/rev/boletin/cont/123/art/art5.htm>

In this regard, Article 1st of the Waters Law *(Ley de Aguas)* of the State of Veracruz defines as State waters: waters, channels, riverbeds and banks located in the State and not considered national waters.

For decades, river basins have been used in Mexico as the country's unit of water administration.

River basins are defined in the National Waters Law as:

*"The unit of territory, differentiated from other units, normally demarcated by a watershed – the polygonal line formed by the highest points in the unit-, where water appears by diverse processes and then accumulates or flows towards an outlet, which may be a sea or some other internal water body, through a hydrographic network of channels which converge into a main course, or alternatively the territory where water forms an autonomous unit, differentiated from others, without draining into the sea. In this topographically demarcated space, may be found the natural resources of water, soil, flora, fauna and other related natural resources. River basins in conjunction with aquifers constitute the basic unit of water management. River basins are in turn made up of sub-river basins and these in turn of micro-river basins".*[30]

They are also defined as "the basic unit of water management and, the country is divided into 13 hydrological-administrative regions for the purposes of organizing the administration and preservation of national waters. The hydrological-administrative regions are formed by groups of river basins, respecting municipal boundaries".

## III. Environmental powers of the States and their concurrent authorities

In the United Mexican States Constitution the powers of the different levels of government, which jointly form the Federation and the local governments, are enumerated. In this way, it is the Constitution that provides the distribution of authority that regulates the federal government, as well as the local government.[31]

The Political Constitution of the United Mexican states provides beside the explicit faculties, the so called implicit faculties, which are those that the federal legislative Power can grant itself or to any of the other federal powers as a necessary medium to exercise any of the explicit faculties. The concurrent faculties are those which the States can exercise while the Federation, which is constitutionally granted said authorities, does not exercise them.[32]

However, there are authorities for legislating on environmental matters which fall exclusively on the federal congress, which means that the States cannot legislate over said

---

[30] *Op. Cit.* GARCÍA LÓPEZ, Tania. River basins in Mexican environmental law. Instruments for integrated management. *(Las cuencas en el derecho ambiental mexicano. Instrumentos para su gestión integral).* <http://www.juridicas.unam.mx/publica/rev/boletin/cont/123/art/art5.htm>
[31] Vázquez García, Aquilino, http://www2.ine.gob.mx/publicaciones/libros/398/vazquez.html
[32] Vázquez García, Aquilino, http://www2.ine.gob.mx/publicaciones/libros/398/vazquez.html

matters, but they are not prevented, when the federation therefore, authorizes a Law, for applying said federal legislation. Consequently, **a clear distinction should be made between what the faculties for legislating and the powers regarding administrative exercise are.**[33]

As an example of this we find in the current Article 7 of the current text in the (General Law of Ecological Balance and Environmental Protection dated June 4th, 2012) Corresponds to the States, pursuant to this Law and the local laws on the subject matter, the following authorities:

*XI.- Dealing with matters which affect the ecological balance or the environment of two or more Municipalities;*

***XII.- Participation in environmental emergencies and contingencies, pursuant to the civil defense policies and programs which are provided therefore;***

*XIII.- Monitor of compliance with the Official Mexican Standards issued by the Federal Government, regarding the subject matters and situations referred to in Sections III, VI and VII of this Article;*

*XIV.- The management of state information policy and information on environmental subject matters;*[34]

Where the possibility is not specifically provided that the States may intervene with regards to legislation, but that they may do so with regards to administrative matters, which shall and does make a very concrete and specific difference, by recognizing the authorities of the federal government in the enactment of laws which regulate those aspects reserved exclusively for the federal government, but in the execution through the administration, of those federal laws it is really the States which, **due to their geographical proximity and direct and preponderant interest in the preservation of the environment which is closest, it is not only a right, but rather an obligation of the State authorities to immediately intervene.**

Pursuant to article 117 of the Constitution, local legislatures shall not legislate regarding the following subject matters:

- Currency.

- Transit of people and goods which cross their territory.

- Foreign trade.

- Taxes which amount to differences with regard to federal taxes due to the origin of the goods.

---

[33] Vázquez García, Aquilino, http://www2.ine.gob.mx/publicaciones/libros/398/vazquez.html
[34] Chamber of Deputies. General Law of Ecological Balance and Environmental Protection, June 4th, 2012. http://www.diputados.gob.mx/LevesBiblio/pdf/148.pdf

Analyzing the previous list where it is clear which subject matters are reserved exclusively to the federal government, it is evident that this list does not include the possibility that the States intervene in a legitimate manner regarding the care and preservation of the environment with which they have, due to natural reasons, proximity, and in addition, **not only do the States have the right of promoting actions which tend towards the preservation of the environment, they also have the obligation to do so, since otherwise, the State authority would fail in an event of public servants' liability.**

To exemplify the previous proposal, this Organic Law of the Executive Power of the State of Veracruz-Llave (*Ley Orgánica del Poder Ejecutivo del Estado de Veracrúz-Llave*)[35] which regulates the authorities of the Ministry of the Environment of the State of Veracruz in the following manner:

Article 28 Bis. The Ministry of the Environment is the entity responsible for coordinating the policies regarding preservation and restoration of the ecological balance, climate change and protection of the environment in the State.

Article 28 Ter. Pursuant to the distribution of authorities provided in its internal regulation, the following are powers of the Ministry of the Environment:

I. To formulate, guide, implement and evaluate the state policy regarding ecological balance, protection of the environment and climate change;

II. To issue administrative provisions regarding ecological balance, the environment and climate change, within its sphere of authorities;

III. To deal with those matters related to the preservation, conservation and restoration of the ecological balance and protection of the environment, as well as how to apply the instruments of environmental policy pursuant to the laws, standards and other applicable provisions, in the scope of its authority;

IV. To promote compliance with the legal provisions on environmental matters jointly with the entities in charge of the execution of the plans, programs and projects regarding the promotion and preservation of ecological balance and protection of the environment in the scope of its authority;

V. To participate in the preparation of State and Municipal plans, programs and projects, evaluating their adherence to the applicable legislative framework regarding ecological balance, protection of the environment, environmental risk and climate change;

VI. To promote, establish, implement and coordinate the actions meant for preventing and controlling, as the case may be, in the framework of its authority, water, air and ground pollution, as well as the registration of pollutants and their monitoring;

---

[35] Power of the Ministry of Environment (Sedema). http://www.veracruz.gob.mx/medioambiente/sedema/atribuciones-de-la-sedema/

Dr. Julio César Cruz Chavira, MBA, LLM, PhD          E-mail jccchmx@gmail.com

VII. To participate in the design of programs which promote or facilitate the oversight, regulation and realization of environmental inspections within the scope of State authority;

VIII. To provide general policies, issue criteria and technical standards with regard to integral prevention and management of solid waste and special handling, in the terms defined by the instruments;

IX. Environmental impact assessment generated pursuant to the realization of works or activities, such as, as the case may be, the corresponding studies regarding risk, provided that these are not expressly reserved to the Federal Government or to the Municipalities, granting the issuance of the corresponding authorizations, pursuant to applicable regulations;

X. To prepare the policy of ecological organization of the territory by developing, executing and evaluating the corresponding programs through collaboration with the Municipalities and with all social groups;

XI. To prevent, measure and control environmental pollution and the emission of sounds, vibrations, thermal energy, light, electromagnetic radiations and odors which affect the territory of the State and in the scope of State jurisdiction, generated by fixed or mobile sources;

