

47445147

Oct 29 2012
09:48PM

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | * | MDL NO. 2179 |
|     "DEEPWATER HORIZON" | | |
|     In the GULF OF MEXICO on | * | SECTION: J |
|     April 20, 2010 | | |
| | * | JUDGE BARBIER |
| This document relates to: | | |
| STATE OF VERACRUZ, REPUBLIC | * | MAG. JUDGE SHUSHAN |
| OF MEXICO v. BP, PLC, NO. 10-4239; | | |
| STATE OF TAMAULIPAS, REPUBLIC | * | |
| OF MEXICO v. BP, PLC, NO. 10-4240; | | |
| STATE OF QUINTANA ROO, REPUBLIC | * | |
| OF MEXICO v. BP, PLC, NO. 10-4241 | | |
| | * | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## DEFENDANT HALLIBURTON ENERGY SERVICES, INC.'S
## DECLARATION OF EXPERT DAVID LOPEZ

Pursuant to the Court's Order of September 11, 2012 (Dkt. 7367) and by agreement of

the parties,[1] Defendant Halliburton Energy Services, Inc. ("HESI") submits this Declaration of

its expert, David Lopez, regarding the alleged proprietary interests of the Mexican States of

Veracruz, Tamaulipas, and Quintana Roo.  HESI will supplement its Joint Identification of Legal

Authorities Applicable to the Issue of the Proprietary Interests Alleged by the Mexican States,

served on October 8, 2012, in support of its affirmative position and/or on rebuttal, and reserves

its right to further supplement or amend the same.

---

[1] Counsel for the Mexican States requested that Defendants agree to extend until October 29, 2012, the original
October 26, 2012 deadline for serving this expert report.  Defendants did not oppose that extension.

Dated: October 29, 2012

Respectfully Submitted,

**GODWIN RONQUILLO PC**
By: /s/ Donald E. Godwin            ↑
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
DGodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
BBowman@GodwinRonquillo.com
Jenny L. Martinez
State Bar No. 24013109
JMartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
FHartley@GodwinRonquillo.com
Gavin E. Hill
State Bar No. 00796756
GHill@GodwinRonquillo.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

-and-

R. Alan York
State Bar No. 22167500
AYork@GodwinRonquillo.com
Jerry C. von Sternberg
State Bar No. 20618150
JVonSternberg@GodwinRonquillo.com
Misty Hataway-Coné
State Bar No. 24032277
MCone@GodwinRonquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

*Attorneys for Defendant Halliburton Energy Services, Inc.*

2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on this 29th day of October, 2012.

/s/ Jenny L. Martinez    ↑
Jenny L. Martinez

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG | * | MDL NO. 2179 |
|     "DEEPWATER HORIZON" | | |
|     In the GULF OF MEXICO on | * | SECTION: J |
|     April 20, 2010 | | |
| | * | JUDGE BARBIER |
| This document relates to: | | |
| STATE OF VERACRUZ, REPUBLIC | * | MAG. JUDGE SHUSHAN |
| OF MEXICO v. BP, PLC, NO. 10-4239; | | |
| STATE OF TAMAULIPAS, REPUBLIC | * | |
| OF MEXICO v. BP, PLC, NO. 10-4240; | | |
| STATE OF QUINTANA ROO, REPUBLIC | * | |
| OF MEXICO v. BP, PLC, NO. 10-4241; | | |
| | * | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**DECLARATION OF DAVID LOPEZ**

I, DAVID LOPEZ, declare, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

**I.**
**Introduction**

1.1    My name is David Lopez. I am over 18 years of age. I am duly licensed to practice law in the states of Texas and California and am a partner with the law firm of Pulman, Cappuccio, Pullen & Benson, LLP, in San Antonio, Texas. A true and correct copy of my curriculum vitae describing my employment and educational background is attached hereto as **Exhibit 1**.

1.2    The Mexican legal system is the central focus of my scholarly and research interests. Beginning in January 1994, I taught courses involving various aspects of the Mexican legal system, including North American Legal Systems (Comparative Law: U.S., Mexico, and Canada) and NAFTA. I wrote the chapter on "The Legal System of Mexico" that appeared in William Hein & Co.'s 20-volume <u>Modern Legal Systems Cyclopedia</u> in 2000. I also wrote the brief chapter on "Mexico's Legal System" that appeared in 2002 in Transnational Publisher's <u>Doing Business in Mexico</u> series. In 2004, the book titled <u>Mexican Law</u> that I co-authored was published by Oxford University Press. My co-authors are a Justice of the Supreme Court of Mexico, two professors at one of Mexico's top law schools (ITAM) and a former Dean of the University of Houston Law Center. I presently am involved in research relating to the second edition of the <u>Mexican Law</u> treatise. In connection with this work, I have, during the past seventeen years, conducted intensive research into the structure and operation of Mexico's legal system.

1

1.3     I have taught and lectured in Mexico concerning matters of U.S. and Mexican law. In 1996, 1997, 1998, 1999 and 2000, I served as a visiting professor at the Universidad Autónoma de Guadalajara in connection with Baylor Law School's Study Abroad Program.  I have delivered lectures on various occasions to Mexican judges, lawyers, and law students in Mexico City, Guadalajara, Monterrey and Veracruz, Mexico, and Austin and San Antonio, Texas.  From 2001 to the present, I have been involved in an international law practice representing Mexican clients in lawsuits pending in the United States and in international arbitration involving issues of Mexican substantive and procedural law, and representing U.S. businesses on matters relating to Mexican law.

1.4     From 1997 to 2012, I have served as a testifying expert on Mexican law in approximately 80 cases around the country, not including this case.  This has included cases in federal courts in the Central District of California, Southern District of California, Western District of Texas, Southern District of Texas (Corpus Christi, Galveston, Houston, Laredo and Victoria Divisions), Northern District of Texas, Western District of Michigan, Western District of New York, Western District of Washington, Southern District of Alabama and Northern District of Oklahoma.  I have testified as an expert on Mexican law in cases in state courts in California, Colorado, Georgia, Illinois and Texas (including state courts in Bexar, Cameron, Dallas, El Paso, Harris, Hidalgo, Maverick, Montgomery, Starr, Tarrant, Travis, Val Verde and Webb counties).

I have served as a consulting expert on Mexican law on more than 100 matters over the years.  Since 1997, I have been retained as a Mexican law expert by lawyers from Mexico and Canada as well as from California, Colorado, Georgia, Illinois, Louisiana, New York, Oklahoma, Pennsylvania, Texas and Washington.

1.5     This Declaration is provided in connection with the Court's order regarding Modification of Pending Discovery Schedule and Consideration of Summary Judgment Motions [Docket No. 7367].  I reserve the right to supplement my opinions as requested and to opine on matters in connection with filings by other parties.

1.6      In formulating an opinion on these issues I have relied on my general familiarity with Mexican law and the Mexican legal system.  I have consulted the sources of Mexican law cited below.  In addition, I have been provided and have reviewed case-specific materials, including Complaints (9/15/10); First Amended Complaints (9/16/10); Second Amended Complaints; Motion for Leave to File Second Amended Complaint of the States of Veracruz, Tamaulipas and Quintana Roo, Republic of Mexico (4/19/11); Mexican States' Rule 26 Initial Disclosures and attachments thereto (7/13/12); Plaintiffs' Objections and Answers to Defendants' Targeted Discovery Requests (8/24/12); agreements under which Mexico's federal government "assigns" the right to use certain national assets; Administrative Collaboration Agreements in Federal Tax Matters (*Convenios de Colaboración Administrativa en Materia Fiscal Federal*); Plaintiffs' Rule 26 Supplemental Initial Disclosures and attachment thereto (10/1/12); Halliburton & Transocean's Joint Identification of Legal Authorities Applicable to the Issue of the Proprietary Interests Alleged by the Mexican States (10/8/12); numerous documents produced by Plaintiffs; and various court orders entered in the case.

