Sergio Elías Gutierrez Salazar, PhD.
October 29, 2012

**EXPERT WITNESS REPORT**

CONCLUSIONS ON PROPRIETARY INTERESTS HELD BY THE MEXICAN STATES OF TAMAULIPAS, VERACRUZ, AND QUINTANA ROO AS NEEDED TO SEEK REPARATIONS FOR THE DAMAGES CAUSED BY THE EXPLOSION OF THE DEEPWATER HORIZON DRILLING PLATFORM AND THE RESULTING OIL SPILL ON APRIL 20, 2010.

I am qualified to provide this opinion as shown by my credentials, mentioned below:

I.      I am a Mexican attorney, a Mexican Citizen of legal age with domicile in San Pedro Garza García, Mexico, and I have practiced the legal profession as an Attorney-at-Law, Public Officer, as well as a Legal Scholar and founder of several law schools, teaching and researching the Law, for over 40 years.

II.     I have practiced the legal profession both as an Attorney-at-Law, as well as a Legal Scholar, teaching and researching the Law, for over 40 years.

III.    I received my Law Degree from the Universidad Autonoma de Nuevo Leon in 1969 and I have been admitted to practice the law as an Attorney-at-Law with all the duties and responsibilities thereto since 1969.

IV.     I received a Master's Degree in Public Administration from the *Institut d'études politiques de Paris* (Sciences Po), France in 1972.

V.      I hold a Doctorate in Law from the Universidad Autonoma de Nuevo Leon since 2006.

VI.     My expertise and law practice through the years, as an academic as well as in private and public practice, has focused on Mexican Constitutional Law, Administrative Law and Public Administration.

VII.    I was the Titleholder of the Notary Public's Office No. 104, holding office in the City of Monterrey, State of Nuevo Leon, from 1991 until 2008. I am currently the Substitute Notary Public for such same Office No. 104.

VIII.   I also participate as a contributing editorialist in El Norte, one of Mexico's most widely published and influential newspapers, part of the *Reforma* Group since 1996.

IX.     From 1993 to 1994, I worked as the Executive Director for the National Center of Municipal Development of the **Ministry of the Interior**, and General Coordinator for Municipal Development for the Government of the State of Nuevo Leon, respectively.

X.     I served as a representative for the Government of the State of Nuevo Leon in the Federal District for 3 years.

XI.    I served as General Coordinator of State Delegations in the Government Workers' Social Security and Services Institute (ISSSTE) in Mexico City from 1982 to 1985.

XII.   From 1979 to 1982, I served as General Director of Counseling to States and Municipalities in the General Coordination Office for Administrative Matters of the Mexican Executive Branch (Office of the President of Mexico). While holding this position, I participated in judicial studies in order to update municipal laws as well as state constitutions.

XIII.  I have been a Law Proffessor at the Instituto Tecnologico y de Estudios Superiores de Monterrey (ITESM) from 1991 to 2005; founding professor at the Facultad Libre de Derecho de Monterrey (FLDM) 1988 to present day; the Master´s Degree in Law Professor at Universidad Autonoma de Nuevo Leon (UANL) 1991 to 2003; Political Science professor at the Universidad Nacional Autonoma de Mexico (UNAM) 1981 to 1988; and founding professor of Master´s Degree in Law at EGAP (ITESM)

XIV.   I have been an active member of the College of Lawyers as well as the College of Notary Publics of Nuevo Leon, as well as of the National Institute of Public Administration in Mexico City.

XV.    In 1994 I received the Igancio Burguoa Medal for academic achievement from the College of Lawyers of Monterrey.

XVI.   In 2006, along with Isabel Ortega Ridaura, and Víctor López Villafañe I published the book: "Temas de Nuevo León en el Siglo XX" (Nuevo Leon in the XXth Century).

XVII.  In 2010, I published a chapter entitled "Federal Public Administration during the Fourth Republic (Federal-Social) 1917-1977" for the book "200 Years of Public Administration in Mexico" published by the Instituto Nacional de Administración Publica, A.C. (INAP).

XVIII. In 2006 I published an article entitled "Reflections on Constitutional Article 59, the confines of international relations and political science"

XIX.   In 1994 I published the book "The Mexican Constitution at the End of the 20th Century".

XX.    In 1993 I participated as Executive Vocal for the National Municipal Development Center in the publishing of the book Government and Municipal Administration in Mexico.

XXI. In 1985 I published the book Government and Administration of the Federal District in Mexico. This book can be found in the Library of Congress of the United States

XXII. I participated in the introduction in the book "Chronicle of a Life in Campaign" by Luis Eugenio Todd published in 1999. This book can be found in the Library of Congress of the United States.

XXIII. In 1994 I published the book "Towards the County in the New Millennium". This book can be found in the Library of Congress of the United States.

