

47444759
Oct 29 2012
06:52PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: OIL SPILL by the OIL RIG "DEEPWATER HORIZON" In the GULF OF MEXICO on April 20, 2010 | * | MDL NO. 2179 |
| | * | SECTION: J |
| | * | JUDGE BARBIER |
| This document relates to: STATE OF VERACRUZ, REPUBLIC OF MEXICO v. BP, PLC, NO. 10-4239; | * | MAG. JUDGE SHUSHAN |
| STATE OF TAMAULIPAS, REPUBLIC OF MEXICO v. BP, PLC, NO. 10-4240; | * | |
| STATE OF QUINTANA ROO, REPUBLIC OF MEXICO v. BP, PLC, NO. 10-4241; | * | |
| | * | |

_____

**DECLARATION OF LEOPOLDO BURGUETE-STANEK**

I, Leopoldo Burguete-Stanek, declare, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

**I.**
**Introduction**

My name is Leopoldo Burguete-Stanek and I am a partner at González Calvillo, S.C. in charge of the firm's Environmental and Natural Resources Practice Group.  I have over 25 years of experience in the field of environmental and natural resource law. I am an experienced lawyer in all aspects of environmental and natural resource and administrative laws, with particular strengths in energy, water management, environmental impact, natural protected areas, forestry, oil and gas activities, and all aspects of environmental litigation and dispute resolution.

I have a law degree from the Universidad La Salle, Mexico. In addition, I hold a Masters in International Law from Southern Methodist University (1986). I have also obtained several postgraduate diplomas in economic, corporate and environmental law from such academic institutions as *Universidad Panamericana*, *Instituto Tecnológico Autonomo de México*, and *Colegio de México*, among others

I have been ranked as a foremost practitioner in the environmental practice by recognized international publications such as *Chambers & Partners*, *Who's Who* and *Latin Lawyer.*

A true and correct copy of my curriculum vitae describing my employment and educational background is attached hereto as **Exhibit 1**.

I was retained by BP's counsel to provide an opinion as to whether the Mexican States have a proprietary interest in the causes of action asserted in the above- captioned cases.

Expert Opinion of Leopoldo Burguete-Stanek

## II.
## Overview

Under Mexican law, the States of Tamaulipas, Veracruz and Quintana Roo ("Plaintiff States") do not have a proprietary interest in the natural resources, including beaches, waters, estuaries, coastlines, wildlife and fish, listed *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, MDL No. 2179* (E.D.L.A.). Nor do they exercise any kind of derived proprietary interest through their use, enjoyment or exploitation of the natural resources that are listed in this action. This is true and results from a legal analysis of the Political Constitution of the United Mexican States ("Constitution"); the General Law of National Assets ("GLNA"); the National Waters Act ("NWA"); the Federal Law of the Sea ("FLS"); the United Nations Convention on the Law of the Sea ("UNCLS"); and the Regulations for the Use and Exploitation of the Territorial Sea, Waterways, Beaches, Federal Maritime Terrestrial Zone, and Land Reclaimed from the Sea ("RMATFEZO"), which establish that the Mexican Federation alone has a proprietary interest in, and exercises both the original ownership and possession of, these natural resources. The Plaintiff States may have a derived right to use certain of these natural resources but this right is not a proprietary right.

Based on my years of practice in the area of Mexican environmental and natural resources law, I have concluded as follows:

1. The Constitution of Mexico, Article 27, establishes that the natural resources, including beaches, waters, estuaries, coastlines, wildlife and fish, are the property of the Nation.

2. The Nation has a proprietary interest in these National Assets that is inalienable and not subject to adverse possession.

3. The General Law of National Assets implements Article 27 of the Constitution and establishes that said natural resources are National Assets within the Federal Public Domain and subject exclusively to federal jurisdiction.

4. The Mexican federal government can delegate to the States certain rights to use or exploit the National Assets but such delegations are temporary and revocable and do not convey or create a proprietary interest in the National Assets.

5. Only the Mexican federal government has authority to bring a lawsuit involving National Assets or matters originating abroad that affect national interests. Conversely, individual Mexican States lack standing to bring action on behalf of the Nation or any municipality.

6. The federal government has the exclusive jurisdiction to regulate the protection and conservation of wildlife and flora in matters originated abroad.  The federal government also has exclusive jurisdiction to regulate the fishing activities and economic exploitation of Mexican waters and in the high seas.

Expert Opinion of Leopoldo Burguete-Stanek

## III.
## Analysis Of Mexican Law

1. **The Constitution of Mexico.**

The Constitution of Mexico establishes that proprietary rights over Mexican lands, waters and natural resources are vested solely in the Federation, and not in the States and that the Federation has exclusive rights of sovereignty and jurisdiction over the waters of the Exclusive Economic Zone ("EEZ").

Pursuant to Article 27, subsection 1 of the Mexican Constitution, the federal government is vested with the property rights over lands and waters within the Nation: "all lands and waters comprised within the limits of the national territory are originally the property of the Nation."

Pursuant to Article 27, subsection 4, the Nation has direct domain over all natural resources of the continental shelf and underwater shelves, as well as natural resources located in veins, tables, masses, or deposits (mineral deposits where metals and metalloids, precious stones, rock salt and salt are extracted), products derived from the break-down of rocks, mineral or organic deposits, solid mineral fuel, oil and all hydrocarbons, as well as the air space over national territory.

Pursuant to Article 27, subsection 5, sea waters (under the terms and extension established by international law), internal marine waters, and other bodies of water listed in the cited Article, are the Nation's property.[1]

Pursuant to Article 27, subsection 8, the Nation exercises its sovereign rights within the territorial sea, the contiguous zone and the Exclusive Economic Zone which extends to two hundred nautical miles from the baseline from which the territorial sea is measured.

Pursuant to Article 27, paragraph 6, the Nation's authority over the lands and waters of the Nation is "*inalienable*" and cannot be bought or sold or transferred from one person to another,[2] and no action can be brought against the Nation in order to claim possession or property over National Assets.

