

46856396

Oct 08 2012
10:54PM

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: OIL SPILL by the OIL RIG     *      MDL NO. 2179
      "DEEPWATER HORIZON"
      In the GULF OF MEXICO on    *      SECTION: J
      April 20, 2010
                               *      JUDGE BARBIER

This document relates to:
STATE OF VERACRUZ, REPUBLIC    *      MAG. JUDGE SHUSHAN
OF MEXICO v. BP, PLC, NO. 10-4239;
STATE OF TAMAULIPAS, REPUBLIC   *
OF MEXICO v. BP, PLC, NO. 10-4240;
STATE OF QUINTANA ROO, REPUBLIC   *
OF MEXICO v. BP, PLC, NO. 10-4241
                               *

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**DEFENDANTS HALLIBURTON ENERGY SERVICES, INC. AND TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC., TRANSOCEAN HOLDINGS LLC, TRANSOCEAN DEEPWATER INC. AND TRITON ASSET LEASING GMBH'S JOINT IDENTIFICATION OF LEGAL AUTHORITIES APPLICABLE TO THE ISSUE OF THE PROPRIETARY INTERESTS ALLEGED BY THE MEXICAN STATES**

Pursuant to the Court's Order of September 11, 2012 (Dkt. 7367) and by agreement of the parties,[1] Defendants Halliburton Energy Services, Inc. ("HESI") and Transocean Offshore Deepwater Drilling Inc., Transocean Holdings LLC, Transocean Deepwater Inc. and Triton Asset Leading GmbH (collectively "Transocean"), through their undersigned counsel, jointly identify the following legal authorities upon which they may rely regarding the alleged proprietary interests of the Mexican states of Veracruz, Tamaulipas, and Quintana Roo (translation attached hereto as Exhibit A). HESI's and Transocean's analysis of the legal issues continues. Accordingly, HESI and Transocean reserve the right to supplement or amend the identified materials in support of their affirmative position and/or on rebuttal.

---

[1] Counsel for the Mexican States requested that Defendants agree to extend until October 8, 2012, the original October 3, 2012 deadline for the exchange of these legal authorities. Defendants did not oppose that extension.

Dated: October 8, 2012

Respectfully Submitted,

**GODWIN RONQUILLO PC**

By: /s/ Donald E. Godwin         ↑
Donald E. Godwin
*Attorney-in-charge*
State Bar No. 08056500
DGodwin@GodwinRonquillo.com
Bruce W. Bowman, Jr.
State Bar No. 02752000
BBowman@GodwinRonquillo.com
Jenny L. Martinez
State Bar No. 24013109
JMartinez@GodwinRonquillo.com
Floyd R. Hartley, Jr.
State Bar No. 00798242
FHartley@GodwinRonquillo.com
Gavin E. Hill
State Bar No. 00796756
GHill@GodwinRonquillo.com
Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
Telephone: (214) 939-4400
Facsimile: (214) 760-7332

-and-

R. Alan York
State Bar No. 22167500
AYork@GodwinRonquillo.com
Jerry C. von Sternberg
State Bar No. 20618150
JVonSternberg@GodwinRonquillo.com
Misty Hataway-Coné
State Bar No. 24032277
MCone@GodwinRonquillo.com
1331 Lamar, Suite 1665
Houston, Texas 77010
Telephone: 713.595.8300
Facsimile: 713.425.7594

*Attorneys for Defendant Halliburton*
*Energy Services, Inc.*

2

-and-

By: /s/ Steven L. Roberts
Steven L. Roberts (Texas, No. 17019300)
Rachel Giesber Clingman (Texas, No. 00784125)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
Email: steven.roberts@sutherland.com
Email: rachel.clingman@sutherland.com

By: /s/ Kerry J. Miller
Kerry J. Miller (Louisiana, No. 24562)
Frilot, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, Louisiana 70163
Telephone: (504) 599-8169
Facsimile: (504) 599-8154
Email: kmiller@frilot.com

-and-

By: /s/ Edwin G. Preis, Jr.
Edwin G. Preis, Jr. (Louisiana, No. 10703)
Preis & Roy PLC
102 Versailles Boulevard, Suite 400
Lafayette, Louisiana 70501
Telephone: (337) 237-6062
Facsimile: (337) 237-9129

-and-

601 Poydras Street, Suite 1700
New Orleans, Louisiana 70130
Telephone: (504) 581-6062
Facsimile: (504) 522-9129
Email: egp@preisroy.com,
rjh@preisroy.com

-and-

By: /s/ Brad D. Brian
Brad D. Brian (California, No. 79001)
Allen M. Katz (California, No. 54933)
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 683-5180, (213) 683-4018
Email: brad.brian@mto.com,
Email: allen.katz@mto.com

Of Counsel:

John M. Elsley (Texas, No. 0591950)
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945
Email: john.elsley@roystonlaw.com

*Counsel for Triton Asset Leasing GmbH,*
*Transocean Holdings LLC, Transocean*
*Offshore Deepwater Drilling Inc. and*
*Transocean Deepwater Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, which will send a notice in accordance with the procedures established in MDL 2179, on this 8th day of October, 2012.

/s/ Jenny L. Martinez_____↑
Jenny L. Martinez

# EXHIBIT A

**TABLE OF CONTENTS**

## POLITICAL CONSTITUTION OF THE UNITED MEXICAN STATES 2

## JURISPRUDENCE (JUDICIAL PRECEDENTS) 12

## FEDERAL LAWS 13
ORGANIC LAW OF THE FEDERAL PUBLIC ADMINISTRATION 13
INTERNAL REGULATION OF THE DEPARTMENT OF THE ENVIRONMENT AND NATURAL RESOURCES 18
GENERAL LAW OF ECOLOGICAL BALANCE AND ENVIRONMENTAL PROTECTION 21
GENERAL LAW ON NATIONAL ASSETS 26
FEDERAL LAW OF THE SEA 30
NATIONAL WATERS LAW 36
JURISPRUDENCE RELATED TO NATIONAL WATERS (JUDICIAL PRECEDENTS) 41
LAW OF NAVIGATION AND MARITIME COMMERCE 61
PORTS LAW 64
GENERAL LAW OF SUSTAINABLE FISHING AND AQUACULTURE 65
GENERAL LAW OF WILDLIFE 67
GENERAL LAW OF SUSTAINABLE FOREST DEVELOPMENT 68
REGULATION FOR THE USE AND ENJOYMENT OF THE TERRITORIAL SEA, NAVIGABLE WATERWAYS,
BEACHES, FEDERAL MARITIME-LAND ZONE AND LAND RECLAIMED FROM THE SEA 69

## STATE LAWS 71

## LAWS OF THE STATE OF QUINTANA ROO 71
POLITICAL CONSTITUTION OF THE STATE OF QUINTANA ROO 72
FOREST LAW OF THE STATE OF QUINTANA ROO 73

## LAWS OF THE STATE OF TAMAULIPAS 74
LAW ON STATE AND MUNICIPAL ASSETS OF TAMAULIPAS 75
WATER LAW OF THE STATE OF TAMAULIPAS 76

## LAWS OF THE STATE OF VERACRUZ 78
STATE ASSETS LAW OF THE STATE OF VERACRUZ DE IGNACIO DE LLAVE 79
WATER LAW OF THE STATE OF VERACRUZ DE IGNACIO DE LLAVE 81
CIVIL CODE OF THE STATE OF VERACRUZ DE IGNACIO DE LA LLAVE 82

# POLITICAL CONSTITUTION OF THE UNITED MEXICAN STATES

(Published in the Official Gazette of the Federal Government on February 5, 1917)

## Article 27.

Ownership of the lands and waters within the boundaries of the national territory is vested originally in the Nation, which has had, and has, the right to transmit title thereof to private persons, thereby constituting private property.

Private property shall not be expropriated except for reasons of public use and subject to payment of indemnity.

The Nation shall at all times have the right to impose on private property such limitations as the public interest may demand, as well as the right to regulate, for public benefit, the utilization of natural resources which are susceptible of appropriation, in order to conserve them and to ensure a more equitable distribution of public wealth, to achieve balanced development of the country and to contribute to the social advancement of rural and urban populations. With this end in view, necessary measures shall be taken to regulate human settlements and to establish adequate provisions, uses, land, water, and forestry reserves in order to carry out public works and to plan regulate the settlement, conservation, improvement, and growth of urban centers; to preserve and restore the ecological equilibrium; to divide up large landed estates; to arrange, in accordance with the regulations, the organization and collective exploitation of *ejidos* (communal farms) and communities; for the development of small rural landed holdings; to encourage agriculture, stockbreeding, forestry, and other economic activities in rural areas, and to prevent the destruction of natural resources, and to property from damage to the detriment of society…

In the Nation is vested the direct ownership of all natural resources of the continental shelf and the submarine shelf of the islands; of all minerals or substances, which in veins, ledges, masses or ore pockets, form deposits of a nature distinct from the components of the earth itself, such as the minerals from which industrial metals and metalloids are extracted; deposits of precious stones, rock-salt and the deposits of salt formed by sea water; products derived from the decomposition of rocks, when subterranean works are required for their extraction; mineral or organic deposits of materials susceptible of utilization as fertilizers; solid mineral fuels; petroleum and all solid, liquid, and gaseous hydrocarbons; and the space above the national territory to the extent and within the terms fixed by international law.

In the Nation is vested the ownership of the waters of the territorial seas, within the limits and terms fixed by international law; inland marine waters; those of lagoons and estuaries permanently or intermittently connected with the sea; those of natural, inland lakes which are directly connected with streams having a constant flow; those of rivers and their direct or indirect tributaries from the point in their source where the first permanent, intermittent, or torrential waters begin, to their mouth in the sea, or a lake, lagoon, or estuary forming a part of the public domain; those of constant or intermittent streams and their direct or indirect tributaries, whenever the bed of the stream, throughout the whole or a part of its length, serves as a boundary of the national territory or of two federal divisions, or if it flows from one federal division to another or crosses the boundary line of the Republic; those of lakes, lagoons, or estuaries whose basins, zones, or shores are crossed by the boundary lines of two or more divisions or by the boundary line of the Republic and neighboring country or when the shoreline serves as the boundary between two federal divisions or of the Republic and a neighboring country; those of springs that issue from beaches, maritime areas, the beds, basins, or shores of lakes, lagoons, or estuaries in the national domain; and waters extracted from mines and the channels, beds, or shores of interior lakes and streams in an area fixed by law. Underground waters may be brought to the surface by artificial works and utilized by the surface owner, but if the public interest so requires or use by others in affected, the Federal Executive may regulate its extraction and utilization, and even establish prohibited areas, the same as may be done with other waters in the public domain. Any other waters not included in the foregoing enumeration shall be considered an integral part of the property through which they flow or in which they are deposited, but if they are located in two or more properties, their utilization shall be deemed a matter of public use, and shall be subject to laws enacted by the States.

In those cases to which the two preceding paragraphs refer, ownership by the Nation is inalienable and imprescriptible, and the exploitation, use, or appropriation of the resources concerned, by private persons or by companies organized according to Mexican laws, may not be undertaken except through concessions granted by the Federal Executive, in accordance with rules and conditions established by law. The legal rules relating to the working or exploitation of the minerals and substances referred to in fourth paragraph shall govern the execution and proofs of what is carried out or should be carried out after they go into effect, independent of the date of granting the concessions, and their nonobservance will be grounds for cancellation thereof. The Federal Government has the power to establish national reserves and to abolish them. The declarations pertaining thereto shall be made by the Executive in those cases and conditions prescribed by law. In the case of petroleum, and solid, liquid, or gaseous hydrocarbons or radioactive minerals no concessions or contracts will be granted nor may those that have been granted continue, and the Nation shall carry out the exploitation of these products, in accordance with the provisions indicated in the respective regulatory law.  It is exclusively a function of the general Nation to conduct, transform, distribute, and supply electric power which is to be used for public service. No

3

concessions for this purpose will be granted to private persons and the Nation will make use of the property and natural resources, which are required for these ends.

In the Nation is also vested the use of nuclear fuels for the production of nuclear energy and the regulation of their use for other purposes. Nuclear energy can only be used for peaceful purposes.

The Nation shall exercise its sovereign rights and jurisdictions, as determined by Congress, in an exclusive economic zone located outside the territorial sea. This exclusive economic zone will extend 200 nautical miles, measured from the base line where the territorial sea is measured. In case this extension results in a superposition of exclusive economic zones on other states, such states shall agree on its necessary limits.

Legal capacity to acquire ownership of lands and waters of the Nation shall be governed by the following provisions:

I.    Only Mexicans by birth or naturalization and Mexican companies have the right to acquire ownership of lands, waters, and their appurtenances, or to obtain concessions for the exploitation of mines or of waters. The State may grant the same right to foreigners, provided they agree before the Ministry of Foreign Relations to considerer themselves as nationals in respect to such property, and bind themselves not to invoke the protection of their governments in matters relating thereto; under penalty, in case of noncompliance with this agreement, of forfeiture of the property acquired to the Nation. Under no circumstances may foreigners acquire direct ownership of lands of waters within a zone of one hundred kilometers along the frontiers and of fifty kilometers along the shores of the country.

The State, in accordance with its internal public interests and with principles of reciprocity, may in the discretion of the Secretary of Foreign Affairs authorize foreign states to acquire, at the permanent sites of the Federal Powers, private ownership of real property necessary for the direct services of their embassies or legations.

II.    Religious institutions formed under Article 130 and its regulatory law, may not acquire, hold, or manage more real property than actually needed to carry out their purpose, in accordance with the legal requirements and limitations establish by the regulations.

