IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 | * * * * * | MDL NO. 2179<br><br>SECTION J |
| This document relates to: | * * | Judge Barbier |
| *Nos. 10-4239; 10-4240; 10-4241* | * * | Magistrate Judge Shushan |

**BRIEF OF DEFENDANT CAMERON INTERNATIONAL
CORPORATION IN SUPPORT OF ITS MOTION FOR COMPLETE
SUMMARY JUDGMENT IN THE MEXICAN STATES' CASES**

Cameron International Corporation ("Cameron") respectfully submits this brief in support of its motion for complete summary judgment denying recovery to the Mexican States of Veracruz, Tamaulipas, and Quintana Roo in Case Nos. 10-4239, 10-4240, and 10-4241.

## Summary of Argument

This Court has dismissed all claims of the Mexican States, save "negligence and gross negligence claims" under general maritime law. Rec. Doc. 4845, pp. 9-12. To be valid under the *Robins Dry Dock* rule, those remaining claims require "physical injury to a proprietary interest," *id.*, p. 12; Rec. Doc. 3830, pp. 19-25; Rec. Doc. 7526, p. 25.

As a matter of Mexican law, the Mexican States have no such proprietary interest in the resources for which they allege physical injury. The Mexican Constitution and national law grant the Mexican Nation ("la Nacion") the "inalienable" proprietary interest in territorial waters and coastal natural resources, not the Mexican States. Because the Mexican States have no proprietary interest in any allegedly damaged resource, the negligence and gross negligence claims of the Mexican States are barred by the *Robins Dry Dock* rule as a matter of U.S. law.

1

**The Mexican States' Allegations**

The pertinent substantive allegations in the operative pleadings of the Mexican States are identical. All three allege purported injury

- "to the eco-system of the waters off the shores of [each Plaintiff state], killing and contaminating fish oysters, shrimp, crabs, crayfish, other marine life and the sources of food upon which the residents of Tamaulipas and the State itself depend;"

- "to the Plaintiff's coastal waters, offshore waters, beaches, lagoons, estuaries, delicate wetlands, and intertidal zones that line the extensive coast" of Mexico; and

- "to the habitats where birds, fish, shellfish, cretaceans, and other wildlife breed, spawn, mature, and live."

First Amended Complaints ¶ 39; *see id.* ¶ 40 (alleging purported injury to "eco-systems" and marine life); ¶ 41 (alleging purported injury to marine life and "shorelines"). As explained in the following section, the Mexican States do not, as a matter of the law of Mexico, have a proprietary interest in any such allegedly injured natural resource.

**The Law of Mexico**

*The Process for Determining the Governing Law of Mexico*

"In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." FED. R. CIV. P. 44.1. "The purpose of this provision is obvious. One of the objectives of Rule 44.1 was to abandon the fact characterization of foreign law and to make the process of determining alien law identical with the method of ascertaining domestic law to the extent that it is possible to do so." 9A WRIGHT & MILLER, FED. PRAC. & PROC.: CIVIL § 2444 at 338-42 (3RD ED. 2008). Moreover, as the Rule indicates, the court is free to "conduct its own research." *Tobar v. United States*, 639 F.2d 1191, 1200 (9th Cir. 2011); *accord*, 9A WRIGHT &

2

MILLER § 2444 at 342.  In the end, resolving the content of Mexican law will result in "a ruling on a question of law."  FED. R. CIV. P. 44.1.

The content of applicable Mexican law in the Mexican States' cases may be determined by using the tried and true methods for ascertaining domestic law.  For all practical purposes, the tendered reports on Mexican law agree on the key provisions of the Mexican Constitution and national statutes that constitute the primary sources of governing Mexican law.  While written in Spanish, those provisions of Mexican law employ Latinate legal terms that mean the same in Spanish and English, and in some key instances are spelled the same.  Consequently, correct construction of governing Mexican law should entail nothing more than the typical analysis of the text in primary legal sources.

