## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010. | § § § § | MDL No. 2179 SECTION "J" |
| | § § | JUDGE BARBIER |
| This Document Relates to: | § § | MAGISTRATE SHUSHAN |
| 10-4239 10-4240 10-4241 | § § § § | |

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THE MEXICAN STATES OF QUINTANA ROO'S, TAMAULIPAS', AND VERACRUZ', MOTION FOR SUMMARY JUDGMENT REGARDING THE ISSUE OF PROPRIETARY INTERESTS IN THE MATTERS ASSERTED IN THEIR COMPLAINTS**

**NOW INTO COURT,** come Plaintiffs, the Mexican States of Quintana Roo, Tamaulipas, and Veracruz (hereinafter "the Mexican States") pursuant to Federal Rule of Civil Procedure 56, and respectfully files this Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment Regarding the Issues of the Proprietary Interest Rights of the Mexican States as outlined in Robins Dry Dock, pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1 (February 2011), and respectfully show the Court as follows:

STATEMENT OF UNDISPUTED FACTS

The undisputed facts relevant to the Mexican States Motion for Summary Judgment are set forth herein and in the documents produced during the course of discovery in this case and within the expert legal opinions of Plaintiff's expert reports produced in this case. Those undisputed facts are summarized as follows:

I. **THE MEXICAN FEDERAL GOVERNMENT GRANTS FEDERAL RIGHTS AND POWERS TO THE SOVEREIGN STATES OF THE REPUBLIC, INCLUDING THE STATES OF QUINTANA ROO, TAMAULIPAS, AND VERACRUZ UNDER THE AUTHORITY OF THE MEXICAN CONSTITUTION**

A. **Mexican Constitution**

1. Since it enactment in 1917, the Mexican Constitution (Attached as Exhibit A; Identified in Attachment 2A-1, Document 1 of Plaintiffs Disclosures) has experienced more than 500 amendments over time. As a result, the federalist system in Mexico has evolved over the last 95 years, giving way to a two state system between the Mexican Federal Government and the independent and sovereign State Governments.

2. The proprietary interest rights and jurisdiction of the Mexican States of Tamaulipas, Veracruz and Quintana Roo with respect to Mexican sea waters, coastal seashore, maritime flora and fauna, as well as the islands in Mexican territory, can be classified into several (not-excluding) categories:

> (a) rights, powers, enforcement authority and jurisdiction granted by either the Mexican Constitution and the State Constitutions;
> (b) concurrent (coincidental) rights, powers, enforcement authority and jurisdiction granted by the Mexican or State, or by both of them;
> (c) concurrent (coincidental) rights, powers, enforcement authority and jurisdiction granted by the Mexican or State Legislation, or by both of them;
> (d), concurrent (coincidental) rights, powers, enforcement authority and jurisdiction granted by means of Administrative Agreements made by federal agencies in their capacity of National agencies;
> (e) concurrent (coincidental) rights, powers, enforcement authority and jurisdiction granted by means of Coordination Agreements entered into between the Federal Government and the States and/or the Municipalities therein.
> *Please see Guabardi Expert Report pg. 35*

B. **Mexican and State Constitution – Proprietary Interests**

3. The Republic of Mexico follows the theory of original domain, under which the Mexican Nation is the original and sole owner of the entire Mexican territory. Hence,

under the theory of the original domain, the Mexican Federated States (*e.g.,* Veracruz, Quintana Roo, and Tamaulipas) and the Federal Union, the constituent institutional parties to the Mexican Nation, are consequently, the instrumental and organic trustees of the "original domain" of the Mexican Nation.

4.   The Mexican Constitution (Attached as Exhibit A; Identified in Attachment 2A-1, Document 1 of Plaintiffs Disclosures) states that the "Mexican Nation" is constituted with the following constituent elements:

(a) The Mexican people, upon who resides the National sovereignty. (Article 39 of the Mexican Constitution),
(b) The Mexican Republic, constituted by its free and independent States, the Municipalities thereto, and the federal union.   (Articles 39 and 115 of the Mexican Constitution), and
(c) the National territory, including all parts which make up the Mexican federation (States, Municipalities and the Federal District), the island and coastal seas, the continental platform and underwater soil of islands, keys and reefs, as well as the of territorial. (Article 42 of the Mexican Constitution).

5.   Pursuant to Article 27 of the Republic of Mexico's Federal Constitution, "The Nation has an original right of property over the lands and waters within the boundaries of the national territory. **The Nation also "has and will have the right to transfer its property's domain to private individuals in order to create private property rights."** (Please see Exhibit A).  Furthermore under Article 27, the law states the following: "The empowerment to acquire legal domain over the nation's lands and waters, will be ruled by what follows:

I.      Only those persons recognized as Mexicans by birth or by naturalization as well as Mexican Corporations shall have a right to acquire legal domain over lands waters, and their accessories. They shall also be entitled to acquire permits in order to exploit mines and waters.

6.   Article 27 of the Mexican Constitution establishes the bases for the Republic to transfer its property domain to both individuals and corporations, thereby transferring

actual property rights of control and possession over such lands.  On February 6, 1976, an

Amendment to Article 27 of the Mexican Constitution added the following language:

> **Article 27. -** "The ownership of the lands and waters which are located within
> national territory, originally corresponds to the Nation, which has had and does
> have the right to transfer proprietary interests thereof to individuals".

From a legal point of view, Article 27 of the Mexican Constitution clearly sets forth the

authority by which federal lands, waters, and interests, can be transferred to individuals.

(See Exhibit C, Declaration and Expert Report of Sergio Elias Gutierrez Salazar)

7.   Pursuant to Article 40 of the Mexican Constitution, "The Mexican people

willingly constitute itself as a representative, democratic and Federal Republic integrated

by States which are free and sovereign in order to organize their internal regimes but

which are also united as a Federation established under this Constitution's principles.

8.   Under Chapter II of the Mexican Constitution, identified as The Federations

Members and the National Territory, Article 42 states that "The national territory shall be

integrated by:

I.      The Federation's integrant portions;
II.     The islands, including all riffs and cays within the adjacent seas;
III.    Both Guadalupe and Revillagigedo islands which are located in the Pacific
        Ocean;
IV.     The continental shelf and the seafloor of islands, cays, and riffs;
V.      The territorial seas' waters according to the extension and conditions
        imposed by International Law as well as all inland maritime waters; and
VI.     The space located above the national territory according to the extension
        and modalities imposed by International Law.

9.   Under Article 43 of the Mexican Constitution, "The Federations' integrating

portions are States as follows……Quintana Roo……Tamaulipas…….Veracruz……..".

The States, listed in Article 43 of the Mexican Constitution, under Article 46, "can enter

into agreements with each other in order to set down borders dividing them; however, in every case, such agreements must be approved by the Congress."

10.   Under Article 48, the jurisdiction of the Federal Government shall not be extended to the islands, which are currently under State jurisdiction.

11.   The Mexican Constitution further states in Section III, delineated as Congressional Powers, Article 73, that "The Congress shall have the power: To legislate for the activities on environmental protection and on environmental preservation and restoration directed by the Federal, States and Municipal Governments in a concurrent way and according to their respective jurisdictions." Article 73, Section XXIX-G of the Mexican Constitution expresses that based on the principle of concurrency, the Federal Government, the governments of each State, and the Municipalities in each State must and should intervene and act in conjunction when protecting, preserving and restoring the environment and ecological balance of the Gulf of Mexico, as in this particular case each of the individual Plaintiff States acted and intervened in protecting, preserving, and restoring the environment of its Gulf of Mexico Waters.

12. Article 73 places a special emphasis on concurrency, as a necessity for the proper protection of the environment, placing such burden on all three levels of government in Mexico. Concurrence is not a limitation over State´s faculties, but rather as the vehicle by means of which each State can properly act and assume federal duties over specific issues, as well as the obligation of the Federal Government to create the means for each State to be able to act in such a manner. As a mater of law, the States themselves are vested with the rights and obligations of custody, control, governance, regulation, development, exploitation, and management of such areas, and they are

legally entitled to defend such matters as their proprietary interests over such beaches, shores, marshes, harbors, estuaries, bayous, bays, and waters, as well as to act in defense of the wildlife and plant life found thereon, such proprietary interests do indeed belong to the States, considering that, even if Article 27 of the Constitution covers such assets for the Federation, Articles 116 Section VII, Article 73 Section XXIX, and Article 124 of the Constitution provide for the transfer of such rights to the States, in full compliance with the purposes mentioned in the Coordination Agreements, Decrees, Grants, and other instruments authorized by the Mexican Constitution and Mexican law, all of which set forth the objective of achieving social and economic development in favor of each State´s population. (Please See Guabardi Expert Report as Exhibit B; and Mexican Constitution Attached as Exhibit A and also Identified in Attachment 2A-1, Document 1 of Plaintiffs Disclosures).

## II.   Concurrent Powers between the Federal Republic and States – Proprietary Interests

13. Mexican constitutional theory acknowledges two categories of concurrent powers: (a) concurrent powers on matters that may be regulated and administrated by the States of the Union because the Mexican Congress has not yet legislated upon topics assigned to the Federal Government, and (b) coincidental concurrent powers, that is when various of the constituent parts of the Mexican Republic may act upon the same field. The Mexican Supreme Court in an Opinion issued on the Concurrent Powers in the Mexican Legal System that:

> . . . the reformer of the Constitution has provided for various clauses through which the Congress of the Union may establish a distribution of jurisdiction among the Federal Union, the Federated States and the Municipalities, and even the Federal District, called "concurrent powers", in matters such as: education (articles 3, section VIII, and 73, section XXV), health (articles 4, third paragraph, and 73, section XVI),

human settlements (articles 27, third paragraph, and 73, section XXIX-C), public security (article 73, section XXIX-C), **the environment (article 73, section XXIX-G),** civil protection (article 73, section XXIX-I) and sports (article 73, section XXIX-J). Accordingly, in the Mexican legal system, concurrent powers concludes that the States which make up the Federal Union, as well as the Federal District, the Municipalities and the Federal Union, may act upon the same matters, but the Congress of the Union shall be the one establishing the form and terms corresponding to each one of them through a general statute. (See Guabardi Expert Report pg. 86-87 attached hereto as Exhibit B).

14. The concurrent coincidental powers of the States of Tamaulipas, Veracruz Quintana Roo, and the Federal Government – exist in such areas as where the National interest are shared between the Federal Government and the State Governments and they are implemented to resolve and manage specific issues of National – and therefore common – interest between the Federal Government and the State Governments.