XII. To regulate, promote and supervise sustainable use and the control and prevention of pollution and, in any event, treatment of waters of State jurisdiction, as well as national waters which the State has been assigned in the scope of its authority;

XIII. To issue and apply environmental guidelines, criteria and standards with regard to the subject matters and activities which cause or can cause ecological imbalances or damage to the environment of the State, with the participation of the Municipalities and society in general when it considers it convenient, within the scope of its authority;

XIV. To regulate, prevent and control and in any event, to carry out actions which tend to avoid environmental degradation caused by the exploitation of substances which are not reserved to the Federal Government, which comprise deposits of similar nature to the components of the lands;

XV. To collaborate in dealing with environmental emergencies and contingencies, pursuant to its powers, as well as to propose to the Executive branch of the State, the adoption of measures required for the prevention and control of their possible adverse effects on the environment;

XVI. To coordinate, within the sphere of its authority, the actions related to the formulation and implementation of state policies for the prevention and mitigation of greenhouse gases, the adaptation of the adverse effects of climate change and, in general, to promote the development of programs and strategies of climate action related thereto;

XVII. To develop, execute and evaluate, within the scope of its authority, the programs

which correspond to the policies regarding climate change for their corresponding sectorial or inter-sectorial incorporation;

XVIII. To coordinate, within the scope of its authority, with other authorities, regarding the categorization, the environmental criteria and the functional characteristics of the products and services considered in environmental labeling schemes and those which exhibit an adequate environmental behavior;

XIX. To coordinate with the competent authorities, on the implementation of the programs and measures for the preservation of natural resources, the prevention of pollution, the organization and cleaning of beaches, and the environmental improvement of the tourism activities and facilities, as well as the implementation of companies of the same industry, subject to a system of sustainability indicators;

XX. To establish, in coordination with the Federal, State and Municipal authorities, and with the private sector or entities which it considers convenient, the legal and regulatory framework with regard to climate change, under criteria of mainstreaming in the public policies of the State Government;

XXI. To promote the creation of information and technical-scientific knowledge regarding the effects of climate change and the climate variability in the State, as well as to contribute toward the creation of trained human capital for the mitigation of greenhouse gases and the adaptation of climate change;

XXII. To strengthen the ecological culture through environmental education programs;

XXIII. To promote the development and use of technologies for the exploitation of natural resources and the protection of the environment under criteria of sustainability, by means stimulus and incentives policies in coordination with the Ministry of Finance and Planning (*Secretaría de Finanzas y Planeación*);

XXIV. To promote and provide the transparency of public information on environmental matters;

XXV. To create the entities required in order to improve the performance of its functions;

XXVI. To execute all types of contracts, agreements and understandings in order to facilitate the performance of its functions;

XXVII. To apply safety measures and administrative sanctions which proceed, as a result of infringements of the Law on the subject matter and other applicable legal provisions; and

XXVIII. To participate, within the scope of its authority, in the actions carried out by other Federal, State, and Municipal authorities.

18

### E.   Authority and Legal Basis for the protection of the marine flora and fauna within the Gulf of Mexico by Tamaulipas, Veracruz and Quintana Roo.

The States' proximity allows for dealing with problems which may be federal authority as well as those which are of state authority, in a coherent scheme with the powers of each level of government and in a congruent logic regarding the spatiality of the environmental problems. In particular, the Integral Coastal Management (*Manejo Costero Integral*), the Integrated River Basin Management (*Manejo Integral de Cuencas*) and the fight against pollution of the marine areas by land based sources, will be dealt with in this concept of action.

As an example of the scope which the Program for General Ecological Ordinance of the Territory has, is the Sustainable Development Code of the State of Tamaulipas (*Código para el Desarrollo Sustentable del Estado de Tamaulipas*) was published in the Official Federal Gazette for the State of Tamaulipas on Thursday June 5th, 2008, which has the following specifications.[36]

Pursuant to its purpose, the Code states in its 3rd Article that its objectives are to provide the basis for:

I. Guaranteeing the right of every person to live in an adequate environment for their health, development and wellbeing;

III. To regulate and promote compliance with the state's legal and administrative provisions with regard to the environment, protection and integral management of waste, protected natural areas and wild life;

IV. To guarantee and regulate that considering the existence of serious or irreversible danger to the environment or of an emergency where there are continuous and serious damages thereto, efficient measures are immediately adopted and the necessary actions taken to prevent their degradation;

XII. To establish control and safety measures, as well as administrative sanctions to guarantee compliance and application of this Code and of the regulations which arise herefrom.

Article 8 states that the following shall be considered of social interest:

V. The emergency measures which the authorities apply in the event of acts of god or force majeure, when dealing with pollution; and

VI. The emergency actions to contain the health risks arising from any type of pollution.

---

[36] *Op. Cit.* Comments based on the document "Ordenamiento Ecológico Marino y Regional del Golfo de México y Mar Caribe *(Marine and Regional Ecological Ordinance of the Gulf of Mexico and of the Caribbean Sea)*".

Dr. Julio César Cruz Chavira, MBA, LLM, PhD            E-mail jccchmx@gmail.com

Pursuant with the foregoing, it is patent that the Government of the State of Tamaulipas is obligated and entitled to, under such provisions, take any legal action necessary to ensure the wellbeing of its citizens and environment. The State Government is therefore responsible for such protection, including filing suit for the damages caused by the Deepwater Horizon Oil Spill.

With regard to the subject of authority, Article 11 provides the foundation for collaboration between the three scopes of government by stating that:

**The Executive Power of the state, through the Environmental Agency and, in any event, with the intervention of other ministries and entities of the state administration, can execute coordination agreements with the Federal Executive Power, with the other States and with the Municipal Governments, for the purpose of coordinating actions or transferring authorities with regard to sustainable development, preservation and restoration of ecological balance and environmental protection, as well as those tending towards the attention and resolution of common problems.**

Article 13 states that it is the State, through the Environmental Agency, which shall promote before the Federal Government the execution of coordination agreements or understandings which allow the State and Municipal authorities to undertake, as the case may be:

- Monitor and control in the State compliance with the federal legal provisions which tend to prevent environmental contingencies and ecological emergencies;
- Protection and preservation of the soil, the wild flora and fauna and forest resources;
- Control of actions for the protection, preservation and restoration of the ecological balance and environmental protection in the federal land-maritime zone, as well as in the federal zone of the bodies of water considered as national;
- Control of hazardous waste which is subject to management plans, pursuant to the provisions of the General Waste Law (*Ley General de Residuos*);

The imposition of the applicable sanctions mentioned in the previous Sections XI, XII and XIII.

In Article 44, this Code states that the following powers correspond to the State, through the Environmental Agency:

- To deal with matters that affect the ecological balance or the environment of the territory of the State and of other entities or entity, in coordination with the Federal Government, when their nature so requires it;
- To report before the District Attorney's Office (*Ministerio Público*), the facts or omissions considered as crimes against the environment and natural resources;
- To close down and suspend works or activities when these violate the provisions of this Code and, in any event, to request the revocation and cancellation of construction and land use licenses;
- To apply corrective and safety measures, as well as the applicable administrative

sanctions, for infringements of this code;

With regard to water, in its Article 73, it mentions the following criteria which shall be considered as priority due to their scope and potential damage to society:

The State, through the Environmental Agency and with the participation of the state ministries or entities inherent to the water resources, and the Municipal governments, within the scope of their corresponding authority, shall regulate the sustainable exploitation and shall prevent and control the pollution of the waters of state jurisdiction and those of national jurisdiction over which it has its assignment, considering the following principles:

Water is a public domain good, which is vital, vulnerable and finite, with a social, economical and environmental value, for which its preservation regarding quantity and quality corresponds to the government and to society, as a priority and as a safety matter for the Nation and the State.