2

The conclusions that follow assume that these documents are authentic, that they accurately portray developments in this case, and that the copies of them in my possession are true and complete.

## II.
## Basic Facts as Alleged by Plaintiffs
### (Mexican States of Veracruz, Tamaulipas and Quintana Roo)

2.1   Based on the live pleadings of the Mexican States of Veracruz, Tamaulipas and Quintana Roo ("Mexican States" or "Plaintiffs"), I assume the following facts:

(a)   The Deepwater Horizon was a mobile offshore drilling unit engaged in drilling operations at the Macondo well, located in the Gulf of Mexico about 50 miles southeast of Venice, Louisiana.  On April 20, 2010, a well blowout caused explosions and fire aboard the oil rig that, in turn, led to the sinking of the vessel and discharge of substantial volumes of hydrocarbons into the Gulf of Mexico.

(b)   Plaintiffs, the Mexican States of Veracruz, Tamaulipas and Quintana Roo, have coastlines contiguous to the Gulf of Mexico.  Plaintiffs claim that oil and dispersants resulting from the Deepwater Horizon oil spill arrived at their coastlines and caused damage, including environmental damage.

(c)   Plaintiffs assert claims for negligence, gross negligence, strict liability for manufacturing and/or design defect, negligence per se, private nuisance, public nuisance, trespass, fraudulent concealment, and for recovery under the Oil Pollution Act of 1990 ("OPA").  Plaintiffs state that some of their claims are "admiralty or maritime claims."

(d)   Plaintiffs seek past and future compensatory damages, including:  (1) alleged lost tax revenue due to injury to tourism, fishing industries, commercial shipping, taxed real property and development projects, (2) alleged property damage (real property and personal property owned, controlled, managed, used and/or leased by the state), (3) alleged costs associated with increased public services, clean-up and removal, and (4) alleged harm to the environment (marine, coastal and estuarine environments).  In addition, Plaintiffs seek punitive damages.

2.2   In December 2011, the Honorable Judge Carl Barbier dismissed the Mexican States' claims under OPA and negligence per se and nuisance claims asserted against Halliburton.  See Order and Reasons [Docket No. 4845], at 11-12.  Further, Judge Barbier ruled that:  "The Mexican States' negligence and gross negligence claims asserted against Defendants other than Anadarko are preserved, but only to the extent there has been a **physical injury to a proprietary interest**." Id. (emphasis added).

2.3   "Proprietary Interest."  I understand "proprietary interest" to be a concept created as a matter of U.S. common law to define when a party has standing to bring certain claims in a U.S. lawsuit – i.e., if a party suffers physical injury to its proprietary interest it has

standing to sue.  There is no parallel development of a concept of "proprietary interest" in a similar context under Mexican law, in part because Mexican courts do not make common law.  A concept that does exist in Mexican law that may most closely approximate the U.S. concept of "proprietary interest" is that of *derecho real*, which translates into English as "*in rem* right" or "rights in a specific thing."  In Mexican law, *derechos reales* are understood to be absolute (as opposed to relative), exclusive (meaning that they include the right to exclude others from use of the thing) and perpetual (lasting for as long as the thing or object exists).  See Rafael de Pina, Diccionario de Derecho 241 (Porrúa 2008).

## III.
## The Mexican Legal System

3.1  Structure.  Mexican government operates according to a federal structure, consisting of a single federal government, 31 states and a Federal District (i.e., Mexico City).  See Political Constitution of the United Mexican States (*Constitución Política de los Estados Unidos Mexicanos*), Arts. 43.  Mexico's federal government is composed of 3 separate branches, Executive, Legislative and Judicial.  Const., Art. 49(¶ 1).  The Executive Branch is in charge of the Federal Public Administration, which includes the various Departments (such as the Department of the Environment and Natural Resources).

3.2  Sources of Mexican law.  There are a variety of sources of law in the Mexican legal system, including constitutions, statutes, codes, official norms, regulations and judicial rulings.  See Stephen Zamora, et al., Mexican Law 77-94 (2004).  Not all of those sources of law are of equal weight or preeminence; rather, a hierarchy of law exists in the Mexican legal system that dictates the relative importance and ordering of the various sources of law.  See id. at 94-101.

3.3  The single most important source of law in Mexico is the Mexican Constitution of 1917.  In Mexico's hierarchy of legal sources, the federal Constitution dominates all other laws.  Like the Constitution of the United States, the Mexican Constitution contains a Supremacy Clause that renders Mexican federal law supreme over state law.  Article 133 of the Constitution states:

*This Constitution, the Laws enacted by Congress pursuant thereto and all Treaties made, or which shall be made, by the President of the Republic with the Senate's approval, shall be the supreme Law of the Union.  The judges in every State shall be bound by said Constitution, Laws and Treaties, notwithstanding anything to the contrary in the constitutions or laws of the States.*

There exists in Mexico a body of federal law and a separate body of law in each of the 31 Mexican states and Federal District.

3.4  The Federal Government's Domination of Governmental Authority.  Although the U.S. and Mexican federal systems of government are structurally similar, historically and today Mexico's federal government plays a far more dominant role, and often

4

monopolistic role, at the expense of state power than does the U.S. federal government. See Zamora, supra, at 108. Like the U.S. Constitution, the Mexican Constitution grants certain governmental powers to Mexico's federal government and, on paper, reserves powers not granted to the federal government to the states. Const., Art. 124.

However, as Professor Zamora explains, in practice and effect federalism in the United States and Mexico is not comparable:

> *At first glance, the similarity of Mexican federalism to the federal structure of the United States is obvious. … Superficial appearances are deceiving, however. While it is true that the US Constitution served as an important model for the Mexican Constitution, the manner and degree to which the federal/state balance of power has evolved differs considerably from the US model. ….*

> *In Mexico, "a country with a precarious and fictitious federal regime", discussions of federalism dominate a large space in the political terrain. The need for greater decentralization has been a constant theme addressed by the federal government in Mexico even during the height of the PRI's centralist, authoritarian control. Rather than simply abandoning legislative power to the states, however, the federal government's usual approach has been to establish a plan or programme to "co-ordinate" the decentralization, either within the federal government or between the federal government and the states. The overall result has been to maintain ultimate federal control over the states, exercised by the federal bureaucracy. ….*

Zamora, supra, at 103 (footnotes omitted).

Even in areas in which the Mexican Constitution expressly grants "concurrent jurisdiction" to the states and federal government, the federal government dominates at the expense of the states. According to Professor Zamora:

> *To say that power is shared between the state and local governments would give a mistaken impression, however. In most areas, it is the federal government that determines the precise balance of state and federal authority in cases of concurrent jurisdiction, through the passage of enabling legislation (leyes generales). By itself determining the balance, the Federal Congress has tended to endow the federal government with the bulk of legislative power and executive authority.*

Id. at 112 (footnote omitted). Thus, in fields such as environmental protection and taxation where Mexican law provides for concurrent governmental authority, the role of the Mexican states is limited and secondary to that of the federal government. See id. at 122 (In Mexico, "environmental protection remains almost exclusively a federal matter"); id. at 129 ("The federal government dominates the collection and distribution of taxes.").