XXIV. In 1997 I participated in the writing of the book The National Debate. 2. Scenarios of the Democratization.

XXV. In 2000 I participated in the writing of the book The Democratic Governability in Mexico

XXVI. In 2000 I participated in the writing of the book Public Administration in Mexico

XXVII. Among several others, I have given the following presentations:

i. 2006, "Analysis of Constitutional Article 115", before the Councilmen of the City of Monterrey, Nuevo Leon;

ii. 2006, "Structure and Function of local legislatures", a Conference before the congressmen commencing the LXI Legislature in Monterrey, Nuevo Leon, Mexico;

Therefore, I hereby proceed to give my expert legal opinion on the issues submitted to my consideration:

Having performed the necessary studies and analysis, I have concluded based on my experience, knowledge, education, and training, that the Free and Sovereign States of Tamaulipas, Veracruz, and Quintana Roo, through the Political Constitution of the United Mexican States, the Constitutions of each of the aforementioned States, Mexican Federal Laws and the Coordination Agreements, Decrees and concessions that I will mention herein, are granted and can assume the execution of any and all acts necessary to protect and defends the assets and resources that would traditionally be under federal jurisdiction, among them, the beaches, waters and natural resources found in the Gulf of Mexico and each of their territories. Also, based on the legal analysis and relevant legal documents, the States in Mexico, can and do exercise dominion, control, possession, and other aspects of governance (e.g. regulation, taxation, protection, maintenance) of the States' coastal areas such as beaches, waters, estuaries, lagoons, seabed's, etc.

## CONSTITUTIONAL FRAMEWORK OF THE STATES OF TAMAULIPAS, VERACRUZ, AND QUINTANA ROO, AS WELL AS THE FEDERAL MEXICAN STATE

The Mexican State, since its creation, has been constituted as a Federal Republic, made up of Free and Sovereign States, as set forth by Article 40 of the Political Constitution of the United Mexican States:

**Article 40.-** "It is the will of the Mexican people to organize themselves into a federal democratic, representative republic, composed of **free and sovereign states**[1] in all that concerns their internal affairs; but that are united into a federation established pursuant with the principles set forth by this fundamental law".

It is essential to mention that this manner of creating a State establishes and provides for the existence of two or more competent authorities that will and do hold the right to exercise powers and authority of the State itself; the Federation creates a situation where the Republic's and the State's powers and authorities are coexistent[2] and do not exclude one another, that is, within one same territory and over one sole population, there are, at least, enforceable regulations and ordinances issued by both Federal and State authorities.

Article 124 of the Mexican Constitution establishes the manner in which such authority will be distributed:

**Article 124. -** "All powers which are not expressly granted by this Constitution to Federal Officials are understood to be reserved in favor of the States."

The Constitution of the *United States of America* has a similar provision, which establishes: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people"[3]

Both the U.S. Constitution, as well as the Mexican Constitution, provides for the principle of federalism; however, the Mexican Constitution provides governance for all three levels of Government in Mexico (Federal, State, and Municipal) to govern and represent the people. The scope of Article 124 is wide ranging, and allows for the Federal Government to share, transfer, assign and allow for the States and Municipalities to carry

---

[1] Emphasis added

[2] For the purposes of this work, and considering that it is a translation from Spanish into English, the following terms will have the definition mentioned below:

Coexistent (coexist), concurrent (concurrency), coextensive: Assistance and participation, coordination and dual performance of the acts pertaining to, without limitation, the administration, care, management, patrolling, monitoring, vigilance, domain, interest, rights, protection, and other such interests over a certain asset or right; in accordance with Mexican law.

[3] Tenth Amendment of the U.S. Constitution

4

out federal functions and to receive the faculties[4] thereto, as will be further discussed herein.

Additionally, considering my professional experience as a legal advisor to the President of Mexico, as well as for the **Ministry of the Interior** during the 1980s (when the groundwork for the concessions, decrees and coordination agreements which transfer authority to the States and Municipalities were being laid) I was able to see how concurrency and coordination between all three levels of government grew, resulting in Federal laws that require such coincidental authorities, such as the General Law on Wildlife, the Federal Law of Waters, the General Law of Ecological Balance and Protection of the Environment and other laws which I will address later.

The following Mexican Precedent (142/2001 p. 1042) is of particular interest due to the fact that, since ten years ago, by virtue of the measures enacted by the Federal Government, which, in full compliance with the coordination programs and agreements entered into with the states, and in support of the federal system in Mexico, issued a great number of laws which specifically provide for concurrency between the Federation and States, as established by the Constitution itself:

> **CONCURRENT POWERS IN THE MEXICAN LEGAL SYSTEM. MAIN FEATURES.**
>
> . . . . the reformer of the Constitution has provided for various clauses through which the Congress of the Union may establish a distribution of jurisdiction among the Federal Union, the federated states and the Municipalities, and even the Federal District, called "concurrent powers", in matters such as: education (articles 3, section VIII, and 73, section XXV), health (articles 4, third paragraph, and 73, section XVI), human settlements (articles 27, third paragraph, and 73, section XXIX-C), public security (article 73, section XXIX-C), "**environment (article 73, section XXIX-G), civil protection (article 73, section XXIX-I)**"[5] and sports (article 73, section XXIX-J). Accordingly, in the Mexican legal system, concurrent powers imply that the States constituting the Federal Union, as well as the Federal District,

---

[4] For the purposes of this work, and considering that it is a translation from Spanish into English, the following terms will have the definition mentioned below:
Faculties: the legal capacity, legal authority and rights; in accordance with Mexican law.