2. **The General Law of National Assets.**

The GLNA implements Article 27 of the Constitution by establishing that the assets listed in Sub-sections four, five and eight, Article 27 of the Constitution, are National Assets together with assets of common use and other assets identified by the GLNA. These National Assets are subject to the regime of public domain and are under the exclusive jurisdiction of the federal government. More importantly, an asset within the federal public domain cannot be

---

[1] Pools, lagoons, and marshes that are permanently or intermittently connected within the sea; natural interior lakes that are directly linked with constant currents; rivers and their direct or indirect tributaries, from their first source of permanent, intermittent or torrential water all the way to the estuary and confluence with the sea, lakes, lagoons or marshes that are the Nation's property; permanent and intermittent currents, and their direct and indirect tributaries, where the bed of said currents, in their total or partial length, serves as a boundary for the national territory, or between two federal entities; or when the bed of a current flows from one federal entity to another, or crosses the Republic's dividing line; lakes, ponds, lagoons or marshes whose zones, shores, or banks are crossed by dividing lines of two or more entities, or between the Republic and a neighboring country, or when the shoreline limit is a boundary between two federal entities, or between the Republic and a neighboring country; springs that flow in beaches, maritime zones, river beds, or banks of lakes, lagoons or marshes that are national property; and waters that may be extracted from mines; and lake shores and interior current beds, within the limited established by law. [provide citation]
[2] See Black's Law Dictionary (Centennial Edition, page 759).

3

Expert Opinion of Leopoldo Burguete-Stanek

transferred (*inalienable*), attached or subject to adverse possession. Thus, a State or other grantee is never given an ownership right to the National Assets within the public domain.

National Assets are: (1) inalienable, (2) not subject to adverse possession, and (3) not susceptible of being attached. In short, National Assets cannot be transferred to a private individual or State and they will always be owned by the Mexican State for as long as the assets remains in the public domain (in this case under the Federation). National Assets may not be acquired with the passage of time.

Article 6, GLNA, states that the following assets are part of the Federation Public Domain:

> *I.*     *The assets referred to in articles 27 paragraphs fourth, fifth and eighth; 42 section IV, and 132 of the Political Constitution of the Mexican States;*
> *II.*    *The assets of common use referred to in article 7 of this law;*
> *III.*   *Insular shelves under the terms of the Federal Law of the Sea and, if appropriate, of the international treaties and agreements of which Mexico is a signatory;*
> *IV.*    *The seabed and subsoil of the territorial sea and of the inland marine waters;*
> *IX.*    *The lands gained naturally or artificially from the sea, rivers, flows, lakes, lagoons or estuaries of national property;*

Article 7, GLNA, establishes that the following are common use assets:

> *II.*    *the inland marine waters, in terms of the Federal Law of the Sea;*
> *III.*   *The territorial sea in the width determined by the Federal Law of the Sea;*
> *IV.*    *the beaches, which are defined as the portions of land that because of the tide are covered and uncovered by water, measured from the limits of grater outward flow up to the limits of grater annual flow;*
> *V.*     *The federal maritime terrestrial zone;*
> *VIII.*  *the channels of the flows and the vessels of the lakes, lagoons and estuaries of national property;*
> *IX.*    *The banks and the flows of the federal zones;*
> *XIV.*   *Other assets considered of common use by other laws that regulate national assets.*

Article 9 of GLNA states that, assets that are part of the Federal Public Domain are under the exclusive jurisdiction of the Federal branches.

Article 15, GLNA establishes that private individuals and State and local governments can only acquire the use and exploitation of these National Assets. They cannot possess a proprietary interest.

Article 16, General Law of National Assets, explicitly states that concessions, permits and authorizations over assets subject to the public domain of the Federation do not create proprietary rights; they simply grant to third parties the right to use, enjoy or exploit those assets as set forth in the terms and conditions established under the applicable legislation and by the concession title, permit or authorization was granted.

Expert Opinion of Leopoldo Burguete-Stanek

### 3. <u>Concessions, Allotments, and Agreements of Destination Are Limited Grants.</u>

The Federal government can grant rights of use, enjoyment, or exploitation of National Assets through the granting of a concession, allotment, or Agreement of Destination. However, under any of these administrative grants: (i) the Federation never transfers a proprietary interest to any State or other entity to the National Asset, and (ii) the grantee is never able to act as or become the owner of these assets because its possession of the asset is limited and revocable.

Under Mexican law, the Federal government has several administrative tools through which it can grant to an individual or State authority to use, enjoy or exploit National Assets. First, a State may be granted a concession to use or exploit the asset but only within the limits and conditions set forth by the law itself and the respective Concession Title. Second, a concession that is granted to public sector bodies, federal entities, or municipalities, for the exploitation of national waters, is called Allotment. Third, an Agreement of Destination is an administrative law tool that is used to carry out a change of user of a National Asset, without having to privatize the asset. Agreements of Destination allow the Federal government to provide for a particular user to exploit, use, or enjoyment a specific National Asset. For example, Agreements of Destination have been put in place to grant the use of maritime terrestrial federal zones but provide only the right to use of the surface area of the terrestrial zone. It does not grant a proprietary right over the territorial zone. Attached as **Exhibit 2** is a list of the authorities cited by Plaintiff States and a description of the limited nature of each.

The following legal opinion, issued by the Second Chamber, Mexican Supreme Court of Justice, confirms that Public Domain assets are exclusively under the jurisdiction of the Federal government and a concession is a limited grant of authority:

> *Fifth Period*
> *Register:     316238*
> *Instance:     Second Chamber*
> *Thesis        Single*
> *Source:       CXXIX Federal Judicial Weekly Review*
> *Subject(s):   Administrative*
> *Page:         721*
>
> **FEDERAL PUBLIC DOMAIN ASSETS; INVASION BY STATE GOVERNMENTS OF THE POWERS RESERVED TO FEDERAL BRANCHES REGARDING THE LEVYING OF TAXES.**
>
> *When Article 1, Sub-section XI, of the 1955 State of Jalisco Income Law levied a yearly tax of $15.00 per hectare on lease contracts - regarding lots on the federal zone of Lake Chapala - entered into by the Claimants and the Federation, the tax was necessarily applied to assets that are the object of the contracts because the tax refers to the use and exploitation of the leased plots of land. The tax presupposes that the State of Jalisco has possession over the land which is the object of the lease contracts. Thus, the provisions in the aforementioned Income Law represent an invasion of the powers reserved to the Federation. Indeed, according to Article 5, General Law of National Assets<u>, public domain assets are exclusively subject to the jurisdiction of Federal branches, and States cannot levy taxes on them in any way whatsoever; and there is no controversy regarding the fact that the assets in question are of Federal public domain and common use, under the terms of Article 2, Sub-section I and Article 17, Sub-section V of the cited law.</u>*

5

Expert Opinion of Leopoldo Burguete-Stanek

> Amparo *3691/55 under revision.  José Velasco Castellanos y Coags. September, 10, 1956.  Unanimity by four votes.  Submitted by: Nicéforo Guerrero.*

The Regulations for the Use and Exploitation of Territorial Seas, Waterways, Beaches, Federal Maritime and Terrestrial Zones, and Land Reclaimed from the Sea, Article 22, allows the Federal government to assign federal maritime and terrestrial zones, or any land reclaimed from the sea, or any other body of sea waters that may be required for use or exploitation, to the service of departments and entities of the Federal Public Administration, State or Municipal governments.  However, Articles 35 and 36 of this Regulation state that concessions, destinations or permits for these natural resources can only grant the right of use and exploitation of the Federal maritime and terrestrial zone, any land reclaimed from the sea, and any other body of maritime waters.  A proprietary interest is never conveyed.