III.    Public or private charitable institutions for the rendering of assistance to the needy, for scientific research, the diffusion of knowledge, mutual aid to members, or for any other lawful purpose, may not acquire more real property than actually needed for their purpose and immediately and directly devoted thereto, and in accordance with the regulatory law.

4

IV.   Commercial stock companies may acquire rural lands, but only to the extent necessary to carry out their purpose.

Such corporations may not acquire lands used for agriculture, stockbreeding, or forestry in larger extensions than that equivalent to twenty five times the limits set by section XV of this Article. The regulatory law will determine the capital's structure and the minimum number of partners required for this kind of corporations so lands belonging to the corporation will not exceed the limits set for small landed holdings in relation to each partner. In that case, individual stocks of rural lands will be considered in a cumulative way.

Also, the law shall establish under what circumstances foreigners may invest in such corporations. The law will also establish the measures for registration and control that are needed to carry out the duties established in this section. …

V.   …

VI.   The States, the Federal District, and all Municipalities in the Republic shall have full legal capacity to acquire and hold all the real property needed to rent public services.

The federal and state laws, within their respective jurisdictions, shall determine in what cases the occupation of private property shall be considered to be of public utility; and in accordance with such laws, the administrative authorities shall issue the respective declaration. The amount fixed as compensation for the expropriated property shall be based on the value recorded in assessment or tax offices for tax purposes, whether this value had been declared by the owner or tacitly accepted by him by having paid taxes on that basis. The increased or decreased value of such private property due to improvements or depreciation which occurred after such assessment is the only portion of the value that shall be subject to the decision of experts and judicial proceedings. This same procedure shall be followed in the case of property whose value is not recorded in the tax offices.

VII.   The centers of population which, by law or in fact, possess a communal status shall have legal capacity to enjoy common possession of the lands, forests, and waters belonging to them or which have been or may be restored to them.

The law shall protect the integrity of lands of indigenous groups.

The law shall protect the land set aside for human settlements in order to observe and to strengthen community life of *ejidos* and communities and shall regulate the common use of lands, forests, and waters and contribute to the social advancement of its people.

The owners of *ejidos* and communal lands may adopt rules for the use of their productive resources, and the Law shall regulate their property rights and that of each parcel owner. Also, it shall establish the procedures through which the *ejidos* and communal land owners may get into partnerships between them, with the State, or third parties and transfer the use of their lands; the transfer of individual land rights of the *ejidatarios* (members of the *ejido*) to other members of the community; it shall also set the requirements and procedures on how the Assembly of *ejidatarios* will grant control of the farm to an *ejidatario*. Where there is a transfer of ownership of the farm, the right of first refusal, established by law, shall be observed.

In no event shall an *ejidatario* own more than 5% of the total land of the *ejidos* within the same population center. Property rights on lands of individual *ejidatarios* shall be subject to the limitations established in section XV.

…

The restitution of lands, forests, and waters to population centers shall be carried out as prescribed by the regulatory law….

VIII.   …

IX.   Divisions or allotments of land among the inhabitants of a given center of population which, although apparently legitimate are not so, due to a mistake or defect, may be annulled at the request of three fourths of the residents holding one fourth so divided, or one fourth of such residents holding three fourths of that lands.

X.   …

XI.   …

XII.   …

XIII.   …

XIV.   …

XV.   In the United Mexican States the formation of large landed estates is prohibited.

Small agricultural property is that which does not exceed one hundred hectares of first-class moist or irrigated land or its  equivalent in other classes of land.

6

To determine this equivalence one hectare of irrigated land shall be computed as two hectares of seasonal land; as four of good quality pasturage (agostadero), and as eight of forestry lands, *monte* (scrubland) or arid pasturage.

Also to be considered as small holdings are areas not exceeding one hundred fifty hectares of land used for cotton growing if irrigated from fluvial canals or by pumping; or three hundred, under cultivation, when used for growing bananas, sugar cane, coffee, henequen, rubber, coconuts, grapes, olives, quinine, vanilla, cacao, agave, nopal, or fruit trees.

Small holdings for stockraising are lands not exceeding the area necessary to maintain up to five hundred heads of cattle or their equivalent in smaller animals under provisions of law, in accordance with the forage capacity of the lands.

Whenever, due to irrigation or drainage works or any other works executed by the owners or occupants of a small holding, the quality of the land is improved, such holding shall not be subject to agrarian appropriation even if, by virtue of the improvements made, the maximums indicated in this section are exceeded, provided that the requirements fixed by law are met.

Whenever a small holding for stockraising is improved and used for agriculture, the area available for this purpose shall not exceed those limits established under paragraph two and three of this section related to the quality of the lands before the improvements.

…

XVI.    …

XVII.    The Federal Congress and the State Legislature, within their respective jurisdictions, shall enact laws to fix the maximum area of rural property, and to carry out subdivision of the excess lands, in accordance with the following bases:…

The excess over the fixed area shall be subdivided by the owner within a year from the day of the notice. Once the term has expired, if the area has not been transferred, it shall be sold through public auction. Under such circumstances and in accordance to the regulations, the right of first refusal shall be followed.

Local law shall establish guidelines on what is considered as part of the family patrimony, which cannot be transferred, seized, not taxed.

XVIII.    All contracts and concessions made by former Governments since the year 1876, which have resulted in the monopolization of lands, waters, and natural resources of the Nation, by a single person or company, are declared subject to revision, and the Executive of the Union

7

is empowered to declare them void whenever they involve serious prejudice to the public interest.

XIX.    Based on the Constitution, the State shall set guidelines for a speedy and honest agrarian trial, with the purpose of guaranteeing judicial security to property rights of *ejidos*, common lands, and small properties and to support legal counsel for farm workers.

All pending and arising issues between two or more population centers, associated with the limits of ejidos or communal lands, as well as their ownership, are matters of federal jurisdiction, whatever their nature is. The law shall establish special independent tribunals with jurisdiction to hear cases related to agrarian justice matters, handled by judges nominated by the President and confirmed by the Senate or, in case the Senate is in recess, by the Permanent Commission.

The law will establish an agency to administer agrarian justice, and

XX.    The State shall contribute to the total development of rural areas to create jobs and to guarantee the well-being of farm workers and their participation in the development of the nation and shall promote the best use the land for agriculture and forestry purposes with public works, credits, training services, and technical assistance. Also, it shall issue regulations to plan and organize agriculture, its industrialization, and commerce, considering them as a matter of public interest.

…

## Article 42.

The national territory comprises:

**I.**      The territory of the integral parts of the Federation;

**II.**     The territory of the islands, including reefs and cays in adjacent seas;

**III.**    The territory of the Guadalupe and Revillagigedo islands located in the Pacific Ocean;

**IV.**     The continental shelf and the submarine shelf of the islands, cays and reefs;

**V.**      The territorial seas' waters in accordance with the scope and terms set forth by International Law and inland maritime waters;

**VI.**     The space located over the national territory, in accordance with the scope and modalities set forth by International Law.

## Article 48.

The islands, keys and reefs of the adjacent seas that pertain to national territory, the continental shelf, the submarine shelf of the islands, keys and reefs; the territorial seas, inland marine waters, and the space situated above the national territory, shall be direct dependencies of the Federal Government, with the exception of those islands over which to date the states have exercised jurisdiction.

## Article 73.

Congress shall have power:

I.       …

X.       To legislate throughout the Republic on hydrocarbons, mining, chemical substances, explosives, pyrotechnics, the motion picture industry, commerce, games of chance and lotteries, financial intermediation and services, electric and nuclear power and to enact labor laws regulating Article 123 of this Constitution;

…

XIII.    To enact laws according to which sea and land dams shall be declared good or bad, and to issue statutes relating to maritime law of peace and war.

…

XXIX-G.      To enact laws establishing concurrent jurisdictions of the Federal Government and of the State and Municipal governments, in the scope of their respective jurisdictions, in environmental protection and ecological balance preservation and restoration matters.

…

XXIX-L.      To enact laws establishing concurrent jurisdictions of the Federal Government and of the State and Municipal governments, in the scope of their respective jurisdictions, in fishing and aquaculture matters, as well as the participation of the social and private sectors, and…

### Article 133.

This Constitution, the laws from the Congress of the Union emanating thereof and all Treaties in agreement therewith, executed and to be executed by the President of the Republic, with the Senate's approval, shall be the Federal Constitution for the whole Union.  The judges from each State shall be bound by said Constitution, laws and treaties, notwithstanding conflicting provisions that might exist in State Constitutions or laws.

# JURISPRUDENCE (JUDICIAL PRECEDENTS)

## Related to the concept of a Nation

Fifth Era

Record: 332930

Instance: Second Chamber

Isolated Thesis

Source: Federal Judicial Weekly

LII

Matter (s): Common

Thesis:

Page:   72

**NATION, REPRESENTATION OF THE.**

The nation cannot be mistaken for a state, and consequently, State officials are not the ones who represent it because it is unique and represented by its federal agencies, pursuant to Article 41 of the Federal Constitution.

Volume LII, page 2895. Alphabetical Index. Amparo 453/37. Prado Pedro Vicente. June 4, 1937. Majority of four votes. Dissident: Agustin Aguirre Garza. The publication does not mention the name of the Author of Opinion. Contribution: Alonso Aznar Mendoza.

Volume LII, page 72. Administrative Amparo in review 6656/37. Ahumada Antonio. April 5, 1937. Majority of four votes. Relater and dissident: Agustin Aguirre Garza. Contribution: José M. Truchuelo.

# ORGANIC LAW OF THE FEDERAL PUBLIC ADMINISTRATION

## Published in the Official Gazette of the Federal Government on December 29, 1976

### Article 26.

For attending to matters of administrative nature, the Executive Branch of the Union shall have the following agencies:

Department of the Interior

Department of Foreign Affairs

Department of National Defense

Department of the Navy

Department of Public Safety

Department of Internal Revenue and Public Credit

Department of Social Development

Department of the Environment and Natural Resources

Department of Energy

Department of Economy

Department of Agriculture, Stockbreeding, Rural Development, Fishing and Food

Department of Communication and Transportation

Department of Public Functions

Department of Public Education

Department of Health

Department of Labor and Social Welfare

Department of Agricultural Reform

Department of Tourism

Legal Counsel of the Federal Executive

## Article 32 Bis.

The Department of the Environment and Natural Resources shall be in charge of the following matters:

I.      Promoting the protection, restoration and conservation of ecosystems and natural resources and environmental goods and services, with the purpose of favoring their sustainable utilization and development;

II.     Formulating and conducting the national policy on natural resources matters, as long as they are not expressly entrusted to another agency; as well as matters of ecology, environmental decontamination, water, environmental regulation for urban development and fishing activities, with the participation that corresponds to other agencies and entities;

III.    Managing and regulating the use and promoting sustainable utilization of natural resources which correspond to the Federal Government, with the exception of petroleum and all hydrocarbons in liquid, solid and gas forms, as well as radioactive minerals;

IV.     Establishing, with participation which corresponds to other state and municipal agencies and authorities, official Mexican regulations on the preservation and restoration of environmental quality; on natural ecosystems; on sustainable utilization of natural resources and of wild flora and fauna, land and aquatic; on residual water discharge, and mining matters; and on hazardous materials and hazardous solid waste;

V.      Supervising and promoting, in coordination with federal, state and municipal authorities, compliance with Mexican laws, official regulations and programs related to natural resources, environment, waters, forests, wild flora and fauna, land and aquatic, and fishing, and other matters within the Department's authority, as well as, when applicable, assessing punishment accordingly;

VI.     Proposing to the Federal Executive establishment of protected natural areas, and promote for their management and supervision, participation of federal or local authorities, and of universities, research centers and individuals;

VII.    Organizing and managing protected natural areas, and supervising conservation, protection and supervision efforts of said areas when their management falls upon state and municipal governments or upon individuals or entities;

VIII.   Exercising the Nation's possession and ownership of beaches, federal maritime zone and land reclaimed from the sea;

IX.    Participating in international forums regarding matters within the Department's authority, with the involvement which corresponds to the Department of Foreign Affairs, and proposing to the latter execution of international treaties and agreements on such matters;

X.    Promoting ecological regulation of the national territory, in coordination with federal, state and municipal authorities, and participation of private parties;

XI.    Evaluating and ruling on environmental impact reports for developing projects presented to the public, social and private sectors; ruling about environmental risk studies, as well as about accident prevention programs with an ecological impact;

XII.    Creating, promoting and disseminate technologies and forms of use required for sustainable utilization of ecosystems and about environmental quality of production processes, services and transportation;

XIII.    Promoting and carrying out ecological restoration programs, with cooperation from federal, state and municipal authorities, in coordination, when applicable, with the Department of Agriculture, Stockbreeding, Rural Development, Fishing and Food and other agencies and entities of the federal government;

XIV.    Evaluating the quality of the environment and establishing and promoting the environmental information system, which shall include atmospheric, ground and bodies of water monitoring systems of federal jurisdiction, and natural resources and wild fauna population inventories, with cooperation from federal, state and municipal authorities, research and higher education institutions, and the corresponding agencies and entities;

XV.    Developing and promoting methodologies and procedures of economical appraisal of natural assets and of the environmental goods and services rendered by them, and cooperating with agencies and entities in order to develop a comprehensive environmental and economical accounting system;

XVI.    Conducting national policies on weather changes and protection of the ozone layer;

XVII.    Promoting social participation and of the scientific community in formulating, applying and enforcing the environmental policy, and arranging actions and investments with the social and private sectors for protection and restoration of the environment;

XVIII.    Keeping records and looking after conservation of the country's historic and notable trees;

XIX.    Proposing about, and when applicable, ruling on establishing and removing forest, hunting and fishing bans, in accordance with applicable legislation, and establishing the hunting calendar and the songbird and ornamental bird calendar;