*What Mexican Law Provides*

Article 27 of the Mexican Constitution deals with proprietary ownership of the natural resources on which the Mexican States purport to base their claims.  BP Identification of Legal Authorities at 1-5.[1]  Article 27 begins with the following general proposition: "Ownership ('La propiedad') of lands and waters within the boundaries of national land territory is vested originally in the Nation, which has had and has, the right to transmit title thereof to private persons, thereby constituting private property ('la propiedad privada')."  *Id.* at 1.  In other words, Article 27 uses the Spanish word "propiedad," a direct cognate of the English words "proprietary" and "property."  Put simply, article 27 establishes the "proprietary" ownership of specified assets.

Equally important, Article 27 grants proprietary interests in the pertinent assets to the Nation ("la Nacion").  *Id.* at 1-5.  And the Constitution itself makes the character of "la Nacion"

---

[1] The translations of Mexican law exchanged by the parties have been filed as part of Rec. Doc. 8167, Exhibits 1 (Mexican States), 5-6 (BP), and 8-9 (Transocean and Halliburton).

crystal clear in the first sentence of Article 2: "La Nacion Mexicana es unica e indivisible." *See* Attached Exhibit A. In other words, under the Mexican Constitution, the Mexican Nation ['la Nacion'] is a single, "indivisible" entity separate and apart ['unica'] from any of the Mexican States.

The environmental assets placed at issue by the Mexican States are addressed in its fourth through sixth paragraphs of Article 27. BP Identification of Legal Authorities at 2-4. The fourth paragraph grants the "Nation" ['la Nacion'] full ownership, *inter alia*, over "all natural resources of the continental shelf and the seabed and subsoil of the submarine areas of the islands . . . to the extent and under the terms of international law." *Id.* at 2. Similarly, the fifth paragraph of Article 27 grants the "Nation" full ownership ['Son propiedad de la Nacion'], *inter alia*, "over the waters of the territorial sea to the extent and under the terms of International law; over internal waters: [and] waters of lagoons and estuaries permanently or intermittently connecting with the sea." *Id.* at 3.

Critically, the sixth paragraph of Article 27 provides that "in the cases referenced in the two previous paragraphs [i.e., with respect to the natural resources described in the fourth and fifth paragraphs], the Nation's dominion [i.e., 'propiedad' in paragraph 5] is inalienable and not subject to prescription ['es inalienable e imprescriptible']." *Id.* at 4. Thus, not only does the Nation own the exclusive proprietary interest in the coastal and Gulf natural resources, but also that proprietary interest may not be conveyed away or lost. Instead, use and enjoyment of the resources may only be accomplished by "concessions" ["concesiones"] from the Nation. The States are not granted any proprietary interest in those resources.

The national laws of Mexico implement Article 27 unfailingly. Article 6 of the General Law of National Assets, for example, provides that "assets of common use" ["bienes de uso

comun"] listed in the statute's article 7 are part of the Nation's public domain, and "beaches" ['Las playas maritimas'] are included within article 7's list of "common use" assets.  BP Identification of Legal Authorities at 6-7.  Like the Mexican Constitution, article 13 of the General Law of National Assets provides that these national common use assets are "inalienable" ['inalienable'] and not subject to prescription or adverse possession.  *Id.* at 7.  Articles 16 and 70 of the General Law of National Assets and article 35 of the Regulation for the Use and Enjoyment of the Territorial Sea, Navigable Waterways, Beaches, Federal Maritime Land Zone and Land Reclaimed from the Sea likewise provide that concessions or agreements for the use of these National assets do not convey ownership or any real or in rem rights.  Halliburton and Transocean Supplemental Joint Identification of Legal Authorities, Ex. A at 6, 15; *accord*, Guabardi Report (submitted by the Mexican States) at 92-95 & nn. 365, 373, 379.  Put simply, the Mexican States have no proprietary interest in beaches or the other natural resources on which they purport to base their claims, because as a matter of unambiguous Mexican law, the States do not own those resources.