15. The intent of the Mexican Constitution on concurrent coincidental powers, the specific powers and proprietary rights established by the Constitutions of the States of Tamaulipas, Veracruz and Quintana Roo on their own territory, as well as the ones of the Municipalities thereto, these rights and powers are ratified through the various Administrative Agreements and Coordination Agreements entered into between these States and the Federal Government in matters of Tourism, Environment, Sustainable Development, and de-incorporation from the public domain of federal lands reclaimed from the sea.

16. The Administrative Agreements incorporated in the Expert Report of Dr. Carlos Gabuardi (Exhibit B), identify areas of federal land grants and concessions reclaimed from the sea to the State of Tamaulipas, Veracruz, and Quintana Roo.

17. The Administrative Agreements, Coordination Agreements, and Resolutions that de-incorporate from the public domain of the Mexican Federation, and that vest the States

of Tamaulipas, Veracruz, and Quintana Roo with the rights and obligations of custody, control, governance, regulation, development, exploitation, vigilance, maintenance and management of such areas include but are not limited to the following documents:

**STATE OF TAMAULIPAS**

1. Decree By Means Of Which The Region Known As The Laguna Madre Y Delta Del Rio Bravo, Located In The Municipalities Of The State Of Matamoros, San Fernando And Soto La Marina, In The State Of Tamaulipas, With A Total Surface Of 572,808-60-94.22 Hectares, Is Hereby Declared A Natural Protected Area, With Special Consideration For Plants And Wildlife Document (*Plaintiffs' Disclosures Document No. 324 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 38*)

2. Resolution whereby the Federation divests the public ownership of a surface which measures 5,141.86 square meters reclaimed from the sea, located in Playa Miramar, Zona Norte, Ciudad Madero, Tamaulipas, and whereby the sale of such land, for good and valuable consideration, to Mrs. Maria del Pilar Consuelo Perez Ortega is approved. *(Plaintiffs' Disclosures Document No. 58 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg.43)*

3. Resolution whereby the Federation divests the public ownership of a surface which measures 1,108.58 square meters reclaimed from the sea, located in Playa Miramar, Zona Norte, Fraccionamiento Villas del Mar 1, Ciudad Madero, Tamaulipas, and whereby the sale of such land, for good and valuable consideration, to Mr. Cesar Joaquin Luna Ruiz *(Plaintiffs' Disclosures Document No. 59 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg.*45

4. Resolution whereby the Federation divests the public ownership of a surface which measures 1,592.87 square meters reclaimed from the sea, located in Colonia los Caracoles, Playa Miramar, Zona Norte, Ciudad Madero, Tamaulipas, and whereby the sale of such land, for good and valuable consideration, to Ms. Laura Beatriz Caballero Collado, is approved *(Plaintiffs' Disclosures Document No. 60 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 47*)

5. Resolution whereby the Federation divests the public ownership of a surface which measures 5,694.04 square meters reclaimed from the sea, located in Playa Miramar, Ciudad Madero, State of Tamaulipas, and whereby the sale of such land, for good and valuable consideration, to Mr. Gerardo Pinto Rodríguez, is approved *(Plaintiffs' Disclosures Document No. 61 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg.*49)

6.  Resolution whereby the Federation divests the public ownership of a surface which measures 4,351.02 square meters reclaimed from the sea, located in Playa Miramar, Ciudad Madero, State of Tamaulipas, and whereby the sale of such land, for good and valuable consideration, to Mrs. María de Jesús Flores Echavarría, is approved *(Plaintiffs' Disclosures Document No. 62 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 51)*

7.  Resolution whereby the Federation divests the public ownership of a surface which measures 507.22 square meters reclaimed from the sea, located in Miramar, Ciudad Madero, State of Tamaulipas, and whereby the sale of such land, for good and valuable consideration, to Mr. Alejandro Ochoa Gracia, is approved *(Plaintiffs' Disclosures Document No. 63 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 52)*

8.  Resolution whereby the Federation divests the public ownership of a surface which measures 1,704.52   square meters reclaimed from the sea, located in Miramar, Ciudad Madero, State of Tamaulipas, and whereby the sale of such land, for good and valuable consideration, to Mr. Oscar Hernández Gutiérrez., is approved. *(Plaintiffs' Disclosures Document No. 64 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 54)*

9.  Resolution whereby the Federation divests the public ownership of a surface which measures 1,198.25 square meters reclaimed from the sea, located in Miramar, Ciudad Madero, State of Tamaulipas, and whereby the sale of such land, for good and valuable consideration, to Mrs. Otilia Pinete Vargas, is approved *(Plaintiffs' Disclosures Document No. 64 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 56)*

10. Agreement by means of which the surface of 801,408.43 square meters, made up by 684,366.65 square meters of the federal coastal zone and 117,042.18 square meters of land reclaimed from the sea, is destined to the service of the Government of Tamaulipas, such land being found in La Pesca, Municipality of Soto la Marina, State of Tamaulipas, so it may be used for the purpose of establishing a public beach to be enjoyed by national and international tourists, *(Plaintiffs' Disclosures Document No. 53 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 92)*

11. Coordination Agreement entered into by the Ministry of the Environment, Natural Resources and Fishing, the State of Tamaulipas and the Municipalities of Matamoros, San Fernando, Soto La Marina, Aldama, Altamira and Ciudad Madero, for the sustainable utilization, enjoyment and taxation of the beaches, federal maritime-land zone, and land reclaimed from the sea, in the coastal municipalities of such State. *(Plaintiffs' Disclosures Document No. 54 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 206)*

12. Coordination Agreement entered into by the Ministry of Tourism and the State of Tamaulipas. *(Plaintiffs' Disclosures Document No. 73 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 210)*

13. Coordination Agreement on Tourism Development Matter entered into by the Ministry Finance and Public Credit, Administrative Development, Finance Office and Tourism; and the State of Tamaulipas. *(Plaintiffs' Disclosures Document No. 74 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 212)*

14. Addendum To The Agreement For Regional Progress (Coahuila, Nuevo Leon, Tamaulipas And Texas), Executed By Enrique Martinez Y Martinez (Former Governor Of The State Of Coahuila), Jose Natividad Gonzalez Paras (Former Governor Of The State Of Nuevo Leon), Tomas Yarrington Ruvalcaba (Former Governor Of Tamulipas), Jose Reyes Baeza Terrazas (Former Governor Of The State Of Chihuahua) And Rick Prry (Former Governor Of The State Of Texas); Executed On October 21, 2004. *(Plaintiffs' Disclosures Document No. 318 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 235)*

15. Agreement For Regional Progress (Coahuila, Nuevo Leon, Tamaulipas And Texas), Executed By Enrique Martinez Y Martinez (Former Governor Of The State Of Coahuila), Jose Natividad Gonzalez Paras (Former Governor Of Nuevo Leon), Tomas Yarrington Ruvalcaba (Former Governor Of Tamulipas), And Rick Prry (Former Governor Of The State Of Texas); Executed On June 22, 2004, *(Plaintiffs' Disclosures Document No. 317 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 235)*

16. The Joint Contingency Plan Between The United Mexican States and The United States of America Regarding Pollution of the Marine Environment by Discharges of Hydrocarbons or Other Hazardous Substances (The Mexus Plan) signed in February, 2000 in Mexico City by the Vice Commandant of the U.S. Coast Guard and the Chief of the General Staff of the Mexican Navy, where the State of Tamaulipas, along with the State of Texas, has a significant role in the International Joint Response Team under the Mexus Plan. February 25, 2000, *(Plaintiffs' Disclosures Document No. 41, 42, and 43 in Attachment 2B, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 235)*

**STATE OF VERACRUZ**

1. Resolution whereby the Federation divests the public ownership of a surface which measures 677.92 square meters of land reclaimed from the sea, located in Ruiz Cortines 3450, Playa de Oro, Playa Mocambo, Municipality of Boca de Río, State of Veracruz, and whereby the sale of such land, for good and valuable consideration, to Mr. Alberto Cuevas Trujillo is approved. *(Plaintiffs' Disclosures*

*Document No. 145 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 58)*

2. Resolution whereby the Federation divests the public ownership of a surface which measures 8,743.51 square meters of land reclaimed from the sea, located at beach Riachuelos, in the Municipality of Tecolutla, State of Veracruz, and whereby the sale of such land, for good and valuable consideration, to Mr. Tito Oscar Vidaurri del Castillo is approved. *(Plaintiffs' Disclosures Document No. 146 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 60)*

3. Resolution whereby the Federation divests the public ownership of a surface which measures 464.35 square meters of land reclaimed from the sea and the actual works, located street Ruiz Cortines 4300, Mocambo, Municipality Boca, State of Veracruz, and whereby the sale of such land, for good and valuable consideration, Desarrollo Turistico del Golfo S.A. de C.V., is approved. *(Plaintiffs' Disclosures Document No. 147 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 62)*

4. Resolution whereby the Federation divests the public ownership of a surface which measures 512.80 square meters of land reclaimed from the sea, located street Moctezuma, Villa Rica Golf Course Residencial Condominums, Municipality of Alvarado, State of Veracruz, and whereby the sale of such land, for good and valuable consideration, Mr. Jose Guillermo Herrera Mendoza is approved. *(Plaintiffs' Disclosures Document No. 148 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 63)*

5. Resolution whereby the Federation divests the public ownership of a surface which measures 10,892.31 square meters of land reclaimed from the sea as well as the actual works, located at Barra Juan Angel, Municipality of Ursulo Galvan, State of Veracruz, and whereby the sale of such land, for good and valuable consideration, Mr. Carlos Martinez Fernandez is approved. *(Plaintiffs' Disclosures Document No. 149 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 65)*

6. Resolution whereby the Federation divests the public ownership of a surface which measures 262.27 square meters of land reclaimed from the sea, located at Playa Villa Rica, Municipality of Actopan, State of Veracruz, and whereby the sale of such land, for good and valuable consideration, Mr. Alfonso Robles Rodríguez is approved. *(Plaintiffs' Disclosures Document No. 150 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 67)*

7. Resolution whereby the Federation grants the right to use and enjoy the national assets consisting of Federal maritime zone, in order to construct and operate a private marina named as El Dorado Marina Residencial, located at Mandinga, in the Municipality of Boca del Rio, State of Veracruz, to Promotora y Constructora

Estero de Mandiga, S.A. de C.V. *(Plaintiffs' Disclosures Document No. 151 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 69)*