**F.   Participation of the states regarding natural resources.**

Pursuant to the Constitution which gives birth to Mexican Federalism and pursuant to article 124 of the Constitution, what is not EXPRESSLY reserved for the Federal Government, is reserved for the States. Based on this we can analyze that there are different types of authorities among which can be distinguished:

- Express faculties
- Exclusive faculties
- Concurrent –coincident faculties
- Decentralization of functions pursuant to state laws or collaboration or cooperation agreements

This shall be explained in detail as follows:

1. Exclusive distribution of authority
2. Express Faculties

For the Federal Government, that which is expressly reserved with regard to the exploitation of goods belonging to the State is defined in Articles 27 and 73 of the Constitution, in which it is provided that the following are exclusive authorities:

- To regulate the exploitation of natural resources susceptible to appropriation: to take care of their preservation, equitable distribution of the public wealth.

All that which is not considered exclusively "federal", shall be enforced by the State Governments, for example:

- Article 27, regarding non-national waters[37]

- Article 115, legislating several subject matters which is provided in the purpose of Article 27

- General and State laws

- General Law of Ecological Balance and Environmental Protection, General Law of Wildlife (*Ley General de Vida Silvestre*), General Law of Sustainable Forestry Development (*Ley General de Desarrollo Forestal Sustentable*), Fishing Law, etc.

- State subject matters: identification of indigenous communities

It is necessary and prudent to state that the exclusive authorities provided in the aforementioned points address the exclusive distribution of authorities for legislative matters, but not for administrative matters, which is fundamental for distinguishing and defining what could be the participation of the States from the administrative point of view. Thus, I conclude that, while the Federal Maritime Law, as the regulations covering the provisions of Article 27 of the Mexican Constitution, provides for the legislation of environmental matters by the Federal level of government, it does not really cover the administration and execution of precautionary measures, or the cleanup and management of contingencies such as the Deepwater Horizon Oil Spill, therefore, we cannot focus on such laws specifically when, in practice, it is the States themselves who end up doing the work which is supposedly charged to the Federation.

## G.  Concurrent distribution of authority

With regard to the concept of concurrence it is necessary to understand that:

- Tamaulipas, Quintana Roo and Veracruz represent the federal powers

---

[37] The Second Collegiate Court of the Twentieth Circuit (*Segundo Tribunal Colegiado del Vigésimo Circuito*), declared through the "*Amparo*" in review 221/2010. October 14th, 2010. By a unanimous vote, in which acted as Speaker: Carlos Arteaga Álvarez. Secretary: Marylin Ramírez Avendaño. Regarding Articles 27, fourth paragraph and 73, Section XXXIX.G. of the Political Constitution of the United Mexican States; 2,4 Section II and 5, Section IV of the Mining Law (*Ley Minera*); 4, 5 Sections X and XIV and 7 Section X and XVI, of the General Law of Ecological Balance and Environmental Protection; and 7, Sections X and 7, Sections XVII and XVIII of the Environmental Law of the State of Chiapas (*Ley Ambiental para el Estado de Chiapas*), it may be inferred that the Nation has direct ownership over all the minerals and substances which in seams, strata, masses or fields constitute deposits which are of a different nature than the components of lands, such as the minerals from which metals and metalloids used in industry are extracted; that regarding the extractive exploitation of the minerals which are not reserved to the Federal Government and which comprise deposits of a similar nature to the components of lands, such as rocky materials (rocks) or products of their fragmentation which can only be used for construction or decoration, corresponds to the local authorities, and there is a concurrent authority with the Federal Government, as well as with the States and Municipalities with regard to protecting the environment and to the preservation and restoration of the ecological balance. Consequently, the Ministry of the Environment, Housing and Natural History of the State of Chiapas (*Secretaría de Medio Ambiente, Vivienda e Historia Natural del Estado de Chiapas*) is authorized to issue an order for the verification of the exploration, extraction and exploitation of the rocky material different from any mineral, as well as to verify the environmental impact which the construction of roads for their transfer to a storage and processing place could generate. 9th Period; T.C.C.: Judicial Weekly of the Federation (S.J.F.) and its Gazette; XXXIV, July, 2011; Page 2257

22

- The 3 governments can represent it, seeing this as the possibility of the scope of the function of each level of government

- It is indispensable to specify that it has to be determined by a law, therefore, it shall precede the issuance of general laws

- In these ordinances, is defined the way in which each government shall act in the same subject matters, in the scope of their corresponding authority.

Such is the case in constitutional dispute 31/2010[38], where the Court in Plenary Session, on September 8th of this year, approved with the number 38/2011, and which says that *the subject matter of human settlements as well as the protection of the environment and the preservation and restoration of the ecological balance are constitutionally concurrent and their provisions develop through general laws, meaning, the three levels of government intervene therein.* Therefore, the General Law of Human Settlements has as its purpose to set the standards pursuant to which the States and the Municipalities participate in the organization and regulation of human settlements; in addition, it provides the standards under which said levels of government shall concur, in the scope of their corresponding authority, in the territorial organization of human settlements, in the sustainable development of the population centers, and the protection and restoration of the environmental and ecological matters.

In conclusion, after the analysis, it can be said that when referring to "concurrent powers" the scope of this idea does not imply the prohibition in order for state authorities, for example, to intervene in the aforementioned activities, and even more so, these powers due to them being concurrent, what they really mean is the participation of the three levels of government not only by law, but also as an obligation due to the nature of public interest in environmental matters and health protection. That is, the law itself generates an obligation for the States to properly care and provide for the wellbeing of their natural areas and the health of their citizens.

In this regard, the Fourth Collegiate Court on Administrative Matters of the First Circuit established: The right to an adequate environment for the development and welfare of the people, as a fundamental right and individual guarantee as established in Article 4th, fifth paragraph of the United Mexican States Constitution, which develops under two aspects: *a) a power demand and duty to respect erga omnes and to preserve sustainability of the environment, which implies no affectation or damage to it (horizontal effectiveness of*

---

[38] The concurrent authorities with regard to human settlements and environmental protection and the protection and restoration of the ecological balance. Municipal urban development plans must be congruent with federal and local ecological balance. Benito Juárez Municipality, State of Quintana Roo. April 5th, 2011. Majority of 8 votes. Missing: Margarita Beatriz Luna Ramos. Dissenting Opinions: Sergio Salvador Aguirre Anguiano and Luis María Aguilar Morales. Judge delivering the opinion of the court: José Ramón Cossío Díaz. Secretaries: Laura Patricia Rojaz Zamudio and Raúl Manuel Mejía Garza. 10th Period; Plenary Session; Judicial Weekly of the Federation (S.J.F.) and its Gazette; Book I, October, 2011, Volume I; Page 288.