3.5   Maritime Law. Mexican maritime law is set forth in the Mexican Constitution and a few

key statutes, including the Federal Law of the Sea (*Ley Federal del Mar*) and Law of Navigation and Maritime Commerce (*Ley de Navegación y Comercio Marítimos*).  In Mexico as in the United States, maritime law is exclusively federal.

3.6     <u>Environmental Law</u>.  Mexican environmental law is set forth in the Mexican Constitution and certain key statutes, including the General Law of Ecological Balance and Environmental Protection (*Ley General del Equilibrio Ecológico y la Protección al Ambiental*).  The Mexican Constitution establishes that governmental authority in certain environmental matters is to be shared concurrently among the federal government, states and municipalities; however, the Mexican Constitution grants the federal government the authority to determine the distribution of environmental authority among the three levels of government.  In practice, the federal government dominates the field of environmental regulation, leaving Mexican states relatively limited environmental powers.

**IV.**
**Under Mexican law, the Relevant Waters, Lands and Natural Resources**
**<u>are Owned by Mexico's Federal Government, Not by Mexican States</u>**

**Question**:     As a matter of Mexican law, do the Mexican States have proprietary (ownership) interests in property, if any, that sustained physical damage as a result of the oil spill in the Gulf of Mexico?

**Short Answer**:  Under Mexican law, the waters, lands and natural resources allegedly damaged by the oil spill are the proprietary interests of and are "owned" by the country of Mexico and Mexico's federal government, not each of the various Mexican states.

4.1     The Mexican States' Second Amended Complaints do not specify the waters, lands, aquatic life, wildlife, natural resources and/or other "property" that they each allegedly own and that was allegedly damaged as a result of the oil spill in the Gulf of Mexico. Presumably, Plaintiffs contend that oil from the Macondo well flowed into Mexican waters, washed up on Mexican beaches and ultimately ended up on other Mexican lands aside from the beaches and on Mexican aquatic and wildlife.

In Plaintiffs' Objections and Answers to Defendants' Targeted Discovery Requests (8/24/12), they claim to "own" their "shores, waterways, lagoons, bays, water ways, estuaries, beaches, reefs, sea beds and waters extending into and comprising the Mexican Exclusive Economic Zone," including the marine life found therein.  <u>See</u> Answer to Interrogatory No. 1.  Plaintiffs further assert that they have proprietary interests in "natural resources, fish, marine life, and areas (land and water) in the Mexican EEZ, the state territorial waters, and other areas and sites along the coast of the states."  <u>See</u> <u>id</u>.

4.2     To determine who owns such lands, waters and natural resources under Mexican law, one's legal analysis must begin with the Constitution since that is the country's supreme law.  Const., Art. 133.  The relevant constitutional provisions include Articles 27 and 42.

6

4.3     <u>Mexican Constitution, Article 27(¶ 1)</u>.  Article 27 is the central constitutional provision relating to the ownership of lands and waters in the country of Mexico.  The first paragraph of Article 27 establishes the overarching premise of Mexican real property ownership, which is that "the Nation" – meaning the country of Mexico – is the "original" owner of all lands and waters within Mexico's "national territory."  Const., Art. 27(¶ 1).

By the time of the Mexican Revolution in 1910, land ownership was highly concentrated in the hands of a relatively small group of wealthy land owners and foreigners such that the Mexican masses were essentially landless.  <u>See</u> Zamora, <u>supra</u>, at 28; Jorge A. Vargas, *The Constitution of Mexico*, in 2 <u>Mexican Law: A Treatise for Legal Practitioners and International Investors</u> 41 (West 1998).  In addition, by 1910 the territory that is now Mexico had experienced multiple invasions by foreign powers, including the Spanish, French and Americans.  Thus, land reform and expropriation of land owned by foreigners were essential underpinnings of the Mexican Revolution in 1910 and shaped the Mexican Constitution.  <u>See</u> Zamora, <u>supra</u>, at 30-31.  Article 27(¶ 1) of the Constitution is a reflection of the decision of the Mexican people to reform land ownership in the entire country by declaring it to be vested "originally" in the Nation and to permit private parties to own land only if that right was expressly granted to them by the Nation.  The concept is that the private ownership of land is secondary to and subject to the collective needs of the Mexican people.  <u>See, e.g.</u>, <u>Importancia Trascendente para el Interes Nacional. Caso en que se Plantea una Cuestion Relacionada al Dominio de la Federación sobre Tierras</u>, [TA]; 7a Época; Pleno; S.J.F.; 56 Primera Parte; Pág. 28 (Registro No. 233216)  (holding that national interests in land ownership are superior to private property interests).

This history behind Article 27 is important because it creates a constitutional presumption that the lands and waters within Mexico's national territory do not belong to private parties or to individual Mexican states, but to the Nation.

<u>"Nation."</u>  The Mexican Supreme Court has held that the term "Nation" as it appears in the Mexican Constitution means and refers to Mexico's federal government, not the states.  <u>See</u> <u>Nacion, Representacion de la</u>, [TA]; 5a. Época; 2a. Sala; S.J.F.; LII; Pág. 72 (Registro No. 332930).

<u>"National territory."</u>  Article 42 of the Mexican Constitution defines the term "national territory" to include the territory of the integral parts of the Federation (meaning the territory of the states and Federal District); the territory of the islands (including the reefs and keys in adjacent seas); the continental shelf; the submarine shelf of the islands, keys and reefs; and the waters of the territorial seas, among other areas.  Const., Art. 42.

4.4     <u>Mexican Constitution, Article 27(¶ 4)</u>.  The fourth paragraph of Article 27 establishes that the Nation has "direct ownership of all natural resources of the continental shelf and the submarine shelf of the islands."  Pursuant to Article 27(¶ 6), the Nation's ownership thereof is "inalienable and imprescriptible."

7

4.5    <u>Mexican Constitution, Article 27(¶ 5)</u>.  The fifth paragraph of Article 27 states, in relevant part, that:

> *In the Nation is vested the ownership of the waters of the territorial seas, within the limits and terms fixed by international law; inland marine waters; those of lagoons and estuaries permanently or intermittently connected with the sea; those of natural, inland lakes which are directly connected with streams having a constant flow; those of rivers and their direct or indirect tributaries from the point in their source where the first permanent, intermittent, or torrential waters begin, to their mouth in the sea, or a lake, lagoon, or estuary forming a part of the public domain; those of constant or intermittent streams and their direct or indirect tributaries, whenever the bed of the stream, throughout the whole or a part of its length, serves as a boundary of the national territory or of two federal divisions, or if it flows from one federal division to another or crosses the boundary line of the Republic; those of lakes, lagoons, or estuaries whose basins, zones, or shores are crossed by the boundary lines of two or more divisions or by the boundary line of the Republic and neighboring country or when the shoreline serves as the boundary between two federal divisions or of the Republic and a neighboring country; those of springs that issue from beaches, maritime areas, the beds, basins, or shores of lakes, lagoons, or estuaries in the national domain; and waters extracted from mines and the channels, beds, or shores of interior lakes and streams in an area fixed by law.*

Pursuant to Article 27(¶ 6), the Nation's ownership of the foregoing "waters" is "inalienable and imprescriptible."