[5] Emphasis added

5

the Municipalities and the Federal Union can act upon the same matters, but the Congress of the Union shall be the one establishing the form and terms corresponding to each one of them through a general statute.[1]

An amendment to Article 27 of the Constitution, which was published in the Official Federal Newspaper in February 6, 1976, added the following wording to such Article 27:

**Article 27.** - "The ownership of the lands and waters which are located within national territory, originally corresponds to the Nation, which has had and does have the right to transfer proprietary interests thereof to individuals"

Such amendment also added, to the eighth paragraph of such article:

**Paragraph Eight.** - "The Nation holds sovereign rights and all jurisdictions which are determined by the laws enacted by Congress over an exclusive economic zone located outside of territorial seas and which borders such seas."

This amendment to the Constitution was enacted when maritime oil drilling began and, for that reason, Mexico claimed the exclusive rights of exploitation of the referred to "territorial sea" or "maritime asset", however the lawmakers did not lose sight of the fact that such rights to a national sea should be developed through secondary laws, and therefore, set it forth in such way in the Constitution. As a result, I can attest to the fact that the foregoing amendment provides for legislation to transfer, to the free and sovereign States, in this case of Tamaulipas, Veracruz, and Quintana Roo of the Mexican Republic, the custody, management, protection, rights of exploitation, domain, care, and proprietary interests which the Constitution provides in favor of the Nation.

The hierarchy of the regulations that grant such powers and authority to the States and Municipalities are set forth in Article 133 of the Mexican Constitution:

**Article 133.** - "This Constitution, the laws of the Congress of the Union arising therefrom, and all Treaties that have been made and shall be made in accordance therewith by the President of the Republic, with the approval of the Senate, shall be the Supreme Law of the whole Union. The judges of each State shall conform to such

---

[1] Constitutional Controversy. 29/2000. Federal Executive Branch. November 15, 2001. Eleven votes. Writer of the opinion: Sergio Salvador Aguirre Anguiano. Secretary: Pedro Alberto Nava Malagón. The Tribunal, en banc, during a private session held today December 6, approved the judicial precedent above, Mexico City, Federal District, on December 6, 2001.

6

Constitution, laws and treaties notwithstanding any contradictory provisions that may appear in the constitutions or laws of the States."

The foregoing precept is very similar to that which was established in Article VI of the Constitution of the United States of America, which establishes: "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

As demonstrated by the foregoing paragraphs, the influence of the Constitution of the United States of America over our own Mexican Constitution is patent, particularly in the provisions set forth in the aforementioned Articles 124 and 133; Article 133 poses some serious complications as to its interpretation: considering the matter as stated from an expert point of view by F. Jorge Gaxiola, when he explains how the supremacy of the Constitution over state laws must be interpreted he stated:

"When the right of the central powers has such legal superiority over local authorities, are we really in the presence of a true Federal State? I believe the answer is negative. If the Constitution grants, on the one hand, constitutional autonomy to the political communities that make up the state, and also grants authorities and entitles them to partially organize their internal laws and affairs, but on the other hand, it lessens the efficacy of such faculties with the pretext of the supremacy of federal legislative rules, then only appearances and not reality or substance reveal the creation of a federal regime...."[6]

I concur with F. Jorge Gaxiola and believe that his interpretation of such precept is accurate; the jurist further explains:

"Abstractly, the Constitution is the sole manifestation of popular sovereignty; the Constitution organizes the State by distributing and limiting scopes of competence and it creates bodies of Government, which, among its attributes has the authority to issue laws, now then, from this difference of origins we may necessarily deduce the distinction between ordinary laws and fundamental laws. Constitutions are the laws of sovereignty and are therefore indispensably supreme and relatively immutable, considering that the principle of sovereignty may not be exercised but exceptionally. Ordinary laws are issued by government, which is instituted and limited by the Constitution and, consequently, they are subordinate to the fundamental statute,

---

[6] *LA CRISIS DEL PENSAMIENTO POLITICO*, (THE CRISIS OF POLITICAL THINKING), BY F. JORGE GAXIOLA, CHAPTER IX, PAGES 86 TO 87

7

Attending to such principles, the resolution to the conflict is brought down by its own weight. Central power is not legally superior to local powers, nor must it hold supremacy over them. Both powers are regulated by the Constitution, and their acts are dependent on it, lastly, **it is clear that one cannot legally invade the jurisdiction of the other. In a word, they are coextensive.**"[7]

Both of the aforementioned Articles establish the fundamental rules of operation for the Mexican Federal System. The Mexican Constitution itself provides the system of distribution of authorities employed in Mexican Government, much like the Constitution of the United States does. **However, there is no prohibition, whatsoever in the Mexican Constitution that forbids any Mexican State from defending its interests and rights, in or out of a judicial court. Therefore, the States of Tamaulipas, Veracruz, and Quintana Roo, have the legal capacity and authority to sue British Petroleum and other Defendants in the United States in order to protect their coastlines, waters, lagoons, estuaries, fauna and flora, and all other natural resources that were invaded, trespassed, and affected by the oil spill of April 20, 2010.**

Originally, the 1917 Constitution provided for the following manners of distributing authority among the different levels of Government, as expressed by Dr. Jorge Carpizo[8], such authorities include:

"[...]