Therefore, while Mexican Law allows for a system under which the States may be permitted to manage, control, enjoy, exploit or use the beaches, waters, and other natural resources, this does not equate to or create a proprietary interest in the property.  Under Mexican Law, National Assets, by their very nature, are property of the Federation; the Federation owns and has the right to control such property. Coordination agreements between the Federation and any given State may authorize a State to conduct specific activities but this limited grant of use or control does not give the State a right of ownership in the object.  Moreover, a concession of any asset described in Article 27 of the Constitution and within the public domain may be terminated by the federal government without any further compensation to the holder of the concession. Article 18 of the General Law of National Assets.

### 4. Distribution of Jurisdiction in Environmental Matters

Pursuant to the Constitution, the Federation has the power to issue laws that distribute competence between the three levels of government and to define, in any case, the type of relations of coordination or collaboration that shall be engaged among the three levels.  Article 73, Section XXIX-G. Constitutional Jurisprudence P./J.15/2012(9a), July 2012, Tenth period; Plenary; S.J.F. and Gazette; Book X, July, 2012, Volume 1, Page 346.

To the extent that Mexican law allows for concurrent Federal and State jurisdiction, this concurrent jurisdiction is limited in scope.  The Federal government has determined that what is federal and has established that States are permitted to issue laws that impact only their own territory and cannot enforce any law outside of the State.  Article 124 of the Constitution; Sub-section I, Article 121 of the Constitution.  Moreover, the federal environmental legislation implementing Article 73, Section XXIX-G of the Constitution, expressly establishes federal jurisdiction over matters affecting the ecological equilibrium in national territory or federal zones in cases where the harm originates in the territory or zones subject to the sovereignty or jurisdiction of other Nations or in a zone beyond the jurisdiction of any Nation.Article 5, Sub-section III, General Law of Ecological Equilibrium and Environmental Protection ("GLEEEP").

### 5. Distribution of Jurisdiction in Matters of the Law of the Sea

According to the foregoing and to Article 27 of the Constitution, the Nation exercises original proprietorship over territorial waters, and sovereignty and jurisdiction over an area which includes territorial seas, adjacent zones, and exclusive economic zones.  The Law of the Sea and the GLNA implement this Constitutional provision.

Expert Opinion of Leopoldo Burguete-Stanek

Plaintiff States do not exercise proprietary rights, nor do they have proprietary interest with regard to territorial seas given that, as stated in Article 9, GLNA, assets subject to Federal public domain shall be under the exclusive jurisdiction of federal authorities.

The Federation has sovereignty and jurisdiction on territorial seas, adjacent zones and exclusive economic zones.  Sub-section IV, Article 30, Organic Law of Federal Public Administration.

Federal Law of the Sea, Article 6, states that the Nation has sovereignty within the limits of respective maritime zones over live marine resources, including conservation and use of these resources; the economic exploitation of the sea; and the protection and preservation of the marine environment, including the prevention of pollution.

> *Ninth Period*
> *Thesis:     2ª.C/96/ Isolated Thesis (Constitutional)*
> *Register:   200515*
> *Location:   Federal Weekly Legal Review, and its Gazette.  Book IV, November 1996, Page 243*
> *Source:     Second Chamber, Mexican Supreme Court of Justice*
>
> ***FEDERAL AND LOCAL LEGAL REGIMES, THEIR VALIDITY SCOPE.***
>
> *Articles 42 through 48, Federal Constitution, establish the parts that integrate the Federation and the national territory, the latter being composed by continental territory, insular territory, territorial sea, continental shelf and submarine shelf, wherefrom not only geographical continuity results but also continuity of the territorial scope of validity of Federal legislation. The same notion of continuity is triggered with regard to local States and Mexico City, where, by reasons of territory, only local jurisdiction applies under Article 121, Constitution.  This reveals the importance of boundaries and borders, because their geographical location indicates where the territory of a State, or of Mexico City, begins and ends, for the purpose of establishing where the territorial scope of validity of a legal order begins and ends.  In turn, this determines the space where a corresponding public authority may exert its powers.*

6.  **<u>Distribution of Jurisdiction on Beaches, Federal Maritime and Terrestrial Zone, and Land Reclaimed from the Sea</u>**

Under the terms of Article 32, Sub-section VIII, Organic Law of Federal Public Administration, the Secretariat for the Environment and Natural Recourses exercises the Nation's possession and proprietorship of beaches, Federal Maritime Terrestrial Zone, and land reclaimed from the sea.[3]

Article 5, RMATFEZO, establishes that beaches, Federal Maritime Terrestrial Zones and land claimed from the sea, are Federal public domain assets.  Thus, the Federal government is in charge of possessing, administering, supervising and controlling these natural resources.  As discussed previously, the use and exploitation of these natural resources can only be granted to a

---

[3] The Federal Maritime and Terrestrial Zone is defined as a twenty-meter wide zone of mainland which is passable and is adjacent to a beach, while land reclaimed from the sea exists when a portion of land ceases to be part of a Federal Maritime Terrestrial Zone due to natural or artificial causes. Consequently, the area between the first Federal Maritime Terrestrial Zone and the new Federal Maritime Terrestrial Zone becomes land reclaimed from the sea.

Expert Opinion of Leopoldo Burguete-Stanek

state government through a concession or an agreement of destination. This does not create any proprietary rights to the assets but is simply a transfer of derived possession.

Concession titles or agreements of destination only authorize acts that are allowed by the law and the terms and conditions of these grants are contained in the authorizing document. Concession titles or agreements of destination merely grant the right to use and/or exploit a national asset.

### 7. **Distribution of Jurisdiction within the Law of National Waters**

Under Article 27, Paragraph 5 of the Constitution, waters are originally the property of the Nation, and under Article 2, National Waters Act, the provisions of this Law are applicable to national waters (surface or subterranean waters), as well as to National Assets included in the law.