15

XX.    Imposing, with the participation which corresponds to other agencies and entities, restrictions establishing applicable provisions on traffic or transit through the national territory of wild flora and fauna coming from or destined abroad, and promoting with the Department of Economy the establishment of regulatory or restriction measures on their import or export, when required for their conservation and utilization;

XXI.    Leading weather, climatic, hydrologic and geohydrologic studies, works and services, as well as the national weather system, and participating in international conventions on the subject;

XXII.    Coordinating, arranging and carrying out formation, training and updating projects to improve the capacity of environmental procedures and sustainable use of natural resources; encouraging higher education institutions and research centers to carry out training for specialists, provide environmental knowledge and promote scientific and technological research on the subject; encouraging cultural-promoting organizations and the mass media to contribute to the formation of attitudes and values in environmental protection and the protection of our natural assets; and in coordination with the Department of Public Education, strengthening environmental contents of study plans and programs and teaching tools in the different levels and forms of education;

XXIII.    Organizing, leading and regulating hydrologic works on basins, streams and riverbeds of national waters, both above ground and underground, in accordance with the law on the matter;

XXIV.    Managing, controlling and regulating utilization of nationally owned hydraulic basins, vessels, springs and waters, and of the corresponding federal zones, excluding those expressly attributed to another agency; establishing and supervising enforcement of the specific conditions which must satisfy discharges of residual waters, when they are of federal jurisdiction; authorizing, when applicable, discharging residual waters into the sea, in coordination with the Department of the Navy, when coming from mobile sources or fixed rigs; in nationally owned basins, streams and other water deposits; and promoting and, when applicable, executing and operating the infrastructure and services necessary for improving the quality of water in basins;

XXV.    Studying, projecting, building and preserving, with the corresponding participation of the Department of Agriculture, Stockbreeding, Rural Development, Fishing and Food, irrigation, desiccation, drainage, defense and land improvement works and those of small irrigation, in accordance with the programs created and to be carried out by the Federal Government, whether by itself or in cooperation with state and municipal authorities or private entities;

XXVI.    Regulating and supervising the preservation of streams, lakes and lagoons of federal jurisdiction, in protecting feeding basins and torrential correction works;

XXVII. Managing the hydrologic system of the Valley of Mexico;

XXVIII. Controlling rivers and other streams and carrying out defense works against flooding;

XXIX. Organizing and managing exploitation of national irrigation systems, with the participation of users, as provided by the laws, in coordination, when applicable, with the Department of Agriculture, Stockbreeding, Rural Development, Fishing and Food;

XXX.   Carrying out hydraulic works deriving from international treaties;

XXXI.  Intervening, when applicable, in supplying water to population centers and industries; promoting and providing technical support to the development of potable water, drainage, sewage and residual water treatment systems carried out by local authorities, as well as programming, projecting, building, managing, operating and preserving works and services related to the capture, potabilization, treatment of residual waters, transportation and supply of waters of federal jurisdiction, either by itself, or through granting an appointment or license as required, or pursuant to the agreement being executed;

XXXII. (Repealed).

XXXIII. (Repealed).

XXXIV. (Repealed).

XXXV. Participating with the Department of Internal Revenue and Public Credit, in determining the general criteria for establishing fiscal and financial stimuli necessary for the sustainable utilization of natural resources and environmental protection;

XXXVI. (Repealed).

XXXVII. (Repealed).

XXXVIII. (Repealed).

XXXIX. Granting contracts, concessions, licenses, permits, authorizations, appointments, and recognizing rights, as applicable, in matters of waters, forests, ecology, exploitation of wild flora and fauna, and over beaches, federal maritime zone and land reclaimed from the sea;

XL.    Designing and operating, with the participation corresponding to other agencies and entities, the adoption of economic instruments for environmental protection, restoration and preservation, and

XLI.   All other matters expressly assigned to it by laws and regulations.

17

# INTERNAL REGULATION OF THE DEPARTMENT OF THE ENVIRONMENT AND NATURAL RESOURCES

Published in the Third Section of the Official Gazette of the Federal Government (D.O.F.) on Tuesday, January 21, 2003

**ARTICLE 1**.

The Department of the Environment and Natural Resources, hereinafter the Department, as an agency of the Federal Executive Branch, is charged with exercising the powers  granted to it by the Organic Law of the Federal Public Administration and other laws, as well as regulations, decrees, rulings and orders from the President of the United Mexican States.

**ARTICLE 2**.

The Department shall have the following public servants and administrative units for studying, planning and dealing with its affairs:

I. Secretary;

II. Undersecretary of Environmental Planning and Policy;

III. Undersecretary of Environmental Development and Regulation;

IV. Undersecretary of Environmental Protection Administration;

V. Chief Clerk;

VI. Social Participation and Transparency Coordinating Unit;

VII. International Affairs Coordinating Unit;

*AMENDED, D.O.F. NOVEMBER 29, 2006*

VIII. Legal Affairs Coordinating Unit;

IX. Media General Coordination;

*AMENDED, D.O.F. NOVEMBER 29, 2006*

X. Delegations Coordination Unit;

XI. Sustainable Development Education and Training Center;

XII. Directorate General of Planning and Evaluation;

XIII. Directorate General of Environmental Statistics and Information;

XIV. Directorate General of Environmental Policy and Regional and Sectoral Integration;

XV. Directorate General of the Primary Sector and Renewable Natural Resources;

XVI. Directorate General of the Industry;

XVII. Directorate General of Environmental, Urban and Touristic Development;

XVIII. Directorate General of Energy and Extractive Activities;

XIX. Directorate General of Environmental Impact and Risk;

XX Directorate General of Integral Administration of Dangerous Materials and Activities;

XXI. Directorate General of Air Quality and Emission Recording and Pollution Transfer Administration;

XXII. Directorate General of Federal Maritime Zone and Coastal Environments;

XXIII. Directorate General of Wildlife;

XXIV. Directorate General of Forest and Land Administration;

XXV. Directorate General of Human Development and Organization;

XXVI. Directorate General of Programming and Budgeting;

XXVII. Directorate General of Material Resources, Real Property and Services;

XXVIII. Directorate General of Information Technology and Telecommunications;

XXIX. Federal Delegations;

XXX. REPEALED, D.O.F. NOVEMBER 29, 2006

XXXI. Decentralized Agencies:

a. National Water Commission;

b. National Ecology Institute;

c. Federal Attorney General's Office for Environmental Protection, and

d. National Protected Natural Areas Commission.

19

## ARTICLE 118.

The Federal Attorney General's Office for Environmental Protection shall be in the charge of an Attorney General and shall have the following powers:

…

XVIII.  To initiate, within the scope of its powers, the appropriate actions, before the competent court, when being aware of acts, events or omissions constituting a violation of the administrative or criminal legislation;

AMENDED, D.O.F. NOVEMBER 29, 2006

XLVIII. To comply with the actions derived from matters of international affairs related to the authority of the Attorney General's Office, in coordination with the corresponding administrative unit of the Department, and

XLIX.  All other powers granted by applicable legal provisions in order to fulfill its attributions, as well as those deriving from instructions from the Secretary of the Field.

The above powers shall be exercised through this Office's administrative units, without prejudice to a direct exercise by its Attorney General.

# GENERAL LAW OF ECOLOGICAL BALANCE AND ENVIRONMENTAL PROTECTION

(Published in the Official Gazette of the Federal Government (D.O.F.) on January 28, 1988)

## ARTICLE 3.

For effects of this Law, it shall be understood as:

I.  Environment: The collection of natural and artificial elements or elements induced by men which makes the existence and development possible for human beings and all other living organisms interacting in a particular space and time;

…

III.  Sustainable utilization: Utilization of natural resources in a manner respecting the functional integrity and load capacity of ecosystems of which said resources are a part, for indefinite periods of time;

IV.  Biodiversity: Variability of living organisms of any source, including, among others, land, marine and other aquatic ecosystems and the ecological complexes of which they are a part; it includes diversity within each species, among species and of ecosystems;

VI.  Pollution: The presence of one or more pollutants or of any combination thereof in the environment which causes an ecological unbalance;

…

VIII.  Environmental Contingency: Situation of risk, deriving from human activities or natural phenomena, which could endanger the integrity of one or various ecosystems;

…

XIV.  Ecological balance: The interdependent relationship among the elements forming the environment which makes the existence, transformation and development possible for men and other living beings;

…

XVI.  Ecological emergency: Situation deriving from human activities or natural phenomena which when severely affecting its elements, endangers one or various ecosystems;

XVII.  Emission: Releasing into the environment all substances, in any of their physical states, or any type of energy, coming from a source.

XVIII.   Wild Fauna: The animal species which survive subject to the processes of natural selection and which develop freely, including their minor population which are under the control of men, as well as domestic animals which due to being abandoned turn wild and for that reason are susceptible to capture and appropriation;

XIX.-   Wild Flora: Vegetable species, as well as mushrooms, which survive subject to the processes of natural selection and which develop freely, including populations or specimens of these species which are under the control of men;

XX.   Environmental impact: Modification of the environment caused by action of men or of nature;

…

XXIV.   Ecological ordinance: The instrument of environmental policy which purpose is to regulate or encourage the use of the ground and productive activities, with the intention of achieving the protection and preservation of the environment and the sustainable utilization of natural resources, from the analysis of deterioration tendencies and utilization potentials thereof;

XXV.   Preservation: The collection of policies and measures to maintain the conditions which foster the evolution and continuity of natural ecosystems and habitats, as well as to preserve viable populations of species in their natural environments and biodiversity components outside their natural habitat;

XXVI.   Prevention: The collection of advance provisions and measures to avoid deterioration of the environment;

XXVII.   Protection: The collection of policies and measures to improve the environment and control its deterioration;

…

XXX.   Natural resource: The natural element susceptible to be utilized in benefit of men;

…

XXXII.   Residue: Any material produced in extraction, benefit, transformation, production, consumption, utilization, control or treatment processes which quality does not allow to be used again in the process which produced it;

XXXIII.   Hazardous residues: All those residues, in any physical state, which due to their corrosive, reactive, explosive, toxic, inflammable or biohazardous characteristics, represent a danger for the ecological balance or the environment;

XXXIV.   Restoration: Collection of activities aimed at the recovery and reestablishment of condition which foster the evolution and continuity of natural processes;

XXXV.   Department: The Department the Environment and Natural Resources.

…

## ARTICLE 4.

The Federal Government, the States, the Federal District and the Municipalities shall exercise their powers in matters of ecological balance preservation and restoration and environmental protection, pursuant to the distribution of authority provided for in this Law and in other laws.

The distribution of authority in matters of the regulation of sustainable use, the protection and preservation of forest resources and soil, shall be determined by the General Law of Sustainable Forest Development.

*Added paragraph DOF 25-FEB-2003*

*Amended Article DOF 13-DEC-1996*

## ARTICLE 5.

The Federal Government is empowered with:

III.  Attending to matters affecting the ecological balance in the national territory or in the areas subject to the nation's sovereignty and jurisdiction, originating in the territory or areas subject to other States' sovereignty and jurisdiction, or in areas beyond the jurisdiction of any State;

IV.  Attending to matters which, having originated in the national territory or the areas subject to the nation's sovereignty and jurisdiction might affect the ecological balance of the territory or of areas subject to other States' sovereignty and jurisdiction, or areas beyond the jurisdiction of any State;

V.  Enacting official Mexican laws and their enforcement in matters provided for by this Law;

VI.  Regulating and controlling activities considered highly dangerous, and activities in the generation, handling and final disposal of materials and waste that are hazardous to the environment or ecosystems, as well as for the preservation of natural resources, pursuant to this Law, other applicable laws and their regulatory provisions;

VII.  Participating in prevention and control of environmental emergencies and contingencies, in accordance with the civil protection policies and programs established for this effect;

VIII.    Establishing, regulating, managing and supervision of protected natural areas of federal jurisdiction;

IX.    Creating, applying and assessing general land ecological regulatory programs and marine ecological regulatory programs referred to by Article 19 BIS of this Law;

X.    …

XI.    Regulating sustainable utilization, protection and preservation of national waters, biodiversity, fauna and other natural resources within its authority.

*Amended section DOF 25-FEB-2003*

XX. Attending to matters affecting the ecological balance of two or more states;

*Amended section DOF 28-JAN-2011*

XXI. …

XXII. All others attributed to the Federal Government by this Law or other legal provisions.

***Relocated section DOF 28-JAN-2011***

***Amended article DOF 13-DEC-1996***

## ARTICLE 7.

In accordance with the terms of this Law and local laws on the matter, in the States are vested the following powers:

…

VIII.    Regulating sustainable utilization and pollution prevention and control of waters of state jurisdiction; as well as national waters assigned to them;

…

X.    Preventing and controlling the pollution caused by substances not reserved to the Federal Government, which constitute deposits of a similar nature as land components, such as rocks or decomposition products which can only be utilized for the manufacture of materials for the construction or ornament of works;

…

24

XVI.    Evaluating the environmental impact of the works or activities not expressly reserved to the Federal Government, by this Law and, when applicable, issuing the corresponding authorizations, in accordance with the terms of Article 35 BIS 2 of this Law;

XVII.   Carrying out the functions transferred to them by the Federal Government in matters of ecological balance preservation and environmental protection, pursuant to the terms in Article 11 of this law;

…

XX.     Attending to matters affecting the ecological balance of two or more States in coordination with the Federal Government when deemed appropriate by the respective States;

*Amended section DOF 28-JAN-2011*

…

XXII.   Attending to all other affairs in matters of ecological balance preservation and environmental protection granted to them by this Law or other ordinances in accordance with the former and which are not expressly granted to the Federal Government.