The Mexican Constitution contains a Supremacy Clause, article 133, which parallels that of the U.S. Constitution.  BP Identification of Legal Authorities at 5-6.  "This Constitution, the laws of the Congress of the Union which shall be enacted in pursuance thereof and all treaties in accordance therewith, . . ., shall be the supreme law of the Union ['la Ley Suprema de toda la Union']."  *Id.*  Plus, in its second sentence, Article 133 explicitly circumscribes the powers of the States: "The Judges of the States shall be bound by the Constitution, and such laws and treaties, notwithstanding any provision to the contrary in the Constitutions or laws of the States ['a pesar de las disposiciones en contrario que pueda haber en las Constituciones o leyes do los Estados'].

*Id.* at 6.  Accordingly, the Mexican States cannot pass state constitutional provisions or laws to override either the Constitution or the provisions of national laws.

### *Exchanged Reports*

Relying directly on the primary sources of Mexican law discussed in the foregoing section, the three reports on Mexican law submitted by Defendants all conclude that the Mexican States have no proprietary interest in the pertinent natural resources.  Burguete-Stanek Declaration at 2; Gonzalez Report at 10; Lopez Declaration at 6.[2]  Nor do the Mexican States have any ***proprietary*** rights in wildlife.  Gonzalez at 6-7; Burguete-Stanek at 9.

One of the reports submitted by the Mexican States readily concedes from the text of paragraphs 4-6 of Article 27 of the Mexican Constitution that "the rightful holder of the original domain of Mexican seawaters, coastal areas, maritime flora and fauna, as well as the islands in Mexican territory, is the Mexican Nation."  Guabardi Report at 18.  However, based on what is described as a "holistic and harmonic interpretation" of the Constitution, that report proposes that the concept of "Mexican Nation" can be thought of as encompassing the Mexican States.  *Id.* at 18-25.  That opinion, however, does not cite any supporting provision of the Constitution  -- it depends instead on the "idea of nation" propounded by German sociologist Max Weber.  *Id.* at 20 & n.2.  Quite clearly, that opinion cannot be squared with the explicit description of the character of the Mexican Nation actually contained in Article 2 of the Constitution.  The Mexican Nation is a single, "indivisible" entity separate and apart from any other entity ("unica").

The other reports submitted by the Mexican States acknowledge certain parts of Article 27.  Cruz Report at 10, 11, 12, 25; Gutierrez Report at 6.  But neither of these reports addresses

---

[2] The reports exchanged by the parties have been filed as part of Rec. Doc. 8167, Exhibits 2 (Guabardi), 3 (Cruz) 4 (Gutierrez), 7 (Burguete-Stanek), 10 (Gonzalez), 11 (Lopez).

1113400v1

paragraphs 4-6 of that Article. And sensibly, neither joins in the transparently flawed interpretation of "Nation" advanced in the Guabardi Report.

All three reports submitted by the Mexican States rely heavily on the concept of "concurrent" powers among the federal and state governments in Mexico. Guabardi Report at 26-29; Cruz Report at 7-23; Gutierrez Report at 4-13. However, it is clear that the notion of "concurrency" deals solely with public administration in a federal system. That system of sometime overlapping state and national governmental duties and powers has nothing to do with proprietary interests in natural resources. By contrast, Article 27 of the Mexican Constitution, as implemented by the national law of Mexico, does assign ownership of those assets to the Nation, and does not contemplate that any Mexican State can acquire such an interest. Likewise, state powers to regulate activities that might injure the environment or to manage certain public property for common use do not create *proprietary* interests in environmental resources.

Implicitly conceding that Mexican law does not grant the Mexican States a proprietary interest, the Guabardi Report attempts to rely on agreements between the Mexican Nation and Mexican States or other local government entities concerning common use of coastal resources. Guabardi Report at 92-226. As repeatedly explained in the report's footnotes, however, the Mexican law on which each agreement is explicitly based not only recites the proprietary interest of the Nation in the natural resources involved, including beaches, but also confirms that the agreement does not convey to any Mexican State that is a party any proprietary interest in the resources involved.[3] Most importantly, in describing that Mexican law referenced in these