8. Resolution whereby the Federation divests the public ownership of a surface which measures 302.07 square meters of land reclaimed from the sea, located at Boca del Rio, Municipality of Boca del Rio, State of Veracruz, and whereby the sale of such land, for good and valuable consideration, Mr. José Manuel Ceballos García is approved. *(Plaintiffs' Disclosures Document No. 152 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 72)*

9. Coordination Agreement entered into by the Ministry of the Environment, Natural Resources and Fishing, the State of Veracuz-Llave and the Municipalities of Veracruz, Tuxpan, Coatzacoalcos, Boca del Río, Tecolutla, Alvarado, Actopan, Ursulo Galván, Tamiahua, Cazones de Herrera, Tampico Alto, Catemaco, San Andrés Tuxtla, Vega de Alatorre, Alto Lucero, Nautla, Agua Dulce, Papantla, Ozuluama, La Antigua, Lerdo de Tejada, Angel R. Cabada, Tatahuicapan, Mecayapan, Pajapán, Tamalín, Tantima, Medellín, Pánuco, Pueblo Viejo and Martínez de la Torre, for the sustainable utilization, enjoyment and taxation of the beaches, federal maritime-land zone, and land reclaimed from the sea, at the coastal municipalities of the State of Veracuz. *(Plaintiffs' Disclosures Document No. 138 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 214)*

STATE OF QUINTANA ROO

1. Resolution whereby the Federation divests the public ownership of a surface which measures 4,330.14 square meters of land reclaimed from the sea, located at Punta Nizuc, Cancun, Municipality of Benito Juarez, State of Quintana Roo, and whereby the sale of such land, for good and valuable consideration, Mr. Javier Ramirez Garcia is approved. *(Plaintiffs' Disclosures Document No. 104 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 74)*

2. Resolution whereby the Federation divests the public ownership of a surface which measures 718.89 square meters of land reclaimed from the lagoon, located at Cancun, Municipality of Benito Juarez, State of Quintana Roo, and whereby the sale of such land, for good and valuable consideration, Apaseo del Caribe, S.A. de C.V. is approved. *(Plaintiffs' Disclosures Document No. 107 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 76)*

3. Resolution whereby the Federation divests the public ownership of a surface which measures 1,832.93 square meters of land reclaimed from the lagoon located at Cancun, Municipality of Benito Juarez, State of Quintana Roo, and whereby the sale of such land, for good and valuable consideration, to Operadora Ya lma k an, S.A. de C.V., for the purpose of using it for the completion of the existing tourist

development, is approved. *(Plaintiffs' Disclosures Document No. 129 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 78)*

4. Resolution whereby the Federation divests the public ownership of a surface which measures 4,358.40 m2 square meters of land reclaimed from the lagoon as well as the existing facilities and constructed works over such zone, located at Cancun, Municipality of Benito Juarez, State of Quintana Roo, and whereby the sale of such land, for good and valuable consideration, to BBVA Bancomer, S.A., Institución de Banca Múltiple, Grupo Financiero BBVA Bancomer, for the purpose of using for housing familiar apartments. *(Plaintiffs' Disclosures Document No. 130 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 80)*

5. Resolution whereby a surface of 5,082.25 m2 of Federal maritime-land zone located in SM-86, MZ 02, Plots 08 and 07, Cancun, is destined at the service of the Municipality of Benito Juarez, State of Quintana Roo, for public beach. *(Plaintiffs' Disclosures Document No. 93 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B)*

6. Resolution whereby a surface of 231.21 square meters of Federal maritime-land zone located in Petrel Norte, Playa del Carmen, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for public beach club with removable equipment, *(Plaintiffs' Disclosures Document No. 94 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B)*

7. Resolution whereby a surface of 250.37 square meters of Federal maritime-land zone located in Prolongación Av. 72 Norte, Playa del Carmen, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for public beach club with provisional and removable facilities. *(Plaintiffs' Disclosures Document No. 95 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 99)*

8. Resolution whereby a surface of 12,701.22 square meters of Federal maritime-land zone and land reclaimed from the sea, located in Circunvalación Aeropuerto número 245, Municipality of Isla Mujeres, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for the protection of marine turtles. *(Plaintiffs' Disclosures Document No. 96 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 103)*

9. Resolution whereby a surface of 247.35 square meters of Federal maritime-land zone, located in Cunaro de Piedra, Playacar Fase I, Playa del Carmen, Municipality of Isla Mujeres, State of Quintana Roo, is destined at the service of

the Municipality of Solidaridad, for the purpose of using such zone for public beach club with provisional and removable facilities. *(Plaintiffs' Disclosures Document No. 97 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 106)*

10. Resolution whereby a surface of 202.71 square meters of Federal maritime-land zone, located in Punta Bete (Velas) Playa del Carmen, Municipality of Isla Mujeres, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for public beach club. *(Plaintiffs' Disclosures Document No. 98 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 109)*

11. Resolution whereby a surface of 592.63 square meters of Federal maritime-land zone, located in 88 Norte, colonia Luis Donaldo Colosio, localidad de Playa del Carmen, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of  the Municipality of Solidaridad, for the purpose of using such zone for public beach club with removable and provisional facilities. *(Plaintiffs' Disclosures Document No. 99 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 113)*

12. Resolution whereby a surface of 289.64 square meters of Federal maritime-land zone, located in Punta Bete, Montecarlo, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for public beach club with removable and provisional facilities. *(Plaintiffs' Disclosures Document No. 100 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 116)*

13. Resolution whereby a surface of 192.47square meters of Federal maritime-land zone, located in Chetumal-Cancún, Bahías Punta Solimán, Municipality of Tulum, State of Quintana Roo, is destined at the service of the Municipality of Tulum, for the purpose of using such zone for protection. *(Plaintiffs' Disclosures Document No. 101 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 119)*

14. Resolution whereby a surface of 300.74 square meters of Federal maritime-land zone, located at Xcalacoco Sur, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for public beach club. *(Plaintiffs' Disclosures Document No. 102 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 123)*

15. Resolution whereby a surface of 240.60 square meters of Federal maritime-land zone, located at North Street, downtown, Playa del Carmen, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for public beach club with removable and provisional facilities. *(Plaintiffs' Disclosures Document No. 103 in*

*Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 126)*

16. Resolution whereby a surface of 219.13 square meters of Federal maritime-land zone, located at Street 8 Norte, Playa del Carmen, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for public beach club with removable and provisional facilities. *(Plaintiffs' Disclosures Document No. 105 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 129)*

17. Resolution whereby a surface of 199.39 square meters of Federal maritime-land zone, located at Gaviotas, Playa del Carmen, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for protection, surface maintenance. *(Plaintiffs' Disclosures Document No. 106 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 133)*

18. Resolution whereby a surface of 1,930.78 square meters of Federal maritime-land zone, located at Akumal, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for protection. *(Plaintiffs' Disclosures Document No. 108 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 136)*

19. Resolution whereby a surface of 17,590.28 square meters of Federal maritime-land zone, located at Isla Cozumel, Municipality of Cozumel, State of Quintana Roo, is destined at the service of the Municipality of Cozumel, for the purpose of using such zone as a public beach club. *(Plaintiffs' Disclosures Document No. 109 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 139)*

20. Resolution whereby a surface of 219.47 square meters of Federal maritime-land zone, located at Akumal, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for protection. *(Plaintiffs' Disclosures Document No. 110 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 142)*

21. Resolution whereby a surface of 251.96 square meters of Federal maritime-land zone, located at Downtown, Playa del Carmen, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for public beach club with removable and provisional facilities. *(Plaintiffs' Disclosures Document No. 111 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 146)*

22. Resolution whereby a surface of 271.70 square meters of Federal maritime-land zone, located at Downtown, Playa del Carmen, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for public beach club with removable and provisional facilities considering plastic chairs, tables and deck chairs, removable toilets and sunshades. *(Plaintiffs' Disclosures Document No. 112 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 149)*

23. Resolution whereby a surface of 8,570.85 square meters of Federal maritime-land zone, located Municipality of Cozumel, State of Quintana Roo, is destined at the service of the Municipality of Cozumel, for the purpose of using such zone as a public beach club. *(Plaintiffs' Disclosures Document No. 113 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 153)*

24. Resolution whereby a surface of 205.49 square meters of Federal maritime-land zone, located at Playa del Carmen, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for public beach club with removable and provisional facilities. *(Plaintiffs' Disclosures Document No. 114 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 156)*

25. Resolution whereby a surface of 212.66 square meters of Federal maritime-land zone, located at Tulum Costero, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for protection. *(Plaintiffs' Disclosures Document No. 115 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 159)*

26. Resolution whereby a surface of 216.38 square meters of Federal maritime-land zone, located at Akumal, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone as an adornment. *(Plaintiffs' Disclosures Document No. 116 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 162)*

27. Resolution whereby a surface of 333.97 square meters of Federal maritime-land zone, located at Akumal, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of maintaining the surface conditions of such zone. *(Plaintiffs' Disclosures Document No. 117 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 166)*

28. Resolution whereby a surface of 330.69 square meters of Federal maritime-land zone, located at Downtown, Playa del Carmen, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for

the purpose of using such zone as public beach club with removable and provisional facilities (plastic chairs, tables and deck chairs, removable toilets). *(Plaintiffs' Disclosures Document No. 119 in Attachment 2A-1, please also see Doctor Carlos Gabuardi's Expert Report Exhibit B, pg. 172)*

29. Resolution whereby a surface of 181.78 square meters of Federal maritime-land zone, located at Downtown, Playa del Carmen, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone as public beach club. *(Plaintiffs' Disclosures Document No. 120 in Attachment 2A-1, please also see Doctor Carlos Gabuardi's Expert Report Exhibit B, pg. 176)*

30. Resolution whereby a surface of 189.76 square meters of Federal maritime-land zone, located at Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for protection. *(Plaintiffs' Disclosures Document No. 121 in Attachment 2A-1, please also see Doctor Carlos Gabuardi's Expert Report Exhibit B, pg. 179)*

31. Resolution whereby a surface of 204.54 square meters of Federal maritime-land zone, located at Playa del Carmen, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for protection. *(Plaintiffs' Disclosures Document No. 122 in Attachment 2A-1, please also see Doctor Carlos Gabuardi's Expert Report Exhibit B, pg. 182)*

32. Resolution whereby a surface of 175.52 square meters of Federal maritime-land zone, located at Playa del Carmen, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for public beach club with removable and provisional facilities. *(Plaintiffs' Disclosures Document No. 123 in Attachment 2A-1, please also see Doctor Carlos Gabuardi's Expert Report Exhibit B, pg. 185)*