*fundamental rights); and b) in the correlative obligation of the authorities to monitor, preserve and ensure the corresponding regulations are met (vertical effectiveness).*[39]

### IV. Preservation of the natural environment in Quintana Roo

**1.** Decree for the establishment of the Decentralized Administrative Agency called the Institute of Environmental Impact and Risk of the State of Quintana Roo.[40]

On April 2003, Joaquín Ernesto Hendricks Díaz, Constitutional Governor of the Free and Sovereign State of Quintana Roo, in exercise of the powers vested in him by Article 90 Section XVIII, and in compliance with the obligations imposed by Article 91 Section II, VI and XIII of the Constitution of the Free and Sovereign State of Quintana Roo (*Constitución Política del Estado Libre y Soberano del Estado de Quintana Roo*), and pursuant to Articles 2, 3, 6, 11 and 30 Sections III and IV of the Organic Law of the Public Administration of the State of Quintana Roo (*Ley Orgánica de la Administración Pública del Estado de Quintana Roo*), decreed the creation of the agency that was called Institute of Environmental Impact and Risk of the State of Quintana Roo (*Instituto de Impacto y Riesgo Ambiental del Estado de Quintana Roo*). The basis for its creation is set forth in the decree's text as follows:

*That national development, in particular that of the State of Quintana Roo, requires to harmonize economic growth with environmental quality, preservation and restoration of ecological balance, sustainable development and environmental protection.*

*That it is necessary to encourage the participation of all the sectors in order to guarantee the right to live in an adequate environment, for the development, health and welfare of Quintana Roo's habitants.*

*That on environmental matters, one of the State's most important attributions consists in the assessment and resolution of impact and environment manifestations, understood as the procedure by which the legal basis for environmental projects, works, or public or private activities, which may cause an ecological unbalance, is approved in order to avoid or to mitigate their negative effects.*

*That one of the obligations imposed by the Constitution of the Free and Sovereign State of Quintana Roo that is notable, is the one relating to maintaining the public administration in constant improvement and adapting it to the technical and human needs of the entity.*

*Currently, at the level of the Public Administration of the State, the Ministry of Urban Development and Environment (Secretaría de Desarrollo Urbano y Medio Ambiente) is the competent authority in infrastructure, public works, as well as ecological matters. These*

---

[39] 9th Time; T.C.C.; Judicial Weekly of the Federation (S.J.F.) and its Gazette; XXV, March 2007; Page 1665. *Amparo* Review 496/2006. Tici Association of Residents of San Pedro Tlahuac, A.C. January 17th, 2007. Unanimous vote. Speaker: Jean Claude Tron Petit. Secretary: Sandra Ibarra Valdez. Note: This thesis is subject of the relative complaint concerning the contradiction of thesis 179/2012, pending resolution from the Second Chamber.

[40] Decree that creates the decentralized administrative agency called the Institute of Environmental Impact and Risk of the State of Quintana Roo (*Instituto de Impacto y Riesgo Ambiental del Estado de Quintana Roo*). <http://iinia.qroo.gob.mx/portal/Decreto.php>, in the city of Chetumal, Quintana Roo, on April 25th, 2003.

24

*places the Secretary in the difficult position to, on one hand, coordinate the execution of public works projects and, on the other, evaluate and authorize the environmental impact statements of these projects.*[41]

This decentralized administrative agency is, according to the decree, bestowed with full technical and functional authority; it is coordinated by the Ministry of Urban Development and Environment, and can issue its resolutions independently.

The decree is of general observance and everything that is not provided for in the same, shall be governed by the provisions of the Organic Law of the Public Administration of the State of Quintana Roo, its Regulation on Environmental Impact, the Internal Regulation of the Ministry, and all other applicable provisions on the subject matter.

Some of the main functions of the Institute are:

• To evaluate and rule on environmental impact studies and issue the approvals for the projects, activities and services set forth by the Law and the Environmental Impact Regulation (*Reglamento en Materia de Impacto Ambiental*).

• Determine the projects or activities that due to their location, dimensions or characteristics, produce significant environmental impacts that cause or may cause ecological unbalances, and therefore must be subject to the evaluation of environmental impact studies.

• Exercise the powers that according to the Law correspond to the Ministry regarding environmental impact and risk matters, within the scope of their state jurisdiction.

• Supervise the compliance and enforcement of the Law, interpret the Law for administrative purposes, and exercise authority acts on environmental impact and risk matters.

• All other powers set forth in the regulatory legal provisions.

The attributions of the General Director of the Institute are:

• Establishment of guidelines, policies, norms, systems and procedures, technical as well as for the management of human, financial and material resources, according to the applicable legal provisions and in accordance with the valid planning and programming system.

• Issuance of the resolutions in which the evaluations of the Environmental Impact and Risk Manifestations are done, with full criteria independence and without any type of submission to any instruction or guideline from any Authority or individual; resolutions must have the hand-written signature of the General Director.

---

[41] *Op. Cit.* Decree that creates the decentralized administrative agency called the Institute of Environmental Impact and Risk of the State of Quintana Roo *(Instituto de Impacto y Riesgo Ambiental del Estado de Quintana Roo).*

- Planning, programming, organization, control and evaluation of the Institute's operation.

- Preparation of the administrative manuals, both organization and procedure manuals, as well as operative manuals.

- Preparation of the Institute's budget drafts and verification of their punctual and correct execution.

- Execution of the legal acts required for the exercise of the attributions in accordance with the valid normativity in the subject matter.

- Suggest the coordination mechanisms of actions with other agencies and branches of the State Executive, and the harmonization of actions with the private and social sectors, as necessary.

- Submit for consideration of the competent state authorities, the coordination instruments with federal authorities regarding impact assessment and environmental risk.

- Represent the Institute before authorities and before public and private organizations.

- All others assigned by Laws, Regulations and other legal dispositions of the State.

## II.  Preservation in the State of Tamaulipas

### A.  Environmental Agency for the Sustainable Development of the State Tamaulipas [42]

At the time, what the State of Tamaulipas attempted with the creation of the Agency, was to create a legal instrument for the Exercise of the Environmental State Policy through the enforcement of the Sustainable Development Code of the State of Tamaulipas (*Código para el Desarrollo Sustentable del Estado de Tamaulipas*). With this, it turns into the governing institution for the exercise of the attributions vested by the applicable laws, in order to regulate environmental, natural resources and sustainable development state policies, and would enforce administrative and statutory provisions of environmental, wild life, forestry, protected natural areas, and waste, and their corresponding compliance.

It is a mandatory public interest policy within the territory of the State. Its basis is found in Article 4 Fourth paragraph, Article 27 Third paragraph, and Article 73 subsection G of Section XXIX, of the Constitution of the United Mexican States. These attempt to regulate environmental protection and prevention actions, integral management of residues, State and Municipal protected natural areas, flora and fauna, and to encourage and promote ecosystem conservation, preservation, rehabilitation, remediation, improvement and maintenance, and the recovery and restoration of ecological balance.

---

[42] Decree published in the Official Diary on January 15th, 2008, and is effective as of September 4th, 2008, through the addition and amendment of article 23 of Organic Law of the Public Administration of the State of Tamaulipas (*Ley Orgánica de la Administración Pública del Estado de Tamaulipas*).

The Sustainable Development Code of the State of Tamaulipas (CPDSET) allows the strengthening of the State Environmental Policy, for it authorizes the Environmental Agency to execute coordination agreements and covenants with diverse instances, particularly with the Federation.

An example of the possible affectations that will be experienced in the area impacted by BP, is the region called Laguna Madre and Delta of the Rio Grande (know in Mexico as Rio Bravo) located in the municipalities of Matamoros, San Fernando and Soto La Marina in the State of Tamaulipas, which constitutes a single ecological unit that shares the same hydrological regime of flooding that depends on the balance between the sea water it receives from straits and freshwater runoffs from rivers. This area is governed, possessed, protected, and regulated by the State of Tamaulipas.