4.6    <u>Mexican Constitution, Article 27(¶ 8)</u>.  The eighth paragraph of Article 27 establishes that the "Nation" is the sovereign authority in an "exclusive economic zone" ("EEZ") located from the baseline where the territorial sea ends and extending 200 nautical miles.

4.7    <u>General Law of National Assets</u> ("GLNA").  Other bodies of Mexican federal law, including the General Law of National Assets (*Ley General de Bienes Nacionales*), Federal Law of the Sea (*Ley Federal del Mar*), and Ports Law (*Ley de Puertos*), confirm and elaborate the point that the country of Mexico, not the individual States, owns the relevant lands, waters and natural resources.

Article 3 of the GLNA defines "national assets" to include the lands and waters delineated in paragraphs 4, 5 and 8 of Article 27 of the Mexican Constitution, the "national territory" defined in Article 42(IV) of the Mexican Constitution, and "common use" assets.  GLNA, Art. 3.

Article 6 of the GLNA provides that all of those properties plus the seabed and subsoil of the territorial sea and of internal marine waters are subject to the Federal Government's "public domain" or "public ownership" regime.  GLNA, Art. 6.

Article 7 of the GLNA defines assets of "common use" to include, among other things,

internal marine waters; the territorial sea; maritime beaches; the federal maritime zone; ports, bays, roadsteads and coves; dikes, piers, breakwaters, esplanades and other works of ports, when they are of public use; and stream beds and lake, lagoon and estuaries owned by the Nation.  GLNA, Art. 7.  Article 119 of the GLNA then extends the federal maritime-land zone on coastal beaches and from lakes, lagoons and estuaries that communicate directly or indirectly with the sea 20 meters from certain points of demarcation.  GLNA, Art. 119.

Consistent with the Mexican Constitution, Article 13 of the GLNA provides that the assets subject to the Federal Government's public domain are "inalienable, imprescriptible and unseizable."  GLNA, Art. 13.

Article 15 of the GLNA limits the rights that can be acquired by a public institution that is granted the right to use national assets.  Pursuant to Article 15, public institutions that use, enjoy or exploit assets within the public domain acquire "only" those rights provided for in the GLNA and other laws enacted by the Mexican Congress.  GLNA, Art. 15.  In other words, to the extent the Mexican States herein claim to have certain rights in assets within the federal public domain, they must show that such rights are enumerated in federal law as rights that can be conveyed to them.

Article 16 of the GLNA states that:  "[C]oncessions, permits and authorizations over assets subject to the public domain of the Federal Government do not create *in rem* rights; they simply grant before the executive branch and without prejudice to third parties the right to use, enjoy or exploit those assets as set forth in the terms and conditions established under the applicable legislation and by the concession title, permit or authorization that was granted."  GLNA, Art. 16.

Just as Article 16 does with respect to concessions and permits, Article 70 of the GLNA provides that "assignments" (*destinos*) of federal assets by the Federal Government to other institutions "only" confer the right to use (*el derecho de usar*) the assigned asset but do not transfer title to the asset nor grant the receiving institution any *in rem* right (*derecho real*) in the asset.  GLNA, Art. 70(¶ 1).

**"In rem rights."**  As just noted, Article 16 of the GLNA expressly states that federal concessions, permits and authorizations over public domain assets do not convey "*in rem* rights" to the receiving party.  The term for *in rem* rights in the original Spanish-language version of Article 16 is "*derechos reales*."  Thus, the legal effect of provisions like Article 16 is to clarify and establish that when Mexico's federal government grants a state or private party a concession, permit or authorization to use an asset in the public domain, the federal government is not transferring but is in fact retaining key proprietary elements of the asset.

4.8    Federal Law of the Sea ("FLS").  Article 3 of this federal statute defines Mexican "marine zones" to include the territorial sea, internal marine waters, the Contiguous Zone, the EEZ, the Continental Shelf and insular shelves.  FLS, Art. 3.  The statute then goes on to grant Mexico's federal government exclusive authority to govern in such

9

marine zones.  FLS, Arts. 2 & 4; see also Aguas Federales, [TA]; 5a. Época; Pleno; S.J.F.; XIV; Pág. 1521 (Registro No. 285270) (holding that enforcement and control of the waters of federal jurisdiction belong exclusively to the Executive Branch and that ownership of said waters is inalienable and imprescriptible).

4.9    Ports Law.  Article 14 of Mexico's Ports Law provides that the land and waters in port areas are "assets of public domain" of the Federal Government.  Ports Law, Art. 14.

4.10   Waters Regulation.  The *Regulation for the Use and Enjoyment of the Territorial Sea, Navigable Waterways, Beaches, Federal Maritime-Land Zone and Land Reclaimed from the Sea*[1] is intended to promote compliance with federal statutes, including the General Law of National Assets, in reference to the use, control, administration and supervision of beaches and other federal lands.  See Regulation, Art. 1.

Article 5 of the Regulation provides that the beaches, the federal maritime-land zone, and lands reclaimed from the sea are "assets of public domain" of the Federal Government and are inalienable and imprescriptible.  See Regulation, Art. 5(¶ 1).

Article 35 of the Regulation provides that the concessions, assignments and permits granted by the federal government pursuant to the Regulation do not create *in rem* rights in favor of their holders but only grant the right to use, enjoy and exploit the federal marine-land zone and land reclaimed from the sea.  See Regulation, Art. 35.

## V.
## Concurrent Jurisdiction in Environmental and Other Matters is Not the Equivalent of an Ownership Interest

**Question**:   Are grants of "concurrent jurisdiction" to the Mexican states the equivalent under Mexican law of a grant of an ownership interest in the lands, waters or natural resources over which the jurisdiction is exercised?

**Short Answer**:   No.  Although Mexican federal law grants the federal government, states and municipalities "concurrent jurisdiction" in certain fields, a grant of jurisdiction to the States is not the equivalent of granting the States an ownership or proprietary interest in the lands, waters and natural resources within that jurisdiction.

5.1    As explained above, the purpose of certain provisions in the Mexican Constitution – e.g., Article 27 – is to define the ownership of lands, waters and natural resources in Mexican territory.  The role of other provisions in the Mexican Constitution – e.g., Article 73 – is not to define proprietary interests but to establish which governmental authority has jurisdiction to govern or administer different fields of human activity.

---

[1] *Reglamento para el Uso y Aprovechamiento del Mar Territorial, Vías Navegables, Playas, Zona Federal Marítimo Terrestre y Terrenos Ganados al Mar* (published Aug. 21, 1991).

10

5.2    Jurisdiction over International and Interstate Environmental Matters.    Article 5 of Mexico's General Law of Ecological Balance and Environmental Protection ("GLEBEP") provides that the Federal Government has authority over environmental matters that originate in Mexico and affect the ecology of other countries.  GLEBEP, Art. 5(IV).    Article 5 also provides that the Federal Government has authority over environmental matters that affect the ecology of two or more Mexican states.  GLEBEP, Art. 5(XX).  In accordance with Article 5, to the extent the matters complained of by the Plaintiff Mexican States are international or interstate in nature, Mexico's Federal Government, not any state, has jurisdiction over them.