1. - Authorities corresponding to the Federation;

2. - Authorities corresponding to the States;

3. - Authorities prohibited to the Federation;

4. - Authorities prohibited to the States;

5. - Coincidental authorities;

6. - Coexistent authorities;

7. - Auxiliary authorities;

8. - Authorities arising from jurisprudence, amending the foregoing classifications"

### CONSTITUTIONAL REFORMS FOR THE NEW COOPERATIVE FEDERALISM

---

[7] Emphasis added.
[8] *EL SISTEMA FEDERAL MEXICANO* (THE MEXICAN FEDERAL SYSTEM), BY XAVIER DIEZ DE URDANIVIA FERNANDEZ, PAGES 66 TO 69

Even though the origins of the Constitution seem to point towards a division between Federal and State authorities, establishing them into different positions, and thereby creating a type of federalism which is academically referred to as "Dual Federalism"[9] by Xavier Díez de Urdanivia who defined such term as "<u>**a form of government where autonomies arising from distinct and, in principle, exclusive powers coexist, although such powers are not necessarily exclusionary, as per the scope of their jurisdictions and authorities and always in accordance to the adscription made unto them by the corresponding Constitution.**</u>"[10]

This system allows each and every one of the three levels that are a part of the Federal State (Federal, State, and Municipal) to exercise their authority in exclusion of all others, whether Federal or State, respectively.

There is also a type of Federalism called "Cooperative Federalism" that, as stated by the aforementioned author, who quoted Bernard Schwartz[11], is "a competitive federalism, which is inevitable if the features of a system based on a patent division of authority between the States and the Union are attended.

Before such a circumstance, the author affirms that cooperation must, at least, be as much of a prominent feature as competence in any blissful federation."

Based on my experience as a legal advisor to the Ministry of the Interior, and as later confirmed through the decrees, agreements and other legal instruments which are the result of the groundwork laid through the many reforms made to the Mexican Constitution, the cooperation between the different levels of power has become a constant administrative and political reality, not just in the Mexican Federal system but also for central or autonomic systems such as France and Spain, respectively, where cooperation between the different scopes of authority is not only frequent but is also an obligation, as a result of social politics and administrative complexity found in modern states. Mexico has followed such a path for the last few decades, but never more so **since the year 2000, when federalism and concurrence, that is, a formal assignment of Federal authority favor of the states, became the mainstay of Mexican internal policy.**

Notwithstanding the foregoing, examples of cooperation between the levels of government through the attribution of concurrent or coincident authorities as early as July 8, 1921, when, only 4 years after the Mexican Constitution was first implemented in

---

[9] *ESTUDIOS CONSTITUCIONALES, SISTEMA FEDERAL MEXICANO* (CONSTITUTIONAL STUDIES, MEXICAN FEDERAL SYSTEM), BY JORGE CARPIZO, PAGE 94
[10] Emphasis added.

9

1917; a decree was published whereby the very first amendment (reform) was made to the original text of the Constitution.

Such amendment included an addition to Article 73 which provided the Federal Government with the capacity to legislate in educational matters; however, what´s most important, is the fact that the amendment created, for the first time, concurrent or coincidental authorities between the Federation and the States; the amendment established:

**Article 73.** - "Congress shall have the authority to.

Section XXVII: To establish, organize and maintain, throughout the Republic, rural secondary schools [...]"

Later it went on to establish that "The Federation shall hold jurisdiction over the campuses established, maintained and organized by it, without prejudice to the freedom held by the States to legislate over such same educational matters…"

This amendment to the original text of the Constitution gave birth to legislative concurrency; later, through several successive amendments, the chapter relating to the concurrent authorities held by the Federal and State levels of government was substantially increased. Recent evolution of the Mexican Federal system has shown a vigorous and growing process of constitutional amendments intended to provoke and create functional concurrency in matters of human rights and matters of economic importance.

This process whereby constitutional amendments are constantly being introduced, in order to update and modernize the Mexican Federal system, has the purpose of creating a system which distributes authority and responsibility, with a much greater emphasis in inter-governmental coordination between Federal, State, and Municipal governments.