The National Water Commission is responsible for the administration of waters, and any National Assets associated with national waters. This federal Commission has the power to administer and protect national waters and the assets referred to in Article 113, National Waters Act.

Plaintiff States argue the presumed existence of waters under State jurisdiction, relying on an isolated non-binding thesis issued around 1938, which argued that that waters that do not meet the characteristics set forth in Article 27, Constitution, (i.e. waters whose main branch only goes across the land of one State), could be declared territorial or state waters.

It may be true that waters that only traverse the land of one State and are not connected in any way to surface or subterranean waters could conceivably be State waters, but this is not relevant here. Any waters connected in any way to surface or subterranean waters belong to the Nation, as stated in the Jurisprudence below, issued by a Plenary of the Mexican Supreme Court of Justice:

> *Ninth Period*
> *Thesis:      P./J. 40/2006 Constitutional Jurisprudence*
> *Register:    175694*
> *Location:    Federal Judicial Weekly Review and its XXIII Gazette, March 2006. Page 1483*
> *Era:         Ninth Period*
> *Source:      Plenary of the Mexican Supreme Court of Justice*
>
> ***SUBTERRANEAN WATERS ARE UNDER FEDERAL JURISDICTION WITH REGARD TO THEIR REGULATION, USE OR EXPLOITATION, INCLUDING EXTRACTION OR DISCHARGE.***
>
> *Article 27, Paragraph Five and Six, and Article 73, Paragraph XVII and XXIX, Sub- section 2, of the Political Constitution of the United Mexican States, establish which waters are the Nation's property; that subterranean waters may be artificially brought to the surface, and be appropriated by the landowners. But when public interest demands it, the Federal Executive may regulate the extraction and use of waters, and establish prohibition zones; that the dominium by the Nation over waters is inalienable and not subject to statute of limitation, and that the exploitation and use of waters by individuals or companies constituted under Mexican law require a concession granted by the Federal Executive. Likewise, it is the Federal*

8

Expert Opinion of Leopoldo Burguete-Stanek

> Congress's responsibility to issue laws on the use and exploitation of waters under federal jurisdiction, and establish fees for the exploitation of that natural resource. For their part, Congress issued the National Waters Act to regulate the use and exploitation of waters. Article 3, Article 4 and Article 91 of said Act establish which waters are waste waters; that their management corresponds to the Federal Executive, who shall exercise it directly or through the National Waters Commission; and that recharge or infiltration of waste waters to replenish water tables requires the Commission's authorization and must comply with the Official Mexican Standards issued on the matter. Therefore, and based on the foregoing, the regulation of the use and exploitation of subterranean waters, including their extraction and discharge, or the infiltration of waste waters to replenish water tables is under Federal jurisdiction.

**8.    Distribution of Jurisdiction with respect to wildlife and live marine resources.**

Under Mexican law, wild animals cannot be owned. However, the Federation has exclusive power to regulate and protect species of fauna and flora and exclusive authority to deal with matters related to the conservation and sustainable exploitation of the Nation's wildlife in cases where acts that may affect the Nation's wildlife occurred in territories or zones subject to the sovereignty and jurisdiction of other countries, or in zones that are beyond the jurisdiction of any country. Further, only the Federal government has exclusive jurisdiction over protected species and only the Federal government regulates hunting and the exploitation of marine life. Article 9, sub-section VI, General Wildlife Act.

By the same token, the federal government regulates and administers the marine, fisheries and aquaculture resources. The federal government establishes the corresponding national policy, including seasons and quotas for the exploitation of marine resources. Federal authorization is required to exercise any commercial fishing activity in Mexican waters or in the high seas if conducted in any vessel under Mexican flag. General Law for Sustainable Fisheries and Aquaculture, Article 8.

**9.    Claimants have no legal standing to file claims over national assets when damages occur abroad.**

Article 119 of the Constitution states that the authority to respond to any foreign invasion or violence is vested in the Federation and not the States. Under Mexican law, this extends to all acts which, having had their origin abroad, may damage a State which is part of the Federation and has signed the Federal Pact. The Federation has exclusive authority over issues affecting the ecological equilibrium in the Nation or in the zones subject to Federal sovereignty and jurisdiction, originating in a territory or zone subject to the sovereignty or jurisdiction of a foreign state, or in the zones outside the jurisdiction of any State  This is reaffirmed by the environmental law doctrine, when it states that "within the aspects that are considered to be under federal jurisdiction, there are aspects that, due their very nature, are related to national assets and zones of federal jurisdiction, as well as international matters that affect two or more federal entities - scenarios that are envisaged in Sub-sections II, III, IV, XII and XX, Article 5, GLEEEP".[4]

---

[4] See Raúl Brañes "***MANUAL DE DERECHO AMBIENTAL MEXICANO***" [MANUAL OF MEXICAN ENVIRONMENTAL LAW]; Ed. Fondo de Cultura Económica. México 2000. P. 135.

9

Expert Opinion of Leopoldo Burguete-Stanek

Only the federal government has the right to bring an action to relating to the territorial seas or EEZ. The federal government exercises in the EEZ (i) its sovereign rights for purposes of exploration and exploitation, conservation and administration of both, live and non-live natural resources, whether renewable or non-renewable, of the bed and subsoil of the sea and of the overlying waters, and regarding other activities intended for exploration and exploitation of the economic zone, such as the production of tidal and wind energy; and (ii) jurisdiction over the establishment and utilization of artificial islands, infrastructure and facilities, scientific marine investigation; and protection and preservation of the marine environment. Federal Law of the Sea, Articles 6 and 46.

Article 6, GLEEEP states that the powers granted to the Federation shall be exercised by the Federal Executive through the Secretariat of the Environment and Natural Resources, while none of the Sub-sections in Article 7 (which establish the powers of the States) envisage the possibility that a State may initiate an action in case of pollution originating in a foreign country. Consequently, States do not have proprietary interests because they have no legal standing to appear before another court to claim damages. If they did so, they would violate the federal pact.

Finally, many of the authorities cited by the States refer to municipalities. States lack standing to represent municipalities.

\* \* \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 29th day of October 2012.

_____
Leopoldo Burguete-Stanek

Exhibit 1

**Leopoldo Burguete Stanek**

With over 25 years of experience in the field, Leopoldo Burguete-Stanek is recognized as one of the most well-renowned and influential environmental lawyers in Mexico. His expertise in all aspects of environmental and natural resource laws, with particular strengths in energy, water management, hazardous waste control, atmospheric pollution, environmental impact and due diligence and auditing, natural protected areas, land contamination and soil restoration, mining, forestry, oil and gas activities, and all aspects of environmental litigation and dispute resolution.