*Relocated section DOF 28-JAN-2011*

*Amended article DOF 13-DEC-1996*

## ARTICLE 202.

The Federal Attorney General's Office for Environmental Protection, in the scope of its powers, is empowered to initiate actions with merits, with the competent authorities, when being aware of acts, events or omissions constituting a violation to the administrative or criminal legislation.

When acts, events or omissions are made in violation of the rights and interests of a community, the Federal Attorney General's Office for Environmental Protection, as well as any other authorized party referred to by Article 585 of the Federal Code of Civil Procedure, may file a class action in accordance with the terms of Book Five of said Code.

The above shall also be applicable with respect to acts, events or omissions violating the states' environmental legislation.

*Added article DOF 13-DEC-1996.*

*Amended DOF 05-JUL-2007, 30-AUG-2011*

# GENERAL LAW ON NATIONAL ASSETS

Published in the Official Gazette of the Federal Government on May 20, 2004

## ARTICLE 1.

This Law is of the public order and general interest and its purpose is to establish:

I.      The assets constituting the Nation's patrimony;

II.     The public domain regime of the Federal Government's assets and of the federal decentralized agencies' real property;

## ARTICLE 2.

For effects of this Law, it shall be understood as:

…

III.    Entities: parastatal entities which are establish as such by the Organic Law of the Federal Public Administration;

IV.     Federal Government: the order of government which exercises its powers in matters of national assets pursuant to the terms of this Law through the Legislative, Executive or Judicial powers;

…

IX.     Department: The Department of Public Functions.

## ARTICLE 3.

National assets are:

I.      Those indicated in Articles 27, Paragraphs four, five and eight; 42, Section IV, and 132 of the Political Constitution of the United Mexican States;

II.     Assets of common use referred to by Article 7 of this Law;

III.    Personal and real property of the Federal Government;

IV.     Personal and real property owned by the States;

V.     Personal and real property owned by the institutions of federal character with legal capacity and their own patrimony to whom the Political Constitution of the United Mexican States grants autonomy, and

VI.     Other assets considered by other laws as national assets.

## ARTICLE 6.

The following are subject to the Federal Government's public domain regime:

I.     The assets mentioned in Articles 27, paragraphs four, five and eight; 42, Section IV, and 132 of the Political Constitution of the United Mexican States;

II.     Assets of common use referred to by Article 7 of this Law;

III.     Insular shelves pursuant to the Federal Law of the Sea and, when applicable, to international treaties and agreements entered into by Mexico;

IV.     The seabed and subsoil of the territorial sea and of the internal marine waters;

IX.     Land naturally or artificially reclaimed from the sea, rivers, streams, lakes, lagoons or estuaries of national property;

. . .

XXI.     All other assets considered to be of public domain or as inalienable and imprescriptible by other special laws regulating national assets.

## ARTICLE 7.

The following are assets of common use:

I.     The airspace located over national territory, with the extension and limitations set forth by international law;

II.     Internal marine waters, pursuant to the Federal Law of the Sea;

III.     The territorial sea in the width established by the Federal Law of the Sea;

IV.     Maritime beaches, which are understood as the parts of the land which by virtue of the tide are covered and uncovered by the water, from the boundaries of the lowest annual ebb to the boundaries of the highest annual flood;

V.      The federal maritime zone;

VI.     Ports, bays, roadsteads and coves;

VII.    Dikes, piers, breakwaters, esplanades and other works of ports, when they are of public use;

VIII.   Stream beds and lake, lagoon and estuary vessels of owned by the national;

IX.     Banks and federal zones of streams;

X.      Dams, dikes and their basins, channels, levees and ditches built for irrigation, navigation and other uses of public benefit, with their protection zones and easements, or banks in the scope set forth in each case by the authorized agency on the matter, in accordance with the terms of applicable legal provisions;

XI.     Roads, highways, bridges and railroads constituting general means of communication, with their ancillary services and other integral parts set forth by the federal law on the matter;

XII.    Real property considered archeological monuments in accordance with the law on the matter;

XIII.   Public squares, walkways and parks which construction or conservation is in the charge of the Federal Government and constructions made by the Federal Government in public places as ornaments or for the convenience of visitors, and

XIV.    All other assets considered of common use by other laws regulating national assets.


## ARTICLE 9.

Assets subject to the public domain regime of the Federal Government shall be exclusively under the jurisdiction of the Federal Powers, in accordance with the terms provided for by this Law, except for real property which the Federal Government acquired after May 1st, 1917 and which is located in the territory of a State, in which case consent from the respective local legislature shall be required.

## ARTICLE 10.

Only federal courts shall have jurisdiction to hear civil, commercial, criminal or administrative cases, as well as non-contentious legal proceedings related to assets subject to the Federal Government's public domain regime, even when the disputes deal with rights of use thereon.

## ARTICLE 13.

The assets subject to the Federal Government's public domain regime are inalienable, imprescriptible and unseizable and shall not be subject to any recovery or temporary or permanent possession actions, or any other by third parties.

## ARTICLE 119.

Both the continental crust and the islands comprising the national territory, the federal maritime-land zone shall be established:

I. When the coast has beaches, the federal maritime-land zone shall be formed by the band measuring twenty meters wide of firm land, passable and contiguous to said beaches or, when applicable, to riverbanks, from their mouth in the sea, to one hundred meters upstream;

II. The whole surface of cays and reefs located in the territorial sea shall constitute federal maritime-land zone;

III. In the case of lakes, lagoons, estuary or natural deposits of marine water which communicate directly or indirectly with the sea, the twenty-meter band of federal maritime-land zone shall be counted from the point where the highest annual reservoir level reaches or the high tide limit, pursuant to the terms set forth by the regulation, and

IV. In the case of artificial marinas or estuaries dedicated to aquaculture, the federal maritime-land zone's boundaries shall not be set, when a federal maritime-land zone is located between said marinas or estuaries.  The federal maritime-land zone corresponding to the marines not included in the foregoing case shall not exceed three meters wide and its boundaries shall be set by keeping it from interfering with the use or intended purpose of their facilities.

…

The Department of the Environment and Natural Resources shall be in charge of defining and delimiting the federal maritime-land zone.

# FEDERAL LAW OF THE SEA

Published in the Official Gazette of the Federal Government on January 8, 1986

## ARTICLE 1.

This Law is regulatory for Paragraphs Four, Five, Six and Eight of Article 27 of the Political Constitution of the United Mexican States, in relation to the Mexican marine zones.

## ARTICLE 2.

This Law is of federal jurisdiction, governs in the marine zones which form part of the national territory and, as applicable, beyond the latter in marine zones where the Nation exercises sovereignty rights, jurisdictions and other rights.  Their provisions are of public order, in the scope of the national democratic planning system.

## ARTICLE 3.

The Mexican marine zones are:

a) The Territorial Sea

b) Internal Marine Waters

c) The Contiguous Zone

d) The Exclusive Economic Zone

e) The Continental Shelf and Insular Shelves and

f) Any other as allowed by international law.

## ARTICLE 4.

In the zones listed in the prior Article, the Nation [Federal Government] shall exercise the powers, rights, jurisdictions and authorities established by this Law, in accordance with the Political Constitution of the United Mexican States and with international law.

## ARTICLE 6.

The Nation's sovereignty and its sovereignty rights, jurisdictions and authorities within the boundaries of the respective marine zones, pursuant to this Law, shall be exercised according to the terms of the Political Constitution of the United Mexican States, international law and applicable national legislation, regarding:

I.      Marine works, artificial islands, facilities and structures;

II.     The regime applicable to living marine resources, even their conservation and utilization;

III.    The regime applicable to the non-living marine resources, even their conservation and utilization;

IV.     Economic exploitation of the sea, even utilization of minerals dissolved in its waters, production of electric or thermal energy derived from them, from the currents and from the wind, solar energy capture in the sea, development of the coastal zone, mariculture and establishment of fishing communities;

V.      The protection and preservation of the marine environment, even preventing its pollution; and

VI.     Performance of marine scientific research activities.

## ARTICLE 7.

The Federal Executive Branch is in charge of the application of this Law, through the different agencies of the Federal Government which, in accordance with the latter's Organic Law and other legal provisions in effect, are competent national authorities according to the powers vested in each of them.

## ARTICLE 15.

The Nation [Federal Government] has exclusive jurisdiction on artificial islands, facilities and structures in the Exclusive Economic Zone and in the Continental Shelf and in the Insular Shelves, including jurisdiction in matters of customs, fiscal, sanitary, safety and immigration regulations.

## ARTICLE 16.

The Nation [Federal Government] has the exclusive right on the Mexican marine zones to build, as well as to authorize and regulate construction, operation and utilization of artificial islands, facilities and structures, in accordance with this Law, the General Law of National Assets, the Public Works Law and other applicable provisions in effect.

## ARTICLE 20.

Any activity involving the exploitation, use and economic use of the Mexican marine zones, other than those provided in the two preceding Articles of this Title, are governed by the regulatory provisions of the fourth, fifth and sixth paragraphs of Article 27 of the Political Constitution of the United Mexican States, as well as by this Law and other applicable laws and regulations.

## ARTICLE 21.

In exercise of the powers, rights, jurisdiction and authorities of the Nation within Mexican marine zones, the Federal Law of Environmental Protection, the General Health Act, and their respective regulations, the Federal Waters Law and other applicable laws and regulations in force or that are adopted, including this Law, its regulations and the relevant standards of international law to prevent, reduce and control pollution of the marine environment, shall be applied.

## ARTICLE 23.

The Nation [Federal Government] shall exercise sovereignty in a band over the sea, denominated the territorial sea, adjacent to the national coasts, whether they are continental or island, as well as inland marine waters.

## ARTICLE 24.

The Nation's sovereignty extends to the airspace above the Territorial Sea, to the bed and to the subsoil of that Sea.

## ARTICLE 25.

The boundary of the Mexican territorial sea is 12 nautical miles (22,224 meters), measured in conformity with the provisions of this Law and its regulation.

## ARTICLE 26.

The boundaries of the Territorial Sea are measured from the baselines, whether normal or straight, or a combination thereof, determined in conformity with the terms of this Law's Regulations.

## ARTICLE 27.

The Territorial Sea's exterior boundary is the line which each of its points is at a distance of 12 nautical miles (22,224 meters) from the nearest point of the lines forming its internal boundary, determined in conformity with Article 26 of this Law and with the pertinent provisions of its Regulations.

## ARTICLE 42.

The Nation [Federal Government] has in a zone contiguous to its Territorial Sea, called the Contiguous Zone, authority  to take the necessary inspection measures with the purpose of:

I.      Preventing infractions to the applicable rules of this Law, of its Regulations and of the custom, fiscal, immigration or sanitary laws and regulations which could be committed in the territory, in the Mexican Internal Marine Waters or in the Territorial Sea; and

II.     Assess punishment to infractions to said applicable rules of this Law, of its Regulations and of those laws and regulations committed in the territory, in the Mexican Internal Marine Waters or in the Territorial Sea.

## ARTICLE 43.

The Mexican Contiguous Zone extends 24 nautical miles (44,448 meters), measured from the baselines from which, in conformity with Article 26 of this Law, and with the pertinent provisions of its Regulations, the Mexican Territorial Sea's width is measured.

## ARTICLE 44.

The Contiguous Zone's lower boundary coincides identically with the Territorial Sea's exterior boundary, the latter determined in conformity with Article 27 of this Law, and with the pertinent provisions of its Regulations and which appears in the charts officially recognized by the United Mexican States.

## ARTICLE 45.

The Mexican Contiguous Zone's exterior boundaries is the line which each of its points is at a distance of 24 nautical miles (44,448 meters) from the nearest point of the Territorial Sea's baselines, as determined in Article 26 of this Law.

## ARTICLE 46.

The Nation shall exercise in an Exclusive Economic Zone situated outside of and adjacent to the territorial sea:

I.      The rights of sovereignty for the purposes of exploration and exploitation, conservation and administration of the natural resources, living as well as non-living, renewable or not renewable, of the bed and of the subsoil of the sea and of the superjacent waters, and with respect to other activities with a view to the economic exploration and exploitation of the Zone, as well as the production of energy derived from the water, its currents and its winds;

II.     Jurisdiction, in relation to the pertinent provisions of this Law, of its Regulation and of international law with respect to:

        1. The establishment and utilization of artificial islands, facilities and structures;

        2. Marine scientific investigation; and

        3. The protection and preservation of marine environment; and

III.    Other rights and obligations set forth in this Law, its Regulation and international law.

## ARTICLE 50.

The Mexican Exclusive Economic Zone shall extend 200 nautical miles (370,400 meters) from the baselines from which, in conformity with Article 26 of this Law, the Territorial Sea's boundary is measured.

## ARTICLE 51.

The islands have an Exclusive Economic Zone, but not so the rocks unsuitable to maintain human habitation or its own economic life.

## ARTICLE 52.

The Exclusive Economic Zone's internal boundary coincides identically with the Territorial Sea's exterior boundary, determined in conformity with Article 26 of this Law, and with the pertinent provisions of its Regulations and which appears in the charts officially recognized by the United Mexican States.

## ARTICLE 55.

The Federal Executive Branch shall, subject to the pertinent provisions of this Law, of its Regulations and of international law, ensure the observance of the freedom of navigation and flyover, in the Mexican Exclusive Economic Zone by vessels from all States, whether with rivers or without a coast.

## ARTICLE 56.

The Federal Executive Branch shall dictate adequate administration and conservation measures so that the living resources are not threatened by excessive exploitation, shall determine the permissible capture of living resources in the Exclusive Economic Zone and, without prejudice to the foregoing, shall promote the optimal utilization of said resources. When the total permissible capture of a species is greater that the capacity to fish and hunt of domestic vessels, the Federal Executive Branch shall give access to foreign vessels to the permissible capture surplus in accordance with the national interest and under the conditions indicated by the Mexican fishing legislation.