---

3   *See id.* nn. 361-65, 373, 375, 379, 381-85, 387, 395, 397, 401, 403-07, 409, 417, 419, 423, 425-29, 431, 439, 441, 445, 447-51, 453, 461, 463, 467, 469-73, 475, 483, 485, 489, 491-95, 497, 505, 507, 511, 513-17, 519, 527, 529, 533, 535-39, 541, 551, 555, 557-61, 563, 571, 573, 577, 579-83, 585, 595, 599, 601-05, 607, 615, 617, 621, 623-27, 629, 637, 639, 643, 645-49, 651, 659, 661, 665, 667-71, 673, 681, 683, 687, 689-93, 695, 703, 705, 709, 711-15, 717, 725, 727, 731, 733-37, 739, 747, 749, 753, 755-59, 761, 771, 775, 777-81, 783, 793, 797, 799-803, 805, 813, 815, 819, 821-25, 827,

7

agreements, the Guabardi Report repeatedly and explicitly acknowledges that Mexican national law follows Article 27 of the constitution:

> "[g]rants, permits and authorization on assets subject to public domain of the federation do not create real rights over the same," n. 257;
>
> "assets under the public domain [of the Nation] shall not be transferable, cannot be acquired by adverse possession and cannot be seized nor be subject to restoration of the property actions or definitive or provisional possessor actions, by third parties," nn. 365, 387, 409, 431, 453, 475, 497, 519, 541, 563, 585, 607, 629, 651, 673, 695, 717, 739, 761, 783, 805, 827, 849, 871, 893, 915, 937, 959, 981, 1003, 1025, 1047, 1069, 1091;
>
> "administrative agreement[s] granting the benefit upon federal assets only transfer the right to use them but do not transfer the property on the same or create any other real rights on such assets and hence cannot be transferred to anyone else," nn. 373, 395, 417, 439, 461, 483, 505, 527, 571, 615, 637, 659, 681, 703, 725, 747, 813, 835, 879, 901, 923, 945, 967, 989, 1011, 1033, 1055, 1077, 1099;
>
> "concessions . . . do not create real rights upon federal land zones, land reclaimed from the sea or any other deposit of maritime waters," nn. 379, 401, 423, 445, 467, 489, 511, 533, 555, 577, 599, 621, 643, 665, 687, 709, 731, 753, 775, 797, 819, 841, 863, 885, 907, 929, 951, 973, 995, 1017, 1039, 1061, 1083, 1105;

Of course, every agreement to which a Mexican State is a party treats the State as an entity separate and apart from the Mexican Nation that does not share in the proprietary rights of the Nation. In practical effect, therefore, the Guabardi Report's reliance on these agreements and its recitation of referenced Mexican law confirm that the Mexican States truly have no proprietary interest ("real rights") in gulf or coastal natural resources.

---

835, 837, 841, 843-47, 849, , 859, 863, 865-69, 871, 879, 881, 885, 887-91, 893, 901, 903, 907, 909-13, 915, 923, 925, 929, 931-35, 937, 945, 947, 951, 953-57, 959, 967, 969, 973, 975-79, 981, 989, 991, 995, 997-1001, 1003, 1011, 1013, 1017, 1019-23, 1025, 1033, 1035, 1039, 1041-45, 1047, 1055, 1057, 1061, 1063-67, 1069, 1077, 1079, 1083, 1085-89, 1091, 1099, 1101, 1105; *see also* nn. 1108, 1111, 1143, 1137, 1145, 1148.  The sales of national land to private parties discussed at pages 43-82 of the Guabardi Report obviously create no proprietary interest in any Mexican State.

### *Robins Dry Dock* Revisited

Given these unambiguous provisions of governing Mexican law, the Supreme Court's decision in *Robins Dry Dock* is fully dispositive. In *Robins Dry Dock*, the claimants were time charterers of a steamship. As required by the charter, the charterers took the vessel to the defendant dry dock for maintenance and inspection. The dry dock damaged a propeller during repairs, causing a delay in the vessel's voyage. The dry dock settled with the owner of the steamship for the damage to the propeller. But the time charterers also sued for their economic loss occasioned by the delay. The Supreme Court denied the charterers' claim under maritime law. 275 U.S. 303 (1927).