33. Resolution whereby a surface of 27,377.08 square meters of Federal maritime-land zone, located at Isla Cozumel, Municipality of Cozumel, State of Quintana Roo, is destined at the service of the Municipality of Cozumel, for the purpose of using such zone for public beach club. *(Plaintiffs' Disclosures Document No. 124 in Attachment 2A-1, please also see Doctor Carlos Gabuardi's Expert Report Exhibit B, pg. 189)*

34. Resolution whereby a surface of 110.62 square meters of Federal maritime-land zone, located at Playa Paraiso, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for protection and adornment. *(Plaintiffs' Disclosures Document No. 125 in Attachment 2A-1, please also see Doctor Carlos Gabuardi's Expert Report Exhibit B, pg. 192)*

35. Resolution whereby a surface of 229.36 square meters of Federal maritime-land zone, located at Akumal, Municipality of Solidaridad, State of Quintana Roo, is destined at the service of the Municipality of Solidaridad, for the purpose of using such zone for protection and adornment. *(Plaintiffs' Disclosures Document No. 126 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 196)*

36. Resolution whereby a surface of 11,410.57 square meters of Federal maritime-land zone, located at Isla Cozumel, Municipality of Cozumel, State of Quintana Roo, is destined at the service of the Municipality of Cozumel, for the purpose of using such zone for public beach club. *(Plaintiffs' Disclosures Document No. 127 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 199)*

37. Resolution whereby a surface of 776.13 square meters of Federal maritime-land zone, located at Municipality of Cozumel, State of Quintana Roo, is destined at the service of the Municipality of Cozumel, for the purpose of using such zone for public beach club. *(Plaintiffs' Disclosures Document No. 128 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 202)*

38. Coordination Agreement entered into by the Ministry of the Environment, Natural Resources and Fishing, the State of Quintana Roo and the Municipalities of Cozumel, Felipe Carrillo Puerto, Isla Mujeres, Othón P. Blanco, Benito Juárez, Lázaro Cárdenas y Solidaridad, for the sustainable utilization, enjoyment and taxation of the beaches, federal maritime-land zone, and land reclaimed from the sea, at the coastal municipalities of the State of Quintana Roo. *(Plaintiffs' Disclosures Document No. 78 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 218)*

39. Coordination Agreement entered into by the Governmental Ministy, Finances Ministry and the State of Quintana Roo. *(Plaintiffs' Disclosures Document No. 90 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 221)*

40. Coordination Agreement entered into by the Ministry of Government and the State of Quintana Roo. *(Plaintiffs' Disclosures Document No. 91 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 222)*

41. Coordination Agreement for the restoration of beaches entered into by the Ministry of Tourism and the State of Quintana Roo. *(Plaintiffs' Disclosures Document No. 132 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 223)*

42. Coordination Agreement for the professionalism of the tourism sector entered into by the Ministry of Tourism and the State of Quintana Roo. *(Plaintiffs' Disclosures*

*Document No. 133 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 225)*

43. Coordination Agreement entered into by the Ministry of Tourism and the State of Quintana Roo. *(Plaintiffs' Disclosures Document No. 134 in Attachment 2A-1, please also see Doctor Carlos Gabuardi´s Expert Report Exhibit B, pg. 226)*

## III.   STATE SOVEREIGNTY OVER TERRITORIES

### A.   State Constitutions – Proprietary Interests

### I.   State of Tamaulipas

18. Under Article 2 of the Constitution of the State of Tamaulipas (Attached as Exhibit D; Identified in Attachment 2A-1, Document 2 of Plaintiffs Disclosures), "The territory of the State includes the historical Province called New Santander, with the limitations made by the Treaty of Guadalupe Hidalgo." As a matter of historical fact, the State of Tamaulipas, has governed, defended and policed the interior maritime waters, the coasts and the adjacent seas and islands of Tamaulipas[1]. Furthermore the Mexican States of Tamaulipas, Veracruz and Quintana Roo shall act and respond in cases of emergencies, natural disasters or other urgent needs where the Federal Government does

---

[1] The following islands are adjacent to Mexico and the Laguna Madre, Laguna de Tamiahua and Laguna San Andrés in Tamaulipas: Isla Badillo, Isla Bayas, Isla Buen Paso, Isla Cascajal, Isla Champurrades, Isla Charco Largo, Isla Curricitos, Isla de Don Pancho, Isla de Garcia, Isla de la Lagana, Isla de la Liebre, Isla de la Mula, Isla de la Sal, Isla de la Soledad, Isla de la Vaca, Isla de las Garrapatas, Isla de las Mujeres, Isla de los Potros, Isla de los Trancos, Isla del Arpa, Isla del Caballo, Isla del Guero, Isla del la Yequa, Isla del Padre, Isla del Potrero, Isla del Te, Isla del Venada, Isla del Zacate, Isla Don Pancho, Isla El Carrizal, Isla El Chaparro, Isla El Cueno, Isla El Metate, Isla El Padre, Isla El Pano, Isla Federules, Isla Fusiles, Isla Garzas, Isla Higuerillas, Isla Huesos, Isla Jara, Isla La Conchillasa, Isla La Coyota, Isla La Florida, Isla La Mula, Isla La Narranja, Isla La Pita, Isla La Vaca, Isla La Yegua, Isla Labor, Isla Larga, Isla Las Garzas, Isla Las Vaquitas, Isla León, Isla Loma del Agua, Isla Los Bules, Isla Los Coconos, Isla Los Fustes, Isla Los Pelicanos, Isla Lu Perra, Isla Manzanas, Isla Mano de León, Isla Mata Grande, Isla Medano Alt, Isla Meleta, Isla Nopal, Isla Panaleros, Isla Potranca, Isla Poza Rica, Isla Prieta, Isla Punta Brava, Isla Quemada, Isla Remo, Isla Rincon del Gato, Isla Sal, Isla Santa Marie, Isla Tio Nicolás, Isla Tronconal, Isla Venados, Isla Verde e Islotes del Mezquital. Cfr.

not respond as quickly as required or abstains from performing its duties and responsibilities such as in natural disasters like hurricanes, earthquakes, floods, landslides, etc. (Please See Guabardi Expert Report, Exhibit B).

## II.        State of Veracruz

19. Under Article 3 the Constitution of the State of Veracruz (Attached as Exhibit D; Identified in Attachment 2A-1, Document 136 of Plaintiffs Disclosures), "The territory of the State has the extension and limits that it historically, including the capes, islands, islets adjacent to its seashore in conformity with that set forth by the Federal Constitution and the law. "As a matter of fact, the State of Veracruz, has governed, and historically defended and policed the interior maritime waters, the coasts and the adjacent seas, islands and islets of Veracruz.[2]

## III.       State of Quintana Roo

20. Under Article 46 of the Constitution of the State of Quintana Roo (Attached as Exhibit D; Identified in Attachment 2A-1, Document 77 of Plaintiffs Disclosures), "The territory of the State of Quintana Roo includes: II. The islands of Cozumel, Cancun, Mujeres, Blanca and Contoy, located in the Caribbean Sea and Holbox in the Gulf of Mexico, as well as the islands, islets, keys, reefs adjacent to its seashore." As a matter of fact, the State of Quintana Roo, has governed and still governs, defends and polices the

---

[2] The following islands are adjacent to the territory of Veracruz and the Laguna de Tamiahua in Veracruz: Isla del Frontón, Isla Lobos, Isla Pérez, Isla Verde, Isla Blanquilla, Isla la Galleguita, Isla de Sacrificios, Isla Anegada de Afuera, Isla Enmedio, Isla Salmedia, Isla el Rizo, Isla Anegadilla, Isla Cabezo, Isla Blanca, Isla San Juan de Ulua, Arrecife Santiaguillo, Isla Topetillo,  Isla Chopas, Isla del ídolo, Isla del Toro, Isla Juana Ramírez, Isla el Hospital, Isla los Pájaros, Isla Mata de Caballos e Islas Frijoles. Idem

interior maritime waters, the coasts and the adjacent seas, keys, reefs, islands and islets of Quintana Roo.[3]

21. Under the authority of their respective State Constitutions, the Governors of each one of these States, namely Tamaulipas, Veracruz and Quintana Roo, have the constitutional power and authority to act on behalf of their respective States and represent them. The Governors' authority to represent their respective States may be found in Article 91, section XXIII of the Constitution of the State of Tamaulipas, in correlation with Article 4 of the Constitution of the State of Tamaulipas and Article 115 firs paragraph of the Mexican Constitution; Article 49, sections XVIII & XXIII of the Constitution of the State of Veracruz in correlation with Article 115 firs paragraph of the Mexican Constitution; and Article 90, sections XIII & XVIII of the Constitution of the State of Quintana Roo, in correlation with Article 4 of the Constitution of the State of Tamaulipas and Article 115 first paragraph of the Mexican Constitution.

22. Additionally, there is no provision in the Mexican Constitution limiting the power and authority of the States constituent the Mexican Federation to represent their own interest and affairs, either domestically or internationally.  Moreover, under the authority of Article 1 of the Mexican Statute on the Signing of Treaties (*Ley Sobre la Celebración de Tratados*), the State Governments expressly authorizes State and Municipal Governments to enter into international agreements with one or more international

---

[3] In addition to the islands of Cozumel, Cancun, Mujeres, Blanca, Contoy and Holvox, the following islands are also locate adjacent to the seacoast of Quintana Roo: Banco Chinchorro, Isla la Pasión, Isla Boca Iglesias, Isla Cayo Cotuna, Isla Blanca, Isla Chai, Cayo Lobos, Cayo Blackford, Cayo Norte, Cayo Centro, Isla Zipital, Islote Cabeza de Coral and Cayo Culebra. Idem

foreign government agencies or with international organizations.  See Carlos Gabuardi Report or Exhibit "B" pg 233.