In the world, only six ecosystems known as hypersaline are recognized, of which the region know as Laguna Madre and Delta of the Rio Grande is the most extensive, and includes important intertidal marshes that reach 50,8000 hectares and a considerable wealth of wetlands;

The primary productivity of the flooded marshlands is similar to that of sea grasses, allowing the development of benthic invertebrate communities that transform primary productivity in animal biomass, essential for secondary consumers, including crabs, fish and large concentrations of beach and stream birds; [43]

The region works as a transition zone of the neartic fauna linked to wetlands and constitutes one of the migration routes of the most important birds of the Mississippi and central North America; is, also, a major source of fresh water for the population, and provides a great amount of nutrients to coastal lagoons, which helps maintain high primary productivity in the area; [44]

In the Laguna Madre and Delta of the Rio Grande region converges the migration of more than 450 species of aquatic, semi-aquatic and terrestrial birds, where 15% of the total migratory birds that arrive to Mexico from Canada and the United States of America spend the winter; with places for shelter, food and nesting permanently 144 species of resident birds, from which 2.7% are endemic to Mexico;

Among the most significant bird species is found the redhead duck (Aythya Americana), of which there are records in the region of 36% of the world population, the only breeding colony of white pelicans (Pelecanuserythrorhynchos) in coastal environments of Mexico, to 100,000 beach birds that represent the highest concentration in the country, as well as ducks and Canadian geese that reach their southernmost distribution. [45]

---

[43] *Op. Cit.* Decreto Laguna Madre and Delta del Río Bravo.
[44] *Op. Cit.* Decreto Laguna Madre and Delta del Río Bravo.
[45] *Op. Cit.* Decreto Laguna Madre and Delta del Río Bravo

27

## V.  Conclusions

In conclusion, the States of Tamaulipas, Veracruz and Quintana Roo as well as the Municipalities of the Republic of Mexico, authentically exercise the powers which are provided and vested to them by law.   Moreover, the aforesaid States are originally responsible for certain functions, such as the preservation of their natural surroundings, the protection of ecosystems, public health and their acknowledgment as producers of resources

Under the same line of thought, the States of Tamaulipas, Veracruz and Quintana Roo have sovereignty over the marine flora and fauna of which they depend, as in the case of sea turtles. The state and local governments are responsible for preserving the marine and land habitats of these animals through the creation of laws and regulations that seek to fully protect the life of these endangered species in the Gulf of Mexico, especially turtles.

The states of Tamaulipas, Quintana Roo and Veracruz have sovereignty over the 7 species of sea turtles that arrive periodically to their shores to lay eggs[46], providing suitable and safe environment for their free reproduction and neonatal development, which seeks to ensure their preservation and to promote a culture of respect with the creation of tourism development programs that fall exclusively on these animals and their conservation.

Having performed due analysis and review of the issues mentioned before, my conclusion is that the Mexican states of Tamaulipas, Veracruz and Quintana Roo possess and hold proprietary interests in and to their coastal areas, beaches and sands, islands, estuaries, and other geographical areas along their coasts. Not only do each of the aforementioned states have a fundamental and historical right to defend their territories, coasts, biodiversity, public health, economy and integral development, they are also obligated to do so by Mexican Law.

Each of the aforementioned States has the right to:

- Ensure the right of any individual (whether a citizen of the state or a visitor to the state), found within state territory, to enjoy and live in an environment which is adequate for such person's development, health and wellbeing, and to perform any and all necessary actions to enforce and conserve this fundamental right, as well as to enforce and conserve the fundamental right of the state and the individuals therein to preserve and protect the environment, ecological balance and sustainable development.

- To establish security and control measures in order to guarantee the compliance and application of state and federal environmental laws and the provisions thereof, as well as to impose administrative penalties and, in due case, criminal procedures, as may be applicable. To order, encourage, and regulate integral management and sustainable development of fishing and aqua-cultural activities

---

[46]   Government of Mexico. Festival of the Sea Turtle Consulted in October 2012 through: http://www.travelbymexico.com/blog/9820-festival-de-la-tortuga-marina-2011-en-tulum/

28

in the state, considering social, technological, productive, biological and environmental aspects.

The States of Tamaulipas, Veracruz, and Quintana Roo are not only entitled, but obligated, to react and enact all possible measures in order to correct and remedy the damages caused by the Oil Spill, as was shown in this report, not only does the Mexican Constitution obligate them to act, but the Mexican Federal Government has recognized their standing and capacity to act through several actions, such as convening the states to a meeting in which to coordinate the legal actions arising from the accident (see Attachment A), recognizing the states direct involvement in international and national environmental congresses and agreements (see Attachment B), and the holding of innumerable coordination agreements, concession agreements, decrees and other legal instruments through which the Federal Government transfers and assigns control, management, rights and duties to protect, remedy and monitor the wellbeing of the beaches, natural resources, plant life and wildlife in and around each state's beaches, estuaries, coastal zones, waters, and environments.


Sincerely,


Julio Cesar Cruz Chavira, MBA, LLM, PhD.


[rest of the page intentionally left blank]

29

ATTACHMENT A

30

2575



SUBSECRETARÍA DE GOBIERNO
UNIDAD DE ENLACE FEDERAL
"2010, Año de la Patria, Bicentenario del inicio de la
Independencia y Centenario del inicio de la Revolución"

Número: UEF/214/1168/2010

Asunto:  Reunión de enlaces para coordinación respecto al
Derrama de hidrocarburos en el Golfo de México.



México, D. F., a 24 de noviembre de 2010.

LIC. ENRIQUE ALEJANDRO ALONSO SERRATO
SUBSECRETARIO DE ASUNTOS JURÍDICOS DE LA
SECRETARÍA DE GOBIERNO DEL ESTADO DE QUINTANA ROO
P R E S E N T E .

En atención al oficio No. 002165, de fecha 20 de septiembre del año en curso, signado por el Lic.
Eduardo Ovando Martínez, Secretario de Gobierno del Estado de Quintana Roo, mediante el cual
se le designó como enlace jurídico para coordinar las acciones legales a que haya lugar derivadas
del derrame de hidrocarburos ocurridos en el Golfo de México, me permito hacerle una atenta
invitación a la reunión del grupo de trabajo jurídico encargado de analizar las opciones legales
que asumirá el Gobierno de México ante una eventual acción judicial por los daños y perjuicios
que se llegaran a ocasionar a nuestro país.

La reunión se llevará a cabo a las 12:00 horas del próximo lunes 29 de noviembre del año en
curso en el Salón Paula Alegría de la Secretaría de Relaciones Exteriores, ubicada en la Av.
Juárez No. 20, Colonia Centro, Delegación Cuauhtémoc, en la Ciudad de México.

Lo anterior en apoyo a la Secretaría de Relaciones Exteriores y con fundamento en el artículo 13,
fracciones I y IV, del Reglamento Interior de la Secretaría de Gobernación.

Sin otro particular, aprovecho la  ocasión para enviarle un cordial saludo.

A T E N T A M E N T E

LIC. ALBERTO CIFUENTES NEGRETE
TITULAR DE LA UNIDAD DE ENLACE FEDERAL

<table>
<tr><td>

MINISTRY OF THE INTERIOR
OFFICE OF FEDERAL COOPERATION
[...]

</td><td>

[STAMP]

MINISTRY OF GOVERNMENT
OFFICE OF LEEGAL AFFAIRS

NOV. 24, 2010

RECEIVED

CHETUMAL, QUINTANA ROO

</td></tr>
</table>

Number:        UEF/214/1196/2010

Re:            Meeting of representatives for the coordination of the affairs
               Regarding the oil spill in the Gulf of Mexico.