5.3    Concurrent Jurisdiction – Domestic Environmental Matters.  Article 73(XXIX-G) of the Mexican Constitution grants the Mexican Congress the power "[t]o enact laws establishing concurrent jurisdictions of the Federal Government and of the State and Municipal governments, in the scope of their respective jurisdictions, in environmental protection and ecological balance preservation and restoration matters."  Const., Art. 73(XXIX-G).  However, Article 73(XXIX-G) does not concern or grant ownership or proprietary interests in Mexican lands, waters and natural resources.

General Law of Ecological Balance and Environmental Protection.  Consistent with Article 73 of the Mexican Constitution, this statute provides that the concurrent environmental authority of the Mexican States and Municipalities is to be determined by federal law:    "The Federal Government, the States, the Federal District and the Municipalities shall exercise their powers in matters of ecological balance preservation and restoration and environmental protection, pursuant to the distribution of authority provided for in this Law and in other laws."  GLEBEP, Art. 4(¶ 1).

Article 11 of the GLEBEP provides that the federal government can enter into "coordination agreements" with the States under which the States assume certain administrative powers within their territorial bounds, such as the power to evaluate environmental impact and to protect and preserve wild flora and fauna and forest resources.  GLEBEP, Art. 11.  However, the statute does not give the States any proprietary interest in the associated lands, waters and natural resources.

General Law of Wildlife ("GLW").    Consistent with Article 73 of the Mexican Constitution, the General Law of Wildlife (*Ley General de Vida Silvestre*) provides that the concurrent jurisdiction of the federal government, Mexican States, and Municipalities is to be determined by federal law:  "[The purpose of the law is] to establish concurrent jurisdiction by the Federal Government, State governments and Municipalities, in the scope of their respective authority, in relation to the sustainable conservation and utilization of wildlife and its habitat in the territory of the Mexican Republic and in the zones where the Nation exercises its jurisdiction."  GLW, Art. 1(¶ 1).  However, the purpose of the GLW is not to transfer ownership interest.

Article 9 of the GLW grants the Federal Government authority over matters relating to the conservation and sustainable use of national wildlife in the case of acts originating in

11

other countries that can affect national wildlife.  GLW, Art. 9(VI).

Article 11 of the GLW provides that the federal government can enter into "coordination agreements" with the States under which the States assume certain administrative powers within their territorial bounds, such as the power to apply measures relative to critical habitat and refuge areas of aquatic species.  GLW, Art. 11.  However, that Article does not purport to transfer ownership or any proprietary interest in the same of the subject wildlife from the federal government to the States.

General Law of Sustainable Forest Development ("GLSFD").  Consistent with Article 73 of the Mexican Constitution, one of the functions of the General Law of Sustainable Forest Development (*Ley General de Desarrollo Forestal Sustenable*) is "to distribute the authorities in forest matters which correspond to the Federal Government, States, Federal District, and Municipalities, under the concurrent jurisdiction principle provided for by Article 73, Section XXIX-G of the Political Constitution of the United Mexican States, with the purpose of promoting the sustainable forest development."  GLSFD, Art. 1.

Article 24 of the GLSFD provides that the federal government can enter into "coordination agreements" with the States under which the States assume certain administrative powers within their territorial bounds, such as the power to conduct forest inspections and impose administrative sanctions for violations of forest laws.  GLSFD, Art. 24.  However, that statute does not purport to transfer ownership of the subject forests from the federal government to the States.[2]  Indeed, Article 5 of that law specifically states that:   "The procedures set forth by this Law shall not alter the ownership regime of said land."  GLSFD, Art. 5.

5.4   Concurrent Jurisdiction – Aquaculture Matters.   Article 73(XXIX-L) of the Mexican Constitution grants the Mexican Congress the power "[t]o enact laws establishing concurrent jurisdictions of the Federal Government and of the State and Municipal governments, in the scope of their respective jurisdictions, in fishing and aquaculture matters …."  Const., Art. 73(XXIX-L).

General Law of Sustainable Fishing and Aquaculture ("GLSFA").  This is a federal statute that, in part, implements Article 73(XXIX-L)'s grant of concurrent jurisdiction.  Although the General Law of Sustainable Fishing and Aquaculture (*Ley General de Pesca y Acuacultura Sustenable*) statute grants States some administrative authority in this field, it does not purport to transfer ownership of the subject assets to the States.  For example, Article 108 of this law provides that the States are to work in coordination with the federal government in enforcing aquaculture safety measures and undertaking aquaculture sanitation actions; however, the statute does not give the States any proprietary interest in the associated lands, waters and natural resources.  GLSFA, Art. 108.

---

[2]  Additionally, and as discussed more fully in Section VI below, the administrative authority granted to the States under the GLSFD does not include the power to file a civil lawsuit to pursue claims for alleged injury to forests.

Article 11 of the GLSFA provides that the federal government can enter into "coordination agreements" with the States under which the States assume certain administrative powers within their territorial bounds, such as the power to administer sport fishing permits and to undertake operations to promote compliance with federal law. GLSFA, Art. 11. However, that statute does not purport to transfer ownership of the subject natural resources from the federal government to the States.

## VI.
## Under Mexican Law, Mexican States Lack
## Standing to Pursue the Claims Pled in this Case

**Question**:   Putting aside whether the Mexican States have a proprietary interest in the relevant Mexican lands, waters and natural resources, do the Mexican States have standing <u>as a matter of Mexican law</u> to file a civil lawsuit to pursue the claims they have pled arising out of the Deepwater Horizon oil spill?

**Short Answer**:   No. With respect to claims of a maritime nature, only Mexico's federal government has jurisdiction to prosecute public maritime claims. Mexican law renders maritime matters exclusively federal and, thereby, deprives Mexican States of standing to pursue claims for injury to Mexico's maritime interests. As to non-maritime claims (e.g., claims for environmental injury), one does not find in Mexican law any grant of standing to States to initiate and prosecute civil lawsuits for damage to environmental interests within the jurisdiction of Mexico's federal government, such as Mexican federal lands and waters.

6.1    In connection with the Motion to Dismiss the Local Government Entity Master Complaint, Judge Barbier ruled that, under *Robins Dry Dock*, the Mexican States can pursue negligence and gross negligence claims against certain Defendants "only to the extent there has been a physical injury to a proprietary interest." See Order and Reasons [Docket No. 4845], at 11-12. In other words, the Court is applying a filter derived from U.S. law to determine whether the Mexican States can pursue certain causes of action created by U.S. law.

6.2    In this context, standing to sue is tied to proprietary interest – i.e., a party is deemed to have the ability to pursue a civil lawsuit to recover for physical injury to a thing if the party has a "proprietary interest" in the thing. One indication that the Plaintiff Mexican States do not have a proprietary interest in the subject matter of their claims is that, under Mexican law, they do not possess the <u>governmental authority</u> to file civil lawsuits to pursue claims for alleged damages arising out of an oil spill in the Gulf of Mexico.

6.3    Obviously, the Mexican States are creatures of Mexican law. They exist solely by virtue of the Mexican Constitution and other laws, and their powers – i.e., the establishment of

13

what they can and cannot do as governmental units – are a function of Mexican law. As explained below, Mexican law does not expressly grant the States the governmental power to initiate civil lawsuits to pursue claims for alleged damages arising out of violations of federal maritime or environmental law. To the contrary, Mexican law grants such governmental authority to the federal government exclusively, at the expense of state governmental authority. Thus, regardless of what U.S. law may provide with regard to standing to bring claims, the Mexican States lack standing to pursue the claims at issue as a matter of Mexican law.