At this time we must point out that such process, in which the additions to Constitutional regulations are made in order to set forth the provisions reflecting the distribution of jurisdictional authorities also includes an amendment (by addition) to the Mexican Constitution which was made on February 3, 1981, when Article 115 was amended in order to include Section X which reads:

**Section X. - "The Federation and the States, in accordance with the terms of the law, shall be able to enter into agreements whereby the States will exercise Federal**

**functions, execute and operate Works, and provide public services, when economic and social growth demands it."**

Later, the H. Congress of the Union issued a decree, on March 17, 1987, which amended Article 116 of the Constitution, such decree specifically established that the constitutional regulation of the States by the Mexican Federation would be relocated to such Article 116, and Section VII of such Article was amended to read:

**Article 116. - Section VII. - "The Federation and the States, in accordance with the terms of the law, shall be able to enter into agreements whereby the States may exercise Federal functions, execute and operate works, and provide public services, when economic and social growth demands it.**

**States are entitled to enter into such agreements with their Municipalities, so that the latter may assume the provision of such services or the performance of the functions mentioned in the foregoing paragraph."**

Arising from the foregoing, the Mexican Constitution is supported by several statutes, regulations, rules, ordinances, decrees and/or similar laws, due to the fact that, while the Republic of Mexico is indeed organized as a Federation of free and sovereign States, the prevailing policies and nature of the Republic require a non-concentration of faculties and powers, that is, the Federal Government follows a policy of Federalism with the States that make up the Republic and thus it endeavors, through various laws, decrees, concessions and other legal instruments, **to transfer the ownership and care of assets and resources that would traditionally be under federal jurisdiction to the States, among them, the beaches, waters and natural resources found in the Gulf of Mexico.**

Based on the foregoing and in consideration of Mexican Constitutional Law, the Mexican territory, assets, coastal areas, and resources are considered to be under National, Federal, State or Municipal jurisdiction. The powers and authorities under such different jurisdictions are exclusive or concurrent, depending on whether such powers and authorities can be carried out, implemented or exercised, exclusively by one or several agencies at the National, Federal, State or Municipal level.

The Federal regime is characterized by the coexistence of two jurisdictions; the policy of Federalism followed by the Mexican Government depends on a balance of the faculties and interests between the States and the Federation. Therefore, Concurrent faculties are those which are enforced and enjoyed by the States of the Federation, regardless of the fact that the Mexican Constitution empowers it to do so.

There are many coordination agreements and laws that allow for States such as Tamaulipas, Quintana Roo and Veracruz, as well as their municipalities, to exercise dominion and control, as well as assume the governmental duties to patrol, regulate, care, tax and maintain the beaches and waters adjacent to their territorial boundaries, as well as to care for and monitor the natural flora and fauna found in such areas. The Mexican States are also entitled to develop and receive the benefits from such natural resources through different programs established by Federal Entities, and thus derive the financial benefit from tourism, tax, fishing and other activities.

From an environmental point of view, Article 27 of the Mexican Constitution clearly sets forth the notion of the preservation and restoration of the ecological balance of the natural resources controlled by the Mexican Nation, based on such criteria, Article 73, Section XXIX-G of the Mexican Constitution expresses that, based on the principle of concurrency, the Federal Government, the governments of each State, and the Municipalities in each State *must and should intervene and act in conjunction when protecting, preserving and restoring the environment and ecological balance of the Gulf of Mexico in this particular case.*

**Thus, Article 73 places a special emphasis on concurrency, as a necessity for the proper protection of the environment, placing such burden on all three levels of government in Mexico; Concurrence is not a limitation over a State´s faculties, but rather as the vehicle by means of which each State can properly act and assume federal duties over specific issues, as well as the obligation of the Federal Government to create the means for each State to be able to act in such a manner.**

Environmental matters and issues must be dealt with locally, considering that the application, execution and administration of the duties imposed on the Government by the Constitution as it regards to environmental matters which must be applied immediately, and the State governments are the logical expeditors, considering they are closest to the issues at hand. For example, matters such as the Deepwater Horizon Oil Spill, which create an immediate and real risk for public health and safety, had to be dealt with immediately, and each State is responsible for the health and wellbeing of its inhabitants as well as its wildlife and fauna. Accordingly, the State Governors of Tamaulipas, Veracruz, and Quintana Roo, initiated in April 2010, prevention, clean up, monitoring, protection, patrol and environmental vigilance exercises in anticipation of approaching oil and oil sub plume as reported by NOAA and other U.S. authorities.

There are no limitations established in the Mexican Constitution regarding the faculties or powers that each State may exercise for the protection and safeguarding of the life and health of its inhabitants, its commercial activities, and its wildlife and plant

12

life. In fact, the Mexican States are bound and obligated by their state constitution and laws to ensure the protection of their inhabitants, flora and fauna.

Lastly, it is clear that any Governmental Authority, such as the States, that does not act in order to safeguard the health and wellbeing of its citizens, environment, natural resources, and wildlife and plant life would be blatantly violating the precepts and duties imposed by the Mexican Constitution.