His practice also comprises several specialist areas, advising on conventional and alternative tourism projects, the federal maritime zone and exclusive economic area, analysis of fiscal benefits and entitlements, as well as providing legal advice on the development of emission reduction projects under the Kyoto Protocol.

Leopoldo Burguete-Stanek received his law degree from Universidad La Salle in 1983. He obtained a Masters in International Law from the Southern Methodist University in 1986. He received a postgraduate degree in Economic and Corporate Law from *Universidad Panamericana* in 1987 and an environmental law certificate from the *Instituto Tecnológico Autónomo de México* in 1988.

He was professor of environmental law at *Escuela Libre de Derecho*, the *Universidad Panamericana*, *Instituto Tecnológico Autónomo de México* and the *Universidad Anahuac* in their graduate program. He is a member of the eighth cohort of the Leadership for Environment and Sustainable Development Program (LEAD); he recently left his post as coordinator of the environmental law committee of the National Association of Corporate Lawyers and also served as coordinator of the professional activities area of the Mexican Bar Association's environmental law commission and as co-chair of the environmental committee and member of the board of directors of the US-Mexico Bar Association. He is currently the Regional Representative for Middle America of the International Bar Association's Section on Energy, Environment, Natural Resources and Infrastructure Law.

Previously, Mr. Burguete-Stanek directed the Mexico City office and headed the environmental department of the Mexican law firm *Bryan, Gonzalez Vargas y Gonzalez Baz, S.C.* and later co-founded the first law firm dedicated solely to environmental law in Mexico. He is currently partner at *Gonzalez Calvillo, S.C.*, where he is in charge of the environmental law and sustainable development law practice area.

Specific issues that Mr. Burguete-Stanek has worked on recently include the development of utility sized thermoelectric power plants in north and central Mexico and wind farms in the country's southern region and the construction of its ancillary facilities; a clean development mechanism hydroelectric project, and an array of environmental business risk assessments in matters of real estate and industrial activities. Finally, Mr. Burguete-Stanek is able to advise and guide his clients through many aspects of cross-border transactions and project planning, including the management of social facets affecting a project, through the implementation of international standards for project finance.

| Exhibit 2 - Concessions, Allotments, and Agreements | Of Destination |
|---|---|
| **Instrument** | **Characteristics** |
| Coordination Agreement entered by the Ministry of Environment, Natural Resources and Fishery[5], the State of Tamaulipas and the municipalities of Matamoros, San Fernando, Soto la Marina, Aldama, Altamira and Ciudad Madero, for the sustainable enjoyment of the beaches, federal maritime terrestrial zone and lands gained from the sea, in the coastal municipalities of the same State. | Agreement executed in the year of 1998 by and between the former Ministry of Environment, Natural Resources and Fishery and the Government of the State of Tamaulipas; in none of the objectives of the present Agreement is noted that faculties are granted to the government of the State or to its Municipalities in order to exert authority over the Federal Maritime Terrestrial Zone, the previous (faculties) are limited to establishing mechanisms and procedures. The content of section 10 of the sixth clause of said agreement requires special attention when it refers that it is faculty of the Ministry: to hear, analyze and authorize, in its case, the State's and Municipalities' requests regarding the occupation (by them) of beaches, federal maritime terrestrial zone and lands gained from the sea, taking under consideration the federal priorities in the matter. |
| Agreement of Administrative Collaboration in Federal Tax Matters, entered by the Ministry of Treasury and Public Finance and the State of Tamaulipas. | The objective of this Agreement is that the functions of administration of the federal income, which are established in the second clause, are adopted by the State, in order to execute actions in fiscal matters within the frame of the national development planning. The second clause refers to: value added tax, income tax, tax over assets, special tax over production and services, corporate flat rate tax, cash deposits tax, tax over new vehicles, fines imposed by non-fiscal federal administrative authorities and the exercise of fiscal faculties to demand the presentation of declarations, corroboration of compliance to tax obligations, verify the compliance of the fiscal receipts, application of the administrative procedure of execution and verification of compliance with customs requirements. |
| ATTACHMENT No. 1 of the Collaboration Agreement in Federal Tax Matters entered by: the Ministry of Treasury and Public Finance, the State of Tamaulipas and the City Hall of the Municipality of Aldama, of the same State.[6] | Refers that the State, through the Municipality, will exert the operational functions of tax collection, corroboration, determination and charge of the fees referred to by articles 211-B and 232-C of the federal Fees' Law (***Ley Federal de Derechos***) (fees generated by piers, shipping and disembarkation, as well as for the use, enjoyment or exploitation of real-estate assets consisting of beaches, federal maritime terrestrial zones and lands gained from the sea or any other deposit of maritime waters).[7] Additionally, the Fifth Clause of the present agreement establishes that: the Ministry of Environment and Natural Resources will exert exclusively the Nation's possession and property of the beaches, federal maritime terrestrial zone and lands gained from the sea or any other deposit formed by maritime waters, in terms of the applicable federal legislation. The seventh clause of the same instrument adduces that the State and the Municipality agree with the Ministry of Treasury and Public Finance that the income obtained from the fees collected for the use, enjoyment or exploitation of real-estate assets that individuals and companies are forced to pay who use, enjoy or exploit the beaches, the federal maritime terrestrial zone and the lands gained from the sea or from any other deposit of maritime waters, will be destined, totally or partially, to the vigilance, administration, maintenance, preservation and cleaning of said zone, as well as for the services' rendering that are required by the same. |

---

[5] The Ministry of Environment and natural Resources assumed the faculties of the Ministry of Environment, Natural Resources and Fishery, who at its time took them from the Ministry of Social Development and Ecology.

[6] The same reference applies for the Attachments of the Collaboration Agreement in which the municipal governments of Altamira, San Fernando, Ciudad Madero, Matamoros and Soto la Marina all of the State of Tamaulipas are part. For the State of Quintana Roo the same clauses were included within the Attachment regarding the Collaboration Agreement signed by the Municipalities of Cozumel, Isla Mujeres, Felipe Carrillo Puerto, Othon P. Blanco, Solidaridad, Benito Juarez and Tulum. In regards to the State of Veracruz, the dispositions apply for the municipalities of San Rafael, Veracruz, Tecolutla, Tuxpan, Ursulo Galvan, Vega de Alatorre, Tantima, Tampico el Alto, Tamiahua, Tamalin, Papantla, Pueblo Viejo, Medellin de Bravo, Nautla, Ozulama, Pajapan, Panuco, Martinez de la Torre, Mecayapan, La Antigua, Agua Dulce, Alto Lucero, Alvarado, Angel R. Cabada, Boca del Rio, Catemaco, Cazones de Herrera, Coatzacoalcos, Lerdo de Tejada y Actopan.