## ARTICLE 57.

The Nation shall exercise sovereignty rights on the Continental Shelf and Insular Shelves for purposes of exploration and exploiting their natural resources.

## ARTICLE 62.

The Mexican Continental Shelf and Insular Shelves comprise the seabed and subsoil of the submarine areas extending beyond the Territorial Sea, and along the natural extension of the National Territory up to the exterior boundary of the Continental Margin, or up to a distance of 200 nautical miles measured from the baselines from which the Territorial Sea band is measured, in cases where the exterior boundary of the Continental Margin does not reach this distance, in accordance with provisions of international law. The foregoing definition includes the island, cays and reefs shelf which form part of the National Territory.

*Errata sheet to article for article DOF 09-JAN-1986*

# NATIONAL WATERS LAW

Published in the Official Gazette of the Federal Government on December 1, 1992

## ARTICLE 1.

This Law is regulatory of Article 27 of the Political Constitution of the United Mexican States in matters of national waters; is to be generally observed throughout the national territory, its provisions are of public order and social interest and its objective is to regulate exploitation, use or utilization of said waters, their distribution and control, as well as preservation of their quantity and quality in order to achieve a comprehensive sustainable development thereof.

## ARTICLE 2.

The provisions of this Law are applicable to all national waters, whether of the surface or underground.  These provisions are also applicable to national assets as indicated by this Law.

The provisions of this Law are applicable to waters of Mexican marine zones as to the conservation and quality control, without detriment to the jurisdiction or concession that might govern over them.

*Amended article DOF 29-APR-2004*

## ARTICLE 3.

For effects of this Law, it shall be understood as:

I.          "National Waters": Are those referred to in Paragraph Five of Article 27 of the Political Constitution of the United Mexican States;

…

V.          "Marine waters": Refers to the waters in marine zones;

…

IX.          "Inherent Public Assets": Those mentioned in Article 113 of this Law;

…

36

XII.      "National Water Commission": Decentralized Administrative Agency of the Department of the Environment and Natural Resources, with Public Law functions in matters of the procedures of national waters and its inherent public assets, with technical, executive, administrative, budgeting and procedural autonomy for achieving its objectives, undertaking its functions and issuing the authority acts which in accordance with this Law correspond both to it and to the authority agencies it refers to;

…

XXXI.    "The Commission": The National Water Commission;

XXXII.    "The Law": National Waters Law;

XXXIII.    "Attorney General's Office": The Federal Attorney General's Office for Environmental Protection;

XXXIV.    "The Department": The Department of the Environment and Natural Resources;

…

XXXVIII.  "Mexican Official Standards": Those issued by "the Department", pursuant to the terms of the Federal Law on Metrology and Standardization referring to the conservation, safety and quality in the exploitation, use, utilization and administration of the national waters and of the national assets referred to by Article 113 of this Law;

    …

XLVII.    "Bank or Federal Zone": The ten-meter wide bands contiguous to the course of the streams or to deposit basins of national property, measured horizontally from the normal pool elevation.  The width of the bank or federal zone shall be five meters for streams with a width no greater than five meters.  The normal pool elevation shall be calculated from the maximum ordinary river swell which shall be determined by "the Commission" or by the corresponding Basin Agency, according to their respective authority, in accordance with the terms of this Law.  On rivers, these bands shall be bound from 100 meters upstream, counting from their mouth in the sea.  For streams with a width no greater than five meters, the normal pool elevation shall be calculated from the maximum annual flows produced during ten consecutive years.  These bands shall be bound from one hundred upstream, measures from their mouth in the sea.  At the sources of any streams, it is considered as a defined streambed, the runoff concentrating toward a topographic depression and forming a gully or channel, as a result of the action of the water flowing on the terrain.  The magnitude of the incipient gully or stream shall be at least 2.0 meters wide by 0.75 meters deep;…

LXVI.    "Mexican Marine Zones": Those classified as such by the Federal Law of the Sea.

37

For effects of this Law, the definitions contained in Article 3 of the General Law of Ecological Balance and Environmental Protection which are not opposite to those set forth in this Article are applicable.  Additional terms which might be utilized in the regulations of this Law shall be defined in such legal instruments.

## ARTICLE 4.

The authority and administration in matters of national waters and their inherent public assets is in the charge of the Federal Executive, who shall exercise it directly or through "the Commission".

## ARTICLE 9.

"The Commission" is a decentralized administrative body of "the Department", which is regulated in accordance with the provisions of this Law and its regulations, of the Organic Law of the Federal Public Administration and of its Internal Regulations.

"The Commission's" purpose is to exercise the powers which correspond to the authority in water matters and constitute itself as the Superior Body of the Federal Government with technical, regulatory and consulting characteristics in matters of a comprehensive management of water resources, including administration, regulation, control and protection of the public domain of water.

In exercising their powers, "the Commission" shall be organized in two capacities:

a. National Level, y

b. Regional Hydrological – Administrative Level, through its Basin Agencies.

Its specific powers, functions and activities in operation, executive, administrative and legal matters, related to the Federal scope in matters of national waters and their administration, shall be carried out through the Basin Agencies, with the exceptions set forth in this Law.

"The Commission" in its National Level is empowered as follows: …

XVII.   To manage and guard national waters and the national assets referred to by Article 113 of this Law, and preserve and control their quality, in a national level; …

## ARTICLE 14 BIS 4.

For purposes of this Law and its regulations, "The Attorney General's Office" is empowered:

I.        To file complaints and assess punishments within its authority;

II.  Substantiate and resolve proceedings and administrative appeals within its authority, in accordance with the terms of this Law and its regulatory provisions;

III.  To assess technical corrective and safety measures within its authority in accordance with the terms of this Law and the General Law of Ecological Balance and Environmental Protection;

IV.  To promote reparation of ecological damage to ecosystems associated with water in accordance with this Law and other applicable legal provisions;

V.  To request from "the Commission" or the corresponding Basin Agency, in accordance to provisions in Article 9, Section IX of this Law, in accordance with their respective authority, cancelation of discharge permits, and

VI.  All others indicated by legal and regulatory provisions for complying with the purpose of this Law.


## ARTICLE 113.

The administration of the following national assets is in the charge of "the Commission":

I.  Beaches and federal zones, in the part that corresponds to streambeds in accordance with the terms of this Law;

II.  The land occupied by the basins of lakes, lagoons, estuaries or natural deposits which waters are of national property;

III.  Streambeds of national waters;

IV.  Riverbanks or federal zones contiguous to streambeds and basins or deposits of national property, in accordance to the terms of Article 3 of this Law;

V.  The land of the streambeds and basins of lakes, lagoons or estuaries of national property, uncovered by natural causes or by artificial works;

VI.  The islands that exist or are formed in the basins of lakes, lagoons, estuaries, dams and deposits or in streambeds of national property, except for those formed when a stream segregates land of private or communal property or of communal farms, and

VII.  Hydraulic infrastructure works that are financed by the federal government, such as dams, dikes, basins, channels, drains, levees, ditches, aqueducts, irrigation districts or units and others built for exploitation, use, utilization, flood control and management of national

39

waters, with the land by them occupied and with the protection zones, in the scope set forth in each case by "the Commission".

In cases of Sections IV, V and VII, the administration of assets, when appropriate, shall be carried out in coordination with the Federal Electricity Commission.

# JURISPRUDENCE RELATED TO NATIONAL WATERS
# (JUDICIAL PRECEDENTS)

Era: Seventh Era

Record: 232142

Instance: PLENARY

Thesis Type: Jurisprudence

Source: Official Gazette of the Federal Government

Location:  205-216 Part One

Matter(s): Constitutional, Administrative

Pg. 152

## UNDERGROUND WATERS.   ARE   PROPERTY   OF   THE   NATION. CONSTITUTIONALITY OF ARTICLES 1, 5, 7 AND 9 OF THE FEDERAL WATERS LAW.

It is inexact that Paragraph Five of Article 27 of the Federal constitution sets forth that underground waters are private property, for the contrary is deduced from the contents of the explanation of reasons for the amendment of said paragraph of December 26, 1944, which reads in its conducive portions: "… The powers vested in the public power by the Constitution, as the country's economic life grows, demand to establish new rules or limitations to private property, especially of natural elements which, according to the general principle stated by Article 27 of the Constitution, are originally property of the nation.  The purpose of this extension of powers is to facilitate utilization of natural riches … the utilization every time larger and more frequent of underground waters for supply to populated areas, cattle consumption, industrial uses or agriculture, demands for legal guidelines to be established in order to regulate and control their utilization … due to the above reasons, it is necessary to modify Article 27, Paragraph Five of the Constitution, giving underground waters a nature of national property including, in the same precept, the legal rules for improving conservation and development of the country's water resources".  The above indicates that Articles 1, 5, 7 and 9 of the Federal Waters Law are constitutional when they establish that underground waters are owned by the nation since it was not any other, but this the purpose of amending said constitutional precept.

PLENARY

Seventh Era, Part One:

Volume 151-156, pages 93 y 117. Amparo in review 3721/80. Industria IEM, sociedad anonima de capital variable. November 17, 1981. Unanimous with seven votes by Ministers: Lopez Aparicio, Franco Rodriguez, Cuevas Mantecon, Castellanos Tena, Rivera Silva, Lozano Ramirez, Rebolledo, Iñarritu, Palacios Vargas, Gutierrez de Velasco, Gonzalez Martinez, Salmoran de Tamayo, Sanchez Vargas, Calleja Garcia, Leon Orantes, Olivera Toro y President Tellez Cruces. Author of Opinion: Atanasio Gonzalez Martinez. Secretary: Pedro Esteban Penagos Lopez.

Volume 205-216, page 131. Amparo in review 793/77. Silicatos y Derivados, sociedad anonima. April 13, 1982. Unanimous with eighteen votes by Ministers: Lopez Aparicio, Franco Rodriguez, Cuevas Mantecon, Castellanos Tena, Rivera Silva, Langle Martinez, Lozano Ramirez, Pavon Vasconcelos, Iñarritu, Gutierrez de Velasco, Gonzalez Martinez, Salmoran de Tamayo, Sanchez Vargas, Del Rio Rodriguez, Calleja Garcia, Leon Orantes, Olivera Toro and President Rebolledo. Author of Opinion: Manuel Gutierrez de Velasco. Secretary: Pedro Esteban Penagos Lopez.

Volume 205-216, page 16. Amparo in review 3616/85. Novacryl, sociedad anonima and others. June 24, 1986. Unanimous with twenty votes by Ministers: Lopez Contreras, Cuevas Mantecon, Castellanos Tena, Azuela Güitron, Castañon Leon, Diaz Infante, Fernandez Doblado, Pavon Vasconcelos, Adato Green, Rodriguez Roldan, Martinez Delgado, Gutierrez de Velasco, Gonzalez Martinez, Villagordoa Lozano, Moreno Flores, Ortiz Santos, Schmill Ordoñez, Diaz Romero, Olivera Toro and President Del Rio Rodriguez. Author of Opinion: Carlos del Rio Rodriguez. Secretary: Ruben Pedrero Rodriguez.

Volume 205-216, page 16. Amparo in review 4050/83. Compañia Topo Chico, sociedad anonima. September 23, 1986. Unanimous with twenty votes by Ministers: De Silva Nava, Lopez Contreras, Cuevas Mantecon, Castellanos Tena, Azuela Güitron, Castañon Leon, Diaz Infante, Fernandez Doblado, Adato Green, Rodriguez Roldan, Martinez Delgado, Gutierrez de Velasco, Gonzalez Martinez, Villagordoa Lozano, Moreno Flores, Ortiz Santos, Schmill Ordoñez, Diaz Romero, Olivera Toro and President Del Rio Rodriguez. Author of Opinion: Carlos de Silva Nava. Secretary: Benjamin Soto Cardona.

Volume 205-216, page 16. Amparo in review 4082/83. Bebidas Mundiales, sociedad anonima. December 9, 1986. Unanimous with twenty-one votes by Ministers: De Silva Nava, Lopez Contreras, Cuevas Mantecon, Castellanos Tena, Azuela Güitron, Castañon Leon, Diaz Infante, Fernandez Doblado, Pavon Vasconcelos, Adato Green, Rodriguez Roldan, Martinez Delgado, Gutierrez de Velasco, Gonzalez Martinez, Villagordoa Lozano, Moreno Flores, Ortiz Santos, Schmill Ordoñez, Diaz Romero, Olivera Toro and President Del Rio Rodriguez. Author of Opinion: Ernesto Diaz Infante. Secretary: Jose Antonio Garcia Guillen.

Era: Seventh Era

Record: 232145

Instance: PLENARY

Thesis Type: Jurisprudence

Source: Official Gazette of the Federal Government

Location:  205-216 Part One

Matter(s): Constitutional, Administrative

Pg. 159


**RIGHTS FOR USE OR UTILIZATION OF UNDERGROUND WATERS. POWER OF THE CONGRESS OF THE UNION TO DECREE THEM.**

Because in accordance with Article 27, Paragraph Five of the Federal Constitution underground waters are owned by the nation if the Congress of the Union is empowered to lay taxes on the use or utilization thereof, for the contents of Article 73, Section XXXIX, Subsection 2 of the Constitution indicates that said Congress is empowered to law taxes on the use and exploitation of natural resources, among which, of course, underground waters.


PLENARY

Seventh Era, Part One:


Volume 151-156, page 93. Amparo in review 3721/80. Industrias IEM, S.A. de C.V. and another. November 17, 1981. Unanimous with seventeen votes. Author of Opinion: Atanasio Gonzalez Martinez. Secretary: Pedro Esteban Penagos Lopez.