In the seminal opinion written by Justice Holmes, the Court reasoned as follows. "The damage was material to [the charterers] only as it caused the delay in making the repairs, and that delay would be a wrong to no one except for the petitioner's contract with the owner. ***The injury to the propeller was no wrong to the respondents but only to those whom it belonged***." *Id.* at 308 (emphasis added). The Court further noted "that, as a general rule, at least, ***a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other*** unknown to the doer of the wrong." *Id.* at 309 (emphasis added), quoted as authoritative in *State of Louisiana v. m/v Testbank*, 752 F.2d 1019, 1022 (5th Cir. 1985) (en banc). "The law does not spread its protection so far." *Id.*, quoted with approval in *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 874 (1986) (acknowledging products liability as a part of maritime law, but denying recovery for injury to the product alone under reasoning identical to that of *Robins Dry Dock*), and in *Testbank*, 752 F.2d at 1022.

9

1113400v1

As this Court has observed, the *Robins Dry Dock* rule remains controlling law, particularly in the Fifth Circuit. Rec. Doc. 3830 at 19-26; Rec. Doc. 4845 at 4; Rec. Doc. 7526 at 5, 6-7 (citations omitted). Its application to the claims of the Mexican States should be straightforward. Any purported injury to coastal resources resulting from the Macondo oil spill as alleged by the Mexican States "was no wrong" to the Mexican States, but only to the Mexican Nation to whom those resources undeniably "belonged." Any purported "tort to the property of" the Mexican Nation "does not make the tort-feasor liable to [any Mexican State] merely because" the Mexican Nation "was under a contract" with that Mexican State.

Indeed, those contracts require all parties to facilitate "common use" of the resources owned by the Nation. By contrast, under their time charter, the charterers in *Robins Dry Dock* were no doubt entitled to complete possession and control of the steamship for their own exclusive economic benefit during most of the term of the charter. The Mexican States, therefore, have far less of an interest than that of the time charterers whose claim the Supreme Court denied. Under *Robins Dry Dock*, therefore, maritime "tort law does not spread its protection" to the Mexican States.

## Conclusion

As a matter of Mexican law, the Mexican States do not have a proprietary interest in natural resources in Gulf waters or on Gulf shores. As a consequence, the Mexican States' negligence and gross negligence claims necessarily fail as a matter of general maritime law. All other claims of the Mexican States have already been dismissed.

Accordingly, while preserving its legal positions (*see* Rec. Doc. 6921 at 2-3), Cameron respectfully requests that this Court grant it complete summary judgment denying recovery to the three Mexican States.

1113400v1

Respectfully submitted,

|  |  |
|---|---|
| David J. Beck, T.A. |   /s/ Phillip A. Wittmann |
|   dbeck@beckredden.com | Phillip A. Wittmann, 13625 |
| Joe W. Redden, Jr. |   pwittmann@stonepigman.com |
|   jredden@beckredden.com | Carmelite M. Bertaut, 3054 |
| David W. Jones |   cbertaut@stonepigman.com |
|   djones@beckredden.com | Jared Davidson, 32419 |
| Geoffrey Gannaway |   jdavidson@stonepigman.com |
|   ggannaway@beckredden.com | STONE PIGMAN WALTHER |
| BECK REDDEN LLP |   WITTMANN L.L.C. |
| One Houston Center | 456 Carondelet Street |
| 1221 McKinney St., Suite 4500 | New Orleans, Louisiana  70130 |
| Houston, TX  77010 | Phone: (504) 581-3200 |
| Phone:  (713) 951-3700 | Fax: (504) 581-3361 |
| Fax:  (713) 951-3720 |  |

*Attorneys for Cameron International Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Brief of Defendant Cameron International Corporation in Support of its Motion for Complete Summary Judgment in the Mexican States' Cases has been served on All Counsel by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 12, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2179, on this 4th day of January, 2013.

  /s/ Phillip A. Wittmann

1113400v1