## IV.  FEDERAL DECREES GIVING SOVEREIGN STATE RIGHTS OF POSESSION, CONTROL, MAINTENANCE AND REPAIR OVER FEDERAL LANDS, FEDERAL MARITIME ZONE LANDS, AND LANDS OF THE SEA, ESTABLISHING PROPRIETARY INTEREST RIGHTS BY THE MEXICAN STATES

23. The Mexican States, including the States of Tamaulipas, Veracruz, and Quintana Roo are granted the right of control, maintenance, possession, and repair by Federal Decree or Statute, which grants exclusive rights of use and control over given territories that are identified as federal lands.  Examples of such include but are not limited to the Statute For the Use and Enjoyment of the Territorial Sea, Navigable Waterways, Beaches, The Federal Maritime Land Zone and Lands Reclaimed from the Sea (Reglamento para el Uso y Aprovechamiento del Mar Territoial, Vias Navegables, Playas, Zona Federal Maritimo-Terrestre y Terrenos Ganados al Mar) issued by the Mexican Federal Government on September 21, 1991 (Attached as Exhibit B; Identified in Attachment 2A-1, Document 5 of Plaintiffs Disclosures) which states in Article 22 of such document that:

> "The Ministry through the relevant agreement, devoted to the service of the departments and agencies of the federal government, the state or local governments, the federal maritime areas of land or land reclaimed from the sea or any other deposit maritime waters requiring use, profit or exploit."

Furthermore, Article 22 of states that:

> "The agencies of the federal government, or state governments or municipalities that meet the requirements of the Act and the Regulations shall have priority over individuals to use, profit or exploit the Federal Maritime Zone, land reclaimed container or other maritime waters.

24. The State of Tamaulipas, in an Agreement Issued on November 8, 2006, By Means of Which the Surface of 801,408.43 Square Meters, Made Up By 684,366.65 Square Meters of the Federal Coastal Zone and 117,042.18 Square Meters of Land Reclaimed From The Sea, Is Destined to the Service of the Government of Tamaulipas, such land being Found in La Pesca, Municpality of Soto La Marina, State of Tamaulipas, is a Federal Grant of Use and enjoyment by the State for Exploitation for the Purpose of Establishing a Public Beach to Be Enjoyed by National and International Tourists, is a direct example of the Federal Government's grant of use, exploitation, control, and possession to the State of Tamaulipas. (Attached as Exhibit B pg 92 ; Identified in Attachment 2A-1, Document 53 (the "La Pesca Grant") of Plaintiffs Disclosures)

25. In Exhibit B, the State of Tamaulipas was granted the right of use, possession and Control over land previously categorized as federal maritime land zone, and land reclaimed from the Sea. In said Agreement,

> "the State of Tamaulipas requested that the aforementioned land be destined to its service with the purpose of using it as a public beach for the use and enjoyment of national and international tourists……..
>
> Article 1, states that   "The land lot measuring 801,408.83 m2 made up by 684,366.65m2 of federal maritime land zone and 117,402.18 m2 of land reclaimed from the sea located in the town of La Pesca, Municipality of Soto la Marina State of Tamaulipas is hereby destined for the service of the Government of the State of Tamaulipas….

26. Exhibit B is factual example of the Federal Government's actual grant of use, possession, exploitation, and control, granted for the Service of the State of Tamaulipas, in which the State exercises proprietary interest rights over said land.

27. Another factual example of the Mexican Federal Government's decreed agreements with the States, is the Decree issued on May 14, 1998, identified as the

Coordination Agreement Entered Into by the Ministry of the Environment Natural Resources and Fishing and the State of Veracruz and identified Municipalities for the Sustainable Utilization, Enjoyment, and Taxation of the Beaches, Federal Maritime Land Zone, and Land Reclaimed From the Sea, for the Coastal Municipalities of the State of Veracruz. (Please See Exhibit B pg.214 Document 138 of Plaintiffs Disclosures). Under this Decree Agreement, the Mexican Federal Government through the Ministry of the Environment and the State of Veracruz set forth the following conditions for the Sustainable Utilization, Enjoyment, and Taxation of the Beaches, Federal Maritime Land Zone, and Land Reclaimed From the Sea within the State of Veracruz:

III. The special program for sustainable enjoyment of the beaches, federal maritime land zone and land reclaimed from the sea 1996-2000 sets forth among its principal objectives the establishment of an integral management of such beaches, federal maritime land zone and land reclaimed from the sea in order to ensure a sustainable enjoyment of our coastal natural resources and the right of all Mexicans to enjoy them, thereby cooperating with the planning and zoning of all coastal townships, encouraging investments and guaranteeing efficient administration

5. To fortify the institutional authority of State and Municipal Governments in matters of regulations in the federal maritime land zone and lands reclaimed from the sea with the purpose of ensuring a proper and correct collaboration of the operational management functions and control of the beaches, federal maritime land zone and land reclaimed from the sea.

SEVENTH          For proper compliancy of the objectives established herein, the State must: [...]

II. Channel its own resources in order to finance all operational actions of the programs for sustainable development of the federal maritime land zone within its territory.

28. Pursuant to this Decree Agreement entered into between the Mexican Federal Government and the State of Veracruz, the State has been granted the "operational management functions and control of the beaches, federal maritime land zone and land

reclaimed from the sea", in which the State of Veracruz must "channel its own resources in order to finance all operational actions of the programs for the sustainable development of the federal maritime land zone within its territory. This Decree Agreement between the Mexican Federal Government and the State of Veracruz is an example of the decrees issued by the Federal Government to the State over Federal Maritime Land Zones, in which the State is responsible for the sustenance, development, and control over previously identified federal maritime lands.

29. Another factual example of the Mexican Federal Government's decreed agreement with the States, is the Decree issued on October 2, 1998, identified as the Coordination Agreement Entered Into by the Ministry of the Environment Natural Resources and Fishing and the State of Tamaulipas and identified Municipalities for the Sustainable Utilization, Enjoyment, and Taxation of the Beaches, Federal Maritime Land Zone, and Land Reclaimed From the Sea, in the Coastal Municipalities of the State (Please See Exhibit B pg. 210; Identified as Attachment 2A-1, Document 54 of Plaintiffs Disclosures)

III. The special program for sustainable enjoyment of the beaches, federal maritime land zone and land reclaimed from the sea 1996-2000 sets forth among its principal objectives the establishment of an integral management of such beaches, federal maritime land zone and land reclaimed from the sea in order to ensure a sustainable enjoyment of our coastal natural resources and the right of all Mexicans to enjoy them, thereby cooperating with the planning and zoning of all coastal townships, encouraging investments and ensuring efficient administration.

5. To fortify the institutional authority of State and Municipal Governments in matters of regulations in the federal maritime land zone and lands reclaimed from the sea with the purpose of ensuring a proper and correct collaboration of the operational management functions and control of the beaches, federal maritime land zone and land reclaimed from the sea....

SEVENTH    For proper compliancy of the objectives established herein, the State must...

6.      To cooperate in all matters regarding control and vigilance performed by the SEMARNAP in the beaches, federal maritime land zone and land reclaimed from the sea providing any assistance whatsoever as may be required....

II.      Channel its own resources in order to finance all operational actions of the programs for sustainable development of the federal maritime land zone within its territory.

30. Pursuant to this Decree Agreement entered into between the Mexican Federal Government and the State of Tamaulipas, the State has been granted the "operational management functions and control of the beaches, federal maritime land zone and land reclaimed from the sea", in which the State of Tamaulipas must "channel its own resources in order to finance all operational actions of the programs for the sustainable development of the federal maritime land zone within its territory. This Decree Agreement between the Mexican Federal Government and the State of Tamaulipas is an example of the decrees issued by the Federal Government to the State over Federal Maritime Land Zones, in which the State is responsible for the sustenance, development, and control over previously identified federal maritime lands.

31. On November 2, 2004, the State of Veracruz was Decreed by form of Resolution from the Mexican Federal Government, A Surface of 5,082.01 Square Meters Made Up Of 1,843.26M2 Of Federal Maritime Land Zone and 3,238.78 Square Meters of Land Reclaimed from the Sea, Destined at The Service of the State Government of Veracruz (Please See Exhibit B pg. 214; Identified as Attachment 2A-1, Document 143 of Plaintiffs Disclosures). Subject to this Federal Decree granted to the State of Veracruz, the Decree states as follows:

Article 1      The surface of 5,082.01 m2 made up by 1,843.26 m2 of federal maritime land zone and 3,238.78 square meters of land reclaimed from the sea

located in the town of Raudal, Municipality of Nautla, State of Veracruz, is hereby granted to the service of the government of the State of Veracruz through the Ministry of the Environment so that they may be used as a turtle camp with the following technical and topographic description....

32. On April 14, 2005, the Mexican Ministry of the Environment and Natural Resources issued a Decree over the region known as the Laguna Madre and Delta of the Rio Bravo, in the State of Tamaulipas (attached as Exhibit E), in which the Decree States:

"DECREE by means of which the region known as the Laguna Madre y Delta del Rio Bravo, located in the Municipalities of the State of Matamoros, San Fernando and Soto La Marina, in the State of Tamaulipas, with a total surface of 572,808-60-94.22 hectares, is hereby declared a natural protected area, with special consideration for plants and wildlife (flora and fauna)."

The Decree in Article Five states that:

"The Ministry of the Environment and Natural Resources shall enter into coordination agreements with the Government of the State of Tamaulipas, including, in due case, the municipalities of Matamoros, San Fernando, and Soto La Marina, as well as consensual agreements with social and private sectors, in order to comply with the provisions of this Decree. Such instruments shall include, at least, the following:

I. The manner in which the Government of the State, the municipalities and the private and social sectors shall take part in the management of the protection zone for flora and fauna;.......
IV. The drafting of the management program for the protection zone, with the creation of specific commitments to be executed;
V. The origin and destination of the financial resources intended for the administration of the protection zone, when applicable;
VI. The coordination mechanisms for the drafting of municipal development plans, in order to ensure congruency with the management program for the protection zone;
VII. The manner in which all investigations, experimentation and monitoring shall be performed within the flora and fauna protection zone, pursuant with all applicable legal provisions;
VIII. The performance of inspection and vigilance actions;
IX. The actions needed in order to contribute to the socio-economic development of the region, by means of the sustainable exploitation of the natural resources in the flora and fauna protection zone;
X. The participation schemes for the community and other social, scientific and academic groups;

27

**XI.** The development of counseling programs for the sustainable exploitation of the natural resources in the region; and

**XII.** The development of actions, works and investments as needed for the compliance of the protection, conservation and monitoring objectives in the zone, particularly those intended to prevent pollution or contamination of the surface water, aquifers and soil, as well as to maintain the hydrodynamic regime of all bodies of water.

33. Pursuant to this Decree issued by the Mexican Federal Government to the State of Tamaulipas, the State Government is given authority to take part in the management of the protection zone for flora and fauna of the Laguna Madre and Rio Bravo. The Decree by law gives the State of Tamaulipas the right of development, protection, conservation, monitoring, investment, and management of funds for the protection and management of the flora and fauna which are identified as federal maritime zones and lands.  By way of Decree the State of Tamaulipas has the control and management obligations of the lands identified, and therefore has a direct proprietary interest in said lands.