                                           Mexico City, November 24, 2010

**ENRIQUE ALEJANDRO ALONSO SERRATO**
**UNDERSECRETARY OF LEGAL AFFAIRS OF THE**
**MINISTRY OF GOVERNMENT OF THE STATE OF QUINTANA ROO**
**P R E S E N T.**

In response to document No. 002166, dated September 20 of this year, signed by Eduardo Ovando Martinez, Minister of Government of the State of Quintana Roo, whereby you are appointed as legal liaison and representative in order to coordinate the legal actions which may take place arising from the oil spill that occurred in the Gulf of Mexico, I hereby invite you to participate in a meeting of the legal task force that is charged with reviewing the legal options that will be made by the Government of Mexico in case of a claim for the damages which will be caused to our country.

The meeting will take place at 12:00 hours next Monday, November 29 of this year in the Paula Alegría room of the Ministry of Foreign Affairs, located in Av. Juarez No. 20, Colonia Centro, Delegacion Cuauhtemoc, in Mexico City.

The foregoing in support of the Ministry of Foreign Affairs and based on article 13, sections I and IV of the Internal Regulations of the Ministry of the Interior.

With no other business at hand, I send my warmest regards,

**S I N C E R E L Y**

**/S/**
**ALBERTO CIFUENTES NEGRETE**
**DIRECTOR OF THE OFFICE OF FEDERAL COOPERATION**

[...]

                    ATTACHMENT B

Dr. Julio César Cruz Chavira, MBA, LLM, PhD          E-mail jccchmx@gmail.com

32

   

GLOBAL ENVIRONMENT FACILITY
UNITED NATIONS INDUSTRIAL DEVELOPMENT ORGANIZATION
NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION
SECRETARIA DE MEDIO AMBIENTE Y RECURSOS NATURALES

*International Forum:*
*Sustainable Management of the Gulf of Mexico*
*Living Marine Resources*

*AGENDA PROVISIONAL*
UPDATED AS FEBRUARY 17TH 2011



INTEGRATED ASSESSMENT AND
MANAGEMENT OF THE GULF OF MEXICO
LARGE MARINE ECOSYSTEM

Hotel Novo Mar,
Veracruz, México
*February 21-23, 2011*

      

Dr. Julio César Cruz Chavira, MBA, LLM, PhD          E-mail jccchmx@gmail.com

33

 INTEGRATED ASSESSMENT AND
MANAGEMENT OF THE GULF OF MEXICO
LARGE MARINE ECOSYSTEM 

## 1   Provisional Agenda

### International Forum: Sustainable Management of the Gulf of Mexico Living Marine Resources
UPDATED AS FEBRUARY 17th 2011
Feb 21-23, 2011

| | | |
|---|---|---|
| **PREREGISTRATION** Sunday Feb 20th NOVO MAR HOTEL (see information at the Hotel Lobby) REGISTRATION DAY 1 Monday Feb 21st Meeting Room | | |
| **DAY 1 Monday Feb 21** | | |
| 08.00-08.30 | Registration | |
| 08.30-09.00 | **OPENING CEREMONY** | |
| | SEMARNAT  Welcoming | *Antonio Díaz de León on behalf of the Minister Mr. Rafael Elvira Quesada, Secretariat of Environment and Natural Resources* |
| | NOAA Welcoming | *Bonnie Ponwith, Director Southeast Fisheries Science Center NOAA* |
| | UNIDO-GEF Welcoming | *Igor Volodin, UNIDO Representative* |
| | VERACRUZ STATE GOVERNMENT formal opening | *Javier Duarte, Governor of Veracruz State* |
| 09.00-09.30 | Adjust time in agenda | |
| | PLENARY SESSION Chair Antonio Díaz de León Corral | |
| 09.30-09.50 | Status & trends of Fisheries, Highlight the MEX-US Program | *Bonnie Ponwith, NMFS* |
| 09.50-10.10 | Gulf of Mexico LMR towards the EBM approach | *Larry McKinney, HRI-GOMA* |
| 10.10-10.30 | Current status and trends of artisanal fisheries and commercial living marine resources in the Gulf of Mexico | *José de Jesús Camacho Osuna, Confederación Nacional de Cooperativas de Pesqueras* |
| 10.30-10.50 | Status & trends in GoM fisheries assessed | *Ramon Corral Avila, CONAPESCA [tentative] or Martin Botello Ruvalcaba* |
| 10.50-11.00 | Building the appropriate bridge in the GoMx for better management of LMRs | *Quenton Dokken, Gulf of Mexico Foundation* |

Page 1 of 10



INTEGRATED ASSESSMENT AND
MANAGEMENT OF THE GULF OF MEXICO
LARGE MARINE ECOSYSTEM



| 11.00-11.20 | Oceans, LMR and EBM approach, CIMARES Ocean Policy | *Antonio Díaz de León, SEMARNAT-CIMARES* |
|---|---|---|
| 11.20-11.50 | *PANEL DEBATE (Bonnie Ponwith, NMFS; William Walker, GOMA (tentative); Ramon Corral Avila, CONAPESCA (tentative); Antonio Díaz de León, SEMARNAT, MODERATOR)* | 15 minutes panel discussion w/formulated guided questions & 15 min for general questions that will complement the working tables topics |
| 11.50-12.10 | Coffee Break | |
| | PLENARY SESSION Chair Bonnie Ponwith | |
| | Trends of the Living Marine Resources in the Gulf of Mexico Large Marine Ecosystem | |
| 12.10-12.30 | Integrated Assessment and Management of the Gulf of Mexico LME (TDA-SAP of LMRs) | *Porfirio Álvarez, GoM LME* |
| 12.30-12.50 | Fisheries in the Gulf of Mexico | *José Ignacio Fernández, GoM LME* |
| 12.50-13.10 | Coherence among Mexican Legislative Instruments relevant to GoM LMRs management | *Laura Vidal, GoM LME* |
| 13.15-15.00 | Lunch Break | |
| 15.00-15.20 | Socio-Economic assessment of the Terminos Lagoon Artisanal Fishermen Community | *Andrés Latapí, GoM LME* |
| 15.20-15.40 | The need for a more dynamic approach for fisheries management | *Francisco Arreguín* |
| 15.40-16.00 | Economic assessment of the industrial shrimp fleet in the GoM | *Vicente Gomez Palafox* |
| 16.00-16.45 | *PANEL DEBATE (Laura Vidal, José Ignacio Fernández Porfirio Álvarez, Francisco Arreguín, Andrés Latapi, Vicente Gomez) Moderator Bonnie Ponwith* | 45 min panel discussion w/formulated guided questions |
| 16.45-17.00 | Coffee break | |
| 17.00-17.15 | Discussion & conclusions of Day 1 | |
| 19:00 | WELCOME RECEPTION AT THE VERACRUZ AQUARIUM HOSTED BY THE STATE GOVERNMENT OF VERACRUZ SECRETARIA DE MEDIO AMBIENTE DEL ESTADO DE VERACRUZ & ACUARIO DE VERACRUZ *RSVP (Javier Acevedo Garcia  javac_13@hotmail.com)* | |