6.4 <u>Mexican Maritime Law</u>. As noted above, the Mexican Constitution defines the ownership of Mexican lands, waters and natural resources. Separate and apart from defining ownership and proprietary interests, the Mexican Constitution and the associated maritime statutes grant exclusive jurisdiction to the Federal Government.

Article 27(¶ 8) of the Mexican Constitution provides that the Federal Government exercises sovereign rights and jurisdiction in Mexico's EEZ. Const., Art. 27(¶ 8). Article 48 provides that the islands, keys and reefs of the adjacent seas that pertain to national territory; the continental shelf; the submarine shelf of the islands, keys and reefs; the territorial seas and inland marine waters are under the authority of the Federal Government. Const., Art. 48. Article 73(XIII) grants the Mexican Congress the exclusive power to enact maritime laws. Const., Art. 73(XIII).

Article 4 of Mexico's Law of Navigation and Maritime Commerce ("LNMC") establishes that everything related to waterways, navigable waters, navigation and maritime commerce in Mexican marine zones, and in general all acts and events that arise therein, are of federal jurisdiction. LNMC, Art. 4.

Articles 2, 3 and 7 of the Federal Law of the Sea provide that Mexican maritime zones are matters of Mexican federal law under the exclusive jurisdiction and control of Mexican federal authorities. FLS, Arts. 2, 3 & 7.

Article 9 of the General Law of National Assets provides that the assets subject to the public domain of the federal government will be "exclusively" under the jurisdiction of the federal government. GLNA, Art. 9. Consistent therewith, Article 10 of that statute establishes that only Mexican federal courts have jurisdiction to adjudicate cases involving assets subject to the federal government's public domain. GLNA, Art. 10.

6.5 <u>Mexican Environmental Law</u>. Article 73(XXIX-G) grants the Mexican Congress the exclusive authority to allocate jurisdiction in environmental matters among the federal government, states, and municipalities. Const., Art. 73(XXIX-G).

In the General Law of Ecological Balance and Environmental Protection, the Mexican Congress granted only limited powers to the States. For example, the statute permits states to assist in the enforcement of federal environmental laws through local prosecutors/agencies using administrative sanctions (*sanciones*) but not through civil lawsuits. <u>See, e.g.</u>, GLEBEP, Chap. IV (titled "Administrative Sanctions"). Pursuant to

14

Article 188 of the GLEBEP, states can establish <u>administrative</u> sanctions for violations of <u>local</u> environmental law.  GLEBEP, Art. 188.  However, Mexican law grants only to the Federal Attorney General for Environmental Protection the governmental power to initiate actions for violations of federal environmental law.  GLEBEP, Art. 202; Internal Regulation of the Department of the Environment and Natural Resources (*Reglamento Interior de la Secretaría de Medio Ambiente y Recursos Naturales*), Art. 118; <u>see also</u> National Waters Law (*Ley de Aguas Nacionales*), Art. 14 bis 4(IV).

Similarly, pursuant to Article 107 of the General Law of Wildlife, the Federal Attorney General for Environmental Protection has exclusive standing to file actions to recover for damage to wildlife covered by the statute.

Thus, although the Mexican Congress has allocated some administrative environmental authority to the states in accordance with the "concurrent jurisdiction" provision of the Mexican Constitution, Congress has not conferred on the Mexican States concurrent jurisdiction or "standing" to enforce federal environmental laws by bringing civil lawsuits.  This lack of standing is consistent with the conclusion that, under Mexican law, it is the Federal Government that possesses "proprietary interests" in the environmental and natural resource matters at issue.

## VII.
## <u>Final Matters</u>

7.1    My fee for serving as an expert witness in this case on issues relating to Mexican law is $500 per hour.  In no event is my expert witness fee contingent upon the substance of opinions rendered by me.

7.2    To the best of my knowledge and information, I have testified live as an expert on Mexican law by deposition, in court or in arbitration during the preceding four-year period (October 2008 to October 2012) in the following cases:

<u>In the Matter of the Arbitration between Vinmar Trade Finance, Ltd. and HCC Specialty Insurance Co.</u>, No. 50 195 T 00015 08, American Arbitration Association – Int'l Centre for Dispute Resolution (New York);

<u>In re Estate of Adrian Gonzalez</u>, No. 2008-PC-2569, Probate Court No. 1, Bexar County, Texas;

<u>I.P.I.C., GSP, S.L. vs. Ruhrpumpen, Inc. and Corporación EG S.A. de C.V.</u>, No. 08-CV-510-CVE-PJC, U.S. District Court for the Northern District of Oklahoma;

<u>Raphael Noel Etienne v. Beatriz Elizabeth Villarreal Zuniga</u>, No. 3:10-cv-05061-BHS, U.S. District Court for the Western District of Washington, Tacoma Division;

<u>Centralized Technologies, Inc. v. Kvaerner Oilfield Products, Inc.</u>, No. A-08-0012-CV-A, 36th Judicial District, Aransas County, Texas;

Hector M. Fierro, et al. v. Topspin Partners, L.L.P., et al., No. 2006-979, 6th County Civil Court, El Paso County, Texas;

In the Matter of the Marriage of Rosa Jimenez and Juan F. Jimenez, No. F-896-09-6, County Court at Law No. 6, Hidalgo County, Texas;

U.S. Bank National Association v. Steadfast Insurance Co. and Vinmar Trade Finance, Ltd., No. 50 181 T 00398 08, American Arbitration Association – International Centre for Dispute Resolution (New York);

Tiber Aviation, S.r.l. v. Textron Financial Corporation, Bell Helicopter Textron, Inc., United Rotorcraft Solutions LLC, Helicopteros y Vehiculos Aereas Nacionales, S.A. de C.V., United States of America, Department of Commerce, No. 4:09-CV-00471-A, U.S. District Court for the Northern District of Texas, Fort Worth Division;

In the Interest of Jean Paul Lacombe, No. 2009-CI-17605, 73rd District Court, Bexar County, Texas;

Rudolph A. Schlais, Jr., individually and as legal representative for Cyrill Eltschinger, Reiko Yuan, Laura Ning, Sean Zhao, Charles Zhang and Ray Yang, Plaintiffs v. Valores Corporativos Softtek, S.A. de C.V., No. D-1-GN-08-003878, 126th District Court, Travis County, Texas;

In re Enrique Pimienta, Debtor, No. 05-30565-H5-7, U.S. Bankruptcy Court, Southern District of Texas, Houston Division;

Javier Giner and Damian Noriega vs. Estate of Martin Higgins and Lithium Nickel Asset Holding Company, I & II, Inc., No. EP-11-CV-0126-KC, U.S. District Court for the Western District of Texas, El Paso Division;

In the Matter of the Marriage of Lucia Marcellini and Alejandro del Valle de la Vega, No. 12-01-00133-CV, County Court at Law No. 3, Montgomery County, Texas;

Rosa Maria Ureta Moreno v. Victor Manuel Lopez Gachuz, No. 2012-CI-02733, 408th District Court, Bexar County, Texas; and

Gloria de los Angeles Trevino Ruiz, Individually and on Behalf of Her Minor Child, Angel Gabriel de Jesus Trevino and Armando Ismael Gomez v. Azteca America, Una Vez Mas, LP d/b/a Azteca America, Un Vez Mas McAllen License, LLC, Azteca International Corporation, TV Azteca, S.A.B. de C.V., Patricia Chapoy, and Publimax, S.A. de C.V., No. C-1027-09-C, 139th District Court, Hidalgo County, Texas.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 29th day of October 2012.