## AUTHORITIES DELEGATED TO THE STATES FOR THE DEFENSE OF THEIR PROPRIETARY INTERESTS AND RIGHTS

Arising from the aforementioned constitutional regulations, I will now address the analysis of the legal basis and authority held by the States of Tamaulipas, Veracruz, and Quintana Roo (the Mexican States) allowing and requiring them to act in defense of their territory (including its beaches, shores, marshes, harbors, estuaries, bayous, bays, and waters) and to defend their assets, resources, and revenues (including, marine wildlife and plant life) from any damages caused by environmental contingencies, or any other incidents, such as the one which resulted from the oil spill caused by the explosion of the Deepwater Horizon platform on April 20, 2010.

Arising from the aforementioned constitutional regulations, and expanding on the aforementioned statements, I can easily conclude that the system for distribution of jurisdictions in Mexico is integrated in the following manner:

The authorities of the States of the Union are created constitutionally, that is, such authorities pertaining to the States and Municipalities are those which are not expressly reserved for the Federal level of government (Article 124 of the Mexican Constitution).

Now, regardless of the simplicity with which both scopes of authority are expressed, and specifically focusing in the case of the Mexican constitutional system, a wide array of public laws and powers that mention and establish concurrency or coexistence of Federal, State, and even Municipal authority, in order to enforce and ensure expedient handling of public affairs and a proper and efficient reaction to all emergencies and contingencies.

Such concurrent authorities are mentioned throughout several constitutional articles but, in particular, can be found in the articles relating to human rights and the exercise of new constitutional attributes which have been added as amendments to the Constitution since 1921. Presently, at least 204 decrees have amended the original text of the Mexican Constitution after issuance.

13

The first of such 204 amending decrees, issued on July 8, 1921, created concurrency on educational matters, but, since then, through successive amendments and reforms, the chapter on concurrent authorities has been greatly expanded.

Following is a list of some of the various laws which have been amended into the Constitution in order to ensure a functional system of concurrence, as well as the laws that provide and allow the sharing of duties and authority between the Federation and the States:

| Education | General Law of Education |
| | General Law of Libraries |
| Health | General Law of Health |
| | Social Security Law |
| Human Settlements | General Law of Human Settlements |
| Public Safety | General Law Establishing the Basis of Coordination for the National System of Public Safety |
| | National Security Law |
| Environmental Protection | **General Law of Sustainable Forest Development** |
| | **General Law on Wildlife** |
| | **General Law of Ecological Equilibrium and Protection of the Environment** |
| | **General Law for the Prevention and Management of Residues** |
| Civil Protection | General Law of Civil Protection |
| Tourism | General Law of Tourism |
| Fishing and Aquaculture | General Fishing Law |

Among Mexican legal scholars, I believe that Mr. José María Serna de la Garza has best dealt with and explained the question of concurrent authorities[12] when he states: "in a certain way, the paradox of the Mexican case is the fact that, while it is a State that is formally a Federal State, our system shows the typical issues of a Unitarian State. That is, excessive centralization has led to a problem of saturation and overload, of disengagement and a loss of visibility and responsibility, efficacy and immediacy, as per the relationship between the centers of decision and the receivers of public action. This circumstance explains the initiatives pushed by the Federal Government since the eighties which strive for the decentralization of, for example, health services and education; as well as the current demands posed by the States where they require to take charge of a greater number of responsibilities; the foregoing, in recent years, has led to a good

---

[12] THE MEXICAN FEDERAL SYSTEM. LEGAL ANALYSIS. ED UNAM. 2008. PAGE 90

number of initiatives which are focused on modifying the distribution scheme for powers and authorities of the Mexican Federal System.

This process of decentralizing of the administrative power, the Constitution has been amended in order to include specific cases of concurrent authorities between the Federation and the States."

Specifically, Article 4 of the Constitution states that health, *environmental*, sports and other matters are concurrent between the Federation and the States.

Additionally, constitutional Article 73, which mentions the authorities of the Federal Congress, has been amended to include a great number of sections which provide for concurrent and attributive authorities between the Federal and State Governments."

Among such matters, those of greatest relevance in this case are the matters pertaining to urban development and human settlements ecology; and the protection of the environment. The Author (José María Serna de la Garza) mentioned that "such general laws in Mexico, which provide for coordinated and cooperative actions between the Federation, States, and Municipalities, are based on a logic that, in a certain sense, is opposed to the content of Article 124 of the Constitution."

Regarding the foregoing, the aforementioned author states: "when considering these types of laws, as well as their conventional regime, which could be an alternative to the commencement of a decentralization process in Mexico, we believe that it would be convenient to constitutionally consolidate the relationships that create cooperation and transfer of authorities, as such relationships are created by means of the general laws, duly establishing a restrictive scope for the dual system in Article 124. In such manner, the Congress of the Union would be empowered expressly, so that the general laws can provide for the coordination agreements and the transfer of authority to local governments". In such way, two systems for the distribution of authorities would coexist, and there would be no doubt regarding the constitutional nature of the exercise of decentralized authorities between the Federal and State levels of government."