[7] According to the content of article 2, section IV of the Federal Fiscal Code fees are understood as the contributions established by the Law for the use or enjoyment of assets of the public domain of the Federation.

Expert Opinion of Leopoldo Burguete-Stanek

| Instrument | Characteristics |
|---|---|
| Coordination Agreement entered by the Ministry of Environment, Natural Resources and Fishery, the Government of the State of Quintana Roo and the municipal governments of Cozumel, Felipe Carrillo Puerto, Isla Mujeres, Othón P. Blanco, Benito Juárez, Lázaro Cárdenas and Solidaridad, for the sustainable enjoyment of the beaches, federal maritime terrestrial zone and lands gained from the sea in the coastal municipalities of the State of Quintana Roo. | In none of the objectives of the present Agreement, is noted that faculties are granted to the government of the State or to the governments of its Municipalities in order to exert authority over the Federal Maritime Terrestrial Zone, the previous (faculties) are limited to establishing mechanisms and procedures. The content of section 10 of the sixth clause of said agreement requires special attention when it refers that it is faculty of the Ministry: to hear, analyze and authorize, in its case, the State's and Municipalities' requests regarding the occupation (by them) of beaches, federal maritime terrestrial zone and lands gained from the sea, taking under consideration the federal priorities in the matter. |
| AGREEMENT of Administrative Collaboration in Federal Tax Matters, entered by the Ministry of Treasury and Public Finance and the State of Quintana Roo. | The objective of this Agreement is that the functions of administration of the federal income, which are established in the second clause, are adopted by the State, in order to execute actions in fiscal matters within the frame of the national development planning. The second clause refers to: value added tax, income tax, tax over assets, special tax over production and services, corporate flat rate tax, cash deposits tax, tax over new vehicles, fines imposed by non-fiscal federal administrative authorities and the exercise of fiscal faculties to demand the presentation of declarations, corroboration of compliance to tax obligations, verify the compliance of the fiscal receipts, application of the administrative procedure of execution and verification of compliance with customs requirements. |
| ATTACHMENT No. 1 of the Agreement of Administrative Collaboration entered by the Federation with the State of Veracruz, dated May 18, 1984. | The Ministry of Urban Development and Ecology will have the exclusive administration of the maritime terrestrial zone; the granting and revoking, in its case, of concessions or permits; and the vigilance of the use or enjoyment of said zone. |

For an easier reference, hereunder we cite the Agreements of Destination invoked by the Plaintiff States:

| Agreement | Destine | Observations |
|---|---|---|
| Agreement by means of which the surface of 801,408.43 square meters, made up by 684,366.65 square meters of the federal coastal zone and 117,042.18 square meters of land reclaimed from the sea, is destined to the service of the Government of Tamaulipas, such land being found in La Pesca, Municipality of Soto la Marina, State of Tamaulipas. | Public beach to be enjoyed by national and international tourists. | According to Article Second of the Agreement, it only granted the Government of the State of Tamaulipas, the **right to use the surface for touristic use and enjoyment**, however, it did not transfer the property, nor created any rights *in rem* in favor of the State. |
| Resolution whereby a surface of 5,089.23 m² of Federal maritime terrestrial zone located in SM-86, MZ 02, Plots 08 and 07, Cancun, is destined at the service of the Municipality of Benito Juarez, State of Quintana Roo. | Public beach. | As in the previous case, the Second Article only grants the Municipality of Benito Juarez, Quintana Roo the **right to use the surface destined for a public beach**, and does not transfer the property nor does it create any *in rem* rights in favor of the Municipality. |
| Resolution whereby a surface of 231.21 square meters of Federal maritime terrestrial zone located in Petrel Norte, Playa del Carmen, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Public beach club with removable equipment. | Second Article refers that the Municipality of Solidaridad, Quintana Roo has been granted the **right to use the surface destined for public pool with beach facilities easily removable**, it does not transfer property nor does it create any *in rem* rights in favor of the Municipality. |
| Resolution whereby a surface of 250.37 square meters of Federal maritime terrestrial zone located in Prolongación Av. 72 Norte, colonia Luis Donaldo Colosio, Playa del Carmen, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Public beach club with provisional and removable facilities. | The Second Article refers that the Municipality of Solidaridad, Quintana Roo has been granted the **right to use the surface destined for public pool with beach facilities easily removable**, it does not transfer property nor does it create any *in rem* rights in favor of the Municipality. |
| Resolution whereby a surface of 12,701.22 square meters of Federal maritime terrestrial zone and land reclaimed from the sea, located in av. Circunvalación Aeropuerto # 245, Municipio de Isla | Protection of marine turtles. | As in the previous case, the Second Article grants the Municipality of Isla Mujeres, Quintana Roo, only the **right to use the surface destined for protection of the marine turtle**, it |