Volume 157-162, page 207. Amparo in review 793/77. Silicatos y Derivados, S.A. April 13, 1982. Unanimous with eighteen votes. Author of Opinion: Manuel Gutierrez de Velasco. Secretary: Pedro Esteban Penagos Lopez.


Volume 205-216, page 16. Amparo in review 3616/85. Novacryl, S.A. and others. June 24, 1986. Unanimous with twenty votes. Author of Opinion: Carlos del Rio Rodriguez. Secretary: Pedro Esteban Penagos Lopez.

43

Volume 205-216, page 16. Amparo in review 4050/83. Compañia Topo Chico, S.A. September 23, 1986. Unanimous with twenty votes. Author of Opinion: Carlos de Silva Nava. Secretary: Pedro Esteban Penagos Lopez.

Volume 205-216, page 16. Amparo in review 4082/83. Bebidas Mundiales, S.A. December 9, 1986. Unanimous with twenty-one votes. Author of Opinion: Ernesto Diaz Infante. Secretary: Jose Antonio Garcia Guillen.

Genealogy

Report 1987, Part One, Plenary, thesis 2, page 893. Appendix 1917-1988, Part One, Plenary, thesis 42, page 94. Appendix 1917-1995, Volume I, Part One, thesis 103, page 112.

Era: Fifth Era

Record: 285270

Instance: PLENARY

Thesis type: Isolated Thesis

Source: Official Gazette of the Federal Government

Location:  XIV

Matter(s): Administrative

**FEDERAL WATERS.**

Enforcement and control of the waters of federal jurisdiction belong, exclusively, to the Executive of the Union, and ownership of said waters is inalienable and imprescriptible.

PLENARY

Administrative Amparo in review. Gonzalez Ventura. May 13, 1924. Unanimous with nine votes. The publication does not mention the name of the Author of Opinion.

Genealogy

Appendix 1917-1985, Part Nine, third thesis related to jurisprudence 98, page 157.

Era: Quinta Era

Record: 328474

Instance: SECOND CHAMBER

Thesis Type: Isolated thesis

Source: Official Gazette of the Federal Government

Location:  LXVII

Matter(s): Administrative

Pg. 2539


**NATIONAL WATERS, REGULATION OF.**

The Office of Drinking Water in a State, may not, by itself, make use of waters which utilization corresponds to certain residents, to be given in whole or in part, to others, for according to Articles 10, Section II, and 11 of the Law of Waters Owned by the Nation, regulation and regularization of national waters, are in the charge of the Executive Branch, through the Department of Agriculture and Development.


SECOND CHAMBER Administrative Amparo in review 3006/40. Islas Antonio C. and co-complainants. March 10, 1941. Unanimous with four votes. Relater: Gabino Fraga.

Era: Seventh Era

Record: 233216

Instance: PLENARY

Thesis Type: Isolated thesis

Source: Official Gazette of the Federal Government

Location:  56 Part One

Matter(s): Administrative

Pg. 28

**TRANSCENDENTAL IMPORTANCE FOR THE NATIONAL INTEREST. CASE LAYING OUT AN ISSUE RELATED OWNERSHIP OF LAND BY THE FEDERAL GOVERNMENT.**

When laying for discussion rights which exclusively belong to the Federal Government, such as those stemming from Article 27 of the Federal Constitution, which vest in the nation original ownership of the land and waters contained within the boundaries of the national territory and the right to transfer ownership of said land and waters to private parties in order to constitute private property, as in the case in which recovery is demanded from the Federal Government of a plot of land located in an area known by the name of "El Chamizal", the issue is considered to be of transcendental importance for the nation's interests.  In effect, it is a sovereign right directly stemming from the Constitution, exclusive to the nation, to own land and waters, and to constitute private property, in a way that if a private party intends to claim recovery a piece of real property from the State, that is, argue that the asset possessed by the Federal Government does not belong to it, an argument is actually being made on the Federal Government's authority to make use of these lands, pursuant to its constitutional power and, in consequence, the conflict intending to affect the powers stemming from Article 27 of the Constitution, is of transcendental importance for the nation's interests, for it is before interests superior to it.


PLENARY

Ordinary federal civil proceedings 1/70. Ignacio Castillo Samaniego Vs. the Federal Government. August 7, 1973. Unanimous with eighteen votes. Author of Opinion: Mariano Ramirez Vazquez.

Era: Seventh Era

Record: 246262

Instance: ANCILLARY CHAMBER

Thesis Type: Isolated thesis

Source: Official Gazette of the Federal Government

Location:  23 Part Seven

Matter(s): Administrative

Pg. 74


**WATERS OWNED BY THE NATION, LAW OF, MATTERS IT REGULATES.  ARE OF TRANSCENDENTAL IMPORTANCE FOR THE NATIONAL INTEREST.**

The Law of Waters Owned by the Nation is a law which, when it develops and deals with matters dealt with by Article 27, Paragraphs Five and Six of the General Constitution of the Republic, takes in issues of transcendental importance for the nation's interests, for it decides on utilization of national waters and irrigation systems to be put in place for productivity of the Mexican land and furthermore, that law recognizes, in agreement with Article 27 of the Constitution, that the nation has had and does have full ownership of the waters, streams or basins, riverbeds or adjacent federal zone, thus it is entitled to the sovereignty and ownership of those assets and the right to regulate their utilization, through the Federal Executive Branch, excluding any other political or private entity (Articles 1, 8 and 9 of said law), being the Executive of the Union in charge of declaring of public benefit the undertaking of projects intended for achieving a better and more rational utilization of waters than the one in place at a given moment (Article 69 of said Law).


ANCILLARY CHAMBER

Amparo in review 9587/65. Francisco Jose Hernandez. November 18, 1970. Majority of four votes. Non-concurrent: Antonio Capponi Guerrero. Author of Opinion: Luis Felipe Canudas Orezza.

48

Era: Seventh Era

Record: 257070

Instance: FIRST COLLEGIATE COURT IN ADMINISTRATIVE MATTERS OF THE FIRST CIRCUIT

Thesis Type: Isolated thesis

Source: Official Gazette of the Federal Government

Location:  22 Part Six

Matter(s): Administrative

Pg. 15

**WATERS AND STREAMBEDS OWNED BY THE NATION.**

It is not enough that at one time some waters and their streambeds had flowed into another stream or in the sea to consider with legal basis and reasoning the declaration made with this foundation, in a time in which the streambed no longer carries water, not even intermittently, for while it would be contrary to the spirit of Article 27 of the Constitution that an unlawful or arbitrary conduct by private parties might modify the federal property regimen of waters and their streambeds, this situation must be clearly defined and studied in the respective decree.

FIRST COLLEGIATE COURT IN ADMINISTRATIVE MATTERS OF THE FIRST CIRCUIT

Amparo in review 1929/69. Compañia Impulsora Mecanica, S.A. October 19, 1970. Unanimous votes.

Era: Quinta Era

Record: 328952

Instance: SECOND CHAMBER

Thesis Type: Isolated thesis

Source: Official Gazette of the Federal Government

Location:  LXV

Matter(s): Administrative

Pg. 1768

**WATERS OWNED BY THE NATION.**

It is not enough to consider that a stream is owned by the nation, that it meets the requirements indicated by the law in the matter for this effect, but it is necessary, also, for the Executive of the Union to make the corresponding declaration, determining and setting boundaries of the assets of national property, in accordance to provisions in Article 10, Section I, of the same law.

SECOND CHAMBER

Administrative Amparo in review 2229/40. Estrada de Signoret Mercedes and co-complainant. August 7, 1940. Unanimous with five votes. Relater: Austin Gomez Campos.

Era: Fifth Era

Record: 337722

Instance: SECOND CHAMBER

Thesis Type: Isolated thesis

Source: Official Gazette of the Federal Government

Location:  XXXI

Matter(s): Administrative

Pg. 2338


**WATERS, OWNERSHIP OF.**

Article 27 of the Constitution expressly indicates which are the waters that shall be considered as property of the nation and, after listing them, concludes by saying that any other water stream, not included in the enumeration shall be considered an integral part of the private property through which they flow.  Furthermore, it sets forth that utilization of the waters, when their course goes from one property to another, shall be considered a public utility and shall be subject to laws enacted by the States.  The foregoing indicates that the Federal Government is entitled to regulate the use of waters, when they are owned by the nation; that when not dealing with waters of this nature, the States are entitled to regulate in turn, the use of waters, when their course goes from one property to another, and therefore, that should there not be any of the two foregoing conditions, the owner of the private property where the waters are located, are entitled to the free use thereof.  Article 11 of the Law of Waters Owned by the Nation, is only applicable to cases in which the waters referred to by said article, are owned by the nation, which is the same, when due to their characteristics, they can be the ones listed by Article 1 of said law; since should they not have these characteristics, the Department of Agriculture and Development, does not have any powers to intervene.


SECOND CHAMBER Administrative Amparo in review 2932/30. Urrutia Ezcurra Martin. April 22, 1931. Unanimous with five votes. Relater: Jesus Guzman Vaca.

Era: Ninth Era

Record: 163981

Instance: SECOND CHAMBER

Thesis Type: Isolated thesis

Source: Official Gazette of the Federal Government and its Gazette

Location:  XXXII, August 2010

Matter(s): Constitutional, Administrative

Thesis: 2nd LXXVIII/2010

Pg. 468


**ORIGINAL PROPERTY OF THE NATION AND DIRECT OWNERSHIP OF NATURAL RESOURCES.  THEIR DIFFERENCES.**

Article 27, paragraph five, of the Political Constitution of the United Mexican States expressly indicate that ownership of the lands and waters within the boundaries of the national territory is vested originally in the Nation, who exercises the highest power on them and, based on this right, it may transfer them to private parties in order to constitute private property, or, after transferring its ownership, if necessary, make use of them by the routes provided for in the same Federal Constitution, being that both the Constituent Congress of 1916 and the doctrine have denominated said property as "absolute ownership", "supreme domain", "plenary domain" or "eminent domain", similar to the one existing in the colonial or viceregal law, currently delimited by international law. This way, even though ownership of the land and waters may be transferred to private individuals, it does not imply that ownership of the natural resources found therein is always transferred, because paragraphs four and five of said constitutional precept set forth that in the Nation is vested their direct ownership, in other words, only the Nation may make use of the resources or assets, living or not, described in these paragraphs, but in making use of this sovereignty authorizes the people it governs – without constituting private property in these cases – their temporary exploitation and utilization through a concession, save the exception cases provided for in Article 27, Paragraph Six of the Constitution.


SECOND CHAMBER

Amparo in review 288/2010. Esteva Mercantil Mexicana y Asociados, S.A. de C.V. June 2, 2010. Five votes. Author of Opinion: Jose Fernando Franco Gonzalez Salas. Secretary: Israel Flores Rodriguez.

Era: Ninth Era

Record: 175694

Instance: PLENARY

Thesis Type: Jurisprudence

Source: Official Gazette of the Federal Government and its Gazette

Location:  XXIII, March 2006

Matter(s): Constitutional, Administrative

Thesis: P./J. 40/2006

Pg. 1483

## UNDERGROUND WATERS.   IT IS FEDERAL JURISDICTION TO REGULATE EXPLOITATION, USE AND UTILIZATION THEREOF, INCLUDING EXTRACTION OR DISCHARGE.

Articles 27, Paragraphs Five and Six, and 73, Sections XVII y XXIX, Subsection 2, Political Constitution of the United Mexican States, set forth which are the waters owned by the Nation; that underground waters may be freely brought to the surface by artificial works and appropriated by the land owner, but if the public interest so requires, but if the public interest so requires, and even establish prohibited zones; that ownership by the Nation is inalienable and imprescriptible, and the exploitation, use, or appropriation of the resources concerned, by private persons or by companies organized according to Mexican laws, shall require concessions granted by the Federal Executive; furthermore, that the Congress of the Union is in charge of enacting laws on the use and utilization of waters of federal jurisdictions and lay taxes on the utilization and exploitation of this natural resource.  In turn, said Congress, in the exercise of its powers, enacted the National Waters Law to regulate said use and utilization, which Articles 3, 4, and 91 determine which are residual waters; that administration thereof is in the charge of the Federal Executive, who shall exercise it directly or through the National Water Commission, and that recharge or infiltration thereof to recharge aquifers requires permission from the Commission and adhere to the Official Mexican Standards issued for this effect.  In attention to the above, it is concluded that it is federal jurisdiction to regulate the exploitation, use or utilization of underground waters, including extraction thereof and discharge or infiltration of residual waters for recharging aquifers.

## PLENARY

Constitutional dispute 57/2004. Federal Executive Branch. November 22, 2005. Majority of nine votes. Non-concurrent: Genaro David Gongora Pimentel and Olga Sanchez Cordero de Garcia Villegas. Author of Opinion: Juan Diaz Romero. Secretary: Laura Garcia Velasco.

The Plenary Court, on February sixteen of this year, approved, with number 40/2006, the foregoing jurisprudential thesis. Mexico City, Federal District, February sixteen, two thousand six.