**V.   STATUTES GRANTING ENFORCEMENT AND CONTROL TO THE STATES OVER FEDERAL LAND ZONES**

34. The General Statute on Wildlife (*Ley General de Vida Silvestre*) (Please See Exhibit B pg.30; Identified as Attachment 2A-1, Document 14 of Plaintiffs Disclosures) was enacted under the authority of Articles 27 and 73 Sec. XXIX-G of the Mexican Constitution. Under Articles 7, 8, 10, and 13 the General Statute on Wild Life*; (See Guabardi Expert Report pg. 30 and also* Exhibit M; Identified as Document 14 of Plaintiffs Disclosures) the State of Tamaulipas, Veracruz and Quintana Roo and Municipalities in those States are in charge of developing the local policy of their own State and Municipality on wild life matters in addition to supporting the enforcement of national policies and legislation.  Articles 112 and 14 of the General Statute on Wildlife provides for the enforcement and implementation of coordination agreements between

28

the Federal Government and the States and Municipalities for the enforcement by the States of their policies.

35. The General Statute on Sustainable Fisheries and Aquaclulture (Ley General de Pesca y Acuacultura Sustentables) was encacted under the authority of Article 73 Sec. XIX-L of the Mexican Constitution. Article 13 and 15 of the General Statute on Sustainable Fisheries and Aquaculture (*See Exhibit B pg. 31 and* Exhibit N), states that the Mexican State Governments are in charge, among other matters, of developing and enforcing State policies and programs on fisheries and sustainable aquaculture in coordination with national programs, and also responsible for developing and enforcing State vigilance and inspection measures in coordination with the Federal Government. Furthermore, under Article 15 of the General Statute on Sustainable Fisheries and Aquaculture the Legislatures of each state (including the states of Tamaulipas, Veracruz and Quintana Roo) are authorized to enact legislation on matters of their own jurisdiction, and shall also provide the administrative legal measures required for the enforcement of such legislation. (*See Exhibit B pg. 32*)  This federal statute authorizes the States the direct right to enact legislation for the enforcement and protection over their proprietary interests as it pertains to fisheries, aquaculture, flora and fauna within their state jurisdiction.

## VI. MEXICAN FEDERAL GOVERNMENT'S CONSTITUTIONAL AUTHORITY TO DE-INCORPORATE AND SELL FEDERAL MARITIME ZONE LAND AND LAND RECLAIMED FROM THE SEA AND TRANSFER TITLE BY SALE TO PRIVATE INDIVIDUALS AND CORPORATIONS

36. The Mexican Federal Government for many years now, thru the issuance of Administrative Agreements and Decrees has had the authority and power to de-

incorporate lands under the federal domain of the Mexican Federation and sell and transfer title to such lands to private individuals and corporations. Such land transfers and sales of lands, include federal lands, lands adjacent to and on Mexican coastlines, and lands considered to be on Mexican maritime zones.  The Mexican Federal Government thru the authority granted to it under the Mexican Constitution has dictated numerous Administrative Agreements by which it has sold and transferred title to lands in the States of Tamaulipas, Veracruz, and Quintana Roo. These Administrative Agreements duly recognized and recorded allows the de-incorporation of federal lands in favor of individuals and corporations, which allows for the transfer of title to said persons or corporations. These Administrative Agreements allow for the transfer of title of federal lands by the authority granted to the Mexican Federal Government and its Federal Agencies in the Mexican Constitution, allow the Mexican Federal Government to sell the federal lands to individuals or corporations by the authority granted to it in the Mexican Constitution. Some of the examples of these Administrative Agreements include but are not limited to:

Federal Lands in the State of Tamaulipas which have been sold by the Mexican Federal Government to individual residents of the State of Tamaulipas as allowed by law include but are not limited to:

1. Administrative Agreement by means of which an area of 5,141.86 square meters of land reclaimed from the sea, located at Playa Miramar, North Zone, Municipality of Ciudad Madero, Tamaulipas, is de-- ‐ incorporated from the public domain of the federation, authorizing its sale for a price in favor of Ms. María del Pilar Consuelo Pérez Ortega, which was published in the Official Journal of the Federation of February 27, 2012. (See Guabardi Expert Report pg. 44, Exhibit B; Identified as Attachment 2A-1, Document 58 of Plaintiffs Disclosures).

2. Administrative Agreement by means of which an area of 1,108.58 square meters of land reclaimed from the sea, located at Playa Miramar, North Zone, Subdivision Villas del Mar 1, Municipality of Ciudad Madero, Tamaulipas, is de-

- - incorporated from the public domain of the federation, authorizing its sale for a price in favor of Mr. César Joaquín Luna Ruiz, which was published in the Official Journal of the Federation of July 7, 2010. (See Guabardi Expert Report pg. 45, see Exhibit B; Identified as Attachment 2A-1, Document 59 of Plaintiffs Disclosures)

3. Administrative Agreement by means of which an area of 1,592.87 square meters of land reclaimed from the sea, located at subdivision Los Caracoles, Playa Miramar, North Zone, Municipality of Ciudad Madero, Tamaulipas, is de-- - incorporated from the public domain of the federation, authorizing its sale for a price in favor of Ms. Laura Beatriz Caballero Collado, which was published in the Official Journal of the Federation of July 7, 2010. (See Guabardi Expert Report pg. 47, Exhibit B; Identified as Attachment 2A-1, Document 60 of Plaintiffs Disclosures).

4. Administrative Agreement by means of which an area of 5,694.04 square meters of land reclaimed from the sea, located at Playa Miramar, South Zone, Municipality of Ciudad Madero, Tamaulipas, is de-- - incorporated from the public domain of the federation, authorizing its sale for a price in favor of Mr. Gerardo Pínto Rodríguez, which was published in the Official Journal of the Federation of March 13, 2012. (See Guabardi Expert Report pg. 49, Exhibit B; Identified as Attachment 2A-1, Document 61 of Plaintiffs Disclosures).

5. Administrative Agreement by means of which an area of 1,198.25.22 square meters of land reclaimed from the sea, located at section w, lot D, Los Caracoles Avenue, Playa Miramar, North Zone, Municipality of Ciudad Madero, State of Tamaulipas, is de-- - incorporated from the public domain of the federation, authorizing its sale for a price in favor of Ms. Otilia Pinete Vargas, which was published in the Official Journal of the Federation of December 13, 2011. (See Guabardi Expert Report pg. 56, Exhibit B; Identified as Attachment 2A-1, Document 65 of Plaintiffs Disclosures).

(Please see Guabardi Expert Report pgs. 43-56, Exhibit B, for a list of the Administrative Agreements through which the Mexican Federal Government has de-incorporated Federal Lands and Sold the Federal Lands Reclaimed From the Sea and transferred title thereto in favor of individuals and corporations in the State of Tamaulipas).

Federal Lands in the State of Veracruz which have been sold by the Mexican Federal Government to individual residents of the State of Veracruz as allowed by law include but are not limited to:

1. Administrative Agreement by means of which an area of 677.92 square meters of land reclaimed from the sea, located at 3450 Ruiz Cortínez Avenue, subdivision Playa de Oro, location Mocambo Beach, hotel zone, Municipality of Boca de Río, State of Veracruz, is de-- - incorporated from the public domain of the federation,

authorizing its sale for a price in favor of Mr. Alberto Cuevas Trujillo, which was published in the Official Journal of the Federation of January 1, 2012. (See Guabardi Expert Report p. 58, Exhibit B; Identified as Attachment 2A-1, Document 145 of Plaintiffs Disclosures).

2. Administrative Agreement by means of which an area of 464.35 square meters of land reclaimed from the sea and existing works, located at 4300 Ruiz Cortínez Avenue, Mocambo, Municipality of Boca de Río, State of Veracruz, is de-- - incorporated from the public domain of the federation, authorizing its sale for a price in favor of Desarrollo Turístico del Golfo, S.A. de C.V., which was published in the Official Journal of the Federation of February 24, 2012. (See Guabardi Expert Report pg. 62, Exhibit B; Identified as Attachment 2A-1, Document 147 of Plaintiffs Disclosures).

3. Administrative Agreement by means of which an area of 10,892.31 square meters of land reclaimed from the sea and existing works, located at the locality of Barra Juan Ángel, Municipality of Ursulo Galván, State of Veracruz de Ignacio de la Llave, is de-- - incorporated from the public domain of the federation, authorizing its sale for a price in favor of Mr. Carlos Martínez Fernández, which was published in the Official Journal of the Federation of October 4, 2010. (See Guabardi Expert Report pg. 65, Exhibit B; Identified as Attachment 2A-1, Document 149 of Plaintiffs Disclosures).

4. Grant made in favor of Promotora y Constructora Estero de Mandinga, S.A. de C.V., for the use and exploitation of a maritime zone included in the assets in the federal domain of the federation for the construction and operation of a marina for private use known as El Dorado Residential Marina, located in the estuary Mandinga, Municipality of Boca del Rio, State of Veracruz, which was published in the Official Journal of the Federation of March 30, 2010. (See Guabardi Expert Report pg. 69, Exhibit B; Identified as Attachment 2A-1, Document 151 of Plaintiffs Disclosures).

5. Administrative Agreement by means of which an area of 302.07 square meters of land reclaimed from the sea, located at March 21 Street without number, between Allende Street, Independencia Street and Del Mar Boulevard, subdivision Pescadores, town of Boca del Río, Municipality of Boca del Río, State of Veracruz, is de-- - incorporated from the public domain of the federation, authorizing its sale for a price in favor of Mr. José Manuel Ceballos García, which was published in the Official Journal of the Federation of July 24, 2009. (See Gubardi Expert Report pg. 72, Exhibit B; Identified as Attachment 2A-1, Document 152 of Plaintiffs Disclosures).

(Please see Guabardi Expert Report, Exhibit B, pgs. 58-72, for a list of the Administrative Agreements through which the Mexican Federal Government has de-incorporated Federal Lands and Sold the Federal Lands Reclaimed From the

Sea and transferred title thereto in favor of individuals and corporations in the State of Veracruz).