Page 2 of 10

Dr. Julio César Cruz Chavira, MBA, LLM, PhD          E-mail jccchmx@gmail.com



INTEGRATED ASSESSMENT AND
MANAGEMENT OF THE GULF OF MEXICO
LARGE MARINE ECOSYSTEM



| DAY 2 Tuesday Feb 22 | | |
|---|---|---|
| PLENARY SESSION Chair Robert Diaz | | |
| 08.00-08.20 | Working day 1 recap and Agenda Day 2 | *Porfirio Álvarez GoM LME PCU* |
| 08.20-08.40 | Main threats to LMR in the GoM LME - Climate Change | *Cisco Werner,*<br>*Director    Southwest    Fisheries*<br>*Science Center, NOAA* |
| 08.40-09.00 | Main threats to LMRs in the GoM-LME – Overexploitation of LMR (governance, social & economic issues) | *Luis Fueyo McDonald, CONANP*<br>*(tentative) or Vladimir Pliego* |
| 09.00-09.20 | Main threats to LMR in GoM-LME –Pollution (Hypoxia, HABs) | *Nancy Rabalais LUMCON* |
| 09.20-10.00 | *PANEL DEBATE* | 20    min    panel    discussion w/formulated guided questions & 20 min for general questions |
| 10.00-10.10 | *Coffee Break* | |
| 10.10-10.30 | Main threats to LMR in the GoM LME – Invasive Species | *Porfirio Álvarez GoM LME UNIDO* |
| 10.30-10.50 | Main threats to LMR in the GoM LME – Oil Spills | *Lisa DiPinto*<br>*Office    of    Response    and*<br>*Restoration*<br>*NOAA Ocean Service* |
| 10.50-11.40 | *PANEL DEBATE Chair Robert Diaz* | 30    min    panel    discussion w/formulated guided questions & 20 min for general questions |
| 11.40-12.00 | Adjust time in Agenda | |
| ROUND TABLES | | |
| ROUND TABLE 1 | | |
| 12.00-14.00 | Mapping of existing information sources for priority commercial and non-commercial LMRs<br>- Stakeholders    involvement    in    the    LMR    Management (government, academia, NGO's and civil society) *12.00-13.00 hrs*<br>Moderator<br>*Wes Tunnell, HRI (introduction to commercial and non-commercial LMR)*<br><br>*Panelists:*<br>*1.  Claudia Friess, Ocean Conservancy (Commercial and Non-Commercial LMR of the GoMx)*<br>*2.  Juan Bezaury TNC (GAP analysis – GoM regional available information, monitoring, challenges, the way forward)*<br>*3.  Interstate Fisheries Commission TBD (Commercial Fisheries in the US plus the Independent Data Collection, collaborative process)*<br>*4.  Francisco Arreguín, Commercial LMR in the Gulf of Mexico, IPN-UNIDO* | Leader - Moderator Wes Tunnell, HRI<br><br>Rapporteurs: Ignacio  Fernández GoM LME UNIDO, Laura  Vidal  GoM LME UNIDO, Verónica Aguilar, CONABIO, Orlando Iglesias GoM LME UNIDO |

Page 3 of 10

 

INTEGRATED ASSESSMENT AND
MANAGEMENT OF THE GULF OF MEXICO
LARGE MARINE ECOSYSTEM

| | | |
|---|---|---|
| | - Monitoring tools 13.00-14.00 hrs<br>*Moderator*<br>*José Ignacio Fernández, GoM LME UNIDO*<br><br>*Panelists:*<br>1. *Ann Jochens, GCOOS (data bases, regional capacity, info exchange, data quality assurance)*<br>2. *Patricia Muñoz Sevilla, Observatorio Marino Mexico-France "Jaques Cousteau"*<br>3. *Clare Fieseler, Nicholas Inst. Duke Univ. (Role of the Marine Spatial Planning in the Management of LMR in the US)*<br>4. *Fernando Rosete, INE. (Role of the Marine Spatial Planning in the management of LMR in Mexico)* | |
| 14.00-15.00 | Lunch Break | |
| | | |
| | ROUND TABLE 2 | |
| 15.00-18:30 | GoM LMRs: alternative management needs<br><br>- Sustainable management and use of LMRs (legal and institutional frameworks) 15.00-16.00 hrs<br>*Moderator*<br>*Antonio González Azuara, CONANP*<br><br>*Panelists:*<br>1. *Oscar Ramírez Flores, CONANP (Non Commercial LMR of GoM)*<br>2. *David Ortega, WWF (Experiences to engage local communities in the management of LMRs)*<br>3. *Gaspar González Sanzón, Universidad de Guadalajara ("Management of LMR in a regional scale: migratory species and larval connectivity")*<br>4. *Verónica Aguilar, CONABIO (GAP Marine Analysis of the Gulf of Mexico)*<br><br>- Legal and institutional frameworks, Law Enforcement 16.00-17.00 hrs<br>*Moderator*<br>*Porfirio Alvarez, GoM LME UNIDO (Sustainable use of LMRs under the current Regional Legal Framework)*<br><br>*Panelists:*<br>1. *Ivonne Cruz, UNIDO-Gom LME (Mapping governance in the Gulf of Mexico)*<br>2. *Raúl Villaseñor, CONAPESCA (Fisheries regulation and enforcement)*<br>3. *Vladimir Pliego, CONANP (Legal framework for LMRs)*<br>4. *Richard McLaughlin, HRI (Regional law framework, towards a regional GAP analysis)*<br>5. *Alejandra Serrano, CEMDA-ELI-GOMA, (Joint comparative Mexico-US analysis of the current legal framework in the Gulf of Mexico Region)* | *Leader –Moderator*<br><br>*Antonio González Azuara, CONANP (tentative)*<br><br>*Rapporteurs:*<br>*Ivonne Cruz. GoM LME UNIDO &*<br>*Susana Hernández, GoM LME UNIDO*<br>*William Kiene, SMP NOAA*<br>*Carolina     Quiroz GoM LME UNIDO* |

 

INTEGRATED ASSESSMENT AND
MANAGEMENT OF THE GULF OF MEXICO
LARGE MARINE ECOSYSTEM

| | |
|---|---|
| | - Environmental education & public awareness 17.00-18.00 hrs<br>*Moderator*<br>*William Klene, NOAA (The Marine Sanctuaries Program in the US, strengthened cooperation in the GoM Region, enhancing connectivity and resiliency)*<br><br>*Panelists:*<br>*1. Chris Simionello, GCOOS*<br>*2. Virgilio Arenas, University of Veracruz*<br>*3. Paloma Ladrón de Guevara, GoM LME UNIDO (Marine mammals, Manati, Whales, Dolphins, Whale Sharks)*<br>*4. Rachael Graham, Wildlife Conservation Society (Connectivity in the GoM region with the whale shark and other large elasmo-fauna)*<br>*5. Ricardo Aguilar, Acuario Veracruz, (Educational programs)*<br>*6. José Hernández, CONANP (Enhancement of public participation, outreach and local development towards conservation of LMR)* |
| 18.30 | In house news |
| 19:30 | *Cash bar 7.30 pm Hotel Novo Mar Rest-Bar* |
| 20:00 | WORKING DINNER (SIDE MEETING)<br>HOTEL NOVO MAR (Room to be announced)<br>HOSTED BY UNIDO-GEF<br>"GULF OF MEXICO LARGE MARINE ECOSYSTEM PROJECT"<br>United States and Mexico representatives<br>*"Building synergies: Contributions to the Gulf of Mexico Alliance's Gulf Summit and to the Gulf of Mexico LME Strategic Action Plan"*<br>Participants: by invitation |
| | |