_____
David Lopez

*CURRICULUM VITAE*

**DAVID LOPEZ**
Pulman, Cappuccio, Pullen & Benson, LLP
2161 N.W. Military Hwy, Suite 400
San Antonio, Texas 78213
(210) 222-9494
dlopez@pulmanlaw.com

## EDUCATION:

HARVARD LAW SCHOOL, Cambridge, Massachusetts
Class of 1988, J.D.
Graduation Honors: **cum laude**
Editor, HARVARD LAW REVIEW, Volumes 100 & 101

GEORGETOWN UNIVERSITY, School of Foreign Service, Washington, D.C.
Class of 1985, B.S.F.S., International Economics Major
Graduation Honors: **magna cum laude**
Member, Phi Beta Kappa

## LEGAL POSITIONS:

PULMAN, CAPPUCCIO, PULLEN & BENSON, LLP, San Antonio, Texas
Partner, January 2008 to the present

DAVIS, CEDILLO & MENDOZA, INC., San Antonio, Texas
Partner, January 2003 to December 2007
Of Counsel, June 2001 to December 2002
Senior Litigation Associate, June 1992 to July 1993

GIBSON, DUNN & CRUTCHER, Los Angeles, California
August 1990 to June 1992
Corporate Litigation Associate

SAN ANTONIO COMMUNITY LAW CENTER, San Antonio, Texas
August 1988 to May 1990
Co-Founder, Co-Director and Staff Attorney

## PROFESSIONAL RECOGNITION:

**Rated "AV Preeminent 5.0"** by Martindale-Hubbell

**Texas Super Lawyer for 2008, 2009, 2010, 2011 and 2012**
Top 5% of practicing Texas attorneys as selected by peers, TEXAS MONTHLY MAGAZINE



EXHIBIT
1

**2008, 2009, 2010 and 2011 San Antonio's Best Lawyers**
Top "Business Litigation" attorneys as selected by peers,
SCENE IN S.A. MAGAZINE

Master of the Bench, William S. Sessions American Inn of Court, San Antonio, Texas

Member, The Million Dollar Advocates Forum (since 2006)

## ACADEMIC POSITIONS:

ST. MARY'S UNIVERSITY SCHOOL OF LAW, San Antonio, Texas
Adjunct Professor of Law, Fall 2008, 2009, 2010 & 2012
International Commercial Arbitration Seminar (with Judge John Specia)

ST. MARY'S UNIVERSITY SCHOOL OF LAW, San Antonio, Texas
Full Professor of Law with tenure, June 1997 to May 2003
Associate Professor of Law, August 1993 to May 1997

UNIVERSITY OF CALIFORNIA - DAVIS, Davis, California
August 1997 to May 1998
Visiting Professor of Law

BAYLOR LAW SCHOOL, Study Abroad Program in Guadalajara, Jalisco, México
Summer 1996, 1997, 1998, 1999 and 2000
Visiting Professor, Universidad Autónoma de Guadalajara

## APPOINTMENTS:

Admissions Committee, U.S. District Court, Western District of Texas (2012-2015 Term)

Advisory Board, Center for U.S. and Mexican Law, University of Houston Law Center
(2012 -    )

Appointed by Ambassador Charlene Barshefsky, U.S. Trade Representative, to the Roster
of Eligible Binational Panelists under Chapter 19 of the North American Free Trade
Agreement  (April 1998 – March 2003)

## BOOKS AND BOOK CHAPTER:

Co-Author, MEXICAN LAW (together with Professor Stephen Zamora of the University
    of Houston Law Center and Director José Ramón Cossío Díaz, Professor Leonel
    Pereznieto Castro, and Professor José Roldán Xopa of the Instituto Tecnológico
    Autónomo de México) (Oxford University Press 2004)

Co-Author, NAFTA: A PROBLEM ORIENTED COURSEBOOK (together with Professor
    Ralph Folsom of the University of San Diego School of Law and Professor
    Michael W. Gordon of the University of Florida College of Law) (West
    Publishing Co. 2000)

Co-Author, 2000 DOCUMENTS SUPPLEMENT TO NAFTA: A PROBLEM ORIENTED COURSEBOOK (together with Folsom and Gordon) (West Publishing Co. 2000)

Co-Author, TEACHER'S MANUAL TO ACCOMPANY NAFTA: A PROBLEM ORIENTED COURSEBOOK (together with Folsom and Gordon) (West Publishing Co. 2000)

Author, *The Legal System of Mexico*, Chapter 3, MODERN LEGAL SYSTEMS CYCLOPEDIA (William S. Hein & Co. 2000)

## ARTICLES:

Article, *Is Mexico an "Adequate Alternative Forum" for Litigation? The Texas Supreme Court and Fifth Circuit Speak*, 71 TEX. BAR J. 270 (April 2008)

Lead Article, *Dispute Resolution Under NAFTA: Lessons from the Early Experience,* 32 TEX. INT'L L.J. 163 (1997)

Lead Article, *Dispute Resolution Under MERCOSUR from 1991 to 1996: Implications for the Formation of a Free Trade Area of the Americas*, 3 NAFTA LAW & BUS REV. OF THE AMERICAS 3 (Spring 1997)

Article, *Dispute Resolution Under a Free Trade Area of the Americas: The Shape of Things to Come*, 28 U. MIAMI INTER-AM. L. REV. 597 (1997)

Article, *Why Texas Courts are Defenseless Against Frivolous Appeals: A Historical Analysis with Proposals for Reform*, 48 BAYLOR L. REV. 51 (1996)

Note, *Reexamining the Constitutionality of INS Workplace Raids After the Immigration Reform and Control Act of 1986*, 100 HARV. L. REV. 1979 (1987)

## PUBLICATION HONORS:

Nominee, Outstanding Law Review Article - 1997, Texas Bar Foundation (for *Dispute Resolution Under NAFTA: Lessons from the Early Experience*)

## PROFESSIONAL MEMBERSHIPS:

State Bar of Texas (since 1988)
State Bar of California (since 1990)
Member, American Bar Association (1993-2008)
Member, Bar Association of the Fifth Federal Circuit (since 2003)
Fellow, Texas Bar Foundation
Fellow, San Antonio Bar Foundation
Co-Chair, Subcommittee on NAFTA, American Bar Association (1997 - 2001)
Chair, Section on North American Cooperation, AALS (2001)
Member, National Association of College and University Attorneys (2000-2001)
Chief Coodinator, ABA Conference on "Practicing Law in the Era of NAFTA: Mastering the New Global Marketplace," San Antonio, Texas (March 18-19, 1999)

**LECTURES AND PRESENTATIONS:**

Panelist, "Dealing with Foreign Jurisdictional Property Issues," New Frontiers in Marital Property Law, State Bar of Texas, New Orleans, Louisiana (Oct. 5, 2012)

Panelist, *En Juicio: XXIV Simposium Internacional de Derecho*, Instituto Tecnológico y de Estudios Superiores de Monterrey, Monterrey, Mexico (Sept. 21, 2012)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (May 18, 2012)

Speaker, "A Practical Guide to Collecting Debts in Mexico," Mastering the Art of Collecting Debts and Judgments, University of Texas School of Law, Austin, Texas (Sept. 2, 2011)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (Sept. 17, 2010)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (May 14, 2010)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (Feb. 5, 2010)