I believe that the transition from dual federalism to cooperative federalism has sufficient constitutional basis as well as, on the laws which have a direct relationship between environmental pollution and the borders of Tamaulipas, Veracruz and Quintana Roo and the fact that such States have standing and are duly empowered to claim and require the payment of damages which were caused by the aforementioned oil spill. I note that independently, the states have the right to patrol, tax, assess, clean up, maintain, control, and govern all of the states territory, including its shores, beaches, and flora and fauna.

During the government of President José López Portillo (1976-1982), a Program for Administrative Reform was enacted. One of the main points of such Program was providing counseling to the States and Municipalities of the Mexican Republic and to fortify Federalism in the country. **The main purpose was to increase the administrative capabilities of the Federal States so that they could properly carry out the authorities, powers, functions and attributes that were being, and would be, transferred by the Federal Government.**

At that time (Mr. Lopez Portillo´s administration), the first coordination agreements were held between the Federal Executive Branch and the States of Mexico. Such agreements had the purpose of transferring and **creating new administrative responsibilities for the States**, responsibilities which were previously held by the Federation. I was charged with the management of such Program, for the first two years I served **as an undersecretary** and the last 4 years of Mr. Lopez Portillo's presidency, I served as the Secretary/General Director for Counseling and Assistance to the States and Municipalities. As a result, I had the privilege to directly witness and participate in the evolution and execution, between the Republic and its independent States, of the principle of concurrency and coextensive authorities that has been mentioned in this work, the Constitution provides the necessary legal framework to create a working relationship between all three levels of government, and there most definitely exists a proprietary interest and domain over the assets and responsibilities which are assigned to the States by all such instruments, which are provided for by the Constitution itself, as well as several Federal Laws (including Environmental Protection laws).

In 1993, I was appointed as Executive Spokesperson (Director) of the National Center for Municipal Development. Such agency was a part of the Ministry of the Interior and its duties consisted in supporting, on behalf of the Federal Government, the Municipalities of the country, so that they could develop the capacities needed to enforce and apply new authorities which would be assigned due to the reform of Article 115 of the Constitution (as such amendment was enacted in 1983); Additionally, I served as a legal counselor to Mexican Congress when the foregoing amendment, providing for the transfer of administrative attribution to the States of the Republic, was proposed, and I helped draft it.

In 1998, I was invited to participate in a research project which was called "The National Debate", and was established in 4 different books. Book number two, "Scenarios of the Process of Democracy" included a chapter called "Political Centralism, administrative decentralization. The case of Mexican Federalism"[13]; this chapter includes a

---

[13] THE NATIONAL DEBATE. TOME 2 SCENARIOS ON THE PROCESS OF DEMOCRACY. PAGE 140. EDITORIAL DIANA MÉXICO FEBRUARY, 1998

16

review of the origins of Mexican Federalism, its development and, particularly, the evolution of the constitutional reforms and amendments which have impacted the Mexican Federal system, especially as to the system which re-distributes authority, and my conclusion was to propose:

"the analysis of the re-definition of the scope of authority, in order to transfer, not through an agreement but through constitutional reform, some of the faculties that have been absorbed by the Federation to the detriment of local authorities, such as: Urban Development, Rural Development, Tourism, **Ecology**, and others. The foregoing would greatly reduce the size of Federal Public Administration and, consequently, increase the possibilities of greater fiscal assignments to local powers".

Now then, pursuant with the provisions of Article 116 of the Constitution which is mentioned below, as well as the provisions of Article 22 of the Organic Law of Federal Public Administration, which states:

**Article 22. - "The President of the United Mexican States will enter into coordination agreements with state governments, and, with such participation, in necessary cases, with the Municipalities, duly satisfying all legal formalities which may be required, in order for the integral development of the states to be benefited."**

In that sense, we refer to the provisions set forth by Article 116, of the Federal Constitution, which was mentioned before and which reads:

**Article 116. Section VII. ""The Federation and the States, pursuant with the terms of the law, shall be able to enter into agreements whereby the States may exercise Federal functions, execute and operate Works, and provide public services, when economic and social growth demands it.**

States shall be entitled to enter into such agreements with their Municipalities, so that the latter may assume the provision of such services or the performance of the functions mentioned in the foregoing paragraph."

This provision, which was incorporated into the Constitution in 1987, established that the Federal Executive Branch can enter into agreements with the States of the Union so that they may assume the performance of the authorities and faculties which originally corresponded to the federation, and that the States are constitutionally allowed to carry out management activities and hold custody, powers, dominion, and control over assets, geographical areas, and powers which may be originally vested unto the Federation. Therefore, these Articles allow for the States to exploit and defend the assets, resources, and other interests that are granted by the agreements executed with the Federal

17

Government, including the agreements which have been entered into by the plaintiff States in the proceedings being followed by reason of the Deepwater Horizon oil spill in the Gulf of Mexico.