Expert Opinion of Leopoldo Burguete-Stanek

| Agreement | Destine | Observations |
|---|---|---|
| Mujeres, Quintana Roo, is destined at the service of the Municipality of Isla Mujeres. | | does not transfer property nor does it create any *in rem* rights in favor of the Municipality. |
| Resolution whereby a surface of 202.71 square meters of Federal maritime terrestrial zone located in Punta Bete (Velas) Playa del Carmen, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Public beach club. | Likewise, the Second Article refers that only the **right to use the surface destined for public beach** has been granted to the Municipality of Solidaridad, Quintana Roo, however it does not transfer property nor does it grant any *in rem* rights in favor of the Municipality. |
| Resolution whereby a surface of 247.35 square meters of Federal maritime terrestrial zone located in Cunaro de Piedra, Playacar Fase I, Playa del Carmen, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Public beach club with provisional and removable facilities. | The Second Article refers that only the **right to use the surface destined for public pool with beach facilities easily removable** is granted to the Municipality of Solidaridad, Quintana Roo, however it does not transfer property nor does it create any *in rem* rights in favor of the Municipality. |
| Resolution whereby a surface of 592.63 square meters of Federal maritime terrestrial zone located in 88 Norte, colonia Luis Donaldo Colosio, Playa del Carmen, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Public beach club with provisional and removable facilities. | The Second Article refers that only the **right to use the surface destined for public pool with beach facilities easily removable** is granted to the Municipality of Solidaridad, Quintana Roo, however it does not transfer property nor does it create any *in rem* rights in favor of the Municipality. |
| Resolution whereby a surface of 289.64 square meters of Federal maritime terrestrial zone located in Punta Bete, Montecarlo, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Public beach club with provisional and removable facilities. | The Second Article refers that only the **right to use the surface destined for public pool with beach facilities easily removable** is granted to the Municipality of Solidaridad, Quintana Roo, however it does not transfer property nor does it create any *in rem* rights in favor of the Municipality. |
| Resolution whereby a surface of 192.47 square meters of Federal maritime terrestrial zone located in Chetumal-Cancún highway, Bahías Punta Solimán, Municipality of Tulum, Quintana Roo, is destined at the service of the Municipality of Tulum. | Protection. | In accordance with the grounds by which concessions, allotments and destination agreements are granted, protection is understood as: **actions taken to preserve the natural state of a given surface**. It does not transmit the property or create any *in rem* rights for the beneficiary. |
| Resolution whereby a surface of 300.74 square meters of Federal maritime terrestrial zone located in Xcalacoco Sur, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Public beach club. | As in the previous case, the Second Article only grants the Municipality of Solidaridad the **right to use the surface destined for a public beach club.** It does not transmit the property or create any *in rem* rights in favor of the Municipality of Solidaridad. |
| Resolution whereby a surface of 240.60 square meters of Federal maritime terrestrial zone located in North street, between the city blocks 3 and 4, downtown area, Playa del Carmen, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Public beach club with provisional and removable facilities. | As in the previous case, the Second Article only grants the Municipality of Solidaridad the **right to use the surface destined for a public beach club with provisional and removable facilities.** It does not transmit the property or create any *in rem* rights for the Municipality of Solidaridad. |
| Resolution whereby a surface of 219.13 square meters of Federal maritime terrestrial zone located in 8 Street North, between the city blocks 4 and 21, downtown area, Playa del Carmen, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Public beach club with provisional and removable facilities. | Likewise, the Second Article only grants the Municipality of Solidaridad the **right to use the surface destined for a public beach club with provisional and removable facilities.** It does not transmit the property or create any *in rem* rights for the Municipality of Solidaridad. |
| Resolution whereby a surface of 199.39 square meters of Federal maritime terrestrial zone located in Gaviotas Street, Playa Gaviotas, Playa del Carmen, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Protection – preservation of the natural state of the surface. | In accordance with the grounds by which concessions, allotments and destination agreements are granted, protection is understood as: **actions taken to preserve the natural state of a given surface**. It does not transmit the property or create any *in rem* rights for the beneficiary. |
| Resolution whereby a surface of 1,930.78 square meters of Federal maritime terrestrial zone located in | Protection. | As in the previous cases, in accordance with the grounds by which concessions, allotments and |

Expert Opinion of Leopoldo Burguete-Stanek

| Agreement | Destine | Observations |
|---|---|---|
| Akumal, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | | destination agreements are granted, protection is understood as: **actions taken to preserve the natural state of a given surface**. It does not transmit the property or create any *in rem* rights for the beneficiary. |
| Resolution whereby a surface of 17,590.28 square meters of Federal maritime terrestrial zone located in kilometer 42+000 of the east coastline, Playa Chen Río, Isla Cozumel, Municipality of Cozumel, Quintana Roo, is destined at the service of the Municipality of Cozumel. | Public beach club. | As in the previous case, the Second Article only grants the Municipality of Cozumel, Quintana Roo the **right to use the surface destined for a public beach club.** It does not transmit the property or create any *in rem* rights for the Municipality of Cozumel. |
| Resolution whereby a surface of 219.47 square meters of Federal maritime terrestrial zone located in Akumal B, Chetumal-Cancún highway, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Protection. | In accordance with the grounds by which concessions, allotments and destination agreements are granted, protection is understood as: **actions taken to preserve the natural state of a given surface.** It does not transmit the property or create any *in rem* rights for the beneficiary. |
| Resolution whereby a surface of 251.96 square meters of Federal maritime terrestrial zone located in 14 Street North, between city blocks 23 and 24; downtown area, Playa del Carmen, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Public beach club with provisional and removable facilities. | The Second Article only grants the Municipality of Solidaridad the **right to use the surface destined for a public beach club with provisional and removable facilities.** It does not transmit the property or create any *in rem* rights for the Municipality of Solidaridad. |
| Resolution whereby a surface of 271.70 square meters of Federal maritime terrestrial zone located in 16 Street North, between city blocks 24 and 25; downtown area, Playa del Carmen, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Public beach club with provisional and removable facilities with lounge chairs, plastic chairs and tables, and removable umbrellas and bathrooms.[8] | Likewise, the Second Article only grants the Municipality of Solidaridad the **right to use the surface destined for a public beach club with provisional and removable facilities.** It does not transmit the property or create any *in rem* rights for the Municipality of Solidaridad. |
| Resolution whereby a surface of 8,570.85 square meters of Federal maritime terrestrial zone located in kilometer 44+500 of the east coastline, Playa Chen Río, Isla Cozumel, Municipality of Cozumel, Quintana Roo, is destined at the service of the Municipality of Cozumel. | Public beach club. | The Second Article only grants the Municipality of Cozumel, Quintana Roo the **right to use the surface destined for a public beach club.** It does not transmit the property or create any *in rem* rights for the Municipality of Cozumel. |
| Resolution whereby a surface of 205.49 square meters of Federal maritime terrestrial zone located in 2nd Street North, between city blocks 1 and 2, Playa del Carmen, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Public beach club with provisional and removable facilities. | The Second Article only grants the Municipality of Solidaridad the **right to use the surface destined for a public beach club with provisional and removable facilities.** It does not transmit the property or create any *in rem* rights for the Municipality of Solidaridad. |
| Resolution whereby a surface of 212.66 square meters of Federal maritime terrestrial zone located in Piedra Escondida, Tulum Costero, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Protection. | In accordance with the grounds by which concessions, allotments and destination agreements are granted, protection is understood as: **actions taken to preserve the natural state of a given surface.** It does not transmit the property or create any *in rem* rights for the beneficiary. |
| Resolution whereby a surface of 216.38 square meters of Federal maritime terrestrial zone located in Akumal phase H, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Ornament. | In accordance with the grounds by which concessions, allotments and destination agreements are granted, **ornament is understood as: constructions without foundations destined exclusively for the embellishment of the place or the enjoyment of the beneficiary, without any profitable** |

---

[8] It can be concluded that the surfaces destined for public beach clubs, are associated with the installation of chattel that are the object of the administration of the municipal governments, not the state governments.