Era: Eighth Era

Record: 206028

Instance: PLENARY

Thesis Type: Isolated thesis

Source: Official Gazette of the Federal Government

Location:  I, Part One-1, January to June 1988

Matter(s): Administrative

Pg. 13


**UNDERGROUND WATERS.  ARE OWNED BY THE NATION.**

Articles 73, Section XXIX, Subsection Two, and 27, Paragraph Five, of the General Constitution of the Republic indicates that when the constituent assigned in the Fundamental Law of the country the powers vested exclusively in the Congress of the Union, it expressly indicates, that the latter has the power to lay taxes on the utilization and exploitation of underground waters brought to the surface by artificial works such as, in the case, artesian wells, for underground waters are part of the natural resources included in Article 27, Paragraph Five of the Constitution and, therefore, constitute one of the natural resources referred to by Article 73, Section XXIX, Subsection Two, of the Constitution, taking into consideration that natural resources are the group of elements existing in nature which are utilized to satisfy human needs.  It must be specified, additionally, that there is no doubt in relation to the fact of underground waters constitute one of the natural resources contained in said Paragraph Five, by virtue that in the explanation of reasons for amending said paragraph, of December twenty-three, nineteen forty-four, by which the part was added in relation to extraction and utilization of underground waters, the following was declared: "That the powers vested in the public power by the Constitution, as the country's economic life grows, demand to establish new rules or limitations to private property, especially of natural elements which, according to the general principle stated by Article 27 of the Constitution, are originally property of the nation.  The purpose of this extension of powers is to facilitate utilization of natural riches… That the utilization every time larger and more frequent of underground waters for supply to populated areas, cattle consumption, industrial uses or agriculture, demands for legal guidelines to be established in order to regulate and control their utilization… That due to the above reasons, it is necessary to modify Article 27, Paragraph Five of the Constitution, giving underground waters a nature of national property including, in the same precept, the legal rules for improving conservation and development of the country's water resources".  There is no doubt, then, that underground waters constitute one of the natural resources contained in Article 27, Paragraph Five of the Constitution, because it was considered so by the legislation by making this addition to said paragraph.  The above said is confirmed, additionally, with the existence of the Federal Waters Law, which was issued by the Congress of the Union in decree published in the Official Gazette of the Federal Government on January eleven, nineteen seventy-two, in which Article 1 indicates that: "its objective is to regulate

55

exploitation, use or utilization of waters owned by the Nation, included underground water freely brought to the surface by artificial works, in order to regulate extraction, utilization and ban thereof, as required by public interest".  It is observed, additionally, from reading its article, that it sets forth the manner in which underground waters extracted or brought to the surface by artesian wells shall be utilized, exploited and taxed.

PLENARY

Amparo in review 9526/84. Cartonaje Estrella, S.A. de C.V. and co-complainants. April 26, 1988. Unanimous with twenty votes by Ministers: de Silva Nava, Lopez Contreras, Cuevas Mantecon, Azuela Güitron, Castañon Leon, Diaz Infante, Fernandez Doblado, Pavon Vasconcelos, Adato Green de Ibarra, Rodriguez Roldan, Martinez Delgado, Gutierrez de Velasco, Gonzalez Martinez, Villagordoa Lozano, Moreno Flores, Suarez Torres, Chapital Gutierrez, Diaz Romero, Schmill Ordoñez and President del Rio Rodriguez. Author of Opinion: Mariano Azuela Güitron. Secretary: Concepcion Martin Argumosa.

Era: Eighth Era

Record: 207462

Instance: THIRD CHAMBER

Thesis Type: Isolated thesis

Source: Official Gazette of the Federal Government

Location:  II, Part One, July to December 1988

Matter(s): Administrative

Pg. 201

## UNDERGROUND WATERS.   ARE PUBLIC DOMAIN ASSETS OF THE FEDERAL GOVERNMENT.

Underground waters are owned by the Nation, given that the listing of waters made in Article 27, Paragraph Five of the Constitution does not exclude them, and according to Article 2, Section II, of the General Law on National Assets, they constitute public domain assets of the Federal Government, capacity which is not los even when they may be freely brought to the surface and appropriated by the land owner.

THIRD CHAMBER

Amparo in review 1898/87. Vidriera Los Reyes, S.A. October 24, 1988. Unanimous with four votes. Absent: Sergio Hugo Chapital Gutierrez. Author of Opinion: Mariano Azuela Güitron. Secretary: Lourdes Ferrer Mac Gregor Poisot.

Era: Seventh Era

Record: 233508

Instance: PLENARY

Thesis Type: Isolated thesis

Source: Official Gazette of the Federal Government

Location:  37 Part One

Matter(s): Constitutional, Administrative

Pg. 13


**NATIONALLY OWNED WATERS, LAW OF. ITS ARTICLES 1, SECTIONS V AND VII, AND 3, SECTIONS III AND IV, ARE CONSTITUTIONAL.**

After the constitutional amendment of April 21 1945, provisions of the Law of Nationally Owned Waters Articles 1, Sections V and VII, and 3, Sections III and IV, agree with provisions of Article 27, Paragraph Five as amended, of the Constitution and the constitutional flaw disappeared.


PLENARY

Amparo in review 3843/52. Homobono Angulo y co-complainants. March 18, 1972. Unanimous with eighteen votes. Author of Opinion: Carlos del Rio Rodriguez.

Amparo in review 3817/52. Miguel Gutierrez Padilla. January 18, 1972. Unanimous with eighteen votes. Author of Opinion: Carlos del Rio Rodriguez.

Seventh Era, Part One:

Volume 35, page 13. Amparo in review 3818/52. Ismael Gutierrez Padilla. November 30, 1971. Unanimous with seventeen votes. Author of Opinion: Ezequiel Burguete Farrera.

Era: Sixth Era

Record: 270368

Instance: THIRD CHAMBER

Thesis Type: Isolated thesis

Source: Official Gazette of the Federal Government

Location:  Part Four, LXXV

Matter(s): Administrative

Pg. 23

**NATIONAL WATERS, CONSTITUTIONAL JURISDICTION TO HEAR CONFLICTS BY REASON OF UTILIZATION OF.**

Article 27, Paragraphs 5 and 6 of the Federal Constitution, as well as Articles 8 and 10 of the Law of Nationally Owned Waters, indicate that the nation, represented by the Executive Branch, is exclusively charged with regulating the utilization of national waters.  In view thereof, and if in a case actually lays out a conflict of utilization of national waters, because it is intended to suspend the works carried out by the defendant because said works decrease the volume of flow utilized by the plaintiff, one must conclude that resolving this conflict is not within the jurisdiction of the Judicial Power to resolve the conflict, because the matter at hand is expressly reserved for the Executive.  It is to estimate, therefore, that if the judicial authority, by means of an interdiction for new works, intervenes in the regulation of utilization of national waters, it would be invading the scope of powers of the administrative authority.

THIRD CHAMBER

Direct Amparo 8699/61. Sociedad Explotadora y Distribuidora de Aguas "Agua Escondida or San Pedro". September 19. 1963. Five votes. Author of Opinion: Jose Castro Estrada.

Era: Quinta Era

Record: 280571

Instance: PLENARY

Thesis Type: Isolated thesis

Source: Official Gazette of the Federal Government

Location:  XXIV

Matter(s): Administrative

Pg. 408

**NATIONAL WATERS.**

The statement that a water stream is owned by the nation, by itself, does not cause any harm to anyone, if there are no acts of execution, and suspension against this statement's effect shall be denied, because society and the State have an interest in making use of the waters considered to be national property, in order to supply them in a more beneficial manner.

PLENARY

Administrative Amparo. Suspension incident review. Escandon Pablo, estate of. October 16, 1928. Majority with five votes. Non-concurrent: Francisco Diaz Lombardo, Gustavo A. Vicencio, Leopoldo Estrada and Manuel Padilla. The publication does not mention the name of the Author of Opinion.

# LAW OF NAVIGATION AND MARITIME COMMERCE

Published in the Official Gazette of the Federal Government on June 1, 2006

## Article 1.

This Law is of public order and has as its object the regulation of waterways, the navigation and services performed therein, the Mexican merchant marine, as well as the acts, events and property relating to maritime commerce.

## Article 2.

For purposes of this Law:

I.      Department means the Department of Communications and Transportation.

II.     Navigation means the activity engaged by a vessel to travel on navigable waters from one point to the other, with determined direction and purpose.

III.    Maritime Commerce means activities realized by means of the commercial and maritime exploitation of vessels and naval devices for the purpose of transporting persons, goods or things by water, or for the realization in the aquatic environment an activity of exploration, exploitation or capture of natural resources, construction or recreation;

IV.     Vessel means all constructions designed to navigate above or below navigable waters.

V.      Naval Device means any other fixed or floating structure, which without having been designed and built for navigation, is susceptible to be displaced over water by itself or by a vessel, or built on water in order to meet its operational purposes.

VI.     Merchant Marine means a group formed by individuals, entities, vessels and naval devices which in accordance to applicable Legislation practices or participates in maritime commerce.

VII.    Marine Pollution means a direct or indirect insertion by humans of substances or energy in the marine environment that produce or might produce harmful effects to marine life and resources, to human health, or legitimate utilization of waterways in any type of activities, in accordance to International Treaties.

VIII.   Owner means an individual or entity holding right to ownership of one or various vessels and/or naval devices under any legal title.

IX.     Shipowner or shipping company means shipbuilder or shipbuilding company synonymously: an individual or entity who owns or possesses one or various vessels and/or naval devices, and without necessarily being its main activity, is involved in the following

activities: equipping, supplying, provisioning, providing crews, maintaining seaworthiness, operating on its own and exploiting vessels.

X.      Operator means an individual or entity who without being a proprietor or shipowner, executes on its own behalf utilization contracts of vessels and/or naval devices, or of their space, who at the same time has contracted with the proprietor, shipowner or shipbuilder.

XI.     International Treaties mean International Treaties on this subject which the United Mexican States is part of.

XII.    Ship breaking means breaking up ships and separating their structural elements, hulls and decks, as well as the vessel's full, deliberate and methodic demolition.

XIII.   Dredging means removal, moving and/or excavation of ground that is covered or saturated by water.  Action of deepening and cleaning to maintain or increase the depth of ports, navigation routs or water-saturated land; cleaning up swampy ground by making trenches to allow water to flow freely; eliminating bad quality ground in areas were structures are to be built.

## Article 3.

The following are waterways or navigable waters:

a)      The territorial sea, the Exclusive Economic Zone and the inland marine waters;

b)      Navigable rivers and their navigable streams, basins, lakes, lagoons and navigable estuaries, as well as channels intended for navigation, as long as they are permanently or intermittently connected with the sea, or when they serve in whole or in part as the boundary of the national territory or between two or more states, or going from one state to another, or cross the boundary with another country; and

c)      Navigable inland basins, lakes and lagoons.

## Article 4.

Everything related to waterways, navigable waters, navigation and maritime commerce in the inland marine waters and in the Mexican marine zones and, in general, all acts and events which arise therein, is of federal jurisdiction.

For effects of this law, vessels and naval devices shall be subject to an identical regulation, except for those contained in Article 10, Section I, Paragraph e) of this Law.

## Article 6.

Absent an express provision in this Law, its regulations and international treaties the following shall apply in a supplementary manner:

I.     General Law of National Assets;

II.    Federal Oceans Act;

III.   Law of Ports;

IV.    The Commercial Code and the General Law of Negotiable Instruments and Credit Operations;

V.     The Federal Law of Economic Competence;

VI.    The Federal Law of Administrative Procedure;

VII.   The Federal Civil and Federal Civil Procedure Codes;

VIII.  The Law of Insurance Contracts and the General Law of Insurance Institutions and Mutual Societies;

IX.    The Federal Labor Law; and

X.     International maritime custom and usage.


## Article 7.

The maritime authority in Merchant Marine matters is exercised by the Federal Executive through:

I.     The Department, by itself or through port authorities;

II.    Captains of Mexican commercial vessels; and

III.   The Mexican Consul abroad recognized at the port or location where the vessel is located which requires intervention from the Mexican maritime authority for the cases and effects determined by this Law.

# PORTS LAW

Published in the Official Gazette of the Federal Government on July 19, 1993

## ARTICLE 14.

At the ports, terminals and marinas, the following shall be assets of public domain of the Federal Government:

I.      Land and waters forming part of the port area, and

II.     Works and facilities acquired or built by the federal government when they are inside the port areas.

## ARTICLE 2.

For effects of this Law, it shall be understood as:

I.      Department: The Department of Communications and Transportation.

II.     Port: The location of the coast or riverbank fitted as such by the Federal Executive for the reception, shelter and attention to vessels, comprised by the port area and, when applicable, by the development area, as well as by accesses and common areas used for internal navigation and their operation; with services, terminals and facilities, public and private, for transferring goods and ferrying people between the means of transportation linked thereby.

III.    Port area: The federal zone delimited and established by the Department and by the Department of Social Development at ports, terminals and marinas, which comprises water areas and land of public domain intended for establishing facilities and providing port services.

IV.     Terminal: The unit established at a port or away from it, formed by works, facilities and surfaces, including its water zone, which allows for a complete undertaking of the port operation intended for.

V.      Marina: The collection of port facilities and their water or land zones, intended for a specialized organization in providing services to recreational or sporting vessels.

VI.     Port facilities: Infrastructure works and buildings or superstructures, built at a port or away from it, intended for attending to vessels, for providing port services or for building or repairing vessels.

# GENERAL LAW OF SUSTAINABLE FISHING AND AQUACULTURE

Published in the Official Gazette of the Federal Government on July 24, 2007

## ARTICLE 1.

This Law is of public order and social interest, regulatory of Article 27 of the Political Constitution of the United Mexican States and has as its object to regulate, develop and manage utilization of fishing and aquaculture resources in the national territory and the zones over which the nation exercises its sovereignty and jurisdiction; of Article 73, Section XXIX-L to establish the basis for exercising the powers in the matter in charge of the Federal Government, states and municipalities under the principle of concurrent jurisdictions and with the participation of fish producers, as well as all other provisions in the Constitution which purpose is to promote a comprehensive and sustainable development of fishing and aquaculture.