Federal Lands in the State of Quintana Roo which have been sold by the Mexican Federal Government to individual residents of the State of Quintana Roo as allowed by law include but are not limited to:

1. Administrative Agreement by means of which an area of 4,330.14 square meters of land reclaimed from the sea, located at Punta Nizuc, Hotel Zone, Cancún, Municipality of Benito Juárez, State of Quintana Roo, is de-- ‐ incorporated from the public domain of the federation, authorizing its sale for a price in favor of Mr. Javier Ramirez García, which was published in the Official Journal of the Federation of January 4, 2012. (See Guabardi Expert Report pg. 74, Exhibit B; Identified as Attachment 2A-1, Document 104 of Plaintiffs Disclosures)

2. Administrative Agreement by means of which an area of 718.89 square meters of land reclaimed from the sea and existing works, located at Boulevard Kukulcán kilometers 15+035 to 16+609, Hotel Zone, Cancún, Benito Juarez, State of Quintana Roo, is de-- ‐ incorporated from the public domain of the federation, authorizing its sale for a price in favor of Apaseo del Caribe, S.A. de C.V., which was published in the Official Journal of the Federation of April 12, 2011. (See Guabardi Expert Report pg. 76, Exhibit B; Identified as Attachment 2A-1, Document 107 of Plaintiffs Disclosures).

3. Administrative Agreement by means of which an area of 1832.93 square meters of land reclaimed from the Lagoon of Nichupté, located kilometer 19+500, Boulevar Kukulcán to 16+609, track of land 66, City of Cancún, Municipality of Benito Juarez, State of Quintana Roo, is de-- ‐ incorporated from the public domain of the federation, authorizing its sale for a price in favor of Operadora Ya Ima k an, S.A. de C.V., to be used to complement the existing tourist development, which was published in the Official Journal of the Federation of July 3, 2009. (See Guabardi Expert Report pg. 78, Exhibit B; Identified as Attachment 2A-1, Document 129 of Plaintiffs Disclosures).

4. Administrative Agreement by means of which an area of 14,358.40 square meters of land reclaimed from the Lagoon and the infrastructures and buildings in the same, located in front of privative units 18 ‐ 04 ‐ 08 and 18 ‐ 04 ‐ 09, block 52, Cancún hotel zone, Municipality of Benito Juarez, State of Quintana Roo, is de-- ‐ incorporated from the public domain of the federation, authorizing its sale for a price in favor of BBVA Bancomer, S.A., Institución de Banca Múltiple, Grupo Financiero BBVA Bancomer, trust agent of Trust No. F/22824-- ‐ 7, to be used for building single family housing units, which was published in the Official Journal of the Federation of November 24, 2005. (See Guabardi Expert Report pg. 80, Exhibit B; Identified as Attachment 2A-1, Document 130 of Plaintiffs Disclosures).

(Please see Guabardi Expert Report, Exhibit B, pgs. 74-80, for a list of the Administrative Agreements through which the Mexican Federal Government has de-incorporated Federal Lands and Sold the Federal Lands Reclaimed From the Sea and transferred title thereto in favor of individuals and corporations in the State of Quintana Roo).

## VII.   BP EXPLORATION & PRODUCTION, INC., CRIMINAL CONDUCT AND PLEA AGREEMENT WITH THE U.S. DEPARTMENT OF JUSTICE

37. BP Exploration and Production, Inc., has admitted to engaging in criminal actions, some of which resulted in the deaths of eleven persons and other actions involving "corrupt" practices. BP pled guilty to violating the following federal laws in connection with BP's conduct relating to the *Deepwater Horizon* blowout, explosion, oil spill and response:

1.      Eleven counts of violations of 18 U.S.C. §1115 through which the lives of eleven individuals were lost (Misconduct or Neglect of Ship Officers);
2.      One count of a violation of 18 U.S.C. § 1505 (Obstruction of Congress);
3.      One misdemeanor count of a violation of 33 U.S.C. §§1319(c)(1)(A) and 1321(b)(3)(Clean Water Act); and
4.      One misdemeanor count of a violation of 16 U.S.C. §§703 and 707(a) (Migratory Bird Treaty Act)
        (P. 1, Guilty Plea Agreement filed 11/15/12—Attached hereto as Exhibit F).

38. By violating and pleading guilty to one misdemeanor count of 16 U.S.C. §703, BP Exploration and Production, Inc., BP Exploration and Production, Inc., has also violated the Convention for the Protection of Migratory Birds and Game Mammals, signed between the United States and the United Mexican States on February 7, 1936, which states in part:

"Whereas, some of the birds denominated migratory, in their movements cross the United States of America and the United Mexican States, in which countries they live temporarily;

Whereas, it is right and proper to protect the said migratory birds, whatever may be their origin, in the United States of America and the United Mexican States, in order that the species may not be exterminated;

Whereas, for this purpose it is necessary to employ adequate measures which will

34

permit a rational utilization of migratory birds for the purpose of sport as well as for food, commerce and industry;"

(See Attached Exhibit G, for the Convention for the Protection of Migratory Birds and Game Mammals, signed between the United States and the United Mexican States on February 7, 1936)

39. BP Exploration and Production, Inc. "On or about and between April 20, 2010, and December 31, 2010, in the Eastern District of Louisiana and **elsewhere** (*emphasis added*), BP did unlawfully kill and cause to be killed one or more migratory birds, including Brown Pelicans, Laughing Gulls, Northern Gannets, **and other protected species** (*emphasis added*), when defendant negligently discharged and caused to be discharged oil from the Macondo Well." (P. 16, Guilty Plea Agreement filed 11/15/12— Attached hereto as Exhibit F. Such migratory birds, including Brown Pelicans, Laughing Gulls, Northern Gannets, **and other protected species** (*emphasis added*) which were unlawfully killed by BP Exploration and Production, Inc., and admitted thereto, are protected species that cross the United States and the United Mexican States and which temporarily reside **elsewhere** (*emphasis added*), including along the Gulf Coasts of the States of Quintana Roo, Tamaulipas, and Veracruz.

40. BP Exploration and Production, Inc. "On or about and between April 20, 2010, in the Eastern District of Louisiana and **elsewhere** (*emphasis added*), **BP did corruptly, that is, with an improper purpose, endeavor to influence, obstruct, and impede** (*emphasis added*) the due and proper exercise of the power of inquiry under which an inquiry and investigation was being had by a Committee of the United States House of Representatives **into the amount of oil flowing from the Macondo Well ("flow rate") through the following omissions and false and misleading statements** (*emphasis added*) in its May 24, 2010 response ("Markey Response") to the Committee on Energy

and Commerce. (Pgs. 16-18, Guilty Plea Agreement filed 11/15/12—Attached hereto as Exhibit F).

**VIII.  PRIVATE BUSINESSES THAT OWN, SELL, PURCHASE, DEVELOP, PROTECT AND EXPLOIT THE BEACHES, CHANNELS, OFFSHORE WATERS OF THE STATE OF TAMAULIPAS, PERMITED BY THE STATE OF TAMAULIPAS IN ITS AUTHORITHY TO CONTROL, REGULATE, EXPLOIT, DEVELOP, MAINTAIN ITS BEACHES AND GULF WATER AREAS.**

41.  Grupo Turístico Tamaulipas, S.A. de C.V. (GTT), a company duly organized under the laws of Mexico, as evidenced in public deed number 103, dated February 29th, 2008, issued and witnessed before Mr. Francisco Javier Luengas Castro, Notary Public number 22 holding office in the City of Tampico, Tamaulipas, such company being duly registered in the Public Registry of Property and Commerce of the State of Tamaulipas, under mercantile folio no. 10350 * 6 , dated March 4th, 2008. GTT's shares are all privately owned by individuals and other investors, and there is no ownership of GTT's shares by any governmental entity or body. Pg. 1, Declaration of Gabriel Maldonado Attached hereto as Exhibit H).

42. The State of Tamaulipas, as well as the Municipality of Soto La Marina, that brought about the initiative to develop the first ever large-scale tourism and beach resort project on the Gulf of Mexico. This project involved all three levels of the Mexican government (Federal, State, Municipal) and GTT. The project was to be located in Tamaulipas on the coast of the Gulf of Mexico. Pg. 1, Declaration of Gabriel Maldonado Attached hereto as Exhibit H).

43. In 2005, FONATUR carried out a feasibility study entitled: "Strategic Program for the Development of Urban Tourism Sites in the Regions Showing Potential for Tourism in the State of Tamaulipas," and FONATUR concluded that it was important and feasible to initiate a project in the La Pesca region of Tamaulipas. The La Pesca region is located on the coastline of Tamaulipas adjoining and facing the Gulf of Mexico.

1) Additionally, the Government of the State of Tamaulipas carried out its own study and concluded that the La Pesca region offered significant advantages for tourism activities and development.

2) After such date, the Government of the State of Tamaulipas made various expenditures of Federal and State funds to construct highways and improve existing routes in order to provide an upgraded means of reaching the La Pesca region.

3) Considering that GTT is the largest and most experienced developer in the State, it was invited to enter into agreements with both the Federal and State Governments intended to privately develop certain parts of the project, as well as to cooperate with all three levels of Government.

4) A brief description of the La Pesca Project is provided below:

   i. La Pesca was to be developed in an effort to create a world-class tourist destination on the Gulf of Mexico Riviera of the State of Tamaulipas. GTT, the Mexican Government and the State of Tamaulipas worked together.

   ii. The project was to be developed over a 14.3 mile stretch of beachfront property owned by GTT and other private entities and natural persons,

covering a surface area of 1,528.8 acres. The properties intended for use of the support staff and facilities measured 2,062 acres. The total surface area for the project is 4,130.8 acres.

iii.  La Pesca is located in the State of Tamaulipas, on the coastline of the Gulf of Mexico; Two ports were being developed by the State of Tamaulipas in order to service the La Pesca development, Matamoros and Boca de Catan. The State of Tamaulipas and the Federal Government were also developing highways, dams, power plants and even an international airport.

iv.  GTT also paid for several engineering studies that were conducted as preliminary measures for work GTT was to perform. These studies included:

-  land mechanics study

-  quality evaluation of materials for unpaved roads

-  seawall and breakwater projects on the beach and in the adjacent Gulf waters.

-  Hydrodynamic studies

-  Flood prevention calculations

-  Total investment made: $ 49,440,660.00 USD

Pg. 2-3, Declaration of Gabriel Maldonado Attached hereto as Exhibit H).