Page 5 of 10

38

 INTEGRATED ASSESSMENT AND
MANAGEMENT OF THE GULF OF MEXICO
LARGE MARINE ECOSYSTEM



| DAY 3 Wednesday Feb 23 | | |
|---|---|---|
| **ROUND TABLE 3** | | |
| 08.00-8.15 | Working day 2 recap and Agenda Day 3 | Porfirio Álvarez GoM LME PCU |
| 08.15-11.15 | **Enhancing bi-lateral Mexico-US and regional cooperation: a focus on regional management**<br><br>- **GoM LME Regional Marine Protected Areas network** 8.15-9.15 hrs<br> *Moderator*<br>  *William Kiene, NOAA Marine Sanctuaries Program NOAA (Collaborative work to strength GoMx MPAs and networking processes)*<br><br> *Panelists:*<br>  1. *Amparo Martinez, CCA UNAM, (NAMPAN process, collaborative work and lessons learned to build MPAs network)*<br>  2. *Antonio González Azuara, CONANP (Building resilience and local communities livelihoods, the GoM challenges)*<br>  3. *Vladimir Pliego, CONANP (MPAs network in the Gulf of Mexico)*<br>  4. *Harriet Nash, HRI- Doctoral Fellow (Creating a decision support tool for an international MPA Network in the GoM Region)*<br><br>- **Geospatial platforms for collaboration in the GoM region** 9.15-10.15 hrs<br> *Moderator*<br>  *Reiner Ressl, CONABIO (Analysis of existing capacities, challenges the way forward)*<br><br> *Panelists:*<br>  1. *Raúl García Hernández PEMEX (industry existing tools, mechanisms for collaborative work in the region)*<br>  2. *Margarita Caso, INE (Scope for the future in the GoM LMR management)*<br>  3. *Carmen Gonzalez Macias IMP (Gulf of Mexico Oil Exploration and LMRs)*<br>  4. *Lisa DiPinto, NOAA*<br><br>- **Regional oceanography** 10.15-11.15 hrs<br> *Moderator*<br>  *Jorge Zavala, CCA-UNAM (GoM Circulation patterns, information for LMR management, oil spill lessons)*<br><br> *Panelists:*<br>  1. *Robert Díaz, Virginia Inst. (State of the art oceanographic methods, innovative tools, technological developments, pre and post oil spill)*<br>  2. *Gerardo Gold, GoM LME (GoM oceanographic available tools, infrastructure and the future of the oceanography and research in Mexico)*<br>  3. *Luis Soto, UNAM, (Existing capacity, long term vision in the GoM, oceanographic research and the LMRs of the GoM)*<br>  4. *Nancy Rabalais, LUMCON (GoM regional opportunities for cooperation, capacity building, challenges)* | *Leader –Moderator Rainer Ressl, CONABIO*<br><br>*Rapporteurs:*<br>*Orlando Iglesias, GoM LME UNIDO*<br>*Paloma Ladrón de Guevara GoM LME UNIDO*<br>*Cesar Díaz Luna, GoM LME UNIDO* |

Page 6 of 10

39

**GULF OF MEXICO LME**

INTEGRATED ASSESSMENT AND
MANAGEMENT OF THE GULF OF MEXICO
LARGE MARINE ECOSYSTEM



| 11.15-11.30 | Coffee Break | |
|---|---|---|
| 11:30-13-00 | -  **LMRs Regional Economics & Social Impacts** 11.30-12.30 hrs<br>*Moderator*<br>*Laura Vidal GoM LME UNIDO (Governance and Socio Economic conditions of LMRs in the GoM)*<br><br>*Panelists:*<br>1.  *Vicente Gómez, SEMARNAT, Shrimp Fisheries Economic Analysis in the GoM*<br>2.  *Hipólito Rodríguez, Univ. Veracruzana, (Overview of regional socio-economic conditions and major trends in the GoM)*<br>3.  *Julia Fraga CINVESTAV (Use LMR and social impacts in the GoM)*<br>4.  *Stephen A. Bortone, Gulf of Mexico US Fishery Management Council (Fisheries socio-economics and the management process)*<br>5.  *Andres Latapí (GoM LME ONUDI) Historic perspectives of the shrimp fishery in Laguna de Términos.*<br><br>FINAL DEBATE PANEL & WRAP UP (ALL PANEL MODERATORS)<br>12.30-13.00 hrs<br>*Moderators*<br>**Bonnie Ponwith and Antonio Díaz de León**<br>Final recommendations towards drafting the preliminary strategic actions for the GoMx Region<br><br>*Panelists:*<br>Robert Díaz, Wes Tunnell, José Ignacio Fernández, Carmen Carmona, Antonio González Azuara, William Kiene, Renier Ressl, Jorge Zavala , Laura Vidal | |
| 13.00-13.15 | Closing remarks,<br>*Porfirio Alvarez, UNIDO*<br>DEBATE. Wrap up, Strategic agreements, Acknowledgments and Closure | |
| 13.30 | *Lunch and Field Trip Visit to Coral Reef Restoration Project* | |

Dr. Julio César Cruz Chavira, MBA, LLM, PhD        E-mail jccchmx@gmail.com



INTEGRATED ASSESSMENT AND
MANAGEMENT OF THE GULF OF MEXICO
LARGE MARINE ECOSYSTEM



## 2   Organizing Committee

| ORGANIZING COMMITTEE | |
| --- | --- |
| *International Forum:* <br> *Sustainable Management of the Gulf of Mexico's Living Marine Resources* | |
| **INSTITUTION** | **NAME** |
| CONAPESCA | *Martín Armando Botello Ruvalcaba* |
| SEMARNAT | *Antonio Díaz de León Corral* |
| NOAA | *Bonnie Ponwith* |
| WWF | *David Ortega del Valle* |
| UV | *Virgilio E. Arenas Fuentes* |
| GoM-LME UNIDO | *Porfirio Álvarez Torres, Ramón Chávez, Javier Acevedo García, Carolina Quiroz Salazar, Orlando Iglesias, Susana Hernández, Rafael Arreola, Leoncio Frías García, Ivonne Cruz, Paloma Ladrón de Guevara, César Díaz, Gerardo Gold, Virginia García Ríos, José Ignacio Fernandez, Laura Vidal, Imre Páramo, Andrés Latapi, Cynthia Alvarez, Arturo Zaldivar, Margarita Gallegos* |
| Acuario de Veracruz | *Ricardo Aguilar* |
| Gobierno del Estado de Veracruz | *Victor Alvarado Martínez* |
| CONANP | *Antonio Gonzalez Azuara* |
| SAGARPA | *Martin Botello Ruvalcaba* |

## 3   Enquiries and Correspondence

All enquiries and correspondence on technical matters prior to the Forum should be addressed to the Project Coordination Unit (PCU).

Dr. Julio César Cruz Chavira, MBA, LLM, PhD          E-mail jccchmx@gmail.com



INTEGRATED ASSESSMENT AND
MANAGEMENT OF THE GULF OF MEXICO
LARGE MARINE ECOSYSTEM



"Integrated Assessment and Management of the Gulf of Mexico Large Marine Ecosystem"
Project, (GoM LME)
United Nations Industrial Development Organization (UNIDO)
Av. Revolución 1425. Mezanine,
Col. Tlacopac, San Ángel.
Del. Álvaro Obregón, 01040,
México, D.F.

*Porfirio Álvarez-Torres*
Project Coordinator
alvarez.porfirio@gmail.com

*Ramón Chávez-Amparán*
Strategic Action Programs Coordinator
ramonchavez64@gmail.com

Dr. Julio César Cruz Chavira, MBA, LLM, PhD     E-mail: jccchmx@gmail.com