Speaker, "What Texas Lawyers Need to Know About Mexican Law," San Antonio Bar Association Int'l Law Section, San Antonio, Texas (Dec. 11, 2009)

Panelist, "The Application of Mexican Law by U.S. Judges in Cross-Border Disputes," U.S-Mexico Bar Association Annual Meeting, San Diego, California (Nov. 12, 2009)

Speaker, "Spoliation and Legal Malpractice," Business Torts Institute, State Bar of Texas, Dallas, Texas (Oct. 30, 2009)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (Sept. 18, 2009)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (May 8, 2009)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (Feb. 6, 2009)

Speaker, "What Texas Lawyers Need to Know About Mexican Law," Austin Bar Association, Austin, Texas (June 20, 2008)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (May 9, 2008)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (Feb. 1, 2008)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (Feb. 2, 2007)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (Sept. 8, 2006)

Speaker, Supreme Court Review: The 2004-2005 Term, American Public Power Association Legal Seminar, San Antonio, Texas (Nov. 13, 2005)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (Sept. 16, 2005)

Speaker, "Federal Rules and Local Rules of the Western District of Texas, San Antonio Division," Federal Court Practice Seminar, San Antonio, Texas (March 4, 2005)

Guest Lecturer, "Comparison of the U.S. and Mexican Legal Systems," Baylor Law School Study Abroad Program, Guadalajara, Jalisco, México (August 15, 2003)

**LECTURES AND PRESENTATIONS (cont.):**

Guest Lecturer, "Intellectual Property Protection Under NAFTA," Monterrey Tec Video-
conference Course (*Curso de Tratados Comerciales Internacionales de México*),
from San Antonio, Texas (April 25, 2001)

"NAFTA: Emerging Issues," Annual Meeting of the State Bar of Texas, Hispanic Issues
Section, San Antonio, Texas (June 24, 2000)

"NAFTA - Recent Developments," San Antonio Bar Association International Law
Section, San Antonio, Texas (June 9, 2000)

Guest Lecturer, "NAFTA," Mexican Legal Studies Program, University of Houston Law
Center, Mexico City, Mexico (June 6, 2000)

"Transnational Legal Practice Under NAFTA," Association of American Law Schools,
Annual Meeting, Washington, D.C. (Jan. 9, 2000)

"NAFTA Chapter 11: Resolution of Investments Disputes," Association of American
Law Schools, Annual Meeting, Washington, D.C. (Jan. 8, 2000)

"Introducción al Sistema Legal de los Estados Unidos," Summer U.S. Law Program for
Mexican Judges, U.T. Law School, Austin, Texas (July 19, 1999)

"The Mexican Legal System," San Antonio Bar Association International Law Section,
San Antonio, Texas (July 9, 1999)

Presenter & Facilitator, Workshop on Comparative Law Issues, U.S.-Mexico Judicial
Exchange Program Border Conference, San Antonio, Texas (June 18, 1999)

Law Class Simulation, Transformational Youth Leadership Seminar, Office of
Community Devel., Texas A&M University, San Antonio, Texas (June 11, 1999)

"Introducción al Sistema de Derecho de los Estados Unidos," Consejo de la Judicatura
Federal (Federal Judicial Council), Veracruz, Mexico (May 7, 1999)

"NAFTA," Capstone Course, China External Trade Agency - International Trade
Institute, University of the Incarnate Word, San Antonio, Texas (March 25, 1999)

"Derecho Procesal Civil Federal," Programa de Derecho Angloamericano para Abogados
Iberoamericanos, Univ. of Texas School of Law, Austin, Texas (July 21, 1998)

"Las Reformas al Poder Judicial Mexicano y el Sistema Judicial de los Estados Unidos,"
Departamento de Derecho, Universidad de Monterrey, San Pedro Garza García,
N.L., México (April 17, 1998)

Guest Lecturer, "International Trade Dispute Resolution," Harvard Law School, Cambridge,
Massachusetts (January 15-16, 1998)

"Sistemas de Derecho Contemporáneo: México-Estados Unidos," Instituto de la Judicatura
Federal, México City, México (November 7, 1997)

"Introducción al Sistema Legal de los Estados Unidos," Programa de Derecho Angloameri-
cano para Abogados Iberoamericanos, University of Texas School of Law, Austin,
Texas (July 21, 1997)

"El Derecho de Agravios ('Torts') en los Estados Unidos," Centro de Estudios de
Actualización Jurídica, México City, México (May 16, 1997)

"Frivolous Appeals Under the New Texas Rules of Appellate Procedure," Appellate Practice
Before the Fourth and Thirteenth Courts of Appeals, San Antonio & Corpus Christi
Bar Associations, Corpus Christi, Texas (May 9, 1997)

"NAFTA and Intellectual Property in Mexico," Spring Conference, International Anti-
Counterfeiting Coalition, Austin, Texas (May 8, 1997)

"Ethics for the Appellate Lawyer: Frivolous Appeals," Telephone Seminar, State Bar of
Texas, San Antonio, Texas (April 18, 1997)

**LECTURES AND PRESENTATIONS (cont.):**

"Toward a Free Trade Area of the Americas," Monthly Meeting of the International Law Section, San Antonio Bar Association, San Antonio, Texas (April 11, 1997)

"Cuestiones Constitucionales: Estados Unidos," Pt. II, Universidad Panamericana, Guadalajara, Jalisco, México (March 13, 1997)

"Frivolous Appeals," 10th Annual Advanced Civil Appellate Practice Course, State Bar of Texas, Austin, Texas (September 12, 1996)

"How to Avoid and Respond to Frivolous Appeals," Monthly Meeting of the Appellate Law Section, San Antonio Bar Association, San Antonio, Texas (July 26, 1996)

"Introducción al Sistema Legal de los Estados Unidos e Investigación Legal," Derecho Angloamericano para Abogados de Latino América, University of Texas School of Law, Austin, Texas (July 15, 1996)

"Comparison of Civil Law and Common Law Systems," Universidad de Anáhuac, México City, México (March 9, 1995)

"The Common Law Tradition," Universidad de Monterrey, Garza García, N.L., México (January 13, 1994)

**LAW SCHOOL ADMINISTRATIVE DUTIES:**

Associate Dean for Administration (1999-2001)
Director of Foreign Program Development (1998-2001)
Member, University Task Force on Distance Learning (1999-2000)
Member, University Comptroller Search Committee (1999-2000)

**ACADEMIC INTERESTS:**

International Commercial Arbitration
Comparative Law:  U.S., Canada and Mexico
International Trade: The North American Free Trade Agreement (NAFTA)
Federal Civil Procedure
Federal Courts
Complex Litigation
Texas Civil Procedure - Pretrial Practice
Texas Civil Procedure - Trial and Appellate Practice
Constitutional Law - The First Amendment
Legal History - Common Law and Civil Law
Texas Legal History

**COURSES ORIGINATED AND DEVELOPED:**

NAFTA Virtual Reality Seminar 2000 (Spring 2000)
International Trade Dispute Resolution (Fall 1997)
North American Legal Systems (Spring 1995, Spring 1996, Spring 1997)
Seminar on the North American Free Trade Agreement (Spring 1994, Fall 1995)
Seminar on the First Amendment Reporter's Privilege (Spring 1994, Spring 1995)