As an example and considering its particular relevance, we can mention the decree whereby the region known as the Laguna Madre y Delta del Rio Bravo, located in the Municipalities of the State of Matamoros, San Fernando and Soto La Marina, in the State of Tamaulipas, with a total surface of 572,808-60-94.22[14] hectares, is declared a natural protected area, with special consideration for plants and wildlife. Such decree, which was executed by former Mexican President Vicente Fox Quesada and published in the Official Federal Newspaper in April 14, 2005, is still effective to this day. The corresponding coordination agreements, as well as other similar instruments held between the States of Tamaulipas, Veracruz, and Quintana Roo with the Federation, are created, in part, due to what is established in Article Five of such decree:

"**ARTICLE FIVE.** - The Ministry of the Environment and Natural Resources shall enter into coordination agreements with the Government of the State of Tamaulipas, including, in due case, the municipalities of Matamoros, San Fernando, and Soto La Marina, as well as consensual agreements with social and private sectors, in order to comply with the provisions of this Decree. Such instruments shall include, at least, the following:

I. The manner in which the Government of the State, the municipalities and the private and social sectors shall take part in the management of the **protection zone for flora and fauna;**
II. The coordination of applicable federal policies in matters pertaining to the **protection of flora and fauna**, with those of the State and the municipalities;
III. The determination of actions for the compliance with applicable territorial regulations in ecological matters as per the protection of flora and fauna;
IV. The drafting of the management program for the protection zone, with the creation of specific commitments to be executed;
V. The origin and destination of the financial resources intended for the administration of the protection zone, when applicable;
VI. The coordination mechanisms for the drafting of municipal development plans, in order to ensure congruency with the management program for the protection zone;
VII. The manner in which all investigations, experimentation and monitoring shall be performed within the flora and fauna protection zone, pursuant with all applicable legal provisions;
VIII. The performance of inspection and vigilance actions;

---

[14] A hectare is approximately 2.47 acres

IX. <u>The actions needed in order to contribute to the socio-economic development of the region, by means of the sustainable exploitation of the natural resources in the flora and fauna in the protection zone;</u>
X. The participation schemes for the community and other social, scientific and academic groups;
XI. The development of counseling programs for the sustainable exploitation of the natural resources in the region; and
XII. The development of actions, works and investments as needed for the compliance of the protection, conservation and monitoring objectives in the zone, particularly those intended to prevent pollution or contamination of the surface water, aquifers and soil, as well as to maintain the hydrodynamic regime of all bodies of water."

As we can clearly see, the States themselves are vested with the rights and obligations of custody, control, governance, regulation, development, and management of such areas and, logically, they are legally entitled to defend such matters as their proprietary interests over such beaches, shores, marshes, harbors, estuaries, bayous, bays, and waters, as well as do act in defense of the wildlife and plant life found thereon, **such proprietary interests do indeed belong to the States, considering that, even if Article 27 of the Constitution covers such assets for the Federation, Articles 116 Section VII, 73 Section XXIX, and Article 124 of such same Constitution provide for the transfer off such rights to the States, in full compliance of the purposes mentioned in the Coordination Agreements, Decrees and other such instruments, all of which set forth the objective of achieving social and economic development in favor of each State´s population.**

## OTHER OBLIGATIONS CREATED BY THE CONSTITUTION

On June 10, 2011, the Official Newspaper of the Federation published a decree which included amendments to Article 1 of the Constitution, in order to reinforce the Country´s commitment to the protection of Human Rights, the following was added to such Article:

"Every authority, within the scope of its jurisdiction, has the obligation to promote, respect, protect and ensure human rights, pursuant with the principles of universality, interdependency, indivisibility and progressivity. Consequently, the States must prevent, investigate, sanction and repair any violations to human rights, in accordance with the law"

Additionally, Article 4 states:

**ARTICLE 4.** - "[...] All individuals shall have the right to live in an environment which is adequate for their proper development and wellbeing [...]"

These Articles impose a duty and obligation on the States to prevent, investigate, sanction, and correct all violations which endanger such provisions, and to enforce all means necessary in order to ensure the existence of a proper and well cared for environment.

As a result, all governmental authorities in Mexico, including the States of Tamaulipas, Veracruz, and Quintana Roo, are obligated to investigate, sanction and correct any and all violations to human rights, **including the right to a safe and clean environment in which to live in**, therefore, the Mexican Constitution grants the States standing to pursue all means possible in order to guarantee and/or correct (when necessary) any damages, harms, and injuries caused to their territory, and to seek compensation thereof, in order to guarantee a safe, clean and healthy environment for their citizens, wildlife, plant life, and flora and fauna of the sea.

Based on my experience, education, analysis of the law, and first hand professional knowledge in drafting and executing the decrees, and amendments to the Mexican Constitution, I conclude that the States of Tamaulipas, Veracruz, and Quintana Roo, Mexico, have the independent right to claim, defend, administer, and restore their property interests that were affected severally by the Deepwater Horizon Oil Spill.

Sincerely,

Sergio Elías Gutierrez Salazar, PhD.