15

Expert Opinion of Leopoldo Burguete-Stanek

| Agreement | Destine | Observations |
|---|---|---|
| | | **activities.** It does not transmit the property or create any *in rem* rights for the beneficiary. |
| Resolution whereby a surface of 333.97 square meters of Federal maritime terrestrial zone located in Akumal phase I, Chetumal-Cancún highway, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Protection – maintenance of the conditions of the surface. | In accordance with the grounds by which concessions, allotments and destination agreements are granted, protection is understood as: **actions taken to preserve the natural state of a given surface.** It does not transmit the property or create any *in rem* rights for the beneficiary. |
| Resolution whereby a surface of 216.38 square meters of Federal maritime terrestrial zone located in Akumal phase H, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Ornament. | In accordance with the grounds by which concessions, allotments and destination agreements are granted, **ornament is understood as: constructions without foundations destined exclusively for the embellishment of the place or the enjoyment of the beneficiary, without any profitable activities.** It does not transmit the property or create any *in rem* rights for the beneficiary. |
| Resolution whereby a surface of 330.69 square meters of Federal maritime terrestrial zone located in 38 Street North, between city blocks 3 and 5, Xaman-Ha, Playa del Carmen, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Public beach club with provisional and removable facilities. | The Second Article only grants the Municipality of Solidaridad the **right to use the surface destined for a public beach club with provisional and removable facilities.** It does not transmit the property or create any *in rem* rights for the Municipality of Solidaridad. |
| Resolution whereby a surface of 189.76 square meters of Federal maritime terrestrial zone located in Akumal phase B, Chetumal-Cancún highway, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Protection. | In accordance with the grounds by which concessions, allotments and destination agreements are granted, protection is understood as: **actions taken to preserve the natural state of a given surface.** It does not transmit the property or create any *in rem* rights for the beneficiary. |
| Resolution whereby a surface of 204.54 square meters of Federal maritime terrestrial zone playa Xcalacoco, Playa del Carmen, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Protection. | In accordance with the grounds by which concessions, allotments and destination agreements are granted, protection is understood as: **actions taken to preserve the natural state of a given surface.** It does not transmit the property or create any *in rem* rights for the beneficiary. |
| Resolution whereby a surface of 175.52 square meters of Federal maritime terrestrial zone located in 12 Street North, between city blocks 22 and 23, downtown area, Playa del Carmen, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Protection and public beach club. | The Second Article only grants the Municipality of Solidaridad the **right to use the surface destined for a public beach club.** It does not transmit the property or create any *in rem* rights for the Municipality of Solidaridad. |
| Resolution whereby a surface of 27,377.08 square meters of Federal maritime terrestrial zone located in Playa San Martín, kilometer 44+800 of the east coastline, Isla Cozumel, Municipality of Cozumel, Quintana Roo, is destined at the service of the Municipality of Cozumel. | Public beach club. | The Second Article only grants the Municipality of Cozumel, Quintana Roo the **right to use the surface destined for a public beach club.** It does not transmit the property or create any *in rem* rights for the Municipality of Cozumel. |
| Resolution whereby a surface of 110.62 square meters of Federal maritime terrestrial zone located in Playa Paraíso, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | Protection and ornament. | In accordance with the grounds by which concessions, allotments and destination agreements are granted, protection is understood as: **actions taken to preserve the natural state of a given surface**, and ornament is understood as: **constructions without foundations destined exclusively for the embellishment of the place or the enjoyment of the beneficiary, without any profitable activities.** It does not transmit the property or create any *in rem* rights for the beneficiary. |
| Resolution whereby a surface of 229.36 located in | Protection and | In accordance with the grounds by which |

Expert Opinion of Leopoldo Burguete-Stanek

| Agreement | Destine | Observations |
|---|---|---|
| Akumal phase B, Chetumal-Cancún highway, Municipality of Solidaridad, Quintana Roo, is destined at the service of the Municipality of Solidaridad. | ornament. | concessions, allotments and destination agreements are granted, protection is understood as: **actions taken to preserve the natural state of a given surface**, and ornament is understood as: **constructions without foundations destined exclusively for the embellishment of the place or the enjoyment of the beneficiary, without any profitable activities.** It does not transmit the property or create any *in rem* rights for the beneficiary. |
| Resolution whereby a surface of 11,410.57 square meters of Federal maritime terrestrial zone located in kilometer 44+360 of the east coastline, Playa Chumul, Isla Cozumel, Municipality of Cozumel, Quintana Roo, is destined at the service of the Municipality of Cozumel. | Public beach club. | The Second Article only grants the Municipality of Cozumel, Quintana Roo the **right to use the surface destined for a public beach club.** It does not transmit the property or create any *in rem* rights for the Municipality of Cozumel. |
| Resolution whereby a surface of 776.13 square meters of Federal maritime terrestrial zone located in Rafael M. Melgar av. Corner with 13 Street, colonia Gonzalo Guerrero, Municipality of Cozumel, Quintana Roo, is destined at the service of the Municipality of Cozumel. | Public beach club. | The Second Article only grants the Municipality of Cozumel, Quintana Roo the **right to use the surface destined for a public beach club.** It does not transmit the property or create any *in rem* rights for the Municipality of Cozumel. |
| Resolution whereby a surface of 5,082.04 square meters made up of 1,843.26 square meters of Federal maritime terrestrial zone and 3,238.78 square meters of land reclaimed from the sea, located in Raudal, Municipality of Nautla, State of Veracruz, is destined at the service of the State of Veracruz. | Use of existing camp for the protection of marine turtles and without the authorization to modify the existing constructions or build new constructions. | It does not transmit the property or create any *in rem* rights for the beneficiary. |
| Resolution whereby a surface of 8,850.07 square meters of Federal maritime terrestrial zone and three reinforced concrete tanks for the exhibition of sharks and manatees as well as a pool located in the Street Avila Camacho, Playón de Hornos, Municipality of Veracruz, State of Veracruz, are destined at the service of the Administrative Trust of the Veracruz' Aquarium. | First stage of the Veracuz' Acuarium Expansion Project: Sharks and Manatees. | It does not transmit the property or create any *in rem* rights for the beneficiary. |

17

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing response has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on this 29th day of October, 2012.

                                               /s/   Don K. Haycraft