## ARTICLE 3.

This Law, for effects of fishing and aquaculture activities, shall have application to:

I.      Natural resources constituting the flora and fauna which medium of life, in whole, in part or temporarily, is water, in conformity with Article 27 of the Political Constitution of the United Mexican States;

II.     All the national territory and in the zones where the Nation exercises sovereignty and jurisdiction rights with respect to enforcing its precepts, regulations, official Mexican rules and other provisions derived therefrom, and

III.    Vessels with Mexican or foreign flag undertaking fishing activities throughout the national territory and in the areas in which the Mexican State enjoys rights in accordance with applicable provisions of international law.

## ARTICLE 4.

For effects of this Law, it shall be understood as:

I.      *Aquaculture:* Is the collection of activities aimed to the controlled production, prefattening and fattening of fauna and flora species carried out at facilities located in fresh, marine or brackish waters, through breeding or farming, which are susceptible to commercial, ornamental or recreational exploitation;

…

XXVII.  *Fishing:* Is the act of extracting, capturing or collecting, by any method or procedure, biological species or biogenic elements, which medium of life, in whole, in part or temporarily, is water;

…

XXXIII.     *Fishery:* Collection of fishing production systems, which comprise in whole or in part the successive stages of the fishing activity as an economical activity, and which may comprise the capture, handling and processing of a resource or group of related resources and which means of production, organizational structure and production relations occur in a defined geographic and temporal scope;

…

XLIII.     *Department:* The Department of Agriculture, Stockbreeding, Rural Development, Fishing and Food, through the National Commission of Aquaculture and Fishing, with the exception of those cases in which it is through the SENASICA;

XLIV.     *SEMARNAT:* The Department of the Environment and Natural Resources;

XLV.     *SENASICA:* The National Service of Agri-Food Sanitation, Inoculation and Quality;

…

## ARTICLE 7.

The powers vested in the Federal Government by this Law shall be exercised by the Federal Executive Branch through the Department, except for those directly in charge of the President of the Republic by express provision of the law.

When, by reason of the matter and in accordance with the Organic Law of the Federal Public Administration, or other applicable legal provisions, intervention by other agencies is required, the Department shall exercise their powers in coordination therewith.

## ARTICLE 108.

The States shall coordinate with the Department with the purpose of:

I.     Organizing, supporting and supervising the operation of Ancillary Agencies;

II.     Enforcing compliance of established aquaculture sanitary legal provisions and safety measures;

III.     Permanently disseminating aquaculture sanitary information and knowledge; and

IV.     Undertaking aquaculture sanitation actions.

66

# GENERAL LAW OF WILDLIFE

Published in the Official Gazette of the Federal Government on July 3, 2000

## Article 1.

This Law is of public order and social interest, regulatory of Article 27, Paragraph Three and Article 73, Section XXIX-G of the Constitution. Its object is to establish concurrent jurisdiction by the Federal Government, State governments and Municipalities, in the scope of their respective authority, in relation to the sustainable conservation and utilization of wildlife and its habitat in the territory of the Mexican Republic and in the zones where the Nation exercises its jurisdiction.

Sustainable utilization of timber-yielding and non-timber-yielding forest resources and of the species which full medium of life is the water, shall be regulated by the forest and fishing laws, respectively, except for when dealing with endangered species or populations.

*Amended paragraph DOF 10-JAN-2002*

## Article 4.

It is the duty of all inhabitants of the country to preserve the wildlife; any act implying destruction, damage or disturbance thereof is prohibited, in prejudice of the Nation's interests.

Owners or legitimate holders of land where wildlife is distributed, shall have sustainable utilization rights on their specimens, parts and derivatives in accordance with the terms provided for in this Law and other applicable provisions.

Rights on generic resources shall be subject to international treaties and to provisions in the matter.

# GENERAL LAW OF SUSTAINABLE FOREST DEVELOPMENT

Published in the Official Gazette of the Federal Government on February 25, 2003

## ARTICLE 1.

This Law is regulatory of Article 27 of the Political Constitution of the United Mexican States, its provisions are of public order and interest and to be observed throughout the national territory and has as its object to regulate and promote conservation, protection, restoration, production, organization, cultivation, management and utilization of the forest ecosystems of the country and its resources, as well as to distribute the [legislative] authority in forest matters which correspond to the Federal Government, States, Federal District and Municipalities, under the concurrent jurisdiction principle provided for by Article 73, Section XXIX-G of the Political Constitution of the United Mexican States, with the purpose of promoting the sustainable forest development. When dealing of forest resources owned by the indigenous people towns and communities, the provisions of Article 2 of the Political Constitution of the United Mexican States shall be observed.

## ARTICLE 5.

Ownership of the forest resources comprised within the national territory corresponds to the communal farms, communities, indigenous people towns and communities, individuals or entities, the Federal Government, States, Federal District and Municipalities who own the land where they are located.  The procedures set forth by this Law shall not alter the ownership regime of said land.

# REGULATION FOR THE USE AND ENJOYMENT OF THE TERRITORIAL SEA, NAVIGABLE WATERWAYS, BEACHES, FEDERAL MARITIME-LAND ZONE AND LAND RECLAIMED FROM THE SEA

## ARTICLE 1.

This Regulation is to be observed throughout the national territory and has as its object to promote, within the administrative scope, compliance of the General Laws of National Assets, of Navigation and Maritime Commerce and of General Means of Communication in reference to the use, utilization, control, administration, inspection and supervision of beaches, federal maritime-land zone and land reclaimed from the sea or any other deposits formed with maritime waters and of the assets forming part of the port areas which are intended for port maritime facilities and works.

## ARTICLE 2.

For effects of this Regulation, it shall be understood as:

…

II.        Department: The Department of Urban Development and Ecology

…

## ARTICLE 3.

The federal maritime-land zone shall be defined and delimited by considering the highest high tide level observed during thirty consecutive days during a period of the year in which no hurricanes, cyclones or high intensity winds take place and is technically favorable to undertake the delimitation work.

## ARTICLE 4.

The federal maritime-land zone shall only be established in areas where on a horizontal plane it has a slope angle of 30 degrees or less.

When dealing with coasts lacking beaches and having rocky formations or sea cliffs, the Department shall establish the federal maritime-land zone within a 20-meter band contiguous to the marine coastline, only when the slope in said band is continuously 30 degrees or less.

In the case of rivers, the federal maritime-land zone shall be established by the Department from their mouth in the sea to the point upstream where the highest annual flow reaches, which shall in no case exceed two hundred meters.

# LAWS OF THE STATE OF QUINTANA ROO

# POLITICAL CONSTITUTION OF THE STATE OF QUINTANA ROO

(Published in the Official Gazette of the Federal Government on January 10, 1975)

*ADDED, P.O. DECEMBER 17, 2007*

## ARTICLE 75.

The following are powers of the State Legislature:

I.     To legislate in its domestic lawmaking in all matters not reserved by the Constitution of the Republic to federal officials.

…

# FOREST LAW OF THE STATE OF QUINTANA ROO

Published in the Official Periodical on December 17, 2007.

## ARTICLE 36.

In case of communal farms, the right of possession recognized by the assembly on a specific area of the communal farm includes the possession and usufruct of the existing forest real property thereon, and the existence of the forest covering implies a continuous possession and in production of the asset, which may not be assigned in case it is abandoned.  In case of forest plantations, the trees planted by a communal farm member as an individual, in his plot of land de facto or de jure, shall be property thereof.

# LAWS OF THE STATE OF TAMAULIPAS

# LAW OF STATE AND MUNICIPAL ASSETS OF TAMAULIPAS

(Last amendment published in the Official Periodical of the State on November 2, 2010)

## Article 13.

The assets of the State or of its Municipalities, may be:

a) Assets of public domain; or

b) Assets of private domain.

## Article 14.

1. Public domain assets are classified as:

a) Assets of common use; or

b) Assets intended for a public service.

## Article 16.

Assets of common use are:

a) Land communication means of state or municipal domain;

b) Hills, forests and waters not of the Federal Government or private parties;

c) Public squares, streets, avenues, viaduct, walkways, gardens and parks;

d) Artistic and historical monuments and buildings in general for public use of state or municipal property;

e) Easements when the dominant plot is owned by the State, by the Municipalities or by the public entities of the one and of the others;

f) Public markets, hospitals and cemeteries; and

g) All others to which the laws assign this characteristic or which due to their nature should considered as such.

# WATER LAW OF THE STATE OF TAMAULIPAS

Last amendment published in the Official Periodical of the State on June 16, 2011

## Article 2.

For effects of this law, the following shall be understood as: …

III. State waters: Those which do not meet the characteristics of nationally or privately owned waters pursuant to Article 27, Paragraph Five of the Political Constitution of the United Mexican States.

IV. National Waters: Those meeting the characteristics of nationally owned waters pursuant to Article 27, Paragraph Five of the Political Constitution of the United Mexican States.

## Article 67.

1. State waters are all those existing within the territory of the State, as long as they are not included in one of the national jurisdiction or private property cases, as stated in Article 27 of the Political Constitution of the United Mexican States.

2. Jurisdiction over the waters shall survive even when they are deviated from their original riverbed or basin by the construction of works and flow into them is impeded or are subject to treatment.

## Article 68.

1. The following are considered inherent assets of state waters:

I. The part that corresponds to the streambeds of beaches and state zones pursuant to this Law and its Regulations;

II. The land occupied by the basins of lakes, lagoons, estuaries or natural deposits which waters are state waters;

III. Streambeds of state waters;

IV. Riverbeds or State zones contiguous to streambeds and basins or deposits owned by the state;

V. The land of streambeds and of the basins of lakes, lagoons or estuary owned by the state, uncovered by natural causes or by artificial works;

VI. Works of hydraulic infrastructure financed by the State Government, such as dams, dikes, basins, channels, drains, levees, ditches, aqueducts, irrigation districts or units and others built for

76

exploitation, use, utilization, flood control and management of state waters, with the land they occupy and with the protection zones, in the scope established in each case by the Commission; and

VII. Rocky materials located within streambeds of state waters and on its inherent public assets.

2. The administration of the foregoing assets shall be in charge of the Commission.

# LAWS OF THE STATE OF VERACRUZ

# STATE ASSETS LAW OF THE STATE OF VERACRUZ DE IGNACIO DE LLAVE.

Published in the Official Gazette on Tuesday, September 30, 1980

## Article 2

State assets are:

**I.**     Assets of public domain; and
**II.**    Its own assets.

## Article 3.

Public domain assets are:

I.      Those of common use;

II.     Those intended by the State for a public service, and those compared thereto in accordance with the Law;

III.    Artistic and historical monuments, movable and immovable, of state property;

IV.     The land referred to by Article 9 of the Law of Human Settlements of the State;

V.      Personal property owned by the state which due to their nature are not normally substitutable, such as office documents and files: manuscripts, incunables, editions, books, documents, publications, periodicals, maps, charts, brochures and important or rare engravings, as well as collections of these assets; files; phonorecords, films, photographic archives, magnetophonic tapes, and any other object containing images and sounds;

VI.     Mural paintings, sculptures and any other artistic works permanently incorporated or attached to real property of the state or of the patrimony of decentralized public service agencies of the State Government;

VII.    State bridges and roads;

VIII.   Real property acquired to be destined for purposes of public utility;

IX.     Hills and forests owned by the State Government intended for public interest purposes; and

X.      All other personal and real property not considered in the prior sections which provide a public service.

## Article 4.

Its own assets are:

**I.**      Real property not included in Article Three of this Law;

II.      Those which had formed part of state departments or agencies that have since disappeared;

III.      Personal property serving the State Government powers and agencies not included in Section V of the prior article;

IV.      All the land which while located within the boundaries of the State's territory, lack another owner; and

V.      All other assets acquired by the State by any other legal title.

# WATER LAW OF THE STATE OF VERACRUZ DE IGNACIO DE LLAVE.

*(Published in the Official Gazette on June 29, 2001.)*

## Article 1.

This Law is of public order and social interest and has as its object to regulate Article 9 of the Political Constitution of the State in matter of waters of state jurisdiction, as well as to establish coordination rules among municipal councils and the State Executive; in case of waters of national jurisdiction shall be subject to the respective federal legislation.

Considered of state jurisdiction are the waters, their respective streambeds, channels and riverbanks, located in the territory of the State of Veracruz, pursuant to the terms of the Constitution and federal laws, this law and other laws of the State.

In the State of Veracruz-Llave utilization of waters shall be considered of public utility which course or deposit is located in two or more plots of land.

# CIVIL CODE OF THE STATE OF VERACRUZ DE IGNACIO DE LA LLAVE

*(Published in Official Gazette on September 15, 1932.)*

## Article 874.

Neither the minerals or substances stated in Article 27, Paragraph IV of the Political Constitution of the United Mexican States belong to the land owner nor do the waters owned by the Nation as provided for by Paragraph Five of the same article.

### Chapter II

### About Appropriation of Animals

## Article 887.

Animals without any branding found in the properties are presumed to belong to the land owner as long as the contrary is not proven, unless the land owner does not have a young of the breed to which the animals belong.

## Article 888.

Animals without any branding found in privately owned lands where different types are exploited in common are presumed to belong to the owner of the young of the same species and of the same breed established therein as long as the contrary is not proven.  If two or more owned the same species or breed, as long as there is no proof that the animal belongs to one of them, they shall be considered common property.

## Article 903.

Fishing and scuba diving for pearls in waters owned by the public power, which are of common use, shall be governed by provisions of the respective laws and regulations.

## Chapter V

### About Ownership of Water

### Article 964.

Waters owned by the Nation listed in the first part of Article 27, Paragraph Five of the Federal Constitution, as well as the respective streambeds, channels and riverbanks, shall be governed by the federal laws in the matter.

83