44. GTT engaged in activities to promote and develop the La Pesca Development Project. As part of its project development, GTT purchased several real estate properties located in the region, which properties include beachfront extending across the beach and into the

waters of the Gulf of Mexico properties and properties adjoining the Laguna Madre natural protected area. These properties acquired by GTT include:

i. Land that originally had 223-52-00 HECTARES, TWO HUNDRED TWENTY THREE HECTARES, FIFTY TWO ARES, ZERO ZERO CENTIARES, in accordance to public instruments, with the following measures and boundaries: TO THE NORTH, in 200.00 M two hundred meters, with property that is or was Mister Alberto Buentello Gámez's; TO THE SOUTH, in 860.00 M.- eight hundred and sixty meters, with property that is or was Mister Sigifredo García's and partners; TO THE EAST, in 6,510.00 M- six thousand five hundred and ten meters with Federal Maritime Land Zone Gulf of Mexico and, TO THE WEST, in 6,510.00 M- six thousand five hundred and ten meters, with Federal Zone Laguna Madre;

ii. Land with original surface of 227-10-00 Hectares, TWO HUNDRED AND TWENTY SEVEN HECTARES, TEN ARES, ZERO ZERO CENTIARES, in accordance to public instruments, comprised within the following measures and boundaries: TO THE NORTH, in 320.00 M- three hundred and twenty meters- with property that is or was Jose Francisco Buentello Gámez's; TO THE SOUTH, in 200.00 M- two hundred meters, with property that is or was Luis Francisco Buentello Gámez's; TO THE EAST, in 5,350.00 M- five thousand three hundred and fifty meters- with Federal Maritime Land Zone Gulf of Mexico, and TO THE WEST, in

5,350.00 M- five thousand three hundred and fifty meters, with Federal Zone Laguna Madre; and,

iii.   Land with original surface of 216-25-00 Hectares, TWO HUNDRED AND SIXTEEN HECTARES, TWENTY FIVE ARES, ZERO ZERO CENTIARES, in accordance to public instruments, comprised within the following measures and boundaries: TO THE NORTH, in 640.00 six hundred and forty meters, with property that is or was Alberto Luis Buentello Varela's; TO THE SOUTH, in 320.00 three hundred and twenty meters, with property that is or was Alberto Buentello Gámez's; TO THE EAST, in 4360.00 four thousand three hundred and sixty meters, with Federal Maritime Land Zone Gulf of Mexico; and, TO THE WEST, in 4360.00 four thousand three hundred and sixty meters, with Federal Zone Laguna Madre.

iv.   the property located in the municipality of Soto La Marina, Tamaulipas, with a surface of 481-00-00 (four hundred eighty one hectares), which has no official delimitation of the Federal Zone, with the following measures and boundaries: TO THE NORTH: In 860.00 l.m. (eight hundred and sixty linear meters) with Luis Francisco Buentello. TO THE SOUTH: In 2,900.00 l.m. (two thousand nine hundred linear meters) with Río Soto La Marina. TO THE EAST: In 10,720.00 l.m. (ten thousand seven hundred and twenty linear meters) with the Gulf of Mexico. TO THE WEST: In 10,720.00 l.m. (ten thousand seven hundred and twenty linear meters) with the Laguna Madre.

Pg. 3 Declaration of Gabriel Maldonado Attached hereto as Exhibit H).

45. The land referenced in Paragraph 11, above, that GTT purchased had been originally granted to the private owners through concessions or decrees from the Mexican federal government. As the beneficiaries of these concessions and decrees, the original owners owned rights in and to the properties; controlled, managed, and possessed the properties; cleaned, repaired, and maintained the properties at their own expense; and made such improvements and reparations to the properties as they saw fit at their own expense. The rights of the owners of the property extended across the beach toward and up to the water line of the Gulf of Mexico or the Laguna Madre, as applicable. The concessions and decrees giving the property to the previous owners gave the owners the rights and authority to erect homes, docks, buildings or other structures on the property or otherwise develop the property for their own personal profit or benefit.  The concessions and decrees giving the property to the previous owners did not restrict the property owners from selling, leasing, mortgaging, or otherwise conveying the property to GTT or anyone else and they were free to do so under the terms of the concessions and decrees. Pg. 3-4, Declaration of Gabriel Maldonado Attached hereto as Exhibit H).

46. As part of its development activities, GTT bought many of the waterfront properties from the original owners who had received them through concessions and decrees from the federal government. A true and correct map of the private beachfront properties and properties adjoining the Laguna Madre that were purchased by GTT from private owners who originally received the property rights through concessions and grants from the Mexican federal government. GTT paid the purchase money to the property owners and none of the purchase money went to either the federal or state

governments. GTT owns these parcels of land and holds legal title to same. Additionally, like the original property owners, GTT has the right, authority, and ability to possess, control, manage, and develop the property for its own benefit and profit. GTT is also responsible for maintaining, cleaning up, and restoring these properties, including the beaches at its own cost and expense. GTT also has the right, authority, and ability to sell, mortgage, lease, and otherwise convey the rights to and in the property to any other party. Under the concessions and decrees, any sales proceeds, lease payments, or other funds GTT receives from any conveyance of the properties are GTT's to keep for its own benefit and profit, and GTT is not required to give any part of those funds to the federal or state governments or to anyone else. In fact, as part of its development activities, GTT sold many of these properties to third parties and the sales proceeds GTT received from the sales were retained by GTT and/or its private investors. GTT was not required and will not be required to provide the Republic of Mexico any part of the sales price for these beach properties it has sold. Pg. 4, Declaration of Gabriel Maldonado Attached hereto as Exhibit H).

47.  GTT, along with the Government of the State of Tamaulipas, has obtained all of the following permits, agreements, and concessions from the Federal Government, through the SEMARNAT (Ministry of the Environment and Natural Resources):

      i.    STATEMENT OF REGIONAL ENVIRONMENTAL IMPACT  (MIA-R)

           Code issued by SEMARNAT: 28TM2006TD028

           Date of Issue: 28 August 2006.

           Filed by: the Municipality of Soto La Marina.

The Project involved the primary Zonification for the urban development and establishment of primary, secondary and tertiary tourism activities in La Pesca; as well as the Plans for the development of a property of 55.024 hectares adjoining, to the south, the Soto La Marina River, to the North the Laguna Madre, to the east the Gulf of Mexico, and to the West with certain properties owned by the Municipality of Soto La Marina.

ii.   DETERMINATION OF ENVIRONMENTAL IMPACT (RIA)

Issued by SEMARNAT:  S.G.P.A./DGIRA.DDT.2336.06

Date: 22 November 2006.

Date of Receipt: 6 December 2006.

This document authorized the Works and Activities proposed by the company for Sector 3 of Phases 1, 2, and 3 of the La Pesca Project in 2007 to 2014, such Works were to be carried out on a surface of 640.7 hectares and included the future development and building of hotels, condominiums, villas, residential lots, beach clubs, a golf course, retail spaces, nautical club, several lakes, streets, parks and open spaces. This permit included some restrictions pertaining to the protection of the environment.

iii.   PROPOSAL FOR COMPLIANCE

Date of Delivery: August 21, October 5, and November 5 of 2007.

The proposals for the protection of the environment and corresponding agreements were delivered, additionally; the State of Tamaulipas became the official proponent.

iv.   PROCEEDING FOR THE ESTABLISHMENT OF A FEDERAL MARITIME LAND ZONE AND LAND RECLAIMED FROM THE SEA FOR THE PURPOSE OF DISINCORPORATION IN FAVOR OF THE COMPANY IN ORDER TO LATER DEVELOP AND/OR SELL SUCH LANDS

The proceedings included the following steps:

1. Change of the Coastal Parameters through Dredging

3. Concession.

4. Disincorporation.

The request for the Works intended to Modify the Coastal Parameters was delivered on March 14, 2008, to the General Direction of the Federal Maritime Land Zone and Costal Environments (ZOFEMATAC).

Such request included an Executive Project for the Delimitation of the Dredging Zone, including the construction of a Lake measuring over 190 hectares, as well as the Executive Project for the Delimitation of the Zone of Lands Reclaimed from the Lagoon (Laguna Madre) for a total surface of 371.79 hectares.

On May 22, 2008 the Approval for the performance of the Works to Modify the Coastal Parameters was received.

On June 2008, GTT, with due approval, initiated the dredging of the beachfronts and several other buildings, which were finished in September, 2008.

Once the buildings and dredging were completed, the process of Delimitation for the New Federal Zone and Lands Gained from the Lagoon was done.

Once such Zone was established, the concession for the use and enjoyment of the land, and later the disincorporation of such land for the La Pesca Project was done.

Pg. 5,6, Declaration of Gabriel Maldonado Attached hereto as Exhibit H).

48.  AGREEMENT BETWEEN THE STATE OF TAMAULIPAS AND GTT

During the foregoing proceedings, the Government of the State of Tamaulipas filed the Plan for Territorial Structuring and Urban Development for the Municipality of Soto La Marina. Such plan was published in the Official Newspaper of the State of Tamaulipas in June, 2005. Later, in August 2008, an agreement for Collaboration for the Compliance of Environmental Restrictions was entered into between GTT and the State of Tamaulipas, such instrument duly empowered GTT to perform the Works and construction of the aforementioned lake and beachfront interface and to carry out the schedule for environmental restoration of the mangroves located in the zone to be developed. The other environmental restrictions mentioned before were also covered therein. Pg. 6, Declaration of Gabriel Maldonado Attached hereto as Exhibit H).

49. Project Initiation on behalf of GTT. On May 22, 2008, SEMARNAT and ZOFEMATAC authorized the construction projects and other works related to the La Pesca Project at the site, as well as the dredging project and the building of the offshore walls.  On August 20, 2008, GTT and the State of Tamaulipas entered into an agreement whereby the execution of the aforementioned dredging and building Works were to be

performed by GTT on behalf of the State, as authorized by the SEMARNAT on that year.

Pg. 6, Declaration of Gabriel Maldonado Attached hereto as Exhibit H).

Respectfully Submitted,

DATED: January 4, 2013

                                        **SERNA & ASSOCIATES PLLC**

                                        By:

                                        **/s/ Enrique G. Serna**
                                        **Enrique G. Serna, Esq.**
                                        SBOT 00789617
                                        20985 IH 10 West
                                        Serna Building
                                        San Antonio, Texas 78257
                                        (210) 2280095 – Telephone
                                        (210) 2280839 – Facsimile


                        **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, pursuant to Judge Shushan's Order of September 11, 2012, I

have caused the foregoing to be served on all counsel via the Lexis Nexis File & Serve

system, and that the foregoing was electronically filed with the Clerk of Court of the United

States District Court for the Eastern District of Louisiana by using the CM/ECF system,

who will send a notice of electronic filing in accordance with the procedures established in

MDL 2179, on January 4th, 2013

                                        /s/ Enrique G. Serna
                                        Enrique G. Serna